**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————— )
                                                          )
In re:                                                  )        Case No. 12-12020 (MG)
                                                          )
RESIDENTIAL CAPITAL, LLC, et al.,       )        Chapter 11
                                                          )
                                    Debtors.         )        Jointly Administered
                                                          )
——————————————————————— )

**STIPULATION AND ORDER RESOLVING OBJECTIONS OF DB STRUCTURED**
**PRODUCTS, INC., MORTGAGEIT, INC. AND MORTGAGEIT HOLDINGS, INC. TO**
**THE (I) ASSIGNMENT AND ASSUMPTION OF AGREEMENTS, AND**
**(II) RELATED PROPOSED CURE AMOUNTS**

This stipulation (the "**Stipulation**") is entered into on June 3, 2013 by and between Residential Capital, LLC and its affiliated debtors in the above-referenced Chapter 11 cases (the "**Chapter 11 Cases**"), as debtors and debtors in possession (collectively, the "**Debtors**"), and DB Structured Products, Inc., MortgageIT, Inc. and MortgageIT Holdings, Inc. (together, the "**DB Parties**" and collectively with the Debtors, the "**Parties**").

## RECITALS

**A.    The Bankruptcy Cases**

1.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

2.    On the Petition Date, the Bankruptcy Court entered an order jointly administering the Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B.     GMAC Mortgage's Servicing of Loans in the DB Transactions

3.      Prior to the Petition Date, GMAC Mortgage, LLC, one of the Debtors (f/k/a GMAC Mortgage Corporation, "**GMAC Mortgage**") entered into certain Servicing Agreements,[1] Subservicing Agreements, and related agreements (collectively, the "**Agreements**") with the DB Parties, pursuant to which the Debtors agreed to service or subservice loans, as the case may be, in connection with twenty four (24) residential mortgage backed securitization transactions (collectively, the "**DB Transactions**").

4.      Certain of the Agreements entitle the servicer to receive a servicing fee (the "**Servicing Fee**").  Included among the Agreements governing GMAC Mortgage's servicing or subservicing of the DB Transactions were several side letters, pursuant to which GMAC Mortgage agreed to (i) service the mortgage loans in the DB Transactions in exchange for a portion of the Servicing Fee (the "**GMACM Servicing Fee**") and (ii) remit the remainder of the Servicing Fee to the applicable DB Party (the "**DB Servicing Strip**").

5.      By a series of letters, each dated May 9, 2012 (collectively, the "**Termination Notices**"), the DB Parties purported to notify GMAC Mortgage of their intent to terminate GMAC Mortgage as servicer or subservicer, as applicable, in connection with each of the DB Transactions, with the purported termination to be effective as of August 1, 2012.

6.      The Debtors maintain that, among other things, as result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code, the Termination Notices are of no force or effect and any purported terminations are precluded by the automatic stay.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Objection of DB Structured Products, Inc. and MortgageIT Holdings, Inc. to Debtors' Proposed Cure Amount and to Assumption and Assignment of Related Agreements* [Docket No. 1623], dated September 28, 2012.

### C.    The Bar Date and the DB Parties' Proofs of Claim

7.    On August 29, 2012, the Bankruptcy Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309], establishing November 9, 2012 as the general claims bar date.  The Bankruptcy Court subsequently entered its *Order Extending Deadline for Filing Proofs of Claim* [Docket No. 2093], extending the general claims bar date to November 16, 2012.

8.    On or about October 25, 2012 and November 16, 2012, the DB Parties and their affiliates filed in these Chapter 11 Cases twenty-four (24) proofs of claim (collectively the "**DB Parties' Proofs of Claims**"), including claims numbered 5844, 5852, and 5854 on the Debtors' claims register (collectively, Claim Nos. 5844, 5852, and 5854, the "**Servicing Proofs of Claim**").[2]  The Servicing Proofs of Claim relate specifically to the DB Transactions and assert claims falling into three general categories: (i)  claims alleging servicing deficiencies by the Debtors in connection with certain specific loans, (ii) claims for allegedly unremitted refunds of mortgage insurance premiums refunded to the Debtors upon rescission of mortgage insurance on certain loans, and (iii) claims arising from the Debtors' alleged failure to remit the DB Servicing Strip in connection with certain of the DB Transactions.

### D.    The Debtors' Platform Sale and the DB Parties' Objection to the Sale

9.    On the Petition Date, the Debtors filed a motion (the "**Sale Motion**") [Docket No. 61] seeking, among other things, authorization to sell certain assets and approval of (i) related sale procedures, (ii) asset purchase agreements, and (iii) the assumption and assignment of certain executory contracts and unexpired leases related thereto.

---

[2] The DB Parties also filed Claim Nos. 1597, 1602, 1605, 1608, 1613, 1616, 1620, 1624, and 1928-1933 (collectively the "**Non-Servicing Proofs of Claim**") asserting claims arising out of certain alleged indemnification obligations contained in certain Underwriting Agreements and Loan Purchase Agreements (as defined in the respective Non-Servicing Proof of Claim) by and among one or more of the DB Parties (or their affiliates) and one or more of the Debtors.

10.     On July 26, 2012, the Debtors filed their *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Docket No. 924], which was amended and restated on September 18, 2012 [Docket No. 1484] (the "**Assumption and Assignment Notice**").  In the Assumption and Assignment Notice, the Debtors, with reference to the Sale Motion, scheduled certain of the Agreements with the DB Parties for assumption by the Debtors and assignment to the winning bidder at auction.  The Debtors scheduled a cure amount of $0.00 for each of the Agreements (collectively, the "**Cure Amounts**").

11.     On September 28, 2012, the DB Parties filed an objection to the Sale Motion and Assumption and Assignment Notice (the "**Original Sale Objection**").  In the Original Sale Objection, the DB Parties alleged that (i) the Debtors' $0.00 asserted Cure Amounts were incorrect, and that there were outstanding monetary defaults under the Agreements, and (ii) the Termination Notices precluded the Debtors from being able to assume and assign the DB Agreements over the DB Parties' objection.

12.     On November 2, 2012, the DB Parties filed a supplemental objection to the Sale Motion (the "**Supplemental Sale Objection**" and, together with the Original Sale Objection, the "**Objections**") to, among other things, increase the total cure claim asserted against GMAC Mortgage to $4,698,403.38.

13.     On November 21, 2012, after the occurrence of (i) auctions held pursuant to Bankruptcy Court-approved sale procedures, and (ii) a hearing in consideration of the Debtors' proposed orders approving the respective sales, asset purchase agreements, and assumption and assignment of certain contracts for each of the proposed sale transactions, the Bankruptcy Court

entered sale orders approving the Debtors' sales of assets to Berkshire Hathaway, Inc. [Docket No. 2247] and Ocwen Loan Servicing, LLC ("**Ocwen**") [Docket No. 2246] (the "**Ocwen Sale Order**") and the related asset purchase agreements for each sale, and specifically with respect to the Ocwen Sale Order, the Asset Purchase Agreement dated November 2, 2012 among Ocwen and certain of the Debtors (as amended from time to time, the "**Ocwen APA**").  By mutual agreement of the Parties, the DB Transactions were excluded from Schedule E to the Ocwen APA, which contained the list of primary and subservicing contracts being assumed and assigned to Ocwen under the Ocwen Sale Order.

14.     On February 15, 2013, the Ocwen sale closed and on that date, certain of the Debtors on the one hand and Ocwen on the other hand entered into a Subservicing Agreement, dated as of February 15, 2013 (the "**Subservicing Agreement**") under which Ocwen is subservicing loans associated with the DB Transactions on behalf of the Debtors.

15.     Subsequent to the filing of the Objections, the hearing on the Objections was adjourned from time to time to omnibus dates with the consent of the DB Parties.  In the interim, the Parties' respective counsel conferred and engaged in extensive negotiations in good faith and at arms' length in an effort to resolve the Objections.  The negotiations culminated in an agreement memorialized by the terms and conditions of this Stipulation in full resolution of the Objections.

16.     The resolution of the Objections has three primary components as follows: (i) the Debtors' rights as a servicer or subservicer of mortgage loans and the obligations with respect thereto (the "**Debtors' Rights and Obligations**") with respect to the fourteen (14) transactions listed on Exhibit 1 hereto (the "**RCS Transactions**"), will be terminated and the servicing with respect to the RCS Transactions will be transferred to Residential Credit Solutions, Inc.

