**DECHERT LLP**
Glenn E. Siegel
Craig P. Druehl
James O. Moore
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALSTON & BIRD LLP**
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Dale C. Christensen, Jr.
Thomas Ross Hooper
Benay L. Josselson
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of New York, as Separate Trustee of Certain Mortgage-Backed Securities Trusts*

**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee of Certain Mortgage-Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALLEN & OVERY LLP**
John Kibler
1221 Avenue of Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Counsel to HSBC Bank USA, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**JOINDER OF CERTAIN RMBS TRUSTEES TO THE DEBTORS' MOTION FOR
AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 363(b)
AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER A
PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE
<u>CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION ........................................................................................................................ 5

BACKGROUND ........................................................................................................................ 7

ARGUMENT .............................................................................................................................. 7

I.    THE LEGAL STANDARD FOR THE RMBS TRUSTEES' ENTRY INTO THE
      AGREEMENT .................................................................................................................. 7

      A.    The Governing Agreements Authorize the
            RMBS Trustees to Enter into the Plan Support Agreement ................................. 7

      B.    Entry into the Agreement Was Reasonable and
            in Good Faith in  Satisfaction of Standards under New York Law ..................... 11

      C.    Investors Received Sufficient Notice of the Plan Support Agreement................ 13

II.   THE COURT SHOULD APPROVE THE FINDINGS THAT RATIFY THE
      RMBS TRUSTEES' JUDGMENT IN ENTERING INTO THE AGREEMENT........... 15

      A.    The RMBS Trustees' Actions in the Course of
            Plan Negotiations and the Mediation Process Were Reasonable........................ 15

      B.    The Agreement Is in the Best Interests of the Investors ..................................... 17

JOINDER ................................................................................................................................. 20

## TABLE OF CONTENTS
(continued)

Exhibit A:   Declaration of Robert H. Major of BNY Mellon

Exhibit B:   Declaration of Brendan Meyer of Deutsche Bank

Exhibit C:   Declaration of Fernando Acebedo of HSBC

Exhibit D:   Declaration of Thomas Musarra of Law Debenture

Exhibit E:   Declaration of Mamta K. Scott of U.S. Bank

Exhibit F:   Declaration of Mary L. Sohlberg of Wells Fargo

Exhibit G:   Affidavit Regarding Dissemination of Notices and Information to
             RMBS Trust Certificateholders, made by Jose Fraga of Garden City Group, Inc.

# TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*Asset Securitization Corp. v. Orix Capital Mkts., LLC,*
    784 N.Y.S.2d 513 (App. Div. 2004) ........................................................................................9

*Bayerische Landesbank v. Deutsche Bank AG (In re Residential Capital, LLC),*
    488 B.R. 565 (Bankr. S.D.N.Y. 2013) ..................................................................................5

*Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc.,*
    174 B.R. 28 (S.D.N.Y. 1994) ..................................................................................................5

*Brown v. John Hancock Mut. Life Ins. Co. of Boston,*
    145 Misc. 642 (N.Y. Mun. Ct. 1932) ...................................................................................10

*City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.,*
    572 F. Supp. 2d 314 (E.D.N.Y. 2008) ...................................................................................5

*Congregation Yetev Lev D'Satmar, Inc. v. Cnty. of Sullivan,*
    59 N.Y.2d 418 (1983) ............................................................................................................14

*Harkness v. Doe,*
    689 N.Y.S.2d 586 (App. Div. 1999) .....................................................................................14

*Haynes v. Haynes,*
    72 A.D.3d 535 (N.Y. App. Div. 2010) .................................................................................11

*In re Delta Air Lines, Inc.,*
    370 B.R. 537 (Bankr. S.D.N.Y. 2007) ............................................................................7, 11

*In re First Trust & Deposit Co.,*
    280 N.Y. 155 (1939) ..............................................................................................................11

*In re IBJ Schroder Bank & Trust Co.,*
    Index No. 101530/98, 2000 N.Y. Misc. LEXIS 692 (Sup. Ct. N.Y. Cnty. Aug. 16,
    2000) .......................................................................................................................................12

*In re Matter of De Sanchez,*
    2008 NY slip op. 50342U (Sup. Ct. N.Y County 2008) ..................................................13, 15

*In re Quigley Co., Inc.,*
    676 F.3d 45 (2d Cir. 2012) ......................................................................................................7

*In re River Center Holdings, LLC,*
    288 B.R. 59 (Bankr. S.D.N.Y. 2003) .....................................................................................6

# TABLE OF AUTHORITIES

(continued)

CASES                                                                    PAGE(S)

*In re U.S. Lines, Inc.*,
  197 F.3d 631 (2d Cir. 1999)....................................................................6

*LaSalle Bank Nat'l Assoc. v. Lehman Bros. Holdings, Inc.*,
  237 F. Supp. 2d 618 (D. Md. 2002) .........................................................9

*LaSalle Bank Nat'l Assoc. v. Nomura Asset Capital Corp.*,
  180 F. Supp. 2d 465 (S.D.N.Y. 2001).....................................................10

*Levine v. Behn*,
  169 Misc. 601 (Sup. Ct. N.Y. County 1938), *aff'd*, 257 A.D. 156 (1st Dep't 1939),
  *reversed on other grounds*, 282 N.Y. 129 (1940)...................................10

*Matter of Munford, Inc.*,
  97 F.3d 449 (11th Cir. 1996) ...................................................................6

*Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*,
  467 B.R. 694 (S.D.N.Y. 2012)................................................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................13, 14

*Wells Fargo Bank, N.A., Trustee v. Konover*,
  No. 3:05 CV 1924(CFD), 2009 WL 2710229 (D. Conn. 2009) ..........................9

STATUTES                                                                 PAGE(S)

28 U.S.C. § 1334.......................................................................................5

28 U.S.C. § 157......................................................................................5, 6

N.Y. C.P.L.R. § 7701 .............................................................................12

OTHER AUTHORITIES                                                        PAGE(S)

*Restatement (Second) of Trusts* (1959) ......................................................12

The Bank of New York Mellon, The Bank of New York Mellon Trust Company,

N.A. (collectively, "**BNY Mellon**"), Deutsche Bank National Trust Company and Deutsche

Bank Trust Company Americas (together, "**Deutsche Bank**"), U.S. Bank National Association

("**U.S. Bank**"), Wells Fargo Bank, N.A. ("**Wells Fargo**"), HSBC Bank USA, N.A. ("**HSBC**"),

and Law Debenture Trust Company of New York ("**Law Debenture**"),[1] each in their respective

capacities as a Trustee[2] for certain RMBS Trusts (collectively, the "**RMBS Trustees**"),[3] by and

through their undersigned counsel, hereby file (i) this joinder (the "**Joinder**")[4] to the *Debtors'*

*Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the*

*Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the*

*Creditors' Committee, and Certain Consenting Claimants* (the "**PSA Motion**") [Docket No.

