# Exhibit B

**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust*
*Company and Deutsche Bank Trust Company*
*Americas, as Trustees of Certain Mortgage*
*Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | ) |
| | ) **Chapter 11** |
| Debtors. | ) |
| | ) **Jointly Administered** |

<u>**DECLARATION OF BRENDAN MEYER**</u>

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

    I, Brendan Meyer, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true

and correct to the best of my knowledge, information and belief:

    1.    I am employed by DB Services New Jersey, Inc., and am authorized to conduct

certain activities on behalf of its affiliates Deutsche Bank National Trust Company and Deutsche

Bank Trust Company Americas (together, "**Deutsche Bank**").  I have personal knowledge of the

facts set forth herein, except as to certain matters that I believe to be true based on (i)

information provided by Duff & Phelps, LLC ("**Duff & Phelps**"); (ii) information about

positions of parties in these Chapter 11 cases contained in pleadings that I reviewed, or reported

to me by counsel, or learned during my participation in the Plan Mediation (defined below); and (iii) my review of business records of Deutsche Bank.

2.      I have been employed by Deutsche Bank in this capacity since April 2002. My responsibilities as Director include overseeing defaulted and distressed structured finance transactions for which Deutsche Bank serves as trustee, including, among other things, consulting with counsel, declaring events of default, sending notices of default and other significant events, communicating with transaction parties and investors, and, in connection with the foregoing and in consultation with investors, exercising remedies.

3.      This Declaration is submitted in support of the (a) *Joinder of Certain RMBS Trustees to Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors Committee and Certain Consenting Claimants* filed contemporaneously herewith (the "**Joinder**") and (b) *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors Committee and Certain Consenting Claimants* [ECF No. 3814] (the "**Plan Support Agreement Motion**"), filed on May 23, 2013.[1]

4.      On May 13, 2013, the Debtors, Ally Financial Inc. ("**AFI**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and the Consenting Claimants,[2]

---

[1]    On May 14, 2012 (the "**Petition Date**", Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "**ResCap**" or the "**Debtors**") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are being jointly administered under the caption In re Residential Capital, LLC, Case No. 12-12020 (MG).

[2]    The "**Consenting Claimants**" include AIG Asset Management (U.S.) LLC, as investment advisor for certain affiliated entities that have filed proofs of claim in the Debtors' chapter 11 cases; Allstate Insurance Company and its subsidiaries and affiliates; Deutsche Bank National Trust Company and Deutsche Bank Trust Company

including Deutsche Bank, as Trustee, entered into the Plan Support Agreement [ECF No. 3814, Ex. 3], pursuant to which they agreed to the terms of a proposed consensual Chapter 11 plan of reorganization (the "**Plan**") and resolution of all claims and disputes between them as set forth in the Plan Term Sheet (the "**Plan Term Sheet**") and the Supplemental Term Sheet (the "**Supplemental Term Sheet**," together with the Plan Term Sheet, the "**Term Sheets**") attached respectively as Exhibits A and B to the Plan Support Agreement.[3]

5.    Among the claims and disputes resolved in the proposed Plan is a settlement, (the "**RMBS Settlement**"), which provides for the allowance, priority, allocation and treatment of the claims of certain residential mortgage backed securitization trusts (the "**RMBS Trusts**") against the Debtors including (a) claims of the RMBS Trusts arising from Origination-Related Provisions[4] (the "**Repurchase Claims**") and (b) claims of the RMBS Trusts unrelated to

---

Americas, each solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts; Financial Guaranty Insurance Corporation ("**FGIC**"); HSBC Bank USA, N.A., solely in its capacity as trustee in respect of certain of the RMBS Trusts ("**HSBC**"); the Kessler Class Claimants; Law Debenture Trust Company of New York, solely in its capacity as separate trustee in respect of certain of the RMBS Trusts ("**Law Debenture**"); Massachusetts Mutual Life Insurance Company and its subsidiaries and affiliates; MBIA Insurance Corporation and its subsidiaries and affiliates ("**MBIA**"); certain funds and accounts managed by Paulson & Co. Inc.; Prudential Insurance Company of America and its subsidiaries and affiliates; the Steering Committee Consenting Claimants; certain holders of the Senior Unsecured Notes issued by ResCap; The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., each solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, master servicer, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts (together, "**BNY Mellon**"); the Talcott Franklin Consenting Claimants; U.S. Bank National Association, solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts ("**U.S. Bank**"); Wells Fargo Bank, N.A., solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts ("**Wells Fargo**"); and Wilmington Trust, National Association, not individually, but solely in its capacity as Indenture Trustee for the Senior Unsecured Notes issued by ResCap.

[3]    Defined terms used herein without definitions have the meanings ascribed to them in the Plan Support Agreement Motion or the Joinder, as applicable.

[4]    "**Origination-Related Provisions**" shall have the meaning ascribed in the *Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Agreements, (II) The RMBS Trustees' Limited Objection to the Sale Motion* [ECF No. 945] (the "**First Scheduling Order**").

Origination-Related Provisions (the "**Servicing Claims,**" together with the Repurchase claims, the "**RMBS Trust Claims**").[5]

## I.    Relevant Background

### A.    Deutsche Bank's Role as Trustee

6.    Deutsche Bank serves as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or other similar agencies (in any such capacity, the "**Trustee**") in respect of certain residential mortgage backed securities trusts, whole loan servicing agreements, net interest margin trusts, other trusts, and similar arrangements listed on Exhibit A hereto (collectively, the "**Deutsche Bank RMBS Trusts**").  This Declaration is made solely with respect to Deutsche Bank's role as Trustee.[6]

7.    The Deutsche Bank RMBS Trusts are governed by one or more pooling and servicing agreements, highly integrated sets of "servicing agreements," mortgage loan purchase agreements, deposit trust agreements, trust agreements, indentures, asset sale agreements, depositor sale agreements, administration agreements, yield maintenance agreements and other ancillary transaction documents (collectively, the "**Transaction Documents**").  Pursuant to the Transaction Documents, one or more of the Debtors has obligations in various capacities, including as originator, seller, sponsor, depositor and similar capacities (together, "**Seller**"), and/or as servicer, subservicer, master servicer, back-up servicer, HELOC servicer, administrator, co-administrator and similar capacities (collectively, "**Servicer**").

---

[5]    Servicing Claims include claims that arise under the Transaction Documents that are executory contracts that (i) were assumed and assigned in connection with the sale of the Debtors' servicing assets ("**Cure Claims**"), and (ii) were not assumed and assigned during the Chapter 11 Cases and the Debtors' role thereunder was terminated prior to or during the Chapter 11 Cases ("**Other Servicing Claims**").

[6]    Deutsche Bank Trust Company Americas, together with BNY Mellon and U.S. Bank, as Trustee, is also a member of the Committee.

8.      In the appropriate capacity or capacities as provided in the Transaction Documents, Deutsche Bank has the authority to enforce claims against the Seller and Servicer in respect of the Deutsche Bank RMBS Trusts and to vote such claims in connection with a plan of reorganization.

9.      The claims of the Deutsche Bank RMBS Trusts fall into two broad categories: (i) the Repurchase Claims, which arise from the conduct of the Debtors as Seller, and which include, but are not limited to, claims arising from the right to demand the repurchase of loans based on breaches of representations and warranties under the Transaction Documents with respect to such loans; and (ii) the Servicing Claims, which arise from the conduct of the Debtors as Servicer under each pooling and servicing agreement (or similar agreement).

10.     On or about March 1, 2013, Deutsche Bank, as Trustee,[7] filed Proofs of Claim nos. 6706 through 6756 (the "**Proofs of Claim**") against each applicable Debtor asserting, among other things: (a) the Servicing Claims; (b) the Repurchase Claims; (c) claims for indemnification under the Transaction Documents; and (d) claims for fraud and/or negligent misrepresentation arising from the conduct of the Debtors acting as Seller under the Transaction Documents.[8]

---

[7]    The RMBS Trust Claims were asserted by the Deutsche Bank in the appropriate capacity or capacities as provided for in the Transaction Documents.

[8]    Pursuant to the *Stipulation and Order Permitting Certain Parties to File Proofs of Claim After the Bar Date* [ECF No. 2095], dated November 6, 2012 (the "**Claims Stipulation**"), the Debtors and the RMBS Trustees agreed that all claims of each RMBS Trustee on behalf of itself and on behalf of the applicable RMBS Trusts and/or their beneficiaries could be asserted by each of the RMBS Trustees in a single proof of claim. Pursuant to the Claims Stipulation, each RMBS Trustee's single proof of claim would constitute the filing of proofs of claim in each of the applicable Debtors' cases so long as each proof of claim set forth against each specific Debtor, on a trust-by-trust basis, the amount of such claim (and/or whether the claim is contingent and/or unliquidated), and the capacity in which the RMBS Trustee was acting in asserting the claim. The Claims Stipulation further provided that no documentation in support of each proof of claim need to be filed, and set March 1, 2013 as the deadline to file each such proof of claim.

