# Exhibit C

**ALLEN & OVERY LLP**
John Kibler
Jonathan Cho
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300

*Counsel to HSBC Bank USA, N.A., as Trustee
of Certain Residential Mortgage Backed
Securities Trusts*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** ) | |
| ) | **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, ) | |
| ) | **Chapter 11** |
| **Debtors.** ) | |
| ) | **Jointly Administered** |

### DECLARATION OF FERNANDO ACEBEDO

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

I, Fernando Acebedo, hereby declare, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge, information and belief:

1. I am employed by HSBC Bank USA, N.A., and my current title is Vice President. Unless otherwise indicated, I have personal knowledge of the facts set forth herein, except as to certain matters that I believe to be true based on my review of the business records of HSBC Bank USA, N.A.

2. This Declaration in submitted in support of the (a) *Joinder of Certain RMBS Trustees to Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally*

*Financial Inc., the Creditors Committee and Certain Consenting Claimants* (the "**Joinder**") and (b) *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors Committee and Certain Consenting Claimants* [ECF No. 3814] (the "**Plan Support Agreement Motion**").[1]

3. On May 13, 2013, the Debtors, Ally Financial Inc. ("**AFI**"), the Official Committee of Unsecured Creditors (the "**Committee**") and the Consenting Claimants[2] entered into the Plan Support Agreement [ECF No. 3814, Ex. 3], pursuant to which they agreed to the terms of a proposed consensual Chapter 11 plan of reorganization (the "**Plan**") and resolution of all claims and disputes between them as set forth in the Plan Term Sheet (the "**Plan Term Sheet**") and the Supplemental Term Sheet (the "**Supplemental Term Sheet**," together with the Plan Term Sheet, the "**Term Sheets**") attached respectively as Exhibits A and B to the Plan Support Agreement.

4. Among the claims and disputes resolved in the proposed Plan is a settlement (the "**RMBS Settlement**") that provides for the allowance, priority, allocation and treatment of the claims of residential mortgage backed securitization trusts (the "**RMBS Trusts**") against the Debtors, including claims arising from Origination-Related Provisions[3] (the "**Repurchase**

---

[1] On May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "**ResCap**" or the "**Debtors**") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases are being jointly administered under the caption *In re Residential Capital, LLC*, Case No. 12-12020 (MG).

[2] Capitalized terms used herein without definitions have the meanings ascribed to them in the Plan Support Agreement Motion or the Plan Support Agreement, as applicable.

[3] "**Origination-Related Provisions**" shall have the meaning ascribed in the Revised Joint Omnibus Scheduling Order and Provisions for Other Relief Regarding (I) Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Agreements, (II) The RMBS Trustees' Limited Objection to the Sale Motion [ECF No. 945].

2

Claims") and claims unrelated to Origination-Related Provisions (the "**Servicing Claims,**" together with the Repurchase Claims, the "**RMBS Trust Claims**").

A.   *HSBC Bank USA, N.A.'s Role as Trustee*

5.   HSBC Bank USA, N.A., serves as trustee, indenture trustee, and/or other similar agencies (in any such capacity, "**HSBC**" or the "**Trustee**") in respect of certain residential mortgage backed securities trusts (collectively, the "**HSBC RMBS Trusts**").

6.   The HSBC RMBS Trusts are governed by one or more Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), and/or a highly-integrated set of "Servicing Agreements," "Mortgage Loan Purchase Agreements," "Indentures," and/or "Trust Agreements" and/or other similar and ancillary transaction documents (collectively, the "**Transaction Documents**").

7.   Pursuant to the Transaction Documents, one or more of the Debtors has obligations in various capacities, including as originator, seller, sponsor, depositor and similar capacities (together, "**Seller**"), and/or as servicer, subservicer, master servicer, back-up servicer, HELOC servicer, administrator, co-administrator, and similar capacities (collectively, "**Servicer**").

8.   In the appropriate capacity or capacities as provided for in the Transaction Documents, HSBC has the authority to enforce claims against the Seller and Servicer in respect of the HSBC RMBS Trusts and to vote such claims in connection with a plan of reorganization for the Debtors.

B.   *The Proofs of Claim*

9.   The claims of the HSBC RMBS Trusts fall into two broad categories: (a) Repurchase Claims, which arise from the conduct of the Debtors as Seller, and which include,

3

but are not limited to, claims arising from the right to demand the repurchase of loans based on for breaches of representations and warranties under the Transaction Documents with respect to such loans; and (b) Servicing Claims, which arise from the conduct of the Debtors as Servicer under the applicable pooling and servicing agreement (or similar agreement).

10. On or about November 16, 2012, (i) HSBC, as Trustee, filed one or more proofs of claim for each of the HSBC RMBS Trusts, which proof of claims asserted (among other things): (a) the Servicing Claims; (b) the Repurchase Claims and claims for breaches of other representations and warranties; and (c) claims for indemnification under the Transaction Documents.

