# EXHIBIT 3

## Engagement Letter



May 24, 2013

**VIA E-MAIL**

J. Alexander Lawrence, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104-0050
Phone: (212) 336-8638
Email: alawrence@mofo.com


**Re:     FGIC RMBS Claim Analysis in connection with a Settlement Agreement stemming from the In re Residential Capital, LLC, et al., Case No. 12-12020 (MG) (the "Matter")**


Dear Mr. Lawrence:

This letter agreement confirms the terms of your engagement (the "Engagement Agreement") of  NewOak Capital Advisors LLC ("NewOak") to serve as an expert witness to Morrison & Foerster LLP (the "Counsel") on behalf of its client Residential Capital LLC and its affiliated debtor entities (the "Client") in their chapter 11 bankruptcy cases pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 12-12020 (MG), with respect to the Matter.

**Scope of Work**

NewOak is being retained by Counsel as an expert witness in connection with the Matter. Counsel, Client and NewOak agree that NewOak will be compensated only for those services that Counsel or Client directly and specifically requests (the "Services"). The Services specifically requested by Counsel or Client shall be initially set forth in Schedule B hereto and all further statements of work ("SOW") agreed in writing among the parties, with each such further SOW being deemed to be incorporated herein by reference.  For the avoidance of doubt, Services requested and provided without a SOW will be compensated at the hourly rates set out below. The Services will be rendered in a professional and commercially reasonable manner.

NewOak's status under this Engagement Agreement will be that of an independent contractor and not that of an employee of Counsel or Client.  Client, which shall be the sole party responsible for paying the fees of NewOak, will not withhold or pay Social Security taxes, unemployment insurance, or income taxes on NewOak's behalf.  NewOak will provide a

completed Form W-9 or other forms as may be reasonably requested by Client to assist in complying with IRS regulations.

## Confidentiality and Non-Disclosure

In connection with the Services provided by NewOak, NewOak may receive or have access to confidential and proprietary information of Client. For purposes of this Engagement Agreement, the term "Confidential Information" shall mean the confidential and proprietary data and information of Client, whether received prior to, on, or after the date of this Engagement Agreement, in oral, written or electronic form, which Confidential Information shall include, but not be limited to, Client's financial, business and technical data and information, customer and employee identities and information, specifications, samples, reports, business plans, forecasts, current or historical data, computer programs, documentation, market research, trade secrets, notes, analyses, compilations, studies, interpretations, and information of Client's suppliers or other vendors.

NewOak agrees to: (a) keep the Confidential Information confidential and secure; (b) restrict disclosure of the Confidential Information solely to its affiliates and its and their respective officers, employees, consultants and agents with a "need to know" such Confidential Information for purposes of the Services between NewOak and Client (the persons to whom disclosure is permissible being collectively called "Representatives"); (c) not disclose to any other person or copy the Confidential Information without the approval of Client; (d) use the Confidential Information solely for purposes of the business dealings between NewOak and Client and not for NewOak's own financial gain, in connection with any other business or service conducted by NewOak, or in any way directly or indirectly detrimental to Client; and (e) inform the Representatives of the confidential nature of the Confidential Information and obtain their agreement to the obligations herein set forth. Furthermore, NewOak agrees to not transfer, distribute, export or otherwise communicate any Confidential Information outside of the United States for any purpose without the prior written approval of Client.

NewOak understands that, as an expert witness, (i) all communications between Counsel or Client and NewOak, whether oral or written, are privileged and confidential; and (ii) documents that NewOak generates at the request of Counsel or Client, including drafts and analyses, as well as materials that Counsel or Client provides to NewOak, may be protected from disclosure as trial preparation materials or work product under applicable rules of procedure (collectively, "Privileged Information").  Except as permitted hereunder, NewOak agrees that it will not share the substance or content of this Privileged Information with any person outside NewOak unless expressly authorized by Counsel beforehand in writing.

Notwithstanding anything to the contrary contained herein, this obligation of confidentiality and non-disclosure as to the Confidential Information and Privileged Information and the fact that NewOak is an expert does not apply to data or information which: (i) is or becomes generally available to the public other than as a result of a disclosure by NewOak or any of its Representatives in breach of this Engagement Agreement; (ii) is required to be disclosed

pursuant to any order, request or decree of any appropriate court, government agency or regulatory authority, subject to NewOak providing Counsel at least fifteen (15) days advance written notice, to the extent legally permissible, prior to any such disclosure; (iii) was in NewOak's possession prior to the time it was disclosed to NewOak by Counsel or Client; or (iv) is disclosed to NewOak by a third party who is under no obligation of confidentiality to Counsel or Client.

Moreover, NewOak may disclose Confidential Information or Privileged information (a) to its affiliates and its and their respective employees, consultants, vendors or agents who provide services in connection with this engagement, subject to NewOak advising them of their confidentiality obligations pursuant to this Engagement Agreement (b) with Counsel's or Client's written consent, or (c) when legally required to do so, subject to the restrictions set forth herein, including the provision of at least fifteen (15) days advance written notice, to the extent legally permissible and reasonably practicable, to Counsel.

