**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— )
                                                              )
In re:                                                     )    Case No. 12-12020 (MG)
                                                              )
RESIDENTIAL CAPITAL, LLC, et al.,    )    Chapter 11
                                                              )
                                        Debtors.       )    Jointly Administered
                                                              )
———————————————————————— )

**ORDER GRANTING DEBTORS' AMENDED MOTION FOR ENTRY OF AN ORDER
UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO SATISFY
CERTAIN SECURED CLAIMS**

Upon the *Debtors' Amended Motion for Entry of an Order Under 11 U.S.C. §§ 105 and
363 Authorizing the Debtors to Satisfy Certain Secured Claims*, dated June 3, 2013 (the
"Motion")[1] seeking entry of an order authorizing the Debtors to (i) fully satisfy the outstanding
claims under the AFI LOC in the amount of $380,000,000, plus accrued and unpaid interest (the
"AFI LOC Claim"), (ii) fully satisfy the outstanding claims under the AFI Senior Secured Credit
Facility in the amount of $747,127,553.39, plus accrued and unpaid interest (the "AFI Revolver
Claim," and together with the AFI LOC Claim, the "AFI Claims"), and (iii) partially satisfy the
outstanding secured claims (the "JSN Secured Claims") of the holders (the "Junior Secured
Noteholders") of the 9.625% Junior Secured Guaranteed Notes due 2015, issued by Debtor
Residential Capital LLC (the "Junior Secured Notes") in the amount of $800 million; and the
Court having jurisdiction to consider the Motion and grant the requested relief in accordance
with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding
pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.
§§ 1408 and 1409; and the Court having reviewed the Motion and the Declaration of Marc D.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

Puntus, Partner and co-head of the Restructuring Group at Centerview Partners LLC, financial advisor to Debtors, in support of the Motion, as well as each of the responses and replies thereto; and the Court having held an evidentiary hearing on the Motion on June 12, 2013 (the "Hearing"); and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and the legal and factual bases set forth in the Motion and at the Hearing establish just and sufficient cause to grant the requested relief herein; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

1.    For the reasons set forth on the record at the Hearing, the Motion is GRANTED as set forth herein.

2.    Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors are hereby authorized but not directed to (i) remit to Ally Financial, Inc. ("AFI") the amount of $747,127,553.39, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI Revolver Claim, (ii) remit to AFI the amount of $380,000,000, plus accrued and unpaid interest in cash in full and complete satisfaction of the AFI LOC Claim, and (iii) provided that the AFI Revolver Claim is first paid in cash in full and complete satisfaction of such claim, remit to UMB Bank, in its capacity as Trustee under the JSN Indenture (the "*JSN Trustee*"), or any Paying Agent (as defined in the JSN Indenture) as set forth in paragraph 11 hereof, not earlier than one (1) business day following the entry of this Order (the "JSN Paydown Date"), the amount of $800 million in full and complete satisfaction of a portion of the principal amount and accrued prepetition interest of the JSN Secured Claims (the "JSN Partial Paydown Amount" and collectively, the "Payments").

2

3.    Notwithstanding anything herein to the contrary, the JSN Partial Paydown Amount shall not in any way prejudice the claim and lien challenges and adversary proceedings commenced by the Debtors and the Committee against the JSN Trustee, Wells Fargo Bank, N.A., and the Ad Hoc Group of Junior Secured Noteholders; *provided* that in no event shall disgorgement or any similar remedy be available to any party with respect to the JSN Partial Paydown Amount.

4.    In the event the Plan, as defined in the PSA, does not become effective, the Payments to AFI shall have no impact on, and be without prejudice to (i) the rights of any party to seek to recharacterize or equitably subordinate the AFI Claims as if such Payments had not been made, and for the Court to fashion any remedy in connection therewith, and (ii) if any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI's rights to assert liens and security interests in the property securing the AFI Revolver Claim and the AFI LOC Claim as if the Payments to AFI had not been made.

5.    If any party seeks to recharacterize or equitably subordinate the AFI Claims, AFI reserves the right to argue that such secured claims continue to accrue post-petition interest through entry of an order of the Bankruptcy Court adjudicating that request on a final basis, and all parties reserve the right to object to any such assertion by AFI.  Further, all reasonable, documented fees and expenses incurred or accrued by AFI as lender under the AFI LOC and AFI Senior Secured Credit Facility, including all reasonable fees and expenses of counsel, shall continue to accrue during the Debtors' Chapter 11 cases.  In the event that the Plan, as defined in the PSA, is not confirmed, then the Debtors shall pay in full in cash to AFI all such fees and expenses, subject to any rights and defenses, if any, that may exist with respect to such fees and expenses under the Original Cash Collateral Order.  For the avoidance of doubt,

3

nothing in this Order supersedes the terms of the Original Cash Collateral Order; *provided* that, as applicable, for consistency with this Order, in the Original Cash Collateral Order, the term "Plan" shall be as defined in the PSA and the term "Ally Settlement Agreement" shall mean the PSA.

