| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------x<br>                                                                    :<br>In re                                                        :<br>                                                                  :<br>RESIDENTIAL CAPITAL, LLC, et. al.,    :<br>                                                                  :<br>                                   Debtors.       :<br>                                                                  :<br>-------------------------------------------------x | | **Hearing Date and Time:**<br>**June 26, 2012 at 10:00 a.m.**<br><br>Chapter 11<br><br>Case No. 12-12020 (MG)<br><br>(Jointly Administered) |

**RESPONSE OF THE UNITED STATES TRUSTEE
IN LIMITED SUPPORT OF THE MOTION OF
BERKSHIRE HATHAWAY, INC. TO
<u>UNSEAL THE EXAMINER'S REPORT</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................................. ii

I.      INTRODUCTION ..................................................................................................................... 1

II.     BACKGROUND ....................................................................................................................... 2

III.    LIMITED RESPONSE ............................................................................................................. 2
        A.    The Bankruptcy Code Presumes a Public Right of Access to
              All Documents Filed ..................................................................................................... 4
        B.    The Party Seeking to Seal a Filed Document Bears the Burden to Prove
              That the Information to Be Sealed Is a Trade Secret, Other Protected
              Confidential Information, or Is of a Scandalous or Defamatory Nature ................. 6
        C.    Parties Cannot Simply Seal Documents by Agreement But Must, Instead,
              Follow the Law and Procedure Required to Seal ...................................................... 8
        D.    The General Authority of Section 105 Cannot Circumvent the Specific
              Requirements for Sealing Under Section 107 ............................................................ 9
        E.    Examiner Reports Are Presumptively Public and May Be Sealed Only
              If the Specific Standards of Section 107 Have Been Satisfied ................................ 10

IV.     CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Protective Comm. for 10 ½ Debenture Holders v. Itel Corp. (In re Itel Corp.)*,
    17 B.R. 942 (B.A.P. 9th Cir. 1982)..................................................................................6, 7
*Geltzer v. Andersen Worldwide, S.C.*, No. 05-Civ. 3339 (GEL),
    2007 WL 273526 (S.D.N.Y. 2007)........................................................................................9
*Gitto v. Worcester Tel. & Gazette Corp. (In re Gitto Global Corp.)*,
    422 F.3d 1 (1st Cir. 2005)................................................................................................5, 10
*In re Alterra Healthcare Corp.*, 353 B.R. 66 (Bankr. D. Del. 2006)................................................6
*In re Anthracite Capital, Inc.*, No. 10-11319,
    2013 WL 1909026 (Bankr. S.D.N.Y. May 9, 2013)......................................................5, 8, 9
*In re Borders Group, Inc.*, 462 B.R. 42 (Bankr. S.D.N.Y. 2011)....................................................5
*In re Crawford*, 194 F.3d 954 (9th Cir. 1999) ................................................................................5
*In re Food Mgmt. Group*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007) ..............................................6, 7
*In re Found. for New Era Philanthropy*, No. 95-13729F, 1995 WL 478841
    (Bankr. E.D. Pa. May 18, 1995) ............................................................................................7
*In re FiberMark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005)........................................................7, 10
*In re Global Crossing Ltd.*, 295 B.R. 720 (Bankr. S.D.N.Y. 2003) ...............................................6
*In re Neal*, 461 F.3d 1048 (8th Cir. 2006) .....................................................................................5
*In re North Bay General Hosp., Inc.*, 404 B.R. 429 (S.D. Tex. 2009) ...........................................8
*In re PRS Insurance Group, Inc.*, 274 B.R. 381 (Bankr. D. Del. 2001) .........................................8
*In re Tornheim*, 181 B.R. 161 (Bankr. S.D.N.Y. 1995)..................................................................6
*Joy v. North*, 692 F.2d 880 (2d Cir. 1982) .....................................................................................7
*Miller v. Indiana Hosp.*, 16 F.3d 549 (3d Cir. 1994) .................................................................6, 7
*Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589 (1978).................................................................5
*Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059 (3d Cir. 1984).......................................................7
*RadLAX Gateway Hotel, LLC v. Amalagamated Bank*, 132 S. Ct. 2065 (2012)............................9
*Stamicarbon, N.V. v. Am. Cyanamid Co.*, 506 F.2d 532 (2d Cir.1974)...........................................7
*Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*,
    21 F.3d 24 (2d Cir. 1994)..............................................................................................5, 6, 7

**Statutes**

11 U.S.C. § 105............................................................................................................... *passim*
11 U.S.C. § 107............................................................................................................... *passim*
11 U.S.C. § 1106......................................................................................................................10

