# **EXHIBIT 2**

## **Kruger Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| Debtors. | ) | Jointly Administered |

**DECLARATION OF LEWIS KRUGER IN SUPPORT OF**
**DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY**
**CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE**
**DEBTORS TO ADVANCE THE NJ CARPENTERS**
**NOTICE COSTS AND TRANSFER THOSE FUNDS INTO ESCROW**

I, Lewis Kruger, being duly sworn, state the following under penalty of perjury:

1. I am the Chief Restructuring Officer ("CRO") of the above-captioned debtors and debtors and debtors in possession (collectively, the "Debtors"). I submit this declaration (the "Declaration") in support of the *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Advance the NJ Carpenters Notice Costs and Transfer Those Funds Into Escrow* (the "Motion").[1] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## BACKGROUND

2. On February 11, 2013, I was appointed by the Debtors to serve as CRO of the Debtors and spearhead the plan process. On the same day, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

ny-1095441

2887].[2]  On March 5, 2013, the Court entered an order approving my appointment.  [Docket No. 3103].

      3.      Prior to my role as CRO, I was a partner and Co-Chair of the Financial Restructuring Group at Stroock & Stroock & Lavan LLP, a law firm that has extensive experience in all aspects of restructuring and insolvency matters.  I have over fifty years of restructuring experience.  I have played a role in many significant reorganization proceedings in the United States, representing debtors, official and ad hoc creditors' committees, financial institutions and acquirers of assets.

      4.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my discussions and correspondence with the Debtors' employees and professionals and my review of the Plan Support Agreement and NJ Carpenters Settlement.

## PLAN PROCESS

      5.      Since my appointment as CRO, the Debtors have made strides towards a consensual reorganization plan.  Along with the Debtors' advisors, one of my primary focuses since appointment as CRO has been to achieve consensus on the terms of a Chapter 11 plan that has broad creditor support and paves the way for the Debtors' exit from bankruptcy protection, while at the same time maximizing recoveries to creditors.  On May 23, 2013, the Debtors filed the PSA Approval Motion.   The Plan Support Agreement contemplates a near-global resolution of substantial litigation and a resolution of complex disputed matters in these Chapter 11 cases to be implemented through a plan structure that will yield substantial value for creditors and

---

[2]  The scope of the CRO's authority was modified pursuant to Amendment 1 to the Engagement Letter.  A copy of Amendment 1 to the Engagement Letter as Exhibit 1 was filed with the Court on March 1, 2013 [Docket No. 3074].

facilitate the Debtors' exit from bankruptcy. An important aspect of that structure is the settlement (the "<u>NJ Carpenters Settlement</u>") of the NJ Carpenters Action.

6. I believe that settlement of the NJ Carpenters Claims is important to the near-global resolution of important plan issues contemplated by the Plan Support Agreement. It is my understanding that because of the nature of the underlying action, the members of the class are not known at this time. Additionally, determining who the members of the class are and providing the class with the requisite notice of the proposed NJ Carpenters Settlement is expected to be an extensive process. The parties have contemplated a thorough process by which the class members will be identified and notified of the proposed NJ Carpenters Settlement – as will be necessary to obtain final approval of the NJ Carpenters Settlement by the District Court. I believe that it is imperative that the process for approval of the NJ Carpenters Settlement in the District Court be commenced immediately following preliminary approval of the NJ Carpenters Settlement by the District Court. I believe that it is in the best interests of these estates to advance the Notice Amount to facilitate the approval process.

7. I, in consultation with the Debtors' advisors, have considered the risk that the Settlement Agreement may be terminated and that the NJ Carpenters Settlement may ultimately not be approved by the Court. Because, the Notice Amount will be transferred into escrow and will be used to pay for costs as they accrue, even if the Settlement Agreement is terminated, any unused funds will be returned to the Debtors. I believe that the benefits to be received if the NJ Carpenters Settlement is approved outweigh the risk that the NJ Carpenters Settlement will be terminated and the Notice Amount will not be returned to the Debtors.

8. I believe that advancing the Notice Amount to pay for the costs of notifying the potential class members of the proposed NJ Carpenters Settlement is in the best interests of these estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: June 19, 2013                /s/ Lewis Kruger
       New York, New York                Lewis Kruger

4

ny-1095441