Susan N.K. Gummow (IL 6258070)
*Petition for Admission Pro Hac Vice Pending*
John Eggum (IL 6296314)
*Petition for Admission Pro Hac Vice Pending*
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5099
Email: sgummow@fgppr.com
jeggum@fgppr.com

Matthew Fernandez Konigsberg (MK8011)
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
120 Broadway, 11th Fl.
New York, NY 10271
Telephone: (212) 257-7114
Facsimile: (212) 257-7199
Email: mkonigsberg@fgppr.com

*Counsel for Certain Insurers Under General Motors*
*Combined Specialty Insurance Program 12/15/00 - 12/15/03*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Residential Capital, LLC, et al., | : | Case No. 12-12020 (MG) |
| Debtors. | : | Jointly Administered |

**RESPONSE AND RESERVATION OF RIGHTS OF CERTAIN INSURERS UNDER GENERAL MOTORS COMBINED SPECIALTY INSURANCE PROGRAM 12/15/00 - 12/15/03 TO THE DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Those Certain Underwriting Members at Lloyd's, London and Those Companies Whose Names are Severally Subscribed to Policy No. FD0001142 and Those Certain Underwriting Members at Lloyd's, London and Those Companies Whose Names are Severally Subscribed to Policy No. FD0001144, Twin City Fire Insurance Company, Continental Casualty Company, Clarendon National Insurance Company, Swiss Re International S.E. (formerly known as [f/k/a] SR International Business Insurance Company Ltd.), St. Paul Mercury Insurance Company, and Axcelera Specialty Risk as managing general agent of North American Specialty Insurance Company (collectively, the "**Certain Insurers Under General Motors Combined Specialty Insurance Program 12/15/00 - 12/15/03**" or the "**Certain GM Insurers**"), by and through their undersigned counsel, respectfully submit this Response and Reservation of Rights to the *Debtors' Motion For An Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "**Motion to Approve the PSA**").[1] In support thereof, the Certain GM Insurers state as follows.

## BACKGROUND

1. On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Bankruptcy Code.

2. On March 23, 2013, the Debtors filed the Motion to Approve the PSA, which gave notice of a Plan Support Agreement ("**PSA**") among the Debtors, the Creditors' Committee, Ally Financial Inc., and numerous creditors referred to as the "Consenting

[1] All chapter, section and rule references, unless otherwise noted, are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

Claimants."

3. As explained by the Debtors in the Motion to Approve the PSA, "[a]fter months of intensive negotiations following completion of the Debtors' major asset sales in November 2012, a series of all-day mediation sessions led by the Plan Mediator and attended by the Debtors, their major claimant constituencies, and their professionals, and after several more weeks of nearly round-the-clock negotiations, the Debtors have reached consensus on the terms of a plan that has the support of Ally and is endorsed by a substantial majority of the Debtors' largest claimant constituencies."[2]

4. The PSA is accompanied by a plan term sheet (Exhibit A to the PSA), and a supplemental term sheet (Exhibit B to the PSA) (the "**Supplemental Term Sheet**").

5. As further set forth in the Supplemental Term Sheet, the Plan Proponents contemplate that the Plan will establish a trust to deal with "Borrower Claims"[3] (the "**Borrower Claims Trust**").

---

[2] The Certain GM Insurers were not made aware of these negotiations by the Debtors and therefore were not afforded an opportunity to participate in discussions regarding how insurance policies issued by the Certain GM Insurers would be treated under the Plan of Reorganization that is contemplated by the PSA.

[3] The PSA's Supplemental Term Sheet provides, at footnote 12:

> "Borrower Claims" shall be limited to (i) claims of an individual whose current or former mortgage loan was originated, serviced, or owned by any of the Debtors (or any predecessor) (each a "Borrower") arising from or relating to any alleged act or omission or any other basis of liability of any Debtor (or any predecessor) in connection with the origination, sale, or servicing of a mortgage loan originated, sold, consolidated, purchased, or serviced by any Debtor, (ii) claims filed for or on behalf of a Borrower by such individual's attorney or agent, including as part of a proof of claim filed on behalf of a class of Borrowers that is either certified under Bankruptcy Rule 7023 or by a final order for settlement or purposes of allowance, and (iii) claims that have become allowed as a result of settlement of Borrower litigation commenced against both Ally and the Debtors. For the avoidance of doubt, Borrower Claims shall include claims held by the Kessler Class Claimants (to the extent that the Kessler Class is certified for settlement or allowance purposes), and shall not include the: (a) Senior Unsecured Notes Claims; (b) JSN Claims; (c) RMBS Trust Claims; (d) Monoline Claims; (e) Private Securities Claims; or (f) Intercompany Claims. In addition, nothing set forth herein shall limit the right of the Debtors or the Borrower

6. The Certain GM Insurers issued insurance policies to General Motors Corporation for the policy period commencing December 15, 2000 and ending December 15, 2003 (the "**Certain GM Policies**" or the "**Policies**"), under which certain of the Debtors have asserted rights as Assureds as a result of being subsidiaries of General Motors Corporation at the time that the Policies were issued. The Policies are among the insurance policies referenced in the Supplemental Term Sheet as the "General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03." See Motion to Approve the PSA (Docket No. 3814, PDF p. 124).

