MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Anthony Princi
Lorenzo Marinuzzi
Daniel J. Harris

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION TO MOTION OF BERKSHIRE HATHAWAY INC. TO
UNSEAL THE EXAMINER'S REPORT PURSUANT TO 11 U.S.C. § 107(a)**

ny-1092136

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ............................................................................................................................4

    A.    General Background ..............................................................................................4

    B.    Filing of the Examiner's Report and Sealing Orders ...........................................5

    C.    Filing of the Plan Support Agreement and PSA Approval Motion .....................6

RESPONSE ....................................................................................................................................8

    A.    All Parties Will Have an Opportunity to Review the Disclosure Statement and Plan of Reorganization Side-by-Side with the Examiner's Report .................................................................8

    B.    The Temporary Sealing of the Examiner's Report Is Appropriate Under the Court's Equitable Powers ........................................................................9

    C.    The Debtors Have Overcome the Presumption of Public Access .....................12

    D.    "Public Policy" is Evidenced by the Strong Creditor Support for Temporary Sealing of the Examiner's Report ........................................................................13

    E.    If the Court Grants the Motion, the Court Should Refrain From Entering an Order Until Such Time as the Court Enters an Order With Respect to the PSA Approval Motion .....14

CONCLUSION .............................................................................................................................14

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aczel v. Labonia*,
   584 F.3d 52 (2d Cir. 2009) ...................................................................................................... 8

*Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*,
   765 F.2d 343 (2d Cir. 1985) .................................................................................................. 10

*In re Borders Grp., Inc.*,
   462 B.R. 42 (Bankr. S.D.N.Y. 2011) ..................................................................................... 11

*In re Global Crossing Ltd.*,
   295 B.R. 720 (Bankr. S.D.N.Y. 2003) ................................................................................... 11

*In re Hemple*,
   295 B.R. 200 (Bankr. D. Vt. 2003) ........................................................................................ 11

*In re Lomas Fin. Corp.*,
   No. 90-CV-7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991) ............................................... 11

*In re Patriot Coal Corp.*,
   482 B.R. 718 (Bankr. S.D.N.Y. 2012) ................................................................................... 13

*La. Pub. Serv. Comm'n v. Mabey (In re Cajun Elec. Power Co-op.)*,
   185 F.3d 446 (5th Cir. 1999) ................................................................................................. 10

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994) .................................................................................................... 9

*Neuman v. Leffler (In re Neuman)*,
   71 B.R. 567 (S.D.N.Y. 1987) ................................................................................................ 10

*Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002) ....................................................................................... 9

*Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.)*,
   No. 10-11319, 2013 WL 1909026 (Bankr. S.D.N.Y. May 9, 2013) ...................................... 11

*United States v. Int'l Bhd. of Teamsters*,
   247 F.3d 370 (2d Cir. 2001) .................................................................................................... 8

*Unsecured Claims Estate Representative of Teligent, Inc. v. CIGNA Healthcare, Inc. (In re Teligent, Inc.)*,
   326 B.R. 219 (S.D.N.Y. 2005) ................................................................................................ 8

ny-1092136

**STATUTES**

11 U.S.C. § 105(a) ...................................................................................................................... 10

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9024 ................................................................................................................... 8

Fed. R. Civ. P. 60(b) ...................................................................................................................... 8

Transcript of Hearing, *In re Residential Capital, LLC*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 7, 2013) ....................................................... 2

Transcript of Hearing, *In re Residential Capital, LLC*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. June 12, 2013) .................................................... 9

Transcript of Hearing, *In re Residential Capital, LLC*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. May 14, 2013) .................................................... 6

Transcript of Hearing, *In re Residential Capital, LLC*,
    Case No. 12-12020 (MG) (Bankr. S.D.N.Y. May 29, 2013) .................................................... 1

Residential Capital, LLC, and its affiliated debtors in the above captioned case (the "<u>Debtors</u>"), submit this objection (the "<u>Objection</u>") to the *Motion of Berkshire Hathaway, Inc. to Unseal the Examiner's Report Pursuant to 11 U.S.C. § 107(a)* [Docket No. 3812] (the "<u>Motion</u>")[1] seeking entry of an order unsealing the report issued by the Court-appointed examiner (the "<u>Examiner's Report</u>").[2] In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[3]

1. Berkshire Hathaway Inc.'s ("<u>Berkshire</u>") decision to continue to press this Motion, particularly in light of: (a) the Court's decision to schedule it for hearing on the same date as the PSA Approval Motion (June 26, 2013), and (b) the Court's comments on the record at the status conference on May 29, 2013, is perplexing. *See Transcript of Hearing* at 44:21-24, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. May 29, 2013) (the "<u>May 29 Status Conference</u>") ("[I]f the PSA is not approved it gets unsealed. If the PSA is approved, it gets unsealed. It was always going to be unsealed. This is going to be a public document."). Nevertheless, the Debtors are compelled to respond to the assertions Berkshire makes in the Motion, as well as correct the record with respect to the basis for the Sealing Orders and the plan process the Debtors will seek to undertake going forward.

---

[1] The Office of the United States Trustee filed a *Response of the United States Trustee in Limited Support of the Motion of Berkshire Hathaway, Inc. to Unseal the Examiner's Report* [Docket No. 3976] (the "<u>UST Response</u>") arguing, among other things, that the Bankruptcy Code presumes a public right of access and examiner reports may only be sealed if the specific standards of section 107 of the Bankruptcy Code have been satisfied. This Objection also addresses the arguments made by the U.S. Trustee.

[2] Wendy Alison Nora filed a joinder to the Motion that makes the same arguments as those made by Berkshire. [Docket No. 3813]. However, Ms. Nora fails to recognize that, absent the temporary sealing of the Examiner's Report, holders of borrower claims would receive little to nothing under a hypothetical plan. Moreover, the Creditors' Committee, which includes a borrower as one of its members, represents borrowers' interests and supports the temporary sealing of the Examiner's Report pending approval of the Plan Support Agreement.

[3] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to such terms elsewhere in this Objection.

1

ny-1092136

2. As the Court will recall, the temporary sealing of the Examiner's Report was a condition to the global accord embodied in the Plan Support Agreement. Moreover, consistent with the Court's comments at prior hearings, the impending publication of the Examiner's Report proved to be one of the drivers of consensus. *See Transcript of Hearing* at 14:18-21, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. Feb. 7, 2013) ("... the completion of the examiner report is very important to progress in this case with respect to development of a plan, negotiating a consensual plan, hopefully."). Now, with the Plan Support Agreement in hand, the Debtors are hopeful that they are on a path to confirmation and an exit from bankruptcy. The Debtors primary focus should be on obtaining confirmation of the plan, yet they are faced with a Motion that is tone-deaf to the posture of these Chapter 11 cases.

3. The Court should view the Motion through the lens of one disgruntled creditor who: (1) sold its entire unsecured exposure right after filing the motion to appoint the Examiner, (2) is getting paid par plus accrued pre-petition interest under the plan on account of its remaining undersecured claims, (3) is now trying to leverage its name and position to get post-petition interest, and (4) refused all invitations to participate in a successful mediation. It still remains disappointing that this one party has advocated an approach that will create chaos in these Chapter 11 cases and unwind the hard work that the Mediator and nearly all of the other parties in interest have achieved over the past several months. The majority of the Debtors' key creditors agreed that sealing of the Examiner's Report was critical to the consensual resolution of these Chapter 11 cases. Berkshire now seeks to upset this balance.

4. First, the Motion should be denied because it fails to acknowledge that Berkshire will have a full and fair opportunity to evaluate the global settlement, which will be

2

ny-1092136

reflected in the disclosure statement and plan of reorganization. The Examiner's Report will be unsealed sometime between June 27, 2013 and July 4, 2013. Once unsealed, all parties in interest, including Berkshire, will have several months to review the proposed plan side-by-side with the Examiner's Report and determine whether the plan reflects a fair and equitable resolution to these Chapter 11 cases. Berkshire's rights with respect to plan confirmation are not impacted in any way by a temporary sealing of the Examiner's Report.

5. Second, the relief sought in the Motion misinterprets the relief granted in the Sealing Orders. The Court validly and appropriately entered the Sealing Orders pursuant to section 105(a) to maintain the status quo and assist the parties in their efforts to achieve a consensual resolution to these Chapter 11 cases. The decision to use section 105(a) as a basis for temporarily sealing the Examiner's Report was correct at the time the Sealing Orders were entered and remains correct now. Furthermore, the act of sealing the Examiner's Report under section 105(a) is consistent with the common practice in bankruptcy of sealing documents from public view under section 107 of the Bankruptcy Code.

6. Third, the argument that "public policy," "transparency," and the "integrity" of the bankruptcy process weigh in favor of granting access to the Examiner's Report is misplaced. The "integrity" of the bankruptcy process was fulfilled by *sealing* the Examiner's Report for a short period of time because shielding the Examiner's Report from public scrutiny permitted the Debtors and the other parties to the Plan Support Agreement to reach a near-global settlement which is at the heart of the Chapter 11 process.

7. In sum, the Debtors view the Motion as a not-so-subtle attempt to harass, delay, and inject uncertainty into these Chapter 11 cases. The sealing of the Examiner's Report allowed for a near-global consensus that the Debtors hope will result in distribution of available

3

ny-1092136

proceeds to *all* creditors. Accordingly, the Debtors request that the Court deny the Motion and preserve the status quo until such time as the Court decides the PSA Approval Motion.

## BACKGROUND

**A.    General Background**

8. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).[4]

9. On May 16, 2012, the United States Trustee for the Southern District of New York, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors (the "Creditors' Committee") in these Chapter 11 cases.

10. On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket Nos. 454, 674] (the "Examiner").

11. On December 26, 2012, the Court entered an Order appointing Judge James M. Peck as mediator [Docket No. 2519] (the "Mediator") and subsequently extended his appointment through October 31, 2013, or such earlier date as Judge Peck declares in a written order that the mediation is at an impasse and should be terminated forthwith [Docket No. 3877].

---

[4] Prior to the Petition Date, the Debtors were a leading residential real estate finance company indirectly owned by Ally Financial, Inc. ("AFI"), which is not a Debtor. The Debtors and their non-debtor affiliates operated the fifth largest servicing business and the tenth largest mortgage origination business in the United States. A more detailed description of the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings*, filed on May 14, 2012 [Docket No. 6].

4

**B.      Filing of the Examiner's Report and Sealing Orders**

12.     On May 8, 2013, the Examiner filed a Notice stating his intention to file the Examiner's Report at noon on May 10, 2013 or as soon thereafter as practicable [Docket No. 3654].

13.     The Mediator thereafter informed the Examiner that progress was being made in the mediation and that additional time might result in a consensual resolution of these bankruptcy cases. Accordingly, the Examiner agreed to file the Examiner Report, unless otherwise directed by the Court, on Monday, May 13, 2013 at 3:00 p.m. (prevailing Eastern Time) [Docket No. 3677].

14.     On May 13, 2013, the Court entered the *Order Granting the Debtors' Application Pursuant to Section 105(a) of the Bankruptcy Code Seeking Entry of an Order Temporarily Sealing the Examiner Report* [Docket No. 3697] (the "Initial Sealing Order"), temporarily sealing the Examiner's Report through and including May 14, 2013 at 11:00 a.m., provided, however, that if the Debtors advised the Court before 11:00 a.m. on May 14, 2013 that the Debtors entered into an agreement signed by their major stakeholders regarding the terms of a global settlement and plan of reorganization, the Examiner's Report would be further sealed through and including: (a) May 21, 2013 at 9:00 a.m., if the Debtors have not by that time filed a motion seeking approval of a plan support agreement; or (b) if the Debtors have by that time filed a motion seeking approval of a plan support agreement, the earlier of (x) July 3, 2013 or (y) such date as the Court determines the motion. Entry of the Initial Sealing Order was supported by nearly all of the Debtors' major parties in interest, including the Creditors' Committee and AFI.

15.     Prior to the deadline imposed by the Initial Sealing Order of 11:00 a.m. on May 14, 2013, the Debtors advised the Court that the Debtors had entered into a plan support

5

agreement with its major parties in interest and would be working diligently with the supporting parties to document such agreement. *See Transcript of Hearing* at 29:13-17, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. May 14, 2013) ("Your Honor, I am pleased to report that we have satisfied the first condition in the order that Your Honor entered yesterday relating to the examiner's report which is that the parties have exchanged signatures on the terms sheets that were referred to in that report.").

16. On May 15, 2013, the Court entered the *Supplemental Order Granting the Debtors' Application Pursuant to Section 105(a) of the Bankruptcy Code Seeking Entry of an Order Temporarily Sealing the Examiner Report* [Docket No. 3739] (the "Supplemental Sealing Order" and together with the "Initial Sealing Order," the "Sealing Orders") sealing the Examiner's Report through and including: (a) May 23, 2013 at 9:00 a.m., if the Debtors have not by that time filed a motion seeking approval of a plan support agreement; or (b) if the Debtors have by that time filed a motion seeking approval of a plan support agreement, the earlier of (x) July 3, 2013 or (y) such date as the Court determines the PSA Approval Motion (as defined below).

C.     **Filing of the Plan Support Agreement and PSA Approval Motion**

17. On May 23, 2013, the Debtors filed the *Motion for an Order Under Bankruptcy Code Section 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial, Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "PSA Approval Motion") that, *inter alia*, requests entry of an order permitting the Debtors to enter into and perform under a plan support agreement (including all exhibits attached thereto, the "Plan Support Agreement") that sets the stage for the Debtors to file a plan of reorganization that has the support of AFI, the Creditors'

6

ny-1092136

Committee, and a substantial majority of the Debtors' largest creditor constituencies. The PSA Approval Motion is returnable on June 26, 2013 at 10:00 a.m.

18. Consequently, the Examiner's Report will be unsealed and made available to the public the day after the Court determines the PSA Approval Motion, which could be as early as June 27, 2013. In any event, the Examiner's Report will be unsealed on or before July 4, 2013.

19. The term sheet attached as Exhibit A to the Plan Support Agreement provides various milestones that must be satisfied for the Plan Support Agreement to remain in effect (and not be subject to the termination rights of Ally, the Creditors' Committee, and the Consenting Claimants (each as defined in the Plan Support Agreement)). (*See* Plan Support Agreement, Ex. A, at 4). Relevant milestones include: (i) not later than July 3, 2013, the plan proponents will file the Plan and Disclosure Statement (each as defined in the Plan Support Agreement); (ii) not later than July 3, 2013, the Bankruptcy Court will enter the PSA Order (as defined in the Plan Support Agreement); (iii) not later than August 30, 2013, the Bankruptcy Court will have approved the Disclosure Statement; and (iv) not later than 30 days following entry of the Confirmation Order (as defined in the Plan Support Agreement), but in no event later than December 15, 2013, the Plan will become effective. (*See id.*).

20. Further, the effectiveness of the Plan Support Agreement as to all parties thereto is conditioned upon the sealing of the Examiner's Report through and including the earlier of (i) the date the Bankruptcy Court approves the Plan Support Agreement, and (ii) July 3, 2013. (*See* Plan Support Agreement § 10.1(a)). The disclosure of the Examiner's Report to any party on or prior to entry of an order approving the PSA Approval Motion is a "Termination Event" under the Plan Support Agreement. (*See* Plan Support Agreement § 6.1(g)).

7

# RESPONSE[5]

### A.     All Parties Will Have an Opportunity to Review the Disclosure Statement and Plan of Reorganization Side-by-Side with the Examiner's Report

21.     Fundamentally, Berkshire argues that it must be able to review the Examiner's findings and conclusions in order to assess the fairness of the Plan Support Agreement and any plan of reorganization that is based upon it.  (*See* Motion ¶¶ 4, 18).  Contrary to this assertion, Berkshire and all other parties in interest will have a full and fair opportunity to review the Examiner's Report alongside the disclosure statement and plan that, if the PSA Approval Motion is granted, will reflect the terms and conditions contained in the Plan Support Agreement.[6]

22.     The Debtors and other parties to the Plan Support Agreement have worked diligently to file the appropriate documentation by the deadlines set forth in the Sealing Orders to ensure that the Examiner's Report remains temporarily sealed pending the Court's approval of the Plan Support Agreement.  Now, with the PSA Approval Motion on file and a hearing scheduled for June 26, 2013, the Examiner's Report will be unsealed, and available for public

---

[5] Berkshire and the Trustee have failed to follow the proper procedure for the relief they seek in the Motion and the UST Response.  *See* Fed. R. Bankr. P. 9024 (applying Fed. R. Civ. P. to cases under the Bankruptcy Code); Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for . . . any other reason that justifies relief.").  A motion to vacate an order requires the existence of "extraordinary circumstances" justifying relief.  *See Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (stating that Rule 60(b)(6) "allows courts to vacate judgments whenever necessary to accomplish justice, *although such relief should be granted only in extraordinary circumstances*.") (emphasis added).  Moreover, under Rule 60(b), it is Berkshire's and the Trustee's, not the Debtors', burden to satisfy this standard.  *See United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (stating that on a motion under Rule 60(b)(6) "[t]he burden of proof is on the party seeking relief from judgment. . . ."); *see also Unsecured Claims Estate Representative of Teligent, Inc. v. CIGNA Healthcare, Inc. (In re Teligent, Inc.)*, 326 B.R. 219, 227 (S.D.N.Y. 2005).  Neither Berkshire nor the Trustee can satisfy their burden under Rule 60(b) because no extraordinary circumstances exist here that call for the vacatur of the Sealing Orders.

[6] To be clear, the PSA Approval Motion seeks entry of an order authorizing the Debtors to enter into and perform under the Plan Support Agreement that sets forth the structure and components of a confirmable plan of reorganization.  (PSA Approval Motion ¶ 18).  The PSA Approval Motion *does not* seek approval of the plan structure set forth therein; approval of the allocations of available proceeds to creditors, the releases provisions, and the other components of the Plan Support Agreement will be sought pursuant to a disclosure statement and plan of reorganization.

8

ny-1092136

review, within a matter of days — as early as June 27, 2013, but not later than July 4, 2013 — with the exact timing dependent on whether and when the court enters an order approving the PSA Approval Motion. If the Plan Support Agreement is approved, the Debtors will file a disclosure statement and a plan of reorganization on or prior to July 3, 2013.

23. Once the disclosure statement and plan of reorganization are on file and the Examiner's Report unsealed, all parties in interest, including Berkshire, will have a full and fair opportunity to review the plan and disclosure statement alongside the Examiner's findings and conclusions — which, as an aside, are hearsay and inadmissible[7] — and file an objection on any grounds it sees appropriate. Plainly, the Plan Support Agreement and approval of the PSA Approval Motion have no impact on Berkshire's rights with respect to the global settlement, and Berkshire will be able to object to the fairness of the settlement if it believes it has a valid basis for an objection.

**B.     The Temporary Sealing of the Examiner's Report Is Appropriate Under the Court's Equitable Powers**

24. The initial and continued sealing of the Examiner's Report is appropriate under section 105(a) of the Bankruptcy Code. It is well established that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process. *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994). Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue *any order*, process, or judgment that is necessary or

---

[7] As this Court recognized at the hearing held on June 12, 2013, the Examiner's Report is hearsay and not admissible. *Transcript of Hearing* at 51:9-10, *In re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. June 12, 2013) ("The examiner report is hearsay, no matter what."). Other courts in this district have also determined that an examiner's report is hearsay. *See, e.g.*, *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 87-88 (Bankr. S.D.N.Y. 2002) (concluding that an examiner's report is hearsay, reasoning that "[t]he Examiner conducted an investigation, but he was not charged – nor could he be – with the duty to 'hear and determine' any claims in this case.").

appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). Although the equitable power conferred by section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law . . . ," *La. Pub. Serv. Comm'n v. Mabey (In re Cajun Elec. Power Co-op.)*, 185 F.3d 446, 453, n.9 (5th Cir. 1999) (internal quotation omitted), a bankruptcy court "'may use its equitable powers to assure the orderly conduct of the reorganization proceedings.'" *Neuman v. Leffler (In re Neuman)*, 71 B.R. 567, 571 (S.D.N.Y. 1987) (quoting *Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litig.)*, 765 F.2d 343, 348 (2d Cir. 1985)).

25. As the Court recognized by entering the Sealing Orders before the Examiner's Report became public, sealing the Examiner's Report was in the best interests of the Debtors' estates and in furtherance of the Debtors' goal of reaching a consensual resolution to these Chapter 11 cases. To manage these Chapter 11 cases and avoid a free-for-all, the Court validly and appropriately sealed the Examiner's Report so that the Debtors could seek approval of the Plan Support Agreement and commence the solicitation and confirmation process.

26. The Trustee improperly argues that the Court cannot seal the Examiner's Report under section 105(a) because section 107(b) is the only basis to seal documents under the Bankruptcy Code. (*See* UST Response, at 7-11). As an initial matter, the plain language of section 105(a) permits the Court to issue "*any order* that is necessary or appropriate to carry out the provisions" of title 11. 11 U.S.C. § 105(a) (emphasis added). Further, nothing in section 107(b) restricts the Court's ability to seal documents pursuant to other sections of the Bankruptcy Code, and the Debtors are unaware of any case that holds to the contrary. Section 105(a) and 107(b) are not mutually exclusive and the Trustee's argument that the Examiner's Report could

10

be sealed *only if* the Debtors comply with section 107(b) and Bankruptcy Rule 9018 should be rejected.[8]

27.     Furthermore, the continued sealing of the Examiner's Report is consistent with the policy underlying section 107 of the Bankruptcy Code and Bankruptcy Rule 9018. As Judge Gerber noted in *In re Global Crossing Ltd.,* 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003), "[Bankruptcy] Code section 107(b) and Bankruptcy Rule 9018 *must be viewed from the practical perspective of damage to the estate or its creditors*, and squarely includes information that could prejudice either of them. . . ." (emphasis added); *see also In re Borders Grp., Inc.,* 462 B.R. 42, 47 (Bankr. S.D.N.Y. 2011) (noting that sealing under section 107(b)(1) "includes situations where a bankruptcy court may reasonably determine that allowing such disclosure would have a 'chilling effect on [business] negotiations, ultimately affecting the viability of Debtors.'") (quoting *In re Lomas Fin. Corp.*, No. 90-CV-7827, 1991 WL 21231, at *2 (S.D.N.Y. Feb. 11, 1991)). Temporarily sealing the Examiner's Report is critical to the Debtors' ability to obtain approval of the Plan Support Agreement and to avoid the incalculable damage to the estate that would otherwise result from protracted litigation. As such, maintaining the status quo and sealing the Examiner's Report under section 105(a) furthers the purposes of section 107 of the Bankruptcy Code.[9]

---

[8] This case is unlike Judge Morris' recent case of in *Togut v. Deutsche Bank AG (In re Anthracite Capital, Inc.)*, No. 10-11319, 2013 WL 1909026, at *3 (Bankr. S.D.N.Y. May 9, 2013) where the parties agreed to seal certain settlement agreements among themselves but failed to satisfy the requirements of section 107(b). Here, the Court has entered two separate orders confirming that, under the facts as they exist here, section 105(a) is an appropriate exercise of the Court's ability to manage these Chapter 11 cases.

[9] *See In re Hemple*, 295 B.R. 200, 202 (Bankr. D. Vt. 2003) ("Since the instant request for filing under seal is aimed at protecting a third party rather than the debtor, it appears to raise issues relating to the administration of the case and, hence, to fall within the purview of 11 U.S.C. § 105(a), as well as § 107. The criteria to be considered in determining whether confidentiality provisions in settlements justify keeping the substance of such settlements from public access *must be flexible and vary according to the nature of the settlement and the specific extent and core-ness of the impact of the settlement on the bankruptcy case*.") (emphasis added).

11

ny-1092136

C.      **The Debtors Have Overcome the Presumption of Public Access**

28.     Even if the Court determines that the Debtors must overcome the presumption of public access to documents under section 107(a) of the Bankruptcy Code, the presumption can be overcome because unsealing the Examiner's Report at this stage may irreparably damage the Debtors' ability to reach a consensual resolution to these Chapter 11 cases. The public's interest in public access, while important in bankruptcy cases, is dwarfed by the unique facts of this case and the commitments made by all parties in the Plan Support Agreement to support a consensual plan of reorganization that allocates distributable proceeds to creditors. Simply, there would be no Plan Support Agreement, and, critically, no Ally Contribution (as defined in the Plan Support Agreement), if the Examiner's Report is unsealed.[10]

29.     Without the Plan Support Agreement in place, creditors face delay and uncertainty, and risk losing the recoveries contemplated by the Plan Support Agreement. The certainty that comes with the Plan Support Agreement and the consensual resolution to these complex Chapter 11 cases clearly outweighs the theoretical interest the public would have in having the Examiner's Report published a few weeks earlier.

30.     Finally, Berkshire's suggestion that publishing the Examiner's Report would not thwart a global settlement because the Debtors have already announced that the Plan Support Agreement has been executed is incorrect on its face and should be rejected outright. (*See* Motion ¶ 18.) Though the Debtors filed the PSA Approval Motion seeking approval of the terms of a global settlement, the effectiveness of the Plan Support Agreement, as to the Debtors, is conditioned upon Court approval. (*See* Plan Support Agreement § 10.1(a)). Moreover,

---

[10] The Plan Support Agreement provides that parties may terminate their commitments to the Plan Support Agreement if the Examiner's Report is unsealed. (*See* Plan Support Agreement § 6.1(g)) (providing for a "Termination Event" if "the Examiner's Report is disclosed to any party on or before the Bankruptcy Court enters the [order approving the Plan Support Agreement]").

12

ny-1092136

unsealing the Examiner's Report at this point could be cause for termination of the Plan Support Agreement and would throw these Chapter 11 cases back into conflict that most of the other parties in this case (although not Berkshire) have worked tirelessly to avoid. (Plan Support Agreement § 6.1(g)).

D.     **"Public Policy" is Evidenced by the Strong Creditor Support for Temporary Sealing of the Examiner's Report**

31.     Notwithstanding Berkshire's and the Trustee's contention that "public policy" compels unsealing of the Examiner's Report and that the sealing "undermines the transparency of the bankruptcy process," *see* Motion ¶ 19, the Debtors believe that public policy is furthered by the continued sealing of the Examiner's Report because, if approved, the Plan Support Agreement will be the basis for a confirmable, consensual plan of reorganization. *See In re Patriot Coal Corp.*, 482 B.R. 718, 722 (Bankr. S.D.N.Y. 2012) ("[Chapter 11] is a collective proceeding in which the Bankruptcy Court is charged with applying the Bankruptcy Code and other applicable law to achieve the overarching goal of chapter 11 — to maximize the value of the Debtors' estates for the benefit of all stakeholders. . . .").

32.     Nearly all of the Debtors' major creditor constituencies were supportive of the temporary sealing of the Examiner's Report so that negotiations over a consensual resolution to these Chapter 11 cases could continue unimpeded. The goals of Chapter 11 are furthered by the temporary sealing of the Examiner's Report because the Debtors were able to negotiate and seek approval of the Plan Support Agreement that sets the framework for an expeditious exit from bankruptcy protection. In the face of these undisputed facts, Berkshire's and the Trustee's "public policy" argument rings hollow and should be rejected.

13

ny-1092136

E. **If the Court Grants the Motion, the Court Should Refrain From Entering an Order Until Such Time as the Court Enters an Order With Respect to the PSA Approval Motion**

33. For all the reasons discussed above, the Motion should be denied on the merits. However, if the Court grants the Motion, the Debtors request that the Court refrain from entering an order until such time as the Court decides the PSA Approval Motion. As the Court recognized at the May 29 Status Conference, the Examiner's Report will be a public document. However, unsealing the Examiner's Report prior to the Court's disposition of the PSA Approval Motion has the potential to cause a termination of the Plan Support Agreement. (*See* Plan Support Agreement § 6.1(g)). Accordingly, the Debtors respectfully request that, if the Court grants the Motion, a corresponding order not be entered until after the Court enters an order deciding the PSA Approval Motion.

## CONCLUSION

WHEREFORE, the Debtors request that this Court deny the Motion and grant such other and further relief as the Court may deem just and proper.

Dated:  June 19, 2013
        New York, New York

                                MORRISON & FOERSTER LLP

                                By:      /s/ Gary S. Lee
                                Gary S. Lee
                                Anthony Princi
                                Lorenzo Marinuzzi
                                Daniel J. Harris
                                MORRISON & FOERSTER LLP
                                1290 Avenue of the Americas
                                New York, New York 10104
                                Telephone: (212) 468-8000
                                Facsimile: (212) 468-7900

                                *Counsel to the Debtors and
                                Debtors in Possession*

14

ny-1092136