WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**STATEMENT AND RESERVATION OF RIGHTS OF THE AD HOC GROUP OF JUNIOR SECURED NOTEHOLDERS IN CONNECTION WITH THE DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"),[1] by and

---

[1] The Ad Hoc Group is comprised of certain entities (the "Junior Secured Noteholders") that hold or manage holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008. Following the Debtors' $800 million paydown, the outstanding amount of principal and pre-petition interest on the Junior Secured Noteholders' claim now equals $1.422 billion and the outstanding amount of post-petition interest accrued through June 14, 2013 equals approximately $264

through its undersigned counsel, hereby files this statement and reservation of rights (the "Statement") in connection with the Motion[2] of the debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of an order authorizing the Debtors to enter into and perform under that certain Plan Support Agreement, dated as of May 13, 2013 (the "PSA"), between Ally Financial Inc. ("Ally"), the Creditors' Committee (the "Committee") and certain Consenting Claimants.  As and for its Statement, the Ad Hoc Group respectfully states as follows:

## STATEMENT

1. At the May 29, 2013 status conference in respect of the PSA (the "Status Conference"), the Court asked the Debtors and Committee to clarify prior to the hearing on the Motion whether, if the Court found the Junior Secured Notes ("JSNs") to be oversecured, the Plan contemplated in the PSA could still be confirmed.[3]  The Court further noted that it was unsure whether it would grant the Motion unless the Plan remained confirmable under such a circumstance.[4]  At the preliminary conference on the Debtors' recently commenced adversary proceeding against the Ad Hoc Group and others, the Court reiterated its concerns about conducting an expedited trial with respect to the JSNs' entitlement to postpetition interest only to learn that the Plan was no longer confirmable.  Despite assurances from Committee counsel that

---

    million.  The aggregate amount outstanding continues to increase by virtue of the ongoing accrual of post-petition interest at the rate of approximately $183 million per year.

[2] *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814].  The Debtors attached as an exhibit to the Motion (i) the *Declaration of Lewis Kruger in Support of Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* and (ii) the Plan Support Agreement, Plan Term Sheet and Supplemental Plan Term Sheet.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion and the Plan Support Documents, as applicable.

[3] Transcript of May 29, 2013 Status Conference, at 32, 37.

[4] Id. at 37.

2

it "would not hold the Court hostage,"[5] that is exactly what the Debtors and Committee are doing with the PSA.

2.  On a high level, the Debtors have stated that if "the Court decides that the JSNs are oversecured, the Plan will provide that the JSNs receive payment in full including post-petition interest."[6] But this generalization rings hollow because they have materially qualified this position, stating that "the Plan is premised on the approval of the Global Settlement," and that "[i]f the JSNs are intent on challenging the waiver of intercompany claims (and by extension each of the related pieces of the Global Settlement), they will have an opportunity to do so by objecting to the 9019 settlement embodied in the Plan at the confirmation hearing."[7] In other words, the Global Settlement purports to settle, outside the adversary proceeding, issues that may be dispositive of the question of whether the JSNs are oversecured.[8] Thus, while the Global Settlement is not expressly conditioned upon the Court finding that the JSNs are undersecured, there are provisions embodied in the Global Settlement that will have that direct effect, and, as the Debtors and the Committee well know, will give rise to the possibility that a determination as to oversecurity will result in the failure of a condition in the Plan.

---

[5] Id.

[6] Letter from Morrison & Foerster LLP to the Honorable Martin Glenn, United States Bankruptcy Judge (June 11, 2013), at 3.

[7] Id.

[8] Specifically, the Global Settlement contemplates that the following issues, among others, are allegedly to be "settled" under Bankruptcy Rule 9019: (i) substantive consolidation, which cannot be imposed upon a dissenting class simply for the sake of expedience, see In re Owens Corning, 419 F.3d 195, 216 (3d Cir. 2005) (rejecting substantive consolidation where proponents sought substantive consolidation not as a remedy but as a strategy to strip certain creditors of their bargained-for guarantee rights); (ii) intercompany claims for no consideration (which intercompany claims have been (a) previously disclosed in the Debtors' SEC filings; and (b) characterized in the schedules filed in connection with these cases as *not contingent, liquidated and undisputed*); and (iii) allocation of the Ally settlement contribution in exchange for a release of direct claims held by the JSNs against Ally without providing any consideration to the JSNs. By making each of the foregoing compromises "essential to the deal," the Debtors and the Committee are seeking to foreclose the JSNs' rights to have their entitlements adjudicated on the merits.

3

3. The ever-evolving Global Settlement has now developed into a plan process through which the Debtors and the Committee will ask this Court to sanction a resolution of billions of dollars in claims and disputes over intercompany claims, expense allocation, and substantive consolidation without conducting a proper inquiry into the basic facts of critical issues that, if decided adversely to the Debtors and Committee, would result in the JSNs being oversecured by a wide margin. In fact, the Global Settlement has been engineered to deprive the JSNs of postpetition interest, as well as the legal right to seek payment of that interest in a full and fair proceeding. Notwithstanding a three-fold increase in the amount of settlement consideration as compared to what was offered by Ally at the beginning of these cases, these fiduciaries seek to also "settle" among themselves a host of potentially outcome-determinative issues in a manner that is prejudicial to the JSNs but favorable to unsecured creditors and Ally, thereby making the JSNs a contributor to, and not a beneficiary of, the Global Settlement.

4. In light of the Court's stated hesitation to approve the PSA unless the Plan would be confirmable even in the face of a finding that the JSNs are oversecured, the Ad Hoc Group submits that Debtors and Committee must state clearly and unequivocally their intentions so that the Court fully appreciates what it is being asked to approve on the Motion. Although the Ad Hoc Group believes that the Debtors' and Committee's position is inappropriate, the Ad Hoc Group is prepared to refrain from objecting and reserve its rights at this time.

5. To be clear, however, the Debtors' and the Committee's brinkmanship is both irresponsible and unnecessary. The Debtors and the Committee have taken the unusual position that the settlement consideration to be provided to the Debtors' estates by Ally under the Global Settlement is so valuable that both the Debtors and the Committee should be relieved of a

customary "fiduciary out" with respect to the Ally settlement.[9] This voluntary waiver of fiduciary duties raises the question of why the Debtors and Committee should be otherwise permitted to "blow up" the plan and risk such consideration over the issue of JSN postpetition interest, given that the full interest claim is a relatively small amount as compared to the increased settlement consideration they are otherwise seeking to protect.

6. Committee counsel has represented to the Ad Hoc Group that the waiver of a "fiduciary out" is limited solely to that aspect of the Global Settlement that relates to the settlement of claims against Ally and that both the Debtors and Committee are free to modify the plan in other respects, including over the objection of other settling parties, if the Debtors' and/or Committee's fiduciary duties so require, including paying some or all of the postpetition interest owing to the JSNs. As is typical in other plan support agreement contexts, the consequence of modifying the plan over an objection of a settling party will simply relieve that party's obligations to support the plan as modified. The Ad Hoc Group requests that the Debtors and Committee clarify this point on the record, as well. In absence of such clarification, the Ad Hoc Group objects to the approval of the Motion.[10]

7. In contrast to the Debtors' and the Committee's positions, the Ad Hoc Group has repeatedly offered to de-risk the entire process by supporting the Plan, perhaps even on a fast track, provided the economic and legal rights of the JSNs are preserved for resolution, either through settlement or litigation, in a rational and efficient manner. Such an approach would permit the estates to avoid additional administrative and interest accrual expense that will no

---

[9] See, e.g., In re Innkeepers USA Trust, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) (denying approval of plan support agreement that restricted the debtors' "fiduciary out" and noting that "I am aware of no court-approved plan support agreement which contains [such a restriction in a fiduciary out].").

[10] Whether the Committee, a plan proponent under the Global Settlement, is capable of exercising actual fiduciary duties given that all of the members of the Committee have signed the PSA in their individual capacities, including some members signing at the direction of other stakeholders, is a separate matter with respect to which the Ad Hoc Group reserves all rights.

doubt be in the tens of millions of dollars. Importantly, the Ad Hoc Group has not demanded actual payment of their postpetition interest in exchange for such support. The Ad Hoc Group instead has asked merely that they be given a fair chance to adjudicate entitlements of the JSNs without having a "win" – such as a finding that the intercompany claims are, as scheduled by the Debtors, valid debt claims − constitute a loss of the Global Settlement. Under the current process, the parties are deprived of such an opportunity. The Debtors and the Committee instead have summarily rejected the Ad Hoc Group's offer, choosing to put the Global Settlement at risk in a transparent attempt to gain a tactical advantage over the JSNs in the pending litigation and the Plan approval process. In fact, the Debtors and the Committee, under the guise of the exercise of their fiduciary duties, are willing to risk $2.1 billion of Ally settlement consideration *to the estates* so that members of the Committee may receive *in their individual capacities* specifically negotiated-for distributions that are premised on depriving the JSNs of their rightful claims to postpetition interest (approximately $330 million as of October 31, 2013, which constitutes a small fraction of the total Ally contribution on the table).

8.  As a consequence of the Debtors' and the Committee's insistence on using the Plan process to tilt the playing field in the postpetition interest litigation, the Ad Hoc Group will, among other things, oppose confirmation of the Plan. But to be clear, the fact that there will be a hotly contested and expensive[11] confirmation hearing is the affirmative choice of the estate fiduciaries, not the Ad Hoc Group. To the extent the Plan gets "blown up," it is the Debtors, the Committee and its members that have lit the fuse.

---

[11]  Estimated administrative expenses projected for these cases is over $2 billion, all of which have served to reduce recoveries to all creditors. This is in contrast to the fees and expenses of the JSNs, which through the end of May were less than $6 million.

6

**CONCLUSION**

The Ad Hoc Group has determined not to object to the Motion to the extent that the clarifications requested herein are provided and the Court, the Debtors and the Committee confirm that no objections, rights or remedies of the Ad Hoc Group and of the JSNs relating to the Global Settlement, approval of a plan of reorganization or related disclosure statement, or any other entitlements of the JSNs are waived by not formally objecting to them in connection with the Motion. For the avoidance of doubt, the Ad Hoc Group hereby expressly reserves all of its objections, rights and remedies.

Dated: June 19, 2013
New York, New York

Respectfully submitted,

By: /s/ Gerard Uzzi
    Gerard Uzzi

MILBANK, TWEED, HADLEY & M$^C$CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

- and -

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

*Attorneys for the Ad Hoc Group of Junior Secured Noteholders*