Hearing Date:  June 26, 2013 at 10:00 a.m. (ET)
Objection Deadline:  June 19, 2013 at 4:00 p.m. (ET)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
(212) 474-1000
Richard Levin
Richard W. Clary
Michael T. Reynolds
Lauren A. Moskowitz

*Attorneys for Credit Suisse Securities (USA)*
*LLC f/k/a Credit Suisse First Boston LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>                        Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**OBJECTION OF CREDIT SUISSE TO DEBTORS'
MOTION FOR ORDER AUTHORIZING ENTRY INTO AND
PERFORMANCE OF PLAN SUPPORT AGREEMENT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND ......................................................................................................1

    A.    Plan Support Agreement ..............................................................................2

    B.    Examiner's Appointment and Report ...........................................................4

    C.    Relief Requested by the Motion ...................................................................5

III.  ARGUMENT ............................................................................................................5

    A.    Summary of Argument .................................................................................5

    B.    The Proposed Third-Party Releases of Claims Against
          Nondebtor Ally Are Impermissible ..............................................................6

    C.    Court Authorization Of The Agreement Is Neither Required
          Nor Permitted...............................................................................................12

    D.    Authorization May Not Bind Creditors To The Plan Or
          Releases Before Plan Confirmation.............................................................14

    E.    The Court Should Not Grant the Motion Without
          Disclosure Of The Examiner's Report.......................................................16

IV.   CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).....................................................................18

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) ............................................18

*Comm. of Secured Equity Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d
    1063 (2d Cir. 1983)...................................................................................................18

*Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber
    Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005)...................................................10, 11, 15

*Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of
    Portland in Oregon)*, 661 F.3d 417 (9th Cir. 2011) ....................................................20

*Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422
    F.3d 1 (1st Cir. 2005)................................................................................................19

*In re Bell & Beckwith*, 44 B.R. 661 (Bankr. N.D. Ohio 1984) .........................................19

*In re Blake*, 452 B.R. 1 (Bankr. D. Mass. 2011)...............................................................20

*In re FiberMark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005) ...................................19, 20, 21

*In re Filex, Inc.*, 116 B.R. 37 (Bankr. S.D.N.Y. 1990).......................................................7

*In re Food Mgmt. Group, LLC*, 359 B.R. 543 (Bankr. S.D.N.Y. 2007)...........................20

*In re Gen'l Maritime Corp.*, Case No. 11-15285-MG (Bankr. S.D.N.Y. Apr. 2,
    2012) ECF 421 ..........................................................................................................13

*In re Gitto/Global Corp.*, 321 B.R. 367 (Bankr. D. Mass. 2005) .....................................20

*In re Intergrated Res., Inc.*, 147 B.R. 656 (S.D.N.Y. 1992)..............................................17

*In re Johns-Manville Corp.*, 801 F.2d 60 (2d Cir. 1986)..................................................14

*In re Market Square Inn, Inc.*, 163 B.R. 64 (Bankr. W.D. Pa. 1994) .................................7

*In re Oldco M Corp.*, 466 B.R. 234 (Bankr. S.D.N.Y. 2012)...........................................20

*In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. Oct. 31, 2011) .....................................12

*In re Turner*, 724 F.2d 338 (2d Cir. 1983).........................................................................8

*In re Walt Disney Co. Derivative Litigation*, 906 A. 2d 27 (Del. 2006)...........................17

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008) ("*Manville III*"), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ..................................................8

*Neal v. The Kansas City Star (In re Neal)*, 461 F.3d 1048 (8th Cir. 2006) .................19, 20

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ..........................................19

*Official Comm. of Sub'd Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992) ...................................................17

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984) ...........................................................9

*Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935 (5th Cir. 1983) ..............................................................................16

*Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45 (2d Cir. 2012) .................................................................................................8

The Charles Schwab Corp. v. BNP Paribas Securities Corp., No. CGC-10-501610 (Superior Court of California, San Francisco County) ...................................................2

*Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Capital, Inc.)*, No. 10-11319, 2013 WL 1909026 (Bankr. S.D.N.Y. May 9, 2013) .................20

*Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24 (2d Cir. 1994) ..............................................................................19

**Statutes & Rules**

11 U.S.C. § 105(a) ..............................................................................................................15

11 U.S.C. §107(a) ...............................................................................................................19

11 U.S.C. §107(b) ...............................................................................................................20

11 U.S.C. § 1113(a) .............................................................................................................13

11 U.S.C. § 1113(b) .............................................................................................................13

11 U.S.C. § 1114(e)(1)..........................................................................................................13

11 U.S.C. § 1116 ..................................................................................................................13

11 U.S.C. § 1121(b) .............................................................................................................13

11 U.S.C. § 1121(d) .............................................................................................................13

11 U.S.C. § 1123(b)(1) .....................................................................................................15, 16

11 U.S.C. § 1128(a) ..........................................................................................................16

11 U.S.C. § 1128(b) ..........................................................................................................16

Fed. R. Bankr. Proc. 2002(b)(2) .......................................................................................16

Fed. R. Bankr. Proc. 3020(b)(2) .......................................................................................16

**Other Authorities**

7-1125 COLLIER ON BANKRUPTCY ¶ 1125.03[4] (Alan N. Resnick & Henry J.
    Sommer eds.) 16th ed. 2013 .......................................................................................7

## I.    INTRODUCTION

Residential Capital, LLC, and its affiliates, acting in their capacities as debtors in these Chapter 11 cases (collectively, "**ResCap**"), have moved for an order authorizing them to enter into and perform under a Plan Support Agreement (collectively with the attached Plan Term Sheet and the Supplemental Term Sheet, the "**Agreement**") with its parent corporation Ally Financial Inc. and its subsidiaries and affiliates other than ResCap ("**Ally**"), the Official Committee of Unsecured Creditors and certain "consenting claimants". Mot. at 1. Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston LLC) ("**Credit Suisse**") holds claims against ResCap arising out of residential mortgage-backed securities ("**RMBS**") issued by ResCap that Credit Suisse underwrote either alone or with co-underwriters.  Credit Suisse also holds claims against Ally Securities (f/k/a Residential Funding Securities or GMAC-RFC Securities), an affiliate of Ally Financial Inc., as a co-underwriter on certain of those securitizations. If the plan proposed under the Agreement were confirmed, all of Credit Suisse's claims against Ally would be released, without consideration and without Credit Suisse's consent. Credit Suisse therefore objects to ResCap's motion for approval of the Agreement for the reasons set forth below.

## II.    BACKGROUND

ResCap originated mortgages and securitized them into RMBS. Credit Suisse was an underwriter of numerous ResCap securitizations and was a co-underwriter of many RMBS with Ally Securities. ResCap indemnified its underwriters, including Credit Suisse, for losses they might incur in any litigation relating to the ResCap securitizations, including for costs and attorneys' fees as well as any liability. Many purchasers of interests in the securitizations have brought claims in state and federal courts against the

underwriters in the securitizations, claiming violations of federal and state securities laws and other statutory and common-law causes of action.[1] Credit Suisse has already incurred costs and attorneys' fees, so it has a fixed claim directly against ResCap for losses incurred to date, as well as contingent or unliquidated claims for future costs, attorneys' fees and any liabilities. It has timely filed a proof of claim in this case for these amounts.[2]

Credit Suisse and Ally are co-defendants in some of these actions, including the actions brought by the Federal Housing Finance Agency and John Hancock Life Insurance Company. To the extent that a plaintiff prevails on a theory of joint and several liability, each underwriter has a contribution claim against its co-underwriters for their proportionate shares equal to the portions of the issue that they underwrote. Thus, Credit Suisse[3] has contingent claims against Ally for Ally's proportionate share of any liability that might arise in litigation over securitizations for which Credit Suisse and Ally are co-underwriters.

### A.    Plan Support Agreement

ResCap's motion seeks authorization to enter into the Plan Support Agreement with Ally and various other parties in interest in this case. It would commit ResCap to

---

[1] At the present time, the following lawsuits brought against Credit Suisse relate to ResCap RMBS: *The Charles Schwab Corp. v. BNP Paribas Securities Corp.*, No. CGC-10-501610 (Superior Court of California, San Francisco County); *Deutsche Zentral-Genossenschaftsbank AG, New York Branch v. Credit Suisse Holdings (USA) Inc.*, No. 650967/2013 (Supreme Court of New York, New York County); *Federal Housing Finance Agency v. Ally Financial Inc.*, No. 11-cv-7010-DLC (S.D.N.Y.); *Federal Home Loan Bank of San Francisco v. Credit Suisse Securities (USA) LLC*, No. CGC-10-497840 (Superior Court of California, San Francisco County); *John Hancock Life Insurance Co. (USA) v. Ally Financial Inc.*, No. 12-cv-1841-ADM-TNL (D. Minn.); *National Credit Union Administration Board v. Credit Suisse Securities (USA) LLC*, No. 2:12-cv-2648-JWL-JPO (D. Kan.); *Prudential Insurance Company of America v. Credit Suisse Securities (USA) LLC*, No. 2:33-av-00001 (D.N.J.).

[2] Claim No. 435.

[3] Other banks, including Banc of America Securities, Bear Stearns & Co., Inc., Citigroup, JPMorgan and RBS Greenwich Capital, have similar contribution rights against Ally as co-underwriters on ResCap securitizations.

proposing, and the other parties to support, subject to certain conditions, a Chapter 11

plan that, among other things, provides for specified distributions to various classes of

creditors, a payment by Ally of $2.1 billion to the ResCap estate, and a third-party release

of Ally and others from all claims "arising from or related in any way to the Debtors,

including those in any way related to residential mortgage backed securities issued and/or

sold by the Debtors or their affiliates ". Plan Term Sheet at 8. Thus, it would release

Credit Suisse's contribution claims against Ally arising from any liability in the securities

litigation in which they are co-defendants. Notably, however, the release does not release

any claims that the Federal Housing Finance Agency has against Ally.  *Id.*

Credit Suisse would receive nothing under the proposed plan in exchange for the

nonconsensual release of its claims against Ally, a nondebtor. The proposed third-party

release harms Credit Suisse more than an "ordinary" third-party release. An "ordinary"

third-party release only reduces the releasor's claim, an asset that it might otherwise

have. Here, the release could increase Credit Suisse's liability.  Because the Plan Support

Agreement does not provide an appropriate judgment reduction provision, Credit Suisse

could remain jointly and severally liable for the full amount of any judgment in the

securities actions, if plaintiff were to succeed on a theory of joint and several liability,

without any participation by Ally in the obligation or any contribution right against Ally.

That is, Ally's absence from the securities litigation would not reduce any damages the

plaintiff might be able to prove, which would then be borne by the remaining defendants

such as Credit Suisse.

Not only would Credit Suisse receive nothing under the proposed plan for the

release of its contribution claims against Ally, but Credit Suisse also would receive

essentially nothing under the proposed plan on account of its claims against ResCap. The

Agreement provides that all claims in the class in which Credit Suisse's claim against

ResCap would be placed would receive an aggregate payment of only $19.2 million, less

than 1% of the amount that Ally is paying under the proposed settlement.  Supplemental

Term Sheet, Annex I.  That distribution would be divided among all general unsecured

claims, including the claims of all other underwriters whom ResCap indemnified and

who have been sued in actions similar to those against Credit Suisse. The record does not

fully reflect the amount of claims in that class, because many remain contingent or

unliquidated, awaiting a determination of the entire losses (including attorneys' fees and

expenses) that the underwriters incur in the litigation. Based on the number of actions

that are pending, the number of underwriters and the amounts at stake, one can infer that

indemnified attorneys' fees for those actions collectively will run into the tens or even

hundreds of millions of dollars, not including any other general unsecured claims,

suggesting that recoveries on such general unsecured claims will be paltry at best.

### B.    Examiner's Appointment and Report

This Court ordered the appointment of an Examiner to investigate and report on

numerous issues, including many that should inform the settlement contained in the

Agreement. The Examiner conducted his investigation over nine months at a cost of

approximately $80 million and filed it with this Court under seal on May 13, 2013.  ECF

3698. The parties to the Agreement, however, negotiated without seeing the Examiner's

Report. What's more, the Report was filed under seal, *see* ECF 3697, entered May 13,

2013, and the Agreement is conditioned upon the Report remaining under seal until after

this Court rules on the Motion. Plan Support Agreement § 10.1(a). Thus, none of the

parties in interest in the case have seen the Report or have any information about its contents.

### C.      Relief Requested by the Motion

The Motion asks this Court to issue an Order, in the form attached to the Motion, "approving the Debtors' entry into and performance under [the Plan Support Agreement]". Mot. at 1. The Order would grant the Motion, and, in slightly different language, provide that "[t]he Debtors are hereby authorized to enter into and perform under the Plan Support Agreement". Mot. Ex. 1, ¶ 2. The Order, however, goes further. It would include a finding that "the relief requested in the Motion is in the best interests of the Debtors' estates [and] their creditors", *id.* at 1, and would order and decree that the Agreement itself, "including the transactions contemplated therein, are in the best interests of the Debtors' estates [and] their creditors", *id.* ¶ 3.

## III.    ARGUMENT

### A.      Summary of Argument

There are four principal reasons why this Court should not approve the Agreement or authorize ResCap to enter into and perform under the Agreement. First, the proposed third-party releases of claims against nondebtor Ally are defective on their face and may not be approved when presented as part of the plan that the Agreement contemplates. This Court should not approve the Agreement in its present form and allow the plan process to proceed when it will lead to naught. Second, ResCap, which has the exclusive right to file a plan, does not need court approval to agree to do so. Third, even if ResCap needs, or is entitled to obtain, court approval or authorization, the Order should be limited to authorizing ResCap to take action and should not be binding on the estates, on creditors or on other parties in interest in any way. Fourth, if approval is binding on

the estates, on creditors or on other parties in interest, creditors are entitled to a full

opportunity to be heard after complete access to and examination of the record, which

includes the Examiner's Report. Without that, any Order authorizing ResCap to act may

not affect the estates, creditors or other parties in interest. Even if approval is not binding

on the estates or creditors, ResCap cannot support its exercise of business judgment

without a review of the Examiner's Report.

> **B.      The Proposed Third-Party Releases of Claims Against Nondebtor Ally
> Are Impermissible.**

Ordinarily, consideration of a plan support agreement should not require the court

to hold a "mini-confirmation hearing" to determine whether the plan that the agreement

contemplates meets Chapter 11's plan confirmation requirements. At the plan support

agreement stage, a plan has not been filed, there is no disclosure statement, and the

solicitation and voting process central to the Code's plan confirmation requirements have

not yet taken place. And as discussed below, a plan support agreement cannot be made

binding on creditors without the full protections of the disclosure, solicitation and

confirmation process.

However, where the plan support agreement includes terms that would make the

plan unconfirmable on its face, and where the debtor requests court approval, the Court

should not send the parties on a fruitless expedition of documentation, disclosure,

solicitation and confirmation when the Court can determine, before the waste of time and

estate and creditor resources, that it would lead to a dead end. The Court should not

approve a plan support agreement for a plan that is unconfirmable on its face, just as it

should not approve a disclosure statement for a plan that is unconfirmable on its face. *In

re Filex, Inc.*, 116 B.R. 37, 40-41 (Bankr. S.D.N.Y. 1990) (refusing to approve a

disclosure statement for a "patently unconfirmable" plan); *In re Market Square Inn, Inc.*, 163 B.R. 64, 67-68 (Bankr. W.D. Pa. 1994) ("[w]e conclude that [the creditor] cannot be compelled . . . to involuntarily relinquish his causes of action", and since it is clear that the plan is not capable of confirmation, it is "appropriate to refuse approval of the disclosure statement"); *see* 7-1125 COLLIER ON BANKRUPTCY ¶ 1125.03[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("[M]ost courts will not approve a disclosure statement if the underlying plan is clearly unconfirmable on its face."). Therefore, if the third-party releases proposed under the Agreement, on their face, fail the requirements for such releases, this Court should not approve the Agreement. The third-party releases here do not meet those requirements, at least as to Credit Suisse, because they are beyond this Court's jurisdiction and do not meet the high bar in this Circuit for approval of third-party releases.[4]

> 1.    **This Court Does Not Have Jurisdiction To Issue the Proposed Third-Party Release of Credit Suisse's Claims Against Nondebtor Ally.**

A bankruptcy court may not approve a nonconsensual third-party release where the released claims are beyond its jurisdiction. *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008) ("*Manville III*"), *rev'd on other grounds sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *see Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.)*, 676 F.3d 45, 53 (2d Cir. 2012).[5] Under section 1334(b), a bankruptcy court has jurisdiction "over third-

---

[4] If this Court determines that the proposed third-party release is not defective on its face and chooses to address it instead at the confirmation hearing, Credit Suisse reserves its right to assert any objection to the plan, including to the third-party releases, at that hearing.

[5] Because the Motion does not appear to seek final approval of third-party releases that would be enforceable against nondebtors, Credit Suisse does not raise here whether the bankruptcy court has Article

party nondebtor claims that directly affect the *res* of the bankruptcy estate", *In re Quigley*, 676 F.3d at 53 (quoting *Manville III*, 517 F.3d at 66), or where "the third-party action has 'a significant connection' with the bankruptcy case", *id.* at 53 n.6 (citing *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983)). The "conceivable effect" test is derived from the leading case on "related to" jurisdiction, *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), which involved a potential common-law indemnification claim against the debtor arising out of litigation between two nondebtors. A judgment in that action would not have resulted in a claim against the debtor without an entirely separate action between the nondebtors on the indemnification claim. Thus, the third-party action did not have an effect on the estate and was outside the bankruptcy court's statutory jurisdiction.

The proposed third-party releases of Ally imposed on Credit Suisse under the plan that the Plan Support Agreement contemplates do not meet the statutory standards for jurisdiction. Credit Suisse's claim against Ally is a contribution claim that may arise only after the conclusion of the litigation in which Credit Suisse is sued. Adjudication of the contribution claim will require an entirely separate action. Ally may have contractual indemnification rights against ResCap if it is found liable to Credit Suisse in a later contribution action, but, as in *Pacor*, any such liability would require yet another separate action by Ally against ResCap.

Moreover, even if Ally has a contractual indemnification claim against ResCap for any liability arising out of the underlying litigation, Credit Suisse's contribution claim against Ally would not have any effect on the estate. Credit Suisse and Ally both have contractual indemnification claims against ResCap for any liability they incur in the

---

III jurisdiction to grant such releases upon confirmation of the plan but reserves all rights regarding constitutional jurisdiction. *In re Quigley Co., Inc.*, 676 F.3d at 51-52.

underlying securities litigation. How that liability is divided between Credit Suisse and

Ally will not have an effect on ResCap's estate. The total claims against the estate will be

the same, whether owing to Credit Suisse or to Ally. Therefore, without the Agreement,

any claims covered by the proposed release that Credit Suisse has against Ally could not

have any conceivable effect on the estate, and this Court is without jurisdiction to hear

them or to release them.

> **2.    The Proposed Release of Credit Suisse's Claims Does Not
> Satisfy the *Metromedia* Requirements.**

Even if this Court has jurisdiction to release claims that Credit Suisse has against

Ally, the third-party releases here do not meet the high bar that applies here. As this

Court knows, *Metromedia Fiber Network* governs the permissibility of a third-party

release in this Circuit. *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re

Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005). A nonconsensual third-

party release may be imposed only in "rare", "truly unusual circumstances" "that may be

characterized as unique". *Id*. at 141, 143, 142. In *Metromedia*, the Court of Appeals

recognized four minimum conditions that must be met for a third-party release to be

acceptable:

> "Courts have approved nondebtor releases when the estate
> received substantial consideration, . . . the enjoined claims
> were 'channeled' to a settlement fund rather than
> extinguished, . . . the enjoined claims would indirectly
> impact the debtor's reorganization 'by way of indemnity or
> contribution,' . . . and the plan otherwise provided for the
> full payment of the enjoined claims."

*Id*. at 142 (citations omitted).  While the Court of Appeals accepted the argument that

consideration payable to an enjoined creditor under the plan is not a required condition to

a third-party release of that creditor's claim, it rejected the argument that the creditor's

receipt of consideration by itself satisfies the condition to a third-party release, especially

where the consideration was on account of a claim against the debtor, rather than on

account of a claim against the released third party. *Id*. at 143. As the Court stated:

> "[A] nondebtor release is not adequately supported by
> consideration simply because the nondebtor contributed
> something to the reorganization and the enjoined creditor
> took something out."

*Id*.

On its face, the proposed third-party release of Credit Suisse's claims against Ally

does not meet the minimum *Metromedia* requirements. Although Ally's contribution of

$2.1 billion may appear to be substantial, a substantial contribution alone is not adequate.

Ally meets none of the other three requirements. First, the enjoined claims are not

channeled to a settlement fund: They are not separately identified, and the Ally

contribution is simply added to the general estate assets for distribution among all classes

of claims against ResCap (not claims against Ally). Second, Credit Suisse's claims that

would be enjoined by the nondebtor release would not "indirectly impact upon" ResCap's

reorganization. As noted above, ResCap has indemnified Credit Suisse for its losses,

which could be greater if its claims against Ally are released, but Ally's claims against

ResCap would be reduced by the same amount, so there is no net impact upon the

reorganization. Third, the plan proposed by the Agreement clearly does not provide for

the full payment of the enjoined claims.

Moreover, as noted above, the *de minimis* consideration that Credit Suisse might

receive under the plan is on account of its claims against ResCap, not claims against Ally,

as *Metromedia* requires, and a nondebtor release cannot be supported "simply because

the nondebtor contributed something". *Id.* at 143. Finally, though this case is complex, it

does not rise to the level of the rare, truly unusual circumstance that can be characterized

as unique, as *Metromedia* requires. Each Chapter 11 mega-case is complex in its own

way, but the differences among them and their complexities do not make them rare or

truly unusual. Otherwise, *Metromedia* would permit third-party releases in every mega-

case, which the Court of Appeals surely would not countenance. Therefore, the proposed

third-party releases do not meet the *Metromedia* requirements. Ally simply cannot buy

from ResCap a release of Ally's separate obligations to Credit Suisse.

### 3. The Proposed Release of Credit Suisse's Claims Potentially Increases Credit Suisse's Exposure, Because It Does Not Contain a Judgment Reduction Provision.

Nor can the proposed release of Credit Suisse's claims against Ally be saved by

characterizing it as a bar order in a settlement of the underlying securities litigation. A bar

order provides protection to a settling defendant from a contribution or reimbursement

claim that a co-defendant might assert if the plaintiff prevails, but it is coupled with an

appropriate judgment reduction provision, so that the non-settling defendant is relieved

from the settling defendant's portion of any joint and several liability to the plaintiff.

Such a bar order, with a judgment reduction provision in connection with a settlement, is

not a third-party release and may be included in a plan. *See In re Tribune Co.*, 464 B.R.

126 (Bankr. D. Del. Oct. 31, 2011). Here, however, the proposed settlement provides

Ally a complete release of all co-defendants' contribution claims, including in actions in

which Ally is not settling with the plaintiff at all. The proposed settlement is independent

of any particular action in which Ally is a defendant and does not contemplate any

judgment reduction provision in any action against Ally that would protect Credit Suisse

from having to pay any amount for which Ally is found liable to the plaintiffs.

The proposed third-party release that the Agreement contemplates renders the proposed plan unconfirmable on its face. This Court, therefore, should deny the Motion to authorize ResCap to enter into and pursue the Agreement in its present form and the transaction contemplated thereby.

### C.    Court Authorization of the Agreement Is Neither Required Nor Permitted.[6]

The Bankruptcy Code provides "only the debtor may file a plan until after 120 days after the date of the order for relief" and during such additional time as the court grants. 11 U.S.C. §§ 1121(b), (d). Section 1121(b) bestows this right on the debtor, not on a trustee or debtor in possession as representative of the estate. The difference is significant. With limited exceptions,[7] all Chapter 11 provisions that section 1107(a) applies to the debtor when acting in its capacity as debtor in possession, and therefore as representative of the estate under section 323, refer only to the trustee, not to the debtor. Therefore, the debtor does not act on behalf of the estate in filing a plan, but only in its capacity as the debtor, and the filing of the plan is not an act for, and does not bind, the estate. For example, if the court were to order the appointment of a trustee to succeed the debtor in possession after the debtor filed a plan, she would succeed to the commitments the debtor in possession made for the estate, but would not be bound by or succeed to the debtor's plan. Rather, section 1121(c)(1) separately authorizes the trustee and the debtor to file a plan.

---

[6] Credit Suisse recognizes that this Court has previously approved a plan support agreement. *In re Gen'l Maritime Corp.*, Case No. 11-15285-MG (Bankr. S.D.N.Y. Apr. 2, 2012) ECF 421. However, there was no opposition to the motion seeking approval, so the issues raised here might not have come to the Court's attention.

[7] *See* 11 U.S.C. §§ 1113(a), (b), 1114(e)(1), 1116.

The Court's authority extends to supervision of the estate, not of actions that the debtor takes that do not affect the estate. For example, the debtor's corporate governance, including shareholder meetings and election of directors, is outside the court's purview absent a clear abuse or creation of "real jeopardy to reorganization prospects". *In re Johns-Manville Corp.,* 801 F.2d 60, 67 (2d Cir. 1986). Thus, *Johns-Manville* ruled that it is entirely appropriate for shareholders to demand the election of new directors if they believe that the current directors have not served them well in negotiating a plan and to seek new directors to get a better deal, so long as the shareholders' action is not a clear abuse and would not seriously jeopardize reorganization prospects. Court authorization of the debtor to enter into and perform a plan support agreement would effectively cut off the shareholders' rights that the Second Circuit recognized in *Johns-Manville* and, where there is no allegation of any need for the sort of injunction sought in that case, would constitute involvement in the internal affairs of the debtor corporation that *Johns-Manville* does not allow.

Consistent with this understanding of the law, the Motion recognizes that the Agreement does not require court approval under section 363(b)(1), acknowledging that ResCap does "not seek to expend incremental estate resources or otherwise make payments to any of the Supporting Parties prior to confirmation of the Plan". Mot. at 15. ResCap nevertheless seeks approval "out of an abundance of caution", *id.*, without ever articulating what risk would arise in the absence of court approval, except for a vague reference to preventing a finding of bad faith voting. But there have been no ballots solicited or cast, so any ruling now that would preclude a bad faith finding once votes are solicited, would be a premature advisory opinion on an incomplete record. Moreover, ResCap seeks approval under section 363(b)(1), which authorizes the debtor in

possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate". Because the Agreement does not require ResCap "to expend incremental estate resources", Mot. at 15, it is not using, selling or leasing property of the estate, and section 363(b)(1) does not apply. ResCap is not acting on behalf of the estate in entering into the Agreement and therefore is not entitled to court approval of its actions.

Although ResCap cites section 105(a) as authority for the requested Order, that section only authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title". 11 U.S.C. § 105(a). However, section 105(a) does not provide authority independent of other Code provisions and, because section 363(b)(1) does not apply, the Order would not "carry out" any of the provisions of the Bankruptcy Code.

The Court therefore should dismiss the Motion as outside the Court's statutory purview.

### D.    Authorization May Not Bind Creditors to the Plan or Releases Before Plan Confirmation.

The mechanism that Chapter 11 provides to impose a final determination of the rights of creditors and other parties in interest is a Chapter 11 plan. The plan embodies the adjustment of debtor-creditor rights and obligations. A plan may impair or leave unimpaired any class of claims or interests. 11 U.S.C. § 1123(b)(1). It must specify the treatment of any class that is impaired under the plan and provide adequate means for its implementation. *Id*. § 1123(a)(5). It may "include any other appropriate provisions not inconsistent with the applicable provisions" of the Code, *id*. § 1123(b)(6), such as a third-party release in "truly unusual circumstances". *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 143 (2d Cir. 2005).

14

The plan becomes binding on creditors and other parties in interest, and the debtor is discharged, only on confirmation of the plan. *Id.* §§ 1141(a), (d).

Confirmation of a plan requires a hearing on at least 28 days' notice, *id.* § 1128(a), Fed. R. Bankr. Proc. 2002(b)(2), 3020(b)(2), at which a party in interest may object. 11 U.S.C. § 1128(b). The hearing occurs only after filing of a plan and a disclosure statement, approval of the disclosure statement and solicitation of acceptances. In short, the Court may not issue an order that broadly affects creditors' rights against the debtor outside of the plan confirmation process. To do so would impermissibly "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan". *See Pension Benefit Guaranty Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983). A plan support agreement is not a plan, and its approval may not have the effect on creditors that a plan would.

Credit Suisse does not understand ResCap to argue otherwise. But the proposed Order that ResCap has submitted could be interpreted to bind creditors in a way that would prevent them from raising a number of objections to the plan that ResCap would ultimately file in accordance with the Agreement. The proposed Order contains a finding that the Agreement "is in the best interest of the Debtors' estates [and] their creditors" and would order and decree that the Agreement, "including the transactions contemplated therein, are in the best interests of the Debtors' estate [and] their creditors". Mot., Ex. 1, at 1, ¶3. Such a finding and decretal paragraph go well beyond authorizing ResCap to enter into the Agreement and proceed with the plan negotiation, documentation, solicitation and confirmation process. They could be read to foreclose any creditor from arguing, at the confirmation hearing, that the plan and the transaction contemplated by

15

the plan are not in its interest or even that the plan should not be confirmed because one

or more of the transactions contemplated by the Agreement does not meet the

requirements for plan confirmation. Once the Court has "**GRANTED**" the Motion

seeking approval of the Agreement and the transactions contemplated thereby, as

proposed in the Order, and found and ordered that the transactions are in the best interest

of the estate, ResCap or another plan supporter might argue that a confirmation order

could not contravene the Agreement authorization order.

Therefore, if the Court grants the Motion, it should strike any findings that the

Agreement or the contemplated transactions are in the best interest of the estates or of

ResCap's creditors.

### E.    The Court Should Not Grant the Motion Without Disclosure of the Examiner's Report.

ResCap supports its Motion under section 363(b) under the business judgment

rule, requesting that the Court defer to its judgment in this matter. Citing perhaps the

leading business judgment rule case from this District, ResCap says, "[o]nce a debtor

articulates a sound business justification, a presumption arises that 'in making a business

decision the directors of a corporation acted on an informed basis'". Mot. at 16  (quoting

*Official Comm. of Sub'd Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,

147 B.R. 650, 656 (S.D.N.Y. 1992)). However, the presumption may be rebutted by

showing "that the directors breached their fiduciary duty of care". *In re Walt Disney Co.*

*Derivative Litigation*, 906 A. 2d 27, 52 (Del. 2006).[8] In accordance with the directors'

duty of care, "to invoke the [business judgment] rule's protection directors have a duty to

---

[8] Bankruptcy courts employ the Delaware business judgment rule principles, especially in cases, as here, where a debtor is incorporated in Delaware. *In re Intergrated Res., Inc.*, 147 B.R. 656 (S.D.N.Y. 1992).

inform themselves, prior to making a business decision, of all material information reasonably available to them". *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see also Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993) (duty of care breached where the director was not fully informed of all material information or failed to fully consider the information). Directors may not shun information that is readily available to them and claim the protection of the business judgment rule. Where the record is clear that the directors did not act on an informed basis, the Court should not presume that they did.

In this case, the Examiner spent nine months and approximately $80 million of estate assets (a sum, incidentally, that is over four times as much as general unsecured creditors would share under the Plan Support Agreement) to investigate and report on an array of subjects related to the substance of a previous plan support agreement, including transactions, agreements, negotiations, activities, relationships, claims and proposed releases by or between, among others, ResCap and Ally. Order Approving Scope of Investigation of Arthur J. Gonzales, Examiner, Ex. A at 3-5, ECF 925. The Examiner's Report has been filed under seal. Not only has ResCap not seen the Report, the Agreement is conditioned on the Examiner's Report remaining secret until after the Court rules on the Motion. Plan Support Agreement § 10.1(a). Thus, the directors here have intentionally buried their heads in the sand, and they have made it a condition to the deal that they may keep their heads buried until after it's over. That posture cannot support a claim of the protection of the business judgment rule.

If the Court therefore departs from applying the business judgment rule in its consideration of the Motion, the Court must have a full record, *see Comm. of Secured*

17

*Equity Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983),

which must be available to parties in interest who seek to be heard on the Motion.

Although the Court has the Examiner's Report, it is unavailable to all parties in interest in

these cases. They cannot prepare or present their cases on the merits until the Report

becomes available and they have an opportunity to review it. It should be unsealed before

the Court rules on the Motion.

    Another reason compels the unsealing of the Examiner's Report before this Court

rules on the Motion. The law does not favor sealing documents that are filed with the

Court. Section 107, entitled "Public access to papers", makes any paper filed in a

bankruptcy case and the dockets "public records and open to examination by an entity at

reasonable times without charge". 11 U.S.C. §107(a). This section reflects a strong

Congressional and common law policy that court proceedings are public and may not be

shrouded in secrecy. As this Court has previously stated:

> There is a strong presumption and public policy in favor of
> public access to court records. *See*, *e.g.*, *Nixon v. Warner
> Communications, Inc.*, 435 U.S. 589, 597-98 (1978); *Neal
> v. The Kansas City Star (In re Neal)*, 461 F.3d 1048, 1053
> (8th Cir. 2006); *Gitto v. Worcester Telegram & Gazette
> Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir.
> 2005); *In re FiberMark, Inc.*, 330 B.R. 480, 505 (Bankr. D.
> Vt. 2005). The right of public access is "rooted in the
> public's First Amendment right to know about the
> administration of justice." *Video Software Dealers Ass'n v.
> Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d
> 24, 26 (2d Cir. 1994) (public access "helps safeguard the
> integrity, quality, and respect in our judicial system, and
> permits the public to keep a watchful eye on the workings
> of public agencies") (citations and internal quotations
> omitted). The public interest in openness of court
> proceedings is at its zenith when issues concerning the
> integrity and transparency of bankruptcy court proceedings
> are involved, as they are in this matter. *Gitto*, 422 F.3d at 7
> ("This governmental interest is of special importance in the

18

> bankruptcy arena, as unrestricted access to judicial records
> fosters confidence among creditors regarding the fairness
> of the bankruptcy system."); *In re Bell & Beckwith*, 44 B.R.
> 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of open
> inspection, established in the Bankruptcy Code itself, is
> fundamental to the operation of the bankruptcy system and
> is the best means of avoiding any suggestion of impropriety
> that might or could be raised.").

*In re Food Mgmt. Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007).

Section 107(b) contains only a limited exception. The court may seal a document to protect an entity "with respect to a trade secret or confidential research, development, or commercial information [or] scandalous or defamatory matter". 11 U.S.C. §107(b). The courts have construed section 107(b) very narrowly. *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Oregon)*, 661 F.3d 417 (9th Cir. 2011) (report of child sexual abuse); *Neal v. Kansas City Star (In re Neal)*, 461 F.3d 1048 (8th Cir. 2006) (denying motion to file creditor list under seal); *Togut v. Deutsche Bank AG, Cayman Islands Branch (In re Anthracite Capital, Inc.)*, No. 10-11319, 2013 WL 1909026 (Bankr. S.D.N.Y. May 9, 2013) (denying motion to file settlement agreement under seal); *In re Oldco M Corp.*, 466 B.R. 234 (Bankr. S.D.N.Y. 2012) (denying motion to seal settlement agreement); *In re Blake*, 452 B.R. 1 (Bankr. D. Mass. 2011) (denying motion to redact portions of settlement agreement). In particular, an examiner's report should be not sealed. *In re Gitto/Global Corp.*, 321 B.R. 367 (Bankr. D. Mass. 2005); *In re Fibermark, Inc.*, 330 B.R. 480 (Bankr. D. Vt. 2005).

The *Anthracite Coal* case is particularly instructive. There, the parties inserted a "no seal-no deal" provision in a settlement agreement, under which the parties would be bound to the agreement only if the court permitted the agreement and related documents to be filed under seal. The court soundly rejected the request to seal the agreement. The

19

court stressed the strong public policy of transparency in bankruptcy court proceedings and refused to allow a settlement agreement to undermine that policy. "Whether to defend or settle litigation, however, remains a decision for the parties involved and is not a relevant factor in deciding whether or not to protect a court document from public viewing." 2013 WL 1909026, at *40.

Here, the parties insist on sealing the Examiner's Report only until approval of the Agreement. However, nothing distinguishes this case from a demand that an examiner's report remain sealed permanently as a condition to the parties' settlement agreement. As in *Anthracite*, whether to settle remains a decision for the parties but is not a relevant factor in deciding whether to keep the Report out of public view.

Therefore, the Court should unseal the Examiner's Report before consideration of the Motion.

## IV.    CONCLUSION

For the foregoing reasons, this Court should deny ResCap's Motion for an order authorizing it to enter into and perform under the Agreement or, at the very least, strike from the proposed Order submitted with the Motion, any findings or decrees in the Order that the Agreement, including the transactions contemplated therein, are in the best interest of the estates or their creditors.

June 19, 2013

CRAVATH, SWAINE & MOORE LLP,

by

_____
/s/ Richard Levin
Richard Levin
Richard W. Clary
Michael T. Reynolds
Lauren A. Moskowitz
Members of the Firm

Attorneys for Credit Suisse Securities
(USA) LLC f/k/a Credit Suisse First
Boston LLC
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000