# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) | |
| RESIDENTIAL CAPITAL, LLC, et al., ) | Chapter 11 |
| ) | |
| **Debtors.** ) | Jointly Administered |
| ) | |

**DECLARATION OF NELSON C. COHEN, ESQUIRE, IN SUPPORT OF NATIONAL CREDIT UNION ADMINISTRATION BOARDS' OBJECTION TO DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTION 105(A) AND 363 (B) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE AND CERTAIN CONSENTING CLAIMANTS**

I, Nelson C. Cohen, Esquire, being duly sworn, state the following under penalty of perjury:

1. I am a member of the District of Columbia bar and am admitted to practice before this Court. I am a partner at the law firm of Zuckerman Spaeder LLP, counsel of record to The National Credit Union Administration Board ("NCUAB"[1]) in the above captioned case. NCUAB is the liquidating agent for Western Corp. Federal Credit Union and U.S. Central Federal Credit Union.

2. I offer this Declaration in support of NCUAB's objection to the Debtors' Motion for an Order under Bankruptcy Code Section 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants. Except as otherwise noted, I have personal knowledge of the matters set forth herein. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in NCUAB's Objection or the Debtors' Motion.

4156025.1

## BACKGROUND

3.  Since the Debtors' petition date, I have served as NCUAB's counsel in this case. In that capacity, I am familiar with NCUAB's participation in the Debtors' Chapter 11 cases.

4.  NCUAB has filed eleven (11) proofs of claim (the "NCUAB Claims") against Debtors Residential Accredit Loans Inc. [Claim Nos. 2626, 2627, 2628, 2629, 2630, 2631, 2632, 2633, 2634, and 2636] and Residential Funding Mortgage Securities II, Inc. [Claim No. 2635] in connection with the purchase and/or sale of residential mortgage-backed securities ("RMBS") which are investments derived from pools of mortgage loans that are packaged for securitization through bankruptcy-remote trusts.

5.  The NCUAB Claims total approximately $293,000,000 and arise out of violations of the Securities Act of 1933, the California Corporate Securities Law of 1968 and the Kansas Uniform Securities Act.

6.  NCUAB also has claims against nondebtors Ally Financial Inc. ("Ally") and Ally Securities LLC ("Ally Securities") that arise out of violations of the Sections 11 and 15 of the Securities Act of 1933.

7.  The total value of the Section 15 claims against Ally Financial is over $390 million, and the total value of the Section 11 claims against Ally Securities is about $200 million.

8.  On January 22, 2013, counsel for NCUAB wrote to Judge Peck requesting an opportunity to participate in the mediation. Judge Peck did not respond to the request.

9.  NCUAB's counsel contacted Lewis Kruger, the Debtors' Chief Restructuring Officer (the "CRO"), in an effort to participate in the mediation process. In early May NCUAB's calls were returned by the CRO's counsel.

10. In a conversation with the CRO's counsel, NCUAB's counsel again conveyed its request to participate in the mediation. NCUAB's counsel heard nothing further from the CRO or his counsel.

11. NCUAB attempted to keep abreast of developments in the mediation, including by communications with counsel for other holders of securities claims, to try to ascertain how its claims were being evaluated and treated by the participants. Given the highly confidential nature of the mediation, and the unwillingness to expand the group of participants, NCUAB was not successful, despite its efforts, in obtaining information about its treatment under the settlement until after the public filing of the PSA Motion.

12. On May 13, 2013, we notified counsel for the Consenting Creditors that NCUAB held claims against both the Debtors and Ally.

13. On May 16, 2013, in a telephone conference with counsel for the Creditors' Committee, we notified them of NCUAB's claims against both the Debtors and Ally.

14. On May 28, 2013 we contacted counsel for the Debtors, the Creditors' Committee and the Consenting Creditors and requested detailed information about the PSA terms. At that time, we set forth our position that NCUAB is situated similarly to those claims identified as Private Securities Claims.

15. On May 29, 2013 we received a response from the Creditors' Committee in which the Creditors' Committee requested information from NCUAB.

16. At the May 29 Status Conference on the PSA Motion, counsel for the Creditors' Committee advised the Court that securities law claimants not identified as Private Securities Claimants would be treated under a plan as general unsecured creditors.

17. On May 30, 2013 we received a response from the Consenting Creditors and were advised that NCUAB did not hold claims similar to the Private Securities Claims because NCUAB had not filed claims against Ally or entered a tolling agreement with Ally with respect to securities claims.

18. Since the Status Conference, we have had discussions with the Debtors and the Creditors' Committee in which we were advised that the entities which comprise the group of holders of Private Securities Claims were identified by Ally.

19. Counsel for NCUAB has conferred with counsel for the Debtors, the Creditors' Committee, and the Consenting Creditors with respect to the PSA. During those conversations counsel for NCUAB has explained that: (a) its claims are consistent with the definition of Private Securities Claims in the Term Sheet, and (b) even if it is proper to consider claims against non-debtors as additional criteria for inclusion among the Private Securities Claims, NCUAB satisfies that criteria, and (c) NCUAB's claims against Ally are not conceptually distinguishable from un-filed claims against Ally that are listed in the definition of Private Securities Claims that are covered by a tolling agreement.

20. To support its position, NCUAB provided Debtors, the Creditors' Committee and the Consenting Creditors with a copy of its draft complaint against Ally based on violations of federal securities laws. NCUAB is prepared to file that complaint.

21. The draft complaint sets forth the basis for its position that claims of NCUAB are not barred by any statute of limitations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of June, 2013, at Washington, DC.

*/s/ Nelson C. Cohen*
Nelson C. Cohen

*Signature Page to Declaration of Graeme Bush, Esquire, in support of National Credit Union Administration Boards' Objection to Debtors' Motion for an Order Under Bankruptcy Code Section 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants*

4156025.1