Series 2007-1, Class CE

Aggregate Certificate Principal Balance of the Class CE Certificates as of the Issue Date: $_____

Pass-Through Rate: Variable

Denomination: $_____

Cut-off Date and date of Pooling and Servicing Agreement: April 1, 2007

Master Servicer: Wells Fargo Bank, N.A.

First Distribution Date: May 25, 2007

Trustee: HSBC Bank USA, National Association

No. __

Issue Date: May 15, 2007

### SUNTRUST ACQUISITION CLOSED-END SECONDS TRUST, SERIES 2007-1 ASSET BACKED PASS-THROUGH CERTIFICATE

evidencing a beneficial ownership interest in a Trust Fund (the "Trust Fund") consisting primarily of a pool of conventional one- to four-family, fixed rate, second lien mortgage loans (the "Mortgage Loans") formed and sold by

### ACE SECURITIES CORP.

**THIS CERTIFICATE DOES NOT REPRESENT AN OBLIGATION OF OR INTEREST IN ACE SECURITIES CORP., THE SPONSOR, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR, THE SERVICER, THE TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES. NEITHER THIS CERTIFICATE NOR THE UNDERLYING MORTGAGE LOANS ARE GUARANTEED BY ANY AGENCY OR INSTRUMENTALITY OF THE UNITED STATES.**

This certifies that _____ is the registered owner of a Percentage Interest (obtained by dividing the denomination of this Certificate by the aggregate Certificate Principal Balance of the Class CE Certificates as of the Issue Date) in that certain beneficial ownership interest evidenced by all of the Class CE Certificates in REMIC III created pursuant to a Pooling and Servicing Agreement, dated as specified above (the "Agreement"), among ACE Securities Corp., as depositor (hereinafter called the "Depositor," which term includes any successor entity under the Agreement), Wells Fargo Bank, National Association as master servicer (the "Master Servicer") and securities administrator (the "Securities Administrator"), GMAC Mortgage, LLC as servicer (the "Servicer") and HSBC Bank USA, National Association as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter.  To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement.  This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

Interest on this Certificate will accrue during the month prior to the month in which a Distribution Date (as hereinafter defined) occurs on the Notional Amount (as defined in

the Agreement) hereof at a per annum rate equal to the applicable Pass-Through Rate as set forth in the Agreement.  Pursuant to the terms of the Agreement, distributions will be made on the 25th day of each month or, if such 25th day is not a Business Day, the Business Day immediately following such 25th day (a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered on the last Business Day of the calendar month immediately preceding the month in which the related Distribution Date occurs (the "Record Date"),  in an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount required to be distributed to the Holders of Class CE Certificates on such Distribution Date pursuant to the Agreement.

All distributions to the Holder of this Certificate under the Agreement will be made or caused to be made by the Securities Administrator by wire transfer in immediately available funds to the account of the Person entitled thereto if such Person shall have so notified the Securities Administrator in writing at least five Business Days prior to the Record Date immediately prior to such Distribution Date and is the registered owner of Class CE Certificates the aggregate initial Certificate Principal Balance of which is in excess of the lesser of (i) $5,000,000 or (ii) two-thirds of the aggregate initial Certificate Principal Balance of the Class CE Certificates, or otherwise by check mailed by first class mail to the address of the Person entitled thereto, as such name and address shall appear on the Certificate Register. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose as provided in the Agreement.

This Certificate is one of a duly authorized issue of Certificates designated as Asset Backed Pass-Through Certificates of the Series specified on the face hereof (herein called the "Certificates") and representing a Percentage Interest in the Class of Certificates specified on the face hereof equal to the denomination specified on the face hereof divided by the aggregate Certificate Principal Balance of the Class of Certificates specified on the face hereof.

The Certificates are limited in right of payment to certain collections and recoveries respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement. As provided in the Agreement, withdrawals from the Collection Account and the Distribution Account may be made from time to time for purposes other than distributions to Certificateholders, such purposes including reimbursement of advances made, or certain expenses incurred, with respect to the Mortgage Loans.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Master Servicer, the Trustee, the Securities Administrator and the Servicer with the consent of the Holders of Certificates entitled to at least 66% of the Voting Rights and the Class A Certificate Insurer.  Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, with the

consent of the Class A Certificate Insurer, but without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable in the Certificate Register upon surrender of this Certificate for registration of transfer at the offices or agencies appointed by the Securities Administrator as provided in the Agreement, duly endorsed by, or accompanied by an assignment in the form below or other written instrument of transfer in form satisfactory to the Securities Administrator duly executed by, the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest will be issued to the designated transferee or transferees.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, (iii) written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit B-1, (ii) if such transfer is purportedly being made in reliance upon Rule 501(a) under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer and from such Holder's prospective transferee, substantially in the form attached to the Agreement as Exhibit B-2 (iv) in all other cases, an Opinion of Counsel satisfactory to it that such transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Trustee, the Master Servicer or the Securities Administrator in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such Holder's prospective transferee upon which such Opinion of Counsel is based. None of the Depositor, the Trustee or the Securities Administrator is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Depositor, the Master Servicer and the Securities Administrator against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Certificate shall be made except in accordance with Section 6.02(c) of the Agreement.

The Certificates are issuable in fully registered form only without coupons in Classes and denominations representing Percentage Interests specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, the Certificates are exchangeable for new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest, as requested by the Holder surrendering the same. No

service charge will be made for any such registration of transfer or exchange of Certificates, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

The Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and any agent of the Depositor, the Master Servicer, the Trustee, the Securities Administrator or the Servicer may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer nor any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby shall terminate upon payment to the Certificateholders of all amounts held by the Securities Administrator and required to be paid to them pursuant to the Agreement following the earlier of (i) the final payment or other liquidation (or any advance with respect thereto) of the last Mortgage Loan remaining in REMIC I and (ii) the purchase by the party designated in the Agreement at a price determined as provided in the Agreement from REMIC I of all the Mortgage Loans and all property acquired in respect of such Mortgage Loans. The Agreement permits, but does not require, the party designated in the Agreement to purchase from REMIC I all the Mortgage Loans and all property acquired in respect of any Mortgage Loan at a price determined as provided in the Agreement. The exercise of such right will effect early retirement of the Certificates; however, such right to purchase is subject to the aggregate Scheduled Principal Balance of the Mortgage Loans (and properties acquired in respect thereof) at the time of purchase being less than or equal to 10% of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date.

The recitals contained herein shall be taken as statements of the Depositor and neither the Trustee nor the Securities Administrator assume any responsibility for their correctness.

Unless the certificate of authentication hereon has been executed by the Securities Administrator, by manual signature, this Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated:  May ___, 2007

WELLS FARGO BANK, N.A.
as Securities Administrator


By:  _____
                    Authorized Officer


## CERTIFICATE OF AUTHENTICATION

This is one of the Class CE Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, N.A.
as Securities Administrator


By:  _____
                    Authorized Officer

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this instrument, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | | | | |
|---|---|---|---|---|---|
| TEN COM | - | as tenants in common | UNIF GIFT MIN ACT - | \_\_\_Custodian\_\_\_ | |
| | | | | (Cust)    (Minor) | |
| | | | | under Uniform Gifts | |
| | | | | to Minors Act | |
| TEN ENT | - | as tenants by the entireties | | _____ | |
| | | | | (State) | |
| JT TEN | - | as joint tenants with right | | | |
| | | if survivorship and not as | | | |
| | | tenants in common | | | |

Additional abbreviations may also be used though not in the above list.

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s)

unto _____

_____

_____
(Please print or typewrite name, address including postal zip code, and Taxpayer Identification Number of assignee)

a Percentage Interest equal to _____% evidenced by the within Asset Backed Pass-Through Certificate and hereby authorize(s) the registration of transfer of such interest to assignee on the Certificate Register of the Trust Fund.

I (we) further direct the Securities Administrator to issue a new Certificate of a like Percentage Interest and Class to the above named assignee and deliver such Certificate to the following address: _____

_____ .

Dated: 

_____
Signature by or on behalf of assignor


_____
Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____
account number _____ or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____
assignee named above, or _____
its agent.

<u>EXHIBIT A-4</u>

FORM OF CLASS P CERTIFICATE

**SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE IS A "REGULAR INTEREST" IN A "REAL ESTATE MORTGAGE INVESTMENT CONDUIT," AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE").**

**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING THIS CERTIFICATE, AGREES THAT THIS CERTIFICATE MAY BE REOFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY IN COMPLIANCE WITH THE ACT AND OTHER APPLICABLE LAWS AND WITHIN THE UNITED STATES TO (A) "QUALIFIED INSTITUTIONAL BUYERS" WITHIN THE MEANING OF AND IN COMPLIANCE WITH RULE 144A UNDER THE ACT ("RULE 144A") OR (B) TO INSTITUTIONAL INVESTORS THAT ARE "ACCREDITED INVESTORS" WITHIN THE MEANING OF RULE 501(A)(1), (2), (3) OR (7) OF "REGULATION D" UNDER THE ACT.**

**NO TRANSFER OF THIS CERTIFICATE MAY BE MADE TO ANY PERSON, UNLESS THE TRANSFEREE PROVIDES A CERTIFICATION PURSUANT TO SECTION 6.02(c) OF THE AGREEMENT REFERRED TO HEREIN.**

Series 2007-1, Class P

Aggregate Certificate Principal Balance of the Class P Certificates as of the Issue Date: $100.00

Cut-off Date and date of Pooling and Servicing Agreement: April 1, 2007

Denomination: $100.00

First Distribution Date: May 25, 2007

Master Servicer: Wells Fargo Bank, N.A.

No. __

Trustee: HSBC Bank USA, National Association

Issue Date: May 15, 2007

### SUNTRUST ACQUISITION CLOSED-END SECONDS TRUST, SERIES 2007-1 ASSET BACKED PASS-THROUGH CERTIFICATE

evidencing a beneficial ownership interest in a Trust Fund (the "Trust Fund") consisting primarily of a pool of conventional one- to four-family, fixed rate, second lien mortgage loans (the "Mortgage Loans") formed and sold by

### ACE SECURITIES CORP.

**THIS CERTIFICATE DOES NOT REPRESENT AN OBLIGATION OF OR INTEREST IN ACE SECURITIES CORP., THE SPONSOR, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR, THE SERVICER, THE TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES. NEITHER THIS CERTIFICATE NOR THE UNDERLYING MORTGAGE LOANS ARE GUARANTEED BY ANY AGENCY OR INSTRUMENTALITY OF THE UNITED STATES.**

This certifies that_____ is the registered owner of a Percentage Interest (obtained by dividing the denomination of this Certificate by the aggregate Certificate Principal Balance of the Class P Certificates as of the Issue Date) in that certain beneficial ownership interest evidenced by all of the Class P Certificates in REMIC III created pursuant to a Pooling and Servicing Agreement, dated as specified above (the "Agreement"), among ACE Securities Corp., as depositor (hereinafter called the "Depositor", which term includes any successor entity under the Agreement), Wells Fargo Bank, National Association as master servicer (the "Master Servicer") and securities administrator (the "Securities Administrator"), GMAC Mortgage, LLC as servicer (the "Servicer") and HSBC Bank USA, National Association as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement.  This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, distributions will be made on the 25th day of each month or, if such 25th day is not a Business Day, the Business Day immediately following such 25th day (a "Distribution Date"), commencing on the First Distribution Date specified above, to the Person in whose name this Certificate is registered on the last Business Day of the calendar month immediately preceding the month in which the related Distribution Date occurs (the "Record Date"), in an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount required to be distributed to the Holders of Class P Certificates on such Distribution Date pursuant to the Agreement.

All distributions to the Holder of this Certificate under the Agreement will be made or caused to be made by the Securities Administrator by wire transfer in immediately available funds to the account of the Person entitled thereto if such Person shall have so notified the Securities Administrator in writing at least five Business Days prior to the Record Date immediately prior to such Distribution Date and is the registered owner of Class P Certificates the aggregate initial Certificate Principal Balance of which is in excess of the lesser of (i) $5,000,000 or (ii) two-thirds of the aggregate initial Certificate Principal Balance of the Class P Certificates, or otherwise by check mailed by first class mail to the address of the Person entitled thereto, as such name and address shall appear on the Certificate Register. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose as provided in the Agreement.

This Certificate is one of a duly authorized issue of Certificates designated as Asset Backed Pass-Through Certificates of the Series specified on the face hereof (herein called the "Certificates") and representing a Percentage Interest in the Class of Certificates specified on the face hereof equal to the denomination specified on the face hereof divided by the aggregate Certificate Principal Balance of the Class of Certificates specified on the face hereof.

The Certificates are limited in right of payment to certain collections and recoveries respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement. As provided in the Agreement, withdrawals from the Collection Account and the Distribution Account may be made from time to time for purposes other than distributions to Certificateholders, such purposes including reimbursement of advances made, or certain expenses incurred, with respect to the Mortgage Loans.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Master Servicer, the Trustee, the Securities Administrator and the Servicer with the consent of the Holders of Certificates entitled to at least 66% of the Voting Rights and the Class A Certificate Insurer.  Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, with the

consent of the Class A Certificate Insurer, but without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable in the Certificate Register upon surrender of this Certificate for registration of transfer at the offices or agencies appointed by the Securities Administrator as provided in the Agreement, duly endorsed by, or accompanied by an assignment in the form below or other written instrument of transfer in form satisfactory to the Securities Administrator duly executed by, the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest will be issued to the designated transferee or transferees.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit B-1, (ii) if such transfer is purportedly being made in reliance upon Rule 501(a) under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer and from such Holder's prospective transferee, substantially in the form attached to the Agreement as Exhibit B-2 and (iii) in all other cases, an Opinion of Counsel satisfactory to it that such transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Trustee, the Master Servicer or the Securities Administrator in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such Holder's prospective transferee upon which such Opinion of Counsel is based. None of the Depositor, the Trustee or the Securities Administrator is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Depositor, the Master Servicer and the Securities Administrator against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Certificate shall be made except in accordance with Section 6.02(c) of the Agreement.

The Certificates are issuable in fully registered form only without coupons in Classes and denominations representing Percentage Interests specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, the Certificates are exchangeable for new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest, as requested by the Holder surrendering the same. No

service charge will be made for any such registration of transfer or exchange of Certificates, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

The Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and any agent of the Depositor, the Master Servicer, the Trustee, the Securities Administrator or the Servicer may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer nor any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby shall terminate upon payment to the Certificateholders of all amounts held by the Securities Administrator and required to be paid to them pursuant to the Agreement following the earlier of (i) the final payment or other liquidation (or any advance with respect thereto) of the last Mortgage Loan remaining in REMIC I and (ii) the purchase by the party designated in the Agreement at a price determined as provided in the Agreement from REMIC I of all the Mortgage Loans and all property acquired in respect of such Mortgage Loans. The Agreement permits, but does not require, the party designated in the Agreement to purchase from REMIC I all the Mortgage Loans and all property acquired in respect of any Mortgage Loan at a price determined as provided in the Agreement. The exercise of such right will effect early retirement of the Certificates; however, such right to purchase is subject to the aggregate Scheduled Principal Balance of the Mortgage Loans (and properties acquired in respect thereof) at the time of purchase being less than or equal to 10% of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date.

The recitals contained herein shall be taken as statements of the Depositor and neither the Trustee nor the Securities Administrator assume any responsibility for their correctness.

Unless the certificate of authentication hereon has been executed by the Securities Administrator, by manual signature, this Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated:  May \_\_\_, 2007

WELLS FARGO BANK, N.A.
as Securities Administrator


By: _____
Authorized Officer



CERTIFICATE OF AUTHENTICATION

This is one of the Class P Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, N.A.
as Securities Administrator


By: _____
Authorized Officer

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this instrument, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | | | |
|---|---|---|---|---|
| TEN COM | - | as tenants in common | UNIF GIFT MIN ACT - | _____Custodian_____<br>(Cust)      (Minor)<br>under Uniform Gifts<br>to Minors Act |
| | | | | _____<br>(State) |
| TEN ENT | - | as tenants by the entireties | | |
| JT TEN | - | as joint tenants with right<br>if survivorship and not as<br>tenants in common | | |

Additional abbreviations may also be used though not in the above list.

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s)

unto  _____

_____

_____
(Please print or typewrite name, address including postal zip code, and Taxpayer Identification Number of assignee)

a Percentage Interest equal to ____% evidenced by the within Asset Backed Pass-Through Certificate and hereby authorize(s) the registration of transfer of such interest to assignee on the Certificate Register of the Trust Fund.

I (we) further direct the Securities Administrator to issue a new Certificate of a like Percentage Interest and Class to the above named assignee and deliver such Certificate to the following address: _____

_____ .

Dated: _____            _____
                                                                            Signature by or on behalf of assignor


                                                                            _____
                                                                            Signature Guaranteed

## DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____
account number _____    or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____
assignee named above, or _____
its agent.

EXHIBIT A-5

FORM OF CLASS R CERTIFICATE

**THIS CERTIFICATE MAY NOT BE TRANSFERRED TO A NON-UNITED STATES PERSON.**

**SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS CERTIFICATE REPRESENTS THE SOLE "RESIDUAL INTEREST" IN EACH "REAL ESTATE MORTGAGE INVESTMENT CONDUIT" ("REMIC"), AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN SECTIONS 860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE").**

**ANY RESALE, TRANSFER OR OTHER DISPOSITION OF THIS CERTIFICATE MAY BE MADE ONLY IN ACCORDANCE WITH THE PROVISIONS OF SECTION 6.02 OF THE AGREEMENT REFERRED TO HEREIN.**

**THIS CERTIFICATE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE RESOLD OR TRANSFERRED UNLESS IT IS REGISTERED PURSUANT TO SUCH ACT AND LAWS OR IS SOLD OR TRANSFERRED IN TRANSACTIONS THAT ARE EXEMPT FROM REGISTRATION UNDER SUCH ACT AND UNDER APPLICABLE STATE LAW AND IS TRANSFERRED IN ACCORDANCE WITH THE PROVISIONS OF SECTION 6.02 OF THE AGREEMENT REFERRED TO HEREIN.**

**NO TRANSFER OF THIS CERTIFICATE TO AN EMPLOYEE BENEFIT PLAN OR OTHER RETIREMENT ARRANGEMENT SUBJECT TO THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED, OR THE CODE WILL BE REGISTERED EXCEPT IN COMPLIANCE WITH THE PROCEDURES DESCRIBED IN SECTION 6.02(c) OF THE AGREEMENT REFERRED TO HEREIN.**

**ANY RESALE, TRANSFER OR OTHER DISPOSITION OF THIS CERTIFICATE MAY BE MADE ONLY IF THE PROPOSED TRANSFEREE PROVIDES (I) AN AFFIDAVIT TO THE SECURITIES ADMINISTRATOR THAT (A) SUCH TRANSFEREE IS NOT (1) THE UNITED STATES OR ANY POSSESSION THEREOF, ANY STATE OR POLITICAL SUBDIVISION THEREOF, ANY FOREIGN GOVERNMENT, ANY INTERNATIONAL ORGANIZATION, OR ANY AGENCY OR INSTRUMENTALITY OF ANY OF THE FOREGOING, (2) ANY ORGANIZATION (OTHER THAN A COOPERATIVE DESCRIBED IN SECTION 521 OF THE CODE) THAT IS EXEMPT FROM THE TAX IMPOSED BY CHAPTER 1 OF THE CODE UNLESS SUCH**

**ORGANIZATION IS SUBJECT TO THE TAX IMPOSED BY SECTION 511 OF THE CODE, (3) ANY ORGANIZATION DESCRIBED IN SECTION 1381(a)(2)(C) OF THE CODE (ANY SUCH PERSON DESCRIBED IN THE FOREGOING CLAUSES (1), (2) OR (3) SHALL HEREINAFTER BE REFERRED TO AS A "DISQUALIFIED ORGANIZATION") OR (4) AN AGENT OF A DISQUALIFIED ORGANIZATION AND (B) NO PURPOSE OF SUCH TRANSFER IS TO IMPEDE THE ASSESSMENT OR COLLECTION OF TAX, AND (II) SUCH TRANSFEREE SATISFIES CERTAIN ADDITIONAL CONDITIONS RELATING TO THE FINANCIAL CONDITION OF THE PROPOSED TRANSFEREE. NOTWITHSTANDING THE REGISTRATION IN THE CERTIFICATE REGISTER OF ANY TRANSFER, SALE OR OTHER DISPOSITION OF THIS CERTIFICATE TO A DISQUALIFIED ORGANIZATION OR AN AGENT OF A DISQUALIFIED ORGANIZATION, SUCH REGISTRATION SHALL BE DEEMED TO BE OF NO LEGAL FORCE OR EFFECT WHATSOEVER AND SUCH PERSON SHALL NOT BE DEEMED TO BE A CERTIFICATEHOLDER FOR ANY PURPOSE HEREUNDER, INCLUDING, BUT NOT LIMITED TO, THE RECEIPT OF DISTRIBUTIONS ON THIS CERTIFICATE. EACH HOLDER OF THIS CERTIFICATE BY ACCEPTANCE HEREOF SHALL BE DEEMED TO HAVE CONSENTED TO THE PROVISIONS OF THIS PARAGRAPH AND THE PROVISIONS OF SECTION 6.02(d) OF THE AGREEMENT REFERRED TO HEREIN. ANY PERSON THAT IS A DISQUALIFIED ORGANIZATION IS PROHIBITED FROM ACQUIRING BENEFICIAL OWNERSHIP OF THIS CERTIFICATE.**

| | |
|---|---|
| Series 2007-1, Class R | Aggregate Percentage Interest of the Class R Certificates as of the Issue Date: 100.00% |
| Date of Pooling and Servicing Agreement and Cut-off Date: April 1, 2007 | Master Servicer: Wells Fargo Bank, N.A. |
| First Distribution Date: May 25, 2007 | Trustee: HSBC Bank USA, National Association |
| No __ | Issue Date: May 15, 2007 |

### SUNTRUST ACQUISITION CLOSED-END SECONDS TRUST, SERIES 2007-1 ASSET BACKED PASS-THROUGH CERTIFICATE

evidencing a beneficial ownership interest in a Trust Fund (the "Trust Fund") consisting primarily of a pool of conventional one- to four-family, fixed rate, second lien mortgage loans (the "Mortgage Loans") formed and sold by

### ACE SECURITIES CORP.

**THIS CERTIFICATE DOES NOT REPRESENT AN OBLIGATION OF OR INTEREST IN ACE SECURITIES CORP., THE SPONSOR, THE MASTER SERVICER, THE SECURITIES ADMINISTRATOR, THE SERVICER, THE TRUSTEE OR ANY OF THEIR RESPECTIVE AFFILIATES. NEITHER THIS CERTIFICATE NOR THE UNDERLYING MORTGAGE LOANS ARE GUARANTEED BY ANY AGENCY OR INSTRUMENTALITY OF THE UNITED STATES.**

This certifies that _____ is the registered owner of a Percentage Interest set forth above in that certain beneficial ownership interest evidenced by all of the Class R Certificates in REMIC III created pursuant to a Pooling and Servicing Agreement, dated as specified above (the "Agreement"), among ACE Securities Corp., as depositor (hereinafter called the "Depositor", which term includes any successor entity under the Agreement), Wells Fargo Bank, National Association as master servicer (the "Master Servicer") and securities administrator (the "Securities Administrator"), GMAC Mortgage, LLC as servicer (the "Servicer") and HSBC Bank USA, National Association as trustee (the "Trustee"), a summary of certain of the pertinent provisions of which is set forth hereafter. To the extent not defined herein, the capitalized terms used herein have the meanings assigned in the Agreement. This Certificate is issued under and is subject to the terms, provisions and conditions of the Agreement, to which Agreement the Holder of this Certificate by virtue of the acceptance hereof assents and by which such Holder is bound.

Pursuant to the terms of the Agreement, distributions will be made on the 25th day of each month or, if such 25th day is not a Business Day, the Business Day immediately following (a "Distribution Date"), commencing on the First Distribution Date specified above, to

the Person in whose name this Certificate is registered on the last Business Day of the calendar month immediately preceding the month in which the related Distribution Date occurs (the "Record Date"), in an amount equal to the product of the Percentage Interest evidenced by this Certificate and the amount required to be distributed to the Holders of Class R Certificates on such Distribution Date pursuant to the Agreement.

All distributions to the Holder of this Certificate under the Agreement will be made or caused to be made by the Securities Administrator by wire transfer in immediately available funds to the account of the Person entitled thereto if such Person shall have so notified the Securities Administrator in writing at least five Business Days prior to the Record Date immediately prior to such Distribution Date and is the registered owner of Class R Certificates, or otherwise by check mailed by first class mail to the address of the Person entitled thereto, as such name and address shall appear on the Certificate Register. Notwithstanding the above, the final distribution on this Certificate will be made after due notice by the Securities Administrator of the pendency of such distribution and only upon presentation and surrender of this Certificate at the office or agency appointed by the Securities Administrator for that purpose as provided in the Agreement.

This Certificate is one of a duly authorized issue of Certificates designated as Asset Backed Pass-Through Certificates of the Series specified on the face hereof (herein called the "Certificates") and representing the Percentage Interest in the Class of Certificates specified on the face hereof.

The Certificates are limited in right of payment to certain collections and recoveries respecting the Mortgage Loans, all as more specifically set forth herein and in the Agreement. As provided in the Agreement, withdrawals from the Collection Account and the Distribution Account may be made from time to time for purposes other than distributions to Certificateholders, such purposes including reimbursement of advances made, or certain expenses incurred, with respect to the Mortgage Loans.

The Agreement permits, with certain exceptions therein provided, the amendment thereof and the modification of the rights and obligations of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and the rights of the Certificateholders under the Agreement at any time by the Depositor, the Master Servicer, the Trustee, the Securities Administrator and the Servicer with the consent of the Holders of Certificates entitled to at least 66% of the Voting Rights and the Class A Certificate Insurer.  Any such consent by the Holder of this Certificate shall be conclusive and binding on such Holder and upon all future Holders of this Certificate and of any Certificate issued upon the transfer hereof or in exchange herefor or in lieu hereof whether or not notation of such consent is made upon this Certificate. The Agreement also permits the amendment thereof, in certain limited circumstances, with the consent of the Class A Certificate Insurer, but without the consent of the Holders of any of the Certificates.

As provided in the Agreement and subject to certain limitations therein set forth, the transfer of this Certificate is registrable in the Certificate Register upon surrender of this Certificate for registration of transfer at the offices or agencies appointed by the Securities Administrator as provided in the Agreement, duly endorsed by, or accompanied by an

A-5-4

assignment in the form below or other written instrument of transfer in form satisfactory to the Securities Administrator duly executed by, the Holder hereof or such Holder's attorney duly authorized in writing, and thereupon one or more new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest will be issued to the designated transferee or transferees.

The Certificates are issuable in fully registered form only without coupons in Classes and denominations representing Percentage Interests specified in the Agreement. As provided in the Agreement and subject to certain limitations therein set forth, Certificates are exchangeable for new Certificates of the same Class in authorized denominations evidencing the same aggregate Percentage Interest, as requested by the Holder surrendering the same.

No transfer of this Certificate shall be made unless the transfer is made pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "1933 Act"), and an effective registration or qualification under applicable state securities laws, or is made in a transaction that does not require such registration or qualification. In the event that such a transfer of this Certificate is to be made without registration or qualification, the Securities Administrator shall require receipt of (i) if such transfer is purportedly being made in reliance upon Rule 144A under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer, and from such Holder's prospective transferee, substantially in the forms attached to the Agreement as Exhibit B-1, or (ii) if such transfer is purportedly being made in reliance upon Rule 501(a) under the 1933 Act, written certifications from the Holder of the Certificate desiring to effect the transfer and from such Holder's prospective transferee, substantially in the form attached to the Agreement as Exhibit B-2 and a transfer affidavit and agreement substantially in the form of Exhibit B-3 to the Agreement and (iii) in all other cases, an Opinion of Counsel satisfactory to it that such transfer may be made without such registration or qualification (which Opinion of Counsel shall not be an expense of the Trust Fund or of the Depositor, the Trustee, the Master Servicer or the Securities Administrator in their respective capacities as such), together with copies of the written certification(s) of the Holder of the Certificate desiring to effect the transfer and/or such Holder's prospective transferee upon which such Opinion of Counsel is based. None of the Depositor, the Trustee or the Securities Administrator is obligated to register or qualify the Class of Certificates specified on the face hereof under the 1933 Act or any other securities law or to take any action not otherwise required under the Agreement to permit the transfer of such Certificates without registration or qualification. Any Holder desiring to effect a transfer of this Certificate shall be required to indemnify the Trustee, the Depositor, the Master Servicer and the Securities Administrator against any liability that may result if the transfer is not so exempt or is not made in accordance with such federal and state laws.

No transfer of this Certificate shall be made except in accordance with Section 6.02 of the Agreement.

Prior to registration of any transfer, sale or other disposition of this Certificate, the proposed transferee shall provide to the Securities Administrator (i) an affidavit to the effect that such transferee is any Person other than a Disqualified Organization or the agent (including a broker, nominee or middleman) of a Disqualified Organization, and (ii) a certificate that acknowledges that (A) the Class R Certificates have been designated as representing the

beneficial ownership of the residual interests in each of REMIC I, REMIC II and REMIC III, (B) it will include in its income a *pro rata* share of the net income of the Trust Fund and that such income may be an "excess inclusion," as defined in the Code, that, with certain exceptions, cannot be offset by other losses or benefits from any tax exemption, and (C) it expects to have the financial means to satisfy all of its tax obligations including those relating to holding the Class R Certificates. Notwithstanding the registration in the Certificate Register of any transfer, sale or other disposition of this Certificate to a Disqualified Organization or an agent (including a broker, nominee or middleman) of a Disqualified Organization, such registration shall be deemed to be of no legal force or effect whatsoever and such Person shall not be deemed to be a Certificateholder for any purpose, including, but not limited to, the receipt of distributions in respect of this Certificate.

The Holder of this Certificate, by its acceptance hereof, shall be deemed to have consented to the provisions of Section 6.02 of the Agreement and to any amendment of the Agreement deemed necessary by counsel of the Depositor to ensure that the transfer of this Certificate to any Person other than a Permitted Transferee or any other Person will not cause any portion of the Trust Fund to cease to qualify as a REMIC or cause the imposition of a tax upon any REMIC.

No service charge will be made for any such registration of transfer or exchange of Certificates, but the Securities Administrator may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any transfer or exchange of Certificates.

The Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer and any agent of the Depositor, the Master Servicer, the Trustee, the Securities Administrator or the Servicer may treat the Person in whose name this Certificate is registered as the owner hereof for all purposes, and none of the Depositor, the Master Servicer, the Trustee, the Securities Administrator, the Servicer nor any such agent shall be affected by notice to the contrary.

The obligations created by the Agreement and the Trust Fund created thereby shall terminate upon payment to the Certificateholders of all amounts held by the Securities Administrator and required to be paid to them pursuant to the Agreement following the earlier of (i) the final payment or other liquidation (or any advance with respect thereto) of the last Mortgage Loan remaining in REMIC I and (ii) the purchase by the party designated in the Agreement at a price determined as provided in the Agreement from REMIC I of all the Mortgage Loans and all property acquired in respect of such Mortgage Loans. The Agreement permits, but does not require, the party designated in the Agreement to purchase from REMIC I all the Mortgage Loans and all property acquired in respect of any Mortgage Loan at a price determined as provided in the Agreement. The exercise of such right will effect early retirement of the Certificates; however, such right to purchase is subject to the aggregate Scheduled Principal Balance of the Mortgage Loans (and properties acquired in respect thereof) at the time of purchase being less than or equal to 10% of the aggregate principal balance of the Mortgage Loans as of the Cut-off Date.

The recitals contained herein shall be taken as statements of the Depositor and neither the Trustee nor the Securities Administrator assume any responsibility for their correctness.

Unless the certificate of authentication hereon has been executed by the Securities Administrator, by manual signature, this Certificate shall not be entitled to any benefit under the Agreement or be valid for any purpose.

IN WITNESS WHEREOF, the Securities Administrator has caused this Certificate to be duly executed.

Dated: May ___, 2007

WELLS FARGO BANK, N.A.
as Securities Administrator

By: _____
Authorized Officer

## CERTIFICATE OF AUTHENTICATION

This is one of the Class R Certificates referred to in the within-mentioned Agreement.

WELLS FARGO BANK, N.A.
as Securities Administrator

By: _____
Authorized Signatory

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this instrument, shall be construed as though they were written out in full according to applicable laws or regulations:

| | | | | | |
|---|---|---|---|---|---|
| TEN COM | - | as tenants in common | UNIF GIFT MIN ACT - | Custodian | |
| | | | | (Cust)      (Minor) | |
| | | | | under Uniform Gifts | |
| | | | | to Minors Act | |
| TEN ENT | - | as tenants by the entireties | | | |
| | | | | (State) | |
| JT TEN | - | as joint tenants with right | | | |
| | | if survivorship and not as | | | |
| | | tenants in common | | | |

Additional abbreviations may also be used though not in the above list.

## ASSIGNMENT

FOR VALUE RECEIVED, the undersigned hereby sell(s), assign(s) and transfer(s)

unto _____

_____

_____

(Please print or typewrite name, address including postal zip code, and Taxpayer Identification Number of assignee)

a Percentage Interest equal to _____% evidenced by the within Asset Backed Pass-Through Certificate and hereby authorize(s) the registration of transfer of such interest to assignee on the Certificate Register of the Trust Fund.

I (we) further direct the Securities Administrator to issue a new Certificate of a like Percentage Interest and Class to the above named assignee and deliver such Certificate to the following address: _____

_____ .

Dated: _____

_____
Signature by or on behalf of assignor

_____
Signature Guaranteed

DISTRIBUTION INSTRUCTIONS

The assignee should include the following for purposes of distribution:

Distributions shall be made, by wire transfer or otherwise, in immediately available funds to _____

_____

for the account of _____
account number _____ or, if mailed by check, to

_____

Applicable statements should be mailed to _____

_____

This information is provided by _____
assignee named above, or _____
its agent.

EXHIBIT B-1
FORM OF TRANSFEROR REPRESENTATION LETTER

[Date]

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attention: Corporate Trust STACS 2007-1

> Re:  SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1
> Asset Backed Pass-Through Certificates
> [Class  M-4  Certificates][Class  CE  Certificates][Class  P
> Certificates][Class R Certificates]

Ladies and Gentlemen:

In connection with the transfer by _____ (the "Transferor")
to _____ (the "Transferee") of the captioned asset backed pass-through
certificates (the "Certificates"), the Transferor hereby certifies as follows:

Neither the Transferor nor anyone acting on its behalf has (a) offered, pledged,
sold, disposed of or otherwise transferred any Certificate, any interest in any Certificate or any
other similar security to any person in any manner, (b) has solicited any offer to buy or to accept
a pledge, disposition or other transfer of any Certificate, any interest in any Certificate or any
other similar security from any person in any manner, (c) has otherwise approached or negotiated
with respect to any Certificate, any interest in any Certificate or any other similar security with
any person in any manner, (d) has made any general solicitation by means of general advertising
or in any other manner, (e) has taken any other action, that (in the case of each of subclauses (a)
through (e) above) would constitute a distribution of the Certificates under the Securities Act of
1933, as amended (the "1933 Act"), or would render the disposition of any Certificate a violation
of Section 5 of the 1933 Act or any state securities law or would require registration or
qualification pursuant thereto. The Transferor will not act, nor has it authorized or will it
authorize any person to act, in any manner set forth in the foregoing sentence with respect to any
Certificate. The Transferor will not sell or otherwise transfer any of the Certificates, except in
compliance with the provisions of that certain Pooling and Servicing Agreement, dated as of
April 1, 2007, among ACE Securities Corp. as Depositor, Wells Fargo Bank, N.A. as Master
Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer, and HSBC Bank
USA, National Association as Trustee (the "Pooling and Servicing Agreement"), pursuant to
which Pooling and Servicing Agreement the Certificates were issued.

Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Pooling and Servicing Agreement.

Very truly yours,

[Transferor]

By: _____
     Name:
     Title:

FORM OF TRANSFEREE REPRESENTATION LETTER

[Date]

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attention: Corporate Trust STACS 2007-1

> Re:    SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1
>        Asset Backed Pass-Through Certificates
>        [Class    M-4    Certificates][Class    CE    Certificates][Class    P
>        Certificates][Class R Certificates]

Ladies and Gentlemen:

In connection with the purchase from _____ (the "Transferor") on the date hereof of the captioned asset backed pass-through certificates (the "Certificates"), (the "Transferee") hereby certifies as follows:

1.    The Transferee is a "qualified institutional buyer" as that term is defined in Rule 144A ("Rule 144A") under the Securities Act of 1933 (the "1933 Act") and has completed either of the forms of certification to that effect attached hereto as Annex 1 or Annex 2. The Transferee is aware that the sale to it is being made in reliance on Rule 144A. The Transferee is acquiring the Certificates for its own account or for the account of a qualified institutional buyer, and understands that such Certificate may be resold, pledged or transferred only (i) to a person reasonably believed to be a qualified institutional buyer that purchases for its own account or for the account of a qualified institutional buyer to whom notice is given that the resale, pledge or transfer is being made in reliance on Rule 144A, or (ii) pursuant to another exemption from registration under the 1933 Act.

2.    The Transferee has been furnished with all information regarding (a) the Certificates and distributions thereon, (b) the nature, performance and servicing of the Mortgage Loans, (c) the Pooling and Servicing Agreement referred to below, and (d) any credit enhancement mechanism associated with the Certificates, that it has requested.

3.    The Transferee: (a) is not an employee benefit plan or other plan subject to the prohibited transaction provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") (each, a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan within the meaning of the Department of Labor ("DOL") regulation at 29 C.F.R. § 2510.3-101 or (b) has provided the Securities Administrator  with an Opinion of Counsel on which the Trustee, the Depositor, the Master Servicer, the Securities Administrator and the Servicer may rely,

acceptable to and in form and substance satisfactory to the Securities Administrator to the effect that the purchase of Certificates is permissible under applicable law, will not constitute or result in any non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Trust Fund, the Trustee, the Depositor, the Master Servicer, the Securities Administrator or the Servicer to any obligation or liability (including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in the Pooling and Servicing Agreement.

In addition, the Transferee hereby certifies, represents and warrants to, and covenants with, the Depositor, the Trustee, the Securities Administrator, the Master Servicer and the Servicer that the Transferee will not transfer such Certificates to any Plan or person unless such Plan or person meets the requirements set forth in paragraph 3 above.

All capitalized terms used but not otherwise defined herein have the respective meanings assigned thereto in the Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp. as Depositor, Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer and HSBC Bank USA, National Association as Trustee, pursuant to which the Certificates were issued.

[TRANSFEREE]

By: _____

Name:

Title:

<u>ANNEX 1 TO EXHIBIT B-1</u>

<u>QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A</u>

[For Transferees Other Than Registered Investment Companies]

The undersigned hereby certifies as follows to [name of Transferor] (the "Transferor") and Wells Fargo Bank, N.A., as Securities Administrator, with respect to the asset backed pass-through certificates (the "Certificates") described in the Transferee Certificate to which this certification relates and to which this certification is an Annex:

1.     As indicated below, the undersigned is the President, Chief Financial Officer, Senior Vice President or other executive officer of the entity purchasing the Certificates (the "Transferee").

2.     In connection with purchases by the Transferee, the Transferee is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because (i) the Transferee owned and/or invested on a discretionary basis $_____[1] in securities (except for the excluded securities referred to below) as of the end of the Transferee's most recent fiscal year (such amount being calculated in accordance with Rule 144A) and (ii) the Transferee satisfies the criteria in the category marked below.

____     <u>Corporation, etc</u>. The Transferee is a corporation (other than a bank, savings and loan association or similar institution), Massachusetts or similar business trust, partnership, or any organization described in Section 501(c)(3) of the Internal Revenue Code of 1986.

____     <u>Bank</u>. The Transferee (a) is a national bank or banking institution organized under the laws of any State, territory or the District of Columbia, the business of which is substantially confined to banking and is supervised by the State or territorial banking commission or similar official or is a foreign bank or equivalent institution, and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements, <u>a copy of which is attached hereto</u>.

____     <u>Savings and Loan</u>. The Transferee (a) is a savings and loan association, building and loan association, cooperative bank, homestead association or similar institution, which is supervised and examined by a State or Federal authority having supervision over any such institutions or is a foreign savings and loan association or equivalent institution and (b) has an audited net worth of at least $25,000,000 as demonstrated in its latest annual financial statements, <u>a copy of which is attached hereto</u>.

---

[1]     Transferee must own and/or invest on a discretionary basis at least $100,000,000 in securities unless Transferee is a dealer, and, in that case, Transferee must own and/or invest on a discretionary basis at least $10,000,000 in securities.

___    <u>Broker-dealer</u>. The Transferee is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934.

___    <u>Insurance Company</u>. The Transferee is an insurance company whose primary and predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a State, territory or the District of Columbia.

___    <u>State or Local Plan</u>. The Transferee is a plan established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees.

___    <u>ERISA Plan</u>. The Transferee is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, as amended.

___    <u>Investment Advisor</u>  The Transferee is an investment advisor registered under the Investment Advisers Act of 1940.

3.      The term "<u>securities</u>" as used herein <u>does not include</u> (i) securities of issuers that are affiliated with the Transferee, (ii) securities that are part of an unsold allotment to or subscription by the Transferee, if the Transferee is a dealer, (iii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iv) bank deposit notes and certificates of deposit, (v) loan participations, (vi) repurchase agreements, (vii) securities owned but subject to a repurchase agreement and (viii) currency, interest rate and commodity swaps.

4.      For purposes of determining the aggregate amount of securities owned and/or invested on a discretionary basis by the Transferee, the Transferee used the cost of such securities to the Transferee and did not include any of the securities referred to in the preceding paragraph. Further, in determining such aggregate amount, the Transferee may have included securities owned by subsidiaries of the Transferee, but only if such subsidiaries are consolidated with the Transferee in its financial statements prepared in accordance with generally accepted accounting principles and if the investments of such subsidiaries are managed under the Transferee's direction. However, such securities were not included if the Transferee is a majority-owned, consolidated subsidiary of another enterprise and the Transferee is not itself a reporting company under the Securities Exchange Act of 1934.

5.      The Transferee acknowledges that it is familiar with Rule 144A and understands that the Transferor and other parties related to the Certificates are relying and will continue to rely on the statements made herein because one or more sales to the Transferee may be in reliance on Rule 144A.

___     ___     Will the Transferee be purchasing the Certificates
Yes      No      only for the Transferee's own account?

6.    If the answer to the foregoing question is "no", the Transferee agrees that, in connection with any purchase of securities sold to the Transferee for the account of a third party (including any separate account) in reliance on Rule 144A, the Transferee will only purchase for the account of a third party that at the time is a "qualified institutional buyer" within the meaning of Rule 144A. In addition, the Transferee agrees that the Transferee will not purchase securities for a third party unless the Transferee has obtained a current representation letter from such third party or taken other appropriate steps contemplated by Rule 144A to conclude that such third party independently meets the definition of "qualified institutional buyer" set forth in Rule 144A.

7.    The Transferee will notify each of the parties to which this certification is made of any changes in the information and conclusions herein. Until such notice is given, the Transferee's purchase of the Certificates will constitute a reaffirmation of this certification as of the date of such purchase. In addition, if the Transferee is a bank or savings and loan as provided above, the Transferee agrees that it will furnish to such parties updated annual financial statements promptly after they become available.

Dated:

_____
Print Name of Transferee


By:    _____
         Name:
         Title:

<u>ANNEX 2 TO EXHIBIT B-1</u>

<u>QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A</u>

[For Transferees That Are Registered Investment Companies]

      The undersigned hereby certifies as follows to [name of Transferor] (the "Transferor") and Wells Fargo Bank, N.A., as Securities Administrator, with respect to the asset backed pass-through certificates (the "Certificates") described in the Transferee Certificate to which this certification relates and to which this certification is an Annex:

      1.    As indicated below, the undersigned is the President, Chief Financial Officer or Senior Vice President of the entity purchasing the Certificates (the "Transferee") or, if the Transferee is a "qualified institutional buyer" as that term is defined in Rule 144A under the Securities Act of 1933 ("Rule 144A") because the Transferee is part of a Family of Investment Companies (as defined below), is such an officer of the investment adviser (the "Adviser").

      2.    In connection with purchases by the Transferee, the Transferee is a "qualified institutional buyer" as defined in Rule 144A because (i) the Transferee is an investment company registered under the Investment Company Act of 1940, and (ii) as marked below, the Transferee alone, or the Transferee's Family of Investment Companies, owned at least $100,000,000 in securities (other than the excluded securities referred to below) as of the end of the Transferee's most recent fiscal year. For purposes of determining the amount of securities owned by the Transferee or the Transferee's Family of Investment Companies, the cost of such securities was used.

    ____    The Transferee owned $_____ in securities (other than the excluded securities referred to below) as of the end of the Transferee's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

    ____    The Transferee is part of a Family of Investment Companies which owned in the aggregate $_____ in securities (other than the excluded securities referred to below) as of the end of the Transferee's most recent fiscal year (such amount being calculated in accordance with Rule 144A).

      3.    The term "<u>Family of Investment Companies</u>" as used herein means two or more registered investment companies (or series thereof) that have the same investment adviser or investment advisers that are affiliated (by virtue of being majority owned subsidiaries of the same parent or because one investment adviser is a majority owned subsidiary of the other).

      4.    The term "<u>securities</u>" as used herein does not include (i) securities of issuers that are affiliated with the Transferee or are part of the Transferee's Family of Investment Companies, (ii) securities issued or guaranteed by the U.S. or any instrumentality thereof, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi) securities owned but subject to a repurchase agreement and (vii) currency, interest rate and commodity swaps.

5.    The Transferee is familiar with Rule 144A and understands that the parties to which this certification is being made are relying and will continue to rely on the statements made herein because one or more sales to the Transferee will be in reliance on Rule 144A. In addition, the Transferee will only purchase for the Transferee's own account.

6.    The undersigned will notify the parties to which this certification is made of any changes in the information and conclusions herein.  Until such notice, the Transferee's purchase of the Certificates will constitute a reaffirmation of this certification by the undersigned as of the date of such purchase.

Dated:

_____

Print Name of Transferee or Advisor

By:  _____

    Name:
    Title:

IF AN ADVISER:

_____

Print Name of Transferee

## FORM OF TRANSFEREE REPRESENTATION LETTER

The undersigned hereby certifies on behalf of the purchaser named below (the "Purchaser") as follows:

1.    I am an executive officer of the Purchaser.

2.    The Purchaser is a "qualified institutional buyer", as defined in Rule 144A, ("Rule 144A") under the Securities Act of 1933, as amended.

3.    As of the date specified below (which is not earlier than the last day of the Purchaser's most recent fiscal year), the amount of "securities", computed for purposes of Rule 144A, owned and invested on a discretionary basis by the Purchaser was in excess of $100,000,000.

Name of Purchaser    _____

By: (Signature)    _____

Name of Signatory    _____

Title    _____

Date of this certificate    _____

Date of information provided in paragraph 3    _____

<u>EXHIBIT B-2</u>

FORM OF TRANSFEROR REPRESENTATION LETTER

_____, 20__

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attention: Corporate Trust STACS 2007-1

      Re:   SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1
            Asset Backed Pass-Through Certificates,
            [Class CE Certificates][Class P Certificates][Class R Certificates]

Ladies and Gentlemen:

      In connection with the transfer by _____ (the "Transferor") to _____ (the "Transferee") of the captioned asset backed pass-through certificates (the "Certificates"), the Transferor hereby certifies as follows:

      Neither the Seller nor anyone acting on its behalf has (a) offered, pledged, sold, disposed of or otherwise transferred any Certificate, any interest in any Certificate or any other similar security to any person in any manner, (b) has solicited any offer to buy or to accept a pledge, disposition or other transfer of any Certificate, any interest in any Certificate or any other similar security from any person in any manner, (c) has otherwise approached or negotiated with respect to any Certificate, any interest in any Certificate or any other similar security with any person in any manner, (d) has made any general solicitation by means of general advertising or in any other manner, or (e) has taken any other action, that (as to any of (a) through (e) above) would constitute a distribution of the Certificates under the Securities Act of 1933 (the "Act"), that would render the disposition of any Certificate a violation of Section 5 of the Act or any state securities law, or that would require registration or qualification pursuant thereto. The Seller will not act, in any manner set forth in the foregoing sentence with respect to any Certificate. The Seller has not and will not sell or otherwise transfer any of the Certificates, except in compliance with the provisions of the Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp. as Depositor, Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer and HSBC Bank USA, National Association as Trustee, pursuant to which the Certificates were issued.

      Very truly yours,

_____
(Transferor)

By:  _____
      Name:
      Title:

FORM OF TRANSFEREE LETTER


_____, 20__

Wells Fargo Bank, N.A.
Sixth Street and Marquette Avenue
Minneapolis, Minnesota 55479
Attention: Corporate Trust STACS 2007-1

> Re:    SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1
>         Asset Backed Pass-Through Certificates,
>         [Class CE Certificates][Class P Certificates][Class R Certificates]

Ladies and Gentlemen:

In connection with the transfer by _____ (the "Transferor") to _____ (the "Transferee") of the captioned asset backed pass-through certificates (the "Certificates"), the Transferee hereby certifies as follows:

1.    The Transferee understands that (a) the Certificates have not been and will not be registered or qualified under the Securities Act of 1933, as amended (the "Act") or any state securities law, (b) the ACE Securities Corp. (the "Depositor") is not required to so register or qualify the Certificates, (c) the Certificates may be resold only if registered and qualified pursuant to the provisions of the Act or any state securities law, or if an exemption from such registration and qualification is available, (d) the Pooling and Servicing Agreement contains restrictions regarding the transfer of the Certificates and (e) the Certificates will bear a legend to the foregoing effect.

2.    The Transferee is acquiring the Certificates for its own account for investment only and not with a view to or for sale in connection with any distribution thereof in any manner that would violate the Act or any applicable state securities laws.

3.    The Transferee is (a) a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters, and, in particular, in such matters related to securities similar to the Certificates, such that it is capable of evaluating the merits and risks of investment in the Certificates, (b) able to bear the economic risks of such an investment and (c) an "accredited investor" within the meaning of Rule 501(a) promulgated pursuant to the Act.

4.    The Transferee has been furnished with, and has had an opportunity to review (a) a copy of the Pooling and Servicing Agreement, dated as of April 1, 2007, among the Depositor, Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer and HSBC Bank USA, National Association as Trustee and (b) such other information concerning the Certificates, the Mortgage Loans and the Depositor as has been requested by the Transferee from the Depositor or the Transferor and is relevant to the Transferee's decision to purchase the

Certificates. The Transferee has had any questions arising from such review answered by the Depositor or the Transferor to the satisfaction of the Transferee.

5.      The Transferee has not and will not nor has it authorized or will it authorize any person to (a) offer, pledge, sell, dispose of or otherwise transfer any Certificate, any interest in any Certificate or any other similar security to any person in any manner, (b) solicit any offer to buy or to accept a pledge, disposition of other transfer of any Certificate, any interest in any Certificate or any other similar security from any person in any manner, (c) otherwise approach or negotiate with respect to any Certificate, any interest in any Certificate or any other similar security with any person in any manner, (d) make any general solicitation by means of general advertising or in any other manner or (e) take any other action, that (as to any of (a) through (e) above) would constitute a distribution of any Certificate under the Act, that would render the disposition of any Certificate a violation of Section 5 of the 1933 Act or any state securities law, or that would require registration or qualification pursuant thereto. The Transferee will not sell or otherwise transfer any of the Certificates, except in compliance with the provisions of the Pooling and Servicing Agreement.

6.      The Transferee: (a) is not an employee benefit plan or other plan subject to the prohibited transaction provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") (each, a "Plan"), or any other person (including an investment manager, a named fiduciary or a trustee of any Plan) acting, directly or indirectly, on behalf of or purchasing any Certificate with "plan assets" of any Plan within the meaning of the Department of Labor ("DOL") regulation at 29 C.F.R. § 2510.3-101 or (b) has provided the Securities Administrator with an Opinion of Counsel on which the Depositor, the Master Servicer, the Securities Administrator, the Trustee and the Servicer may rely, acceptable to and in form and substance satisfactory to the Securities Administrator to the effect that the purchase of Certificates is permissible under applicable law, will not constitute or result in any non-exempt prohibited transaction under ERISA or Section 4975 of the Code and will not subject the Trust Fund, the Trustee, the Master Servicer, the Securities Administrator, the Depositor or the Servicer to any obligation or liability (including obligations or liabilities under ERISA or Section 4975 of the Code) in addition to those undertaken in the Pooling and Servicing Agreement.

In addition, the Transferee hereby certifies, represents and warrants to, and covenants with, the Depositor, the Trustee, the Securities Administrator, the Master Servicer and the Servicer that the Transferee will not transfer such Certificates to any Plan or person unless such Plan or person meets the requirements set forth in paragraph 6 above.

Very truly yours,

By:     _____
Name:
Title:

EXHIBIT B-3

TRANSFER AFFIDAVIT AND AGREEMENT

STATE OF NEW YORK    )
                           )  ss.:
COUNTY OF NEW YORK   )

_____ being duly sworn, deposes, represents and warrants as follows:

1.      I am a _____ of _____ (the "Owner") a corporation duly organized and existing under the laws of _____, the record owner of SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 Asset Backed Pass-Through Certificates, Class R Certificates (the "Class R Certificates"), on behalf of whom I make this affidavit and agreement. Capitalized terms used but not defined herein have the respective meanings assigned thereto in the Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp. as Depositor, Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer and HSBC Bank USA, National Association as Trustee, pursuant to which the Class R Certificates were issued.

2.      The Owner (i) is and will be a "Permitted Transferee" as of _____. ____ and (ii) is acquiring the Class R Certificates for its own account or for the account of another Owner from which it has received an affidavit in substantially the same form as this affidavit. A "Permitted Transferee" is any person other than a "disqualified organization" or a possession of the United States.  For this purpose, a "disqualified organization" means the United States, any state or political subdivision thereof, any agency or instrumentality of any of the foregoing (other than an instrumentality all of the activities of which are subject to tax and, except for the Federal Home Loan Mortgage Corporation, a majority of whose board of directors is not selected by any such governmental entity) or any foreign government, international organization or any agency or instrumentality of such foreign government or organization, any real electric or telephone cooperative, or any organization (other than certain farmers' cooperatives) that is generally exempt from federal income tax unless such organization is subject to the tax on unrelated business taxable income.

3.      The Owner is aware (i) of the tax that would be imposed on transfers of the Class R Certificates to disqualified organizations under the Internal Revenue Code of 1986 that applies to all transfers of the Class R Certificates after April 31, 1988; (ii) that such tax would be on the transferor or, if such transfer is through an agent (which person includes a broker, nominee or middleman) for a non-Permitted Transferee, on the agent; (iii) that the person otherwise liable for the tax shall be relieved of liability for the tax if the transferee furnishes to such person an affidavit that the transferee is a Permitted Transferee and, at the time of transfer, such person does not have actual knowledge that the affidavit is false; and (iv)

that each of the Class R Certificates may be a "noneconomic residual interest" within the meaning of proposed Treasury regulations promulgated under the Code and that the transferor of a "noneconomic residual interest" will remain liable for any taxes due with respect to the income on such residual interest, unless no significant purpose of the transfer is to impede the assessment or collection of tax.

4.    The Owner is aware of the tax imposed on a "pass-through entity" holding the Class R Certificates if, at any time during the taxable year of the pass-through entity, a non-Permitted Transferee is the record holder of an interest in such entity. (For this purpose, a "pass-through entity" includes a regulated investment company, a real estate investment trust or common trust fund, a partnership, trust or estate, and certain cooperatives.)

5.    The Owner is aware that the Securities Administrator will not register the transfer of any Class R Certificate unless the transferee, or the transferee's agent, delivers to the Securities Administrator, among other things, an affidavit in substantially the same form as this affidavit. The Owner expressly agrees that it will not consummate any such transfer if it knows or believes that any of the representations contained in such affidavit and agreement are false.

6.    The Owner consents to any additional restrictions or arrangements that shall be deemed necessary upon advice of counsel to constitute a reasonable arrangement to ensure that the Class R Certificates will only be owned, directly or indirectly, by an Owner that is a Permitted Transferee.

7.    The Owner's taxpayer identification number is _____.

8.    The Owner has reviewed the restrictions set forth on the face of the Class R Certificates and the provisions of Section 6.02(d) of the Pooling and Servicing Agreement under which the Class R Certificates were issued (in particular, clauses (iii)(A) and (iii)(B) of Section 6.02(d) which authorize the Securities Administrator to deliver payments to a person other than the Owner and negotiate a mandatory sale by the Securities Administrator in the event that the Owner holds such Certificate in violation of Section 6.02(d)); and that the Owner expressly agrees to be bound by and to comply with such restrictions and provisions.

9.    The Owner is not acquiring and will not transfer the Class R Certificates in order to impede the assessment or collection of any tax.

10.    The Owner anticipates that it will, so long as it holds the Class R Certificates, have sufficient assets to pay any taxes owed by the holder of such Class R Certificates, and hereby represents to and for the benefit of the person from whom it acquired the Class R Certificates that the Owner intends to pay taxes associated with holding such Class R Certificates as they become due, fully understanding that it may incur tax liabilities in excess of any cash flows generated by the Class R Certificates.

11.     The Owner has no present knowledge that it may become insolvent or subject to a bankruptcy proceeding for so long as it holds the Class R Certificates.

12.     The Owner has no present knowledge or expectation that it will be unable to pay any United States taxes owed by it so long as any of the Certificates remain outstanding.

13.     The Owner is not acquiring the Class R Certificates with the intent to transfer the Class R Certificates to any person or entity that will not have sufficient assets to pay any taxes owed by the holder of such Class R Certificates, or that may become insolvent or subject to a bankruptcy proceeding, for so long as the Class R Certificates remain outstanding.

14.     The Owner will, in connection with any transfer that it makes of the Class R Certificates, obtain from its transferee the representations required by Section 6.02(d) of the Pooling and Servicing Agreement under which the Class R Certificate were issued and will not consummate any such transfer if it knows, or knows facts that should lead it to believe, that any such representations are false.

15.     The Owner will, in connection with any transfer that it makes of the Class R Certificates, deliver to the Securities Administrator an affidavit, which represents and warrants that it is not transferring the Class R Certificates to impede the assessment or collection of any tax and that it has no actual knowledge that the proposed transferee: (i) has insufficient assets to pay any taxes owed by such transferee as holder of the Class R Certificates; (ii) may become insolvent or subject to a bankruptcy proceeding for so long as the Class R Certificates remains outstanding; and (iii) is not a "Permitted Transferee".

16.     The Owner is a citizen or resident of the United States, a corporation, partnership or other entity created or organized in, or under the laws of, the United States or any political subdivision thereof, or an estate or trust whose income from sources without the United States may be included in gross income for United States federal income tax purposes regardless of its connection with the conduct of a trade or business within the United States.

17.     The Owner of the Class R Certificate, hereby agrees that in the event that the Trust Fund created by the Pooling and Servicing Agreement is terminated pursuant to Section 10.01 thereof, the undersigned shall assign and transfer to the Holders of the Class CE Certificates any amounts in excess of par received in connection with such termination. Accordingly, in the event of such termination, the Securities Administrator is hereby authorized to withhold any such amounts in excess of par and to pay such amounts directly to the Holders of the Class CE Certificates. This agreement shall bind and be enforceable against any successor, transferee or assigned of the undersigned in the Class R Certificate. In connection with any transfer of the Class R Certificate, the Owner shall obtain an agreement substantially similar to this clause from any subsequent owner.

IN WITNESS WHEREOF, the Owner has caused this instrument to be executed on its behalf, pursuant to the authority of its Board of Directors, by its [Vice] President, attested by its [Assistant] Secretary, this _____ day of _____, _____.

[OWNER]

By: _____

       Name:

       Title: [Vice] President


ATTEST:

By: _____

    Name:

    Title: [Assistant] Secretary


Personally appeared before me the above-named _____, known or proved to me to be the same person who executed the foregoing instrument and to be a [Vice] President of the Owner, and acknowledged to me that [he/she] executed the same as [his/her] free act and deed and the free act and deed of the Owner.

Subscribed and sworn before me this _____ day of _____, _____.



_____

Notary Public

County of _____

State of _____

My Commission expires:

## FORM OF TRANSFEROR AFFIDAVIT

STATE OF NEW YORK    )
                           )   ss.:
COUNTY OF NEW YORK    )

_____, being duly sworn, deposes, represents and warrants as follows:

1.    I am a _____ of _____ (the "Owner"), a corporation duly organized and existing under the laws of _____, on behalf of whom I make this affidavit.

2.    The Owner is not transferring the Class R Certificates (the "Residual Certificates") to impede the assessment or collection of any tax.

3.    The Owner has no actual knowledge that the Person that is the proposed transferee (the "Purchaser") of the Residual Certificates: (i) has insufficient assets to pay any taxes owed by such proposed transferee as holder of the Residual Certificates; (ii) may become insolvent or subject to a bankruptcy proceeding for so long as the Residual Certificates remain outstanding and (iii) is not a Permitted Transferee.

4.    The Owner understands that the Purchaser has delivered to the Securities Administrator a transfer affidavit and agreement in the form attached to the Pooling and Servicing Agreement as Exhibit B-3. The Owner does not know or believe that any representation contained therein is false.

5.    At the time of transfer, the Owner has conducted a reasonable investigation of the financial condition of the Purchaser as contemplated by Treasury Regulations Section 1.860E-1(c)(4)(i) and, as a result of that investigation, the Owner has determined that the Purchaser has historically paid its debts as they became due and has found no significant evidence to indicate that the Purchaser will not continue to pay its debts as they become due in the future. The Owner understands that the transfer of a Residual Certificate may not be respected for United States income tax purposes (and the Owner may continue to be liable for United States income taxes associated therewith) unless the Owner has conducted such an investigation.

6.    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Pooling and Servicing Agreement.

IN WITNESS WHEREOF, the Owner has caused this instrument to be executed on its behalf, pursuant to the authority of its Board of Directors, by its [Vice] President, attested by its [Assistant] Secretary, this _____ day of _____, _____.

[OWNER]

By:    _____
Name:
Title: [Vice] President

ATTEST:

By:    _____
Name:
Title: [Assistant] Secretary

Personally appeared before me the above-named _____, known or proved to me to be the same person who executed the foregoing instrument and to be a [Vice] President of the Owner, and acknowledged to me that [he/she] executed the same as [his/her] free act and deed and the free act and deed of the Owner.

Subscribed and sworn before me this _____ day of _____, _____.

_____
Notary Public

County of _____
State of _____

My Commission expires:

EXHIBIT C

BACK-UP CERTIFICATION

Re: _____ (the "Trust")

<u>Asset Backed Pass-Through Certificates, Series 2007-1</u>

I, [identify the certifying individual], certify to ACE Securities Corp. (the "Depositor"), HSBC Bank USA, National Association (the "Trustee") and Wells Fargo Bank, National Association (the "Master Servicer"), and their respective officers, directors and affiliates, and with the knowledge and intent that they will rely upon this certification, that:

(1)     I have reviewed the servicer compliance statement of the Servicer provided in accordance with Item 1123 of Regulation AB (the "Compliance Statement"), the report on assessment of the Servicer's compliance with the servicing criteria set forth in Item 1122(d) of Regulation AB (the "Servicing Criteria"), provided in accordance with Rules 13a-18 and 15d-18 under Securities Exchange Act of 1934, as amended (the "Exchange Act") and Item 1122 of Regulation AB (the "Servicing Assessment"), the registered public accounting firm's attestation report provided in accordance with Rules 13a-18 and 15d-18 under the Exchange Act and Section 1122(b) of Regulation AB (the "Attestation Report"), and all servicing reports, officer's certificates and other information relating to the servicing of the Mortgage Loans by the Servicer during 200[ ] that were delivered by the Servicer to the Master Servicer pursuant to the Agreement (collectively, the "Servicer Servicing Information");

(2)     Based on my knowledge, the Servicer Servicing Information, taken as a whole, does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in the light of the circumstances under which such statements were made, not misleading with respect to the period of time covered by the Servicer Servicing Information;

(3)     Based on my knowledge, all of the Servicer Servicing Information required to be provided by the Servicer under the Agreement has been provided to the Master Servicer;

(4)     I am responsible for reviewing the activities performed by the Servicer as servicer under the Agreement, and based on my knowledge and the compliance review conducted in preparing the Compliance Statement and except as disclosed in the Compliance Statement, the Servicing Assessment or the Attestation Report, the Servicer has fulfilled their obligations under the Agreement in all material respects; and

(5)     The Compliance Statement required to be delivered by the Servicer pursuant to the Agreement, and the Servicing Assessment and Attestation Report required to be provided by the Servicer and by any Subservicer or Subcontractor pursuant to the Agreement, have been provided to the Master Servicer.   Any material

instances of noncompliance described in such reports have been disclosed to the Master Servicer.  Any material instance of noncompliance with the Servicing Criteria has been disclosed in such reports.

Capitalized terms used and not otherwise defined herein have the meanings assigned thereto in the Pooling and Servicing Agreement (the "Agreement"), dated as of April 1, 2007, among ACE Securities Corp., GMAC Mortgage, LLC, Wells Fargo Bank, National Association and HSBC Bank USA, National Association.

Date: _____

_____

[Signature]

_____

[Title]

EXHIBIT D

FORM OF POWER OF ATTORNEY


RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO

GMAC Mortgage, LLC
100 Witmer Road
Horsham, Pennsylvania 19044
Attn: _____


LIMITED POWER OF ATTORNEY


KNOW ALL MEN BY THESE PRESENTS, that HSBC Bank USA, National Association, having its principal place of business at _____, as Trustee (the "Trustee") pursuant to that Pooling and Servicing Agreement among ACE Securities Corp. (the "Depositor"), Wells Fargo Bank, National Association, as Master Servicer and Securities Administrator, GMAC Mortgage, LLC as Servicer ("Servicer") and the Trustee, dated as of April 1, 2007 (the "Pooling and Servicing Agreement"), hereby constitutes and appoints the Servicer by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Pooling and Servicing Agreement for the purpose of performing all acts and executing all documents in the name of the Trustee as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust", respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which the Servicer is acting as servicer, all subject to the terms of the Pooling and Servicing Agreement.

This appointment shall apply to the following enumerated transactions only:

1.     The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recordings is for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued and said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured.

2.     The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this    section    shall    include,    without    limitation,    the    execution    of    partial

satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.    The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.    The completion of loan assumption agreements.

5.    The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.    The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.    The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.    With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

    a.    the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.    the preparation and issuance of statements of breach or non-performance;

    c.    the preparation and filing of notices of default and/or notices of sale;

    d.    the cancellation/rescission of notices of default and/or notices of sale;

    e.    the taking of a deed in lieu of foreclosure; and

    f.    the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.e., above.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

D-2

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

IN WITNESS WHEREOF, HSBC Bank USA, National Association as Trustee pursuant to that Pooling and Servicing Agreement among the Depositor, Wells Fargo Bank, National Association, GMAC Mortgage, LLC and the Trustee, dated as of April 1, 2007 (SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, Asset Backed Pass-Through Certificates), has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by _____ its duly elected and authorized Vice President this _____ day of _____, 200__.

_____
as Trustee for SunTrust Acquisition
Closed-End Seconds Trust, Series 2007-
1, Asset Backed Pass-Through
Certificates

By: _____

_____

STATE OF _____

COUNTY OF _____

On _____, 200__, before me, the undersigned, a Notary Public in and for said state, personally appeared _____, Vice President of _____ as Trustee for SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 Asset Backed Certificates, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed that same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

WITNESS my hand and official seal.
        (SEAL)

_____
Notary Public
My Commission Expires _____

EXHIBIT E

SERVICING CRITERIA

**Schedule 1122 (Pooling and Servicing Agreement)**

Assessments of Compliance and Attestation Reports Servicing Criteria[2]

| Reg. AB Item 1122(d) Servicing Criteria | Depositor | Seller | Servicer | Trustee | Custodian | Paying Agent | Master Servicer | Securities Administrator |
|---|---|---|---|---|---|---|---|---|
| (1)    General Servicing Considerations | | | | | | | | |
| (i)    monitoring performance or other triggers and events of default | | | X | | | | X | X |
| (ii)   monitoring performance of vendors of activities outsourced | | | X | | | | X | |
| (iii)  maintenance of back-up servicer for pool assets | | | | | | | | |
| (iv)   fidelity bond and E&O policies in effect | | | X | | | | X | |
| (2)    Cash Collection and Administration | | | | | | | | |
| (i)    timing of deposits to custodial account | | | X | | | X | X | X |
| (ii)   wire transfers to investors by authorized personnel | | | X | | | X | | X |
| (iii)  advances or guarantees made, reviewed and approved as required | | | X | | | | X | |
| (iv)   accounts maintained as required | | | X | | | X | X | X |
| (v)    accounts at federally insured depository institutions | | | X | | | X | X | X |

---

*    The descriptions of the Item 1122(d) servicing criteria use key words and phrases and are not verbatim recitations of the servicing criteria.  Refer to Regulation AB, Item 1122 for a full description of servicing criteria.

| Reg. AB Item 1122(d) Servicing Criteria | Depositor | Seller | Servicer | Trustee | Custodian | Paying Agent | Master Servicer | Securities Administrator |
|---|---|---|---|---|---|---|---|---|
| (vi)  unissued checks safeguarded | | | X | | | X | | X |
| (vii) monthly reconciliations of accounts | | | X | | | X | X | X |
| (3)      Investor Remittances and Reporting | | | | | | | | |
| (i)    investor reports | | | X | | | | X | X |
| (ii)   remittances | | | X | | | X | | X |
| (iii)  proper posting of distributions | | | X | | | X | | X |
| (iv)  reconciliation of remittances and payment statements | | | X | | | X | X | X |
| (4)      Pool Asset Administration | | | | | | | | |
| (i)    maintenance of pool collateral | | | X | | X | | | |
| (ii)   safeguarding of pool assets/documents | | | X | | X | | | |
| (iii)  additions, removals and substitutions of pool assets | X | | X | | | | | |
| (iv)  posting and allocation of pool asset payments to pool assets | | | X | | | | | |
| (v)   reconciliation of servicer records | | | X | | | | | |
| (vi)  modifications or other changes to terms of pool assets | | | X | | | | | |
| (vii) loss mitigation and recovery actions | | | X | | | | | |
| (viii) records regarding collection efforts | | | X | | | | | |

| Reg. AB Item 1122(d) Servicing Criteria | Depositor | Seller | Servicer | Trustee | Custodian | Paying Agent | Master Servicer | Securities Administrator |
|---|---|---|---|---|---|---|---|---|
| (ix)  adjustments to variable interest rates on pool assets | | | X | | | | | |
| (x)   matters relating to funds held in trust for obligors | | | X | | | | | |
| (xi)  payments made on behalf of obligors (such as for taxes or insurance) | | | X | | | | | |
| (xii) late payment penalties with respect to payments made on behalf of obligors | | | X | | | | | |
| (xiii) records with respect to payments made on behalf of obligors | | | X | | | | | |
| (xiv) recognition and recording of delinquencies, charge-offs and uncollectible accounts | | | X | | | | X | |
| (xv)  maintenance of external credit enhancement or other support | | | | | | | | X |

EXHIBIT F-1

MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

EXHIBIT F-2
ASSIGNMENT, ASSUMPTION & RECOGNITION AGREEMENT

EXHIBIT G

FORM 10-D, FORM 8-K AND FORM 10-K
REPORTING RESPONSIBILITY

As to each item described below, the entity indicated as the Responsible Party shall be primarily responsible for reporting the information to the party identified as responsible for preparing the Securities Exchange Act Reports pursuant to Section 5.06(a)(ii).

Under Item 1 of Form 10-D: a) items marked "monthly statement" are required to be included in the periodic Distribution Date statement under Section 5.02, provided by the Securities Administrator based on information received from the Master Servicer; and b) items marked "Form 10-D report" are required to be in the Form 10-D report but not the monthly statement, provided by the party indicated.  Information under all other Items of Form 10-D is to be included in the Form 10-D report.

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| 10-D | | Must be filed within 15 days of the distribution date for the asset-backed securities. | | | | | | | |
| | 1 | **Distribution and Pool Performance Information** | | | | | | | |
| | | *Item 1121(a) – Distribution and Pool Performance Information* | | | | | | | |
| | | (1) Any applicable record dates, accrual dates, determination dates for calculating distributions and actual distribution dates for the distribution period. | | | **X** (monthly statement) | | | | |
| | | (2) Cash flows received and the sources thereof for distributions, fees and expenses. | | | **X** (monthly statement) | | | | |
| | | (3) Calculated amounts | | | **X** | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| | | and distribution of the flow of funds for the period itemized by type and priority of payment, including: | | | **(monthly statement)** | | | | |
| | | (i) Fees or expenses accrued and paid, with an identification of the general purpose of such fees and the party receiving such fees or expenses. | | | **X** **(monthly statement)** | | | | |
| | | (ii) Payments accrued or paid with respect to enhancement or other support identified in Item 1114 of Regulation AB (such as insurance premiums or other enhancement maintenance fees), with an identification of the general purpose of such payments and the party receiving such payments. | | | **X** **(monthly statement)** | | | | |
| | | (iii) Principal, interest and other distributions accrued and paid on the asset-backed securities by type and by class or series and any principal | | | **X** **(monthly statement)** | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| | | or interest shortfalls or carryovers. | | | | | | | |
| | | (iv)    The amount of excess cash flow or excess spread and the disposition of excess cash flow. | | | **X**<br><br>**(monthly statement)** | | | | |
| | | (4)    Beginning and ending    principal balances of the asset-backed securities. | | | **X**<br><br>**(monthly statement)** | | | | |
| | | (5)    Interest rates applicable to the pool assets and the asset-backed securities, as applicable.    Consider providing interest rate information for pool assets in appropriate distributional groups or incremental ranges. | | | **X**<br><br>**(monthly statement)** | | | | |
| | | (6)    Beginning and ending balances of transaction accounts, such as reserve accounts, and material account activity during the period. | | | **X**<br><br>**(monthly statement)** | | | | |
| | | (7) Any amounts drawn on    any    credit enhancement or other support identified in Item    1114    of Regulation AB, as | | | **X**<br><br>**(monthly statement)** | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| | | applicable, and the amount of coverage remaining under any such enhancement, if known and applicable. | | | | | | | |
| | | (8) Number and amount of pool assets at the beginning and ending of each period, and updated pool composition information, such as weighted average coupon, weighted average remaining term, pool factors and prepayment amounts. | | | **X** (monthly statement) | | | Updated pool composition information fields to be as specified by Depositor from time to time | |
| | | (9) Delinquency and loss information for the period. | **X** | **X** | **X** (monthly statement) | | | | |
| | | In addition, describe any material changes to the information specified in Item 1100(b)(5) of Regulation AB regarding the pool assets. (methodology) | **X** | **X** | | | | | |
| | | (10) Information on the amount, terms and general purpose of any advances made or reimbursed during the | **X** | **X** | **X** (monthly statement) | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | period, including the general use of funds advanced and the general source of funds for reimbursements. | | | | | | | |
| | | (11) Any material modifications, extensions or waivers to pool asset terms, fees, penalties or payments during the distribution period or that have cumulatively become material over time. | **X** | **X** | **X**<br><br>**(monthly statement)** | | | | |
| | | (12) Material breaches of pool asset representations or warranties or transaction covenants. | **X** | **X** | | | | **X** | |
| | | (13) Information on ratio, coverage or other tests used for determining any early amortization, liquidation or other performance trigger and whether the trigger was met. | | | **X**<br><br>**(monthly statement)** | | | | |
| | | (14) Information regarding any new issuance of asset-backed securities backed by the same | **X** | **X** | **X** | | | | |

G-5

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | asset pool, any pool asset changes (other than in connection with a pool asset converting into cash in accordance with its terms), such as additions or removals in connection with a prefunding or revolving period and pool asset substitutions and repurchases (and purchase rates, if applicable), and cash flows available for future purchases, such as the balances of any prefunding or revolving accounts, if applicable. | | | | | | | |
| | | Disclose any material changes in the solicitation, credit-granting, underwriting, origination, acquisition or pool selection criteria or procedures, as applicable, used to originate, acquire or select the new pool assets. | | | | | | **X** | **X** |
| | | *Item 1121(b) – Pre-Funding or Revolving* | | | | | | | **X** |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | *Period Information*<br><br>Updated pool information as required under Item 1121(b). | | | | | | | |
| | 2 | **Legal Proceedings** | | | | | | | |
| | | Item 1117 – Legal proceedings pending against the following entities, or their respective property, that is material to Certificateholders, including proceedings known to be contemplated by governmental authorities: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | **X** |
| | | Depositor | | | | | | **X** | |
| | | Trustee | | | | | **X** | | |
| | | Issuing entity | | | | | | **X** | |
| | | Master Servicer, affiliated Servicers, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | **X** | **X** | | | | | |
| | | Securities Administrator | | | **X** | | | | |
| | | Originator of 20% or more of pool assets as of the Cut-off Date | | | | | | **X** | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| | | Custodian | | | | X | | | |
| | 3 | **Sales of Securities and Use of Proceeds** | | | | | | | |
| | | *Information from Item 2(a) of Part II of Form 10-Q:*<br><br>With respect to any sale of securities by the sponsor, depositor or issuing entity, that are backed by the same asset pool or are otherwise issued by the issuing entity, whether or not registered, provide the sales and use of proceeds information in Item 701 of Regulation S-K. Pricing information can be omitted if securities were not registered. | | | | | | X | |
| | 4 | **Defaults Upon Senior Securities** | | | | | | | |
| | | *Information from Item 3 of Part II of Form 10-Q:*<br><br>Report the occurrence of any Event of Default (after expiration of any | | | X | | X | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | grace period and provision of any required notice) | | | | | | | |
| | 5 | **Submission of Matters to a Vote of Security Holders** | | | | | | | |
| | | *Information from Item 4 of Part II of Form 10-Q* | | | **X** | | **X** | | |
| | 6 | **Significant Obligors of Pool Assets** | | | | | | | |
| | | *Item 1112(b) – Significant Obligor Financial Information\** | | | | | | **X** | **X** |
| | | \*This information need only be reported on the Form 10-D for the distribution period in which updated information is required pursuant to the Item. | | | | | | | |
| | 7 | **Significant Enhancement Provider Information** | | | | | | | |
| | | *Item 1114(b)(2) – Credit Enhancement Provider Financial Information\** | | | | | | | |
| | | Determining applicable disclosure threshold | | | **X** | | | | |
| | | Requesting required financial | | | **X** | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | information or effecting incorporation by reference | | | | | | | |
| | | *Item 1115(b) – Derivative Counterparty Financial Information\** | | | | | | | |
| | | Determining current maximum probable exposure | | | | | | **X** | |
| | | Determining current significance percentage | | | **X** | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | **X** | | | | |
| | | *This information need only be reported on the Form 10-D for the distribution period in which updated information is required pursuant to the Items. | | | | | | | |
| | 8 | **Other Information** | | | | | | | |
| | | *Disclose any information required to be reported on Form 8-K during the period covered by the Form* | The Responsible Party for the applicable Form 8-K item as indicated below. | | | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
| | | *10-D but not reported* | | | | | | | |
| | 9 | **Exhibits** | | | | | | | |
| | | Distribution report | | | <u>X</u> | | | | |
| | | *Exhibits required by Item 601 of Regulation S-K, such as material agreements* | | | | | | <u>X</u> | |
| **8-K** | | <u>Must be filed within four business days of an event reportable on Form 8-K.</u> | | | | | | | |
| | 1.01 | **Entry into a Material Definitive Agreement** | | | | | | | |
| | | Disclosure is required regarding entry into or amendment of any definitive agreement that is material to the securitization, even if depositor is not a party.<br><br>Examples: servicing agreement, custodial agreement.<br><br>Note: disclosure not required as to definitive agreements that are fully disclosed in the prospectus | <u>X</u> | <u>X</u> | <u>X</u> (if Master Servicer is not a party) | | <u>X</u> (if Master Servicer is not a party) | <u>X</u> (if Master Servicer is not a party) | <u>X</u> (if Master Servicer is not a party) |
| | 1.02 | **Termination of a Material Definitive Agreement** | <u>X</u> | <u>X</u> | <u>X</u> (if Master Servicer is not a party) | | <u>X</u> (if Master Servicer is not a party) | <u>X</u> (if Master Servicer is not a party) | <u>X</u> (if Master Servicer is not a party) |
| | | Disclosure is required regarding termination | | | | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | of any definitive agreement that is material to the securitization (other than expiration in accordance with its terms), even if depositor is not a party.<br><br>Examples: servicing agreement, custodial agreement. | | | | | | | |
| | 1.03 | **Bankruptcy or Receivership** | | | | | | | |
| | | Disclosure is required regarding the bankruptcy or receivership, if known to the Master Servicer, with respect to any of the following:<br><br>Sponsor (Seller), Depositor, Master Servicer, affiliated Servicers, other Servicer servicing 20% or more of pool assets at time of report, other material servicers, Certificate Administrator, Trustee, significant obligor, | X | X | X | X | X | X | X |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | credit enhancer (10% or more), derivatives counterparty, Custodian | | | | | | | |
| | 2.04 | **Triggering Events that Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement** | | | | | | | |
| | | Includes an early amortization, performance trigger or other event, including event of default, that would materially alter the payment priority/distribution of cash flows/amortization schedule.<br><br>Disclosure will be made of events other than waterfall triggers which are disclosed in the monthly statement | | <u>X</u> | <u>X</u> | | | | |
| | 3.03 | **Material Modification to Rights of Security Holders** | | | | | | | |
| | | Disclosure is required of any material modification to | | <u>X</u> | <u>X</u> | | <u>X</u> | <u>X</u> | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | documents defining the rights of Certificateholders, including the Pooling and Servicing Agreement | | | | | | | |
| | 5.03 | **Amendments to Articles of Incorporation or Bylaws; Change in Fiscal Year** | | | | | | | |
| | | Disclosure is required of any amendment "to the governing documents of the issuing entity" | | | | | <u>X</u> | <u>X</u> | |
| | 5.06 | **Change in Shell Company Status** | | | | | | | |
| | | [Not applicable to ABS issuers] | | | | | | <u>X</u> | |
| | 6.01 | **ABS Informational and Computational Material** | | | | | | | |
| | | [Not included in reports to be filed under Section 3.18] | | | | | | <u>X</u> | |
| | 6.02 | **Change of Servicer or Trustee** | | | | | | | |
| | | Requires disclosure of any removal, replacement, substitution or addition of any master servicer, affiliated servicer, | <u>X</u> | <u>X</u> | <u>X</u> | | <u>X</u> | <u>X</u> | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | other servicer servicing 10% or more of pool assets at time of report, other material servicers, certificate administrator or trustee. | | | | | | | |
| | | Reg AB disclosure about any new servicer (from entity appointing new servicer) or trustee (from Depositor) is also required. | **X** | | | | **X** | **X** | |
| | 6.03 | **Change in Credit Enhancement or Other External Support** | | | | | | | |
| | | Covers termination of any enhancement in manner other than by its terms, the addition of an enhancement, or a material change in the enhancement provided. Applies to external credit enhancements as well as derivatives. | | | **X** | | **X** | **X** | |
| | | Reg AB disclosure about any new enhancement provider is also required. | | | | | | **X** | |
| | 6.04 | **Failure to Make a Required Distribution** | | | **X** | | **X** | | |
| | 6.05 | **Securities Act** | | | | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | **Updating Disclosure** | | | | | | | |
| | | If any material pool characteristic differs by 5% or more at the time of issuance of the securities from the description in the final prospectus, provide updated Reg AB disclosure about the actual asset pool. | | | | | | X | |
| | | If there are any new servicers or originators required to be disclosed under Regulation AB as a result of the foregoing, provide the information called for in Items 1108 and 1110 respectively. | | | | | | X | |
| | 7.01 | **Regulation FD Disclosure** | X | X | X | | X | X | X |
| | 8.01 | **Other Events** | | | | | | | |
| | | Any event, with respect to which information is not otherwise called for in Form 8-K, that the registrant deems of importance to security holders. | | | | | | X | |
| | 9.01 | **Financial Statements and Exhibits** | The Responsible Party applicable to reportable event. | | | | | | |
| **10-K** | | Must be filed within 90 days of the fiscal year end for the registrant. | | | | | | | |
| | 9B | **Other Information** | | | | | | | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | Disclose any information required to be reported on Form 8-K during the fourth quarter covered by the Form 10-K but not reported | The Responsible Party for the applicable Form 8-K as indicated above. | | | | | | |
| | 15 | **Exhibits and Financial Statement Schedules** | | | | | | | |
| | | *Item 1112(b) – Significant Obligor Financial Information* | | | | | | **X** | **X** |
| | | *Item 1114(b)(2) – Credit Enhancement Provider Financial Information* | | | | | | | |
| | | Determining applicable disclosure threshold | | | **X** | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | **X** | | | | |
| | | *Item 1115(b) – Derivative Counterparty Financial Information* | | | | | | | |
| | | Determining current maximum probable exposure | | | | | | **X** | |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|---|---|---|---|---|---|---|---|---|---|
| | | Determining current significance percentage | | | X | | | | |
| | | Requesting required financial information or effecting incorporation by reference | | | X | | | | |
| | | Item 1117 – Legal proceedings pending against the following entities, or their respective property, that is material to Certificateholders, including proceedings known to be contemplated by governmental authorities: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | X |
| | | Depositor | | | | | | X | |
| | | Trustee | | | | | X | | |
| | | Issuing entity | | | | | | X | |
| | | Master Servicer, affiliated Servicers, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | X | X | | | | | |
| | | Securities Administrator | | | X | | | | |
| | | Originator of 20% or | | | | | | X | X |

| **Form** | **Item** | **Description** | **Servicer** | **Master Servicer** | **Securities Administrator** | **Custodian** | **Trustee** | **Depositor** | **Sponsor** |
|---|---|---|---|---|---|---|---|---|---|
| | | more of pool assets as of the Cut-off Date | | | | | | | |
| | | Custodian | | | | **X** | | | |
| | | Item 1119 – Affiliations and relationships between the following entities, or their respective affiliates, that are material to Certificateholders: | | | | | | | |
| | | Sponsor (Seller) | | | | | | | **X** |
| | | Depositor | | | | | | **X** | |
| | | Trustee | | | | | **X** (with respect to 1119(a) affiliations only) | | |
| | | Master Servicer, affiliated Servicers, other Servicer servicing 20% or more of pool assets at time of report, other material servicers | **X** | **X** | | | | | |
| | | Securities Administrator | | | **X** | | | | |
| | | Originator | | | | | | **X** | **X** |
| | | Custodian | | | | **X** (with respect to affiliations only) | | | |
| | | Credit Enhancer/Support Provider | | | | | | **X** | **X** |

| Form | Item | Description | Servicer | Master Servicer | Securities Administrator | Custodian | Trustee | Depositor | Sponsor |
|------|------|-------------|----------|-----------------|--------------------------|-----------|---------|-----------|---------|
|  |  | Significant Obligor |  |  |  |  |  | **X** | **X** |
|  |  | *Item 1122 – Assessment of Compliance with Servicing Criteria* | **X** | **X** | **X** | **X** |  |  |  |
|  |  | *Item 1123 – Servicer Compliance Statement* | **X** | **X** |  |  |  |  |  |

EXHIBIT H

ADDITIONAL DISCLOSURE NOTIFICATION

**\*\*SEND VIA FAX TO [XXX-XXX-XXXX] AND VIA EMAIL TO [_____]
AND VIA OVERNIGHT MAIL TO THE ADDRESS IMMEDIATELY BELOW**

Wells Fargo Bank, N.A. as [Securities Administrator]
9062 Old Annapolis Road
Columbia, Maryland 21045
Fax: (410) 715-2380
E-mail:  cts.sec.notifications@wellsfargo.com
Attn: Corporate Trust Services – STACS 2007-1 – SEC REPORT PROCESSING

ACE Securities Corp.
6525 Morrison Boulevard, Suite 318, Charlotte
North Carolina 28211
Attention: Juliana Johnson
Fax: (704) 365-1362
Attn: STACS 2007-1

RE: \*\*Additional Form [10-D][10-K][8-K] Disclosure\*\* Required

Ladies and Gentlemen:

In accordance with Section [\_\_] of the Pooling and Servicing Agreement, dated as of April 1, 2007 (the "Pooling and Servicing Agreement"), among ACE Securities Corp., as depositor, GMAC Mortgage, LLC, as servicer, Wells Fargo, National Association, as master servicer and as securities administrator, and HSBC Bank USA, National Association, as trustee, the undersigned, as [_____] hereby notifies you that certain events have come to our attention that [will][may] need to be disclosed on Form [10-D][10-K][8-K].

Description of Additional Form [10-D][10-K][8-K] Disclosure:


List of any Attachments hereto to be included in the Additional Form [10-D][10-K][8-K] Disclosure:

Any inquiries related to this notification should be directed to [_____], phone number [_____]; email address [_____].


[NAME OF PARTY]
As [role]

By:_____
Name:
Title:

EXHIBIT I

SWAP AGREEMENT

EXHIBIT J

FINANCIAL GUARANTY INSURANCE POLICY

SCHEDULE 1

MORTGAGE LOAN SCHEDULE

[PROVIDED UPON REQUEST]

SCHEDULE 2

PREPAYMENT CHARGE SCHEDULE

[PROVIDED UPON REQUEST]

SCHEDULE 3

SERVICING PERFORMANCE STANDARDS

| Customer Service | Phone Service Levels, greater than 15,000 loans | % of calls answered within XX seconds | none |
|---|---|---|---|
| Customer Service | Blockage | Blocked calls as a percent of all calls | None |
| Customer Service | Abandon | Abandoned calls as a percent of all calls | None |
| Collections | Outbound Call Starts | First delinquency day for contact | Day 5 |
| Collections | Outbound Call Attempts | # of attempts in 30 day delinquency cycle | 12 to 15 |
| Collections | Outbound Penetration Rate | % of loans with attempted from eligibility date | 95% within 5 days of eligibility date |
| Collections | Breach Letter Expiration Notice | % sent by x day of delinquency | 95% sent 30 days after breach expiration |
| Loss Mitigation | Solicitation Attempts | # of Solicitation Attempts per month, commencing on x | 2 calling attempts per month after foreclosure referral |
| Loss Mitigation | Equity Evaluation | % of completed evaluations by Day 120 | 90% by the 120th day of default |

SCHEDULE 4

STANDARD FILE LAYOUT- DELINQUENCY REPORTING

## Exhibit: Standard File Layout – Delinquency Reporting

| Column/Header Name | Description | Decimal | Format Comment |
|---|---|---|---|
| SERVICER_LOAN_NBR | A unique number assigned to a loan by the Servicer.  This may be different than the LOAN_NBR | | |
| LOAN_NBR | A unique identifier assigned to each loan by the originator. | | |
| CLIENT_NBR | Servicer Client Number | | |
| SERV_INVESTOR_NBR | Contains a unique number as assigned by an external servicer to identify a group of loans in their system. | | |
| BORROWER_FIRST_NAME | First Name of the Borrower. | | |
| BORROWER_LAST_NAME | Last name of the borrower. | | |
| PROP_ADDRESS | Street Name and Number of Property | | |
| PROP_STATE | The state where the  property located. | | |
| PROP_ZIP | Zip code where the property is located. | | |
| BORR_NEXT_PAY_DUE_DATE | The date that the borrower's next payment is due to the servicer at the end of processing cycle, as reported by Servicer. | | MM/DD/YYYY |
| LOAN_TYPE | Loan Type (i.e. FHA, VA, Conv) | | |
| BANKRUPTCY_FILED_DATE | The date a particular bankruptcy claim was filed. | | MM/DD/YYYY |
| BANKRUPTCY_CHAPTER_CODE | The chapter under which the bankruptcy was filed. | | |
| BANKRUPTCY_CASE_NBR | The case number assigned by the court to the bankruptcy filing. | | |
| POST_PETITION_DUE_DATE | The payment due date once the bankruptcy has been approved by the courts | | MM/DD/YYYY |
| BANKRUPTCY_DCHRG_DISM_DATE | The Date The Loan Is Removed From Bankruptcy. Either by Dismissal, Discharged and/or a Motion For Relief Was Granted. | | MM/DD/YYYY |
| LOSS_MIT_APPR_DATE | The Date The Loss Mitigation Was Approved By The Servicer | | MM/DD/YYYY |
| LOSS_MIT_TYPE | The Type Of Loss Mitigation Approved For A Loan Such As; | | |
| LOSS_MIT_EST_COMP_DATE | The Date The Loss Mitigation /Plan Is Scheduled To End/Close | | MM/DD/YYYY |
| LOSS_MIT_ACT_COMP_DATE | The Date The Loss Mitigation Is Actually Completed | | MM/DD/YYYY |
| FRCLSR_APPROVED_DATE | The date DA Admin sends a letter to the servicer with instructions to begin foreclosure proceedings. | | MM/DD/YYYY |
| ATTORNEY_REFERRAL_DATE | Date File Was Referred To Attorney to Pursue Foreclosure | | MM/DD/YYYY |
| FIRST_LEGAL_DATE | Notice of 1st legal filed by an Attorney in a Foreclosure Action | | MM/DD/YYYY |
| FRCLSR_SALE_EXPECTED_DATE | The date by which a foreclosure sale is expected to occur. | | MM/DD/YYYY |
| FRCLSR_SALE_DATE | The actual date of the foreclosure sale. | | MM/DD/YYYY |
| FRCLSR_SALE_AMT | The amount a property sold for at the foreclosure sale. | 2 | No commas(,) or dollar signs ($) |
| EVICTION_START_DATE | The date the servicer initiates eviction of the borrower. | | MM/DD/YYYY |
| EVICTION_COMPLETED_DATE | The date the court revokes legal possession of the property from the borrower. | | MM/DD/YYYY |
| LIST_PRICE | The price at which an REO property is marketed. | 2 | No commas(,) or dollar signs ($) |
| LIST_DATE | The date an REO property is listed at a particular price. | | MM/DD/YYYY |

| Column/Header Name | Description | Decimal | Format Comment |
|---|---|---|---|
| OFFER_AMT | The dollar value of an offer for an REO property. | 2 | No commas(,) or dollar signs ($) |
| OFFER_DATE_TIME | The date an offer is received by DA Admin or by the Servicer. | | MM/DD/YYYY |
| REO_CLOSING_DATE | The date the REO sale of the property is scheduled to close. | | MM/DD/YYYY |
| REO_ACTUAL_CLOSING_DATE | Actual Date Of REO Sale | | MM/DD/YYYY |
| OCCUPANT_CODE | Classification of how the property is occupied. | | |
| PROP_CONDITION_CODE | A code that indicates the condition of the property. | | |
| PROP_INSPECTION_DATE | The date a  property inspection is performed. | | MM/DD/YYYY |
| APPRAISAL_DATE | The date the appraisal was done. | | MM/DD/YYYY |
| CURR_PROP_VAL | The current "as is" value of the property based on brokers price opinion or appraisal. | 2 | |
| REPAIRED_PROP_VAL | The amount the property would be worth if repairs are completed pursuant to a broker's price opinion or appraisal. | 2 | |
| **If applicable:** | | | |
| DELINQ_STATUS_CODE | FNMA Code Describing Status of Loan | | |
| DELINQ_REASON_CODE | The circumstances which caused a borrower to stop paying on a loan.   Code indicates the reason why the loan is in default for this cycle. | | |
| MI_CLAIM_FILED_DATE | Date Mortgage Insurance Claim Was Filed With Mortgage Insurance Company. | | MM/DD/YYYY |
| MI_CLAIM_AMT | Amount of Mortgage Insurance Claim Filed | | No commas(,) or dollar signs ($) |
| MI_CLAIM_PAID_DATE | Date Mortgage Insurance Company Disbursed Claim Payment | | MM/DD/YYYY |
| MI_CLAIM_AMT_PAID | Amount Mortgage Insurance Company Paid On Claim | 2 | No commas(,) or dollar signs ($) |
| POOL_CLAIM_FILED_DATE | Date Claim Was Filed With Pool Insurance Company | | MM/DD/YYYY |
| POOL_CLAIM_AMT | Amount of Claim Filed With Pool Insurance Company | 2 | No commas(,) or dollar signs ($) |
| POOL_CLAIM_PAID_DATE | Date Claim Was Settled and The Check Was Issued By The Pool Insurer | | MM/DD/YYYY |
| POOL_CLAIM_AMT_PAID | Amount Paid On Claim By Pool Insurance Company | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_A_CLAIM_FILED_DATE | Date FHA Part A Claim Was Filed With HUD | | MM/DD/YYYY |
| FHA_PART_A_CLAIM_AMT | Amount of FHA Part A Claim Filed | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_A_CLAIM_PAID_DATE | Date HUD Disbursed Part A Claim Payment | | MM/DD/YYYY |
| FHA_PART_A_CLAIM_PAID_AMT | Amount HUD Paid on Part A Claim | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_B_CLAIM_FILED_DATE | Date FHA Part B Claim Was Filed With HUD | | MM/DD/YYYY |
| FHA_PART_B_CLAIM_AMT | Amount of FHA Part B Claim Filed | 2 | No commas(,) or dollar signs ($) |
| FHA_PART_B_CLAIM_PAID_DATE | Date HUD Disbursed Part B Claim Payment | | MM/DD/YYYY |
| FHA_PART_B_CLAIM_PAID_AMT | Amount HUD Paid on Part B Claim | 2 | No commas(,) or dollar signs ($) |
| VA_CLAIM_FILED_DATE | Date VA Claim Was Filed With the Veterans Admin | | MM/DD/YYYY |
| VA_CLAIM_PAID_DATE | Date Veterans Admin. Disbursed VA Claim Payment | | MM/DD/YYYY |
| VA_CLAIM_PAID_AMT | Amount Veterans Admin. Paid on VA Claim | 2 | No commas(,) or dollar signs ($) |

## Exhibit 2: Standard File Codes – Delinquency Reporting

The **Loss Mit Type** field should show the approved Loss Mitigation Code as follows:
- ASUM- Approved Assumption
- BAP- Borrower Assistance Program
- CO- Charge Off
- DIL- Deed-in-Lieu
- FFA- Formal Forbearance Agreement
- MOD- Loan Modification
- PRE- Pre-Sale
- SS- Short Sale
- MISC- Anything else approved by the PMI or Pool Insurer

**NOTE:** Wells Fargo Bank will accept alternative Loss Mitigation Types to those above, provided that they are consistent with industry standards. If Loss Mitigation Types other than those above are used, the Servicer must supply Wells Fargo Bank with a description of each of the Loss Mitigation Types prior to sending the file.

The **Occupant Code** field should show the current status of the property code as follows:
- Mortgagor
- Tenant
- Unknown
- Vacant

The **Property Condition** field should show the last reported condition of the property as follows:
- Damaged
- Excellent
- Fair
- Gone
- Good
- Poor
- Special Hazard
- Unknown

## Exhibit 2: Standard File Codes – Delinquency Reporting, *Continued*

The **FNMA Delinquent Reason Code** field should show the Reason for Delinquency as follows:

| Delinquency Code | Delinquency Description |
|---|---|
| 001 | FNMA-Death of principal mortgagor |
| 002 | FNMA-Illness of principal mortgagor |
| 003 | FNMA-Illness of mortgagor's family member |
| 004 | FNMA-Death of mortgagor's family member |
| 005 | FNMA-Marital difficulties |
| 006 | FNMA-Curtailment of income |
| 007 | FNMA-Excessive Obligation |
| 008 | FNMA-Abandonment of property |
| 009 | FNMA-Distant employee transfer |
| 011 | FNMA-Property problem |
| 012 | FNMA-Inability to sell property |
| 013 | FNMA-Inability to rent property |
| 014 | FNMA-Military Service |
| 015 | FNMA-Other |
| 016 | FNMA-Unemployment |
| 017 | FNMA-Business failure |
| 019 | FNMA-Casualty loss |
| 022 | FNMA-Energy environment costs |
| 023 | FNMA-Servicing problems |
| 026 | FNMA-Payment adjustment |
| 027 | FNMA-Payment dispute |
| 029 | FNMA-Transfer of ownership pending |
| 030 | FNMA-Fraud |
| 031 | FNMA-Unable to contact borrower |
| INC | FNMA-Incarceration |

## Exhibit 2: Standard File Codes – Delinquency Reporting, *Continued*

The **FNMA Delinquent Status Code** field should show the Status of Default as follows:

| Status Code | Status Description |
|---|---|
| 09 | Forbearance |
| 17 | Pre-foreclosure Sale Closing Plan Accepted |
| 24 | Government Seizure |
| 26 | Refinance |
| 27 | Assumption |
| 28 | Modification |
| 29 | Charge-Off |
| 30 | Third Party Sale |
| 31 | Probate |
| 32 | Military Indulgence |
| 43 | Foreclosure Started |
| 44 | Deed-in-Lieu Started |
| 49 | Assignment Completed |
| 61 | Second Lien Considerations |
| 62 | Veteran's Affairs-No Bid |
| 63 | Veteran's Affairs-Refund |
| 64 | Veteran's Affairs-Buydown |
| 65 | Chapter 7 Bankruptcy |
| 66 | Chapter 11 Bankruptcy |
| 67 | Chapter 13 Bankruptcy |

## Exhibit   : Calculation of Realized Loss/Gain Form 332– Instruction Sheet

**NOTE:  Do not net or combine items.  Show all expenses individually and all credits as separate line items.   Claim packages are due on the remittance report date.   Late submissions may result in claims not being passed until the following month.**

1.

2.    The numbers on the 332 form correspond with the numbers listed below.

**Liquidation and Acquisition Expenses:**

1.    The Actual Unpaid Principal Balance of the Mortgage Loan.  For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

2.    The Total Interest Due less the aggregate amount of servicing fee that would have been earned if all delinquent payments had been made as agreed. For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

3.    Accrued Servicing Fees based upon the Scheduled Principal Balance of the Mortgage Loan as calculated on a monthly basis. For documentation, an Amortization Schedule from date of default through liquidation breaking out the net interest and servicing fees advanced is required.

4-12.   Complete as applicable.  Required documentation:

    *  For taxes and insurance advances – see page 2 of 332 form - breakdown required showing period

      of coverage, base tax, interest, penalty.  Advances prior to default require evidence of servicer efforts to recover advances.

     *  For escrow advances - complete payment history

       (to calculate advances from last positive escrow balance forward)

    *  Other expenses -  copies of corporate advance history showing all payments

    *  REO repairs > $1500 require explanation

    *  REO repairs >$3000 require evidence of at least 2 bids.

    *  Short Sale or Charge Off require P&L supporting the decision and WFB's approved Officer Certificate

    *  Unusual or extraordinary items may require further documentation.

13.    The total of lines 1 through 12.

**3.    Credits:**

14-21.   Complete as applicable.  Required documentation:

    * Copy of the HUD 1 from the REO sale.  If a 3rd Party Sale, bid instructions and Escrow Agent / Attorney

     Letter of Proceeds Breakdown.

    *  Copy of EOB for any MI or gov't guarantee

\*  All other credits need to be clearly defined on the 332 form

22.    The total of lines 14 through 21.

<u>Please Note:</u>    For HUD/VA loans, use line (18a) for Part A/Initial proceeds and line (18b) for Part B/Supplemental proceeds.

**<u>Total Realized Loss (or Amount of Any Gain)</u>**

23.    The total derived from subtracting line 22 from 13.  If the amount represents a realized gain, show the amount in parenthesis (   ).

## Exhibit 3A: Calculation of Realized Loss/Gain Form 332

Prepared by: _____         Date: _____

Phone: _____    Email Address:_____

| Servicer Loan No. | Servicer Name | Servicer Address |
|---|---|---|
| | | |

**WELLS FARGO BANK, N.A. Loan No.**_____

Borrower's Name: _____

Property Address: _____

**Liquidation Type:  REO Sale          3rd Party Sale          Short Sale      Charge Off**

**Was this loan granted a Bankruptcy deficiency or cramdown          Yes        No**
If "Yes", provide deficiency or cramdown amount _____

**Liquidation and Acquisition Expenses:**

| | | |
|---|---|---|
| (1)  Actual Unpaid Principal Balance of Mortgage Loan | $ _____ | (1) |
| (2)  Interest accrued at Net Rate | _____ | (2) |
| (3)  Accrued Servicing Fees | _____ | (3) |
| (4)  Attorney's Fees | _____ | (4) |
| (5)  Taxes (see page 2) | _____ | (5) |
| (6)  Property Maintenance | _____ | (6) |
| (7)  MI/Hazard Insurance Premiums (see page 2) | _____ | (7) |
| (8)  Utility Expenses | _____ | (8) |
| (9)  Appraisal/BPO | _____ | (9) |
| (10) Property Inspections | _____ | (10) |
| (11) FC Costs/Other Legal Expenses | _____ | (11) |
| (12) Other (itemize) | _____ | (12) |
|     Cash for Keys_____ | _____ | (12) |
|     HOA/Condo Fees_____ | _____ | (12) |
|     _____ | _____ | (12) |
| **Total Expenses** | $ _____ | (13) |

**Credits:**

| | | |
|---|---|---|
| (14) Escrow Balance | $ _____ | (14) |
| (15) HIP Refund | _____ | (15) |
| (16) Rental Receipts | _____ | (16) |
| (17) Hazard Loss Proceeds | _____ | (17) |
| (18) Primary Mortgage Insurance / Gov't Insurance HUD Part A | _____ | (18a) |
| HUD Part B | _____ | (18b) |
| (19) Pool Insurance Proceeds | _____ | (19) |

(20) Proceeds from Sale of Acquired Property       _____     (20)

(21) Other (itemize)       _____     (21)

_____       _____     (21)

**Total Credits**       $_____     (22)

**Total Realized Loss (or Amount of Gain)**       $_____     (23)

## Escrow Disbursement Detail

| Type (Tax /Ins.) | Date Paid | Period of Coverage | Total Paid | Base Amount | Penalties | Interest |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

SCHEDULE 5

STANDARD FILE LAYOUT- MASTER SERVICING

**Standard  File Layout - Master Servicing**

| Column Name | Description | Decimal | Format Comment | Max Size |
|---|---|---|---|---|
| SER_INVESTOR_NBR | A value assigned by the Servicer to define a group of loans. | | Text up to 10 digits | 20 |
| LOAN_NBR | A unique identifier assigned to each loan by the investor. | | Text up to 10 digits | 10 |
| SERVICER_LOAN_NBR | A unique number assigned to a loan by the Servicer.  This may be different than the LOAN_NBR. | | Text up to 10 digits | 10 |
| BORROWER_NAME | The borrower name as received in the file.  It is not separated by first and last name. | | Maximum length of 30 (Last, First) | 30 |
| SCHED_PAY_AMT | Scheduled monthly principal and scheduled interest payment that a borrower is expected to pay, P&I constant. | 2 | No commas(,) or dollar signs ($) | 11 |
| NOTE_INT_RATE | The loan interest rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| NET_INT_RATE | The loan gross interest rate less the service fee rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| SERV_FEE_RATE | The servicer's fee rate for a loan as reported by the Servicer. | 4 | Max length of 6 | 6 |
| SERV_FEE_AMT | The servicer's fee amount for a loan as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| NEW_PAY_AMT | The new loan payment amount as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| NEW_LOAN_RATE | The new loan rate as reported by the Servicer. | 4 | Max length of 6 | 6 |
| ARM_INDEX_RATE | The index the Servicer is using to calculate a forecasted rate. | 4 | Max length of 6 | 6 |
| ACTL_BEG_PRIN_BAL | The borrower's actual principal balance at the beginning of the processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_END_PRIN_BAL | The borrower's actual principal balance at the end of the processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| BORR_NEXT_PAY_DUE_DATE | The date at the end of processing cycle that the borrower's next payment is due to the Servicer, as reported by Servicer. | | MM/DD/YYYY | 10 |
| SERV_CURT_AMT_1 | The first curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_1 | The curtailment date associated with the first curtailment amount. | | MM/DD/YYYY | 10 |
| CURT_ADJ_ AMT_1 | The curtailment interest on the first curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_AMT_2 | The second curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_2 | The curtailment date associated with the second curtailment amount. | | MM/DD/YYYY | 10 |
| CURT_ADJ_ AMT_2 | The curtailment interest on the second curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |

## Standard File Layout - Master Servicing

| Column Name | Description | Decimal | Format Comment | Max Size |
|---|---|---|---|---|
| SERV_CURT_AMT_3 | The third curtailment amount to be applied. | 2 | No commas(,) or dollar signs ($) | 11 |
| SERV_CURT_DATE_3 | The curtailment date associated with the third curtailment amount. | | MM/DD/YYYY | 10 |
| CURT_ADJ_AMT_3 | The curtailment interest on the third curtailment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| PIF_AMT | The loan "paid in full" amount as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| PIF_DATE | The paid in full date as reported by the Servicer. | | MM/DD/YYYY | 10 |
| ACTION_CODE | The standard FNMA numeric code used to indicate the default/delinquent status of a particular loan. | | Action Code Key: 15=Bankruptcy, 30=Foreclosure, , 60=PIF, 63=Substitution, 65=Repurchase,70=REO | 2 |
| INT_ADJ_AMT | The amount of the interest adjustment as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| SOLDIER_SAILOR_ADJ_AMT | The Soldier and Sailor Adjustment amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| NON_ADV_LOAN_AMT | The Non Recoverable Loan Amount, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| LOAN_LOSS_AMT | The amount the Servicer is passing as a loss, if applicable. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_BEG_PRIN_BAL | The scheduled outstanding principal amount due at the beginning of the cycle date to be passed through to investors. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_END_PRIN_BAL | The scheduled principal balance due to investors at the end of a processing cycle. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_PRIN_AMT | The scheduled principal amount as reported by the Servicer for the current cycle -- only applicable for Scheduled/Scheduled Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| SCHED_NET_INT | The scheduled gross interest amount less the service fee amount for the current cycle as reported by the Servicer -- only applicable for Scheduled/Scheduled Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_PRIN_AMT | The actual principal amount collected by the Servicer for the current reporting cycle -- only applicable for Actual/Actual Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| ACTL_NET_INT | The actual gross interest amount less the service fee amount for the current reporting cycle as reported by the Servicer -- only applicable for Actual/Actual Loans. | 2 | No commas(,) or dollar signs ($) | 11 |
| PREPAY_PENALTY_ AMT | The penalty amount received when a borrower prepays on his loan as reported by the Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| PREPAY_PENALTY_ WAIVED | The prepayment penalty amount for the loan waived by the servicer. | 2 | No commas(,) or dollar signs ($) | 11 |
| | | | | |
| MOD_DATE | The Effective Payment Date of the Modification for the loan. | | MM/DD/YYYY | 10 |
| MOD_TYPE | The Modification Type. | | Varchar - value can be alpha or numeric | 30 |

### Standard  File Layout - Master Servicing

| Column Name | Description | Decimal | Format Comment | Max Size |
|---|---|---|---|---|
| DELINQ_P&I_ADVANCE_AMT | The current outstanding principal and interest advances made by Servicer. | 2 | No commas(,) or dollar signs ($) | 11 |

SCHEDULE 6

DATA REQUIREMENTS OF SERVICING ADVANCES INCURRED PRIOR TO CUT-OFF
DATE

| [LOAN NUMBER] | [PRE-CUT-OFF DATE ADVANCE AMOUNT] |
|---|---|

[PROVIDED UPON REQUEST]