# EXHIBIT B

XL CAPITAL ASSURANCE INC.,
as Class A Certificate Insurer,

SUNTRUST ASSET FUNDING, LLC,
as Sponsor,

SUNTRUST BANK,
as Guarantor,

ACE SECURITIES CORP.,
as Depositor,

GMAC MORTGAGE, LLC,
as Servicer and Interim Seller,

and

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Master Servicer and Securities Administrator

# INSURANCE AND INDEMNITY AGREEMENT

SUNTRUST ACQUISITION CLOSED-END SECONDS TRUST, SERIES 2007-1

ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-1

Dated as of May 15, 2007

# TABLE OF CONTENTS

(This Table of Contents is for convenience of reference only and shall not be deemed to be part of this Insurance Agreement.  All capitalized terms used in this Insurance Agreement and not otherwise defined shall have the meanings set forth in Article I of this Insurance Agreement.)

Page

## ARTICLE 1
## DEFINITIONS

Section 1.01  *Defined Terms* ................................................................................ 2
Section 1.02  *Other Definitional Provisions* ...................................................... 6

## ARTICLE 2
## REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 2.01  *Representations and Warranties of SunTrust, GMACM, Wells Fargo and the Depositor* ..................................................................... 6
Section 2.02  *Affirmative Covenants of SunTrust, Wells Fargo, GMACM and the Depositor* ...... 19
Section 2.03  *Negative Covenants of SunTrust, Wells Fargo, GMACM and the Depositor* .......... 22
Section 2.04  *[Reserved.]* ................................................... **Error! Bookmark not defined.**
Section 2.05  *Representations, Warranties and Covenants of the Class A Certificate Insurer* ...... 23

## ARTICLE 3
## THE POLICY; REIMBURSEMENT

Section 3.01  *Issuance of the Policy* ................................................................ 27
Section 3.02  *Payment of Fees and Premium.* ............................................... 28
Section 3.03  *Reimbursement Obligation* ....................................................... 29
Section 3.04  *Indemnification.* ........................................................................ 30
Section 3.05  *Payment Procedure* ................................................................... 32
Section 3.06  *[Reserved.]* ................................................... **Error! Bookmark not defined.**
Section 3.07  *Subrogation* ................................................................................. 32
Section 3.08  *Deductions* .................................................................................. 33

## ARTICLE 4
## FURTHER AGREEMENTS

Section 4.01  *Effective Date; Term of the Insurance Agreement* .................... 33
Section 4.02  *Further Assurances and Corrective Instruments.* ...................... 33
Section 4.03  *Obligations Absolute.* ................................................................ 34
Section 4.04  *Assignments; Reinsurance; Third-Party Rights* ........................ 35
Section 4.05  *Liability of the Class A Certificate Insurer* ............................... 36

## ARTICLE 5
## DEFAULTS AND REMEDIES

Section 5.01  *Defaults* ....................................................................................... 37

i

Page

Section 5.02    *Remedies; No Remedy Exclusive.* ............................................................... 38
Section 5.03    *Waivers.* ........................................................................................................ 39

## ARTICLE 6
## MISCELLANEOUS

Section 6.01    *Amendments, Etc* ......................................................................................... 39
Section 6.02    *Notices* .......................................................................................................... 39
Section 6.03    *Severability* .................................................................................................. 41
Section 6.04    *Successors* .................................................................................................... 41
Section 6.05    *Governing Law* ............................................................................................. 41
Section 6.06    *Consent to Jurisdiction.* ............................................................................... 41
Section 6.07    *Consent of the Class A Certificate Insurer* .................................................. 42
Section 6.08    *Counterparts* ................................................................................................ 42
Section 6.09    *Headings* ....................................................................................................... 42
Section 6.10    *Trial by Jury Waived* .................................................................................... 43
Section 6.11    *Limited Liability* ........................................................................................... 43
Section 6.12    *Entire Agreement* .......................................................................................... 43
Section 6.13    *No Partnership* .............................................................................................. 43
Section 6.14    *Limitation of Damages* .................................................................................. 43

| [TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

INSURANCE AND INDEMNITY AGREEMENT (as may be amended, modified or supplemented from time to time, this "Insurance Agreement"), dated as of May 15, 2007, by and among XL CAPITAL ASSURANCE INC., as Class A Certificate Insurer (the "Class A Certificate Insurer"), SUNTRUST ASSET FUNDING, LLC ("SunTrust"), as Sponsor (the "Sponsor"), SUNTRUST BANKS, INC. ("SunTrust Bank"), as Guarantor (the "Guarantor"), GMAC MORTGAGE, LLC ("GMACM"), as Interim Seller and Servicer (the "Interim Seller" and the "Servicer," respectively), ACE SECURITIES CORP. ("ACE"), as Depositor (the "Depositor") and WELLS FARGO BANK, NATIONAL ASSOCIATION ("Wells Fargo"), as Master Servicer and Securities Administrator (the "Master Servicer" and the "Securities Administrator," respectively).

# RECITALS:

WHEREAS, pursuant to the Mortgage Loan Purchase and Sale Agreement (the "Mortgage Loan Purchase Agreement"), dated as of May 15, 2007, between GMACM and SunTrust, GMACM purchased certain mortgage loans from SunTrust (the "Mortgage Loans");

WHEREAS, pursuant to the Assignment, Assumption and Recognition Agreement, dated as of May 15, 2007, among GMACM, ACE, SunTrust and Wells Fargo, ACE purchased from GMACM the Mortgage Loans on a servicing-retained basis;

WHEREAS, the Pooling and Servicing Agreement, dated as of April 1, 2007, (the "Pooling and Servicing Agreement"), among HSBC Bank USA, National Association, as Trustee (the "Trustee"), the Depositor, the Servicer, the Master Servicer and the Securities Administrator, provides for, among other things, the sale of the Mortgage Loans from the Depositor to the Trustee on behalf of the SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 (the "Trust"), the master servicing of the Mortgage Loans by the Master Servicer and the issuance of SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, Class A, Class M-1, Class M-2, Class M-3, Class M-4 Class CE, Class P and Class R Certificates (the "Certificates");

WHEREAS, the Certificates will represent in the aggregate the entire beneficial ownership interest in a trust fund;

WHEREAS, the Class A Certificate Insurer has issued the Policy (as defined below), pursuant to which it has agreed to pay to the Securities Administrator on behalf of the Trustee for the benefit of the Holders of the Insured Certificates (as defined herein), certain payments in respect of certain payments on the Insured Certificates;

WHEREAS, SunTrust Bank has agreed to guaranty unconditionally the duties, liabilities, responsibilities and obligations of SunTrust under this Insurance Agreement and the Pooling and Servicing Agreement in connection with the Class A Certificate Insurer's agreement to issue of the Policy;

WHEREAS, the Class A Certificate Insurer shall be paid a Premium as set forth herein and in the Premium Letter described herein; and

WHEREAS, each of SunTrust, GMAC, the Master Servicer, the Securities Administrator and the Depositor has undertaken certain obligations in consideration for, among other things, the Class A Certificate Insurer's issuance of the Policy.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## ARTICLE 1
## DEFINITIONS

Section 1.01  *Defined Terms*.    Unless the context clearly requires otherwise, all capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Policy described below or, if not defined therein, in the Pooling and Servicing Agreement.  For purposes of this Insurance Agreement, the following terms shall have the following meanings:

"1119 Parties" means the Servicer, the Trustee, the Custodian, American Home Mortgage Corp., Bear Stearns Financial Products Inc. and New Century Mortgage Corporation.

"ACE" has the meaning given such term in the recitals hereof.

"Approvals" has the meaning given such term in Section 2.01(a).

"Certificateholder" has the meaning given such term in the Pooling and Servicing Agreement.

"Certificates" has the meaning given such term in the recitals hereof.

"Class A Certificate Insurer" means XL Capital Assurance Inc., or any successor thereto, as issuer of the Policy.

"Class A Certificate Insurer Information" means the information included in the Offering Document or the Registration Statement and furnished by or approved by the Class A Certificate Insurer in writing expressly for use therein, it being understood that, in respect of the Offering Document which relates to the Certificates and the Registration Statement, the Class A Certificate Insurer Information is limited to the information with respect to the Class A Certificate Insurer included under the captions "The Class A Certificate Insurer" and "Description of the Certificates — The Policy" and the financial statements of the Class A Certificate Insurer incorporated therein by reference, and shall include any information in any amendment or supplement to the Offering Document or registration statement furnished by the Class A Certificate Insurer in writing expressly for use therein that amends or supplements such information.

"Closing Date" means May 15, 2007.

"Co-Manager" means Bear, Stearns & Co. Inc.

"Commission" means the Securities and Exchange Commission.

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

"Custodial Agreement" means that certain Custodial Agreement, dated as of April 1, 2007, by and among the Trustee, the Servicer and Deutsche Bank National Trust Company, as custodian.

"Custodian" means Deutsche Bank National Trust Company and its successors and assigns.

"Cut-off Date" means the close of business on April 1, 2007.

"Data Tape" has the meaning assigned to such term in Section 2.02(c)(iii).

"DBRS" means DBRS, Inc., and any successor thereto.

"Default" means any event which results, or which with the giving of notice or the lapse of time or both would result, in an Event of Default.

"Depositor" has the meaning given such term in the recitals hereof.

"Depositor Approvals" has the meaning given such term in Section 2.04(a).

"Depositor Documents" has the meaning given such term in Section 2.04(l).

"Depositor Ratings Event" has the meaning given such term in Section 2.05(d).

"Documents" has the meaning given such term in Section 2.01(l).

"Event of Default" means any event of default specified in Section 5.01 of this Insurance Agreement.

"Event of Servicer Termination" means a "Servicer Event of Default" as defined in the Pooling and Servicing Agreement.

"Financial Statements" means, with respect to SunTrust Bank, its consolidated statements of financial condition as of December 31, 2005 and December 31, 2006 and its statements of operations, stockholders' equity and cash flows for each of the years in the three-year period ended December 31, 2006, and for the three month period ended March 31, 2007, and the notes thereto.

"GMACM" has the meaning given such term in the recitals hereof.

"GMACM Side Letter Agreement" means that certain GMACM Side Letter Agreement dated as of May 15, 2007, by and between GMACM and the Class A Certificate Insurer.

"Holder" has the meaning given such term in the Policy.

"Incorporation Termination Date" means January 31, 2008 or, such later date as Securities Exchange Act of 1934 filings are legally required in connection with the Trust.

3

"Indemnification Agreement" means the Indemnification Agreement, dated as of May 15, 2007, between the Class A Certificate Insurer, the Underwriters and the Co-Manager.

"Insurance Agreement" has the meaning given such term in the initial paragraph hereof.

"Insured Certificates" means SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, Asset Backed Pass-Through Certificates, Class A Certificates.

"Interim Seller" has the meaning given such term in the recitals hereof.

"Investment Company Act" means the Investment Company Act of 1940, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Late Payment Rate" means the lesser of (a) the greater of (i) the prime rate as published in the Wall Street Journal (or if no such rate is published thereby, in a publication selected by the Class A Certificate Insurer) (any change in such rate of interest to be effective on the date such change is published) plus 2%, and (ii) the highest Pass-Through Rate on the Insured Certificates and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days for any Distribution Date.

"Master Servicer" has the meaning given such term in the recitals hereof.

"Material Adverse Change" means, in respect of any Person, a material adverse change in the ability of such Person to perform its obligations under any of the Operative Documents, including any material adverse change in the business, financial condition, results of operations or properties of such Person on a consolidated basis with its subsidiaries which might have such effect.

"Mortgage Loans" has the meaning given such term in the recitals hereof.

"Moody's" means Moody's Investors Service, Inc., and any successor thereto.

"Offering Document" means the Prospectus, dated May 9, 2007, as supplemented by the Preliminary Prospectus Supplement, dated May 9, 2007 and the Prospectus Supplement, dated May 14, 2007 in respect of the Certificates and any amendment or supplement thereto, and any other offering document in respect of the Certificates prepared by or on behalf of the Depositor that makes reference to the Policy.

"Operative Documents" means this Insurance Agreement, the Indemnification Agreement, the Certificates, the Pooling and Servicing Agreement, the Custodial Agreement, the Underwriting Agreement and each other document contemplated by any of the foregoing to which the Depositor, the Sponsor, the Master Servicer, the Servicer, the Trustee, the Securities Administrator or the Trust is a party.

"Person" means an individual, joint stock company, trust, unincorporated association, joint venture, corporation, business or owner trust, partnership, limited liability company or other organization or entity (whether governmental or private).

"Policy" means the Financial Guaranty Insurance Policy No. CA03757A, together with all endorsements thereto, issued by the Class A Certificate Insurer in favor of the Securities Administrator on behalf of the Trustee, for the benefit of the Certificateholders.

"Pooling and Servicing Agreement" has the meaning given such term in the recitals hereof.

"Premium" means the premium payable in accordance with this Insurance Agreement, which shall be payable as "Premium Amounts" pursuant to the Premium Letter and payable in accordance with the Pooling and Servicing Agreement.

"Premium Letter" means the letter agreement among the Class A Certificate Insurer, the Trustee, the Securities Administrator, the Master Servicer, SunTrust, GMACM and the Depositor dated the date hereof in respect of the Premium payable in consideration of the issuance of the Policy.

"Ratings Event" has the meaning given such term in Section 2.02(d).

"Regulation AB" means Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpreatatin as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

"S&P" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and any successor thereto.

"Securities Act" means the Securities Act of 1933, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Securities Administrator" has the meaning given such term in the recitals hereof.

"Securities Exchange Act" means the Securities Exchange Act of 1934, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Servicer" has the meaning given such term in the recitals hereof.

"Servicer Information" means the information contained under the heading "Servicing of the Mortgage Loans — GMAC Mortgage, LLC" in the Offering Document.

"Sponsor" has the meaning given such term in the recitals hereof.

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

"SunTrust" has the meaning given such term in the recitals hereof.

"SunTrust Bank" has the meaning given such term in the recitals hereof.

"Transaction" means the transactions contemplated by the Operative Documents, including the transactions described in the Offering Document.

"Trust" means SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, created pursuant to the Pooling and Servicing Agreement.

"Trust Indenture Act" means the Trust Indenture Act of 1939, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Trustee" has the meaning given such term in the recitals hereof.

"Underwriter" means any of Deutsche Bank Securities Inc., SunTrust Capital Markets, Inc. or the Co-Manager (together, the "Underwriters").

"Underwriter Information" has the meaning assigned to such term in the Indemnification Agreement.

"Underwriting Agreement" means the underwriting agreement, dated April 30, 2007 among the Underwriters, the Sponsor and the Depositor.

"Wells Fargo" has the meaning given such term in the recitals hereof.

"Wells Fargo Information" means the information contained under the heading "The Securities Administrator and the Master Servicer" in the Offering Document.

Section 1.02    *Other Definitional Provisions*.    The words "hereof," "herein" and "hereunder" and words of similar import when used in this Insurance Agreement shall refer to this Insurance Agreement as a whole and not to any particular provision of this Insurance Agreement, and Section, subsection, Schedule and Exhibit references are to this Insurance Agreement unless otherwise specified.    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.    The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."

## ARTICLE 2
## REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 2.01    *Representations and Warranties of SunTrust, SunTrust Bank, GMACM and Wells Fargo*.    Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM, in each case with respect to itself, severally and not jointly represents and warrants as of the Closing Date, as follows:

(a)    *Due Organization and Qualification*.    Each of SunTrust and GMACM is a limited liability company, duly organized, validly existing and in good standing under the laws of Delaware.    SunTrust Bank is a Georgia banking corporation.    Wells Fargo is a national

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

banking association, duly organized, validly existing and in good standing under the laws of the United States. Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM is, or shall become, duly qualified to do business, is, or shall be, in good standing and has obtained, or shall obtain, all necessary licenses, permits, charters, registrations and approvals (together, "Approvals") necessary for the conduct of its business as currently conducted and as described in the Offering Document and the performance of its obligations under the Operative Documents to which it is a party in each jurisdiction in which the failure to be so qualified or to obtain such Approvals would render any Operative Document unenforceable in any respect or would have a material adverse effect upon the Transaction.

(b)     *Power and Authority*.  Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM has all necessary power and authority to conduct its business as currently conducted and as described in the Offering Document, to execute, deliver and perform its obligations under the Operative Documents to which it is a party and to consummate the Transaction.

(c)     *Due Authorization*.  The execution, delivery and performance of the Operative Documents by each of SunTrust, SunTrust Bank, Wells Fargo and GMACM has been duly authorized by all necessary action and does not require any additional approvals or consents, or other action by or any notice to or filing with any Person, including any governmental entity or any of the stockholders or beneficial owners, as applicable, of SunTrust, SunTrust Bank, Wells Fargo or GMACM, which have not previously been obtained or given by SunTrust, SunTrust Bank, Wells Fargo or GMACM.

(d)     *Noncontravention*.  The execution and delivery by each of SunTrust, SunTrust Bank, Wells Fargo and GMACM of the Operative Documents to which it is a party, the consummation of the Transaction and the satisfaction of the terms and conditions of the Operative Documents do not and will not:

(i)     conflict with or result in any breach or violation of any provision of the applicable organizational documents of SunTrust, SunTrust Bank, Wells Fargo or GMACM or any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award currently in effect having applicability to SunTrust, SunTrust Bank, Wells Fargo or GMACM or any of their respective material properties, including regulations issued by any administrative agency or other governmental authority having supervisory powers over SunTrust, SunTrust Bank, Wells Fargo or GMACM, which conflict, breach or violation reasonably could be expected to result in a Material Adverse Change;

(ii)     constitute a default by SunTrust, SunTrust Bank, Wells Fargo or GMACM under, result in the acceleration of any obligation under, or breach any provision of any loan agreement, mortgage, indenture or other agreement or instrument to which SunTrust, SunTrust Bank, Wells Fargo or GMACM is a party or by which any of their respective properties is or may be bound or affected, which default, acceleration or breach reasonably could result in a Material Adverse Change; or

7

(iii)    result in or require the creation of any lien upon or in respect of any assets of SunTrust, SunTrust Bank, Wells Fargo or GMACM, which lien could reasonably be expected to result in a Material Adverse Change.

(e)    *Legal Proceedings*.    There is no action, proceeding or investigation by or before any court, governmental or administrative agency or arbitrator against or affecting SunTrust, SunTrust Bank, Wells Fargo or GMACM or any of their respective subsidiaries, any properties or rights of SunTrust, Wells Fargo or GMACM or any of their respective subsidiaries or any of the Mortgage Loans pending or, to SunTrust's, SunTrust Bank's, Wells Fargo's or GMACM's knowledge after reasonable inquiry, threatened, which, in any case, if decided adversely to SunTrust, SunTrust Bank, Wells Fargo or GMACM or any such subsidiary could result in a Material Adverse Change with respect to SunTrust, Wells Fargo or GMACM.

(f)    *No Default*.    None of SunTrust, SunTrust Bank, Wells Fargo or GMACM is in default under or with respect to any of its contractual obligations in any respect which could have a material adverse effect on the rights, interests or remedies of the Class A Certificate Insurer hereunder or under the other Operative Documents or on its ability to perform its obligations hereunder or under the other Operative Documents to which it is a party.  No Default or Event of Default has occurred and is continuing.

(g)    *Valid and Binding Obligations*.    The Operative Documents (other than the Certificates), when executed and delivered by SunTrust, SunTrust Bank, Wells Fargo or GMACM, will constitute the legal, valid and binding obligations of each of SunTrust, SunTrust Bank, Wells Fargo and GMACM, enforceable in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and general equitable principles and public policy considerations as to rights of indemnification for violations of federal securities laws.  The Certificates, when executed, authenticated and delivered in accordance with the Pooling and Servicing Agreement, will be validly issued and outstanding and entitled to the benefits of the Pooling and Servicing Agreement.    Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM will not at any time in the future deny that the Operative Documents to which it is a party constitute the legal, valid and binding obligations of SunTrust, Wells Fargo or GMACM, as applicable.

(h)    *Financial Statements*.    The Financial Statements of SunTrust Bank, copies of which have been furnished to the Class A Certificate Insurer, (i) are, as of the dates and for the periods referred to therein, complete and correct in all material respects, (ii) present fairly the financial condition and results of operations of SunTrust as of the dates and for the periods indicated and (iii) have been prepared in accordance with generally accepted accounting principles consistently applied, except as noted therein (subject as to interim statements to normal year-end adjustments).  Since the date of the most recent Financial Statements, there has been no Material Adverse Change in respect of SunTrust Bank.  Except as disclosed in the Financial Statements, SunTrust Bank is not subject to any contingent liabilities or commitments that, individually or in the aggregate, have a material possibility of causing a Material Adverse Change in respect of SunTrust Bank.

8

(i)    *Compliance with Law, etc*.  No practice, procedure or policy employed or proposed to be employed by SunTrust, SunTrust Bank, Wells Fargo or GMACM in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to it which, if enforced, could reasonably be expected to result in a Material Adverse Change with respect to it or have a material adverse effect on the Transaction.

(j)    *Good Title; Absence of Liens or Security Interest*.  The Trustee on behalf of the Trust is the owner of, and has good and marketable title to, all of the Mortgage Loans free and clear of all liens and all substitutions therefor and additions thereto delivered under the Pooling and Servicing Agreement.

(k)    *Taxes*.  Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM has filed (or caused to be filed) prior to the date hereof all federal and state tax returns that are required to be filed and has paid all taxes, including any assessments received by it that are not being contested in good faith, to the extent that such taxes have become due, except with respect to any failures to file or pay that, individually or in the aggregate, would not result in a Material Adverse Change with respect to SunTrust, SunTrust Bank, Wells Fargo or GMACM.  Any taxes, fees and other governmental charges payable by SunTrust, SunTrust Bank, Wells Fargo or GMACM in connection with the Transaction, the execution and delivery of the Operative Documents and the issuance of the Certificates have been paid or shall have been paid at or prior to the Closing Date if such taxes, fees or other governmental charges were due on or prior to the Closing Date.

(l)    *Accuracy of Information*.  Neither the Operative Documents nor other material information relating to the Mortgage Loans, the operations of SunTrust, Wells Fargo or GMACM or the financial condition of SunTrust, Wells Fargo or GMACM (collectively, the "Documents"), as amended, supplemented or superseded, furnished to the Class A Certificate Insurer in writing or in electronic form by SunTrust, Wells Fargo or GMACM, respectively, contains any statement of a material fact which was untrue or misleading in any material respect when made.  None of SunTrust, Wells Fargo or GMACM has any knowledge of any circumstances that could reasonably be expected to cause a Material Adverse Change with respect to SunTrust, Wells Fargo, GMACM or the Trust.  Since the furnishing of the Documents, there has been no change nor any development or event involving a prospective change known to SunTrust, Wells Fargo or GMACM that would render any of the Documents untrue or misleading in any material respect.  Without limiting the generality of the foregoing, the information in the Data Tape with respect to each Mortgage Loan is true and correct as of the Cut-off Date.

(m)    *Compliance With Securities Laws*.  The offer of the Certificates complies or shall comply in all material respects with all requirements of law.  Without limiting the foregoing, the Offering Document does not contain any untrue statement of a material fact and does not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; *provided, however,* that no representation is made with respect to the information in the Offering Document regarding the Class A Certificate Insurer set forth under the caption "The Class A Certificate Insurer" or the financial statements of the Class A Certificate Insurer as included in, or incorporated by reference into, the Offering Document, the Servicer Information, the Wells Fargo Information

9

and the Underwriter Information.  Based upon advice of legal counsel, the Trust is not required to be registered as an "investment company" under the Investment Company Act.

(n)     *Operative Documents*.  Each of the representations and warranties of SunTrust, Wells Fargo and GMACM contained in the applicable Operative Documents is true and correct in all material respects and each of SunTrust, Wells Fargo and GMACM hereby makes each such representation and warranty to, and for the benefit of, the Class A Certificate Insurer as if the same were set forth in full herein.  Each of SunTrust, Wells Fargo and GMACM will not at any time in the future deny that the Operative Documents to which it is a party constitute the legal, valid and binding obligations of SunTrust, Wells Fargo and GMACM, as applicable.

(o)     *Solvency; Fraudulent Conveyance*.  Each of SunTrust, SunTrust Bank, Wells Fargo and GMACM is solvent and shall not be rendered insolvent by the Transaction and, after giving effect to the Transaction, none of SunTrust, SunTrust Bank, Wells Fargo or GMACM shall be left with an unreasonably small amount of capital with which to engage in the ordinary course of its business, and each of SunTrust, SunTrust Bank, Wells Fargo and GMACM does not intend to incur, or believe that it has incurred, debts beyond its ability to pay as they mature.   None of SunTrust, SunTrust Bank, Wells Fargo or GMACM contemplates the commencement of insolvency, liquidation or consolidation proceedings or the appointment of a receiver, liquidator, conservator, trustee or similar official in respect of SunTrust, SunTrust Bank, Wells Fargo or GMACM or any of their respective assets. The amount of consideration being received by the Trust upon the sale of the Certificates constitutes reasonably equivalent value and fair consideration for the ownership and/or debt interest evidenced by the Certificates. SunTrust is not transferring the Mortgage Loans to GMACM, GMACM is not transferring the Mortgage Loans to the Depositor, the Depositor is not transferring the Mortgage Loans to the Trustee on behalf of the Trust, nor is the Depositor selling the Certificates, as provided in the Operative Documents, with any intent to hinder, delay or defraud any of SunTrust's, Wells Fargo's, GMACM's or the Depositor's creditors.

(p)     *Security Interest in the Loans.*  In the event that the conveyance of such assets to the Trust is characterized by a court as not a sale, then the Trustee on behalf of the Trust has on the Closing Date, and shall have at all times thereafter, a first priority perfected security interest in the Mortgage Loans and all other assets included in the Trust Fund (as defined in the Pooling and Servicing Agreement).

(q)     *SunTrust Bank Guaranty.*  SunTrust Bank hereby agrees to unconditionally guaranty any and all duties, liabilities, responsibilities and obligations of SunTrust under this Insurance Agreement and the Pooling and Servicing Agreement.

Section 2.02  *Affirmative Covenants of SunTrust, Wells Fargo and GMACM*.  Each of SunTrust, Wells Fargo and GMACM, in each case with respect to itself, hereby agrees, severally and not jointly, that during the term of this Insurance Agreement, unless the Class A Certificate Insurer shall otherwise expressly consent in writing:

(a)     *Compliance With Agreements and Applicable Laws*.  Each of SunTrust, Wells Fargo and GMACM shall comply in all material respects with the terms and conditions of

and perform its obligations under the Operative Documents to which it is a party in all cases in which failure to so comply or perform would result in a default thereunder and shall comply with all requirements of any law, rule or regulation applicable to it in all circumstances where non-compliance reasonably could be expected to result in a Material Adverse Change.

(b)    *Corporate Existence*.  Each of SunTrust, Wells Fargo and GMACM and their respective successors and permitted assigns shall maintain its corporate or trust existence, as applicable, and shall at all times continue to be duly organized under the laws of their formation and duly qualified and duly authorized (as described in subsections 2.01(a), (b) and (c) hereof) and shall conduct its business in accordance with the terms of its applicable organizational documents.

(c)    *Financial Statements; Accountants' Reports; Other Information*.  Each of SunTrust and GMACM shall keep or cause to be kept in reasonable detail books and records of account of its assets and business relating to the Transaction, and shall, as applicable, clearly reflect therein the sale of the Mortgage Loans to GMACM, the sale of the Mortgage Loans to the Depositor, the sale of the Mortgage Loans to the Trustee on behalf of the Trust, respectively, as a sale of the Mortgage Loans by SunTrust to the GMACM, a sale of the Mortgage Loans by GMACM to the Depositor, and a sale of the Mortgage Loans by the Depositor to the Trustee on behalf of the Trust.  SunTrust Bank or SunTrust, as applicable, shall furnish or cause to be furnished to the Class A Certificate Insurer:

(i)    *Annual Financial Statements of SunTrust Bank*.  As soon as available, and in any event within 120 days after the close of each fiscal year of SunTrust Bank, the audited consolidated statement of financial condition of SunTrust Bank and its subsidiaries as of the end of such fiscal year and the related audited consolidated statements of operations, stockholders' equity and cash flows for such fiscal year, all in reasonable detail, prepared in accordance with generally accepted accounting principles, consistently applied, and accompanied by the audit opinion of SunTrust Bank's independent accountants (which shall be a nationally recognized independent public accounting firm or otherwise acceptable to the Class A Certificate Insurer).

(ii)    *Quarterly Financial Statements*.  Immediately following the earlier to occur of (i) a Material Adverse Change of SunTrust Bank of which an authorized officer of SunTrust Bank has actual knowledge or (ii) upon the request of the Class A Certificate Insurer following any Material Adverse Change of SunTrust Bank, but in any event within 45 days after the occurrence of, or knowledge of, such Material Adverse Change, the unaudited consolidated statement of financial condition of SunTrust Bank and its subsidiaries as of the end of the first three quarters of each fiscal year of SunTrust Bank and the related unaudited consolidated statements of operations, stockholders' equity and cash flows for the portion of the fiscal year then ended, all in reasonable detail and stating in comparative form the respective figures for the corresponding date and period in the preceding fiscal year, prepared in accordance with generally accepted accounting principles consistently applied (subject to normal year-end adjustments); each delivery of quarterly financial statements shall be accompanied by a certificate of one (or more) corporate officers stating that the quarterly financial statements are correct in all material respects and present fairly the financial condition and results of operations of

SunTrust Bank and its subsidiaries as of the dates and for the periods indicated, in accordance with generally accepted accounting principles consistently applied (subject to normal year-end adjustments).   Promptly following the delivery of these quarterly financial statements, SunTrust Bank shall cause its Chief Financial Officer or Treasurer (or other responsible officer, provided that SunTrust Bank shall cause its Chief Financial Officer or Treasurer to be available if such other officer is unable to answer the Class A Certificate Insurer's questions to the Class A Certificate Insurer's reasonable satisfaction) to be available for a conference call with the Class A Certificate Insurer, during normal business hours and upon reasonable prior request from the Class A Certificate Insurer.

(iii)   *Mortgage Loan Data.*   (A) On or before the Closing Date, SunTrust will provide a copy of a magnetic tape (the "Data Tape") setting forth, as to each Mortgage Loan, the information required under the definition of "Mortgage Loan Schedule" in the Pooling and Servicing Agreement.

(B)   On each Distribution Date, Wells Fargo Bank, N.A. will make available to the Class A Certificate Insurer at the website www.ctslink.com (i) the loan level information used by the Securities Administrator for the generation of the monthly statements to the Certificateholders and (ii) any other information reasonably requested by the Class A Certificate Insurer to the extent that the Master Servicer has received such information from the Servicer.

(iv)   *Other Information.*   (A) Promptly upon receipt thereof, copies of all schedules, financial statements or other similar reports delivered to or by SunTrust, GMACM, the Depositor, the Master Servicer, the Securities Administrator or the Trustee pursuant to the terms of any of the Operative Documents, including all reports provided to any of the Master Servicer, Securities Administrator, Trustee or any Certificateholder pursuant to the Pooling and Servicing Agreement, (B) promptly upon request, such other data as the Class A Certificate Insurer may reasonably request and (C) all information required to be furnished to the Master Servicer, the Securities Administrator, the Trustee or the Certificateholders simultaneously with the furnishing thereof to the Master Servicer, the Securities Administrator, the Securities Administrator, the Trustee or the Certificateholders, as the case may be.

All financial statements specified in clauses (i) and (ii) of this subsection (c) shall be furnished in consolidated form for SunTrust Bank and all of its subsidiaries in the event that SunTrust Bank shall consolidate its financial statements with its subsidiaries.

The information supplied pursuant to clauses (iii) and (iv) above will be in Excel or Word format or another form of an electronic data file accessible by the Class A Certificate Insurer by means of standard application software; *provided, however*, that the information required to be furnished pursuant to Section 2.02(c)(iii)(B) may be made available on SunTrust's internet website.

(d)   *Access to Records; Discussions with Officers and Accountants.*   Once in each calendar year, or at any time following any withdrawal, reduction or qualification of any rating assigned to any of the Certificates (without regard to the Policy) (a "Ratings Event"),

12

following the occurrence of any Default or Event of Default that has not been waived or cured, at any time following the occurrence of a Trigger Event, SunTrust shall, upon the reasonable request of the Class A Certificate Insurer, permit the Class A Certificate Insurer or its authorized agents:

       (i)    to inspect the books and records of SunTrust as they may relate to the Mortgage Loans, the Certificates, the obligations of SunTrust under the Operative Documents to which it is a party and the Transaction;

       (ii)    to discuss the affairs, finances and accounts of SunTrust as they relate to the Mortgage Loans, the Transaction or SunTrust's ability to perform its obligations under the Operative Documents with an officer of SunTrust; and

       (iii)    if the Class A Certificate Insurer reasonably believes that a Material Adverse Change may have occurred, to discuss the affairs, finances and accounts of SunTrust Bank with SunTrust Bank's independent accountants; *provided, however,* that an officer of SunTrust Bank shall have the right to be present during such discussions.

Such inspections and discussions shall be conducted during normal business hours and shall not unreasonably disrupt the business of SunTrust.  The books and records of SunTrust shall be maintained at the address of SunTrust designated herein for receipt of notices, unless SunTrust shall otherwise advise the parties hereto in writing.

All of the inspections, discussions and due diligence referred to in this Section 2.02(d) shall be at the expense of the Class A Certificate Insurer; *provided, however*, that any such undertaking following a Ratings Event, a Trigger Event or the occurrence of a Default or Event of Default, that remains uncured and unwaived, shall be at the expense of SunTrust.

       (e)    *Notice of Material Events*.  Each of SunTrust, Wells Fargo and GMACM shall be obligated (which obligation shall be satisfied as to each of SunTrust and GMACM if performed by SunTrust or GMACM) promptly to inform the Class A Certificate Insurer in writing of the occurrence of any of the following:

       (i)    the submission of any claim or the initiation or threat of any legal process, litigation or administrative or judicial investigation, or rule making or disciplinary proceeding by or against it that (A) would be required to be disclosed to the Commission or its shareholders that relates to the Mortgage Loans, the Transaction or its ability to perform its obligations under the Operative Documents or (B) could result in a Material Adverse Change with respect to it or a material adverse effect on the Transaction, or to the best of the knowledge of SunTrust, Wells Fargo or GMACM, the initiation of any proceeding or the promulgation of any proceeding or any proposed or final rule which would likely result in a Material Adverse Change with respect to it or any of its respective subsidiaries or a material adverse effect on the Transaction;

       (ii)    any change in the location of the principal office or jurisdiction of formation of it or any of its respective subsidiaries;

13

(iii)    the occurrence of any Default or Event of Default or any Material Adverse Change in respect of it;

(iv)    the commencement of any proceedings by or against it under any applicable bankruptcy, reorganization, liquidation, rehabilitation, insolvency or other similar law now or hereafter in effect or of any proceeding in which a receiver, liquidator, conservator, trustee or similar official shall have been, or may be, appointed or requested for it or any of its respective assets; or

(v)    the receipt of notice that (A) it is being placed under regulatory supervision, (B) any license, permit, charter, registration or approval necessary for the conduct of its business is to be, or may be, suspended or revoked or (C) it is to cease and desist any practice, procedure or policy employed by it in the conduct of its respective business, and such suspension, revocation or cessation may reasonably be expected to result in a Material Adverse Change with respect to it or a material adverse effect on the Transaction.

(f)    *Financing Statements and Further Assurances*.  SunTrust shall cause to be filed all necessary financing statements or other instruments, and any amendments or continuation statements relating thereto, necessary to be kept and filed in such manner and in such places as may be required by law to preserve and protect fully the interest of the Trustee in the Trust Estate.  Each of SunTrust, Wells Fargo and GMACM shall, upon the reasonable request of the Class A Certificate Insurer, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, within ten days of such request, such amendments hereto and such further instruments and take such further action as may be reasonably necessary to effectuate the intention, performance and provisions of the Operative Documents.  In addition, each of SunTrust, Wells Fargo and GMACM agrees to reasonably cooperate with S&P and Moody's in connection with any review of the Transaction that may be undertaken by S&P and Moody's after the date hereof.

(g)    *Maintenance of Licenses*.  Each of SunTrust, Wells Fargo and GMACM, and any successors thereof, shall maintain all licenses, permits, charters and registrations the loss or suspension of which could result in a Material Adverse Change.

(h)    *Retirement of Certificates*.  The Securities Administrator, upon a retirement or other payment of the Insured Certificates, shall surrender the Policy to the Class A Certificate Insurer for cancellation.

(i)    *Disclosure Document*.  It will not use, or distribute to any Person for use, any information relating to the Class A Certificate Insurer unless such information has been furnished by the Class A Certificate Insurer and the use or distribution of such information has been approved by the Class A Certificate Insurer in writing.  The Class A Certificate Insurer hereby consents to the inclusion of the information in respect of the Class A Certificate Insurer included as of the date hereof in the Offering Document.  Any Offering Document delivered with respect to the Certificates shall clearly disclose that the Policy is not covered by the property/casualty insurance security fund specified in Article 76 of the New York Insurance Law.

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

(j)     *Third-Party Beneficiary*.  Each of SunTrust, Wells Fargo and GMACM agrees that the Class A Certificate Insurer shall have all rights provided to the Class A Certificate Insurer in the Operative Documents and that the Class A Certificate Insurer shall constitute a third-party beneficiary with respect to such rights in respect of the Operative Documents and hereby incorporates and restates its representations, warranties and covenants as set forth therein for the benefit of the Class A Certificate Insurer.  The Class A Certificate Insurer agrees that the rights it shall have as a third-party beneficiary under the Pooling and Servicing Agreement shall be limited to the rights granted to it and to the Certificateholders in the Pooling and Servicing Agreement.

(k)     *Corporate Formalities*.  Each of SunTrust, Wells Fargo and GMACM shall observe all the formalities necessary to preserve its entity existence under the laws of the State of its formation, including, as applicable, (i) the obligation to hold annual meetings of its beneficial owners, shareholders or its board of directors and (ii) the obligation to prepare and file annual income, franchise and other tax returns.

(l)     *Closing Documents*.  SunTrust shall provide or cause to be provided to the Class A Certificate Insurer an executed original copy of each Operative Document executed in connection with the Transaction within 30 days after the Closing Date.

(m)     *Servicing of Mortgage Loans*.  GMACM represents that all Mortgage Loans will be serviced in compliance with the terms of the Pooling and Servicing Agreement.

(n)     *Representation regarding the Servicer Information*.  GMACM represents that the Servicer Information included in the Offering Document does not contain any untrue statement of a material fact and does not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.

(o)     *Access to Records; Discussions with Officers and Accountants*.  GMACM shall permit the Class A Certificate Insurer access to records and to allow discussions with servicing officers in accordance with the terms specified in the GMACM Side Letter Agreement.

Section 2.03    *Negative Covenants of SunTrust, Wells Fargo and GMACM*.  Each of SunTrust, Wells Fargo and GMACM, in each case with respect to itself, hereby agrees severally and not jointly that during the term of this Insurance Agreement, unless the Class A Certificate Insurer shall otherwise expressly consent in writing:

(a)     *Impairment of Rights*.  None of SunTrust, Wells Fargo or GMACM shall take any action, or fail to take any action, if such action or failure to take action may result in a Material Adverse Change with respect to SunTrust, Wells Fargo or GMACM, nor interfere in any material respect with the enforcement of any rights of the Class A Certificate Insurer under or with respect to any of the Operative Documents or the Policy.  SunTrust, Wells Fargo and GMACM shall give the Class A Certificate Insurer written notice of any such action or, to the best of the knowledge of any of SunTrust, Wells Fargo or GMACM, any such failure to act on the earlier of:  (i) the date upon which any publicly available filing or release is made with respect to such action or failure to act and (ii) promptly prior to the date of consummation of

15

such action or failure to act.  Each of SunTrust, Wells Fargo and GMACM shall furnish to the Class A Certificate Insurer all information reasonably requested by the Class A Certificate Insurer that is necessary to determine compliance with this paragraph.

(b)    *Waiver, Amendments, Etc*.  None of SunTrust, Wells Fargo or GMACM shall modify, waive or amend, or consent to any modification, waiver or amendment of, any of the terms, provisions or conditions of the Operative Documents to which it is a party (other than any amendment to the Offering Document required by law) without the prior written consent of the Class A Certificate Insurer thereto, which consent shall not be unreasonably withheld, conditioned or delayed.

(c)    *Limitation on Mergers, Etc*.  None of SunTrust, Wells Fargo or GMACM shall consolidate with or merge with or into any Person or transfer all or substantially all of its assets to any Person or liquidate or dissolve except as provided in the Operative Documents or as permitted hereby.  Each of SunTrust, Wells Fargo and GMACM shall furnish to the Class A Certificate Insurer all information requested by the Class A Certificate Insurer that is reasonably necessary to determine compliance with this paragraph.

(d)    *Successors*.  None of SunTrust, Wells Fargo or GMACM shall terminate or designate, or consent to the termination or designation of, any successor Paying Agent, Master Servicer, Servicer, Custodian, Securities Administrator or Trustee without the prior written approval of the Class A Certificate Insurer.

Section 2.04    *Representations and Warranties of the Depositor*.    The Depositor represents and warrants as of the Closing Date, as follows:

(a)    *Due Organization and Qualification*.  The Depositor is a corporation, duly organized, validly existing and in good standing under the laws of Delaware.  The Depositor is, or shall become, duly qualified to do business, is, or shall be, in good standing and has obtained, or shall obtain, all necessary licenses, permits, charters, registrations and approvals (together, "Depositor Approvals") necessary for the conduct of its business as currently conducted and as described in the Offering Document and the performance of its obligations under the Operative Documents to which it is a party in each jurisdiction in which the failure to be so qualified or to obtain such Depositor Approvals would render any Operative Document unenforceable in any respect or would have a material adverse effect upon the Transaction.

(b)    *Power and Authority*.  The Depositor has all necessary power and authority to conduct its business as currently conducted and as described in the Offering Document, to execute, deliver and perform its obligations under the Operative Documents to which it is a party and to consummate the Transaction.

(c)    *Due Authorization*.  The execution, delivery and performance of the Operative Documents by the Depositor has been duly authorized by all necessary action and does not require any additional approvals or consents, or other action by or any notice to or filing with any Person, including any governmental entity or any of the stockholders or beneficial owners, as applicable, of the Depositor, which have not previously been obtained or given by the Depositor.

16

(d)    *Noncontravention*.  The execution and delivery by the Depositor of the Operative Documents to which it is a party, the consummation of the Transaction and the satisfaction of the terms and conditions of the Operative Documents do not and will not:

(i)    conflict with or result in any breach or violation of any provision of the applicable organizational documents of the Depositor or any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award currently in effect having applicability to the Depositor or its material properties, including regulations issued by any administrative agency or other governmental authority having supervisory powers over the Depositor, which conflict, breach or violation reasonably could be expected to result in a Material Adverse Change;

(ii)    constitute a default by the Depositor under, result in the acceleration of any obligation under, or breach any provision of any loan agreement, mortgage, indenture or other agreement or instrument to which the Depositor is a party or by which any of their respective properties is or may be bound or affected, which default, acceleration or breach reasonably could result in a Material Adverse Change; or

(iii)    result in or require the creation of any lien upon or in respect of any assets of the Depositor, which lien could reasonably be expected to result in a Material Adverse Change.

(e)    *Legal Proceedings*.  There is no action, proceeding or investigation by or before any court, governmental or administrative agency or arbitrator against or affecting the Depositor or any of its subsidiaries, any properties or rights of the Depositor or any of its subsidiaries or any of the Mortgage Loans pending or, to the Depositor's knowledge after reasonable inquiry, threatened, which, in any case, if decided adversely to the Depositor or any such subsidiary could result in a Material Adverse Change with respect to the Depositor.

(f)    *No Default*.  The Depositor is not in default under or with respect to any of its contractual obligations in any respect which could have a material adverse effect on the rights, interests or remedies of the Class A Certificate Insurer hereunder or under the other Operative Documents or on its ability to perform its obligations hereunder or under the other Operative Documents to which it is a party.  No Default or Event of Default has occurred and is continuing.

(g)    *Valid and Binding Obligations*.  The Operative Documents (other than the Certificates), when executed and delivered by the Depositor, will constitute the legal, valid and binding obligations of the Depositor, enforceable in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and general equitable principles and public policy considerations as to rights of indemnification for violations of federal securities laws.    The Certificates, when executed, authenticated and delivered in accordance with the Pooling and Servicing Agreement, will be validly issued and outstanding and entitled to the benefits of the Pooling and Servicing Agreement.  The Depositor will not at any time in the future deny that the Operative Documents to which it is a party constitute the legal, valid and binding obligations of the Depositor.

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

(h)    *Compliance with Law, etc.*  No practice, procedure or policy employed or proposed to be employed by the Depositor in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to it which, if enforced, could reasonably be expected to result in a Material Adverse Change with respect to it or have a material adverse effect on the Transaction.

(j)    *Good Title; Absence of Liens or Security Interest.*  The Trustee on behalf of the Trust is the owner of, and has good and marketable title to, all of the Mortgage Loans free and clear of all liens and all substitutions therefor and additions thereto delivered under the Pooling and Servicing Agreement.

(k)    *Taxes.*  The Depositor has filed (or caused to be filed) prior to the date hereof all federal and state tax returns that are required to be filed and has paid all taxes, including any assessments received by it that are not being contested in good faith, to the extent that such taxes have become due, except with respect to any failures to file or pay that, individually or in the aggregate, would not result in a Material Adverse Change with respect to the Depositor.  Any taxes, fees and other governmental charges payable by the Depositor in connection with the Transaction, the execution and delivery of the Operative Documents and the issuance of the Certificates have been paid or shall have been paid at or prior to the Closing Date if such taxes, fees or other governmental charges were due on or prior to the Closing Date.

(l)    *Accuracy of Information.*  Neither the Operative Documents nor other material information relating to the Mortgage Loans, the operations of the Depositor or the financial condition of the Depositor (collectively, the "Depositor Documents"), as amended, supplemented or superseded, furnished to the Class A Certificate Insurer in writing or in electronic form by the Depositor contains any statement of a material fact which was untrue or misleading in any material respect when made.  The Depositor does not have any knowledge of any circumstances that could reasonably be expected to cause a Material Adverse Change with respect to the Depositor.  Since the furnishing of the Depositor Documents, there has been no change nor any development or event involving a prospective change known to the Depositor that would render any of the Depositor Documents untrue or misleading in any material respect.  Without limiting the generality of the foregoing, the information in the Data Tape with respect to each Mortgage Loan is true and correct as of the Cut-off Date.

(m)    *Compliance With Securities Laws.*  The offer of the Certificates complies or shall comply in all material respects with all requirements of law.  Without limiting the foregoing, the information relating to the Depositor in the Offering Document does not contain any untrue statement of a material fact and does not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; *provided, however,* that no representation is made with respect to the information in the Offering Document regarding the Class A Certificate Insurer set forth under the caption "The Class A Certificate Insurer" or the financial statements of the Class A Certificate Insurer as included in the Offering Document, the Servicer Information and the Underwriter Information. Based upon advice of legal counsel, the Trust is not required to be registered as an "investment company" under the Investment Company Act.

[TPW: NYLEGAL:673906.3] 20681-00010 05/15/2007 11:40 AM

(n)    *Operative Documents*.  Each of the representations and warranties of the Depositor contained in the applicable Operative Documents is true and correct in all material respects and the Depositor hereby makes each such representation and warranty to, and for the benefit of, the Class A Certificate Insurer as if the same were set forth in full herein.  The Depositor will not at any time in the future deny that the Operative Documents to which it is a party constitute the legal, valid and binding obligations of the Depositor.

(o)    *Solvency; Fraudulent Conveyance*.  The Depositor is solvent and shall not be rendered insolvent by the Transaction and, after giving effect to the Transaction, the Depositor shall not be left with an unreasonably small amount of capital with which to engage in the ordinary course of its business, and the Depositor does not intend to incur, or believe that it has incurred, debts beyond its ability to pay as they mature.  The Depositor does not contemplate the commencement of insolvency, liquidation or consolidation proceedings or the appointment of a receiver, liquidator, conservator, trustee or similar official in respect of the Depositor or any of its assets.  The amount of consideration being received by the Depositor upon the transfer of the Mortgage Loans to the Trust constitutes reasonably equivalent value and fair consideration for ownership interest evidenced by the Mortgage Loans.  The amount of consideration being received by the Trust upon the sale of the Certificates constitutes reasonably equivalent value and fair consideration for the ownership and/or debt interest evidenced by the Certificates. SunTrust is not transferring the Mortgage Loans to the GMACM, GMACM is not transferring the Mortgage Loans to the Depositor, the Depositor is not transferring the Mortgage Loans to the Trustee on behalf of the Trust, nor is the Trust selling the Certificates, as provided in the Operative Documents, with any intent to hinder, delay or defraud any of SunTrust's, Wells Fargo's, GMACM's, the Trust's or the Depositor's creditors.

Section 2.05    *Affirmative Covenants of the Depositor*.  The Depositor hereby agrees that during the term of this Insurance Agreement, unless the Class A Certificate Insurer shall otherwise expressly consent in writing:

(a)    *Compliance With Agreements and Applicable Laws*.  The Depositor shall comply in all material respects with the terms and conditions of and perform its obligations under the Operative Documents to which it is a party in all cases in which failure to so comply or perform would result in a default thereunder and shall comply with all requirements of any law, rule or regulation applicable to it in all circumstances where non-compliance reasonably could be expected to result in a Material Adverse Change.

(b)    *Corporate Existence*.  The Depositor and its respective successors and permitted assigns shall maintain its corporate or trust existence, as applicable, and shall at all times continue to be duly organized under the laws of their formation and duly qualified and duly authorized (as described in subsections 2.01(a), (b) and (c) hereof) and shall conduct its business in accordance with the terms of its applicable organizational documents.

(c)    *Financial Statements; Accountants' Reports; Other Information*.  The Depositor shall keep or cause to be kept in reasonable detail books and records of account of its assets and business relating to the Transaction, and shall, as applicable, clearly reflect therein the sale of the Mortgage Loans GMACM, the sale of the Mortgage Loans to the Depositor, the sale

19

of the Mortgage Loans to the Trustee on behalf of the Trust.   The Depositor shall furnish or cause to be furnished to the Class A Certificate Insurer:

(i)      *Other Information.*   (A) Promptly upon request therefore, copies of all schedules, financial statements or other similar reports delivered to or by the Depositor, the Master Servicer pursuant to the terms of any of the Operative Documents, including all reports provided to any of the Master Servicer, Securities Administrator, Trustee or any Certificateholder pursuant to the Pooling and Servicing Agreement, (B) promptly upon request, such other data as the Class A Certificate Insurer may reasonably request and available to the Depositor.

(d)      *Access to Records; Discussions with Officers and Accountants.*   Once in each calendar year, or at any time following any withdrawal, reduction or qualification of any rating assigned to any of the Certificates (without regard to the Policy) (a "Depositor Ratings Event"), following the occurrence of any Default or Event of Default that has not been waived or cured, at any time following the occurrence of a Trigger Event, the Depositor shall, upon the reasonable request of the Class A Certificate Insurer, permit the Class A Certificate Insurer or its authorized agents to inspect the books and records of the Depositor as they may relate to the Mortgage Loans, the Certificates, the obligations of the Depositor under the Operative Documents to which it is a party and the Transaction;

Such inspections and discussions shall be conducted during normal business hours and shall not unreasonably disrupt the business of the Depositor.   The books and records of the Depositor shall be maintained at the address of the Depositor designated herein for receipt of notices, unless the Depositor shall otherwise advise the parties hereto in writing.

All of the inspections, discussions and due diligence referred to in this Section 2.02(d) shall be at the expense of the Class A Certificate Insurer; *provided, however*, that any such undertaking following a Depositor Ratings Event, a Trigger Event or the occurrence of a Default or Event of Default, that remains uncured and unwaived, shall be at the expense of SunTrust.

(e)      *Notice of Material Events.*   The Depositor shall be obligated (which obligation shall be satisfied as to the Depositor if performed by SunTrust, GMACM, the Trustee or the Depositor) upon actual knowledge thereof to promptly to inform the Class A Certificate Insurer in writing of the occurrence of any of the following:

(i)      the submission of any claim or the initiation or threat of any legal process, litigation or administrative or judicial investigation, or rule making or disciplinary proceeding by or against it that (A) would be required to be disclosed to the Commission or its shareholders that relates to the Mortgage Loans, the Transaction or its ability to perform its obligations under the Operative Documents or (B) could result in a Material Adverse Change with respect to it or a material adverse effect on the Transaction, or to the best of the knowledge of the Depositor, the initiation of any proceeding or the promulgation of any proceeding or any proposed or final rule which would likely result in a Material Adverse Change with respect to it or any of its respective subsidiaries or a material adverse effect on the Transaction;

[TPW: NYLEGAL:673906.3] 20681-00010 05/15/2007 11:40 AM

(ii)    any change in the location of the principal office or jurisdiction of formation of it or any of its respective subsidiaries;

(iii)    the occurrence of any Default or Event of Default or any Material Adverse Change in respect of it;

(iv)    the commencement of any proceedings by or against it under any applicable bankruptcy, reorganization, liquidation, rehabilitation, insolvency or other similar law now or hereafter in effect or of any proceeding in which a receiver, liquidator, conservator, trustee or similar official shall have been, or may be, appointed or requested for it or any of its respective assets; or

(v)    the receipt of notice that (A) it is being placed under regulatory supervision, (B) any license, permit, charter, registration or approval necessary for the conduct of its business is to be, or may be, suspended or revoked or (C) it is to cease and desist any practice, procedure or policy employed by it in the conduct of its respective business, and such suspension, revocation or cessation may reasonably be expected to result in a Material Adverse Change with respect to it or a material adverse effect on the Transaction.

(f)    *Financing Statements and Further Assurances*.  The Depositor shall, upon the reasonable request of the Class A Certificate Insurer, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, within ten days of such request, such amendments hereto and such further instruments and take such further action as may be reasonably necessary to effectuate the intention, performance and provisions of the Operative Documents.  In addition, the Depositor agrees to cooperate with S&P and Moody's in connection with any review of the Transaction that may be undertaken by S&P and Moody's after the date hereof.

(g)    *Maintenance of Licenses*.  The Depositor, and any successors thereof, shall maintain all licenses, permits, charters and registrations the loss or suspension of which could result in a Material Adverse Change.

(h)    *Disclosure Document*.  It will not use, or distribute to any Person for use, any information relating to the Class A Certificate Insurer unless such information has been furnished by the Class A Certificate Insurer and the use or distribution of such information has been approved by the Class A Certificate Insurer in writing.  The Class A Certificate Insurer hereby consents to the inclusion of the information in respect of the Class A Certificate Insurer included as of the date hereof in the Offering Document.  Any Offering Document delivered with respect to the Certificates shall clearly disclose that the Policy is not covered by the property/casualty insurance security fund specified in Article 76 of the New York Insurance Law.

(i)    *Third-Party Beneficiary*.    The Depositor agrees that the Class A Certificate Insurer shall have all rights provided to the Class A Certificate Insurer in the Operative Documents and that the Class A Certificate Insurer shall constitute a third-party beneficiary with respect to such rights in respect of the Operative Documents and hereby

21

incorporates and restates its representations, warranties and covenants as set forth therein for the benefit of the Class A Certificate Insurer. The Class A Certificate Insurer agrees that the rights it shall have as a third-party beneficiary under the Pooling and Servicing Agreement shall be limited to the rights granted to it and to the Certificateholders in the Pooling and Servicing Agreement.

(j)     *Corporate Formalities*.  The Depositor shall observe all the formalities necessary to preserve its corporate or trust existence, as applicable, under the laws of the State of its formation, including, as applicable, (i) the obligation to hold annual meetings of its beneficial owners, shareholders or its board of directors and (ii) the obligation to prepare and file annual income, franchise and other tax returns.

(k)     *Closing Documents*.  The Depositor shall provide or cause to be provided to the Class A Certificate Insurer an executed original copy of each document executed in connection with the Transaction within 30 days after the Closing Date.

Section 2.06   *Negative Covenants of the Depositor.*  The Depositor hereby agrees that during the term of this Insurance Agreement, unless the Class A Certificate Insurer shall otherwise expressly consent in writing:

(a)     *Impairment of Rights*.  The Depositor shall take any action, or fail to take any action, if such action or failure to take action may result in a Material Adverse Change with respect to the Depositor, nor interfere in any material respect with the enforcement of any rights of the Class A Certificate Insurer under or with respect to any of the Operative Documents or the Policy.  The Depositor shall give the Class A Certificate Insurer written notice of any such action or, to the best of the knowledge of any of the Depositor, any such failure to act on the earlier of: (i) the date upon which any publicly available filing or release is made with respect to such action or failure to act and (ii) promptly prior to the date of consummation of such action or failure to act.  The Depositor shall furnish to the Class A Certificate Insurer all information reasonably requested by the Class A Certificate Insurer that is necessary to determine compliance with this paragraph.

(b)     *Waiver, Amendments, Etc*.  Unless otherwise provided in the Operative Documents, the Depositor shall not modify, waive or amend, or consent to any modification, waiver or amendment of, any of the terms, provisions or conditions of the Operative Documents to which it is a party (other than any amendment to the Offering Document required by law) without the prior written consent of the Class A Certificate Insurer thereto, which consent shall not be unreasonably withheld, conditioned or delayed.

(c)     *Limitation on Mergers, Etc*.  The Depositor shall not consolidate with or merge with or into any Person or transfer all or substantially all of its assets to any Person or liquidate or dissolve except as provided in the Operative Documents or as permitted hereby.  The Depositor shall furnish to the Class A Certificate Insurer all information requested by the Class A Certificate Insurer that is reasonably necessary to determine compliance with this paragraph.

(d)     *Successors*.  Unless the Class A Certificate Insurer is currently in default under this Insurance Agreement, the Depositor shall not terminate or designate, or consent to the

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

termination or designation of, any successor Paying Agent, Master Servicer, Servicer, Custodian, Securities Administrator or Trustee without the prior written approval of the Class A Certificate Insurer.

(e)     *Bankruptcy Remoteness of the Depositor*.  The Depositor shall cause the Depositor to fail to maintain its status as a bankruptcy remote entity.

Section 2.07  *Representations, Warranties and Covenants of the Class A Certificate Insurer*.  The Class A Certificate Insurer represents and warrants as of the Closing Date, and, in the case of Section 2.07(h) below, covenants during the term of this Insurance Agreement, to the Underwriters, the Co-Manager, SunTrust, SunTrust Bank, Wells Fargo, GMACM and the Depositor as follows:

(a)     *Organization and Licensing*.  The Class A Certificate Insurer is a duly incorporated and existing New York stock insurance company licensed to do business in the State of New York and is in good standing under the laws of such state.

(b)     *Corporate Power*.  The Class A Certificate Insurer has the corporate power and authority to issue the Policy, execute and deliver this Insurance Agreement and perform all of its obligations hereunder and thereunder.

(c)     *Authorization; Approvals; No Conflicts*.  The issuance of the Policy and the execution, delivery and performance of this Insurance Agreement have been duly authorized by all necessary corporate proceedings and will not result in any violation of (i) any law, regulation, rule or order applicable to the Class A Certificate Insurer, (ii) the Class A Certificate Insurer's organizational documents or (iii) any material indenture, contract or other agreement to which the Class A Certificate Insurer is a party.  No further approvals or filings of any kind, including, without limitation, any further approvals of or further filings with any governmental agency or other governmental authority, or any approval of the Class A Certificate Insurer's board of directors or stockholders, are necessary for the Policy and this Insurance Agreement to constitute the legal, valid and binding obligations of the Class A Certificate Insurer.

(d)     *Enforceability*.  The Policy, when issued, and this Insurance Agreement will each constitute a legal, valid and binding obligation of the Class A Certificate Insurer, enforceable in accordance with its terms, subject to applicable laws affecting the enforcement of creditors' rights generally.

(e)     *Financial Information*.  As of the date of the Preliminary Prospectus Supplement, the Prospectus Supplement and the Closing Date, the financial statements of the Class A Certificate Insurer incorporated by reference in the Preliminary Prospectus Supplement and the Prospectus Supplement (a) fairly present in all material respects the financial condition of the Class A Certificate Insurer as of the dates referenced therein and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied, and, since the date of the last such financial statements there has been no material change in such financial condition of the Class A Certificate Insurer which would materially and adversely affect its ability to perform its obligations under the Policy, and (b) comply with Item 1114(b)(2)(ii) of Regulation AB.  As of the date of any financial statements of the Class A

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

Certificate Insurer incorporated by reference into Securities Exchange Act reports of the Depositor pursuant to Section 2.07(k) below, such financial statements of the Class A Certificate Insurer so incorporated by reference (a) fairly present in all material respects the financial condition of the Class A Certificate Insurer as of the dates referenced therein and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied, and, since the date of the last such financial statements there has been no material change in such financial condition of the Class A Certificate Insurer which would materially and adversely affect its ability to perform its obligations under the Policy, and (b) comply with Item 1114(b)(2)(ii) of Regulation AB.   Financial statements of the Class A Certificate Insurer incorporated by reference into the Prospectus Supplement or into Securities Exchange Act reports of the Depositor are referred to herein collectively as "<u>Insurer Financial Statements</u>."

(f)    *Class A Certificate Insurer Information*.  The Class A Certificate Insurer Information in the Offering Document, is limited due only to the fact that the Class A Certificate Insurer is not the issuer under the Securities Act of 1933 in the transaction described in the Offering Document and, therefore, does not purport to provide the scope of disclosure required to be included in a prospectus under the Securities Act of 1933, in connection with the offer and the sale of securities of the Class A Certificate Insurer, if Class A Certificate Insurer were the issuer.  Within such limited scope of disclosure, as of the date of each Offering Document and as of the Closing Date, the Class A Certificate Insurer Information complies with any applicable requirements of Item 1114(b)(1) of Regulation AB and does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

(g)    *No Litigation*.  There are no actions, suits, proceedings or investigations pending or, to the best of the Class A Certificate Insurer's knowledge, threatened against it at law or in equity or before or by any court, governmental agency, board or commission or any arbitrator which should reasonably be expected to materially and adversely affect its ability to perform its obligations under the Policy or this Insurance Agreement.

(h)    *Confidential Information*.  The Class A Certificate Insurer agrees that it and its shareholders, directors, agents, accountants and attorneys shall keep confidential any information provided to the Class A Certificate Insurer pursuant to or in connection with this Insurance Agreement or the issuance of the Policy or otherwise related to the Transaction, including any matter of which it becomes aware during the inspections conducted or discussions had pursuant to Section 2.02(d) or Section 2.05(d), as applicable, unless such information is readily available from public sources or except as may be otherwise required by regulation, law or court order or requested by appropriate governmental authorities or as necessary to preserve its rights or security under or to enforce the Operative Documents or the Policy; *provided, however,* that the foregoing shall not limit the right of the Class A Certificate Insurer to make such information available to its regulators, securities rating agencies, reinsurers, credit and liquidity providers, counsel and accountants.  If the Class A Certificate Insurer is requested or required (by oral questions, interrogatories, requests for information or documents subpoena, civil investigative demand or similar process) to disclose information provided to the Class A Certificate Insurer pursuant to or in connection with this Insurance Agreement or the issuance of the Policy or otherwise related to the Transaction, including any information of which it becomes

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

aware through such inspections or discussions, the Class A Certificate Insurer will promptly notify SunTrust of such request(s) so that SunTrust may seek, at its own expense, an appropriate protective order and/or waive the Class A Certificate Insurer's compliance with the provisions of this Insurance Agreement.  If, in the absence of a protective order or the receipt of a waiver hereunder, the Class A Certificate Insurer is, nonetheless, in the opinion of its counsel, compelled to disclose such information to any tribunal or else stand liable for contempt or suffer other censure or significant penalty, the Class A Certificate Insurer may disclose such information to such tribunal that the Class A Certificate Insurer is compelled to disclose; *provided, however,* that a copy of all information disclosed is provided to SunTrust promptly upon such disclosure.

(i)    *Compliance with Law, Etc.*  No practice, procedure or policy employed, or proposed to be employed, by the Class A Certificate Insurer in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to the Class A Certificate Insurer that, if enforced, could result in a Material Adverse Change with respect to the Class A Certificate Insurer.

(j)    *Policy Exempt from Registration.*  The Policy is exempt from registration under the Securities Act.

(k)    *Incorporation by Reference.*  As of the date of the Preliminary Prospectus Supplement and the Prospectus Supplement and thereafter through the Incorporation Termination Date the Class A Certificate Insurer hereby consents to the incorporation by reference of its financial statements into the Securities Exchange Act reports of the Depositor filed with the Commission to the extent such incorporation by reference is necessary to comply (with respect to the Class A Certificate Insurer as a credit enhancement provider with respect to the Insured Certificates) with the requirements of Item 1114(b)(2) of Regulation AB.  The Class A Certificate Insurer represents that (i) it is required to file reports with the Commission pursuant to Section 13(a) or 15(d) of the Securities Exchange Act, (ii) the Class A Certificate Insurer has filed all reports and other materials required to be filed by such requirements during the preceding 12 months (or such shorter period that such party was required to file such reports and materials) and (iii) the reports filed by the Class A Certificate Insurer include (or properly incorporate by reference) the financial statements of the Class A Certificate Insurer; provided, however, that if the representations and warranties in this sentence are no longer true and correct, the only consequence of such breach shall be that the Class A Certificate Insurer shall be required to, and shall, provide the financial information required to be provided pursuant to the previous sentence in EDGAR-compatible format as promptly as reasonably practicable after the date on which such information is publicly available, until the earlier to occur of (A) the Incorporation Termination Date or (B) the date on which such representations and warranties are again true and correct.

(l)    *Accountants' Consents.*  The Class A Certificate Insurer shall use its commercially reasonable efforts to obtain, as promptly as reasonably practicable following receipt of a request therefor as described below, at the Sponsor's expense, the consent of the Class A Certificate Insurer's independent certified public accountants to the incorporation by reference of such accountants' report on the Class A Certificate Insurer's annual audited financial statements into a periodic report on Form 10-D or Form 10-K (which may be

25

incorporated by reference into the Depositor's registration statement) or an updated prospectus supplement, as may be reasonably requested by the Depositor in order to comply with the requirements of Item 1114(b)(2) of Regulation AB promulgated under the Securities Act and of Rules 15d-1 and 15d-17 promulgated under the Exchange Act or Form S-3 in the case of an updated prospectus supplement.   The Class A Certificate Insurer acknowledges the Depositor's reasonable expectation that, if the Class A Certificate Insurer is successful in obtaining the consent of the Class A Certificate Insurer's independent certified public accountants to the incorporation by reference of such accountants' report on the Class A Certificate Insurer's annual audited financial statements in one or more other prospectuses or registration statements at or about the time of the Depositor's request, the Class A Certificate Insurer should be successful in obtaining the consent of such accountants pursuant to the immediately preceding sentence.

(m)    *Affiliations*.  The Class A Certificate Insurer agrees that

(i)    To the Class A Certificate Insurer's actual knowledge, as of the date of the Prospectus Supplement and the Closing Date, the Class A Certificate Insurer is not an affiliate (as defined in Rule 405 of the Securities Act, 17 C.F.R. §§230.405) of the 1119 Parties, without regard to affiliations by common control with the Class A Certificate Insurer; and

(ii)    Upon receipt of an Officer's Certificate of the Depositor furnishing an updated list of the 1119 parties on or prior to January 31 of each calendar year, the Class A Certificate Insurer will provide, no later than March 15 of such year, an Officer's Certificate certifying whether, to the Class A Certificate Insurer's actual knowledge, as of such date, the Class A Certificate Insurer is an affiliate (as defined in Rule 405 of the Securities Act, 17 C.F.R. §§230.405) of the 1119 Parties identified in the Depositor's Officer's Certificate, without regard to affiliations by common control with the Class A Certificate Insurer, or stating any affiliations with such 1119 Parties actually known to the Class A Certificate Insurer.

(n)    *Addresses for Regulation AB Notices to or from Class A Certificate Insurer*.  Any notice, request or Officer's Certificate deliverable to the Class A Certificate Insurer pursuant to this Insurance Agreement concerning Securities Exchange Act requirements (including, without limitation, items delivered to the Class A Certificate Insurer pursuant to Section 2.07(l) or Section 2.07(m)(ii) above) shall be delivered via e-mail to the Class A Certificate Insurer at the following e-mail address, or to such other address as the Class A Certificate Insurer may specify to the Depositor in writing in the future pursuant to Section 6.02 of this Insurance Agreement :  xlca.reg.ab@scafg.com.  Any notice or communication required to be delivered by the Class A Certificate Insurer to the Sponsor or the Depositor pursuant to this Section 2.07 shall be delivered via e-mail to the following e-mail address, or to such other address as the Depositor may specify to the Class A Certificate Insurer in writing in the future pursuant to Section 6.02 of this Insurance Agreement.

**ARTICLE 3**
**THE POLICY; REIMBURSEMENT**

26

Section 3.01    *Issuance of the Policy.*  The Class A Certificate Insurer agrees to issue the Policy on the Closing Date subject to satisfaction of the conditions precedent set forth below on or prior to the Closing Date:

(a)    *Payment of Premium and Expenses; Premium Letter.*  The Class A Certificate Insurer shall have been reimbursed for all fees and expenses identified in the Premium Letter or in Section 3.02 below as payable at closing, unless otherwise agreed to in writing between SunTrust and the Class A Certificate Insurer;

(b)    *Operative Documents.*  The Class A Certificate Insurer shall have received a copy of each of the Operative Documents, in form and substance reasonably satisfactory to the Class A Certificate Insurer, duly authorized, executed and delivered by each party thereto;

(c)    *Representations and Warranties.*  The representations and warranties of SunTrust, Wells Fargo, the Depositor and GMACM dated the Closing Date set forth or incorporated by reference in this Insurance Agreement shall be true and correct on and as of the Closing Date as if made on the Closing Date;

(d)    *Opinions of Counsel.*  The Class A Certificate Insurer shall have received all opinions of counsel addressed to any of Moody's, S&P, the Securities Administrator, the Trustee, the Master Servicer, SunTrust, GMACM, the Depositor, the Underwriter and the Co-Manager, in respect of SunTrust, GMACM and the Depositor or any other parties to the Operative Documents and the Transaction dated the Closing Date in form and substance reasonably satisfactory to the Class A Certificate Insurer, addressed to the Class A Certificate Insurer and addressing such matters as the Class A Certificate Insurer may reasonably request, and the counsel providing each such opinion shall have been instructed by its client to deliver such opinion to the addressees thereof;

(e)    *No Litigation, Etc.*  No suit, action or other proceeding, investigation or injunction, or final judgment relating thereto, shall be pending or threatened before any court, governmental or administrative agency or arbitrator in which it is sought to restrain or prohibit or to obtain damages or other relief in connection with any of the Operative Documents or the consummation of the Transaction;

(f)    *Legality.*  No statute, rule, regulation or order shall have been enacted, entered or deemed applicable by any government or governmental or administrative agency or court that would make the Transaction illegal or otherwise prevent the consummation thereof;

(g)    *Satisfaction of Conditions of the Underwriting Agreement.*  All conditions in the Underwriting Agreement relating to the Underwriters' obligations, if any, to purchase the Offered Certificates (other than the issuance of the Policy) shall have been satisfied, without taking into account any waiver by the Underwriters of any condition unless such waiver has been approved by the Class A Certificate Insurer.  The Class A Certificate Insurer shall have received copies of each of the documents, and shall be entitled to rely on each of the documents, required to be delivered to the Underwriters pursuant to the Underwriting Agreement;

(h)    *Issuance of Ratings.*  The Class A Certificate Insurer shall have received confirmation that the risk secured by the Policy constitutes at least a "AA-" risk by S&P and a

27

"A3" risk by Moody's, in each case without regard to the Policy, and that the Insured Certificates that are rated, when issued, will be rated "AAA" by S&P, "Aaa" by Moody's and "AAA" by DBRS;

(i)    *No Default*.  No Default or Event of Default shall have occurred;

(j)    *Satisfactory Documentation*.  The Class A Certificate Insurer and its counsel shall have reasonably determined that all documents, certificates and opinions to be delivered in connection with the Certificates conform to the terms of the Pooling and Servicing Agreement, the Offering Document and this Insurance Agreement; and

(k)    *Delivery of Mortgage Documents*.  The Class A Certificate Insurer shall have received evidence satisfactory to it that (i) delivery has been made to the Trustee or the Custodian on behalf of the Trustee of the Mortgage File required to be so delivered pursuant to Section 2.01 of the Pooling and Servicing Agreement and (ii) each Mortgage Note is endorsed as provided in the Custodial Agreement.

Section 3.02    *Payment of Fees and Premium*.

(a)    *Rating Agency Fees*.  SunTrust will pay the initial fees of the Rating Agencies with respect to the Transaction contemplated hereby in full on the Closing Date, or otherwise provided for to the satisfaction of Class A Certificate Insurer.  All periodic and subsequent fees of the Rating Agencies with respect to, and directly allocable to, the Certificates shall be for the account of, and shall be billed to, SunTrust.  Under no circumstances shall the Class A Certificate Insurer have any obligation to pay any fees of the Rating Agencies.  Notwithstanding the foregoing, the fees for any other rating agency shall be paid by the party requesting such other agency's rating, unless such other agency is a substitute for any of the Rating Agencies in the event that any of the Rating Agencies is no longer rating the Certificates, in which case the cost for such agency shall be paid by SunTrust.

(b)    *Legal, Accounting and Due Diligence Fees*.  SunTrust shall pay or cause to be paid to the Class A Certificate Insurer, at the Closing Date, legal fees and accounting fees incurred by the Class A Certificate Insurer in connection with the issuance of the Policy amounts and as described in the Premium Letter.

(c)    *Premium*.  In consideration of the issuance by the Class A Certificate Insurer of the Policy, the Class A Certificate Insurer shall be paid the Premium in Premium Amounts in accordance with the terms of the Premium Letter and Sections 5.01 and 5.10 of the Pooling and Servicing Agreement.  The Premium Amounts paid hereunder and pursuant to the Operative Documents and the Premium Letter shall be nonrefundable without regard to whether the Class A Certificate Insurer makes any payment under the Policy or any other circumstances relating to the Certificates or provision being made for payment of the Certificates prior to maturity.  All payments of Premium Amounts shall be made by wire transfer to an account designated from time to time by the Class A Certificate Insurer by written notice to the Securities Administrator.  Although the Premium is fully earned by the Class A Certificate Insurer as of the date of issuance, the Premium shall be payable in periodic installments of Premium Amounts as

[TPW: NYLEGAL:673906.3] 20681-00010 05/15/2007 11:40 AM

provided in the Premium Letter. The Premium Amount for each period shall be calculated based on a 360-day year consisting of twelve 30-day months.

Section 3.03    *Reimbursement Obligation*.

(a)    As and when due in accordance with and from the funds specified in Section 5.01 of the Pooling and Servicing Agreement, the Class A Certificate Insurer shall be entitled to reimbursement for any payment made by the Class A Certificate Insurer under the Policy (including any portion of any amounts that are payable with Insured Amounts under the Policy paid as a result of the nonpayment of Premium Amounts to the Class A Certificate Insurer), which reimbursement shall be due and payable on the date that any amount is paid thereunder, in an amount equal to the amount to be so paid and all amounts previously paid that remain unreimbursed, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect of any unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate.

(b)    Anything in this Insurance Agreement to the contrary notwithstanding, SunTrust agrees to pay to the Class A Certificate Insurer, and the Class A Certificate Insurer shall be entitled to reimbursement from SunTrust and shall have full recourse against SunTrust for, any payment made under the Policy arising as a result of SunTrust's failure to substitute for or deposit an amount in respect of any defective Mortgage Loan as required pursuant to Section 2.03 of the Pooling and Servicing Agreement, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect of any such unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate.

(c)    SunTrust agrees to pay to the Class A Certificate Insurer any and all charges, fees, costs and expenses that the Class A Certificate Insurer may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with (i) the enforcement, defense or preservation of any rights against SunTrust in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding (including any insolvency proceeding in respect of any Transaction participant or any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction or (ii) any amendment, waiver or other action with respect to, or related to, any Operative Document, whether or not executed or completed. Provided that three Business Days written notice of the intended payment or incurrence shall have been given to SunTrust by the Class A Certificate Insurer, such reimbursement shall be due on the dates on which such charges, fees, costs or expenses are paid or incurred by the Class A Certificate Insurer.

(d)    SunTrust agrees to pay to the Class A Certificate Insurer interest (without duplication) on any and all amounts described in subsections 3.03(b), 3.03(c) and 3.03(e) and Sections 3.02 and 3.04 from the date such amounts become due or, in the case of subsections 3.02(c) or 3.03(c) or Section 3.04, are incurred or paid by the Class A Certificate Insurer until payment thereof in full (after as well as before judgment), at the Late Payment Rate.

29

(e)    The Class A Certificate Insurer shall have no right to set-off payments to be made under the Policy against payments to be made to the Class A Certificate Insurer by SunTrust or the Depositor (or any person or organization acting on their behalf).

Section 3.04    *Indemnification.*

(a)    In addition to any and all of the Class A Certificate Insurer's rights of reimbursement, indemnification, subrogation and to any other rights of the Class A Certificate Insurer pursuant hereto or under law or in equity, SunTrust, Wells Fargo, GMACM and the Depositor severally but not jointly agree to pay, and to protect, indemnify and save harmless, the Class A Certificate Insurer and its officers, directors, shareholders, employees, agents and each Person, if any, who controls the Class A Certificate Insurer within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act, from and against any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or relating to the breach by SunTrust, Wells Fargo, GMACM or the Depositor, as applicable, of any of the representations or warranties contained in Section 2.01 or Section 2.04, as applicable, or arising out of or relating to the transactions contemplated by the Operative Documents by reason of:

(i)    any omission or action (other than of or by the Class A Certificate Insurer or in the Class A Certificate Insurer Information) in connection with the offering, issuance or delivery of the Certificates by SunTrust, GMACM, the Depositor, the Master Servicer or the Securities Administrator, as applicable;

(ii)    the misfeasance or malfeasance of, or negligence, bad faith, willful misconduct or theft committed by, any director, officer, employee or agent of SunTrust, GMACM, the Depositor, the Master Servicer or the Securities Administrator, as applicable, in connection with any Transaction arising from or relating to the Operative Documents;

(iii)    the violation or alleged violation by SunTrust, GMACM, the Depositor, the Master Servicer or the Securities Administrator, as applicable, of any domestic or foreign law, rule or regulation, or any judgment, order or decree applicable to it;

(iv)    the breach by SunTrust, GMACM, the Depositor, the Master Servicer or the Securities Administrator, as applicable, of any representation, warranty or covenant under any of the Operative Documents or the occurrence, in respect of SunTrust, the Master Servicer, GMACM or the Depositor, as applicable, under any of the Operative Documents of any "event of default" or any event which, with the giving of notice or the lapse of time or both, would constitute any "event of default"; or

(v)    any untrue statement or alleged untrue statement of a material fact provided by such party to be contained in the Offering Document or any omission or alleged omission to state therein a material fact with respect to such party required to be stated therein or necessary to make the statements therein, in light of the circumstances

30

under which they were made, not misleading, except insofar as such claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) arise out of or are based upon any untrue statement or alleged untrue statement of a material fact or omission or alleged omission of a material fact in the Class A Certificate Insurer Information or the Underwriter Information.

(b)     The Class A Certificate Insurer agrees to pay, and to protect, indemnify and save harmless, SunTrust, Wells Fargo, the Trustee, GMACM, the Depositor and their respective officers, directors, shareholders, employees, agents and each Person, if any, who controls SunTrust, Wells Fargo, the Trustee, GMACM and the Depositor within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or by reason of (i) any untrue statement or alleged untrue statement of a material fact contained in the Class A Certificate Insurer Information or any omission or alleged omission to state in the Class A Certificate Insurer Information a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading, (ii) any failure of the Class A Certificate Insurer to make a payment required to be made under the Policy or (iii) a breach of any of the representations and warranties of the Class A Certificate Insurer contained in Section 2.07.

(c)     If any action or proceeding (including any governmental investigation) shall be brought or asserted against any Person (individually, an "Indemnified Party" and, collectively, the "Indemnified Parties") in respect of which the indemnity provided in Section 3.04(a), (b) or (c) may be sought from SunTrust, Wells Fargo, the Depositor or GMACM on the one hand, or the Class A Certificate Insurer, on the other (each, an "Indemnifying Party") hereunder, each such Indemnified Party shall promptly notify the Indemnifying Party in writing, and the Indemnifying Party shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of all expenses. The omission so to notify the Indemnifying Party will not relieve it from any liability which it may have to any Indemnified Party except to the extent the Indemnifying Party is prejudiced thereby. The Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof at the expense of the Indemnified Party; provided, however, that the fees and expenses of such separate counsel shall be at the expense of the Indemnifying Party if (i) the Indemnifying Party has agreed to pay such fees and expenses, (ii) the Indemnifying Party shall have failed within a reasonable period of time to assume the defense of such action or proceeding and employ counsel reasonably satisfactory to the Indemnified Party in any such action or proceeding or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both the Indemnified Party and the Indemnifying Party, and the Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such action or proceeding

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

on behalf of such Indemnified Party, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time (in addition to local counsel) for the Indemnified Parties, which firm shall be designated in writing by the Indemnified Party and shall be reasonably satisfactory to the Indemnifying Party).  The Indemnifying Party shall not be liable for any settlement of any such action or proceeding effected without its written consent, which consent shall not be unreasonably withheld, conditioned or delayed, but, if settled with its written consent, or if there is a final judgment for the plaintiff in any such action or proceeding with respect to which the Indemnifying Party shall have received notice in accordance with this subsection (c), the Indemnifying Party agrees to indemnify and hold the Indemnified Parties harmless from and against any loss or liability by reason of such settlement or judgment. Notwithstanding anything in this paragraph to the contrary, the consent of such Indemnified Party shall not be required if such settlement fully discharges, with prejudice against the plaintiff, the claim or action against such Indemnified Party.

(d)    To provide for just and equitable contribution if the indemnification provided by the Indemnifying Party is determined to be unavailable or insufficient to hold harmless any Indemnified Party (other than due to application of this Section), each Indemnifying Party shall contribute to the losses incurred by the Indemnified Party on the basis of the relative fault of the Indemnifying Party, on the one hand, and the Indemnified Party, on the other hand; *provided, however*, that no party who is guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who is not guilty of such fraudulent misrepresentation.

Section 3.05    *Payment Procedure*.    In the event of any payment by the Class A Certificate Insurer, SunTrust, Wells Fargo, GMACM and the Depositor agree to accept the voucher or other evidence of payment as prima facie evidence of the propriety thereof and the liability, if any, described in Section 3.03 therefor to the Class A Certificate Insurer.  All payments to be made to the Class A Certificate Insurer under this Insurance Agreement shall be made to the Class A Certificate Insurer in lawful currency of the United States of America in immediately available funds at the notice address for the Class A Certificate Insurer as specified in the Pooling and Servicing Agreement on the date when due or as the Class A Certificate Insurer shall otherwise direct by written notice to the other parties hereto.  In the event that the date of any payment to the Class A Certificate Insurer or the expiration of any time period hereunder occurs on a day that is not a Business Day, then such payment or expiration of time period shall be made or occur on the next succeeding Business Day with the same force and effect as if such payment was made or time period expired on the scheduled date of payment or expiration date.

Section 3.06    *[Reserved.]*

Section 3.07    *Subrogation*.    Subject only to the priority of payment provisions of the Pooling and Servicing Agreement and not in limitation of the Class A Certificate Insurer's equitable right of subrogation, the parties hereto acknowledge that, to the extent of any payment made by the Class A Certificate Insurer pursuant to the Policy for which the Class A Certificate

Insurer has not been reimbursed, the Class A Certificate Insurer is to be fully subrogated to the extent of such payment and any additional interest due on any late payment, to the rights of the Holders of the Certificates to any moneys paid or payable in respect of the Certificates under the Operative Documents or otherwise. The parties hereto agree to such subrogation and, further, agree to execute such instruments and to take such actions as, in the sole judgment of the Class A Certificate Insurer, are necessary to evidence such subrogation and to perfect the rights of the Class A Certificate Insurer to receive any moneys paid or payable in respect of the Certificates under the Operative Documents or otherwise.

Section 3.08  *Deductions*.  All payments made to the Class A Certificate Insurer in respect of this Article III shall be made without any deduction or withholding for or on account of any tax, levy, impost, duty, charge, assessment or fee of any nature unless such deduction or withholding is required by applicable law, as modified by practice of any relevant governmental revenue authority, then in effect. If a payor is required to deduct or withhold, then such payor shall (a) promptly notify the Class A Certificate Insurer of such requirement, (b) pay to the Class A Certificate Insurer, in addition to the amount to which the Class A Certificate Insurer is otherwise entitled, such additional amount as is necessary to ensure that the net amount actually received by the Class A Certificate Insurer (free and clear of any taxes, whether assessed against the payor or the Class A Certificate Insurer) will equal the full amount the Class A Certificate Insurer would have received had no such deduction or withholding been required and (c) pay to the relevant authorities the full amount required to be deducted or withheld (including the full amount required to be deducted or withheld from any additional amount paid to the Class A Certificate Insurer pursuant to foregoing clause (b)).

## ARTICLE 4
## FURTHER AGREEMENTS

Section 4.01  *Effective Date; Term of the Insurance Agreement*.  This Insurance Agreement shall take effect on the Closing Date and shall remain in effect until the later of (a) such time as the Class A Certificate Insurer is no longer subject to a claim under the Policy and the Policy shall have been surrendered to the Class A Certificate Insurer for cancellation and (b) all amounts payable to the Class A Certificate Insurer by SunTrust, Wells Fargo, GMACM or the Depositor or from any other source hereunder or under the Operative Documents or the Policy and all amounts payable under the Insured Certificates have been paid in full; provided, however, that the provisions of Sections 3.02, 3.03 and 3.04 hereof shall survive any termination of this Insurance Agreement.

Section 4.02  *Further Assurances and Corrective Instruments*.

(a)  Except at such times as a default in payment under the Policy shall exist or shall have occurred, none of SunTrust, GMACM, the Master Servicer, the Securities Administrator or the Depositor shall grant any waiver of rights under any of the Operative Documents to which any of them is a party without the prior written consent of the Class A Certificate Insurer, which shall not be unreasonably withheld, conditioned or delayed and any

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

such waiver without prior written consent of the Class A Certificate Insurer shall be null and void and of no force or effect.

(b)     To the extent permitted by law, each of SunTrust, GMACM, the Master Servicer, the Securities Administrator and the Depositor agrees that it will, from time to time, following good faith negotiations in connection therewith, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements hereto and such further instruments as the Class A Certificate Insurer may reasonably request and as may be required in the Class A Certificate Insurer's reasonable judgment to effectuate the intention of or facilitate the performance of this Insurance Agreement.

Section 4.03    *Obligations Absolute*.

(a)     The obligations of SunTrust, the Master Servicer, the Securities Administrator, the Depositor and GMACM hereunder shall be absolute and unconditional and shall be paid or performed strictly in accordance with this Insurance Agreement under all circumstances irrespective of:

(i)     any lack of validity or enforceability of, or any amendment or other modifications of, or waiver, with respect to any of the Operative Documents or the Certificates that have not been approved by the Class A Certificate Insurer;

(ii)     any exchange or release of any other obligations hereunder;

(iii)     the existence of any claim, setoff, defense, reduction, abatement or other right that SunTrust, the Securities Administrator, the Master Servicer, the Depositor or GMACM may have at any time against the Class A Certificate Insurer or any other Person;

(iv)     any document presented in connection with the Policy proving to be forged, fraudulent, invalid or insufficient in any respect or any statement therein being untrue or inaccurate in any respect;

(v)     any payment by the Class A Certificate Insurer under the Policy against presentation of a certificate or other document that does not strictly comply with terms of the Policy;

(vi)     any failure of SunTrust, GMACM or the Depositor to receive the proceeds from the sale of the Certificates;

(vii)     any other circumstances, other than payment in full, that might otherwise constitute a defense available to, or discharge of, SunTrust, the Securities Administrator, the Master Servicer, the Depositor or GMACM in respect of any Operative Document;

(viii)     the bankruptcy or insolvency of the Class A Certificate Insurer or any other party;

34

(ix)   any default or alleged default of the Class A Certificate Insurer under the Policy; or

(x)   the inaccuracy or alleged inaccuracy of any notice or certificate upon which a claim under the Policy is based.

(b)   SunTrust, Wells Fargo, GMACM and the Depositor and any and all others who are now or may become liable for all or part of the obligations of SunTrust, Wells Fargo, GMACM or the Depositor under this Insurance Agreement renounce the right to assert as a defense to the performance of their respective obligations each of the following:  (i) to the extent permitted by law, any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness and obligations evidenced by any Operative Document or by any extension or renewal thereof; (ii) presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor and notice of protest; (iii) all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default or enforcement of any payment hereunder, except as required by the Operative Documents; and (iv) all rights of abatement, diminution, postponement or deduction, or to any defense other than payment, or to any right of setoff or recoupment arising out of any breach under any of the Operative Documents, by any party thereto or any beneficiary thereof, or out of any obligation at any time owing to SunTrust, Wells Fargo, GMACM or the Depositor.

(c)   SunTrust, Wells Fargo, GMACM and the Depositor and any and all others who are now or may become liable for all or part of the obligations of SunTrust, Wells Fargo, GMACM or the Depositor under this Insurance Agreement agree to be bound by this Insurance Agreement and (i) agree that its liabilities hereunder shall be unconditional and without regard to any set-off, counterclaim or the liability of any other Person for the payment hereof; (ii) agree that any consent, waiver or forbearance hereunder with respect to an event shall operate only for such event and not for any subsequent event; (iii) consent to any and all extensions of time that may be granted by the Class A Certificate Insurer with respect to any payment hereunder or other provisions hereof and to the release of any security at any time given for any payment hereunder, or any part thereof, with or without substitution, and to the release of any Person or entity liable for any such payment; and (iv) consent to the addition of any and all other makers, endorsers, guarantors and other obligors for any payment hereunder, and to the acceptance of any and all other security for any payment hereunder, and agree that the addition of any such obligors or security shall not affect the liability of the parties hereto for any payment hereunder.

(d)   Nothing herein shall be construed as prohibiting SunTrust, Wells Fargo, GMACM or the Depositor from pursuing any rights or remedies it may have against any Person in a separate legal proceeding.

Section 4.04   *Assignments; Reinsurance; Third-Party Rights.*

(a)   This Insurance Agreement shall be a continuing obligation of the parties hereto and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.   None of SunTrust, the Master Servicer, the Securities Administrator, the Depositor or GMACM may assign its rights under this Insurance Agreement,

[TPW: NYLEGAL:673906.3] 20681-00010 05/15/2007 11:40 AM

or delegate any of its duties hereunder, without the prior written consent of the Class A Certificate Insurer, which consent shall not be unreasonably withheld.  Any assignments made in violation of this Insurance Agreement shall be null and void.

(b)    The Class A Certificate Insurer shall have the right to give participations in its rights under this Insurance Agreement and to enter into contracts of reinsurance with respect to the Policy upon such terms and conditions as the Class A Certificate Insurer may in its discretion determine; *provided, however*, that no such participation or reinsurance agreement or arrangement shall relieve the Class A Certificate Insurer of any of its obligations hereunder or under the Policy, nor shall SunTrust, GMACM, the Master Servicer, the Securities Administrator or the Depositor be required to deal directly with any such parties.

(c)    In addition, the Class A Certificate Insurer shall be entitled to assign or pledge to any bank or other lender providing liquidity or credit with respect to the Transaction or the obligations of the Class A Certificate Insurer in connection therewith any rights of the Class A Certificate Insurer under the Operative Documents or with respect to any real or personal property or other interests pledged to the Class A Certificate Insurer, or in which the Class A Certificate Insurer has a security interest, in connection with the Transaction; *provided* that the Class A Certificate Insurer shall notify SunTrust in writing upon any such assignment.

(d)    Except as provided herein with respect to participants and reinsurers, nothing in this Insurance Agreement shall confer any right, remedy or claim, express or implied, upon any Person, including, particularly, any Holder, other than the Class A Certificate Insurer against SunTrust, the Depositor or GMACM, or SunTrust, the Depositor or GMACM against the Class A Certificate Insurer and all the terms, covenants, conditions, promises and agreements contained herein shall be for the sole and exclusive benefit of the parties hereto and their successors and permitted assigns.  None of the Securities Administrator, the Trustee or any Holder shall have any right to payment from any Premiums paid or payable hereunder or under the Pooling and Servicing Agreement or from any amounts paid by SunTrust pursuant to Sections 3.02 or 3.03.

Section 4.05  *Liability of the Class A Certificate Insurer*.  Neither the Class A Certificate Insurer nor any of its officers, directors or employees shall be liable or responsible for: (a) the use that may be made of the Policy by the Securities Administrator or the Trustee or for any acts or omissions of the Securities Administrator or the Trustee in connection therewith; (b) the validity, sufficiency, accuracy or genuineness of documents delivered to the Class A Certificate Insurer in connection with any claim under the Policy, or of any signatures thereon, even if such documents or signatures should in fact prove to be in any or all respects invalid, insufficient, fraudulent or forged (unless the Class A Certificate Insurer shall have actual knowledge thereof) or (c) any acts or omissions of the Servicer, the Master Servicer, the Depositor, the Securities Administrator or the Trustee in connection with the Transaction or the Operative Documents to which it is a party. In furtherance and not in limitation of the foregoing, the Class A Certificate Insurer may accept documents that appear on their face to be in order, without responsibility for further investigation.

## ARTICLE 5
## DEFAULTS AND REMEDIES

36

Section 5.01    *Defaults.*  The occurrence of any of the following shall constitute an Event of Default hereunder:

(a)    Any representation or warranty made by SunTrust, Wells Fargo, GMACM, the Depositor, or the Servicer hereunder or under the Operative Documents, or in any certificate furnished hereunder or under the Operative Documents, shall prove to be untrue or incomplete in any material respect, unless remedied under the Operative Documents;

(b)    (i)    GMACM, Wells Fargo, SunTrust, the Trust or the Depositor shall fail to pay when due any amount payable by GMACM, Wells Fargo, SunTrust, the Trust or the Depositor hereunder or (ii) a legislative body has enacted any law that declares or a court of competent jurisdiction shall find or rule that this Insurance Agreement or any other Operative Document is not valid and binding on GMACM, SunTrust, the Master Servicer, the Securities Administrator or the Depositor, provided that, with respect to any law or judicial action within the scope of this clause (ii), GMACM, SunTrust, the Master Servicer, the Securities Administrator and the Depositor shall have 30 days to reinstate the binding effect of this Insurance Agreement or any other Operative Document; the Class A Certificate Insurer agrees to take such actions as may be reasonably requested of it to facilitate the reinstatement of such binding effect;

(c)    The occurrence and continuance of an "event of default" or "Event of Servicer Termination" under any Operative Document; provided, however, that any failure to maintain a perfected first lien security interest in any of the Mortgage Loans shall constitute an Event of Default hereunder;

(d)    Any failure on the part of SunTrust, the Master Servicer, the Securities Administrator, the Depositor or GMACM duly to observe or perform in any material respect any other of the covenants or agreements on the part of SunTrust, the Master Servicer, the Securities Administrator, the Depositor or GMACM contained in this Insurance Agreement which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to SunTrust, the Master Servicer, the Securities Administrator, the Depositor or GMACM, as applicable, by the Class A Certificate Insurer;

(e)    A decree or order of a court or agency or supervisory authority having jurisdiction in the premises in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against SunTrust, GMACM or the Depositor and such decree or order shall have remained in force undischarged or unstayed for a period of 90 consecutive days;

(f)    SunTrust, GMACM or the Depositor shall consent to the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to

SunTrust, GMACM or the Depositor or of of relating to all or substantially all of their respective property;

(g)     SunTrust, GMACM or the Depositor shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of or otherwise voluntarily commence a case or proceeding under any applicable bankruptcy, insolvency, reorganization or other similar statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations; or

(h)     The Trust shall become subject to an entity level tax or to registration as an investment company under the Investment Company Act.

Section 5.02    *Remedies; No Remedy Exclusive*.

(a)     Upon the occurrence of an Event of Default and so long as no Class A Certificate Insurer Default shall have occurred and shall have continued beyond any period of cure applicable thereto, the Class A Certificate Insurer may exercise any one or more of the rights and remedies set forth below:

(i)     declare all indebtedness of every type or description then owed by SunTrust, Wells Fargo, the Trust, the Depositor or GMACM to the Class A Certificate Insurer with respect to this SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1, Asset Backed Pass-Through Certificates transaction to be immediately due and payable, and the same shall thereupon be immediately due and payable;

(ii)     exercise any rights and remedies under the Pooling and Servicing Agreement in accordance with the terms thereof; or

(iii)     take whatever action at law or in equity as may appear necessary or desirable in its judgment to collect the amounts, if any, then due under this Insurance Agreement or any other Operative Document or to enforce performance and observance of any obligation, agreement or covenant of SunTrust, Wells Fargo, GMACM or the Depositor under this Insurance Agreement or any other Operative Documents.

Notwithstanding that a Class A Certificate Insurer Default has occurred and has continued beyond the period of cure applicable thereto, the Class A Certificate Insurer shall be entitled to exercise all rights and remedies with respect to any funds owed to the Class A Certificate Insurer by SunTrust, Wells Fargo, GMACM, the Trust or the Depositor pursuant to this Insurance Agreement or the Policy.

(b)     Unless otherwise expressly provided, no remedy herein conferred or reserved is intended to be exclusive of any other available remedy, but each remedy shall be cumulative and shall be in addition to other remedies given under this Insurance Agreement, the Pooling and Servicing Agreement or existing at law or in equity.  No delay or omission to exercise any right or power accruing under this Insurance Agreement or the Pooling and Servicing Agreement upon the happening of any event set forth in Section 5.01 shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

the Class A Certificate Insurer to exercise any remedy reserved to the Class A Certificate Insurer in this Article, it shall not be necessary to give any notice, other than such notice as may be required by this Article.

Section 5.03   *Waivers*.

(a)       No failure by the Class A Certificate Insurer to exercise, and no delay by the Class A Certificate Insurer in exercising, any right hereunder shall operate as a waiver thereof. The exercise by the Class A Certificate Insurer of any right hereunder shall not preclude the exercise of any other right, and the remedies provided herein to the Class A Certificate Insurer are declared in every case to be cumulative and not exclusive of any remedies provided by law or equity.

(b)       The Class A Certificate Insurer shall have the right, to be exercised in its complete discretion, to waive any Event of Default hereunder, by a writing setting forth the terms, conditions and extent of such waiver signed by the Class A Certificate Insurer and delivered to the Master Servicer.  Unless such writing expressly provides to the contrary, any waiver so granted shall extend only to the specific event or occurrence which gave rise to the Event of Default so waived and not to any other similar event or occurrence which occurs subsequent to the date of such waiver.

## ARTICLE 6
## MISCELLANEOUS

Section 6.01   *Amendments, Etc.*  This Insurance Agreement may be amended, modified, supplemented or terminated only by written instrument or written instruments signed by the parties hereto.   SunTrust agrees to provide a copy of any amendment to this Insurance Agreement promptly to the Securities Administrator and the rating agencies maintaining a rating on any of the Certificates.   No act or course of dealing shall be deemed to constitute an amendment, modification, supplement or termination hereof.

Section 6.02   *Notices*.   All demands, notices and other communications to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered and telecopied to the recipient as follows:

(a)       To the Class A Certificate Insurer:

XL Capital Assurance Inc.
1221 Avenue of the Americas
New York, New York  10020-1001
Attention:  Surveillance
Facsimile:  (212) 478-3587
Confirmation:  (212) 478-3400

(in each case in which notice or other communication to the Class A Certificate Insurer refers to an Event of Default, a claim on the Policy or with respect to which failure on the part of the Class A Certificate Insurer to respond shall be deemed to constitute consent or acceptance, then a copy of such notice or other communication

should also be sent to the attention of the general counsel of each of the Class A Certificate Insurer, SunTrust, SunTrust Bank, GMACM, the Depositor and the Master Servicer and Securities Administrator and, in all cases, both any original and all copies shall be marked to indicate "URGENT MATERIAL ENCLOSED.")

(b)    To the Depositor, SunTrust or GMACM:

(i) To the Depositor:

ACE Securities Corp.
6525 Morrison Blvd., Suite 318
Charlotte, North Carolina 28211
Attention: Juliana Johnson
Facsimile: (704) 365-1362

With a copy to:

Deutsche Bank Securities, Inc.
60 Wall Street
New York, New York 10005
Attention: Legal Department
Facsimile: (212) 797-4561

(ii) To SunTrust:

SunTrust Asset Funding, LLC
303 Peachtree Street, 23rd Floor
Atlanta, Georgia 30308
Attention: Tony D. Atkins
Telephone: (404) 813-5244
Facsimile: (404) 813-5000

(iii) To SunTrust Bank:

SunTrust Bank
303 Peachtree Street, 23rd Floor
Atlanta, Georgia 30308
Attention: Woodruff A. Polk
Telephone: (404) 813-7094
Facsimile: (404) 581-1637

(iv) to GMACM:

GMAC Mortgage, LLC
100 Witmer Road
Horsham, Pennsylvania 19044
Attention: STACS 2007-1

(in each case in which notice or other communication to SunTrust, SunTrust Bank, GMACM, the Depositor, the Master Servicer or the Securities Administrator refers to an Event of Default, a claim against SunTrust, SunTrust Bank, GMACM, the Depositor, the Master Servicer or the Securities Administrator or with respect to which failure on the part of SunTrust, SunTrust Bank, GMACM, the Depositor, the Master Servicer or the Depositor to respond shall be deemed to constitute consent or acceptance, then a copy of such notice or other communication should also be sent to the attention of the general counsel of each of the Class A Certificate Insurer, SunTrust, SunTrust Bank, GMACM, the Master Servicer and the Securities Administrator and, in all cases, both any original and all copies shall be marked to indicate "URGENT MATERIAL ENCLOSED.").

(c)    To the Master Servicer or the Securities Administrator:

For standard mail to:
Wells Fargo Bank, National Association
P.O. Box 98
Columbia, Maryland 21046

For overnight delivery to:
9062 Old Annapolis Road
Columbia, Maryland 21045
Attention: STACS 2007-1
Telecopy: (410) 715-2380

A party may specify an additional or different address or addresses by writing mailed or delivered to the other parties as aforesaid.  All such notices and other communications shall be effective upon receipt.

Section 6.03    *Severability*.  In the event that any provision of this Insurance Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the parties hereto agree that such holding shall not invalidate or render unenforceable any other provision hereof. The parties hereto further agree that the holding by any court of competent jurisdiction that any remedy pursued by any party hereto is unavailable or unenforceable shall not affect in any way the ability of such party to pursue any other remedy available to it.

Section 6.04    *Successors*.    All right or obligations of SunTrust, SunTrust Bank, ACE, GMACM or Wells Fargo shall apply equally to any successors thereto either individually or with respect to the capacities such entities hold under the Operative Documents.

Section 6.05    *Governing Law*.  This Insurance Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws provisions thereof).

Section 6.06    *Consent to Jurisdiction*.

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

(a)    The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and any court in the State of New York located in the City and County of New York, and any appellate court from any thereof, in any action, suit or proceeding brought against it and to or in connection with any of the Operative Documents, the Policy or the Transaction or for recognition or enforcement of any judgment, and the parties hereto hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard or determined in such New York state court or, to the extent permitted by law, in such federal court. The parties hereto agree that a final unappealable judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  To the extent permitted by applicable law, the parties hereto hereby waive and agree not to assert by way of motion, as a defense or otherwise in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that the related documents or the subject matter thereof may not be litigated in or by such courts.

(b)    To the extent permitted by applicable law, the parties hereto shall not seek and hereby waive the right to any review of the judgment of any such court by any court of any other nation or jurisdiction which may be called upon to grant an enforcement of such judgment.

(c)    Service on SunTrust, SunTrust Bank, GMACM, the Master Servicer, the Securities Administrator or the Depositor may be made by mailing or delivering copies of the summons and complaint and other process which may be served in any suit, action or proceeding to such party at the address specified in Section 6.02 hereunder.  Such address may be changed by the applicable party or parties by written notice to the other parties hereto.  The provision of notice to change the address set forth in Section 6.02 shall constitute notice for purposes of the preceding sentence, unless such notice shall expressly state to the contrary.

(d)    Nothing contained in this Insurance Agreement shall limit or affect any party's right to serve process in any other manner permitted by law or to start legal proceedings relating to any of the Operative Documents or the Policy against any other party or its properties in the courts of any jurisdiction.

Section 6.07    *Consent of the Class A Certificate Insurer*.  In the event that the consent of the Class A Certificate Insurer is required under any of the Operative Documents, the determination whether to grant or withhold such consent shall be made by the Class A Certificate Insurer in its sole discretion without any implied duty towards any other Person, except as otherwise expressly provided therein.

Section 6.08    *Counterparts*.  This Insurance Agreement may be executed in counterparts by the parties hereto, and all such counterparts shall constitute one and the same instrument.

Section 6.09    *Headings*.  The headings of Articles and Sections and the Table of Contents contained in this Insurance Agreement are provided for convenience only.  They form no part of this Insurance Agreement and shall not affect its construction or interpretation.

Section 6.10   *Trial by Jury Waived*.   Each party hereby waives, to the fullest extent permitted by law, any right to a trial by jury in respect of any litigation arising directly or indirectly out of, under or in connection with any of the Operative Documents or the Policy or any of the transactions contemplated thereunder.   Each party hereto (A) certifies that no representative, agent or attorney of any party hereto has represented, expressly or otherwise, that it would not, in the event of litigation, seek to enforce the foregoing waiver and (B) acknowledges that it has been induced to enter into the Operative Documents to which it is a party (or, in the case of the Policy, the Class A Certificate Insurer so acknowledges) by, among other things, this waiver.

Section 6.11   *Limited Liability*.   No recourse under any Operative Document or the Underwriting Agreement shall be had against, and no personal liability shall attach to, any officer, employee, director, affiliate or shareholder of any party hereto, as such, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute or otherwise in respect of any of the Operative Documents or the Underwriting Agreement, the Certificates or the Policy, it being expressly agreed and understood that each Operative Document, the Policy and the Underwriting Agreement is solely a corporate obligation of each party hereto, and that any and all personal liability, either at common law or in equity, or by statute or constitution, of every such officer, employee, director, affiliate or shareholder for breaches of any party hereto of any obligations under any Operative Document, the Policy or the Underwriting Agreement is hereby expressly waived as a condition of and in consideration for the execution and delivery of this Insurance Agreement.

Section 6.12   *Entire Agreement*.   This Insurance Agreement and the Policy set forth the entire agreement between the parties with respect to the subject matter hereof and thereof, and this Insurance Agreement supersedes and replaces any agreement or understanding that may have existed between the parties prior to the date hereof in respect of such subject matter.

Section 6.13   *No Partnership*.   Nothing in this Insurance Agreement or any other agreement entered into in connection with the Transaction shall be deemed to constitute the Class A Certificate Insurer a partner, co-venturer or joint owner of property with any other entity.

Section 6.14   *Limitation of Damages*.   IN NO EVENT SHALL ANY PARTY HERETO BE LIABLE TO THE OTHER PARTIES FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES BASED ON ANY THEORY OF CONTRACT, TORT, STRICT LIABILITY, NEGLIGENCE, EQUITABLE PRINCIPLE OR OTHERWISE, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR LOSS OF GOODWILL, EVEN IF SUCH PARTY HAS BEEN ADVISED OF, OR SHOULD HAVE KNOWN OF, THE POSSIBILITY OF SUCH DAMAGES.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[TPW: NYLEGAL:673906.3] 20681-00010  05/15/2007 11:40 AM

IN WITNESS WHEREOF, the parties hereto have executed this Insurance Agreement, all as of the day and year first above mentioned.

XL CAPITAL ASSURANCE INC.,
    as Class A Certificate Insurer

By: _Linda Kobrin_
    Name: _Linda Kobrin_
    Title: _Managing Director_

SUNTRUST ASSET FUNDING, LLC,
    as Sponsor

By: _____
    Name: _____
    Title: _____

SUNTRUST BANK,
    as Guarantor

By: _____
    Name: _____
    Title: _____

ACE SECURITIES CORP.,
    as Depositor

By: _____
    Name: _____
    Title: _____

GMAC MORTGAGE, LLC,
    as Interim Seller and Servicer

By: _____
    Name: _____
    Title: _____

*(Signature Page One to the Insurance and Indemnity Agreement - SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1)*

IN WITNESS WHEREOF, the parties hereto have executed this Insurance Agreement, all as of the day and year first above mentioned.

XL CAPITAL ASSURANCE INC.,
as Class A Certificate Insurer

By:_____
    Name:_____
    Title:_____

SUNTRUST ASSET FUNDING, LLC,
    as Sponsor

By:_____
    Name: Tony Atkins
    Title: Officer
        SunTrust Asset Funding, LLC.

SUNTRUST BANK,
    as Guarantor

By:_____
    Name: FRED D. WOOLF
    Title: VICE PRESIDENT

ACE SECURITIES CORP.,
    as Depositor

By:_____
    Name:_____
    Title:_____

GMAC MORTGAGE, LLC,
    as Interim Seller and Servicer

By:_____
    Name:_____
    Title:_____

*(Signature Page One to the Insurance and Indemnity Agreement - SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1)*

IN WITNESS WHEREOF, the parties hereto have executed this Insurance Agreement, all as of the day and year first above mentioned.

XL CAPITAL ASSURANCE INC.,
    as Class A Certificate Insurer


By:_____
    Name:_____
    Title:_____

SUNTRUST ASSET FUNDING, LLC,
    as Sponsor


By:_____
    Name:_____
    Title:_____

SUNTRUST BANK,
    as Guarantor


By:_____
    Name:_____
    Title:_____

ACE SECURITIES CORP.,
    as Depositor


By:_____*Doris J. Hearn*_____
    Name:__**Doris J. Hearn**_____
    Title:__**Vice President**_____

GMAC MORTGAGE, LLC,
    as Interim Seller and Servicer


By:_____
    Name:_____
    Title:_____

*(Signature Page One to the Insurance and Indemnity Agreement - SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1)*

IN WITNESS WHEREOF, the parties hereto have executed this Insurance Agreement, all as of the day and year first above mentioned.

XL CAPITAL ASSURANCE INC.,
as Class A Certificate Insurer

By:_____
    Name:_____
    Title:_____

SUNTRUST ASSET FUNDING, LLC,
as Sponsor

By:_____
    Name:_____
    Title:_____

ACE SECURITIES CORP.,
as Depositor

By:_____
    Name:_____
    Title:_____

GMAC MORTGAGE, LLC,
as Interim Seller and Servicer

By: _William f Phiap ..._
    Name: _William S. Maguire_
    Title: _Senia R Vice Presiden t_

WELLS FARGO BANK, NATIONAL
ASSOCIATION,
As Master Servicer and Securities Administrator

By:_____
    Name:_____
    Title:_____

*(Signature Page to the Insurance and Indemnity Agreement – SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1)*

[TPW: NYLEGAL:673906.2] 20681-00010 05/12/2007 06:06 PM

WELLS FARGO BANK, NATIONAL
ASSOCIATION,
As Master Servicer and Securities Administrator

By: _____

Name: _Benjamin F. Jordan_____

Title: _Assistant Vice President_

_(Signature Page Two to the Insurance and Indemnity Agreement - SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1)_