# EXHIBIT C

# In Re:

*RESIDENTIAL CAPITAL, LLC, et al.*
*Case No. 12-12020-mg*

*June 17, 2013*

*eScribers, LLC*
*(973) 406-2250*
*operations@escribers.net*
*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



**Min-U-Script® with Word Index**

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10             Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14             United States Bankruptcy Court

15             One Bowling Green

16             New York, New York

17

18             June 17, 2013

19             9:04 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Discovery Dispute Related to PSA

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Sharona Shapiro

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   GARY S. LEE, ESQ.

9        JOSEPH A. LAWRENCE, ESQ.

10       CHARLES L. KERR, ESQ.

11

12

13  KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP

14        Attorneys for Official Creditors' Committee

15        1177 Avenue of the Americas

16        New York, NY 10036

17

18  BY:   PHILIP S. KAUFMAN, ESQ.

19

20

21

22

23

24

25

4

1

2  ALLEN & OVERY LLP

3          Attorneys for HSBC BANK USA N.A. as Trustee

4          1221 Avenue of the Americas

5          New York, NY 10020

6

7  BY:   JOHN KIBLER, ESQ.

8

9

10  WILLKIE FARR & GALLAGHER LLP

11          Attorneys for Stonehill Capital Management LLC and

12            Monarch Alternative Capital LP

13          787 Seventh Avenue

14          New York, NY 10019

15

16  BY:   MARC ABRAMS, ESQ.

17          MARY EATON, ESQ.

18          JOSEPH T. BAIO, ESQ.

19          EMMA J. JAMES, ESQ.

20

21

22

23

24

25

5

1

2 JONES DAY

3         Attorneys for FGIC

4         222 East 41st Street

5         New York, NY 10017

6

7 BY:   HOWARD F. SIDMAN, ESQ.

8

9

10 ALSTON & BIRD LLP

11         Attorneys for Wells Fargo Bank N.A.

12         1201 West Peachtree Street

13         Suite 4200

14         Atlanta, GA 30309

15

16 BY:   JOHN C. WEITNAUER, ESQ.

17         MICHAEL E. JOHNSON, ESQ.

18

19

20 MORGAN, LEWIS & BOCKIUS LLP

21         Attorneys for Deutsche Bank

22         101 Park Avenue

23         New York, NY 10178

24

25 BY:   JAMES L. GARRITY, JR., ESQ.

6

1

2   MAYER BROWN LLP

3          Attorneys for Ally Bank

4          1675 Broadway

5          New York, NY 10019

6

7   BY:   MICHAEL MARTINEZ, ESQ.

8

9

10   SEWARD & KISSEL LLP

11          Attorneys for US Bank as RMBS Trustee

12          One Battery Park Plaza

13          New York, NY 10004

14

15   BY:   DALE C. CHRISTENSEN JR., ESQ.

16          ARLENE R. ALVES, ESQ.

17

18

19

20

21

22

23

24

25

1                 P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.

3          All right, we're here on Residential Capital number

4  12-12020.

5          MR. KERR:  Good morning, Your Honor; Charles Kerr of

6  Morrison & Foerster on behalf of the debtors.

7          Your Honor, we're here to follow up on the phone

8  conference we had Friday afternoon regarding discovery and

9  other issues related to the motion to approve the plan support

10 agreement.  I think Your Honor has received a letter from our

11 firm over the weeks --

12         THE COURT:  I read both letters.

13         MR. KERR:  Okay, Your Honor.  And therefore, I just --

14 I think they help crystallize the issue, but I want to give you

15 just the background to show you what the issues are here we are

16 hearing this morning.

17         Monarch and Stonehill's counsel, in their letters,

18 make clear they're not creditors of the debtor; they filed no

19 claims to this court; and their dispute is solely with, I

20 think, the amount of the commutation.  That's the substantive

21 issue that they're most concerned about.

22         And as Your Honor noted on Friday, that commutation

23 issue is something that is going to be addressed in the

24 rehabilitation court.  It is not something that the debtor was

25 involved in negotiating and deciding upon, whatever.  And

1  therefore, that issue will be heard before Justice, I think,

2  Ling-Cohan on August 6th in New York State Court.

3          They -- in the conference on Friday, I think they

4  acknowledged, Your Honor, that their ability to challenge that

5  commutation payment in state court is extremely limited.  So

6  they decided to come to this court and try to challenge both --

7  challenge here the approval of the plan support agreement.  And

8  we think, Your Honor, for the reasons we discussed on Friday

9  and put in our letter, that effort is misplaced.

10         We believe that, if anything, their issues that they

11 are raising come closest to approval of the FGIC settlement

12 which is not on for June 26th.  And they, we believe, will have

13 an opportunity at that time to raise whatever issues they want

14 to raise and protect their interest.  But what they've done

15 here, Your Honor, is they've come in and sought extremely broad

16 discovery in attempting to, in our view, disrupt -- with all

17 due respect -- but disrupt the schedule that had been set back

18 on May 29th in the conference with Your Honor to get discovery

19 done, the very limited discovery necessary for the PSA motion.

20         So let me tell you what we've been able to do since

21 Friday night to crystallize it down.  We had proposed to them

22 language to be added to the draft PSA order that we thought

23 would protect them and make clear that they would, by going

24 through the -- having the PSA motion approved would not prevent

25 them in any way from challenging the FGIC settlement motion as

1   well, which is really where I think these issues lie.  They

2   rejected that language; they came up with other language that

3   was, frankly, very broad.  The trustees were not willing to do

4   that; we were not willing to do that.

5         We then went on to talk about discovery.  We've

6   agreed -- in a conference call we had on Friday night, we

7   thought we had agreed to the identity of what deponents would

8   be questioned here.  They were going to depose four trustee

9   declarants.  We had offered up Mr. Kruger who is a CRO,

10  although frankly, Your Honor, as I'll tell you in a moment, I

11  don't understand why Mr. Kruger's being deposed here at all.  I

12  think that's just -- that has nothing to do with the issues

13  that they've highlighted in their letter.

14        They had limited the document request that they had

15  identified.  We have agreed to proceed with a confidentiality

16  order.  We've tried to negotiate.  It hasn't been finalized but

17  we've agreed in the interim to proceed as all documents that

18  would be produced would be an attorneys'-eyes-only basis.

19        Yesterday, Your Honor, we got a letter -- we got an

20  e-mail from Monarch's counsel which I think they reiterated in

21  their letter to you, that they now, despite what we agreed to

22  Friday evening about only deposing the declarants, the trustees

23  and Mr. Kruger, if necessary, they now want to do additional

24  depositions, 30(b)(6) depositions, of FGIC and several other

25  parties including some of the professionals that were used by

1   the trustees and FGIC in analyzing their deal -- whatever their

2   deal was.  They also indicated in their e-mail to us that

3   they're going to try -- they're going to come before Your Honor

4   to extend the schedule.  I'm not exactly sure what that means,

5   but we are very concerned.

6           THE COURT:  We are not extending the schedule.

7           MR. KERR:  Okay.  Well, that --

8           THE COURT:  Full stop.

9           MR. KERR:  Okay.  So, Your Honor, what we're very

10  concerned about is that this is -- this long negotiated effort

11  to come up with a plan support agreement, which was part of the

12  mediation with Judge Peck involving all these parties, is now

13  going to be disrupted by this process where we think, in

14  fairness, Monarch and Stonehill's real concerns are, can be,

15  and should be addressed to either the rehabilitation court or

16  on the motion to approve the FGIC settlement.

17          THE COURT:  Let me ask you, what are the issues going

18  to be for this Court in the 9019 of the FGIC settlement?

19          MR. KERR:  I think the issue for this Court, again, is

20  not whether the commutation amount is correct; it's simply

21  whether or not the amount of allowed claim that the debtors

22  have agreed to, with FGIC as part of that overall settlement in

23  the mediation, is an appropriate allowed claim, Your Honor.  So

24  it's a step removed from what I think is their real issue.  So

25  even there -- that's why I said, if any motion even touches on

1   it, it's perhaps the FGIC settlement, but even there, that is

2   not what this Court's going to be asked to do and I don't think

3   this Court can do.

4          THE COURT:  What is the state court asked to do with

5   respect to the FGIC settlement?

6          MR. KERR:  It is my understanding that they're to

7   approve the FGIC settlement, but I believe that there -- that

8   is where that court will determine whether the commutation

9   payment, which is simply the payment by which FGIC is being --

10         THE COURT:  Well, if I understand it correctly, the

11  settlement would cap the amount that FGIC would have to pay.  I

12  forget what the dollar amount is, but --

13         MR. KERR:  253 million dollars.

14         THE COURT:  Yeah, it would -- that's essentially

15  what -- or certainly an important part of what the FGIC

16  settlement would do, right?

17         MR. KERR:  That is correct, Your Honor.

18         THE COURT:  All right.  And I would think that the

19  rehabilitation court, in determining whether or not to approve

20  the settlement, would hear from any -- I'm not sure exactly

21  what label applies to the investors, whether they're

22  beneficiaries of the insurance or what.  If they go into the

23  rehabilitation court and object to the settlement because they

24  think that FGIC is not paying enough, that -- I mean, that's

25  what -- initially that's what I really wanted to focus on, in

1    part, because it seemed to me that's where that issue comes

2    front and center is in the rehabilitation court.

3            MR. KERR:  I think Your Honor has it absolutely

4    correct; that is where that issue is going to be resolved.

5    Again, in the FGIC settlement, although the payment from FGIC

6    to the trustees is an underlying assumption of the settlement,

7    the settlement itself, and what the issue before Your Honor, in

8    respect of the 9019, is whether or not the amount of the

9    allowed claim agreed to by the debtor and FGIC is appropriate.

10           And so I think you're absolutely right, Your Honor,

11   that the issues that their letter they sent to the Court

12   indicates they're most concerned about should be and will be

13   addressed in the rehabilitation court, and especially with

14   respect to the motion to support to prove the plan support

15   agreement is not the vehicle to do that.

16           Now, they've indicated that what -- their attempt to

17   come into here is through the findings that are in the proposed

18   order.  But those findings simply are the findings that are

19   necessary and were part of the overall negotiations by the

20   trustee to ensure that they could enter into the plan support

21   agreement.

22           THE COURT:  Well, but I can certainly understand the

23   investor's concern if the findings by this Court in connection

24   with the PSA approval, if it gets approved, would have a

25   preclusive effect in state court, for example, when they go in,

1  if they in fact challenge the settlement in the rehabilitation

2  court.

3         So what's the -- and I read your proposed language and

4  I read their proposed language.  What is your view about the

5  preclusive effect if this Court enters the requested -- you

6  know, approves the PSA and enters the requested findings?  What

7  is the preclusive effect on the FGIC court, the rehabilitation

8  court, or on this court in connection with the 9019?

9         MR. KERR:  I think that with the added language we had

10  suggested, the Court will be able to address on the 9019

11  motion.  I think -- because we're going to ask you again to

12  make specific findings with respect to that.

13         THE COURT:  Yeah.

14         MR. KERR:  On the rehabilitation court, Your Honor,

15  I'm going to have to turn to the trustees on that.  We're not

16  involved with that.  I must say, I haven't really walked

17  through that all together.  Again, the debtor is removed from

18  all that process and we --

19         THE COURT:  Not completely, really.

20         MR. KERR:  Not completely, Your Honor --

21         THE COURT:  I mean, you're not removed --

22         MR. KERR:  -- but --

23         THE COURT:  You're not removed from the process.

24         MR. KERR:  Not -- and I don't mean to say we're

25  removed, Your Honor, but that is not something -- I think I'd

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1  turn to the trustees to specifically state what --

2          THE COURT:  Okay.

3          MR. KERR:  -- the view of that is.

4          THE COURT:  All right.  Thank you.

5          MR. KERR:  Thank you.

6          THE COURT:  Let me hear from the trustee's counsel and

7  then I'll hear from the investor's counsel.

8          MR. JOHNSON:  Good morning, Your Honor.  Michael

9  Johnson from Alston & Bird, and we represent Wells Fargo Bank,

10 which is one of the trustees that's involved both in the ResCap

11 proceeding as well as in the FGIC rehabilitation proceeding.

12          I just want to say at the outset, from the trustee's

13 perspective, we do want to emphasize that even though the

14 investors are not creditors per se in this court, we welcome

15 their participation in this process, and that's part of the

16 reason why I threw out --

17         THE COURT:  They might be better off not participating

18         MR. JOHNSON:  Yeah.

19         THE COURT:  -- frankly.  I mean, you know, because the

20 rules of that preclusion, if you've had a full and fair

21 opportunity to -- to be heard, you know, it -- so it wouldn't

22 surprise me if they argue no, they don't have standing here and

23 they'll fight it out somewhere else but --

24         MR. JOHNSON:  Well, Your Honor, that's exactly -- when

25 we say --

1          THE COURT:  Mr. Johnson, let me ask you this.

2          MR. JOHNSON:  Yes, sir.

3          THE COURT:  How many of the trusts are wrapped with

4    FGIC insurance?

5          MR. JOHNSON:  Wrapped with FGIC insurance?

6          THE COURT: Yes, yes, yes.

7          MR. JOHNSON:  I don't know the aggregate number.  I

8    could tell you, you know, for Wells Fargo -- do we know the --

9          MR. WEITNAUER:  It's forty-seven in all.

10          MR. JOHNSON:  That's right.  Yeah, there -- thank you.

11          There are forty-seven in all, Your Honor.

12          THE COURT:  Forty-seven, and that's out of what, 500

13    and --

14          MR. JOHNSON:  Yeah.

15          THE COURT:  What's the total?

16          MR. JOHNSON:  There are several hundred trusts in

17    total.

18          THE COURT:  Oh.

19          MR. JOHNSON:  Yeah, several hundred trusts in total

20    is --

21          THE COURT:  Come on up.  I just --

22          MR. JOHNSON:  Yeah.

23          THE COURT:  I've been trying to get a full

24    appreciation of the -- what the --

25          MR. WEITNAUER:  Your Honor, Kit Weitnauer from Alston

RESIDENTIAL CAPITAL, LLC, ET AL.                    16

1    & Bird.  The numbers do move around.  You had the 392 --

2              THE COURT:  Right.

3              MR. WEITNAUER:  -- the original settling trust.

4              THE COURT:  And then there were additional --

5              MR. WEITNAUER:  There's another several hundred of so-

6    called nonsettling trusts that are part of the initial trust

7    under the plan.

8              THE COURT:  So what's the totals?

9              MR. WEITNAUER:  And so I think -- wait.  There's one

10   other --

11             THE COURT:  Somehow I had 500 or so in my --

12             UNIDENTIFIED SPEAKER:  -- one other group which in --

13   I think you're almost at 900 when you consider all the trusts

14   that have some role in the plan.

15             THE COURT:  Okay.  Thanks very much.

16             All right.  Go ahead, Mr. Johnson.

17             MR. JOHNSON:  I was just saying, Your Honor, in terms

18   of the process, I think Your Honor has hit it on -- the nail on

19   the head.  When we say "involvement in the process", we think

20   that there are appropriate stages where, if there is a concern

21   about the commutation payment in respect to the FGIC

22   settlement, the PSA motion and PSA hearing are not the

23   appropriate forum for that.  There are, of course, the two

24   upcoming.  There's one proceeding in this court which will be

25   the FGIC settlement 9019 hearing, and then there is the

1   proceeding that we've talked about earlier, Your Honor, in the

2   rehabilitation court itself.

3           And Your Honor, there was a question, I think, that

4   you posed as to what the -- what the process is going to be

5   there and what effect will be had -- you know, what effect the

6   proceeding in this court would have on what's going to happen

7   in that state court proceeding.

8           Your Honor, with the language that's been recommended

9   by the debtors in their letter, I think there is a carve-out to

10  insure that the objectants will have an opportunity in the

11  court -- in the state court to be heard along with anybody

12  else, Your Honor, who wants to be heard on the terms of the

13  FGIC commutation.

14          One of the things that the trustees and the FGIC's

15  rehabilitator insisted upon in connection with the FGIC

16  settlement agreement was that notice be given.  And in fact,

17  the FGIC rehabilitator actually had an opportunity to be heard

18  on the substance of that notice that went out to the holders in

19  the FGIC-wrapped trust to make sure that in the context again

20  of that state court proceeding there was going to be full and

21  fair opportunity to be heard.

22          I believe, Your Honor, the deadline for the objectants

23  here and anyone else who has an interest in that settlement

24  agreement to object in the settlement court is July 3rd, so

25  there's still ample opportunity for them to prepare an

1    objection, and then there is a hearing that's scheduled in the

2    state court in August.

3              THE COURT:  August 6.

4              MR. JOHNSON:  Yes, correct, Your Honor.

5              But I think with the findings -- the modified findings

6    that have been proposed by the debtors, it insures that what

7    happens here on June 26th, does not have preclusive effect on

8    what happens on August 6th in the state court.

9              Your Honor, if I might be heard, there --

10             THE COURT:  Just a minute.  I want to make a note to

11   myself, okay?

12             Go ahead, Mr. Johnson.

13             MR. JOHNSON:  On the specifics, if we are to proceed

14   with the discovery on the current schedule in connection with

15   the PSA motion -- and again, we think this is the wrong forum.

16   There are two other opportunities where these objectants can be

17   heard on what they think is wrong with the substance of the

18   commutation payment.  But if it's to occur this week, Your

19   Honor, we do have a problem with what appears to be -- even

20   within the context of this limited discovery this week and

21   effort now being made by the objectants to double-dip on

22   discovery.

23             We had thought, Your Honor, because of a Friday

24   evening call that we had among the parties, we had agreed as to

25   who the deponents would be, and we received -- did receive

RESIDENTIAL CAPITAL, LLC, ET AL.                          19

1  notice just yesterday that in addition to hearing from the

2  trustee's declarants, that is those witnesses who have

3  submitted now to this court declarations in support of the PSA,

4  they -- the objectants also now want to do 30(b)(6)

5  depositions.  Your Honor, we think that's entirely

6  inappropriate and --

7          THE COURT:  Why.  Tell me why.

8          MR. JOHNSON:  Because Your Honor, there -- it's

9  essentially going to be double-dipping.  The issues that they

10  are going to cover or that are truly relevant to the PSA motion

11  itself would be covered necessarily by the declarants who put

12  in the declarations in support of the PSA motions.

13          THE COURT:  Mr. Johnson, let me ask you, what do you

14  believe the -- I am being asked to decide on June 26th insofar

15  as the FGIC-wrapped trusts are concerned?

16          MR. JOHNSON:  Your Honor, you are not being asked,

17  from what I understand it, to opine or to give your imprimatur

18  of approval to the substance of the commutation payment.  What

19  is more important from the perspective of the trustees, Your

20  Honor, is, of course, the ruling that moving forward on the

21  terms of the PSA is in the best interest of the estates as well

22  as in the best interests of the holders, but it is not

23  necessarily, Your Honor, particularly with the carve-out that's

24  been proposed by --

25          THE COURT:  I mean, look, it can be -- because this is

1  a staged process in two different courts, you know,

2  hypothetically -- I mean, I still -- I have to hear -- hold the

3  hearing and I have to -- there are others that may come up as

4  well with respect to the PSA.  But if what the trustees are

5  asking is for me to determine in the first instance that they

6  acted in good faith in negotiating and entering into a

7  settlement, which may or may not be approved by the court and

8  may or may not be approved by the rehabilitation court, that

9  it's the threshold determination that, yes, for purposes of the

10  PSA, they acted in good faith in negotiating and entering into

11  the agreement and will get to -- this court and the

12  rehabilitation court will get to the issue of whether the

13  settlement should be approved applying -- you know, I'm not

14  sure what the standard is in state court.  I've got a -- I know

15  what the standard is here.

16         You know, that's one thing, but if you're looking for

17  this order to carry additional baggage with it that would have

18  preclusive effect on me, you know, you're arguing as law of the

19  case, Judge, you already approved the PSA, in deciding whether

20  or not to approve the 9019, and then you go into state court

21  and argue before Judge Ling-Cohan that, Judge, I don't know how

22  there can be preclusive effect in state court; it's not a final

23  order, period.  But -- so, you know -- but that's for the state

24  court judge to decide.  But I'm not -- it wouldn't be clear to

25  me how it could have a preclusive effect anyway.  But, I mean,

1   are you going to go into state court and argue, Judge, Judge

2   Glenn already decided in proving the PSA that, you know, good

3   faith finding therefore that's no longer -- that's not a

4   relevant issue for you.

5            MR. JOHNSON:  Your Honor, I don't think that is what

6   the trustees would intend, particularly with the language that

7   has been proposed.  I mean, the language that's been proposed

8   by the debtors would carve out, in essence, the day in court

9   that these objectants seek to have in the state court such that

10  we could not run in with your order, assuming Your Honor were

11  to enter an order, along the lines suggested in the proposed

12  order for the debtors.  We wouldn't be running in with that

13  order to say, you know, Judge Ling-Cohan, it's already been

14  decided, you cannot go over these issues again; that would not

15  be -- that would not be what the trustees would do or, I

16  think, Your Honor, could do, based on, again, the revised

17  proposed findings that are in the debtor's letter from this

18  weekend.

19           THE COURT:  Okay.  Let me hear from the investor's

20  counsel.

21           MR. BAIO:  Good morning, Your Honor.  Joseph Baio from

22  Willkie Farr and Gallagher --

23           THE COURT:  Good morning.

24           MR. BAIO:  -- on behalf of Monarch Alternative Capital

25  and Stonehill Capital Management.  Your Honor, I believe that

1    what you have focused on is why we are here.  And no offense,

2    we would rather not be here.

3            THE COURT:  So why don't you not be here?  I mean,

4    that's --

5            MR. BAIO:  Because there will be findings, Your Honor,

6    that say that by entering into the PSA the trustees not only

7    acted in good faith but acted in our best interests, and we

8    think that's demonstrably false.  We need discovery in order to

9    be able to demonstrate it.  But for a court to have concluded

10   that in entering into this -- the PSA and eventually the

11   settlement, they acted in good faith, something that they want

12   in order to protect themselves.  That's what they say in their

13   own submission.  So they want to be able to insulate themselves

14   from our claims --

15           THE COURT:  Mr. Baio, the real issue to me is what --

16   no one seems to be disputing, at this stage, that you have the

17   right to oppose the 9019 here and approval of the settlement in

18   the rehabilitation court.  I mean, isn't that the time to be

19   focusing on the issues that you're raising now?

20           MR. BAIO:  But by that time, Your Honor, there will

21   have been a finding by this Court that by the trustees'

22   entering into the PSA, they acted in good faith.  And much more

23   significantly for us, they acted in our best interest.  That

24   will have already been determined in an adjudication before

25   Your Honor on an extremely accelerated basis where we still --

1    we don't' have a single document from anyone on that subject.

2    We were not a party to the mediation.

3              THE COURT:  Well, you knew about it.  Come on.  You've

4    been --

5              MR. BAIO:  We tried --

6              THE COURT:  -- sitting back on the sideline for a

7    while here.

8              MR. BAIO:  Not really, Your Honor.  We tried to get

9    in; we were unable to get into the mediation.  We did have a --

10             THE COURT:  Well, the claims that are being settled

11   belong to the trustee; they don't belong to you.

12             MR. BAIO:  I understand.  We're just talking about the

13   findings.

14             THE COURT:  They don't belong to you.

15             MR. BAIO:  We understand that, Your Honor.  We really

16   are not objecting to that.  We are objecting to the findings

17   that will preclude us in subsequent proceedings --

18             THE COURT:  What are they going to preclude -- I'm

19   reading, I'm looking at the language that the debtors have

20   proposed and when I look at that language, I don't see how you

21   would be precluded.  It says, "Nothing herein shall prejudice

22   any party-in-interest's rights to fully prosecute an objection

23   with respect to any proposed disclosure statement or Chapter 11

24   plan or any other motion including a motion to approve the FGIC

25   settlement agreement."  And it goes on from there and it

RESIDENTIAL CAPITAL, LLC, ET AL.                    24

1    repeats again, "Including the motion to approve the FGIC

2    settlement agreement."

3            How are you adversely affected if the Court enters, if

4    this language is added to any order, assuming -- and it is not

5    a foregone conclusion -- assuming that the Court approves the

6    PSA, if the language proposed by the debtors and apparently

7    accepted by the trustees, as Mr. Johnson indicated, how are you

8    adversely affected by that?

9            MR. BAIO:  Because the previous finding, Your Honor,

10   will be by this Court by entering into the PSA, the trustees

11   have acted in our best interest.  That will have already been

12   decided.  At the 9019, it is not clear that we can relitigate

13   that issue.  That is, we want to be able to come in somewhere

14   and say that the trustees did not fulfill their duties to us;

15   it was not in our best interest.

16           So if there is already a finding that what they did

17   was in our best interest, the opportunity to come in and object

18   on the 9019 on some other basis, because there will have

19   already been a determination that they acted in our best

20   interest, eviscerates the heart of what we are saying is the

21   problem.

22           Now, I think that's -- because if we are then

23   litigating for the first time at the 9019, whether our rights

24   have impaired by the trustees --

25           THE COURT:  You can argue that in state court, I take

 1   it, right?

 2          MR. BAIO:  Well, we won't be able to argue it anyway

 3   after June 26th --

 4          THE COURT:  Oh, really?

 5          MR. BAIO:  -- if Your Honor makes those findings?

 6          THE COURT:  You're not going to be able to argue it in

 7   state court?

 8          MR. BAIO:  I hope -- I don't know.  I think that the

 9   state court judge will say you had a bankruptcy court hearing,

10   you had an opportunity to take discovery, and there was a

11   ruling by a competent judge in a matter that you were before

12   saying that the actions were in your best interest.  That's why

13   the trustees want it, Your Honor.  It doesn't do anything for

14   them unless it has a preclusive effect against us.

15          And what they'll then say -- it's like dying a slow

16   death.  We will have lost that right.  Then at the 9019, we

17   won't be able to argue that they had breached their fiduciary

18   duty or violated their contractual obligations.  What we'll be

19   able to say for other reasons that the 9019 should not be

20   approved.  But that's not what the heart of our right is, which

21   we are simply trying to retain.

22          THE COURT:  Why do you think the trustees have

23   breached their fiduciary duty in entering into the settlement?

24          MR. BAIO:  Because we believe that FGIC had made

25   announcements that the amount that they believed should have

RESIDENTIAL CAPITAL, LLC, ET AL.                    26

1  been received by our clients is in excess of fifty percent more

2  than what the settlement agreement achieves.  We will be losing

3  the money, the difference between the 252 million dollars and

4  what we think is, when you look at the filings by the experts,

5  at least the piece that we were able to see, that it should be

6  350 million.

7            THE COURT:  You have no assurance of any amount under

8  your scenario.  You have experts who are doing estimates of

9  future losses and the financial circumstances of FGIC and are

10 prepared to offer expert testimony from your standpoint of what

11 you ultimately you believe you'd be able to recover --

12           MR. BAIO:  Yes.

13           THE COURT:   -- absent a settlement.

14           MR. BAIO:  And they're also --

15           THE COURT:  Absent a settlement.

16           MR. BAIO:  Correct.

17           THE COURT:  Correct?

18           MR. BAIO:  Absent a settlement, but our settlement.

19           THE COURT:  And a settlement --

20           MR. BAIO:  We're not settling, and absent the

21 commutation.

22           THE COURT:  Well, whose rights are being settled?  The

23 trustees' or yours?

24           MR. BAIO:  Ours, in connection with the insurance

25 policies; the trustees' hold them for our benefit.  Those are

RESIDENTIAL CAPITAL, LLC, ET AL.                              27

1   what are being compromised and they're being compromised so

2   that others will gain an advantage on our backs.  That's what

3   we are prepared to prove if we can get the discovery.  And we

4   don't think --

5          THE COURT:  So what hearings have you had in the state

6   court at this stage?  Do you have a discovery schedule?  Does

7   Justice Ling-Cohan know that you're about to go to war before

8   her?

9          MR. BAIO:  We have nothing at this point, Your Honor.

10  And it's not even clear that we have standing.

11         I know everybody in this court is granting us -- not

12  Your Honor, but the counsel.

13         THE COURT:  Well, I haven't agreed to anything.

14         MR. BAIO:  I understand.  I didn't mean Your Honor.  I

15  meant counsel are saying what we have rights to do.  It is not

16  clear at all.  We will pursue them.

17         All we want is not to be precluded from advancing our

18  fundamental claim that we are being -- our rights are being

19  compromised without any gain for us.  That's the main -- that's

20  the heart of it.

21         THE COURT:  All right.

22         MR. BAIO:  And if it's to be deferred and we can take

23  discovery in a reasonable period of time and then Your Honor

24  wants --

25         THE COURT:  You know, your idea of a reasonable period

1  of time and my idea of a reasonable period of time are vastly

2  different, I'll tell you that right now, Mr. Baio.

3          MR. BAIO:  I understand.

4          THE COURT:  This is moving forward.

5          MR. BAIO:  I understand.  I'm just talking -- right

6  now we have three depositions scheduled for tomorrow.  We don't

7  have a single document.  We haven't seen -- we don't get to

8  take their experts.  We don't get to do a 30(b)(6) which would

9  be -- we want to know what the evaluations were in giving away

10 our rights.  And we have one day with three declarants, some of

11 whom may know nothing about that.

12         So we think it's unfair.  And it is driven because of

13 the findings.  And the findings, the exclusion that they have

14 suggesting that we will preserve all of our rights -- if we

15 would preserve them, why do they get the findings in the first

16 place?  Those findings must mean something.

17         THE COURT:  You know, Mr. Baio, we're dealing with 47

18 out of -- this is number 900; I thought it was 500.  But there

19 are a lot of trusts that are involved that you've got nothing

20 to do with, that FGIC has nothing to do with.  The global

21 settlement, the mediation, affects all of the trusts, other

22 monoline insurers as well that resolve claims.

23         So you've got -- you're entitled to your rights.  I'm

24 not -- I don't disagree with that, okay.  But your little piece

25 of this, you're threatening to derail a very, very large

RESIDENTIAL CAPITAL, LLC, ET AL.                    29

1    process of which you have one little piece of, okay.  You're

2    entitled to your rights and I'm not steamrolling your rights,

3    okay.  But to have you come in less than ten days before a

4    hearing at which the PSA is going to be considered by the

5    Court, so -- anyway --

6          Let me hear -- Mr. Mr. Johnson, I have some more

7    questions for you.

8          Thank you, Mr. Baio.

9          MR. BAIO:  May I -- okay.  Thank you, Your Honor.

10          THE COURT:  So my basic question.  You know, Mr. Baio

11    says they're going to be precluded from challenging the

12    trustees' good faith in connection with the 9019.  Agree or

13    disagree?

14          MR. JOHNSON:  Your Honor, the whole import --

15          THE COURT:  No --

16          MR. JOHNSON:  -- of the proposed language --

17          THE COURT:  -- Mr. Johnson --

18          MR. JOHNSON:  No, Your Honor, the --

19          THE COURT:  Mr. Johnson --

20          MR. JOHNSON:  -- answer is no, Your Honor, if the --

21          THE COURT:  -- I want -- my question is a very clear

22    question and if possible, I want a very clear answer.  Then you

23    can go on and give your explanation.

24          Will Monarch and Stonehill be precluded at the 9019 in

25    this court from challenging the trustees' good faith in

1    entering into the settlement?

2         MR. JOHNSON:  I believe that is not the case, Your

3    Honor.

4         THE COURT:  Okay.

5         MR. JOHNSON:  I believe that the import of what has

6    been proposed by the debtors is --

7         THE COURT:  And you're speaking for all of the trusts

8    for which -- that are wrapped by FGIC?  MR. JOHNSON:  Yes, Your

9    Honor.

10         THE COURT:  Okay.  I mean, that seems to be the

11    answer.  I mean --

12         MR. JOHNSON:  That would be a factual finding, Your

13    Honor.  Good faith -- the good faith of the trustees would be a

14    factual finding.  And the import of the language that's in the

15    modified proposed order is to carve out --

16         THE COURT:  Okay, I just --

17         MR. JOHNSON:  -- factual findings for the 9019.

18         THE COURT:  I don't want -- if I go ahead and approve

19    the PSA with the language that the debtors propose to add, I

20    want to be clear, based on your answer to my question, you will

21    not argue that the investors are precluded from challenging the

22    good faith of the trustees in entering into the settle -- this

23    portion of the settlement?  When I say "this portion", with

24    respect to FGIC.  And you agree with that?

25         MR. JOHNSON:  Yes, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                    31

1              THE COURT:  Okay.

2              MR. BAIO:  And, Your Honor, I assume it's --

3              THE COURT:  Mr. Baio?

4              MR. BAIO:  -- it's more than the good faith and also

5     that we can challenge that it was not in our best interest.  In

6     other words, we can challenge --

7              THE COURT:  Hold on.

8              MR. JOHNSON:  Same answer, Your --

9              MR. BAIO:  -- the finding.

10             MR. JOHNSON:  Same answer, Your Honor.

11             THE COURT:  Same answer.

12             MR. BAIO:  Same answer.

13             MR. JOHNSON:  I can short -- yeah, I will shortcut:

14    Same answer.

15             THE COURT:  Okay.  Mr. Baio?  You heard it?  Did you

16    get a transcript?

17             MR. BAIO:  May I confer for --

18             THE COURT:  Yes, go ahead.

19             MR. BAIO:  -- one minute, Your Honor?

20             THE COURT:  Please go ahead.

21             MR. BAIO:  Thank you.

22         (Pause)

23             MR. BAIO:  And, Your Honor, we are not precluded from

24    taking any other action against the trustees, correct?  I

25    assume that's --

1          THE COURT:  No.

2          MR. BAIO:  -- a given?

3          THE COURT:  I don't -- no.  I don't know what you're

4    talking about, Mr. Baio, okay?  If you're -- what action are

5    you planning to take?

6          MR. BAIO:  If they breach their fiduciary duty to us.

7          THE COURT:  Well, Mr. Baio, we're going to have a

8    hearing on 9019.  You've heard that you're not precluded from

9    challenging good faith or best interests, at the time of the

10   hearing.  If you're about to launch some other war against the

11   trustee, if they think they have -- if they think I have any

12   power to stop it, I might, okay?  As far as I'm concerned,

13   there's a schedule -- let me -- why don't you both sit down --

14         MR. JOHNSON:  Yes, Your Honor.

15         THE COURT:  -- okay?  From the start -- when I say

16   "from the start", when I first read the PSA and the term sheets

17   and saw the provisions with respect to the findings that the

18   trustees are seeking, I had questions about it.  At the status

19   conference after the PSA was entered into -- there was a status

20   conference the following week; I don't remember, it was Tuesday

21   or Wednesday or something like that, of the following week -- I

22   focused in on that.  And I made clear -- I moved up the date by

23   which the trustees had to submit evidence in support of the

24   findings, and recognized there may well be discovery.  And I

25   believe then, I believe now, that discovery should be limited

1  with respect to the issues at the June 26th hearing to approve

2  the PSA, because -- I said this -- our phone conversation on

3  Friday was not on the record; it focused on discovery issues,

4  and I do those generally off the record.  But I'll repeat in

5  substance what I said then.  It was my view, when the PSA was

6  first presented, that whatever the outcome on -- what the PSA

7  seeks to do is bind the parties to the agreement, to support a

8  plan consistent with the terms of the term sheets, and it gives

9  the parties to the PSA various rights to withdraw, various

10  things don't happen, milestones that had to be achieved, et

11  cetera.

12          Assuming the PSA is approved, disclosure statement and

13  plan is going to be forthcoming hopefully soon.  There'll be a

14  confirmation hearing.  Because of FGIC's unique status -- and

15  by that I mean it has the rehabilitation proceeding going in

16  state court, it requires the approval of the state court -- I

17  was told then, and I still understand now, that there was a

18  need to expedite consideration of the issues with respect to

19  FGIC, apart from the 9019s that would be embodied in a plan.

20          I don't -- and I recognize that the findings that had

21  been requested with respect to the trustees raise a different

22  set of issues for the Court to consider at an appropriate time.

23  And I'll do that.  But it does seem to me, from the telephone

24  communication on Friday and from reviewing both letters before

25  today's hearing, that the issues that you raise really go to

1  the approval of the 9019, either by this Court or by the

2  rehabilitation court.  And I don't plan to turn the June 26th

3  hearing into a trial of the issues that are going to have to

4  be -- that may have to be determined -- whether they have to,

5  we'll see -- either by this Court or by the state court.

6         One of the things I would like to do, and I'm going to

7  ask now whether I hear -- I may do it anyway, but I want to

8  hear whether anybody has any objection:  I would like to call

9  Justice Ling-Cohan and communicate with her, not about the

10  substance of what the ruling would be but about what procedures

11  are going to be followed in the two courts, since approvals by

12  both courts are required.  At the time of the initial status

13  conference after the PSA was entered, with respect to some

14  other -- there are some other issues under the PSA that require

15  approval of more than one court.  Some of the securities

16  litigation claimants requires under -- Judge Baer in the

17  district court needs to grant an approval in a class action,

18  and I have to grant approval as well.  And I raised the issue

19  then about whether there'd been any discussion about joint

20  hearings or procedures that would follow.

21         So it is -- and I'll listen to any objections from

22  you.  What I would like to do is call Justice Ling-Cohan and

23  talk with her about what the procedures are.  To the extent

24  there is discovery with respect to either the 9019 or the

25  proceeding before her and the rehabilitation court, discovery

1   should be coordinated; it should only be done once.  If there

2   are issues about standing in the state court, that's obviously

3   for her to decide, not for me.  But I want, to the fullest

4   extent possible, to have -- to coordinate the proceedings so

5   that if there are depositions, they only happen once.

6        I, as a regular matter, limit the length of

7   depositions, the number of depositions, the scope of document

8   discovery.  I'm not speaking now to what discovery may be

9   relevant for the 9019 in this court.  As it was discussed on

10  Friday, and I think that the debtors' counsel communicated this

11  to the investors' counsel, prior to the hearing on the 26th

12  with respect to the FGIC settlement is just a status

13  conference, not for approval of the FGIC settlement.

14       I don't want you to wait until the 26th to begin these

15  discussions.  You need -- from the letters, it's obvious that

16  the investors want much broader discovery with respect to the

17  9019.  And you talked about trying to do it now rather than

18  later, and I'm not going to permit it now.  But I want -- you

19  need to try and coordinate now what discovery you're going to

20  take, what the timetable is going to be.  I don't want to --

21  let's not wait until June 26 to hear about it.  To the extent

22  you can resolve all of your issues about discovery for the

23  9019, you ought to do that; to the extent you can't, the

24  Court'll do that in subsequent conferences.  I generally handle

25  discovery disputes, as I did on Friday, in telephone

1    conferences; sometimes the parties come in.  I don't want

2    briefing on discovery disputes; I'm generally able to resolve

3    it without it.

4           But I don't know how many additional parties are

5    involved in the state court proceeding.  I guess the -- I know

6    there are additional parties; I don't know whether you've

7    talked with them about what your plans are for the state court,

8    but I want all that coordinated.  I mean, if there's discovery

9    that's going to go on, fine.  I put limits on what I'll permit,

10   but that's -- and I don't know what the state court judge'll

11   decide what she wants to do, but I want to have an early

12   communication with her.

13          And in other matters, I've had joint hearings.  If

14   Justice Ling-Cohan wants to have a joint -- is willing to have

15   a joint hearing regarding discovery and procedures, fine; if

16   she doesn't, that's fine.  I'm not -- I don't force anybody to

17   do anything.  But it's been beneficial when I've done it in

18   other matters, with state courts and federal district courts.

19          So -- okay, so that's what I want to say.

20          Mr. Baio, is there anything else you want to say now?

21          MR. BAIO:  Yes, Your Honor.  One --

22          THE COURT:  Go ahead.

23          MR. BAIO:  One more thing.

24          THE COURT:  Please.  Go up to the microphone.

25          MR. BAIO:  And, Your Honor, proceeding as you've

1    described, speaking to the state court judge seems appropriate.

2              THE COURT:  Okay.

3              MR. BAIO:  But I'm going to try one more time --

4              THE COURT:  Go ahead.

5              MR. BAIO:  -- with our concern.  The carve-out

6    language that they are proposing suggests that for all other

7    purposes, beyond the carve-out, we're bound by those findings.

8              THE COURT:  So you raise two issues with me:  You

9    raise issue about good faith and best interests.

10             MR. BAIO:  Yes.

11             THE COURT:  And Mr. Johnson, with respect to both

12   those points, agreed that you're not precluded from challenging

13   good faith or best interests.

14             MR. BAIO:  Anywhere.

15             THE COURT:  All I can deal with is before me.  I

16   can't -- I don't control what the state court does.  I only --

17   I'm dealing with what's before me.  I had a clear statement

18   from Mr. Johnson that there would be -- and I -- look, first

19   off I'd say the language that the debtor proposed -- I was

20   fairly confident that that would be the import of it, that you

21   wouldn't -- there wouldn't be preclusive effect.  But so that

22   we'd have greater clarity, you can order a transcript.

23             Mr. Johnson stated very clearly -- he said very

24   clearly with respect -- well, he said clearly as to both --

25             MR. BAIO:  That --

1          THE COURT:  -- good faith and best interests.  What

2     are the other -- what other --

3          MR. BAIO:  No, it's just those two --

4          THE COURT:  Okay.

5          MR. BAIO:  -- Your Honor.

6          THE COURT:  And you --

7          MR. BAIO:  But --

8          THE COURT:  -- you got a clear statement on the

9     record.

10         MR. BAIO:  Okay.  And it's in any proceeding?  In

11    other words, not just --

12         THE COURT:  Before me.  I can't -- I just said it

13    again:  I can't control what happens in the state court.  I can

14    only control what happens before me, Mr. Baio.

15         MR. BAIO:  But the findings that you're entering, Your

16    Honor, are --

17         THE COURT:  Mr. Baio --

18         MR. BAIO:  -- by you.

19         THE COURT:  -- I'm -- yes, they are, and they're --

20    it's not a final order, and --

21         MR. BAIO:  Well, you can have --

22         THE COURT:  -- it's a step -- no, it's an

23    interlocutory order in the sense that I have to go ahead and

24    have a 9019; I got to have a disclosure statement approved; I

25    got to have a plan confirmed.  If the plan doesn't get

1    confirmed, it's all of no import here.

2            MR. BAIO:  I understand --

3            THE COURT:  Okay?

4            MR. BAIO:  -- all that, Your Honor.

5            THE COURT:  That's why it's interlocutory.

6            MR. BAIO:  All I'm -- all I am trying to be sure that

7    I've minimized -- perhaps the transcript does that, but this

8    language does not --

9            THE COURT:  Well, I -- it does.

10            MR. BAIO:  -- is that --

11            THE COURT:  It does.

12            MR. BAIO:  Well, it says that it allows us to object

13    at the 9019 --

14            THE COURT:  Okay --

15            MR. BAIO:  -- and for the disclosure statement.  It

16    doesn't say for any other purposes.

17            THE COURT:  What other purposes do you want?  What

18    other purposes --

19            MR. BAIO:  Well, it may be in the state court

20    proceeding.

21            THE COURT:  I just told you, I can't preclude -- I

22    can't bind the state court to anything.

23            MR. BAIO:  But you can limit your findings so that

24    they can't be used by the parties elsewhere; that's all.

25            THE COURT:  Anybody else wish to be heard?

 1  Mr. Johnson, come on up.

 2          MR. JOHNSON:  Your Honor, because I think we're the

 3  most immediately impacted, I just want to --

 4          THE COURT:  Yes.

 5          MR. JOHNSON:  -- be sure I understand the import of

 6  what you've talked about this morning, and that is that we are

 7  not going to rush headlong into depositions this week but,

 8  instead, work on a coordinated schedule so that we only do this

 9  once and not twice or even --

10          THE COURT:  Well, I do believe --

11          MR. JOHNSON:  -- three times.

12          THE COURT:  -- the depositions of the declarants needs

13  to go forward.

14          MR. JOHNSON:  And will that be limited, Your Honor, to

15  issues other than the 9019?  I'm trying to understand, Your

16  Honor, what -- I think the concern the trustees have is that we

17  not have multiple opportunities --

18          THE COURT:  Well, you --

19          MR. JOHNSON:  -- to be questioned on --

20          THE COURT:  -- you've requested --

21          MR. JOHNSON:  -- the 9019.

22          THE COURT:  -- specific findings.  And you could --

23  and it's fair game to examine the declarants on each of the --

24  on anything that's covered by their declarations as to which

25  you've asked the Court to make findings.  Okay?  And I -- at

1   some point today, I thought you had reached an agreement on

2   Friday as to the scope of appropriate document discovery.

3   You'll work out the protective order; I have confidence you'll

4   do that; if you can't, I'll -- you'll get that resolved.  So

5   you'd produce the documents attorneys-eyes-only for now and

6   work out the terms of the protective order.

7           But what are you -- I'm concerned that you're

8   overreaching now.

9           MR. JOHNSON:  Well, Your Honor, I had understood that

10  you understood the concern we have about multiple shots at

11  this.  And we don't think this is the appropriate forum next

12  week --

13          THE COURT:  Look, if you want me to make --

14          MR. JOHNSON:  -- to get into the --

15          THE COURT:  -- if you wish to have me --

16          MR. JOHNSON:  -- details of the commutation payment.

17          THE COURT:  If you --

18          MR. JOHNSON:  And I'm concerned that this week will

19  turn into a discovery on the commutation payment, that will

20  then not really be the subject of next week's PSA hearing but

21  will just be a preliminary to getting the discovery in the

22  context of the 9019, which is really where that discovery

23  should be occurring.

24          THE COURT:  Mr. Johnson, through the benefits of being

25  able to search a PDF on an iPad, I searched through and found

1  everyplace where "FGIC" or "commutation" is mentioned.  And

2  it's in the PSA, okay?  And so I'm being asked to approved a

3  PSA that includes -- there's, like, a half a dozen references

4  to FGIC and commutation, okay?  And to the extent that that

5  issue -- those issues have been put in issue for the hearing on

6  June 26, they are relevant, okay?  That isn't the same thing as

7  approval of a 9019 settlement, but -- you obviously negotiated

8  to include language in the term sheets, specific to FGIC,

9  specific to commutation, specific to capping how much FGIC

10  would have to pay.  Okay?  So I'm not excluding the discovery

11  on that.  I've said the declarants -- the declarations are on

12  file; the depositions are scheduled.  Whoever's got the

13  documents better get the documents produced so that this stuff

14  can move forward.  We're going forward on June 26th.

15      So if you want to extract from the PSA and its

16  attached-to term sheets anything related to FGIC, yeah, fine.

17  Okay, then you can narrow what the discovery is.  But it's in

18  there, okay?  It's signed.  That's the -- that's what I'm being

19  asked to approve.  What it would do is require the parties to

20  the PSA agreement to go forward and support a plan that

21  includes the agreed-upon terms of a plan.  Okay?

22      And I made the comment earlier; I'm not sure why the

23  investors want to come to the party on June 26 but, if they

24  believe that they should and you're not objecting, fine, go

25  ahead.  But I'm not going to permit duplicative discovery,

1   okay?  You get one bite at the apple, unless you all agree, for

2   purposes of the -- and it may make sense to do that, that you

3   all agree, for purposes of this initial round, they'll only be

4   questioned on certain subjects and the investors reserve their

5   right to further examine the trustees on the broader issues

6   that come up in the 9019.  That I will fully understand, okay?

7           It does seem to me that the issues on June 26 are

8   fairly narrow, okay?  And the discovery between now and the

9   hearing should be narrowly tailored to address the issues for

10  the 26th.  And to the extent that the issues are broader with

11  respect to approval of the 9019, approval of this settlement in

12  the rehabilitation court, I'm not going to -- don't think

13  you're going to come back and say, 'But, Judge, they already

14  had the discovery in connection with the PSA.'  I'm not going

15  to pre-judge it until -- you ought to try and work this -- you

16  ought to be able to work this out.  Okay?

17          MR. JOHNSON:  Understood, Your Honor.

18          THE COURT:  Anyone else wish to be heard?  Come on up.

19  Let's go; I got a calendar at 10 o'clock.

20          MS. ALVES:  Your Honor, Arlene Alves with Seward &

21  Kissell, on behalf of U.S. Bank.  We have a very narrow request

22  relating to the proposed deposition of our client.  The

23  business person at U.S. Bank, who's been involved in this case

24  from May of last year, works out of Chicago; she's a new

25  nursing mother with a four-month-old infant, and we had

1  requested of Willkie, as an accommodation, that her deposition

2  be tele -- be through videoconference.  Alternatively, if they

3  would like to, they could come to Chicago.

4          THE COURT:  They can do one of two things:  You can

5  either agree to do it by videoconference, or you can go to

6  Chicago.  Okay?  I'm not going to require a new mother to come

7  to New York for the deposition.  Okay?

8          MS. ALVES:  Thank you, Your Honor.

9          THE COURT:  Okay.

10         Come on up.  Let's go.

11         MR. SIDMAN:  Good morning, Your Honor.  Howard Sidman

12  from Jones Day, for FGIC.  I just want to understand the -- for

13  purposes of your ruling.  The counsel for Monarch and Stonehill

14  had sought discovery and document requests on FGIC as well as

15  other third parties, and they also are after -- saying they

16  weren't going to do it on Friday.  They've now -- this is over

17  the weekend -- said they want to continue with depositions of

18  FGIC in connection with --

19         THE COURT:  I'm not going to permit the depositions.

20         MR. SIDMAN:  I'm sorry?

21         THE COURT:  To the extent -- I'm not going to permit

22  the depositions.  To the extent that there are relevant

23  documents, I do want FGIC to produce the documents.  If you

24  can't resolve -- hopefully you've narrowed the scope of the

25  document request.

RESIDENTIAL CAPITAL, LLC, ET AL.                    45

1          MR. SIDMAN:  Well --

2          THE COURT:  Go ahead.

3          MR. SIDMAN:  -- Your Honor, we sent them a letter on

4    Friday afternoon, because the reality is the documents at issue

5    here, and the ones that the trustee used to evaluate the

6    settlement --

7          THE COURT:  Right.

8          MR. SIDMAN:  -- are in the hands of the trustee.  So

9    we said there are no other documents --

10         THE COURT:  Okay.

11         MR. SIDMAN:  -- that we had that were --

12         THE COURT:  Work that out.

13         MR. SIDMAN:  -- available.

14         THE COURT:  You ought to be able to work that out,

15   okay?  With respect -- they don't have to be produced twice,

16   okay?  There's a very short amount of time available.  There is

17   going to be a 9019.  There's going to be more fulsome discovery

18   for the 9019.  Okay?  The issues for the 26th are much

19   narrower.  But -- I don't have any doubt that you'll proceed in

20   good faith.  And when you say the documents are already in the

21   possession of the debtor, most of the debtor's documents have

22   already been put in digital format, searchable, et cetera.

23   Okay?

24         All right, let me hear next counsel.

25         MR. GARRITY:  Can I just get confer --

RESIDENTIAL CAPITAL, LLC, ET AL.                    46

1          THE COURT:  Yeah.  Go ahead.

2          MR. GARRITY:  -- one second?

3          THE COURT:  Sure.

4      (Pause)

5          THE COURT:  Mr. Garrity?

6          MR. GARRITY:  Good morning, Your Honor.  Jim Garrity

7   from Morgan Lewis, on behalf of Deutsche Bank Trust Company

8   America (sic), Deutsche Bank National Trust Companies (sic), as

9   trustee.  Your Honor, we're not trustee for any of the wrapped

10  trust.  We've no relationship.  We have no -- not party to the

11  agreement.

12          We've discussed with Mr. Baio the following:  that

13  after they take the depositions of the trustees who are party

14  to the agreement, if he believes -- if Monarch and Stonehill

15  believe that there's a need to come back to Deutsche Bank to

16  take discovery of Deutsche Bank, we would meet and confer and

17  try to resolve it.  We frankly -- we're not party to the

18  negotiations.

19          THE COURT:  Right.

20          MR. GARRITY:  So I think we're just going to put that

21  off to the side for a moment.

22          THE COURT:  Put it off to the side.  I don't exactly

23  see why you're being deposed in connection -- when none of the

24  trusts were wrapped with FGIC -- by FGIC.  Okay?

25          MR. GARRITY:  Thank you, Your Honor.  I'm --

RESIDENTIAL CAPITAL, LLC, ET AL.                    47

1          THE COURT:  All right.

2          MR. GARRITY:  I'm sure we will work it out.

3          THE COURT:  Okay.  Thank you.

4          MR. GARRITY:  Thank you.

5          THE COURT:  Next.  Come on up.

6          MR. KIBLER:  John Kibler from Allen & Overy,

7    representing HSBC Bank USA.  We have a very similar issue to

8    Deutsche Bank in the sense that we don't have any FGIC wrapped

9    trusts.  We received a notice of deposition and we responded

10   with a letter essentially stating that we think the other

11   trustees are in a better position to provide information with

12   respect to that.  We have not heard from the other side since

13   then.  So we're just in the same position, I guess, that

14   Deutsche Bank is.

15         MR. BAIO:  Same arrangement, Your Honor.

16         MR. KIBLER:  That'd be great.

17         THE COURT:  All right, thank you.

18         MR. KIBLER:  So there's no deposition on schedule?

19         MR. BAIO:  Correct.

20         MR. KIBLER:  Perfect.

21         THE COURT:  Okay, thank you.

22         MR. CHRISTENSEN:  Your Honor, Dale Christensen from

23   Seward & Kissell, for Law Debenture.  Our is a similar

24   situation, although we believe we have one wrapped trust; we

25   have a sort of special relationship with Wells Fargo.  It's our

RESIDENTIAL CAPITAL, LLC, ET AL.                          48

1    understanding that Monarch's counsel has agreed to wait until

2    they've concluded the depositions of the principal trustees and

3    then determine whether they want to take an additional

4    deposition of us.

5              THE COURT:  Mr. Baio?

6              MR. BAIO:  Same answer.

7              THE COURT:  Okay.  Okay, anybody else wish to be

8    heard?  Mr. Kerr.

9              MR. KERR:  Your Honor, Charles Kerr of Morrison &

10   Foerster again, on behalf of the debtor.  In light of the

11   discussion this morning, maybe I'll ask counsel on it, is

12   whether or not the deposition of Mr. Kruger is necessary.

13   Mr. Kruger --

14             THE COURT:  Look, work that out outside of court.  I'm

15   not going to --

16             UNIDENTIFIED SPEAKER:  We'll work it out.

17             MR. KERR:  We'll work it out.

18             THE COURT:  I'm not going to --

19             MR. KERR:  Okay, thank you.

20             THE COURT:  He's the CRO and I'm not going to deal

21   with that now.  You ought to be able to work it out.

22             Let me just look at the calendar.

23         (Pause)

24             THE COURT:  Okay, I'd like to have a telephone

25   conference this afternoon at 5 o'clock, just to see what the

RESIDENTIAL CAPITAL, LLC, ET AL.                          49

1  status is.  I mean, I think -- with respect to the issues

2  raised by the two letters, I think it should be clear, but to

3  make it crystal clear.  Monarch and Stonehill's -- I want to

4  call them objections; there's no -- I mean, I have the letters

5  from both Willkie Farr and from the debtor.  The objections to

6  the PSA hearing procedures and discovery are overruled to the

7  extent that the language proposed by the debtors, as contained

8  in their June 16th letter on page 4, will be included in any

9  order approving the PSA, assuming that the Court approves the

10 PSA.

11         As made clear on the record, Mr. Johnson, representing

12 the trustees for the FGIC wrapped trust, stated on the

13 record -- and you can all order a transcript about it -- that

14 the trustees do not contend that any findings that the Court

15 makes in connection with approval of the PSA, if it is

16 approved, will have any preclusive effect in the 9019, or in

17 plan confirmation, with respect to the good faith and best

18 interests of the trustees in entering into the PSA and in

19 supporting a plan that incorporates its terms.

20         This ruling is only intended to be applicable to this

21 proceeding, and "this proceeding" meaning the ResCap bankruptcy

22 proceedings in this court.  I can't make any decision that has

23 any binding effect on a state court.

24         I did ask whether counsel have any objections to my

25 discussing with Justice Ling-Cohan coordination of proceedings.

RESIDENTIAL CAPITAL, LLC, ET AL.                    50

1   Mr. Johnson, I think, indicated that he had no objection.  But

2   let me ask debtors, investors, anybody else who wants to be

3   heard on this point.  I don't plan to go into the substance of

4   what any determination is, but I do believe, as I indicated, I

5   think, since the issues ultimately may be different for

6   decision but they substantially overlap, and to the extent that

7   there's discovery, it ought to be coordinated so it's only done

8   once.

9           Mr. Kerr?

10          MR. KERR:  Your Honor, Charles Kerr of Morrison

11  Foerster, on behalf of the debtor.  We have no objection to

12  your contacting --

13          THE COURT:  Okay.

14          MR. KERR:  -- Justice Ling-Cohan.

15          THE COURT:  Mr. Baio?

16          MR. BAIO:  No objection, Your Honor.

17          THE COURT:  All right.  Anybody else wish to be heard

18  on that point?

19      (No audible response)

20          THE COURT:  Okay.  All right.  Thank you very much.

21          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

22          THE COURT:  All right, so somebody set up the call;

23  let my chambers know.  It will be an off-the-record call.  I

24  just want to see whether you've worked out your remaining

25  discovery issues so we can get on with this.  Okay?  Thank you

RESIDENTIAL CAPITAL, LLC, ET AL.                    51

1    very much, everybody.  The Court's going to be in --

2         (Audio ends mid-sentence)

3         (Whereupon these proceedings were concluded at 10:03 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                            R U L I N G S

5    DESCRIPTION                                PAGE       LINE

6    The objections to the PSA hearing procedures    49          6

7    and discovery are overruled to the extent

8    that the language proposed by the debtors,

9    as contained in their June 16th letter on

10   page 4, will be included in any order

11   approving the PSA, assuming that the Court

12   approves the PSA.

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7            *Sharona Shapiro*

8

9   _____

10  SHARONA SHAPIRO

11  AAERT Certified Electronic Transcriber CET**D-492

12

13  eScribers

14  700 West 192nd Street, Suite #607

15  New York, NY 10040

16

17  Date:   June 17, 2013

18

19

20

21

22

23

24

25

## A

**ability (1)**
8:4
**able (16)**
8:20;13:10;22:9,
13;24:13;25:2,6,17,
19;26:5,11;36:2;
41:25;43:16;45:14;
48:21
**ABRAMS (1)**
4:16
**absent (4)**
26:13,15,18,20
**absolutely (2)**
12:3,10
**accelerated (1)**
22:25
**accepted (1)**
24:7
**accommodation (1)**
44:1
**achieved (1)**
33:10
**achieves (1)**
26:2
**acknowledged (1)**
8:4
**acted (9)**
20:6,10;22:7,7,11,
22,23;24:11,19
**action (3)**
31:24;32:4;34:17
**actions (1)**
25:12
**actually (1)**
17:17
**add (1)**
30:19
**added (3)**
8:22;13:9;24:4
**addition (1)**
19:1
**additional (6)**
9:23;16:4;20:17;
36:4,6;48:3
**address (2)**
13:10;43:9
**addressed (3)**
7:23;10:15;12:13
**adjudication (1)**
22:24
**advancing (1)**
27:17
**advantage (1)**
27:2
**adversely (2)**
24:3,8
**affected (2)**
24:3,8
**affects (1)**
28:21

**afternoon (3)**
7:8;45:4;48:25
**again (11)**
10:19;12:5;13:11,
17;17:19;18:15;
21:14,16;24:1;
38:13;48:10
**against (3)**
25:14;31:24;32:10
**aggregate (1)**
15:7
**Agree (5)**
29:12;30:24;43:1,
3;44:5
**agreed (11)**
9:6,7,15,17,21;
10:22;12:9;18:24;
27:13;37:12;48:1
**agreed-upon (1)**
42:21
**agreement (16)**
7:10;8:7;10:11;
12:15,21;17:16,24;
20:11;23:25;24:2;
26:2;33:7;41:1;
42:20;46:11,14
**ahead (11)**
16:16;18:12;
30:18;31:18,20;
36:22;37:4;38:23;
42:25;45:2;46:1
**ALLEN (2)**
4:2;47:6
**allowed (3)**
10:21,23;12:9
**allows (1)**
39:12
**Ally (1)**
6:3
**almost (1)**
16:13
**along (2)**
17:11;21:11
**ALSTON (3)**
5:10;14:9;15:25
**Alternative (2)**
4:12;21:24
**Alternatively (1)**
44:2
**although (3)**
9:10;12:5;47:24
**ALVES (4)**
6:16;43:20,20;
44:8
**America (1)**
46:8
**Americas (1)**
4:4
**among (1)**
18:24
**amount (9)**
7:20;10:20,21;
11:11,12;12:8;

25:25;26:7;45:16
**ample (1)**
17:25
**analyzing (1)**
10:1
**announcements (1)**
25:25
**apart (1)**
33:19
**apparently (1)**
24:6
**appears (1)**
18:19
**apple (1)**
43:1
**applicable (1)**
49:20
**applies (1)**
11:21
**applying (1)**
20:13
**appreciation (1)**
15:24
**appropriate (8)**
10:23;12:9;16:20,
23;33:22;37:1;41:2,
11
**approval (15)**
8:7,11;12:24;
19:18;22:17;33:16;
34:1,15,17,18;35:13;
42:7;43:11,11;49:15
**approvals (1)**
34:11
**approve (10)**
7:9;10:16;11:7,19;
20:20;23:24;24:1;
30:18;33:1;42:19
**approved (11)**
8:24;12:24;20:7,8,
13,19;25:20;33:12;
38:24;42:2;49:16
**approves (3)**
13:6;24:5;49:9
**approving (1)**
49:9
**argue (8)**
14:22;20:21;21:1;
24:25;25:2,6,17;
30:21
**arguing (1)**
20:18
**ARLENE (2)**
6:16;43:20
**around (1)**
16:1
**arrangement (1)**
47:15
**assume (2)**
31:2,25
**assuming (5)**
21:10;24:4,5;
33:12;49:9

**assumption (1)**
12:6
**assurance (1)**
26:7
**Atlanta (1)**
5:14
**attached-to (1)**
42:16
**attempt (1)**
12:16
**attempting (1)**
8:16
**Attorneys (7)**
4:3,11;5:3,11,21;
6:3,11
**attorneys'-eyes-only (1)**
9:18
**attorneys-eyes-only (1)**
41:5
**audible (1)**
50:19
**Audio (1)**
51:2
**August (4)**
8:2;18:2,3,8
**available (2)**
45:13,16
**Avenue (3)**
4:4,13;5:22
**away (1)**
28:9

## B

**back (4)**
8:17;23:6;43:13;
46:15
**background (1)**
7:15
**backs (1)**
27:2
**Baer (1)**
34:16
**baggage (1)**
20:17
**BAIO (79)**
4:18;21:21,21,24;
22:5,15,20;23:5,8,
12,15;24:9;25:2,5,8,
24;26:12,14,16,18,
20,24;27:9,14,22;
28:2,3,5,17;29:8,9,
10;31:2,3,4,9,12,15,
17,19,21,23;32:2,4,6,
7;36:20,21,23,25;
37:3,5,10,14,15,17,
18,21;39:2,4,6,10,12,
15,19,23;46:12;
47:15,19;48:5,6;
50:15,16
**BANK (15)**
4:3;5:11,21;6:3,

**11;14:9;43:21,23;**
**46:7,8,15,16;47:7,8,**
**14**
**bankruptcy (2)**
25:9;49:21
**based (2)**
21:16;30:20
**basic (1)**
29:10
**basis (3)**
9:18;22:25;24:18
**Battery (1)**
6:12
**begin (1)**
35:14
**behalf (6)**
7:6;21:24;43:21;
46:7;48:10;50:11
**believes (1)**
46:14
**belong (3)**
23:11,11,14
**beneficial (1)**
36:17
**beneficiaries (1)**
11:22
**benefit (1)**
26:25
**benefits (1)**
41:24
**best (5)**
19:21,22;22:7,23;
24:11,15,17,19;
25:12;31:5;32:9;
37:9,13;38:1;49:17
**better (3)**
14:17;42:13;47:11
**beyond (1)**
37:7
**bind (2)**
33:7;39:22
**binding (1)**
49:23
**BIRD (3)**
5:10;14:9;16:1
**bite (1)**
43:1
**BOCKIUS (1)**
5:20
**both (9)**
7:12;8:6;14:10;
32:13;33:24;34:12;
37:11,24;49:5
**bound (1)**
37:7
**breach (1)**
32:6
**breached (2)**
25:17,23
**briefing (1)**
36:2
**broad (2)**
8:15;9:3

**broader (3)**
35:16;43:5,10
**Broadway (1)**
6:4
**BROWN (1)**
6:2
**business (1)**
43:23

## C

**calendar (2)**
43:19;48:22
**call (7)**
9:6;18:24;34:8,22;
49:4;50:22,23
**called (1)**
16:6
**came (1)**
9:2
**can (28)**
10:14;11:3;12:22;
18:16;19:25;20:22;
24:12,25;27:3,22;
29:23;31:5,6,13;
35:22;37:15,22;
38:13,21;39:23;
42:14,17;44:4,4,5;
45:25;49:13;50:25
**cap (1)**
11:11
**Capital (5)**
4:11,12;7:3;21:24,
25
**capping (1)**
42:9
**carry (1)**
20:17
**carve (2)**
21:8;30:15
**carve-out (4)**
17:9;19:23;37:5,7
**case (3)**
20:19;30:2;43:23
**center (1)**
12:2
**certain (1)**
43:4
**certainly (2)**
11:15;12:22
**cetera (2)**
33:11;45:22
**challenge (6)**
8:4,6,7;13:1;31:5,
6
**challenging (6)**
8:25;29:11,25;
30:21;32:9;37:12
**chambers (1)**
50:23
**Chapter (1)**
23:23
**Charles (3)**

7:5;48:9;50:10
**Chicago (3)**
43:24;44:3,6
**CHRISTENSEN (3)**
6:15;47:22,22
**circumstances (1)**
26:9
**claim (4)**
10:21,23;12:9;
27:18
**claimants (1)**
34:16
**claims (4)**
7:19;22:14;23:10;
28:22
**clarity (1)**
37:22
**class (1)**
34:17
**clear (15)**
7:18;8:23;20:24;
24:12;27:10,16;
29:21,22;30:20;
32:22;37:17;38:8;
49:2,3,11
**clearly (1)**
37:23,24,24
**client (1)**
43:22
**clients (1)**
26:1
**closest (1)**
8:11
**comment (1)**
42:22
**communicate (1)**
34:9
**communicated (1)**
35:10
**communication (2)**
33:24;36:12
**commutation (15)**
7:20,22;8:5;10:20;
11:8;16:21;17:13;
18:18;19:18;26:21;
41:16,19;42:1,4,9
**Companies (1)**
46:8
**Company (1)**
46:7
**competent (1)**
25:11
**completely (2)**
13:19,20
**compromised (3)**
27:1,1,19
**concern (5)**
12:23;16:20;37:5;
40:16;41:10
**concerned (8)**
7:21;10:5,10;
12:12;19:15;32:12;
41:7,18

**concerns (1)**
10:14
**concluded (3)**
22:9;48:2;51:3
**conclusion (1)**
24:5
**confer (3)**
31:17;45:25;46:16
**conference (9)**
7:8;8:3,18;9:6;
32:19,20;34:13;
35:13;48:25
**conferences (2)**
35:24;36:1
**confidence (1)**
41:3
**confident (1)**
37:20
**confidentiality (1)**
9:15
**confirmation (2)**
33:14;49:17
**confirmed (2)**
38:25;39:1
**connection (10)**
12:23;13:8;17:15;
18:14;26:24;29:12;
43:14;44:18;46:23;
49:15
**consider (2)**
16:13;33:22
**consideration (1)**
33:18
**considered (1)**
29:4
**consistent (1)**
33:8
**contacting (1)**
50:12
**contained (1)**
49:7
**contend (1)**
49:14
**context (3)**
17:19;18:20;41:22
**continue (1)**
44:17
**contractual (1)**
25:18
**control (3)**
37:16;38:13,14
**conversation (1)**
33:2
**coordinate (2)**
35:4,19
**coordinated (4)**
35:1;36:8;40:8;
50:7
**coordination (1)**
49:25
**correctly (1)**
11:10
**counsel (14)**

7:17;9:20;14:6,7;
21:20;27:12,15;
35:10,11;44:13;
45:24;48:1,11;49:24
**course (2)**
16:23;19:20
**COURT (236)**
7:2,12,19,24;8:2,5,
6;10:6,8,15,17,18,
19;11:3,4,4,8,10,14,
18,19,23;12:2,11,13,
22,23,25;13:2,5,7,8,
8,10,13,14,19,21,23;
14:2,4,6,14,17,19;
15:1,3,6,12,15,18,21,
23;16:2,4,8,11,15,
24;17:2,6,7,11,11,20,
24;18:2,3,8,10;19:3,
7,13,25;20:7,8,11,12,
14,20,22,24;21:1,8,9,
19,23;22:3,9,15,18,
21;23:3,6,10,14,18;
24:3,5,10,25,25;
25:4,6,7,9,9,22;26:7,
13,15,17,19,22;27:5,
6,11,13,21,25;28:4,
17;29:5,10,15,17,19,
21,25;30:4,7,10,16,
18;31:1,3,7,11,15,18,
20;32:1,3,7,15;
33:16,16,22;34:1,2,
5,5,15,17,25;35:2,9;
36:5,7,10,22,24;
37:1,2,4,8,11,15,16;
38:1,4,6,8,12,13,17,
19,22;39:3,5,9,11,14,
17,19,21,22,25;40:4,
10,12,18,20,22,25;
41:13,15,17,24;
43:12,18;44:4,9,19,
21;45:2,7,10,12,14;
46:1,3,5,19,22;47:1,
3,5,17,21;48:5,7,14,
14,18,20,24;49:9,14,
22,23;50:13,15,17,
20,22
**Court'll (1)**
35:24
**courts (5)**
20:1;34:11,12;
36:18,18
**Court's (2)**
11:2;51:1
**cover (1)**
19:10
**covered (2)**
19:11;40:24
**creditors (2)**
7:18;14:14
**CRO (2)**
9:9;48:20
**crystal (1)**
49:3

**crystallize (2)**
7:14;8:21
**current (1)**
18:14

## D

**DALE (2)**
6:15;47:22
**date (1)**
32:22
**DAY (4)**
5:2;21:8;28:10;
44:12
**days (1)**
29:3
**deadline (1)**
17:22
**deal (4)**
10:1,2;37:15;
48:20
**dealing (2)**
28:17;37:17
**death (1)**
25:16
**Debenture (1)**
47:23
**debtor (9)**
7:18,24;12:9;
13:17;37:19;45:21;
48:10;49:5;50:11
**debtors (12)**
7:6;10:21;17:9;
18:6;21:8,12;23:19;
24:6;30:6,19;49:7;
50:2
**debtors' (1)**
35:10
**debtor's (2)**
21:17;45:21
**decide (4)**
19:14;20:24;35:3;
36:11
**decided (4)**
8:6;21:2,14;24:12
**deciding (2)**
7:25;20:19
**decision (2)**
49:22;50:6
**declarants (8)**
9:9,22;19:2,11;
28:10;40:12,23;
42:11
**declarations (4)**
19:3,12;40:24;
42:11
**deferred (1)**
27:22
**demonstrably (1)**
22:8
**demonstrate (1)**
22:9
**deponents (2)**

9:7;18:25
**depose (1)**
9:8
**deposed (2)**
9:11;46:23
**deposing (1)**
9:22
**deposition (7)**
43:22;44:1,7;47:9,
18;48:4,12
**depositions (15)**
9:24,24;19:5;28:6;
35:5,7,7;40:7,12;
42:12;44:17,19,22;
46:13;48:2
**derail (1)**
28:25
**described (1)**
37:1
**despite (1)**
9:21
**details (1)**
41:16
**determination (3)**
20:9;24:19;50:4
**determine (3)**
11:8;20:5;48:3
**determined (2)**
22:24;34:4
**determining (1)**
11:19
**Deutsche (7)**
5:21;46:7,8,15,16;
47:8,14
**difference (1)**
26:3
**different (4)**
20:1;28:2;33:21;
50:5
**digital (1)**
45:22
**disagree (2)**
28:24;29:13
**disclosure (4)**
23:23;33:12;
38:24;39:15
**discovery (42)**
7:8;8:16,18,19;
9:5;18:14,20,22;
22:8;25:10;27:3,6,
23;32:24,25;33:3;
34:24,25;35:8,8,16,
19,22,25;36:2,8,15;
41:2,19,21,22;42:10,
17,25;43:8,14;44:14;
45:17;46:16;49:6;
50:7,25
**discussed (3)**
8:8;35:9;46:12
**discussing (1)**
49:25
**discussion (2)**
34:19;48:11

**discussions (1)**
35:15
**dispute (1)**
7:19
**disputes (2)**
35:25;36:2
**disputing (1)**
22:16
**disrupt (2)**
8:16,17
**disrupted (1)**
10:13
**district (2)**
34:17;36:18
**document (7)**
9:14;23:1;28:7;
35:7;41:2;44:14,25
**documents (10)**
9:17;41:5;42:13,
13;44:23,23;45:4,9,
20,21
**dollar (1)**
11:12
**dollars (2)**
11:13;26:3
**done (5)**
8:14,19;35:1;
36:17;50:7
**don't (1)**
23:1
**double-dip (1)**
18:21
**double-dipping (1)**
19:9
**doubt (1)**
45:19
**down (2)**
8:21;32:13
**dozen (1)**
42:3
**draft (1)**
8:22
**driven (1)**
28:12
**due (1)**
8:17
**duplicative (1)**
42:25
**duties (1)**
24:14
**duty (3)**
25:18,23;32:6
**dying (1)**
25:15

**E**

**earlier (2)**
17:1;42:22
**early (1)**
36:11
**East (1)**
5:4

**EATON (1)**
4:17
**effect (13)**
12:25;13:5,7;17:5,
5;18:7;20:18,22,25;
25:14;37:21;49:16,
23
**effort (3)**
8:9;10:10;18:21
**either (5)**
10:15;34:1,5,24;
44:5
**else (9)**
14:23;17:12,23;
36:20;39:25;43:18;
48:7;50:2,17
**elsewhere (1)**
39:24
**e-mail (2)**
9:20;10:2
**embodied (1)**
33:19
**EMMA (1)**
4:19
**emphasize (1)**
14:13
**ends (1)**
51:2
**enough (1)**
11:24
**ensure (1)**
12:20
**enter (2)**
12:20;21:11
**entered (2)**
32:19;34:13
**entering (11)**
20:6,10;22:6,10,
22;24:10;25:23;
30:1,22;38:15;49:18
**enters (3)**
13:5,6;24:3
**entirely (1)**
19:5
**entitled (2)**
28:23;29:2
**especially (1)**
12:13
**ESQ (12)**
4:7,16,17,18,19;
5:7,16,17,25;6:7,15,
16
**essence (1)**
21:8
**essentially (3)**
11:14;19:9;47:10
**estates (1)**
19:21
**estimates (1)**
26:8
**et (2)**
33:10;45:22
**evaluate (1)**

45:5
**evaluations (1)**
28:9
**even (7)**
10:25,25;11:1;
14:13;18:19;27:10;
40:9
**evening (2)**
9:22;18:24
**eventually (1)**
22:10
**everybody (2)**
27:11;51:1
**everyplace (1)**
42:1
**evidence (1)**
32:23
**eviscerates (1)**
24:20
**exactly (4)**
10:4;11:20;14:24;
46:22
**examine (2)**
40:23;43:5
**example (1)**
12:25
**excess (1)**
26:1
**excluding (1)**
42:10
**exclusion (1)**
28:13
**expedite (1)**
33:18
**expert (1)**
26:10
**experts (3)**
26:4,8;28:8
**explanation (1)**
29:23
**extend (1)**
10:4
**extending (1)**
10:6
**extent (10)**
34:23;35:4,21,23;
42:4;43:10;44:21,
22;49:7;50:6
**extract (1)**
42:15
**extremely (2)**
8:5,15;22:25

**F**

**fact (2)**
13:1;17:16
**factual (3)**
30:12,14,17
**fair (3)**
14:20;17:21;40:23
**fairly (1)**
37:20;43:8

**fairness (1)**
10:14
**faith (18)**
20:6,10;21:3;22:7,
11,22;29:12,25;
30:13,13,22;31:4;
32:9;37:9,13;38:1;
45:20;49:17
**false (1)**
22:8
**far (1)**
32:12
**Fargo (5)**
5:11;14:9;15:8;
47:25
**FARR (1)**
4:10;21:22;49:5
**federal (1)**
36:18
**FGIC (50)**
5:3;8:11,25;9:24;
10:1,16,18,22;11:1,
5,7,9,11,15,24;12:5,
5,9;13:7;14:11;15:4,
5;16:21,25;17:13,15,
17;23:24;24:1;
25:24;26:9;28:20;
30:8,24;33:19;35:12,
13;42:1,4,8,9,16;
44:12,14,18,23;
46:24,24;47:8;49:12
**FGIC's (2)**
17:14;33:14
**FGIC-wrapped (2)**
17:19;19:15
**fiduciary (3)**
25:17,23;32:6
**fifty (1)**
26:1
**fight (1)**
14:23
**file (1)**
42:12
**filed (1)**
7:18
**filings (1)**
26:4
**final (2)**
20:22;38:20
**finalized (1)**
9:16
**financial (1)**
26:9
**finding (7)**
21:3;22:21;24:9,
16;30:12,14;31:9
**findings (27)**
12:17,18,18,23;
13:6,12;18:5,5;
21:17;22:5;23:13,
16;25:5;28:13,13,15,
16;30:17;32:17,24;
33:20;37:7;38:15;

39:23;40:22,25;
49:14
**fine (5)**
36:9,15,16;42:16,
24
**firm (1)**
7:11
**first (6)**
20:5;24:23;28:15;
32:16;33:6;37:18
**focus (1)**
11:25
**focused (3)**
22:1;32:22;33:3
**focusing (1)**
22:19
**Foerster (3)**
7:6;48:10;50:11
**follow (2)**
7:7;34:20
**followed (1)**
34:11
**following (3)**
32:20,21;46:12
**force (1)**
36:16
**foregone (1)**
24:5
**forget (1)**
11:12
**format (1)**
45:22
**forthcoming (1)**
33:13
**forty-seven (3)**
15:9,11,12
**forum (3)**
16:23;18:15;41:11
**forward (6)**
19:20;28:4;40:13;
42:14,14,20
**found (1)**
41:25
**four (1)**
9:8
**four-month-old (1)**
43:25
**frankly (4)**
9:3,10;14:19;
46:17
**Friday (15)**
7:8,22;8:3,8,21;
9:6,22;18:23;33:3,
24;35:10,25;41:2;
44:16;45:4
**front (1)**
12:2
**fulfill (1)**
24:14
**Full (4)**
10:8;14:20;15:23;
17:20
**fullest (1)**

35:3
**fully (2)**
23:22;43:6
**fulsome (1)**
45:17
**fundamental (1)**
27:18
**further (1)**
43:5
**future (1)**
26:9

### G

**GA (1)**
5:14
**gain (2)**
27:2,19
**GALLAGHER (2)**
4:10;21:22
**game (1)**
40:23
**GARRITY (10)**
5:25;45:25;46:2,5,
6,6,20,25;47:2,4
**generally (3)**
33:4;35:24;36:2
**gets (1)**
12:24
**given (2)**
17:16;32:2
**gives (1)**
33:8
**giving (1)**
28:9
**Glenn (1)**
21:2
**global (1)**
28:20
**goes (1)**
23:25
**Good (24)**
7:5;14:8;20:6,10;
21:2,21,23;22:7,11,
22;29:1;25;30:13,
13,22;31:4;32:9;
37:9,13;38:1;44:11;
45:20;46:6;49:17
**grant (2)**
34:17,18
**granting (1)**
27:11
**great (1)**
47:16
**greater (1)**
37:22
**group (1)**
16:12
**guess (2)**
36:5;47:13

### H

**half (1)**
42:3
**handle (1)**
35:24
**hands (1)**
45:8
**happen (3)**
17:6;33:10;35:5
**happens (4)**
18:7,8;38:13,14
**head (1)**
16:19
**headlong (1)**
40:7
**hear (10)**
11:20;14:6,7;20:2;
21:19;29:6;34:7,8;
35:21;45:24
**heard (16)**
8:1;14:21;17:11,
12,17,21;18:9,17;
31:15;32:8;39:25;
43:18;47:12;48:8;
50:3,17
**hearing (20)**
7:16;16:22,25;
18:1;19:1;20:3;25:9;
29:4;32:8,10;33:1,
14,25;34:3;35:11;
36:15;41:20;42:5;
43:9;49:6
**hearings (3)**
27:5;34:20;36:13
**heart (3)**
24:20;25:20;27:20
**help (1)**
7:14
**herein (1)**
23:21
**highlighted (1)**
9:13
**hit (1)**
16:18
**hold (3)**
20:2;26:25;31:7
**holders (2)**
17:18;19:22
**Honor (94)**
7:5,7,10,13,22;8:4,
8,15,18;9:10,19;
10:3,9,23;11:17;
12:3,7,10;13:14,20,
25;14:8,24;15:11,25;
16:17,18;17:1,3,8,
12,22;18:4,9,19,23;
19:5,8,16,20,23;
21:5,10,16,21,25;
22:5,20,25;23:8,15;
24:9;25:5,13;27:9,
12,14,23;29:9,14,18,
20;30:3,9,13,25;
31:2,10,19,23;32:14;
36:21,25;38:5,16;

39:4;40:2,14,16;
41:9;43:17,20;44:8,
11;45:3;46:6,9,25;
47:15,22;48:9;50:10,
16,21
**hope (1)**
25:8
**hopefully (2)**
33:13;44:24
**HOWARD (2)**
5:7;44:11
**HSBC (2)**
4:3;47:7
**hundred (3)**
15:16,19;16:5
**hypothetically (1)**
20:2

### I

**idea (2)**
27:25;28:1
**identified (1)**
9:15
**identity (1)**
9:7
**immediately (1)**
40:3
**impacted (1)**
40:3
**impaired (1)**
24:24
**import (6)**
29:14;30:5,14;
37:20;39:1;40:5
**important (2)**
11:15;19:19
**imprimatur (1)**
19:17
**inappropriate (1)**
19:6
**include (1)**
42:8
**included (1)**
49:8
**includes (2)**
42:3,21
**including (3)**
9:25;23:24;24:1
**incorporates (1)**
49:19
**indicated (5)**
10:2;12:16;24:7;
50:1,4
**indicates (1)**
12:12
**infant (1)**
43:25
**information (1)**
47:11
**initial (3)**
16:6;34:12;43:3
**initially (1)**

11:25
**insisted (1)**
17:15
**insofar (1)**
19:14
**instance (1)**
20:5
**instead (1)**
40:8
**insulate (1)**
22:13
**insurance (4)**
11:22;15:4,5;
26:24
**insure (1)**
17:10
**insurers (1)**
28:22
**insures (1)**
18:6
**intend (1)**
21:6
**intended (1)**
49:20
**interest (10)**
8:14;17:23;19:21;
22:23;24:11,15,17,
20;25:12;31:5
**interests (7)**
19:22;22:7;32:9;
37:9,13;38:1;49:18
**interim (1)**
9:17
**interlocutory (2)**
38:23;39:5
**into (22)**
11:22;12:17,20;
20:6,10,20;21:1;
22:6,10,22;23:9;
24:10;25:23;30:1,
22;32:19;34:3;40:7;
41:14,19;49:18;50:3
**investors (7)**
11:21;14:14;
30:21;35:16;42:23;
43:4;50:2
**investors' (1)**
35:11
**investor's (3)**
12:23;14:7;21:19
**involved (6)**
7:25;13:16;14:10;
28:19;36:5;43:23
**involvement (1)**
16:19
**involving (1)**
10:12
**iPad (1)**
41:25
**issue (19)**
7:14,21,23;8:1;
10:19,24;12:1,4,7;
20:12;21:4;22:15;

24:13;34:18;37:9;
42:5,5;45:4;47:7
**issues (31)**
7:9,15;8:10,13;
9:1,12;10:17;12:11;
19:9;21:14;22:19;
33:1,3,18,22,25;
34:3,14;35:2,22;
37:8;40:15;42:5;
43:5,7,9,10;45:18;
49:1;50:5,25

**J**

**JAMES (2)**
4:19;5:25
**Jim (1)**
46:6
**JOHN (3)**
4:7;5:16;47:6
**JOHNSON (59)**
5:17;14:8,9,18,24;
15:1,2,5,7,10,14,16,
19,22;16:16,17;18:4,
12,13;19:8,13,16;
21:5;24:7;29:6,14,
16,17,18,19,20;30:2,
5,8,12,17,25;31:8,10,
13;32:14;37:11,18,
23;40:1,2,5,11,14,19,
21;41:9,14,16,18,24;
43:17;49:11;50:1
**joint (4)**
34:19;36:13,14,15
**JONES (2)**
5:2;44:12
**JOSEPH (2)**
4:18;21:21
**JR (2)**
5:25;6:15
**Judge (13)**
10:12;20:19,21,21,
24;21:1,1,13;25:9,
11;34:16;37:1;43:13
**judge'll (1)**
36:10
**July (1)**
17:24
**June (12)**
8:12;18:7;19:14;
25:3;33:1;34:2;
35:21;42:6,14,23;
43:7;49:8
**Justice (7)**
8:1;27:7;34:9,22;
36:14;49:25;50:14

**K**

**KERR (26)**
7:5,5,13;10:7,9,19;
11:6,13,17;12:3;
13:9,14,20,22,24;

14:3,5;48:8,9,9,17,
19;50:9,10,10,14
**KIBLER (6)**
4:7;47:6,6,16,18,
20
**KISSEL (1)**
6:10
**Kissell (2)**
43:21;47:23
**Kit (1)**
15:25
**knew (1)**
23:3
**Kruger (4)**
9:9,23;48:12,13
**Kruger's (1)**
9:11

**L**

**label (1)**
11:21
**language (21)**
8:22;9:2,2;13:3,4,
9;17:8;21:6,7;23:19,
20;24:4,6;29:16;
30:14,19;37:6,19;
39:8;42:8;49:7
**large (1)**
28:25
**last (1)**
43:24
**later (1)**
35:18
**launch (1)**
32:10
**law (2)**
20:18;47:23
**least (1)**
26:5
**length (1)**
35:6
**less (1)**
29:3
**letter (11)**
7:10;8:9;9:13,19,
21;12:11;17:9;
21:17;45:3;47:10;
49:8
**letters (6)**
7:12,17;33:24;
35:15;49:2,4
**LEWIS (2)**
5:20;46:7
**lie (1)**
9:1
**light (1)**
48:10
**limit (2)**
35:6;39:23
**limited (6)**
8:5,19;9:14;18:20;
32:25;40:14

**limits (1)**
36:9
**lines (1)**
21:11
**Ling-Cohan (9)**
8:2;20:21;21:13;
27:7;34:9,22;36:14;
49:25;50:14
**listen (1)**
34:21
**litigating (1)**
24:23
**litigation (1)**
34:16
**little (2)**
28:24;29:1
**LLC (1)**
4:11
**LLP (6)**
4:2,10;5:10,20;
6:2,10
**long (1)**
10:10
**longer (1)**
21:3
**look (7)**
19:25;23:20;26:4;
37:18;41:13;48:14,
22
**looking (2)**
20:16;23:19
**losing (1)**
26:2
**losses (1)**
26:9
**lost (1)**
25:16
**lot (1)**
28:19
**LP (1)**
4:12

**M**

**main (1)**
27:19
**makes (2)**
25:5;49:15
**Management (2)**
4:11;21:25
**many (2)**
15:3;36:4
**MARC (1)**
4:16
**MARTINEZ (1)**
6:7
**MARY (1)**
4:17
**matter (2)**
25:11;35:6
**matters (2)**
36:13,18
**May (17)**

8:18;20:3,7,7,8,8;
28:11;29:9;31:17;
32:24;34:4,7;35:8;
39:19;43:2,24;50:5
**maybe (1)**
48:11
**MAYER (1)**
6:2
**mean (18)**
11:24;13:21,24;
14:19;19:25;20:2,
25;21:7;22:3,18;
27:14;28:16;30:10,
11;33:15;36:8;49:1,
4
**meaning (1)**
49:21
**means (1)**
10:4
**meant (1)**
27:15
**mediation (5)**
10:12,23;23:2,9;
28:21
**meet (1)**
46:16
**mentioned (1)**
42:1
**MICHAEL (3)**
5:17;6:7;14:8
**microphone (1)**
36:24
**mid-sentence (1)**
51:2
**might (3)**
14:17;18:9;32:12
**milestones (1)**
33:10
**million (3)**
11:13;26:3,6
**minimized (1)**
39:7
**minute (2)**
18:10;31:19
**misplaced (1)**
8:9
**modified (2)**
18:5;30:15
**moment (2)**
9:10;46:21
**Monarch (8)**
4:12;7:17;10:14;
21:24;29:24;44:13;
46:14;49:3
**Monarch's (2)**
9:20;48:1
**money (1)**
26:3
**monoline (1)**
28:22
**more (9)**
19:19;22:22;26:1;
29:6;31:4;34:15;

36:23;37:3;45:17
**MORGAN (2)**
5:20;46:7
**morning (9)**
7:5,16;14:8;21:21,
23;40:6;44:11;46:6;
48:11
**Morrison (3)**
7:6;48:9;50:10
**most (4)**
7:21;12:12;40:3;
45:21
**mother (2)**
43:25;44:6
**motion (14)**
7:9;8:19,24,25;
10:16,25;12:14;
13:11;16:22;18:15;
19:10;23:24,24;24:1
**motions (1)**
19:12
**move (2)**
16:1;42:14
**moved (1)**
32:22
**moving (2)**
19:20;28:4
**much (7)**
16:15;22:22;
35:16;42:9;45:18;
50:20;51:1
**multiple (2)**
40:17;41:10
**must (2)**
13:16;28:16
**myself (1)**
18:11

**N**

**NA (2)**
4:3;5:11
**nail (1)**
16:18
**narrow (3)**
42:17;43:8,21
**narrowed (1)**
44:24
**narrower (1)**
45:19
**narrowly (1)**
43:9
**National (1)**
46:8
**necessarily (2)**
19:11,23
**necessary (4)**
8:19;9:23;12:19;
48:12
**need (5)**
22:8;33:18;35:15,
19;46:15
**needs (2)**

34:17;40:12
**negotiate (1)**
9:16
**negotiated (2)**
10:10;42:7
**negotiating (3)**
7:25;20:6,10
**negotiations (2)**
12:19;46:18
**New (10)**
4:5,14;5:5,23;6:5,
13;8:2;43:24;44:6,7
**next (4)**
41:11,20;45:24;
47:5
**night (2)**
8:21;9:6
**none (1)**
46:23
**nonsettling (1)**
16:6
**note (1)**
18:10
**noted (1)**
7:22
**notice (4)**
17:16,18;19:1;
47:9
**number (4)**
7:3;15:7;28:18;
35:7
**numbers (1)**
16:1
**nursing (1)**
43:25
**NY (6)**
4:5,14;5:5,23;6:5,
13

**O**

**object (4)**
11:23;17:24;
24:17;39:12
**objectants (6)**
17:10,22;18:16,
21;19:4;21:9
**objecting (3)**
23:16,16;42:24
**objection (6)**
18:1;23:22;34:8;
50:1,11,16
**objections (4)**
34:21;49:4,5,24
**obligations (1)**
25:18
**obvious (1)**
35:15
**obviously (2)**
35:2;42:7
**occur (1)**
18:18
**occurring (1)**

41:23
**o'clock (2)**
43:19;48:25
**off (5)**
14:17;33:4;37:19;
46:21,22
**offense (1)**
22:1
**offer (1)**
26:10
**offered (1)**
9:9
**off-the-record (1)**
50:23
**once (4)**
35:1,5;40:9;50:8
**One (20)**
6:12;14:10;16:9,
12,24;17:14;20:16;
22:16;28:10;29:1;
31:19;34:6,15;36:21,
23;37:3;43:1;44:4;
46:2;47:24
**ones (1)**
45:5
**only (10)**
9:22;22:6;35:1,5;
37:16;38:14;40:8;
43:3;49:20;50:7
**opine (1)**
19:17
**opportunities (2)**
18:16;40:17
**opportunity (8)**
8:13;14:21;17:10,
17,21,25;24:17;
25:10
**oppose (1)**
22:17
**order (20)**
8:22;9:16;12:18;
20:17,23;21:10,11,
12,13;22:8,12;24:4;
30:15;37:22;38:20,
23;41:3,6;49:9,13
**original (1)**
16:3
**others (2)**
20:3;27:2
**ought (6)**
35:23;43:15,16;
45:14;48:21;50:7
**Ours (1)**
26:24
**out (19)**
14:16,23;15:12;
17:18;21:8;28:18;
30:15;41:3,6;43:16,
24;45:12,14;47:2;
48:14,16,17,21;
50:24
**outcome (1)**
33:6

**outset (1)**
14:12
**outside (1)**
48:14
**over (3)**
7:11;21:14;44:16
**overall (2)**
10:22;12:19
**overlap (1)**
50:6
**overreaching (1)**
41:8
**overruled (1)**
49:6
**OVERY (2)**
4:2;47:6
**own (1)**
22:13

**P**

**page (1)**
49:8
**Park (2)**
5:22;6:12
**part (7)**
10:11,22;11:15;
12:1,19;14:15;16:6
**participating (1)**
14:17
**participation (1)**
14:15
**particularly (2)**
19:23;21:6
**parties (11)**
9:25;10:12;18:24;
33:7;9;36:1,4,6;
39:24;42:19;44:15
**party (5)**
23:2;42:23;46:10,
13,17
**party-in-interest's (1)**
23:22
**Pause (3)**
31:22;46:4;48:23
**pay (2)**
11:11;42:10
**paying (1)**
11:24
**payment (9)**
8:5;11:9,9;12:5;
16:21;18:18;19:18;
41:16,19
**PDF (1)**
41:25
**Peachtree (1)**
5:12
**Peck (1)**
10:12
**per (1)**
14:14
**percent (1)**
26:1

**Perfect (1)**
47:20
**perhaps (2)**
11:1;39:7
**period (4)**
20:23;27:23,25;
28:1
**permit (5)**
35:18;36:9;42:25;
44:19,21
**person (1)**
43:23
**perspective (2)**
14:13;19:19
**phone (2)**
7:7;33:2
**piece (3)**
26:5;28:24;29:1
**place (1)**
28:16
**plan (19)**
7:9;8:7;10:11;
12:14,20;16:7,14;
23:24;33:8,13,19;
34:2;38:25,25;42:20,
21;49:17,19;50:3
**planning (1)**
32:5
**plans (1)**
36:7
**Plaza (1)**
6:12
**Please (3)**
7:2;31:20;36:24
**point (4)**
27:9;41:1;50:3,18
**points (1)**
37:12
**policies (1)**
26:25
**portion (2)**
30:23,23
**posed (1)**
17:4
**position (2)**
47:11,13
**possession (1)**
45:21
**possible (2)**
29:22;35:4
**power (1)**
32:12
**preclude (3)**
23:17,18;39:21
**precluded (8)**
23:21;27:17;
29:11,24;30:21;
31:23;32:8;37:12
**preclusion (1)**
14:20
**preclusive (10)**
12:25;13:5,7;18:7;
20:18,22,25;25:14;

37:21;49:16
**pre-judge (1)**
43:15
**prejudice (1)**
23:21
**preliminary (1)**
41:21
**prepare (1)**
17:25
**prepared (2)**
26:10;27:3
**presented (1)**
33:6
**preserve (2)**
28:14,15
**prevent (1)**
8:24
**previous (1)**
24:9
**principal (1)**
48:2
**prior (1)**
35:11
**problem (2)**
18:19;24:21
**procedures (5)**
34:10,20,23;
36:15;49:6
**proceed (4)**
9:15,17;18:13;
45:19
**proceeding (15)**
14:11,11;16:24;
17:1,6,7,20;33:15;
34:25;36:5,25;
38:10;39:20;49:21,
21
**proceedings (5)**
23:17;35:4;49:22,
25;51:3
**process (9)**
10:13;13:18,23;
14:15;16:18,19;
17:4;20:1;29:1
**produce (2)**
41:5;44:23
**produced (3)**
9:18;42:13;45:15
**professionals (1)**
9:25
**propose (1)**
30:19
**proposed (19)**
8:21;12:17;13:3,4;
18:6;19:24;21:7,7,
11,17;23:20,23;24:6;
29:16;30:6,15;
37:19;43:22;49:7
**proposing (1)**
37:6
**prosecute (1)**
23:22
**protect (3)**

8:14,23;22:12
**protective (2)**
　41:3,6
**prove (2)**
　12:14;27:3
**provide (1)**
　47:11
**proving (1)**
　21:2
**provisions (1)**
　32:17
**PSA (42)**
　8:19,22,24;12:24;
　13:6;16:22,22;
　18:15;19:3,10,12,21;
　20:4,10,19;21:2;
　22:6,10,22;24:6,10;
　29:4;30:19;32:16,
　19;33:2,5,6,9,12;
　34:13,14;41:20;42:2,
　3,15,20;49:6,9,10,15,
　18
**PSA' (1)**
　43:14
**purposes (8)**
　20:9;37:7;39:16,
　17,18;43:2,3;44:13
**pursue (1)**
　27:16
**put (7)**
　8:9;19:11;36:9;
　42:5;45:22;46:20,22

**R**

**raise (6)**
　8:13,14;33:21,25;
　37:8,9
**raised (2)**
　34:18;49:2
**raising (2)**
　8:11;22:19
**rather (2)**
　22:2;35:17
**reached (1)**
　41:1
**read (4)**
　7:12;13:3,4;32:16
**reading (1)**
　23:19
**real (3)**
　10:14,24;22:15
**reality (1)**
　45:4
**really (10)**
　9:1;11:25;13:16,
　19;23:8,15;25:4;
　33:25;41:20,22
**reason (1)**
　14:16
**reasonable (3)**
　27:23,25;28:1
**reasons (2)**

8:8;25:19
**receive (1)**
　18:25
**received (4)**
　7:10;18:25;26:1;
　47:9
**recognize (1)**
　33:20
**recognized (1)**
　32:24
**recommended (1)**
　17:8
**record (5)**
　33:3,4;38:9;49:11,
　13
**recover (1)**
　26:11
**references (1)**
　42:3
**regarding (2)**
　7:8;36:15
**regular (1)**
　35:6
**rehabilitation (18)**
　7:24;10:15;11:19,
　23;12:2,13;13:1,7,
　14;14:11;17:2;20:8,
　12;22:18;33:15;
　34:2,25;43:12
**rehabilitator (2)**
　17:15,17
**reiterated (1)**
　9:20
**rejected (1)**
　9:2
**related (2)**
　7:9;42:16
**relating (1)**
　43:22
**relationship (2)**
　46:10;47:25
**relevant (5)**
　19:10;21:4;35:9;
　42:6;44:22
**relitigate (1)**
　24:12
**remaining (1)**
　50:24
**remember (1)**
　32:20
**removed (5)**
　10:24;13:17,21,23,
　25
**repeat (1)**
　33:4
**repeats (1)**
　24:1
**represent (1)**
　14:9
**representing (2)**
　47:7;49:11
**request (3)**
　9:14;43:21;44:25

requested (5)
　13:5,6;33:21;
　40:20;44:1
**requests (1)**
　44:14
**require (3)**
　34:14;42:19;44:6
**required (1)**
　34:12
**requires (2)**
　33:16;34:16
**ResCap (2)**
　14:10;49:21
**reserve (1)**
　43:4
**Residential (1)**
　7:3
**resolve (3)**
　28:22;35:22;36:2;
　44:24;46:17
**resolved (2)**
　12:4;41:4
**respect (24)**
　8:17;11:5;12:8,14;
　13:12;16:21;20:4;
　23:23;30:24;32:17;
　33:1,18,21;34:13,24;
　35:12,16;37:11,24;
　43:11;45:15;47:12;
　49:1,17
**responded (1)**
　47:9
**response (1)**
　50:19
**retain (1)**
　25:21
**reviewing (1)**
　33:24
**revised (1)**
　21:16
**right (25)**
　7:2,3;11:16,18;
　12:10;14:4;15:10;
　16:2,16;22:17;25:1,
　16,20;27:21;28:2,5;
　43:5;45:7,24;46:19;
　47:1,17;50:17,20,22
**rights (11)**
　23:22;24:23;
　26:22;27:15,18;
　28:10,14,23;29:2,2;
　33:9
**RMBS (1)**
　6:11
**role (1)**
　16:14
**round (1)**
　43:3
**rules (1)**
　14:20
**ruling (5)**
　19:20;25:11;
　34:10;44:13;49:20

run (1)
　21:10
**running (1)**
　21:12
**rush (1)**
　40:7

**S**

**Same (9)**
　31:8;10,11,12,14;
　42:6;47:13,15;48:6
**saw (1)**
　32:17
**saying (5)**
　16:17;24:20;
　25:12;27:15;44:15
**scenario (1)**
　26:8
**schedule (8)**
　8:17;10:4,6;18:14;
　27:6;32:13;40:8;
　47:18
**scheduled (3)**
　18:1;28:6;42:12
**scope (3)**
　35:7;41:2;44:24
**se (1)**
　14:14
**search (1)**
　41:25
**searchable (1)**
　45:22
**searched (1)**
　41:25
**seated (1)**
　7:2
**second (1)**
　46:2
**securities (1)**
　34:15
**seek (1)**
　21:9
**seeking (1)**
　32:18
**seeks (1)**
　33:7
**seem (2)**
　33:23;43:7
**seemed (1)**
　12:1
**seems (3)**
　22:16;30:10;37:1
**sense (3)**
　38:23;43:2;47:8
**sent (2)**
　12:11;45:3
**set (3)**
　8:17;33:22;50:22
**settle (1)**
　30:22
**settled (2)**
　23:10;26:22

settlement (42)
　8:11,25;10:16,18,
　22;11:1,5,7,11,16,20,
　23;12:5,6,7;13:1;
　16:22,25;17:16,23,
　24;20:7,13;22:11,17;
　23:25;24:2;25:23;
　26:2,13,15,18,18,19;
　28:21;30:1,23;35:12,
　13;42:7;43:11;45:6
**settling (2)**
　16:3;26:20
**Seventh (1)**
　4:13
**several (4)**
　9:24;15:16,19;
　16:5
**SEWARD (3)**
　6:10;43:20;47:23
**shall (1)**
　23:21
**sheets (4)**
　32:16;33:8;42:8,
　16
**short (2)**
　31:13;45:16
**shortcut (1)**
　31:13
**shots (1)**
　41:10
**show (1)**
　7:15
**sic (2)**
　46:8,8
**side (3)**
　46:21,22;47:12
**sideline (1)**
　23:6
**SIDMAN (9)**
　5:7;44:11,11,20;
　45:1,3,8,11,13
**signed (1)**
　42:18
**significantly (1)**
　22:23
**similar (2)**
　47:7,23
**simply (4)**
　10:20;11:9;12:18;
　25:21
**single (2)**
　23:1;28:7
**sit (1)**
　32:13
**sitting (1)**
　23:6
**situation (1)**
　47:24
**slow (1)**
　25:15
**so- (1)**
　16:5
**solely (1)**

7:19
**somebody (1)**
    50:22
**Somehow (1)**
    16:11
**sometimes (1)**
    36:1
**somewhere (2)**
    14:23;24:13
**soon (1)**
    33:13
**sorry (1)**
    44:20
**sort (1)**
    47:25
**sought (2)**
    8:15;44:14
**SPEAKER (3)**
    16:12;48:16;50:21
**speaking (3)**
    30:7;35:8;37:1
**special (1)**
    47:25
**specific (5)**
    13:12;40:22;42:8,
    9,9
**specifically (1)**
    14:1
**specifics (1)**
    18:13
**stage (2)**
    22:16;27:6
**staged (1)**
    20:1
**stages (1)**
    16:20
**standard (2)**
    20:14,15
**standing (3)**
    14:22;27:10;35:2
**standpoint (1)**
    26:10
**start (2)**
    32:15,16
**State (34)**
    8:2,5;11:4;12:25;
    14:1;17:7,11,20;
    18:2,8;20:14,20,22,
    23;21:1,9;24:25;
    25:7,9;27:5;33:16,
    16;34:5;35:2;36:5,7,
    10,18;37:1,16;38:13;
    39:19,22;49:23
**stated (2)**
    37:23;49:12
**statement (6)**
    23:23;33:12;
    37:17;38:8,24;39:15
**stating (1)**
    47:10
**status (6)**
    32:18,19;33:14;
    34:12;35:12;49:1

**steamrolling (1)**
    29:2
**step (2)**
    10:24;38:22
**still (4)**
    17:25;20:2;22:25;
    33:17
**Stonehill (5)**
    4:11;21:25;29:24;
    44:13;46:14
**Stonehill's (3)**
    7:17;10:14;49:3
**stop (2)**
    10:8;32:12
**Street (2)**
    5:4,12
**stuff (1)**
    42:13
**subject (2)**
    23:1;41:20
**subjects (1)**
    43:4
**submission (1)**
    22:13
**submit (1)**
    32:23
**submitted (1)**
    19:3
**subsequent (2)**
    23:17;35:24
**substance (6)**
    17:18;18:17;
    19:18;33:5;34:10;
    50:3
**substantially (1)**
    50:6
**substantive (1)**
    7:20
**suggested (2)**
    13:10;21:11
**suggesting (1)**
    28:14
**suggests (1)**
    37:6
**Suite (1)**
    5:13
**support (11)**
    7:9;8:7;10:11;
    12:14,14,20;19:3,12;
    32:23;33:7;42:20
**supporting (1)**
    49:19
**sure (9)**
    10:4;11:20;17:19;
    20:14;39:6;40:5;
    42:22;46:3;47:2
**surprise (1)**
    14:22

**T**

**tailored (1)**
    43:9

**talk (2)**
    9:5;34:23
**talked (4)**
    17:1;35:17;36:7;
    40:6
**talking (3)**
    23:12;28:5;32:4
**tele (1)**
    44:2
**telephone (3)**
    33:23;35:25;48:24
**ten (1)**
    29:3
**term (4)**
    32:16;33:8;42:8,
    16
**terms (7)**
    16:17;17:12;
    19:21;33:8;41:6;
    42:21;49:19
**testimony (1)**
    26:10
**Thanks (1)**
    16:15
**That'd (1)**
    47:16
**there'd (1)**
    34:19
**therefore (3)**
    7:13;8:1;21:3
**There'll (1)**
    33:13
**third (1)**
    44:15
**though (1)**
    14:13
**thought (5)**
    8:22;9:7;18:23;
    28:18;41:1
**threatening (1)**
    28:25
**three (3)**
    28:6,10;40:11
**threshold (1)**
    20:9
**threw (1)**
    14:16
**times (1)**
    40:11
**timetable (1)**
    35:20
**today (1)**
    41:1
**today's (1)**
    33:25
**together (1)**
    13:17
**told (2)**
    33:17;39:21
**tomorrow (1)**
    28:6
**total (3)**
    15:15,17,19

**totals (1)**
    16:8
**touches (1)**
    10:25
**transcript (4)**
    31:16;37:22;39:7;
    49:13
**trial (1)**
    34:3
**tried (3)**
    9:16;23:5,8
**truly (1)**
    19:10
**trust (8)**
    16:3,6;17:19;46:7,
    8,10;47:24;49:12
**Trustee (10)**
    4:3;6:11;9:8;
    12:20;23:11;32:11;
    45:5,8;46:9,9
**trustees (33)**
    9:3,22;10:1;12:6;
    13:15;14:1,10;
    17:14;19:19;20:4;
    21:6,15;22:6;24:7,
    10,14,24;25:13,22;
    30:13,22;31:24;
    32:18,23;33:21;
    40:16;43:5;46:13;
    47:11;48:2;49:12,14,
    18
**trustees' (5)**
    22:21;26:23,25;
    29:12,25
**trustee's (3)**
    14:6;12;19:2
**trusts (11)**
    15:3,16,19;16:6,
    13;19:15;28:19,21;
    30:7;46:24;47:9
**try (6)**
    8:6;10:3;35:19;
    37:3;43:15;46:17
**trying (5)**
    15:23;25:21;
    35:17;39:6;40:15
**Tuesday (1)**
    32:20
**turn (4)**
    13:15;14:1;34:2;
    41:19
**twice (2)**
    40:9;45:15
**two (8)**
    16:23;18:16;20:1;
    34:11;37:8;38:3;
    44:4;49:2

**U**

**ultimately (2)**
    26:11;50:5
**unable (1)**

23:9
**under (4)**
    16:7;26:7;34:14,
    16
**underlying (1)**
    12:6
**understood (3)**
    41:9,10;43:17
**unfair (1)**
    28:12
**UNIDENTIFIED (3)**
    16:12;48:16;50:21
**unique (1)**
    33:14
**unless (2)**
    25:14;43:1
**up (14)**
    7:7;9:2,9;10:11;
    15:21;20:3;32:22;
    36:24;40:1;43:6,18;
    44:10;47:5;50:22
**upcoming (1)**
    16:24
**upon (2)**
    7:25;17:15
**USA (2)**
    4:3;47:7
**used (3)**
    9:25;39:24;45:5

**V**

**various (2)**
    33:9,9
**vastly (1)**
    28:1
**vehicle (1)**
    12:15
**videoconference (2)**
    44:2,5
**view (4)**
    8:16;13:4;14:3;
    33:5
**violated (1)**
    25:18

**W**

**wait (4)**
    16:9;35:14,21;
    48:1
**walked (1)**
    13:16
**wants (5)**
    17:12;27:24;
    36:11,14;50:2
**war (2)**
    27:7;32:10
**way (1)**
    8:25
**Wednesday (1)**
    32:21
**week (7)**

18:18,20;32:20,
21;40:7;41:12,18
**weekend (2)**
21:18;44:17
**weeks (1)**
7:11
**week's (1)**
41:20
**WEITNAUER (7)**
5:16;15:9,25,25;
16:3,5,9
**welcome (1)**
14:14
**Wells (4)**
5:11;14:9;15:8;
47:25
**weren't (1)**
44:16
**West (1)**
5:12
**what's (5)**
13:3;15:15;16:8;
17:6;37:17
**Whereupon (1)**
51:3
**Whoever's (1)**
42:12
**whole (1)**
29:14
**who's (1)**
43:23
**whose (1)**
26:22
**willing (3)**
9:3,4;36:14
**WILLKIE (4)**
4:10;21:22;44:1;
49:5
**wish (5)**
39:25;41:15;
43:18;48:7;50:17
**withdraw (1)**
33:9
**within (1)**
18:20
**without (2)**
27:19;36:3
**witnesses (1)**
19:2
**words (2)**
31:6;38:11
**work (12)**
40:8;41:3,6;43:15,
16;45:12,14;47:2;
48:14,16,17,21
**worked (1)**
50:24
**works (1)**
43:24
**wrapped (8)**
15:3,5;30:8;46:9,
24;47:8,24;49:12
**wrong (2)**

18:15,17

## Y

**year (1)**
43:24
**Yesterday (2)**
9:19;19:1
**York (8)**
4:5,14;5:5,23;6:5,
13;8:2;44:7

## 1

**10 (1)**
43:19
**10:03 (1)**
51:3
**10004 (1)**
6:13
**10017 (1)**
5:5
**10019 (2)**
4:14;6:5
**10020 (1)**
4:5
**101 (1)**
5:22
**10178 (1)**
5:23
**11 (1)**
23:23
**1201 (1)**
5:12
**12-12020 (1)**
7:4
**1221 (1)**
4:4
**1675 (1)**
6:4
**16th (1)**
49:8

## 2

**222 (1)**
5:4
**252 (1)**
26:3
**253 (1)**
11:13
**26 (4)**
35:21;42:6,23;
43:7
**26th (11)**
8:12;18:7;19:14;
25:3;33:1;34:2;
35:11,14;42:14;
43:10;45:18
**29th (1)**
8:18

## 3

**30309 (1)**
5:14
**30b6 (3)**
9:24;19:4;28:8
**350 (1)**
26:6
**392 (1)**
16:1
**3rd (1)**
17:24

## 4

**4 (1)**
49:8
**41st (1)**
5:4
**4200 (1)**
5:13
**47 (1)**
28:17

## 5

**5 (1)**
48:25
**500 (3)**
15:12;16:11;28:18

## 6

**6 (1)**
18:3
**6th (2)**
8:2;18:8

## 7

**787 (1)**
4:13

## 9

**900 (2)**
16:13;28:18
**9019 (32)**
10:18;12:8;13:8,
10;16:25;20:20;
22:17;24:12,18,23;
25:16,19;29:12,24;
30:17;32:8;34:1,24;
35:9,17,23;38:24;
39:13;40:15,21;
41:22;42:7;43:6,11;
45:17,18;49:16
**9019s (1)**
33:19