| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Hearing Date: June 26, 2013<br>Hearing Time: 10:00 a.m. |

```
------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11
                                                        :
RESIDENTIAL CAPITAL, LLC,                               :    Case No. 12-12020 (MG)
                                                        :
                      Debtors.                          :    Jointly Administered
                                                        :
------------------------------------------------------- x
```

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF THE UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR AN
ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B)
AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER
A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE
CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS**

TO:   THE HONORABLE MARTIN GLENN,
      UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this limited objection and reservation of rights (the "Objection") to the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants (the "PSA Motion").  ECF Doc. No. 3814.  In support of the Objection, the United States Trustee respectfully states as follows:

### I.  PRELIMINARY STATEMENT

The United States Trustee files this limited objection to approval of the PSA Motion. The United States Trustee is concerned that absent clear language in the order approving the PSA Motion, the granting of the PSA Motion will result in the approval of third party releases and the treatment as administrative expenses of professional fees and expenses of non-retained professionals, including the RMBS Trustees.  With respect to the third party releases contained

in the Plan Support Agreement, the PSA Motion and its accompanying exhibits as well as the Kruger Declaration appear to provide that the third party releases will only be granted upon the effective date of a confirmed plan of reorganization.  If this is accurate, the United States Trustee requests that the proposed order approving the PSA Motion include a provision that not only makes this intention absolutely clear, but also contains an express provision explicitly stating that such broad relief is not being granted by the Court at this time and that all parties' rights to be heard regarding the legality of these third party releases are expressly reserved.

Similarly, it also appears that part of the settlement reached in connection with the PSA Motion pertains to agreements regarding classifications and/or payments of claims for such things as professional fees and expenses of non-retained professionals, including the RMBS Trustees.  The PSA Motion states that approval from the Court regarding these agreements will not be sought until confirmation and that all parties-in-interest will retain their rights to object to confirmation of the plan of reorganization with respect to these provisions of the agreements.  Because these classifications and payments are not permissible under the Bankruptcy Code, to the extent the Court is being asked to consider those provisions as part of the Plan Support Agreement, the United States Trustee objects to those provisions being approved as part of the PSA Motion.  Alternatively, if in fact the Debtors do not seek Court approval of the classification/payment of claims provisions as part of the PSA Motion, the United States Trustee requests that the proposed order approving the PSA Motion include a provision that clearly states that the Court is not ruling on or approving any such provisions.

## II.  STATEMENT OF FACTS

A.  **General Background**

1. On May 14, 2012, Residential Capital, LLC ("ResCap"), GMAC Mortgage LLC ("GMAC Mortgage"), and certain of their direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. The Debtors are wholly owned, indirect domestic subsidiaries of Ally Financial, Inc. ("AFI"). Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleading, ECF Doc. No. 6, ¶ 46.

3. On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases. ECF Doc. No. 102.

4. The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5. On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the Chapter 11 Examiner in these cases. ECF Doc. No. 674.

B.  **The PSA Motion**

6. On May 23, 2013, the Debtors filed the PSA Motion. ECF Doc. No. 3814. Attached in support of the PSA Motion were, among others, the following documents: (i) the proposed order (the "PSA Order"); (ii) the Declaration of Lewis Kruger (the "Kruger Declaration"); (iii) the Plan Support Agreement; (iv) the Term Sheet for a Proposed Joint Chapter 11 Plan (the "Term Sheet"); and (v) the Supplemental Term Sheet for Proposed Chapter 11 Plan (the "Supplemental Term Sheet"). See id.

7. The signatories of the above documents were the following parties (collectively, the "PSA Parties"): (i) the Debtors; (ii) AFI; (iii) the Creditors' Committee; and (iv) certain Consenting Claimants (as defined in the PSA Motion). Id.

8. The PSA Motion states, "Importantly, however, the Debtors do not seek approval of any of the settlements embodied in the Agreement. Approval of those settlements will await confirmation, and any and all parties-in-interest that oppose confirmation of the Plan will retain their rights to object to confirmation of the Plan at the appropriate time." PSA Motion at n.14.

9. The Kruger Declaration states, in pertinent part:

> Though parties-in-interest will have the opportunity to raise substantive objections to the Debtors' proposed plan and the Ally Contribution at confirmation, it is my belief that the amount of the Ally Contribution represents the best "deal" that the Debtors could obtain from Ally taking into account the hard-fought, good-faith negotiations wherein the Parties were all represented by experienced professionals and advisors.

Kruger Decl. ¶ 18.

### III. LIMITED OBJECTION AND RESERVATION OF RIGHTS

**A. The PSA Order Should Clarify That Approval of the PSA Motion Does Not Pre-Approve the Third Party Releases Contained in the Term Sheet**

The Plan Support Agreement provides the following provision with respect to the inclusion of third party releases, exculpations and injunctions against "Ally" (collectively referred to as the "Third Party Releases"):[1]

> **4.2 Release of Ally**
>
> The Debtors, the Creditors' Committee, and each of the Consenting Claimants hereby agree to support the inclusion in the Plan of the Third Party Release set forth in the Plan Term Sheet.

Plan Support Agreement § 4.2. With respect to third party releases, the Term Sheet provides:

---

[1] "Ally" is defined as "AFI and its direct and indirect subsidiaries excluding the Debtors." See Plan Support Agreement at p. 4.

4

> On and as of the Effective Date of the Plan, the holders of claims and equity interests, shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories or liability, or otherwise, arising from or related in any way to the Debtors, including those in any way related to residential mortgage backed securities issued and/or sold by the Debtors or their affiliates and/or the chapter 11 cases or the Plan.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the third party release, and further, shall constitute the Bankruptcy Court's finding that this third party release is: (1) in exchange for the good, valuable and substantial consideration provided by the Ally Released Parties; (2) in the best interests of the Debtors, the Estates, the liquidating trust and all holders and claims and equity interests; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for a hearing; (5) justified by truly unusual circumstances; (6) an essential component and critical to the success of the Plan; (7) resulted in distributions to the creditors that would otherwise have been unavailable; (8) the result of an identity of interest between the Debtors and the Ally Released Parties regarding the Plan; and (9) a bar to any party asserting a claim or cause of action released pursuant to this third party release against any of the Ally Released Parties.
>
> Notwithstanding anything to the contrary herein, the foregoing third party release shall not apply to any claims held by the FDIC, in its capacity as a receiver, and FHFA against Ally.

Term Sheet at p. 8.  The Term Sheet further states, "[f]or the avoidance of doubt, this provision is not intended to prejudice the rights of any party with respect to claims asserted against the Debtors' estates." Id. at n.9.

To the extent that the PSA Motion seeks approval of the Third Party Releases pursuant to the motion itself, the United States Trustee objects as the Debtors have failed to meet the well-recognized standards for such broad relief under Second Circuit case law.  See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141, 143 (2d Cir. 2005) ("A nondebtor release in a plan of reorganization should not be approved

5

absent the finding that truly unusual circumstances render the release terms important to success of the plan . . . .").

If the Debtors do not intend to seek approval of the Third Party Releases until such time as a plan of reorganization is heard by the Court, the United States Trustee requests that any order approving the PSA Motion contain language agreed upon by the United States Trustee that makes it clear that nothing contained in PSA Motion, the Term Sheet, or Supplemental Term Sheet constitutes Court approval of the Third Party Releases.

**B.    The Supplemental Term Sheet to the PSA Motion Contains Provisions That Violate Section 503(b) of the Bankruptcy Code**

The United States Trustee objects to any provision in the PSA Motion and its underlying documents that seek final approval of (i) the classification and/or payment of any claim as an administrative claim and (ii) classification and/or payment of any pre-petition claim against the Debtors or a creditor as an administrative expense (the "Classification/Payment Provisions"). These provisions are either not authorized under the Bankruptcy Code or may be authorized but not in the manner agreed to by the parties in the Plan Support Agreement.

The Classification/Payment Provisions to which the United States Trustee objects are contained in both the Term Sheet and the Supplemental Term Sheet for the Joint Plan.  For example, the Supplemental Term Sheet proposes that the "Resolution of the RMBS Trust Claims (both R+W Claims and RMBS Cure Claims[)]" will include the payment of "attorneys fees" and "the reasonable pre-and post-petition fees and expenses of the RMBS Trustees." See Supplemental Term Sheet at pp. 4–6, 10.

The Bankruptcy Code has specific provisions governing the classification and/or payment of claims, particularly those claims regarding the reimbursement of attorney fees and expenses. See, e.g., 11 U.S.C. 503(b).  The Classification/Payment Provisions of the Plan Support

6

Agreement and related agreements conflict with the statutory standards and procedures for payment of administrative expenses set forth by the Bankruptcy Code for at least two reasons. First, they authorize certain creditors to be paid administrative expenses without meeting their evidentiary burden for payment under Section 503(b)(3) and (5). Second, to the extent that the professional fees are for payment for the individual professional fees of Creditors' Committee members, such payments may violate Section 503(b)(3)(F) and (b)(4).

Additionally, while not entirely clear, to the extent that the PSA Motion seeks approval from the Court to treat a pre-petition claim of a creditor as an administrative claim, there is no authorization in the Bankruptcy Code for this relief. For these reasons, the United States Trustee objections to the approval of the Classification/Payment Provisions of the PSA Motion and its related documents.

The United States Trustee recognizes that the PSA Motion, the Kruger Declaration, and the PSA Order each contain express language that the PSA Motion is merely intended to bind the signatories to the agreement and does not seek approval at this juncture for the payment of professional fees and expenses of non-retained professionals as agreed to by the parties to the Plan Support Agreement. See PSA Motion at n.14; Kruger Decl. ¶ 18. If this is the intent of the movants, then the United States Trustee respectfully requests that (i) the Court require the Debtors to clearly articulate their intentions on the record at the hearing on the PSA Motion and (ii) should the Court approve the PSA Motion, the order should include a provision, agreed upon by the United States Trustee, explicitly providing that the Court is not ruling on or approving the Classification/Payment Provisions in the PSA Motion.

## IV.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) sustain the Objection, and (ii) grant such other relief as is just.

Dated: New York, New York
      June 19, 2013

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:   */s/ Brian S. Masumoto*
      Brian S. Masumoto
      Michael T. Driscoll
      Trial Attorneys
      33 Whitehall Street, 21st Floor
      New York, New York 10004
      Tel. No. (212) 510-0500
      Fax No. (212) 668-2255