ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
ANDREA M. WONG
Assistant Chief Counsel
VICENTE MATIAS MURRELL (MD Bar No. 9806240098)
Attorney
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Telephone: (202) 326-4020, ext. 3580
Fax: (202) 326-4112
e-mail: murrell.vicente@pbgc.gov and efile@pbgc.gov

Attorneys for Creditor
Pension Benefit Guaranty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
In re:                                              )    Case Nos. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.                    )    Chapter 11
                                                    )
                                                    )
                                                    )    (Jointly Administered)
                          Debtors.                  )
--------------------------------------------------------x

**LIMITED OBJECTION OF THE
PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' MOTION
FOR AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND
363(B) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM
UNDER A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL, INC.,
THE CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS**

The Pension Benefit Guaranty Corporation ("PBGC") hereby enters its limited objection

to the "Debtors' Motion For An Order Under Bankruptcy Code Sections 105(A) and 363(B)

Authorizing The Debtors To Enter Into And Perform Under A Plan Support Agreement With Ally Financial, Inc. (the "PSA").[1] Specifically, PBGC objects to the overly broad release language in the PSA that may arguably release Ally Financial, Inc. ("Ally") from its statutory obligations with respect to a pension plan covered by Title IV of the Employee Retirement Income Security Act ("ERISA").

## BACKGROUND

### A.    PBGC and the Employee Retirement Income Security Act

PBGC is a United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of ERISA, 29 U.S.C. §§ 1301-1461 (2006 and Supp. V 2011). When a pension plan covered by Title IV terminates without sufficient assets to pay promised benefits, PBGC typically becomes the statutory trustee of the plan and pays covered plan participants and their beneficiaries their pension benefits up to the limits established by Title IV. *See* 29 U.S.C. §§ 1321, 1322, and 1361.

Pursuant to ERISA and the Internal Revenue Code, a sponsor of a pension plan covered by Title IV and the sponsor's controlled group members must satisfy certain financial obligations to the plan.[2] The responsibilities of the plan sponsor and controlled group members to an on-going pension plan include the following: (1) paying the statutorily required minimum funding contributions to the pension plan, 26 U.S.C. § 412; 29 U.S.C.A. § 1082; and (2) paying flat-rate and variable-rate insurance premiums to PBGC, 29 U.S.C. §§ 1306, 1307.

---

[1] Terms not defined herein are defined in the PSA or the motion to approve the PSA.
[2] A group of trades or business under common control, referred to as a "controlled group," includes, for example, a parent and its 80% owned subsidiaries. Another example includes brother-sister groups of trades or business under common control. See 29 U.S.C. § 1301(14)(A), (B); 26 U.S.C. § 414(b), (c); 26 C.F.R. §§ 1.414(b)-1, 1.414(c)-1, 1.414(c)-2.

The liabilities of the plan sponsor and controlled group members with regard to the pension plan are joint and several. *See* 26 U.S.C. § 412(b)(2) (2009); 29 U.S.C. §§ 1082(b)(2), 1307(e)(2). Therefore, should the plan sponsor default on its obligations to a pension plan, the resulting liability for the plan rests with its controlled group members.

Upon termination of a pension plan, the contributing sponsor and controlled group members become jointly and severally liable to PBGC for the plan's unfunded benefit liabilities. 29 U.S.C. § 1362(a), (b). Upon termination, the plan sponsor and controlled group members remain jointly and severally liable to PBGC for any unpaid premiums — not just the flat-rate and variable-rate premiums, but also a termination premium at the rate of $1,250 per plan participant per year for three years. *See* 29 U.S.C. § 1306(a)(7). Finally, because PBGC typically becomes the statutory trustee of the terminated pension plan, it has authority to collect all amounts owed to the pension plan, including any unpaid minimum funding contributions for which the plan sponsor and controlled group members are jointly and severally liable. *See* 29 U.S.C. §§ 1082(c), 1342(d), 1362(a), (c); 26 U.S.C. § 412(c).

### B. The Pension Plan

GMAC Mortgage Group, LLC ("GMAC") sponsors the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "Pension Plan"). The Debtors and Ally are members of GMAC's controlled group, within the meaning of Title IV of ERISA. *See* 29 U.S.C. §1301(a)(13). The Pension Plan is a defined benefit plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321. The Debtors, Ally and any other members of GMAC's controlled group, have joint and several liability with respect to the Pension Plan for any unpaid minimum funding contributions owed to the Pension Plan and unpaid premiums owed to PBGC. *See* 26 U.S.C. § 412(b)(2); 29 U.S.C. §§ 1307(e)(2). In the event the Pension Plan were to terminate, the

Debtors, Ally and any other members of GMAC's controlled group would, in addition to unpaid contributions and premiums, become jointly and severally liable to the PBGC for the Pension Plan's unfunded benefit liability.  *See* 29 U.S.C. § 1362(a), (b).

### C. Debtor's Bankruptcy Proceedings

On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On the Petition Date, the Bankruptcy Court procedurally consolidated the Debtors' cases and ordered that they be jointly administered.

By stipulation approved by the Court on November 7, 2013 PBGC filed four (4) separate claims against each of the fifty-one (51) Debtors, representing the claims for which the Debtors are jointly and severally liable to the Pension Plan and PBGC under 26 U.S.C. § 412; 29 U.S.C. §§ 1082, 1306, 1307, 1362.

On May 23, 2013, the Debtors filed the PSA and moved the Court for its approval.

### Argument

While PBGC does not object to the PSA itself, it objects to the broad release given to Ally via the PSA's Third-Party Releases.  *See* PSA, p.8.  The Releases may be read so as to allow Ally to avoid its statutory obligations with respect to the Pension Plan.

PBGC believes this matter can be resolved by giving PBGC and the Pension Plan the same carveout from any releases that was given to the Federal Housing Finance Agency ("FHFA") and the Federal Deposit Insurance Corporation ("FDIC") in the PSA.  These agencies also have statutory rights against Ally as well as possible claims in the bankruptcy.  PBGC is working with Debtors' counsel and other parties to come to a resolution.  If PBGC is carved out

from the Third-Party Releases, PBGC will withdraw its limited objection.

## CONCLUSION

For the foregoing reasons, the PBGC objects to the Motion to approve the PSA and respectfully asks the Court to include PBGC and the Pension Plan in the carveout provided to the FHFA and FDIC in the PSA.

Dated: June 19, 2013
Washington, DC

/s/Vicente Matias Murrell
ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
ANDREA WONG
Assistant Chief Counsel
VICENTE MATIAS MURRELL
(MD Bar No. 9806240098)
Attorney
PENSION BENEFIT GUARANTY
 CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Tel: (202) 326-4020
Fax: (202) 326-4112