Keller Rohrback L.L.P.
Derek W. Loeser
Amy Williams Derry
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
Phone: (206) 623-1900
Facsimile: (206) 623-3384

Keller Rohrback, P.L.C.
Gary A. Gotto
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012-2643
Phone: (602) 248-0088
Facsimile: (602) 248-2822

*Attorneys for Federal Home Loan Bank of Chicago,*
*Federal Home Loan Bank of Boston,*
*and Federal Home Loan Bank of Indianapolis*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>Debtors. | CASE NO. 12-12020 (MG)<br><br>**Chapter 11**<br><br>**Jointly Administered** |

**OBJECTION TO DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY**
**CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE DEBTORS**
**TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT**
**WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE, AND**
**CERTAIN CONSENTING CLAIMANTS**

**Table of Contents**

I. INTRODUCTION ..................................................................................................... 3

II. ARGUMENT ............................................................................................................ 4

    A. The Record of Ally's Conduct. ..................................................................... 4

    B. Under Either a Business Judgment or Heightened Scrutiny Standard, the Adequacy of Consideration for the Proposed Nondebtor Releases is Questionable .................................................... 4

    C. Bankruptcy Court Jurisdiction to Enter the Nondebtor Releases ........................ 9

    D. Alternatively, Hearing on the Motion Should be Continued until Adjudication of the Motion to Unseal the Examiner's Report. ......................... 10

    E. FHLBs Reserve all Claims and Rights in the Plan Confirmation Process. ................................................................................................... 12

III. CONCLUSION ...................................................................................................... 12

**Table of Authorities**

**Cases**

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,
  280 F.3d 648 (6th Cir. 2002) .................................................................................... 10

*Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.*,
  (*In re Johns-Manville Corp.*), 60 B.R. 612 (Bankr. S.D.N.Y. 1986).................................... 5

*Gillman v. Cont'l Airlines (In re Cont'l Airlines)*,
  203 F.3d 203 (3d Cir. 2000) ..................................................................................... 10

*Gross v. Russo*,
  (*In re Russo*), 762 F.2d 239 (2d Cir. 1985) ................................................................. 6

*In Metromedia Fiber Network, Inc.*,
  416 F.3d 136 (2d Cir. 2005) ....................................................................................... 8

*In re Bidermann Indus. U.S.A., Inc.*,
  203 B.R. 547 (Bankr. S.D.N.Y. 1997) ........................................................................... 7

*In re Borders Grp., Inc.*,
  453 B.R. 477 (Bankr. S.D.N.Y. 2011) ....................................................................... 5, 7

*In re Dreier LLP*,
  429 B.R. 112 (Bankr. S.D.N.Y. 2010) ......................................................................... 10

*In re Global Ocean Carriers Ltd.*,
  251 B.R. 31 (Bankr. D. Del. 2000) ............................................................................... 7

*In re Indianapolis Downs, LLC*,
  486 B.R. 286 (Bankr. D.Del. 2013) .............................................................................. 5

*In re Innkeepers USA Trust*,
  442 B.R. 227 (Bankr. S.D.N.Y. 2010) ........................................................................... 5

*In re Innkeepers USA Trust*,
  448 B.R. 131 (Bankr. S.D.N.Y. 2011) ........................................................................... 5

*In re Johns-Manville Corp.*,
  517 F.3d 52 (2d Cir. 2008), rev'd on other grounds sub nom *Travelers
  Indemnity Co. v. Bailey*, 557 U.S. 137 (2009); on remand, *In re Johns-
  Manville Corp.*, 600 F.3d 135 (2d Cir. 2010) ............................................................9, 10

*In re Lifschultz Fast Freight*,
  132 F.3d 339 (7th Cir. 1997) ....................................................................................... 7

12-12020-mg    Doc 4034    Filed 06/19/13    Entered 06/19/13 17:32:18    Main Document
   Pg 4 of 15

*In re Metaldyne Corp.*,
   409 B.R. 661 (Bankr. S.D.N.Y. 2009) ............................................................................ 4

*In re New Hampshire Elec. Co-op., Inc.*,
   131 B.R. 249 (Bankr. D.N.H. 1991) .............................................................................. 6

*In re Wingspread Corp.*,
   92 B.R. 87 (Bankr. S.D.N.Y. 1988) ............................................................................... 7

*Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa (In re
   W. Real Estate Fund, Inc.)*,
   922 F.2d 592 (10th Cir. 1990) ....................................................................................... 9

*Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV
   Corp.*,
   (In re Chateaugay Corp.), 973 F.2d 141 (2d Cir. 1992) ............................................... 5

*Resorts Int'l, Inc. v. Lowenschuss*,
   (In re Lowenschuss), 67 F.3d 1394 n. 6 (9th Cir.1995) ................................................ 9

*SEC v. Drexel Burnham Lambert Group*,
   960 F.2d 285 (2d Cir. 1992) ...................................................................................... 8, 9

*Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*,
   298 F.3d 1137 (9th Cir. 2002) ....................................................................................... 9

*Trans World Airlines, Inc. v. Texaco, Inc.*,
   (In re Texaco, Inc.), 81 B.R. 813 (Bankr. S.D.N.Y. 1988) ........................................... 5

*Weinberger v. UOP, Inc.*,
   457 A.2d 701 (Del. 1983) .............................................................................................. 6

**<u>Statutes</u>**

11 U.S.C. §105(a) ............................................................................................................ 10

11 U.S.C. §1106(b) ............................................................................................................ 9

11 U.S.C. §363 ............................................................................................................. 3, 4

The Federal Home Loan Banks of Boston, Chicago, and Indianapolis (collectively, "FHLBs") make this joint objection in response to the Debtors' Residential Capital, LLC and its affiliated debtors (jointly "Debtors") Motion for an Order under Bankruptcy Code §§105(A) and 363(B) authorizing Debtors to enter into and perform under a Plan Support Agreement ("PSA")

with Ally Financial, Inc. and certain Consenting Claimants (the "Motion").  Each of the FHLBs has significant pending claims against Ally Financial, Inc. relating to their roles in issuing, selling, and underwriting private label mortgage-backed securities ("PLMBS").

## I.   INTRODUCTION

1.   Each of the FHLBs object to approval of the PSA.  The PSA is objectionable because it provides for the parties to support a Chapter 11 plan in the Debtors' Chapter 11 cases (the "Plan") that will, among other things, settle and provide Ally Financial, Inc. and its subsidiaries (collectively, "Ally"), as a third parties, full releases for all:

(a)   existing and potential claims between Ally and the Debtors, including all representation and warranty claims that reside with the Debtors; and

(b)   pending and potential claims held by third parties related to the Debtors that could be brought against Ally, except for securities claims by the Federal Housing Finance Agency (the "FHFA"), as conservator for Freddie Mac and Fannie Mae, and the Federal Deposit Insurance Corporation, as receiver for certain failed banks (the "FDIC").

The adequacy of the consideration for such third party releases, and the Bankruptcy Court's jurisdiction to approve such nondebtor releases, is questionable.

2.   Furthermore, the PSA includes a number of events that could result in the PSA being terminated.  Although a termination-triggering event has reportedly not yet taken place, one possible event, that the Examiner's Report is disclosed to any party on or before the Bankruptcy Court enters an order to disclose the Examiner's Report is the subject of a motion now pending before this Court.  *See* Motion for an Order Unsealing the Report of the Examiner [Docket 3812].  Hearing on the Motion should, alternatively, be continued until adjudication of the motion to unseal.

3

## II.  ARGUMENT

**A.   The Record of Ally's Conduct.**

3.   The conduct of Ally is well-known in the public record. Ally is the subject of over thirty civil actions nationwide. In particular, the action against Ally by the Federal Housing Finance Agency ("FHFA"), as conservator of Freddie Mac and Fannie Mae, arising from its purchase of over $6 billion in PLMBS, has been heavily publicized.

4.   The concern over the questionable transfers between Ally and its affiliates gave rise to the examiner's appointment almost one year ago. State and federal governments have investigated Ally's activities in related to PLMBS, and while some actions against Ally have settled, others, such as Securities and Exchange Commission ("SEC") investigations, and the FHLBs' claims, are ongoing. These matters are outlined in the FHLBs' submission to the examiner. Earlier this year, these claims resulted in assessments of hundreds of millions of dollars in damages and penalties against Ally. Yet, in the face of all this, Debtors now file the Motion, a surprisingly skeletal 22-page pleading, on three weeks' notice, with a single declaration in support, to release Ally from all civil claims, other than claims from the FHFA and the FDIC, relating to its activities in the issuance, underwriting, and sale of mortgage-backed securities to investors.

**B.   Under Either a Business Judgment or Heightened Scrutiny Standard, the Adequacy of Consideration for the Proposed Nondebtor Releases is Questionable**

5.   Debtors advocate that it is enough that the PSA is a sound exercise of the Debtors' business judgment, so that the Bankruptcy Court should approve the Debtors' business judgment. The Motion at ¶¶ 19-21 cites to several cases for the general proposition that entry into the PSA is a sound exercise of the debtors' business judgment. These cases are either §363 sales or sale procedure cases (*In re Metaldyne Corp.*, 409 B.R. 661, 667 (Bankr. S.D.N.Y. 2009),

4

*Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 144-45 (2d Cir. 1992); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011), and/or management decision cases (*Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Two relate to vote solicitation procedure under §1125(b) (*Trans World Airlines, Inc. v. Texaco, Inc.* (*In re Texaco, Inc.*), 81 B.R. 813, 818 (Bankr. S.D.N.Y. 1988) and *In re Indianapolis Downs, LLC*, 486 B.R. 286, 295-97 (Bankr. D.Del. 2013)). Only General Maritime Corporation, and Chemtura Corporation (*see* Motion at 15), which are both unpublished orders approving the debtors' entry into a plan support agreement, have direct relevance here.

6. Remarkably, the Motion fails to cite *In re Innkeepers USA Trust*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010). There, the court considered the debtors' motion for assumption of a plan support agreement. Objecting parties argued that, among other things, the plan contemplated by the plan support agreement violated the debtors' fiduciary duties and was not a bona fide exercise of the debtors' business judgment.[1] The court considered whether that Innkeepers' decision to assume the plan support agreement should be evaluated under a standard of heightened scrutiny because it involved insider transactions, rather than business judgment. However, it was unnecessary for the court to decide the issue because the debtors' decision to assume the plan support agreement did not even meet the business judgment standard. Id. at 231.

7. Because Ally is on both sides of the PSA, the Debtors cannot rely on the business judgment rule. The broad nondebtor release also flies in the face of adhering to the fiduciary

---

[1] The Court's concerns were later addressed in *In re Innkeepers USA Trust*, 448 B.R. 131 (Bankr. S.D.N.Y. 2011). The *Innkeepers* case involved extensive discovery (and an evidentiary hearing) on the motion to assume the plan support agreement; here, there has been insufficient time to permit meaningful discovery.

5

duties that a board of directors owes to its stakeholders. The burden is on the Debtors to prove the entire fairness of the PSA. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) ("where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts") (citation omitted). *See, e.g., Gross v. Russo (In re Russo)*, 762 F.2d 239 (2d Cir. 1985), in which the Second Circuit held that while a former trustee was not per se banned from purchasing assets from the estate he had formerly administered, additional scrutiny was necessary to ensure the integrity of the sale. The Court considered whether the bidder had taken unfair advantage of confidential information possessed by virtue of his position as trustee. *Id.* at 243. Here, the Bankruptcy Court should be concerned about whether information contained in the Examiner's Report gave unfair advantage to the parties to the PSA.

8. As shown by the Innkeeper's Trust USA case, bankruptcy courts are highly concerned with ensuring that debtors properly discharge their fiduciary duties to their creditors at the PSA stage. In a motion to approve a transaction under §363, the "closer the transaction gets to the heart of the reorganization process, the more scrutiny the Court has to give that matter." *In re New Hampshire Elec. Co-op., Inc.*, 131 B.R. 249, 252 (Bankr. D.N.H. 1991) (citation omitted). Indeed, this issue is paramount here, where the PSA seeks to release Ally from its own liability, and Ally is also a major creditor as well as a provider of other services and accommodations. *See* Motion at ¶ 18.

9. Because Ally sits on both sides of the transaction, as a creditor and the major beneficiary of the PSA, the entire fairness doctrine is invoked. The Debtors cannot rely on the business judgment rule, and even the CRO's declaration in support cannot neutralize the bias in this situation. Accordingly, the Bankruptcy Court should apply the heightened scrutiny to the

6

Debtors' Motion. *See In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997) (applying "rigorous scrutiny" in the context of a loan from insiders to a corporation for purposes of equitable subordination); *In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547 (Bankr. S.D.N.Y. 1997) (applying heightened scrutiny to a proposed sale which would benefit insiders); *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 48 (Bankr. D. Del. 2000) (noting that "sales to insiders [are] subject to special scrutiny in bankruptcy cases"); *In re Wingspread Corp.*, 92 B.R. 87, 93 (Bankr. S.D.N.Y. 1988) (holding that "[s]ales to fiduciaries are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse" and issuing an injunction in order to provide the court with the opportunity to further consider the circumstances.)

10. Lengthy negotiations and the expense and risk of litigation of the estate are the usual experience in Chapter 11 cases. The basis of the argument is that, combined with the fact that litigation of the issues would likely be expensive and difficult, that the Bankruptcy Court should simply approve the PSA. However, it is impossible at this point to determine whether creditors not party to the negotiation, like the FHLBs, have had their interests appropriately considered such that Ally and the Debtors' should be released from those creditors' claims. This Court has already opined that "[e]fficiency and expediency…cannot be achieved at the expense of the required protections under the Bankruptcy Code." *Borders*, at 480.

11. Under any standard, the possibility of abuse with respect to the nondebtor releases must be given special consideration. The PSA lacks specificity as to how the Securities Claimholder class, including the FHLBs, specifically, as to how they have been classified for payment for those claims and what amounts will accrue to them. Although it describes a tiered distribution approach in a possible plan for securities claims, specific detail is absent. (*See* Motion, Exhibit B, "Treatment of Securities Claims", pp. 7-8). Even without requiring specific

7

terms, a basic understanding or range of figures should be provided. In the absence of this detail or an opportunity to negotiate meaningfully as securities claimholders, the FHLBs must object.

12. Another essential missing element is that the PSA does not outline the nature and scope of the Debtors' claims against Ally. The PSA is also silent on the key question of which consenting creditors, if any, also have claims against Ally. Moreover, the Motion does not chart the claimants' damages demands.

13. *In Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005), the Circuit Court held that "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan…." *Id.* at 143; *see also SEC v. Drexel Burnham Lambert Group*, 960 F.2d 285, 288 (2d Cir. 1992). The proposed releases cannot justify any "unique" or "truly unusual circumstances." At best, Debtors' simple logic is that releases are appropriate because Ally offers to pay "substantial consideration" for them. However, the claims for which Ally seeks full releases appear to substantially exceed the $2.1 billion contribution Ally would make under the PSA. Without information about the nature and scope of claims against Ally, however, the adequacy of Ally's contribution cannot be evaluated.

14. The Declaration of Lewis Kruger, who has served as Chief Restructuring Officer of the Debtors only since March 5, 2013, references the Original Ally Settlement (Docket 3814-3 at ¶7) but is devoid of details as to what factors justified the difference between the original settlement entered into at the outset of negotiations and the PSA. Although Ally's contribution amount is greater than what Ally originally offered to pay when ResCap filed bankruptcy, it cannot be determined whether Ally's contribution under the PSA is appropriate in exchange for third party releases.

15. There is a significant likelihood that the Debtors and Ally are acting in self-interest. This concern is heightened by the abrupt sealing of the Examiner's Report. (*See* Section D, infra.) Ally's control of the Debtors and the nondebtor release must be subject to heightened scrutiny. The Debtors were formerly a leading residential real estate finance company indirectly owned by Ally. In light of the "potential for abuse" presented by nondebtor releases, particularly of a solvent owner, and given large claims based on Ally's involvement in PLMBS, the Debtors must satisfy the "full disclosure" threshold required in bankruptcy cases. Ally's contribution amount, in exchange for the nondebtor releases, appears arbitrary even though it is an increase over the initial $975 million figure.

C.  **Bankruptcy Court Jurisdiction to Enter the Nondebtor Releases**

16. The FHLBs expressly reserve the right to assert that the Bankruptcy Court lacks jurisdiction to enter the nondebtor releases, and incorporates herein their arguments in the report submitted to the Examiner. The nondebtor releases embedded in a PSA raise not only practical, but also jurisdictional, concerns in this case. Nondebtor releases test the "outer reaches of a bankruptcy court's jurisdiction." *In re Johns-Manville Corp.* 517 F.3d 52, 55 (2d Cir. 2008), rev'd on other grounds sub nom *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009); on remand, In re Johns-Manville Corp., 600 F.3d 135 (2d Cir. 2010). Indeed, some circuits have held that third party releases are outright prohibited by the Bankruptcy Code. *See Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) ("[A] bankruptcy court cannot confirm a reorganization plan that discharges the liabilities of a third party"); *Resorts Int'l, Inc. v. Lowenschuss* (*In re Lowenschuss*), 67 F.3d 1394, 1401-02, 1402 n. 6 (9th Cir.1995); *Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa* (*In re W. Real Estate Fund, Inc.*), 922 F.2d 592, 600-02 (10th Cir. 1990) (per curiam). Other circuits, while allowing such releases, have emphasized that a third party release is proper only in rare cases. *See, e.g.*,

9

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 657-58 (6th Cir. 2002) ("[S]uch an injunction is a dramatic measure to be used cautiously[.]"); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 212-13 (3d Cir. 2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases").

17. Manville II, which is the law in the Second Circuit, concludes that "a bankruptcy court only has jurisdiction to enjoin nondebtor claims that directly affect the res of the bankruptcy estate." 517 F.3d at 66; *see also In re Dreier LLP*, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010). The Second Circuit directs that a factual similarity between the nondebtor actions at issue and the relevant debtor-creditor conflicts – at the most basic, relating to activities in connection with the issuance, sale, and underwriting of PLMBS– is insufficient to vest the bankruptcy court with jurisdiction to release Ally's liability pursuant to the Debtors' plan of reorganization. A complete discussion of jurisdiction is outside the scope of this objection; suffice to state that the res of the estate is neither implicated here, nor does Ally's proposed contribution under the PSA constitute property of the estate under §541. The court can easily conclude, at least, that there is a serious jurisdictional issue.

**D.    Alternatively, Hearing on the Motion Should be Continued until Adjudication of the Motion to Unseal the Examiner's Report.**

18. The Bankruptcy Court's appointment of an examiner [Docket No. 454], came as some relief to the FHLBs. In its Memorandum Decision dated June 20, 2012 ("Examiner Decision") [Docket No. 454], the Bankruptcy Court stated, inter alia, that until an independent evaluation has been completed of any potential claims that would be released under a proposed plan, the Court will not be able to determine if the Debtors will be permitted to solicit votes in support of a Chapter 11 plan. *Id*. at 16.

10

19. However, under the Motion, the PSA terminates if "[t]he Examiner's Report is disclosed to any party prior to the Court's entry of an order authorizing the Debtors' entry into and performance under the Plan Support Agreement." *Id*. at 17. The Examiner's Report is presumptively public. 11 U.S.C. §1106(b). *See also* U.S. Trustee's Response to the Hathaway's Motion to Unseal. [Docket No. 3976]

20. The FHLBs fully participated in the reporting process and submitted an extensive report to the Examiner. The FHLBs focused heavily on Paragraph 10(f)(viii) of the Examination Scope Order, which provided for the investigation of "all state and federal law claims or causes of action the Debtors propose to release or to be released as part of their plan including…(viii) claims held by third parties…against current and former directors and officers of the Debtors and against AFI and its insiders[.]" These are the <u>same</u> issues before this Court on this Motion – including, the FHLBs' damages and the adequacy of the consideration to be paid for the contemplated releases, and the related issues, including the liability of Ally, and its affiliates, direct liability, the law which applies to the FHLBs' "controlling person" claims, Ally's Control, and whether a Bankruptcy Court even has jurisdiction to enter the nondebtor releases.

21. The FHLBs are unfairly disadvantaged with respect to their access to full information and opportunity to fairly address all the issues raised by the present Motion. The Examiner's Report has been filed under seal pursuant to 11 U.S.C. §105(a), the Temporary Sealing Order [Docket No. 3697], and the Supplemental Sealing Order [Docket No. 3739]. The Consenting Creditors group on the other hand, is operating with a wealth of information, including access to the Examiner's Report, which has been sheltered from public view and scrutiny. *See* Motion at 18. Even if the Court unseals the Examiner's Report once the Court

11

determines whether to approve the Plan Support Agreement, the FHLBs are at a distinct disadvantage given their lack of prior access to the Examiner's Report. The subject of the possible release of claims was a predicate to the Court's order for an independent evaluation; now that that evaluation has been completed, it should be made public so that the FHLBs can be fully informed.

22.     The PSA shifted the plan negotiation process in favor of the Consenting Creditors. Even if sealing the Examiner's Report was originally justified, in light of this critical motion seeking approval of the PSA, the agreement among some of the constituent interests no longer warrants sealing under the Bankruptcy Code.

### E.     **FHLBs Reserve all Claims and Rights in the Plan Confirmation Process.**

23.     The FHLBs expressly do not waive any right in the plan confirmation process. The FHLBs asserted claims for rescission, for which Ally is jointly and severally liable. The FHLBs reserve all rights to assert all objections in the plan confirmation process, including, without limitation, objections to any release of any claim against Ally or any other nondebtor party, and objections to any proposed allocation of amounts payable to FHLBs and other claimants.

### III.   CONCLUSION

WHEREFORE, the FHLBs respectfully request, in light of this Objection, that this Court deny the Motion and grant such other and further relief as this Court deems just and proper. Alternatively, the FHLBs respectfully request that the Court continue the Motion until after the adjudication of the motion to unseal the Examiner's Report, and allow the FHLBs to file a supplemental objection after a full opportunity to consider the Examiner's Report.

DATED: June 19, 2013.

12

*Attorneys for Federal Home Loan Bank of Chicago, Federal Home Loan Bank of Boston, and Federal Home Loan Bank of Indianapolis*

KELLER ROHRBACK L.L.P.

By: */s/Amy Williams Derry*
    Derek W. Loeser
    Amy Williams Derry
    1201 Third Avenue, Suite 3200
    Seattle, Washington 98101
    Phone: (206) 623-1900
    Facsimile: (206) 623-3384

KELLER ROHRBACK P.L.C.
Gary A. Gotto
3101 N Central Avenue, Suite 1400
Phoenix, AZ 85012-2643
Tel: (602) 248-0088
ggotto@kellerrohrback.com