# Exhibit 13

**Prospectus Supplement dated April 25, 2007 (to prospectus dated April 23, 2007)**

# $1,231,394,000

# Home Equity Loan Trust 2007-HSA2
## Issuing Entity

# Residential Funding Mortgage Securities II, Inc.
## Depositor

# Residential Funding Company, LLC
## Master Servicer and Sponsor

### Home Equity Loan Pass-Through Certificates, Series 2007-HSA2

**Offered Certificates**

The trust will issue these classes of certificates, backed by a pool of closed-end, primarily second lien fixed rate home equity mortgage loans:

- the Class A-1V, Class A-1F, Class A-2, Class A-3, Class A-4, Class A-5 and Class A-6 Certificates, all as more fully described in the table on page S-7 of this prospectus supplement.

Distributions on the certificates will be on the 25th of each month or, if the 25th is not a business day, on the next business day, beginning May 25, 2007.

**Credit Enhancement**

Credit enhancement for the certificates consists of:

- excess interest and overcollateralization; and
- a financial guaranty insurance policy issued by MBIA Insurance Corporation for the Class A Certificates.



---

**You should consider carefully the risk factors beginning on page S-16 in this prospectus supplement.**

---

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the offered certificates or determined that this prospectus supplement or the prospectus is accurate or complete. Any representation to the contrary is a criminal offense.**

**The Attorney General of the State of New York has not passed on or endorsed the merits of this offering. Any representation to the contrary is unlawful.**

**The certificates represent interests only in the trust, as the issuing entity, and do not represent interests in or obligations of Residential Funding Mortgage Securities II, Inc. as the depositor, Residential Funding Company, LLC, as the sponsor, or any of their affiliates.**

Residential Funding Securities, LLC, Greenwich Capital Markets, Inc. and Citigroup Global Markets Inc., as underwriters, will purchase all classes of the certificates from the depositor in the amounts described in "Method of Distribution" on page S-81 of this prospectus supplement. The certificates are offered by the issuing entity through the underwriters to prospective purchasers from time to time in negotiated transactions at varying prices to be determined at the time of sale. The net proceeds to the depositor from the sale of these underwritten certificates will be approximately 100.39% of the certificate principal balance of these underwritten certificates plus accrued interest, before deducting expenses.

# GMAC RFC Securities　　　RBS Greenwich Capital
(Joint Lead Managers and Joint Book Runners)

# Citi
(Co-Manager)

## Important notice about information presented in this prospectus supplement and the accompanying prospectus

We provide information to you about the offered certificates in two separate documents that provide progressively more detail:

- the prospectus, which provides general information, some of which may not apply to your series of certificates; and

- this prospectus supplement, which describes the specific terms of your series of certificates.

The depositor's principal offices are located at 8400 Normandale Lake Boulevard, Suite 250, Minneapolis, Minnesota 55437 and its telephone number is (952) 857-7000.

### European Economic Area

In relation to each Member State of the European Economic Area which has implemented the Prospectus Directive (each, a Relevant Member State), each Underwriter has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the Relevant Implementation Date) it has not made and will not make an offer of certificates to the public in that Relevant Member State prior to the publication of a prospectus in relation to the certificates which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of certificates to the public in that Relevant Member State at any time:

(i)     to legal entities which are authorised or regulated to operate in the financial markets or, if not so authorised or regulated, whose corporate purpose is solely to invest in securities;

(ii)    to any legal entity which has two or more of (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000 and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(iii)   in any other circumstances which do not require the publication by the Issuer of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of certificates to the public" in relation to any certificates in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the certificates to be offered so as to enable an investor to decide to purchase or subscribe the certificates, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State and the expression Prospectus Directive means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

# Table of Contents

Page                                                        Page

Summary....................................................S-5
Risk Factors.............................................S-16
    Risks Associated with the Mortgage
    Loans...................................................S-16
    Limited Obligations..............................S-20
    Liquidity Risks ....................................S-20
    Special Yield and Prepayment
    Considerations.....................................S-21
    Bankruptcy Risks ................................S-24
Issuing Entity...........................................S-26
Sponsor and Master Servicer...................S-26
Affiliations Among Transaction Parties .............S-31
Description of the Mortgage Pool...............S-31
    General ...............................................S-31
    Payments on the Mortgage Loans ................S-33
    Balloon Loans......................................S-34
    Mortgage Pool Characteristics.............S-34
    Compliance with Local, State
    and Federal Laws.................................S-36
    Static Pool Information........................S-37
    Underwriting Standards........................S-37
    Billing and Payment Procedures............S-39
    Originators...........................................S-39
    Representations and Warranties .................S-39
    Additional Information.........................S-40
Description of the Certificates...................S-40
    General ...............................................S-40
    Glossary of Terms ...............................S-41
    Distributions on the Offered Certificates......S-46
    Interest Distributions..........................S-46
    Determination of LIBOR......................S-47
    Principal Distributions........................S-47
    Overcollateralization Provisions...............S-48
    Residual Interests ...............................S-49
    Allocation of Losses ...........................S-50
Description of the Policy ..........................S-50
The Credit Enhancer .................................S-53
    Regulation ...........................................S-53
    Financial Strength Ratings of MBIA ..........S-53
    MBIA Financial Information......................S-54
    Incorporation of Certain Documents by
    Reference ............................................S-55
Yield and Prepayment Considerations.................S-55
    General ...............................................S-55

Prepayment Considerations ...........................S-56
Allocation of Principal Payments................S-57
Realized Losses and Interest Shortfalls ........S-57
Pass-Through Rates .....................................S-58
Purchase Price ...........................................S-59
Class A-6 Certificates Yield Considerations S-59
Final Scheduled Distribution Dates..............S-59
Weighted Average Life ................................S-60
Pooling and Servicing Agreement ...............S-69
    General ...............................................S-69
    Custodial Arrangements ......................S-69
    Purchase of Mortgage Loans ...............S-69
    Representations and Warranties .................S-69
    The Master Servicer and Subservicers ........S-71
    Additional Subservicer ........................S-74
    Servicing and Other Compensation and
    Payment of Expenses...........................S-76
    Refinancing of Senior Lien ..................S-77
    Collection and Liquidation Practices; Loss
    Mitigation ...........................................S-77
    Reports to Certificateholders......................S-78
    Optional Repurchase of Defaulted Mortgage
    Loans ..................................................S-78
    Voting Rights ......................................S-78
    Termination .........................................S-78
    The Trustee..........................................S-79
Legal Proceedings.....................................S-81
Method of Distribution ..............................S-81
Use of Proceeds ........................................S-82
Material Federal Income Tax Consequences.......S-82
    Tax Return Disclosure and Investor List
    Requirements.......................................S-85
    Penalty Protection...............................S-85
ERISA Considerations...............................S-85
Legal Investment ......................................S-86
Experts           .............................................S-86
Legal Matters............................................S-86
Ratings.....................................................S-87
ANNEX I—Global Clearance, Settlement and
    Tax Documentation Procedures.........................I-1
ANNEX II—Mortgage Loan Statistical
    Information............................................II-1

# Summary

The following summary provides a brief description of material aspects of this offering and does not contain all of the information that you should consider in making your investment decision. To understand the terms of the certificates, you should read carefully this entire document and the prospectus.

Issuing Entity ............................................Home Equity Loan Trust 2007-HSA2.

Title of the offered certificates.................Home Equity Loan Pass-Through Certificates, Series 2007-HSA2.

Depositor..................................................Residential Funding Mortgage Securities II, Inc., an affiliate of Residential Funding Company, LLC.

Master Servicer and Sponsor ...................Residential Funding Company, LLC.

Subservicers.............................................Homecomings Financial, LLC a wholly-owned subsidiary of Residential Funding Company, LLC, will subservice approximately 85.5% of the mortgage loans and GMAC Mortgage, LLC, an affiliate of Residential Funding Company, LLC, will subservice approximately 14.5% of the mortgage loans.

Trustee.....................................................LaSalle Bank National Association.

Originators ...............................................Approximately 22.4% of the mortgage loans were originated by Homecomings Financial, LLC, which is a wholly-owned subsidiary of Residential Funding Company, LLC.

Credit Enhancer .......................................MBIA Insurance Corporation.

Mortgage pool..........................................Information with respect to 24,092 closed-end, fixed-rate home equity mortgage loans with an aggregate principal balance of approximately $1,300,997,943 as of the close of business on the day prior to the cut-off date, and which loans are secured primarily by second liens on one- to four-family residential properties, is presented in this prospectus supplement. The sum of the initial aggregate certificate principal balance of the offered certificates and the overcollateralization amount as of the closing date will equal, subject to rounding, the aggregate principal balance of the mortgage loans as of the cut-off date.

Cut-off date .............................................April 1, 2007.

Closing date .............................................On or about April 27, 2007.

Distribution dates......................................Beginning on May 25, 2007 and thereafter on the 25th of each month or, if the 25th is not a business day, on the next business day.

Form of offered certificates .....................Book-entry.

*See "Description of the Certificates—General" in this prospectus supplement.*

Minimum denominations..........................Class A Certificates: $25,000.

ERISA Considerations .............................Subject to the considerations described in this prospectus supplement, the Class A Certificates are expected to be considered eligible for purchase by persons investing assets of employee benefit plans or individual retirement accounts.

*See "ERISA Considerations" in this prospectus supplement and in the accompanying prospectus.*

Legal investment......................................The offered certificates will not be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984.

*See "Legal Investment" in this prospectus supplement and "Legal Investment Matters" in the prospectus.*

## The Trust

The depositor will establish a trust with respect to the Series 2007-HSA2 Certificates. On the closing date, the depositor will deposit the pool of mortgage loans described in this prospectus supplement into the trust. Each certificate will represent a partial ownership interest in the trust. In addition, a financial guaranty insurance policy will be issued by the credit enhancer for the benefit of the Class A Certificates. Distributions of interest and/or principal on the certificates will be made only from payments received in connection with the related mortgage loans and the financial guaranty insurance policy.

## The Mortgage Pool

Approximately 99.84% of the mortgage loans to be deposited in the trust are secured by second mortgages or deeds of trust. The remainder of the mortgage loans are secured by first mortgages or deeds of trust.

The mortgage loans have the following characteristics as of the cut-off date:

| | Range | Weighted Average |
|---|---|---|
| Principal balance* | $6 - $547,556 | $54,001 |
| Loan rate | 5.375% - 19.125% | 10.6970% |
| Original term to maturity (months) | 60 – 360 | 218 |
| Remaining term to stated maturity (months) | 57 – 360 | 215 |
| Combined loan-to-value ratio | 10.00% - 100.00% | 93.60% |

*Principal balance is an average.

The following tables describe certain characteristics of the mortgage loans included in the trust as of the cut-off date:

| Loan Purpose | Number of Mortgage Loans | Principal Balance | Percent of Mortgage Loans |
|---|---|---|---|
| Purchase Money | 13,685 | $729,699,570 | 56.09% |
| Cash Debt Consolidation | 5,856 | 324,112,320 | 24.91 |
| Rate/Term Refinance | 1,307 | 70,704,460 | 5.43 |
| Home Improvement | 3,153 | 171,595,843 | 13.19 |
| Medical | 89 | 4,800,220 | 0.37 |
| | 2 | 85,529 | 0.01 |
| Total | 24,092 | $1,300,997,943 | 100.00% |

| Loan Documentation | Number of Mortgage Loans | Principal Balance | Percent of Mortgage Loans |
|---|---|---|---|
| Full Documentation | 6,719 | $310,178,266 | 23.84% |
| Stated Income | 10,074 | 573,002,388 | 44.04 |
| Lite Doc | 696 | 27,377,966 | 2.10 |
| Pay Stub | 321 | 12,027,880 | 0.92 |
| No Ratio | 3,995 | 259,789,193 | 19.97 |
| Stated Income/Stated Asset | 455 | 24,329,085 | 1.87 |
| Fast Doc/Reduced Documentation | 150 | $9,470,458 | 0.73% |
| No Income/No Asset | 598 | 30,876,430 | 2.37 |
| No Documentation | 1,084 | 53,946,277 | 4.15 |
| Total | 24,092 | $1,300,997,943 | 100.00% |

The properties securing the mortgage loans include single-family detached properties, properties in planned unit developments, two-to-four family units, condominiums, townhouses and apartments.

The securities described on the table on page S-6 are the only securities backed by this mortgage pool that will be issued.

*For additional information regarding the mortgage pool, see "Description of the Mortgage Pool" in this prospectus supplement.*

## Servicing

Residential Funding Company, LLC will master service the mortgage loans, as more fully described under "Pooling and Servicing Agreement" herein.

The servicing fees for each mortgage loan are payable out of the interest payments on that mortgage loan prior to distributions to certificateholders. The servicing fees relating to each mortgage loan will be 0.50% per annum of the outstanding principal balance of that mortgage loan. The servicing fees consist of subservicing fees payable to the subservicer, which are payable with respect to each mortgage loan at a rate of 0.50% per annum, and other related compensation payable to the subservicer and such compensation paid to the master servicer as the direct servicer of a mortgage loan for which there is no subservicer. Servicing compensation for the master servicer will consist primarily of interest earnings on the money on deposit in the custodial account and the certificate account.

## Repurchases or Substitutions of Mortgage Loans

If Residential Funding Company, LLC cannot cure a breach of any representation or warranty made by it and assigned to the trustee for the benefit of the certificateholders and the credit enhancer relating to a mortgage loan within 90 days after notice from the trustee or servicer, and the breach materially and adversely affects the interests of the certificateholders or the credit enhancer in the mortgage loan, Residential Funding Company, LLC will be obligated to purchase the mortgage loan at a price equal to its principal balance as of the date of purchase plus accrued and unpaid interest to the first day of the month

following the month of repurchase, less the amount payable in respect of servicing compensation or reimbursement.

Likewise, as described under "Description of the Securities—Review of Trust Assets" in the prospectus, if Residential Funding Company, LLC cannot cure certain documentary defects with respect to a mortgage loan, Residential Funding Company, LLC will be required to repurchase the related mortgage loan. In addition, Residential Funding Company, LLC may substitute a new mortgage loan for the repurchased mortgage loan that was removed from the trust within two years after the closing date if it delivers an opinion of counsel with respect to certain tax matters. Any substitute mortgage loan will be required to satisfy certain conditions regarding its outstanding principal balance, mortgage rate, LTV ratio and remaining term to maturity, as described more fully under "Description of the Securities Limited Right of Substitution" in the prospectus. See also "Description of the Securities Repurchases of the Loans" in the prospectus.

## The Non-Offered Certificates

The trust will also issue the Class SB, Class R-I and Class R-II Certificates, which are not offered by this prospectus supplement.

## Distributions on the Offered Certificates

**Amount available for monthly distribution.** On each monthly distribution date, the trustee will make distributions to investors. The amounts available for distribution will include:

- collections of monthly payments on the mortgage loans, including prepayments and other unscheduled collections, *plus*

- any amounts received from the financial guaranty insurance policy, *minus*

- fees and expenses of the trust.

*See "Description of the Certificates—Glossary of Terms—Available Distribution Amount" in this prospectus supplement.*

**Priority of Distributions.** Distributions to the certificateholders will be made from available amounts as described in this prospectus supplement as follows:

### Priority of Distributions

| |
|---|
| Class A Certificates<br>*Interest* |
| Class A Certificates<br>*principal* |
| Class A Certificates<br>*principal*<br>(to cover certain losses) |
| Credit Enhancer<br>*premium* |
| Credit Enhancer<br>*amount of prior draws on policy* |
| Class A Certificates<br>*principal*<br>(to achieve required overcollateralization) |
| Credit Enhancer<br>*other reimbursement amounts* |
| Class A Certificates<br>*prepayment interest shortfalls* |
| Class A Certificates<br>*net WAC cap shortfalls* |
| Class A Certificates<br>*Relief Act shortfalls* |
| Class SB Certificates and Class R Certificates<br>*remaining amounts* |

**Interest Distributions.** The amount of interest accrued on each class of certificates on each distribution date will equal:

- the pass-through rate for that class of certificates *multiplied by*

- the certificate principal balance of that class of certificates as of the day immediately prior to the related distribution date *multiplied by*

- 1/12th or, with respect to the Class A-1V Certificates, the actual number of days in the related interest accrual period, divided by 360 *minus*

- the share of some types of interest shortfalls allocated to that class, such as prepayment interest shortfalls, to the extent not covered by excess cash flow and any interest shortfalls on the mortgage loans relating to the Servicemembers Civil Relief Act or similar legislation or regulations, not covered under the policy, as described more fully in the definition of "Accrued Certificate Interest" in "Description of the Certificates-Glossary of Terms" in this prospectus supplement.

The pass-through rate of the offered certificates may be subject to a weighted average net mortgage rate cap, which creates the possibility of net WAC cap shortfalls. The financial guaranty insurance policy does not cover net WAC cap shortfalls, prepayment interest shortfalls, or Relief Act shortfalls allocated to the offered certificates.

In addition, distributions of interest on the certificates will be made on each distribution date from draws on the financial guaranty insurance policy, if necessary. Draws will cover shortfalls in amounts available to pay interest on the certificates at the pass-through rates after reductions for

prepayment interest shortfalls and Relief Act shortfalls, which are not covered by the financial guaranty insurance policy.

*See "Description of the Certificates—Interest Distributions" in this prospectus supplement.*

**Allocations of principal.** Principal distributions on the certificates made from principal payments on the mortgage loans will be allocated among the various classes of offered certificates, as described in this prospectus supplement.

In addition, the offered certificates will receive a distribution of principal to the extent of excess interest available to cover losses and then to increase the amount of overcollateralization until the required amount of overcollateralization is reached. Also, distributions of principal on the Class A Certificates will be made from draws on the financial guaranty insurance policy to cover losses on the mortgage loans allocated to the offered certificates to the extent not covered by excess interest or overcollateralization.

Until the distribution date in May 2010, the Class A-6 Certificates are not expected to receive any principal payments on the mortgage loans and on or after the distribution date in May 2010 but before the distribution date in May 2013, the Class A-6 Certificates may receive less than a pro rata share of principal payments on the mortgage loans, unless the certificate principal balances of the other offered certificates have been reduced to zero. Not all outstanding offered certificates will receive principal on each distribution date.

*See "Description of the Certificates—Principal Distributions" in this prospectus supplement.*

**Credit Enhancement**

The credit enhancement for the benefit of the offered certificates consists of:

**Excess Interest.** Because the mortgagors are expected to pay more interest on the mortgage loans than is necessary to pay the interest on the certificates, along with fees and expenses of the trust each month, there may be excess interest. This excess interest may be used to protect the certificates against most types of losses by making an additional distribution of principal up to the amount of the losses.

**Overcollateralization.** Initially, the aggregate principal balance of the mortgage loans will exceed the aggregate certificate principal balance of the offered certificates by approximately 5.35%. Beginning on the seventh distribution date, excess interest that is not necessary to pay losses in the current period or to reimburse the credit enhancer for draws on the policy will be used to make additional principal distributions on the offered certificates, reducing their aggregate certificate balance faster than the aggregate principal balance of the mortgage loans, until the aggregate principal balance of the mortgage loans exceeds the aggregate certificate principal balance of the offered certificates by a specified amount, as described in this prospectus supplement. This excess will represent overcollateralization, which may absorb some losses on the mortgage loans, if not covered by excess interest. Until the level of overcollateralization reaches what is required, or thereafter if the level of overcollateralization falls below what is required, the excess interest described above will be paid to the offered certificates as additional principal in order to maintain the required level of overcollateralization.

**Policy.** On the closing date, MBIA Insurance Corporation will issue the financial guaranty insurance policy in favor of the trustee for the benefit of the holders of the Class A Certificates. The policy will unconditionally and irrevocably guarantee interest on the certificates at the related pass-through rates and will cover the principal portion of any losses allocated to the certificates after taking into account the application of excess interest and any reduction in the overcollateralization amount, and will guarantee the outstanding certificate principal balance of the related offered certificates on the distribution date in April 2037. However, the financial guaranty insurance policy will not provide coverage for some interest shortfalls, including prepayment interest shortfalls, net WAC cap shortfalls and Relief Act shortfalls.

## Optional Termination

On any distribution date on which the aggregate outstanding principal balance of the mortgage loans, after applying payments received in the related collection period, is less than 10% of their aggregate principal balance as of the cut-off date, the master servicer may, but will not be required to:

- purchase from the trust all of the remaining mortgage loans and cause an early retirement of the certificates; or

- purchase all of the certificates.

An optional purchase of the certificates will cause the outstanding principal balance of the certificates to be paid in full with accrued interest as described in this prospectus supplement. However, no purchase of the mortgage loans or the certificates will be permitted if it would result in a draw on the financial guaranty

insurance policy or will result in any amounts owing to the credit enhancer remaining unreimbursed, unless, in either case, the credit enhancer consents to the termination.

*See "Pooling and Servicing Agreement— Termination" in this prospectus supplement.*

## Ratings

When issued, the offered certificates will receive the ratings not lower than those listed on page S-6 of this prospectus supplement. A security rating is not a recommendation to buy, sell or hold a security and may be changed or withdrawn at any time by the assigning rating agency. The ratings also do not address the rate of principal prepayments on the mortgage loans or the likelihood of net WAC cap shortfalls. The rate of prepayments, if different than originally anticipated, could adversely affect the yield realized by holders of the offered certificates.

*See "Ratings" in this prospectus supplement.*

## Legal Investment

The offered certificates will not be "mortgage related securities" for purposes of the Secondary Mortgage Market Enhancement Act of 1984. You are encouraged to consult your legal advisors in determining whether and to what extent the offered certificates constitute legal investments for you.

*See "Legal Investment" in this prospectus supplement and "Legal Investment Matters" in the accompanying prospectus.*

**ERISA Considerations**

Subject to the considerations described in "ERISA Considerations" in this prospectus supplement, the offered certificates are expected to be eligible for purchase by persons investing assets of employee benefit plans, individual retirement accounts or other retirement accounts or arrangements.

*See "ERISA Considerations" in this prospectus supplement and in the accompanying prospectus.*

**Tax Status**

For federal income tax purposes, the depositor will elect to treat the trust as two REMICs.  The offered certificates will each represent ownership of a regular interest in a REMIC coupled with the right to receive payments in respect of net WAC cap shortfalls.  The offered certificates (exclusive of the net WAC cap shortfall component) generally will be treated as debt instruments for federal income tax purposes. You will be required to include in income all interest and original issue discount, if any, on your certificates in accordance with the accrual method of accounting regardless of your usual method of accounting.  For federal income tax purposes, the residual certificates will represent the sole residual interest in the related REMICs.

*See "Material Federal Income Tax Consequences" in this prospectus supplement and in the accompanying prospectus.*

# Risk Factors

The offered certificates are not suitable investments for all investors. In particular, you should not purchase the offered certificates unless you understand the prepayment, credit, liquidity and market risks associated with the offered certificates.

The offered certificates are complex securities. You should possess, either alone or together with an investment advisor, the expertise necessary to evaluate the information contained in this prospectus supplement and the accompanying prospectus in the context of your financial situation and tolerance for risk.

You should carefully consider the following risk factors in connection with the purchase of the offered certificates:

## Risks Associated with the Mortgage Loans

**The underwriting standards for the mortgage loans create greater risks to you, compared to those for first lien loans.**

The underwriting standards under which the mortgage loans were underwritten are analogous to credit lending, rather than mortgage lending, since underwriting decisions were based primarily on the borrower's credit history and capacity to repay rather than on the value of the collateral upon foreclosure. *See "Description of the Mortgage Pool—Underwriting Standards" in this prospectus supplement.* Because of the fact that the mortgage loans are secured by junior liens, losses on the mortgage loans will likely be higher than on first lien mortgage loans.

In addition, in determining loan-to-value ratios for certain mortgage loans, the value of the related mortgaged property may be based on an appraisal that is up to 24 months old if there is a supporting broker's price opinion, automated valuation, drive-by appraisal or other certification of value. If such an appraisal does not reflect current market values and such market values have declined, the likelihood that proceeds from a sale of the mortgaged property may be insufficient to repay the mortgage loan is increased.

**Underwriting standards may affect risk of loss on the mortgage loans.**

Some of the mortgage loans have been originated using underwriting standards that are less stringent than the underwriting standards applied by certain other second lien mortgage loan purchase programs. Applying less stringent underwriting standards creates additional risks that losses on the mortgage loans will be allocated to certificateholders. For example, the mortgage loan pool includes mortgage loans made to borrowers whose income is not required to be disclosed or verified.

*See "Description of the Mortgage Pool—Underwriting Standards" in this prospectus supplement.*

| | |
|---|---|
| The return on your certificates may be reduced by losses on the mortgage loans, which are more likely because they are primarily secured by second liens. | Approximately 99.84% of the mortgage loans are secured by second mortgages or deeds of trust, rather than first liens.  In the case of second liens, proceeds from liquidation of the mortgaged property will be available to satisfy the mortgage loans only if the claims of any senior mortgages have been satisfied in full.  When it is uneconomical to foreclose on a mortgaged property or engage in other loss mitigation procedures, the master servicer may write off the entire outstanding balance of the mortgage loan as a bad debt.  These risks are particularly applicable to mortgage loans secured by second liens that have high combined loan-to-value ratios or have small balances relative to the total indebtedness of the borrower because it is more likely that the master servicer would determine foreclosure to be uneconomical for these types of mortgage loans than for first lien mortgage loans with low loan-to-value ratios.  As of the cut-off date, the weighted average combined loan-to-value ratio of the mortgage loans is approximately 93.60%. |
| Some of the mortgage loans provide for large payments at maturity. | Approximately 65.6% of the mortgage loans are not fully amortizing over their terms to maturity and will require substantial principal payments, sometimes called a balloon amount, at their stated maturity.  Mortgage loans which require payment of a balloon amount involve a greater degree of risk because the ability of a mortgagor to pay a balloon amount typically will depend upon the mortgagor's ability either to timely refinance the loan or to sell the related mortgaged property.  *See "Description of the Mortgage Pool" in this prospectus supplement.* |
| Delays in distribution on your certificates may result because the master servicer is not required to advance. | The master servicer is not obligated to advance scheduled monthly payments of principal or interest on mortgage loans that are delinquent or in default.  As a result, certificateholders will not receive a regular stream of payments from mortgage loans that become delinquent or go into default.  Delinquencies and defaults on mortgage loans are generally expected to occur with greater frequency in their early years.  The rate of delinquency and default of second mortgage loans may be greater than that of mortgage loans secured by first liens on comparable properties. |

**The return on your certificates could be reduced by shortfalls due to the Servicemembers Civil Relief Act.**

The Servicemembers Civil Relief Act, or Relief Act, provides relief to borrowers who enter active military service and to borrowers in reserve status who are called to active duty after the origination of their mortgage loan. Current or future military operations of the United States may increase the number of borrowers who may be in active military service, including persons in reserve status who may be called to active duty. The Relief Act provides generally that a borrower who is covered by the Relief Act may not be charged interest on a mortgage loan in excess of 6% per annum during the period of the borrower's active duty. Any resulting interest shortfalls are not required to be paid by the borrower at any future time. The master servicer is not required to advance these shortfalls as delinquent payments, and the shortfalls are not covered by any form of credit enhancement on the certificates, including the financial guaranty insurance policy, except that on any distribution date, excess interest may be used, if available, to cover Relief Act shortfalls that occurred in the related collection period. Interest shortfalls on the mortgage loans due to the application of the Relief Act or similar legislation or regulations will be applied to reduce accrued interest on each class of the certificates on a pro rata basis.

The Relief Act also limits the ability of the servicer to foreclose on a mortgage loan during the borrower's period of active duty and, in some cases, during an additional three month period thereafter. As a result, there may be delays in payment and increased losses on the mortgage loans. Those delays and increased losses will be borne primarily by the class of certificates with the lowest payment priority.

We do not know how many mortgage loans have been or may be affected by the application of the Relief Act or similar legislation or regulations.

*See the definition of Accrued Certificate Interest under "Description of the Certificates—Glossary of Terms" in this prospectus supplement and "Certain Legal Aspects of Trust Assets and Related Matters—Servicemembers Civil Relief Act" in the prospectus.*

| | |
|---|---|
| **The return on the offered certificates may be particularly sensitive to changes in real estate markets in specific regions.** | One risk associated with investing in mortgage-backed securities is created by any concentration of the related properties in one or more specific geographic regions. Approximately 24.9% and 10.1% of the mortgage loans are located in California and Florida, respectively. If the regional economy or housing market weakens in California or Florida, or in any other region having a significant concentration of properties underlying the mortgage loans, the mortgage loans in that region may experience increased rates of delinquency, resulting in losses allocated on the certificates. A region's economic condition and housing market may be adversely affected by a variety of events, including natural disasters such as earthquakes, hurricanes, tornadoes, floods and eruptions, civil disturbances such as riots, by disruptions such as ongoing power outages or terrorist actions or acts of war. The economic impact of any of those events may also be felt in areas beyond the region immediately affected by the disaster or disturbance. The properties underlying the mortgage loans may be concentrated in these regions. This concentration may result in greater losses to certificateholders than those generally present for similar mortgage-backed securities without that concentration. |
| **Recent developments in the residential mortgage market may adversely affect the return on your certificates.** | Recently, the residential mortgage market in the United States has experienced a variety of difficulties and changed economic conditions that may adversely affect the yield on your certificates. Delinquencies and losses with respect to residential mortgage loans generally have increased in recent months, and may continue to increase. In addition, in recent months housing prices in many states have declined or stopped appreciating, after extended periods of significant appreciation. A continued decline or an extended flattening of those values may result in additional increases in delinquencies and losses on residential mortgage loans generally, particularly with respect to second homes and investor properties and with respect to any residential mortgage loans whose aggregate loan amounts (including any subordinate liens) are close to or greater than the related property values.

You should consider that the general market conditions discussed above may affect the performance of the mortgage loans and may adversely affect the return on your certificates. |
| **Debt incurred by the borrowers in addition to the mortgage loans could increase your risk.** | With respect to mortgage loans which were used for debt consolidation, there can be no assurance that the borrower will not incur further debt in addition to the mortgage loan. This additional debt could impair the ability of borrowers to service their debts, which in turn could result in higher rates of delinquency and loss on the mortgage loans. |

S-19

| | |
|---|---|
| A transfer of master servicing in the event of a master servicer default may increase the risk of payment application errors. | If the master servicer defaults in its obligations under the pooling and servicing agreement, the master servicing of the mortgage loans may be transferred to the trustee or an alternate master servicer, as described under "The Agreements – Events of Default; Rights Upon Event of Default" in the prospectus. In the event of such a transfer of master servicing there may be an increased risk of errors in applying payments from borrowers or in transmitting information and funds to the successor master servicer. |
| The ratings of the offered certificates are based primarily on the financial strength of the credit enhancer. | The ratings on the offered certificates depend primarily on an assessment by the rating agencies of various factors including the structural and legal aspects of the transaction and the financial strength of the credit enhancer. Any reduction of the rating assigned to the financial strength of the credit enhancer may cause a corresponding reduction in the rating assigned to the offered certificates. A reduction in the rating assigned to the offered certificates will reduce the market value of these certificates and may affect the ability of investors in these certificates to sell them. *See "Ratings" in this prospectus supplement.* |

## Limited Obligations

| | |
|---|---|
| Payments on the mortgage loans, together with the financial guaranty insurance policy, are the sole source of distributions on your certificates. | Credit enhancement includes excess interest, overcollateralization and the financial guaranty insurance policy, in each case as described in this prospectus supplement. None of the depositor, the master servicer or any of their affiliates will have any obligation to replace or supplement the credit enhancement, or to take any other action to maintain any rating of the offered certificates. If any losses are incurred on the mortgage loans that are not covered by credit enhancement, the holders of the offered certificates will bear the risk of these losses. |

## Liquidity Risks

| | |
|---|---|
| You may have to hold your certificates to maturity if their marketability is limited. | A secondary market for your offered certificates may not develop. Even if a secondary market does develop, it may not continue, or it may be illiquid. Illiquidity means you may not be able to find a buyer to buy your securities readily or at prices that will enable you to realize a desired yield. Illiquidity can have an adverse effect on the market value of the offered certificates. |
| | Any class of certificates may experience illiquidity, although generally illiquidity is more likely for classes that are especially sensitive to prepayment or that have been structured to meet the investment requirements of limited categories of investors. |

**Special Yield and Prepayment Considerations**

The yield to maturity on your certificates will vary depending on various factors.

The yield to maturity on your certificates will depend on a variety of factors, including:

- the rate and timing of principal payments on the mortgage loans, including prepayments, defaults and liquidations, and repurchases due to breaches of representations or warranties;

- the pass-through rate for your certificates;

- interest shortfalls due to mortgagor prepayments for the mortgage loans; and

- the purchase price you paid for your certificates.

The rates of prepayments and defaults are two of the most important and least predictable of these factors. No assurances are given that the mortgage loans will prepay at any particular rate.

In addition, the master servicer or servicer may purchase any mortgage loan that is at least three months delinquent. Such repurchases would increase the prepayment rates on the mortgage loans.

In general, if you purchase a certificate at a price higher than its outstanding principal balance and principal distributions occur faster than you assumed at the time of purchase, your yield will be lower than anticipated. Conversely, if you purchase a certificate at a price lower than its outstanding principal balance and principal distributions occur more slowly than you assumed at the time of purchase, your yield will be lower than anticipated.

The mortgage loans with interest only payments may affect the yield on the offered certificates.

As of the cut-off date, approximately 18.7% of the mortgage loans require the related borrowers to make monthly payments of accrued interest, but not principal, for up to the first 15 years following origination. Interest during that period is calculated at a fixed mortgage rate. After the interest only period, the related borrower's monthly payment will be recalculated to cover both interest and principal so that the mortgage loan will be paid in full by its final payment date. As a result, if the monthly payment increases, the related borrower may not be able to pay the increased amount and may default or may refinance the loan to avoid the higher payment.

In addition, because no scheduled principal payments are required to be made on these mortgage loans for a period of time, the offered certificates will receive smaller scheduled principal distributions during that period than they would have received if the related borrowers were required to make monthly payments of interest and principal from origination of these mortgage loans. Absent other considerations, this slower rate of principal distributions will result in longer weighted average lives of the offered certificates than would otherwise be the case if none of the mortgage loans had interest only periods.

**The rate of prepayments on the mortgage loans will vary depending on future market conditions, and other factors.**

Since mortgagors can generally prepay their mortgage loans at any time, the rate and timing of principal distributions on the offered certificates are highly uncertain. Generally, when market interest rates increase, mortgagors are less likely to prepay their mortgage loans. This could result in a slower return of principal to you at a time when you might have been able to reinvest those funds at a higher rate of interest than the pass-through rate of your certificates. On the other hand, when market interest rates decrease, borrowers are generally more likely to prepay their mortgage loans. This could result in a faster return of principal to you at a time when you might not be able to reinvest those funds at an interest rate as high as the pass-through rate.

Refinancing programs, which may involve soliciting all or some of the mortgagors to refinance their mortgage loans, may increase the rate of prepayments on the mortgage loans. These programs may be conducted by the master servicer or any of its affiliates, the subservicers or an unaffiliated third party.

Approximately 16.9% of the mortgage loans provide for payment of a prepayment charge during a specified period. Prepayment charges, if enforced, may reduce the rate of prepayment on the mortgage loans until the end of the related prepayment charge period.

*See "Description of the Mortgage Pool—Mortgage Loan Characteristics" and "Yield and Prepayment Considerations" in this prospectus supplement and in the prospectus.*

**The yield on your certificates will be affected by the specific terms that apply to that class discussed below.**

The offered certificates of each class have different yield considerations and different sensitivities to the rate and timing of principal distributions. The following is a general discussion of some yield considerations and prepayment sensitivities of each class.

*See "Yield and Prepayment Considerations" in this prospectus supplement.*

S-22

| Class A Certificates | The Class A Certificates are subject to various priorities for distribution of principal as described in this prospectus supplement. As more fully described below, principal payments received with respect to the mortgage loans will generally be distributed first to holders of the Class A-6 Certificates, in an amount equal to the Class A-6 lockout distribution amount for that distribution date, until the principal balance thereof has been reduced to zero, then to holders of the Class A-1V Certificates and Class A-1F Certificates, pro rata, until the principal balances thereof have been reduced to zero, then to holders of the Class A-2 Certificates, until the principal balance thereof has been reduced to zero, then to holders of the Class A-3 Certificates, until the principal balance thereof has been reduced to zero, then to holders of the Class A-4 Certificates, until the principal balance thereof has been reduced to zero, then to holders of the Class A-5 Certificates, until the principal balance thereof has been reduced to zero, and then to holders of the Class A-6 Certificates, until the principal balance thereof has been reduced to zero. Distributions of principal on the Class A Certificates having a earlier priority of payment will be affected by the rates of prepayment of the mortgage loans early in the life of the mortgage pool. Those classes of Class A Certificates with a later priority of payment will be affected by the rates of prepayment of the mortgage loans experienced both before and after the commencement of principal distributions on those classes since these classes will be outstanding for a longer period of time. |
|---|---|

*See "Description of the Certificates—Principal Distributions" in this prospectus supplement.*

| The pass-through rates on all classes of offered certificates may be subject to a cap. | The pass-through rates on the offered certificates are subject to a cap. The cap on the offered certificates will be calculated by reference to the weighted average net mortgage rate of the mortgage loans, adjusted to account for any premium paid under the financial guaranty insurance policy due to the credit enhancer. With respect to the Class A-1V Certificates, the cap will be further adjusted by multiplying that rate by a fraction, the numerator of which is 30 and the denominator of which is the actual number of days in the related interest accrual period. Therefore, the prepayment of the mortgage loans with higher mortgage rates may result in a lower pass-through rate on the Class A Certificates on any distribution date. Any net WAC cap shortfalls allocated to the offered certificates will not be covered by the financial guaranty insurance policy issued by the credit enhancer and will only be payable from excess interest on the mortgage loans to the extent available for that purpose in current and future periods. Net WAC cap shortfalls may remain unpaid on the final scheduled distribution date for the offered certificates. |
|---|---|

| | |
|---|---|
| Holders of the Class A-6 Certificates will receive delayed distributions of principal. | It is not expected that the Class A-6 Certificates will receive any distributions of principal until the distribution date in May 2010. Until the distribution date in May 2013, the Class A-6 Certificates may receive a portion of principal payments that is smaller than their pro rata share of principal distributions. On or after the distribution date in May 2014, the Class A-6 Certificates may receive a portion of principal payments that is larger than their pro rata share of principal payments. |
| The recording of mortgages in the name of MERS may affect the yield on the certificates. | The mortgages or assignments of mortgage for many of the mortgage loans have been or may be recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, solely as nominee for the originator and its successors and assigns. Subsequent assignments of those mortgages are registered electronically through the MERS® System. However, if MERS discontinues the MERS® System and it becomes necessary to record an assignment of the mortgage to the trustee, then any related expenses shall be paid by the trust and will reduce the amount available to pay principal of and interest on the certificates.

The recording of mortgages in the name of MERS is a relatively new practice in the mortgage lending industry. Public recording officers and others in the mortgage industry may have limited, if any, experience with lenders seeking to foreclose mortgages, assignments of which are registered with MERS. Accordingly, delays and additional costs in commencing, prosecuting and completing foreclosure proceedings and conducting foreclosure sales of the mortgaged properties could result. Those delays and additional costs could in turn delay the distribution of liquidation proceeds to certificateholders and increase the amount of losses on the mortgage loans.

*For additional information regarding MERS and the MERS® System, see "Description of the Mortgage Pool—Mortgage Pool Characteristics" and "Certain Yield and Prepayment Considerations" in this prospectus supplement and "Description of the Securities—Assignment of Trust Assets" in the prospectus.* |

## Bankruptcy Risks

| | |
|---|---|
| Bankruptcy proceedings could delay or reduce distributions on the offered certificates. | The transfer of the mortgage loans from Residential Funding Company, LLC, or Residential Funding, to the depositor is intended by the parties to be and has been documented as a sale. However, if Residential Funding were to become bankrupt, a trustee in bankruptcy could attempt to recharacterize the sale of the mortgage loans as a loan secured by the mortgage loans or to |

consolidate the mortgage loans with the assets of Residential Funding. Any such attempt could result in a delay in or reduction of collections on the mortgage loans available to make distributions on the offered certificates.

**The bankruptcy of a borrower may increase the risk of loss on a mortgage loan.**

If a borrower becomes subject to a bankruptcy proceeding, a bankruptcy court may require modifications of the terms of a mortgage loan without a permanent forgiveness of the principal amount of the mortgage loan. Modifications have included reducing the amount of each monthly payment, changing the rate of interest and altering the repayment schedule. In addition, a court having federal bankruptcy jurisdiction may permit a debtor to cure a monetary default relating to a mortgage loan on the debtor's residence by paying arrearages within a reasonable period and reinstating the original mortgage loan payment schedule, even though the lender accelerated the mortgage loan and final judgment of foreclosure had been entered in state court. In addition, under the federal bankruptcy law, all actions against a borrower and the borrower's property are automatically stayed upon the filing of a bankruptcy petition.

Residential Funding's overall procedures for originating and acquiring mortgage loans are described under "Description of the Mortgage Pool – Underwriting Standards" in this prospectus supplement.  Residential Funding's material role and responsibilities in this transaction, including as master servicer, are described in the base prospectus under "The Trust Asset Program – Qualification of Sellers" and "Description of the Securities – Repurchases of Loans" and "– Limited Right of Substitution" and in this prospectus supplement under "Description of the Pooling and Servicing Agreement – The Master Servicer and Subservicer."

Residential Funding's wholly-owned subsidiary, Homecomings Financial, LLC, or Homecomings, originated and sold to Residential Funding 22.4% of the mortgage loans included in the mortgage pool.  See "Affiliations Among Transaction Parties," "Description of the Mortgage Pool – Originators" and "Pooling and Servicing Agreement – The Master Servicer and Subservicer" in this prospectus supplement.

## Affiliations Among Transaction Parties

The diagram below illustrates the ownership structure among the affiliated transaction parties.



## Description of the Mortgage Pool

### General

Information with respect to 24,092 mortgage loans, with an aggregate unpaid principal balance of approximately $1,300,997,943 as of the cut-off date, is presented in this prospectus supplement.  The sum of the initial aggregate certificate principal balance of the offered certificates and the overcollateralization amount as of the closing date will equal, subject to rounding, the aggregate principal balance of the mortgage loans as of the cut-off date.

Approximately 99.84% of the cut-off date principal balance of the mortgage loans are secured by second liens on fee simple interests in one- to four-family residential properties and the remainder are secured by first liens.  The mortgage loans will consist of conventional, closed-end, fixed-rate, fully-

amortizing and balloon payment mortgage loans with terms to maturity of approximately five, ten, fifteen, twenty or twenty-five years from the date of origination. The proceeds of the mortgage loans generally were used by the related borrowers for:

- purchase of the related mortgaged property,

- debt consolidation,

- home improvement,

- the partial refinancing of the related mortgaged property,

- provision of a limited amount of cash to the borrower, or

- other purposes, including a combination of any of the above.

As to approximately 83.9% of the cut-off date principal balance of the mortgage loans, the mortgagor for each mortgage loan represented at the time of origination that the related mortgaged property would be owner-occupied as a primary home, and as to approximately 3.2% of the cut-off date principal balance of the mortgage loans, the mortgagor for each mortgage loan represented at the time of origination that the related mortgaged property would be owner-occupied as a second or vacation home. As to mortgage loans which have been modified, references in this prospectus supplement to the date of origination shall be deemed to be the date of the most recent modification.

The mortgage loans were acquired by Residential Funding, as seller, under its home equity program on a servicing released basis, from unaffiliated sellers as described in this prospectus supplement and in the prospectus, except in the case of 22.4% of the mortgage loans, which were purchased by the seller through its affiliate Homecomings. No unaffiliated seller sold more than 7.9% of the mortgage loans to Residential Funding. Approximately 85.5% of the mortgage loans are being subserviced by Homecomings and 14.5% of the mortgage loans are being subserviced by GMAC Mortgage, LLC, an affiliate of Residential Funding. See "Pooling and Servicing Agreement—The Master Servicer and Subservicer" in this prospectus supplement.

The mortgage loans were selected for inclusion in the mortgage pool from among mortgage loans purchased in connection with the Home Equity Program described below based on the sponsor's assessment of investor preferences and rating agency criteria. See "—Underwriting Standards" below.

The seller will make representations and warranties regarding the mortgage loans sold by it as of the date of issuance of the certificates. The seller will be required to repurchase or substitute for any mortgage loan sold by it as to which a breach of its representations and warranties relating to that mortgage loan occurs if the breach materially adversely affects the interests of the certificateholders or the credit enhancer in the mortgage loan. See "Description of the Securities—Representations Relating to Loans" and "Description of the Securities—Repurchases of Loans" in the prospectus.

As to any date, the pool balance will be equal to the aggregate of the principal balances of all mortgage loans owned by the trust as of that date. The principal balance of a mortgage loan, other than a liquidated mortgage loan, on any day is equal to its principal balance as of the cut-off date, minus all collections credited against the principal balance of the mortgage loan in accordance with the related mortgage note prior to that day. The principal balance of a liquidated mortgage loan after final recovery of substantially all of the related liquidation proceeds which the master servicer reasonably expects to receive will be zero.

Approximately 16.9% of the mortgage loans provide for payment of a prepayment charge, if these loans prepay within a specified time period. The prepayment charge, in most cases, is the maximum

amount permitted under applicable state law. However, some state laws restrict the imposition of prepayment charges even when the mortgage loans expressly provide for the collection of those charges. Although the Alternative Mortgage Transactions Parity Act permits the collection of prepayment charges in connection with some types of eligible mortgage loans, preempting any contrary state law prohibitions, some states may not recognize the preemptive authority of the Parity Act. As a result, it is possible that prepayment charges may not be collected even on mortgage loans that provide for the payment of these charges. Prepayment charges and late payment charges received on the mortgage loans will not be available for payment on the certificates.

The original mortgages for some of the mortgage loans have been, or in the future may be, at the sole discretion of the master servicer, recorded in the name of Mortgage Electronic Registration Systems, Inc., or MERS, solely as nominee for the originator and its successors and assigns, and subsequent assignments of those mortgages have been, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS® System. In some other cases, the original mortgage was recorded in the name of the originator of the mortgage loan, record ownership was later assigned to MERS, solely as nominee for the owner of the mortgage loan, and subsequent assignments of the mortgage were, or in the future may be, at the sole discretion of the master servicer, registered electronically through the MERS® System. For each of these mortgage loans, MERS serves as mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the trustee, and does not have any interest in the mortgage loan. As of the cut-off date approximately 94.7% of the mortgage loans were recorded in the name of MERS. For additional information regarding the recording of mortgages in the name of MERS see "Yield and Prepayment Considerations" in this prospectus supplement and "Description of the Securities—Assignment of the Trust Assets" in the prospectus.

## Payments on the Mortgage Loans

Approximately 96.8% of the mortgage loans are actuarial mortgage loans, on which 30 days of interest is owed each month irrespective of the day on which the payment is received.

Approximately 3.2% of the mortgage loans provide for simple interest payments and are referred to as the simple interest loans. These mortgage loans require that each monthly payment consist of an installment of interest which is calculated according to the simple interest method. This method calculates interest using the basis of the outstanding principal balance of the mortgage loan multiplied by the loan rate and further multiplied by a fraction, the numerator of which is the number of days in the period elapsed since the preceding payment of interest was made and the denominator of which is the number of days in the annual period for which interest accrues on the mortgage loan. As payments are received on the mortgage loans, the amount received is applied first to interest accrued to the date of payment and the balance is applied to reduce the unpaid principal balance.

Accordingly, if a mortgagor pays a fixed monthly installment before its scheduled due date, the portion of the payment allocable to interest for the period since the preceding payment was made will be less than it would have been had the payment been made as scheduled, and the portion of the payment applied to reduce the unpaid principal balance will be correspondingly greater. However, the next succeeding payment will result in a greater portion of the payment allocated to interest if that payment is made on its scheduled due date. Alternatively, if a mortgagor pays a fixed monthly installment after its scheduled due date, the portion of the payment allocable to interest for the period since the preceding payment was made will be greater than it would have been had the payment been made as scheduled, and the remaining portion, if any, of the payment applied to reduce the unpaid principal balance will be correspondingly less. If each scheduled payment is made on or prior to its scheduled due date, the principal balance of the mortgage loan will amortize in the manner described in the beginning of this paragraph. However, if the mortgagor consistently makes scheduled payments after the scheduled due date the mortgage loan will amortize more slowly than scheduled. Any remaining unpaid principal is payable on the final maturity date of the mortgage loan.

S-33

**Balloon Loans**

Approximately 65.6% of the mortgage loans are Balloon Loans, which require monthly payments of principal based primarily on a 30-year amortization schedule and have scheduled maturity dates of approximately fifteen years from the due date of the first monthly payment, in each case leaving a balloon payment due and payable on the respective scheduled maturity date. The existence of a balloon payment in most cases requires the related mortgagor to refinance the mortgage loan or sell the mortgaged property on or prior to the scheduled maturity date. The ability of a mortgagor to meet either of these requirements will be affected by several factors, including the level of available mortgage rates at the time of sale or refinancing, the mortgagor's equity in the related mortgaged property, the financial condition of the mortgagor, tax laws, prevailing general economic conditions and the terms of any related first lien mortgage loan. None of the depositor, the master servicer, any subservicer or the trustee is obligated to refinance any Balloon Loan. The policy issued by the credit enhancer will provide coverage on any losses incurred upon liquidation of a Balloon Loan arising out of or in connection with the failure of a mortgagor to make its Balloon Payment if that loss results in a loss that is allocated to the offered certificates. See *"Description of the Certificates—Description of the Policy"* in this prospectus supplement.

In addition, during a temporary period the monthly payments received on some of the mortgage loans were applied in a manner that reduced the rate of principal amortization. As a result, approximately 1.5% of the mortgage loans may have an unpaid principal balance on their scheduled maturity dates, assuming no prepayments, of greater than 1 time and not more than 31 times the related monthly payment. It is not clear whether the related mortgagor will be legally obligated to pay the unpaid principal balance. The payment of the amount at maturity for these mortgage loans may be subject to the same considerations as those for Balloon Loans as described in the preceding paragraph.

**Mortgage Pool Characteristics**

The mortgage loans will have the following characteristics as of the cut-off date, unless otherwise indicated below:

- The mortgage rates of the mortgage loans range from 5.375% per annum to 19.125% per annum, with a weighted average of approximately 10.6970% per annum as of the cut-off date.

- The mortgage loans had individual principal balances as of the cut-off date of at least $6 but not more than $547,556, with an average principal balance as of the cut-off date of approximately $54,001.

- The combined loan-to-value ratios, or combined LTV ratios, of the mortgage loans range from 10.00% to 100.00%, with a weighted average of 93.60%.

- None of the mortgage loans will have been originated prior to May 2002 or will have a maturity date later than March 2037.

- With respect to approximately 24.9% and 10.1% of the mortgage loans, the related mortgaged properties are located in California and Florida, respectively.

- No mortgage loans will have a remaining term to stated maturity as of the cut-off date of less than 57 months.

- The weighted average original term to maturity of the mortgage loans as of the cut-off date will be approximately 218 months.

- The weighted average remaining term to stated maturity of the mortgage loans as of the cut-off date will be approximately 215 months.

- 0.1% of the mortgage loans will be fully-amortizing mortgage loans that have original terms to maturity of approximately five years, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 58 months.

- 0.3% of the mortgage loans will be fully-amortizing mortgage loans that have original terms to maturity of approximately ten years, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 118 months.

- 5.0% of the mortgage loans will be fully-amortizing mortgage loans that have original terms to maturity of approximately fifteen years, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 178 months.

- 2.1% of the mortgage loans will be fully-amortizing mortgage loans that have original terms to maturity of approximately twenty years, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 237 months.

- 8.5% of the mortgage loans will be fully-amortizing mortgage loans that have original terms to maturity of approximately twenty-five years, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 353 months.

- 65.6% of the mortgage loans are Balloon Loans, which have original terms to maturity of approximately fifteen years based on a 30 year amortization schedule, with a weighted average remaining term to stated maturity as of the cut-off date of approximately 177 months.

- 18.7% of the mortgage loans will require the related mortgagors to pay interest only on those mortgage loans for a period of up to fifteen years.

- The mortgage loans generally contain due-on-sale clauses. See "Yield and Prepayment Considerations—General" in this prospectus supplement.

- The mortgage loans have principal and interest payable monthly on the due date specified in each mortgage note.

- 27.6% of the mortgage loans were originated under full documentation programs. The remainder of the mortgage loans were originated under alternative documentation programs.

- No mortgage loan provides for deferred interest, negative amortization or future advances.

- All of the mortgaged properties underlying the mortgage loans, except in the case of 4,556 mortgage loans representing approximately 12.9% of the aggregate principal balance of the mortgage loans, were owner-occupied as represented by the mortgagor.

- As of the cut-off date, no mortgage loan will be 30 days or more delinquent in payment of principal and interest.

- As of the cut-off date, 462 mortgage loans, representing approximately 1.6% of the mortgage loans have been 30 to 59 days delinquent in the payment of principal and interest during the twelve months preceding the cut-off date.

- As of the cut-off date, 40 mortgage loans, representing approximately 0.1% of the mortgage loans have been 60 to 89 days delinquent in the payment of principal and interest during the twelve months preceding the cut-off date.

- As of the cut-off date, none of the mortgage loans have been 90 or more days delinquent in the payment of principal and interest during the twelve months preceding the cut-off date.

For a description of the methodology used to categorize mortgage loans as delinquent, see "—Static Pool Information" below.

Set forth in Annex II is a description of additional characteristics of the mortgage loans as of the close of business on the business day prior to the cut-off date, except as otherwise indicated.

## Compliance with Local, State and Federal Laws

Residential Funding, as seller, will represent and warrant, as of the date of issuance of the certificates, the following:

•      None of the mortgage loans are subject to the Home Ownership and Equity Protection Act of 1994, referred to as the Homeownership Act.

•      Each mortgage loan at the time it was originated complied in all material respects with applicable local, state and federal laws, including, but not limited to, all applicable anti-predatory lending laws.

•      None of the mortgage loans are loans that, under applicable state or local law in effect at the time of origination of the loan, are referred to as (1) "high cost" or "covered" loans or (2) any other similar designation if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees.

•      None of the proceeds of the mortgage loans were used to finance the purchase of single premium credit insurance policies.

•      None of the mortgage loans contain prepayment penalties that extend beyond five years after the date of origination.

Residential Funding will be required to repurchase or substitute for any mortgage loan that violates any of these representations and warranties, if that violation materially and adversely affects the interests of the certificateholders or the credit enhancer in that mortgage loan.

Residential Funding is opposed to predatory lending practices as a matter of corporate policy. Residential Funding maintains policies and procedures that are designed to ensure that it does not purchase mortgage loans that are subject to the Homeownership Act. However, there can be no assurance that these policies and procedures will assure that each and every mortgage loan complies with all applicable origination laws in all material respects.

See "Certain Legal Aspects of the Trust Assets and Related Matters—Trust Assets Secured by Mortgages on Mortgaged Property" in the prospectus.

**Static Pool Information**

Current static pool data with respect to mortgage loans serviced by Residential Funding is available on the internet at www.gmacrfcstaticpool.com (the "Static Pool Data"). Information presented under "RFMSII" as the issuing entity/shelf, "HSA" as the series and "2007-HSA2" as the deal will include information regarding prior securitizations of mortgage loans that are similar to the mortgage loans included in this mortgage pool, based on underwriting criteria and credit quality, and that information is referred to in this prospectus supplement as Static Pool Data. The Static Pool Data is not deemed to be a part of the prospectus or the depositor's registration statement to the extent that the Static Pool Data relates to (a) any issuing entity that was established before January 1, 2006 and (b) information relating to the assets of the RFMSII 2007-HSA2 Trust for periods prior to January 1, 2006.

As used in the Static Pool Data and in this prospectus supplement, a loan is considered to be "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly scheduled due date; "60 to 89 days" or "60 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the second following monthly scheduled due date; and so on. The determination as to whether a loan falls into this category is made as of the close of business on the last business day of each month. Grace periods and partial payments do not affect these determinations.

From time to time, the master servicer or a subservicer will modify a mortgage loan, recasting monthly payments for delinquent borrowers who have experienced financial difficulties. Generally such borrowers make payments under the modified terms for a trial period, before the modifications become final. During any such trial period, delinquencies are reported based on the mortgage loan's original payment terms. The trial period is designed to evaluate both a borrower's desire to remain in the mortgaged property and, in some cases, a borrower's capacity to pay a higher monthly payment obligation. The trial period generally may extend to up to six months before a modification is finalized. Once the modifications become final delinquencies are reported based on the modified terms. Generally if a borrower fails to make payments during a trial period, the mortgage loan goes into foreclosure. Historically, the master servicer has not modified a material number of mortgage loans in any pool. Furthermore, the rating agencies rating the certificates impose certain limitations on the ability of the master servicer to modify loans.

Charge-offs are taken only when the master servicer has determined that it has received all payments or cash recoveries which the master servicer reasonably and in good faith expects to be finally recoverable with respect to any mortgage loan.

There can be no assurance that the delinquency and foreclosure experience set forth in the Static Pool Data will be representative of the results that may be experienced with respect to the mortgage loans included in the trust.

**Underwriting Standards**

The following is a brief description of the various underwriting standards and procedures applicable to the mortgage loans. For a more detailed description of the underwriting standards and procedures applicable to the mortgage loans, see "Trust Asset Program—Underwriting Standards" and "Trust Asset Program—Guide Standards" in the prospectus. Many of the mortgage loans have been underwritten by Residential Funding pursuant to an automated underwriting system. Any determination described below using an automated underwriting system will only be based on the information entered into the system and the information the system is programmed to review. See "Trust Asset Program— Underwriting Standards—Automated Underwriting" in the prospectus.

The seller's underwriting standards relating to the mortgage loans generally will conform to those published in the client guide, and the provisions of the guide applicable to the home equity program. The

underwriting standards in the guide are continuously revised based on prevailing conditions in the residential mortgage market and the market for mortgage securities.

Certain of the mortgage loans have been originated or purchased under "full documentation" programs, which include "fast doc/reduced," "lite doc" and "paystub." Under a "fast doc/reduced" program, the borrower is required to provide information regarding income for a 12-month period. Under a "lite doc" program, the originator only considers the borrower's base salary. Under a "paystub" program, a borrower is required to provide information regarding employment for a 2-year period and paystubs covering a one-month period and the originator undertakes a verification of the borrower's employment. Certain of the mortgage loans have been originated or purchased under "reduced documentation," "no stated income," "no income/no asset" or "no document/no income" programs, which require less documentation and verification than do traditional "full documentation" programs. Generally, under a "reduced documentation" program, no verification of a borrower's stated income is undertaken by the originator. Under a "no stated income" or a "no ratio" program, certain borrowers with acceptable payment histories will not be required to provide any information regarding income and no other investigation regarding the borrower's income will be undertaken. Under a "no income/no asset" program, no verification of a borrower's income or assets is undertaken by the originator. Employment stability is a critical component in evaluation of the borrower's continuing ability to meet obligations under these programs. Under a "no documentation/no income" program, the borrower is not required to disclose or verify income, income source or assets. If assets are stated, they must be sufficient to cover the down payment.

Residential Funding relies on a number of guidelines to assist underwriters in the credit review and decision process. The underwriting criteria provide for the evaluation of a loan applicant's creditworthiness through the use of a consumer credit report, verification of employment and a review of the debt-to-income ratio of the applicant. Income is verified through various means, including without limitation applicant interviews, written verifications with employers and review of pay stubs or tax returns. The borrower must demonstrate sufficient levels of disposable income to satisfy debt repayment requirements. For two- to four- family unit properties, rental income derived from the property may be considered.

Residual income is the amount of the mortgagor's gross monthly income remaining after deducting monthly mortgage payments on the mortgage loan and all other mortgage loans secured by a senior or junior lien on the mortgaged property, and monthly debt service on debts listed on a credit report or other documentation obtained in connection with the underwriting of the mortgage loans.

In determining the adequacy of the mortgaged property as collateral for a mortgage loan, an appraisal is made of each property considered for financing or, if permitted by the underwriting standards, the value of the related mortgaged property will be determined by the purchase price of the mortgaged property, a statistical valuation, or the stated value. In most cases, the underwriting standards of Residential Funding as to the mortgage loans originated or purchased by it place a greater emphasis on the creditworthiness and debt service capacity of the borrower than on the underlying collateral in evaluating the likelihood that a borrower will be able to repay the related mortgage loan. The mortgage loans included in the mortgage pool generally were originated subject to a maximum combined LTV ratio of 100% and a maximum total monthly debt to income ratio of 55%. For two- to four- family unit properties, the appraisal would have considered a market data analysis of recent sales of comparable properties and, when deemed applicable, an analysis based on income generated from the property or replacement costs analysis based on the current cost of constructing or purchasing a similar property. There can be no assurance that the combined LTV ratio or the debt to income ratio for any mortgage loans will not increase from the levels established at origination.

As to each mortgage loan, the combined LTV ratio, in most cases, will be the ratio, expressed as a percentage, of (1) the sum of (A) the original principal balance of the mortgage loan, and (B) any outstanding principal balance, at origination of the mortgage loan, of all other mortgage loans, if any,

secured by senior or subordinate liens on the related mortgaged property, to (2) the value of the mortgaged property as determined by an appraisal or, if permitted by the origination guidelines of Residential Funding, the purchase price of the property, a statistical valuation, or the stated value of the property. Regardless of the method of determination, the appraised value will generally be the value that was submitted in connection with the origination of the mortgage loan. This value may have been determined at a time prior to the origination of the mortgage loan. For example, if the mortgage loan was originated at the same time, or within 24 months of, another loan secured by the same mortgaged property then the appraisal obtained in connection with the origination of the prior loan or the sales price may be used. However, none of the mortgage loans will have a stated value which will be the value of the property as stated by the related mortgagor in his or her application. See "—Underwriting Standards" in this prospectus supplement.

The underwriting standards described in the client guide with respect to mortgage loans originated under the home equity program may be varied in appropriate cases. The applicable underwriting standards include a set of specific criteria by which the underwriting evaluation is made. However, the application of the underwriting standards does not imply that each specific criterion was satisfied individually. Rather, a mortgage loan will be considered to be originated in accordance with the underwriting standards described above if, based on an overall qualitative evaluation, the loan is in substantial compliance with the underwriting standards. For example, a mortgage loan may be considered to comply with the underwriting standards described above, even if one or more specific criteria included in the underwriting standards were not satisfied, if other factors positively compensated for the criteria that were not satisfied. There can be no assurance that every mortgage loan was originated in conformity with the applicable underwriting standards in all material respects, or that the quality or performance of the mortgage loans will be equivalent under all circumstances.

## Billing and Payment Procedures

All of the mortgage loans have payment dates that range throughout the month. Generally, there is a grace period of either 10 or 15 days after the due date when the borrower is allowed to make their payment without penalty. The subservicer sends monthly invoices to borrowers. Borrowers may elect for monthly payments to be deducted automatically from deposit accounts and may make payments by various means, including online transfers, phone payment and Western Union quick check, although an additional fee may be charged for these payment methods. Borrowers may also elect to pay one half of each monthly payment amount every other week, in order to accelerate the amortization of their loans. Further, borrowers are afforded the opportunity to use electronic methods to both access and manage their respective accounts, including use of the subservicer's internet website.

## Originators

Homecomings is a Delaware limited liability company and wholly-owned subsidiary of Residential Funding. Homecomings originated approximately 22.4% of the mortgage loans. See also the "The Pooling and Servicing Agreement – The Master Servicer and Subservicer — Homecomings Financial, LLC."

The mortgage loans were originated in accordance with Residential Funding's underwriting standards described above. See "Description of the Mortgage Pool—Underwriting Standards".

## Representations and Warranties

Each person that sold mortgage loans to Residential Funding made limited representations and warranties regarding the related mortgage loans as of the date they are purchased by Residential Funding. However, those representations and warranties will not be assigned to the trustee for the benefit of the certificateholders, so a breach of those representations and warranties will not be enforceable on behalf of the trust.

**Additional Information**

The description in this prospectus supplement of the mortgage pool and the mortgaged properties is based upon the mortgage pool as constituted at the close of business on the business day prior to the cut-off date.  Prior to the issuance of the offered certificates, Residential Funding may remove mortgage loans from the mortgage pool as a result of incomplete or defective documentation, or if it determines that the mortgage loan does not satisfy the characteristics described in this prospectus supplement. Residential Funding may also add a limited number of other mortgage loans to the mortgage pool prior to the issuance of the certificates offered by this prospectus supplement in substitution for removed loans. The information in this prospectus supplement will be substantially representative of the characteristics of the mortgage pool as it will be constituted at the time the certificates offered hereby are issued, although the aggregate principal balance and the range of mortgage rates and maturities and some other characteristics of the mortgage loans in the mortgage pool may vary.  In the event mortgage loans are removed from or added to the mortgage pool after the date hereof prior to the closing and any material pool characteristics of the actual mortgage pool differ by 5% or more from the description of the mortgage pool in this prospectus supplement, a current report on Form 8-K describing the final mortgage pool will be filed with the Securities and Exchange Commission within four business days of the related closing.

A current report on Form 8-K will be available to purchasers of the certificates offered hereby and will be filed by the issuing entity, in its own name, together with the pooling and servicing agreement, with the Securities and Exchange Commission within fifteen days after the initial issuance of the offered certificates.

# Description of the Certificates

**General**

The certificates will be issued pursuant to the pooling and servicing agreement.  The following summaries describe provisions of the pooling and servicing agreement.  The summaries do not purport to be complete and are subject to, and qualified in their entirety by reference to, the provisions of the pooling and servicing agreement.

The certificates will include the following ten classes:

- the Class A-1V, Class A-1F, Class A-2, Class A-3, Class A-4, Class A-5 and Class A-6 Certificates, referred to collectively in this prospectus supplement as the Class A Certificates or the offered certificates; and

- the Class SB, Class R-I and Class R-II Certificates, which are not offered by this prospectus supplement.

The certificates in the aggregate will evidence the entire beneficial ownership interest in the trust. The trust will consist of:

- the mortgage loans;

- cash deposited in respect of the mortgage loans in the Custodial Account and in the Certificate Account as belonging to the trust;

- property acquired by foreclosure of the mortgage loans or deed in lieu of foreclosure; and

- all proceeds of the foregoing.

## ANNEX II

## MORTGAGE LOAN STATISTICAL INFORMATION

### Credit Score as of the Date of Origination of the Mortgage Loans

| Credit Score Ranges | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|
| Less than 600 .......... | 28 | $1,167,168 | 0.09% | $41,685 | 87.31% | $4,545 | 19.04% |
| 600 to 619 ............... | 76 | 3,727,460 | 0.29 | 49,046 | 90.77 | 5,118 | 20.51 |
| 620 to 639 ............... | 1,699 | 82,408,508 | 6.33 | 48,504 | 89.66 | 7,139 | 19.24 |
| 640 to 659 ............... | 2,394 | 125,562,771 | 9.65 | 52,449 | 90.48 | 7,241 | 20.06 |
| 660 to 679 ............... | 4,319 | 241,354,537 | 18.55 | 55,882 | 93.91 | 8,525 | 19.81 |
| 680 to 699 ............... | 4,479 | 250,394,919 | 19.25 | 55,904 | 94.41 | 8,616 | 20.12 |
| 700 to 719 ............... | 3,154 | 173,879,500 | 13.37 | 55,130 | 94.38 | 9,128 | 19.67 |
| 720 to 739 ............... | 2,649 | 145,357,470 | 11.17 | 54,873 | 94.68 | 8,411 | 20.19 |
| 740 to 759 ............... | 2,181 | 116,485,908 | 8.95 | 53,409 | 94.54 | 8,747 | 19.57 |
| 760 to 779 ............... | 1,674 | 86,645,855 | 6.66 | 51,760 | 94.28 | 8,236 | 19.48 |
| 780 to 799 ............... | 1,059 | 54,864,793 | 4.22 | 51,808 | 93.72 | 8,568 | 19.84 |
| Greater than or equal to 800 ................... | 380 | 19,149,053 | 1.47 | 50,392 | 93.44 | 8,230 | 20.69 |
| Total.................... | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 93.60% | $8,352 | 19.85% |

As of the cut-off date, the weighted average credit score of the mortgage loans was approximately 701.

## Mortgage Rates of the Mortgage Loans

| Range of Mortgage Rates (%) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 5.001 to 5.500 | 2 | $100,030 | 0.01% | $50,015 | 771 | 80.00% | $16,727 | 18.75% |
| 5.501 to 6.000 | 9 | 854,137 | 0.07 | 94,904 | 746 | 82.04 | 17,196 | 14.13 |
| 6.001 to 6.500 | 15 | 796,591 | 0.06 | 53,106 | 741 | 86.48 | 7,369 | 19.58 |
| 6.501 to 7.000 | 70 | 4,804,225 | 0.37 | 68,632 | 745 | 82.57 | 10,825 | 28.38 |
| 7.001 to 7.500 | 217 | 11,059,552 | 0.85 | 50,966 | 745 | 86.97 | 7,245 | 18.82 |
| 7.501 to 8.000 | 836 | 41,828,724 | 3.22 | 50,034 | 737 | 87.11 | 8,315 | 20.80 |
| 8.001 to 8.500 | 1,668 | 84,458,566 | 6.49 | 50,635 | 732 | 91.53 | 7,152 | 20.27 |
| 8.501 to 9.000 | 1,998 | 106,656,846 | 8.20 | 53,382 | 715 | 89.42 | 7,900 | 21.32 |
| 9.001 to 9.500 | 1,776 | 99,103,297 | 7.62 | 55,801 | 711 | 90.89 | 7,816 | 20.52 |
| 9.501 to 10.000 | 3,158 | 155,624,336 | 11.96 | 49,279 | 705 | 92.91 | 8,058 | 19.54 |
| 10.001 to 10.500 | 2,243 | 126,561,670 | 9.73 | 56,425 | 704 | 93.21 | 8,237 | 18.94 |
| 10.501 to 11.000 | 2,344 | 139,299,876 | 10.71 | 59,428 | 697 | 94.39 | 8,970 | 19.13 |
| 11.001 to 11.500 | 1,862 | 112,334,766 | 8.63 | 60,330 | 693 | 95.80 | 8,514 | 19.62 |
| 11.501 to 12.000 | 2,074 | 117,497,430 | 9.03 | 56,653 | 693 | 95.84 | 8,250 | 19.84 |
| 12.001 to 12.500 | 1,911 | 107,666,264 | 8.28 | 56,340 | 688 | 96.73 | 8,744 | 19.43 |
| 12.501 to 13.000 | 1,631 | 85,036,092 | 6.54 | 52,137 | 681 | 96.38 | 8,540 | 19.89 |
| 13.001 to 13.500 | 888 | 43,102,710 | 3.31 | 48,539 | 678 | 95.95 | 8,844 | 20.09 |
| 13.501 to 14.000 | 750 | 32,068,943 | 2.46 | 42,759 | 674 | 96.10 | 9,731 | 19.88 |
| 14.001 to 14.500 | 393 | 19,875,545 | 1.53 | 50,574 | 672 | 96.51 | 9,742 | 20.36 |
| 14.501 to 15.000 | 153 | 7,352,232 | 0.57 | 48,054 | 681 | 96.35 | 14,067 | 19.66 |
| 15.001 to 15.500 | 22 | 872,518 | 0.07 | 39,660 | 685 | 95.59 | 34,753 | 18.70 |
| 15.501 to 16.000 | 30 | 1,362,546 | 0.10 | 45,418 | 693 | 95.44 | 60,367 | 18.24 |
| 16.001 to 16.500 | 12 | 630,218 | 0.05 | 52,518 | 700 | 96.07 | 14,772 | 19.19 |
| 16.501 to 17.000 | 14 | 1,153,416 | 0.09 | 82,387 | 708 | 96.49 | 10,153 | 19.56 |
| 17.001 to 17.500 | 4 | 249,780 | 0.02 | 62,445 | 699 | 99.18 | 8,312 | 21.00 |
| 17.501 to 18.000 | 5 | 204,406 | 0.02 | 40,881 | 676 | 94.72 | 6,382 | 18.30 |
| 18.001 to 18.500 | 4 | 192,085 | 0.01 | 48,021 | 690 | 98.97 | Not Available | 23.08 |
| 18.501 to 19.000 | 2 | 163,397 | 0.01 | 81,699 | 664 | 95.00 | Not Available | 15.79 |
| 19.001 to 19.500 | 1 | 87,745 | 0.01 | 87,745 | 664 | 95.00 | Not Available | 15.79 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

As of the cut-off date, the weighted average mortgage rate of the mortgage loans was approximately 10.6970% per annum.

## Principal Balances of the Mortgage Loans

| Range of Principal Balances | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|
| $0.01 to $25,000.00 ....................... | 4,572 | $84,052,830 | 6.46% | 704 | 91.37% | $5,429 | 14.62% |
| $25,000.01 to $50,000.00 ............... | 9,814 | 361,507,576 | 27.79 | 700 | 93.42 | 5,792 | 17.79 |
| $50,000.01 to $75,000.00 ............... | 4,949 | 303,596,793 | 23.34 | 700 | 94.29 | 6,781 | 19.51 |
| $75,000.01 to $100,000.00 ............. | 2,518 | 219,961,632 | 16.91 | 699 | 94.38 | 8,565 | 20.83 |
| $100,000.01 to $125,000.00 ........... | 990 | 111,019,929 | 8.53 | 704 | 95.71 | 9,672 | 21.66 |
| $125,000.01 to $150,000.00 ........... | 639 | 88,514,118 | 6.80 | 696 | 93.61 | 11,507 | 23.03 |
| $150,000.01 to $175,000.00 ........... | 183 | 29,719,938 | 2.28 | 716 | 94.02 | 15,309 | 22.98 |
| $175,000.01 to $200,000.00 ........... | 203 | 38,812,633 | 2.98 | 705 | 89.03 | 16,882 | 23.72 |
| $200,000.01 to $225,000.00 ........... | 36 | 7,688,400 | 0.59 | 714 | 92.79 | 17,845 | 24.21 |
| $225,000.01 to $250,000.00 ........... | 73 | 17,538,416 | 1.35 | 717 | 92.62 | 20,888 | 23.81 |
| $250,000.01 to $275,000.00 ........... | 23 | 6,064,333 | 0.47 | 715 | 91.28 | 19,294 | 24.89 |
| $275,000.01 to $300,000.00 ........... | 22 | 6,473,961 | 0.50 | 709 | 86.64 | 18,033 | 25.89 |
| Greater than $300,000.00 ............... | 70 | 26,047,382 | 2.00 | 710 | 89.36 | 24,743 | 27.21 |
| Total ............................................ | 24,092 | $1,300,997,943 | 100.00% | 701 | 93.60% | $8,352 | 19.85% |

As of the cut-off date, the average unpaid principal balance of the mortgage loans was approximately $54,001.

## Original Combined LTV Ratios of the Mortgage Loans

| Range of Combined LTV Ratios (%) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|
| 00.01 - 10.00 ............... | 1 | $29,983 | 0.01% | $29,983 | 667 | $2,231 | NA |
| 10.01 - 20.00 ............... | 3 | 126,643 | 0.01 | 42,214 | 666 | 4,466 | NA |
| 20.01 - 30.00 ............... | 18 | 952,304 | 0.07 | 52,906 | 706 | 20,268 | 36.09% |
| 30.01 - 40.00 ............... | 43 | 2,998,182 | 0.23 | 69,725 | 705 | 6,951 | 38.42 |
| 40.01 - 50.00 ............... | 77 | 4,402,248 | 0.34 | 57,172 | 695 | 8,158 | 34.70 |
| 50.01 - 60.00 ............... | 159 | 9,411,018 | 0.72 | 59,189 | 692 | 10,768 | 30.13 |
| 60.01 - 70.00 ............... | 338 | 21,944,261 | 1.69 | 64,924 | 685 | 11,426 | 26.67 |
| 70.01 - 75.00 ............... | 365 | 20,672,945 | 1.59 | 56,638 | 684 | 12,264 | 24.08 |
| 75.01 - 80.00 ............... | 947 | 56,461,556 | 4.34 | 59,621 | 690 | 10,233 | 22.27 |
| 80.01 - 85.00 ............... | 909 | 39,965,752 | 3.07 | 43,967 | 692 | 9,856 | 18.05 |
| 85.01 - 90.00 ............... | 6,175 | 285,995,640 | 21.98 | 46,315 | 695 | 10,075 | 16.17 |
| 90.01 - 95.00 ............... | 4,730 | 234,002,149 | 17.99 | 49,472 | 710 | 9,073 | 18.96 |
| 95.01 - 100.00 ............ | 10,327 | 624,035,262 | 47.97 | 60,428 | 704 | 6,640 | 21.06 |
| Total ....................... | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | $8,352 | 19.85% |

At origination, the weighted average original combined LTV ratio of the mortgage loans was approximately 93.60%.

## Junior Ratios of the Mortgage Loans

| Range of Junior Ratios (%) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income |
|---|---|---|---|---|---|---|---|
| 0.01 - 5.00 ........... | 188 | $2,893,355 | 0.22% | $15,390 | 695 | 79.75% | $9,514 |
| 5.01 - 10.00 ........... | 1,135 | 32,819,086 | 2.53 | 28,915 | 695 | 83.75 | 9,578 |
| 10.01 - 15.00 ........... | 4,947 | 192,135,623 | 14.79 | 38,839 | 696 | 88.41 | 9,438 |
| 15.01 - 20.00 ........... | 13,173 | 733,436,997 | 56.46 | 55,677 | 704 | 97.18 | 7,643 |
| 20.01 - 25.00 ........... | 2,625 | 175,267,163 | 13.49 | 66,768 | 702 | 93.29 | 9,950 |
| 25.01 - 30.00 ........... | 959 | 74,929,882 | 5.77 | 78,133 | 697 | 90.05 | 9,841 |
| 30.01 - 40.00 ........... | 701 | 56,682,291 | 4.36 | 80,859 | 692 | 87.07 | 6,290 |
| 40.01 - 50.00 ........... | 217 | 18,855,751 | 1.45 | 86,893 | 693 | 80.43 | 6,278 |
| 50.01 - 60.00 ........... | 70 | 7,475,422 | 0.58 | 106,792 | 701 | 75.30 | 9,645 |
| 60.01 - 70.00 ........... | 30 | 3,041,791 | 0.23 | 101,393 | 726 | 74.99 | 5,048 |
| 70.01 - 80.00 ........... | 8 | 981,808 | 0.08 | 122,726 | 771 | 74.76 | 8,007 |
| 80.01 - 90.00 ........... | 2 | 158,723 | 0.01 | 79,362 | 642 | 75.23 | 4,509 |
| 90.01 - 100.00 ........ | 2 | 269,834 | 0.02 | 134,917 | 680 | 52.66 | 3,367 |
| Total ................... | 24,057 | $1,298,947,725 | 100.00% | $53,995 | 701 | 93.68% | $8,358 |

- The preceding table excludes home equity loans secured by first liens on the related mortgaged property. With respect to each home equity loan secured by a second lien on the related mortgaged property, the junior ratio is defined as the ratio of the credit limits of the second lien home equity loans to the sum of (a) the credit limits of the second lien home equity loans, and (b) the unpaid principal balance of any senior lien at the time of origination of the second lien home equity loan.
- As of the cut-off date, the weighted average junior ratio of the home equity loans secured by a second lien was approximately 19.85%.

II-4

## Original Term of Scheduled Maturity of the Mortgage Loans

| Range of Original Months to Scheduled Maturity | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 1 – 96 ................... | 15 | $404,376 | 0.03% | $26,958 | 687 | 69.82% | $5,972 | 18.23% |
| 109 – 120 .............. | 89 | 3,750,466 | 0.29 | 42,140 | 720 | 78.79 | 6,451 | 26.56 |
| 169 – 180 .............. | 18,042 | 921,958,507 | 70.87 | 51,101 | 702 | 93.53 | 8,242 | 19.83 |
| 181 – 288 .............. | 796 | 48,051,692 | 3.69 | 60,366 | 692 | 91.81 | 6,115 | 23.36 |
| 289 – 300 .............. | 3,145 | 200,403,686 | 15.40 | 63,721 | 698 | 93.05 | 8,471 | 18.56 |
| Greater than or equal to 301 ............ | 2,005 | 126,429,216 | 9.72 | 63,057 | 704 | 96.19 | 10,582 | 20.56 |
| Total.................. | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

The weighted average original term to stated maturity of the mortgage loans as of the cut-off date was approximately 218 months.

## Remaining Term of Scheduled Maturity of the Mortgage Loans

| Range of Months Remaining to Scheduled Maturity | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 1 – 96 ................... | 15 | $404,376 | 0.03% | $26,958 | 687 | 69.82% | $5,972 | 18.23% |
| 109 – 120 .............. | 89 | 3,750,466 | 0.29 | 42,140 | 720 | 78.79 | 6,451 | 26.56 |
| 121 – 144 .............. | 4 | 90,192 | 0.01 | 22,548 | 641 | 90.46 | 6,539 | 19.95 |
| 145 – 156 .............. | 2 | 43,421 | 0.01 | 21,711 | 768 | 95.00 | 4,258 | 15.74 |
| 157 – 168 .............. | 222 | 11,379,384 | 0.87 | 51,258 | 719 | 93.68 | 8,368 | 21.48 |
| 169 – 180 .............. | 17,815 | 910,463,002 | 69.98 | 51,107 | 702 | 93.53 | 8,241 | 19.81 |
| 181 – 288 .............. | 797 | 48,275,269 | 3.71 | 60,571 | 692 | 91.76 | 6,109 | 23.39 |
| 289 – 300 .............. | 3,143 | 200,162,617 | 15.39 | 63,685 | 698 | 93.06 | 8,476 | 18.55 |
| Greater than or equal to 301 ....................... | 2,005 | 126,429,216 | 9.72 | 63,057 | 704 | 96.19 | 10,582 | 20.56 |
| Total ................... | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

The weighted average remaining term to stated maturity of the mortgage loans as of the cut-off date was approximately 215 months.

## Year of Origination of the Mortgage Loans

| Year of Origination | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 2002 .................. | 1 | $10,638 | 0.01% | $10,638 | 715 | 90.00% | $3,397 | 11.10% |
| 2003 .................. | 2 | 60,894 | 0.01 | 30,447 | 599 | 90.69 | 3,366 | 24.43 |
| 2004 .................. | 3 | 62,082 | 0.01 | 20,694 | 758 | 93.50 | 8,594 | 14.39 |
| 2005 .................. | 174 | 8,991,792 | 0.69 | 51,677 | 720 | 93.53 | 8,623 | 21.81 |
| 2006 .................. | 17,050 | 949,690,485 | 73.00 | 55,700 | 702 | 94.18 | 8,738 | 19.69 |
| 2007 .................. | 6,862 | 342,182,053 | 26.30 | 49,866 | 698 | 92.02 | 7,456 | 20.25 |
| Total.................. | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

**Geographic Distributions of the Mortgaged Properties of the Mortgage Loans**

| State | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| Alaska | 48 | $2,870,446 | 0.22% | $59,801 | 690 | 90.90% | $6,162 | 25.02% |
| Alabama | 224 | 9,401,872 | 0.72 | 41,973 | 702 | 92.12 | 9,578 | 22.52 |
| Arkansas | 50 | 1,648,870 | 0.13 | 32,977 | 687 | 92.31 | 4,327 | 24.69 |
| Arizona | 1,294 | 70,550,540 | 5.42 | 54,521 | 701 | 93.99 | 9,448 | 19.90 |
| California | 4,252 | 324,188,645 | 24.92 | 76,244 | 698 | 92.63 | 9,353 | 18.17 |
| Colorado | 805 | 39,003,996 | 3.00 | 48,452 | 708 | 94.11 | 7,024 | 21.05 |
| Connecticut | 221 | 11,621,736 | 0.89 | 52,587 | 700 | 92.51 | 5,943 | 20.77 |
| District of Columbia | 96 | 7,640,187 | 0.59 | 79,585 | 715 | 92.53 | 10,602 | 18.36 |
| Delaware | 63 | 3,188,603 | 0.25 | 50,613 | 690 | 90.89 | 7,021 | 21.43 |
| Florida | 2,556 | 131,464,427 | 10.10 | 51,434 | 698 | 92.73 | 9,170 | 20.31 |
| Georgia | 923 | 38,482,697 | 2.96 | 41,693 | 700 | 94.99 | 7,202 | 20.61 |
| Hawaii | 72 | 6,500,809 | 0.50 | 90,289 | 710 | 90.13 | 9,340 | 20.29 |
| Iowa | 107 | 3,380,927 | 0.26 | 31,597 | 712 | 95.14 | 4,462 | 20.77 |
| Idaho | 201 | 10,040,148 | 0.77 | 49,951 | 697 | 90.26 | 9,289 | 21.96 |
| Illinois | 834 | 42,417,182 | 3.26 | 50,860 | 700 | 94.68 | 7,422 | 20.26 |
| Indiana | 262 | 8,482,866 | 0.65 | 32,377 | 696 | 93.71 | 5,792 | 24.13 |
| Kansas | 79 | 2,830,157 | 0.22 | 35,825 | 687 | 94.73 | 6,807 | 21.39 |
| Kentucky | 108 | 3,508,460 | 0.27 | 32,486 | 708 | 96.09 | 5,555 | 21.20 |
| Louisiana | 123 | 4,196,643 | 0.32 | 34,119 | 705 | 91.93 | 5,600 | 23.63 |
| Massachusetts | 400 | 25,060,839 | 1.93 | 62,652 | 697 | 90.96 | 9,072 | 19.98 |
| Maryland | 663 | 46,414,609 | 3.57 | 70,007 | 695 | 93.38 | 9,354 | 20.00 |
| Maine | 49 | 2,120,615 | 0.16 | 43,278 | 708 | 95.69 | 7,574 | 20.81 |
| Michigan | 522 | 18,965,440 | 1.46 | 36,332 | 699 | 94.65 | 7,205 | 20.79 |
| Minnesota | 698 | 31,858,753 | 2.45 | 45,643 | 702 | 93.81 | 7,177 | 19.49 |
| Missouri | 381 | 12,868,121 | 0.99 | 33,775 | 710 | 94.56 | 6,592 | 20.30 |
| Mississippi | 40 | 1,302,556 | 0.10 | 32,564 | 692 | 91.28 | 11,028 | 21.39 |
| Montana | 42 | 1,997,377 | 0.15 | 47,557 | 694 | 90.05 | 4,233 | 24.10 |
| North Carolina | 395 | 15,985,650 | 1.23 | 40,470 | 701 | 94.60 | 9,582 | 20.58 |
| North Dakota | 21 | 746,803 | 0.06 | 35,562 | 700 | 91.49 | 5,432 | 26.24 |
| Nebraska | 44 | 1,680,000 | 0.13 | 38,182 | 710 | 95.06 | 4,734 | 23.81 |
| New Hampshire | 80 | 3,705,263 | 0.28 | 46,316 | 697 | 91.93 | 5,784 | 18.91 |
| New Jersey | 619 | 38,139,062 | 2.93 | 61,614 | 696 | 93.79 | 7,329 | 19.14 |
| New Mexico | 130 | 6,471,982 | 0.50 | 49,784 | 700 | 93.46 | 8,079 | 22.72 |
| Nevada | 827 | 51,048,749 | 3.92 | 61,728 | 705 | 95.58 | 9,256 | 19.63 |
| New York | 512 | 34,704,921 | 2.67 | 67,783 | 703 | 93.04 | 9,003 | 21.00 |
| Ohio | 278 | 10,078,373 | 0.77 | 36,253 | 699 | 96.30 | 8,017 | 21.84 |
| Oklahoma | 115 | 4,379,415 | 0.34 | 38,082 | 693 | 94.17 | 5,857 | 24.64 |
| Oregon | 387 | 20,713,865 | 1.59 | 53,524 | 705 | 92.25 | 6,682 | 22.70 |
| Pennsylvania | 386 | 15,164,412 | 1.17 | 39,286 | 694 | 93.03 | 6,122 | 23.15 |
| Rhode Island | 68 | 3,469,121 | 0.27 | 51,016 | 697 | 93.08 | 6,140 | 19.63 |
| South Carolina | 202 | 7,675,243 | 0.59 | 37,996 | 702 | 95.34 | 6,396 | 21.27 |
| South Dakota | 15 | 489,714 | 0.04 | 32,648 | 722 | 92.19 | 4,547 | 19.10 |
| Tennessee | 198 | 6,450,057 | 0.50 | 32,576 | 702 | 95.74 | 6,062 | 20.06 |
| Texas | 2,135 | 74,140,379 | 5.70 | 34,726 | 717 | 96.91 | 8,103 | 19.46 |
| Utah | 481 | 24,555,243 | 1.89 | 51,050 | 708 | 94.08 | 7,339 | 21.59 |
| Virginia | 913 | 63,743,390 | 4.90 | 69,818 | 704 | 94.81 | 8,730 | 19.21 |
| Vermont | 12 | 484,919 | 0.04 | 40,410 | 691 | 86.90 | 4,106 | 22.04 |
| Washington | 812 | 42,180,324 | 3.24 | 51,946 | 704 | 92.91 | 7,088 | 20.19 |
| Wisconsin | 280 | 10,001,582 | 0.77 | 35,720 | 695 | 93.94 | 5,006 | 22.58 |
| West Virginia | 27 | 1,246,226 | 0.10 | 46,157 | 685 | 95.57 | 6,242 | 19.31 |
| Wyoming | 42 | 1,735,725 | 0.13 | 41,327 | 700 | 96.32 | 4,740 | 22.05 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

### Property Types of the Mortgage Loans

| Property Type | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| Single Family Residence ...... | 13,701 | $727,596,373 | 55.93% | $53,105 | 697 | 92.59% | $7,842 | 20.34% |
| PUD Detached*.................... | 5,144 | 313,511,831 | 24.10 | 60,947 | 705 | 95.14 | 9,659 | 19.32 |
| Condominium..................... | 2,533 | 119,714,475 | 9.20 | 47,262 | 708 | 95.20 | 9,056 | 19.03 |
| Multifamily (2-4 Units)........ | 1,748 | 95,182,542 | 7.32 | 54,452 | 709 | 93.81 | 8,131 | 19.06 |
| PUD Attached*.................... | 750 | 36,261,048 | 2.79 | 48,348 | 703 | 95.24 | 7,060 | 19.33 |
| Townhouse/Rowhouse Attached .......................... | 205 | 8,302,951 | 0.64 | 40,502 | 698 | 92.26 | 6,449 | 21.22 |
| Townhouse/Rowhouse Detached .......................... | 9 | 352,068 | 0.03 | 39,119 | 684 | 97.57 | 7,096 | 17.89 |
| Condotel ........................... | 1 | 47,191 | 0.01 | 47,191 | 655 | 75.00 | Not Available | 12.85 |
| Apartment........................... | 1 | 29,464 | 0.01 | 29,464 | 775 | 90.00 | 8,733 | 11.11 |
| Total ................................. | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

* A Planned Unit Development is a development that has all the following characteristics:

• The individual unit owners own a parcel of land improved with a dwelling. This ownership is not in common with other unit owners.
• The development is administered by a homeowners' association that owns and is obligated to maintain property and improvements within the development for the common use and benefit of the unit owners.
• The unit owners have an automatic, non-severable interest in the homeowners' association and pay mandatory assessments.

### Purpose of the Mortgage Loans

| Purpose | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Pool by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| Purchase Money ................. | 13,685 | $729,699,570 | 56.09% | $53,321 | 712 | 97.23% | $8,345 | 19.46% |
| Cash.................................. | 5,856 | 324,112,320 | 24.91 | 55,347 | 687 | 88.20 | 8,777 | 19.68 |
| Rate/Term Refinance............ | 3,153 | 171,595,843 | 13.19 | 54,423 | 690 | 91.47 | 8,418 | 19.51 |
| Debt Consolidation............. | 1,307 | 70,704,460 | 5.43 | 54,097 | 682 | 86.74 | 6,601 | 25.23 |
| Home Improvement............. | 89 | 4,800,220 | 0.37 | 53,935 | 688 | 84.66 | 6,624 | 25.09 |
| Medical............................. | 2 | 85,529 | 0.01 | 42,764 | 676 | 79.13 | 3,428 | 23.83 |
| Total................................. | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

### Lien Priority of the Mortgage Loans

| Lien Priority | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| First Lien | 35 | $2,050,218 | 0.16% | $58,578 | 677 | 46.64% | $4,255 | NA |
| Second Lien | 24,057 | 1,298,947,725 | 99.84 | 53,995 | 701 | 93.68 | 8,358 | 19.85% |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

### Occupancy Types of the Mortgage Loans

| Occupancy Type (as indicated by Borrower) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Pool by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| Primary | 18,643 | $1,090,894,512 | 83.85% | $58,515 | 698 | 93.88% | $7,592 | 20.04% |
| Non-Owner Occupied | 4,556 | 168,123,925 | 12.92 | 36,902 | 719 | 91.93 | 11,921 | 19.21 |
| Second/Vacation | 893 | 41,979,506 | 3.23 | 47,010 | 724 | 93.01 | 13,771 | 17.71 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

### Debt-to-Income Ratios of the Mortgage Loans

| Range of Debt-to-Income Ratios (%) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 0 to 5.00 | 15 | $637,826 | 0.05% | $42,522 | 703 | 89.97% | $33,122 | 19.41% |
| 5.01 to 10.00 | 45 | 1,590,299 | 0.12 | 35,340 | 707 | 93.44 | 36,590 | 17.10 |
| 10.01 to 15.00 | 111 | 4,294,628 | 0.33 | 38,690 | 714 | 92.38 | 22,569 | 20.85 |
| 15.01 to 20.00 | 290 | 11,773,570 | 0.90 | 40,599 | 708 | 90.44 | 19,820 | 20.54 |
| 20.01 to 25.00 | 656 | 27,277,013 | 2.10 | 41,581 | 710 | 90.54 | 15,235 | 20.21 |
| 25.01 to 30.00 | 1,328 | 59,157,430 | 4.55 | 44,546 | 710 | 92.16 | 11,681 | 20.04 |
| 30.01 to 35.00 | 2,465 | 117,990,011 | 9.07 | 47,866 | 703 | 92.24 | 10,656 | 19.63 |
| 35.01 to 40.00 | 4,573 | 236,494,658 | 18.18 | 51,715 | 697 | 92.91 | 8,522 | 19.17 |
| 40.01 to 45.00 | 5,943 | 327,588,223 | 25.18 | 55,122 | 697 | 93.63 | 6,911 | 19.98 |
| 45.01 to 50.00 | 2,466 | 141,860,422 | 10.90 | 57,527 | 699 | 96.02 | 5,720 | 20.25 |
| 50.01 to 55.00 | 483 | 25,538,232 | 1.96 | 52,874 | 711 | 96.52 | 4,554 | 20.44 |
| 55.01 to 60.00 | 33 | 1,928,638 | 0.15 | 58,444 | 732 | 95.25 | 3,441 | 20.78 |
| Greater than 60.00 | 7 | 255,094 | 0.02 | 36,442 | 714 | 92.97 | 2,305 | 18.46 |
| Subtotal with DTI | 18,415 | 956,386,043 | 73.51 | 51,935 | 700 | 93.49 | 8,352 | 19.81 |
| Not Available | 5,677 | 344,611,900 | 26.49 | 60,703 | 704 | 93.93 | Not Available | 19.98 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

As of the cut-off date, the weighted average debt-to-income ratio of the mortgage loans was approximately 39.80%.

## Residual Income of the Mortgage Loans

| Residual Income | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|
| Less than $1,500 | 180 | $4,519,046 | 0.35% | $25,106 | 694 | 90.60% | 25.01% |
| $1,500 - $1,999 | 535 | 14,978,977 | 1.15 | 27,998 | 697 | 94.36 | 23.05 |
| $2,000 - $2,999 | 2,377 | 80,406,444 | 6.18 | 33,827 | 699 | 94.28 | 21.48 |
| $3,000 - $3,999 | 3,232 | 130,408,287 | 10.02 | 40,349 | 698 | 94.75 | 20.70 |
| $4,000 - $4,999 | 2,949 | 135,542,664 | 10.42 | 45,962 | 697 | 94.13 | 20.29 |
| $5,000 - $5,999 | 2,145 | 110,782,455 | 8.52 | 51,647 | 696 | 94.39 | 19.53 |
| Greater than or equal to $6,000 | 6,997 | 479,748,170 | 36.88 | 68,565 | 703 | 92.62 | 19.07 |
| Subtotal with Residual Income | 18,415 | 956,386,043 | 73.51 | 51,935 | 700 | 93.49 | 19.81 |
| Not Available | 5,677 | 344,611,900 | 26.49 | 60,703 | 704 | 93.93 | 19.98 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | 19.85% |

As of the cut-off date, the weighted average residual income of the mortgagors for the mortgage loans was $8,352.

## Prepayment Penalty Terms of the Mortgage Loans

| Prepayment Term (months) | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Pool by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| None | 20,351 | $1,081,191,652 | 83.10% | $53,127 | 703 | 93.76% | $8,452 | 19.91% |
| 12 | 719 | 45,005,047 | 3.46 | 62,594 | 697 | 94.72 | 8,520 | 17.84 |
| 24 | 652 | 34,953,640 | 2.69 | 53,610 | 690 | 96.71 | 7,126 | 18.54 |
| 36 | 2,259 | 130,580,030 | 10.04 | 57,804 | 687 | 91.08 | 7,368 | 20.44 |
| 60 | 9 | 537,381 | 0.04 | 59,709 | 729 | 97.68 | 4,932 | 18.96 |
| Other* | 102 | 8,730,192 | 0.67 | 85,590 | 705 | 93.26 | 19,202 | 20.36 |
| Total | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

*Other means not 0, 12, 24, 36 or 60 months and not more than 60 months.

## Documentation Types of the Mortgage Loans

| Documentation Type | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Loans by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| Fast Doc/Reduced Documentation .......... | 150 | $9,470,458 | 0.73% | $63,136 | 709 | 95.15% | $13,787 | 18.86% |
| Full Documentation........ | 6,719 | 310,178,266 | 23.84 | 46,164 | 704 | 94.10 | 6,688 | 21.23 |
| Lite Doc ......................... | 696 | 27,377,966 | 2.10 | 39,336 | 718 | 93.27 | 5,302 | 20.91 |
| No Documentation ......... | 1,084 | 53,946,277 | 4.15 | 49,766 | 705 | 87.47 | Not Available | 19.91 |
| No Income/No Asset ...... | 598 | 30,876,430 | 2.37 | 51,633 | 702 | 93.14 | Not Available | 20.64 |
| No Ratio......................... | 3,995 | 259,789,193 | 19.97 | 65,029 | 705 | 95.36 | Not Available | 19.92 |
| Pay Stub ........................ | 321 | 12,027,880 | 0.92 | 37,470 | 721 | 96.30 | 5,219 | 19.57 |
| Stated Income................ | 10,074 | 573,002,388 | 44.04 | 56,879 | 696 | 93.17 | 9,309 | 19.06 |
| Stated Income/ Stated Asset ............... | 455 | 24,329,085 | 1.87 | 53,471 | 702 | 91.42 | 9,899 | 18.55 |
| Total........................... | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |

## Amortization Types of the Mortgage Loans

| Amortization Type | Number of Mortgage Loans | Cut-off Date Principal Balance | Percent of Mortgage Pool by Cut-off Date Principal Balance | Average Principal Balance | Weighted Average Credit Score | Weighted Average Combined LTV Ratio | Weighted Average Residual Income | Weighted Average Junior Ratio |
|---|---|---|---|---|---|---|---|---|
| 30/15 Balloon .............. | 16,384 | $852,889,136 | 65.56% | $52,056 | 703 | 94.11% | $8,343 | 19.58% |
| Fully Amortizing........ | 4,092 | 205,408,897 | 15.79 | 50,198 | 698 | 91.06 | 7,469 | 22.52 |
| Interest Only................ | 3,616 | 242,699,910 | 18.65 | 67,118 | 699 | 93.99 | 9,028 | 18.56 |
| Totals ....................... | 24,092 | $1,300,997,943 | 100.00% | $54,001 | 701 | 93.60% | $8,352 | 19.85% |