# Exhibit 18

1   Michael H. Bierman, State Bar No. 89156
     Michael E. Pappas, State Bar No. 130400
2   LUCE, FORWARD, HAMILTON & SCRIPPS LLP
     601 S. Figueroa, Suite 3900
3   Los Angeles, California 90017
     Telephone: 213.892.4992
4   Facsimile: 213.892.7731
     E-Mail:  mbierman@luce.com
5            mpappas@luce.com
6

7   Attorneys for Plaintiff and Intervenor National Credit Union Administration Board
     As Liquidating Agent For Western Corporate Federal Credit Union
8

9                 UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

| 11 | NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION, | Case No.: CV10-01597 GW (MANx) |
|----|----|----|
| 12 | | **MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF NATIONAL CREDIT UNION ADMINISTRATION BOARD AS LIQUIDATING AGENT FOR WESTERN CORPORATE FEDERAL CREDIT UNION IN OPPOSITION TO MOTION OF OFFICER DEFENDANTS TO DISMISS THE FIRST CLAIM FOR RELIEF OF THE SECOND AMENDED COMPLAINT [DOCKET 121]** |
| 13 | | |
| 14 | Plaintiff, | |
| 15 | v. | |
| 16 | ROBERT A. SIRAVO, TODD M. LANE, ROBERT J. BURRELL, THOMAS E. SWEDBERG, TIMOTHY T. SIDLEY, ROBERT H. HARVEY, JR., WILLIAM CHENEY, GORDON DAMES, JAMES P. JORDAN, TIMOTHY KRAMER, ROBIN J. LENTZ, JOHN M. MERLO, WARREN NAKAMURA, BRIAN OSBERG, DAVID RHAMY and SHARON UPDIKE, | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | Date:     June 9, 2011 |
| 21 | | Time:    8:30 a.m. |
| 22 | Defendants. | Courtroom: 10 |

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................. 1

THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .................. 3

    A.    WesCorp's Purpose.................................................................... 3

    B.    WesCorp's Risky Investments and Failure............................... 3

    C.    The Officer Defendants............................................................ 5

        1.    Robert A. Siravo ........................................................ 6

        2.    Todd M. Lane ............................................................ 6

        3.    Robert J. Burrell ........................................................ 7

        4.    Timothy T. Sidley ..................................................... 7

        5.    The Officer Defendants' Management of WesCorp ................... 7

    D.    WesCorp's Budgets ................................................................. 9

    E.    Failure to Control Concentration Risk of MBS .....................10

    F.    Failure to Control Risks of Option ARM MBS .....................11

    G.    The Officer Defendants Ignored Red Flag Warnings .........................13

PROCEDURAL HISTORY....................................................................................14

LEGAL STANDARD............................................................................................15

LEGAL ARGUMENT...........................................................................................15

I.    THE COMPLAINT STATES A CLAIM AGAINST THE OFFICER DEFENDANTS FOR BREACH OF THEIR FIDUCIARY DUTY OF CARE. ...........................................................................................................15

    A.    Corporate Officers Owe a Fiduciary Duty of Care to Their Corporation....................................................................................15

    B.    Case Law Analyzing the Duty of Care Owed by Corporate Officers to Third Parties is Irrelevant to the Fiduciary Duty of Care They Owe to Their Corporation.................................................17

    C.    A Claim Against a Corporate Officer for Breach of the Fiduciary Duty of Care does Not Require Wrongful Conduct.............................19

    D.    The Complaint States a Claim Against the Officer Defendants for Breach of the Fiduciary Duty of Care. ...........................................20

i

2011121130.2

1

**TABLE OF CONTENTS**
(cont'd)

2                                                                                          **Page**

3   CONCLUSION ...................................................................................................24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>CASES</u>

4

*Ashcroft v. Iqbal*,
5     __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................. 15, 24

6 *Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ........................................................................ 15

7 *Bancroft-Whitney Co. v. Glen*,
    64 Cal. 2d 327 (1966) .......................................................................... 17, 19
8

*Bell Atlantic Corp. v. Twombly*,
9     550 U.S. 544 (2007) ............................................................................ 15, 24

10 *Burt v. Irvine Co.*,
    237 Cal. App. 2d 828 (1965) ............................................................... 16, 20
11

*Frances T. v. Village Green Owners Ass'n*,
12     42 Cal. 3d 490 (1986) ................................................................................ 18

13 *FSLIC v. Molinaro*,
    889 F.2d 899 (9th Cir. 1989) ...................................................................... 19
14

*GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*,
15     83 Cal. App. 4th 409 (2000) .................................................. 16, 17, 18, 19, 20

16 *Gaillard v. Natomas Co.*,
    208 Cal. App. 3d 1250 (1989) .................................................................... 17
17

*Iconix, Inc. v. Tokuda*,
18     457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................ 16, 17, 20

19 *In re Heritage Bond Litig.*,
    2004 U.S. Dist. LEXIS 15387 (C.D. Cal. June 28, 2004) ...................... 16, 17, 20
20

*Poile v. Stockton Merchants Ass'n*,
21     176 Cal. App. 2d 100 (1959) ...................................................................... 16

22 *Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004)). ........................................................................... 16
23

*Reid v. Robinson*,
24     64 Cal. App. 46 (1923) .............................................................................. 19

25 *Sprewell v. Golden State Warriors*,
    266 F.3d 979,
26     *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001) ..................... 15, 23

27 *Tarasoff v. Regents of the Univ. of California*,
    17 Cal. 3d 425 (1976) ................................................................................ 18
28

iii

2011112130.2

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page**

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
1 Cal. 3d 586 (1970) ............................................................ 16, 18, 19

*Violette v. Shoup*,
16 Cal. App. 4th 611 (1993).............................................................16

**STATUTES**

Cal. Corp. Code § 309.........................................................................17

Cal. Corp. Code § 7231......................................................................17

**RULES**

Fed. R. Civ. P. 8(a)(2)........................................................................24

Fed. R. Civ. P. 12(b)(6).................................................................2, 15

**MISCELLANEOUS**

ABA Model Business Code, § 8.42......................................................17

ABA Model Business Code, § 8.42(d) ................................................17

3 Fletcher Cyc. Corp. § 1040 (1965)..................................................16

Restatement (Third) of Agency, § 8.08 ..............................................16

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In their motion to dismiss the Second Amended Complaint ("SAC") [Docket 121], defendants Robert A. Siravo, Todd M. Lane, Robert J. Burrell, and Timothy T. Sidley (the "Officer Defendants"), former officers of Western Corporate Federal Credit Union ("WesCorp"), effectively ask the Court: (1) to disregard the fiduciary duty of care imposed by California law on corporate officers by holding that the imposition of liability requires bad faith or wrongful, misleading, or improper conduct; and (2) to overrule its prior holding that California's business judgment rule does not apply to the conduct of corporate officers by holding that liability may be imposed only where such officers completely abdicated their responsibilities. The Officer Defendants' legal arguments are contrary to established California law holding that corporate officers may be held liable to their corporation for breach of fiduciary duty based on their breach of the duty of reasonable care, and they cite no cases granting a motion to dismiss for failure to allege facts supporting a claim against corporate officers for breach of fiduciary duty. The facts alleged in the SAC by plaintiff National Credit Union Administration Board (the "NCUA") as Liquidating Agent for WesCorp are more than sufficient to state a claim against the Officer Defendants for breach of that duty.

WesCorp was a non-profit retail corporate federal credit union whose members were other, mostly smaller, credit unions. Among other things, it provided its member credit unions with a safe place to invest their excess funds. The SAC alleges that under the leadership of the Officer Defendants, WesCorp abandoned its conservative business model and began increasing its investment income by purchasing higher yield and increasingly risky securities for its portfolio. Between 2005 and 2007, its predominant investment was in private label mortgage backed securities ("MBS") based on reduced documentation Option ARM loans (made without verifying the borrower's ability to make the required monthly payments). The resulting increase in WesCorp's income allowed the senior Officer Defendants

2011112130.2

1   to substantially increase their compensation – Siravo's compensation increased
2   about 325% between 2002 and 2008.

3       WesCorp failed when it was required to recognize $6.8 billion in losses in its
4   investment portfolio, mostly from Option ARM MBS. Because WesCorp had
5   invested far more heavily in these risky securities than the other retail corporate
6   credit unions, its losses were more than 10 times larger than those of the other retail
7   corporate credit unions that had significant investments in private label MBS.

8       The SAC alleges that the Officer Defendants were responsible for the
9   excessive concentration of risky Option ARM MBS because they, among other
10  things: (1) failed to recommend meaningful concentration limits for private label
11  MBS; (2) failed to act diligently with respect to WesCorp's purchases of Option
12  ARM MBS, by failing to analyze the credit implications of that security type, to
13  obtain board approval, and to recommend concentration limits, as required by
14  WesCorp's policies; (3) recommended budgets requiring higher investment returns
15  than were possible with safer investments without considering the risks; and (4)
16  failed to monitor the growing concentration of Option ARM MBS in WesCorp's
17  portfolio. These facts, which must be accepted as true for purposes of a motion to
18  dismiss under Fed. R. Civ. P. 12(b)(6), state a claim that the Officer Defendants
19  breached their fiduciary duty of care in managing WesCorp.

20      The Officer Defendants base their motion to dismiss on the theory that a
21  claim for breach of fiduciary duty against a corporate officer "requires allegations of
22  bad faith, wrongful conduct, or an abdication of the Officer's responsibilities in the
23  performance of his or her duties." Docket 121 at 1:19-25. However, California law
24  is clear that corporate officers owe their corporation a fiduciary duty of care to act
25  with care and diligence. The SAC states a claim for breach of fiduciary duty by
26  alleging facts showing that the Officer Defendants failed to exercise reasonable care
27  or diligence through the conduct alleged therein. The Officer Defendants'
28  arguments concerning "hindsight" and "Monday morning quarterbacking" and their

2

2011121130.2

1  attempted reliance on 750 pages of committee reports[1] might be proper at trial (or in

2  a motion for summary judgment), but they cannot support a motion to dismiss.

3    For the reasons stated herein, the NCUA respectfully asks the Court to deny

4  the Officer Defendants' motion to dismiss.

5    **THE ALLEGATIONS OF THE SECOND AMENDED COMPLAINT**

6    **A. WesCorp's Purpose**

7    WesCorp was the largest non-profit "retail" corporate credit union.  SAC

8  ¶¶ 30, 45.  Its purpose was to provide its members, themselves credit unions, with a

9  place to invest their excess funds prudently, a ready source of liquidity, and a variety

10  of "back office" banking services.  SAC ¶¶ 46-49.  WesCorp's members,

11  particularly its many small credit union members, depended on WesCorp for

12  services, liquidity and safe investment of excess funds.  SAC ¶ 51.

13    **B. WesCorp's Risky Investments and Failure**

14    In about 2002, when Robert Siravo became CEO of WesCorp, WesCorp

15  began to aggressively increase its net interest income by increasing the yield in its

16  investment portfolio, purchasing an increasing amount of private label MBS, rather

17  than less risky U.S. agency securities, and by increasing its borrowing.  SAC ¶¶ 62-

18  63, 66, 67, 72.

19    From December 2002 to December 2007, the concentration of U.S. agency

20  MBS in WesCorp's MBS investment portfolio dropped from 17% to 4% while the

21  concentration of higher-yielding private label MBS increased from 72% to almost

22  95%.  SAC ¶ 72.  In contrast, the other corporate credit unions with significant

23  investments in private label MBS had lower concentrations of those securities,

24

25  ---

26  [1] The Officer Defendants join in the Directors' request to take judicial notice of
seven committee reports.  *See* Docket 121 at 2 n.2.  The NCUA's opposition to the
defendants' request for judicial notice explains why the judicial notice sought by the

27  Officer Defendants is inappropriate.  In any event, the materials as to which the
Officer Defendants seek judicial notice do not contradict the allegations of the SAC,

28  and they therefore have no bearing on the motion to dismiss.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

1    ranging from 31% to 57%.  *Id.*  Between January 2004 and November 2008,

2    WesCorp increased its borrowing 472% to $7.3 billion.  SAC ¶ 66.

3        Between 2002 and 2007, WesCorp's net interest income nearly doubled from

4    $68 million to $137 million.  SAC ¶ 67.  Between 2004 and 2007, WesCorp's

5    annual gross investment income nearly tripled from $563 million to $1.64 billion.

6    *Id.*  This increase allowed WesCorp's senior officers to increase their compensation

7    substantially – Siravo's compensation increased by about 325% and Lane's

8    compensation more than doubled.  SAC ¶¶ 34, 70.

9        In 2005, WesCorp began purchasing large quantities of MBS based on

10   reduced documentation Option ARM loans.  SAC ¶¶ 36, 80.  These loans allowed

11   the borrower to make substantially below-market monthly payments for the first

12   years of the loan, after which the monthly payments "reset" and increase drastically,

13   frequently more than doubling.  SAC ¶ 77.  The reduced documentation loans were

14   made without verifying the borrower's ability to make the required monthly

15   payments and were commonly referred to in the industry as "liar loans."  SAC ¶ 78.

16   Many were made to borrowers who could afford the initial below-market monthly

17   payments but not the regular monthly payment due after the loan reset.  *Id.*  The

18   loans, and the MBS based on them, were inherently risky because they were made

19   without the normal investigation of whether the borrower could afford the loan; they

20   were essentially bets that residential real estate markets would continue to rise,

21   allowing the borrowers to refinance before their loans reset and they were required

22   to make substantially higher monthly payments.  SAC ¶ 79.

23       From 2005 through 2007, the Option ARM MBS became WesCorp's

24   predominant MBS investment.  SAC ¶ 121.  WesCorp continued purchasing large

25   quantities of Option ARM MBS through July 2007, when the market for private

26   label MBS froze and WesCorp stopped purchasing them altogether.  SAC ¶ 146.  In

27   2007, more than 70% of WesCorp's purchases for its portfolio, over $4.627 billion,

28   were Option ARM MBS.  SAC ¶ 122.  By the end of 2007, WesCorp had nearly $9

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1    billion invested in Option ARM MBS, comprising over 37% of WesCorp's

2    investment portfolio.  *Id.*

3          In a further effort to increase yields, WesCorp also increased the risk in its

4    portfolio by purchasing MBS from lower tranches, which would absorb any losses

5    in the mortgage pools before the higher tranches.  SAC ¶ 81.  The percentage of

6    private label MBS WesCorp purchased from a "senior" or higher tranche dropped

7    from more than 95% to less than 50% between 2002 and 2007.  SAC ¶ 83.  Most of

8    the Option ARM MBS purchased by WesCorp were from the lowest AAA rated

9    tranches – those most likely to suffer losses if the borrowers defaulted on the loans

10   backing them.  SAC ¶ 84.

11         WesCorp was required to recognize investment losses of $6.872 billion as of

12   December 31, 2008.  SAC ¶ 149.  Of these losses, more than $4.683 billion resulted

13   from Option ARM MBS WesCorp purchased in 2006 and 2007.  *Id.*  Had WesCorp

14   imposed the same concentration limit on its Option ARM MBS as it did on another

15   forms of risky private label MBS, its losses on those securities would have been

16   limited to less than $200 million.  SAC ¶¶ 126, 151.  WesCorp's disproportionately

17   heavy investments in private label MBS, and particularly riskier forms of private

18   label MBS, caused its losses to be more than 10 times greater and proportionally

19   much more severe than those of the other retail corporate credit unions that had

20   significant investments in private label MBS.  SAC ¶¶ 40, 152.  WesCorp's

21   investment losses, and those of U.S. Central threatened the national credit union

22   system, required emergency legislation, and have resulted in increased insurance

23   assessments costing, in the aggregate, billions of dollars.  SAC ¶ 153.

24   **C.    The Officer Defendants**

25         WesCorp's bylaws required WesCorp's board to adopt corporate policies to

26   govern the institution and its investment strategies, among other things, to ensure

27   that WesCorp was being operated in a safe and sound manner.  SAC ¶ 52.  Under

28   those corporate policies, WesCorp's officers were responsible for ensuring that the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

board's policies were effectively implemented. *Id.* The SAC describes how Robert A. Siravo, Todd M. Lane, Robert J. Burrell, and Timothy T. Sidley, as officers of WesCorp, breached their fiduciary duty of care to WesCorp and are liable for its failure.

### 1. Robert A. Siravo

Siravo was WesCorp's President and CEO, responsible for ensuring that WesCorp developed, implemented and maintained sound policies and systems, developing a competent staff, providing leadership, monitoring and setting direction for the staff, ensuring that WesCorp's assets were managed in a profitable and secure manner, and reviewing, evaluating and recommending changes in corporate policies as needed, among other things. SAC ¶ 53. He also had a duty to be candid and forthright with the WesCorp board of directors and WesCorp members and to disclose changes in the profitability, risk profile and dangers in WesCorp's investment portfolio. SAC ¶ 54.

Siravo's salary and bonus compensation increased from $350,000 (annualized) in 2002 to almost $992,000 in 2008. SAC ¶¶ 34, 70. Siravo, Lane and Thomas E. Swedberg, the Vice President of Human Resources, also manipulated WesCorp's Supplemental Executive Retention Plans ("SERPs") to further increase the money paid to WesCorp's officers. SAC ¶ 42. As a result, Siravo received more than $2.3 million in additional SERP payments. *Id.*

### 2. Todd M. Lane

Lane was WesCorp's Chief Financial Officer, responsible for WesCorp's financial affairs, including its financial statements and financial operations. SAC ¶ 55. Lane had a duty to ensure that WesCorp followed sound financial practices. *Id.* He had primary responsibility for creating WesCorp's annual budgets and had a duty to understand the risks in the proposed budgets and to communicate those risks to the budget committee and the board. *Id.* In addition, Lane functioned as "second

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

1   in command" at WesCorp and had general supervisory responsibility over WesCorp.

2   *Id.*

3       Lane's salary and bonus increased 121%, from $176,000 in 2002 to almost

4   $390,000 in 2007, his last full year. SAC ¶ 70. In addition to significant increases

5   in his salary and bonuses, Lane was paid an additional $1.325 million in SERP

6   payments in 2006 and an additional $75,000 in each of 2007 and 2008 in lieu of

7   SERP payments. SAC ¶ 42.

8           **3.**    **Robert J. Burrell**

9       Burrell was WesCorp's Chief Investment Officer, responsible for the

10   development and implementation of all balance sheet management strategies, which

11   included WesCorp's investment strategies. SAC ¶ 56. As the primary manager of

12   the balance sheet, including the investment portfolio, Burrell was responsible for

13   ensuring the safety and soundness of that portfolio and that all investments would

14   provide appropriate levels of safety in terms of credit quality, liquidity and interest

15   rate risk. *Id.* He was also responsible for supervising the Investment Department

16   and ensuring that it complied with all WesCorp investment policies applicable to it.

17   *Id.*

18           **4.**    **Timothy T. Sidley**

19       Sidley was WesCorp's Vice President-Risk Assessment. SAC ¶ 58. Under

20   WesCorp's investment credit policy, Sidley and the Director of Investment Credit

21   Services, who reported to him, were responsible for the implementation of

22   WesCorp's investment credit policies and procedures. *Id.* Sidley was also

23   responsible for the investment risk monitoring processes, systems, and procedures.

24   *Id.*

25           **5.**    **The Officer Defendants' Management of WesCorp**

26       In addition to these individual responsibilities, Siravo, Lane, and Burrell

27   managed WesCorp collaboratively and together determined and implemented its

28   overall business strategies, including its strategies of significantly increasing

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

1   investment income by investing in higher-yielding securities and by substantial

2   borrowing.  SAC ¶ 57.  In addition, as executive officers of WesCorp, each of the

3   Officer Defendants had a duty to be candid and forthright with the WesCorp board

4   of directors and WesCorp members and to disclose changes in the profitability, risk

5   profile and dangers in WesCorp's investment portfolio.  SAC ¶ 54.

6       Siravo, Lane and Burrell were voting members of WesCorp's Asset and

7   Liability Committee ("ALCO") and of the Asset/Liability Staff Committee

8   ("ALSC"), which was created by WesCorp on or about October 22, 2006 to provide

9   a forum to coordinate the issues that most directly impacted effective management

10   of WesCorp's balance sheet, including investments.  SAC ¶¶ 59-60.  The ALSC

11   assumed much of the work that was previously required of the ALCO, with the

12   ALCO retaining the responsibility to approve ALSC recommendations.  SAC ¶ 59.

13   The ALSC was responsible for review of investment security purchases and sales

14   and the prevailing investment strategies and potential changes thereto.  SAC ¶ 59.

15       As members of the ALCO and the ALSC, Siravo, Lane and Burrell were

16   responsible for supervising WesCorp's investments, recommending policies and

17   investment strategies and ensuring the safety and soundness of WesCorp's asset and

18   liability activities, including its investment activities.  SAC ¶ 60.  Sidley was a non-

19   voting member of the ALSC and a staff liaison to the ALCO.  *Id.*

20       Siravo, Lane and Burrell actively advocated for the budgets adopted by

21   WesCorp mandating increasing investment income and did not highlight the

22   increased risks inherent in those budgets, in part to further their own personal

23   agendas of ever-increasing salaries, bonuses and retirement plans, all of which were

24   funded from the increasing net interest income mandated by the budgets.  SAC

25   ¶ 104.  Aside from the significant compensation increases for Siravo and Lane

26   discussed above, other top WesCorp executives also received significant

27   compensation increases.  The average salary and bonus WesCorp paid to its

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1    "leadership team" increased by an average of approximately 88% between 2002 and

2    2008, an average annual increase of approximately 14%. SAC ¶¶ 34, 70.

3       **D.**    **WesCorp's Budgets**

4       Each year, WesCorp's management proposed and WesCorp's board adopted a

5    budget for WesCorp for the following year which set the investment risk for the

6    institution. SAC ¶¶ 85, 90, 94. Lane and Siravo were responsible for preparing and

7    proposing the budget. SAC ¶ 85. Burrell was responsible for the portions of the

8    budget projecting investment income, investment expense, and net interest income.

9    *Id.* The proposed budget was first considered by the board's budget committee,

10    which then recommended it to the board. *Id.* Burrell and WesCorp's Investment

11    Department were responsible for ensuring that WesCorp's investments earned the

12    returns required to meet WesCorp's budget for investment income and net interest

13    income. SAC ¶ 91.

14       As the officers in charge of the budgeting process, Lane and Siravo had a duty

15    to understand and consider how WesCorp would achieve the investment income and

16    net interest income recommended in the proposed budget and to explain to the

17    budget committee and, if necessary, the board as a whole, the credit and financial

18    risks that the budget contained. SAC ¶ 86. Burrell had a duty to provide the

19    information necessary to do so to Siravo and Lane. *Id.*

20       WesCorp's 2007 budget mandated investment income of $1.470 billion and

21    net interest income of $101 million, which were 67% higher and 17% higher,

22    respectively, than the amounts mandated in the 2005 budget. SAC ¶ 90. Lane and

23    Siravo proposed these increases, in consultation with Burrell, based on prior year

24    forecasts. *Id.* By recommending and approving annual budgets mandating

25    particular levels of investment income and net interest income, Siravo, Lane and

26    Burrell, along with the budget committee and the board, were effectively dictating

27    the level of risk in WesCorp's investment portfolio. SAC ¶ 90. Nonetheless, the

28    materials that Siravo, Lane and Burrell supplied the budget committee about the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1   budgets contained no information about what changes to WesCorp's investment

2   portfolio would be required for WesCorp to earn the investment income and net

3   interest income mandated by the budgets and no information about or discussion of

4   the additional investment risk that would be required to do so.  SAC ¶ 95.

5       In addition, WesCorp's corporate policies required that WesCorp's officers,

6   particularly Lane, recommend and its board establish capital goals sufficient to

7   support WesCorp's credit, liquidity, market, fiduciary, operational, and similar types

8   of risk.  SAC ¶ 68.  Nonetheless, WesCorp increased the investment risk in its

9   portfolio but did not increase its capital goals or its capital base to compensate.

10  SAC ¶ 68, 147.  To the contrary, between 2002 and 2007, WesCorp's capital ratios

11  – the ratios of capital to assets – declined.  *Id.*

12      **E.    Failure to Control Concentration Risk of MBS**

13      WesCorp's ALCO was to provide overall management direction for

14  WesCorp's investment strategy and the types and level of risk WesCorp's

15  investments exposed it to.  Its duties included the review and recommendation of

16  proposed changes to WesCorp's asset and liability policies and strategies, the review

17  of and recommendations for existing and proposed concentration limits, and the

18  review of and recommendations for investment security purchases and sales.  SAC

19  ¶¶ 25, 109.

20      WesCorp's Risk Management Department, headed by Sidley, and its

21  Investment Department, headed by Burrell, were responsible for proposing

22  investment concentration limits for WesCorp's investment portfolio, to ensure that

23  the portfolio was properly diversified to minimize investment risk.  The other

24  Officer Defendants, by virtue of their offices and their membership on the ALCO

25  and the ALSC, were also responsible for recommending investment concentration

26  limits.  SAC ¶ 110.

27      The fundamental purpose of investment concentration limits is to limit the

28  harm to an investor if a particular type of investment suffers significant losses.  The

10

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1   risk of loss from investments, however "safe" they appear, is usually unforeseen and

2   is frequently unforeseeable.  Investment concentration limits, by requiring

3   diversification, can reduce exposure to losses for particular types of securities

4   caused by unforeseen changes in economic conditions and other unforeseen

5   changes.  SAC ¶ 106.

6        However, although WesCorp was investing increasingly in private label MBS

7   from 2005 through 2007, neither the ALCO nor the board considered WesCorp's

8   concentration limit for AAA rated private label MBS during that time.  SAC ¶ 114.

9   Neither determined that that concentration limit was reasonable or supportable, and

10  neither considered changing that limit or imposing a reasonable and supportable

11  concentration limit on AAA rated private label MBS.  *Id.*  In fact, from 2004 on,

12  WesCorp's private label MBS concentration limits were meaningless – they were so

13  high that they permitted WesCorp to invest its entire portfolio in that one form of

14  security.  SAC ¶¶ 111-13.

15       **F.     Failure to Control Risks of Option ARM MBS**

16       NCUA regulations and WesCorp's investment policies required that WesCorp

17  conduct a credit analysis on securities for investment prior to purchase, regardless of

18  rating.  SAC ¶ 73.  WesCorp's corporate policies required its Investment Credit

19  Services Department ("ICSD") to review and present to the ALCO and the board the

20  credit risk implications of new security types, including securities backed by a type

21  of collateral not previously approved by WesCorp.  They required board approval of

22  new security types and prohibited purchase of new security types prior to approval.

23  SAC ¶ 115.  Nevertheless, WesCorp began purchasing Option ARM MBS in

24  significant amounts in 2005 without any review by the ICSD of the credit

25  implications of such purchase, SAC ¶ 116, and without the approval of either the

26  ALCO or the board for the purchase of that security type either before or after 2005,

27  SAC ¶ 118.  In fact, none of the Officer Defendants, whether in their capacity of

28  executive officers of WesCorp or as members of ALCO, enforced the policy

requiring review of credit risk implications for new security types with respect to Option ARM MBS either before or after 2005. SAC ¶¶ 117, 119. Nor did they seek approval from the ALCO or the board for the purchase of Option ARM MBS as a new security type. SAC ¶ 117.

From 2005 through 2007, the Option ARM MBS became WesCorp's predominant MBS investment. By 2006, 49% of its investment portfolio purchases were Option ARM MBS. At the end of 2006, WesCorp had over $6 billion invested in Option ARM MBS, and that single type of security comprised nearly 28% of WesCorp's investment portfolio. SAC ¶ 121. In 2007, more than 70% of the securities WesCorp purchased for its portfolio, over $4.627 billion, were Option ARM MBS. By the end of 2007, WesCorp had nearly $9 billion invested in Option ARM MBS, comprising over 37% of WesCorp's investment portfolio. SAC ¶ 122.

The Officer Defendants, by virtue of their offices and as members of the ALCO, were required to recommend concentration limits by investment types, including those backed by different types of collateral, yet, despite the vast quantities of Option ARM MBS WesCorp was purchasing, they did not recommend any concentration limits for Option ARM MBS. SAC ¶¶ 124-25.

The Officer Defendants never proposed, the ALCO never considered or recommended, and the Directors never adopted policies requiring tracking or reporting of concentration of Option ARM MBS in WesCorp's portfolio or policies limiting or requiring reporting of concentration of AAA rated private label MBS by tranche position, even though lower tranche securities are more risky. SAC ¶¶ 128-29. Consequently, neither the Officer Defendants, nor the ALCO or the other WesCorp directors, monitored those concentrations in WesCorp's investment portfolio. *Id.*

Although required by WesCorp policies, the Officer Defendants knew that WesCorp did not perform a thorough review of the credit risk of private label MBS purchases, and the ALCO was not provided sufficient information to itself evaluate

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

1   the credit risk entailed in WesCorp's purchase of private label MBS.  SAC ¶ 133.

2   Indeed, the credit risk reviews by the Investment Department headed by Burrell and

3   the Investment Credit Services Department headed by Sidley were perfunctory,

4   performed in a matter of hours on limited information.  SAC ¶ 132.  Typically, the

5   purchase justification which WesCorp's investment policies required the ICSD to

6   provide to the ALCO and the board was a rote statement with no analysis.  *Id.*

7   ### G.   The Officer Defendants Ignored Red Flag Warnings

8   By March 2005 and continuing through 2006, Siravo, Lane and Burrell were

9   aware that: (1) investment credit spreads were tightening significantly, SAC ¶¶ 96-

10  99, 135-36; (2) "good" investments were becoming increasingly hard to find, SAC

11  ¶ 136; (3) interest rates were beginning to rise, SAC ¶ 137; and (4) the "housing

12  bubble" might be dangerously close to bursting, SAC ¶¶ 134, 137-42.  By the

13  summer of 2005, the Officer Defendants were also aware that: (1) the "reset shock"

14  experienced by Option ARM loans increases their credit risk; (2) the credit quality

15  of the Option ARM MBS loan pools was deteriorating; and (3) a drop in housing

16  demand could result in a decrease in real estate values and credit losses on existing

17  Option ARM loans because the borrowers would be unable to refinance.  SAC

18  ¶¶ 120, 134.

19  Notwithstanding their understanding that reduced documentation Option

20  ARM MBS were particularly vulnerable to the ongoing collapse of the housing

21  market and the likelihood that the collapse would lead to both increased

22  delinquencies and declining home prices, the Officer Defendants took no steps to

23  curtail WesCorp's purchases of Option ARM MBS or lower tranche MBS.  SAC

24  ¶¶ 143-46.  To the contrary, WesCorp continued to increase the concentration of

25  Option ARM MBS in its portfolio until the marked for private label MBS froze in

26  2007.  SAC ¶ 146.

27  The information about shrinking investment credit spreads and the risks

28  inherent in the MBS WesCorp was purchasing was a "red flag" that required Siravo,

13

1   Lane and Burrell to investigate and consider the consequences of substantially

2   increasing investment income and net interest income through investment in such

3   securities.  SAC ¶¶ 100, 131, 144.  Despite those red flags, the Officer Defendants

4   breached their duty of care by failing, among other things: (1) to reasonably inquire

5   about, investigate, and inform themselves about the risks posed by WesCorp's

6   increasing concentration of Option ARM MBS in its portfolio; (2) to explain to the

7   budget committee and the board how adoption of the 2006 and 2007 budgets would

8   materially affect the risk in WesCorp's investment portfolio; and (3) to inform the

9   budget committee, the ALCO and the board of the need to revise WesCorp's

10  investment strategy or budgets.  SAC ¶¶ 100, 103, 114, 131, 144-47.

11          In further breach of their fiduciary duties, Siravo, Lane and Burrell actively

12  advocated for the budgets adopted by WesCorp mandating increasing investment

13  income, and did not highlight the increased risks inherent in those budgets, in part to

14  further their own personal agendas of ever-increasing salaries, bonuses and

15  retirement plans, all of which were funded from the increasing net interest income

16  mandated by the budgets.  SAC ¶ 104.  As a consequence, WesCorp suffered much

17  larger and deeper losses than other corporate credit unions.  SAC ¶ 152.

18                              **PROCEDURAL HISTORY**

19          This lawsuit was originally filed by seven credit unions in Los Angeles

20  Superior Court on November 24, 2009.  After intervening, the NCUA removed the

21  lawsuit to this Court on March 3, 2010.  Docket 1.  On August 31, 2010, the NCUA

22  filed a First Amended Complaint.  Docket 84.

23          On December 20, 2010, the Court heard oral argument on the defendants'

24  motions to dismiss the First Amended Complaint, issuing a minute order that

25  attached the Court's tentative.  Docket 110.  On January 31, 2011, the Court held a

26  second hearing, then issued a second minute order.  Docket 115.  For purposes of

27  this motion, the Court's rulings are most significant in that they: (1) rejected the

28  defendants' contention that California's business judgment rule applies to corporate

                                        14

1  officers; and (2) required the NCUA to make more specific allegations as to the

2  conduct of the Officer Defendants.  *See* Docket 110 at 9-12, 17-19.

3       On February 22, 2011, the NCUA filed the SAC.  Only one of the claims in

4  the SAC is at issue on this motion – the First Claim for Relief for breach of

5  fiduciary duties, brought against the Officer Defendants.  SAC ¶¶ 183-98.

6  ## LEGAL STANDARD

7       Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is

8  warranted only where the complaint either does not allege (1) a claim supported by a

9  cognizable legal theory or (2) sufficient facts in support of a cognizable legal theory.

10  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

11       When considering a motion to dismiss under Rule 12(b)(6), the court must

12  accept as true all of the factual allegations set out in plaintiff's complaint and draw

13  inferences from those allegations in the light most favorable to plaintiff.  *Sprewell v.*

14  *Golden State Warriors*, 266 F.3d 979, 988, *amended on other grounds*, 275 F.3d

15  1187 (9th Cir. 2001).  If a complaint "pleads factual content that allows the court to

16  draw the reasonable inference that the defendant is liable for the misconduct

17  alleged," the complaint survives a motion to dismiss.  *Ashcroft v. Iqbal*, __ U.S. __,

18  129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  *See Bell Atlantic Corp. v.*

19  *Twombly*, 550 U.S. 544, 556, 570 (2007) (to survive a motion to dismiss, the

20  plaintiff must allege facts that are sufficient "to raise a right to relief above the

21  speculative level" and to "state a claim to relief that is plausible on its face").

22  ## LEGAL ARGUMENT

23  **I.**    **THE COMPLAINT STATES A CLAIM AGAINST THE OFFICER**
**DEFENDANTS FOR BREACH OF THEIR FIDUCIARY DUTY OF**
24  **CARE.**

25      **A.**    **Corporate Officers Owe a Fiduciary Duty of Care to Their**
**Corporation.**
26

27       "Under California law, 'an officer who participates in management of the

28  corporation, exercising some discretionary authority, is a fiduciary of the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1  corporation as a matter of law.'" *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 981

2  (N.D. Cal. 2006) (quoting *GAB Business Servs., Inc. v. Lindsey & Newsom Claim*

3  *Servs., Inc.*, 83 Cal. App. 4th 409, 420-21 (2000), *overruled on other grounds*,

4  *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004)). *See In re Heritage Bond Litig.*, 2004

5  U.S. Dist. LEXIS 15387 at *13 (C.D. Cal. June 28, 2004) ("[a]n officer owes the

6  corporation fiduciary duties as a matter of law"). "[A]s in all legally recognized

7  fiduciary relationships, once this factual prerequisite is established, the law imposes

8  a fiduciary duty." *GAB Business Servs., Inc.*, 83 Cal. App. 4th at 421 (citing *Violette*

9  *v. Shoup*, 16 Cal. App. 4th 611, 619 (1993)).

10  "[T]o the extent that officers are corporate agents, the fiduciary duties they

11  owe the corporation include, at a minimum, a duty of reasonable care, diligence, and

12  skill in their work." *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15387 at

13  *13 (citing *Poile v. Stockton Merchants Ass'n*, 176 Cal. App. 2d 100, 104 (1959)).

14  As the Officer Defendants note, *see* Docket 121 at 11:3-5, "[l]iability is not incurred

15  by a mere error of judgment in the exercise of discretion unless the error is based on

16  want of care or diligence." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1

17  Cal. 3d 586, 594 (1970). The converse is, however, also true: "'[t]he rule exempting

18  officers of corporations from liability for mere mistakes and errors of judgment does

19  not apply where the loss is the result of failure to exercise proper care, skill and

20  diligence.'" *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 850-52 (1965) (quoting 3

21  Fletcher Cyc. Corp. § 1040, at 628 (1965)). *See* Restatement (Third) of Agency,

22  § 8.08 ("[a]n agent has a duty to the principal to act with the care, competence, and

23  diligence normally exercised by agents in similar circumstances").

24  An officer owes his corporation a fiduciary duty to exercise "'the most

25  scrupulous observance of his duty, not only affirmatively to protect the interests of

26  the corporation committed to his charge, but also to refrain from doing anything that

27  would work injury to the corporation, or to deprive it of profit or advantage which

28  his skill and ability might properly bring to it, or to enable it to make in the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1   reasonable and lawful exercise of its powers.'"  *GAB Business Servs., Inc.*, 83 Cal.

2   App. 4th at 417 (quoting *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345 (1966)).

3   *See Iconix, Inc.*, 457 F. Supp. 2d at 982 (same).

4        The Officer Defendants quote Section 8.42 of the ABA Model Business

5   Corporation Act (the "MBCA") and suggest that this provision is applicable here.

6   *See* Docket 121 at 13:9-22.  However, California courts have not adopted Section

7   8.42 and they have, in particular, declined to adopt the law set forth in Section

8   8.42(d), which codifies the business judgment for corporate officers.  *See* MBCA,

9   § 8.42(d) ("[a]n officer shall not be liable to the corporation or its shareholders for

10   any decision to take or not to take action, or any failure to take action, as an officer,

11   if the duties of the office are performed in compliance with this section").  As the

12   Court has already held in this case, the business judgment rule, codified in Cal.

13   Corp. Code §§ 309 and 7231, does not apply to corporate officers.  *See* Docket 110

14   at 9-11 (discussing, *inter alia*, *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250,

15   1265 (1989)).

16        **B.   Case Law Analyzing the Duty of Care Owed by Corporate Officers**
              **to Third Parties is Irrelevant to the Fiduciary Duty of Care They**
17            **Owe to Their Corporation.**

18        The Officer Defendants argue that "[a]n officer's fiduciary duties – and

19   liability for breach of the same – are tied directly to the roles and responsibilities the

20   officer has within an organization, and must be analyzed based on what an officer

21   knew at the time."  Docket 121 at 11:6-24.  However, the cases cited by the Officer

22   Defendants do not change the general rule that officers owe their corporation a

23   fiduciary duty of loyalty as a matter of law.  *See In re Heritage Bond Litig.*, 2004

24   U.S. Dist. LEXIS 15387 at *13; *GAB Business Servs., Inc.*, 83 Cal. App. 4th at 421.

25        Three of the four cases cited by the Officer Defendants address the standard

26   for determining whether parties owe duties of care *to third parties* for purposes of a

27   negligence claim, not whether corporate officers owe fiduciary duties of care to their

28

17

corporation. *See Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 503-12 (1986) (holding that the directors of a condominium owners association owed a duty of care to a condominium owner that they breached by ordering her to remove the external lighting she had installed for her protection and by failing to repair hazardous lighting conditions); *Tarasoff v. Regents of the Univ. of California*, 17 Cal. 3d 425, 433-38 (1976) (holding that psychotherapists with knowledge that a patient had plans to kill a woman owed a duty to the woman and her parents to warn them of the threat); *Haidinger-Hayes, Inc.*, 1 Cal. 3d at 593-95 (holding that an insurance agent owed a duty of care to an insurer in evaluating an insured).

The remaining case cited by the Officer Defendants, *see* Docket 121 at 11:24 – 12:3, *GAB Business Servs., Inc.*, 83 Cal. App. 4th at 416-19, rejected an argument similar to that being made by the Officer Defendants here. In that case, the defendants responded to plaintiff's "argument that an officer owes the corporation a fiduciary duty as a matter of law" by "cit[ing] a number of cases holding that the existence of a fiduciary duty is a question of fact." *Id.* at 417. The court confirmed that the existence of a fiduciary duty imposed by law – such as the relationship between a corporation and its officers – presents a question of law, not of fact. *See id.* at 416-19.

The court concluded that "an officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation *as a matter of law*." *Id.* at 420-21 (emphasis added) (noting that "a 'nominal' officer with no management authority is not a fiduciary"). "Whether a particular officer participates in management is a question of fact." *Id.* at 421. Here, the SAC alleges facts showing that each of the Officer Defendants participated in management of WesCorp and exercised some discretionary authority. *See* SAC, ¶¶ 53-60. For purposes of a motion to dismiss, such allegations are more than sufficient to establish that each of the Officer Defendants owed fiduciary duties to WesCorp.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2

**C.** **A Claim Against a Corporate Officer for Breach of the Fiduciary Duty of Care does Not Require Wrongful Conduct.**

Although the Officer Defendants acknowledge that corporate officers owe a fiduciary duty of care to their corporation, *see* Docket 121 at 10:27-28, 13:11-15, they devote considerable argument to their contention that something more than a breach of the duty of care is required to hold corporate officers liable for breach of fiduciary duty, *see id.* at 13:23 – 16:28. The Officer Defendants misread the law.

The Officer Defendants cite three cases, *see id.* at 14:1 – 15:17, that imposed liability on corporate officers for breaching the fiduciary duty of loyalty that they owed to their corporation. *See Bancroft-Whitney Co.*, 64 Cal. 2d at 345-51 (officer breached fiduciary duty by using insider's knowledge of employee skills and salaries to recruit employees to a competitor from the corporation to which he owed a fiduciary duty); *GAB Business Servs., Inc.*, 83 Cal. App. 4th at 423-25 (same). *See also FSLIC v. Molinaro*, 889 F.2d 899, 900, 903-04 (9th Cir. 1989) (bank officer breached fiduciary duty by diverting loan proceeds for his personal benefit). In a fourth case, a corporate officer breached his duty to disclose that another corporate officer had made secret profits from the sale of real property belonging to the corporation. *See Reid v. Robinson*, 64 Cal. App. 46, 48-51, 57 (1923).[2] The fact that these cases found a breach of fiduciary duty in these circumstances in no way detracts from the California case law imposing liability for breach of the fiduciary duty of care.

---

[2]   The Officer Defendants are simply wrong in claiming that in *Haidinger-Hayes, Inc.*, 1 Cal. 3d at 590-96, "[t]he California Supreme Court similarly analyzed the responsibility of a corporate officer to properly investigate a potential insured before issuing an insurance policy." Docket 121 at 16:11-21. That case held that the defendant insurance agent breached the fiduciary duty that it owed to the plaintiff insurer as its agent, but that the defendant's officer did not owe any duty to the insurer (although he owed a fiduciary duty to the defendant as its officer). *See Haidinger-Hayes, Inc.*, 1 Cal. 3d at 594-95 ("[m]ore must be shown than breach of the officer's duty *to his corporation* to impose personal liability *to a third person* upon him") (emphasis in original).

2011121130.2

1    In the remaining case relied on by the Officer Defendants, *In re Heritage*

2  *Bond Litig.*, 2004 U.S. Dist. LEXIS 15387 at *13-24, the defendant owed a

3  fiduciary duty of reasonable care to plaintiff HHD as a corporate officer, and he

4  owed the other plaintiffs "a duty of ordinary care under the common-law principle

5  of negligence, which is independent of, and separate from, [his] fiduciary duties

6  owed to the corporation." *Id.* at *13-17.  Analyzing together the claims of both

7  HHD (for breach of the fiduciary duty of care) and the plaintiffs (for negligence

8  through breach of the duty of ordinary care), the court found that the defendant

9  breached his duties by "actively participating in and facilitating the improper inter-

10  company transfers" without investigating their propriety.  *Id.* at *23-24.  Nothing in

11  the opinion suggests that the defendant's conduct was the only type of conduct that

12  could breach the fiduciary duty of care.

13    **D.    The Complaint States a Claim Against the Officer Defendants for**

14    **Breach of the Fiduciary Duty of Care.**

15    As the above discussion indicates, the Officer Defendants overstate what a

16  plaintiff must allege in order to state a claim against a corporate officer for breach of

17  the fiduciary duty of care.  The plaintiff must first allege facts showing that the

18  defendant was an officer who participated in management of the corporation and

19  exercised some discretionary authority.  *See Iconix, Inc.*, 457 F.2d at 981; *GAB*

20  *Business Servs., Inc.*, 83 Cal. App. 4th at 420-21.  The SAC alleges such facts as to

21  each of the Officer Defendants, *see* SAC ¶¶ 53-60, thereby establishing the

22  existence of a fiduciary duty, *see GAB Business Servs., Inc.*, 83 Cal. App. 4th at 421.

23    As a result of their fiduciary relationship with Wescorp, the Officer

24  Defendants as a matter of law owed Wescorp "a duty of reasonable care, diligence,

25  and skill in their work."  *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15387

26  at *13; *Burt*, 237 Cal. App. 2d at 850-52.  The facts alleged in the SAC are more

27

28

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1   than sufficient to state a plausible claim that the Officer Defendants breached their

2   fiduciary duty by acting without reasonable care or diligence.[3]

3        The SAC alleges that: (1) starting in about 2002 WesCorp aggressively began

4   to increase the yield in its investment portfolio by purchasing an increasing amount

5   of private label MBS, rather than less risky U.S. agency securities, but the Officer

6   Defendants (a) failed to recommend appropriate concentration limits that would

7   have limited the harm to WesCorp if the investment in private label MBS were to

8   suffer significant loss and (b) knew that the credit risk of private label MBS

9   purchases was not being thoroughly reviewed, SAC ¶¶ 66-67, 72, 106, 109-14, 132-

10   33, 152; (2) in 2005, WesCorp began purchasing large numbers of Option ARM

11   MBS, the vast majority of which were based on reduced documentation Option

12   ARM loans, but the Officer Defendants did not comply with WesCorp policies

13   requiring the review of credit risk implications for new security types and did not

14   recommend any concentration limits for Option ARM MBS, SAC ¶¶ 36, 38, 74, 77-

15   80, 115-18, 121-22, 124-25, 128-29, 132-33; and (3) WesCorp also increased the

16   risk in its portfolio by purchasing MBS from lower tranches, which would absorb

17   any risk in the mortgage pools before the higher tranches, SAC ¶¶ 81, 83-84.  The

18   SAC further alleges that WesCorp lost more than $4.683 billion from Option ARM

19   MBS purchased by WesCorp in 2006 and 2007, and that its losses on those

20   securities would have been limited to less than $200 million if it had imposed the

21   same concentration limits on its Option ARM MBS as it did on another form of

22   risky MBS.  SAC ¶¶ 149, 151.  The SAC also shows that WesCorp's losses were

23

24   [3]   For the reasons discussed in Part I.C above, NCUA does **not** need to allege that
the Officer Defendants acted in bad faith, engaged in any wrongful, misleading, or

25   improper conduct.  NCUA notes, however, that the SAC alleges that the senior
Officer Defendants received substantial compensation increases as a result of

26   WesCorp's increased net interest income, SAC ¶ 70, and were motivated by
personal gain, *i.e.*, they pushed for budgets with increased investment income "in

27   part to further their own personal agendas of ever-increasing salaries, bonuses and
retirement plans, all of which were funded from the increasing net interest income

28   mandated by the budgets," SAC ¶ 104.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1   significantly larger and more severe than those of its peers as a result of its

2   disproportionately heavy investment in poor quality Option ARM MBS. SAC,

3   ¶ 152.

4        The SAC alleges that, by reason of their positions with WesCorp as executive

5   officers and as members of WesCorp committees, the Officer Defendants owed

6   duties to WesCorp to ensure the safety and soundness of WesCorp's business

7   strategies, financial practices, and investments, and to be candid and forthright with

8   the WesCorp board of directors and WesCorp members as to the profitability, risk

9   profile, and dangers in WesCorp's investment portfolio. SAC ¶¶ 53-60. The SAC

10   further alleges that: (1) the Officer Defendants were responsible for proposing

11   annual budgets that set WesCorp's investment risk but that they failed to disclose

12   what changes to WesCorp's investment portfolio would be required for WesCorp to

13   meet the budgets or the additional investment risk that would be required to do so;

14   and (2) management did not recommend increasing WesCorp's capital goals or its

15   capital base to compensate for increased risk in WesCorp's portfolio, as required by

16   WesCorp's increased investment risk. SAC ¶¶ 68, 85-86, 90-91, 95, 147.

17        Finally, the SAC alleges that the Officer Defendants were on notice by March

18   2005 of facts concerning shrinking investment credit spreads and the risks inherent

19   in the MBS being purchased by WesCorp, including the potential effect of a drop in

20   housing demand on the MBS. SAC ¶¶ 96-99, 120, 134-42. Despite their

21   knowledge of these "red flag" warnings, the Officer Defendants: (1) took no steps to

22   curtail WesCorp's purchases of Option ARM MBS or lower tranche MBS; and (2)

23   failed to act reasonably in inquiring about, investigating, and informing themselves

24   about the risks posed by WesCorp's increasing concentration of Option ARM MBS,

25   or to inform the budget committee and the board (a) how adoption of the 2006 and

26   2007 budgets would materially affect the risk in WesCorp's investment portfolio or

27   (b) of the need to revise WesCorp's investment strategy or budgets. SAC ¶¶ 100,

28   103, 114, 131, 143-47. Instead, the Officer Defendants actively advocated for the

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1  budgets adopted by WesCorp mandating increasing investment income, without

2  highlighting the increased risks inherent in those budgets.  SAC ¶ 104.

3       Accepting these allegations as true and drawing all inferences in favor of the

4  NCUA, *see Sprewell*, 901 F.2d at 699, the SAC clearly pleads facts supporting a

5  plausible, non-speculative claim that each of the Officer Defendants breached his

6  fiduciary duty of care to WesCorp by failing to exercise reasonable care or

7  diligence.  It is telling that the Officer Defendants have not cited a single case

8  granting a motion to dismiss on the ground that the plaintiff had failed to allege facts

9  sufficient to support a claim that corporate officers breached a fiduciary duty to their

10 corporation; instead, the Officer Defendants rely solely on cases decided after trial

11 or at summary judgment.

12      The Officer Defendants repeatedly characterize the NCUA's allegations as

13 "hindsight."  *See*, *e.g.*, Docket 121 at 1:3-9, 1:19-23, 2:1-3, 3:3-5, 8:12-15, 12:5-11,

14 13:9-11, 16:22-28, 17:15-18, 19:1-2, 20:17-19, 21:9-11, 23:21-24.  However, the

15 SAC alleges that the Officer Defendants failed to act with reasonable care and

16 diligence, taking into account the information known to them at the time.  It does

17 not allege that the Officer Defendants' actions were proper only in hindsight, and,

18 regardless of the repetition, it cannot fairly be read to so allege.  The Officer

19 Defendants' claim that their conduct was improper only in hindsight but did not

20 breach the fiduciary duty of care presents a factual issue that cannot be resolved

21 through a motion to dismiss.

22      The Officer Defendants also: (1) selectively cite certain allegations made by

23 the NCUA in an attempt to argue that the Officer Defendants' conduct was proper;

24 and (2) argue that the SAC does not provide sufficient detail with regard to certain

25 allegations.  *See id.* at 8:6 – 10:8, 17:22 – 22:26.  Space limitations prevent the

26 NCUA from providing a point-by-point response to these allegations.  For now, the

27 NCUA notes that: (1) the SAC alleges facts that, when taken in context, state a

28 plausible, non-speculative claim against each of the Officer Defendants for breach

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

1 of the fiduciary duty of care; (2) for purposes of a motion to dismiss, the alleged

2 facts must be construed in the light most favorable to the NCUA (not in the light

3 most favorable to the Officer Defendants, as they implicitly suggest); (3) *Twombly*

4 and *Iqbal* do not alter the fundamental requirement that in general a plaintiff need

5 only provide "a short and plain statement of the claim showing that the pleader is

6 entitled to relief," Fed. R. Civ. P. 8(a)(2); and (4) the more detailed allegations

7 demanded by the Officer Defendants need not be included in the complaint and may

8 be developed through discovery.

9 ## CONCLUSION

10     For the reasons set forth above, the Officer Defendants have not shown and

11 cannot show that the SAC fails to allege facts sufficient to state a plausible claim for

12 breach of the fiduciary duty of care.[4]

13 DATED: May 12, 2011       LUCE, FORWARD, HAMILTON & SCRIPPS LLP

MICHAEL H. BIERMAN

14                            MICHAEL E. PAPPAS

15

16                 By:     /s/ Michael H. Bierman

17                          Michael H. Bierman

18                          Attorneys For The National Credit Union

Administration Board As Liquidating Agent

19                          For Western Corporate Federal Union

20

21

22

23

24

25

26

27

28

---

[4]    In the event that the Court finds that the SAC in some way fails to allege sufficient facts to state a claim for breach of the fiduciary duty of care, the NCUA respectfully asks the Court for leave to amend the SAC to address any deficiencies identified by the Court.

Case No. CV10-01597 GW (MANx)
NCUA'S OPPOSITION TO OFFICERS' MOTION
TO DISMISS SAC

2011121130.2