WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

    - and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group
of Junior Secured Noteholders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL STATEMENT OF AD HOC GROUP OF JUNIOR SECURED NOTEHOLDERS IN CONNECTION WITH DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 363(B) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS' COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

    The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"),[1] by and

through its undersigned counsel, hereby files this supplemental statement (the "Supplemental

---

[1] The Ad Hoc Group is comprised of certain entities (the "Junior Secured Noteholders") that hold, or manage holders of, 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June

Statement") in response to the PSA Motion[2] of the debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for entry of an order authorizing the Debtors to enter into and perform under that certain Plan Support Agreement, dated May 13, 2013, between Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants (the "PSA").[3] As and for its Supplemental Statement, the Ad Hoc Group respectfully states as follows:

## SUPPLEMENTAL STATEMENT

1.   The Ad Hoc Group previously filed a statement and reservation of rights in connection with the PSA Motion on June 18, 2013. See Statement and Reservation of Rights of the Ad Hoc Group of Junior Secured Noteholders in Connection With the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing The Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors Committee, and Certain Consenting Creditors [Docket No. 4018] (the "Statement"). The Ad Hoc Group filed the Statement, as opposed to an objection, in reliance upon unqualified assurances from the Debtors that approval of the PSA would be without prejudice to the substantive rights of the holders of the Junior Secured Notes to object to any or all of the agreements and transactions described therein. After the filing of that Statement, and after the

---

6, 2008 (the "Junior Secured Notes"). Following the Debtors' $800 million paydown, the outstanding amount of principal and pre-petition interest on the Junior Secured Noteholders' claim now equals $1.422 billion and the outstanding amount of post-petition interest accrued through June 14, 2013 equals approximately $264 million. The aggregate amount outstanding continues to increase by virtue of the ongoing accrual of post-petition interest at the rate of approximately $183 million per year.

[2] Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 3814]. The PSA Motion seeks to authorize the Debtors to prosecute a plan of reorganization premised on the terms set out in the related term sheets.

[3] The Ad Hoc Group also joins in the statement filed by UMB Bank, N.A. in its capacity as trustee for the Junior Secured Notes. UMB Bank, N.A.'s (I) Joinder in the Statement and Reservation of Rights of the Ad Hoc Group of Junior Secured Noteholders in Connection with the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial, Inc. the Creditors' Committee, and Certain Consenting Claimants and (II) Reservation of Rights [Docket No. 4045].

deadline to object to the PSA Motion had passed, the Debtors filed their first amended complaint in the adversary proceeding captioned at Residential Capital LLC, et al. v. UMB Bank, N.A., et al., Adv. Case No. 13-01343 [Docket No. 8]. The amended complaint included the following new footnote (footnote number 11) with respect to the proposed treatment of intercompany claims under the yet to be filed plan and disclosure statement (the "Footnote"):

> The JSNs have also asserted that their lien on intercompany claims provides additional security for their claims. To the contrary, each of the Debtors waived their intercompany claims in connection with the global settlement embodied by the Plan Support Agreement and associated Term Sheet and Supplemental Term Sheet. See Debtors' Motion for an Order Under Bankruptcy Code 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 3814]. As part of determining to waive their intercompany claims, each Debtor determined that prior to implementation of the global settlement the intercompany claims had little value, even assuming *arguendo* the validity of the claims. Accordingly any determinations regarding the intercompany claims should be resolved under Bankruptcy Rule 9019 and in connection with plan confirmation.

Id. In light of the Debtors' use of the past tense to describe actions with respect to intercompany claims, the Footnote can be read to indicate that the Debtors have already consummated certain transactions related to intercompany claims prior to approval of the PSA. The Footnote can also be read to indicate that the Debtors are seeking to have this Court approve what amounts to an abandonment of property of multiple Debtors in connection with its seeking general approval of the PSA Motion. Either possibility would be unacceptable to the Ad Hoc Group and would have necessitated an objection to the PSA Motion.

2. To explain, as the Footnote indicates, the Ad Hoc Group asserts that part of the collateral package of the Junior Secured Notes consists of (i) valid, perfected and first priority

liens with respect to all intercompany claims of their Debtor obligor and guarantors and (ii) valid, perfected and first priority security pledges of the equity in certain Debtors, the creditors of which, including holders of the Junior Secured Notes, would benefit from the enforcement of intercompany claims.

3. Concerned that, if accepted on their face, the Debtors' representations in the Footnote had already prejudiced, or upon approval of the PSA Motion would prejudice, the rights and recoveries of the Junior Secured Noteholders to a key component of their collateral, the Ad Hoc Group immediately requested clarification from the Debtors in advance of filing an objection to the PSA Motion. On a conference call yesterday, the advisors to the Debtors clarified that, notwithstanding the language of the Footnote, no Debtor has waived, or indeed will waive, any of its intercompany claims in advance of confirmation of a plan of reorganization effectuating the yet to be filed plan and disclosure statement. The Ad Hoc Group understands that the Debtors will clarify the record at the hearing on the PSA Motion to confirm that there has been no waiver or abandonment of the intercompany claims and that approval of the PSA will not result in waiver, abandonment or other resolution of any intercompany claims.

4. Even assuming that the requested clarification is made on the record, the Ad Hoc Group expressly reserves all rights (i) to address all issues relating to any Debtor's actual or prospective waiver or abandonment of any intercompany claim, including seeking the right to foreclose on any intercompany claim prior to any waiver or abandonment thereof and (ii) to assert adequate protection rights or section 507(b) claims granted by the Final Cash Collateral Order to compensate the Junior Secured Noteholders for any diminution in the value of the intercompany claims as a result of any waiver or abandonment of claims.[4]

---

[4] In this regard, the Ad Hoc Group notes that the Debtors reliance on Bankruptcy Rule 9019 as a means to avoid a determination on the merits of the value of intercompany claims is misplaced. While Rule 9019 is the applicable

5.      Lastly, the Ad Hoc Group remains concerned that the latest misstatement highlights an ongoing lack of sensitivity on the part of the Debtors to intercompany separateness. In substance, and even when corrected, the Debtors' new disclosure indicates that adverse Debtors have reached a definitive conclusion to waive prepetition and postpetition claims against one another.  That waiver, if approved, would have the direct effect of cancelling the assets of certain estates, including Court-allowed administrative expense claims, and correspondingly cancelling the liabilities of some other estates, including scheduled intercompany claims.  In other words, the yet to be filed plan and disclosure statement will seek to abandon one set of Debtors' assets and correspondingly relieve another set of Debtors' *scheduled* liabilities.  In accordance with existing authority in this district the Ad Hoc Group reserves all its rights to contest whether that and other decisions are appropriate exercises of fiduciary duties by each of the Debtors' advisors and managers.

---

procedural rule governing compromise, the compromise of a debtor's claim is subject to several other legal standards including among others those imposed by section 363 of the Bankruptcy Code. See, e.g., Cadle Co. v. Mims (In re Moore), 608 F.3d 253 (5th Cir. 2010) (holding that the debtor's proposed compromise of certain alter ego claims was a disposition of estate property requiring section 363 approval).  Accordingly, to effectuate the compromise of intercompany claims, whether by settlement, alleged waiver or otherwise, the Debtors will need to comply with, among other things, section 363 of the Bankruptcy Code, including sections 363(e) and 363(f) thereof, as well as the Cash Collateral and Adequate Protection Order [Docket No. 491], which explicitly grants the JSNs adequate protection(including a section 507(b) claim if other forms of adequate protection prove insufficient) for their interests in all prepetition collateral.  Thus, the settlement and compromise of the intercompany claims suggested by the Debtors would do nothing but shift the focus of litigation to a determination of the JSN's entitlements to adequate protection, the amount of which can only be calculated based upon a determination on the merits of the value and enforceability of intercompany claims prior to their disposition.

## CONCLUSION

The Ad Hoc Group hereby expressly reserves all of its objections, rights, and remedies.

Dated: June 21, 2013
      New York, New York

Respectfully submitted,

By: /s/ J. Christopher Shore
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
J. Christopher Shore (JCS – 6031)
Harrison L. Denman (HD – 1945)

- and -

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Gerard Uzzi (GU – 2297)

Attorneys for the Ad Hoc Group of Junior Secured Noteholders