| | |
|---|---|
| Richard M. Cieri | Jeffrey S. Powell |
| Ray C. Schrock | Daniel T. Donovan |
| Noah J. Ornstein | Judson D. Brown |
| KIRKLAND & ELLIS LLP | KIRKLAND & ELLIS LLP |
| 601 Lexington Avenue | 655 15th Street, N.W., Ste. 1200 |
| New York, New York 10022 | Washington, D.C. 20005 |
| Telephone: (212) 446-4800 | Telephone: (202) 879-5000 |
| Facsimile: (212) 446-4900 | Facsimile: (202) 879-5200 |

*Counsel for Ally Financial, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ALLY FINANCIAL, INC'S REPLY IN SUPPORT OF THE
DEBTORS' MOTION FOR ORDER AUTHORIZING ENTRY INTO
AND PERFORMANCE OF PLAN SUPPORT AGREEMENT**

# Table of Contents

Page

PRELIMINARY STATEMENT ...................................................................................................1

RESPONSE.....................................................................................................................................3

    I.      The Debtors' Entry Into the PSA Is an Appropriate Exercise of Their Business Judgment. ..............................................................................................3

    II.     Court Approval of the PSA Is Appropriate Under the Law and Required By Its Terms. ....................................................................................................5

    III.    Objections to the Proposed Third-Party Release Are Not Ripe—And In Any Event, the Third-Party Release Is Appropriate and Justified in These Circumstances. ..........................................................................................6

          A.     The Court Has Subject Matter Jurisdiction to Grant the Third-Party Release. ......................................................................................................7

          B.     The Third-Party Release Is Appropriate Because Ally Has Provided and Will Provide Substantial Consideration That Is Essential to the Debtors' Plan. ........................................................................11

CONCLUSION.............................................................................................................................15

# Table of Authorities

Page(s)

**Cases**

*In re 1031 Tax Grp., LLC*,
   397 B.R. 670 (Bankr. S.D.N.Y. 2008) ....................................................................... 11

*In re Amanat*,
   338 B.R. 574 (Bankr. S.D.N.Y. 2005) ......................................................................... 8

*In re Ames Dep't Stores, Inc.*,
   190 B.R. 157 (S.D.N.Y. 1995) ..................................................................................... 9

*In re Brentano's*,
   27 B.R. 90 (Bankr. S.D.N.Y. 1983) ............................................................................. 9

*In re Charter Commc'ns*,
   419 B.R. 221 (Bankr. S.D.N.Y. 2009) ..................................................... 11, 12, 13, 14

*In re Chemtura Corp.*,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010) ....................................................................... 13

*In re Cuyahoga Equip. Corp.*,
   83 980 F.2d 110 (2d Cir. 1992) .................................................................................... 7

*In re Dreier LLP*,
   429 B.R. 112 (Bankr. S.D.N.Y. 2010) ......................................................................... 7

*In re FairPoint Commc'ns, Inc.*,
   452 B.R. 21 (S.D.N.Y. 2011) ....................................................................................... 8

*In re Innkeepers USA Trust*,
   442 B.R. 227 (Bankr. S.D.N.Y. 2010) ......................................................................... 4

*In re Johns-Manville Corp. (Manville II)*,
   517 F.3d 52 (2d Cir. 2008) ........................................................................................... 7

*In re Johns-Manville Corp.*,
   600 F.3d 135 (2d Cir. 2010) ....................................................................................... 10

*In re Karta Corp.*,
   342 B.R. 45 (S.D.N.Y. 2006) ..................................................................................... 12

*In re Kolinsky*,
   100 B.R. 695 (Bankr. S.D.N.Y. 1989) ....................................................................... 10


*In re Masterwear Corp.*,
   241 B.R. 511 (Bankr. S.D.N.Y. 1999) ................................................................................ 8, 10

*In re Metromedia Fiber Network, Inc.*,
   416 F.3d 136 (2d Cir. 2005) ............................................................................................ 11, 12

*In re Metropolitan 885 Third Avenue Leasehold, LLC*,
   2010 WL 6982778 (Bankr. S.D.N.Y. 2010) ........................................................................ 14

*In re Quigley Co.*,
   676 F.3d 45 (2d Cir. 2012) ............................................................................................... 10, 11

*In re River Ctr. Holdings, LLC*,
   288 B.R. 59 (Bankr. S.D.N.Y. 2003) ..................................................................................... 10

*In re WorldCom, Inc. Sec. Litig.*,
   293 B.R. 308 (S.D.N.Y. 2003) .......................................................................................... 8, 10

*In re XO Commc'ns, Inc.*,
   330 B.R. 394 (Bankr. S.D.N.Y. 2005) ............................................................................. 11, 14

*MacArthur Co. v. Johns-Manville Corp.*,
   837 F.2d 89 (2d Cir. 1988) .................................................................................................... 11

*Pacor, Inc. v. Higgins,*
   743 F.2d 984 (3d Cir. 1984) .................................................................................................... 9

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Ally Financial Inc. ("**Ally**") hereby submits this omnibus reply (the "**Omnibus Reply**") in support of the *Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "**Motion**"),[1] and in response to (a) the Objection of Syncora Guarantee Inc. ("**Syncora**") to the Motion [Docket No. 4028] (the "**Syncora Objection**"), (b) the Objection of Credit Suisse Securities (USA) LLC ("**Credit Suisse**") to the Motion [Docket No. 4019] (the "**Credit Suisse Objection**"), and (c) the Objection of Federal Home Loan Bank of Chicago, Federal Home Loan Bank of Boston, and Federal Home Loan Bank of Indianapolis (collectively, the "**Federal Home Loan Banks**") to the Motion [Docket No. 4034] (the "**FHLB Objection**"). The Court should grant the Motion, which is supported by uncontroverted evidence, and overrule any remaining objection. In response to the objections and in support of the Motion, Ally respectfully states as follows:

**PRELIMINARY STATEMENT**

The PSA is the product of extensive, arm's length negotiations between highly sophisticated counterparties under the auspices of this Court and its appointed mediator, the Honorable Judge Peck. All of the participants in the mediation, including the Debtors, the Creditors' Committee, Ally, and the Debtors' major constituents, were represented by experienced counsel and advisors. All of the participants have intimate knowledge of the issues resolved by the PSA, based on their own extensive, independent investigation, their involvement in the Examiner's investigation, and lengthy meetings and presentations amongst these

---

[1] Capitalized terms used herein without definition shall have the meaning set forth in the Motion.

1

constituencies to discuss these issues. Following the Court's guidance to use the uncertainty associated with the Examiner's Report to reach a consensual resolution to these cases, all of the participants independently decided that the agreement embodied by the PSA was a sound exercise of business judgment for their respective constituencies to avoid years of costly, time-consuming litigation—with no assurance of a successful outcome for any constituent.

Ally files this reply to address certain arguments raised in the various objections to the Motion. *First*, the assertion that the Debtors' entry into the PSA should be reviewed under a heightened scrutiny—rather than business judgment—standard is unsupported. This district is replete with courts using a business judgment standard to evaluate a debtors' request to enter into a plan support agreement. There is no authority for imposing a heightened scrutiny standard for a 21-party agreement reached during court-supervised mediation during a chapter 11 case. Regardless, even if that higher standard is applied, the Debtors satisfy it in these circumstances. The process employed to reach the PSA is unassailable—and any suggestion of a flaw or taint in the parties' mediation is tantamount to questioning the Court's process and the mediator.

*Second*, the argument that this Court cannot and should not authorize the Debtors to enter the PSA is incorrect. There is compelling and ample precedent in this court and elsewhere supporting the approval of post-petition plan support agreements.

*Finally*, the contention that the PSA's contemplated third-party releases are impermissible should be considered at the confirmation hearing on the Plan and is wrong on the merits in any event. As an initial matter, the Court need not resolve any challenges to such third-party releases at this stage. The only issue for the Court now is whether the Debtors should be allowed to enter the PSA. All parties reserve their rights to object to any third-party releases that are part of a plan in the plan confirmation process. Moreover, the sophisticated parties to the

2

PSA, in close consultation with the Court's mediator, carefully considered the Plan's structure—and none of the parties would support a plan, or a third-party release, that is unconfirmable. Further, on the merits, the Court plainly has jurisdiction to grant the third-party releases contemplated here, and these releases are particularly appropriate given the substantial financial and non-financial contributions that Ally has provided—and continues to provide—to the Debtors throughout these bankruptcy cases.

## RESPONSE

### I. The Debtors' Entry Into the PSA Is an Appropriate Exercise of Their Business Judgment.

The Debtors decided to enter into the PSA after appropriately exercising their business judgment.[2] Indeed, there is no evidence—and the objectors offer none—to question whether entering into the PSA is an appropriate exercise of the Debtors' business judgment. It is. The PSA supports a historic settlement—to be embodied in the Debtors' chapter 11 plan—that resolves tens of billions of dollars in claims against the Debtors and, as described below, provides creditors with billions of dollars in recovery that would be unavailable without the PSA. Motion, Ex. 3 (Plan Support Agreement), Ex. A (Plan Term Sheet) at 5. If the Debtors opted not to pursue the PSA, the Debtors and their creditors unquestionably would be embroiled in

---

[2] *See, e.g.*, *In re Gen. Maritime Corp.*, Case No. 11-15285 (Bankr. S.D.N.Y. Apr. 2, 2012) [Docket No. 421] (approving post-petition plan support agreement because it represented a sound exercise of the debtors' business judgment and was in the best interests of the debtors' estates, their creditors, and other parties-in-interest); *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 19, 2011) [Docket No. 3060] (same); *In re Neb. Book Co.*, Case No. 11-12005 (Bankr. D. Del. Sept. 7, 2011) [Docket No. 557] (same); *In re Quigley Co., Inc.*, Case No. 04-15739 (Bankr. S.D.N.Y. April 7, 2011) [Docket No. 2269] (same); *In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Aug. 9, 2010) [Docket No. 3527] (same); *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 17, 2010) [Docket No. 3427] (same); *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030] (same); *In re Bally Total Fitness of Greater N. Y.*, Case No. 08-14818 (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 1231] (same); *In re Movie Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Feb. 6, 2008) [Docket No. 1430] (same); *In re Global Power Equip. Grp., Inc.*, Case No. 06-11045 (Bankr. D. Del. Oct. 31, 2007) [Docket No. 1914] (same); *In re Fed.-Mogul Global Inc.*, Case No. 01-10578 (Bankr. D. Del. Feb. 6, 2007) [Docket No. 11508] (same); *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del. June 23, 2006) [Docket No. 18208] (same).

3

widespread litigation that would drain substantial value from the estates and cripple these cases without any assurance of any certain recovery.

Recognizing that they cannot overcome the Debtors' business judgment, the Federal Home Loan Banks and Syncora contend that the Debtors' entry into the PSA should be subjected to the heightened scrutiny standard. *See* FHLB Objection, ¶ 6; Syncora Objection, ¶ 9. That is not so. Neither the Federal Home Loan Banks nor Syncora cite any case in which a court applied a heightened scrutiny standard to the approval of a post-petition plan support agreement. The lone case that these objectors can muster is *In re Innkeepers USA Trust*, 442 B.R. 227 (Bankr. S.D.N.Y. 2010), *see* FHLB Objection, ¶ 6; Syncora Objection, ¶ 9—but *Innkeepers* is wholly inapposite. *Innkeepers* involved a debtor's assumption of a pre-petition plan support agreement—not approval of a post-petition plan support agreement negotiated during Court-supervised mediation involving a sitting Bankruptcy Court judge as mediator. *See In re Innkeepers*, 442 B.R. at 229. Moreover, in *Innkeepers*, the unsecured creditors' committee opposed the plan support agreement—a stark contrast to the broad support for the PSA here, including from the largest and most numerous creditors in these cases. *See id.* at 231.

Even if the Court were to apply a heightened scrutiny standard, the Debtors' entry into the PSA should still be approved. Under such a standard, "courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of the proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *Innkeepers*, 442 B.R. at 230. None of the objectors take issue with the price of the transaction—nor could they given Ally's $2.1 billion contribution. Instead, they complain about the process—a preposterous assertion in light of the efforts taken to achieve the PSA, the active participation of the Creditors' Committee and key constituents, and

4

the months of arm's-length negotiations mediated by a federal bankruptcy judge.

Instead, the objectors take issue with Ally's involvement in the PSA. The Federal Home Loan Banks argue that the PSA fails the heightened scrutiny standard "[b]ecause Ally is on both sides of the PSA." FHLB Objection, ¶ 7. This is simply false—and worse, insults all who participated in the mediation process. There is not a single shred of evidence that Ally sat on both sides of the table in achieving the PSA. Indeed, throughout its existence and certainly during these bankruptcy cases, ResCap has consistently observed corporate formalities and acted as a separate and independent company from Ally, with its own independent directors, its own advisors, and its own leadership and employees. For its part, Syncora complains that the PSA fails the heightened scrutiny standard because "the PSA is a contract with Ally, an insider." Syncora Objection, 9. But neither Syncora nor any other objector have cited to a single case holding that a post-petition plan support agreement was subject to a heightened scrutiny standard because an insider was a party to the agreement—and this district is replete with authority using a business judgment standard.

## II. Court Approval of the PSA Is Appropriate Under the Law and Required By Its Terms.

Credit Suisse argues that "Court authorization of the [plan support] agreement is neither required nor permitted." Credit Suisse Objection at 12. That is incorrect. Authorizing the Debtors to enter the PSA is both appropriate and permitted. Indeed, there is substantial authority, in this district and others, approving post-petition plan support agreements.[3]

---

[3] *See, e.g.*, *In re Gen. Maritime Corp.*, Case No. 11-15285 (Bankr. S.D.N.Y. Apr. 2, 2012) [Docket No. 421]; *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 19, 2011) [Docket No. 3060]; *In re Neb. Book Co.*, Case No. 11-12005 (Bankr. D. Del. Sept. 7, 2011) [Docket No. 557]; *In re Quigley Co., Inc.*, Case No. 04-15739 (Bankr. S.D.N.Y. April 7, 2011) [Docket No. 2269]; *In re Chemtura Corp.*, Case No. 09-11233 (Bankr. S.D.N.Y. Aug. 9, 2010) [Docket No. 3527]; *In re Visteon Corp.*, Case No. 09-11786 (Bankr. D. Del. June 17, 2010) [Docket No. 3427]; *In re Tronox Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Dec. 23, 2009) [Docket No. 1030]; *In re Bally Total Fitness of Greater N. Y.*, Case No. 08-14818 (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 1231]; *In re Internet Corp.*, Case No. 08-11859 (Bankr. D. Del. June 4, 2009) [Docket No. 1066]; *In re Movie

Moreover, approving the PSA is also required by its terms. If the Court does not approve the PSA, the PSA will terminate. Motion, Ex. 3 (Plan Support Agreement), § 6.1. All parties to the PSA recognized the need for Court approval: it is a contract that the Debtors seek to enter outside the ordinary course of business and is required by § 363(b) of the Bankruptcy Code. Further, the Debtors sought Court approval of the PSA "out of an abundance of caution," to lock in the PSA's benefits, to ensure the parties' performance of its terms, and to prevent parties, including the Debtors and the Committee, from terminating the PSA based on any findings in the Examiner's Report. Ally supports the Court's approval of the PSA for the same reasons, and would not have agreed to its terms of the PSA unless the Debtors agreed to pursue that approval.

### III. Objections to the Proposed Third-Party Release Are Not Ripe—And In Any Event, the Third-Party Release Is Appropriate and Justified in These Circumstances.

Several parties, including Credit Suisse, Syncora Guarantee, and the Federal Home Loan Banks, object to a proposed third-party release to be included in a plan of reorganization that has not even been filed. As a threshold matter, the Court need not resolve challenges to the proposed third-party release at this juncture. The Debtor's instant motion only seeks authorization to enter into and perform under a plan support agreement. The Debtors' are not currently seeking approval of a plan or even approval of a third-party release. When the Debtors' pursue confirmation of a plan that contains a third-party release, their creditors—including Credit Suisse, Syncora, and the Federal Home Loan Banks—will have the opportunity to object to the plan and its particular provisions. Indeed, Credit Suisse recognizes that a reorganization "plan becomes binding on creditors and other parties in interest … only on confirmation of the plan,"

---

*Gallery, Inc.*, Case No. 07-33849 (Bankr. E.D. Va. Feb. 6, 2008) [Docket No. 1430]; *In re Global Power Equip. Grp., Inc.*, Case No. 06-11045 (Bankr. D. Del. Oct. 31, 2007) [Docket No. 1914]; *In re Fed.-Mogul Global Inc.*, Case No. 01-10578 (Bankr. D. Del. Feb. 6, 2007) [Docket No. 11508]; *In re Owens Corning*, Case No. 00-03837 (Bankr. D. Del. June 23, 2006) [Docket No. 18208]; *see also* Tr. 16, *In re Gen. Maritime Corp.*, Case No. 11-15285 (Bankr. S.D.N.Y. Apr. 2, 2012) [Docket No. 441] ("[P]lan support agreements post-petition have been approved by other judges in this district."). All of these orders were approved under section 105(a) and/or section 363(b) of the Bankruptcy Code.

6

and that any "party in interest may object" to the plan.  Credit Suisse Objection at 15 (citing 11 U.S.C. §§ 1128(b), 1141(a), (d)).  As various other securities underwriters acknowledged in submitting a reservation of rights, "the Court is not being asked to approve the [third-party] releases at this time, as the releases will be considered in connection with confirmation of the plan and approval of the disclosure statement."  Reservation of Rights of Citigroup Global Markets Inc., et al, at 4.  The Court, therefore, need not address the various objections to the third-party release at this time.

To be sure, the contemplated third-party release is appropriate and justified.  The release was agreed to by sophisticated parties, with the advice of numerous professionals, during a months'-long mediation process with a court-appointed mediator.  The release is the cornerstone of Ally's willing support of the PSA and the basis for the consideration Ally agreed to provide.  The parties carefully considered the Plan's structure during the mediation, and they would never present the third-party release unless it was appropriate in the circumstances and within the Court's jurisdiction.  The third-party release would release claims relating to the Debtors' businesses that creditors have asserted or could assert against the non-debtor Ally entities.  These third-party claims therefore are "related to" the Debtors' bankruptcy cases, and the Court has jurisdiction to approve the release.  The third-party release is also justified because the non-debtor Ally entities have provided, and have agreed to continue providing, substantial consideration that is essential to the Debtors' reorganization efforts.

  **A. The Court Has Subject Matter Jurisdiction to Grant the Third-Party Release.**

Contrary to the objections of Credit Suisse, Syncora, and the Federal Home Loan Banks, this Court has jurisdiction to grant the third-party release.  That release covers third-party claims against the non-debtor Ally entities that "directly affect the *res* of the bankruptcy estate." *In re*

7

*Johns-Manville Corp. (Manville II)*, 517 F.3d 52, 66 (2d Cir. 2008); *accord In re Dreier LLP*, 429 B.R. 112, 128 (Bankr. S.D.N.Y. 2010); *see also In re Cuyahoga Equip. Corp.*, 83 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate."). The third party claims to be released pursuant to the contemplated plan directly affect the *res* of the Debtors' estate in at least two independent ways. First, the non-debtor Ally entities have indemnification and contribution claims against the Debtors' estate on account of the third-party claims, thus directly affecting the *res* of the Debtors' estate. Second, the non-debtor Ally entities and the Debtors share certain insurance policies that provide coverage for the third-party claims to be released. The proceeds from these policies are an asset of the Debtors' estate, and allowing the third-party claims to continue would diminish that asset.

### 1. The Non-Debtor Ally Entities Have Indemnification Claims Against the Estate Based on the Claims Covered By the Third-Party Release.

Courts in this district have consistently held that "a bankruptcy court has 'related to' jurisdiction over non-debtor litigation if the estate is obligated to indemnify or contribute to the losing party." *In re Amanat*, 338 B.R. 574, 579 (Bankr. S.D.N.Y. 2005); *accord In re FairPoint Commc'ns, Inc.*, 452 B.R. 21, 29 (S.D.N.Y. 2011); *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332-224 (S.D.N.Y. 2003); *In re Masterwear Corp.*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999) ("In litigation involving non-debtors, 'relatedness' often turns on the estate's obligation to indemnify the losing party. Where the obligation to indemnify is contractual and absolute, the third party litigation is 'related to' the bankruptcy case.").

The Debtors are contractually obligated to indemnify the non-debtor Ally entities for losses incurred in defending against the claims covered by the contemplated third-party release.

8

First, the contemplated third-party release would release claims related to the Debtors' businesses. The Debtors are obligated to indemnify the non-debtor Ally entities for all of those claims—including the Federal Home Loan Banks' claims and Credit Suisse's potential claims against Ally Securities—pursuant to ResCap's Operating Agreement. That agreement states that "ResCap will, to the fullest extent permitted by law, indemnify, defend and hold harmless" the non-debtor Ally entities "from and against any losses related to ResCap Indemnifiable Liabilities," which are "Liabilities that relate to, arise out of or result principally from" the "businesses and operations ... of ResCap or its Subsidiaries." Operating Agreement §§ 1, 3(c). Second, the Debtors are obligated to indemnify Ally Securities for claims against it pursuant to the Underwriting Agreements executed in conjunction with the Debtors' RMBS offerings. In light of the Debtors' contractual indemnification obligations to the non-Debtor Ally entities, the third-party claims will affect the *res* of the Debtors' estate—and the Court therefore has jurisdiction to grant the contemplated third-party release.

Credit Suisse argues that the Court lacks jurisdiction here because, "as in *Pacor*, any such [impact on the *res* of the Debtors' estate] would require yet another separate action by Ally against ResCap." Credit Suisse Objection at 8; *see also Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984). That argument misstates *Pacor* and mischaracterizes the law in the Second Circuit. In *Pacor*, the Third Circuit held that the bankruptcy court did not have jurisdiction over a third-party claim against a non-debtor because the non-debtor would have "to bring an entirely separate proceeding to receive indemnification" from the debtor. 743 F.2d at 995. *Pacor* contrasted the third-party claim at issue in that case—involving a debtor that had not "agreed to indemnify" the non-debtor defendant—with a case involving a third-party claim against a non-debtor defendant who had a contractual right to indemnification from the debtor. *Id.* As *Pacor*

9

explained: "By virtue of the indemnification agreement between [the debtor] and [the non-debtor defendant], a judgment in favor of the [third-party claimant] on the guarantee action [against the non-debtor defendant] would automatically result in indemnification liability against [the debtor]"—and therefore the third-party claim would affect the bankruptcy estate. *Id.* (discussing *In re Brentano's*, 27 B.R. 90 (Bankr. S.D.N.Y. 1983)). Courts in this circuit have similarly found that bankruptcy courts have jurisdiction over third-party claims against a defendant with a contractual right to indemnification from the debtor. *See, e.g.*, *In re Ames Dep't Stores, Inc.,* 190 B.R. 157, 158 (S.D.N.Y. 1995); *In re River Ctr. Holdings, LLC*, 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003); *In re Masterwear Corp.*, 241 B.R. 511, 516 (Bankr. S.D.N.Y. 1999). Because Ally Securities has a contractual right to indemnification from the Debtors, pursuant to both the Operating Agreement and the Underwriting Agreements, this Court has jurisdiction over Credit Suisse's claims against Ally Securities.

Credit Suisse also argues that its claims against Ally Securities "would not have any effect on the estate" because "Credit Suisse and Ally [Securities] both have contractual indemnification claims against ResCap" so the "total claims against the estate will be the same." Credit Suisse Objection at 8-9. While the total claims may be the same, the creditors are different and their bases for recovery are different: Credit Suisse only has a claim for indemnification pursuant to the Underwriter Agreement; Ally Securities has claims pursuant to the Underwriter Agreements and the Operating Agreement. Those differences will impact "the handling and administration of the bankrupt estate" and "potential[ly] alter[] the liabilities of the estate"—and that is sufficient to establish this Court's jurisdiction over the third-party claim. *See In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 323 (S.D.N.Y. 2003); *see also In re*

10

*Kolinsky*, 100 B.R. 695, 702 (Bankr. S.D.N.Y. 1989) (noting that altering "the allocation of property among … creditors" is enough for jurisdiction).

### 2. The Debtors' Interest in Insurance Policies And Proceeds that Cover the Third-Party Claims Also Establishes Jurisdiction.

There is a separate and independent basis for this Court's jurisdiction over the third-party claims: the Errors & Omissions insurance policies that provide shared coverage to the Debtors and the non-Debtor Ally entities. As this Court has already found, those shared policies and proceeds are assets of the Debtors' estate. *See* July 10, 2012 Hr'g Tr. at 125:19-21; *see also In re Quigley Co.*, 676 F.3d 45, 53-54, 57 (2d Cir. 2012); *In re Johns-Manville Corp.*, 600 F.3d 135, 152 (2d Cir. 2010) (per curiam); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988); *In re 1031 Tax Grp., LLC*, 397 B.R. 670, 677-78 (Bankr. S.D.N.Y. 2008) (Glenn, J.). As the Court further held, the shared insurance "is a wasting policy, meaning that every dollar spent of policy proceeds reduces the amount available for claims by the debtors." July 10, 2012 Hr'g Tr. at 138:7, 8-10; *see also In re Quigley*, 676 F.3d at 53, 58. If the third-party claims against the non-Debtor Ally entities were not released, the shared insurance policies and proceeds would be depleted, in turn reducing an asset of the Debtors' estate. *See* July 10, 2012 Hr'g Tr. at 125:19-21; *see also In re Quigley*, 676 F.3d at 53, 58. This Court, therefore, has jurisdiction over the third-party claims in order to grant the third-party release. *See id*. at 58 (holding that bankruptcy court had jurisdiction over third-party claims against a non-debtor because the non-debtor defendant shared insurance policies and proceeds with the debtor).

### B.    The Third-Party Release Is Appropriate Because Ally Has Provided and Will Provide Substantial Consideration That Is Essential to the Debtors' Plan.

Credit Suisse asserts that the third-party release is not justified here because the parties have not satisfied *Metromedia*'s "four minimum conditions that must be met for a third-party release to be acceptable." Credit Suisse Objection at 9 (citing *In re Metromedia Fiber Network,*

11

*Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005)). Credit Suisse's argument is premised on a gross mischaracterization of the law. In *Metromedia*, the Second Circuit did not articulate "four minimum conditions," as Credit Suisse asserts. Instead, *Metromedia* merely provided examples of "when … Courts have approved nondebtor releases"—and the Second Circuit expressly cautioned that the analysis "is not a matter of factors and prongs." 416 F.3d at 142. Indeed, *Metromedia*'s progeny have confirmed as much, approving third-party releases even if some of the "minimum conditions" are not satisfied. *See, e.g.*, *In re Charter Commc'ns*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009); *In re XO Commc'ns, Inc.*, 330 B.R. 394, 413 (Bankr. S.D.N.Y. 2005).

In this Circuit, as *Metromedia* explained, third-party releases are justified in those "truly unusual circumstances" where the non-debtor beneficiary of the release provides substantial consideration "render[ing] the release terms important to success of the plan." *In re Metromedia*, 416 F.3d at 142-43. In several cases, courts in the Second Circuit have found third-party releases to be "important" where the non-debtor provided the estate with substantial consideration that, in the context of the case, was indispensable to the success of the debtor's restructuring. For example, in *In re Charter Communications*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009), the court approved a third-party release benefiting a non-debtor who voluntarily contributed "substantial financial and non-financial consideration" that "confer[red] billions of dollars in value [to the estate]." *Id.* at 258-59. In addition to a financial contribution, the non-debtor also voluntarily agreed to undertake actions—which "no other party" could have done—that were essential to the debtor's plan. *Id.* at 259. Similarly, in *In re Karta Corp.*, 342 B.R. 45 (S.D.N.Y. 2006), the court granted a third-party release to a non-debtor who provided operations and support on which the debtors relied given the "unique character" of their business. *Id.* at 55-56. The court considered it "beyond dispute" that the third-party releases were essential to the plan because, without the

12

non-debtors' "significant contributions" to the estate, the debtors could not "fund the Plan or comply with other Plan obligations, and the Plan [would] unravel." *Id.* at 54-55.[4]

Here, Ally has provided—and has agreed to continue providing—substantial consideration that is critical to the Debtors' successful restructuring. First and foremost, Ally has agreed to pay a total of $2.1 billion to the Debtors' estate, comprised of $1.95 billion in cash from Ally and $150 million to come from Ally's D&O and E&O insurance policies. Ally also served as the stalking horse bidder for the Debtors' portfolio of held-for-sale mortgage loans; provided DIP financing of $220 million that no other entity would offer; supported certain pension obligations; provided certain shared services during the bankruptcy proceedings and on a transition basis to the buyer of the Debtors' assets; provided funding and services—when no other entity would step forward—that have allowed the Debtors to continue originating mortgage loans during their bankruptcy; and permitted the Debtors to use Ally Bank's portfolio of loans to satisfy its obligations to the DOJ. Far from the type of routine concessions that "creditors have to [make] in every chapter 11 case," *In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010), Ally's staggering contributions have conferred "billions of dollars in value" on the estate and must be considered "very substantial consideration in a rare restructuring context." *In re Charter Commc'ns*, 419 B.R. at 259.

Ally's contributions to the estate throughout this bankruptcy proceeding are also essential to the success of the Debtors' Plan. In particular, Ally agreed to provide $2.1 billion to the estate—a sum that would enable meaningful distributions to the estate's creditors and ultimately led to a settlement amongst the Debtors' largest constituencies. Further, Ally provided funding so that the Debtors could continue originating mortgages—a task that no previous debtor has

---

[4] *See also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 268 (Bankr. S.D.N.Y. 2007); *In re XO Commc'ns, Inc.*, 330 B.R. 394, 437-40 (Bankr. S.D.N.Y. 2005).

13

done, and one the Debtor would not have been able to do absent Ally's contribution. The Debtors' ability to continue mortgage origination was essential to preserving the value of the estate and achieving successful asset sales. Indeed, if Ally had not agreed to provide this funding and the Debtors were unable to continue originating mortgages, they would have been unable to continue their mortgage servicing business, greatly decreasing the value of the estate.

In sum, this case presents precisely the "unusual circumstances" that warrant a third-party release. These bankruptcy cases are the first time that a subsidiary of a bank holding company has filed for bankruptcy as a going concern, and the first time that a mortgage originator and servicer has been able to continue operations during bankruptcy and ultimately sell its assets as a going concern—all because of Ally's support. These cases are a rare instance in which the Federal Reserve and the FDIC have closely monitored bankruptcy proceedings—and Ally helped navigate those issues. And this is the first case in which a parent entity provided more than $2 billion in cash to an estate, providing meaningful recoveries for the Debtors' key constituents. Ally's substantial consideration has been—and will continue to be—essential to the Debtors' ability to consummate a plan. The truly unique circumstances of this case—including the fact that Ally is 74% owned by the United States Treasury, and thus the American taxpayers—and the substantial consideration that Ally has provided the Debtors' estate justify a third-party release. *See, e.g.*, *In re Metropolitan 885 Third Avenue Leasehold, LLC*, 2010 WL 6982778, at *11 (Bankr. S.D.N.Y. 2010) (granting third-party release where non-debtors' consideration facilitated the debtors' business objectives and was "essential to the success of the Plan"); *Charter*, 419 B.R. at 258, 260 (noting essential nature of non-debtors' consideration as "unusual circumstance[]" justifying third-party release); *XO Commc'ns*, 330 B.R. at 439-40 (non-debtor's

14

voluntary consent to resolve certain litigation necessary for success of plan was "unique circumstance[]" warranting third-party release).

## CONCLUSION

For the foregoing reasons, Ally respectfully requests that the Court authorize the Debtors' entry into the PSA.

June 24, 2013  
New York, New York

_s/ Ray C. Schrock___  _____  
Richard M. Cieri  
Ray C. Schrock  
Noah Ornstein  
KIRKLAND & ELLIS LLP  
601 Lexington Avenue  
New York, New York 10022  
Telephone: (212) 446-4800  
Facsimile: (212) 446-4900

- and -

Jeffrey S. Powell  
Daniel T. Donovan  
Judson D. Brown  
KIRKLAND & ELLIS LLP  
655 15th Street, N.W., Ste. 1200  
Washington, D.C. 20005  
Telephone: (202) 879-5000  
Facsimile: (202) 879-5200

*Counsel to Ally Financial Inc.*

15