**DECHERT LLP**
Glenn E. Siegel
Craig P. Druehl
James O. Moore
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**MORGAN, LEWIS & BOCKIUS LLP**
James L. Garrity, Jr.
John C. Goodchild, III (*pro hac vice*)
101 Park Avenue
New York, New York 10178-0600
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel to Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALSTON & BIRD LLP**
Martin G. Bunin
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

**SEWARD & KISSEL LLP**
Dale C. Christensen, Jr.
Thomas Ross Hooper
Benay L. Josselson
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to Law Debenture Trust Company of New York, as Separate Trustee of Certain Mortgage-Backed Securities Trusts*

**ALLEN & OVERY LLP**
John Kibler
1221 Avenue of Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

*Counsel to HSBC Bank USA, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 12-12020 (MG)** |
| | ) | |
| **RESIDENTIAL CAPITAL, LLC, *et al.*,** | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |

**OMNIBUS REPLY OF CERTAIN RMBS TRUSTEES TO RESPONSES
TO THE DEBTORS' MOTION FOR AN ORDER UNDER BANKRUPTCY
CODE SECTIONS 105(a) AND 363(b) AUTHORIZING THE DEBTORS
TO ENTER INTO AND PERFORM UNDER A PLAN SUPPORT
AGREEMENT WITH ALLY FINANCIAL INC., THE CREDITORS'
<u>COMMITTEE, AND CERTAIN CONSENTING CLAIMANTS</u>**

**TO:   THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE**

## TABLE OF CONTENTS

**Page**

REPLY ................................................................................................................................. 2

THE RESPONSES............................................................................................................... 5

I.  THE AAM LIMITED OBJECTION. ................................................................... 5

II.  THE MONOLINES' OBJECTIONS ................................................................... 11

    A.  THE ASSURED LIMITED OBJECTION ........................................... 12

    B.  THE SYNCORA OBJECTION............................................................ 16

III.  THE NCUAB OBJECTION AND RESERVATION OF RIGHTS ................................ 17

IV.  THE UNITED STATES TRUSTEE
    OBJECTION AND RESERVATION OF RIGHTS........................................ 18

V.  THE MONARCH/STONEHILL RESERVATION OF
    RIGHTS AND THE FREDDIE MAC JOINDER THERETO........................ 19

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*Amer. Int'l Specialty Lines, Ins. Co., et al. v. Towers Fin. Corp., et al.*,
    198 B.R. 55 (S.D.N.Y. 1996) ...................................................................................................13

*Carver v. Beecher (In re Carver)*,
    144 B.R. 643 (Bankr. S.D.N.Y. 1992) ....................................................................................14

*In re Kolinsky*,
    100 B.R. 695 (S.D.N.Y. 1989) ................................................................................................13

*In re Titan Energy, Inc.*,
    837 F.2d 325 (8th Cir. 1988) ..................................................................................................13

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984) ...................................................................................................13

*Trager v. IRS (In re North Star)*,
    146 B.R. 514 (Bankr. S.D.N.Y. 1992) ....................................................................................13

*Walnut Place LLC* v. *Countrywide Home Loans, Inc.*,
    35 Misc.3d 1207(A), 2012 WL 1138863 (Sup. Ct. N.Y. Cnty. Mar. 28, 2012), *aff'd*,
    948 N.Y.S.2d 580 (1st Dep't. 2012) .......................................................................................14

STATUTES

28 U.S.C. § 157(b)(2) ...................................................................................................................13

11 U.S.C. § 502 .............................................................................................................................13

11 U.S.C. § 509 .............................................................................................................................13

11 U.S.C § 503(b) .........................................................................................................................18

The Bank of New York Mellon, The Bank of New York Mellon Trust Company,

N.A. (collectively, "**BNY Mellon**"), Deutsche Bank National Trust Company and Deutsche

Bank Trust Company Americas (together, "**Deutsche Bank**"), U.S. Bank National Association

("**U.S. Bank**"), Wells Fargo Bank, N.A. ("**Wells Fargo**"), HSBC Bank USA, N.A. ("**HSBC**"),

and Law Debenture Trust Company of New York ("**Law Debenture**"),[1] each in their respective

capacities as a Trustee[2] for certain RMBS Trusts (collectively, the "**RMBS Trustees**"), by and

through their undersigned counsel, hereby file this reply (the "**Reply**") to certain responses[3] to

---

[1]   For certain mortgage-backed securities trusts for which Wells Fargo serves as RMBS Trustee, Law Debenture
      was appointed Separate Trustee, pursuant to orders dated November 7, 2012 and November 8, 2012 (the
      "**Minnesota Orders**") issued by the District Court, Fourth Judicial District, State of Minnesota.  As Separate
      Trustee, Law Debenture is authorized, among other things, to pursue the claims covered by the RMBS
      Settlement Agreements.  Each of Wells Fargo and Law Debenture joins in this Reply to the extent of their
      respective obligations as Trustee or Separate Trustee under the Instruments of Appointment and Acceptance
      attached to the Minnesota Orders.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the PSA Motion or the
      Joinder.

[3]   *Objection and Reservation of Rights of National Credit Union Administration Board to Debtors' Motion for
      and Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and
      Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain
      Consenting Claimants* [Docket No. 4020] (the "**NCUAB Objection and Reservation of Rights**"), *Limited
      Objection to Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the
      Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors'
      Committee and Certain Consenting Claimants* [Docket No. 4008] (the "**AAM Limited Objection**"),
      *Reservation of Rights with Respect to Debtors' Motion for an Order under Bankruptcy Code Sections 105(a)
      and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally
      Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 4023] (the
      "**Monarch/Stonehill Reservation of Rights**"), *Limited Objection and Reservation of Rights of Assured
      Guaranty Municipal Corp. with Respect to Motion for Order Authorizing Debtors to Enter into and Perform
      under Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain Consenting
      Claimants and to Joinder thereto Filed by Certain RMBS Trustees*  [Docket No. 4025] (the "**Assured Limited
      Objection**"), *Joinder of Federal Home Loan Mortgage Corporation to Monarch Alternative Capital LP and
      Stonehill Capital Management LLC's Reservation of Rights with Respect to Respect to Debtors' Motion for an
      Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform
      under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting
      Claimants* [Docket No. 4026] (the "**Freddie Mac Joinder**"), *Objection of Syncora Guarantee Inc. to Debtors'
      Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into
      and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain
      Consenting Claimants* [Docket No. 4028] (the "**Syncora Objection**") and *Limited Objection and Reservation of
      Rights of the United States Trustee to Debtors' Motion for and Order under Bankruptcy Code Sections 105(a)
      and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally
      Financial Inc., the Creditors' Committee and Certain Consenting Claimants* [Docket No. 4031] (the "**United
      States Trustee Limited Objection and Reservation of Rights**").

(i) the *Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "**PSA Motion**") for entry of an order substantially in the form attached as <u>Exhibit 1</u> (the "**Proposed Order**") to the *Notice of Filing of Revised Order Granting Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 4007] (the "**Notice of Revised Order**"), approving the Debtors' entry into and performance under a plan support agreement (the "**Plan Support Agreement**") among (a) the Debtors, (b) the Debtors' indirect parent, Ally Financial Inc., (c) the Committee and (d) certain Consenting Claimants, and (ii) the *Joinder of Certain RMBS Trustees to the Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3940] (the "**Joinder**") and the RMBS Trustee Declarations attached thereto in support of the Joinder, and respectfully state as follows:

**REPLY**

1.      The RMBS Trustees are trustees of over 1,000 RMBS Trusts with innumerable Investors who are affected by the Plan Support Agreement, the Term Sheet and the Supplemental Term Sheet (collectively the "**Agreement**"), and yet only six of the Investors in, or parties to, the RMBS Trusts have submitted responses to the PSA Motion. Most of those objections address issues that go beyond the Agreement and are more properly reserved to be heard in the context of confirmation of the Plan. All the remaining

objections that relate to the RMBS Trustees should be overruled for the reasons set forth herein.

2.       Because of the RMBS structure, these Chapter 11 Cases present a unique role for the RMBS Trustees, in that they are the parties through the RMBS Trusts that actually hold the RMBS Trust Claims against the Debtors and will vote on the Plan.  In light of these circumstances, the RMBS Trustees requested that the Court make specific findings (the "**Proposed Findings**") concerning their duties in entering into and performing under the Agreement.  The Proposed Findings are that (i) the Agreement and the RMBS Trustees' performance thereunder are in the best interests of, *inter alia*, the RMBS Trusts and the Investors, (ii) the RMBS Trustees acted reasonably, in good faith and in the best interests of the Investors and the RMBS Trusts in entering into the Agreement and (iii) the RMBS Trustees' notice of the Agreement, the RMBS Settlement and the FGIC Settlement Agreement was sufficient and effective in satisfaction of federal and state due process requirements and other applicable law to put the Investors and parties in interest in these Chapter 11 cases on notice of the Agreement, the RMBS Settlement and the FGIC Settlement Agreement.

3.       What is before the Court now in the context of the PSA Motion and with respect to the RMBS Trustees is whether the Proposed Order will give the RMBS Trustees the ability to know that, by entering into the Agreement and performing their obligations thereunder, they have acted (and will be acting) on behalf of each applicable RMBS Trust in accordance with their duties under the applicable Governing Agreements and applicable caselaw.  As set forth in the Joinder and herein, there is ample legal support for the RMBS

Trustees' authority to enter into and perform under the Agreement and for the Court's authority to make the Proposed Findings.

4.     The RMBS Trustees believe that the Agreement represents the best result for all Investors under the circumstances.  The RMBS Trustees have ensured a fair process (as reflected in the Agreement and the allocation methodology for RMBS Trust Claims (the "**RMBS Trust Allocation Protocol**") contemplated therein) that, when embodied in the Plan, will be in the best interests of the Investors in each RMBS Trust and each such RMBS Trust.  As opposed to individual Investors who bring their own biases to any allocation of the distributions on the RMBS Trust Claims, the RMBS Trustees have no incentive to favor one RMBS Trust over another and devised the RMBS Trust Allocation Protocol in an objective, neutral fashion.

5.     By investing in the RMBS Trusts, the Investors purchased securities that, by their nature, limit the Investors' ability to control the applicable RMBS Trust such that the Investors have no right of independent action.  The Governing Agreements for the RMBS Trusts generally give the Investors two courses of action: (i) act through the RMBS Trustee in accordance with that RMBS Trustee's reasonable judgment or (ii) direct the RMBS Trustee to take certain actions in accordance with the applicable Governing Agreements. *See, e.g.*, PSA Exemplar §§ 8.02(a)(iii), 11.03(b), 11.03(c); *see also* Indenture Exemplar, Indenture §§ 5.11, 6.01(f).  With respect to the first course of action, no group of Investors has previously challenged the RMBS Trustees' exercise of their duties.  Moreover, the Joinder and the RMBS Trustee Declarations attached thereto establish the legal and factual bases for the Court to ratify the RMBS Trustees' judgment in entering into the Agreement and performing the obligations thereunder.

6.      Regarding the second course of action, the RMBS Trustees have negotiated the Agreement so that it preserves and protects the Investors' rights to provide a direction in accordance with the applicable Governing Agreements to the applicable RMBS Trustee to withdraw from both executing the Agreement and agreeing to vote in favor of the Plan in respect of the applicable RMBS Trust.  The RMBS Trustees have acted appropriately in entering into the Agreement that both preserves the right of individual RMBS Trusts to direct the RMBS Trustees and includes the RMBS Trust Allocation Protocol, which will apply to all RMBS Trusts in a uniform, objective way.  The Court's entry of the Proposed Findings would mean that, as among the RMBS Trustees and the Investors in the applicable RMBS Trusts, the RMBS Trustees have satisfied all their duties under the applicable Governing Agreements and applicable law.

7.      Finally, it is both an express requirement of the Agreement and one of the Agreement's Milestones that the order approving the Agreement contain findings reasonably acceptable to the RMBS Trustees.  Should the Court not make the Proposed Findings, the RMBS Trustees no longer will be bound by the Agreement to vote in support of the Plan, putting at risk whether the Plan Proponents can proceed with the Plan at all.

## THE RESPONSES

## I.      The AAM Limited Objection

8.      Amherst Advisory & Management LLC ("**AAM**"), which purports to be an investment manager for Investors in one of the RMBS Trusts, RALI Series 2006-QO7, objects to the PSA Motion on various grounds.  First, AAM objects to the manner in which the Total Claim Amount is to be allocated among the RMBS Trusts.  *See* AAM Limited Objection ¶¶ 6-10.  Specifically, AAM complains of a lack of adequate information regarding the RMBS Trust Allocation Protocol, and that outside professionals have the

- 5 -

authority to direct claim allocation without input from the RMBS investors.  Both objections

are misplaced and should be overruled.  As an initial matter, given the large number of

Investors, the RMBS Trustees required that the PSA Motion be served on not less than

37 days' notice to give Investors an adequate opportunity to consider the relief requested in

the PSA Motion and make objections thereto.

9.     The RMBS Trustees note that the proposed claim allocation methodology in

the Original Settlement Agreement[4] allocated the Total Claim Amount *pro rata* among the

Original Settling Trusts (as defined in the Supplemental Term Sheet) on the basis of net

expected lifetime losses (the "**Original Claim Allocation Methodology**").  Two Investors

in the Original Settling Trusts, including AAM [Docket No. 2297] ("**AAM RMBS 9019**

**Objection**"), filed objections to the RMBS 9019 Motion and the Original Settlement

Agreement, the crux of which was that the Original Claim Allocation Methodology failed to

take into account the unique characteristics of the RMBS Trusts and inappropriately used

net losses as a proxy for viable Repurchase Claims.  *See* AAM RMBS 9019 Objection ¶ 6.

10.    Separate and apart from the objection of AAM, after careful consideration of

relevant factors and analysis, Duff & Phelps[5] suggested to the RMBS Trustees that the

Original Claim Allocation Methodology be modified to provide that the Total Claim

Amount be allocated *pro rata* based on differences among the RMBS Trusts in the

incidence of breaches of representations and warranties, as revealed by loan sampling and

statistical work performed by Duff & Phelps (the "**Revised Claim Allocation**

**Methodology**").

---

[4]    The Original Settlement Agreement was the subject of the RMBS 9019 Motion [Docket No. 320, as amended
and supplemented by Docket Nos. 1176 and 1887].

[5]    Duff & Phelps, LLC ("**Duff & Phelps**") was retained by the RMBS Trustees to assist them in the Chapter 11
Cases, including in the identification, quantification, litigation and/or resolution of the RMBS Trust Claims.

11.     After lengthy discussions with the Steering Committee Consenting Claimants and the Debtors, as well as a January 18, 2013 meeting with various parties in interest which had objected to the RMBS 9019 Motion,[6] including AAM, the Revised Claim Allocation Methodology was accepted and is now part of the RMBS Trust Allocation Protocol in the Supplemental Term Sheet.  *See* Supplemental Term Sheet, Schedule A to Annex III.  Based on the advice of Duff & Phelps, the RMBS Trustees believe that the RMBS Trust Allocation Protocol will result in a fair and reasonable allocation of the Total Claim Amount among all of the RMBS Trusts.

12.     In its simplest terms, based on Duff & Phelps' sampling and re-underwriting of over 6,500 loan files provided by the Debtors,[7] the Revised Claim Allocation Methodology consists of (a) determining cohort-level breach rates for each of twenty-four separate loan cohorts; (b) utilizing those breach rates to estimate (i) the amount of the realized and projected losses associated with breaches of representations and warranties ("**Breach Losses**") suffered by all of the RMBS Trusts and (ii) the Breach Losses suffered by each RMBS Trust; (c) determining each RMBS Trust's percentage share of the aggregate Breach Losses ("**Claim Share**"); and (d) using each RMBS Trust's Claim Share to allocate the Total Claim Amount among the RMBS Trusts *pro rata* based on its share of the aggregate Breach Losses.

---

[6]     The participants in that January 18, 2013 meeting were subsequently provided with an additional information summary prepared by Duff & Phelps providing detail on the sampling protocol addressed in the Revised Claim Allocation Methodology.

[7]     In its analysis, Duff & Phelps classified the loans it sampled into twenty-four cohorts (or groups of loans) by product type and vintage, sampled a statistically significant number of loans within each cohort, and developed a breach, or exception, rate for each of the cohorts.  Duff & Phelps is in the process of completing additional sampling and analysis in connection with the addition of the Additional Settling Trusts to the RMBS Settlement.

13.     The objection that AAM did not have the opportunity to provide material input into the claim allocation methodology, *see* AAM Limited Objection ¶ 7, is misplaced. AAM both filed the AAM RMBS 9019 Objection, in which it identified what it believed were flaws in the Original Claim Allocation Methodology, and subsequently met with the RMBS Trustees, Duff & Phelps and other parties in interest in January 2013 to discuss its views and the Revised Claim Allocation Methodology.  The Original Allocation Methodology, in fact, was revised at the suggestion of Duff & Phelps to account for the unique characteristics of the RMBS Trusts, which the RMBS Trustees believe addressed the substance of the AAM RMBS 9019 Objection.  That the Original Claim Allocation Methodology was not revised in the exact manner proposed by AAM, or that AAM believes that a different methodology would have benefited RALI Series 2006-Q07 (to the detriment of one or more other RMBS Trusts), is not a fair or reasonable objection.

14.     The objection that Duff & Phelps has "unchecked power" under the Revised Claim Allocation Methodology to allocate the Total Claim Amount among the RMBS Trusts, *see* AAM Limited Objection ¶ 7, is also without basis.  The allocation of the Total Allowed Claim will be determined under the RMBS Trust Allocation Protocol, including the Revised Claim Allocation Methodology, which is the result of a review of over 6,500 loan files and statistical analysis performed by an experienced, objective expert.  Unlike the Investors in any particular RMBS Trust, e.g., AAM's investors, who are motivated by their own self-interests to allocate as much of the Total Claim Amount to RALI Series 2006-QO7, there is no suggestion, nor can there be, that the RMBS Trustees or Duff & Phelps acted out of any self-interest or was not objective in its analysis.

15.     The objection that the Revised Claim Allocation Methodology is a "rough proxy of actual RMBS Trust claim amounts," *see* AAM Limited Objection ¶ 10, and based on a certain amount of estimation, *id.* ¶ 7, simply reflects the reality of the situation.  Based on Duff and Phelps' conservative estimate of two hours per loan to review both the loan file and governing documents and to determine whether there is a breach of the representations and warranties, a review of all 1.6 million loans in the Original Settling Trusts (not even considering the Additional Settling Trusts (as defined in the Supplemental Term Sheet)) would take a team of eight analysts approximately 50 years of non-stop work day and night every day of the week.  In other words, the cost and time of doing what AAM did for one RMBS Trust would not be possible for the over 1,000 RMBS Trusts that are affected by the Agreement.  In this way, the AAM Limited Objection seeks to impose an unfair standard that would favor those Investors with significant resources to conduct their own review over those Investors who do not have the same resources.

16.     When performing its loan file review, Duff & Phelps allocated the Total Claim Amount among the RMBS Trusts and considered a number of uncertain and unknown factors, including the amount of future losses suffered by the RMBS Trusts and whether those losses (as well as past losses) are associated with breaches of representation and warranties.  Any estimation therefore is subject to some degree of uncertainty; however, in its objection, AAM greatly understates the depth of Duff & Phelps' analysis.  AAM incorrectly asserts that "calculation of the Exception Rate… is based not on identification of actual breaches of representations and warranties under the underlying transaction documentation."  AAM Limited Objection ¶ 9.  In fact, Duff & Phelps has spent almost a full year of both reviewing the underlying transaction documents to determine what

constitutes breaches of representations and warranties and conducting a loan review of over 6,500 loans for deviation from the underlying guidelines.

17.     AAM also asserts that each RMBS Trust "ideally" would be provided with the amount of its recovery under the RMBS Settlement before the Investors have the right to direct RMBS Trusts to opt out of the Agreement.  *See* AAM Limited Objection ¶ 8.  The actual amount that each RMBS Trust will receive under the RMBS Trust Allocation Protocol has not been finally determined and would not, in any event, provide any useful information for an Investor to determine whether the RMBS Trust Allocation Protocol, including the Revised Claim Allocation Methodology, is fair.

18.     Because the Total Claim Amount is a fixed amount that must be allocated among the Settling Trusts, an Investor or RMBS Trust has no ability to negotiate its allocable share of the Total Claim Amount, either absolutely or relative to other Settling Trusts.  Any objection to allocation must necessarily be to the manner in which an RMBS Trust's allocable share of the Total Allowed Claim was calculated under the RMBS Trust Allocation Protocol, which has been disclosed and described in the Supplemental Term Sheet. If the RMBS Trust Allocation Protocol, including the Revised Claim Allocation Methodology, is fair and equitable, then the allocable amount to each RMBS Trust it generates also will be fair and equitable, and there is no beneficial purpose served in providing the actual amounts of recoveries to Investors in advance of distribution.  As evidenced by the RMBS Trustee Declarations, the methodology that is the basis for the RMBS Trust Allocation Protocol is fair and equitable to all RMBS Trusts.  Major Decl. ¶¶ 31-36; Meyer Decl. ¶¶ 31-36; Acebedo Decl. ¶¶ 15-17; Musarra Decl. ¶¶ 24-32; Scott Decl. ¶¶ 29-32.

19.     AAM also objects to the fees for counsel to the Institutional Investors.  AAM Objection ¶¶ 13-14.  The RMBS Trustees clarify that such fees will be equal to 5.7% of amount of the *distributions* on allowed RMBS Trust Claims, not the amount of the allowed claims themselves.  Counsel to the Institutional Investors has played an integral role in these Chapter 11 Cases, at times instigating negotiations that would embody the Agreement.  The fees for counsel to the Institutional Investors are just one component of the Agreement, the negotiations of which are covered by the confidentiality restrictions imposed by the *Order Appointing Mediator* [Docket No. 2519].

20.     AAM further contends that the Debtors should set aside Trust Units for disputed RMBS Trust Claims.  AAM Objection ¶ 15.  Needless to say, this is an issue for confirmation and not pertinent to the relief requested in the PSA Motion.  Regardless, to the extent to which an RMBS Trust that elects to opt out of the Agreement seeks a reserve for its claim, nothing in the Agreement precludes such RMBS Trust from seeking such relief from the Total Allowed Claim.

## II.     The Monolines' Objections

21.     As a preliminary matter with respect to both the Assured Limited Objection and the Syncora Objection (collectively, the "**Monolines' Objections**"), the RMBS Trustees want to make clear that Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("**Assured**") and Syncora Guarantee Inc. ("**Syncora**") are both Monolines whose only concern should be how the Monolines collectively are proposed to be treated under the Agreement.  The Agreement provides that Assured and Syncora will receive the same treatment as the other Monolines.  Assured's and Syncora's relative positions vis-à-vis the RMBS Trusts (whether insured, uninsured or partially insured) are irrelevant because the Agreement proposes a recovery for the Monolines that is separate and apart from the

recovery on the RMBS Trust Claims.  To the extent that the RMBS Trustees owe any duty

whatsoever to Assured, Syncora and the other Monolines, the RMBS Trustees discharged it

by allowing the Monolines to assert non-competing claims directly against the Debtors.

      **A.**    ***The Assured Limited Objection***

22.     Assured objects to a certain provision of the Supplemental Term Sheet,

annexed as Exhibit B to the Agreement, which provides that any RMBS Trust that has an

insurance policy with a Monoline (other than FGIC) reserves the ability to enforce its rights,

in the Bankruptcy Court or otherwise, against that Monoline to the extent that such

Monoline does not perform in accordance with an insurance policy for the benefit of such

RMBS Trust and its Investors (the "**Monoline Reservation**").  *See* Assured Limited

Objection ¶¶ 3-8.

23.     The Monoline Reservation preserves the rights of the insured RMBS Trusts

(the "**Wrapped Trusts**") to assert rights of disallowance and subordination against the

Monolines as co-obligors of the Debtors in connection with liability to the Wrapped Trusts.

Sensibly, the Monoline Reservation reserves the rights of the Wrapped Trusts to assert such

arguments until such a time, if ever, that these trusts suffered a loss because of a future

Monoline default.  The Monoline Reservation anticipates the jurisdiction of this Court

because, as explained in the succeeding paragraphs, many of the issues arise under the

Bankruptcy Code.  In the event of litigation, the defaulting Monoline would be free to fully

defend the claims made by the affected Wrapped Trust.  Thus, costly and uncertain litigation

was avoided with a full reservation of rights for all parties.

24.     With respect to the Monoline Reservation, Assured contends that the Court

lacks jurisdiction over any dispute between a Wrapped Trust and Assured.  Because the

Debtors are not the beneficiaries under the insurance policies, Assured argues, disputes

between a Wrapped Trust and Assured "will have no 'conceivable effect' on the case."
Assured Objection ¶ 5. The RMBS Trustees disagree with these assertions.

25.    First, actions by a Wrapped Trust against Assured (or other Monolines, for
that matter) that seek to resolve claims against the Debtors' estates, including the RMBS
Trust Claims, are core proceedings pursuant to 28 U.S.C. § 157(b)(2). *See* Joinder ¶ 5.[8]
Second, even if the Court were to find that such actions are non-core proceedings, Assured
misconstrues the effect disputes between an RMBS Trust and Assured would have on the
Debtors' estates. For a bankruptcy court to assert jurisdiction over a proceeding that is
"related to" a case under Title 11, such proceeding must satisfy the "conceivable effects"
test. *See* Joinder ¶ 5; *see also Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) ([A]
civil proceeding is related to bankruptcy [if] . . . the outcome of that proceeding could
conceivably have any effect on the estate being administered in bankruptcy.). A bankruptcy
court may also assert "related to" jurisdiction over proceedings involving third parties "[i]f a
resolution of [the] action . . . would affect the amount of property available for distribution
to the creditors of a bankruptcy estate or the allocation of property among such creditors...."
*In re Kolinsky*, 100 B.R. 695, 702 (S.D.N.Y. 1989).[9]

---

[8]    For example, an insured RMBS Trust may seek to disallow the contingent portions of, and subordinate the
remainder of Assured's proofs of claim against the Debtors pursuant to sections 502 and 509 of the Bankruptcy
Code, respectively.

[9]    *See also In re Titan Energy, Inc.*, 837 F.2d 325, 329-30 (8th Cir. 1988) (bankruptcy court had jurisdiction over
claims by non-debtor against insurance company because recovery against insurance company would reduce
liabilities of bankruptcy estate); *Amer. Int'l Specialty Lines, Ins. Co., et al. v. Towers Fin. Corp., et al.*, 198 B.R.
55, 62 (S.D.N.Y. 1996) (holding that a proceeding to determine plaintiff-insurers' rights and obligations under
insurance policies could have conceivable effect on bankruptcy estate given that extent of coverage could
reduce the amount of damage claims lodged against the estate, and if coverage were lacking, indemnification
obligations would arise that would reduce creditor recoveries); *Trager v. IRS (In re North Star),* 146 B.R. 514,
516 (Bankr. S.D.N.Y. 1992) (An action between nondebtors is "related to a bankruptcy case if its outcome
would affect the amount of property available for distribution to the creditors of the bankruptcy estate or the
allocation of property among such creditors, or if resolution of the action would alter the debtor's rights or
liabilities . . . ."); *Carver v. Beecher (In re Carver)*, 144 B.R. 643, 646 (Bankr. S.D.N.Y. 1992) (jurisdiction
proper where resolution of proceeding reduced an unsecured creditor's claim against debtor thereby increasing
distribution to other unsecured creditors).

26.     There is no question that actions initiated by Wrapped Trusts for the purpose of enforcing its rights against Assured or other Monolines would affect the liability of the Debtors' estates or the allocation of such recovery.  Proceedings initiated by a Wrapped Trust to reduce Assured's claims against the Debtors, for example, would increase distributions to other creditors.  Therefore, even though the Debtors are not the direct beneficiaries of the applicable insurance policies, the outcome of a dispute between the RMBS Trusts and the Monolines could affect the amount and distribution of proceeds of the Debtors' estates.  As a result, the Court has jurisdiction over disputes between Wrapped Trusts and Assured.

27.     Assured also argues that the RMBS Trustees "greatly exaggerate their rights in connection with RMBS trusts that are insured."  Assured Objection ¶ 9.  The RMBS Trustees disagree entirely with Assured's appraisal of the facts.  Contrary to Assured's argument and pursuant to both the Governing Agreements and the case law cited in the Joinder, there can be no doubt that the applicable RMBS Trustee has the power to enforce, and accordingly to settle, any of the RMBS Trust Claims.  *See* Joinder ¶¶ 10-16.[10]

28.     In fact, by stating that "[Assured] has the sole rights to enforce the noteholders' rights with respect to the Debtors," it is Assured that greatly exaggerates its rights.  *See* Assured Objection ¶ 9.  In support of its argument that the RMBS Trustee "appoints [Assured] as agent and attorney-in-fact for the Indenture Trustee and each such Noteholder in any legal proceeding with respect to the Obligations," Assured fails to acknowledge that the "Obligations" are those of the Trust and not the Debtors.  Assured

---

[10]   *See also Walnut Place LLC* v. *Countrywide Home Loans, Inc.*, 35 Misc.3d 1207(A), 2012 WL 1138863, at *4-6 (Sup. Ct. N.Y. Cnty. Mar. 28, 2012) (establishing that the RMBS Trustee and not the certificateholders has the right to bring repurchase claims against a seller of loans into an RMBS securitization), *aff'd*, 948 N.Y.S.2d 580, 581 (1st Dep't. 2012).

cites to a certain Notice of Claim and Certificate (the "**Notice of Claim and Certificate**")

attached as Exhibit A to Endorsement No. 1 to the insurance policy attached as Exhibit A to

the Declaration of Jeffrey Chubak [Docket No. 4029].  *See id.*  Endorsement No. 1 defines

the "Obligations" as the Trust's obligations to Investors, and defines the Trust itself as the

"Obligor."  Thus, the Notice of Claim and Certificate does not implicate the noteholders'

rights against the Debtors.  Moreover, the Notice of Claim and Certificate defines

"Insolvency Proceedings" as "any proceeding by or against the Obligor." *See* Notice of

Claim and Certificate § (vi).  Because the RMBS Trusts, the Obligors, are not Debtors, the

language Assured cites is not applicable in these Chapter 11 Cases.  Finally, the Notice of

Claim and Certificate is simply a copy of an unsigned sample form, and Assured offers no

evidence that it has ever received a signed copy of the same document by any of the RMBS

Trustees.  As a result, Assured has failed to establish that any RMBS Trustee is bound by

the Notice of Claim and Certificate.

29.     Assured attempts to support its argument that it has the sole right to enforce

the Investors' rights with respect to the Debtors by citing to section 5.11 of the Indenture

annexed as Exhibit B to the Chubak Declaration (the "**Assured Indenture**"), which,

Assured argues, "make[s] clear that Assured has the right to 'to direct … the Indenture

Trustee.'" *See* Assured Objection ¶ 9.  But Assured has never exercised such right.

30.     Section 6.01(f) of the Assured Indenture states, in relevant part:

> No provision of this Indenture shall require the Indenture Trustee to
> expend or risk its own funds or otherwise incur financial liability in the
> performance of any of its duties hereunder or in the exercise of any of
> its rights or powers, if it shall have reasonable grounds to believe that
> repayment of such funds or adequate indemnity against such risk or
> liability is not reasonably assured to it.

Further, the same section that Assured cites in its objection provides, in relevant part:

> [S]ubject to Section 6.01, the Indenture Trustee need not take any action that it determines (in its sole discretion) might involve it in liability or might materially adversely affect the rights of any Noteholders not consenting to such action, *unless the Trustee has received satisfactory indemnity from [Assured]* ...

Assured Indenture § 5.11 (emphasis added).

31.     Further, the RMBS Trustees ensured that the Agreement preserve the ability of the Investors in any RMBS Trust to provide a direction to withdraw that RMBS Trust's support of the Agreement. *See* Plan Support Agreement § 5.2(c); Joinder ¶ 33.  Assured cannot, and in fact, does not allege that it provided the RMBS Trustees with a valid direction with satisfactory indemnity.  As a result, Assured does not have the right to direct any proceeding in these Chapter 11 Cases.

### B.     *The Syncora Objection*

32.     Syncora contends that the Agreement is unclear as to the rights of partially Wrapped Trusts, i.e., RMBS Trusts that have insurance covering only a portion of the Investors' interests in such RMBS Trust, with the balance uninsured. *See* Syncora Objection at 10.  In the case of partially Wrapped Trusts, the uninsured tranches lose their right to an allowed claim to the extent that any recovery received by the Wrapped Trust would first flow to the Monoline that has made payments to the insured tranches under its insurance policy.  If, however, the insured tranches have not suffered any losses, and, as a consequence, the respective Monoline has not made any payments, any recovery to the RMBS Trust would flow to the uninsured tranches, to the extent that such tranches have suffered losses.  The RMBS Trust Allocation Protocol will be modified to reflect the above-referenced exception.

33.     Next, Syncora questions whether this Court has jurisdiction to enter the

Proposed Findings.  *See* Syncora Objection at 12-14.  As the RMBS Trustees explain in the

Joinder, this Court has jurisdiction to make the Proposed Findings because the inclusion of

those findings in the Proposed Order would reduce the probability that the Debtors' estates

would need to indemnify the RMBS Trustees for any liability resulting from the RMBS

Trustees' entry into the Agreement, as the Debtors are required to do.  *See* Joinder ¶ 7.

Here, the terms of the Governing Agreements are explicit that, in the event the RMBS

Trustees must defend themselves against any claim in connection with the exercise or

performance of any of their powers or duties under the Governing Agreements, the Debtors

are obligated to indemnify the RMBS Trustees against any loss, liability, or expense that is

incurred in connection therewith.  Accordingly, the Court maintains "related to" jurisdiction

to make the Proposed Findings.

34.     In addition, the Proposed Findings play an integral role in facilitating the

Agreement because, absent those findings, the RMBS Trustees would not have entered into

the Agreement.  As a result, this Court has jurisdiction to make the Proposed Findings.

## III.     The NCUAB Objection and Reservation of Rights

35.     Even though The National Credit Union Administration Board (the

"**NCUAB**") fails to indicate that it is an Investor with any stake in the Proposed Findings,

the NCUAB argues, among other things, that there is insufficient support in the PSA Motion

for the Proposed Findings.  *See*  NCUAB Objection at 13-15.  In the NCUAB Objection, the

NCUAB makes no reference to the RMBS Trustee Declarations, which, if considered,

provide a sufficient factual basis for the Proposed Findings.  The RMBS Trustee

Declarations provide ample evidence to support the Proposed Findings.  *See* PSA

Joinder ¶¶ 20, 25, 28, 34.  By describing the actions and involvement of the RMBS Trustees

throughout these Chapter 11 cases, the RMBS Trustee Declarations evidence that each RMBS Trustee has acted reasonably and in good faith in entering into the Agreement, and the Agreement is in the best interests of the RMBS Trusts and the Investors.

### IV.   The United States Trustee Limited Objection and Reservation of Rights

36.   In the United States Trustee Limited Objection and Reservation of Rights, Tracy Hope Davis, the United States Trustee for Region 2 (the "**United States Trustee**") objects, among other things, to certain agreements regarding classification and/or payments of claims for such things as professional fees and expenses of the RMBS Trustees. *See* United States Trustee Objection at 2.  The United States Trustee objects to such provisions being approved as part of the Agreement and contends that such classifications and provisions are not permissible under the Bankruptcy Code.  The payment of the RMBS Trustees' fees, however, is already authorized pursuant to the *Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "**Supplemental Servicing Order**") and the *Order under 11 U.S.C. §§ 105, 363, and 365, and Fed Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief*

- 18 -

[Docket No. 2246] (the "**Ocwen Sale Order**").  Pursuant to the terms of the Supplemental

Servicing Order, the Debtors remain obligated to pay the RMBS Trustees' fees and

expenses as administrative expense under section 503(b) of the Bankruptcy Code.  *See*

Supplemental Servicing Order ¶¶ 18- 22; *see also* Ocwen Sale Order ¶ 35C.  As a result,

provisions pertaining to payment of RMBS Trustees' fees and expenses are properly

included in the Agreement.

**V.**     **The Monarch/Stonehill Reservation of Rights and the Freddie Mac Joinder Thereto**

37.     The RMBS Trustees must reply to some inaccuracies within the

Monarch/Stonehill Reservation of Rights and, by association, the Freddie Mac Joinder

thereto.  The last paragraph of the Monarch/Stonehill Reservation of Rights states that the

Investors "reserve all rights to object to the 9019 Motion [to approve the FGIC Settlement

Agreement] and approval of the FGIC Settlement Agreement in the FGIC state

rehabilitation proceeding on any and all grounds (including that the Proposed PSA Findings

have no effect in such proceedings as agreed on the record of the June 17th conference)…"

Monarch/Stonehill Reservation of Rights at 4.  This statement, however, misrepresents what

was agreed to on the record of the June 17, 2013 status conference before this Court.

38.     First, as the Court made clear on the record, "the [RMBS] Trustees do not

contend that any findings that the Court makes in connection with the approval of the

[Agreement]…will have any preclusive effect in the [hearing on the Debtors' 9019 Motion

for approval of the FGIC Settlement Agreement], or in plan confirmation, with respect to

the good faith and best interests of the [RMBS] Trustees in entering into the [Agreement]

and supporting a plan that incorporates its terms."  Transcript of June 17, 2013 Status

Conference at 49:11-19.  The RMBS Trustees understand the Court to mean that the

Monarch/Stonehill Reservation of Rights does not extend to reserving rights to object to the

- 19 -

Agreement *in toto*, and that the Court will consider separately each and every condition subsequent to the Agreement as those matters arise before this Court.

39.    Further, the Court reiterated that its ruling on the Agreement was not intended to bind the Supreme Court of the State of New York that is overseeing the FGIC Rehabilitation Proceeding.  *Id.* at 39:21-22.  Thus, the Court left it to the Supreme Court of the State of New York to decide what effect to give to the Proposed Findings and any similar findings this Court might make with respect to the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, The FGIC Trustees and Certain Institutional Lenders* [Docket No. 3929], which is pending in this Court.

<u>**CONCLUSION**</u>

**WHEREFORE**, for the reasons set forth herein, the RMBS Trustees request that the Court overrule the Objections, approve the Agreement and enter the Proposed Order substantially in the form attached to the Notice of Revised Order as <u>Exhibit 1</u>, and grant such other and further relief as the Court deems appropriate.

*[The remainder of this page is intentionally left blank; signature page follows.]*

- 20 -

Dated:  New York, New York
      June 24, 2013

| | |
|---|---|
| **DECHERT LLP** | **MORGAN, LEWIS & BOCKIUS LLP** |
| By:  /s/ Glenn E. Siegel | By:  /s/ James L. Garrity, Jr. |
| Glenn E. Siegel | James L. Garrity, Jr. |
| Craig P. Druehl | John C. Goodchild, III (*pro hac vice*) |
| James O. Moore | 101 Park Avenue |
| 1095 Avenue of the Americas | New York, New York 10178-0600 |
| New York, New York 10036-6797 | Telephone: (212) 309-6000 |
| Telephone: (212) 698-3500 | Facsimile: (212) 309-6001 |
| Facsimile: (212) 698-3599 | *Counsel to Deutsche Bank National Trust* |
| *Counsel to The Bank of New York Mellon and* | *Company and Deutsche Bank Trust Company* |
| *The Bank of New York Mellon Trust Company,* | *Americas, as Trustee of Certain Mortgage-* |
| *N.A., as Trustee of Certain Mortgage-Backed* | *Backed Securities Trusts* |
| *Securities Trusts* | |
| | |
| **ALSTON & BIRD LLP** | **SEWARD & KISSEL LLP** |
| By:  /s/ Martin G. Bunin | By:  /s/ Mark D. Kotwick |
| Martin G. Bunin | Mark D. Kotwick |
| John C. Weitnauer (*pro hac vice*) | Ronald L. Cohen |
| William Hao | Arlene R. Alves |
| 90 Park Avenue | One Battery Park Plaza |
| New York, NY 10016 | New York, New York 10004 |
| Telephone: (212) 210-9400 | Telephone: (212) 574-1200 |
| Facsimile: (212) 210-9444 | Facsimile: (212) 480-8421 |
| *Counsel to Wells Fargo Bank, N.A., as Trustee* | *Counsel to U.S. Bank National Association, as* |
| *of Certain Mortgage Backed Securities Trusts* | *Trustee of Certain Mortgage-Backed* |
| | *Securities Trusts* |
| | |
| **SEWARD & KISSEL LLP** | **ALLEN & OVERY LLP** |
| BY:  /s/ Dale C. Christensen, Jr. | BY:  /s/ John Kibler |
| Dale C. Christensen, Jr. | John Kibler |
| Thomas Ross Hooper | 1221 Avenue of Americas |
| Benay L. Josselson | New York, New York  10020 |
| One Battery Park Plaza | Telephone:  (212) 610-6300 |
| New York, New York 10004 | Facsimile:  (212) 610-6399 |
| Telephone: (212) 574-1200 | *Counsel to HSBC Bank USA, N.A., as Trustee* |
| Facsimile: (212) 480-8421 | *of Certain Mortgage Backed Securities Trusts* |
| | |
| *Counsel to Law Debenture Trust Company of* | |
| *New York, as Separate Trustee of Certain* | |
| *Mortgage-Backed Securities Trusts* | |