Wendy Alison Nora  
ACCESS LEGAL SERVICES  
310 Fourth Avenue South, Suite 5010  
Minneapolis, Minnesota 55415  
Telephone: (612) 333-4144  
Facsimile: (608) 497-1026  

Proposed Hearing Date: June 26, 2013  
Proposed Hearing Time: 10:00 a.m. EDT  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**  
-----------------------------------------------------------------X  
In re  

Residential Capital, LLC *et al.*,                    Chapter 11  

                                                      Case No. 12-12020 (MG)  
                              Debtors.                Administratively Consolidated  

-----------------------------------------------------------------X  

**OBJECTION TO REPLY OF ALLY FINANCIAL, INC. TO**  
**MOTION FOR ORDER APPROVING PLAN SUPPORT AGREEMENT**  
[DOCKET NO. 4060]  
_____

Wendy Alison Nora, a contingent claimant and creditor in these proceedings, objects to the Reply of Ally Financial, Inc. (hereinafter ALLY) to Debtors' Motion for Order Approving the Plan Support Agreement and shows the Court:

1. Despite the protestations of ALLY that the issues of the Third Party Release should properly be reserved until hearing on the confirmation of the Debtors' Chapter 11 Plan, ALLY expounds for almost half of its Reply on the reasons why this Court should approve the Third Party Release if the Chapter 11 Plan is confirmed.

2. ALLY cannot have it both ways: either the issues of the Third Party Release must be considered at this time, prior to the entry of the Order approving the Plan Support Agreement, or it should reserve its arguments on the approval of the proposed Third Party Release until hearing on confirmation.

3.  To the extent that the silence of this claimant to the many pages of self-congratulatory verbiage in which ALLY seeks to justify the proposed Third Party Release could be deemed to be a waiver of her right to object to the Third Party Release and the confirmation of any proposed Chapter 11 Plan yet to be filed, she objects to ALLY's statements concerning the proposed Third Party Release commencing at the middle of page 7 of its Reply and ending on page 14.

4.  This claimant and the homeowners whose homes have been taken by the RESCAP Debtors by forged and perjured documents both pre-petition and post-petition have an interest in pursuing their claims against ALLY which exceeds that of any class of claimants represented by the Committee of Unsecured Creditors (the Committee) in these proceedings.

5.  Despite the Committee's protestations to the contrary and the useless appointment of "Special Counsel" for the supposed purpose of protecting homeowners' interests on the Committee, not a single effort has been made by the Committee or "Special Counsel" to examine the thousands of forged and perjured documents upon which foreclosures were predicated and pursued before and during the pendency of these proceedings.

6.  The Committee and its "Special Counsel" has wholly failed to investigate the claims of homeowners and former homeowners whose titles are clouded by forged assignments of mortgage or whose homes have been taken by forged mortgage notes and forged assignments of mortgages with perjured Affidavits claiming the right to foreclose in judicial foreclosure states.

7.  The Committee and its "Special Counsel" has wholly failed to investigate the claims of homeowners and former homeowners in nonjudicial foreclosure states in which the Debtors by forged documents were used to effectuate foreclosures by advertisement or under powers of sale.

8.  There is one point upon which this claimant agrees with ALLY: this is an

unprecedented case and not for the reasons ALLY asserts. This case is unprecedented because never in the history of the United States of America or indeed the history of Anglo-Saxon jurisprudence have forged documents been permitted to be used to foreclose on real estate on a global scale.

9. As previously stated in these proceedings by this claimant, ALLY and its equity partner, now shareholder, Cerberus Capital Management, LP (hereinafter CERBERUS) are engaged in a scheme to ring-fence their liability for a racketeering enterprise so vast in its scope and execution that, were it not for the fact that numerous other mortgage originators and servicers used the same (now discovered to have been patented) business plan to confiscate the homes of United States citizens and residents, it would stand alone as the greatest title laundering fraud ever perpetrated in United States history.

10. The Committee and the United States Trustee had the opportunity to put an end to the forgery-perjury scheme but chose to ignore it and have declined to investigate the facts which are available in the case of almost every foreclosure from which ALLY's now "bankrupt" subsidiaries seek to escape liability.

11. The Committee had the opportunity to represent the interests of the only creditors who had anything of real value at stake in these proceedings–real estate–and preferred to represent the interests of claimants from the "financial" sector, which are owed nothing but digits in a computer system. And those digits, created by keystrokes on computers and properly characterized as bookkeeping entries of "credit" are back only by debt obligations, not anything of value except promises to pay.

12. It is the promises of the homeowners, represented by their mortgage notes and

secured by their mortgages, which provided the value which have been re-sold or have been resulted in fraudulent foreclosures using forged and perjured documents.

13. One has to wonder if the forgeries and perjuries are at this point so obvious that they must be ignored or if the Committee, the United States Trustee and the learned judges who have acted in the capacities of mediator, examiner and decision-maker in this case are know that to consider the truth of the fraud scheme being perpetrated by ALLY and CERBERUS through these "bankrupt" subsidiaries would cause a financial panic of epic proportions.

14. There is no value in the claims of the creditors who put nothing more than debt obligations into the financial system. All value in the financial system is in the hard assets, the earned equity, and the future ability of the promisor to pay.

15. It is one thing to run a financial system on the basis of promises to pay (debt) and quite another to use forgery and perjury to seize the underlying security for those promises.

16. It is the forgery and perjury transmitted by wire and mail upon which this claimant bases her demand for what was once and still could be known as justice and the first step to achieving justice is to establish the liability of parties to the racketeering enterprise, of which ALLY and CERBERUS, along with MERSCORP, Inc. and Lender Processing Services, Inc. controlled the operations in claimant's case.

17. At the very least, ALLY should be required to wait until the very confirmation proceedings it knows must take place before it fills the record with false claims of its beneficial contributions to the national tragedy this case represents but, moreover, it should have to wait until the Examiner's Report is released from the seal under which it has too long been concealed.

18. It is not a coincidence that this hearing is set on the same day as the hearing on the

Motion of Berkshire Hathaway to release the Examiner's Report from the seal because the Debtors control the scheduling in this case.

19. The evidence thus far concealed by the continuing seal on the Examiner's Report is essential for all claimants to ascertain the weight of the proof of the liability of ALLY and its equity partner CERBERUS for the actions of these "bankrupt" subsidiaries of ALLY. If there is a sufficient weight of evidence to demonstrate that these Debtors were used as mere alter egos of ALLY, no Third Party Release should be allowed. Rather, ALLY, which now claims that being 74% owned by the taxpayers of the United States is a factor to considered in granting it a Third Party Release as a unique circumstance, should await confirmation proceedings in which it can produce evidence that the Federal Reserve and the FDIC have "closely monitored" these proceedings and (as ALLY appears to want the Court to infer) support the Third Party Releases.

20. Throughout these proceedings, lip service has been given to the National Mortgage Settlement and the Consent Orders of the Office of the Comptroller of the Currency and the Federal Reserve, yet not one dime has yet been paid to any homeowner who was foreclosed using forged and perjured documents or for any other violation which led to the National Mortgage Settlement or the Consent Orders. ALLY, which is not in bankruptcy, has allowed these proceedings to "ring-fence" its liability under the National Mortgage Settlement and the estate has wasted millions of dollars in consulting fees to investigate these Debtors' and ALLY's violations of safe and sound banking practices.

21. Unless and until the interested parties in these proceedings gain access to the Examiner's Report and the Chapter 11 Plan is filed and objections to confirmation may be heard, ALLY should not be heard on its arguments that the Third Party Release should be considered or

allowed.

WHEREFORE, the undersigned objects to ALLY prematurely arguing the merits of a not- yet-proposed Third Party Release and reserves her rights to oppose any attempt to release ALLY or CERBERUS from claims arising from their control and direction of a nationwide forgery and perjury scheme to confiscate the real assets of citizens and residents of the United States of America when the issue timely arises.

Dated: June 24, 2013 at Madison, Wisconsin.

ACCESS LEGAL SERVICES

*/s/ Wendy Alison Nora*
Wendy Alison Nora, pro hac vice
310 Fouth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026

UNSWORN DECLARATION OF SERVICE

Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York on June 24, 2013 by CM/ECF and thereby served the same on all counsel of record and all parties capable of service by CM/ECFin the above-captioned matter.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
accesslegalservices@gmail.com
