**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**ORDER AUTHORIZING THE ESTABLISHMENT OF AN ESCROW OF FUNDS PENDING CONSIDERATION OF A PROPOSED SETTLEMENT BY THE COURT**

Upon the oral application (the "**Application**") of the above captioned debtors and debtors in possession (the "**Debtors**") and in connection with the *Debtors' Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination That (I) GMAC Mortgage's FRB Foreclosure Review Obligation is a General Unsecured Claim and (II) The Automatic Stay Prevents Enforcement of the FRB Foreclosure Review Obligation* [Docket No. 3055] (the "**Motion**");[1] and it appearing that this Court has jurisdiction to consider the Motion and Application pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these Chapter 11 cases and the Motion and Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having determined that just cause exists for the relief granted herein; and the Court having further determined that the relief granted herein is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ny-1095107

**IT IS HEREBY ORDERED THAT:**

1. Debtors GMAC Mortgage, LLC ("**GMAC Mortgage**") and Residential Capital, LLC ("**ResCap**") are hereby authorized to execute a Term Sheet substantially in the form attached hereto as <u>Exhibit 1</u> (the "**Term Sheet**") and GMAC Mortgage is hereby authorized to deposit into a segregated escrow account (the "**Escrow Account**") established with an escrow agent reasonably acceptable to GMAC Mortgage and the FRB an amount up to $230,000,000.00 (the "**Escrow Funds**") in accordance with the Term Sheet, which funds shall be used to fund a Qualified Settlement Fund as set forth in the Term Sheet and in the Acceleration and Remediation Agreement (as defined in the Term Sheet) (the "**Proposed Amendment**") to replace the FRB Foreclosure Review obligations set forth in the Consent Order, subject to Court approval of such Proposed Amendment by separate motion.

2. GMAC Mortgage and ResCap are hereby authorized to take all actions and enter into such agreements as are necessary to establish and maintain the Escrow Account, and GMAC Mortgage is authorized to pay any and all fees associated with establishing and maintaining the Escrow Account, including any fees and expenses of the escrow agent.

3. The Escrow Funds shall not be released from the Escrow Account to any non-Debtor absent an order from the Court entered prior to such release.

4. Notwithstanding anything herein to the contrary, the Debtors are not authorized to enter into the Acceleration and Remediation Agreement (as defined in the Term Sheet) without prior Court approval of the Proposed Amendment.

5. Notwithstanding anything herein to the contrary, this Order shall not modify or affect the terms and provisions of, nor the rights and obligations under, (a) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among AFI, Ally Bank, ResCap, GMAC Mortgage, LLC, the Board of Governors of the Federal Reserve System, and the

Federal Deposit Insurance Corporation, (b) the consent judgment entered April 5, 2012 by the United States District Court for the District of Columbia, dated February 9, 2012, (c) the Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as amended, dated February 10, 2012, and (d) all related agreements with AFI and Ally Bank and their respective subsidiaries and affiliates.

6.      Notwithstanding anything herein, in the GA Servicing Order[2], or in any other order of the Bankruptcy Court to the contrary, this Order shall not waive or foreclose and is without prejudice to (i) any and all claims, causes of action and defenses that may be asserted by the Debtors or the Official Committee of Unsecured Creditors for any and all past or future costs of compliance with (a) the Consent Order, (b) the Consent Judgment by and among certain of the Debtors, AFI, the Department of Justice, certain states, and the District of Columbia entered by the United States District Court for the District of Columbia on April 4, 2012 in Case No. 12-0361 and (c) the Order of Assessment of Civil Money Penalty, dated February 9, 2012, agreed to by and among certain of the Debtors, AFI, and the FRB (collectively, (a) through (c), the "**Compliance Claims**") against any and all parties, including, without limitation, claims for contribution and/or indemnification arising directly or indirectly, by contract or under common law, through subrogation or otherwise, (ii) all rights of AFI to object to any Compliance Claim on any and all bases and bring counterclaims against the Debtors for Compliance Claims, including asserting claims (x) that the costs of compliance in connection with the Compliance

---

[2] The "**GA Servicing Order**" refers to the *Final Order Under Sections 105(a), 361, 362, 363, 1107(a), and 1108 of the Bankruptcy Code (I) Authorizing the Debtors to Continue in the Ordinary Course of Business (A) Servicing Governmental Association Loans and (B) Foreclosure Activities Related to Certain Real Estate Owned by Fannie Mae, Freddie Mac, and Ginnie Mae; (II) Authorizing the Debtors to Pay Certain Prepetition Amounts Due to Critical Services Vendors and Foreclosure Professionals; (III) Granting Limited Stay Relief to Enable Borrowers to Assert Direct Claims and Related Counter-Claims in Foreclosure and Eviction Proceedings; (IV) Authorizing the Debtors to Use Cash Collateral Under the Fannie Mae EAF Facility; and (V) Granting Related Relief* [Docket No. 401].

Claims are administrative expenses of the Debtors' estates pursuant to 11 U.S.C. § 503(b) and (y) that AFI relied on the Debtors' costs of compliance in its decision to support operationally and financially the Debtors' efforts to sell the assets of the Debtors' estates on a going concern basis and maximize the value of the estates, and (iii) all rights of the Debtors or any party-in-interest (including the Official Committee of Unsecured Creditors) to respond to any objections and contest any and all counterclaims asserted by AFI, _provided_, _however_, that in each case such claims shall not be resolved, waived or discharged by the Debtors without the consent of the Official Committee of Unsecured Creditors or further order of the Bankruptcy Court.

7.   The Bankruptcy Court shall retain jurisdiction with respect to all matters arising out of or related to the implementation of this Order.

Dated: June 26, 2013
       New York, New York

                                     _____/s/Martin Glenn_____
                                        MARTIN GLENN
                                     United States Bankruptcy Judge

# EXHIBIT 1

**Term Sheet**

ny-1095107

Term Sheet for Independent Foreclosure Review
Acceleration and Remediation Agreement

1) Promptly following the execution of this Term Sheet by Residential Capital, LLC ("ResCap"), GMAC Mortgage, LLC ("GMAC Mortgage" and, together with ResCap, the "Servicer") and the Federal Reserve Board (the "FRB"), GMAC Mortgage will make the "Total Cash Payment" specified in Appendix A into an escrow account the terms of which, and any changes to which, are acceptable to GMAC Mortgage and the FRB. All costs associated with the escrow account will be paid for by GMAC Mortgage. Funds in the escrow account will not be used to cover costs associated with the account. All interest and other income that accrues on the funds in the escrow account shall constitute a part of the escrow account and shall be distributed along with the principal amount in the escrow account as part of the funds in the account as provided herein.

2) Within 30 calendar days of execution of this Term Sheet by the FRB, the Servicer will execute the Acceleration and Remediation Agreement (which shall be an amendment to the Consent Order to incorporate the terms set forth herein and other typical provisions contained in such documents, including provisions providing that there are no third-party beneficiaries to this Term Sheet and/or the Acceleration and Remediation Agreement). No later than the first business day following the date the Servicer and FRB execute the Acceleration and Remediation Agreement, the escrow agent shall release, or the Servicer shall execute any request required to cause the escrow agent to release, the Total Cash Payment specified in Appendix A, including interest earned on amounts in the escrow account, into a Qualified Settlement Fund established for the purpose of making borrower distributions. Within 45 calendar days of the date of execution of this Term Sheet, the FRB will verify the placement of borrowers into the agreed-upon Independent Foreclosure Review waterfall categories ("IFR Waterfall") based on the Servicer's systems in a manner consistent across all servicers who have entered into Term Sheets similar to this Term Sheet. Where directed by FRB, Servicer will have the borrower waterfall reviewed independently by internal audit or other compliance staff, or if Servicer no longer has audit or compliance functions, by an independent third party acceptable to the FRB, to ensure accuracy and completeness. The work will be completed in a timely manner so as not to hamper the timely distribution of monies to borrowers. Once the placement of borrowers into the IFR Waterfall is verified by the FRB, the Servicer will provide Rust Consulting, Inc., as paying agent, or another agreed-upon paying agent (the "paying agent"), the specific borrower placement information within the IFR Waterfall, and at that time the placement of borrowers into the IFR Waterfall shall be deemed final. The FRB will direct the cash payments to categories of borrowers in the IFR Waterfall in accordance with a distribution plan created by the OCC/FRB in their discretion based on the data and information developed through the IFR process ("Distribution Plan"). The paying agent will distribute the funds in the Qualified Settlement Fund to borrowers in accordance with the Distribution Plan. The communication from the paying agent will direct borrowers to contact Servicer, or an agent of the Servicer acceptable to the FRB, with any questions. Administrative costs of the paying agent will be paid for by the Servicer. Funds in the Qualified Settlement Fund will not be used to cover administrative costs of the paying agent.

ny-1095125

3) With respect to the remediation of borrowers who are slotted in the SCRA Sections 521 and 533 and "borrowers who were not in default" categories in the IFR Waterfall, Servicer may elect either: (i) to have payments made from the Qualified Settlement Fund to all in-scope borrowers in accordance with the IFR Waterfall, or (ii) to have the Independent Consultant ("IC") complete file reviews for those borrowers (to the extent such file reviews have not already been completed). For files reviewed under option (ii) for which there is a determination of harm, such borrowers will receive payments under the Qualified Settlement Fund Distribution Plan in the amounts specified in the June 21, 2012 Financial Remediation Framework. For files reviewed where a "no harm" determination is made by the IC, the borrower will be slotted for remediation in accordance with the IFR Waterfall into the next highest waterfall category for which such borrower is eligible and such borrowers will receive payment from the Qualified Settlement Fund. All parties to this Term Sheet will provide instructions and cooperation to the ICs to complete any such file reviews that have not already been completed within 30 days or less from the date of execution of this Term Sheet by the FRB.

4) With respect to borrowers who may be subject to interest rate protections under SCRA Section 527, Servicer may elect either: (i) to slot the borrower for remediation in accordance with the IFR Waterfall into the highest waterfall category for which such borrower is eligible and such borrowers will receive payment from the Qualified Settlement Fund, or (ii) to have the IC complete file reviews for those borrowers (to the extent such file reviews have not already been completed). For files reviewed under option (ii) for which there is a determination of harm, such borrowers will receive payment from the Qualified Settlement Fund for the actual amount in error in an amount not less than $250. For files reviewed where a "no harm" determination is made by the IC, the borrower will be slotted for remediation in accordance with the IFR Waterfall into the highest waterfall category for which such borrower is eligible and such borrowers will receive payment from the Qualified Settlement Fund. As Servicer has entered into the National Mortgage Settlement ("NMS"), Servicer is required to calculate the payment for Section 527 violations pursuant to methodology outlined in DOJ Exhibit H and such borrowers will receive payment from the Qualified Settlement Fund.

5) Servicer will provide loss mitigation or other foreclosure prevention actions ("Foreclosure Prevention") as specified in Appendix A, within two years of the date of execution of this Term Sheet. As Servicer has entered into the NMS, such amounts will be in addition to any amounts required under the NMS. Servicer may receive credit for loss mitigation or other foreclosure prevention activities provided in the form of first lien modifications, second lien modifications, and short sales/deeds-in-lieu of foreclosure, using the types of creditable activity set forth in the NMS, provided that crediting for purposes of this agreement will be based on the unpaid principal balance of the loan and there are no maximum or minimum restrictions on the amount of any particular activity that is creditable.

In addition, Servicer may receive credit for cash or other resource commitments to borrower counseling or education (measured as $7 to $10 of credit for each $1 cash commitment and subject to no objection from the FRB), additional loss mitigation activities (subject to no objection from the FRB) including interest rate modifications, deficiency waivers (measured

2

by the amount of deficiency judgment credited at $.10 for every dollar), "cash-for-keys" and similar programs (measured by unpaid principal balance), and other foreclosure prevention activities (measured by amounts incurred as owing to investors for such activities and including credit on Servicer's or their affiliates' loans held-for-investment calculated using the note rate methodology as used by the Government-Sponsored Enterprises).

Servicer, subject to no objection by the FRB, may also receive credit by providing additional cash payments to the Qualified Settlement Fund (measured as $7 to $10 of credit for each $1 cash commitment). To the extent practicable, and without prejudice to overall portfolio management, Servicer will attempt to prioritize loss mitigation or other foreclosure prevention actions for borrowers in the IFR in-scope population. However, all creditable activities addressed to borrowers in the portfolio of Servicer or its affiliates, whether or not in the IFR in-scope population and whether held-for-investment or serviced-for-others, will be eligible to complete Servicer's obligations hereunder. Servicer will submit to the FRB periodic reports that detail Foreclosure Prevention actions for which it seeks credit toward the amount specified in Appendix A of this Term Sheet. Participation in any Foreclosure Prevention program or action for which Servicer is seeking credit other than a program or action specified in this Term Sheet and the conditions governing such participation are subject to FRB non-objection.

6) Servicer will satisfy its Foreclosure Prevention obligations by providing additional cash payments to the Qualified Settlement Fund in the amount of the Foreclosure Prevention Obligation Payment specified in Appendix A.

7) Servicer may not require borrowers to execute a waiver of any claims against the Servicer as a condition for receiving any payment or remediation provided for in this Term Sheet.

8) Upon confirmation by the FRB that the Total Cash Payment specified in Appendix A has been received into the escrow account Servicer and the FRB shall collectively instruct the IC (and all related staff, counsel, agents and vendors, as well as independent legal counsel retained for the IFR process) to suspend all file review and all other work related to their engagement for a period not to exceed 30 calendar days after the date this Term Sheet is executed by the FRB, except potentially with respect to files relating to SCRA foreclosures, any foreclosures of "borrowers who are not in default," or borrowers subject to interest rate protections under SCRA Section 527, as set forth in Paragraphs 3 and 4, above. If Servicer has not executed the Acceleration and Remediation Agreement by the 30th calendar day after the date this term sheet is executed by the FRB or the Total Cash Payment amount specified in Appendix A of this Term Sheet has not been paid into the Qualified Settlement Fund described in 2) above by no later than the first business day following the date the Servicer and FRB execute the Acceleration and Remediation Agreement, then all funds in the escrow account described in 1) above will be returned to the servicer, this Term Sheet shall be void and of no effect, the suspension of the IFR will be lifted, and all file review and all other work related to the IC's engagement will resume. The periods specified in paragraphs 2) and 8) above may be extended by agreement of the parties.

3

ny-1095125

9) Upon confirmation by the FRB that the Total Cash Payment specified in Appendix A has been released by the escrow agent and received into the Qualified Settlement Fund described in 2) above, Servicer and FRB shall collectively instruct the IC (and all related staff, counsel, agents and vendors, as well as independent legal counsel retained for the IFR process) to cease all file review and all other work related to their engagement, except potentially with respect to files relating to SCRA foreclosures, any foreclosures of "borrowers who are not in default," or borrowers subject to interest rate protections under SCRA Section 527. Should Servicer choose review option (ii) as set forth in Paragraphs 3 and 4, above, the FRB will direct the IC to complete the related file reviews within 30 days. If any such file reviews are not completed within 30 days, the FRB may direct payments from the Qualified Settlement Fund to borrowers for categories of SCRA foreclosures and foreclosures of "borrowers who are not in default" in the amounts specified in the June 21, 2012 Financial Remediation Framework and to borrowers who are subject to interest rate protections under SCRA Section 527 in an amount not less than $250.00.

10) The FRB will direct the IC to provide to the FRB, within 15 days after the FRB executes this Term Sheet, its most recent data report previously provided to the Servicer's board or appropriate board committee. Also, within 15 days after the FRB's execution of this Term Sheet, the FRB will direct the IC to complete the table attached hereto as Appendix B with information as of such date as the FRB designates. The parties to this Term Sheet will work in good faith and in an expedited manner, and provide instructions to the IC to the extent necessary, to amend any contracts, engagement letters, remediation plans, action plans or other similar documents in order to effectuate the provisions of this Term Sheet and/or the Acceleration and Remediation Agreement. Servicer may provide the FRB with a list of document holds that it believes should be lifted as a result of entry into the Acceleration and Remediation Agreement, and the FRB will respond expeditiously to such requests.

11) The FRB further agrees that the FRB will not initiate any further enforcement actions, including for civil money penalties, against Servicer with respect to: (i) the conduct described in the WHEREAS clauses of the Consent Order; (ii) the matters addressed in Paragraphs 3 to 4 of the Consent Order (including matters relating to the work or findings of the IC or IC counsel under the IFR); and (iii) any other past mortgage servicing and foreclosure-related practices that are addressed by the Consent Order. Notwithstanding the foregoing, the FRB retains the authority to enforce any commitments contained in the Consent Orders, as amended by the Acceleration and Remediation Agreement, except with respect to any of those matters relating to Paragraphs 3 to 4 of the Consent Order.

12) The Acceleration and Remediation Agreement will contain language in the WHEREAS clauses to indicate that any payments made pursuant to the Agreement do not in any manner reflect that financial injury or harm was suffered by borrowers receiving payments, with the exception that for reviews conducted pursuant to option (ii) outlined in paragraphs 3) and 4) above for which there is a finding of harm.

13) Fulfillment of "Cash Payment" and "Foreclosure Prevention" commitments specified in Appendix A by making the Total Cash Payment specified in Appendix A, and of all terms of

4

the Acceleration and Remediation Agreement, shall fully satisfy all requirements contained within Paragraphs 3-4 of the Consent Order.

_____
Board of Governors of the Federal Reserve System

5

# Appendix A

## Term Sheet for Independent Foreclosure Review Acceleration and Remediation Agreement

|  | **Cash Payment** | **Foreclosure Prevention Obligation** | **Foreclosure Prevention Obligation Payment** | **Total Cash Payment** |
|---|---|---|---|---|
| ResCap/GMACM | 198,077,499 | 316,923,998 | 31,692,400 | **229,769,899** |

6

# Appendix B

## Term Sheet for Independent Foreclosure Review
## Acceleration and Remediation Agreement
## IC Report Template



Sample IC Report.xls

Residential Capital, LLC
Minneapolis, Minnesota

By:_____

Name:

Title:


GMAC Mortgage, LLC
Fort Washington, Pennsylvania

By:_____

Name:

Title:

8

ny-1095125