

LAWRENCE A. KELLOGG, P.A.
WRITER'S DIRECT LINE: (305) 403-8791
EMAIL: LAK@LKLSG.COM

April 16, 2013

*Via Federal Express*

Residential Capital Claims Processing Center
c/o KCC, Claims Agent
2335 Alaska Avenue
El Segundo, California 90245

Re:    *In re GMAC Mortgage, LLC; Bankruptcy Case No. 12-12032, United States Bankruptcy Court for the Southern District of New York; Proofs of Claim by Redwood Recovery Services, LLC and Elevenhome Limited*

        Enclosed please find two proofs of claim for submission by Redwood Recovery Services, LLC and Elevenhome Limited, respectively, in the above-referenced bankruptcy case of GMAC Mortgage, LLC. These claims relate to, but do not amend, proof of claim number 5718 filed by American Residential Equities, LLC.

        Please do not hesitate to contact us if you have any questions regarding the enclosed claims.

        Respectfully submitted,

        *Jennifer Hill -for*

        Lawrence A. Kellogg, Esq.

Enc:    Proof of Claim by Redwood Recovery Services, LLC
        Proof of Claim by Elevenhome Limited

cc:    David H. Charlip, Esq., (via email to dcharlip@charliplawgroup.com),
        Lisa Phillips, Esq. (via email to lphillips@westbournecap.com)
        Roberto E. Moran, Esq. (via email to rmoran@robertomoranlaw.com),
        Avery Samet, Esq. (via email to asamet@samlegal.com)
        John W. Brewer, Esq. (via email to jbrewer@samlegal.com)
        Jeffrey Kirsch, Meadow Mint, LLC, Key Biscayne Family Trust, American Residential Equities, LLC, American Residential Equities, Inc., ARE Asset Management, LLC, Seabreeze Financial, LLC, and American Residential Equities, LIII, LLC  (via U.S. Mail to 100 Wilshire Blvd., Suite 250, Santa Monica, CA 90401)

---

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number:
### GMAC Mortgage, LLC, Case No. 12-12032

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Redwood Recovery Services, LLC

Name and address where notices should be sent:

Lawrence Kellogg and Amanda Frazer
Levine Kellogg Lehman Schneider + Grossman, LLP
201 S. Biscayne Blvd., 22nd Floor
Miami, FL  33131

Telephone number: 305-403-8788     email: af@lklsg; jmh@lklsg.com; lak@lklsg.com

Name and address where payment should be sent (if different from above):

Telephone number:     email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim
Number: 6718
*(If known)*

Filed on: 11/16/2012

☑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** See Attached

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Judgment against American Residential Equities, LLC
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** ___ ___ ___ ___

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☑ Other
Describe:

Value of Property: $_____    Annual Interest Rate_____% ☐ Fixed ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____    Basis for perfection: See Attached

**Amount of Secured Claim: $** See Attached    **Amount Unsecured:** See Attached

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☑ I am the creditor.    ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: _Paul De Steffanis_
Title: _Manager_
Company:
Address and telephone number (if different from notice address above):

(Signature)     (Date)

Telephone number: 305 925-7599    Email: paul@bizvaluations.com

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## PROOF OF CLAIM ATTACHMENT FOR REDWOOD RECOVERY SERVICES, LLC
### (Related to Proof of Claim No. 5718, Bankruptcy Case No. 12-12032)

Claimant, Redwood Recovery Services, LLC ("Redwood"), is a creditor of American Residential Equities, LLC ("ARE LLC") by virtue of its $10,522,910.00 final judgment ("Judgment")[1] against ARE LLC entered on March 7, 2011 in Case No. 08-65603-CA-40, Miami-Dade County, Florida Circuit Court. As a judgment creditor of ARE LLC, Redwood has a direct interest in the assets of its judgment debtor, ARE LLC, that are subject to execution to satisfy the Judgment; these include on ARE LLC's assets that are the subject of ARE LLC's Claim Number 5718 in the bankruptcy case of GMAC Mortgage, LLC ("Debtor"), Bankruptcy Case No. 12-12032, and Adversary Proceeding No. 12-01934 ("Adversary Proceeding"), as well as distributions made to ARE LLC on account of Claim Number 5718 and/or the Adversary Proceeding.

Without joining Redwood in the Adversary Proceeding, the Amended Complaint seeks declaratory relief that the trust assets are property of ARE LLC, in its individual capacity and as trustee. Redwood disputes this contention, and believes that such assets are not validly trust assets, and are subject to execution. As a result, Redwood will seek intervention in the Adversary Proceeding to protect its interest in the assets at issue in the Adversary Proceeding, which consist of claims against the Debtor and the recovery of property from the Debtor.

According to paragraph 8 of the Amended Complaint, in the event that the recoupment of purported trust assets sought in the Adversary Proceeding is insufficient to fully compensate ARE LLC, it seeks an allowed claim for the unpaid balance. Redwood files this proof of claim to assert a claim for execution of its Judgment against the assets at issue in the Adversary Proceeding because they should properly be determined to be subject to execution to satisfy the Judgment. Also, to the extent ARE LLC is entitled to a money distribution based on Claim No. 5718, Redwood asserts the right to receive such distribution to satisfy the Judgment.

---

[1] A true and correct copy of the Judgment is attached hereto as Exhibit "A".

# EXHIBIT "A"

12
ORDC

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO.: 08-65603 CA 40

REDWOOD RECOVERY SERVICES,
LLC, and ELEVENHOME LIMITED,

    Plaintiffs,

vs.

JEFFREY L. KIRSCH, MEADOW MINT,
LLC, KEY BISCAYNE FAMILY TRUST,
AMERICAN RESIDENTIAL EQUITIES, LLC,
AMERICAN RESIDENTIAL EQUITIES, INC.,
ARE ASSET MANAGEMENT, LLC,
SEABREEZE FINANCIAL, LLC, and
AMERICAN RESIDENTIAL EQUITIES, LIII, LLC,

    Defendants,

_____/

### FINAL JUDGMENT IN FAVOR OF PLAINTIFF
### REDWOOD RECOVERY SERVICES, LLC

THIS CASE was tried before the Court on January 17, 2011 upon Redwood Recovery

Services, LLC's ("Redwood") Second Amended Complaint  against Defendants, Jeffrey L.

Kirsch ("Kirsch"), Meadow Mint, LLC ("Meadow Mint"), Key Biscayne Family Trust,

American Residential Equities, LLC ("ARE LLC"), American Residential Equities, Inc. ("ARE

INC") (ARE LLC and ARE INC, "ARE"), ARE Asset Management, LLC ("ARE

Management"), and Seabreeze Financial, LLC ("Seabreeze"), (collectively, "Defendants"). On

the evidence presented, the Court finds as follows:

CASE NO.: 08-65603 CA 40

## FINDINGS OF FACT

### I.    The Background

1.    Kirsch, a Florida lawyer, is the principal of ARE, a Miami-based company which, in 2006, was in the business of borrowing from foreign individuals for purposes of investing in pools of residential mortgage loans.

2.    ARE's investment strategy was to acquire troubled first mortgage loans in bulk from banks at deeply discounted prices. ARE represented to its lenders that the low loan to value ratio of the underlying real estate would protect the lender even under a worst-case scenario, i.e., foreclosure of the mortgage for non-payment in a declining real estate market, because the collateral would still be worth substantially more than the loan amount. The lenders were also told that ARE projected the portfolio of mortgages to be liquidated in twelve to eighteen months for more than the purchase price.

### II.    The Redwood Note

3.    On August 21, 2006, Petra Opportunity Fund ("Petra") loaned $45 million to American Residential Equities C, LLC ("ARE C"), an entity formed by ARE for the purposes of the loan, to purchase a portfolio of real estate assets that were to be liquidated over time. As those assets were sold, ARE C paid the net sales proceeds to Petra to pay down the loan balance. After repayment, Petra re-loaned the money to ARE C, so that, by December 31, 2007 at its peak, Petra had loaned ARE C a total of $54 million.   During this period, ARE provided monthly reporting to Petra detailing the transactions.

4.    In late 2007, after a period of relative inactivity with respect to the liquidation of the underlying mortgages, ARE reported that three properties had been sold at a loss. This concerned Petra's representative, Erick Magno ("Magno"), who began making inquiries as to how this had happened. He testified that he met with Dennis Stemmle ("Stemmle"), ARE's

2

CASE NO.: 08-65603 CA 40

Chief Operating Officer, and was told the reason for the losses was that the properties had not been valued correctly at the time the loans were purchased by ARE C. Stemmle said that the "properties were worth approximately 75 percent less on average by the time [ARE C] took them to market." Stemmle also described "systematic breakdowns" in the valuation work performed by ARE C personnel. He explained that the people in charge of selecting the mortgages ARE C purchased, had an incentive to overstate the value of the underlying collateral because they were compensated by commissions based on the amount of the purchase price of the mortgages.

5.   After learning about these problems, Magno, together with Petra's other directors, Miguel Carmona ("Carmona") and Christian Cunha ("Cunha"), conducted spot-checks of the ARE C portfolio by reviewing county records, MLS listings, and other publicly available information. According to Magno, the investigation revealed a large disparity between the stated value of the assets and their market value. It was also discovered that a number of the assets were second mortgages, contrary to ARE's representations that only first mortgage loans would be acquired with Petra's loans.

6.   An additional problem concerned several loans. On October 3, 2007 Petra agreed to fund the acquisition of two commercial mortgage loans, one for $10 million and one for $7 million. The loans were reported as closed by ARE's commercial lending arm, Seabreeze. They were the largest transactions ever funded by Petra. Kirsch represented that these two loans were "scheduled to close," personally met with Petra's directors to discuss the merits of the underlying properties and provided appraisals and other due diligence materials to substantiate the soundness of the loans. Petra wired $17 million into ARE's account and in exchange received two promissory notes from ARE C, one for $10 million and one for $7 million, together with agreements pledging the promissory notes from the borrowers to Seabreeze as collateral for the loans made by Petra. These notes were represented as genuine, that is, they were signed by the

3

CASH NO.: 08-65603 CA 40

borrowers as part of an actual loan closing. In fact, the underlying notes were forgeries and the loans were never made, despite being reported as part of the inventory of loans in the ARB monthly reports. ARB also falsely reported that the $10 million "loan" had been sold at "a 13 percent yield." In order to perpetuate the fraud, ARB paid interest to Petra on the non-existent loan up to the time it was "sold."

7.    In late October, 2007 ARB C repaid the $10 million loan to Petra. This repayment within thirty days of funding was highly unusual in light of ARB's representations to Petra that the loan was a good one to hold for at least a year given the high rate of interest and the quality of the collateral.

8.    In late January, 2008, in the course of conducting its investigation, Petra discovered there were no public records evidencing either of the two loans. On February 13, 2008 during a meeting with Stemmle and David Merrill ("Merrill"), an in-house attorney for ARB, Magno asked for an explanation. Neither Merrill nor Stemmle knew anything about the loans, but promised to get back to Magno the next day after looking into it. Stemmle reported back that the files for these two loans were missing material information and that there was no evidence of recorded mortgages.

9.    Thereafter, the alleged borrowers both confirmed they never borrowed the money, that the loan documents were forgeries and the transactions were fabrications.

10.    On February 14, 2008, Magno confronted Kirsch with these facts. Kirsch did not deny Magno's allegations. Instead he told Magno, "you'll get your money back."

11.    At trial, Kirsch acknowledged he knew that the $10 million loan had not funded as of late October, 2007 and that he lied to Magno about the loan having been sold so as to not destroy the business relationship between ARB and Petra.

4

CASE NO.: 08-65603 CA 40

12.    Kirsch also knew as early as December, 2007 that the $7 million loan had not funded. He did not disclose this to Magno until February 14, 2008 when he was confronted by Magno. His excuse for his silence as to this "loan" was the same; he feared it would destroy the business relationship between ARE and Petra if Petra learned its money had not been invested as promised.

13.    In the next several weeks after this meeting ARE paid back all but $100,000 of the $7 million to Petra in six separate payments. The balance of $100,000 was not paid until late September, 2008.

14.    After the fraud was discovered Petra and ARE agreed to terminate their relationship by negotiating a "commercial divorce". The negotiation took place during February and March, 2008. Kirsch requested Merrill to represent ARE in the discussions and document drafting with Petra although he remained actively involved in the negotiations. Both Merrill and Kirsch testified they were in daily contact discussing proposed settlement terms.

15.    On March 17, 2008 the Defendants reached an agreement (the "Settlement Agreement") with Petra intended to resolve all of the disputes between them. In addition to Kirsch, the Settlement Agreement parties included Meadow Mint, Key Biscayne Family Trust, ARE LLC, ARE INC, ARE Management, and Seabreeze, all of which were entities that Kirsch owned or controlled. Petra agreed to waive its claims against Kirsch and his related entities, including the right to an accounting and damages resulting from "KIRSCH's negligence or otherwise," in return for which the Defendants agreed to execute a two-year promissory note in the amount of $10 million payable to Redwood, the payee designated by Petra to own the Redwood Note, together with the transfer of "all of [Defendants'] right, title and interests in Strategic Recovery Group, LLC" ("SRG"), a company providing services to ARE.

5

CASE NO.: 08-65603 CA 40

16.    The parties negotiated the amount of the Redwood Note based upon the loss Petra anticipated it would suffer as a result of ARE's and Kirsch's actions. The evidence showed that Petra estimated its losses would be approximately $15 million, based upon the assumption that the mortgages and other collateral it received were actually worth about forty percent less than as reported by ARE C.

17.    The Redwood note incorporates the terms of the Settlement Agreement by reference, including the definition of a "default" as including the failure to "meet any of its obligations [under the Redwood Note] and/or under the . . . [Settlement] Agreement."

18.    Shortly after the parties entered into the Settlement Agreement, a third party negotiated to acquire SRG. Despite demands from Redwood and Petra, ARE refused to concede Redwood's interest in SRG or provide any substantive information regarding the negotiations with the purchaser. As a consequence, on May 16, 2008 Redwood sued Defendants (the "First Lawsuit") seeking a declaration that it was the rightful owner of all of ARE's interest in SRG under the terms of the Settlement Agreement.

19.    On August 8, 2008, the parties settled the First Lawsuit by signing a First Amendment to the Settlement Agreement (the "First Amendment"), which recognized Redwood's right to receive ARE's portion of the proceeds from the sale of SRG. In exchange, Defendants received two significant credits toward the Redwood Note obligation -- one in the amount of $198,000 and one for $1,200,000. In addition, Kirsch received $58,872 from the sale of SRG. Critically, paragraph 9 of the First Amendment provides that "[a]ll other terms and conditions of the original Settlement Agreement, including its mutual releases, and the Redwood note shall remain unchanged in full force and effect and are hereby reaffirmed and ratified by all parties hereto." Kirsch admitted in his testimony that the First Amendment was negotiated at arm's length between the parties and their respective counsel without any claim of fraud.

6

CASE NO.: 08-65603 CA 40

extortion, or duress. He did not dispute that Defendants received credits totaling $1,398,000 against the sum due under the Redwood Note as a result of the negotiations for the First Amendment.

20.    Other than a single payment of $16,000 of interest on October 23, 2008 Defendants have made no other payments under the note. The total amount which Defendants presently owe under the Redwood Note is $10,522,916, consisting of principal in the amount $8,776,212, and interest through the first day of trial (January 17, 2011) in the amount of $1,746,703.

### CONCLUSIONS OF LAW

21.    The Court finds that the Redwood Note is valid and enforceable. The Court further finds that the Defendants defaulted in payment of the note and that the balance owing as of January 17, 2011, is $10,522,916.

22.    From a careful review of the evidence I find that the Defendants failed to prove that the Redwood Note was procured as a result of fraud, duress, or extortion. The contention that Redwood obtained Kirsch's signature on the Redwood Note by threatening economic harm to Kirsch's business operations if Kirsch did not become liable for payment was not proven at trial, nor was his claim that he signed the settlement documents and the note because he and his son were threatened by Aiden Couch, the principal of Petra.

23.    The evidence fully supports the conclusion that the Defendants gave the note to Petra in order to settle potential litigation involving substantial risk. The amount of the note was agreed to after extended negotiation. Kirsch was aware of the risks and consequences in trying to explain misrepresentations as to the loan portfolios.

24.    At trial, Kirsch emphasized the coercive effect of an email from Aiden Couch, the principal of Petra, stating that "he had unlimited resources for a complete forensic examination,"

7

CASE NO.: 08-65603 CA 40

and his threat of civil litigation. These statements do not constitute coercion or duress because it is not duress to threaten to do what one has a legal right to do or to take any measure authorized by law and the circumstance of the case to protect one's own interests. *See, e.g., Spillers v. Five Points Guaranty Bank*, 335 So. 2d 851, 853 (Fla. 1ˢᵗ DCA 1976); *City of Miami v. Kory*, 394 So. 2d 494, 498 (Fla. 3d DCA 1981).

25. The evidence clearly showed that Kirsch was a sophisticated lawyer with many years of negotiating experience at the time of the negotiations for the note. He was not coerced nor did he act under duress in signing the Settlement Agreement and the Redwood Note. But even assuming that Petra did extort or use economic duress to coerce Kirsch to sign the Redwood Note or that there was some other infirmity associated with the note when it was made, Kirsch is liable under the note because he ratified the Redwood Note and waived any claim to rescission or otherwise by entering into the First Amendment to the Settlement Agreement several months after that document was signed. Specifically, the First Amendment provides that "[a]ll other terms and conditions of the original Settlement Agreement, including its mutual releases, *and the Redwood Note* shall remain unchanged in full force and effect and *are hereby reaffirmed and ratified* by all parties hereto." (Emphasis added).

26. The law in Florida is clear that "[w]here a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation." *See Hendricks v. Stark*, 99 Fla. 277, 278, 126 So. 293, 294 (Fla. 1930); *see also Americana Associates, Ltd. v. Whud Real Estate Ltd. Partnership*, 715 So. 2d 955, 956 (Fla. 5ᵗʰ DCA 1998) (mortgagor was estopped from raising economic duress and coercion as a defense to mortgage foreclosure action, where mortgagor performed under the terms of the loan without raising its claim, and it entered into two subsequent agreements which acknowledged the debt); *Jones v. Watkins*, 105 Fla. 25, 140 So.

8

CASE NO.: 08-65603 CA 40

920 (Fla. 1932) ("An express ratification is not required in order thus to defeat his remedy [to rescission]; any acts of recognition of the contract as subsisting, or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.").

27.    Defendants' alternative argument that the Redwood Note is unenforceable because it lacks consideration is equally without merit. The evidence is clear that the Redwood Note was negotiated at arms-length over an extended period of time. Petra's agreement to forego a lawsuit for an accounting against Kirsch and ARE and to waive other claims was consideration for the note. "It is well settled Florida law that forbearance from pursuing a legal remedy, where the promisee has a bona fide belief that a viable legal right exists, constitutes valid consideration for an agreement which benefits the promisor." *See Citibank Intern. v. Marcogliano*, 574 So. 2d 1190, 1191 (Fla. 3d DCA 1991) ("Even if the legal right is of doubtful validity, it can still constitute valid consideration sufficient to support a contract or promise where the promisee has a bona fide belief of a fair chance of success in the lawsuit."). I find there was sufficient consideration for the Redwood note and that it is fully enforceable.

28.    Again, even assuming that there was a lack of consideration to support the Redwood Note when it was made, Kirsch and the Defendants ratified the note by entering into the First Amendment and by accepting $1,398,000 in credits against the outstanding balance. *See New Testament Baptist Church Inc. of Miami v. Dept. of Transp.*, 993 So. 2d 112, 117 (Fla. 4th DCA 2008) ("It is well established in our case law that an individual cannot go along with a contract for the purpose of enjoying benefits that 'although not directly conferred by the contract, are nevertheless made possible as a result of the contract, only to later claim a right to rescind when he discovers the benefits . . . will not be great enough to compensate him for the loss he will sustain by reason of the fraud.'").

9

CASE NO.: 08-65603 CA 40

29.    Finally, I reject Kirsch's contention that the Redwood Note is unenforceable because Merrill, while negotiating the Agreement, entered into a consulting agreement with Petra while he was still employed by ARE. The more convincing evidence is that Merrill signed a consulting agreement with Petra on March 7, 2008, after he resigned from ARE on February 13, 2008 and after he communicated to Kirsch by email on February 27, 2008 that he intended to speak "with the Petra folks about consulting for them." Despite knowing that Merrill intended to work in a consulting capacity with Petra after the settlement date, Kirsch used Merrill to help negotiate the settlement. Merrill's consulting agreement with Petra did not become effective until March 13, 2008 which was consistent with what Merrill had represented to Kirsch in his email he would do once he left ARE. Additionally, Merrill testified that there was no noncompetition agreement with ARE that would have precluded him from working with Petra after his employment with ARE ended. And, of course, even if it is assumed that Merrill had acted improperly in negotiating the note by favoring Petra's interests over those of ARE, the Defendant's argument fails because of the First Amendment, which was negotiated months after Merrill stopped working with ARE, reaffirmed the debt. Merrill had no involvement in the making of this agreement.

**WHEREUPON it is ORDERED AND ADJUDGED that:**

1.    Final Judgment is entered in favor of Plaintiff, Redwood Recovery Services, LLC on Count II of Redwood's Second Amended Complaint against Defendants, Jeffrey L. Kirsch, Meadow Mint, LLC, Key Biscayne Family Trust, American Residential Equities, LLC, American Residential Equities, Inc., ARE Asset Management, LLC, and Seabreeze Financial, LLC.

2.    Final Judgment is entered in favor of Plaintiff, Redwood Recovery Services, LLC on Defendants, Jeffrey L. Kirsch, Meadow Mint, LLC, Key Biscayne Family Trust, American

10

CASE NO.: 08-65603 CA 40

Residential Equities, LLC, American Residential Equities, Inc., ARE Asset Management, LLC, and Seabreeze Financial, LLC's counterclaim for rescission of the Redwood Note.

3.    Redwood Recovery Service, LLC, whose address is 7330 SW 148th Street, Miami, Florida 33158, shall recover from: Jeffrey L. Kirsch, whose address is 781 Crandon Boulevard, No. 702, Miami, Florida 33149; Meadow Mint, LLC, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131; Key Biscayne Family Trust, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131; American Residential Equities, LLC, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131; American Residential Equities, Inc., whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131; ARE Asset Management, LLC, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131; and Seabreeze Financial, LLC, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131, jointly and severally, the sum of $10,522,916.00 (ten million five hundred twenty two thousand nine hundred sixteen and no cents), for all of which let execution issue.

4.    Pursuant to section 55.03, Fla. Stat. (2011), this judgment shall bear interest at the legal rate of 6% (six percent) *per annum* from the date of the judgment until paid.

5.    Pursuant to the terms of the Redwood Note, Redwood Recovery Services, LLC is entitled to recover its reasonable attorneys' fees and costs from the Defendants. The Court reserves jurisdiction to determine the amount of such reasonable attorneys' fees and taxable costs, and to make an award of those amounts.

6.    Defendants shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on Redwood's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

11

CASE NO.: 08-65603 CA 40

7.    Jurisdiction of this case is retained to enter further orders that are proper to compel Defendants to complete form 1,977, including all required attachments, and serve it on Redwood's attorney.

ORDERED in Chambers at Miami-Dade County, Florida this _____ day of March, 2011.

THE HONORABLE HERBERT STETTIN
SENIOR CIRCUIT JUDGE

Copies furnished to:
• Jose M. Ferrer, Esq.
• Jorge D. Guttman, Esq.
• Alan Rosenthal, Esq.
• Natalie J. Carlos, Esq.

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor and Case Number:** GMAC Mortgage, LLC, Case No. 12-12032

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Elevenhome Limited

**Name and address where notices should be sent:**

Lawrence Kellogg and Amanda Frazer
Levine Kellogg Lehman Schneider + Grossman, LLP
201 S. Biscayne Blvd., 22nd Floor
Miami, FL 33131

Telephone number: 305-403-8788     email: af@lklsg; jmh@lklsg.com; lak@lklsg.com

**Name and address where payment should be sent (if different from above):**



Telephone number:     email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** 5718
*(If known)*

Filed on: 11/16/2012

☑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** See Attached

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Judgment against American Residential Equities, LIII, LLC alter ego of American Residential Equities, LLC
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☑ Other
**Describe:**

Value of Property: $_____     Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____     Basis for perfection: See Attached

Amount of Secured Claim: $ See Attached     Amount Unsecured: $ See Attached

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____     (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor, or     ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)     their authorized agent.     indorser, or other codebtor.
(See Bankruptcy Rule 3004.)     (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: PAUL DeSTEFANIS
Title: Manager
Company:     (Signature)     (Date)
Address and telephone number (if different from notice address above):

Telephone number: 305 975-7579     Email: PAUL@BIZVALUATIONS.COM

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

## PROOF OF CLAIM ATTACHMENT FOR ELEVENHOME LIMITED
### (Related to Proof of Claim No. 5718, Bankruptcy Case No. 12-12032)

Claimant, Elevenhome Limited ("Elevenhome"), is a creditor of American Residential Equities LIII, LLC ("ARE 53") by virtue of its $6,650,435.13 final judgment ("Judgment")[1] against ARE 53 entered on March 7, 2011 in Case No. 08-65603-CA-40, Miami-Dade County, Florida Circuit Court ("Florida Case"). As a judgment creditor of ARE 53, Elevenhome is entitled to execute on the assets of American Residential Equities, LLC ("ARE LLC") because ARE 53 is the alter ego of ARE LLC. Thus, Elevenhome has a direct interest in the assets of ARE LLC that are subject to execution to satisfy the Judgment; these include ARE LLC's assets that are the subject of ARE LLC's Claim Number 5718 in the bankruptcy case of GMAC Mortgage, LLC ("Debtor"), Bankruptcy Case No. 12-12032, and Adversary Proceeding No. 12-01934 ("Adversary Proceeding"), as well as distributions made to ARE LLC on account of Claim Number 5718 and/or the Adversary Proceeding.

Without joining Elevenhome in the Adversary Proceeding, the Amended Complaint seeks declaratory relief that the trust assets are property of ARE LLC, in its individual capacity and as trustee. Elevenhome disputes this contention, and believes that such assets are not validly trust assets, and are subject to execution. As a result, Elevenhome will seek intervention in the Adversary Proceeding to protect its interest in the assets at issue, which consist of claims against the Debtor and the recovery of property from the Debtor.

According to paragraph 8 of the Amended Complaint, in the event that the recoupment of purported trust assets sought in the Adversary Proceeding is insufficient to fully compensate ARE LLC, it seeks an allowed claim for the unpaid balance. Elevenhome files this proof of claim to assert a claim for execution of its Judgment against the assets at issue in the Adversary Proceeding because they should properly be determined to be subject to execution to satisfy the Judgment. Also, to the extent ARE LLC is entitled to a money distribution based on Claim No. 5718, Elevenhome asserts the right to receive such distribution to satisfy the Judgment.

---

[1] A true and correct copy of the Judgment is attached hereto as Exhibit "A".

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO.: 08-65603 CA 40

REDWOOD RECOVERY SERVICES,
LLC, and ELEVENHOME LIMITED,

     Plaintiffs,

vs.

JEFFREY L. KIRSCH, MEADOW MINT,
LLC, KEY BISCAYNE FAMILY TRUST,
AMERICAN RESIDENTIAL EQUITIES, LLC,
AMERICAN RESIDENTIAL EQUITIES, INC.,
ARE ASSET MANAGEMENT, LLC,
SEABREEZE FINANCIAL, LLC, and
AMERICAN RESIDENTIAL EQUITIES, LIII, LLC,

     Defendants.

_____/

## FINAL JUDGMENT IN FAVOR OF PLAINTIFF ELEVENHOME LIMITED

    This action was tried before the Court on January 17, 2011 upon Plaintiff Elevenhome

Limited's ("Elevenhome") Second Amended Complaint against American Residential Equities,

LIII, LLC ("ARE 53"). On the evidence presented, the Court finds as follows:

### FINDINGS OF FACT

**1.**    **The Background**

    1.    Jeffrey Kirsch ("Kirsch"), a Florida lawyer, is the principal of American

Residential Equities, LLC and American Residential Equities, Inc. (collectively, "ARE"), a

Miami-based investment company which, in 2006, was in the business of raising capital from

foreign individuals for purposes of investing in pools of residential mortgage loans.



CASE NO.: 08-65603 CA 40

2.    ARE represented it would acquire only first mortgage loans in bulk from banks at deeply discounted prices such that the underlying real estate collateral value would be substantially higher than the face value of the investment. Representations to the investors were that even in the event of foreclosure of the mortgage for non-payment and/or a declining real estate market the investor should come out whole since the real estate collateral was supposed to be worth substantially more than the investment amount, and ARE would liquidate the investment portfolios in approximately twelve (12) to eighteen (18) months.

3.    The investment involved in this case was structured in the following manner: (1) the individual investor lent money to a limited liability company which ARE formed for the individual investor; (2) the new limited liability company purchased pools of troubled residential loans at a discount using the monies loaned from that investor; (3) the new limited liability company through its Manager, ARE, delivered to the investor a promissory note for the amount of the loan; (4) the new limited liability company, through ARE, delivered to the investor an agreement pledging the membership interest in the new limited liability company as collateral for the debt.

II.    The Elevenhome Note

4.    On April 28, 2006, Kirsch, as the Manager of ARE 53, signed and delivered to Elevenhome the Elevenhome Note by which ARE 53 "promise[d] to pay to the order of [Elevenhome] Limited . . . the principal sum of TEN MILLION FOUR HUNDRED NINETY-TWO    THOUSAND    TWO    HUNDRED    FORTY-TWO    DOLLARS    and    66/100 (US$10,492,242.66)."

5.    The Elevenhome Note was one of two notes comprising a $14 million loan made to ARE 53 by Elevenhome. ARE 53 paid off the other note for $3,507,757.34, on August 23,

2

2006. ARE 53 used the entire $14 million loan proceeds to purchase a pool of real estate assets (the "Assets") which it projected to be liquidated over an 18-month period.

6.    Elevenhome is a British Virgin Islands company established by Aiden Couch ("Couch"), a foreign national, for the purpose of holding the loans made to ARE. The evidence reflects that, for the lender's convenience, the transfer of the $14 million to ARE 53 was made from the bank account of another Couch holding company, Ambigil Holdings Limited ("Ambigil"), which owned 100% of the member units of Elevenhome.

7.    Prior to loaning $14 million to ARE 53, Elevenhome made two smaller loans to ARE entities. These earlier loans were also funded by Ambigil on behalf of Elevenhome and repaid to Ambigil without incident.

8.    The unrebutted testimony is that the actual name of the note holder is Elevenhome Limited. The name of the payee on the note is Eleven Homes Limited, but this was shown to be a scrivener's error. There is no entity known as Eleven Homes Limited.

9.    The Elevenhome Note was divided into two tranches; half of the principal amount of the Elevenhome Note accrued interest at the rate of eight percent per annum for twenty four months (the "24-Month Tranche"), and the other half accrued interest at the rate of eight and one half percent per annum for a term of eighteen months (the "18-Month Tranche"). The 18-Month Tranche was "fully amortizable", meaning that all interest and principal was due on October 28, 2007, eighteen months from the date of the Elevenhome Note.

10.    Additionally, the Elevenhome Note required "[a]ccrued interest [to] be paid monthly on or before the first day of each calendar month after the execution of this Note." ARE 53 was permitted to prepay the principal balance of the Elevenhome Note in whole or in part at any time without penalty, but failure to pay principal or interest when due would

3

A TRUE COPY
CERTIFICATION AT LAST PAGE
HARVEY RUVIN, CLERK
A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO.: 08-65603 CA 40

constitute a default which would entitle Elevenhome to accelerate all sums due under the Elevenhome Note, all of which would then accrue interest at the default rate of eighteen percent.

11.    For approximately two years following the execution of the Elevenhome Note ARE 53 made regular payments of principal and interest pursuant to its terms. The evidence showed that the allocation of each payment as to interest and principal and against which of the two tranches the payment would be applied, was entirely determined by ARE 53. Elevenhome never questioned ARE's decisions and, in fact, accepted ARE 53's allocation of payments as reflected in account statements that ARE 53 provided to Elevenhome on a monthly basis. According to the last account statement provided to Elevenhome, ARE 53 allocated the monthly payments it had made to the 24-Month Tranche first, so that by February 15, 2007, ARE 53 had paid off the 24-Month Tranche.

12.    After that date, ARE 53 continued making payments toward the 18-Month Tranche until March 31, 2008 when it made an interest payment of $25,048.14. No other payments were made after that date. According to ARE 53's own account statement, the outstanding principal balance on the 18-Month Tranche is $3,456,511.13.

13.    ARE 53 presently owes Elevenhome $6,650,435.13, consisting of the principal amount reflected in ARE 53's account statement of $3,456,511.13, together with interest through the first day of trial, January 17, 2011.

## CONCLUSIONS OF LAW

14.    The Elevenhome Note is an enforceable contract supported by adequate consideration.

15.    ARE 53's argument that the Elevenhome Note is not supported by adequate consideration because it was Ambigil which actually loaned the $14 million to Elevenhome, fails

4




CASE NO.: 08-65603 CA 40

because it ignores the fact that ARE 53 got exactly what it bargained for; it received $14 million together with payment of hundreds of thousands of dollars in commissions and fees which Kirsch testified ARE 53 was entitled to in connection with the loan transaction. These facts establish sufficient consideration for the Elevenhome Note. *See* 11 Am. Jur. 2d *Bills and Notes* § 124 (2010) (It is not necessary that consideration flow directly from the payee to the makers of the note in order to bind the makers, so long as they do receive some benefit under the note.

16.    ARE 53 breached the Elevenhome Note by failing to make any principal or interest payments after March 31, 2008.

17.    As a direct and proximate result of ARE 53's breach of the Elevenhome Note, Elevenhome has suffered damages totaling **$6,650,435.13**, which represents the amount of principal and interest due on the Elevenhome Note as of January 17, 2011.

18.    ARE 53's defense that the remaining amounts owed under the Elevenhome Note are not due until it liquidates all of the mortgage inventory assets also fails as a matter of law. Specifically, ARE 53 argues that the meaning of an isolated sentence within the Elevenhome Note required payments to be applied first to the 18-Month Tranche until paid, and then to the 24-Month Tranche. ARE 53 contends that the Court should disregard the fact that ARE 53 itself chose to pay off the 24-Month Tranche first and apply the payments ARE 53 made to the 18-Month Tranche. Instead, ARE 53 argues that the monies paid should have been applied in the reverse order so that ARE 53 would technically not be in default under the Elevenhome Note. This is so, it contends, because, under ARE 53's reading of the Elevenhome Note, payments are not due with respect to the 24-Month Tranche until ARE 53 disposes of "all or substantially all of the assets" it purchased with the $14 million loan (i.e., the "Liquidation Date"), something which has not yet happened. I reject this conclusion for a number of reasons.

A TRUE COPY
CERTIFICATION A ... ST AGE
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON LAST PA
HARVEY RUVIN, CLERK

CASE NO.: 08-65603 CA 40

19.    First, any argument regarding the supposed maturity date of the 24-Month Tranche is academic. ARE 53 chose to pay that tranche first.

20.    Second, the maturity date of the 24-Month Tranche was April 28, 2008 and not the date when all of the assets are liquidated as ARE 53 now contends. ARE 53 relies for its argument on the sentence within the "Interest" section of the Elevenhome Note which states that "[p]rior to the Liquidation Date, Borrower will not make any payments other than Current Interest, the 'Preferred Return' (defined below) and 'Cash Outflows' (defined below)." This after-the-fact reading of the Elevenhome Note is inconsistent with the manner in which the parties actually acted on the Elevenhome Note and is belied by the evidence. Under Florida law, the actions of the parties may be considered as a means of determining the interpretation they themselves placed upon the contract. *See Lalow v. Codomo,* 101 So. 2d 390 (Fla. 1958). Here, for two years following the execution of the Elevenhome Note, ARE 53 provided Elevenhome with monthly account statements which clearly stated that the 24-Month Tranche was "Payable" on April 28, 2008. Therefore, the Court rejects ARE 53's contention, made for the first time after the lawsuit was filed, that the maturity date of the 24-Month Tranche was a date other than April 28, 2008.

21.    Third, even if it is assumed the terms of the Elevenhome Note would have required the amounts ARE 53 paid to be applied first to the 24-Month Tranche, the parties modified the manner of payment by their subsequent conduct. Under Florida law, the parties' conduct can modify the terms of a contract. *See St. Joe Corp. v. McIver,* 875 So. 2d 375, 382 (Fla. 2004) (*citing In re General Plastics Corp.,* 158 B.R. 258 (Bankr. S.D. Fla. 1993) *and Danforth Orthopedic Brace & Limb, Inc. v. Florida Health Care Plan, Inc.,* 750 So. 2d 774, 776 (Fla. 5th DCA 2000)). The undisputed evidence in this case demonstrates that ARE 53, in its

A TRUE COPY
CERTIFICATION IN ST
HARVEY RUVIN, CL

A TRUE COPY
CERTIFICATION ON LA
HARVEY RUVIN, CL

CASE NO.: 08-65603 CA 40

discretion, chose to apply the payments it made under the Elevenhome Note to the 24-Month Tranche first. Indeed, ARE 53 provided Elevenhome with monthly account statements which showed that the 24-Month Tranche was "Paid in Full [on] 2/15/07[,]" leaving only the 18-Month Tranche to be paid. Elevenhome had a right to and relied on the representation made month after month by ARE 53 that these statements contained accurate and correct information. Having failed to make any of the required monthly interest payments since March 31, 2008 or to otherwise amortize the 18-Month Tranche by October 28, 2007, ARE 53 is in default of the provisions of the Elevenhome Note which require "[a]ccrued interest [to] be paid monthly on or before the first day of each calendar month after the execution of this Note[,]" and the provisions which require the 18-Month Tranche to be "fully amortiz[ed]" within eighteen months.

22.    Alternatively, the parties modified the terms of the Elevenhome Note by subsequently agreeing to the First Amendment to Settlement Agreement (the "First Amendment"). Although neither ARE 53 nor Elevenhome were named as parties to the First Amendment, it was signed by Eric Magno, who was Elevenhome's Manager and by Kirsch on behalf of ARE, which was ARE 53's Manager. Their signatures on behalf of the parties to the Note was sufficient to modify the terms of the Elevenhome Note. *See St. Joe Corp.*, 875 So. 2d at 382 ("Under Florida law, the parties' subsequent conduct also can modify the terms in a contract."); *Danforth Orthopedic*, 750 So. 2d at 776 ("[P]arties can modify the terms of their contract by subsequent conduct."). The First Amendment treated the $3,456,511 reflected in ARE 53's monthly account statement as a balance due and owing as of April 28, 2008, and provided for an extension of the maturity date to January 1, 2009 if certain conditions were met. Although the specified conditions were never met and the maturity date reverted back to the modified maturity date of April 28, 2008, nevertheless, the parties agreed to the payments due

7



CASE NO.: 08-65603 CA 40

under the 18-Month Tranche. Consequently, ARE 53 defaulted under the Elevenhome Note by failing to make any payments of principal or interest since April 28, 2008 when the outstanding balance of the Elevenhome Note matured.

23.    Under either of the scenarios discussed above, ARE 53 is also in breach of the default provisions contained in paragraph 6 of the Elevenhome Note, which specifically defines a default to include the failure by ARE 53 to meet its obligation to make required principal or interest payments, and provides that "[i]n the event of default [t]hereunder, the entire amount due [t]hereunder shall be immediately due and payable."

24.    Finally, ARE 53's argument that its obligation to pay the outstanding principal and interest owed under the Elevenhome Note will not arise until it has liquidated all of the assets, however long it might be before it actually does so, is equally unavailing. As an initial matter, the term "Liquidation Date" appears in the "Interest" section of the Elevenhome Note and appears only to describe when "Deferred Interest" is due under the Elevenhome Note. Additionally, in order to give the meaning which ARE 53 ascribes to the Note, the Court would have to disregard the words "fully amortizable" used to describe the maturity date of the 18-Month Tranche, which, according to ARE 53's own account statements, is the only tranche that remains to be paid.

25.    Moreover, even assuming *arguendo* that the term "Liquidation Date" describes when the remaining principal is due under the Elevenhome Note, ARE 53 nevertheless defaulted on the Elevenhome Note by failing to liquidate the assets within a reasonable time. Although the Elevenhome Note defines the term "Liquidation Date" as "the date on which [ARE 53] has disposed of all or substantially all of the assets," it does not fix a date certain by which this liquidation is supposed to occur. Under Florida law, when no time or an indeterminate or

A TRUE COPY
CERTIFICATION ON FILE IN
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON FILE IN
HARVEY RUVIN, CLERK

8

CASE NO.: 08-65603 CA 40

indefinite time is specified for the performance of an act, the law implies a reasonable time for its performance. *See Hatcher v. Miller*, 427 So. 2d 1039, 1040 (Fla. 1st DCA 1983); *see also Hammond v. DSY Developers, LLC*, 951 So. 2d 985, 988 (Fla. 3d DCA 2007); *De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. 3d DCA 1998); *Doolittle v. Fruehauf Corp.*, 332 So. 2d 107, 109-10 (Fla. 3d DCA 1976); *and Tyner v. Woodruff*, 206 So. 2d 684, 686 (Fla. 4th DCA 1968). Moreover, evidence may be introduced to aid in ascertaining what was intended as a reasonable time. *See Whiting v. Gray*, 8 So. 726, 727 (Fla. 1891).

26.    I find that a reasonable time for liquidating the assets was, at most, eighteen months from the date of the Elevenhome Note. At or about the time ARE 53 delivered the Elevenhome Note, ARE had made numerous representations that the loan would be repaid no later than eighteen months from the date of the loan. On August 27, 2007, the day before Kirsch signed the Elevenhome Note, Kirsch sent an email to Magno attaching a "cash flow" which projected that the assets would be liquidated by no later than eighteen months. Magno testified that Kirsch's representations regarding how long it would take to liquidate the assets were consistent with the manner in which two prior loans Elevenhome had made to ARE were paid back. Both were paid within eighteen months from the date of the respective loans. Thus, even it is assumed that the principal balance owed under the Elevenhome Note was payable only upon the liquidation of all of the assets, ARE 53 has nevertheless defaulted under the Elevenhome Note by failing to liquidate the assets and pay Elevenhome the outstanding principal and interest owed on the Elevenhome Note within eighteen months.

27.    With respect to Count III of Plaintiffs' Second Amended Complaint for reformation of the Elevenhome Note, the Court finds in favor of Elevenhome and reforms the Elevenhome Note to reflect that the holder of the Note is "Elevenhome Limited" instead of

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO.: 08-65603 CA 40

"Eleven Homes Limited." Specifically, the Court finds that there was a mutual mistake, as both parties (ARE 53 and Elevenhome) intended to deliver the Elevenhome Note to "Elevenhome Limited," but due to a scrivener's error instead made it payable to "Eleven Homes Limited," a non-existent entity. *See Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1372 (Fla. 1987) ("A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument."). It is clear from the evidence that, but for this clerical error, Couch intended Elevenhome to be the entity named as the holder of the Elevenhome Note. ARE 53 did not have a vote in the matter and was essentially indifferent to Couch's decision. 21 *Bevis Constr. Co. v. Grace*, 134 So. 2d 516, 519 (Fla. 1st DCA 1961) ("[E]quity will reform an instrument to prevent manifest injustice and to express the true intent of the parties."); *Providence Square*, 507 So. 2d at 1369 ("A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument.").

**WHEREUPON it is ORDERED AND ADJUDGED that:**

28.    Final Judgment is entered in favor of Elevenhome Limited on Counts I and III of Elevenhome Limited's Second Amended Complaint against Defendant American Residential Equities, LIII, LLC.

29.    Elevenhome Limited, whose address is 7330 SW 148th Street, Miami, Florida 33158, shall recover from **American Residential Equities, LIII, LLC**, whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131, the sum of $6,650,435.13 (six million six hundred fifty thousand four hundred thirty five dollars and thirteen cents), for all of which let execution issue.

10

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK

CASE NO.: 08-65603 CA 40

30.   Pursuant to section 55.03, Fla. Stat. (2011), this judgment shall bear interest at the legal rate of 6% (six percent) *per annum* from the date of the judgment until paid.

31.   Pursuant to the terms of the Elevenhome Note, Elevenhome is entitled to recover its reasonable attorneys' fees and costs from the American Residential Equities, LIII, LLC. The Court reserves jurisdiction to determine the amount of such attorneys' fees and taxable costs.

32.   ARE 53 shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on Elevenhome's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

33.   Jurisdiction of this case is retained to enter further orders for the award of fees and costs and to compel ARE 53 to complete form 1.977, including all required attachments, and serve it on Elevenhome's attorney.

**ORDERED** in Chambers at Miami-Dade County, Florida this _____ day of March, 2011.

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office._____ AD 20___
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____

6089

HERBERT STETTIN
SENIOR CIRCUIT JUDGE

Copies furnished to:
- Jose M. Ferrer, Esq.
- Jorge D. Guttman, Esq.
- Alan Rosenthal, Esq.
- Natalie J. Carlos, Esq.

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office._____ AD 20___
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk _____

MIAMI 2419814.2 7904133172

11