**PLATZER, SWERGOLD, KARLIN, LEVINE,
GOLDBERG & JASLOW, LLP**
*Local Counsel for Kroll Ontrack, Inc.*
1065 Avenue of the Americas, 18th Floor
New York, New York 10018
Telephone: (212) 593-3000
Facsimile: (212) 593-0353
Clifford A. Katz, Esq.

MESSERLI & KRAMER P.A.
*General Counsel for Kroll Ontrack, Inc.*
1400 Fifth Street Towers | 100 South Fifth Street
Minneapolis, MN 55402-
Telephone: (612) 672-3709
Fax: (612) 672-3777
Benjamin J. Court, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Case No.: 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**OBJECTION OF KROLL ONTRACK, INC. TO THE DEBTOR'S FIRST
OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**
_____

**INTRODUCTION**

Kroll Ontrack, Inc. ("Kroll"), by and through its attorneys, Platzer, Swergold, Karlin, Levine, Goldberg & Jaslow, LLP, hereby submits this Objection to the First Omnibus Objection to Claims (Late-Filed Claims) [Dkt. No. 3573] (the "Objection") filed by Debtor Residential Capital, LLC and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") with respect to the Debtors' objection to the proof of claim of Kroll Ontrack, Inc. [Claim #6325 ] (the "Kroll Claim"). For all of the

reasons that follow, the Court should deny Debtors' objection and accept and allow the Kroll Claim.

## FACTS

1. On May 14, 2012, (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court seeking relief under Chapter 11 of the United States Code (the "Bankruptcy Code"). The cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

2. According to Schedule G of the Debtors' Schedules of Assets and Liabilities for Residential Funding Company, LLC [Dkt. No. 548], Kroll provided services to at least one of the Debtors prior to the Petition Date.

3. As specifically set forth in the Declaration of Molly Rice filed annexed hereto and incorporated herewith as Exhibit "A", on or about October 31, 2012, Kroll prepared and submitted the Kroll Claim. Pursuant to the Kroll Claim, as of the Petition Date, the amount due and owing from Residential Funding Company, LLC to Kroll was $487,118.18.

4. Molly Rice, Kroll's accounts receivable supervisor, prepared the Kroll Claim and promptly placed it with Kroll's internal shipping department for mailing via USPS First Class Mail, consistent with established procedures. Thereafter, no problem or issue relative to the delivery of the Kroll Claim was brought to her attention until May 2013, when Kroll was served with an objection from the Debtors (the "Objection"). [Dkt. No. 3573]. The Objection stated that Kurtzman Carson Consultants, LLC – the Debtors' third-party claims administrator – received the Kroll Claim on December 5, 2013,

approximately two weeks after the claims bar date and approximately five weeks after Ms. Rice completed and delivered it.

## LEGAL ARGUMENT

### I. THE KROLL CLAIM PROOF OF CLAIM SHOULD BE ACCEPTED.

5. In <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership, et al.</u>, 507 U.S. 380 (1993), the United States Supreme Court empowered the Bankruptcy Courts to accept late filed claims "where the failure to act was the result of excusable neglect." In doing so, the Supreme Court ruled that late filed claims should be permitted if the untimely filing was "caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control." <u>Id</u>. at 388.

6. According to the Supreme Court in <u>Pioneer</u>, what constitutes excusable neglect is an equitable matter and all relevant circumstances surrounding the party's omission must be considered in making the determination. <u>Id</u>. The factors to be considered are: (1) the risk of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) whether the movant acted in good faith; and (4) the reason for the delay, including whether it was within the reasonable control of the movant. <u>Id</u>. at 395.

#### A. Accepting the Kroll Claim Would Not Prejudice the Debtors.

7. Courts have determined that the most important factor to be considered in determining whether to permit a late-filed claim is prejudice to the debtor. <u>In re Papp Int'l, Inc.</u>, 189 B.R. 939, 945 (Bankr. D. Neb. 1995); *accord*, <u>In re Brown</u>, 159 B.R. 710, 716 (Bankr. D. N.J. 1993). Prejudice is limited to those circumstances in which the late filing of

3

the claim injures or damages the debtor. Id. at 945 (citing Webster's Ninth New Collegiate Dictionary, 928 (1990) (defining prejudice)).

8. Bankruptcy courts have often allowed late filed claims where there is no proof of prejudice to the debtor. See In re Earth Rock, Inc., 153 B.R. 61 (Bankr. D. Idaho 1993) (claim allowed eight months after expiration of deadline); In re Sacred Heart, 186 B.R. 891 (Bankr. E.D. Pa. 1995) (claim allowed four months past bar date); In re Brown, 159 B.R. at 716 (amendments to claims allowed as timely filed claims under Rule 9006(b)(1) five months after bar date); In re Beltrami, 178 B.R. 389 (Bankr. M.D. Pa. 1994) (claim allowed more than two years after bar date); In re Bryne, 162 B.R. 816 (Bankr. W.D. Wisc. 1993) (holding that the impact on the proceedings were minimal when the proof of claim was filed 14 months late); In re Thomson McKinnon Sec., Inc., 159 B.R. 146 (Bankr. S.D.N.Y. 1993) (granting motion to extend the time to file a proof of claim where proof was filed two and a half years after the bar date).

9. Nothing here suggests that accepting the Kroll Claim would result in any injury or damage to the Debtors. To the contrary, the circumstances establish that no such injury or damage would occur.[1] No Chapter 11 plan of reorganization has been proposed. No funds have been paid to unsecured creditors for antecedent debt and no determination has been made as to what portion of each unsecured creditor's claim will be ultimately paid.

---

[1] Conversely, the harm that would be suffered by Kroll if the Objection is sustained is real and substantial. It is undisputed that Kroll provided the services detailed on the invoices accompanying the Kroll Claim and that Kroll was not compensated for those completed services, which plainly benefitted the Debtors.

4

Further, it is still relatively early in the reorganization of the Debtors' affairs and the overall adjudication of the bankruptcy estates.

10. The only potential prejudice that could possibly befall the Debtors is the depletion of funds to pay timely filed claims. However, a "simple dollar-for-dollar depletion of assets otherwise available for timely filed claims" is not the type of prejudice that is to be avoided. In re R.H. Macy & Co., Inc., 166 B.R. 799 (Bankr. S.D.N.Y. 1994). This factor weighs in Kroll's favor.

### B. **The Delay in Debtors' Receipt of the Kroll Claim was Brief**.

11. The second factor examines the length of the delay and its potential impact on judicial proceedings. There is no bright-line rule governing when the lateness of a claim renders it too late. In re Enron, 419 F.3d 115, 128 (2nd Cir. 2005). The "lateness of a claim must be considered in the context of the proceedings as a whole." Id.

12. In this matter, Kroll prepared the Kroll Claim and submitted it for mailing on October 31, 2012. The Objection contends the Debors' third party claims administrator did not receive it until December 5, 2013, about two weeks after the claims bar date. This is not a significant period of time considering the overall duration and complexity of the Debtors' bankruptcies. Additionally, no substantive decisions regarding unsecured creditor claims were determined during this two week period. Numerous courts have accepted late filed claims where the delay was considerably longer. Accordingly, this factor weighs in Kroll's favor.

### C. **Kroll Acted in Good Faith**.

13. The third factor examines whether the creditor acted in good faith.

5

14. Here, Kroll is not aware of any allegations or evidence that it acted other than in good faith.

15. The Declaration of Molly Rice states that Kroll prepared the Proof of Claim and timely submitted it for mailing 17 days before the claims bar date. Thus, Kroll did not sit on its hands or wait until the last minute to submit the Proof of Claim. Instead, Kroll diligently complied with all Court rules and instructions in preparing and submitting the Kroll Claim. As explained below, due to circumstances beyond Kroll's control, Debtors' third-party claims administrator did not receive the Kroll Claim until December 5, 2012. This factor weighs in Kroll's favor.

D. **Circumstances Beyond Kroll's Control Interfered With the Timeliness of the Kroll Claim**.

16. The final factor examines the reason for the delay, including whether it was within the reasonable control of the moving party. A creditor seeking to file a late claim "must explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." In re Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007).

17. The Declaration of Molly Rice details the circumstances surrounding the preparation and submission of the Kroll Claim. Ms. Rice as part of her normal responsibilities routinely files proofs of claim nationwide and is familiar with the process, including cases involving third-party claims administrators. Ms. Rice believes she

6

reviewed all instructions regarding the preparation and submission of proof of claims in this matter and that she strictly followed those instructions.

18. As detailed in the Declaration of Molly Rice, to the best of Ms. Rice's knowledge and recollection, she diligently prepared the Kroll Claim on or about October 31, 2012, and placed it in the US Domestic Outgoing Mailbox located in the company's on-site shipping warehouse that same day. Ms. Rice has routinely followed a similar process numerous times and has never before had a claim objected to on the basis it was untimely.

19. At no time prior to the claims bar date was Ms. Rice notified by any person at Kroll, Debtors' third-party claims administrator, or anyone else about any problem or issue relative to the timely submission of the Kroll Claim. Ms. Rice was not aware of any allegations that the Kroll Claim was untimely until May 2013 when Kroll received the Objection. Had Kroll's shipping department encountered a problem in connection with the mailing of the Kroll Claim, or been notified of a problem by the United States Postal Service or anyone else, Ms. Rice would have been notified.

20. Some intervening circumstance plainly occurred between October 31, 2012, when Ms. Rice placed the Kroll Claim in the US Domestic Outgoing Mailbox in the company's shipping warehouse, and December 5, 2012, when the Kroll Claim was stamped as received by the Debtors' agent. This intervening circumstance, however, was not due to the inadvertence, mistake, or intentional conduct of Ms. Rice or, to Kroll's knowledge, any other Kroll employee or agent. As a result, Kroll should not suffer the harsh penalty of having the entire Kroll Claim rejected.

## **CONCLUSION**

21.     For the reasons stated above, Kroll respectfully requests the Court to deny Debtors' objection and accept and allow the Kroll Claim.

Dated: July 8, 2013              PLATZER, SWERGOLD, KARLIN,
                                 LEVINE, GOLDBERG & JASLOW, LLP
                                 Local Counsel for Kroll Ontrack, Inc.

                                 By:    */s/ Clifford A. Katz*
                                        CLIFFORD A. KATZ, Esq.
                                        A MEMBER OF THE FIRM



                                 MESSERLI & KRAMER P.A.
                                 General Counsel for Kroll Ontrack, Inc
                                 Benjamin J. Court, Esq.
                                 1400 Fifth Street Towers | 100 South Fifth Street
                                 Minneapolis, Minnesota 55402
                                 .