1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10            Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            July 3, 2013

19            10:02 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1

2   Status conference

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  David Rutt

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

3

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER LLP
 4        Attorneys for Debtors
 5        1290 Avenue of the Americas
 6        New York, NY 10104
 7
 8   BY:   GARY S. LEE, ESQ.
 9
10
11   KRAMER LEVIN NAFTALIS & FRANKEL, LLP
12        Attorneys for Official Creditors' Committee
13        1177 Avenue of the Americas
14        New York, NY 10036
15
16   BY:   KENNETH ECKSTEIN, ESQ.
17
18
19   AKIN GUMP STRAUSS HAUER & FELD LLP
20        Attorneys for UMB Bank
21        One Bryant Park
22        New York, NY 10036
23
24   BY:   DANIEL H. GOLDEN, ESQ.
25
```

4

```
 1
 2   WHITE & CASE LLP
 3        Attorneys for Ad Hoc Group of Junior Unsecured
 4        Noteholders
 5        1155 Avenue of the Americas
 6        New York, NY 10036
 7
 8   BY:   J. CHRISTOPHER SHORE, ESQ.
 9
10
11   MUNGER TOLLES & OLSON
12        Attorneys for Berkshire Hathaway
13        355 South Grand Avenue
14        35th Floor
15        Los Angeles, CA 90071
16
17   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)
18
19
20
21
22
23
24
25
```

**RESIDENTIAL CAPITAL, LLC, ET AL.**

5

1                       P R O C E E D I N G S

2                  THE COURT:  All right.  Please be seated.

3             We are in Residential Capital number 12-12020 and also

4    in connection with two adversary proceedings, 13-01343 and 13-

5    01277.

6                  Mr. Lee.

7                  MR. LEE:  Good morning, Your Honor.  Gary Lee from

8    Morrison and Foerster for the debtors.

9                  THE COURT:  Let me just say before you proceed, this

10   is on the record.  Go ahead.

11                 MR. LEE:  Thank you, Your Honor.  And thank you for

12   seeing us on short notice.

13            Your Honor, I just want to be clear from the outset

14   that this is not about discovery.  There is a telephonic

15   conference scheduled for next Tuesday.

16                 THE COURT:  Well, I'll tell you now, that conference

17   is going to be in court rather than on the telephone.  Mr.

18   Walper, who is in California, can participate by telephone, but

19   we're going to -- I want everybody here at 5 o'clock.

20                 MR. LEE:  Thank you, Your Honor.

21            What this is about, Your Honor, is getting Your

22   Honor's guidance on how we should respond to the noteholders'

23   attempts, second round, third round, to raise plan issues in

24   the context of the adversary proceeding.

25            Your Honor, there are three things I want to address.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

6

1    First, we think Your Honor was abundantly clear at the last

2    status conference that the adversary proceeding related to

3    nonplan issues.  We believe, and I'll go through this in some

4    more detail, that the noteholders ignores that direction.

5    Second, just to cut through some of the letter writing or at

6    least the three letters, we're not here to prejudice any

7    confirmation objections they can conjure up.  We'll be

8    absolutely clear about that.  Third, we do believe that the

9    notion of interdebtor conflicts was revolved when Your Honor

10    approved the plan support agreement.  And if I may, Your Honor,

11    I'd like to go through those three points in a little bit more

12    detail.

13              Later today, we will be filing a plan and disclosure

14    statement.  It's a plan that has the support of creditors with

15    claims throughout the debtor's capital structure, and we expect

16    overwhelming support for that plan from impaired creditors at

17    the principal debtors.  The plan embodies a number of

18    compromises, the product of Judge Peck's mediation, and one of

19    those compromises relates to intercompany claims.  For the

20    noteholders, Your Honor, this case -- because we're paying them

21    post -- sorry -- we're paying them par plus accrued, this case

22    now comes down to one issue, post-petition interest and post-

23    petition interest alone.

24              The reason we requested this status conference, Your

25    Honor, is to seek some direction on how and to what extent the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

7

1   noteholders are going to be able to disrupt the schedule set by

2   Your Honor in relation to the consolidated adversary

3   proceeding.  And Your Honor suggested that we would -- should

4   come back to the court, that we shouldn't let these sorts of

5   issues fester, so that's why we're here.

6       We provided Your Honor with a copy of the junior

7   secured noteholders' letter which comes out of a unsuccessful

8   playbook that we've seen in other cases pending and resolved in

9   the southern district of New York.  Refer Your Honor to Charter

10   and Adelphia.

11       Now, as I said, Your Honor was abundantly clear during

12   the chambers conference on scheduling that the allowable scope

13   of the adversary proceeding was nonplan matters.  I don't know

14   if Your Honor has seen a copy of the junior secured

15   noteholders' counterclaims that were filed, I believe, this

16   week -- or last week.  I think they speak for themselves as to

17   where the junior secured noteholders intend to go with the

18   adversary proceeding.  Somebody on the noteholder side decided

19   to ignore Your Honor's direction because something like over a

20   dozen of the declarations sought by the counterclaims relate to

21   the global settlement that's embodied in the plan support

22   agreement and will be embodied in the plan.

23       And although I don't intend to address discovery

24   matters, and I didn't have enough time to actually go through

25   the 247 document requests we received, I just note for the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

8

1    record that ten alone go to the ability of the debtors to

2    resolve intercompany claims.  So just to give you a flavor of

3    the counterclaims, Your Honor, ten of them seek a determination

4    of the exact distributable value of each of the intercompany

5    claims.  That, Your Honor, is a plan issue because the

6    intercompany claims have been settled as part of the plan.

7         Second, Your Honor, several more seek to subordinate

8    the RMBS trustee claims, the monoline claims, and the

9    securities claims.  Again, Your Honor, the exact claims that

10   are resolved as part of the plan.  And there's something more

11   to this playbook as well, Your Honor.  The junior secured

12   noteholders also objected to the FGIC settlement that resolves

13   the FGIC and the trustee's claims.  Now, they're free to do so,

14   and we'll address that at the appropriate time, but I just,

15   again, note for the record that that 9019 settlement addresses

16   not the plan or the plan-related issues but rather settles

17   nearly ten billion dollars of claims, the claims totally 596

18   million dollar split between two debtors.  And I can't fathom

19   why anybody would object to that.

20        Your Honor, we're not asking you for anything new

21   here.  Your Honor was very clear to Mr. Uzzi what the adversary

22   proceeding will cover, and I don't think that message has come

23   through.

24        The other part of the playbook, which I think was

25   particularly disconcerting to the debtors because it came the

1    same day Your Honor approved the plan support agreement, is the

2    attack on the process run by Judge Peck, the attack on Mr.

3    Kruger and on us as counsel.  And we made it very clear when we

4    sought Judge Peck's appointment as mediator that one of the

5    things he would mediate was going to be intercompany claims.

6    The junior secured noteholders refused to participate in that

7    mediation based on the rules Judge Peck set.  Those are not

8    rules that the debtor set.  We also made it clear in the

9    application to appoint Mr. Kruger as the CRO that he would

10   assist in resolving interdebtor and intercreditor disputes and

11   that he was vested with authority to make decisions on behalf

12   of each debtor.

13           So, Your Honor, we think it's totally unfair fourteen

14   months into this case after Your Honor approved the plan

15   support agreement as being in the best interest of each of the

16   debtors, after we agreed to pay the junior secured noteholders

17   par plus accrued, after we agreed to pay post-petition interest

18   if they prevail in the adversary for them to take this tack.

19   I've just come back from England, Your Honor, and the

20   expression is, "it just isn't cricket."

21           They can attack the transactions embodied in the plan.

22   We've given them that right.  It's been reserved.  They can

23   attack good faith at confirmation if they want to.  We are not

24   going to, nor do we believe we can prejudice their confirmation

25   objections.  What they can't do, Your Honor, is create

12-12020-mg    Doc 4164    Filed 07/03/13    Entered 07/08/13 12:06:59    Main Document
Pg 10 of 48
**RESIDENTIAL CAPITAL, LLC, ET AL.**

10

1    interdebtor conflicts or disagreements where there are none and

2    make those part of the adversary proceeding.  Again, Your

3    Honor, that's beyond what you told them.  The adversary

4    proceeding relates to the junior secured note issues and not

5    the plan.

6             So what we're asking Your Honor for is for some

7    direction and perhaps repeat direction with respect to two

8    matters.  First, that allegations regarding conflicts have no

9    part of the adversary proceeding.  If the junior secured

10   noteholders insist on challenging the bona fides of plan

11   settlements under 9019, they can do so at confirmation, but the

12   notion of interdebtor conflicts went out the window when the

13   plan support agreement was approved.

14            Second, Your Honor, that issues that are at the core

15   of the global settlement, the priority of claims, the amount of

16   claims, the intercompany settlement, the AFI settlement

17   allocation are exactly those things, plan issues.  Your Honor

18   said it once, but it doesn't appear to have taken.  They're not

19   part of the adversary proceeding.

20            Your Honor, our view is that it will defeat the entire

21   purpose of the mediation if we have to litigate those issues

22   outside of a plan.

23            THE COURT:  Thank you, Mr. Lee.

24            MR. LEE:  Thank you.

25            THE COURT:  Mr. Shore.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MR. SHORE:  Yes, Your Honor, Chris Shore from White &

2    Case on behalf of the Ad Hoc Group.

3          Let me state at the outset as set forth in the letter

4    that got sent to you either late last night or early this

5    morning, we object to the setting on this kind of notice and on

6    the circumstances under which it arose, and in particular now,

7    since what Mr. Lee said is the letter which pertains to

8    discovery issues really isn't doubt discovery issues at all but

9    rather is an open-ended request for this Court's guidance on

10   how to deal with issues.  I'm not going to address the

11   extraneous issues in the letter or what were said today with

12   respect to the mediation or the discovery.  We'll handle those

13   either in the mediation or in the discovery conference unless

14   Your Honor wants to hear from me on that.

15          Fundamentally, the issue in this case arises out of

16   the debtor's very demonstrable shift in positions with respect

17   to what they're doing with respect to interdebtor conflicts in

18   these cases.  They started out saying that it's all going to be

19   proposed for a settlement.  Then they came back and said, well,

20   it's not being proposed for a settlement, it's being -- we've

21   determined that they have no mathematical value.  Then they

22   came back and said, actually, what we want to do -- and this

23   was the statement that was made on the report at the PSA

24   hearing and in their PSA reply -- what we intend to do is to

25   waive intercompany claims based upon a legal determination

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    that's been made that those claims have no merit.  We had a

2    call --

3              THE COURT:  What they've said, I bought, was that they

4    propose a settlement which must be approved under 9019 and plan

5    confirmation standards that would value the intercompany claims

6    at zero, but it's a settlement, it's not a determination --

7    it's -- a settlement is a compromise.

8              MR. SHORE:  We thought as much as well, Your Honor,

9    and that's where the problem lies.  We can all have our views

10   as to whether a plan which throws up interdebtor conflicts in

11   the air and says you all creditors resolve it makes sense.  I

12   happen to think that it just takes the fiduciary out of the

13   seat, but that's a process which works.  That's not what the

14   debtors are proposing, Your Honor.  That's what they had

15   proposed.  And then we went to them and said first, there's a

16   problem with a settlement like this, you're settling everything

17   at zero, their -- please explain to us how, when you have one

18   intercompany claim is at 2.6 billion dollars running from one

19   debtor to another, that gets settled at zero, same with a 35

20   million dollar claim that runs from this debtor.  They didn't

21   have an answer to that and --

22             THE COURT:  Well, the time -- the time for the answers

23   to those questions will be when the Court considers the

24   settlements -- if the Court gets to that point of considering

25   the settlements embodied in the plan.  It's not today.  I

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1    understand your views --

2         MR. SHORE:  Um-hum.

3         THE COURT:  -- and I understand the views of the

4    debtor -- debtors.  That's not today's issue.

5         MR. SHORE:  I didn't -- I didn't make it today's

6    issue, Your Honor.  What they're saying is that this issue is

7    not going to be litigated, and let me respond to that in two

8    respects.

9         First, the notion that this got resolved in the PSA is

10   contrary to everything in the record on that PSA.  As we set

11   forth in our supplemental response, the first time they said,

12   we're seeking to waive intercompany claims because we believe

13   they have no value, we called them up immediately -- and this

14   is in the supplemental response -- and said, you don't really

15   mean that, do you, that you're making a determination that

16   these claims have no legal merit?  They said, no, we're not,

17   we're just saying that the math doesn't work, that the math

18   doesn't provide value.  That's why we filed the supplemental

19   response.

20        But in that, we said we preserve all rights with

21   respect to this, and there were statements made on the record,

22   we're concerned that what the debtors are doing here is losing

23   any sensitivity to the issue of how to handle interdebtor

24   conflicts.  You want to propose it for a settlement, fine, but

25   you can't come in as an advocate and say, on behalf of one

**RESIDENTIAL CAPITAL, LLC, ET AL.**

14

1  client, these intercompany claims are good, those enter company

2  claims are bad.  You also can't say, in between the clients,

3  this is how we think the Ally settlement should be allocated.

4  You can't do what they want to do on another interdebtor

5  conflict, which is how to allocate expense and push all the

6  expense of these cases down OpCo's --

7          THE COURT:  Are you suggesting, Mr. Lee, that the

8  debtor unilaterally decided those issues or that those were

9  issues that at this stage were resolved among the parties to

10  the PSA?  It's not -- this is not a debtor-only issue.  The two

11  term sheets that are attached to the PSA, which the Court has

12  approved the PSA at least as to those parties who've signed the

13  PSA, they've agreed to support a plan consistent with the term

14  set forth in the two term sheets.

15          So I've seen nothing to suggest that those were

16  unilateral decisions by the debtor or the CRO.  Whether they

17  get approved by the Court is a different issue, but you make it

18  sound as if the debtor unilaterally decided how those issues

19  would be resolved.

20          MR. SHORE:  I --

21          THE COURT:  It doesn't appear to the Court to be that

22  way.

23          MR. SHORE:  Okay.  Well, then maybe we can get a --

24  we'll certainly get --

25          THE COURT:  Well, just address me.  Don't --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1          MR. SHORE:  Sure.

2          THE COURT:  Don't address questions to --

3          MR. SHORE:  No, I'm saying I think we're going to get

4    an answer, a definitive answer, from the debtors on how they're

5    dealing with these intercompany claims in the context of the

6    plan and disclosure statement that are going to be filed, which

7    is why I didn't want to have this proceeding today.  We will

8    get the definitive view.

9          My point is, it sure sounds to us like what the

10   debtors want to do, to avoid an issue that we raised with

11   respect to adequate protection, is say the reason the

12   settlement works and the reason the Court can approve the

13   settlement is because the debtors have already determined,

14   based upon Mr. Kruger's negotiation with himself, and advice by

15   Morrison & Foerster, that all the intercompany claims are

16   without legal merit.  If that's the position they're taking,

17   that, I think, is going to be a surprise to Your Honor and it's

18   going to meet with questions from me, which is, how do you plan

19   to do that, which was the purpose of the letter.  We still have

20   not gotten a response.

21         If Mr. Lee stands up and says there's nothing about

22   our plan which will seek a determination from this Court that

23   our waiver of intercompany claims in connection with the

24   settlement was supportable by the law and by legal

25   determination of the respective rights and obligations of our

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1    many debtors, that's one thing.  That's not what they're

2    saying.

3            THE COURT:  Well, I guess we can all -- you can spend

4    your weekend reading the plan and disclosure statement.

5            MR. SHORE:  Now, with respect to the counterclaims and

6    the injection of issues in this case, as Your Honor pointed out

7    on the PSA, there is no plan on file.  The debtors requested,

8    and Your Honor ordered, that we file our answer and

9    counterclaims with respect to all issues relating to the

10   allowance of post-petition interest.  There is no --

11           THE COURT:  Let me see if I can put this aspect of it

12   to rest, okay?  I don't view anything that this Court has done,

13   or the order that was entered approving the PSA, or what

14   occurred at any prior conference in the court, as limiting the

15   JSNs as to what would be an appropriate pleading, what would be

16   an appropriate counterclaim under applicable Federal Rules of

17   Civil Procedure.  They can and should and did assert claims

18   that they believe are supported by the facts and the law.

19   Whether that's true or not, we'll see.  Approval of the PSA, to

20   which the JSNs were not parties, cannot alter the JSN's rights.

21           With that said, however, not all issues necessarily

22   raised by the counterclaims need to be resolved at one time.

23   And what I've been clear about and what I want to be clear

24   about is that I intend -- I think I referred to it as the phase

25   one trial, the trial of the issues -- well, of issues, we'll

**RESIDENTIAL CAPITAL, LLC, ET AL.**

17

1    say, not the issues -- of issues with respect to the JSNs, the

2    extent the issues are included within the 9019 that's going to

3    be embodied in the plan.  It seems to me that those will be

4    heard, tried, to the extent they're contested, in the

5    confirmation hearing.

6            Specifically, this issue of valuing intercompany

7    claims at zero, it's an issue that affects many creditor

8    constituencies, not just the JSNs.  And I don't intend to hear

9    or resolve the evidence or arguments with respect to that issue

10   at a trial of the adversary proceedings.

11           To the extent that the JSNs raise issues in their

12   counterclaims that the debtors believe -- and we'll see whether

13   the parties can agree on this or not -- that are what the

14   debtor describes as plan confirmation issues, they can be

15   bifurcated from the issues that'll be tried.  I mean, this is

16   not -- I mean, the procedures are pretty clear about this.  I

17   have great discretion about what issues -- if I bifurcate here

18   and resolve particular issues, I can do that, and I will do

19   that.  To the extent that issues raised by the JSNs are covered

20   by the 9019, I'll go ahead and hear and decide it.

21           I mean, you know, the proponents of the plan --

22   proponents of the 9019 settlement, have a larger hurdle when

23   the objectors are not part -- claim that a settlement is

24   improperly affecting their rights.  But certainly there is

25   authority for a court to go ahead and approve it, unless

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1    there's an agreement with the JSNs, and if they oppose plan

2    confirmation, and if they oppose the global settlement with

3    respect to intercompany claims, I'm going to have to hear the

4    evidence and decide it as part of plan confirmation, and I

5    will.

6             And to the extent they raise those issues, if properly

7    raised -- I don't believe, Mr. Lee, that anything I've said

8    from the bench or any order I've entered, including the order

9    approving the PSA, has affected, substantively, the rights of

10   the JSNs.  Okay.  So did they have to assert them?  Is this

11   compulsory counterclaims that they had to assert?  I'm not

12   going to get into that.  I don't know.  I'll tell you right

13   now, I haven't read the most recent round of pleadings, okay?

14   It may well be their position is that these are compulsory

15   counterclaims and they had to assert them.  And fine, so

16   they've asserted them.  Okay.

17             So anything else you want to add?

18             MR. SHORE:  Yeah, let me just respond to that last

19   piece, to make our position clear on this.  We heard Your Honor

20   loud and clear with respect to affecting rights of the others.

21   We have offered multiple mechanisms, procedural mechanisms for

22   handling our issues, independent of any issues that relate to

23   the global settlement or other parties.  That's just been

24   soundly rejected.  We're still trying to work through that.

25             Second, our counterclaims, actually, what we're trying

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    to do is, independent of the global settlement, there are

2    issues that have to be resolved.  For example, if they want to

3    settle the inter -- intercompany claims are our collateral;

4    there's no dispute about that.  If they want to settle those

5    claims at zero, they can do that --

6          THE COURT:  Well, when you say that's part of your

7    collateral, what I had understood your position to be is, for

8    example, you have a pledge of the equity of various ResCap

9    affiliates, and your position is if they have -- if they are

10   creditors on a substantial intercompany claim, that would

11   make -- which it paid in full or in substantial part, would

12   make that entity solvent, such that the equity had value.  You

13   claim you have the equity as part of your collateral package.

14   Do I understand that correctly?

15         MR. SHORE:  That's one issue.  The other issue is

16   intercompany claims.  So for example, RFC has a two billion

17   dollar claim scheduled -- plus billion dollar claim into

18   ResCap, LLC, which is pursuant to a notes agreement.  If value

19   flows, that is, if the 2.6 billion dollar claim is --

20         THE COURT:  May I ask you this?  Do you have a pledge

21   specifically of that intercompany claim or --

22         MR. SHORE:  Yes, on that one, we have various pledges

23   that -- or sorry, various grants --

24         THE COURT:  You have a pledge --

25         MR. SHORE:  -- of security interests.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1          THE COURT:  -- of a note?

2          MR. SHORE:  We do not.  We have a lien on the general

3    intangible of RFC.  If value flows on that -- and this is a

4    stipulated lien at this point; the debtors have agreed to it

5    and the committee is estopped, at this point, because they

6    didn't challenge it.  If value flows on that, so let's say the

7    two billion dollar claim gets paid at ten cents on the dollar

8    at ResCap, LLC, 200 million dollars flows, subject to our lien.

9    What they're doing here is they're saying there are no

10   intercompany claims.

11         THE COURT:  Oh, I understand what they're doing --

12         MR. SHORE:  Right.

13         THE COURT:  -- Mr. --

14         MR. SHORE:  So --

15         THE COURT:  -- Mr. Shore.

16         MR. SHORE:  So those are the counterclaims.  So let's

17   say they want to settle that claim at zero.  If Your Honor

18   determines, though, that that collateral was worth 200 million

19   dollars, we have a diminution in value, because the debtors

20   have disposed of the collateral of 200 million dollars.

21         THE COURT:  Well, if I determine that there are

22   disputed issues as to whether debt should be recharacterized as

23   equity, for example, and they've settled that issue, I don't --

24   what is it that says it can't be settled without your consent

25   or agreement?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1           MR. SHORE:  There's nothing that says it can't be

2    settled --

3           THE COURT:  Right.

4           MR. SHORE:  -- without --

5           THE COURT:  And so what the issue for the 9019 is:

6    Does the settlement pass muster?  It may or it may not.

7           MR. SHORE:  Right.  There are two issues --

8           THE COURT:  But that's not an issue for this phase one

9    trial.

10          MR. SHORE:  There are two issues there.  First of all,

11   the RFC one we understand.  There are other debtors there who

12   are not represented, even virtually, by any creditors who are

13   part of that negotiation.  So the notion that the OpCos below

14   waive their intercompany claims into the parent, as approved by

15   everybody who's sitting at those top levels, I think is one of

16   the problems with the 9019.  But more importantly --

17          THE COURT:  You'll attack it; if that's what you

18   believe --

19          MR. SHORE:  Right.

20          THE COURT:  -- that's what you'll -- you'll make that

21   argument.

22          MR. SHORE:  Even if it's settled, though, even if it's

23   settled at zero, if Your Honor says that the claims, the

24   particular claims had value but were settled at zero --

25          THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1        MR. SHORE:  -- as part of the --

2        THE COURT:  Mr. Shore?

3        MR. SHORE:  -- global compromise --

4        THE COURT:  How can I make this any clearer?  I said

5   it at the prior hearings.  This one's on the record; you can

6   get a transcript.  Okay?  If you have objections to plan

7   confirmation, if you have an objection to the settlements that

8   will be embodied in the plan, you will file your objection, and

9   I will hear them then.  Because the issue of the interdebtor

10  claims affects many constituencies, okay, they all have a right

11  to be heard, either in support of the settlement or in

12  opposition to the settlement.  Okay?

13       MR. SHORE:  And as a matter --

14       THE COURT:  And I plan to do that as part of the plan

15  confirmation, okay?  I've said it before; it may have been on

16  the transcript before.  Some of these hearings on scheduling

17  have not been on the record.  I wanted this one on the record,

18  okay?  You can order a transcript.  Okay.  Anything else you

19  want to say?

20       MR. SHORE:  Only this.  We have a procedure set in

21  place.  We have counterclaims that are filed in the adversary.

22  They have a time to respond to those.  I assume that what

23  they're going to do, after we see the plan and disclosure

24  statement, is move to have the Court abstain from hearing these

25  twelve --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1        THE COURT:  I don't think it's an abstention.  It's

2    not an abstention, I'm telling you.  It may be that I will

3    bifurcate the issues.

4        MR. SHORE:  That may be another proposal as to how

5    they plan on dealing with it, which is bifurcating the issues.

6    That's fine.  But we need to have some procedure that sets in

7    place as to exactly --

8        THE COURT:  Okay.  I'm going to --

9        MR. SHORE:  -- what's happening.

10       THE COURT:  That is what I'm going to give some

11   guidance about.  Anything else you want to add, Mr. Shore?

12       MR. SHORE:  Nothing, Your Honor.

13       THE COURT:  All right.  Anybody else want to be heard?

14       Mr. Golden?

15       MR. GOLDEN:  Your Honor, UMB, as the indenture trustee

16   for all the junior secured noteholders, has heard the Court

17   loud and clear.  We understand, always understood, that it was

18   the intention of this Court to handle the settlement of the

19   intercompany claims as part of the global settlement in

20   connection with the plan process.  We don't have a problem with

21   that, per se.  But the debtor, in its adversary proceeding, in

22   its amended adversary proceeding, specifically Count 5 of that

23   adversary proceeding, puts into direct issue those intercompany

24   claims.  Count 5, paraphrasing, says they want a declaration

25   that the junior secured noteholders are undersecured.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1    Everybody here understands undersecured; the value of the

2    collateral is less than the amount of the claim.

3            Now, leaving aside the shaky legal proposition that

4    they're asserting, and we'll get to that in due course, that

5    claim, that count requires the junior secured noteholders and

6    UMB, as the fiduciary, to defend against that.  It is nobody --

7    it's not going to come as a surprise to anybody that a large

8    part of the collateral that the junior secured noteholders

9    assert they had are the intercompany claims.  And --

10            THE COURT:  You don't have a pledge of the

11    intercompany claims, do you?

12            MR. GOLDEN:  Your --

13            THE COURT:  Show me a piece of paper that says you

14    have a -- that your collateral specifically includes the

15    intercompany claims.  I've never understood that to be the

16    case.  You may -- Mr. Shore raises an issue about a pledge of

17    intangibles.  It may cover it; it may not cover.  Those as to

18    which you have a pledge of the equity of subsidiaries or

19    affiliates, if they're solvent, if the intercompany -- if

20    payment on the intercompany claims would mean they're solvent,

21    then there's value for you if you have a pledge of the equity.

22            But do you have a piece of paper that is a pledge of a

23    note or another piece of paper that reflects an intercompany

24    claim?

25            MR. GOLDEN:  As Mr. Shore explained, Your Honor, we

**RESIDENTIAL CAPITAL, LLC, ET AL.**

25

1   don't.  But it is --

2            THE COURT:  Okay.

3            MR. GOLDEN:  But it is our position --

4            THE COURT:  I understand your position --

5            MR. GOLDEN:  Okay.

6            THE COURT:  -- Mr. Golden.

7            MR. GOLDEN:  So having that as our position, we need

8   to defend against Count V which says we're undersecured.

9            THE COURT:  And the -- well, my understanding is they

10  claim you're undersecured, for a whole variety of reasons.  And

11  it may be that, in trying this first phase and this -- the

12  adversary, all issues aren't going to be resolved, because I

13  understand your point about if intercompany claims are not

14  valued at zero, you believe that that's enough for you to win.

15  And it may be that -- say RFC -- what, two billion dollars,

16  same intercompany claim -- I don't know what the -- what

17  creditor claims have been filed against RFC.

18          I mean, you may be able to deal with this issue --

19  we'll talk a little bit about discovery and trial even at

20  confirmation -- with a rifle shot and not a blunderbuss.  If

21  you pick -- if you think that you've got -- that there are

22  three of the intercompany claims that you believe beyond

23  question are what they purport to be and there's no basis to

24  settle them at zero, you'll focus on those at trial and not

25  have to go through fifty-one affiliates and -- I'm not going to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  tell you right now -- I may tell you later but I'm not going to

2  tell you right now how the trial ought to proceed.  Okay.  But

3  what I am telling everybody -- and so -- look, you raise the

4  issue in counterclaims that -- and look, I'm telling you, I

5  didn't read them yet, okay?  I will, okay?  But I haven't

6  read -- I got a lot going on.  I haven't read the latest round

7  of pleadings, okay?  I will take you at your word and, I think,

8  Mr. Shore's word, that you've raised issues in counterclaims.

9  And again, I don't know whether they're compulsory or not.  I

10  don't get particularly excited that you raised issues in the

11  counterclaims, that are going to ultimately get resolved as

12  part of a plan confirmation trial rather than this trial, okay?

13        What I want to avoid is -- if possible, is injecting

14  issues into this first trial that are going to necessarily

15  bring to the table every other creditor constituency, because

16  these are issues that apply across the board and not unique to

17  you.  The same applies to the debtor:  If they amended their

18  complaint and they added a Count V that you believe -- just a

19  count to say -- determine that you're undersecured, I don't

20  think is the problem, Mr. Golden.  It may be, if there are

21  three reasons they think that certain collateral isn't part of

22  your collateral package, for example -- I don't see what

23  prevents the Court from resolving that issue, okay?

24        MR. GOLDEN:  But they haven't pled it that way, Your

25  Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1          THE COURT:  Well --

2          MR. GOLDEN:  That's how the committee --

3          THE COURT:  Good, and you didn't plead your

4    counterclaims in such a way as to exclude from the trial -- the

5    first-phase trial of the adversary proceedings, a range of

6    issues.  That's fine.  Okay.  I -- we'll deal with it.  I

7    understand your point.

8          Anything else?  Any other point you have, Mr. Golden?

9          MR. GOLDEN:  Well, Your Honor, I do want to point out

10   that, while we understand the process, we understand the

11   procedures, this is asking the JSNs basically to defend against

12   the debtor's lawsuit with its left hand tied behind its back.

13         If you allow me to continue, Your Honor.

14         We think -- I know it's a matter of dispute; we've

15   laid it out -- that we have a claim on the intercompany claims.

16         THE COURT:  And you'll get a chance --

17         MR. GOLDEN:  I --

18         THE COURT:  Can you -- are you listening --

19         MR. GOLDEN:  I am.

20         THE COURT:  -- at all?

21         MR. GOLDEN:  Your Honor --

22         THE COURT:  Are you listening?

23         MR. GOLDEN:  Your Honor, I am.

24         THE COURT:  You'll get your chance to raise that

25   issue.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1          MR. GOLDEN:  I appreciate that, Your Honor.  I'm --

2          THE COURT:  You're not going to get a chance to raise

3 it in this phase-one trial, Mr. Golden.

4          MR. GOLDEN:  I understand that, Your Honor.  What I

5 wanted to point out is, if this was simply in a vacuum an

6 adversary proceeding brought by the debtors to determine

7 whether we're undersecured or not, we would assert all of our

8 defenses and there'd be a certain burden of proof on both

9 sides.  Having manipulated the process --

10          THE COURT:  Oh, come on --

11          MR. GOLDEN:  Your Honor, can I --

12          THE COURT:  -- Mr. Golden, spare me.

13          MR. GOLDEN:  Okay.  Your Honor, the 9019 has a much

14 different, as the Court is well aware, burden of proof --

15          THE COURT:  Yes, and if they get it approved, then

16 you're going to come out on the short end, and what can I tell

17 you?  We'll deal with that when I get to decide whether the

18 9019 gets approved.  You don't try the merits of the issues on

19 a 9019.  Okay, you don't have a mini-trial.  The law in the

20 Second Circuit is quite clear on that.  There's a very

21 different standard.  You may not like it; that's the standard.

22          MR. GOLDEN:  That's fine, Your Honor, and we are well

23 aware of that.  But, for example, Your Honor, if we claimed we

24 had a truck as a piece of our collateral, and the debtor said,

25 as part of their plan process, they've determined, as a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1   settlement, that there is no value in that truck --

2        THE COURT:  You don't have a pledge.  You told me

3   already you do not have a pledge of a note that reflects an

4   intercompany claim.  Okay?  You can't tie the hands of the

5   debtor in resolving all issues that relate to disputed issues

6   between all creditor constituencies and among all debtors.  You

7   may not like that, but that's the way it goes, Mr. Golden.

8   You'll make those arguments at the time of plan confirmation,

9   and you may prevail on it and you may not.  The debtors have --

10   the debtors are going to have a hard time -- a harder time when

11   it comes to a contested confirmation hearing over approval of

12   plan -- of settlements incorporated in the plan, as to which

13   you're not consenting creditors.  But I'll deal with it then.

14        Anything else at this point?

15        MR. GOLDEN:  No, sir.

16        THE COURT:  Anybody else wish to be heard?

17   Mr. Eckstein.

18        MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

19   Eckstein on behalf of the creditors' committee.  I don't think

20   there's a lot more to say.  I think the process, Your Honor, as

21   confirmed, is the process that we had understood was the way to

22   proceed.  I think we need to make sure we appreciate that there

23   are many issues that we hear from the JSNs are -- need to be

24   resolved; and they believe, if they're resolved, it will

25   demonstrate that they were oversecured.  And I believe that the

1  adversary proceeding that's scheduled to be tried in October is

2  intended to deal with several issues, that have nothing to do

3  with intercompany claims, that we agree should be resolved.

4  And as we have said time and again, the plan will provide that,

5  in the event the Court rules that they are oversecured based

6  upon their theory, the plan will provide for them to receive

7  post-petition interest.

8          We wholeheartedly believe that the resolution of the

9  intercompany claims is not being done in a vacuum.  The

10  resolution of the intercompany claims is being done in the

11  context of a global plan that pays the JSNs in full, in cash,

12  on the effective date of their pre-petition claim.  That's very

13  important because what will become clear, I believe, at the

14  October trial is that, separate and apart from the AFI

15  settlement, all the other assets of the estate, even if the

16  JSNs' views of intercompany claims were given complete credit

17  the way they view them, the JSNs ultimately would not be

18  oversecured.  But that's something the Court can hear, and we

19  can arm-wrestle over even that in connection with the trial.

20          But the resolution of the intercompany claims in the

21  plan, as the plan, the disclosure statement and the PSA all lay

22  out, is being done in the context of a resolution of a myriad

23  of issues in this case, including subs, the consolidation,

24  including the litigations over waivers of billions of dollars

25  of claims -- of intercompany claims that were on the books and

1    have now been expunged, and all of the litigations that would

2    have to get dealt with absent the global settlement.

3              And the question will be whether or not -- in the

4    context of the plan where the JSNs are being paid in full their

5    entire pre-petition debt plus accrued pre-petition interest, is

6    the resolution reasonable.  And that's something that the Court

7    can determine in connection with confirmation.  And if we can't

8    resolve the matter between now and confirmation -- needless to

9    say, a contested confirmation is difficult, and -- but there's

10   no other way to deal with it; either we're going to resolve the

11   issues or we're going to deal with them at confirmation.

12             But I think it's important to make clear, number one,

13   that we're not going to litigate the intercompany claim dispute

14   in connection with the adversary proceeding, which I think that

15   is clear, and number two, we think it is important to confirm

16   that we're not going to have to constantly shadowbox with

17   suggestions that there are conflicts and that the debtor can't

18   proceed and the debtor's counsel can't proceed to deal with

19   confirmation.  That was a suggestion that was raised in the

20   correspondence and, as I understood it, that's what provoked in

21   part the need for the conference was to eliminate the

22   suggestion that somehow there is a conflict that is overhanging

23   the debtor's ability to proceed.

24             The reality is, the PSA, as the JSNs know, has the

25   support of the constituencies of every debtor.  We expect, and

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1  the plan contemplates, that the plan will have the support of

2  all of the unsecured creditors of each of the debtors.  And the

3  JSNs are being paid in full.  This is a case where there are no

4  debtor conflicts; and to suggest them, we think, is injecting

5  an improper --

6           THE COURT:  Well, if the --

7           MR. ECKSTEIN:  -- issue.

8           THE COURT:  -- if the JSNs are entitled to post-

9  petition interest, they're not being paid in full.

10           MR. ECKSTEIN:  But --

11           THE COURT:  Okay, so we'll --

12           MR. ECKSTEIN:  And that'll be provided for.

13           THE COURT:  -- the Court'll decide it.

14           MR. ECKSTEIN:  And that'll be provided for.

15           THE COURT:  Okay.  All right.

16           MR. ECKSTEIN:  But I think that's what we just --

17           THE COURT:  All right.

18           MR. ECKSTEIN:  -- wanted to clarify.

19           THE COURT:  Anything else -- anybody else want to be

20  heard?

21           MR. ECKSTEIN:  Thank you, Your Honor.

22           THE COURT:  Mr. Walper, do you want to be heard?  You

23  got up early for this.  Mr. Walper, are you on the phone?

24           MR. WALPER:  Yes, I am, Your Honor.  And I have

25  nothing to addl.  And thank you for your time.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

33

1           THE COURT:  Okay.  Mr. Shore, briefly.

2           MR. SHORE:  Just hopefully something constructive,

3   Your Honor.  We'll make a proposal for the debtors to deal with

4   the phase-one case --

5           THE COURT:  I'm going to give you some very specific

6   instructions about how we're going to proceed.

7           MR. SHORE:  Very good, Your Honor.

8           THE COURT:  Okay?  All right, the Court has reviewed:

9   the June 26th letter from Mr. Shore to Mr. Lee; the June 2nd

10  letter from Mr. Lee to the Court that attached the June 26

11  letter; and the July letter from Mr. Shore to the Court.

12  First, I don't intend to resolve any discovery disputes during

13  this conference.  During this conference, which is on the

14  record -- I want -- I have explored briefly each side's view

15  about the issues that should be addressed in the phase-one

16  trial of the two adversary proceedings, and what should be

17  addressed during the plan confirmation hearing.  As I said

18  before, I haven't had an opportunity to review the latest round

19  of pleadings yet.

20          What I previously stated at other hearings, and I

21  don't know whether there was a transcript, is that the phase-

22  one trial should deal with issues specific to the junior

23  secured noteholders, while the confirmation trial should

24  address issues relating to all creditor constituencies,

25  including the issues arising from the proposed global

**RESIDENTIAL CAPITAL, LLC, ET AL.**

34

1   settlement in the plan term sheet but not yet reflected in the

2   plan, which is supposed to be filed this afternoon.  That's my

3   desire about how to proceed.  And I understand the devil may be

4   in the details.  Also because of the compressed time frame in

5   which all this is occurring, I want to avoid duplication of

6   discovery in connection with the phase-one trial and the

7   confirmation hearing.

8          All right.  The proposed global settlement included in

9   the plan term sheets will have to satisfy the Rule 9019

10  standards for approval of settlements as well as plan

11  confirmation standards.  In connection with approval of a 9019

12  settlement, the Court does not try the merits of the issues

13  that have been settled.  As a result, the discovery in

14  connection with a 9019 motion should not involve the same scope

15  of discovery as if issues were being tried on the merits.

16  Since no plan has yet been filed, it's premature to address the

17  details of the discovery plan in connection with a contested

18  plan confirmation hearing; that'll have to be addressed in the

19  first instance by the parties and, to the extent they can't

20  agree, by the Court.

21         With respect to a discovery plan for the adversary

22  proceedings, the parties need promptly to address a proposed

23  discovery plan to present to the Court.  I've already set forth

24  a schedule in the case management and scheduling order that's

25  been entered.  In connection with the discovery plan, I want

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1    the parties to negotiate -- this is -- and there're two things

2    I'm going to want from you all:  I want you to negotiate a

3    statement of the issues to be adjudicated in the phase-one

4    trial.  The issues for the phase-one trial should be issues

5    specific to the issues with the junior secured noteholders.

6    The interdebtor claims, as I said, will be part of the plan

7    confirmation hearing.

8            To the extent the parties cannot agree on a statement

9    of issues for the phase-one trial, the parties need to submit

10   counterstatements.  Additionally, to the extent the parties

11   can't agree on a discovery plan for phase one, the parties

12   should submit proposed counterplans.  All plans should be

13   consistent with the time schedule set forth in the Court's

14   prior case management order.  The fact that issues have been

15   raised by counterclaims does not mean the issues will be part

16   of the phase-one trial.  I can bifurcate, okay?  Whether all

17   the counterclaims had to be asserted now, I don't know.  Okay?

18   They have been asserted.  That doesn't particularly trouble me.

19   The fact the debtors amended the adversary complaint to add

20   additional claims doesn't particularly trouble me.  It doesn't

21   mean that those issues all get resolved as part of this phase-

22   one trial.

23           So you need, in the first instance, to try and

24   agree -- and I think this is where you were headed,

25   Mr. Shore -- to try and agree on the statement of the issues

**RESIDENTIAL CAPITAL, LLC, ET AL.**

36

1    that are going to be resolved as part -- addressed and resolved

2    as part of the phase-one trial.  And if you can't agree, you'll

3    submit counterstatements and I'll decide what's going to be

4    heard, so everybody's on the same page.

5          Okay.  I want to impose a deadline for submitting the

6    statement of issues and a discovery plan.  Rather than simply

7    picking a date -- and I have but I'm not going to give it -- I

8    want you to try and do that.  I'm mindful of the fact we're on

9    a compressed time frame for the whole case.  This is the 4th of

10    July Weekend.  But in the first instance, why don't you see if

11    you can agree on when you can sit down, exchange drafts, see if

12    you can resolve the statement of issues.

13          Okay.  Now, with respect to the exchange of views in

14    the correspondence regarding alleged conflicts, I don't intend

15    to address the issues in the absence of any properly filed

16    motions.  But I find the length and tone of the correspondence

17    I've been receiving troubling.  I don't intend to allow the

18    progress of this case to be slowed down by the exchange of six-

19    page single-spaced letters.  Issues in this case will be

20    resolved on the merits.  I don't intend to permit any party to

21    create a smokescreen or a sideshow that detracts from resolving

22    the issues in the case.  If any party believes that counsel or

23    professionals should be disqualified or recused in whole or in

24    part, the parties will either resolve the issues consensually

25    now, or raise the issues with the Court in a properly filed

**RESIDENTIAL CAPITAL, LLC, ET AL.**

37

1    motion.  Because of the compressed time schedule, I'm prepared

2    to hear such motion on shortened notice.

3          If you sleep on your rights, you're going to lose

4    those rights.  I don't plan to allow this issue to fester in

5    the case.  So if you're going to raise them, Mr. Shore, you

6    better -- you've raised them already but, if you're going to --

7    if you really think that I should enter an order that recuses,

8    in whole or in part, the debtor's counsel or the CRO who was

9    appointed as an independent fiduciary not beholden to the

10   creditors of any particular one of the fifty-one debtors, go

11   ahead and make your motion, and do it quickly.  And those who

12   are opposing it will respond.

13         The fact of the matter is that the proposed plan is

14   not solely being proposed by the debtors; it's also being

15   proposed by the committee.  And I know you've taken your

16   potshots at the committee as well, Mr. Shore, in your

17   correspondence, but there are lots of creditor constituencies,

18   lots of folks who've signed on to the PSA reflecting many

19   different constituencies.

20         But, okay, the sniping has got to stop, okay?  As far

21   as I'm concerned, for now, the debtor, it's business as usual,

22   Mr. Lee, for Mr. Kruger and Morrison & Foerster.  If the junior

23   secured noteholders' counsel -- the ad hoc committee's counsel

24   is going to raise this issue, they better do it soon.

25         With respect to issues concerning the mediation,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

38

1   including the scope and content of any confidentiality

2   agreement order, as I've said before, this is a matter properly

3   raised with Judge Peck.  I will not enter any order in

4   connection with the mediation that is not in form and substance

5   acceptable to him.  All right?  I indicated at the last

6   conference that I wanted to be able to speak with Judge Peck

7   regarding the proposed confidentiality order, the so-called

8   VITRA order that was submitted.  I had a brief conversation

9   with Judge Peck about it; he made his views quite clear, and I

10  know he did so in the e-mail response that he -- I think was

11  circulated to all of you.

12          So I said, when I first appointed him as the mediator,

13  I was leaving those issues to him.  And I believe, as a judge

14  sitting on this court, he's perfectly approp -- he is the

15  appropriate one to decide what confidentiality order should be

16  entered in connection with the mediation.  I know in

17  Mr. Shore's reply from last night that he at least addresses

18  that some of the holders are -- of the junior secured notes,

19  are apparently prepared to participate in the mediation even if

20  it restricts their ability to trade.  I'm not getting involved

21  in the issues regarding the mediation.  Judge Peck is able and

22  willing to continue his role as a mediator.  A lot's been

23  accomplished.  Much more remains to be done.

24          Okay.  The only other thing I said is that the

25  conference on the 9th, instead of being on the phone, I want it

**RESIDENTIAL CAPITAL, LLC, ET AL.**

39

1    here.   Ordinarily, as you know, I do discovery conferences on

2    the phone.   Hopefully you will all resolve the discovery

3    disputes before then; today was not the time to do it.   But I

4    did want to address the issues about -- to make clear what the

5    phase-one trial should encompass and what should be encompassed

6    within the confirmation hearing.

7         We're adjourned.

8       (Whereupon these proceedings were concluded at 10:51 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

1

2                                C E R T I F I C A T I O N

3

4    I, David Rutt, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   DAVID RUTT

11   AAERT Certified Electronic Transcriber CET**D-635

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  July 3, 2013

18

19

20

21

22

23

24

25

12-12020-mg    Doc 4164    Filed 07/03/13    Entered 07/08/13 12:06:59    Main Document
Pg 41 of 48

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

July 3, 2013

## A

**ability (3)**
8:1;31:23;38:20
**able (4)**
7:1;25:18;38:6,21
**absence (1)**
36:15
**absent (1)**
31:2
**absolutely (1)**
6:8
**abstain (1)**
22:24
**abstention (2)**
23:1,2
**abundantly (2)**
6:1;7:11
**acceptable (1)**
38:5
**accomplished (1)**
38:23
**accrued (3)**
6:21;9:17;31:5
**across (1)**
26:16
**actually (3)**
7:24;11:22;18:25
**Ad (3)**
4:3;11:2;37:23
**add (3)**
18:17;23:11;35:19
**added (1)**
26:18
**additional (1)**
35:20
**Additionally (1)**
35:10
**addl (1)**
32:25
**address (11)**
5:25;7:23;8:14;
11:10;14:25;15:2;
33:24;34:16,22;
36:15;39:4
**addressed (4)**
33:15,17;34:18;
36:1
**addresses (2)**
8:15;38:17
**Adelphia (1)**
7:10
**adequate (1)**
15:11
**adjourned (1)**
39:7
**adjudicated (1)**
**adversary (25)**
5:4,24;6:2;7:2,13,
18;8:21;9:18;10:2,3,
9,19;17:10;22:21;
35:3

**23:21,22,23;25:12;
27:5;28:6;30:1;
31:14;33:16;34:21;
35:19**
**advice (1)**
15:14
**advocate (1)**
13:25
**affected (1)**
18:9
**affecting (2)**
17:24;18:20
**affects (2)**
17:7;22:10
**affiliates (3)**
19:9;24:19;25:25
**AFI (2)**
10:16;30:14
**afternoon (1)**
34:2
**Again (5)**
8:9,15;10:2;26:9;
30:4
**against (3)**
24:6;25:8,17;27:11
**agree (3)**
17:13;30:3;34:20;
35:8,11,24,25;36:2,
11
**agreed (4)**
9:16,17;14:13;20:4
**agreement (9)**
6:10;7:22;9:1,15;
10:13;18:1;19:18;
20:25;38:2
**ahead (4)**
5:10;17:20,25;
37:11
**air (1)**
12:11
**allegations (1)**
10:8
**alleged (1)**
36:14
**allocate (1)**
14:5
**allocated (1)**
14:3
**allocation (1)**
10:17
**allow (3)**
27:13;36:17;37:4
**allowable (1)**
7:12
**allowance (1)**
16:10
**Ally (1)**
14:3
**alone (2)**
6:23;8:1
**alter (1)**
16:20
**although (1)**

**7:23**
**always (1)**
23:17
**amended (3)**
23:22;26:17;35:19
**Americas (1)**
4:5
**among (1)**
14:9;29:6
**amount (2)**
10:15;24:2
**Angeles (1)**
4:15
**apart (1)**
30:14
**apparently (1)**
38:19
**appear (2)**
10:18;14:21
**applicable (1)**
16:16
**application (1)**
9:9
**applies (1)**
26:17
**apply (1)**
26:16
**appoint (1)**
9:9
**appointed (2)**
37:9;38:12
**appointment (1)**
9:4
**appreciate (2)**
28:1;29:22
**approp (1)**
38:14
**appropriate (4)**
8:14;16:15,16;
38:15
**Approval (4)**
16:19;29:11;34:10,
11
**approve (2)**
15:12;17:25
**approved (10)**
6:10;9:1,14;10:13;
12:4;14:12,17;21:14;
28:15,18
**approving (2)**
16:13;18:9
**argument (1)**
21:21
**arguments (2)**
17:9;29:8
**arises (1)**
11:15
**arising (1)**
33:25
**arm-wrestle (1)**
30:19
**arose (1)**
11:6

**aside (1)**
24:3
**aspect (1)**
16:11
**assert (6)**
16:17;18:10,11,15;
24:9;28:7
**asserted (3)**
18:16;35:17,18
**asserting (1)**
24:4
**assets (1)**
30:15
**assist (1)**
9:10
**assume (1)**
22:22
**attached (2)**
14:11;33:10
**attack (5)**
9:2,2,21,23;21:17
**attempts (1)**
5:23
**Attorneys (2)**
4:3,12
**authority (2)**
9:11;17:25
**Avenue (2)**
4:5,13
**avoid (3)**
15:10;26:13;34:5
**aware (2)**
28:14,23

## B

**back (5)**
7:4;9:19;11:19,22;
27:12
**bad (1)**
14:2
**based (4)**
9:7;11:25;15:14;
30:5
**basically (1)**
27:11
**basis (1)**
25:23
**become (1)**
30:13
**behalf (4)**
9:11;11:2;13:25;
29:19
**behind (1)**
27:12
**beholden (1)**
37:9
**believes (1)**
36:22
**below (1)**
21:13
**bench (1)**
18:8

**Berkshire (1)**
4:12
**best (1)**
9:15
**better (2)**
37:6,24
**beyond (2)**
10:3;25:22
**bifurcate (3)**
17:17;23:3;35:16
**bifurcated (1)**
17:15
**bifurcating (1)**
23:5
**billion (7)**
8:17;12:18;19:16,
17,19;20:7;25:15
**billions (1)**
30:24
**bit (1)**
6:11;25:19
**blunderbuss (1)**
25:20
**board (1)**
26:16
**bona (1)**
10:10
**books (1)**
30:25
**both (1)**
28:8
**bought (1)**
12:3
**brief (1)**
38:8
**briefly (2)**
33:1,14
**bring (1)**
26:15
**brought (1)**
28:6
**burden (2)**
28:8,14
**business (1)**
37:21

## C

**CA (1)**
4:15
**California (1)**
5:18
**call (1)**
12:2
**called (1)**
13:13
**came (3)**
8:25;11:19,22
**can (30)**
5:18;6:7;9:21,22,
24;10:11;12:9;14:23;
15:12;16:3,3,11,17;
17:13,14,18;19:5;

12-12020-mg    Doc 4164    Filed 07/03/13    Entered 07/08/13 12:06:59    Main Document
Pg 42 of 48

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg                                                                                          July 3, 2013

22:4,5,18;27:18;
28:11,16;30:18,19;
31:7;35:16;36:11,11,
12
**Capital (2)**
5:3;6:15
**CASE (18)**
4:2;6:20,21;9:14;
11:2,15;16:6;24:16;
30:23;32:3;33:4;
34:24;35:14;36:9,18,
19,22;37:5
**cases (3)**
7:8;11:18;14:6
**cash (1)**
30:11
**cents (1)**
20:7
**certain (2)**
26:21;28:8
**certainly (2)**
14:24;17:24
**challenge (1)**
20:6
**challenging (1)**
10:10
**chambers (1)**
7:12
**chance (3)**
27:16,24;28:2
**Charter (1)**
7:9
**Chris (1)**
11:1
**CHRISTOPHER (1)**
4:8
**Circuit (1)**
28:20
**circulated (1)**
38:11
**circumstances (1)**
11:6
**Civil (1)**
16:17
**claim (20)**
12:18,20;17:23;
19:10,13,17,17,19,
21;20:7,17;24:2,5,24;
25:10,16;27:15;29:4;
30:12;31:13
**claimed (1)**
28:23
**claims (55)**
6:15,19;8:2,5,6,8,8,
9,9,13,17,17;9:5;
10:15,16;11:25;12:1,
5;13:12,16;14:1,2;
15:5,15,23;16:17;
17:7;18:3;19:3,5,16;
20:10;21:14,23,24;
22:10,23;19,24,24:9,
11,15,20;25:13,17,
22;27:15;30:3,9,10,

16,20,25,25;35:6,20
**clarify (1)**
32:18
**clear (19)**
5:13;6:1,8;7:11;
8:21;9:3,8;16:23,23;
17:16;18:19,20;
23:17;28:20;30:13;
31:12,15;38:9;39:4
**clearer (1)**
22:4
**client (1)**
14:1
**clients (1)**
14:2
**collateral (11)**
19:3,7,13;20:18,
20;24:2,8,14;26:21,
22;28:24
**committee (5)**
20:5;27:2;29:19;
37:15,16
**committee's (1)**
37:23
**company (1)**
14:1
**complaint (2)**
26:18;35:19
**complete (1)**
30:16
**compressed (3)**
34:4;36:9;37:1
**compromise (2)**
12:7;22:3
**compromises (2)**
6:18,19
**compulsory (3)**
18:11,14;26:9
**concerned (2)**
13:22;37:21
**concerning (1)**
37:25
**concluded (1)**
39:8
**conference (12)**
5:15,16;6:2,24;
7:12;11:13;16:14;
31:21;33:13,13;38:6,
25
**conferences (1)**
39:1
**confidentiality (3)**
38:1,7,15
**confirm (1)**
31:15
**confirmation (27)**
6:7;9:23,24;10:11;
12:5;17:5,14;18:2,4;
22:7,15;25:20;26:12;
29:8,11;31:7,8,9,11,
19;33:17,23;34:7,11,
18;35:7;39:6
**confirmed (1)**

29:21
**conflict (2)**
14:5;31:22
**conflicts (10)**
6:9;10:1,8,12;
11:17;12:10;13:24;
31:17;32:4;36:14
**conjure (1)**
6:7
**connection (13)**
5:4;15:23;23:20;
30:19;31:7,14;34:6,
11,14,17,25;38:4,16
**consensually (1)**
36:24
**consent (1)**
20:24
**consenting (1)**
29:13
**considering (1)**
12:24
**considers (1)**
12:23
**consistent (2)**
14:13;35:13
**consolidated (1)**
7:2
**consolidation (1)**
30:23
**constantly (1)**
31:16
**constituencies (7)**
17:8;22:10;29:6;
31:25;33:24;37:17,
19
**constituency (1)**
26:15
**constructive (1)**
33:2
**contemplates (1)**
32:1
**content (1)**
38:1
**contested (4)**
17:4;29:11;31:9;
34:17
**context (5)**
5:24;15:5;30:11,
22;31:4
**continue (2)**
27:13;38:22
**contrary (1)**
13:10
**conversation (1)**
38:8
**copy (2)**
7:6,14
**core (1)**
10:14
**correctly (1)**
19:14
**correspondence (4)**
31:20;36:14,16;

37:17
**counsel (6)**
9:3;31:18;36:22;
37:8,23,23
**Count (6)**
23:22,24;24:5;
25:8;26:18,19
**counterclaim (1)**
16:16
**counterclaims (18)**
7:15,20;8:3;16:5,9,
22;17:12;18:11,15,
25;20:16;22:21;26:4,
8,11;27:4;35:15,17
**counterplans (1)**
35:12
**counterstatements (2)**
35:10;36:3
**course (1)**
24:4
**COURT (93)**
5:2,9,16,17;7:4;
10:23,25;12:3,22,23,
24;13:3;14:7,11,17,
21,21,25;15:2,12,22;
16:3,11,12,14;17:25;
19:6,20,24;20:1,11,
13,15,21;21:3,5,8,17,
20,25;22:2,4,14,24;
23:1,8,10,13,16,18;
24:10,13;25:2,4,6,9;
26:23;27:1,3,16,18,
20,22,24;28:2,10,12,
14,15;29:2,16;30:5,
18;31:6;32:6,8,11,13,
15,17,19,22;33:1,5,8,
8,10,11;34:12,20,23;
36:25;38:14
**Court'll (1)**
32:13
**Court's (2)**
11:9;35:13
**cover (3)**
8:22;24:17,17
**covered (1)**
17:19
**create (2)**
9:25;36:21
**credit (1)**
30:16
**creditor (6)**
17:7;25:17;26:15;
29:6;33:24;37:17
**creditors (8)**
6:14,16;12:11;
19:10;21:12;29:13;
32:2;37:10
**creditors' (1)**
29:19
**cricket (1)**
9:20
**CRO (3)**
9:9;14:16;37:8

37:17
**cut (1)**
6:5

**D**

**date (2)**
30:12;36:7
**day (1)**
9:1
**deadline (1)**
36:5
**deal (11)**
11:10;25:18;27:6;
28:17;29:13;30:2;
31:10,11,18;33:3,22
**dealing (2)**
15:5;23:5
**dealt (1)**
31:2
**debt (2)**
20:22;31:5
**debtor (17)**
9:8,12;12:19,20;
13:4;14:8,16,18;
17:14;23:21;26:17;
28:24;29:5;31:17,25;
32:4;37:21
**debtor-only (1)**
14:10
**debtors (27)**
5:8;6:17;8:1,18,25;
9:16;12:14;13:4,22;
15:4,10,13;16:1,7;
17:12;20:4,19;21:11;
28:6;29:6,9,10;32:2;
33:3;35:19;37:10,14
**debtor's (6)**
6:15;11:16;27:12;
31:18,23;37:8
**decide (6)**
17:20;18:4;28:17;
32:13;36:3;38:15
**decided (3)**
7:18;14:8,18
**decisions (2)**
9:11;14:16
**declaration (1)**
23:24
**declarations (1)**
7:20
**defeat (1)**
10:20
**defend (3)**
24:6;25:8;27:11
**defenses (1)**
28:8
**definitive (2)**
15:4,8
**demonstrable (1)**
11:16
**demonstrate (1)**
29:25
**describes (1)**

17:14
**desire (1)**
  34:3
**detail (2)**
  6:4,12
**details (2)**
  34:4,17
**determination (6)**
  8:3;11:25;12:6;
  13:15;15:22,25
**determine (4)**
  20:21;26:19;28:6;
  31:7
**determined (3)**
  11:21;15:13;28:25
**determines (1)**
  20:18
**detracts (1)**
  36:21
**devil (1)**
  34:3
**different (4)**
  14:17;28:14,21;
  37:19
**difficult (1)**
  31:9
**diminution (1)**
  20:19
**direct (1)**
  23:23
**direction (5)**
  6:4,25;7:19;10:7,7
**disagreements (1)**
  10:1
**disclosure (5)**
  6:13;15:6;16:4;
  22:23;30:21
**disconcerting (1)**
  8:25
**discovery (19)**
  5:14;7:23;11:8,8,
  12,13;25:19;33:12;
  34:6,13,15,17,21,23,
  25;35:11;36:6;39:1,2
**discretion (1)**
  17:17
**disposed (1)**
  20:20
**dispute (3)**
  19:4;27:14;31:13
**disputed (2)**
  20:22;29:5
**disputes (3)**
  9:10;33:12;39:3
**disqualified (1)**
  36:23
**disrupt (1)**
  7:1
**distributable (1)**
  8:4
**district (1)**
  7:9
**document (1)**

7:25
**dollar (7)**
  8:18;12:20;19:17,
  17,19;20:7,7
**dollars (7)**
  8:17;12:18;20:8,
  19,20;25:15;30:24
**done (5)**
  16:12;30:9,10,22;
  38:23
**doubt (1)**
  11:8
**down (4)**
  6:22;14:6;36:11,18
**dozen (1)**
  7:20
**drafts (1)**
  36:11
**due (1)**
  24:4
**duplication (1)**
  34:5
**during (4)**
  7:11;33:12,13,17

**E**

**early (2)**
  11:4;32:23
**Eckstein (10)**
  29:17,18,19;32:7,
  10,12,14,16,18,21
**effective (1)**
  30:12
**either (5)**
  11:4,13;22:11;
  31:10;36:24
**eliminate (1)**
  31:21
**else (9)**
  18:17;22:18;23:11,
  13;27:8;29:14,16;
  32:19,19
**e-mail (1)**
  38:10
**embodied (6)**
  7:21,22;9:21;
  12:25;17:3;22:8
**embodies (1)**
  6:17
**encompass (1)**
  39:5
**encompassed (1)**
  39:5
**end (1)**
  28:16
**England (1)**
  9:19
**enough (2)**
  7:24;25:14
**enter (3)**
  14:1;37:7;38:3
**entered (4)**

16:13;18:8;34:25;
  38:16
**entire (2)**
  10:20;31:5
**entitled (1)**
  32:8
**entity (1)**
  19:12
**equity (6)**
  19:8,12,13;20:23;
  24:18,21
**ESQ (2)**
  4:8,17
**estate (1)**
  30:15
**estopped (1)**
  20:5
**even (7)**
  21:12,22,22;25:19;
  30:15,19;38:19
**event (1)**
  30:5
**everybody (4)**
  5:19;21:15;24:1;
  26:3
**everybody's (1)**
  36:4
**evidence (2)**
  17:9;18:4
**exact (2)**
  8:4,9
**exactly (2)**
  10:17;23:7
**example (6)**
  19:2,8,16;20:23;
  26:22;28:23
**exchange (3)**
  36:11,13,18
**excited (1)**
  26:10
**exclude (1)**
  27:4
**expect (2)**
  6:15;31:25
**expense (2)**
  14:5,6
**explain (1)**
  12:17
**explained (1)**
  24:25
**explored (1)**
  33:14
**expression (1)**
  9:20
**expunged (1)**
  31:1
**extent (9)**
  6:25;17:2,4,11,19;
  18:6;34:19;35:8,10
**extraneous (1)**
  11:11

**F**

**fact (4)**
  35:14,19;36:8;
  37:13
**facts (1)**
  16:18
**faith (1)**
  9:23
**far (1)**
  37:20
**fathom (1)**
  8:18
**Federal (1)**
  16:16
**fester (2)**
  7:5;37:4
**FGIC (2)**
  8:12,13
**fides (1)**
  10:10
**fiduciary (3)**
  12:12;24:6;37:9
**fifty-one (2)**
  25:25;37:10
**file (3)**
  16:7,8;22:8
**filed (9)**
  7:15;13:18;15:6;
  22:21;25:17;34:2,16;
  36:15,25
**filing (1)**
  6:13
**find (1)**
  36:16
**fine (5)**
  13:24;18:15;23:6;
  27:6;28:22
**First (13)**
  6:1;10:8;12:15;
  13:9,11;21:10;25:11;
  26:14;33:12;34:19;
  35:23;36:10;38:12
**first-phase (1)**
  27:5
**flavor (1)**
  8:2
**Floor (1)**
  4:14
**flows (4)**
  19:19;20:3,6,8
**focus (1)**
  25:24
**Foerster (3)**
  5:8;15:15;37:22
**folks (1)**
  37:18
**form (1)**
  38:4
**forth (5)**
  11:3;13:11;14:14;
  34:23;35:13

**fourteen (1)**
  9:13
**frame (2)**
  34:4;36:9
**free (1)**
  8:13
**full (5)**
  19:11;30:11;31:4;
  32:3,9
**Fundamentally (1)**
  11:15

**G**

**Gary (1)**
  5:7
**general (1)**
  20:2
**gets (4)**
  12:19,24;20:7;
  28:18
**given (2)**
  9:22;30:16
**global (11)**
  7:21;10:15;18:2,
  23;19:1;22:3;23:19;
  30:11;31:2;33:25;
  34:8
**goes (1)**
  29:7
**Golden (26)**
  23:14,15;24:12,25;
  25:3,5,6,7;26:20,24;
  27:2,8,9,17,19,21,23;
  28:1,3,4,11,12,13,22;
  29:7,15
**Good (6)**
  5:7;9:23;14:1;
  27:3;29:18;33:7
**Grand (1)**
  4:13
**grants (1)**
  19:23
**great (1)**
  17:17
**Group (2)**
  4:3;11:2
**guess (1)**
  16:3
**guidance (3)**
  5:22;11:9;23:11

**H**

**hand (1)**
  27:12
**handle (3)**
  11:12;13:23;23:18
**handling (1)**
  18:22
**hands (1)**
  29:4
**happen (1)**

12:12

**happening (1)**
23:9
**hard (1)**
29:10
**harder (1)**
29:10
**Hathaway (1)**
4:12
**headed (1)**
35:24
**hear (8)**
11:14;17:8,20;
18:3;22:9;29:23;
30:18;37:2
**heard (9)**
17:4;18:19;22:11;
23:13,16;29:16;
32:20,22;36:4
**hearing (9)**
11:24;17:5;22:24;
29:11;33:17;34:7,18;
35:7;39:6
**hearings (3)**
22:5,16;33:20
**himself (1)**
15:14
**Hoc (3)**
4:3;11:2;37:23
**holders (1)**
38:18
**Honor (65)**
5:7,11,13,20,21,25;
6:1,9,10,20,25;7:2,3,
6,9,11,14;8:3,5,7,9,
11,20,21;9:1,13,14,
19,25;10:3,6,14,17,
20;11:1,14;12:8,14;
13:6;15:17;16:6,8;
18:19;20:17;21:23;
23:12,15;24:25;
26:25;27:9,13,21,23;
28:1,4,11,13,22,23;
29:18,20;32:21,24;
33:3,7
**Honor's (2)**
5:22;7:19
**hopefully (2)**
33:2;39:2
**hurdle (1)**
17:22

## I

**ignore (1)**
7:19
**ignores (1)**
6:4
**immediately (1)**
13:13
**impaired (1)**
6:16
**important (3)**

30:13;31:12,15
**importantly (1)**
21:16
**impose (1)**
36:5
**improper (1)**
32:5
**improperly (1)**
17:24
**included (2)**
17:2;34:8
**includes (1)**
24:14
**including (5)**
18:8;30:23,24;
33:25;38:1
**incorporated (1)**
29:12
**indenture (1)**
23:15
**independent (3)**
18:22;19:1;37:9
**indicated (1)**
38:5
**injecting (2)**
26:13;32:4
**injection (1)**
16:6
**insist (1)**
10:10
**instance (3)**
34:19;35:23;36:10
**instead (1)**
38:25
**instructions (1)**
33:6
**intangible (1)**
20:3
**intangibles (1)**
24:17
**intend (9)**
7:17,23;11:24;
16:24;17:8;33:12;
36:14,17,20
**intended (1)**
30:2
**intention (1)**
23:18
**inter (1)**
19:3
**intercompany (42)**
6:19;8:2,4,6;9:5;
10:16;11:25;12:5,18;
13:12;14:1;15:5,15,
23;17:6;18:3;19:3,
10,16,21;20:10;
21:14;23:19,23;24:9,
11,15,19,20,23;
25:13,16,22;27:15;
29:4;30:3,9,10,16,20,
25;31:13
**intercreditor (1)**
9:10

**interdebtor (10)**
6:9;9:10;10:1,12;
11:17;12:10;13:23;
14:4;22:9;35:6
**interest (8)**
6:22,23;9:15,17;
16:10;30:7;31:5;32:9
**interests (1)**
19:25
**into (6)**
9:14;18:12;19:17;
21:14;23:23;26:14
**involve (1)**
34:14
**involved (1)**
38:20
**issue (28)**
6:22;8:5;11:15;
13:4,6,6,23;14:10,17;
15:10;17:6,7,9;19:15,
15;20:23;21:5,8;
22:9;23:23;24:16;
25:18;26:4,23;27:25;
32:7;37:4,24
**issues (77)**
5:23;6:3;7:5;8:16;
10:4,14,17,21;11:8,8,
10,11;14:8,9,18;16:6,
9,21,25,25;17:1,1,2,
11,14,15,17,18,19;
18:6,22,22;19:2;
20:22;21:7,10;23:3,
5;25:12;26:8,10,14,
16;27:6;28:18;29:5,
5,23;30:2,23;31:11;
33:15,22,24,25;
34:12,15;35:3,4,4,5,
9,14,15,21,25;36:6,
12,15,19,22,24,25;
37:25;38:13,21;39:4

## J

**JSNs (16)**
16:15,20;17:1,8,11,
19;18:1,10;27:11;
29:23;30:11,17;31:4,
24;32:3,8
**JSNs' (1)**
30:16
**JSN's (1)**
16:20
**Judge (9)**
6:18;9:2,4,7;38:3,
6,9,13,21
**July (2)**
33:11;36:10
**June (3)**
33:9,9,10
**Junior (17)**
4:3;7:6,14,17;8:11;
9:6,16;10:4,9;23:16,
25;24:5,8;33:22;

35:5;37:22;38:18

## K

**Kenneth (1)**
29:18
**kind (1)**
11:5
**Kruger (3)**
9:3,9;37:22
**Kruger's (1)**
15:14

## L

**laid (1)**
27:15
**large (1)**
24:7
**larger (1)**
17:22
**last (6)**
6:1;7:16;11:4;
18:18;38:5,17
**late (1)**
11:4
**Later (2)**
6:13;26:1
**latest (2)**
26:6;33:18
**law (3)**
15:24;16:18;28:19
**lawsuit (1)**
27:12
**lay (1)**
30:21
**least (3)**
6:6;14:12;38:17
**leaving (2)**
24:3;38:13
**Lee (14)**
5:6,7,7,11,20;
10:23,24;11:7;14:7;
15:21;18:7;33:9,10;
37:22
**left (1)**
27:12
**legal (5)**
11:25;13:16;15:16,
24;24:3
**length (1)**
36:16
**less (1)**
24:2
**letter (10)**
6:5;7:7;11:3,7,11;
15:19;33:9,10,11,11
**letters (2)**
6:6;36:19
**levels (1)**
21:15
**lien (3)**
20:2,4,8

**lies (1)**
12:9
**limiting (1)**
16:14
**listening (2)**
27:18,22
**litigate (2)**
10:21;31:13
**litigated (1)**
13:7
**litigations (2)**
30:24;31:1
**little (2)**
6:11;25:19
**LLC (2)**
19:18;20:8
**LLP (1)**
4:2
**look (2)**
26:3,4
**Los (1)**
4:15
**lose (1)**
37:3
**losing (1)**
13:22
**lot (2)**
26:6;29:20
**lots (2)**
37:17,18
**lot's (1)**
38:22
**loud (2)**
18:20;23:17

## M

**makes (1)**
12:11
**making (1)**
13:15
**management (2)**
34:24;35:14
**manipulated (1)**
28:9
**many (5)**
16:1;17:7;22:10;
29:23;37:18
**math (2)**
13:17,17
**mathematical (1)**
11:21
**matter (5)**
22:13;27:14;31:8;
37:13;38:2
**matters (3)**
7:13,24;10:8
**may (21)**
6:10;18:14;19:20;
21:6,6;22:15;23:2,4;
24:16,17,17;25:11,
15,18;26:1,20;28:21;
29:7,9,9;34:3

**maybe (1)**
14:23
**mean (8)**
13:15;17:15,16,21;
24:20;25:18;35:15,
21
**mechanisms (2)**
18:21,21
**mediate (1)**
9:5
**mediation (10)**
6:18;9:7;10:21;
11:12,13;37:25;38:4,
16,19,21
**mediator (3)**
9:4;38:12,22
**meet (1)**
15:18
**merit (3)**
12:1;13:16;15:16
**merits (4)**
28:18;34:12,15;
36:20
**message (1)**
8:22
**million (5)**
8:18;12:20;20:8,
18,20
**mindful (1)**
36:8
**mini-trial (1)**
28:19
**monoline (1)**
8:8
**months (1)**
9:14
**more (7)**
6:4,11;8:7,10;
21:16;29:20;38:23
**morning (3)**
5:7;11:5;29:18
**Morrison (3)**
5:8;15:15;37:22
**most (1)**
18:13
**motion (4)**
34:14;37:1,2,11
**motions (1)**
36:16
**move (1)**
22:24
**much (3)**
12:8;28:13;38:23
**multiple (1)**
18:21
**MUNGER (1)**
4:11
**must (1)**
12:4
**muster (1)**
21:6
**myriad (1)**
30:22

**N**

**nearly (1)**
8:17
**necessarily (2)**
16:21;26:14
**need (9)**
16:22;23:6;25:7;
29:22,23;31:21;
34:22;35:9,23
**needless (1)**
31:8
**negotiate (2)**
35:1,2
**negotiation (2)**
15:14;21:13
**New (3)**
4:6;7:9;8:20
**next (1)**
5:15
**night (2)**
11:4;38:17
**nobody (1)**
24:6
**none (1)**
10:1
**nonplan (2)**
6:3;7:13
**nor (1)**
9:24
**note (6)**
7:25;8:15;10:4;
20:1;24:23;29:3
**noteholder (1)**
7:18
**Noteholders (15)**
4:4;6:4,20;7:1,17;
8:12;9:6,16;10:10;
23:16,25;24:5,8;
33:23;35:5
**noteholders' (4)**
5:22;7:7,15;37:23
**notes (2)**
19:18;38:18
**notice (3)**
5:12;11:5;37:2
**notion (4)**
6:9;10:12;13:9;
21:13
**number (4)**
5:3;6:17;31:12,15
**NY (1)**
4:6

**O**

**object (2)**
8:19;11:5
**objected (1)**
8:12
**objection (2)**
22:7,8
**objections (3)**
6:7;9:25;22:6
**objectors (1)**
17:23
**obligations (1)**
15:25
**occurred (1)**
16:14
**occurring (1)**
34:5
**o'clock (1)**
5:19
**October (2)**
30:1,14
**offered (1)**
18:21
**OLSON (1)**
4:11
**once (1)**
10:18
**one (21)**
6:18,22;9:4;12:17,
18;13:25;16:1,22,25;
19:15,22;21:8,11,15;
22:17;31:12;33:22;
35:11,22;37:10;
38:15
**one's (1)**
22:5
**Only (2)**
22:20;38:24
**OpCos (1)**
21:13
**OpCo's (1)**
14:6
**open-ended (1)**
11:9
**opportunity (1)**
33:18
**oppose (2)**
18:1,2
**opposing (1)**
37:12
**opposition (1)**
22:12
**order (12)**
16:13;18:8,8;
22:18;34:24;35:14;
37:7;38:2,3,7,8,15
**ordered (1)**
16:8
**Ordinarily (1)**
39:1
**others (1)**
18:20
**ought (1)**
26:2
**out (11)**
7:7;10:12;11:15,
18;12:12;16:6;27:9,
15;28:5,16;30:22
**outset (2)**
5:13;11:3

**outside (1)**
10:22
**over (4)**
7:19;29:11;30:19,
24
**overhanging (1)**
31:22
**oversecured (3)**
29:25;30:5,18
**overwhelming (1)**
6:16

**P**

**package (2)**
19:13;26:22
**page (2)**
36:4,19
**paid (5)**
19:11;20:7;31:4;
32:3,9
**paper (3)**
24:13,22,23
**par (2)**
6:21;9:17
**paraphrasing (1)**
23:24
**parent (1)**
21:14
**part (27)**
8:6,10,24;10:2,9,
19;17:23;18:4;19:6,
11,13;21:13;22:1,14;
23:19;24:8;26:12,21;
28:25;31:21;35:6,15,
21;36:1,2,24;37:8
**participate (3)**
5:18;9:6;38:19
**particular (4)**
11:6;17:18;21:24;
37:10
**particularly (4)**
8:25;26:10;35:18,
20
**parties (13)**
14:9,12;16:20;
17:13;18:23;34:19,
22;35:1,8,9,10,11;
36:24
**party (2)**
36:20,22
**pass (1)**
21:6
**pay (2)**
9:16,17
**paying (1)**
6:20,21
**payment (1)**
24:20
**pays (1)**
30:11
**Peck (6)**
9:2,7;38:3,6,9,21

**Peck's (2)**
6:18;9:4
**pending (1)**
7:8
**per (1)**
23:21
**perfectly (1)**
38:14
**perhaps (1)**
10:7
**permit (1)**
36:20
**pertains (1)**
11:7
**petition (2)**
6:23;32:9
**phase (4)**
16:24;21:8;25:11;
35:11
**phase- (2)**
33:21;35:21
**phase-one (10)**
28:3;33:4,15;34:6;
35:3,4,9,16;36:2;39:5
**phone (3)**
32:23;38:25;39:2
**pick (1)**
25:21
**picking (1)**
36:7
**piece (5)**
18:19;24:13,22,23;
28:24
**place (2)**
22:21;23:7
**plan (70)**
5:23;6:10,13,14,16,
17;7:21,22;8:5,6,10,
16;9:1,14,21;10:5,10,
13,17,22;12:4,10,25;
14:13;15:6,18,22;
16:4,7;17:3,14,21;
18:1,4;22:6,8,14,14,
23;23:5,20;26:12;
28:25;29:8,12,12;
30:4,6,11,21,21;31:4;
32:1,1;33:17;34:1,2,
9,10,16,17,18,21,23,
25;35:6,11;36:6;
37:4,13
**plan-related (1)**
8:16
**plans (1)**
35:12
**playbook (3)**
7:8;8:11,24
**plead (1)**
27:3
**pleading (1)**
16:15
**pleadings (3)**
18:13;26:7;33:19
**Please (2)**

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

5:2;12:17
**pled (1)**
26:24
**pledge (10)**
19:8,20,24;24:10,
16,18,21,22;29:2,3
**pledges (1)**
19:22
**plus (4)**
6:21;9:17;19:17;
31:5
**point (10)**
12:24;15:9;20:4,5;
25:13;27:7,8,9;28:5;
29:14
**pointed (1)**
16:6
**points (1)**
6:11
**position (8)**
15:16;18:14,19;
19:7,9;25:3,4,7
**positions (1)**
11:16
**possible (1)**
26:13
**post (1)**
6:21
**post- (2)**
6:22;32:8
**post-petition (4)**
6:22;9:17;16:10;
30:7
**potshots (1)**
37:16
**prejudice (2)**
6:6;9:24
**premature (1)**
34:16
**prepared (2)**
37:1;38:19
**pre-petition (3)**
30:12;31:5,5
**present (1)**
34:23
**preserve (1)**
13:20
**pretty (1)**
17:16
**prevail (2)**
9:18;29:9
**prevents (1)**
26:23
**previously (1)**
33:20
**principal (1)**
6:17
**prior (3)**
16:14;22:5;35:14
**priority (1)**
10:15
**problem (4)**
12:9,16;23:20;

26:20
**problems (1)**
21:16
**procedural (1)**
18:21
**Procedure (3)**
16:17;22:20;23:6
**procedures (2)**
17:16;27:11
**proceed (8)**
5:9;26:2;29:22;
31:18,18,23;33:6;
34:3
**proceeding (17)**
5:24;6:2;7:3,13,18;
8:22;10:2,4,9,19;
15:7;23:21,22,23;
28:6;30:1;31:14
**proceedings (6)**
5:4;17:10;27:5;
33:16;34:22;39:8
**process (8)**
9:2;12:13;23:20;
27:10;28:9,25;29:20,
21
**product (1)**
6:18
**professionals (1)**
36:23
**progress (1)**
36:18
**promptly (1)**
34:22
**proof (2)**
28:8,14
**properly (4)**
18:6;36:15,25;38:2
**proponents (2)**
17:21,22
**proposal (2)**
23:4;33:3
**propose (1)**
12:4;13:24
**proposed (11)**
11:19,20;12:15;
33:25;34:8,22;35:12;
37:13,14,15;38:7
**proposing (1)**
12:14
**proposition (1)**
24:3
**protection (1)**
15:11
**provide (3)**
13:18;30:4,6
**provided (3)**
7:6;32:12,14
**provoked (1)**
31:20
**PSA (15)**
11:23,24;13:9,10;
14:10,11,12,13;16:7,
13,19;18:9;30:21;

31:24;37:18
**purport (1)**
25:23
**purpose (2)**
10:21;15:19
**pursuant (1)**
19:18
**push (1)**
14:5
**put (1)**
16:11
**puts (1)**
23:23

## Q

**quickly (1)**
37:11
**quite (2)**
28:20;38:9

## R

**raise (9)**
5:23;17:11;18:6;
26:3;27:24;28:2;
36:25;37:5,24
**raised (10)**
15:10;16:22;17:19;
18:7;26:8,10;31:19;
35:15;37:6;38:3
**raises (1)**
24:16
**range (1)**
27:5
**rather (5)**
5:17;8:16;11:9;
26:12;36:6
**read (4)**
18:13;26:5,6,6
**reading (1)**
16:4
**reality (1)**
31:24
**really (3)**
11:8;13:14;37:7
**reason (3)**
6:24;15:11,12
**reasonable (1)**
31:6
**reasons (2)**
25:10;26:21
**receive (1)**
30:6
**received (1)**
7:25
**receiving (1)**
36:17
**recent (1)**
18:13
**recharacterized (1)**
20:22
**record (9)**

5:10;8:1,15;13:10,
21;22:5,17,17;33:14
**recused (1)**
36:23
**recuses (1)**
37:7
**Refer (1)**
7:9
**referred (1)**
16:24
**reflected (1)**
34:1
**reflecting (1)**
37:18
**reflects (2)**
24:23;29:3
**refused (1)**
9:6
**regarding (4)**
10:8;36:14;38:7,21
**rejected (1)**
18:24
**relate (3)**
7:20;18:22;29:5
**related (1)**
6:2
**relates (2)**
6:19;10:4
**relating (2)**
16:9;33:24
**relation (1)**
7:2
**remains (1)**
38:23
**repeat (1)**
10:7
**reply (2)**
11:24;38:17
**report (1)**
11:23
**represented (1)**
21:12
**request (1)**
11:9
**requested (2)**
6:24;16:7
**requests (1)**
7:25
**requires (1)**
24:5
**ResCap (3)**
19:8,18;20:8
**reserved (1)**
9:22
**Residential (1)**
5:3
**resolution (5)**
30:8,10,20,22;31:6
**resolve (10)**
8:2;12:11;17:9,18;
31:8,10;33:12;36:12,
24;39:2
**resolved (16)**

7:8;8:10;13:9;14:9,
19;16:22;19:2;25:12;
26:11;29:24,24;30:3;
35:21;36:1,1,20
**resolves (1)**
8:12
**resolving (4)**
9:10;26:23;29:5;
36:21
**respect (15)**
10:7;11:12,16,17;
13:21;15:11;16:5,9;
17:1,9;18:3,20;
34:21;36:13;37:25
**respective (1)**
15:25
**respects (1)**
13:8
**respond (5)**
5:22;13:7;18:18;
22:22;37:12
**response (5)**
13:11,14,19;15:20;
38:10
**rest (1)**
16:12
**restricts (1)**
38:20
**result (1)**
34:13
**review (1)**
33:18
**reviewed (1)**
33:8
**revolved (1)**
6:9
**RFC (5)**
19:16;20:3;21:11;
25:15,17
**rifle (1)**
25:20
**right (16)**
5:2;9:22;18:12;
20:12;21:3,7,19;
22:10;23:13;26:1,2;
32:15,17;33:8;34:8;
38:5
**rights (8)**
13:20;15:25;16:20;
17:24;18:9,20;37:3,4
**RMBS (1)**
8:8
**role (1)**
38:22
**round (5)**
5:23,23;18:13;
26:6;33:18
**Rule (1)**
34:9
**rules (4)**
9:7,8;16:16;30:5
**run (1)**
9:2

12-12020-mg    Doc 4164    Filed 07/03/13    Entered 07/08/13 12:06:59    Main Document
Pg 47 of 48

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

July 3, 2013

**running (1)**
12:18
**runs (1)**
12:20

**S**

**same (6)**
9:1;12:19;25:16;
26:17;34:14;36:4
**satisfy (1)**
34:9
**saying (6)**
11:18;13:6,17;
15:3;16:2;20:9
**schedule (4)**
7:1;34:24;35:13;
37:1
**scheduled (3)**
5:15;19:17;30:1
**scheduling (3)**
7:12;22:16;34:24
**scope (3)**
7:12;34:14;38:1
**se (1)**
23:21
**seat (1)**
12:13
**seated (1)**
5:2
**second (6)**
5:23;6:5;8:7;
10:14;18:25;28:20
**secured (16)**
7:7,14,17;8:11;9:6,
16;10:4,9;23:16,25;
24:5,8;33:23;35:5;
37:23;38:18
**securities (1)**
8:9
**security (1)**
19:25
**seeing (1)**
5:12
**seek (4)**
6:25;8:3,7;15:22
**seeking (1)**
13:12
**seems (1)**
17:3
**sense (1)**
12:11
**sensitivity (1)**
13:23
**sent (1)**
11:4
**separate (1)**
30:14
**set (9)**
7:1;9:7,8;11:3;
13:10;14:14;22:20;
34:23;35:13
**sets (1)**

23:6
**setting (1)**
11:5
**settle (4)**
19:3,4;20:17;25:24
**settled (9)**
8:6;12:19;20:23,
24;21:2,22,23,24;
34:13
**settlement (33)**
7:21;8:12,15;
10:15,16,16;11:19,
20;12:4,6,7,16;13:24;
14:3;15:12,13,24;
17:22,23;18:2,23;
19:1;21:6;22:11,12;
23:18,19;29:1;30:15;
31:2;34:1,8,12
**settlements (6)**
10:11;12:24,25;
22:7;29:12;34:10
**settles (1)**
8:16
**settling (1)**
12:16
**several (2)**
8:7;30:2
**shadowbox (1)**
31:16
**shaky (1)**
24:3
**sheet (1)**
34:1
**sheets (3)**
14:11,14;34:9
**shift (1)**
11:16
**SHORE (46)**
4:8;10:25;11:1,1;
12:8;13:2,5;14:20,
23;15:1,3;16:5;
18:18;19:15,22,25;
20:2,12,14,15,16;
21:1,4,7,10,19,22;
22:1,2,3,13,20;23:4,
9,11,12;24:16,25;
33:1,2,7,9,11;35:25;
37:5,16
**Shore's (2)**
26:8;38:17
**short (2)**
5:12;28:16
**shortened (1)**
37:2
**shot (1)**
25:20
**Show (1)**
24:13
**side (1)**
7:18
**sides (1)**
28:9
**side's (1)**

33:14
**sideshow (1)**
36:21
**signed (2)**
14:12;37:18
**simply (2)**
28:5;36:6
**single-spaced (1)**
36:19
**sit (1)**
36:11
**sitting (2)**
21:15;38:14
**six- (1)**
36:18
**sleep (1)**
37:3
**slowed (1)**
36:18
**smokescreen (1)**
36:21
**sniping (1)**
37:20
**so-called (1)**
38:7
**solely (1)**
37:14
**solvent (3)**
19:12;24:19,20
**Somebody (1)**
7:18
**somehow (1)**
31:22
**soon (1)**
37:24
**sorry (2)**
6:21;19:23
**sorts (1)**
7:4
**sought (2)**
7:20;9:4
**sound (1)**
14:18
**soundly (1)**
18:24
**sounds (1)**
15:9
**South (1)**
4:13
**southern (1)**
7:9
**spare (1)**
28:12
**speak (2)**
7:16;38:6
**specific (3)**
33:5,22;35:5
**Specifically (4)**
17:6;19:21;23:22;
24:14
**spend (1)**
16:3
**split (1)**

8:18
**stage (1)**
14:9
**standard (2)**
28:21,21
**standards (3)**
12:5;34:10,11
**stands (1)**
15:21
**started (1)**
11:18
**state (1)**
11:3
**stated (1)**
33:20
**statement (11)**
6:14;11:23;15:6;
16:4;22:24;30:21;
35:3,8,25;36:6,12
**statements (1)**
13:21
**status (2)**
6:2,24
**still (2)**
15:19;18:24
**stipulated (1)**
20:4
**stop (1)**
37:20
**structure (1)**
6:15
**subject (1)**
20:8
**submit (3)**
35:9,12;36:3
**submitted (1)**
38:8
**submitting (1)**
36:5
**subordinate (1)**
8:7
**subs (1)**
30:23
**subsidiaries (1)**
24:18
**substance (1)**
38:4
**substantial (2)**
19:10,11
**substantively (1)**
18:9
**suggest (2)**
14:15;32:4
**suggested (1)**
7:3
**suggesting (1)**
14:7
**suggestion (2)**
31:19,22
**suggestions (1)**
31:17
**supplemental (3)**
13:11,14,18

**support (11)**
6:10,14,16;7:21;
9:1,15;10:13;14:13;
22:11;31:25;32:1
**supportable (1)**
15:24
**supported (1)**
16:18
**supposed (1)**
34:2
**Sure (1)**
15:1,9;29:22
**surprise (2)**
15:17;24:7

**T**

**table (1)**
26:15
**tack (1)**
9:18
**talk (1)**
25:19
**telephone (2)**
5:17,18
**telephonic (1)**
5:14
**TELEPHONICALLY (1)**
4:17
**telling (3)**
23:2;26:3,4
**ten (4)**
8:1,3,17;20:7
**term (5)**
14:11,13,14;34:1,9
**that'll (4)**
17:15;32:12,14;
34:18
**theory (1)**
30:6
**there'd (1)**
28:8
**there're (1)**
35:1
**third (2)**
5:23;6:8
**THOMAS (1)**
4:17
**though (2)**
20:18;21:22
**thought (1)**
12:8
**three (5)**
5:25;6:6,11;25:22;
26:21
**throughout (1)**
6:15
**throws (1)**
12:10
**tie (1)**
29:4
**tied (1)**
27:12

12-12020-mg    Doc 4164    Filed 07/03/13    Entered 07/08/13 12:06:59    Main Document

RESIDENTIAL CAPITAL, LLC, et al.     Pg 48 of 48

Case No. 12-12020-mg     July 3, 2013

**today (5)**
6:13;11:11;12:25;
15:7;39:3
**today's (2)**
13:4,5
**told (2)**
10:3;29:2
**TOLLES (1)**
4:11
**tone (1)**
36:16
**top (1)**
21:15
**totally (2)**
8:17;9:13
**trade (1)**
38:20
**transactions (1)**
9:21
**transcript (4)**
22:6,16,18;33:21
**trial (26)**
16:25,25;17:10;
21:9;25:19,24;26:2,
12,12,14;27:4,5;28:3;
30:14,19;33:16,22,
23;34:6;35:4,4,9,16,
22;36:2;39:5
**tried (4)**
17:4,15;30:1;34:15
**trouble (2)**
35:18,20
**troubling (1)**
36:17
**truck (2)**
28:24;29:1
**true (1)**
16:19
**trustee (2)**
8:8;23:15
**trustee's (1)**
8:13
**try (5)**
28:18;34:12;35:23,
25;36:8
**trying (3)**
18:24,25;25:11
**Tuesday (1)**
5:15
**twelve (1)**
22:25
**two (14)**
5:4;8:18;10:7;
13:7;14:10,14;19:16;
20:7;21:7,10;25:15;
31:15;33:16;35:1

---

**U**

**ultimately (2)**
26:11;30:17
**UMB (2)**
23:15;24:6

**Um-hum (1)**
13:2
**under (4)**
10:11;11:6;12:4;
16:16
**undersecured (6)**
23:25;24:1;25:8,
10;26:19;28:7
**understands (1)**
24:1
**understood (5)**
19:7;23:17;24:15;
29:21;31:20
**unfair (1)**
9:13
**unilateral (1)**
14:16
**unilaterally (2)**
14:8,18
**unique (1)**
26:16
**unless (2)**
11:13;17:25
**Unsecured (2)**
4:3;32:2
**unsuccessful (1)**
7:7
**up (5)**
6:7;12:10;13:13;
15:21;32:23
**upon (3)**
11:25;15:14;30:6
**usual (1)**
37:21
**Uzzi (1)**
8:21

---

**V**

**vacuum (2)**
28:5;30:9
**value (14)**
8:4;11:21;12:5;
13:13,18;19:12,18;
20:3,6,19;21:24;24:1,
21;29:1
**valued (1)**
25:14
**valuing (1)**
17:6
**variety (1)**
25:10
**various (3)**
19:8,22,23
**vested (1)**
9:11
**view (5)**
10:20;15:8;16:12;
30:17;33:14
**views (6)**
12:9;13:1,3;30:16;
36:13;38:9
**virtually (1)**

21:12
**VITRA (1)**
38:8

---

**W**

**waive (3)**
11:25;13:12;21:14
**waiver (1)**
15:23
**waivers (1)**
30:24
**WALPER (5)**
4:17;5:18;32:22,
23,24
**wants (1)**
11:14
**way (7)**
14:22;26:24;27:4;
29:7,21;30:17;31:10
**week (2)**
7:16,16
**weekend (2)**
16:4;36:10
**what's (2)**
23:9;36:3
**Whereupon (1)**
39:8
**WHITE (2)**
4:2;11:1
**whole (4)**
25:10;36:9,23;37:8
**wholeheartedly (1)**
30:8
**who's (1)**
21:15
**who've (2)**
14:12;37:18
**willing (1)**
38:22
**win (1)**
25:14
**window (1)**
10:12
**wish (1)**
29:16
**within (2)**
17:2;39:6
**without (3)**
15:16;20:24;21:4
**word (2)**
26:7,8
**work (2)**
13:17;18:24
**works (2)**
12:13;15:12
**worth (1)**
20:18
**writing (1)**
6:5

---

**Y**

**York (2)**
4:6;7:9

---

**Z**

**zero (10)**
12:6,17,19;17:7;
19:5;20:17;21:23,24;
25:14,24

---

**0**

**01277 (1)**
5:5

---

**1**

**10:51 (1)**
39:8
**10036 (1)**
4:6
**1155 (1)**
4:5
**12-12020 (1)**
5:3
**13- (1)**
5:4
**13-01343 (1)**
5:4

---

**2**

**2.6 (2)**
12:18;19:19
**200 (3)**
20:8,18,20
**247 (1)**
7:25
**26 (1)**
33:10
**26th (1)**
33:9
**2nd (1)**
33:9

---

**3**

**35 (1)**
12:19
**355 (1)**
4:13
**35th (1)**
4:14

---

**4**

**4th (1)**
36:9

---

**5**

**5 (3)**
5:19;23:22,24

---

**596 (1)**
8:17

---

**9**

**90071 (1)**
4:15
**9019 (14)**
8:15;10:11;12:4;
17:2,20,22;21:5,16;
28:13,18,19;34:9,11,
14
**9th (1)**
38:25

---