**Hearing Date:  July 26, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: July 19, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York  10104
Telephone: (212) 468-8000
Facsimile:  (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
James A. Newton

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

——————————————————————————— )
                                          )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,        )    Chapter 11
                                          )
                    Debtors.              )    Jointly Administered
                                          )
------------------------------------------------------------------------- )

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019**
**AND BANKRUPTCY CODE SECTION 363(b)(1) AUTHORIZING THE DEBTORS**
**<u>TO ENTER INTO AND PERFORM UNDER AMENDMENT TO CONSENT ORDER</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE ...................................................................................................4

BACKGROUND ...........................................................................................................................4

    A.    GENERAL BACKGROUND ..............................................................................4

    B.    THE CONSENT ORDER ....................................................................................5

    C.    FRB SETTLEMENTS WITH NON-DEBTOR MORTGAGE
        SERVICERS ........................................................................................................6

    D.    THE CLASSIFICATION MOTION .....................................................................7

    E.    THE TERM SHEET AND THE AMENDMENT ...............................................8

RELIEF REQUESTED ...............................................................................................................11

ANALYSIS ..................................................................................................................................11

    A.    THE DEBTORS' ENTRY INTO THE AMENDMENT REPRESENTS A
        REASONABLE SETTLEMENT OF THEIR FRB FORECLOSURE
        REVIEW OBLIGATIONS ................................................................................11

        i)      The Likelihood of Success and the Likelihood of Complex and
                Protracted Litigation ..............................................................................13

        ii)     The Paramount Interests of Creditors .....................................................14

        iii)    Other Parties in Interest Support the Amendment...................................16

        iv)    The Amendment is the Result of Arm's-Length Negotiations by
                Experienced Counsel and is Consistent with the Non-Debtor
                Settlements ..............................................................................................17

        v)     The Proposed Settlement Satisfies the Remaining *Iridium* Factors .........18

    B.    PERFORMANCE UNDER THE AMENDMENT, INCLUDING
        PAYMENT OF THE SETTLEMENT AMOUNT REPRESENTS A
        REASONABLE EXERCISE OF THE DEBTORS' BUSINESS
        JUDGMENT ......................................................................................................18

CONCLUSION ............................................................................................................................19

NOTICE .......................................................................................................................................20

NO PRIOR REQUEST................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Air Line Pilots Ass'n, Int'l v. Am Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
156 B.R. 414 (S.D.N.Y. 1993) ............................................................................. 12

*Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
*60 B.R. 612 (Bankr. S.D.N.Y. 1986)* ..................................................................... 19

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
699 F.2d 599 (2d Cir. 1983) .......................................................................... 13, 19

*HSBC Bank USA, Nat'l Ass'n v. Fane (In re MF Global Inc.)*,
466 B.R. 244 (Bankr. S.D.N.Y. 2012) .................................................................. 12

*In re Aerovox, Inc.*,
269 B.R. 74 (Bankr. D. Mass. 2001) ..................................................................... 18

*In re Borders Grp., Inc.*,
453 B.R. 477 (Bankr. S.D.N.Y. 2011) .................................................................. 18

*In re Dewey & LeBoeuf LLP*,
478 B.R. 627 (Bankr. S.D.N.Y. 2012) ............................................................. 12, 13

*In re Metaldyne Corp.*,
409 B.R. 661 (Bankr. S.D.N.Y. 2009) .................................................................. 19

*In re MF Global Inc.*,
No. 11–2790, 2012 WL 3242533 (Bankr. S.D.N.Y. Aug. 10, 2012) ..................... 12

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007) ................................................................................. 13

*Nellis v. Shugrue*,
165 B.R. 115 (S.D.N.Y. 1994) .............................................................................. 12

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ................................................................................. 12

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*,
147 B.R. 650 (S.D.N.Y. 1992) ........................................................................ 18, 19

### TABLE OF AUTHORITIES
#### (continued)

Page(s)

*Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*),
 973 F.2d 141 (2d Cir. 1992) ................................................................................................. 18

*Smith v. Van Gorkom,*
 488 A.2d 858 (Del. 1985) .................................................................................................... 18

STATUTES

11 U.S.C. § 363(b)(1) ............................................................................................................... 18

OTHER AUTHORITIES

Fed. R. Bankr. P. 9019(a) ......................................................................................................... 11

Transcript of Hearing, *In re Residential Capital, LLC,*
 Case No. 12-12020 (Bankr. S.D.N.Y. March 21, 2013) ..................................................... 2, 15

Joint Press Release, Board of Governors of the Federal Reserve System (Jan. 7, 2013),
 *available at* http://www.federalreserve.gov/newsevents/press/bcreg/20130107a.htm ....... 7, 17

ny-1095547

**TO THE HONORABLE JUDGE GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC ("**ResCap**"), GMAC Mortgage, LLC ("**GMAC Mortgage**" and together with ResCap, the "**Consent Order Debtors**"), collectively with their debtor affiliates (the "**Debtors**") submit this motion (the "**Motion**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 363(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of an order substantially in the form attached hereto as Exhibit 1 (the "**Proposed Order**") authorizing the Debtors to enter into and perform under an amendment  (the "**Amendment**")[1] to the Debtors' consent order (the "**Consent Order**") with the Federal Reserve Board (the "**FRB**") and the Federal Deposit Insurance Corporation (the "**FDIC**"), dated April 13, 2011.[2]  In support of this Motion, the Debtors submit the declaration of Lewis Kruger (the "**Kruger Declaration**"), attached hereto as Exhibit 4, and respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Prior to and throughout these cases, the Debtors have worked diligently to comply with the mandates imposed by the FRB Foreclosure Review.[3]  Fulfilling those obligations, which has included payment of approximately $125 million to professionals to perform highly time-consuming foreclosure file reviews[4] in an attempt to determine if the relevant borrowers had suffered financial harm due to servicing errors of the Debtors, represents

---

[1]  The Debtors and the FRB are currently in the process of finalizing the Amendment.  As discussed below, because the FRB Term Sheet provides for a 30-day suspension of the FRB Foreclosure Review following the transfer of the Settlement Amount into an escrow account, the Debtors determined to file the Motion before the Amendment is finalized.  For purposes of considering the relief requested in the Motion, the Debtors have attached as Exhibit 2 what they believe to be a substantially final version of the Amendment.

[2]  A copy of the Consent Order is attached hereto as Exhibit 3.

[3]  Capitalized terms otherwise not defined in the Preliminary Statement shall have the meanings ascribed to them later on in the Motion.

[4]  Through June 23, 2013 there were 239,677 forecasted tests to be completed by PwC of various criteria on the 33,092 loan files included in the review population under the FRB Foreclosure Review.  Of that total, ResCap released to PwC the files and documents related to 61,514, of those tests, and PwC completed 38,736 of those reviews (out of which there were 738 confirmed errors in areas where the FRB had defined remediation amounts).

by far the single most costly administrative expense of the Debtors' estates. Accordingly, the Debtors have afforded considerable time and attention to trying to reduce those costs, utilizing both motion practice and negotiation. The end result was an Amendment to the Consent Order. Through the Amendment, the Debtors have agreed to make a one-time payment to a borrower fund in the amount of approximately $230 million,[5] in satisfaction of the Consent Order's FRB Foreclosure Review requirement.

2.      The Debtors seek authority to enter into and perform under the Amendment[6] because the Debtors believe that discontinuing the FRB Foreclosure Review is in the best interests of these estates. This is consistent with the Court's remarks at the Classification Motion Hearing -- the Court stated, "[t]he problem with [the FRB Foreclosure Review process], is that it's costing you 350 million dollars to figure out who you ought to – might pay 50 million dollars to. That makes no sense." Transcript of Hearing at 39:2-4, *In re Residential Capital, LLC*, Case No. 12-12020 (Bankr. S.D.N.Y. March 21, 2013) (the "**March 21 Transcript**"). The Debtors therefore seek authority to enter into and perform under the Amendment. The Amendment obviates the enormous payments to consultants for work that, if completed, almost certainly would result in lower total restitution payments to borrowers than what is being paid under the Amendment. Moreover, the Settlement Amount is less than the projected total cost of the FRB Foreclosure Review, including any associated restitution

---

[5] The Settlement Amount consists of a cash payment in the amount of $198,077,499 from which payments will be made to borrowers pursuant to the distribution plan described in the Amendment. Additionally, the Amendment requires ResCap and GMAC Mortgage to provide loss mitigation or other foreclosure prevention actions ("**Foreclosure Prevention**") that total $316,923,998. The Debtors and the FRB have agreed that the Debtors may make an additional cash payment in the amount of $31,692,400 in satisfaction of their Foreclosure Prevention obligations. The total cash consideration to be paid to the FRB in satisfaction of paragraphs 3 and 4 of the Consent Order is $229,769,899 (the "**Settlement Amount**"), plus interest accruing on escrowed funds.

[6] In connection with and incidental to the Amendment, the Debtors are required to enter into an amendment to the existing engagement letter with PwC that shortens the term of the foreclosure review engagement and a new engagement letter that covers the services required under the Amendment. Moreover, as provided for in the Amendment, the Debtors will also need to retain the Paying Agent to disburse funds deposited in the Fund. The Debtors are in the process of finalizing the relevant agreements. As indicated below, these costs are relatively low in comparison to the Settlement Amount.

2

payments.  Reducing this administrative expense will result in a greater distribution to the Debtors' creditors.

3.       The Debtors determined that it was imperative to halt the accrual of costs associated with conducting the FRB Foreclosure Review while the Debtors sought approval from the Court to enter into and perform under the Amendment.  Therefore, the Debtors agreed to enter into a Term Sheet with the FRB (the "**FRB Term Sheet**").  The FRB Term Sheet was the product of extensive, arm's-length negotiations between the Debtors, the Creditors' Committee and the FRB.  The FRB Term Sheet encompasses the terms of the proposed Amendment, and provides for a 30-day suspension of the FRB Foreclosure Review once the Settlement Amount was transferred into an escrow account.

4.       On June 26, 2013, the Court entered an order (the "**Escrow Order**") authorizing the Debtors to enter into the FRB Term Sheet and transfer the Settlement Amount into an escrow account.  The FRB Term Sheet was fully executed on June 27, 2013, and the FRB Foreclosure Review was suspended on June 28, 2013.

5.       For the reasons described below, the Debtors believe that the Amendment is fair and equitable and satisfies the factors considered by Courts in this district in determining whether to approve a settlement.  Resolution of the FRB Foreclosure Review will result in a greater distribution to creditors and quicker payments to borrowers.  Moreover, major constituencies, including the Creditors' Committee, support the settlement. Thus, the Debtors have in good faith determined using their reasonable business judgment that entry into and performance under the Amendment is in the best interests of their estates.

ny-1095547

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory predicates for the relief requested herein are Bankruptcy Rule 9019 and section 363(b)(1) of the Bankruptcy Code.

## BACKGROUND

### A.    GENERAL BACKGROUND

8.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.  On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court appointed Arthur J. Gonzalez as the examiner [Docket No. 674].

9.      On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine-member official committee of unsecured creditors (the "**Creditors' Committee**").

10.     The Debtors were a leading residential real estate finance company indirectly owned by Ally Financial Inc. (along with certain of its subsidiaries and affiliates, including Ally Bank, "**Ally**"), which is not a Debtor.  Prior to the closing of the Debtors' court-approved asset sales, the Debtors and their non-debtor affiliates operated the fifth largest mortgage servicing business and the tenth largest mortgage origination business in the United States.  A more detailed description of the Debtors, including their business operations, their

capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6] (the "**Whitlinger Affidavit**").

B.    **THE CONSENT ORDER**

11.    Prior to the Petition Date, several of the Debtors and their affiliates were the subjects of an examination by the FRB and the FDIC, two of the many entities regulating companies in the banking and financial services industries.  These governmental entities were investigating alleged abuses in the foreclosure processes employed by companies with major mortgage servicing operations, including the Debtors.  In order to avoid further disruption to the Debtors' businesses as a result of the examination, and to avoid the potential for lengthy litigation, the Consent Order Debtors, along with non-debtor affiliates Ally Financial Inc. and Ally Bank, entered into the Consent Order, which sought to resolve the issues raised by the federal regulators in the examination.

12.    Without admitting fault, the Consent Order Debtors, Ally Financial Inc. and Ally Bank agreed, pursuant to the Consent Order, to develop and implement certain risk management and corporate governance procedures under the guidance of the FRB in order to ensure prospective compliance with applicable foreclosure-related regulations and laws.  *See, generally*, Consent Order.  Additionally, pursuant to the Consent Order, GMAC Mortgage agreed to pay for an independent file review regarding certain residential foreclosure actions and foreclosure sales prosecuted by GMAC Mortgage and its subsidiaries (the "**FRB Foreclosure Review**").  *See* Consent Order ¶¶ 3-4.  The FRB Foreclosure Review was ultimately directed at determining whether certain mortgage foreclosure improprieties occurred, establishing remediation amounts to compensate borrowers who suffered financial harm as a direct result of

ny-1095547

those improprieties, and identifying which borrowers were eligible for such compensation. *See* Consent Order ¶ 3(c); *see also* Kruger Decl. ¶ 7. At that time, the Debtors were not provided with an option to make a lump sum payment to satisfy the obligations imposed by the costly FRB Foreclosure Review. Kruger Decl. ¶ 8.

13.     During the Debtors' bankruptcy cases, both the scope of the FRB Foreclosure Review and the projected costs associated with performing the review continually increased during the course of the review process. *See* Kruger Decl. ¶ 10. As of the Petition Date, the Debtors estimated that the performance of the FRB Foreclosure Review might cost as much as $180 million. Whitlinger Affidavit ¶ 87. By August 2012, the Debtors' estimate of the cost of the FRB Foreclosure Review had risen to $250 million[7] and by the time the Debtors' filed the Classification Motion (as defined below) in late February 2013, the FRB had imposed still further changes to the scope of the FRB Foreclosure Review. The Debtors believed that the cost of the review (and remediation of any borrower harm) could have reached $415 to $459 million. *See* Kruger Decl. ¶ 12.

14.     As of June 30, 2013, the Debtors had paid (or were in the process of paying) consultants[8] and two law firms retained to conduct the FRB Foreclosure Review a total of approximately $125 million.

## C.     FRB SETTLEMENTS WITH NON-DEBTOR MORTGAGE SERVICERS

15.     On January 7, 2013, the FRB announced a resolution of the foreclosure review requirements contained in consent orders with ten major non-debtor mortgage servicers

---

[7] *See Declaration of Joseph A. Pensabene in Support of Debtors' Motion for Entry of an Order Under Bankruptcy Code Section 363 and Bankruptcy Rule 6004 (i) Authorizing the Debtors to Compensate PricewaterhouseCoopers, LLP for Foreclosure Review Services in Furtherance of the Debtors' Compliance Obligations Under Federal Reserve Board Consent Order and (ii) Reaffirming Relief Granted in the GA Servicing Order* ¶ 9 [Docket No. 1357, Exhibit 4].

[8] Primarily PricewaterhouseCoopers, LLP ("**PwC**"), which was engaged as GMAC Mortgage's independent consultant.

and also reported that he FRB had entered into term sheets setting forth the primary terms of the settlements.[9]  Shortly thereafter, the FRB announced a resolution of the foreclosure review requirements contained in consent orders with three additional major non-debtor mortgage servicers.

16.    Although the Debtors had received a similar term sheet, they did not initially agree to the terms of the settlement because it required a lump sum cash payment, and the Debtors required time to address the merits of such a settlement with the Creditors' Committee and other parties in interest.

D.    THE CLASSIFICATION MOTION

17.    On February 27, 2013, the Debtors filed the *Debtors' Motion Pursuant to Bankruptcy Rule 3013 and Bankruptcy Code Section 362(a) for a Determination That (I) GMAC Mortgage's FRB Foreclosure Review Obligation Is a General Unsecured Claim and (II) The Automatic Stay Prevents Enforcement of the FRB Foreclosure Review Obligation* [Docket No. 3055] (the "**Classification Motion**").  By the Classification Motion, the Debtors requested that the Court determine that GMAC Mortgage's FRB Foreclosure Review obligation represents a general unsecured claim that must be enforced through the Debtors' Chapter 11 cases.

18.    On March 11, 2013, Wilmington Trust, National Association, as trustee for the Senior Unsecured Notes issued by ResCap filed a *Statement in Support and Limited Objection* to the Classification Motion [Docket No. 3139].  Subsequently, on March 13, 2013, objections to the Classification Motion were filed by the FRB [Docket No. 3149], Ally [Docket No. 3150] and Frank Reed [Docket No. 3152].

---

[9]  Joint Press Release, Board of Governors of the Federal Reserve System (Jan. 7, 2013), *available at* http://www.federalreserve.gov/newsevents/press/bcreg/20130107a.htm.

19.    On March 19, 2013, the Creditors' Committee filed the *Reply of the Official Committee of Unsecured Creditors to the Debtors' Motion for a Determination that (I) GMAC Mortgage's FRB Foreclosure Review is a General Unsecured Claim and (II) the Automatic Stay Prevents Enforcement of the FRB Foreclosure Review Obligations* [Docket No. 3245].

20.    The Court heard argument on the Classification Motion on March 21, 2013 (the "**Classification Motion Hearing**").  To date, no decision has been issued in connection with the Classification Motion.

### E.    THE TERM SHEET AND THE AMENDMENT

21.    Since the filing of the Classification Motion, the Debtors have engaged in negotiations with the FRB regarding a potential resolution of the FRB Foreclosure Review obligation and certain other related obligations.  On June 27, 2013, the Debtors reached an agreement in principle with the FRB regarding entry into the Amendment (with the support of the Creditors' Committee and each of the other parties to the Debtors' Plan Support Agreement[10]) and satisfaction of GMAC Mortgage's FRB Foreclosure Review obligation in exchange for a lump sum cash payment of approximately $230 million.  The Settlement Amount was calculated using a formula similar to the formula used to determine the settlement payments for other major mortgage servicers.

22.    In order to obtain the FRB's agreement to suspend the FRB Foreclosure Review and the accrual of approximately $300,000 in associated professional fees daily, the Debtors requested that the Court enter the Escrow Order and authorize the Debtors to execute a

---

[10]  On June 26, 2013, the Court authorized the Debtors' entry into an agreement with the Creditors' Committee, AFI and certain additional parties in interest, which resolved complex disputed matters in these Chapter 11 cases (the "**Plan Support Agreement**") and presented the terms of a Chapter 11 plan to be jointly proposed with the Creditors' Committee.

Term Sheet setting forth the anticipated financial and other terms of the expected settlement and

pay into escrow the Settlement Amount pending the Court's consideration of a motion seeking

approval of the Amendment.

23.    On June 26, 2013, the Court entered the Escrow Order [Docket No. 4091].

On June 27, 2013, the Debtors transferred the Settlement Amount into escrow.  As of June 28,

2013, the FRB Foreclosure Review was suspended for a period of 30 days in accordance with the

FRB Term Sheet.

24.    The FRB and the Debtors have reached agreement on the final terms of a

settlement, in the form of the Amendment, which will resolve GMAC Mortgage's FRB

Foreclosure Review obligation and certain related obligations.  For illustrative purposes, the

following chart summarizes the primary terms of the Amendment:

| | |
|---|---|
| Payment to Borrowers § 3(a) | Within 1 business day of the date of the Amendment, ResCap and GMAC Mortgage will, directly or through their agent, make a cash payment that totals $198,077,499, plus any interest accrued on such amounts, into a Qualified Settlement Fund (the "**Fund**") from which payments will be made pursuant to a distribution plan developed by the FRB to borrowers whose residential mortgage loan on their primary residence was serviced by the Debtors and who were subject to a foreclosure action or proceeding that was pending or completed any time from January 1, 2009 to December 31, 2010 (the "**In-Scope Borrower Population**"). |
| Establishment of the Fund § 3(b) | Prior to the cash payment required under § 3(a), ResCap and GMAC Mortgage shall ensure that the Fund is established, consistent with Treas. Reg. § 1.468B-1, and a paying agent acceptable to the FRB (the "**Paying Agent**") has been retained to distribute payments to the In-Scope Borrower Population. ResCap and GMAC Mortgage will be responsible for all administrative costs related to the Fund and the Paying Agent. |
| The Borrower Waterfall § 3(c) | Except as otherwise provided, upon execution of the Amendment, ResCap and GMAC Mortgage shall promptly place the In-Scope Borrower Population into categories based upon loan file characteristics as determined by the FRB (the "**Borrower Waterfall**"). |
| The Distribution Plan § 3(e) | The FRB will determine the specific payment amounts |

9

| | |
|---|---|
| | applicable to each category of borrower within the Borrower Waterfall (the "**Distribution Plan**") and will direct the Paying Agent to distribute payments accordingly. |
| Borrowers entitled to protection under Section 521 or 533 of the SCRA § 3(f) | With respect to borrowers in the In-Scope Borrower Population who may have been entitled to protection under Section 521 or Section 533 of the Servicemembers' Civil Relief Act (the "**SCRA**") and borrowers who may not have been in default during the foreclosure process, ResCap and GMAC Mortgage may elect to instruct PwC to complete file reviews to determine financial injury.  If ResCap and GMAC Mortgage make such an election and PwC makes a determination of "harm" to the borrowers, such borrowers will receive payments from the Fund in amounts specified in the June 21, 2012 Financial Remediation Framework.  If PwC makes a determination of "no harm," ResCap and GMAC Mortgage will place the borrower into the next highest Borrower Waterfall category for which such borrower is eligible, which will result in the borrower receiving payment from the Fund in accordance with the Distribution Plan discussed in § 3(e). |
| Borrowers entitled to interest rate protections under Section 527 of the SCRA § 3(g) | With respect to borrowers in the In-Scope Borrower Population who may have been subject to interest rate protections under Section 527 of the SCRA, ResCap and GMAC Mortgage may elect to instruct PwC to complete file reviews for such borrowers to determine financial injury.  If ResCap and GMAC Mortgage make such an election, and PwC makes a determination of "harm" to the borrowers, such borrowers will receive payments as calculated pursuant to the methodology outlined in Department of Justice/Department of Housing and Urban Development National Mortgage Settlement ("**NMS**") Exhibit H (Consent Judgment entered April 4, 2012).  If PwC makes a determination of "no harm," ResCap and GMAC Mortgage will place the borrower into the next highest Borrower Waterfall category for which such borrower is eligible, which will result in the borrower receiving payment from the Fund in accordance with the Distribution Plan discussed in § 3(e). [11] |
| Loss mitigation or other Foreclosure Prevention actions, and their satisfaction by payment of additional cash §§ 4(a), (b) & (h) | By no later than June 27, 2015, ResCap and GMAC Mortgage shall collectively provide Foreclosure Prevention valued at $316,923,998.  Such actions shall be in addition to any consumer relief obligations imposed under the NMS and shall be satisfied by ResCap and GMAC Mortgage collectively making, directly or through their agent, an additional payment |

---

[11] The expected additional cost for PwC to complete the two SCRA reviews is approximately $1 million and is separate and apart from the Settlement Amount.

| | to the Fund in the amount of $31,692,400 from the escrow account, plus any interest accrued on such amounts, within 1 business day of the execution of the Amendment. |
|---|---|
| Agreement regarding future enforcement actions § 29 | Except as otherwise provided and only with respect to the In-Scope Borrower Population, the FRB agrees not to initiate any further enforcement actions, including for civil money penalties, against ResCap and GMAC Mortgage with respect to (a) the conduct described in the WHEREAS clauses of the Consent Order, (b) the matters addressed in paragraphs 3 through 4 of the Consent, including matters relating to the work or findings of PwC or independent legal counsel to PwC, and (c) any other past mortgage servicing and foreclosure-related practices that are addressed by the Consent Order, as amended. |
| Prohibition on waiver of claims § 30 | Neither ResCap nor GMAC Mortgage may request or require any borrower to execute a waiver of any claims against ResCap or GMAC Mortgage (including any agent or affiliate of ResCap or GMAC Mortgage) in connection with any payment or Foreclosure Prevention assistance provided pursuant to the Consent Order, as amended. |

## RELIEF REQUESTED

25.    The Debtors respectfully request that this Court enter an order substantially in the form of the Proposed Order, authorizing the Debtors, pursuant to Bankruptcy Rule 9019(a) and Bankruptcy Code section 363(b)(1), to enter into and perform under the Amendment, including the payment of the Settlement Amount in resolution of GMAC Mortgage's FRB Foreclosure Review obligation.

## ANALYSIS

### A.    THE DEBTORS' ENTRY INTO THE AMENDMENT REPRESENTS A REASONABLE SETTLEMENT OF THEIR FRB FORECLOSURE REVIEW OBLIGATIONS

26.    Bankruptcy Rule 9019(a) provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve a settlement agreement where "it is supported by adequate consideration, is 'fair and equitable,'

11

and is in the best interests of the estate." *Air Line Pilots Ass'n, Int'l v. Am Nat'l Bank & Trust Co.* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 426 (S.D.N.Y. 1993); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012).  The Court's analysis is not a mechanical process, but rather contemplates a "range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

27.     "As a general matter, '[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *Dewey & LeBoeuf LLP*, 478 B.R. at 640 (quoting *In re MF Global Inc.*, No. 11–2790, 2012 WL 3242533 at *5 (Bankr. S.D.N.Y. Aug. 10, 2012)); *HSBC Bank USA, Nat'l Ass'n v. Fane* (*In re MF Global Inc.),* 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012).  The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *See Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994); *Ionosphere Clubs, Inc.*, 156 B.R. at 426.  Bankruptcy courts, however, should consider and factor in the debtor's exercise of its reasonable business judgment when reviewing a proposed settlement and may rely on the opinion of the debtor, parties to the settlement, and professionals. *MF Global Inc.*, 466 B.R. at 244; *Dewey & LeBoeuf LLP*, 478 B.R. at 641.

28.     To approve a proposed settlement, courts "need not conduct a mini-trial" or definitively decide the numerous issues of law and fact raised by the settlement. *Dewey & LeBoeuf LLP*, 478 B.R. at 640-641 (internal quotations omitted).  Rather, courts should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of

reasonableness.'"  *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983);

*Dewey & LeBoeuf LLP*, 478 B.R. at 640 (same).

29.    In deciding whether a particular settlement falls within the "range of

reasonableness," courts consider the following "*Iridium*" factors: (a) the balance between the

litigation's possibility of success and the settlement's future benefits; (b) the likelihood of

complex and protracted litigation, "with its attendant expense, inconvenience, and delay"; (c) the

paramount interests of creditors; (d) whether other parties in interest support the settlement;

(e) "the nature and breadth of releases to be obtained by officers and directors"; (f) the

"competency and experience of counsel" supporting, and "[t]he experience and knowledge of the

bankruptcy court judge" reviewing the settlement; and (g) "the extent to which the settlement is

the product of arm's-length bargaining."  *Motorola, Inc. v. Official Comm. of Unsecured*

*Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 462 (2d Cir. 2007) (internal citations

and quotations omitted).

30.    The Debtors respectfully submit that each of the *Iridium* factors weighs in

favor of this Court's approval of the Amendment.

i)    **The Likelihood of Success and the Likelihood of Complex and Protracted
      Litigation**

31.    Without restating the arguments made in favor of and in opposition to the

Classification Motion, in the absence of a settlement, the Debtors would have been dependent on

a favorable ruling from this Court on the Classification Motion in order to get relief from

conducting the FRB Foreclosure Review.  It is clear that the legal issues raised in that motion are

not straightforward and there was substantial disagreement even as to this Court's jurisdiction to

grant the relief requested by the Debtors.  In determining whether to approve the settlement, the

Court should weigh the benefits of the Amendment against the likelihood of success of current
and future litigation regarding the FRB Foreclosure Review obligation.

32.    The issues that must be resolved in connection with the Classification
Motion are extremely complex.  As the Court may recall, following the Court's review of the
underlying pleadings and an initial hearing on the Classification Motion, the Court requested that
the parties submit supplemental briefing on certain of the issues.  In summary, in order for the
Debtors to prevail on the Classification Motion, the Court must find that (i) the FRB Foreclosure
Review obligation, including any remediation payments determined to be owed to borrowers,
represents a general unsecured claim and (ii) any attempt to enforce such claim is barred by the
automatic stay.  As applied to the facts at hand, these issues are unprecedented.  Moreover, even
if the Court were to rule in favor of the Debtors, the parties who opposed the relief requested
therein could and likely would appeal such a decision.  Given the uncertainty surrounding the
Classification Motion and any potential appeals, as well as the expenditure of estate assets to
conduct the FRB Foreclosure Review in the interim, the Debtors believe that the Amendment is
reasonable and in the best interests of their estates.

**ii)    The Paramount Interests of Creditors**

33.    Settlement of GMAC Mortgage's FRB Foreclosure Review obligation is
in the best interests of the Debtors' estates and their creditors.  Despite being well intentioned,
the FRB Foreclosure Review has proven to make little sense.  The FRB Foreclosure Review was
directed at determining whether certain mortgage foreclosure improprieties occurred,
establishing remediation amounts to compensate borrowers who suffered financial harm as a
direct result of those improprieties, and identifying which borrowers were eligible for such
compensation.  Over the course of the FRB Foreclosure Review, it became apparent to all that
the FRB Foreclosure Review was throwing good money after bad and that the absurd costs to

14

support the FRB Foreclosure Review should not be sustained.  As the Court stated at the

Classification Motion Hearing, "[t]he Program appears to have been well intentioned, but

subsequent events have shown it to be completely ill-conceived.  When these debtors would be

on the hook for 350 to 400 million dollars to do a foreclosure review that would result in

restitution payments, hypothetically, of fifty million dollars, there's something wrong with that

plan."  March 21 Transcript at 83:13-18.

34.    Continued performance of the FRB Foreclosure Review will cost these

estates $300,000 per day, and the total cost of the FRB Foreclosure Review (and any associated

remediation) absent a settlement is projected to reach $415 to $459 million.  The Court should

approve the Amendment because the Settlement Amount is less than the projected total cost of

the FRB Foreclosure Review.  Eliminating this administrative expense will result in a greater

distribution to the Debtors' creditors because the funds available for distribution to other

creditors of the Debtors' estates will be reduced drastically if the FRB Foreclosure Review

continues as an administrative expense.  For these reasons, the Debtors believe that the

Amendment is in the paramount interests of creditors.

35.    Furthermore, the Amendment is in the best interests of creditors because

rather than use estate assets to conduct the file review – and pay consultants – the Settlement

Amount will go directly to compensate borrowers who may have been harmed by the Debtors'

alleged foreclosure improprieties.  The Amendment allows those borrowers to receive more

funds more quickly than they otherwise would.

36.    The Debtors believe that entry into the Amendment is fundamental to the

success of these Chapter 11 cases, and thus in the best interest of creditors, because the Debtors'

continued performance under the Consent Order is required under the Plan Support Agreement

ny-1095547

and the Plan (defined below).  As the Court is well aware, the Debtors have reached consensus on the terms of a Chapter 11 plan that was jointly proposed with the Creditors' Committee and provides for, among other things, a substantial contribution from Ally (the "**Ally Contribution**").  On July 3, 2013, the Debtors filed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4153] (the "**Plan**").  The Plan Support Agreement and the Plan contemplate near-global resolution of substantial litigation and settlement of complex disputed matters in these Chapter 11 cases, to be implemented through a plan structure that will yield substantial value for creditors and facilitate the Debtors' exit from bankruptcy.  The Plan Support Agreement and the Plan also contemplate that the Debtors will continue to comply with or resolve their obligations under the Consent Order.  Ally's agreement to enter into the Plan Support Agreement and payment of the Ally Contribution are conditioned on, among other things, the Debtors' continued compliance with, or resolution of, the Consent Order.  The benefits the Debtors are to receive under the Plan, including the Ally Contribution, clearly weigh in favor of approval of the Amendment.

### iii)    Other Parties in Interest Support the Amendment

37.    The next *Iridium* Factor, that other parties in interest support the settlement, also weighs in favor of authorizing the Debtors to enter into and perform under the Amendment.  The Creditors' Committee was extensively involved in the negotiations surrounding the FRB Term Sheet and supports the relief requested herein.  The Debtors and their advisors engaged in countless discussions with the advisors to the Creditors' Committee regarding resolution of the obligations imposed by the Consent Order.

16

iv)     **The Amendment is the Result of Arm's-Length Negotiations by Experienced Counsel and is Consistent with the Non-Debtor Settlements**

38.     The Amendment is the result of arm's-length negotiations between the

Debtors, the Creditors' Committee and the FRB, which were all represented by competent and

experienced professionals with particular expertise in these matters.

39.     Aside from certain adjustments made in recognition of the Debtors'

particular situation - specifically the transfer of the Settlement Amount into an escrow account

and satisfaction of Foreclosure Prevention obligations by a specified cash payment - the terms of

the Amendment are consistent with the settlements reached by and between the FRB and thirteen

of the country's largest mortgage servicers in satisfaction of the foreclosure review requirements

in their respective consent orders.  As noted above, the FRB previously announced a resolution

of foreclosure review requirements contained in consent orders with thirteen major mortgage

servicers (the "**Non-Debtor Settlements**").  The foreclosure review requirements contained in

those orders are nearly identical to the FRB Foreclosure Review requirement.  Kruger Decl. ¶ 22.

Like the Amendment, the Non-Debtor Settlements resolve foreclosure reviews contained in other

consent orders.  "[F]ulfillment of the agreement [by the ten participating mortgage servicers]

would meet the requirements of the enforcement actions that mandated that servicers retain

independent consultants to conduct an Independent Foreclosure Review….As a result of this

agreement, the participating servicers would cease the Independent Foreclosure Review which

involves case-by-case reviews, and replace it with a broader framework allowing eligible

borrowers to receive compensation significantly more quickly."[12]  Moreover, the Settlement

Amount was calculated in a manner consistent with the settlement payments made under the

---

[12] Joint Press Release, Board of Governors of the Federal Reserve System (Jan. 7, 2013), *available at*
    http://www.federalreserve.gov/newsevents/press/bcreg/20130107a.htm.

ny-1095547

Non-Debtor Settlements.  Kruger Decl. ¶ 22.  That the Amendment is consistent with the Non-Debtor Settlements should persuade this Court that the terms are reasonable and the product of arm's-length bargaining.

> **v)**     **The Proposed Settlement Satisfies the Remaining *Iridium* Factors**

40.     For the reasons stated above, the Debtors believe that the paramount interest of all parties is best served by approval of the Amendment.  Moreover, the remaining *Iridium* Factors are also satisfied.

**B.      PERFORMANCE UNDER THE AMENDMENT, INCLUDING PAYMENT OF THE SETTLEMENT AMOUNT REPRESENTS A REASONABLE EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT**

41.     Section 363(b)(l) of the Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate…." subject to court approval.  11 U.S.C. § 363(b)(1).  Courts will approve a debtor's use of property under Bankruptcy Code section 363 if the use is a sound exercise of the debtor's business judgment.  *See Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143-44 (2d Cir. 1992); *In re Borders Grp., Inc.*, 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011).  Once a debtor articulates a sound business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

42.     As a result, the debtor's business judgment "should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice."  *In re Aerovox, Inc.*, 269 B.R. 74,

80 (Bankr. D. Mass. 2001) (internal quotations omitted); *accord Integrated Res.*, 147 B.R. at 656

("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-

interest or gross negligence."). Accordingly, courts will not generally substitute their business

judgment for a debtor's. *In re Metaldyne Corp.*, 409 B.R. 661, 667 (Bankr. S.D.N.Y. 2009).

Instead, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct

from a decision made arbitrarily or capriciously), courts will generally not entertain objections to

the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville

Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

43.     Entry into and performance under the Amendment is a sound exercise of

the Debtors' business judgment. For all of the reasons discussed above, settlement of the FRB

Foreclosure Review is in the best interests of these estates. Absent settlement of this issue,

administrative expenses in connection with the FRB Foreclosure Review would continue to

accrue. Moreover, as discussed above, the Plan Support Agreement and the Plan contemplate

continued performance by the Debtors in satisfaction of the obligations. The Amendment avoids

the need for the Debtors to engage in costly litigation regarding the liability for, and value of,

those claims. Moreover, aside from certain adjustments made in recognition of the Debtors'

particular situation, the Amendment is consistent with others that have been entered into by the

FRB and other settling mortgage servicers.

## CONCLUSION

44.     The Debtors have determined, in exercising their reasonable business

judgment, that the terms of the Amendment are fair, equitable and eminently reasonable to the

Debtors' estates and creditors, thereby satisfying the standards of Bankruptcy Rule 9019. The

Debtors therefore submit that the settlement is fair and well within the range of reasonableness—

and certainly not "below the lowest point in the range of reasonableness." *W.T. Grant Co.*,

699 F.2d at 608.  The Debtors also determined, in exercising their reasonable business judgment, that performance under the Amendment is in the best interests of these estates.  Accordingly, the Debtors respectfully request that the Court approve the Debtors' entry into and performance under the Amendment pursuant to Bankruptcy Rule 9019 and authorize the Debtors to perform under the Amendment pursuant to section 363(b)(1) of the Bankruptcy Code.

## NOTICE

45.    Notice of this Motion has been provided in accordance with the Case Management Procedures Order, entered by this Court on May 23, 2012 [Docket No. 141].

## NO PRIOR REQUEST

46.    Except as otherwise noted herein, no prior application for the relief requested herein has been made to this Court or any other court.

**WHEREFORE**, the Debtors respectfully request the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        July 12, 2013

Respectfully submitted,

/s/ Gary S. Lee
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
James A. Newton
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors
and Debtors in Possession*

20