# **Exhibit 2**

**Amendment of Consent Order**

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>ALLY FINANCIAL INC.<br>Detroit, Michigan<br><br>ALLY BANK<br>Midvale, Utah<br><br>RESIDENTIAL CAPITAL, LLC<br>Minneapolis, Minnesota<br><br>and<br><br>GMAC MORTGAGE, LLC<br>Fort Washington, Pennsylvania | Docket No.    11-020-B-HC<br>                        11-020-B-DEO<br><br>FDIC-11-123b |

## AMENDMENT OF CONSENT ORDER

WHEREAS, on April 13, 2011, Ally Financial Inc., Detroit, Michigan ("Ally Financial"), a registered bank holding company, Residential Capital, LLC, Minneapolis, Minnesota ("ResCap"), and GMAC Mortgage, LLC, Fort Washington, Pennsylvania ("GMAC Mortgage") consented to the issuance of a Consent Order (the "2011 Consent Order"), in recognition of the common goal of the Board of Governors of the Federal Reserve System (the "Board of Governors"), the Federal Reserve Bank of Chicago (the "Reserve Bank"), Ally Financial and its direct and indirect subsidiaries that engaged in the business of servicing residential mortgage loans, including GMAC Mortgage and its direct and indirect subsidiaries, to ensure that the

consolidated organization operates in a safe and sound manner and in compliance with all applicable Legal Requirements (as defined in the 2011 Consent Order);

WHEREAS, paragraphs 3 and 4 of the 2011 Consent Order required GMAC Mortgage, among other things, to retain an independent consultant to conduct an independent review of certain residential mortgage loan foreclosure actions or proceedings for borrowers who had a pending or completed foreclosure on their primary residence any time from January 1, 2009 to December 31, 2010 for loans serviced by the Mortgage Servicing Companies (as defined in the 2011 Consent Order) (the "In-Scope Borrower Population"), the purposes of which were set forth in paragraphs 3 and 4 of the 2011 Consent Order (the "Independent Foreclosure Review");

WHEREAS, GMAC Mortgage has taken steps to comply with its obligations under paragraphs 3 and 4 of the 2011 Consent Order;

WHEREAS, in the interest of providing the greatest benefit to borrowers potentially affected by the practices at the Mortgage Servicing Companies addressed in the 2011 Consent Order in a more timely manner than would have occurred under the Independent Foreclosure Review, the Board of Governors and the Office of the Comptroller of the Currency, within their respective jurisdictions, ResCap, GMAC Mortgage, and several other financial institutions with mortgage loan servicing operations agreed to amend their respective 2011 Consent Orders;

WHEREAS, ResCap, GMAC Mortgage, and the Board of Governors intend GMAC Mortgage's obligations under paragraphs 3 and 4 of the 2011 Consent Order to be replaced with the obligations specified in this amendment to the 2011 Consent Order (the "Amendment"), and ordered pursuant to section 8(b) of the Federal Deposit Insurance Act, as amended (the "FDI Act") (12 U.S.C. § 1818(b)), which include (i) making a cash payment in the amount specified herein to a Qualified Settlement Fund for distribution to the In-Scope Borrower

Population in accordance with a distribution plan developed by the Board of Governors in its discretion and (ii) taking other loss mitigation or other foreclosure prevention actions in the amount specified herein;

WHEREAS, ResCap and GMAC Mortgage filed a petition in bankruptcy on May 14, 2012; and, to facilitate the cash payment to the Qualified Settlement Fund during the pendency of those proceedings, ResCap and GMAC Mortgage retained an escrow agent and deposited the payment amount with that agent for subsequent disbursal to the Qualified Settlement Fund;

WHEREAS, the amount of any payments to borrowers made pursuant to this Amendment to the 2011 Consent Order does not in any manner reflect specific financial injury or harm that may have been suffered by borrowers receiving payments, except as expressly provided for in this Amendment to the 2011 Consent Order, nor do the payments constitute either an admission or a denial by ResCap or GMAC Mortgage of wrongdoing or a civil money penalty under section 8(i) of the FDI Act (12 U.S.C. § 1818(i));

WHEREAS, the boards of directors of ResCap and GMAC Mortgage, at duly constituted meetings, adopted resolutions authorizing and directing Lewis Kruger to enter into this Amendment to the 2011 Consent Order on behalf of ResCap and GMAC Mortgage, respectively, and consenting to compliance by ResCap and GMAC Mortgage, and their institution-affiliated parties, as defined in sections 3(u) and 8(b)(3) of the Federal Deposit Insurance Act, as amended (the "FDI Act") (12 U.S.C. §§ 1813(u) and 1818(b)(3)), with each and every applicable provision of the 2011 Consent Order as amended by this Amendment.

NOW, THEREFORE, IT IS HEREBY ORDERED pursuant to section 8(b) of the FDI Act (12 U.S.C. § 1818(b)) that the 2011 Consent Order is amended as follows:

1. The recitations of the 2011 Consent Order are not amended.

2. Paragraphs 1 and 2 of the 2011 Consent Order are not amended.

3. Except as otherwise provided in this paragraph 3, any obligations of GMAC Mortgage under paragraphs 3 and 4 of the 2011 Consent Order are hereby terminated, and paragraphs 3 and 4, including their accompanying heading, are stricken and replaced with the following:

"**Payments to Borrowers**

3. (a) Within one business day of the date of the amendment to this Order (the "Amendment"), ResCap and GMAC Mortgage (defined for purposes of paragraphs 3 and 4 to include ResCap's direct and indirect subsidiaries) collectively will, directly or through their agent, make a cash payment that totals $198,077,499, plus any interest accrued on amounts held by their agent, into a Qualified Settlement Fund (the "Fund") from which payments will be made pursuant to a distribution plan developed by the Board of Governors (the "Regulator") in its discretion to borrowers whose residential mortgage loan on their primary residence was serviced by the Mortgage Servicing Companies and who were subject to a foreclosure action or proceeding that was pending or completed any time from January 1, 2009 to December 31, 2010 (the "In-Scope Borrower Population").

(b) Prior to ResCap's and GMAC Mortgage's cash payment into the Fund required under paragraph 3(a), ResCap and GMAC Mortgage shall ensure that the Fund is established. The Fund shall be established and is intended to be treated at all times as a Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1 (26 C.F.R. § 1.468B-1). A paying agent acceptable to the Regulator (the "Paying Agent") has been retained by ResCap and GMAC Mortgage for the purpose of distributing payments as directed by the Regulator from the Fund to Mortgage Servicing Companies' In-Scope Borrower Population.

4

The Paying Agent shall serve as the "administrator" at the direction of the Regulator within the meaning of Treas. Reg. § 1.468B-2(k)(3) (26 C.F.R. § 1.468B-2(k)(3)). The agreement(s) pursuant to which ResCap and GMAC Mortgage retain the Paying Agent shall be subject to the Regulator's prior no objection, and the agreement(s) shall not be amended or modified without obtaining a prior no objection from the Regulator. ResCap and GMAC Mortgage will be responsible for all administrative costs related to the Fund and the Paying Agent. Neither ResCap nor GMAC Mortgage may use any funds from their payment into the Fund or interest accrued on amounts in the Fund for such costs.

(c) Except as provided in paragraphs 3(f) through (h), ResCap and GMAC Mortgage shall promptly place the In-Scope Borrower Population into categories based upon loan file characteristics as determined by the Regulator (the "Borrower Waterfall").

(d) The Reserve Bank may direct that ResCap's and GMAC Mortgage's placement of the In-Scope Borrower Population into the Borrower Waterfall be reviewed independently by ResCap's and/or GMAC Mortgage's internal audit or compliance function or, if ResCap and GMAC Mortgage no longer have audit or compliance functions, by an independent third party acceptable to the Regulator. Upon verification by the Reserve Bank, the Reserve Bank will instruct ResCap and GMAC Mortgage to provide the Paying Agent with ResCap's and GMAC Mortgage's placement of the In-Scope Borrower Population within the Borrower Waterfall, and at that time ResCap's and GMAC Mortgage's placement of the In-Scope Borrower Population within the Borrower Waterfall shall be deemed final.

(e) The Regulator will determine the specific payment amounts applicable to each category of borrower within the Borrower Waterfall in its sole discretion (the "Distribution

5

Plan") and will direct the Paying Agent to distribute payments from the Fund to the In-Scope Borrower Population in accordance with the Distribution Plan established by the Regulator.

(f) Notwithstanding paragraphs 3(d) and (e), with respect to borrowers in the In-Scope Borrower Population who may have been entitled to protection under Section 521 or Section 533 of the Servicemembers' Civil Relief Act, (the "SCRA"), 50 U.S.C. App. §§ 521 or 533, and borrowers who may not have been in default during the foreclosure process, ResCap and GMAC Mortgage shall either: (i) place the borrower into the applicable category within the Borrower Waterfall, which will result in the borrower automatically receiving payments made from the Fund in accordance with the Distribution Plan for such category; or (ii) instruct the independent consultant (the "IC") that ResCap and GMAC Mortgage retained to conduct an independent review of residential mortgage loan foreclosure actions or proceedings for the In-Scope Borrower Population (the "Independent Foreclosure Review") to complete file reviews for such borrowers to determine financial injury related to Sections 521 or 533 or to not being in default. For files reviewed under (ii), the borrower will receive payments from the Fund in amounts specified in the June 21, 2012 Financial Remediation Framework where the IC makes a determination of "harm." For files reviewed under (ii) where the IC makes a determination of "no harm," ResCap and GMAC Mortgage will place the borrower into the next highest Borrower Waterfall category for which such borrower is eligible, which will result in the borrower receiving payment from the Fund in accordance with the Distribution Plan for such category.

(g) Notwithstanding paragraphs 3(d) and (e), with respect to borrowers in the In-Scope Borrower Population who may have been subject to interest rate protections under Section 527 of the SCRA, 50 U.S.C. App. § 527, as part of the Borrower Waterfall placement, ResCap and GMAC Mortgage shall either: (i) place the borrower into the highest category

6

within the Borrower Waterfall for which the borrower is eligible, which will result in the borrower automatically receiving payments from the Fund in accordance with the Distribution Plan for such category; or (ii) instruct the IC to complete file reviews for such borrowers to determine financial injury related to Section 527.  For files reviewed under (ii), the borrower will receive payments as calculated pursuant to the methodology outlined in Department of Justice/Department of Housing and Urban Development National Mortgage Settlement ("NMS") Exhibit H (Consent Judgment entered April 4, 2012), where the IC makes a determination of "harm."  For files reviewed under (ii) where the IC makes a determination of "no harm," ResCap and GMAC Mortgage will place the borrower into the next highest Borrower Waterfall category for which such borrower is eligible, which will result in the borrower receiving payment from the Fund in accordance with the Distribution Plan for such category.

      (h)    If ResCap and GMAC Mortgage elect to have the IC continue file review work as described in paragraphs 3(f) or (g), the IC review work for such files must be completed prior to the verification specified in paragraph 3(d).  If the IC review work is not completed by such time, the Board of Governors may direct payments from the Fund to such borrowers in accordance with the Distribution Plan for the highest category for which such borrower is eligible.

      (i)    Within three days of the effective date of the Amendment to this Order, ResCap and GMAC Mortgage shall confirm that their IC has provided the Reserve Bank with the most recent data report(s) previously provided by the IC to ResCap's and/or GMAC Mortgage's board(s) or appropriate board committee(s).  Within three days of the effective date of the Amendment to this Order, ResCap and GMAC Mortgage shall confirm that their IC has completed and provided to the Board of Governors the additional reporting specified by the Board of Governors with information as of December 31, 2012 and as of June 30, 2013.  ResCap

7

and GMAC Mortgage shall also take all reasonable steps to cause their IC to provide any existing information, as requested by the Reserve Bank, to assist the Reserve Bank and the Board of Governors in their analysis and public reporting of Independent Foreclosure Review related activities.

(j) Consistent with existing examination authority, the Reserve Bank maintains the right to obtain and access all existing material, information, records and/or files used or generated by ResCap, GMAC Mortgage, and/or their IC (including independent counsel to the IC) in connection with the Independent Foreclosure Review and implementation of the Amendment to this Order.

**Foreclosure Prevention**

4. (a) By no later than June 27, 2015, ResCap and GMAC Mortgage shall collectively provide loss mitigation or other foreclosure prevention actions ("Foreclosure Prevention") that totals $316,923,998.

(b) ResCap's and GMAC Mortgage's Foreclosure Prevention actions shall be in addition to, and shall not be used to fulfill, ResCap's or GMACM's consumer relief obligations under the NMS.

(c) Well structured loss mitigation actions should focus on foreclosure prevention, which should typically result in benefitting the borrower. While ResCap's and GMAC Mortgage's actions may be affected by existing investor requirements, ResCap's and GMAC Mortgage's foreclosure prevention actions should reflect the following guiding principles:

(i) preference should be given to activities designed to keep the borrower in the home;

8

    (ii)  foreclosure prevention actions should emphasize affordable, sustainable, and meaningful home preservation actions for qualified borrowers;

    (iii)  foreclosure prevention actions should otherwise provide significant and meaningful relief or assistance to qualified borrowers; and

    (iv)  foreclosure prevention actions should not disfavor a specific geography within or among states, nor disfavor low and moderate income borrowers, and not discriminate against any protected class of borrowers.

    (d)  ResCap and GMAC Mortgage shall receive credit using the types of creditable activity set forth in the NMS for the following Foreclosure Prevention actions set forth in the NMS:

    (i)  first lien modifications;

    (ii)  second lien modifications; and

    (iii)  short sales/deeds-in-lieu of foreclosure.

    (e)  For purposes of paragraph 4(d), crediting will be based on the unpaid principal balance of the loan and there are no maximum or minimum restrictions on the amount of any particular activity that is creditable.

    (f)  ResCap and GMAC Mortgage may also receive credit for other Foreclosure Prevention actions, subject to no objection from the Reserve Bank (including as to participation and conditions governing such participation), including:

    (i)  interest rate modifications;

    (ii)  deficiency waivers (measured by the amount of deficiency judgment credited at $.10 for every dollar);

9

(iii)   other Foreclosure Prevention activities (measured by amounts incurred as owing to investors for such activities and including credit on ResCap's or GMAC Mortgage's or their affiliates' loans held-for-investment calculated using the note rate methodology as used by the Government-Sponsored Enterprises);

(iv)   additional Foreclosure Prevention actions that are not expressly specified in this paragraph 4;

(v)   the provision of additional cash payments to the Fund (measured as $7 to $10 of credit for each $1 cash commitment); and

(vi)   the provision of cash or other resource commitments to borrower counseling or education (measured as $7 to $10 of credit for each $1 cash commitment).

(g)   To the extent practicable and without prejudice to overall portfolio management, ResCap and GMAC Mortgage will attempt to prioritize their Foreclosure Prevention actions for the benefit of the In-Scope Borrower Population. However, all Foreclosure Prevention actions benefiting borrowers in the portfolio of ResCap or its subsidiaries or affiliates, whether or not in the In-Scope Borrower Population and whether held-for-investment or serviced-for-others, shall be eligible for credit towards ResCap's and GMAC Mortgage's Foreclosure Prevention actions; provided, the creditable activity occurs on or after June 27, 2013.

(h)   ResCap and GMAC Mortgage will satisfy the Foreclosure Prevention obligations of this paragraph 4 by providing additional cash payments to the Fund in the amount of $31,692,400. Within one business day of this Amendment, ResCap and GMAC Mortgage collectively will, directly or through their agent, make this additional payment to the Fund, plus any interest accrued on amounts held by their agent.

10

(i) By August 15, 2013, ResCap and GMAC Mortgage shall submit to the Reserve Bank a report, in a form and manner acceptable to the Reserve Bank, that details the Foreclosure Prevention actions taken by ResCap and GMAC Mortgage through July 31, 2013 to fulfill their obligations under this paragraph 4 and the amount of credit sought toward fulfilling those obligations. Nothing in this paragraph 4(i) shall require ResCap and GMAC Mortgage to report Foreclosure Prevention actions taken during a particular prior period for which ResCap and GMAC Mortgage may in the future seek credit or prohibit ResCap and GMAC Mortgage from seeking credit for the Foreclosure Prevention actions taken by ResCap and GMAC Mortgage during a later reporting period. Additionally, ResCap and GMAC Mortgage shall document their efforts to prioritize the In-Scope Borrower Population when considering creditable Foreclosure Prevention actions."

5. Paragraphs 5 through 18 of the 2011 Consent Order are not amended.

6. Paragraph 19(a) of the 2011 Consent Order is stricken and replaced with the following:

"19. (a) GMAC Mortgage, Ally Financial and ResCap, as applicable, shall submit written plans, programs, policies and procedures that are acceptable to the Reserve Bank and reports to the Reserve Bank within the applicable time periods set forth in paragraphs 2, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16 and 17 of this Order. An independent consultant acceptable to the Reserve Bank shall be retained by Ally Financial and ResCap within the applicable period set forth in paragraph 12 of this Order."

7. Paragraph 19(b) of the 2011 Consent Order is not amended.

8. Paragraph 19(c) of the 2011 Consent Order is amended by striking "letters" and replacing it with "letter" and otherwise is not amended.

11

9.  Paragraphs 19(d) through 28 of the 2011 Consent Order are not amended.

10. Paragraph 29 of the 2011 Consent Order is amended by striking "ResCap, GMACM Mortgage," and adding at the end the following new sentence: "Except as otherwise provided in this paragraph 29, the Board of Governors hereby agrees not to initiate any further enforcement actions, including for civil money penalties, against ResCap and GMAC Mortgage with respect to (a) the conduct described in the WHEREAS clauses of this Order, (b) the matters addressed in paragraphs 3 through 4 of this Order, including matters relating to the work or findings of the IC or independent legal counsel to the IC, and (c) any other past mortgage servicing and foreclosure-related practices that are addressed by this Order.  The preceding release and discharge in paragraph 29(c) applies only with respect to borrowers in the In-Scope Borrower Population.  The foregoing release and discharge shall not preclude or affect (i) any right of the Board of Governors to determine and ensure compliance with this Order, as amended herein, or (ii) any proceedings brought by the Board of Governors to enforce the terms of the Order, as amended herein.  The preceding release and discharge in no way affects the Order of Assessment of a Civil Money Penalty entered into by Ally Financial, ResCap, and GMAC Mortgage, on the one hand, and the Board of Governors, on the other hand, effective February 10, 2012, which shall remain in effect without modification."

11. Paragraph 30 of the 2011 Consent Order is renumbered paragraph 31 and is otherwise not amended.

12. The following is inserted before paragraph 31 of the 2011 Consent Order as paragraph 30 of the 2011 Consent Order:

"30.    In no event shall ResCap or GMAC Mortgage request or require any borrower to execute a waiver of any claims against ResCap or GMAC Mortgage (including any agent or affiliate of ResCap or GMAC Mortgage) in connection with any payment or Foreclosure

12

Prevention assistance provided pursuant to paragraphs 3 or 4 of this Order. However, nothing herein shall operate to bar ResCap or GMAC Mortgage from asserting in the future in any separate litigation, or as part of a settlement related to ResCap's or GMAC Mortgage's foreclosure and servicing practices, any right that may exist under applicable law to offset the amounts received by a borrower through the distribution process set forth above. Nothing herein shall operate to amend or modify in any respect any preexisting settlement between ResCap, GMAC Mortgage, or an affiliate of either and a borrower in the In-Scope Borrower Population."

By Order of the Board of Governors effective this _____ day of July, 2013.

| | |
|---|---|
| RESIDENTIAL CAPITAL, LLC | BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM |
| By: _____<br>    Lewis Kruger<br>    Chief Restructuring Officer | By: _____<br>    Robert deV. Frierson<br>    Secretary of the Board |

GMAC MORTGAGE, LLC

By: _____
    Lewis Kruger
    Chief Restructuring Officer