## **Exhibit 4**

**Kruger Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DECLARATION OF LEWIS KRUGER, CHIEF RESTRUCTURING OFFICER OF RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE SECTION 363(b)(1) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER AMENDMENT TO CONSENT ORDER**

I, Lewis Kruger, under penalty of perjury, declare as follows:

1. I am the Chief Restructuring Officer ("**CRO**") of the above-captioned debtors and debtors and debtors in possession (collectively, the "**Debtors**"). I submit this declaration (the "**Declaration**") in support of the *Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the Debtors to Enter into and Perform Under Amendment to Consent Order* (the "**Motion**").[1]

2. I offer this Declaration to show that the Amendment represents a fair and reasonable compromise in connection with GMAC Mortgage's FRB Foreclosure Review obligation under the Debtors' Consent Order (the "**Consent Order**" with the Federal Reserve Board (the "**FRB**") and the Federal Deposit Insurance Corporation (the "**FDIC**") dated April 13, 2011. I also offer this Declaration to show that the Debtors, using their reasonable business judgment, believe that the Amendment is in the best interests of these estates.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

ny-1097837

## **BACKGROUND**

3. On February 11, 2013, I was engaged by the Debtors to serve as their CRO and spearhead the plan process. On the same day, the Debtors filed the *Debtors' Motion Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing the Debtors to Appoint Lewis Kruger as Chief Restructuring Officer* [Docket No. 2887].[2] On March 5, 2013, the Court entered an order approving my appointment. [Docket No. 3103].

4. Prior to my role as CRO, I was a partner and Co-Chair of the Financial Restructuring Group at Stroock & Stroock & Lavan LLP, a law firm that has extensive experience in all aspects of restructuring and insolvency matters. I have over fifty years of restructuring experience. I have played a role in many significant reorganization proceedings in the United States, representing debtors, official and ad hoc creditors' committees, financial institutions and acquirers of assets.

5. Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; and information supplied by the Debtors' consultants. In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare, collect, and/or verify any such documentation and other information.

---

[2] The scope of my authority was modified pursuant to Amendment 1 to the Engagement Letter. A copy of Amendment 1 to the Engagement Letter was filed with the Court on March 1, 2013 [Docket No. 3074].

ny-1097837

## THE CONSENT ORDER

6.      On April 13, 2011, GMAC Mortgage, ResCap, Ally Financial Inc., and Ally Bank entered into the Consent Order.  Pursuant to the Consent Order, the Consent Order Debtors, Ally Financial Inc. and Ally Bank are required to implement, among other things, certain board oversight and risk management programs.  The Debtors implemented policies and procedures in connection with these prospective obligations and, as far as I am aware, continued to comply with such obligations through the closing of the sale of their servicing platform.

7.      Additionally, paragraph 3 of the Consent Order requires the engagement of an independent consultant to conduct a review (the "**FRB Foreclosure Review**") of certain foreclosure actions or proceedings, including foreclosure sales completed during the period from January 1, 2009 to December 31, 2010.  GMAC Mortgage engaged PricewaterhouseCoopers, LLP ("**PwC**") as its independent consultant.  The Consent Order requires the independent consultant to review loan files for compliance with various state and federal laws, including, but not limited to, bankruptcy laws and the Servicemembers Civil Relief Act ("**SCRA**").  The Consent Order also requires that the independent consultant review applicable loan files to determine if improper fees were charged, and to determine whether the Debtors complied with certain loss mitigation guidelines.  In the event that PwC discovers any errors through the FRB Foreclosure Review that are deemed to have resulted in financial injury to the borrower, GMAC Mortgage will be required to remediate such errors.

8.      At the time the Consent Order Debtors entered into the Consent Order, they were not provided with the option to make a lump sum payment in satisfaction of their FRB Foreclosure Review obligation.

3

ny-1097837

9.      The Debtors have paid to, or accrued for, professionals approximately $125 million for services rendered in connection with the FRB Foreclosure Review.  Prior to the recent suspension of work, PwC continued to have approximately 100 employees on-site at Debtor locations (or locations that were leased for those PwC employees by the Debtors prior to the closing of their Court-approved asset sales) in connection with the FRB Foreclosure Review.

10.     Over the course of these cases, the costs of performing the FRB Foreclosure Review increased.  The continuously increasing costs of the FRB Foreclosure Review were due, in no small part, to the continued extension of the time period during which borrowers were allowed to request that their loan be reviewed through the FRB Foreclosure Review process.  The opt-in window was originally scheduled to close in April 2012, but subsequently was extended at least three times through the end of 2012.  These extensions resulted in receipt of approximately 20,000 additional borrower complaints[3] and the expense attendant with evaluating those complaints.

11.     Similarly, the costs increased substantially as a result of lack of clarity regarding the exact review parameters.  The continuously changing parameters of the review increased the time required for PwC to review each file, resulting in substantially increased costs on a per file basis.

12.     Until the recent suspension of the FRB Foreclosure Review, the Debtors continued to incur approximately $300,000 per day in FRB Foreclosure Review related expenses.  The Debtors estimated that as of December 31, 2012, the cost of completing the FRB Foreclosure Review and remediating any borrower harm could reach as much as $415 to $459 million.

---

[3] As of the end of April 2012, the Debtors had received approximately 8,450 complaints.  By the end of December 2012, the number of complaints received reached approximately 27,000.

4

ny-1097837

**THE AMENDMENT**

13. I believe that while the FRB Foreclosure Review was well intentioned, it has proven to be of little value. Therefore, I believe that entry into the Amendment and payment of the Settlement Amount is in the best interests of the Debtors and their estates.

14. As described in the Motion, through the Amendment, the Debtors have agreed to make a one-time payment to a borrower fund, in the amount of approximately $230,000,000, in satisfaction of the Consent Order's FRB Foreclosure Review requirement.

15. I, along with the Debtors' advisors and the advisors to the Creditors' Committee, determined that suspension of the FRB Foreclosure Review, while the Debtors seek approval of the Amendment, was in the best interests of these estates. Therefore, the Debtors requested that the Court enter the Escrow Order and authorize the Debtors to transfer the Settlement Amount into an escrow account. Following entry of the Escrow Order, the Debtors and the FRB executed the FRB Term Sheet. The Debtors transferred the Settlement Amount into an escrow account and the FRB Foreclosure Review was suspended for 30 days.

16. For the reasons discussed below, I believe that the Amendment is fair and equitable. The Debtors have in good faith determined using their reasonable business judgment that performance under the Amendment is in the best interests of their estates.

**THE IRIDIUM FACTORS**

A. **The Likelihood of Success and the Likelihood of Complex and Protracted Litigation**

17. It is my understanding that in the absence of a settlement, the Debtors would be dependent on a favorable ruling from the Court on the Classification Motion before they could cease conducting the FRB Foreclosure Review without the looming threat of further enforcement actions by the FRB. I also understand that the issues that must be resolved in

connection with the Classification Motion are extremely complex and novel. Even if the Court were to rule in favor of the Debtors, the parties who opposed the relief requested therein could and likely would appeal such a decision. Given the uncertainty surrounding the Classification Motion and any potential appeals, and the expenditure of estate assets to conduct the FRB Foreclosure Review in the interim, the Debtors believe that the Amendment is reasonable and in the best interests of their estates.

### B.     The Paramount Interests of Creditors

18.     I believe that settlement of GMAC Mortgage's FRB Foreclosure Review obligation is in the best interests of the Debtors' estates and their creditors. Continued performance under the current terms of the Consent Order, in particular the requirement to conduct the FRB Foreclosure Review will cost these estates $300,000 per day. The Debtors have estimated that the total cost of the FRB Foreclosure Review (and any associated remediation) absent a settlement is projected to reach $415 to $459 million. Based on estimates as of December 31, 2012, I believe that eliminating the continued accrual of this administrative expense will ultimately result in a greater distribution to other creditors of the Debtors' estates. For these reasons, I believe that the Amendment is in the paramount interests of creditors.

19.     Additionally, I believe that entry into the Amendment is fundamental to the success of these Chapter 11 cases, and thus in the best interests of creditors, because the Debtors' continued performance under the Consent Order is required under the Support Plan Agreement and the Plan. Ally's agreement to enter into the Plan Support Agreement and its payment of the Ally Contribution are conditioned on the Debtors' continued compliance with, or resolution of, the Consent Order. I believe that the benefits the Debtors are to receive under

the Plan, including the Ally Contribution, clearly weigh in favor of entering into and performing under the Amendment.

### C. Other Parties in Interest Support the Amendment

20.  I believe that this *Iridium* Factor also weighs in favor of approval of the Amendment. The Creditors' Committee was extensively involved in the negotiations surrounding the FRB Term Sheet and support the relief requested herein. I, and the Debtors' advisors, have engaged in countless discussions with the advisors to the Creditors' Committee regarding resolution of the obligations imposed by the Consent Order and the Creditors' Committee and each of the parties to the Plan Support Agreement support the Debtors' entry into and performance under the Amendment.

### D. The Amendment is the Result of Arm's Length Negotiations by Experienced Counsel and is Consistent with the Non-Debtor Settlements

21.  The Amendment is the result of arm's-length negotiations between the Debtors, the Creditors' Committee and the FRB, which were all represented by competent and experienced professionals with particular expertise in these matters.

22.  It is my understanding that the terms of the Amendment are consistent with the settlements reached by and between the FRB and thirteen of the country's largest mortgage servicers in satisfaction of the foreclosure review requirements in their respective consent orders. The related consent orders and the foreclosure review requirements contained in those orders are nearly identical to the requirements contained in the Debtors' Consent Order and FRB Foreclosure Review requirement. Like the Non-Debtor Settlements, the Amendment is intended to result in eligible borrowers receiving funds more quickly than had the FRB Foreclosure Review continued. The Settlement Amount was calculated in a manner consistent with the settlement payments made under the Non-Debtor Settlements.

23.     I believe that the fact that the Amendment is consistent with the Non-Debtor Settlements is a testament to the Amendment's reasonableness and should persuade the Court that the Amendment is the product of arm's length bargaining.

## PAYMENT OF THE SETTLEMENT AMOUNT

24.     As discussed above, I believe that entry into and performance under the Amendment, in particular, payment of the Settlement Amount in satisfaction of GMAC Mortgage's FRB Foreclosure Review obligation, is a sound exercise of the Debtors' reasonable business judgment. Absent settlement of this issue, administrative expenses in connection with the FRB Foreclosure Review would continue to accrue. The Amendment avoids the need for the Debtors to engage in costly litigation regarding the liability for, and value of, those claims. I believe that payment of the Settlement Amount is in the best interests of these estates.

## CONCLUSION

25.     Based on all of the factors described above, I, along with the Debtors, have concluded that settlement on the terms set forth in the Amendment is fair and well within the range of reasonableness and certainly not below the lowest point in the range of reasonableness. Further, I, along with the Debtors, believe that performance under the Amendment is in the best interests of these estates.

ny-1097837

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York  
Dated: July 12, 2013

/s/   Lewis Kruger  
Lewis Kruger  
Chief Restructuring Officer of Residential Capital, LLC

9

ny-1097837