# ALSTON & BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-922-3971
www.alston.com

William Hao      Direct Dial: 212-210-9417      Email: william.hao@alston.com

July 16, 2013

VIA ECF

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, New York 10004

    Re:     *In re Residential Capital, LLC et al.* (Case No. 12-12020(MG)); *Debtors' Motion Pursuant to Fed. R. Bankr, P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors* (the "**FGIC Motion**") [Docket No. 3929]

Dear Judge Glenn:

    Pursuant to the Court's directive at the July 10, 2013 Status Conference, the **FGIC Trustees**[1] submit the attached letter brief in connection with the above-referenced contested matter. Certain portions of the letter brief are redacted as they contain or refer to "Confidential Information" under this Court's *Order Regarding the Exchange of Confidential Information* [Docket No. 4249]. An unredacted version will be delivered to Your Honor's Chambers.

                                   Sincerely,

                                   /s/ William Hao
                                   William Hao

Attachment

---

[1] The FGIC Trustees are The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees for the FGIC Insured Trusts. Capitalized terms not defined in this letter shall have the meanings ascribed to them in the FGIC Motion or the Settlement Agreement, as applicable.

## ALSTON & BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424

404-881-7000
Fax: 404-253-8298
www.alston.com

John C. Weitnauer          Direct Dial: 404-881-7780          Email: kit.weitnauer@alston.com

July 16, 2013

**VIA ECF AND HAND DELIVERY**

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, New York 10004

    Re:    *In re Residential Capital, LLC et al.* (Case No. 12-12020(MG)); *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors* (the "**FGIC Motion**") [Docket No. 3929]

Dear Judge Glenn:

    Pursuant to the Court's directive at the July 10, 2013 Status Conference, the **FGIC Trustees**[1] submit this letter brief to address the **Objectors'**[2] contention that all attorney-client privileged communications between the FGIC Trustees and their respective counsel related to whether the FGIC Trustees acted reasonably, in good faith and in the best interests of the Investors in agreeing to the Settlement Agreement should be pierced and disclosed to the Objectors pursuant to the "fiduciary exception."[3]

---

[1] The FGIC Trustees are The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees for the FGIC Insured Trusts. Capitalized terms not defined in this letter shall have the meanings ascribed to them in the FGIC Motion or the Settlement Agreement, as applicable.

[2] CQS ABS Master Fund Limited, CQS ABS Alpha Master Fund Limited, Bayview Fund Management LLC, Monarch Alternative Capital LP, Stonehill Capital Management LLC and Federal Home Loan Mortgage Corporation in conservatorship.

[3] New York law applies here because the underlying transaction documents are subject to New York law. In addition, the fiduciary exception to privilege operates under both federal law and the law of New York and no material conflict between federal law and New York law has been noted with respect to the exception. *Official Comm. of Asbestos Claimants of G-I Holdings, Inc. v. Heyman*, 342 B.R. 416, 421(S.D.N.Y. 2006). In the absence of material conflict, this Court is free to bypass choice of law analysis and apply New York law. *Id.*

July 16, 2013
Page 2

The Objectors' request to invade the attorney-client privilege fails because they cannot satisfy all of the elements of the fiduciary exception. First, and most importantly, the Objectors lack any colorable claim of self-dealing or conflict of interest. Second, the Objectors' request for documents is not limited, as it must be, to communications that relate to any alleged claim of self-dealing or conflict of interest. Third, the privileged communications that the Objectors seek are neither highly relevant, nor the only evidence available, concerning the issue currently before the Court – whether the actions of the FGIC Trustees in deciding to enter into the Settlement Agreement were in the best interest of the Investors and made in good faith. In fact, the FGIC Trustees have already produced a comprehensive report of their financial advisor, Duff & Phelps Securities, LLC ("**Duff & Phelps**"), that they relied upon in deciding to enter into the Settlement Agreement; the Objectors had the opportunity to depose a representative of Duff & Phelps (which they did not try to avail themselves of until the eleventh hour); and the Objectors are also deposing a representative from each of the FGIC Trustees. Finally, there is no unanimity of interests between investors because investors other than the Objectors support the Settlement Agreement.

Furthermore, even if the fiduciary exception applied here (which it does not), the majority of the documents withheld by the FGIC Trustees are also independently protected by the attorney work product doctrine and/or this Court's Mediation Order. Regardless of whether the fiduciary exception applies, those documents continue to be protected from disclosure because there is no fiduciary exception to the protection of work product or information protected in this proceeding by the Court's Mediation Order.

I.   **The Objectors Cannot Pierce the FGIC Trustees' Attorney-Client Privilege Unless they Can Demonstrate Good Cause.**

The Objectors contend that, because the FGIC Trustees were "acting on behalf of the beneficiaries of the trust" in deciding whether to enter into the Settlement Agreement, their attorney-client privileged communications concerning their "determination that the FGIC Settlement was in the best interests of the investors ... or that they acted in good faith" are *automatically* discoverable.[4] On the contrary, even the cases cited by the Objectors in support of their flawed contention (*Garner* and *Heyman*, discussed below) establish that acting in a fiduciary capacity[5] is not, by itself, enough to abrogate the privilege – rather, the party seeking discovery of otherwise attorney-client privileged communications must establish "good cause" to pierce the privilege.[6] *See Garner v.*

---

[4]   July 10, 2013 Hrg. Tr. at 40, 42; *see also* Letter dated June 24, 2013 at p.3 (attached as **Exhibit A**).

[5]   Before the fiduciary exception can be applied, there typically must be a finding that a party actually owes a fiduciary duty to the party seeking disclosure of attorney-client communications. Solely for the purposes of resolving this dispute, the FGIC Trustees stipulate that (i) they were obligated to act in the best interest of the Investors with respect to the Settlement Agreement, and (ii) that stipulated level of obligation is sufficient to invoke the fiduciary exception in this context – but only when good cause, and the other elements of the fiduciary exception, can be shown.

[6]   June 24, 2013 Letter at p. 3.

July 16, 2013
Page 3

*Wolfinbarger*, 430 F.2d 1093, 1103-04 (5th Cir. 1970) ("The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance."); *Heyman*, 342 B.R. at 424-25 (applying the *Garner* "good cause" analysis); *Hoopes v. Carota*, 142 A.D.2d. 906, 910 (3d Dep't 1988) (recognizing that some courts have held that the privilege does not attach at all when a trustee solicits legal advice concerning matters impacting the interests of the beneficiaries seeking disclosure, but finding that requiring a showing of good cause from those seeking disclosure is more consistent with the approach to attorney-client privilege issues adopted by the Court of Appeals).

The Objectors bear the burden of establishing good cause to pierce the attorney-client privilege. *See Mui v. Union of Needletrades, Indus. & Textile Emps.*, 97 Civ. 7270 HB KNF, 1998 WL 915901, at *2 (S.D.N.Y. Dec. 30, 1998) ("The burden of establishing good cause to pierce the attorney-client privilege, is on the [party seeking discovery]."); *see also*, 24 Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 5507 (1986) ("[T]here is a general agreement that the burden of proving the preliminary facts of exceptions to the privilege is on the opponent of the privilege claim."); *Hoopes*, 142 A.D.2d at 910 (requiring a "showing of good cause from those seeking disclosure from the fiduciary…").

II.    **The Objectors Cannot Demonstrate Good Cause under the Fiduciary Exception.**

Under New York law, a showing of good cause under the fiduciary exception can be made if the following is established:

> (1) there was an apparent identity of interests regarding disclosure among the beneficiaries of the trusts; (2) plaintiffs may have been directly affected by any decision defendant made on his attorneys' advice; (3) the information sought was highly relevant to and may be the only evidence available on whether defendant's actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in preserving and promoting the rewards and security of his own position as a corporate officer; (4) the communication apparently related to prospective actions by defendant, not advice on past actions; and (5) plaintiffs' claims of defendant's self-dealing and conflict of interest are at least colorable, and the information they seek is not only relevant, but specific.

*In re The Bank of New York Mellon*, No. 651786/2011 (Sup. Ct. N.Y. Cnty. May 20, 2013) (citing *Hoopes*, 142 A.D.2d at 910 (applying abbreviated version of the *Garner*

July 16, 2013
Page 4

factors));[7] *see also Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc. 2d 99, 114 (Sup. Ct. N. Y. Cnty. 2003) (same). Federal Courts applying New York law have considered the following factors in determining whether good cause exists to abrogate the attorney-client privilege:

> (1) the discovering party's stake in the fiduciary relationship; (2) the apparent merit of the claim; (3) the need of the discovering party for the information; and (4) the nature of the communication itself.

*In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260, 1993 WL 561125, at *13 (S.D.N.Y. Dec. 23, 1993) (applying an abbreviated version of the *Garner* factors); *Heyman*, 342 B.R. at 424.

### A. The Objectors' have no Colorable Claim against the FGIC Trustees for Self-dealing or Conflict of Interest.

In considering alleged conflicts of interest related to actions of indenture trustees (the third element of the *Hoopes* test), courts have disregarded "'bald assertions of conflict,'" and instead require a showing that the trustee "'personally benefitted'" from the disputed action. *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 475 (S.D.N.Y. 2010) (quoting *Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 70,73 (2d Cir. 1987)). The New York Supreme Court's recent decision in *In re The Bank of New York Mellon* is particularly instructive here. In that proceeding, a small group of investors objected to a settlement entered into by the trustee of the respective residential mortgage-backed securitization trusts. No. 651786/2011, slip op. at 1-2. Like here, the objecting investors, relying on the fiduciary exception, sought to compel production of certain documents for which the trustee asserted attorney-client privilege, including documents relating to the reasonableness of the trustee's decision to enter into the proposed settlement. *Id.* at 1. ("The movants seek an order ... compelling ... [the trustee] to produce communications with and documents generated by counsel concerning [the trustee's] evaluation of the settlement amount ..."). The court held that, although the fiduciary exception applied where there were colorable claims of a conflict of interest, it did not apply to, and refused to compel disclosure of, attorney-client communications concerning (1) communications at and surrounding internal meetings at which the trustee decided to approve entering into the settlement and (2) communications regarding the settlement amount because they did not "directly correlate to the allegations of self-dealing and conflict of interest." *Id.* at 14.

Here, unlike in *In re The Bank of New York Mellon*, the Objectors have not alleged (because they cannot) that in deciding to enter into the Settlement Agreement the FGIC Trustees were in any way acting *in their own self-interest or benefitting from* the Settlement Agreement. Indeed, the basis for the Objectors' disagreement with the FGIC Trustees' decision to enter into the Settlement Agreement is their belief (a belief the FGIC Trustees' believe is mistaken) that they would have received a greater return on

---

[7] A copy of this decision, by Justice Barbara R. Kapnick, is attached hereto as **Exhibit B**.

July 16, 2013
Page 5

their investments under the FGIC Rehabilitation Plan.[8] The Objectors, however, have not made a claim, much less a colorable one, that the FGIC Trustees somehow diverted value away from the Trusts and to themselves; that they in any other way benefitted themselves to the detriment of the Trusts; or that they will receive any benefit if the Settlement Agreement is approved.

The Settlement Agreement allows the FGIC Insured Trusts to receive a lump sum payment now to settle their claims against FGIC, rather than receiving a stream of *estimated* payments which are to be made over approximately 40 years under a *proposed* plan of rehabilitation. The decision to enter into the Settlement Agreement and receive a lump sum commutation cannot in and of itself create a conflict of interest because the FGIC Trustees obtained nothing for their benefit. The FGIC Trustees did not act "inimically" or adversely to the Objectors' interests. The FGIC Trustees believe the Settlement Agreement to be in the best interest of Investors (an economic decision that the Objectors take issue with), but there is no basis to assert that the FGIC Trustees were acting *to further their own interests*. This dispute is nothing like those cases where the fiduciary put its own interests ahead of the interests of its beneficiaries. *Compare Heyman*, 342 B.R. at 419 (movants alleged that the spin-off constituted a fraudulent transfer meant to defraud asbestos claimants); *Hoopes*, 142 A.D.2d at 907 (movants alleged that the CEO and director acted inimically to the interests of the trust beneficiaries in obtaining salary increases for himself, obtaining long term contracts for other corporate officers, and handling proposals for acquisition of the corporation in a manner that was favorable to management rather than to stockholders); *Stenovich*, 195 Misc. 2d at 101 (movants alleged that the board of directors in negotiating a merger conditioned the sale on securing a lifetime salary, stock options, and bonuses for himself and on securing an indemnity arising from the board of directors' vote to approve the merger and court held that attorney-client communications may be the only evidence of whether respondent was acting in furtherance of his own benefit); *Milea v. Hugunin*, No. 08-2941, 2009 WL 1916400 (Sup Ct. Onondaga Cnty. June 1, 2009) (involving testamentary trustee who was also a beneficiary of the trust); *Birnbaum v. Birnbaum*, 117 A.D.2d 409 (4th Dep't 1986) (involving contract under which estate assets transferred to trustee of the estate); *City Bank Farmers Trust Co. v. Cannon*, 291 N.Y. 125 (1943) (involving a trustee that invested funds in its own stock); *Dabney v. Chase Nat'l Bank*, 196 F.2d 668 (2d Cir. 1952) (involving a trustee that was both a creditor of a debtor and trustee for competing creditor who compelled payment on its own debt to the detriment of the other creditors for which it acted as trustee).[9]

---

[8]   June 11, 2013 Letter (attached hereto as **Exhibit C**) at p. 2 ("Based on our analysis of the information that was provided, we do not believe that the Commutation Amount provides sufficient consideration for the commutation ....").

[9]   The Objectors have asked about the Debtors' obligations to indemnify the FGIC Trustees for their fees and expenses, but have *not* asserted, so far as we know, that such obligations could create a conflict of interest. If the Objectors do make any such contention in their letter brief, it would be utterly unfounded. First, there is nothing in the Settlement Agreement on this point. Second, long before there was a Settlement Agreement the Debtors were obligated, pursuant to the governing agreements, to indemnify the FGIC Trustees for the costs and expenses they incurred in performing their duties and administering the

July 16, 2013
Page 6

Similarly, the fact that the FGIC Trustees have looked to this Court for confirmation that they acted "reasonably, in good faith and in the best interests of the Investors" when they entered into the Settlement Agreement does not support the Objectors' claims of conflict or self-dealing. After all, if this Court finds the Settlement Agreement *is not* in the best interest of the Investors, it will not approve it (and there will be no findings about the actions of the FGIC Trustees); but if the Court finds the Settlement Agreement *is* in the best interest of Investors (and if any other applicable findings are shown to the Court's satisfaction), the Court will presumably approve it, and the requested finding will be completely consistent with the substantive decision of the Court in approving the Settlement Agreement.

Consequently, the Objectors have not, and cannot allege, that the FGIC Trustees acted *for their own benefit* in conflict with the interests of the Objectors.

### B. The Objectors Have Not Shown a Need for the Attorney-Client Privileged Communications.

Another prerequisite to disclosure is "the necessity or desirability of plaintiffs having the information and its availability from other sources .... Courts finding good cause tend to stress this factor." *See In re Int'l Bus. Machs. Corp. Sec. Litig.*, No. 72 Civ. 9076 (GLG), 1993 WL 760214, at *5 (S.D.N.Y. Nov. 30, 1993); *see also In re Pfizer Inc. Sec. Litig.*, 1993 WL 561125, at *13. The Objectors are also unable to satisfy this requirement of the fiduciary exception. The FGIC Trustees' attorney-client privileged communications are not the only source of information available to the Objectors to determine whether the Trustees acted in good faith and in the best interests of the investors.

As an initial matter, whether the Settlement Agreement is in the best interest of the Investors – and thus, whether the FGIC Trustees acted in the best interests of the investors when they agreed to it – may be determined solely from the Settlement

---

trusts. Earlier in this case, the Court ordered the Debtors to "reimburse[e], indemnif[y], defend[] and hold[] harmless the Trustees and the securitization trusts for any liability, loss, or reasonable fees, cost or expense (including fees and disbursements of counsel or agents) incurred by any of the Trustees in the performance of their duties or their administration of the trusts ... under the [governing] Agreements to the extent required by the [governing] Agreements." *Final Supplemental Order under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the Debtors to Pay Securitization Trustee Fees and Expenses*, dated July 13, 2012, at ¶ 18 [Docket No. 774]. Notably, that order does not expand the indemnity that the FGIC Trustees were already entitled to pursuant to the governing agreements. Accordingly, there can be no conflict of interest because the Debtors are obligated to pay the FGIC Trustees' fees and expenses. *See CFIP*, 738 F. Supp. 2d at 475 (holding that no conflict of interest existed where the trustee requested an indemnification that was contemplated by the trust documents).

July 16, 2013
Page 7

Agreement and its terms and conditions.[10] *See Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*, 43 A.D.3d 56, 67 (1st Dep't 2007) (denying request for privileged communications regarding whether trustee acted in good faith and the reasonableness of the settlement because allegations of bad faith do not warrant invading the privilege and "the reasonableness of its settlement . . . can be determined on the basis of the extensive nonprivileged documentary record already available"). The Objectors will also have the opportunity to depose a representative from each of the FGIC Trustees, the Debtors, and FGIC. Moreover, as the Objectors are aware, the FGIC Trustees relied on the advice of their advisor, Duff & Phelps, in determining whether to enter into the Settlement Agreement, and that advice, in the form of a report, has been produced to the Objectors. In light of the information already available to the Objectors, it is impossible to fathom how privileged communications between the FGIC Trustees and their respective attorneys could be necessary or the only available source of information.

    C.   *The Objectors do not Represent All of the Investors and Other Investors Support the Settlement Agreement.*

*Garner* holds that among the good cause factors, courts should consider "the number of shareholders and the percentage of stock they represent [and] the bona fides of the shareholders." 430 F.2d at 1104. [REDACTED]

This is not a situation where there is a unanimity of interest of the holders. *Compare Heyman*, 342 B.R. at 425 (where the party seeking discovery seeks to recover on behalf of the corporation, rather than on behalf of individual claimants, courts bring a lesser degree of scrutiny in determining whether good cause exists). Rather, there is a clear divergence between investors who hold securities in the various trusts. Specifically, there are other Investors who affirmatively support the Settlement Agreement – the Institutional Investors are signatories to, and obviously support, the Settlement Agreement.

Consequently, because the Objectors are unable to demonstrate good cause their assertion of the fiduciary exception fails.

---

[10] That the Settlement Agreement was an integral part of the Plan Support Agreement – a point that is beyond dispute – may be considered as well.

July 16, 2013
Page 8

### III.    Even if the Fiduciary Exception is Found Applicable to any Attorney-Client Communications, they are Protected from Disclosure by the Mediation Privilege and Work Product Doctrine

Even if the communications sought by the Objectors were subject to the fiduciary exception (which they are not), they are independently protected from disclosure by the mediation privilege. *See Order Appointing Mediator* [Docket No. 2519], at ¶ 4 ("[A]ll (a) discussions among any of the Mediation Parties ..., (b) any ... documents or information provided to ... the Mediation Parties in the course of the mediation, and (c) correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the mediation shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceeding...."). The fiduciary exception is inapplicable to orders such as the one entered into by the Court. Moreover, in certain instances, the FGIC Trustees' privileged communications are also protected from disclosure by the attorney work product doctrine, which cannot be pierced by the fiduciary exception. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 524 (S.D.N.Y. 2001) ("Moreover, the logic of *Garner* does not require the disclosure of material that is protected under the work product doctrine."); *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 88 (N.D.N.Y. 2003) ("This Court accepts the point of view ... that *Garner* is not applicable when work product doctrine is claimed ...."); *Mui*, 1998 WL 915901, at *3-4.

### IV.    Conclusion

The Court should deny the Objectors request to abrogate the attorney-client privilege under the fiduciary exception.

Sincerely,

*[signature: John C Weitnauer /WH]*

John C. Weitnauer

cc: *Counsel to the Objectors*
    *Counsel to the Debtors*
    *Counsel to FGIC*