# EXHIBIT C

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

June 11, 2013

**VIA FEDEX AND EMAIL**

Martin G. Bunin, Esq.
William Hao, Esq.
Alston & Bird LLP
90 Park Avenue
New York, NY 10016

John C. Weitnauer, Esq.
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309

William Munno, Esq.
Seward & Kissel LLP
One Battery Park Plaza
New York, NY 10004

Glenn E. Siegel, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036

Re:    *In re Residential Capital, LLC*, Case No. 12-12020 (MG) – FGIC Settlement Agreement

Dear Sirs:

Reference is made to the proposed Settlement Agreement (the "Settlement Agreement") among Residential Capital LLC and its direct and indirect subsidiaries (the "Debtors"), Financial Guaranty Insurance Company ("FGIC"), The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo, Bank, N.A., each solely in their respective capacities as trustees, indenture trustees or separate trustees (the "Trustees") for the residential mortgage-backed securitizations identified on Exhibit B of the Settlement Agreement (the "Trusts"), and a group of certain investors that hold securities, notes, bonds, certificates and/or other instruments backed by the residential mortgage loans (the "Securities") (the "Institutional Investors"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Settlement Agreement.

As you know, we represent Monarch Alternative Capital LP and Stonehill Capital Management LLC, each in their capacity as investment advisors to certain funds holding residential mortgage-backed securities in certain settlement trusts, including certain Trusts (collectively, the "Funds"). The Funds collectively hold over $449 million of outstanding current principal balance of securities issued by the Trusts listed under Exhibit A hereto (the "Residential Capital Trusts") and the Trusts listed under Exhibit B hereto (the "GMAC Mortgage Trusts"). Of that amount, $91,442,502 in current principal balance of securities issued by six Residential Capital Trusts are insured by FGIC and $148,997,557 in current principal balance of securities issued by four GMAC Mortgage Trusts are insured by FGIC. On behalf of the Funds, we write to you in your respective capacities as counsel to the Trustees in the Debtors' Chapter 11 Cases to express our concerns regarding the Settlement Agreement.

The Settlement Agreement, provides, *inter alia*, for the commutation of the Policies, pursuant to which the Trustees would fully and completely release FGIC from all obligations or liabilities under or relating to the Policies in exchange for (a) the payment by FGIC of an aggregate cash amount equal to $253.3 million, and (b) FGIC's agreement to forgo future premiums with respect to the Policies, which have been projected to aggregate to approximately $18.3 million (collectively, the "Commutation Amount"). At our meeting on June 10, 2013 with you and Duff & Phelps, financial advisor to the Trustees, we requested certain information concerning the basis for the Trustees' conclusion that the Settlement Agreement is in the best interests of the insured certificateholders of the Trusts, to whom the Trustees owe fiduciary obligations of care, loyalty and good faith, and how the Trustees could have agreed to its terms consistent with those obligations. While you did provide us with some information, you claimed not to be at liberty to discuss the issues in full as a result of confidentiality agreements the Trustees have entered into with FGIC.

Based on our analysis of the information that was provided, we do not believe that the Commutation Amount provides sufficient consideration for the commutation because it (i) utilizes an unsupportable discount rate relating to the expected present value of future cashflow payments to be made by FGIC to the Trusts, (ii) overestimates the amount of unasserted FGIC liabilities, and (iii) underestimates the future recoveries by FGIC in respect of claims, future premiums and other collections. If approved, therefore, the settlement with FGIC for the Commutation Amount would reduce the recoveries of the insured certificateholders of the Trusts compared with other beneficiaries of non-commuted insurance policies issued by FGIC. We know of no principle that permits a fiduciary to discriminate among its beneficiaries in this fashion particularly where (as here) the Trustees owe *heightened* duties to the Trusts and their certificateholders under the terms of the Governing Agreements.[1]

---

[1]    For example, Section 8.01(a) of the Pooling and Servicing Agreement governing the RAMP 2005-EFC7 Trust, dated as of December 1, 2005, among Residential Asset Mortgage Products, Inc., as Depositor, Residential Funding Corporation, as Master Servicer and U.S. Bank National Association (the "RAMP 2005 EFC7 PSA"), provides in part that:

> "In case an Event of Default has occurred (which has not been cured or waived), the Trustee shall exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise as a prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs."

Beyond the fact that the Trustees' decision to favor one class of beneficiaries over another constituted a breach of their fiduciary obligations to the insured certificateholders of the Trusts, the Trustees' consent to the Settlement Agreement was in any event *ultra vires*. The Settlement Agreement is a *de facto* amendment to each Governing Agreement because it results in the alteration of the rights and payment entitlements of the insured certificateholders under the Governing Agreements. In order to amend the applicable Governing Agreement, however, the Trustees were obligated to comply with the provisions of such agreements, which generally require consent of the holders of certificates affected by such amendment as well as, in many cases, a legal opinion that such amendment is permitted under the applicable Governing Agreement.[2] The Settlement Agreement clearly has an effect on all holders of securities in the Trusts that are insured by the Policies. Therefore, in order for the Trustee to comply with the applicable Governing Agreements, the Trustee had to have received *affirmative* consents from the affected certificateholders prior to amending such agreement. Because such consents were not even sought, let alone given, the Trustees had no authority to enter into the Settlement Agreement and its decision to do so is of no force or effect.

We would prefer to avoid taking formal action in the Chapter 11 Cases and FGIC's pending rehabilitation proceedings, which will of course include extensive discovery into the circumstances that led to the consummation of the Settlement Agreement, the Trustees' involvement therein, as well as the fairness analysis of the proposed settlement undertaken by Duff & Phelps. However, as you know, the Funds have been and continue to be denied any meaningful access to information throughout these proceedings. That is not because the Funds were unwilling to enter into an appropriate confidentiality agreement, as Mr. Siegel inaccurately suggested yesterday. Rather, it is a result of the fact that the Trustees have bound themselves to confidentiality agreements that preclude them from sharing necessary information with their beneficiaries -- including in connection with the Settlement Agreement. We are willing to hold off on taking such formal action provided that the Trustees immediately take appropriate action to provide the Funds with the information they need. As an initial step toward that end, we would like more information regarding the basis for the Trustees' determination that the Settlement Agreement is in the best interests of the insured certificateholders, including any financial analysis and conclusions regarding the Settlement Agreement that formed the basis for that determination. In particular, the Funds request a copy of the report prepared by Duff & Phelps (the "Report") in support of their analysis and on which we understand the Trustees' relied. The Funds ask that a copy of the Report be made available to all certificateholders and request all other documents, materials and information that the Trustees relied upon in connection with their analysis of the Settlement Agreement, including, but not limited to: (i) any financial modeling related to the Commutation Amount and/or the determination that the Commutation Amount was adequate consideration for the commutation of the Policies; (ii) any

---

[2]    For example, Section 11.01(b)(i) of the RAMP 2005-EFC7 PSA, provides that no amendment shall "reduce in any manner the amount of, or delay the timing of, payments which are required to be distributed on any Certificate without the consent of the Holder of such Certificate." Section 11.01(b)(ii) of the RAMP 2005-EFC7 PSA also provides that no amendment shall "adversely affect in any material respect the interest of the Holders of Certificates of any Class in a manner other than as described in clause (i) hereof without the consent of the Holders of Certificates of such Class evidencing, as to such Class, Percentage Interests aggregating not less than 66%." Further, Section 11.01(c) requires that the Trustee shall not consent to an amendment to the RAMP 2005-EFC7 PSA unless it shall have first received an Opinion of Counsel to the effect that such amendment is permitted under the RAMP 2005-EFC7 PSA.

estimates or analyses of potential recoveries from FGIC on account of the Policies, including the amounts that FGIC would ultimately be expected to pay to the certificateholders if the Settlement Agreement were not entered into; (iii) any other analysis or considerations accounted for in determining that the Settlement Agreement, and the transactions contemplated thereby, are in the best interests of the insured certificateholders; and (iv) any applicable opinion of counsel rendered in connection with the Settlement Agreement (the "Applicable Information").

We understand that objections to the Debtors' request for approval of the Plan Support Agreement related to the Settlement Agreement are due no later than June 19, 2013, and that requests for depositions in connection therewith must be made by June 13, 2013 at 5:00 p.m. E.S.T. In light of this schedule, it is imperative that you notify us no later than 12:00 p.m. E.S.T. on June 12, 2013, (x) whether you will agree to provide the Applicable Information in the absence of a document demand or subpoena and (y) whether you will begin producing the Applicable Information immediately and to complete your production of all Applicable Information within your possession, custody or control no later than June 14, 2013. In the event we are unable to reach agreement with respect to these matters, the Funds may have no alternative but to begin the formal discovery process, including by serving the enclosed draft document demands and by noticing the depositions of the Trustees, their advisors and other persons with knowledge of the pertinent events.

The Funds reserve all of their rights, powers, privileges and remedies under the Governing Agreements, or available at law or equity or otherwise. For the avoidance of doubt, please be aware that the Funds do not undertake any duty to keep any information provided to them confidential and undertake no duty to refrain from trading in any affected Trusts.

Very truly yours,

Marc Abrams / MJE

Marc Abrams

cc: Monarch Alternative Capital LP
535 Madison Avenue
New York, NY 10022

Stonehill Capital Management LLC
885 Third Avenue 30th Floor
New York, NY 10022

Encl.

- 4 -

## EXHIBIT A

### Residential Capital Trusts

1. **RAMP 2005-EFC7**

2. **RAMP 2006-EFC2**

3. **RAMP 2006-RS4**

4. **RAMP 2006-RZ4**

5. **RASC 2004-KS7**

6. **RASC 2005-KS11**

7. **RASC 2006-EMX3**

8. **RASC 2006-KS7**

9. **RASC 2006-KS9**

10. **RASC 2007-KS**

11. **RASC 2007-KS2**

12. **RASC 2007-KS4**

13. **RFMS2 2005-HS2**

14. **RFMS2 2006-HI4**

15. **RFMS2 2006-HS2**

16. **RFMS2 2006-HSA1**

## EXHIBIT B

## GMAC Mortgage Trusts

1.  **GMACM 2005-HE1**

2.  **GMACM 2006-HE2**

3.  **GMACM 2006-HE3**

4.  **GMACM 2007-HE2**