# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel:  212 728 8000
Fax: 212 728 8111

July 16, 2013

**By Email**

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
for the Southern District of New York
One Bowling Green
New York, New York  10004

> Re:    *In re Residential Capital, LLC, et al., Chapter 11 Case No. 12-12020 (MG)*

Dear Judge Glenn:

We represent Monarch Alternative Capital LP ("Monarch"), Stonehill Capital Management LLC ("Stonehill"), CQS ABS Master Fund Limited, CQS ABS Alpha Master Fund Limited (together "CQS"), and Bayview Fund Management LLC ("Bayview" and together with Monarch, Stonehill, and CQS, the "Investors"), in their capacity as funds, or investment advisors to funds, that have investments in "wrapped" securities issued by certain of the residential mortgage-backed securities trusts insured by Financial Guaranty Insurance Company ("FGIC").  Collectively, the Investors hold more than $714 million current face value in 24 of the 47 FGIC-wrapped trusts.  The Investors have objected to the Findings requested by the Trustees of those 24 FGIC-wrapped trusts that, by entering into the FGIC Settlement Agreement, which compromises the rights of the Investors, the Trustees acted in good faith and in the Investors' best interests.[1]

We submit this letter in support of the Investors' application to compel the production of documents withheld by the Trustees.  We submit that the "fiduciary exception" overcomes the blanket objections that the Trustees have asserted in response to the Investors' document requests.  The

---

[1]    The "Trustees" include The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., U.S. Bank National Association, Wells Fargo Bank, N.A., and Law Debenture Trust Company of New York solely in their capacities as trustees, indenture trustees, or separate trustees (collectively, the "Trustees").  The "Settling Parties" to the FGIC Settlement Agreement include the Trustees, Residential Capital, LLC and its direct and indirect subsidiaries (collectively, the "Debtors"), the Institutional Investors, and FGIC.  The "Findings" are the findings contained in the Proposed Order, as defined below.

Trustees recognize that they serve as the Investors' fiduciaries, and that they did so in connection with the negotiation and execution of the FGIC Settlement Agreement.[2]  By virtue of their broad invocation of various privileges and refusal to produce responsive documents, however, the Trustees have undermined their beneficiaries' ability to challenge the self-serving Findings.  We respectfully submit that the Trustees cannot seek to secure the exculpatory Findings and simultaneously withhold documents, analyses, and advice they received or exchanged concerning the very settlement that they claim to have agreed to in good faith and in the Investors' best interests.

### Background

On June 13, the Investors served document requests and deposition notices upon the Trustees, among others.  To date, we have received very few non-public documents from the Trustees.  (A summary of the documents produced by the Trustees is attached hereto as Exhibit A.)[3]  In their General Objections to the requests, the Trustees cite twenty-one bases for non-production, including four different Confidentiality Agreements, as well as a plethora of boilerplate objections based on relevance and other grounds.[4]  We have no idea what documents are being withheld based on these objections, including the Confidentiality Agreements.  Because the Investors are bound by the Confidentiality Order agreed to by the parties in this proceeding, we submit that no documents should be withheld because they are also subject to other confidentiality agreements.

The Trustees also object to all of the requests to the extent that they seek information purportedly protected by the attorney-client privilege, work-product doctrine, common interest privilege, settlement privilege, or any other privilege.[5]  In addition, they object to the extent that documents are allegedly protected under the Court's December 26, 2012 Order Appointing Mediator.[6]

---

[2]     The "FGIC Settlement Agreement" is that document annexed as Exhibit B to *Debtors' Mot. Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors*, June 7, 2013, ECF No. 3929-2.

[3]     Without any explanation, the Settling Parties have continued to produce documents well after the court-imposed deadline of June 28, 2013, even though they had our document requests over two weeks before. *See, e.g.*, Email from Kahan to Eaton, Baio, and James, July 15, 2013 (attached hereto as Exhibit B).

[4]     *See generally The Trustees' Objections and Responses to Monarch Alternative Capital LP, Stonehill Management LLC, CQS ABS Master Fund Limited, CQS ABS Alpha Master Fund Limited, and Bayview Fund Management's Supplemental Request for the Production of Documents to the Trustees*, June 28, 2013 (attached hereto as Exhibit C).

[5]     *Id.* at 6 (General Objection 11).  The Settling Parties appear to be taking an expansive definition of the privilege, refusing to provide any disclosure of communications where a lawyer was "present," regardless of whether legal advice was either sought or rendered.  Kruger Dep. 31:19-33:10, 36:4-9, 37:4-9, July 11, 2013.

[6]     Exhibit C at 3-4 (General Objection 4).  The Settling Parties likewise appear to be taking an exceptionally broad approach to the mediation privilege, asserting that it covers any discussions related to the agreements that were ultimately reached so long as they occurred during the period when the mediation was ongoing.  Kruger Dep.45:2-10, 49:17-50:16, 51:25-52:10, 52:11-53:2.

The Trustees' counsel have provided twenty-nine pages of privilege logs.  The logs, however, are incomplete and inadequate.  For example, the Trustees unilaterally selected the date range of March 18, 2013 through May 23, 2013 for their production, and the logs do not identify any documents that were created prior to the start date and after the end date.  The CEO of FGIC, however, testified that discussions in the mediation of a potential commutation of the policies at issue began as early as mid-January, 2013.[7]  The use of a May 23, 2013 end date for production is similarly inappropriate.  The FGIC Settlement Agreement was not made "public" until May 30, 2013, at the earliest, when it was attached to an Order to Show Cause filed in the New York Supreme Court.[8]  Furthermore, the FGIC Settlement Agreement was not filed in the Bankruptcy Court until June 7, 2013 and the Trustees did not file their Joinder to the 9019 Motion until June 10, 2013.[9]  Those filings – and the events leading up to them – are relevant to the issues of the Trustees' good faith and conduct supposedly in our clients' best interests.  The privilege logs and the *in camera* submissions therefore should be updated to encompass the full relevant period.

The Trustees have recognized that they owe fiduciary duties to the beneficiaries, including the Investors.  For example, in their Joinder to the Debtors' 9019 Motion, the Trustees concede the following:

> After the occurrence of an event of default that has not been cured or waived, the RMBS Trustees *must exercise "the rights and powers vested in [them] by [the Governing Agreements], and use the same degree of care and skill in their exercise as a prudent investor would exercise or use under the circumstances in the conduct of such investor's own affairs*."[10]

As the Trustees concede, they filed their Joinder for one reason only:  to provide "support for the requested findings contained in the Proposed Order."[11]  The Findings requested in connection with the 9019 Motion, however, are designed to cut off claims that the Investors may have and are undeniably adverse to the Investors.  In seeking those Findings, and in hoping to terminate its obligations by agreeing to a commutation and termination of the policies upon the payment of a single

---

[7]     Dubel Dep. 89:23-90:10, July 10, 2013.  Counsel for FGIC directed the witness not to disclose whom those conversations were with.  We reserve the right to seek to compel answers to the questions that witnesses have refused to answer.

[8]     Exhibit B to Affirmation of Gary T. Holtzer, annexed to Order to Show Cause, *In re Rehabilitation of Financial Guaranty Ins. Co.*, Index No. 401265/2012 (N.Y. Sup. Ct. May 30, 2013).

[9]     *Joinder of Certain RMBS Trustees to the Debtors' Mot. for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants*, June 10, 2013, ECF No. 3940.

[10]    *Id.* at ¶ 11 (emphasis added).

[11]    *Id.* at ¶ 1.

and inadequate payment, the Trustees are in direct conflict with their beneficiaries.  The Findings are as follows:

> C.  The Settlement Agreement and the transactions contemplated thereby . . . are in the best interests of . . . the Investors in each Trust . . . .

> D.  The Trustees acted reasonably, in good faith and in the best interests of the Investors in each Trust and each such Trust in agreeing to the Settlement Agreement.[12]

The discovery sought by the Investors is designed to secure evidence needed to challenge the bases for these specific Findings.

### *The Trustees Are Not Entitled to Withhold the Requested Documents Based Upon the Attorney-Client Privilege, The Mediation Privilege, or Any Other Claimed Privilege or Doctrine*

The fiduciary exception to the attorney-client privilege is a well-established principle that holds that when a trustee obtains legal advice relating to the exercise of its fiduciary duties, the trustee is "precluded from asserting the attorney-client privilege against beneficiaries of the trust."  *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2319 (2011).  The exception is recognized under both federal and state law, including New York State law.  *See, e.g.*, *id.* at 2319 (listing cases); *Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988); *Hoopes v. Carota*, 142 A.D.2d 906, 910 (N.Y. App. Div. 3d Dep't 1988), *aff'd*, 74 NY2d 716 (1989); *AMBAC Indem. Corp. v. Bankers Trust Co.*, 151 Misc. 2d 334, 338-41 (N.Y. Sup. Ct. 1991); *see also United States Trust Co. of New York v. First Nat'l City Bank*, 57 A.D.2d 285, 295-97 (N.Y. App. Div. 1st Dep't 1977), *aff'd*, 45 N.Y.2d 869 (1978).

Here, the Trustees seek a Finding that they acted in the best interests of the Investors in negotiating and entering the FGIC Settlement Agreement, thereby conceding that whatever legal advice they sought, and whatever terms they negotiated in the mediation, were actions taken in the exercise of their fiduciary duties to the Investors.  Under well-established law, the Trustees are therefore "precluded from asserting the attorney-client privilege against beneficiaries of the trust," and all documents for which the privilege is asserted should be produced.  *Jicarilla*, 131 S. Ct. at 2319.

In *Jicarilla Apache Nation,* the Supreme Court identified two criteria that the courts have considered in overcoming trustees' invocation of privilege against its beneficiaries, both of which warrant production in this case.  131 S. Ct. at 2322-23.  First, courts look to see for whose benefit the advice was sought.  Where, as in this case, no adversarial proceedings between the trustees and

---

[12]    Exhibit 1 to *Debtors' Mot. Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Institutional Investors* ¶¶ A-C, May 23, 2013, ECF No. 3929-1 (the "Proposed Order").

beneficiaries had been pending at the time the advice was sought, there is no reason for the trustees to seek legal advice in a personal rather than a fiduciary capacity.  When trustees do not pay for the legal advice out of their own pockets, and the advice itself does not concern their own liability, courts typically recognize that the "real clients" are the beneficiaries and not the trustees.  *Id.*  The Trustees here have made no claim that they are looking out for their own interests in seeking legal advice and were pursuing the FGIC Settlement Agreement on their own behalf.[13]  Indeed, they allege in the 9019 Motion exactly the opposite: that they were acting in the Investors' best interests.

Second, the Supreme Court noted that courts have properly recognized that "the trustees' fiduciary duty to furnish trust-related information to the beneficiaries outweigh[s] their interest in the attorney-client privilege."  *Id.* at 2323.  The Court added that beneficiaries must be able to monitor and police trustees' management of their trusts, making disclosure of documents and analyses received by trustees "a weightier public policy than the preservation of confidential attorney-client communications."  *Id.* (quoting *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 714 (Del. Ch. 1976)).  This factor also weighs in the Investors' favor here.

Similarly, the fiduciary exception should be applied here to break any claims of work product protection.  *Carr v. Anheuser-Busch Cos., Inc.*, 791 F. Supp. 2d 672, 675 (E.D. Mo. 2011) *aff'd*, 495 F. App'x 757 (8th Cir. 2012) ("the analysis that governs the application of the fiduciary exception is the same" in both the attorney-client privilege and attorney work product protection contexts).  In addition, the work product rule "does not give an attorney the right to withhold work product from his own client, and in fact it has been specifically read as not requiring such a result.  *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 320 (S.D.N.Y.1991) (citations omitted).  Because trust beneficiaries are the "real clients" when trustees seek advice related to the trust, the beneficiaries are entitled to see any work product that was in effect created on their behalf.  *Jicarilla*, 131 S. Ct. at 2322-23; *see also Martin*, 140 F.R.D. at 322 ("the common law recognizes an obligation on the part of the trustee to provide full and accurate information to the beneficiary on his management of the trust").  Neither the attorney-client privilege, nor the work product protection, are absolute, and should not be treated as such here.  *E.g.*, *Worthington v. Endee*, 177 F.R.D. 113, 117 (N.D.N.Y. 1998) ("these privileges will yield where justice so requires").

We submit that the arguments advanced above apply with equal or greater force when applied to invocations of a "mediation privilege," a relatively modern barrier to production that does not rise to the level of the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  The Trustees claim that they participated in the mediation process and negotiated the FGIC Settlement Agreement

---

[13]    The Investors served the Trustees with interrogatories designed to elicit information that would shed light on whether they were seeking such legal advice on their own behalf.  In their responses, the Trustees made no claim that they were acting in a personal capacity at the time they sought such advice or that they paid for the legal advice they received.  *See, e.g.*, *Responses and Objections of Wells Fargo Bank, N.A. to Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQS ABS Master Fund Limited, and Bayview Fund Management LLC's First and Second Set of Interrogatories*, June 28, 2013 (attached hereto as Exhibit D).

on our clients' behalf.  They therefore should be required to produce documents they received and generated in that process for the reasons noted above.  *See also Martin v. Valley Nat'l Bank,* 140 F.R.D. 291, 325 (S.D.N.Y.1991) (quoting George Gleason Bogert & George Taylor Bogert, The Law of Trusts & Trustees § 173 (Rev. 2d ed. 1983)) ("The trustee is under a duty to the beneficiary . . . to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.").[14]

We understand that the Trustees will argue that the fiduciary exception does not apply in this case because the Trustees purportedly are not being charged with a conflict of interest and the Investors cannot show "good cause" entitling them to the requested materials.  That argument is wrong on the law and unsupported by any facts.

As an initial matter, as the Court noted in *Jicarilla Apache Nation,* the existence of an adversarial proceeding between the Trustees and the Investors at the time the Trustees were pursuing the Investors' interests is irrelevant to the question of whether the Investors are entitled to privileged documents secured by the Trustees.  Indeed, the absence of such a proceeding supports the notion that the legal advice sought was secured for the benefit of the Investors and not the Trustees themselves.

There is no question, however, that once the Trustees disclosed the FGIC Settlement Agreement, their role in negotiating that agreement, their execution of that agreement, and the requests they have made for various courts to find that they acted in the best interests of the Investors, the Trustees became adverse to the beneficiaries for whom they claimed to have worked.  The Investors have asserted, and intend to show at the 9019 Hearing, that the proposed Settlement Agreement is demonstrably damaging to their economic interests and materially inferior to the recoveries anticipated under the FGIC Rehabilitation Plan.  Moreover, the Trustees have asserted that one of the reasons they favor the FGIC Settlement Agreement is that it will terminate their responsibilities to the beneficiaries decades earlier than would be the case under the Rehabilitation Plan.[15]  The Investors assert unambiguously that the Trustees have acted in their own self-interest in proposing the facially inadequate Settlement Agreement and by attempting to force it on the beneficiaries.

---

[14]   Moreover, the mediation privilege has been strictly limited to exclude documents that "existed independently of the mediation."  *Dandong v. Pinnacle Performance Ltd.,* No. 10 Civ. 8086 (LBS), 2012 WL 4793870, at *2 & n. 3 (S.D.N.Y. Oct. 9, 2012) (permitting disclosure of "any materials that existed independent of the mediation process and regardless of the fact that they happened to have been included in someone's file or in . . . an attachment that was generated as part of the mediation process.")  Thus, to the extent that the Settling Parties purport to exclude from production documents existing independently of the mediation (*see* Kruger Dep.45:2-10, 49:17-50:16, 51:25-52:10, 52:11-53:2), solely because such documents were generated during the time period of the mediation, such exclusion is improper as outside the scope of the mediation privilege.

[15]   *Objection of U.S. Bank National Association and U.S. Bank Trust National Association, Each in its Capacity as Trustee, to the Plan of Rehabilitation Dated September 27, 2012,* 15, *In re Rehabilitation of Fin. Guar. Ins. Co.,* Index No. 401265/2012 (N.Y. Sup. Ct. Nov. 19, 2012) ("due to the significant delay in payments to Securityholders under the Plan, trustees will be expected to shoulder these burdens over a period well beyond the original term of many of the trusts.").

As for the claimed "good cause" requirement, we respectfully submit that such a showing is not required in the trustee/beneficiary context under the cases cited above. *See Martin,* 140 F.R.D. at 326; *Lawrence v. Cohn,* No. 90 CIV. 2396 (CSHMHD), 2002 WL 109530, at *5 (S.D.N.Y. Jan. 25, 2002) (listing cases holding that no good cause need be shown in the trustee/beneficiary context). Even if it were applicable, the Investors have demonstrated a compelling need for the documents that have been withheld under the various privileges asserted by the Trustees. The Investors have continued to withhold virtually all documents relating to their decision to enter into the FGIC Settlement Agreement. We have been unable to obtain any information supplied to the Trustees as to what our clients or any other party gained or could have gained in the negotiations, what was given up on behalf of our clients in order to make this deal "work," what the economic bases are for the conclusion that the proposed settlement is in the Investors' best interest, and what documents and analyses underlie the report issued by Duff & Phelps, LLC.

The Trustees' purported "good faith" in advancing the Investors' best interests depends significantly on what the Trustees actually received from their advisors, what was gained by other parties during the negotiating process, what financial analyses were provided and what assumptions were used to justify the settlement terms – all of which (beyond publicly available documents and a summary report from the Trustees' financial advisor) we have been denied. As in *Hoopes,* "[t]he information sought is highly relevant to and may be the only evidence available on whether [the Trustees'] actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the [Trusts]." *Hoopes,* 142 A.D.2d at 1101.

Moreover, the Trustees are not entitled to use a privilege as both sword and shield. The Trustees argue that they acted in good faith because the settlement was the product of hard-fought, arms' length mediation; they cannot use that argument as a sword to ratify their actions while simultaneously asserting the mediation privilege, or any other privilege, as a shield against any inquiry into whether those assertions are actually true. *See, e.g., United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991); *In re Residential Capital, LLC,* 491 B.R. 63, 68-71 (S.D.N.Y. 2013) (forbidding Debtors from "cherry-pick[ing]" certain privileged communications).

We therefore request that the Court compel the Trustees to produce the requested documents that were generated during the period from January 1, 2013 through June 10, 2013.

Respectfully submitted,


/s/ Mary Eaton




cc: Charles L. Kerr, Esq. (by electronic delivery)
    James L. Garrity, Esq. (by electronic delivery)

Glenn E. Siegel, Esq. (by electronic delivery)
Mark. D. Kotwick, Esq. (by electronic delivery)
John C. Weitnauer, Esq. (by electronic delivery)
Dale. C. Christensen, Jr., Esq. (by electronic delivery)
Kenneth H. Eckstein, Esq. (by electronic delivery)
Howard F. Sidman, Esq. (by electronic delivery)