

Wednesday,
April 28, 2010

Part II

# Environmental Protection Agency

40 CFR Part 87
Advance Notice of Proposed Rulemaking on Lead Emissions From Piston-Engine Aircraft Using Leaded Aviation Gasoline; Proposed Rule

20318F14

ATTACHMENT B
Avigation Easement

137475

TIME __10:20A__ M
RECORDER FRANKLIN CO., OHIO

HOMEOWNER PARTICIPATION AGREEMENT
RESIDENTIAL SOUND INSULATION PROGRAM
Port Columbus International Airport

SEP 2 1992

RICHARD B. METCALF, RECORDER

RECORDER'S FEE __18.00__

This easement is conveyed from __YVONNE DeCAROL WEBB__, hereinafter called "Grantor", to the Columbus Municipal Airport Authority of Columbus, Ohio, hereinafter called the "Grantee". This easement is entered into this __20th__ day of __APRIL__, 1992.

Grantor is the owner of land and improvements thereto located at __1875 ALVASON AVE., COLUMBUS__, of the State of Ohio, and described as follows:

### DESCRIPTION

Being Lot Number Seventeen (17) of Argyle Park Subdivision, as the same is numbered and delineated upon the recorded plat thereof, of record in Plat Book 36, page 6, Recorder's Office, Franklin County, Ohio.

The Grantee is the proprietor of the Port Columbus International Airport.

TRANSFER NOT NECESSARY
SEP 2 1992
JOSEPH W. TESTA
AUDITOR
FRANKLIN COUNTY, OHIO

CONVEYANCE TAX EXEMPT
JOSEPH W. TESTA
FRANKLIN COUNTY AUDITOR

MAILED
ENVELOPE FURNISHED



**U.S. Department of Transportation**
**Federal Aviation Administration**

# Memorandum

| | |
|---|---|
| **Subject:** | ACTION: FAR Part 150 Noise Compatibility Program, Record of Decision; Port Columbus International Airport, Columbus, Ohio |
| **Date:** | SEP 11 1987 |
| **From:** | Director, AGL-1 |
| **Reply to Attn. of:** | Lamberts:384-7387 |

**To:** Administrator

The city of Columbus, Public Utilities and Aviation Department, owner and operator of Port Columbus International Airport, has submitted noise exposure maps (NEM's) and a proposed noise compatibility program (NCP) to this office. The NEM's were previously accepted by FAA effective July 27, 1987. The proposed NCP must be approved or disapproved on or before January 23, 1988. A Federal Register notice announcing the submission of the NCP for FAA approval was published July 27, 1987. The maps and proposed program have been coordinated with airport users, community officials, land use planning agencies, and the public. Documentation of this coordination is found in the appendices of the study report.

Earlier review of the proposed NCP by this office and APP-600 found the program to be compliant with the standards set forth in FAR Part 150, paragraph 150.23. This submittal requests formal FAA review and approval of the NCP for Port Columbus International Airport. The airport is situated in the eastern part of the city of Columbus, which is currently designated as a medium hub. It has 184 based aircraft and had approximately 230,000 operations in 1986. This Part 150 study was funded under AIP Grant 84-2-3-39-0025-03-85 with a Federal project share of $267,188, which includes a master plan update.

This office believes the NCP complies with published standards for FAR Part 150 submittals. We have coordinated this report with Regional Counsel, the regional Planning Staff, and affected operational divisions. We are pleased to forward this candidate NCP for your consideration. We recommend you approve this NCP.

*[signed]* Bill Pollard
William H. Pollard

Attachment

2

Date:
Subject:  FAR Part 150 Noise Compatibility Program, Record of Decision;
          Port Columbus International Airport, Columbus, Ohio

Associate Administrator for Airports, ARP-1
    (Concur)/Non-concur: _____  Date: 9/16/87

Associate Administrator for Policy and International Aviation, API-1
    (Concur)/Non-concur: _____  Date: 9/18/87

Chief Counsel, AGC-1
    (Concur)/Non-concur: by: _____  Date: 9/21/87

Administrator, AOA-1
    (Approved)/Disapproved: _____  Date: 9-25-87

| DEPARTMENTAL AUTHORIZATION | REFERENCE NUMBER AND TIME | COMMITTEE |
|---|---|---|
| 20__-__31 | 01023 ORIGINAL 1989 JAN 17 AM 10:58 COLUMBUS CITY COUNCIL c/o Legislative Research Office Ordinance No. 40-89 | INTRODUCED BY M. D. PORTMAN |
| | 30 Day __ X __ Emergency | DATE OF FIRST READING JAN 23 1989 |
| | FLOOR ACTION (Clerk's Office Only) JAN 30 1989 | AUDITOR'S CERTIFICATE |
| RONALD J. O'BRIEN CITY ATTORNEY | | |

---

**Explanation of Legislation**

**OBJECTIVE:** To adopt the I-670 Corridor Development Plan as an official plan of the City of Columbus.

**NEED:** The completion of the I-670 project, linking the Columbus central business district with the airport, and the northeast, and providing increased access for the near east neighborhoods, will open a previously isolated area of the community to tremendous development potential. The I-670 Corridor Development Corporation was created to insure an orderly, sensible pattern of growth and development within the I-670 corridor. To further its mission, said corporation has adopted a development plan to provide a guide for: (1) investors in the corridor; and (2) evaluation of their proposals. Since the value of any plan is in its implementation, the I-670 Corridor Development Plan must be adopted by Council to assure compliance.

**BACKGROUND:** By Ordinance No. 1891-86 Council designated the I-670 Corridor Development Corporation as the City's agent to promote, support and coordinate the operation of projects for clearance, planning and development of the I-670 Corridor Area. Both the Corporation and the Development Commission have approved the Plan and have recommended its adoption by Council.

KATHY SHAW #8907

---

**Title (Brief Description)**

To adopt the I-670 Corridor Development Plan as an official plan of the City of Columbus to guide public and private improvement and economic development in the I-670 Corridor.

---

MAYOR'S ACTION    COUNCIL ACTION

JAN 31 1989

20823 - C32

WHEREAS, City Council by Ordinance No. 1891-86 designated the I-670 Corridor Development Corporation as the City's agent to promote, support and coordinate projects for clearance, planning and development of the I-670 Corridor Area; and

WHEREAS, the mission of the I-670 Corridor Development Corporation is to generate the greatest possible benefits to the people of Columbus by means of increased economic development within the I-670 Corridor; and

WHEREAS, economic benefits to the people of Columbus will include: increased employment opportunities, expanded tax base, improved neighborhoods, added private investment, and enhanced business opportunities for minorities; and

WHEREAS, the I-670 Corridor Development Corporation has adopted the I-670 Corridor Development Plan to guide economic development in the corridor in order to maximize employment opportunities, to enhance corridor neighborhoods, and to provide a continuous "green belt" image along the freeway; and

WHEREAS, the purpose of the plan is twofold: (1) to provide a guide for those who wish to invest in the corridor; and (2) to provide a guide for community evaluation of investment proposals; and

WHEREAS, the I-670 Corridor Development Plan has undergone a community review process involving neighborhood representatives, conducted by the I-670 Board of Trustees Plan Review Committee; and

WHEREAS, the I-670 Corridor Development Plan has been reviewed by implementing city divisions; and

WHEREAS, after public notice published in the City Bulletin, the I-670 Corridor Development Plan was presented at a public hearing held on October 27, 1988, before the Development Commission which approved said plan; now, therefore

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF COLUMBUS

Section 1. That the I-670 Corridor Development Plan be and hereby is adopted as a guide for public and private improvement and economic development within the I-670 Corridor Area.

Section 2. That all departments and divisions of the City administration are hereby authorized and directed to use the I-670 Corridor Development Plan in reviewing project proposals within said Corridor or without but affecting said Corridor.

Section 3. That copies of the I-670 Corridor Development Plan shall be kept on file in the Development Department, Development Regulation Division.

Section 4. That this ordinance shall take effect and be in force from and after the earliest period provided by law.

20823 - C12

002244

| | | |
|---|---|---|
| **COMMITTEE** DEVELOPMENT | **COLUMBUS CITY COUNCIL** ORIGINAL Ordinance No. **1533-93** | **CONFORMANCE** This is to certify that the attached ordinance is in conformance with the adopted Capital Improvements Budget as amended of the City of Columbus, Ohio. |
| **INTRODUCED BY** M. D. FORTMAN | | Department of Finance    Date |
| **DATE OF FIRST READING** JUL 12 1993 | 30 Day ✓   Emergency | **CITY ATTORNEY** This ordinance has been reviewed by the City Attorney's Office as to its form and legality only By _____ Date _____ |
| **FLOOR ACTION** (Clerks Office Only) JUL 19 1993 P 6-0 | | **AUDITOR'S CERTIFICATE** I hereby certify that there is in the treasury, or anticipated to come into the treasury, and not appropriated for any other purpose, the amount of money specified hereon, to pay the within ordinance Date ____ No ____ Fd No ____ Div No ____ Ch ____ By ____   Amt ____ City Auditor or Deputy Auditor |

**EXPLANATION OF LEGISLATION**

**OBJECTIVE:** Economic Development and Planning Divisions worked with the community to derive policies for the Joyce Woodland-Fields area, bounded by Hudson, Woodland, I-670 and the Conrail tracks, in which large sites can support a variety of uses with access to railroad spurs and interstates. Most of the manufacturing zoned land is vacant or contains vacant buildings. The area, carved out for federal grants, is being marketed as an urban employment center. The I-670 Corridor Development Plan covers the area south of 17th Avenue. This document extends the guidelines north to Hudson. Compatibility between uses is addressed. The process brings the Health Department in to evaluate uses that may be more objectionable or pose a public health risk. Seeking incentives, rezoning or a variance from the City would call the policies into play. Primarily, the policies are related to the I-670 Corridor Development Plan. The North Central and South Linden Area Commissions, South Linden Business Association, I-670 Corridor Development Corporation, and I-670 Corridor Business Association worked with the City and formally endorsed the policies. The Development Commission recommends their adoption.

**FISCAL IMPACT:** No impact is expected on city funds.

Contact For Questions - Phone on this Legislation: Lori Baudro 645-6 __
Approved (Division Head): Stephen B. McClary
Approved (Department Head): _____

**TITLE (BRIEF DESCRIPTION)**

To adopt Economic Development Policies and Guidelines for the Joyce-Woodland-Fields Urban Employment Center bounded by Hudson Street on the north, Woodland Avenue on the east, I-670 on the south, and the Conrail railroad tracks on the west.

**MAYOR'S ACTION**
SIGNED _____   DATE JUL 20 1993
VETO _____   DATE _____

**COUNCIL ACTION**
DATE PASSED/ADOPTED JUL 19 1993
PRESIDENT OF COUNCIL: Cynthia Lazarus
CITY CLERK: _____

| | | |
|---|---|---|
| 20823 - C22 DEPARTMENTAL **OMB** 002298 REFERENCE NUMBER AND 86 JUN 16 PM 3:53 | | COMMITTEE ECON. & |
| OMB Approval Stamp | **ORIGINAL** | INTRODUCED BY |
| OMB Staff Contact: S. Gussler | **COLUMBUS CITY COUNCIL** c/o Legislative Research Office | JOHN R. MALONE |
| 607 Phone | Ordinance No. 1891-86 | DATE OF FIRST READING JUL 1 4 1986 |
| OMB COMPLIANCE With Affirmative Action Code | | AUDITOR'S CERTIFICATE |
| Office of Contract Compliance | Resolution No. | I hereby certify that there is in the treasury, or anticipated to come into the treasury, and not appropriated for any other purpose, the amount of money specified herein, to pay the within ordnance. |
| CONFORMANCE This is to certify that the attached ordinance is in conformance with the adopted Capital Improvements Budget as amended, of the City of Columbus, Ohio | 30 Day  X  Emergency | Date: No: |
| Department of OMB  Date | FLOOR ACTION JUL 21 1986 (Clerk's Office Only) P7-C | Fund No: Dept. No: Appros Code: Entered By: Amount: |
| CITY ATTORNEY: This ordinance to enter a contract has been reviewed by the City Attorney's Office as to its form and legality only. GREGORY S. LASHUTKA CITY ATTORNEY By: 645-86 MSB 6-16-86 | | City Auditor or Deputy Auditor |

**Explanation of Legislation**

OBJECTIVE:   To designate and authorize an Agreement with the I-670 Corridor Development Corporation as an agent for industrial, commercial, distribution and research development for the I-670 Corridor area.

NEED:   Ohio Revised Code Chapter 1702 permits political subdivisions to designate and agree with development corporations as agents for industrial, commercial, distribution and research development in such political subdivisions and requires said designations and agreements to be made and authorized by ordinance.

BACKGROUND:   The Board of Trustees of the I-670 Corridor Development Corporation has recently completed several months of study and planning for the development of the I-670 Corridor Area. Members of the Board of Trustees have taken steps to form an Ohio nonprofit I-670 Corridor Development Corporation to serve as agent of the City to actively and aggressively promote, support, coordinate and operation of projects for clearance, planning and development of the corridor to increase jobs, promote economic vitality, and to assist in the development of business opportunities for minorities. The passage of this ordinance is required if the I-670 Corridor Development Corporation is to act as an agent for the City for the I-670 Corridor Area.

Contact: For Questions - Phone on this Legislation

Approved (Division Head)       Approved (Department Head) 5/8/86

**Title (Brief Description)**

Designating the I-670 Corridor Development Corporation as an agent, and instrumentality of the City of Columbus to promote, support and coordinate the operation of projects for clearance, planning and development of the I-670 Corridor Area within its territorial jurisdiction and authorizing the execution of an Agreement to facilitate the same.

| MAYOR'S ACTION | COUNCIL ACTION | |
|---|---|---|
| SIGNED    JUL 23 1986 DATE | JUL 21 1986 PASSED    DATE | PRESIDENT OF COUNCIL    DATE |
| RETURNED UNSIGNED    DATE | ADOPTED    DATE | CITY CLERK    DATE |
| VETO    DATE | | |

20823 - C23

WHEREAS, Section 13 of Article VIII of the Ohio Constitution provides that, to create jobs and employment opportunities and to improve the economic welfare of the people of the State, it is in the public interest and a proper public purpose for a municipal corporation, its agencies or instrumentalities, or a corporation not for profit designated by such municipal corporation as its agency or instrumentality to perform the acts and exercise the powers therein provided; and

WHEREAS, Section 1702, Ohio Revised Code provides that a corporation may be formed for any purpose or purposes for which natural persons lawfully may associate themselves; and

WHEREAS, the Articles of Incorporation of the I-670 Corridor Development Corporation sets forth that its purpose is as follows:

"To promote the general and public welfare of the residents of the City of Columbus, Ohio and the County of Franklin, by the enhancement and development of all or part of that area of the corridor, hereinafter described, along the proposed Interstate 670 extending from downtown Columbus, Ohio, through the vicinity of Port Columbus International Airport, to Interstate 270 through the initiation, support and operation of projects for the clearance, planning and development of the corridor to increase jobs, to promote economic vitality, to assist in the development of business opportunities for minorities and generally to carry on any and all activities in furtherance of one or more of said purposes. As used herein, "corridor" shall mean the area extending approximately one mile on each side of proposed Interstate 670 right-of-way.

To take and hold by bequest, devise, gift, purchase or lease either absolutely or in trust, for any of its purposes, any property, real or personal, without limitation as to amount or value; to sell, convey and dispose of any such property and to invest and reinvest the principal thereof, and to deal with and expend the income and principal of the Corporation for any of the purposes hereinbefore set forth.

To do all things necessary or appropriate in order to accomplish the foregoing purposes."

WHEREAS, the overall development of the I-670 Corridor is in concert with the City's Economic Development Policy Statement, as prepared by the Columbus Economic Development Council and the City's Jobs Development Department, as the primary guide for the economic development of Columbus; now, therefore,

§ 93.126                                                                                  40 CFR Ch. I (7–1–05 Edition)

(d) If the MPO or project sponsor believes the mitigation or control measure is no longer necessary for conformity, the project sponsor or operator may be relieved of its obligation to implement the mitigation or control measure if it can demonstrate that the applicable hot-spot requirements of § 93.116, emission budget requirements of § 93.118, and interim emissions requirements of § 93.119 are satisfied without the mitigation or control measure, and so notifies the agencies involved in the interagency consultation process required under § 93.105. The MPO and DOT must find that the transportation plan and TIP still satisfy the applicable requirements of §§ 93.118 and/or 93.119 and that the project still satisfies the requirements of § 93.116, and therefore that the conformity determinations for the transportation plan, TIP, and project are still valid. This finding is subject to the applicable public consultation requirements in § 93.105(e) for conformity determinations for projects.

[62 FR 43801, Aug. 15, 1997, as amended at 69 FR 40081, July 1, 2004]

§ 93.126   Exempt projects.

Notwithstanding the other requirements of this subpart, highway and transit projects of the types listed in Table 2 of this section are exempt from the requirement to determine conformity. Such projects may proceed toward implementation even in the absence of a conforming transportation plan and TIP. A particular action of the type listed in Table 2 of this section is not exempt if the MPO in consultation with other agencies (see § 93.105(c)(1)(iii)), the EPA, and the FHWA (in the case of a highway project) or the FTA (in the case of a transit project) concur that it has potentially adverse emissions impacts for any reason. States and MPOs must ensure that exempt projects do not interfere with TCM implementation. Table 2 follows:

TABLE 2—EXEMPT PROJECTS

Safety

Railroad/highway crossing.
Hazard elimination program.
Safer non-Federal-aid system roads.
Shoulder improvements.
Increasing sight distance.
Safety improvement program.
Traffic control devices and operating assistance other than signalization projects.
Railroad/highway crossing warning devices.
Guardrails, median barriers, crash cushions.
Pavement resurfacing and/or rehabilitation.
Pavement marking demonstration.
Emergency relief (23 U.S.C. 125).
Fencing.
Skid treatments.
Safety roadside rest areas.
Adding medians.
Truck climbing lanes outside the urbanized area.
Lighting improvements.
Widening narrow pavements or reconstructing bridges (no additional travel lanes).
Emergency truck pullovers.

Mass Transit

Operating assistance to transit agencies.
Purchase of support vehicles.
Rehabilitation of transit vehicles[1].
Purchase of office, shop, and operating equipment for existing facilities.
Purchase of operating equipment for vehicles (e.g., radios, fareboxes, lifts, etc.).
Construction or renovation of power, signal, and communications systems.
Construction of small passenger shelters and information kiosks.
Reconstruction or renovation of transit buildings and structures (e.g., rail or bus buildings, storage and maintenance facilities, stations, terminals, and ancillary structures).
Rehabilitation or reconstruction of track structures, track, and trackbed in existing rights-of-way.
Purchase of new buses and rail cars to replace existing vehicles or for minor expansions of the fleet[1].
Construction of new bus or rail storage/maintenance facilities categorically excluded in 23 CFR part 771.

Air Quality

Continuation of ride-sharing and van-pooling promotion activities at current levels.
Bicycle and pedestrian facilities.

Other

Specific activities which do not involve or lead directly to construction, such as:
Planning and technical studies.
Grants for training and research programs.
Planning activities conducted pursuant to titles 23 and 49 U.S.C.
Federal-aid systems revisions.
Engineering to assess social, economic, and environmental effects of the proposed action or alternatives to that action.
Noise attenuation.

576

**UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;**

**(at Manhattan)**

[18 USC §§ 2, 3, 241, 242, 245(b)(2)(B), 1341, 1350, 664, 1962][29 USC §§ 1131, 1132(h), 1140][26 USC §§ 101(h), 267(b)(1) and (c)(4), 401(f)&(g)][42 U.S.C. §§ 4651 (2), 7404(b)(4)] [15 USC §§ 77d, 78j, 80a-8(a)&(f), 80a-27, 80a-35]

| | |
|---|---|
| In Re: Residential Capital, LLC., et al. ) | Case No. 12-12020 (MG) |
| ) | (Ch.11 ) |
| ) | (Related BR Case No.07-bk-57237, S.D., OHIO) |
| Debtor ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| ) | JUDGE: GLENN, MARTIN |

**UNITED STATES BANKRUPTCY COURT**

**FOR THE SOUTHERN DISTRICT OF OHIO;**

**(at Columbus)**

| | |
|---|---|
| In Re: SIDNEY T. LEWIS, pro se, | )Case No. 2:07-bk-57237 |
| | ) (Ch.7 ) |
| Debtor | ) (Related Bankr Case No. 2:05-bk-75111) |
| | ) |
| Social Security No.: xxx-xx-5959 | )JUDGE: HOFFMAN, JOHN, Jr. |

| | |
|---|---|
| In Re: Yvonne D. Lewis, | )Case No. 2:05-bk-75111 |
| | ) (Ch.7 ) |
| Debtor | ) (Related Case No. 2:07-bk-57237) |
| | ) |
| Social Security No.: xxx-xx-2390 | ) JUDGE: HOFFMAN, JOHN, Jr. |

1 of 13 pages

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO;

(at Columbus)

UNITED STATES of America, Ex Rel.,

Sidney T. Lewis, et al.,                ) Action No. 2:08-cv-1042

    Plaintiffs                          (Related Cases 2:96-cv-494; 2:06-cv-312, 2:08-

Vs.                                     ) cv-16; 2:08-cv-75; 2:09-cv-1792: 09-cv-179);

                                                                     JUDGE: HOLSCHUH

Larry McClatchey, et al.,               ) Magistrate Judge: KING

    Defendants

---

Preet Bharara and Carter Stewart,

United States Attorneys

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, ex rel.,      )

Sidney Lewis & Yvonne D. Lewis on behalf ) Criminal No.: _____

of themselves and Others Similarly Situated ) (Related Case: 12-cv-1422, USDC, S.D., NY;

    Plaintiffs,                         ) Related Case No.12-av-01731, S.D., NY)

    v.                                  ) (Related Case No. 12-bk-12032, S.D., N.Y.)

GMAC Mortgage Corp. LLC., et al., By    ) VIOLATIONS: Title 18, United

(1) MATTHEW J. RICHARDSON, Attorney,    ) States Code, Section 241[1] -

---

[1] Under 18 U.S.C. § 241, it is a Federal offense to *** conspire to intimidate a citizen from exercising a Federal right (overlap with 18 U.S.C. §§ 1503, 1510, 1512, and 1513). One such right is the right to be *** in a Federal court, *United States v. Dinome*, 954 F.2d 839, 845 (2d Cir.), *cert. denied*, 506 U.S. 830 (1992); *United States v. Thevis*, 665 F.2d 616, 626 (5th Cir.), *cert. denied*, 456 U.S. 1008, *and cert. denied*, 458 U.S. 1109, *and cert. denied*, 459 U.S. 825

| | |
|---|---|
| City of COLUMBUS; By Co-Conspirators: | ) CONSPIRACY TO VIOLATE CIVIL<br>) RIGHTS; Title 18, United States Code,<br>) Section 242 - VIOLATIONS OF CIVIL, |
| (2) MANLEY, DEAS, KOCHALSKI, LLC, | ) RIGHTS; Title 18, U.S. Code, Section 245 - |
| (3) Peter NOCERO, Affiant Authorized Off. | ) INTERFERENCE WITH FEDERALLY |
| (4) FIRST AMERICAN TITLE INS. Co., | ) PROTECTED ACTIVITIES; Title 18, U. |
| (5) Cheryl ROBERTO, Cols. City Attorney, | ) S. Code, Section 2 - AIDING AND |
| (6) John Doe; And | ) ABETTING; Title 18, United States |
| County of FRANKLIN, Ohio (County Actors): | ) Code, Section 1503$^2$ - OBSTRUCTION OF |
| (7) Patrick E. SHEERAN, Judge | ) JUSTICE; Title 18, United States Code, |
| (8) Julie LYNCH, Judge | ) § 3-ACCESSORY AFTER THE FACT. |

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., | ) |
| Sidney Lewis & Yvonne D. Lewis on behalf | ) Criminal No.: _____ |
| of themselves and Others Similarly Situated | ) (Related Cases: 2:96-cv-494; 2:06-cv-312; |
| Plaintiffs, | ) 2:08-cv-75, 1042; 2:09-cv-179 & 944) |
| v. | ) |
| | ) |
| City of COLUMBUS, OHIO, et al., By | ) VIOLATIONS: Title 18, United |
| (1) CHERYL ROBERTO, City Attorney, | ) States Code, Section 241$^3$ - |

---

(1982); or other Federal proceeding, *United States v. Smith*, 623 F.2d 627, 629 (9th Cir. 1980). "So is the right to inform Federal officials of violations of Federal laws." *Id.* (See: USAM, Title 8, Civil Rights RM, at 18 U.S.C. § 241);

$^2$ See fnt. 1.

$^3$ Under 18 U.S.C. § 241, it is a Federal offense to *** conspire to intimidate a citizen from exercising a Federal right (overlap with 18 U.S.C. §§ 1503, 1510, 1512, and 1513). One such right is the right to be *** in a Federal court, *United States v. Dinome*, 954 F.2d 839, 845 (2d Cir.), *cert. denied*, 506 U.S. 830 (1992); *United States v. Thevis*, 665 F.2d 616, 626 (5th Cir.),

| | |
|---|---|
| State of OHIO; By Political Appointees: | ) CONSPIRACY TO VIOLATE CIVIL <br> ) RIGHTS; Title 18, United States Code, <br> ) Section 242 - VIOLATIONS OF CIVIL, |
| (2) William KLATT, | ) RIGHTS; Title 18, U.S. Code, Section 245 - <br> ) INTERFERENCE WITH FEDERALLY |
| (3) Mike HOLBROOK, | ) PROTECTED ACTIVITIES; Title 18, U. |
| (4) Mike WATSON, | ) S. Code, Section 2 - AIDING AND |
| (5) Julie LYNCH, And, | ) ABETTING; Title 18, United States |
| (6) John Doe; And | |
| County of FRANKLIN, Ohio (County Actors): | ) Code, Section 1503[4] - OBSTRUCTION OF |
| (7) Patrick E. SHEERAN, Judge | ) JUSTICE; Title 18, United States Code, |
| (8) Pat SHEERAN, Prosecuting Attorney. | ) Section 3-ACCESSORY AFTER THE FACT. <br> ) |
| Defendants. | ) SIX (6) COUNTS TOTAL <br> ) Judge: WATSON <br> ) |

## INDICTMENT/COMPLAINT

INTRODUCTION

The complainants charges that:

1. At all times relevant to this indictment/complaint, the Columbus Municipal Airport Authority, Aviation and Utilities Division was an entity in the City of Columbus, Ohio, whose functions were to develop, manage, maintain, and otherwise administer Airport Improvement Grants (AIP) from Passenger Facility Charges ("PFC's", see 14 CFR § 158.5) provided by the Federal Aviation Administration (FAA) for eligible persons in the City of Columbus, Ohio. These functions included the establishment of a "Noise Compatibility Program (NCP)" to

---

cert. denied, 456 U.S. 1008, and cert. denied, 458 U.S. 1109, and cert. denied, 459 U.S. 825 (1982); or other Federal proceeding, United States v. Smith, 623 F.2d 627, 629 (9th Cir. 1980). "So is the right to inform Federal officials of violations of Federal laws." Id. (See: USAM, Title 8, Civil Rights RM, at 18 U.S.C. § 241);

[4] See fnt. 1.

provide Clean Air and Noise Abatement services on or near Port Columbus International Airport property.

2. At all times relevant to this indictment, the Franklin County Sheriffs Department And Franklin County Prosecuting Attorney's Office, also known as the Franklin County District Attorney's (DA), was a **law** enforcement agency in the Franklin County, Ohio, empowered to enforce the **laws** of the State of Ohio, the County of Franklin, and the City of Columbus.

3. At all times relevant to this indictment, the City Attorney's Legal Department And Assistant Attorney's Office, also known as the City District Attorney's (DA), was a **law** enforcement agency in the City of Columbus, Ohio, empowered to enforce the "taking" **laws** of the State of Ohio, the County of Franklin, and the City of Columbus.

4. At all times relevant to this indictment, GMAC Mortgage Corp. LLC., et al., By (1) MATTHEW J. RICHARDSON, Attorney; City of COLUMBUS; By Co-Conspirators: (2) MANLEY, DEAS, KOCHALSKI, LLC (Private Actors), (3) Peter NOCERO, Affiant Authorized Off. (Private Actor), (4) FIRST AMERICAN TITLE INS. Co. (Private Actors), (5) Cheryl ROBERTO, Cols. City Attorney (Government Actor), (6) John Doe (Government and/or Private Actors); County of FRANKLIN, Ohio: (7) Patrick E. SHEERAN, Judge, and (8) Julie LYNCH, Judge (Government Actors) defendants were "necessary parties" in state and federal court proceedings related to case no. 98-CV-3445 for "Uncompensated-Permanent Residential Subdivision Aviation Easements" in the Argyle Park Subdivision ("APS"), whose primary mission was to inform the State and Federal Courts of the City of COLUMBUS's unlawful "Takings" of private lands for "public use" in year 1987 before compensation[5] under FAA/FAR part 150 program as to enforce **laws** prohibiting the "Taking" of land without just

---

[5] "For it is undisputed that "[since] compensation is due at the time of taking, the owner at that time, not the owner at an earlier or later date, receives the payment." Danforth v. United States, 308 U.S. 271, 284; cf. United States v. Dickinson, 331 U.S. 745. We hold, contrary to the Court of Appeals, that the "taking" did not occur in 1946 when the Government filed its declaration of taking, but rather when the United States entered into possession of the land in 1943." (See: **UNITED STATES v. DOW, 357 U.S. 17, 20-21 (U.S. 1958), also see: Ohio v. Kovacs, 469 U.S. 274, 278-279 (U.S. 1985))**





