1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC,                    Case No. 12-12020-mg


            Debtors.


- - - - - - - - - - - - - - - - - - - - - -x


OFFICIAL COMMITTEE OF UNSECURED CREDITORS, Case No. 13-01277-mg

                et al.,

            Plaintiffs,


            - against -


UMB Bank, N.A., et al.,

              Defendants.


- - - - - - - - - - - - - - - - - - - - - -x

2

1

2   RESIDENTIAL CAPITAL, LLC, et al.,        Case No. 13-01343-mg

3                  Plaintiffs,

4

5            - against -

6

7   UMB Bank, N.A.,

8                Defendants.

9

10   - - - - - - - - - - - - - - - - - - - -x

11

12                United States Bankruptcy Court

13                One Bowling Green

14                New York, New York

15

16                July 15, 2013

17                11:04 AM

18

19

20

21

22   B E F O R E:

23   HON. MARTIN GLENN

24   U.S. BANKRUPTCY JUDGE

25

1   (CC: Doc #3923) Motion for Omnibus Objection to

2   Claim(s)/Debtors Fourth Omnibus Objection to Claims (Late-Filed

3   Borrower Claims).   Hearing RE: Responses of Mahnaz Rahbar, Beth

4   M. Tsounakas, Christine and Harris Davis, Mark and Lynn

5   Ostreicher, Kenneth and Kristi Walker, Aisha M. Harris, and

6   James R. And Terri L. Fox adj. to 7/26/2013 at 10 a.m. Hrg.

7   going fwd on remainder of objs.

8

9   (CC: Doc# 3924) Motion for Omnibus Objection to Claim(s) (Late-

10  Filed Borrower Claims) Hearing on matters relating to the

11  Opposition of Tracey J. Marshall, Response of Norma G. Green,

12  and Response of Todd Phelps are being adjourned to July 26,

13  2013.  Hearing on the remainder of claims will be going

14  forward.

15

16  (CC: Doc #3925) Motion for Omnibus Objection to

17  Claim(s)/Debtors Sixth Omnibus Objection to Claims (Duplicate

18  Borrower Claims)

19

20  (CC: Doc no. 3926) Motion for Omnibus Objection to

21  Claim(s)/Debtors' Seventh Omnibus Objection to Claims (Amended

22  and Superseded Borrower Claims) filed by Norman Scott Rosenbaum

23  on behalf of Residential Capital, LLC Response of Ronald P.

24  Gillis has been resolved; hearing on the remainder of the

25  objection will be going forward.

1

2   (CC: Doc# 3927) Motion for Omnibus Objection to

3   Claim(s)/Debtors Eighth Omnibus Objections to Claims (Redundant

4   Borrower Claims).

5

6   (CC: Doc #3985) Debtors Ninth Omnibus Objection to Claims

7   (Duplicative of Indenture Trustee Claims).

8

9   Adversary proceeding: 13-01277-mg Official Committee of

10  Unsecured Creditors et al. v. UMB Bank, N.A. et al

11  Status Conference Regarding Discovery Requests.

12

13  Adversary proceeding:  13-01343-mg Residential Capital, LLC, et

14  al. v. UMB Bank, N.A., in its Capacity as Indenture Trust

15  Status Conference Regarding Discovery Requests.

16

17

18

19

20  Transcribed by:  Linda Ferrara

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

```
 1   A P P E A R A N C E S :
 2   MORRISON & FOERSTER LLP
 3         Attorneys for Debtors
 4         1290 Avenue of the Americas
 5         New York, NY 10104
 6
 7   BY:   JORDAN A. WISHNEW, ESQ.
 8         JAMES A. LEVITT, ESQ.
 9         DAVID BRAUN, ESQ.
10
11   KRAMER LEVIN NAFTALIS & FRANKEL LLP
12         Attorneys for Official Creditors' Committee
13         1177 Avenue of the Americas
14         New York, NY 10036
15
16   BY:   ELISE S. FREJKA, ESQ.
17         GREGORY A. HOROWITZ, ESQ.
18         CRAIG L. SIEGEL, ESQ.
19
20   CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
21         Attorneys for Conflicts Counsel for the Debtor
22         101 Park Avenue
23         New York, N.Y. 10178-0061
24
25   BY:   THERESA A. FOUDY, ESQ.
```

6

```
 1
 2   WHITE & CASE LLP
 3          Attorneys for Ad Hoc Group of Junior Secured Noteholders
 4          1155 Avenue of the Americas
 5          New York, NY 10036
 6
 7   BY:   HARRISON DENMAN, ESQ.
 8          J. CHRISTOPHER SHORE, ESQ.
 9          DOUGLAS P. BAUMSTEIN, ESQ.
10
11   AIKEN GUMP STRAUSS HAUER & FELD, LLP
12          Attorneys for
13          One Bryant Park
14          New York, New York 10036
15
16   BY:   DEBORAH NEWMAN, ESQ.
17          DAVID M. ZENSKY, ESQ.
18
19   MILBANK, TWEED, HADLEY & MCCLOY, LLP
20          Attorneys for Ad Hoc Group Of Junior Secured Noteholders
21          One Chase Manhattan Plaza
22          New York, New York 10005-1413
23
24   BY:   ATARA MILLER, ESQ.
25          DANIEL M. PERRY, ESQ.
```

1

2    REED SMITH

3           Attorneys for Wells Fargo Acting as Collateral Agent

4           599 Lexington Avenue

5           22nd Floor

6           New York, New York 10022

7

8    BY:   DAVID M. SCHLECKER, ESQ.

9

10   PACHULSKI, STANG ZIEHL & JONES LLP

11          Attorneys for Conflicts Counsel To The

12          Creditors Committee

13          780 Third Avenue

14          36th Floor

15          New York, New York 10017-2024

16

17   BY:   JOHN MORRIS, ESQ.

18

19   KIRKLAND & ELLIS LLP

20          Attorneys for Ally Financial Inc. & Ally Bank

21          601 Lexington Avenue

22          New York, NY 10022

23

24   BY:   NOAH JEFFREY ORENSTEIN, ESQ. (TELEPHONICALLY)

25

1  ALSO APPERING TELEPHONICALLY:

2

3  GREGORY C. MORSE, In Pro Per

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE COURT:  Please be seated.  We're here in

3    Residential Capital, number 12-12020.

4          MR. WISHNEW:  Good morning, Your Honor.  Jordan

5    Wishnew, Morrison & Foerster for the debtors.  I will be

6    addressing the omnibus claims objections under numeral I on

7    today's agenda and then ceding the podium to my colleague, Ms.

8    Levitt for the JSN status conference.

9          Item number one deals with some carryover claims from

10   the first omnibus objection.  Specifically, they're the claims

11   of Ms. Genesco and Krolon Tracht (ph.).  The Krolon Tracht

12   matter is being carried to July 26 to see if we can resolve it.

13   And Ms. Genesco's claim has been consensually resolved.  We've

14   spoken with her.  She understands the basis for our objection

15   and agrees to the relief being sought.  We filed a statement

16   this morning to that effect and we'll submit an order to

17   chambers consistent with that.

18          THE COURT:  Okay.

19          MR. WISHNEW:  The second item on the agenda is the

20   third omnibus claims objection.  That again deals with a

21   carryover related to the Durbin Crossing claims.  There was a

22   motion filed last week -- late last week to abandon the related

23   properties and that --

24          THE COURT:  You said third.  I don't have a third

25   omnibus objection on the agenda.

1        MR. WISHNEW:  Item two, Your Honor.

2        THE COURT:  All right.  Yes, I see it.

3        MR. WISHNEW:  Okay.

4        THE COURT:  Yes, okay.  I'm sorry.  I'm looking at the

5   list in the binder.  Go ahead.

6        MR. WISHNEW:  No problem, Your Honor.  So that matter

7   is -- will resolve itself as a result of the abandonment motion

8   filed late last week.  That will resolve the claims and that

9   matter is being heard; that is, the abandonment motion is being

10  heard on the 26th.

11        THE COURT:  All right.

12        MR. WISHNEW:  With regards items three through eight

13  on the agenda, those deal with the fourth through ninth omnibus

14  matters.  Over the -- since the past week, we've received

15  certain responses from numerous borrowers with the assistance

16  of both Kramer Levin and SilvermanAcampora, we have either

17  agreed to adjourn approximately ten of those matters to July 26

18  or the parties have understood the relief being sought with

19  regard to their response and have essentially agreed to the

20  relief that the debtors were seeking in connection with these

21  omnibus objections.

22        And again, we filed a statement this morning at --

23  clarifying how we resolved matters, I think in the fourth,

24  sixth, seventh, eighth and ninth omnibus objections and we also

25  filed a notice of adjournment late last week with regards to

RESIDENTIAL CAPITAL, LLC, ET AL.                    11

1   matters in the fourth and fifth omnis.

2          We have clean forms of order and blacklines for Your

3   Honor to consider.  I believe those were also e-mailed to

4   chambers this morning.  I know that Mr. Morse is on the phone

5   in connection with the sixth omnibus objection.  In his

6   conditional response, he wanted clarification that essentially

7   the parties were reserving their rights and the surviving

8   claims would not be affected and, in fact, that is the case.

9   The sixth omnibus matter was a duplicate borrower claims and

10  Mr. Morse had four claims; two of them were exactly the same as

11  the two surviving.  We will keep the surviving in the register.

12  We reserve our rights to file further objections and Mr.

13  Morse's rights to respond to those objections are reserved, as

14  well.  So, we would ask that the matter move forward and we be

15  allowed to expunge the duplicative claims identified on Exhibit

16  A to the form of order.

17         THE COURT:  Mr. Morse, do you want to be heard?

18         MR. MORSE:  Your Honor, what the lawyer just said is

19  fine.  We have no objection to the expungement as long as our

20  two original claims remain intact.

21         THE COURT:  All right.  Thank you very much.

22         MR. WISHNEW:  Unless Your Honor has any questions, I

23  believe that really addresses the matters in omnibus' four

24  through nine today.

25         THE COURT:  How many -- I think I have the list but

1    how many claims are they going -- how many have you withdrawn

2    from the objections.  How many is it going forward with respect

3    to the --

4              MR. WISHNEW:  Sure.  So, between the six omnibus

5    objections today, 490 claims were dealt with.  Ten and I

6    believe an eleventh this morning, I think chambers was

7    contacted this morning or received a letter this morning from

8    Mr. and Mrs. Bartaz (ph.).  I don't believe it hit the docket

9    but that will get added to the list of adjournments; bring the

10   total adjournments to July 26 to eleven.

11             THE COURT:  Okay.

12             MR. WISHNEW:  Other than that, it would be I think 480

13   claims that would be expunged from the register, Your Honor.

14             THE COURT:  All right.  Does anybody wish to be heard

15   with respect to the omnibus objections?  All right.  So, the

16   objections are sustained, other than as to those which have

17   been withdrawn and subject to the reservation that you've put

18   on the record.

19             MR. WISHNEW:  Would Your Honor like hard copies or

20   should we just work with electronic?

21             THE COURT:  We'll just hand up discs.

22             MR. WISHNEW:  Okay.

23             THE COURT:  Okay?

24             MR. WISHNEW:  Yes.

25             THE COURT:  Thank you very much.

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1          MR. WISHNEW:  Thank you very much, Your Honor.

2          THE COURT:  All right.

3          UNIDENTIFIED SPEAKER:  May I be excused, Your Honor?

4          THE COURT:  Yes, you may.

5          UNIDENTIFIED SPEAKER:  Thank you.

6          MR. WISHNEW:  Thank you, Your Honor.

7          THE COURT:  Thank you.   All right.  So, we're going

8   to move forward now with the status conference with respect to

9   the two complaints; the committee and the debtors' complaints

10  against UMB, the JSN matter.

11         MS. LEVITT:  Your Honor, Jamie Levitt from Morrison &

12  Foerster on behalf of the debtors.

13         Your Honor, first I want to apologize for all of the

14  parties for the morning correspondence.  I do greatly apologize

15  for that.  We did try our best to get a joint statement

16  negotiated last weekend into the Court.  As I said, we provided

17  it to counsel for the JSNs at 2:30 on Thursday.  We didn't hear

18  back until about 9 p.m. last night.  So, Your Honor, we have

19  not had a chance to analyze, discuss with our clients and are

20  therefore not in a position to discuss the statement.  Again, I

21  apologize for that situation.

22         I also thought we were essentially done with discovery

23  disputes.  We had what I thought were product meet and confers

24  last week and I thought we were down just to the issue of

25  mediation, confidentiality.  The JSNs this morning, although I

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1  didn't hear from them on this last week raised two new issues

2  again that I thought were entirely resolved but we will address

3  those, Your Honor.

4          Do you want me to go through each of those three or

5  the mediation confidentiality or does the Court have any other

6  questions?

7          THE COURT:  Well, I gather that with respect to the

8  statement of issues, the parties are going to continue to try

9  and resolve the issue.  I don't know how many open issues there

10 are.  Ms. Levitt, when do you think realistically, you'll be

11 able to either resolve or conclude that you can't?

12         MS. LEVITT:  Your Honor, I would sure hope tomorrow is

13 possible.

14         THE COURT:  Okay.

15         MS. LEVITT:  Or in case I mean no way --

16         THE COURT:  Mr. Morris?

17         MS. LEVITT:  Perhaps not with the JSN counsel but we

18 will review it today.

19         THE COURT:  Okay.

20         MS. LEVITT:  I don't think we're all that far apart.

21 I've done a quick read.  I think we can get there.  I guess I

22 would just ask the Court's intervention that counsel for the

23 junior secured notes be required to respond a little more

24 quickly.  But aside from that, I think we can get through this

25 in the next day or two.

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1          THE COURT:  Well, my response is to lock you all in a

2     room and say don't come out until you're done, you know,

3     however long that takes --

4          MS. LEVITT:  Maybe I want to be careful what I wish

5     for.

6          THE COURT:  -- that's fine, you know, I am --

7          MS. LEVITT:  Okay.  Well, we will endeavor to do this

8     in the next day or two.

9          THE COURT:  Okay.  Let me just -- okay.  I want this

10    to get resolved quickly, okay?  You know, I leave on vacation

11    at the end of the month.  There's a lot of things that are

12    going on that -- you know, discovery and things that are going

13    to go on.  You need to get the issues clarified, so everybody

14    knows what it is you're preparing for trial on.

15          Mr. Shore, when do you think you can finish this up?

16          MR. SHORE:  There are actually two documents that are

17    in the works.  We got one on Thursday, which is the actual

18    statement of issues; that which is going to be phase one, phase

19    two.  Again, I don't know that we're that far apart.  We came

20    back with some textual evidence us on that.  What hadn't been

21    done and which we did Friday and over the weekend was the

22    modification to the scheduling order to talk about the

23    discovery issues.  And that's what we haven't talked about,

24    Your Honor.  We had addressed documents.  What are we doing

25    with respect to documents?  What are we doing with respect to

1    depositions and the like?  We provided that to them.  I believe

2    we can engage quickly on this and get it done, a couple of

3    days, I think is my assessment.

4              THE COURT:  You know, the best way to engage quickly

5    is do it in the same room and let's avoid dueling e-mails,

6    resulting in dueling correspondence with the Court.  So, I am -

7    -I am directing you all to meet face-to-face and get these

8    issues resolved.  I mean as to the statement of issues, I can't

9    believe you can't get it resolved.

10             MR. SHORE:  I don't --

11             THE COURT:  I want it done sooner rather than later

12   because you all -- so you all can get on with the rest of your

13   work.

14             MR. SHORE:  Very good, Your Honor.

15             MR. HOROWITZ:  And, Your Honor, Greg Horowitz on

16   behalf of the creditors committee.  I think we're very close on

17   the statement of issues.  I'm confident that will be done.  We

18   do have a very -- we have a big deadline tomorrow for motions

19   to dismiss.  So I don't anticipate that will get in the way but

20   a face-to-face meeting in the next twenty-four hours will be

21   difficult for us.

22             THE COURT:  Okay.  All right.  My computer managed to

23   shut itself down updating, so I can't -- I've got to wait until

24   it reboots here to get -- look at the schedule.

25             Do you know what, yes, I will give you a couple of

1   more days to get it done but it's got to get done, you know,

2   certainly no later than Thursday of this week this needs to be

3   resolved or I will just resolve it.  Okay.

4          So, obviously I read the two letters that were sent

5   today; the White & Case letter and the Morrison & Foerster

6   letter and with respect to the discovery disputes some of this

7   deals with what has to be logged in the privilege log and then

8   ultimately what privilege may or may not apply.

9          So, let me deal first with the common interest

10  privilege.  Okay.  You may have all looked at these already but

11  I want to call to your attention one published opinion in one

12  order that I've entered.  The published opinion is In re Velo

13  Holdings, Inc., 473 B.R. 509, (Bankr. Court S.D.N.Y. 2012)

14  which deals specifically with common interest privilege.

15         The issues involved in Velo were a little different

16  than the issues here but I set out the legal principles that

17  apply to common interest privilege.  Closer to the mark for you

18  all is an order that I entered in In re Almatis B.V. -- Almatis

19  is A-L-M-A-T-I-S, B.V.  It's case number 10-12308 and it's ECF

20  docket number 222.  And it's order re: discovery dispute

21  between Oaktree Capital Management and junior lenders.  And it

22  specifically dealt with the applicability of common interest

23  privilege to a plan support agreement, to the communications of

24  the parties regarding plan support agreement.

25         When you look at it, you'll see that the discussion in

1  the log, I cut and pasted and put into the Velo opinion for the

2  most part but it dealt specifically with common interest

3  privilege assertions with respect to communications of the

4  parties to a plan support agreement, very much like what you

5  raised but what you'll see is that the order in turn refers to

6  an earlier order I entered in the case which overruled in part

7  objections and then in the order that I've just referenced, ECF

8  222, I concluded in substance that common interest privilege

9  would not apply to communications any earlier than the signing

10 of the PSA.  And as to communications after the PSA were

11 signed, I basically said they may be protected by common

12 interest privilege but you've got to go through the various

13 tests that the Courts have established that determine whether

14 specific communications were or were not protected by the

15 common interest privilege.  And I'll just read you from page

16 5 -- one paragraph from page 5 because it may provide you some

17 guidance.

18        "Once the plan support agreement was signed on March

19 7, 2010, Oaktree, the debtors, and the senior coordinating

20 committee may" -- and that's in italics -- "may well have

21 shared a common legal interest sufficient to invoke the

22 privilege with respect to drafts and e-mails of the disclosure

23 statement and plan.  The Court cannot, however, finally resolve

24 the issues with respect to such documents without a fuller

25 record.  A privilege log, declarations and deposition testimony

 1  is required before the Court can resolve the privilege issues

 2  with respect to documents exchanged after March 7, 2010.  If

 3  necessary, the Court will review the alleged privileged

 4  documents in camera."

 5          There's more in here but basically, when you read Velo

 6  and you read the Almatis order, just the fact that parties have

 7  signed a PSA is not in itself sufficient to determine whether

 8  there's common interest privilege.  So, you can all -- you all

 9  ought to read these two and Almatis, I think is closest to the

10  mark for what the issue is you seem to be raising.

11          And, you know, the last paragraph of this Almatis

12  order, "The parties should confer with respect to the remaining

13  discovery issues not resolved by this order.  They should

14  endeavor to agree on procedures for resolving the disputes with

15  a court hearing, if necessary.  Counsel should contact the

16  Court to make arrangements for a hearing."

17          Once I provided this guidance, they resolved the

18  remaining issues and I didn't have the matter back again.  So,

19  to the extent that the debtors or the committee or others were

20  seeking not to have to log communications as to which they're

21  asserting a common interest privilege, I think you're going to

22  have to do that.  It's what I required in Almatis and that's

23  what I am going to require here, I mean unless you can work it

24  out.  I don't know where you're -- whether your dispute is all

25  post-signing of the PSA, pre-signing of the PSA --

1        MS. LEVITT:  It's all post-signing, Your Honor.

2        THE COURT:  Okay.  And that's, you know -- and you'll

3    see that I said, yeah, it could.  There could be common

4    interest privilege.  It has to relate to a legal matter.  So

5    you'll -- in that, I mean I certainly can't determine from the

6    correspondence that's been submitted.  So, you know, you ought

7    to read this stuff and see whether you can agree how you're

8    going to go about resolving the remaining issues and if

9    necessary, you'll go forward, create a privilege log and

10   what -- I believe what I did in the Almatis case as I do in

11   most all discovery disputes because I couldn't -- I didn't

12   resolve the issues in Almatis without something in writing, so

13   I gave the parties an opportunity to submit short letter briefs

14   and it got resolved very quickly.  I think, you know, this

15   order was entered within a day or two after I got the five-page

16   letter briefs, I think is what they were.  So that's my

17   guidance to you all with respect to the common interest

18   privilege issues.

19       With respect to the mediation privilege, Mr. Shore,

20   why don't you explain to me why you think you're entitled to

21   communications relating to -- for which mediation privilege

22   privileges have been asserted?

23       MR. SHORE:  Let me maybe better articulate why we're

24   here right now and then explain what we want with respect to

25   mediation privilege at this point.  We've agreed on almost all

1    custodians.  We've agreed on search terms.  We're hoping that

2    the debtors are starting to upload the documents and starting

3    to review the documents.

4         What's been articulated to us about that review is

5    when doing the documents, they're going to mark documents

6    privileged and then mark documents not privileged and

7    producible.  And the not privileged will be a mélange of

8    attorney-client, mediation discussions, work product

9    discussions, joint defense discussions and the like and then

10   we're going to end up with some database of seven million

11   privileged documents.  We're not asking for all those to be

12   scheduled.  One category of those will be mediation privileged

13   documents.

14        It may be that when they decide to proceed with phase

15   one or phase two, that they do not assert that what happened in

16   the mediation is relevant to anything that's going on.  Where

17   we are having a problem and it came up in connection with the

18   FGIC discovery not having to do with this action at all.  We're

19   not going to discuss that here but fundamentally, to the extent

20   the debtors are going to be taking the position that the

21   mediation was an arms' length process that resulted in

22   settlements that disposed of phase one or phase two issues, we

23   have a problem with them then taking the position

24   categorically, you're not entitled, not even on an attorneys

25   eyes only basis or otherwise, those documents are privileged

1  from disclosure.  No discussion that any party had either at

2  the mediation or in connection with the mediation will be

3  produced.

4         If that's the position they're going to take, they

5  can't then also take the position that but the mediation was

6  robust and arms' length and there was back and forth that took

7  place and this was a material element of the mediation and

8  whatnot.

9         So what we're asking now is that when they're in the

10  process of reviewing the documents in the first instance,

11  segregate out that to which they say there's going to be a

12  mediation privilege asserted.  We'll figure out how many

13  documents there are, figure out whether a log of that is going

14  to be necessary.  If there are only a thousand documents, a lot

15  isn't a problem.  If we're kicking out hundreds of thousands of

16  documents, we'll have to talk about a way in which we configure

17  out how much of that is are you going to the mediation?  Yes,

18  I'm going to the mediation.  How about you?  Yes.  All that

19  kind of stuff to take out, so that we're really actually

20  talking about substance.

21         It may be that they never take the position in phase

22  one or phase two that the mediation is relevant and what was

23  discussed in the mediation is in any way relevant to Your

24  Honor's determinations but if they do, I don't want to be in a

25  position where the debtors say but now we have to go back

1  through seven million documents and try to pull out that which

2  was the mediation.  I'm just trying to at the start before they

3  start the sorting process, let's pull mediation out aside.

4  Again, common interest should be pulled out from our

5  perspective and the work product.  That is to the extent that

6  they -- it sounds like that although from the letter this

7  morning, we may have resolved that now but to the extent that

8  there are direct communications between business people and the

9  FAs, that's not going to be claimed to be work product, you

10 know, on a blanket basis.  If they want to claim privilege with

11 respect to that, let's separate that out and then we'll come up

12 with some sizable or some quantum of documents and we can

13 decide what to do.  But I just don't want to be given how fast

14 we're moving, in a position where we're getting delay at a

15 later date because they go back and say well, we got the big

16 bucket of non-producing -- responsive but privileged documents

17 and then say but we haven't sorted that in any way because now

18 is the time, as a practical matter in reviewing -- no one's

19 reviewing hard documents, they're just saving screen shots.

20 They should be sorting those now and we can address them later.

21 It may be that we can work out issues with respect to joint

22 defense and the like.  I just don't want to be in the process

23 where you have to delay later if Your Honor rules well, now

24 you've opened the door on mediation documents.  You're going to

25 have to produce them and then them say well it's going to take

 1  weeks for us to do that.

 2          THE COURT:  Ms. Levitt?

 3          MS. LEVITT:  Your Honor, we are never going to open

 4  the door to the production of mediation documents.  I think

 5  that the general order of this Court, M-390, in addition to

 6  your Court's December -- this Court's December 26, 2012 order,

 7  could not be more clearer that all discussions among any

 8  mediation parties in or out of the presence of the mediator,

 9  all mediation statements and other documents or information

10  provided to the mediator or the mediation parties in the course

11  of the mediation and go on to list all different things, shall

12  be strictly confidential and not admissible for any purpose.

13          THE COURT:  So that would include -- I take it you

14  would agree that the proponents of the plan or in the case of

15  FGIC -- the FGIC settlement, the proponents of the FGIC

16  settlement cannot have a reliance on mediation defense.

17          MS. LEVITT:  Correct.

18          THE COURT:  I mean it's just like you can't assert a

19  reliance on advice of counsel and then refuse to produce the

20  advice you got.

21          MS. LEVITT:  Correct, Your Honor and we've actually

22  had that conversation numerous times with the junior secured

23  noteholders.  We are not asserting reliance on mediator.  They

24  will test, as they want or object to the process but the

25  mediation was held, we believe with Judge Peck in a good faith

1  proceeding and none of those documents are admissible.

2  Therefore, we don't understand why we're here talking about

3  discovery requests about them or logging of them.  It is an

4  improper request.  Logging is unnecessary because they're not

5  going to be able to challenge our mediation confidentiality

6  objection.

7          We also think that this is clearly a phase two issue.

8  We're talking about approval of the global settlement that was

9  reached in the mediation.  It has nothing to do with this

10 proceeding.  So, putting that piece aside as well, we don't

11 believe that we should be forced in this proceeding to be

12 collecting, logging, reviewing, mediation confidentiality

13 materials.

14         I don't know how many more times the Court is going to

15 have to go through this but I thought that was also determined

16 in the FGIC proceeding.

17         THE COURT:  Mr. Shore, why aren't you satisfied by Ms.

18 Levitt's statement that the plan proponents are not -- have no

19 intention of relying on the mediation as a basis for approving

20 the plan or in the case of the FGIC, I mean we're not arguing

21 about the FGIC settlement now.

22         MR. SHORE:  Well, I am going to ask for one

23 clarification because you said mediation and I said mediation

24 and I got reliance on mediator.  I think that -- and that may

25 be where the distinction has been drawn in the past.  Now I am

1  not getting it was reviewed by Judge Peck and approved by Judge

2  Peck.  Rather, this was all part of an arms' length global

3  process in which everybody got in the room and we all talked

4  and the --

5          THE COURT:  Well, whether they were all in the room or

6  not, I mean when -- because there were a lot of communications

7  that went on outside of the room.  You know, as I've said

8  before, Judge Peck and I have not talked about the substance of

9  anything that went on during the mediation but I think it was

10  said here and in this much he's told me, I know he was making

11  the rounds having separate meetings with parties and then he

12  would communicate with others about it.  So, yes, there were

13  the all hands mediation sessions.  There's been discussion of

14  that at some prior hearings and there have been lots of

15  separate discussions that Judge Peck with parties and what I --

16  tell me again what aspect of what Ms. Levitt said are you is

17  giving you pause?

18          MR. SHORE:  There are two issues.  There are two

19  issues; one is, I do not believe the debtors cannot produce the

20  documents and argue anything about the mediation, whether it

21  was that the --

22          THE COURT:  Well there was a mediation.  I mean

23  everybody knows there was a mediation.

24          MR. SHORE:  There's no question there was a mediation

25  and people showed up but statements like --

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1           THE COURT:  And you didn't.

2           MR. SHORE:  Right.  Well, we did, Your Honor.

3           THE COURT:  Okay.

4           MR. SHORE:  The --

5           THE COURT:  It's your clients who didn't.

6           MR. SHORE:  The fact that there were mediation

7  sessions, fine, we get all that.  But statements that these

8  were arms' length, hard fought negotiations and whatnot, that's

9  where they start saying -- they start getting into the

10 substance.  To the extent -- look, you don't need in a 9019 to

11 show that there were any negotiations.  You could have decided

12 onto arbitrary numbers.  The Court's going to have to make a

13 determination at that point as to whether that is an

14 appropriate number under the case law and the like but they

15 can't have it both ways.  So it's not --

16          THE COURT:  But there was -- let me just stop you

17 there for a second.  There's one aspect about the mediation as

18 to which I already ruled and I don't think it has any impact

19 with respect to what you're all discussing now and at the

20 hearing on approval for the PSA, I don't remember whether you

21 took this position or not, there were a number of parties,

22 objectors to the PSA who took the position that the entire

23 fairness doctrine should apply because AFI was a party to the

24 PSA.

25          And in that respect, I didn't go back this morning to

1  look at the opinion, but I concluded that the business judgment

2  rule applied; entire fairness doctrine did not.  The fact that

3  AFI was a signatory and was part of the mediation process I

4  concluded that entire fairness didn't apply.  But that is the

5  only respect in which I've taken the mediation into account.

6  It's only with respect to what the standard for review was and

7  I know I explicitly did that.

8          MR. SHORE:  Understood, Your Honor.  I just want to --

9  and all I said today was with respect to the mediation

10  documents, let's just not throw them into a giant barrel of

11  documents.  Let's keep them segregated because I believe based

12  upon what the debtors have in their disclosure statement, based

13  on the position they've taken in connection with FGIC at this

14  point, that they will be taking the position that Your Honor

15  should be making findings of fact with respect to the substance

16  of the mediation.  If they don't, that may resolve that issue

17  entirely.

18          But let me make another point though.  Your Honor

19  saying that the documents are strictly confidential does not

20  make them privileged from disclosure.  The position that the

21  debtors want to take now is whether we log them or don't log

22  them, we are going to be asserting that the documents are

23  privileged.  The fact that they may not be admitted into

24  evidence does not make them undiscoverable under Rule 26.  They

25  may lead to the production of discoverable evidence, to the

1   extent they are produced.  So all I am asking for today is to

2   have Your Honor --

3             THE COURT:  If you're asking for all of the mediation

4   documents to be logged, I will give you two days to submit a

5   letter brief on why the mediation privilege is not a bar to the

6   discovery of the documents.  Look, I'm not -- you know, the

7   mediation went on for what, five months, six months.  I mean it

8   went on for a long time.  There were lots of communications.  I

9   see Judge Peck going in and out of the courthouse all the time

10  to make the rounds to everybody and I am not going to make

11  people log those unless and until -- and you're correct in this

12  respect, I don't want a bait and switch, not by you but by

13  other parties, to find out at the time of an evidentiary

14  hearing on the FGIC settlement or plan confirmation or your --

15  the JSN trial, that -- when I say bait and switch, that

16  suddenly proponents are arguing that, you know, because of the

17  mediation what was done in the mediation, the result of the

18  mediation, that I have to approve it and you're not entitled to

19  see what happened.  So --

20            MR. SHORE:  That's why I am trying to protect against,

21  Your Honor.

22            THE COURT:  If -- and I analogize it -- I'm sure the

23  analogy is imperfect but analogize it to the reliance on advice

24  of counsel.  If you're going to rely -- the analogy makes it

25  you're relying on the mediation, you can't -- you know, you're

RESIDENTIAL CAPITAL, LLC, ET AL.                    30

1   going to have a harder time convincing me that I shouldn't

2   require disclosure, it's different than what comes into

3   evidence but I shouldn't require disclosure of communications

4   relating to the mediation.

5           Mr. Horowitz, you want to say something?

6           MR. HOROWITZ:  Yes, thank you, Your Honor.  I did

7   just -- I think it's important to note there is a distinction

8   between the advice of counsel situation and the distinction is

9   this.  We don't actually have the power to divulge these

10  documents.  The general order M-390 states you know, in Section

11  5.1, "Any statements made by the mediator, by the parties or

12  others during the mediation process shall not be divulged by

13  any of the participants in the mediation or their agents or by

14  the mediator to the Court or any third party."

15          THE COURT:  So you would agree then that the

16  proponents of either the FGIC settlement or of the plan and

17  disclosure statement can't rely on anything that occurred

18  during the mediation, other than -- I mean we've got -- there's

19  a proposed plan that people have signed onto a PSA saying

20  they'll support it if it's consistent with it.

21          MR. HOROWITZ:  I do agree with that, Your Honor.  I'm

22  just saying that to the extent Mr. Shore or the Court is

23  concerned with the bait and switch, given that there is no

24  power to -- like there is to waive attorney-client privilege

25  here, there is no power to divulge.  I think Judge Peck might

1   have something to say about that.

2           If somebody tries, I think the appropriate response is

3   for the Court to ignore or --

4           THE COURT:  Okay.

5           MR. HOROWITZ:  -- preclude that kind of argument, not

6   to say ah-hah, you've waived the privilege.  It's not a

7   privilege.

8           THE COURT:  Okay.

9           MR. HOROWITZ:  I haven't used the term mediation

10  privilege.

11          THE COURT:  That's fine.

12          MR. HOROWITZ:  It's a rule against disclosure of

13  mediation materials.

14          THE COURT:  And I made clear before, you know, I can't

15  imagine ordering disclosure of what went on in the mediation.

16  Now the one thing that, you know -- if some party violates the

17  rule, we'll deal with it at the time.

18          MR. HOROWITZ:  Okay.

19          MS. LEVITT:  Your Honor, if I just may clarify.  I'm

20  just wondering why we are briefing the question of mediation

21  documents now when it has nothing to do with this hearing and

22  may come up later and FGIC --

23          THE COURT:  But I read the letters -- what you're

24  saying seems to make sense but if I am going to hear every week

25  from Mr. Shore that he thinks that this stuff has to be logged,

 1  I want to deal with the issue right now.

 2            MS. LEVITT:  Thank you, Your Honor.

 3            THE COURT:  And --

 4            MR. HOROWITZ:  I did mean to mention that, Your Honor.

 5  I can only speak for the committee but Mr. Shore's request that

 6  when we are going through and reviewing and tagging documents

 7  for withholding, we agreed that we will tag specifically --

 8            THE COURT:  Okay.

 9            MR. HOROWITZ:  -- why it is withheld.  I don't

10  understand him to be asking for a log at the moment.  I

11  understand him to be asking for segregation and speaking for

12  the committee, that's something we can do.  We don't anticipate

13  it will ever become necessary to use those tags.

14            THE COURT:  All right.  Are you satisfied with that,

15  Mr. Shore?

16            MR. SHORE:  If, in fact, look --

17            THE COURT:  You didn't answer my question; yes or no?

18            MR. SHORE:  Yes, if in fact what they're doing is they

19  are breaking it down between attorney-client communication --

20  we can go over the categories when we sit down but they've got

21  to do something more than privileged.  It's got to be

22  specifically to mediation privilege, work product protection,

23  with respect --

24            THE COURT:  But that's the whole point, the issue is

25  are they going to have to log it, okay?

RESIDENTIAL CAPITAL, LLC, ET AL.                          33

1          MR. SHORE:  And what I said with respect to the

2   logging is it may or may not be necessary -- first of all, it

3   may or may not be prohibitive to log it.  The reason you don't

4   log it individually is only because you're looking at a 5,000

5   page privilege log which nobody gets anything out of anyway.

6   So, it may be a limited number of documents within a certain

7   subset of documents.

8          But with respect to actual logging when we get there,

9   we may not need to go through the production of a 5,000 page

10  log if, in fact, they don't for example, take the position that

11  the mediation is somehow relevant to a phase one, phase two

12  issue.  The position I've been getting from the debtors is

13  we're just not going to not even log, we're just not going to

14  go through and talk about why it's in this 7,000 document --

15          THE COURT:  And you think they have to log it?

16          MR. SHORE:  I don't think they have to log right now.

17  I think what they have to do is they have to specify which of

18  the individual categories it goes to.

19          THE COURT:  If they don't log it, I don't understand

20  what that means, Mr. Shore.  Okay.  Look, I'm going to put a

21  stop to this right now.  Mr. Shore, if you think they have to

22  log the documents, I want a letter brief by Wednesday at 3

23  o'clock.  Okay?  And I mean we -- and so you sort this out when

24  you leave court today.

25          If you can't resolve it, I want letter briefs from

1  both sides.  Hopefully the committee and the debtor will just

2  submit one letter --

3          MS. LEVITT:  Yes, we will.

4          THE COURT:  -- by 3 o'clock on Wednesday.  And we'll

5  have a hearing, if necessary, on Thursday at 2 o'clock.  Okay?

6  This seems an utter waste of time to me, okay?  I agree with

7  Mr. Horowitz, this is even -- this is a clearer case than the

8  reliance on advice of counsel because our general order with

9  respect to mediation makes it clear, it can't be disclosed

10  period; full stop.

11          I am going to limit the letter briefs to five pages

12  each.  I don't think this is a complicated issue but I want

13  this put to rest.

14          MS. LEVITT:  Your Honor, there was one last issue in

15  the junior secured noteholders' letter.  I don't believe it's

16  at all an issue.  It has to do with financial advisors.  I

17  think we don't need to bother the Court.  We have absolutely

18  not taken the position they said in their letter.  We agreed at

19  the meet and confer that we would log documents between

20  financial advisors and clients that might be privileged.  We

21  will produce those that are not privileged.  The only thing

22  that we had agreed upon as an exception is that no party had to

23  log communications between their financial advisor and their

24  lawyers because those are undoubtedly privileged.  I thought

25  that was the party's agreement.  If it's not, that's what we

RESIDENTIAL CAPITAL, LLC, ET AL.                    35

1    would propose that the Court enforce.

2              THE COURT:  Mr. Shore?

3              MR. SHORE:  Other than that they're undoubtedly

4    privileged, I don't know that they are or are not undoubtedly

5    privileged but they don't need to log the individual ones that

6    go between the attorneys and the FAs with respect to the

7    production of materials.

8              THE COURT:  What's good for one of you is good for all

9    of you, so --

10             MR. SHORE:  Understood.  Direct communications between

11   the clients or the debtors in that instance in the FAs will be

12   either produced or logged.  The other ones won't.

13             THE COURT:  Everybody agrees with -- about that?  You

14   have to answer yes, sir, Mr. Horowitz.

15             MR. HOROWITZ:  Yes, Your Honor.

16             THE COURT:  On behalf of the committee, Ms. Levitt?

17             MS. LEVITT:  Yes, Your Honor, I thought that was

18   audible.

19             THE COURT:  All right.  Are you satisfied with that

20   response, Mr. Shore?

21             MR. SHORE:  Yes, Your Honor.

22             THE COURT:  Okay.  To the extent there are unresolved

23   issues about discovery, so I've given you a deadline for letter

24   briefs, we'll have a hearing on Thursday at 2 o'clock.  You can

25   advise me whether it's necessary to go forward with that

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

1  hearing or not.  Hopefully, it won't be necessary, all right?

2  But I want to keep this train moving down the tracks, all

3  right?

4           MS. LEVITT:  Will do, Your Honor.

5           THE COURT:  And likewise, the -- if you have not, you

6  need to resolve the statement of issues by Wednesday at 3

7  o'clock, as well.  All right?  That's a couple of days to -- I

8  know you've got --

9           MR. HOROWITZ:  That will be good, Your Honor.

10           THE COURT:  -- motions to dismiss that you're working

11  on, Mr. Horowitz but -- okay.  And we'll take that up on

12  Thursday -- if necessary, I'll take that up on Thursday, as

13  well.  All right?  Hopefully it won't be necessary.

14           All right.  Anything else for today?

15           MS. LEVITT:  No.

16           THE COURT:  All right.  We're adjourned.  Thank you

17  very much.

18        (Whereupon these proceedings were concluded at 11:43 AM)

19

20

21

22

23

24

25

1                            I N D E X

2

3                              RULINGS

4                                             Page      Line

5  Fourth, Fifth, Sixth, Seventh Eighth and    12        17

6  Ninth omnibus objections sustained as

7  outlined on the record

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Linda Ferrara, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8                    _Linda Ferrara_

9

10   _____

11   LINDA FERRARA

12   AAERT Certified Electronic Transcriber CET**D-656

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  July 16, 2013

19

20

21

22

23

24

25