Hearing Date and Time: July 26, 2013 at 10:00 a.m. (ET)

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi
Naomi Moss
James A. Newton

*Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OMNIBUS REPLY TO RESPONSES TO DEBTORS' MOTION
FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND
BANKRUPTCY CODE SECTION 363(b)(1) AUTHORIZING THE DEBTOR
TO ENTER INTO AND PERFORM UNDER AMENDMENT TO CONSENT ORDER**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") submit this reply (the "**Reply**") to Responses[1] to the *Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the*

---

[1] The "**Responses**" include the *Objection of Gerard Wiener to Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019, etc.* [Docket No. 4292] (the "**Wiener Objection**"); the *Reservation of Rights of Ad Hoc Group of Junior Secured Noteholders with Respect to Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the Debtors to Enter into and Perform Under Amendment to Consent Order* [Docket No. 4296] (the "**Ad Hoc Reservation**"); and the *Creditor Pro Se's Objection to Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Section 363(b)(1) Authorizing the Debtors to Enter Into and Perform Under Amendment to Consent Order* (the "**Reed Objection**") [Docket No. N/A].

ny-1100681

*Debtors to Enter Into and Perform Under Amendment to Consent Order* [Docket No. 4228] (the "**Motion**").[2] In support thereof, the Debtors respectfully represent as follows:

## INTRODUCTION

1. The Debtors, in their reasonable business judgment, determined that entry into and performance under the Amendment is in the best interests of the Debtors' estates, including the borrowers who may have been allegedly harmed by the Debtors' alleged foreclosure improprieties. That is because (i) these estates will avoid the immense administrative expense burden required to complete the FRB Foreclosure Review and (ii) the Amendment is expected to result in payment of more money to more borrowers, irrespective of harm, within a shorter time frame. If the FRB Foreclosure Review were to continue, the Debtors would be required to resume paying approximately $300,000 per day to professionals on an administrative basis to conduct the review without any reason to believe that borrowers would receive greater recoveries than what will be received under the Amendment. Additional payments to professionals would reduce assets available for distribution to all of the Debtors' creditors. Based on these considerations, the Debtors believe that entry into and performance under the Amendment is in the best interests of these estates.

2. Despite being well intentioned, the FRB Foreclosure Review has proven to make little sense.[3] As a result, the FRB, the governmental entity charged with investigating foreclosure improprieties, has determined that it is in the best interests of borrowers to allow mortgage servicers to make one-time cash payments in satisfaction of the foreclosure review

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.
[3] See Remarks of Ben Bernanke, Chairman of the Federal Reserve before the House Financial Services Committee at 17 (Feb. 27, 2013) (explaining that the foreclosure review plan originally put in place was "not working"); Remarks by Thomas J. Curry, Comptroller of the Currency, before Women in Housing and Finance at 5 (Feb. 13, 2013), available at http://www.occ.gov/news-issuances/speeches/2013-pub-speech-2013-28.pdf ("[i]t just doesn't make sense for these servicers to continue funneling money to consultants that could be better used to help distressed borrowers.").

requirements contained in their respective consent orders. The Debtors' request to enter into and perform under an Amendment containing similar terms to those contained in the Non-Debtor Settlements is supported by, among others, the Creditors' Committee, its members and parties to the Debtors' Plan Support Agreement.[4] The Creditors' Committee is a fiduciary for all of the Debtors' unsecured creditors, including borrowers, and supports the Debtors' entry into and performance under the Amendment. The Debtors believe that the terms of the Amendment are fair, equitable and eminently reasonable to the Debtors' estates and creditors, thereby satisfying the standards of Bankruptcy Rule 9019. As described above, the Debtors also believe that performance under the Amendment is in the best interests of these estates. Accordingly, the Debtors respectfully request that the Court overrule the Responses and authorize the Debtors to enter into and perform under the Amendment.

3. The Wiener Objection and Reed Objection miss the mark. These Responses primarily object as purported beneficiaries under the Consent Order, not as creditors entitled to object to the reasonableness of the terms of a settlement. However, borrowers (and all other third parties) are explicitly precluded by the terms of the Consent Order from asserting any rights thereunder.[5] As a result, the Wiener Objection and Reed Objection should be summarily overruled to the extent that they object on the basis that the Debtors' entry into and performance under the Amendment will alter the rights of the borrowers that would have had their loan files reviewed pursuant to the Consent Order. Moreover, based on the factual inaccuracies and

---

[4] The Ad Hoc Group of Junior Secured Noteholders affirmatively indicated in its response to the Motion that it does not object to the Debtors' entry into and performance under the Amendment. Instead, the Ad Hoc Reservation simply seeks clarification that the Debtors would not use the Junior Secured Noteholders' cash collateral to make the payments. The Debtors utilized unencumbered cash to fund the escrow of the Settlement Amount.

[5] Consent Order ¶ 30 (Nothing in this Order, express or implied, shall give to any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy, or claim under this Order.)

incorrect legal arguments described below, the Wiener Objection and Reed Objection should be overruled on their merits.

## THE RESPONSES

**A.     The Wiener Objection**

4.      The arguments espoused in the Wiener Objection are misguided. At its core, the Wiener Objection complains that (i) under the Amendment, "no 'independence' will exist" (Wiener Objection ¶ C) and (ii) the Debtors do not justify the Settlement Amount (Wiener Objection ¶ H.2). The Amendment, however, will not dispose of the concept of independence featured in the original Consent Order. Although initially, the Debtors will place the borrowers into waterfall categories, the placement process will be a mechanical one, based on loan file characteristics determined by the FRB. Moreover, an independent third party will conduct the validation of waterfall placement required by the FRB, and the FRB will also review and verify the waterfall placement before any settlement funds are disbursed to borrowers.[6] Additionally, under the Amendment, the Debtors could choose to have certain limited categories of borrower files reviewed by an independent third party, and they have elected to do so.

5.      The second concern voiced on behalf of Mr. Wiener, likewise, is misplaced. The Amendment is not an invention conceived by the Debtors to harm borrowers. Instead, the Amendment – like the Non-Debtor Settlements – embodies a fair and reasonable settlement amount and is intended to compensate borrowers on a more efficient basis. Pursuant to 12

---

[6] The Amendment states that the Debtors' "placement of the In-Scope Borrower Population into the Borrower Waterfall [may] be reviewed independently by ResCap's and/or GMAC Mortgage's internal audit or compliance function or, if ResCap and GMAC Mortgage no longer have audit or compliance functions, by an independent third party acceptable to the Regulator." See Amendment ¶ 3. As of today, the Debtors no longer have the requisite audit or compliance function, so any validation will necessarily be conducted by an independent third party.

C.F.R. § 261.20(g)[7] the Debtors are prohibited from disclosing confidential supervisory information, including the basis for the Settlement Amount, without FRB approval. As a result, the underlying settlement discussions between the Debtors and the FRB cannot be explained in connection with the Motion without prior approval from the FRB. Mr. Kruger's declaration in support of the Motion provides that the Settlement Amount was calculated in a manner consistent with the settlement payments made under the Non-Debtor Settlements. The Debtors believe that this fact demonstrates that the Settlement Amount is reasonable under the circumstances.

6.   Moreover, although the Debtors' total administrative cost for the settlement will be reduced under the Amendment, the amount of money available to a larger group of borrowers will be somewhere between 270% and 560% of the aggregate projected restitution payments had the FRB Foreclosure Review been completed. And borrowers will receive payment much sooner, without enduring the substantial lag present under the original FRB Foreclosure Review. For these reasons as well, the Debtors believe that the terms of the Amendment will benefit, collectively, borrowers within the FRB Foreclosure Review population and the Debtors' creditor constituencies as a whole. Accordingly, the Court should overrule the Wiener Objection and grant the relief requested in the Motion.[8]

---

[7] 12 C.F.R. § 261.20(g) provides, in relevant part:
   All confidential supervisory information or other information made available under this section shall remain the property of the Board. No supervised financial institution, financial institution supervisory agency, person, or any other party to whom the information is made available, or any other officer, director, employee or agent thereof, may disclose such information without the prior written permission of the Board's General Counsel except in published statistical material that does not disclose, either directly or when used in conjunction with publicly available information, the affairs of any individual, corporation, or other entity.

[8] It bears reiterating that Mr. Wiener's representative does not appear to object to the Settlement Amount as a creditor of the Debtors' estates – *i.e.*, objecting that the Debtors are paying too much to settle the FRB Foreclosure Review obligation. Instead, as described above, his representative appears to object on the basis that Mr. Wiener was a purported beneficiary under the Consent Order, contending that the Settlement Amount may be too low. The Consent Order specifically prevents this type of argument.

B.    **The Reed Objection**

7.    Likewise, the Reed Objection should be overruled. Mr. Reed's allegation that the Debtors are trying to escape compliance with the Consent Order is incorrect. The Debtors are not attempting to renege on their promise to comply with the Consent Order. In fact, the Debtors are requesting to continue to comply with the Consent Order. The Amendment would merely modify the terms of the Consent Order to ensure that borrowers can be paid by the Debtors without even any showing of harm.

8.    Additionally, the Reed Objection calls for application of law inapplicable to the facts at hand. Neither judicial nor equitable estoppel principles preclude the Debtors from entering into the Amendment. The Supreme Court, in *New Hampshire v. Maine,* 532 U.S. 742 (2001), applied the following three-part test in determining whether a party was judicially estopped from taking a position after earlier making statements regarding the same subject matter: "[f]irst, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 743.

9.    The Debtors are not at this time taking the position that compliance with the Consent Order is no longer required. To the contrary, as discussed in the Motion, the Plan Support Agreement and the Plan both contemplate continued performance under the Consent

6

ny-1100681

Order. The Debtors are not "changing positions." Rather, if the Amendment is approved, they will continue to perform their obligations under the Consent Order, as amended.[9]

10. Similarly, equitable estoppel, which is intended to ensure fairness between parties, is inapplicable to the situation here. "[A] party may be [equitably] estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely on it; 2) and the other party reasonably relies upon it; 3) to [his or] her detriment." *In re Omnicom Group, Inc., Secs. Litig.*, 2007 U.S. Dist. LEXIS 60298 (S.D.N.Y. Aug. 10, 2007) (internal citations and quotations omitted). Mr. Reed's contentions that borrowers *may* have relied upon the Consent Order in not filing proofs of claim are unsupported and misguided. Mr. Reed appears to assume that (i) some borrowers refrained from filing proofs of claim in reliance on their anticipated – yet in no way guaranteed – award of restitution under the Consent Order and (ii) some borrowers who would have received payments under the Consent Order will not receive payment under the Amended Consent Order. Mr. Reed provides no reliable factual support for either of these contentions.

11. Borrowers remained free to assert claims against the Debtors in these chapter 11 cases whether or not they were included within the FRB Foreclosure Review population. In fact, Mr. Reed filed a proof of claim. Mr. Reed has identified no borrower that refrained from filing a proof of claim on the basis of speculative potential recoveries through the FRB Foreclosure Review process. As a result, it would be unreasonable for any borrower to have relied upon such a speculative potential recovery, especially given that borrowers explicitly have no rights to enforce the Consent Order. Consent Order ¶ 30.

---

[9] In addition, as the Reed Objection concedes, the Debtors have not previously made a statement that they would, under all circumstances, comply with the terms of the Consent Order. Instead, they have indicated their intent at points during the pendency of these chapter 11 cases, to comply with the Consent Order "to the best of their abilities." See, e.g., Whitlinger Affidavit ¶ 87.

12. Lastly, the Debtors understand that all borrowers who were within the scope of the original Consent Order will receive payment under the Amended Consent Order, so Mr. Reed's concern that some borrowers may be denied a recovery as a result of the Debtors' entry into the Amendment also misstates the effect of the settlement. For these reasons, the Reed Objection should be overruled as well.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court overrule the Responses and grant the relief requested in the Motion, and such other and further relief as is just and proper.

New York, New York  　　　　　　　/s/ Gary S. Lee
Dated: July 24, 2013  　　　　　　　Gary S. Lee
　　　　　　　　　　　　　　　　　Lorenzo Marinuzzi
　　　　　　　　　　　　　　　　　Naomi Moss
　　　　　　　　　　　　　　　　　James A. Newton
　　　　　　　　　　　　　　　　　MORRISON & FOERSTER LLP
　　　　　　　　　　　　　　　　　1290 Avenue of the Americas
　　　　　　　　　　　　　　　　　New York, New York 10104
　　　　　　　　　　　　　　　　　Telephone: (212) 468-8000
　　　　　　　　　　　　　　　　　Facsimile: (212) 468-7900

　　　　　　　　　　　　　　　　　*Counsel to the Debtors and*
　　　　　　　　　　　　　　　　　 *Debtors in Possession*

ny-1100681