*CLAIM # 4702*

# UNITED STATES OF AMERICA
## DEPARTMENT OF THE TREASURY
## COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| Aurora Bank FSB ) | **AMENDS OTS Order No.: NE-11-16** |
| Littleton, Colorado ) | |
| ) | |
| ) | |

## STIPULATION AND CONSENT TO THE ISSUANCE OF AN AMENDMENT TO APRIL 13, 2011 CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller") intends to amend the existing Office of Thrift Supervision ("OTS") Consent Order No. NE-11-16 that was issued against Aurora Bank FSB, Littleton, Colorado ("Bank") on April 13, 2011 ("2011 Consent Order"),[1] pursuant to 12 U.S.C. § 1818(b).

The Bank, in the interest of compliance and cooperation, enters into this Stipulation and Consent to the Issuance of an Amendment to the 2011 Consent Order ("Amendment to the Consent Order"), dated February 28, 2013 ("Stipulation").

In consideration of the above premises, the Comptroller, through his authorized representative, and the Bank, through its duly elected and acting Board of Directors, stipulate and agree to the following:

---

[1] Since July 21, 2011, the 2011 Consent Order has been administered by the Comptroller pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, § 311, 124 Stat. 1520-21 (2010).

*CLAIM # 4702*

# ARTICLE I

## JURISDICTION

(1)    The Bank is a Federal savings association, which was chartered and examined by the OTS pursuant to the Home Owners' Loan Act, as amended, 12 U.S.C. § 1461 *et seq.*

(2)    Pursuant to Title III of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010), all functions of the OTS related to Federal savings associations were transferred to the Comptroller.[2]

(3)    The Comptroller is "the appropriate Federal banking agency" regarding the Bank pursuant to 12 U.S.C. §§ 1813(q) and 1818(b).

(4)    The Bank is an "insured depository institution" within the meaning of 12 U.S.C. § 1818(b)(1).

(5)    For the purposes of, and within the meaning of 12 C.F.R. §§ 163.555, the Amendment to the Consent Order shall not be construed to be a "cease and desist order" or "consent order," unless the OCC informs the Bank otherwise.

# ARTICLE II

## AGREEMENT

(1)    The Bank, without admitting or denying any wrongdoing, consents and agrees to issuance of the Amendment to the Consent Order by the Comptroller.

(2)    The Bank consents and agrees that the Amendment to the Consent Order shall:  (a) be deemed an "order issued with the consent of the depository institution"

---

[2] *See* Dodd-Frank Act § 312(b), 12 U.S.C. § 5412.

2

pursuant to 12 U.S.C. § 1818(h)(2); (b) become effective upon its execution by the Comptroller through his authorized representative; and (c) be fully enforceable by the Comptroller pursuant to 12 U.S.C. § 1818(i).

(3)      Notwithstanding the absence of mutuality of obligation, or of consideration, or of a contract, the Comptroller may enforce any of the commitments or obligations herein undertaken by the Bank under his supervisory powers, including 12 U.S.C. § 1818(i), and not as a matter of contract law.  The Bank expressly acknowledges that neither the Bank nor the Comptroller has any intention to enter into a contract.

(4)      The Bank declares that no separate promise or inducement of any kind has been made by the Comptroller, or by his agents or employees, to cause or induce the Bank to consent to the issuance of the Amendment to the Consent Order and/or execute the Amendment to the Consent Order.

(5)      The Bank expressly acknowledges that no officer or employee of the Comptroller has statutory or other authority to bind the United States, the United States Treasury Department, the Comptroller, or any other federal bank regulatory agency or entity, or any officer or employee of any of those entities to a contract affecting the Comptroller's exercise of his supervisory responsibilities.

(6)      The terms and provisions of this Stipulation and the Amendment to the Consent Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.  Nothing in this Stipulation or the Amendment to the Consent Order, express or implied, shall give to any person or entity, other than the parties hereto,

3

*CLAIM # 4702*

and their successors hereunder, any benefit or any legal or equitable right, remedy or claim under this Stipulation or the Amendment to the Consent Order.

## ARTICLE III

## WAIVERS

(1)    The Bank, by consenting to this Stipulation, waives:

(a)    any and all procedural rights available in connection with the issuance of the Amendment to the Consent Order;

(b)    all rights to a hearing and a final agency decision pursuant to 12 U.S.C. §§ 1818(b) and (h), 12 C.F.R. Part 19;

(c)    all rights to seek any type of administrative or judicial review of the Amendment to the Consent Order;

(d)    any and all claims for fees, costs or expenses against the Comptroller, or any of his agents or employees, related in any way to this enforcement matter or the Amendment to the Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(e)    any and all rights to challenge or contest the validity of the Amendment to the Consent Order.

## ARTICLE IV

## OTHER PROVISIONS

(1)    The provisions of this Stipulation shall not inhibit, estop, bar, or otherwise prevent the Comptroller from taking any other action affecting the Bank if, at any time, it

4

*C/AIM # 4702*

deems it appropriate to do so to fulfill the responsibilities placed upon it by the several

laws of the United States of America.

(2)      Nothing in this Stipulation shall preclude any proceedings brought by the

Comptroller to enforce the terms of the Amendment to the Consent Order, and nothing in

this Stipulation constitutes, nor shall the Bank contend that it constitutes, a waiver of any

right, power, or authority of any other representative of the United States or an agency

thereof, including, without limitation, the United States Department of Justice, to bring

other actions deemed appropriate.

(3)      The terms of this Stipulation and the Amendment to the Consent Order are

not subject to amendment or modification by any extraneous expression, prior

agreements or prior arrangements between the parties, whether oral or written.

IN TESTIMONY WHEREOF, the undersigned, authorized by the Comptroller as

his representative, has hereunto set his hand on behalf of the Comptroller.

*/s/Kristina B. Whittaker*                        *February 28, 2013*

_____                        _____
Kristina B. Whittaker                          Date
Deputy Comptroller
Special Supervision

5

*CLAIM # 4702*

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting

Board of Directors of the Bank, have hereunto set their hands on behalf of the Bank.

 

 

_____  
William Wesp

_____  
Date

 

*/s/*  
_____  
Theodore Janulis

*2/22/13*  
_____  
Date

 

*/s/*  
_____  
Douglas Lambert

*2/22/13*  
_____  
Date

 

*/s/*  
_____  
Daniel Rabinowitz

*2/22/13*  
_____  
Date

 

*/s/*  
_____  
Michael Milversted

*2/22/13*  
_____  
Date

 

*/s/*  
_____  
Paul Makowski

*2/25/13*  
_____  
Date

6

**#2013-123**
*Amends #NE-11-16*

UNITED STATES OF AMERICA
DEPARTMENT OF THE TREASURY
COMPTROLLER OF THE CURRENCY

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| | ) |
| Aurora Bank FSB | ) |
| Littleton, Colorado | ) |
| | ) |
| | ) |

**AMENDS OTS Order No.: NE-11-16**

## AMENDMENT TO APRIL 13, 2011 CONSENT ORDER

The Comptroller of the Currency of the United States of America ("Comptroller") and

Aurora Bank FSB, Littleton, Colorado ("Bank") hereby agree to the following modifications to

Office of Thrift Supervision ("OTS") Order No. NE-11-16 dated April 13, 2011 ("2011 Consent

Order").[1]  The Bank, by and through its duly elected and acting Board of Directors ("Board"),

has executed a Stipulation and Consent to the Issuance of an Amendment to 2011 Consent Order

("Amendment to the Consent Order"), dated February 28, 2013 ("Stipulation"), which is

accepted by the Comptroller and incorporated by reference herein.  Paragraphs 14 to 19 of the

2011 Consent Order are hereby superseded by this Amendment to the Consent Order.  This

Amendment to the Consent Order, however, does not replace the other remaining Paragraphs of

the 2011 Consent Order, which shall remain in effect without modification.

WHEREAS, Paragraphs 14 to 19 of the 2011 Consent Order required the Bank, among

other things, to retain an independent consultant (the "IC") to conduct an independent review of

certain residential mortgage loan foreclosure actions or proceedings for borrowers who had a

pending or completed foreclosure on their primary residence any time from January 1, 2009 to

---

[1] Since July 21, 2011, the 2011 Consent Order has been administered by the Comptroller pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, § 311, 124 Stat. 1520-21 (2010).

*C/AIH #4702*

for such category; or (b) instruct the Bank's IC to complete file reviews for such borrowers to

determine financial injury related to Sections 521 or 533 or to not being in default.  For files

reviewed under (b), the borrower will receive payments from the Fund in amounts specified in

the June 21, 2012 Financial Remediation Framework where the IC makes a determination of

"harm."  For files reviewed under (b) where the IC makes a determination of "no harm," the

Bank will place the borrower into the next highest Borrower Waterfall category for which such

borrower is eligible, which will result in the borrower receiving payment from the Fund in

accordance with the Distribution Plan for such category.

     (5)    With respect to the borrowers in the In-Scope Borrower Population who may have

been subject to interest rate protections under Section 527 of the SCRA, 50 U.S.C. App. § 527,

as part of the Borrower Waterfall placement, the Bank shall either: (a) place the borrower into

the highest category within the Borrower Waterfall for which the borrower is eligible, which will

result in the borrower automatically receiving payments made from the Fund in accordance with

the Distribution Plan for such category; or (b) instruct the IC to complete file reviews for such

borrowers to determine financial injury related Section 527.  For files reviewed under (b), the

borrower will receive payments from the Fund for the actual amount in error, in an amount not

less than $250, where the IC makes a determination of "harm."  For files reviewed under (b)

where the IC makes a determination of "no harm," the Bank will place the borrower into the next

highest Borrower Waterfall category for which such borrower is eligible, which will result in the

borrower receiving payment from the Fund in accordance with the Distribution Plan for such

category.

     (6)    If the Bank elects to have the IC continue file review work as described in

Paragraphs (4) or (5) above, the IC review work for such files must be completed prior to the

*CLAIM #Y702*

Prevention actions; provided, that the creditable activity occurs on or after January 7, 2013.

Additionally, creditable Foreclosure Prevention actions undertaken by the Bank's parent,

affiliate, or subsidiary also subject to an Amendment to the April 13, 2011 Consent Order of the

Board Governors shall operate to satisfy the requirements under this Article.

(6)    By May 15, 2013, the Bank shall submit to the OCC a report, in a form and

manner acceptable to the OCC, that details the Foreclosure Prevention actions taken by the Bank

through April 30, 2013 to fulfill its obligations under this Article and the amount of credit sought

towards fulfilling those obligations. Thereafter, the Bank shall submit such report every forty-

five (45) days. Nothing herein shall require the Bank to report Foreclosure Prevention Actions

taken during a particular prior period for which the Bank may in the future seek credit or prohibit

the Bank from seeking credit for the Foreclosure Prevention actions taken by the bank during a

later reporting period. Additionally, the Bank shall document its efforts to prioritize the In-

Scope Borrower Population when considering creditable Foreclosure Prevention actions.

## ARTICLE V

## RELEASES

(1)    In recognition of the Bank's cash payments of $93,237,805.00 to the Fund and

Foreclosure Prevention commitments made pursuant to this Amendment to the Consent Order,

under 12 U.S.C. § 1818(b), the Comptroller will not assess a civil money penalty, under 12

U.S.C. § 1818(i), or initiate any further enforcement actions against the Bank or its subsidiaries

or affiliates, including for remedies available pursuant to 12 U.S.C. § 1818(b), with respect to:

(a) the findings contained in Paragraphs 1 to 2 of the 2011 Consent Order; (b) the matters

addressed in Paragraphs 14 to 19 of the 2011 Consent Order (including matters relating to the

work or findings of the IC or IC counsel under the IFR); and (c) any other past mortgage

*CIAIH #4702*

including the non-discrimination provisions of the Equal Credit Opportunity Act,

15 U.S.C. §§ 1691, *et seq.*, or under the Federal Trade Commission Act, 15

U.S.C. §§ 41, *et seq.*, or any other statute or law that prohibits unfair or deceptive

practices;

(e)     any and all claims against individuals, including current and former

employees, agents, officers, directors, or contractors of the Bank; and

(f)     any and all actions to enforce the terms and conditions of this Amendment

to the Consent Order.

(3)     In no event shall the Bank request or require any borrower to execute a waiver of

any claims against the Bank (including any agent of the Bank) in connection with any payment

or Foreclosure Prevention assistance pursuant to this Amendment to the Consent Order.

However, nothing herein shall operate to bar the Bank from asserting in the future in any

separate litigation, or as part of a settlement related to the Bank's foreclosure and servicing

practices, any right that may exist under applicable law to offset the amounts received by a

borrower through the distribution process set forth above. Nothing herein shall operate to amend

or modify in any respect any preexisting settlement between the Bank or an affiliate thereof and

a borrower in the In-Scope Borrower Population.

## ARTICLE VI

## EXTENSIONS AND COMMUNICATIONS

(1)     If the Bank contends that compliance with any provision of this Amendment to

the Consent Order requires an exemption or any extension of any timeframe stated within this

Amendment to the Consent Order, the Board shall submit a written request to the Deputy

Comptroller asking for relief. Any written requests submitted pursuant to this Article shall

*CLAIM # 4702*

include a statement setting forth in detail the special circumstances that prevent the Bank from

complying with a provision of this Amendment to the Consent Order, that require the Deputy

Comptroller to exempt the Bank from a provision of this Amendment to the Consent Order, or

that require an extension of a timeframe within this Amendment to the Consent Order. The

Deputy Comptroller's decision concerning a request is final and not subject to further review.

    (2)    All communication regarding this Amendment to the Consent Order shall be sent

to:

    (a)    Deputy Comptroller for Special Supervision
Office of the Comptroller of the Currency
400 7th Street, SW
Washington, DC 20219

    (b)    Director for Special Supervision
Office of the Comptroller of the Currency
400 7th Street, SW
Washington, DC 20219

## ARTICLE VII

## OTHER PROVISIONS

    (1)    Notwithstanding the execution of this Amendment to the Consent Order, the

remaining Paragraphs of the 2011 Consent Order aside from Paragraphs 14 to 19 of the 2011

Consent Order remain in full force and effect.

    (2)    If, at any time, the Comptroller deems it appropriate in fulfilling the

responsibilities placed upon him by the several laws of the United States to undertake any action

affecting the Bank, nothing in this Amendment to the Consent Order shall in any way inhibit,

estop, bar, or otherwise prevent the Comptroller from so doing.

    (3)    This Amendment to the Consent Order is and shall become effective upon its

execution by the Comptroller, through his authorized representative whose hand appears below.

*CLAIM # 4702*

This Amendment to the Consent Order shall remain effective and enforceable, except to the

extent that, and until such time as, any provision of this Amendment to the Consent Order shall

be amended, suspended, waived, or terminated in writing by the Comptroller.

(4)    Any time limitations imposed by this Amendment to the Consent Order shall

begin to run from the effective date of this Amendment to the Consent Order, as shown below,

unless the Amendment to the Consent Order specifies otherwise.

(5)    The terms and provisions of this Amendment to the Consent Order apply to the

Bank and its subsidiaries, even though those subsidiaries are not named parties to this

Amendment to the Consent Order.  The Bank shall ensure that its subsidiaries comply with all

terms and provisions of this Amendment to the Consent Order.

(6)    This Amendment to the Consent Order is intended to be, and shall be construed to

be, a final order issued pursuant to 12 U.S.C. § 1818(b), and expressly does not form, and may

not be construed to form, a contract binding the Comptroller or the United States.  Nothing in

this Amendment to the Consent Order shall affect any action against the Bank or its institution-

affiliated parties by another bank regulatory agency, the United States Department of Justice, or

any other law enforcement agency, to the extent permitted under applicable law.

(7)    The terms of this Amendment to the Consent Order, including this paragraph, are

not subject to amendment or modification by any extraneous expression, prior agreements, or

prior arrangements between the parties, whether oral or written.

(8)    Nothing in the Stipulation or this Amendment to the Consent Order, express or

implied, shall give to any person or entity, other than the parties hereto, and their successors

hereunder, any benefit or any legal or equitable right, remedy or claim under the Stipulation or

this Amendment to the Consent Order.

*CLAIM #4702*

IT IS SO ORDERED, this 28 day of February, 2013.


*/s/Kristina B. Whittaker*

_____
Kristina B. Whittaker
Deputy Comptroller
Special Supervision