CLAIM # 4702

# EXHIBIT 8

CLAIM # 4702

| CF | Class | Orig(000) | Curr(000) | Cpn | OWAL | Orig Mty | Cusip | Description |
|---|---|---|---|---|---|---|---|---|
| * | RALI 2006-QO6 A1 | 725,353 | 367,899 | 0.422 | 3.49 | 6/25/46 | 75114NAA2 | FLT, STEP |
| * | RALI 2006-QO6 A2 | 302,230 | 155,888 | 0.472 | 3.49 | 6/25/46 | 75114NAB0 | FLT, STEP |
| * | RALI 2006-QO6 A3 | 181,338 | 93,533 | 0.502 | 3.49 | 6/25/46 | 75114NAC8 | FLT, STEP, SSNR, SSUP |
| **Pd** | **RALI 2006-QO6 M1** | **26,040** | **0** | **0.559** | **6.44** | **6/25/46** | **75114NAD6** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M2** | **9,766** | **0** | **0.594** | **6.37** | **6/25/46** | **75114NAE4** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M3** | **6,510** | **0** | **0.616** | **6.31** | **6/25/46** | **75114NAF1** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M4** | **6,510** | **0** | **0.726** | **6.25** | **6/25/46** | **75114NAG9** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M5** | **6,510** | **0** | **0.785** | **6.18** | **6/25/46** | **75114NAH7** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M6** | **6,510** | **0** | **0.825** | **6.08** | **6/25/46** | **75114NAJ3** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M7** | **6,510** | **0** | **1.559** | **5.93** | **6/25/46** | **75114NAK0** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M8** | **6,510** | **0** | **1.759** | **5.7** | **6/25/46** | **75114NAL8** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 M9** | **6,510** | **0** | **2.188** | **5.39** | **6/25/46** | **75114NAM6** | **MEZ, FLT, STEP** |
| **Pd** | **RALI 2006-QO6 SB** | **11,719** | **0** | **0** | **0** | **6/25/46** | **BCC0RJB98** | **SUB** |
| | RALI 2006-QO6 R1 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAP9 | R |
| | RALI 2006-QO6 R2 | 0 | 0 | 0 | 0 | 6/25/46 | 75114NAQ7 | R |

MORTGAGE / NOTE TRANCHES

TOMAS DIAZ
LOAN NO.: 10500352 / 0010624849 / 0021953252
5200 SW 122 AVE
MIAMI, FL 33175

EXECUTION COPY

CLAIM # 4702

**EXHIBIT B**

**ALLOCATION OF ALLOWED CLAIM**

1. The Allowed Claim shall be allocated amongst the Accepting Trusts by the Trustees pursuant to the determination of a qualified financial advisor (the "Expert") who will make any determinations and perform any calculations required in connection with the allocation of the Allowed Claim among the Accepting Trusts. To the extent that the collateral in any Accepting Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Accepting Trusts for purposes of the allocation and distribution methodologies set forth below. The Expert is to apply the following allocation formulas:

(i) *First,* the Expert shall calculate the amount of Net Losses for each Accepting Trust as a percentage of the sum of the Net Losses for all Accepting Trusts (such amount, the "Net Loss Percentage");

(ii) *Second,* the Expert shall calculate the "Allocated Depositor Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Depositor Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Depositor Claims for all Accepting Trusts to exceed the amount of the Allowed Claim; and

(iii) *Third,* the Expert shall calculate the "Allocated Seller Claim" for each Accepting Trust by multiplying (A) the amount of the Allowed Claim by (B) the Net Loss Percentage for such Accepting Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocated Seller Claim of each Accepting Trust to ensure that the effects of rounding do not cause the sum of the Allocated Seller Claims for all Accepting Trusts to exceed the amount of the Allowed Claim.

(iv) Any HoldCo Claim provided to an Accepting Trust making one or more HoldCo Elections, and any reduction to the Allocated Depositor Claim and Allocated Seller Claim of that Accepting Trust, shall be calculated pursuant to Section 6.02.

(v) For the avoidance of doubt, and subject to the HoldCo Election, each Accepting Trust shall receive an Allocated Claim only against its Seller Entity, which Allocated Claim its Depositor Entity is jointly liable for.

(vi) If applicable, the Expert shall calculate the portion of the Allocated Claim that relates to principal-only certificates or notes and the portion of the Allocated Claim that relates to all other certificates or notes.

2. All distributions from the Estate to an Accepting Trust on account of any Allocated Claim shall be treated as Subsequent Recoveries, as that term is defined in the Governing Agreement for that trust; provided that if the Governing Agreement for a particular Accepting

Claim # 4702

| Deal Name | Cusip | Sum Of Original Face | Sum Of Current Face |
|---|---|---|---|
| RALI 2006-QO1 | 761118RJ9 | $78,443,000.00 | $24,013,603.76 |
| RALI 2006-QO1 | 761118RG5 | $5,400,000.00 | $838,109.67 |
| RALI 2006-QO1 | 761118RK6 | $10,496,000.00 | $0.03 |
| RALI 2006-QO10 | 751153AA5 | $99,395,000.00 | $56,761,261.83 |
| RALI 2006-QO10 | 751153AB3 | $81,000,000.00 | $41,396,225.42 |
| RALI 2006-QO2 | 761118VY1 | $265,842,000.00 | $94,138,538.93 |
| RALI 2006-QO2 | 761118VZ8 | $99,413,600.00 | $38,595,980.48 |
| RALI 2006-QO3 | 761118WP9 | $164,541,000.00 | $70,431,593.54 |
| RALI 2006-QO3 | 761118WQ7 | $34,747,000.00 | $16,745,355.27 |
| RALI 2006-QO4 | 75114GAC3 | $5,470,000.00 | $2,647,461.19 |
| RALI 2006-QO5 | 75114HAD9 | $66,000,000.00 | $35,286,331.22 |
| RALI 2006-QO5 | 75114HAK3 | $11,000,000.00 | $9,974,691.10 |
| RALI 2006-QO5 | 75114HAH0 | $29,397,000.00 | $7,731,231.07 |
| RALI 2006-QO5 | 75114HAE7 | $10,800,000.00 | $4,274,581.07 |
| RALI 2006-QO6 | 75114NAA2 | $532,153,000.00 | $268,255,921.95 |
| RALI 2006-QO6 | 75114NAB0 | $249,055,000.00 | $127,674,640.47 |
| RALI 2006-QO7 | 751150AD5 | $80,751,000.00 | $48,796,184.34 |
| RALI 2006-QO7 | 751150AH6 | $64,378,000.00 | $46,855,661.04 |
| RALI 2006-QO7 | 751150AJ2 | $37,954,000.00 | $32,438,418.87 |
| RALI 2006-QO7 | 751150AA1 | $12,000,000.00 | $7,142,533.74 |
| RALI 2006-QO8 | 75115FAS9 | $15,000,000.00 | $13,791,616.34 |
| RALI 2006-QO9 | 75115HAN6 | $548,514,000.00 | $257,600,151.69 |
| RALI 2006-QO9 | 75114PAC3 | $85,000,000.00 | $79,706,842.10 |
| RALI 2006-QO9 | 75114PAA7 | $1,700,000.00 | $0.00 |
| RALI 2006-QS1 | 761118SB5 | $22,000,000.00 | $5,271,753.67 |
| RALI 2006-QS10 | 751155AP7 | $66,810,666.00 | $29,334,407.16 |
| RALI 2006-QS10 | 751155AN2 | $15,810,666.00 | $6,941,953.19 |
| RALI 2006-QS10 | 751155BE1 | $5,293,385.00 | $2,509,526.92 |
| RALI 2006-QS11 | 75115EAA1 | $75,000,000.00 | $27,080,806.88 |
| RALI 2006-QS11 | 75115EAU7 | $17,284,000.00 | $13,187,758.02 |



CLAIM #4702

The furnishing original information regarding a vast fraudulent tax avoidance scheme involving Platinum Capital Group Corp., Aurora Loan Services LLC, Residential Funding Company, LLC, Residential Accredit Loans, Inc., Residential Funding Corporation, Homecomings Financial LLC, Deutsche Bank Trust Company Americas, Wells Fargo Bank, N.A., Mortgage Electronic Registration Systems (MERS), and Goldman, Sachs & Co., and the **RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1 and R2, *et al.*, named below, as well as all related RALI Series Trusts starting in 1995 forward as indicated below,** which conduct, regarding each of the named trust(s), has resulted in excess of two million dollars ($2,000,000) in tax avoidance, or evasion, as the case may be.

**Tax Avoidance\Evasion Information & Issues:**

**Various related entities involved:**

**RALI 2006-QO6 A1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 A3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M2 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M3 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M4 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M5 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M6 for taxable years 2006 thru 2011**

CLAIM # 4702

**RALI 2006-QO6 M7 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M8 for taxable years 2006 thru 2011**
**RALI 2006-QO6 M9 for taxable years 2006 thru 2011**
**RALI 2006-QO6 SB for taxable years 2006 thru 2011**
**RALI 2006-QO6 R1 for taxable years 2006 thru 2011**
**RALI 2006-QO6 R2 for taxable years 2006 thru 2011**

**And all RALI Series Trust(s) – All Series 1995-2008 that engaged in similar conduct for all taxable years 1995 through 2011. (263 entities named in Exhibit Q)**

**(a) Each and every one of the above entities have failed to properly qualify as a real estate investment conduit (REMIC) pursuant to Internal Revenue Code Section 860D(a)(4),**

**(b) Each and every one of the above entities have improperly & falsely filed IRS form 8811 under penalties of perjury to irrevocably elect tax exempt pass through status,**

**(c) Each and every one of the above entities have improperly filed false income tax returns forms 1066, with the Internal Revenue Service, to avoid double taxation on income derived from securitized mortgage pools & interest income earned, thereon,**

**(d) Each and every one of the above entities have improperly represented themselves to the IRS and investors to be a qualified tax exempt entity pursuant to IRC Section 860D and further failed to timely notify IRS via form 8811 that this entity no longer qualifies as tax exempt REMIC (Reg. Sec. 1.6049-7) at all relevant times herein,**

**(e) Each and every one of the above entities have improperly reported income and expenses on forms 1066 for all relevant periods, encompassing all calendar years, 2007 through calendar year 2011 thereby delaying the running of the statute of limitations for tax assessment purposes, until proper income tax returns are filed,**

**(f) Each and every one of the above entities have engaged in extensive & numerous illegal prohibited transactions pursuant to IRC Section 860F(a), which subject each of those relevant transactions to the 100% prohibited transaction tax.**

**(g) All of the above IRS violations have been occasioned, by a flawed manner of custom and practice of selling notes of mortgage pools into flawed REMIC originations & securitizations, and specifically, by the failure of RALI Series 2006-QO6 Trust and each of the above named entities to substantially acquire all of the entities qualified assets (qualified mortgages or permitted investments), at the close of the third month, beginning after the relevant startup day and all times thereafter. (Code Section 860D(a)(4)).**

CLAIM # 4702

**(h) The above alluded to IRS violations in paragraph (g) immediately above amount to a blatant pattern of financial fraud, which, directly or indirectly, were occasioned by the custom and practice of representatives of the trustees, and\or, the various named taxpayers, fabricating & falsifying foreclosure documents (by the collective conduct of the various mortgage servicers, agents, legal representatives and other related parties\professionals). All parties involved herein, have acted in concert, conspired, and\or, aided and abetted in said illegal fraudulent tax evasive or tax avoidance conduct.**

**(i) On information and belief, the claimants herein allege that the entities selling mortgage notes to this REMIC (& others) have treated the sales of billions of dollars of mortgage notes as a tax free exchanges presuming a transaction to be between a seller icon bank and a tax free pass through REMIC, (See IRC Section 860F(b); Reg. Sec. 1.860F(b)) and have avoided paying taxes thereon pursuant to IRC Section 453(b) dealing with each sale, exchange or, disposition of installment obligations and have thus failed to recognize income on these sale transactions with all non qualifying REMICs.**

**(j) Claimants herein have identified numerous IRS "badges of fraud," "fraudulent filing of elections," "fraudulent filing of false tax returns," "fraudulent filing of false IRS information returns" as well as "fundamental fraudulent documentation fabrication which should subject all tax assessments herein, to the 50% income tax fraud penalty."**

**Claimant's submission:**

The above named joint claimants submit the following documents in support of their claims of (1) prima facie evidence of ongoing and continuing tax avoidance and evasion, (2) prima facie evidence of fabrication of false documents of ownership of mortgage note(s) in connection with relevant foreclosure proceedings\litigation with the Rev. Tomas Diaz, the principal claimant herein, (3) failure to acquire mortgage pools in a timely manner, (4) inconsistent requisite IRS Real Estate Mortgage Investment Conduits (REMICs) evidence of completing ownership and possession of note claims of qualified trust assets, of RALI Series 2006-QO6 Trust - series A1-A3; M1-M9, SB, R1, R2 in support of their claim for a reward pursuant to IRS Section 7623(b)):

Claim # 4702

A. (i) **Final Judgment of Foreclosure**; Deutsche Bank Trust Company Americas as Trustee v. Tomas Diaz, et al., Case#: 2007-16754-CA on January 8th, 2008. And further, the (ii) **False\Fabricated Affidavit in Support of Plaintiff's Motion for Summary Judgment** filed September 6th 2007, verified by affiant Cheryl Samons (Notorious Robo-Signer working in the Law Offices of David J. Stern, P.A.), as Authorized Signatory of the Law Offices of David J. Stern, P.A., on behalf of Homecomings Financial, LLC, under penalties of perjury, and notarized by Ruth Pinero, all evidencing ongoing litigation that resulted in the discovery of original information available only to Rev. Tomas Diaz by virtue of his pursuit of his foreclosure defense litigation.

B. As further evidence of ongoing litigation: (i) Affidavit of Lost Note dated May 30th, 2007 by Residential Funding Company, LLC and (ii) Ex Parte Motion To Vacate Summary Final Judgment dated October 15th, 2010.

C. REV. TOMAS DIAZ mortgage note was securitized and selected by the RALI Series 2006-QO6; **15 TRANCHES** – as per Bloomberg excel worksheets.

D. REV. TOMAS DIAZ MORTGAGE NOTE **DETAIL** IN LOAN POOL for RALI Series 2006-QO6.

E. REV. TOMAS DIAZ **ENTIRE LOAN POOL** for RALI Series 2006-QO6 – per Bloomberg excel worksheets.

F. Notice of judicial filing of **Declaration** of Alexis Mesa of Forensic Loan Audit indicating securitization of claimants mortgage note and Excel Work papers of Mortgage Pools of RALI Series 2006-QO6 4-6-2012 with the 11th Judicial Circuit Court of Miami-Dade County, Florida.

G. Notice of filing of Affidavit of Alexis Mesa in opposition to Lender's Legal Standing.

H. Copy of original mortgage from Platinum Capital Group, as mortgagee, to Rev. Tomas Diaz, mortgagor, in the original amount of $1,000,000., as recorded in OR Book 24526 pages 3829-3850, recorded 5-15-2006, Public Records of Miami-Dade County, Florida.

I. Copy of promissory note attached to mortgage referenced in exhibit G executed by Rev. Tomas Diaz and dated April 27th, 2006, to lender Platinum Capital Group with the allonge and the assignments on same from Platinum Capital Group to Residential Funding Corporation by it's Asst. Secretary Carleton Pyfrom II, and from Residential Funding Corporation to Deutsche

CLAIM # 4702

Bank Trust Company Americas as Trustee executed by the notorious robo-endorsement, non-signer/stamper, Judy Faber.

J. Deposition of Judy Faber 8-14-2009. U.S. Bank, NA, as Trustee vs. Robinson @ GMAC FRC, LLC, One Meridian Crossings, Minneapolis, Minnesota 55423.

K. Richard & Moses LLC letter to Judge Joseph M Strickland advising of improprieties associated with Judy Faber "endorsement stamp" and "residential funding company L.L.C. dated 9-22-10.

L. Judy Faber - improper GMAC Affidavits Leading to Charges of Document Fabrication to Change Title (article posted on the Internet)

M. Form 424B prospectus which outlines the terms and conditions of the offering and the prospectus supplement which identifies: Platinum Capital Group, Corp as the Seller; Residential Accredit Loans, Inc., as the Depositor; Residential Funding Corporation as the Master Servicer and Sponsor, Wells Fargo Bank, N.A., as the custodian of the mortgage loans; RALI Series 2006-QO6 Trust as the Issuing Entity; and Goldman, Sachs & Co. as the Underwriter. **RALI Series 2006-QO6 Trust Prospectus supplement, dated, June 28th, 2006:**

i. RALI Series 2006-QO6 Trust has been advised by counsel that it will qualify as two Real Estate Mortgage Investment Conduits (REMICs) and the prospectus refers to REMIC I and REMIC II. According to the Prospectus on page S-100 under the heading "Material Federal Income Tax Consequences" the RALI Series 2006-QO6 Trust that this loan was deposited into indicates that it will be treated as a REMIC.
ii. On page S-4 of the prospectus, the cutoff date for IRS REMIC qualification purposes is shown as June 1, 2006.
iii. On page S-28 of the prospectus, it clearly states in a section identified as "Issuing Entity" that the "Depositor" assigns to the trustee for the benefit of the certificateholders without recourse all right, title and interest of the Depositor in the mortgage loans.
iv. On page S-4 the depositor in this securitized arrangement is named as Residential Accredit Loans Inc., an affiliate of Residential Funding Company, LLC.

N. Corporate Assignment of Mortgage from MERS as nominee for Platinum Capital Group to Deutsche Bank Trust Company Americas as Trustee dated October 26th, 2006 and signed by the purported MERS Vice President Matt Favorite, who is also identified on the document as the "preparer" of the document for Residential Funding Company, LLC, a party to the securitization

Claim # 4702

trust RALI Series 2006-QO6 and notarized by Karen E. Steffensen in the state of Minnesota and as recorded in the public records of Miami-Dade County OR BK 25305, page 0654, on January 25th, 2007; long after the trust that allegedly holds this mortgage and note was prohibited from any transactions given the REMIC status elected.

O. Deposition of Cheryl Samons identifying the systemic fraudulent document fabrication & robo-signing processes used at the Law Offices of David J. Stern P.A. to prepare foreclosure files. In this deposition it is made clear that David Stern prepares the documents he needs and Cheryl Samons signs them.

P. The Florida Attorney General's Economic Crimes Division Report on the Unfair, Deceptive, and Unconscionable Acts in Foreclosure Cases. This report specifically targets the practices of the Law Offices of David J. Stern P.A., please take notice as it is directly related to this claim. This report identifies fraudulent practices that have been used by banks, loan servicers and their agents to forge or manufacture documents. Specifically and particularly in this claim there is a document where the MERS assignment of the lead claimant's property matches an example provided in the Florida AG's report. See page 80 and also on page 79 and 81 of the report an excerpt from the Testimony of Tammie Lou Kapusta, former employee of Law Offices of David J. Stern, P.A.

Q Would these notaries be there watching her [Cheryl Samons] as she signed?
A No.
Q She would just sit there and sign stacks of them?
A Correct. As far as notaries go in the firm I don't think any notary actually used their own notary stamp. The team used them.
Q There were just stamps around?
A Yes.
Q And you actually saw that?
A I was part of that.
Q So this was an assignment signing table?
A Correct. Assignments or Affidavit A's that she was signing.
Q What's an Affidavit A?
A The indebtedness affidavit.
Q Okay.
A I think that's all Cheryl signed for. I think Beth signed for the rest. There's your Exhibit
E's. We had different exhibits. That's how they signed them. When Cheryl was out of the
office Tammie would sign them or Beth would go sign them.

CLAIM # 4702

Q Beth would sign but it would say Cheryl Samons?
A Correct.
Q And Beth would be the signer?
A Correct.
Q Or Tammie Sweat?
A Right.

This rampant fraud is further corroborated on page 83 of the report by the testimony of Kelly Scott, former employee of the Law Offices of David J. Stern, P.A.

Q. Other than Cheryl going around twice a day to sign the documents that she was reading, was there anyone else that did that, as well?
A. Only Cheryl. And only when Cheryl was out of town, that she would go on vacation, there was someone else that would sign on her behalf. Who was it? I really don't know.
Q. But they signed Cheryl's name?
A. Yes.
Q. And when you said those were the papers that were up on the long table on the four floors, what types of documents were those?
A. Motions for Summary Judgment and Assignments of Mortgage.
* * *
Q. But whatever was on those long tables, nobody was reading? They were just putting their names on them?
A. Yes, they were just putting their names.
Q. Yes, there was no one reading them?
A. Yes, there was no reading them.

Q. Claimants incorporate by reference the attached article of **WHY ALL THE ROBO-SIGNING? SHEDDING LIGHT ON THE SHADOW BANKING SYSTEM,** Ellen Brown. January 24, 2012.

R. Claimants incorporate by reference, the attached list of 263 Special Purpose Vehicles (SPVs) wrongfully claiming REMIC status: RALI Series Trust(s) – All Series 1995-2008 that engaged in similar conduct for all taxable years 1995 through 2011; 263 SPVs listed having engaged in similar conduct of tax avoidance, prohibited transactions, and tax fraud for all taxable years 1995 through 2012.

S. Letter from Rev. Tomas Diaz to Aurora Loan Services, a Truth In Lending Act Request, sent on April 3rd, 2012 to verify the misrepresentation of loan terms and to corroborate Deutsche Bank Trust Company Americas as the

Claim # 4702

beneficial owner of the loan in the RALI Series 2006-QO6 REMIC. Also included is the signed certified receipt from Aurora Loan Services.

**Background & Legal Arguments of Claimant(s):**

1. Pursuant to the attached exhibits, a foreclosure complaint was filed against Rev. Tomas Diaz on or about October 31, 2006. Rev. Tomas Diaz's loan was securitized and ownership was to be transferred into the RALI Series 2006-QO6 on or about June 29, 2006; and DEUTSCHE BANK TRUST COMPANY AMERICAS attorney, in the above referenced foreclosure litigation, represented that Platinum Capital Group, Corp., in the legal status therein, was the owner and holder of the Borrower's loan.

2. The form 424B prospectus Supplement governing this specific Trust outlines with absolute clarity and with particularity the entities that are and were involved in this trust from inception. Exhibit M, the form 424B prospectus, provides a road map of the exact chain of title and ownership of every Note and Mortgage that was selected for inclusion in this specific Trust. See page 19 et. seq. for a discussion of the Representations with Respect to Mortgage Collateral, criteria for mortgage loans included in the trust and the ongoing trustee responsibilities with regards to the servicing agents, periodic reviews, oversight, etc.

3. This specific trust is governed by certain operative documents that dictate the actions of any and all agents for the trust, their powers and how they may act on behalf of the trust. An agent for the trust, such as the trustee, has absolutely no power to act outside of the powers and authority vested in it by these documents. The fabricated assignments and fabrication of documents associated with this claim (& attached hereto) demonstrates indisputably that the trustee's have acted outside the powers and authority vested in their positions, by acting in concert, aiding and abetting, conspiring, with their selected agents,

CLAIM # 4702

representatives, mortgage servicers, legal counsel, in the filing of numerous false and fabricated documents in various courts and with the Internal Revenue Service thus constituting fraudulent conduct and endless badges of fraud.

4. The governing documents for this trust (& others named) are the Prospectus, Prospectus Supplement, Pooling and Servicing Agreement and the Mortgage Loan Purchase Agreement referred to in the Pooling and Servicing Agreement.

5. Through access to the Electronic Data Gathering Analysis and Retrieval (EDGAR) System with the Securities and Exchange Commission (SEC) and from other sources relating to the personal foreclosure litigation of the principal claimant, Rev. Tomas Diaz, and the other related claimants herein, were able to retrieve the various submitted documents, some of which were filed with the SEC in 2006 relative to the 2006 trust named herein, which allegedly holds Rev. Tomas Diaz's mortgage loan.

6. **THE TRUST PROSPECTUS**, attached as **Exhibit** clearly states on page S-91. "Custodial Arrangements: The trustee will be directed to appoint Wells Fargo Bank, N.A., to serve as custodian of the mortgage loans. The custodian is not an affiliate of the depositor, the master servicer or the sponsor. No servicer will have custodial responsibility for the mortgage notes. Residential Funding is required to deliver only the notes to the custodian. The custodian will maintain mortgage loan files that contain originals of the notes and, to the extent delivered to the custodian by Residential Funding, the mortgages, assignments and allonges, in vaults that may be located at the premises of the sponsor or an affiliate. Only the custodian has access to these vaults. A shelving and filing system segregates the files relating to the mortgage loans from other assets serviced by the master servicer." In this case a fabricated assignment (see exhibit N) was filed

CLAIM # 4702

upon the public records of Miami-Dade County, is false, and is in conflict with the requirements of page S-91 of the prospectus in the manner in which the trustee shall act.

7. **Flawed formation of REMICs – Section 860 IRC.** As a result of all of the fabricated documents herein, the requirement of taking ownership and possession of their mortgage pools in a timely manner was not satisfied and numerous prohibited transactions unfolded thereafter. This conduct violates IRC Section 860 F (a) and constitutes prohibited transactions.

8. The prospectus clearly stipulates that the Depositor, Residential Accredit Loans, Inc., an affiliate of Residential Funding Corporation is the only entity that can assign, transfer and convey the mortgage loans to the Trustee for this Trust. The documents filed in the foreclosure action and the assignments of mortgage indicate that no mortgage notes were transferred to the REMIC in a proper manner.

9. The Originator for Rev. Tomas Diaz's loan was Platinum Capital Group Corp..

10. Residential Accredit Loans, Inc. was to purchase the Rev. Tomas Diaz's loan from Platinum Capital Group Corp. and thereafter transfer said purchased mortgage notes, into the trust on or about June 29th, 2006. Therefore, it is impossible in light of the presented documentation of the servicers of this loan to make a claim that Platinum Capital Group Corp. could assign anything after June 29th, 2006 which was the closing date of the trust.

11. **All prior court filings by Judy Faber, Cheryl Samons, and the Law Offices of David J. Stern P.A. foreclosure mill are sullied and called into question.** The result of these aforedescribed improper actions cause the named REMIC herein to lack the documentation to demonstrate that they acquired their mortgage pools within a 90 startup period circa June 29, 2006. The assignments provided are clearly fabricated, as implied

CLAIM # 4702

from a reading of the Cheryl Samons, deposition and the David J. Stern representation in *The Florida Attorney General's Economic Crimes Division Report on the Unfair, Deceptive, and Unconscionable Acts in Foreclosure Cases*. The false assignments attached hereto, are in violation of the tax compliance expectations of the trustee as to the representations in the Prospectus Supplement, on page 78 under the heading "Material Federal Income Tax Consequences" the RALI Series 2006-QO6 wherein it was represented that this loan was to be properly deposited into a properly tax qualified and elected REMIC, which provides for pass-through tax treatment of the income generated by the Trust assets.

12. These trusts have been receiving favorable tax treatment illegally. A REMIC trust has a special tax status with the Internal Revenue which allows the cash flow on the pool of loans to "pass through' to the individual certificate holders thereby avoiding double taxation on the cash flow – a significant profit advantage for the investors in that trust and which can easily translate into millions of dollars in taxes saved.

13. Election by the Trust to be treated as one or more REMICs imposes strict and absolute requirements regarding transfers of assets (i.e. Mortgage loans or notes) to the Trust and IRC Section 860 outlines and governs these strict requirements.

14. According to 26 CFR § 1.860D-1 (c)(2) ***Identification of assets***. Formation of the REMIC does not occur until: (i) The sponsor identifies the assets of the REMIC, such as through execution of indenture with respect to the assets; and (ii) The REMIC issues the regular and residual interest in the REMIC.

15. RALI Series 2006-QO6 did not qualify as a tax exempt REMIC due to the failure to own and possess qualified mortgage pools in a timely manner: The Prospectus and PSA specifically identify a Closing Date, which is the last day that an asset (mortgage loan) can