**Hearing Date: July 26, 2013 at 10:00 a.m. (ET)**

MORRISON & FOERSTER LLP

1290 Avenue of the Americas

New York, New York 10104

Telephone:     (212) 468-8000

Facsimile:     (212) 468-7900

Gary S. Lee

Joel C. Haims

James J. Beha II

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF THEIR OBJECTION TO**
**THE  NCUA'S PROOFS OF CLAIM**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 2

I.     THE LEGAL STANDARD GOVERNING THE NCUA'S CLAIMS ............................ 2

II.    THE RECORD WILL SHOW THAT THE NCUA'S CLAIMS ARE
UNTIMELY.................................................................................................... 2

III.   THE NCUA WILL BE UNABLE TO PROVE THAT THE DEBTORS
OFFERING MATERIALS CONTAINED MATERIAL MISSTATEMENTS ............... 4

IV.   THE NCUA'S LOSSES WERE NOT CAUSED BY THE DEBTORS'
PURPORTED MISSTATEMENTS ..................................................................... 5

       A.     The NCUA Cannot Recover for "Any Portion" of the Credit Unions'
Losses Not Caused by A Misstatement in the Debtors' Registration
Statements ............................................................................................. 5

       B.     The NCUA Cannot Recover for Any Portion of the Credit Unions' Losses
Occurring Before the "Truth" Was Revealed ......................................... 6

       C.     The NCUA Cannot Recover for Any Portion of the Credit Unions' Losses
Caused by the Market-Wide Downturn ................................................. 8

CONCLUSION...................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Akerman v. Oryx Comm'n., Inc.*
   810 F.2d 336 (2d Cir. 1987)......................................................................................6

*Assured Guar. Mun. Corp. v. Flagstar Bank, FSB,*
   11 Civ. 2375, 2013 WL 440114 (S.D.N.Y. Feb. 5, 2013) ........................................4

*Beecher v. Able,*
   435 F. Supp. 397 (S.D.N.Y. 1977)............................................................................5

*Dura Pharmaceuticals, Inc. v. Broudo,*
   544 U.S. 336 (2005)............................................................................................6, 8

*Feit v. Leasco Data Processing Equipment Corp.,*
   332 F. Supp. 544 (E.D.N.Y. 1971) ...........................................................................8

*In re Holm,*
   931 F.2d 620 (9th Cir. 1991) ....................................................................................3

*In re Lehman Bros. Holdings, Inc.,*
   No. 08-br-13555 (JMP), 2010 WL 4818173 (Bankr. S.D.N.Y. Nov. 10, 2010) ......2

*In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.,*
   774 F. Supp. 2d 584 (S.D.N.Y. 2011)........................................................................6

*In re WorldCom Sec. Inc. Sec. Litig.,*
   No. 02 Civ. 3288 (DLC), 2005 WL 375314 (S.D.N.Y. Feb. 17, 2005) ...................6

*Lentell v. Merrill Lynch & Co.,*
   396 F.3d 161 (2d Cir. 2005)..................................................................................6, 8

S<small>TATUTES</small>

15 U.S.C. § 77*k*(e)....................................................................................................5

The Debtors respectfully submit this reply memorandum of law in further support of their

Objection to the NCUA Claims.

## PRELIMINARY STATEMENT

1.     The NCUA, as liquidating agent for the Credit Unions, seeks to recover

the Credit Unions' purported investment losses from their "excessive" and "unreasonable"

RMBS investment decisions.   To do so, the NCUA must, of course, *prove* the Credit Unions'

claims against the Debtors.   And, even if it could prove its claims, the NCUA may recover *only*

the portion of losses actually caused by the supposed misstatements.   The factual record on this

Objection will show that the NCUA's claims are untimely, that the Debtors' registration

statements did not contain any material misstatements, and that the Credit Unions losses were

not caused by any misstatements in the Debtors' registration statements.   For these reasons, the

Debtors object to the NCUA Claims and seek an order expunging them.[1]

2.     In response, the NCUA relies heavily on a series of motion to dismiss

rulings in RMBS-related cases to argue that its claim against the Debtors is sufficient to survive

motions to dismiss.   According to the NCUA, this is apparently enough to recover without

presenting any evidence.   But this Objection is not a motion to dismiss directed at the legal

sufficiency of the NCUA's pleadings.   Rather, to recover here, the NCUA bears the burden of

actually presenting evidence proving its claims and their value.   While the NCUA has not

presented *any* evidence supporting claims, the Debtors have presented evidence of (1)

widespread market knowledge of the very facts underlying the NCUA Claims long before the

relevant limitations period, (2) disclosures in the Debtors' RMBS registration statements

---

[1] The Debtors reserve their rights to object to the NCUA Claims on any additional basis, and expressly reserve their rights with respect to their Motion for Summary Judgment seeking a declaration that NCUA's claims are subordinated under Section 510 of the Bankruptcy Code filed in the adversary proceeding captioned *Residential Capital LLC v. Allstate*, No. 13-ap-01262-MG (Bankr. S.D.N.Y.).

1

regarding the very facts the NCUA claims were concealed, and (3) information available in the market rendering any misstatement immaterial.  The burden now rests squarely on the NCUA to prove its claims.  If, and only if, it is able to do so, the Debtors will have the opportunity to show—and will show—that any losses the Credit Unions incurred were not caused by alleged misstatements.

## ARGUMENT

## I.     THE LEGAL STANDARD GOVERNING THE NCUA'S CLAIMS

3.      "[A]s soon as the [objector] introduce[s] any substantial evidence in opposition the claimants need[ ] to establish by a preponderance of all the evidence that the claims as filed [a]re based on facts which entitled the claimants to their allowance under the law."  *In re Lehman Bros. Holdings, Inc.*, No. 08-br-13555 (JMP), 2010 WL 4818173, at *3 (Bankr. S.D.N.Y. Nov. 10, 2010) (quoting *In re George R. Burrows, Inc.*, 156 F.2d 640, 641 (2d Cir. 1946)).

## II.    THE RECORD WILL SHOW THAT THE NCUA'S CLAIMS ARE UNTIMELY

4.      The parties apparently agree that the NCUA Claims are time-barred if the Credit Unions (or a reasonably diligent investor) learned of the claims before March 20, 2008.[2] (*See* Resp. 13-14.)  While the Debtors have not yet had the benefit of discovery from the NCUA, in their Objection, the Debtors presented significant evidence from the public record showing that sophisticated parties like the Credit Unions learned of the specific problems the NCUA complains of by the summer of 2007.

---

[2] The parties also agree that the NCUA's claims related to the RALI Series 2006-QO06 Trust and the RALI Series 2006-QO10 Trust are subject to *American Pipe* tolling and, thus, are untimely if the Credit Unions (or a reasonably diligent investor) learned of the claims before September 22, 2007.  (*See* Resp. at 20-21.)  The NCUA also asserts that it has timely claims against Ally Financial and Ally Securities.  While the Debtors disagree, such claims are irrelevant to this Objection.

5.      In its Response, the NCUA relies heavily on several motion-to-dismiss rulings declining to dismiss RMBS-related claims as untimely as a matter of law. (*See* NCUA Resp. at 15.) But the NCUA must do more than survive a motion to dismiss; it must prevail on its claims. And it cannot do so if the factual record shows that its claims are untimely.

6.      Notably, the NCUA concedes that market participants knew by mid-2007 about widespread loosening of mortgage underwriting standards, including about specific problems with the very mortgage lenders whose loans the Debtors securitized. (Resp. at 19, n.10.) And the NCUA even acknowledges that it warned its members about this widespread loosening of loan underwriting standards long before March 2008. (Resp. at 14, n.8.) But the NCUA argues that its claims are timely because the Debtors—without the benefit of any discovery—have not identified documents in the public record *proving* that the Credit Unions knew before March 20, 2008 about problems with the specific Debtor-issued RMBS the Credit Unions purchased. (Resp. at 19-20.) Importantly, however, the NCUA does not present any evidence (or even allege any facts) about when the Credit Unions actually learned of their claims.

7.      Nor does the NCUA address the fact that its asserts these claims as liquidating agent for the two largest credit unions in the country, which invested billions of dollars in RMBS securities in the face of specific warnings from the NCUA itself about loosening mortgage underwriting standards. (*See* Obj. at 4-6.) And, as evidence that these ultra-sophisticated investors knew of their claims, the Debtors have presented communications between the NCUA and the Credit Unions about the deterioration of mortgage underwriting standards, reports in the press about the facts underlying the NCUA's claims, and even the NCUA's own analysis of the Credit Unions' collapse. (*See* Obj. at 5-10.) In the face of the

ny-1100657

NCUA's failure to proffer any evidence about the Credit Unions' knowledge, the evidence the

Debtors presented in their Objections is more than enough to rebut the NCUA's prima facie case.

*See In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) (noting that the ultimate burden is always on

the claimant, and anything more than a "mere formal objection without more" is sufficient to

rebut prima facie case) (internal citation omitted).

### III.    THE NCUA WILL BE UNABLE TO PROVE THAT THE DEBTORS OFFERING MATERIALS CONTAINED MATERIAL MISSTATEMENTS

8.      In their Objection, the Debtors explained that the NCUA will be unable to

prove that the Debtors' offering materials contained any material misstatements.  (Obj. at 14-16.)

The NCUA responds that "[o]ver a dozen courts have recognized that the allegations by NCUAB

and other RMBS investors state valid securities claims."  (NCUA Resp. at 21.)  But, again, the

question is not whether the NCUA's (and other RMBS investors') complaints in those other

cases are sufficient to survive motions to dismiss.  The Debtors have rebutted the NCUA's prima

facie case here by presenting evidence (1) that the Debtors' offering documents contained

disclosures accurately describing the underlying loan pools and (2) that any deviations from

those disclosure would have been immaterial to the "total mix of information" available to

sophisticated investors like the Credit Unions.  (*See* Obj. at 15-16.)  Accordingly, the burden to

prove material misstatements in the Debtors' offering materials rests squarely on the NCUA.

9.      In addition to its misplaced reliance on motion to dismiss rulings, the

NCUA argues that its claims "ha[ve] already been proven" by a decision after a bench trial in a

completely unrelated case.  (*See* Resp. at 24 (citing *Assured Guar. Mun. Corp. v. Flagstar Bank,
FSB*, 11 Civ. 2375, 2013 WL 440114 (S.D.N.Y. Feb. 5, 2013)).)  In *Assured Guaranty*, a breach

of contract case, Judge Rakoff found that an RMBS issuer completely unrelated to any of the

Debtors had breached representations and warranties in its bond insurance contracts for RMBS

4

issuances likewise completely unrelated either to the Debtors or to the NCUA's claims.  The

*Assured Guaranty* trial has no bearing on the NCUA Claims, particularly in light of the NCUA's

own insistence that it claims relate to "*specific misrepresentations* in the securities offering

documents that the *specific loans* underlying the Certificates complied with the underwriting

guidelines." (Resp. at 13 (emphasis added).)   Certainly, the NCUA cannot prove these specific

misstatements based on unrelated evidence of wrongdoing by an unrelated RMBS issuer in a

breach of contract case.  Rather, the NCUA bears the burden to prove the "specific

misstatements" upon which it purports to base its claims.

## IV.    THE NCUA'S LOSSES WERE NOT CAUSED BY THE DEBTORS' PURPORTED MISSTATEMENTS

10.    Finally, as the Debtors explained in their Objection, the NCUA Claims

should be expunged because the NCUA's losses—if any—were not caused by any supposed

misstatements in the Debtors' RMBS offering materials.[3]  The NCUA responds that the Debtors

will be unable to prove that "*none* of NCUAB's losses derived from misstatements in the

securities they purchased." (Resp. at 30 (emphasis added); *see also id.* at 27 (arguing that the

Debtors cannot prove that misstatements "played no part in the Credit Unions' losses").)  While

the Debtors admittedly bear the burden of proving negative causation, however, they need not

prove that the supposed misstatements "played no part" in the NCUA's losses.  In fact, the law is

clear that the NCUA cannot recover "any portion" of the Credit Unions' losses not caused by a

misstatement in the Debtors' RMBS registration statements.  The Debtors will show—in fact, the

NCUA largely acknowledges—that little, if any, of the Credit Unions' losses were caused by the

purported misstatements here.

---

[3] Notably, the NCUA baldly asserts that its claims "have a collective value of about $293 million" (Resp. at 1), but
has conspicuously avoided providing any documentation or accounting of these supposed losses, as it must.

ny-1100657

A.    **The NCUA Cannot Recover for "Any Portion" of the Credit Unions' Losses Not Caused by A Misstatement in the Debtors' Registration Statements**

11.    Under Section 11, "if the defendant proves that *any portion* . . . [of the statutory] damages represents other than the depreciation in value of such security resulting from [a material misstatement in the registration statement] *such portion . . . shall not be recoverable*." 15 U.S.C. §77*k*(e); *see also Beecher v. Able*, 435 F. Supp. 397, 401 (S.D.N.Y. 1977).  In other words, irrespective of which party bears the burden of proof, a Section 11 plaintiff may recover only for those losses actually caused by a material misstatements in a registration statement.[4]  *See In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 590 (S.D.N.Y. 2011).

12.    For this reason, courts frequently analogize the loss causation analysis under Section 11 to the framework for Section 10(b) claims established in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) and *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005). *See In re State Street*, 774 F. Supp. 2d at 590, n.4 (collecting cases).  Indeed, as one court in this district has explained, "the negative causation defense in Section 11 and the loss causation element in Section 10(b) are mirror images."  *In re WorldCom Sec. Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 375314, at *6 (S.D.N.Y. Feb. 17, 2005).  Under this framework, the NCUA's own Response demonstrates that little, if any, of the Credit Unions alleged losses can be attributed to the Debtors under Section 11.

---

[4] The NCUA's reliance on Judge Rakoff's decision in *Assured Guaranty* is, again, misplaced.  (*See* Resp. at 29 (noting that the *Assured Guaranty* court "award[ed] the RMBS plaintiff the entirety of damages sought")).  Assured Guranty was not an RMBS investor and did not bring a Section 11 claim.  Rather, Assured Guaranty, a monoline bond insurer, brought a breach of contract claim based not on market losses but on insurance payments it made and that the court found were proximately caused by the defendants' breach of contract.  Nothing in *Assured Guaranty* suggests that a Section 11 plaintiff may recover losses unrelated to the revelation of a purported misstatement.

**B.    The NCUA Cannot Recover for Any Portion of the Credit Unions' Losses Occurring Before the "Truth" Was Revealed**

13.    Logic dictates that "[a] concealed fact cannot cause a decrease in the value of a [security] before the concealment is made public." *In re WorldCom*, 2005 WL 375314, at *6 (citing *Lentell*, 396 F.3d at 175, n.4).  For this reason, under Section 11, "[t]he price decline before disclosure may not be charged to defendants." *Akerman v. Oryx Comm'n., Inc.* 810 F.2d 336, 342 (2d Cir. 1987) (citing *Beecher v. Able*, 435 F. Supp. 397, 407 (S.D.N.Y. 1977)).

14.    As discussed above, to demonstrate that their claims are timely, the NCUA must show that no reasonably diligent investor would have discovered a misstatement in the Debtors' offering materials (*i.e.* that no misstatement was revealed to the market) before March 20, 2008. *Supra* ¶ 4.  To this end, the NCUA argues that the "generalized press reports and investigations into Third Parties' conduct in the RMBS market did not" give the NCUA notice of any misleading statements in the Debtors' RMBS registration statements.  (Resp. at 13.)  Indeed, according to the NCUA, negative developments in the overall RMBS market in 2007 and the first half of 2008 "do not relate to the NCUAB's claims." (*Id.*)  Moreover, the NCUA says that before March 2008, there was "*no indication . . . that the actual loans underlying the Certificates did not comply with the underwriting guidelines.*" (*Id.* (emphasis added).)  Rather, according to the NCUA, the purported misstatements in the Debtors' registration statements were not revealed to the market until S&P and Moody's downgraded the RMBS in "September or October 2008." (Resp. at 15.)

15.    If the NCUA is correct and the market did not discover any alleged misstatement in the Debtors' registration statements until September or October 2008, then, as a matter of law, the misstatements did not cause any losses before the fall of 2008.  Thus, even if the Court determines that the NCUA has proven its Section 11 claims, at a minimum, the

7

NCUA's asserted $293 million claims must be reduced by any amount attributed to market losses before the fall 2008 credit rating downgrades.[5]

### C.    The NCUA Cannot Recover for Any Portion of the Credit Unions' Losses Caused by the Market-Wide Downturn

16.    In addition, even after the fall 2008 credit rating downgrades, "the damage figure should be adjusted to take account of the market decline." *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 586 (E.D.N.Y. 1971) (Weinstein, J.) (analyzing Section 11 claim). The NCUA cannot recover for losses caused by "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Dura Pharm.*, 544 U.S. at 343. Instead, it may recover only it "its loss was caused by the alleged misstatement as opposed to intervening events." *Lentell*, 396 F.3d at 174.

17.    The NCUA acknowledges its own previous finding that "many separate but interlinked actions" and "many different actors" caused the Credit Unions' losses. (Resp. at 30.) But the NCUA cannot recover under Section 11 for any losses caused by those many separate actions or many different actors other than proven misstatements in the Debtors' offering materials. And the Debtors will prove that the market-wide financial crisis (and not any supposed misstatements) caused the Credit Unions' losses after the fall of 2008.

\*                              \*                              \*

### CONCLUSION

18.    Because the NCUA Claim are time-barred, the NCUA cannot prove a material misstatement in the Debtors' registration statements, and any losses the Credit Unions

---

[5] As noted above, the NCUA has not provided any evidence or accounting of the Credit Unions' RMBS investments and supposed losses. Based on the performance of the Debtors' RMBS securities, the Debtors expect that losses before the fall of 2008—which the NCUA says "do not relate" to their claims—likely make up the bulk of the NCUA's purported $293 million claim.

ny-1100657

incurred where not caused by any alleged misstatement, the Debtors respectfully request entry of

the Proposed Order disallowing and expunging the NCUA Claims.


Dated: July 24, 2013                              /s/    Joel C. Haims
                                                  Gary S. Lee
                                                  Joel C. Haims
                                                  James J. Beha II
                                                  MORRISON & FOERSTER LLP
                                                  1290 Avenue of the Americas
                                                  New York, New York 10104
                                                  Telephone:  (212) 468-8000
                                                  Facsimile:  (212) 468-7900

                                                  *Counsel for the Debtors and
                                                  Debtors in Possession*

9