Frank Reed
817 Matlack Drive
Moorestown, NJ 08057
Telephone: (856) 956-6950
E-Mail: FrankReedVA@aol.com

*Creditor, Pro Se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF CREDITOR PRO SE, FRANK REED, IN SUPPORT OF HIS OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE SECTION 363(b)(1) AUTHORIZING THE DEBTORS TO ENTER INTO AND PERFORM UNDER AMENDMENT TO CONSENT ORDER**

I, Frank Reed, under penalty of perjury, declare as follows:

1. I, Frank Reed did in fact rely on Debtors' 1st day motions, pleadings and filings. In my reliance on the contents and assertions therein by Debtors officers, I did not exercise certain valuable rights as a creditor in these Bankruptcy proceedings.

2. I am an In Scope Borrower subject to and a potential third party beneficiary of the Consent Order as I have filed for an Independent Foreclosure Review.

3. In 2009 GMAC was found to have violated my rights under New Jersey State foreclosure law by the New Jersey Superior Court, in Mount Holly, Burlington County, NJ, (the proper court of jurisdiction) and as a result of its violation of New Jersey State foreclosure law, GMAC caused me direct financial harm.

4. Specifically, GMAC's acts destroyed the liquidity and market value of my home, resulting in the immediate interruption and loss of vital cash flow which wrought direct, deep and irreversible catastrophic damage to a lifetime of work and accumulated net worth. The result of this damage, if not remediated, will be the homelessness of me, my wife and our 6 children.

5. This scenario is recognized as remediable pursuant to, but not limited to, category item number 12 of the Office of the Comptroller of the Currency - Board of Governors of the Federal Reserve System - JUNE 21, 2012 - FINANCIAL REMEDIATION FRAMEWORK - FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW. (Attached hereto).

6. Of particular importance to me is the fact that the damages I seek in my filing for an Independent Foreclosure Review are guaranteed by Ally Financial to be paid in full and for corrective equitable action to be taken as well, under the existing Consent Order.

7. This is in stark and glaring contrast to what I will be left with if the Amendment is approved by the Court as a replacement for the Consent Order.

5. It is my understanding that I would most likely receive a payout of approximately $800 under the Amendment versus the $3.9 Million in compensation for what the Debtors' actions took from me, and which I seek to be remediated under the Independent Foreclosure Review.

6. This difference would be insurmountable in the remaining years of my life and would result in the total loss of all that I and my wife have worked for my entire lives: our home, our entire net worth and our childrens' futures.

Respectfully submitted, this 20th day of July, 2013.

_____
Frank Reed
Creditor, Pro Se

Office of the Comptroller of the Currency
Board of Governors of the Federal Reserve System

JUNE 21, 2012

FINANCIAL REMEDIATION FRAMEWORK
FOR USE IN THE INDEPENDENT FORECLOSURE REVIEW

In April 2011, federal banking regulators issued enforcement orders against 14 large mortgage servicers for deficient mortgage servicing and foreclosure practices. The orders required those servicers to retain independent consultants to conduct a comprehensive review of foreclosures that were in process or completed in 2009 or 2010 (the Independent Foreclosure Review) to identify financial injury to borrowers that resulted from errors, misrepresentations, and other deficiencies in the foreclosure process. The Independent Foreclosure Review also requires those servicers to provide compensation or other remediation for identified financial injury.

The OCC and FRB have developed a financial remediation framework (the Framework) that provides examples of situations where compensation or other remediation is required for financial injury due to servicer errors, misrepresentations, or other deficiencies. The independent consultants will use the Framework to recommend remediation for financial injury identified during the Independent Foreclosure Review. The servicers will prepare remediation plans based on the independent consultants' recommendations. The federal banking regulators must approve each servicer's remediation plan.

The categories included in the Framework are not intended to be exhaustive or to cover all possible situations or remediation options for borrowers who may require compensation or other remediation for financial injury. It is important to read the Frequently Asked Questions (FAQs) that accompany the Framework to understand how remediation will work.

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROCESS (AT TIME OF REMEDIATION) Remedy | Dollar Payment | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) Remedy | Dollar Payment |
|---|---|---|---|---|---|---|---|
| 1 | Servicemembers Civil Relief Act (SCRA) | SCRA violation | Servicer foreclosed on a borrower in violation of the SCRA. | Suspend foreclosure. | N/A | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|  |  |  |  |  |  | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency, and correct credit reports. | $125,000 plus equity |
| 2 | Borrower Not in Default | Borrower not in default when foreclosure occurred or in default as direct result of servicer error | Servicer initiated foreclosure or foreclosed on borrower who was not in default on mortgage or in default only directly due to servicer error. | Cancel foreclosure; pay $5,000, correct servicer record for late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $5,000 | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|  |  |  |  |  |  | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency, and correct credit reports. | $125,000 plus equity |
| 3a | Error after Trial Loan Modification Completed | Failure to convert written trial-period plan to permanent modification | Servicer failed to convert borrower to permanent modification after successful completion of written trial-period plan. | Suspend foreclosure as required by program; pay $5,000, provide permanent loan modification, correct servicer record for any improper amounts, and correct credit reports. | $5,000 | Rescind foreclosure when possible and provide permanent loan modification; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
|  |  |  |  | If servicer cannot provide permanent loan modification; pay $35,000, correct servicer record for any improper amounts, and correct credit reports. | $35,000 | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $125,000 plus equity, less offset |

1

OCC FRB Financial Remediation Framework
Independent Foreclosure Review

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROCESS (AT TIME OF REMEDIATION) | | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) | |
|---|---|---|---|---|---|---|---|
| | | | | Remedy | Dollar Payment | Remedy | Dollar Payment |
| 3b | Error after Trial Loan Modification Approved | Foreclosure completed during written trial-period plan for a permanent modification | Servicer foreclosed on borrower prior to expiration of written trial-period plan while borrower was performing all requirements of the written trial-period plan. | N/A | N/A | Rescind foreclosure when possible and provide trial-period plan; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
| | | | | | | If rescission of foreclosure is not possible; pay $125,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $125,000 plus equity, less offset |
| 4 | Forbearance Plan | Foreclosure completed when borrower performing under documented forbearance plan | Servicer completed foreclosure on borrower before documented forbearance period expired while borrower was meeting all requirements of documented forbearance plan. | N/A | N/A | Rescind foreclosure when possible; pay $15,000, correct servicer record for any improper amounts, and correct credit reports. | $15,000 |
| | | | | | | If rescission of foreclosure is not possible; pay $60,000 plus equity, remedy deficiency for any improper amounts, and correct credit reports. Servicer may offset missed and unpaid principal & interest payments and property taxes paid on behalf of the borrower, subject to certain limitations. | $60,000 plus equity, less offset |

2

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROGRESS (AT TIME OF REMEDIATION) Remedy | Dollar Payment | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) Remedy | Dollar Payment |
|---|---|---|---|---|---|---|---|
| 5 | Loan Modification Application | Loan modification application denied in error, or complete loan modification application where borrower would have qualified was never decisioned | Servicer denied borrower application for loan modification that should have been approved, or servicer failed to decision complete loan modification application for which borrower would have qualified. | Suspend foreclosure as required by program and where loan modification permitted based on past documentation; pay $2,500, provide loan modification for which borrower should have been approved, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $2,500 | Rescind foreclosure and provide loan modification for which borrower should have been approved based on past documentation when possible; pay $5,000, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $5,000 |
|   |   |   |   | Suspend foreclosure as required by program and where loan modification not permitted based on past documentation; pay $10,000, offer existing loan modification or other loss mitigation programs, correct servicer record for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $10,000 | If either rescission of foreclosure is not possible or where loan modification not permitted based on past documentation; pay $15,000 plus equity, remedy deficiency for excess interest, late fees, foreclosure fees, and/or any other improper amounts, and correct credit reports. | $15,000 plus equity |
| 6 | Loan Modification Application | No follow up on loan modification application | Servicer never followed up to obtain complete loan modification documents as required under HAMP or other program designated by regulator. | Pay $2,000 and offer existing loan modification or other loss mitigation programs. | $2,000 | Pay $2,000. | $2,000 |
| 7 | Loan Modification Application | Never solicited loan modification | Servicer never solicited borrower loan modification option as required under HAMP or other program designated by regulator. | Pay $1,000 and offer existing loan modification or other loss mitigation programs. | $1,000 | Pay $1,000. | $1,000 |
| 8 | Loan Modification Application | Failed to approve modification in prescribed timeframe | Servicer approved borrower for loan modification under HAMP or other program designated by regulator, but did not make decision within required timeframe. | Correct servicer record for excess interest accrued by borrower. | N/A | Remedy deficiency for excess interest. | N/A |

3

**OCC FRB Financial Remediation Framework**
**Independent Foreclosure Review**

| No. | CATEGORY | ERROR | DESCRIPTION | FORECLOSURE IN PROCESS (AT TIME OF REMEDIATION) | | FORECLOSURE COMPLETE (AT TIME OF REMEDIATION) | |
|---|---|---|---|---|---|---|---|
| | | | | Remedy | Dollar Payment | Remedy | Dollar Payment |
| 9 | Loan Modification | Used wrong interest rate in an approved modification | Servicer error resulted in loan modification with higher interest rate than borrower should have been charged under HAMP or other loan modification program designated by regulator. | Correct servicer record for excess interest accrued by borrower. | N/A | Remedy deficiency for excess interest. | N/A |
| 10 | Bankruptcy | Bankruptcy | Servicer initiated foreclosure or foreclosed on borrower who was protected by federal bankruptcy law. | Remediation determined on a case-by-case basis as bankruptcy law dictates. | | | |
| 11 | No Standing | Servicer did not have standing to foreclose | Servicer initiated foreclosure or foreclosed on borrower, but lacked standing to foreclose. | Remediation determined on a case-by-case basis as state law dictates. | | | |
| 12 | Notice | Servicer failed to provide legally sufficient notice | Servicer initiated foreclosure or foreclosed on borrower and either failed to provide any notice or legally sufficient notice as required under state law. | Remediation determined on a case-by-case basis as state law dictates. | | | |
| 13 | General | Error caused financial injury | Servicer error occurred that did not directly cause foreclosure, but did directly result in financial injury to borrower. | Suspend foreclosure where appropriate, correct servicer record for amounts in error and/or reimburse borrower for amounts paid in error, plus interest; and where required, correct credit reports and pay $500 for credit reporting error. | Case-by-case basis | Remedy deficiency for amounts in error and/or reimburse borrower for amounts paid in error, plus interest; and where required, correct credit reports and pay $500 for credit reporting error. | Case-by-case basis |

4