# ResCap          MORRISON | FOERSTER

## Claim Information

| Claim Number | 4731 |
|---|---|
| **Basis of Claim**<br><br>Explanation that states the legal and factual reasons why you believe you are owed money or are entitled to other relief from one of the Debtors as of May 14, 2012 (the date the Debtors filed their bankruptcy cases) and, you must provide copies of any and all documentation that you believe supports the basis for your claim. | GMAC failed to finance property in a manner that conveyed marketable title to the property such that HUD would approve a further sale. See Affidavit of Louis Nemeth with attachments, attached here to.<br><br>26 pages attached |

If your claim relates to a mortgage loan that you believe was originated or serviced by one of the Debtors, please be sure to include the following loan information, so that we can effectively search our records for information on your property and loan, and evaluate your claim.

**Loan Number:**
18251710Z

**Address of property related to the above loan number:**
659 Via Ravello

| City:<br>Irving | State:<br>Texas | ZIP Code:<br>75039 |
|---|---|---|



Additional resources may be found at - http://www.kcclic.net/rescap

Residential Capital, LLC    P.O. Box 385220  Bloomington, MN  55438

Claim Number: 4731
Louis G. Nemeth
Type: POC

UNTIED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

AFFIDAVIT OF LOUIS NEMETH
IN SUPPORT OF PROOF OF CLAIM

THE STATE OF FLORIDA

COUNTY OF VOLUSIA

BEFORE ME, the undersigned authority, on this day personally appeared Louis Nemeth, who after being by me duly sworn on oath, deposed and said:

"In 2008, I purchased a Condo located at, 659 Via Ravello, Irving, Texas to allow me to have a residence in the area where my company is located. Today, my family and I are residents of Daytona Beach, FL. I purchased the Condo from the developer, North American Properties, Inc. The developer's on site representative was Courtney Ruiz. In order to facilitate the purchase, I used Todd Cory of GMAC Mortgage. Initially, Courtney and Todd discovered that the Investor ratio required to meet the standards of an FHA loan exceeded the applicable standard. A letter was exchanged between Ms. Ruiz and Mr. Cory, which I did not understand the implications of at the time, falsifying this ratio factor which allowed the closing at a Fort Worth Title Company. A copy of the falsified Condominium Project Questionnaire and Ms. Ruiz's letter is attached hereto as Exhibit "A" and incorporated by reference for all purposes. In fact, at the time of my purchase and even to this day, the ratio of completion of the various phases of construction is far lower than what Ms. Ruiz represented and the ownership ratio is much higher; each alone would have disqualified my loan from being approved. All of this information was known to Ms. Ruiz and Mr. Cory at the time I purchased this Condo.

Later, in March of 2012, I was ready to sell the Condo. I had a buyer make an offer and I had proceeded to relocate and as well as dispose of the contents of the Condo. On the Closing date I signed my side of the closing and then was informed that

the above referenced ratio was still incorrect and that the financing had denied on this basis. I didn't understand at the time why my financing had been approved and why, in this incident, it was disallowed until I discovered the falsification by Ms. Ruiz and Mr. Cory. A copy of the failed Contract and Closing Documents is attached hereto as Exhibit "B".

My current claim is based on the fact that I was fraudulently induced into purchasing the Condo by the intentional falsification of the loan documents by the developer's representative Ms. Ruiz and the GMAC loan officer, Mr. Cory. I now have a Condo for which I am personally responsible and for which I have no use; since I had to secure other arrangements after I made the decision to sell. A purchase of the Condo still cannot qualify to be financed because of this ratio. The current amount of money outstanding on the loan is $412,848.07, inclusive of interest. I am including an additional $21,864.74 in mortgage payments since the failed sale and I disposed of the entire Condo's contents at a $61,905.00 loss when I vacated the property at the demand of the prospective buyer. A list of this property is attached hereto as Exhibit "C".

I was defrauded by GMAC Mortgage. I am wrongfully indebted to Fannie Mae through its loan servicer GreenTree. I am requesting total damages in the amount of $496,617.81.

Further Affiant Sayeth Not."

_____
Louis Nemeth

SWORN TO AND SUBSCRIBED BEFORE ME BY THE SAID Louis Nemeth on this the __17__ day of ___July___, 2013.

TRACEE BURNS
Notary Public - State of Florida
My Comm. Expires May 10, 2015
Commission # EE 61870
Bonded Through National Notary Assn.

_____
NOTARY PUBLIC, STATE OF __FL__

Claim 10.4 131

## CONDOMINIUM PROJECT QUESTIONNAIRE

| | |
|---|---|
| **Project Name:** | Positano Homes |
| **Name of Master Association, if applicable:** | Positano Condominium Association |
| **City:** Irving | **State** |
| **Year Project was Built:** 2007 | |

| | | | |
|---|---|---|---|
| 1. | Total # of legal phases in project  3 declared | Subject property located in legal phase # | 2 |
| | Total # of units in project  124 declared | Total # of units in subject legal phase  10 Villas | |
| 2. | # of units sold and conveyed (settled) in project  31 closed | # of units sold and conveyed (settled) in subject phase | 0 |
| | # of units under contract in project  78 | # of units under contract in subject phase | 40 |
| 3. | Provide breakdown of total units sold or under contract in project: | Provide breakdown of total units sold or under contract in subject phase: | |
| | - Primary Residence  106 | - Primary Residence  10 | |
| | - Second Home  2 | - Second Homes  0 | |
| | - Investment Property  0 | - Investment Property  0 | |
| | - Retained by Developer  2 models, 1 salesoffice | - Retained by Developer  0 | |
| | - Will developer sell or maintain units?  sell | - Will developer sell or maintain units?  0 | |
| 4. | Monthly HOA fee range | from $ 164 to $ 326 | |

| | | | | |
|---|---|---|---|---|
| 5. | Are all units, common elements and amenities complete in subject legal phase? | | YES ☒ | NO ☐ |
| | • If NO, what is incomplete? | | | |
| |    ○ Number of Units Incomplete? _____ | | | |
| |    ○ What Common Elements & Amenities are incomplete? | | | |
| | _____ | | | |
| | • Is there a bond letter or completion assurance for the incomplete common elements and amenities?  (If yes, provide copy) | | | |
| 6. | Is the project subject to any additional phasing or annexation? Phase 4 | | YES ☒ | NO ☐ |
| 7. | Is the project a conversion? | | YES ☐ | NO ☒ |
| | • Is project a full gut rehab?  Yes _____  No _____ | | | |
| | • Is project a non gut rehab?  Yes _____  No | | | |
| 8. | If project is a non gut rehab conversion has 90% of the units settled, has HOA been turned over to unit owners and project not subject to additional phasing or annexation? | | YES ☐ | NO ☐ |
| | • If NO to any of the above, provide copy of Engineers Report and evidence repairs/renovations have been completed, if applicable | N/A | | |
| 9. | Does any investor (except developer on new construction) own more than 10% of total project? | | YES ☐ | NO ☒ |
| | • If YES, how many units does the investor own? _____ | | | |
| 10. | Is any part of the project used for commercial purposes? | | YES ☐ | NO ☒ |
| | • If YES, what percentage of total square footage is used for commercial purposes? _____ % | | | |
| | • If YES, what is commercial space used for _____ | | | |
| 11. | The amount currently held in reserves for future repair and/or replacement of major components of the project is?  2% of Budget | $ _____ | | |

## Exhibit A

| | | | | | | |
|---|---|---|---|---|---|---|
| 29. | Is Project manufactured housing project? | | | YES | ☐ | NO ☒ |
| 30. | Is Project a multi-dwelling unit condominium (including lockout units in project) in which ownership of multiple units is evidenced by a single deed or mortgage? | | | YES | ☐ | NO ☒ |
| 31. | Does Project represent a legal, but nonconforming use of the land? If yes, does zoning regulations allow rebuilding to current density in the event of destruction? | | | YES | ☒ | NO ☐ |
| 32. | Is year-round occupancy permitted? | | | YES | ☒ | NO ☐ |
| 33. | Is there a mandatory rental clause? | | | YES | ☒ | NO ☐ |

## APPRAISAL

These questions are required when the condominium warranty is provided through Condo Project Manager (CPM). If the appraisal is not available provide evidence from an acceptable third party source to answer the following questions. The appraisal is required upon closing of the first loan transaction in the development.

| | | | | |
|---|---|---|---|---|
| 34. | Are values in the development: | (Increasing) | Stable | Declining |
| 35. | Is the Demand/Supply: Shortage | (In Balance) | Over Supply | |
| 36. | Is the Marketing Time: | Under 3 Months | 3-6 Months | (Over 6 Months) |

## DOCUMENTATION

Please enclose the following information with the completed Condo Project Questionnaire:

➢ Legible copy of master insurance policy declaration page to indicate the following: hazard insurance to cover 100% of the insurable replacement cost of the improvements, flood insurance if applicable coverage at least equal to the lesser of 100% of insurable value or maximum coverage under NFIP and liability insurance providing at least $1MM of coverage.

➢ Evidence of Fidelity Bond insurance for projects over 20 units and project is new (new construction or new conversion).

N/A ➢ Current Operating Budget required for the following:
  o New construction and new full gut rehabs if project contains over 200 units.
  o Non gut rehabs, regardless of number of units, if project is considered new

N/A ➢ Legal documents including Master Association documents, if applicable (Declaration of Condominium, Articles of Incorporation, By-laws and Master Deed ) are required for the following:
  o New construction and new gut rehabs if project contains over 200 units.
  o Non gut rehabs, regardless of number of units, if project is considered new

N/A ➢ Engineer's Report and evidence of repairs/renovations, for non gut rehabs, if applicable
➢ Leasehold agreement, if applicable
➢ Completion bond, if applicable

I, the undersigned, certify that to the best of my knowledge and belief, the information and statements contained on this form and the attachments are true and correct.

Signature of Association Representative or Preparer

_Courtney Ruiz_

Name of Association Representative or Preparer and Title

_Courtney Ruiz_

Preparer's Company Name and Address _Positano Homes  601 Tuscan Dr. Irving, TX 75039_

_1-10-08_

Date of Completion _____    Telephone _972-556-0785_

CONDOMINIUM PROJECT QUESTIONNAIRE – 11/06

Claim no. 4751

# CONDOMINIUM PROJECT QUESTIONNAIRE

| | | | | |
|---|---|---|---|---|
| 12. | Are there any monthly assessments delinquent more than 30 days? | YES ☐ | NO ☒ | |
| | Provide the number of units that are delinquent and the exact dollar amount outstanding. | $ | / # | |
| 13. | Do the legal documents of the homeowners' association contain language that protects the first mortgage rights? | YES ☐ | NO ☐ | |
| 14. | Provide date control of homeowners' association was turned over to unit owners. 3/4 Sold & Closed | / / Month/Date/Year | | |

| | | | | |
|---|---|---|---|---|
| 15. | Is there any pending litigation involving the homeowners' association or developer? • If YES, provide details of the circumstances surrounding the litigation. | YES ☐ | NO ☒ | |
| 16. | Have project legal documents been legally recorded (Articles of Incorporation, By-laws, Declaration, etc.) | YES ☒ | NO ☐ | |
| 17. | Is project built on a Leasehold Estate? • If yes, provide leasehold agreement | YES ☐ | NO ☒ | |

**TWO UNIT-TO-FOUR UNIT CONDO**

| | | | | |
|---|---|---|---|---|
| 18. | Are at least 1 out of 2 units, 2 out of 3 units or 3 out of 4 units sold as owner occupied or second home? | YES ☒ | NO | |

**PROJECT INSURANCE REQUIREMENTS**

| | | | | |
|---|---|---|---|---|
| 19. | Is hazard insurance in place to cover 100% of the insurable replacement cost of the project improvements, including the individual units? The deductible should not exceed up to 5% of the face amount of the insurance policy. | YES ☐ | NO ☐ | |
| 20. | Is liability insurance in place providing at least $1MM of coverage for bodily injury and property damage per occurrence? | YES ☐ | NO ☐ | |
| 21. | Is flood insurance (if required) in place providing coverage at least equal to the lesser of 100% of the insurable value of the facilities or the maximum coverage available under NFIP? (Maximum deductible is the lesser of $5,000.00 or 1% of policy's face amount unless state law requires a higher deductible). | YES ☐ | NO ☐ | |
| 22. | Is fidelity bond insurance in place covering the maximum amount of funds that will be in the custody of the owners association or management company at any time? Required if project is 20 units or more, and project is new (new construction or new conversion) | YES ☐ | NO ☐ | |

**PROJECT ELIGIBILITY GUIDELINES**

| | | | | |
|---|---|---|---|---|
| 23. | Is Project a Condo hotel? | YES ☐ | NO ☒ | |
| 24. | Is Project part of a Master Association? | YES ☐ | NO ☒ | |
| 25. | Do all units contain full-sized kitchen appliances? | YES ☒ | NO ☐ | |
| 26. | Does Project have hotel type services? • If yes, provide types of services | YES ☐ | NO ☒ | |
| 27. | Is Project a timeshare or a segmented ownership project? | YES ☐ | NO ☒ | |
| 28. | Is Project a houseboat project? | YES ☐ | NO ☒ | |

**SELLER'S WARRANTY**

I hereby certify that I have reviewed the questionnaire and the project meets the criteria for the following classification:

GMACM Warranty        _____

Fannie May Type        _____

Freddie Mac Class      _____

Approval Date          _____          Expiration Date    _____

# POSITANO

### LAS COLINAS

January 10, 2008,

To Whom It May Concern,

Phase Two at Positano Homes consists of ten Villas.   Ten Villas in Phase Two are

complete.

Sincerely,

Courtney Ruiz
Sales Manager
Positano Homes
Las Colinas
972.556.0789
Courtney.ruiz@naproperties.com

08-01-2011

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

1. **PARTIES:** The parties to this contract are _Louis G Nemeth , Cindy Nemeth_ (Seller)
and _Andrew Auerbach_ (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:**
 A. LAND: Lot _____ Block _A PT_ _Positano Condominiums_
 Addition, City of _Irving_ _____ County of _Dallas_
 Texas, known as _659 Via Ravello #659_
 _75039 - 2854_ (address/zip code), or as described on attached exhibit.

 B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas and satellite dish system and equipment, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.

 C. ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) satellite dish systems, (ii) garage doors, (iii) entry gates, and (iv) other improvements and accessories.

 D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____

 The land, improvements and accessories are collectively referred to as the "Property".

3. **SALES PRICE:**
 A. Cash portion of Sales Price payable by Buyer at closing ..................... $ _25,000_
 B. Sum of all financing described below (excluding any loan funding
 fee or mortgage insurance premium) ................................ $ _400,000_
 C. Sales Price (Sum of A and B) .......... _for city MH 1,500_ $ _425,000_
    _236,500_

4. **FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
 ☒ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ _200,000 - 411,500_ (excluding any loan funding fee or mortgage insurance premium).
    (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.
    (2) Credit Approval: (Check one box only)
       ☒ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
       ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
 ☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
 ☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ _n/a_, secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

TAR 1601    Initialed for Identification by Buyer _AA_    and Seller ___  ___    TREC NO. 20-10
RE/MAX Above 6358 Meredith Ave, Dallas, TX 75214    Phone: 214 _____    Fax:

# Exhibit B

Claim No. 4131

Contract Concerning **659 Via Ravello, 75039**                    Page 2 of 9   08-01-2011
(Address of Property)

**5. EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit
$**3,900.00**        as earnest money with      **Republic Title**      as escrow agent,
at        **3131 Turtle Creek Blvd., Dallas, TX 75219**            (address).
Buyer shall deposit additional earnest money of $ **n/a**              with escrow agent within
**n/a** days after the effective date of this contract. If Buyer fails to deposit the earnest money as required
by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. **TITLE POLICY:** Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of
title insurance (Title Policy) issued by             **Republic Title**
(Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer
against loss under the provisions of the Title Policy, subject to the promulgated exclusions
(including existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 4.
(4) Utility easements created by the dedication deed or plat of the subdivision in which the
Property is located.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by
Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related
matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary
lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's
expense, may have the exception amended to read, "shortages in area".
B. **COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller
shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense,
legible copies of restrictive covenants and documents evidencing exceptions in the
Commitment (Exception Documents) other than the standard printed exceptions. Seller
authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at
Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not
delivered to Buyer within the specified time, the time for delivery will be automatically extended
up to 15 days or the Closing Date, whichever is earlier.
C. **SURVEY:** The survey must be made by a registered professional land surveyor acceptable to
the Title Company and Buyer's lender(s). (Check one box only)
☒ (1) Within ____**3**____ days after the effective date of this contract, Seller shall furnish to Buyer
and Title Company Seller's existing survey of the Property and a Residential Real
Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit).
**If Seller fails to furnish the existing survey or affidavit within the time
prescribed**, Buyer shall obtain a new survey at Seller's expense no later than 3
days prior to Closing Date. If the existing survey or affidavit is not acceptable to Title
Company or Buyer's lender(s), Buyer shall obtain a new survey at Seller's/
☒ Buyer's expense no later than 3 days prior to Closing Date.
☐ (2) Within ____**n/a**____ days after the effective date of this contract, Buyer shall obtain a new
survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual
receipt or the date specified in this paragraph, whichever is earlier.
☐ (3) Within ____**n/a**____ days after the effective date of this contract, Seller, at Seller's expense
shall furnish a new survey to Buyer.
D. **OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title:
disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
Commitment other than items 6A(1) through (8) above; or which prohibit the following
activity: **Single family residence**

Buyer must object the earlier of (i) the Closing Date or (ii) ____**3**____ days after Buyer receives the
Commitment, Exception Documents, and the survey. Buyer's failure to object within the time

TAR 1601    Initialed for identification by Buyer _____ and Seller _____    TREC NO. _____

Contract Concerning _659 Via Ravello   75039_
(Address of Property)

Page 3 of 9 08-01-201_

allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within __ days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) PROPERTY OWNERS ASSOCIATION(S) MANDATORY MEMBERSHIP: The Property ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property. If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association should be used for each association.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer

Contract Concerning **659 Via Ravello 75039**                                          Page 4 of 9 08-01-2011
(Address of Property)

hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

**7. PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall turn on existing utilities for inspections.

B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE** (Notice): (Check one box only)
☒ (1) Buyer has received the Notice.
☒ (2) Buyer has not received the Notice. Within ___ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.

D. **ACCEPTANCE OF PROPERTY CONDITION:** (Check one box only)
☒ (1) Buyer accepts the Property in its present condition.
☐ (2) Buyer accepts the Property in its present condition provided Seller, at Seller's expense shall complete the following specific repairs and treatments: n/a
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs.)

**NOTICE TO BUYER AND SELLER:** Buyer's agreement to accept the Property in its present condition under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

E. **LENDER REQUIRED REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. **COMPLETION OF REPAIRS AND TREATMENTS:** Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date. All required permits must be obtained, and repairs and treatments must be performed by persons who are licensed or otherwise authorized by law to provide such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may do so and receive reimbursement from Seller at closing. The Closing Date will be extended up to 15 days, if necessary, to complete repairs and treatments.

G. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

TAR 1601    Initialed for Identification by Buyer ___ and Seller ___    TREC NO.

Contract Concerning _1659 Via Ravello 75039_     Page 5 of 9 08-01-2011
(Address of Property)

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ ~~495.00~~ M. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

8. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. CLOSING:
   A. The closing of the sale will be on or before _March 2_ ~~February 28~~ NK Jun, 2012                 , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
   B. At closing:
      (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
      (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
      (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
      (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
      (5) If the Property is subject to a lease, Seller shall (i) deliver to Buyer the lease(s) and the move-in condition form signed by the tenant, if any, and (ii) transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.

11. SPECIAL PROVISIONS: (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

TAR 1601    Initialed for identification by Buyer _MK_ and Seller _CN  LGN_ TREC NO. 20-11

Contract Concerning 659 Via Ravello 75039                    Page 6 of 9 08-01-2011
                         (Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
  (1) Expenses payable by Seller (Seller's Expenses):
    (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
    (b) Seller shall also pay an amount not to exceed $ 5,500 to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
  (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Finding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails within the time allowed to make any non-casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☑ will ☐ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

TAR 1601    Initialed for identification by Buyer _____ and Seller _____

Contract Concerning **659 Via Ravello 75039**
(Address of Property)

**18. ESCROW:**
  A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
  B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
  C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
  D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
  E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Buyer at: Andrew Auerbach

1656 Tamarisk Ct.

Wichita Ks 67230

Telephone: (316)258-8535

Facsimile: _____

E-mail: jinheea@cox.net, aauerbach@co
x.net

To Seller at: CC Agent

Lou & Cindy Nemeth

659 Via Ravello

Irving, Tx. 75039

Telephone: 504-488-0404

Facsimile: _____

E-mail: lou.nemeth@cae.com

TAR 1601    Initialed for identification by Buyer _____    and Seller _____    TREC NO. 20-??

Contract Concerning _659 Via Ravello 75039_    Page 8 of 9  06-01-2011
(Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☒ Third Party Financing Addendum for Credit Approval

☐ Seller Financing Addendum

☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Other (list): _n/a_

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ _100.00_ (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _10_ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☒ will ☐ will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY:** TREC rules prohibit real estate licensees from giving legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's
Attorney is: _n/a_
_n/a_
_n/a_

Telephone: _n/a_

Facsimile: _____

E-mail: _n/a_

Seller's
Attorney is: _n/a_
_n/a_
_n/a_

Telephone: _n/a_

Facsimile: _____

E-mail: _n/a_

EXECUTED the _9th_ day of _February_, _2011_ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_____
Buyer  Andrew Auerbach

_____
Buyer

_____
Seller

_____
Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-10. This form replaces TREC NO. 20-9.

Claim 00 4151

Contract Concerning  659 Via Ravello 75039                                    Page 9 of 9 08-01-2011
                              (Address of Property)

## BROKER INFORMATION

RE/MAX Associates of Dallas    0510070    Coldwell Banker Residential    0420132
Other Broker Firm    License No.    Listing Broker Firm    License No.

represents  [X] Buyer only as Buyer's agent    represents  [ ] Seller and Buyer as an intermediary
            [ ] Seller as Listing Broker's subagent    [X] Seller only as Seller's agent

Jeff Stone    (972) 907-0000    Cyndi Laird
Licensed Supervisor of Associate    Telephone    Licensed Supervisor of Associate    Telephone

Mindy Farris    (469) 569-2968    Jini Cyr    972-345-6256
Associate    Telephone    Listing Associate    Telephone
                                          Coldwell Banker
1221 Abrams Rd. #130    7001 Preston Rd #125  214.559.4749
Other Broker's Address    Facsimile    Listing Broker's Office Address    Facsimile
Richardson    TX    75081    Dallas    TX    75205
City    State    Zip    City    State    Zip

mkfarris@gmail.com    Jini.cyr@cbdfw.com
Associate Email Address    Listing Associate's Email Address

                                          n/a
                                          Selling Associate    Telephone

                                          n/a
                                          Selling Associate's Office Address    Facsimile
                                          n/a                          n/a
                                          City    State    Zip

                                          n/a
                                          Selling Associate's Email Address

Listing Broker has agreed to pay Other Broker    3%    of the total sales price when the Listing Broker's
fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker                          Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of [ ] Contract and [ ] $_____ Earnest Money in the form of _____
is acknowledged.
Escrow Agent:  Republic Title    Date: _____

By:                                          ssigman@republictitle.com
   Sherry Sigman                             Email Address
3131 Turtle Creek Blvd                       Telephone: (214) 528-8916
Address
Dallas    TX    75219    Facsimile: (214) 522-2894
City    State    Zip

11-29-2010

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

## THIRD PARTY FINANCING ADDENDUM FOR CREDIT APPROVAL

TO CONTRACT CONCERNING THE PROPERTY AT

659 Via Ravello 75039

(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain credit approval for the financing (Credit Approval) Buyer shall furnish all information and documents required by lender for Credit Approval. Credit Approval will be deemed to have been obtained when (1) the terms of the loan(s) described below are available and (2) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history. If Buyer cannot obtain Credit Approval, Buyer may give written notice to Seller within ___28___ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not give such notice within the time required, this contract will no longer be subject to Credit Approval. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

*NOTE: Credit Approval does not include approval of lender's underwriting requirements for the Property, as specified in Paragraph 4.A.(1) of the contract.*

Each note must be secured by vendor's and deed of trust liens.

**CHECK APPLICABLE BOXES:**

☐ A. CONVENTIONAL FINANCING:
  ☐ (1) A first mortgage loan in the principal amount of $ _n/a_____ (excluding any financed PMI premium, due in full in _____n/a_____ year(s), with interest not to exceed ___n/a___ % per annum for the first _n/a_ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____n/a_____ % of the loan.
  ☐ (2) A second mortgage loan in the principal amount of $ n/a_____ (excluding any financed PMI premium, due in full in _____n/a_____ year(s), with interest not to exceed _____n/a_____ % per annum for the first _n/a_ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____n/a_____ % of the loan.
☐ B. TEXAS VETERANS LOAN: A loan(s) from the Texas Veterans Land Board of $ _n/a____ for a period in the total amount of ____n/a____ years at the interest rate established by the Texas Veterans Land Board.
☐ C. FHA INSURED FINANCING: A Section _____n/a_____ FHA insured loan of not less than $ _n/a_____ (excluding any financed MIP), amortizable monthly for not less than _n/a_ years, with interest not to exceed ___n/a___ % per annum for the first _n/a_ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed _____n/a_____ % of the loan. As required by HUD-FHA, if FHA valuation is unknown, "it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ _____ . The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the

RE/MAX Abrams 6358 Marquita Ave. Dallas, TX 75214                Initialed for Identification by Buyer _____ and Seller _____                TREC NO. 40-4
Phone: 214.827.3955          Fax:
                          Mindy Farris                                                                    Andrew and
                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Third Party Financing Condition Addendum Concerning                    Page 2 of 2   11-29-2010

659 Via Ravello 75039
(Address of Property)

*appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable."*

☐ **D. VA GUARANTEED FINANCING:** A VA guaranteed loan of not less than $ ~~400,000~~ 411,500 (excluding any financed Funding Fee), amortizable monthly for not less than _____30_____ years, with interest not to exceed ___4.000___ % per annum for the first ___30___ year(s) of the loan with Adjusted Origination Charges as shown on Buyer's Good Faith Estimate for the loan not to exceed ___1.000___ % of the loan.

**VA NOTICE TO BUYER** *"It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Credit Approval of Buyer.

_____          _____
Buyer Andrew Auerbach                      Seller

_____          _____
Buyer                                      Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 40-4. This form replaces TREC No. 40-3.

TREC NO. 40-4



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-29-2010

# ADDENDUM FOR PROPERTY SUBJECT TO
# MANDATORY MEMBERSHIP IN A PROPERTY
# OWNERS ASSOCIATION

(NOT FOR USE WITH CONDOMINIUMS)

ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT

659 Via Bavello 75039
(Street Address and City)

(Name of Property Owners Association)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) the restrictions applying to the subdivision, (ii) the bylaws and rules of the Property Owners Association (Association), and (iii) a resale certificate, all of which comply with Section 207.003 of the Texas Property Code.
(Check only one box):

☒ 1. Within **14** days after the effective date of the contract, Seller shall, at Seller's expense, deliver the Subdivision Information to Buyer. If Buyer does not receive the Subdivision Information, Buyer may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract for any reason within 7 days after Buyer receives the Subdivision Information or prior to closing, whichever first occurs, and the earnest money will be refunded to Buyer.

☐ 2. Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐ does ☐ does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☐ 3. Buyer does not require delivery of the Subdivision Information.

If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer.

Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**B. FEES:** Except as provided by Paragraph C, Buyer shall pay any and all Association fees or other charges resulting from the transfer of the Property not to exceed $ __50%__ and Seller shall pay any excess.

**C. DEPOSITS FOR RESERVES:** Buyer shall pay any deposits for reserves required at closing by the Association.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

_____    _____
Buyer Andrew Auerbach      Seller

_____    _____
Buyer                      Seller

This form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 36-6. This form replaces TREC No. 36-5.

TAR 1922                                                    TREC NO. 36-6
RE/MAX Abrams 6328 Mercedes Ave, Dallas, TX 75214         Phone: 214.827.3955    Fax:    Andrew and Cho

MAR. 1. 2012 12:58PM    WF HOME MORTGAGE              NO. 3850   P. 1

## Homeowner's Association Certification

**WELLS FARGO HOME MORTGAGE**

Date *2/28/12*   Loan # *0337189384*   Branch Contact Name & Phone *Caleb Arbter 866-209-4154 x75817*

Project Name and Address *Positano Condominiums*

1. Are all common elements and/or facilities substantially complete? ☒Yes ☐No
   If no, are all common elements and/or recreational facilities associated with the subject phase complete?
   ☐ Yes  ☐ No

2. Is the project subject to additional phasing and add-ons? ☒Yes ☐No
   If yes, number of additional phases and units to be built:  Phases: *One* Units: *46*

3. Is the project a conversion of an existing building?  ☐ Yes ☒No   If yes, what was original
   If yes, was conversion a full gut-rehabilitation?   ☐ Yes ☐ No   purpose? _____

| | Entire Project | Subject Phase | |
|---|---|---|---|
| 4. Date control of the HOA transferred from the developer to unit owners. | *Declarent Still in control once 75%* | | *Closed refers to owners control* |
| 5. Date when first units made available for sale | *16 16* | *10/7* | |
| 6. Total number of units | *170* | *40* | |
| 7. Number of residential units sold and closed: | *100* | *35* | |
| 8. Number of units under contract: | *2* | *0* | |
| 9. A. Number of units owned as second/vacation homes: | *5* | *3* | |
|    B. Number of units owned as investment properties (never occupied for personal use): | *0* | *0* | |
|    C. Number of rented units owned by the developer/association: | *15* | *5* | |
| 10. Number of sales in last 90 days: | *2* | *0* | |

11. Does any one person or entity own more than one unit? ☒Yes ☐No
    If yes, list how many each own:  *Declarent*
    *owns all unsold units*

12. How many units are over 30 days delinquent?  *1*

13. Are there any pending special assessments? ☐ Yes ☒No

    If yes, explain: _____

14. Is the HOA involved in any litigation, mediation, arbitration or other dispute resolution process? ☐ Yes ☒No

    If yes, explain: _____

15. Are there any adverse environmental factors affecting the project as a whole or as individual units? ☐ Yes ☒No

16. Does the homeowner's association have a reserve fund separate from the operating account? ☒ Yes ☐ No

    If yes, is it adequate to prevent deferred maintenance? ☒ Yes ☐ No  Current amount in fund $*215,282.00* as of

17. Total income budget for this year: $*501,051.00* Total Reserves budgeted for the year $*87,059.00*  *12/28/11*

18. Do the project legal documents include any restrictions on sale which would limit the free transferability of title?
    (i.e. Age Restrictions, First Right of Refusal, other deed/income restrictions)  ☐ Yes ☒No

19. Is the unit part of a legally established condominium project, in which common areas are
    owned jointly by unit owners? ☐ Yes ☒No

20. Are the units owned in fee simple or leasehold? ☒Fee Simple ☐ Leasehold

21. Are the amenities/recreational facilities owned by the HOA? ☒Yes ☐No

——————————— Continued on next page ———————————

Effective Date: February 2011                                    Page 1

02/28/2012  11:58AM (GMT-07:00)

MAR. 1. 2012 12:58PM    WF HOME MORTGAGE                    NO. 3850    P. 2

## Homeowner's Association Certification


WELLS FARGO HOME MORTGAGE

22. If a unit is taken over in foreclosure or deed-in-lieu, is the mortgagee (lender) responsible for delinquent HOA dues?
☒ Yes  ☐ No
If yes, are they responsible for _____ 0-6 months or _____ 7+ months

23. Does the property operate as a resort hotel; renting units on a daily basis? ☐ Yes  ☒ No

If yes, number of years in operation: _____

Please check applicable services:
☐ Restaurant / food service   ☐ Check-in rental desk   ☐ Daily maid service
☐ Time share   ☐ Mandatory rental pool
☐ Commercial (boutiques, etc.) _____ percentage of square footage _____ %

24. Is any part of the project used for commercial purposes?
If yes, what percentage of square footage?    0 %

25. Do the project legal documents or local zoning limit the amount of time the owner can live in their unit?  ☐ Yes  ☒ No

26. HOA is named insured on master insurance policy?    Yes

27. Are common elements/limited common elements insured to 100% replacement cost? ☒ Yes ☐ No
Deductible $ _____   Expiration date: _____

28. Coverage $ _____

29. Are units or common improvements located in a flood zone? ☐ Yes ☒ No

If yes, is flood insurance in force? ☐ Yes ☐ No

Does this cover at least 100% replacement? ☐ Yes ☐ No

Or, is this the coverage maximum available per condominium federal flood program? ☐ Yes ☐ No

*Please confirm all insurance information w/ Valerie Renn. (?)*

30. Is the HOA insured for general liability? ☒ Yes ☐ No  If yes, amount per occurrence $ _____

31. Does the HOA provide hazard insurance coverage for the interior (walls-in) of the condominium unit?
☐ Yes  ☒ No

32. Is the HOA insured for Fidelity Bond? ☒ Yes ☐ No  If yes, amount $ _____
Amount carried by management Co.: _____

33. Minimum number of days required for written notification to be given to HOA or insurance trustee before any substantial changes or cancellation of the project coverage:    30 days

The above information was obtained from the following representative of the project's Homeowner's Association.
#1 – 13 must be completed for the Homeowner's Association re-certification

Name: Barbara Coats     Phone: 972-556-0789
Position: HOA Manager     Date: 2/28/12
Reviewer's Signature: _____     Date: _____    Place: _____

A. Settlement Statement (HUD-1)



U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

REPUBLIC TITLE®

| B. Type of Loan | | | |
|---|---|---|---|
| CONV INS | File Number | Loan Number | Mortgage Insurance Case Number |
| | 12R04273 TG1 | 0337189336 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. Name and Address of Borrower: ANDREW J. AUERBACH
659 VIA RAVELLO, IRVING, TX 75039

E. Name and Address of Seller: LOUIS GEZA NEMETH AND CINDY NEMETH

F. Name and Address of Lender: WELLS FARGO BANK, N.A.
2701 WELLS FARGO WAY , MINNEAPOLIS, MN 55408

G. Property Location: 659 VIA RAVELLO, IRVING, TEXAS 75039

H. Settlement Agent: Republic Title of Texas, Inc.    TIN 75-1825384

Place of Settlement: 3131 Turtle Creek Blvd., Suite 101, Dallas, Texas 75219 (214) 528-8916

| I. Settlement Date: | 03/02/2012 | Funding Date: | 03/02/2012 |
|---|---|---|---|

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract sales price | 436,500.00 | 401. Contract sales price | 436,500.00 |
| 103. Charges from line 1400 | 11,929.03 | | |
| Adjustments for items paid | | Adjustments for items paid | |
| by seller in advance | | by seller in advance | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| 120. Gross Amount Due from Borrower | 448,429.03 | 420. Gross Amount Due to Seller | 436,500.00 |
| 200. Amounts Paid by or in Behalf of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | 3,900.00 | 502. Charges from line 1400 | 23,136.36 |
| 202. Principal amount of new loan | 386,500.00 | 505. Payoff lien to GMAC MORTGA* | 398,106.15 |
| 204. Option fee | 100.00 | 506. Option fee | |
| 205. Seller Paid Owner's | 2,642.00 | 507. Seller Paid Owner's | 2,642.00 |
| Policy/Guaranty Fee | | Policy/Guaranty Fee | |
| 206. Realtor credit | 500.00 | 508. Seller Paid Closing Costs | 8,500.00 |
| 207. Seller Paid Closing Costs | 8,500.00 | Adjustments for items | |
| Adjustments for items | | unpaid by seller | |
| unpaid by seller | | 509. Property taxes | 1,839.43 |
| 210. Property taxes | 1,839.43 | from 01/01/2012 thru 03/02/2012 | |
| from 01/01/2012 thru 03/02/2012 | | 510. ASSESSMENT | 109.43 |
| 212. ASSESSMENT | 109.43 | from 01/01/2012 thru 03/02/2012 | |
| from 01/01/2012 thru 03/02/2012 | | 511. POSITANO HOA DUES | 18.90 |
| 213. POSITANO HOA DUES | 18.90 | from 03/01/2012 thru 03/02/2012 | |
| from 03/01/2012 thru 03/02/2012 | | | |
| 220. Total Paid by/for Borrower | 404,109.76 | 520. Total Reduction Amount Due Seller | 434,452.27 |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at Settlement to/from Seller | |
| 301. Gross amount due from | | 601. Gross amount due to | |
| borrower (line 120) | 448,429.03 | seller ( line 420 ) | 436,500.00 |
| 302. Less amounts paid by/for | | 602. Less reduction amount | |
| borrower (line 220) | 404,109.76 | due seller ( line 520 ) | 434,452.27 |
| 303. Cash From Borrower | 44,319.27 | 603. Cash To Seller | 2,047.73 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting of data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Republic Title of Texas, Inc.

SETTLEMENT OR ESCROW AGENT

Previous edition are obsolete

Assumption or Payoff breakdowns, IF ANY,
will appear on addendum.    Page 1 of 3

Notice to Seller

See attached 1099-S Addendum or Certification form for important tax information.

DATE: 03/02/2012  TIME: 8:41 AM        HUD-1

GF NO. 12R04273 TC1

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **L. Settlement charges** | | | |
| **700. Total Real Estate Broker Fee** | | | |
| | Division of commission (line 700) as follows: | | |
| 701. $ | 8730.00 to Coldwell Banker Residential | | |
| 702. $ | 13095.00 to RE/MAX ASSOCIATES OF DALLAS | | |
| 703. | Commission paid at settlement | | 21,825.00 |
| | DISCLOSURE REQUIRED BY SEC. 2702.033 INSURANCE CODE: | | |
| | The following persons, firms, or corporations received a portion of the real estate commission amount | | |
| | shown above: | | |
| | COLDWELL BANKER, JINI GYR, ASSOCIATES OF DALLAS REAL ESTATE LLC, MINDY | | |
| | FARRIS | | |
| 704. | TRANSACTION FEE to COLDWELL BANKER | | 250.00 |
| **800. Items Payable in Connection with Loan** | | | |
| 801. | Our origination charge | $    110.00    (from GFE #1) | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen $ | (from GFE #2) | | |
| 803. | Your adjusted origination charges | (from GFE A) | 110.00 | |
| 804. | Appraisal fee to RELS VALUATION | (from GFE #3) | 400.00 | |
| 805. | Credit report to RELS CREDIT | (from GFE #3) | 11.00 | |
| 806. | Tax service to | (from GFE #3) | | |
| 807. | Flood certification | (from GFE #3) | | |
| 808. | DOCUMENT PREPARATION to BROWN, FOWLER & ALSUP 110.00 | | | |
| **900. Items Required by Lender to be Paid in Advance** | | | |
| 901. | Daily interest charges from 03/02/2012 to 04/01/2012 @ $31.7700 /day | (from GFE #10) | 953.10 | |
| 902. | Mortgage insurance premium for        months to | (from GFE #3) | | |
| 903. | Homeowner's insurance for 1.00 year to USAA | (from GFE #11) | 1,271.94 | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. | Initial deposit for your escrow account | (from GFE #9) | 4,793.34 | |
| 1002. | Homeowner's insurance | 3.00 months @$    106.00 per month $ | 318.00 | |
| 1003. | Mortgage insurance | months @$    per month $ | | |
| 1004. | Property taxes | | | |
| | County taxes | 6.00 months @$    904.88 per month $ | 5,429.28 | |
| 1005. | | months @$    per month $ | | |
| 1006. | | months @$    per month $ | | |
| 1007. | Aggregate Adjustment | -$    953.94 | | |
| **1100. Title Charges** | | | |
| 1101. | Title services and lender's title insurance (see HUD-1 Addendum) | (from GFE #4) | 620.65 | |
| 1102. | Settlement or closing fee | $ | | 325.00 |
| 1103. | Owner's title insurance (see HUD-1 Addendum) | (from GFE #5) | 2,642.00 | |
| 1104. | Lender's title insurance | $    270.65 | | |
| 1105. | Lender's title policy limit | $386,500.00 | | |
| 1106. | Owner's title policy limit | $436,500.00 | | |
| 1107. | Agent's portion of the total title insurance premium | $2,672.35 | | |
| 1108. | Underwriter's portion of the total title insurance premium | $436.30 | | |
| 1109. | Title Charges to Republic Title: | | | |
| | Courier | | | 10.00 |
| 1110. | Attorney Charges to Hunter & Kramer, P.C.: | | | |
| | Release of Lien | | | 75.00 |
| 1111. | Tax Certificate | | | 47.36 |
| 1112. | State of Texas Policy Guaranty Fee Loan policy to The Guaranty Association $2.00 | | | |
| 1113. | State of Texas Policy Guaranty Fee Owner's policy to The Guaranty Association $2.00 | | | |
| 1114. | Document Preparation to BROWN, FOWLER & ALSUP | | | 95.00 |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. | Government recording charges | (from GFE #7) | 124.00 | |
| 1202. | Deed $28.00        Mortgage $96.00        Releases $24.00 | | | 24.00 |
| 1203. | Transfer taxes | (from GFE #8) | | |
| 1204. | City/County tax/stamps        Deed $        Mortgage $ | | | |
| 1205. | State tax/stamps        Deed $        Mortgage $ | | | |

SEE CONTINUATION PAGE

The undersigned understands the Settlement or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof. Any real estate agent or lender involved may be furnished a copy of this Statement.

The undersigned understands that tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others, or estimates for current year, and in the event of any change for current year, all necessary adjustments must be made between Purchaser and Seller direct.

The undersigned hereby authorizes Settlement or Escrow Agent to make expenditures and disbursements as shown above and approves same for payment. The undersigned also acknowledges receipt of Loan Funds, if applicable, in the amount shown above and a receipt of a copy of this Statement.

LOUIS GEZA NEMETH                Seller                    ANDREW J. AUERBACH            Buyer

CINDY NEMETH                Seller                    _____    Buyer

Previous editions are obsolete          Page 2 of 3          DATE: 03/02/2012 TIME: 9:41 AM          HUD-1

Claim No. 4131

GF NO. 12R04273 TC1

| L. Settlement Charges                                    Page 2 Continued |  | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **1300. Additional Settlement Charges** |  |  |  |
| 1301.  Required services that you can shop for | (from GFE #6) | 124.00 |  |
| 1302.  FLOOD FEE LIFE OF LOAN to WF FLOOD SERVICES | $          19.00 |  |  |
| 1303.  TAX SERVICE FEE to WF REAL ESTATE TAX SERVICES | $        105.00 |  |  |
| 1304.  Home Warranty to HOME WARRANTY OF AMERICA |  |  | 485.00 |
| 1305.  MARCH HOA DUES to POSITANO CONDOMINIUM ASSOCIATION |  | 293.00 |  |
| 1306.  CAPITAL CONTRIBUTION to POSITANO CONDOMINIUM ASSOCIATION |  | 586.00 |  |
| **1400.  Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** |  | 11,929.03 | 23,136.36 |

The undersigned understands the Settlement or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof. Any real estate agent or lender involved may be furnished a copy of this Statement.

The undersigned understands that tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others, or estimates for current year, and in the event of any change for current year, all necessary adjustments must be made between Purchaser and Seller direct.

The undersigned hereby authorizes Settlement or Escrow Agent to make expenditures and disbursements as shown above and approves same for payment. The undersigned also acknowledges receipt of Loan Funds, if applicable, in the amount shown above and a receipt of a copy of this Statement.

_____
LOUIS GEZA NEMETH    Seller

_____
CINDY NEMETH    Seller

_____
ANDREW J. AUERBACH    Buyer

_____
Buyer

Previous editions are obsolete                Page 2 of 3        DATE: 03/02/2012 TIME: 9:41 AM        HUD-1



TEXAS ASSOCIATION OF REALTORS®

## RELEASE OF EARNEST MONEY

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of Realtors®, Inc. 2002

**RELEASE OF EARNEST MONEY BETWEEN THE UNDERSIGNED BUYER AND SELLER CONCERNING THE PROPERTY AT**

659 Via Ravello #659, Irving, TX

**NOTICE: This form provides for the release of the parties, brokers, and title companies from all liability under the contract (not just for disbursement of earnest money). Do not sign this form if it is not your intention to release all the persons signing this form from all liability under the contract. READ THIS RELEASE CAREFULLY. If you do not understand the effect of this release, consult your attorney BEFORE signing.**

A.    The undersigned Buyer and Seller release each other, any broker, title company, and escrow agent from any and all liability under the aforementioned contract.

B.    The undersigned direct _____ Republic Title _____ (escrow agent) to disburse the earnest money as follows:

$ _____3,900.00__ to _____ Andrew Auerbach _____

$ _____ to _____

$ _____ to _____

$ _____ to _____

_Buyer_ Andrew Auerbach    3/4/12  /Date          Seller Louis G. Nemeth          Date

Buyer                         Date          Seller Cindy Nemeth          Date
Address: 1656 Tamarisk Ct.                  Address: _____
Wichita, KS 67230

RE/MAX Associates of Dallas    03/04/2012    Coldwell Banker
Other/Cooperating Broker        Date          Listing/Principal Broker          Date

By _____    03/04/2012    By _____
                                Date                                  Date
Address: 1221 Abrams Rd. #130               Address: 7001 Preston Rd. #125
Richardson, TX 75081                        Dallas, TX 75205

(TAR-1904) 2-6-02                                              Page 1 of 1



12-05-2011

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

## NOTICE OF BUYER'S TERMINATION OF CONTRACT

CONCERNING THE CONTRACT FOR THE SALE OF THE PROPERTY AT

<u>659 Via Ravello #659</u>                              <u>Irving</u>
(Street Address and City)

BETWEEN THE UNDERSIGNED BUYER AND <u>Louis G. Nemeth, Cindy Nemeth</u>

────────────────────────────────────────────────── (SELLER)

Buyer notifies Seller that the contract is terminated pursuant to the following:

☐ (1) the unrestricted right of Buyer to terminate the contract under Paragraph 23 of the contract.

☐ (2) Buyer cannot obtain Credit Approval in accordance with the Third Party Financing Addendum for Credit Approval to the contract.

☒ (3) the Property does not satisfy the lenders' underwriting requirements for the loan under Paragraph 4A(1) of the contract.

☐ (4) Buyer elects to terminate under Paragraph A of the Addendum for Property Subject to Mandatory Membership in a Property Owners' Association.

☐ (5) Buyer elects to terminate under Paragraph 7B(2) of the contract relating to the Seller's Disclosure Notice.

☐ (6) Other *(identify the paragraph number of contract or the addendum)*: _____

────────────────────────────────────

────────────────────────────────────

────────────────────────────────────

────────────────────────────────────

*NOTE: Release of the earnest money is governed by the terms of the contract.*

_____  3/4/12      _____
Buyer              / Date       Buyer            Date
**Andrew Auerbach**

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 38-4. This form replaces TREC No. 38-3.

TREC No.38-4

RE/MAX Abrams 6358 Marquita Ave. Dallas, TX 75214
Phone: 214.827.3955      Fax: .            Mindy Farris                    Andrew and Cho

| Item | Date Purchased | Purchase Amount |
|---|---|---|
| Antique Silver Flatwear Set - Wallace | 1952 | $15,000 |
| Office Furniture | 2008 | $18,000 |
| Window Film 3M | 2008 | $3,800 |
| Power tools/tool box/ladders | | $3,200 |
| 2 leather coaches | 2008 | $1,600 |
| dining rm table/chairs | 2003 | $2,000 |
| dining rm hutch | 2003 | $1,500 |
| glass coffee tale - Pottery Barn | 2008 | $600 |
| 2 red end tables- Pottery Barn | 2008 | $800 |
| 2 wrought iron lamps | 2008 | $400 |
| 6 ft christmas tree w/lights | 2003 | $600 |
| Custom Plantation Shutters | 2008 | |
| King size matteress | 2011 | $1,000 |
| 2 blk marble topped & wood night stands | 2005 | $1,800 |
| Teak wood corner hutch | 1980 | $800 |
| 2 brass & glass book shelves | 1980 | $1,600 |
| Antique buffet w/ beveled glass | 1930 | $500 |
| Antique child's wardrobe w/ beveled mirror | 1930 | $500 |
| 2 wrought iron & faux marble end tables | 2005 | $500 |
| 1 wrought iron and faux marble coffee table | 2005 | $400 |
| red oriental rug 8x10 - Pottery Barn | 2008 | $800 |
| sisal rug with red border 8x10 - Pottery Barn | 2008 | $600 |
| 2 lamps blk/iron bronze silk shade | 2008 | $300 |
| 18 pc place setting white dishes - Pottery Barn | | |
| sheets 4 bedrooms | | |
| towels - 4 bedrooms | | |
| pillows - 4 bedrooms | | |
| 2 comforter sets | | |
| 12 cut glass high ball glasses | | |
| 1 blk glass desk | 2011 | $200 |
| 1 Oreck upright vacumm | 2008 | $300 |
| American Girl Dolls -6 | 1995 | |
| American Girl Furniture | | |
| American Girl Clothes & Accessories | | |
| Barbie Doll Collection | 1960's | |
| 2-4ft pumpkins outside décor | | $50 |
| Antique Gold Wall Mirror 3x5 | 2005 | $400 |
| Christmas Decorations 20+ boxes | | |
| white meat serving platter - Pottery Barn | 2008 | $75 |
| 2 white vegetale serving bowls - Pottery Barn | 2008 | $80 |
| 1 standing silverwear cabinet from China | 1984 | $100 |
| Bosch Washer | 2008 | $1,000 |
| Bosch Dryer | 2008 | $1,000 |
| Misc items -frames, décor boxes, lamps | | $1,000 |
| wht 3 drawer nightstand - Pier One | 2008 | |
| wht 6 drawer dresser Haverty's | 2008 | |
| Wht mirror for dresser Haverty's | 2008 | |
| Blk 6 drawer dresser | 2008 | $900 |
| 2 teak wood chairs | 1990 | $500 |
| | | |
| | | |
| | | $61,905 |

# Exhibit C



# David L. Kane, P.C.
## ATTORNEY AT LAW

July 18, 2013

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED 70112000000120560438**

Residential Capital, LLC
P.O. Box 385220
Bloomington, Minnesota 55438

RE: Proof of Claim (4731); Residential Capital, LLC, Case No. 12-12020; Louis G. Nemeth (Claimant)

To Whom It May Concern:

    Enclosed please find the additional information requested on the above Proof of Claim.

    Should you have any questions or comments, please let me know.

Sincerely,



David L. Kane
Attorney at Law

RECEIVED
JUL 22 2013
U.S. BANKRUPTCY COURT
S.D.N.S.T. OF NEW YORK

cc United States Bankruptcy Court for the Southern District of New York
One Bowling Green, Room 534
New York New York 10004

5301 Village Creek Drive, Suite D
Plano, Texas 75093
Phone: 972-665-0055
Fax: 972-665-0100
www.davidkanepc.com