# **EXHIBIT E**

EX-4 7 he2indfinal.htm EX 4.3

EXECUTION COPY

GMACM HOME EQUITY LOAN TRUST 2007-HE2,

Issuer,

and

THE BANK OF NEW YORK TRUST COMPANY, N.A.,

Indenture Trustee

_____

INDENTURE

_____

Dated as of June 28, 2007

GMACM HOME EQUITY LOAN-BACKED TERM NOTES

TABLE OF CONTENTS

PAGE

ARTICLE I Definitions 2

     Section 1.01    Definitions.................................................................2
     Section 1.02    Incorporation by Reference of Trust Indenture Act...............................2
     Section 1.03    Rules of Construction......................................................2

ARTICLE II Original Issuance of Notes 3

     Section 2.01    Form.......................................................................3
     Section 2.02    Execution, Authentication and Delivery.....................................3

ARTICLE III Covenants 4

     Section 3.01    Collection of Payments with Respect to the Mortgage Loans.....................4
     Section 3.02    Maintenance of Office or Agency............................................4
     Section 3.03    Money for Payments to Be Held in Trust; Paying Agent.........................4
     Section 3.04    Existence..................................................................6
     Section 3.05    Priority of Distributions; Defaulted Interest................................6
     Section 3.06    Protection of Trust

Estate............................................................9
Section 3.07    Opinions as to Trust
Estate............................................................10
Section 3.08    Performance of Obligations; Servicing
Agreement........................................................10
Section 3.09    Negative
Covenants........................................................11
Section 3.10    Annual Statement as to
Compliance.......................................................11
Section 3.11    Recordation of
Assignments......................................................12
Section 3.12    Representations and Warranties Concerning the Mortgage
Loans...................12
Section 3.13    Assignee of Record of the Mortgage
Loans............................................................12
Section 3.14    Servicer as Agent and Bailee of the Indenture
Trustee..........................................................12
Section 3.15    Investment Company
Act..............................................................13
Section 3.16    Issuer May Consolidate,
etc..............................................................13
Section 3.17    Successor or
Transferee.......................................................15
Section 3.18    No Other
Business.........................................................15
Section 3.19    No
Borrowing........................................................15
Section 3.20    Guarantees, Loans, Advances and Other
Liabilities..........................15
Section 3.21    Capital
Expenditures.....................................................15
Section 3.22    Owner Trustee Not Liable for Certificates or Related
Documents...................15
Section 3.23    Restricted
Payments.........................................................16
Section 3.24    Notice of Events of
Default..........................................................16
Section 3.25    Further Instruments and
Acts.............................................................16
Section 3.26    Statements to
Noteholders......................................................16
Section 3.27    Determination of Note
Rate.............................................................17
Section 3.28    Payments under the
Policy...........................................................17
Section 3.29    Replacement/Additional
Enhancement......................................................17
Section 3.30    Additional Representations of
Issuer...........................................................18
Section 3.31    Yield Maintenance
Agreement........................................................19

ARTICLE IV The Notes; Satisfaction And Discharge Of
Indenture........................................................19
Section 4.01    The
Notes............................................................19
Section 4.02    Registration of and Limitations on Transfer and Exchange of Notes;
Appointment of Certificate
Registrar........................................................20
Section 4.03    Mutilated, Destroyed, Lost or Stolen
Notes............................................................21
Section 4.04    Persons Deemed
Owners...........................................................22
Section 4.05
Cancellation.....................................................22
Section 4.06    Book-Entry
Notes............................................................22
Section 4.07    Notices to
Depository.......................................................23
Section 4.08    Definitive
Notes............................................................23
Section 4.09    Tax
Treatment........................................................24
Section 4.10    Satisfaction and Discharge of
Indenture........................................................24
Section 4.11    Application of Trust
Money............................................................25
Section 4.12    Subrogation and
Cooperation......................................................26
Section 4.13    Repayment of Monies Held by Paying

Agent...................................................27
        Section 4.14          Temporary
Notes...................................................27

ARTICLE V Default And
Remedies................................................27
        Section 5.01          Events of
Default.................................................27
        Section 5.02          Acceleration of Maturity; Rescission and
Annulment...............................27
        Section 5.03          Collection of Indebtedness and Suits for Enforcement by Indenture
Trustee........28
        Section 5.04          Remedies;
Priorities..............................................30
        Section 5.05          Optional Preservation of the Trust
Estate..................................................32
        Section 5.06          Limitation of
Suits...................................................32
        Section 5.07          Unconditional Rights of Noteholders to Receive Principal and
Interest............33
        Section 5.08          Restoration of Rights and
Remedies................................................33
        Section 5.09          Rights and Remedies
Cumulative..............................................33
        Section 5.10          Delay or Omission Not a
Waiver..................................................34
        Section 5.11          Control by Enhancer or
Noteholders.............................................34
        Section 5.12          Waiver of Past
Defaults................................................34
        Section 5.13          Undertaking for
Costs...................................................35
        Section 5.14          Waiver of Stay or Extension
Laws....................................................35
        Section 5.15          Sale of Trust
Estate..................................................35
        Section 5.16          Action on
Notes...................................................37
        Section 5.17          Performance and Enforcement of Certain
Obligations............................37

ARTICLE VI The Indenture
Trustee.................................................38
        Section 6.01          Duties of Indenture
Trustee..................................................38
        Section 6.02          Rights of Indenture
Trustee..................................................40
        Section 6.03          Individual Rights of Indenture
Trustee..................................................41
        Section 6.04          Indenture Trustee's
Disclaimer..............................................41
        Section 6.05          Notice of Event of
Default................................................41
        Section 6.06          Reports by Indenture Trustee to
Noteholders.............................................42
        Section 6.07          Compensation and
Indemnity...............................................42
        Section 6.08          Replacement of Indenture
Trustee..................................................42
        Section 6.09          Successor Indenture Trustee by
Merger..................................44
        Section 6.10          Appointment of Co-Indenture Trustee or Separate Indenture
Trustee................44
        Section 6.11          Eligibility;
Disqualification.........................................45
        Section 6.12          Preferential Collection of Claims Against
Issuer..................45
        Section 6.13          Representations and
Warranties..............................................45
        Section 6.14          Directions to Indenture
Trustee..................................................46
        Section 6.15          Indenture Trustee May Own
Securities................................................46

ARTICLE VII Noteholders' Lists and
Reports.................................................47
        Section 7.01          Issuer to Furnish Indenture Trustee Names and Addresses of
Noteholders..........47

Section 7.02          Preservation of Information; Communications to
Noteholders.......................47
Section 7.03          Reports by
Issuer...................................................47
Section 7.04          Reports by Indenture
Trustee.........................48
Section 7.05          Exchange Act
Reporting..............................48

ARTICLE VIII Accounts, Disbursements and
Releases....................................48

Section 8.01          Collection of
Money..............................49
Section 8.02          Trust
Accounts.................................49
Section 8.03          Officer's
Certificate..............................49
Section 8.04          Termination Upon Distribution to
Noteholders............................50
Section 8.05          Release of Trust
Estate............................50
Section 8.06          Surrender of Notes Upon Final
Payment...............50

ARTICLE IX Supplemental
Indentures....................................................51

Section 9.01          Supplemental Indentures Without Consent of
Noteholders....................51
Section 9.02          Supplemental Indentures With Consent of
Noteholders...................52
Section 9.03          Execution of Supplemental
Indentures...........................54
Section 9.04          Effect of Supplemental
Indenture...............................54
Section 9.05          Conformity with Trust Indenture
Act..........................54
Section 9.06          Reference in Notes to Supplemental
Indentures...............54

ARTICLE X
Miscellaneous..................................................................

Section 10.01          Compliance Certificates and Opinions,
etc......................................54
Section 10.02          Form of Documents Delivered to Indenture
Trustee............................56
Section 10.03          Acts of
Noteholders....................................................57
Section 10.04          Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating
Agencies........58
Section 10.05          Notices to Noteholders;
Waiver................................58
Section 10.06          Alternate Payment and Notice
Provisions...........................59
Section 10.07          Conflict with Trust Indenture
Act.........................59
Section 10.08          Effect of
Headings...............................................59
Section 10.09          Successors and
Assigns...................................60
Section 10.10          
Severability...............................................60
Section 10.11          Benefits of
Indenture..............................60
Section 10.12          Legal
Holidays.........................................60
Section 10.13          GOVERNING
LAW...........................................60
Section 10.14          
Counterparts..............................................60
Section 10.15          Recording of
Indenture.............................61
Section 10.16          Issuer
Obligation.......................................61
Section 10.17          No
Petition.............................................61
Section 10.18          
Inspection................................................61

ARTICLE XI REMIC
Provisions...........................................................................62

       Section 11.01        REMIC
Administration.....................................................62
       Section 11.02        Servicer, REMIC Administrator and Indenture Trustee
Indemnification.............66
       Section 11.03        Designation of
REMIC(s).....................................................66


EXHIBITS
Exhibit A.........-        Form of Notes
Exhibit B.........-        Form of 144A Investment Representation
Exhibit C.........-        Form of Investor Representation Letter
Exhibit D.........-        Form of Transferor Certificate
Appendix A........-        Definitions

RECONCILIATION AND TIE BETWEEN TRUST INDENTURE
ACT OF 1939 AND INDENTURE PROVISIONS*

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1).................................................................6.11 | |
| (a)(2)....................................................................6.11 | |
| (a)(3)....................................................................6.10 | |
| (a)(4)....................................................................Not Applicable | |
| (a)(5)....................................................................6.11 | |
| (b)..............................................................6.08, 6.11 | |
| (c)....................................................................Not Applicable | |
| 311(a)....................................................................6.12 | |
| (b)........................................................................6.12 | |
| (c)....................................................................Not Applicable | |
| 312(a)..............................................................7.01, 7.02(a) | |
| (b).................................................................7.02(b) | |
| (c).................................................................7.02(c) | |
| 313(a)................................................................7.04 | |
| (b)....................................................................7.04 | |
| (c)............................................................7.03(a)(iii), 7.04 | |
| (d)....................................................................7.04 | |
| 314(a)..............................................................3.10, 7.03(a) | |
| (b)....................................................................3.07 | |
| (c)(1)............................................................8.05(c), 10.01(a) | |
| (c)(2)............................................................8.05(c), 10.01(a) | |
| (c)(3)....................................................................Not Applicable | |
| (d)(1)............................................................8.05(c), 10.01(b) | |
| (d)(2)............................................................8.05(c), | |

10.01(b)
        (d)(3).................................................................8.05(c),
10.01(b)

(e)......................................................................10.01(a)

315(a)...................................................................6.01(b)

(b).........................................................................6.05

(c).......................................................................6.01(a)

(d).......................................................................6.01(c)

(d)(1)....................................................................6.01(c)

(d)(2)....................................................................6.01(c)

(d)(3)....................................................................6.01(c)

(e).........................................................................5.13

316(a)(1)(A)...............................................................5.11

316(a)(1)(B)...............................................................5.12
        316(a)(2)...........................................................Not
Applicable

316(b).....................................................................5.07

317(a)(1)..................................................................5.04

317(a)(2)...............................................................5.03(d)

317(b)..................................................................3.03(a)

318(a)....................................................................10.07

        *This reconciliation and tie shall not, for any purpose, be deemed to be part of the within
indenture.

---

        This Indenture,  dated as of June 28, 2007, is between GMACM Home Equity Loan Trust
2007-HE2,  a Delaware
statutory  trust, as issuer (the  "Issuer"),  and The Bank of New York Trust Company,  N.A., as
indenture  trustee
(the "Indenture Trustee").


                                WITNESSETH:

        Each party  hereto  agrees as follows  for the  benefit of the other  party and for the
equal and  ratable
benefit of the  Noteholders  and the  Enhancer of the Issuer's  Series  2007-HE2 GMACM Home Equity
Loan-Backed  Term
Notes (the "Notes").


                                GRANTING CLAUSE:

        The Issuer hereby  Grants to the Indenture  Trustee on the Closing Date, as trustee for
the benefit of the
Noteholders  and the  Enhancer,  all of the Issuer's  right,  title and interest in and to all
accounts,  chattel
paper, general  intangibles,  contract rights,  payment  intangibles,  certificates of deposit,
deposit accounts,
instruments,  documents,  letters of credit, money, advices of credit,  investment
property,  goods and other
property  consisting  of,  arising  under or related to whether  now  existing or  hereafter
created in any of the
following: (a) the Initial  Mortgage Loans and any Subsequent  Mortgage Loans, and all monies
due or to become due
thereunder; (b) the  Custodial  Account, Note  Payment  Account,  Pre-Funding  Account and

Capitalized Interest
Account, and all funds on deposit or credited thereto from time to time; (c) all hazard insurance policies; (d)
the Yield Maintenance Agreement; and (e) all present and future claims, demands, causes and choses in action in
respect of any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature
whatsoever in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every
kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid
property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts,
rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other
property which at any time constitute all or part of or are included in the proceeds of any of the foregoing
(collectively, the "Trust Estate" or the "Collateral").

The foregoing Grant is made in trust to secure the payment of principal of and interest on, and any
other amounts owing in respect of, the Notes, equally and ratably without prejudice, priority or distinction, and
to secure compliance with the provisions of this Indenture, all as provided in this Indenture.

The foregoing Grant shall inure to the benefit of the Enhancer in respect of draws made on the Policy
and amounts owing from time to time pursuant to the Insurance Agreement (regardless of whether such amounts
relate to the Notes or the Certificates), and such Grant shall continue in full force and effect for the benefit
of the Enhancer until all such amounts owing to it have been repaid in full.

The Indenture Trustee, as trustee on behalf of the Noteholders, acknowledges such Grant, accepts the
trust under this Indenture in accordance with the provisions hereof and agrees to perform its duties as Indenture
Trustee as required herein.

ARTICLE I

Definitions

Section 1.01......Definitions. For all purposes of this Indenture, except as otherwise expressly provided herein
or unless the context otherwise requires, capitalized terms not otherwise defined herein shall have the meanings
assigned to such terms in the Definitions attached hereto as Appendix A, which is incorporated by reference
herein. All other capitalized terms used herein shall have the meanings specified herein.

Section 1.02......Incorporation by Reference of Trust Indenture Act. Whenever this Indenture refers to a
provision of the Trust Indenture Act (the "TIA"), such provision is incorporated by reference in and made a part
of this Indenture. The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the indenture securities means the Issuer and any other obligor on the indenture securities.

All other TIA terms used in this Indenture that are defined by TIA, defined by TIA reference to

another statute or defined by Commission rule have the meaning assigned to them by such definitions.

Section 1.03......Rules of Construction.  Unless the context otherwise requires:

(a)    a term has the meaning assigned to it;

(b)    an accounting term not otherwise defined has the meaning assigned to it in accordance with generally
accepted accounting principles as in effect from time to time;

(c)    "or" includes "and/or";

(d)    "including" means "including without limitation";

(e)    words in the singular include the plural and words in the plural include the singular;

(f)    the term "proceeds" has the meaning ascribed thereto in the UCC; and

(g)    any agreement, instrument or statute defined or referred to herein or in any instrument or certificate
delivered in connection herewith means such agreement, instrument or statute as from time to time amended,
modified or supplemented and includes (in the case of agreements or instruments) references to all attachments
thereto and instruments incorporated therein; references to a Person are also to its permitted successors and
assigns.

ARTICLE II

Original Issuance of Notes

Section 2.01......Form. The Notes, together with the Indenture Trustee's certificate of authentication, shall be
in substantially the form set forth in Exhibit A, with such appropriate insertions, omissions, substitutions and
other variations as are required or permitted by this Indenture and may have such letters, numbers or other marks
of identification and such legends or endorsements placed thereon as may, consistently herewith, be determined by
the officers executing the Notes, as evidenced by their execution thereof. Any portion of the text of any Note
may be set forth on the reverse thereof, with an appropriate reference thereto on the face of such Note.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any combination of
these methods, all as determined by the Authorized Officers executing such Notes, as evidenced by their execution
of such Notes.

The terms of the Notes set forth in Exhibit A are part of the terms of this Indenture.

Section 2.02......Execution, Authentication and Delivery. The Notes shall be executed on behalf of the Issuer by
any of its Authorized Officers. The signature of any such Authorized Officer on the Notes may be manual or
facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time Authorized Officers
of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold
such offices prior to the authentication and delivery of such Notes or did not hold such offices at the date of
such Notes.

The Indenture Trustee shall upon Issuer Request authenticate and deliver Notes for original issue in an
amount equal to the Initial Aggregate Note Balance. The Class A-1, Class A-2, Class A-3, Class A-4, Class A-5
and Class A-6 Notes shall have initial principal amounts of the Initial Class A-1 Note Balance,

Initial Class A-2
Note Balance, Initial Class A-3 Note Balance,  Initial Class A-4 Note Balance, Initial Class A-5 and Initial Class
A-6 Note Balance, respectively.

       Each Note  shall be dated  the date of its  authentication.  The Notes  shall be issuable  as  registered
Book-Entry  Notes, and the Notes shall be issuable in minimum  denominations  of $25,000 and integral  multiples of
$1,000 in excess thereof.

       No Note  shall be entitled to any benefit under this  Indenture or be valid or obligatory for any purpose,
unless there appears on such Note a certificate  of  authentication  substantially  in the form provided for herein
executed  by the  Indenture  Trustee by the  manual  signature  of one of its  authorized signatories,  and  such
certificate  upon any Note  shall be  conclusive  evidence,  and the only  evidence,  that  such Note has been duly
authenticated and delivered hereunder.

---

ARTICLE III

                                  Covenants

Section 3.01......Collection  of  Payments  with  Respect  to the  Mortgage  Loans.  The Indenture  Trustee  shall
establish and maintain with itself the Note Payment  Account in which the Indenture  Trustee shall,  subject to the
terms of this paragraph,  deposit,  on the same day as it is received from the Servicer,  each remittance  received
by the  Indenture  Trustee with respect to the Mortgage  Loans.  The  Indenture  Trustee shall make all payments of
principal of and interest on the Notes,  subject to Section 3.03 as provided in Section 3.05 herein from monies on
deposit in the Note Payment Account.

Section 3.02......Maintenance  of Office or Agency.  The Issuer will  maintain  in the City of New York,  New York,
an office or agency where,  subject to  satisfaction  of conditions set forth herein,  Notes may be surrendered for
registration  of transfer or exchange,  and where notices and demands to or upon the Issuer in respect of the Notes
and this  Indenture  may be served.  The Issuer  hereby  initially  appoints the  Indenture Trustee to serve as its
agent for the  foregoing  purposes.  If at any time the Issuer  shall fail to maintain any such office or agency or
shall fail to furnish the Indenture Trustee with the address thereof,  such surrenders,  notices and demands may be
made or served at the Corporate  Trust Office,  and the Issuer hereby  appoints the Indenture Trustee as its agent
to receive all such surrenders, notices and demands.

Section 3.03......Money  for  Payments  to Be Held in Trust;  Paying  Agent.  As  provided  in Section  3.01,  all
payments of amounts due and payable with respect to any Notes that are to be made from amounts withdrawn  from the
Note Payment  Account  pursuant to Section 3.01 shall be made on behalf of the Issuer by the Indenture Trustee or
by the Paying  Agent,  and no amounts so  withdrawn  from the Note  Payment  Account for payments of Notes shall be
paid over to the Issuer  except as  provided  in this  Section  3.03.  The Issuer  hereby appoints the  Indenture
Trustee to act as  initial  Paying  Agent  hereunder.  The Issuer will  cause  each  Paying Agent  other than the
Indenture  Trustee to execute and deliver to the  Indenture  Trustee an instrument in which such Paying Agent shall
agree with the  Indenture  Trustee  (and if the  Indenture  Trustee acts as Paying  Agent,  it hereby so  agrees),
subject to the provisions of this Section 3.03, that such Paying Agent will:

(a)     hold all sums  held by it for the  payment  of  amounts  due with  respect  to the Notes in trust for the

benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as
herein provided and pay such sums to such Persons as herein provided;

(b)    give the Indenture Trustee and the Enhancer written notice of any default by the Issuer of which it has
actual knowledge in the making of any payment required to be made with respect to the Notes;

(c)    at any time during the continuance of any such default, upon the written request of the Indenture
Trustee, forthwith pay to the Indenture Trustee all sums so held in trust by such Paying Agent;

(d)    immediately resign as Paying Agent and forthwith pay to the Indenture Trustee all sums held by it in
trust for the payment of Notes, if at any time it ceases to meet the standards required to be met by a Paying
Agent at the time of its appointment;

(e)    comply with all requirements of the Code with respect to the withholding from any payments made by it on
any Notes of any applicable withholding taxes imposed thereon and with respect to any applicable reporting
requirements in connection therewith (including reporting payments of interest on the Notes in excess of interest
at the Net WAC Rate and interest on any of the foregoing in the form of Interest Carry Forward Amounts, as
payments on an interest rate cap agreement); and

(f)    deliver to the Indenture Trustee a copy of the statement to Noteholders prepared with respect to each
Payment Date by the Servicer pursuant to Section 4.01 of the Servicing Agreement.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this
Indenture or for any other purpose, by Issuer Request direct any Paying Agent to pay to the Indenture Trustee all
sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as
those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the
Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or
any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for
one year after such amount has become due and payable shall be discharged from such trust and be paid to the
Issuer on Issuer Request; and the Noteholder of such Note shall thereafter, as an unsecured general creditor,
look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and
all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon
cease; provided, however, that the Indenture Trustee or such Paying Agent, before being required to make any such
repayment, shall at the expense and direction of the Issuer cause to be published once, in an Authorized
Newspaper, notice that such money remains unclaimed and that, after a date specified therein, which shall not be
less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be
repaid to the Issuer. The Indenture Trustee may also adopt and employ, at the expense and direction of the
Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing
notice of such repayment to the Enhancer and Noteholders of the Notes which have been called but have not been
surrendered for redemption or whose right to or interest in monies due and payable but not claimed is
determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for
each such Noteholder).

Section 3.04......Existence. The Issuer will keep in full effect its existence, rights and franchises as a
statutory trust under the laws of the State of Delaware (unless it becomes, or any successor Issuer hereunder is
or becomes, organized under the laws of any other state or of the United States of America, in which case the

Issuer will keep in full effect its existence, rights and franchises under the laws of such other jurisdiction)
and will obtain and preserve its qualification to do business in each jurisdiction in which such qualification is
or shall be necessary to protect the validity and enforceability of this Indenture, the Notes, the Mortgage Loans
and each other instrument or agreement included in the Trust Estate.

Section 3.05......Priority of Distributions; Defaulted Interest.

(a)      In accordance with Section 3.03(a) of the Servicing Agreement, the priority of distributions on each
Payment Date from Principal Collections and Interest Collections with respect to the Mortgage Loans, any optional
advance of delinquent principal or interest on the Mortgage Loans made by the Servicer in respect of the related
Collection Period, any Policy Draw Amount deposited into the Note Payment Account (to be applied solely with
respect to the payment of amounts described in clauses (ii) and (iii) under this Section 3.05(a)), and any
amounts transferred to the Note Payment Account from the Pre-Funding Account and Capitalized Interest Account
pursuant to Sections 3.18 and 3.19 of the Servicing Agreement, is as follows:

(i)      from Interest Collections, to the Enhancer, the amount of the premium for the Policy and any unpaid
         premium for the Policy from prior Payment Dates, with interest thereon as provided in the Insurance
         Agreement;

(ii)     from Interest Collections, any Capitalized Interest Requirement pursuant to Section 3.19(b) of the
         Servicing Agreement and any Policy Draw Amount with respect to the Notes deposited into the Note Payment
         Account on such Payment Date pursuant to Section 3.28(a)(ii), to the Note Payment Account, for payment
         by the Paying Agent to the Noteholders, pro rata, interest for the related Interest Period at the
         related Note Rate on the related Note Balance immediately prior to such Payment Date, excluding any
         Relief Act Shortfalls allocated thereto pursuant to Section 3.05(d), plus any such amount remaining
         unpaid from prior Payment Dates;

(iii)    from Principal Collections and any Policy Draw Amount with respect to the Notes, for payment by the
         Paying Agent to the Noteholders, as a distribution of principal on the Notes, the Principal Distribution
         Amount for such Payment Date to be allocated to each Class of Notes as described in Section 3.05(b)
         below, until the Note Balances thereof have been reduced to zero;

(iv)     from Excess Spread, for payment by the Paying Agent to each Class of Notes, as a distribution of
         principal on the Notes, in the priority set forth in section 3.05(b), an amount equal to the Liquidation
         Loss Distribution Amount (excluding Liquidation Loss Amounts that have been allocated to the reduction
         of the Note Balance of the Notes pursuant to Section 3.05(c) hereof) until the Note Balance of each
         Class of Notes has been reduced to zero;

(v)      to the Enhancer, to reimburse it for prior draws made on the Policy, with interest thereon as provided
         in the Insurance Agreement;

(vi)     from Excess Spread, for payment by the Paying Agent to the Noteholders of the Class of Notes in the
         priority set forth in Section 3.05(b), the Overcollateralization Increase Amount, if any, until the Note
         Balance of each Class of Notes has been reduced to zero;

(vii)    to the Enhancer, any amounts owed to the Enhancer pursuant to the Insurance Agreement other than amounts
         specified in clauses (i) or (v) above;

(viii)   to the Indenture Trustee, any amounts owing to the Indenture Trustee pursuant to Section 6.07 to the
         extent remaining unpaid;

(ix)     after application of all Yield Maintenance Payments with respect to such Payment

Date, from Excess
Spread remaining after the distributions pursuant to clauses (i) through (viii), to pay each Class of
Notes and for payment by the Paying Agent pursuant to the irrevocable instruction of the holders of the
Class SB Certificates (as the parties otherwise entitled to such amounts as the owners of REMIC II
Regular Interests SB-IO and SB-PO) as set forth in the Trust Agreement and incorporated herein, pro rata
in accordance with their respective amounts of Interest Carry Forward Amounts;

(x)        any remaining amount, to the Distribution Account, for distribution to the holders of the Certificates
by the Certificate Paying Agent in accordance with the Trust Agreement;

provided, that on the Final Payment Date, the amount that is required to be paid pursuant to clause (iii) above
shall be equal to the Note Balance immediately prior to such Payment Date.

Amounts distributed to the Noteholders pursuant to the above clauses (ii), (iii), (iv) and (vi)
from Interest Collections, Principal Collections and the Policy Draw Amount shall be treated for tax purposes as
distributions with respect to the REMIC II Regular Interests A-1, A-2, A-3, A-4, A-5 and A-6, respectively.
Amounts distributed pursuant to clause (x) shall be treated as having been distributed to the REMIC II Regular
Interest SB-IO.

On each Payment Date, the Paying Agent shall apply, from amounts on deposit in the Note Payment
Account, and in accordance with the Servicing Certificate, the amounts set forth above in the order of priority
set forth in Section 3.05(a).

Amounts paid to Noteholders shall be paid in respect of the Notes in accordance with the
applicable percentage as set forth in Section 3.05(e). Interest on the Class A-1 Notes will be computed on the
basis of the actual number of days in each Interest Period and a 360 day year. Interest on the Class A-2, Class
A-3, Class A-4, Class A-5 and Class A-6 Notes will be computed on the basis of a 360-day year consisting of
twelve 30-day months. Any installment of interest or principal payable on any Note that is punctually paid or
duly provided for by the Issuer on the applicable Payment Date shall be paid to the Noteholder of record thereof
on the immediately preceding Record Date by wire transfer to an account specified in writing by such Noteholder
reasonably satisfactory to the Indenture Trustee, or by check or money order mailed to such Noteholder at such
Noteholder's address appearing in the Note Register, the amount required to be distributed to such Noteholder on
such Payment Date pursuant to such Noteholder's Notes; provided, that the Indenture Trustee shall not pay to any
such Noteholder any amounts required to be withheld from a payment to such Noteholder by the Code.

(b)        The Principal Distribution Amount distributable pursuant to Section 3.05(a)(iii), Liquidation Loss
Distribution Amounts distributable to the holders of the Notes pursuant to Section 3.05(a)(iv) and
Overcollateralization Increase Amounts distributable to the holders of the Notes pursuant to Section 3.05(a)(vi)
will be distributed as follows:

(i)        first, to the Class A-6 Notes, an amount equal to the Class A-6 Lockout Distribution Amount for that
payment date, until the Note Balance thereof has been reduced to zero; and

(ii)        second, to the Class A-1, Class A-2, Class A-3, Class A-4, Class A-5 and Class A-6 Notes (without regard
to the Class A-6 Lockout Distribution Amount), in that order, in each case until the Note Balance
thereof has been reduced to zero;

provided, however, that if an Enhancer Default has occurred and is continuing, payments of principal on
the Notes will be paid pro rata to the outstanding Classes of Notes.

(c)        Principal of each Note shall be due and payable in full on the Final Payment Date as

provided in the applicable form of Note set forth in Exhibits A. All principal payments on the Notes shall be made in accordance with the priorities set forth in Sections 3.05(a) and 3.05(b) to the Noteholders entitled thereto in accordance with the related Percentage Interests represented thereby. Upon written notice to the Indenture Trustee by the Issuer, the Indenture Trustee shall notify the Person in the name of which a Note is registered at the close of business on the Record Date preceding the Final Payment Date or other final Payment Date, as applicable. Such notice shall be mailed or faxed no later than five Business Days prior to the Final Payment Date or such other final Payment Date and, unless such Note is then a Book-Entry Note, shall specify that payment of the principal amount and any interest due with respect to such Note at the Final Payment Date or such other final Payment Date will be payable only upon presentation and surrender of such Note, and shall specify the place where such Note may be presented and surrendered for such final payment.

On each Payment Date, the Overcollateralization Amount available to cover any Liquidation Loss Amounts on such Payment Date shall be deemed to be reduced by an amount equal to such Liquidation Loss Amounts (except to the extent that such Liquidation Loss Amounts were covered on such Payment Date by a payment in respect of Liquidation Loss Amounts).

(d) With respect to any Payment Date, interest payments on the Notes will be reduced by any Relief Act Shortfalls for the related Collection Period on a pro rata basis in accordance with the amount of interest payable on the Notes on such Payment Date, absent such reduction.

(e) On each Payment Date, the Indenture Trustee shall apply any Yield Maintenance Payment first as a payment to the Holders of the Class A-1 Notes in an amount not to exceed the Interest Carry Forward Amount on the Class A-1 Notes as of such Payment Date, and the remainder to the Certificate Paying Agent for payment to the Holders of the Class SB Certificates.

Section 3.06    Protection of Trust Estate.

(a) The Issuer shall from time to time execute and deliver all such supplements and amendments hereto and all such financing statements, continuation statements, instruments of further assurance and other instruments, and will take such other action necessary or advisable to:

(i) maintain or preserve the lien and security interest (and the priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii) perfect, publish notice of or protect the validity of any Grant made or to be made by this Indenture;

(iii) cause the Trust to enforce any of the Mortgage Loans; or

(iv) preserve and defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties.

(b) Except as otherwise provided in this Indenture, the Indenture Trustee shall not remove any portion of the Trust Estate that consists of money or is evidenced by an instrument, certificate or other writing from the jurisdiction in which it was held at the date of the most recent Opinion of Counsel delivered pursuant to Section 3.07 (or from the jurisdiction in which it was held as described in the Opinion of Counsel delivered at the Closing Date pursuant to Section 3.07, if no Opinion of Counsel has yet been delivered pursuant to Section 3.07) unless the Indenture Trustee shall have first received an Opinion of Counsel to the effect that the lien and security interest created by this Indenture with respect to such property will continue to be maintained after giving effect to such action or actions.

The Issuer hereby designates the Indenture Trustee its agent and attorney-in-fact

to execute any
financing statement, continuation statement or other instrument required to be executed
pursuant to this
Section 3.06.

Section 3.07        Opinions as to Trust Estate.

On the Closing Date, the Issuer shall furnish to the Indenture Trustee and the Owner Trustee an Opinion
of Counsel at the expense of the Issuer stating that, upon delivery of the Mortgage Notes relating to the Initial
Mortgage Loans to the Indenture Trustee or the Custodian in the State of Pennsylvania, the Indenture Trustee will
have a perfected, first priority security interest in such Mortgage Loans.

On or before December 31st in each calendar year, beginning in 2006, the Issuer shall furnish to the
Indenture Trustee an Opinion of Counsel at the expense of the Issuer either stating that, in the opinion of such
counsel, no further action is necessary to maintain a perfected, first priority security interest in the Mortgage
Loans until December 31 in the following calendar year or, if any such action is required to maintain such
security interest in the Mortgage Loans, such Opinion of Counsel shall also describe the recording, filing,
re-recording and refiling of this Indenture, any indentures supplemental hereto and any other requisite documents
and the execution and filing of any financing statements and continuation statements that will, in the opinion of
such counsel, be required to maintain the security interest in the Mortgage Loans until December 31 in the
following calendar year.

Section 3.08        Performance of Obligations; Servicing Agreement.

(a)        The Issuer shall punctually perform and observe all of its obligations and agreements contained in this
Indenture, the Basic Documents and in the instruments and agreements included in the Trust Estate.

(b)        The Issuer may contract with other Persons to assist it in performing its duties under this Indenture,
and any performance of such duties by a Person identified to the Indenture Trustee in an Officer's Certificate of
the Issuer shall be deemed to be action taken by the Issuer.

(c)        The Issuer shall not take any action or permit any action to be taken by others that would release any
Person from any of such Person's covenants or obligations under any of the documents relating to the Mortgage
Loans or under any instrument included in the Trust Estate, or that would result in the amendment, hypothecation,
subordination, termination or discharge of, or impair the validity or effectiveness of, any of the documents
relating to the Mortgage Loans or any such instrument, except such actions as the Servicer is expressly permitted
to take in the Servicing Agreement.

(d)        The Issuer may retain an administrator and may enter into contracts with other Persons for the
performance of the Issuer's obligations hereunder, and performance of such obligations by such Persons shall be
deemed to be performance of such obligations by the Issuer.

Section 3.09        Negative Covenants. So long as any Notes are Outstanding, the Issuer shall not:

(a)        except as expressly permitted by this Indenture, sell, transfer, exchange or otherwise dispose of the
Trust Estate, unless directed to do so in writing by the Indenture Trustee pursuant to Section 5.04 hereof;

(b)        claim any credit on, or make any deduction from the principal or interest payable in respect of, the
Notes (other than amounts properly withheld from such payments under the Code) or assert any claim against any
present or former Noteholder by reason of the payment of the taxes levied or assessed upon any part of the Trust
Estate;

(c)        (i) permit the validity or effectiveness of this Indenture to be impaired, or

permit the lien of this
Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be
released from any covenants or obligations with respect to the Notes under this Indenture except as may be
expressly permitted hereby, (ii) permit any lien, charge, excise, claim, security interest, mortgage or other
encumbrance (other than the lien of this Indenture) to be created on or extend to or otherwise arise upon or
burden the Trust Estate or any part thereof or any interest therein or the proceeds thereof or (iii) permit the
lien of this Indenture not to constitute a valid first priority security interest in the Trust Estate; or

(d)        impair or cause to be impaired the Issuer's interest in the Mortgage Loans, the Purchase Agreement or in
any other Basic Document, if any such action would materially and adversely affect the interests of the
Noteholders or the Enhancer.

Section 3.10        Annual Statement as to Compliance. The Issuer shall deliver to the Indenture Trustee, within
120 days after the end of each fiscal year of the Issuer (commencing with the fiscal year ending on December 31,
2006), an Officer's Certificate stating, as to the Authorized Officer signing such Officer's Certificate, that:

(a)        a review of the activities of the Issuer during such year and of its performance under this Indenture
and the Trust Agreement has been made under such Authorized Officer's supervision; and

(b)        to the best of such Authorized Officer's knowledge, based on such review, the Issuer has complied with
all conditions and covenants under this Indenture and the provisions of the Trust Agreement throughout such year,
or, if there has been a default in its compliance with any such condition or covenant, specifying each such
default known to such Authorized Officer and the nature and status thereof.

Section 3.11        Recordation of Assignments. The Issuer shall enforce the obligation, if any, of the Sellers
under the Purchase Agreement to submit or cause to be submitted for recordation all Assignments of Mortgages
within 60 days of receipt of recording information by the Servicer.

Section 3.12        Representations and Warranties Concerning the Mortgage Loans. The Indenture Trustee, as
pledgee of the Mortgage Loans, shall have the benefit of (i) the representations and warranties made by GMACM in
Section 3.1(a) and Section 3.1(b) of the Purchase Agreement, (ii) the benefit of the representations and
warranties made by WG Trust 2003 in Section 3.1(d) of the Purchase Agreement and (iii) the benefit of the
representations and warranties made by GMACM or WG Trust 2003, as applicable, in Section 2 of any Subsequent
Transfer Agreement, in each case, concerning the Mortgage Loans and the right to enforce the remedies against
GMACM or WG Trust 2003 provided in Section 3.1(e) of the Purchase Agreement, as applicable, to the same extent as
though such representations and warranties were made directly to the Indenture Trustee.

Section 3.13        Assignee of Record of the Mortgage Loans. As pledgee of the Mortgage Loans, the Indenture
Trustee shall hold title to the Mortgage Loans by being named as payee in the endorsements or assignments of the
Mortgage Notes and assignee in the Assignments of Mortgage to be delivered under Section 2.1 of the Purchase
Agreement. Except as expressly provided in the Purchase Agreement or in the Servicing Agreement with respect to
any specific Mortgage Loan, the Indenture Trustee shall not execute any endorsement or assignment or otherwise
release or transfer such title to any of the Mortgage Loans until such time as the remaining Trust Estate may be
released pursuant to Section 8.05(b). The Indenture Trustee's holding of such title shall in all respects be
subject to its fiduciary obligations to the Noteholders hereunder.

Section 3.14        Servicer as Agent and Bailee of the Indenture Trustee. Solely for purposes of perfection under
Section 9-313 or 9-314 of the UCC or other similar applicable law, rule or regulation of the state in which such

property is held by the Servicer, the Issuer and the Indenture Trustee hereby acknowledge that the Servicer is
acting as agent and bailee of the Indenture Trustee in holding amounts on deposit in the Custodial Account
pursuant to Section 3.02 of the Servicing Agreement that are allocable to the Mortgage Loans, as well as the
agent and bailee of the Indenture Trustee in holding any Related Documents released to the Servicer pursuant to
Section 3.06(c) of the Servicing Agreement, and any other items constituting a part of the Trust Estate which
from time to time come into the possession of the Servicer. It is intended that, by the Servicer's acceptance of
such agency pursuant to Section 3.02 of the Servicing Agreement, the Indenture Trustee, as a pledgee of the
Mortgage Loans, will be deemed to have possession of such Related Documents, such monies and such other items for
purposes of Section 9-313 or 9-314 of the UCC of the state in which such property is held by the Servicer.

Section 3.15       Investment Company Act. The Issuer shall not become an "investment company" or under the
"control" of an "investment company" as such terms are defined in the Investment Company Act of 1940, as amended
(or any successor or amendatory statute), and the rules and regulations thereunder (taking into account not only
the general definition of the term "investment company" but also any available exceptions to such general
definition); provided, however, that the Issuer shall be in compliance with this Section 3.15 if it shall have
obtained an order exempting it from regulation as an "investment company" so long as it is in compliance with the
conditions imposed in such order.

Section 3.16       Issuer May Consolidate, etc.

(a)       The Issuer shall not consolidate or merge with or into any other Person, unless:

(i)       the Person (if other than the Issuer) formed by or surviving such consolidation or merger shall be a
Person organized and existing under the laws of the United States of America or any state or the
District of Columbia and shall expressly assume, by an indenture supplemental hereto, executed and
delivered to the Indenture Trustee, in form reasonably satisfactory to the Indenture Trustee, the due
and punctual payment of the principal of and interest on all Notes and to the Certificate Paying Agent,
on behalf of the Certificateholders and the performance or observance of every agreement and covenant of
this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

(ii)       immediately after giving effect to such transaction, no Event of Default shall have occurred and be
continuing;

(iii)       the Enhancer shall have consented thereto and each Rating Agency shall have notified the Issuer that
such transaction will not cause a Rating Event, without taking into account the Policy;

(iv)       the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the
Indenture Trustee and the Enhancer) to the effect that such transaction will not have any material
adverse tax consequence to the Issuer, any Noteholder or any Certificateholder;

(v)       any action that is necessary to maintain the lien and security interest created by this Indenture shall
have been taken; and

(vi)       the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of
Counsel each stating that such consolidation or merger and such supplemental indenture comply with this
Article III and that all conditions precedent herein provided for relating to such transaction have been
complied with (including any filing required by the Exchange Act).

(b)       The Issuer shall not convey or transfer any of its properties or assets, including those included in the
Trust Estate, to any Person, unless:

(i)      the Person that acquires by conveyance or transfer the properties and assets of the Issuer the
conveyance or transfer of which is hereby restricted shall (A) be a United States citizen or a Person
organized and existing under the laws of the United States of America or any state, (B) expressly
assumes, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form
satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on
all Notes and the performance or observance of every agreement and covenant of this Indenture on the
part of the Issuer to be performed or observed, all as provided herein, (C) expressly agrees by means of
such supplemental indenture that all right, title and interest so conveyed or transferred shall be
subject and subordinate to the rights of Noteholders of the Notes, (D) unless otherwise provided in such
supplemental indenture, expressly agrees to indemnify, defend and hold harmless the Issuer against and
from any loss, liability or expense arising under or related to this Indenture and the Notes and
(E) expressly agrees by means of such supplemental indenture that such Person (or if a group of Persons,
then one specified Person) shall make all filings with the Commission (and any other appropriate Person)
required by the Exchange Act in connection with the Notes;

(ii)      immediately after giving effect to such transaction, no Default or Event of Default shall have occurred
and be continuing;

(iii)      the Enhancer shall have consented thereto, and each Rating Agency shall have notified the Issuer that
such transaction will not cause a Rating Event, if determined without regard to the Policy;

(iv)      the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the
Indenture Trustee) to the effect that such transaction will not have any material adverse tax
consequence to the Issuer or any Noteholder;

(v)      any action that is necessary to maintain the lien and security interest created by this Indenture shall
have been taken; and

(vi)      the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of
Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this
Article III and that all conditions precedent herein provided for relating to such transaction have been
complied with (including any filing required by the Exchange Act).

Section 3.17      Successor or Transferee.

(a)      Upon any consolidation or merger of the Issuer in accordance with Section 3.16(a), the Person formed by
or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substituted for,
and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person
had been named as the Issuer herein.

(b)      Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to
Section 3.16(b), the Issuer shall be released from every covenant and agreement of this Indenture to be observed
or performed on the part of the Issuer with respect to the Notes immediately upon the delivery of written notice
to the Indenture Trustee of such conveyance or transfer.

Section 3.18      No Other Business. The Issuer shall not engage in any business other than financing,
purchasing, owning and selling and managing the Mortgage Loans and the issuance of the Notes and Certificates in
the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.19        No Borrowing.  The Issuer shall not issue, incur, assume, guarantee or otherwise become liable,
directly or indirectly, for any indebtedness except for the Notes.

Section 3.20        Guarantees, Loans, Advances and Other Liabilities.  Except as contemplated by this Indenture or
the other Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or
indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation
or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly,
in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree
contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any
capital contribution to, any other Person.

Section 3.21        Capital Expenditures.  The Issuer shall not make any expenditure (by long-term or operating
lease or otherwise) for capital assets (either realty or personalty).

Section 3.22        Owner Trustee Not Liable for Certificates or Related Documents.  The recitals contained herein
shall be taken as the statements of the Issuer, and the Owner Trustee and the Indenture Trustee assume no
responsibility for the correctness of the recitals contained herein.  The Owner Trustee and the Indenture Trustee
make no representations as to the validity or sufficiency of this Indenture or any other Basic Document, of the
Certificates (other than the signatures of the Owner Trustee or the Indenture Trustee on the Certificates) or the
Notes, or of any Related Documents.  The Owner Trustee and the Indenture Trustee shall at no time have any
responsibility or liability with respect to the sufficiency of the Trust Estate or its ability to generate the
payments to be distributed to Certificateholders under the Trust Agreement or the Noteholders under this
Indenture, including, the compliance by the Depositor or the Sellers with any warranty or representation made
under any Basic Document or in any related document or the accuracy of any such warranty or representation, or
any action of the Certificate Paying Agent, the Certificate Registrar or any other person taken in the name of
the Owner Trustee or the Indenture Trustee.

Section 3.23        Restricted Payments.  The Issuer shall not, directly or indirectly, (i) pay any dividend or
make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a
combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with
respect to any ownership or equity interest or security in or of the Issuer, (ii) redeem, purchase, retire or
otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise
segregate any amounts for any such purpose; provided, however, that the Issuer may make, or cause to be made, (x)
distributions to the Owner Trustee and the Certificateholders as contemplated by, and to the extent funds are
available for such purpose under, the Trust Agreement and (y) payments to the Servicer pursuant to the terms of
the Servicing Agreement.  The Issuer will not, directly or indirectly, make payments to or distributions from the
Custodial Account except in accordance with this Indenture and the other Basic Documents.

Section 3.24        Notice of Events of Default.  The Issuer shall give the Indenture Trustee, the Enhancer and the
Rating Agencies prompt written notice of each Event of Default hereunder and under the Trust Agreement.

Section 3.25        Further Instruments and Acts. Upon request of the Indenture Trustee, the Issuer shall execute
and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry
out more effectively the purposes of this Indenture.

Section 3.26        Statements to Noteholders.  On each Payment Date, each of the Indenture Trustee and the
Certificate Registrar shall make available to the Depositor, the Owner Trustee, each Rating Agency, each

Noteholder and each Certificateholder, with respect to the Enhancer, the Servicing Certificate provided to the Indenture Trustee by the Servicer relating to such Payment Date and delivered pursuant to Section 4.01 of the Servicing Agreement.

The Indenture Trustee will make the Servicing Certificate (and, at its option, any additional files containing the same information in an alternative format) available each month to Securityholders and the Enhancer, and other parties to this Indenture via the Indenture Trustee's internet website. The Indenture Trustee's internet website shall initially be located at "www.sfr.bankofny.com." Assistance in using the website can be obtained by calling the Indenture Trustee's customer service desk at (800) 332-4550. Parties that are unable to use the above distribution options are entitled to have a paper copy mailed to them via first class mail by calling the customer service desk and indicating such. The Indenture Trustee shall have the right to change the way the statement to Securityholders are distributed in order to make such distribution more convenient or more accessible to the above parties and the Indenture Trustee shall provide timely and adequate notification to all above parties regarding any such changes.

Section 3.27     Determination of Note Rate. The Indenture Trustee shall determine One-Month LIBOR and the applicable Note Rate for the Class A-1 Notes for each Interest Period as of the second LIBOR Business Day immediately preceding (i) the Closing Date in the case of the first Interest Period for the Notes and (ii) the first day of each succeeding Interest Period for the Class A-1 Notes, and shall inform the Issuer, the Servicer and the Depositor by means of the Indenture Trustee's online service.

Section 3.28     Payments under the Policy.

(a)     (i)     If the Servicing Certificate specifies a Policy Draw Amount for any Payment Date, the Indenture Trustee shall make a draw on the Policy in an amount specified in the Servicing Certificate for such Payment Date or, if no amount is specified, the Indenture Trustee shall make a draw on the Policy in the amount by which the amount on deposit in the Note Payment Account is less than interest due on the Notes on such Payment Date.

(ii)     The Indenture Trustee shall deposit or cause to be deposited such Policy Draw Amount into the Note Payment Account on such Payment Date to the extent such amount relates to a Deficiency Amount.

(b)     The Indenture Trustee shall submit, if a Policy Draw Amount is specified in any statement to Securityholders prepared pursuant to Section 4.01 of the Servicing Agreement, the Notice (in the form attached as Exhibit A to the Policy) to the Enhancer no later than 12:00 noon, New York City time, on the third (3rd) Business Day prior to the applicable Payment Date.

Section 3.29     Replacement/Additional Enhancement. The Issuer (or the Servicer on its behalf) may, at its expense, in accordance with and upon satisfaction of the conditions set forth herein, but shall not be required to, obtain a surety bond, letter of credit, guaranty or reserve account as a Permitted Investment for amounts on deposit in the Capitalized Interest Account, or may arrange for any other form of additional credit enhancement; provided, that after prior notice thereto, no Rating Agency shall have informed the Issuer that a Rating Event would occur as a result thereof (without taking the Policy into account); and provided further, that the issuer of any such instrument or facility and the timing and mechanism for drawing on such additional enhancement shall be acceptable to the Indenture Trustee and the Enhancer. It shall be a condition to procurement of any such additional credit enhancement that there be delivered to the Indenture Trustee and the Enhancer (a) an Opinion of Counsel, acceptable in form to the Indenture Trustee and the Enhancer, from counsel to the provider of such

additional credit enhancement with respect to the enforceability thereof and such other matters as the Indenture
Trustee or the Enhancer may require and (b) an Opinion of Counsel to the effect that the procurement of such
additional enhancement would not (i) adversely affect in any material respect the tax status of the Notes or the
Certificates or (ii) cause the Issuer to be taxable as an association (or a publicly traded partnership) for
federal income tax purposes or to be classified as a taxable mortgage pool within the meaning of Section 7701(i)
of the Code.

Section 3.30        Additional Representations of Issuer.

        The Issuer hereby represents and warrants to the Indenture Trustee that as of the Closing Date (which
representations and warranties shall survive the execution of this Indenture):

(a)        This Indenture creates a valid and continuing security interest (as defined in the applicable UCC) in
the Mortgage Notes in favor of the Indenture Trustee, which security interest is prior to all other Liens (except
as expressly permitted otherwise in this Indenture), and is enforceable as such as against creditors of and
purchasers from the Issuer.

(b)        The Mortgage Notes constitute "instruments" within the meaning of the applicable UCC.

(c)        The Issuer owns and has good and marketable title to the Mortgage Notes free and clear of any Lien of
any Person.

(d)        The original executed copy of each Mortgage Note (except for any Mortgage Note with respect to which a
Lost Note Affidavit has been delivered to the Custodian) has been delivered to the Custodian.

(e)        The Issuer has received a written acknowledgment from the Custodian that the Custodian is acting solely
as agent of the Indenture Trustee for the benefit of the Noteholders and the Enhancer.

(f)        Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the
Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage
Notes. The Issuer has not authorized the filing of and is not aware of any financing statements against the
Issuer that include a description of collateral covering the Mortgage Notes other than any financing statement
relating to the security interest granted to the Indenture Trustee hereunder or any security interest that has
been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

(g)        None of the Mortgage Notes has any marks or notations indicating that they have been pledged, assigned
or otherwise conveyed to any Person other than the Indenture Trustee, except for (i) any endorsements that are
part of a complete chain of endorsements from the originator of the Mortgage Note to the Indenture Trustee, and
(ii) any marks or notations pertaining to Liens that have been terminated or released.

(h)        None of the provisions of this Section 3.30 shall be waived without the prior written confirmation from
Standard & Poor's that such waiver shall not result in a reduction or withdrawal of the then-current rating of
the Notes.

Section 3.31        Yield Maintenance Agreement.

(a)        In the event that the Indenture Trustee does not receive by the Business Day preceding a Payment Date
the amount as specified by the Servicer pursuant to Section 4.01(a)(xix) of the Servicing Agreement as the amount
to be paid with respect to such Payment Date by the YMA Provider under the Yield Maintenance Agreement, the
Indenture Trustee shall enforce the obligation of the YMA Provider thereunder. The parties hereto acknowledge
that the YMA Provider shall make all calculations, and shall determine the amounts to be paid, under the Yield
Maintenance Agreement. Absent manifest error, the Indenture Trustee may conclusively rely on any servicing
certificate received by it from the Servicer pursuant to Section 4.01 of the Servicing Agreement.

(b)        The  Indenture  Trustee  shall  deposit or cause to be  deposited  any  amounts  received  under the Yield
Maintenance  Agreement  into  the Note Payment  Account on the date such amounts are received from the YMA Provider
under the Yield Maintenance  Agreement (including  termination  payments,  if any). All payments received under the
Yield  Maintenance  Agreement  shall be distributed in accordance  with the priorities set forth in Section 3.05(e)
hereof.

---

ARTICLE IV

               The Notes; Satisfaction And Discharge Of Indenture

Section 4.01       The Notes

(a)        The Notes shall be registered in the name of a nominee  designated by the  Depository.  Beneficial Owners
will hold  interests  in the Notes  through the  book-entry  facilities  of the  Depository  in  minimum  initial Note
Balances of $25,000 and integral multiples of $1,000 in excess thereof.

          The  Indenture  Trustee may for all purposes  (including  the making of payments due on the Notes) deal with
the  Depository  as the  authorized  representative  of the  Beneficial  Owners with  respect to the Notes for the
purposes of exercising the rights of Noteholders  hereunder.  Except as provided in the next succeeding  paragraph
of this  Section 4.01,  the  rights of  Beneficial  Owners with  respect  to the Notes  shall be  limited to those
established by law and agreements  between such Beneficial  Owners and the Depository and Depository  Participants.
Except as provided in  Section 4.08,  Beneficial  Owners shall not be entitled to definitive  certificates for the
Notes as to which they are the Beneficial  Owners.  Requests and  directions  from, and votes of, the Depository as
Noteholder  of the Notes shall not be deemed  inconsistent  if they are made with respect to different  Beneficial
Owners.  The  Indenture  Trustee may  establish  a  reasonable  record date in  connection  with  solicitations  of
consents  from or voting by  Noteholders  and give  notice to the  Depository  of such  record date.  Without  the
consent of the Issuer and the Indenture  Trustee,  no Term Note may be transferred  by the  Depository  except to a
successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

          In the event the Depository Trust Company resigns or is removed as Depository,  the  Indenture Trustee, at
the  request of the  Servicer  and with the  approval  of the  Issuer may  appoint a  successor  Depository.  If no
successor  Depository has been appointed  within 30 days of the effective date of the  Depository's  resignation or
removal,  each Beneficial  Owner shall be entitled to certificates  representing  the Notes it beneficially  owns in
the manner prescribed in Section 4.08.

          The Notes shall, on original  issue, be executed on behalf of the Issuer by the Owner Trustee, not in its
individual  capacity but solely as Owner Trustee and upon Issuer  Order,  authenticated  by the Note  Registrar and
delivered by the Indenture Trustee to or upon the order of the Issuer.

Section 4.02       Registration  of and  Limitations on Transfer and Exchange of Notes; Appointment of Certificate
Registrar.  The Issuer shall cause to be kept at the  Indenture  Trustee's  Corporate  Trust  Office a Note Register
in which,  subject to such  reasonable  regulations as it may prescribe,  the Note Registrar shall provide for the
registration  of Notes and of transfers and exchanges of Notes as herein  provided.  The Issuer hereby appoints the
Indenture Trustee as the initial Note Registrar.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the Corporate Trust Office, the Issuer shall execute, and the Note Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes in authorized initial Note Balances evidencing the same aggregate Percentage Interests.

Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged for other Notes of like tenor, in each case in authorized initial Note Balances evidencing the same aggregate Percentage Interests, upon surrender of the Notes to be exchanged at the Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for exchange, the Issuer shall execute and the Note Registrar shall authenticate and deliver the Notes which the Noteholder making the exchange is entitled to receive. Each Note presented or surrendered for registration of transfer or exchange shall (if so required by the Note Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in form reasonably satisfactory to the Note Registrar duly executed by, the Noteholder thereof or his attorney duly authorized in writing with such signature guaranteed by a commercial bank or trust company located or having a correspondent located in The City of New York. Notes delivered upon any such transfer or exchange will evidence the same obligations, and will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be imposed for any registration of transfer or exchange of Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any registration of transfer or exchange of Notes.

All Notes surrendered for registration of transfer and exchange shall be cancelled by the Note Registrar and delivered to the Indenture Trustee for subsequent destruction without liability on the part of either.

The Issuer hereby appoints the Indenture Trustee as Certificate Registrar to keep at its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust Agreement in which, subject to such reasonable regulations as it may prescribe, the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges thereof pursuant to Section 3.05 of the Trust Agreement. The Indenture Trustee hereby accepts such appointment.

Each purchaser of a Note, by its acceptance of the Note, shall be deemed to have represented that the acquisition of such Note by the purchaser does not constitute or give rise to a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, for which no statutory, regulatory or administrative exemption is available.

Section 4.03    Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to the Indenture Trustee such security or indemnity as may be required by it and the Issuer to hold the Issuer and the Indenture Trustee harmless, then, in the absence of notice to the Issuer, the Note Registrar or the Indenture Trustee that such Note has been acquired by a bona fide purchaser, and provided that the requirements of Section 8 405 of the UCC are met, the Issuer shall execute, and upon its request the Indenture Trustee shall authenticate and deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a replacement Note of the same class; provided, however, that if any such destroyed, lost or stolen Note, but not a mutilated Note, shall have become or within seven days shall be due and payable, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost or stolen Note when so due or payable without surrender thereof. If, after the delivery of such replacement Note or payment of

a destroyed, lost or stolen Note pursuant to the proviso to the preceding sentence, a bona fide purchaser of the
original Note in lieu of which such replacement Note was issued presents for payment such original Note, the
Issuer and the Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from the
Person to whom it was delivered or any Person taking such replacement Note from such Person to whom such
replacement Note was delivered or any assignee of such Person, except a bona fide purchaser, and shall be
entitled to recover upon the security or indemnity provided therefor to the extent of any loss, damage, cost or
expense incurred by the Issuer or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuer may require the payment by
the Noteholder of such Note of a sum sufficient to cover any tax or other governmental charge that may be imposed
in relation thereto and any other reasonable expenses (including the fees and expenses of the Indenture Trustee)
connected therewith.

Every replacement Note issued pursuant to this Section 4.03 in replacement of any mutilated, destroyed,
lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, whether or not
the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled
to all the benefits of this Indenture equally and proportionately with any and all other Notes duly issued
hereunder.

The provisions of this Section 4.03 are exclusive and shall preclude (to the extent lawful) all other
rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

Section 4.04    Persons Deemed Owners. Prior to due presentment for registration of transfer of any Note, the
Issuer, the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the Person in whose
name any Note is registered (as of the day of determination) as the owner of such Note for the purpose of
receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever,
whether or not such Note be overdue, and none of the Issuer, the Indenture Trustee or any agent of the Issuer or
the Indenture Trustee shall be affected by notice to the contrary.

Section 4.05    Cancellation. All Notes surrendered for payment, registration of transfer, exchange or
redemption shall, if surrendered to any Person other than the Indenture Trustee, be delivered to the Indenture
Trustee and shall be promptly cancelled by the Indenture Trustee. The Issuer may at any time deliver to the
Indenture Trustee for cancellation any Notes previously authenticated and delivered hereunder which the Issuer
may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly cancelled by the
Indenture Trustee. No Notes shall be authenticated in lieu of or in exchange for any Notes cancelled as provided
in this Section 4.05, except as expressly permitted by this Indenture. All cancelled Notes may be held or
disposed of by the Indenture Trustee in accordance with its standard retention or disposal policy as in effect at
the time unless the Issuer shall direct by an Issuer Request that they be destroyed or returned to it; provided,
however, that such Issuer Request is timely and the Notes have not been previously disposed of by the Indenture
Trustee.

Section 4.06    Book-Entry Notes. The Notes, upon original issuance, shall be issued in the form of
typewritten Notes representing the Book-Entry Notes, to be delivered to The Depository Trust Company, the initial
Depository, by, or on behalf of, the Issuer. Such Notes shall initially be registered on the Note Register in
the name of Cede & Co., the nominee of the initial Depository, and no Beneficial Owner shall receive a Definitive
Note representing such Beneficial Owner's interest in such Note, except as provided in Section 4.08. Unless and

until definitive, fully registered Notes (the "Definitive Notes") have been issued to Beneficial Owners pursuant
to Section 4.08:

(a)      the provisions of this Section 4.06 shall be in full force and effect;

(b)      the Note Registrar and the Indenture Trustee shall be entitled to deal with the Depository for all
purposes of this Indenture (including the payment of principal of and interest on the Notes and the giving of
instructions or directions hereunder) as the sole holder of the Notes, and shall have no obligation to the
Beneficial Owners;

(c)      to the extent that the provisions of this Section 4.06 conflict with any other provisions of this
Indenture, the provisions of this Section 4.06 shall control;

(d)      the rights of Beneficial Owners shall be exercised only through the Depository and shall be limited to
those established by law and agreements between such Owners of Notes and the Depository or the Depository
Participants. Unless and until Definitive Notes are issued pursuant to Section 4.08, the initial Depository will
make book-entry transfers among the Depository Participants and receive and transmit payments of principal of and
interest on the Notes to such Depository Participants; and

(e)      whenever this Indenture requires or permits actions to be taken based upon instructions or directions of
Noteholders of Notes evidencing a specified percentage of the Note Balances of the Notes, the Depository shall be
deemed to represent such percentage only to the extent that it has received instructions to such effect from
Beneficial Owners or Depository Participants owning or representing, respectively, such required percentage of
the beneficial interest in the Notes and has delivered such instructions to the Indenture Trustee.

Section 4.07      Notices to Depository. Whenever a notice or other communication to the Noteholders of the
Notes is required under this Indenture, unless and until Definitive Notes shall have been issued to Beneficial
Owners pursuant to Section 4.08, the Indenture Trustee shall give all such notices and communications specified
herein to be given to Noteholders of the Notes to the Depository, and shall have no obligation to the Beneficial
Owners.

Section 4.08      Definitive Notes. If (i) the Depositor determines that the Depository is no longer willing or
able to properly discharge its responsibilities with respect to the Notes and the Depositor is unable to locate a
qualified successor, (ii) the Depositor, with the prior consent of the Beneficial Owners, notifies the Indenture
Trustee and the Depository that it has elected to terminate the book-entry system through the Depository, or
(iii) after the occurrence of an Event of Default, Beneficial Owners of Notes representing beneficial interests
aggregating at least a majority of the aggregate Term Note Balance of the Notes advise the Depository in writing
that the continuation of a book-entry system through the Depository is no longer in the best interests of the
Beneficial Owners, then the Depository shall notify all Beneficial Owners and the Indenture Trustee of the
occurrence of any such event and of the availability of Definitive Notes to Beneficial Owners requesting the
same. Upon surrender by the Depository to the Indenture Trustee of the typewritten Notes representing the
Book-Entry Notes by the Depository (or Percentage Interest of the Book-Entry Notes being transferred pursuant to
clause (iii) above), accompanied by registration instructions, the Issuer shall execute and the Indenture Trustee
shall authenticate the Definitive Notes in accordance with the instructions of the Depository. None of the
Issuer, the Note Registrar or the Indenture Trustee shall be liable for any delay in delivery of such
instructions, and each may conclusively rely on, and shall be protected in relying on, such instructions. Upon
the issuance of Definitive Notes, the Indenture Trustee shall recognize the Noteholders of the Definitive Notes

as Noteholders.

Section 4.09    Tax Treatment. The Issuer has entered into this Indenture, and the Notes will be issued, with the intention that, for federal, state and local income, single business and franchise tax purposes, the Notes (exclusive of any payment pursuant to the Yield Maintenance Agreement or in respect of Interest Carry Forward Amounts) will qualify as regular interests in a REMIC as defined in the Code, which will be treated as indebtedness for purposes of such taxes. The Issuer, by entering into this Indenture, and each Noteholder, by its acceptance of its Note (and each Beneficial Owner by its acceptance of an interest in the applicable Book-Entry Note), agree to treat the Notes (exclusive of any payment pursuant to the Yield Maintenance Agreement or in respect of Interest Carry Forward Amounts) for federal, state and local income, single business and franchise tax purposes as (i) regular interests in a REMIC as defined in the Code, which will be treated as indebtedness for purposes of such taxes and (ii) the right to receive payments from outside the REMIC under the Yield Maintenance Agreement and in respect of Interest Carry Forward Amounts.

Section 4.10    Satisfaction and Discharge of Indenture. This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of Noteholders to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.06, 3.09, 3.16, 3.18 and 3.19, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Section 4.11) and (vi) the rights of Noteholders as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on written demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when:

(A)    either:

(1)    all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 4.03 and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation; or

(2)    all Notes not theretofore delivered to the Indenture Trustee for cancellation:

a)    have become due and payable;

b)    will become due and payable at the Final Payment Date within one year; or

c)    have been declared immediately due and payable pursuant to Section 5.02.

and the Issuer, in the case of (a) and (b) above, has irrevocably deposited or caused to be irrevocably deposited with the Indenture Trustee cash or direct obligations of or obligations guaranteed by the United States of America (which will mature prior to the date such amounts are payable), in trust for such purpose, in an amount sufficient to pay and discharge the entire indebtedness on such Notes and Certificates then Outstanding not theretofore delivered to the Indenture Trustee for cancellation when due on the Final Payment Date, as evidenced to the Indenture Trustee by an accountant's letter or an

(B)    the Issuer has paid or caused to be paid all other sums payable hereunder and under the Insurance Agreement by the Issuer; and

(C)    the Issuer has delivered to the Indenture Trustee and the Enhancer an Officer's Certificate and an Opinion of Counsel, each meeting the applicable requirements of Section 10.01 and each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with and, if the Opinion of Counsel relates to a deposit made in connection with Section 4.10(A)(2)b. above, such opinion shall further be to the effect that such deposit will not have any material adverse tax consequences to the Issuer, any Noteholders or any Certificateholders.

Section 4.11    Application of Trust Money. All monies deposited with the Indenture Trustee pursuant to Section 4.10 hereof shall be held in trust and applied by it, in accordance with the provisions of the Notes and this Indenture, to the payment, either directly or through any Paying Agent or Certificate Paying Agent, as the Indenture Trustee may determine, to the Securityholders of Securities, of all sums due and to become due thereon for principal and interest; but such monies need not be segregated from other funds except to the extent required herein or required by law.

Section 4.12    Subrogation and Cooperation. The Issuer and the Indenture Trustee acknowledge that (i) to the extent the Enhancer makes payments under the Policy on account of principal of or interest on the Notes, the Enhancer will be fully subrogated to the rights the Noteholders to receive such principal and interest, and (ii) the Enhancer shall be paid such principal and interest only from the sources and in the manner provided herein and in the Insurance Agreement for the payment of such principal and interest.

The Indenture Trustee shall cooperate in all respects with any reasonable request by the Enhancer for action to preserve or enforce the Enhancer's rights or interest under this Indenture or the Insurance Agreement, consistent with this Indenture and without limiting the rights of the Noteholders as otherwise set forth in the Indenture, including upon the occurrence and continuance of a default under the Insurance Agreement, a request (which request shall be in writing) to take any one or more of the following actions:

(i)    institute Proceedings for the collection of all amounts then payable on the Notes or under this Indenture in respect to the Notes and all amounts payable under the Insurance Agreement and to enforce any judgment obtained and collect from the Issuer monies adjudged due;

(ii)    sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or private Sales (as defined in Section 5.15 hereof) called and conducted in any manner permitted by law;

(iii)    file or record all assignments that have not previously been recorded;

(iv)    institute Proceedings from time to time for the complete or partial foreclosure of this Indenture; and

(v)    exercise any remedies of a secured party under the UCC and take any other appropriate action to protect and enforce the rights and remedies of the Enhancer hereunder.

Following the payment in full of the Notes, the Enhancer shall continue to have all rights and privileges provided to it under this Section and in all other provisions of this Indenture, until all amounts owing to the Enhancer have been paid in full.

Section 4.13    Repayment of Monies Held by Paying Agent. In connection with the satisfaction and discharge of this Indenture with respect to the Notes, all monies then held by any Paying Agent (other

than the  Indenture
Trustee) under the  provisions of this  Indenture  with respect to such Notes shall,  upon demand of the Issuer,  be
paid to the Indenture  Trustee to be held and applied  according to Section 3.05; and thereupon, such Paying Agent
shall be released from all further liability with respect to such monies.

Section 4.14        Temporary Notes.  Pending the  preparation of any Definitive Notes,  the Issuer may execute and
upon its written  direction,  the Indenture  Trustee may  authenticate  and make available for delivery,  temporary
Notes that are  printed,  lithographed,  typewritten,  photocopied  or  otherwise  produced,  in any  denomination,
substantially  of the tenor of the  Definitive  Notes in lieu of which they are  issued  and with such  appropriate
insertions,  omissions,  substitutions and other variations as the officers executing such Notes may determine,  as
evidenced by their execution of such Notes.

        If  temporary  Notes are  issued,  the Issuer will  cause  Definitive  Notes  to  be prepared  without
unreasonable  delay.  After the preparation of the Definitive  Notes, the temporary Notes shall be exchangeable for
Definitive  Notes upon surrender of the temporary Notes at the office or agency of the Indenture Trustee,  without
charge to the  Noteholder.  Upon surrender for  cancellation of any one or more temporary  Notes, the Issuer shall
execute and the Indenture  Trustee shall  authenticate  and make  available  for  delivery,  in exchange  therefor,
Definitive  Notes  of  authorized  denominations  and of like  tenor  and  aggregate  principal amount.  Until  so
exchanged,  such  temporary  Notes shall in all respects be entitled to the same benefits  under this  Indenture as
Definitive Notes.

ARTICLE V

Default And Remedies

Section 5.01        Events of Default.  The Issuer shall  deliver to the Indenture  Trustee and the Enhancer,  within
five days  after  learning  of the  occurrence  of any event  that with the  giving of notice and the lapse of time
would become an Event of Default  under clause (c) of the  definition  of "Event of Default" written  notice in the
form of an  Officer's  Certificate  of its status and what  action  the Issuer is taking or proposes  to take with
respect thereto.

Section 5.02        Acceleration  of Maturity;  Rescission and  Annulment.  If an Event of Default shall occur and be
continuing,  then and in every such case the  Indenture  Trustee,  acting at the  direction  of the Enhancer or the
Noteholders of Notes  representing  not less than a majority of the aggregate  Note Balance of the Notes,  with the
written consent of the Enhancer (so long as no Enhancer  Default  exists),  may declare the Notes to be immediately
due and payable by a notice in writing to the Issuer (and to the Indenture  Trustee if given by Noteholders);  and
upon any such  declaration,  the unpaid  principal  amount of the Notes,  together with accrued and unpaid interest
thereon through the date of acceleration, shall become immediately due and payable.

        At any time after such  declaration  of  acceleration  of maturity with respect to an Event of Default has
been made and before a judgment or decree for payment of the money due has been obtained by the Indenture  Trustee
as hereinafter  provided in this  Article V,  the Enhancer or the  Noteholders of Notes representing a majority of
the  aggregate  Note  Balance of the Notes,  with the written  consent of the  Enhancer,  by written  notice to the
Issuer and the  Indenture  Trustee,  may in writing  waive the related  Event of Default and rescind and annul such

declaration and its consequences if:

(a)      the Issuer has paid or deposited with the Indenture Trustee a sum sufficient to pay:

(i)      all payments of principal of and interest on the Notes and all other amounts that would then be due
         hereunder or upon the Notes if the Event of Default giving rise to such acceleration had not occurred;

(ii)     all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses,
         disbursements and advances of the Indenture Trustee and its agents and counsel; and

(iii)    all Events of Default, other than the nonpayment of the principal of the Notes that has become due
         solely by such acceleration, have been cured or waived as provided in Section 5.12.

         No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03      Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a)      The Issuer covenants that if default in the payment of (i) any interest on any Note when the same
becomes due and payable, and such default continues for a period of five days, or (ii) the principal of or any
installment of the principal of any Note when the same becomes due and payable, the Issuer shall, upon demand of
the Indenture Trustee, pay to it, for the benefit of the Noteholders, the entire amount then due and payable on
the Notes for principal and interest, with interest on the overdue principal, and in addition thereto such
further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable
compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel.

(b)      In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in
its own name and as trustee of an express trust, subject to the provisions of Section 10.17 hereof, may institute
a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or
final decree, and may enforce the same against the Issuer or other obligor on the Notes and collect in the manner
provided by law out of the property of the Issuer or other obligor on the Notes, wherever situated, the monies
adjudged or decreed to be payable.

(c)      If an Event of Default shall occur and be continuing, the Indenture Trustee, subject to the provisions
of Section 10.17 hereof, may, as more particularly provided in Section 5.04, in its discretion proceed to protect
and enforce its rights and the rights of the Noteholders by such appropriate Proceedings as the Indenture Trustee
shall deem most effective to protect and enforce any such rights, whether for the specific enforcement of any
covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any
other proper remedy or legal or equitable right vested in the Indenture Trustee by this Indenture or by law.

(d)      If there shall be pending, relative to the Issuer or any other obligor on the Notes or any Person having
or claiming an ownership interest in the Trust Estate, Proceedings under Title 11 of the United States Code or
any other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or
trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed
for or taken possession of the Issuer or its property or such other obligor or Person, or if there shall be any
other comparable judicial Proceedings relative to the Issuer or other any other obligor on the Notes, or relative
to the creditors or property of the Issuer or such other obligor, then the Indenture Trustee, irrespective of
whether the principal of any Notes shall then be due and payable as therein expressed or by declaration or
otherwise, and irrespective of whether the Indenture Trustee shall have made any demand pursuant to the
provisions of this Section, shall be entitled and empowered, by intervention in such Proceedings

or otherwise:

(i)      to file and prove a claim or claims for the entire amount of principal and interest owing and unpaid in

          respect of the Notes and to file such other papers or documents as may be necessary or advisable in

          order to have the claims of the Indenture Trustee (including any claim for reasonable compensation to

          the Indenture Trustee and each predecessor Indenture Trustee, and their respective agents, attorneys and

          counsel, and for reimbursement of all expenses and liabilities incurred, and all advances made, by the

          Indenture Trustee and each predecessor Indenture Trustee, except as a result of negligence, willful

          misconduct or bad faith) and of the Noteholders allowed in such Proceedings;

(ii)     unless prohibited by applicable law and regulations, to vote on behalf of the Noteholders in any

          election of a trustee, a standby trustee or Person performing similar functions in any such Proceedings;

(iii)    to collect and receive any monies or other property payable or deliverable on any such claims and to

          distribute all amounts received with respect to the claims of the Noteholders and of the Indenture

          Trustee on their behalf; and

(iv)     to file such proofs of claim and other papers or documents as may be necessary or advisable in order to

          have the claims of the Indenture Trustee or the Noteholders allowed in any judicial proceedings relative

          to the Issuer, its creditors and its property;

and any trustee, receiver, liquidator, custodian or other similar official in any such Proceeding is hereby

authorized by each of such Noteholders to make payments to the Indenture Trustee, and, in the event the Indenture

Trustee shall consent to the making of payments directly to such Noteholders, to pay to the Indenture Trustee

such amounts as shall be sufficient to cover reasonable compensation to the Indenture Trustee, each predecessor

Indenture Trustee and their respective agents, attorneys and counsel, and all other expenses and liabilities

incurred, and all advances made, by the Indenture Trustee and each predecessor Indenture Trustee, except as a

result of negligence, willful misconduct or bad faith.

(e)      Nothing herein contained shall be deemed to authorize the Indenture Trustee to authorize or consent to

or vote for or accept or adopt on behalf of any Noteholder any plan of reorganization, arrangement, adjustment or

composition affecting the Notes or the rights of any Noteholder thereof or to authorize the Indenture Trustee to

vote in respect of the claim of any Noteholder in any such proceeding except, as aforesaid, to vote for the

election of a trustee in bankruptcy or similar Person.

(f)      All rights of action and of asserting claims under this Indenture, or under any of the Notes, may be

enforced by the Indenture Trustee without the possession of any of the Notes or the production thereof in any

trial or other Proceedings relative thereto, and any such action or proceedings instituted by the Indenture

Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment, subject to

the payment of the expenses, disbursements and compensation of the Indenture Trustee, each predecessor Indenture

Trustee and their respective agents and attorneys, shall be for the ratable benefit of the Holders of the Notes.

(g)      In any Proceedings to which the Indenture Trustee shall be a party (including any Proceedings involving

the interpretation of any provision of this Indenture), the Indenture Trustee shall be held to represent all

Noteholders, and it shall not be necessary to make any Noteholder a party to any such Proceedings.

Section 5.04      Remedies; Priorities.

(a)      If an Event of Default shall have occurred and be continuing, then the Indenture Trustee, subject to the

provisions of Section 10.17 hereof, with the prior consent of the Enhancer may, or, at the written direction of
the Enhancer, shall, do one or more of the following, in each case subject to Section 5.05:

(i)    institute Proceedings in its own name and as trustee of an express trust for the collection of all
       amounts then payable on the Notes or under this Indenture with respect thereto, whether by declaration
       or otherwise, and all amounts payable under the Insurance Agreement, enforce any judgment obtained, and
       collect from the Issuer and any other obligor on the Notes monies adjudged due;

(ii)   institute Proceedings from time to time for the complete or partial foreclosure of this Indenture with
       respect to the Trust Estate;

(iii)  exercise any remedies of a secured party under the UCC and take any other appropriate action to protect
       and enforce the rights and remedies of the Indenture Trustee and the Noteholders; and

(iv)   sell the Trust Estate or any portion thereof or rights or interest therein, at one or more public or
       private sales called and conducted in any manner permitted by law;

provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust Estate following an
Event of Default, unless (A) the Indenture Trustee obtains the consent of the Enhancer (or if an Enhancer Default
has occurred and is continuing, the Noteholders of 100% of the aggregate Note Balance of the Notes), (B) the
proceeds of such sale or liquidation distributable to Noteholders are sufficient to discharge in full all amounts
then due and unpaid upon the Notes for principal and interest and to reimburse the Enhancer for any amounts drawn
under the Policy and any other amounts due the Enhancer under the Insurance Agreement or (C) the Indenture
Trustee determines that the Mortgage Loans will not continue to provide sufficient funds for the payment of
principal of and interest on the Notes as they would have become due if the Notes had not been declared due and
payable, and the Indenture Trustee obtains the consent of the Enhancer (or if an Enhancer Default has occurred
and is continuing, and the Noteholders of 66 2/3% of the aggregate Note Balance of the Notes). In determining
such sufficiency or insufficiency with respect to clause (B) and (C) above, the Indenture Trustee may, but need
not, obtain and rely, and shall be protected in relying in good faith, upon an opinion of an Independent
investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as
to the sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, provided that a
Servicing Default shall not have occurred, any Sale (as defined in Section 5.15 hereof) of the Trust Estate shall
be made subject to the continued servicing of the Mortgage Loans by the Servicer as provided in the Servicing
Agreement. Notwithstanding any sale of the Mortgage Loans pursuant to this Section 5.04(a), the Indenture Trustee
shall, for so long as any principal or accrued interest on the Notes remains unpaid, continue to act as Indenture
Trustee hereunder and to draw amounts payable under the Policy in accordance with its terms.

(b)    If the Indenture Trustee collects any money or property pursuant to this Article V, it shall pay out
such money or property in the following order:

       FIRST:  to the Indenture Trustee for amounts due under Section 6.07;

       SECOND: to the Noteholders of each Class of Notes, pro rata, for amounts due and unpaid on the
       related Notes for interest, including accrued and unpaid interest on the Notes for any prior
       Payment Date, ratably, without preference or priority of any kind, according to the amounts due
       and payable on such Notes for interest from amounts available in the Trust Estate for such
       Noteholders, other than amounts in respect of Interest Carry Forward Amounts;

       THIRD:  to the Noteholders of each Class of Notes, pro rata, for amounts due and unpaid on the
       related Notes for principal, ratably, without preference or priority of any

kind, according to the amounts due and payable on such Notes for principal, from amounts available in the Trust Estate for such Noteholders, until the respective Note Balances of such Class have been reduced to zero;

FOURTH: to the payment of all amounts due and owing the Enhancer under the Insurance Agreement;

FIFTH: to the Certificate Paying Agent for amounts due under Article VIII of the Trust Agreement; and

SEVENTH: to the payment of the remainder, if any, to the Issuer or any other person legally entitled thereto.

The Indenture Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 5.04. At least 15 days before such record date, the Indenture Trustee shall mail to each Noteholder a notice that states the record date, the payment date and the amount to be paid.

Section 5.05    Optional Preservation of the Trust Estate. If the Notes have been declared due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, but need not (but shall at the written direction of the Enhancer so long as no Enhancer Default exists), elect to take and maintain possession of the Trust Estate. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuer including payment to the Enhancer, and the Indenture Trustee shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the Indenture Trustee may, but need not, obtain and rely, and shall be protected in relying in good faith, upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06    Limitation of Suits. No Noteholder shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the provisions of Section 10.17 hereof:

(a)    such Noteholder shall have previously given written notice to the Indenture Trustee of a continuing Event of Default;

(b)    the Noteholders of not less than 25% of the aggregate Note Balance of the Notes shall have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(c)    such Noteholder or Noteholders shall have offered the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred by it in complying with such request;

(d)    the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute such Proceedings; and

(e)    no direction inconsistent with such written request shall have been given to the Indenture Trustee during such 60-day period by the Noteholders of a majority of the aggregate Note Balance of the Notes or by the Enhancer.

It is understood and intended that no Noteholder shall have any right in any manner whatever by virtue of, or by availing itself of, any provision of this Indenture to affect, disturb or prejudice

the rights of any
other Noteholders or to obtain or to seek to obtain priority or preference over any other Noteholders or to
enforce any right under this Indenture, except in the manner herein provided.

In the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from
two or more groups of Noteholders, each representing less than a majority of the aggregate Note Balance of the
Notes, the Indenture Trustee shall act at the direction of the group of Noteholders with the greater Note
Balance. In the event that the Indenture Trustee shall receive conflicting or inconsistent requests and
indemnity from two or more groups of Noteholders representing the same Note Balance, then the Indenture Trustee
in its sole discretion may determine what action, if any, shall be taken, notwithstanding any other provisions of
this Indenture.

Section 5.07    Unconditional Rights of Noteholders to Receive Principal and Interest. Subject to the
provisions of this Indenture, the Noteholder of any Note shall have the right, which is absolute and
unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the
respective due dates thereof expressed in such Note or in this Indenture and to institute suit for the
enforcement of any such payment, and such right shall not be impaired without the consent of such Noteholder.

Section 5.08    Restoration of Rights and Remedies. If the Indenture Trustee or any Noteholder has instituted
any Proceeding to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or
abandoned for any reason or has been determined adversely to the Indenture Trustee or to such Noteholder, then
and in every such case the Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination
in such Proceeding, be restored severally and respectively to their former positions hereunder, and thereafter
all rights and remedies of the Indenture Trustee and the Noteholders shall continue as though no such Proceeding
had been instituted.

Section 5.09    Rights and Remedies Cumulative. No right or remedy herein conferred upon or reserved to the
Indenture Trustee, the Enhancer or the Noteholders is intended to be exclusive of any other right or remedy, and
every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right
and remedy given hereunder or now or hereafter existing at law, in equity or otherwise. The assertion or
employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or
employment of any other appropriate right or remedy.

Section 5.10    Delay or Omission Not a Waiver. No delay or omission of the Indenture Trustee, the Enhancer or
any Noteholder to exercise any right or remedy accruing upon any Event of Default shall impair any such right or
remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy
given by this Article V or by law to the Indenture Trustee or to the Noteholders may be exercised from time to
time, and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as the case may be.

Section 5.11    Control by Enhancer or Noteholders. The Enhancer (so long as no Enhancer Default exists) or
the Noteholders of a majority of the aggregate Note Balance of Notes with the consent of the Enhancer, shall have
the right to direct the time, method and place of conducting any Proceeding for any remedy available to the
Indenture Trustee with respect to the Notes or exercising any trust or power conferred on the Indenture Trustee,
provided that:

(a)    such direction shall not be in conflict with any rule of law or with this Indenture;

(b)    subject to the express terms of Section 5.04, any direction to the Indenture Trustee to sell or

liquidate the Trust Estate shall be by the Enhancer (so long as no Enhancer Default exists) or by the Noteholders
of Notes representing not less than 100% of the aggregate Note Balance of the Notes with the consent of the
Enhancer;

(c)    if the conditions set forth in Section 5.05 shall have been satisfied and the Indenture Trustee elects
to retain the Trust Estate pursuant to such Section, then any direction to the Indenture Trustee by Noteholders
of Notes representing less than 100% of the aggregate Note Balance of the Notes to sell or liquidate the Trust
Estate shall be of no force and effect; and

(d)    the Indenture Trustee may take any other action deemed proper by the Indenture Trustee that is not
inconsistent with such direction.

Notwithstanding the rights of Noteholders set forth in this Section, subject to Section 6.01, the Indenture
Trustee need not take any action that it determines (in its sole discretion) might involve it in liability or
might materially adversely affect the rights of any Noteholders not consenting to such action, unless the Trustee
has received satisfactory indemnity from the Enhancer or a Noteholder.

Section 5.12    Waiver of Past Defaults. Prior to the declaration of the acceleration of the maturity of the
Notes as provided in Section 5.02, the Enhancer (so long as no Enhancer Default exists) or the Noteholders of
not less than a majority of the aggregate Note Balance of the Notes, with the consent of the Enhancer, may waive
any past Event of Default and its consequences, except an Event of Default (a) with respect to payment of
principal of or interest on any of the Notes or (b) in respect of a covenant or provision hereof that cannot be
modified or amended without the consent of the Noteholder of each Note. In the case of any such waiver, the
Issuer, the Indenture Trustee and the Noteholders shall be restored to their respective former positions and
rights hereunder; but no such waiver shall extend to any subsequent or other Event of Default or impair any right
consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have been cured and not
to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other
Event of Default or impair any right consequent thereto.

Section 5.13    Undertaking for Costs. All parties to this Indenture agree, and each Noteholder by such
Noteholder's acceptance of the related Note shall be deemed to have agreed, that any court may in its discretion
require, in any Proceeding for the enforcement of any right or remedy under this Indenture, or in any Proceeding
against the Indenture Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by
any party litigant in such Proceeding of an undertaking to pay the costs of such Proceeding, and that such court
may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant
in such Proceeding, having due regard to the merits and good faith of the claims or defenses made by such party
litigant; but the provisions of this Section 5.13 shall not apply to (a) any Proceeding instituted by the
Indenture Trustee, (b) any Proceeding instituted by any Noteholder, or group of Noteholders, in each case holding
in the aggregate more than 10% of the aggregate Note Balance of the Notes or (c) any Proceeding instituted by any
Noteholder for the enforcement of the payment of principal of or interest on any Note on or after the respective
due dates expressed in such Note and in this Indenture.

Section 5.14    Waiver of Stay or Extension Laws. The Issuer covenants (to the extent that it may lawfully do
so) that it will not at any time insist upon, or plead or in any manner whatsoever, claim or take the benefit or
advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect
the covenants or the performance of this Indenture; and the Issuer (to the extent that it

may lawfully do so)
hereby expressly waives all benefit or advantage of any such law, and covenants that it shall not hinder, delay
or impede the execution of any power herein granted to the Indenture Trustee, but will suffer and permit the
execution of every such power as though no such law had been enacted.

Section 5.15    Sale of Trust Estate.

(a)    The power to effect any sale or other disposition (a "Sale") of any portion of the Trust Estate pursuant
to Section 5.04 is expressly subject to the provisions of Section 5.05 and this Section 5.15. The power to
effect any such Sale shall not be exhausted by any one or more Sales as to any portion of the Trust Estate
remaining unsold, but shall continue unimpaired until the entire Trust Estate shall have been sold or all amounts
payable on the Notes and under this Indenture and under the Insurance Agreement shall have been paid. The
Indenture Trustee may from time to time postpone any public Sale by public announcement made at the time and
place of such Sale. The Indenture Trustee hereby expressly waives its right to any amount fixed by law as
compensation for any Sale.

(b)    The Indenture Trustee shall not in any private Sale sell the Trust Estate, or any portion thereof,
unless:

(i)    the Enhancer direct(s) the Indenture Trustee in writing to make such Sale in accordance with the
provisions of Section 5.04,

(ii)    the proceeds of such Sale would be not less than the entire amount that would be payable to the
Noteholders under the Notes, the Certificateholders under the Certificates and the Enhancer in respect
of amounts drawn under the Policy and any other amounts due the Enhancer under the Insurance Agreement,
in full payment thereof in accordance with Section 5.02, on the Payment Date next succeeding the date of
such Sale, or

(iii)    the Indenture Trustee determines, in its sole discretion, that the conditions for retention of the Trust
Estate set forth in Section 5.05 cannot be satisfied (in making any such determination, the Indenture
Trustee may rely and shall be protected in relying in good faith upon an opinion of an Independent
investment banking firm obtained and delivered as provided in Section 5.05), and the Enhancer consents
to such Sale.

The purchase by the Indenture Trustee of all or any portion of the Trust Estate at a private Sale shall not be
deemed a Sale or other disposition thereof for purposes of this Section 5.15(b).

(c)    Unless the Noteholders and the Enhancer shall have otherwise consented or directed the Indenture
Trustee, at any public Sale of all or any portion of the Trust Estate at which a minimum bid equal to or greater
than the amount described in paragraph (ii) of Section 5.15(b) has not been established by the Indenture Trustee
and no Person bids an amount equal to or greater than such amount, then the Indenture Trustee shall bid an amount
at least $1.00 more than the highest other bid, which bid shall be subject to the provisions of
Section 5.15(d)(ii) herein.

(d)    In connection with a Sale of all or any portion of the Trust Estate:

(i)    any Noteholder may bid for and, with the consent of the Enhancer, purchase the property offered for
sale, and upon compliance with the terms of sale may hold, retain and possess and dispose of such
property, without further accountability, and may, in paying the purchase money therefor, deliver any
Notes or claims for interest thereon in lieu of cash up to the amount which shall, upon distribution of
the net proceeds of such sale, be payable thereon, and such Notes, in case the amounts so payable

thereon   shall be less than the amount thereon,   shall  be returned to the
Noteholders  thereof  after
being appropriately stamped to show such partial payment;

(ii)      the  Indenture  Trustee may bid for and acquire  the property  offered for Sale in
connection  with any Sale
thereof  and,  subject  to any  requirements  of,  and to  the  extent  permitted by,
applicable  law in
connection   therewith,   may purchase all or any portion of the Trust Estate in a private
sale. In lieu of
paying cash therefor,  the Indenture  Trustee may make  settlement for the purchase
price by crediting the
gross Sale price  against the sum of (A) the amount that would be  distributable  to the
Noteholders and
the  Certificateholders  and amounts  owing to the  Enhancer as a result of such Sale in
accordance  with
Section  5.04(b) on the Payment  Date next  succeeding  the date of such Sale and (B)
the  expenses of the
Sale and of any  Proceedings in connection  therewith that are  reimbursable to it,
without being required
to  produce  the  Notes in order  to  complete  any  such  Sale or in order  for the
net Sale  price to be
credited  against such Notes,  and any  property so acquired by the  Indenture  Trustee
shall be held and
dealt with by it in accordance  with the provisions of this Indenture;

(iii)     the Indenture Trustee shall execute and deliver an appropriate  instrument of conveyance
transferring its
interest in any portion of the Trust Estate in connection with a Sale thereof;

(iv)      the  Indenture  Trustee is hereby  irrevocably  appointed the agent and  attorney-in-fact
of the Issuer to
transfer  and convey its interest in any portion of the Trust Estate in  connection
with a Sale  thereof,
and to take all action necessary to effect such Sale; and

(v)       no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture
Trustee's  authority,
inquire into  the satisfaction of any conditions  precedent or see to the application of
any monies.

Section 5.16     Action on Notes.  The  Indenture  Trustee's  right to seek and  recover
judgment on the Notes or
under this  Indenture  shall not be affected by the seeking,  obtaining or application of any
other relief under or
with respect to this  Indenture.  Neither the lien of this  Indenture  nor any rights or remedies
of the  Indenture
Trustee or the Noteholders  shall be impaired by the recovery of any judgment by the Indenture
Trustee against the
Issuer or by the levy of any  execution  under such  judgment  upon any portion of the Trust
Estate or upon any of
the  assets  of  the  Issuer. Any  money  or  property  collected  by the  Indenture  Trustee
shall be  applied  in
accordance with Section 5.04(b).

Section 5.17     Performance and Enforcement of Certain Obligations.

(a)      Promptly  following  a written  request  from the  Enhancer  or the  Indenture  Trustee
(with the written
consent of the  Enhancer),  the Issuer,  in its capacity as owner of the Mortgage  Loans,  shall,
with the written
consent of the Enhancer,  take all such lawful  action as the Indenture  Trustee may request to
cause the Issuer to
compel or secure  performance and observance by the Sellers and the Servicer, as applicable,
of each of their
obligations to the Issuer under or in connection with the Purchase  Agreement and the Servicing
Agreement,  and to
exercise  any and all  rights,  remedies,  powers and  privileges  lawfully available  to the
Issuer  under or in
connection  with the Purchase  Agreement  and the Servicing  Agreement to the extent and in the
manner  directed by
the Indenture  Trustee,  as pledgee of the Mortgage  Loans,  including the transmission of notices
of default on the
part of the  Sellers  or the  Servicer  thereunder  and the  institution  of legal  or
administrative  actions  or
proceedings to compel or secure  performance by the Sellers or the Servicer of each of their
obligations under the
Purchase Agreement and the Servicing Agreement.

(b)      If an Event of Default shall have occurred and be  continuing,  the Indenture  Trustee,
as pledgee of the

Mortgage Loans, subject to the rights of the Enhancer under the Servicing Agreement, may, and at the direction
(which direction shall be in writing or by telephone (confirmed in writing promptly thereafter)) of the
Noteholders of 66 2/3% of the aggregate Note Balance of the Notes, shall, exercise all rights, remedies, powers,
privileges and claims of the Issuer against the Sellers or the Servicer under or in connection with the Purchase
Agreement and the Servicing Agreement, including the right or power to take any action to compel or secure
performance or observance by the Sellers or the Servicer, as the case may be, of each of their obligations to the
Issuer thereunder and to give any consent, request, notice, direction, approval, extension or waiver under the
Purchase Agreement and the Servicing Agreement, as the case may be, and any right of the Issuer to take such
action shall not be suspended. In connection therewith, as determined by the Indenture Trustee, the Issuer shall
take all actions necessary to effect the transfer of the Mortgage Loans to the Indenture Trustee.

---

ARTICLE VI

The Indenture Trustee

Section 6.01        Duties of Indenture Trustee.

(a)        If an Event of Default shall have occurred and be continuing, the Indenture Trustee shall exercise the
rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a
prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs.

(b)        Except during the continuance of an Event of Default:

(i)        the Indenture Trustee undertakes to perform such duties and only such duties as are specifically set
        forth in this Indenture and no implied covenants or obligations shall be read into this Indenture
        against the Indenture Trustee; and

(ii)        in the absence of bad faith on its part, the Indenture Trustee may conclusively rely, as to the truth of
        the statements and the correctness of the opinions expressed therein, upon certificates, reports or
        opinions furnished to the Indenture Trustee and conforming to the requirements of this Indenture;
        provided, however, that the Indenture Trustee shall examine the certificates, reports and opinions to
        determine whether or not they conform to the requirements of this Indenture.

(c)        The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent
failure to act or its own willful misconduct, except that:

(i)        this paragraph does not limit the effect of Section 6.01(a);

(ii)        the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible
        Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent
        facts; and

(iii)        the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good
        faith in accordance with a direction received by it pursuant to Section 5.11 or any direction from the
        Enhancer that the Enhancer is entitled to give under any of the Basic Documents.

(d)        The Indenture Trustee shall not be liable for interest on any money received by it except as the
Indenture Trustee may agree in writing with the Issuer.

(e)      Money held in trust by the Indenture Trustee need not be segregated from other funds except to the
extent required by law or the terms of this Indenture or the Trust Agreement.

(f)      No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or
otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any
of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate
indemnity against such risk or liability is not reasonably assured to it.

(g)      Every provision of this Indenture relating to the conduct or affecting the liability of or affording
protection to the Indenture Trustee shall be subject to the provisions of this Section and to the provisions of
TIA.

(h)      With respect to each Payment Date, on the Business Day following the related Determination Date, the
Indenture Trustee shall forward or cause to be forwarded by mail, or other mutually agreed-upon method, to the
Enhancer and the Servicer, a statement setting forth, to the extent applicable, during the Pre-Funding Period,
the Pre-Funded Amount as of such Determination Date and any transfers of funds in connection therewith.

(i)      The Indenture Trustee hereby accepts appointment as Certificate Paying Agent under the Trust Agreement
and agrees to be bound by the provisions of the Trust Agreement relating to the Certificate Paying Agent. The
Indenture Trustee hereby agrees to be bound by the provisions of Article IX of the Trust Agreement.

(j)      The Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of
any Event of Default (except for an Event of Default specified in clause (a) of the definition thereof) unless a
Responsible Officer of the Indenture Trustee shall have received written notice or have actual knowledge
thereof. In the absence of receipt of such notice or such knowledge, the Indenture Trustee may conclusively
assume that there is no default or Event of Default.

(k)      The Indenture Trustee shall have no duty to see to any recording or filing of any financing statement or
continuation statement evidencing a security interest or to see to the maintenance of any such recording or
filing or to any rerecording or refiling of any thereof.

Section 6.02      Rights of Indenture Trustee.

(a)      The Indenture Trustee may rely and shall be protected in acting or refraining from acting in good faith
upon any resolution, Officer's Certificate, opinion of counsel, certificate of auditors, or any other
certificate, statement, instrument, report, notice, consent or other document believed by it to be genuine and to
have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or
matter stated in any such document.

(b)      Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an
Opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good
faith in reliance on any such Officer's Certificate or Opinion of Counsel.

(c)      The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder
either directly or by or through agents or attorneys or a custodian or nominee, and the Indenture Trustee shall
not be responsible for any misconduct or negligence on the part of, or for the supervision of, any such agent,
attorney, custodian or nominee appointed with due care by it hereunder.

(d)      The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith which
it believes to be authorized or within its rights or powers; provided, however, that the Indenture Trustee's
conduct does not constitute willful misconduct, negligence or bad faith.

(e)      The  Indenture  Trustee may consult  with  counsel,  and the advice or opinion of counsel  with respect to
legal matters  relating to this  Indenture and the Notes shall be full and complete authorization  and  protection
from liability in  respect to any  action taken, omitted or suffered by it hereunder  in good faith and in
accordance with the advice or opinion of such counsel.

(f)      The Indenture  Trustee shall not be personally  liable for any action taken,  suffered or omitted by it in
good faith and believed by it to be authorized or within the  discretion or rights or powers conferred  upon it by
this Indenture,  unless it shall be proved that the Indenture  Trustee was negligent in ascertaining  the pertinent
facts.

(g)      Prior to the  occurrence  of an Event of Default  hereunder,  and after the curing or waiver of all Events
of Default that may have  occurred,  the Indenture  Trustee shall not be bound to make any investigation  into the
facts or matters stated in any resolution,  certificate,  statement,  instrument, opinion, report, notice, request,
consent,  order,  approval,  bond or other paper or document,  unless requested in writing to do so by the Enhancer
or the Noteholders  representing a majority of the aggregate Note Balance;  provided,  however, that if the payment
within a reasonable  time to the Indenture  Trustee of the costs,  expenses or liabilities  likely to be incurred by
it in the making of such  investigation is, in the opinion of the Indenture  Trustee,  not assured to the Indenture
Trustee  by the  security  afforded  to it by the  terms of this  Indenture,  the  Indenture Trustee  may require
indemnity  satisfactory to the Indenture  Trustee against such cost,  expense or liability as a condition to taking
any such action.

(h)      The  Indenture  Trustee  shall be under no obligation to exercise any of the trusts or powers vested in it
by this  Indenture  or to  institute,  conduct or defend any  litigation  hereunder  or in relation  hereto at the
request,  order or  direction  of any of the  Enhancer  or the  Noteholders,  pursuant  to the provisions  of this
Indenture,  unless the Enhancer or the Noteholders shall have offered to the Indenture Trustee reasonable  security
or indemnity against  the costs,  expenses  and  liabilities  which may be incurred  therein or thereby;  nothing
contained herein shall, however,  relieve the Indenture Trustee of the obligation,  upon the occurrence  of an Event
of Default  (which has not been cured or waived),  to exercise  such of the rights and powers vested in it by this
Indenture,  and to use the same degree of care and skill in their exercise as a prudent  investor would exercise or
use under the circumstances in the conduct of such investor's own affairs.

Section 6.03      Individual  Rights  of Indenture  Trustee.  The Indenture  Trustee in its individual or any other
capacity may become the owner or pledgee of Notes and may  otherwise  deal with the Issuer or its Affiliates  with
the same rights it would have if it were not  Indenture  Trustee.  Any Note  Registrar,  co-registrar  or co-paying
agent may do the same with like rights.  However, the Indenture Trustee must comply with Sections 6.11 and 6.12.

Section 6.04      Indenture  Trustee's  Disclaimer.  The  Indenture  Trustee shall not be  (i) responsible  for and
makes no  representation  as to the validity or adequacy of this Indenture or the Notes,  (ii) accountable for the
Issuer's  use of the  proceeds  from  the  Notes or  (iii) responsible  for any  statement  of the  Issuer in this
Indenture  or in any  document  issued  in  connection  with the sale of the Notes or in the Notes,  other than the
Indenture Trustee's certificate of authentication thereon.

Section 6.05      Notice of Event of Default.  If an Event of Default  shall occur and be continuing,  and if such
Event of Default is known to a Responsible  Officer of the  Indenture  Trustee,  then the Indenture  Trustee shall
give prompt notice  thereof  to the Enhancer.  The Indenture  Trustee shall mail to each Noteholder  notice of such
Event of  Default  within 90 days after it occurs.  Except  in the case of an Event of Default

with  respect  to  the
payment of principal of or interest on any Note,  the Indenture  Trustee may withhold such notice if and so long as
a committee of its Responsible  Officers in good faith  determines that withholding such notice is in the interests
of the Noteholders.

Section 6.06        Reports  by Indenture  Trustee to Noteholders.  The  Indenture  Trustee shall  deliver to each
Noteholder  such information as may be required to enable such  Noteholder  to prepare its federal and state income
tax returns.  In addition,  upon Issuer  Request,  the Indenture  Trustee shall promptly  furnish such  information
reasonably  requested by the Issuer that is reasonably  available to the Indenture  Trustee to enable the Issuer to
perform its federal and state income tax reporting obligations.

Section 6.07        Compensation  and Indemnity.  The Indenture  Trustee shall be compensated  and indemnified by the
Servicer in accordance  with Section 6.06 of the  Servicing  Agreement.  All amounts  owing the Indenture  Trustee
hereunder  in excess of such  amount,  as well as any  amount  owed to the  Indenture  Trustee in accordance  with
Section 6.06 of the Servicing  Agreement,  to the extent the Servicer has failed to pay such amount,  shall be paid
solely as provided in Section 3.05 hereof  (subject to the priorities set forth therein).  The Indenture  Trustee's
compensation  shall not be limited by any law on  compensation  of a trustee of an express trust. The Issuer shall
reimburse the Indenture Trustee for all reasonable  out-of-pocket  expenses incurred or made by it, including costs
of  collection,  in addition  to the  compensation  for its  services.  Such expenses  shall include  the reasonable
compensation,  expenses,  disbursements and advances of the Indenture  Trustee's agents,  counsel,  accountants and
experts.  The  Issuer  shall  indemnify  the  Indenture  Trustee against  any and all loss,  liability  or expense
(including  attorneys'  fees)  incurred  by it in  connection  with  the  administration  of this  trust  and the
performance  of its duties  hereunder.  The  Indenture  Trustee  shall notify the Issuer promptly of any claim for
which it may seek  indemnity.  Failure by the  Indenture  Trustee to so notify the  Issuer  shall not  relieve  the
Issuer of its obligations  hereunder.  The Issuer shall defend any such claim,  and the Indenture Trustee may have
separate  counsel and the Issuer shall pay the fees and expenses of such  counsel.  The Issuer is not  obligated to
reimburse  any expense or  indemnify  against any loss,  liability  or expense  incurred by the  Indenture  Trustee
through the Indenture Trustee's own willful misconduct, negligence or bad faith.

The  Issuer's  payment  obligations to the Indenture  Trustee pursuant to this  Section 6.07  shall survive
the discharge of this Indenture or the  termination or  resignation  of the Indenture  Trustee. When the Indenture
Trustee incurs expenses  after the  occurrence  of an Event of  Default  specified  in clause  (c) or (d) of the
definition  thereof  with  respect  to  the  Issuer,  such  expenses  are  intended  to  constitute  expenses  of
administration  under  Title 11 of the United  States  Code or any other  applicable  federal or state  bankruptcy,
insolvency or similar law.

Section 6.08        Replacement  of Indenture  Trustee.  No  resignation  or removal of the  Indenture  Trustee and no
appointment  of a successor  Indenture  Trustee shall become  effective  until the acceptance of  appointment  by the
successor  Indenture  Trustee  pursuant to this Section 6.08.  The  Indenture  Trustee may resign at any time by so
notifying the Issuer and the  Enhancer.  The  Enhancer  or the  Noteholders  of a majority of the  aggregate  Note
Balance of the Notes,  with the consent of the  Enhancer,  may remove  the Indenture  Trustee by so  notifying  the
Indenture  Trustee and the Enhancer (if given by such Noteholders) and may appoint a successor  Indenture  Trustee.
Unless a Servicer  Default has occurred and is  continuing,  the  appointment  of any successor  Indenture  Trustee
shall be subject to the  prior  written approval of the Servicer.  The Issuer shall remove the  Indenture Trustee if:

(a)        the Indenture Trustee fails to comply with Section 6.11;

(b)        the Indenture Trustee is adjudged a bankrupt or insolvent;

(c)        a receiver or other public officer takes charge of the Indenture Trustee or its property; or

(d)        the Indenture Trustee otherwise becomes incapable of fulfilling its duties under the Basic Documents.

If the  Indenture  Trustee  resigns or is removed  or if a vacancy  exists in the office of  the  Indenture Trustee for any reason (the  Indenture  Trustee in such event being  referred to herein as the retiring  Indenture Trustee),  the Issuer shall promptly appoint a successor Indenture Trustee with the consent of the Enhancer,  which consent  shall not be  unreasonably  withheld.  In  addition,  the  Indenture  Trustee  shall resign to avoid being directly or indirectly controlled by the Issuer.

A successor  Indenture  Trustee shall  deliver a written  acceptance  of its appointment  to the retiring Indenture  Trustee and to the Issuer. Thereupon,  the  resignation  or removal of the retiring Indenture  Trustee shall become effective,  and the successor  Indenture  Trustee shall have all the rights,  powers and duties of the Indenture  Trustee under this Indenture.  The successor  Indenture Trustee shall mail a notice of its succession to the Noteholders.  The retiring  Indenture  Trustee  shall  promptly  transfer all property held by it as Indenture Trustee to the successor Indenture Trustee.

If a  successor  Indenture  Trustee  does not take  office  within 60 days  after the retiring  Indenture Trustee resigns or is removed,  then the retiring  Indenture  Trustee,  the Issuer or the Noteholders of a majority of aggregate Note Balance of the Notes may petition any court of competent  jurisdiction  for the appointment of a successor Indenture Trustee.

If the  Indenture  Trustee fails to comply with  Section 6.11,  any  Noteholder  may petition any court of competent  jurisdiction  for the removal of the  Indenture  Trustee and the  appointment  of a successor  Indenture Trustee.

Notwithstanding  the  replacement  of the  Indenture  Trustee  pursuant  to  this Section,  the  Issuer's obligations under Section 6.07 shall continue for the benefit of the retiring Indenture Trustee.

Section 6.09        Successor  Indenture  Trustee by Merger. If the Indenture  Trustee consolidates  with, merges or converts into,  or transfers  all or  substantially  all its  corporate  trust  business  or assets  to,  another corporation or banking  association,  then the resulting,  surviving or transferee  corporation without any further act shall be the successor  Indenture  Trustee;  provided,  that such corporation or banking association  shall be otherwise  qualified  and eligible  under Section 6.11.  The  Indenture  Trustee shall provide the Rating  Agencies with written notice of any such transaction occurring after the Closing Date.

If at the time of any such  succession  by merger,  conversion  or  consolidation,  any of the Notes shall have  been  authenticated  but not  delivered,  then any such  successor  to the  Indenture Trustee  may adopt the certificate of  authentication  of any predecessor  trustee,  and deliver such Notes so authenticated.  If at such time any of the Notes shall not have been  authenticated,  any successor to the Indenture Trustee may authenticate such  Notes  either in the name of any  predecessor  hereunder  or in the name of the  successor to the  Indenture Trustee;  and in all such cases,  such  certificates  shall have the full force that it is anywhere in the Notes or in this Indenture provided that the certificate of the Indenture Trustee shall have.

Section 6.10        Appointment of Co-Indenture Trustee or Separate Indenture Trustee.

(a)        Notwithstanding  any other  provisions  of this  Indenture,  at any  time,  for the purpose of meeting any legal  requirement  of any  jurisdiction  in which any part of the  Trust  Estate may at such time be  located,  the

Indenture Trustee shall have the power and authority to execute and deliver all instruments to appoint one or more Persons
to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the
Issuer, and to vest in such Person or Persons, in such capacity and for the benefit of the Noteholders and the
Enhancer, such title to the Trust Estate, or any part thereof, and, subject to the other provisions of this
Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or
desirable. No co trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a
successor trustee under Section 6.11, and no notice to Noteholders of the appointment of any co trustee or
separate trustee shall be required under Section 6.08 hereof.

(b)    Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act
subject to the following provisions and conditions:

(i)    all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be
conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee
or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to
act separately without the Indenture Trustee joining in such act), except to the extent that under any
law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee
shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers,
duties and obligations (including the holding of title to the Trust Estate or any portion thereof in any
such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but
solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee
hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or
co-trustee.

(c)    Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given
to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every
instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this
Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested
with the estates or property specified in its instrument of appointment, either jointly with the Indenture
Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically
including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording
protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d)    Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or
attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under
or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die,
become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts
shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment
of a new or successor trustee.

Section 6.11    Eligibility; Disqualification. The Indenture Trustee shall at all times satisfy the
requirements of TIAss.310(a). The Indenture Trustee shall have a combined capital and surplus of at least
$50,000,000 as set forth in its most recent published annual report of condition and it or its parent shall have

a long-term debt rating of "A" or better by each of them. The Indenture Trustee shall comply with TIAss.310(b);
provided, however, that there shall be excluded from the operation of TIAss.310(b)(1) any indenture or indentures
under which other securities of the Issuer are outstanding if the requirements for such exclusion set forth in
TIAss.310(b)(1) are met.

Section 6.12    Preferential Collection of Claims Against Issuer. The Indenture Trustee shall comply with TIA
ss.311(a), excluding any creditor relationship listed in TIAss.311(b). An Indenture Trustee that has resigned or
been removed shall be subject to TIAss.311(a) to the extent indicated.

Section 6.13    Representations and Warranties. The Indenture Trustee hereby represents and warrants that:

(a)    The Indenture Trustee is duly organized, validly existing and in good standing as a national banking
association with power and authority to own its properties and to conduct its business as such properties are
currently owned and such business is currently conducted.

(b)    The Indenture Trustee has the power and authority to execute and deliver this Indenture and to carry out
its terms; and the execution, delivery and performance of this Indenture have been duly authorized by the
Indenture Trustee by all necessary corporate action.

(c)    The consummation of the transactions contemplated by this Indenture and the fulfillment of the terms
hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or
without notice or lapse of time) a default under, the articles of organization or bylaws of the Indenture Trustee
or any agreement or other instrument to which the Indenture Trustee is a party or by which it is bound.

(d)    To the Indenture Trustee's best knowledge, there are no Proceedings or investigations pending or
threatened before any court, regulatory body, administrative agency or other governmental instrumentality having
jurisdiction over the Indenture Trustee or its properties (A) asserting the invalidity of this Indenture, (B)
seeking to prevent the consummation of any of the transactions contemplated by this Indenture or (C) seeking any
determination or ruling that might materially and adversely affect the performance by the Indenture Trustee of
its obligations under, or the validity or enforceability of, this Indenture.

(e)    The Indenture Trustee does not have notice of any adverse claim (as such terms are used in Section 8-302
of the UCC in effect in the State of Delaware) with respect to the Mortgage Loans.

Section 6.14    Directions to Indenture Trustee. The Indenture Trustee is hereby directed:

(a)    to accept the pledge of the Mortgage Loans and hold the assets of the Trust in trust for the Noteholders
and the Enhancer;

(b)    to authenticate and deliver the Notes substantially in the form prescribed by Exhibit A in accordance
with the terms of this Indenture;

(c)    to execute the Yield Maintenance Agreement and take all actions thereunder; and

(d)    to take all other actions as shall be required to be taken by the terms of this Indenture.

Section 6.15    Indenture Trustee May Own Securities. The Indenture Trustee, in its individual or any other
capacity, may become the owner or pledgee of Securities with the same rights it would have if it were not
Indenture Trustee.

ARTICLE VII

Noteholders' Lists and Reports

Section 7.01        Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer shall
furnish or cause to be furnished to the Indenture Trustee (a) not more than five days after each Record Date, a
list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the Noteholders
as of such Record Date, and (b) at such other times as the Indenture Trustee and the Enhancer may request in
writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of
a date not more than 10 days prior to the time such list is furnished; provided, however, that for so long as the
Indenture Trustee is the Note Registrar, no such list need be furnished.

Section 7.02        Preservation of Information; Communications to Noteholders.

(a)        The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and
addresses of the Noteholders contained in the most recent list furnished to the Indenture Trustee as provided in
Section 7.01 and the names and addresses of the Noteholders received by the Indenture Trustee in its capacity as
Note Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon
receipt of a new list so furnished.

(b)        Noteholders may communicate pursuant to TIA§. 312(b) with other Noteholders and the Enhancer with
respect to their rights under this Indenture or under the Notes.

(c)        The Issuer, the Indenture Trustee and the Note Registrar shall have the protection of TIA§. 312(c).

Section 7.03        Reports by Issuer.

(a)        The Issuer shall:

(i)        file with the Indenture Trustee, within 15 days after the Issuer is required to file the same with the
Commission, copies of the annual reports and the information, documents and other reports (or copies of
such portions of any of the foregoing as the Commission may from time to time by rules and regulations
prescribe) that the Issuer may be required to file with the Commission pursuant to Section 13 or 15(d)
of the Exchange Act;

(ii)        file with the Indenture Trustee and the Commission, in accordance with rules and regulations prescribed
from time to time by the Commission, such additional information, documents and reports with respect to
compliance by the Issuer with the conditions and covenants of this Indenture as may be required from
time to time by such rules and regulations; and

(iii)        supply to the Indenture Trustee (and the Indenture Trustee shall transmit by mail to all Noteholders
described in TIA§. 313(c)) such summaries of any information, documents and reports required to be filed
by the Issuer pursuant to clauses (i) and (ii) of this Section 7.03(a) and by rules and regulations
prescribed from time to time by the Commission.

(b)        Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on December 31 of each
year.

Section 7.04        Reports by Indenture Trustee. If required by TIA§.313(a), within 60 days after each January
1, beginning with January 1, 2007, the Indenture Trustee shall make available to each Noteholder as required by
TIA§.313(c) and to the Enhancer a brief report dated as of such date that complies with TIA§.313(a). The
Indenture Trustee also shall comply with TIA§. 313(b).

A copy of each  report at the time  of its distribution  to  Noteholders  shall be filed by the  Indenture
Trustee with the  Commission, if required,  and each stock  exchange,  if any, on which the Notes are listed.  The
Issuer shall notify the Indenture Trustee if and when the Notes are listed on any stock exchange.

Section 7.05      Exchange Act Reporting.  In connection  with the  preparation  and filing of periodic  reports by
the Servicer pursuant to Article IV of the Servicing  Agreement,  the Indenture Trustee shall timely provide to the
Servicer  (I) a list of  Holders  as shown on the  Note  Register  or  Certificate  Register  as of the end of each
calendar year, (II) copies of all pleadings,  other legal process and any other  documents relating to any claims,
charges or complaints  involving the Indenture  Trustee,  as indenture trustee  hereunder,  or the Trust Estate that
are received by the Indenture  Trustee,  (III) notice of all matters that, to the actual knowledge of a Responsible
Officer of the  Indenture  Trustee,  have been  submitted  to a vote of the Holders,  other than those  matters that
have been  submitted  to a vote of the Holders at the request of the Depositor or the  Servicer, and (IV) notice of
any failure of the  Indenture  Trustee to make any payment to the Holders as required  pursuant to this  Indenture.
The Indenture  Trustee shall not have any liability with respect to the Servicer's  failure to properly  prepare or
file such periodic  reports and the Servicer  shall not have any liability  with respect to such failure  resulting
from or  relating  to the  Servicer's  inability  or failure  to obtain  any  information  not resulting  from the
Servicer's own negligence or willful misconduct.

ARTICLE VIII

Accounts, Disbursements and Releases

Section 8.01      Collection of Money.  Except as otherwise  expressly  provided herein,  the Indenture Trustee may
demand payment or delivery of, and shall receive and collect,  directly and without  intervention or assistance of
any fiscal agent or other  intermediary,  all money and other  property  payable to or receivable by the Indenture
Trustee  pursuant to this  Indenture.  The Indenture  Trustee shall apply all such money received by it as provided
in this Indenture.  Except as otherwise  expressly  provided in this Indenture,  if any default occurs in the making
of any payment or  performance  under any agreement or instrument  that is part of the Trust Estate,  the Indenture
Trustee  may take such  action as may be  appropriate  to  enforce  such  payment  or performance,  including  the
institution and  prosecution of appropriate  Proceedings.  Any such action shall be without prejudice to any right
to claim a Default or Event of Default  under this  Indenture and any right to proceed thereafter  as provided in
Article V.

Section 8.02      Trust Accounts.

(a)      On or prior to the Closing Date,  the Issuer shall cause the Indenture  Trustee to establish and maintain,
in the name of the Indenture Trustee,  for the benefit of the Noteholders,  the Certificate Paying Agent, on behalf
of the Certificateholders,  and the  Enhancer,  the Note  Payment  Account as  provided  in Section 3.01  of this
Indenture.

(b)      All monies  deposited from time to time in the Note Payment  Account  pursuant to the Servicing  Agreement
and all deposits therein  pursuant to this Indenture are for the benefit of the  Noteholders, the Enhancer and the
Certificate  Paying  Agent,  on behalf  of the  Certificateholders,  and all  investments  made with such  monies,
including  all income or other  gain from such  investments,  are for the  benefit of the

Servicer   as   provided   in
Section 5.01 of the Servicing Agreement.

On each Payment Date,  the Indenture  Trustee shall  distribute all amounts on deposit
in the Note Payment
Account to the  Noteholders  in respect of the Notes and,  in its  capacity as  Certificate
Paying Agent,  to the
Certificateholders  from the  Distribution  Account in the order of priority set forth in
Section 3.05  (except as
otherwise provided in Section 5.04(b)) and in accordance with the Servicing Certificate.

The  Indenture  Trustee  shall  invest  any funds in the Note  Payment  Account in
Permitted  Investments
selected in writing by the Servicer  maturing no later than the Business Day preceding the next
succeeding  Payment
Date (except that any investment in the  institution  with which the Note Payment  Account is
maintained may mature
on such  Payment  Date) and shall not be sold or disposed of prior to the  maturity.  In
addition,  such  Permitted
Investments  shall not be  purchased  at a price in excess of par. The  Indenture  Trustee  shall
have no liability
whatsoever for investment  losses on Permitted  Investments,  if such  investments  are made in
accordance with the
provisions of this Indenture and the Indenture Trustee is not the obligor under the Permitted
Investment.

Section 8.03     Officer's  Certificate.  The  Indenture  Trustee  shall  receive at least seven
days' notice when
requested by the Issuer to take any action  pursuant to Section  8.05(a),  accompanied by copies
of any instruments
to be  executed,  and the  Indenture  Trustee  shall also  require,  as a condition  to such
action,  an Officer's
Certificate,  in form and substance  satisfactory  to the Indenture  Trustee,  stating the legal
effect of any such
action,  outlining the steps  required to complete the same, and  concluding  that all conditions
precedent to the
taking of such action have been complied with.

Section 8.04     Termination  Upon  Distribution  to  Noteholders.  This Indenture and the
respective  obligations
and  responsibilities  of the Issuer and the Indenture Trustee created hereby shall terminate
upon the distribution
to the Noteholders,  the Certificate Paying Agent on behalf of the  Certificateholders and the
Indenture Trustee of
all amounts  required to be distributed  pursuant to Article III and the distribution to the
Credit Enhancer of all
amounts  owing to it;  provided,  however,  that in no event shall the trust  created  hereby
continue  beyond the
expiration  of 21 years  from the  death  of the  survivor  of the  descendants  of  Joseph  P.
Kennedy,  the late
ambassador of the United States to the Court of St. James's, living on the date hereof.

Section 8.05     Release of Trust Estate.

(a)     Subject to the payment of its fees,  expenses and  indemnification,  the  Indenture
Trustee may, and when
required by the  provisions of this Indenture or the Servicing  Agreement,  shall,  execute
instruments to release
property from the lien of this Indenture,  or convey the Indenture  Trustee's interest in the
same, in a manner and
under  circumstances  that are not  inconsistent  with the provisions of this Indenture.  No
Person relying upon an
instrument  executed by the  Indenture  Trustee as provided in Article VIII  hereunder  shall be
bound to ascertain
the Indenture  Trustee's  authority,  inquire into the  satisfaction  of any  conditions
precedent,  or see to the
application of any monies.

(b)     The Indenture  Trustee shall,  at such time as (i) there are no Notes  Outstanding,
(ii) all sums due the
Indenture  Trustee  pursuant to this  Indenture  have been paid and (iii) all  sums due the
Enhancer have been paid
and the Policy has been returned to the Credit  Enhancer,  release any  remaining  portion of the
Trust Estate that
secured the Notes from the lien of this Indenture.

(c)     The  Indenture  Trustee  shall  release  property  from  the  lien  of  this  Indenture
pursuant to this
Section 8.05 only upon receipt of an Issuer Request  accompanied by an Officers'  Certificate and
a letter from the
Enhancer stating that the Enhancer has no objection to such request from the Issuer.

(d)        The Indenture  Trustee shall,  at the request of the Issuer or the Depositor,  surrender the Policy to the
Enhancer for cancellation, upon final payment of and interest on the Notes.

Section 8.06        Surrender  of Notes Upon  Final  Payment.  By  acceptance  of any Note,  the Noteholder  thereof
agrees to surrender such Note to the Indenture  Trustee promptly,  prior to such Noteholder's receipt of the final
payment thereon.

---

ARTICLE IX

Supplemental Indentures

Section 9.01        Supplemental Indentures  Without Consent  of Noteholders.

(a)        Without the consent of the  Noteholders  of any Notes,  but with prior  notice to the Rating  Agencies and
the prior  written  consent of the Enhancer  (which consent shall not be  unreasonably  withheld and so long as no
Enhancer Default exists),  the Issuer and the Indenture Trustee,  when authorized by an Issuer Request, at any time
and from time to time,  may enter into one or more  indentures  supplemental  hereto  (which shall  conform to the
provisions of the Trust Indenture  Act as in force at the date of the execution  thereof),  in form  satisfactory to
the Indenture  Trustee, for any of the following purposes:

(i)        to correct or amplify the  description  of any property at any time subject to the lien of this  Indenture,
or better to assure,  convey and confirm unto the  Indenture  Trustee any property subject or required to
be  subjected  to the lien of this  Indenture,  or to  subject  to the lien of this Indenture  additional
property;

(ii)        to evidence the succession,  in compliance  with the applicable  provisions  hereof,  of another Person to
the Issuer,  and the  assumption  by any such  successor of the  covenants of the Issuer herein and in the
Notes contained;

(iii)        to add to the  covenants  of the  Issuer,  for the  benefit  of the Noteholders  or the Enhancer,  or to
surrender any right or power herein conferred upon the Issuer;

(iv)        to convey, transfer, assign, mortgage or pledge any property to or with the Indenture Trustee;

(v)        to cure any  ambiguity,  to correct any error or to correct or supplement  any provision herein or in any
supplemental  indenture that may be inconsistent  with any other provision  herein or in any  supplemental
indenture;

(vi)        to make any other  provisions with respect to matters or questions  arising  under this Indenture or in any
supplemental  indenture;  provided,  that such  action  shall not  materially  and adversely  affect  the
interests of the Noteholders or the Enhancer (as evidenced by an Opinion of Counsel);

(vii)        to evidence  and provide for the  acceptance  of the  appointment  hereunder  by a successor  trustee with
respect  to the  Notes  and to add to or  change  any of the  provisions  of this Indenture  as  shall be
necessary to facilitate the  administration  of the trusts hereunder by more than one trustee,  pursuant to
the requirements of Article VI; or

(viii)        to modify,  eliminate or add to the  provisions of this  Indenture to such extent as shall be necessary to
effect the  qualification  of this  Indenture  under TIA or under any similar  federal

statute  hereafter
enacted and to add to this Indenture such other provisions as may be expressly required by TIA;

provided,  however,  that no such  supplemental  indenture  shall be entered into unless the Indenture Trustee shall
have received an Opinion of Counsel to the effect that the execution of such  supplemental indenture will not give
rise to any material adverse tax consequence to the Noteholders, including any Adverse REMIC Event.

The Indenture  Trustee is hereby  authorized to join in the execution of any such supplemental  indenture
and to make any further  appropriate  agreements and stipulations that may be therein contained.

(b)      The Issuer and the Indenture  Trustee,  when authorized by an Issuer Request,  may, without the consent of
any Noteholder but with  prior  notice  to the Rating  Agencies  and the  Enhancer,  enter  into an  indenture  or
indentures  supplemental  hereto  for  the  purpose  of adding  any  provisions  to, or  changing in any  manner or
eliminating  any of the provisions  of, this Indenture or of modifying in any manner the rights of the  Noteholders
under this Indenture; provided,  however,  that such  action  shall not, as  evidenced  by an Opinion of Counsel,
(i) adversely  affect in any material  respect the interests of any  Noteholder  or the Enhancer or (ii) cause  the
Issuer to be subject to an entity level tax.

Section 9.02      Supplemental  Indentures  With  Consent  of  Noteholders. The Issuer and the Indenture  Trustee,
when authorized by an Issuer  Request,  may, with prior notice to the Rating  Agencies and with the consent of the
Enhancer  and the  Noteholders  of not less than a  majority  of the Note  Balances  affected thereby,  by Act (as
defined in Section  10.03 hereof) of such  Noteholders  delivered to the Issuer and the Indenture  Trustee, enter
into an indenture or indentures  supplemental  hereto for the purpose of adding any  provisions to, or  changing in
any  manner or  eliminating  any of the  provisions  of, this  Indenture or of modifying in any manner the rights of
the  Noteholders under this Indenture; provided,  however,  that no such supplemental  indenture shall, without the
consent of the Noteholder of each Note affected thereby:

(a)      change the date of payment of any  installment  of  principal  of or interest  on any Note,  or reduce the
principal  amount  thereof or the Note Rate  thereon,  change the  provisions  of this  Indenture relating  to the
application  of  collections  on, or the  proceeds  of the sale of, the Trust  Estate to payment of  principal of or
interest  on the Notes,  or change any place of payment  where,  or the coin or  currency in which,  any Note or the
interest  thereon is payable,  or impair the right to institute suit for the  enforcement of the provisions of this
Indenture  requiring the application of funds available therefor,  as provided in Article V,  to the payment of any
such amount due on the Notes on or after the respective due dates thereof;

(b)      reduce  the  percentage of the Note Balances,  the consent of the  Noteholders of which is required for any
such  supplemental  indenture,  or the consent of the Noteholders of which is required for any waiver of compliance
with certain  provisions of this Indenture or certain  defaults  hereunder and their consequences  provided for in
this Indenture;

(c)      modify or alter the  provisions of the proviso to the  definition of the term "Outstanding"  or modify or
alter the exception in the definition of the term "Noteholder";

(d)      reduce the percentage  of the  aggregate  Note  Balance  of the Notes  required  to direct the  Indenture
Trustee to direct the Issuer to sell or liquidate the Trust Estate pursuant to Section 5.04;

(e)      modify any provision  of this  Section 9.02  except to increase  any  percentage specified  herein or to
provide that certain  additional  provisions of this Indenture or the other Basic  Documents cannot be modified or
waived without the consent of the Noteholder of each Note affected thereby;

(f)       modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount
of any payment of interest or principal due on any Note on any Payment Date   (including   the calculation of any of
the individual components of such calculation); or

(g)       permit the creation of any lien ranking prior to or on a parity with the lien of this Indenture with
respect to any part of the Trust Estate or, except as otherwise permitted or contemplated herein,   terminate the
lien of this Indenture on any property at any time subject hereto or deprive the Noteholder of any Note of the
security provided by the lien of this Indenture; and provided further, that such action shall not, as evidenced
by an Opinion of Counsel, cause the Issuer to be subject to an entity level tax or cause any Adverse REMIC Event.

The Indenture Trustee may in its discretion determine whether or not any Notes would be affected by any
supplemental indenture and any such determination shall be conclusive upon the Noteholders of all Notes, whether
theretofore or thereafter authenticated and delivered hereunder.   The Indenture Trustee shall not be liable for
any such determination made in good faith.

It shall not be necessary for any Act (as defined in Section 10.03 hereof) of Noteholders under this
Section 9.02 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if
such Act shall approve the substance thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture
pursuant to this Section 9.02, the Indenture Trustee shall mail to the Noteholders of the Notes to which such
amendment or supplemental indenture relates a notice setting forth in general terms the substance of such
supplemental indenture. Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall
not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03       Execution of Supplemental Indentures. In executing, or permitting the additional trusts
created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts
created by this Indenture, the Indenture Trustee shall be entitled to receive and, subject to Sections 6.01 and
6.02, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such
supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee may, but shall not be
obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties,
liabilities or immunities under this Indenture or otherwise.

Section 9.04       Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to
the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance
therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights,
obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer, the
Enhancer and the Noteholders shall thereafter be determined, exercised and enforced hereunder subject in all
respects to such modifications and amendments, and all the terms and conditions of any such supplemental
indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all
purposes.

Section 9.05       Conformity with Trust Indenture Act. Every amendment of this Indenture and every supplemental
indenture executed pursuant to this Article IX shall conform to the requirements of TIA as in effect at the time
of such amendment or supplement so long as this Indenture shall then be qualified under TIA.

Section 9.06       Reference in Notes to Supplemental Indentures. Notes authenticated and delivered after the
execution of any supplemental indenture pursuant to this Article IX may, and if required by the Indenture

Trustee, shall, bear a notation in form approved by the Indenture Trustee as to any matter provided for in such
supplemental indenture. If the Issuer or the Indenture Trustee shall so determine, new Notes so modified as to
conform, in the opinion of the Indenture Trustee and the Issuer, to any such supplemental indenture may be
prepared and executed by the Issuer and authenticated and delivered by the Indenture Trustee in exchange for
Outstanding Notes.

---

ARTICLE X

Miscellaneous

Section 10.01    Compliance Certificates and Opinions, etc.

(a)    Upon any application or request by the Issuer to the Indenture Trustee to take any action under any
provision of this Indenture, the Issuer shall furnish to the Indenture Trustee and to the Enhancer (i) an
Officer's Certificate stating that all conditions precedent, if any, provided for in this Indenture relating to
the proposed action have been complied with and (ii) an Opinion of Counsel stating that in the opinion of such
counsel all such conditions precedent, if any, have been complied with, except that, in the case of any such
application or request as to which the furnishing of such documents is specifically required by any provision of
this Indenture, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in
this Indenture shall include:

(i)    a statement that each signatory of such certificate or opinion has read or has caused to be read such
       covenant or condition and the definitions herein relating thereto;

(ii)    a brief statement as to the nature and scope of the examination or investigation upon which the
        statements or opinions contained in such certificate or opinion are based;

(iii)    a statement that, in the opinion of each such signatory, such signatory has made such examination or
         investigation as is necessary to enable such signatory to express an informed opinion as to whether or
         not such covenant or condition has been complied with;

(iv)    a statement as to whether, in the opinion of each such signatory, such condition or covenant has been
        complied with; and

(v)    if the signer of such certificate or opinion is required to be Independent, the statement required by
       the definition of the term "Independent."

(b)    (i)    Prior to the deposit of any Collateral or other property or securities with the
Indenture Trustee that is to be made the basis for the release of any property or securities subject to the lien
of this Indenture, the Issuer shall, in addition to any obligation imposed in Section 10.01(a) or elsewhere in
this Indenture, furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of
each person signing such certificate as to the fair value (within 90 days of such deposit) to the Issuer of the
Collateral or other property or securities to be so deposited.

(ii)    Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying
or stating the opinion of any signer thereof as to the matters described in clause (i) above, the Issuer
        shall also deliver to the Indenture Trustee an Independent Certificate as to the

same matters, if the
          fair value to the Issuer of the securities to be so deposited and of all other such securities made the
          basis of any such withdrawal or release since the commencement of the then-current fiscal year of the
          Issuer, as set forth in the certificates delivered pursuant to clause (i) above and this clause (ii), is
          10% or more of the aggregate Note Balance of the Notes, but such a certificate need not be furnished
          with respect to any securities so deposited, if the fair value thereof to the Issuer as set forth in the
          related Officer's Certificate is less than $25,000 or less than one percent of the aggregate Note
          Balance of the Notes.

(iii)    Whenever any property or securities are to be released from the lien of this Indenture, the Issuer shall
          furnish to the Indenture Trustee an Officer's Certificate certifying or stating the opinion of each
          person signing such certificate as to the fair value (within 90 days of such release) of the property or
          securities proposed to be released and stating that in the opinion of such person the proposed release
          will not impair the security under this Indenture in contravention of the provisions hereof.

(iv)     Whenever the Issuer is required to furnish to the Indenture Trustee an Officer's Certificate certifying
          or stating the opinion of any signer thereof as to the matters described in clause (iii) above, the
          Issuer shall also furnish to the Indenture Trustee an Independent Certificate as to the same matters if
          the fair value of the property or securities and of all other property, other than property as
          contemplated by clause (v) below or securities released from the lien of this Indenture since the
          commencement of the then-current calendar year, as set forth in the certificates required by clause
          (iii) above and this clause (iv), equals 10% or more of the aggregate Note Balance of the Notes, but
          such certificate need not be furnished in the case of any release of property or securities if the fair
          value thereof as set forth in the related Officer's Certificate is less than $25,000 or less than one
          percent of the aggregate Note Balance of the Notes.

(v)      Notwithstanding the foregoing, this Section 10.01(b) shall not apply to (A) collection upon, sales or
          other dispositions of the Mortgage Loans as and to the extent permitted or required by the Basic
          Documents or (B) the making of cash payments out of the Note Payment Account as and to the extent
          permitted or required by the Basic Documents, so long as the Issuer shall deliver to the Indenture
          Trustee every six months, commencing December 31, 2007, an Officer's Certificate of the Issuer stating
          that all the dispositions of Collateral described in clauses (A) or (B) above that occurred during the
          preceding six calendar months (or such longer period, in the case of the first such Officer's
          Certificate) were permitted or required by the Basic Documents and that the proceeds thereof were
          applied in accordance with the Basic Documents.

Section 10.02    Form of Documents Delivered to Indenture Trustee.

          In any case where several matters are required to be certified by, or covered by an opinion of, any
specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only
one such Person, or that they be so certified or covered by only one document, but one such Person may certify or
give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such
Person may certify or give an opinion as to such matters in one or several documents.

          Any certificate or opinion of an Authorized Officer of the Issuer may be based, insofar as it relates to
legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in
the exercise of reasonable care should know, that the certificate or opinion or

representations with respect to
the matters upon which his certificate or opinion is based are erroneous. Any such certificate of an Authorized
Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or
opinion of, or representations by, an officer or officers of any Seller or the Issuer, stating that the
information with respect to such factual matters is in the possession of any Seller or the Issuer, unless such
counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or
representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents,
certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be
consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or report to the Indenture
Trustee, it is provided that the Issuer shall deliver any document as a condition of the granting of such
application, or as evidence of the Issuer's compliance with any term hereof, it is intended that the truth and
accuracy, at the time of the granting of such application or at the effective date of such certificate or report
(as the case may be), of the facts and opinions stated in such document shall in such case be conditions
precedent to the right of the Issuer to have such application granted or to the sufficiency of such certificate
or report. The foregoing shall not, however, be construed to affect the Indenture Trustee's right to rely upon
the truth and accuracy of any statement or opinion contained in any such document as provided in Article VI.

Section 10.03     Acts of Noteholders.

(a)     Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this
Indenture to be given or taken by Noteholders may be embodied in and evidenced by one or more instruments of
substantially similar tenor signed by such Noteholders in person or by agents duly appointed in writing; and
except as herein otherwise expressly provided such action shall become effective when such instrument or
instruments are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the Issuer.
Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes
referred to as the "Act" of the Noteholders signing such instrument or instruments. Proof of execution of any
such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture
and (subject to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the manner
provided in this Section 10.03.

(b)     The fact and date of the execution by any person of any such instrument or writing may be proved in any
manner that the Indenture Trustee deems sufficient.

(c)     The ownership of Notes shall be proved by the Note Register.

(d)     Any request, demand, authorization, direction, notice, consent, waiver or other action by the Noteholder
of any Note shall bind the Noteholder of every Note issued upon the registration thereof or in exchange therefor
or in lieu thereof, in respect of anything done, omitted or suffered to be done by the Indenture Trustee or the
Issuer in reliance thereon, whether or not notation of such action is made upon such Note.

Section 10.04     Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating Agencies. Any request,
demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or
permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice,
consent, waiver or Act of Noteholders is to be made upon, given or furnished to or filed with:

(a)     the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every

purpose  hereunder
if made,  given,  furnished or filed in writing to or with the Indenture Trustee at its Corporate Trust Office with
a copy to The Bank of New York Trust Company,  N.A., 2 North LaSalle Street,  Suite 1020,  Chicago,  Illinois 60602,
Attention:  Structured  Finance  Services.  The Indenture Trustee shall promptly transmit any notice received by it
from the Noteholders to the Issuer,

(b)        the Issuer by the Indenture  Trustee or by any Noteholder shall be sufficient for every purpose  hereunder
if in writing and mailed  first-class,  postage  prepaid  to the Issuer  addressed  to: GMACM Home Equity Loan Trust
2007-HE2,  in care of the Owner Trustee,  or at any other address previously  furnished in writing to the Indenture
Trustee by the Issuer.  The Issuer shall promptly  transmit any notice  received by it from the Indenture Trustee, or
Noteholders to the

(c)        the Enhancer by the Issuer,  the Indenture  Trustee or by any  Noteholders  shall be sufficient  for every
purpose hereunder to in writing and mailed,  first-class  postage pre-paid,  or personally delivered or telecopied
to: Financial  Guaranty  Insurance  Company,  125 Park Avenue,  New York,  New York 10017:  Attention:  Structured
Finance  Surveillance  (GMACM Home Equity Loan Trust  2007-HE2),  telecopier  (212)  312-3220.  The Enhancer  shall
promptly  transmit any notice  received by it from the Issuer,  the  Indenture  Trustee or the Noteholders  to the
Issuer or Indenture Trustee, as the case may be.

        Notices  required to be given to the Rating  Agencies by the Issuer,  the  Indenture Trustee or the Owner
Trustee  shall be in writing,  personally  delivered or mailed by certified  mail,  return  receipt  requested,  to
(i) in the case of Moody's, at the following address:  Moody's Investors Service,  Inc., ABS Monitoring Department,
99 Church  Street,  New York,  New York 10007 and (ii) in the case of Standard & Poor's,  at the following  address:
Standard  &  Poor's,  55 Water Street,  New  York,  New  York  10041-0003,  Attention:  Asset Backed  Surveillance
Department;  or, as to each of the  foregoing  Persons,  at such other  address as shall be designated  by written
notice to the other foregoing Persons.

Section 10.05        Notices  to Noteholders;  Waiver.  Where  this  Indenture  provides  for a Notice,  certificate,
opinion,  report or similar  delivery to be given to any  transaction  party or to a Rating  Agency,  a copy of such
document shall be contemporaneously  sent to the Enhancer.  Where this Indenture provides for notice to Noteholders
of any event, such notice shall be sufficiently  given (unless  otherwise herein expressly provided) if in writing
and mailed,  first-class,  postage prepaid to each Noteholder affected by such event, at such Person's  address as
it  appears on the Note  Register,  not later  than the  latest  date,  and not  earlier  than the  earliest  date,
prescribed for the giving of such notice.  In any case where notice to  Noteholders  is given by mail,  neither the
failure to mail such notice nor any defect in any notice so mailed to any  particular  Noteholder shall affect the
sufficiency  of such notice with respect to other  Noteholders,  and any notice that is mailed in the manner herein
provided  shall  conclusively  be presumed  to have been duly given  regardless  of whether  such notice is in fact
actually received.

        Where this  Indenture  provides  for  notice in any  manner,  such  notice may be waived in writing by any
Person entitled to receive such notice,  either before or after the event,  and such waiver shall be the equivalent
of such  notice.  Waivers of notice by  Noteholders  shall be filed with the  Indenture  Trustee,  but such  filing
shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

        In case,  by reason of the  suspension  of regular mail service as a result of a strike,  work stoppage or
similar  activity,  it shall be impractical to mail notice of any event to Noteholders when such notice is required
to be given  pursuant  to any  provision  of this  Indenture,  then any  manner of giving  such

notice as shall be
satisfactory to the Indenture Trustee shall be deemed to be a sufficient giving of such notice.

Where this Indenture provides for notice to the Rating Agencies, failure to give such notice shall not affect any other rights or obligations created hereunder, and shall not under any circumstance constitute an Event of Default.

Section 10.06    Alternate Payment and Notice Provisions. Notwithstanding any provision of this Indenture or any of the Notes to the contrary, the Issuer may enter into any agreement with any Noteholder providing for a method of payment, or notice by the Indenture Trustee to such Noteholder, that is different from the methods provided for in this Indenture for such payments or notices. The Issuer shall furnish to the Indenture Trustee a copy of each such agreement and the Indenture Trustee shall cause payments to be made and notices to be given in accordance with such agreements.

Section 10.07    Conflict with Trust Indenture Act. If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of TIA, such required provision shall control.

The provisions of TIAss.ss. 310 through 317 that impose duties on any Person (including the provisions automatically deemed included herein unless expressly excluded by this Indenture) are a part of and govern this Indenture, whether or not physically contained herein.

Section 10.08    Effect of Headings. The Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 10.09    Successors and Assigns. All covenants and agreements in this Indenture and the Notes by the Issuer shall bind its successors and assigns, whether so expressed or not. All agreements of the Indenture Trustee in this Indenture shall bind its successors, co-trustees and agents.

Section 10.10    Severability. In case any provision in this Indenture or in the Notes shall be held invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

Section 10.11    Benefits of Indenture. Nothing in this Indenture or in the Notes, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, and the Noteholders, the Enhancer, and any other party secured hereunder, and any other Person with an ownership interest in any part of the Trust Estate, any benefit or any legal or equitable right, remedy or claim under this Indenture. The Enhancer shall be a third party beneficiary of this Indenture.

Section 10.12    Legal Holidays. In any case where the date on which any payment is due shall not be a Business Day, then (notwithstanding any other provision of the Notes or this Indenture) payment need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the date on which nominally due, and no interest shall accrue for the period from and after any such nominal date.

Section 10.13    GOVERNING LAW. THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF, OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.14    Counterparts. This Indenture may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

Section 10.15    Recording of Indenture. If this Indenture is subject to recording in any appropriate public recording offices, such recording is to be effected by the Issuer and at its expense accompanied by an Opinion of Counsel (which counsel shall be reasonably acceptable to the Indenture Trustee) to the effect that such recording is necessary either for the protection of the Noteholders or any other Person secured hereunder or for the enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 10.16    Issuer Obligation. No recourse may be taken, directly or indirectly, with respect to the obligations of the Issuer, the Owner Trustee or the Indenture Trustee on the Notes or under this Indenture or any certificate or other writing delivered in connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or (iii) any partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Indenture Trustee and the Owner Trustee have no such obligations in their respective individual capacities), and except that any such partner, owner or beneficiary shall be fully liable, to the extent provided by applicable law, for any unpaid consideration for stock, unpaid capital contribution or failure to pay any installment or call owing to such entity. For all purposes of this Indenture, in the performance of any duties or obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VI, VII and VIII of the Trust Agreement.

Section 10.17    No Petition. The Indenture Trustee, by entering into this Indenture, and each Noteholder, by its acceptance of a Note, hereby covenant and agree that they will not at any time institute against the Depositor or the Issuer, or join in any institution against the Depositor or the Issuer of, any bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under any United States federal or state bankruptcy or similar law in connection with any obligations relating to the Notes, this Indenture or any of the other Basic Documents.

Section 10.18    Inspection. The Issuer agrees that, on reasonable prior notice, it shall permit any representative of the Indenture Trustee, during the Issuer's normal business hours, to examine all the books of account, records, reports and other papers of the Issuer, to make copies and extracts therefrom, to cause such books to be audited by Independent certified public accountants, and to discuss the Issuer's affairs, finances and accounts with the Issuer's officers, employees, and Independent certified public accountants, all at such reasonable times and as often as may be reasonably requested. The Indenture Trustee shall and shall cause its representatives to hold in confidence all such information except to the extent disclosure may be required by law (and all reasonable applications for confidential treatment are unavailing) and except to the extent that the Indenture Trustee may reasonably determine that such disclosure is consistent with its obligations hereunder.

ARTICLE XI

REMIC Provisions

Section 11.01    REMIC Administration.

(a)    The REMIC Administrator shall make an election to treat the Trust Estate (exclusive of the Pre-Funding
Account, the Capitalized Interest Account and the Yield Maintenance Agreement), as set forth in Section 2.06 of
the Trust Agreement, as two REMICs under the Code and, if necessary, under applicable state law, in accordance
with Section 2.06 of the Trust Agreement. Such election will be made on Form 1066 or other appropriate federal
tax or information return (including Form 8811) or any appropriate state return for the taxable year ending on
the last day of the calendar year in which the Securities are issued. For the purposes of the REMIC elections in
respect of the Trust Estate, Securities and interests to be designated as the "regular interests" and the sole
class of "residual interests" in each REMIC will be set forth in Section 11.03. The REMIC Administrator and the
Indenture Trustee shall not permit the creation of any "interests" (within the meaning of Section 860G of the
Code) in each REMIC elected in respect of the Trust other than the "regular interests" and "residual interests"
so designated.

(b)    The Closing Date is hereby designated as the "startup day" of each of REMIC I and REMIC II as designated
in Section 11.03 below, and the Trust Estate within the meaning of Section 860G(a)(9) of the Code.

(c)    GMAC Mortgage, LLC shall hold a Class R Certificate representing at least a 0.01% Percentage Interest in
each Class of the Class R Certificates and shall be designated as "the tax matters person" with respect to each
REMIC in the manner provided under Treasury regulationsss.1.860F-4(d) and Treasury regulationsss.301.6231(a)(7)-1.
The REMIC Administrator, on behalf of the Tax Matters Partner, shall (i) act on behalf of each REMIC in relation
to any tax matter or controversy involving the Trust Estate and (ii) represent the Trust Estate in any
administrative or judicial proceeding relating to an examination or audit by any governmental taxing authority
with respect thereto. The legal expenses, including without limitation attorneys' or accountants' fees, and
costs of any such proceeding and any liability resulting therefrom shall be expenses of the Trust Estate and the
REMIC Administrator shall be entitled to reimbursement therefor out of amounts attributable to the Mortgage Loans
on deposit in the Custodial Account unless such legal expenses and costs are incurred by reason of the
REMIC Administrator's willful misfeasance, bad faith or gross negligence.

(d)    The REMIC Administrator shall prepare or cause to be prepared all of the Tax Returns that it determines
are required with respect to each REMIC created hereunder and, if approval therefore is received from the
applicable District Director of the Internal Revenue Service, shall sign and file such returns in a timely manner
and, otherwise, shall, shall deliver such Tax Returns in a timely manner to the Owner Trustee, if the Owner
Trustee is required to sign such returns in accordance with Section 5.03 of the Trust Agreement, and shall sign
(if the Owner Trustee is not so required) and file such Tax Returns in a timely manner. The expenses of
preparing such returns shall be borne by the REMIC Administrator without any right of reimbursement therefor.
The REMIC Administrator agrees to indemnify and hold harmless the Owner Trustee with respect to any tax or
liability arising from the Owner Trustee's signing of Tax Returns that contain errors or omissions. The
Indenture Trustee and Servicer shall promptly provide the REMIC Administrator with such information as the
REMIC Administrator may from time to time request for the purpose of enabling the REMIC Administrator to prepare
Tax Returns.

(e)    The REMIC Administrator shall provide (i) to any Transferor of a Class R Certificate such information as
is necessary for the application of any tax relating to the transfer of a Class R Certificate to any Person who
is not a Permitted Transferee, (ii) to the Indenture Trustee, and the Indenture Trustee

shall forward to the
Noteholders and the Certificateholders, such information or reports as are required by the Code or the
REMIC Provisions including reports relating to interest, original issue discount and market discount or premium
(using the Prepayment Assumption) and (iii) to the Internal Revenue Service the name, title, address and
telephone number of the person who will serve as the representative of each REMIC.
(f)    The Servicer and the REMIC Administrator shall take such actions and shall cause each REMIC created
hereunder to take such actions as are reasonably within the Servicer's or the REMIC Administrator's control and
the scope of its duties more specifically set forth herein as shall be necessary or desirable to maintain the
status of each REMIC as a REMIC under the REMIC Provisions (and the Indenture Trustee shall assist the Servicer
and the REMIC Administrator, to the extent reasonably requested by the Servicer and the REMIC Administrator to do
so). The Servicer and the REMIC Administrator shall not knowingly or intentionally take any action, cause the
Trust Estate to take any action or fail to take (or fail to cause to be taken) any action reasonably within their
respective control that, under the REMIC Provisions, if taken or not taken, as the case may be, could (i)
endanger the status of any portion of any of the REMICs as a REMIC or (ii) result in the imposition of a tax upon
any of the REMICs (including but not limited to the tax on prohibited transactions as defined in Section
860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code) (either
such event, in the absence of an Opinion of Counsel or the indemnification referred to in this sentence, an
"Adverse REMIC Event") unless the Servicer or the REMIC Administrator, as applicable, has received an Opinion of
Counsel (at the expense of the party seeking to take such action or, if such party fails to pay such expense, and
the Servicer or the REMIC Administrator, as applicable, determines that taking such action is in the best
interest of the Trust Estate and the Noteholders and the Certificateholders, at the expense of the Trust Estate,
but in no event at the expense of the Servicer, the REMIC Administrator, the Owner Trustee or the Indenture
Trustee) to the effect that the contemplated action will not, with respect to each REMIC created hereunder,
endanger such status or, unless the Servicer, the REMIC Administrator or both, as applicable, determine in its or
their sole discretion to indemnify the Trust Estate against the imposition of such a tax, result in the
imposition of such a tax. Wherever in this Agreement a contemplated action may not be taken because the timing of
such action might result in the imposition of a tax on the Trust Estate, or may only be taken pursuant to an
Opinion of Counsel that such action would not impose a tax on the Trust Estate, such action may nonetheless be
taken provided that the indemnity given in the preceding sentence with respect to any taxes that might be imposed
on the Trust Estate has been given and that all other preconditions to the taking of such action have been
satisfied. The Indenture Trustee shall not take or fail to take any action (whether or not authorized hereunder)
as to which the Servicer or the REMIC Administrator, as applicable, has advised it in writing that it has
received an Opinion of Counsel to the effect that an Adverse REMIC Event could occur with respect to such
action. In addition, prior to taking any action with respect to any of the REMICs created hereunder or any
related assets thereof, or causing any of the REMICs to take any action, which is not expressly permitted under
the terms of this Agreement, the Indenture Trustee will consult with the Servicer or the REMIC Administrator, as
applicable, or its designee, in writing, with respect to whether such action could cause an Adverse REMIC Event
to occur with respect to any of the REMICs, and the Indenture Trustee shall not take any such action or cause
either REMIC to take any such action as to which the Servicer or the REMIC Administrator, as applicable, has
advised it in writing that an Adverse REMIC Event could occur. The Servicer or the REMIC Administrator, as
applicable, may consult with counsel to make such written advice, and the cost of same shall be borne by the
party seeking to take the action not expressly permitted by this Agreement, but in no event at

the expense of the
Servicer or the REMIC Administrator. At all times as may be required by the Code, the
Servicer will to the
extent within its control and the scope of its duties more specifically set forth herein,
maintain substantially
all of the assets of each REMIC created hereunder as "qualified mortgages" as defined in
Section 860G(a)(3) of
the Code and "permitted investments" as defined in Section 860G(a)(5) of the Code.

(g)    In the event that any tax is imposed on "prohibited transactions" of any of the REMICs
created hereunder
as defined in Section 860F(a)(2) of the Code, on "net income from foreclosure property" of
any of the REMICs as
defined in Section 860G(c) of the Code, on any contributions to any of the REMICs after the
Startup Day therefor
pursuant to Section 860G(d) of the Code, or any other tax is imposed by the Code or any
applicable provisions of
state or local tax laws, such tax shall be charged (i) to the Servicer, if such tax arises out
of or results from
a breach by the Servicer of any of its obligations under this Agreement or the Servicer
has in its sole
discretion determined to indemnify the Trust Estate against such tax, (ii) to the Indenture
Trustee, if such tax
arises out of or results from a breach by the Trustee of any of its obligations under this
Article XI, or (iii)
otherwise against amounts on deposit in the Custodial Account and on the Payment
Date(s) following such
reimbursement the aggregate of such taxes shall be allocated in reduction of the accrued
interest due on each
Class entitled thereto on a pro rata basis.

(h)    The Indenture Trustee and the Servicer shall, for federal income tax purposes,
maintain books and
records with respect to each REMIC created hereunder on a calendar year and on an accrual
basis or as otherwise
may be required by the REMIC Provisions.

(i)    Following the Startup Day, neither the Servicer nor the Indenture Trustee shall accept
any contributions
of assets to any of the REMICs created hereunder unless (subject to Section 11.01(f)) the
Servicer and the
Indenture Trustee shall have received an Opinion of Counsel (at the expense of the party
seeking to make such
contribution) to the effect that the inclusion of such assets in such REMIC will not cause
any of the REMICs to
fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding or
subject any of the
REMICs to any tax under the REMIC Provisions or other applicable provisions of federal,
state and local law or
ordinances.

(j)    Neither the Servicer nor the Trustee shall (subject to Section 11.01(f)) enter into
any arrangement by
which any of the REMICs created hereunder will receive a fee or other compensation for services
nor permit any of
the REMICs to receive any income from assets other than "qualified mortgages" as defined in
Section 860G(a)(3) of
the Code or "permitted investments" as defined in Section 860G(a)(5) of the Code.

(k)    Solely for the purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations,
the "latest possible
maturity date" by which the Certificate Principal Balance of each Class of Notes and
Certificates representing a
regular interest in the applicable REMIC is the Final Payment Date.

(l)    Within 30 days after the Closing Date, the REMIC Administrator shall prepare and file
with the Internal
Revenue Service Form 8811, "Information Return for Real Estate Mortgage Investment Conduits
(REMIC) and Issuers
of Collateralized Debt Obligations" for each REMIC created hereunder.

(m)    Neither the Indenture Trustee nor the Servicer shall sell, dispose of or
substitute for any of the
Mortgage Loans (except in connection with (i) the default, imminent default or foreclosure
of a Mortgage Loan,
including but not limited to, the acquisition or sale of a Mortgaged Property acquired
by deed in lieu of
foreclosure, (ii) the bankruptcy of any of the REMICs created hereunder, (iii) the termination
of the applicable
REMIC pursuant to Section 8.02 of the Trust Agreement or (iv) a purchase of Mortgage
Loans pursuant to the

Purchase Agreement) nor acquire any assets of any of the REMICs, nor sell or dispose of any investments in the
Custodial Account or the Payment Account for gain nor accept any contributions to any of the REMICs after the
Closing Date unless it has received an Opinion of Counsel that such sale, disposition, substitution or
acquisition will not (a) affect adversely the status of any of the REMICs as a REMIC or (b) unless the Servicer
has determined in its sole discretion to indemnify the Trust Estate against such tax, cause any REMIC to be
subject to a tax on "prohibited transactions" or "contributions" pursuant to the REMIC Provisions.

(n)      The Indenture Trustee will apply for an employer identification number from the Internal Revenue Service
on a Form SS-4 or any other acceptable method for all tax entities.

Section 11.02      Servicer, REMIC Administrator and Indenture Trustee Indemnification.

(a)      The Indenture Trustee agrees to indemnify the Trust Estate, the REMIC Administrator and the Servicer for
any taxes and costs including, without limitation, any reasonable attorneys fees imposed on or incurred by the
Trust Estate or the Servicer, as a result of a breach of the Indenture Trustee's covenants set forth in Article
VIII or this Article XI.

(b)      The REMIC Administrator agrees to indemnify the Trust Estate, the Servicer, the Depositor, the Owner
Trustee and the Indenture Trustee for any taxes and costs (including, without limitation, any reasonable
attorneys' fees) imposed on or incurred by the Trust Estate, the Depositor, GMACM Mortgage, LLC, the Servicer, the
Owner Trustee or the Indenture Trustee, as a result of a breach of the REMIC Administrator's covenants set forth
in this Article XI with respect to compliance with the REMIC Provisions, including without limitation, any
penalties arising from the Owner Trustee's execution of Tax Returns prepared by the REMIC Administrator that
contain errors or omissions; provided, however, that such liability will not be imposed to the extent such breach
is a result of an error or omission in information provided to the REMIC Administrator by the Servicer in which
case Section 11.02(c) will apply.

(c)      The Servicer agrees to indemnify the Trust Estate, the REMIC Administrator, the Owner Trustee and the
Indenture Trustee for any taxes and costs (including, without limitation, any reasonable attorneys' fees) imposed
on or incurred by the Trust Estate, the REMIC Administrator, the Owner Trustee or the Indenture Trustee, as a
result of a breach of the Servicer's covenants set forth in this Article XI or in Article III with respect to
compliance with the REMIC Provisions, including without limitation, any penalties arising from the Indenture
Trustee's execution of Tax Returns prepared by the Servicer that contain errors or omissions.

Section 11.03      Designation of REMIC(s).

      The REMIC Administrator will make an election to treat the entire segregated pool of assets described in
the definition of Trust Estate (but excluding the Pre-Funding Account, the Capitalized Interest Account and the
Yield Maintenance Agreement), and subject to this Agreement (including the Mortgage Loans, as set forth in
Section 2.06 of the Trust Agreement ) as a REMIC ("REMIC I") and will make an election to treat the pool of
assets comprised of the REMIC I Regular Interests as a REMIC ("REMIC II") for federal income tax purposes.

      The REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will
be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions under the federal
income tax law.

      The REMIC II Regular Interests will be "regular interests" in REMIC II and the Class R-II Certificates
will be the sole class of "residual interests" therein for purposes of the REMIC Provisions (as defined herein)
under federal income tax law.

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

Issuer

GMACM HOME EQUITY LOAN TRUST 2007-HE2, as

individual

By:     WILMINGTON TRUST COMPANY, not in its
        capacity but solely as Owner Trustee

By:
        Name:
        Title:

as Indenture

THE BANK OF NEW YORK TRUST COMPANY, N.A.,
Trustee

By:
        Name:
        Title:

THE BANK OF NEW YORK TRUST COMPANY, N.A.
hereby accepts appointment as Paying
Agent pursuant to Section 3.03 hereof
and as Note Registrar pursuant to Section
4.02 hereof.

By:
        Name:
        Title:

Signatures and Seals

STATE OF _____    )
                             )    ss.:
COUNTY OF _____     )

        On this ___ day of June 2007, before me personally  appeared  _____,  to me known, who being by me duly  sworn,  did depose and say,  that  he/she  resides at  _____,  that  he/she is the Wilmington  Trust Company,  the Owner Trustee,  one of the  corporations  described in and which executed the above instrument;  that he/she knows  the seal of said  corporation;  that the seal  affixed to said instrument  is such corporate  seal;  that it was so affixed by order of the Board of  Directors of said corporation;  and that he/she signed his/her name thereto by like order.

        Notary Public

Acknowledgements

STATE OF _____     )
                                                  ) ss.:
COUNTY OF _____     )

      On this ___ day of June 2007, before me personally appeared _____, to me known, who being by me duly sworn, did depose and say, that he/she resides at _____; that he/she is the _____ of The Bank of New York Trust Company, N.A. as Indenture Trustee, one of the corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.


      Notary Public

NOTORIAL SEAL


## APPENDIX A

### DEFINITIONS

      Accrued Certificate Interest: With respect to the Class SB Certificates, interest accrued during the related Interest Period at the Certificate Rate for such Certificate on its Notional Amount for such Payment Date.

      Addition Notice: With respect to the transfer of Subsequent Mortgage Loans to the Issuer by a Seller pursuant to Section 2.2 of the Purchase Agreement (in substantially the form set forth in Exhibit 3 to such agreement), a notice given by the respective Seller to the Rating Agencies, the Indenture Trustee, the Enhancer and the Owner Trustee, which shall be given not later than two Business Days prior to the related Subsequent Transfer Date, of (i) the Seller's designation of Subsequent Mortgage Loans to be sold to the Issuer and (ii) the aggregate principal balance as of the Subsequent Cut-Off Date of such Subsequent Mortgage Loans.

      Adverse REMIC Event: As defined in Section 11.01(f) of the Indenture.

      Affiliate: With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

      Appraised Value: With respect to any Mortgaged Property, either (x) the value as generally set forth in an appraisal of such Mortgaged Property used to establish compliance with the underwriting criteria then in effect in connection with the application for the Mortgage Loan secured by such Mortgaged Property, or (y) if the sales price of such Mortgaged Property is considered in accordance with the underwriting criteria applicable to the related Mortgage Loan, the lesser of (i) the appraised value referred to in (x) above and (ii) the sales price of such Mortgaged Property.

      Assignment of Mortgage: With respect to any Mortgage, an assignment, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to reflect the conveyance of such Mortgage, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same jurisdiction.

      Authorized Newspaper: A newspaper of general circulation in the Borough of

Manhattan, The City of New York, printed in the English language and customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays.

Authorized Officer: With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Basic Documents: The Trust Agreement, the Indenture, the Purchase Agreement, the Insurance Agreement, the Policy, the Servicing Agreement, the Custodial Agreement, any Subsequent Transfer Agreement and the other documents and certificates delivered in connection with any of the above.

Beneficial Owner: With respect to any Note, the Person who is the beneficial owner of such Note as reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly as a Depository Participant or indirectly through a Depository Participant, in accordance with the rules of such Depository).

Billing Cycle: With respect to any Mortgage Loan and Due Date, the calendar month preceding such Due Date.

Book-Entry Notes: Beneficial interests in the Notes, ownership and transfers of which shall be made through book entries by the Depository as described in Section 4.06 of the Indenture.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the States of New York, Pennsylvania, Delaware or any State in which the Corporate Trust Office are required or authorized by law to be closed.

Capitalized Interest Account: The account established and maintained pursuant to Section 3.19 of the Servicing Agreement.

Capitalized Interest Requirement: With respect to each Payment Date during the Pre-Funding Period and on the Payment Date immediately after the end of the Pre-Funding Period, the excess, if any of (i) the sum of (A) the amount of interest that would accrue at the Net WAC Rate for the related Interest Period on the amount on deposit in the Pre-Funding Account as of the close of business on the preceding Payment Date (or as of the Closing Date, in the case of the first Payment Date) and (B) the amount of any fees paid to the Enhancer for the Policy, over (ii) the amount of reinvestment earnings since the preceding Payment Date (or the Closing Date, in the case of the first Payment Date) in the Pre-Funding Account.

Certificate Balance: With respect to any Payment Date and the Class SB Certificates, an amount equal to the then applicable Certificate Percentage Interest of such Certificate multiplied by the Overcollateralization Amount.

Certificate Distribution Amount: For any Payment Date, the amount, if any, distributable on the Certificates for such Payment Date pursuant to Section 3.05(a)(xv) of the Indenture.

Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Statute.

Certificate Paying Agent: The Certificate Paying Agent appointed pursuant to Section 3.10 of the Trust Agreement. Initially the Indenture Trustee has been appointed as the Certificate Paying Agent.

Certificate Percentage Interest: With respect to any Payment Date and any Certificate, the Percentage Interest for such Certificate.

Certificate Rate: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO and any Payment Date, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests. For purposes of calculating the Certificate Rate for the Class SB Certificates and REMIC II Regular Interest SB-IO, the numerator is equal to the sum of the following components:

(i) the REMIC I Remittance Rate for REMIC I Regular Interest LT1 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT1;

(ii) the REMIC I Remittance Rate for REMIC I Regular Interest LT2 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT2; and

(iii) the REMIC I Remittance Rate for REMIC I Regular Interest LT4 minus twice the

SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT4.

Certificate Register: The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

Certificate Registrar: The Certificate Registrar appointed pursuant to Section 3.05 of the Trust Agreement. Initially the Indenture Trustee has been appointed as the Certificate Registrar.

Certificateholder: The Person in whose name a Certificate is registered in the Certificate Register except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee or any Affiliate of the Owner Trustee or the Indenture Trustee shall be deemed not to be outstanding and the registered holder will not be considered a Certificateholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Certificates that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Certificates that have been pledged in good faith may be regarded as Certificateholders if the pledgee establishes to the satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of the Owner Trustee or the Indenture Trustee.

Certificates: Collectively, the Class R and the Class SB Certificates.

Class : With respect to any Note, all Notes that bear the same Class designation, (i.e., the Class A-1 Notes as a group, Class A-2 Notes as a group, Class A-3 Notes as a group, Class A-4 Notes as a group, Class A-5 Notes as a group and the Class A-6 Notes as a group). With respect to any Certificate, all Certificates that bear the same Class designation, (i.e., the Class SB Certificates as a group, Class R-I Certificates as a group and Class R-II Certificates as a group). With respect to any Regular Interest, all Regular Interests that bear the same class designation.

Class A-1 Notes: The Class A-1 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-2 Notes: The Class A-2 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-3 Notes: The Class A-3 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-4 Notes: The Class A-4 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-5 Notes: The Class A-5 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-6 Lockout Distribution Amount: With respect to any Payment Date, the product of (a) the Class A-6 Lockout Percentage for such Payment Date and (b) the Class A-6 Pro Rata Distribution Amount for such Payment Date. In no event shall the Class A-6 Lockout Distribution Amount for a Payment Date exceed the Principal Collection Distribution Amount or the Note Balance of the Class A-6 Notes immediately prior to such Payment Date.

Class A-6 Lockout Percentage: With respect to each Payment Date, the applicable percentage set forth below:

A-5

| PAYMENT DATES | CLASS LOCKOUT PERCENTAGE |
|---|---|
| July 2007 through and including June 2010.............. | 0% |
| July 2010 through and including June 2012.............. | 45% |
| July 2012 through and including June 2013.............. | 80% |
| July 2013 through and including June 2014.............. | 100% |
| July 2014 and thereafter............................... | 300% |

Class A-6 Notes: The Class A-6 GMACM Home Equity Loan-Backed Term Notes, Series 2007-HE2, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-6 Pro Rata Distribution Amount: With respect to any Payment Date, an amount equal to the product of (a) a fraction, the numerator of which is the Note Balance of the Class A-6 Notes immediately prior to such Payment Date and the denominator of which is the aggregate Note Balance of the Notes immediately prior to such Payment Date and (b) the sum of (i) the Principal Distribution Amount, (ii) any Liquidation Loss Distribution Amount and (iii) any Overcollateralization Increase Amount, in each case, for that payment date.

Class Principal Balance: For each of the Notes, the Initial Note Balance thereof as reduced on each successive Payment Date by principal distributed in respect thereof on such Payment Date pursuant to Section 3.03 of the Servicing Agreement and Section 3.05 of the Indenture.

Class R Certificates: The Class R-I Certificates and Class R-II Certificates, each as substantially in the form of Exhibit I to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Certificates: The Class SB Certificates substantially in the form of Exhibit A to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Distribution Amount: On any Payment Date, the sum of (i) Accrued Certificate Interest for such Payment Date, (ii) the amounts payable to the Certificates pursuant to Section 3.05(a)(x) of the Indenture and (iii) the Overcollateralization Release Amount, if any, for the Determination Date related to such Payment Date, reduced, but not below zero, by the Liquidation Loss Distribution Amount and Overcollateralization Increase Amount for such Payment Date, all of the foregoing done without double counting either in addition or subtraction.

Closing Date: June 28, 2007.

Code: The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period: With respect to any Mortgage Loan and Payment Date, the calendar month preceding any such Payment Date.

Collections: With respect to any Collection Period, all Interest Collections and Principal Collections during such Collection Period.

Combined Loan-to-Value Ratio or CLTV: With respect to each Mortgage Loan, the ratio, expressed as a percentage, of the sum of (i) the initial principal balance of such Mortgage Loan, and (ii) any outstanding principal balance, at origination of such Mortgage Loan, of all other mortgage loans, if any, secured by senior or subordinate liens on the related Mortgaged Property, to the Appraised Value or, when not available, the Stated Value.

Commission: The Securities and Exchange Commission.

Corporate Trust Office: With respect to the Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Paying Agent, the principal corporate trust office of the Indenture Trustee and Note Registrar at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this instrument is located at 2 North LaSalle Street, Suite 1020, Chicago, Illinois 60602, Attention: Structured Finance Services - GMACM Home Equity Loan Trust Series 2007-HE2. With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890, Attention: Corporate Trust Administration.

Custodial Account: The account or accounts created and maintained by the Servicer pursuant to Section 3.02(b) of the Servicing Agreement, in which the Servicer shall deposit or cause to be deposited certain amounts in respect of the Mortgage Loans.

Custodial Agreement: The Custodial Agreement, dated the Closing Date, among the Custodian, the Indenture Trustee, the Issuer and the Servicer relating to the custody of the Mortgage Loans and the Related Documents.

Custodian: GMAC Bank and its successors and assigns, as applicable pursuant to the Custodial Agreement, or any other successor custodian of the Mortgage Files appointed by the Indenture Trustee and reasonably acceptable to the Enhancer and the Servicer.

Cut-Off Date: June 1, 2007.

Cut-Off Date Principal Balance: With respect to any Initial Mortgage Loan or Subsequent Mortgage Loan, the unpaid principal balance thereof as of the close of business on the last day of the Billing Cycle immediately prior to the Cut-Off Date or Subsequent Cut-Off Date, as the case may be.

Default: Any occurrence which is or with notice or the lapse of time or both would become an Event of Default.

Deficiency Amount: As defined in the Policy.

Definitive Notes: Any definitive, fully registered Note, as described in Section 4.06 of the Indenture.

Deleted Loan: A Mortgage Loan replaced or to be replaced with an Eligible Substitute

Loan.

Delinquent: As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly due date. Since the determination as to whether a Mortgage Loan falls into these categories is made as of the close of business on the last business day of each month, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would still be considered current as of July 31. If that payment remained unpaid as of the close of business on August 31, the Mortgage Loan would then be considered 30-59 days delinquent. Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Delinquency Percentages: With respect to any Payment Date, the percentage equivalent of a fraction (A) the numerator of which is the Principal Balance that are Delinquent for 60 days or more as of such Payment Date and (B) the denominator of which is the Pool Balance, in each case as of the beginning of the related Collection Period, expressed as a percentage.

Depositor: Residential Asset Mortgage Products, Inc., a Delaware corporation, or its successor in interest.

Depository: The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Issuer. Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Commission thereunder.

Depository Participant: A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date: With respect to any Payment Date, the 18th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Disqualified Organization: Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, and if not otherwise included, any of the following: (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code, (v) any "electing large partnership," as defined in Section 775(a) of the Code and (vi) any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certificate by such Person may cause the Trust Estate or any Person having an Ownership Interest in any Class of Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to such Person. The terms "United States," "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Distribution Account: The account or accounts created and maintained by the Certificate Paying Agent pursuant to Section 3.10(c) of the Trust Agreement. The Certificate Paying Agent will make all distributions on the Certificates from money on deposit in the Distribution Account.

Due Date: With respect to each Mortgage Loan, the date on which monthly payments on such Mortgage Loan are due.

Eligible Account: An account that is any of the following: (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available (provided that if Standard & Poor's rating for such institution's short-term debt obligation is downgraded below A-2, such account and all funds deposited therein shall be transferred to an institution with a short-term debt obligation of at least A-2 within 30 days), or (ii) an account or accounts maintained with a depository institution or trust company, as long as its short-term debt obligations are rated P-1 by Moody's, and A-1+ by Standard & Poor's (or the equivalent) or better by each Rating Agency, and its long term debt obligations are rated A2 by Moody's and AA- by Standard & Poor's (or the equivalent) or better by each Rating Agency, or (iii) a segregated trust account or accounts maintained in the corporate trust division of a depository institution or trust company, acting in its fiduciary capacity, or (iv) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account will not cause a Rating Event (if determined without regard to the Policy).

Eligible Substitute Loan: A Mortgage Loan substituted by either Seller for a Deleted Loan, which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Indenture Trustee, (i) have an outstanding principal balance, after

deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the outstanding principal balance of the Deleted Loan (the amount of any shortfall to be deposited by the Seller in the Custodial Account in the month of substitution); (ii) comply with each representation and warranty made by GMACM and set forth in Section 3.1(b) of the Purchase Agreement, other than clauses (viii), (xiii), (xxiv), (xxv)(B), (xxvi) and (xxvii) thereof, and comply with each of the representations and warranties made by WG Trust 2003 set forth in Section 3.1(d)(II) of the Purchase Agreement, as of the date of substitution; (iii) have a Loan Rate and Net Loan Rate no lower than and not more than 1% per annum higher than the Loan Rate and Net Loan Rate, respectively, of the Deleted Loan as of the date of substitution; (iv) have a CLTV at the time of substitution no higher than that of the Deleted Loan at the time of substitution; (v) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Loan; and (vi) not be 30 days or more delinquent.

Enhancer: Financial Guaranty Insurance Company, or any successor thereto.

Enhancer Default: Any failure by the Enhancer to make a payment required under the Policy in accordance with its terms.

Enhancer Optional Deposit: Amounts deposited by or on behalf of the Enhancer in the Note Payment Account, other than Insured Payments, to be applied to the Notes.

ERISA: The Employee Retirement Income Security Act of 1974, as amended.

Event of Default: With respect to the Indenture, any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)      a default in the payment of the principal of, any installment of the principal of or interest on any Note when the same becomes due and payable, and such default shall continue for a period of five days;

(b)      there occurs a default in the observance or performance in any material respect of any covenant or agreement of the Issuer made in the Indenture, or any representation or warranty of the Issuer made in the Indenture or in any certificate delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made that has a material adverse effect on the Noteholders or the Enhancer, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Enhancer or the Noteholders of at least 25% of the aggregate Note Balance of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of default hereunder;

(c)      there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Trust Estate in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(d)      there occurs the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Excess Spread: With respect to any Payment Date and without taking into account any Insured Payment, if any, paid by the Enhancer under the Policy for such Payment Date, the excess, if any, of (i) Interest Collections for the related Collection Period over (ii) the sum of (x) the sum of (A) the premium allocable to such Payment Date and (B) any unpaid premium for the Policy, with interest thereon as provided in the Insurance Agreement and (y) the aggregate amount distributed to the Noteholders as interest on such Payment Date pursuant to Section 3.05(a)(i) of the Indenture.

Expenses: The meaning specified in Section 7.02 of the Trust Agreement.

Fannie Mae: Fannie Mae, formerly the Federal National Mortgage Association, or any

successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

Final Payment Date:  The Payment Date in December 2037.

Fiscal Year:  The fiscal year of the Trust, which shall end on December 31 of each year.

Foreclosure Profit:  With respect to a Liquidated Mortgage Loan, the amount, if any, by which (i) the aggregate of Liquidation Proceeds net of Liquidation Expenses exceeds (ii) the Principal Balance of such Liquidated Mortgage Loan (plus accrued and unpaid interest thereon at the applicable Loan Rate from the date interest was last paid through the date of receipt of the final Liquidation Proceeds) immediately prior to the final recovery of the related Liquidation Proceeds.

Form 10-K Certification:  As defined in Section 4.02(c) of the Servicing Agreement.

Freddie Mac:  Freddie Mac, formerly the Federal Home Loan Mortgage Corporation, or any successor thereto.

GAAP: Generally accepted accounting principles.

Grant: Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to the Indenture. A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of such collateral or other agreement or instrument and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

GMAC:  GMAC LLC, and its successors and assigns.

GMACM:  GMAC Mortgage, LLC, and its successors and assigns.

Indemnified Party:  The meaning specified in Section 7.02 of the Trust Agreement.

Indenture:  The indenture dated as of the Closing Date between the Issuer and the Indenture Trustee.

Indenture Trustee:  The Bank of New York Trust Company, N.A., a national banking association, and its successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent:  When used with respect to any specified Person, such Person (i) is in fact independent of the Issuer, any other obligor on the Notes, the Sellers, the Depositor and any Affiliate of any of the foregoing Persons, (ii) does not have any direct financial interest or any material indirect financial interest in the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Independent Certificate:  A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in this Indenture and that the signer is Independent within the meaning thereof.

Initial Aggregate Note Balance:  $1,240,884,000.00.

Initial Class A-1 Note Balance:  $488,845,000.00.

Initial Class A-2 Note Balance:  $170,818,000.00.

Initial Class A-3 Note Balance:  $219,526,000.00.

Initial Class A-4 Note Balance:  $173,734,000.00.

Initial Class A-5 Note Balance:  $63,873,000.00.

Initial Class A-6 Note Balance:  $124,088,000.00.

Initial Certificate Balance: $39,698,206.40.

Initial Mortgage Loans: The mortgages initially transferred by the Depositor to the Issuer on the Closing Date, which are listed on the Mortgage Loan Schedule on such date.

Initial Note Balance: The Initial Class A-1 Note Balance, Initial Class A-2 Note Balance, Initial Class A-3 Note Balance, Initial Class A-4 Note Balance, Initial Class A-5 Note Balance or Initial Class A-6 Note Balance as applicable.

Initial Pool Balance: The sum of (a) the aggregate Principal Balances of the Initial Mortgage Loans as of the Cut-off Date and (b) the Original Pre-Funded Amount.

Insolvency Event: With respect to a specified Person, (a) the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of such Person or any substantial part of its property in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or ordering the winding-up or liquidation of such Person's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or (b) the commencement by such Person of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by such Person to the entry of an order for relief in an involuntary case under any such law, or the consent by such Person to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or the making by such Person of any general assignment for the benefit of creditors, or the failure by such Person generally to pay its debts as such debts become due or the admission by such Person in writing (as to which the Indenture Trustee shall have notice) of its inability to pay its debts generally, or the adoption by the Board of Directors or managing member of such Person of a resolution which authorizes action by such Person in furtherance of any of the foregoing.

Insurance Agreement: The Insurance and Indemnity Agreement dated as of June 28, 2007, among the Servicer, the Sellers, the Depositor, the Issuer, the Indenture Trustee and the Enhancer, including any amendments and supplements thereto.

Insurance Proceeds: Proceeds paid by any insurer (other than the Enhancer) pursuant to any insurance policy covering a Mortgage Loan which are required to be remitted to the Servicer, or amounts required to be paid by the Servicer pursuant to the next to last sentence of Section 3.04 of the Servicing Agreement, net of any component thereof (i) covering any expenses incurred by or on behalf of the Servicer in connection with obtaining such proceeds, (ii) that is applied to the restoration or repair of the related Mortgaged Property, (iii) released to the related Mortgagor in accordance with the Servicer's normal servicing procedures or (iv) required to be paid to any holder of a mortgage senior to such Mortgage Loan.

Insured Payment: As defined in the Policy.

Interest Carry Forward Amount: With respect to any Payment Date and any Class of Notes (other than the Class A-1 Notes) the sum of:

(1) if on such Payment Date the Note Rate on any such Class is limited to the Net WAC Rate, the excess of (a) the amount of interest such Class would have been entitled to receive without regard to the Net WAC Rate on such Payment Date, over (b) the amount of interest that such Class was entitled to receive on such Payment Date because the applicable Note Rate was calculated at the Net WAC Rate; and

(2) the Interest Carry Forward Amount for all previous Payment Dates for such Class not previously paid, together with interest thereon at a rate equal to the Note Rate for such Payment Date.

With respect to any Payment Date and the Class A-1 Notes, the sum of: (1) the excess of:

o    if on such Payment Date the Note Rate for the Class A-1 Notes is limited to the Net WAC Rate, the amount of interest that the Class A-1 Notes would have been entitled to receive on such Payment Date had the applicable Note Rate been calculated as a per annum rate equal to the lesser of (a) One-Month LIBOR plus the related Margin and (b) with respect to the Class A-1 Notes only, 10.00%, over

o    the amount of interest that the Class A-1 Notes were entitled to receive on such Payment Date because the applicable Note Rate was calculated at the Net WAC Rate; and

(2)    the Interest Carry Forward Amount for the Class A-1 Notes for all previous Payment Dates not previously paid, together with interest thereon at a rate equal to the applicable Note Rate for such Payment Date.

Interest Collections: With respect to any Payment Date, the sum of all payments by or on behalf of Mortgagors and any other amounts constituting interest (including without limitation such portion of Insurance Proceeds, Net Liquidation Proceeds and Repurchase Prices as is allocable to interest on the applicable Mortgage Loan) as is paid by the Sellers or the Servicer (including any optional servicing advance) or is collected and

applied by the Servicer under the Mortgage Loan during the related Collection Period, and reduced by the Servicing Fee for the related Collection Period and by any fees (including annual fees) or late charges or similar administrative fees paid by Mortgagors during the related Collection Period. The terms of the related Mortgage Note shall determine the portion of each payment in respect of such Mortgage Loan that constitutes principal or interest.

Interest Coverage Amount: The amount to be paid from proceeds from the sale of the Notes for deposit into the Capitalized Interest Account pursuant to Section 3.19 of the Servicing Agreement on the Closing Date, which amount initially shall be $3,523,325.42 and thereafter, shall be the amount computed in accordance with Section 3.19 of the Servicing Agreement.

Interest Period: With respect to each Class of Notes (other than the Class A-1 Notes) and any Payment Date, the calendar month preceding such Payment Date. With respect to any Payment Date and the Class A-1 Notes, other than the first Payment Date, the period commencing on the Payment Date in the month immediately preceding the month in which such Payment Date occurs and ending on the day preceding such Payment Date, and in the case of the first Payment Date, the period commencing on the Closing Date and ending on the day preceding the first Payment Date.

Issuer or Trust: The GMACM Home Equity Loan Trust 2007-HE2, a Delaware statutory trust, or its successor in interest.

Issuer Order or Issuer Request: A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee.

LIBOR Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the city of London, England are required or authorized by law to be closed.

Lien: Any mortgage, deed of trust, pledge, conveyance, hypothecation, assignment, participation, deposit arrangement, encumbrance, lien (statutory or other), preference, priority right or interest or other security agreement or preferential arrangement of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than any such financing statement filed for informational purposes only) or comparable law of any jurisdiction to evidence any of the foregoing; provided, however, that any assignment pursuant to Section 6.02 of the Servicing Agreement shall not be deemed to constitute a Lien.

Liquidated Mortgage Loan: With respect to any Payment Date, any Mortgage Loan in respect of which the Servicer has determined, in accordance with the servicing procedures specified in the Servicing Agreement, as of the end of the related Collection Period that substantially all Liquidation Proceeds which it reasonably expects to recover, if any, with respect to the disposition of the related REO Property have been recovered.

Liquidation Expenses: All out-of-pocket expenses (exclusive of overhead) incurred by or on behalf of the Servicer in connection with the liquidation of any Mortgage Loan and not recovered under any insurance policy, including legal fees and expenses, any unreimbursed amount expended (including, without limitation, amounts advanced to correct defaults on any mortgage loan which is senior to such Mortgage Loan and amounts advanced to keep current or pay off a mortgage loan that is senior to such Mortgage Loan) respecting such Mortgage Loan and any related and unreimbursed expenditures for real estate property taxes or for property restoration, preservation or insurance against casualty loss or damage.

Liquidation Loss Amount: With respect to any Payment Date and any Mortgage Loan that became a Liquidated Mortgage Loan during the related Collection Period, the unrecovered portion of the Principal Balance of such Mortgage Loan and any unpaid accrued interest thereon at the end of such Collection Period, after giving effect to the Net Liquidation Proceeds applied in reduction of such Principal Balance.

Liquidation Loss Distribution Amount: With respect to any Payment Date, an amount equal to the sum of (A) 100% of the Liquidation Loss Amounts on such Payment Date, plus (B) any Liquidation Loss Amounts remaining undistributed from any preceding Payment Date. Any Liquidation Loss Amount remaining undistributed from any preceding payment date shall not be required to be paid as a Liquidation Loss Distribution Amount to the extent that a Liquidation Loss Amount was paid on the notes by means of excess interest or a draw on the Policy or was reflected in the reduction of the Overcollateralization Amount.

Liquidation Proceeds: Proceeds (including Insurance Proceeds but not including amounts drawn under the Policy) if any received in connection with the liquidation of any Mortgage Loan or related REO Property, whether through trustee's sale, foreclosure sale or otherwise.

LT1 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT1 on such Payment Date.

LT2 Principal Distribution Amount: For any Payment Date, the excess, if any, of the

REMIC I Principal Reduction Amount for REMIC I Regular Interest LT2 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT2 on such Payment Date.

LT3 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT3 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT3 on such Payment Date.

LT4 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT4 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT4 on such Payment Date.

Loan Rate: With respect to any Mortgage Loan and any day, the per annum rate of interest applicable under the related Mortgage Note.

Lost Note Affidavit: With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, an affidavit from the related Seller certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note, if available).

Margin: With respect to the Class A-1 Notes, 0.14%.

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS(R)System: The system of recording transfers of Mortgages electronically maintained by MERS.

MIN: The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS(R)System.

MOM Loan: With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Payment: With respect to any Mortgage Loan (including any REO Property) and any Due Date, the payment of principal and interest due thereon in accordance with the terms of such Mortgage Loan.

Moody's: Moody's Investors Service, Inc., or its successor in interest.

Mortgage: The mortgage, deed of trust or other instrument creating a first or second lien on an estate in fee simple interest in real property securing a Mortgage Loan.

Mortgage File: With respect to each Mortgage Loan:

(i)    the original Mortgage Note endorsed or assigned without recourse in blank (which endorsement shall contain either an original signature or a facsimile signature of an authorized officer of GMACM) or, with respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, a Lost Note Affidavit;

(ii)   the original Mortgage, noting the presence of the MIN of the Mortgage Loan, if the Mortgage is registered on the MERS(R)System, and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by GMACM that such Mortgage has been sent for recording, or a county certified copy of such Mortgage in the event the recording office keeps the original or if the original is lost;

(iii)  unless the Mortgage Loan is registered on the MERS(R)System, original assignments (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage in recordable form from GMACM to "The Bank of New York Trust Company, N.A., as Indenture Trustee under that certain Indenture dated as of June 28, 2007, for GMACM Home Equity Loan Trust 2007-HE2, Home Equity Loan-Backed Term Notes" c/o the Servicer at an address specified by the Servicer;

(iv)   originals of any intervening assignments of the Mortgage from the originator to GMACM (or to MERS, if the Mortgage Loan is registered on the MERS(R)System, and which notes the presence of a MIN), with evidence of recording thereon, or, if the original of any such intervening assignment has not yet been returned from the public recording office, a copy of such original intervening assignment certified by GMACM that such original intervening assignment has been sent for recording; and

(v)    a true and correct copy of each assumption, modification, consolidation or substitution agreement, if any, relating to such Mortgage Loan; and

(vi)   any documents required to be added to such documents pursuant to the Purchase Agreement, the Trust Agreement or the Servicing Agreement.

It is understood that the Mortgage File (other than item (i) above) may be retained in microfilm, microfiche, optical storage or magnetic media in lieu of hard copy; provided, that with respect to any Mortgage Loan not registered on the MERS(R)System, the original assignment of Mortgage described in clause (iii) above shall be retained in the Mortgage File.

Mortgage Loan Schedule: With respect to each Mortgage Loan, the schedule which includes the following fields of information: (i) Loan Identification Number; (ii) Zip Code; (iii) State; (iv) Original Loan Amount; (v) Current Loan Amount; (vi) Senior Lien Balance; (vii) Origination Date; (viii) Original Term; (ix) Remaining Term; (x) Amortization Term; (xi) Interest Rate; (xii) Property Type; (xiii) Occupancy Type; (xiv) Loan Purpose, (xv) Mortgage Type; (xvi) Lien Position; (xvii) Loan-To-Value Ratio; (xviii) Combined Loan-To-Value Ratio; (xix) FICO Score; (xx) Documentation Type; (xxi) Debt-To-Income Ratio; (xxii) Interest-Only Term; and (xxiii) with respect to any Mortgage Loan originated by GMACM, First Lien Loan Product Type. The Mortgage Loan Schedule for the Initial Mortgage Loans will be attached as Exhibit 1 to the Mortgage Loan Purchase Agreement. The Mortgage Loan Schedule for the Subsequent Mortgage Loans will be attached to the related Subsequent Transfer Agreement.

Mortgage Loans: At any time, all Initial Mortgage Loans and Subsequent Mortgage Loans that have been sold to the Issuer pursuant to, in the case of Initial Mortgage Loans, the Trust Agreement, or, in the case of Subsequent Mortgage Loans, a Subsequent Transfer Agreement, together with all monies due or become due thereunder or the Related Documents, and that remain subject to the terms thereof.

Mortgage Note: With respect to a Mortgage Loan, the promissory note pursuant to which the related Mortgagor agrees to pay the indebtedness evidenced thereby and secured by the related Mortgage as modified or amended.

Mortgaged Property: The underlying property, including real property and improvements thereon, securing a Mortgage Loan.

Mortgagor: The obligor or obligors under a Mortgage Note.

Net Liquidation Proceeds: With respect to any Liquidated Mortgage Loan, Liquidation Proceeds net of amounts drawn on the Policy, Liquidation Expenses (but not including the portion, if any, of such amount that exceeds the Principal Balance of, plus accrued and unpaid interest on, such Mortgage Loan at the end of the Collection Period immediately preceding the Collection Period in which such Mortgage Loan became a Liquidated Mortgage Loan) and including any Recovery Amounts.

Net Loan Rate: With respect to any Payment Date and any Mortgage Loan, the Loan Rate of that Mortgage Loan applicable to the Due Date in the related Collection Period, net of the Servicing Fee Rate.

Net WAC Rate: With respect to any Payment Date, (i) a per annum rate equal to the weighted average of the Net Loan Rates of the Mortgage Loans as of the first day of the month preceding the month in which such Payment Date occurs, and weighted on the basis of the respective Principal Balances of such Mortgage Loans as of the first day of the related Collection Period, minus (ii) the premium rate on the Policy multiplied by a fraction, the numerator of which is the sum of the Note Balances and the denominator of which is the Pool Balance.

Net Worth: As of any date of determination, the net worth of GMACM and its consolidated subsidiaries, as determined in accordance with GAAP.

Non-United States Person: Any Person other than a United States Person.

Note Balance: With respect to any Payment Date and the Notes, the Initial Aggregate Note Balance reduced by all payments of principal on the Notes prior to such Payment Date and any allocation of Liquidation Loss Amounts on the Notes prior to such Payment Date.

Note Owner or Owner: The Beneficial Owner of a Note.

Note Payment Account: The account established by the Indenture Trustee pursuant to Sections 3.01 and 8.02 of the Indenture and Section 5.01 of the Servicing Agreement. Amounts deposited in the Note Payment Account will be distributed by the Indenture Trustee in accordance with Section 3.05 of the Indenture.

Note Rate: With respect to each Interest Period and the related Payment Date, a per annum rate equal to with respect to:

(a)    the Class A-1 Notes, the least of:

o    One-Month LIBOR plus the Margin;

o    the Net WAC Cap; and

o    10.00%;

(b)      the Class A-2 Notes, the lesser of (i) 6.054% and (ii) the Net WAC Cap;

(c)      the Class A-3 Notes, the lesser of (i) 6.193% and (ii) the Net WAC Cap;

(d)      the Class A-4 Notes, the lesser of (i) 6.424% plus, with respect to each Payment Date occurring on or after the second Payment Date following the first possible Optional Call Date, 1.00% and (ii) the Net WAC Rate;

(e)      the Class A-5 Notes, the lesser of (i) 6.551% plus, with respect to each Payment Date occurring on or after the second Payment Date following the first possible Optional Call Date, 0.50% and (ii) the Net WAC Rate; and

(f)      the Class A-6 Notes, the lesser of (i) 6.249% plus, with respect to each Payment Date occurring on or after the second Payment Date following the first possible Optional Call Date, 0.50% and (ii) the Net WAC Rate;

Note Register: The register maintained by the Note Registrar in which the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes.

Note Registrar: The Indenture Trustee, in its capacity as Note Registrar.

Noteholder or Holder: The Person in whose name a Note is registered in the Note Register, except that, any Note registered in the name of the Depositor, the Issuer or the Indenture Trustee or any Affiliate of any of them shall be deemed not to be outstanding and the registered holder will not be considered a Noteholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided, that in determining whether the Indenture Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Notes that have been pledged in good faith may be regarded as Noteholders if the pledgee thereof establishes to the satisfaction of the Indenture Trustee or the Owner Trustee such pledgee's right so to act with respect to such Notes and that such pledgee is not the Issuer, any other obligor on the Notes or any Affiliate of any of the foregoing Persons.

Notes: Any of the Class A-1 Notes, Class A-2 Notes, Class A-3 Notes, Class A-4 Notes, Class A-5 Notes or Class A-6 Notes, issued and outstanding pursuant to the Indenture.

Notional Amount: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO, immediately prior to any Payment Date a notional amount equal to the aggregate of the Uncertificated Principal Balances of the REMIC I Regular Interests.

Officer's Certificate: With respect to the Servicer, a certificate signed by the President, Managing Director, a Director, a Vice President or an Assistant Vice President, of the Servicer and delivered to the Indenture Trustee. With respect to the Issuer, a certificate signed by any Authorized Officer of the Issuer, under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, and delivered to the Indenture Trustee. Unless otherwise specified, any reference in the Indenture to an Officer's Certificate shall be to an Officer's Certificate of any Authorized Officer of the Issuer.

One-Month LIBOR: As to any Interest Period for the Class A-1 Notes, (a) for any Interest Period other than the first Interest Period, the rate for United States dollar deposits for one month that appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London, England time, on the second LIBOR Business Day prior to the first day of that Interest Period or (b) with respect to the first Interest Period, the rate for United States dollar deposits for one month that appears on the Reuters Screen LIBOR01 Page as of 11:00 a.m., London, England time, two LIBOR Business Days prior to the Closing Date. If such rate does not appear on such page, LIBOR will be the Reference Bank Rate determined by the Indenture Trustee. If no such rate appears and the Indenture Trustee is unable to determine a Reference Bank Rate, LIBOR will be LIBOR applicable to the preceding Interest Period.

Opinion of Counsel: A written opinion of counsel of a law firm reasonably acceptable to the recipient thereof. Any Opinion of Counsel for the Servicer may be provided by in-house counsel for the Servicer if reasonably acceptable.

Optional Call Date: Any Payment Date on which the Note Balance is less than 10% of the Initial Aggregate Note Balance prior to giving effect to any payments of principal on such Payment Date.

Original Pre-Funded Amount: The amount deposited from the proceeds of the sale of the Securities into the Pre-Funding Account on the Closing Date, which amount is $320,145,551.40.

Outstanding: With respect to the Notes, as of the date of determination, all Notes theretofore executed, authenticated and delivered under this Indenture except:

(i)      Notes theretofore cancelled by the Note Registrar or delivered to the Indenture Trustee for cancellation; and

(ii)   Notes in exchange for or in lieu of which other Notes have been executed, authenticated and delivered pursuant to the Indenture unless proof satisfactory to the Indenture Trustee is presented that any such Notes are held by a holder in due course;

provided, however, that for purposes of effectuating the Enhancer's right of subrogation as set forth in Section 4.12 of the Indenture only, all Notes that have been paid with funds provided under the Policy shall be deemed to be Outstanding until the Enhancer has been reimbursed with respect thereto.

Overcollateralization Amount: With respect to any Payment Date, the amount (but not less than zero), if any, by which (a) the aggregate outstanding Principal Balance of the Mortgage Loans as of the close of business on the last day of the related Collection Period, plus amounts on deposit in the Pre-Funding Account (excluding any investment earnings thereon) exceeds (b) the aggregate Note Balance of the Notes, after application of Principal Collections and excess interest available to pay any Liquidation Loss Distribution Amount for that Payment Date.

Overcollateralization Increase Amount: With respect to any Payment Date, an amount equal to the lesser of (1) the Excess Spread remaining after the application thereof to the payment of any Liquidation Loss Distribution Amount on such payment date and (2) the amount necessary to increase the Overcollateralization Amount to the Overcollateralization Target Amount.

Overcollateralization Release Amount: With respect to any Payment Date, the excess, if any, of the Overcollateralization Amount over the Overcollateralization Target Amount, which, on such Payment Date, shall not exceed an amount equal to the total Principal Collections for such Payment Date.

Overcollateralization Target Amount: With respect to any Payment Date prior to the Stepdown Date, the Required Overcollateralization Amount will be 4.65% of the initial Pool Balance. With respect to any Payment Date on or after the Stepdown Date, an amount equal to the greater of (i) 9.30% of the Pool Balance as of the last day of the related Collection Period and (ii) 0.50% of the initial Pool Balance; provided, however, upon the occurrence of a Servicing Trigger Event, the Overcollateralization Target Amount shall be no less than the Overcollateralization Target Amount as of the previous Payment Date. The Overcollateralization Target Amount may be reduced from time to time with the consent of the Enhancer and written notice from each Rating Agency that the rating will not be reduced or withdrawn as a result of the change in the Overcollateralization Target Amount.

Owner Trust: GMACM Home Equity Loan Trust 2007-HE2, created by the Certificate of Trust pursuant to the Trust Agreement.

Owner Trustee: Wilmington Trust Company, not in its individual capacity but solely as owner trustee, and its successors and assigns or any successor Owner Trustee appointed pursuant to the terms of the Trust Agreement.

Ownership Interest: As to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Certificateholder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

Paying Agent: Any paying agent or co-paying agent appointed pursuant to Section 3.03 of the Indenture, which initially shall be the Indenture Trustee.

Payment Date: The 25th day of each month, or if such day is not a Business Day, then the next Business Day.

Percentage Interest: With respect to any Note and Payment Date, the percentage obtained by dividing the Note Balance of such Note by the aggregate Note Balance of all Notes prior to such Payment Date. With respect to any Certificate and any Payment Date, the Percentage Interest stated on the face of such Certificate.

Permitted Investments: One or more of the following:

(i)   obligations of or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof when such obligations are backed by the full faith and credit of the United States;

(ii)   repurchase agreements on obligations specified in clause (i) above maturing not more than one month from the date of acquisition thereof; provided, that the unsecured short-term debt obligations of the party agreeing to repurchase such obligations are at the time rated by each Rating Agency in its highest short-term rating category available;

(iii)   federal funds, certificates of deposit, demand deposits, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days or a remaining maturity of more than 30 days) denominated in United States dollars of any U.S. depository institution or trust company incorporated under the laws of the United States or any state thereof or of any domestic branch of a foreign depository institution or trust company; provided, that the short-term debt obligations of

such depository institution or trust company if the only Rating Agency is Standard & Poor's, in the case of the principal depository institution in a depository institution holding company, debt obligations of the depository institution holding company) at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating category available; and provided further, that if the only Rating Agency is Standard & Poor's and if the depository or trust company is a principal subsidiary of a bank holding company and the debt obligations of such subsidiary are not separately rated, the applicable rating shall be that of the bank holding company; and provided further, that if the only Rating Agency is Standard & Poor's and the original maturity of such short-term debt obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+;

(iv) commercial paper (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by each Rating Agency in its highest short-term rating category available; provided, that such commercial paper shall have a remaining maturity of not more than 30 days;

(v) a money market fund or a qualified investment fund (including without limitation, any such fund for which the Indenture Trustee or an Affiliate of the Indenture Trustee acts as an advisor or a manager) rated by each Rating Agency in one of its two highest long-term rating categories available (if so rated by such Rating Agency); and

(vi) other obligations or securities that are acceptable to each Rating Agency as a Permitted Investment hereunder and will not cause a Rating Event, and which are acceptable to the Enhancer, as evidenced in writing;

provided, however, that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations. References herein to the highest long-term debt rating category available shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and references herein to the highest short-term rating category available shall mean A-1 in the case of Standard & Poor's and P-1 in the case of Moody's.

Permitted Transferee: Any Transferee of a Class R Certificate, other than a Disqualified Organization or Non-United States Person.

Person: Any legal individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan: Any employee benefit plan or certain other retirement plans and arrangements, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds and insurance company general or separate accounts in which such plans, accounts or arrangements are invested, that are subject to ERISA or Section 4975 of the Code, as described in Section 3.05 of the Trust Agreement.

Plan Assets: The meaning specified in Section 2510.3-101 of the Department of Labor Regulations and as described in Section 3.05 of the Trust Agreement.

Policy: The Financial Guaranty Insurance Policy No. 07030046, dated as of the Closing Date, issued by the Enhancer.

Policy Draw Amount: With respect to any Payment Date, the Insured Payment.

Pool Balance: With respect to any date, the aggregate Principal Balance of all Mortgage Loans as of such date plus, during the Pre-Funding Period, the Pre-Funded Amount.

Predecessor Note: With respect to any Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 4.03 of the Indenture in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as such mutilated, lost, destroyed or stolen Note.

Pre-Funded Amount: With respect to any date of determination during the Pre-Funding Period, the amount on deposit in the Pre-Funding Account.

Pre-Funding Account: The account established and maintained pursuant to Section 3.18 of the Servicing Agreement.

Pre-Funding Period: The period commencing on the Closing Date until the earliest of (i) the date on which the amount on deposit in the Pre-Funding Account is less than $100,000, (ii) the Payment Date in September 2007 or (iii) the occurrence of a Servicing Default.

Principal Balance: With respect to any Mortgage Loan, other than a Liquidated Mortgage Loan, and as of any day, the related Cut-Off Date Principal Balance, minus all collections credited as principal in respect of any such Mortgage Loan in accordance with

the related Mortgage Note and applied in reduction of the Principal Balance thereof. For purposes of this definition, a Liquidated Mortgage Loan shall be deemed to have a Principal Balance equal to the Principal Balance of the related Mortgage Loan immediately prior to the final recovery of substantially all related Liquidation Proceeds and a Principal Balance of zero thereafter.

Principal Collections: With respect to any Payment Date, an amount equal to the sum of (i) the principal portion of all scheduled Monthly Payments on the Mortgage Loans received during the related Collection Period, as reported by the Servicer or the related Subservicer; (ii) the principal portion of all proceeds of the repurchase of any Mortgage Loans (or, in the case of a substitution, any Substitution Adjustment Amounts) during the related Collection Period; (iii) the principal portion of all other unscheduled collections received on the Mortgage Loans during the related Collection Period (or deemed to be received during the related Collection Period), including, without limitation, full and partial Principal Prepayments made by the respective Mortgagors, Insurance Proceeds, Net Liquidation Proceeds and Subsequent Net Recovery Amounts, to the extent not previously distributed; (iv) any amounts deposited into the Note Payment Account in respect of principal in connection with the Servicer exercising its option to terminate the Trust pursuant Section 8.08 of the Servicing Agreement; and (v) on the Payment Date immediately following the end of the Pre-Funding Period, any amount transferred from the Pre Funding Account to the Note Payment Account in accordance with Section 3.18 of the Servicing Agreement.

Principal Distribution Amount: For any Payment Date, the total Principal Collections for such Payment Date less any Overcollateralization Release Amount for such Payment Date; provided that the Principal Distribution Amount for any Payment Date shall not be less than $0.

Proceeding: Any suit in equity, action at law or other judicial or administrative proceeding.

Program Guide: The GMACM Home Equity Servicing Guidelines, as in effect from time to time.

Purchase Agreement: The mortgage loan purchase agreement dated as of the Closing Date, among the Sellers, the Purchaser, the Issuer and the Indenture Trustee.

Purchase Price: The amounts specified in Section 2.3(a) of the Purchase Agreement.

Purchaser: Residential Asset Mortgage Products, Inc., as purchaser under the Purchase Agreement.

Rating Agency: Each of Moody's and Standard & Poor's or, if any such organization or a successor thereto is no longer in existence, such nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Indenture Trustee. References herein to the highest short term unsecured rating category of a Rating Agency shall mean A-1 or better in the case of Standard & Poor's and P-1 or better in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent ratings. References herein to the highest long-term rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's and "Aaa" in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent rating.

Record Date: With respect to any Payment Date and the Class A-1 Notes, the close of business on the last Business Day preceding such Payment Date. With respect to any Payment Date, other than the first Payment Date, and each Class of Notes, other than the Class A-1 Notes, the last day of the calendar month preceding such Payment Date, and in the case of the first Payment Date, the Closing Date.

Recovery Amount: Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Servicing Fee, Recovery Fee and any reimbursement for advances and expenses of the Servicer.

Recovery Fee: A customary fee calculated based on additional recovery amounts charged for the collection of such additional recovery amounts on any Mortgage Loan after the date that such Mortgage Loan became a Liquidated Mortgage Loan.

Reference Bank Rate: With respect to any Interest Period, the arithmetic mean (rounded upwards, if necessary, to the nearest one sixteenth of one percent) of the offered rates for United States dollar deposits for one month which are offered by the Reference Banks as of 11:00 a.m., London, England time, on the second LIBOR Business Day prior to the first day of such Interest Period to prime banks in the London interbank market in amounts approximately equal to the sum of the outstanding Note Balance of the Class A-1 Notes; provided, that at least two Reference Banks provide such rate. If fewer than two such rates are provided, the Reference Bank Rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Indenture Trustee after consultation with the Servicer and the Enhancer, as of 11:00 a.m., New York time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Note Balance of the Class A-1 Notes.

Reference Banks: Barclays Bank plc, National Westminster Bank and Deutsche Bank, A.G.

Regular Interest: Any of the REMIC I Regular Interests or REMIC II Regular Interests.

Related Class: A Class of REMIC II Regular Interests and a class of Notes are related if, and only if, they bear the same Letter/number combination designating their Class, e.g. REMIC II Regular Interest A-2 is related to the Class A-2 Notes.

Regulation AB: Subpart 229.1100 - Asset Backed Securities (Regulation AB), 17 C.F.R. ss.ss.229.1100-229.1123, as such may be amended from time to time, and subject to such
clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (January 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Related Documents: With respect to each Mortgage Loan, the documents contained in the Mortgage File.

Relief Act Shortfalls: With respect to any Payment Date, for any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the related Collection Period as a result of the application of the Servicemembers Civil Relief Act, formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, or any similar state legislation or regulations, the shortfall, if any, equal to (i) one month's interest on the Principal Balance of such Mortgage Loan at the applicable Loan Rate, over (ii) the interest collectible on such Mortgage Loan during such Collection Period.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Administrator: The Bank of New York Trust Company, N.A.; provided that if the REMIC Administrator is found by a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Administrator under this Agreement the Servicer or Indenture Trustee acting as Servicer shall appoint a successor REMIC Administrator, subject to assumption of the REMIC Administrator obligations under this Agreement.

REMIC I: The segregated pool of assets in the Trust Estate with respect to which a REMIC election is to be made.

REMIC I Certificates: The Class R-I Certificates and the REMIC I Regular Interests.

REMIC I Liquidation Loss Amounts: For any Payment Date, Liquidation Loss Amounts on the Mortgage Loans for the related Collection Period shall be allocated as follows: (i) the interest portion of Liquidation Loss Amounts, if any, shall be allocated pro rata to accrued interest on the REMIC I Regular Interests to the extent of such accrued interest, and (ii) any remaining interest portions of Liquidation Loss Amounts and any principal portions of Liquidation Loss Amounts shall be treated as principal portions of Liquidation Loss Amounts and allocated (a) to REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, pro rata according to their respective REMIC I Principal Reduction Amounts, provided that such allocation to each of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4 shall not exceed their respective REMIC I Principal Reduction Amounts for such Payment Date, and (b) any Liquidation Loss Amounts not allocated to any of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3, or REMIC I Regular Interest LT4 pursuant to the proviso of clause (a) above shall be allocated to REMIC I Regular Interest LT1.

REMIC I Principal Reduction Amounts: For any Payment Date, the amounts by which the Uncertificated Principal Balances of the REMIC I Regular Interests will be reduced on such Payment Date by the allocation of REMIC I Liquidation Loss Amounts and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

Y1 = the Uncertificated Principal Balance of REMIC I Regular Interest LT1 after distributions on the prior Payment Date.

Y2 = the Uncertificated Principal Balance of REMIC I Regular Interest LT2 after distributions on the prior Payment Date.

Y3 = the Uncertificated Principal Balance of REMIC I Regular Interest LT3 after distributions on the prior Payment Date.

Y4 = the Uncertificated Principal Balance of REMIC I Regular Interest LT4 after distributions on the prior Payment Date (note: Y3 = Y4).

AY1 = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1.

AY2 = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT2.

AY3 = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT3.

AY4 = the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT4.

P0 = the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts on the prior Payment Date.

P1 = the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts to be made on such Payment Date.

AP = P0 - P1 = the aggregate of the REMIC I Principal Reduction Amounts.

=the aggregate of the principal portions of REMIC I Liquidation Loss Amounts to be allocated to, and the principal distributions to be made on, the Notes and the Certificates on such Payment Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Payment Dates).

R0 = the Net WAC Rate (stated as a monthly rate) after giving effect to amounts distributed and Liquidation Loss Amounts allocated on the prior Payment Date.

R1 = the Net WAC Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Liquidation Loss Amounts to be allocated on such Payment Date.

a = (Y2 + Y3)/P0. The initial value of a on the Closing Date for use on the first Payment Date shall be 0.0001.

a0 = the lesser of (A) the sum for all Classes of Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on such Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts on the prior Payment Date and (B) R0*P0.

a1 = the lesser of (A) the sum for all Classes Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts to be made on such Payment Date and (B) R1*P1.

Then, based on the foregoing definitions:

AY1 = AP - AY2 - AY3 - AY4;

AY2 = (a/2){( a0R1 - a1R0)/R0R1};

AY3 = aAP - AY2; and

AY4 = AY3.

if both AY2 and AY3, as so determined, are non-negative numbers. Otherwise:

(1)If AY2, as so determined, is negative, then

AY2 = 0;

AY3 = a{a1R0P0 - a0R1P1}/{a1R0};

AY4 = AY3; and

AY1 = AP - AY2 - AY3 - AY4.

(2)If AY3, as so determined, is negative, then

AY3 = 0;

AY2 = a{a0R1P1 - a1R0P0}/{2R1R0P1 - a1R0};

AY4 = AY3; and

AY1 = AP - AY2 - AY3 - AY4.

REMIC I Regular Interests: Each of the following separate non-certificated beneficial ownership interests in REMIC I having the properties set forth in the following table and elsewhere herein:

---------------------------------  -------------------------------  -------------------------------
- -------------------------------

| LATEST POSSIBLE | DESIGNATION | REMIC I REMITTANCE | INITIAL UNCERTIFICATED |
|---|---|---|---|

| FOR EACH REMIC I REGULAR<br>MATURITY | PRINCIPAL |
| INTEREST | | BALANCE |
| --- | --- | --- |
| - ----------------------------- | | |
| - ----------------------------- | ------------------------------ | ------------------------------ |
| - ----------------------------- | | |
| LT1<br>December 25, 2037 | Variable(1) | $1,280,368,923.78 |
| - ----------------------------- | ------------------------------ | ------------------------------ |
| - ----------------------------- | | |
| LT2<br>December 25, 2037 | Variable(1) | $42,834.61 |
| - ----------------------------- | ------------------------------ | ------------------------------ |
| - ----------------------------- | | |
| LT3<br>December 25, 2037 | Variable(1) | $85,223.61 |
| - ----------------------------- | ------------------------------ | ------------------------------ |
| - ----------------------------- | | |
| LT4<br>December 25, 2037 | Variable(1) | $85,223.61 |
| - ----------------------------- | ------------------------------ | ------------------------------ |

(1)    Calculated in accordance with the definition of "REMIC I Remittance Rate" herein.

REMIC I Remittance Rate: With respect to any Payment Date and (i) REMIC I Regular Interests LT1 and LT2, a per annum rate equal to the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date, (ii) REMIC I Regular Interest LT3, zero (0.00%), and (iii) REMIC I Regular Interest LT4, a per annum rate equal to twice the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests.

REMIC II Liquidation Loss Amounts: On any Payment Date, Liquidation Loss Amounts for the related Collection Period shall be allocated first to REMIC II Regular Interest SB-IO in reduction of the accrued and unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero, second to REMIC II Regular Interest SB-PO in reduction of the Uncertificated Principal Balance thereof until such Uncertificated Principal Balance shall have been reduced to zero and third to the Notes to the same extent, if any, that (i) amounts interest accrued on such Notes since the prior Payment Date remain unpaid after distributions on such Payment Date and (ii) the aggregate of the Class Principal Balances of the Notes following distributions on such Payment Date exceed the aggregate principal balance of the Loans by more than such excess, if any, after distributions on the immediately prior Payment Date.

REMIC II Regular Interest SB-IO: A regular interest in REMIC II with no entitlement to principal and entitled to (i) interest at the Certificate Rate on its Notional Amount and (ii) payments of prepayment charges.

REMIC II Regular Interest SB-PO: A regular interest in REMIC II with no entitlement to interest and entitled to principal in an amount equal to the Initial Certificate Balance and any amounts in the nature of prepayment charges received in connection with Loans, provided that any payment of prepayment charges shall not be deemed to reduce the Uncertificated Principal Balance of REMIC II Regular Interest SB-PO.

REMIC II Regular Interests: Each Class of the Notes and REMIC II Regular Interests SB-IO and SB-PO.

REMIC II Remittance Rate: With respect to each Class of Notes, the Note Rate for such Class. With respect to REMIC II Regular Interest SB-PO, 0% per annum. With respect to REMIC II Regular Interest SB-IO the Certificate Rate therefor.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and temporary and final regulations (or, to the extent not inconsistent with such temporary or final regulations, proposed regulations) and published rulings, notices and announcements promulgated thereunder, as the foregoing

may be in effect from time to time.

Remittance Rate: The REMIC I Remittance Rate or REMIC II Remittance Rate, as applicable.

Repurchase Event: With respect to any Mortgage Loan, either (i) a discovery that, as of the Closing Date with respect to an Initial Mortgage Loan or the related Subsequent Transfer Date with respect to any Subsequent Mortgage Loan, the related Mortgage was not a valid lien on the related Mortgaged Property subject only to (A) the lien of any prior mortgage indicated on the Mortgage Loan Schedule, (B) the lien of real property taxes and assessments not yet due and payable, (C) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are customarily accepted for similar loans and (D) other matters to which like properties are commonly subject that do not materially adversely affect the value, use, enjoyment or marketability of the related Mortgaged Property or (ii) with respect to any Mortgage Loan as to which either Seller delivers an affidavit certifying that the original Mortgage Note has been lost or destroyed, a subsequent default on such Mortgage Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of such original Mortgage Note.

Repurchase Price: With respect to any Mortgage Loan required to be repurchased on any date pursuant to the Purchase Agreement or purchased by the Servicer pursuant to the Servicing Agreement, an amount equal to the sum of (i) 100% of the Principal Balance thereof (without reduction for any amounts charged off), (ii) unpaid accrued interest at the Loan Rate (or with respect to the last day of the month in the month of repurchase, the Loan Rate will be the Loan Rate in effect as of the second to last day in such month) on the outstanding Principal Balance thereof from the Due Date to which interest was last paid by the related Mortgagor to the first day of the month following the month of purchase and (iii) in connection with any Mortgage Loan required to be repurchased pursuant to Sections 2.1 or 3.1 of the Purchase Agreement, any costs and damages incurred by the Trust with respect to such Mortgage Loan in connection with a breach of Section 3.1(b)(x) of the Purchase Agreement.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under the Servicing Agreement or the related Subservicing Agreement in respect of such Mortgage Loan.

Responsible Officer: With respect to the Indenture Trustee, any officer of the Indenture Trustee with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

Reuters Screen LIBOR01 Page0: The display page so designated on the Reuters system (or such other page as may replace Reuters Screen LIBOR01 Page on such service for the purpose of displaying London interbank offered rates of major banks, or, if such service is no longer offered, such other service for displaying London interbank offered rates or comparable rates as may be selected by the Indenture Trustee after consultation with the Servicer).

Rolling Six-Month Annualized Liquidation Loss Amounts: With respect to any Determination Date occurring after the fifth Determination Date, the product (expressed as a percentage) of (i) the aggregate Liquidation Loss Amounts as of the end of each of the six Collection Periods (reduced by the aggregate Subsequent Net Recovery Amounts for such Collection Periods) immediately preceding such Determination Date divided by the Initial Pool Balance and (ii) two (2).

Rolling Three Month Delinquency Percentage: With respect to any Payment Date and the Mortgage Loans, the arithmetic average of the Delinquency Percentages determined for such Payment Date and for each of the two preceding Payment Dates.

SB-IO Marker Rate: Two times the weighted average of the REMIC I Remittance Rates for REMIC I Regular Interests LT2 and LT3, weighted by their respective Uncertificated Principal Balances.

Secretary of State: The Secretary of State of the State of Delaware.

Securities Act: The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

Securitization Transaction: Any transaction involving a sale or other transfer of mortgage loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities.

Securities Balance: The Note Balance or Certificate Balance, as the context may require.

Security: Any Certificate or a Note, as the context may require.

Securityholder: Any Noteholder or Certificateholder.

Seller or Sellers: GMAC Mortgage, LLC, a Delaware limited liability company, and its

successors and assigns, and Walnut Grove Master Loan Trust 2003-A, a Delaware statutory trust, and its successors and assigns.

Servicer: GMAC Mortgage, LLC, a Delaware limited liability company, and its successors and assigns.

Servicer Advances: Any advances the Servicer may make with respect to the Mortgage Loans, whether or not required, in respect of principal, interest, taxes, insurance or otherwise.

Servicing Agreement: The servicing agreement dated as of the Closing Date among the Servicer, the Issuer and the Indenture Trustee.

Servicing Certificate: A certificate completed and executed by a Servicing Officer on behalf of the Servicer in accordance with Section 4.01 of the Servicing Agreement.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Default: Any one of the following events:

(i)    any failure by the Servicer to deposit in the Custodial Account, , the Note Payment Account or the Distribution Account any deposit required to be made under the terms of the Servicing Agreement that continues unremedied for a period of five Business Days after the date upon which written notice of such failure shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(ii)    any failure on the part of the Servicer duly to observe or perform in any material respect any other covenants or agreements of the Servicer set forth in the Securities or in the Servicing Agreement, which failure, in each case, materially and adversely affects the interests of the Securityholders or the Enhancer, and which failure continues unremedied for a period of 45 days after the date on which written notice of such failure, requiring the same to be remedied, and stating that such notice is a "Notice of Default" under the Servicing Agreement, shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(iii)    the entry against the Servicer of a decree or order by a court or agency or supervisory authority having jurisdiction under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Servicer or its property, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days;

(iv)    the Servicer shall voluntarily submit to Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law relating to the Servicer or of or relating to all or substantially all of its property; or the Servicer shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations;

(v)    the Servicer's Tangible Net Worth at any time is less than $100,000,000 and GMAC fails to own, directly or indirectly, at least 51% of the common stock of the Servicer; or

(vi)    the Rolling Six-Month Annualized Liquidation Loss Amount with respect to the Mortgage Loans exceeds 1.50%.

Servicing Fee: With respect to any Mortgage Loan and any Collection Period, the product of (i) the Servicing Fee Rate divided by 12 and (ii) the related Principal Balance as of the first day of such Collection Period.

Servicing Fee Rate:  0.50% per annum.

Servicing Officer: Any officer of the Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Indenture Trustee (with a copy to the Enhancer) by the Servicer, as such list may be amended from time to time.

Servicing Termination Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a)    the Rolling Three Month Delinquency Percentage is greater than 3.75% for the then-current Payment Date; or

(b)    on or after the Payment Date in December 2009, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| December 2009 to May 2010: 2009, plus an additional 1/6th thereafter; | 1.65% with respect to December of 0.40% for each month |
| June 2010 to May 2011: 2010, plus an additional 1/12th of thereafter; | 2.05% with respect to June 0.70% for each month |
| June 2011 to May 2012: 2011, plus an additional 1/12th of thereafter; | 2.75% with respect to June 0.85% for each month |
| June 2012 to May 2013: 2012, plus       an additional thereafter; and | 3.60% with respect to June 1/12th of 1.30% for each month |
| June 2013 and thereafter: | 4.90%. |

Servicing Trigger Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a) the Rolling Three Month Delinquency Percentage is greater than 3.25% for the then-current Payment Date; or

(b) on or after the Payment Date in December 2009, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| December 2009 to May 2010: 2009, plus an additional 1/6th thereafter; | 1.15% with respect to December of 0.40% for each month |
| June 2010 to May 2011: 2010, plus an additional 1/12th of thereafter; | 1.55% with respect to June 0.70% for each month |
| June 2011 to May 2012: 2011, plus an additional 1/12th of thereafter; | 2.25% with respect to June 0.85% for each month |
| June 2012 to May 2013: 2012, plus       an additional thereafter; and | 3.10% with respect to June 1/12th of 1.30% for each month |
| June 2013 and thereafter: | 4.40%. |

Standard & Poor's: Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successor in interest.

Stated Value: With respect to any Mortgage Loan, the stated value of the related Mortgaged Property determined in accordance with the Program Guide and given by the related Mortgagor in his or her application.

Statutory Trust Statute: Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code ss.ss.3801 et seq., as the same may be amended from time to time.

Stepdown Date: The later of (i) the Payment Date in January 2010 and (ii) the Payment Date on which the Overcollateralization Amount equals or exceeds 9.30% of the Pool Balance as of the last day of the month preceding the related Payment Date.

Subsequent Cut-Off Date: With respect to any Subsequent Mortgage Loan, the date specified in the related Subsequent Transfer Agreement.

Subsequent Cut-Off Date Principal Balance: With respect to any Subsequent Mortgage Loan, the Principal Balance thereof as of the close of business on the last day of the Collection Period immediately prior to the related Subsequent Cut-Off Date.

Subsequent Mortgage Loan: An mortgage loan sold by a Seller to the Issuer pursuant to Section 2.2 of the Purchase Agreement, such Mortgage Loan being identified on the Mortgage Loan Schedule attached to the related Subsequent Transfer Agreement, as set forth in such Subsequent Transfer Agreement.

Subsequent Net Recovery Amounts: Recovery Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Recovery Fee.

Subsequent Transfer Agreement: Each Subsequent Transfer Agreement dated as of a Subsequent Transfer Date executed by the respective Seller and the Issuer substantially in the form of Exhibit 2 to the Purchase Agreement, by which the related Subsequent Mortgage Loans are sold to the Issuer.

Subsequent Transfer Date: With respect to each Subsequent Transfer Agreement, the date on which the related Subsequent Mortgage Loans are sold to the Issuer.

Subservicer: Each Person that enters into a Subservicing Agreement as a subservicer of Mortgage Loans.

Subservicing Agreement: The written contract between the Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.01(b) of the Servicing Agreement.

Substitution Adjustment Amount: With respect to any Eligible Substitute Loan and any Deleted Loan, the amount, if any, as determined by the Servicer, by which the aggregate principal balance of all such Eligible Substitute Loans as of the date of substitution is less than the aggregate Principal Balance of all such Deleted Loans (after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Securityholders in the month of substitution).

Tangible Net Worth: Net Worth, less the sum of the following (without duplication): (a) any other assets of GMACM and its consolidated subsidiaries that would be treated as intangibles under GAAP including, without limitation, any write-up of assets (other than adjustments to market value to the extent required under GAAP with respect to excess servicing, residual interests in offerings of asset-backed securities and asset-backed securities that are interest-only securities), good-will, research and development costs, trade-marks, trade names, copyrights, patents and unamortized debt discount and expenses and (b) loans or other extensions of credit to officers of GMACM or its consolidated subsidiaries other than mortgage loans made to such Persons in the ordinary course of business.

Tax Matters Partner: GMACM, as the Servicer, for so long as the Servicer holds all or any portion of the Class R Certificates; if any other Person holds 100% of the Certificates, such Person; and otherwise as provided in the Code.

Tax Returns: The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of each REMIC due to their classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Transfer: Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transfer Date: The Payment Date on which the Servicer, upon receipt of written notice and direction from the Issuer, shall cause the retransfer of Mortgage Loans from the Trust Estate to the Issuer, pursuant to Section 3.15(c) of the Servicing Agreement.

Transfer Notice Date: The fifth Business Day prior to the Transfer Date for which the Servicer shall give the Indenture Trustee, the Rating Agencies and the Enhancer a notice of the proposed retransfer of Mortgage Loans, pursuant to Section 3.15(c) of the Servicing Agreement.

Transferee: Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor: Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Treasury Regulations: Regulations, including proposed or temporary Regulations, promulgated under the Code. References herein to specific provisions of proposed or temporary regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

Trust Agreement: The trust agreement dated as of the Closing Date, between the Owner Trustee and the Depositor.

Trust Estate: The meaning specified in the Granting Clause of the Indenture.

Trust Indenture Act or TIA: The Trust Indenture Act of 1939, as amended from time to time, as in effect on any relevant date.

UCC: The Uniform Commercial Code, as in effect from time to time, as in effect in any specified jurisdiction.

Unpaid Principal Amount: As defined in Section 3.05(a) of the Indenture.

Uncertificated Accrued Interest: With respect to any REMIC I Regular Interest for any Payment Date, one month's interest at the related REMIC I Remittance Rate for such Payment Date, accrued on the Uncertificated Principal Balance immediately prior to such Payment Date. Uncertificated Accrued Interest for the REMIC I and REMIC II Regular

Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Payment Date, any Prepayment Interest Shortfalls or Relief Act Shortfalls for such Payment Date shall be allocated among the REMIC I Regular Interests pro rata based on, and to the extent of, the Uncertificated Accrued Interest thereon, as calculated without the application of this sentence. With respect to any Payment Date and REMIC II Regular Interest SB-IO, one month's interest at the related Certificate Rate on the Notional Amount thereof reduced by its pro-rata share of any Prepayment Interest Shortfalls or Relief Act Shortfalls, but not reduced by amounts distributable pursuant to clauses (iv), (v) or (vi) of Section 3.05(a)(I) of the Indenture.

Uncertificated Principal Balance: With respect to any Payment Date and any REMIC I Regular Interest, the initial Uncertificated Principal Balance thereof as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC I Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(e) of the Trust Agreement. With respect to any Payment Date and REMIC II Regular Interest SB-PO, the Initial Certificate Balance reduced by the allocation to the principal thereof on prior Payment Dates of Liquidation Loss Amounts, to the extent such Liquidation Loss Amounts are allocated to the principal of the Class SB Certificates, and amounts deemed distributed with respect to such REMIC II Regular Interest.

Uncertificated Regular Interests: The REMIC I Regular Interests, REMIC II Regular Interest SB-IO and REMIC II Regular Interest SB-PO.

WG Trust 2003: Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust.

Yield Maintenance Agreement: The confirmation, dated as of the Closing Date, between the Indenture Trustee, on behalf of the Trust, and the YMA Provider, relating to the Class A-1 Notes and Class SB Certificates or any replacement, substitute, collateral or other arrangement in lieu thereof.

Yield Maintenance Payment: For any Payment Date, the payment, if any, due under the Yield Maintenance Agreement in respect of such Payment Date.

Yield Maintenance Shortfall Amount: For any Payment Date, the amount, if any, by which the payment on the Class A-1 Notes pursuant to Section 3.05(e) of the Indenture is paid from the Yield Maintenance Payments for such Payment Date pursuant to the provisions thereof or would have been so paid but for the failure of the YMA Provider to make a payment required under the Yield Maintenance Agreement.

YMA Provider: HSBC Bank USA, National Association, and its successors and assigns or any party to any replacement, substitute, collateral or other arrangement in lieu thereof.