**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                    )
In re:                              )    Chapter 11
                                    )
Residential Capital, LLC, *et al.*, )    Case No. 12-12020 (MG)
                                    )
               Debtors.             )    Jointly Administered
_____)

## DECLARATION OF K. AUSTIN MCQUILLEN

I, K. Austin McQuillen, declare as follows:

1. I submit this declaration in opposition to the relief requested by debtors and debtors in possession in the above-captioned cases (the "**Debtors**") in the Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of the Settlement Agreement (the "**Settlement Agreement**") Among Debtors, Financial Guaranty Insurance Company ("**FGIC**"), the Trustees of the FGIC Insured Trusts (as defined below) and Certain Institutional Investors.

2. I am a portfolio manager at Bayview Fund Management LLC, where I have worked for approximately five years. Prior to joining Bayview, I was an analyst for E*Trade Global Asset Management, where I evaluated mortgage-backed securities and other structured finance investments.

3. Bayview Fund Management LLC manages certain affiliated funds (collectively "Bayview") that have invested in securities that were issued by certain of the residential mortgage-backed securities trusts identified in Exhibit B of the proposed Settlement Agreement (the "**FGIC Insured Trusts**"). These securities are insured, or "wrapped," by FGIC pursuant to irrevocable insurance policies (the "**FGIC Policies**") for the benefit of the investors in the FGIC Insured Trusts. Bayview owns $786,832,592 in original face value of FGIC-

wrapped securities.  As of June 26, 2013, the current face value of these holdings was $361,854,620.

4.    Bayview initially valued the FGIC-wrapped securities based on the contents of the FGIC Rehabilitation Plan, as laid out in the Miller Affidavit.  It was my view then, and still is today, that the Rehabilitation Plan provides a conservative estimate of the value of expected recoveries because it contained conservative payout projections and omitted, among other things, any recoveries that FGIC could obtain from litigation.  *See* Miller Affidavit.  I consider the upside from pending litigation to be material.

5.    After it became public, Bayview analyzed the Settlement Agreement and I concluded that the $253.3 million Commutation Payment Amount is inadequate because the calculation only takes into account the claims component of the securities and ignores the value proposition associated with the potential and pending litigation.  Additionally, I do not agree with the discount rate applied to the claims component of the calculation.  Based on my experience in this industry, I believe the discount rate should be below 10%.

6.    When I compared the Rehabilitation Plan with the Commutation Payment Amount, it was clear to me that the Commutation Amount is not reasonable compensation for the forfeiture of the FGIC policies for two main reasons:

   a.    The Rehabilitation Plan's base case scenario forecasts that claims will be recovered over the Plan's life at a rate of 45%.  On a net present value with an assumed discount rate of 15% (that I don't think is appropriate), the recovery rate on all claims is approximately 28.5%.  FGIC itself has estimated that the total outstanding and estimated future claims for the ResCap policies at issue are approximately $1.2 billion (Holtzer Affirmation),

- 2 -

which when multiplied by 28.5% equals $342 million.  Using a more appropriate discount rate, that number would increase.

          b.     The exclusion of material litigation recoveries from the calculation of the Commutation Amount was based on the notion that litigation recovery items cannot be quantified.  Yet, at the same time, FGIC, the Debtors, and others reached a settlement agreement in which FGIC will recover a significant amount from ResCap in connection with its litigation claims.  In my experience, it is both necessary and appropriate to value litigation claims in conducting a valuation exercise.  The fact that the litigation claims were assigned a substantial value in the Settlement Agreement shows that the pending and potential litigation should have been considered when evaluating the Commutation Amount.

          7.     In my view, the failure to factor in the litigation claims along with the other infirmities noted above caused the Commutation Amount to be insufficient and results in the unfair treatment of the Trusts as compared to other FGIC claimants.  As such, it is my conclusion that the Trustees did not act reasonably or in good faith in entering into the FGIC Settlement Agreement, and that the FGIC Settlement Agreement is not in the best interests of Bayview.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed the 31st day of July, 2013, at New York, New York.

_____
K. Austin McQuillen