**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                    )
In re:                              )    Chapter 11
                                    )
Residential Capital, LLC, *et al.*,  )    Case No. 12-12020 (MG)
                                    )
            Debtors.                )    Jointly Administered
_____ )

## DECLARATION OF ADAM SKLAR

I, Adam Sklar, declare as follows:

1. I submit this declaration in opposition to the relief requested by debtors and debtors in possession in the above-captioned cases in the Debtor's Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of the Settlement Agreement (the "**Settlement Agreement**") Among Debtors, Financial Guaranty Insurance Company ("**FGIC**"), the Trustees of the FGIC Insured Trusts and Certain Institutional Investors.

2. I am a managing principal of Monarch, as well as co-portfolio manager of Monarch's structured credit funds. I have been employed by Monarch for approximately seven years. Prior to joining Monarch, I was an Analyst in the Financial Institutions Group at JP Morgan where I worked on advisory and corporate finance assignments for specialty finance clients.

3. My current responsibilities include researching corporate credits and structured credit investments, trading certain investments, and making select portfolio management decisions.

4. FGIC has insured certain securities issued by the trusts indicated in Exhibit B to the proposed Settlement Agreement (the "**FGIC Insured Trusts**") pursuant to irrevocable insurance policies (the "**FGIC Policies**"). Monarch owns $635,763,989.87 in

original face value of these FGIC-wrapped securities. As of June 26, 2013, the current face value of these holdings was $207,195,680.28.

   5. The analysis conducted by Lazard Frères & Co. LLC ("**Lazard**") as of May 2013 indicated a payout percentage of 45% in the Base Case, excluding litigation recoveries and prior to applying a discount rate. *See* Exhibit 1 to the Affidavit of Michael W. Miller in Further Support of Approval of First Amended Plan of Rehabilitation, at 6, dated December 12, 2012 (the "Miller Affidavit").

   6. Assuming FGIC were to obtain $1 billion in litigation recoveries, adding those recoveries to the Lazard analysis results in nominal recoveries of approximately 60%. This is consistent with Monarch's projected future recovery on the FGIC-wrapped securities of between 50% to 60%, or 30% to 35% on a present value basis. A payment of 21.3% pursuant to the FGIC Settlement Agreement is, therefore, significantly inferior to anticipated recoveries in the absence of the Settlement Agreement.

   7. The Commutation Payment of $253.3 million pursuant to the Settlement Agreement reflects a flat CPP, whereas Monarch projects an increasing CPP over time. The Commutation Amount, therefore, reflects a recovery consistent with Lazard's stress case scenario which in my view is inappropriate and leads to an inadequate recovery.

   8. The FGIC Settlement Agreement, insofar as it includes the Commutation Amount, uses an unsupportable discount rate in connection with the calculation of the present value of future cash flows. Discount rates are generally calculated based on the risk associated with projected cash flows. In this case, the underlying cash flows are tied to non-agency RMBS, a $900 billion market that is actively traded. Market participants price those cash flows on a yield basis. The implied yield on the bonds therefore provides a useful barometer for estimating

an appropriate discount rate. The non-agency RMBS market generally trades at implied yields of between 6% and 7%. A supportable discount rate here, therefore, would not exceed 10%.

9.  The Commutation will result in a reduction of amounts payable under the policies that would otherwise go to the investors in the ResCap FGIC-wrapped securities. By contrast, the Commutation will result in an increase of the amounts payable under the policies wrapping non-ResCap securities. In other words, because the Commutation eliminated significant liabilities from FGIC's balance sheet, the end result is a benefit to the FGIC estate and, therefore, to the non-ResCap FGIC policyholders who retain their pro rata share in the FGIC estate's assets.

10.  On June 3, 2013, I called Glenn Siegel, counsel to trustee U.S. Bank National Association and U.S. Bank Trust National Association, to discuss the Settlement Agreement. During that call, I expressed the view that the Commutation Payment is inadequate. Mr. Siegel acknowledged that the Trustees did not conduct a market value test and therefore were unaware of how market participants were pricing the FGIC-wrapped securities.

11.  The Trustees did not seek Monarch's consent before entering into the FGIC Settlement Agreement. Monarch would not have provided its consent had they done so.

12.  In my view, the FGIC Settlement Agreement is not in Monarch's best interests nor do I believe that the Trustees acted reasonably or in good faith in entering into the Agreement.

12.     I declare under penalty of perjury that the foregoing is true and correct.

Executed the 31st day of July, 2013, at New York, New York.

_____
Adam Sklar