**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Residential Capital, LLC, *et al*., | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

_____ )

### DECLARATION OF DAVID WILLIAMS

I, David Williams, declare as follows:

1.      I submit this declaration in opposition to the relief requested by debtors and debtors in possession in the above-captioned cases (the "Debtors") in the Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of the Settlement Agreement (the "**FGIC Settlement Agreement**") Among Debtors, Financial Guaranty Insurance Company ("**FGIC**"), the Trustees of the FGIC Insured Trusts (as defined below) and Certain Institutional Investors.

2.      Since graduating from NYU's Stern School of Business with a MBA in finance in 1991, I have worked in the structured finance and residential mortgage backed securities ("**RMBS**") markets.  During my more than 20 years working in this area, I have analyzed, structured, and invested in various structured products including RMBS and specifically monoline-wrapped securities.

3.      Before joining CQS five years ago, I worked at FSA (a monoline bond insurer) for 13 years, and before that I worked for 4 years at Prudential Securities.

4.      CQS purchased Rescap FGIC-wrapped bonds from 2007 through 2012. These FGIC-wrapped securities are insured by FGIC pursuant to irrevocable insurance policies issued by FGIC for the benefit of the investors in the FGIC Insured Trusts, which are those trusts

listed in Exhibit B to the proposed Settlement Agreement.  The original face value of CQS's

Rescap FGIC-wrapped securities is approximately $312 M and the current face value is

approximately $115 M.  Missed FGIC payments on CQS'sholdings through July 2013 are

approximately $19 M.

5.    As of Q1 2013, FGIC lists assets of approximately $2.1 B, not including

recoveries including various representation and warranty claims.

6.    Lazard Frères & Co. LLC ("**Lazard**") has estimated that FGIC's losses

will be $5.1 B on a present value basis.  CQS has estimated a slightly higher loss amount, which

includes municipal losses in the $300 M to $750 M range, on a present value basis.  The Lazard

analysis did not give credit for any potential recoveries.

7.    By taking FGIC's asset figure of $2.1 B and Lazard's loss figure of

$5.1 B, CQS estimates recoveries under the FGIC Rehabilitation Plan of approximately 40.7%,

before other recoveries (such as representation and warranty recoveries) are factored in.  When

representation and warranty recoveries are factored in CQS believes the ultimate nominal

recovery will be in the 52% to 57% range (see paragraph 9 below).

8.    The Commutation that forms part of the FGIC Settlement Agreement

provides for an average recovery of approximately 21%.  Affirmation of Gary T. Holtzer, dated

May 29, 2013.  However, pursuant to the Trustees' trust-by-trust loss allocations, several of

CQS's bonds are set to recover less than 15% under the FGIC Settlement Agreement.

9.    CQS has identified at least 14 FGIC-wrapped Countrywide trusts for

which FGIC has asserted representation and warranty claims against Bank of America.  On those

14 trusts, FGIC has paid approximately $765 M in claims and has received claims for an

additional approximately $919 M.  In addition, these trusts currently have approximately $184 M

of 30+ day delinquent loans.  The total of these 3 categories is approximately $1.87 B.  Recent

monoline settlements with Bank of America have been in the 33% to 45% range.  This would

provide FGIC with representation recoveries from Bank of America alone in the $600 M to

$840 M range.

10.     I have concluded that the Settlement Agreement is certainly not in the best

interest of CQS.  I have learned nothing that would support the notion that the Trustees of the

FGIC Trusts acted in good faith on our behalf.

11.     The FGIC Trustees did not seek and obtain CQS's consent before entering

into the FGIC Settlement Agreement.  Had they sought CQS's consent, CQS would not have

provided such consent because CQS is of the view that the FGIC Settlement Agreement provides

CQS with inadequate consideration for the commutation of the FGIC policies, and excludes CQS

from receiving additional payouts from FGIC subsequent to FGIC recovering on its

representation and warranty lawsuits.

12.     I declare under penalty of perjury that the foregoing is true and correct.


Executed the 31 day of July, 2013, at New York, New York.

                                                    _____
                                                              David Williams