# EXHIBIT E

# TIME SENSITIVE NOTICE
## REGARDING (A) PLAN SUPPORT AGREEMENT AMONG THE RESCAP DEBTORS AND THE RMBS TRUSTEES, AMONG OTHERS, AND (B) SETTLEMENT AGREEMENT AMONG THE DEBTORS, FINANCIAL GUARANTY INSURANCE COMPANY AND CERTAIN OF THE RMBS TRUSTEES

**NOTICE IS HEREBY GIVEN BY:**

**THE BANK OF NEW YORK MELLON,**
**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,**
**DEUTSCHE BANK NATIONAL TRUST COMPANY,**
**DEUTSCHE BANK TRUST COMPANY AMERICAS,**
**U.S. BANK NATIONAL ASSOCIATION,**
**WELLS FARGO BANK, N.A.,**
**HSBC BANK USA, N.A., AND**
**LAW DEBENTURE TRUST COMPANY OF NEW YORK**

**IN THEIR SEVERAL CAPACITIES AS TRUSTEES, MASTER SERVICERS, AND/OR INDENTURE TRUSTEES OR SEPARATE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS (THE "CERTIFICATEHOLDERS") OF CERTIFICATES, NOTES OR OTHER SECURITIES (COLLECTIVELY, THE "CERTIFICATES") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED ON SCHEDULE A AT http://www.rescaprmbssettlement.com (COLLECTIVELY, THE "TRUSTS" AND EACH A "TRUST").**

**THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE ITS RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.**

Dated: May 24, 2013

This notice (the "**Notice**") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), Indentures and related Servicing Agreements (collectively, the "**Governing Agreements**") governing the Trusts. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Governing Agreements.

**THIS NOTICE CONCERNS PROPOSED SETTLEMENTS IN A PLAN SUPPORT AGREEMENT, INCLUDING:[1]**

**1) A SETTLEMENT OF ALL THE TRUSTS' CLAIMS AGAINST THE DEBTORS IN THE CHAPTER 11 CASES, AND AFI, INCLUDING, WITHOUT LIMITATION, AND WHERE APPLICABLE, CLAIMS RELATING TO THE ORIGINATION AND SALE BY A DEBTOR OF MORTGAGE LOANS TO THE TRUSTS, AND CLAIMS ARISING OUT OF A DEBTOR'S SERVICING OF THE MORTGAGE LOANS; AND**

**2) A SETTLEMENT OF, AMONG OTHER THINGS, THE CLAIMS OF CERTAIN OF THE TRUSTS AGAINST FINANCIAL GUARANTY INSURANCE CORPORATION ("FGIC") UNDER THE INSURANCE POLICIES ISSUED BY FGIC IN RESPECT OF THE TRUSTS. A LIST OF THOSE TRUSTS AFFECTED BY THE FGIC SETTLEMENT IS AVAILABLE AT http://www.rescaprmbssettlement.com AS SCHEDULE B.**

**IF CERTIFICATEHOLDERS DO NOT OBJECT TO THESE SETTLEMENTS BEFORE THE DEADLINE OF JUNE 19, 2013 AT 4:00 P.M. (PREVAILING EASTERN TIME) TO OBJECT TO THE PLAN SUPPORT AGREEMENT MOTION, SUCH CERTIFICATEHOLDERS MAY BE PRECLUDED FROM OBJECTING TO THE PLAN AND THE BANKRUPTCY COURT MAY FIND THAT SUCH CERTIFICATEHOLDERS DO NOT HAVE STANDING TO OBJECT.**

**EACH OF THE PROPOSED SETTLEMENTS, IF APPROVED BY THE BANKRUPTCY COURT, AND ADDITIONALLY IN THE CASE OF THE FGIC SETTLEMENT AGREEMENT, BY THE NEW YORK STATE SUPREME COURT, WOULD BIND EACH APPLICABLE TRUST AND THE RELATED CERTIFICATEHOLDERS. THE PROPOSED SETTLEMENTS MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS. THE RMBS TRUSTEES THEREFORE RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.**

## I.     Background -- Residential Capital Bankruptcy Filing

On May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "**ResCap**" or the "**Debtors**") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") (*In re Residential Capital, LLC*, Case No. 12-12020 (MG) and related cases) (collectively, the "**Chapter 11 Cases**"). To obtain information regarding the Chapter 11 Cases, please see Section VI, below.

## II.    The Plan Support Agreement and Term Sheets

On May 13, 2013, the Debtors, Ally Financial Inc. ("**AFI**"), the Official Committee of Unsecured Creditors (the "**Committee**"), and the Consenting Claimants (as defined in the Plan Support Agreement, which defined term includes the RMBS Trustees; collectively with the Debtors, AFI, and the Committee, the "**Plan Support Agreement Parties**") entered into the Plan Support Agreement

---

[1] Terms not otherwise defined in these initial summary paragraphs are defined below.

2

(the "**Plan Support Agreement"**) pursuant to which the Plan Support Agreement Parties agreed to the terms of a consensual Chapter 11 plan of reorganization (the "**Plan**") and resolution of all claims and disputes between them as set forth in the Plan Term Sheet (the "**Plan Term Sheet**") and the Supplemental Term Sheet[2] (the "**Supplemental Term Sheet**," together with the Plan Term Sheet, the "**Term Sheets**") attached respectively as Exhibits A and B to the Plan Support Agreement. Copies of the Plan Support Agreement and the Term Sheets are available at **http://www.rescaprmbssettlement.com** or from The Garden City Group ("**GCG"**) by contacting GCG in the manner described in Section VI, below.

The Plan Support Agreement and the Term Sheets provide for a payment by AFI to the Debtors' estates and its creditors totaling $2.1 billion and for an agreed upon division of that amount, as well as ResCap's other available assets, among all ResCap creditors.  More specifically with respect to the Trusts, the Plan Support Agreement and Term Sheets settle (a) the claims of those Trusts (the "**Original Settlement Trusts**") that were originally included in the RMBS Trust Settlement Agreements, dated May 13, 2012, as amended, against the Debtors arising, among other things, from the origination and sale by the Debtors of mortgage loans (the "**Buyback Claims**"), (b) the Buyback Claims, if any, held by those Trusts that are not Original Settlement Trusts (the "**Additional Settlement Trusts**"), and (c) claims held by certain of the Trusts against the Debtors relating to alleged defaults under any servicing agreements or other executory contracts that were assumed by the Debtors and assigned to Ocwen Loan Servicing LLC or other successor servicers, if any, pursuant to the Bankruptcy Court's orders approving the sale of the Debtors' mortgage servicing rights or similar orders regarding the assignment or other disposition of such agreements(the "**Cure Claims**," and together with the Buyback Claims, the "**Claims**").  All the Claims that the Trusts have against AFI and ResCap will be released under the Plan in exchange for the consideration to be received pursuant to the Plan.

If the Plan Support Agreement is approved by the Bankruptcy Court, the RMBS Trustees will vote in favor of the Plan on behalf of each Trust, and the Certificateholders will be precluded from providing contrary direction to the RMBS Trustees with respect to the Plan.

**Under the Plan, if confirmed, all entities, including the Trusts, will be permanently enjoined after the effective date of the Plan, from commencing any actions against any of the Plan Support Agreement Parties with respect to the Claims.  Pursuant to the Plan Support Agreement, it is contemplated that the Bankruptcy Court's order approving the Plan Support Agreement will contain findings that (a) the Plan Support Agreement, the Term Sheets, the RMBS Settlement (as defined in the Plan Support Agreement), and the FGIC Settlement Agreement contemplated thereunder are in the best interests of the investors in each of the RMBS Trusts, each such RMBS Trust and the RMBS Trustees, (b) the RMBS Trustees have acted reasonably, in good faith and in the best interests of the investors in each RMBS Trust and each such RMBS Trust in agreeing to the Plan Support Agreement, the Term Sheets, the RMBS Settlement, and the FGIC Settlement Agreement contemplated thereunder, and (c) the RMBS Trustees' notice of the Plan Support Agreement, the RMBS Settlement, the Term Sheets, and the FGIC Settlement Agreement was sufficient and effective.  It is further contemplated that the order confirming the Plan will contain exculpatory provisions barring any entity from making any claim against the**

---

[2] The Supplemental Tern Sheet was agreed to by the Plan Support Agreement Parties on May 23, 2013, as contemplated by the Plan Term Sheet.

3

**Plan Support Agreement Parties, including the RMBS Trustees, arising from their agreement to enter into the Plan Support Agreement, their consent to the terms in the Terms Sheets, or their agreement to support the Plan.**

The Supplemental Term Sheet sets forth the approximate percentage of ResCap assets and the amounts contributed by AFI that will be distributed under the Plan for the benefit of all the Trusts that have Claims.[3] The allocation of such settlement amounts among the Trusts (the "**Allocation**") shall be determined by the RMBS Trustees pursuant to the advice of Duff & Phelps, LLC ("**Duff & Phelps**"), the primary financial advisor retained by the RMBS Trustees, and upon which advice the RMBS Trustees shall exclusively rely upon for the determination of the Allocation. For all Trusts other than the Original Settlement Trusts, the Buyback Claims will be subject to further review, including objections as to the existence or amount of such claims asserted by the Institutional Investors (as defined in the Plan Support Agreement).

Information concerning the methodology to be used by Duff & Phelps to perform the Allocation can be found in Annex III and Schedule A to Annex III to the Supplemental Term Sheet, as amended from time to time. Pursuant to the Allocation, the percent recovery on the Claims of any Trust will likely vary materially from, and in all cases be lower than, the recovery of other claims allowed against the relevant Debtors' estates. This variation will be caused by a number of factors including, but not limited to: (i) the inclusion in the Allocation of the claims of the Additional Settlement Trusts and the inclusion of Cure Claims, none of which were fully factored into the Debtors' claims models, but which are, as a result of the settlement under the Plan Support Agreement, required to be paid out of the fixed aggregate allowed claims and recoveries to be received by the Trusts, and (ii) the determinations made, and to be made, by Duff & Phelps as required by the RMBS Trust Allocation Protocol attached to the Supplemental Term Sheet as Annex III, including Schedule A thereto.

*Please note that, based on each Trust's Governing Agreements and the facts and circumstances surrounding each Trust, each Trust has its own unique claim against one or more of the Debtors. As a result, not all Trusts will be allocated amounts in respect of Cure Claims and not all Additional Settlement Trusts will be allocated amounts in respect of Buyback Claims. Further, the amounts available for distribution from the estate of each Debtor will differ. Thus, the amounts recovered by each Trust may vary considerably, and some Trusts may not be entitled to any recovery, including certain Trusts that are subject to insurance policies issued by certain monoline insurance companies.*

On May 23, 2013, the Debtors filed with the Bankruptcy Court a motion to approve the Plan Support Agreement (the "**Plan Support Agreement Motion**") and to authorize the RMBS Trustees and ResCap to enter into the Plan Support Agreement. Pursuant to the Term Sheets, the Bankruptcy Court is to enter an order approving the Plan Support Agreement by no later than July 3, 2013. **The hearing on the Plan Support Agreement Motion is scheduled for June 26, 2013 at 10:00 a.m. (prevailing Eastern Time), and objections, if any, must be filed and served by June 19, 2013 at 4:00 p.m. (prevailing Eastern Time).** The Plan Support Agreement Motion and any notices and pleadings regarding same are available or will be available shortly after they are filed at **http://www.rescaprmbssettlement.com**, or by contacting

---

[3] Trusts for which an RMBS Trustee acts as master servicer and for which no other RMBS Trustee acts as trustee are identified on Schedule A by an asterisk. Pursuant to the Plan Support Agreement, any allowed Buyback Claims that any such Trusts may have will be included in, and treated consistently with, the Plan Support Agreement. Certificateholders of such Trusts should contact their trustees with respect to matters described in this Notice.

4

GCG in the manner described in Section VI, below.  The RMBS Trustees intend to provide evidence to support certain findings in the proposed order approving the Plan Support Agreement Motion.  To the extent filed, the RMBS Trustees' additional evidence will be available at **http://www.rescaprmbssettlement.com** and from GCG not less than fourteen (14) days before the hearing on the Plan Support Agreement Motion.

**Pursuant to the Plan Support Agreement, if Certificateholders do not desire the Trusts in which they hold Certificates to be bound by the Plan Support Agreement and the Term Sheets, they have the option, if they meet the requirements set forth in the applicable Governing Agreements, to issue a direction, which shall include an indemnity satisfactory to the applicable RMBS Trustee, directing the RMBS Trustee to withdraw its execution of the Plan Support Agreement in respect of the applicable Trust.  Any direction and indemnity must be in a form satisfactory to the applicable RMBS Trustee and must be received by such RMBS Trustee on or before June 19, 2013.  Any Certificateholder that intends to issue such a direction is strongly urged to contact the relevant RMBS Trustee as soon as possible.  If the Plan Support Agreement is approved by the Bankruptcy Court, the RMBS Trustees will vote in favor of the Plan on behalf of each Trust, and the Certificateholders will be precluded from providing contrary direction to the RMBS Trustees with respect to the Plan.**

Upon acceptance by the RMBS Trustee of any Trust of a valid and satisfactory direction to withdraw its execution of the Plan Support Agreement, that RMBS Trustee shall withdraw its execution of the Plan Support Agreement on behalf of such Trust and such Trust will no longer be subject to the Plan Support Agreement.  **The relevant RMBS Trustee may determine not to accept such an instruction for a number of reasons, including, but not limited to, its determination that (a) Certificateholders having greater voting rights in such Trust have indicated, in a manner satisfactory to such RMBS Trustee, their support for the Plan Support Agreement, (b) the indemnification tendered is insufficient in any respect, or (c) the direction tendered is not in the best interests of the Trust.  Any claims of a withdrawing Trust against the Debtors must be pursued individually against the appropriate Debtors**.

**Even if the Certificateholders provide a valid direction to the RMBS Trustees to withdraw their execution of the Plan Support Agreement in respect of the applicable Trust, the Plan Proponents (as defined in the Plan Support Agreement) may still seek confirmation of the Plan that provides the same treatment of that Trust's Claims as set forth in the Plan Support Agreement.  Certificateholders who provide a valid direction to the RMBS Trustees to withdraw their execution of the Plan Support Agreement will maintain their ability to object to the treatment of the applicable Trust's Claims under the Plan, although the Bankruptcy Court may find that such Certificateholders lack standing to object.**

**Certificateholders may also individually object to the Plan Support Agreement by filing and serving an objection to the Plan Support Agreement Motion by June 19, 2013 at 4:00 p.m. (prevailing Eastern Time) pursuant to the terms of the Plan Support Agreement Motion and any accompanying notices filed regarding the Plan Support Agreement Motion**.

5

*If a Certificateholder (a) does not file a timely objection to the Plan Support Agreement, (b) files a timely objection that is overruled by the Bankruptcy Court, or (c) does not timely issue a valid direction and indemnity to its respective RMBS Trustee to withdraw its execution of the Plan Support Agreement with respect to any Trust, and the Plan Support Agreement is approved by the Bankruptcy Court, the Certificateholder will be bound by the the Plan Support Agreement and the Plan once it is confirmed and becomes effective, including with respect to its recovery, if any, in respect of its Certificates pursuant to the Allocation and with respect to the releases as set forth in the Term Sheets.*

**CERTIFICATEHOLDERS ARE URGED TO REVIEW THE PLAN SUPPORT AGREEMENT AND TERM SHEETS CAREFULLY AND TO CONSULT WITH THEIR ADVISORS.**

### III.     The FGIC Settlement Agreement

The Plan Support Agreement incorporates a settlement agreement (the "**FGIC Settlement Agreement**") dated May 23, 2013, pursuant to which ResCap, FGIC, The Bank of New York Mellon and the Bank of New York Mellon Trust Company, N.A., US Bank National Association, Wells Fargo Bank, N.A., and Law Debenture Trust Company of New York (collectively, the "**FGIC Trustees**") as trustees or separate trustees under certain Trusts (the "**FGIC Trusts**") as set forth in the FGIC Settlement Agreement (as defined below) (collectively, the "**FGIC Settlement Parties**") settled their claims against each other, including the claims of the FGIC Trusts against FGIC for claims under the insurance policies issued by FGIC (the "**Policies**") in respect of the FGIC Trusts.[4]  Pursuant to the terms of the FGIC Settlement Agreement, among other things, (a) each FGIC Settlement Party shall release the other FGIC Settlement Parties in respect of the Policies and other Policy Agreements (as defined in the FGIC Settlement Agreement), (b) FGIC will pay to the FGIC Trusts certain amounts in settlement of the FGIC Trusts' claims against FGIC as set forth in the FGIC Settlement Agreement, (c) the FGIC Trustees shall release the Debtors in respect of Origination-Related Provisions (as defined in the FGIC Settlement Agreement), (d) the Policies and other Policy Agreements will be commuted, (e) FGIC will not be liable for any further payments under the Policies and other Policy Agreements, and (f) the FGIC Trusts will no longer make premium, reimbursement, or other payments to FGIC.  Copies of the FGIC Settlement will be made available on or after May 29, 2013 at **http://www.rescaprmbssettlement.com** or from GCG by contacting GCG in the manner described in Section VI, below.

By May 29, 2013, an affirmation (the "**Affirmation**") in support of a motion seeking approval of the FGIC Settlement Agreement will be filed in the New York State Supreme Court with jurisdiction over FGIC's rehabilitation proceeding (the "**State Court**"), and by June 4, 2013, a motion to approve the FGIC Settlement Agreement (the "**FGIC Motion**") will be filed in the Bankruptcy Court.  The FGIC Settlement Agreement shall not become effective unless and until it is approved by the Bankruptcy Court and the State Court.  In the Bankruptcy Court, the notice filed regarding the FGIC Motion will include the hearing date on the FGIC Motion and the

---

[4]  The Supplemental Term Sheet sets forth the  terms of any settlements with the other monoline insurance companies that are among the Plan Support Agreement Parties.  To the extent monoline insurance companies are not parties to the Plan Support Agreement, the Trusts reserve any and all claims against them.

6

procedures for objecting to same.  The FGIC Settlement Agreement, the FGIC Motion, the Affirmation, and any notices will be available once they have been filed at **http://www.rescaprmbssettlement.com** or from GCG by contacting GCG in the manner described in Section VI, below.

**Any Certificateholder of a FGIC Trust may object to the approval of the FGIC Settlement Agreement in the Bankruptcy Court pursuant to the terms of the FGIC Motion.  Any Certificateholder of a FGIC Trust also might have an opportunity in the State Court to object to the Affirmation and approval of the FGIC Settlement Agreement.**

*If a Certificateholder of a FGIC Trust does not file a timely objection to the FGIC Settlement Agreement Motion or if such Certificateholder's  timely objection is overruled, so long as the FGIC Settlement Agreement  and the Plan Support Agreement are approved by the Bankruptcy Court and the State Court, and the Bankruptcy Court confirms the Plan, such Certificateholder will be bound by the terms of the FGIC Settlement Agreement.*

**CERTIFICATEHOLDERS OF A FGIC TRUST ARE URGED TO CAREFULLY REVIEW THE FGIC SETTLEMENT AGREEMENT ONCE IT IS AVAILABLE AND TO CONSULT WITH THEIR ADVISORS.**

### IV. Other RMBS Trusts that Have an Insurance Policy with a Monoline Insurance Company.

Pursuant to the Plan Support Agreement and the Term Sheets, any RMBS Trust that has an insurance policy with a Monoline (as defined in the Plan Support Agreement) reserves the ability to enforce its rights, in the Bankruptcy Court or otherwise, against any Monoline (other than FGIC) that does not, in the future, perform in accordance with an insurance policy for the benefit of that Trust.

### V. This Notice Is a Summary.

This Notice is not intended as, nor does not provide, a detailed restatement of the Plan Support Agreement, the Term Sheets, the RMBS Settlement or the FGIC Settlement Agreement, relevant law or relevant legal procedures.  The RMBS Trustees, do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to review carefully the Plan Support Agreement, the Term Sheets, the FGIC Settlement Agreement, any related notices, and other related pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors.

### VI. Other Sources of Information.

The Committee appointed in the Chapter 11 Cases has established an official website (the "**Committee Website**"), on which basic information concerning the Chapter 11 Cases has been posted, including, but not limited to, relevant contact information, upcoming dates and deadlines, statements and schedules filed by ResCap and a list of answers to frequently asked questions.  The Committee Website can be reached at **http://dm.epiq11.com/RES/Project**.

Information relevant to the Plan Support Agreement Motion, the Plan, the Affirmation, the FGIC Settlement Agreement, and any notices thereof will be available at **http://www.rescaprmbssettlement.com,** which will be updated regularly with related material documents filed or orders entered by the Bankruptcy Court or the State Court.  If a Certificateholder has any questions or would like to request copies of any of the relevant documents, Certificateholders may call GCG at (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States, or send an email to **questions@ rescaprmbssettlement.com**.

Certificateholders may also obtain any documents filed with the Bankruptcy Court in the Chapter 11 Cases by visiting ResCap's claims agent website at **http://www.kccllc.net/rescap,** or by logging on to PACER at **https://www.uscourts.gov** (a small fee is charged for this service).  Documents filed in the Chapter 11 Cases may also be viewed during normal business hours at the Clerk's Office of the Bankruptcy Court, located at One Bowling Green, New York, New York 10004.

Inquiries with respect to any particular Trust for which The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, or US Bank National Association, Wells Fargo Bank, N.A., serves as RMBS Trustee may be directed to the RMBS Trustee for such Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at **http://www.rescaprmbssettlement.com**.  With respect to those Trusts for which HSBC Bank USA, N.A. serves as RMBS Trustee, inquiries may be directed to **US.CTLA.Structured.Unit@us.hsbc.com**.  With respect to those Trusts for which Law Debenture Trust Company of New York serves as RMBS Trustee, inquires may be directed to **nytrustco@lawdeb.com.  With respect to all other trusts, Certificateholders of those trusts should refer to their respective Governing Agreements for contact information.**

## VII.  Other Matters.

Certificateholders and other persons interested in the Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors, officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or acquiescence therein.

Each of the RMBS Trustees expressly reserves its rights under each applicable Governing Agreement, including without limitation, its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION, WELLS FARGO BANK, N.A., HSBC BANK USA, N.A., AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, severally, as trustees, master servicers, and/or indenture trustees or separate trustees of the Trusts