Hearing Date and Time: August 21, 2013 at 10:00 a.m. (EST)
Objection Deadline: August 14, 2013 at 4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF PRELIMINARY HEARING REGARDING JOINT MOTION PURSUANT
TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 FOR AN ORDER
(1) GRANTING CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY,
(2) APPOINTING CLASS REPRESENTATIVE AND CLASS COUNSEL FOR
PURPOSES OF SETTLEMENT ONLY, (3) PRELIMINARILY APPROVING THE
SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS, ON THEIR OWN BEHALF
AND ON BEHALF OF THE CLASS OF SIMILARLY SITUATED PERSONS, AND THE
DEBTORS, (4) APPROVING THE FORM AND MANNER OF NOTICE TO THE
CLASS, (5) SCHEDULING A FAIRNESS HEARING TO CONSIDER APPROVAL OF
THE SETTLEMENT AGREEMENT ON A FINAL BASIS AND RELATED RELIEF
AND (6) APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS
AND GRANTING RELATED RELIEF**

PLEASE TAKE NOTICE that, on July 31, 2013, the prospective class representatives

Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard

(collectively, the "**Named Plaintiffs**"), on behalf of themselves and similarly situated class

members, and the above captioned debtors and debtors in possession (collectively, the

"**Debtors**") filed the Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and

9019 For An Order (1) Granting Class Certification for Purposes of Settlement Only, (2)

Appointing Class Representative and Class Counsel for Purposes of Settlement Only, (3)

Preliminarily Approving the Settlement Agreement Between Plaintiffs, On Their Own Behalf

and On Behalf of the Class of Similarly Situated Persons, and the Debtors, (4) Approving the

Form and Manner of Notice to the Class, (5) Scheduling a Fairness Hearing to Consider

Approval of the Settlement Agreement on a Final Basis and Related Relief and (6) Approving the Settlement Agreement on a Final Basis and Granting Related Relief (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the preliminary relief requested in the Motion (the "Preliminary Hearing") shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 501, One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**") on **August 21, 2013 at 10:00 a.m. (prevailing Eastern time**), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any objection to the preliminary relief requested in the Motion to be considered at the Preliminary Hearing must be in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties-in-interest, on a 3.5 inch disk or CD-ROM, preferably in Portable Document Format, WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-399 and in accordance with this Court's order, dated May 23, 2012, implementing certain notice and case management procedures [Docket No. 141], so as to be received no later than **August 14, 2013 at 4:00 p.m. (prevailing Eastern Time) (**the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no objection to the preliminary relief requested in the Motion is timely filed and served, the Bankruptcy Court may enter an order granting the preliminary relief requested in a Motion without further notice or opportunity to be heard afforded to any party.

Dated: July 31, 2013
　　　　New York, New York

<div style="margin-left:50%">

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
*Counsel for the Debtors and
Debtors in Possession*

</div>

3

Hearing Date and Time:  August 21, 2013 at 10:00 a.m. (EST)
Objection Deadline: August 14, 2013 at 4:00 p.m. (EST)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Case No. 12-12020 (MG) |
| **Debtors.** | (Jointly Administered) |

**JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 FOR AN ORDER (1) GRANTING CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY, (2) APPOINTING CLASS REPRESENTATIVE AND CLASS COUNSEL FOR PURPOSES OF SETTLEMENT ONLY, (3) PRELIMINARILY APPROVING THE SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS, ON THEIR OWN BEHALF AND ON BEHALF OF THE CLASS OF SIMILARLY SITUATED PERSONS, AND THE DEBTORS, (4) APPROVING THE FORM AND MANNER OF NOTICE TO THE CLASS, (5) SCHEDULING A FAIRNESS HEARING TO CONSIDER APPROVAL OF THE SETTLEMENT AGREEMENT ON A FINAL BASIS AND RELATED RELIEF AND (6) APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS AND GRANTING RELATED RELIEF**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................2

JURISDICTION AND VENUE ...................................................................................4

BACKGROUND ..........................................................................................................5

    A.    The Chapter 11 Cases ...............................................................................5

    B.    The Class Action .......................................................................................6

    C.    Summary of the Settlement Agreement...................................................11

RELIEF REQUESTED ...............................................................................................19

BASIS FOR RELIEF REQUESTED ...........................................................................20

    A.    Certification of Kessler Settlement Class................................................20

    B.    Appointment of Proposed Class Counsel ...............................................28

    C.    The Court Should Preliminarily Approve the Settlement Agreement and
           Enter the Preliminary Approval Order ....................................................29

    D.    Approval of Notice of the Settlement Agreement ..................................31

    E.    The Settlement Should Be Approved on a Final Basis Pursuant to Federal
           Rule 23(e) and Bankruptcy Rule 9019 after the Fairness Hearing.....................33

CONCLUSION ...........................................................................................................50

NOTICE ......................................................................................................................50

NO PRIOR REQUEST................................................................................................51

i

## TABLE OF AUTHORITES

**Page(s)**

CASES

*Aramburu v. Healthcare Financial  Services, Inc.*,
No. 02-CV-6535 (MDG), 2009 WL 1086938 (E.D.N.Y. Apr. 22, 2009) ...............................37

*Assif v. Titleserv, Inc.*,
288 F.R.D. 18 (E.D.N.Y. 2012) ...................................................................................................22

*Bankers Trust Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988) .......................................................................................................10

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated
Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) .......................................................................36

*Clark v. Ecolab, Inc.*,
No. 07 Civ. 8623 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) .............................29

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ...........................................................................................................22

*Cosoff v. Rodman (In re W.T. Grant Co.)*
699 F.2d 599 (2d Cir. 1983). ........................................................................................................46

*D'Amato v. Deutsche Bank*,
236 F.3d 78  (2d Cir. 2001) ...........................................................................................................34

*Danieli v. IBM*,
No. 08 CV 3688 (SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ...............................30

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ........................................................................................................44

*E.E.O.C. v. McDonnell Douglas Corp.*,
894 F.Supp. 1329 (E.D. Mo. 1995) .............................................................................................35

*Eisen v. Carlisle & Jacquelin, et al.*,
417 U.S. 156 (1974) .......................................................................................................................33

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993) ......................................................................................................36

*Great Neck Capital Appreciation Investment Partnership, L.P. v.
PriceWaterhouseCoopers, L.L.P. (In re Harnischfeger Industries, Inc.)*,
212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................................43, 44

ii

*In re Adelphia Communications Corp.*,
  327 B.R. 143 (Bankr. S.D.N.Y. 2005) ...................................................46

*In re Austrian & German Bank Holocaust Litigation*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....................................................35

*In re Bear Stearns Companies, Inc. Securities, Derivative, & ERISA Litigation*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................39

*In re BGI, Inc.*,
  465 B.R. 365 (Bankr. S.D.N.Y. Feb. 17, 2010) .............................passim

*In re Community Bank of Northern Virginia.*,
  418 F.3d 277 (3d Cir. 2005) ..........................................................passim

*In re Community Bank of Northern Virginia*,
  622 F.3d 275 (3d Cir. 2010) ..........................................................passim

*In re Dewey & LeBoeuf LLP*,
  478 B.R. 627 (Bankr. S.D.N.Y. 2012) ............................................45, 46

*In re Drexel Burnham Lambert Group*,
  134 B.R. 493 (Bankr. S.D.N.Y. 1991) ..................................................45

*In re EVCI Career Colleges Holding Corp. Securities Litigation*,
  Nos. 05 Civ. 10240 (CM) *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)...........31

*In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*,
  55 F.3d 768 (3d Cir. 1995) ...................................................................35

*In re IKON Office Solutions, Inc. Securities Litigation*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................44

*In re Initial Public Offering Securities Litigation*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ...........................................................29

*In re Initial Public Offering Securities Litigation*,
  243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................36

*In re Katrina Canal Breaches Litigation*,
  628 F.3d 185 (5th Cir. 2010) ................................................................49

*In re Martin*,
  91 F.3d 389 (3d Cir. 1996) ...................................................................46

*In re Merrill Lynch Tyco Research Securities Litigation*,
  249 F.R.D. 124 (S.D.N.Y. 2008).............................................................49

iii

*In re Michael Milken & Associates Securities Litigation,*
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................... 32

*In re PaineWebber Limted Partnerships Litigation,*
   171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd sub nom. In re PaineWebber Inc. Ltd.*
   *Partnerships Litigation,* 117 F.3d 721 (2d Cir. 1997) ................................. 40, 41, 42

*In re Penthouse Executive Club Compensation Litigation,*
   Master File No. 10 Civ. 1145 (KMW), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 3013) .... 20, 30

*In re Traffic Executive Association,*
   627 F.2d 631 (2d Cir. 1980) ................................................................ 29

*In re Trinsum Group, Inc.,*
   No. 08-12547 (MG), 2013 WL 1821592 (Bankr. S.D.N.Y. Apr. 30, 2013) .................... 45, 46

*In re Vitamin C Antitrust Litigation,*
   No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ................ 42, 49

*In re Wachovia Equity Securities Litigation,,*
   No. 08 Civ. 6171 (RJS), 2012 WL 2774969 (S.D.N.Y. June 12, 2012) ......................... 39, 49

*In re Warner Communication Securities Litigation,*
   618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................ 40

*In re WorldCom, Inc.,*
   347 B.R. 123 (Bankr. S.D.N.Y. 2006) ..................................................... 35, 41

*In re WorldCom, Inc. Securities Litigation,*
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................... 48, 49

*International Union, United Automobile, Aerospace, & Agricultural Implement Workers*
   *of America v. General Motors Corp.,*
   497 F.3d 615 (6th Cir. 2007) ............................................................. 49

*Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.),*
   336 B.R. 87 (Bankr. D. Del. 2005) ....................................................... 46

*Marisol A. v. Giuliani,*
   126 F.3d 372 (2d Cir. 1997) ............................................................. 24

*Mba v. World Airways, Inc.,*
   369 Fed. Appx. 194 (2d Cir. 2010) ...................................................... 36

*Nellis v. Shugrue,*
   165 B.R. 115 (S.D.N.Y. 1994) .......................................................... 46

iv

*Nelson v. Waring,*
  602 F. Supp. 410 (N.D. Miss. 1983) ................................................................. 43

*Oppenlander v. Standard Oil Co.,*
  64 F.R.D. 597 (D. Colo. 1974) ....................................................................... 37

*Ortiz v. Fibreboard Corp.,*
  527 U.S. 815 (1999) ........................................................................................ 48

*Potomac Electric Power Co. v. Electric Motor and Supply, Inc.,*
  262 F.3d 260 (4th Cir. 2001) .......................................................................... 10

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ............................................................................ 24

*Sedima, S.P.R.L. v. Imrex Co., Inc.,*
  473 U.S. 479 (1985) ........................................................................................ 10

*Silver v. 31 Great Jones Restaurant,*
  No. 11 CV 7442 (KMW) (DCF), 2013 WL 208918 (S.D.N.Y. Jan. 4, 2013) ....................... 29

*Six West Retail Acquisition, Inc. v. Loews Cineplex Entertainment Corp.,*
  286 B.R. 239 (S.D.N.Y. 2002) ........................................................................ 46

*Tiro v. Public House Investments, LLC,*
  Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551 (S.D.N.Y. May 22,
  2013) ................................................................................................. 29, 30, 31

*Tiro v. Public House Investments, LLC,*
  288 F.R.D. 272 (S.D.N.Y. 2012) ................................................................ 24, 25

*TMT Trailer Ferry, Inc.,*
  390 U.S. 414 (1968) ........................................................................................ 46

*Turner v. Murphy Oil USA, Inc.,*
  472 F. Supp. 2d 830 (E.D. La. 2007) ............................................................... 43

*Vigil v. Finesod,*
  779 F. Supp. 522 (D.N.M. 1990) ................................................................. 36, 37

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ...................................................................... 34, 36, 38

*Wenzel v. Partsearch Technologies, Inc. (In re Partsearch Technologies, Inc.),*
  453 B.R. 84 (Bankr. S.D.N.Y. 2011) ............................................................ 22, 23

*Yuzary v. HSBC Bank USA, N.A.,*
  No. 12 CV 3693 (PGG), 2013 WL 1832181 (S.D.N.Y. April 30, 2013) ....................... 30, 32

**STATUTES**

11 U.S.C.

§ 105(a)......................................................................................................44

15 U.S.C.

§ 1640(a)(2)(B)..............................................................................................9
§ 1640(a)(4)...............................................................................................9, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P.

Rule 23(a)(1)................................................................................................22
Rule 23(a)(3)................................................................................................24
Rule 23(a)(4)................................................................................................24
Rule 23(b)(3) ..........................................................................................26, 27
Rule 23(c)(2)(B)................................................................................31, 32, 33
Rule 23(e) ...................................................................................................36
Rule 23(g)(1)(A)...........................................................................................28
Rule 23(g)(1)(B)...........................................................................................28
Rule 23(g)(4)................................................................................................24
Manual for Complex Litigation, Fourth § 21.632 (2004) ....................................29
Herbert B, Newberg & Alba Conte, Newberg on Class
Actions § 11.25 (4th ed. 2002) ........................................................................29

EXHIBIT 1 – Thompson Declaration

EXHIBIT 2 – Walters Declaration

EXHIBIT 3 – Class Counsel Declaration

EXHIBIT 4 – Special Counsel Declaration

EXHIBIT 5 – Settlement Agreement [Exhibit D Filed Under Seal]

EXHIBIT 6 – Joint Consolidated Amended Class Action Complaint

EXHIBIT 7 – Order of the District Court

EXHIBIT 8 – Memorandum Opinion of the District Court

EXHIBIT 9 – Motion for Class Certification

EXHIBIT 10 – Class Certification Order

EXHIBIT 11 – Firm Resume for Walters Bender Strohbehn & Vaughan, P.C.

EXHIBIT 12 – Firm Resume for Carlson Lynch

ny-1099473

Prospective class representatives Rowena Drennen,[1] Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard ("**Named Plaintiffs**" or "**Class Representatives**"), on behalf of themselves and similarly situated class members (the "**Class Members**" or the "**Kessler Settlement Class**"), by and through their respective counsel, and the above captioned debtors and debtors in possession (collectively, the "**Debtors**"),[2] including Residential Capital, LLC ("**ResCap**"), Residential Funding Company, LLC ("**RFC**") and GMAC Residential Holding Company, LLC ("**GMAC Holding**" and together with ResCap and RFC, the "**Settling Defendants**" and together with the Named Plaintiffs, the "**Parties**"), by and through their respective counsel of record, submit this joint motion (the "**Motion**")[3] seeking entry of orders, substantially in the form annexed to the Settlement Agreement (defined below) as Exhibits B and C (the "**Orders**"), pursuant to section 105 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "**Bankruptcy Code**") and Rules 7023 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (1) granting class certification for purposes of settlement only, (2) appointing the Named Plaintiffs as representatives of the Kessler Settlement Class and appointing class counsel for purposes of settlement only, (3) preliminarily approving the settlement agreement between (i) Named Plaintiffs, on their own behalf and on behalf of the Class Members and (ii) the Settling Defendants, (4) approving the form and manner of notice to the Kessler Settlement Class, (5) scheduling a fairness hearing to consider approval of the Settlement Agreement on a final basis and related relief and (6) approving the Settlement Agreement on a final basis and granting related relief.  In support of the Motion, the Parties rely

---

[1] Rowena Drennen is a member of the Creditors' Committee (defined below).

[2] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 6].

[3] Creditors and parties-in-interest with questions or concerns regarding the Debtors' Chapter 11 cases or the relief requested in this Motion may refer to http://www.kccllc.net/rescap for additional information.

on: (i) the Declaration of William R. Thompson, General Counsel of Residential Capital, LLC (the "**Thompson Declaration**"), dated July 31, 2013, annexed hereto as **Exhibit 1**; (ii) the Supplemental Declaration of R. Frederick Walters (the "**Walters Declaration**"), dated July 31, 2013, annexed hereto as **Exhibit 2**; (iii) the Declaration of R. Frederick Walters, David M. Skeens and R. Bruce Carlson (the "**Class Counsel Declaration**"),[4] dated November 2, 2012, annexed hereto as **Exhibit 3**; (iv) the Declaration of Ronald J. Friedman Regarding Reasonableness of Allocation in Settlement of the Kessler Class Action (the "**Special Counsel Declaration**"), dated July 22, 2013, annexed hereto as **Exhibit 4**; and (v) the Kessler Settlement Agreement,[5] dated June 27, 2013, (the "**Settlement Agreement**"), annexed hereto as **Exhibit 5**. In further support of this Motion, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.      This Court's review of the proposed Settlement Agreement, by which the Parties seek approval of the settlement of the pending putative class actions and an underlying proof of claim filed on behalf of the putative class, is subject to a two-step procedure. Initially, on August 21, 2013, during the first of two hearings on the Settlement Agreement, the Parties only request the Court to make a "preliminary" ruling regarding (i) whether the settlement class should be certified for settlement purposes; (ii) whether the proposed settlement is presumptively "fair, adequate and reasonable" such that notice of the settlement should be provided to the Class Members in the manner proposed herein; (iii) approving the appointment of the Named Plaintiffs as representatives of the Kessler Settlement Class and the appointment of class counsel;

---

[4] The Class Counsel Declaration was originally filed in connection with the Motion to Apply Bankruptcy Rule 7023 and Certify Claims [Docket. No. 2047]. It provides a detailed review of the causes of action at issue in the MDL Litigation (defined below), which were re-asserted in the chapter 11 proceedings against RFC, GMAC and ResCap and which are the subject of this class action settlement.
[5] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement and are incorporated by reference into this Motion.

ny-1099473

(iv) approving the form of notice to the Kessler Settlement Class of the Settlement Agreement; and (v) the balance of the relief requested as set forth in the form of proposed order annexed as Exhibit B to the Settlement Agreement (the "**Preliminary Approval Order**").  Approval of the Settlement Agreement on a final basis in accordance with, *inter alia*, section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, will be considered, along with certain other relief as set forth in the form of proposed order annexed as Exhibit C to the Settlement Agreement (the "**Final Approval Order**"), at the final hearing to be scheduled by the Court contemporaneous with confirmation of the Plan.  Parties-in-interest will have the opportunity to be heard and oppose approval of the Settlement Agreement on a final basis at the final hearing.

2.      For approximately the past twelve (12) years, the Debtors have been engaged in several putative class actions relating to some 44,535 second mortgage loans held by the Class Members that were acquired by RFC following the origination thereof.  In multi-district litigation pending in the U.S. District Court for the Western District of Pennsylvania, and in the class claims now asserted against the Debtors in this Court, the Kessler Settlement Class claimants assert that they are entitled to recover damages against the Settling Defendants in excess of $1.87 billion on account of purported violations of RESPA, TILA/HOEPA and RICO (each defined herein).

3.      Under the terms of the Settlement Agreement, the Parties seek to fully resolve all issues among the Settling Defendants, Named Plaintiffs and the other putative Class Members by reducing the claims asserted by the Kessler Settlement Class and addressing such claim under the Plan (defined below).  The Settlement Agreement brings finality to a long-standing litigation by fixing an allowed, general unsecured Borrower Claim (as defined in the Plan) against only RFC in an amount that is reasonable and that will allow for meaningful distributions to the Class

3

Members and other potential benefits.   The Settlement Agreement also confers additional

potential benefits upon the Class Members through potential insurance recoveries.

4.      The Parties assert that the proposed settlement is fair, equitable and in the best

interest of the Class Members, the Debtors' estates and their creditors.  The terms and conditions

of the settlement were reached in the context of the Plan mediation through good faith, extensive

arm's-length negotiations between well-represented parties. The proposed settlement will resolve

all of the remaining claims of the Kessler Settlement Class against the Settling Defendants

without the need for complex, time consuming and expensive litigation, the outcome of which

would be uncertain.  Moreover, the Settlement Amount is fair and reasonable in light of: (a) the

allegations made; (b) the potential for increased damages based on the mathematical

computations that may ultimately be accepted in the MDL Litigation or by this Court; and (c) the

necessary incurrence of significant costs and expenses on the part of the Named Plaintiffs as well

as the Debtors' estates attendant to the continued litigation of this matter.

5.      Accordingly, as discussed in greater detail herein, granting the relief requested in

the Motion is in the best interest of the Kessler Settlement Class, the Debtors, their creditors and

the estates.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      Venue before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4

ny-1099473

8.       The statutory predicate for the relief sought herein is section 105 of the Bankruptcy Code, Bankruptcy Rules 7023 and 9019 and Rule 23 of the Federal Rules of Civil Procedures (the "**Federal Rules**").

## BACKGROUND

A.       <u>The Chapter 11 Cases</u>

9.       On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in the United States Bankruptcy Court for the Southern District of New York (this "**Court**") for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.   These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in the Chapter 11 Cases.

10.       On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine (9) member official committee of unsecured creditors (the "**Creditors' Committee**") [Docket No. 102].

11.       On June 20, 2012, this Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674].  On May 13, 2013, the Examiner filed his report under seal and, on June 26, 2013, the Court entered an order unsealing the report [Docket Nos. 3698, 4099].

12.       On July 3, 2013, the Debtors filed the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "**Plan**") [Docket No. 4153] and the Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the

5

"**Disclosure Statement**") [Docket No. 4157].  The hearing to approve the Disclosure Statement and related relief is currently scheduled for August 21, 2013.

**B.**    **The Class Action**

*(i)*    *Procedural History*

13.    As of the Petition Date, several putative class actions against RFC and certain other named defendants, including Community Bank of Northern Virginia ("**CBNV**"), now owned by PNC Bank, N.A. ("**PNC**"), and the Federal Deposit Insurance Corporation ("**FDIC**") as receiver for Guaranty National Bank of Tallahassee ("**GNBT**"), were pending in the United States District Court for the Western District of Pennsylvania (the "**District Court**") as part of a multidistrict proceeding styled *In re Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation,* MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386 (the "**MDL Litigation**").  *See* Thompson Declaration at ¶ 6; Class Counsel Declaration at ¶ 6. The MDL Litigation relates primarily to some 44,535 second mortgage loans originated to some 70,000-plus borrowers nationwide by either CBNV or GNBT that had been acquired by RFC. *See* Class Counsel Declaration at ¶ 6.  All members of the proposed Kessler Settlement Class are known and have been identified.  *See* Settlement Agreement at Exhibit D (containing a list of all members of Kessler Settlement Class).[6]

14.    The loans involved are "high-cost" loans under the Home Ownership and Equity Protection Act, 15 U.S.C. § 1641 ("**HOEPA**").  *See* Class Counsel Declaration at ¶ 9; Thompson Declaration at ¶ 8.  Each loan transaction was governed by and subject to the Real Estate Settlement Practices Act 12 U.S.C. § 2601 *et seq.* ("**RESPA**"), the Truth in Lending Act

---

[6] In accordance with the Settlement Agreement, the Parties have requested and obtained authority from this Court to file Exhibit D under seal in order to protect the privacy of the members of the Kessler Settlement Class.

ny-1099473

("**TILA**") and HOEPA (15 U.S.C. § 1602 and Regulation Z at 12 C.F.R. § 226.2).  *See id*.

Because the loans at issue are HOEPA loans, Named Plaintiffs contend that RFC is liable just as

if it had originated the loans based on 15 U.S.C. § 1641(d).  The Settling Defendants dispute this

contention.

15.     In the MDL Litigation, two prior class action settlements were approved by the

District Court, but on appeal each was vacated by the Third Circuit Court of Appeals and

remanded for further proceedings.  *In re Cmty. Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005)

("***Community Bank I***"); *In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3d Cir. 2010) ("***Community***

***Bank II***").  The prior settlements were based, primarily, on RESPA claims.  Objections to both

of those settlements focused on the contention that claims under TILA and HOEPA had not been

asserted or properly valued in the settlements.

16.     Following the second appeal and remand in the MDL Litigation, primary counsel

for the plaintiffs that had entered into the prior settlements and primary counsel for the objectors

joined forces (collectively, the "**Plaintiffs**").  *See* Class Counsel Declaration at ¶ 62.   In

connection therewith, on September 20, 2011, the District Court appointed Bruce Carlson and

Frederick Walters as co-lead Interim Class Counsel pursuant to Federal Rule 23(d) and 23(g)(3)

("**Class Counsel**").  *See id*.  The Plaintiffs then filed Plaintiffs' Joint Consolidated Amended

Class Action Complaint asserting claims under RESPA, TILA, HOEPA and the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("**RICO**"), a copy of which

is annexed hereto as **Exhibit 6.**  *See* Thompson Declaration at ¶ 10; Class Counsel Declaration at

¶ 6.

7

17.     The MDL Litigation proceeded on a litigation track.  The parties exchanged written discovery and Rule 26 disclosures.   The Settling Defendants and the non-Debtor defendants in the MDL Litigation moved to dismiss nearly all of the claims of the putative class and following limited oral argument, those motions became ripe for a ruling on September 18, 2012.  *See* Class Counsel Declaration at ¶ 63.

18.     Upon the Petition Date, the continuation of the MDL Litigation against RFC was stayed by operation of the automatic stay under section 362(a) of the Bankruptcy Code.  Between November 2 and November 16, 2012, the Named Plaintiffs filed class proofs of claim against RFC,  ResCap, GMAC-RFC Holdings Company, LLC and GMAC Mortgage, LLC (collectively, the "**Class Proofs of Claim**").  *See* Thompson Declaration at ¶ 11; Class Counsel Declaration at ¶ 8.  In addition, on November 2, 2012, the Named Plaintiffs filed in the Chapter 11 Cases their Motion to Apply Bankruptcy Rule 7023 and to Certify Class Claims (the "**Motion to Certify**") [Docket No. 2044].  On December 3, 2012, the Debtors filed their opposition to the Motion to Certify [Docket No. 2337].[7]  As discussed below, upon the consent of the Parties, the hearing on the Motion to Certify has been adjourned from time to time.

19.     On April 24, 2013, the Honorable Gary L. Lancaster, the judge presiding over the MDL Litigation, unexpectedly passed away.  At that time, no ruling on the motions to dismiss had been issued, nor had the stay been lifted to permit the adjudication of the Settling Defendants' motion to dismiss.

20.     On May 16, 2013, the MDL Litigation was transferred to District Court Judge Arthur Schwab.  On June 12, 2013, the District Court ruled on the non-Debtor defendants'

---

[7] On February 8, 2013, Named Plaintiffs filed a reply to the Debtors' opposition to the Motion to Certify [Docket No. 2874] along with supporting declarations.

ny-1099473

pending motions to dismiss. The District Court granted the motion of FDIC (as receiver for GNBT) to dismiss on jurisdictional grounds. As to defendant PNC, all claims against it remain other than the RESPA § 2607(b) claim as it relates to title fees; that is, the District Court denied the motion to dismiss as to the RESPA § 2607(a) claim, the RESPA § 2607(B) claim as it relates to fees other than title fees, the TILA and HOEPA claims and the RICO claims. *See* Order of Court dated June 12, 2013 (a copy of which is annexed hereto as **Exhibit 7**); Memorandum Opinion dated June 27, 2013 (a copy of which is annexed hereto as **Exhibit 8**). Pursuant to the District Court's separate order establishing a briefing schedule, the Plaintiffs filed their Motion for Class Certification with respect to the non-Debtor defendants in the MDL Litigation on June 21, 2013, a copy of which is annexed hereto as **Exhibit 9**.[8] On July 31, 2013, the Western District of Pennsylvania certified a class in the MDL Litigation pending against PNC. A copy of the Western District of Pennsylvania's Orders are annexed hereto as **Exhibit 10**.

### (ii)    *Plaintiffs' Estimate of Damages*

21.    Following vacatur and remand of the first settlement, a "viability analysis" was undertaken in the MDL Litigation in relation to the TILA and HOEPA claims advocated by the objectors. Experts for the Plaintiffs (objectors at the time), reviewed a sampling of 436 loans to, among other things, estimate damages. That effort indicated that the Plaintiffs' claims for violations of RESPA, which are the alleged wrongful settlement charges, average $4,765 per loan before trebling, and over $14,000 after trebling, which Plaintiffs contend is mandatory. *See* Class Counsel Declaration at ¶ 42.

---

[8] Due to its length, the declaration in support of the Motion for Class Certification has not been included in Exhibit 9. A copy of the declaration can be obtained (i) for a fee via PACER at http://www.pawd.uscourts.gov or (ii) upon written request to Morrison & Foerster.

ny-1099473

22.    TILA's statutory damages are capped in class actions at $1,000,000 per
originator, which for RFC would be $2 million or roughly $40 per borrower.  *See id.* at ¶ 43; 15
U.S.C. § 1640(a)(2)(B).

23.    HOEPA damages are more extensive.  They include not only the illegal fees on
the loan but also all paid "finance charges" (*i.e.*, the interest collected on the loan).  *See* 15
U.S.C. § 1640(a)(4).  The loan sampling by the Plaintiffs' experts indicated that an average per
loan, single measure of HOEPA damages was $26,477. [9]  *See* Class Counsel Declaration at ¶ 44.

24.    RICO damages in this case, if proven, would consist of out-of-pocket damages
that are fairly traceable to any conduct by the defendants that violated RICO.  *See Bankers Trust
Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479, 497 (1985) ("Any recoverable damages occurring by reason of a violation of §
1962(c) will flow from the commission of the predicate acts."); *Potomac Elec. Power Co. v.
Elec. Motor and Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) ("If a party specifically bargains
for a service, is told that the service has been performed, is charged for the service, and does not
in fact receive the service, it is not appropriate for courts to inquire into whether the service
'really' had value as a precondition to finding that injury to business or property has occurred.").
Thus, Plaintiffs assert the appropriate measure of damages include all settlement charges on the
loans paid to the enterprises and all paid interest damages flowing from the class members'
payment of excessive interest rates on their loans.  However, for the purpose of the settlement
discussions, the Plaintiffs looked only to the allegedly fraudulent title exam fees (line 1103) and

[9] Because this measure of damages includes interest paid on the loan and such calculations were done in 2006, this figure is now higher given that some percentage of these loans were "live" in 2006 and beyond and so interest has continued to be paid on those loans.  Also, Plaintiffs contend that on some of the class loans there are multiple HOEPA violations that support additional measures of HOEPA damages as to any such loans.  Debtors have disputed that contention and the inclusion of multiple recoveries for fees, and have argued that a court has discretion to and should reduce the HOEPA damages from the amount calculated by Plaintiffs.

ny-1099473

the alleged mark up on the abstract fees (line 1102), which their experts' sampling calculated to be on average \$428 per loan (or \$1284 per loan under RICO's mandatory trebling).[10]

25.     Aggregating these estimates produces an average per borrower damage claim of approximately \$42,076.00.  The Plaintiffs contend that extrapolated across the 44,535 loans in the class, the estimated damages total in excess of \$1.87 billion.  Excluding any trebling under RESPA or RICO establishes the estimated total claims at \$1.4 billion.

26.     If this case were to be litigated, in addition to disputing liability, the Debtors would challenge each of these damage components.

## C.     **Summary of the Settlement Agreement**

### (i)     *Mediation and Settlement Discussions Resulting in Settlement Agreement*

27.     Beginning in April 2013, the Debtors, the Named Plaintiffs' counsel, and representatives of the vast majority of the Debtors' significant creditors participated in mandatory Plan mediation sessions ordered by this Court [Docket Nos. 2519, 3101 and 3877] under the supervision of the Court-appointed mediator, the Honorable James M. Peck, United States Bankruptcy Judge.  *See* Thompson Declaration at ¶ 12.  The mediation sessions ultimately resulted in a global resolution dated May 14, 2013 in the form of a Plan Support Agreement ("**PSA**") by and among the Debtors, the Creditors' Committee, the Consenting Claimants[11] and

---

[10] Should this settlement fail and the Plaintiffs litigate their claims, then a much greater measure of RICO damages would be sought; namely, a recovery of all the illegal fees and interest paid on the offending loan.

[11] The "**Consenting Claimants**" include American International Group, as investment advisor for certain affiliated entities that have filed proofs of claim in the Chapter 11 Cases; Allstate Insurance Company and its subsidiaries and affiliates; Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas, each solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts (as defined below) (collectively, "**Deutsche**"); Financial Guaranty Insurance Corporation ("**FGIC**"); HSBC Bank USA, N.A., solely in its capacity as trustee in respect of certain of the RMBS Trusts ("**HSBC**"); the Kessler Settlement Class; Law Debenture Trust Company of New York, solely in its capacity as separate trustee in respect of certain of the RMBS Trusts ("**Law Debenture**"); Massachusetts Mutual Life Insurance Company and its subsidiaries and affiliates; MBIA Insurance

ny-1099473

Ally Financial Inc. ("**Ally**").  *See id*.  The Kessler Settlement Class is among the Consenting

Claimants.  *See id*.  On June 26, 2013, this Court granted the Debtors' motion for approval of and

for authority to enter into the PSA [Docket No. 4098].

28.     The PSA was not conditioned upon the Parties achieving a settlement or the

successful execution of the Settlement Agreement.  *See* Thompson Declaration. at ¶ 13.  Indeed,

had the settlement not been reached, the Kessler Settlement Class had the right to withdraw from

the PSA.  *See id*.  However, as contemplated by the PSA, subsequent to the execution of the

PSA, the Parties continued their settlement discussions and engaged in extensive formal

negotiations.  *See id.*; PSA § 5.3.  These efforts included an all-day session held on June 18,

2013, at which representatives of the Parties and the Creditors' Committee participated.  These

efforts resulted in an agreement in principle as to the primary components of the settlement.[12]

*See* Thompson Declaration at ¶ 13.

---

Corporation and its subsidiaries and affiliates (collectively, "**MBIA**," and together with FGIC, the "**Supporting Monolines**"); certain funds and accounts managed by Paulson & Co. Inc., holders of Senior Unsecured Notes issued by ResCap ("**Paulson**"); Prudential Insurance Company of America and its subsidiaries and affiliates; the Steering Committee Consenting Claimants (as defined in the Plan Support Agreement); certain holders of the Senior Unsecured Notes issued by ResCap (the "**Supporting Senior Unsecured Noteholders**"), The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., each solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, master servicer, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts (collectively, "**BNY Mellon**"); the Talcott Franklin Consenting Claimants (as defined in the Plan Support Agreement and, together with the Steering Committee Consenting Claimants, the "**Institutional Investors**"); U.S. Bank National Association, solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts ("**U.S. Bank**"); and Wells Fargo Bank, N.A., solely in its capacity as trustee, indenture trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or similar agency capacities in respect of certain of the RMBS Trusts ("**Wells Fargo**" and together with BNY Mellon, Deutsche, HSBC, Law Debenture, and U.S. Bank, the "**RMBS Trustees**"); and Wilmington Trust, National Association, not individually, but solely in its capacity as Indenture Trustee for the Senior Unsecured Notes issued by ResCap ("**Wilmington Trust**").

[12] Counsel for the Settling Defendants also informed the insurers that issued the Policies of the court-ordered mediation, the subsequent settlement negotiations, the demands and offers exchanged by the Parties, and provided the insurers with an opportunity to participate in some of the settlement meetings with Class Counsel, which invitation the insurers declined.  *See* Thompson Declaration at ¶ 13 n.3.

12

29.    Over the next few weeks, counsel to the Parties' and the Creditors' Committee participated in extensive negotiations and drafting sessions that culminated in the Settlement Agreement. *See id.* at ¶ 14. Upon approval by this Court, the Settlement Agreement will resolve all issues among Settling Defendants, Named Plaintiffs and the other putative Class Members relating to the 44,535 second mortgage loans at issue. *See id.*; Walters Declaration at ¶ 2, 7.

### (ii)    *The Kessler Settlement Class*

30.    Under the Settlement Agreement, the Kessler Settlement Class is defined as follows (the "**Class Definition**"):

> All persons who obtained a second or subordinate, residential, federally related, non-purchase money, HOEPA qualifying mortgage loan from Community Bank of Northern Virginia or Guaranty National Bank of Tallahassee that was secured by residential real property used as their principal dwelling and that was assigned to GMAC-Residential Funding Corporation n/k/a Residential Funding Company, LLC, who was not a member of the class certified in the action captioned Baxter v. Guaranty National Bank et al., Case No. 01-CVS-009168 in the General Court of Justice, Superior Court Division of Wake County, North Carolina.
>
> Equitable Tolling Sub-Class shall mean: All persons who meet the above class- definition, whose loan closed prior to May 1, 2000.
>
> Non-Equitable Tolling Sub-Class shall mean: All persons who meet the above class- definition, whose loan closed on or after May 1, 2000.

31.    The Settlement will include all persons in the Kessler Settlement Class who do not, in accordance with the terms of the Settlement Agreement, file a timely request to opt out of the Kessler Settlement Class. *See* Thompson Declaration at ¶ 15.

### (iii)    *Settlement Amounts and Allocation*

#### a.    **Settlement Amounts**

32.    Under the Settlement Agreement, the claims asserted by the Kessler Settlement Class are being reduced and allowed as an unsecured borrower claim, not subject to subordination under the Plan, in the amount of $300,000,000 against Debtor RFC only (the "**Allowed Claim**").  *See id.* at ¶ 18.  The other Class Proofs of Claim will be disallowed and expunged.  *See id.*

33.    Under the Plan, a Borrower Claims Trust[13] is to be established and funded with no less than $57.6 million.  The Kessler Settlement Class will receive a distribution from the Borrower Claims Trust on account of the Allowed Claim in accordance with the terms of the Plan and the Settlement Agreement.  *See id.* at ¶ 19.  Out of the gross amount distributed on account of the Allowed Claim, costs, attorneys' fees and incentive awards will be deducted.  *See id.*  The net amount, defined in the Settlement Agreement as the Kessler Net Recovery, will then be divided among Class Members based on a formula to be developed by Class Counsel, which will be based on the actual injury calculations (estimated fees and actual interest paid) for each Class Member's loan.  *See* Settlement Agreement at § 6.

34.    Specifically, the proportion of the Kessler Net Recovery Distribution payable to each Class Member will be determined as follows:

> a.    The total damages for each Class Member, comprised of the settlement fees and interest paid with respect to the loans, will be computed.  The settlement fees will be determined by a sample of approximately four hundred loans from among the Kessler Settlement Class for which Class Counsel has settlement fee data.  Class Counsel does not currently have

---

[13] "**Borrower Claims Trust**" means that trust established and funded as part of the Plan for the benefit of the holders of Borrower Claims (as defined in the Plan).

settlement fee data for the entire Kessler Settlement Class. The fee data from the approximate four hundred loans will be analyzed to estimate the fees paid by each Class Member, taking into consideration the original loan amount for each Class Member's loan.

b.    For the interest component of damages, the Settling Defendants have the actual amount of interest paid on the individual Class Member loans as of the current date.

c.    The estimated fees for each Class Member's loan will be added to the actual amount of interest paid on such loan to determine the total amount of individual damages for each Class Member.

d.    Finally, for loans closed before May 1, 2000, the total individual damages will be reduced by 18.5% to reflect the fact that the RESPA and TILA/HOEPA claims on loans preceding that date are subject to a statute of limitations defense and are timely only after application of the legal doctrine of equitable tolling.

*See* Settlement Agreement at § 6.

### b.    Allocation

35.    While Class Counsel do not believe that this obligation would constitute a substantial litigation risk for Class Members with pre-May 1, 2000 loans, given the evidence, an allocation is appropriate in recognition of the fact that a portion of the Class Members have an additional litigation burden. This issue is addressed by the Sub-Classes set forth in the Class Definition.

36.    Allocation counsel, separate from Class Counsel, was retained to represent each Sub-Class solely for the issue of allocation. Specifically, the Class Members needing equitable tolling to timely assert RESPA, TILA and HOEPA claims, represented by Named Plaintiffs John and Rebecca Picard, retained Arthur H. Stroyd, Jr., an accomplished complex litigation attorney from Pittsburgh, Pennsylvania, to represent the interests of such Sub-Class on the issue of allocation. *See* Walters Declaration at ¶ 14. Likewise, the non-equitable tolling Sub-Class,

15

ny-1099473

represented by Rowena Drennen, retained Richard H. Ralston (together with Arthur H. Stroyd, Jr., "**Allocation Counsel**"), an accomplished Kansas City area attorney and former Federal Magistrate Judge, to represent that Sub-Class.  *Id.* at ¶ 17.  Each Allocation Counsel was provided with a wealth of information to inform them of the factual circumstances and case law relating to the equitable tolling issue.  *Id.* at ¶ 20.  Armed with that information and their own considerable experience, on July 11, 2013, Allocation Counsel mediated the allocation issue before Charles Atwell, a former circuit court judge.  Class Counsel did not participate in the mediation session.  As a result of this effort, Allocation Counsel for the Equitable Tolling Sub-Class and the Non-Equitable Tolling Sub-Class, respectively, agreed to an 18.5% reduction of those Class Member claims relying on equitable tolling as to their RESPA, TILA and HOEPA claims.  *Id.* at ¶ 21.

37.    Class Counsel believe that the 18.5% reduction described above is fair, adequate and reasonable to all Class Members.  *Id.* at ¶ 24.  Such conclusion is based not only on the fact that the reduction is based on the allocation negotiated by independent Allocation Counsel through a mediation structure that was independent of Class Counsel but also on Class Counsels' own assessment of the propriety of equitable tolling derived from their experiences in the MDL Litigation of over ten years.  Those experiences include: (a) the review of thousands of pages of documents in both formal and informal discovery; (b) two appeals to the United States Court of Appeals for the Third Circuit (both generating lengthy opinions); and (c) thousands of pages of briefing related to the issues in dispute, generally, including comprehensive briefing and argument on the equitable tolling issue.  *Id.* at ¶ 24-27.

16

38.    The allocation proposal was also reviewed by SilvermanAcampora, LLP, Counsel

to the Creditors' Committee for Borrower Issues.  Their independent review and support is

detailed in the Special Counsel Declaration, which is annexed hereto as **Exhibit 4**.

39.    For all of these reasons Class Counsel believe that the 18.5% discount is fair,

adequate and reasonable to all Class Members.  Walters Declaration at ¶¶ 24, 27.

40.    The total individual damages of each Class Member will then be divided by the

total amount of individual damages of the entire Kessler Settlement Class to determine a

proportion or ratio of the total settlement proceeds attributable to each Class Member.  For each

Class Member, the ratio will be applied to determine each Class Member's proportionate share

of each Kessler Net Recovery Distribution.  *See* Settlement Agreement at § 6.

41.    Additionally, under the Settlement Agreement and the Plan, the Settling

Defendants have agreed to assign certain Insurance Rights to the Kessler Settlement Class that

are believed to provide coverage for the conduct that is the subject of the Kessler Class Claims.

*See* Settlement Agreement at § 5; Thompson Declaration at ¶ 20.  Thus, a recovery of insurance

proceeds may also be available to the Kessler Settlement Class claimants.  *See* Settlement

Agreement at § 5; Thompson Declaration at ¶ 20.  If payment is received or obtained under the

applicable policies (the "**Policies**") on account of the Insurance Rights, then such amounts shall

also be a recovery for the Kessler Settlement Class claimants.  *See* Thompson Declaration at ¶

20.  In the event the Kessler Settlement Class claimants realize on any of the Insurance Rights,

under the Settlement Agreement, they are obligated to reimburse the Borrower Claims Trust a

proportion of the previous Borrower Claims Trust distributions received by the Kessler

Settlement Class claimants (the "**Give Back**").  *See* Settlement Agreement at § 5.  The Give

17

Back is determined by multiplying the previous Borrower Claims Trust distributions, if any, by a fraction which has as its numerator the insurance recovery and has as its denominator the Kessler Settlement Class claimants' Allowed Claim.  *See id*.  Any such Give Back will be added to the Borrower Claims Trust and made available, after the payment of any remaining attorneys' fees and incentive awards, for distribution to the Class Members and other allowed Borrower claims in the Borrower Claims Trust without regard to the insurance recovery.  *See* Plan at § IV.F.6.

### *(iv)    Attorneys' Fees, Litigation Costs and Incentive Awards*

42.    Named Plaintiffs will apply for an incentive award not to exceed $72,500.00 in the aggregate amount for the remaining proposed class representatives in the MDL Litigation (including the Named Plaintiffs), which sums individually are set forth in Schedule 1 to the Settlement Agreement.  *See* Settlement Agreement at § 7.a.  Any such incentive award shall be in addition to the distribution made on such Plaintiffs' claims.

43.    Class Counsel will also seek reimbursement of their reasonable litigation costs and expenses from the Kessler Gross Recovery, in an amount not to exceed $1,500,000.00.  *See id.* at § 7.b.

44.    Prior to the final hearing, proposed Class Counsel will file with the Court a supplemental pleading in further support of final approval of the Settlement Agreement, including approval of the incentive award, attorneys' fees and litigation costs.  Within such supplemental pleading, Class Counsel will request an award of attorneys' fees not to exceed thirty-five (35%) of each Kessler Net Recovery.  *See id.* at § 7.c.  In accordance with the Settlement Agreement, the Settling Defendants and the Creditors' Committee shall not object to this fee application.  Allocation Counsel will be compensated on a lodestar for their time

expended and that amount (the "**Allocation Fee**") will be paid from Class Counsel's fee award. *See* Walters Declaration at ¶ 23.  The mediator who presided over the allocation issue, Charles Atwell, will be compensated at his reasonable hourly mediation rate and such amount will also be paid from Class Counsel's fee award.  *See id*.

### (v)    *Settlement Claims Administrator*

45.    Named Plaintiffs will select a Settlement Fund Administrator (the "**Administrator**").  The Administrator's fees will be paid from the Kessler Gross Recovery.[14] *See id.* at § 2.13.

### (vi)    *Conditions Precedent to the Settlement Agreement*

46.    Under the terms of the Settlement Agreement, the Settlement will not become effective until certain conditions have been satisfied, including, without limitation, (a) the Settlement Agreement is granted preliminary approval by this Court pursuant to the Preliminary Approval Order, (b) the form of Class Notice (defined below) is approved pursuant to the Preliminary Approval Order and has been mailed to the Kessler Settlement Class, (c) the Settlement Agreement is granted final approval by this Court pursuant to the Final Approval Order and such order is not stayed, modified or vacated on appeal and (d) the Plan has been confirmed and the effective date of the Plan has occurred.  *See* Settlement Agreement § 14.

### RELIEF REQUESTED

47.    By this Motion, the Parties seek entry of the Preliminary Approval Order and the Final Approval Order, substantially in the forms of the orders annexed to the Settlement Agreement as Exhibits B and C, pursuant to section 105 of the Bankruptcy Code and Bankruptcy

---

[14] "**Kessler Gross Recovery**" refers to the gross amount of any distribution to or for the benefit of the Kessler Settlement Class received from any source pursuant to the Plan, including the Borrower Trust or the Policies.

ny-1099473

Rules 7023 and 9019, (1) granting class certification for purposes of settlement only, (2) appointing the Named Plaintiffs as representatives of the Kessler Settlement Class and appointing Class Counsel for purposes of settlement only, (3) preliminarily approving the Settlement Agreement, (4) approving the form and manner of notice to Kessler Settlement Class, (5) scheduling a fairness hearing to consider approval of the Settlement Agreement on a final basis and for the purposes of granting related relief, and (6) approving the Settlement Agreement on a final basis and granting such related relief.

48.     As noted above, at the Preliminary Hearing, the Parties only seek entry of the Preliminary Approval Order with the final approval of the Settlement Agreement reserved for consideration by the Court at the final hearing.

## BASIS FOR RELIEF REQUESTED

### A.    Certification of Kessler Settlement Class

49.     The preliminary approval process melds into what is sometimes deemed provisional certification of a settlement class. *See, e.g., In re Penthouse Exec. Club Comp. Litig.*, Master File No. 10 Civ. 1145 (KMW), 2013 WL 1828598, at *3 (S.D.N.Y. Apr. 30, 3013) ("Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing"). To grant such provisional certification (subject to confirmation (or not) after the final approval hearing), the court looks conditionally under Bankruptcy Rule 7023 and Federal Rule 23(e), at the requisites for class certification set forth in Federal Rule 23(a) (l), (2), (3) and (4) and at whether certification for settlement may be appropriate under at least one of the conditions set forth in the

subparts of Federal Rule 23(b). Here, each element needed to support certification of the Kessler

Settlement Class for settlement is established.[15]

### (i)    *The Federal Rule 23(a) Prerequisites Are Satisfied*

50.    Under Federal Rule 23(a), one or more members of a class may sue or be sued as

representative parties on behalf of all members in a class action only if:

> a.    the class is so *numerous* that joinder of all members is impracticable;
>
> b.    there are questions of law or fact *common* to the class;
>
> c.    the claims or defenses of the representative parties are *typical* of the claims or defenses of the class; and
>
> d.    The representative parties will fairly and *adequately* protect the interests of the class.

Fed. R. Civ. P. 23(a).

51.    Notably, the analysis of these factors has been twice accomplished by the Third

Circuit in the settlement context:

> With respect to the District Court's certification decision, we concluded that three of the four Rule 23(a) requirements-numerosity, typicality, and commonality-were met, as well as the Rule 23(b)(3) predominance and superiority requirements. We expressed serious concerns, however, as to whether the adequacy requirement of Rule 23(a) could be met, specifically in the context of whether the named plaintiffs and class counsel were adequate representatives in light of their failure to assert colorable TILA/HOEPA claims . . .
>
> * * * *
>
> The sole disputed Rule 23 requirement in this case, as it was in *Community Bank I*, is adequacy of representation.

---

[15] Both Named Plaintiffs and the Debtors have briefed the reasons why they believe the standards for certification of a litigated class are and are not, respectively, met. All parties reserve and maintain all of those points in the event that the proposed settlement were to fail for any reason.

ny-1099473

*Community Bank II*, 622 F.3d at 284, 291 (internal citations omitted).

52.    While the Third Circuit previously determined the numerosity, commonality and typicality factors to be established for settlement purposes, a quick review of the same serves to demonstrate the propriety of the Third Circuit's findings.   As to any prior concerns about adequacy of either the class representatives or counsel, the inclusion of the TILA/HOEPA claims, use of sub-classes and the allocation provisions of the Settlement Agreement are designed to address these concerns.

### 1.    Numerosity

53.    Federal Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Numerosity is presumed at forty (40) class members.  *Consol. Rail Corp v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).   With 44,535 loans at issue, numerosity is plainly established.  *See Community Bank I,* 418 F.3d at 303.

### 2.    Commonality of Issues

54.    To satisfy the commonality requirement under Rule 23(a)(2), a party must establish that there are common issues of fact or law that affect all class members.  *See Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 23 (E.D.N.Y. 2012).  Here, RFC acquired 44,535 loans made by the Banks in alleged violation of RESPA, TILA, HOEPA and RICO.  Named Plaintiffs allege that because these loans were made using common (federally mandated) loan documents it is fundamental that there are common questions of law and fact.  Moreover, Named Plaintiffs assert that the claims of each Class Member are subject to the same affirmative defenses and to a uniform calculation of damages.  *See In re BGI, Inc.*, 465 B.R. 365, 375 (Bankr. S.D.N.Y. Feb. 17, 2010); *Wenzel v. Partsearch Technologies, Inc. (In re Partsearch Technologies, Inc.),* 453

B.R. 84, 94 (Bankr. S.D.N.Y. 2011) (acknowledging that "[t]he claims of each Class Member

would be subject to the same affirmative defenses raised by the Debtors . . .").

55.     Some of the common issues of fact and law identified by Named Plaintiffs

include but are not limited to the following:

>   a.      RFC's loan acquisition practices and procedures;
>
>   b.      whether the written contracts between the Shumway Bapst entities and the
>           banks established obligations that were per se violations of RESPA;
>
>   c.      whether the Banks made inaccurate TILA disclosures to the Class
>           Members;
>
>   d.      whether the Banks utilized a practice or device whereby the mandatory
>           disclosures under TILA were not timely made;
>
>   e.      whether certain of the Class Members' promissory notes failed to disclose
>           required HOEPA disclosures restricting prepayment penalties or other
>           prohibited terms;
>
>   f.      whether the Class Members' HOEPA Notices (i) were displayed in the
>           required conspicuous type size manner; (ii) contained knowingly false
>           acknowledgments of receipt before closing; or (ii) were nevertheless
>           deficient in asserting receipt within no specified period or within "3 days"
>           or "72 hours" before closing, but not asserting the number of "business"
>           days before closing;
>
>   g.      whether the Class Members' HUD-1 or HUD1-A Settlement Statements
>           concealed and/or misrepresented the identity of the recipients, nature or
>           the amounts of the settlement fees and charges imposed on their loans; and
>
>   h.      whether RFC was involved or a participant in a RICO enterprise.

56.     Indeed, the existence of commonality for settlement purposes has already been

noted by the Third Circuit.  *See Community Bank I*, 418 F.3d at 303; *Community Bank II*, 622

F.3d at 284, 291.

### 3.    Typicality of Claims

57.    Typicality requires that the claims or defenses of the class representatives are typical of the claims or defenses of the class members. *See* Fed.R.Civ.P. 23(a)(3).  "Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Tiro v. Pub. House Invs., LLC*, 288 F.R.D. 272, 277 (S.D.N.Y. 2012) (citing *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

58.    In this case, Named Plaintiffs are alleged to have suffered the same type of injury as the rest of the putative Class Members from claims premised on identical legal theories and common facts.  Most certainly, Named Plaintiffs' claims are "typical" of the claims alleged on behalf of the Kessler Settlement Class.  *In re BGI, Inc.*, 465 B.R. at 376.  As noted by the Third Circuit in relation to one of the previous settlements: "[b]ecause the claims of all class members here depend upon the existence of the Shumway scheme, 'their interests are sufficiently aligned [such] that the class representatives can be expected to adequately pursue the interests of the absentee class members.'" *Community Bank I*, 418 F.3d at 303.

### 4.    Adequacy of Representation

59.    Federal Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Federal Rule 23(g)(4) also states: "[c]lass counsel must fairly and adequately represent the interests of the class."  What constitutes adequate representation depends on the circumstances of each particular case and is a discretionary

ny-1099473

finding. *In re BGI, Inc.*, 465 B.R. at 376. The fact that Named Plaintiffs' claims are typical of

the Kessler Settlement Class is strong evidence that Named Plaintiffs' "'interests are not

antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will

vindicate those of the class.'" *See Tiro,* 288 F.R.D. at 280 (citation omitted).

60.     As to the adequacy of the Plaintiffs, the Third Circuit stated:

> [T]he adequacy requirement is designed to "uncover conflicts of
> interest between the named parties and the class they seek to
> represent." (internal citation omitted) Here, there is an obvious and
> fundamental intra-class conflict of interest (the same we identified
> in *Community Bank I*): the named plaintiffs' claims-whether under
> RESPA, TILA, or HOEPA-are untimely, and they must rely on
> equitable tolling to save them . . . . As we noted in *Community
> Bank I*, however, this intra-class conflict is by no means fatal to
> whether these cases can be maintained as a class action. The most
> obvious remedy would be to create subclasses, as we suggested in
> our prior opinion . . . .

*Community Bank II*, 622 F.3d at 303-04 (emphasis added).

61.     The adequacy issue identified by the Third Circuit has been addressed by the

subsequent developments.   Regarding the Class Representatives, the proposed Kessler

Settlement Class includes sub-classes on either side of the equitable tolling issue, and Named

Plaintiffs serving as class representatives include individuals that belong to each of the sub-

classes. Moreover, as described above, each sub-class is represented by Allocation Counsel and

that counsel, in mediation before Charles Atwell, a former circuit court judge, agreed upon an

18.5% reduction for the Equitable Tolling Class members.

62.     As to Class Counsel, the adequacy concerns identified by the Third Circuit related

to the decision of counsel for the settling plaintiffs in the MDL Litigation not to assert

TILA/HOEPA claims. *Community Bank II*, 622 F.3d at 307-08. After the second vacatur and

ny-1099473

remand, counsel for the settling plaintiffs (Mr. Carlson as lead) allied with counsel for the
objecting class members (Mr. Walters as lead), and the now co-joined plaintiff groups filed in
the MDL Litigation the Joint Consolidated Amended Class Action Complaint asserting
TILA/HOEPA claims on behalf of the entire putative class (as well as RESPA and RICO
claims). Thus, the adequacy concern identified by the Third Circuit regarding Class Counsel has
been remedied.

### (ii)    The Federal Rule 23(b) Prerequisites Are Satisfied

63.    In addition to the four requirements of Federal Rule 23(a), Named Plaintiffs must
satisfy one of three criteria in Federal Rule 23(b). In this case, Named Plaintiffs seek
certification under Federal Rule 23(b)(3), which requires that questions of fact or law
*predominate* over questions affecting only individual class members and that the class device be
*superior* to any other method to adjudicate the controversy.

64.    In this case, Named Plaintiffs and the putative Kessler Class Claimants allege
statutory injury by a common course of conduct. The Third Circuit addressed the existence of
predominance here in the context of the first previous settlement as follows: "Just as the record
below supports a finding of typicality, it also supports a finding of predominance. All plaintiffs'
claims arise from the same alleged fraudulent scheme." *Community Bank I*, 418 F.3d at 309.

65.    Federal Rule 23(b)(3) provides a non-exhaustive list of factors to consider in
determining superiority, which include: (a) the interest of members of the class in individually
controlling the prosecution or defense of separate actions; (b) the extent and nature of any
litigation concerning the controversy already commenced by or against members of the class; (c)
the desirability or undesirability of concentrating the litigation of the claims in a particular

ny-1099473

forum; and (d) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

66.    Here, a number of reasons indicate that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  <u>First</u>, the difficulty and expense in proceeding against the Debtors when balanced against the amounts to be recovered by each of the Class Members mandates that no Class Member has an interest in individually controlling the prosecution of a separate action for the asserted statutory violations.  <u>Second</u>, to the Parties' knowledge, with the exception of the pending MDL Litigation, there is no other individual litigation concerning the rights of any Class Member that is currently pending.  <u>Third</u>, concentrating all potential litigation concerning the claims against the Debtors and the rights of the Kessler Settlement Class in this Court will avoid a multiplicity of suits or claims and will conserve the judicial resources of the Parties.  <u>Fourth</u>, while substantial in terms of the number of loans, in actuality the administration of the settlement of this action as a class action will not be complicated or difficult.  Pursuant to the Settlement Agreement, all of the Class Members have been identified and their settlement allocations will be established and calculated based on the Debtors' records.  Understandably then, in connection with one of the previous settlements, the Third Circuit concluded that it found "no reason… why a Rule 23(b)(3) class action is not the superior means to adjudicate this matter."  *Community Bank I*, 418 F.3d at 309.

67.    For the above reasons, all elements of Federal Rule 23(a) as well as the 23(b)(3) requirements are satisfied for the purpose of the Settlement.

ny-1099473

## B.    Appointment of Proposed Class Counsel

68.    Appointment of class counsel is governed by Federal Rule 23(g) under the following criteria: (a) "the work counsel has done in identifying or investigating potential claims in the action;" (b) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (c) "counsel's knowledge of the applicable law; and" (d) "the resources that counsel will commit to representing the class".  Fed. R. Civ. P. 23(g)(1)(A).  The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class.  Fed. R. Civ. P. 23(g)(1)(B).

69.    Named Plaintiffs' counsel undisputedly meets all of these criteria.  Though the initial investigation of these claims occurred many years ago, the prior settlements, the Third Circuit opinions, the MDL Litigation court's recent denial of motions to dismiss and the proposed Settlement Agreement all speak to the validity of Named Plaintiffs' counsel's efforts in identifying, investigating and prosecuting the asserted claims as well as their overall knowledge of the applicable law.  Both R. Frederick Walters and Walters Bender Strohbehn & Vaughan, P.C. as well as Bruce Carlson and Carlson Lynch are class action specialists and have been appointed class counsel in many consumer class action matters.  Firm resumes for Walters Bender Strohbehn & Vaughan, P.C. and Carlson Lynch are attached here to as **Exhibit 11** and **Exhibit 12**, respectively.  In addition, the twelve (12) year commitment to the MDL Litigation and the willingness to represent Ms. Drennen on the Creditors' Committee and invest substantial advances in retaining bankruptcy counsel aptly demonstrate the commitment of Named Plaintiffs' counsel to the representation of the Kessler Settlement Class.

ny-1099473

**C.    The Court Should Preliminarily Approve the Settlement Agreement and Enter the Preliminary Approval Order**

70.    "Court review of a proposed class action settlement is subject to a two-step procedure:  The settlement must be preliminarily approved and then approved on a final basis following a fairness hearing."  *In re BGI, Inc.*, 465 B.R. at 378.  A court first makes a "preliminary" ruling regarding whether the settlement class should be certified and whether the proposed settlement is presumptively "fair, adequate and reasonable" and, thereafter, notice should be sent to the class and a final fairness hearing scheduled.  *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) (citing Manual for Complex Litigation, Fourth § 21.632 (2004)); *Silver v. 31 Great Jones Rest.*, No. 11 CV 7442 (KMW) (DCF), 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013).

*(i)    The Settlement Agreement is Presumptively Fair, Adequate and Reasonable*

71.    A court's responsibility is to review a settlement and the release to be given to determine whether the class action settlement appears preliminarily to be presumptively fair, adequate and reasonable.  *See, e.g., Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Herbert B, Newberg & Alba Conte, Newberg on Class Actions ("*Newberg*") § 11.25 (4th ed. 2002)).  All the court need find to grant this preliminary approval is that "probable cause" exists to submit the proposed class action settlement to the class members and to establish a full-scale hearing for the purpose of determining final approval. *Tiro v. Pub. House Investments, LLC*, Nos. 11 Civ. 7679 (CM), 11 Civ. 8249 (CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (citing *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

72.     This "probable cause" analysis looks to whether a settlement is "within the range of possible settlement approval," such that notice to the class is appropriate. *Tiro*, 2013 WL 2254551, at *1-2; *Danieli v. IBM*, No. 08 CV 3688 (SHS), 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009) (preliminary approval granted where no "obvious defects" in the settlement and the allocation proposed is rationally related to the weaknesses and strengths of the asserted claims); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 CV 3693 (PGG), 2013 WL 1832181, at *1 (S.D.N.Y. April 30, 2013) ("If the proposed settlement 'appears to fall within the range of possible approval,' the court should order that the class members receive notice of the settlement") (citation omitted).

73.     In this case, there is most certainly probable cause to find that the Settlement Agreement should be preliminarily approved.  The Settlement Agreement is the result of good faith, extensive, arm's length negotiations following over a decade of litigation and was reached in connection with the mediation ordered by this Court and overseen by Judge Peck, and as a result of the substantive negotiations that followed the execution of the PSA.  *See* Thompson Declaration at ¶ 21; Walters Declaration at ¶ 28.  These facts demonstrate that the Settlement Agreement is in good faith and eminently reasonable.  *Tiro*, 2013 WL 2254551, at *2 (citing *In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2); *Yuzary*, 2013 WL 1832181, at *2.

74.     It is also noteworthy that the Settlement Agreement comes after twelve (12) years of litigation, which efforts spawned two Third Circuit opinions, each of which recognized the possibility of certification of these claims for settlement.  Class Counsel, all of which are experienced class action lawyers, are more than capable and sufficiently informed to evaluate, accept and endorse the Settlement Agreement.  In addition, Class Counsel was assisted by highly

ny-1099473

experienced bankruptcy counsel retained to assist in understanding the bankruptcy issues relating to the ability to litigate and collect on these claims from the Debtors' estates. Moreover, counsel for the Creditors' Committee also assisted in the negotiations. Such experience and guidance has allowed Class Counsel and counsel for the Settling Defendants the ability to evaluate and to endorse the Settlement Agreement. "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Tiro*, 2013 WL 2254551, at *2 (citing *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240 (CM) *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

75.    Lastly, the Allowed Claim substantially exceeds the amount of the prior settlements. In addition, under the terms of the Settlement Agreement and Plan, certain rights in and to the Policies will be assigned to the Kessler Settlement Class, thus affording the Class the potential for a very significant recovery for the Class Members.

76.    For these reasons, the Court should preliminarily approve the Settlement Agreement.

D.    **Approval of Notice of the Settlement Agreement**

(i)    ***Contents of the Class Notice***

77.    Federal Rule 23(c)(2)(B), in pertinent part, provides as follows:

> The notice must clearly and concisely state in plain, easily understood language:

the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

78.    The notice should generally describe the terms of the settlement, inform the class about the potential award of expenses and attorneys' fees and provide specific information regarding the date, time, and place of the final approval hearing. *Yuzary*, 2013 WL 1832181, at *5; *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").

79.    A copy of the proposed class notice (the "**Class Notice**") is annexed to the Settlement Agreement as Exhibit A.  Among other things, it sets forth in plain English the nature of the action, defines the class and speaks to the claims, the defenses and other issues.  The Class Notice tells the prospective Class Members how to opt out or object and that they may retain their own counsel.  Moreover, the Class Notice makes clear that the Settlement Agreement, if approved, will be binding on all Class Members.  The Class Notice also apprises the Kessler Settlement Class, among other things, that complete information regarding the Settlement Agreement is available upon request from proposed Class Counsel and that any Class Member may appear and be heard at the hearing on final approval of the Settlement Agreement.

80.    The proposed Class Notice more than meets the requirements of Federal Rule 23(c)(2)(B).

32

      *(ii)*      ***Notice Plan***

81.     Federal Rule 23(c)(2)(B) provides, in pertinent part, as follows: "[f]or any class certified under Rule 23(b)(3), the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Mailing to each Class Member's last known address satisfies the "best notice practicable" test.  *Eisen v. Carlisle & Jacquelin, et al.*, 417 U.S. 156, 174-75 (1974) (individual mailings satisfy Rule 23(c)(2)).

82.     The Settlement Agreement provides that, at the Debtors' expense, the listing of addresses for the class members shall be updated.  Then, Class Counsel and Debtors' counsel will cause to be mailed by first class mail the Class Notice, at the Debtors' expense, to each of the Class Members.  The mailing and the fairness hearing (i.e., the final hearing) will be timed so that the Class Members will have not less than thirty (30) days from the date of the mailing to opt out of the Kessler Settlement Class, to object to the Settlement Agreement and to appear at the fairness hearing.

83.     For the above reasons, the notice plan is reasonably calculated to apprise the Kessler Settlement Class about the Settlement Agreement and the right to opt out and exclude themselves.  In sum, providing notice in the described manner, as more fully provided for in the Settlement Agreement, satisfies the "best notice practicable" test.

**E.**    **The Settlement Should Be Approved on a Final Basis Pursuant to Federal Rule 23(e) and Bankruptcy Rule 9019 after the Fairness Hearing**

84.     The Parties respectfully request that the Court schedule a fairness hearing, subject to the Court's calendar, to be held no sooner than one hundred (100) days after the filing of this

ny-1099473

Motion and contemporaneous with confirmation of the Plan.  At the fairness hearing, the Court

should approve the Settlement Agreement on a final basis.  As explained by this Court:

> For the Settlement to be approved in bankruptcy court, the
> Settlement must be *both* procedurally and substantively fair under
> Rule 23 and Federal Rule of Bankruptcy Procedure 9019. *See
> WorldCom,* 347 B.R. at 143–49. This process requires the Court to
> assess the fairness of a settlement by examining its terms and the
> negotiation process leading to settlement. *See D'Amato v. Deutsche
> Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

*In re BGI, Inc.*, 465 B.R. at 378.  For the many reasons already expressed and further addressed

below, the proposed Settlement is both procedurally and substantively fair.

### (i)    *The Settlement is Procedurally Fair Pursuant to Federal Rule 23 and Bankruptcy Rule 9019*

85.    To meet approval under Federal Rule 23 and Bankruptcy Rule 9019, the Court

must find that the "proposed settlement is free from collusion and inadequate representation,"

which results from arm's length negotiations between the parties.  *Id.*  This Court has explained

that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached between experienced, capable counsel after meaningful discovery.'"  *Id.* (quoting *Wal–

Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005)).

86.    Here, the Settlement Agreement is the product of arm's length negotiations

between the Parties.  *See* Thompson Declaration at ¶ 16; Walters Declaration at ¶ 28.  At the

time of settlement, each of the Parties had made an extensive investigation of the facts through

formal and informal discovery and undertaken their own analyses of the merits of the case based

on those facts and existing law.  *See* Thompson Declaration at ¶ 16; Walters Declaration at ¶¶ 25,

28-29.  These efforts allowed for an informed negotiation between Named Plaintiffs and the

34

Settling Defendants.[16]  *See* Thompson Declaration at ¶ 16; Walters Declaration at ¶¶ 28-29.  The

Settling Defendants were represented by their bankruptcy counsel, Morrison & Foerster LLP,

and their defense counsel in the MDL Litigation, Bryan Cave LLP.  *See* Thompson Declaration

at ¶ 13, n.2.  The Parties were all aware of the major issues related to the Class Members' claims

for damages that remained following, and as a result of, the proceedings in the MDL Litigation,

and the two Third Circuit appeals.  *See* Thompson Declaration at ¶ 16; Walters Declaration at ¶

25.  All sides have had ample opportunity to assess the likelihood that the putative class will be

certified as a class proof of claim pursuant to the Motion to Certify.  *See* Thompson Declaration

at ¶ 16; Walters Declaration at ¶ 25.  Indeed, the Parties have extensively briefed this issue.  *See*

Thompson Declaration at ¶ 16; Walters Declaration at ¶ 25.  Likewise, the Parties had ample

opportunity to evaluate the merits of the Class Members' claims for damages, as well as the

likelihood and extent that Named Plaintiffs may have prevailed on their claims for damages.[17]

*See* Thompson Declaration at ¶ 16; Walters Declaration at ¶ 25.

87.     From the Debtors' perspective, the Settlement Agreement is the product of a well

informed assessment of all the risks of litigation either before this Court or in the MDL

Litigation.  *See* Thompson Declaration at ¶ 17.

---

[16] *See In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995) (evaluating whether the parties have an "adequate appreciation of the merits of the case before negotiating" a class action settlement); *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("[I]t is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make . . . an appraisal' of the Settlement") (citation omitted); *see also In re WorldCom, Inc.,* 347 B.R. 123, 145 (Bankr. S.D.N.Y. 2006) ("This factor is attuned to the parties' knowledge and awareness of the relative strength or weakness of each party's respective arguments and positions. The progression of discovery is a useful proxy through which to measure that knowledge and awareness.").

[17] *See e.g., E.E.O.C. v. McDonnell Douglas Corp.,* 894 F.Supp. 1329, 1334 (E.D. Mo. 1995) ("The voluminous documents that have been reviewed, the interviews of potential witnesses, and the analyses of all the information that was gathered have brought the case to a point at which an informed assessment of its merits and the probable future course of the litigation can be made.").

ny-1099473

*(ii)*    *The Settlement Agreement is Substantively Fair Pursuant to Federal Rule 23(e)*

88.     Federal Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified

class may be settled, voluntarily dismissed or compromised only with the court's approval."

Fed. R. Civ. P. 23(e).  This requires the Court to find that the settlement is "fair, reasonable and

adequate." Fed. R. Civ. P. 23(e)(2); *see also In re BGI, Inc.*, 465 B.R. at 379*; In re Initial Pub.*

*Offering Sec. Litig.*, 243 F.R.D. 79, 83, 87 (S.D.N.Y. 2007); *Wal-Mart Stores, Inc. v. Visa U.S.A.*

*Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

89.     To evaluate the substantive fairness of a settlement, a court analyzes the following

factors: "'(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the

class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining the class action through the trial; (7) the ability of the defendants to withstand a

greater judgment; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation.'"  *See Mba v. World Airways, Inc.,* 369

Fed. Appx. 194, 197 (2d Cir. 2010) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463

(2d Cir. 1974)*, abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43,

47 (2d Cir. 2000)).  The Parties address these factors below.

### 1.    The Complexity, Expense and Likely Duration of the Litigation

90.     The complexity, expense, and likely duration of further litigation factor looks to

and weighs the risks "that go hand in hand with protracted litigation" and asks whether a

presumed final result would in any way be superior to the settlement. *See Gottlieb v. Wile*s, 11

F.3d 1004, 1015 (10th Cir. 1993); *Vigil v. Finesod*, 779 F. Supp. 522, 526 (D.N.M. 1990) ("If the

36

proposed settlement is not approved, the result will be a much more complicated and expensive course of litigation and there is no assurance that the final result will in any way be superior. The time and expense for additional litigation is not warranted under the circumstances."). An analysis under this factor also recognizes that judgments, recovered after lengthy litigation and trial, can be lost on appeal. *See, e.g., In re BGI, Inc.*, 465 B.R. at 379 ("On the other hand, the Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members 'to take the bird in the hand instead of the prospective flock in the bush.'") (quoting *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974)).

91.    In this case, there is no doubt that the issues are complex and have been hard fought for over a decade. Continued litigation of the Class Members' claims would require the expenditure of a substantial amount of time and resources to both have the Kessler Settlement Class certified by the Court and establish RFC's liability to all, or a part of, such class. Moreover, there exists the risk of an adverse result at trial and/or on appeal. The Settlement Agreement, on the other hand, will provide tangible recoveries to each Class Member in the near term versus an uncertain future recovery. *See Aramburu v. Healthcare Fin. Servs., Inc.*, No. 02-CV-6535 (MDG), 2009 WL 1086938, at *3 (E.D.N.Y. Apr. 22, 2009) ("the settlement provides certain compensation to the class members now rather than awaiting an eventual resolution that would result in further expense without any definite benefit"). Altogether, this factor also supports the Settlement Agreement.

### 2.    The Reaction of the Class to the Settlement Agreement

92.    As noted by this Court, "[t]he fairness of a proposed settlement can be measured by class reaction." *In re BGI, Inc.*, 465 B.R. at 379. This factor will be established by the time

of the fairness hearing.  At this time, the Parties have no reason to expect any opposition to the

Settlement Agreement.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

93.    "The purpose of this factor is to assess 'the parties' knowledge and awareness of

the relative strength or weakness of each party's respective arguments and positions.  The

progression of discovery is a useful proxy through which to measure that knowledge and

awareness."  *In re BGI, Inc.*, 465 B.R. at 380 (citation omitted).

94.    As previously noted, the Settlement Agreement was reached after extensive

negotiations between the well represented Parties following years of litigation.  The proceedings

in the MDL Litigation included the exchange of thousands of pages of documents, the taking of

deposition and other sworn testimony in related litigation or regulatory proceedings, expert

review of the viability of the TILA and HOEPA claims, two "roadmap" opinions from the Third

Circuit and, most recently, the denial of motions to dismiss in the MDL Litigation (save for the

finding of no jurisdiction as to the FDIC as receiver for GNBT and the dismissal of one RESPA

claim).  Certainly, this litigation is at a stage where a settlement is based on a fully informed

decision because the Parties have had an ample opportunity to adequately assess their chances of

succeeding on the merits.  *In re BGI, Inc.*, 465 B.R. at 380.

### 4.    Risk of Prevailing (Establishing Liability, Establishing Damages and Maintaining the Class Through Trial)

95.    Under *Grinnell*, these are three separate factors, but, as noted by this Court, the

Second Circuit considers these factors together to collectively assess a plaintiff's risks of

prevailing.  *In re BGI, Inc.*, 465 B.R. at 380 (citing *Wal–Mart Stores, Inc.*, 396 F.3d at 118).

ny-1099473

96.     Named Plaintiffs believe that they can establish liability and the Settling Defendants contend otherwise.  Named Plaintiffs were largely successful in avoiding PNC's motion to dismiss the MDL Litigation, but Named Plaintiffs would still face hurdles to recover against the Settling Defendants if the claims were to proceed to trial.  The Class Members face a number of affirmative defenses to their claims that may affect their ability to establish the Settling Defendants' liability as to each of their claims.  Further, while Named Plaintiffs believe the evidence of the alleged statutory violations is strong, at the viability briefing stage in the MDL Litigation, RFC, in the context of the Motion to Certify, proffered experts who contended that certain title charges were legitimate such that there was no APR understatement.  The Settling Defendants contend that they have other viable defenses to liability.  Thus, presuming Kessler Settlement Class certification at least at some level, the case could come down to a battle of the experts, and in such a case, settlement is favored over continued litigation.  *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267-68 (S.D.N.Y. 2012).

97.     Moreover, Named Plaintiffs must first prevail on the Motion to Certify, which has been met by vigorous opposition of the part of the Debtors, and the Settling Defendants have indeed asserted a variety of arguments against certification of a litigation class and against ultimate liability in both the MDL Litigation and this Court, many of which have not yet been addressed definitively as to the Debtors in the MDL Litigation (by operation of the stay) or by this Court.  Moreover, the granting of certification is always subject to challenge by a motion to decertify, *In re Wachovia Equity Sec. Litig.,* No. 08 Civ. 6171 (RJS), 2012 WL 2774969, *5 (S.D.N.Y. June 12, 2012), or permissive appeal, Fed. R. Civ. P. 23(f).

98.     If litigated, the Settling Defendants contend that there are many individualized issues that advise against certification.  Named Plaintiffs disagree and assert that the alleged common and widespread scheme that they assert underlies the MDL Litigation make this a near perfect class action lawsuit, and that the Third Circuit twice indicated in the settlement context that elements for certification, save the adequacy issue that has now been addressed, were present.

99.     Named Plaintiffs assert that the risk of establishing damages is slight because the statutes upon which the Kessler Settlement Class bases its claims expressly speak to the monetary remedy available under the statute.  Thus, Named Plaintiffs believe that, should they prevail on liability, damages are simply mathematical calculations based, primarily, on fees appearing on the HUD-1 settlement statement for each loan and the loan payment history for each loan.  The Settling Defendants contend that, assuming liability, mathematical formulas under HOEPA can and should be adjusted downward by the Court.

### 5.     The Ability of the Settling Defendants to Withstand a Greater Judgment

100.     The *Grinnell* factors also look to a settlement's fairness by examining a defendant's ability to pay a judgment greater than the amount offered in a settlement.  *In re BGI, Inc.*, 465 B.R. at 380.  "Specifically, 'evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement'" because the possibility of a future bankrupt judgment debtor does not benefit any of the parties involved in a class action. *Id.* (quoting *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)). Nonetheless, "the fact 'that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate.'"  *Id.* (quoting *In re*

*PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997)).

101.    As noted by this Court, "[i]n the context of an ongoing bankruptcy case, 'this factor is of uncertain utility . . . as the defendant's ability to pay more is clearly constrained.'" *Id.* at 380 (quoting *WorldCom,* 347 B.R. at 147).  Here, the assets of the Settling Defendants are finite and subject to several billions of dollars of other unsecured claims.  *See* Thompson Declaration at ¶ 18.  The Kessler Settlement Class could have chosen not to become parties to the PSA and not settle with the Debtors.  They would have had the right to contest all of the provisions of the Plan, including the funding of the Borrower Claims Trust, to potentially enhance the recovery to the Kessler Settlement Class.  However, the Class Representatives devoted substantial resources to enable them to participate in the Chapter 11 Cases in a meaningful manner.

102.    The Class Representatives are cognizant of the many billions of dollars of claims asserted against these Chapter 11 estates by a diverse creditor constituency; the intercompany issues between Ally and the Debtors; and the extent of the Debtors' assets absent the contemplated Ally contribution.  It was in the context of the PSA that the Class Representatives engaged in settlement negotiations with the Debtors, and, not unlike all other creditor constituencies who have become Consenting Claimants, the Class Representatives understand that the process of arriving at a consensual Plan required compromise on the part of all parties to the Plan mediation.  While the Class Representatives did not settle the Class Proofs of Claim in the context of the PSA, they chose to be Consenting Claimants in the process designed to achieve near universal consensus among the vast majority of the Debtors' creditor constituents in the context of the Plan under which creditors will receive meaningful recoveries.

103.    Accordingly, this factor also supports the reasonableness of the Settlement Agreement.

> **6.**    **The Range of Reasonableness of the Settlement Fund In Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

104.    A court analyzes the final two *Grinnell* factors together "'since both speak to the fairness of the settlement's terms relative to the possible outcomes of litigation.'" *In re BGI, Inc.*, 465 B.R. at 381.  As explained by this Court:

> The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). Moreover, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.,* 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (citations omitted); *see also Air Line Pilots Ass'n v. American Nat'l Bank and Trust Co. of Chicago (In re Ionosphere Clubs, Inc.),* 156 B.R. 414, 431 (S.D.N.Y. 1993) ("The weighing of a claim against compensation cannot be . . . exact. Nor should it be, since an exact judicial determination of the values in issue would defeat the purpose of compromising the claim . . . ."). On this point, the *Grinnell* court observed that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."

*In re BGI, Inc.*, 465 B.R. at 381; *see also In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("'the dollar amount of the settlement by itself is not decisive in the fairness determination, and the fact that the settlement fund may equal only a fraction of the potential recovery at trial does not render the settlement inadequate'") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997)).

42

105.    The Allowed Claim of $300 million is a reasonable amount when compared to the total damages that the Kessler Settlement Class claimants assert that they could recover against the Settling Defendants before this Court.  *See* Thompson Declaration at ¶ 22.  At this time, the ultimate recovery to the Kessler Settlement Class claimants from the Borrower Claims Trust is unknown given that the total number of borrower claims is not yet finally determined.  Current estimates, however, place the Kessler Gross Recovery at approximately $27 million.  Additionally, beyond that Borrower Claims Trust recovery, under the assignment of the Insurance Rights contemplated by the Settlement Agreement (if successful against the Insurers), the Class Members have an opportunity to realize a substantial additional recovery on the Allowed Claim.

106.    To achieve a "best possible" recovery, among other things, Named Plaintiffs would have to establish equitable tolling for many Class Members as to the RESPA and TILA/HOEPA claims and would have to overcome a number of proof hurdles relative to those claims and the RICO claim, as well as overcome Debtors' contention that the court can and should reduce the HOEPA damages.  Named Plaintiffs believe that they could prevail while the Settling Defendants deny liability and believe they could successfully defend these claims.

107.    In light of the complexity of this case and the risk of a lesser recovery if not settled, the Settlement Agreement is entirely in the range of reasonableness.  *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849-50 (E.D. La. 2007) ("'inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'") (quoting *Nelson v. Waring,* 602 F. Supp. 410, 413 (N.D. Miss. 1983)); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P. (In re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 409-

10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

108.    It is also appropriate for a court to defer to the judgment of experienced counsel who have competently evaluated the parties' claims and defenses.  *In re BGI, Inc.*, 465 B.R. at 381 ("When attorneys for both parties to a settlement believe that the agreement is fair, reasonable and adequate, this factor weighs in favor of approval."); *see also In re IKON Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166, 181 (E.D. Pa. 2000) ("the court should avoid conducting a mini-trial and must, 'to a certain extent, give credence to the estimation of the probability of success proffered by class counsel.'"); *E.E.O.C. v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985) ("court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights").

109.    The amount of the Allowed Claim, the amount of the Borrower Claims Trust distribution and the assignment of Insurance Rights to which the Settling Defendants have agreed in order to resolve Named Plaintiffs' claims for damages and the other claims encompassed by the release, when balanced against the delay, cost, expense and risk of trial, particularly in light of all the complications and limitations on recovery imposed by the Chapter 11 Cases, demonstrates unequivocally that the Settlement Agreement is fair, reasonable and adequate for the Class Members.  As such, the final *Grinnell* factors are satisfied.

### (iii)    *The Settlement Agreement is Substantively Fair Pursuant to Bankruptcy Rule 9019*

110.    Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing.  Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate."  11 U.S.C. § 105(a).  "As a general matter,

'[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and

further parties' interests in expediting the administration of the bankruptcy estate.'"    *In re*

*Trinsum Grp., Inc.*, No. 08-12547 (MG), 2013 WL 1821592, at *3 (Bankr. S.D.N.Y. Apr. 30,

2013) (quoting *In re Dewey & LeBoeuf LLP,* 478 B.R. 627, 641-42 (Bankr. S.D.N.Y. 2012).

111.    "Approval of a compromise and settlement is committed to the sound discretion

of the Court." *In re Drexel Burnham Lambert Grp.*, 134 B.R. 493, 494 (Bankr. S.D.N.Y. 1991).

As noted by this Court:

> Courts have developed standards to evaluate if a settlement is fair
> and equitable and identified factors for approval of settlements
> based on the original framework announced in *TMT Trailer Ferry,*
> 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968). *See Motorola,
> Inc. v. Official Comm. of Unsecured Creditors (In re Iridium
> Operating LLC),* 478 F.3d 452, 462 (2d Cir. 2007). Those factors
> are interrelated and require the Court to evaluate: (1) the balance
> between the litigation's possibility of success and the settlement's
> future benefits; (2) the likelihood of complex and protracted
> litigation, "with its attendant expense, inconvenience, and delay,"
> including the difficulty in collecting on the judgment; (3) "the
> paramount interests of the creditors," including each affected
> class's relative benefits "and the degree to which creditors either
> do not object to or affirmatively support the proposed settlement";
> (4) whether other parties in interest support the settlement; (5) the
> "competency and experience of counsel" supporting, and "[t]he
> experience and knowledge of the bankruptcy court judge"
> reviewing, the settlement; (6) "the nature and breadth of releases to
> be obtained by officers and directors"; and (7) "the extent to which
> the settlement is the product of arm's length bargaining." *In re
> Iridium Operating LLC,* 478 F.3d at 462. The burden is on the
> settlement proponent to persuade the Court that the settlement is in
> the best interests of the estate. *See* 8 Norton Bankruptcy Law and
> Practice 3d § 167:2.

*In re BGI, Inc.*, 465 B.R. at 381-82.

112.    "In evaluating the necessary facts, a court may rely on the opinion of the debtor,

parties to the settlement, and the professionals." *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641

ny-1099473

(Bankr. S.D.N.Y. 2012).    Further, "the Court need not decide the numerous issues of law and fact raised by a compromise or settlement, 'but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'"  *In re Trinsum Grp., Inc.*, 2013 WL 1821592, at *4 (quoting *In re Adelphia Commc'ns Corp.,* 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).    The bankruptcy court "'does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery.'" *Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.*, 286 B.R. 239, 248 n.12 (S.D.N.Y. 2002) (quoting *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994)).    Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness.  *Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599, 608, 613 (2d Cir. 1983).

113.    "When determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'"  *Key3Media Grp., Inc. v. Pulver.com, Inc. (In re Key3Media Grp., Inc.)*, 336 B.R. 87, 93 (Bankr. D. Del. 2005) (citation omitted).    To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise."  *TMT Trailer Ferry, Inc.*, 390 U.S. 414, 424 (1968); *see also Key3Media Group*, 336 B.R. at 92 ("the bankruptcy court 'must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.'") (quoting *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996)).

114.    As this Court observed in *In re BGI, Inc.*, "[a]lthough the factors articulated in *Grinnell* do not precisely mirror those enumerated in *Iridium Operating*, the reasons behind approving the Settlement are also applicable in the *Bankruptcy Rule 9019* context." 465 B.R. at

ny-1099473

382.  Accordingly, as support for Bankruptcy Rule 9019 approval, the Parties adopt the Federal Rule 23 analysis set forth above in section E(ii) of this Motion.   Just as that analysis overwhelmingly supports a finding that the Settlement Agreement meets all the Federal Rule 23 requirements, so too does it establish that the Settlement Agreement is in the best interests of the Debtors' estates under the *Iridium* factors and Bankruptcy Rule 9019.

115.     More specifically, and as described in greater detail above, the issues at hand in the MDL Litigation are complex and have been ongoing for more than a decade.  The continued litigation of these issues would be time consuming and costly, and, while the Debtors believe they have meritorious class and liability defenses, would expose the Debtors to significant litigation risks as well as, if liability were established, a risk that a court would fail to use the discretionary authority the Debtors contend it has to limit the large damages that might result from the use of mathematical formulas.  *See* Thompson Declaration at ¶ 21.  By contrast, the execution of the Settlement Agreement would eliminate future litigation as well as the continued accrual of fee and expenses associated therewith.

116.     Approval of the Settlement Agreement is in the best interest of the Debtors and their creditors because it resolves the MDL Litigation in the most cost effective manner reasonable and caps the Debtors' liability at an amount that is fair and reasonable to all of the parties.  *See id.* at ¶ 21.  Moreover, if the Settlement Agreement is not approved, the Parties do not believe that they would agree to a resolution on better terms than what is presently before the Court.  *See id*.  Furthermore, while the Parties do not anticipate any opposition to the Settlement Agreement, the degree to which creditors or other parties in interest support or object to the Settlement Agreement will be established by the time of the fairness hearing, after the Motion has been filed and served in accordance with the Case Management Procedures Order, approved

by this Court on May 23, 2012 [Docket No. 141], and the Class Notice has been distributed to the Kessler Settlement Class.

117.    As addressed in greater detail above, the Settlement Agreement was negotiated by the Parties without collusion, in good faith, from arm's-length bargaining positions and with the benefit of having conducted extensive investigations and analyses of the facts.  In addition, all Parties were represented by experienced and sophisticated counsel through the MDL Litigation and in subsequent negotiations – the Settling Defendants were represented by both their bankruptcy counsel and defense counsel, the Named Plaintiffs were represented by Class Counsel, the sub-classes for the Kessler Settlement Class were each represented by separate Allocation Counsel, and both counsel for the Creditors' Committee and Special Borrowers' counsel were involved in the negotiation of and/or approved the Settlement Agreement.

118.    Accordingly, the Debtors submit that the *Iridium* factors all strongly militate in favor of approving the Settlement Agreement under Bankruptcy Rule 9019.

### (iv)    *The Allocation Plan is Fair*

119.    The proposed individual distributions to the Class Members from the Kessler Net Recovery that are described above are also fair and equitable.  This is yet another factor favoring the Settlement Agreement. *See Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999) (noting that fairness of distribution is "the second element of equity within a class").[18]

120.    "'To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate . . . . An allocation

---

[18] The "inclusiveness of the class" is the first element of equity within a class identified by the Supreme Court.  *See Ortiz,* 527 U.S. at 854.

ny-1099473

formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *In re Wachovia Equity Sec. Litig.*, No. 08 CIV. 6171 (RJS), 2012 WL 2774969, at *5 (S.D.N.Y. June 12, 2012) (quoting *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).   In that regard, "[n]either the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007) (citation omitted); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 193 (5th Cir. 2010); *see also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

121.    As explained above, the Class Members will receive *pro rata* distributions from the settlement fund based on the amounts of their loans and the estimated settlement fees, and the actual interest paid on the loans.  Each Class Member is treated the same based upon his or her own damages experience – a methodology that is by definition fair and equitable.  Moreover, in regard to the loans that closed before May 1, 2000, the 18.5% discount reflects the relative merit of the statute of limitations defense as determined by separate Allocation Counsel in a mediation specific to this issue.  Each aspect of the allocation has a reasonable basis and is fair to the Class Members.  *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *7 ("'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel'") (citation omitted).

49

## CONCLUSION

122.    The detailed analysis above overwhelmingly establishes that the Settlement Agreement is appropriate under Bankruptcy Rules 7023 and 9019 and provides a meaningful recovery to the Kessler Settlement Class.    The Settlement Agreement was achieved in conjunction with the mediation process overseen by Judge Peck involving knowledgeable and informed counsel for the Settling Defendants and the Kessler Settlement Class and which effort also involved counsel for the Creditors' Committee.    In addition, the allocation relative to the equitable tolling sub-classes was derived from a separate mediation before Charles Atwell, a former circuit court judge, in which each subclass was represented by separate Allocation Counsel.    Moreover, SilvermanAcampora, as special borrowers' counsel, reviewed the Settlement Agreement and found it to be reasonable.

123.    Accordingly, the Parties respectfully request that the Court enter: (a) the proposed Preliminary Approval Order, attached to the Settlement Agreement as Exhibit B, (1) granting certification of the Kessler Settlement Class for purposes of settlement only, (2) appointing proposed Class Counsel for settlement purposes, (3) preliminarily approving the Settlement Agreement, (4) approving the form and manner of Class Notice and (5) scheduling a fairness hearing to consider approval of the Settlement Agreement on a final basis; and (b) the proposed Final Approval Order, substantially in the form attached to the Settlement Agreement as Exhibit C, approving the Settlement Agreement on a final basis following the fairness hearing.

## NOTICE

124.    Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (a) the Office of the United States Trustee for the Southern District of New York; (b) the Office of the United States Attorney General and the attorneys general of each state; (c)

50

the Office of the New York Attorney General; (d) the Office of the United States Attorney for

the Southern District of New York; (e) the Internal Revenue Service; (f) the Securities and

Exchange Commission; (g) each of the Debtors' prepetition lenders, or their agents, if applicable,

(h) each of the indenture trustees for the Debtors' outstanding note issuances; (i) Ally Financial

Inc.; (j) Barclays Bank PLC, as administrative agent for the lenders under the debtor in

possession financing facility; (k) Ocwen Loan Servicing, LLC and its counsel; (l) the Creditors'

Committee; (m) the Kessler Settlement Class and their counsel; (n) the Insurers and their

counsel; (o) PNC Bank, N.A.; (p) the Federal Deposit Insurance Corporation, as receiver for

Guaranty National Bank of Tallahassee; and (q) all parties requesting notice pursuant to

Bankruptcy Rule 2002.  The Debtors submit that, in view of the facts and circumstances, such

notice is sufficient and no other or further notice need by provided.

## NO PRIOR REQUEST

125.    Except as otherwise noted herein, no prior motion for the relief requested herein

has been made to this Court or any other court.

51

**WHEREFORE**, the Parties respectfully request the Court enter the Preliminary
Approval Order and then enter the Final Approval Order following the fairness hearing and such
other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 31, 2013

*/s/  Daniel J. Flanigan*
**POLSINELLI SHUGHART**
Daniel J. Flanigan, Esq.
805 Third Avenue, Suite 2020
New York, New York 10022
(212) 684-0199 (Telephone)
(212) 759-8290 (Facsimile)
*Bankruptcy Counsel for*
*Class Claimants*

*/s/  R. Frederick Walters*
**WALTERS, BENDER,**
**STROHBEHN & VAUGHAN**
David M. Skeens, Esq.
2500 City Center Square
1100 Main
Kansas City, Missouri  64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
*Co-Lead Counsel for Class Claimants*

*/s/  R. Bruce Carlson*
**CARLSON LYNCH LTD.**
R. Bruce Carlson, Esq. *(Pro Hac Pending)*
115 Federal Street, Suite 210
Pittsburgh, Pennsylvania 15212
(412) 322-9243 (Telephone)
(412) 231-0246 (Facsimile)
*Co-Lead Counsel for Class Claimants*

*/s/  Norman S. Rosenbaum*
**MORRISON & FOERSTER LLP**
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000 (Telephone)
(212) 468-7900 (Facsimile)
*Counsel to the Debtors and*
*Debtors in Possession*

52

ny-1099473