# **Exhibit 1**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: ) | Case No. 12-12020 (MG) |
| ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., ) | Chapter 11 |
| ) |  |
| Debtors. ) | Jointly Administered |
| ) |  |

**DECLARATION OF WILLIAM R. THOMPSON, GENERAL COUNSEL OF RESIDENTIAL CAPITAL, LLC, IN SUPPORT OF JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 7023 AND 9019 FOR AN ORDER (1) GRANTING CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY, (2) APPOINTING CLASS REPRESENTATIVE AND CLASS COUNSEL FOR PURPOSES OF SETTLEMENT ONLY, (3) PRELIMINARILY APPROVING THE SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS, ON THEIR OWN BEHALF AND ON BEHALF OF THE CLASS OF SIMILARLY SITUATED PERSONS AND THE DEBTORS, (4) APPROVING THE FORM AND MANNER OF NOTICE TO THE CLASS, (5) SCHEDULING A FAIRNESS HEARING TO CONSIDER APPROVAL OF THE SETTLEMENT AGREEMENT ON A FINAL BASIS AND RELATED RELIEF, AND (6) APPROVING THE SETTLEMENT AGREEMENT ON A FINAL BASIS <u>AND GRANTING RELATED RELIEF</u>**

I, William R. Thompson, under penalty of perjury, declare as follows:

1. I am the General Counsel ("**GC**") of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"). I submit this declaration (the "**Declaration**") in support of the *Joint Motion Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7023 and 9019 For An Order (1) Granting Class Certification for Purposes of Settlement Only, (2) Appointing Class Representative and Class Counsel for Purposes of Settlement Only, (3) Preliminarily Approving the Settlement Agreement Between Plaintiffs, On Their Own Behalf and On Behalf of the Class of Similarly Situated Persons and the Debtors, (4) Approving the Form and Manner of Notice to the Class, (5) Scheduling a Fairness Hearing to Consider Approval of the Settlement*

ny-1100954

*Agreement on a Final Basis and Related Relief and (6) Approving the Settlement Agreement on a Final Basis and Granting Related Relief* (the "**Motion**").[1]

2. I first joined the company in April 2005, serving as Chief Litigation Counsel for GMAC Mortgage, LLC ("**GMACM**") and later for its parent, Residential Capital, LLC ("**ResCap**"). I assumed the role of GC for ResCap and its subsidiaries in the first quarter 2013 upon the accession of former ResCap General Counsel Tammy Hamzehpour to the position of Chief Business Officer for ResCap.

3. Prior to my time with GMACM and ResCap, I was a SVP and Associate General Counsel in charge of litigation for American Business Financial Services and before that Chair of the Litigation Group for the City of Philadelphia Law Department. I also spent some time as Acting City Solicitor for the City of Philadelphia. Before joining the Philadelphia Law Department, I was a partner at Klehr, Harrison, Harvey, Branzburg LLP in Philadelphia and maintained a sophisticated commercial litigation practice there for over twelve (12) years. I began my career as an Assistant District Attorney in the Philadelphia District Attorney's Office. All told, I have over thirty (30) years of litigation experience.

4. I offer this Declaration to show that the settlement agreement (the "**Settlement Agreement**"), dated June 27, 2013, entered into by and between (i) the Debtors, including ResCap, Residential Funding Company, LLC ("**RFC**") and GMAC Residential Holding Company, LLC ("**GMAC Holding**" and together with ResCap and RFC, the "**Settling Defendants**"), and (ii) Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard ("**Named Plaintiffs**" and together with the Settling Defendants, the "**Parties**"), on behalf of themselves and similarly situated class members (the "**Class**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

**Members**" or the "**Kessler Settlement Class**") represents a fair and reasonable compromise in connection with the MDL Litigation (defined below) and is in the best interests of the Debtors' estates.

5. Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within the Debtors' various business units; my review of the Debtors' books and records as well as other relevant documents; my discussions with other members of the Debtors' management team; and information supplied by the Debtors' consultants. In making my statements based on my review of the Debtors' books and records, relevant documents, and other information prepared or collected by the Debtors' employees or consultants, I have relied upon these employees and consultants to accurately record, prepare, collect, and/or verify any such documentation and other information.

A.     The Class Action

6. As of May 14, 2012 (the "**Petition Date**"), several putative class actions against RFC and certain other named defendants, including Community Bank of Northern Virginia ("**CBNV**"), now owned by PNC Bank, N.A. ("**PNC**"), and the Federal Deposit Insurance Corporation ("**FDIC**") as receiver for Guaranty National Bank of Tallahassee ("**GNBT**"), were pending in the United States District Court for the Western District of Pennsylvania (the "**District Court**") as part of a multidistrict proceeding styled *In Re: Community Bank of Northern Virginia Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, 05-1386 (the "**MDL Litigation**").

7. The MDL Litigation related primarily to some 44,535 second mortgage loans originated to borrowers nationwide by either CBNV or GNBT that had been acquired by RFC.

3

ny-1100954

8. The loans involved are so called "high-cost" loans under the Home Ownership and Equity Protection Act, 15 U.S.C. § 1641 ("**HOEPA**"). Each loan transaction was governed by and subject to the Real Estate Settlement Practices Act, 12 U.S.C. § 2601 et seq. ("**RESPA**"), the Truth in Lending Act ("**TILA**") and HOEPA (15 U.S.C. § 1602 and Regulation Z at 12 C.F.R. § 226.2).

9. In the MDL Litigation, two prior class action settlements were approved by the District Court but on appeal each was vacated by the Third Circuit Court of Appeals and remanded for further proceedings. The prior settlements were based, primarily, on RESPA claims, and both of the objections to those settlements focused on the contention that claims under TILA and HOEPA had not been asserted or properly valued in the settlements.

10. Following the second appeal and remand in the MDL Litigation, primary counsel for the plaintiffs that had entered into the prior settlements joined forces with primary counsel for the objectors (collectively, the "**Plaintiffs**"). The Plaintiffs then filed Plaintiffs' Joint Consolidated Amended Class Action Complaint asserting claims under RESPA, TILA, HOEPA and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("**RICO**"), a copy of which is annexed to the Motion as **Exhibit 6**.

11. Upon the Petition Date, the continuation of the MDL Litigation against RFC was stayed by virtue of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code. In addition, between November 2 and November 16, 2012, Named Plaintiffs filed class proofs of claim against RFC, ResCap, GMAC-RFC Holdings Company, LLC and GMACM (collectively, the "**Class Proofs of Claim**").

4

ny-1100954

B.  **The Negotiation of the Settlement Agreement**

12.  Beginning in April 2013, the Debtors, counsel to Named Plaintiffs, along with representatives of the vast majority of the Debtors' significant creditors, participated in mandatory plan mediation sessions under the supervision of the Court-appointed mediator, the Honorable James M. Peck, United States Bankruptcy Judge.  The mediation sessions ultimately resulted in a global resolution dated May 14, 2013 culminating in the Plan Support Agreement ("**PSA**") by and among the Debtors, the Creditors' Committee, the Consenting Claimants (as defined in the Motion) and Ally Financial Inc. ("**Ally**").  The Kessler Settlement Class are among the Consenting Claimants.  Counsel to the Debtors and Named Plaintiffs explored the concept of settlement during this phase of the mediation, but no resolution was achieved.

13.  The PSA was not conditioned upon the Parties achieving a settlement and while they are parties to the PSA, the Kessler Settlement Class had the right to withdraw from the PSA under certain conditions.  Subsequent to the execution of the PSA, the Parties resumed their settlement discussions and engaged in extensive formal negotiations.[2]  These efforts included an all-day negotiation session held on June 18, 2013 that lasted well into the evening.  Counsel to the Debtors, Named Plaintiffs and the Creditors' Committee participated in the June 18 session.  These efforts resulted in an agreement in principle as to the primary components of the settlement.[3]

14.  Over the next few weeks counsel to the Parties and the Creditors' Committee devoted substantial efforts to the preparation of the Settlement Agreement.  This involved

---

[2] Throughout the settlement discussions, the Settling Defendants were represented by their bankruptcy counsel, Morrison & Foerster LLP, and their defense counsel in the MDL Litigation, Bryan Cave LLP.

[3] Counsel for the Settling Defendants also informed the insurers that issued the Policies of the court-ordered mediation, the subsequent settlement negotiations, the demands and offers exchanged by the Parties, and provided the insurers with an opportunity to participate in some of the settlement meetings with counsel for the Kessler Settlement Class.

5

ny-1100954

lengthy negotiations and extensive joint drafting sessions that culminated in the Settlement Agreement. Upon approval by this Court, the Settlement Agreement will resolve all issues among the Settling Defendants, Named Plaintiffs and the other putative Class Members relating to the 44,535 second mortgage loans at issue.

15. The settlement will include all persons in the Kessler Settlement Class who do not, in accordance with the terms of the Settlement Agreement, file a timely request to opt out of the Kessler Settlement Class.

16. I believe that the Settlement Agreement is the product of arm's length negotiations between the Parties. At the time of settlement, each of the Parties had made an extensive investigation of the facts through formal and informal discovery and undertaken their own analyses of the merits of the case based on those facts and existing law. These efforts allowed for an informed negotiation between Named Plaintiffs and the Settling Defendants. I understand that during the settlement discussions, the Parties were all aware of the major issues related to the Class Members' claims for damages. Moreover, it is my understanding that all sides had ample opportunity to assess the likelihood that the putative class claim would be certified as a class proof of claim pursuant to the Motion to Certify (as defined in the Motion), and indeed, the Parties have extensively briefed this issue. Likewise, the Parties had ample opportunity to evaluate the merits of the Class Members' claims for damages, as well as the likelihood and extent that Named Plaintiffs may have prevailed on their claims for damages.

17. Accordingly, I, along with the Debtors, believe that the Settlement Agreement is the product of a well informed assessment of all the risks of litigation either before this Court or in the MDL Litigation.

### C.    Settlement Amounts and Allocation

18.    The assets of the Settling Defendants are finite and subject to several billons of dollars in unsecured claims.  Nonetheless, the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors (the "**Plan**") provides that a Borrower Claims Trust is to be established and funded with no less than $57.6 million.  Under the Settlement Agreement, the claims asserted by the Kessler Settlement Class are being reduced and allowed as an unsecured borrower claim, not subject to subordination under the Plan, in the amount of $300,000,000 against Debtor RFC only (the "**Allowed Claim**").  The other Class Proofs of Claim will be disallowed and expunged.

19.    It is my understanding that the Kessler Settlement Class will receive a distribution from the Borrower Claims Trust on account of the Allowed Claim in accordance with the terms of the Settlement Agreement and the Plan.  Out of the gross amount distributed on account of the Allowed Claim, costs, attorneys' fees and incentive awards will be deducted.  The net amount, defined in the Settlement Agreement as the Kessler Net Recovery, will then be divided among Class Members according to the formulas contained in the Settlement Agreement.

20.    Additionally, as part of the settlement, the Settling Defendants have agreed to assign certain insurance rights (the "**Insurance Rights**") that are believed to provide coverage for the alleged conduct that is the subject of the claims of the Kessler Settlement Class.  Thus, a recovery of insurance proceeds may also be available to the Kessler Settlement Class claimants.  If payment is received or obtained under the applicable policies then such amounts shall also be a recovery for the Kessler Settlement Class claimants.

21.    The Settlement Agreement is the product of extensive, arm's length negotiations following twelve (12) years of complex litigation and was reached in connection with the

7

mediation ordered by this Court and overseen by Judge Peck, and as a result of the substantive negotiations that followed the execution of the PSA. I understand that the continued litigation of these issues would be time consuming and costly, and while the Debtors have meritorious class and liability defenses, continued litigation could potentially expose the Debtors to significant damages. Accordingly, and after consideration of the substantial risks attendant on litigating these claims on the merits, the Debtors believe that approval of the Settlement Agreement is in the best interest of the Debtors and their creditors because it resolves the MDL Litigation in the most cost effective manner reasonable and caps the Debtors' liability at an amount that is fair and reasonable to all of the parties. Moreover, if the Settlement Agreement is not approved, the Debtors do not believe that the Parties would agree to a resolution on terms more favorable to the Debtors than what is presently before the Court.

22. The Debtors believe that the Allowed Claim is a reasonable amount when compared to the total damages that the Kessler Settlement Class claimants could potentially recover against the Settling Defendants before this Court, which I understand are in excess of $1.87 billion. In agreeing to the Allowed Claim, the Debtors, with the assistance of their professional advisors, carefully considered the risks inherent in continuing the litigation of this matter both in connection with class certification implicated by the pending Motion to Certify and, were the class to be certified as an allowed class claim, on the underlying merits.

23. As to class certification, the Western District of Pennsylvania twice certified a settlement class in this case, and although the Third Circuit reversed both certifications, the Third Circuit did make several general comments suggesting that the Plaintiffs' RESPA, TILA and HOEPA claims may be certified and that are problematic for our equitable tolling arguments – or at least for the prospect of resolving the equitable tolling issues before a trial.

While the Debtors do not believe that these prior determinations are binding (as the Plaintiffs urge), there is a risk that the Bankruptcy Court will grant the Motion to Certify.

24. In addition, without a settlement, litigation will necessitate extensive document discovery that would be extremely expensive and burdensome. Many voluminous loan files are available only in hard copy in off-site storage, but there is also a large set of electronic materials. As noted, much of the evidence is in the hands of third parties who would require subpoenas and perhaps compensation for compliance, and whose record-keeping situations are unknown. Both the Plaintiffs and the Debtors would be likely to seek to take more than the ten (10) fact depositions per side routinely allowed under Federal Rule of Civil Procedure 30, and both sides would have several expert witnesses. Trial could be expected to take weeks and involve a large trial team of lawyers and experts.

25. Under any scenario, the Debtors' estates and in likelihood, subsequent to the Plan Effective Date, the Borrower Claims Trust, would need to devote substantial financial and human resources to the defense of the action, which could take several months and likely much longer to resolve through contested litigation.

26. I understand that the Creditors' Committee has endorsed the settlement. I believe that because the Settlement Agreement resolves a significant potential liability of the estates on reasonable terms, it is in the best interests of the estates and facilitates the Debtors' exit from bankruptcy protection under the Plan. I further understand that if consummated, the Settlement Agreement will provide meaningful recoveries to tens of thousands of the Debtors' current and former borrowers with the potential for enhanced recoveries from available insurance.

27. Based on all of the factors described above, I, along with the Debtors, have concluded that the Settlement Agreement is in good faith and eminently reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| New York, New York<br>Dated: July 31, 2013 | /s/ William R. Thompson<br>William R. Thompson<br>General Counsel of Residential Capital, LLC |