# Exhibit 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Case No.: 12-12020 (MG) |
| Debtors. | Jointly Administered |

DECLARATION OF R. FREDERICK WALTERS
IN SUPPORT OF JOINT MOTION PURSUANT TO 11 U.S.C. § 105 AND FED. R.
BANKR. P. 7023 AND 9019 FOR AN ORDER (1) GRANTING CLASS CERTIFICATION
FOR PURPOSES OF SETTLEMENT ONLY, (2) APPOINTING CLASS
REPRESENTATIVE AND CLASS COUNSEL FOR PURPOSES OF SETTLEMENT
ONLY, (3) PRELIMINARILY APPROVING THE SETTLEMENT AGREEMENT
BETWEEN PLAINTIFFS, ON THEIR OWN BEHALF AND ON BEHALF OF THE
CLASS OF SIMILARLY SITUATED PERSONS AND THE DEBTORS, (4) APPROVING
THE FORM AND MANNER OF NOTICE TO THE CLASS, (5) SCHEDULING
A FAIRNESS HEARING TO CONSIDER APPROVAL OF THE SETTLEMENT
AGREEMENT ON A FINAL BASIS AND RELATED RELIEF, AND (6) APPROVING
THE SETTLEMENT AGREEMENT ON A FINAL BASIS
AND GRANTING RELATED RELIEF

R. Frederick Walters, pursuant to 28 U.S.C. §1746, hereby declares as follows in support

of the "**Joint Motion**" referenced in the above caption:

1. I am a shareholder in the firm of Walters, Bender, Strohbehn & Vaughan, P.C.

("**Walters Bender**"). This declaration ( the "**Declaration**') is a Supplement to the Declaration

of R. Frederick Walters, David M. Skeens and R. Bruce Carlson in Support of Motion to

Apply Bankruptcy Rule 7023 and to Certify Class Claims (Doc. 2047), which describes the

long history of a multidistrict proceeding styled *In Re: Community Bank of Northern Virginia*

*Second Mortgage Lending Practice Litigation*, MDL No. 1674, Case Nos. 03-0425, 02-01201,

05-0688, 05-1386 (the "**MDL Litigation**")[1] which litigation involved as a defendant one of

the debtor entities, Residential Funding Company, LLC ("**RFC**"), and the effort to assert and

---

[1] Capitalized terms not defined herein shall have the definition set forth in the Settlement Agreement that is attached
to the Joint Motion as Exhibit 5.

1

seek certification of those class action claims in the Bankruptcy Cases against certain Debtors including Residential Capital, LLC, RFC and GMAC Residential Holding Company, LLC.

2. These class claims relate to 44,535 second mortgage loans (some 70,000 plus individual borrowers) originated by Community Bank of Northern Virginia (now PNC Bank) or Guaranty National Bank of Tallahassee and then almost immediately purchased by RFC.

3. This past spring I was involved on behalf of the **Kessler Class Claimants**, along with representatives of almost all the Debtors' significant creditors, in Court ordered **Plan** mediation sessions overseen by the Honorable James M. Peck, United States Bankruptcy Judge. From this considerable effort, the participating parties reached a global resolution on May 14, 2013 as set forth in a Plan Support Agreement (the "**PSA**") by and among the Debtors, the Creditors' Committee, the Consenting Claimants and Ally Financial Inc. ("**Ally**"). The Kessler Settlement Class that I represent was among the Consenting Claimants.

4. The PSA was not conditioned upon any settlement of the class action claims of the Kessler Class Claimants against certain Debtor entities but it did contemplate continued settlement discussions between the Kessler Class Claimants and the Debtors. Such discussions did continue, culminating in a lengthy mediation session on June 18, 2013 (all day and late into the evening) involving the Kessler Class Claimants, the Debtors and the Creditors' Committee.

5. As a result of those informed and lengthy negotiations, the Parties came to a resolution (the "**Settlement**") that is memorialized in the Kessler Settlement Agreement ("**Agreement**"), which proposed class action settlement is the subject of the Joint Motion.

6. The purpose of this Declaration is: (a) to describe generally the manner in which the damages for the individual **Kessler Settlement Class Members** will be calculated and allocated, including the process pursuant to which **Allocation Counsel** were retained for the purpose of

negotiating and resolving the allocation proposal described in the Agreement at ¶6(c)(ii) relating

to the issue of equitable tolling in relation to certain Kessler

Settlement Class Members' RESPA, TILA and HOEPA claims; and (b) to speak to the fairness,

adequacy and reasonableness of the Settlement.

### Overall Calculation of the Individual Damages of Kessler Settlement Class Members

7. Under the Plan, a Borrower Claims Trust will be established and funded in cash with

no less than $57.6 million subject to the Borrower Claims Trust True-up. As set forth in the

Settlement, the claims asserted by the Kessler Settlement Class are being reduced and allowed

as a non-subordinated general unsecured claim against RFC (the "**Allowed Claim**") in the

amount of $300 million.

8. Because of the Allowed Claim, the Kessler Settlement Class will receive distributions

(the "**Kessler Gross Recovery**") from the Borrower Claims Trust in accordance with the terms

of the Plan and the Settlement. Costs and expenses, attorneys' fees and incentive awards will be

deducted from the Kessler Gross Recovery to determine the net amount to be distributed to the

Kessler Settlement Class ( the "**Kessler Net Recovery**"). Those monies will be distributed to

the Class Members based on a formula to determine the actual damages suffered by each Class

Member as compared to the total of individual damages for all Class Members. The individual

damages are comprised of two (2) components - estimated fees and actual interest paid on that

Class Member's mortgage loan.

9. To arrive at each Class Member's damages, **Class Counsel** will employ economist

Kurt Kruger, Ph.D. to estimate the fees and then use that estimate to calculate the sum of the

estimated fees and actual interest paid for each Kessler Settlement Class Member. Dr. Krueger

will then calculate each Kessler Settlement Class Member's proportionate recovery based on

3

each Kessler Settlement Class Member's individual damages as compared to the total of all
Kessler Settlement Class Members' damages. Dr. Kruger has substantial experience conducting
the described analysis and computation of interest damages in other mortgage related litigation
that involved a like measure of damages. Dr. Krueger has estimated fees in several other
cases for class members for which actual fee data was not available using data similar to that
which is available in MDL Litigation. Those estimations served as the basis to allocate and pay
settlements to class members in several other cases in which the undersigned was appointed class
counsel. A copy of Dr. Krueger's CV is attached as **Exhibit A**.

10. Because the Debtors cannot supply actual fee data for the entire Kessler Settlement
Class on a timely or economically feasible basis, the fee component of the individual damages
will be estimated by Dr. Krueger using actual fee data from a sample of over four hundred
loans, including that of the Class Representatives from among the Kessler Settlement Class for
which Class Counsel has settlement fee data. Dr. Krueger will also be provided the loan files
for the 400-plus sample of loans and can therefore estimate the fees based on correlations to
other available data such as loan amount, interest rate and term, as he determines appropriate
and reliable. Considering his past experience estimating fees and his knowledge, training and
experience, Dr. Krueger will then, in consultation with Class Counsel, analyze the available data
using principles and methodologies that he as the holder of a Doctorate in Economics believes
are reliable to estimate the fees for each loan based on the data that is available for each loan.

11. For the interest paid component of damages, the Debtors have provided Class
Counsel with the actual amount of interest paid on the individual Kessler Settlement Class
Member loans as of the current date in the form of the data maintained by the Debtors. That
data will be presumed accurate based on the representations of the Debtors. Dr. Krueger

4

will assemble the interest data and then the estimated fees for each Kessler Settlement Class

Member's loan will be added to the actual amount of interest paid on such loan to determine the

total amount of individual damages for each Kessler Settlement Class Member.

12. Dr. Krueger will then apply the 18.5% discount to the Equitable Tolling Sub-Class

and determine each Kessler Settlement Class Member's proportionate share of the Kessler Net

Recovery.

### Allocation Adjustments Based on Certain Class
### Members' Reliance on Equitable Tolling

13. It was recognized as part of the overall allocation process that as to the RESPA,

TILA and HOEPA claims, certain members of the Kessler Settlement Class would rely on

equitable tolling to timely assert their claims while others were timely without the need for

equitable tolling.  In recognition of this fact, in the Agreement, the Kessler Settlement Class was

segregated into sub-classes - the Equitable Tolling Sub-Class and the Non-Equitable Tolling

Sub-Class - based on those within the Kessler Settlement Class that relied upon equitable tolling

and those that did not, respectively.  It was also determined, and the Agreement provides, that

such sub-classes should be independently represented solely for the purpose of determining an

appropriate allocation of the Kessler Net Recovery based on the equitable tolling issue. This

process was deemed "the allocation issue" and the separate and independent counsel to be

engaged to represent the interests of these sub-classes solely for the purpose of determining an

appropriate allocation were defined as Allocation Counsel.

*Equitable Tolling Subclass*

14. In effectuation of the allocation process referenced in the Agreement and as described

herein, on July 2, 2013 **Named Plaintiffs,** John and Rebecca Picard, interviewed and retained

Pittsburgh lawyer Arthur H. Stroyd, Jr. for the purpose of representing them and the Equitable Tolling Sub-class in negotiations to resolve the appropriate allocation of the Kessler Net Recovery as described in the Settlement.

15. Mr. Stroyd is a partner with the Pittsburgh, Pennsylvania law firm of Del Sole Cavanaugh Stroyd, LLC. His professional resume is attached hereto as **Exhibit B.** Mr. Stroyd is a former officer in the U.S. Navy serving in the legal office. Mr. Stroyd also served as a law clerk to the Honorable Joseph F. Weis, Jr., U.S. Court of Appeals for the Third Circuit. In private practice, Mr. Stroyd has focused on complex commercial litigation including class action litigation. He spent most of his private practice career with the international law firm, Reed Smith LLP, where he was one of its Managing Partners and Head of its Litigation Group. Currently, Mr. Stroyd's practice focuses on representing defendants in class action litigation and serving as a mediator, arbitrator and Early Neutral Evaluator. As his professional resume and history illustrates, Mr. Stroyd is imminently qualified to serve as independent Allocation Counsel for the Picards and the Equitable Tolling Sub-Class.

16. Mr. Stroyd was assisted in his work as Allocation Counsel by Edward Kilpela, a partner in the Del Sole firm. Mr. Kilpela heads Del Sole's class action litigation group. Before joining the Del Sole firm in 2012, Mr. Kilpela litigated and tried class actions and mass tort matters for Williams & Connolly LLP and then Wheeler Trigg O'Donnell LLP. He is a *cum laude* graduate of the University of Michigan law school. As his professional resume and history on the Del Sole web site illustrates, Mr. Kilpela is likewise well qualified to assist with Allocation Counsel's representation of the Picards and the Equitable Tolling Sub-Class.

*Non-Equitable Tolling Subclass*

17. In further effectuation of the allocation process referenced in the Agreement and as described herein, on July 2, 2013 Named Plaintiff Rowena Drennen interviewed and retained well known Kansas City lawyer, Richard H. Ralston for the purpose of representing her and the Non-Equitable Tolling Sub-Class in negotiations to resolve the appropriate allocation of the Kessler Net Recovery described in the Settlement.

18. Mr. Ralston is a former United States Magistrate Judge for the Western District of Missouri (1976-1988), and in that capacity he presided over numerous complex commercial litigation matters.  Currently Mr. Ralston is the head of The Ralston Law Group, LLC where he focuses his practice on serving as a mediator and arbitrator.  Previously, Mr. Ralston was Of Counsel to the Armstrong Teasdale law firm and a Director with the law firm of Polsinelli Shalton & Welte (now Polsinelli Shughart).  Mr. Ralston also has been a law professor at Creighton University School of Law and the University of Missouri at Kansas City.  His professional resume is attached as **Exhibit C**. During his legal career Mr. Ralston has represented clients in class litigation as well as mediated class cases.  Those class mediation efforts include second mortgage consumer cases very similar to the instant matter.  As his professional resume and history illustrates, Mr. Ralston is imminently qualified to serve as independent Allocation Counsel for Ms. Drennen and the Non-Equitable Tolling Sub-Class.

*Mediation*

19. In conformity with the Agreement and the process and structure for resolution of the allocation issue, on July 11, 2013, Counsel for the Equitable Tolling Sub-Class (Messrs Stroyd and Kilpela) and the Non-Equitable Tolling Sub-Class (Mr. Ralston) personally attended a mediation at the offices of Foland, Wickens, Eisfelder, Roper & Hofer, PC, 911 Main Street,

Kansas City, Missouri before Charles E. Atwell, a former judge of the Circuit Court of Jackson County, Missouri as part of the effort to resolve the allocation of the Kessler Net Recovery described in the Settlement. Regarding Mr. Atwell's qualifications, he was appointed Circuit Judge in Jackson County, Missouri on July 23, 1996 and served as a judge through November of 2012. He was a very accomplished and respected jurist. Missouri Lawyer's Weekly, the preeminent state-wide legal publication in Missouri, named Mr. Atwell as the Best Circuit Judge in the State in 2007. His judicial experience included presiding over complex commercial litigation matters and determining a number of limitations issues. Before becoming a judge, Mr. Atwell was a partner in the Kansas City, Missouri law firm of Wyrsch Atwell Mirakian Lee & Hobbs where he established a reputation locally and throughout the United States as a very skilled trial lawyer. Mr. Atwell also served as an Assistant Prosecuting Attorney with the Jackson County, Missouri prosecutor's office and an Assistant United States Attorney for the Western District of Missouri. His professional resume attached is hereto as **Exhibit D**.

20. In advance of that mediation, Allocation Counsel and Mr. Atwell were provided a host of materials to inform them relative to the claims of the Kessler Settlement Class and more specifically, the equitable tolling issue. Generally speaking, those items included the Kessler Settlement Agreement, the two substantial opinions from the Third Circuit generated in the MDL Litigation, the Joint Consolidated Amended Class Action Complaint from the MDL Litigation, the motions to dismiss that Complaint and the District Court's order generally denying the motions to dismiss and the class certification pleadings filed in both the MDL Litigation and in this bankruptcy proceeding. A copy of the index of the precise items supplied to Allocation Counsel and Mr. Atwell is attached hereto as **Exhibit E**.

21. It is my understanding from the "Settlement Points Relative to Mediation Conducted on July 11, 2013," which is attached hereto as **Exhibit F**, that following a day long mediation (9:00 a.m. until 3:00 p.m.), the respective Allocation Counsel negotiated and agreed to an individual damage reduction for the Equitable Tolling Sub-Class as referenced in paragraph 6(b) (ii) of the Agreement in the amount of eighteen and one half percent (18.5%).

22. Notably, Class Counsel was not present at and did not otherwise participate in the mediation conducted by Mr. Atwell with the independent Allocation Counsel on July 11, 2013.

23. Neither of the Allocation Counsel nor Mr. Atwell has been involved in this matter prior to their respective engagements. None of them has any monetary interest in the Settlement in regard to any share of any attorneys' fees awarded pursuant to the Settlement or otherwise other than payment of their lodestar from the proposed attorneys' fee award. Rather, Allocation Counsel will be paid a lodestar rate based upon their hourly rate and Mr. Atwell will be paid his hourly mediation fee from any award of attorneys' fees to Class Counsel.

24. I, along with all other Class Counsel, believe that the 18.5% reduction described above is fair, adequate and reasonable to all Class Members. This conclusion is based on numerous factors. First, the structure and process in the Agreement, including but not limited to the use of Sub-Classes for each side of the equitable tolling issue, is a process that was advocated by the United States Court of Appeals for the Third Circuit in its two opinions arising from the MDL Litigation. Second, the implementation of this process involved the engagement of highly experienced, knowledgeable and independent counsel - the Allocation Counsel - to represent the Sub-Classes with respect to the equitable tolling issue and resolution of the issue and both sides were thoroughly informed of the relevant facts and law on this issue. Third, the use of a formal mediation session to determine an appropriate allocation overseen by a respected and

9

knowledgeable retired judge as mediator provided structural assurance as to the objective nature of the process and the outcome.  _Fourth_, the lack of participation of Class Counsel in the actual mediation before Judge Atwell provides additional assurance as to the objective and fair nature of the process and outcome.  As such, I am confident that the allocation as negotiated and agreed upon by the Allocation Counsel who were well informed independent professionals under the supervision of an experienced retired trial judge and mediator is fair and reasonable.

25. Further, Class Counsel is very familiar with this precise equitable tolling issue from our ten-plus years of experience in the MDL Litigation.  That experience includes access to and the review of thousands of pages of documents derived from both formal and informal discovery that delineate the facts underlying the equitable tolling issue.  We have also engaged in thousands of pages of briefing in this matter including many devoted to the equitable tolling issue and a review of the relevant case law.  Among other things, those efforts resulted in two appeals to the United States Court of Appeals for the Third Circuit, which generated lengthy precedential opinions that discussed equitable tolling as well as many other issues.  Further, Class Counsel has considered the damages recoverable on the RESPA, TILA/HOEPA and RICO claims in bankruptcy as well as the fact that the RICO claim is timely as to all Class Members when evaluating the fairness, adequacy and reasonableness of the 18.5% discount for the Equitable Tolling Sub-Class. Considering these factors and based on our own knowledge, experience and professional judgment, Class Counsel believes the 18.5% discount for the Equitable Tolling Sub-Class is fair, adequate and reasonable for all  Kessler Settlement Class Members.

26. I have also reviewed the declaration of Ronald J. Friedman, Special Counsel to the Official Committee of Unsecured Creditors of Residential Capital, LLC, _et al,_ dated July

22, 2013, which was prepared pursuant to Article 6(d) of the Agreement. That declaration by independent counsel with no stake in the outcome provides yet additional evidentiary proof that the 18.5% discount for the Equitable Tolling Sub-Class is fair, adequate and reasonable.

27.    After carefully considering the Allocation Counsel structure and process, the independent Allocation Counsel mediation, the Allocation Counsel mediation outcome, the Special Counsel to the Official Committee of Unsecured Creditor's independent declaration and Class Counsel's own knowledge, experience and professional judgment, I believe the 18.5% discount for the Equitable Tolling Sub-Class is fair, adequate and reasonable.

### The Settlement is Fair Adequate and Reasonable

28. Regarding the overall settlement, it was the result of good faith, extensive, arm's length negotiations following over a decade of litigation and was reached through the mediation ordered by Judge Glenn and overseen by Judge Peck. As previously noted, the many years of the MDL Litigation spawned two Third Circuit opinions, each of which recognized the possibility of certification of these claims for settlement. To bolster our own experiences in the MDL Litigation when now thrust into the bankruptcy environment, we employed Daniel Flanigan, a highly experienced bankruptcy counsel to assist the Kessler Settlement Class Members in understanding the bankruptcy issues including those issues relating to the advancement of class action claims in a bankruptcy court and the ability to litigate and collect on these claims from the Debtors' estates. Certainly, the Kessler Settlement Class could potentially or theoretically achieve a higher claim through continued litigation, but that effort would not be without significant risk, particularly in terms of seeking monies from a finite pool of assets as to which a host of other substantial and sophisticated creditors seek their own recovery. Notably, the Allowed Claim substantially exceeds the amount of the prior settlements reached in the MDL

11

Litigation and the recovery from the Borrower Claims Trust should approach or perhaps exceed those amounts. In addition, under the terms of the Agreement and Plan, certain Insurance Rights in and to the **Policies** will be assigned to the Kessler Settlement Class thereby providing the Class the potential for a very significant recovery. As such, the overall Settlement is most certainly fair, adequate and reasonable.

29. I have participated in the drafting of the Joint Motion which this Declaration supports. I have also studied in detail the nine (9) *Grinnell* factors as referenced in the Motion that are used in the Second Circuit to analyze whether or not a settlement is fair, adequate and reasonable. I agree with and support the analysis in the Joint Motion with respect to the *Grinnell* factors. As that analysis demonstrates, the Settlement is indisputably fair, adequate and reasonable.

30. I have been appointed as class counsel in more than twenty (20) class settlements just since January 2007. All of those have been finally approved by a court as fair, adequate and reasonable. At least nineteen (19) of those involve consumer claims related to mortgage loans just as these are consumer claims related to mortgage loans. Based on my experience in other cases, my knowledge of the facts and law in this case, and my professional judgment of the risks involved, I believe the Settlement is fair, adequate and reasonable.

31. In the current Settlement, the Agreement provides for payment of individual incentive fees from the Kessler Gross Recovery to the remaining Class Representatives in the MDL Litigation in the individual amounts listed on Schedule 1 to the Agreement that, in the aggregate, total $72,500.00. Those incentive fees are in addition to any damage recovery the Class Representatives may receive and are designed to compensate the class representatives for their time and effort for serving as representatives of the Kessler Settlement Class which has produced a very substantial benefit for the entire Kessler Settlement Class. Those proposed incentive

fees are fair, adequate and reasonable in the circumstances of this case and will be explained in greater detail in supplemental pleadings that will be filed prior to the final Settlement Hearing.

32.    Likewise, the Agreement provides that Class Counsel will seek reimbursement of their reasonable litigation costs and expenses from the Kessler Gross Recovery in an amount not to exceed $1,500,000.00.    A major component of those expenses relates to the monies expended by my law firm to retain and pay experienced bankruptcy counsel, Daniel Flanigan, to assist the Kessler Class Members in navigating through the Bankruptcy Cases.    The remaining expenses are of the type customarily incurred in the prosecution of this type of litigation.    Those expenses continue to accrue and are fair and reasonable in the circumstances of this case and will be explained in greater detail in supplemental pleadings that will be filed prior to the final Settlement Hearing.

33. Last, the Agreement provides that Class Counsel will seek an award of attorneys' fees in an amount not to exceed 35% of any Kessler Net Recovery.    That proposed not to exceed award is fair and reasonable in the circumstances of this case when considering the duration of the representation, the extensive amount of work already performed and that yet remains to be performed including expected litigation as to the assigned Insurance Rights, the risk involved, the contingent nature of the representation, the complexity of the issues, the result obtained, the skill needed to prosecute the action and other factors for awarding attorneys' fees.    The "not to exceed" percentage is also reasonable based upon my experience in other class cases.    The proposed award will also be explained in greater detail in supplemental pleadings to be filed prior to the final Settlement Hearing.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: July 31, 2013

R. Frederick Walters

**Exhibit A**

VITA
# Kurt V. Krueger, Ph.D.
### April 24, 2013

## Employed Position

Senior Economist at John Ward Economics (1990 →)

## Professional Positions

Managing Editor — *Journal of Forensic Economics* (2009 →)
President — National Association of Forensic Economics (2013-14)

## Mailing Addresses

| | |
|---|---|
| Business Address | 8340 Mission RD, STE 235, Prairie Village, KS 66206 |
| Business Telephone | (913) 381-9420 |
| Business Fax | (913) 648-5740 |
| Email | Krueger@JohnWardEconomics.com |
| Home Address | 6215 W 156 TERR, Overland Park, KS 66223 |
| Home Telephone | (913) 710-5197 |

## Education

| | |
|---|---|
| Ph.D. Economics | University of Missouri-Kansas City, 2003 |
| M.A. Economics | University of Kansas, 1986 |
| B.S. Economics | University of Kansas, 1984<br>Graduated with Honors<br>Boynton Outstanding Senior in Economics Award<br>Boynton Junior and Senior Scholarship in Economics |

## Teaching and Research Experience

| | |
|---|---|
| Adjunct Professor | Rockhurst University, Heltzberg School of Management, 2004 (Law and Economics). |
| Lecturer | Graduate School of Business, University of Missouri-Kansas City, 1990 (International Finance). |
| Research Assistant | Institute of Public Policy and Business Research, University of Kansas, 1984-1988. |
| Teaching Assistant | Department of Economics, University of Kansas, 1985-1987. |

## Past Employed Positions

Research Associate      Spectrum Economics, Overland Park, KS, 1988-1990

## Organization Membership

American Academy of Economic and Financial Experts
American Economic Association
American Risk and Insurance Association
Midwest Economics Association
Missouri Valley Economic Association
National Association of Forensic Economics
Society of Labor Economists

## Past Professional Service

Vice President, Southern Region — National Association of Forensic Economics (elected term
        2004 through 2006)
Associate Editor — *Litigation Economics Review* (2000 to 2004)
Board of Editors — *Journal of Forensic Economics* (2000)
Associate Editor — *Journal of Forensic Economics* (1993-2000; 2002-2008)
Referee: *Journal of Forensic Economics* (since 1992)

## Peer Reviewed Journal Publications

"A Comment on "Self-Consumption in Wrongful Death Cases: Decedent or Family Income?""
*Journal of Forensic Economics*, April 2013, Vol. 24, No. 1, pp. 109-112.

"Personal Consumption and Single Persons: A Reply to Thomas Ireland" *Journal of Forensic
Economics*, April 2013, Vol. 24, No. 1, pp. 105-107.

"Personal Consumption and Single Persons: A Reply to Thomas Ireland" *Journal of Forensic
Economics*, September 2012, Vol. 23, No. 2, pp. 195-198.

"Personal Consumption and Single Persons" *Journal of Forensic Economics*, August 2011, Vol.
22, No. 2, pp. 143-163.

"The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency,
Shape, Percentile Points, and Bootstrap Standard Errors," with Gary R. Skoog and James E.
Ciecka. *Journal of Forensic Economics*, August 2011, Vol. 22, No. 2, pp. 165-229.

"The Income-Based Human Capital Valuation Methods in Public Health Economics Used by
Forensic Economics," with Scott D. Grosse. *Journal of Forensic Economics*, Volume 22,
Number 1 (June 2011).

"Two Definitional Issues with the Patton-Nelson Personal Consumption Tables: A Reply,"
*Journal of Forensic Economics*, Volume 21, Number 1 (December 2009).

"Economic Productivity by Age and Sex: 2007 Estimates for the United States," with Scott D
Grosse and Mercy Mvundura. *Medical Care* - Health Care Costs Supplement, Volume 47,
Number 7 Supplement 1 (July 2009).

"Two Definitional Issues with the Patton-Nelson Personal Consumption Tables: A Comment,"
*Journal of Forensic Economics*, Volume 20, Number 3 (April 2009).

"The Present Value of Lost Financial Support due to Wrongful Death," with Gary Albrecht.
*Journal of Legal Economics*, Volume 15, Number 1 (2008).

"Personal Consumption by Husbands and Wives" *Journal of Forensic Economics*, Volume 20,
Number 1 (2008).

"A Review of the Economic Foundations of Earnings and Discounting Theories Used in
Forensic Economics," with Gary R. Albrecht. *The Earnings Analyst*, Volume IX (2007).

"Worklife in a Markov Model with Full-Time and Part-Time Activity," with Gary Skoog and
Jim Ciecka. *Journal of Forensic Economics*, Volume 19, Number 1 (2006).

"Tort Remedy in the Law Versus Economic Restitution for Personal Injury and Wrongful Death"
with Patrick Fitzgerald. *The Earnings Analyst*, Volume VIII (2006).

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: the State of
Kansas," with John O. Ward. *Journal of Forensic Economics*, Volume 18, Number 2-3 (2005).

"Tables of Inter-year Labor Force Status of the U.S. Population (1998-2004) Usable in Operating
the Markov Model of Worklife Expectancy" *Journal of Forensic Economics*, Volume 17,
Number 3 (2004).

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: the State of
Missouri," with John O. Ward. *Journal of Forensic Economics*, Volume 16, Number 1 (2003).

"The Cost of Carry and Pre-Judgment Interest" with Susan Escher. *Litigation Economics
Review*, Volume 6, No. 1 (2003).

"Introduction to the Whole-time Concept" with John O. Ward and Gary R. Albrecht. *Journal of
Forensic Economics*, Volume 14, Number 1 (2001).

"Average Change in Wages: the ECI Advantage" *Litigation Economics Digest*, Volume 4,
Number 2, Winter 1999.

"Healthy Life Expectancy" *Litigation Economics Digest*, Volume 4, Number 1, Spring 1999.

"It's About Time: the Forensic Economic Evaluation" with Gary R. Albrecht and John O. Ward,
*Journal of Forensic Economics*, Volume11, Number 3, Fall 1998.

"Role of Productivity and Prices in Forecasting Wage Rates" with Gary R. Albrecht, *Journal of
Forensic Economics*, Volume 5, Number 3, Fall 1992.

## Books and Book Chapters

"The United States Approach to Computing Economic Damages Due to Personal Injury and Wrongful Death," with Gary R. Albrecht, in *Personal Injury and Wrongful Death Damages Calculations A Trans-Atlantic Dialogue*, Robert J. Thornton and John O. Ward, Editors, Bingley, UK: Emerald Group Publishing Limited, October 2009.

"Household Service Losses" with John D. Hancock, in *The Plaintiff and Defense Attorneys' Guide to Understanding Economic Damages*, Michael Brookshire, Frank Slesnick, and John Ward, Editors, Tucson: Lawyers and Judges Publishing Company, 2007.

"Healthy Life Expectancy" reprinted in *Economic Foundations of Injury and Death Damages*, Roger T. Kaufman, James D. Rodgers, and Gerald D. Martin Editors.  Northampton, Massachusetts: Edward Elgar Publishing Company, 2006.

"Average Change in Wages: the ECI Advantage" reprinted in *Economic Foundations of Injury and Death Damages*, Roger T. Kaufman, James D. Rodgers, and Gerald D. Martin Editors. Northampton, Massachusetts: Edward Elgar Publishing Company, 2006.

"Building an Expert Damages Team," reprinted in *Measuring Loss in Catastrophic Injury Cases*, Kevin Marshall and Thomas R. Ireland and John O. Ward Editors, Tucson: Lawyers and Judges Publishing Company, 2006.

"Economic Valuation of Life: A Cumulative Approach" with John O. Ward and Gary R. Albrecht, in *A Hedonics Primer for Economists and Attorneys*, 2nd. Ed., Thomas R. Ireland and John O. Ward Editors, Tucson: Lawyers and Judges Publishing Company, 1996.

*Establishing Damages in Catastrophic Injury Litigation*, with John O. Ward.  Lawyers and Judges Publishing Company, Tucson, Arizona, 1994.

## Editor-reviewed Publications

"Calculating Labor Force Participation Tables using CPS Microdata", *Litigation Economics Review*, Volume 5, No. 2, Winter 2001.

"Calculating the Present Value of Expected Future Medical Damages" *Litigation Economics Review*, Volume 5, No. 1, Spring 2001.

## Other Publications

*Full-time Earnings in the United States*, Expectancy Data, Shawnee Mission, KS (2000, 2002, 2004, 2005-2011).

*Labor in Missouri*, with John O. Ward and Michael S. Billinger, Center for Economic Information, University of Missouri-Kansas City (2000).

*Healthy Life Expectancy*, Expectancy Data, Shawnee Mission, KS (1999, 2000, 2000, 2001, 2003-2008).

*The Dollar Value of a Day*, with John O. Ward.  Expectancy Data, Shawnee Mission, KS (1998, 1999, 2000, 2001, 2003-2011).

"Kansas Exports and Economic Development" with Gary R. Albrecht and Shirley K. Sicilian, *Kansas Business Review*, Fall 1985.

## Conference Organizer Selected Papers Presented at Professional Meetings

"Transitions Into and Out of Disability" with Gary R. Skoog – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Chicago, IL January 2012.

"Years of Labor Force and Non-market Work under the Traditional Markov Model" with Frank Slesnick– Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Chicago, IL January 2012.

"The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Errors" with Gary R. Skoog and James E. Ciecka – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Denver, CO January 2011.

"Personal Consumption and Single Persons" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Denver, CO January 2011.

"Worklife Tables Updated to Reflect the Last Decade's Data" with Gary R. Skoog and James E. Ciecka – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Atlanta, GA January 2010.

"Macro and Micro Valuation of the Economic Impacts of Disease, Injury, or Death" with Scott E. Grosse – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Atlanta, GA January 2010.

"The Valuation of Earning Capacity: An Update Concerning Measurement" with Frank Slesnick and Stephen Horner – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. San Francisco, CA January 2009.

"New Tabulations of the Markov Worklife Expectancy Model" – American Academy of Economic and Financial Experts 19th Annual Meetings. Las Vegas, NV, March 2007.

"Personal Consumption of Household Services" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Chicago, IL January 2007.

"Scheduled Economic Damages and Tort Reform in the United States" with John O. Ward and Gary R. Albrecht – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Chicago, IL January 2007.

"Coming to Grips with Varying Jurisdictional Legal Remedies for Tort Victims: What About Economic Justice?" with Patrick Fitzgerald – National Association of Forensic Economics session at 81st Annual Western Economic Association International Conference, San Diego, June 30, 2006.

"Full and Part-Time Worklife Expectancy" with Gary Skoog and Jim Ciecka – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Boston, MA, January 2006.

"Personal Expenses in Husband and Wife Families" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Boston, MA, January 2006.

"Markov Increment Decrement Worklife Tables in Forensic Economics: a Change of View" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. San Diego, CA, January 2004.

"Transition Probabilities from the Current Population Survey" – American Academy of Economic and Financial Experts 14th Annual Meetings. Las Vegas, NV, April 2002.

"Eunomic Damage Analysis" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Atlanta, GA, January 2002.

"The Cost of Carry and Pre-Judgment Interest" with Susan Escher – Allied Social Science Meetings: National Association of Forensic Economics National Meetings. New Orleans, LA, January 2001.

"Worklife Estimates in Personal Injury and Wrongful Death" – Allied Social Science Meetings: National Association of Forensic Economics National Meetings. Boston, MA, January 2000.

"Using the Ibbotson Pay-per-View Database in Commercial Damages Litigation" with Susan Escher and Michael Kelsay – Business Damages Forum session at 74th Annual Western Economic Association International Conference, Seattle, July 1999.

"Employment Cost Index: Methods and Data" – National Association of Forensic Economics session at 74th Annual Western Economic Association International Conference, San Diego, July 1999.

"Estimating Economic Damages as a Result of Diminished Productivity in Work and Non-Work Time" with John O. Ward and Gary R. Albrecht. – Session at 72nd Annual Western Economic Association International Conference, San Diego, July 1997.

"The Fallacy of Fairness & the Plight of Prediction in Discounting Future Dollars" with John O. Ward – Allied Social Science Meetings: National Association of Forensic Economics National Meetings. San Francisco, CA, January 1996.

"What is Measured when Calculating Earnings Capacity and Expected Earnings?" with John O. Ward – Allied Social Science Meetings: National Association of Forensic Economics National Meetings. Anaheim, CA, January 1993.

"Income Taxes and Economic Loss Calculations" with Gary R. Albrecht – 66th Annual Western Economic Association International Conference, Seattle, WA: June 1991.

"Forecasting Productivity and Wages" with Gary R. Albrecht – 65th Annual Western Economic Association International Conference, San Diego, CA: July 1990.

## Other Papers Presented at Professional Meetings

"Personal Consumption by Husbands and Wives." 43rd Annual Missouri Valley Economic Association Meeting, Kansas City, October 25, 2007.

"Scripting the Defense Forensic Economist's Testimony," 76th Annual Meeting of the Southern Economic Association, Charleston, SC: November 18, 2006.

"Tort Remedy in the Law Versus Economic Restitution for Personal Injury and Wrongful Death," with Patrick Fitzgerald – 75th Annual Meeting of the Southern Economic Association, San Diego, Ca: November 19, 2005.

"PV-Life: A Method of Calculating the Present Value of Life Care Costs" – 75th Annual Meeting of the Southern Economic Association, Washington, DC: November 19, 2005.

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: the State of Kansas," with John O. Ward. Missouri Valley Economic Association, Kansas City, October, 2005.

"Worklife at Home and in the Labor Force" – 2005 Meeting of the Eastern Economic Association, New York, NY: March 5, 2005.

"Healthy Life Expectancy" – 2005 Meeting of the Eastern Economic Association, New York, NY: March 5, 2005.

"Personal Expenses in Husband and Wife Families" – 74th Annual Meeting of the Southern Economic Association, New Orleans, LA: November 21, 2004.

"A Primer on Earnings Growth and Discounting" with Gary R. Albrecht – 74th Annual Meeting of the Southern Economic Association, New Orleans, LA: November 21, 2004.

"Personal Injury and Wrongful Death in the State of Missouri" with John O. Ward – Missouri Valley Economic Association, Kansas City, February, 2004.

"Disclosure and Forensic Economic Testimony" Paper Chairman – 68th Annual Western Economic Association International Conference, Lake Tahoe, NV: June 1993.

## Professional Panels

Discussant – "Personal Consumption and Human Capital Wealth" – Allied Social Science Association Annual Meetings: National Association of Forensic Economics National Meetings. Atlanta, GA January 2010.

Discussant – "Forensic Economics in the Missouri Valley" – Missouri Valley Economic
Association, Kansas City, October, 2009.

Discussant – "Different Methods Used to Derive Hedonic Damages in Litigation" – National
Association of Forensic Economics sponsored session at the Allied Social Science Meetings. San
Francisco, CA, January 2009.

Discussant – "Forensic Economics Under Missouri's New Tort Reform Law" – Missouri Valley
Economic Association, Kansas City, October, 2005.

Chair – "The American Time Use Survey and Forensic Economics" – National Association of
Forensic Economics sponsored session at the Allied Social Science Meetings. Philadelphia, PA,
January 2005.

Discussant – "Statistical Examination of the 9/11 Victim Compensations Fund Awards:
Calculated vs. Actual Economic Awards" – National Association of Forensic Economics
sponsored session at the Allied Social Science Meetings. Philadelphia, PA, January 2005.

Instructor – "Workshop on Calculating Work Probabilities Using the Markov Increment-
Decrement Worklife Expectancy Model" – 74th Annual Meeting of the Southern Economic
Association, New Orleans, LA: November 21, 2004.

Chair – "Analysis of Presumed Economic Loss under the September 11[th] Victim Compensation
Fund" – National Association of Forensic Economics sponsored session at the Allied Social
Science Meetings: National Association of Forensic Economics National Meetings. Atlanta, GA,
January 2002.

Chair and Instructor – "Calculating Future Expected Medical Damages" – NAFE Continuing
Education.  Western Economic Association Annual Meetings, San Francisco, July 2001.

Chair and Instructor – "Calculating Future Expected Medical Damages" – NAFE Continuing
Education.  Missouri Valley Economic Association Annual Meetings.  Kansas City, MO,
February 2001.

Discussant – "Policy Issues in Public Economics" – National Tax Association sponsored session
at the Allied Social Science Meetings: National Association of Forensic Economics National
Meetings. Boston, MA, January 2000.

Co-chair and Presenter – NAFE Continuing Education – Mock Trial, Effective Testimony –
Allied Social Science Meetings: National Association of Forensic Economics National Meetings.
Boston, MA, January 2000.

Presenter – "The Utility of the National Compensation Survey in Forensic Economics" – Session
at Allied Social Science Meetings: National Association of Forensic Economics National
Meetings.  New York, NY: January 1999.

Discussant – "Railroad Worklife Expectancy Tables" – Session at Western Economic
Association Annual Meetings.  Lake Tahoe, NV, June 1998.

Presenter – "Forensic Economic Data Acquisition" – Session at Southwestern Economic Association Annual Meetings.  New Orleans, LA, March 1997.

Presenter – "Forensic Economic Data Acquisition" – Session at Midwest Economic Association Annual Meetings.  Kansas City, MO, March 1997.

Moderator – "Issues in Forensic Economics" – Session at Allied Social Science Meetings: National Association of Forensic Economics National Meetings.  New Orleans, LA, January 1997.

Discussant – "Issues in Forensic Economics" – Session at 69th Annual Western Economic Association International Conference, Vancouver, British Columbia, June 1994.

Discussant – "Problems in Forensic Economics" – Session at 1994 Midwest Economics Association Meetings, Chicago, March 1994.

Moderator – "Issues in Forensic Economics" – Session at 68th Annual Western Economic Association International Conference, Lake Tahoe, June 1993.

Discussant – "Some Forensic Dimensions of Rehabilitation Economics" – Session at 67th Annual Western Economic Association International Conference, San Francisco, July 1992.

Discussant – "Law and Economics" – Session at 66th Annual Western Economic Association International Conference, Seattle, June 1991.

**Other**

2001 Past Presidents' Award for Outstanding Service to the Association, National Association of Forensic Economics

Ross T. Roberts Inn of Court Program Participant

**Exhibit B**



# DEL SOLE CAVANAUGH STROYD LLC

**Arthur H. Stroyd Jr.**
**200 First Avenue, Ste 300**
**Pittsburgh PA 15222**
**412-261-2172 (Office)**
**412-977-9243 (Cell)**
**412-261-2110 (FAX)**
astroyd@dscslaw.com
www.dscslaw.com

Mr. Stroyd has devoted his career to representing major corporations, financial institutions, and individual entrepreneurs in a wide range of complex lawsuits in state and federal courts. Following a clerkship with the Honorable Joseph F. Weis, Jr., U.S. Court of Appeals for the Third Circuit, he spent most of career with the international law firm, Reed Smith LLP, where he was one of its Managing Partners also serving as Head of its Litigation Group, as the Practice Leader for its Products Liability and Insurance Coverage Group and as its Recruiting Partner. He is a Fellow in the American College of Trial Lawyers and has been recognized in *The Best Lawyers in America* in five (5) categories for the past ten (10) years where he was named Lawyer of the Year 2014, in *Pennsylvania Super Lawyers,* in *The Best Lawyers in Pittsburgh* and with an "AV Preeminent Rating," the highest mark of professional excellence from *Martindale-Hubbell's* Peer Review Ratings, for more than 30 years.

Throughout Mr. Stroyd's career, he has handled a wide array of sophisticated matters involving commercial disputes, intellectual property/patent litigation, the formation and dissolution of businesses, breaches of contract, corporate waste, the sale and disposition of properties, restrictive covenants, the valuation of assets and business opportunities, product liability litigation, construction disputes, and more. He currently represents defendants in class action litigation including *Wright et al. v. Owens Corning et al.* Civil Action No. 09-01567 (W.D.Pa.), *National Association of Chain Drug Stores et al. v. Express Scripts, Inc. et al.* Civil Action No. 12-395 (W.D.Pa.), *Black et al. v. JPMorgan Chase, et al.* Civil Action No. 10-848 (W.D.Pa.), *Linda Menichino et al. v. Genworth Mortgage Insurance Corp. et al.* Civil Action No. 12-cv-00058 (W.D.Pa.), *Christopher Manners et al. v. Genworth Mortgage Insurance Corporation et al.* Civil Action No. 12-00442 (W.D.Pa.) and more. Mr. Stroyd is certified as a Mediator, Arbitrator and Early Neutral Evaluator and has been appointed as a Special Master for discovery in complex cases. Stroyd has planned and lectured at various seminars relating to commercial litigation, civil procedure, construction law, products liability as well as trial and appellate practice and was in charge of training litigation attorneys and paralegals at Reed Smith.

He serves on the Advisory Committee for Pennsylvania Bar Association's Commission for Justice Initiatives, is a member of the Jury Service Committee of the Pennsylvania Interbranch Commission for Gender, Racial & Ethnic Fairness and is General Counsel of the Material Handling Industry, a trade association of 700

manufacturers in North Carolina. He is the past President of the Academy of Trial Lawyers of Allegheny County and of the Allegheny Country Bar Association, where he also served as Chair of its Judiciary Committee and its Civil Litigation Section as well as Co-chair of a Task Force for its Gender Initiative. He was also a member of the Pennsylvania Supreme Court's Civil Procedural Rules Committee and of the House of Delegates of the Pennsylvania Bar Association, where he also chaired a Task Force reviewing its subsidies, and was the solicitor for Pennsylvania's Interbranch Commission on Juvenile Justice.

Active in the community, Mr. Stroyd has been a director of various civic and nonprofit organizations including service as President of the Mt. Lebanon School Board and of the Center for Theater Arts Board as well as Chair of the Mt. Lebanon Hospital Authority and its Zoning Hearing Board. He was elected to the Alumni Council of his alma mater. He has been on the Board of Neighborhood Legal Services Association and the Solicitor for the Republican Party of Allegheny County, where he was on its Executive Committee for ten (10) years. He recently served as Chair of the Board of Leadership Pittsburgh, Inc. and is on the Board of the Material Handling Industry Education Foundation. He recently completed service on the boards of the Senator John Heinz History Center and the University of Pittsburgh Cancer Institute.

After graduating from Kenyon College in Gambier, Ohio, with an A.B. in economics, Stroyd entered the School of Law of the University of Pittsburgh. He received his J.D. after serving as a U.S. Naval Legal Officer during the Vietnam War.

**Practice Areas**
Commercial Litigation
Alternative Dispute Resolution
Construction Law
Products Liability
**Bar Admissions**
Commonwealth of Pennsylvania
U.S. District Court for the Western District of Pennsylvania
U.S. Court of Appeals for the Third Circuit
**Education**
A.B. Kenyon College - Economics
J.D. University of Pittsburgh School of Law
**Affiliations**
American College of Trial Lawyers – Fellow
Academy of Trial Lawyers of Allegheny County – Past-President & Board of Governors
Allegheny County Bar Association – Past-President; Judiciary Committee (former Chair) & Civil Litigation Council (former Chair)
Federal Mediation Program – Certified Mediator, Arbitrator & Early Neutral Evaluation
Pennsylvania Bar Association – Advisory Member - Commission for Justice Initiatives
Pennsylvania Supreme Court's Civil Procedural Rules Committee – Past Member
Material Handling Industry (trade association Charlotte, NC) - General Counsel
Recognized in *The Best Lawyers in America (*5 categories for 10 years*)* and in *PA Super Lawyers.*
**Recognition**
"Lawyer of the Year 2014" - *The Best Lawyers in America*
The Gregg Cup – *(Kenyon College's highest alumni accolade)*
AV (preeminent peer rating in legal ability) in *Martindale Hubbell* for more than 30 years

**Exhibit C**

## RICHARD H. RALSTON

**Profession.** Attorney, Arbitrator, and Mediator with The Ralston Law Group, LLC, The Plaza West Building – Suite 810, 4600 Madison Avenue, Kansas City, Missouri, 64112. Telephone No. (816) 285-1230; Fax No. (816) 283-8739; Internet Address – rralston@ralstonlawgroup.com.

**Professional History.** Arbitrator, Mediator, and Attorney 1993 – present; Attorney, Mediator and Arbitrator, The Ralston Law Group, LLC, 2008 - Present; Of Counsel/Attorney, Armstrong Teasdale, 2003 - 2008; Director/Trial Attorney, Polsinelli Shalton & Welte (and predecessor firm), 1988 – 2003; United States Magistrate Judge, Western District of Missouri, 1976 – 1988; Professor of Law, Creighton University School of Law, 1972 – 1976 (subjects: Evidence, Civil Procedure; Litigation with the Federal Government, Federal Courts, and Environmental Law); Adjunct Professor of Law, University of Missouri-Kansas City, 1978 - 1980 (subjects: Civil Procedure and Evidence); Law Clerk to United States District Judge Elmo B. Hunter, 1969 – 1972.

**Educational Background.** B.A. in Journalism, University of Kansas, 1965; J.D., University of Missouri – Kansas City, 1969 (With Distinction) ; Editor-in-Chief, University of Missouri – Kansas City Law Review, 1968-69.

**Professional Organizations and Committees.** Former Chairman, Federal Courts Committee of the Missouri Bar; Former Member of the Board of Directors of the Kansas City Metropolitan Bar Association; Panelist of the CPR Institute for Dispute Resolution; Panelist of the American Arbitration Association; Member of the American College of Civil Trial Mediators; Member of the American College of Commercial Arbitrators; Member of the National Academy of Distinguished Neutrals; Member of the Kansas City Metropolitan Bar Association; Member of the American Bar Association; Former Master of the Ross Roberts Inn of Court; Former faculty member of the National Institute for Trial Advocacy (Boulder, Colorado; Lawrence, Kansas; Omaha, Nebraska); Member, The Association for Women Lawyers; Former Member of the Committee on Federal Model Jury Instructions; Member of the Ad Hoc Committee of the Missouri Supreme Court on Mediation Practice; Member of the Kansas City Metropolitan Bar Association Committee on Professionalism and Civility; Member of the Missouri Bar Association; Former Speedy Trial Reporter to the United States District Court for the District of Nebraska; *Super Lawyers - Alternative Dispute Resolution; Best Lawyers in America – Alternative Dispute Resolution* ; Ingram's *Best of the Bar – Alternative Dispute Resolution; LawDragon Select 500 Best Judges in America* (2006); *Kansas City Business Journal – "Best of the Best" – Alternative Dispute Resolution;* "AV" Rating, Martindale Hubbell. Frequent lecturer to bar associations, professional organizations, law schools, and insurance organizations.

**Experience.** Has been involved in dispute resolution – settlement conferences, mediations, arbitrations, or trials (jury and non-jury) – since graduation from law school in 1969. First legal position was as a law clerk for a United States District Judge who was also an extremely capable mediator (settlement judge). As a member of the federal bench, continued

mediation tradition in the Western District of Missouri by initiating a settlement conference program in federal court. In 1993, decided to devote practice exclusively to alternative dispute resolution. As a law professor, courses were primarily directed to litigation and federal practice. Taught evidence, civil procedure, federal jurisdiction, environmental law, and government litigation. Voted the Outstanding Law Professor of Creighton University in 1974.

As a federal judicial officer, docket consisted mainly of civil cases for trial and pretrial processing. Presided over the whole spectrum of jury and non-jury trials throughout the Western District of Missouri, including civil rights cases, employment discrimination cases (jury and non-jury, minimum wage and overtime cases, antitrust and securities cases, products liability cases, commercial cases, and various personal injury cases. Presided over the first employment discrimination case (an action under 42 U.S.C. § 1981) tried to a jury in the Western District of Missouri in 1980.

As a trial lawyer, represented both major corporations and individuals in all types of cases, usually of a complex and substantial nature. Has frequently been engaged as an expert witness in cases involving legal or ethical standards. Has been involved as a consultant involving insurance coverage issues in major litigation, including the Courtney pharmacy litigation. Currently represents attorneys in litigation and disciplinary actions.

**Representative Cases Handled as Mediator.**    Has mediated all types of cases, large and small, ranging from complex commercial, environmental, and construction cases to medical malpractice, employment discrimination, products liability and personal injury cases. Has mediated several major class actions, as recently as 2011, actions involving mortgage loan fees, financing systems, telecommunications disputes, products liability, and Fair Labor Standards Act cases, among others. The environmental cases have included issues of water and ground pollution at oil refineries or manufacturing sites owned and operated by major national corporations. Most of those cases have been brought on behalf of multiple plaintiffs or as individual actions against multiple defendants. Many of the construction cases arose from major construction projects, including entertainment theaters in Branson, Missouri, and from major construction projects in the Kansas City metropolitan area. The commercial cases have involved multi-tiered marketing systems or individual and class actions. Has mediated numerous employment discrimination cases involving all issues ranging from the Family Medical Leave Act to all aspects of Title VII and the Civil Rights Act. The employment discrimination cases have involved race, ethnic origin, religion, gender, age, family medical leave and disability claims brought under Title VII, the Civil Rights Act, the Age Discrimination in Employment Act, the Americans with Disabilities Act, or corresponding state laws. Has also mediated cases with the Department of Justice and other federal and state agencies involving Federal Tort Claims Act, the EEOC, the EPA, the Tucker Act, the Missouri Omnibus Nursing Home Act, and regulations of the Nuclear Regulatory Commission. Has mediated disputes between law firms, physicians' groups, and other professional organizations. Has mediated numerous insurance bad faith cases involving primary insurance carriers, excess carriers, reinsurers and insureds. Mediated a dispute arising from the destruction of the Kansas City electrical power plant, a $400,000,000 dispute involving multiple plaintiffs and defendants, primary claims and subrogation claims. Also successfully mediated a complicated warehouse fire case among insureds, primary carriers and excess carriers. One products-liability case involved carbon monoxide poisoning resulting in eight deaths and three brain-damaged victims. Has mediated

cases in most of the major cities of the United States, from Boston, Massachusetts to Baton Rouge, Louisiana; from and San Francisco, California to Providence, Rhode Island. Has been involved as a settlement judge or mediator in more than 4,000 civil cases.

**Representative Cases Handled as Arbitrator.**    Has handled many personal injury, construction, employment discrimination and commercial cases as an arbitrator, both in Kansas City and elsewhere. Representative cases include disputes involving a fiber optic communications system, a telecommunications industry dispute, bulk utilities sales systems, employment discrimination, national dispute concerning local telephone service and logistical software for mass merchandisers. Has arbitrated numerous personal-injury and wrongful-death cases involving either products or vehicular accidents. In the calendar of 2004, arbitrated twelve separate cases involving a complex telecommunications dispute arising under the Telecommunications Act of 1996, several complicated business cases, and several employment discrimination matters. Sat as the chairman on all of the three-arbitrator panels. Arbitrated 21 major cases between 2007 and mid-2009, ranging in subjects from construction and transportation disputes to employment discrimination complaints. Recently sat as a single arbitrator in highly publicized disputes involving a NCAA Division I basketball coach, and a politically-charged construction case in Kansas City.

**Multi-party Dispute Resolution Experience.**    A sizable percentage of mediations handled have been multi-party cases. Examples would include a warehouse-fire case, which involved $26,000,000 in claims and fifteen parties – all with claims, counterclaims, and cross-claims; several major environmental cases with numerous parties in a class-action context; a commercial case involving a $150,000,000 claim brought by approximately 50 grocery retailers who brought suit against their wholesaler; a case involving the death of a well-known professional wrestler; and a highly publicized death of a young boy who was dragged down the street by a school bus. Acted as both a mediator and a special master by requested of the parties in a recent $36,000,000 class action settlement, and mediated cases involving several highly-publicized truck accidents.   Once mediated a case against eight defendants brought by six plaintiffs over a helicopter accident that resulted in multiple deaths.

**Expert Witness Engagements.**  Has served as witness, expert and otherwise, on more than 26 occasions. Expert witness engagements have involved the professional standard of care for lawyers, reasonableness of settlements and consent judgments, reasonableness or attorney fees and settlements in class actions, evaluation of various types of tort and products liability actions, and other litigation related matters.

**Professional Licenses.**        Admitted to the Bar, Missouri, 1969; United States District Court for the Western District of Missouri; United States District Court for the Eastern District of Missouri; United States Court of Appeals for the Eighth Circuit.

# CHARLES E. ATWELL
Circuit Judge

Circuit Court of Jackson County
Division 10
415 East 12th Street
Kansas City, Missouri 64106
Telephone:  (816)881-3610 – FAX (816)881-3893
e-mail:  Charles.Atwell@courts.mo.gov

## Personal Data

Born:  April 1, 1950 in Kansas City, Missouri

Married:  August 17, 1974 to Janel Ann Robinson Atwell

Children:  Martin, born March 7, 1978; Ashley, born September 5, 1979

## Practice Experience

### Judicial

1996 - Appointed Circuit Judge on July 23, 1996 by Governor Mel Carnahan

### Prosecution

1977-1978 - Law intern, Jackson County, Missouri Prosecutors Office

1978-1979 - Assistant Prosecuting Attorney, Trial Division, Jackson County, Missouri Prosecutors Office

1979-1981 - Assistant Prosecuting Attorney, Career Criminal Unit, Jackson County, Missouri Prosecutors Office

1983-1984 - Assistant United States Attorney, Western District of Missouri

### Private Practice

1981-1983 – Associate, Koeningsdorf, Kusnetzky, & Wyrsch (subsequently Koeningsdorf & Wyrsch)

1984-1996 – Partner, Wyrsch, Atwell, Mirakian, Lee, & Hobbs, P.C. (previously Koeningsdorf & Wyrsch)

1

## Bar Admissions

1978 - Supreme Court of Missouri

1979 - United States District Court for the Western District of Missouri

1981 - United States Court of Appeals for the Eighth Circuit

1984 - United States Court of Appeals for the Sixth Circuit

1989 - United States Court of Appeals for the Tenth Circuit

1989 - United States Supreme Court

## Federal Court appearances pro hac vice or otherwise

District of Colorado; Northern District of Ohio; Eastern District of Arkansas; Southern District of New York; Eastern District of New York; Central District of California; District of New Mexico; Central District of Oklahoma; Northern District of Virginia

## State Court appearances pro hac vice or otherwise

Wyandotte County, Kansas; Johnson County, Kansas; Maricopa County, Arizona; Baltimore County, Maryland; Bourbon County, Kansas; Shawnee County, Kansas; Saline County, Kansas; Lake County, Ohio

## Teaching and Instruction

1973-1975
Teacher, American History and Government, Kansas City, Missouri Public Schools

1974-1976
Teacher, National Youth Sports Camp, Kansas City, Missouri, a program sponsored by the University of Missouri-Kansas City and the NCAA to provide summer sports training to inner-city youth

1981
Instructor, National Institute of Trial Advocacy, Midwest Regional, Northwestern University, Evanston, IL

2

1981-2000
Adjunct Professor of Law, University of Missouri at Kansas City.  One of a team
teaching "Criminal Trial Techniques," a practical approach to trial advocacy in a
criminal context

1982-1988
Instructor, National Institute of Trial Advocacy, Mid-America Regional, University of
Kansas, Lawrence, KS

1984-1986
Instructor, Trial Skills Program, Missouri State Public Defender, Kansas City, MO

1998
Coach, UMKC Trial Competition team with the Honorable J. D. Williamson, relative
to the National Association of Criminal Defense Lawyers Trial Competition in
Atlanta, GA

1993-2000
Instructor, National Institute of Trial Advocacy, Midwest Regional, Northwestern
University, Evanston, IL

2001-present
Instructor, National Institute of Trial Advocacy, Midwest Regional, Loyola
University, Chicago, IL

2003, 2006, 2007 and 2008
Instructor, National Session, National Institute of Trial Advocacy, Lewisville, CO

May 2010 appeared as a panelist at the Appellate Forum sponsored by OSCA.  This
was a CLE for State appellate judges.

June 2010 appeared as a panelist on ethics sponsored by the Hispanic Bar
Association

June 2010 teacher at the NITA deposition program held at Loyola Law School

## Lectures and Seminars Presented as an Attorney

1980
Criminal Jury Instructions, Missouri Prosecutors Association

1980-1981
Review of the Law Annual Bench/Bar Conference, Kansas City Metropolitan Bar
Association

1981
Criminal Jury Instructions, Kansas City Metropolitan Bar Association

1982
Review of the Law Practical Skills Course, Missouri Bar Association

1984
Representing Defendants at Sentencing, Missouri Association of Criminal Defense
Lawyers

1984-1985
Sentencing Issues under the Comprehensive Crime Control Act of 1984, Kansas
City Metropolitan Bar Association

1986
Federal Sentencing Guidelines, Kansas City Metropolitan Bar Association

1989
Changing Criminal Law, Kansas City Metropolitan Bar Association

1990
Cross Examination of Informants, Missouri Bar Association

1991
Ethics in Criminal Cases, Missouri Bar Association

6/92, 1/93, 6/93, 1/94, 6/94, 1/95
Federal Rules of Evidence, Kansas City Metropolitan Bar Association

1992
Trial Tactics, Jackson County Court Seminar, KCMBA

1992
Inns of Court, Cross and Direct in the William Kennedy Smith Case, Kansas City
Metropolitan Bar Association

1992
Merits of CLE Participation, American Society of Trial Consultants

Sept 1993
Missouri Evidence Restated (Missouri Bar Association)

1993
Short Course for Criminal Defense Lawyers, Nebraska Association of Criminal
Defense Lawyers

Feb 1993
Federal Rules of Evidence for the law firm of Wallace, Saunders, et al.

Nov 1993 to Nov 1994
Served as co-chair for continuing legal education for the National Association of
Criminal Defense Lawyers.  In that capacity served as moderator on 10/93 "The
Ultimate Cross Examination Seminar," Chicago, IL; 2/94 "Forensic Evidence, White
Collar Crime and Mental Defenses," Maui, HI; 5/94 "Constitutional Issues,"
Washington, D.C.; 8/94 "The Ultimate Search & Seizure Seminar," Traverse City,
MI; 11/94 "Defenses that Work," Houston, TX

Feb 1995
Panelist, Federal Practice Seminar, Missouri Association of Trial Attorneys
(On several occasions have served as a faculty member for the Public Defender
training programs, both as a judge and as a lawyer.)   (As a lawyer, tried
approximately 65 jury trials to completion and was involved in both civil and
criminal litigation.)

## Lectures and Seminars Presented as a Judge

Oct 1996
Lecture for the Kansas Association of Criminal Lawyers in conjunction with the
Nebraska Bar Association Meeting on the use and disuse of informants

April 1997
NACDL Meeting St. Louis, Missouri, "Evidence in Criminal Cases"

Oct 1997
Member of judicial panel as part of the NACDL meeting in New York City.  The
panel was moderated by Arthur Miller of the Harvard Law School and included the
Honorable Michael Bender, Associate Justice of the Colorado Supreme Court; the
Honorable Jed Rakof, United States District Judge for the Southern District of New
York; and the Honorable Nancy Gertner, United States District Judge for the District
of Massachusetts

April 1998
KCMBA Issues in Family Law Cases, appeared on judicial panel

June 1998
Panelist for "Family Law Issues" Kansas Metropolitan Bar Association
May 1999
Panelist for the Missouri Organization of Defense Lawyers annual meeting at Lodge
of Four Seasons, "Trial Issues"

1999 and 2003
Participated in Judicial Panel, Missouri Association of Criminal Defense Lawyers

1999
Ethics panel regarding attorney-client privilege issues, UMKC Law School,
moderator, Prof. Arthur Miller, Harvard Law School

1999-present
Faculty member for Inns of Court sponsored by the Kansas City Metropolitan Bar
Association, lecture on voir dire practice

1999
Lecture on trial advocacy in domestic cases

April 2000
Missouri Association of Criminal Defense Lawyers Annual Meeting "Practical Tips
From All Three Sides"

April 2000
Kansas City Metropolitan Bar Association, Evidence and Trial Tips in Family Law
Cases

Aug 2000 and Oct 2000
Lecture on Post-Conviction Remedies, Missouri Judicial College

April 2001
Kansas City Metropolitan Bar Associatinon, Nuts and Bolts of Family Law Cases

2001-present
Member of the instructional team for the Core Criminal Law Topics, Missouri Judicial
College

2001
Lecture, Missouri Association of Criminal Defense Lawyers, "Practical Points, A View
from the Bench"

2001
Facilitator and discussion group leader, general jurisdiction class, National Judicial
College

2002, 2003, 2004, 2005, 2006, 2007, 2008 and 2009
Participated in Judicial Panel, Missouri Association of Trial Attorneys Annual
Meeting, Lodge of Four Seasons

2007
Presented a Seminar on Child Sexual Abuse for the Missouri Bar, Jan 19, 2007,
St. Louis, Missouri

May 2009
Appeared on judicial panel at the Missouri Association of Criminal Defense Lawyers
meeting.  Other panelists included the Honorable Zel Fisher of the Missouri
Supreme Court; the Honorable John Moody of the 44th Judicial Circuit, State of
Missouri; and the Honorable John Clayton, Associate Circuit Judge for Maries
County, Missouri.

Dec 2009
Made a presentation on Jury Selection in Capital cases in seminar sponsored by the
Office of State Court Administrators for the State of Missouri and the United States
Department of Justice

Sept 2010
Guest lecturer with Prof. Thomas Stewart of St. Louis University Law School at the
Missouri Attorney General's fall training.  The lecture topic was jury selection.
(As a judge, tried an estimated 50 or more jury trials to conclusion.  Such trials
have included capital murder cases, products liability, medical negligence,
commercial litigation and securities fraud.  Also presided over numerous hearings
in the area of criminal law, family law, juvenile law, and general civil litigation.)

**Publications**

1976
Case Note 45, Use of the Hybrid Defense, University of Missouri-Kansas City Law
Review

1977
Comment 46, Student Rights Under the Fourth Amendment, University of Missouri-
Kansas City Law Review

1980
Missouri Criminal Instructions Packet, Kansas City Metropolitan Bar Association and
Missouri Prosecutors Association, for use at seminars

1981
Criminal Practice in Missouri State Courts (portion), Kansas City Metropolitan Bar
Association

1985
Pocket Part, District Court Criminal Practice, West's Federal Forms, Vol. V,
co-author with Dean Robert Popper, UMKC School of Law

1989
Indictments, Information, and Grand Jury Process, supplement to Missouri Bar
Criminal Practice, two-volume set

1990
Supplement to Chapter 5, Missouri Criminal Practice CLE, Missouri Bar Association,
an update to Indictments, Information, and Grand Jury Process.

1990
Cross Examination of Informants, notes from the lecture, Missouri Bar Association

1992
Article on Sentencing Guidelines co-authored with Mark Dover for annual MACDL
seminar

1995
Rewrote in its entirety Chapter 5 of Missouri Criminal Practice CLE on indictment
information and grand jury process

1997- 1998
Most recent supplement to Chapter 5, Missouri Criminal Practice CLE on indictment
information and grand jury process

2001
Author of Supplement Chapter 4 Informations, Indictments, and Grand Jury
Procedures, MO Criminal Practice, 3rd Edition, published by the Missouri Bar

# Education

## Continuing Legal Education

1980
National Institute of Trial Advocacy, Northwestern Law School

1983
United States Department of Justice Introductory Course for New Assistant United
States Attorneys, Scottsdale, AZ

1985-present
National Association of Criminal Defense Lawyers meetings and seminars

1988
American Law School, General Bankruptcy Law Seminar

1989
Kansas City Metropolitan Bar Association, Business Torts Seminar

1992
National Criminal Defense College, Mercer Law School, Macon, GA

1996-Present
Attended Missouri Judicial College
1997
General Jurisdiction Course, National Judicial College, Reno, NV

Nov 1998 and Jan 1999
Participant in Missouri Sentencing Policy Seminar and Workshop sponsored by
St. Louis University Law School and taught by The Honorable Michael Wolff

1998
Handling Capital Cases, Nation Judicial College, Reno, NV

2004
Search and Seizure Seminar, National Judicial College, Reno, NV

2006
Mediation Seminar, National Judicial College, Reno, NV

2007
Advanced Mediation Seminar, National Judicial College, Reno, NV

Note:  Throughout attorney career, active participant in most NACDL and MACDL conferences in which CLE seminars are held

Oct 2010
Seminar involving issues and skills for presiding judges

## Law School

Juris Doctorate (J.D.) University of Missouri at Kansas City School of Law 1978

## Graduate Studies

24 hours toward Master's Degree in History, University of Missouri at Kansas City 1972-73

## Undergraduate Studies

Bachelor's of Science, Education (B.S.) University of Kansas, Lawrence, KS 1968-72

### Professional Organizations and Service Memberships

## Service as an Attorney

1982-present
Missouri Association of Criminal Defense Lawyers
Offices Held:  President, 1989; President-Elect, 1988

1984-present
National Association of Criminal Defense Lawyers Co-Chair, CLE Committee, 1993-present; Vice-Chairman, State and Local Bar Liaison Committee, 1990-present; Nominating Committee, 1992; Board of Directors, 1991-93, 1994-97.

1988
First Vice President, 1987; Second Vice President, 1986; Board of Directors, 1982-87.

1989-present
Missouri Capital Punishment Resource Center Board of Directors 1990; Secretary, Treasurer 1990-93

1990
Finalist United States Magistrate for the Western District of Missouri

1990
Jackson County Criminal Justice Coordinating Committee (Established by the Presiding Judge in Jackson County, Missouri. Members include prosecutors, public defenders, members of law enforcement.  Served as private criminal defense bar representative)

1992
Nominating Committee Kansas City Metropolitan Bar Association

1992-1994
Committee to Review Post-Conviction Relief Appointed by the Chief Justice of the Missouri Supreme Court

1993
Public Safety and Corrections Advisory Committee to the Governor's Transition Team appointed by Missouri Governor Mel Carnahan

1994
Kansas City Metropolitan Bar Association Executive Committee, serving as co-chair of the continuing legal education committee

1994
Strategic Planning Committee, University of Missouri-Kansas City School of Law

1993-1995
Appointed to Supreme Court Committee to establish court rules consistent with the effective Death Penalty Act of 1996

## Service as a Judge

1996
Made Honorary member of NACDL by board of directors

1996
Member of Missouri Supreme Court committee regarding the use of "Opt-in" rules consistent with the Anti-terrorism and Federal Death Penalty Act of 1996

1997
Appointed to Missouri Supreme Court Committee to review Missouri court rules on charging procedures

Nov 1998
Coach of UMKC trial team that participated in Cathy Bennett National Trial Competition at the NACDL Meeting in Atlanta, GA

11

1999
Appointed to the Missouri Approved Instruction Committee (criminal)

1999-present
Member of Missouri Supreme Court Committee on Procedures in Criminal Cases
since 1999 forward.   (Originally this committee handled MAI matters and, in year
2000, the Court expanded its jurisdiction to include not only instructional issues,
but other criminal law issues, including revision of Supreme Court rules.)

2000
Served on Missouri Supreme Court committee to review practices in postconviction
cases

2001
Appointed to be regular presenter in the criminal law section of the Missouri Judicial
College.  Other presenters include the Honorable Gene Hamilton of Columbia, MO;
the Honorable Carolyn Whittington, St. Louis County; and Morley Swingle,
Prosecutor for Cape Girardeau County

2003
Appointed Chairman of the Missouri Supreme Court Committee on Procedures in
Criminal Cases by the Missouri Supreme Court

2004 to present
Asked to participate in the New Judge Orientation seminar sponsored by the
Supreme Court and Office of State Courts Administrator

Oct 2004
Featured speaker at the fall meeting at the Missouri Association of Criminal Defense
Lawyers

2008-2009
Served as Administrative Judge for the Family Court of Jackson County, Missouri.
Was the Chief Judicial Officer in juvenile matters in Jackson County and was the
supervising Judicial Officer for approximately 400 employees.  The staff and
services of the Family Court in Jackson County constitute a budget of
approximately $20 million.

2009
Appointed by the Missouri Supreme Court to be a member of the Gender and
Justice committee

Dec 2009
Elected Presiding Judge for Jackson County Circuit Court of Jackson County to commence a two-year term beginning in January 2011

**Honors and Recognitions**

1998
Received 97 percent approval rating from lawyers in the Missouri Bar surveys for judges subject to retention election

2004
Received 94.5 percent approval rating from lawyers in the Missouri Bar surveys for judges subject to retention election

2007
In yearly survey conducted by Missouri Lawyers Weekly, selected as best Circuit Judge in the State of Missouri

2010
Re-elected Circuit Judge on a retention ballot.  Prior to election, participated in Missouri Bar evaluation.  Received 4.5 or above rating on a scale of 1 to 5, with 5 being the highest, in all areas.

**Some Reported Cases of Significance While Practicing Law:**

United States v. Sindel, 94-2683 and 94-2684 (8th Cir. 1995)
United States v. Willis, 970 F.2d 494 (8th Cir. 1992),
cert. denied, 113 S.Ct. 1650 (1993)
United States v.  Angela Jones, 990 F.2d 405 (8th Cir. 1993),
cert.  denied, 114 S.Ct. 350 (1993)
United States v.  George, 986 F.2d 1176 (8th Cir. 1993),
cert. denied, 114 S.Ct. 269 (1993)
United States v.  Auricchio, 983 F.2d 1468 (8th Cir. 1993)
State v. Beatty, 849 S.W.2d 56 (Mo. Ct. App. 1993)
In the Interest of  A.S.B. v. Juvenile Officer, 842 S.W.2d 234 (Mo. Ct. App. 1992)
United States v. Lux, 905 F.2d 1379 (10th Cir. 1990)
United States v. Bowman, 907 F.2d 63 (8th Cir. 1990)
United States v. Kroh, 915 F.2d 326 (8th Cir. 1990),
initial opinion, 896 F.2d 1254 (8th Cir. 1990)
State v. Smith, 633 S.W.2d 412 (Mo. Ct. App. 1989)
Ellis v. State, 773 S.W.2d 194 (Mo. Ct. App. 1989)
State v. Clay, 779 S.W.2d 673 (Mo. Ct. App. 1989)
State v. Clark, 756 S.W.2d 565 (Mo. Ct. App. 1989)
United States v.  Norton, 846 F.2d 521 (8th Cir. 1988)

13

United States v.  Nichols, 808 F.2d 660 (6th Cir. 1987)
United States v.  Gantos, 817 F.2d 41 (8th Cir. 1987)
United States v. Gregg, 829 F.2d 1430 (8th Cir. 1987)
State v. Christensen, 729 S.W.2d 738 (Mo. Ct. App. 1986)
United States v. Tager, 788 F.2d 349 (6th Cir. 1986)
United States v. Begnaud, 783 F.2d 144 (8th Cir. 1986)
State v. Ervin, 723 S.W.2d 412 (Mo. Ct. App. 1986)
Marvin v. United States, 732 F.2d 669 (1984)
United States v. Robertson, 706 F.2d 253 (8th Cir. 1983)
United States v. Marvin, 687 F.2d 1221 (8th Cir. 1982)
United States v. Frantse, 655 F.2d 128 (8th Cir. 1981)
Rogers v. State, 650 S.W.2d 30 (Mo. Ct. App. 1983)
Lewis v. State, 650 S.W.2d 335 (Mo. Ct. App. 1983)
State v. Lindsey, 630 S.W.2d 191 (Mo. Ct. App. 1982)
State v. Gibeson, 614 S.W.2d 14 (Mo. Ct. App. 1981)
State v. Settle, 679 S.W.2d 310 (Mo. Ct. App. 1984)

## Some Reported Cases of Significance as a Judge:

## JUDGE ATWELL:  Opinions reviewed at appellate and supreme court level

- Planned Parenthood of Kansas & Mid-Mo., v. Nixon, 220 S.W.3d 732 (Mo. 2007)
- State v. Peete, 131 S.W.3d 893, (Mo.App.W.D. 2007)
- Dhyne v. State Farm Fire & Cas. Co., 2006 Mo. LEXIS 52 (Mo. 2006)
- Picerno v. Nichols-Fox, 205 S.W.3d 883 (Mo.App.W.D. 2006)
- Davis v. St. Luke's Home Health Care, 200 S.W.3d 592 (Mo.App.W.D. 2006)
- Gilmore v. Lawler, 198 S.W.3d 654 (Mo.App.W.D. 2006)
- Thompson v. Tuggle, 183 S.W.3d 611 (Mo.App.W.D. 2006)
- Hatch v. State, 138 S.W.3d 809 (Mo.App.W.D. 2004)
- McCormack v. Capital Elec. Contr. Co., 159 S.W.3d 387 (Mo.App.W.D. 2004)
- Sexton v. Jenkins & Assocs., 152 S.W.3d 270 (Mo. 2004)
- Brough v. Ort. Tool & Die Corp., 149 S.W.3d 493 (Mo.App.W.D. 2004)
- State v. Jackson, 144 S.W.3d 885 (Mo.App.W.D. 2004)
- Randol v. State, 144 S.W.3d 874 (Mo.App.W.D. 2004)
- State ex rel. White v. Gray, 141 S.W.3d 460 (Mo.App.W.D. 2004)
- Collins v. State, 141 S.W.3d 96 (Mo.App.W.D. 2004)
- State v. Case, 140 S.W.3d 80 (Mo.App.W.D. 2004)
- State v. Payne, 135 S.W.3d 504 (Mo.App.W.D. 2004)
- D'Arcy & Assocs. V. K.P.M.G. Peat Marwick, 129 S.W.3d 25 (Mo.App.W.D. 2004)
- Benton v. State, 128 S.W.3d 901 (Mo.App.W.D. 2004)
- Alcorn v. Union Pac. R.R. Co., 50 S.W.3d 226 (Mo. 2001)
- Taylor v. State, 126 S.W.3d 755 (Mo. 2004)
- Wooden v. City of Independence, 124 S.W.3d 20 (Mo.App.W.D. 2004)
- Capell v. Abbick, 123 S.W.3d 193 (Mo.App.W.D. 2003)
- Mesa v. Cesena, 121 S.W.3d 334 (Mo.App.W.D. 2003)
- State ex rel. MO Highway Patrol v. Atwell, 119 S.W.3d 188 (Mo.App.W.D. 2003)

- <u>Mika v. Cent. Bank of Kan. City</u>, 112 S.W.3d 82 (Mo.App.W.D. 2003)
- <u>Cent. Fire Sprinklers v. CNA/Transp. Ins. Co.</u>, 87 S.W.3d 408 (Mo.App.W.D. 2002)
- <u>State v. Wiley</u>, 80 S.W.3d 509 (Mo.App.W.D. 2002)
- <u>Aaron v. State</u>, 81 S.W.3d 682 (Mo.App.W.D. 2002)
- <u>State v. Hatch</u>, 54 S.W.3d 623 (Mo.App.W.D. 2001)
- <u>State v. Collins</u>, 42 S.W.3d 736 (Mo.App.W.D. 2001)
- <u>State v. Taylor</u>, 18 S.W. 3d 366 (Mo. banc 2000)
- <u>Tower Props. Co. v. Allen</u>, 33 S.W.3d 684 (Mo.App.W.D. 2000)
- <u>Victory Hills Ltd. Pshp. V. Nationsbank N.A.</u>, 28 S.W.3d 322 (Mo.App.W.D. 2000)
- <u>Reed v. Reed</u>, 10 S.W.3d 173 (Mo.App.W.D. 2000)
- <u>Aaron v. State</u>, 985 S.W.2d 434 (Mo.App.W.D. 1999)
- <u>Draper v. Draper</u>, 982 S.W.2d 289 (Mo.App.W.D. 1998)
- <u>Holt v. Holt</u>, 976 S.W.2d 25 (Mo.App.W.D. 1998)
- <u>Coleman v. Gilyard</u>, 969 S.W.2d 271 (Mo.App.W.D. 1998)

**Exhibit E**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | ) | |
| RESIDENTIAL CAPITAL, LLC, et al | ) | Case No. 12-12020(MG) |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

### INDEX OF DOCUMENTS PRODUCED TO ALLOCATION COUNSEL

1. Kessler Settlement Agreement.
2. In re: Community Bank of Northern Virginia, 418 F.3d 277 (CBNV 1).
3. In re: Community Bank of Northern Virginia, 622 F.3d 275 (CBNV 2).
4. Plaintiffs' Joint Consolidated Amended Class Action Complaint in MDL no. 1674 (Doc #507).
5. Defendants Motion to Dismiss the Consolidated Amended Complaint in MDL no. 1674 (Doc #522).
6. Memorandum of Law in Support of Defendants' Motion to Dismiss in MDL no. 1674 .(Doc # 521).
7. Plaintiffs' Suggestions in Opposition to Joint Motions to Dismiss in MDL no. 1674 (Doc #540).
8. Defendants' Reply re Motion to Dismiss in MDL no. 1674 (Doc #548) .
9. Memorandum Opinion re: Motions to Dismiss in MDL no. 1674 (Doc #610).
10. Plaintiffs' Notice of Supplemental Authority re: Equitable Tolling in MDL no. 1674 (Doc #594).
11. Plaintiffs' Motion to Certify a Class under Bankruptcy Rule 7023 in BNK case no. 12-12020 (Doc #2044).
12. Plaintiffs' Memorandum of Law in Support of Motion to Certify in BNK case no.12-12020 (Doc # 2045).
13. Defendant Debtor's Opposition to Motion to Certify a Class in BNK case no. 12-12020 (Doc #2337).
14. Plaintiffs' Reply to Motion to Certify a Class in BNK case No. 12-12020 (Doc #2874).
15. Drennen HUD 1.
16. Picard HUD 1.
17. Damages Summary in Bankruptcy.
18. Plaintiffs' Motion for Class Certification in MDS no. 1674 (Doc #607)
19. Memorandum in Support of Plaintiffs' Motion for Class Certification in MDL case no. 1674 (Doc #609)
20. Brief of Defendant PNC Bank NA In Opposition to Plaintiffs' Motion for Class Certification in MDL case no. 1674 (Doc #612)
21. Plaintiffs' Reply Brief in Support of Class Certification in MDL case no. 1674 (Doc #614)

**Exhibit F**

Settlement Points Relative to Mediation Conducted on July 11, 2013

In Re:  Residential Capital, LLC, et al.
Case No. 12020(MG)

A mediation was conducted on July 11, 2013.  Present at the mediation was the mediator, Charles E. Atwell of the law firm of Foland, Wickens, etc., as well as allocation counsel Richard H. Ralston for the non-equitable tolling subclass and Edwin J. Kilpela, Jr. and Arthur H. Stroyd, Jr. for the equitable tolling subclass.  Such mediation lasted from 9:00 a.m. until 3:00 p.m. and it was agreed between the parties that the fill in percentage for individual damage reduction referenced in paragraph 6(b)(ii) of the Kessler Settlement Agreement shall be eighteen and one-half percent (18.5%).


_____
Charles E. Atwell

_____
Edwin J. Kilpela, Jr.

_____
Arthur H. Stroyd, Jr.

_____
Richard H. Ralston


{00747611.DOCX;1}