# **Exhibit 4**

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel to the*
*Official Committee of Unsecured Creditors of*
*Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC a/k/a | |
| RESIDENTIAL CAPITAL CORPORATION, et al. | (Jointly Administered) |
| Debtors. | |

-------------------------------------------------------------------x

**DECLARATION OF RONALD J. FRIEDMAN**
**REGARDING REASONABLENESS OF ALLOCATION**
**IN SETTLEMENT OF THE KESSLER CLASS ACTION**

Ronald J. Friedman, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.      I am a member of SilvermanAcampora LLP ("SilvermanAcampora" or "Special

Counsel"), with offices located at 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753.

I am duly admitted to practice law before this Court and the courts of the State of New York.

2.      I submit this declaration (the "Declaration") pursuant to Article 6(d) of the

stipulation (the "Stipulation") settling the class action claims brought by Rowena Drennen, Flora

Gaskin, Roger Turner, Christie Turner, John Picard, and Rebecca Picard, individually and as the

proposed representatives of the class of persons defined in article 3(a) of the Stipulation

(collectively, the "Kessler Settlement Class"), against Residential Funding Company, LLC,

Residential Capital, LLC, and GMAC Residential Holding Company, LLC (the "Settling

CR/1340925.4/062429

Defendants"), arising from the proceeding styled *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation,* MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688, and 05-1386, pending in the United States District Court for the Western District of Pennsylvania, under which Stipulation Special Counsel is required to review the Allocation[1] for reasonableness.

3.    Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth and, if called as a witness, I could and would testify competently thereto.

### Preliminary Statement and Finding of Reasonableness

4.    As discussed below, Special Counsel finds that the Allocation on the whole is reasonable.  Particularly, the methodology utilized in the Allocation to determine the amount of each Kessler Class Member's Claim is reasonable because, among other things, (i) determination of the HUD-1 settlement fee component of that claim is subject to independent review and calculation by an expert in that field; (ii) the Sample Size (defined below) to the overall corresponding loan data points appears to be substantially representative as to principal loan amount and locality in which loans were closed; and (iii) regardless, increasing the Sample Size would be cost prohibitive when measured against the anticipated marginal benefit that may or may not be achieved through an increase in the Sample Size on a per claim basis.

5.    Furthermore, the Discount Rate (defined herein) of 18.5% reasonably takes into account probability of success on equitable tolling issues in light of a shift occurring in the Third Circuit toward a less stringent standard found in other courts outside that Circuit, and equitable tolling issues not being applicable to damages attributed under the Settlement to RICO. Additionally, the two groups of Kessler Class Claimants (Non-Equitable Tolling and Equitable

---

[1]  Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Stipulation.

CR/1340925.4/062429

Tolling) were each represented by sophisticated counsel in an all-day mediation on that particular issue and Special Counsel's review did not find anything which could call into question the reasonableness of their independently negotiated 18.5% agreement.

### General Background

6.        On October 25, 2012, the Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") voted to retain SilvermanAcampora as its special counsel ("Special Counsel"). On November 30, 2012, this Court entered the Order Authorizing and Approving the Retention of SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 (the "Retention Order"). Pursuant to the Retention Order, Special Counsel represents the Committee in connection with issues and matters relating to the Debtors' current and former borrowers (collectively, the "Borrowers").

7.        As the Court is aware, during the course of its representation of the Committee, Special Counsel has become well versed in all matters related to Borrowers in the Debtors' case and has, among other things:

a.        analyzed all claims filed by Borrowers in the Debtors' cases, including class action claims, in connection with the preparation of an analysis of the Borrower Claims for the Committee;

b.        analyzed the allegations contained in, and facilitated the resolutions of, adversary proceedings filed by Borrowers against the Debtors;

c.        communicated with Borrowers regarding specific Borrower concerns in relation to the Debtors' cases through the creation and operation of a dedicated Borrower inquiry hotline; and

d.        appeared on behalf of the Committee at multiple hearings on Borrower related adversary proceedings and other Borrower-related matters.

8.        Pursuant to article 6(d) of the Stipulation, Special Counsel was tasked with

investigating the reasonableness of the Allocation of the Kessler Settlement Class Member

Payments established under the Stipulation and rendering an opinion as to such reasonableness.

9.    Special Counsel reviewed the Stipulation, performed independent research

regarding the appropriateness of the Allocation contemplated in the Stipulation in light of the

facts of the case, and performed independent legal research to determine the reasonableness of

the Allocation.

**Allocation Process under the Stipulation**

10.    Article 6(c) of the Stipulation provides that the allocation of payments to the

members of the Kessler Class shall be established through a four (4) step process.  The first step

entails the computation of each Kessler Settlement Class Member's damages under RESPA,

TILA/HOEPA, and RICO.  The second step entails applying a discount rate to claims on loans

closed before May 1, 2000.  The third step entails computing the *pro rata* share for each Kessler

Settlement Class Member Payment by dividing the individual damages for each Kessler

Settlement Class Member by the total of all individual damages for the entire Kessler Settlement

Class.  The fourth step entails determining each Kessler Settlement Class Member's Payment by

multiplying the Kessler Net Recovery Distribution by the *pro rata* share of the Kessler

Settlement Class Member.[2]

*Step One: Computing Kessler Class Member Damages Claims*

11.    Step one is comprised of two components for establishing damage claim amounts.

The first component ("Component A") requires estimating the settlement fees paid with respect

to the closing of each loan.  The second component ("Component B" and together with

Component A, "Step One") requires calculating the actual amount of interest paid by a Kessler

---

[2]  For additional information regarding the allocation of payments to Kessler Class Members, see article 6(c) of the
Stipulation.

4

Settlement Class Member with respect to their respective loan.

12.     Special Counsel views Component A as a subjective component of the damage calculation because not every loan will be evaluated to determine the actual amount of settlement fees paid by each Kessler Settlement Class Member on their respective loan.  Special Counsel believes, however, that the method employed in the calculation of Component A is reasonable, as further discussed below.  Special Counsel finds Component B to be an objective component based on actual interest paid on a per loan basis and, therefore, is *per se* reasonable.

13.     Component A requires an expert (the "Expert") to perform the damages calculations specific to the types of claims, including the settlement fee claims, being settled through the Stipulation.  The Expert will be selected by Class Counsel and will, among other things, estimate the settlement fees based on a sample of approximately four hundred forty (440) loans (the "Sample Size") from among the Kessler Settlement Class for which Class Counsel has fee data.  The Expert will analyze the loan and fee data variations that the Expert determines to be material in order to determine the settlement fees for each loan, with principal loan amount to be an important data point.  That methodology appears, to Special Counsel, to be reasonable, particularly because such review and calculations will be performed by the Expert and the use of the Expert is in and of itself a hallmark of reasonableness.  Moreover, due to the retention of the Expert, Special Counsel believes that it is not its role to opine on these issues other than in the most general sense embodied herein.  Rather, the Expert will make his/her own independent determinations based on his/her knowledge and direct experience and review of the Sample Size and other data available.

14.     Special Counsel did review certain data from the Sample Size as part of its evaluation. Overall, that data, after sorting by principal loan amount, appears to reflect a

CR/1340925.4/062429

reasonable amount of consistency when compared to the Kessler Settlement Class, specifically

when comparing individual loan fees and other settlement fees.  Further, Special Counsel also

reviewed the Sample Size on a state level and determined that the closing costs, per each loan, do

not appear to reflect unreasonable variations and differences that could arise from the locality of

where a particular loan closed.

15.     In reaching its conclusion, Special Counsel also explored the costs that would

need to be incurred to create a larger Sample Size than what currently exists.  Special Counsel

believes that it would be prohibitively expensive to increase the Sample Size by any substantial

measure.  This is particularly so when measured on a per loan basis because the relative amounts

of each Kessler Class Member Claim are not projected to be large enough that any increase

would not result in a material increase in a corresponding Kessler Class Member Payment.

16.     Taking into consideration the presence of the Expert, the size and make-up of the

Sample Size, as well as the prohibitive costs to be incurred in supplementing the Sample Size,

Special Counsel believes Component A to be reasonable.

17.     Component B is based on the actual amount of interest paid on each loan based

upon the loan payment records of each Kessler Settlement Class Member, as provided by the

Settling Defendants.

18.     Taking into consideration the objective nature of Component B, Special Counsel

believes Component B to be reasonable.

19.     Accordingly, Special Counsel believes Step One to be reasonable.

*Step 2: Discount for Loans that Closed Before May 1, 2000*

20.     Step two ("Step Two") requires that the claims held by Kessler Settlement Class

Members whose loans closed before May 1, 2000 (the "Equitable Tolling Members") be reduced

CR/1340925.4/062429

by a discount rate of eighteen and a half percent (18.5%) (the "Discount Rate"). The Discount

Rate is being applied because the Equitable Tolling Members' claims under RESPA and

TILA/HOEPA would have been subject to a statute of limitations defense asserted by the

Settling Defendants outside of the Settlement. Thus, the Discount Rate takes into account a risk

factor that equitable tolling could not be established by the Equitable Tolling Members, or, at a

minimum, a cost adjustment based on legal fees necessary to establish that equitable tolling

would apply to the Equitable Tolling Members (the "Risk Factor").

21.    In determining whether the Discount Rate is reasonable, Special Counsel

reviewed and analyzed, among other things, the pleadings for the underlying class action lawsuit

and the case law cited in those pleadings. Special Counsel also performed its own independent

legal research and analysis concerning the legal issues relating to equitable tolling and how

certain courts have ruled on this issue.

22.    After performing its analysis, Special Counsel has determined that the Discount

Rate accounts for a Risk Factor of approximately 35% on the claims to which equitable tolling

applies.[3]

23.    To illustrate how a Risk Factor of approximately 35% equates to a Discount Rate

of 18.5%, assume that an Equitable Tolling Member's total damages are $100. This class

member is assumed to have a valid RICO claim, and is therefore entitled to an undisputed $46

recovery.[4] Further, assuming a Risk Factor of approximately 35% as to the remaining $54 of

---

[3]    The exact percentage is equal to 34.26%.

[4]    By using the damages summary provided to Special Counsel by Class Counsel, Special Counsel has determined
that the Kessler Settlement Class Members' RESPA claims represent approximately 8% of their total claim, while
the TILA/HOEPA and RICO claims each represent approximately 46% of their total claim. Because equitable
tolling is not necessary to establish the RICO claims and, as a result, each Kessler Settlement Class Member is
assumed to have a valid RICO claim, Special Counsel has determined that 46% (the "RICO Percentage") of their
total claim will be awarded to each Kessler Settlement Class Member. Therefore, when adjusting for the RICO
Percentage, the balance of the Equitable Tolling Members' claims for RESPA and TILA/HOEPA, which claims

CR/1340925.4/062429

damages, the Equitable Tolling Member would be entitled to an additional $35.10 on account of their RESPA and TILA/HOEPA claims, for a total damages claim of $81.10.

24.     Moreover, as a result of Special Counsel's independent investigation of the allegations contained in the complaint, reviewing the applicable case law, the split of authorities amongst the circuits on the issue of equitable tolling, and the Third Circuit's move towards a less stringent standard with regard to RESPA/TILA cases,[5] Special Counsel believes that a Risk Factor of approximately 35% and a Discount Rate of 18.5% are reasonable.

*Step 3: Determining Each Kessler Class Member Payment*

25.     Step three ("Step Three") calculates the ratio for the total settlement proceeds attributable to each Kessler Settlement Class Member by dividing the individual damages for each Kessler Class Member, calculated through Step One and Step Two, by the total amount of damages for the entire Kessler Settlement Class.

26.     Step Three will be applied to determine each Kessler Settlement Class Member's proportionate share of each Kessler Net Recovery Distribution and the amount of each Kessler Settlement Class Member Payment.

27.     Step Three is an objective step, requiring a simple mathematical calculation.

28.     Taking into consideration the objective nature of Step Three, Special Counsel believes Step Three to be reasonable.

---

may be disputed because those claims are rely upon equitable tolling, equals 54% (the "Equitable Tolling Percentage").

[5] There is an indication in the Third Circuit's latest decision in this class action suit that the Third Circuit may be moving towards a less stringent standard that is applied in other circuits, which would not require the Equitable Tolling Members to plead and prove any additional acts of concealment, other than the violation of the statute itself, because such additional requirement would effectively render equitable tolling in the RESPA and TILA/HOEPA context a "dead letter." *See Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.)*, 622 F.3d 275, 307 n. 24 (3d Cir. 2010).

CR/1340925.4/062429

*Step Four: Computing Each Kessler Settlement Class Member Payment*

29.     Step four ("Step Four") involves the calculation of each Kessler Class Member Payment by multiplying the ratio derived in Step Three for each individual Kessler Class Member by the Kessler Net Recovery Distribution.

30.     Step Four is an objective step, requiring a simple mathematical calculation.

31.     Taking into consideration the objective nature of Step Four, Special Counsel believes Step Four to be reasonable.

32.     After reviewing: (i) the Stipulation; (ii) the pleadings in the Kessler litigation as they related to the issue of equitable tolling, including, but not limited to, the complaint, motions to dismiss, and oppositions to the motions to dismiss;   (iii) performing an independent investigation of the facts surrounding the stipulation; and (iv) performing independent legal research regarding the reasonableness of the allocation of Kessler Class Member Payments, Special Counsel believes the allocation contained in Article 6 of the Stipulation to be reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Jericho, New York on July 22, 2013

_s/ Ronald J. Friedman_
Ronald J. Friedman

CR/1340925.4/062429