# <u>Exhibit 5</u>

**KESSLER SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

**Page**

1.    Denial of Liability; No Admissions .................................................................6

2.    Definitions ........................................................................................................7

3.    Certification of the Kessler Settlement Class ................................................14

4.    Allowed Claims .............................................................................................16

5.    Policies ...........................................................................................................16

6.    Administration of Distributions to Kessler Class Claimants ........................20

7.    Incentive Award and Attorneys' Fees and Costs ..........................................27

8.    Releases ..........................................................................................................29

9.    Representations, Stipulations & Covenants ..................................................32

10.   Preliminary Approval Order ..........................................................................34

11.   Opt Outs and Objections By Members of the Kessler Settlement Class .......36

12.   Final Approval Order .....................................................................................40

13.   Certifications to the Court ..............................................................................41

14.   Effectiveness of Settlement Agreement .........................................................42

15.   Failure of Condition .......................................................................................43

16.   Class Notice Forms ........................................................................................44

17.   Public Comments ...........................................................................................45

i

## TABLE OF CONTENTS
(continued)

**Page**

18.    Miscellaneous Provisions.........................................................................................45

19.    General Provisions.................................................................................................47

## KESSLER SETTLEMENT AGREEMENT

SETTLEMENT AND RELEASE AGREEMENT ("**Agreement**") made subject to approval by the Court (as defined herein) by Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard ("**Named Plaintiffs**"),  individually and as the proposed representatives of the Kessler Class Claimants (as defined herein) in the Bankruptcy Cases (as defined herein), and Defendants Residential Funding Company, LLC ("**RFC**"), Residential Capital, LLC, and GMAC Residential Holding Company, LLC (the "**Settling Defendant**s") (the Named Plaintiffs (on behalf of the Kessler Class Claimants) and the Debtors (as defined herein), including the Settling Defendants, collectively, the "**Parties**").

### RECITALS

WHEREAS, the Settling Defendants and certain affiliates of the Settling Defendants ("**Debtors**") commenced Chapter 11 cases on May 14, 2012, styled *In re Residential Capital, LLC, et al.*, Case No. 12-12020(MG), United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Cases**"); and

WHEREAS, the Named Plaintiffs are a subset of the named plaintiffs asserting class action claims against RFC and certain other parties arising from mortgage loans made by Community Bank of Northern Virginia ("**CBNV**") and Guaranty National Bank of Tallahassee ("**GNBT**") and purchased by RFC in an MDL proceeding styled *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation,* MDL No. 1674, Case Nos. 03-0425, 02-01201, 05-0688 and 05-1386, pending in the United States District Court for the Western District of Pennsylvania (the "**MDL Litigation**"); and

WHEREAS, the Named Plaintiffs filed the Proofs of Claim (as defined herein) on behalf of the Kessler Class Claimants against each of the Settling Defendants and a Motion To Apply

1

Bankruptcy Rule 7023 And To Certify Class Claims [Dkt. No. 2044) (the "**Motion to Certify**")

by which they seek to assert in the Bankruptcy Cases as claims on behalf of the Kessler Class

Plaintiffs the same claims asserted in the MDL Litigation against RFC (the "**Bankruptcy Class**

**Claims**") (the MDL Litigation and the Bankruptcy Class Claims, collectively, the "**Litigation**");

and

WHEREAS, the Named Plaintiffs have asserted claims against the Settling Defendants

alleging violations of the Real Estate Settlement Practices Act ("**RESPA"**), the Truth In Lending

Act ("**TILA**"), the Home Ownership and Equity Protection Act ("**HOEPA**") and Racketeer

Influenced and Corrupt Organizations Act ("**RICO**") seeking all available damages on their own

behalf and on behalf of a class of persons similarly situated as a result of certain actions taken in

connection with certain second mortgage loans made to such persons and for which the Named

Plaintiffs contend the Settling Defendants are liable as, among other things, the purchasers,

assignees, servicers and/or master servicers of said loans; and

WHEREAS, the Settling Defendants deny the claims and causes of action being asserted

against them in the Litigation, deny all liability to the Kessler Class Claimants, have opposed the

MDL Litigation, and the Debtors filed an objection to the Motion to Certify [Dkt. No. 2337]; and

WHEREAS, upon mutual consent, the Parties have adjourned the hearing to consider the

Motion to Certify from time to time; and

WHEREAS, counsel for the Named Plaintiffs (the "**Plaintiffs' Counsel**") and counsel for

the Settling Defendants and Debtors have thoroughly investigated the facts relating to the claims

alleged in the Litigation and the events and transactions underlying the Litigation, through

formal and informal discovery, and have made a thorough analysis of the legal principles

applicable to the claims, including the Proofs of Claim, being asserted against the Settling

Defendants; and

WHEREAS, beginning in April 2013, the Debtors, the Plaintiffs' Counsel and other parties participated in plan mediation sessions pursuant to orders of the Court [Dkt. Nos. 2519, 3101 and 3877] that were supervised by the Court-appointed mediator, the Honorable James M. Peck, United States Bankruptcy Judge; and

WHEREAS, throughout the mediation there were ongoing negotiations between and among various parties, including the Debtors, the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases (the "**Creditors' Committee**"), certain of the major constituencies in the case, including Plaintiffs' Counsel on behalf of the Kessler Class Claimants (collectively, the "**Consenting Claimants**"), which ultimately resulted in a global resolution memorialized in a Plan Support Agreement, dated May 14, 2013 by and among the Debtors, the Creditors' Committee, the Consenting Claimants,  Ally Financial Inc. and its non-debtor subsidiaries and affiliates, including Ally Securities (the "**Plan Support Agreement**" or "**PSA"**), who with the Consenting Parties have agreed to, among other things, support the Plan (as defined herein); and

WHEREAS, on May 23, 2013, the Debtors filed a motion to approve the Plan Support Agreement [Dkt. No. 3814], which was approved by the Court on June 26, 2013 [Dkt. No. 4098]; and

WHEREAS, Section 5.3 of the PSA provided as follows:

> 5.3    **Kessler Class Claims**.  The obligations of counsel for the putative Kessler Class under this Agreement are subject to satisfactory resolution of ongoing settlement negotiations with the Debtors on or before the date specified in the Supplemental Term Sheet, and ultimate approval of the settlement by a court of

3

competent jurisdiction on or before the date specified in the Supplemental Term Sheet,[1] including with respect to the amount of the allowed claim of the Kessler Class and other terms and conditions of a settlement.

Accordingly, beginning on June 18, 2013 and concluding on June 27, 2013, Plaintiffs' Counsel and counsel for the Settling Defendants and Debtors engaged in arm's length negotiations concerning the settlement of the Proofs of Claim and the causes of action being asserted against the Settling Defendants in the Litigation and reached the agreements set forth herein; and

WHEREAS, the Named Plaintiffs and Plaintiffs' Counsel have concluded that a settlement with the Settling Defendants as stated herein will be fair, just, equitable, reasonable, adequate, and in the best interests of the Kessler Class Claimants based upon their investigation, study, negotiations and discovery taken in the Litigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Litigation against the Settling Defendants through trial and/or an appeal, the uncertainties of complex litigation, the benefits to be received pursuant to this Settlement, the collectability from Settling Defendants to satisfy a judgment, and the complexities and issues raised by and in the Bankruptcy Cases; and

---

[1]    The Supplemental Term Sheet provided as follows:  " . . . the obligations of the Kessler Class Claimants under the Plan Support Agreement and the Term Sheets are conditioned on (i) reaching agreement with the Debtors and the Creditors' Committee on or before June 10, 2013 with respect to the allowed amount of the Kessler Class Claim, (ii) reaching written agreement with the Debtors and the Creditors' Committee on or before June 24, 2013 with respect to other terms of settlement to be embodied in a settlement agreement, (iii) obtaining preliminary Bankruptcy Court approval under Rules 9019 and 7023 of the proposed settlement agreement on or before the date of the hearing on the Disclosure Statement, and (iv) obtaining final approval under Rule 9019 and Rule 7023 of such settlement agreement as part of the Plan confirmation process."

By agreement, the Parties extended the dates to reach agreement with respect to the allowed amount of the Kessler Class Claim to June 20, 2013 and reaching a written agreement to June 27, 2013.

WHEREAS, the Settling Defendants and other Debtors have concluded that (i) the Allowed Claim Amount is a reasonable settlement amount given Settling Defendants' potential liability, and (ii) it is in the best interests of the Debtors, their bankruptcy estates and their creditors to settle the claims asserted against them in the Litigation, including the Proofs of Claim, on the terms and conditions set forth herein for the purpose of (A) avoiding the burden, significant expense, inconvenience, delay and uncertainty of continuing litigation, (B) obtaining the releases provided for herein, (C) putting to rest all controversies that have been or could be raised against the Settling Defendants in the Litigation and/or on appeal, and (D) facilitating the confirmation and consummation of the Plan that will benefit all of the Debtors' estates and all of their creditors; and

WHEREAS, the Parties acknowledge and agree that this Agreement constitutes a compromise in settlement of the claims (including the Proofs of Claim) and causes of action that have been or could be raised by any Kessler Class Claimant against the Settling Defendants and the other Released Persons (as defined herein) as to the CBNV/GNBT Loans (as defined herein) but shall in no way release or affect (except as set forth herein) the existing or future claims, causes of action, remedies, and/or rights to relief of any Kessler Class Claimant against any person, association, or entity other than a Released Person with respect to the CBNV/GNBT Loans.

NOW THEREFORE, the undersigned parties, each intending to be legally bound and acknowledging the sufficiency of the consideration and undertakings set forth herein, do hereby agree, subject to approval of the Court of this Agreement, that the Litigation and the Released Claims (as defined herein) against the Released Persons as defined herein, are finally and fully compromised and settled and that the claims of the Kessler Class Members against the Released

EXECUTION VERSION

Persons shall be dismissed with prejudice as against the Released Persons as follows:

1.    **Denial of Liability; No Admissions**

The Parties are entering into this Agreement for the purpose of resolving vigorously disputed claims that have arisen between them and in the interest of avoiding the burdens, expense, and risk of further litigation.  By entering into any preliminary settlement discussions, agreeing to the terms of this Agreement, or seeking the approval of this Settlement, the Parties are not making any admissions or concessions whatsoever with respect to any claims or defenses alleged or asserted, or any factual or legal assertions in the Litigation.  Neither this Agreement nor any of its terms or provisions nor any of the negotiations between the Parties or their counsel nor any papers filed in support of the Settlement shall be construed as an admission or concession by any of the Parties or their counsel of anything whatsoever, including but not limited to:    any alleged violation or breach of contract or duty, any alleged fraud, misrepresentation or deception; any alleged violation of any federal, state, or local law, rule, regulation, guideline or legal requirement (or any other applicable law, rule, regulation, guideline or legal requirement); any alleged conduct that could be or has been asserted as the basis for damages or sanctions; the merits of any defenses that the Settling Defendants asserted; or the propriety of class certification of the Kessler Settlement Class if the Litigation were to be litigated rather than settled.  The Parties expressly agree that, in the event the Settlement does not become final and effective in accordance with Section 14 hereof, no Party shall use or attempt to use any conduct or statement of any other Party in connection with this Agreement, or any effort to seek approval of the Agreement, to affect or prejudice any other Party's procedural or substantive rights in any ensuing litigation, including any appeal.  Neither  this Agreement and its terms and provisions nor any papers filed in support of the Settlement shall be offered or

ny-1096603

received as evidence in any action or proceeding to establish: (a) any liability or admission on

the part of the Settling Defendants or their parent or subsidiary or affiliated companies or their

attorneys, or to establish the existence of any condition constituting a violation of or non-

compliance with any federal, state, local or other applicable law, rule, regulation, guideline or

other legal requirement or any condition that has been or could be asserted as the basis for

damages or sanctions; (b) the truth or relevance of any fact alleged in the Litigation; (c) the

existence of any class alleged in the Litigation; (d) the propriety of class certification; (e) the

validity of any claim or defense that has been or could have been asserted in the Litigation or in

any other litigation; (f) that the consideration to be given to the Kessler Settlement Class

Members hereunder represents the amount that could be or would have been recovered by any

such persons if the claims against Settling Defendants were litigated; or (g) the propriety of class

certification in any other proceeding or action.   Except as is provided herein, the Parties

expressly reserve all procedural and substantive rights and defenses to all claims and causes of

action and do not waive any such rights or defenses in the event that the Agreement is not

approved for any reason.

2.    **Definitions**

      As used in this Agreement, the following terms shall be defined as set forth below:

      2.1    **Allocation Counsel.** "**Allocation Counsel**" means the separate counsel that shall

be retained to represent each of the two (2) proposed Sub-Classes described at Paragraph 3(a) of

this Agreement.   Allocation Counsel shall represent the proposed sub-classes, respectively,

solely for the purpose of negotiating and resolving the allocation proposal that is described at

Paragraph 6(c)(ii) of this Agreement.

      2.2    **Allowed Claim.**   "**Allowed Claim**" means an allowed unsecured claim not

subject to subordination in the amount of $300,000,000.00, against RFC only, which amount

shall sometimes also be referred to herein as the "**Kessler Settlement Amount**" and the

"**Kessler Allowed Claim**."

2.3    **Borrower Claims Trust.**    "**Borrower Claims Trust**" means that trust

established and funded as part of the Plan for the benefit of the holders of Borrower Claims (as

such term is defined in the Plan).

2.4    **CBNV/GNBT Loan.**    "**CBNV/GNBT Loan**" means any loan from Community

Bank of Northern Virginia or Guaranty National Bank of Tallahassee described in the definition

of the Kessler Settlement Class in Section 3a below.

2.5    **Class Counsel**.    "**Class Counsel**" means Plaintiffs' Counsel, Walters Bender

Strohbehn & Vaughan, P.C., 2500 City Center Square, 1100 Main Street, Kansas City, Missouri

64105 and Carlson Lynch LTD, PNC Park, 115 Federal Street, Suite 210, Pittsburgh,

Pennsylvania, 15212.

2.6    **Class Mail Notice**.    "**Class Mail Notice**" means a document in a form

substantially the same as that attached hereto as **Exhibit A**.

2.7    **Court.**    "**Court**" means the United States Bankruptcy Court for the Southern

District of New York presiding over the Bankruptcy Cases.

2.8    **Effective Date**.    The "**Effective Date**" of this Agreement means the date when all

of the conditions set forth in Section 14 have occurred and the Settlement thereby becomes

effective in all respects.

2.9    **Final Approval Order**.    "**Final Approval Order**" means an order of the Court in

a form substantially the same as that attached hereto as **Exhibit C**, finally approving this

Agreement and the Settlement pursuant to Bankruptcy Rules 9019 and 7023, which must be

entered no later than the date of entry of the order confirming the Plan ("**Confirmation Order**")
but in any event not earlier than 100 days after the date the Settling Defendants and the Named
Plaintiffs jointly file the Motion to Approve.

2.10    **Final Hearing Date**. "**Final Hearing Date**" means the date set by the Court for
the hearing on final approval of the Settlement, which shall be on or before the date of the
hearing on confirmation of the Plan ("**Confirmation Hearing**").

2.11    **Insurance Rights. "Insurance Rights**" means any and all of the Debtors' rights,
titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, causes of
action, and choses in action under, for, or related to the Policies with respect to a particular item
of loss under the Policies, including the rights (1) to recover insurance proceeds for an item of
loss covered under the Policies and (2) to recover from the insurers that issued the Policies for
breach of contract or breach of other duty or obligation owed by such insurer under the Policies,
as applicable, including the duty to settle, together with any extra contractual or tort claim arising
therefrom, including bad faith, breach of implied covenant of good faith and fair dealing, fraud,
or violation of any statutory or common law duty owed by the insurer under the Policies, as
applicable, and all with respect to a particular item of loss under the Policies.

2.12    **Kessler Class Claimants/Kessler Settlement Class.** "**Kessler Class Claimants**
and "**Kessler Settlement Class**" shall have the meaning set forth in Section 3(a) below.

2.13    **Kessler Gross Recovery**. "Kessler Gross Recovery" means the gross amount of
any distribution to or for the benefit of the Kessler Settlement Class received from any source
pursuant to the Plan, including the Borrower Trust or the Policies.

2.14    **Kessler Net Recovery**. "**Kessler Net Recovery**" means the Kessler Gross
Recovery less: (a) the amount of any litigation expenses and/or costs approved by the Court and

EXECUTION VERSION

awarded to Plaintiffs' Counsel; (b) the amount of any incentive award approved by the Court and paid to the Named Plaintiffs; (c) any interest earned and attributable to these awards, respectively, while on deposit awaiting distribution ("**in escrow**"); and (d) any expenses of administration incurred since the inception of the Qualified Settlement Fund (defined in Section 6(c) herein) as well as those costs associated with administering the Kessler Net Recovery Distribution.

2.15    **Kessler Net Recovery Distribution**.  "**Kessler Net Recovery Distribution**" means the Kessler Net Recovery less: (a) the proportionate share of any amount of any awards for attorneys' fees or attorney compensation approved by the Court and awarded to Plaintiffs' Counsel and (b) any interest earned and attributable to the amount of such awards while in escrow; and (c) a Giveback, if any.

2.16    **Kessler Settlement Class Member**.  "**Kessler Settlement Class Member**" means a member of the Kessler Settlement Class, who does not timely opt out of the Settlement pursuant to Section 11 below.

2.17    **Kessler Settlement Class Member Payment**.  "**Kessler Settlement Class Member Payment**" means a Kessler Net Recovery Distribution payment to the respective Kessler Settlement Class Member(s) pursuant to the Settlement plus any interest earned and attributable to such sum while in escrow.

2.18    **Named Plaintiffs**.  "**Named Plaintiffs**" means the individuals asserting the class claims in the Bankruptcy Cases as follows: Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard, and any person(s) claiming by, through and/or under them.

2.19    **Plan.**  "**Plan**" means the chapter 11 plan to be jointly proposed in the Bankruptcy

EXECUTION VERSION

Cases by the Creditors' Committee and the Debtors in accordance with the Plan Support Agreement.

2.20    **Plaintiffs' Counsel**. "**Plaintiffs' Counsel**" means, collectively, Walters Bender Strohbehn & Vaughan, P.C., 2500 City Center Square, 1100 Main Street, Kansas City, Missouri 64105 and Carlson Lynch LTD, PNC Park, 115 Federal Street, Suite 210, Pittsburgh, Pennsylvania, 15212.

2.21    **Policies. "Policies"** means insurance policies issued under the General Motors Combined Specialty Insurance Program 12/15/00-12/15/03 (policy numbers listed at **Exhibit E**).

2.22    **Preliminary Approval Order**. "**Preliminary Approval Order**" means an order of the Court preliminarily approving the Settlement, conditionally and preliminarily certifying a class for settlement purposes, directing the issuance of a class notice and scheduling a settlement hearing in accordance with Bankruptcy Rule 7023, in a form substantially similar to that attached hereto as **Exhibit B**.

2.23    **Proofs of Claim**. "**Proofs of Claim**" mean the proofs of claims filed by the Named Plaintiffs in the Bankruptcy Cases against RFC, GMAC Mortgage, LLC, Residential Capital, LLC and GMAC-RFC Holding Company, LLC and designated as claims nos. 2110, 2117, 2254 and 5596, respectively, in the Debtors' Official Claims Register.

2.24    **Releasors**. "**Releasors**" means the Named Plaintiffs and all other Kessler Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them. The Releasors shall not include any of the following: (a) any member(s) of the Kessler Settlement Class who opts out of the Settlement in accordance with Section 11 below; and (b) any person(s) whom RFC fails to identify as a member of the RFC Settlement Class on **Exhibit**

D.

2.25    **Released Claims**.  "Released Claims" means any and all claims (including the
Proofs of Claim), demands, actions, causes of action, rights, offsets, setoffs, suits, damages,
lawsuits, liens, costs, surcharges, losses, attorneys' fees, expenses or liabilities of any kind
whatsoever, in law or in equity, for any relief whatsoever, including monetary, injunctive or
declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental,
consequential or punitive damages, as well as any and all claims for treble damages, penalties,
attorneys' fees, costs or expenses, whether known or unknown, alleged or not alleged in the
Litigation, the Proofs of Claim or in any proofs of claim filed by a Kessler Class Member in the
Bankruptcy Cases, suspected or unsuspected, contingent or vested, accrued or not accrued,
liquidated or unliquidated, matured or unmatured, that arise out of the CBNV/GNBT Loans,
including any claims against the Released Persons arising out of the handling, preservation,
impairment, or otherwise related to any insurance coverage or other Insurance Rights under the
Policies or contractual indemnification related to the CBNV/GNBT Loans, and that any of the
Releasors have had, or now have, from the beginning of time up through and including the
Effective Date against the Released Persons ("**Claims**"), including: (1) allegations that were or
could have been asserted against the Released Persons in the Litigation in any way relating to a
CBNV/GNBT Loan; and (2) any activities of the Released Persons with respect to a
CBNV/GNBT Loan, including any alleged representations, misrepresentations, disclosures,
incorrect disclosures, failures to disclose, acts (legal or illegal), omissions, failures to act,
deceptions, acts of unconscionability, unfair business practices, breaches of contract, usury,
unfulfilled promises, breaches of warranty or fiduciary duty, conspiracy, excessive fees
collected, or violations of any consumer protection statute, any state unfair trade practice statute,

or any other body of case, statutory or common law or regulation, federal or state, including TILA, HOEPA, RESPA, RICO (and, respectively, in each case, their implementing regulations). It is the intention of the Releasors to provide a general release of the Released Claims against the Released Persons; provided, however, that anything in this Agreement to the contrary notwithstanding, the term Released Claims does not include: (A) the claims of the Kessler Class Claimants, whether or not currently asserted in the Litigation, against (1) PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee, (2) the insurers that issued the Policies listed in **Exhibit E**, or (3) any other person, association or entity other than the Released Persons in connection with the CBNV/GNBT Loans; or (B) any and all claims for indemnification or contribution that RFC might otherwise have against PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee.

2.26    **Released Persons**.  "**Released Persons**" means the Settling Defendants and the Debtors, and each of their past and present officers, directors, shareholders, employees, attorneys (including any consultants hired by counsel), accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns.  Notwithstanding anything in this Agreement to the contrary, the term Released Persons **expressly does not include any of the following**: (a) PNC Bank, as successor in interest to Community Bank of Northern Virginia; (b) the FDIC, as receiver of Guaranty National Bank of Tallahassee; (c) insurers or successors to insurers that issued the Policies as listed in **Exhibit E**; or (d) any other person, association or entity other than a Released Person.

2.27    **Settlement.**    "**Settlement**" means the compromise and settlement memorialized by this Agreement.

2.28    **Settling Defendants' Counsel**.    "**Settling Defendants' Counsel**" means
Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York, 10104 and
Bryan Cave LLP, 560 Mission Street, 25th Floor San Francisco, CA 94105.

2.29    **Settlement Hearing**.    "**Settlement Hearing**" means the hearing on final approval
of the Settlement under Bankruptcy Rules 7023 and 9019, which must occur on or before the
date of the Confirmation Hearing.

## 3.    Certification of the Kessler Settlement Class

a.    The Parties shall jointly file a motion with the Court pursuant rules 7023 and 9019
of the Federal Rules of Bankruptcy Procedure (the "**Motion to Approve**"), which shall request,
among other things, that the Court approve the Settlement for a class of persons for purposes of
settlement only (referred to and defined herein as the "**Kessler Settlement Class**" and also the
"**Kessler Class Claimants**"), defined as follows:

> All persons who obtained a second or subordinate, residential,
> federally related, non-purchase money, HOEPA qualifying mortgage
> loan from Community Bank of Northern Virginia or Guaranty
> National Bank of Tallahassee that was secured by residential real
> property used as their principal dwelling and that was assigned to
> GMAC-Residential Funding Corporation n/k/a Residential Funding
> Company, LLC, who was not a member of the class certified in the
> action captioned Baxter v. Guaranty National Bank, et al., Case No.
> 01-CVS-009168 in the General Court of Justice, Superior Court
> Division of Wake County, North Carolina.

> Equitable Tolling Sub-Class shall mean: All persons who meet the
> above class-definition, whose loan closed prior to May 1, 2000.

> Non-Equitable Tolling Sub-Class shall mean: All persons who meet
> the above class-definition, whose loan closed after May 1, 2000.

b.    Subject to the provision of section 9(a), a list of all members of the Kessler
Settlement Class that is apparent from Debtors' reasonable review of available information
contained within Debtors' electronic data warehouse records is attached hereto as **Exhibit D;**

however, the Parties shall seek authority from the Court to have the contents of **Exhibit D** filed
under seal with the Court to protect the privacy of the names and addresses of the members of
the Kessler Settlement Class.

c.      The Settling Defendants' motion also shall request the Court rule on the
reasonableness of the Kessler Settlement Amount.  All motions filed pursuant to this provision
will be served upon the insurers that issued the Policies in a manner consistent with the relevant
federal rules, orders of the Court and the terms of the Preliminary Approval Order.

d.      If this Agreement is not approved by the Court pursuant to the proposed Final
Approval Order, or if for any reason this Settlement fails to become effective pursuant to Section
14 of this Agreement, the conditional settlement class certification provided herein, the
Settlement and any action(s) taken or to be taken in connection therewith, including but not
limited to any papers filed in support of the Settlement, shall be terminated and shall become null
and void and have no further force or effect, the Preliminary Approval Order shall be vacated,
the Parties shall be restored to their respective positions existing prior to the execution of this
Agreement, and the Parties' rights and obligations with respect to the use of this Agreement, the
Settlement contemplated hereby, and any papers filed in support of the Settlement shall be
subject to Sections 1 and 15 hereof.  In such case, or if this Agreement shall terminate or the
settlement embodied herein does not become effective for any reason, the Agreement and all
negotiations, court orders, and proceedings relating thereto and papers filed in support thereof
shall be without prejudice to the rights of the Parties, and each of them, who shall be restored to
their respective positions existing prior to the execution of this Agreement.  In addition, and in
such event, evidence relating to the Agreement, all negotiations, and papers filed in support of
the Settlement shall not be discoverable or admissible in the Litigation or otherwise.

4.      **Allowed Claims.**  The Plan shall provide that the Kessler Settlement Class shall have the

Allowed Claim as provided in Section 2.1 herein and in accordance with the PSA.  In addition to

the Allowed Claim for distribution purposes under the Plan, members of the Kessler Settlement

Class shall be entitled, upon preliminary approval of the Agreement by the Bankruptcy Court, to

the Allowed Claim for the purpose of voting on the Plan.  In addition, Proofs of Claim Nos.

2117, 2254 and 5596 filed against Residential Capital, LLC, GMAC-RFC Holding Company,

LLC and GMAC Mortgage, LLC, respectively, shall be deemed expunged in their entirety on the

Effective Date along with any proof of claim filed by a Kessler Settlement Class Member to the

extent that it relates to a Released Claim without further act of the Debtors or an order of the

Court.

5.      **Policies**

        a.      The sole source of recovery of the Kessler Settlement Class shall be distributions

from the Borrower Claims Trust and Insurance Rights under the Policies and not from any other

assets or property of the Settling Defendants, Released Persons or any other Debtor, or, as

established under the Plan, the Liquidating Trust (as defined in the PSA) or the Private Securities

Claims Trust (as defined in the PSA).

        b.      On the Effective Date, the Debtors shall convey, transfer, and assign their rights

to the Insurance Rights to (i) the Kessler Settlement Class with respect to indemnity for the

Kessler Settlement Amount and (ii) the Liquidating Trust with respect to: (a) costs, charges and

expenses incurred with respect to the Litigation, including such costs, charges, expenses

(including legal fees and expenses) incurred in defending the Litigation in the Bankruptcy and

defending the Litigation of all Claims against RFC related to the CBNV/GNBT loans, including

those cases consolidated in *In Re Community Bank of Northern Virginia Second Mortgage*

EXECUTION VERSION

*Lending Practice Litigation,* MDL No. 1674, U.S. District Court for the Western District of

Pennsylvania Case Nos. 03-0425, 02-01201, 05-0688, 05-1386; (b) costs, charges, and expenses

incurred with respect to that certain class action styled *Steven and Ruth Mitchell v. Residential*

*Funding Company, LLC, et al*., Circuit Court of Jackson County, Missouri Case No. 03-

CV220489-01 ("**Mitchell Class Action**"); (c) any damages, judgments, settlements, costs,

charges and expenses previously paid or agreed to be paid by Debtors with respect to the

Mitchell Class Action, including compensatory damages, punitive damages, interest and

attorneys' fees; and (d) any damages, judgments, settlements, costs, charges and expenses

previously paid by Debtors with respect to: *Shokere, et al. v. Residential Funding Company,*

*LLC, et al.,* Circuit Court of Jackson County, Missouri Case No. 1116-CV30478, *Baker, et al. v.*

*Century Financial Group, Inc., et al.*, Circuit Court of Clay County, Missouri Case No. CV100-

4294CC, *Couch, et al. v. SMC Lending, Inc., et al.*, Circuit Court of Clay County, Missouri Case

No. CV100-4332CC, *Gilmor, et al. v. Preferred Credit Corporation, et al*., U.S. District Court

for the Western District of Missouri Case No. 4:10-CV-00189-ODS, and *Beaver, et al. v.*

*Residential Funding Company, LLC, et al*., Circuit Court of Jackson County, Missouri Case No.

00CV215097-01. The Debtors reserve the right to enter into an agreement with the class

members in the Mitchell Class Action in connection with the unpaid prior Mitchell settlement

agreement that may include an assignment of Insurance Rights under the Policies with respect to

the Mitchell settlement amount.  In the event of such agreement with the Mitchell class, such

agreement will include provisions similar to Sections 5(c) and 5(d), addressing cooperation with

the Parties and treatment of insufficient insurance funds to pay for valid claims, and the Parties

agree that the provisions and their obligations in Sections 5(c) and 5(d) of this Agreement shall

also extend to the assignee of such Insurance Rights.

EXECUTION VERSION

c.      The Parties acknowledge that the proceeds under the Policies may be insufficient to pay the full value of all of the insurance claims listed in Section 5 of this Agreement. The Liquidating Trust shall be entitled to recover sixty million dollars ($60,000,000) of Policy proceeds without any proration between the Parties.  If the Liquidating Trust obtains judgments or settlements of Policy proceeds that total in excess of sixty million dollars ($60,000,000) (the amount in excess of $60,000,000 hereafter referred to as the "**Liquidating Trust Excess Recovery**"), which when added to the amounts of insurance proceeds recovered by the Kessler Settlement Class obtained by judgments or settlements (hereafter referred to as the "**Kessler Recovery**") (the sum of the Liquidating Trust Excess Recovery and the Kessler Recovery together hereafter referred to as the "**Recovery Sum**"), exceeds the remaining three hundred forty million dollars ($340,000,000) in Policy limits, then those recoveries of proceeds will be prorated as follows:  The Liquidating Trust's share of the remaining three hundred forty million ($340,000,000) in Policy limits shall be the fraction that the Liquidating Trust Excess Recovery bears to the Recovery Sum, and the Kessler Settlement Class's share of the remaining three hundred forty million ($340,000,000) in Policy limits shall be the fraction the Kessler Recovery bears to the Recovery Sum.

d.      The Plan shall provide that the Kessler Settlement Class and the Debtors and their successors and assigns including the Liquidating Trust shall cooperate with each other in good faith to coordinate the prosecution of their respective Insurance Rights and shall use reasonable efforts not to prejudice the others' Insurance Rights provided that nothing in this provision shall require either the Liquidating Trust or the Kessler Settlement Class to undertake any efforts that would materially adversely affect the position of the cooperating party.  Such cooperation shall include cooperating by bringing any insurance coverage action in a combined action or

18

proceeding to the extent necessary to avoid insurance company defenses based on splitting of a cause of action through partial assignment.  Each assignee of Insurance Rights shall bear its own costs and expenses in pursuing recovery on the rights assigned to it.  Each party shall have sole settlement authority with respect to its claims.

       e.      To the extent the Kessler Settlement Class recovers under Insurance Rights on account of all or some of their claims, the Kessler Settlement Class shall return a proportionate amount (such proportionate amount determined by dividing the recovery amount under the Insurance Rights by the Allowed Claim) of any prior distributions from the Borrower Claims Trust Assets made on account of any recoveries of the Kessler Settlement Class from the Borrower Claims Trust (the "**Giveback**").  The Kessler Settlement Class shall be entitled to its proportionate share of any distributions from the Borrower Trust resulting from the Giveback.  No Kessler Net Recovery Distribution shall be made from proceeds recovered from the Insurance Rights unless and until a Giveback, if any, owed to the Borrower Claims Trust has actually been made.

       f.      The Kessler Settlement Class and the Liquidating Trust take on all risk of recovery or lack thereof (including non-collectability), on the Insurance Rights.  The assignment of the Insurance Rights under the Policies is without recourse or warranty with respect to actual recovery on such assigned rights.  The lack of recovery on the Insurance Rights by the Kessler Settlement Class or the Liquidating Trust, as applicable, shall not create any rights of recovery against any Debtor, Released Person or Settling Defendant.  To avoid any doubt, there shall be no claims upon the Debtors, Released Persons, or Settling Defendants based upon the failure to recover insurance proceeds or other Insurance Rights or the recovery of only a limited amount of insurance proceeds or other Insurance Rights, even in such instances where the Debtor, Released

Person, or Settling Defendants' own past conduct is what precludes or limits the recovery or such

instance where the assignments embodied in this Agreement are found to be invalid for any

reason.

g.        A separate written agreement, in form and substance reasonably satisfactory to the

Debtors, the Creditors' Committee and Plaintiffs' Counsel, shall be executed by the trustee of the

Liquidating Trust and the Kessler Settlement Class on the Effective Date, memorializing the

cooperation and other obligations of the Liquidating Trust and the Kessler Settlement Class with

respect to the Policies (the "**Cooperation Agreement**").  The Cooperation Agreement will be

filed as part of the Plan Supplement (as defined in the PSA).

**6.      Administration of Distributions to Kessler Class Claimants**

a.        Plaintiffs' Counsel, subject to such supervision and direction of the Court as may

be appropriate or necessary, shall be responsible for and shall administer and oversee the

distribution to the Kessler Class Claimants of any funds distributed to or for the benefit of the

Kessler Class Claimants, whether received from the Borrower Trust, from Insurance Rights with

respect to the Policies, or any other source, and any and all costs associated with allocating and

administering the distribution to the Kessler Class Claimants shall be borne by the Kessler Class

Claimants and deducted from the Kessler Gross Recovery.

b.        The Debtors shall provide to Plaintiffs' Counsel copies (in an electronic format)

of mutually agreed upon electronic data from the data warehouse with respect to all

CBNV/GNBT Loans of the Kessler Settlement Class Members identified in **Exhibit D**.  Such

electronic data from the data warehouse shall be provided at the expense of the Debtors.  To the

extent that loan files and electronic loan histories with respect to CBNV/GNBT Loans of the

Kessler Settlement Class Members identified in Exhibit D exist within Debtors' possession and

control, Debtors shall not destroy such loan files and electronic loan payment histories without reasonable prior notice to Plaintiffs' Counsel, and will provide Plaintiffs' Counsel with reasonable access to such loan files and electronic loan payment histories, which shall be obtained at the expense of Plaintiffs' Counsel.

c.     The Kessler Net Recovery Distribution (as defined in Section 2.14) will be apportioned and allocated to the Kessler Settlement Class Members by way of an individual Kessler Settlement Class Member Payment (as defined in Section 2.15).  This allocation will be done by (i) First, computing the individual damages for each Kessler Settlement Class Member in the manner set forth below; (ii) Second, by applying the ___ discount described below for loans that closed before May 1, 2000; (iii) Third, computing the pro rata share or percentage for each Kessler Settlement Class Member Payment by dividing the individual damages for each Kessler Settlement Class Member by the total of all individual damages for the entire Kessler Settlement Class; and (iv) Fourth, determining each Kessler Settlement Class Member Payment by multiplying the Kessler Net Recovery Distribution by the pro rata share or percentage of such Kessler Settlement Class Member, all in the manner set forth below:

(i)     **Computing the individual damages for each Kessler Settlement Class Member:** The two (2) material components of damages for the RESPA, TILA/HOEPA and RICO claims are the settlement fees and the interest paid on the loan.  The individual Kessler Settlement Class Member damages will be comprised of the sum of: (a) the estimated settlement fees paid with respect to such loan and (b) the actual amount of interest paid with respect to such loan.

(a)     The estimated settlement fees paid with respect to each loan will be based on a sample of approximately four hundred loans from among the Kessler

EXECUTION VERSION

Settlement Class for which Class Counsel has settlement fee data. That sample will be analyzed

by an expert to estimate settlement fees for each individual loan based on loan and fee data

variations that the expert determines are material in order to reasonably estimate the fees for each

loan.  That estimate will consider the original loan amount for each Kessler Settlement Class

Member's loan as well as other data. .

          (b)     The actual amount of interest paid on the individual Kessler

Settlement Class Member loans will be based upon the loan payment records and data of each

Kessler Settlement Class Member through the current date as provided by the Settling

Defendants.

          (ii)    **Discount for loans that closed before May 1, 2000.** For loans

closed before May 1, 2000, the individual damages will be reduced by _____ to reflect the fact

that the RESPA and TILA/HOEPA claims on loans preceding that date are subject to a statute of

limitations defense and are timely only after application of the legal doctrine of equitable tolling.

The specific allocation proposal shall be negotiated by Allocation Counsel in a mediation to

occur in advance of the filing of the Motion for Preliminary Approval of this Agreement.

          (iii)    **Determining each Kessler Settlement Class Member Payment:**

The individual damages of each Kessler Settlement Class Member will then be divided by the

total amount of damages of the entire Kessler Settlement Class to determine a proportion or ratio

of the total settlement proceeds attributable to each Kessler Settlement Class Member.  For each

Kessler Settlement Class Member, the ratio will be applied to determine each Kessler Settlement

Class Member's proportionate share of each Kessler Net Recovery Distribution and the amount

of each Kessler Settlement Class Member Payment.

          d.     The above allocation proposal, as it may be modified, will be reviewed by Special

Borrowers' Counsel to the Creditors' Committee, SilvermanAcampora, LLP, 100 Jericho
Quadrangle, Suite 300, Jericho, New York 11753 ("**Special Borrowers' Counsel**") for
reasonableness, and said allocation may be subsequently modified. Plaintiffs' Counsel shall
cooperate with any reasonable requests for information from Special Borrowers' Counsel.
Special Borrowers' Counsel shall perform such investigation, review and analysis as Special
Borrowers' Counsel believes necessary in order to render an opinion. Such opinion shall be
provided in the form of a declaration and filed as part of or contemporaneously with the filing of
the Motion to Approve.

e.      Any funds received by or for the benefit of the Kessler Settlement Class shall be
deposited in an account at a bank selected by Plaintiffs' Counsel (such funds, collectively, the
"**Qualified Settlement Fund**"). Class Counsel shall establish the Settlement Fund on or before
the receipt of any funds. The Parties intend that this account will qualify as a Qualified
Settlement Fund under Section 468B of the Internal Revenue Code of 1986, as amended (the
"**Code**"), that the Qualified Settlement Fund shall be established, operated and managed in
accordance with Treasury Regulations Sections 1.468B-1 to 1.468B-5, and that all transfers of
cash or property to or from the Qualified Settlement Fund shall be made in compliance with such
Treasury Regulations. The Parties agree that the Borrower Claims Trust, Debtors, Liquidating
Trust, or insurers under the Policies, as the case may be, are the respective transferors (each,
respectively, to the extent of any transfer by it, a "**Transferor**") of any of the respective
payments made by them respectively to or for the benefit of the Kessler Settlement Class within
the meaning of 26 CFR §1.468B-1(d)(1). The Settlement Fund Administrator designated
pursuant to the Plan of Allocation ("**Administrator**") shall make all payments required to be
made to Class Counsel, the Named Plaintiffs, and Kessler Settlement Class Members pursuant to

the terms of this Agreement, pay all taxes imposed on the income of the Qualified Settlement Fund, and arrange for the preparation and filing of all tax reports, tax forms and tax returns required to be filed by the Qualified Settlement Fund, including all Forms 1099.  All taxes on the income of the Qualified Settlement Fund, and all costs and expenses related to the opening, operation, management and closing of the Qualified Settlement Fund, shall be paid solely out of the Qualified Settlement Fund and shall be considered a cost of administration.  All distributions from the Qualified Settlement Fund shall be made by the Administrator in accordance with the terms of this Agreement.  Settling Defendants have no responsibility for or liability with respect to the investment, allocation, or distribution of funds of the Qualified Settlement Fund; the determination, administration, calculation, or payment of claims or distributions from the Qualified Settlement Fund; the payment or withholding of any taxes or the filing of any tax returns, forms, or notices with respect to the income of or distributions from the Qualified Settlement Fund.  Any Transferor shall supply to the Administrator the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. § 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which a Transferor makes a transfer to the Qualified Settlement Fund.  The Administrator, subject to such supervision and direction of the Plaintiffs' Counsel and the Court as may be necessary, shall be solely responsible for and shall administer and oversee the distributions to the Kessler Settlement Class.

f.      If any member of the Kessler Settlement Class timely opts out and excludes themselves from the Settlement, such member shall no longer be a Kessler Settlement Class Member and distributions that would otherwise be made to such member shall be reallocated to the Kessler Settlement Class Members pro rata.  Plaintiffs' Counsel, together with the Administrator, shall calculate the Kessler Class Net Recovery and the Kessler Class Net

EXECUTION VERSION

Distribution and distribute the Kessler Class Net Distribution, plus any interest earned, to the

Kessler Settlement Class Members (i.e., those members of the Kessler Settlement Class, if any,

who did not timely opt out) in amounts calculated in accordance with the Plan of Allocation or as

the Court may otherwise determine and approve.  Plaintiffs' Counsel and the Administrator shall

distribute the Kessler Settlement Class Member Payments to the Kessler Settlement Class

Members within a reasonable time after receipt of any amount that Plaintiff's Counsel and the

Administrator determine to be a sufficient amount to justify the time and expense of calculating

and making a distribution.  Any returned checks will be re-mailed to any new address disclosed.

To the extent any check is returned without any new address disclosed or a second time,

Plaintiffs' Counsel shall undertake reasonable efforts to locate a current address for such Kessler

Settlement Class Member.  If any Kessler Settlement Class Member refuses to accept receipt of a

Kessler Settlement Class Member Payment check, or does not cash a Kessler Settlement Class

Member Payment check within sixty (60) days of receipt, Plaintiffs' Counsel shall undertake

reasonable efforts to locate and/or contact the Kessler Settlement Class Member and inquire

about receiving and/or cashing the check.  A Kessler Settlement Class Member's right to a

settlement payment pursuant to this Agreement is a conditional right that terminates if a Kessler

Settlement Class Member to whom a Kessler Settlement Class Member Payment check is mailed

fails to cash his or her check within six months of the date of the check.  In such case, the check

shall be null and void (the checks shall be stamped or printed with a notice to this effect), and the

Parties shall have no further obligation under the terms of this Agreement to make payment to

such Kessler Settlement Class Member.  Within 210 days of the date of mailing of the final

Kessler Net Distribution, Counsel shall file a report with the Court confirming that the entirety of

the Kessler Net Distributions and related Kessler Settlement Class Member Payments were

EXECUTION VERSION

distributed to the Kessler Settlement Class Members and checks cashed or, if such a
confirmation cannot be provided, outlining the steps that remain to distribute any unclaimed
portion of the Kessler Net Distribution.  Plaintiffs' Counsel shall reallocate the amounts of any
unclaimed or uncashed checks to the paid Kessler Settlement Class Members pro rata based on
their allocable share of their total paid distributions of claimed checks at such time as Plaintiffs'
Counsel determines to be appropriate in their sole discretion, but which in any event shall be
prior to the expiration of any period of escheatment.  If any such reallocation results in an
amount that is in Plaintiffs' Counsel's opinion too small to justify the time and expense
necessary to distribute to the Kessler Settlement Class Members, then Plaintiffs' Counsel shall
file a motion with the Court to distribute such amount to a charity designated by Plaintiffs'
Counsel.

g.      Kessler Settlement Class Members shall be responsible for any taxes due or any
tax liability arising out of any distribution.

h.      The Released Persons shall have no responsibility for, interest in, or liability
whatsoever with respect to or arising out of the investment, allocation, or distribution of the
Settlement Funds, the determination, administration, calculation, or payment of claims, the
payment or withholding of taxes, or any losses incurred in connection therewith.

i.      Any Kessler Settlement Class Member who receives a payment pursuant to the
Settlement shall be solely responsible for distributing or allocating such payment between or
among all co-borrowers on his, her, or their CBNV/GNBT Loan, or to any assignees of his or her
claim, regardless of whether a payment check has been made out to all or only some of the
Kessler Settlement Class Members' co-borrowers and represents and warrants that he, she  or
they are entitled to receipt of the Kessler Settlement Class Member Payment and has not

26

assigned by operation of law or otherwise the right to receipt of the Kessler Settlement Class

Member Payment.  The Kessler Settlement Class Members shall, upon receipt of any Kessler

Settlement Class Member Payment, remit the Kessler Settlement Class Member Payment to any

person who has received by assignment or operation of law any right, title or interest to or in the

Kessler Settlement Class Member Payment.

j.       No person shall have any claim against the Released Persons, Plaintiffs' Counsel,

the Administrator, or any agent designated pursuant to this Agreement or the Plan of Allocation

based upon any distributions made substantially in accordance with this Agreement or any orders

of the Court.

## 7.    Incentive Award and Attorneys' Fees and Costs

a.       The Named Plaintiffs may petition the Court for the payment of an incentive

award in a total amount not to exceed $72,500.00 (the "**Incentive Cap**"), which is the sum of the

individual amounts set forth on **Schedule 1**, in recognition of services rendered by the remaining

named plaintiffs in the MDL Litigation (including the Named Plaintiffs) for the benefit of the

Kessler Settlement Class during the Litigation. Any such incentive award shall be in addition to

the amount to be paid on such Plaintiffs' individual claims.  The amount of any incentive award

approved by the Court, and any interest attributable to said amount while in escrow, shall be

deducted from the Kessler Gross Recovery to determine the Kessler Net Recovery from which

any award of attorneys' fees to Plaintiffs' Counsel shall be deducted before the balance is

distributed to the Kessler Settlement Class Members as the Kessler Net Distribution in

accordance with the Plan of Allocation.  The Settling Defendants and the Committee shall not

object to the Named Plaintiffs applying to the Court for and/or receiving an incentive award in

the amounts on **Schedule 1**.  To the extent the Court approves incentive awards in an amount

less than the Incentive Cap, the difference, and any interest attributable to the amount of the difference, shall be included in and treated as a part of the Kessler Net Recovery.

b.    Plaintiffs' Counsel and/or the Named Plaintiffs may petition the Court for an award of reasonable and documented litigation expenses and/or court costs not to exceed one million five hundred thousand dollars ($1,500,000.00).    The Settling Defendants and the Committee shall not object to Plaintiffs' Counsel and/or the Named Plaintiffs applying to the Court for, and receiving, an award of expenses and/or costs in the above amount.    The amount of any award for litigation expenses and/or costs approved by the Court, and any interest attributable to said amount while in escrow, shall be deducted from the Kessler Gross Recovery to determine the Kessler Net Recovery from which any award of attorneys' fees to Plaintiffs' Counsel shall be deducted before the balance is distributed to the Kessler Settlement Class Members as the Kessler Net Distribution in accordance with the Plan of Allocation.    To the extent the Court awards expenses and/or costs in an amount that is less than the not to exceed amount stated above, the difference and any interest attributable thereto, shall be included in and treated as a part of the Kessler Net Recovery.    Allocation Counsel shall be paid their respective litigation expenses and costs (the "**Allocation Costs**") as approved by the Court for their representation of the Sub-Classes with respect to the allocation issue.    The Allocation Costs shall be included in, paid from and subject to the above referenced not to exceed award of attorney's litigation costs and fees.

c.    Plaintiffs' Counsel and/or the Named Plaintiffs may also petition the Court for an award of attorneys' fees not to exceed thirty-five percent (35%) of each Kessler Net Recovery. The amount of any such fee award approved by the Court, and any interest attributable thereto, shall be deducted from the Kessler Net Recovery to determine each Kessler Net Distribution and

the individual Kessler Settlement Class Member Payments.  The Settling Defendants and the

Committee shall not object to Plaintiffs' Counsel and/or the Named Plaintiffs applying to the

Court for, and receiving, an award of attorneys' fees in the above amount.  To the extent the

Court awards attorneys' fees in an amount that is less than the not-to-exceed amount stated

above, the difference and any interest attributable thereto, shall be included in and treated as a

part of the Kessler Net Recovery Distribution. Allocation Counsel shall be paid separately for

their representation of the Sub-Classes with respect to the allocation issue with said separate

payment consisting of a lodestar for their time expended on the negotiation of the allocation

proposal (the "**Allocation Fee**").  The Allocation Fee shall be included in, paid from and subject

to the above referenced not to exceed award of attorneys' fees.

d.      Except as otherwise provided in this Agreement, each Party shall bear its own

attorneys' fees, costs, and expenses incurred in the prosecution, defense, or settlement of the

Litigation.

**8.      Releases**

a.      On the Effective Date, in exchange for the agreement by the Settling Defendants

to make available and fund the Borrower Claims Trust, to assign the Insurance Rights as set forth

herein and for other good and valuable consideration, Releasors, by operation of this Release and

the judgment set forth in the Final Order, shall be deemed without further action by any person

or the Court (i) to have fully, finally and forever released, settled, compromised, relinquished,

and discharged any and all of the Released Persons of and from any and all Released Claims; (ii)

to have consented to dismiss with prejudice the Released Claims of the Releasors against the

Released Persons in the Litigation; and (iii) to be forever barred and enjoined from instituting or

further prosecuting the Released Persons in any forum whatsoever including any state, federal, or

foreign court, or regulatory agency.  The Parties agree that the Released Persons will suffer irreparable harm if any Kessler Settlement Class Member takes action inconsistent with this Section 8(a), and that, in such event, the Released Persons may seek an injunction as to such action without further showing of irreparable harm; provided, however, that nothing in the Release under this Agreement shall be deemed to waive or impair the right of the Kessler Settlement Class or any members thereof or the Liquidating Trust to seek and recover for their respective claims under the Policies.

b.    The Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Releases, but that it is their intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally and forever settle and release each of the Released Persons from all Released Claims, known or unknown, suspected or unsuspected, accrued or not accrued contingent or matured, which now exist, may hereafter exist, or may heretofore have existed, without regard to the subsequent discovery or existence of such different or additional facts.

c.    The Releasors further acknowledge that they may have sustained losses that are presently unknown or unsuspected, that such damages and other losses as were sustained might, but for the releases set forth in this Agreement (the "**Releases**"), have given rise to additional causes of action, claims, demands and/or debts in the future.  The Releasors acknowledge that the Releases have been negotiated and agreed upon in light of this realization and, being fully aware of this situation, Releasors intend to release the Released Persons from any and all such unknown claims.  The Releases may be pleaded as a defense or as a bar to any action or proceeding which may be brought, instituted or taken with respect to any matters which are in

EXECUTION VERSION

any way related to the Litigation and/or any claims covered by the Releases.  The Releasors

waive any benefits that California Civil Code Section 1542 and any other laws, legal decisions,

and legal principles of similar effect might provide to them in the future, and agree that the

Releases extend to all Released Claims whether known or suspected by the Parties or not, to and

including the Effective Date of this Agreement.  California Civil Code Section 1542 reads as

follows:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

The Releasors acknowledge that the effect of California Civil Code Section 1542 has

been explained to them by their own counsel.  The Releasors further acknowledge and agree that

this waiver of rights under Section 1542 of the Civil Code has been separately bargained for and

is an essential term of this Agreement.

d.        Subject to Court approval, each Kessler Settlement Class Member shall be bound

by this Agreement and all of their claims shall be dismissed with prejudice and released even if

they never received actual, prior notice of the Litigation or the Settlement in the form of the

Class Mail Notice or otherwise.  The Releases and agreements contained in this Section [6] shall

apply to and bind all Kessler Settlement Class Members, including those Kessler Settlement

Class Members whose Class Mail Notices are returned as undeliverable, and those for whom no

current address can be found, if any.

e.        The Parties shall use their reasonable best efforts to include in the Final Approval

Order a bar order that permanently bars, enjoins and restrains: any and all persons and entities

(including but not limited to non-settling defendants in the Litigation, their successors or assigns,

and any other person or entity later named as a defendant or third party in the Litigation) from

ny-1096603

EXECUTION VERSION

instituting, commencing, prosecuting, asserting or pursuing any claim against any of the

Released Parties for contribution or indemnity (whether contractual or otherwise), however

denominated, arising out of, based upon or related in any way to the Released Claims or claims

and allegations asserted in the Litigation (or any other claims where the alleged injury to the

entity/individual is the entity/individual's actual or threatened liability to one or more members

of the Kessler Settlement Class), whether arising under state, federal or foreign law as claims,

cross-claims, counterclaims, or third-party claims, whether asserted in this Court, in any federal

or state court, or in any court, arbitration proceeding, administrative agency, or other forum in

the United States or elsewhere, and whether such claims are legal or equitable, known or

unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.  All such claims

will be extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by

the Court, if necessary.   Any person or entity so barred and enjoined shall be entitled to

appropriate judgment reduction, if applicable, in accordance with applicable statutory or

common law rule to the extent permitted for the claims alleged herein.

**9.**      **Representations, Stipulations & Covenants**

a.      Each of the Settling Defendants represent, warrant and declare that they have

acted in good faith and with best efforts in assembling **Exhibit D** and that **Exhibit D** contains a

list of borrowers whose Loans were purchased by RFC from CBNV or GNBT, which loans the

Debtors believe were HOEPA-qualifying loans when made, and which loans were not part of the

class certified in Baxter v. Guaranty National Bank, et al., Case No. 01-CVS-009168 in the

General Court of Justice, Superior Court Division of Wake County, North Carolina.  The Settling

Defendants make no representations, warranties, or declarations regarding the existence or

enforceability of contractual indemnification or insurance coverage under the Policies or other

EXECUTION VERSION

Insurance Rights, or the existence or enforceability of indemnification rights under any

agreement between RFC and CBNV and/or GNBT or its successors.

      b.     Upon the Effective Date, the following stipulations shall be made:

      (i)    <u>No Privilege Waiver</u>.  Each Party stipulates and acknowledges that neither

this Agreement nor a Party's decision to negotiate and/or execute the Agreement can be used to

show or establish that a Party's conduct during this Litigation, including that of counsel, gives

rise to or constitutes a waiver of the attorney-client, common interest or joint defense privilege or

work product doctrines.

      (ii)   <u>Use of Discovery Information</u>.  The Parties agree to comply with the terms

of the Stipulated Protective Order entered in the MDL Litigation except as the Parties have

previously agreed in writing or may hereafter agree in writing.

      c.     Plaintiffs' Counsel represent and warrant to the Settling Defendants that they have

not been retained by any existing client or contacted by any potential client to commence a new

lawsuit or pursue any claims or right of relief against the Settling Defendants with respect to any

of the Released Claims and that they have not been informed of an intention on the part of any

member of the Kessler Settlement Class to opt out of the Settlement.  In addition, Plaintiffs'

Counsel agree that they will not solicit the right to legally represent any person, including any

member or members of the Kessler Settlement Class who opt(s) out of the Kessler Settlement

Class and Settlement, with respect to the Released Claims, but this agreement does not (and shall

not) in any way prohibit or restrict Plaintiffs' Counsel from undertaking such representation if

requested by any such person or persons.

      d.     The Debtors represent, warrant and declare that, based upon their best efforts

review of available information in the Debtors' possession, they believe that the Policies

identified in **Exhibit E** are the only Debtors' insurance policies that could provide coverage for
the Debtors' liability to the Kessler Settlement Class.

e.      The Debtors covenant and agree that if, before the Effective Date, the Debtors
discover any additional insurance policies under which any of the Debtors is an insured and that
provide coverage for the Debtors' liability to the Kessler Settlement Class, then they will assign
to the Kessler Settlement Class the Insurance Rights under such policies with respect to the
liability of the Debtors to the Kessler Settlement Class.  The Plan will provide that if, after the
Effective Date, the Liquidating Trust discovers any additional insurance policies under which
any of the Debtors are an insured and that provide coverage for the Debtors' liability to the
Kessler Settlement Class, then the Liquidating Trust will assign to the Kessler Settlement Class
the Insurance Rights under such policies with respect to the liability of the Debtors to the Kessler
Settlement Class.

**10.    Preliminary Approval Order.**  On or before July 19, 2013, the Parties shall move
before the Court for entry of a Preliminary Approval Order substantially similar to **Exhibit B**,
which provides the following:

a.      Certifies the proposed Kessler Settlement Class, the Equitable Tolling Sub-Class
and the Non-Equitable Tolling Sub-Class pursuant to Bankruptcy Rule 7023 for settlement
purposes;

b.      Preliminarily approves the Agreement as fair, reasonable and adequate under
Bankruptcy Rule 7023 and consistent with bankruptcy needs and concerns, subject to a final
determination by the Court;

c.      Approves the appointment of the Named Plaintiffs as representatives of the
Kessler Settlement Class and any required subclass, approves the appointment of John Picard

and Rebecca Picard as the representatives of the Equitable Tolling Sub-Class, and approves the appointment of Rowena Drennen as the representative of the Non- Equitable Tolling Sub-Class for settlement purposes;

d.      Approves the appointment of Plaintiffs' Counsel as counsel for the Kessler Settlement Class and any required subclass approves the appointment of Allocation Counsel for the Equitable Tolling Sub-Class and the Non-Equitable Tolling Sub-Class, respectively, with respect to the allocation for settlement purposes;

e.      Directs the Settling Defendants to provide to Plaintiffs' Counsel by no later than three (3) business days after entry of the Preliminary Approval Order the best available listing of the names and addresses of all class members;

f.      Approves a form of mailed notice, substantially similar to the Class Mail Notice attached as **Exhibit A**, to be sent to the members of the Kessler Settlement Class;

g.      Directs Plaintiffs' Counsel and the Debtors to mail, at Debtors' expense, the Class Mail Notice promptly after entry by the Court of the Preliminary Approval Order to the Kessler Settlement Class by first-class mail to the last known address of such persons;

h.      Schedules a hearing on final approval of this Agreement on a date not later than the date of the Confirmation Hearing;

i.      Establishes a procedure for members of the Kessler Settlement Class to opt out and setting a date, approximately thirty (30) days after the mailing of the Class Mail Notice, after which no member of the Kessler Settlement Class shall be allowed to opt out of the Kessler Settlement Class;

j.      Establishes a procedure for the members of the Kessler Settlement Class to appear and/or object to the Settlement and setting a date, approximately thirty (30) days after the

EXECUTION VERSION

mailing of the Class Mail Notice, after which no member of the Kessler Settlement Class shall be allowed to object;

k.    Provides insurers that issued the Policies with notice of and the opportunity to participate in any hearing regarding preliminary or final approval of the Agreement; and

l.    Contains such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable.

**11.    Opt Outs and Objections By Members of the Kessler Settlement Class**

a.    Procedure for Opt Outs.  The deadline for opt out requests shall be set forth in the Preliminary Approval Order.  Any request to opt out must be in writing and must include the name, address, telephone number, and last four digits of the Social Security Number of the class member seeking to opt out and a statement that the class member and all other borrowers named on the class member's promissory note are seeking exclusion.  Any opt out request must be personally signed by each person who was a party to the promissory note in connection with the class member's CBNV/GNBT Loan, unless such person is deceased or incompetent.  If a party to the promissory note is deceased, an opt out request may be personally signed by the personal representative of the deceased and a copy of the death certificate for such person shall be submitted with the opt out request.  If a party to the promissory note is incompetent, the guardian must sign the opt out request.  Any opt out request must include a reference to "In re Residential Capital, LLC, Case No. 12-12020(MG)" and be mailed to:

> R. Frederick Walters, Esquire
> Walters Bender Strohbehn & Vaughan, P.C.
> 2500 City Center Square
> 1100 Main Street
> Kansas City, MO 64105
>
> R. Bruce Carlson, Esquire
> Carlson Lynch, Ltd.

PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
(on behalf of the Kessler Settlement Class)

-and-

Norman S. Rosenbaum
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, NY 10104

and

K. Lee Marshall
Bryan Cave LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105
(on behalf of the Settling Defendants)

To be considered timely and effective, any opt out request must be received on or prior to the date established by the Court in the Preliminary Approval Order.  No member of the Kessler Settlement Class may opt out by having a request to opt-out submitted by an actual or purported agent or attorney acting on behalf of the class member.  No opt out request may be made on behalf of a group of class members.  Each member of the Kessler Settlement Class who does not submit an opt out request substantially in compliance with this Section shall be included in the Kessler Settlement Class and deemed a Kessler Settlement Class Member.  For purposes of determining timeliness, an opt-out request shall be deemed to have been submitted when received by either Class Counsel or Settling Defendants' Counsel.  Class Counsel shall provide to the Court, on or before the date of the Final Approval Hearing, a list of all persons who have timely and adequately filed a request to be excluded from the Settlement.

    b.    Effect of Opt Outs by Members of the Kessler Settlement Class.  If class member opt outs result in the exclusion from the Settlement of 3.0% of the CBNV/GNBT Loans issued to the Kessler Settlement Class Members that would otherwise be included in the Settlement, the

Settling Defendants, in their sole discretion, may rescind this Agreement, in which event each and every obligation under the Agreement shall cease to be of any force and effect, and this Agreement and any orders entered in connection therewith shall be vacated, rescinded, canceled, and annulled.  If the Settling Defendants exercise this option, the Parties shall return to the status quo in the Litigation as if the Parties had not entered into this Agreement.  In addition, and in such event, this Agreement and all negotiations, court orders, court papers, and proceedings relating thereto, shall be without prejudice to the rights of the Parties, and each of them, and evidence of or relating to the Agreement and all negotiations shall not be admissible or discoverable in the Litigation or otherwise.  The Settling Defendants must exercise their option to rescind the Agreement pursuant to this Section 11(b) at least ten (10) business days prior to the Final Hearing Date, by giving written notice of such exercise to Plaintiffs' Counsel.

c.    <u>Bankruptcy Trustees</u>.  In instances where a member of the Kessler Settlement Class has filed for bankruptcy under Chapter 7 after obtaining his, her, or their CBNV/GNBT Loan, if the member of the Kessler Settlement Class opts out of the Settlement, the Chapter 7 bankruptcy trustee shall be deemed to have opted out of the Settlement.  Conversely, if the Chapter 7 bankruptcy trustee opts out of the Settlement, the member of the Kessler Settlement Class shall be deemed to have opted out of the Settlement.  If neither the member of the Kessler Settlement Class nor the Chapter 7 bankruptcy trustee opts out of the Settlement, both shall be bound by the Release provisions of Section 8.

d.    <u>Procedure for Objections to Settlement</u>.  Any member of the Kessler Settlement Class who wishes to object to the Settlement or to the incentive awards or the awards of expenses, costs and/or attorneys' fees must file a written notice of objection, including supporting papers as described further below (hereinafter collectively referred to as the "**Notice**

38

**of Objection**"), with the Court on or prior to the date established by the Court in the Preliminary

Approval Order.  For purposes of determining timeliness, a Notice of Objection shall be deemed

to have been submitted when received and filed by the Clerk of Court.  Copies of the Notice of

Objection must also be mailed to the following on or prior to the date established by the Court in

the Preliminary Approval Order, which shall be no later than ten (10) days prior to the Final

Hearing Date:

> R. Frederick Walters, Esquire
> Walters Bender Strohbehn & Vaughan, P.C.
> 2500 City Center Square
> 1100 Main Street
> Kansas City, MO 64105
>
> and
>
> R. Bruce Carlson, Esquire
> Carlson Lynch, Ltd.
> PNC Park
> 115 Federal Street, Suite 210
> Pittsburgh, PA 15212
>
> (on behalf of the RFC Settlement Class)
>
> -and-
>
> Norman S. Rosenbaum
> Morrison & Foerster LLP
> 1290 Avenue of the Americas
> New York, NY 10104
>
> and
>
> K. Lee Marshall
> Bryan Cave LLP
> 560 Mission Street, 25th Floor
> San Francisco, CA 94105
>
> (on behalf of the Settling Defendants)
>
> -and-
>
> Elise S. Frejka

39

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

(on behalf of the Creditors' Committee)

The Notice of Objection must be in writing, and shall specifically include:

(i)    The name, address, and telephone number of the class member filing the objection;

(ii)    A statement of each objection asserted;

(iii)    A detailed description of the facts underlying each objection;

(iv)    Any loan documents in the possession or control of the objector and relied upon by the objector as a basis for the objection;

(v)    If the objector is represented by counsel, a detailed description of the legal authorities supporting each objection;

(vi)    If the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts;

(vii)    If the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documents by attaching them to the objection and provide any other evidence that the objector intends to present;

(viii)    A statement of whether the objector intends to appear at the hearing; and

(ix)    A copy of any exhibits which the objector may offer during the hearing;

(x)    A reference to "In re Residential Capital LLC, Case No. 12-12020(MG)."

Attendance at the final hearing is not necessary.  Any member of the Kessler Settlement Class who does not make his or her objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the Settlement or any other provision of this Agreement.

## 12.    **Final Approval Order**

a.    The Named Plaintiffs and Plaintiffs' Counsel agree that they will request the Court to enter, after the hearing on final approval of this Agreement, but in any event not earlier

than 100 days after the date of the filing of Motion to Approve a Final Approval Order

substantially in the form attached as **Exhibit C**.   In accordance with **Exhibit C**, the Final

Approval Order shall certify the Kessler Settlement Class and find that the Settlement and this

Agreement are fair, reasonable, and adequate, are consistent with bankruptcy needs and concerns

and in the best interests of the Kessler Settlement Class, the Debtors' estates and their creditors,

is reasonable from the perspective of the Kessler Settlement Class and the Debtors given the

potential liability of the Settling Defendants, the likelihood of success in the Litigation, and the

costs associated with the inconvenience, delay, uncertainty and continuation of the Litigation and

otherwise satisfies the standards established by the Second Circuit for approval of a compromise

and settlement in Bankruptcy.  The Final Approval Order shall require the Parties to carry out the

provisions of this Agreement.

b.    The Named Plaintiffs shall also seek an order from the District Court dismissing

all remaining individual and class claims and motions of the Named Plaintiffs and the Kessler

Settlement Class Members against the Settling Defendants in the Litigation on the merits and

with prejudice as to the Releasors, declaring that the Named Plaintiffs and Kessler Settlement

Class Members are bound by the Releases set forth in Section 8 of this Agreement as of the

Effective Date, containing an express determination by the Court that "there is no just reason for

delay," and reserving continuing jurisdiction over the enforcement of this Agreement, the

administration and distribution of the Settlement funds and, if necessary, vacating and/or setting

aside the Final Order in the event the Settlement does not (or cannot) become effective pursuant

to Section 14 below.

## 13.    <u>Certifications to the Court</u>

a.    On or before the Final Hearing Date, Plaintiffs' Counsel shall file with the Court

an affidavit verifying that the court-approved Class Mail Notices have been sent by first-class mail.

b.      On or before the Final Hearing Date, Plaintiffs' Counsel shall file with the Court an affidavit verifying that they have complied with the procedures described in Section 16(a) with respect to all Class Mail Notices returned as undeliverable.

c.      On or before July 12, 2013, Plaintiffs' Counsel shall provide SilvermanAcampora with a proposed allocation of the Kessler Net Recovery to the Kessler Class Claimants, and on or before July 19, 2013, SilvermanAcampora as Special Borrowers Counsel to the Creditors' Committee, shall file with the Court a declaration regarding the fairness of the proposed Allocation.

## 14.    <u>Effectiveness of Settlement Agreement</u>

a.      The "Effective Date" of this Agreement shall be the date when all of the following conditions have occurred, at which point the Settlement shall be deemed effective in all respects:

(i)      This Agreement has been signed by the Debtors, the Named Plaintiffs, Plaintiffs' Counsel, and Settling Defendants' Counsel;

(ii)      The insurers who issued the Policies have been given at least 48 hours to review and provide their consent to this Agreement, with such notice to be furnished to the insurers on the day following the execution of this Agreement, and either have provided their unanimous consent, or the Debtors, in their sole discretion, have elected to proceed with this Agreement despite not receiving such consent;

(iii)      A Preliminary Approval Order has been entered by the Court, in a form substantially similar to that attached as **Exhibit B**, granting preliminary approval of this

Agreement, and approving a form of Class Mail Notice, as provided in Section [8];

(iv)    The Court-approved Class Mail Notice has been duly mailed to the Kessler Settlement Class as ordered by the Court;

(v)    A Final Approval Order has been entered by the Court in a form substantially similar to that attached as **Exhibit C**, as provided in Section 12;

(vi)    The Final Approval Order shall not have been stayed, modified or vacated on appeal, and the time to appeal shall have passed; and

(vii)    The Plan, as described in the Plan Support Agreement, has been confirmed and the Effective Date of the Plan (as defined in the Plan) has occurred.

b.    If any material portion of the Agreement or the Final Approval Order is vacated, voided, modified, or otherwise altered by the Court or on appeal, any Party may, in its sole discretion, within seven (7) calendar days of such ruling, declare that the Agreement has failed to become effective and in such circumstances, the Agreement shall cease to be of any force and effect as provided in Section 15.

## 15.    <u>Failure of Condition</u>

If for any reason, this Agreement fails to become effective as provided in Section 14, all obligations under the Agreement shall cease to be of any force and effect, and this Agreement, the dismissal entered pursuant to this Agreement, the Final Order and any orders entered in connection with the Settlement, dismissal order or Final Order, shall be vacated, rescinded, canceled, annulled, and deemed "void," "no longer equitable" and/or "justifying relief" for purposes of Fed.R.Civ.P. 60(b) and Bankruptcy Rule 9024, and the Parties shall be returned to the status quo prior to entering into this Agreement with respect to the Litigation as if this Agreement had never been entered into, except that the provisions of Section 1 hereof shall

survive and remain binding on the Parties and effective in all respects regardless of the reasons

for such failure of condition.  In addition, the Agreement and all negotiations, court orders, court

papers and proceedings relating thereto shall be without prejudice to the rights of any and all

parties hereto, and evidence relating to the Agreement and all negotiations,court papers and

proceedings shall not be admissible or discoverable in the Litigation or otherwise.

16.    **Class Notice Forms**

a.    **Exhibit D** constitutes a list of the members of the Kessler Settlement Class to

whom notice pursuant to this Agreement shall be provided.  Prior to mailing, addresses will be

updated at Debtors' expense by use of the United States Postal Service's National Change of

Address database or another address database service (e.g., Accurint, Intelius).  Any returned

notices shall be re-mailed to any new address disclosed.  To the extent any notice is returned a

second time, Plaintiffs' Counsel shall undertake reasonable efforts to locate current addresses for

said class member(s).  The notices shall be mailed within five (5) days of the Preliminary

Approval Order.

b.    Subject to Court approval, all Kessler Settlement Class Members shall be bound

by this Agreement and the Released Claims shall be dismissed with prejudice and deemed

released as of the Effective Date, even if a Kessler Settlement Class Member did not receive

actual notice of the Litigation or the Settlement.  Further, the Parties expressly acknowledge and

agree that a Final Approval Order shall be entered by the Court dismissing the Released Claims

and barring the relitigation of the Released Claims as provided herein, regardless of whether

such Released Claims were actually asserted, to the fullest extent of the law and that any

dismissal order or judgment shall be entitled to Full Faith and Credit in any other court, tribunal,

forum, including arbitration fora, or agency.

## 17.    **Public Comments**

a.      Except as may be necessary or appropriate, in the Debtors' sole discretion, in connection with the filing of the Plan and accompanying disclosure statement on the docket in the Bankruptcy Cases, before the filing of the Motion to Approve, neither the Parties nor any of their counsel shall issue any press release or have other communications with the media regarding the Settlement, except as required by law.

b.      The Named Plaintiffs and Plaintiffs' Counsel agree that they will not issue any press release related to the Settlement without giving the Settling Defendants and the Settling Defendants' Counsel an opportunity to review and comment on any such release prior to it being made public.  It is expressly understood and agreed that a Party's website is not the "press" and that the publication and/or a description of information and documents on a Party's website is not a "press release."

c.      No Party and no counsel shall make any public comments including any posting on a website that would undermine the Settlement, adversely affect the ability of the Parties to obtain final approval of the Settlement, or disparage any other Party or counsel for any Party.

d.      Nothing in this Section shall prohibit Plaintiffs' Counsel from providing legal advice to any of the individual Kessler Class Claimants and/or any other client, or prohibit the Settling Defendants' Counsel from providing information as necessary to insurers that issued the policies and/or counsel for PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee.

## 18.    **Miscellaneous Provisions**

a.      The Parties hereby confirm that the Disclosure Statement and Plan shall provide for funding of the Borrower Claims Trust in an amount of not less than $57,600,000.00, which

amount may be increased, but not decreased, on one and only one occasion, i.e., by the Borrower Trust True-Up (as defined in the PSA).

     b.     The Plan Support Agreement provides as follows:

> The Plan and the Borrower Claims Trust Agreement will provide that allowed Borrower Claims against the Borrower Claims Trust that would otherwise be asserted against one of the Consolidated Debtors shall receive a recovery comparable to recoveries of unsecured creditors at such Consolidated Debtor (excluding, in computing such recovery percentages, recoveries, if any, from the Policies (defined below)).  The Cash to be paid to the Borrower Trust will be specified in the Borrower Trust Agreement and such Cash shall equal the Distribution Amount plus any additional amounts necessary to fund the Borrower Claim Trust to comply with the preceding sentence (the "**Borrower Trust True-Up**").

For the avoidance of doubt, the comparable recovery percentages of unsecured creditors at the respective Consolidated Debtors shall be established finally and for all  purposes, including for all future distributions by the Borrower Trust, at the time of and in connection with the Borrower Trust True-Up, and neither the amount to be transferred to the Borrower Trust nor the percentage distributions from the Borrower Trust shall be adjusted following the effective date of the Plan based on actual experience with respect to recoveries from the Liquidating Trust following the effective date of the Plan.  For example, if at the time of the Borrower Trust True-Up the comparable recovery percentages were established at 29% for the GMAC Consolidated Debtors and 10% for the RFC Consolidated Debtors, each future distribution from the Borrower Trust shall be based on 29% and 10% recovery percentages even if actual future experience were to result in actual recovery percentages for GMAC and RFC unsecured creditors respectively, of 32% and 7%, or conversely, for another example, of 25% and 14%.

     c.     Notwithstanding anything to the contrary in the PSA, notice of any increase in funding of the Borrower Trust pursuant to the Borrower Trust True-Up shall be filed as part of the Plan Supplement.  The Borrower Trust True-Up, if any, shall be presumptively valid.  If the Kessler Class Claimants determine that the Borrower Trust True-Up is insufficient to comply

with the PSA, then they may object to the Borrower True True-Up without adversely affecting

the Settlement.  If the Kessler Class Claimants object, they shall have the burden to show that the

Borrower Trust True-Up is insufficient and provide evidence in support of such objection.

d.    The Debtors shall bear the cost and burden of distributing all notices to parties-in-

interest of the Motion to Approve the Settlement in accordance with the Court's Case

Management Order.

## 19.    **General Provisions**

a.    Entire Agreement.  This Agreement constitutes the full, complete and entire

understanding, agreement, and arrangement of and between the Named Plaintiffs and the Kessler

Settlement Class Members on the one hand and the Settling Defendants on the other hand with

respect to the Settlement and the Released Claims against the Released Persons.  This Agreement

supersedes all prior oral or written understandings, agreements, and arrangements between the

Parties with respect to the Settlement and the Released Claims against the Released Persons.

Except for those set forth expressly in this Agreement, there are no agreements, covenants,

promises, representations or arrangements between the Parties with respect to the Settlement

and/or the Released Claims against the Released Persons.

b.    Modification in Writing.  This Agreement may be altered, amended, modified or

waived, in whole or in part, only in a writing signed by all Parties and approved by the Court.

This Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

c.    Ongoing Cooperation.  The Parties hereto shall execute all documents and

perform all acts necessary and proper to effectuate the terms of this Agreement.

d.    Duplicate Originals/Execution in Counterparts.  All Parties, Plaintiffs' Counsel,

and Settling Defendants' Counsel shall sign five (5) copies of this Agreement and each such

copy shall be considered an original. This Agreement may be signed in one or more

counterparts. All executed copies of this Agreement, and photocopies thereof (including

facsimile or pdf copies of the signature pages), shall have the same force and effect and shall be

as legally binding and enforceable as the original. Plaintiffs' Counsel shall have five (5)

business days from the date on which the Agreement is signed by the last of counsel and the

Debtors to sign to obtain the signatures of the Named Plaintiffs.

　　　　e.    <u>No Reliance</u>.  Each Party to this Agreement warrants that he, she or it is acting

upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and

not in reliance upon any warranty or representation, express or implied, of any nature or kind by

any other party, other than the warranties and representations expressly made in this Agreement.

In particular, but without limiting the foregoing, the Named Plaintiffs and Plaintiffs' Counsel

acknowledge that the Settling Defendants have made no representations, warranties, or

declarations and that the Named Plaintiffs and Plaintiffs' Counsel have not relied upon any

representations, warranties, or declarations regarding the existence or enforceability of

contractual indemnification or insurance coverage under the Policies or other Insurance Rights,

or the existence or enforceability of indemnification rights under any agreement between RFC

and CBNV and/or GNBT or otherwise.

　　　　f.    <u>Governing Law</u>.  This Agreement shall be interpreted, construed, enforced, and

administered in accordance with the laws of the state of New York, without regard to conflict of

laws rules. This Agreement shall be enforced in the Court. The Settling Defendants, the Named

Plaintiffs and the Kessler Settlement Class Members waive any objection that each such party

may now have or hereafter have to the venue of such suit, action, or proceeding and irrevocably

consent to the jurisdiction of the Court in any such suit, action or proceeding, and agree to accept

and acknowledge service of any and all process which may be served in any such suit, action or proceeding.

g.      Reservation of Jurisdiction.  Notwithstanding the dismissal of and entry of a Final Approval Order, the Court shall retain jurisdiction for purposes of enforcing the terms of this Agreement and implementing the Settlement, including the issuance of injunctions against actions brought by Kessler Settlement Class Members in violation of the Final Approval Order.

h.      Binding on Successors.  This Agreement shall be binding on and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.

i.      Mutual Preparation.  This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's length negotiations between the Parties, all Parties have contributed to the preparation of this Agreement.

j.      Gender Neutrality.  All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, and the singular shall include the plural and vice versa.

k.      Taxes.  All Kessler Settlement Class Members shall be responsible for paying and/or reporting any and all federal, state and local income taxes due on the payments made to them pursuant to the Settlement.

l.      No Other Financial Obligations on the Settling Defendants.  The Settling Defendants shall not be liable or obligated to pay any fees, expenses, costs or disbursements to the Named Plaintiffs, Plaintiffs' Counsel or the Kessler Settlement Class Members, or any attorney representing any of them, either directly or indirectly, in connection with the Litigation

or the administration of this Agreement, other than the amounts expressly provided for herein.

m.    <u>Authority</u>.    With respect to themselves, each of the Parties to this Agreement represents, covenants and warrants that subject to the entry of the Final Order (a) they have the full power and authority to enter into and consummate all transactions contemplated by this Agreement and have duly authorized the execution, delivery and performance of this Agreement and (b) the person executing this Agreement has the full right, power and authority to enter into this Agreement on behalf of the party for whom he/she has executed this Agreement, and the full right, power and authority to execute any and all necessary instruments in connection herewith, and to fully bind such party to the terms and obligations of this Agreement.    Notwithstanding the foregoing, nothing in this subparagraph shall be read to supersede subparagraph 5(f), above.

n.    <u>Exhibits</u>.    The exhibits attached to this Agreement are incorporated herein as though fully set forth.

o.    <u>Construction/Interpretation</u>.    Except when the context otherwise requires, words importing the masculine gender include the feminine and the neuter, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.    All references hereinto Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words "herein" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.    The term "including" shall mean "including, without limitation."

EXECUTION VERSION

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this

Agreement to be executed as of this ___ day of June 2013.

PLAINTIFFS' COUNSEL

Dated:  June ___, 2013                By:_____
                                          R. Frederick Walters


                                     By:_____
                                          R. Bruce Carlson


                                     SETTLING DEFENDANTS' AND DEBTORS'
                                     COUNSEL

Dated:  June ___, 2013                MORRISON & FOERSTER LLP

                                     By:_____
                                     Norman S. Rosenbaum
                                     Jordan A. Wishnew
                                     1290 Avenue of the Americas
                                     New York, New York 10104
                                     Tel: (212) 468-8000
                                     Fax: (212) 468- 7900

                                     *Counsel for Residential Capital, LLC, et al.,*
                                     *Debtors and Debtors in Possession*

EXECUTION VERSION

RESIDENTIAL FUNDING COMPANY, LLC
RESIDENTIAL CAPITAL, LLC
GMAC RESIDENTIAL HOLDING
COMPANY, LLC

Dated:  June __, 2013

_____

By:   William R. Thompson
Title: General Counsel

52

EXECUTION VERSION

## NAMED PLAINTIFFS

Dated:  June __, 2013

_____

ROWENA DRENNEN

Dated:  June __, 2013

_____

FLORA GASKIN

Dated:  June __, 2013

_____

ROGER TURNER

Dated:  June __, 2013

_____

CHRISTINE TURNER

Dated:  June __, 2013

_____

JOHN PICARD

Dated:  June __, 2013

_____

REBECCA PICARD

ny-1096603

EXECUTION VERSION

## **EXHIBITS AND SCHEDULES**

Exhibit A – Class Mail Notice

Exhibit B – Preliminary Approval Order

Exhibit C – Final Approval Order

Exhibit D – RFC Settlement Class List

Exhibit E – List of Policies

Schedule 1 – Alphabetical List of Named Plaintiffs' Incentive Awards

EXECUTION VERSION

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this

Agreement to be executed as of this ___ day of June 2013.

PLAINTIFFS' COUNSEL

Dated: June 27, 2013

By: _____
R. Frederick Walters

By: _____
R. Bruce Carlson

SETTLING DEFENDANTS' AND DEBTORS'
COUNSEL

Dated: June ___, 2013

MORRISON & FOERSTER LLP

By: _____
Norman S. Rosenbaum
Jordan A. Wishnew
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468- 7900

*Counsel for Residential Capital, LLC, et al.,
Debtors and Debtors in Possession*

51

EXECUTION VERSION

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this

Agreement to be executed as of this ___ day of June 2013.

PLAINTIFFS' COUNSEL

Dated: June 2_, 2013

By:_____
    R. Frederick Walters

By:_____
    R. Bruce Carlson

SETTLING DEFENDANTS' AND DEBTORS'
COUNSEL

Dated: June ___, 2013

MORRISON & FOERSTER LLP

By:_____
Norman S. Rosenbaum
Jordan A. Wishnew
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468- 7900

*Counsel for Residential Capital, LLC, et al.,
Debtors and Debtors in Possession*

51

IN WITNESS WHEREOF, the undersigned, being duly authorized, have caused this
Agreement to be executed as of this ___ day of June 2013.

PLAINTIFFS' COUNSEL

Dated:  June ___, 2013

By:_____
    R. Frederick Walters


By:_____
    R. Bruce Carlson


SETTLING DEFENDANTS' AND DEBTORS'
COUNSEL

Dated:  June 27, 2013

MORRISON & FOERSTER LLP

By:_____
Norman S. Rosenbaum
Jordan A. Wishnew
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468- 7900

*Counsel for Residential Capital, LLC, et al.,
Debtors and Debtors in Possession*

51

EXECUTION VERSION

RESIDENTIAL FUNDING COMPANY, LLC
RESIDENTIAL CAPITAL, LLC
GMAC RESIDENTIAL HOLDING
COMPANY, LLC

Dated: June 27, 2013

By:   William R. Thompson
Title: General Counsel

52

EXECUTION VERSION

**NAMED PLAINTIFFS**

Dated: June 20, 2013

_____
ROWENA DRENNEN

Dated: June ___, 2013

_____
FLORA GASKIN

Dated: June ___, 2013

_____
ROGER TURNER

Dated: June ___, 2013

_____
CHRISTINE TURNER

Dated: June ___, 2013

_____
JOHN PICARD

Dated: June ___, 2013

_____
REBECCA PICARD

53

EXECUTION VERSION

## NAMED PLAINTIFFS

Dated:  June ___, 2013

ROWENA DRENNEN

Dated:  June 28, 2013

FLORA GASKIN

Dated:  June ___, 2013

ROGER TURNER

Dated:  June ___, 2013

CHRISTINE TURNER

Dated:  June ___, 2013

JOHN PICARD

Dated:  June ___, 2013

REBECCA PICARD

53

EXECUTION VERSION

## NAMED PLAINTIFFS

Dated:  June __, 2013

_____
ROWENA DRENNEN

Dated:  June __, 2013

_____
FLORA GASKIN

Dated:  June 28, 2013

_____
ROGER TURNER

Dated:  June 28, 2013

_____
CHRISTINE TURNER

Dated:  June __, 2013

_____
JOHN PICARD

Dated:  June __, 2013

_____
REBECCA PICARD

53

EXECUTION VERSION

## NAMED PLAINTIFFS

Dated:  June __, 2013

_____
ROWENA DRENNEN

Dated:  June __, 2013

_____
FLORA GASKIN

Dated:  June __, 2013

_____
ROGER TURNER

Dated:  June __, 2013

_____
CHRISTINE TURNER

Dated: ~~June~~ JULY 1, 2013

_____
JOHN PICARD

Dated: ~~June~~ JULY 1, 2013

_____
REBECCA PICARD

53

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

### IN RE: RESIDENTIAL CAPITAL, LLC, et. al., Debtors
### Case No. 12-12020

### NOTICE OF PROPOSED CLASS ACTION
### SETTLEMENT AND OF SETTLEMENT HEARING

*A federal court has authorized this Notice.  This is <u>not</u> a solicitation from a lawyer.
Please read this Notice carefully and completely.*

TO:    ALL PERSONS: (I) WHO ENTERED INTO A LOAN AGREEMENT WITH
COMMUNITY BANK OF NORTHERN VIRGINIA AND/OR GUARANTY NATIONAL
BANK OF TALLAHASSEE; (II) WHOSE LOAN WAS SECURED BY A SECOND
MORTGAGE OR DEED OF TRUST ON RESIDENTIAL PROPERTY LOCATED IN THE
UNITED STATES; (III) WHOSE LOAN QUALIFIED AS A HOEPA MORTGAGE LOAN;
AND (IV) WHOSE LOAN WAS PURCHASED BY GMAC- RESIDENTIAL FUNDING
CORPORATION ("RFC"), WHO WAS NOT A MEMBER OF THE CLASS CERTIFIED IN
THE ACTION CAPTIONED <u>BAXTER V. GUARANTY NATIONAL BANK, ET AL.</u>, CASE
NO. 01-CVS-009168 IN THE GENERAL COURT OF JUSTICE, SUPERIOR COURT
DIVISION OF WAKE COUNTY, NORTH CAROLINA.  YOU MAY BE ELIGIBLE TO
RECEIVE PAYMENTS UNDER THIS CLASS ACTION SETTLEMENT.

### THIS NOTICE MAY AFFECT YOUR RIGHTS.  PLEASE READ IT CAREFULLY.

- A class settlement has been proposed in the above-identified bankruptcy ("ResCap
  Chapter 11 Bankruptcy"), related to fees and interest charged on certain second mortgage
  loans.  The U.S. Bankruptcy Court presiding over the ResCap Chapter 11 Bankruptcy
  (the "Court") has entered an order preliminarily approving the settlement.  This
  settlement makes available cash relief for eligible class members (the "Kessler Settlement
  Class"), as part of the distribution of assets in the ResCap Chapter 11 Bankruptcy on
  account of a proof of claim filed in the ResCap Chapter 11 Bankruptcy on behalf of the
  Kessler Settlement Class.  Certain mortgage borrowers who entered into second mortgage
  loan agreements with Community Bank of Northern Virginia ("CBNV") and/or Guaranty
  National Bank of Tallahassee ("GNBT") **ARE ELIGIBLE TO RECEIVE MONEY**
  once the settlement and distribution of assets is approved, as described below.  If you
  qualify, you will receive an automatic cash payment.  You can also elect to exclude
  yourself from the settlement, or object to it.

- The settlement resulted from negotiations between the debtors in the ResCap Chapter 11
  Bankruptcy and certain named plaintiffs, including Brian and Carla Kessler, who are
  asserting class action claims arising from certain CBNV/GNBT second mortgage loans,
  in a court proceeding captioned *In re Community Bank of Northern Virginia Second
  Mortgage Lending Practices Litigation,* MDL No. 1674, Case Nos. 03-0425, 02-01201,

05-0688 and 05-1386, pending in the United States District Court for the Western District of Pennsylvania (the "MDL Litigation"). Prior to the filing of the ResCap Chapter 11 Bankruptcy, RFC was also a defendant in the MDL Litigation. Only the claims against the debtors in the ResCap Chapter 11 Bankruptcy are being resolved by this settlement. Litigation against non-settling defendants in the MDL Litigation will continue and proceed separately.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

### **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:**

| | |
|---|---|
| **DO NOTHING AT THIS TIME.** | If you do nothing, you are agreeing to participate in the settlement and you will be a member of the Kessler Settlement Class. A check will be mailed to you once the settlement is approved and the distribution of assets occurs in the ResCap Chapter 11 Bankruptcy. By selecting this option, you are giving up your rights to sue (to the extent permitted by the Bankruptcy Code) Residential Funding Company, LLC, Residential Capital, LLC, GMAC Residential Holding Company, LLC, and other direct and indirect subsidiaries of Residential Capital, LLC, the debtors in the ResCap Chapter 11 Bankruptcy (the "Settling Defendants"). |
| **EXCLUDE YOURSELF** | If you ask to be excluded from the Kessler Settlement Class, **you will not receive any cash payments from the settlement.** This is the only option that may allow you to be part of any other proceeding against any of the Settling Defendants or the other Released Parties concerning claims that were, or could have been, asserted in the MDL Litigation.<br><br>**If you choose to exclude yourself from the Kessler Settlement Class and have not filed a proof of claim in the ResCap Chapter 11 Bankruptcy before the bar date (November 16, 2012), upon the confirmation and effectiveness of the ResCap Chapter 11 Plan, your claims may be released.** |
| **OBJECT** | Participate in the settlement, but write to the Court about why you do not like it. You cannot object to the settlement unless you are a class member and do not exclude yourself. |

A-2

| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.

- The Court still has to decide whether to grant final approval of the settlement and to approve the ResCap Chapter 11 Plan. Payments will be made once the Court grants final approval, confirms the ResCap Chapter 11 Plan and the ResCap Chapter 11 Plan goes into effect. No payments will be made if the Court does not grant final approval of the settlement, if the Court does not approve the ResCap Chapter 11 Plan or if the Rescap Chapter 11 Plan does not go into effect.

**1.      Why did I get this notice?**

Mortgage records show that CBNV and/or GNBT originated or made a second mortgage loan to you between June 6, 1998 and November 13, 2002, and that such loan was assigned to and purchased by RFC.

**2.      What is the proof of claim about?**

The named plaintiffs, on behalf of all members of the proposed settlement class, have filed a proof of claim in the ResCap Chapter 11 Bankruptcy ("Kessler Class Claim"). The Kessler Class Claim is based upon the same allegations set out in full in the Joint Consolidated Amended Class Action Complaint filed in the MDL Litigation on October 4, 2011 (the "Complaint"). The Complaint asserts, among other things, that RFC, along with certain others, have violated federal laws in connection with the fees and interest charged on second mortgage loans issued by CBNV and/or GNBT, and assigned to and purchased by RFC. RFC and the other Settling Defendants deny all liability in the MDL Litigation.

**3.      What is a class action and who is involved?**

In a class action, one or more people called "Class Representatives," sue on behalf of people who have similar claims. All these people are a "Class" or "Class Members." The named plaintiffs who sued – and all the class members like them – are called the plaintiffs. The companies the named plaintiffs sued are called the defendants. One court resolves the issues for all class members, except for those who exclude themselves from the class. In this case, the Kessler Class Claim asserted in the ResCap Chapter 11 Bankruptcy has been resolved through negotiations with the Settling Defendants and such class settlement, which will result in an allowed claim amount in the ResCap Chapter 11 Bankruptcy, has been preliminarily approved by the Court. The Court has decided that, subject to final approval, the Kessler Class Claim can be resolved and settled on a class-wide basis.

**4.        What does the lawsuit complain about?  What are the Defendants' responses?**

In the MDL Litigation, which is the basis for the Kessler Class Claim in the ResCap Chapter 11 Bankruptcy, the named plaintiffs allege that RFC, CBNV and GNBT violated federal laws in connection with the fees and interest charged on second mortgage loans.  Specifically, the named plaintiffs allege that the defendants in the MDL Litigation violated the Real Estate Settlement Procedures Act ("RESPA"), the Truth In Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"), and  the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in connection with the fees and interest rates disclosed and charged on certain second mortgage loans.

RFC, and the other Settling Defendants, deny that they violated any federal law in connection with the second mortgage loans that are the subject of the MDL Litigation.

**5.        Why is there a settlement?**

The Court did not decide in favor of the plaintiffs or the defendants.  The plaintiffs think they could have prevailed at a trial.  The defendants think the plaintiffs would not have prevailed at trial.  But there was no trial.  Instead, both sides agreed to a settlement.  That way, they avoid the risk and expense of a trial, and the people affected will receive cash payments.  The class representatives and the attorneys for the class think the settlement is best for all class members.

**6.        How do I know if I am part of the settlement?**

The Court has preliminarily decided that everyone who fits the following description is a Kessler Settlement Class Member for purposes of resolving the Kessler Class Claim in the ResCap Chapter 11 Bankruptcy:

> All persons:

> (i) who entered into a loan agreement with Community Bank of Northern Virginia and/or Guaranty National Bank of Tallahassee;

> (ii) whose loan was secured by a second mortgage deed or trust on residential property located in the United States;

> (iii) whose loan qualified as a HOEPA mortgage loan;

> (iv) whose loan was purchased by GMAC- Residential Funding Corporation;

> (v) who was not a member of the class certified in the action captioned <u>Baxter v. Guaranty National Bank, et al.</u>, Case No. 01-CVS-009168 in the General Court of Justice, Superior Court Division of Wake County, North Carolina.

**7.     I'm still not sure if I am included.**

If you are still not sure whether you are included, you can ask for free help to determine your status.  You can call 1-800-xxx-xxxx.

**8.     What does the settlement provide?**

The settlement provides for payments to Kessler Settlement Class Members as part of the distribution of assets in the ResCap Chapter 11 Bankruptcy, as follows:

The Settling Defendants have agreed to an allowed claim amount of $300 Million on the effective date of the ResCap Chapter 11 Plan against RFC.  Settlement payments will be made to Kessler Settlement Class Members from a borrower claim trust to be established under the ResCap Chapter 11 Plan, after the payment of costs, attorneys' fees, and named plaintiff incentive awards.  If you participate in the settlement, you will receive your settlement payment based upon a formula to be developed by Class Counsel, approved by the Court, and designed to distribute the settlement proceeds in a fair and equitable manner.

From the total amount of settlement funds made available to the Kessler Settlement Class (the "Kessler Gross Recovery"), Court approved costs and incentive fees to named plaintiffs will first be deducted to determine the Kessler Net Recovery.  From the Kessler Net Recovery, Court-approved attorneys' fees up to 35% will deducted to arrive at the Kessler Net Recovery Distribution.

The proportion of the Kessler Net Recovery Distribution payable to each Kessler Settlement Class Member will be determined by:

First, computing the total damages for each Kessler Settlement Class Member, comprised of the settlement fees and interest paid with respect to the loans.   The settlement fees will be determined by a sample of approximately four hundred loans from among the Kessler Settlement Class for which Class Counsel has settlement fee data.  Class Counsel does not currently have settlement fee data for the entire Kessler Settlement Class.  The fee data from the approximate four hundred loans will be analyzed to estimate the fees paid by each Kessler Settlement Class Member, taking into consideration the original loan amount for each Kessler Settlement Class Member's loan.  Second, for the interest component of damages, the Settling Defendants have the actual amount of interest paid on the individual Kessler Settlement Class Member loans as of the current date.  Third, the estimated fees for each Kessler Settlement Class Member's loan will be added to the actual amount of interest paid on such loan to determine the total individual damages for each Kessler Settlement Class Member. Finally, for loans closed before May 1, 2000, [  ]% of the individual damages will be discounted. The discount reflects the fact that the RESPA and TILA/HOEPA claims on loans preceding that date are subject to a statute of limitations defense and must rely on the legal doctrine of equitable tolling to be valid.

The individual damages of each Kessler Settlement Class Member will then be divided by the total individual damages of the entire Kessler Settlement Class to determine a proportion or ratio of the total settlement proceeds attributable to each Kessler Settlement Class Member.  For each

Kessler Settlement Class Member, the ratio will be applied to determine each Kessler Settlement Class Member's proportionate share of each Kessler Net Recovery Distribution.

For purposes of providing generally the order of magnitude of the possible distributions, Class Counsel estimates that a Kessler Net Recovery Distribution could be approximately $20 million. (Please note that this is a very rough estimate and that the final Kessler Net Recovery Distribution may be significantly different). Based on an estimated Kessler Settlement Class size of 44,535 loans, a Kessler Net Recovery Distribution of $20 million would yield, on average, a distribution to each Kessler Settlement Class Member of $449. This is only an estimate. The actual distributions will vary depending on the factors described above. Some Kessler Settlement Class Members may receive a larger or smaller distribution based on their specific loans and the other factors involved.

Additionally, as part of the settlement, the Settling Defendants have agreed to assign their rights to recover certain proceeds under certain insurance policies that provide coverage for the conduct at issue in the MDL Litigation and which is the subject of the Kessler Class Claims. These potential insurance proceeds may be available to make up the difference between the allowed claim amount of $300 Million and the amount initially contributed to the borrower claim trust for the benefit of the Kessler Settlement Class Members under the ResCap Chapter 11 Plan. If any payment is received or obtained under these insurance policies, then such amounts, less a proportional reimbursement for the amount already contributed to the borrower claim trust for the benefit of the class members, will be added to the Borrower Claim Trust and made available, after the payment of any remaining attorneys' fees and named plaintiff incentive awards, for distribution to the Kessler Settlement Class Members, using the same formula described above but not other claimants in the Borrower Claims Trust.

## 9.    How do I participate in the settlement?

If you want to participate in the settlement, you do not need to do anything now. If the settlement is approved and the ResCap Chapter 11 Plan is approved and goes effective, one or more checks will be mailed to you. If additional insurance proceeds are obtained and contributed to the borrower claim trust, a second check may also be mailed to you. You are required, upon receipt of any such payment, to remit such payment to any person who has received by assignment or operation of law, any right title or interest to or in such payment from you.

A Kessler Settlement Class Member's right to a settlement payment is a conditional right that terminates if a Kessler Settlement Class Member to whom a check is mailed fails to cash his or her check within six months of the date of the check. In such case, the check shall be null and void and the Parties shall have no further obligation to make payment to such class member.

Joint borrowers, such as a husband and wife, will receive a single payment per loan, even if they are separated or divorced. Any Kessler Settlement Class Member who receives a payment under the settlement is personally and solely responsible for distributing or allocating the payment between or among any co-borrower(s), regarding of whether the check is made payable to all or only some of the co-borrowers. Kessler Settlement Class members will also be responsible for paying any taxes due on any payment received and are strongly encourage to consult with their

own tax advisor concerning the tax effects of any money received pursuant to this Settlement.

## 10.    When would I get my payment(s)?

The Court will hold a hearing on **[xx days after the deadline for filing any objections]**, to decide whether to finally approve the settlement.  If the Court approves the settlement and approves the ResCap Chapter 11 Plan, there may be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  In addition, it will take time for the Borrower Claims Trust to properly determine the distributions it is required to make under the ResCap Chapter 11 Plan.  Please be patient.

## 11.    What am I giving up to get a payment or stay in the Kessler Settlement Class?

Unless you exclude yourself from the Kessler Settlement Class, you are staying in the Kessler Settlement Class.  That means that you cannot sue, continue to sue, or be part of any other proceeding in the Court or lawsuit against the Settling Defendants or other Released Parties arising out of or relating to the claims asserted, or which could have been asserted, in the ResCap Bankruptcy Case or the MDL Litigation pertaining to the Kessler Settlement Class Members' loans, including, but not limited to, the fees and interests charged on second mortgage loans. Specifically, you will be releasing all "Released Persons" from all "Released Claims."  Released Claims are defined as:

> any and all claims (including the Proofs of Claim), demands, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, liens, costs, surcharges, losses, attorneys' fees, expenses or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential or punitive damages, as well as any and all claims for treble damages, penalties, attorneys' fees, costs or expenses, whether known or unknown, alleged or not alleged in the Litigation, the Proofs of Claim or in any proofs of claim filed by a Kessler Class Member in the Bankruptcy Cases, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that arise out of the CBNV/GNBT Loans, including any claims against the Released Persons arising out of the handling, preservation, impairment, or otherwise related to any insurance coverage or other Insurance Rights under the Policies or contractual indemnification related to the CBNV/GNBT Loans, and that any of the Releasors have had, or now have, from the beginning of time up through and including the Effective Date against the Released Persons ("**Claims**"), including: (1) allegations that were or could have been asserted against the Released Persons in the Litigation in any way relating to a CBNV/GNBT Loan; and (2) any activities of the Released Persons with respect to a CBNV/GNBT Loan, including any alleged representations, misrepresentations, disclosures, incorrect disclosures, failures to disclose, acts (legal or illegal), omissions, failures to act,

deceptions, acts of unconscionability, unfair business practices, breaches of contract, usury, unfulfilled promises, breaches of warranty or fiduciary duty, conspiracy, excessive fees collected, or violations of any consumer protection statute, any state unfair trade practice statute, or any other body of case, statutory or common law or regulation, federal or state, including TILA, HOEPA, RESPA, RICO (and, respectively, in each case, their implementing regulations). It is the intention of the Releasors to provide a general release of the Released Claims against the Released Persons; provided, however, that anything in this Agreement to the contrary notwithstanding, the term Released Claims does not include: (A) the claims of the Kessler Class Claimants, whether or not currently asserted in the Litigation, against (1) PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee, (2) the insurers that issued the Policies listed in **Exhibit E**, or (3) any other person, association or entity other than the Released Persons in connection with the CBNV/GNBT Loans; or (B) any and all claims for indemnification or contribution that RFC might otherwise have against PNC Bank as successor to Community Bank of Northern Virginia or the FDIC as receiver of Guaranty National Bank of Tallahassee.

Any claims arising out of future conduct, such as failure to credit a future payment are **not** released.  "Released Persons" are defined to include:

the Settling Defendants and the Debtors, and each of their past and present officers, directors, shareholders, employees, attorneys (including any consultants hired by counsel), accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns.  Notwithstanding anything in this Agreement to the contrary, the term Released Persons **expressly does not include any of the following**: (a) PNC Bank, as successor in interest to Community Bank of Northern Virginia; (b) the FDIC, as receiver of Guaranty National Bank of Tallahassee; (c) insurers or successors to insurers that issued the Policies as listed in **Exhibit E**; or (d) any other person, association or entity other than a Released Person.

In addition, if you stay in the Kessler Settlement Class, all of the Court's orders will apply to you and legally bind you.

## 12.    Can I exclude myself from the Kessler Settlement Class?

If you do not wish to participate in this settlement, you must notify Class Counsel and Counsel for the Defendants in writing that you wish to be excluded from the Kessler Settlement Class. Your request to be excluded from the Kessler Settlement Class must contain the following information: (1) the name of class member; (2) the current address of the class member; and (3) the date signed.  Any opt out request must be personally signed by each person who was a party to the promissory note in connection with the class member's CBNV/GNBT Loan, unless such

person is deceased or incompetent.  If a party to the promissory note is deceased, an opt out request may be personally signed by the personal representative of the deceased and a copy of the death certificate for such person shall be submitted with the opt out request.  If a party to the promissory note is incompetent, the guardian must sign the opt out request.  No request for exclusion can be made on behalf of a group of class members or through an agent or attorney.

You must mail your exclusion request postmarked no later than **[                    ]** to Class Counsel at:

Walters Bender Strohbehn & Vaughan, P.C.
2500 City Center Square
1100 Main Street
Kansas City, Missouri 64105

Carlson Lynch Ltd.
PNC Park
115 Federal Street
Pittsburgh, PA 15212

If you ask to be excluded from the Kessler Settlement Class, you will not receive a payment, and you cannot object to the settlement.  **However, in the event you choose to opt out of the settlement and you have not filed a proof of claim on or before the bar date (November 16, 2012) for the filing of proofs of claim in the ResCap Chapter 11 Bankruptcy, you will be precluded from obtaining any recovery against the debtors in the ResCap Chapter 11 Bankruptcy**.

**13.    If I don't exclude myself, can I sue the Defendants for the same thing later?**

No.  Unless you exclude yourself, you give up any right to sue the Settling Defendants for all Released Claims (defined above).  If you have a pending lawsuit involving any claim that might fall within the definition of Released Claims, speak to your lawyer in that case immediately, because you must exclude yourself from *this* class to continue your own lawsuit.  If you have a pending lawsuit on matters that are not within the definition of Released Claims, you may continue to have a claim in the ResCap Chapter 11 Bankruptcy even if you do not exclude yourself from this Kessler Settlement Class.  **However, even if your claim does not fall within the definition of Released Claims, if you have not filed a proof of claim on or before the bar date (November 16, 2012) for the filing of proofs of claim in the ResCap Chapter 11 Bankruptcy, you will be precluded from obtaining any recovery against the debtors in the ResCap Chapter 11 Bankruptcy.**

**14.    If I exclude myself, can I get a payment from this Settlement?**

No.  If you exclude yourself, you will not receive any payment from this Settlement.

**15.    Do I have a lawyer in this case?**

The Court preliminarily designated law firms of Walters Bender Strohbehn & Vaughan, P.C. and
Carlson Lynch Ltd. to represent you and other class members.  These lawyers are called Class
Counsel.  You will not be charged for these lawyers.  If you want to be represented by your own
lawyer, you may hire one at your own expense.

**16.    How will these lawyers be paid?**

Class Counsel will ask the Court to approve payment of litigation expenses and/or court costs
incurred by Class Counsel from the Kessler Gross Recovery, in an amount not to exceed
[$_____].  Separately, Class Counsel will ask the Court to approve payment of attorneys'
fees not to exceed thirty-five percent (35%) of the amount of each Kessler Net Recovery.  The
fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the
settlement.  This case has been litigated since 2001, including two appeals.  Furthermore, Class
Counsel anticipates that a significant amount of time and expense will be necessary after final
approval of this settlement in order to pursue for the benefit of the Kessler Settlement Class
collection of the coverages under the various insurance policies either by settlement or trial.
Throughout the previous 12 plus years this case has been litigated, Class Counsel has not been
paid either for the expenses advanced or fees for the time and effort expended on behalf of the
Kessler Settlement Class. In addition, class counsel will ask for an incentive award of
_____to each of the named plaintiffs for their services as class representatives. The
Settling Defendants have agreed not to oppose these fees and expenses.

**17.    How can I object to the Settlement?**

If you are a Kessler Settlement Class Member, you can object to any part of the settlement that
you don't like.  You can give reasons why you think the Court should not approve it.  The Court
will consider your views.  To object, you must send a letter that you object to the Kessler Class
Settlement, referencing the case "In re Residential Capital LLC, Case No. 12-12020."  Be sure to
include your name, address, telephone number, **your signature**, and the reasons you object to the
settlement.  Further details as to the requirements for an objection are stated in Section 11 of the
Settlement Agreement, available at www._____.  **You must mail your objection,
postmarked not later than [_____] to each of these addresses:**

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court<br>U.S. Bankruptcy Court for the<br>Southern District of New York<br>One Bowling Green<br>New York, NY 10004<br><br>**You must ask the Clerk to<br>file your Objection in the<br>Court's official records of<br>the case.** | Walters Bender Strohbehn &<br>Vaughan, P.C.<br>2500 City Center Square<br>1100 Main Street<br>Kansas City, Missouri 64105<br><br>Carlson Lynch Ltd.<br>PNC Park<br>115 Federal Street<br>Pittsburgh, PA 15212 | Morrison & Foerster LLP<br>1290 Avenue of the Americas<br>New York, New York 10104 |

| | | |
|---|---|---|
| | | |

If you do not follow these instructions, the Court will not consider your objections and you will waive all objections and have no right to appeal if the settlement is approved.

**18.    What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the settlement.  You can object only if you stay in the Kessler Settlement Class.  If you object and the settlement is approved, you will still receive the payments made to class members, you will be bound by the final judgment, and your claims will be released.

Excluding yourself is telling the Court that you don't want to be part of the Kessler Settlement Class.  If you exclude yourself, you have no basis to object because the settlement no longer affects you.

**19.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a hearing to decide whether to approve the settlement.  This "Fairness Hearing" will be held on [                              ] at the U.S. Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 501, New York, NY 10004.  At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate.  If there are objections or requests to be heard, the Court may consider them at the hearing.  The Court may also decide the amount of attorneys' fees and costs to be paid to Class Counsel.  The hearing may be postponed without further notice to you.

**20.    Do I have to come to the Hearing?**

No. Class Counsel will answer any questions the Court may have.  But, you are welcome to come at your own expense.  If you file an objection with the Court, you don't have to come to Court to talk about it.  As long as you mailed your written objection complying with the requirements of the Settlement Agreement on time to all of the addresses listed above, the Court will consider it.  You may also pay your own lawyer to attend at your own expense, but it's not necessary.

**21.    May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in _____.
Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than [                              ], and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel at the addresses listed above.  You cannot speak at the hearing if you excluded yourself from the settlement.

**22.    How do I get more information?**

The foregoing is only a summary of the circumstances surrounding the litigation, the claims asserted, the class, the settlement, and related matters.  You may seek the advice and guidance of your own private attorney, at your own expense, if you desire.  For more detailed information, you may review the pleadings, records, and other papers on file in the ResCap Chapter 11 Bankruptcy, which may be inspected during regular business hours at the U.S. Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, or online at www.kccllc.net/rescap.  You may also review the docket entries in the MDL Litigation, which are available at the U.S. District Court for the Western District of Pennsylvania, 700 Grant Street, Pittsburgh, PA, 15219.  If you wish to communicate with Class Counsel, you may write to the addresses provided above.

Please do not direct any inquiries to the Court or to the Settling Defendants.


So Ordered.

/s/The Honorable Martin Glenn
United States Bankruptcy Judge

## EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors, | ) | Jointly Administered |
| | ) | |
| | ) | |

----------------------------------------------------------------

**ORDER PURSUANT TO RULES 7023 AND
9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(1) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT BETWEEN
NAMED PLAINTIFFS, INDIVIDUALLY AND AS REPESENTATIVES OF THE
KESSLER SETTLEMENT CLASS, AND THE SETTLING DEFENDANTS;
(2) GRANTING CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT ONLY;
(3) APPROVING THE FORM AND MANNER OF NOTICE TO KESSLER
SETTLEMENT CLASS MEMBERS OF THE SETTLEMENT AGREEMENT;
(4) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF
THE SETTLEMENT AGREEMENT; AND
(5) GRANTING RELATED RELIEF**

Pending before the Court is the joint motion ("Joint Motion") of Plaintiffs, Rowena

Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard (the

Bankruptcy Litigation "Named Plaintiffs"),  individually and as the proposed representatives of the

"Kessler Settlement Class," as defined herein, and Debtor-Defendants Residential Funding

Company, LLC ("RFC"), Residential Capital, LLC, and GMAC Residential Holding Company,

LLC (collectively, the "Settling Defendants"), by and through their respective counsel of record,

for an Order, among other things: (1) Preliminarily Approving the Kessler Settlement Agreement

dated June __, 2013 between Named Plaintiffs, individually and as the proposed representatives of

the Kessler Settlement Class, and the Settling Defendants (the "Agreement"); (2) Granting Class

Certification for Purposes of Settlement Only; (3) Approving the Form and Manner of Notice to

B-1

the Kessler Settlement Class; (4) Scheduling a Final Fairness Hearing for the Final Consideration

and Approval of the Settlement Agreement; and (5) Granting Related Relief.  The Court has

considered the Joint Motion and has reviewed the Settlement Agreement. The Court now

therefore grants the Joint Motion and Orders, Adjudges and Decrees as follows:

1.      The Named Plaintiffs and Settling Defendants have executed the Agreement in

order to settle and resolve the Litigation as between the Settling Defendants, subject to

approval of the Court.

2.      The definitions set forth in the Agreement are hereby incorporated by reference

into this Order (with capitalized terms as set forth in the Agreement).

3.      The Agreement is the result of serious, informed, arm's length and non-

collusive negotiations.   Based on the range of possible outcomes, the cost, delay and

uncertainty associated with further litigation, the interest of the Debtors' estates and creditors

and the support of the Committee, the Agreement is reasonable and cost-effective.

4.       The terms of the Agreement and the Settlement as provided therein, are

approved preliminarily as fair, reasonable and adequate to the Kessler Settlement Class, subject

to further consideration at the Fairness Hearing described below.

5.      The terms of the Agreement and the Settlement as provided therein, are also

approved preliminarily as fair and equitable to the Debtors' bankruptcy estates and their

creditors, subject to further consideration at the Fairness Hearing described below.

6.      Accordingly, for the purpose of a settlement in accordance with the Agreement,

this Court, pursuant to Bankruptcy Rule 7023, hereby preliminarily certifies the following

classes of persons as  settlement classes:

All persons who obtained a second or subordinate, residential, federally
related, non-purchase money, HOEPA qualifying mortgage loan from

B-2

Community Bank of Northern Virginia or Guaranty National Bank of Tallahassee, that was secured by residential real property used as their principal dwelling and that was assigned to GMAC-Residential Funding Corporation n/k/a Residential Funding Company, LLC, who was not a member of the class certified in the action captioned <u>Baxter v. Guaranty National Bank, et al.</u>, Case No. 01-CVS-009168 in the General Court of Justice, Superior Court Division of Wake County, North Carolina (the "Kessler Settlement Class") .

All persons who meet the above class-definition, whose loan closed prior to May 1, 2000 (the "Equitable Tolling Sub-Class").

All persons who meet the above class-definition, whose loan closed after May 1, 2000 ("Non-Equitable Tolling Sub-Class") .

7.     Pursuant to the Agreement, and for purposes of the Settlement only, the Court finds preliminarily that:

a.     The Kessler Settlement Class, the Non-Equitable Tolling Sub-Class and the Equitable Tolling Sub-Class are each so numerous that joinder of all members is impracticable;

b.     There are questions of law or fact common to: (i) the Kessler Settlement Class that predominate over questions affecting only individual members of the Kessler Settlement Class; (ii) the Non-Equitable Tolling Sub-Class that predominate over questions affecting only individual members of the Non-Equitable Tolling Sub-Class; and (iii) the Equitable Tolling Sub-Class that predominate over questions affecting only individual members of the Equitable Tolling Sub-Class;

c.     The claims of the Named Plaintiffs are typical of those of the members of the Kessler Settlement Class, the claims of Rowena Drennen are typical of those of the members of the Non-Equitable Tolling Sub-Class and the claims of John Picard and Rebecca Picard are typical of those of the members of the Equitable Tolling Sub-Class;

B-3

d.      The Named Plaintiffs and Plaintiffs' Counsel will fairly and adequately represent and protect the interests of the members of the Kessler Settlement Class;

e.      Rowena Drennen and Allocation Counsel for the Non-Equitable Tolling Sub-Class will fairly and adequately represent and protect the interests of the members of the Non-Equitable Tolling Sub-Class;

f.      John Picard and Rebecca Picard and Allocation Counsel for the Equitable Tolling Sub-Class will fairly and adequately represent and protect the interests of the members of the Equitable Tolling Sub-Class; and

g.      Certification of the Kessler Settlement Class, the Non-Equitable Tolling Sub-Class and the Equitable Tolling Sub-Class as proposed, is an appropriate method for the fair and efficient adjudication of the controversies between the Kessler Settlement Class and Settling Defendants.

8.      For the purpose of this preliminary approval, and for all matters relating to the Settlement and the Litigation, until further order of the Court, the Court: (a) appoints the Named Plaintiffs as Representatives of the Kessler Settlement Class and R. Frederick Walters, Kip D. Richards, David M. Skeens, J. Michael Vaughan, and Garrett M. Hodes of the law firm Walters Bender Strohbehn & Vaughan, P.C. and Bruce Carlson and Gary Lynch of the law firm Carlson Lynch Ltd. PNC Park, 115 Federal Street, Suite 210, Pittsburgh, PA 15212 as Counsel for the Kessler Settlement Class ("Plaintiffs' Counsel" or "Class Counsel"); and (b) appoints _____ as Allocation Counsel for the Non-Equitable Tolling Sub-Class for the purpose of allocation only; and (c)_____ as Allocation Counsel for the Equitable Tolling Sub-Class for the purpose of allocation only.

9.      By this Order, the Court hereby exercises subject matter and personal

B-4

jurisdiction over the Kessler Settlement Class for purposes of evaluating the final certification
of the Kessler Settlement Class and the fairness and adequacy of the Settlement.

10.      The Class Mail Notice, as set forth in Exhibit A to the Parties' Agreement, is
hereby approved.

11.      The Class Mail Notice in a form substantially the same as that set forth in
Exhibit A to the Agreement shall be mailed by Class Counsel by first-class mail, postage
prepaid, to all members of the Kessler Settlement Class identified on Exhibit D of the
Agreement.  Such mailing shall be made within five (5) days of the entry of this Preliminary
Approval Order.

12.      These notice methodologies (a) protect the interests of the Named Plaintiffs, the
Kessler Settlement Class, and Settling Defendants, (b) are the best notice practicable under the
circumstances, and (c) are reasonably calculated to apprise the Kessler Settlement Class of the
proposed Settlement; the Agreement; the nature of the action; the definition of the Kessler
Settlement Class; the class claims, issues or defenses; that a Kessler Class Member may enter
an appearance through an attorney if the Kessler Class Member so desires; their right to opt out
and exclude themselves from or object to the proposed Settlement and the time and manner for
doing so; and the binding effect of a Kessler Settlement Class judgment on Kessler Settlement
Class Members.  In addition, the Court finds that the notice methodologies are reasonable and
constitute due, adequate and sufficient notice to all persons entitled to receive notice of the
proposed Settlement and meet all applicable requirements of law, including, but not limited to,
Fed.R.Bankr.P. 7023 and the Due Process Clause of the Fifth Amendment of the United States
Constitution.

13.      Prior to the Fairness Hearing, Class Counsel shall serve and file a sworn

B-5

statement of a person with knowledge, evidencing compliance with the provisions of this Order

concerning the mailing of the Class Mail Notice.

14.      The Qualified Settlement Fund referenced in Section 6(c) of the Agreement is

hereby approved and Class Counsel is authorized and directed to establish the Qualified

Settlement Fund pursuant to this Order and the terms of this Agreement.  All taxes, costs and

expenses associated with the Qualified Settlement Fund and its administration shall be paid as

provided in the Agreement.

15.      Any member of the Kessler Settlement Class desiring exclusion from the

Kessler Settlement Class shall mail a request for exclusion ("Request for Exclusion") to the

Parties' respective counsel.  To be valid, the Request for Exclusion must be **received** on or

before _____, **2013**.  Such Request for Exclusion must be in writing and include: (a) the

name, address, telephone number and the last four digits of the social security number of the

class member seeking to opt out; (b) a statement that the class member and all other borrowers

named on the class member's promissory note are seeking exclusion; (c) the signature of each

person who was a party to the promissory note made in connection with the class member's

loan, unless such person is deceased or legally incompetent, in which event the opt out

submission shall be signed by said deceased or legally incompetent person's personal

representative or guardian; and (d) a reference to "In re Residential Capital, LLC, Case

No. "12-12020 (MG)."  Any member of the Kessler Settlement Class who does not properly

and timely request exclusion from the Kessler Settlement Class in full compliance with these

requirements shall be included in the Kessler Settlement Class and be bound by any judgment

entered in this Action with respect to the Class.

B-6

16.    Within seven (7) days after the deadline for submitting Requests for Exclusion, Class Counsel shall file with the Court a sworn statement to identify those persons, if any, who timely submitted a Request for Exclusion.  The originals of all Requests for Exclusion shall be retained by the Parties.  Class Counsel shall also identify those persons, if any, whose efforts to be excluded were rejected because they failed to comply with paragraph 13 above and shall provide the Court with all communications received from such individuals.  A hearing (the "Fairness Hearing") shall be held at ____a.m. on _____, **2013**, in United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 501, New York, New York 10004-1408.  At the Fairness Hearing, the Court will consider: (a) the fairness, reasonableness, and adequacy of the Settlement; (b) the entry of any final order or judgment in the Litigation with respect to the Kessler Settlement Class; (c) the application for incentive awards for the services rendered by the Named Plaintiffs; (d) the application for attorney's fees and for reimbursement of expenses by Class Counsel; and (e) other related matters.  The Fairness Hearing may be postponed, adjourned or continued by Order of the Court without further notice to the Kessler Settlement Class.

17.    To be considered at the Fairness Hearing, any Kessler Class Member desiring to file an objection or other comment on the Settlement shall be required to file all such objections and comments and all supporting pleadings on or before _____, **2013**, with service upon Class Counsel and Counsel for Settling Defendants.  The objections of any Kessler Class Member must be in writing, and must specifically include the following: (a) the name, address, and telephone number of the class member filing the objection; (b) a statement of each objection asserted; (c) a detailed description of the facts underlying each objection; (d) any loan documents in the possession or control of the objector and relied upon by the objector

B-7

as a basis for the objection; (e) if the objector is represented by counsel, a detailed description of the legal authorities supporting each objection; (f) if the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts; (g) if the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documents by attaching them to the objection and provide any other evidence that the objector intends to present; (h) a statement of whether the objector intends to appear at the hearing; (i) a copy of any exhibits which the objector may offer during the hearing; and (j) a reference to "In re Residential Capital, LLC 12-12020 (MG)."

18.    Debtors shall provide notice of the Fairness Hearing to the insurers who issued insurance policies under the General Motors Combined Specialty Insurance Program 12/15/00 - 12/15/03 ("Insurers") on or before _____, 2013.  Any Insurer desiring to file an objection or other comment on the Settlement shall be required to file all such objections and comments and all supporting pleadings on or before _____, 2013, with service upon Class Counsel and Counsel for Settling Defendants.  The objections of any Insurer must be in writing, and must specifically include the following: (a) the identity of the Insurer or Insurers filing the objection; (b) a statement of each objection asserted; (c) a detailed description of the facts underlying each objection; (d) a detailed description of the legal authorities supporting each objection; (e) if the objector plans to utilize expert opinion and/or testimony as part of the objection(s), a written expert report from all proposed experts; (f) if the objector plans to call a witness or present other evidence at the hearing, the objector must state the identity of the witness and identify any documents by attaching them to the objection and provide any other evidence that the objector intends to present; (g) a statement of whether the objector intends to appear at the

B-8

hearing; (h) a copy of any exhibits which the objector may offer during the hearing; and (i) a reference to "In re Residential Capital, LLC "12-12020.""

19.     Unless otherwise ordered by the Court, no objection to or other comment concerning the Settlement shall be heard unless timely filed in accordance with the respective guidelines specified above.  Class Counsel and Counsel for Settling Defendants shall promptly furnish each other with copies of any and all objections or written requests for exclusion that come into their possession.

20.     Any objector who does not make his or her objection in the manner provided in this Order shall be deemed to have waived any such objection and shall forever be barred from making any objection to the Settlement, including without limitation, the propriety of class certification, the adequacy of any notice, or the fairness, adequacy or reasonableness of the Settlement.

21.     Submissions of the Parties relative to the Settlement, including memoranda in support of the Settlement, applications for attorney's fees and reimbursement of expenses by Class Counsel, and any applications for the payment of services rendered by the Named Plaintiffs shall be filed with the Clerk of the Court on or before _____, **2013**.

22.     Any attorney hired by any objector for the purpose of appearing and/or making an objection shall file his or her entry of Appearance at the Class Member's expense on or before _____, **2013**, with service on Class Counsel and Counsel for Settling Defendants per the Federal Rules of Civil Procedure.

23.     Any Kessler Settlement Class Member may appear at the Fairness Hearing in person, or by counsel if an appearance is filed and served as provided in the Class Mail Notice, and such person will be heard to the extent allowed by the Court.  No person shall be permitted

B-9

to be heard unless, on or before _____, **2013**, such person has (a) filed with the Clerk of the Court a notice of such person's intention to appear; and (b) served copies of such notice upon Class Counsel and Counsel for Settling Defendants.

24.    All other events contemplated under the Agreement to occur after entry of this Order and before the Fairness Hearing shall be governed by the Agreement and the Class Mail Notice, to the extent not inconsistent herewith.    Class Counsel and Counsel for Settling Defendants shall take such further actions as are required by the Agreement.

25.    The Parties shall be authorized to make non-material changes to the Class Mail Notice so long as Class Counsel and Counsel for Settling Defendants agree and one of the Parties files a notice thereof with the Court prior to the Fairness Hearing.    Neither the insertion of dates nor the correction of typographical or grammatical errors shall be deemed a change to the Class Mail Notice.

26.    All claims against and motions involving Settling Defendants with respect to the "CBNV/GNBT Loans" are hereby stayed and suspended until further order of this Court, other than as may be necessary to carry out the terms and conditions of the Agreement or the responsibilities related or incidental thereto.

27.    The claims of the Named Plaintiffs, the members of the Kessler Settlement Class and/or the remaining members of the Litigation Class against any Defendant and/or person or entity other than Settling Defendants and other "Released Persons," are **not** stayed or suspended by the Agreement, this Order, or otherwise.    Only the "Released Claims" of the "Releasors" as against the "Released Persons," as defined in the Agreement, are suspended and stayed.

28.    If Final Approval of the Settlement does not occur, or if the Settlement does not

become effective on or before the Effective Date as provided in the Agreement, or if the

Settlement is rescinded or terminated for any reason, the Settlement and all proceedings had in

connection therewith shall be null and void and without prejudice to the rights of the Parties

before the Settlement was executed and made, and this Order and all Orders issued pursuant to

the Settlement shall be vacated, rescinded, canceled, annulled and deemed "void" and/or "no

longer equitable" for purposes of Fed. R. Bankr. P. 9024, as provided in and subject to

Paragraph [14] of the Agreement.

29.    Neither this Order, the Agreement, nor any of their terms or provisions, nor any

of the negotiations between the Parties or their counsel (nor any action taken to carry out this

Order), is, may be construed as, or may be used as an admission or concession by or against

any of the Parties or the Released Persons of (i) the validity of any claim or liability, any

alleged violation or failure to comply with any law, any alleged breach of contract, any legal or

factual argument, contention or assertion, (ii) the truth or relevance of any fact alleged by

Plaintiffs, (iii) the existence of any class alleged by Plaintiffs, (iv) the propriety of class

certification if the Litigation were to be litigated rather than settled, (v) the validity of any

claim or any defense that has been or could have been asserted in the Litigation or in any other

litigation; (vi) that the consideration to be given to Kessler Settlement Class Members

hereunder represents the amount which could be or would have been recovered by any such

persons after trial; or (vii) the propriety of class certification in any other proceeding or action.

Entering into or carrying out the Agreement, and any negotiations or proceedings related to it,

shall not in any way be construed as, or deemed evidence of, an admission or concession as to

the denials, defenses, or factual or legal positions of Settling Defendants, and shall not be

offered or received in evidence in the Litigation or any action or proceeding against any party

in any court, administrative agency or other tribunal for any purpose whatsoever, except as is necessary  to enforce the terms of this Order and the Agreement; provided, however, that this Order and the Agreement may be filed by Settling Defendants in any action filed against or by Settling Defendants, or any other Released Person, to support a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.  Settling Defendants expressly reserve all rights and defenses to any claims and do not waive any such rights or defenses in the event that the Agreement is not approved for any reason.

SO ORDERED.

_____
Martin Glenn, United States Bankruptcy Judge

B-12

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors, | ) | Jointly Administered |
| | ) | |
| | ) | |

-------------------------------------------------------------

### FINAL ORDER PURSUANT TO FED. R. CIV. P. 23 AND FED. R. BANKR. P. 9019 APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE KESSLER SETTLEMENT CLASS MEMBERS AND THE SETTLING DEFENDANTS AND GRANTING RELATED RELIEF

The Court having carefully reviewed and considered the Settlement and Release Agreement dated June __, 2013 (the "**Agreement**"), between Rowena Drennen, Flora Gaskin, Roger Turner, Christie Turner, John Picard and Rebecca Picard ("**Named Plaintiffs**"), individually and as the representatives of the Kessler Settlement Class (as defined herein) in the Bankruptcy Cases, and Debtor Defendants Residential Funding Company, LLC ("**RFC**"), Residential Capital, LLC, and GMAC Residential Holding Company, LLC (the "**Settling Defendant**s"), the evidence and arguments of counsel as presented at the Fairness Hearing[1] held on _____, 2013, the Joint Motion to Approve filed by the Parties seeking approval of the Agreement and other supporting memoranda and declarations in support filed with this Court, [and the timely objections to the proposed Settlement], and all other filings in connection with the Parties' settlement as memorialized in the Agreement (the "**Settlement**"); and for good cause shown,

---

[1]   Unless otherwise provided herein, all capitalized terms in this Order shall have the same meaning as those terms in the Agreement.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.    **Incorporation of Other Documents**.    This Order incorporates and makes the

Agreement, together with all exhibits and schedules attached thereto, which were filed with the

Court on or about ___  _, 2013 [Dkt. No. [ ], a part hereof.

2.    **Jurisdiction**.    Because adequate notice was disseminated and all potential

members of the Kessler Settlement Class were given notice of and an opportunity to opt out of

the Settlement, the Court has personal jurisdiction over all members of the Kessler Settlement

Class.  The Court has subject matter jurisdiction over the Kessler Allowed Claim and the Motion

to Certify, including, without limitation, jurisdiction to approve the proposed Settlement and to

grant final certification of the Kessler Settlement Class pursuant to 28 USC §§ 157 and 1334 and

venue is proper before this Court pursuant to 28 USC §§ 1408 and 1409.

3.    **Final Class Certification**.    The Kessler Settlement Class, the Equitable Tolling

Sub-Class and the Non-Equitable Tolling Sub-Class, each of which this Court previously

certified preliminarily, is hereby finally certified for settlement purposes pursuant to Rule 7023

of the Federal Rules of Bankruptcy Procedure (which incorporates Fed. R. Civ. P. 23), the Court

finding that for purposes of settlement, the Kessler Settlement Class, the Equitable Tolling Sub-

Class and the Non-Equitable Tolling Sub-Class fully satisfy all of the applicable requirements of

Rule 23 and due process.

The Kessler Settlement Class, the Equitable Tolling Sub-Class and the Non-Equitable

Tolling Sub-Class, are defined, respectively, as follows:

> Kessler Settlement Class is defined as: All persons who obtained a second or
> subordinate, residential, federally related, non-purchase money, HOEPA
> qualifying mortgage loan from Community Bank of Northern Virginia or
> Guaranty National Bank of Tallahassee, that was secured by residential real
> property used as their principal dwelling and that was assigned to GMAC-
> Residential Funding Corporation n/k/a Residential Funding Company, LLC who

was not a member of the class certified in the action captioned Baxter v. Guaranty
National Bank, et al., Case No. 01-CVS-009168 in the General Court of Justice,
Superior Court Division of Wake County, North Carolina

Equitable Tolling Sub-Class is defined as: All persons who meet the above
class-definition, whose loan closed prior to May 1, 2000.

Non-Equitable Tolling Sub-Class is defined as: All persons who meet the above class-
definition, whose loan closed after May 1, 2000.

[No members of the Kessler Settlement Class timely requested to be excluded from or "opted

out" of the Kessler Settlement Class.] **OR** [A list of those persons who have timely excluded

themselves from the Kessler Settlement Class, and who therefore are not bound by the

Settlement and the Final Judgment, is attached hereto as **Exhibit 1** and incorporated herein and

made a part hereof.]

   4. **Adequacy of Representation**.  With the employment of Allocation Counsel and

the certification of subclasses, there are no apparent conflicts of interest between: (1) the Named

Plaintiffs and the Kessler Settlement Class, or among the members of the Kessler Settlement

Class; or (2) Rowena Drennen and the Non-Equitable Tolling Sub-Class or among the members

of the Non-Equitable Tolling Sub-Class; or (3) John Picard and Rebecca Picard and the

Equitable Tolling Sub-Class or among the members of the Equitable Tolling Subclass.

Plaintiffs' Counsel will fairly and adequately represent and protect the interests of the Kessler

Settlement Class.  Allocation Counsel will each fairly and adequately represent and protect the

interests, respectively, of the Non-Equitable Tolling Sub-Class and the Equitable Tolling Sub-

Class.  Accordingly, (a): the Named Plaintiffs and R. Frederick Walters, Kip D. Richards, David

M. Skeens, J. Michael Vaughan, and Garrett M. Hodes of the firm Walters Bender Strohbehn &

Vaughan, P.C., and Bruce Carlson and Gary Lynch of the law firm Carlson Lynch Ltd., PNC

Park, 115 Federal Street, Pittsburgh, PA 15212 as Counsel for the Kessler Settlement Class

C-3

("Plaintiffs' Counsel" or "Class Counsel"), have satisfied the requirements of Rule 23 and are hereby appointed and approved as representatives of the Kessler Settlement Class and Counsel for the Kessler Settlement Class, respectively; (b) Rowena Drennen and _____ , Allocation Counsel for the Non-Equitable Tolling Sub-Class with respect to allocation, have satisfied the requirements of Rule 23 and are hereby appointed and approved as the representative of the Non-Equitable Tolling Sub-Class and Allocation Counsel for the Non-Equitable Tolling Sub-Class with respect to allocation, respectively; (c) John and Rebecca Picard and _____ , Allocation Counsel for the Equitable Tolling Sub-Class with respect to allocation, have satisfied the requirements of Rule 23 and are hereby appointed and approved as the representatives of the Equitable Tolling Sub-Class and Allocation Counsel for the Equitable Tolling Sub-Class with respect to allocation, respectively.

5.      **Class Notice**.  The Court finds that the Class Mail Notice and its distribution to the Kessler Settlement Class as implemented pursuant to the Agreement and the Preliminary Approval Order:

a.      Constituted the best practicable notice to the members of the Kessler Settlement Class under the circumstances of this Litigation;

b.      Constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Kessler Settlement Class of (i) the pendency of the Bankruptcy Cases and the proposed Settlement, (ii) the nature of the action, (iii) the definition of the Kessler Settlement Class, (iv) the class claims, issues or defenses, (v) that a Kessler Class Member may enter an appearance through an attorney if the Kessler Class Member so desires, (vi) their right to opt out and exclude themselves from the proposed Settlement and the time and manner for doing so, (vii) their right to

object to any aspect of the proposed Settlement and the time and manner for doing so

(including, but not limited to, the following: final certification of the Kessler Settlement

Class; the fairness, reasonableness or adequacy of the Settlement as proposed; the

adequacy of the Named Plaintiffs and/or Class Counsels' representation of the Kessler

Settlement Class; the proposed awards of attorney's fees and expenses; and the proposed

incentive awards), (viii) their right to appear at the Fairness Hearing if they did not

exclude themselves from the Kessler Settlement Class, and (ix) the binding effect of the

Order in the Bankruptcy Cases on all members of the Kessler Settlement Class who did

not request exclusion;

    c.    Constituted notice that was reasonable and constituted due, adequate and

sufficient notice to all persons and entities entitled to be provided with notice; and

    d.    Constituted notice that fully satisfied the requirements of Bankruptcy Rule

7023 and Rule 23, due process, and any other applicable law.

    6.    **Final Settlement Approval**.    The terms and provisions of the Agreement,

including all exhibits, have been entered into in good faith and as a result of serious, informed,

arm's length and non-collusive negotiations.  Based on the range of possible outcomes and the

cost, delay and uncertainty associated with further litigation, the Agreement is reasonable and

cost-effective. Therefore, the terms of the Agreement and the Settlement as provided therein are

fully and finally approved, subject to satisfaction of the conditions precedent set forth in Section

14 of the Agreement, pursuant to Bankruptcy Rule 7023 and Rule 23, as fair, reasonable and

adequate as to, and in the best interests of, the Parties and the Kessler Settlement Class Members,

and in full compliance with all applicable requirements of the United States Constitution

(including the Due Process Clause), and any other applicable law.  Likewise, the terms of the

ny-1097185

Agreement and the Settlement as provided therein, are fully and finally approved, subject to satisfaction of the conditions precedent set forth in Section 14 of the Agreement, under Fed. R. Bankr. P. 9019 as fair and equitable to the Debtors' Bankruptcy Estate and their creditors. The Agreement and the transactions contemplated thereby, including the releases given herein, are in the best interest of the Debtors, their estates, their creditors and all other parties in interest. The Agreement and the transactions contemplated thereby, including the releases given therein, meet the standards established by the Second Circuit for the compromise and settlement in bankruptcy, and are reasonable, fair and equitable and supported by adequate consideration. The Parties are hereby directed to implement and consummate the Agreement according to its terms and provisions and subject to satisfaction of the conditions precedent set forth in Section 14 of the Agreement.

7.  **Binding Effect**.  The terms of the Agreement and this Order shall be forever binding on all of the Kessler Settlement Class Members and the Named Plaintiffs, individually and as representatives of said Class, as well as on their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them. The terms of the Agreement and Order shall have *res judicata* and other preclusive effect as to the "Releasors" for the "Released Claims" as against the "Released Persons," all as defined in the Agreement.

8.  **Releases**.  The Releasors, as defined in Section 2.24 of the Agreement, shall be bound by the Releases provided in Section 8 of the Agreement, which is incorporated herein in all respects, regardless of whether such persons received any compensation under the Agreement or Settlement. The Releases are effective as of the Effective Date specified in Section 14 of the Agreement. The Court expressly adopts all defined terms in Section 2 of the Agreement,

including but not limited to, the definitions of the persons and claims covered by the Releases as set forth at Sections 2.25 (Released Claims), 2.26 (Released Persons) and 2.24 (Releasors).

9.     **Enforcement of Settlement.**  Nothing in this Order shall preclude any action by any Party to enforce the terms of the Agreement.

10.     **Additional Payment to the Named Plaintiffs.**  The Court hereby awards the amounts listed on Schedule A ($_____total) to be paid from the Kessler Gross Recovery to the Named Plaintiffs as incentive awards for their services as representatives of the Kessler Settlement Class in the Bankruptcy Cases.

11.     **Attorney's Fees and Expenses.**  Plaintiffs' Counsel is awarded $_____ representing the litigation expenses and court costs that Plaintiffs' Counsel have incurred and advanced in connection with the Litigation and the Settlement, which shall be deducted from the Kessler Gross Recovery. Allocation Counsel for the Non-Equitable Tolling Sub-Class and Equitable Tolling Sub-Class are awarded _____ and _____  for their litigation expenses and court costs, respectively, and such sums shall be deducted from the Kessler Gross Recovery.  In addition, the Court awards Plaintiffs' Counsel Attorney's fees of 35% of each Kessler Net Recovery.  Allocation Counsel for the Non-Equitable Tolling Sub-Class and Equitable Tolling Sub-Class are awarded _____ and _____ for their attorney fees, respectively, and such sums shall be paid from Plaintiffs' Counsel Attorney's fee award.  The Court finds and concludes that each of the above awards to Plaintiffs' Counsel for work and services in this case and in connection with the Settlement is reasonable for the reasons stated in *Plaintiffs' Application for Award of Attorney's Fees, Litigation Expenses and Court Costs* (Doc. #___) and finds as follows:

C-7

**[As customary, Plaintiffs will include additional language for the Court to consider using in any final order that it signs in support of Plaintiffs' fee award.]**

12.    __No Other Payments__.    The preceding paragraphs of this Final Order cover, without limitation, any and all claims against Released Persons for attorney's fees and expenses, costs or disbursements incurred by Plaintiffs' Counsel or any other counsel representing the Named Plaintiffs as representatives of the Kessler Settlement Class or the Kessler Settlement Class Members, or incurred by the Kessler Settlement Class Members, in connection with Released Claims against Released Persons, except to the extent otherwise specified in this Order or the Agreement.

13.    __Retention of Jurisdiction.__    Without in any way affecting the finality of this Order, this Court expressly retains jurisdiction as to all matters relating to the administration and enforcement of the Agreement and Settlement and of this Order, and for any other necessary purpose as permitted by law, including, without limitation:

a.    enforcing the terms and conditions of the Agreement and Settlement and resolving any disputes, claims or causes of action that, in whole or in part, are related to the administration and/or enforcement of the Agreement, Settlement, this Order (including, without limitation, whether a person is or is not a member of the Kessler Settlement Class or a Kessler Settlement Class Member; and whether any claim or cause of action is or is not barred by this Order);

b.    entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Order and/or to ensure the fair and orderly administration of the Settlement and distribution of the Kessler Gross Recoveries; and

        c.        entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction.

14.    **Claims Reserved.** The entry of this Order shall in no way stay, bar, preclude, abate or otherwise operate as a dismissal, release, discharge or adjudication of any claims other than the Released Claims as to the Released Persons by the Releasors.

15.    **Contribution, Indemnity and Other Claims.**  Any and all persons and entities (including but not limited to non-settling defendants in the Litigation, their successors or assigns, and any other person or entity later named as a defendant or third party in the Litigation) are permanently enjoined, barred and restrained from instituting, commencing, prosecuting, asserting or pursuing any claim against any of the Released Parties for contribution or indemnity (whether contractual or otherwise), however denominated, arising out of, based upon or related in any way to the Released Claims or claims and allegations asserted in the Litigation (or any other claims where the alleged injury to the entity/individual is the entity/individual's actual or threatened liability to one or more members of the Kessler Settlement Class), whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in this Court, in any federal or state court, or in any court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere, and whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.  All such claims will be extinguished, discharged, satisfied and unenforceable, subject to a hearing to be held by the Court, if necessary.  Any person or entity so barred and enjoined shall be entitled to appropriate judgment reduction, if applicable, in accordance with applicable statutory or common law rule to the extent permitted for the claims alleged herein.

Dated: _____ __, 2013
New York, New York

_____
The Honorable Martin Glenn
UNITED STATES BANKRUPTCY JUDGE

ny-1097185

## EXHIBIT D

**Filed Under Seal**

# EXHIBIT E

**General Motors**
**Combined Specialty Insurance Program**
**12/15/00  -  12/15/03**

| Insurer | % of | Limit | Policy |
|---|---|---|---|
| **Primary - $50 million** | | | |
| Lloyd's & British Cos. | 100 | **$50,000,000** | 823/FD0001142 |
| **First Excess - $50mil xs $50 mil** | | | |
| Hartford | 40 | $20,000,000 | NDA 0200454-00 |
| CNA/Continental Casualty | 20 | $10,000,000 | 169737324 |
| Lloyd's & British Cos. | 20 | $10,000,000 | 823/FD0001144 |
| MAG/Clarendon | 20 | $10,000,000 | MAG 14 400436 50000 |
| **Total** | 100 | **$50,000,000** | |
| **Second Excess - $100mil xs $100mil** | | | |
| Swiss Re | 100 | **$100,000,000** | MP 27049.1 |
| **Third Excess - $100mil xs $200mil** | | | |
| ACE | 25 | $25,000,000 | GM-9384D |
| XL | 25 | $25,000,000 | XLE+O-03920-00 |
| Starr Excess | 25 | $25,000,000 | 6457606 |
| Chubb Atlantic | 25 | $25,000,000 | (03) 3310-10-90 |
| **Total** | 100 | **$100,000,000** | |
| **Fourth Excess - $100mil xs $300mil** | | | |
| Zurich/Steadfast Ins. Co. | 50 | $50,000,000 | IPR 2185703-00 |
| St. Paul Mercury | 25 | $25,000,000 | 512CM0406 |
| Axcelera/North Am. Specialty | 25 | $25,000,000 | BNX0000337-00 |
| **Total** | 100 | **$100,000,000** | |
| **Grand Total** | | **$400,000,000** | |

# SCHEDULE 1
## KESSLER SETTLEMENT CLASS

| NAMED PLAINTIFFS | PROPOSED INCENTIVE AWARD |
| --- | --- |
| Drennen, John  Rowena & John | 12,500.00 |
| Gaskin, Flora | 7,500.00 |
| Kessler, Brian & Carla | 7,500.00 |
| Kossler, Phil & Jeannie | 7,500.00 |
| Nixon, John & Kathy | 7,500.00 |
| Picard, John & Rebecca | 7,500.00 |
| Sabo, William & Ellen | 7,500.00 |
| Turner,  Roger and Christine | 7,500.00 |
| Wasem, Tammy & David | 7,500.00 |