# <u>Exhibit 9</u>

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification   Pg 2 of 42
Case 2:03-cv-00425-AJS   Document 657   Filed 06/11/13   Page 1 of 4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA SECOND MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Case No. 03-0425<br>Case No. 02-01201<br>Case No. 05-0688<br>Case No. 05-1386<br><br>Hon. Arthur J. Schwab |

THIS DOCUMENT RELATES TO ALL MDL ACTIONS

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1.      Plaintiffs Brian W. and Carla M. Kessler, Flora A. Gaskin, Philip F. and Jeannie

C. Kossler, John and Kathy Nixon, John and Rebecca Picard, William and Ellen Sabo and

Tammy and David Wasem (collectively "Plaintiffs") hereby respectfully request that the Court

enter the proposed Order submitted herewith and certify the following Class and Sub-Classes:

## GENERAL CLASS

All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling, for the period May 1998-December 2002.

## SUB-CLASSES

Sub-Class 1:  (RESPA ABA Disclosure Sub-Class) (Plaintiffs:  Philip and Jeannie Kossler)--All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-October 1998;

Sub-Class 2:  (RESPA Kickback Sub-Class) (Plaintiffs:  Brian and Carla Kessler;  John and Rebecca Picard)--All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by

12-12020-mg  Doc 4451-9  Filed 07/31/13  Entered 07/31/13 20:46:20  Exhibit 9 -
Case 2:03-cv-00425-ABF  Document 65  Filed 06/11/33  Page 2 of 4
Motion for Class Certification    Pg 3 of 42

the Class Members as their principal dwelling for the period October 1998-
November 1999;

Sub-Class 3: (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs:
Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem)-- All
persons nationwide who obtained a second or subordinate, residential, federally
related, non purchase money, mortgage loan from CBNV that was secured by
residential real property used by the Class Members as their principal dwelling for
the period May 1, 2001-May 1, 2002;

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs: All
Plaintiffs other than the Nixons, Gaskins and Wasems)-- All persons nationwide
who obtained a second or subordinate, residential, federally related, non purchase
money, mortgage loan from CBNV that was secured by residential real property
used by the Class Members as their principal dwelling for the period May 1998-
December 2002;

Sub-Class 5: (RICO Sub-Class) (Plaintiffs: John and Rebecca Picard; Brian and
Carla Kessler)-- All persons nationwide who obtained a second or subordinate,
residential, federally related, non purchase money, mortgage loan from CBNV
that was secured by residential real property used by the Class Members as their
principal dwelling for the period May 1998-November 1999.

2.       Plaintiffs request that all named Plaintiffs be appointed as representatives of the

General Class and that the designated Plaintiffs be appointed as representatives of the requested

Sub-Classes.

3.       Plaintiffs request that R. Bruce Carlson (and the law firm Carlson Lynch Ltd.) and

R. Frederick Walters (and the law firm Walters Bender Strohbehn & Vaughan) be appointed as

co-lead counsel and that the following law firms be appointed as class counsel: Richardson,

Patrick, Westbrook & Brickman, The Law Offices of Daniel O. Myers, The Legg Law Firm, The

Law Offices of Franklin Nix.

4.       Plaintiffs request that the Court certify the following common claims and issues:

(A) Plaintiffs' claims for violations of the RESPA ABA disclosure requirements

(for the period May 1998-October 1998);

(B) Plaintiffs' claims for violations of the RESPA anti-kickback and unearned fee
requirements (Section 800 Origination Fees)(for the period October 1998-
November 1999);

(C) Plaintiffs claims for violations of TILA/HOEPA;

(D) Plaintiffs claims for violations of RICO;

(E) The defenses set forth to each of the above claims; and,

(F) The proper measure of damages for Plaintiffs and each member of the certified class,

in the event that Plaintiffs establish liability on one or more of their claims.

Dated: June 21, 2013

Respectfully submitted,

 */s/ R. Bruce Carlson*               */s/ R. Frederick Walters*
**CARLSON LYNCH LTD**               **WALTERS, BENDER,**
PNC Park                            **STROHBEHN & VAUGHAN**
115 Federal Street, Suite 210       2500 City Center Square
Pittsburgh, PA 15212                1100 Main
(412) 322-9243 (Telephone)          Kansas City, Missouri 64105
(412) 321-0246 (Facsimile)          (816) 421-6620 (Telephone)
R. Bruce Carlson, Esq.              (816) 421-4747 (Facsimile)
                                    R. Frederick Walters, Esq.

*Interim Co-Lead Counsel*            *Interim Co-Lead Counsel*

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Motion for Class Certification    Pg 5 of 42
Case 2:03-cv-00425-AJS    Document 65    Filed 06/21/13    Page 4 of 4

Robert S. Wood
James L. Ward, Jr.
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
(843) 727-6555

-and-

Daniel O. Myers
LAW OFFFICES OF DANIEL O. MYERS
Dingeman, Dancer & Chistopherson, P.C. (of
counsel)
100 Park Street
Traverse City, Michigan 49684
P: (231) 929-0500 ext. 122
F: (231) 929-0504

Scott C. Borison
LEGG LAW FIRM, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016
(301) 620-1018 (Facsimile)

-and-

Franklin R. Nix
LAW OFFICES OF FRANKLIN NIX
1020 Foxcroft Road, N.W.
Atlanta, GA 30327-2624
(404) 261-9759
(404) 261-1458 (Facsimile)

**Additional Counsel for Plaintiffs**

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification   Pg 6 of 42
Case 2:03-cv-00425-AJS   Document 607   Filed 06/24/13   Page 1 of 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA SECOND MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Case No. 03-0425<br>Case No. 02-01201<br>Case No. 05-0688<br>Case No. 05-1386<br><br>Hon. Arthur J. Schwab |

THIS DOCUMENT RELATES TO ALL MDL ACTIONS

## ORDER CERTIFYING CLASS

AND NOW, this _____ day of _____, 2013, upon consideration of Plaintiffs'

Motion for Class Certification (Doc. No. _____) ("Motion") and all related submissions, IT IS

HEREBY ORDERED that Plaintiffs' Motion is GRANTED and the following class and sub-

classes are certified:

### GENERAL CLASS

All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling, for the period May 1998-December 2002.

All of the named Plaintiffs are appointed as representatives of the General Class.

### SUB-CLASSES

Sub-Class 1:  (RESPA ABA Disclosure Sub-Class) (Plaintiffs:  Philip and Jeannie Kossler)--All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-October 1998;

Sub-Class 2:  (RESPA Kickback Sub-Class) (Plaintiffs:  Brian and Carla Kessler;  John and Rebecca Picard)--All persons nationwide who obtained a

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:30    Exhibit 9 -
Case 2:03-cv-00425-AJS    Document 607-1    Filed 06/23/13    Page 2 of 3
Motion for Class Certification    Pg 7 of 42

second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period October 1998-November 1999;

Sub-Class 3: (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs: Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1, 2001-May 1, 2002;

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs: All Plaintiffs other than the Nixons, Gaskins and Wasems)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-December 2002;

Sub-Class 5: (RICO Sub-Class) (Plaintiffs: John and Rebecca Picard; Brian and Carla Kessler)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-November 1999.

The proposed Plaintiffs for each of the Sub-Classes noted above are hereby

appointed as representatives for those Sub-Classes.

IT IS FURTHER ORDERED that the class claims and issues shall be the claims

set forth in Plaintiffs' Joint Consolidated Amended Complaint (Doc. No. 507) and the

corresponding defenses to said claims:

(1) Plaintiffs' claims for violations of the RESPA ABA disclosure requirements

(for the period May 1998-October 1998);

(2) Plaintiffs' claims for violations of the RESPA anti-kickback and unearned fee

requirements (Section 800 Origination Fees) (for the period October 1998-

November 1999);

(3) Plaintiffs' claims for violations of TILA/HOEPA;

(4) Plaintiffs' claims for violations of RICO;

(5) The defenses set forth to each of the above claims; and,

(6) The proper measure of damages for Plaintiffs and each member of the certified class,

in the event that Plaintiffs establish liability on one or more of their claims.

IT IS FURTHER ORDERED that R. Bruce Carlson (and the law firm Carlson Lynch Ltd.) and

R. Frederick Walters (and the law firm Walters Bender Strohbehn & Vaughan) are appointed as

co-lead counsel for the Class, and that the following law firms shall serve as counsel for the

class:  Richardson, Patrick, Westbrook & Brickman; The Law Offices of Daniel O. Myers; Legg

Law Firm; Law Offices of Franklin Nix.

This Court shall hereafter enter such further and additional orders relating to class notice

and other proceedings as may be required to expeditiously advance the administration and

disposition of this case.


BY THE COURT,


_____

Arthur J. Schwab
United States District Judge

12-12020-mg   Doc 4454-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Case 2:03-cv-00425-AJS   Document 609   Filed 06/21/13   Page 1 of 28
Motion for Class Certification   Pg 9 of 42

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA SECOND MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674 |
| | Case No. 03-0425 |
| | Case No. 02-01201 |
| | Case No. 05-0688 |
| | Case No. 05-1386 |
| | Hon. Arthur J. Schwab |

### THIS DOCUMENT RELATES TO ALL MDL ACTIONS

## MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**CARLSON LYNCH LTD**
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
(412) 322-9243 (Telephone)
(412) 321-0246 (Facsimile)
R. Bruce Carlson, Esq.

*Interim Co-Lead Counsel*

**WALTERS, BENDER, STROHBEHN & VAUGHAN**
2500 City Center Square
1100 Main
Kansas City, Missouri 64105
(816) 421-6620 (Telephone)
(816) 421-4747 (Facsimile)
R. Frederick Walters, Esq.

*Interim Co-Lead Counsel*

12-12020-mg    Doc 4154-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:09-cv-00425-AJS    Document 609    Filed 06/21/13    Page 2 of 28
Motion for Class Certification    Pg 10 of 42

Robert S. Wood
James L. Ward, Jr.
RICHARDSON, PATRICK, WESTBROOK
& BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC 29464
(843) 727-6555

*-and-*

Daniel O. Myers
LAW OFFFICES OF DANIEL O. MYERS
Dingeman, Dancer & Chistopherson, P.C. (of
counsel)
100 Park Street
Traverse City, Michigan 49684
P: (231) 929-0500 ext. 122
F: (231) 929-0504

Scott C. Borison
LEGG LAW FIRM, LLC
5500 Buckeystown Pike
Frederick, MD 21703
(301) 620-1016
(301) 620-1018 (Facsimile)

*-and-*

Franklin R. Nix
LAW OFFICES OF FRANKLIN NIX
1020 Foxcroft Road, N.W.
Atlanta, GA 30327-2624
(404) 261-9759
(404) 261-1458 (Facsimile)

**<u>Additional Counsel for Plaintiffs</u>**

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:03-cv-00425-AJS    Document 609    Filed 06/21/13    Page 3 of 28
Motion for Class Certification    Pg 11 of 42

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   THE CLASS OF PERSONS AND THE CLAIMS
      AND ISSUES TO BE CERTIFIED ...........................................................................2

      A.    Class of Persons ...............................................................................................2
      B.    The Kickback Scheme (RESPA Claims). ........................................................3
      C.    The TILA/HOEPA Claims ..............................................................................8
      D.    The RICO Claims ..........................................................................................11

III.  THE RULE 23 REQUIREMENTS ARE MET .......................................................14

      A.    The Rule 23(a) Prerequisites Are Satisfied ..................................................14
            1.   Numerosity ...........................................................................................15
            2.   Commonality of Issues ..........................................................................15
            3.   Typicality of Claims ..............................................................................16
            4.   Adequacy of Representation ..................................................................17

      B.    The Rule 23(b) Prerequisites Are Satisfied ...................................................18
            1.   Predominance ........................................................................................18
            2.   Superiority .............................................................................................18
            3.   Manageability ........................................................................................19

IV.   CONCLUSION ........................................................................................................20

12-12020-mg    Doc 4454-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:08-cv-00423-AJS    Document 609    Filed 06/21/13    Page 4 of 28
Motion for Class Certification    Pg 12 of 42

## TABLE OF AUTHORITIES

### CASES

*Alexander v. Washington Mut., Inc.*, 2012 WL 6021098 (E.D. Pa. Dec. 4, 2012)..........................7

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009)....................................................7

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...............................................................18

*Belmont v. Associates Nat. Bank (Delaware)*, 219 F.Supp.2d 340 (E.D.N.Y. 2002)..................11

*Bradford v. WR Starkey Mortg. LLP*,
    2008 WL 4501957 (N.D. Ga. Feb. 22, 2008) .......................................................................8

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008) ....................................................7

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...............................2, 12, 19–20

*Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226 (E.D. Pa. 1999) ...............................................13

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)....................................................................12

*Hickey v. Great W. Mortg. Corp.*, 158 F.R.D. 603 (N.D. Ill. 1994) ............................................11

*Hoxworth v. Blinder Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) ............................12, 14

*Inge v. Rock Fin. Corp.*, 388 F.3d 930 (6th Cir. 2004) .................................................................9

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3rd Cir. 2005) ("*CBNV I*") ...................1, 8–11, 15–19

*In re Cmty. Bank of N. Va.*, 622 F.3d 275 (3rd Cir. 2010) ("*CBNV II*").......................2, 8, 14, 17

*In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472 (W.D. Pa. 1999) ...............................................8

*In re Plastics Additives Antitrust Litig.*, 2006 WL 6172035
    (E.D. Pa. Aug 31, 2006) .....................................................................................................19

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    148 F.3d 283 (3d Cir. 1998) ...............................................................................................16

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    962 F.Supp. 450 (D.N.J. 1997) ...........................................................................................18

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................19

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ...............................................................13

*Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242 (E.D. Pa. 2008) ..........................7

12-12020-mg   Doc 4054-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Case 2:03-cv-00429-AJS   Document 609   Filed 06/21/13   Page 6 of 28
Motion for Class Certification    Pg 13 of 42

*Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239 (3d Cir. 2001) ......................................14

*Meyer v. CUNA Mutual Group*, 2006 WL 197122 (W.D. Pa. Jan. 25, 2006) ............................20

*Negrete v. Allianz Life Ins. Co. of North America*,
    238 F.R.D. 482 (C.D. Cal. 2006) ...............................................................................................13

*Potomac Elec. Power Co. v. Electric Motor and Supply, Inc.*,
    262 F.3d 260, 265 (4th Cir. 2001) .............................................................................................13

*Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384 (3d Cir. 2005) ....................................9

*Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232 (W.D. Pa. 2008) ........................................20

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ...................................................15

*Sykes v. Mel Harris and Assocs., LLC.*, 285 F.R.D. 279 (S.D.N.Y. 2012) ..................................8

*Veal v. Crown Auto Dealerships, Inc.*, 2006 WL 435693 (M.D. Fla. 2006) ...............................8

*Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179 (3d Cir. 2006) ...............................................20

*Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541 (2001) .............................................................1, 15

*Weil v. The Long Island Sav. Bank*, 200 F.R.D. 164 (E.D. Pa. 2008)....................................7, 13

*Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3d Cir. 2007)...............................................13

*Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173 (W.D. Pa. 2006)..........................................17, 20

## RULES

Fed. R. Civ. P. 23 .............................................................................................................*passim*

## STATUTES

12 U.S.C. §§ 2601 *et seq.* ...............................................................................................*passim*

15 U.S.C. §§ 1601 *et seq.* ...............................................................................................*passim*

18 U.S.C. § 1956...............................................................................................................12

18 U.S.C. § 1962...............................................................................................................11

18 U.S.C. § 1964...............................................................................................................13

18 U.S.C. §§ 1341, 1343 ..................................................................................................11

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Motion for Class Certification    Pg 14 of 42
Case 2:09-cv-00429-AJS    Document 609    Filed 06/21/13    Page 6 of 28

## REGULATIONS

12 C.F.R. § 226 ................................................................................................................ 8–12

24 C.F.R. § 3500.8 ................................................................................................................ 12

12-12020-mg    Doc 4154-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:03-cv-00425-AJS    Document 609    Filed 06/21/13    Page 7 of 28
Motion for Class Certification    Pg 15 of 42

**"The applicant's principals have an attitude of utter disdain for compliance with laws and
regulations applicable to the mortgage lending/brokering business."[1]**

## I.    INTRODUCTION

The Joint Consolidated Amended Class Action Complaint ("JCAC") (Doc. No. 507)

alleges that Plaintiffs and in excess of 22,000 putative Class Members were charged unlawful

fees and provided with fraudulent settlement disclosures as part of a national predatory lending

scheme involving second mortgage loans that were originated by Community Bank of Northern

Virginia ("CBNV").[2]  Individually and on behalf of a putative national class, Plaintiffs seek

monetary damages for violations of the Real Estate Settlement Procedures Act ("RESPA"), the

Truth in Lending Act ("TILA"), the Home Ownership and Equity Protection Act ("HOEPA"),

and the Racketeer Influenced and Corrupt Organizations Act ("RICO").

These are paradigmatic class claims raising common questions that are readily

susceptible to common answers.  *See*, *e.g.*, *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551

(2011).  As such, the Rule 23(a) requirements of numerosity, commonality, typicality and

adequacy of representation are easily satisfied, as are the additional Rule 23(b) requirements of

predominance and superiority.  In recognition of this fact, the Third Circuit has twice held that

these claims satisfy the elements of Rule 23 (with one no longer applicable exception).  *See In re*

*Community Bank of N. Va. and Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*,

418 F.3d 277, 303, 308, 309 (3d Cir. 2005) ("*CBNV I*") (finding that: "the numerosity, typicality,

---

[1] *See* Revised License Denial for Calusa Investments, Virginia State Corporation Commission
Bureau of Financial Institutions, attached to Declaration of R. Bruce Carlson and R. Fred
Walters in Support of Class Certification as Ex. 4 ("Carlson/Walters Declaration").  The
Shumway/Bapst principals created Calusa Investments after terminating the business
relationships at issue in this litigation.  This quote relates to the Virginia mortgage banking
regulators' review of the mortgage lending activity challenged in this litigation.
[2] Defendant PNC, Bank N.A., is the successor in interest to CBNV.

1

12-12020-mg    Doc 4054-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:08-cv-00429-AJS   Document 609    Filed 06/21/13    Page 8 of 28
Motion for Class Certification    Pg 16 of 42

and commonality prongs are met," *id.* at 303, that adequacy of representation needs further

consideration, *id.* at 308, and that the record supports "a finding of predominance" and that there

is "no reason . . . why a Rule 23(b)(3) class action is not the superior means to adjudicate this

matter," *id.* at 309); *Community Bank of N. Va. and Guaranty Nat'l Bank of Tallahassee Second

Mortgage Loan Litig.*, 622 F.3d 275, 284 (3d Cir. 2010) ("*CBNV II*") (confirming that all the

Rule 23 elements save the adequacy issue have been established).[3]

In the face of this law of the case, and despite twice successfully moving Judge Lancaster

to certify these claims and twice arguing to the Third Circuit that such claims easily satisfy the

elements of Rule 23—a proposition with which the Third Circuit unambiguously agreed save the

adequacy issue—PNC is presumably preparing to argue precisely the opposite position to this

Court.  However, PNC should be judicially estopped from changing its position regarding the

propriety of class certification with respect to any Rule 23 element ***other than manageability***.

*Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 659-60 (7th Cir 2004) (Posner, J.) (holding that

the doctrine of judicial estoppel precludes a defendant who previously championed class

certification in the context of a settlement class from later opposing certification of a litigation

class (except as to manageability) after the proposed settlement was not approved).

PNC's duplicity notwithstanding, and as the Third Circuit has already found and as is

highlighted below, the claims at issue could not be more straightforward and susceptible to class

proof.

---

[3] The Third Circuit's primary concern regarding the propriety of class certification derived from
the fact that the prior iteration of the claims asserted by the named plaintiffs did not include
TILA/HOEPA claims.  This concern has been eliminated as previously antagonistic counsel for
the original named plaintiffs and objecting plaintiffs combined their efforts in the best interests
of the class and—as co-counsel—filed the JCAC asserting the TILA/HOEPA claims.

## II.     THE CLASS OF PERSONS AND THE CLAIMS
## AND ISSUES TO BE CERTIFIED

### A.     Class of Persons[4]

Pursuant to Rule 23, Brian W. and Carla M. Kessler, Flora A. Gaskin, Philip F. and

Jeannie C. Kossler, John and Kathy Nixon, John and Rebecca Picard, William and Ellen Sabo,

and Tammy and David Wasem (collectively, "Plaintiffs")[5] respectfully request that the Court

certify each of the below listed claims asserted in the JCAC, which is incorporated herein by

reference, for class treatment.

1.     Violations of RESPA (Count I);

2.     Violations of TILA and HOEPA for Inaccurate and Understated Material
       Disclosures (Count II);

3.     Other, Multiple Violations of the Substantive Provisions of TILA and HOEPA
       (Count III); and

4.     Violations of RICO (Count V).

As set forth in the accompanying Motion for Class Certification, the "Class" that Plaintiffs seek

to certify is defined as follows:

> All persons nationwide who obtained a second or subordinate, residential,
> federally related, non purchase money, mortgage loan from CBNV that was
> secured by residential real property used by the Class Members as their principal
> dwelling, for the period May 1998- December 2002.

Plaintiffs also seek to certify the following sub-classes:

---

[4] The class of persons and claims are set forth in light of the Court's Order granting the dismissal of the claims against the FDIC as receiver for the Guaranty National Bank of Tallahassee ("GNBT") and the Court's Order granting in part and denying in part the Motion to Dismiss filed by PNC. (Doc. No. 605).

[5] Attached to Carlson/Walters Declaration as Exhibits 5-11 are true and correct copies of standardized loan documents provided to Plaintiffs Brian W. and Carla M. Kessler (Ex. 5), Flora A. Gaskin (Ex. 6), Philip F. and Jeannie C. Kossler (Ex. 7), John and Kathy Nixon (Ex. 8), John and Rebecca Picard (Ex. 9), William and Ellen Sabo (Ex. 10), and Tammy and David Wasem (Ex. 11) in connection with the closing of their CBNV loans.

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:03-cv-00425-AJS    Document 605    Filed 06/21/13    Page 20 of 26
Motion for Class Certification    Pg 18 of 42

Sub-Class 1: (RESPA ABA Disclosure Sub-Class) (Plaintiffs Philip and Jeannie
Kossler) All persons nationwide who obtained a second or subordinate,
residential, federally related, non purchase money, mortgage loan from CBNV
that was secured by residential real property used by the Class Members as their
principal dwelling for the period May 1998-October 1998;

Sub-Class 2: (RESPA Kickback Sub-Class) (Plaintiffs Brian and Carla Kessler;
John and Rebecca Picard) All persons nationwide who obtained a second or
subordinate, residential, federally related, non purchase money, mortgage loan
from CBNV that was secured by residential real property used by the Class
Members as their principal dwelling for the period October 1998-November 1999;

Sub-Class 3: (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs Kathy
and John Nixon; Flora Gaskin; and, Tammy and David Wasem) All persons
nationwide who obtained a second or subordinate, residential, federally related,
non purchase money, mortgage loan from CBNV that was secured by residential
real property used by the Class Members as their principal dwelling for the period
May 1, 2001-May 1, 2002;

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs All
Plaintiffs other than the Nixons, the Wasems, and Flora Gaskin) All persons
nationwide who obtained a second or subordinate, residential, federally related,
non purchase money, mortgage loan from CBNV that was secured by residential
real property used by the Class Members as their principal dwelling for the period
May 1998-December 2002;

Sub-Class 5: (RICO Sub-Class) (Plaintiffs John and Rebecca Picard; Brian and
Carla Kessler) All persons nationwide who obtained a second or subordinate,
residential, federally related, non purchase money, mortgage loan from CBNV
that was secured by residential real property used by the Class Members as their
principal dwelling for the period May 1998-November 1999.

**B. The Kickback Scheme (RESPA Claims).**

RESPA, among other things, expressly prohibits payments or referrals for kickback of

mortgage settlement business. 12 U.S.C. § 2607(a). In a textbook violation of RESPA's anti-

kickback provisions, the entity that received the overwhelming majority of the hundreds of

millions of dollars in mortgage settlement fees generated from the unlawful business model at

issue in this case did not perform any settlement services in connection with those loans and was

in fact contractually precluded from providing any settlement services. Therefore, it was

4

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 21 of 26
Motion for Class Certification   Pg 19 of 42

unlawful for this entity to be paid from loan settlement proceeds. The kickback scheme was

uniformly concealed from the borrowers in standardized loan documents. Specifically, the

named Plaintiffs and every putative Class Member received loan documents that falsely

represented that the settlement fees were being paid to CBNV, PNC's predecessor in interest,

when in fact almost all of the fees were being kicked back to an entity that was never disclosed

to the borrowers. This scheme is easily demonstrated by comparing the aforementioned

standardized loan documents that were used to close the loans of the named Plaintiffs and every

putative Class Member, the documents that created the business structure at issue, and financial

reporting documents filed by CBNV with the Securities and Exchange Commission ("SEC").[6]

Each borrower received a HUD-1 Settlement Statement indicating that CBNV was

retaining an origination fee of approximately 10% of the original balance of the loan. *See* HUD-

1s for Brian and Carla Kessler and Rebecca and John Picard, attached to Carlson/Walters

Declaration as Exs. 5 and 9. Every putative Class Member received a HUD-1 form at closing

that showed a similar allocation of settlement fees, as demonstrated by the relevant excerpts of

the Kessler HUD-1 set forth below.

---

[6] The RESPA allegations in the JCAC challenging the kickback of Section 800 origination fees
apply to loans closed between October 1998 and November 1999. JCAC at ¶ 77. Given that the
date of filing for the first complaint addressing this conduct was May 1, 2001 (*Davis v. CBNV*,
02-cv-1201 (W.D. Pa.))—more than one year after the kickback structure involving CBNV loans
had been terminated—every putative Class Member relies on equitable tolling to assert a timely
RESPA claim. Thus, by definition, there is no potential intra-class conflict with respect to this
claim. For those loans that were closed during the five month period prior to the inception of the
kickback scheme (between May 1998 and October 1998), CBNV violated the Affiliated
Business Arrangement ("ABA") disclosure requirements of RESPA. JCAC at ¶¶ 69-70. This
violation is easily proven by common evidence in that CBNV did not provide the required ABA
disclosure form to any borrower who closed a loan during this period.

**Settlement Statement**
Transactions without Seller

| Name & Address of Borrower: | Name & Address of Lender: |
|---|---|
| BRIAN W. KESSLER and CARLA M. KESSLER | COMMUNITY BANK OF NORTHERN |
| | 11417 SUNSET HILLS RD. STE |
| 6466 RT 908, Tarentum, PA 15084 | RESTON, VA 20190 |
| Property Location: (if different from address) | Settlement Agent: |
| | TITLE AMERICA |
| 6466 RT 908 | Place of Settlement: |
| Tarentum, PA 15084 | 11417 SUNSET HILLS RD STE |
| Loan Number: | Settlement Date: |
| SLK-68509 | April 30, 1999 |

| | L. SETTLEMENT CHARGES | |
|---|---|---|
| 800 | Items Payable in Connection with Loan | |
| 801. | Loan origination fee to COMMUNITY BANK OF NORTHERN VIRGINIA | 2,640.00 |
| 802. | Loan discount to COMMUNITY BANK OF NORTHERN VIRGINIA | 990.00 |
| 803. | Appraisal fee to | |
| 804. | Credit report to | |
| 805. | Inspection fee to | |
| 806. | Mortgage insurance application fee to | |
| 807. | Application Fee to COMMUNITY BANK OF NORTHERN VIRGINIA | 95.00 |
| 808. | | |
| 809. | | |
| 810. | | |
| 811. | Underwriting Fee to COMMUNITY BANK OF NORTHERN VIRGINIA | 185.00 |

While Plaintiffs and putative Class Members were each provided a HUD-1 at closing indicating that origination fees of 10% or more were being collected from each borrower and paid to CBNV, CBNV confirmed to the SEC that it was retaining only 1-2% from each loan in origination fees and that the remainder was being paid to an undisclosed third-party entity (i.e., the Shumway/Bapst Organization).

NOTE D—LOANS HELD FOR SALE

The Bank has established agreements with several mortgage brokers whereby the Bank will fund first and second trust loans approved by the broker which meet the Bank's specified lending criteria. The Bank then sells the loans to outside investors at agreed-upon prices. The Bank retains a mortgage origination fee of 1 to 2 percent on each transaction. Any remaining fees generated from the origination of the loan and subsequent sale in excess of costs incurred are paid to the mortgage broker. Losses incurred as a result of selling loans at a discount are charged back to the mortgage broker. The Bank does not retain servicing rights on any loans sold to outside investors.

*See* Excerpt from CBNV 1998 Annual Report attached to Carlson/Walters Declaration as Ex. 12.

The actual allocation of origination fees that was disclosed to the SEC but concealed from borrowers by the fraudulent HUD-1s was the allocation mandated by the Consulting Agreement between the Shumway/Bapst Organization and CBNV. *See* Consulting Agreement attached to Carlson/Walters Declaration as Ex. 13, at ¶ 8 and Addenda A-D. As noted, not only was the Shumway/Bapst Organization not performing any settlement services in connection with

the loans at issue (notwithstanding that it was receiving the bulk of the settlement fees pursuant

to the terms of the Consulting Agreement), it was ***contractually precluded from providing any***

***settlement services***. *See* Ex. 13 to Carlson/Walters Declaration at ¶ 3; *see also* Supplemental

Pre-Filed Testimony of David B. Shumway submitted to the Commonwealth of Virginia State

Corporation Commission attached to Carlson/Walters Declaration as Ex. 14, at 8, Q56-A58. This

arrangement is an unambiguous and fundamental violation of RESPA.

   Just as PNC's RESPA liability is easily proven, so too are the resulting damages. Each

putative Class Member's RESPA damages are established by a simple calculation derived from

the fee allocation information set forth in the HUD-1s every loan at issue. Specifically, PNC is

liable for three times the amount of the Section 800 fees denoted as being paid to CBNV in the

HUD-1s. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 761 (3d Cir 2009) (borrower is

entitled to RESPA damages consisting of three times any charge paid for the service connected

to the kickback or fee split).[7] In short, it is difficult to conceive of claims that would be more

easily tried on a class basis than the RESPA kickback claims at issue in this case.[8]

---

[7] The propriety of class certification in RESPA cases where borrowers paid settlement fees
to a party that has provided no settlement services is discussed at length in *Busby v. JRHBW
Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008); *see also Weil v. The Long Island Sav. Bank*, 200
F.R.D. 164 (E.D.N.Y. 2001); *Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242
(E.D. Pa. 2008); *Alexander v. Washington Mut., Inc.*, 2012 WL 6021098 (E.D. Pa. Dec. 4, 2012).
[8] PNC's counsel told the Court at the June 12 status conference that PNC's "best" argument in
opposition to class certification is that some of the putative class members' claims must rely on
equitable tolling to be timely. Any such argument as a basis to deny certification would be
baseless as it is the wrongful conduct of the Banks that gives rise to tolling, which conduct was
common to all of the thousands of borrowers.
Through a systematic and uniform scheme involving standardized loan closing documentation,
the borrowers paid excessive and illegal closing costs and were not provided accurate disclosures
of the true costs of the loan. The key to the scheme was that it was hidden behind the morass of
standardized loan closing papers and/or the true information about those fees and costs and who
was receiving them did not appear in the loan documents. Equitable tolling is available to
aggrieved consumers in precisely the circumstance where the HUD-1 is fraudulent, *see, e.g.,*

### C. The TILA/HOEPA Claims

TILA requires standardized disclosure of information about the costs of credit. HOEPA

is a subset of TILA which addresses certain high cost (high annual percentage rate ("APR")

and/or excessive fees and costs) mortgage loans. *See* 15 U.S.C. § 1602(aa) and TILA's

"Regulation Z," 12 C.F.R. § 226.32; *see also* Affidavit of Margot Saunders attached to

Carlson/Walters Declaration as Ex. 15, ¶¶ 15-18. HOEPA requires additional *Miranda*-type

warnings about the high cost of the loan to be conspicuously provided at least three days before

the transaction is consummated. *See* 15 U.S.C. § 1639. Key among those material disclosures is

to accurately tell the prospective borrower the true cost of the loan in terms of the APR.[9] *See* 15

U.S.C. § 1602(v) (finance charges and APR are material disclosures). CBNV uniformly provided

a materially inaccurate (understated) APR to the putative Class Members in violation of 15

U.S.C. § 1639 and 12 C.F.R. § 226.32, which gives rise to strict liability. *See CBNV I*, 418 F.3d

at 277.

---

*Bradford v. WR Starkey Mortg.*, 2008 WL 4501957, at *3-4 (N.D. Ga. 2008), or contains
inaccurate disclosures, *Veal v. Crown Auto Dealerships, Inc.*, 2006 WL 435693, at *3 (M.D. Fla.
2006). Moreover, in this exact circumstance, other courts have certified a class action and
rejected an "individualized inquiry" argument. *See In re Flat Glass Antitrust Litig.*, 191 F.R.D.
472, 488 (W.D. Pa. 1999) (Ziegler, J.) ("We agree with plaintiffs and find that the issue of the
fact concealment is the predominating question, even though other individual questions are
present, because the inquiry necessarily focuses on defendants' conduct, that is, what defendants
did, rather than what plaintiffs did."); *see also Sykes v. Mel Harris and Assocs., LLC.*, 285 F.R.D.
279, 292 (S.D.N.Y. 2012) (in certifying RICO and FDCPA claims relating to a common scheme
to fraudulently obtain default judgments to collect debts, the court rejected defendants' argument
that typicality was not met because some members of the class may need to rely on equitable
tolling to assert a timely claim). Perhaps most significantly, in regard to the fact that in this case
some class members rely on an equitable theory to establish a timely claim and others do not, the
Third Circuit noted that such circumstance "is by no means fatal to whether these cases can be
maintained as a class action. The most obvious remedy would be to create subclasses…" *CBNV
II*, 622 F.3d at 304.

[9] The APR is the measurement, on an annual basis, of the rate of return to the creditor based on
all the finance charges imposed, and not just the rate of interest. As such, it is among the most
important of the disclosures mandated by TILA and HOEPA.

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification   Pg 23 of 42
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 25 of 26

The APR is calculated through a mathematical formula derived from the Amount

Financed (funds actually available to the borrower) and Finance Charge (the costs incidental to

the extension of credit). These two numbers are mutually exclusive; that is, a settlement charge is

allocated to either one or the other but not to both.  The higher the finance charges, the higher the

APR.  Under TILA, all settlement charges are presumed to be part of the Finance Charge. *See* 15

U.S.C. § 1605(a); 12 C.F.R. § 226.4.  There are exceptions to this rule.  Items that can be

excluded from the Finance Charge include "[f]ees for title examination, abstract of title, title

insurance, property survey, and similar purposes" but only if they are "bona fide and reasonable

in amount." 12 C.F.R. §226.4(c)(7); *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 932 (6th Cir. 2004);

Official Staff Commentary to § 226.4 at ¶4(c)(7).

CBNV, as a routine and typical practice, improperly *excluded* the section 1100 title

charges from its calculations of the Finance Charge.[10]  As a result, the *disclosed* Finance Charge

---

[10] Evidence that such charges are not bona fide or reasonable includes reports of the OCC, the
testimony of CBNV insiders, and expert opinion testimony. *See, e.g.*, Affidavit of William
Dodson, attached to Carlson/Walters Declaration as Ex. 16 and Affidavit of John Coghlan,
attached to Carlson/Walters Declaration as Ex. 17.  More specifically, the purported title
examination consisted exclusively of merely reviewing the work of another settlement services
provider, most often the "abstracts" provided by General American Title Corp.  Such a review of
the services of another settlement service provider does not constitute "an actual, distinct,
additional service permissible under HUD's regulations." HUD Policy Statement of 2001, at 26,
n.7, attached to Carlson/Walters Declaration as Ex. 18.  Moreover, such an abstract is not a title
exam. *See* Dodson Affidavit, ¶ 9A. CBNV also charged a "marked up" charge (HUD-1 Line
1102) to obtain a rudimentary property report (which is not a true title abstract) and illegally
passed this marked up charge onto the putative Class Members. *Santiago v. GMAC Mortgage
Group, Inc.*, 417 F.3d 384, 389 (3d Cir. 2005); 12 U.S.C. § 2607(b).
    Beyond such proof that the charges were not bona fide or reasonable, the fact that the title
services were mandatory precludes them from being excluded from the calculation of the finance
charge. *See* 15 U.S.C. § 1605(a)); 12 C.F.R. § 226.4(a)(1)-(2); *see also Inge*, 281 F.3d at 619 ("If
the creditor required a third party to perform a service, is aware that the third party will perform
the service, and imposes a separate charge on the consumer for the performance of the service,
the fee is a disclosable finance charge."); 12 C.F.R. § 226, Supp. I, Official Staff Interpretations,
§ 226.4(a)(2)-2.

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Case 2:03-cv-00425-AJS    Document 605    Filed 06/21/13    Page 26 of 26
Motion for Class Certification    Pg 24 of 42

on the putative Class Members' loans was inaccurate and understated and violated TILA and

HOEPA at 15 U.S.C. §§ 1605(f), 1635, 1638 and 1639, and Regulation Z, at 12 C.F.R. § 226.23.

And having improperly calculated the Finance Charge and the Amount Financed,  CBNV

inaccurately disclosed the APR in the three-day advance notice required by HOEPA and in the

TILA Disclosure Statement in violation of TILA and HOEPA at 15 U.S.C. §§ 1606(c), 1635,

1638 and 1639, and 12 C.F.R. § 226.22.

As a result, this APR disclosure violation entitles Class Members to statutory damages

under 15 U.S.C. § 1640.[11] For violations of HOEPA, at 15 U.S.C. § 1639, each putative Class

Member is entitled to "an amount equal to the sum of all finance charges and fees paid by the

consumer…." 15 U.S.C. § 1640(a)(4).  This is a mathematical calculation determinable from the

figures set forth in each putative Class Members' loan payment history and in Defendant's

computerized loan databases.[12]

Because these TILA and HOEPA violations flow from standardized loan documents and

a uniform scheme of improperly excluding certain section 1100 charges from the APR

calculation, these claims particularly lend themselves to class treatment.  And indeed, the Third

Circuit concluded that the HOEPA claims are appropriate for class certification. *CBNV I*, 418

F.3d at 306 ("Whether an individual borrower has a viable TILA or HOEPA claim may be

determinable by conducting simple arithmetic computations on certain figures obtained from the

---

[11] It is estimated that over 87% of the CBNV loans are HOEPA loans with a materially misstated APR calculation. *See* Decl. of Hasbrouck Haynes, attached to Carlson/Walters Decl.as Ex. 19.

[12] If no loan payment histories are available, the same calculation can be performed using borrowers' 1098 forms, or by experts who can very accurately estimate loan amortization using the loan amount, interest rate and duration to pay off (or to the date of the calculation if an active loan).  RFC, the entity that acquired all of the loans at issue, has indicated that it possesses the loan payment histories for putative class members so the need for an expert on this issue is unlikely.

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 27 of 26
Motion for Class Certification   Pg 25 of 42

face of each loan's TILA Disclosure Statement."); *see also Hickey v. Great W. Mortgage Corp.*,
158 F.R.D. 603, 612 (N.D. Ill. 1994) ("The determination of whether the challenged fees were
improperly included in the 'amount financed' or excluded from the 'finance charge' in individual
transactions is a simple ministerial task."). For this reason, the Third Circuit concluded that the
HOEPA claims are appropriate for class certification. *CBNV I*, 418 F.3d at 305-06.

Beyond the materially understated APR, CBNV violated HOEPA in other ways. HOEPA
requires that the disclosures be set forth in conspicuous type, *see* 15 U.S.C. § 1639(a); 12 C.F.R.
§ 226.32(c), and that such notices be received three business days in advance of the loan closing.
15 U.S.C. § 1639(b)(1). CBNV violated these requirements. HOEPA also prohibits the use of
prepayment penalties in certain circumstances including when there is a re-financing by the
original lender. 15 U.S.C. § 1639(c). Despite this prohibition, CBNV included prepayment
penalty and other prohibited provisions. As a result of these additional violations, Plaintiffs are
entitled to additional damage awards under 15 U.S.C. §§ 1639, 1640 and 1641(d); *see Belmont v.
Assocs. Nat. Bank (Delaware)*, 219 F.Supp.2d 340, 345-46 (E.D.N.Y. 2002). These additional
HOEPA claims likewise lend themselves to class treatment because they can be determined by a
review of documents in the loan file and by reference to Defendant's own business records.

### D. The RICO Claims

Plaintiffs allege that CBNV conducted an enterprise through a pattern of racketeering
activity, 18 U.S.C. § 1962(c), and that it conspired with the Shumway-Bapst organization and
others to so act. 18 U.S.C. § 1962(d). This scheme and racketeering activity was dependent upon
the systematic and fraudulent use of the mail and wires, as prohibited by 18 U.S.C. §§ 1341 and
1343. That mail and wire fraud consisted, primarily, of the dissemination of HUD-1 Settlement
Statements which falsely identified CBNV as receiving origination fees, falsely identified

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:20    Exhibit 9 -
Motion for Class Certification    Pg 26 of 42
Case 2:03-cv-00425-AJS    Document 605    Filed 06/21/13    Page 26 of 26

payments to title companies allegedly for services when the services were never performed,

failed to identify the persons receiving payments from the Plaintiffs' loan proceeds and misstated

the APR.  These fraudulent misrepresentations evidenced on the face of the loan document also

give rise to Plaintiffs' claims for violations of the provisions of RESPA, 12 U.S.C. § 2603, 24

CFR § 3500.8, Appendix A, and TILA and HOEPA at 15 U.S.C. §§ 1605(f), 1635, 1638 and

1639 and Regulation Z, at 12 C.F.R. § 226.23.  Additionally, CBNV engaged in acts of money

laundering in violation of 18 U.S.C. § 1956(a) and (h) in its efforts to conceal its involvement in

the scheme and to disseminate money to participants in the enterprise.

As emphasized throughout this brief, the named Plaintiffs and every putative class

member received the same types of federally-mandated disclosures that contained false

representations concerning the legitimacy, amount and recipients of the settlement charges

imposed on the loans as well as inaccurate disclosures about the cost of the loan. Such repeated

and uniform activity establishes a pattern. Evidence of the enterprise is likewise commonly

proven across the class by the same documentary and other evidence that demonstrates the

creation and operation of the predatory lending enterprise. In such a circumstance, where a

common practice of the defendant applies to the plaintiffs, the Third Circuit recognizes that a

class under RICO is properly certified. *See Hoxworth v. Blinder Robinson & Co., Inc.*, 980 F.2d

912 (3d Cir. 1992) (failure to disclose excessive markups on the price of penny stocks);

*Eisenberg v. Gagnon*, 766 F.2d 770, 786-87 (3d Cir. 1985) (reversing denial of class certification

finding that typicality existed in securities action because suit was based on same omissions and

misrepresentations in documents prepared by Defendants).  Notably, lawsuits challenging other

RICO consumer fraud schemes have been approved for class action treatment by many courts.

*See, e.g.*, *Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) (certifying RICO class claims

12

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification   Pg 27 of 42
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 19 of 26

relating to undisclosed referrals in connection with tax refund anticipation loans); *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) (certifying RICO claims under 23(b)(3) brought by virtually every doctor in the United States against virtually every health maintenance organization in the U.S. relating to an alleged conspiracy to underpay billed reimbursements); *Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482 (C.D. Cal. 2006) (certifying consumer class under RICO relating to the fraudulent sale of annuities); *Weil v. Long Island Savings Bank, FSB*, 200 F.R.D. 164 (E.D.N.Y. 2001) (certifying consumer class under RICO, RESPA and TILA in connection with mortgage loan kickback scheme); *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226 (E.D. Pa. 1999) (granting certification for class of consumers when school purported to sell services to students and services turned out to be bogus and a sham).

RICO damages can likewise be determined on a classwide basis. For violations of RICO, the Class members can recover damages that are traceable to the defendants' conduct. *Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 258, n.2 (3d Cir. 2007). These damages would include all bogus and marked up fees, as well as the interest paid on those fees. *See, e.g.*, *Potomac Elec. Power Co. v. Electric Motor and Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001) ("if a party specifically bargains for a service, is told that the service has been performed, is charged for the service, and does not in fact receive the service, it is not appropriate for courts to inquire into whether the service "really" had value as a precondition to finding that injury to business or property has occurred."). And any such damages are trebled. 18 U.S.C. § 1964.

Thus, the same uniform documentary evidence—the class members' HUD-1s and loan payment histories that are used to establish the RESPA and TILA/HOEPA violations, and to calculate the damages for such violations—may also be used to evidence the RICO violations and to calculate damages.

Case 2:03-cv-00425-AJS Document 605 Filed 06/21/13 Page 20 of 26

Lastly, RICO has a four year statute of limitations. *Mathews v. Kidder, Peabody & Co.,
Inc.*, 260 F.3d 239, 245 (3d Cir. 2001). The RICO claims are therefore are timely without the

necessity of equitable tolling. Thus, the RICO action does not fail even if other claims supported

by the same wrongful behavior, such as the RESPA and TILA/HOEPA claims, could be deemed

time barred. *See Hoxworth*, 980 F.2d at 925 (approving expanded class size under RICO claim

despite some of underlying securities claims being arguably time barred).

## III. THE RULE 23 REQUIREMENTS ARE MET

### A. The Rule 23(a) Prerequisites Are Satisfied

Under Rule 23(a), one or more members of a class may sue or be sued as representative

parties on behalf of all members in a class action only if:

1. the class is so *numerous* that joinder of all members is impracticable;

2. there are questions of law or fact *common* to the class;

3. the claims or defenses of the representative parties are *typical* of the claims or
   defenses of the class;

4. The representative parties will fairly and *adequately* assert and protect the
   interests of the class.

Fed. R. Civ. P. 23(a). As noted, the Third Circuit has already ruled on the Rule 23 issues:

> With respect to the District Court's certification decision, we concluded that three
> of the four Rule 23(a) requirements-numerosity, typicality, and commonality-
> were met, as well as the Rule 23(b)(3) predominance and superiority
> requirements. We expressed serious concerns, however, as to whether the
> adequacy requirement of Rule 23(a) could be met, specifically in the context of
> whether the named plaintiffs and class counsel were adequate representatives in
> light of their failure to assert colorable TILA/HOEPA claims . . .
>     *   *   *   *
> The sole disputed Rule 23 requirement in this case, as it was in *Community Bank I*, is
> adequacy of representation.

*CBNV II*, 622 F.3d at 284, 291 (internal citations omitted).

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:29   Exhibit 9 -
Motion for Class Certification   Pg 29 of 42
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 21 of 26

Any issue regarding adequacy has been cured and the other Rule 23 findings are the law of the case. But even without the prior findings of the Third Circuit, as detailed below, the proposed Class easily meets all of the Rule 23 criteria.

### 1.      Numerosity

It is undisputed that there are in excess of twenty thousand loans originated by CBNV at issue. Thus, the numerosity requirement is indisputably satisfied. *See CBNV I*, 418 F.3d at 303.

### 2.      Commonality of Issues

Rule 23(a)(2) requires that there are questions of law or fact common to the class. The Third Circuit has already held that commonality exists regarding the claims at issue. *See CBNV I*, 418 F.3d at 303. That determination is very much in lockstep with recent Supreme Court class certification jurisprudence. *See Dukes*, 131 S.Ct. at 2551 (commonality and predominance are defeated when it cannot be said that there was a common course of conduct in which the defendant engaged with respect to each individual. But commonality is satisfied where common questions generate common answers "apt to drive the resolution of the litigation."); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 299 (3d Cir. 2011) (discussing *Dukes* and holding that commonality existed as to the antitrust claim against DeBeer's for inflating diamond prices because "DeBeer's alleged misconduct and the harm it caused would be common as to all the class members, and would thus inform the resolution of the litigation if it were not settled"). Here, CBNV operated an assembly line generating unlawful loans which included illegal kickbacks, materially inaccurate APR disclosures, and repeated mail and wire fraud and money laundering to facilitate a RICO enterprise.

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:29    Exhibit 9 -
Motion for Class Certification    Pg 30 of 42
Case 2:03-cv-00425-AJS    Document 605    Filed 06/21/13    Page 22 of 26

This uniform course of conduct demonstrates that there are common questions to
which there are common answers. Some of the most obvious common issues of fact and
law include but are not limited to the following:

•     Whether the structure created by CBNV and the Shumway Bapst entities resulted
in an unlawful kickback scheme that was a *per se* violation of RESPA;

•     Whether the putative Class Members are entitled to damages in the amount of
three times all origination fees denoted in their HUD-1s as being payable to
CBNV;

•     Whether CBNV made inaccurate TILA/HOEPA disclosures to the putative Class
Members;

•     Whether CBNV utilized a practice or device whereby the mandatory disclosures
under TILA were not timely made, were not conspicuously made, or did not
disclose that illegal prepayment penalties were imposed;

•     Whether the acts of the Defendants equitably toll the claims of the putative Class
Members;

•     Whether the evidence discussed above proves (1) conduct (2) of an enterprise (3)
through a pattern (4) of racketeering activity.

The existence of commonality cannot be credibly disputed.

**3.    Typicality of Claims**

Plaintiffs' claims in this case are "typical" of the claims alleged on behalf of the Class.

Plaintiffs' claims present the same fact patterns and legal theories that each putative Class

Member would have to present if he or she filed an individual suit. "Because the claims of all

class members here depend upon the existence of the Shumway scheme, 'their interests are

sufficiently aligned [such] that the class representatives can be expected to adequately pursue the

interests of the absentee class members.'" *CBNV I*, 418 F. 3d at 303 (citing *In re Prudential Ins.

Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998)). Indeed, the existence of

typicality is reinforced by the Third Circuit's holding regarding the more exacting requirement of

16

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:29   Exhibit 9 -
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 23 of 26
Motion for Class Certification   Pg 31 of 42

predominance under Rule 23(b)(3): "Just as the record below supports a finding of typicality, it

also supports a finding of predominance. All plaintiffs' claims arise from the same alleged

fraudulent scheme." *CBNV I*, 418 F.3d at 309.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect

the interests of the class." Regarding this issue, the Third Circuit stated:

> [T]he adequacy requirement is designed to 'uncover conflicts of interest between
> the named parties and the class they seek to represent.' (internal citation omitted)
> Here, there is an obvious and fundamental intra-class conflict of interest (the same
> we identified in *Community Bank I*): the named plaintiffs' claims-whether under
> RESPA, TILA, or HOEPA-are untimely, and they must rely on equitable tolling
> to save them . . . . **As we noted in *Community Bank I*, however, this intra-class
> conflict is by no means fatal to whether these cases can be maintained as a
> class action. The most obvious remedy would be to create subclasses, as we
> suggested in our prior opinion** . . . .

*CBNV II*, 622 F.3d at 304 (emphasis added). Any doubts about adequate representation or

potential conflicts should be resolved in favor of upholding the class. *Zeno v. Ford Motor Co.,

Inc.*, 238 F.R.D. 173, 188 (W.D. Pa. 2006).

Plaintiffs have eliminated any issue in this context by suggesting sub-classes.

Rule 23(g)(4) also states: "Class counsel must fairly and adequately represent the

interests of the class." The Third Circuit's questions regarding the adequacy of counsel

for the settling plaintiffs derived from the pre-*CBNV II* decision not to assert

TILA/HOEPA claims *CBNV II*, 622 F.3d at 308. After remand in *CBNV II*, counsel for

the settling Plaintiffs allied with counsel for the objecting class members to eliminate the

concerns expressed by the Third Circuit. Most fundamentally, Plaintiffs filed the JCAC

asserting TILA/HOEPA claims on behalf of the entire putative class. Therefore, by

definition, any issues with respect to adequacy of counsel have been eliminated.

12-12020-mg  Doc 4451-9  Filed 07/31/13  Entered 07/31/13 20:46:29  Exhibit 9 -
Motion for Class Certification  Pg 32 of 42
Case 2:03-cv-00425-AJS  Document 605  Filed 06/21/13  Page 24 of 26

**B.**     <u>The Rule 23(b) Prerequisites Are Satisified</u>

In addition to the four requirements of Rule 23(a), Plaintiffs must also satisfy one of three criteria in Rule 23(b). In this case, Plaintiffs seek certification under Rule 23(b)(3), which requires that questions of fact or law *predominate* over questions affecting only individual class members and that the class device be *superior* to any other method to adjudicate the controversy.

**1.**     **Predominance**

The Supreme Court has noted that the predominance requirement is easily met in consumer protection cases such as this one. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiffs and the putative Class Members allege statutory injury by a common course of conduct. These allegations "provide[] the 'single central issue' required to ensure predomination of common questions over individual issues." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F.Supp. 450, 511-12 n.45 (D.N.J. 1997) (citing cases). The Third Circuit confirmed the existence of predominance in this case as follows: "Just as the record below supports a finding of typicality, it also supports a finding of predominance. All plaintiffs' claims arise from the same alleged fraudulent scheme." *CBNV I*, 418 F.3d at 309.

**2.**     **Superiority**

Rule 23(b)(3) requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy," and it provides a non-exhaustive list of factors to consider in determining superiority, which include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the difficulties likely to be encountered in the management of a class

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification   Pg 33 of 42
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 25 of 26

action. Fed. R. Civ. P. 23(b)(3). The Third Circuit reached the following conclusion regarding

the existence of superiority: "We find no reason . . . why a Rule 23(b)(3) class action is not the

superior means to adjudicate this matter." *CBNV I*, 418 F.3d at 309.

### 3. Manageability

As noted, the sole issue that PNC should be permitted to challenge regarding class

certification is manageability. However, it is well-settled that the issue of manageability is rarely

an adequate basis to deny class certification. *See, e.g.*, *In re Plastics Additives Antitrust Litig.*,

2006 WL 6172035, *13 (E.D. Pa. Aug 31, 2006) (Davis, J.) ("[D]enying certification on the sole

ground of the unmanageability of the action, at least at the class certification stage, is

'disfavored.'"); *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)

("[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be

unmanageable is disfavored and 'should be the exception rather than the rule.'").

And, as Judge Posner explained in *Household International*, courts have many options in

addressing manageability issues:

> The number of class members need have no bearing on the burdensomeness of
> litigating a violation [of RICO]. Whether particular members of the class were
> defrauded and if so what their damages were are another matter, and it may be
> that if and when the defendants are determined to have violated the law separate
> proceedings of some character will be required to determine the entitlements of
> the individual class members to relief. That prospect need not defeat class
> treatment of the question whether the defendants violated RICO. Once that
> question is answered, if it is answered in favor of the class, a global settlement
> along the lines originally negotiated (though presumably with different dollar
> figures) will be a natural and appropriate sequel. And if there is no settlement,
> that won't be the end of the world. Rule 23 allows district courts to devise
> imaginative solutions to problems created by the presence in a class action
> litigation of individual damage issues. Those solutions include "(1) bifurcating
> liability and damage trials with the same or different juries; (2) appointing a
> magistrate judge or special master to preside over individual damages
> proceedings; (3) decertifying the class after the liability trial and providing notice
> to class members concerning how they may proceed to prove damages; (4)
> creating subclasses; or (5) altering or amending the class."

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:29   Exhibit 9 -
Case 2:03-cv-00425-AJS   Document 605   Filed 06/21/13   Page 26 of 26
Motion for Class Certification   Pg 34 of 42

*Household Int'l*, 376 F.3d at 661 (internal citations omitted); *see also Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250 (W.D. Pa. 2008) ("[Defendant] argues that the large size of the class and number of legal issues would make trial as a class action unmanageable . . . . The court is satisfied that certification at this stage is appropriate.  If the liability issue is determined unfavorably to the class then the case will be resolved.  If the liability issue is resolved in favor of the class, then the court may consider on a fully developed record whether to decertify the class or take other appropriate action."); *Zeno v. Ford Motor Co.*, 238 F.R.D. 173, 196 (W.D. Pa. 2006) (same) (citing *CBNV I* with approval); *Meyer v. CUNA Mut. Group*, 2006 WL 197122, *22 (W.D. Pa. Jan. 25, 2006) (same).

Accordingly, a class action is both manageable and manifestly superior to the litigation of these claims in individual civil actions.  To further illustrate the manageability of this action, and consistent with Third Circuit guidance, Plaintiffs' proposed Trial Plan is attached to the Carlson/Walters Declaration as Exhibit 20.  *See Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 186 n.7 (3d Cir. 2006).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court certify the proposed class and subclasses.

Dated: June 21, 2013

Respectfully submitted,

 */s/ R. Bruce Carlson*                                     */s/ R. Frederick Walters*
**CARLSON LYNCH LTD**                         **WALTERS, BENDER, STROHBEHN**
R. Bruce Carlson                                          **VAUGHAN**
                                                                       R. Frederick Walters

*Interim Co-Lead Counsel for Plaintiffs*

20

12-12020-mg    Doc 4451-9    Filed 07/31/13    Entered 07/31/13 20:46:01    Exhibit 9 -
Case 2:03-cv-09425-AJS    Document 611    Filed 06/28/13    Page 1 of 2
Motion for Class Certification    Pg 35 of 42

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA SECOND MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1674<br><br>Case No. 03-0425<br>Case No. 02-01201<br>Case No. 05-0688<br>Case No. 05-1386<br><br>Hon. Arthur J. Schwab |

THIS DOCUMENT RELATES TO ALL MDL ACTIONS

### NOTICE OF ERRATA REGARDING PLAINTIFFS'
### MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT

Plaintiffs hereby give notice of errata to the Court and all parties regarding page two of Plaintiffs' Motion for Class Certification (Dkt. 607); page two of the Proposed Order attached to the Motion (Dkt. 607-1); and page four of Plaintiffs' Memorandum of Law in Support of the Motion (Dkt. 609), all filed on June 21, 2013. The same error is being corrected in all three documents.

In the proposed Sub-Class definitions, the date ranges for Sub-Class 3 and Sub-Class 4 were incorrect.

The *correct* date ranges are as follows:

Sub-Class 3: (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs: Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period **May 1, 2000-December 2002;**

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs: All Plaintiffs other than the Nixons, Gaskins and Wasems)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase

1

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:20   Exhibit 9 -
Motion for Class Certification    Pg 36 of 42
Case 2:03-cv-09425-AJS   Document 61   Filed 06/28/13   Page 2 of 2

money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period **May 1998-April 30, 2000**;

A corrected version of page two of Plaintiffs' Motion for Class Certification is attached hereto as Exhibit A; a corrected version of page two of the Proposed Order attached to the Motion is attached hereto as Exhibit B; and a corrected version of page four of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification is attached hereto as Exhibit C.  Plaintiffs respectfully request this Court to substitute Exhibit A for page two of the Motion, to substitute Exhibit B for page two of the Proposed Order, and to substitute Exhibit C for page four of the Memorandum.

Dated: June 28, 2013

Respectfully Submitted,

/s/ R. Bruce Carlson
R. Bruce Carlson
bcarlson@carlsonlynch.com
CARLSON LYNCH LTD
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
(p) 412.322.9243
(f) 412.231.0246

*Interim Co-Lead Counsel for Plaintiffs*

# Exhibit A

12-12020-mg  Doc 4451-9  Filed 07/31/13  Entered 07/31/13 20:46:20  Exhibit 9 -
Case 2:03-cv-00425-AJS  Document 611-1  Filed 06/28/13  Page 2 of 2
Motion for Class Certification    Pg 38 of 42

the Class Members as their principal dwelling for the period October 1998-
November 1999;

Sub-Class 3: (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs:
Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem)-- All
persons nationwide who obtained a second or subordinate, residential, federally
related, non purchase money, mortgage loan from CBNV that was secured by
residential real property used by the Class Members as their principal dwelling for
the period May 1, 2000-December 2002;

Sub-Class 4: (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs: All
Plaintiffs other than the Nixons, Gaskins and Wasems)-- All persons nationwide
who obtained a second or subordinate, residential, federally related, non purchase
money, mortgage loan from CBNV that was secured by residential real property
used by the Class Members as their principal dwelling for the period May 1998-
April 30, 2000;

Sub-Class 5: (RICO Sub-Class) (Plaintiffs: John and Rebecca Picard; Brian and
Carla Kessler)-- All persons nationwide who obtained a second or subordinate,
residential, federally related, non purchase money, mortgage loan from CBNV
that was secured by residential real property used by the Class Members as their
principal dwelling for the period May 1998-November 1999.

2.      Plaintiffs request that all named Plaintiffs be appointed as representatives of the

General Class and that the designated Plaintiffs be appointed as representatives of the requested

Sub-Classes.

3.      Plaintiffs request that R. Bruce Carlson (and the law firm Carlson Lynch Ltd.) and

R. Frederick Walters (and the law firm Walters Bender Strohbehn & Vaughan) be appointed as

co-lead counsel and that the following law firms be appointed as class counsel: Richardson,

Patrick, Westbrook & Brickman, The Law Offices of Daniel O. Myers, The Legg Law Firm, The

Law Offices of Franklin Nix.

4.      Plaintiffs request that the Court certify the following common claims and issues:

(A) Plaintiffs' claims for violations of the RESPA ABA disclosure requirements

(for the period May 1998-October 1998);

# Exhibit B

12-12020-mg   Doc 4451-9   Filed 07/31/13   Entered 07/31/13 20:46:30   Exhibit 9 -
Motion for Class Certification   Pg 40 of 42
Case 2:03-cv-00425-AJS   Document 611-2   Filed 06/28/13   Page 2 of 2

second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period October 1998-November 1999;

Sub-Class 3:  (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs: Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1, 2000-December 2002;

Sub-Class 4:  (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs:  All Plaintiffs other than the Nixons, Gaskins and Wasems)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-April 30, 2000;

Sub-Class 5:  (RICO Sub-Class) (Plaintiffs:  John and Rebecca Picard;  Brian and Carla Kessler)-- All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-November 1999.

The proposed Plaintiffs for each of the Sub-Classes noted above are hereby appointed as representatives for those Sub-Classes.

IT IS FURTHER ORDERED that the class claims and issues shall be the claims set forth in Plaintiffs' Joint Consolidated Amended Complaint (Doc. No. 507) and the corresponding defenses to said claims:

(1) Plaintiffs' claims for violations of the RESPA ABA disclosure requirements

(for the period May 1998-October 1998);

(2) Plaintiffs' claims for violations of the RESPA anti-kickback and unearned fee

requirements (Section 800 Origination Fees) (for the period October 1998-

November 1999);

(3) Plaintiffs' claims for violations of TILA/HOEPA;

# Exhibit C

12-12020-mg  Doc 4651-9  Filed 07/31/13  Entered 07/31/13 20:46:30  Exhibit 9 -
Case 2:03-cv-00425-AJS  Document 611-3  Filed 06/28/13  Page 2 of 2
Motion for Class Certification  Pg 42 of 42

Sub-Class 1:  (RESPA ABA Disclosure Sub-Class) (Plaintiffs Philip and Jeannie Kossler) All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-October 1998;

Sub-Class 2:  (RESPA Kickback Sub-Class) (Plaintiffs Brian and Carla Kessler; John and Rebecca Picard) All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period October 1998-November 1999;

Sub-Class 3:  (TILA/HOEPA Non-Equitable Tolling Sub-Class) (Plaintiffs Kathy and John Nixon; Flora Gaskin; and, Tammy and David Wasem) All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1, 2000-December 2002;

Sub-Class 4:  (TILA/HOEPA Equitable Tolling Sub-Class) (Plaintiffs All Plaintiffs other than the Nixons, the Wasems, and Flora Gaskin) All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-April 30, 2000;

Sub-Class 5:  (RICO Sub-Class) (Plaintiffs John and Rebecca Picard;  Brian and Carla Kessler) All persons nationwide who obtained a second or subordinate, residential, federally related, non purchase money, mortgage loan from CBNV that was secured by residential real property used by the Class Members as their principal dwelling for the period May 1998-November 1999.

**B.  The Kickback Scheme (RESPA Claims).**

RESPA, among other things, expressly prohibits payments or referrals for kickback of mortgage settlement business.  12 U.S.C. § 2607(a).  In a textbook violation of RESPA's anti-kickback provisions, the entity that received the overwhelming majority of the hundreds of millions of dollars in mortgage settlement fees generated from the unlawful business model at issue in this case did not perform any settlement services in connection with those loans <u>and was in fact contractually precluded from providing any settlement services</u>.  Therefore, it was