**Hearing Date and Time:  August 16, 2013 at 9:00 a.m. (ET)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Douglas H. Mannal
Daniel M. Eggermann
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee*
*of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | : | Case No. 12-12020 (MG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

------------------------------------------------------------ x

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS (I) IN SUPPORT OF THE DEBTORS' MOTION
PURSUANT TO FED. R. BANKR. P. 9019 FOR APPROVAL OF
THE SETTLEMENT AGREEMENT AMONG THE DEBTORS, FGIC,
THE FGIC TRUSTEES AND CERTAIN INSTITUTIONAL INVESTORS
<u>AND (II) IN RESPONSE TO THE OBJECTIONS THERETO</u>**

Related Docket Nos.:  3929, 4027, 4400, 4401, 4406

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................ 2

    I.  The JSN Objection Should be Overruled .......................................................... 2

    II.  The Monarch Group's and Freddie Mac's Objections Should Also be Overruled............ 7

        A.  This Court has Jurisdiction to Issue the Proposed Findings ........................................ 8

        B.  The Proposed Findings are Entirely Warranted ........................................................ 11

CONCLUSION.............................................................................................................. 13

Exhibit A:  *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (Bankr. S.D.N.Y.), Order, Findings of Fact and Conclusions of Law Approving Settlement of Management and Other Claims

Exhibit B:  *In re Rehabilitation of FGIC*, Case No. 401265/2012 (N.Y. Supreme Court). Order Denying Motions to Intervene and Conduct Discovery

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ad Hoc Comm. of Kenton Cty. Bondholders v. Delta Air Lines, Inc.*,
    309 Fed. Appx. 455 (2d Cir. 2009) ............................................................... 9, 10

*Anchorage Police & Fire Ret. Sys. v. Official Comm. of Unsecured Creditors (In re Conseco, Inc.)*, Case No. 03-7054, 2004 U.S. Dist. LEXIS 11734 (N.D. Ill. June 24, 2004)............ 6

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*,
    743 B.R. 525 (Bankr. D. Del. 2012) .............................................................. 5

*In re Cincinnati Microwave, Inc.*, 210 B.R. 130 (Bankr. S.D. Ohio 1997) .................................... 7

*CIT Grp., Inc. v. Tyco Int'l, Inc.*, Case No. 12-1692,
    2012 U.S. App. LEXIS 18696 (2d Cir. Sept. 6, 2012) ...................................... 7

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
    722 F.2d 1063 (2d Cir. 1983)...................................................................... 10

*In re Delta Air Lines, Inc.*, 370 B.R. 537 (Bankr. S.D.N.Y. 2007) ....................................8-9, 11

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc.
    (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005) .............................. 8

*In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991) ..................9-10

*Kenton Cty. Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*,
    374 B.R. 516 (S.D.N.Y. 2007)...................................................................... 9

*Krys v. Official Comm. of Unsecured Creditors of Refco Inc.*, 505 F.3d 109 (2d Cir. 2007) ...... 10

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)......................................................................... 10

*O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, Case No. 11-01284,
    2013 Bankr. LEXIS 1753 (Bankr. S.D.N.Y. Apr. 30, 2013)............................... 9

*In re Periman Producers Drillers, Inc.*, 263 B.R. 510 (W.D. Tex. 2000)..................................6-7

*In re Residential Capital, LLC*, Case No. 12-12020,
    2013 Bankr. LEXIS 2601 (Bankr. S.D.N.Y. June 27, 2013)............................... 9

*United States v. Fabe*, 508 U.S. 491 (1993) ................................................................. 10

## STATUTES

11 U.S.C. § 510(b) ....................................................................................................................... 6-7

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this statement (the "Statement") (i) in support of the Debtors' motion (the "Motion") [Docket No. 3929] pursuant to Rule 9019 of the Bankruptcy Rules for approval of the Settlement Agreement among the Debtors, FGIC,[1] the FGIC Trustees and the Institutional Investors, and (ii) in response to the objections to the Motion (collectively, the "Objections") filed by (a) the ad hoc group of certain holders of the Debtors' junior secured notes (the "JSNs," their initial Objection, the "JSN Objection" [Docket No. 4027] and their supplemental Objection, the "JSN Supp. Objection" [Docket No. 4401]), (b) an ad hoc group of holders of residential mortgage backed securities issued by the FGIC Insured Trusts (the "Monarch Group," and their Objection, the "Monarch Group Objection" [Docket No. 4400]) and (c) Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac," and its Objection, the "Freddie Mac Objection" [Docket No. 4406]).

## PRELIMINARY STATEMENT

1.      The FGIC Settlement represents a sensible compromise of highly complex claims that provides substantial benefits to all interested parties. Its approval is a crucial and, indeed, indispensable step towards implementing the largely consensual Global Settlement embodied in the proposed joint chapter 11 plan (the "Plan") filed by the Debtors and the Committee on July 3, 2013 [Docket No. 4153]. The Plan is supported by almost every major creditor constituency in these cases, having resulted from months of intensive negotiations supervised by the Court-appointed mediator, Honorable James M. Peck. Absent approval of the FGIC Settlement, the

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

entire Global Settlement will be at risk of collapse, and these cases are likely to sink into a morass of costly litigation requiring years to resolve.

2.      Despite the considerable benefits of the FGIC Settlement to not only the Debtors, but all interested parties as well, the JSNs, the Monarch Group and Freddie Mac have objected to its approval on disparate grounds.  The JSNs argue, in substance, that allowance of the FGIC Claims is not an appropriate exercise of the Debtors' business judgment.  The Monarch Group and Freddie Mac object to the proposed findings that (i) the FGIC Settlement is in the best interests of investors in the FGIC-wrapped trusts and (ii) the FGIC Trustees have acted reasonably and in good faith in entering into the settlement.  None of the Objections have merit.

#### ARGUMENT

3.      The standard for approval of a Bankruptcy Rule 9019 settlement and the factors to be considered in that regard are well-settled in this Circuit and are set forth fully in the Motion (¶¶ 29-32).  They need not be repeated here.  As demonstrated by the declarations submitted in connection with the Motion, and as will be confirmed at trial, the FGIC Settlement falls well above the lowest point in the range of reasonableness and it is fair, equitable and in the best interests of the Debtors and creditors alike. The proposed findings have and will be equally supported, since the FGIC Trustees unquestionably acted reasonably and in good faith, and there is ample evidence establishing that the FGIC Settlement is in the best interests of investors in each of the subject trusts.

### I.      The JSN Objection Should Be Overruled

4.      It is telling that the JSNs are the *only* parties to contend that the FGIC Settlement is not in the Debtors' best interests.  They have no genuine economic stake at all in the FGIC Settlement, as the proposed Plan provides not only for payment in full of their allowed claims, but also for payment of postpetition interest if and to the extent the JSNs are determined to be

oversecured.  Their Objection should therefore be seen for what it is – a thinly-veiled attempt to further disrupt these cases for leverage in their ongoing postpetition interest crusade.

5.      Their improper motivations aside, the JSNs argue that the FGIC Settlement represents an unwarranted entrenchment of certain components of the Global Settlement, even if that agreement were to be terminated, by (i) guaranteeing FGIC the Minimum Allowed Claim Amount against GMACM and RFC, and (ii) allowing FGIC to assert a $596.5 million general unsecured claim against each of ResCap, GMACM and RFC.   (JSN Obj. ¶¶ 15, 18-22.) Specifically, they contend that FGIC is thereby granted a guaranteed claim of approximately 32% of its asserted claims with the opportunity to assert additional claims up to a $1.79 billion cap, which they say is only $60.5 million less than FGIC's total filed claims of $1.85 billion. (*Id*. ¶¶ 18-21).  They argue that FGIC has not provided sufficient consideration to justify such treatment.  (*Id*. ¶ 21.)

6.      To begin with, however, the JSNs' math is misleading at best.  Much like the JSNs themselves have asserted claims against multiple Debtors, FGIC has asserted $1.85 billion in claims against *each* of ResCap, GMACM, and RFC, for total claims of $5.55 billion (which it purports to reserve the right to increase).   In fact, therefore, the Minimum Allowed Claim Amount is only 10.7% of FGIC's total asserted claims, while the cap represents less than 33% of those claims.

7.      Moreover, the JSNs seriously minimize the substantial consideration received by the Debtors under the FGIC Settlement, even if the Global Settlement is not consummated. Among other things, the FGIC Trustees are releasing claims that, if allowed by the Court, the Debtors estimate could be as large as $5 billion.  (*See* Motion ¶ 3.)  While defenses to these claims might well be available, as discussed in the declarations submitted by Messrs. Kruger and

Lipps, any litigation would be extremely complex, costly, and time-consuming, and the outcome would be uncertain.  In light of the release of these claims, even if the Global Settlement does not go effective, the Committee believes that it is sound business judgment to grant FGIC the Minimum Allowed Claim Amount with the right to assert claims up to the fixed cap.

8.    The JSNs further contend that, if the Global Settlement does go effective, there is no legitimate basis to provide FGIC with a $337 million claim against ResCap.  (JSN Obj. ¶¶ 15, 23-31.)  They argue that the only basis for such a claim would be on alter ego or veil-piercing theories, which, according to the JSNs, should be valued at zero because (i) FGIC cannot satisfy the strict standard for alter ego liability as it purportedly has not alleged fraud or an injustice (*id.* ¶¶ 25-26), and (ii) any such claim would belong to GMACM or RFC rather than to FGIC (*id.* ¶ 27).  The JSNs accordingly maintain that a $337 million claim by FGIC against ResCap is too high and must have been manufactured to obtain Plan support.  (*Id.* ¶ 26.)  As an initial matter, this aspect of their objection is premature as it is a plan confirmation issue.  The FGIC Settlement does not allow any FGIC claims against ResCap.  The Plan does.  To the extent the JSNs have any objection to the allowance of any FGIC claim against ResCap as part of the Plan, they should raise that issue at the plan confirmation stage.  In any event, their argument fails on multiple substantive levels.

9.    First, contrary to the JSNs' contention, FGIC has asserted a claim against ResCap not only on alter ego or veil piercing theories, but also on principles of aiding and abetting or joint tortfeasor liability. *See, e.g.*, FGIC Claim No. 4870 at ¶ 32 ("In addition, because GMACM and RFC were acting at the direction of ResCap, ResCap may be jointly and severally liable to FGIC for the harms FGIC has suffered from the fraudulent inducement committed by GMACM

and RFC.").  The JSN Objection conveniently ignores the litigation risks associated with those types of claims against ResCap and should be rejected for this reason alone.

10.     Second, while the standard for veil-piercing may be exacting, a claim based even on this theory is hardly without risk.  FGIC's claim against ResCap does in fact allege fraud, and the evidence at trial will fully support the Debtors' conclusion that litigating the validity, priority, and amounts of FGIC's claims would involve significant cost, delay and uncertainty.  (*See* Direct Testimony of Lewis Kruger [Docket No. 4431] ¶¶ 44-50.)  In addition, although alter ego claims premised on *generalized* harm to a debtor's estate have been held to belong to the estate, the JSNs disregard the risk that FGIC would argue (and that this Court might agree) that FGIC has alleged a particularized harm entitling it to pursue its veil-piercing claim against ResCap directly. *See, e.g.*, *Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.)*, 743 B.R. 525, 555-56 (Bankr. D. Del. 2012) (holding that individual creditor alleging fraudulent inducement states a particularized harm and retains standing to pursue alter ego claims).

11.     Third, the JSNs' contention that FGIC's $337 million claim against ResCap is excessive fails to recognize the overall consideration flowing to ResCap under the Global Settlement, of which the FGIC Settlement is an integral part.  That consideration includes, but is not limited to, (i) FGIC's release of the balance of its $1.85 billion claim against ResCap, (ii) the FGIC Trustees' release of their claims against ResCap (which the Debtors estimate could be as much as $5 billion), and (iii) perhaps most importantly, ResCap's receipt of $783 million in cash as its allocable share of the $2.1 billion being contributed by Ally pursuant to the Global Settlement and Plan.  These benefits plainly substantiate the allowance of a FGIC claim of $337 million as an appropriate exercise of ResCap's business judgment.  For the JSNs to assert that

FGIC's allowed claim against ResCap was provided merely to garner FGIC's support for the Global Settlement borders on irresponsible.

12.    For their last argument, the JSNs contend that FGIC should not be afforded *any* general unsecured claims against the Debtors because its claims must be subordinated under Section 510(b) of the Bankruptcy Code.  (JSN Objection ¶¶ 32-39.)  In advancing this argument, however, the JSNs fail even to recognize that any attempt to subordinate FGIC's claims would be hotly contested.  The claims asserted by FGIC are, at bottom, contract claims arising under Insurance and Indemnity Agreements.  *See, e.g.*, FGIC Claim No. 4870 at ¶ 14.  The JSNs have not cited a single case in which claims of this type have been subordinated under Section 510(b) of the Bankruptcy Code, and the most that can be said of the JSNs' position on this subject is that potentially litigable issues are presented.  But the mere fact that the JSNs can articulate a Section 510(b) argument (albeit one without supporting authority) cannot deprive the Debtors of the authority to settle FGIC's claims through the allowance of substantially reduced general unsecured claims.

13.    None of the cases on which the JSNs rely support the proposition that a debtor cannot allow a general unsecured claim as part of the settlement of a dispute in which Section 510(b) subordination is a litigable issue.  For example, the court in *Conseco* simply held that securities fraud claims compromised under a settlement agreement could still be subject to subordination under Section 510(b) despite having been so resolved.  *Anchorage Police & Fire Ret. Sys. v. Official Comm. of Unsecured Creditors (In re Conseco, Inc.)*, Case No. 03-7054, 2004 U.S. Dist. LEXIS 11734, at *4 (N.D. Ill. June 24, 2004).  Notably, the settlement agreement in *Conseco*, unlike the FGIC Settlement Agreement, expressly preserved the creditors' committee's rights to seek subordination.  The JSNs' reliance on *In re Periman*

- 6 -

*Producers Drillers, Inc.*, 263 B.R. 510 (W.D. Tex. 2000) is equally misplaced.  There, the court held only that the compromise of a securities claim under a prepetition settlement agreement did not "alter the fact that the underlying claim is a claim for damages arising from the purchase of a security." *Id*. at 520.  And, the court in *In re Cincinnati Microwave, Inc.*, 210 B.R. 130 (Bankr. S.D. Ohio 1997), refused to approve a settlement where there was "*no question* that the claims . . . proposed to be settled are in nature claims at which Section 510(b) is aimed." *Id*. at 133 (emphasis added).  Here, in contrast, a question certainly exists as to whether FGIC's claims could be subject to Section 510(b) subordination.  Indeed, the Second Circuit has held that the mere connection of a contract-based claim (such as FGIC's claims) to the purchase or sale of a security is insufficient to support a finding that the claim "arises from" the purchase or sale of a security for purposes of Section 510(b) subordination.  *CIT Grp., Inc. v. Tyco Int'l, Inc.*, Case No. 12-1692, 2012 U.S. App. LEXIS 18696 (2d Cir. Sept. 6, 2012).

14.    In short, providing FGIC with general unsecured claims against the Debtors' estates at fractions of their asserted amounts cannot properly be challenged as unreasonable or lacking in business judgment.  The resolution of FGIC's claims in the manner contemplated by the FGIC Settlement is entirely fair, equitable, and in the best interests of both the Debtors and their respective creditors – including the creditors of ResCap.

## II.    The Monarch Group's and Freddie Mac's Objections Should Also be Overruled

15.    Unlike the JSNs, the Monarch Group and Freddie Mac do not challenge the FGIC Settlement as an inappropriate exercise of the Debtors' business judgment.  Rather, they object to any findings by the Court that the FGIC Settlement is in their best interests and that the FGIC Trustees have acted reasonably and in good faith in agreeing to the settlement.  But those findings are critical conditions to both the FGIC Settlement itself and the Global Settlement, and

are fully warranted.  Without them, the FGIC Trustees (as well as the other RMBS trustees) would be unwilling to settle their claims in these cases.[2]  For the reasons set forth below, the objections raised to the proposed findings should be overruled.

### A.    This Court Has Jurisdiction to Issue the Proposed Findings

16.    The Monarch Group and Freddie Mac contend that this Court lacks jurisdiction to make the findings proposed under the FGIC Settlement, but their arguments in this regard are meritless.  It is well within the Court's jurisdiction to issue the proposed findings in connection with a Bankruptcy Rule 9019 Motion.  (*See* authorities set forth in the RMBS PSA Joinder at ¶¶ 5-8 [Docket No. 3940].)  Judge Hardin's opinion in *In re Delta Air Lines, Inc.*, 370 B.R. 537 (Bankr. S.D.N.Y. 2007), is especially instructive.  There, Delta had negotiated a settlement with a bond trustee of claims arising out of an airport facilities lease.  *Id.* at 540.  The settlement included a provision that released claims of individual bondholders against the trustee and other parties.  *Id.* at 551.  Over the objections of a group of bondholders, Judge Hardin approved the settlement, finding, *inter alia*, that (i) the court had jurisdiction over the settlement, *id.* at 549, (ii) the settlement was in the best interests of both Delta and the individual bondholders, *id.* at 545, and (iii) the releases were permissible, *id.* at 551.  With respect to the releases, the court determined that the concerns expressed by the Second Circuit in *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005), were not implicated.  *Delta*, 370 B.R. at 551.  The *Delta* court explained:

---

[2] *See* Joinder of Certain RMBS Trustees to the Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants [Docket No. 3940] at ¶ 1 (the "RMBS PSA Joinder") ("[T]he RMBS Trustees have made it clear throughout these Chapter 11 Case that their willingness to agree to a resolution of the claims of the RMBS Trusts would be conditioned on the RMBS Trustees being afforded an opportunity to provide notice to all Investors and the Bankruptcy Court making certain findings relating to their conduct and the effect of any agreement on the Investors.").

> All the parties to the release, including Delta and the Bondholders, have received substantial consideration from each other, and the only claims being released by any party are from those necessary to effect the Settlement and preclude further litigation with respect to issues resolved and foreclosed by the Settlement.

*Id.*[3]

17.     Relief similar to that requested in the Motion has been granted in other cases, including these.   *See, e.g.*, *In re Residential Capital, LLC*, Case No. 12-12020, 2013 Bankr. LEXIS 2601, at *70-71 (Bankr. S.D.N.Y. June 27, 2013) ("The findings of fact that each of the parties, including the RMBS Trustees, have acted in good faith and in the best interests of its respective constituencies in entering into the PSA are appropriate now and supported by the record."); *In re Dewey & LeBoeuf LLP*, Case No. 12-12321 (Bankr. S.D.N.Y.), Order, Findings of Fact and Conclusions of Law Approving Settlement of Management and Other Claims [Docket No. 1472] at ¶¶ I, J, 5, 8 (finding that insurer acted in good faith in entering into settlement with debtor and enjoining non-debtor insureds from pursuing certain claims against insurer);[4] *cf. O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, Case No. 11-01284, 2013 Bankr. LEXIS 1753, at *18-19 (Bankr. S.D.N.Y. Apr. 30, 2013) (approving settlement with insurer including third-party releases where such releases were "integral to the global settlement"); *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)

---

[3] The United States District Court for the Southern District of New York subsequently dismissed an appeal from the *Delta* decision as equitably moot.  *Kenton Cty. Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*, 374 B.R. 516, 525 (S.D.N.Y. 2007).  As an alternative holding, however, the district court considered the merits of the appeal and concluded that the bankruptcy court had the jurisdiction to approve the settlement and the non-consensual bondholder releases.  *Id.* at 525-26 ("The Bankruptcy Court plainly had jurisdiction under 28 U.S.C. § 1334(b) to approve the Settlement binding non-debtors because the litigation that was settled had more than a 'conceivable effect' on the bankrupt estate; it in fact had a very clear effect on Delta's obligations.").  The Second Circuit affirmed the district court's equitable mootness ruling but noted that "if we were to consider the merits of appellant's arguments, for substantially the reasons stated in the Bankruptcy Court's thorough and well-reasoned decision . . . we would affirm the Settlement Order."  *Ad Hoc Comm. of Kenton Cty. Bondholders v. Delta Air Lines, Inc.*, 309 Fed. Appx. 455, 457 (2d Cir. 2009).

[4] A copy of the *Dewey* order is annexed hereto as Exhibit A.

(approving settlement agreement with insurer which released claims of non-debtor insureds for bad faith or improper conduct).

18.    The Monarch Group misplaces reliance on the Second Circuit's decision in *Krys v. Official Comm. of Unsecured Creditors of Refco Inc.*, 505 F.3d 109, 119 (2d Cir. 2007). There, the Second Circuit held that holders of equity interests in a defendant that received a preferential payment lacked standing to object to a settlement between the debtor and the defendant.  The debtors in *Refco*, unlike the situation here, had not sought a finding that the settlement was in the interests of the defendant's equity holders.  The Second Circuit in *Refco* thus never addressed the issue of whether the bankruptcy court *could* have exercised jurisdiction to make such a finding if it had in fact been asked to do so.  As noted above, the Second Circuit's endorsement of the bankruptcy court's decision in *Delta* is far more pertinent.  *Delta*, 309 Fed. Appx. at 457 (observing that bankruptcy court's decision finding settlement in best interests of third-parties was "well-reasoned" and would be affirmed on the merits but for equitable mootness).[5]

19.    Nor is there any merit to the argument that the McCarran-Ferguson Act deprives this Court of jurisdiction to enter the proposed findings.  Nothing this Court is being asked to do invalidates, impairs or supersedes any state statute regulating the business of insurance – a prerequisite to a finding of reverse preemption.  *See United States v. Fabe*, 508 U.S. 491, 500-01 (1993).  The findings sought in the Motion involve only the relationship between the FGIC Trustees (the policyholders) and individual investors in the FGIC Trusts (who are not policyholders) – not the relationship between FGIC (the insurer) and its policyholders.  Neither

---

[5] The Monarch Group's reliance on *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993) and *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983), is equally unfounded.  Neither of those cases involved bankruptcy settlements that presented issues remotely analogous to those presented here.

the Monarch Group nor Freddie Mac points to any provision of New York insurance law vesting
the rehabilitation court with exclusive jurisdiction over disputes between policyholders and third-
parties, and there is none.  In fact, the court presiding over FGIC's rehabilitation proceeding
recently entered an order stating that the Monarch Group's specific concerns should be raised in
this Court – not the Rehabilitation proceeding.[6]

### B.    The Proposed Findings are Entirely Warranted

20.    Beyond their jurisdictional arguments, the Monarch Group and Freddie Mac
challenge the proposed findings on three principal grounds: (i) that the FGIC Trustees
supposedly do not have the requisite consents under the governing documents to enter into the
FGIC Settlement, (ii) that the FGIC Settlement is not in the best interests of investors because
the FGIC Trusts will purportedly recover more under FGIC's Rehabilitation Plan than they will
under the terms of the FGIC Settlement and (iii) that the FGIC Trustees allegedly have not acted
in good faith.  None of these challenges can survive scrutiny.

21.    *Delta* disposes of any argument that the FGIC Trustees lack authority under the
governing documents to enter into the Settlement.  Like the Monarch Group and Freddie Mac,
the trust investors in *Delta* relied on certain provisions in the documents requiring their consent
to any impairment of the right to receive payment of principal and interest.  *Delta*, 370 B.R. at
546.  But as the *Delta* court recognized, the impairment there was not the result of the settlement
but, rather, the result of Delta's bankruptcy.  *Id*. at 547.  The same is true here.  The ability of the
Monarch Group and Freddie Mac to receive principal and interest on their certificates is impaired
solely by the FGIC rehabilitation proceeding – not by the FGIC Settlement.

---

[6] A copy of that order is annexed hereto as Exhibit B.

22.     The evidence at trial will also establish that the FGIC Settlement is in the best interests of all investors.  The FGIC Settlement provides for substantial consideration to the FGIC Trusts for the benefit of investors, including, among other benefits: (i) an immediate $253.3 million cash payment by FGIC, (ii) FGIC's waiver of both future premiums and claims for reimbursement that it would have against the FGIC Trusts, and (iii) if the Plan is confirmed, an additional distribution under the Plan in an amount the Committee is informed will exceed $90 million as the FGIC Trusts' allocable share of distributions on account of allowed RMBS Trust claims.  The Monarch Group's and Freddie Mac's assertion that they would recover more under the FGIC Rehabilitation Plan amounts to sheer speculation.  The calculation of that supposed recovery represents little more than an estimated projection or forecast based on myriad assumptions about what might happen over the next forty years.  If any one or more of those assumptions should prove wrong, the projected recoveries on which the Monarch Group and Freddie Mac would hang their hopes could be dramatically reduced.  The Court should have little difficulty determining that the certain and immediate consideration being provided by the FGIC Settlement is at least reasonable in comparison to the lottery ticket apparently preferred by the Monarch Group and Freddie Mac.

23.     Finally, the evidence at trial will demonstrate unequivocally that the FGIC Trustees have acted in good faith.  The FGIC Settlement was the product of extensive negotiations in which the FGIC Trustees fought aggressively on behalf of the FGIC Trusts and were well-represented by highly experienced legal and financial advisors.  Investors in the trusts were given prompt and appropriate notice of the Settlement under the circumstances, and have had a full and fair opportunity to object and be heard.  The FGIC Trustees' conduct in entering into the Settlement cannot legitimately be criticized.

- 12 -

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Motion, the responses to the Objections and the various declarations filed by the Debtors, FGIC, and the FGIC Trustees, the Committee respectfully submits that the relief requested in the Motion should be granted in all respects.

Dated:  August 2, 2013

KRAMER LEVIN NAFTALIS & FRANKEL LLP

/s/ Philip S. Kaufman
Kenneth H. Eckstein
Philip S. Kaufman
Douglas H. Mannal
Daniel M. Eggermann
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee
of Unsecured Creditors*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                :

In re:                           :        Chapter 11
                                :

DEWEY & LEBOEUF LLP,       :        Case No. 12-12321 (MG)
                                :

                     Debtor.    :
                                :
----------------------------------------------------------------x

### ORDER, FINDINGS OF FACT AND CONCLUSIONS OF LAW APPROVING SETTLEMENT OF MISMANAGEMENT AND OTHER CLAIMS

This matter coming before the Court on the Motion of Alan M. Jacobs, as Liquidating Trustee of the Dewey & LeBoeuf Liquidation Trust for entry of an Order pursuant to Bankruptcy Rule 9019 and Bankruptcy Code Sections 105, 362 and 363, Approving a Settlement Agreement among the Liquidation Trust, Steven Davis and XL;[1] and the Court having reviewed the Motion, the Limited Objections by Stephen DiCarmine ("DiCarmine") and Joel I. Sanders ("Sanders"), and statements of counsel and the evidence adduced regarding the Motion at the hearing (the "Hearing") before the Court; and the Court hereby concludes:

**Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. 157(b)(1) and 1334, and this matter is a core proceeding.

B.      The predicates for the relief sought in the Motion are Bankruptcy Rule 9019 and Bankruptcy Code Sections 105, 362 and 363, Section 9.3 of the Plan, Paragraph 60 of the Confirmation Order, and Section 6.4(b) of the Liquidation Trust Agreement.

---

[1]    Capitalized terms used, but not otherwise defined herein have the meanings ascribed to them in the Motion and the Settlement Agreement.

**Retention of Jurisdiction**

C.      It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order and the Settlement Agreement.

**Notice**

D.      Notice of the Motion and the Hearing thereon was served in accordance with the Court's case management order entered May 30, 2012 [Dkt. No. 30] (the "Case Management Order"). In addition, notice of the Motion was provided to all known Insureds under the Policy and where known upon such Insured's counsel.

E.      A reasonable opportunity to object to the Motion and to be heard at the Hearing was given as required by the Bankruptcy Code, the Bankruptcy Rules and the Case Management Order to all persons entitled to or who received notice.

**Settlement Agreement**

F.      The Settlement Agreement was the product of arms-length negotiations among the Parties, including a mediation conducted under the supervision of the JAMS Mediator, Jed Melnick. The Settlement Agreement was negotiated and proposed, and entered into by the Parties in good faith and without fraud or collusion. The Parties understand and agree that the Settlement Agreement is a compromise of disputed claims. The Settlement Agreement and/or the resulting Order shall not be deemed or construed to be an admission or determination of coverage under the Policy or of wrongdoing or liability by any Insured.

G.      Davis denies any wrongdoing on his part in his managerial capacity at Dewey and certain of the Predecessor Entities in the period before the commencement of the Chapter 11 Case and maintains that he fulfilled his fiduciary duties and at all times acted in what he

reasonably believed was in the best interest of Dewey and its estate.  It is understood that all
other Insureds who have not previously settled with the Debtor vigorously contest any
suggestion of liability or wrongdoing with respect to the claims being settled under the
Settlement Agreement.  The Liquidating Trustee is settling to avoid the expense, inconvenience,
delay and uncertainty of litigation, and subject to the Settlement Agreement and this Order, the
Liquidating Trustee reserves all his rights with respect to such liability or wrongdoing with
respect to the claims being settled under the Settlement Agreement.  The Court makes no finding
of wrongdoing or liability on the part of Davis or any other Insured and such finding is not
required for the relief requested in the Motion.

**<u>Sound Business Judgment and Reasonableness</u>**

        H.      The Settlement Agreement represents the exercise of the Liquidating Trustee's
sound business judgment, is fair and reasonable, is in the best interests of creditors and the estate
and satisfies the requirements of Bankruptcy Rule 9019.

        I.      The Liquidating Trustee, Davis and XL have entered into the Settlement
Agreement in good faith.  The Court finds that XL acted in good faith in:  (i) negotiating and
agreeing to the Settlement Agreement; (ii) agreeing to make the XL Settlement Payment; (iii)
agreeing to the scope of the Settlement Agreement and the releases in favor of all the Insureds
therein; and (iv) settling only the Debtor Released Claims and all other claims consensually
released by the Secured Lenders in connection with the Settlement Agreement (collectively, and
together with the Debtor Released Claims, the "<u>Released Claims</u>").  XL and the Excess Insurers
are discharged from any and all liability based on or arising out of any and all claims:  (x) for
Wrongful Acts (as defined in the Policy) held by the Liquidation Trust or others that constitute
Released Claims; (y) for their handling of any request for coverage by any Insured for any and

all claims for Wrongful Acts held by the Liquidation Trust that constitute Debtor Released Claims or otherwise constitute Released Claims, including but not limited to claims for breach of contract, breach of duty, negligence, "bad faith," breach of the duty of good faith and fair dealing, violation of any federal, state, local, or other statute or regulation, unfair claims handling, unfair or deceptive trade practices, or damages of any kind; and (z) relating to XL's agreement to the Settlement Agreement and to use the Policy proceeds to fund the XL Settlement Payment.  To the extent necessary, the Court approves the use of Policy proceeds to make the XL Settlement Payment, and the limit of liability shall be depleted to the extent of such payment. For the avoidance of doubt, except with respect to the matters enumerated in clauses (i) through (iv) of this paragraph, the Released Claims shall not include claims that were not either (a) property of the Estate or derivative of a right assertable by, or belonging to, the Debtor, or (b) claims of the Secured Lenders that are being consensually released by the Secured Lenders in connection with the Settlement Agreement.

### **Releases and Form of Injunction**

J.      All Insureds are hereby enjoined from pursuing any claim against XL or the Excess Insurers that is discharged pursuant to this Order.

K.      Notwithstanding anything to the contrary in this Order or the Settlement Agreement, nothing in this Order shall release:  (i) any claims or abrogate any rights held by the Liquidating Trustee to insurance coverage relating to any claims against Dewey itself and costs of defense of such claims, under any applicable Dewey insurance policy, including the XL Policy; (ii) Davis's or any other Insureds' right to insurance coverage under any applicable Dewey insurance policy for costs of defense of any claims that have been or may be brought against Davis or any other Insured and for satisfaction of a judgment or payment of a settlement

4

amount in connection therewith, including Davis's and other Insureds' rights to recover, or assert any rights relating to the failure to cover and/or pay, defense expenses to the extent provided for by the Policy and subject to its limit of liability; or (iii) any party's rights or obligations under the Agreement or this Order.

L.    The Liquidating Trustee has demonstrated that the releases, injunction and bar order contemplated by the Settlement Agreement are proper in scope and are either consensual or apply only to claims or causes of action that were either: (i) property of the Estate; (ii) derivative of a right assertable by, or belonging to, the Debtor; (iii) are Released Claims; or (iv) arise out of or relate to (a) negotiating and agreeing to the Settlement Agreement; (b) agreeing to make the XL Settlement Payment; (c) agreeing to the scope of the Settlement Agreement and the releases in favor of all the Insureds therein; and (d) settling only the Released Claims

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein.

2.    DiCarmine and Sanders' claims that Brown Rudnick has a disqualifying conflict of interest with respect to its representation of the Liquidating Trustee and the Liquidation Trust in connection with the Motion and the Settlement Agreement have been withdrawn only as to the Motion and the Settlement Agreement. Likewise, DiCarmine and Sanders' claims that the Liquidating Trustee has a conflict of interest in connection with the Motion and the Settlement Agreement have been withdrawn only as to the Motion and the Settlement Agreement

3.    Due and sufficient notice of the Hearing and the Motion was provided pursuant to Bankruptcy Rules 2002(a) and 9019 and the Case Management Order.

4.    The Settlement Agreement is APPROVED in all respects.

5

5.      The agreements and releases set forth in the Settlement Agreement have been entered into good faith by the Liquidating Trustee, Davis, and XL, are proper in scope and, solely with respect to the Released Claims, satisfy XL's duties and obligations to all Insureds under the Policy.

6.      The parties to the Settlement Agreement are authorized to undertake all acts as may be necessary to consummate the Settlement Agreement in accordance with its terms.

7.      The stay provisions of Section 362 of the Bankruptcy Code shall remain in effect and apply to all claims of the Estate and the Liquidating Trust that are Released Claims.

8.      Upon the Liquidating Trustee's receipt of both the XL Settlement Payment and the Note, all Persons (as defined in the Plan) and entities are enjoined and barred from commencing or continuing any and all past, present or future Claims (as defined in the Plan) or Causes of Action (as defined in the Plan) and from asserting any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, in tort, contract, statutory liability or otherwise, whether or not based on strict liability, negligence, gross negligence, fraud, breach of fiduciary duty or otherwise (including attorneys' fees, costs or disbursements), against Davis and the other Insureds, and their successors, advisors, attorneys, and insurers, including but not limited to XL, solely in their capacity as such (collectively, the "Releasees") where the Claim constitutes or arises from a Released Claim, including any Claim that is duplicative of any Claim of the Debtor, is derivative of any Claim of the Debtor, or could have been brought by or on behalf of the Debtor or its estate including Claims based on alter ego or veil piercing or similar doctrine or otherwise based on the contention that the Partners of the Debtor or its Predecessor Entities or Related Entities are liable for the debts of the Debtor, or where the Claim arises out of or relates to (i) negotiating and

agreeing to the Settlement Agreement; (ii) agreeing to make the XL Settlement Payment; (iii) agreeing to the scope of the Settlement Agreement and the releases in favor of all the Insureds therein; and (iv) settling only the Released Claims, and further including:

a.  The commencement or continuation in any manner, directly or indirectly, of any suit, action or other proceeding against or affecting the Releasees;

b.  The enforcement, levy or attachment, collection or other recovery by any means in any manner, whether directly or indirectly on any judgment, award, decree or other order against the Releasees;

c.  The creation, perfection or other enforcement in any manner directly or indirectly, of any encumbrance against the Releasees;

d.  The setoff or assertion in any manner of a right to seek reimbursement, indemnification, contribution from or subrogation against or otherwise recoup in any manner, directly or indirectly, any amount against the Releasees; and

e.  Any act to obtain possession of property or exercise control over the property of the Releasees;

*provided*, *however*, nothing herein shall release:  (i) any claims or abrogate any rights held by the Liquidating Trustee to insurance coverage relating to claims against Dewey itself and costs of defense of such claims, under any applicable Dewey insurance policy, including the XL Policy; or (ii) XL or Davis from their obligations under the Settlement Agreement.

9.    The Released Claims (except with respect to Davis as set forth in the Settlement Agreement) shall not include any (i) claims, obligations, demands, actions, causes of action, and liabilities that are not covered by the Policy, and (ii) claims arising under Chapter 5 of the Bankruptcy Code or unfinished business / Jewel claims (whether or not they are covered by the

Policy) and all of the Liquidating Trustee's rights to prosecute such claims are fully reserved. Notwithstanding the foregoing, the Court is making no findings with respect to coverage of Claims that the Liquidating Trustee has not settled and released, including Claims arising under Chapter 5 of the Bankruptcy Code (except as to Davis) and all such Claims held by the Liquidating Trust, as well as all rights and defenses of DiCarmine and Sanders with respect to such claims, are fully reserved; further, nothing in this Order or the Settlement Agreement shall constitute a determination of the extent of coverage available for a claim made or to be made against any Insured under any applicable Dewey insurance policy.

10.     Upon the Liquidating Trustee's receipt of both the XL Settlement Payment and the Note, in consideration for the good and valuable consideration provided by Davis and XL, the adequacy of which is hereby confirmed, any and all Persons (including any Non-Participating Partners (as defined in the Plan)) shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against the Releasees arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, where such Claim constitutes or arises from a Released Claim and the alleged injury to such Person arises from that Person's alleged liability to the Debtor, including any such Claim in which a Person seeks to recover from any of the Releasees (a) any amounts that such Person has or might become liable to pay to the Debtor and/or (b) any costs, expenses, or attorneys' fees from defending any Claim by the Debtor, or where the Claim arises out of or relates to (i) negotiating and agreeing to the Settlement Agreement; (ii) agreeing to make the XL Settlement Payment; (iii) agreeing to the scope of the Settlement Agreement and the releases in favor of all the Insureds therein; and (iv) settling only the Released Claims.   All such Claims are hereby extinguished, discharged,

satisfied, and unenforceable. For the avoidance of doubt, this paragraph shall preclude any liability of any of the Releasees to any Person for indemnification, contribution, or otherwise, on any such Claim that is, or arises from, the Released Claims and where the alleged injury to such Person arises from that Person's alleged liability to the Debtor; *provided*, *however*, that if the Liquidating Trustee obtains any judgment against any such Person based upon, arising out of, or relating to the Released Claims for which such Person and any of the Releasees are found to be jointly liable, such Person shall be entitled to a judgment credit equal to an amount that corresponds to the Releasees' percentage of responsibility for the loss to the Debtor.

11. Notwithstanding anything stated in this Order, if any Person (a "Petitioner") commences against any of the Releasees any action either (a) asserting a Claim that is, or arises from, the Released Claims and where the alleged injury to such Person arises from that Person's alleged liability to the Debtor or (b) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this Order, neither this Order nor the Settlement Agreement shall bar Claims by that Releasee against (x) such Petitioner, (y) any Person who is or was controlled by, controlling, or under common control with the Petitioner, whose assets or estate are or were controlled, represented, or administered by the Petitioner, or as to whose Claims the Petitioner has succeeded, and (z) any Person that participated with any of the preceding Persons described in items (a) and (b) of this paragraph in connection with the assertion of the Claim brought against the Releasee(s).

12. Notwithstanding anything contained in this Order, the provisions set forth in paragraph 8 above (the "Injunction") and the provisions set forth in paragraph 10 above (the "Bar Order") are limited in purpose, scope, and effect and are not a third-party "bankruptcy

discharge." Neither the Injunction nor the Bar Order is a release of direct third party Claims, except to the extent such Claims: (a) were property of the Estate or derivative of a right assertable by, or belonging to, the Debtor, or are Released Claims; (b) are, solely with respect to the Bar Order, (i) asserted against Releasees by any Person based on theories of joint and several liability, or (ii) for set-off, indemnity, contribution, or apportionment of liability under New York General Obligations Law 15-108 or other applicable law; or (c) arise out of or relate to (i) negotiating and agreeing to the Settlement Agreement; (ii) agreeing to make the XL Settlement Payment; (iii) agreeing to the scope of the Settlement Agreement and the releases in favor of all the Insureds therein; and (iv) settling only the Released Claims; provided, however, that nothing in this Order or the Settlement Agreement shall be deemed to enjoin, bar, or restrain any Insured, in any action brought against such Insured to recover for a harm, from asserting or establishing that such Insured is only liable for its proportionate share of such harm, or asserting or establishing any other right of set-off against the entity seeking to recover for such harm, to the extent permitted under any applicable legal principle, including but not limited to, New York General Obligations Law 15-108, indemnity, or contribution.

13.     The Court expressly reserves jurisdiction, including its exclusive jurisdiction pursuant to 28 U.S.C. § 1334(e), to enforce the stay provisions of Section 362 of the Bankruptcy Code, the injunction and bar order set forth in paragraphs 8 and 10 above, and over any and all disputes, actions, contested matters or other proceedings brought with respect to the Settlement Agreement, this Order or any of the Released Claims.

Dated:  May 30, 2013
        New York, New York

                            _____/s/Martin Glenn_____
                             MARTIN GLENN
                        United States Bankruptcy Judge

# EXHIBIT B



# Fax Cover Sheet

**To:** _Gary Holtzer_

**Fax No.:** _212-310-8007_

**From:** _Part 3_  **to Justice Doris Ling-Cohan**

*If you have problems receiving this fax, please call 646-386-3733*

**Date:** _7/31/13_

**Re:** _Matter of FGIC, Index No. 401265/12_

SUPREME COURT OF THE STATE OF NEW YORK - NEW YORK COUNTY
PRESENT: Hon. Doris Ling-Cohan, Justice                     Part 36

In the Matter of
The Rehabilitation of                          INDEX NO. 401265/12
FINANCIAL GUARANTY INSURANCE COMPANY           MOTION SEQ. NO. 022

The following papers, numbered ___ were considered on this order to show cause:

| PAPERS | NUMBERED |
|--------|----------|
| Notice of Motion/Order to Show Cause, — Affidavits — Exhibits _____ | _1, 2, 3_ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |
| | |
| Cross-Motion:  [ ] Yes   [ X ] No | _____ |

The court declines to sign this Order to Show Cause (OSC), brought by investors Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited, and CQS ABS Alpha Master Fund Limited (jointly "the Investors"), to: (1) intervene in this Rehabilitation proceeding pursuant to CPLR 1012(a)(2) or (3), or CPLR 1013; and (2) conduct limited and expedited discovery pursuant to CPLR 408.

<u>Procedural History</u>

This is a rehabilitation proceeding, brought under New York Insurance Law (NYIL) Article 74, in which a rehabilitator of Financial Guaranty Insurance Company (FGIC) was appointed without objection, by order dated June 28, 2012. Pursuant to such appointment, the rehabilitator proposed the Plan of Rehabilitation, and thereafter the First Amended Plan of Rehabilitation. Numerous objections to the proposed plan were filed with the court by interested parties. After much negotiation between the rehabilitator and the interested parties, all objections were settled or withdrawn prior to the hearing date scheduled for oral arguments on approval of the proposed plan. Thus, this court approved, without objection, the First Amended Plan of Rehabilitation for FGIC by order dated June 11, 2013.

FGIC currently seeks this Court's approval of a tentative settlement agreement (mot. seq. no. 016), negotiated in the Bankruptcy case of Residential Capital (Bankruptcy case), and entered into on May 23, 2013. Approval is also being sought in the Bankruptcy case, as approval by both courts is necessary. Three objections to such settlement agreement were received by the court on July 16, 2013. By this OSC, the Investors, having previously filed their objections, now move to intervene in this special proceeding, and seek limited discovery.

<u>Intervention in Special Proceedings</u>

The Court notes that it is undisputed that this Rehabilitation proceeding is a special proceeding governed

by Article 4 of the CPLR. As such, the court declines to sign the Investors' OSC to intervene in this proceeding, as CPLR 1012 and 1013 specifically govern intervention in *actions*, rather than special proceedings. In fact, both statutes specifically use the words "[u]pon timely motion, any person...[is] permitted to intervene <u>in any action</u>..." *See* CPLR 1012(a) and 1013. Thus, by the language employed, limiting intervention to an "action", such statutes are inapplicable here.

The Court notes that nowhere in NYIL Article 74, which governs this special proceeding, does it permit intervention. This is in contrast to Article 78 (which is also a special proceeding governed by CPLR Article 4), which does specifically provide for intervention: "[t]he court...may allow other interested persons to intervene." CPLR 7802(d). The absence of such corresponding language in the NYIL Article 74 rehabilitation statute indicates that the Legislature did not intend for intervention in such rehabilitation proceedings. Similarly, CPLR Article 52, a special proceeding, also specifically permits intervention in CPLR 5225, 5227, and 5239, unlike a rehabilitation proceeding. *See Breezevale Ltd. v Dickinson*, 262 AD2d 248 (1st Dep't 1999).

Moreover, the Investors filed objections with the court on July 16, 2013 (which they now seek to be deemed their proposed pleadings pursuant to CPLR 1014). The Investors need not seek intervention in this proceeding in order to voice their objections, as such objections were filed, received and shall be considered. As such, this OSC to intervene is deemed moot.

Discovery in Special Proceedings

Further, as to the request for limited discovery pursuant to CPLR 408, the Investors concede that there is no automatic right to discovery in special proceedings. Moreover, in seeking discovery, the Investors have failed to detail the discovery sought, or provide copies of any document demands, and, thus, this court is unable to determine whether such requested discovery is necessary and material, and narrowly tailored to clarify any allegedly disputed facts. *See New York University v Farkas*, 121 Misc.2d 643, 647 (Civ. Ct. N.Y. Cty 1983). Moreover, the Court notes that, according to movant, it is already engaging in ongoing discovery in the Bankruptcy case, and movant has not explained why discovery, if permitted here, would not be duplicative and merely serve to delay this summary proceeding.

Standard to be Applied in Approving the Settlement Agreement

The Investors claim that the proposed settlement agreement "is not fair and equitable to the Investors", and, thus should not be approved by this Court. However, such claim ignores the standard which must govern the decision-making of this Court on whether to approve the tentative settlement agreement. The Rehabilitator is tasked with ensuring that the best interests of FGIC's policyholders <u>as a whole</u> are served. *See Corcoran v Frank B. Hall & Co., Inc.*, 149 AD2d 165 (1st Dep't 1989). Thus, the standard to be applied in determining this Court's approval of the settlement is whether the Rehabilitator acted arbitrary and capriciously, and abused his discretion in determining that the settlement agreement is in

the best interests of FGIC's policyholders as a whole. *Id.* Such standard is different than that which the Bankruptcy court will employ and the Investors' specific concerns can be raised there.

Dated: _____

_____
**DORIS LING-COHAN, J.S.C.**

**Check one:**    [   ] FINAL DISPOSITION     [ X ] NON-FINAL DISPOSITION
**Check if Appropriate:**   [   ] DO NOT POST
J:\OSC\Matter of FGIC – decline to sign, intervention and discovery.wpd