# Exhibit 13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————
                                                    :
In re:                                              :     Chapter 11
                                                    :
WORLDCOM, Inc., *et al.*,                           :     Case No. 02 B 13533 (AJG)
                                                    :
          Debtors.                                  :     Jointly Administered
——————————————————————:

ORDER GRANTING DEBTORS' MOTION FOR APPROVAL OF COMPROMISE AND
SETTLEMENT WITH SECURITIES AND EXCHANGE COMMISSION

Upon the Debtors' Motion, dated July 15, 2003 (the "Motion"), pursuant to Bankruptcy Rule 9019, for Approval of the Compromise and Settlement with the Securities and Exchange Commission (the "Settlement"); upon the various objections filed; and upon the record of the hearing held on August 5, 2003, and for the reasons set forth on the record on August 6, 2003 (a copy of which is attached as Exhibit "A"), the Court finds that the Compromise and Settlement entered into by the Debtors and the Securities and Exchange Commission should be approved. Based upon the foregoing, it is hereby

Ordered, that the Debtors' Motion is granted; and it is further

Ordered, that the Settlement entered into by the Debtors and the SEC is approved.

Dated: New York, New York
       August 6, 2003

                                                    /s/ *Arthur J. Gonzalez*
                                                    UNITED STATES BANKRUPTCY JUDGE

02-13533 Doc 8125-3 Filed 08/06/03 Entered 08/06/03 17:19:57 Exhibit A Pg 1 of 5

Exhibit "A"

Before the Court is the Debtors' Motion (the "Motion"), Pursuant to Bankruptcy Rule 9019, for Approval of the Compromise and Settlement with the Securities and Exchange Commission (the "SEC").

Bankruptcy Rule 9019(a) grants the bankruptcy court authority to approve settlements of legitimate disputes in bankruptcy cases. *Lambert Brussels Assocs. Ltd. Partnership v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 140 B.R. 347, 349 (S.D.N.Y. 1992). The Court must make an informed judgment of whether the settlement is fair and equitable and in the best interests of the estate. *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991). The decision whether to approve a compromise is within the discretion of the bankruptcy court, *In re Del Grosso*, 106 B.R. 165, 167 (Bankr. N.D. Ill. 1989), which is required to review the reasonableness of the proposed settlement. *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992). The Court, however, must make an independent determination that the settlement meets the applicable standards by appraising itself of all factors relevant to an "assessment of the wisdom of the proposed compromise." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. V. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968).

It is not necessary to conduct a "mini trial" on the issue. *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 362 (Bankr. S.D.N.Y. 2002). Rather, the Court must canvas the issues and determine whether the settlement "falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Teltronics Serv., Inc.*, 762 F.2d 185,

1

189 (2d Cir. 1985).  Some of the factors considered by a court in this regard include:

>  - the probability of success in the litigation in comparison to the present and future benefits offered by the settlement;
> - the complexity of the litigation, the attendant expense, inconvenience and delay;
> - the paramount interest of creditors with proper deference to their reasonable view of the settlement; and
> - the extent to which the settlement is the product of arms-length bargaining.

*See*, *TMT Trailer Ferry, Inc*, 390 U.S. at 424; *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758 (Bankr. S.D.N.Y. 1992).

It was argued that the determination of the amount and classification of the SEC penalty, in issue here, can occur after confirmation of a plan of reorganization.  Based upon the record of these cases, the Court finds that, at a minimum, a delay in the determination and amount of the penalty would have a negative impact on the Debtors' estates, and possibly could make confirmation of a plan impossible.  If classification and amount of the penalty were uncertain at the time of a proposed plan and were intended to remain uncertain until some time after confirmation of a plan, questions related to section 1129(a)(7) would be difficult, if not impossible, to determine because of the impact of section 726(a)(4).  Specifically, the potential that a larger penalty might be assessed would make it difficult to determine if the Debtors meet, *inter alia*, the "best interest test" required for confirmation.  Further, any plan that proposes a reorganization, of some or all of the debtors, will be negatively impacted by uncertainty in the marketplace as to the Debtors' ability to emerge from bankruptcy as a going concern.  Even if the cases were confirmed, the instability in the marketplace caused by uncertainty as to the possibility of a subsequent adverse ruling concerning the amount and classification of any SEC penalty would hamper the Debtors' ability to fulfill their obligations under any plan that contemplates

2

rehabilitation. Therefore, the Court finds that the determination of the SEC penalty needs to be determined prior to the confirmation of a plan of reorganization.

The Court turns to the issues raised concerning the potential impact of the Final Penalty Judgment on the MCI estates, if such estates were to be separately consolidated under a plan of reorganization. In light of the fact that the SEC maintains that it could seek recovery from any of the Debtor entities because the allegations of fraud permeated the entire enterprise and, therefore, all the entities are at risk - a view that the Debtors do not dispute and that the Court views as a reasonable conclusion under the circumstances of these cases - the Court finds that the terms of the Settlement requiring that the agreed upon penalty amount be provided for under any chapter 11 plan is fair and reasonable to all estates, including the MCI estates. This is because

> (a) even if there was a separate consolidation of the MCI-Debtor estates, sufficient assets exist to satisfy the Final Penalty Judgment claim and also insure that the MCI creditors are paid in full; and
> (b) the resolution of the SEC penalty prior to the confirmation of a plan that includes a separate consolidation of the MCI estates would still provide a benefit to that process by providing the certainty of resolution as to the SEC issues and the amount of recovery the SEC could assert against such estates.

Among other reasons in support of the settlement, there are significant litigating hazards with regard to the potential for the resulting penalty to exceed the amount set forth in the settlement. Further, there are litigating hazards with respect to the classification of any penalty. Moreover, it is in the interest of the estates to resolve this dispute without engaging in expensive and lengthy litigation with its attendant delay.

Finally, although it is argued that the ultimate distribution to securities holders as contemplated by the settlement is violative of the "absolute priority rule" and subject to subordination under section

3

02-13533-mg    Doc 8125-1    Filed 08/06/03    Entered 08/06/03 17:19:57    Exhibit A
Pg 6 of 7

510 of the bankruptcy code, and even if this were ultimately determined to be the correct legal interpretation from a bankruptcy standpoint, nonetheless, there are sufficient legal issues that must be addressed - including the identity of the claimant, the discretion afforded the SEC in its use of the penalty, and the overall impact of Sarbanes-Oxley, as well as other issues that may be raised in a litigation to subordinate the claim - which issues, when combined with the unsettled nature of the law in this area, furnish sufficient doubt as to the outcome of any such litigation. This uncertainty provides support for the Debtors' position, as does the possibility that the district court judge might impose a greater penalty amount, as well as the negative impact the litigation of these issues would have on the overall outcome of these cases. In considering approval of a settlement, the Court is not required to resolve the underlying legal issues related to the settlement. Rather, the Court must canvas the issues and determine whether the settlement "falls below the lowest point in the range of reasonableness." Here, the Debtors, in their business judgment, with the support of the Official Committee of Unsecured Creditors support the approval of the settlement. The Court has made an independent determination and concluded that when considering the relevant factors, the settlement falls within the range of reasonableness and is fair and equitable and in the best interests of the Debtors' estates.

With respect to the Debtor's request, made in their responsive papers, to determine the preclusive effect of the approval of this Settlement, the Court declines to do so as such request for, in effect, a declaratory judgment is not properly before the Court. However, the law related to the preclusive effect of a court's ruling on a settlement of an estate's cause of action is well-settled.

Based upon the pleadings as filed and the representations made on the record, the Court finds that the Debtors have established that the settlement is "fair and reasonable" and in the best interests of

the Debtors' estates.

      Therefore, the Court overrules the objections and approves the Settlement.

      The Court will issue an order immediately attaching a copy of the statement read into the record as Exhibit "A."