take (or fail to cause to be taken) any action reasonably within their respective control that, under the REMIC Provisions, if taken or not taken, as the case may be, could (i) endanger the status of any portion of any of the REMICs as a REMIC or (ii) result in the imposition of a tax upon any of the REMICs (including but not limited to the tax on prohibited transactions as defined in Section 860F(a)(2) of the Code and the tax on contributions to a REMIC set forth in Section 860G(d) of the Code) (either such event, in the absence of an Opinion of Counsel or the indemnification referred to in this sentence, an "Adverse REMIC Event") unless the Servicer or the REMIC Administrator, as applicable, has received an Opinion of Counsel (at the expense of the party seeking to take such action or, if such party fails to pay such expense, and the Servicer or the REMIC Administrator, as applicable, determines that taking such action is in the best interest of the Trust Estate and the Noteholders and the Certificateholders, at the expense of the Trust Estate, but in no event at the expense of the Servicer, the REMIC Administrator, the Owner Trustee or the Indenture Trustee) to the effect that the contemplated action will not, with respect to each REMIC created hereunder, endanger such status or, unless the Servicer, the REMIC Administrator or both, as applicable, determine in its or their sole discretion to indemnify the Trust Estate against the imposition of such a tax, result in the imposition of such a tax. Wherever in this Agreement a contemplated action may not be taken because the timing of such action might result in the imposition of a tax on the Trust Estate, or may only be taken pursuant to an Opinion of Counsel that such action would not impose a tax on the Trust Estate, such action may nonetheless be taken provided that the indemnity given in the preceding sentence with respect to any taxes that might be imposed on the Trust Estate has been given and that all other preconditions to the taking of such action have been satisfied. The Indenture Trustee shall not take or fail to take any action (whether or not authorized hereunder) as to which the Servicer or the REMIC Administrator, as applicable, has advised it in writing that it has received an Opinion of Counsel to the effect that an Adverse REMIC Event could occur with respect to such action. In addition, prior to taking any action with respect to any of the REMICs created hereunder or any related assets thereof, or causing any of the REMICs to take any action, which is not expressly permitted under the terms of this Agreement, the Indenture Trustee will consult with the Servicer or the REMIC Administrator, as applicable, or its designee, in writing, with respect to whether such action could cause an Adverse REMIC Event to occur with respect to any of the REMICs, and the Indenture Trustee shall not take any such action or cause either REMIC to take any such action as to which the Servicer or the REMIC Administrator, as applicable, has advised it in writing that an Adverse REMIC Event could occur. The Servicer or the REMIC Administrator, as applicable, may consult with counsel to make such written advice, and the cost of same shall be borne by the party seeking to take the action not expressly permitted by this Agreement, but in no event at the expense of the Servicer or the REMIC Administrator. At all times as may be required by the Code, the Servicer will to the extent within its control and the scope of its duties more specifically set forth herein, maintain substantially all of the assets of each REMIC created hereunder as "qualified mortgages" as defined in Section 860G(a)(3) of the Code and "permitted investments" as defined in Section 860G(a)(5) of the Code.

(g)     In the event that any tax is imposed on "prohibited transactions" of any of the REMICs created hereunder as defined in Section 860F(a)(2) of the Code, on "net income from foreclosure property" of any of the REMICs as defined in Section 860G(c) of the Code, on any contributions to any of the REMICs after the Startup Day therefor pursuant to Section

860G(d) of the Code, or any other tax is imposed by the Code or any applicable provisions of state or local tax laws, such tax shall be charged (i) to the Servicer, if such tax arises out of or results from a breach by the Servicer of any of its obligations under this Agreement or the Servicer has in its sole discretion determined to indemnify the Trust Estate against such tax, (ii) to the Indenture Trustee, if such tax arises out of or results from a breach by the Trustee of any of its obligations under this Article XI, or (iii) otherwise against amounts on deposit in the Custodial Account and on the Payment Date(s) following such reimbursement the aggregate of such taxes shall be allocated in reduction of the accrued interest due on each Class entitled thereto on a pro rata basis.

(h)    The Indenture Trustee and the Servicer shall, for federal income tax purposes, maintain books and records with respect to each REMIC created hereunder on a calendar year and on an accrual basis or as otherwise may be required by the REMIC Provisions.

(i)    Following the Startup Day, neither the Servicer nor the Indenture Trustee shall accept any contributions of assets to any of the REMICs created hereunder unless (subject to Section 11.01(f)) the Servicer and the Indenture Trustee shall have received an Opinion of Counsel (at the expense of the party seeking to make such contribution) to the effect that the inclusion of such assets in such REMIC will not cause any of the REMICs to fail to qualify as a REMIC at any time that any Notes or Certificates are outstanding or subject any of the REMICs to any tax under the REMIC Provisions or other applicable provisions of federal, state and local law or ordinances.

(j)    Neither the Servicer nor the Trustee shall (subject to Section 11.01(f)) enter into any arrangement by which any of the REMICs created hereunder will receive a fee or other compensation for services nor permit any of the REMICs to receive any income from assets other than "qualified mortgages" as defined in Section 860G(a)(3) of the Code or "permitted investments" as defined in Section 860G(a)(5) of the Code.

(k)    Solely for the purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations, the "latest possible maturity date" by which the Certificate Principal Balance of each Class of Notes and Certificates representing a regular interest in the applicable REMIC is the Final Payment Date.

(l)    Within 30 days after the Closing Date, the REMIC Administrator shall prepare and file with the Internal Revenue Service Form 8811, "Information Return for Real Estate Mortgage Investment Conduits (REMIC) and Issuers of Collateralized Debt Obligations" for each REMIC created hereunder.

(m)    Neither the Indenture Trustee nor the Servicer shall sell, dispose of or substitute for any of the Mortgage Loans (except in connection with (i) the default, imminent default or foreclosure of a Mortgage Loan, including but not limited to, the acquisition or sale of a Mortgaged Property acquired by deed in lieu of foreclosure, (ii) the bankruptcy of any of the REMICs created hereunder, (iii) the termination of the applicable REMIC pursuant to Section 8.02 of the Trust Agreement or (iv) a purchase of Mortgage Loans pursuant to the Purchase Agreement) nor acquire any assets for any of the REMICs, nor sell or dispose of any

investments in the Custodial Account or the Payment Account for gain nor accept any contributions to any of the REMICs after the Closing Date unless it has received an Opinion of Counsel that such sale, disposition, substitution or acquisition will not (a) affect adversely the status of any of the REMICs as a REMIC or (b) unless the Servicer has determined in its sole discretion to indemnify the Trust Estate against such tax, cause any REMIC to be subject to a tax on "prohibited transactions" or "contributions" pursuant to the REMIC Provisions.

(n)     The Indenture Trustee will apply for an employer identification number from the Internal Revenue Service on a Form SS-4 or any other acceptable method for all tax entities.

Section 11.02  Servicer, REMIC Administrator and Indenture Trustee Indemnification.

The Indenture Trustee agrees to indemnify the Trust Estate, the REMIC Administrator and the Servicer for any taxes and costs including, without limitation, any reasonable attorneys fees imposed on or incurred by the Trust Estate or the Servicer, as a result of a breach of the Indenture Trustee's covenants set forth in Article VIII or this Article XI.

The REMIC Administrator agrees to indemnify the Trust Estate, the Servicer, the Depositor, the Owner Trustee and the Indenture Trustee for any taxes and costs (including, without limitation, any reasonable attorneys' fees) imposed on or incurred by the Trust Estate, the Depositor, GMACM Mortgage Corporation, the Servicer, the Owner Trustee or the Indenture Trustee, as a result of a breach of the REMIC Administrator's covenants set forth in this Article XI with respect to compliance with the REMIC Provisions, including without limitation, any penalties arising from the Owner Trustee's execution of Tax Returns prepared by the REMIC Administrator that contain errors or omissions; provided, however, that such liability will not be imposed to the extent such breach is a result of an error or omission in information provided to the REMIC Administrator by the Servicer in which case Section 11.02(c) will apply.

The Servicer agrees to indemnify the Trust Estate, the REMIC Administrator, the Owner Trustee and the Indenture Trustee for any taxes and costs (including, without limitation, any reasonable attorneys' fees) imposed on or incurred by the Trust Estate, the REMIC Administrator, the Owner Trustee or the Indenture Trustee, as a result of a breach of the Servicer's covenants set forth in this Article XI or in Article III with respect to compliance with the REMIC Provisions, including without limitation, any penalties arising from the Indenture Trustee's execution of Tax Returns prepared by the Servicer that contain errors or omissions.

Section 11.03  Designation of REMIC(s).

The REMIC Administrator will make an election to treat the entire segregated pool of assets described in the definition of Trust Estate (but excluding the Pre-Funding Account and the Capitalized Interest Account), and subject to this Agreement (including the Mortgage Loans, as set forth in Section 2.06 of the Trust Agreement ) as a REMIC ("REMIC I") and will make an election to treat the pool of assets comprised of the REMIC I Regular Interests as a REMIC ("REMIC II") for federal income tax purposes.

The REMIC I Regular Interests will be "regular interests" in REMIC I and the Class R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of the REMIC Provisions under the federal income tax law.

The REMIC II Regular Interests will be "regular interests" in REMIC II and the Class R-II Certificates will be the sole class of "residual interests" therein for purposes of the REMIC Provisions (as defined herein) under federal income tax law.

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GMACM HOME EQUITY LOAN TRUST 2006-HE3, as Issuer

By:   WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By:   _____
Name:   J. Christopher Murphy
Title:   Financial Services Officer

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Indenture Trustee

By:   _____
Name:
Title:

JPMORGAN CHASE BANK NATIONAL ASSOCIATION,
hereby accepts the appointment as Paying Agent pursuant to Section 3.03 hereof and as Note Registrar pursuant to Section 4.02 hereof.

By:   _____
Name:
Title:

Signatures and Seals

IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused their names to be signed hereto by their respective officers thereunto duly authorized, all as of the day and year first above written.

GMACM HOME EQUITY LOAN TRUST 2006-HE3, as Issuer

By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____
Name:
Title:

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as Indenture Trustee

By: _____
Name: Keith R. Richardson
Title:  Attorney-in-Fact

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
hereby accepts the appointment as Paying Agent pursuant to Section 3.03 hereof and as Note Registrar pursuant to Section 4.02 hereof.

By: _____
Name: Keith R. Richardson
Title:  Attorney-in-Fact

Signatures and Seals

STATE OF ___DELAWARE___ )
                                          )    ss.:
COUNTY OF ___NEW CASTLE___ )

On this 2[ day of August 2006, before me personally appeared ___J. Christopher Murphy___ to me known, who being by me duly sworn, did depose and say, that he/she resides at ___Wilmington___ ; that he/she is the Financial Services Officer of Wilmington Trust Company, the Owner Trustee, one of the corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

_Bethany J. Taylor_
Notary Public

Acknowledgements                    Bethany J. Taylor
                                    Notary Public - State of Delaware
                                    My Comm. Expires Oct. 20, 2007

STATE OF ILLINOIS          )
                                     ) ss.:
COUNTY OF COOK         )

On this _24th_ day of August 2006, before me personally appeared Keith R. Richardson, to me known, who being by me duly sworn, did depose and say, that he resides at Plainfield, Illinois; that he is the Attorney-in-Fact of JPMorgan Chase Bank, National Association, as Indenture Trustee, one of the corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

_____
Notary Public

NOTORIAL SEAL

OFFICIAL SEAL
DIANE MARY WUERTZ
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/03/10

# TABLE OF CONTENTS

**Page**

ARTICLE I      Definitions........................................................................................ 2

    Section 1.01      Definitions............................................................................. 2

    Section 1.02      Incorporation by Reference of Trust Indenture Act............................ 2

    Section 1.03      Rules of Construction ............................................................. 2

ARTICLE II      Original Issuance of Notes .................................................................. 3

    Section 2.01      Form.................................................................................. 3

    Section 2.02      Execution, Authentication and Delivery ........................................ 3

ARTICLE III      Covenants...................................................................................... 4

    Section 3.01      Collection of Payments with Respect to the Mortgage Loans ............. 4

    Section 3.02      Maintenance of Office or Agency................................................ 4

    Section 3.03      Money for Payments to Be Held in Trust; Paying Agent .................... 4

    Section 3.04      Existence ............................................................................ 6

    Section 3.05      Priority of Distributions; Defaulted Interest ................................... 6

    Section 3.06      Protection of Trust Estate......................................................... 9

    Section 3.07      Opinions as to Trust Estate ...................................................... 9

    Section 3.08      Performance of Obligations; Servicing Agreement........................... 10

    Section 3.09      Negative Covenants ............................................................... 10

    Section 3.10      Annual Statement as to Compliance ............................................ 11

    Section 3.11      Recordation of Assignments ..................................................... 11

    Section 3.12      Representations and Warranties Concerning the Mortgage
                       Loans.................................................................................. 11

    Section 3.13      Assignee of Record of the Mortgage Loans ................................... 12

    Section 3.14      Servicer as Agent and Bailee of the Indenture Trustee...................... 12

    Section 3.15      Investment Company Act ......................................................... 12

    Section 3.16      Issuer May Consolidate, etc..................................................... 12

    Section 3.17      Successor or Transferee .......................................................... 14

    Section 3.18      No Other Business ................................................................. 14

    Section 3.19      No Borrowing ...................................................................... 14

    Section 3.20      Guarantees, Loans, Advances and Other Liabilities.......................... 14

    Section 3.21      Capital Expenditures .............................................................. 15

# TABLE OF CONTENTS
(continued)

**Page**

Section 3.22   Owner Trustee Not Liable for Certificates or Related Documents ........... 15

Section 3.23   Restricted Payments ........... 15

Section 3.24   Notice of Events of Default ........... 15

Section 3.25   Further Instruments and Acts ........... 15

Section 3.26   Statements to Noteholders ........... 15

Section 3.27   Determination of Note Rate ........... 16

Section 3.28   Payments under the Policy ........... 16

Section 3.29   Replacement/Additional Enhancement ........... 16

Section 3.30   Additional Representations of Issuer ........... 17

Section 3.31   Hedge Agreement ........... 18

ARTICLE IV   The Notes; Satisfaction And Discharge Of Indenture ........... 18

Section 4.01   The Notes ........... 18

Section 4.02   Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate Registrar ........... 19

Section 4.03   Mutilated, Destroyed, Lost or Stolen Notes ........... 20

Section 4.04   Persons Deemed Owners ........... 21

Section 4.05   Cancellation ........... 21

Section 4.06   Book-Entry Notes ........... 21

Section 4.07   Notices to Depository ........... 22

Section 4.08   Definitive Notes ........... 22

Section 4.09   Tax Treatment ........... 22

Section 4.10   Satisfaction and Discharge of Indenture ........... 23

Section 4.11   Application of Trust Money ........... 24

Section 4.12   Subrogation and Cooperation ........... 24

Section 4.13   Repayment of Monies Held by Paying Agent ........... 25

Section 4.14   Temporary Notes ........... 25

ARTICLE V   Default And Remedies ........... 25

Section 5.01   Events of Default ........... 25

Section 5.02   Acceleration of Maturity; Rescission and Annulment ........... 26

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| Section 5.03 | Collection of Indebtedness and Suits for Enforcement by Indenture Trustee | 26 |
| Section 5.04 | Remedies; Priorities | 28 |
| Section 5.05 | Optional Preservation of the Trust Estate | 30 |
| Section 5.06 | Limitation of Suits | 30 |
| Section 5.07 | Unconditional Rights of Noteholders to Receive Principal and Interest | 31 |
| Section 5.08 | Restoration of Rights and Remedies | 31 |
| Section 5.09 | Rights and Remedies Cumulative | 32 |
| Section 5.10 | Delay or Omission Not a Waiver | 32 |
| Section 5.11 | Control by Enhancer or Noteholders | 32 |
| Section 5.12 | Waiver of Past Defaults | 33 |
| Section 5.13 | Undertaking for Costs | 33 |
| Section 5.14 | Waiver of Stay or Extension Laws | 33 |
| Section 5.15 | Sale of Trust Estate | 33 |
| Section 5.16 | Action on Notes | 35 |
| Section 5.17 | Performance and Enforcement of Certain Obligations | 35 |
| ARTICLE VI | The Indenture Trustee | 36 |
| Section 6.01 | Duties of Indenture Trustee | 36 |
| Section 6.02 | Rights of Indenture Trustee | 38 |
| Section 6.03 | Individual Rights of Indenture Trustee | 39 |
| Section 6.04 | Indenture Trustee's Disclaimer | 39 |
| Section 6.05 | Notice of Event of Default | 39 |
| Section 6.06 | Reports by Indenture Trustee to Noteholders | 39 |
| Section 6.07 | Compensation and Indemnity | 40 |
| Section 6.08 | Replacement of Indenture Trustee | 40 |
| Section 6.09 | Successor Indenture Trustee by Merger | 41 |
| Section 6.10 | Appointment of Co-Indenture Trustee or Separate Indenture Trustee | 42 |
| Section 6.11 | Eligibility; Disqualification | 43 |
| Section 6.12 | Preferential Collection of Claims Against Issuer | 43 |

# TABLE OF CONTENTS
## (continued)

Page

Section 6.13    Representations and Warranties.........................................................43

Section 6.14    Directions to Indenture Trustee .........................................................44

Section 6.15    Indenture Trustee May Own Securities ............................................44

ARTICLE VII    Noteholders' Lists and Reports..........................................................44

Section 7.01    Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders.........................................................................................44

Section 7.02    Preservation of Information; Communications to Noteholders .........44

Section 7.03    Reports by Issuer..............................................................................45

Section 7.04    Reports by Indenture Trustee............................................................45

Section 7.05    Exchange Act Reporting ...................................................................45

ARTICLE VIII    Accounts, Disbursements and Releases .........................................46

Section 8.01    Collection of Money .........................................................................46

Section 8.02    Trust Accounts .................................................................................46

Section 8.03    Officer's Certificate .........................................................................47

Section 8.04    Termination Upon Distribution to Noteholders .................................47

Section 8.05    Release of Trust Estate......................................................................47

Section 8.06    Surrender of Notes Upon Final Payment ..........................................48

ARTICLE IX    Supplemental Indentures.....................................................................48

Section 9.01    Supplemental Indentures Without Consent of Noteholders...............48

Section 9.02    Supplemental Indentures With Consent of Noteholders....................49

Section 9.03    Execution of Supplemental Indentures .............................................51

Section 9.04    Effect of Supplemental Indenture .....................................................51

Section 9.05    Conformity with Trust Indenture Act ...............................................51

Section 9.06    Reference in Notes to Supplemental Indentures................................51

ARTICLE X    Miscellaneous .......................................................................................51

Section 10.01    Compliance Certificates and Opinions, etc.......................................51

Section 10.02    Form of Documents Delivered to Indenture Trustee .........................53

Section 10.03    Acts of Noteholders .........................................................................54

Section 10.04    Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating Agencies............................................................................................55

Section 10.05    Notices to Noteholders; Waiver........................................................55

# TABLE OF CONTENTS
## (continued)

**Page**

Section 10.06    Alternate Payment and Notice Provisions ........................................... 56

Section 10.07    Conflict with Trust Indenture Act ..................................................... 56

Section 10.08    Effect of Headings ........................................................................ 56

Section 10.09    Successors and Assigns.................................................................. 56

Section 10.10    Severability .................................................................................. 56

Section 10.11    Benefits of Indenture..................................................................... 57

Section 10.12    Legal Holidays .............................................................................. 57

Section 10.13    GOVERNING LAW ....................................................................... 57

Section 10.14    Counterparts ................................................................................. 57

Section 10.15    Recording of Indenture .................................................................. 57

Section 10.16    Issuer Obligation ........................................................................... 57

Section 10.17    No Petition .................................................................................... 58

Section 10.18    Inspection ..................................................................................... 58

ARTICLE XI    REMIC Provisions ...................................................................... 58

Section 11.01    REMIC Administration................................................................... 58

Section 11.02    Servicer, REMIC Administrator and Indenture Trustee
Indemnification ............................................................................. 62

Section 11.03    Designation of REMIC(s) ............................................................ 62

EXHIBITS

Exhibit A    -    Form of Notes
Exhibit B    -    Form of 144A Investment Representation
Exhibit C    -    Form of Investor Representation Letter
Exhibit D    -    Form of Transferor Certificate
Appendix A    -    Definitions

## APPENDIX A

## DEFINITIONS

Accrued Certificate Interest:  With respect to the Class SB Certificates, interest accrued during the related Interest Period at the Certificate Rate for such Certificate on its Notional Amount for such Payment Date.

Addition Notice:  With respect to the transfer of Subsequent Mortgage Loans to the Issuer by a Seller pursuant to Section 2.2 of the Purchase Agreement (in substantially the form set forth in Exhibit 3 to such agreement), a notice given by the respective Seller to the Rating Agencies, the Indenture Trustee, the Enhancer and the Owner Trustee, which shall be given not later than two Business Days prior to the related Subsequent Transfer Date, of (i) the Seller's designation of Subsequent Mortgage Loans to be sold to the Issuer and (ii) the aggregate principal balance as of the Subsequent Cut-Off Date of such Subsequent Mortgage Loans.

Adverse REMIC Event:  As defined in Section 11.01(f) of the Indenture.

Affiliate:  With respect to any Person, any other Person controlling, controlled by or under common control with such Person.  For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

Appraised Value:  With respect to any Mortgaged Property, either (x) the value as generally set forth in an appraisal of such Mortgaged Property used to establish compliance with the underwriting criteria then in effect in connection with the application for the Mortgage Loan secured by such Mortgaged Property, or (y) if the sales price of such Mortgaged Property is considered in accordance with the underwriting criteria applicable to the related Mortgage Loan, the lesser of (i) the appraised value referred to in (x) above and (ii) the sales price of such Mortgaged Property.

Assignment of Mortgage:  With respect to any Mortgage, an assignment, notice of transfer or equivalent instrument, in recordable form, sufficient under the laws of the jurisdiction in which the related Mortgaged Property is located to reflect the conveyance of such Mortgage, which assignment, notice of transfer or equivalent instrument may be in the form of one or more blanket assignments covering Mortgages secured by Mortgaged Properties located in the same jurisdiction.

Authorized Newspaper:  A newspaper of general circulation in the Borough of Manhattan, The City of New York, printed in the English language and customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays.

Authorized Officer:  With respect to the Issuer, any officer of the Owner Trustee who is authorized to act for the Owner Trustee in matters relating to the Issuer and who is identified on

1

the list of Authorized Officers delivered by the Owner Trustee to the Indenture Trustee on the Closing Date (as such list may be modified or supplemented from time to time thereafter).

Bankruptcy Code: The Bankruptcy Code of 1978, as amended.

Basic Documents: The Trust Agreement, the Indenture, the Purchase Agreement, the Insurance Agreement, the Policy, the Servicing Agreement, the Custodial Agreement, any Subsequent Transfer Agreement and the other documents and certificates delivered in connection with any of the above.

Beneficial Owner: With respect to any Note, the Person who is the beneficial owner of such Note as reflected on the books of the Depository or on the books of a Person maintaining an account with such Depository (directly as a Depository Participant or indirectly through a Depository Participant, in accordance with the rules of such Depository).

Billing Cycle: With respect to any Mortgage Loan and Due Date, the calendar month preceding such Due Date.

Book-Entry Notes: Beneficial interests in the Notes, ownership and transfers of which shall be made through book entries by the Depository as described in Section 4.06 of the Indenture.

Business Day: Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the States of New York, Pennsylvania, Delaware or any State in which the Corporate Trust Office are required or authorized by law to be closed.

Capitalized Interest Account: The account established and maintained pursuant to Section 3.19 of the Servicing Agreement.

Capitalized Interest Requirement: With respect to each Payment Date during the Pre-Funding Period and on the Payment Date immediately after the end of the Pre-Funding Period, the excess, if any of (i) the sum of (A) the amount of interest that would accrue at the Net WAC Rate for the related Interest Period on the amount on deposit in the Pre-Funding Account as of the close of business on the preceding Payment Date (or as of the Closing Date, in the case of the first Payment Date) and (B) the amount of any fees paid to the Enhancer for the Policy, over (ii) the amount of reinvestment earnings since the preceding Payment Date (or the Closing Date, in the case of the first Payment Date) in the Pre-Funding Account.

Certificate Balance: With respect to any Payment Date and the Class SB Certificates, an amount equal to the then applicable Certificate Percentage Interest of such Certificate multiplied by the Overcollateralization Amount.

Certificate Distribution Amount: For any Payment Date, the amount, if any, distributable on the Certificates for such Payment Date pursuant to Section 3.05(a)(xv) of the Indenture.

Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to Section 3810(a) of the Statutory Trust Statute.

<u>Certificate Paying Agent</u>:   The Certificate Paying Agent appointed pursuant to Section 3.10 of the Trust Agreement.  Initially the Indenture Trustee has been appointed as the Certificate Paying Agent.

<u>Certificate Percentage Interest</u>:  With respect to any Payment Date and any Certificate, the Percentage Interest for such Certificate.

<u>Certificate Rate</u>: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO and any Payment Date, a rate per annum equal to the percentage equivalent of a fraction, the numerator of which is the sum of the amounts calculated pursuant to clauses (i) through (iii) below, and the denominator of which is the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests.  For purposes of calculating the Certificate Rate for the Class SB Certificates and REMIC II Regular Interest SB-IO, the numerator is equal to the sum of the following components:

(i)     the REMIC I Remittance Rate for REMIC I Regular Interest LT1 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT1;

(ii)    the REMIC I Remittance Rate for REMIC I Regular Interest LT2 minus the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT2; and

(iii)   the REMIC I Remittance Rate for REMIC I Regular Interest LT4 minus twice the SB-IO Marker Rate, applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I Regular Interest LT4.

<u>Certificate Register</u>:  The register maintained by the Certificate Registrar in which the Certificate Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

<u>Certificate Registrar</u>:  The Certificate Registrar appointed pursuant to Section 3.05 of the Trust Agreement.  Initially the Indenture Trustee has been appointed as the Certificate Registrar.

<u>Certificateholder</u>:  The Person in whose name a Certificate is registered in the Certificate Register except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee or any Affiliate of the Owner Trustee or the Indenture Trustee shall be deemed not to be outstanding and the registered holder will not be considered a Certificateholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Certificates that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded.  Owners of Certificates that have been pledged in good faith may be regarded as Certificateholders if the pledgee establishes to the satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the Certificates or any Affiliate of the Owner Trustee or the Indenture Trustee.

Certificates: The Collective the Class R and the Class SB Certificates.

Class : With respect to any Note, all Notes that bear the same Class designation, (i.e., the Class A-1 Notes as a group, Class A-2 Notes as a group, Class A-3 Notes as a group, Class A-4 Notes as a group and the Class A-5 Notes as a group). With respect to any Certificate, all Certificates that bear the same Class designation, (i.e., the Class SB Certificates as a group, Class R-I Certificates as a group and Class R-II Certificates as a group). With respect to any Regular Interest, all Regular Interests that bear the same class designation.

Class A-1 Notes: The Class A-1 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE3, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-2 Notes: The Class A-2 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE3, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-3 Notes: The Class A-3 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE3, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-4 Notes: The Class A-4 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE3, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-5 Lockout Distribution Amount: With respect to any Payment Date, the product of (a) the Class A-5 Lockout Percentage for such Payment Date and (b) the Class A-5 Pro Rata Distribution Amount for such Payment Date. In no event shall the Class A-5 Lockout Distribution Amount for a Payment Date exceed the Principal Collection Distribution Amount or the Note Balance of the Class A-5 Notes immediately prior to such Payment Date.

Class A-5 Lockout Percentage: With respect to each Payment Date, the applicable percentage set forth below:

| Payment Dates | Class A-5 Lockout Percentage |
|---|---|
| September 2006 through and including August 2009 .......... | 0% |
| September 2009 through and including August 2011 .......... | 45% |
| September 2011 through and including August 2012 .......... | 80% |
| September 2012 through and including August 2013 .......... | 100% |
| September 2013 and thereafter ............................................. | 300% |

Class A-5 Notes: The Class A-5 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE3, in substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-5 Pro Rata Distribution Amount: With respect to any Payment Date, an amount equal to the product of (a) a fraction, the numerator of which is the Note Balance of the Class A-5 Notes immediately prior to such Payment Date and the denominator of which is the

aggregate Note Balance of the Notes immediately prior to such Payment Date and (b) the Principal Distribution Amount.

Class Principal Balance: For each Class of Notes, the Initial Note Balance thereof as reduced on each successive Payment Date by principal distributed in respect thereof on such Payment Date pursuant to Section 3.03 of the Servicing Agreement and Section 3.05 of the Indenture.

Class R Certificates: The Class R-I Certificates and Class R-II Certificates, each as substantially in the form of Exhibit I to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Certificates: The Class SB Certificates substantially in the form of Exhibit A to the Trust Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Distribution Amount: On any Payment Date, the sum of (i) Accrued Certificate Interest for such Payment Date, (ii) the amounts payable to the Certificates pursuant to Section 3.05(a)(ix) of the Indenture and (iii) the Overcollateralization Release Amount, if any, for the Determination Date related to such Payment Date, reduced, but not below zero, by the Liquidation Loss Distribution Amount and Overcollateralization Increase Amount for such Payment Date, all of the foregoing done without double counting either in addition or subtraction.

Closing Date: August 30, 2006.

Code: The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period: With respect to any Mortgage Loan and Payment Date, the calendar month preceding any such Payment Date.

Collections: With respect to any Collection Period, all Interest Collections and Principal Collections during such Collection Period.

Combined Loan-to-Value Ratio or CLTV: With respect to each Mortgage Loan, the ratio, expressed as a percentage, of the sum of (i) the initial principal balance of such Mortgage Loan, and (ii) any outstanding principal balance, at origination of such Mortgage Loan, of all other mortgage loans, if any, secured by senior or subordinate liens on the related Mortgaged Property, to the Appraised Value, or, when not available, the Stated Value.

Commission: The Securities and Exchange Commission.

Corporate Trust Office: With respect to the Indenture Trustee, Certificate Registrar, Certificate Paying Agent and Paying Agent, the principal corporate trust office of the Indenture Trustee and Note Registrar at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this instrument is located at 4 New

York Plaza, 6th Floor, New York, New York 10004, Attention: Worldwide Securities Services/Structured Finance Services–GMACM Series 2006-HE3. With respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any particular time its corporate trust business shall be administered, which office at the date of the execution of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890, Attention: Corporate Trust Administration.

Custodial Account: The account or accounts created and maintained by the Servicer pursuant to Section 3.02(b) of the Servicing Agreement, in which the Servicer shall deposit or cause to be deposited certain amounts in respect of the Mortgage Loans.

Custodial Agreement: The Custodial Agreement, dated the Closing Date, among the Custodian, the Indenture Trustee, the Issuer and the Servicer relating to the custody of the Mortgage Loans and the Related Documents.

Custodian: GMAC Bank and its successors and assigns, as applicable pursuant to the Custodial Agreement, or any other successor custodian of the Mortgage Files appointed by the Indenture Trustee and reasonably acceptable to the Enhancer and the Servicer.

Cut-Off Date: August 1, 2006.

Cut-Off Date Principal Balance: With respect to any Initial Mortgage Loan or Subsequent Mortgage Loan, the unpaid principal balance thereof as of the close of business on the last day of the Billing Cycle immediately prior to the Cut-Off Date or Subsequent Cut-Off Date, as the case may be.

Default: Any occurrence which is or with notice or the lapse of time or both would become an Event of Default.

Deficiency Amount: As defined in the Policy.

Definitive Notes: Any definitive, fully registered Note, as described in Section 4.06 of the Indenture.

Deleted Loan: A Mortgage Loan replaced or to be replaced with an Eligible Substitute Loan.

Delinquent: As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly due date. Since the determination as to whether a Mortgage Loan falls into these categories is made as of the close of business on the last business day of each month, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would still be considered current as of July 31. If that payment remained unpaid as of the close of business on August 31, the Mortgage Loan would then be considered 30-59 days delinquent. Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Delinquency Percentages: With respect to any Payment Date, the percentage equivalent of a fraction (A) the numerator of which is the Principal Balance that are Delinquent for 60 days or more as of such Payment Date and (B) the denominator of which is the Pool Balance, in each case as of the beginning of the related Collection Period, expressed as a percentage.

Depositor:  Residential Asset Mortgage Products, Inc., a Delaware corporation, or its successor in interest.

Depository:  The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Issuer.  Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Commission thereunder.

Depository Participant:  A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date:  With respect to any Payment Date, the 18th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Disqualified Organization:  Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, and if not otherwise included, any of the following:  (i) the United States, any State or political subdivision thereof, any possession of the United States, or any agency or instrumentality of any of the foregoing (other than an instrumentality which is a corporation if all of its activities are subject to tax and, except for Freddie Mac, a majority of its board of directors is not selected by such governmental unit), (ii) a foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (iii) any organization (other than certain farmers' cooperatives described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code (including the tax imposed by Section 511 of the Code on unrelated business taxable income), (iv) rural electric and telephone cooperatives described in Section 1381(a)(2)(C) of the Code, (v) any "electing large partnership," as defined in Section 775(a) of the Code and (vi) any other Person so designated by the Trustee based upon an Opinion of Counsel that the holding of an Ownership Interest in a Class R Certificate by such Person may cause the Trust Estate or any Person having an Ownership Interest in any Class of Certificates (other than such Person) to incur a liability for any federal tax imposed under the Code that would not otherwise be imposed but for the Transfer of an Ownership Interest in a Class R Certificate to such Person.  The terms "United States," "State" and "international organization" shall have the meanings set forth in Section 7701 of the Code or successor provisions.

Distribution Account:  The account or accounts created and maintained by the Certificate Paying Agent pursuant to Section 3.10(c) of the Trust Agreement.  The Certificate Paying Agent will make all distributions on the Certificates from money on deposit in the Distribution Account.

Due Date:  With respect to each Mortgage Loan, the date on which monthly payments on such Mortgage Loan are due.

Eligible Account:  An account that is any of the following:  (i) maintained with a depository institution the short-term debt obligations of which have been rated by each Rating Agency in its highest rating category available, or (ii) an account or accounts in a depository institution in which such accounts are fully insured to the limits established by the FDIC, provided that any deposits not so insured shall, to the extent acceptable to each Rating Agency, as evidenced in writing, be maintained such that (as evidenced by an Opinion of Counsel delivered to the Indenture Trustee and each Rating Agency) the Indenture Trustee have a claim with respect to the funds in such account or a perfected first security interest against any collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) an account or accounts maintained with a depository institution or trust company, as long as its short-term debt obligations are rated P-1 by Moody's, and A-1+ by Standard & Poor's (or the equivalent) or better by each Rating Agency, and its long term debt obligations are rated A2 by Moody's and AA- by Standard & Poor's (or the equivalent) or better by each Rating Agency, or (iv) a segregated trust account or accounts maintained in the corporate trust division of a depository institution or trust company, acting in its fiduciary capacity, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account will not cause a Rating Event (if determined without regard to the Policy).

Eligible Substitute Loan:  A Mortgage Loan substituted by either Seller for a Deleted Loan, which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Indenture Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the outstanding principal balance of the Deleted Loan (the amount of any shortfall to be deposited by the Seller in the Custodial Account in the month of substitution); (ii) comply with each representation and warranty made by GMACM and set forth in Section 3.1(b) of the Purchase Agreement, other than clauses (viii), (xiii), (xxiv), (xxv)(B), (xxvi) and (xxvii) thereof, and comply with each of the representations and warranties made by WG Trust 2003 set forth in Section 3.1(d)(II) of the Purchase Agreement, as of the date of substitution; (iii) have a Loan Rate and Net Loan Rate no lower than and not more than 1% per annum higher than the Loan Rate and Net Loan Rate, respectively, of the Deleted Loan as of the date of substitution; (iv) have a CLTV at the time of substitution no higher than that of the Deleted Loan at the time of substitution; (v) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Loan; and (vi) not be 30 days or more delinquent.

Enhancer: Financial Guaranty Insurance Company, or any successor thereto.

Enhancer Default:  Any failure by the Enhancer to make a payment required under the Policy in accordance with its terms.

Enhancer Optional Deposit:  Amounts deposited by or on behalf of the Enhancer in the Note Payment Account, other than Insured Payments, to be applied to the Notes.

ERISA:  The Employee Retirement Income Security Act of 1974, as amended.

Event of Default:   With respect to the Indenture, any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(a)   a default in the payment of the principal of, any installment of the principal of or interest on any Note when the same becomes due and payable, and such default shall continue for a period of five days;

(b)   there occurs a default in the observance or performance in any material respect of any covenant or agreement of the Issuer made in the Indenture, or any representation or warranty of the Issuer made in the Indenture or in any certificate delivered pursuant hereto or in connection herewith proving to have been incorrect in any material respect as of the time when the same shall have been made that has a material adverse effect on the Noteholders or the Enhancer, and such default shall continue or not be cured, or the circumstance or condition in respect of which such representation or warranty was incorrect shall not have been eliminated or otherwise cured, for a period of 30 days after there shall have been given, by registered or certified mail, to the Issuer by the Indenture Trustee or to the Issuer and the Indenture Trustee by the Enhancer or the Noteholders of at least 25% of the aggregate Note Balance of the Notes, a written notice specifying such default or incorrect representation or warranty and requiring it to be remedied and stating that such notice is a notice of default hereunder;

(c)   there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of the Issuer or any substantial part of the Trust Estate in an involuntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the Trust Estate, or ordering the winding-up or liquidation of the Issuer's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or

(d)   there occurs the commencement by the Issuer of a voluntary case under any applicable federal or state bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by the Issuer to the entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of the foregoing.

Exchange Act:   The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Excess Spread:   With respect to any Payment Date and without taking into account any Insured Payment, if any, paid by the Enhancer under the Policy for such Payment Date, the excess, if any, of (i) Interest Collections for the related Collection Period over (ii) the sum of (x) the sum of (A) the premium allocable to such Payment Date and (B) any unpaid premium for

the Policy, with interest thereon as provided in the Insurance Agreement and (y) the aggregate amount distributed to the Noteholders as interest on such Payment Date pursuant to Section 3.05(a)(i) of the Indenture.

Expenses:  The meaning specified in Section 7.02 of the Trust Agreement.

Fannie Mae:  Fannie Mae, formerly the Federal National Mortgage Association, or any successor thereto.

FDIC:  The Federal Deposit Insurance Corporation or any successor thereto.

Final Payment Date:  The Payment Date in October 2036.

Fiscal Year:  The fiscal year of the Trust, which shall end on December 31 of each year.

Foreclosure Profit:  With respect to a Liquidated Mortgage Loan, the amount, if any, by which (i) the aggregate of Liquidation Proceeds net of Liquidation Expenses exceeds (ii) the Principal Balance of such Liquidated Mortgage Loan (plus accrued and unpaid interest thereon at the applicable Loan Rate from the date interest was last paid through the date of receipt of the final Liquidation Proceeds) immediately prior to the final recovery of the related Liquidation Proceeds.

Form 10-K Certification:  As defined in Section 4.02(c) of the Servicing Agreement.

Freddie Mac:  Freddie Mac, formerly the Federal Home Loan Mortgage Corporation, or any successor thereto.

GAAP: Generally accepted accounting principles.

Grant:  Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create, and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm pursuant to the Indenture.  A Grant of the Collateral or of any other agreement or instrument shall include all rights, powers and options (but none of the obligations) of the granting party thereunder, including the immediate and continuing right to claim for, collect, receive and give receipt for principal and interest payments in respect of such collateral or other agreement or instrument and all other moneys payable thereunder, to give and receive notices and other communications, to make waivers or other agreements, to exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and generally to do and receive anything that the granting party is or may be entitled to do or receive thereunder or with respect thereto.

GMAC:  General Motors Acceptance Corporation, and its successors and assigns.

GMACM:  GMAC Mortgage Corporation, and its successors and assigns.

Hedge Agreement:  The confirmation, dated as of the Closing Date, between the Indenture Trustee, on behalf of the Trust Fund, and the Hedge Agreement Provider, relating to

the Class A-1 Notes and Class SB Certificates or any replacement, substitute, collateral or other arrangement in lieu thereof.

Hedge Agreement Provider:  JPMorgan Chase Bank, National Association, and its successors and assigns or any party to any replacement, substitute, collateral or other arrangement in lieu thereof.

Hedge Payment:  For any Payment Date, the payment, if any, due under the Hedge Agreement in respect of such Payment Date.

Hedge Shortfall Amount:  For any Payment Date, the amount, if any, by which the payment on the Class A-1 Notes pursuant to Section 3.05(d) of the Indenture is paid from the Hedge Payments for such Payment Date pursuant to the provisions thereof or would have been so paid but for the failure of the Hedge Agreement Provider to make a payment required under the Hedge Agreement.

Indemnified Party:  The meaning specified in Section 7.02 of the Trust Agreement.

Indenture:  The indenture dated as of the Closing Date between the Issuer and the Indenture Trustee.

Indenture Trustee: JPMorgan Chase Bank, National Association, a national banking association, and its successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent:  When used with respect to any specified Person, such Person (i) is in fact independent of the Issuer, any other obligor on the Notes, the Sellers, the Depositor and any Affiliate of any of the foregoing Persons, (ii) does not have any direct financial interest or any material indirect financial interest in the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter, trustee, partner, director or person performing similar functions.

Independent Certificate:  A certificate or opinion to be delivered to the Indenture Trustee under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the Indenture Trustee in the exercise of reasonable care, and such opinion or certificate shall state that the signer has read the definition of "Independent" in this Indenture and that the signer is Independent within the meaning thereof.

Initial Aggregate Note Balance: $1,142,334,000.

Initial Class A-1 Note Balance: $589,100,000.

Initial Class A-2 Note Balance: $160,700,000.

Initial Class A-3 Note Balance: $185,800,000.

Initial Class A-4 Note Balance: $92,501,000.

Initial Class A-5 Note Balance: $114,233,000.

Initial Certificate Balance: $6,895,742.87.

Initial Mortgage Loans:  The mortgage loans initially transferred by the Depositor to the Issuer on the Closing Date, which are listed on the Mortgage Loan Schedule on such date.

Initial Note Balance: The Initial Class A-1 Note Balance, Initial Class A-2 Note Balance, Initial Class A-3 Note Balance, Initial Class A-4 Note Balance or Initial Class A-5 Note Balance as applicable.

Initial Pool Balance:  The sum of (a) the aggregate Principal Balances of the Initial Mortgage Loans as of the Cut-off Date and (b) the Original Pre-Funded Amount.

Insolvency Event:  With respect to a specified Person, (a) the filing of a decree or order for relief by a court having jurisdiction in the premises in respect of such Person or any substantial part of its property in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or ordering the winding-up or liquidation of such Person's affairs, and such decree or order shall remain unstayed and in effect for a period of 60 consecutive days; or (b) the commencement by such Person of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by such Person to the entry of an order for relief in an involuntary case under any such law, or the consent by such Person to the appointment of or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for such Person or for any substantial part of its property, or the making by such Person of any general assignment for the benefit of creditors, or the failure by such Person generally to pay its debts as such debts become due or the admission by such Person in writing (as to which the Indenture Trustee shall have notice) of its inability to pay its debts generally, or the adoption by the Board of Directors or managing member of such Person of a resolution which authorizes action by such Person in furtherance of any of the foregoing.

Insurance Agreement:  The Insurance and Indemnity Agreement dated as of the Closing Date, among the Servicer, the Sellers, the Depositor, the Issuer, the Indenture Trustee and the Enhancer, including any amendments and supplements thereto.

Insurance Proceeds:  Proceeds paid by any insurer (other than the Enhancer) pursuant to any insurance policy covering a Mortgage Loan which are required to be remitted to the Servicer, or amounts required to be paid by the Servicer pursuant to the next to last sentence of Section 3.04 of the Servicing Agreement, net of any component thereof (i) covering any expenses incurred by or on behalf of the Servicer in connection with obtaining such proceeds, (ii) that is applied to the restoration or repair of the related Mortgaged Property, (iii) released to the related Mortgagor in accordance with the Servicer's normal servicing procedures or (iv) required to be paid to any holder of a mortgage senior to such Mortgage Loan.

Insured Payment:  As defined in the Policy.

12

**Interest Carry Forward Amount:** With respect to any Payment Date and any Class of Notes (other than the Class A-1 Notes) the sum of:

(1) if on such Payment Date the Note Rate on any such Class is limited to the Net WAC Rate, the excess of (a) the amount of interest such Class would have been entitled to receive without regard to the Net WAC Rate on such Payment Date, over (b) the amount of interest that such Class was entitled to receive on such Payment Date because the applicable Note Rate was calculated at the Net WAC Rate; and

(2) the Interest Carry Forward Amount for all previous Payment Dates for such Class not previously paid, together with interest thereon at a rate equal to the Note Rate for such Payment Date.

With respect to any Payment Date and the Class A-1 Notes, the sum of: (1) the excess of:

- if on such Payment Date the Note Rate for the Class A-1 Notes is limited to the Net WAC Rate, the amount of interest that the Class A-1 Notes would have been entitled to receive on such Payment Date had the applicable Note Rate been calculated as a per annum rate equal to the lesser of (a) One-Month LIBOR plus the related Margin and (b) with respect to the Class A-1 Notes only, 10.00%, over

- the amount of interest that the Class A-1 Notes were entitled to receive on such Payment Date because the applicable Note Rate was calculated at the Net WAC Rate; and

(2)   the Interest Carry Forward Amount for the Class A-1 Notes for all previous Payment Dates not previously paid, together with interest thereon at a rate equal to the applicable Note Rate for such Payment Date.

**Interest Collections:** With respect to any Payment Date, the sum of all payments by or on behalf of Mortgagors and any other amounts constituting interest (including without limitation such portion of Insurance Proceeds, Net Liquidation Proceeds and Repurchase Prices as is allocable to interest on the applicable Mortgage Loan) as is paid by the Sellers or the Servicer (including any optional servicing advance) or is collected and applied by the Servicer under the Mortgage Loans during the related Collection Period, and reduced by the Servicing Fee for the related Collection Period and by any fees (including annual fees) or late charges or similar administrative fees paid by Mortgagors during the related Collection Period. The terms of the related Mortgage Note shall determine the portion of each payment in respect of such Mortgage Loan that constitutes principal or interest.

**Interest Coverage Amount:** The amount to be paid from proceeds from the sale of the Notes for deposit into the Capitalized Interest Account pursuant to Section 3.19 of the Servicing Agreement on the Closing Date, which amount initially shall be $2,837,288.46 and thereafter, shall be the amount computed in accordance with Section 3.19 of the Servicing Agreement.

**Interest Period:** With respect to each Class of Notes (other than the Class A-1 Notes) and any Payment Date, the calendar month preceding such Payment Date. With respect to any Payment Date and the Class A-1 Notes, other than the first Payment Date, the period commencing on the Payment Date in the month immediately preceding the month in which such Payment Date occurs and ending on the day preceding such Payment Date, and in the case of the

first Payment Date, the period commencing on the Closing Date and ending on the day preceding the first Payment Date.

Issuer or Trust:  The GMACM Home Equity Loan Trust 2006-HE3, a Delaware statutory trust, or its successor in interest.

Issuer Order or Issuer Request:  A written order or request signed in the name of the Issuer by any one of its Authorized Officers and delivered to the Indenture Trustee.

LIBOR Business Day:  Any day other than (i) a Saturday or a Sunday or (ii) a day on which banking institutions in the city of London, England are required or authorized by law to be closed.

Lien:  Any mortgage, deed of trust, pledge, conveyance, hypothecation, assignment, participation, deposit arrangement, encumbrance, lien (statutory or other), preference, priority right or interest or other security agreement or preferential  arrangement of any kind or nature whatsoever, including, without limitation, any conditional sale or other title retention agreement, any financing lease having substantially the same economic effect as any of the foregoing and the filing of any financing statement under the UCC (other than any such financing statement filed for informational purposes only) or comparable law of any jurisdiction to evidence any of the foregoing; provided, however, that any assignment pursuant to Section 6.02 of the Servicing Agreement shall not be deemed to constitute a Lien.

Liquidated Mortgage Loan:  With respect to any Payment Date, any Mortgage Loan in respect of which the Servicer has determined, in accordance with the servicing procedures specified in the Servicing Agreement, as of the end of the related Collection Period that substantially all Liquidation Proceeds which it reasonably expects to recover, if any, with respect to the disposition of the related REO Property have been recovered.

Liquidation Expenses:  All out-of-pocket expenses (exclusive of overhead) incurred by or on behalf of the Servicer in connection with the liquidation of any Mortgage Loan and not recovered under any insurance policy, including legal fees and expenses, any unreimbursed amount expended (including, without limitation, amounts advanced to correct defaults on any mortgage loan which is senior to such Mortgage Loan and amounts advanced to keep current or pay off a mortgage loan that is senior to such Mortgage Loan) respecting such Mortgage Loan and any related and unreimbursed expenditures for real estate property taxes or for property restoration, preservation or insurance against casualty loss or damage.

Liquidation Loss Amount:  With respect to any Payment Date and any Mortgage Loan that became a Liquidated Mortgage Loan during the related Collection Period, the unrecovered portion of the Principal Balance of such Mortgage Loan and any unpaid accrued interest thereon at the end of such Collection Period, after giving effect to the Net Liquidation Proceeds applied in reduction of such Principal Balance.

Liquidation Loss Distribution Amount: With respect to any Payment Date, an amount equal to the sum of (A) 100% of the Liquidation Loss Amounts on such Payment Date, plus (B) any Liquidation Loss Amounts remaining undistributed from any preceding Payment Date. Any Liquidation Loss Amount remaining undistributed from any preceding payment date shall not be

required to be paid as a Liquidation Loss Distribution Amount to the extent that a Liquidation Loss Amount was paid on the notes by means of excess interest or a draw on the Policy or was reflected in the reduction of the Overcollateralization Amount.

Liquidation Proceeds:  Proceeds (including Insurance Proceeds but not including amounts drawn under the Policy) if any received in connection with the liquidation of any Mortgage Loan or related REO Property, whether through trustee's sale, foreclosure sale or otherwise.

LT1 Principal Distribution Amount:  For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT1 on such Payment Date.

LT2 Principal Distribution Amount:  For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT2 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT2 on such Payment Date.

LT3 Principal Distribution Amount:  For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT3 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT3 on such Payment Date.

LT4 Principal Distribution Amount:  For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT4 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT4 on such Payment Date.

LT5 Principal Distribution Amount:  For any Payment Date, the excess, if any, of the REMIC I Principal Reduction Amount REMIC I Regular Interest LT5 for such Payment Date over the principal Liquidation Loss Amounts allocated to REMIC I Regular Interest LT5 on such Payment Date.

Loan Rate:  With respect to any Mortgage Loan and any day, the per annum rate of interest applicable under the related Mortgage Note.

Lost Note Affidavit:  With respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, an affidavit from the related Seller certifying that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related Mortgage Note, if available).

Margin: With respect to the Class A-1 Notes, 0.10%.

MERS:  Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

MERS® System:   The system of recording transfers of Mortgages electronically maintained by MERS.

MIN:  The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS® System.

MOM Loan:  With respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.

Monthly Payment:  With respect to any Mortgage Loan (including any REO Property) and any Due Date, the payment of principal and interest due thereon in accordance with the terms of such Mortgage Loan.

Moody's:  Moody's Investors Service, Inc., or its successor in interest.

Mortgage:  The mortgage, deed of trust or other instrument creating a first or second lien on an estate in fee simple interest in real property securing a Mortgage Loan.

Mortgage File:  With respect to each Mortgage Loan:

(i)    the original Mortgage Note endorsed or assigned without recourse in blank (which endorsement shall contain either an original signature or a facsimile signature of an authorized officer of GMACM) or, with respect to any Mortgage Loan as to which the original Mortgage Note has been permanently lost or destroyed and has not been replaced, a Lost Note Affidavit;

(ii)    the original Mortgage, noting the presence of the MIN of the Mortgage Loan, if the Mortgage is registered on the MERS® System, and language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan, with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the public recording office, a copy of the original Mortgage certified by GMACM that such Mortgage has been sent for recording, or a county certified copy of such Mortgage in the event the recording office keeps the original or if the original is lost;

(iii)    unless the Mortgage Loan is registered on the MERS® System, original assignments (which may be included in one or more blanket assignments if permitted by applicable law) of the Mortgage in recordable form from GMACM to "JPMorgan Chase Bank, as Indenture Trustee under that certain Indenture dated as of August 30, 2006, for GMACM Home Equity Loan Trust 2006-HE3, Home Equity Loan-Backed Term Notes" c/o the Servicer at an address specified by the Servicer;

(iv)    originals of any intervening assignments of the Mortgage from the originator to GMACM (or to MERS, if the Mortgage Loan is registered on the MERS® System, and which notes the presence of a MIN) with evidence of recording thereon, or, if the original of any such intervening assignment has not yet been returned from the public recording office, a copy of such original intervening assignment certified by GMACM that such original intervening assignment has been sent for recording; and

(v)    a true and correct copy of each assumption, modification, consolidation or substitution agreement, if any, relating to such Mortgage Loan; and

(vi)    any documents required to be added to such documents pursuant to the Purchase Agreement, the Trust Agreement or the Servicing Agreement.

It is understood that the Mortgage File (other than item (i) above) may be retained in microfilm, microfiche, optical storage or magnetic media in lieu of hard copy; provided, that with respect to any Mortgage Loan not registered on the MERS® System, the original assignment of Mortgage described in clause (iii) above shall be retained in the Mortgage File.

Mortgage Loan Schedule:  The initial schedule of Initial Mortgage Loans as of the Cut-Off Date set forth in Exhibit A of the Servicing Agreement, and as of each Subsequent Cut-Off Date, any Subsequent Mortgage Loans, which schedule sets forth as to each Mortgage Loan (i) the Cut-Off Date Principal Balance, (ii) the loan number and (iii) the lien position of the related Mortgage.

Mortgage Loans:  At any time, all Initial Mortgage Loans and Subsequent Mortgage Loans that have been sold to the Issuer pursuant to, in the case of Initial Mortgage Loans, the Trust Agreement, or, in the case of Subsequent Mortgage Loans, a Subsequent Transfer Agreement, together with all monies due or become due thereunder or the Related Documents, and that remain subject to the terms thereof.

Mortgage Note:  With respect to a Mortgage Loan, the promissory note pursuant to which the related Mortgagor agrees to pay the indebtedness evidenced thereby and secured by the related Mortgage as modified or amended.

Mortgaged Property:  The underlying property, including real property and improvements thereon, securing a Mortgage Loan.

Mortgagor:  The obligor or obligors under a Mortgage Note.

Net Liquidation Proceeds:  With respect to any Liquidated Mortgage Loan, Liquidation Proceeds net of amounts drawn on the Policy, Liquidation Expenses (but not including the portion, if any, of such amount that exceeds the Principal Balance of, plus accrued and unpaid interest on, such Mortgage Loan at the end of the Collection Period immediately preceding the Collection Period in which such Mortgage Loan became a Liquidated Mortgage Loan) and including any Recovery Amounts.

Net Loan Rate: With respect to any Payment Date and any Mortgage Loan, the Loan Rate of that Mortgage Loan applicable to the Due Date in the related Collection Period, net of the Servicing Fee Rate.

Net WAC Rate:  With respect to any Payment Date, (i) a per annum rate equal to the weighted average of the Net Loan Rates of the Mortgage Loans as of the first day of the month preceding the month in which such Payment Date occurs, and weighted on the basis of the respective Principal Balances of such Mortgage Loans as of the first day of the related Collection Period, minus (ii) the premium rate on the Policy multiplied by a fraction, the numerator of which is the sum of the Note Balances and the denominator of which is the Pool Balance.

Net Worth:  As of any date of determination, the net worth of GMACM and its consolidated subsidiaries, as determined in accordance with GAAP.

Non-United States Person:  Any Person other than a United States Person.

Note Balance:  With respect to any Payment Date and the Notes, the Initial Aggregate Note Balance reduced by all payments of principal on the Notes prior to such Payment Date and any allocation of Liquidation Loss Amounts on the Notes prior to such Payment Date.

Note Owner or Owner:  The Beneficial Owner of a Note.

Note Payment Account:  The account established by the Indenture Trustee pursuant to Sections 3.01 and 8.02 of the Indenture and Section 5.01 of the Servicing Agreement.  Amounts deposited in the Note Payment Account will be distributed by the Indenture Trustee in accordance with Section 3.05 of the Indenture.

Note Rate:  With respect to each Interest Period and the related Payment Date, a per annum rate equal to with respect to:

(a)     the Class A-1 Notes, the least of:

- One-Month LIBOR plus the Margin;

- the Net WAC Cap; and

- 10.00%;

(b)     the Class A-2 Notes, the lesser of (i) 5.750% and (ii) the Net WAC Cap;

(c)     the Class A-3 Notes, the lesser of (i) 5.805% and (ii) the Net WAC Cap;

(d)     the Class A-4 Notes, the lesser of (i) 6.088% plus, with respect to each Payment Date occurring on or after the second Payment Date following the first possible Optional Call Date, 0.50% and (ii) the Net WAC Rate; and

(e)     the Class A-5 Notes, the lesser of (i) 5.809% plus, with respect to each Payment Date occurring on or after the second Payment Date following the first possible Optional Call Date, 0.50% and (ii) the Net WAC Rate;

Note Register:  The register maintained by the Note Registrar in which the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes.

Note Registrar:  The Indenture Trustee, in its capacity as Note Registrar.

Noteholder or Holder:  The Person in whose name a Note is registered in the Note Register, except that, any Note registered in the name of the Depositor, the Issuer or the

Indenture Trustee or any Affiliate of any of them shall be deemed not to be outstanding and the registered holder will not be considered a Noteholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided, that in determining whether the Indenture Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Notes that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Notes that have been pledged in good faith may be regarded as Noteholders if the pledgee thereof establishes to the satisfaction of the Indenture Trustee or the Owner Trustee such pledgee's right so to act with respect to such Notes and that such pledgee is not the Issuer, any other obligor on the Notes or any Affiliate of any of the foregoing Persons.

Notes: Any of the Class A-1 Notes, Class A-2 Notes, Class A-3 Notes, Class A-4 Notes or Class A-5 Notes, issued and outstanding pursuant to the Indenture.

Notional Amount: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO, immediately prior to any Payment Date a notional amount equal to the aggregate of the Uncertificated Principal Balances of the REMIC I Regular Interests.

Officer's Certificate: With respect to the Servicer, a certificate signed by the President, Managing Director, a Director, a Vice President or an Assistant Vice President, of the Servicer and delivered to the Indenture Trustee. With respect to the Issuer, a certificate signed by any Authorized Officer of the Issuer, under the circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the Indenture, and delivered to the Indenture Trustee. Unless otherwise specified, any reference in the Indenture to an Officer's Certificate shall be to an Officer's Certificate of any Authorized Officer of the Issuer.

One-Month LIBOR: As to any Interest Period for the Class A-1 Notes, (a) for any Interest Period other than the first Interest Period, the rate for United States dollar deposits for one month that appears on the Telerate Screen Page 3750 as of 11:00 a.m., London, England time, on the second LIBOR Business Day prior to the first day of that Interest Period or (b) with respect to the first Interest Period, the rate for United States dollar deposits for one month that appears on the Telerate Screen Page 3750 as of 11:00 a.m., London, England time, two LIBOR Business Days prior to the Closing Date. If such rate does not appear on such page, LIBOR will be the Reference Bank Rate determined by the Indenture Trustee. If no such rate appears and the Indenture Trustee is unable to determine a Reference Bank Rate, LIBOR will be LIBOR applicable to the preceding Interest Period.

Opinion of Counsel: A written opinion of counsel of a law firm reasonably acceptable to the recipient thereof. Any Opinion of Counsel for the Servicer may be provided by in-house counsel for the Servicer if reasonably acceptable.

Optional Call Date: Any Payment Date on which the Note Balance is less than 10% of the Initial Aggregate Note Balance prior to giving effect to any payments of principal on such Payment Date.

Original Pre-Funded Amount: The amount deposited from the proceeds of the sale of the Securities into the Pre-Funding Account on the Closing Date, which amount is $287,307,436.

Outstanding:  With respect to the Notes, as of the date of determination, all Notes theretofore executed, authenticated and delivered under this Indenture except:

(i)    Notes theretofore cancelled by the Note Registrar or delivered to the Indenture Trustee for cancellation; and

(ii)    Notes in exchange for or in lieu of which other Notes have been executed, authenticated and delivered pursuant to the Indenture unless proof satisfactory to the Indenture Trustee is presented that any such Notes are held by a holder in due course;

provided, however, that for purposes of effectuating the Enhancer's right of subrogation as set forth in Section 4.12 of the Indenture only, all Notes that have been paid with funds provided under the Policy shall be deemed to be Outstanding until the Enhancer has been reimbursed with respect thereto.

Overcollateralization Amount:  With respect to any Payment Date, the amount (but not less than zero), if any, by which (a) the aggregate outstanding Principal Balance of the Mortgage Loans as of the close of business on the last day of the related Collection Period, plus amounts on deposit in the Pre-Funding Account (excluding any investment earnings thereon) exceeds (b) the aggregate Note Balance of the Notes.

Overcollateralization Increase Amount:  With respect to any Payment Date, an amount equal to the lesser of (1) the Excess Spread remaining after the application thereof to the payment of any Liquidation Loss Distribution Amount on such payment date and (2) the amount necessary to increase the Overcollateralization Amount to the Overcollateralization Target Amount.

Overcollateralization Release Amount:  With respect to any Payment Date, the excess, if any, of the Overcollateralization Amount over the Overcollateralization Target Amount, which, on such Payment Date, shall not exceed an amount equal to the total Principal Collections for such Payment Date.

Overcollateralization Target Amount:  With respect to any Payment Date prior to the Stepdown Date, the Required Overcollateralization Amount will be 1.30% of the initial Pool Balance. With respect to any Payment Date on or after the Stepdown Date, an amount equal to the greater of (i) 2.60% of the Pool Balance as of the last day of the related Collection Period and (ii) 0.50% of the initial Pool Balance; provided, however, upon the occurrence of a Servicing Trigger Event, the Overcollateralization Target Amount shall be no less than the Overcollateralization Target Amount as of the previous Payment Date.   The Overcollateralization Target Amount may be reduced from time to time with the consent of the Enhancer and written notice from each Rating Agency that the rating will not be reduced or withdrawn as a result of the change in the Overcollateralization Target Amount.

Owner Trust:  GMACM Home Equity Loan Trust 2006-HE3, created by the Certificate of Trust pursuant to the Trust Agreement.

Owner Trustee:  Wilmington Trust Company, not in its individual capacity but solely as owner trustee, and its successors and assigns or any successor Owner Trustee appointed pursuant to the terms of the Trust Agreement.

Ownership Interest:  As to any Certificate, any ownership or security interest in such Certificate, including any interest in such Certificate as the Certificateholder thereof and any other interest therein, whether direct or indirect, legal or beneficial, as owner or as pledgee.

Paying Agent:  Any paying agent or co-paying agent appointed pursuant to Section 3.03 of the Indenture, which initially shall be the Indenture Trustee.

Payment Date:  The 25th day of each month, or if such day is not a Business Day, then the next Business Day.

Percentage Interest:  With respect to any Note and Payment Date, the percentage obtained by dividing the Note Balance of such Note by the aggregate Note Balance of all Notes prior to such Payment Date.  With respect to any Certificate and any Payment Date, the Percentage Interest stated on the face of such Certificate.

Permitted Investments:  One or more of the following:

(i)     obligations of or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof when such obligations are backed by the full faith and credit of the United States;

(ii)     repurchase agreements on obligations specified in clause (i) above maturing not more than one month from the date of acquisition thereof; provided, that the unsecured short-term debt obligations of the party agreeing to repurchase such obligations are at the time rated by each Rating Agency in its highest short-term rating category available;

(iii)     federal funds, certificates of deposit, demand deposits, time deposits and bankers' acceptances (which shall each have an original maturity of not more than 90 days and, in the case of bankers' acceptances, shall in no event have an original maturity of more than 365 days or a remaining maturity of more than 30 days) denominated in United States dollars of any U.S. depository institution or trust company incorporated under the laws of the United States or any state thereof or of any domestic branch of a foreign depository institution or trust company; provided, that the short-term debt obligations of such depository institution or trust company (or, if the only Rating Agency is Standard & Poor's, in the case of the principal depository institution in a depository institution holding company, debt obligations of the depository institution holding company) at the date of acquisition thereof have been rated by each Rating Agency in its highest short-term rating category available; and provided further, that if the only Rating Agency is Standard & Poor's and the depository or trust company is a principal subsidiary of a bank holding company and the debt obligations of such subsidiary are not separately rated, the applicable rating shall be that of the bank holding company; and provided further, that if the only Rating Agency is Standard & Poor's and the original maturity of such short-term debt obligations of a domestic branch of a foreign depository institution or trust company shall exceed 30 days, the short-term rating of such institution shall be A-1+;

(iv)    commercial paper (having original maturities of not more than 365 days) of any corporation incorporated under the laws of the United States or any state thereof which on the date of acquisition has been rated by each Rating Agency in its highest short-term rating category available; provided, that such commercial paper shall have a remaining maturity of not more than 30 days;

(v)    a money market fund or a qualified investment fund (including without limitation, any such fund for which the Indenture Trustee or an Affiliate of the Indenture Trustee acts as an advisor or a manager) rated by each Rating Agency in one of its two highest long-term rating categories available (if so rated by such Rating Agency); and

(vi)    other obligations or securities that are acceptable to each Rating Agency as a Permitted Investment hereunder and will not cause a Rating Event, and which are acceptable to the Enhancer, as evidenced in writing;

*provided, however,* that no instrument shall be a Permitted Investment if it represents, either (1) the right to receive only interest payments with respect to the underlying debt instrument or (2) the right to receive both principal and interest payments derived from obligations underlying such instrument and the principal and interest payments with respect to such instrument provide a yield to maturity greater than 120% of the yield to maturity at par of such underlying obligations. References herein to the highest long-term debt rating category available shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's, and references herein to the highest short-term rating category available shall mean A-1 in the case of Standard & Poor's and P-1 in the case of Moody's.

Permitted Transferee:  Any Transferee of a Class R Certificate, other than a Disqualified Organization or Non-United States Person.

Person:    Any legal individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization or government or any agency or political subdivision thereof.

Plan:  Any employee benefit plan or certain other retirement plans and arrangements, including individual retirement accounts and annuities, Keogh plans and bank collective investment funds and insurance company general or separate accounts in which such plans, accounts or arrangements are invested, that are subject to ERISA or Section 4975 of the Code, as described in Section 3.05 of the Trust Agreement.

Plan Assets: The meaning specified in Section 2510.3-101 of the Department of Labor Regulations and as described in Section 3.05 of the Trust Agreement.

Policy:  The Financial Guaranty Insurance Policy 06030099, dated as of the Closing Date, issued by the Enhancer.

Policy Draw Amount: With respect to any Payment Date, the Insured Payment.

Pool Balance:  With respect to any date, the aggregate Principal Balance of all Mortgage Loans as of such date plus, during the Pre-Funding Period, the Pre-Funded Amount.

Predecessor Note:  With respect to any Note, every previous Note evidencing all or a portion of the same debt as that evidenced by such Note; and, for the purpose of this definition, any Note authenticated and delivered under Section 4.03 of the Indenture in lieu of a mutilated, lost, destroyed or stolen Note shall be deemed to evidence the same debt as such mutilated, lost, destroyed or stolen Note.

Pre-Funded Amount:  With respect to any date of determination during the Pre-Funding Period, the amount on deposit in the Pre-Funding Account.

Pre-Funding Account:  The account established and maintained pursuant to Section 3.18 of the Servicing Agreement.

Pre-Funding Period:  The period commencing on the Closing Date until the earliest of (i) the date on which the amount on deposit in the Pre-Funding Account is less than $100,000, (ii) the Payment Date in November 2006 or (iii) the occurrence of a Servicing Default.

Principal Balance:  With respect to any Mortgage Loan, other than a Liquidated Mortgage Loan, and as of any day, the related Cut-Off Date Principal Balance, minus all collections credited as principal in respect of any such Mortgage Loan in accordance with the related Mortgage Note and applied in reduction of the Principal Balance thereof.  For purposes of this definition, a Liquidated Mortgage Loan shall be deemed to have a Principal Balance equal to the Principal Balance of the related Mortgage Loan immediately prior to the final recovery of substantially all related Liquidation Proceeds and a Principal Balance of zero thereafter.

Principal Collections:  With respect to any Payment Date, an amount equal to the sum of (i) the principal portion of all scheduled Monthly Payments on the Mortgage Loans received during the related Collection Period, as reported by the Servicer or the related Subservicer; (ii) the principal portion of all proceeds of the repurchase of any Mortgage Loans (or, in the case of a substitution, any Substitution Adjustment Amounts) during the related Collection Period; (iii) the principal portion of all other unscheduled collections received on the Mortgage Loans during the related Collection Period (or deemed to be received during the related Collection Period), including, without limitation, full and partial Principal Prepayments made by the respective Mortgagors, Insurance Proceeds, Net Liquidation Proceeds and Subsequent Net Recovery Amounts, to the extent not previously distributed; and (iv) on the Payment Date immediately following the end of the Pre-Funding Period, any amount transferred from the Pre Funding Account to the Note Payment Account in accordance with Section 3.17 of the Servicing Agreement.

Principal Distribution Amount:  For any Payment Date, the total Principal Collections for such Payment Date less any Overcollateralization Release Amount for such Payment Date; provided that the Principal Distribution Amount for any Payment Date shall not be less than $0.

Proceeding:  Any suit in equity, action at law or other judicial or administrative proceeding.

Program Guide:  The GMACM Home Equity Servicing Guidelines, as in effect from time to time.

**Purchase Agreement**: The mortgage loan purchase agreement dated as of the Closing Date, among the Sellers, the Purchaser, the Issuer and the Indenture Trustee.

**Purchase Price**: The amounts specified in Section 2.3(a) of the Purchase Agreement.

**Purchaser**: Residential Asset Mortgage Products, Inc., as purchaser under the Purchase Agreement.

**Rating Agency**: Each of Moody's and Standard & Poor's or, if any such organization or a successor thereto is no longer in existence, such nationally recognized statistical rating organization, or other comparable Person, designated by the Depositor, notice of which designation shall be given to the Indenture Trustee. References herein to the highest short term unsecured rating category of a Rating Agency shall mean A-1 or better in the case of Standard & Poor's and P-1 or better in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent ratings. References herein to the highest long-term rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's and "Aaa" in the case of Moody's; and in the case of any other Rating Agency, shall mean such equivalent rating.

**Record Date**: With respect to any Payment Date and the Class A-1 Notes, the close of business on the last Business Day preceding such Payment Date. With respect to any Payment Date, other than the first Payment Date, and each Class of Notes, other than the Class A-1 Notes, the last day of the calendar month preceding such Payment Date, and in the case of the first Payment Date, the Closing Date.

**Recovery Amount**: Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Servicing Fee, Recovery Fee and any reimbursement for advances and expenses of the Servicer.

**Recovery Fee**: A customary fee calculated based on additional recovery amounts charged for the collection of such additional recovery amounts on any Mortgage Loan after the date that such Mortgage Loan became a Liquidated Mortgage Loan.

**Reference Bank Rate**: With respect to any Interest Period, the arithmetic mean (rounded upwards, if necessary, to the nearest one sixteenth of one percent) of the offered rates for United States dollar deposits for one month which are offered by the Reference Banks as of 11:00 a.m., London, England time, on the second LIBOR Business Day prior to the first day of such Interest Period to prime banks in the London interbank market in amounts approximately equal to the sum of the outstanding Note Balance of the Class A-1 Notes; provided, that at least two Reference Banks provide such rate. If fewer than two such rates are provided, the Reference Bank Rate will be the arithmetic mean of the rates quoted by one or more major banks in New York City, selected by the Indenture Trustee after consultation with the Servicer and the Enhancer, as of 11:00 a.m., New York time, on such date for loans in U.S. Dollars to leading European banks for a period of one month in amounts approximately equal to the aggregate Note Balance of the Class A-1 Notes.

**Reference Banks**: Barclays Bank plc, National Westminster Bank and Deutsche Bank, A.G.

24

Regular Interest: Any of the REMIC I Regular Interests or REMIC II Regular Interests.

Related Class: A Class of REMIC II Regular Interests and a class of Notes are related if, and only if, they bear the same Letter/number combination designating their Class, e.g. REMIC II Regular Interest A-2 is related to the Class A-2 Notes.

Regulation AB: Subpart 229.1100 – Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the Commission in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (January 7, 2005)) or by the staff of the Commission, or as may be provided by the Commission or its staff from time to time.

Related Documents: With respect to each Mortgage Loan, the documents contained in the Mortgage File.

Relief Act Shortfalls: With respect to any Payment Date, for any Mortgage Loan as to which there has been a reduction in the amount of interest collectible thereon for the related Collection Period as a result of the application of the Servicemembers Civil Relief Act, formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended, or any similar state legislation or regulations, the shortfall, if any, equal to (i) one month's interest on the Principal Balance of such Mortgage Loan at the applicable Loan Rate, over (ii) the interest collectible on such Mortgage Loan during such Collection Period.

REMIC: A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code.

REMIC Administrator: JPMorgan Chase Bank, N.A.; provided that if the REMIC Administrator is found by a court of competent jurisdiction to no longer be able to fulfill its obligations as REMIC Administrator under this Agreement the Servicer or Indenture Trustee acting as Servicer shall appoint a successor REMIC Administrator, subject to assumption of the REMIC Administrator obligations under this Agreement.

REMIC I: The segregated pool of assets in the Trust Estate with respect to which a REMIC election is to be made.

REMIC I Certificates: The Class R-I Certificates and the REMIC I Regular Interests.

REMIC I Liquidation Loss Amounts: For any Payment Date, Liquidation Loss Amounts on the Mortgage Loans for the related Collection Period shall be allocated as follows: (i) the interest portion of Liquidation Loss Amounts, if any, shall be allocated pro rata to accrued interest on the REMIC I Regular Interests to the extent of such accrued interest, and (ii) any remaining interest portions of Liquidation Loss Amounts and any principal portions of Liquidation Loss Amounts shall be treated as principal portions of Liquidation Loss Amounts and allocated (a) to REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4, pro rata according to their respective REMIC I Principal Reduction Amounts, provided that such allocation to each of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3 and REMIC I Regular Interest LT4 shall not exceed their respective

REMIC I Principal Reduction Amounts for such Payment Date, and (b) any Liquidation Loss Amounts not allocated to any of REMIC I Regular Interest LT2, REMIC I Regular Interest LT3, or REMIC I Regular Interest LT4 pursuant to the proviso of clause (a) above shall be allocated to REMIC I Regular Interest LT1.

REMIC I Principal Reduction Amounts:  For any Payment Date, the amounts by which the Uncertificated Principal Balances of the REMIC I Regular Interests will be reduced on such Payment Date by the allocation of REMIC I Liquidation Loss Amounts and the distribution of principal, determined as follows:

For purposes of the succeeding formulas the following symbols shall have the meanings set forth below:

$Y_1 =$  the Uncertificated Principal Balance of REMIC I Regular Interest LT1 after distributions on the prior Payment Date.

$Y_2 =$  the Uncertificated Principal Balance of REMIC I Regular Interest LT2 after distributions on the prior Payment Date.

$Y_3 =$  the Uncertificated Principal Balance of REMIC I Regular Interest LT3 after distributions on the prior Payment Date.

$Y_4 =$  the Uncertificated Principal Balance of REMIC I Regular Interest LT4 after distributions on the prior Payment Date (note:  $Y_3 = Y_4$).

$\Delta Y_1 =$ the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1.

$\Delta Y_2 =$ the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT2.

$\Delta Y_3 =$ the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT3.

$\Delta Y_4 =$ the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT4.

$P_0 =$  the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts on the prior Payment Date.

$P_1 =$  the aggregate Uncertificated Principal Balance of the REMIC I Regular Interests after distributions and the allocation of REMIC I Liquidation Loss Amounts to be made on such Payment Date.

$\Delta P =$  $P_0 - P_1 =$ the aggregate of the REMIC I Principal Reduction Amounts.

=the aggregate of the principal portions of REMIC I Liquidation Loss Amounts to be allocated to, and the principal distributions to be made on, the Notes and the Certificates on such Payment Date (including distributions of accrued and unpaid interest on the Class SB Certificates for prior Payment Dates).

$R_0 =$ the Net WAC Rate (stated as a monthly rate) after giving effect to amounts distributed and Liquidation Loss Amounts allocated on the prior Payment Date.

$R_1 =$ the Net WAC Rate (stated as a monthly rate) after giving effect to amounts to be distributed and Liquidation Loss Amounts to be allocated on such Payment Date.

$\alpha =$ $(Y_2 + Y_3)/P_0$. The initial value of $\alpha$ on the Closing Date for use on the first Payment Date shall be 0.0001.

$\gamma_0 =$ the lesser of (A) the sum for all Classes of Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on such Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts on the prior Payment Date and (B) $R_0*P_0$.

$\gamma_1 =$ the lesser of (A) the sum for all Classes Notes, of the product for each Class of (i) the monthly interest rate (as limited by the Net WAC Rate, if applicable) for such Class applicable for distributions to be made on the next succeeding Payment Date and (ii) the aggregate Note Balance for such Class after distributions and the allocation of Liquidation Loss Amounts to be made on such Payment Date and (B) $R_1*P_1$.

Then, based on the foregoing definitions:

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4;$

$\Delta Y_2 = (\alpha/2)\{(\gamma_0 R_1 - \gamma_1 R_0)/R_0 R_1\};$

$\Delta Y_3 = \alpha \Delta P - \Delta Y_2;$ and

$\Delta Y_4 = \Delta Y_3.$

if both $\Delta Y_2$ and $\Delta Y_3$, as so determined, are non-negative numbers. Otherwise:

(1) If $\Delta Y_2$, as so determined, is negative, then

$\Delta Y_2 = 0;$

$\Delta Y_3 = \alpha\{\gamma_1 R_0 P_0 - \gamma_0 R_1 P_1\}/\{\gamma_1 R_0\};$

$\Delta Y_4 = \Delta Y_3;$ and

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4.$

(2) If $\Delta Y_3$, as so determined, is negative, then

$\Delta Y_3 = 0;$

$\Delta Y_2 = \alpha\{\gamma_0 R_1 P_1 - \gamma_1 R_0 P_0\}/\{2 R_1 R_0 P_1 - \gamma_1 R_0\};$

$\Delta Y_4 = \Delta Y_3$; and

$\Delta Y_1 = \Delta P - \Delta Y_2 - \Delta Y_3 - \Delta Y_4$.

REMIC I Regular Interests: Each of the following separate non-certificated beneficial ownership interests in REMIC I having the properties set forth in the following table and elsewhere herein:

| Designation for each REMIC I Regular Interest | REMIC I Remittance Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity |
|---|---|---|---|
| LT1 | Variable(1) | $1,149,036,976.08 | October 25, 2036 |
| LT2 | Variable(1) | $37,079.50 | October 25, 2036 |
| LT3 | Variable(1) | $77,843.47 | October 25, 2036 |
| LT4 | Variable(1) | $77,843.47 | October 25, 2036 |

(1)    Calculated in accordance with the definition of "REMIC I Remittance Rate" herein.

REMIC I Remittance Rate: With respect to any Payment Date and (i) REMIC I Regular Interests LT1 and LT2, a per annum rate equal to the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date, (ii) REMIC I Regular Interest LT3, zero (0.00%), and (iii) REMIC I Regular Interest LT4, a per annum rate equal to twice the weighted average of the Net Loan Rates of the Loans applicable for the Interest Period for such Payment Date.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be made, consisting of the REMIC I Regular Interests.

REMIC II Liquidation Loss Amounts: On any Payment Date, Liquidation Loss Amounts for the related Collection Period shall be allocated first to REMIC II Regular Interest SB-IO in reduction of the accrued and unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero, second to REMIC II Regular Interest SB-PO in reduction of the Uncertificated Principal Balance thereof until such Uncertificated Principal Balance shall have been reduced to zero and third to the Notes to the same extent, if any, that (i) amounts interest accrued on such Notes since the prior Payment Date remain unpaid after distributions on such Payment Date and (ii) the aggregate of the Class Principal Balances of the Notes following distributions on such Payment Date exceed the aggregate principal balance of the Loans by more than such excess, if any, after distributions on the immediately prior Payment Date.

REMIC II Regular Interest SB-IO: A regular interest in REMIC II with no entitlement to principal and entitled to (i) interest at the Certificate Rate on its Notional Amount and (ii) payments of prepayment charges.

REMIC II Regular Interest SB-PO: A regular interest in REMIC II with no entitlement to interest and entitled to principal in an amount equal to the Initial Certificate Balance and any amounts in the nature of prepayment charges received in connection with Loans, provided that any payment of prepayment charges shall not be deemed to reduce the Uncertificated Principal Balance of REMIC II Regular Interest SB-PO.

REMIC II Regular Interests: Each Class of the Notes and REMIC II Regular Interests SB-IO and SB-PO.

REMIC II Remittance Rate: With respect to each Class of Notes, the Note Rate for such Class. With respect to REMIC II Regular Interest SB-PO, 0% per annum. With respect to REMIC II Regular Interest SB-IO the Certificate Rate therefor.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and temporary and final regulations (or, to the extent not inconsistent with such temporary or final regulations, proposed regulations) and published rulings, notices and announcements promulgated thereunder, as the foregoing may be in effect from time to time.

Remittance Rate: The REMIC I Remittance Rate or REMIC II Remittance Rate, as applicable.

Repurchase Event: With respect to any Mortgage Loan, either (i) a discovery that, as of the Closing Date with respect to an Initial Mortgage Loan or the related Subsequent Transfer Date with respect to any Subsequent Mortgage Loan, the related Mortgage was not a valid lien on the related Mortgaged Property subject only to (A) the lien of any prior mortgage indicated on the Mortgage Loan Schedule, (B) the lien of real property taxes and assessments not yet due and payable, (C) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are customarily accepted for similar loans and (D) other matters to which like properties are commonly subject that do not materially adversely affect the value, use, enjoyment or marketability of the related Mortgaged Property or (ii) with respect to any Mortgage Loan as to which either Seller delivers an affidavit certifying that the original Mortgage Note has been lost or destroyed, a subsequent default on such Mortgage Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of such original Mortgage Note.

Repurchase Price: With respect to any Mortgage Loan required to be repurchased on any date pursuant to the Purchase Agreement or purchased by the Servicer pursuant to the Servicing Agreement, an amount equal to the sum of (i) 100% of the Principal Balance thereof (without reduction for any amounts charged off), (ii) unpaid accrued interest at the Loan Rate (or with respect to the last day of the month in the month of repurchase, the Loan Rate will be the Loan

Rate in effect as of the second to last day in such month) on the outstanding Principal Balance thereof from the Due Date to which interest was last paid by the related Mortgagor to the first day of the month following the month of purchase and (iii) in connection with any Mortgage Loan required to be repurchased pursuant to Sections 2.1 or 3.1 of the Purchase Agreement, any costs and damages incurred by the Trust with respect to such Mortgage Loan in connection with a breach of Section 3.1(b)(x) of the Purchase Agreement.

Required Insurance Policy:  With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under the Servicing Agreement or the related Subservicing Agreement in respect of such Mortgage Loan.

Responsible Officer:  With respect to the Indenture Trustee, any officer of the Indenture Trustee with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

Rolling Six-Month Annualized Liquidation Loss Amounts:  With respect to any Determination Date occurring after the fifth Determination Date, the product (expressed as a percentage) of (i) the aggregate Liquidation Loss Amounts as of the end of each of the six Collection Periods (reduced by the aggregate Subsequent Net Recovery Amounts for such Collection Periods) immediately preceding such Determination Date divided by the Initial Pool Balance and (ii) two (2).

Rolling Three Month Delinquency Percentage:  With respect to any Payment Date and the Mortgage Loans, the arithmetic average of the Delinquency Percentages determined for such Payment Date and for each of the two preceding Payment Dates.

SB-IO Marker Rate:  Two times the weighted average of the REMIC I Remittance Rates for REMIC I Regular Interests LT2 and LT3, weighted by their respective Uncertificated Principal Balances.

Secretary of State:  The Secretary of State of the State of Delaware.

Securities Act:  The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

Securitization Transaction:  Any transaction involving a sale or other transfer of mortgage loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities.

Securities Balance: The Note Balance or Certificate Balance, as the context may require.

Security:  Any Certificate or a Note, as the context may require.

Securityholder:  Any Noteholder or Certificateholder.

Seller or Sellers:  GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and assigns, and Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust, and its successors and assigns.

Servicer:  GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and assigns.

Servicer Advances:  Any advances the Servicer may make with respect to the Mortgage Loans, whether or not required, in respect of principal, interest, taxes, insurance or otherwise.

Servicing Agreement:  The servicing agreement dated as of the Closing Date among the Servicer, the Issuer and the Indenture Trustee.

Servicing Certificate:  A certificate completed and executed by a Servicing Officer on behalf of the Servicer in accordance with Section 4.01 of the Servicing Agreement.

Servicing Criteria:  The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may be amended from time to time.

Servicing Default:  Any one of the following events:

(i)    any failure by the Servicer to deposit in the Custodial Account, , the Note Payment Account or the Distribution Account any deposit required to be made under the terms of the Servicing Agreement that continues unremedied for a period of five Business Days after the date upon which written notice of such failure shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(ii)    any failure on the part of the Servicer duly to observe or perform in any material respect any other covenants or agreements of the Servicer set forth in the Securities or in the Servicing Agreement, which failure, in each case, materially and adversely affects the interests of the Securityholders or the Enhancer, and which failure continues unremedied for a period of 45 days after the date on which written notice of such failure, requiring the same to be remedied, and stating that such notice is a "Notice of Default" under the Servicing Agreement, shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(iii)    the entry against the Servicer of a decree or order by a court or agency or supervisory authority having jurisdiction under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken possession of the Servicer or its property, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days;

(iv)    the Servicer shall voluntarily submit to Proceedings under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or other similar law relating to the Servicer or of or relating to all or substantially all of its property; or the Servicer shall admit in writing its inability to pay its debts generally as they become due, file

a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations;

(v)     the Servicer's Tangible Net Worth at any time is less than $100,000,000 and GMAC fails to own, directly or indirectly, at least 51% of the common stock of the Servicer; or

(vi)     the Rolling Six-Month Annualized Liquidation Loss Amount with respect to the Mortgage Loans exceeds 1.50%.

Servicing Fee:   With respect to any Mortgage Loan and any Collection Period, the product of (i) the Servicing Fee Rate divided by 12 and (ii) the related Principal Balance as of the first day of such Collection Period.

Servicing Fee Rate:   0.50% per annum.

Servicing Officer:   Any officer of the Servicer involved in, or responsible for, the administration and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers furnished to the Indenture Trustee (with a copy to the Enhancer) by the Servicer, as such list may be amended from time to time.

Servicing Termination Event:   As of any Payment Date, the occurrence of any of the following scenarios:

(a)     the Rolling Three Month Delinquency Percentage is greater than 3.75% for the then-current Payment Date; or

(b)     on or after the Payment Date in February 2009, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| February 2009 to August 2009: | 1.65% with respect to February 2009, plus an additional 1/6th of 0.40% for each month thereafter; |
| September 2009 to August 2010: | 2.05% with respect to September 2009, plus an additional 1/12th of 0.70% for each month thereafter; |
| September 2010 to August 2011: | 2.75% with respect to September 2010, plus an additional 1/12th of 0.85% for each month thereafter; |
| September 2011 to August 2012 | 3.60% with respect to September 2011, plus an additional 1/12th of 1.30% for each month thereafter; and |

September 2012 and thereafter:          3.90%.

Servicing Trigger Event:  As of any Payment Date, the occurrence of any of the following scenarios:

(a)      the Rolling Three Month Delinquency Percentage is greater than 3.25% for the then-current Payment Date; or

(b)      on or after the Payment Date in February 2009, the aggregate amount of Liquidation Loss Amounts (reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth below:

| | |
|---|---|
| February 2009 to August 2009: | 1.15% with respect to February 2009, plus an additional 1/6th of 0.40% for each month thereafter; |
| September 2009 to August 2010: | 1.55% with respect to September 2009, plus an additional 1/12th of 0.70% for each month thereafter; |
| September 2010 to August 2011: | 2.25% with respect to September 2010, plus an additional 1/12th of 0.85% for each month thereafter; |
| September 2011 to August 2012 | 3.10% with respect to September 2011, plus an additional 1/12th of 1.30% for each month thereafter; and |
| September 2012 and thereafter: | 3.40%. |

Standard & Poor's:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or its successor in interest.

Stated Value:  With respect to any Mortgage Loan, the stated value of the related Mortgaged Property determined in accordance with the Program Guide and given by the related Mortgagor in his or her application.

Statutory Trust Statute:  Chapter 38 of Title 12 of the Delaware Code, 12 Del. Code §§3801 et seq., as the same may be amended from time to time.

Stepdown Date:  The later of (i) the Payment Date in March 2009 and (ii) the Payment Date on which the Pool Balance (after applying payments received in the related Collection Period) as of such Payment Date is less than 50% of the Initial Pool Balance.

Subsequent Cut-Off Date:  With respect to any Subsequent Mortgage Loan, the date specified in the related Subsequent Transfer Agreement.

Subsequent Cut-Off Date Principal Balance:  With respect to any Subsequent Mortgage Loan, the Principal Balance thereof as of the close of business on the last day of the Collection Period immediately prior to the related Subsequent Cut-Off Date.

Subsequent Mortgage Loan:  An mortgage loan sold by a Seller to the Issuer pursuant to Section 2.2 of the Purchase Agreement, such Mortgage Loan being identified on the Mortgage Loan Schedule attached to the related Subsequent Transfer Agreement, as set forth in such Subsequent Transfer Agreement.

Subsequent Net Recovery Amounts:  Recovery Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated Mortgage Loan, net of any Recovery Fee.

Subsequent Transfer Agreement:  Each Subsequent Transfer Agreement dated as of a Subsequent Transfer Date executed by the respective Seller and the Issuer substantially in the form of Exhibit 2 to the Purchase Agreement, by which the related Subsequent Mortgage Loans are sold to the Issuer.

Subsequent Transfer Date:  With respect to each Subsequent Transfer Agreement, the date on which the related Subsequent Mortgage Loans are sold to the Issuer.

Subservicer:  Each Person that enters into a Subservicing Agreement as a subservicer of Mortgage Loans.

Subservicing Agreement:  The written contract between the Servicer and any Subservicer relating to servicing and administration of certain Mortgage Loans as provided in Section 3.01(b) of the Servicing Agreement.

Substitution Adjustment Amount:  With respect to any Eligible Substitute Loan and any Deleted Loan, the amount, if any, as determined by the Servicer, by which the aggregate principal balance of all such Eligible Substitute Loans as of the date of substitution is less than the aggregate Principal Balance of all such Deleted Loans (after application of the principal portion of the Monthly Payments due in the month of substitution that are to be distributed to the Securityholders in the month of substitution).

Tangible Net Worth:  Net Worth, less the sum of the following (without duplication): (a) any other assets of GMACM and its consolidated subsidiaries that would be treated as intangibles under GAAP including, without limitation, any write-up of assets (other than adjustments to market value to the extent required under GAAP with respect to excess servicing, residual interests in offerings of asset-backed securities and asset-backed securities that are interest-only securities), good-will, research and development costs, trade-marks, trade names, copyrights, patents and unamortized debt discount and expenses and (b) loans or other extensions of credit to officers of GMACM or its consolidated subsidiaries other than mortgage loans made to such Persons in the ordinary course of business.

Tax Matters Partner:  GMACM, as the Servicer, for so long as the Servicer holds all or any portion of the Class R Certificates; if any other Person holds 100% of the Certificates, such Person; and otherwise as provided in the Code.

Tax Returns:  The federal income tax return on Internal Revenue Service Form 1066, U.S. Real Estate Mortgage Investment Conduit Income Tax Return, including Schedule Q thereto, Quarterly Notice to Residual Interest Holders of REMIC Taxable Income or Net Loss Allocation, or any successor forms, to be filed on behalf of each REMIC due to their classification as a REMIC under the REMIC Provisions, together with any and all other information, reports or returns that may be required to be furnished to the Certificateholders or filed with the Internal Revenue Service or any other governmental taxing authority under any applicable provisions of federal, state or local tax laws.

Telerate Screen Page 3750:  The display page so designated on the Bridge Telerate Capital Markets Report (or such other page as may replace page 3750 on such service for the purpose of displaying London interbank offered rates of major banks, or, if such service is no longer offered, such other service for displaying London interbank offered rates or comparable rates as may be selected by the Indenture Trustee after consultation with the Servicer)

Transfer:  Any direct or indirect transfer, sale, pledge, hypothecation or other form of assignment of any Ownership Interest in a Certificate.

Transfer Date:  The Payment Date on which the Servicer, upon receipt of written notice and direction from the Issuer, shall cause the retransfer of Mortgage Loans from the Trust Estate to the Issuer, pursuant to Section 3.15(c) of the Servicing Agreement.

Transfer Notice Date:  The fifth Business Day prior to the Transfer Date for which the Servicer shall give the Indenture Trustee, the Rating Agencies and the Enhancer a notice of the proposed retransfer of Mortgage Loans, pursuant to Section 3.15(c) of the Servicing Agreement.

Transferee:  Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor:  Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Treasury Regulations:  Regulations, including proposed or temporary Regulations, promulgated under the Code.  References herein to specific provisions of proposed or temporary regulations shall include analogous provisions of final Treasury Regulations or other successor Treasury Regulations.

Trust Agreement:  The trust agreement dated as of the Closing Date, between the Owner Trustee and the Depositor.

Trust Estate:  The meaning specified in the Granting Clause of the Indenture.

Trust Indenture Act or TIA:  The Trust Indenture Act of 1939, as amended from time to time, as in effect on any relevant date.

UCC:  The Uniform Commercial Code, as in effect from time to time, as in effect in any specified jurisdiction.

Unpaid Principal Amount:  As defined in Section 3.05(a) of the Indenture.

Uncertificated Accrued Interest:  With respect to any REMIC I Regular Interest for any Payment Date, one month's interest at the related REMIC I Remittance Rate for such Payment Date, accrued on the Uncertificated Principal Balance immediately prior to such Payment Date. Uncertificated Accrued Interest for the REMIC I and REMIC II Regular Interests shall accrue on the basis of a 360-day year consisting of twelve 30-day months. For purposes of calculating the amount of Uncertificated Accrued Interest for the REMIC I Regular Interests for any Payment Date, any Prepayment Interest Shortfalls or Relief Act Shortfalls for such Payment Date shall be allocated among the REMIC I Regular Interests pro rata based on, and to the extent of, the Uncertificated Accrued Interest thereon, as calculated without the application of this sentence. With respect to any Payment Date and REMIC II Regular Interest SB-IO, one month's interest at the related Certificate Rate on the Notional Amount thereof reduced by its pro-rata share of any Prepayment Interest Shortfalls or Relief Act Shortfalls, but not reduced by amounts distributable pursuant to clauses (iv), (v) or (vi) of Section 3.05(a)(I) of the Indenture.

Uncertificated Principal Balance:  With respect to any Payment Date and any REMIC I Regular Interest, the initial Uncertificated Principal Balance thereof as reduced on each successive Payment Date first by Liquidation Loss Amounts allocated to the principal thereof by the definition of REMIC I Liquidation Loss Amounts and second by principal deemed distributed in respect thereof on such Payment Date pursuant to Section 5.01(e) of the Trust Agreement. With respect to any Payment Date and REMIC II Regular Interest SB-PO, the Initial Certificate Balance reduced by the allocation to the principal thereof on prior Payment Dates of Liquidation Loss Amounts, to the extent such Liquidation Loss Amounts are allocated to the principal of the Class SB Certificates, and amounts deemed distributed with respect to such REMIC II Regular Interest.

Uncertificated Regular Interests:  The REMIC I Regular Interests, REMIC II Regular Interest SB-IO and REMIC II Regular Interest SB-PO.

WG Trust 2003:  Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust.