# UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;
## (at Manhattan)

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And, ) | Case No. <u>12-bk-12020 (MG)</u>; No. <u>12-bk-12032</u>; |
| In Re: GMAC, Mortgage Co., et al, ) | Chapter___ (Ch.11, Joint Admin. ) |
| Debtors ) | (Related BR Case No.07-bk-57237, S.D., OHIO) |
| ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| ) | JUDGE: GLENN, MARTIN |
| UNITED STATES of America, Ex Rel., ) | |
| Yvonne D. Lewis, et al., ) | Adversary Case No.: ___12-01731___ |
| Plaintiffs/ Surplus Creditors ) | (Related Case No.<u>1:12-cv-361, USDC, DC.</u>); |
| Vs. ) | 05-CV-7346 (03-CV-7478); 03-CV-10836; |
| ) | 05-CV-4555; 03-CV-6954);(12-AP-506, 11-AP- |
| GMAC, Mortgage Co., et al, ) | 875, 10-AP-110, COA10th Dist., OHIO |
| Defendants/ Bankrupt Debtor, ) | (Related Case No.96-cv-494, USDC, S.D.,OH.) |

PRAECIPE TO CLERK OF COURT:



Please file the enclosed without delay.

1.  Motion To Vacate/ Objections

2.  Statement of Facts, with Exhibits,  in Support of Motion To Vacate

Thank You In Advance.

Dated: June 26, 2012. _Sidney T. Lewis_        Dated: June 26, 2012. _Yvonne D. Lewis_
       Sidney/T. Lewis, pro se            Yvonne D. Lewis, pro se
       1875 Alvason Avenue            1875 Alvason Avenue
       Columbus, Ohio 43219            Columbus, Ohio 43219
       (614) 940-3306            (614) 940-3306

**UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;**
**(at Manhattan)**

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And, ) | Case No. <u>12-bk-12020 (MG)</u>; No. <u>12-bk-12032</u>; |
| In Re: GMAC, Mortgage Co., et al, ) | Chapter____<u>(Ch.11, Joint Admin. )</u> |
| Debtors ) | (Related BR Case No.05-bk-75111, S.D., OHIO) |
| ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| ) | JUDGE: GLENN, MARTIN |
| UNITED STATES of America, Ex Rel., ) | |
| Yvonne D. Lewis, et al., ) | Adversary Case No.: _<u>12-01731</u>____ |
| Plaintiffs/ Surplus Creditors ) | (Related Case No.<u>1:12-cv-361, USDC, DC.</u>); |
| Vs. ) | 05-CV-7346 (03-CV-7478); 03-CV-10836; |
| ) | 05-CV-4555; 03-CV-6954);(12-AP-506, 11-AP- |
| GMAC, Mortgage Co., et al, ) | 875, 10-AP-110, COA10th Dist., OHIO |
| Defendants/ Bankrupt Debtor, ) | (Related Case No.96-cv-494, USDC, S.D.,OH.) |

**<u>Notice of Motion To Vacate/Objection To Disclosure Statement (4157) and Plan (4153)</u>**

To: Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York, 10104,
Attn: Gary Lee, Lorenzo Marinuzzi, and Todd Goren; *Counsel to the Debtors and Debtors in Possession,* And,

To: Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York, 10036, Attn: Kenneth H. Eckstein, Douglas H. Mannal and Stephen D. Zide; *Counsel for the Official Committee of Unsecured Creditors*

To: Office of the United States Trustee, Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014,
Attn: Brian Masumoto and Michael Driscoll.

Please take notice, that the undersigns will bring the above motion and objection on for hearing before the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York, at the Disclosure Statement Hearing [Doc. 4157], at the United States Bankruptcy Courthouse, One Bowling Green, New York, New York 10004-1408 on *August 21, 2013* at *10:00* o'clock in the afternoon of that day or as soon thereafter as counsel can be heard.

Dated: 07-26-13_ *Sidney Lewis*_         Dated: 07-26-13_ *Yvonne D. Lewis*_
Sidney T. Lewis, pro se                  Yvonne D. Lewis, pro se
1875 Alvason Avenue                      1875 Alvason Avenue
Columbus, Ohio 43219                     Columbus, Ohio 43219
(614-940-3306)                           (614-940-3306)

Sidney T. Lewis, pro se                  Yvonne D. Lewis, pro se
P. O. Box 247916                         P. O. Box 247916
Columbus, Ohio 43224                     Columbus, Ohio 43224
(614-940-3306)                           (614-940-3306)


RECEIVED
JUL 29 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

## UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;
### (at Manhattan)

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And, ) | Case No. <u>12-bk-12020 (MG)</u>; No. <u>12-bk-12032</u>; |
| In Re: GMAC, Mortgage Co., et al, ) | Chapter___ <u>Ch.11, Joint Admin.</u> ) |
| Debtors ) | (Related BR Case No.07-bk-57237, S.D., OHIO) |
| ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| ) | JUDGE: GLENN, MARTIN |
| UNITED STATES of America, Ex Rel., ) | |
| Yvonne D. Lewis, et al., ) | Adversary Case No.: <u>12-01731</u> |
| · Plaintiffs/ Surplus Creditors ) | (Related Case No.<u>1:12-cv-361, USDC, DC.</u>); |
| Vs. ) | 05-CV-7346 (03-CV-7478); 03-CV-10836; |
| ) | 05-CV-4555; 03-CV-6954);(12-AP-506, 11-AP- |
| GMAC, Mortgage Co., et al, ) | 875, 10-AP-110, COA10th Dist., OHIO |
| Defendants/ Bankrupt Debtor, ) | (Related Case No.96-cv-494, USDC, S.D.,OH.) |

MOTION TO VACATE "SALE ORDERS" FOR DEBTOR GMAC'S FHA LOANS WITH
OBJECTION BY CREDITOR "LEWIS", TO DEBTOR GMAC, LLC, "PLAN" [DOC. 4153]
AND "DISCLOSURE STATEMENT" [DOC. 4157]; GROUNDED ON 5TH & 14TH
AMENDS., U.S. CONST., "TAKINGS CLAUSE" AND MANDATORY HUD REG'S AS
"AFFIRMATIVE DEFENSES", "JUDICIAL ESTOPPEL" & FRAUD ON THE COURT.

---

### I.  MOTION

The Creditors Sidney T. Lewis (see: 12 USC § 1707(f) Mortgagors son), as executor of the

estates of Betty Hamilton and Robert Hamilton (i.e., claim 933 for $5,000,000.00, on Lot 11, as

FHA insured Mortgage, 12 USC § 1709(b)(7)[.]), P. O. Box 247916, Columbus, Ohio 43224 or

1875 Alvason Avenue, Columbus, Ohio 43219; and, Yvonne D. Lewis (Sidney T. Lewis, spouse),

pro se, (i.e., claim 932 for $24,918,520.00, on Lot 17, as FHA insured Mortgage, 12 USC §

1709(b)(7)[.]), P. O. Box 247916, Columbus, Ohio 43224 or 1875 Alvason Avenue, Columbus,

Ohio 43219, as against the bankruptcy estate of Debtor GMAC, LLC., moves the Court to vacate

and set aside the 2013 "Sale Orders" [Doc 2642-4 Filed 01/15/13 Entered 01/15/13; And  Doc

2649 Filed 01/17/13 Entered 01/17/13 ] for all sales of the subject "HUD/FHA insured mortgages"

RECEIVED
JUL 29 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

'at issue' under claims 932 and 933 (In Re: Lots 11 & 17 of Argyle Park Subdivision "APS"),

entered in this "judicial action" and all subsequent judicial proceedings pursuant to constitutional

authority under the "Takings Clause" and "judicial estoppel". The Fifth Amendment protections

entitles aforesaid creditors to be compensated for the United States HUD/FHA, DOT/FAA, Dept.

of Utilities and Aviation, City of Columbus, Ohio, and the U.S. EPA's failure to effect a July 28,

1987 taking (fnt.1, infra) under the "DECLARATION OF TAKING ACT" and the United States

Constitution's Fifth (5th) Amendment[1]; Fed.R.Civ.Proc., Rules 17(a)(1)(A)&(G) and

60(b)(3),(4)&(6); USCS Bankruptcy Rule 1014(a)(2), 9024; 40 USCS §§ 3113, 3114; 11 USCS

§§ 101(5), 363(n), 1144; And, To Order Debtor GMAC Mortgage Co. to file and serve a

certified copy of either The FAA's administrative order "declaration of taking, Id.§ 3114[2]"

issued by the *United States Department of Transportation/Federal Aviation Administration*

---

[1] "if the authorized action in this instance does constitute a taking of property for which there must be just compensation under the **Fifth Amendment**, the Government has impliedly promised to pay that compensation and has afforded a remedy for its recovery ***. (citations omitted), "The Fifth Amendment does not entitle him [the owner] to be paid in advance of the taking" and the statute affords a plain and adequate remedy. Hurley v. Kincaid, supra. It follows that as **the Government in such a case promises just compensation and provides a complete remedy**, action which constitutes the taking of property is within its constitutional power and there is no ground for holding its agent liable who is simply acting under the authority thus validly conferred. The action of the agent is "the act of the government." United States v. Lynah, supra." (See: **Yearsley v. W. A. Ross Constr. Co., 309 U.S. 18, 21-22 (U.S. 1940))**; (See Also: **State ex rel. R.T.G., Inc. v. State, 98 Ohio St. 3d 1 (Ohio 2002)**,("Regulatory-Takings Law, [**P33] Both the United States and the Ohio Constitutions provide that private property shall not be taken for public use without just compensation. Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution") following Armstrong v. United States (1960), 364 U.S. 40, 49, 80 S. Ct. 1563, 4 L. Ed. 2d 1554);
[2] "To effect a taking, the federal government was required to expressly describe the interest or interests taken. Declaration of Taking Act, Pub. L. No. 71-736, ch. 307, 46 Stat. 1421 (1931) (codified as amended at 40 U.S.C.A. § 3114 (West 2005))." (See: Norton v. Town of Long Island, 883 A.2d 889, 897 (Me. 2005));

"DOT/FAA" (see 49 USCS §§ 40101(d)(4)[3], 40117(a)(3)(E)&(m)[4]; 14 CFR § 158.7[5]), or final

judgment entry from the DOT/FAA's judicial "condemnation proceedings, Id.§ 3113[6]" to

statutorily acquire and collect "PFC's[7]" from the Creditors' "uncompensated private residential

subdivision aviation easements" in the "NAVIGABLE AIRSPACE" of Argyle Park Subdivision

(i.e. Lots 11 &17), Columbus, Ohio in connection with a **JULY 28, 1987** DOT/FAA's approval

of AIP Grant No. 84-2-3-39-0025-03-85 (see **EXHIBIT A**) as "the act of the government."

(Compare: **EXHIBIT A**, July 28, 1987 U.S. DOT/FAA's approval of agent, City of Columbus', Federal AIP Grant [49 USC § 40101(a)(1)] in connection with uncompensated Residential Subdivision Av-Easements [49 USC § 47504(a)(2)(E)] and PFC revenue [Id. §40117(a)(3)(E)] from HUD/FHA insured Mortgages, 12 USC § 1707(a)(A); With: **Yearsley v. W. A. Ross Constr. Co., 309 U.S. 18, 21-22,** "The action of the agent is "the act of the government."));

And, To Order Debtor to submit proof of the FHA mortgagee's compliance in case nos.

98-CV-3445,    03-CV-6954,    05-CV-4555    and    05-bk-75111    with    "MANDATORY

---

[3] 49 USCS § 40101(d)(4) Safety Considerations in Public Interest reads in pertinent parts: "***, the Administrator shall consider the following matters, [inter alia], as being in the public interest: controlling the use of the NAVIGABLE AIRSPACE and regulating civil ***operations in that airspace in the interest of the safety and efficiency ***of those operations."

[4] 49 USCS § 40117(a)(3)(m)(3) Prohibition reads-"A covered air carrier and its agents may <u>not</u> grant to any third party any security or other interest in passenger facility revenue."

[5] 14 CFR § 158.7 – "EXCLUSIVITY OF AUTHORITY" Reads: "**(a)** A State, political subdivision of a State, or authority of a State or political subdivision that is not the eligible public agency may not tax, regulate, prohibit, or otherwise attempt to control in any manner the imposition or collection of a PFC or the use of PFC revenue."

[6] "There is no question that the federal government may take property through condemnation proceedings. "The United States may take property pursuant to its power of eminent domain in one of two ways: it can enter into physical possession of property without authority of a court order; or it can institute condemnation proceedings under various Acts of Congress providing authority for such takings." United States v. Dow, 357 U.S. 17, 21, 2 L. Ed. 2d 1109, 78 S. Ct. 1039 (1958). In either instance, title passes to the United States when the owner receives compensation or when the United States deposits the compensation into court. Id. at 21-22."
**(See: Norton v. Town of Long Island, 883 A.2d 889, 897 (Me. 2005))**

[7] 14 CFR § 158.3 - Definitions Reads: "*PFC* means a passenger facility charge covered by this part imposed by a public agency on passengers enplaned at a commercial service airport it controls."

REQUIREMENTS[8]" of *the United States Department of Housing and Urban*

*Development/Federal Housing Administration* "HUD/FHA". Such proof must include Notice of

"Taking (i.e. Av-easement/PFC)" to FHA mortgagor/owners[9] in the "NAVIGABLE

AIRSPACE" of Argyle Park Subdivision from July 28, 1987 (see EXHIBIT A) to July 18, 2012

(see 40 CFR § 87.6 as amended, eff. July 18, 2012); Including 1987 Notice of Compliance with

---

[8] ""It is the intent of the Department [of Housing and Urban Development] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed," 24 CFR 203.500; and: The mortgagee must have a face-to-face interview with the mortgagor, \*\*\*, before three full monthly installments due on the mortgage are unpaid. \*\*\* before foreclosure is commenced \* \* \*. 24 CFR 203.604 (emphasis added); Bankers Life at 578-579. In addition, the court noted that the word "SHALL" was used throughout the HUD requirements, indicating that the directives were MANDATORY in nature. Id." **(See: CitiMortgage, Inc. v. Carpenter,** 2012 Ohio 1428, at P19; 2012 Ohio App. LEXIS 1230, at \*14. (Ohio Ct. App., Montgomery County Mar. 30, 2012), <u>citing</u> **Bankers Life Co. v. Denton** (Ill. App. 1983), 458 N.E.2d 203, at 204-205, <u>followed by</u> **GMAC Mortgage Co. of Pennsylvania v. Gray,** 1991 Ohio App. LEXIS 6004, [\*16] (Ohio Ct. App., Franklin County Dec. 10, 1991); <u>followed by</u> **BAC Home Loans Servicing v. Taylor,** 986 N.E.2d 1028, pp. 1032-1033 (Ohio Ct. App., Summit County, 2013)); Also See: 24 CFR 203.500 "MORTGAGE SERVICING GENERALLY WHICH READS IN PERTINENT PARTS: "It is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."

[9] "...'[since] compensation is due at the time of taking, the owner at that time, \*\*\*, receives the payment." Danforth v. United States, 308 U.S. 271, 284; cf. United States v. Dickinson, 331 U.S. 745. We hold, \*\*\*, that the "taking" did not occur in 1946 when the Government filed its declaration of taking, but rather when the United States entered into possession of the land in 1943." (See: **UNITED STATES v. DOW, 357 U.S. 17, 20-21 (U.S. 1958);** See Also: **Ohio v. Kovacs, 469 U.S. 274, 278-279 (U.S. 1985));** "\*\*\*the provisions of the Fifth Amendment's Takings Clause. That clause — ". . . nor shall private property be taken for public use, without just compensation," U.S. Const. amend. V — has been made applicable to the states through the Fourteenth Amendment. Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536, 125 S. Ct. 2074, 161 L. Ed. 2d 876 (2005) (citing Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897)). The Clause has been described as "*self-executing*," requiring states to provide a remedy whenever interference with property rights amounts to a taking. DLX, Inc. v. Kentucky, 381 F.3d 511, 527 (6th Cir. 2004) (citing First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles, 482 U.S. 304, 316 n.9, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987))."**(See: Fredericks v. Mich. Dep't of Corr., 2012 U.S. Dist. LEXIS 45105, 6-7 ( E.D. Mich. Mar. 30, 2012));**

FHA lead-based paint abatement ('lead hazard[10]') pursuant to 42 U.S.C. § 4821(a); Including

1987 Notice of Compliance with FAA leaded Av-gas abatement in 'emissions from aircraft and

aircraft engines' under the 'Aviation Safety[11] and Noise Abatement Act of 1979', (Pub. L. 96-

193, Feb. 18, 1980, 94 Stat. 50), "ASNA" (see 49 USCS § 47504(a)(2)(D) &(E); 14 CFR § 150

et seq.) on such terms as may be just, on the grounds of Debtor GMAC LLC's 2013 'Fraud Upon

the Court' by intentional, misrepresentations and concealments of the aforesaid "Takings"

**(EXHIBIT A)** and "Affirmative Defenses" **(EXHIBIT B & B1)** in Debtor's Disclosure

Statement [Doc. 4157] and Proposed Plan [Doc. 4153], all of which more clearly appears to be

concealed in the *affidavit of Thomas Whitlinger* [Doc. 6, at pg. 74 of 101 at item 170] which

falsely avers that FHA insured mortgagors "borrowers" have a right to file "counterclaims" in

connection with Debtor GMAC's non-compliance with mandatory FHA servicing requirements

which provide Creditors "Lewises" an "affirmative defense" against Debtor GMAC's pre-

petition non-compliance with HUD/FHA "forbearance provisions" under 24 CFR 203.604(b),

(See: fnt.8, supra, at Id., **GMAC Mortgage**).

Moreover, the affidavit of Creditor Sidney T. Lewis, attached as Exhibit 1 which

discloses the "FAA-Takings" and "FHA-Affirmative Defenses" and "contrary position" of the

*affidavit of Thomas Whitlinger* [Doc. 6] which conceals the Debtor GMAC's false date of default

on Jan. 1, 2005 to fraudulently evade compliance with its mandatory "Duty to Mitigate" a default

---

[10] See: 42 U.S.C. § 4821(a) - DEVELOPMENT OF PROGRAM *** SAFE LEVEL OF LEAD
**reads in pertinent parts: "(a)** The Secretary of Housing and Urban Development, ***, shall
develop and carry out a demonstration and research program to determine the nature and extent
of the problem of lead *** poisoning in the United States, particularly in urban areas, including
the methods by which the lead *** hazard can most effectively be removed from ***, porches,
and exterior surfaces of residential housing to which children may be exposed."
[11] **See:** 40 CFR § 87.6 - Aircraft safety.(i.e., 40 CFR part 87, "CONTROL OF AIR
POLLUTION FROM AIRCRAFT AND AIRCRAFT ENGINES", amended June 18, 2012, eff.
July 18, 2012)

of HUD/FHA insured mortgages. Debtor's "Duty to Mitigate" before commencement of the

foreclosure on April 22, 2005 or acquisition of title to Argyle Park Subdivision properties, lots

11 & 17 on Sept. 12, 2011 and Dec. 12, 2011 arose after the aforesaid 1987 DOT/FAA "takings"

of aforesaid private residential subdivision aviation easements (see **EXHIBIT B & B1**), in the

APS "NAVIGABLE AIRSPACE". APS is in a non-attainment areas for Lead Pollution (i.e.

FHA/HUD's lead based paint abatement, 24 CFR § 35.1320(b)(2)(ii); 40 CFR § 745.227

(d)(8)[12]; and FAA/DOT's leaded av-gas emissions from aircraft and aircraft engines, 40 CFR §

87.6) absent FAA/DOT's "Declaration of Taking" nor "condemnation proceeding (Norton,

supra). This motion is supported by the elements and allegation of Fraud upon the Court, pled

with particularity, in the attached Statement of Facts, incorporated herein as if fully rewritten.

Dated: 07-26-13 _Sidney Lewis_          Dated: 07-26-13 _Yvonne D. Lewis_
_Sidney T. Lewis, pro se               Yvonne D. Lewis, pro se
1875 Alvason Avenue                    1875 Alvason Avenue
Columbus, Ohio 43219                   Columbus, Ohio 43219
(614-940-3306)                         (614-940-3306)


Sidney T. Lewis, pro se                Yvonne D. Lewis, pro se
P. O. Box 247916                       P. O. Box 247916
Columbus, Ohio 43224                   Columbus, Ohio 43224
(614-940-3306)                         (614-940-3306)


## II. OBJECTION

The aforesaid Creditors Sidney T. Lewis and Yvonne D. Lewis objection to the Debtor's

Disclosure Statement [Doc. 4157] and Ch. 11 Plan [4153] filed July 3, 2013 is on grounds:

(1) "JUDICIAL ESTOPPEL" by "TAKING CLAUSE" (Compare: *United States v.
Dow, 357 U.S. 17, 21*; With: *Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002)*), (2)
"AFFIRMATIVE DEFENSE" (See: *BAC Home Loans Servicing v. Taylor, 986
N.E.2d 1028, pp. 1032-1033 (Ohio Ct. App., Summit County 2013)* citing *GMAC*

---

[12] Compare: 24 CFR §§ 35.1320(b)(2)(ii) soil-lead hazard; With: 40 CFR §§ 745.227 (d)(8) "Soil
samples shall be collected and analyzed for lead concentrations…");

*Mortgage of Pennsylvania v. Gray, 10th Dist. No. 91AP-650, 1991 Ohio App. LEXIS
6004, 1991 WL 268742, \*6-7 (Dec. 10, 1991)),* and **(3)** "FRAUD UPON THE
COURT" (See: Attachment A).

Aforesaid Creditors' 'incorporate herein by reference', all laws, regulations, policies, customs,

guidelines, pleadings with particularity, or otherwise all rights, privileges, and benefits averred in

the attached Statement of Facts, herein as if fully rewritten. This objection is also on grounds

that the May 31, 2012 notice did not guarantee that the mortgagee or HUD will honor my

mandatory modification rights under 12 USC §§ 1715b, 1715u, 1710(a)(1)(A), 1709 and 42 USC

§§ 3535(d), 4651(3), regarding the lead pollution abatement under HUD/FHA and DOT/FAA, 14

CFR §§ 34.3(a),(b),&(e), 150 et seq., 158.5, 158.7; 40 CFR §§ 87.6, 93.160(a)&(d)

"MITIGATION OF AIR QUALITY IMPACTS".

"FHA ADVANCES"

A. Debtor's *Certain Position* in Disclosure Statement on July 3, 2013

> "Advances insured by the FHA or the VA that the Debtors intend
> to monetize for the Estate's benefit."

(See: Disclosure Statement, Doc 4157 at page 146 of 399, at ARTICLE VII., RECOVERY)
(See Also: Disclosure Statement, Doc 4157 at page 138)

"JUDICIAL ESTOPPEL"

1. Debtor's *Certain Position* on April 22, 2005

Objection: John Timson's Affidavit on behalf of Debtor GMAC filed in <u>Case No. 2:05-bk-75111</u>
(see Attachment A, STATEMENT OF FACTS, at **EXHIBIT B**, at pg. 1, Timson Aff., at
2/1/05), reveals that on Jan. 27, 2006 GMAC judicially declared a defaulted FHA mortgage on
**<u>FEB. 1, 2005,</u>** pursuant to 24 CFR § 203.604(b).

Prior to the Timson Affidavit, on June 20, 2005 an Order of Court issued in <u>Case No. 05-CV-
4555</u> (see Attachment A, STATEMENT OF FACTS, at **EXHIBIT A at pg. 021**), **FINDING** a
defaulted FHA insured mortgage on **<u>FEB. 1, 2005</u>**. Said **FINDINGS** were subject to HUD
'special forbearance provisions' pursuant to 12 USC §§ 1715u(a), 1710(a)(1)(A) due to the fact

7 of 12

that said alleged default occurred before 3 full monthly installments were unpaid on April 22, 2005.

2.  Debtor's *Contrary Position* as *Inconsistent Claim* filed Sept. 8, 2011

Objection:  Peter Nocero's Affidavit filed Sept. 8, 2011 in <u>Case No. 05-CV-4555</u> (see Attachment A, STATEMENT OF FACTS, at **EXHIBIT B1**, Nocero Aff. at pg. 2) falsely averred and judicially declared a defaulted FHA mortgage on **JAN. 1, 2005** indicating more than 3 full monthly installments were unpaid on April 22, 2005 (Nocero's Affidavit is incorporated in Thomas Whitlinger's Affidavit [Doc. 6]).    On Sept. 12, 2011 by "Void[13]" Order of Court (see Attachment A, STATEMENT OF FACTS, at **EXHIBIT A at pg. 025**), said monetary default of defaulted FHA mortgage occurred on **JAN. 1, 2005**.

(compare: **EXHIBIT A**, at pg. 025, at **JAN. 1, 2005**; with: Id at pg. 021, at **FEB. 1, 2005**),

Dated: 07-26-13    *[signature]*          Dated: 07-26-13    *[signature]*

Sidney T. Lewis, pro se                    Yvonne D. Lewis, pro se
1875 Alvason Avenue                        1875 Alvason Avenue
Columbus, Ohio 43219                       Columbus, Ohio 43219
(614-940-3306)                             (614-940-3306)


Sidney T. Lewis, pro se                    Yvonne D. Lewis, pro se
P. O. Box 247916                           P. O. Box 247916
Columbus, Ohio 43224                       Columbus, Ohio 43224
(614-940-3306)                             (614-940-3306)


## CERTIFICATE OF SERVICE

We, the Creditors, Sidney T. Lewis and Yvonne D. Lewis, certify that the "Motion/Objections" were served by regular U.S. Mail (postage prepaid) **on July 26, 2013** on the following parties:


The Clerk of the Bankruptcy Court,
One Bowling Green,
New York, New York 10004-1408;

---

[13] "A judgment entered by a court that proceeded without jurisdiction is void ab initio. Dollar Savings & Trust Co. v. Trocheck (1999), 132 Ohio App.3d 531, 535, 725 N.E.2d 710, and is a legal nullity for all purposes. Hayes v. Kentucky Joint Stock Land Bank of Lexington (1932), 125 Ohio St. 359, 181 N.E. 542." (See: **Countrywide Home Loans Servicing, L.P. v. Burden, 2011 Ohio 5949, P7-P9 (Ohio Ct. App., Montgomery County Nov. 18, 2011), also see:** Jordon v. Gilligan, 500 F.2d 701,pp.710 (6th Cir. 1974), cert. denied, 421 U.S. 991, 95 S. Ct. 1996, 44 L. Ed. 2d 481 (1975))

Chambers of the Honorable Martin Glenn, Judge
United States Bankruptcy Court for the Southern District of New York,
One Bowling Green,
 New York, NY 10004

The Office of the United States Trustees, Southern District of New York,
Attn: Brian Masumoto and Michael Driscoll
U.S. Federal Office Building,
201 Varick Street, Suite 1006,
New York, New York 10014.

And by email to: lewis.kruger@gmacrescap.com, glee@mofo.com, lmarinuzzi@mofo.com, and
tgoren@mofo.com; and email to: keckstein@kramerlevin.com, dmannal@kramerlevin.com, and
szide@kramerlevin.com; And by email to: richard.cieri@kirkland.com and
ray.schrock@kirkland.com;.

Dated: 07-26-13 _____        Dated: 07-26-13 _____
          Sidney T. Lewis, pro se                            Yvonne D. Lewis, pro se

Exhibit 1

## UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK;
### (at Manhattan)

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And, ) | Case No. 12-bk-12020 (MG); No. 12-bk-12032; |
| In Re: GMAC, Mortgage Co., et al, ) | Chapter____ (Ch.11, Joint Admin. ) |
| Debtors ) | (Related BR Case No.05-bk-75111, S.D., OHIO) |
| ) | (Related BR Case No. 12-bk-12032, S.D., N.Y.) |
| ) | JUDGE: GLENN, MARTIN |
| UNITED STATES of America, Ex Rel., ) | |
| Yvonne D. Lewis, et al., ) | Adversary Case No.: _12-01731____ |
| Plaintiffs/ Surplus Creditors ) | (Related Case No.1:12-cv-361, USDC, DC.); |
| Vs. ) | 05-CV-7346 (03-CV-7478); 03-CV-10836; |
| ) | 05-CV-4555; 03-CV-6954);(12-AP-506, 11-AP- |
| GMAC, Mortgage Co., et al, ) | 875, 10-AP-110, COA10th Dist., OHIO |
| Defendants/ Bankrupt Debtor, ) | (Related Case No.96-cv-494, USDC, S.D.,OH.) |

## AFFIDAVIT OF SIDNEY T. LEWIS TO SUPPORT MOTION TO VACATE SALE ORDERS FOR DEBTOR GMAC'S FHA LOANS AND OBJECTION TO DISCLOSURE STATEMENT [DOC 4157] AND PLAN [DOC 4153] UNDER U.S. CONST. AMENDS., XIV &. V.

| | |
|---|---|
| State of OHIO | ) |
| | ) ss: |
| County of FRANKLIN | ) |

Sidney T. Lewis, being first duly sworn says:

1. On or after the Sale Order, **JAN. 15, 2013**, was rendered and entered by this Court in the above-entitled joint action, i.e., 12-bk-12020 (12-bk-12032) in which GMAC LLC., was an alleged *Debtor in Possession* of "takings claims" on HUD/FHA insured mortgages by the DOT/FAA's collection of "PFC revenue" for "public use" of "uncompensated private residential subdivision aviation easements" in the "NAVIGABLE AIRSPACE" of lots 11 & 17 (inter alia) over the Argyle Park Subdivision, Columbus, Ohio in connection with a **JULY 28, 1987** DOT/FAA's approval of AIP Grant No. 84-2-3-39-0025-03-85 pursuant to 14 CFR §§150 et seq., 158.7 [see 76 FR12407 filed March 7, 2011], as DOT/FAA's approval of collection of PFC's for the Columbus Regional Airport Authority, Columbus, Ohio, Application No. 10-09-C-00-CMH, effective date on **APRIL 1, 2013** for $184,164,011.00, and I remained the claims representative for Betty Hamilton and Robert Hamilton, FHA insured Mortgagors for lot 11 by which it was adjudged that the Debtor GMAC recover the entire "fee-simple interest" of both, the land and building at $82K, and the value of the "takings claims" on the residential subdivision aviation easements on lot 11 valued in pro rata sum of $184M.

10 of 12

2. The Summons and Complaint in case no. <u>03-CV-6945</u> were never in fact served upon nor delivered to me personally for the FHA insured Mortgagors Betty Hamilton and Robert Hamilton under the provisions of the Fifth Amendment's Takings Clause. (see U.S. Const. amend. V.) I was a resident of the "NAVIGABLE AIRSPACE" of lots 11 & 17 Argyle Park Subdivision, at the time of the issuance of the Summons and filing of the Takings Complaint against the City of Columbus, Department of Utilities and Aviation, Columbus Metro Airport, Columbus, Ohio, case no. <u>98-CV-3445</u>, in the Franklin County Common Pleas Court, Civil Division and have remained such a resident continuously from that time till the present. My dual dwelling house and usual place of abode during all such time was and is at 1875 Alvason Avenue and 1913 Argyle Drive. The summons and complaint were never addressed to Betty Hamilton and Robert Hamilton in connection with the July 28, 1987 DOT/FAA's approval of AIP Grant No. 84-2-3-39-0025-03-85 pursuant to 14 CFR §§150 et seq., 158.7 as a companion case of case no. <u>98-CV-3445</u> for "taking" and consolidation purposes. The Summons and Complaint in case no. <u>05-CV-4555</u> was never in fact served upon nor delivered to me personally for the FHA insured Mortgagor Yvonne D. Moore aka Yvonne D. Lewis to assert the HUD/FHA "affirmative defenses" under 24 CFR §§ 30.35(c)(2), 203.500, 203.604(b) and "Takings Clause" under U.S. Const. amend. V.; 14 CFR §§ 34.3(b)&(e), 150.21, 158.7, under FAA AIP Grant No. 84-2-3-39-0025-03-85. (see: fnt. 9, at U.S. Const. amend. V.)

3. First, I have <u>not</u> waived my constitutional objections of jurisdictional standing (See: **Friends of Gateway v. Slater, 257 F.3d 74, 77-78 (2d Cir. N.Y. 2001)** "the Supreme Court recently decided that this Court must address any jurisdictional standing question first, before deciding a case on the merits. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94, 140 L. Ed. 2d 210, 118 S. Ct. 1003 (1999)"); Second, I have <u>not</u> waived my statutory right to compensation (See: Yearsley v. W. A. Ross Constr. Co., 309 U.S. 18, 21-22 citing Hurley v. Kincaid, supra.); And, Third, I have <u>not</u> waived my claim of lack of jurisdiction over FHA and FAA administrative 'subject matters' under the provisions of the Fifth & Fourteenth Amendments "Takings Clause" in case nos. 12-bk-12020, 03-CV-6954 and 05-CV-4555 under Rules 60(b) and 12(h) of the Federal Rules of Civil Procedure because: **(A)** the Sept. 12, 2011 Foreclosure Decree in case no. 05-CV-4555; **(B)** the Dec. 12, 2011 Foreclosure Decree in case no. 03-CV-6954; and **(C)** the 2013 "Sale Order" for FHA loans in case no. 12-bk-12020, S.D., NY., at Manhattan, are Void[14] judgments and are legal nullities for all purposes (see: Jordon v. Gilligan, 500 F.2d 701,pp.710, *a void judgment is a legal nullity*) as were entered by the Ohio State Court and New York and Ohio Bankruptcy Courts upon Debtor GMAC's "*contrary positions*[15]" under

---

[14] "A judgment entered by a court that proceeded without jurisdiction is void ab initio. Dollar Savings & Trust Co. v. Trocheck (1999), 132 Ohio App.3d 531, 535, 725 N.E.2d 710, and is a legal nullity for all purposes. Hayes v. Kentucky Joint Stock Land Bank of Lexington (1932), 125 Ohio St. 359, 181 N.E. 542." (See: **Countrywide Home Loans Servicing, L.P. v. Burden, 2011 Ohio 5949, P7-P9 (Ohio Ct. App., Montgomery County Nov. 18, 2011), also see:** Jordon v. Gilligan, 500 F.2d 701,pp.710 (6th Cir. 1974), cert. denied, 421 U.S. 991, 95 S. Ct. 1996, 44 L. Ed. 2d 481 (1975))

[15] See: 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory")

inconsistent affidavits proffered under the Doctrine of "Judicial Estoppel[16]" (see: Jarr Loan, LLC v. Justo, 2010 Bankr. LEXIS 4267, at pages 9-10, "[W]here a party assumes a *certain position* in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a *contrary position*, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.") and I have <u>not</u> filed any pleading nor motion in these void actions which prejudices Debtor/ FHA Mortgagee, GMAC's third-party claimant "subrogation rights" relating to its "Duty to Mitigate" under the HUD/FHA's mandatory regulations before this motion. (see: 24 CFR § 203.605(a) "Duty to Mitigate" reads in pertinent parts: "Before four full monthly installments due on the mortgage have become unpaid***the mortgagee shall take the appropriate loss mitigation action")

Executed on:  26th day of July 2013. _____ [12 U.S.C. §1707(f)]
                        Sidney T. Lewis, Affiant
                        1875 Alvason Avenue,
                        Columbus, Ohio 43219
                        (614) 940-3306


"I certify under penalty of perjury that the foregoing is true and correct."


On this 26th day of July, 2013 _____ [28 U.S.C. §1746]
                        Sidney T. Lewis, Affiant
                        1875 Alvason Avenue,
                        Columbus, Ohio 43219
                        (614) 940-3306

---

[16] (See: Jarr Loan, LLC v. Justo (In re Justo), 2010 Bankr. LEXIS 4267, at pages 9-10 (Bankr. S.D. Fla. Dec. 3, 2010);(See Also: Clark v. P&G Mfg. Co., 2006 U.S. Dist. LEXIS 95919, at pages 11-12  (W.D. Tenn. Jan. 26, 2006); Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002) (quotation omitted)("*Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship*."); See also Reynolds v. Commissioner, 861 F.2d 469, 472 (6th Cir.1988).))

## EXHIBITS TO MOTION

Exhibits:                                                                     Unmarked Pages

A          July 28, 1987 - U. S. DOT/FAA Acceptance of City of
           Columbus' Noise Exposure Maps (NEM) under ASNA -
           FAR 150 et seq.                                                          1

           Sept. 11, 1987 - U. S. DOT/FAA Approval of City of
           Columbus' AIP Grant 84-2-3-39-0025-03-85 under
           FAR Part 150 Noise Compatibility Program (NCP) for
           Port  Columbus International Airport.                                   2 & 3

           March 26, 1987 – City of Columbus' Submission of
           Noise Exposure Map-1985 and Noise Exposure Map 1990
           Under the Noise Compatibility Program under AIP Project
           No. 3-39-0025-03 by Michael D. Long, Director of Public
           Utilities and Aviation.                                                  4

           City Of Columbus' Part 150 Study Organization Chart for
           Port Columbus International Airport.                                     5

           Map of Argyle Park Subdivision – Book 36, Page 6            6

           Consolidated Departure (Flight) Tracks – Exhibit 2H        7

           Consolidated Departure (Flight) Tracks – Exhibit 2I        8


B          Jan. 23, 1968 – FHA Deed of Robert and Betty Hamilton –
           1913 Argyle Drive, Columbus, Ohio (Lot 11)–Vol. 2870, pages
           402-403.                                                                 1 & 2

B1         Sept. 30, 1975 – Mortgage Deed With Dower of Ronald L.
           Moore by Yvonne D. Moore as His  Attorney-in-Fact and
           Yvonne D. Moore – 1875 Alvason Avenue, Columbus, Ohio
           (Lot 17) – Vo. 3553, Pages 21-23.                                      3, 4 & 5

EXHIBIT
A

20826 - I17

AUG - 6 RECD 2-00 PM    Org: Hedrick
                                                cc: File
                         XC: Bernie M - 8-6-8

AUG 3 1987

**U.S. Department
of Transportation**

**Federal Aviation
Administration**

DIVISION OF AIRPORTS    Great Lakes Region
Illinois, Indiana, Michigan,
Minnesota, North Dakota,
Ohio, South Dakota,
Wisconsin

RECEIVED
JUL 30 1987
PUBLIC UTILITIES/
AVIATION DEPT.

July 28, 1987

Mr. Michael D. Long, P.E.
Director, Public Utilities And Aviation
109 N. Front Street, 4th Floor
Columbus, Ohio  43215-2835

Dear Mr. Long:

This is to notify you that the Federal Aviation Administration (FAA) has
evaluated your final submission of the noise exposure maps and supporting
documentation transmitted by your letter of March 26, 1987, in accordance
with section 103(a)(1) of the Aviation Safety and Noise Abatement Act of
1979 (ASNA), and has determined that they are in compliance with applicable
requirements of 14 CFR Part 150. Further, we have determined that Noise
Exposure Map - 1985 (1 of 2) and Noise Exposure Map - 1990 (2 of 2) as pre-
sented in the Part 150 Noise Compatibility Program for Port Columbus Inter-
national Airport fulfill the requirements of the noise exposure maps and
supporting documentation. FAA's determination that your noise exposure
maps are in compliance is limited to a finding that the maps were developed
in accordance with the procedures contained in Appendix A of Federal Avia-
tion Regulation (FAR) Part 150. Such determination does not constitute
approval of your data, information or plans.

Should questions arise concerning the precise relationship of specific
properties to noise exposure contours depicted on your noise exposure maps,
you should note that the FAA will not be involved in any way in determining
the relative locations of specific properties with regard to the depicted
noise contours, or in interpreting the maps to resolve questions concerning,
for example, which properties should be covered by the provisions of section
107 of the Act. These functions are inseparable from the ultimate land
use control and planning responsibilities of local government. These local
responsibilities are not changed in any way under Part 150 or through FAA's
determination relative to your noise exposure maps. Therefore, the responsi-
bility for the detailed overlaying of noise exposure contours onto the maps
depicting properties on the surface rests exclusively with you, the airport
operator, or with those public agencies and planning agencies with which
consultation is required under section 103 of the Act. The FAA relies on
the certification by you, under 150.21 of FAR Part 150, that the statutorily
required consultation has been accomplished.





**U.S. Department
of Transportation**

**Federal Aviation
Administration**

# Memorandum

| | |
|---|---|
| Subject: | ACTION: FAR Part 150 Noise Compatibility Program, Record of Decision; Port Columbus International Airport, Columbus, Ohio |
| Date: | SEP 11 1987 |
| From: | Director, AGL-1 |
| Reply to Attn. of: | Lamberts:384-7387 |
| To: | Administrator |

The city of Columbus, Public Utilities and Aviation Department, owner and operator of Port Columbus International Airport, has submitted noise exposure maps (NEM's) and a proposed noise compatibility program (NCP) to this office. The NEM's were previously accepted by FAA effective July 27, 1987. The proposed NCP must be approved or disapproved on or before January 23, 1988. A Federal Register notice announcing the submission of the NCP for FAA approval was published July 27, 1987. The maps and proposed program have been coordinated with airport users, community officials, land use planning agencies, and the public. Documentation of this coordination is found in the appendices of the study report.

Earlier review of the proposed NCP by this office and APP-600 found the program to be compliant with the standards set forth in FAR Part 150, paragraph 150.23. This submittal requests formal FAA review and approval of the NCP for Port Columbus International Airport. The airport is situated in the eastern part of the city of Columbus, which is currently designated as a medium hub. It has 184 based aircraft and had approximately 230,000 operations in 1986. This Part 150 study was funded under AIP Grant 84-2-3-39-0025-03-85 with a Federal project share of $267,188, which includes a master plan update.

This office believes the NCP complies with published standards for FAR Part 150 submittals. We have coordinated this report with Regional Counsel, the regional Planning Staff, and affected operational divisions. We are pleased to forward this candidate NCP for your consideration. We recommend you approve this NCP.

William H. Pollard

Attachment

2

Date:
Subject: FAR Part 150 Noise Compatibility Program, Record of Decision;
Port Columbus International Airport, Columbus, Ohio

Associate Administrator for Airports, ARP-1

Concur/Non-concur: _(signature)_  Date: 9/16/87

Associate Administrator for Policy and International Aviation, API-1

Concur/Non-concur: _(signature)_  Date: 9/18/87

Chief Counsel, AGC-1

Concur/Non-concur: _(signature)_  Date: 9/21/87

Administrator, AOA-1

Approved/Disapproved: _(signature)_  Date: 9-25-87

20826 - I14



**City of Columbus**
Mayor Dana G. Rinehart

# Public Utilities and Aviation Department

MICHAEL D. LONG, Director

March 26, 1987

Mr. Bob Allen
FAA-ADO
Willow Run Airport-East Side
880 Beck Road
Belleville, Michigan  48111

Dear Mr. Allen:

With this letter, the City of Columbus offers Noise Exposure Map-1985 (1 of 2) and Noise Exposure Map-1990 (2 of 2), as presented in the Part 150 Noise Compatibility Program for Port Columbus International Airport (PCIA), as the official noise exposure maps to be accepted by the Federal Aviation Administration.

This letter also certifies that since the FAR 150 Noise Study, Noise Contour Maps for both base year (1985) and base year plus five (5) years (1990) have been prepared for PCIA under AIP Project Number 3-39-0025-03, there have been no significant changes in the following airport operational characteristics that would invalidate the proposed Noise Compatibility Program. A tabulation entitled "Summary INM Input Data for Noise Maps" is attached.

Sincerely,

MICHAEL D. LONG, P.E.
Director
Public Utilities and Aviation

MDL/BFM:sss
Enclosures

cc:  Mr. David Shine
     AGL-610

20826 - I15



**PART 150 STUDY ORGANIZATION**
**PORT COLUMBUS INTERNATIONAL AIRPORT**

CITY OF COLUMBUS

NOISE STUDY CONSULTANT TEAM

**LAND USE PLANNING COMMITTEE**

- Mid-Ohio Regional Planning Commission
- Columbus
- Gahanna
- Whitehall
- Bexley
- Mifflin Township
- Jefferson Township
- Reynoldsburg

**PUBLIC INVOLVEMENT**

- Public Information Meetings
- Periodic Newsletters
- City Contact/Information Telephone Numbers

**TECHNICAL/OPERATIONS COMMITTEE**

- Airport Operations (Columbus)
- FAA Air Traffic Control
- FAA Airports District Office
- Air Transport Association (ATA)
- Air Line Pilots Association (ALPA)
- Local Air Carrier Representative
- National Business Aircraft Association (NBAA)
- Local Professional Pilots Association
- Commuter Representative
- FBO Representative
- Citizen Representative
- Mid-Ohio Regional Planning Commission

EXHIBIT I-1





EXHIBIT

B

Deed for Ohio                                    vol.2870 page402        843-02598-203
                                                                          1195

KNOW ALL MEN BY THESE PRESENTS, THAT,  Robert C. Weaver  , Secretary of
Housing and Urban Development, of Washington, D. C., acting by and through
the Federal Housing Commissioner, (hereinafter referred to as "Grantor")
who acquired title by deed recorded in Deed Book Volume  2852    , Page 508 ,
Recorder's Office, Franklin          County, Ohio, for and in consideration of
ONE DOLLAR ($1.00) to him paid by   Robert Hamilton and Betty Hamilton
                                    (hereinafter referred to as "Grantee(s)".)
whose tax mailing address will be   1913 Argyle Dr., Columbus, Ohio
the receipt of which is hereby acknowledged, and other good and valuable con-
siderations, does hereby grant, bargain, sell and convey to said Robert Hamilton
& Betty Hamilton           and to the heirs and assigns of said Grantee(s)
forever the following REAL ESTATE, situated in the City of Columbus, County of Franklin
and State of Ohio and bounded and described as follows, to wit:

      Being Lot No. 11 of Argyle Park Subdivision, as the same
      is numbered and delineated upon the recorded plat thereof,
      of record in Plat Book 36, Page 6, Recorder's Office, Franklin
      County, Ohio.




TRANSFER TAX
EXEMPT
By.............
ARCH J. WARREN
FRANKLIN COUNTY, AUDITOR

TRANSFERRED
JAN 23 1968
ARCH J. WARREN
............

JAN 23 1968

Received........JAN 23 1968.......in Franklin County
Recorded........................
                JAMES A. SCHAEFER, Recorder
Recorder's Fee $...........

      BEING the same property acquired by the grantor pursuant to the pro-
visions of the National Housing Act, as amended (12 USC 1701 et seq.) and
the Department of Housing and Urban Development Act (79 Stat. 667).

      SUBJECT TO ALL covenants, restrictions, reservations, easements, condi-
tions and rights appearing of record; and SUBJECT to any state of facts an
accurate survey would show.

      TO HAVE AND TO HOLD said premises, with the appurtenances thereunto
belonging, to the said Grantee(s), and to the heirs and assigns of said
Grantee(s), forever,

      AND THE SAID GRANTOR, and his successors hereby covenants with the
said Grantee(s), and the heirs and assigns of said Grantee(s), that said
premises are free and clear from all encumbrances whatsoever, by, from,
through or under said Grantor, EXCEPT restrictions, easements, rights,
reservations, exceptions, limitations, agreements, covenants and conditions
of record; and EXCEPT any state of facts which would be disclosed by an
accurate survey of the premises herein conveyed.

      299

VOL 2870 PAGE 403

-2-

413-012598-203

SAID GRANTOR, and his successors, hereby further convenants that said Grantor, and his successors will FOREVER WARRANT AND DEFEND the same with the appurtenances thereunto belonging, unto said Grantee(s), and the heirs and assigns of said Grantee(s), against the lawful claims of all persons claiming by, from, through or under the said Grantor herein.

IN WITNESS WHEREOF the undersigned on January 2, 1968, has set his hand and seal as Field Office Assistant Director , FHA Field Office, Columbus , Ohio, for and on behalf of the said Secretary of Housing and Urban Development, under authority and by virtue of the Code of Federal Regulations, Title 24, Chapter II, Part 200, Subpart D.

Robert C. Weaver
Secretary of Housing and Urban Development

Signed, acknowledged and de-
livered in the presence of:

By: Federal Housing Commissioner

By: _Edwin E. Davis_ (SEAL)
Edwin E. Davis Assistant Director
Field Office
FHA Field Office, Columbus , Ohio

STATE OF OHIO }
COUNTY OF   Franklin } ss

Before me, the undersigned, a notary public in and for the said State and County, personally appeared the above named   Edwin E. Davis   who is personally well known to me and known to me to be the duly appointed Field Office   Assistant Director   , FHA Field Office, Columbus , Ohio, and the person who executed the foregoing instrument bearing date of   January 2, 1968   , by virtue of the authority vested in him by the Code of Federal Regulations, Title 24, Chapter II, Part 200, Subpart D, and acknowledged the signing thereof, and that such signing was freely and voluntarily performed, as his free act and deed as Field Office Assistant Director   for and on behalf of   Robert C. Weaver   , Secretary of Housing and Urban Development, for the uses and purposes therein mentioned.

In testimony whereof, I have hereunto signed my name and affixed my official seal this   2nd   day of January 1968.

_____
Notary Public

"The form of this instrument was prepared by the Office of the General Counsel of the Federal Housing Administration, and the material in the blank space in this form was inserted by or under the direction of EDWIN E. HOLLEY, Chief, Home Mortgage Section, Office of the General Counsel, Federal Housing Administration, Washington, D. C. 20411."

EXHIBIT

B 1



935530905

VOL 3553 PAGE 21

STATE OF OHIO
FHA Form No. 2141M
Revised November 1972

This form is used in connection with mortgages insured under the one- to four-family provisions of the National Housing Act.

P-27987

# MORTGAGE DEED
# WITH DOWER

19296

KNOW ALL MEN BY THESE PRESENTS, THAT Ronald L. Moore, by Yvonne D. Moore, his Attorney-in-Fact, and Yvonne D. Moore, husband and wife, both being over 18 years of age,

of The City of Columbus                                                   , County of Franklin                        100's
and State of Ohio, the Grantor, for and in consideration of the sum of Twenty-Four Thousand Eight Hundred and no/
Dollars ($24,800.00), to him paid by CENTRAL SAVINGS AND LOAN COMPANY

The United States of America        , and having the principal place of business at 46 S. Gay Street,
Columbus, Ohio 43215        , Grantee, the receipt of which is hereby acknowledged, does give, grant,
bargain, sell, and convey unto the Grantee the following described premises, situated in the    City
of    Columbus        , County of    Franklin        , State
of Ohio, and bounded and described as follows, to-wit:

Being Lot Number Seventeen (17) of ARGYLE PARK
SUBDIVISION, as the same is numbered and
delineated upon the recorded plat thereof, of
record in Plat Book 36, page 6, Recorder's
Office, Franklin County, Ohio.

Received OCT. 6, 1975    4:05    O'Clock    P    M
Recorded OCT. 8, 1975    13    In Franklin County
JAMES A. SCHAEFER, Recorder
7.00

Columbus, Ohio                                    September 30, 1975
For value received, the undersigned hereby sells, assigns and sets over unto:
CITIZENS MORTGAGE CORPORATION, a corporation organized and existing under the
laws of the State of Delaware, whose address is, 24700 Northwestern Highway,
Southfield, Michigan 48075, all its right, title and interest in and to the
within Mortgage, without recourse.

CENTRAL SAVINGS AND LOAN COMPANY

x _____ JAMES L. BEGARD, TREAS.

x _____
JANE G. CLARKSON
ASST. SECY.

And, for a valuable consideration, the said Grantors        does hereby remise, release, and forever quitclaim, unto the Grantee all right and title
of dower in the above-described premises.

The conditions of this deed are such that whereas the Grantor has executed and delivered to the Grantee his certain promissory note, of even
date herewith, in the principal sum of Twenty-four Thousand Eight Hundred and no/100
Dollars ($24,800.00)with interest from date at the rate of    Nine        percentum (    9 %) per
annum on the unpaid balance until paid, principal and interest being payable at the office of Citizens Mortgage Corporation
24700 Northwestern Highway        , or at such other place as the holder may designate in writing, in monthly installments of
Southfield, Michigan 48075
One Hundred Ninety-nine and 64/100        Dollars ($ 199.64 ), commencing on
the first day of    November        , 19 75 , and on the first day of each month thereafter until the principal and interest are fully
paid, except that the final payment of principal and interest, if not sooner paid, shall be due and payable on the first day of    October, 2005.

3220

VOL 3553 PAGE 22

AND WHEREAS the Grantor further covenants and agrees that:

1. He will promptly pay the principal of and interest on the indebtedness evidenced by the said note, at the times and in the manner therein provided. Privilege is reserved to pay the debt in whole or in an amount equal to one or more monthly payments on the principal that are next due on the note, on the first day of any month prior to maturity; provided, however, that written notice of an intention to exercise such privilege is given at least thirty (30) days prior to prepayment.

2. In order more fully to protect the security of this deed, he will pay to the Grantee, together with, and in addition to, such payments of principal and interest, the following sums:

(a) A sum equal to provide the holder hereof with funds to pay the next mortgage insurance premium if this instrument and the note secured hereby are insured, or a monthly charge (in lieu of a mortgage insurance premium) if they are held by the Secretary of Housing and Urban Development, as follows:

(I) If and so long as said note of even date and this instrument are insured or are reinsured under the provisions of the National Housing Act, an amount sufficient to accumulate in the hands of the holder one (1) month prior to its due date the annual mortgage insurance premium, in order to provide such holder with funds to pay such premium to the Secretary of Housing and Urban Development pursuant to the National Housing Act, as amended, and applicable Regulations thereunder; or

(II) If and so long as said note of even date and this instrument are held by the Secretary of Housing and Urban Development, a monthly charge (in lieu of a mortgage insurance premium) which shall be in an amount equal to one-twelfth (1/12) of one-half (½) per centum of the average outstanding balance due on the note computed without taking into account delinquencies or prepayments;

(b) A sum equal to the ground rents, if any, next due, plus the premiums that will next become due and payable on policies of fire and other hazard insurance protecting the premises covered hereby, plus taxes and assessments next due on the premises covered by this deed (all as estimated by the Grantee) less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such ground rents, premiums, taxes and assessments will become delinquent, such sums to be held by the Grantee in trust to pay said ground rents, premiums, taxes and special assessments before the same become delinquent; and

(c) All payments mentioned in the two preceding subsections of this paragraph and all payments to be made under the note secured hereby shall be added together, and the aggregate amount thereof shall be paid by the Grantor each month in a single payment to be applied by the Grantee to the following items in the order set forth:

(I) premium charges under the contract of insurance with Secretary of Housing and Urban Development, or monthly charge (in lieu of mortgage insurance premium), as the case may be;

(II) ground rents, taxes, special assessments, fire and other hazard insurance premiums;

(III) interest on the note secured hereby; and

(IV) amortization of the principal of said note.

Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Grantee prior to the due date of the next such payment, constitute an event of default under this deed. The Grantee may collect a "late charge" not to exceed two cents (2¢) for each dollar ($1) of each payment more than fifteen (15) days in arrears to cover the extra expense involved in handling delinquent payments.

3. If the total of the payments made by the Grantor under subsection (b) of paragraph 2 preceding shall exceed the amount of the payments actually made by the Grantee for ground rents, taxes, or assessments or insurance premiums, as the case may be, such excess, at the option of the Grantee, shall be credited by the Grantee on subsequent payments to be made by the Grantor, or refunded to the Grantor. If, however, the monthly payments made by the Grantor under subsection (b) shall not be sufficient to pay ground rents, taxes, and assessments or insurance premiums, as the case may be, when the same shall become due and payable, then the Grantor shall pay to the Grantee any amount necessary to make up the deficiency, on or before the date when payment of such ground rents, taxes, assessments or insurance premiums shall be due. If at any time the Grantor shall tender to the Grantee, in accordance with the provisions of the note secured hereby, full payment of the entire indebtedness represented thereby, the Grantee shall, in computing the amount of such indebtedness, credit to the account of the Grantor all payments made under the provisions of subsection (a) of paragraph 2 hereof, which the Grantee has not become obligated to pay to the Secretary of Housing and Urban Development, and any balance remaining in the funds accumulated under the provisions of subsection (b) of paragraph 2. If there shall be a default under any of the provisions of this deed resulting in a public sale of the premises covered hereby or if the Grantee acquires the property otherwise after default, the Grantee shall apply, at the time of the commencement of such proceedings, or at the time the property is otherwise acquired, the balance then remaining in the funds accumulated under subsection (b) of paragraph 2 as a credit against the amount of principal then remaining unpaid under said note, and shall properly adjust any payments which shall have been made under subsection (a) of paragraph 2.

4. He will pay all ground rents, taxes, assessments, water rates, and other governmental or municipal charges, fines, or impositions, levied upon said premises, or upon the interest of the Grantee in said or said premises, for which provision has not been made hereinbefore, and (in default thereof) the Grantee may pay the same; and he will promptly deliver the official receipts therefor to the Grantee.

5. The Grantee, its successors or assigns, shall have the right to pay any ground rents, taxes, assessments, water rents, and other governmental or municipal charges, fines or impositions, which the Grantee has agreed to pay under paragraph 4, above, and to make any payments hereinbefore provided to be made by the Grantee in subsections (a) and (b) of paragraph 2 hereof, and any amount so paid by the Grantee shall then be added to the principal debt named herein and bear interest at the rate set forth in the note secured hereby, payable monthly, from the date of such payments, and be secured by this deed.

6. He will keep the improvements now existing or hereafter erected on the premises insured by this deed, insured as may be required from time to time by the Grantee against loss by fire and other hazards, casualties and contingencies including war damage insurance, in such amounts and for such periods as may be required by the Grantee and will pay promptly, when due, any premiums on such insurance provision for payment of which has not been made hereinbefore. All insurance shall be carried in companies approved by the Grantee and the policies and renewals thereof shall be held by the Grantee and have attached thereto loss payable clauses in favor of and in form acceptable to the Grantee. In event of loss Grantor will give immediate notice by mail to the Grantee, who may make proof of loss if not made promptly by Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Grantee instead of to the Grantor and the Grantee jointly, and the insurance proceeds, or any part thereof, may be applied by the Grantee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In event of foreclosure of this mortgage deed, or other transfer of title to the property secured hereby in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or Grantee.

7. He will keep the mortgaged premises in as good order and condition as they are now, and will not commit or permit waste, reasonable wear and tear excepted.

8. That if the premises, or any part thereof, be condemned under any power of eminent domain, or acquired for a public use, the damages, proceeds, and the consideration for such acquisition, to the extent of the full amount of indebtedness upon this Mortgage, and the Note secured thereby remaining unpaid, are hereby assigned by the Grantor to the Grantee and shall be paid forthwith to the Grantee to be applied by it on account of the indebtedness secured hereby, whether due or not.

9. The Grantor further agrees that should this deed and the note secured hereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof (written statement of any officer of the Department of Housing and Urban Development or authorized agent of the Secretary of Housing and Urban Development dated subsequent to the aforesaid time from the date of this deed, declining to insure said note and this deed, being deemed conclusive proof of such ineligibility) the Grantee or the holder of the note may, at its option, declare all sums secured hereby immediately due and payable.



VOL 3553 PAGE 23

10. Upon a default in any of the terms of the note secured hereby, or upon a breach of any condition or covenant of this deed, the rents of the real estate herein described shall immediately accrue to the benefit of the Grantee, and such rents shall be immediately payable to the Grantee.

11. Upon any default in the note secured hereby, or under this deed, foreclosure proceedings may be instituted, at the option of the Grantee. In any such action, the Grantee shall be entitled, without notice and without regard to the adequacy of the security of the debt, to the appointment of a receiver of the rents and profits of the mortgaged premises and in case of any other suit, or legal proceeding, wherein the Grantee shall be made a party thereto by reason of this mortgage, its costs and expenses, and the reasonable fees and charges of the attorneys or solicitors of the Grantee, to make parties, for services in such suit or proceedings, shall be a further lien and charge upon the said premises under this mortgage, and all such expenses shall become so much additional indebtedness secured hereby and be allowed in any decree foreclosing this mortgage.

12. The Grantee is authorized and empowered to do all things provided to be done by a mortgagee under Section 1311-14 of the Revised Code, and under the Act of the Legislature passed May 22, 1915, 106 Ohio Laws, Page 625-31, and any amendment or supplement thereto.

Now, therefore, if the Grantor shall well and truly perform all the conditions of this deed, and of the note secured hereby, then this deed shall be void; otherwise, it shall remain in full force and virtue.

The covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto. Wherever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

IN WITNESS WHEREOF, the Grantor (s) ha ve hereunto set   their   hand s  this  30th.
day of   September   A.D. 19 75.
                                                      Thomas D. Moore  by
                                              x Thomas D. Moore  Atty. In fact
Signed, acknowledged and delivered in the presence of   By Yvonne P. Moore, his Attorney-in-Fact

                                              Thomas D. Moore

STATE OF OHIO         )
                      ) ss:
COUNTY OF  Franklin   )

Before me, the undersigned, a   Notary Public   in and for said State and County, personally appeared the above-named  Ronald L. Moore, and Yvonne P. Moore  who is the above mortgage deed, and severally acknowledged the signing thereof, and that such signing was a free and voluntary act, for the uses and purposes therein mentioned.

IN TESTIMONY WHEREOF, I have hereunto signed my name, and affixed my official seal this   30th   day
of  September   A.D. 19 75.

                                              FRANK D. FARKAS
                                    NOTARY PUBLIC, FRANKLIN COUNTY, OHIO
                                    MY COMMISSION EXPIRES AUG. 27, 1978

The condition of this mortgage have been complied with, and the sums is fully paid, satisfied, and discharged.

The form of this instrument was prepared by the Office of the General Counsel, Department of Housing and Urban Development, and the material in the blank space in the form was inserted by or under the direction of  Central Savings and Loan Company.