Hearing Date:  August 21, 2013, at 10 a.m. (E.T.)
Objection Deadline:  August 8, 2013 at 4:00 p.m. (E.T.)

**Zuckerman Spaeder LLP**
Laura E. Neish
1185 Avenue of the Americas, 31st Floor
New York, NY 10036-2603
(212) 704-9600

**Zuckerman Spaeder LLP**
Nelson C. Cohen (*pro hac vice*)
Graeme Bush (*pro hac vice*)
1800 M Street, NW
Washington, DC 20036
(202) 778-1800

*Attorneys for National Credit Union Administration Board*
*as Liquidating Agent for Western Corp. Federal Credit Union*
*and U.S. Central Federal Credit Union*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION OF NATIONAL CREDIT UNION ADMINISTRATION BOARD TO**
**DISCLOSURE STATEMENT**

## Table of Contents

PRELIMINARY STATEMENT .................................................................................. 1

BACKGROUND .................................................................................................... 5

ARGUMENT ......................................................................................................... 8

   I.   LEGAL STANDARD ........................................................................................ 8

  II.   THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE
         INFORMATION ABOUT ISSUES IMPORTANT TO NCUAB'S
         EVALUATION OF THE PROPOSED PLAN ................................................. 9

      A.   First Objection – The Disclosure Statement Does Not Disclose the Expected
            Recoveries on the Private Securities Claims. .............................................. 9

      B.   Second Objection – The Disclosure Statement Does Not Adequately Explain
            the Treatment of the NCUAB Claims. ...................................................... 10

          1.    Treatment of the NCUAB Claims Compared to the Private Securities
                Claims ............................................................................................... 10

          2.    Treatment of the NCUAB Claims as General Unsecured Claims ........................ 12

      C.   Third Objection – The Description of the Private Securities Claims Resolved
            through the PSC Trust is Inadequate. ....................................................... 13

      D.   Fourth Objection – Inadequate Explanation for the Discrepancy between
            the Amount for the PSC Trust in the Disclosure Statement and in the
            Term Sheet. ............................................................................................. 14

      E.   Fifth Objection – Failure to Explain the Basis for the Allowed Claims of
            the Settling Private Securities Claimants. ................................................. 14

      F.   Sixth Objection – Ambiguity Regarding the Private Securities Claimants'
            Eligibility for Recovery from the New Jersey Carpenters Settlement. ................... 15

      G.   Seventh Objection – The Disclosure Statement Does Not Adequately Describe
            the Judgment Reduction Provision. .......................................................... 15

## Table of Authorities

**Cases**                                                                                          **Page No(s).**

*In re Armstrong World Indus., Inc.*, 348 B.R. 111 (D. Del. 2006) .......................................... 11-12

*In re Babayoff*, 445 B.R. 64 (Bankr. E.D.N.Y. 2011) ..................................................................... 1

*In re Deming Hospitality, LLC*, No. 11-12-13377 TA, 2013 WL 1397458
    (Bankr. D.N.M. Apr. 5, 2013) ................................................................................................. 12

*In re GSC, Inc.*, 453 B.R. 132 (Bankr. S.D. N. Y. 2011)............................................................. 12

*In re Radco Properties, Inc.*, 402 B.R. 666 (Bankr. E.D.N.C. 2009) ......................................... 8-9

*In re Stanley Hotel, Inc.*, 13 B.R. 926 (Bankr. D. Colo. 1981)...................................................... 8

*In re U.S. Brass Corp.*, 194 B.R. 42 (Bankr. E.D. Tex. 1996) ...................................................... 8

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
    25 F.3d 1132 (2d Cir. 1994) ..................................................................................................... 8

*Nelson v. Dalkon Shield Claimants Trust (In re A.H. Robins Co., Inc.)*, 216 B.R. 175
    (E.D. Va. 1997).......................................................................................................................... 8

*Ryan Operations* (*G.P. v. Santiam-Midwest Lumber Co.*), 81 F.3d 355 (3d Cir. 1996) ............... 8

**Statutes**

11 U.S.C. § 1125.............................................................................................................................. 1, 8

11 U.S.C. § 1129................................................................................................................................ 11

The disclosure statement (the "Disclosure Statement") filed by the Plan Proponents on July 4, 2013 [D.E. 4157] fails to provide adequate information to allow the National Credit Union Administration Board ("NCUAB"), as Liquidating Agent for Western Corp. Federal Credit Union and U.S. Central Federal Credit Union (the "Credit Unions"), to make an informed judgment about the treatment of its claims (the "NCUAB Claims" or "Claims") under the proposed plan of reorganization.  NCUAB therefore objects to the Disclosure Statement.

## PRELIMINARY STATEMENT

Adequate disclosure is a "fundamental component" of the bankruptcy process.  *In re Babayoff*, 445 B.R. 64, 78 (Bankr. E.D.N.Y. 2011) (internal quotations omitted).  That is particularly true in a Chapter 11 case as complex as this one.  11 U.S.C. § 1125(a).  On a range of issues, the Disclosure Statement falls short of the standards required by Section 1125 of the Bankruptcy Code (11 U.S.C. § 1125) to enable NCUAB to understand the treatment of its Claims under the Joint Chapter 11 Plan proposed by Debtors and the Official Committee of Unsecured Creditors (the "Proposed Plan" or "Plan").  Likewise, the Disclosure Statement fails to provide a full explanation of the terms in the Proposed Plan that would grant broad, nonconsensual third party releases to nondebtor Ally Financial, Inc., and its affiliates (collectively, "Ally"), parties against which NCUAB has unexpired securities claims, and contains a draconian judgment reduction term with respect to claims against other nondebtors and non-affiliates.  A full explanation about the Proposed Plan is critically important to NCUAB and other creditors who had no role in shaping an agreement that, if confirmed, would compromise their claims and extinguish their rights.  Under these circumstances, the Code requires a greater level of disclosure than Debtors have provided.

The Proposed Plan includes a "Global Settlement" that was reached through a highly confidential negotiation and mediation in which only a small number of creditors participated. NCUAB did not participate in the negotiations that produced the proposed settlement.  The Global Settlement proposes to treat "Private Securities Claims," which are claims that a group of specifically identified unsecured creditors hold against Debtors and Ally, differently from NCUAB's securities-related Claims against those same parties.  NCUAB cannot adequately compare the Proposed Plan's treatment of the NCUAB Claims to the Private Securities Claims because Debtors have not disclosed the expected recovery for holders of Private Securities Claims.  Additionally, Debtors have agreed that Private Securities Claims will receive recovery from a $235 million Private Securities Claims Trust (the "PSC Trust") and will not be subordinated, but (i) have objected to the NCUAB Claims, (ii) intend to treat them, if allowed, as General Unsecured Claims, and (iii) may argue that the NCUAB Claims should be subordinated and receive nothing.  The Proposed Plan thus harms NCUAB directly, and appears to discriminate unfairly against NCUAB.  NCUAB has a direct interest in understanding how and why its claims are not eligible for recovery from the PSC Trust, and to what extent its recoveries will differ from those of Private Securities Claimants if the NCUAB Claims are treated as General Unsecured Claims.  The Disclosure Statement does not adequately explain such dramatically differential treatment, or provide sufficient information about NCUAB's anticipated recovery.

The Disclosure Statement does not provide adequate information or explanation to NCUAB about, *inter alia*:

- why the plan treats NCUAB's eleven claims against Debtors (the "Claims"), which are based on securities claims that have survived motions to dismiss in

cases pending in California and Kansas, differently from the securities claims
against Debtors that are classified as Private Securities Claims.  Under the plan,
assets of Debtors will be used to settle some claims against nondebtor Ally parties
in a way that causes some securities-based claims against Debtors to receive
higher recoveries than other similar securities-based claims.

- the allocation of assets to the Private Securities Claims Trust (the "PSC Trust").
  For example, the Disclosure Statement states that the proposed settlement of
  Private Securities Claims "resolves tens of billions of dollars of private securities
  claims against the debtors and non-debtor affiliates" arising out of the origination
  of mortgages and sale of residential mortgage-backed securities ("RMBS").
  Given that the value of the allowed claims of the four Settling Private Securities
  Claimants for voting purposes totals about $1.7 billion, disclosure of the basis for
  the "tens of billions of dollars" is important for NCUAB to understand the value
  of the $235 million allocated to the PSC Trust.

- the basis for the $9.3 million increase in allocation to the PSC Trust, up to $235
  million from the $225.7 million disclosed in the PSA Motion.

- the basis on which Debtors allowed the claims of the Settling Private Securities
  Claimants and on which they will allow the claims of the remaining Private
  Securities Claimants.

- the proposed "tiers" to which the PSC Trustee will assign the Private Securities
  Claims.  There is no disclosure about the number of tiers or the criteria that will
  be applied to make the tier assignments.  Nor is there information about the
  expected recoveries of each tier, or even the range of recoveries expected across

3

the tiers. This prevents NCUAB from assessing the treatment of its claims under the proposed plan because NCUAB cannot compare its potential recovery to that which it would receive were it a Private Securities Claimant.

- whether Private Securities Claimants who are members of the class in the *New Jersey Carpenters* class action, which the plan proposes to settle for $100 million, will be eligible to recover a share of the settlement payment in that case.

The Disclosure Statement's disclosures about the treatment of General Unsecured Creditors is similarly inadequate. The Disclosure Statement estimates $27.5 million in General Unsecured Claims for the RFC Debtors, the group that includes Debtors against which NCUAB has asserted its Claims. The Disclosure Statement does not provide any detailed information about this creditor class; does not explain why recovery will be 36% for General Unsecured Claims against ResCap Debtors, 30% against GMACM Debtors, but under 9% against RFC Debtors; and does not explain how Debtors propose to address NCUAB's $293 million in Claims should they ultimately be allowed as General Unsecured Claims. The Disclosure Statement simply assumes that Debtors will prevail on their objections to the Claims. Given that Debtors' claims objections – which are based on the same arguments that two courts have rejected in denying motions to dismiss relating to the RMBS at issue here – are likely to fail, the Disclosure Statement is deficient because it fails to include adequate discussion of how the NCUAB Claims will be treated if allowed.

Finally, the Disclosure Statement's discussion of the judgment reduction provision is also insufficient. It simply reprints verbatim the provision from the Proposed Plan, and thus does not explain the intended scope or operation of the judgment reduction provision. By its terms, the judgment reduction provision could grant a material reduction against parties, including

4

NCUAB, that receive no consideration for such a provision.  The omission of adequate

information to understand the judgment reduction provision affects NCUAB directly.

## BACKGROUND

**The NCUAB Claims**

1.      The NCUAB Claims arise out of the role of two Debtors, Residential Accredit

Loans, Inc. ("RALI") and Residential Funding Mortgage Securities II, Inc. ("RFMS II"), as

depositor/issuer for certain RMBS.  RMBS are investments derived from pools of mortgage

loans that are packaged for securitization through bankruptcy-remote trusts.  The Credit Unions

purchased certificates in particular tranches in certain RMBS for a total amount of about $643

million.  Declaration of Laura E. Neish ¶ 3.  (attached as Exhibit A).  In 2009, NCUAB put the

Credit Unions into conservatorship, and in 2010, designated itself as Liquidating Agent for the

Credit Unions.  *Id. ¶* 4.  In 2011, NCUAB filed complaints against RALI and RFMS II (among

others) in federal district courts in California and Kansas (the "California action" and "Kansas

action," respectively), asserting that the offering documents for the certificates contained

material misrepresentations and omissions in violation of Section 11 of the Securities Act of

1933.  *Id.* ¶ 5.

2.      After Debtors, including RALI and RFMS II, filed their Chapter 11 petition in

May 2012, NCUAB filed its eleven (11) Claims against RALI [Claim Nos. 2626, 2627, 2628,

2629, 2630, 2631, 2632, 2633, 2634, and 2636] and RFMS II [Claim No. 2635].  Those Claims

are based on the securities claims asserted in the California and Kansas actions relating to the

eleven certificates.  The value of the NCUAB Claims totals approximately $293 Million.

3.      NCUAB also has claims against nondebtors Ally and Ally Securities LLC ("Ally

Securities") that are not time-barred and that it is prepared to assert.  Those claims arise out of

violations of Sections 11 and 15 of the Securities Act of 1933.  Neish Decl. ¶ 6.  The value of

NCUAB's Section 15 claims against Ally Financial is over $390 million, and the value of the

Section 11 claims against Ally Securities is about $200 million.  *Id.* ¶ 7.

**The Plan Support Agreement**

4.      On May 23, 2013, Debtors filed the motion seeking approval of its entry into a

Plan Support Agreement (the "PSA Motion") with Ally, the Creditors' Committee and certain

Consenting Claimants [D.E. 3814].[1]  Debtors attached to the PSA Motion a Supplemental Term

Sheet (the "Term Sheet") that set forth the proposed treatment of the holders of Private Securities

Claims.  Annex 1 to the Term Sheet stated that a trust for the payment of the Private Securities

Claims would be established and funded with $225.7 million.  Annex 1 to Term Sheet.  For the

four Settling Private Securities Claimants, the Term Sheet listed the allowed amount of their

claims, both for voting and distribution purposes.  Neither the PSA Motion nor the Term Sheet

explained the basis for any of the amounts, or explained why the ratio of allowed amounts for

distribution purposes to allowed amounts for voting purposes varied significantly among the

Settling Private Securities Claimants.

5.      On June 19, NCUAB filed an objection and reservation of rights to the PSA

Motion [D.E. 4020].  NCUAB explained why its exclusion from the closed class of Private

Security Claimants is improper.  NCUAB showed that there is not a principled distinction

between NCUAB – which has filed securities claims against Debtors that have survived motions

to dismiss and which has unexpired claims against Ally Financial and Ally Securities that it is

prepared to file in federal district court in Kansas – and parties defined as Private Securities

Claimants who also may have securities claims against Debtors and unexpired, unfiled claims

---

[1]      The AIG Movants are among the Consenting Claimants.  These claimants are also identified as "Settling Private Securities Claimants" and are listed holders of Private Securities Claims in the Supplemental Term Sheet.

against nondebtor Ally parties.[2]  NCUAB further demonstrated that any proposed plan should treat NCUAB's Claims, and its unexpired claims against Ally, as or similarly to Private Securities Claims.

6.      In its June 27 order granting the PSA Motion [D.E. 4102], the Court overruled NCUAB's objection for purposes of the PSA Motion only, stating that the objections "should be raised either in connection with a motion seeking approval of a disclosure statement (to the extent creditors assert that the disclosure statement lacks adequate information) or, more likely, at the time of confirmation."  PSA Order at 45-46.

**Debtors' Objection to NCUAB's Claims**

7.      On June 20, 2013, Debtors filed an objection to the NCUAB Claims [D.E. 4050].[3] NCUAB filed its response to the claims objection on July 19 [D.E. 4299].  Debtors submitted their reply on July 24 [D.E. 4331].

**The Disclosure Statement**

8.      On July 3, 2013, the Plan Proponents filed the Disclosure Statement Motion [D.E. 4152].  On July 4, the Plan Proponents filed the Disclosure Statement [D.E. 4157].  The Disclosure Statement summarizes NCUAB's litigation against RALI and RFMS II.  Discl. St. at 81-82.  The Disclosure Statement does not, but should, state explicitly that the courts in both the Kansas and California actions have denied motions to dismiss claims as to the 11 Certificates that underlie the NCUAB Claims.  In the decisions denying the motions to dismiss, the courts in the California and Kansas actions have rejected the identical arguments asserted by Debtors in objecting to the NCUAB Claims.

---

[2] Under the PSA, the statute of limitations for any cause of action against Ally, whether such cause of action is pending or tolled, is tolled until 60 days after expiration of the PSA.  PSA at 11.
[3] The Disclosure Statement erroneously states that Debtors' objection to the NCUAB Claims was filed on June 6, 2013.  Discl. St. at 83.

9.      The Disclosure Statement also confirms that NCUAB informed Debtors about its

unexpired claims against Ally and Ally Securities.  *Id.* at 83.

## ARGUMENT

## I.    LEGAL STANDARD

10.     Full and fair disclosure is "[o]f prime importance" to the reorganization process.

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d

1132, 1136 (2d Cir. 1994).  Section 1125 of the Bankruptcy Code requires a plan proponent to

provide a disclosure statement that contains "adequate information."  11 U.S.C. § 1125(b).  The

Code defines "adequate information" as

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records . . . that
> would enable such a hypothetical investor of the relevant class to
> make an informed judgment about the plan . . . [I]n determining
> whether a disclosure statement provides adequate information, the
> court shall consider the complexity of the case, the benefit of
> additional information to creditors and other parties in interest, and
> the cost of providing additional information. . . .

11 U.S.C. § 1125(a)(1).

11.     A disclosure statement must provide enough information to permit interested

persons to make an informed choice between alternatives.  *See, e.g.*, *In re U.S. Brass Corp.*, 194

B.R. 420, 423 (Bankr. E.D. Tex. 1996)  (quoting *In re Stanley Hotel, Inc.*, 13 B.R. 926, 930

(Bankr. D. Colo. 1981)).

> Creditors not only rely on the disclosure statement to form their
> ideas about what sort of distribution or other assets they will
> receive but also what risks they will face."  *Nelson* [*v. Dalkon
> Shield Claimants Trust (In re A.H. Robins Co.)*], 216 B.R. 175,
> 180 [(E.D. Va. 1997)].  As such, the importance of full and honest
> disclosure is critical and can not be overstated.  *Ryan Operations*
> [*G.P. v. Santiam-Midwest Lumber Co.*], 81 F.3d 355, 362 [(3d Cir.
> 1996)].

*In re Radco Properties, Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009).

II.    **THE DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION ABOUT ISSUES IMPORTANT TO NCUAB'S EVALUATION OF THE PROPOSED PLAN**

12.    NCUAB's exclusion from the Private Securities Claimant class, Debtors' objection to NCUAB's securities claims in any amount, and their threat to seek to subordinate the Claims are improper and discriminatory.  To properly evaluate how Debtors propose to treat its Claims and how it should vote on the Proposed Plan, NCUAB must be able to understand how its Claims would be treated were NCUAB a Private Securities Claimant, and how it would be treated as a general unsecured creditor.  As a result, information about the PSC Trust and treatment of the Private Securities Claims in the Disclosure Statement must permit NCUAB to compare its proposed treatment with the hypothetical treatment of the NCUAB Claims as Private Securities Claims.

13.    NCUAB below describes some of the deficiencies in the Disclosure Statement that, in contravention of Section 1125(a)(1) of the Bankruptcy Code, impair NCUAB's ability to make an informed decision on how to vote on the Proposed Plan.

A.    **First Objection – The Disclosure Statement Does Not Disclose the Expected Recoveries on the Private Securities Claims.**

14.    The Disclosure Statement sets out in several places the presumptive recoveries for different classes of creditors.  *See, e.g.*, Discl. St. at 9-12 & Exhibit 4.  However, it does not specify what the recoveries will be for the Private Securities Claims.  NCUAB is entitled to know how the recovery for allowed, non-subordinated claims based on securities claims against Debtors that are resolved through the PSC Trust compares to the recovery for its Claims – which are also securities claims against Debtors, but which the Plan proposes to treat as a General Unsecured Claim that Debtors may seek to subordinate.

9

12-12020-mg    Doc 4509    Filed 08/05/13    Entered 08/05/13 18:20:32    Main Document
Pg 13 of 20

15.     The Term Sheet explained that the trustee of the PSC Trust will assign Private

Securities Claims to different "tiers" based on their "nature and status" in order to estimate

contingent and unliquidated Private Securities Claims, and that the different tiers will receive

different recoveries.  Term Sheet at 8-9.  However, the Disclosure Statement does not provide

information about what claims in each tier will recover, the range of recoveries across the tiers,

and/or what the difference in recoveries will be from one tier to the next.  Nor does the

Disclosure Statement adequately describe how the tier structure will work.  For example, it does

not disclose how many tiers there will be.  The Disclosure Statement provides that "[t]he Settling

Private Securities Claimants are also engaged in discussions with other Private Securities

Claimants regarding the possibility of establishing *additional* Tiers for allocating distributions on

account of other categories of claims.  These additional Tiers, if any, will be set forth in the

Private Securities Claims Trust Agreement."  Discl. St. at 31 (emphasis added).  Given that the

Plan Proponents have not told creditors how many tiers there will be to start with, the Disclosure

Statement's reference to  potential *additional* tiers only underscores the inadequacy of the

disclosure on this issue.[4]

> **B.      Second Objection – The Disclosure Statement Does Not Adequately Explain
> the Treatment of the NCUAB Claims.**

>> **1.      Treatment of the NCUAB Claims Compared to the Private Securities
>> Claims**

16.     The Disclosure Statement acknowledges that NCUAB (i) has asserted securities

claims relating to certificates for which Debtors were the depositors/issuers, and those claims

have survived motions to dismiss in both the Kansas and California actions; and (ii) has alerted

---

[4] While the Disclosure Statement (at p.103) states that the classification of each PSC into a tier will be "based on objective characteristics that establish its strength, viability, and litigation status," and that more information about the tiers will be provided in the Plan supplement, it does not identify those "objective characteristics."  Thus, the disclosure in current form is deficient.

Debtors and others that it has claims against Ally that are not time-barred. Discl. St. at 81-83.

Yet Debtors propose to treat the NCUAB Claims as General Unsecured Claims of the RFC

Debtors, which claims, if allowed, are slated to recover under 9% of the allowed amount.

Debtors further suggest that they may seek to subordinate the NCUAB Claims under section

510(b); if subordinated, NCUAB would receive no recovery at all on its Claims. Debtors' Reply

in Supp. of Cl. Obj. at 1 n.1.

       17.     By contrast, the Private Securities Claimants' claims against Debtors will be

allowed and eligible for an (as-yet) undisclosed recovery from the PSC Trust, and Debtors have

agreed not to seek subordination of those claims. Discl. St. at 31. The Disclosure Statement

does not adequately explain why certain unsecured creditors should receive greater recoveries for

their unliquidated securities claims against Debtors than NCUAB will get for its unliquidated

securities claims against Debtors, simply because the other creditors also have filed securities

claims against nondebtors like Ally or have tolling agreements as to such claims.[5] It does not

explain why assets of Debtors will be used to settle claims against nondebtor Ally parties in a

way that causes some securities-based claims against Debtors to receive higher recoveries than

other similar securities-based claims against Debtors. And it does not explain why Debtors may

seek to subordinate the NCUAB Claims even if they are allowed, when they have agreed not to

subordinate other claims that, like the NCUAB Claims, rest on unliquidated securities claims

against Debtors. Additional disclosure is necessary to allow NCUAB to evaluate whether and

how the Proposed Plan discriminates unfairly against the NCUAB Claims. *See* 11 U.S.C. §

1129(b); *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006) (stating that a

---

[5] For example, the Disclosure Statement does not explain why certain unfiled claims against Ally – those that are the subject of a tolling agreement with Ally – differ legally from other unfiled claims against Ally that are timely because of statutory or equitable tolling doctrines. The Disclosure Statement states only the factual proposition that "No Private Securities Claims rely on statutory or equitable tolling." Discl. St. at 31.

rebuttable presumption of unfair discrimination arises, *inter alia*, when a plan provides

materially lower percentage recovery compared to another class of the same priority).

18.    If the Proposed Plan is facially unconfirmable, the Court should not approve the

Disclosure Statement.  *See, e.g.*, *In re Deming Hospitality, LLC*, No. 11-12-13377 TA, 2013 WL

1397458 (Bankr. D.N.M. Apr. 5, 2013) (declining to approve disclosure statement where

proposed plan discriminated unfairly in treatment of claims); *In re GSC, Inc.*, 453 B.R. 132, 157

n.27 (Bankr. S.D.N. Y. 2011).

## 2.    Treatment of the NCUAB Claims as General Unsecured Claims

19.    Aside from the apparently disparate treatment of the NCUAB Claims compared to

other claims that are similarly based on underlying alleged violations of the securities laws, the

Disclosure Statement does not provide sufficient information about how the NCUAB Claims

would be treated under the General Unsecured Claim classification.

20.    While Debtors have agreed to allow the Private Securities Claims, they have (i)

filed an objection to the NCUAB Claims, seeking to have them expunged or allowed at a value

of zero, (ii) indicated that if the objection fails, NCUAB Claims will be treated as General

Unsecured Claims, and (iii) expressly reserved their rights to  seek to subordinate the NCUAB

Claims under Section 510(b) of the Bankruptcy Code.  There is no explanation or rationale

provided in the Disclosure Statement to justify this treatment of the NCUAB Claims.  In

addition, the Disclosure Statement does not provide information about how many General

Unsecured Claims exist against the RFC Debtors.

21.    Finally, the Disclosure Statement indicates that General Unsecured Claims against

the RFC Debtors will receive less than 9% recovery and projects that the sum available to that

class of claimants will total $27.5 million.  Discl. St. Ex. 4.  The Disclosure Statement appears to

assume that the NCUAB Claims will be expunged or allowed for no value.  As the courts in the

California and Kansas actions have rejected the exact same arguments that Debtors raised in their

objection to the NCUAB Claims,[6] it is reasonably foreseeable that Debtors' attempt to expunge

the NCUAB Claims will fail.  Thus, the Disclosure Statement should provide NCUAB with

some information about the impact on the Plan and anticipated recoveries should its Claims

ultimately be allowed as General Unsecured Claims.

        **C.**        **Third Objection – The Description of the Private Securities Claims Resolved through the PSC Trust is Inadequate.**

        22.      The Disclosure Statement provides that the Global Settlement includes a

settlement of "tens of billions of dollars of Private Securities Claims against the Debtors,

including claims involving Ally, arising from their structuring, sponsoring, underwriting, and

sale of RMBS."  Discl. St. at 3[7]; *see also id.* at 31 ("The creation of the Private Securities Claims

Trust resolves tens of billions of dollars in securities law claims against the Debtors and non-

Debtor affiliates arising from the Debtors' loan origination activities and the structuring,

sponsoring, underwriting, and sale of RMBS."), 84.  The Disclosure Statement does not identify

the basis for the claim that the defined list of Private Securities Claimants – some of whom have

not actually filed claims against Ally – had "tens of billions of dollars" in claims against Debtors

and Ally.

        23.      The four Settling Private Securities Claimants have Allowed Claims for voting

purposes that collectively total about $1.7 billion.  The allowed amount for distribution purposes

---

[6] Debtors offered no additional factual evidence or legal arguments to distinguish their objection to the NCUAB Claims from the motions to dismiss rejected in the California and Kansas actions.

[7] The Disclosure Statement states that the PSC Trust resolves securities claims against "the *Debtors*, *including* claims against Ally."  *Id.* at 3 (emphasis added).  This language implies that Ally is a Debtor, which it is not.  This language perpetuates the ambiguity caused by the definition of PSC in the Term Sheet because it does not make clear that the Plan Proponents have made only certain securities claims against Debtors eligible to be PSCs:  those securities claims against Debtors filed by parties that also have asserted claims against nondebtor Ally entities or that have tolling agreements with Ally parties.

is far less – collectively just over $1 billion.  Information about the basis for the "tens of billions

of dollars" figure  is relevant to NCUAB's understanding of whether the allowed amounts are

substantially discounted from the gross claims asserted by the Private Securities Claimants, so

that it can assess how its claims might be valued were it included in the Private Securities

Claimant class.

    **D.**    **Fourth Objection – Inadequate Explanation for the Discrepancy between the Amount for the PSC Trust in the Disclosure Statement and in the Term Sheet.**

24.    The Term Sheet stated that $225.7 million would be allocated to the PSC Trust

for distribution, with some potential adjustments.  The Disclosure Statement increases the

amount allotted to the PSC Trust to $235 million (also subject to adjustment).  However, the

Disclosure Statement does not explain why the number has increased by almost $10 million

since May 23.  The Disclosure Statement should explain and account for the difference.

    **E.**    **Fifth Objection – Failure to Explain the Basis for the Allowed Claims of the Settling Private Securities Claimants.**

25.    As noted, one key factor for NCUAB in evaluating the proposed Plan is whether

NCUAB's anticipated treatment is substantially similar to the treatment of the Private Securities

Claimants.  To make and understand that comparison, NCUAB must be able to estimate the level

at which its claims would be allowed were they considered Private Securities Claims.  That is not

possible from the Disclosure Statement.  The Plan Proponents have disclosed the allowed

amounts – for voting and distribution purposes – only for the Settling Private Securities

Claimants.  However, for those four creditors, the amounts allowed for distribution range from

17% of the amount allowed for voting purposes (for Mass Mutual) to 83% (for Allstate).  The

Disclosure Statement does not provide the criteria or formula used to fix the allowed amounts for

the Settling Private Securities Claimants.  A description of the relevant factors would enable

14

NCUAB to better predict the level at which its claims would be allowed were it a Private

Securities Claimant.

> **F.  Sixth Objection – Ambiguity Regarding the Private Securities Claimants' Eligibility for Recovery from the *New Jersey Carpenters* Settlement.**

26.     The Disclosure Statement provides that "Private Securities Claimants shall forego

any other recovery from the Debtors or the Liquidating Trust in respect of their Private Securities

Claims." Discl. St. at 31.  The Disclosure Statement also states that creditors who opt of the *New

Jersey Carpenters* class "will be ineligible to share in the settlement distribution," and any

Allowed Claims of such creditors will be treated as General Unsecured Claims that may be

subject to subordination.  *Id.* at 32.  However, the Disclosure Statement does not make clear

either that (i) Private Securities Claimants who opt out will have their claims treated via the PSC

Trust process, not as General Unsecured Claims, or (ii) that Private Securities Claimants who do

not opt-out cannot obtain recoveries both from the PSC Trust and the *New Jersey Carpenters*

settlement.  The Disclosure Statement does not, therefore, contain adequate information to

determine the treatment of the Private Securities Claimants claims in the *New Jersey Carpenters*

case.

> **G.  Seventh Objection – The Disclosure Statement Does Not Adequately Describe the Judgment Reduction Provision.**

27.     The judgment reduction provision at Article IX.J. of the Proposed Plan states:

> A defendant against which a judgment is obtained on a securities-related claim that is subject to the Third Party Releases shall be entitled to a judgment credit, for each such claim, state or federal, for which contribution or indemnity from an Ally Released Party would be available if not for the Third Party Releases, in an amount that is the greater of (a) the amount of the applicable Ally Released Party's indemnification or contribution obligations under the relevant contract(s) as determined by a court of competent jurisdiction or (b) the proportionate share of the applicable Ally Released Party's fault as to such claim; provided that (i) no Ally

Released Party shall be deemed to have admitted to such fault by virtue of this provision; (ii) nothing herein shall create a right for a defendant to obtain discovery from any Ally Released Party, or an obligation for any Ally Released Party to participate in any proceeding to determine fault, in connection with such claim; and (iii) no finding in any proceeding to determine fault shall create any claim against any Ally Released Party or obligation of any Ally Released Party to satisfy any claim.

28.     The Disclosure Statement does not explain the judgment reduction provision, but simply reprints it.  Discl. St. at 126.  But for creditors like NCUAB that claim to have unexpired securities claims against parties treated as Ally Released Parties under the Plan, the judgment reduction provision, particularly coupled with the nonconsensual third party release in the Proposed Plan, could have a draconian impact.  As drafted, the judgment reduction provision could be interpreted to create potentially skewed outcomes where a creditor who receives nothing or a very small recovery in the bankruptcy, could see its recovery against non-Ally parties in civil litigation substantially reduced by judgments that assign a large percentage of fault to an Ally Released Party.  While some provision that includes as a component a "dollar-for-dollar" reduction might be appropriate, the Disclosure Statement does not adequately explain how the provision as drafted would operate so as not to unfairly disadvantage plaintiffs in RMBS-related litigation against parties that are unrelated to Debtors and Ally Released Parties.

**WHEREFORE,** NCUAB respectfully requests that the Court enter an order denying approval of the Disclosure Statement and granting such other relief as may be just and proper.

Dated:  August 5, 2013
New York, NY                                    ZUCKERMAN SPAEDER LLP


                                                */s/ Laura E. Neish*
                                                Laura E. Neish
                                                1185 Avenue of the Americas, 31st Floor
                                                New York, NY 10036-2603

(212) 704-9600
Nelson C. Cohen (admitted *pro hac vice*)
Graeme Bush (admitted *pro hac vice*)
1800 M Street, NW
Washington, DC 20036
(202) 778-1800

*Counsel for the National Credit Union
Administration Board as Liquidating Agent for
Western Corp. Federal Credit Union and U.S.
Central Federal Credit Union*