Hearing Date:   September 11, 2013, at 10:00 a.m. (ET)
Objection Deadline:   August 21, 2013, at 4:00 p.m. (ET)

Bradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama  35203
Phone:  (205) 521-8000
Fax:  (205) 521-8800
Robert W. Maddox, Esq.
Jay R. Bender, Esq.

*Special Litigation and Compliance Counsel
for the Debtors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------
                                                                                  )
   In re:                                                                     )    Case No. 12-12020 (MG)
                                                                                  )
   RESIDENTIAL CAPITAL, LLC, <u>et al</u>.,    )    Chapter 11
                                                                                  )
                                                    Debtors.    )    Jointly Administered
                                                                                  )
---------------------------------------------------------------------------

**SUMMARY OF THIRD INTERIM APPLICATION OF BRADLEY ARANT
BOULT CUMMINGS LLP AS SPECIAL LITIGATION AND COMPLIANCE
COUNSEL FOR THE DEBTORS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE
<u>PERIOD JANUARY 1, 2013, THROUGH APRIL 30, 2013</u>**

This is a(n):     ___ monthly      _X_ interim ___ final application.

| | |
|---|---|
| Name of Applicant: | Bradley Arant Boult Cummings LLP (the "**Applicant**") |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. (collectively, the "**Debtors**") |
| Date of Retention: | Order entered on August 20, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 [Dkt. No. 1221] |
| Period for which Compensation and Reimbursement is sought: | January 1, 2013 through April 30, 2013 (the "**Application Period**") |

1

1/2515375.2

| | |
|---|---|
| Fees/ Expenses Previously Approved: | Fees of $4,060,788.24 and expenses of $148,999.34 were approved by Order of this Court entered on December 28, 2012 [Dkt. No. 2530] |
| | Fees of $4,189,034.16 and expenses of $221,385.66 were approved by Order of this Court entered on April 29, 2013 [Dkt. No. 3556] |
| Previously Approved Fees that Have Been Paid / Remain Unpaid: | $7,114,375.77 paid / $1,135,446.63 unpaid |
| Previously Approved Expenses that Have Been Paid / Remain Unpaid: | $306,396.23 paid / $63,988.77 unpaid |
| Amount of Compensation Sought Herein as Actual, Reasonable and Necessary: | $2,416,978.11 |
| Amount of Expense Reimbursement Sought Herein as Actual, Reasonable and Necessary: | $144,016.28 |
| Names, Billing Rates, and Bar Admission Dates, as applicable, for All Timekeepers: | See Exhibit D to Application |
| Total Hours Billed and Total Amount of Billing Per Timekeeper: | See Exhibit D to Application |
| Blended Hourly Rates for Attorneys: | $295.00 |

1/2515375.2

**Summary of Monthly Applications for Application Period:**

| Date of Monthly Request | Compensation Period | Initial Fees Requested / *Reconciled Amount* | Initial Expenses Requested / *Reconciled Amount* | Fees Paid to Date | Expenses Paid to Date | 20% Holdback |
|---|---|---|---|---|---|---|
| 7/22/2013 | 1/1/2013 to 1/31/2013 | $1,420,237.13 / *$1,420,237.13* | $75,341.71 / *$63,486.88*[1] | $0 | $0 | $284,047.43 |
| 7/25/2013 | 2/1/2013 to 4/30/2013 [2] | $998,295.18 / *$996,740.98* [3] | $80,529.40 / *$80,529.40* | $0 | $0 | $199,348.20 |
| **TOTAL** *(using reconciled figures)* | | **$2,416,978.11** | **$144,016.28** | $0 | $0 | $483,395.62 |

---

[1] The July 22, 2013 letter requested reimbursement of expenses in the amount of $75,341.71. Through the subsequent reconciliation process with the Debtors, Applicant agreed that its expense reimbursement request should be reduced to $63,486.88 for the January 2013 billing period.

[2] To reduce substantially the volume of supporting documents in support of the Applicant's monthly applications for the months of February, March, and April 2013, and to simplify the Applicant's preparation and the other parties' review of these monthly applications, the Applicant, with the advance consent of the U.S. Trustee and the Debtors and advance notice to the Committee, consolidated its monthly applications for those three months into one submission.

[3] Upon subsequent review of the July 25, 2013 letter, Applicant determined that $1,554.20 in fees included in such request likely were not compensable under the U.S. Trustee's Guidelines. Applicant has reduced its compensation request in this Application accordingly.

3

1/2515375.2

Hearing Date: September 11, 2013, at 10:00 a.m. (ET)
Objection Deadline: August 21, 2013, at 4:00 p.m. (ET)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**THIRD INTERIM APPLICATION OF BRADLEY ARANT
BOULT CUMMINGS LLP AS SPECIAL LITIGATION AND COMPLIANCE
COUNSEL FOR THE DEBTORS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED FOR THE
PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013**

For its third interim application for compensation and reimbursement of expenses (the "**Application**") for the period January 1, 2013 through April 30, 2013 (the "**Application Period**"), Bradley Arant Boult Cummings LLP (the "**Applicant**"), special litigation and compliance counsel to Residential Capital, LLC., *et al.*, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 328, 330, and 331, of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the

1

United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**"). This Application has been prepared in accordance with General Order M-447, *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, entered January 29, 2013 (the "**Local Guidelines**"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and, together with the Local Guidelines, the "**Guidelines**"). Pursuant to the Local Guidelines, a certification regarding compliance with the Local Guidelines is attached hereto as Exhibit A.

**BACKGROUND**

A.     **The Chapter 11 Cases**

3.     On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

4.     On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**").

5.     On June 20, 2012, the Court directed that an examiner be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Dkt. Nos. 454, 674].

6.     On July 3, 2013, the Debtors filed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, at al. and the Official Committee of Unsecured Creditors* [Dkt. No. 4153] and the proposed *Disclosure Statement for the Joint Chapter 11 Plan Proposed by*

2

*Residential Capital, LLC, at al. and the Official Committee of Unsecured Creditors* [Dkt. No. 4157].

**B.     Applicant's Retention and Interim Compensation**

7.     On July 9, 2012, the Debtors filed their application under sections 327(e) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 for authorization to employ Applicant as special litigation and compliance counsel to the Debtors and to approve the Debtors' alternative billing arrangement with the Applicant [Dkt. No. 721] (the "**Retention Application**"). With the Retention Application, the Debtors filed the Declaration of Robert R. Maddox, a partner of Applicant, in support of the Retention Application (the "**Initial Supporting Declaration**"). The Debtors subsequently filed the Supplemental Declaration of Mr. Maddox in support of the Retention Application (the "**First Supplemental Declaration**") [Dkt. No. 866], the Second Supplemental Declaration of Mr. Maddox in support of the Retention Application (the "**Second Supplemental Declaration**") [Dkt. No. 1008], and the Third Supplemental Declaration of Mr. Maddox in support of the Retention Application [Dkt. No. 3144] (the "**Third Supplemental Declaration**"), on July 21, 2012, August 6, 2012, and March 12, 2013, respectively. The Initial Supporting Declaration, the First Supplemental Declaration, the Second Supplemental Declaration, and the Third Supplemental Declaration shall be referred to hereinafter collectively as the "**Supporting Declaration**").

8.     On August 9, 2012, the Court held a duly-noticed hearing on the Retention Application. On August 10, 2012, the Court issued its Memorandum Opinion [Dkt. No. 1077] approving the Retention Application and overruling certain limited objections thereto. On August 20, 2012, the Court entered that certain Order Under Sections 327(e) and 328 of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing (I) the

3

Employment and Retention of Bradley Arant Boult Cummings LLP as Special Litigation and Compliance Counsel to the Debtors, *Nunc Pro Tunc* to May 14, 2012, and (II) Approving the Alternative Billing Arrangement [Dkt. No. 1221] (the "**Retention Order**"),[4] approving Applicant's employment pursuant to the Retention Application. Among other things, the Retention Order approved the Alternative Billing Arrangement (as such term was defined in the Retention Order) negotiated among the Debtors and Applicant with respect to the Alternative Billing Arrangement Matters (as such term was defined in the Retention Order) pursuant to section 328(a) of the Bankruptcy Code.

9. On July 17, 2012, the Court entered the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim Compensation Order**") [Dkt. No. 797]. Pursuant to the terms of the Interim Compensation Order, Applicant, among others, is authorized to submit monthly fee applications to the Debtors and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc., counsel for Barclays Bank PLC, and the United States Trustee (collectively, the "**Notice Parties**").

10. On October 19, 2012, Applicant filed its First Interim Application as Special Litigation and Compliance Counsel for the Debtors for Compensation and Reimbursement of Expenses Incurred for the Period May 14, 2012 Through August 31, 2012 (the "**First Interim Application**") [Dkt. No. 1882]. In the First Interim Application, Applicant requested the approval of compensation in the amount of $4,207,515.65 and reimbursement of expenses in the amount of $157,682.41. In the Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim Compensation and Reimbursement of Expenses (the "**First U.S.**

---

[4] By order entered September 27, 2012 [Dkt. No. 1600], the Court denied the motion of Patrick J. Hopper [Dkt. No. 1351] for reconsideration of the Retention Order.

4

**Trustee Objection**") [Dkt. No. 2361], the First U.S. Trustee asserted limited objections to the First Interim Application. The First Interim Application and the U.S. Trustee Objection came before this Court for hearing on December 20, 2012. Prior to such hearing, through the Debtor's billing reconciliation process, Applicant agreed to certain adjustments to the compensation and expense reimbursement requests made in the First Interim Application. Also, prior to the hearing, Applicant and the U.S. Trustee reached an agreement resolving the First U.S. Trustee Objection as it pertained to the First Interim Application. Accordingly, on December 28, 2012, this Court entered its order [Dkt. No. 2530] allowing Applicant's fees in the reduced amount of $4,060,788.24 and expenses in the reduced amount of $148,999.34.

11.     On March 13, 2013, Applicant filed its Second Interim Application as Special Litigation and Compliance Counsel for the Debtors for Compensation and Reimbursement of Expenses Incurred for the Period September 1, 2012 Through December 31, 2012 (the "**Second Interim Application**") [Dkt. No. 3151]. In the Second Interim Application, Applicant requested the approval of compensation in the amount of $4,257,795.00 and reimbursement of expenses in the amount of $227,136.00. In the Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim Awards of Compensation and Reimbursement of Out-of-Pocket Expenses (the "**Second U.S. Trustee Objection**") [Dkt. No. 3310], the U.S. Trustee asserted limited objections to the Second Interim Application. The Second Interim Application and the Second U.S. Trustee Objection came before this Court for hearing on April 11, 2013. Prior to such hearing, through the Debtor's billing reconciliation process, Applicant agreed to certain adjustments to the compensation and expense reimbursement requests made in the Second Interim Application. Also, prior to the hearing, Applicant and the U.S. Trustee reached an agreement resolving the Second U.S. Trustee Objection as it pertained to the Second Interim

Application.  Accordingly, on April 29, 2013, this Court entered its order [Dkt. No. 3556] allowing Applicant's fees in the reduced amount of $4,189,034.16 and expenses in the reduced amount of $221,385.66.

12. On July 22, 2013, Applicant served its ninth monthly fee application covering the period from January 1, 2013 through January 31, 2013 (the "**Ninth Monthly Fee Application**") on the Notice Parties.[5] On July 25, 2013, Applicant served its tenth monthly fee application covering the period from February 1, 2013 through April 30, 2013 (the "**Tenth Monthly Fee Application**") on the Notice Parties. Applicant has not received any objections to the Ninth Monthly Fee Application or the Tenth Monthly Fee Application as of the filing of this Application, though the deadlines for objecting to them have not yet passed. Copies of these Monthly Fee Applications (excluding the supporting invoices transmitted with them, which are omitted for the reasons set forth below) are attached hereto as Exhibit B.

13. For the convenience of this Court and all parties in interest, attached hereto as Exhibit C is a schedule of the total amount of fees billed by Applicant pursuant to the Monthly Fee Applications during the Application Period, organized according to the applicable project categories suggested by the U.S. Trustee in the Guidelines.

---

[5] The Ninth Monthly Fee Application superseded a prior monthly fee application covering the same period that the Applicant served upon the Notice Parties on April 9, 2013 (the "Superseded Ninth Monthly Fee Application"). The Ninth Monthly Fee Application was prepared and circulated to make three adjustments to the Superseded Ninth Monthly Statement. First, in the Ninth Monthly Fee Application, the Applicant wrote off certain time entries relating to the Applicant's preparation and defense of prior fee submissions that, in accordance with the U.S. Trustee's Billing Guidelines and the Court's statements made at prior hearings on fee applications in this case, would not be compensable. Second, the Ninth Monthly Fee Application reflected billing adjustments made as part of the Applicant's and the Debtors' ordinary course reconciliation process with respect to the parties' former "alternative billing arrangement matters," all of which converted to hourly rate billing as of January 1, 2013, as set forth in the Third Supplemental Declaration. Third, the Ninth Monthly Fee Application included six hourly-rate matters for which the Applicant incurred fees and expenses during the January 2013 billing period that had been inadvertently omitted from the Superseded Ninth Monthly Statement.

14. As of the filing of this Application, Applicant has not yet received any payments from the Debtors with respect to the Monthly Fee Applications.

15. Applicant maintains computerized records of the time expended in the rendering of the professional services required by the Debtors. These records are maintained in the ordinary course of Applicant's practice. For the convenience of this Court and all parties in interest, attached hereto as <u>Exhibit D</u> is a billing summary for the Application Period (the "**Billing Summary**"), setting forth the name of each attorney and paraprofessional who rendered services during the Application Period, each attorney's year of bar admission and area of practice concentration, the aggregate time expended by each attorney and each paraprofessional, the hourly billing rate for each attorney and each paraprofessional at Applicant's current billing rates, and the individual amounts requested for each professional. The hourly compensation requested by Applicant is based on the customary compensation charged by comparably skilled practitioners in other similar cases under the Bankruptcy Code. The blended hourly rate for timekeepers (other than paralegals and other paraprofessionals) who billed time during the Application Period is $295.00.

16. In her responses to Applicant's prior fee applications, the U.S. Trustee has objected to the allowance of any compensation for the work performed by attorneys and paraprofessionals of Applicant who billed five hours or less on the Debtors' matters during the applicable application period. The Billing Summary reflects that certain attorneys and paraprofessionals of Applicant have billed five hours or less during the Application Period on the Debtors' matters. Based upon Applicant's review of the Billing Summary, the total hours billed by such "transitory timekeepers" during the Application Period total 54.3 hours for which Applicant requests compensation of $15,864.84. Applicant submits that the time incurred by

7

these "transitory timekeepers" was reasonably incurred and beneficial to the Debtors and their estates and requests that such fees be approved by the Court without reduction.

17. Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services. A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as Exhibit E.

18. Copies of Applicant's invoices for fees and expenses were served on the Notice Parties with each of the Monthly Fee Applications. To simplify the review of the Applicant's time records for the hundreds of separate matters it handled for the Debtors during the Application Period, [6] Applicant has taken the invoices that were attached to the Monthly Fee Applications and re-printed them in a more condensed format compliant with the Guidelines. Applicant then organized these re-formatted invoices by client-matter, so that all the monthly invoices for a given matter are grouped together, rather than being dispersed among the various Monthly Fee Applications submissions.[7] Applicant's re-formatted time and expense records organized by billing matter are attached hereto collectively as Exhibit F (the "**Supporting Invoices**").

19. The Retention Order approved the Alternative Billing Arrangement negotiated prepetition between the Debtors and the Applicant, the terms of which were described fully in

---

[6] At the December 20, 2012 hearing on the Applicant's First Interim Application, the Court commented about the difficulty it encountered when reviewing the Applicant's voluminous time records for the hundreds of matters handled by Applicant for the Debtors. The Court asked Applicant to confer with the U.S. Trustee about how Applicant could better and more succinctly present its billing records to the Court for review. Applicant and the U.S. Trustee spoke after that hearing about changes that Applicant could make to its future fee applications to better satisfy both the requirements set forth in the Guidelines and the Debtors' own internal billing procedures. Applicant has endeavored to address the Court's concerns by making the changes discussed herein.

[7] For example, for each litigation matter Applicant is handling for the Debtors, Applicant has grouped the January 2013 invoice and the consolidated February-through-April 2013 invoice for that matter together so the Court and the U.S. Trustee can readily review the work performed by Applicant during the Application Period on each specific matter.

8

the Retention Application. The Alternative Billing Arrangement applied to certain litigation and pre-litigation matters in which the Applicant represented the Debtors. The Retention Application disclosed that the Alternative Billing Arrangement extended only through December 31, 2012.

20.     After substantial discussions, the Debtors and Applicant mutually agreed not to extend further the Alternative Billing Arrangement beyond December 31, 2012, and instead, to bill all matters handled by Applicant on behalf of the Debtors on the hourly-rate terms under which Applicant represented the Debtors on other matters, effective as of January 1, 2013. The Applicant filed the Third Supplemental Declaration to advise the Court, the U.S. Trustee, and other parties in interest of the change in the parties' billing arrangement.[8]

21.     As discussed in the Third Supplemental Declaration, the Debtors and Applicant agreed to certain terms regarding the transition of the Alternative Billing Arrangement Matters to hourly-rate billing. Specifically, with respect to any Alternative Billing Arrangement Matter for which Applicant received the initial $7,300 up-front payment under the Alternative Billing Arrangement from the Debtors prior to December 31, 2012, but did not incur $7,300 of billable time and expenses on such matter through December 31, 2012, Applicant agreed that the Debtors would not be liable to pay any fees or reimburse any expenses incurred on or after January 1, 2013 unless and until the sum of the total hourly fees and expenses incurred on such

---

[8] The decision to convert the Alternative Billing Arrangement Matters to hourly-rate billing was made in recognition that the Debtors' sale of substantially all of their mortgage servicing portfolio in January and February of 2013 would substantially reduce the volume of work that Applicant would be performing for the Debtors on such Alternative Billing Arrangement Matters, as the buyers of the Debtors' mortgage servicing portfolio would be assuming the responsibility post-closing for defending and/or prosecuting the vast majority of such litigation and pre-litigation matters. Given the projected substantial decrease in the Debtors' need for litigation assistance post-closing and the substantial resources that were required to administer the parties' Alternative Billing Arrangement, the Debtors and Applicant mutually agreed that a switch to a straight hourly billing arrangement would be beneficial for all parties involved, including the Debtors and the Debtors' estates.

1/2515375.2

matter from the time such matter was opened exceeds $7,300. The Applicant's request for payment of compensation and reimbursement of expenses made in this Application fully accounts for the billing transition agreement described in the Third Supplemental Declaration.

22.     There is no agreement or understanding between Applicant and any other person, other than partners of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

23.     The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees. Applicant respectfully requests, in connection with the relief requested herein, that the Court allow this holdback amount on an interim basis pursuant to sections 330 and 331 of the Bankruptcy Code and authorize and direct the Debtors to pay such amounts.

## DESCRIPTION OF SERVICES AND EXPENSES AND RELIEF REQUESTED

24.     In general, Applicant has provided the following services to or on behalf of the Debtors during the course of their Chapter 11 Cases:

(a)     represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in existing or future litigation concerning claims related to mortgage loans and related servicing practices brought by borrowers against the Debtors and/or such investors primarily, but not exclusively, within the jurisdictions of Alabama, Florida, Kentucky, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, and Texas;

(b)     represent the Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in existing or future consumer and class action litigation relating to the Debtors' mortgage servicing operations;

(c)     represent the Debtors in both litigation and pre-litigation matters involving state and federal regulatory inquiries, title insurance, pooling and servicing agreements, loan repurchase demands, servicing matters, and settlement services issues;

10

(d) provide litigation defense and corporate advice to the Debtors regarding a variety of "real-estate-owned" (REO) related issues including title resolution, compliance with city and state ordinances, negotiation of fines/penalties, and the proper maintenance of REO properties;

(e) advise the Debtors regarding the performance and satisfaction of their obligations under and in compliance with (i) the Board of Governors of the Federal Reserve System Consent Order, dated April 13, 2011, by and among certain of the Debtors, the Board of Governors of the Federal Reserve System, and the Federal Deposit Insurance Corporation, among others (the "Consent Order"), (ii) the consent judgment entered April 5, 2012 by the District Court for the District of Columbia, dated February 9, 2012 (the "Consent Judgment"), and (iii) all related agreements with the Debtors;

(f) advise the Debtors regarding compliance with various federal, state, and local laws, statutes, regulations, orders, and similar restrictions regarding the operation of the Debtors' businesses and the performance of their obligations under their servicing, sub-servicing, and related contracts and agreements;

(g) counsel and otherwise advise and assist the Debtors in the development, drafting, review, and revision of practices, policies, and procedures relating to the operation of the Debtors' businesses; and

(h) counsel and otherwise advise and assist the Debtors with regard to research and review projects as needed and directed by the Debtors in furtherance of the Debtors' ongoing business operations.

25. To provide an orderly and meaningful summary of the services rendered by Applicant on behalf of the Debtors during the Application Period, Applicant maintained separate internal billing files for the numerous matters it is handling for the Debtors and, in accordance with the Guidelines and its internal billing procedures, has categorized those matters in accordance with the project categories suggested by the U.S. Trustee in the Guidelines.

26. The following is a summary of the most significant professional services rendered by Applicant during the Application Period organized by project categories suggested by the U.S. Trustee in the Guidelines:

(a) <u>Litigation (Hourly Rate Matters): Fees -- $1,160,827.11; Total Hours – 4,908.10</u>. During the Application Period, Applicant has represented the

11

1/2515375.2

        Debtors and/or the investors for which the Debtors provide servicing or sub-servicing services (except for Ally Financial, Inc. and Ally Bank) in approximately 600 litigation and pre-litigation matters (including thos former Alternative Billing Arrangement Matters that converted to hourly rate billing as of January 1, 2013) concerning claims related to mortgage loans and related servicing practices for which Applicant is to be compensated on an hourly rate basis. In these matters, Applicant has performed a broad range of litigation services, including reviewing and responding to complaints and lawsuits, preparing and advocating motions to dismiss and for summary judgment, developing case strategy, engaging in discovery, evaluating the impact of the Debtors' bankruptcy on the various litigation matters, evaluating potential risk and exposure, assessing and pursuing settlement opportunities, and appearing in court to advocate and defend the interests of the Debtors in these matters. During the Application Period, the average amount of billable fees incurred on these matters is approximately $1,968 per matter, with the maximum amount of billable fees incurred on any one case during the Application Period being $33,261.80. Applicant's time records for these hourly-rate litigation matters are included in <u>Exhibit F</u> attached hereto.

(b)    <u>Business Operations / Compliance: Fees -- $1,233,434.10; Total Hours – 4,296.60</u>. During the Application Period, Applicant has advised the Debtors on a host of matters, many of which involve confidential or sensitive information, regarding the Debtors' ongoing operation of its residential mortgage servicing business. Applicant has continued to advise the Debtors regarding their compliance obligations under various federal and state laws and regulations, as well as with respect to their obligations under the Consent Order, the Consent Judgment, and related agreements. Applicant has aided the Debtors in the review, revision, and implementation of policies and procedures intended to assist the Debtors in efficiently performing their duties under the Consent Order, the Consent Judgment, and related agreements, as well as otherwise applicable laws and regulations. Applicant has represented the Debtors' interests with respect to various inquiries, proceedings, and investigations initiated by various federal and state agencies that assert regulatory authority over the Debtors' operations and have communicated regularly with representatives of such agencies regarding such matters and the potential resolution of the same. Applicant has advised the Debtors regarding their third-party vendor retention and evaluation processes and the development of procedures for effective communication and coordination with such vendor, and has also assisted the Debtors in the review and revision of the their internal policies and procedures regarding, among other things, default administration, foreclosure practices, and document review and control. The Debtors frequently consult with Applicant regarding various pre-litigation disputes or issues that arise with respect to specific loan files Applicant also routinely advises the Debtors regarding "real estate owned" (REO) matters involving foreclosed properties for which the Debtors have

or may have various responsibilities under their servicing agreements. Applicant has also provided the Debtors with on-site legal support to assist the Debtors' legal department with the day-to-day administration and oversight of the Debtors' substantial mortgage servicing litigation caseload. Applicant has also advised the Debtors on compliance and transition issues arising from or relating to the sales of the Debtors' mortgage servicing business which closed during the Application Period. Applicant's time records for these business operations and compliance matters are included in Exhibit F attached hereto.

(c) <u>Fee/Employment Applications: Fees -- $22,716.90; Total Hours – 56.00</u>. During the Application Period, Applicant prepared and filed the Second Interim Application, prepared for and attended the hearing thereon, and assisted with the preparation and revision of the proposed order approving such application. Applicant's time records for its work on retention and fee application matters are included in Exhibit F. Applicant's fees and expenses relating to this project category represent less than 1.0% of the total fees and expenses requested by Applicant pursuant to this Application. In addition to the foregoing, Applicant responded to limited objections raised by the U.S. Trustee and researched issues relating to such objections, negotiated successfully with the U.S. Trustee to resolve her limited objections to the Second Interim Application, and prepared the Monthly Fee Applications and the exhibits thereto in accordance with the terms of the Guidelines and the Interim Compensation Order. Applicant has written off substantial time entries devoted to the tasks described in the immediately preceding sentence which, pursuant to the Guidelines and the Court's statements at prior hearings in the Chapter 11 Cases, Applicant understands are not compensable within this District.

27. The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases. The time records attached hereto as Exhibit F present more completely the work performed by Applicant in each billing category during the Application Period.

## **CONCLUSION**

28. Applicant believes that the services rendered during the Application Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330 and that the expenses requested were actual and necessary to the performance of Applicant's services.

29. Applicant therefore requests an order (i) approving interim compensation in the amount of $2,416,978.11 and interim reimbursement of expenses in the amount of $144,016.28,[9] (ii) directing prompt payment of all compensation requested in connection with the Monthly Fee Applications, including any hold back amounts, and (iii) granting such other and further relief as may be just and proper.

Dated: August 6, 2013

    /s/ Jay R. Bender
Robert W. Maddox, Esq.
Jay R. Bender, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Fax: (205) 521-8800

*Special Litigation and Compliance Counsel for the Debtors*

---

[9] The rates charged for such expenses are (i) equivalent to what Applicant normally bills to its non-bankruptcy clients and (ii) calculated to compensate Applicant for only its actual costs of the expenses.

14

1/2515375.2