The Debtor has listed your claim as Contingent, Unliquidated, and Disputed on Schedule F as a general unsecured claim in the amount of $0.00. You MUST timely file a Modified Claim or you will be precluded from recovery.

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor:  **GMAC Mortgage, LLC**  
Case Number:  **12-12032**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Karel Barel Ariel Barel Sui Juris Third Party Interpleader and Third Party Plaintiffs v GMAC Mortgage LLC Mortgage et al

Name and address where notices should be sent:  NameID: 10988150

Karel Barel Ariel Barel Sui Juris Third Party Interpleader and Third Party Plaintiffs v GMAC Mortgage LLC Mortgage et al
114 WARBLER DR
WAYNE, NJ 07470

Telephone number: 973-790-1427      email: abar4444@gmail.com

Name and address where payment should be sent (if different from above):

Telephone number:      email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:
*(if known)*

Filed on:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ **534,000.00**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Conversion of Personal Property
*(See instruction #2)*

**3. Last four digits of any number by which creditor identifies debtor:**

**3a. Debtor may have scheduled account as:**
*(See instruction #3a)*

**3b. Uniform Claim Identifier (optional):**
*(See instruction #3b)*

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:**

**Value of Property:** $_____   **Annual Interest Rate_____%** ☐ Fixed ☐ Variable *(when case was filed)*

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

**if any:** $_____   **Basis for perfection:** _____

**Amount of Secured Claim:** $_____   **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$_____ *(See instruction #6)*

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.

☒ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

**Print Name:** ARIEL BAREL, SUI JURIS
**Title:**
**Company:**                     (Signature)          11/7/12 (Date)
Address and telephone number (if different from notice address above):

Telephone number:      Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**Exhibit A**

COURT USE ONLY

Ariel and Karen Barel
114 Warbler Drive
Wayne, New Jersey 07470
(973) 790-1427 - Phone



**Exhibit B**

GMAC MORTGAGE, LLC

PLAINTIFF,

vs.

KAREN BAREL, ET AL.

DEFENDANT(S)

---

Karen Barel, Ariel Barel, Sui Juris,
Third Party Interpleader
        Third Party Plaintiff(s)

vs.

GMAC MORTGAGE, LLC, all BOARD OF DIRECTORS
and OFFICERS both individually and severally, Unknown
Owners and Non record Claimants;

ATLANTIC STEWARDSHIP BANK, all BOARD OF
DIRECTORS and OFFICERS both individually and severally,
Unknown Owners and Non record Claimants;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
(MERS 1) all BOARD OF DIRECTORS and OFFICERS both
individually and severally, Unknown Owners and Non record
Claimants;

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.,
(MERS 2) all BOARD OF DIRECTORS and OFFICERS both
individually and severally, Unknown Owners and Non record
Claimants;

GMAC Bank, all BOARD OF DIRECTORS and OFFICERS
both individually and severally, Unknown Owners and Non
record Claimants;

PHELAN HALLINAN AND SCHMIEG, PC, all BOARD OF
DIRECTORS and OFFICERS, all members both individually
and severally, Unknown Owners and Nonrecord Claimants;


        Third Party Defendant(s)

---

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
PASSAIC COUNTY

CIVIL ACTION

Docket No.: F-37098-08

**FIRST AMENDED ANSWER
WITH AFFIRMATIVE DEFENSES
TO COMPLAINT AND THIRD
PARTY COMPULSORY
COUNTERCLAIM**

RECEIVED
DEC 0 6 2010
MARGARET

I HEREBY CERTIFY THAT THE FOREGOING IS A
TRUE COPY OF AN ORIGINAL FILED IN MY
OFFICE

DOMINIC F. PALUMBO
Civil Division Manager

DEC 06, 2010 PS

## STATEMENT OF FACTS

Now come Third Party Plaintiff(s) and answers Third Party Defendant(s) original Complaint, as follows: The Court should consider the pleadings by "less stringent standards", Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); the Court should work to assure that any ignorance of law or procedure does not result in an unjust decision; and should not penalize good-faith errors. Pursuant to Fed. R. Civ. P. Rule 9(b) a fraud is being attempted and committed by Third Party Defendant(s) to collect a debt that had no value consideration, was paid by bonded promissory note and was denied discharge. A fraud was committed by Third Party Defendant(s) in filing fraudulent assignment(s) with the Passaic County Clerk and this court. Pursuant to Fed. R. Civ. P. Rule 13(b),(c) and Fed. R. Civ. P. Rule 13(a)[1] and N.J. R. Civ. P. 4:7-1[2]. Third Party Plaintiff(s) have an obligation to assert a Compulsory Counterclaim and under Fed. R. Civ. P. Rule 14(a) and New Jersey Civil Practice Rule 4:30A and bring in a Third Party. Third Party Plaintiff(s) are not a party to a valid contract with Third Party Defendant(s) that requires Third Party Plaintiff(s) to perform in any manner, including but not limited to the payment of money to Third Party Defendant(s). Third Party Plaintiff(s) lack of knowledge or information sufficient to form a belief about the truth of Third Party Defendant(s) allegation pursuant to F.R.C.P. R.8(b)(5) to make a proper determination of the facts constitutes a denial. Third Party Plaintiff(s) Third Party Plaintiff(s) have an unconditional right to intervene by a Federal statute; and pursuant to Fed. R. Civ. P. Rule 24(a)(2) have a claim and interest in the same property and transaction that is the subject of the instant action and have an obligation to protect their interest.

---

[1]For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id.* Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same [**13] basic controversy between the parties. 83 Fed. Appx. 425, *; 2003 U.S. App. LEXIS 24867, **1; 31 Employee Benefits Cas. (BNA) 2608; 42 Bankr. Ct. Dec. 211

[2]It is well settled that "failure to comply with a compulsory counterclaim rule in [a] first proceeding falls within the preclusive effects of" res judicata. 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4414 at 342 (2002). New Jersey Civil Practice Rule 4:7-1 regarding mandatory and permissive counterclaims, requires that parties to an action must plead such claims as required [*18] under New Jersey's Entire Controversy Doctrine or "thereafter be precluded from bringing any action for such claim . . . ." N.J. R. Civ. P. 4:7-1. New Jersey Civil Practice Rule 4:30A explains that "non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." N.J. R. Civ. P. 4:30A. The Entire Controversy Doctrine has been described by the Third Circuit as "New Jersey's specific, and idiosyncratic, application of res judicata principles," and requires a party to assert in the same action "all affirmative claims that [it] might have against another party, including counterclaims" and defenses to avoid forfeiture of those claims. Rycoline, 109 F.3d at 885-86.

## ANSWER TO FIRST COUNT

1. Defendants deny the allegations contained in paragraph one of First Count of the complaint. Defendant Karen Barel admits that she executed a note and mortgage. However, denies for want of knowledge whether the note and mortgage attached to Plaintiff's pleadings are that same note and mortgage. Defendant Ariel Barel denies that he executed a Note but admits that he executed the mortgage, however, denies for want of knowledge whether the note and mortgage attached to Plaintiff's pleadings are that same note and mortgage. Defendants deny being in default under the terms of the note and mortgage, deny that the balance was rightfully and correctly accelerated, as well as all other allegations in Paragraph one. The transaction upon which this claim is based is subject to the federal Truth in Lending Act, 15 U.S.C. §§ 1601–1666j (Act), and Regulation Z thereunder, 12 C.F.R. § 226. In the course of the transaction, Plaintiff failed to properly make all of the disclosures required by the Act and Regulation Z. In violation of 12 C.F.R. § 226.23(b) Plaintiff did not, at the consummation of the  transaction, give the Defendant(s) two copies of a notice of her right to rescind the transaction. In violation of 12 C.F.R. § 226 Plaintiff did not, at the consummation of the transaction, give each Defendant two copies each of signed set of documents. Plaintiff lacks standing to bring the instant foreclosure action to foreclose on the property.

2. Defendants deny the allegations contained in paragraph two of First Count of the complaint and specifically deny any allegations that a conveyance of the property to Plaintiff has occurred at any time, Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

   a. Defendants deny the allegations contained in subparagraph (a) of paragraph two and deny that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was NOMINEE FOR GMAC Bank, ITS SUCCESSORS AN ASSIGNS. Defendants charge that a fraudulent assignment was recorded on March 22, 2006 in Passaic County Recorder in an Assignment book AS206, page 289.

   b. Defendants deny the allegations contained in subparagraph (b) of paragraph two and deny that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS 1) was and/or is a

**Exhibit B**

nominee for GMAC Bank, its successors an assigns. The assignment purports to appoint the

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.(MERS 2). The assignment also

purports to appoint the Assignee as a true and lawful attorney, however no Power of Attorney,

dated, notarized and executed prior to the assignment date, is attached to the assignment

evidencing such appointment.

    c.   Defendants deny the allegations contained in subparagraph (c) of paragraph two that Plaintiff is

the owner and/or holder of the Note and Mortgage. No evidence was submitted to substantiate this

allegation. To enforce a negotiable instrument, a person must be a holder of the note. To meet the

definition of a "holder," under UCC, A "holder" is defined as "the person in possession if the

instrument is payable to bearer or, in the case of an instrument payable to an identified

person, if the identified person is in possession." N.J.S.A. 12A:1-201(20). "Mere

ownership or possession of a note is insufficient to qualify an individual as a 'holder'."

Adams v. Madison Realty & Dev. Inc., 853 F.2d 163, 166 (3dCir. 1988).

3.   Defendants deny the allegations contained in paragraph three of First Count of the complaint and

specifically deny any allegation that the Land secures the Note. Plaintiff's claim constitutes a legal

conclusion, not a statement of fact.

4.   The mortgage on which this action was brought is a mortgage insured by the Federal Housing

Administration. Due to that fact, Defendant was bound to comply with rules and regulations of the

Department of Housing and Urban Development. Plaintiff is required by HUD regulation to ensure

that all of the servicing requirements of 24 C.F.R. Part 203(C) have been met before initiating

foreclosure. 24 C.F.R.§ 203.606, published August 2, 1982, 47 FR 33252. Plaintiff and/or its

agent for servicing, failed to carry out its federally-imposed duties which are owed to this

defendant and are also incorporated into the terms of his mortgage to adapt effective collection

techniques designed to meet this defendant's individual differences and take account of his

peculiar circumstances to minimize the default in his mortgage payments as required by 24 C.F.R.

§203.600. Plaintiff is required under federal law to adapt its collection and loan servicing

**Exhibit B**

practices to defendant's individual circumstances and to re-evaluate these techniques each month after default and this plaintiff failed to do. 24 C.F.R. § 203.605, effective August 2, 1996. The failure to reasonably forbear from foreclosure, as required by HUD regulations, constituted an unfair trade practice in violation of the Unfair Trade Practices Law. Violation of applicable HUD regulations will defeat the foreclosure action. Prudential Ins. v. Jackson 270 N.J. Super. 510(App. Div. 1994); Associated East Mortgage Co. v. Young, 163 N.J. Super. 315 (Ch.Div.1978).

5.   Defendants deny the allegations contained in paragraph five of First Count of the complaint and specifically deny any allegations that no instrument appears of record which affect or may affect the premises. Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

   a.   Defendant Ariel Barel, husband of Karen Barel denies the allegations contained in subparagraph (a) of paragraph five of the complaint and affirms that his interest in the property is unquestionable, irrefutable and unassailable.

6.   Pursuant to F.R.C.P. R.8(b)(5) Defendants are a party that lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph six and this statement has the effect of a denial.

7.   Defendants deny the allegations contained in paragraph seven of First Count of the complaint and will rely on evidence in discovery. Plaintiff is in breach of contractual agreement with Defendants.

8.   Defendants deny the allegations contained in paragraph eight. Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

9.   Pursuant to F.R.C.P. R.8(b)(5) Defendants are a party that lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph nine and this statement has the effect of a denial.

**WHEREFORE**, Defendant(s) request this Court dismiss the Plaintiff's complaint with prejudice for the following reasons 1. Lack of subject matter jurisdiction; 2. Plaintiff failed to state a claim upon which relief can be granted; 3. Fraud; 4. Lack of standing; and award these Defendants actual or statutory damages,

**Exhibit B**

whichever is greater, attorney fees and costs, and for all other relief to which this Court finds Defendants are entitled.

## ANSWER TO SECOND COUNT

1. Defendant(s) deny the allegations contained in paragraph one of Second Count. Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

2. Defendant(s) deny the allegations contained in paragraph one of Second Count. Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

3. Defendant(s) deny the allegations contained in paragraph four, Defendant(s) have NEVER been in 'DEFAULT' of the purported "Loan" in question since Defendant NEVER received a "Loan" to begin with.

4. Defendant(s) do not waive any rights in the premises and deny the allegations that Plaintiff has been deprived of possession of the premises, Plaintiff's claim constitutes a legal conclusion, not a statement of fact.

**WHEREFORE,** Defendant(s) request this Court dismiss the Plaintiff's complaint with prejudice for the following reasons 1. Lack of subject matter jurisdiction; 2. Plaintiff failed to state a claim upon which relief can be granted; 3. Fraud; 4. Lack of standing; and award these Defendants actual or statutory damages, whichever is greater, attorney fees and costs, and for all other relief to which this Court finds Defendants are entitled.

Defendants denies all other allegations not specifically admitted, herein.

## AFFIRMATIVE DEFENSES

1. The Plaintiff comes to Court with unclean hands as a result of its failures and omissions as set forth in the statement of facts set forth above and incorporated herein. Plaintiff is prohibited by reason thereof from obtaining the equitable relief of foreclosure from this Court. The Plaintiff's unclean hands result from the Plaintiff's intentional and reckless failure to properly service this mortgage pursuant to the federal regulations and specifically, by filing this foreclosure before offering Defendants any of the federally required foreclosure avoidance options. As a matter of equity, this Court should refuse to foreclose this

**Exhibit B**

mortgage because acceleration of the note would be inequitable, unjust, and the circumstances of this case render acceleration unconscionable. This Court should refuse the acceleration and deny foreclosure because Plaintiff has waived the right to acceleration or is estopped from proceeding with this action because of misleading and fraudulent conduct and unfulfilled conditions.

2.  In addition, the plaintiff violated Regulation Z by improper disclosure of the date of the transaction and/or the expiration date for the three-day cooling-off period to provide, as required under the law, and which gives rise to the extended right to rescind the transaction.

3.  The plaintiff violated Regulation Z in the Notice Of Right To Cancel, the Plaintiff has misled the defendant by having the defendant sign the NOTICE OF NON-CANCELLATION prior to the expiration of rescission period and having defendants sign THE NOTICE OF NON-CANCELLATION at the same time and place when the original mortgage papers were signed. The closing agent had indicated to the defendants that in order to consummate the transaction the NOTICE OF NON-CANCELLATION must be signed at the same time. This act misled the defendants into believing that they had gave up their right to cancel. The premature election not to cancel violates TILA, which constitutes impermissible waiver of the right to cancel.

4.  In violation of 12 C.F.R. § 226 Plaintiff did not, at the consummation of the  transaction, give each Defendant two copies each of signed set of documents.

5.   The Department of Housing and Urban Development has determined that the requirements of 24 C.F.R. Part 203(C) are to be followed before any mortgagee commences foreclosure.

6.  Plaintiff has no valid cause of action for foreclosure unless and until Plaintiff can demonstrate compliance with the regulations in 24 C.F.R. Part 203(C).

7.  Defendant(s) made significant efforts to access foreclosure prevention services from the plaintiff and to make payments but Plaintiff denied Defendant(s) the required opportunity to access and obtain mortgage servicing options designed to avoid foreclosure of this HUD insured mortgage. *See Norwest Mortgage Inc. v. Rhoads*, 5 Fla. L. Weekly 361 (Fla.12th Judicial Circuit 1998).

8.  Plaintiff's claims are barred by the applicable statute of limitations.

9.  Plaintiff's claims are barred by laches.

Exhibit B

10. Plaintiff's claims are barred by failure of consideration.

11. Plaintiff's claims are barred by illegality.

12. Plaintiff's claims are barred by estoppel.

13. Plaintiff's claims are barred by statute of frauds.

14. Plaintiff's claims are barred by the doctrine of unclean hands.

15. Plaintiff's claims are barred by waiver.

16. Plaintiff's claims are barred by its own negligence.

17. Plaintiff is not the real party in interest.

18. Plaintiff has not joined all parties that are necessary to this litigation.

19. Plaintiff has failed to state a claim upon which relief can be granted.

20. Plaintiff's claims are barred by the wrongful acts of its employees or agents.

21. Plaintiff has failed to comply with the terms of the note and mortgage, when accelerating the
balance due, as demanded for in the complaint.

---

**RESPONDEAT SUPERIOR YOU ARE HEREBY GIVEN NOTICE, NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL, NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT**

---

### COMPULSORY COUNTERCLAIM

#### COUNT ONE

1. Third Party Plaintiff(s) have no record or evidence that Third Party Defendant(s) GMAC MORTGAGE, LLC
does not lack standing to bring the instant foreclosure action in an attempt to foreclose on the property
belonging to Third Party Plaintiff(s).

2. On September 23, 2008 GMAC MORTGAGE, LLC., through their attorneys PHELAN HALLINAN AND
SCHMIEG, PC, filed the instant foreclosure suit in the SUPERIOR COURT OF NEW JERSEY, CHANCERY
DIVISION, PASSAIC COUNTY.

3. On October 9, 2008 a purported Assignment of Mortgage was recorded in the records of the Passaic County
Clerk naming GMAC MORTGAGE, LLC., as the Assignee of the Mortgage together with the Bond and the
Note dated March 8, 2006. (Exhibit A). The Assignment was filed after the filing of the instant case. It is clear

**Exhibit B**

from the evidence of both filings that GMAC MORTGAGE, LLC., has not satisfied its burden at the time of the filing of the instant case to show that they did not lack standing, as required, in order for the court to obtain subject matter jurisdiction. This is Dishonor in commerce, Fraud on the court, Conspiracy, and Racketeering. We believe there is no evidence to the contrary.

"Standing is a constitutional issue since it impacts the [**15] court's subject matter jurisdiction. Only the real party in interest has standing to seek relief from the court. See In re Comcoach Corp., 689 F2d 571 (2nd cir. 1983)". As Sixth Circuit Court stated: "We join the First, Fifth, Seventh, Eighth, and Ninth Circuits, which have all explicitly held that standing is determined as of the time the complaint is filed. See Becker v. Federal Election Comm'n, 230 F.3d 381, 386 n.3 (1st Cir. 2000); White v. Lee, 227 F.3d 1214, 1243 (9th Cir. 2000); Park v. Forest Serv. of the United States, 205 F.3d 1034, 1037 (8th Cir. 2000); Perry v. Village of Arlington Heights, 186 F.3d 826, 831 (7th Cir. 1999); Carr v. Alta Verde Indus., Inc., 931 F.2d 1055, 1061 (5th Cir. 1991). "Standing is determined at the time the complaint is filed." (Citing, Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, at 525 (6th Cir. 2001) cert. denied, 429 U.S. 870, 97 S. Ct. 182, 50 L. Ed. 2d 150 (1976). We believe there is no evidence to the contrary.

4.  Because standing is determined at the time the complaint is filed, **a lack of standing cannot be retroactively cured by later occurring events**. Based upon the filing of Assignment of Mortgage, "Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint. Therefore, this Court does not have subject matter jurisdiction over this matter." HSBC Mortgage Services, Inc., v. Horn, 2008 U.S. Dist. LEXIS 82826 (quoting In re Foreclosure Cases, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007).

The Court of Appeals *(Saratoga County Chamber of Commerce, Inc. v Pataki,* 100 NY2d, 901, 812 [2003]), *cent denied* 540 US 1017 [2003]) held that "[s]tanding to sue is critical to the proper functioning of the judicial system. It is a threshold issue. If standing is denied, the pathway to the courthouse is blocked." In *Carper v Nussbaum,* 36 AD3d 176, 181 (2d Dept 2006), the Court held that "[s]tanding to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for

Exhibit B

determining the issue at the litigant's request." If a plaintiff lacks standing to sue, the plaintiff may not proceed in the action. *(Stark v Goldberg*, 297 AD2d 203 [ld Dept 2002]).

In <u>Williams v. Wohlgemuth</u>, 540 F.2d 163; 1976 U.S. App., The Third Circuit Court of Appeals concluded "that there was at least one [**13] plaintiff with **standing when the complaint was filed** and when the class was certified". (emphases added). In a recent Atlantic County Superior Court of New Jersey case <u>Bank Of New York vs. Raftogianis,</u> Docket No: F-7356-09, the court stated in its order of dismissal that "Ultimately, the court concluded that it was appropriate to require plaintiff to establish that it had physical possession of the note as of the date the complaint was filed".

5. *In re Foreclosure Cases*, 521 F. Supp. 2d 650 (U.S. Dist. 2007) involved a dispute over standing and subject matter jurisdiction. The United States District Court concluded that to satisfy Article III standing requirements the plaintiff in a foreclosure action must establish that it was the holder of the note and the mortgage at the time the complaint was filed. We believe there is no evidence to the contrary.

## COUNT TWO

1. Third Party Plaintiff(s) have no record or evidence that Third Party Defendant(s) GMAC MORTGAGE, LLC, was or is the holder(s) in due course of the note and the mortgage at the time the complaint was filed. On March 8, 2006, JAMES M. O'BRIEN, Assistant Vice President of Atlantic Stewardship Bank, executed an Assignment of Mortgage to Mortgage Electronic Registration Systems, Inc.,(MERS 1)  the assignment of mortgage was recorded in the records of the Passaic County Clerk on March 22, 2006, (Exhibit A) naming Mortgage Electronic Registration Systems, Inc., (MERS 1) as the Assignee of the Mortgage dated March  8, 2006. The said March 8, 2006 assignment does not assign the mortgage together with the Bond and the Note, as the Note requires, to Mortgage Electronic Registration Systems, Inc.(MERS 1) , in order to establish clear chain of title and standing.

2. On October 9, 2008 a second Assignment of Mortgage was recorded in the records of the Passaic County Clerk naming GMAC MORTGAGE, LLC., as the Assignee of the Mortgage.  This latter assignment from Mortgage

**Exhibit B**

Electronic Registration Systems Inc.(MERS 2) to GMAC MORTGAGE, LLC is very specific in its language as to the assignment/transfer of the Bond and the Note to GMAC MORTGAGE, LLC. It clearly directs the assignment to be "TOGETHER with the Bond, Note, or other Obligation therein described or referenced to, and the money due and to become due thereon, with interest." (Exhibit B). It is clear from the records provided by the Passaic County Clerk that the Note was not assigned to Mortgage Electronic Registration Systems, Inc.(MERS 1), together with the mortgage on March 8, 2006 (first assignment). Mortgage Electronic Registration Systems, Inc.(MERS 1), had no capacity or authority as a nominee or otherwise to reassign the Note to GMAC MORTGAGE, LLC on October 9, 2009.

3. Third Party Plaintiff(s) have no record or evidence that Mortgage Electronic Registration Systems Inc. (MERS 2) was the holder of the said Bond, Note and Mortgage and had any capacity or authority as a nominee for GMAC Bank to assign the Bond, Note together with the mortgage to GMAC MORTGAGE, LLC as the October 9, 2008 latter recorded assignment claims to accomplish. The assignment purports to appoint the Assignee as a true and lawful attorney, however no Power of Attorney, dated and notarized, prior to the assignment date is attached to the assignment evidencing such appointment. Furthermore, if lawful, the purported assignment of the note in the assignment of mortgage document, creates an ownership issue, and does not transfer the right to enforce the note. This is Dishonor in commerce, Fraud, Conspiracy, and Racketeering. We believe there is no evidence to the contrary.

## COUNT THREE

1. Third Party Plaintiff(s) have no record or evidence that Third Party Defendant(s) Mortgage Electronic Registration Systems, Inc.(MERS 1), were at anytime in possession of the original note and would have had "holder" status in order to lawfully cause such assignment of the Note, Bond and Mortgage to GMAC MORTGAGE, LLC as of the date of the complaint filing date, because the note was negotiated and made payable to GMAC Bank by an indorsement/allonge which had been executed on March 14, 2006 by James M. O'Brien, Assistant Vice President of Atlantic Stewardship Bank and who was in possession of the original note.

**Exhibit B**

2.  The alleged Note in question, started its life as negotiable instrument. It is similar to a check. The negotiation and enforceability of both notes and checks are governed by Article Three (3) of the Uniform Commercial Code. To enforce a negotiable instrument, a person must be a holder of the note. To meet the definition of a "holder," the person must possess the note, and the note, at issue here, made payable to GMAC Bank, providing for interest and an unconditional promise to pay the lender, is a "negotiable instrument" under the New Jersey UCC, which defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time." N.J.S.A. 12A:3-104. A party is entitled to enforce a negotiable instrument if it is "the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418." N.J.S.A. 12A:3-301. In this case, the Third Party Defendant(s) should be barred from enforcement of the instrument under any of the three statutory qualifiers. We believe there is no evidence to the contrary.

3.  If the Third Party Defendant(s), at a later date, attempt to claim that the original Note was somehow "lost" or "destroyed", Third Party Defendant(s) are forever barred from the Note being enforceable, as made obvious by official comments to the UCC §3-203, that read as follows: "The right to enforce an instrument and ownership of the instrument are two different concepts. . . . Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X's right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y."

**Exhibit B**

4. Third Party Plaintiff(s) have no record or evidence that there was no fraud committed by Third Party

Defendant(s) in the assignment of the original mortgage. On March 14, 2006 James M. O'Brien, Assistant

Vice President of Atlantic Stewardship Bank executed an indorsement of the original Note making it "PAY

TO THE ORDER OF GMAC BANK WITHOUT RECOURSE". The assignment of the mortgage was

recorded to Mortgage Electronic Registration Systems, Inc. as nominee for GMAC Bank, its successors and

assigns, located at 100 Witmer Road, Suite 91, Horsham, PA 19044. Upon checking the records of the

Secretary of State of Commonwealth of Pennsylvania Third Party Plaintiff(s) **discovered that there was no**

**record of GMAC Bank, no such entity was in existence or registered to do business in Pennsylvania in**

**March of 2006. Fictitious name filing for GMAC Bank occurred on November 7, 2006. (Exhibit C).**

GMAC Bank did not exist in Pennsylvania (contrary to the assignment's claim) at the time of the assignment

of the mortgage and the negotiation of the Note. Mortgage Electronic Registration Systems, Inc., never had nor

will it ever have the capacity or the authority to assign the Mortgage or the Note to GMAC MORTGAGE,

LLC. This is a Dishonor in Commerce, Fraud, Racketeering, and Conspiracy, and we believe there is no

evidence to the contrary.

## COUNT FOUR

1. Third Party Plaintiff(s) have no record or evidence that Third Party Defendant(s) did not separate the Note and

the mortgage. At inception, the note was separated from the mortgage. After the execution of the documents,

with the note being allegedly transferred to GMAC Bank (evidenced by indorsement) a nonexistent entity at

the time, the mortgage was allegedly assigned to MERS 1, but the note was transferred outside the MERS 1

system in violation of the rules and policies adopted by MERS 1. United Stated Supreme Court made it very

clear going back as far as 1873 in the case quoted below:

> "A promissory note and mortgage are inseparable; the former as essential, the latter as an
> incident. An assignment of the note carries the mortgage with it, while an assignment of
> the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 21 L.Ed. 313 [1873]

2. The legal status of a nominee, depends on the context of the relationship of the nominee to its principal.

Various courts have interpreted the relationship of Mortgage Electronic Registration systems, Inc. and the

lender as an agency relationship. Mortgage Electronic Registration systems, Inc., at the moment of the note's

transfer to another party, could not possibly have an agency/beneficiary/nominee status with GMAC Bank.

**Exhibit B**

Particularly when such entity did not exist. There is no further authority to substitute a mortgagee or transfer any other interest in the mortgage to any party. No party that has initiated foreclosure on MERS mortgage has any authority to and holds, at most, an unsecured note in favor of the real parties in interest of the note, the investor/owners; if and only if they can prove they have an agency relationship with the owners and if they can show that they, the owners have not already been made whole by a derivative contract.

3.  The note, that had been executed with the mortgage was separated from the mortgage in that the note became part of a pool of mortgages; thereby losing its individual identity as a note between a lender and a borrower. The note instead merged with other unknown notes as a total obligation due to the investor or investors. The note is no longer a negotiable instrument, but collateral for a Federally regulated Security under the confines of the SEC.

4.  Mortgage Electronic Registration Systems, Inc., was not the "nominee" for the lender, but was the agent for the servicers. The true lenders were investors who had provided the funds for the loans through Mortgage Backed Security pools (MBS), which were held as trusts. This fact was known to Mortgage Electronic Registration Systems, Inc., and the purported lender and the subsequent assignee of any and all rights purported to have been assigned by Mortgage Electronic Registration Systems, Inc. This fact was also known at the time the note and mortgage was signed by Third Party Plaintiff(s) and at the time of each and every such later purported assignment by Mortgage Electronic Registration Systems, Inc., of any interest in the note.

5.  The original purported "lender" Atlantic Stewardship Bank, the servicers, such as GMAC Mortgage, LLC, and the nonexistent entity at the time, GMAC Bank, did not fund the loan with any of its own assets and is not owed any of the funds to be repaid by the Third Party Plaintiff(s). The Servicers and Mortgage Electronic Registration Systems, Inc., do not stand to suffer any loss should they be enjoined from foreclosing on real estate and have no right to foreclose on behalf of unknown investors because of a lack of agency, lack of authority and lack of knowledge of whether the note has been discharged.[3]

---

[3] The logical question raised is "what does the Servicer, like GMAC Mortgage, LLC have to gain by foreclosing." The Answer comes from the plain language of the standard Prospectus and Pooling and Service Agreements, which allow the Servicers to keep the proceeds of the foreclosures when the MBS has been closed or the investors paid off.

**Exhibit B**

6. Third Party Plaintiff(s) were entitled to information regarding all of the profits, payments, kick-backs, fees and insurance and credit default swaps related to the transaction which included the identity of the investors providing the funds loaned, and the concealment of those facts by all the Third Party Defendant(s) who originated, serviced, aggregated and/or securitized the loans was an intentional misrepresentation and/or intentional material omission of fact by those Third Party Defendant(s) for the purpose of using the signature on a note to defraud the investors and the Third Party Plaintiff(s) even thought the loan had yet to be created or originated.

7. Due to the non existence of the entity named GMAC Bank at the time of the first assignment, it is presently unknown where and by whom the note is being held, for the same reason the mortgage could not be held by MERS, a nominee of a phantom.

8. If Third Party Defendant(s) would argue, that MERS held only the mortgage and not the note, that MERS was not in a position to assign or transfer the note to the Third Party Defendant(s) GMAC MORTGAGE, LLC, and for that reason Third Party Defendant(s) therefore cannot have acquired the note. Without the note, Third Party Defendant(s) GMAC MORTGAGE, LLC do not have standing to proceed with the foreclosure. The concepts underlying those arguments are not particularly controversial. The law recognizes the distinction between the debt itself and the pledging of collateral to secure the debt. Logically, the right to enforce mortgage would have to be based on ownership of the underlying debt.

## COUNT FIVE

Third Party Plaintiff(s) have no record or evidence that they received the Loan[4]. In fact Third Party Plaintiff(s) NEVER received a "Loan" from original lender, present foreclosing servicer, or from any of the Third party

---

[4]In accordance with the Supreme Court's mandate in *Grogan.* Black's Law Dictionary [HN7] defines "loan" as "an act of lending; a grant of something for temporary uses . . . A thing lent for the borrower's temporary use; esp., a sum [**9] of money lent at interest. . . ." Black's Law Dictionary 947 (7th ed. 1999). At common law, "loan" was defined as something, such as money, lent to another with an obligation to repay. *See Chambers*, 348 F.3d at 657 (stating that the Seventh Circuit uses the common law definition of "loan"); *Mehta*, 310 F.3d at 313 (stating that a loan is "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date.")); see also *In re Renshaw*, 222 F.3d 82, 88.(2d Cir. 2000) (citing *In re Grand Union Co.*, 219 F. 353, 362 (2d Cir. 1914)) (defining "loan" under common law). The common law definition adopted by the Seventh Circuit is the same definition as the Second and Third Circuits have adopted in *Mehta* and *Renshaw. Chambers*, 348 F.3d at 657 (citing *Grand Union*, 219 F. at 362 as paraphrased by *Renshaw*, 222 F.3d at 88).

Exhibit B

Defendant(s) in this matter. The original lender never actually loaned any money to the Third Party Plaintiff(s).

Third Party Plaintiff(s) have no record or evidence that consideration was ever given in exchange for the Note.

Third Party Plaintiff(s) demand that Atlantic Stewardship Bank produce a record of such consideration or legal

tender that was allegedly given to Third Party Plaintiff(s) either before or even at the time of signing the loan

documents or anytime after. The original lender Atlantic Stewardship Bank was never owed or paid any money

under the terms of the Note. The Mortgage sat for years in the name of an entity, MERS, for which Third Party

Plaintiff(s) owed no money and which would never be beneficiary under the Note.

## COUNT SIX

### Mortgage Electronic Registration Systems, Inc. v. Mortgage Electronic Registration Systems Inc.

1. On March 8, 2006, JAMES M. O'BRIEN, Assistant Vice President of Atlantic Stewardship Bank, executed an
Assignment of Mortgage to Mortgage Electronic Registration Systems, Inc.,(MERS 1)  the assignment of
mortgage was recorded in the records of the Passaic County Clerk on March 22, 2006, (Exhibit A) naming
Mortgage Electronic Registration Systems, Inc., as the Assignee of the Mortgage dated March  8, 2006.
The assignment contains a comma in the corporate name of Mortgage Electronic Registration Systems, Inc.
On October 9, 2009 a second assignment was recorded by PHELAN HALLINAN AND SCHMIEG attorneys
for GMAC MORTGAGE, LLC. This assignment lacks the comma in the corporate name of Mortgage
Electronic Registration Systems Inc. making it two different corporate entities. The latter assignment was
signed by Judith T. Romano who claims to occupy the office of Assistant Secretary and Vice President for
Mortgage Electronic Registration Systems Inc., (MERS 2). Judith T. Romano is an attorney and an employee
of PHELAN HALLINAN AND SCHMIEG office in Philadelphia, PA.

2. A corporate record search of every state revealed that there was a record of an entity Mortgage Electronic
Registration Systems Inc. (MERS 2) registered in the state of Indiana and a name reservation for same in the
state of Oklahoma. This is a Dishonor in Commerce, Fraud in the factum, Fraud in the execution, Fraudulent
Conversion, Fraud, Racketeering, and Conspiracy, and we believe there is no evidence to the contrary.

**Exhibit B**

## COUNT SEVEN

Third Party Defendant(s) Atlantic Stewardship Bank via JAMES M. O'BRIEN, Assistant Vice President, on March 14, 2006 executed an indorsement/allonge on the Note made payable to GMAC Bank, the indorsement was witnessed, acknowledged and certified by JOHN H. KRANTZ, Assistant Vice President. The Note was negotiated by the indorsement/allonge to GMAC Bank effectively selling the Note to GMAC Bank. From that point on, Third Party Plaintiff(s) did not owe any debt to Atlantic Stewardship Bank since Atlantic Stewardship Bank sold the Note and thereby knowingly, intelligently and willfully, with full knowledge of the consequences thereof, discharged Third Party Plaintiff(s) as the Obligor(s).

## COUNT EIGHT

The proceeds from the sale of Third Party Plaintiff's Note were and are the ONLY funds used to pay off the former Fraudulent liens on the Property.

## COUNT NINE

Third Party Defendant(s) prepared a Note, had the Third Party Plaintiff sign the Note, this becoming the ONLY money and/or valuable consideration, however, the consideration was never given to Third Party Plaintiff to use. Original lender used Third Party Plaintiff's money to purchase the existing fraudulent liens on Third Party Plaintiff s property, so the original lender and subsequently Third Party Defendant Mortgage Electronic Registration Systems, Inc. could allegedly hold the liens in their name. This is a Dishonor in Commerce, Fraud in the factum, Fraud in the execution, Fraudulent Conversion, Fraud, Racketeering, and Conspiracy, and we believe there is no evidence to the contrary.

## COUNT TEN

Third Party Plaintiff(s) do not have any record or evidence that Third Party Defendant's own accounting will not prove conclusively that neither the original lender, current servicing agent nor any other Third Party Defendant by and through their *ens legis*[5] ever loaned Third Party Plaintiff(s) any money.

---

[5] *See:* Black's Law Sixth Edition: A creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law.

Exhibit B

## COUNT ELEVEN

Third Party Defendant Atlantic Stewardship Bank (the original lender) placed an indorsement on Third Party

Plaintiff's Note by stamping or typing "PAY TO THE ORDER OF GMAC Bank" and "WITHOUT

RECOURSE" and as such made a payment[6] thereby knowingly, intelligently and willfully, with full

knowledge of the consequences thereof, discharged Third Party Plaintiff(s) as the Obligor(s). *See:* Black's Law

Sixth Edition:

> The Federal Reserve Board defines a check as "a draft or order upon a bank or
> banking house purporting to be drawn upon a deposit of funds for the
> payment at all events of a certain sum of money to a certain person therein named or to him
> or his order or to bearer and payable instantly on demand." It must contain the
> phrase "pay to the order of."

## COUNT TWELVE

Third Party Plaintiff(s) do not have any record or evidence that Third Party Defendant's did not re-sell Third

Party Plaintiff's Note to access additional funds as defined in the concept of "fractionalized banking."

## COUNT THIRTEEN

1. Third Party Plaintiff(s) do not have any record or evidence that Third Party Defendant(s) nor Third Party

Defendants' *ens legis*, are the Holder-In-Due-Course of the Note as defined within N.J. Stat. § 12A:3-302.

2. Third Party Defendant(s) did not and could not attain holder-in-due-course status and failed to meet the two

requirements  of holder-in-due-course (1) assigned a negotiable instrument and (2) meets the holder-in-due-

course requirements of Article 3 of the UCC. The basic requirements for a note to be a negotiable instrument

are outlined in § 12A:3-104(a). If the note fails to meet anyone these detailed requirements, it is not a negotiable

instrument, and there cannot be a holder in due course of that instrument.

---

[6] N.J. Stat §12A:3-602. PAYMENT.
(a) Subject to subsection (b), an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the
instrument, and (ii) to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to
pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under Section 3-306 by
another person.

**Exhibit B**

## COUNT EIGHTEEN

Third Party Defendant(s), jointly or separately, by and through their *ens legis,* are knowingly, intelligently and willfully committing fraud upon this Court in furtherance of Third Party Defendant(s) crimes and fraudulent activities by attempting to appear as the HOLDER IN DUE COURSE in this matter.

## COUNT NINETEEN

Third Party Defendant(s), jointly or separately, by and through their *ens legis,* are in 'DEFAULT' and/or Breach of Contract of the "Loan" in question since none of the Third Party Defendant(s), jointly or separately, by and through their *ens legis,* have EVER supplied the money for said "Loan" to Third Party Plaintiff(s).

## COUNT TWENTY

Third Party Defendant(s), jointly or separately, by and through their *ens legis,* and Third Party Defendants' attorneys' crimes have defrauded the State of New Jersey out of revenue derived from property taxes due to Third Party Defendants' criminal and fraudulent acts causing property values to greatly decrease. This is a Dishonor in Commerce, Fraud in the factum, Fraud in the execution, Racketeering, and Conspiracy, and we believe there is no evidence to the contrary.

## COUNT TWENTY ONE

Pursuant to Respondeat Superior[7] doctrine and Vicarious Liability[8] all Third Party Defendant(s) as well as their lawyers PHELAN HALLINAN AND SCHMIEG, PC, their respective BOARD OF DIRECTORS and OFFICERS as well all members that are/were involved in False, Fraudulent & Fabricated Mortgage Assignments and filing of false claims in court, are fully responsible individually and severally for their

---

[7] *See*: Black's Law Sixth Edition: Respondeat Superior. Let the master answer. This doctrine or maxim means that a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent. Burger Chef Systems, Inc. v. Govro, C.A.Mo., F.2d 921, 925. Under doctrine an employer is liable for injury to person or property of another proximately resulting from acts of employee done within scope of his employment in the employer's service. Mid-Continent Pipeline Co. v. Crauthers, Okl., 256 P.2d 568, 571.

[8] *See*: Black's Law Sixth Edition: Vicarious Liability. The imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons. Indirect or imputed legal responsibility for acts of another; for example, the liability of an employer for the acts of an employee, or, a principal for torts and contracts of an agent.

**Exhibit B**

3.    Third Party Plaintiff(s) do not have any record or evidence that Third Party Defendant(s) have met the requirements and have lawfully assigned the Note to GMAC Mortgage, LLC and in the instant case Third Party Defendant(s) filed the two fraudulent assignments, the assignee(s) could not obtain holder-in-due course status. This is a Dishonor in Commerce, Fraud in the factum, Fraud in the execution, Fraudulent Conversion, Fraud, Racketeering, and Conspiracy, and we believe there is no evidence to the contrary.

### COUNT FOURTEEN

Third Party Plaintiff(s) do not have any record or evidence that the sale of Third Party Plaintiff's Note by the original lender and the purported "Loan" called the dormant Mortgage are not two (2) separate transactions.

### COUNT FIFTEEN

Third Party Defendant(s) jointly or separately by and through their *ens legis*, knowingly, intelligently and willfully committed fraud to cause Third Party Plaintiff(s) and this Court to believe the Note and Mortgage were part of one (1) the same transaction.

### COUNT SIXTEEN

Third Party Plaintiff(s) have been paying Plaintiffs, jointly or separately, by and through their *ens legis*, for an extended period of time for a "Loan" Third Party Defendant(s), jointly or separately, by and through their *ens legis*, have never supplied.

### COUNT SEVENTEEN

Third Party Defendant(s), jointly or separately, by and through their *ens legis*, have filed and recorded false and/or fraudulent foreclosure documents in the Passaic County Recorder's Office in furtherance of Third Party Defendant(s), jointly or separately, by and through their *ens legis'*, criminal and fraudulent activities against Third Party Plaintiff's real property.

**Exhibit B**

Disingenuous & Falsity of Their & Their Client's Pleadings, Motions, Affidavits, Assignments & Arguments which are Fraud on the court, Dishonor in Commerce, Fraud in the factum, Fraud in the execution, Fraudulent Conversion, Fraud, Racketeering, Conspiracy and we believe there is no evidence to the contrary.

## COUNT TWENTY TWO

1. Third Party Plaintiff(s) have no record or evidence that Third Party Defendant(s) did not fail disclose to Third Party Plaintiff(s) the fact that the loan was meant to fund an MBS and therefore was a "material disclosure" which was deliberately and intentionally undisclosed. The failure to disclose the identity of the true lender at closing was also a "material disclosure;" the nature of which would make the contract voidable under New Jersey contract law. This is a Dishonor in Commerce, Fraudulent Conversion, Racketeering, and Conspiracy, and we believe there is no evidence to the contrary.

2. Third Party Defendant(s), the Servicers, like GMAC Mortgage, LLC, are merely administrative entities which collect the mortgage payments and escrow funds. The MBS have signed themselves up under oath with the Securities and Exchange Commission ("SEC,") and the Internal Revenue Service ("IRS,") as mortgage asset "pass through" entities wherein they can never own the mortgage loan assets in the MBS. This allows them to qualify as a Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT"). As long as the MBS is a qualified REMIC, no income tax will be charged to the MBS. For purposes of this action, "Trust" and MBS are interchangeable. We believe there is no evidence to the contrary.

## COUNT TWENTY THREE

Third Party Plaintiff(s), have no record or evidence that Third Party Defendant(s) have capacity or authority to sue and Third Party Defendant(s) must show capacity or authority to sue. We deny that such

**Exhibit B**

capacity[9] or authority exists in this case. This specific negative averment response is made based on the personal knowledge and outlined facts in this Compulsive Counterclaim.

## COUNT TWENTY FOUR

## SUBJECT MATTER JURISDICTION

Third Party Plaintiff(s), have no record or evidence that the court has subject matter jurisdiction. Third Party Plaintiff(s) challenge court's subject matter jurisdiction and the burden is on the Third Party Defendant(s) to prove jurisdiction. As noted above, the question of standing implicates the court's subject matter jurisdiction. Donahue v. City of Boston, 304 F.3d 110 (1st. Cir 2002); see Zurich Insurance Company, supra. Accordingly, the court must resolve jurisdictional questions before reaching the merits. An objection to subject matter jurisdiction is not waivable and may be raised at any time, even on appeal. Barrett ex rel. Estate of Barrett v. U.S., 462 F.3d 28 (1st Cir. 2006). Defective standing also cannot be cured by substitution of the real party in interest. Zurich [*12] Insurance Company, v. Logitrans, Incorporated, et al., 297 F.3d 528 (6th Cir. 2002). United States Supreme Court in Davis v. Cleveland, Cincinnati, Name & St. Louis Ry. Co., 217 U. S. 157, as follows:

> "In other words, it is contended that the person over whom personal jurisdiction has not been obtained cannot appear specially to set aside the attachment of his property, which we must assume in order to completely exhibit the contention, is valid. We

---

[9] A party who wishes to raise an issue as to capacity must do so by specific negative averment, and since it is a threshold defense, somewhat analogous to lack of personal jurisdiction or improper venue, it should be considered as waived under Rule 12(h)(1) if not raised by a preliminary motion before trial.". Although an objection to a party's capacity is not an affirmative defense, it can be analogized to an affirmative defense and treated as waived if not asserted by motion or responsive pleading. Early waiver is necessary to give meaning to the requirement in Fed. R. Civ. P. 9(a) that capacity must be put in issue by a "specific negative averment." Moreover, an objection to capacity should fall within the class of "threshold defenses" - issues that must be raised and disposed of at the outset of the suit. ("[P]roper enforcement of the rule requires early waiver of the right to object to capacity."). Every court that has addressed the issue (to our knowledge) has held that a party who does not raise the lack-of-capacity defense before trial forfeits [*350] it after trial. See, e.g., Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc., 929 F.2d 343, 345-46 (7th Cir. 1991); MTO Mar. Transp. Overseas, Inc. v. McLendon Forwarding Co., 837 F.2d 215, 218 (5th Cir. 1988); Summers v. Interstate Tractor & Equip. Co., 466 F.2d 42, 49 (9th Cir. 1972); see also 6A Charles Alan Wright et al., Federal Practice and Procedure § 1559 (2d ed. 1990)

Exhibit B

cannot concur in the contention. It is supported, it is true, by some cases, but it is opposed by more. Drake on Attachments, SS 112, and cases cited. The stronger reasoning we think too is against the contention. A court without personal **service** can acquire no jurisdiction over the person, and when it attempts to assert jurisdiction over property it should be open to the defendant to specially appear to contest its control over such property; in other words to contest the ground of its jurisdiction. The jurisdiction of the court, therefore, depended upon the <u>attachment</u>, and the appearance to set that aside was an appearance to object to the jurisdiction. In other words, the defendant was only in court <u>through its property</u>, and <u>it appeared specially to show that it was improperly in court.</u>"

A multitude of authorities support this rule. I cite but a few of the many, and have selected those mainly because of their full and enlightening discussion of the question. 2 R. C. L. 332, SS 12; <u>Adams v.</u> {175 Wash. 405, 410} <u>Trepanier Lumber Co.</u>, 117 Ohio 298, 158 N. E. 541, 55 A. L. R. 1118, and an exhaustive note following; <u>Coffman v. Brandhoeffer</u>, 33 Neb. 279, 50 N. W. 6; <u>Belknap v. Charlton</u>, 25 Ore. 41, 34

"Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action." *Melo* v. *US*, 505 F2d 1026. " Where there is no jurisdiction over the subject matter, there is no discretion to ignore that lack of jurisdiction." *Joyce* v. *US*, 474 F2d 215. " Generally, a plaintiff's allegations of jurisdiction are sufficient, but when they are questioned, as in this case, the burden is on the plaintiff to prove jurisdiction.." *Rosemond* v. *Lambert*, 469 F2d 416. "Judgment rendered by court which did not have jurisdiction to hear cause is void ab initio." *In Re Application of Wyatt*, 300 P. 132; *Re Cavitt*, 118 P2d 846. " It is elementary that the first question which must be determined by the trial court in every case is that of jurisdiction." Clary v. Hoagland, 6 Cal.685; *Dillon* v. *Dillon*, 45 Cal. App. 191,187P. 27. "A departure by a court from those recognized and established requirements of law, however close the apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is as much an "excess of jurisdiction" as where there exists an inceptive lack of power." *Wuest* v. *Wuest*, 53 Cal. App. 2d 339,127P.2d 934.

"A judgment rendered in violation of due process is void." World Wide Volkswagen v Woodsen, 444 US 286, 291; National Bank v Wiley, 195 US 257; Pennoyer v Neff, 95 US 714, and "...the requirements of due process must be met before a court can properly assert in personam jurisdiction." Wells Fargo v Wells Fargo, 556 F2d 406, 416. The legal encyclopedia Corpus Juris Secundum informs in its volume 16D, section 1150 on Constitutional Law: "Only by due process of law may courts acquire jurisdiction over parties." 16D CJS Const. Law, §1150.

**Exhibit B**

In In re Murchison, 349 U.S. 133 (1955) the Court made clear: A fair [**41] trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . Circumstances and relationships must be considered. This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.' Tumey v. Ohio, 273 U.S. 510, 532. To perform its high function in the best way 'justice must satisfy the appearance of justice.' Offut v. U.S., 348 U.S. 41.

## OPPORTUNITY TO CURE UPON WHICH RELIEF CAN BE GRANTED

Third Party Defendant(s) have 21 calendar days after service to cure their Dishonor by the following:

1. Dismiss any and all claims against the Third Party Plaintiff(s), with prejudice, restore any and all derogatory credit reporting and/or public filing, release any and all collateral/real estate liens in question on property, reimburse Third Party Plaintiff(s) for all court costs, filing fees and expenses associated with said case.

2. Pay all damages as indicated by the counterclaim damages contained herein with Money, Surrender any and all Public Hazard Bonds, other Bonds, Insurance Policies, 801K, etc. as needed to satisfy counterclaim herein, OR,

3. Pay the amount of Five Hundred Thirty Four Thousand dollars ($534,000), OR,

4. Prove your claims against Third Party Plaintiff(s) by providing Third Party Plaintiff(s) with lawfully documented evidence that is certified true and correct, by (Officers of the Court), in their unlimited commercial liability, while Under Oath, On and For the Official Record, under penalties of the law including Perjury. This evidence must prove your case by a preponderance or the greater weight of evidence and must answer each and every count/averment, Point by Point individually. If any and all points are not answered fully and accompanied by lawfully documented evidence, as provided herein, that will be Default on the part of the Third Party Defendant(s). Non Response according to the conditions herein will be Default. Incomplete answers and/or lack of documented evidence as outlined herein will be Default. If the Third Party Defendants fail to respond as outlined herein, within 21 calendar days after service, this will be Default. Non Response will be a Self Executing Confession of Judgment by all Third

Exhibit B

Party Defendant(s), and will be complete agreement with all the statements, terms, and conditions of this contract. All Third Party Defendant(s) are jointly and severally liable for this claim.

## COUNTERCLAIM DAMAGES

A DEMAND FOR THE FOLLOWING DAMAGES IS HEREBY BEING MADE AND MAY BE ASSESSED AGAINST YOU SHOULD YOU FAIL TO MEET THE REQUIREMENTS AS PROVIDED IN THE OPPORTUNITY TO CURE CONTAINED HEREIN:

1. Fail ure to state a claim upon which relief can be granted - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

2. Fail ure to respond as outlined herein - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

3. Defau lt by non-response or incomplete response - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

4. Dishono r In Commerce - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

5. Fraud - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

6. Racketee ring - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

7. Extor tion - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

8. Denia l of Due Process - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

9. Collu sion - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

10. Conspiracy - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

11. Public Humiliation - $10,000.00 (Ten Thousand US Dollars) per count, per violation, Per Third Party Defendant.

12. Punitive damages will be assessed as the total amount of the damages as outlined herein times three. Punitive damages will be added to the original amount of damages.

Exhibit B

## CERTIFICATION PURSUANT TO RULE 4:5-1

The matter in controversy in this complaint is not subject of any other action pending in any other Court nor is it the subject of a pending Arbitration proceeding. I certify that the foregoing statements made by me are true.

By: _____
Ariel Barel

By: _____
Karen Barel

Dated: December 6, 2010

## CERTIFICATION OF SERVICE

I, the undersigned, mailed to Phelan Hallinan & Schmieg at 400 Fellowship Road, Suite 100, Mount Laurel, NJ 08054, the herein First Amended Answer With Affirmative Defenses To Complaint And Third Party Compulsory Counterclaim with its enclosures by Certified mail RR #70101060000243499598, by depositing same in the U.S. Post Office in Wayne, New Jersey on the date listed below.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
Ariel Barel

Dated: December 6, 2010

**Exhibit B**



RECORD AND RETURN TO:
ATLANTIC STEWARDSHIP BANK
RESIDENTIAL MORTGAGE DEPT.
630 GODWIN AVENUE
MIDLAND PARK, NJ 07432



009UMC

# ASSIGNMENT OF MORTGAGE

Lender's Loan Number: 601477402
MIN: 1000375060147740214

MERS Phone:1-888-679-6377

FOR VALUE RECEIVED, Atlantic Stewardship Bank, its successors and assigns, hereby assigns and transfers to Mortgage Electronic Registration Systems, Inc., its successors and assigns, as nominee for GMAC Bank, its successors and assigns, 100 Witmer Road, Suite 91, Horsham, PA 19044, all its right, title and interest in and to a certain mortgage executed by KAREN BAREL AND ARIEL BAREL, to Atlantic Stewardship Bank for and in consideration of the sum of $255000.00 and bearing the date of March 8, 2006. Said Mortgage is to be recorded simultaneously in the Clerk/Register's Office of the County of PASSAIC, State of New Jersey.

M-7362 pg 289

ATLANTIC STEWARDSHIP BANK

By JAMES M. O'BRIEN
ASSISTANT VICE PRESIDENT

State of New Jersey, County of Bergen

I certify that on March 8, 2006 JOHN S. KRANTZ
personally came before me and stated under oath to my satisfaction that:

a) this person was the subscribing witness to the signing of this instrument
b) this instrument was signed by JAMES M. O'BRIEN
   who is ASSISTANT VICE PRESIDENT of Atlantic Stewardship Bank,
   the entity named in this instrument, and was fully authorized to and
   did execute this instrument on its behalf;
c) the subscribing witness signed this proof under oath to attest to the
   truth of these facts.

Signed and sworn to before me on
March 8, 2006

_Elizabeth M. Lamb_
Notary

JOHN S. KRANTZ
ASSISTANT VICE PRESIDENT

**Exhibit B**

Intervening Assignment: This assignment is not subject to the requirements of section 275 of the real property law because it is an assignment in the secondary mortgage market.

ELIZABETH M. LAMB
NOTARY PUBLIC OF NEW JERSEY
COUNTY OF PASSAIC
MY COMMISSION EXPIRES NOV. 4, 2009
ID # 2171730

INST. NO.: 2006026231   REC. DATE: 3-22-06

KAREN BROWN
CLERK
PASSAIC COUNTY
New Jersey
INSTRUMENT NUMBER
2006026232
RECORDED ON
Mar 22, 2006
9:38:40 AM
BOOK:A8206
PAGE:289
Total Pages: 1

NJ PRESERVATION           $10.00
ACCOUNT
RECORDING FEES -          $30.00
RECORDER OF DEEDS
TOTAL                     $40.00
INV: 518710 USER: ML

END OF DOCUMENT

# Exhibit A

# Exhibit A

Exhibit B

# Exhibit B

# Exhibit B

Exhibit B



INSTRUMENT NUMBER 2008058180
RECORDED ON
039, 2008
PAGE:204
BOOK:AS263
PAGE=1:02:57 Am

KAREN BROWN
CLERK
PASSAIC COUNTY
New Jersey

N.J. PRESERVATION
RECORDING FEES -
TYPE OF DEED:
PAID
Total Pages: 2

$15.00
$255.00
$30.00

WHEN RECORDED MAIL TO:
*PHELAN HALLINAN & SCHMIEG*
400 Fellowship Road
Suite 100
Mt. Laurel, NJ 08054
LOAN NO.
F & P #GMAC-2443

## ASSIGNMENT OF MORTGAGE

005CFE

FOR VALUE RECEIVED, **Mortgage Electronic Registration Systems Inc. as a nominee for GMAC Bank its successors and assigns,** the undersigned, as beneficiary or successor thereto, whose address is **P.O. Box 2026 Flint MI 48501,** hereby grants, conveys, assigns and transfers unto **GMAC MORTGAGE, LLC,** whose address is **c/o of GMAC Mortgage Corporation, 1100 Virginia Drive, Fort Washington, PA 19034,** its successors and assigns, all beneficial interest under that certain Mortgage dated March 8, 2006. Said Mortgage is recorded in the State of New Jersey, County of **PASSAIC.**

*Mortgage Recorded:* March 22, 2006
*Original Mortgage Company:* ATLANTIC STEWARDSHIP BANK, ITS SUCCESSORS AND ASSIGNS
*Original Mortgagors:* KAREN BAREL AND ARIEL BAREL
*Original Loan Amount:* $255,000.00
*Book:* M7362
*Page:* 281
*Property Address:* 114 WARBLER DRIVE, WAYNE, 07470

*TOGETHER* with the Bond, Note, or other Obligation therein described or referred to, and the money due and to become due thereon, with the interest.

*TO HAVE AND TO HOLD* the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

Exhibit B

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

*Witnessed or Attested by:*

_(signature)_ _T. Romano_ (Seal)
Judith T Romano,            Assistant Secretary
and Vice President

## NOTARY ACKNOWLEDGMENT

*CAPACITY CLAIMED BY SIGNER:* Assistant Secretary and Vice President

*OF*    **Mortgage Electronic Registration Systems Inc. as a nominee for GMAC Bank its successors and assigns**

*STATE OF    Pennsylvania*
*COUNTY OF Philadelphia*

On,    9/19/08    , before me, **Eugene Jaskiewicz**, a Notary Public, personally appeared Judith T Romano Assistant Secretary and Vice President, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged that he/she executed the same in her authorized capacity and that by her signature on the instrument, the entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

_(signature)_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
EUGENE JASKIEWICZ, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 13, 2012

**END OF DOCUMENT**

**Exhibit B**

# Exhibit C

# Exhibit C

**Exhibit B**

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF STATE

November 30, 2010

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING:

GMAC Bank

I, Basil L. Merenda, Secretary of the Commonwealth of Pennsylvania do hereby certify that the foregoing and annexed is a true and correct photocopy of Fictitious Name Registration

which appear of record in this department.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Seal of the Secretary's Office to be affixed, the day and year above written.

*Basil L. Merenda*

_____
Secretary of the Commonwealth

**Exhibit B**



## pennsylvania
### DEPARTMENT OF BANKING

MARKET SQUARE PLAZA | 17 N SECOND STREET, SUITE 1300 | HARRISBURG, PA 17101-2290
ph 717.787.2665  fx 717.787.8773  w www.banking.state.pa.us

November 6, 2006                    (717) 783-2253


Ms. Wendy Smith
CBC - Harrisburg
Suite B
2704 Commerce Dr.
Harrisburg, PA 17110

Dear Ms. Smith:

This will advise you that the Department of Banking (the "Department")
does not object to the use of the fictitious name "GMAC Bank."

It is understood that your client is GMAC Automotive Bank, a Utah
state-chartered bank that wishes to engage in the purchase,
origination, or sale of loans including mortgage loans, residential
construction and lot loans, commercial real estate loans, educational
loans, and lines of credit. It is further understood that your client
is authorized to do business in the Commonwealth of Pennsylvania.

The Department's position is based on the facts, conditions, and
representations made in your facsimile of October 31, 2006, and
subsequent statements you made to me over the telephone on November 6,
2006. Any changes in those facts, conditions, or representations
could result in a reversal of the Department's position.

                    Very truly yours,

                    Leonard C. Bayich
                    Administrator - Corporate
                    Applications Division

LCB:kse


> **Exhibit B**

Entity #: 3699591
Date Filed: 11/07/2006
Pedro A. Cortês
Secretary of the Commonwealth

**PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU**

## Application for Registration of Fictitious Name
54 Pa.C.S. § 311

Corporation Service Company

Document will be returned to the
name and address you enter to
the left.

Commonwealth of Pennsylvania
FICTITIOUS NAME 4 Page(s)

Fee: $70

T0631264012

In compliance with the requirements of 54 Pa.C.S. § 311 (relating to registration), the undersigned entity(ies) desiring to register a fictitious name under 54 Pa.C.S. Ch. 3 (relating to fictitious names), hereby state(s) that:

1. The fictitious name is:
GMAC Bank

2. A brief statement of the character or nature of the business or other activity to be carried on under or through the fictitious name is:
Please see attached.

3. The address, including number and street, if any, of the principal place of business (P.O. Box alone is not acceptable):

| 6985 Union Park Center, Suite 435 | Midvale | Utah | 87047 | |
|---|---|---|---|---|
| Number and street | City | State | Zip | County |

4. The name and address, including number and street, if any, of each individual interested in the business is:

| Name | Number and Street | City | State |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

PA DEPT OF STATE

2006 OCT 25 PH12: 23

PA DEPT OF STATE

2006 NOV -7 PM 4: 29

**Exhibit B**

DSCB:54-311-2

**5. Each entity, other than an individual, interested in such business is (are):**

| GMAC Automotive Bank | Corporation | Utah |
|---|---|---|
| Name | Form of Organization | Organizing Jurisdiction |

6985 Union Park Center, Suite 435,  Midvale, UT  87047
Principal Office Address

c/o Corporation Service Company          Dauphin County, PA
PA Registered Office, if any

| | | |
|---|---|---|
| Name | Form of Organization | Organizing Jurisdiction |

Principal Office Address

PA Registered Office, if any

**6.** The applicant is familiar with the provisions of 54 Pa.C.S. § 332 (relating to effect of registration) and understands that filing under the Fictitious Names Act does not create any exclusive or other right in the fictitious name.

**7.** Optional): The name(s) of the agent(s), if any, any one of whom is authorized to execute amendments to, withdrawals from or cancellation of this registration in behalf of all then existing parties to the registration, is (are):
N/A

IN TESTIMONY WHEREOF, the undersigned  have caused this Application for Registration of Fictitious Name to be executed this

16th day of October, 2006.

| _____ | _____ |
|---|---|
| Individual Signature | Individual Signature |

| _____ | _____ |
|---|---|
| Individual Signature | Individual Signature |

GMAC Automotive Bank Corp.
Entity Name

By: _Donna M. DiCicco_____          _____
Signature                                          Entity Name

Donna M. DiCicco, Assistant Secretary          _____
Title                                          Signature

_____
Title

**Exhibit B**

### Trade Name Application

The institution will engage in the purchase, origination or sale of loans, including mortgage loans, residential construction and lot loans, commercial real estate loans, educational loans, and lines of credit; conduct wholesale floor-plan financing and mortgage warehouse lending operations; purchase retail installment sale and lease contracts; and engage in custodial trust services and other fee-based services.

**Exhibit B**