|  |  |
|---|---|
| Hearing Date: | September 11, 2013 at 10:00 a.m. (ET) |
| Objection Deadline: | August 21, 2013 at 4:00 p.m. (ET) |

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11<br>Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC a/k/a<br>RESIDENTIAL CAPITAL CORPORATION, et al. | (Jointly Administered) |
| Debtors. | |

-------------------------------------------------------------------x

### SECOND INTERIM APPLICATION OF SILVERMANACAMPORA LLP, SPECIAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FROM JANUARY 1, 2013 THROUGH APRIL 30, 2013

### SUMMARY SHEET PURSUANT TO THE UNITED STATES TRUSTEE GUIDELINES

| | |
|---|---|
| Name of Applicant: | SilvermanAcampora LLP |
| Role in Case: | Special Counsel to Official Committee of Unsecured Creditors |
| Retainer Paid: | None |
| Application Period: | January 1, 2013 to April 30, 2013 |
| Fees Requested: | $315,950.00 |
| Expenses Requested: | $1,613.51 |
| Total Amount Requested: | $317,563.51 |

**FEE APPLICATION:**

| Names of Professionals and Paraprofessionals | Year Admitted | Hours | Rate | Total for Application |
|---|---|---|---|---|
| Kenneth P. Silverman, Esq., Partner | 1981 | 2.00 | $650.00 | $1,300.00 |
| Anthony C. Acampora, Esq., Partner | 1984 | 11.20 | $595.00 | $6,664.00 |
| Ronald J. Friedman, Esq., Partner | 1997 | 40.60 | $550.00 | $22,275.00[1] |
| Gerard R. Luckman, Esq., Partner | 1994 | 0.50 | $550.00 | $275.00 |
| Robert D. Nosek, Esq., Counsel | 1999 | 94.70 | $425.00 | $40,247.50 |
| Brett S. Silverman, Esq., Associate | 2001 | 73.00 | $340.00 | $24,820.00 |
| Justin Krell, Esq., Associate | 2007 | 8.80 245.90 | $310.00 $340.00 | $2,728.00 $83,606.00 |
| Sheryl P. Giugliano, Esq., Associate | 2009 | 33.10 | $325.00 | $10,757.50 |
| Cooper J Macco, Esq., Associate | 2013 | 10.90 | $200.00 | $2,180.00 |
| Jessi L. Kleinman, Esq., Associate | 2013 | 7.00 | $200.00 | $1,400.00 |
| Brian Powers, Esq., Associate | 2013 | 5.60 432.30 | $150.00 $200.00 | $840.00 $86,460.00 |
| Christopher J. Rubino, Esq., Associate | 2013 | 110.50 | $200.00 | $22,100.00 |
| Sara Greenberg, Paralegal | N/A | 8.80 | $175.00 | $1,540.00 |
| Lynne M. Manzolillo, Paralegal | N/A | 17.40 | $195.00 | $3,393.00 |
| Berlinda Pierre-Louis, Paralegal | N/A | 24.50 | $195.00 | $4,777.50 |
| Linda S. Tumino, Paralegal | N/A | 2.50 | $195.00 | $487.50 |
| Gina Maria Damoulis, Legal Assistant | N/A | 0.80 | $110.00 | $88.00 |

---

[1]    Due to a computer error in the Applicant's time-keeping software, a total of Fifty Five ($55) Dollars (the "Waived Amount") was not included in the monthly total for Ronald J. Friedman, Esq., as reflected in Applicant's January Statement (as that term is defined in the Application).  Applicant has determined to waive this amount, and the Application does not seek reimbursement of the Waived Amount.

BPOWERS/1334137.1/062429

| Names of Professionals and Paraprofessionals | Year Admitted | Hours | Rate | Total for Application |
|---|---|---|---|---|
| Melissa Cohen, Legal Assistant | N/A | 0.10 | $110.00 | $11.00 |
| | | | | |
| ATTORNEY TOTALS WITH BLENDED HOURLY RATE | | 1043.00 | $282.74 | $294,895.50 |
| ALL TIMEKEEPER TOTALS WITH BLENDED HOURLY RATE | | 1130.20 | $279.55 | $315,950.00 |
| **TOTAL FEES REQUESTED TO BE AWARDED** | | | | **$315,950.00** |
| **TOTAL EXPENSES REQUESTED TO BE AWARDED** | | | | **$1,613.51** |
| **TOTAL FEES AND EXPENSES REQUESTED TO BE AWARDED** | | | | **$317,563.51** |

Hearing Date:                September 11, 2013 at 10:00 a.m. (ET)
Objection Deadline:          August 21, 2013 at 4:00 p.m. (ET)

SILVERMANACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Ronald J. Friedman
Robert D. Nosek
Justin S. Krell

*Special Counsel for the*
*Official Committee of Unsecured Creditors*
*of Residential Capital, LLC, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                    Chapter 11
                                          Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC a/k/a
RESIDENTIAL CAPITAL CORPORATION, et al.    (Jointly Administered)

                              Debtors.
-------------------------------------------------------------------x

**SECOND INTERIM APPLICATION OF SILVERMANACAMPORA LLP, SPECIAL
COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
INTERIM ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES
RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY
EXPENSES INCURRED FROM JANUARY 1, 2013 THROUGH APRIL 30, 2013**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

SilvermanAcampora LLP ("**Applicant**"), special counsel to the Official Committee of

Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors in

possession (collectively, the "**Debtors**") in the above-referenced chapter 11 cases, (these

"**Chapter 11 Cases**"), respectfully submits its second application for an interim allowance of

compensation and reimbursement of expenses (this "**Application**") pursuant to the provisions of

sections 330(a) and 331 of Title 11, United States Code (the "**Bankruptcy Code**"), Rule 2016 of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the

"**UST Guidelines**"), and the Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals [Docket No. 797] entered in these Chapter 11

Cases (the "**Interim Compensation Order**"), and respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

### BACKGROUOND

3.      On May 14, 2012 (the "**Petition Date**"), the Debtors filed separate voluntary

petitions for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue

to operate their businesses and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

4.      On May 16, 2012, the United States Trustee for the Southern District of New

York (the "**U.S. Trustee**") appointed the Committee by selecting the following nine parties to

serve as members of the Committee: (i) Wilmington Trust, N.A.; (ii) Deutsche Bank Trust

Company Americas; (iii) The Bank of New York Mellon Trust Company, N.A.; (iv) MBIA

Insurance Corporation; (v) Rowena L. Drennen; (vi) AIG Asset Management (U.S.), LLC; (vii)

U.S. Bank National Association; (viii) Allstate Life Insurance Company; and (ix) Financial

Guaranty Insurance Corporation.

5.      On November 16, 2012, Applicant filed an Application of the Official Committee

of Unsecured Creditors for Order Authorizing and Approving the Retention of

SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors

*Nunc Pro Tunc* to October 25, 2012 [Docket No. 2216] (the "**Retention Application**"). On November 30, 2012, this Court entered the Order Authorizing and Approving the Retention of SilvermanAcampora LLP as Special Counsel to the Official Committee of Unsecured Creditors *Nunc Pro Tunc* to October 25, 2012 [Docket No. 2315] (the "**Retention Order**"). Pursuant to the Retention Order, Applicant represents the Committee in connection with issues and matters relating to the Debtors' current and former borrowers (collectively, the "**Borrowers**").

6.    On March 14, 2013, Applicant filed its first interim application (the "**First Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from October 25, 2012 through December 31, 2012 (the "**First Interim Fee Period**"). In the First Interim Fee Application, Applicant sought the interim allowance of fees in the aggregate amount of $59,525.00 (the "**First Interim Fees**"), and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $129.32 (the "**First Interim Expenses**").

7.    By this Court's order dated April 23, 2013, the First Interim Fees and the First Interim Expenses were allowed in full (the "**First Interim Fee Order**"). Pursuant to the First Interim Fee Order, Applicant received payment from the Debtors for (i) the full amount of the First Interim Expenses, and (ii) the full amount of the First Interim Fees subject to a 10% holdback.

8.    The statutory predicate for the relief requested herein is Bankruptcy Code sections 330 and 331, Rule 2016 of the Bankruptcy Rules, and Rule 2016-1 of the Local Bankruptcy Rules.

**APPLICANT'S FEE STATEMENTS**

9.    Applicant maintains computerized records of the time spent by all of Applicant's attorneys and paraprofessionals in connection with the representation of the Committee. Subject

to redaction for attorney-client privilege, Applicant has submitted monthly fee statements (the "**Monthly Fee Statements**") to the Notice Parties (as that term is defined in the Interim Compensation Order) in the format specified by the UST Guidelines, allowing each of the Notice Parties an opportunity to review and object to the Monthly Fee Statements.[1]

10.    During the Application Period, Applicant provided the Notice Parties with the following Monthly Fee Statements:

- For January 1, 2013 through January 31, 2013 – fees of $78,557.50 and expenses of $128.51.

- For February 1, 2013 through February 28, 2013 – fees of $106,520.50 and expenses of $491.87.

- For March 1, 2013 through March 31, 2013 – fees of $32,380.50 and expenses of $242.23.

- For April 1, 2013 through April 30, 2013 – fees of $98,491.50 and expenses of $750.90.

### SUMMARY OF THE REQUESTED COMPENSATION AND REIMBURSEMENT OF EXPENSES

11.    This Application covers the period from January 1, 2013 through and including April 30, 2013 (the "**Application Period**") for services rendered on behalf of the Committee, and seeks an allowance of (a) compensation for professional services rendered in the amount of $315,950.00 for 1130.20 professional hours devoted to representation of the Committee in these Chapter 11 Cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $1,613.51,[2] for a

---

[1]    To date, Applicant has not received any objections to the Monthly Fee Statements.

[2]    Applicant's standard practice is to treat certain expenses as having been incurred when such obligations are recorded and reflected as payable in Applicant's accounting system. Accordingly, Applicant reserves its right to seek at a later date reimbursement of expenses incurred during the Application Period that are not included in this Application.

total interim payment of $317,563.51.[3]

12.     Applicant is a firm of twenty-six (27) attorneys, concentrating in the practice of, among other areas, bankruptcy and insolvency related matters.  In this regard, Applicant has extensive experience in representing creditors' committees, debtors, creditors, and trustees in bankruptcy proceedings before the Bankruptcy Courts in both the Southern and Eastern Districts of New York.  As a result of Applicant's extensive experience, Applicant submits that the services it rendered in these Chapter 11 Cases, as set forth below, were efficient, economical and effective.

13.     All services for which compensation and reimbursement of expenses are requested by Applicant were performed for, and on behalf of, the Committee.  Applicant has annexed to this Application as **Exhibit A**, a printout of the actual time recorded, the services rendered, the date the services were rendered, and the names of the individuals performing the services by Applicant during the Application Period on behalf of the Committee (the "**Time Records**").[4]  The Time Records list the services performed by Applicant's members, associates, paraprofessionals, and legal assistants.  The Time Records also set forth the dates when such services were rendered, the nature of the services performed and the party who performed the services, the time expended for such services, and the amount billed for such services.  The Time Records are created contemporaneously with the rendition of the services and reflect the Applicant's recorded time for the legal services rendered on behalf of the Committee.

---

[3]     Pursuant to the Interim Compensation Order, Applicant has received interim payment on account of eighty percent (80%) of accrued fees and one hundred percent (100%) of accrued expenses for the Application Period, totaling Two Hundred Fifty Four Thousand Three Hundred Seventy Three and 51/100 ($254,373.51) Dollars. Accordingly, a balance of Sixty Three Thousand One Hundred Ninety ($63,190.00) Dollars remains outstanding.

[4]     A schedule specifying the categories of fees reflecting all time entries and fees during the Application Period and the total amount for such category is included with **Exhibit B**.  A schedule specifying the categories of expenses for which Applicant is seeking reimbursement and the total amount for each such expense category is included with **Exhibit A**.

14.    The billing rate for each of the persons referenced in the Time Records is equal to the billing rate for such persons' time for similar services rendered to clients in connection with bankruptcy and non-bankruptcy matters.   Such hourly rates range from $200 to $650 for attorneys and $110 to $195 for paraprofessionals.

15.    Allowance of compensation in the amount requested herein would result in a blended hourly billing rate of approximately $279.55 for the Application Period (based on 1130.20 recorded hours at Applicant's regular billing rates in effect at the time of performance of such services).  Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience.  No premium or bonus is sought by this Application.

16.    There is no agreement or understanding between Applicant and any other person, other than the Firm's partners, for the sharing of compensation to be received for the services rendered in this case.

## COMPLIANCE WITH THE UST GUIDELINES

17.    The Application complies with the UST Guidelines as set forth in the Certification of Ronald J. Friedman, annexed hereto as **Exhibit C**.

18.    In accordance with the UST Guidelines, Applicant has divided its time records and expenditures into separate categories.

## PROFESSIONAL SERVICES RENDERED DURING APPLICATION PERIOD

19.    In this Application, Applicant seeks an interim award of (a) compensation for professional services rendered in the amount of $315,950.00 for 1130.20 professional hours devoted to its representation of the Committee in these Chapter 11 Cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $1,613.51, for a total interim award for compensation and

expenses for the Application Period of $317,563.51. During the Application Period, Applicant represented the Committee by, *inter alia*: (i) analyzing all claims filed by the Debtors' current and former borrowers (the "**Borrowers**") in the Debtors' cases, including class action claims (collectively, the "**Borrower Claims**"), in connection with performing an analysis of the Borrower Claims for the Committee; (ii) analyzing the allegations contained in, and facilitating the resolutions of, certain adversary proceedings filed by Borrowers against the Debtors (the "**Borrower Adversary Proceedings**"); (iii) communicating with Borrowers regarding specific Borrower concerns in relation to the Debtors' cases, through the creation and operation of a dedicated Borrower inquiry hotline (the "**Borrower Hotline**"); and (iv) appearing on behalf of the Committee at several hearings on Borrower Adversary Proceedings and other Borrower-related matters.

20.    The summary that follows does not constitute a complete recitation of all services which were performed by Applicant during the Application Period and serves only to summarize those services of major importance which required Applicant's special attention, efforts, and skill.

**Borrower Claims Analysis**

21.    In its representation of the Committee, Applicant reviewed and analyzed all proofs of claim filed by Borrowers against the Debtors' estates (the "**Borrower Claims**"), including approximately fifteen (15) class action claims asserted by Borrowers (the "**Borrower Class Claims**").

22.    First, Applicant reviewed all of the approximately 6850 proofs of claim filed against the Debtors' estates in order to determine which claims were Borrower Claims. Next, in an effort to approximate the Debtors' maximum exposure on account of the Borrower Claims, Applicant analyzed the allegations asserted in, and the documents attached to, the approximately

2,900 Borrower Claims. Applicant also analyzed the Borrower Claims in order to determine which claims were duplicative, amended and superseded, and/or filed against multiple Debtors.

23.     Applicant analyzed the allegations contained in each Borrower Claim to determine if the Borrower Claim contained sufficient information to establish the priority and amount asserted in each Borrower Claim. In furtherance of its efforts to analyze the Borrower Claims on a substantive basis, Applicant performed extensive legal research regarding violations of the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act (the "FDCPA") in order to, among other things, determine the validity of those types of claims and what the Debtors' potential exposure on those claims would be.

24.     Applicant then prepared an in-depth legal memorandum for the Committee detailing Applicant's analysis of the Borrower Claims and the related case law.

**Borrower Class Claims Analysis**

25.     In addition to its analysis of Borrower Claims, Applicant performed an in-depth analysis of the Borrower Class Claims.

26.     Applicant reviewed pleadings and other documents filed in each of the underlying class action cases, as well as all information attached to the Borrower Class Claims. Additionally, Applicant analyzed the relevant case law on the various issues raised in each of the class actions, including, but not limited to, violations of RESPA and TILA.

27.     Applicant then prepared another in-depth legal memorandum summarizing its analysis of the Borrower Class Claims to assist the Committee, for purposes of, among other things, plan negotiations. This memorandum included substantial legal research and an evaluation of the Debtors' estimates of potential liability on account of Borrower Class Claims.[5]

---

[5]   Applicant's analysis of the Borrower Class Claims and the preparation of the memorandum commenced during

At the Committee's request, Applicant also prepared an analysis specific to the *Kessler* class claim and provided the Committee with its recommendations as to the Committee's position on the *Kessler* class's motion for class certification.

## Borrower Claims Objections Procedures Order

28.    In order to ensure that Borrowers were given an opportunity to support the allegations asserted in their respective Borrower Claim, Applicant worked closely with the Debtors in drafting the claims procedures applicable to Borrower Claims (the "**Borrower Claims Procedures**"). Applicant assisted the Debtors in the drafting of the motion seeking the approval of the Borrower Claims Procedures (the "**Borrower Claims Procedures Motion**"). On March 21, 2013, the Court entered an order granting the Borrower Claims Procedures Motion.

## Borrower Adversary Proceedings

29.    As part of its representation of the Committee, and at the request of the Debtors, Applicant has endeavored to communicate with the plaintiffs in the Borrower Adversary Proceedings in an effort to facilitate amicable resolutions of the Borrower Adversary Proceedings. To further those efforts, Applicant analyzed the pleadings filed in each Borrower Adversary Proceeding and investigated the veracity of the allegations contained therein.

30.    Additionally, Applicant worked closely with the Debtors in the drafting of certain adversary proceeding procedures applicable to the Borrower Adversary Proceedings (the "**Borrower Adversary Procedures**"). Applicant also assisted the Debtors in the drafting of the motion seeking the approval of the Borrower Adversary Procedures. On March 21, 2013, the Court entered an order approving the Borrower Adversary Procedures (the "**Borrower Adversary Procedures Order**").

---

the Application Period and carried over into the time period not included in the Application Period.

31.     Pursuant to the Borrower Adversary Procedures Order, Applicant has participated in several Initial Conferences (as defined in the Borrower Adversary Procedures Order) intended to facilitate communication between the parties to the Borrower Adversary Proceedings. Applicant has also filed several joint status reports in various Borrower Adversary Proceedings in compliance with the Borrower Adversary Procedures Order.

32.     Additionally, throughout the Application Period, Applicant participated in weekly conference calls with Debtors' counsel and Committee counsel to discuss, among other Borrower-related matters, the status of, and potential resolutions to, pending Borrower Adversary Proceedings. Applicant also attended numerous hearings during the Application Period related to Borrower Adversary Proceedings.

33.     As the Court is aware, because of Applicant's assistance in accordance with the Borrower Adversary Procedures Order, several of the Borrower Adversary Proceedings have been resolved.[6]

**Communications with Borrowers**

34.     Since its retention, Applicant has created and operated a dedicated, toll-free hotline for Borrower inquiries related to the Debtors' bankruptcy cases. The phone number for the Borrower Hotline is prominently published on the website of the Debtors' claims agent, as well as Applicant's website, and has been included in several notices sent to Borrowers. In addition, Borrower inquiries to numerous parties related to the Debtors' cases are referred to the

---

[6] The resolved Borrower Adversary Proceedings include, but are not limited to, *Williams v. GMAC Mortgage, LLC*, 12-01896 (MG); *Wagner v. Residential Funding Company, LLC, et. al*, 12-01913 (MG); *Matthews v. GMAC Mortgage Company, et. al*, 12-01933 (MG); *Taggart, et. al v. GMAC Mortgage, LLC, et. al*, 12-01945 (MG); *Kimber v. GMAC Mortgage Corporation, et. al*, 12-02045 (MG); *Burnett v. GMAC Mortgage, LLC*, 12-02049 (MG); and *Dixon v. GMAC Mortgage Corporation, et. al*, 12-02045 (MG). Specifically, Applicant negotiated and drafted a stipulation resolving the Borrower Adversary Proceeding commenced by Conrad Burnett, Case No. 12-02049.

Borrower Hotline.    During the Application Period, Applicant responded to more than 100 inquiries from Borrowers.[7]

35.    Although Applicant was not able to provide Borrowers with legal advice, Applicant provided Borrowers with information regarding the Debtors' bankruptcy proceedings and other related information.    During the Application Period, Borrower inquiries consisted of, among other things, questions regarding the status of the claims administration process in the Debtors cases, concerns relating to the sale of the Debtors' loan portfolios, and requests for clarification regarding general bankruptcy procedures.    In addition, Applicant provided Borrowers with contact information for the Debtors' loan hotline in order to facilitate communication regarding specific loans.

**Specific Borrower-Related Matters**

36.    In addition to its operation of the Borrower Hotline, Applicant has, at the Debtors' request, contacted numerous Borrowers that have filed documents in the Debtors' cases, including motions for allowance of late-filed claims, motions for relief from the automatic stay, and letters to the Court regarding various concerns of the individual Borrower.    Applicant has attempted to, often successfully, resolve these matters without the need for the Court's intervention.

37.    By way of example, at the Court's direction, Applicant communicated with Stephanie Harris ("**Harris**"), a Borrower who filed a motion which requested relief that was unclear to the Court.    In order to assist the Court in its understanding of the relief requested by Harris, Applicant spent substantial time speaking with Harris and reviewing certain documentation provided by Harris so that Applicant could prepare a statement outlining the relief Harris was ultimately seeking (the "**Harris Statement**").    Applicant expended substantial

---

[7]    Applicant continues to respond to all Borrower inquiries received on the Borrower Hotline.

time preparing the Harris Statement, which aided the Court in its ruling regarding Harris' motion.

## **LEGAL STANDARD**

38.    The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is provided for in Bankruptcy Code §331:

> [A] debtor's attorney, or any professional person…may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered…as is provided under section 330 of this title.

11 U.S.C. §331.

39.    Bankruptcy Code §330 provides that a court may award a professional employed under Bankruptcy Code §327 "reasonable compensation for actual necessary services rendered…and reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). Bankruptcy Code §330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A)    the time spent on such services;
> (B)    the rates charged for such services;
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The Congressional intent and policy expressed in Bankruptcy Code §330 is to provide for adequate compensation to continue to attract qualified and competent practitioners to bankruptcy cases.

40.    The "lodestar" method of fee calculation developed by the Third Circuit is the method used to determine a "reasonable" attorney fee in all the federal courts, including the bankruptcy courts in this Circuit. *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990)(*citing, Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)). *Accord, In re Poseidon Pools of America, Inc.*, 216 B.R. 98, 100 (E.D.N.Y. 1997); *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991).

41.    In determining the reasonableness of the services for which compensation is sought, the Court should note "that the appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken the activity or project or where the time devoted was excessive." *Id.* at 23; *In re Cenargo Int'l PLC*, 294 B.R. 571, 595-96 (Bankr. S.D.N.Y. 2003).

42.    The Applicant is retained in these Chapter 11 Cases pursuant to Bankruptcy Code §327(a), on terms and conditions providing that Applicant shall be compensated in accordance with its normal hourly rates and reimbursed in accordance with its normal reimbursement policies, subject to guidelines established by this Court and the U.S. Trustee. The reasonableness of the terms of Applicant's retention is evident in comparison to the terms of comparable firms practicing in the Southern District of New York.

43.    Applicant respectfully submits that the services for which it seeks allowance of compensation are necessary for and beneficial to the Committee's supervision of the Debtors'

cases, and that the requested fees and charges are reasonable in light of the intricacies of these Chapter 11 Cases and the nature, extent, and value of Applicant's services and expenses to the Committee, the Debtors' estates, and all parties in interest. Thus, approval of the compensation sought in this Application is warranted.

44.     No previous application or motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** Applicant seeks the entry of an order: (i) approving its second interim fee application, and awarding and authorizing an interim payment of $317,563.51, as follows (a) compensation for professional services rendered in the amount of $315,950.00 for 1130.20 professional hours devoted to representation of the Committee in these cases and (b) reimbursement of all expenses incurred during the Application Period in connection with the rendition of such services in the aggregate amount of $1,613.51, for a total interim payment of $317,563.51; and (ii) granting Applicant such further relief as this Court may deem proper.

Dated: Jericho, New York
      August 7, 2013

SILVERMANACAMPORA LLP

By:    s/ Ronald J. Friedman
        Ronald J. Friedman
        Member of the Firm
        100 Jericho Quadrangle, Suite 300
        Jericho, New York 11753
        (516) 479-6300
        RFriedman@SilvermanAcampora.com

        *Special Counsel for the Official Committee*
        *of Unsecured Creditors of*
        *Residential Capital, LLC, et al*