("**RCS**"), the successor servicer of the DB Parties' choosing, and in connection with such terminations and transfers the DB Parties shall reimburse the Debtors for 100% of the servicing advances that remain outstanding as of the Transfer Date (defined below) pursuant to the terms and conditions (including adjustments) set forth herein; (ii) the Debtors' Rights and Obligations with respect to the ten (10) transactions listed on Exhibit 2 hereto (the "**Ocwen Transactions**") will be assigned to Ocwen in accordance with, and subject to the terms of, the Ocwen Sale Order and Ocwen APA; and (iii) the DB Parties waive the right to receive any cure claim in connection with the RCS Transaction and Ocwen Transactions.  In addition, the Parties will confer in good faith in an effort to consensually resolve, and agree on the allowed amount of the Servicing Proofs of Claim; provided, however, in the event the Debtors stipulate to allow the Servicing Claims in the amount asserted in each proof of claim as set forth in paragraph 24 hereof, such stipulation shall constitute a complete settlement and resolution of any and all claims the DB Parties may have with respect to the DB Transactions against the Debtors whatsoever, including any claim for the DB Servicing Strip and any administrative expense claim.

17.     The Debtors have determined that entering into this Stipulation in full resolution of the Objection is in the best interests of the Debtors, their estates, and their creditors.

**NOW THEREFORE**, in consideration of the foregoing recitals and the covenants and conditions contained herein, the Parties hereby stipulate and agree as follows:

1.     The recitals form an integral part of this Stipulation and are incorporated fully herein.

2.     This Stipulation shall constitute the full and final resolution of the Objections and any objections to the proposed Cure Amounts the Debtors attributed to the Agreements related to the DB Transactions.

3.      Upon entry of this Stipulation by the Bankruptcy Court, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall be modified solely (i) to permit the termination of the Debtors' Rights and Obligations in connection with the RCS Transactions as set forth in Paragraph 4 below, and (ii) to permit the Parties to perform such acts as necessary and/or appropriate to exercise their respective rights and obligations in accordance with the Agreements to effectuate the transfer of the RCS Transactions.

4.      In connection with the transfer of servicing for the RCS Transactions to RCS on the Transfer Date (defined below), the Parties shall comply with the servicing transfer instructions annexed hereto as Exhibit "3" (the "**Servicing Transfer Instructions**"), without the need for any further action or notice by either Party.  As of the Transfer Date, the rights and obligations of any of the Debtors to act as servicer or subservicer under any of the Agreements related to the RCS Transactions shall be terminated. For the avoidance of doubt, each of the Debtors hereby acknowledges that: (i) other than the right to act as servicer or subservicer as reflected in the Agreements, it does not now own any servicing rights with respect to the mortgage loans underlying the RCS Transactions; and (ii) as of the Transfer Date, it shall have no further rights or obligations to act as servicer or subservicer under any of the Agreements related to the RCS Transactions.

5.      Effective as of the Transfer Date, the Debtors shall assume and assign to Ocwen the Ocwen Transactions pursuant to the terms of the Ocwen Sale Order and Ocwen APA and the Ocwen Sale Order and Ocwen APA shall govern in all respects.

6.      The Parties shall mutually agree on a date for the provision of written notice to customers (the "**Customer Notice**") stating that mortgage servicing with respect to the RCS Transaction and Ocwen Transactions are being transferred to RCS or Ocwen, as applicable,

as successor servicer, effective as of July 1, 2013 (or such later date as mutually agreed to) (the

"**Transfer Date**").  To the extent the Transfer Date is other than July 1, 2013, the Parties shall

mutually agree to the appropriate dates for establishing the reimbursement of Advances (defined

below) by the DB Parties to the Debtors.

7.      The Parties shall further take such actions as are necessary and appropriate

to effectuate the termination and/or transfer for each of the RCS Transactions in accordance with

the Subservicing Agreement and Agreements, including, without limitation, complying with the

procedures set forth in the Servicing Transfer Instructions, the Subservicing Agreement or such

Agreements, as applicable, without further order of the Bankruptcy Court.

8.      Prior to the Transfer Date, Ocwen shall continue to service the mortgages

associated with the DB Transactions in accordance with the terms and conditions of the

Subservicing Agreement, and the Debtors shall continue to be entitled to all fees, costs, and

expenses due to or incurred by the Debtors in connection with the servicing as provided for

under each of the Agreements associated with the DB Transaction, subject to and in accordance

with the terms of the Subservicing Agreement.

9.      The DB Parties shall reimburse the Debtors for all advances that were

made by the Debtors under the terms of the Agreements (the "**Advances**") that remain

outstanding as of the Transfer Date with respect to the RCS Transactions (the "**Advance

Rights**") at a price equal to 100% of the total amount of such Advances (the "**Advance

Payment**"), net of positive escrow balances, subject to the terms and conditions set forth herein.

For the avoidance of doubt, the DB Parties shall not be obligated to reimburse the Debtors for

any Advances made on account of mortgage loans that are not transferred to RCS as part of the

RCS Transactions.  On or before June 27, 2013, the Debtors shall, or shall cause Ocwen to,

furnish the DB Parties with information on Advances outstanding (*i.e.*, a single aggregate Advance amount per loan (excluding principal and interest Advances) underlying the RCS Transactions and a single principal and interest Advance amount at the transaction level) (the "**Aggregate Advance Information**") as of June 25, 2013.  The DB Parties shall make an initial Advance Payment to the Debtors on the Transfer Date of 100% of the Advances outstanding as of June 25, 2013 as reflected in the Aggregate Advance Information (the "**Initial Advance Amount**").

10.     On the Transfer Date, (i) DB Parties shall pay to the Debtors an amount equal to ninety percent (90%) of the Advance Payment based on the Initial Advance Amount (the "**Non-Recourse Payment**") by wire transfer pursuant to wire transfer instructions furnished by the Debtors.  The remaining ten percent (10%) of the Advance Payment based on the Initial Advance Amount (the "**Hold Back Amount**") shall be deposited into an escrow account (the "**Escrow**") on the Transfer Date and disbursed in accordance with the terms of the escrow arrangement described below.

11.     On or before the fifth business day of July, 2013, the Debtors shall, or shall cause Ocwen to, furnish to the DB Parties an update to the Aggregate Advance Information reflecting the Advances outstanding as of the close of business on June 30, 2013, inclusive of additional loan level Advance details (including all items referenced in the Servicing Transfer Instructions as requiring Delivery as of such date). The DB Parties acknowledge and agree that the Debtors shall have no responsibility for the making of any Advances after June 30, 2013. Upon receipt of such updated Aggregate Advance Information, the Parties shall make the necessary payments or credits to the Non-Recourse Payment and the Hold Back Amount to reflect the actual amount of the Advance Rights outstanding as of the Transfer Date as follows:

(i) within ten business days after receipt of the updated Aggregate Advance Information, in the event that the Advances reflected in the update to the Aggregate Advance Information are higher than the June 25, 2013 balances, the DB Parties shall make a supplemental Advance Payment (the "**Supplemental Advance Payment**") equal to the difference between the total Advances reflected in the updated Aggregate Advance Information and the Advances reflected in the June 25, 2013 balances, with 90% of such Supplemental Advance Payment to be paid to the Debtors and included as part of the Non-Recourse Payment and the remaining 10% to be deposited into the Escrow; or (ii) in the event that the Advances reflected in the update to the Aggregate Advance Information are lower than the June 25, 2013 balances, 90% of such difference shall be paid by the Debtors to the DB Parties within (10) business days and the remaining 10% shall be released to the DB Parties from Escrow ((i) and (ii) the "**True-Up Mechanism**").  All such payments to the Debtors or DB Parties (as applicable) shall be made by wire transfer in accordance with the instructions furnished by the payee to the payor.

12.    With the sole exception of the True-Up Mechanism, the DB Parties shall have no recourse against the Debtors or their estates with respect to the Non-Recourse Payment. The Debtors make no representation or warranty with respect to the Advance Rights that are the subject of the Non-Recourse Payment and such Advance Rights are being transferred to RCS on an "as is basis."  The DB Parties sole recourse with respect to the Advance Rights and the Advance Payment shall be the Hold Back Amount and subject to the terms and conditions of this Stipulation.

13.    The Parties shall engage an escrow agent (the "**Escrow Agent**") mutually acceptable to the Parties to hold the Escrow pursuant to the terms hereof and an escrow agreement on terms and conditions mutually acceptable to the Parties (the "**Escrow**

**Agreement**"). Costs and fees of the Escrow Agent shall be divided equally among the DB Parties and the Debtors.  The Parties agree that U.S. Bank shall be an acceptable Escrow Agent.

14.     As soon as practicable, but in no event later than the time period required by the Servicing Transfer Instructions, the Debtors shall cause to be delivered to the DB Parties copies of invoices and such other agreed upon documentation supporting the Advance Rights for those Advances made from March 26, 2013 through the Transfer Date (the "**Second Quarter Advances**").  The substance of such information shall be substantially the same as that provided to the DB Parties in connection with their diligence of Advances made on or prior to March 26, 2013.  The DB Parties shall have one-hundred twenty (120) days from the date such production is fully completed (the "**Diligence Period**") to engage in verification of (i) the Second Quarter Advances, (ii) those Advances made during the prior period with respect to the loans as identified in Exhibit "4" hereto (the "**Specified Loans**"), (iii) with respect to the Advances for any loan for which the information provided pursuant to this paragraph 14 conflicts with prior information on such loan furnished to the DB Parties (the "**Disputed Loans**").  During the Diligence Period the Debtors shall reasonably cooperate with the DB Parties, or shall use best efforts to cause Ocwen to do so, in responding to any additional reasonable requests in connection with the DB Parties' verification efforts.

15.     At any time prior to the expiration of the Diligence Period, the DB Parties may object to the release of all or any part of the Hold Back Amount (the "**Retained Amount**") to the Debtors by delivering written notice to the Escrow Agent, the Debtors and Debtors' counsel, and counsel to the Official Committee of Unsecured Creditors appointed in these Chapter 11 cases (the "**Creditors' Committee**") (the "**Notice of Exception**").  For the avoidance of doubt, with the exception of the Specified Loans and Disputed Loans, the DB Parties'

diligence shall be limited to the Second Quarter Advances and the DB Parties shall not have the right to furnish a Notice of Exception with respect to any Advances made prior to March 26, 2013.  The Notice of Exception shall identify and explain the basis for the Retained Amount and provide appropriate backup documentation.  Valid bases for the Retained Amount shall include: (a) that the face amount of Advances as of the Transfer Date cannot be documented or exceeds the amount of Advances actually reimbursable under the Agreements and/or (b) that the Debtors have not complied or have not caused Ocwen to comply with the Servicing Transfer Instructions (other than with respect to reconciliation of Advances) in any material respect resulting in potential financial loss to the DB Parties (a "**Servicing Transfer Default**").  The DB Parties will provide a separate Notice of Exception that relates to a Servicing Transfer Default (i.e., the notice will not be combined with a notice addressing a Retained Amount related to any Advance).

16.    If the Notice of Exception identifying a Retained Amount concerns any Advance, the Debtors shall has fifteen (15) business days after the date of receipt of the Notice of Exception to object to the Notice of Exception by delivering a written notice (the "**Advance Objection Notice**") to the Escrow Agent, the DB Parties, their counsel and counsel to the Creditors' Committee. The Debtors may automatically obtain an additional fifteen (15) business days to submit an Advance Objection Notice by delivering written notice to the DB Parties and their counsel prior to the expiration of the original fifteen (15) day business period.   The Advance Objection Notice shall provide information and documentation to support such objection; *provided however*, that the sufficiency of such information and documentation shall not render the Advance Objection Notice invalid, except that the failure to produce any information and documentation *shall* render the Advance Objection Notice invalid. If the

Debtors do not submit an Advance Objection Notice within such fifteen (15) or thirty (30) business day period, or otherwise advise the Escrow Agent and the DB Parties in an Advance Objection Notice that they do not intend to contest a portion of the Retained Amount, the Escrow Agent shall release the Retained Amount or that portion of the Retained Amount not contested by the Debtors to the DB Parties and the Debtors shall have no further claim to such funds.

17.    If the Debtors deliver the Advance Objection Notice, the parties shall work in good faith to resolve the issues consensually with respect to the Retained Amount in dispute (subject to the consent of the Creditors' Committee), in which case they shall jointly provide instructions to the Escrow Agent in accordance with their consensual resolution. The Debtors shall keep counsel to Creditors Committee reasonably informed of their efforts.  If, despite their good faith efforts, the parties are unable to resolve their dispute relating to the Retained Amount in issue within twenty (20) business days of the delivery of the Advance Objection Notice, they shall submit the dispute to a mutually agreeable independent accounting firm for binding resolution (the "**Accounting Firm**").  The selection of the Accounting Firm shall also be subject to the consent of the Creditors' Committee which consent shall not be unreasonably withheld.  The Parties shall jointly submit to the Accounting Firm the Notice of Exception and Advance Objection Notice, the materials exchanged between the Parties in connection with their effort to resolve the dispute and all underlying supporting documentation (collectively the "**Dispute Materials**").

18.    The Accounting Firm shall undertake a review of the Dispute Materials and any additional supporting documentation submitted by either Party.  The Parties shall direct the Accounting Firm to, as promptly as practicable and in no event later than thirty (30) days following the delivery of the Dispute Materials to the Accounting Firm, to deliver to the Parties a

report (the "**Adjustment Report**") setting forth in reasonable detail the Accounting Firm's determination with respect to the issues specified in the Dispute Materials and the allocation as between the Debtors and the DB Parties of the Retained Amount in issue together with supporting calculations. The Accounting Firm shall have no authority to review or raise items not expressly identified in the Dispute Materials.  With respect to each disputed line item, such determination, if not in accordance with the position of either the Debtors or the DB Parties, shall not be in excess of the higher, nor less than the lower, of the amounts advocated by either Debtors or the DB Parties in the Dispute Materials.  The Adjustment Report shall be final and binding on the Parties, absent arithmetical error, and shall be deemed a final arbitration award that is enforceable against each of the Parties in any court of competent jurisdiction. The Retained Amount shall be adjusted according to such Adjustment Report with appropriate instructions to be delivered jointly by the Parties to the Escrow Agent with respect to the release of the Retained Amount as between the Parties.  The fees and expenses of the Accounting Firm shall be borne 50% by the Debtors and 50% by the DB Parties.

19.    If the Notice of Exception relates to a Servicing Transfer Default, the Debtors shall have the longer of (a) thirty days or (b) until the expiration of the Diligence Period to cause such failure to be cured in all material respects.  Should the failure not be cured or curable, the DB Parties shall, subject to the terms hereof, be entitled to a portion of the Retained Amount equal to the direct servicing costs actually incurred (as sufficiently documented by the DB Parties) during the servicing transfer as a result of such failure.  Prior to the end of the Diligence Period, the DB Parties shall advise the Escrow Agent, the Debtors, the Debtors' counsel and counsel to the Creditors' Committee in writing as to whether the Servicing Transfer Default has been cured and if not, the amount of the Retained Amount the DB Parties seek as

compensation (the "**Servicing Transfer Hold Back Notice**"); provided, however, that in no event shall the DB Parties' compensation for a Servicing Transfer Default exceed such Retained Amount.  If the Debtors do not respond in writing to the Escrow Agent and the DB Parties to the Servicing Transfer Hold Back Notice within ten (10) business days of the receipt thereof, then on the first business day thereafter, the Retained Amount identified in the Servicing Transfer Hold Back Notice shall be released from the Escrow Account to the DB Parties.  In the event the Debtors object to the Servicing Transfer Hold Back Notice, within such 10 business day period by written notice to the DB Parties, their counsel and counsel to the Creditors Committee, the Parties in consultation with counsel to the Creditors' Committee shall agree on mutually acceptable process and timing for the prompt adjudication of the issues in dispute by the Bankruptcy Court.

20.    In the event the DB Parties have not delivered any Notice of Exception prior to the expiration of the Diligence Period, then on the first business day after the expiration of the Diligence Period, the Escrow Agent shall release from Escrow the entire Hold Back Amount to the Debtors and the Escrow shall be terminated.  In the event that the DB Parties have delivered a Notice of Exception prior to the expiration of the Diligence Period which relates to some but not all of the Hold Back Amount, then on the first business day after the expiration of the Diligence Period, the Escrow Agent shall release to the Debtors from Escrow the amount of the Hold Back Amount to which the DB Parties have not objected.  The remainder (the Retained Amount) shall continue to be held in Escrow until released in accordance with the terms of this Stipulation.

21.    Except as otherwise provided by section 363(o) of the Bankruptcy Code, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Advance Rights

relating to the RCS Transactions shall be transferred to RCS, and such transfer shall be free and clear of claims and interests (each as defined in section 101 of the Bankruptcy Code) of any entity and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, with all such claims and interests to attach to the proceeds of the transfer ultimately attributable to the property against or in which the holder of such claims or interests, if any, claims or may claim a claim or interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Debtors may possess with respect thereto. The transfer of the Advance Rights in accordance with this Stipulation constitutes a legal, valid, and effective transfer of the Advance Rights and shall vest RCS with all right, title, and interest of the Debtors in and to the Advance Rights free and clear of all claims and interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, except as expressly set forth in this Stipulation.

22.    The Parties agree that no Cure Amount shall be payable to the DB Parties, including, among other damages, in connection with any alleged damages attributable to the Debtors' failure to service the mortgage loans in the Ocwen Transactions. For the avoidance of doubt, the DB Parties shall not be entitled to any Cure Amount in connection with the RCS Transactions.

23.    Except for actions and claims to enforce the obligations set forth in this Stipulation, the DB Parties and each of their past, present, and future agents, representatives, attorneys, transferees, successors and assigns (the "**DB Releasors**") hereby forever release and discharge each of the Debtors (and their respective estates), and each of their past, present, and

future officers, trustees, directors, members, partners, employees, agents, affiliates, representatives, attorneys, successors and assigns (the "**Debtor Releasees**") from any and all claims (as defined in section 101(5) of the Bankruptcy Code) that the DB Releasors ever had, now has, or hereafter can, shall or may have, for, upon or by reason of any matter whatsoever with respect to the DB Transactions and the associated Agreements (other than for the fraudulent acts of the Debtor Releasees), provided that, the releases in this paragraph shall not extend to the Non-Servicing Proofs of Claim.

24.    Except for actions and claims to enforce the obligations set forth in this Stipulation, the Debtors and each of their past, present, and future agents, representatives, attorneys, transferees, successors and assigns, and their respective estates (the "**Debtor Releasors**") hereby forever release and discharge each of the DB Parties and each of their past, present, and future officers, trustees, directors, members, partners, employees, agents, affiliates, representatives, attorneys, successors and assigns (the "**DB Releasees**") from any and all claims (as defined in section 101(5) of the Bankruptcy Code) that the Debtor Releasors ever had, now has, or hereafter can, shall or may have, for, upon or by reason of any matter whatsoever with respect to the DB Transactions and the associated Agreements (other than for the fraudulent acts of the DB Releasees).

25.    The Parties shall confer in good faith in an effort to resolve the Servicing Proofs of Claim; provided however, that in the event the Debtors subsequently agree in writing to the allow the Servicing Proofs of Claim as general unsecured claims in the maximum amounts (or such other lesser amount as expressly agreed to by the DB Parties) set forth in this paragraph 24 (the "**Allowed Amounts**") and such Allowed Amounts are confirmed by an order of the Bankruptcy Court, the DB Parties shall waive and release any additional claims the DB Parties

may hold with respect to the DB Transactions of any kind whatsoever, including without limitation, any claim to an administrative expense as against the Debtors' estates. If the Parties do not reach agreement with respect to the Servicing Proofs of Claim, each of the Parties rights with respect to such claims shall be preserved. For purposes of this Stipulation and Order, the Parties acknowledge and agree that the maximum Allowed Amounts of the Servicing Proofs of Claim are as follows:

| Entity | Claim Number | Unsecured Claim Amount |
|---|---|---|
| MortgageIT, Inc. | 5844 | $1,532,074.09 |
| MortgageIT Holdings, Inc. | 5852 | $2,510,403.66 |
| DB Structured Products, Inc. | 5854 | $2,288,852.94 |

26.    Nothing contained in this Stipulation shall be deemed to affect in any manner the Debtors' rights to object to the DB Parties' Proofs of Claim (including the Non-Servicing Proofs of Claim) on any grounds whatsoever, including by way of counterclaims recoupment or offset.

27.    This Stipulation is the result of a compromise and is not to be construed as an admission by any of the Debtors or their estates of any liability or wrongdoing.

28.    The Parties represent and warrant that each has full power and authority to enter into and perform under this Stipulation (in the case of the Debtors, subject to Bankruptcy Court approval), and each of the undersigned counsel represents that he or she is authorized to execute this Stipulation on behalf of his or her respective client.

29.     Upon the Bankruptcy Court's entry of this Stipulation, no other or further notice to creditors or parties-in-interest, or further approval by the Bankruptcy Court shall be required to effectuate the terms and conditions of this Stipulation.

30.     Pursuant to Bankruptcy Rule 6004(h), the 14-day stay of this Stipulation and Order imposed by such Bankruptcy Rule is waived.  The Parties are authorized to implement the provisions of this Stipulation immediately upon its entry.

31.     This Stipulation constitutes the entire agreement and understanding between the Parties with regard to the matters addressed herein, and supersedes all prior and contemporaneous discussions, negotiations, understandings, and agreements, whether oral or written, express, or implied, between and among the Parties hereto regarding the subject matter of this Stipulation.

32.     This Stipulation may not be altered, modified, changed, or vacated without the prior written consent of the Parties or their respective counsel.

33.     This Stipulation shall be binding upon the Parties as well as any successor, trustee, or receiver appointed in the Debtors' Chapter 11 cases.  No provision in any plan of liquidation or reorganization subsequently confirmed in the Debtors' Chapter 11 cases shall contain any provisions inconsistent with the terms of this Stipulation.

34.     This Stipulation may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement.  Any of the Parties may execute this Stipulation by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original.

35.     This Stipulation and Order is subject to the approval of the Bankruptcy Court, and will only become effective upon approval by the Bankruptcy Court.  In the event that the Transfer Date does not occur by August 1, 2013, the Stipulation and Order shall be null and void and the parties' respective rights shall revert to their status as they stood prior to the date of execution.

36.     Notwithstanding anything to contrary set forth herein, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters or disputes arising from or relating to the implementation, interpretation, and/or enforcement of this Stipulation, and the DB Parties expressly agree that they shall be subject to the jurisdiction of the Bankruptcy Court and bound by any decision of the Bankruptcy Court for purposes of resolving any disputes arising in connection with this Stipulation.

*[signature page follows]*

Agreed to this 3 of June, 2013:


**BINGHAM McCUTCHEN LLP**          **MORRISON & FOERSTER LLP**


By:  /s/ Steven Wilamowsky          By:  /s/  Norman S. Rosenbaum
Steven Wilamowsky                   Gary S. Lee
399 Park Avenue                     Norman S. Rosenbaum
New York, New York 10022            1290 Avenue of the Americas
Telephone: (212) 705-7000           New York, New York 10104
Fax: (212) 752-5378                 Tel: (212) 468-8000
                                    Fax: (212) 468- 7900


*Counsel to DB Structured Products, Inc.,*     *Counsel for Residential Capital, LLC, et al.,*
*MortgageIT, Inc. and MortgageIT Holdings,*    *Debtors and Debtors in possession*
*Inc.*

**SO ORDERED**:

Dated:  June 10, 2013
          New York, New York

_____ **/s/Martin Glenn** _____
MARTIN GLENN
United States Bankruptcy Judge


*Signature Page to Stipulation and Order Resolving the Objections of DB Structured*
*Products, Inc., MortgageIT, Inc. and MortgageIT Holdings Inc. to (i) the Assignment and*
*Assumption of Agreements and (ii) Related Proposed Cure Amounts*

## EXHIBIT 1

**RCS Transactions**

DBALT 2006-AB4
DBALT 2007-2
DBALT 2007-4
DBALT 2007-AB1
DBALT 2007-AR2
MIT 2004-1
MIT 2004-2
MIT 2005-1
MIT 2005-2
MIT 2005-3
MIT 2005-4
MIT 2005-5
MIT 2005-AR1
MIT 2006-1

# EXHIBIT 2

**Ocwen Transactions**

ACE 2005-SL1
ACE 2006-SL1
DBALT 2005-AR1
DBALT 2006-AR2
DBALT 2006-AR6
DBALT 2006-OA1
DBALT 2007-1
DBALT 2007-3
DBALT 2007-OA2
MHL 2007-1

## **EXHIBIT 3**

**Servicing Transfer Instructions**

EXHIBIT 3

Servicing Transfer Instructions

**GENERAL INFORMATION**

Transfer Cut off Date:  6/28/2013
Transfer Date: 7/1/2013  (Business Day following the Transfer Cutoff)

The following transfer instructions contemplate a servicing transfer from a FISERV and LPS client to Buyer which is also a FISERV and LPS client.

No later than 30 days prior to the Transfer Date, new Servicer must provide the following information:

•    Contact for the servicing transfer; please provide name, street address, email address, and direct phone number.

•    Loan Number cross-reference listing; GMAC will, or cause Ocwen Loan Servicing to, upload to its system for inclusion in goodbye letters, system generated service release reports, and for forwarding payments.

•    Servicing and Custodial File shipment addresses.

•    Assignment information for non-MERS loans.

•    Vesting information for deed preparation (as applicable).

•    Goodbye Letter Data:

        Servicer name
        Payment mailing address
        Correspondence address
        Customer Service toll free phone number and hours of operation
        Transferability of optional insurance and ACH (as applicable)

•    Tax Contracts

        CoreLogic (First American) tax contracts should be transferred to the following IDs:
        Corelogic Tax ID for loans: 10902
        Corelogic Tax ID for REO: 10916

•    Life of Loan Flood Contracts should be transferred to: CoreLogic Flood I.D. 458000

1

- MERS ORG ID:
  Servicer  1006053
  Investor _____

Sub Servicer _____

- HAMP Participant:  Y
  - 1MP 902039180
  - 2MP 920219209

- HAMP Servicer ID _____

- HAMP Registration ID: 10326 _____

- HAMP contact for servicing transfer reporting:
  Melissa Ward
  mward@residentialcredit.com
  817-321-6125

  Sandy Quiones
  squinones@residentialcredit.com
  817-321-6143

- Mortgagee Clause Information

  Residential Credit Solutions, Inc.
  ITS SUCCESSORS, ASSIGNS and/or Assigns
  P O Box 692330
  San Antonio, TX  78269-2330
  800-913-5173

- Wire Transfer: Provide wire instructions for funds transfer (escrow, suspense, loss draft)

  Texas Capital Bank
  Richardson, TX
  Account# 2111019135
  ABA# 111017979
  Reference: Name of retiring servicer and date of loan transfer

No later than 30 days prior to the Transfer Date, GMAC must provide the following information:
- A goodbye letter draft must be submitted (20) twenty days prior to the effective transfer date to RCS for approval prior to mailing
- Verbiage stating all optional insurance offered through the current servicer will be cancelled at the time of transfer must be included.
- Verbiage stating all automatic drafts (ACH) offered through the current servicer will be cancelled at the time of transfer must be included.
- Verbiage stating borrowers using third party drafts must contact the third party to notify them of the new account number must be included.

2

- Copies of the final goodbye letters (preferably imaged) must be provided to RCS within (5) five days of the transfer date.

**MERS Transfer Requirements**
- Non-Fannie Mae Loans
  - o MERS beneficiary rights should reference the appropriate investor Org ID.
  - o MERS servicing and/or subservicing rights should reference RCS Org ID 1006053.
- GMAC will provide confirmation of when the transfer of subservicing process will be completed in MERS.
  - o Confirmation if this process is automated or controlled by a specific group.
- GMAC will provide batch numbers for MERS transfers once completed.
- GMAC is responsible for reconciling the current status of loans registered with MERS and updating the MERS system to reflect the current status of the loan, when needed.

**Litigation (if applicable)**
- GMAC to provide report of all loans in litigation along with the following information:
  - o Case Name
  - o State in which it was filed
  - o Description of the case
  - o Recent status update
  - o Court name
  - o Court documents and Pleadings

**Title Problems (if applicable)**
- GMAC to provide report of all loans with title problems along with the following information:
  - o All title problem hard files.
  - o Title Issue (i.e. superior lien, legal description, etc.).

**Credit Bureau Reporting (if applicable)**
- GMAC to provide a list of all loans that are blocked/suppressed for credit bureau reporting along with reason.

3

## TRANSFER REPORTS

- Transmission of Loan Data:  To meet GLBA guidelines and provide a secure transfer of customer information, please provide GMAC and Ocwen Loan Servicing with the preferred method of data transmission.  Regardless of the transmission type, preliminary and final data reports will be provided.

  o    Secure Email with password protected attachment; provide email address.
  o    Secure Website; provide direction and passwords for accessing.
  o    Password protected CD-ROM; provide overnight shipment address.
  o    GMAC Transfers Secure Website; this requires 7-10 days to process the security request.

A)    Service Release Reports
1.    GMAC will, or cause Ocwen Loan Servicing to, provide preliminary Service Release Reports no later than 30 days prior to the Transfer Date.
2.    GMAC will, or cause Ocwen Loan Servicing to, provide a final set of Service Release Reports (data as of Transfer Cutoff Date) no later than 2 (two) Business Days after the Transfer Date.
3.    Service Release Report Listing (reports generate only as applicable):

**Service Release Reports Table**

| DATA FILE NAMES: | DESCRIPTION OF FILE CONTENTS |
| --- | --- |
| TRIAL BALANCE | Loan Balances |
| 30 DAY DELINQUENT-AUTO-ACCT | Loans that are 30 days past due |
| 60 DAY DELINQUENT-AUTO-ACCT | Loans that are 60 days past due |
| 90+ DAY DELINQUENT-AUTO-ACCT | Loans that are 90+ days past due |
| ARM LOANS-AUTO-ACCT | ARM loan list |
| BANKRUPTCY STATUS-AUTO-ACCT | Bankruptcy information for loans with an active bankruptcy flag |
| BANKRUPTCY TRIAL-AUTO-ACCT | Bankruptcy information for loans with an active bankruptcy flag |
| FLOOD INSURANCE-AUTO-ACCT | Flood insurance information |
| FORECLOSURE-AUTO-ACCT | Loans with an active foreclosure flag |
| SR-HAZARD INSURANCE-AUTO-ACCT | Hazard, flood, wind and earthquake insurance information |
| SR-MORT INS LPMI-POOL AUTO-ACC | LPMI and Pool Insurance information |
| SR-MORTGAGE INSURANCE-AUTO-ACC | Mortgage insurance information |
| SR-NON-TAX PAYEE LISTING-AUTO | Payee listing for hazard, flood, wind, earthquake, and optional insurance |
| SR-OPTIONAL INSURANCE-AUTO-ACC | Optional insurance information |
| SR-PAYOFF-AUTO-ACCT | Loans included in the transfer that have paid off |
| SR-PENDING ESCROW-AUTO-ACCT | Escrow items with a due date 60 days from the report |
| SR-PENDING PAYOFF-AUTO-ACCT | Loans that have requested a payoff statement |

4

A/75400601.8

| | |
|---|---|
| SR-TAX LISTING-AUTO-ACCT | Tax information |
| SR-TAX PAYEE LISTING-AUTO | Payee listing for tax items |
| SUBSIDY-AUTO-ACCT | Buydown information |
| Master Record | Master Data File |
| BorrowerInfo | Master Record-Borrower information tab |
| Default | Master Record-Default information tab |
| Escrow | Master Record-Escrow information tab |
| Status | Master Record-Loan status tab |
| Terms | Master Record-Term information tab |
| SalesRptCoBorrower | List of co-borrowers beyond 1st and 2nd |
| SaleRptDfltVendor | Default vendor/attorney information |
| SaleRptDisasterAreaLoans | Loans in an active disaster area |
| SaleRptEscrowFrequency | Frequency with which escrow items are paid/due |
| SaleRptHAMPData | HAMP information |
| SaleRptIDTheft | Loans with reported ID theft |
| SaleRptInspFees | Outstanding recoverable inspection fees |
| SaleRptNonRecFees | Outstanding non borrower recoverable fees |
| SaleRptNonRecInspFees | Outstanding non borrower recoverable inspection fees |
| SaleRptRecFees | Outstanding recoverable fees |
| Arm_History | History of ARM changes |
| ARM Data | ARM loan data |
| SCRA Sales Report | Soldiers and Sailors information |
| Code Breaker for SCRA Sales Report | Code breaker for SCRA Sales report |
| Loan Transfers with Open Loss Mit | Loans in an open Loss Mitigation status |
| ACH | Listing of loans on automatic payment withdrawal |
| Fee code 96 borrower non recoverable | Listing of fee balances which are not borrower recoverable but recoverable from the investor |
| IR2 Perm Data | HAMP IR2 permanent loans |
| IR2 Trial Data | HAMP IR2 trial loans |
| LPS Flood contract transfer | Listing of successful transfer of LOL flood contracts with LPS |
| Corelogic Flood contract transfer | Listing of successful transfer of LOL flood contracts with Corelogic |
| Payment histories | Electronic payment histories |
| Comments | Electronic notes/comments |
| Insurance Open Items | Info for policies with premiums due within 30 days after transfer that we were unable to pay prior to transfer |
| Active Liquidations in Equator De-boarding to RCS | Listing of loans with active review for Loss Mit Liquidation options (short sales, DIL, HAFA, etc.) |
| Post Transfer Contacts | Listing of departmental contacts for post-transfer issues. |

5

| | |
|---|---|
| Foreclosure Data | Supplemental file provided by the FC area. |
| Active BK Data | Report of active bankruptcy information from BK |
| Inactive BK Data | Report of inactive bankruptcy information from BK |

File layouts, data dictionaries and code-breakers necessary to interpret and board the data will be provided.  RCS will review the data layouts and advise if there are any missing fields/data that are required to board the loans onto their servicing platform.  Such notification to be received no later than 10 calendar days prior to the Transfer Date.

    4.    The following will be sent either in paper format or on CD via overnight delivery under separate cover.  Tracking information will be provided when available.

       o    Payment Histories (at final only) – all available electronic history will be provided
       o    Servicing File Shipping Manifest
       o    Loss Mitigation Info (Files, Imaged Docs, Password is lossmit1)
       o    REO Files
       o    SCRA Papers
       o    Loss Draft Files
       o    Collection Notes/Breach Letters (if not provided in electronic format)
       o    Mortgagee Clause Letters
       o    Heloc Billing Statements
       o    Corporate Advance Invoices (sent within 15 days of transfer)
       o    Escrow Analysis Statements will be provided on a case-by-case basis within 2 (two) Business Days of request.

B)    <u>Investor Accounting Reports</u>

    1.    No later than 5 (five) Business Days after the Transfer Date, GMAC will, or cause Ocwen Loan Servicing to, deliver a report of ending Scheduled or Actual Balances.
    2.    No later than 5 (five) Business Days after the Transfer Date, GMAC will, or cause Ocwen Loan Servicing to, deliver a report of reconciliation of cash/prepaid versus delinquent and curtailments.

CASH MOVEMENT

C)    <u>Transfer Funds</u> (Net of: positive and negative escrow balances, suspense, buy down, loss draft funds, and corporate advances) will be wired to Servicer 5 (five) Business Days after the Transfer Date.  If the transfer funds are a net negative, Servicer will reimburse GMAC or Ocwen Loan Servicing, as applicable, within 5 (five) Business Days of the Transfer Date.

D)    <u>Customer Payments</u>
    1.    Payments received on or before the Transfer Cutoff Date will be posted to the applicable customer account.

6

2.      Payments received after the Transfer Cutoff Date will be forwarded to Servicer on a daily basis by overnight delivery for 30 days after the Transfer.
o      Checks will be endorsed to the Servicer.
o      Bulk checks will include a loan-level listing.

E)      Payoffs

1.      Payoff funds received on or before the Transfer Cutoff Date will be posted to the applicable customer account.

2.      Payoff funds received after the Transfer Cutoff Date will be forwarded via overnight mail to the Servicer within 2 (two) Business Days of receipt. A copy of the most recent payoff statement will be included.

F)      NSF Payments

1.      GMAC will, or cause Ocwen Loan Servicing to, forward all original NSF items with a history of payment application to the Servicer.

2.      Servicer shall reimburse GMAC or Ocwen Loan Servicing, as applicable, for the returned items no later than 20 calendar days after receipt.

G)      Investor Accounting Remittance Funds

Remittance of principal and interest collections (prepaids, less delinquents). S/S and S/A will be based on a test of expected. Test of expected less remittance due will be wired within 5 (five) Business Days after Transfer Date. A/A funds will not be forwarded to Servicer.

FILE SHIPMENT

H)      Servicing/Origination files:
1.      GMAC will, or cause Ocwen Loan Servicing to, deliver servicing files (images and hard copy) to the Servicer within 15 days after the Transfer Date. Ocwen will provide a report of all Servicing/Origination files that are imaged. Imaged files will be sent via overnight delivery on a hard drive

NOTIFICATIONS

GMAC will, or cause Ocwen Loan Servicing to, send the following notifications:

I)      Customer Notification (Goodbye Letter)

GMAC will, or cause Ocwen Loan Servicing to, notify all Customers advising them of the occurrence of the transfer. Letter will be sent no later than 15 days prior to the Transfer Date and will include the following information:

o      GMAC or Ocwen Loan Servicing loan number, as applicable

  o   Servicer loan number (if cross reference is provided)

  o   Servicer's payment address

  o   Servicer's toll free telephone number

  o   Servicer's business hours

  o   Transfer Date

  o   GMAC or Ocwen Loan Servicing toll-free telephone number, as applicable

  o   Any other information required by the Real Estate Settlement Procedures Act and its implementing regulations.

**K)**  Change Endorsements
  Prior to the Transfer Date, GMAC will, or cause Ocwen Loan Servicing to, prepare and submit to each hazard/flood carrier a Notice of Change of Mortgagee Clause (Loss Payable Clause) for each loan included in the transfer.  For all hazard insurance EDI carriers, GMAC will, or cause Ocwen Loan Servicing to, provide a tape to each EDI carrier to enable them to correct the mortgagee clause.

**L)**  MERS
  GMAC will, or cause Ocwen Loan Servicing to, complete the transfer of servicing in MERS (TOS batch) to Servicer within 5 (five) Business Days after the Transfer Date.

**M)**  PMI/MI
  GMAC will, or cause Ocwen Loan Servicing to, notify all PMI/MI carriers of the transfer of servicing.

**N)**  Tax Service
  If Servicer utilizes CoreLogic (CLTS) for their tax service, GMAC shall, or cause Ocwen Loan Servicing to, notify CLTS to transfer the life of loan tax contracts to Servicer.

**O)**  HUD
  For any FHA loans, GMAC will, or cause Ocwen Loan Servicing to, send an electronic file (92080) to HUD changing the Servicer and Holder ID to Servicer's number.

**P)**  YEAR-END  REPORTING
  GMAC will, or cause Ocwen Loan Servicing to, report to the IRS and provide to the customers all 1098 and 1099 forms required reflecting interest paid by customers and interest on escrow paid to customers for the period GMAC or Ocwen Loan Servicing, as applicable, serviced the loans.  Copies of the statements will be provided on a case-by-case basis within 2 (two) Business Days of customer request.

ESCROW / HAZARD CLAIMS

**Q)**  Tax, Hazard/Flood, PMI/MI

8

1.      Payments

Prior to the Transfer Date, GMAC will, or cause Ocwen Loan Servicing to, pay all taxes and assessments, insurance premiums, and PMI/MI premiums due within 30 days after the Transfer Date (based on Ocwen's tax due dates) for which bills have been received.

2.      Report of Open Items

30 days prior to the servicing transfer date, GMAC will, or cause Ocwen Loan Servicing to, provide an open items listing for each account with taxes, hazard/flood, or PMI/MI due within 60 days after the Transfer Date and remain unpaid.

3.      Post Transfer Data

Subsequent to the Transfer Date, GMAC will, or cause Ocwen Loan Servicing to, forward all tax, hazard/flood, and PMI/MI information to Servicer via fax.

4.      Lender Placed Coverage

GMAC will, or cause Ocwen Loan Servicing to, terminate lender placed coverage as of Transfer Cutoff Date.

Upon receipt, GMAC will, or cause Ocwen Loan Servicing to, forward any refund of lender placed coverage premium received as a result of termination.  If funds are sent to Buyer via wire, appropriate backup will be provided. >

R)      Hazard Claims/Loss Drafts

1.      Loss Draft Files

GMAC will, or cause Ocwen Loan Servicing to, forward any loss draft files for claims currently in process.

2.      Loss Draft Funds

GMAC will, or cause Ocwen Loan Servicing to, wire the balance of all monies in a restricted field for loss drafts (as part of the Transfer Funds).

S)      Interest on Escrow

GMAC will, or cause Ocwen Loan Servicing to, post all accrued interest due on escrow accounts prior to the Transfer Date.  The transaction will appear on the payment history and the final escrow balance will reflect this deposit.

T)      Optional Insurance/Optional Products

RCS does not support optional insurance products.  GMAC's or Ocwen's goodbye letters, as applicable, should indicate so.

A/75400601.8

DEFAULT

U)      Collection - Contact and Collection Histories

      1.      GMAC will, or cause Ocwen Loan Servicing to, provide collection notes for the last 24 months.

      2.      GMAC will, or cause Ocwen Loan Servicing to, provide copies of all current breach letters for loans 90 days or more delinquent.

V)      Modification Information

      3.      Discussion related to supplemental systems being used to support HAMP process.
      4.      Modification Data Requirements
          a.      See reports section for modification data (HAMP & non-HAMP)
          b.      Modification documents will be provided on imaging.
          c.      HAMP Modifications
      The following documents must be completed for the transfer:
          o      HAMP Assignment and Assumption Agreement
          o      Exhibit of HAMP eligible loans (Schedule 1 to the Assignment and Assumption Agreement).
          o      HAMP OPS Service Transfer Instructions

**Workout Loans (if applicable)**
      1.      GMAC will provide a list of loans in any type of pending workout situation, including:
      o      Short Sale
      o      Modifications
      o      Deed-in-Lieu
      o      Forbearance Agreements
      o      Mediation
      o      Supporting documentation should include:
          o      Copies of modification documents
          o      Payoff Quotes
          o      Correspondence
          o      Loss Mitigation Package (borrower pay stubs, bank statements, tax returns, hardship letters, financial statements, etc.)
          o      Documents and correspondence sent to borrower.

**Financial packages, modification agreements, research items, repayment plans, short sales, pending deed in lieu, all applicable data elements and indicator (completed, in process, etc) are required.**

V)      Foreclosure, Bankruptcy, Loss Mitigation, REO

      Foreclosure, Bankruptcy, Loss Mitigation, and REO data will be provided in either paper format or on CD (depending on volume).  Data will be shipped via overnight delivery; tracking information will be provided.

10

- **GMAC will provide (at a minimum) (2) two points of contacts that be reached for foreclosure related questions/issues**
- If LPS Desktop is utilized for foreclosure, bankruptcy and/or eviction tracking, GMAC will initiate a Bank Copy/Move with LPS to transfer the loan history to the RCS Client Managed region.  All costs for the Bank Copy/Move process should be billed to and paid by RCS.
- Fifteen (15) days prior to transfer, provide a list of all loans in foreclosure that have a foreclosure sale scheduled from that point to (30) thirty days after transfer. Any bids requested by the firm for sales that fall within this period will need a secondary approval from RCS.
- GMAC will provide a list of all hearings and mediations that are scheduled from 15 days prior to transfer to 30 days post transfer.
- GMAC should ensure that local counsel has everything they need to scheduled hearings and direct local counsel to RCS should additional information be needed. NO HEARINGS SHOULD BE CANCELLED/POSTPONED unless otherwise approved by RCS or the investor.
- GMAC will notify foreclosure attorneys in LPS Desktop advising that all future billings, correspondence and inquiries should be directed to RCS..
- If notification of transfer is not made via LPS Desktop, notices to the foreclosure attorney will be made within 5 days of servicing transfer.
- GMAC is to provide a list of all contested foreclosures.
- GMAC is to provide a list or identify any multiple lien foreclosures.
- GMAC will provide foreclosure documentation as it pertains to the following:
  - o  Records of all foreclosure activity including exceptions, demolitions, seizures, etc.
  - o  Copies of investor (FHA, VA or PMI) correspondence.
  - o  Copies of all foreclosure related documents, including court documents.
  - o  Copies of all affidavits/verifications/certifications reviewed and approved by GMAC along with supporting documentation or critical information within these documents.
  - o  Itemized listing of all foreclosure expenses to date (in electronic format), including supporting documentation (i.e. invoices, approval records, etc.).
  - o  Copies of appraisals and/or BPOs
  - o  Bid instruction letters
  - o  Any adverse conditions affecting the foreclosure must be clearly indicated.
  - o  Copy of all demand notices for the current default of the loan along with certified return cards, including non-demand state required letters. The servicer should provide proof of proper mailing to all borrower and non-obligors (when applicable) as well as proof of proper registration, where applicable.
    - ▪  New York: A valid 90-day letter along with proof of property registration and mailing.

- ▪ Tennessee: A copy of the latest, valid Tennessee Right to Foreclose letter.
- ▪ North Carolina: A valid 45-day letter along with proof of proper registration and mailing,
- ▪ Illinois: A copy of a valid Illinois Grace Period Notice.
- ▪ Indiana: A copy of the latest, valid Illinois Pre-foreclosure Notice.
- ▪ New Jersey: A valid New Jersey NOI compliant with the Fair Foreclosure Act.
- ▪ Pennsylvania: Valid Act 6 and Act 91 letters, where applicable, along with proof of proper registration/payment.
- ▪ Connecticut: A copy of the latest, valid EMAP notice.
- ▪ Iowa: A copy of the latest, valid Iowa Mediation notice.
- ▪ Massachusetts: A copy of the latest, valid MA 150-day letter.
- ▪ Virginia: A copy of the latest, valid VA 10-day notice.
- ▪ All Other States: RCS requires that any normal demand received for states listed above or all other states be in compliance with the latest requirements outlined by that state, when applicable.
  - o Power of Attorney for any action in the name of entity so that RCS can execute documents, as needed.
  - o A list of all foreclosure actions that are on hold, the reason they are on hold and the hold start date.
  - o List of loans under Loss Mitigation review that are not necessarily on hold.
- • GMAC will provide a preliminary and final report with the following information:
  - o Breach Sent Date
  - o Due Date at Breach
  - o State Ancillary Letter Sent Date (see information above for letter types dates would be needed for)
  - o Pre Foreclosure 14 Day Letter/Last Date Sent
  - o Action in the Name Of
  - o Vesting in the Name Of
  - o Hold Type (if applicable)
  - o First Legal Date
  - o Foreclosure Bid Amount
  - o Judgment Date
  - o Attorney Referral Date
  - o Publication Date
  - o Scheduled Sale Date
  - o Redemption Expiration Date
  - o Confirmation or Ratification Date
  - o Status of Foreclosure
  - o Occupancy Status
  - o Valuation Date

12

- o    Valuation Amount
- o    Foreclosure Attorney Name
- o    Foreclosure Attorney Email Address
- o    Foreclosure Attorney Phone Number
-      Foreclosure Attorney Address

**Property Preservation Information (if applicable)**

- •    GMAC will provide the following information:
  - o    Key Code to subject property, if property has been secured.
  - o    Name of vendor and contractor involved with property preservation; contact information for same.
  - o    Notice of any outstanding work orders (securing, property maintenance, etc.).
  - o    Most recent occupancy status
  - o    Last Inspection report, to include if damages have occurred
  - o    Vacant Property Registrations

**Bankruptcy Information (if applicable)**
- •    GMAC is to utilize LPS Desktop to communicate applicable transfer information to the attorney and ensure those processes and any related comments are available as part of the bank copy.
- •    GMAC will initiate a Bank Copy/Move with LPS to transfer the loan history to the RCS Client Managed region. All costs for the Bank Copy/Move process should be billed to and paid by RCS.
- •    GMAC is to provide a list of all discharged chapter 7 loans, including discharge date. (on service release reports)
- •    GMAC will provided (at a minimum) (2) two points of contact that can be reached for Bankruptcy related questions/issues.
- •    New servicer will obtain the following from LPS Bank Copy/Move process, from the service release reports or from PACER:
  - o    Copies of bankruptcy notices/petitions, including court documents.
  - o    Copies of all affidavits/verifications/certifications reviewed and approved by GMAC along with supporting documentation of critical information within those documents.
  - o    Schedule of payments paid to date, inside and outside the plan, if applicable.
  - o    Schedule of APO payments, including copy of terms and next APO payment date.
  - o    Bankruptcy related correspondence
  - o    Bankruptcy attorney's name and contact information
  - o    Information regarding attorney handling relief action, if applicable.
  - o    Report of any scheduled hearings to take place within (15) fifteen days of transfer date or up to (30) thirty days after the transfer date.
  - o    Payment history clearly outlining all pre-petition and post-petition payments made to prior servicer.
  - o    List of any active Chapter 11 cramdowns.

13

- o   Copy of the plan and information/data that indicates that loan has been set-up to perform according to the plan.
- o   List of cram down loans.
- o   Documents related to all payment change notifications and post-petition fee/cost notifications that have been filed with the court.
- GMAC will provide a preliminary and final report with the following information:
  - o   Prior Chapter 7 Discharge Flag
  - o   Filed Reaffirmation Agreement Flag
  - o   Bankruptcy Chapter
  - o   Motion for Relief Filing Date
  - o   Motion for Relief Hearing Date
  - o   Date of Filing
  - o   Case Filing State
  - o   Case Filing District
  - o   Case Filing County
  - o   Name of BK Filer
  - o   Unapplied Funds
  - o   Case Number
  - o   Post-Petition Next Due Date
  - o   Post-Petition Payments
  - o   Plan Objection
  - o   Objection Status
  - o   Adversary or Litigation
  - o   Retain or Surrender Property
  - o   Current Bankruptcy Status
  - o   Sent to Attorney for Relief Action Flag
  - o   Proof of Claim/Amended POC Filing Date
  - o   Proof of Claim/Amended POC: Original Balances
  - o   Proof of Claim/Amended POC: Arrearage Filed
  - o   Date of Plan Confirmation
  - o   Bankruptcy Attorney Name
  - o   Bankruptcy Attorney Phone Number
  - o   Foreclosure Status
  - o   Relief or Agreed Order Filing Date
  - o   FL Scheduled Hearing Date (if applicable)
  - o   Debtor's Counsel Name and Address
  - o   Chapter 13 Trustee Name and Address
  - o   All Payment Change Notification Dates
  - o   All Post-Petition Fees/Costs Notification Date
  - o   Last Motion to Deem Current Information (Chapter 13)

**Real Estate Owned ("REO") (if applicable)**
- GMAC will provide the foreclosure referral date and foreclosure sale date on all loans acquired through foreclosure.
- GMAC will provide the acquired date on all loans acquired through Deed in Lieu.
- GMAC will provide REOgram confirmation.

14

- GMAC will provide a final report listing all properties in REO status including property address, legal description, foreclosure sale date and loan balance at foreclosure (in electronic format).
- GMAC will provide notification to attorney of service release.
- GMAC will provide copies of pre-foreclosure property inspection report.
- GMAC will provide a list of vendors used, HOA information and pre-foreclosure property preservation information, including the following:
  - o Company Name
  - o Mailing Address
  - o Contact Name and Phone Number
  - o Tax ID Number
  - o Payee Number, if applicable, with cross reference
  - o HOA Payment Date
  - o HOA Next Due Date
- GMAC will provide contact information for foreclosure attorneys.
- GMAC will provide a preliminary and final report with the following information:
  - o Next Due Date
  - o Amount Next Due
  - o Payment Frequency
  - o Payee Name and Address
  - o Parcel ID Number
  - o Foreclosure Attorney Name and Contact Information
  - o Eviction Attorney Name and Contact Information
  - o Closing Attorney Name and Contact Information
  - o REO Acquired Date
  - o Eviction Start Date
  - o Eviction End Date
  - o Secured Date
  - o REO Appraisal Date
  - o REO BPO Date
  - o REO FMV Date
  - o REO FMV
  - o REO Status
  - o Date Listed
  - o Original Listing Amount
  - o Current Listing Amount
  - o Offer Accepted Date
  - o Offer Accepted Amount
  - o Anticipated Close Date
  - o Listing agent" contact info
  - o Redemption expiration date
  - o Offer concession amount
  - o FCL Deed recording info (date and instrument #)
  - o Insurance claim information for property damage
  - o Insurance claim information for PMI

15

    o  Liens and demolition notices and known information
    o  Broker Name and Contact Information

W)  <u>Corporate Advances</u>

  1.  GMAC will, or cause Ocwen Loan Servicing to, provide a Fee report in Excel format which provides the outstanding fee/advance detail at loan level.

  2.  Documentation supporting the fee/advance (e.g., invoices) will be provided within 15 calendar days after the Transfer Date.  Documentation will be sent in electronic format.

16

**EXHIBIT 4**

**Specified Loans**

List of Specified Loans

| SID | | Loan Number |
|---|---|---|
| 713907268 | | 40306280 |
| 713907228 | | 40300770 |
| 713906955 | | 40291058 |
| 713906756 | | 40289387 |
| 713906288 | | 40277662 |
| 713907975 | | 40274131 |
| 713906013 | | 40273194 |
| 713904662 | | 40245461 |
| 713904964 | | 40243495 |
| 713905269 | | 40238192 |
| 713904192 | | 40230535 |
| 713903900 | | 40221596 |
| 713902552 | | 40215028 |
| 713909344 | | 40210267 |
| 713902715 | | 40204347 |
| 713304470 | | 116166104 |
| 713300101 | | 116164571 |
| 713301881 | | 116141153 |
| 713301059 | | 116129562 |
| 713301857 | | 116125126 |
| 713298074 | | 116125112 |
| 713297654 | | 116124644 |
| 359521466 | | 116124477 |
| 713300346 | | 116106997 |
| 713297795 | | 116093501 |
| 359516568 | | 116091291 |
| 713301144 | | 116090878 |
| 713297399 | | 116077004 |
| 713297412 | | 116076998 |
| 359520262 | | 116073360 |
| 713298589 | | 116072993 |
| 359515407 | | 116064233 |
| 713299259 | | 116063870 |
| 713299910 | | 116060666 |
| 713295312 | | 116048543 |
| 713296507 | | 116045942 |
| 713295093 | | 116029217 |
| 713294163 | | 115989546 |
| 713299121 | | 115968263 |
| 713294513 | | 115956819 |
| 713295888 | | 115937395 |
| 713297129 | | 115935959 |
| 713294969 | | 115933532 |
| 713292700 | | 115905439 |
| 713292738 | | 115872409 |
| 713297692 | | 115845866 |
| 713292208 | | 115833092 |
| 713290886 | | 115829208 |
| 713289881 | | 115828865 |
| 713287151 | | 115786044 |
| 359512407 | | 115782978 |
| 713289251 | | 115767920 |
| 713293470 | | 115764827 |
| 713287710 | | 115749409 |
| 713287097 | | 115749319 |
| 713288347 | | 115733472 |
| 713287808 | | 115733224 |

| SID | | Loan Number |
|---|---|---|
| 359513198 | | 115722168 |
| 713291676 | | 115709679 |
| 713286472 | | 115672489 |
| 713282443 | | 115590149 |
| 713284663 | | 115499886 |
| 713277621 | | 115387194 |
| 359477251 | | 114557001 |
| 359393214 | | 114029154 |
| 359370866 | | 113664084 |
| 359368072 | | 113049501 |
| 359295810 | | 112426869 |
| 713914859 | | 40501187 |
| 713900829 | | 40188135 |
| 713900914 | | 40187699 |
| 713900185 | | 40175743 |
| 713900426 | | 40173758 |
| 713915055 | | 40499411 |
| 713914481 | | 40491752 |
| 713913731 | | 40473495 |
| 713914081 | | 40469352 |
| 713913545 | | 40461711 |
| 713913448 | | 40438503 |
| 713912898 | | 40422295 |
| 713912592 | | 40418380 |
| 713913419 | | 40403719 |
| 713911264 | | 40402328 |
| 713912065 | | 40402302 |
| 713911581 | | 40401898 |
| 713911393 | | 40393005 |
| 713911008 | | 40391706 |
| 713911478 | | 40384224 |
| 713911308 | | 40383339 |
| 713909896 | | 40370616 |
| 713910587 | | 40367125 |
| 713909301 | | 40354226 |
| 713909077 | | 40351762 |
| 713908645 | | 40341053 |
| 713908734 | | 40335180 |
| 713908207 | | 40332531 |
| 713907401 | | 40320610 |
| 713908213 | | 40318926 |
| 713905145 | | |
| 359494181 | | |
| 713906314 | | |
| 713903306 | | |
| 713903976 | | |
| 713904755 | | |
| 713910848 | | |

ny-1093476