3814] for entry of an order substantially in the form attached to the PSA Motion as Exhibit 1 (the

"**Proposed Order**"), approving the Debtors' entry into and performance under a plan support

agreement (the "**Plan Support Agreement**") among (a) the Debtors, (b) the Debtors' indirect

parent, Ally Financial Inc. (together with its non-debtor affiliates, "**AFI**"), (c) the Committee and

---

[1]  For certain mortgage-backed securities trusts for which Wells Fargo serves as RMBS Trustee, Law Debenture Trust was appointed Separate Trustee, pursuant to orders dated November 7, 2012 and November 8, 2012 (the "Minnesota Orders") issued by the District Court, Fourth Judicial District, State of Minnesota.  As Separate Trustee, Law Debenture is authorized, among other things, to pursue the claims covered by the RMBS Settlement Agreements. Each of Wells Fargo and Law Debenture joins in this Joinder to the extent of their respective obligations as Trustee or Separate Trustee under the Instruments of Appointment and Acceptance attached to the Minnesota Orders.

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the PSA Motion.

[3]  The term "RMBS Trustees" has been defined, at different times in the Chapter 11 Cases, in slightly different ways.  As used herein, unless the context dictates otherwise, the term "RMBS Trustees" shall include Deutsche Bank, BNY Mellon, U.S. Bank, Wells Fargo, HSBC and, from the time of its appointment as Separate Trustee, Law Debenture, and refers to such entities in their capacities as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or other similar agencies or as master servicer for the RMBS Trusts.

[4]  BNY Mellon, Deutsche Bank and U.S. Bank file this Joinder solely in their capacity as RMBS Trustees and not as members of the Official Committee of Unsecured Creditors (the "**Committee**").  Law Debenture, Wells Fargo and HSBC are not members of the Committee.

(d) certain Consenting Claimants (the Consenting Claimants together with AFI, the "**Supporting Parties**"), and (ii) the RMBS Trustee declarations[5] attached hereto in support of the Joinder and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The RMBS Trustees participated in the arduous negotiations that culminated in the Plan Support Agreement, the Term Sheet and the Supplemental Term Sheet (collectively, the "**Agreement**").  The Agreement provides for the treatment of the claims of the RMBS trusts (the "**RMBS Trust Claims**") for which any of the RMBS Trustees act as trustee (the "**RMBS Trusts**")[6] in a plan of reorganization to be filed by the Plan Proponents.[7]  The RMBS Trustees are the sole parties entitled to assert, settle and vote the claims of the RMBS Trusts in the Debtors' chapter 11 cases (the "**Chapter 11 Cases**").  The economic stakeholders of the RMBS Trusts are the current Investors who hold the mortgage-backed securities, notes and certificates related to the RMBS Trusts.  While certain of the Investors, including the Institutional Investors, are parties to the Agreement as Consenting Claimants, it would be impractical, if not impossible, to attempt to include as parties to the Agreement all of the Investors in the excess of 1,000 RMBS Trusts that are affected by the Agreement.  In light of this impracticality, the RMBS Trustees have made it

---

[5]    In support hereof, each of the RMBS Trustees submit the following declarations (collectively, the "**RMBS Trustee Declarations**"): the Declaration of Robert J. Major of BNY Mellon attached as Exhibit A; the Declaration of Brendan Meyer of Deutsche Bank attached as Exhibit B; the Declaration of Fernando Acebedo of HSBC attached as Exhibit C; the Declaration of Thomas Musarra of Law Debenture attached as Exhibit D; the Declaration of Mamta K. Scott of U.S. Bank attached as Exhibit E; the Declaration of Mary L. Sohlberg of Wells Fargo attached as Exhibit F; and the Affidavit Regarding Dissemination of Notices and Information to RMBS Trust Certificateholders, made by Jose Fraga of Garden City Group, Inc. (the "Fraga Affidavit"), attached as Exhibit G.

[6]    If there are residential mortgage backed trusts other than the RMBS Trusts (i.e., the one that the RMBS Trustees are authorized to act for) that have claims against the Debtors subject to allowance, the treatment of the claims of such other trusts will also be as contemplated by the Agreement.

[7]    As defined in the Plan Support Agreement, "Plan Proponents" means the Debtors and the Committee.

clear throughout these Chapter 11 Cases that their willingness to agree to a resolution of the

claims of the RMBS Trusts would be conditioned on the RMBS Trustees being afforded an

opportunity to provide notice to all Investors and the Bankruptcy Court making certain

findings relating to their conduct and the effect of any agreements on the Investors.  The

Consenting Claimants therefore all agreed that the Bankruptcy Court order approving the

Agreement should contain certain findings relating to the RMBS Trusts, the RMBS Trustees

and the Investors and that the hearing on the PSA Motion would be scheduled on a date no

later than thirty-seven days after the filing of the PSA Motion so as to ensure adequate

notice to the Investors.  The RMBS Trustees submit this Joinder in support of the PSA

Motion to provide the Bankruptcy Court with additional support for the requested findings

contained in the Proposed Order.

2.    The Agreement was negotiated at arm's length by sophisticated parties and

represents a comprehensive agreement among those parties to resolve the most significant

disputes in these Chapter 11 Cases.  Among the settlements contemplated by the Agreement

is the RMBS Settlement.[8]  The RMBS Trustee Declarations evidence that the RMBS

Trustees have acted in good faith by entering into the Agreement and that the RMBS

Settlement provides for a reasonable settlement of the RMBS Trust Claims.  The RMBS

Trustee Declarations describe, among other things, the history behind the Agreement and

---

[8]    "RMBS Settlement" is defined in the Plan Support Agreement as "the Debtors' agreements with certain
Institutional Investors relating to claims of the RMBS Trusts as modified in the Supplemental Term Sheet (as
defined in the Plan Term Sheet)."  Plan Support Agreement at p. 7.  The term is given added specificity in the
Supplemental Term Sheet, which provides as follows: "The Plan shall incorporate a settlement that provides for
the allowance, priority, and allocation of the RMBS Trust Claims through approval of the Debtors' prior
agreement with the Institutional Investors, which covered 392 RMBS Trusts (the "Original Settling Trusts") and
is documented in the two Third Amended and Restated Settlement Agreements filed with the Court on March
15, 2013 (the "Original Settlement Agreements"), which shall be modified as set forth below under the Plan
(the "RMBS Settlement") ..."  Supplemental Term Sheet at p. 4.  The modifications to the Original Settlement
Agreements referenced in this more specific definition are found on the following pages of the Supplemental
Term Sheet and the RMBS Trust Allocation Protocol attached as Annex III to the Supplemental Term Sheet.

the principle terms of the RMBS Settlement. The RMBS Trustee Declarations also demonstrate that the RMBS Trustees' decision to enter into the Agreement was reasonable and satisfied the standards applicable for the RMBS Trustees' actions here. To the extent that any Investors do not desire the RMBS Trusts in which they hold RMBS to be bound by the Agreement, they have the option to direct the applicable RMBS Trustee to withdraw its execution of the Agreement in respect of the applicable RMBS Trust. Accordingly, the RMBS Trustees submit that in executing the Agreement and fulfilling their obligations under the Agreement, including voting to accept that Plan, they have and will appropriately acquit their duties on behalf of each applicable RMBS Trust.

3. Among other things, the Agreement provides that the Proposed Order include findings reasonably acceptable to the RMBS Trustees. This Joinder and the RMBS Trustee Declarations hereto support the findings in paragraphs 3–5 of the Proposed Order, which provide that (i) the Agreement and the transactions contemplated therein are in the best interests of, *inter alia*, the RMBS Trusts and the Investors, (ii) the RMBS Trustees acted reasonably and in good faith and in the best interests of the Investors and the RMBS Trusts in entering into the Agreement, and (iii) the notice of the Agreement, the RMBS Settlement and the FGIC Settlement provided to Investors was sufficient and effective to put them on notice of the Agreement, the RMBS Settlement and the FGIC Agreement.

4. As set forth herein, there is ample legal support for the RMBS Trustees' authority to enter into the Agreement, and for the Court's authority to approve the Agreement and to make it binding on all the Investors. In exercising its authority to approve the Agreement, under well-settled law the Court should ratify the RMBS Trustees' judgment unless the Trustees acted dishonestly or with an improper motive, failed to use their

judgment or acted beyond the bounds of a reasonable judgment.  And finally, the Court will

have jurisdiction over – and therefore can bind – all Investors because the notice program

utilized by the RMBS Trustees is robust and fully satisfies New York and federal due

process requirements.

## **JURISDICTION**

5.      This Court has jurisdiction to consider the PSA Motion and this Joinder

pursuant to 28 U.S.C. §§ 157 and 1334.  Pursuant to Section 1334(b), "a district court has

jurisdiction over cases under title 11, proceedings arising under title 11, proceedings arising

in a case under title 11, and proceedings *related to* a case under title 11." *Bayerische*

*Landesbank v. Deutsche Bank AG (In re Residential Capital, LLC)*, 488 B.R. 565, 572

(Bankr. S.D.N.Y. 2013) (citing 28 U.S.C. § 1334(b)).  The "related to" jurisdiction

constitutes a broad grant of federal jurisdiction.  *See id.* ("Such 'related to' jurisdiction is a

broad grant of federal jurisdiction."); *see also City of Ann Arbor Emps. Ret. Sys. v.*

*Citigroup Mortg. Loan Trust Inc*., 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008) ("The scope of

'related to' bankruptcy jurisdiction has been broadly interpreted by the Second Circuit.");

*Bond St. Assocs., Ltd. v. Ames Dep't Stores, Inc*., 174 B.R. 28, 32–33 (S.D.N.Y. 1994)

("[S]ection 1334(b), taken as a whole, constitutes an extraordinarily broad grant of

jurisdiction to the Article III District Court.").  "Related to" bankruptcy jurisdiction is

established "in any civil action where the outcome 'might have a conceivable effect'" on the

bankruptcy estate.  *Bayerische Landesbank* 488 B.R. at 572 (citing *Publicker Indus., Inc. v.*

*U.S. (In re Cuyahoga Equip. Corp*.), 980 F.2d 110, 114 (2d Cir. 1992)).  Pursuant to Section

157(a), a district court may refer all such cases to the bankruptcy court. *See* 28 U.S.C. §

157(a).

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Pursuant to

Section 157(b)(1), core proceedings are proceedings "arising under title 11, or arising in a

case under title 11," in which the court may enter orders and judgments.  28 U.S.C.

§ 157(b)(1).  Section 157(b)(2) sets forth a non-exclusive list of proceedings which

Congress thought to be core.  The Second Circuit has held that "'core proceedings' should

be given a broad interpretation that is 'close or congruent with constitutional limits'."  *In re*

*U.S. Lines, Inc*., 197 F.3d 631, 637 (2d Cir. 1999) (quoting *Resolution Trust Corp. v. Best*

*Prods. Co., Inc. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995)).  The PSA Motion

and this Joinder are within a core proceeding because the Agreement resolves the claims

against the Debtors' estates, including the RMBS Trust Claims and provides for the terms of

a plan of reorganization, including the treatment of the RMBS Trust Claims.

7.      In particular, this Court has jurisdiction to make the findings in

paragraphs 3-5 of the Proposed Order because the Debtors are required to indemnify the

RMBS Trustees for any liability resulting from the RMBS Trustees' entry into the

Agreement and the inclusion of those findings in the Proposed Order would diminish the

chance that the Debtors' estates would need to indemnify the RMBS Trustees.  *See*, *e.g.*, *In*

*re River Center Holdings, LLC*, 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003) ("[i]n litigation

involving non-debtors, 'relatedness' often turns on the estate's obligation to indemnify the

losing party") (quoting *Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re*

*Masterwear Corp.)*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999)).  This Court also has

jurisdiction to make the findings in paragraphs 3–5 of the Proposed Order because, absent

those findings, the RMBS Trustees would not have entered into the Agreement.  *See*, *e.g.*,

*Matter of Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) (affirming approval of injunction

preventing non-settling defendants from pursuing claims against non-debtor where the non-debtor settler would not have entered into settlement absent the injunction).

8.    The RMBS Trusts provide the RMBS Trustees with broad indemnification rights against the Debtors for any action they take affecting the administration of the property in the RMBS Trusts.  These indemnities are the basis for the Court to exercise jurisdiction over a settlement that would involve the satisfaction of the indemnity obligations as part of the Plan Support Agreement.  *See In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012) (holding that bankruptcy court jurisdiction is appropriate over third party non-debtor claims that directly affect the *res* of the bankruptcy estate, including the obligation to pay costs and liabilities incurred in defending suits); *In re Delta Air Lines, Inc.*, 370 B.R. 537, 539 (Bankr. S.D.N.Y. 2007) (finding that jurisdiction existed to permit the release of third party claims where the releases of the non-debtors' indemnification claims comprised valuable consideration).  Finally, it is both an express requirement of the Agreement and one of the Agreement's Milestones that the order approving the Agreement contains findings reasonably acceptable to the RMBS Trustees.

## BACKGROUND

9.    The facts underlying this Joinder are set forth in the PSA Motion and the RMBS Trustee Declarations, which are incorporated by reference herein.

## ARGUMENT

I.    **The Legal Standard for the RMBS Trustees' Entry into the Agreement**

A.    ***The Governing Agreements Authorize the
RMBS Trustees to Enter into the Plan Support Agreement.***

10.    The RMBS Trusts were formed pursuant to either a Pooling and Servicing Agreements (or "**PSAs**," including Series Supplements and Standard Terms of Pooling and

Servicing Agreements), or pursuant to a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements" and/or other similar and ancillary transaction documents (collectively, the "**Governing Agreements**"), which, when combined, provided for the administration of the RMBS Trusts and the RMBS Trust assets. Two exemplar Governing Agreements were attached as Exhibits A-1 and A-2, respectively, to the *Affidavit of James L. Garrity, Jr. in Support of the Limited Objections of certain Trustees for Residential Mortgage Backed Securities to the Debtors' Sale Motion and Postpetition Financing Motions* (the "**Garrity Affidavit**") [Docket No. 300]. Exhibit A-1 of the Garrity Affidavit ("**PSA Exemplar**") uses one of the "Standard Terms" PSAs, which, in somewhat varying forms, govern many RMBS Trusts. Exhibit A-2 of the Garrity Affidavit ("**Indenture Exemplar**") uses different documentation, including a separate Indenture, Trust Agreement and Servicing Agreement.

11.    The Governing Agreements explicitly define the RMBS Trustees' rights and obligations. Before the occurrence of an event of default by a servicer, the Governing Agreements typically require the RMBS Trustees to carry out limited ministerial duties. After the occurrence of an event of default that has not been cured or waived, the RMBS Trustees must exercise "the rights and powers vested in [them] by [the Governing Agreements], and use the same degree of care and skill in their exercise as a prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs." PSA Exemplar § 8.01(a); *see also* Indenture Exemplar, Indenture § 6.01.

12.    Pursuant to the Governing Agreements, the RMBS Trustees alone have the right to litigate, and accordingly to settle, any of the RMBS Trust Claims. These claims include, among others: (i) claims of the RMBS Trusts against the Debtors arising from the

Origination-Related Provisions[9] (the "**Repurchase Claims**"); and (ii) claims of the RMBS

Trusts against the Debtors not arising from Origination-Related Provisions (the "**Servicing**

**Claims**").  The Servicing Claims are comprised of claims that arise under the Governing

Agreements that are executory contracts that (i) were assumed and assigned in connection

with the sale of the Debtors' servicing assets ("**Cure Claims**") or (ii) were not assumed and

assigned during the Chapter 11 Cases and the Debtors' role thereunder was terminated prior

to or during the Chapter 11 Cases ("**Other Servicing Claims**").[10]

13.    There can be no doubt that the applicable RMBS Trustee has the power to

enforce the RMBS Trust Claims.  *See LaSalle Bank Nat'l Assoc. v. Lehman Bros.*

*Holdings, Inc.,* 237 F. Supp. 2d 618, 633 (D. Md. 2002) ("Section 2.01 of the PSA in this

case, when read together with other provisions of the PSA, grants [the trustee] the

authority to institute this action as the real party in interest").  That power belongs to the

RBMS Trustee and only the RMBS Trustee. *See Asset Securitization Corp. v. Orix*

*Capital Mkts., LLC,* 784 N.Y.S.2d 513, 514 (App. Div. 2004) ("authority [to commence

litigation under PSAs] is committed solely to the trustee of the pooled loans"); *Wells*

*Fargo Bank, N.A., Trustee v. Konover*, No. 3:05 CV 1924(CFD), 2009 WL 2710229, at

*3 (D. Conn. 2009) ("The PSA establishes that Wells Fargo as Trustee does have these

customary powers [to sue], as other courts have held in cases involving similar PSAs").

14.    Here, the Debtors' representations and warranties as Seller of the loans

directly or indirectly to the RMBS Trust are made *to* the RMBS Trustees.  *See*, *e.g.*, PSA

---

[9]    "**Origination-Related Provisions**" shall have the meaning ascribed in the *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Agreements, (II) The RMBS Trustees' Limited Objection to the Sale Motion* [Docket No. 945] (the "**First Scheduling Order**").

[10]    The RMBS Trust Claims were asserted by the RMBS Trustees in the appropriate capacity or capacities as provided for in the Governing Documents.

Exemplar §§ 2.03(a), (b), 2.04; *see also* Indenture Exemplar, Indenture § 3.12.

Additionally, the Governing Agreements convey to the applicable RMBS Trustee all "right,

title, and interest in … the [Loans] … [and] all present and future claims, demands, causes

and choses in action in respect of any or all of the foregoing and all payments on or under,

and all proceeds of every kind and nature whatsoever." Indenture Exemplar, Indenture

Granting Clause; *see also* PSA Exemplar §§ 2.01, 2.04.[11]  Interpreting identical language,

the United States District Court for the Southern District of New York held that "[t]he plain

meaning of these words ordinarily includes the power to bring suit to protect and maximize

the value of the interest thereby granted." *LaSalle Bank Nat'l Assoc. v. Nomura Asset

Capital Corp.,* 180 F. Supp. 2d 465, 471 (S.D.N.Y. 2001).

15.    It is equally well-established that "[a]n incident to the right to sue or be sued

is the power to compromise or settle suits." *Levine v. Behn*, 169 Misc. 601, 606 (Sup. Ct.

N.Y. County 1938), *aff'd*, 257 A.D. 156 (1st Dep't 1939), *reversed on other grounds,* 282

N.Y. 129 (1940); *see also Brown v. John Hancock Mut. Life Ins. Co. of Boston,* 145 Misc.

642, 646 (N.Y. Mun. Ct. 1932) ("The power to sue ordinarily carries with it the power to

settle."). The folly of the alternative—that any trustee that brings suit is irrevocably

committed to gamble on ultimate success—is obvious.

16.    The RMBS Trustees are parties in interest with the power to enter into

settlement agreements. *See LaSalle Nat'l Bank Assoc. v. Nomura Asset Capital Corp.*, 180

F. Supp. 2d 465, 471 (S.D.N.Y. 2001) (finding that trustee that brought suit on behalf of

trust to enforce repurchase rights pursuant to a PSA was real party in interest and that the

PSA provided the trustee "the power to bring suit to protect and maximize the value of the

---

[11]    In situations where the Master Servicer and the Seller are the same entity, as is the case in PSA Exemplar, the
PSAs convey to the applicable RMBS Trustee the further right to require the Seller to cure any breach of a
representation or warranty. *See* PSA Exemplar § 2.04.

interest thereby granted"); *In re Delta Air Lines, Inc.*, 370 B.R. 537, 548 (Bankr. S.D.N.Y.

2007) ("implicit in the authority to commence proceedings to remedy defaults is the power

to negotiate and agree upon settlements….") (overruling bondholder objections to trustee's

settlement and approving settlement), *aff'd sub nom. Kenton Cnty. Bondholders Comm. v.

Delta Air Lines, Inc.*, 374 B.R. 516 (S.D.N.Y. 2007), *aff'd*, 309 Fed. Appx. 455 (2d Cir.

2009).

> **B.**     ***Entry into the Agreement Was Reasonable and in
>              Good Faith in Satisfaction of Standards under New York Law.***

17.     The vast majority of the Governing Agreements are governed by New York

law.  Under New York law, judicial review of trustees' conduct is defined by the governing

contracts and the law of trusts.  The Governing Agreements generally provide that, prior to

the occurrence of an event of default (as defined in the relevant agreement), the RMBS

Trustees' duties are strictly limited to those set forth explicitly in the contracts.  *See, e.g.*,

PSA Exemplar § 8.01(a); Indenture Exemplar, Indenture § 6.01(b)(i).  Subsequent to an

event of default that has not been cured or waived, the RMBS Trustees must exercise such

of the "rights and powers vested in [them] by [the Governing Agreements], and use the

same degree of care and skill in their exercise as a prudent investor would exercise or use

under the circumstances in the conduct of such investor's own affairs."  PSA Exemplar

§ 8.01(a); *see also* Indenture Exemplar, Indenture § 6.01.

18.     A court's role is to determine whether the trustee's actions are consistent with

its powers and duties.  Under longstanding law, courts review trustees' discretionary

decisions for two elements: good faith and reasonableness.  "Where a trustee has

discretionary power, its exercise should not be the subject of judicial interference, as long as

it is exercised reasonably and in good faith." *Haynes v. Haynes,* 72 A.D.3d 535, 536 (N.Y.

App. Div. 2010) (citing *Community Serv. Soc'y v. N.Y. Cmty. Trust (In re Preiskel)*, 713 N.Y.S.2d 712, 719 (App. Div. 2000)); *see also In re First Trust & Deposit Co.,* 280 N.Y. 155, 163 (1939) ("We find no abuse of discretion and no evidence of bad faith or that the trustee administered the trust in a careless or negligent manner"). The *Restatement (Second) of Trusts* (1959) agrees. Section 187 provides that "[w]here discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an *abuse by the trustee of his discretion.*" (Emphasis added.); *see also id.* § 259 cmt. d ("Where a matter rests within the discretion of the trustee, the court ordinarily will not instruct him how to exercise his discretion").

19.    In fact, numerous authorities have applied a deferential standard of review to trustees' decisions to settle. The *Restatement (Second) of Trusts,* Section 192, provides that "[t]he trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property provided that in doing so he exercises *reasonable prudence.*" *In re IBJ Schroder Bank & Trust Co.*, Index No. 101530/98, 2000 N.Y. Misc. LEXIS 692 (Sup. Ct. N.Y. Cnty. Aug. 16, 2000) provides an example in a similar context. The case involved an Article 77 proceeding,[12] in which a securitization trustee sought approval of a settlement. Nearly 200 beneficiaries objected, arguing that the trustee had settled too cheaply and "failed to take any discovery." *Id.* at *7. The court refused to "invalidate the proposed settlement merely because certain beneficiaries believe a greater recovery might be obtained if the… action is submitted to an expensive and unpredictable litigation." *Id.* at *8. The trustee's decision to compromise "was entitled to judicial deference," and "the trustee's

---

[12]    An Article 77 proceeding is an action provided for under the New York Civil Practice Law and Rules that may be brought to determine a matter relating to an express trust. *See* N.Y. C.P.L.R. § 7701.

view must prevail" because of "the trustee's showing of [its] reasonableness." *Id.* ("the trustee's decision to compromise the… action is within the scope of the trustee's powers, is reasonable and prudent, and is entitled to judicial deference").

### C.    *Investors Received Sufficient Notice of the Plan Support Agreement.*

20.    Due process does not require that each Investor actually receive notice. Rather, it mandates only "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also In re Matter of De Sanchez*, 2008 NY slip op. 50342U, at 5 (Sup. Ct. N.Y County 2008) (same); *Morgan Olson L.L.C. v. Frederico (In re Grumman Olson Indus.)*, 467 B.R. 694, 706–07 (S.D.N.Y. 2012) (same).  The RMBS Trustees' notice to Investors is more than adequate.  As described more fully in the RMBS Trustee Declarations and the Fraga Affidavit, the RMBS Trustees have utilized a robust notice program during these Chapter 11 Cases that is a combination of the delivery of notices and notice through a website created and maintained by the RMBS Trustees (the "**RMBS Trustee Website**").[13]  The RMBS Trustee Website posts RMBS Trustee notices, provides contact information for certain of the RMBS Trustees, information on recent developments in the Chapter 11 Cases, links to relevant documents filed and upcoming Court deadlines and Court hearings.  Fraga Affidavit at ¶¶6–7.

21.    The RMBS Trustees hired a firm that specializes in large-scale litigation notice programs, Garden City Group ("**GCG**"), to design a campaign and build and maintain the RMBS Trustee Website to give notice to all Investors in connection with the

---

[13]    The RMBS Trustee Website is located at http://www.rescaprmbssettlement.com.

Original RMBS Settlement, the sale of the Debtors' servicing business and other significant developments in the Chapter 11 Cases. The GCG-designed notice program ensured that all Investors were provided with notices by distributing notices to all registered holders of RMBS by mail and to the Depository Trust Company (a/k/a DTC) via email and posting the notices and other information on the RMBS Trustee Website. Before the PSA Motion was filed, GCG disseminated four notices to various groups of Investors. *See* Fraga Affidavit at ¶¶8–12. These notices updated and supplemented notices that certain of the RMBS Trustees had sent in the initial stage of these Chapter 11 Cases.

22. On May 24, 2013, the RMBS Trustees, through GCG, provided notice to their respective Investors regarding the Agreement, the PSA Motion, the RMBS Settlement and the FGIC Settlement (the "**Plan Support Agreement Notice**") by mail and through the DTC as well as by posting the notice on the RMBS Trustee Website. Fraga Affidavit at ¶13. The Plan Support Agreement Notice spelled out the June 19, 2013 deadline for Investors to object to the Plan Support Agreement, the process for approval and objecting to the FGIC Settlement, and the Investors' option to direct the applicable RMBS Trustee to withdraw from the Agreement in respect of the applicable RMBS Trust.

23. Because the form and method of notice that the RMBS Trustees provided is reasonably calculated to provide notice to all Investors, the notice program fully satisfies New York and federal due process requirements. *See Mullane*, 339 U.S. at 314 (finding that notice by publication satisfied due process requirements); *Congregation Yetev Lev D'Satmar, Inc. v. Cnty. of Sullivan*, 59 N.Y.2d 418, 423 (1983) ("Those whose names or whereabouts are unknown and cannot be learned with due diligence or those whose interests are uncertain may be notified by publication even though it is reasonably certain that such

notice will prove futile,") (citing *Mullane*, 339 U.S. at 316); *Harkness v. Doe*, 689 N.Y.S.2d

586, 587 (App. Div. 1999) (notice by publication satisfied due process because "'in the case

of persons missing or unknown, employment of an indirect and even a probably futile means

of notification is all that the situation permits'") (citing *Mullane*, 339 U.S. at 317); *In re*

*Matter of De Sanchez*, 2008 NY Slip Op 50342U, at 11–14 (notice by mail satisfies due

process requirements).

24.      In short, it is difficult to conceive of any scenario in which Investors could

argue that they lacked actual or constructive notice of the Agreement, the RMBS Settlement,

the FGIC Settlement and the PSA Motion.  Accordingly, this Court will have jurisdiction

over the Investors, and, if approved, the Agreement, and the settlements contemplated

therein, including the RMBS Settlement and the FGIC Settlement, should be binding on all

of them.

**II.      The Court Should Approve the Findings that Ratify the**
**RMBS Trustees' Judgment in Entering into the Agreement.**

> ***A.      The RMBS Trustees' Actions in the Course of***
> ***Plan Negotiations and the Mediation Process Were Reasonable.***

25.      Based on the ample evidence in the RMBS Trustee Declarations that the

RMBS Trustees satisfied their duties in entering into the Agreement, the Court should ratify

their actions and approve the findings in the Proposed Order.  As set forth in more detail in

the RMBS Trustee Declarations, the RMBS Trustees have been deeply involved in matters

implicating the RMBS Trust Claims throughout these Chapter 11 Cases.  Early in these

cases, the RMBS Trustees began analyzing the Original Settlement Agreements, which

proposed the allowance of the Repurchase Claims of the Original Settling Trusts as agreed

to between the Debtors and the two groups of Institutional Investors.[14]  As part of this

process, BNY Mellon, Deutsche Bank, US Bank and Wells Fargo jointly decided to employ

Duff & Phelps, LLC ("**Duff & Phelps**") as experts in dispute consulting and forensic

advisory services, to assist the RMBS Trustees in the identification, quantification,

litigation, and/or resolution of the RMBS Trust Claims (including, but not limited to, the

Repurchase Claims of the Original Settling Trusts) against one or more of the Debtors'

estates.  Law Debenture (after its appointment as Separate Trustee) later joined in the

retention of Duff & Phelps to assist them in the Chapter 11 Cases after consultation with

counsel and in light of the RMBS 9019 Motion.

26.    The scope of Duff & Phelps' engagement by the RMBS Trustees included:

(i) evaluation of the reasonableness of the Original Settlement Agreement as it related to the

Repurchase Claims of the Original Settling Trusts, (ii) determination, for any other RMBS

Trusts for which any of the RMBS Trustees acted as Trustee or Separate Trustee (the

"**Additional Settling Trusts**, and, together with the Original Settling Trusts, the "**Settling**

**Trusts**") the appropriate amount of their Repurchase Claims; (iii) determination, for all of

the Settling Trusts, the amount of their Servicing Claims; and (iv) providing advice to the

RMBS Trustees regarding any proposed plan of reorganization or liquidation of the Debtors

and distributions thereunder.

27.    The RMBS Trustees have diligently pursued the RMBS Trust Claims on

behalf of the RMBS Trusts.  Pursuant to certain Bankruptcy Court orders establishing

deadlines for filing proofs of claim, on March 1, 2013, the RMBS Trustees each asserted

---

[14]    The Debtors sought approval of the Original Settlement Agreements by the *Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [Docket No. 320], supplemented first by the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for the Approval of the RMBS Trust Settlement Agreements* [Docket No. 1176] and second by the *Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [Docket No. 1887].

proofs of claims against the Debtors for any and all Repurchase Claims and Servicing

Claims.  In addition, on April 16, 2013, some of the RMBS Trustees gave notice of their

respective Cure Claims against the Debtors.[15]

28.    As set forth in more detail in the PSA Motion and the RMBS Trustee

Declarations, various constituencies, including the RMBS Trustees as well as counsel for

the two sets of Institutional Investors, have participated in numerous mediation sessions,

both with and without the Court-appointed Mediator.  The Agreement and the RMBS

Settlement contemplated therein are the result of these hard-fought, arm's-length

negotiations ably facilitated by the Mediator.  Moreover, the declaration of Lewis Kruger,

the CRO of the Debtors, filed as Exhibit 2 to the PSA Motion (the "**Kruger Declaration**"),

affirms the "good faith negotiations" that led to the Agreement.  Kruger Declaration at ¶14.

### B.    *The Agreement Is in the Best Interests of the Investors.*

29.    In addition to being the product of good faith, arm's-length negotiations, the

Agreement, including the settlements contained therein, is in the best interests of Investors.

The Agreement resolves not only the RMBS Trust Claims, but also claims against AFI and a

number of other inter-creditor disputes that could have posed risk to the RMBS Trusts.

30.    The Agreement encompasses the crucial settlement with AFI, under which

AFI will contribute $2.1 billion to stakeholders in the Chapter 11 Cases.  The Agreement

also resolves the claims of certain monoline insurers that guaranteed payments to certain

Investors (each a "**Monoline**").  Both the amount of the claims of the Monolines and the

---

[15]    *See Notice of Cure Claim of the Bank of New York Mellon as Trustee* [Docket No. 3457]; *Notice of Cure Claim of the Bank of New York Mellon Trust Company N.A., as Trustee* [Docket No. 3456]; *Notice of Cure Claim of the Bank New York Mellon Corporation in its Capacity as Master Servicer* [Docket No. 3455]; *Notice of Cure Claim of Wells Fargo, N.A. as Trustee and Master Servicer* [Docket No. 3454]; *Notice of Cure Claim of U.S. Bank National Association and Certain of its Affiliates as Trustee and Master Servicer* [Docket No. 3453]; *Notice of Cure Claim of Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas as Trustee* [Docket No. 3451].

relationship between those claims and the RMBS Trust Claims are the subject of disputes, and the resolution of all those disputes through litigation presents both a general risk of delay and expense to all stakeholders as well as a specific risk to the RMBS Trusts of dilution or subordination.  *See* PSA Motion, Ex. 3 at Ex. B. at 7.

31.    Of particular note, the Agreement incorporates a settlement with Financial Guaranty Insurance Company ("**FGIC**"), an insolvent Monoline that is currently subject to a rehabilitation proceeding in the Supreme Court of the State of New York.  The settlement with FGIC resolves uncertainty regarding the expected recovery of the RMBS Trusts insured by FGIC (the "**FGIC Trusts**") in FGIC's rehabilitation proceeding and avoids the risks of litigating the validity of FGIC's claims against the Debtors and AFI.  As it relates to the FGIC Trusts, FGIC will pay to the RMBS Trustees, for distribution to such trusts, a lump sum cash payment of $253.3 million (the "**FGIC Lump Sum Payment**") and forgo future premiums with respect to its policies (the "**FGIC Policies**").  In exchange, the RMBS Trustees of the FGIC Trusts (the "**FGIC RMBS Trustees**") will release and discharge FGIC from all obligations and liabilities under the FGIC Policies.  The FGIC RMBS Trustees will determine the portion of the FGIC Lump Sum Payment that will be allocated to each FGIC Trust based on each trust's allocable share of its accrued and unpaid claims and estimated future claims under the FGIC Policies.

32.    Another essential component of the Agreement within the Supplemental Term Sheet is the "monoline reservation," which provides that any RMBS Trust that has an insurance policy with a Monoline (other than FGIC) reserves the ability to enforce its rights, in the Bankruptcy Court or otherwise, against that Monoline to the extent that it does not

perform in accordance with an insurance policy for the benefit of that RMBS Trust.  *See*

PSA Motion, Ex. 3 at Ex. B. at 7.

33.     Before agreeing to enter into the Agreement, the RMBS Trustees negotiated

the inclusion of a provision allowing Investors the option, on an RMBS Trust-by-RMBS

Trust basis, to provide a direction in accordance with the applicable Governing Agreements

to the applicable RMBS Trustee to withdraw its execution of the Agreement in respect of

the applicable RMBS Trust.  Section 5.2(c) of the Plan Support Agreement provides:

> Notwithstanding anything to the contrary in this Agreement, the
> Term Sheets or the Plan, if, prior to entry of the PSA Order, any
> RMBS Trustee that receives an investor direction and indemnity
> consistent with the applicable transaction documents from the
> requisite percentage of Investors in such RMBS Trust that
> directs such RMBS to withdraw its execution of this PSA and
> the agreement to vote in favor of the Plan, then, such RMBS
> Trustee shall have a right, for such RMBS Trust, to withdraw
> the execution of this Agreement and the agreement to vote in
> favor of the Plan as set forth in section 5.2(a).

PSA Motion, Ex. 3 at Section 5.2(c).[16]

34.     As described in the RMBS Trustee Declarations, each of the above deal points

was the result of hard-fought negotiations, with the RMBS Trustees taking great pains to

preserve and protect the Investors' rights and the RMBS Trusts' interests and ensure that the

Agreement and the settlements contemplated therein are in the best interests of the RMBS

Trusts and the Investors.

35.     The Kruger Declaration affirms that the Agreement "is in the best interests not

only of the Debtors, but also the other Mediation Participants, including the RMBS Trustees

and the investors in the RMBS Trusts" and that "the [Plan Support Agreement] provides the

---

[16]     If the Agreement is approved by the Bankruptcy Court, the RMBS Trustees will vote in favor of the Plan on
behalf of each RMBS Trust, and the Investors will be precluded from providing contrary direction to the RMBS
Trustees with respect to the Plan.

best possible outcome for each of the Debtors' creditor groups under the circumstances."

Kruger Declaration at ¶14.  As evidenced by both the Kruger Declaration and the RMBS

Trustee Declarations, the RMBS Trustees, in consultation with their financial and legal

advisors, have acted reasonably and in good faith in determining that the Agreement and the

RMBS Settlement subsumed therein are in the best interests of the Investors.

36.    Moreover, the Agreement requires that the Proposed Order include findings

reasonably acceptable to the RMBS Trustees.  Section 5.2(d) of the Agreement provides:

> The PSA Order and the Confirmation Order shall include
> *affirmative findings* reasonably acceptable to the RMBS Trustees
> that this Agreement, the RMBS Settlement, and the Plan are in *the
> best interests of Investors*, that *the RMBS Trustees acted in good
> faith and in the best interests of the Investors* in agreeing to this
> Agreement, the RMBS Settlement and the Plan and such additional
> protective findings as the RMBS Trustees may reasonably require
> relating to the actions and interests of the RMBS Trusts and the
> RMBS Trustees in connection with this Agreement, the RMBS
> Settlement and the Plan, provided, however, that the findings in
> such orders shall be binding solely in connection with the RMBS
> Trustees and the RMBS Trusts and the actions of the RMBS Trusts
> and the RMBS Trustees with respect to this Agreement, the RMBS
> Settlement and the Plan.

PSA Motion, Ex. 3 at § 5.2(d) (emphasis added).

## JOINDER

37.    The RMBS Trustees hereby join in the PSA Motion, to the extent applicable

to the RMBS Trustees.  As stated above, the Agreement explicitly provides that the

Proposed Order include findings reasonably acceptable to the RMBS Trustees, and the

proposed findings are fully consistent with the standards governing the RMBS Trustees'

conduct, as set forth herein.  Based on the RMBS Trustee Declarations, there is abundant

cause to approve the requested findings in paragraphs 3–5 of the Proposed Order.

38.     In light of the evidence demonstrating the satisfaction of their duties, the
RMBS Trustees should not bear the risk of any claims by Investors that the RMBS Trustees
failed to act reasonably and in good faith in entering into the Agreement, and the RMBS
Settlement contemplated therein, or that the notice of the Agreement provided by the RMBS
Trustees was insufficient.  As described in detail in the PSA Motion, the Kruger
Declaration, this Joinder and the RMBS Trustee Declarations attached hereto, each RMBS
Trustee has acted reasonably and in good faith in entering into the Agreement, and the
Agreement is in the best interests of the RMBS Trustees and the Investors.

39.     The RMBS Trustees reserve the right to amend, supplement, alter or modify
this Joinder and to reply to any objections to the PSA Motion.

*[The remainder of this page is intentionally left blank.]*

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the RMBS Trustees request that

the Court approve the Agreement, enter the Proposed Order substantially in the form attached to

the PSA Motion as <u>Exhibit 1</u>, and grant such other and further relief as the Court deems

appropriate.

**DECHERT LLP**
By:  /s/ Glenn E. Siegel
Glenn E. Siegel
Craig P. Druehl
James O. Moore
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
*Counsel to The Bank of New York Mellon and The
Bank of New York Mellon Trust Company, N.A., as
Trustee of Certain Mortgage-Backed Securities
Trusts*

**MORGAN, LEWIS & BOCKIUS LLP**
By:  /s/ James L. Garrity, Jr.
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
*Counsel to Deutsche Bank National Trust
Company and Deutsche Bank Trust Company
Americas, as Trustee of Certain Mortgage-Backed
Securities Trusts*

**ALSTON & BIRD LLP**
By:  /s/ Martin G. Bunin
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
William Hao
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
*Counsel to Wells Fargo Bank, N.A., as Trustee of
Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
By:  /s/ Mark D. Kotwick
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
*Counsel to U.S. Bank National Association, as
Trustee of Certain Mortgage-Backed Securities
Trusts*

**SEWARD & KISSEL LLP**
BY:  /s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Thomas Ross Hooper
Benay L. Josselson
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421
*Counsel to Law Debenture Trust Company of New
York, as Separate Trustee of Certain Mortgage-
Backed Securities Trusts*

**ALLEN & OVERY LLP**
BY:  /s/ John Kibler                   _
John Kibler
1221 Avenue of Americas
New York, New York  10020
Telephone:  (212) 610-6300
Facsimile:  (212) 610-6399
*Counsel to HSBC Bank USA, N.A., as Trustee of
Certain Mortgage Backed Securities Trusts*