11.    On April 16, 2013, Deutsche Bank filed a *Notice of Cure Claim of Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas as Trustee* (the "**Notice of Cure Claim**") [ECF No. 3451], asserting, among other things, the following Cure Claims: (a) claims arising from failure to perform as Servicer under the Transaction Documents, including but not limited to misapplication of payments, wrongful foreclosure, improper loss mitigation practices, and unreasonably long foreclosure timing caused by improper servicing practices; (b) claims arising from failure to give notice of, and enforce, breaches of representations and warranties; (c) claims arising from severance of origination-related provisions; (d) claims for indemnification and payment of expenses; (e) claims arising from borrower complaints; and (f) claims arising from litigation.[9]

### B.    The RMBS 9019 Motion

12.    On June 11, 2012 the Debtors filed a motion seeking approval of their agreement with two groups of institutional investors relating to the Repurchase Claims of 392 RMBS Trusts (the "**Original Settling Trusts**"), as documented in the Third and Amended and Restated Settlement Agreements filed with the Bankruptcy Court on March 15, 2013 (the "**Original Settlement Agreement**") [10]

---

[9]    These claims are asserted as "cure claims" because they arise under Transaction Documents that are executory contracts and were assumed and assigned to the purchaser in connection with the sale of the Debtors' servicing assets. The RMBS Trustees agreed that the Debtors need not cure those claims in connection with the sale of the servicing assets, but that the claims would receive limited administrative priority as cure claims. More specifically, on November 21, 2012, the Court entered a Sale Order [ECF No. 2246] pursuant to which the Court approved the sale of the Debtors' servicing platform to Ocwen Loan Servicing, LLC ("**Ocwen**"), including the assumption by the Debtors and assignment to Ocwen of "Servicing Agreements" as defined in the related Purchase Agreement with Ocwen. The Sale Order, at finding P and at paragraphs 14, 22, 35, and 36, preserved the rights of the RMBS Trustees to assert claims against the Debtors as Servicer, preserved the rights of the RMBS Trustees to assert such claims as cure claims entitled to limited priority, and preserved the rights of the RMBS Trustees to seek continuing payment of servicing-related costs and expenses against the Debtors.

[10]    *See Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 320], as amended and supplemented by the *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1176] and the *Debtors' Second*

13.    The Original Settlement Agreement had been negotiated by three law firms, Gibbs & Bruns, Ropes & Gray LLP ("**Ropes & Gray**") and Talcott Franklin P.C. ("**Talcott Franklin**").[11]    Those three firms represented the aforementioned two groups of institutional investors (clients of Gibbs & Bruns and Ropes & Gray, the "**Steering Committee Claimants**", and clients of Talcott Franklin the "**Talcott Franklin Consenting Claimants**", and together with the Steering Committee Claimants, the "**Institutional Investors**") who collectively held, or were authorized investment managers for holders of, 25% or more of one or more classes (or tranches) of certificates of the Original Settling Trusts.[12]    Under the Original Settlement Agreement, the Original Settling Trusts would be granted an allowed aggregate claim of up to $8.7 billion (as further described herein, the "**Allowed Claim**") against those Debtors that acted as Seller, to be allocated in accordance with certain formulas set forth in Exhibit B to the Original Settlement Agreement.  In support of the RMBS 9019 Motion, the Debtors submitted an expert report that calculated the Original Settling Trusts' Repurchase Claims at between $6.7 billion and $10.3 billion.[13]    The RMBS 9019 Motion contemplated that, if the Debtors were authorized to propose the Original Settlement Agreement, the RMBS Trustees would evaluate

---

*Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1887] (collectively, the "**RMBS 9019 Motion**").

[11]    In early May 2012, Deutsche Bank was informed that a lawyer claiming to represent a substantial portion of certificate holders in certain residential mortgage backed trusts, Kathy Patrick of Gibbs & Bruns, P.C. ("**Gibbs & Bruns**"), wished to meet with Deutsche Bank and three other similarly situated RMBS Trustees, BNY Mellon, U.S. Bank and Wells Fargo.  Deutsche Bank retained the law firm Morgan, Lewis & Bockius LLP ("**Morgan Lewis**") to represent Deutsche Bank in connection with all such matters.  On May 9, 2012, Morgan Lewis attended the meeting called by Ms. Patrick, as did counsel for BNY Mellon, U.S. Bank and Wells Fargo.  At the meeting Ms. Patrick informed the attendees of the impending Chapter 11 filings of the Debtors and of the contemplated settlements that had been reached between two groups of institutional investors and the Debtors.

[12]    Holders of certificates of the RMBS Trusts are referred to herein as "**Holders**").

[13]    *See Declaration of Frank Sillman in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [ECF No. 320-8], at ¶¶ 68-69.

the reasonableness and appropriateness of the proposed compromise and determine whether to accept or reject it on behalf of the Original Settling Trusts.[14]  *See* RMBS 9019 Motion at ¶4.

### C.    Objections to the RMBS 9019 Motion

14.    The First Scheduling Order, among other things, directed that any objection to the RMBS 9019 Motion from a party other than the RMBS Trustees and the Committee must be filed with the Court by October 5, 2012 (the "**9019 Motion Objection Deadline**").  *See* First Scheduling Order at p.5, ¶7.  The 9019 Motion Objection Deadline was ultimately adjourned until (a) November 28, 2012 for Holders of the Original Settling Trusts (*see Third Scheduling Order*), and (b) December 3, 2012 for certain specified parties-in-interest to the RMBS 9019 Motion (s*ee Fourth Scheduling Order*).

15.    No party filed an objection to the RMBS 9019 Motion claiming that the $8.7 billion Allowed Claim was unreasonably low.  The only objection to the top line number was that $8.7 billion was excessive.  For example, the Committee's objection stated that the Debtors' liability for Repurchase Claims of the RMBS Trusts was approximately $3.8 billion, and if certain legal defenses were considered, might be reduced to a range of $2.7 billion to $3.3 billion.[15]

---

[14]    The initial RMBS 9019 Motion contemplated, however, that the RMBS Trustees would have only 45 days from the filing of the Motion to conduct such an evaluation.  *See* RMBS 9019 Motion at ¶ 17.  The Bankruptcy Court subsequently entered several scheduling orders regarding the timing of discovery, briefing and other items related to the RMBS 9019 Motion.  *See* First Scheduling Order; *Second Revised Joint Omnibus Scheduling Order Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF No. 1551], dated September 25, 2012; *Third Revised Joint Omnibus Scheduling Order and Provisions For Other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF No. 1926], dated October 23, 2012 ("**Third Scheduling Order**"); *Fourth Revised Joint Omnibus Scheduling Order and Provisions for other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 2528], dated December 27, 2012 ("**Fourth Scheduling Order**"); and *Fifth Revised Joint Omnibus Scheduling Order and Provisions For Other Relief Regarding Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements*[ECF No. 3306], dated March 25, 2013.

[15]    *See Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Trust Settlement Agreements* [ECF No. 2825] (the "**Committee**

16.     FGIC's objection asserted that the Debtors could not support the reasonableness of an allowed aggregate claim exceeding $4 billion, excluding the value of the claims that monoline insurers (each, a "**Monoline**") have against the Debtors, and that "the $8.7 billion claim amount is excessive and unreasonable" and "grossly overstates the value of the settled claim."[16]  MBIA similarly objected, stating that the Repurchase Claims of the RMBS Trusts, excluding the claims of the Monolines, were less than $3 billion and that the Original Settlement provides a "windfall for certain Settling Trusts at the expense of both non-settling and settling creditors." [17]

17.     Only two Holders in the RMBS Trusts objected to the manner in which the aggregate Allowed Claim of $8.7 billion was to be allocated among the Original Settling Trusts in the Original Settlement Agreement.[18]  The crux of those two objections was that the allocation methodology in the Original Settlement Agreement failed to take into account the unique characteristics of the Original Settling Trusts and inappropriately used net losses of an RMBS Trust as a proxy for viable Repurchase Claims.

18.     As described below, the allocation methodology in the Original Settlement Agreement was revised in the RMBS Settlement and provides for the aggregate amount of the Repurchase Claims to be allocated based on differences among the RMBS Trusts in the incidence of breaches of representations and warranties.   The RMBS Trustees, including

---

**Objection**"), including the supporting Expert Report of Bradford Cornell, Ph.D [ECF No. 2829, Ex. A] (the "**Cornell Report**").

[16]   *See Objection of Financial Guaranty Insurance Company to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF. No. 2819].

[17]   *See Objection of MBIA Insurance Corporation to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF No. 2810], including the Expert Declaration of C.J. Brown [ECF No. 2811].  Both FGIC and MBIA are Consenting Claimants.

[18]   *See Objection to the Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF. No. 2308]; *Limited Objection to Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Settlement Agreements* [ECF. No. 2297].

Deutsche Bank, believe that this revised allocation methodology addresses the substance of the objections in the RMBS 9019 Motion to allocation methodology.

### D.    Retention of Duff & Phelps

19.    After consultation with counsel, and in light of the then-pending RMBS 9019 Motion, Deutsche Bank and three other RMBS Trustees, BNY Mellon, U.S. Bank and Wells Fargo, determined that it was appropriate and prudent to retain one or more experts to assist the RMBS Trustees in the Chapter 11 Cases, including in the identification, quantification, litigation, and/or resolution of the claims held by the RMBS Trusts against one or more of the Debtors' estates, which claims were not limited to those of the Original Settling Trusts.[19]

20.    The RMBS Trustees engaged in a rigorous selection process that involved, among other things, interviewing five potential advisory firms in person, selecting two finalists, and hearing follow up presentations by the two finalists.

21.    On July 23, 2012, at the conclusion of this process, the aforementioned RMBS Trustees jointly decided to employ Duff & Phelps to assist them because of (i) the firm's experience in handling similar types of engagements involving the evaluation of mortgage loan servicing agreements and loan origination agreements, bankruptcy litigation, restructuring, asset valuation, complex securitizations, and RMBS loan repurchase actions, and (ii) the depth of resources available to the firm, including advisory services about bankruptcy issues generally.[20] Duff & Phelps' engagement letter is dated August 30, 2012.

---

[19]    The term "RMBS Trustees" has been defined, at different times in this case, in slightly different ways.  As used herein, unless the context dictates otherwise, the term "**RMBS Trustees**" shall include Deutsche Bank, BNY Mellon, U.S. Bank and Wells Fargo, and Law Debenture (from the time of its appointment as Separate Trustee for certain RMBS Trusts on or about November 8, 2012) and HSBC (from on or about May 13, 2013), and refers to such entities in their capacities as Trustee or Master Servicer.

[20]    Following its appointment as Separate Trustee for certain RMBS Trusts, Law Debenture joined in the retention of Duff & Phelps.

22.    Duff & Phelps generally was asked to (i) evaluate the reasonableness of the Original Settlement Agreement as it related to the Repurchase Claims of the Original Settling Trusts, (ii) determine, for any other RMBS Trusts for which any of the RMBS Trustees acted as Trustee or Separate Trustee (the "**Additional Settling Trusts**, and, together with the Original Settling Trusts, the "**Settling Trusts**") the appropriate amount of their Repurchase Claims; (iii) determine, for all of the Settling Trusts, the amount of their Servicing Claims; and (iv) advise the RMBS Trustees regarding any proposed plan of reorganization or liquidation of the Debtors, and distributions thereunder.[21]

E.    **The Plan Mediation and the Plan Support Agreement**

23.    The Plan Support Agreement, the Terms Sheets and the Plan (including the RMBS Settlement) were the result of an extensive mediation over the course of approximately five months (the "**Plan Mediation**") overseen by the Honorable James M. Peck of the United States Bankruptcy Court for the Southern District of New York.[22]  The communications and analyses relating to negotiations conducted during the mediation are privileged and confidential

---

[21]    It should be noted that, as used in the Supplemental Term Sheet, the term "Additional Settling Trusts" has a broader meaning, and that the Supplemental Term Sheet contemplates the inclusion in the RMBS Settlement of all RMBS Trusts with RMBS Trust Claims, whether or not such Trusts are administered by one of the RMBS Trustees. Specifically, the Supplemental Term Sheet provides as follows:

> The RMBS Settlement will be expanded to permit the inclusion of any RMBS Trust having RMBS Trust Claims, as follows: First, once the Plan Support Agreement is approved, subject to Section 5.2(c) of the Plan Support Agreement, each RMBS Trust for which any RMBS Trustee acts as trustee or separate trustee, will be included in the RMBS Settlement. Second, the Plan will provide that *any other RMBS Trusts* will be included in and treated consistently with the RMBS Settlement (all such RMBS Trusts added to the RMBS Settlement are referred to as the "Additional Settling Trusts").

Supplemental Term Sheet at p. 5 (emphasis added).

[22]    On December 6, 2012, the Debtors filed a motion seeking the entry of an order appointing a mediator [ECF No. 2357] to assist certain parties in interest in resolving various plan issues in furtherance of reaching a consensual Chapter 11 plan.  By order dated December 26, 2012 [ECF No. 2519], the Court appointed Judge Peck as Mediator for an initial period through February 28, 2013.  By orders dated March 5, 2013 [ECF No. 3101] and June 4, 2013 [ECF No. 3877], the Court extended Judge Peck's appointment as Mediator through May 31, 2013 and October 31, 2013, respectively.

by law and pursuant to agreement, and therefore cannot be disclosed in detail.  In general, however, the integrated, global settlement associated with the Plan Support Agreement must be understood first and foremost as the product of intense, arms-length negotiations conducted among sophisticated parties with differing and conflicting interests, under the close supervision and guidance of a sitting bankruptcy judge.

24.     The Plan Support Agreement was signed on May 13, 2013.  At the time the Plan Support Agreement was signed, the Plan Support Agreement included the Plan Term Sheet but not the Supplemental Term Sheet.  The Plan Term Sheet contemplated that the parties to the Plan Support Agreement would execute the Supplemental Term Sheet no later than May 23, 2013 at 9:00 a.m.  The Supplemental Plan Term Sheet was signed and filed, and is now part of the Plan Support Agreement.

## II.     Claims Allowance

25.     The Plan Support Agreement provides for:  (a) allowance of the RMBS Trust Claims of each of the RMBS Trusts and (b) treatment of those claims in accordance with the proposed Plan.  As set forth herein, Deutsche Bank, together with its advisors, took steps to quantify the claims of the Original Settling Trusts and the Additional Settling Trusts (which includes the Deutsche Bank RMBS Trusts) and to evaluate defenses that could reduce the reasonable value of the claims, and used those analyses to assess whether the allowance of, and distribution on, those claims under the terms set forth in the Plan Support Agreement would be reasonable.  Therefore, for the reasons set forth in the following paragraphs, and taking into consideration the number and nature of the objections filed to the RMBS 9019 Motion and the fact that the RMBS Settlement was negotiated as part of the Plan Mediation, Deutsche Bank has determined in the good faith exercise of its judgment and with the assistance of its professional

advisors, that the allowance and treatment of the claims as set forth in the Plan Support Agreement and the proposed Plan are a reasonable compromise of the claims of the Deutsche Bank RMBS Trusts.

A.    **Repurchase Claims**

26.    The scope of Duff & Phelps' engagement included, as it relates to the Repurchase Claims:  review of mortgage loan files and origination and servicing documents; statistical sampling of the mortgage loan pool; and preparation of written and oral reports to Deutsche Bank and the other RMBS Trustees relating to the quantification and allocation of the Repurchase Claims.

i.    **Original Settling Trusts**

a.    **Valuation of Claims**

27.    In the course of its engagement, Duff & Phelps conducted a sampling review of more than 6,500 mortgage loan files provided by the Debtors in an effort to identify breaches of representations and warranties, and used statistical methodologies to estimate the incidence of those breaches across the population of mortgage loans in the RMBS Trusts.  Duff & Phelps also used historical information and financial analysis to calculate the total present and projected future losses experienced by the RMBS Trusts.  As a result of the significant work performed by Duff & Phelps, Deutsche Bank and the other RMBS Trustees gained an understanding that the range of Repurchase Claims for the Original Settling Trusts that could be asserted against the Debtors as Seller was between $6.5 billion and $10.2 billion.

28.    Those Repurchase Claims, however, if litigated, would be subject to significant litigation risks and factual and legal defenses.  Many of those risks and defenses are identified in the Committee Objection, including the Cornell Report, and in the *Steering Committee Investors' Statement in Support of Settlement and Response to Settlement Objections* [ECF No. 1739] (the

"**Steering Committee Statement**").  For example, any damages recovery by the RMBS Trusts could be reduced to the extent a court determines that: (i) the RMBS Trusts must show that the Debtors' breaches of representations and warranties under the Transaction Documents actually caused the RMBS Trusts to suffer the asserted losses, and that such losses were not the result of market forces rather than the Debtors' breaches (*see* Committee Objection, pp. 29, 31-36; Cornell Report, ¶¶ 14, 17-25); (ii) the RMBS Trust Claims are barred by the statute of limitations under applicable law (*see* Committee Objection, pp. 29, 36-37); and (iii) no "put-back" or other damages remedy is available with respect to mortgage loans that have been foreclosed (*see* Committee Objection, pp. 29, 38-41).

29.    Absent the approval of the RMBS Settlement, the RMBS Trust Claims would need to be asserted, litigated and liquidated on an individual basis.  As described in the Steering Committee Statement, litigation of the Repurchase Claims would be an uncertain, expensive and protracted process.  Even if such litigation were successful, it likely would deplete the Debtors' estates, and might nonetheless result in diminished recoveries to all creditor constituencies, including the Deutsche Bank RMBS Trusts.  *See* Steering Committee Statement, ¶¶ 8, 28-32.

30.    In light of the conclusion of Duff & Phelps regarding the estimated magnitude of the Repurchase Claims, and considering the substantial risks and defenses associated with litigating those claims in the absence of a consensual resolution, Deutsche Bank concluded in its good faith judgment that the proposal in the Original Settlement Agreement to allow those claims at up to $8.7 billion in the aggregate was reasonable.  Duff & Phelps presented its conclusions to representatives of, and counsel to, Deutsche Bank and certain other RMBS Trustees at a meeting held on December 6, 2012.

31.    Consistent therewith, on or about February 4, 2013, Deutsche Bank, BNY Mellon, U.S. Bank and Law Debenture, in furtherance of the Court's request that they advise the Court of their views of the RMBS Trust Settlement in advance of the hearing on the RMBS 9019 Motion, filed the *RMBS Trustees' Statement Regarding Debtors' Motion Pursuant To Fed. R. Bankr. P. 9019 For Approval Of RMBS Trust Settlement Agreements* [ECF No. 2833] (the "**Trustees' Statement**").  The Trustees' Statement stated, among other things, that:

> After careful consideration of relevant factors and analysis, including (a) the results of its review of a statistically significant number of loan files in the [Original] Settling Trusts provided by the Debtors, (b) the estimation of projected total collateral losses and underwriting breach rates in the [Original] Settling Trusts, (c) the estimation of likely agree rates with respect to the [Original] Settling Trusts (which take into account the litigation risk associated with the relative characteristics of the breach), and (d) consideration of causality factors (which take into account the litigation risk associated with a lack of causal relationship between the breach and loss), Duff [& Phelps] advised [BNY Mellon, Deutsche Bank, US Bank and Law Debenture] that the amount of [up to 8.7 billion] is within a reasonable range to settle the [Original] Settling Trusts' Repurchase Claims  . . . .

Trustees' Statement, at ¶ 10.

32.    The foregoing RMBS Trustees further stated in the Trustee Statement that:

> Assuming no changes in the facts and controlling law underlying the Repurchase Claims, and subject to the RMBS Trustees' determination that all provisions of the RMBS Trust Settlement are fair, equitable and reasonable to the Settling Trusts, the RMBS Trustees have determined that the Allowed Claim falls within a reasonable range to resolve the Settling Trusts' Repurchase Claims and the Debtors' proposed Revised Claim Allocation Methodology for allocating the Allowed Claim among the Settling Trusts is fair and equitable to those trusts.

*Id.* at ¶12.

### b.    Claims Allocation

33.    Duff & Phelps also evaluated the methodology in the Original Settlement Agreement regarding allocation to each of the RMBS Trusts of the aggregate allowed Repurchase Claims.  That proposed methodology applied in the Original Settlement Agreement

allocated the aggregate claim among the Original Settling Trusts *pro rata* on the basis of net

expected lifetime losses.    In response to suggestions by Duff & Phelps, and after lengthy

discussions    with    the    Steering    Committee    Consenting    Claimants    and    the    Debtors,    the

methodology was modified (the "**Revised Claim Allocation Methodology**") to provide for the

Allowed Claim to be allocated *pro rata* based on differences among the RMBS Trusts in the

incidence of breaches of representations and warranties, as revealed by additional loan sampling

and statistical work to be performed by Duff & Phelps.    In light of Duff & Phelps' analysis,

Deutsche Bank concluded that the Revised Claim Allocation Methodology was reasonable.

34.    Accordingly, the Trustee's Statement also noted that:

> . . . the Allowed Claim will be allocated (the "**Claim Allocation Methodology**")
> among the [Original] Settling Trusts by an independent expert "based on net
> expected lifetime losses among the accepting Trusts, including expected lifetime
> claims to be paid by the monoline insurers on the securitizations they insured."

Trustees' Statement, at ¶ 6.

35.    The Trustees' Statement, however, in light of Duff & Phelps' analysis, further

noted:

> [BNY Mellon, Deutsche Bank, US Bank and Law Debenture], after consulting
> with Duff, asked the Debtors and the Institutional Investors to adjust the Claim
> Allocation Methodology.    Though they advised [BNY Mellon, Deutsche Bank,
> US Bank and Law Debenture] of their view that the existing formula was both
> adequate and reasonable, the parties to the RMBS Trust Settlement were
> amenable to the . . . requested change, which we [*i.e.*, BNY Mellon, Deutsche
> Bank, US Bank and Law Debenture] understand will be embodied in an
> amendment (the "**Revised Claim Allocation Methodology**").

Trustees' Statement at ¶ 9.

36.    Consistent with Duff & Phelps' recommendations, the Revised Claim Allocation

Methodology is set forth in the Supplemental Term Sheet and is part of the RMBS Settlement

*See* Supplemental Term Sheet, Schedule A to Annex III.

        ii.    **Additional Settling Trusts**

37.     It consistently has been contemplated by the Deutsche Bank and the other RMBS Trustees that the resolution of the RMBS Trust Claims would include the claims of the Additional Settling Trusts, not just the Original Settling Trusts.  In that regard, the RMBS Trustees, working together with Duff & Phelps, identified the Additional Settling Trusts that have RMBS Trust Claims.

38.     The calculation of the aggregate Repurchase Claims of the Additional Settling Trusts was completed by Duff & Phelps using the same methodologies it employed to quantify the Repurchase Claims of the Original Settling Trusts.  Based on those methodologies, as of the date the Supplemental Term Sheet was agreed to, Duff & Phelps had preliminarily determined that the aggregate amount of the Repurchase Claims of the Additional Settling Trusts was approximately $950 million.  At that date, that amount was known to be subject to further refinement, based on further information that Duff & Phelps needed from one or more of the RMBS Trustees.  In addition, that amount was subject to dispute by the Debtors and the Institutional Investors.

39.     The Additional Settling Trusts are participating in the RMBS Settlement, and their claims will receive treatment thereunder that is consistent with the treatment being accorded to like claims of the Original Settling Trusts.

      **iii.**    **Claims Allowance**

40.     The proposed Allowed Claim in the Original Settlement Agreement has been adjusted under the RMBS Settlement Agreement and the Plan Support Agreement.  Specifically, pursuant to the Supplemental Term Sheet:

> . . . all RMBS Trust Claims of the Original Settling Trusts and the Additional Settling Trusts shall be fully and finally allowed as non-subordinated unsecured claims in the aggregate amount of $7.051 billion for the Original Settling Trusts and in the aggregate amount of $250 million for the Additional Settling Trusts

(collectively, the "Allowed RMBS Trust Claims") and allocated $209.8 million to
the GMACM Debtors and $7,091.2 million to the RFC Debtors; *provided,
however*, the allowance and allocation of such claims pursuant to this paragraph
shall not affect the distributions to be made in accordance with the RMBS Trust
Allocation Protocol (attached hereto as Annex III).

Supplemental Term Sheet at p. 5, ¶5.

41.     The proviso contained in the quoted portion of the Supplemental Term Sheet was
necessary because, based on Duff & Phelps' work, (i) the Repurchase Claims of both the
Original Settling Trusts and the Additional Settling Trusts are in different amounts than the
amounts stated in the Supplemental Term Sheet, and the allocation of those Repurchase Claims
as between the GMACM Debtors and the RFC Debtors is different than the allocation made by
the Debtors; and (ii) the allocations of claims made by the Debtors did not include a specific
allocation of the Servicing Claims (after an agreed upon allowance at $96 million, as discussed
below) as between the GMACM Debtors and the RFC Debtors.  While these differences did not
diminish the total Distribution Amount for RMBS Trust Claims, they do impact the amount that
will be distributed to Class GS-6 and Class RS-6 and the individual RMBS Trusts therein, which
could impact the ultimate distributions under the Plan contemplated by the Plan Support
Agreement among the RMBS Trusts.  Accordingly, Deutsche Bank and the other RMBS
Trustees requested, and the other parties to the Plan Support Agreement agreed, that the
distributions for those claims, whether to the GMACM Debtors or the RFC Debtors, be subject
to the RMBS Trust Allocation Protocol, which will allow Duff & Phelps to ensure that the
ultimate distributions to any particular RMBS Trust will not be impacted by the foregoing factors
or other factors that were not addressed in the Supplemental Term Sheet.[23]

---

[23]     As noted in the Trust Allocation Protocol, Duff & Phelps' determinations are subject to further refinement.

42.      The amounts set forth in the Supplemental Term Sheet reflect the exclusion from the Allowed Claim of approximately $1.6 billion in claims held by the Insured RMBS Trusts (as defined in the Supplemental Term Sheet).  The Insured RMBS Trusts (other than the FGIC-Insured Trusts, as further described below) have received, and in the future are assumed to receive, payment of their losses directly from the applicable Monoline, which, largely eliminates the need for an allowed claim against the Debtors' estates for the Insured RMBS Trusts.[24]  As noted in the Supplemental Term Sheet, a separate aggregate claim amount of $250 million will be allowed to account for the expansion of the RMBS Settlement to include the Repurchase Claims of the Additional Settling Trusts.[25]

43.      Based on the analysis of Duff & Phelps, in light of the concessions and agreements contained in the RMBS Settlement, because Duff & Phelps' initial allocation with respect to the Additional Settling Trusts was preliminary and subject to further refinement and dispute, and because the Additional Settling Trusts will share in the Distribution Amount (as described in paragraph 51 hereof) together with the Original Settling Trusts based on the same formula pursuant to the RMBS Trust Allocation Protocol, Deutsche Bank has determined that the inclusion of the Additional Settling Trusts in the Plan Settlement is reasonable.

### C.    Servicing Claims

44.      In order to assist the RMBS Trustees in quantifying the Servicing Claims, Duff & Phelps analyzed potential liabilities arising from Debtors' multiple roles as Servicer in the securitization process.  In performing this part of the analysis, Duff & Phelps used publicly-

---

[24]    In consideration for these payments, the Monolines in turn will be allowed significant claims against the applicable Debtors, on account of which they are anticipated to receive substantial distributions from such Debtors' estates.

[25]    Deutsche Bank filed the Proofs of Claim and Notice of Cure Claim with regard to Deutsche Bank RBMS Trusts that were not included among the Original Settling Trusts.

available data on approximately 150 industry specific litigation cases and regulatory actions relating to residential mortgage servicing practices; reviewed the files of a large sampling of litigation cases specific to the Debtors; reviewed rating agency evaluation reports for the Debtors; accessed and reviewed a large sampling of the Debtors' records of servicing complaints for Debtor-serviced loans; and used publicly-available performance data on a sample of the RMBS Trusts.

45.    Based on the analysis of those data, Duff & Phelps attempted to quantify the Debtors' liability as Servicer as related to: (a) misapplied and miscalculated payments; (b) wrongful foreclosure and improper loss mitigation practices; and (c) extended foreclosure timing issues caused by improper or inefficient servicing behavior such as falsified affidavits, improper documentation, and improper collection practices.[26]

46.    Duff & Phelps concluded that the potential liability of the Debtors as Servicer for the three bases analyzed (misapplied and miscalculated payments, wrongful foreclosure and improper loss mitigation practices, and extended foreclosure timing issues caused by improper servicing behavior) could be asserted in amounts up to as much as $1.1 billion, but that the amount of the claim was subject to uncertainty and material refinement.

47.    The assertion and litigation of Servicing Claims involves significant risk and uncertainty.  The RMBS Trustees have been unable to obtain full discovery regarding their Servicing Claims, in part because the Debtors assert that some of the information requested is not reasonably available.  The amount of information that would be needed in order to assert the Servicing Claims in a litigated proceeding is very large and the analysis of those data likely

---

[26]    In performing its analysis, Duff & Phelps took steps to identify and account for the possibility that claims against the Debtors as Servicer might be asserted either by a trustee of the affected RMBS Trust or by the master servicer of such RMBS Trust.  The total amount of such claims was adjusted downward to account for any potential double-counting in cases in which one of the RMBS Trustees served as trustee and another of the RMBS Trustees served as master servicer.

would be expensive, time-consuming, and may ultimately lack sufficient certainty to establish the validity of such claims in a contested proceeding.

48.     Furthermore, the Debtors may have strong defenses to the assertion and quantification of any Servicing Claims, the resolution of which is uncertain.  For example, in certain of the Transaction Documents, the Servicer can be held liable only if it can be shown to have acted in a negligent or grossly negligent manner.  In addition, certain of the technical defenses discussed in the Committee Objection also would be available to the Debtors as Servicer.

49.     Under the Plan Support Agreement, the Servicing Claims are allowed in the aggregate amount of $96 million.  Based on the analysis performed by Duff & Phelps, and in recognition of the material uncertainty relating to the quantification and assertion of such claims in a contested proceeding, Deutsche Bank has concluded that this amount represents a reasonable resolution of such claims within the context of the Plan Support Agreement, including the RMBS Settlement.

### III.    Claims Treatment Under the Plan

50.     The Plan Support Agreement provides for the allocation of the estimated "distributable value" of the Debtors' estates (including the Ally Contribution, as further described below).  The details of that agreed upon allocation are set forth in Annex I to the Supplemental Term Sheet.

51.     Under the Supplemental Term Sheet, certain RMBS Trust Claims are entitled to receive distributions of cash and liquidating trust interests or such other consideration of equivalent value as will not adversely affect the REMIC status of the RMBS Trusts.

Specifically, Annex I to the Supplemental Term Sheet provides that the Distribution Amount (as defined therein) allocated for the RMBS Trust Claims is $672.3 million.

52.    The amount of cash and other consideration allocable to the Repurchase Claims will be the Distribution Amount of $672.3 million, less (i) fees payable to counsel to the Institutional Investors in a total amount that is estimated to be approximately $38.32 million; and (ii) the $96 million paid to the RMBS Trusts on account of their Servicing Claims, or approximately $537.98 million.  The proposed RMBS Trust Allocation Protocol allocates the assets available for distribution to these claims between those RMBS Trusts that have Repurchase Claims against the GMACM Debtors and those that have claims against the RFC Debtors.[27]

53.    The RMBS Trusts with Cure Claims will receive payment prior to the payment of the other claims of the RMBS Trusts; such treatment is consistent with the assertion by the RMBS Trustees that such claims are "cure claims" entitled to administrative priority.[28]

54.    With regard to the Repurchase Claims of RMBS Trusts that are insured by Monolines (other than FGIC, for which trusts Deutsche Bank does not serve as trustee), such claims are not allowed against the Debtors' estates, but rather are treated directly by payment from the applicable Monoline.  The rights of Insured RMBS Trusts are reserved in the event that the applicable Monoline does not honor its obligations in the future.  Therefore, the claims of

---

[27]    The Distribution Amount (less attorneys' fees, described above, and the amount attributable to Cure Claims) will be shared in accordance with the RMBS Trust Allocation Protocol, which is attached as Annex III to the Supplemental Term Sheet, and, as further described therein, the amount to be distributed and allocated is subject to certain adjustments.

[28]    The total allowed amount of Servicing Claims, including Cure Claims and Other Servicing Claims, is capped at $96 million.  Within that capped amount, the RMBS Trustees anticipate that to the extent the Other Servicing Claims are general unsecured claims they will be treated *pari passu* with the Repurchase Claims and to the extent that are entitled to administrative priority they will be treated *pari passu* with the Cure Claims.

Insured RMBS Trusts (other than those insured by FGIC) that otherwise would have been asserted against the Debtors are contemplated to receive payments via insurance.

IV.    **Factors Supporting Settlement**

55.    The RMBS Settlement is part of an integrated, multifaceted agreement among numerous constituencies that resulted from the lengthy, highly contentious Plan Mediation. In determining that the RMBS Settlement is reasonable, Deutsche Bank considered the benefits and risks associated with reaching an overall consensual plan of reorganization as well as the risks and uncertainties associated with litigating the RMBS Trust Claims in the absence of such a plan.

A.    **The Ally Contribution**

56.    One significant facet of the global settlement is the resolution of claims against Ally and the quantification of the Ally Contribution at $2.1 billion in value. Pursuant to the Original 9019 Motion, Ally previously was willing to make a contribution limited to $750 million. Deutsche Bank believes, based on information provided during the Plan Mediation, that unless all parties (including the RMBS Trustees) consented to an overall settlement that included allowance and treatment of claims, Ally would have been unwilling to agree to contribute any amount, leading to lengthy and expensive litigation with an uncertain outcome. Deutsche Bank considered that the substantial increase in the amount of the Ally Contribution, the certainty associated with fixing the Ally Contribution, the added value to the Debtors' estates and the impact on the recoveries of the RMBS Trusts resulting therefrom, and the avoidance of the delay and expense associated with litigation relating to Ally's liability to the Debtors' estates, were all of significant benefit to the Deutsche Bank RMBS Trusts.

B.    **Litigation Risks**

57.    The Debtors' Chapter 11 cases are at the precipice of several kinds of lengthy and expensive litigation that could affect the recoveries of the RMBS Trusts.

58.    *First,* the Plan Support Agreement contemplates the fixing of claims that the RMBS Trustees expect would otherwise be contested in time-consuming and uncertain proceedings.  Objections to the RMBS 9019 Motion, including those of FGIC, MBIA and the Committee will no longer be pressed.  The RMBS 9019 Motion remains outstanding and, in the absence of the overall settlement associated with the Plan Support Agreement, will require a lengthy and expensive hearing.  Upon the conclusion of that hearing, while the Court might authorize the Debtors to perform the Trust Settlement Agreements, it is also possible that the Court might sustain one or more of the objections filed to the RMBS 9019 Motion.  If the Court declined to grant the RMBS 9019 Motion, the allowance of Repurchase Claims of the Original Settling Trusts would be left to the expensive and uncertain process of claims litigation.  Thus, allowance of the RMBS Trust Claims, as contemplated by the Plan Support Agreement, offers the benefits of allowance consistent with the RMBS 9019 Motion – a result that, as set forth above, the RMBS Trustees already have concluded is within the range of reasonableness for the Original Settling Trusts – without the risks attendant to that contested matter.

59.    In addition, the Plan Support Agreement permits the determination of, and distribution under the proposed Plan on the Repurchase Claims of the Additional Settling Trusts without the expense, delay and uncertainty associated with analyzing, asserting and litigating those claims.

60.    The Plan Support Agreement also provides for the allowance of, and distribution under the proposed Plan on, the Servicing Claims of the Deutsche Bank RMBS Trusts.  As set forth above, those claims were the subject of an analysis by Duff & Phelps and were roughly quantified, but presentation of those claims would have required further discovery and analysis, likely leading to litigation over both the quantification of the claims and their relative priority.

The treatment of the Servicing Claims represents a meaningful recovery to the RMBS Trusts possessing such claims, without the expense, delay, and uncertainty associated with analyzing, asserting, and litigating those claims.

61.    *Second*, many of the contentious and complicated inter-creditor issues in these cases are resolved by the Plan Support Agreement, including, among other things, the priority of certain claims asserted by the Monolines and by certain other securities claimants.  In particular, both the amount of the claims of the Monolines and the relationship between those claims and the RMBS Trust Claims are the subject of disputes, and the resolution of all those disputes through litigation presents both a general risk of delay and expense to all stakeholders as well as a specific risk to the RMBS Trusts of dilution.  Thus, the Plan Support Agreement, which resolves these inter-creditor claims, offers significant benefit to the RMBS Trusts.

62.    *Third*, the ever mounting costs of administration of these Chapter 11 Cases – which costs are expectedly high, given the complexities of these cases and claims – threaten to significantly erode any distribution to unsecured creditors in these cases.  The Plan Support Agreement would effectively abate such costs, such that unsecured creditors may receive a reasonable distribution on their claims.

### D.    Support of Other Constituencies

63.    It was important to Deutsche Bank that the Institutional Investors – two large investor groups holding significant, and for some RMBS Trusts controlling, investments in certificates issued by the RMBS Trusts – were informed, involved, and supportive of the RMBS Settlement.  The Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants were active participants in the negotiations (including the Plan Mediation) that led to the overall settlement associated with the Plan Support Agreement.   Through the RMBS

Trustees' regular contact with their counsel, both groups were aware of all of the compromises that the RMBS Trustees considered during the mediation and negotiations leading to the Plan Support Agreement, and both groups communicated through their counsel that they fully supported the compromises made by the RMBS Trustees as reflected in the Plan Support Agreement.

### E.    Notice to Holders in the Deutsche Bank RMBS Trusts

64.    Deutsche Bank has regularly provided to the Holders in the Deutsche Bank RMBS Trusts notice of matters related to the RMBS 9019 Motion and other significant events in these Chapter 11 Cases.  In the first instance, on May 23, 2012, Deutsche Bank provided an informational notice to certain Holders which may have RMBS Trust Claims and for which Deutsche Bank is Trustee, concerning the voluntary bankruptcy of Residential Capital LLC and certain of its affiliates, events of default and certain other matters to the holders of the Residential Mortgage Backed Securities Sponsored, Master Serviced and/or Serviced by: Residential Accredit Loans, Inc.; Residential Funding Mortgage Securities I, Inc.; Residential Funding Company, LLC; Residential Asset Mortgage Products, Inc.; Residential Asset Securities Corporation; and GMAC Mortgage LLC.

65.    Following the filing of the initial RMBS 9019 Motion, after consultation with counsel, Deutsche Bank determined that it was appropriate and prudent to jointly retain an agent together with the other similarly situated RMBS Trustees to coordinate and facilitate notice to the Holders, including the Holders in the Deutsche Bank RMBS Trusts, regarding the RMBS 9019 Motion and other important events in the Chapter 11 Cases.  The RMBS Trustees jointly retained The Garden City Group, Inc. ("**GCG**") to provide certain administrative services in connection with noticing various Holders, including the facilitation of the dissemination of notices to the various Holders at the direction and on behalf of the RMBS Trustees and the

creation and maintenance of a website for Holders that provides contact information for the RMBS Trustees, including Deutsche Bank, significant relevant developments in the Chapter 11 Cases, links to relevant documents filed in the Chapter 11 Cases, and upcoming Court deadlines and hearing dates (the "**RMBS Trustee Website**").

66.    As further described in the Affidavit of Jose C. Fraga (the "**Fraga Affidavit**"), filed contemporaneously herewith, on behalf of the RMBS Trustees, GCG has distributed to various Holders and has published on the RMBS Trustee Website the following notices, copies of which are attached to the Fraga Affidavit as Exhibits A and E through H thereto:

- On August 22, 2012, following the filing of the Chapter 11 Cases and the First Supplemental RMBS 9019 Motion, to the Holders in the Original Settling Trusts, a "Time Sensitive Notice Regarding a Proposed Settlement Between Residential Capital, LLC, et al. and the Settlement Trusts," which described the RMBS 9019 Motion and the rights of the Holders in that regard.  Among other things, this notice described the terms of the RMBS 9019 Motion, and advised the Holders that they may object to, seek discovery of, and otherwise participate in the hearing on, the RMBS 9019 Motion.

- On October 17, 24 and 31, 2012, at or about the time of the Second Supplemental RMBS 9019 Motion, to certain Holders which may have RMBS Trust Claims and for which Deutsche Bank is Trustee, a notice titled "Time Sensitive Notice Regarding (a) Order Setting Last Date to File Claims Against Debtors Residential Capital, LLC and Certain of its Direct and Indirect Subsidiaries, and (b) Updates of Matters Relevant to Certain Certificateholders," which advised that the RMBS 9019 Motion had been amended, and in the future may be further amended, and that the schedule for discovery, objections and the hearing on the RMBS 9019 Motion had been, and in the future may be, modified.  This notice also advised that current information regarding the terms of the RMBS 9019 Motion and related scheduling matters was available on the RMBS Trustee Website, as well that the Bankruptcy Court had establishing a bar date for the filing of claims in the Chapter 11 Cases and that the RMBS Trustees would file proofs of claim on behalf of the RMBS Trusts; however, if any Holders had any direct claims against the Debtors, including claims arising from or related to the ownership or purchase of any certificates in the RMBS Trusts, they should consult with their own advisors and prepare and timely file their own proofs of claim.

- On January 24, 2013 and February 1, 2013, to certain Holders which may have RMBS Trust Claims and for which Deutsche Bank is Trustee, a "Time Sensitive Notice Regarding Sale of Debtors' Servicing Platform to Ocwen Loan Servicing, LLC," advising that the Bankruptcy Court had entered an order approving the sale of Debtors' mortgage loan servicing platform to Ocwen and that the RMBS Trustees had

a period of time in which to file Cure Claims against the Debtors, related to amounts owing by the Debtors in respect of any defaults under any executory contracts being assumed by the Debtors and assigned to Ocwen as part of the sale.

- On April 8, 9 and 12, 2013, to certain Holders which may have RMBS Trust Claims and for which Deutsche Bank is Trustee, a "Notice Regarding Closing of Sale of Debtors' Servicing Platform to Ocwen and Update of 9019 Settlement." advising certain Holders which may have RMBS Trust Claims that the RMBS Trustees intended to file notices of Cure Claims on behalf of the RMBS Trusts and for which Deutsche Bank is Trustee, and that the scheduled hearing on the 9019 RMBS Motion had been adjourned to May 28, 2013.

- On May 24, 2013, at or about the time of the PSA Motion, a "Time Sensitive Notice Regarding (a) Plan Support Agreement Among ResCap Debtors and the RMBS Trustees, Among Others, and (b) Settlement Agreement Among the Debtors, Financial Guaranty Insurance Company and Certain of the RMBS Trustees" (the "Holder PSA Notice").  The Holder PSA Notice, provided to certain Holders which may have RMBS Trust Claims and for which Deutsche Bank is Trustee, described the terms of the PSA and the Term Sheets, as well as the RMBS Settlement and the FGIC Settlement and the process by which Holders could object to them.

*[Remainder of page intentionally left blank.]*

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to best of my knowledge, information and belief.

DATED this 10th day of June, 2013

_____
Brendan Meyer

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF99Q4 | Residential Accredit Loans, Inc. , Mortgage Asset-Backed Pass-Through Certificates, Series 1999-QS4 |
| RF01K3 | Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2001-KS3 |
| RF01QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2001-QS13 |
| RF01QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2001-QS16 |
| RF01QH | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2001-QS17 |
| RF01QJ | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2001-QS19 |
| RF01QI | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2001-QS18 |
| RF02K1 | Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2002-KS1 |
| RF02Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS1 |
| RF02Q2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS2 |
| RF02Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS4 |
| RF02Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS3 |
| RF02K2 | Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2002-KS2 |
| RF02Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS5 |
| RF02Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS6 |
| RF02Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS7 |
| RF02Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS8 |
| RF02Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS9 |
| RF02QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS10 |
| RF02QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS11 |
| RF02QC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS12 |
| RF02QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS13 |
| RF02QE | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS14 |
| RF02QF | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS15 |
| RF02QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS16 |
| RF02QH | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS17 |
| RF02R1 | Residential Asset Mortgage Products, Mortgage Asset-Backed Pass-Through Certificates, Series 2002-RM1 |
| RF02QI | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS18 |
| RF02QJ | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2002-QS19 |
| RF03Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS1 |
| RF03Q2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS2 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF03Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS3 |
| RF03R1 | Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RM1 |
| RF03Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS4 |
| RF03Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS5 |
| RF03Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS6 |
| RF03Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS7 |
| RF03Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS8 |
| RF03QH | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2003-QS17 |
| RF03R2 | Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-RM2 |
| RF03QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS10 |
| RF03Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS9 |
| RF03QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series  2003-QS11 |
| RF03QC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS12 |
| RF03QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series  2003-QS13 |
| RF03QE | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS14 |
| RF03QF | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS15 |
| RF03QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS16 |
| RF03QI | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS18 |
| RF03QJ | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series  2003-QS19 |
| RF03QL | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS20 |
| RF03QM | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS21 |
| RF03QN | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS22 |
| RF03QO | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QS23 |
| RF03QQ | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QA1 |
| RF04Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS1 |
| RF04Q2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS2 |
| RF04S1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-SL1 |
| RF04A1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA1 |
| RF04Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS3 |
| RF04Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS4 |
| RF04Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS5 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF04Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS6 |
| RF04Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS7 |
| RF04S2 | Residential Accredit Loans, Inc., Mortgage-Backed Pass-Through Certificates, Series 2004-SL2 |
| RF04A2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA2 |
| RF04Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS8 |
| RF04Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS9 |
| RF04QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS10 |
| RF04A3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA3 |
| RF04QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS11 |
| RF04S3 | Residential Accredit Loans, Inc., Mortgage-Backed Pass-Through Certificates, Series 2004-SL3 |
| RF04A4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA4 |
| RF04QC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS12 |
| RF04QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS13 |
| RF04QE | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS14 |
| RF04QF | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS15 |
| RF04A5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA5 |
| RF04A6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QA6 |
| RF04QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS16 |
| RF04S4 | Residential Accredit Loans, Inc., Mortgage-Backed Pass-Through Certificates, Series 2004-SL4 |
| RF05A1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA1 |
| RF05Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS1 |
| RF05Q2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS2 |
| RF05A2 | Residential Accredit Loans, Inc. , Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA2 |
| RF05S1 | Residential Asset Mortgage Products, Inc., Mortgage-Backed Pass-Through Certificates, Series 2005-SL1 |
| RF05A3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA3 |
| RF05Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS3 |
| RF05A4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA4 |
| RF05Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS4 |
| RF05Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS5 |
| RF05A5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA5 |
| RF05A6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA6 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF05Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS6 |
| RF05Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS7 |
| RF05Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS8 |
| RF05Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS9 |
| RF05A7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA7 |
| RF05S2 | Residential Asset Mortgage Products, Inc., Mortgage-Backed Pass-Through Certificates, Series 2005-SL2 |
| RF05QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS10 |
| RF05QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS11 |
| RF05A8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA8 |
| RF05O1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QO1 |
| RF05A9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA9 |
| RF05QC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS12 |
| RF05O2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QO2 |
| RF05QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS13 |
| RF05QE | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS14 |
| RF05AA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA10 |
| RF05AB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA11 |
| RF05O3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QO3 |
| RF05QF | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS15 |
| RF05AC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA12 |
| RF05O4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QO4 |
| RF05QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS16 |
| RF05AD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QA13 |
| RF05O5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QO5 |
| RF05QH | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS17 |
| RF06A1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA1 |
| RF06Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS1 |
| RF06Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS3 |
| RF06A3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA3 |
| RF06Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS4 |
| RF06A4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA4 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF06Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS5 |
| RF06A5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA5 |
| RF06Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS6 |
| RF06Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS7 |
| RF06A6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA6 |
| RF06Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS9 |
| RF06A7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA7 |
| RF06QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS10 |
| RF06QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS11 |
| RF06A8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA8 |
| RF06QC | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS12 |
| RF06QD | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS13 |
| RF06Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS8 |
| RF06A9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA9 |
| RF06QE | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS14 |
| RF06QF | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS15 |
| RF06AA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA10 |
| RF06QG | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-QS16 |
| RF06AB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QA11 |
| RF06QH | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS17 |
| RF06QI | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QS18 |
| RF07A1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QA1 |
| RF07Q1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS1 |
| RF07Q2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS2 |
| RF07A2 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QA2 |
| RF07Q3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS3 |
| RF07Q4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS4 |
| RF07Q5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS5 |
| RF07S4 | Residential Funding Mortgage Securities I Inc., Mortgage Pass-Through Certificates, Series 2007-S4 |
| RF07A3 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QA3 |
| RF07Q6 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS6 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| RF07A4 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QA4 |
| RF07Q7 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS7 |
| RF07S5 | Residential Funding Mortgage Securities I Inc., Mortgage Pass-Through Certificates, Series 2007-S5 |
| RF07Q8 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS8 |
| RF07Q9 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS9 |
| RF07QA | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS10 |
| RF07A5 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QA5 |
| RF07QB | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2007-QS11 |
| GA05A3 | GMACM Mortgage Loan Trust 2005-AR3 |
| GA05A4 | GMACM Mortgage Loan Trust 2005-AR4 |
| GA05A5 | GMACM Mortgage Loan Trust 2005-AR5 |
| GA05A6 | GMACM Mortgage Loan Trust 2005-AR6 |
| GA05F1 | GMACM Mortgage Loan Trust 2005-AF1 |
| GA05F2 | GMACM Mortgage Loan Trust 2005-AF2 |
| GA05J1 | GMACM Mortgage Loan Trust 2005-J1 |
| GS07H1 | GSR Trust 2007-HEL1 |
| GS07A1 | GSR Mortgage Loan Trust 2007-AR1 Mortgage Pass Through Certificates, Series 2007-A1 |
| GC0613 | HarborView Mortgage Loan Trust 2006-13 |
| GC070B | RBSGC Mortgage Loan Trust 2007-B |
| GC07H7 | HarborView Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-7 |
| GS07O2 | GSR Mortgage Loan Trust 2007-OA2 Mortgage Pass-Through Certificates, Series 2007-OA2 |
| GC06X1 | HarborView Mortgage Loan Trust 2006-SB1 |
| GC914 | Greenwich 1991-4 |
| GC05SB | Soundview Home Loan Trust 2005-B |
| NC040A | New Century Home Equity Loan Trust 2004-A |
| UB04S1 | MASTR Specialized Loan Trust 2004-1 |
| GC05SA | Soundview Home Loan Trust 2005-A |
| GC04X1 | FNBA Mortgage Loan Trust 2004-AR1 |
| GC05G4 | Greenpoint Mortgage Funding Trust 2005-HE4 |
| GC03S2 | Soundview 2003-2 |
| UB07S1 | MASTR SPECIALIZED LOAN TRUST 2007-01 Mortgage Pass-Through Certificates |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| UB07S2 | MASTR SPECIALIZED LOAN TRUST 2007-02 Mortgage Pass-Through Certificates |
| AB07O1 | Alliance Securities Corp., Mortgage Backed Pass-Through Certificates, Series 2007-OA1 |
| AH0501 | American Home Mortgage Securities LLC Trust 2005-1 |
| AH0502 | American Home Mortgage Securities LLC Trust 2005-2 |
| AH0602 | American Home Mortgage Securities LLC Trust 2006-2 |
| AH07AS | American Home Mortgage Securities LLC Trust 2007-A |
| GC0614 | HarborView Mortgage Loan Trust 2006-14 |
| GC07H2 | HarborView Mortgage Loan Trust 2007-2 |
| GC07H4 | HarborView Mortgage Loan Trust 2007-4 |
| GC07HA | HarborView Mortgage Loan Trust 2007-A |
| MS0503 | Morgan Stanley Mortgage Loan Trust 2005-3AR Mortgage Pass-Through Certificates, Series 2005-3AR |
| GC03H1 | HarborView Mortgage Loan Trust 2003-1 Mortgage Loan Pass-Through Certificates, Series 2003-1 |
| GC03H2 | HarborView Mortgage Loan Trust 2003-2 Mortgage Loan Pass-Through Certificates, Series 2003-2 |
| GC0410 | HarborView Mortgage Loan Trust 2004-10 Mortgage Loan Pass-Through Certificates, Series 2004-10 |
| GC04H1 | HarborView Mortgage Loan Trust 2004-1 Mortgage Loan Pass-Through Certificates, Series 2004-1 |
| GC04H4 | HarborView Mortgage Loan Trust 2004-4 Mortgage Loan Pass-Through Certificates, Series 2004-4 |
| GC04H5 | HarborView Mortgage Loan Trust 2004-5 Mortgage Loan Pass-Through Certificates, Series 2004-5 |
| GC04H6 | HarborView Mortgage Loan Trust 2004-6 Mortgage Loan Pass-Through Certificates, Series 2004-6 |
| GC04H7 | HarborView Mortgage Loan Trust 2004-7 Mortgage Loan Pass-Through Certificates, Series 2004-7 |
| GC04H8 | HarborView Mortgage Loan Trust 2004-8 Mortgage Loan Pass-Through Certificates, Series 2004-8 |
| GC0511 | HarborView Mortgage Loan Trust 2005-11 Mortgage Loan Pass-Through Certificates, Series 2005-11 |
| GC0515 | HarborView Mortgage Loan Trust 2005-15 Mortgage Loan Pass-Through Certificates, Series 2005-15 |
| GC05H4 | HarborView Mortgage Loan Trust 2005-4 Mortgage Loan Pass-Through Certificates, Series 2005-4 |
| GC05H6 | HarborView Mortgage Loan Trust 2005-6 Mortgage Loan Pass-Through Certificates, Series 2005-6 |
| GC05H7 | HarborView Mortgage Loan Trust 2005-7 Mortgage Loan Pass-Through Certificates, Series 2005-7 |
| GC06H8 | Harborview Mortgage Loan Trust 2006-8 |
| UB06S2 | MASTR Specialized Loan Trust 2006-02 Mortgage Pass-Through Certificates |
| MS0505 | MORGAN STANLEY Mortgage Loan Trust 2005-5AR |
| MS0506 | MORGAN STANLEY Mortgage Loan Trust 2005-6AR |
| MS0509 | MORGAN STANLEY Mortgage Loan Trust 2005-9AR |
| MS0511 | MORGAN STANLEY Mortgage Loan Trust 2005-11AR |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| UB06S3 | MASTR Specialized Loan Trust 2006-3 |
| MS0507 | Morgan Stanley Mortgage Loan Trust 2005-7 |
| MS0510 | Morgan Stanley Mortgage Loan Trust 2005-10 |
| MG0401 | MortgageIT Trust 2004-1, Mortgage Backed Notes, Series 2004-1 |
| MG0402 | MortgageIT Trust 2004-2, Mortgage Backed Notes, Series 2004-2 |
| MG0501 | MortgageIT Trust 2005-1, Mortgage Backed Notes, Series 2005-1 |
| MG0502 | MortgageIT Trust 2005-2, Mortgage Backed Notes, Series 2005-2 |
| MG0503 | MortgageIT Trust 2005-3, Mortgage Backed Notes, Series 2005-3 |
| MG0504 | MortgageIT Trust 2005-4, Mortgage Backed Notes, Series 2005-4 |
| MG0505 | MortgageIT Trust 2005-5, Mortgage Backed Notes, Series 2005-5 |
| IM02S2 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2002-2 |
| IM02S3 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2002-3 |
| IM03S1 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2003-1 |
| IM03S3 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2003-3 |
| IM04S1 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2004-1 |
| IM04S2 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2004-2 |
| IM06S1 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-1 |
| IM06S2 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-2 |
| IM06S3 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-3 |
| IM06S4 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-4 |
| IM06S5 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-5 |
| IM070A | IMPAC CMB Trust Series 2007-A |
| IM07S3 | Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-3 |
| IM0209 | Impac CMB Trust 2002-9F |
| IM02U1 | PFCA Home Equity Investment Trust 2002-IFC1 |
| IM02U2 | PFCA Home Equity Investment Trust 2002-IFC2 |
|  | PFCA Home Equity Investment Trust 2002-IFC4 |
| IM0302 | Impac CMB Trust 2003-2F |
| IM0304 | Impac CMB Trust 2003-4 |
| IM0309 | Impac CMB Trust 2003-9F |
| IM0404 | Impac CMB Trust 2004-4 |

8

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| IM0405 | Impac CMB Trust 2004-5 |
| IM0407 | Impac CMB Trust 2004-7 |
| IM0408 | Impac CMB Trust 2004-8 |
| IM0410 | Impac CMB Trust 2004-10 |
| IM0501 | Impac CMB Trust 2005-1 |
| RF03QK | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QR13 |
| RF03QP | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QR19 |
| RF03QR | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2003-QR24 |
| RF04R1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QR1 |
| RF05R1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QR1 |
| RF08R1 | Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2008-QR1 |
| FB07N1 | Credit Suisse NIMs Trust Residential Accredit Loans, Inc. 2007-QO1NIM (underlying trust RALI Series 2007, QO1 Trust) |
| GC06N7 | RALI NIM CI-1 Notes, Series 2006-QO4 |
| SW881 | Southwest Savings 1988-1 |
| IM0504 | Impac CMB Trust 2005-4 |
| IM0505 | Impac CMB Trust 2005-5 |
| IM0507 | Impac CMB Trust 2005-7 |
| IM0508 | Impac CMB Trust 2005-8 |
| UB03I2 | PFCA Home Equity Investment Trust 2003-IFC4 |
| UB03I3 | PFCA Home Equity Investment Trust 2003-IFC5 |
| UB03I4 | PFCA Home Equity Investment Trust 2003-IFC6 |
| UB0305 | MASTR SEC TR 2003-5 |
| UB05S1 | MASTR SPEC LN TR 2005-1 |
| UB06S1 | MASTR SPEC LN TN 2006-1 |
| | MortgageIT Trust 2005-AR1 |
| | MortgageIT Trust 2006-1 |
| GC07S1 | Soundview Home Loan Trust 2007-1 |
| AH07S1 and AH07AS | American Home Mortgage Investment Trust 2007-SD1 Mortgaged-Backed Notes, Series 2007-SD1 and American Home Mortgage Investment Trust 2007-A Mortgaged-Backed Notes, Series 2007-A |
| GC07H6 | Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-6 |

| Issuer I.D. | Name of Securitization Trust |
|---|---|
| HB07L2 | HSI Asset Loan Obligation Trust 2007-AR2 Mortgage Pass-Through Certificates, Series 2007-AR2 |
| | MASTR SPECIALIZED LOAN TRUST 2004-02 MORTGAGE PASS-THROUGH CERTIFICATES |
| | MASTR SPECIALIZED LOAN TRUST 2005-02 MORTGAGE PASS-THROUGH CERTIFICATES |
| | MASTR SPECIALIZED LOAN TRUST 2005-03 MORTGAGE PASS-THROUGH CERTIFICATES |
| | Bear Stearns Asset Backed Securities Trust 2001-2 |