C.   *The RMBS 9019 Motion, the Original Settlement Agreement and Analysis of Claims*

11. Shortly after these Chapter 11 cases were filed the Debtors filed a motion,[4] which was later amended (as amended, the "**RMBS 9019 Motion**"[5]), seeking approval of the Debtors' agreements (collectively, the "**Original Settlement Agreement**"[6]) with two groups of institutional investors (the "**Institutional Investors**") who collectively held, or were authorized investment managers for holders of 25% or more of classes (or tranches) of, certificates of certain of the RMBS Trusts. The Original Settlement Agreement related to the Repurchase Claims of 392 RMBS Trusts (the "**Original Settling Trusts**") and contemplated, among other things, that the Original Settling Trusts would be granted an allowed aggregate claim of up to $8.7 billion against those Debtors that acted as Seller (the "**Allowed Claim**").

---

[4] *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 320]

[5] *Debtors' Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1176] and the *Debtors' Second Supplemental Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of RMBS Trust Settlement Agreements* [ECF No. 1887]

[6] The Third and Amended and Restated Settlement Agreements can be found at Exhibits 1 and 2 of the *Declaration of LaShann M. DeArcy in Further Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement Agreements* [ECF No. 3222]

4

12. In connection with the RMBS 9019 Motion, certain of the RMBS Trustees involved with the Original Settling Trusts retained Duff & Phelps, LLC ("**Duff & Phelps**") as an expert to assist them in the Chapter 11 Cases, including in the identification, quantification, litigation and/or resolution of the RMBS Trust Claims. Among other things, Duff & Phelps calculated the quantum of the aggregate Repurchase Claims of the Original Settling Trusts, as well as a *pro rata* allocation of the Allowed Claim among the Original Settling Trusts based on differences among the Original Settling Trusts in the incidence of breaches of representations and warranties. Moreover, Duff & Phelps performed a similar analysis with respect to those RMBS Trusts that were neither included among the Original Settling Trusts nor the subject of the 9019 RMBS Motion (the "**Non-Settling Trusts**").

13. In addition to the above, Duff & Phelps also attempted to quantify the Debtors' liability as Servicer as related to: (a) misapplied and miscalculated payments; (b) wrongful foreclosure and improper loss mitigation practices; and (c) extended foreclosure timing issues caused by improper or inefficient servicing behavior such as falsified affidavits, improper documentation, and improper collection practices.

### D.    *HSBC's Involvement and Entry into the Plan Support Agreement*

14. The HSBC RMBS Trusts were Non-Settling Trusts, and HSBC was not a party to the Original Settlement Agreement. However, as an RMBS Trustee, HSBC participated in the mediation of various issues in the Chapter 11 Cases overseen by U.S. Bankruptcy Judge James M. Peck, as contemplated by this Court's order dated December 26, 2012, and ultimately joined the RMBS Settlement and entered into the Plan Support Agreement on May 13, 2013. The HSBC RMBS Trusts fall into the category of "Additional Settling Trusts" under the RMBS Settlement.

15. In connection with the mediation, HSBC reviewed and analyzed work done by Duff & Phelps with respect to the quantification of the RMBS Trust Claims, and specifically, the analysis as it related to the Non-Settling Trusts. Prior to entering into the Plan Support Agreement, HSBC considered the benefits and risks associated with reaching an agreement regarding an overall consensual plan of reorganization, as well as the risks and uncertainties associated with allowance of, and distributions on, the RMBS Trust Claims in the absence of a consensual plan. Such uncertainties included, among other things: (i) the fixing of the RMBS Trust Claims, (ii) the pursuit of potential claims against AFI, (iii) various inter-creditor issues and disputes, and (iv) the ongoing costs of the Chapter 11 Cases, all as summarized in greater detailed in the Joinder and the various declarations of the RMBS Trustees in support thereof.

16. The Plan Support Agreement permits the determination of, and distribution under the proposed Plan on, the Repurchase Claims of the Non-Settling Trusts (as Additional Settling Trusts) without the expense, delay and uncertainty associated with analyzing, asserting and litigating those claims. It further provides for the allowance of, and distribution under the proposed Plan on, the Servicing Claims of the RMBS Trusts, the presentation of which would have required further discovery, analysis, and potential litigation over both the quantification of the claims and their relative priority. The treatment of the Servicing Claims represents a meaningful recovery to the RMBS Trusts possessing such claims, without the expense, delay and uncertainty associated with analyzing, asserting and litigating those claims.

17. Relying on the advice of its professional advisors, HSBC assessed whether the allowance of, and distribution on, such claims under the terms set forth in the Plan Support Agreement would be reasonable. Ultimately, HSBC determined in good faith that the treatment

of the RMBS Trust Claims as set forth in the Plan Support Agreement and the proposed Plan are a reasonable compromise of the claims of the HSBC RMBS Trusts.

18.  Finally, in conjunction with the other RMBS Trustees, HSBC provided notice of the RMBS Settlement and the Plan Support Agreement to Holders in the HSBC RMBS Trusts, through The Garden City Group, Inc., which had been retained by the RMBS Trustees for that purpose, as set forth more fully in the Affidavit of Jose C. Fraga attached to the Joinder.

Dated this 10th day of June, 2013

_____
Fernando Acebedo

*For HSBC Bank USA, N.A., as Trustee for the HSBC RMBS Trusts*