## Compensation

Client has agreed to compensate NewOak consultants at the following hourly rates: (i) Ron D'Vari as the expert witness at the rate of $950 per hour for all general preparatory work on the Matter as well as expert testimony and court appearances; (ii) NewOak consultants at the Partner level at the rate of $950 per hour; (iii) NewOak consultants at the Managing Director level  at the rate of $750 per hour; (iv) NewOak consultants at the Director/Associate Director level  at the rate of $600 per hour; (v) NewOak consultants at the Associate level at the rate of $500 per hour; and, (vi) NewOak consultants at the Analyst level at the rate of $400 per hour. Requested work to be completed outside of the New York City metropolitan area shall be subject to a minimum of eight (8) billable hours (including travel time) per NewOak consultant completing such work; provided that, any international travel shall be subject to a minimum of forty (40) billable hours (including travel time) per NewOak consultant completing such work.

Client also agrees to compensate NewOak for reasonable expenses incurred at Counsel's or Client's request, subject to Bankruptcy Court approval of such fees.  NewOak agrees to keep an accurate record of the time spent consulting as expert witness on the Matter and will provide Client with a monthly statement describing the work performed, hours spent thereon in one-tenth hour increments, and any expenses for which NewOak seeks compensation, accompanied by copies of receipts for such expenses.

NewOak understands that it is being retained by Counsel on behalf of the Client.  Although NewOak will be working directly with Counsel, it understands that any compensation it receives for its services as expert witness in the Matter will come directly from Client, and that in no event is Counsel, or any lawyer, paralegal, staff member or other employee or agent associated with Counsel, to be responsible for or liable with respect to any and all amounts billed by or owed to NewOak as expert witness in the Matter.

Subject to the conditions of the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Interim Compensation Order") attached hereto as Schedule C, Client agrees that all monthly invoices for NewOak's fees and expenses shall be due and payable by Client within 30 days of receipt.  In addition, NewOak reserves the right to suspend work on the Matter in the event that invoice balances remain unpaid and outstanding: (i) over 20 days from the date such invoices may be paid pursuant to Section 2 (e) of the Interim Compensation Order in connection with invoice balances that are payable pursuant to such Section 2 (e); and, (ii) over 15 days from the first date such invoice balances that are payable pursuant to Section 2 (j) of the Interim Compensation Order shall become payable.  In the event that a portion of an invoice remains unpaid after 30 days from the date it becomes payable under the Interim Compensation Order, Client also agrees to pay NewOak a retroactive finance charge of one-and-one-half percent (1.5%) per month on such unpaid invoice balances unpaid after 30 days from the date it became payable under the Interim Compensation Order and agrees to pay all costs of collection, whether or not ordinarily recoverable as costs of a suit, including but not limited to reasonable attorney's fees, fees for NewOak personnel at their standard hourly rates, and NewOak's in-house administrative expenses.  Client agrees to provide direct contact between Client's applicable accounts payable department (Jill Horner CFO Debtor's Estate, Tel: (952) 857-7454, Jill.Horner@gmacrescap.com ) and NewOak's billing department (Robert Johnson, Controller, Tel: (212) 209-0779, rjohnson@newoak.com) to facilitate the efficient transmission of NewOak's invoices and to arrange for electronic invoice payment, if applicable.

Client agrees to pay NewOak the full amount due, regardless of the outcome of this Matter. NewOak prepares its bills in accordance with this Engagement Agreement and does not anticipate discounting its invoices or fees at a later date.  Notwithstanding any language to the contrary, Counsel and Client understand that NewOak's fees are in no way contingent on the nature of its findings, presentation of these findings in testimony, or the outcome of any proceedings or this Matter.

## **Conflicts**

As of the date hereof, NewOak knows of no fact or situation that would represent a conflict of interest for it by its engagement as expert witness in the Matter. NewOak agrees to let Counsel know immediately upon becoming aware of any potential adversary in the Matter for which NewOak, in its professional judgment, has a conflict. NewOak agrees that Counsel and Client shall not be restricted from receiving services, whether or not similar to the Services, from any other entity.  Counsel and Client each agree that NewOak shall not be restricted from furnishing services whether or not similar to the Services, to any person or entity, including without limitation any competitor or counterparty to Client, and, in its discretion, may make recommendations to others which may be the same as, or may be different from those made under this Engagement Agreement.

4

**Document Maintenance; Ownership**

NewOak understands that, as a result of or in the course of NewOak's work for Counsel and Client, NewOak may generate or prepare a report or reports requested by Counsel or Client. NewOak understands that Counsel and Client have the right to (i) produce any work completed by NewOak under this Engagement Agreement in its entirety to any court or arbitrator in connection with the Matter, (ii) otherwise use, copy and recreate extracts of any report or reports, provided that such use shall be subject to the terms of this Engagement Agreement and neither Counsel nor Client shall have any right to include NewOak's name, trademark, logo, or other information identifying NewOak in connection with such use without NewOak's prior written permission.

**Indemnification**

Each of the parties hereto understands and agrees that the indemnification terms set forth in the attached Schedule A ("Indemnification") are incorporated by reference herein.

**Term and Termination**

The term of this Engagement Agreement shall commence on the date first written above and shall end with the termination of the consultancy engagement as herein described, unless sooner terminated as set forth subsequently. This Engagement Agreement may be extended or modified by mutual agreement of the parties hereto in writing.  This Engagement Agreement may be terminated by either party by serving upon the other party ten (10) days prior written notice of its intention to terminate (the "Notice of Intent to Terminate").  Such termination shall become effective ten (10) days after the furnishing of the Notice of Intent to Terminate, and all duties and obligations of the parties under this Engagement Agreement, excepting NewOak's duty to maintain confidentiality and further excepting other duties, obligations and provisions as described in this clause, shall cease as of the effective date of termination.  The provisions set forth in the clauses hereof entitled "Confidentiality" and "Indemnification" shall survive the termination or expiration of this Engagement Agreement.  The duties, obligations and provisions set forth in the clause hereof entitled "Compensation" shall survive the termination or expiration of this Engagement Agreement until all accrued but unpaid fees and expenses have been discharged by Client.

**Governing Law; Jurisdiction and Miscellaneous**

This Engagement Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflicts of laws principles thereof (other than Section 5-1401 of the New York General Obligations Law).  Any claim arising out of this Engagement Agreement or any transaction contemplated hereby shall be instituted in any state or federal court in the State of New York located in New York County, each party hereby irrevocably submits to the jurisdiction of such courts, waives to the fullest extent permitted by

applicable law, any rights to a jury trial in respect of any disputes hereunder, and each party agrees not to assert, by way of motion, as a defense or otherwise, in any such claim, that it is not subject personally to the jurisdiction of such court, that the claim is brought in an inconvenient forum, that the venue of the claim is improper or that this Engagement Agreement or the subject matter hereof may not be enforced in or by such court.

Nothing in this Engagement Agreement shall be construed to confer upon any third party a right of action hereunder or any other right whatsoever, except under Paragraph (b) of Schedule A hereto.  NewOak owes no fiduciary duty to any owner, shareholder or member of, Counsel or the Client, even if advised that any of them may be relying on any written or oral advice or recommendation made by NewOak, or receiving any report prepared by NewOak. This Engagement Agreement contains the entire agreement of the parties respecting the subject matter hereof and supersedes all prior agreements (written or oral) between the parties respecting the subject matter hereof.  No party (nor any of its representatives) has made any representation or warranty on which any other party has relied or is entitled to rely other than as expressly set forth in this Engagement Agreement.

Counsel and Client understand and acknowledge that in providing the Services hereunder, NewOak will rely on, among other things, data provided by the Client and economic data and third-party vendor software and data in connection with its preparation of any written report, and while NewOak's analyses will be based on information NewOak reasonably deems reliable, NewOak in no case guarantees its accuracy.

NewOak represents below the authority to enter this Engagement Agreement.  By countersigning this letter, Counsel and Client each represent that they have the authority to enter into this Engagement Agreement, in the case of Client subject to Bankruptcy Court approval.  This Engagement Agreement may be executed in one or more counterparts, each of which will be deemed to be an original but all of which will constitute one and the same agreement.  This Engagement Agreement may be executed by facsimile or electronic pdf signatures and such signature will be deemed binding for all purposes of this Engagement Agreement, without delivery of an original signature being thereafter required.  This Engagement Agreement shall not be effective until duly executed by each party and fully executed counterparts are possessed by each party.

If this Engagement Agreement accurately reflects the terms of your engagement, please counter-sign this Engagement Agreement below, and return the original to NewOak.

[The remainder of this page is intentionally left blank. Signature page follows.]

Very truly yours,

**NewOak Capital Advisors LLC**

By: _____
Name: James Frischling
Title:   President

**AGREED AND ACCEPTED:**

**Morrison & Foerster LLP**

By: _____
Name: J. Alexander Lawrence
Title:   Partner

**Residential Capital LLC**

By: _____
Name: LEWIS KRUGER
Title: CHIEF RESTRUCTURING OFFICER

[Signature Page – NewOak Engagement Agreement]

7

Schedule A

**Indemnification**

(a)  NewOak shall not be liable to Counsel, Client or any other person for any losses, claims, damages, judgments, assessments, interest, costs, fines, amounts paid in settlement, fees and expenses (including reasonable attorneys' fees) or other liabilities (collectively "Losses") incurred by Counsel, Client or any other person that arise out of or in connection with the performance by NewOak of its duties under this Engagement Agreement or the reliance by Counsel or Client or any other party on the Services or any advice or counsel rendered by NewOak (whether or not part of the Services), except by reason of any material breach by NewOak of any of its representations or obligations hereunder (and provided such material breach remains uncured for 15 business days following NewOak's reasonable and actual knowledge of such breach) or any acts or omissions constituting intentional malfeasance or gross negligence in the performance by NewOak of the Services hereunder.  Except with respect to a breach of confidentiality obligations hereunder, in no event shall NewOak's liability, in the aggregate, exceed the fees paid by Client to NewOak hereunder.  **IN NO EVENT SHALL ANY PARTY BE LIABLE TO ANY OTHER PARTY FOR INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, ANY DAMAGES RELATING TO LOST PROFITS OR LOSS OF BUSINESS OPPORTUNITY) EVEN IF THE PARTY CLAIMING SUCH DAMAGES HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

(b) Client shall defend and indemnify NewOak, its affiliates and each of their respective directors (and their respective attorneys), officers, employees, agents, consultants, and sub-contractors (each, an "Indemnified Person") against all Losses arising out of this Engagement Agreement or their performance of Services or use of or reliance on the Services by Client, Counsel, or any other third party that has received the work product relating to the Services from Client or Counsel, except for Losses arising out of NewOak's intentional malfeasance or gross negligence in the performance by NewOak of the Services hereunder. Client agrees to reimburse each Indemnified Person for all out-of-pocket expenses (including reasonable attorney's fees) incurred by such Indemnified Person, as such expenses are incurred or paid, in connection with investigating, preparing for or defending any action or claim or responding to any regulatory inquiry, whether in connection with pending or threatened litigation or regulatory inquiry in each case, arising out of this Engagement Agreement or such Indemnified Person's performance of the Services hereunder or the use or reliance on the work product relating to the Services by any party receiving such Services or related work product, directly or indirectly, from the Client or Counsel. Neither NewOak nor any other Indemnified Person shall, without the prior written consent of Client, settle, compromise or consent to the entry of any judgment with respect to any pending or threatened third-party claim, action, suit or proceeding in connection with which any indemnification is or may be sought under this paragraph (b) (such pending or threatened claims, actions, suits or proceedings collectively being "Third Party Claims").  In the event a payment under this paragraph (b) is taxable to an

8

Indemnified Person (or its direct or indirect owners), Client shall, upon demand, pay to such Indemnified Person an amount equal to the tax together with an amount equal to any tax on the amount payable under this sentence.  NewOak and Client acknowledge and agree that Counsel shall have no responsibility for any such defense, indemnification or payment under this paragraph (b).

(c) In the event that any Indemnified Person becomes aware of any Third Party Claim, it shall notify Client promptly (and in any event within ten (10) days).  Client may elect to assume the defense of any Third-Party Claim by notifying such Indemnified Person of Client's election to assume such defense no later than ten days after Client receives notice of such Third–Party Claim.  If Client elects to assume the defense of a Third-Party Claim with respect to any Indemnified Person, (i) it shall diligently conduct such defense at its own expense and (ii) no compromise or settlement of such Third-Party Claim may be effected by Client without such Indemnified Person's prior written consent unless (y) there is no finding or admission of any wrong doing or liability of such Indemnified Person, nor finding or admission of any violation by such Indemnified Person of any law, rule or regulation, any obligation of such Indemnified Person or any rights of any other person, and (z) such Indemnified Person receives a full release of and from any other claims that may be made against such Indemnified Person by the third party bringing the Third-Party Claim.

Schedule B

**Statement of Work**


**Part 1 – Confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty in preparation of Expected Loss Estimation**

The tasks connected with the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty in preparation of Expected Loss Estimation shall be billed at the hourly rates set forth in the Engagement Agreement section entitled "Compensation". These tasks may include, but are not limited to, the following: (i) review of documents, agreements or data bases related to the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty; and, (ii) consultation in connection with the confirmation of each RMBS Trust Tranche Structure and FGIC Guaranty.

**Part 2 – Expected Loss Estimation**

1)      Estimate and opine on total lifetime expected losses from the date of issuance for each of the mortgage pools underlying each of the RMBS trusts referenced in Exhibit B of the FGIC/ResCap Settlement Agreement as summarized in Exhibit I attached hereto. It should be noted that some RMBS trusts have more than one underlying mortgage pool.

Fee: $1000 for each of the 61 individual mortgage pools underlying a trust listed on Exhibit I attached hereto

2)      Estimate and opine on the total lifetime expected losses from the date of issuance for each of the tranches in deals referenced in Exhibit B of the FGIC/ResCap Settlement Agreement that are not guaranteed by FGIC as summarized in Exhibit I attached hereto.

Fee: $1000 for each of the 104 CUSIPs, tranches, or classes of certificates, as applicable, not guaranteed by FGIC listed on Exhibit I attached hereto

**Part 3 – Preparation of Expert Witness Report and Related Declaration**

The tasks connected with the preparation of the Expert Witness Report and Related Declaration shall be billed at the hourly rates set forth in the Engagement Agreement section entitled "Compensation". These tasks may include, but are not limited to, the following: (i) the preparation of an expert witness report or whitepaper; (ii) expert testifying witness services; (iii) additional forensic valuation or analysis that is separate and distinct from the expected loss estimation conducted in Part 2; (iv) consultation in connection with the preparation of complaints, memoranda, declarations or other legal documents; (v) review of documents, agreements or data related to the preparation of the Expert Witness Report and related

10

Declaration; (vi)  consultation in connection with the review of documents or data produced in discovery; and, (vii) consultation in connection with the deposition of witnesses.

Schedule C

**Interim Compensation Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------
                                    )
In re:                              )        Case No. 12-12020
                                    )
RESIDENTIAL CAPITAL, LLC, et al.,   )        Chapter 11
                                    )
                    Debtors.        )        Jointly Administered
                                    )
-----------------------------------------------------------------

### ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION
### AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Upon the motion (the "Motion")[1] of Residential Capital, LLC, and certain

of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for

entry of an order establishing procedures for the interim allowance and payment of

compensation and reimbursement for attorneys and other professionals whose retentions

are approved by the Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code

and who will be required to file applications for allowance of compensation and

reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, as

more fully set forth in the Motion; and the Court having subject matter jurisdiction to

consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334 and the

Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for

the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.); and the

Motion being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before

the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided, and no other or further notice need be provided; and the

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
       Motion.  Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11
       cases or the relief granted herein may refer to http://www.kccllc.net/rescap for additional information.

ny-1048679



1212020120717000000000001

relief requested in the Motion being in the best interests of the Debtors and their estates

and creditors; and the Court having reviewed the Motion and having heard the statements

in support of the relief requested therein at a hearing before the Court (the "Hearing");

and the Court having determined that the legal and factual bases set forth in the Motion

and it appearing that the relief requested by the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation

thereon; and sufficient cause appearing therefor, it is hereby:

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted as provided herein.

2.      Except as may otherwise be provided in orders of this Court

authorizing the retention of specific professionals, all Retained Professionals in these

cases may seek interim compensation in accordance with the following procedures (the

"Interim Compensation Procedures"):

> (a)     On or before the 30th day of each month following the month for
> which compensation and expense reimbursement is sought or as
> soon as reasonably practicable thereafter, each Retained
> Professional seeking compensation shall serve a monthly
> statement (the "Monthly Statement"), by hand or overnight
> delivery, on the following parties (collectively, the "Notice
> Parties"): (i) proposed counsel for the Debtors, Morrison &
> Foerster LLP (Attn: Larren M. Nashelsky, Gary S. Lee and
> Lorenzo Marinuzzi); (ii) the Office of the United States Trustee
> for the Southern District of New York, 33 Whitehall Street, 21st
> Floor, New York, NY 10004 (Attn: Tracy Hope Davis, Linda A.
> Riffkin, and Brian S. Masumoto); (iii)  proposed counsel for the
> Official Committee of Unsecured Creditors (the "Creditors'
> Committee"), c/o Kramer Levin Naftalis & Frankel LLP, 1177
> Avenue of the Americas, New York, NY 10036 (Attn: Kenneth
> H. Eckstein and Douglas H. Mannal); (iv) counsel for Ally
> Financial Inc.,  Kirkland & Ellis, 601 Lexington Avenue, New
> York, NY 10022 (Attn: Richard M. Cieri and Ray C. Schrock);
> and (v) counsel for Barclays Bank PLC, Skadden, Arps, Slate,

Meagher & Flom LLP, 4 Times Square, New York, New York 10036 (Attn: Kenneth S. Ziman and Jonathan H. Hofer).

(b)    The Monthly Statement need not be filed with this Court and a courtesy copy need not be delivered to the presiding judge's chambers.  The procedures are not intended to alter the fee application requirements outlined in sections 330 and 331 of the Bankruptcy Code, and the Retained Professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules for the United States Bankruptcy Court, Southern District of New York.

(c)    Unless otherwise provided in the order authorizing the retention of a Retained Professional, each Monthly Statement must contain a list of the individuals and their respective titles (e.g., attorney, accountant, or paralegal) who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries for each individual in increments of tenths (1/10) of an hour.  No professional should seek reimbursement of an expense that would otherwise not be allowed pursuant to this Court's Administrative Orders, dated June 24, 1991, April 21, 1995 and November 25, 2009, or the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, dated June 4, 2004.

(d)    Each Notice Party shall have the later of (i) 20 days after its receipt of a Monthly Statement or (ii) the 40th day following the end of the month for which compensation is sought (the "Objection Deadline") to review it and, if such party has an objection to the compensation or reimbursement sought in a particular Monthly Statement (an "Objection"), such party shall serve upon the Retained Professional whose Monthly Statement is the subject of an Objection, and the other Notice Parties, a written "Notice of Objection to Fee Statement," setting forth the nature of the Objection and the amount of fees or expenses at issue.

(e)    At the expiration of the Objection Deadline, the Debtors shall promptly pay 80% of the fees and 100% of the expenses identified in each Monthly Statement to which no Objection has been served in accordance with paragraph (d) above.

(f)   If an Objection to a particular Monthly Statement is served, the Debtors shall withhold payment of that portion of the Monthly Statement to which the Objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (e) above.

(g)   Similarly, if the parties to an objection are able to resolve their dispute following the service of an Objection, and if the party whose statement was objected to serves upon all of the Notice Parties a statement indicating that the Objection is withdrawn and describing in detail the terms of the resolution, then the Debtors will promptly pay, in accordance with paragraph (e), that portion of the fee statement which is no longer subject to an objection.

(h)   All Objections that are not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing to be heard by the Court in accordance with paragraph (j) below.

(i)   The service of an Objection in accordance with paragraph (d) above shall not prejudice the objecting party's right to object to any fee application made to the Court in accordance with the Bankruptcy Code on any ground, whether raised in the Objection or not.  Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to object to any fee application subsequently made to the Court in accordance with the Bankruptcy Code.

(j)   Approximately every 120 days, but no more than every 150 days, each of the Retained Professionals shall serve and file with the Court an application for interim or final Court approval and allowance, pursuant to sections 330 and 331 of the Bankruptcy Code (as the case may be) (the "Interim Fee Application"), of the compensation and reimbursement of expenses requested.

(k)   Any Retained Professional who fails to timely file an Interim Fee Application seeking approval of compensation and expenses previously paid pursuant to a Monthly Statement (1) shall be ineligible to receive further monthly payments of fees or reimbursement of expenses as provided herein until such Interim Fee Application is filed or by further order of the Court, and (2) may be required to disgorge any fees paid since retention or the last fee application, whichever is later.

(l)   The pendency of an Interim Fee Application or a Court order that payment of compensation or reimbursement of expenses was

improper as to a particular Monthly Statement shall not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

(m)    Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Retained Professionals.

(n)    Counsel for each official committee may, in accordance with the foregoing procedure for monthly compensation and reimbursement of professionals, collect and submit statements of expenses, with supporting vouchers, from members of the committee he or she represents; provided, however, that such committee counsel ensures that these reimbursement requests comply with this Court's Administrative Orders dated June 24, 1991 and April 21, 1995.

3.    Each Retained Professional whose retention has been approved by the Court as of Petition Date may seek, in its first Monthly Statement, compensation for work performed and reimbursement for expenses incurred during the period beginning on the Petition Date and ending on June 30, 2012. All professionals not retained as of the Petition Date may seek, in their first Monthly Statement, compensation for work performed and reimbursement for expenses incurred during the period from the effective date of their retention through the end of the first full month following the effective date of their retention, and otherwise in accordance with the procedures set forth in the Motion. The first interim fee application for the Retained Professional shall seek compensation and reimbursement of expenses for the period from the Petition Date through August 31, 2012.

4.    Notice of the interim and final fee applications shall be served on the Notice Parties. Notice given in accordance with this paragraph is deemed sufficient

and adequate and in full compliance with the applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, and the Local Rules of this Court.

5.      Notice of the hearing on the interim and final fee applications shall

be served on the Notice Parties and all parties that have filed a notice of appearance with

the Clerk of this Court and requested such notice.  Notice given in accordance with this

paragraph is deemed sufficient and adequate and in full compliance with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court

and/or the Case Management Order approved in these Chapter 11 cases.

6.      The amount of fees and disbursements sought in the Monthly

Statement and the Fee Applications shall be set out in U.S. Dollars.  If the fees and

disbursements are to be paid in foreign currency, the amount shall be set out in U.S.

dollars and the conversion amount in the foreign currency, calculated at the time of the

submission of the application.

7.      The Debtors shall include all payments to professionals on their

monthly operating reports, detailed so as to state the amount paid to each of the Retained

Professionals.

8.      Any party may object to requests for payments made pursuant to

this Order on the grounds that the Debtors have not timely filed monthly operating

reports, remained current with their administrative expenses and 28 U.S.C. § 1930 fees,

or a manifest exigency exists by seeking a further order of this Court; otherwise, this

Order shall continue and shall remain in effect during the pendency of this case.

9.      All time periods referenced in this Order shall be calculated in

accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

10.     Any and all other and further notice of the relief requested in the Motion shall be, and hereby is, dispensed with and waived; provided, however, that the Debtors must serve a copy of this Order on the Notice Parties.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

13.     Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

Dated:  New York, York
        July 17, 2012

                                    _____/s/Martin Glenn_____
                                           MARTIN GLENN
                                    United States Bankruptcy Judge

Exhibit 1

**List of FGIC Deals / Groups and Tranches**

# List of Collateral Pools Analyzed

| Trust Designation | Issue Date | Original Collateral Balance ($) | Collateral Type | # of Collateral Groups | Original Par Balance of Wrapped Bonds ($) |
|---|---|---|---|---|---|
| GMACM Home Equity Loan Trust, Series 2001-HE2 | 6/28/2001 | 1,064,800,000 | Second Lien and HELOC | 1 | 1,064,800,000 |
| GMACM Home Equity Loan Trust, GMACM Home Equity Loan-backed Term Notes, Series 2001-HE3 | 10/24/2001 | 258,237,713 | HELOC | 2 | 258,236,000 |
| GMACM Home Equity Loan Trust, Series 2002-HE1 | 3/27/2002 | 400,000,000 | HELOC | 1 | 400,000,000 |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/2002 | 614,510,715 | High LTV | 1 | 614,510,000 |
| GMACM Home Equity Loan Trust, Series 2003-HE1 | 3/26/2003 | 512,800,000 | HELOC | 1 | 510,236,000 |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 3/26/2003 | 634,646,905 | Second Lien | 1 | 634,646,000 |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | 1,269,467,282 | HELOC | 1 | 1,292,317,693 |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/2004 | 700,000,000 | Second Lien | 1 | 700,000,000 |
| GMACM Home Equity Loan Trust, Series 2005-HE1 | 3/29/2005 | 975,000,000 | HELOC | 1 | 991,087,000 |
| GMACM Home Equity Loan Trust 2005-HE2 | 6/29/2005 | 1,115,194,292 | Second Lien | 1 | 1,113,522,000 |
| GMACM Home Equity Loan Trust 2006-HE1 | 3/30/2006 | 1,281,846,717 | HELOC | 1 | 1,274,156,000 |
| GMACM Home Equity Loan Trust 2006-HE2 | 6/29/2006 | 640,000,000 | Second Lien | 1 | 626,240,000 |
| GMACM Home Equity Loan Trust 2006-HE3 | 8/30/2006 | 1,149,229,743 | Second Lien | 1 | 1,142,334,000 |
| GMACM Home Equity Loan Trust 2006-HE5 | 11/29/2006 | 1,258,300,000 | Second Lien | 1 | 1,244,459,000 |
| GMACM Home Equity Loan Trust 2007-HE2 | 6/28/2007 | 1,280,582,206 | Second Lien | 1 | 1,240,884,000 |
| GMACM Home Loan Trust, Series 2004-HLTV1 | 9/29/2004 | 175,000,000 | High LTV | 1 | 175,000,000 |
| GMACM Home Loan Trust 2006-HLTV1 | 3/30/2006 | 229,865,170 | High LTV | 1 | 229,865,170 |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 1,500,000,000 | Subprime | 2 | 1,500,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 430,000,354 | Second Lien | 2 | 432,500,000 |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | 590,000,526 | Second Lien | 1 | 592,375,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 650,000,000 | Second Lien | 2 | 263,250,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI2 | 6/29/2004 | 275,000,000 | High LTV | 1 | 275,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI3 | 9/29/2004 | 220,000,000 | High LTV | 1 | 220,000,000 |

| Trust Designation | Issue Date | Original Collateral Balance ($) | Collateral Type | # of Collateral Groups | Original Par Balance of Wrapped Bonds ($) |
|---|---|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 475,000,381 | Second Lien | 2 | 477,125,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS3 | 9/29/2004 | 280,000,000 | HELOC | 1 | 284,000,000 |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 850,000,198 | Subprime | 2 | 850,000,000 |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 600,002,392 | Subprime | 2 | 600,000,000 |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 1,190,000,000 | Scratch & Dent | 3 | 1,183,656,000 |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 475,000,246 | High LTV | 2 | 475,000,000 |
| RAMP Series 2005-EFC7 Trust | 12/28/2005 | 725,000,210 | Subprime | 1 | 698,175,000 |
| RASC Series 2005-EMX5 Trust | 12/16/2005 | 400,000,044 | Subprime | 1 | 380,000,000 |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | 279,503,389 | Second Lien | 2 | 278,847,000 |
| Residential Funding Mortgage Securities II Home Loan Trust 2005-HI1 | 1/27/2005 | 240,000,000 | High LTV | 1 | 240,000,000 |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | 850,000,076 | Second Lien | 2 | 853,750,000 |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | 575,000,286 | Second Lien | 2 | 577,462,500 |
| RAMP Series 2005-NC1 Trust | 12/28/2005 | 900,000,017 | Subprime | 1 | 870,750,000 |
| RAMP Series 2005-RS9 Trust | 11/29/2005 | 1,200,001,404 | Scratch & Dent | 1 | 1,179,000,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 260,859,542 | Prime | 1 | 25,000,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 311,723,395 | Prime | 1 | 30,000,000 |
| RFMSII Series 2006-HSA1 Trust | 1/27/2006 | 463,765,025 | Second Lien | 1 | 461,444,000 |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | 450,000,000 | Second Lien | 2 | 447,900,000 |
| Home Loan Trust 2006-HI2 | 5/25/2006 | 237,844,495 | High LTV | 1 | 237,391,000 |
| Home Loan Trust 2006-HI3 | 7/21/2006 | 226,902,024 | High LTV | 1 | 223,158,000 |
| Home Loan Trust 2006-HI4 | 9/28/2006 | 273,513,055 | High LTV | 1 | 272,693,000 |
| Home Loan Trust 2006-HI5 | 12/28/2006 | 250,095,045 | High LTV | 1 | 247,469,000 |
| RASC Series 2007-EMX1 Trust | 3/12/2007 | 749,029,398 | Subprime | 1 | 692,852,000 |
| Home Loan Trust 2007-HI1 | 3/30/2007 | 257,532,198 | High LTV | 1 | 254,956,000 |
| **Total** | | **29,745,254,443** | | **61** | **28,636,046,363** |

# Non-Wrapped CUSIP, Tranches or Classes of Certificates

## Non-Wrapped Bonds

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type | Original Tranche Size ($) |
|---|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Senior | 50,000,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMP0 | Senior | 179,529,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMQ8 | Senior | 68,695,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMR6 | Senior | 14,367,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMS4 | Senior | 33,534,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMU9 | Mezzanine | 18,525,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMV7 | Mezzanine | 15,600,000 |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMW5 | Junior | 9,750,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTW3 | Senior Principal Only | 2,878,895 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTR4 | Senior | 23,903,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTS2 | Senior | 1,886,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTU7 | Senior | 176,142,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XTV5 | Senior | 23,484,000 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUA9 | Junior | 3,913,400 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUB7 | Junior | 1,565,100 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUC5 | Junior | 782,600 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUD3 | Junior | 521,700 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUE1 | Junior | 391,300 |
| RFMSI Series 2005-S2 Trust | 3/24/2005 | 76111XUF8 | Junior | 391,347 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZQ9 | Junior | 623,461 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA29 | Senior Principal Only | 1,547,234 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA60 | Junior | 6,234,900 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA78 | Junior | 2,182,100 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XA86 | Junior | 1,091,000 |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type | Original Tranche Size ($) |
|---|---|---|---|---|
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZN6 | Junior | 935,200 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZP1 | Junior | 779,300 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZR7 | Senior | 74,000,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZT3 | Senior | 2,290,910 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZU0 | Senior | 20,500,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZV8 | Senior | 117,284,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZW6 | Senior | 27,300,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZX4 | Senior | 3,591,000 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZY2 | Senior | 20,306,490 |
| RFMSI Series 2005-S7 Trust | 11/23/2005 | 76111XZZ9 | Senior | 3,057,600 |
| Total | | 34 | | 907,582,537 |

## Senior IO Tranches

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2005-HE2 | 06/29/05 | 36185MAG7 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/02 | 361856CG0 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 03/26/03 | 361856CR6 | Senior Interest Only |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/04 | 361856DZ7 | Senior Interest Only |
| RAMP Series 2004-RZ2 Trust | 06/29/04 | 7609854W8 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 09/27/02 | 76110VKT4 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 06/26/03 | 76110VMT2 | Senior Interest Only |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 03/29/04 | 76110VQD3 | Senior Interest Only |
| RFMSI Series 2005-S2 Trust | 03/24/05 | 76111XTX1 | Senior Interest Only |
| RFMSI Series 2005-S2 Trust | 03/24/05 | 76111XTT0 | Senior Interest Only |
| RFMSI Series 2005-S7 Trust | 11/23/05 | 76111XA37 | Senior Interest Only |
| Total | | | 11 |

**Residual Tranches**

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| GMACM Home Equity Loan Trust 2005-HE2 | 6/29/2005 | 36185MAG7 | Residual |
| GMACM Home Equity Loan Trust 2006-HE1 | 3/30/2006 | G06H1CERT | Residual |
| GMACM Home Equity Loan Trust 2006-HE2 | 6/29/2006 | GMHSHPPK0 | Residual |
| GMACM Home Equity Loan Trust 2006-HE3 | 8/30/2006 | GMH3JKG10 | Residual |
| GMACM Home Equity Loan Trust 2006-HE5 | 11/29/2006 | GMHEFA2Y0 | Residual |
| GMACM Home Equity Loan Trust 2007-HE2 | 6/28/2007 | GMHS1B220 | Residual |
| GMACM Home Equity Loan-backed Term Notes, Series 2001-HE3 | 10/24/2001 | GMHE01H3R | Residual |
| GMACM Home Equity Loan Trust, Series 2001-HE2 | 6/28/2001 | G01H2CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2002-HE1 | 3/27/2002 | G02H1CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2002-HE4 | 10/30/2002 | 361856CG0 | Residual |
| GMACM Home Equity Loan Trust, Series 2003-HE1 | 3/26/2003 | G03H1CERT | Residual |
| GMACM Home Equity Loan Trust, Series 2003-HE2 | 3/26/2003 | 361856CR6 | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | GMHE4H1RV | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE1 | 3/30/2004 | GMHE4H1RV | Residual |
| GMACM Home Equity Loan Trust, Series 2004-HE5 | 11/30/2004 | 361856DZ7 | Residual |
| GMACM Home Equity Loan Trust, Series 2005-HE1 | 3/29/2005 | G05H1CERT | Residual |
| GMACM Home Loan Trust 2006-HLTV1 | 3/30/2006 | G0AH1CERT | Residual |
| GMACM Home Loan Trust, Series 2004-HLTV1 | 9/29/2004 | GMLT04H1R | Residual |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | R05HS1SBI | Residual |
| Home Equity Loan Trust 2005-HS1 | 9/23/2005 | R05HS1SBI | Residual |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | R05HS2SBI | Residual |
| Home Equity Loan Trust 2005-HS2 | 11/29/2005 | R05HS2SBI | Residual |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | R05HA1SBI | Residual |
| Home Equity Loan Trust 2005-HSA1 | 12/29/2005 | R05HA1SBI | Residual |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | R06HA2SBI | Residual |
| Home Equity Loan Trust 2006-HSA2 | 2/24/2006 | R06HA2SBI | Residual |
| Home Loan Trust 2006-HI2 | 5/25/2006 | RFCUDA530 | Residual |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| Home Loan Trust 2006-HI3 | 7/21/2006 | RFCVVG991 | Residual |
| Home Loan Trust 2006-HI4 | 9/28/2006 | RFC2T8F40 | Residual |
| Home Loan Trust 2006-HI5 | 12/28/2006 | RFC8M1DI0 | Residual |
| Home Loan Trust 2007-HI1 | 3/30/2007 | RFCICRWA0 | Residual |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 7609857L9 | Residual |
| RAMP Series 2004-RS7 Trust | 7/29/2004 | 7609857L9 | Residual |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 7609854W8 | Residual |
| RAMP Series 2004-RZ2 Trust | 6/29/2004 | 7609854W8 | Residual |
| RAMP Series 2005-EFC7 Trust | 12/28/2005 | 76112BR93 | Residual |
| RAMP Series 2005-NC1 Trust | 12/28/2005 | 76112BT67 | Residual |
| RAMP Series 2005-RS9 Trust | 11/29/2005 | 76112BM23 | Residual |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 76110WLE4 | Residual |
| RASC Series 2001-KS1 Trust | 3/29/2001 | 76110WLE4 | Residual |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 76110WB62 | Residual |
| RASC Series 2004-KS7 Trust | 7/29/2004 | 76110WB62 | Residual |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 76110WF43 | Residual |
| RASC Series 2004-KS9 Trust | 9/29/2004 | 76110WF43 | Residual |
| RASC Series 2005-EMX5 Trust | 12/16/2005 | 76110W7S9 | Residual |
| RASC Series 2007-EMX1 Trust | 3/12/2007 | 74924XAF2 | Residual |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | R03HS1SBI | Residual |
| Residential Funding Corporation, Series 2003-HS1 | 3/27/2003 | R03HS1SBI | Residual |
| Residential Funding Mortgage Securities II Home Loan Trust 2005-HI1 | 1/27/2005 | RFC05HI1C | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 76110VKT4 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2002-HS3 | 9/27/2002 | 76110VKT4 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2003-HS2 | 6/26/2003 | 76110VMN5 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI2 | 6/29/2004 | R4HI2CERT | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HI3 | 9/29/2004 | RFC4HI3RV | Residual |

| Trust Designation | Issue Date | Tranche Cusip | Tranche Type |
|---|---|---|---|
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 76110VQD3 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS1 | 3/29/2004 | 76110VQD3 | Residual |
| Residential Funding Mortgage Securities II, Inc, Series 2004-HS3 | 9/29/2004 | RFC4HS3RV | Residual |
| RFMSII Series 2006-HSA1 Trust | 1/27/2006 | 76110VTH1 | Residual |
| Total | | | 59 |