6.    Notwithstanding anything herein to the contrary, the Court has not determined the appropriate allocation of the Payments among the Debtors.  Payment of all or a portion of the Payments by any particular Debtor shall be without prejudice to any inter-Debtor rights of, inter alia, allocation, subrogation, reimbursement, or contribution that may arise as a result of such payment or any subsequent substantive consolidation of the Debtors' estates.

7.    Nothing herein shall limit or restrict the ability of the JSN Trustee or Junior Secured Noteholders from seeking allowance and payment on the remaining JSN Secured Claims, or of the Debtors and the Committee to contest or object to such claims.  For the avoidance of doubt, nothing in this Order shall constitute a determination or other ruling or decision with regard to the right of the Junior Secured Noteholders to obtain postpetition interest on account of the JSN Secured Claims, and all parties expressly reserve the right to seek payment of, or to object to payment of, the remaining JSN Secured Claims or any portion thereof; *provided* that under no circumstances shall post-petition interest accrue on the JSN Partial Paydown Amount following payment on the JSN Paydown Date by the Debtors in accordance with this Order.

8.    The liens and security interests securing the Junior Secured Notes (including but not limited to any Adequate Protection Liens, if any, in accordance with that certain Final Cash Collateral Order, Docket No. 491, as amended) shall continue to the same extent as they existed prior to the payment of the JSN Partial Paydown Amount; *provided* that

4

such liens shall remain subject to the rights and obligations, if any, of the parties under the Intercreditor Agreement.

9.    Nothing herein shall limit or impair (i) the right, if any, of AFI, the JSN Trustee or any of the Junior Secured Noteholders to seek additional rights or remedies which any of AFI, the JSN Trustee or any of the Junior Secured Noteholders may have as the holder of a secured claim under the Bankruptcy Code, the JSN Indenture, the Junior Secured Notes, the Security Documents (as defined in the JSN Indenture) or applicable non-bankruptcy law, (ii) the JSN Trustee's lien or other priority in payment to which it is entitled, pursuant to the JSN Indenture or otherwise, against distributions to be made to the Junior Secured Noteholders for payment of the JSN Trustee's fees and expenses in accordance with Section 7.07 of the JSN Indenture, or (iii) rights of any party to object to any relief sought as set forth in this paragraph; provided that such rights, if any, shall be subject to the terms of the PSA (should this Court approve the Debtors' entry into such agreement) with respect to any party that is a party to the PSA.

10.    Except with respect to the JSN Partial Paydown Amount, nothing contained herein shall affect the enforceability of the Intercreditor Agreement in accordance with, and subject to, the terms thereof and any applicable law, and all rights and obligations, if any, of the parties to the Intercreditor Agreement thereunder, or in connection therewith, are preserved.

11.    The Debtors are authorized to pay the JSN Partial Paydown Amount to the Paying Agent or, if no such Paying Agent has been appointed, to the JSN Trustee, acting as Paying Agent on the JSN Paydown Date.  Upon receiving the JSN Partial Paydown Amount, the JSN Trustee shall distribute the JSN Partial Paydown Amount to the holders of the Junior

ny-1089225

Secured Notes in accordance with the JSN Indenture and this Order; *provided*, *however*, that no payments shall be made at this time on account of post-petition interest.  The record date for the payment of the JSN Partial Paydown Amount shall be June 12, 2013.  The Debtors shall provide to the JSN Trustee such information as reasonably requested to enable the JSN Trustee to prepare and comply with the notice requirements set forth in Section 6.10 of the JSN Indenture.

12.    Nothing herein shall be deemed to modify or impact the terms of the PSA (should this Court approve the Debtors' entry into such agreement) or any order of this Court staying litigation against AFI and its affiliates.

13.    Nothing in this Order shall prejudice the rights of the Debtors or any other party in interest to seek authority from this Court by separate motion to pay down additional amounts under the JSN Indenture, nor shall anything in this Order limit or impair the right of any party to object to any such request to pay down additional amounts under the JSN Indenture.

14.    The Debtors are hereby authorized to execute and deliver all instruments and documents, and take all other actions, as may be necessary or appropriate to implement and effectuate the relief granted in this Order.

15.    This Order is hereby deemed effective immediately pursuant to Federal Rule of Bankruptcy Procedure § 6004(h).

16.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: June 13, 2013
         New York, New York

                                    ___/s/Martin Glenn_____
                                         MARTIN GLENN
                                    United States Bankruptcy Judge

6