**Other Authorities**

2 COLLIER ON BANKRUPTCY ¶ 105.01[2], at 105–07 (16th ed.)........................................................9
Bankruptcy Rule 9019 ................................................................................................. *passim*

TO: THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through her counsel, respectfully submits this response (the "Response") in limited support of the motion ("Unsealing Motion") of Berkshire Hathaway, Inc. ("Berkshire") seeking an order unsealing the report of the examiner ("Examiner's Report") pursuant to Section 107(a) of title 11, United States Code (the "Bankruptcy Code"). ECF No. 3812. In support of the Response, the United States Trustee respectfully states as follows:

## I. INTRODUCTION

The United States Trustee recognizes that the Court will unseal the Examiner's Report once the Court determines whether to approve the Plan Support Agreement (defined below) and also recognizes that examiner's reports are on occasion appropriately filed under temporary seal with a contemporaneous motion or established procedure to unseal. Nevertheless, the strong presumption of public access to bankruptcy records should be abridged only in accordance with the specific standards of Section 107 of the Bankruptcy Code. Here, the Examiner's Report was temporarily sealed based on the Debtors' oral application under Section 105 of the Bankruptcy Code. Courts may balance competing statutory interests of public access and confidentiality in Section 107 when temporarily sealing documents pending an opportunity for a full hearing. The general equitable authority of the Court found in Section 105 should not be substituted, however, for a statutory provision that specifically deals with the sealing of documents.

Section 107 of the Bankruptcy Code provides both a presumptive right of public access – and an absolute right of United States Trustee access – to documents filed in bankruptcy courts. At the request of a party in interest, a bankruptcy court may seal a document where the party is able to demonstrate that it has met the specific requirements of Section 107(b). To date, the

1

Debtors have not demonstrated that they have met these requirements and similarly, because relief under Section 107 has not been sought, it is unclear whether any of the parties to the Plan Support Agreement can satisfy the specific requirements of Section 107. The Debtors should be required to satisfy those standards and not be permitted to circumvent Section 107 by relying instead on the Court's general equitable powers under Section 105 – even if the sealing is of limited duration.

## II. BACKGROUND

1. On May 14, 2012, Residential Capital, LLC ("ResCap") and certain of its direct and indirect subsidiaries (collectively, the "Debtors") each filed petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases. ECF Doc. No. 102. The Debtors currently are operating their businesses and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. The Court granted Berkshire's motion for an order directing the appointment of an examiner in a Memorandum Decision dated June 20, 2012 ("Examiner Decision"). ECF Doc No. 454. In that decision, the Court stated, *inter alia*, that:

> Until an independent evaluation has been completed of any potential claims that would be released under a proposed plan, the Court will be unable to conclude whether the Debtors will be permitted to solicit votes in support of such a plan.

*Id.* at 16.

2

4.      On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner ("Examiner") in these cases.  ECF Doc. No. 674.

5.      By order entered on December 26, 2012, the Court appointed the Honorable James M. Peck as a mediator (the "Mediator") to mediate issues related to the formulation of a plan of reorganization in the cases.[1]   ECF Doc No. 2519.

6.      On May 8, 2013, the Examiner filed a notice of intent to file the Examiner's Report on May 10, 2013.  ECF Doc No. 3654.

7.      On May 10, 2013, the Examiner filed a notice indicating his consent to the postponement of the filing of the Examiner's Report until May 13, 2013 which was predicated upon a statement by the Mediator recounted by the Examiner that "progress is being made in the mediation and it is hoped that additional time will result in a consensual resolution of the ResCap bankruptcy cases.  Further, the Mediator and the parties to the mediation believe that a short postponement in the filing of the report would assist the mediation process."  ECF Doc No. 3677.

8.      Upon the oral application of the Debtors, on May 13, 2013, the Court entered an order temporarily sealing the Examiner's Report (the "Temporary Sealing Order") under 11 U.S.C. §105(a).  ECF Doc No. 3697.

9       The Examiner filed the Examiner's Report under the Temporary Sealing Order on May 13, 2013.  ECF Doc No. 3697.

10.     The Temporary Sealing Order sealed the Examiner's Report until May 14, 2013, provided, however:

---

[1] By orders entered on March 5, 2013 and June 5, 2013, the Court extended the Mediator's term up to and including May 31, 2013 and October 31, 2013 respectively.  ECF Doc Nos. 3101 and 3877.

3

>   that if counsel to the Debtors advises the Court before 11:00 a.m. on May 14, 2013 that the Debtors have entered into an agreement signed by their major stakeholders regarding the terms of a global settlement and plan of reorganization, the Examiner Report shall be further sealed through and including: (a) May 21, 2013 at 9:00 a.m. if the Debtors have not by that time filed a motion seeking approval of a plan support agreement, or (b) if the Debtors have by that time filed a motion seeking approval of a plan support agreement, the earlier of (x) July 3, 2013 or (y) such date as the Court determines the motion.

*Id.* at ¶ 2.

11. Upon the Debtors' representation to the Court that they had entered into an agreement signed by their major stakeholders regarding the terms of a global settlement and plan of reorganization, the Court entered a supplemental order on May 15, 2013 (the "Supplemental Sealing Order" and collectively with the Temporary Sealing Order, the "Sealing Order"), which provided for the sealing of the Examiner's Report through May 23, 2013:

>   if the Debtors have not by that time filed a motion seeking approval of a plan support agreement, or (b) if the Debtors have by that time filed a motion seeking approval of a plan support agreement, the earlier of (x) July 3, 2013 or (y) such date as the Court determines the motion.

ECF No. 3739, ¶ 2.

12. On May 22, 2013, Berkshire filed the Unsealing Motion. ECF Doc No. 3812.

13. On May 23, 2013, the Debtors filed a Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement ("PSA") with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants (the "PSA Motion"). ECF Doc. No. 3814.

14. According to the PSA Motion, the PSA terminates if "[t]he Examiner's Report is disclosed to any party prior to the Court's entry of an order authorizing the Debtors' entry into and performance under the Plan Support Agreement." *Id.* at 17.

4

### III.  LIMITED RESPONSE

A.  **The Bankruptcy Code Presumes a Public Right of Access to All Documents Filed**

There is a longstanding presumption and strong public policy favoring public access to court records.  *See, e.g.*, *Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597–98 (1978); *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).

Section 107 of the Bankruptcy Code codifies this presumption of public access to all documents filed in a bankruptcy case or with a bankruptcy court.  Any paper filed in a case under title 11 is presumed to be "open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107.  Section 107 applies to any document filed in any bankruptcy case.  *Gitto v. Worcester Tel. & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 7 (1st Cir. 2005).

The presumption of transparency in bankruptcy proceedings that is articulated in Section 107 of the Bankruptcy Code reflects the critical need for public confidence and government accountability.  Public access to judicial records "is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system." *Id*. at 7 (citing *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)).  "A court's ability to limit the public's right to access remains an extraordinary measure that is warranted only under rare circumstances as 'public monitoring is an essential feature of democratic control.' " *In re Anthracite Capital, Inc.*, No. 10-11319, 2013 WL 1909026, at *3 (Bankr. S.D.N.Y. May 9, 2013) (quotation omitted).

Sealing documents in bankruptcy is a "highly unusual and extraordinary remedy." *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994).  Accordingly, the party seeking to seal documents must show a "compelling

5

need" for protection and "extraordinary circumstances." *Id.* at 27; *see also Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (deciding under the common law, not Section 107); *In re Food Mgmt. Group*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007). Section 107 reflects the congressional policy choice that bankruptcy proceedings should presumptively be open and transparent to the public. The United States Trustee serves as a "watchdog" of the bankruptcy system, and "ensures the integrity of the bankruptcy process . . . ." *In re Tornheim*, 181 B.R. 161, 165–66 (Bankr. S.D.N.Y. 1995). Because the transparency required by Section 107 is significant to the integrity of the bankruptcy process, enforcement of this statutory provision is consistent with the mission of the United States Trustee.

**B.    The Party Seeking to Seal a Filed Document Bears the Burden to Prove That the Information to Be Sealed Is a Trade Secret, Other Protected Confidential Information, or Is of a Scandalous or Defamatory Nature**

Although the presumption of public access is not absolute, Section 107(b) only restricts access to two narrow categories of information: (1) trade secrets and other confidential research, development, or commercial information; and (2) scandalous or defamatory matters.[2] 11 U.S.C. § 107(b). A motion under Bankruptcy Rule 9018 is the procedural mechanism for a party seeking protections of trade secrets, scandalous, defamatory or confidential matters. *See In re Global Crossing Ltd.*, 295 B.R. 720, 723–24 (Bankr. S.D.N.Y. 2003).

"Confidential . . . commercial information" is information that would cause "an unfair advantage to *competitors* by providing them information as to the commercial operations of the debtor." *Orion Pictures,* 21 F.3d at 27 (emphasis added) (quoting *Ad Hoc Protective Comm. for 10 ½ Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)). The information must be "reasonably expected to cause the entity commercial injury,"

---

[2] Certain personally identifying information of individuals that may lead to identify theft may also be protected under Section 107(c)(1).

which means that "competitors will gain an unfair advantage." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75–76 (Bankr. D. Del. 2006) (citations omitted). The unfair advantage must be in favor of a market *competitor*, not simply a creditor or claimant. *Id.* at 76. Merely embarrassing information is likewise insufficient to prove entitlement to sealing. *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ("disclosure of poor management . . . is hardly a trade secret.").

The party advocating the request to seal under Section 107 has the burden of proof. *Food Mgmt. Group*, 359 B.R. at 561 (citing cases) (denying motion to seal adversary complaint based on alleged tarnish to the firm's reputation); *see Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984) (applying the common law and First Amendment, not Section 107). Convincing a court to seal documents is a heavy burden. *Orion Pictures*, 21 F.3d at 27; *In re Found. for New Era Philanthropy*, No. 95-13729F, 1995 WL 478841, at *2 (Bankr. E.D. Pa. May 18, 1995).

Broad allegations of harm, without specific examples or articulated reasoning, are insufficient. *Miller v. Indiana Hosp.,* 16 F.3d at 551 (citation omitted). "That information might 'conceivably' or 'possibly' fall within a protected category is not sufficient to seal documents." *In re FiberMark, Inc.*, 330 B.R. 480, 506 (Bankr. D. Vt. 2005). Rather, the movant must show "sufficient threat of irreparable harm" before information will be sealed, and specificity is essential. *Publicker,* 733 F.2d at 1071 (citing *Stamicarbon, N.V. v. Am. Cyanamid Co.*, 506 F.2d 532, 539–42 (2d Cir.1974)). Harm that is only speculative cannot support a sealing order. *Itel Corp.*, 17 B.R. at 944.

### C.     Parties Cannot Simply Seal Documents by Agreement But Must, Instead, Follow the Law and Procedure Required to Seal

No party here filed a motion under Bankruptcy Rule 9018 to seal the Examiner's Report, nor formally moved the Court for relief under Section 107. Rather, the Debtors made an oral

7

application under Section 105(a), predicated upon an ongoing mediation and settlement discussion, without the evidentiary showing ordinarily required to satisfy Section 107.[3] While possibly prudent as a short-term expediency to avoid disturbing the mediation and concomitant delicate settlement negotiations in an effort to reach an amicable resolution and plan support agreement,[4] that goal – no matter how admirable and desirable it may be – does not and cannot supplant the law.[5] Settlement agreements or other documents cannot be sealed simply by agreement or stipulation of the parties.[6]

The goal of achieving consensual resolution among the economic stakeholders or parties in interest is an important one in the Chapter 11 process, but that goal does not and cannot supplant the law. Settlement agreements or other documents cannot be sealed simply by agreement or stipulation of the parties. As the court in *Anthracite* recently stated, sealing by agreement without satisfying Section 107 directly conflicts with the law:

> The Movants argument that the "no seal, no deal" condition is reason enough for sealing a document under § 107 is not only wrong under the law, it is also illogical. If that were the standard for sealing, every settlement in a bankruptcy case would be sealed whenever a party insisted that a document be sealed. Such a test would remove the need for analysis under § 107 and would directly conflict with the statute, the common law, and the legislative history of § 107.

---

[3] Moreover, not every word of the Examiner's Report could reasonably be expected to contain the type of information that may properly be sealed. Certainly there was no particularized showing of what portions of the Examiner's Report could be sealed in accordance with Section 107.

[4] For example, in *In re Lehman Brothers Holding, Inc.*, Case No. 08-13655 (Bankr. S.D.N.Y.), the Examiner filed a motion to temporarily seal his report, under the authority of Bankruptcy Rule 9018 and Section 107. ECF No. 7022. At the same time, the *Lehman* Examiner filed the Motion to Establish Procedures to Unseal. ECF No. 7026.

[5] Notably, the oral request for the Examiner's Report to be shielded from public access in order that a settlement can be approved, undisturbed by the report's findings, appears to be unique particularly because "[t]he Bankruptcy Code is designed to bring the Debtor's affairs to light, not to hide them." *In re PRS Insurance Group, Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001) (denying debtor's motion to seal).

[6] In *In re North Bay General Hosp., Inc*., 404 B.R. 429, 439 (S.D. Tex. 2009), the Court noted that motions to unseal are governed by Section 107 if court records are sealed by agreement of the parties.

*Anthracite*, 2013 WL 1909026, at *4. "It is clear that without meeting one of the explicit exceptions under § 107(b), the existence of a settlement is not a proper reason to seal the documents." *Id*. at *6. Similarly, "negotiating leverage" is a "wan excuse for impinging on the public's right of access to judicial documents." *Geltzer v. Andersen Worldwide, S.C.*, No. 05-Civ. 3339 (GEL), 2007 WL 273526, at *4 (S.D.N.Y. 2007). Therefore, although many of the parties with an economic interest may have agreed—or at least did not object—to the sealing of the Examiner's Report, that agreement is insufficient to warrant sealing under the Bankruptcy Code.

### D.    The General Authority of Section 105 Cannot Circumvent the Specific Requirements for Sealing Under Section 107

The Debtors relied on the Court's equitable authority granted by 11 U.S.C. § 105(a) in seeking the Sealing Order. But the equitable powers granted by Section 105(a) may not be used inconsistently with other express provisions of the Bankruptcy Code. 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], at 105–07 (16th ed.).

In *RadLAX Gateway Hotel, LLC v. Amalagamated Bank*, 132 S. Ct. 2065, 2071 (2012), the Supreme Court held that "general language of a [Bankruptcy Code] statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." *Id.* (internal quotation, citation, and modification omitted). The Court further explained that this rule "is particularly true where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (internal quotation and citation omitted). Thus, parties in bankruptcy courts may not ignore the specific limits on sealing presumptively public records under Section 107(b) by obtaining the prohibited result under the more broadly worded provision of Section 105(a).

9

E.  **Examiner Reports Are Presumptively Public and May Be Sealed Only If the Specific Standards of Section 107 Have Been Satisfied**

Section 1106(b), by incorporating Section 1106(a)(4), requires that an examiner's report be filed with the court "as soon as practicable." 11 U.S.C. § 1106(b). Thus, Section 107's presumption of public access to filed documents applies to an examiner's report. *FiberMark,* 330 B.R. at 505–06; *Gitto,* 422 F.3d at 8, 16 (finding an examiner's report on management's pre-petition conduct should not be sealed). A report, however, can be redacted to protect privileged information or attorney work product not otherwise within the ambit of Section 107. *FiberMark*, 330 B.R. at 500, 503.

As a precautionary measure, examiner reports are on occasion filed under "temporary" seal to afford the interested parties an opportunity to litigate whether the seal should be lifted or maintained to protect confidential information. For example, although the court initially sealed the examiner's report in *FiberMark*, following a contested hearing regarding whether the report should be maintained under seal consistent with Section 107, the seal was lifted with the exception of privileged or work product information. *FiberMark,* 330 B.R. at 496 (court "*sua sponte*, temporarily, and prophylactically sealed the Report"). Similarly, the examiner's report in *Lehman* was initially filed under seal by the examiner with the expectation that a subsequent hearing would be held on whether the parties with interests in confidential and privileged information would file motions under Bankruptcy Rule 9018 and Section 107. The report was thereafter unsealed. *See Lehman*, Examiner's Motion to Establish Procedures to Unseal the Examiner's report, February 8, 2010, ECF No. 7026. That process properly strikes the necessary balance between a procedure to ensure no party's confidentiality rights are compromised while the public's right of open access is protected and adjudicated under the statutory standard of Section 107 consistent with Bankruptcy Rule 9018.

10

Contrary to the manner in which the examiner reports were temporarily sealed in both *FiberMark* and *Lehman*, the Debtors here merely orally requested that a seal be imposed under the Court's equitable powers, pursuant to Section 105. Although the counsel to the United States Trustee orally objected to that process, those objections were overruled and the Examiner's Report was sealed by the Court albeit on a temporary basis. Although some would claim, "no harm, no foul" as a result of the temporal limitation, nonetheless, the public's presumptive right to review documents filed in a bankruptcy court is effectively eviscerated when a filed document is sealed even for a short period of time without full compliance with Section 107 and Bankruptcy Rule 9018. Accordingly, the United States Trustee respectfully requests that the Court adjudicate the sealing of the Examiner's Report under Section 107 of the Bankruptcy Code and require the Debtors to satisfy their statutory burden for sealing.

## IV.  CONCLUSION

For these reasons, the United States Trustee respectfully requests that the Court enter an order (1) requiring any party seeking to maintain the Examiner's Report under seal to comply with the requirements of Bankruptcy Rule 9018 and Section 107; (2) unseal the Examiner's Report on or before June 26, 2013; and (3) provide for all further relief as justified under the law and the facts of the case.

Dated: New York, New York  
      June 13, 2013

Respectfully submitted,

TRACY HOPE DAVIS  
UNITED STATES TRUSTEE

By:  */s/ Eric J. Small*  
Eric J. Small  
Trial Attorney  
33 Whitehall Street, 21st Floor  
New York, New York 10004  
Tel. No. (212) 510-0500

11