7. The PSA contemplates that the Debtors' rights[4] under the Policies will be assigned to the Borrower Claims Trust. The Certain GM insurers do not agree that such an assignment is proper under the Policies and reserve the right to contest that issue along with the other matters set forth herein.

8. The Supplemental Term Sheet provides that: "The sole source of recovery for Borrower Claims shall be from the Borrower Claim Trust Assets and insurance proceeds (but only to the extent such proceeds become available) with respect to those claims that are covered by insurance, as described in paragraph 5 [of the Supplemental Term Sheet] (if any)."

9. Paragraph 5 of the Supplement Term Sheet provides:

> The rights and obligations of the Borrower Claims Trust, including the rights in General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03 . . . and the processes by which any recovery under the Policies is pursued, paid for, assigned or

---

> Claims Trustee to object to any claim asserted which purports to be a Borrower Claim, including claims filed on behalf of purported Borrowers, either as a putative class or otherwise.

Motion to Approve the PSA (Docket No. 3814, PDF p. 123).

[4] The Debtors correctly recognize that they may only administer their rights under the Policies in connection with these proceedings. The Policies themselves are not assets of the Debtors' bankruptcy estates, as they were issued to General Motors Corporation. The Policies were administered in connection with the bankruptcy of General Motors Corporation, Case Number 09-50026 (Bankr. S.D.N.Y.).

> allocated, will be set forth in a supplement to the Plan, which supplement must be satisfactory to Kessler Counsel, the Debtors and the Creditors' Committee.

Motion to Approve the PSA (Docket No. 3814, PDF p. 124). Hereafter, we refer to the above-referenced supplement to the Plan as the "**Plan Insurance Supplement**."

10. The Supplemental Term Sheet also provides: "The Debtors, the Creditors' Committee and counsel for the Kessler Class Claimants . . . will confer in good faith regarding allocation of recoveries under the Policies . . . relating to the Mitchell class action." (hereafter, the "**Mitchell Litigation**").

## DISCUSSION

11. Approval of the Plan Support Agreement must satisfy either the entire fairness standard or the business judgment rule. In re Innkeepers USA Trust, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010). In either case, approval of the PSA should be denied if the PSA contemplates a Plan of Reorganization that is unconfirmable as a matter of law. See id.; see also 11 U.S.C. § 1129 ("The court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title[;] (2) The proponent of the plan complies with the applicable provisions of this title[; and] (3) The plan has been proposed in good faith and not by any means forbidden by law.").

12. It is well-settled that a Plan is not confirmable if it is not "insurance neutral." In re Thorpe Insulation Co., 677 F.3d 869, 885 (9th Cir. 2012); In re Pittsburgh Corning Corp., 453 B.R. 570, 584 (Bankr. W.D. Penn. 2011). Courts vary in their explanations of what constitutes "insurance neutrality." As described by one Court of Appeals, "[a] plan is not insurance neutral when it may have a substantial economic impact on insurers." In re Thorpe Insulation Co., 677 F.3d at 885. Other courts remarking on insurance neutrality have stated that a Plan is only considered to be insurance neutral if "it neither increases an insurer's pre-petition obligations nor

impairs its pre-petition contractual rights under the subject insurance policies." In re Pittsburgh Corning Corp., 453 B.R. at 584.

13. The insurance neutrality requirement is a corollary to the well-established rule that the Bankruptcy Code does not permit a debtor to modify, alter, or amend its pre-petition contracts. In re Stewart Foods, Inc., 64 F.3d 141, 145 (4th Cir. 1995); Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1153 (3d Cir. 1989) (collecting cases enforcing the contractual obligation to arbitrate notwithstanding the filing of bankruptcy).

14. Not only does the Motion to Approve the PSA fail to provide any indication that the assignment of the Debtors' interests in the Policies to the Borrower Claims Trust will be insurance neutral, it expressly provides for a Plan Insurance Supplement that will purport to govern "the processes by which any [alleged] recovery under the Policies is pursued, paid for, assigned or allocated." This language could be interpreted as an impermissible attempt to modify the Policies. Similarly, the provisions in the Supplemental Term Sheet relating to the Mitchell Litigation and "allocation of [alleged] recoveries under the Policies" could also be interpreted as an impermissible attempt to modify the Policies. The Debtors cannot use the Plan or any aspect of the bankruptcy process to alter or amend the rights and obligations arising under (or alleged to arise under) the Policies. See In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir. 1997) ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy") (citing Butner v. United States, 440 U.S. 48, 55 (1979)); Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. . . . Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case'" (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., reprinted in

1978 U.S. CODE CONG. & AD. NEWS 5787)). The Court should not approve the PSA unless the Debtors confirm that the Plan and any Plan Insurance Supplement will be insurance neutral.

15. Additionally, under the contemplated Plan, a trustee (the "**Trustee**") will be appointed to administer the Borrower Claims Trust. It is apparent from the Motion to Approve the PSA that the parties contemplate that this Trustee will be the holder of any and all rights that the Debtors have (or allege they have) as "Assureds" under the Policies. Correspondingly, the Trustee will also have the duties of Assureds under the Policies. Insurance neutral language will clarify that whomever steps into the shoes of the Debtors will not only have the rights of the Assured under the Policies, but also must comply with the obligations of the Assured under the Policies.

16. Ultimately, with regard to the insurance policies, the status quo existing prior to bankruptcy should not be altered or amended by the Plan or any other aspect of the bankruptcy process. Here, neither the Motion to Approve the PSA nor the PSA itself explicitly provides for insurance neutrality. Unless and until the parties to the PSA confirm that the treatment of the Debtors' rights under the Certain GM Policies will be insurance neutral, approval of the PSA should be denied.

17. To remedy these defects, the Certain GM Insurers propose the Debtors agree to include the following language in the Plan:

> Nothing contained in this Plan, in the Disclosure Statement, or in the Borrower Claims Trust Agreement or Borrower Claims Trust Distribution Procedures (including addendums, schedules, or supplements to the Plan, Disclosure Statement, Borrower Claims Trust Agreement, or Borrower Claims Trust Distribution Procedures, and including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying: (A) the rights of any of the Debtors' insurers, including but not limited to those insurers

> issuing policies referred to as by the Debtors as the "General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03," and which insurers are elsewhere identified as the Certain GM Insurers (the "Certain GM Insurers" and together with all other entities that are providing or have provided insurance to the Debtors or any affiliate or predecessor of the Debtors, the "Insurers"); or (B) any rights or obligations of the Debtors arising out of and/or under any insurance policy issued to the Debtors or under which the Debtors have or may seek coverage (the "Policies"). For all issues of insurance coverage or otherwise, the provisions, terms, conditions, and limitations of the Policies shall control.

18. The agreement to include the foregoing insurance neutral provision in the Plan, and the assurance of the Plan Proponents that no provision of the Plan (or Plan Insurance Supplement) will increase the Insurers' pre-petition obligations or impair their pre-petition contractual rights under the Policies, will resolve the Certain GM Insurers' objection to the approval of the PSA.

**RESERVATION OF RIGHTS**

19. The Certain GM Insurers expressly reserve all of their rights under their Policies and under applicable law and at equity, including without limitation the right to deny coverage for any claim, the right to arbitrate in accordance with the terms of their Policies, and the right to assert any and all defenses, limitations and/or exclusions applicable with respect to any claim which is alleged to implicate their Policies. The Certain GM Insurers further reserve the right to object to any disclosure statement and any plan of reorganization filed in these jointly-administered cases, for the reasons set forth herein or for any other reason.

20. The Certain GM Insurers further reserve all of their rights to object to any claim for coverage under the Policies and/or any claim for payment under any settlement, and to compel arbitration or seek declaratory and/or injunctive relief to enforce their rights under the Policies or applicable law or at equity.

21. Nothing in this Response shall be construed as an acknowledgment that any of the Policies covers or otherwise applies to any claims, losses or damages on account of any claim which is alleged to implicate the Policies. For all issues of coverage or otherwise, the terms, conditions, and limitations of the Policies control. The Certain GM Insurers further reserve the right to have any non-core matter adjudicated by the United States District Court or in any other agreeable non-bankruptcy forum, and do not consent to entry of any final order by the bankruptcy court for any matter for which their consent is required.

## CONCLUSION

The Motion to Approve the PSA should only be granted if the Plan of Reorganization contemplated by the PSA is insurance neutral, meaning that it does not impair, supplement, change, expand, decrease, or modify any of the terms, provisions, conditions, limitations, rights, or obligations arising under or in connection with any of the Certain GM Policies. Unless and until the parties to the PSA confirm that the treatment of the Debtors' rights under the Certain GM Policies will be insurance neutral, approval of the PSA should be denied.

------------- The remainder of this page left intentionally blank -------------

Respectfully Submitted,

Dated: June 19, 2013
New York, New York

By: _/s/ _Susan N.K. Gummow_____________

Susan N.K. Gummow (IL 6258070)
*Petition for Admission Pro Hac Vice Pending*
John Eggum (IL 6296314)
*Petition for Admission Pro Hac Vice Pending*
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
Telephone: (312) 863-5000
Facsimile: (312) 863-5099
Email: sgummow@fgppr.com
jeggum@fgppr.com

Matthew Fernandez Konigsberg (MK8011)
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
120 Broadway, 11th Fl.
New York, NY 10271
Telephone: (212) 257-7114
Facsimile: (212) 257-7199
Email: mkonigsberg@fgppr.com

*Counsel for Certain Insurers Under General Motors Combined Specialty Insurance Program 12/15/00 - 12/15/03*

**CERTIFICATE OF SERVICE**

On June 19, 2013, the undersigned certifies that on this date, she caused a copy of the appended document to be served upon all parties identified on the Monthly Service List (as defined in the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered by this Court on May 23, 2012 [Docket No. 141]), in accordance with the terms of the Order docketed as Docket No. 141.

By: */s/ Susan N.K. Gummow*______________________

Susan N.K. Gummow
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC