Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP,
Stonehill Capital Management LLC, and Bayview Fund
Management LLC, each in its capacity as
investment advisor to certain funds, and for CQS ABS Master
Fund Limited and CQS ABS Alpha Master
Fund Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL MANAGEMENT LLC, CQS ABS ALPHA MASTER FUND LIMITED, CQS ABS MASTER FUND LIMITED, AND BAYVIEW FUND MANAGEMENT LLC'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF JEFFREY A. LIPPS REGARDING THE DEBTORS' 9019 MOTION (*IN LIMINE* MOTION ONE)**

**PLEASE TAKE NOTICE** that, pursuant to the *Scheduling Order* [ECF No. ], dated August , 2013, entered by the Bankruptcy Court in connection with the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Individual Investors* [ECF No. 3929] (the "**9019 Motion**"), Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and CQS

ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited (collectively, the "**Investors**") hereby file the Investors' *Motion in Limine to Preclude the Testimony of Jeffrey A. Lipps Regarding the Debtors' 9019 Motion (In Limine Motion One)*.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the *Order Regarding Exchange of Confidential Information* [ECF No. 4249] (the "**Confidentiality Order**"), dated July 16, 2013, entered by the Bankruptcy Court in connection with the 9019 Motion, certain portions of the Motion in Limine are hereby filed in redacted form and under seal. Unredacted copies of the Motion in Limine will be provided to the Bankruptcy Court and served on parties to the Confidentiality Order.

Dated: August 7, 2013
      New York, New York

                        WILLKIE FARR & GALLAGHER LLP

                        By: /s/ Joseph T. Baio
                                Joseph T. Baio

                        Mary Eaton
                        Emma J. James
                        787 Seventh Avenue
                        New York, New York 10019
                        (212) 728-8000

                        *Attorneys for Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and for CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited.*

Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP,
Stonehill Capital Management LLC, and Bayview Fund
Management LLC, each in its capacity as
investment advisor to certain funds, and for CQS ABS Master
Fund Limited and CQS ABS Alpha Master
Fund Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL MANAGEMENT LLC, CQS ABS ALPHA MASTER FUND LIMITED, CQS ABS MASTER FUND LIMITED, AND BAYVIEW FUND MANAGEMENT LLC'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF JEFFREY A. LIPPS REGARDING THE DEBTORS' 9019 MOTION (*IN LIMINE* MOTION ONE)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and CQS ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited (collectively, the "**Investors**") hereby file this motion *in limine* to preclude the expert testimony of Jeffrey A. Lipps regarding the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees (the "**Trustees**") and Certain Institutional Investors (the "**9019 Motion**").

## PRELIMINARY STATEMENT

The Debtors seek to introduce "expert" testimony from their very own special litigation counsel in support of their 9019 Motion. Given Mr. Lipps' representation of the Debtors in some of the very matters on which he seeks to opine, Mr. Lipps lacks the objectivity required of an expert witness and should be precluded from testifying on that ground alone.

Even assuming Mr. Lipps' objectivity was not compromised, he cannot reasonably be considered an expert under any reasonable reading of the applicable rules. As an initial matter, it is well established that expert testimony on issues of law is both impermissible and unnecessary. Mr. Lipps' submissions constitute nothing more than legal briefs masquerading as expert testimony. Indeed, his expert declarations came replete with a lengthy sections entitled "Elements of Cause of Action." But an expert declaration must contain expert testimony that will assist the trier of fact, and Mr. Lipps' submissions do nothing of the sort. This Court – like all courts – comes equipped with its own legal expert, Judge Glenn, and does not need Debtors' special litigation counsel to take on that role.

Even if expert testimony on issues of law were permitted under the rules – and it is not – Mr. Lipps has no particular expertise in the area of RMBS litigation, having never tried an RMBS matter to resolution. Indeed, as Mr. Lipps himself has admitted, he has never so much as filed a dispositive motion in an RMBS litigation. Furthermore, Mr. Lipps' "expert opinions" can be boiled down to two simple statements: litigation can be expensive, and litigation can be uncertain. Each of these opinions is based solely on Mr. Lipps' say so and has no factual or technical foundation. Vague "because I say so" opinions of this type are not acceptable "expert" opinions under established law.

Given this, it seems at least plausible that Mr. Lipps did not generate a single document or work paper in connection with his expert submissions. If true, it speaks further to the complete lack of rigor in the supposed 'analysis' performed by Mr. Lipps. But the problem here is that Debtors have refused, on numerous occasions, to respond to Investors' questions as to whether Mr. Lipps generated any such work papers or other documents in connection with his expert submissions.[1] Given the well-established law on this issue – that if documents generated by an expert in connection with his expert submissions are not produced, the expert should be precluded from testifying at trial – Debtors' reluctance to respond to Investors' inquiries is surprising. Nonetheless, in the event Debtors have failed to produce documents generated by Mr. Lipps in connection with his expert submissions, the Court should preclude Mr. Lipps from testifying on that ground also.

## BACKGROUND

Prior to his appointment as Debtors' special litigation counsel in July, 2012, Mr. Lipps and his firm represented Debtors in various prepetition litigations brought by FGIC and

---

[1] *See, e.g.*, August 5, 2013 email from J. Lawrence to M. Eaton and others re "In re Residential Capital LLC." (Declaration of Mary Eaton in Support of Investors' Motion in Limine ("Eaton Decl.") Ex. 36.)

- 3 -

MBIA against Debtors involving alleged breaches of representations and warranties in connection with the residential mortgage backed securities ("RMBS") issued by Debtors. Each of those cases was filed in the spring of 2010 and was stayed in May of 2012 following the filing of Debtors' Chapter 11 petition. Not a single dispositive motion has been filed in any of those cases.

Despite this limited experience with RMBS litigation, Mr. Lipps' asserts that he is an expert in "the body of law that has developed in disputes regarding the sale of residential mortgage-backed securities."[2] In that regard, Mr. Lipps "formed the following opinions concerning the Debtors' motion for approval of the Settlement Agreement":

- *Legal Uncertainty:* The liabilities to be released under the settlement relate to claims that pose unique legal and evidentiary challenges, many of which have not fully developed in a definitive way in the case law to date, and none of which has been litigated to resolution with respect to the Debtors specifically, such that there is considerable uncertainty and risk in the outcome.
- *Expense of Resolution:* In addition to the uncertainty in the outcome, resolving the claims and liabilities covered by the FGIC Settlement Agreement would be enormously expensive. I was personally involved in years of prepetition litigation concerning the Debtors' securitizations, which showed that simply completing the discovery that would be required to resolve these claims would require substantial time and resources. A trial to resolve these claims would also be enormously expensive and complex.[3]

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

[2] Direct Testimony of Jeffrey A. Lipps ¶ 1 (July 31, 2013) [Dkt. No. 4433] [hereinafter "Lipps Direct"]

[3] Lipps Direct ¶ 4; *see also* Declaration of Jeffery A. Lipps in Support of Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Institutional Investors, ¶ 4 (June 7, 2013) [3929-4] [hereinafter "Lipps Decl."].

███████████████  ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████ Mr. Lipps' ultimate conclusion that "settlement of the claims and liabilities released by the FGIC Settlement Agreement would remove a significant risk of an unfavorable legal outcome"[6] similarly lacks definition, and ████████████████████ ████████████████████████████████████████ ███████████████

As to the second opinion, Mr. Lipps' "expert" opinion is that resolving the claims would be "enormously expensive,"[8] ████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████

---

████████████████████████████████████████

[5] ███████████████

[6] Lipps Direct ¶ 155.

[7] ████████████████████

[8] Lipps Direct ¶ 4.

[9] ████████████████████

[10] ████████████████████

# ARGUMENT

## I. Mr. Lipps' Testimony Should Be Precluded Because it Constitutes Impermissible Expert Testimony on Issues of Law

It is well-settled that expert testimony on matters of domestic law is inadmissible. *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion."); *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000) ("this Court requires the exclusion of [expert] testimony that states a legal conclusion"); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (citation omitted) ("This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissible for *any* purpose.").

The Debtors attempt to contravene this maxim and offer Mr. Lipps for no other purpose than to testify about the legal issues concerning the released claims against the Debtors pursuant to the FGIC Settlement Agreement. This is evident from Mr. Lipps' Declaration which contains a 29-page disquisition about the "Elements of Cause[s] of Action" that "may be asserted either by FGIC or by the Investors acting through the FGIC Trustees,"[11] followed by a twelve-page discussion of the "potential affirmative defenses" available to Debtors.[12]

This type of expert testimony is inadmissible and unnecessary for the simple reason that "Each courtroom comes equipped with a legal expert, called a judge." *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69 n.11 (quoting *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997)). The Court is fully capable of analyzing the legal landscape of FGIC's claims without Mr. Lipps' "expert" testimony on the matter.

---

[11] Lipps Direct ¶ 24.

[12] *See* Lipps Decl. ¶¶ 24-133; *see also* Lipps Direct ¶¶ 24-133.

## II. Mr. Lipps' Testimony Should Be Precluded Because it Would Not Aid the Court in Determining Whether to Make the Proposed Findings at Issue Here

Federal Rule of Evidence 702 provides that expert testimony will only be admissible "[i]f the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Mr. Lipps' testimony here cannot be described as helpful to the Court in adjudicating the Investors' objection to the FGIC Settlement Agreement. His vague opinions that the representation and warranty litigation would be "enormously expensive" and uncertain[13] are not relevant to the objections by the Investors to the proposed Findings concerning the FGIC Trustees' decision to enter into the FGIC Settlement Agreement for the simple reason that the



---

[13]  Lipps Direct ¶ 4.

[14]  █████████████████████████████

[15]  █████████████████████

-7-



### III. Mr. Lipps Should be Precluded from Testifying Because He Lacks the Requisite Experience in the Field of RMBS Litigation

Pursuant to Federal Rule of Evidence 702, a witness must be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Thus, an expert opinion must have "a reliable basis in the knowledge and experience of [the expert's] discipline." *Daubert*, 509 U.S. at 592. Here, Mr. Lipps is lacking the requisite background characteristics identified in Rule 702, as he admitted during his deposition, and his opinion therefore lacks a reliable basis.



[REDACTED]

Given his lack of experience and direct knowledge as to RMBS litigations, Mr. Lipps should not be permitted to testify about the risks of litigating such cases, nor should he be permitted to testify about the expense of that type of litigation when he has no experience budgeting such expenses.

### IV.    Mr. Lipps' Testimony Should Be Precluded Because it Contains Impermissible *"Ipse Dixit"* Assertions

An "expert must do more than merely provide "a 'because I said so' explanation." *E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383, 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010). And a court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Mr. Lipps' declaration and direct testimony contain nothing more than "because I say so" statements that are neither backed up by meaningful analysis nor anchored in existing data. Mr. Lipps seeks to testify that there is "considerable uncertainty and risk in the outcome" of the released claims, but fails to quantify the risk or translate it into a dollar figure so that it could be compared to the monetary figures in the FGIC Settlement Agreement. Similarly, Mr.

---

19 [REDACTED]

20 [REDACTED]

Lipps claims that litigating the released claims would be "enormously expensive"[21] but fails to explain how expensive.[22]

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████ Because Mr. Lipps has failed to quantify his analysis, his conclusions are nothing more than unhelpful and inadmissible "*ipse dixit*" assertions and should therefore be rejected.

V.    Mr. Lipps Should be Precluded from Testifying Because, as Debtors' Counsel in These Chapter 11 Cases, He Lacks the Necessary Objectivity to Serve as an Expert

"An expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003) *aff'd*, 99 F. App'x 274 (2d Cir. 2004). "When expert witnesses become partisans, objectivity is sacrificed to the need to win." *Id.* (quoting *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 184 (E.D.N.Y.2001)). Thus, when an expert also acts as counsel to, and engages in advocacy on behalf of, a party, that expert should be precluded from testifying because he will be unable to "testify with the detachment and independence that one would expect from an expert witness offering views as a professional." *Id.* at 688.

Here, Mr. Lipps "currently represent[s] or [has] represented over the past several years a number of the debtor entities . . . and several individual former directors and officers of

---

[21]    Lipps Direct ¶ 4.

[22]    Mr. Lipps has admitted that he has "not tried to ascribe a number to the fees that would be expended in litigating these claims." *Id.* at ¶ 149.

[23]    ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

debtor entities in over a dozen separate lawsuits involving certain debtor entities' issuance of RMBS."[24] This representation includes "the twelve cases brought by FGIC against various debtors and affiliated entities."[25]

Furthermore, Mr. Lipps' firm has "been retained as special litigation counsel in these bankruptcy cases," which has required Mr. Lipps' firm to "analyze[] the proofs of claim filed by FGIC and the other monolines and actively participate[] in developing the strategy to litigate monoline proofs of claim."[26] Mr. Lipps has also "collaborated with [Debtors' counsel] in making initial document requests to FGIC and responding to FGIC's initial document requests to the Debtors."[27]

Mr. Lipps has, therefore, "carried on the traditional functions of a lawyer-advocate" and "acted in a completely partisan manner," meaning "[i]t would be most inappropriate to permit him now to testify as an expert witness about the very matters he helped develop as a lawyer-advocate." *Lippe*, 288 B.R. at 688.

## VI. To the Extent Documents Generated by Mr. Lipps in Connection with His Expert Submissions Have Not Been Produced, Mr. Lipps Should be Precluded from Testifying at Trial.

It is well-established that "material generated by the expert in connection with his report and expert testimony," must be produced, and cannot be withheld on the ground that such materials are protected by the work product privilege because it is "quite clear that Rule 26 does not include within the definition of 'work product' documents generated or consulted by experts

---

[24] Lipps Direct ¶ 7.

[25] *Id.* at ¶ 8.

[26] *Id.* at ¶ 10.

[27] *Id.* Mr. Lipps' firm also assisted "in responding to the [court-appoionted] examiner's questions regarding the Debtors' securitization processes, and his request for submissions regarding the validity of various third-party claims." *Id.*

- 11 -

in connection with litigation." *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.* 171 F.R.D. 57, 62 (S.D.N.Y. 1997) (quoting *Hewlett-Packard Co. v. Bausch & Lomb*, 116 F.R.D. 533, 536 (N.D. Cal. 1987). This Court acknowledged as much when it stated, "if there are work papers that include ... alternate analyses, testing methods or approaches to the issues on which the expert will be testifying, they must be produced."[28] *See also Dongguk University v. Yale University*, No. 3:08-CV-00441, 2011 WL 1935865, at *1 (D. Conn. 2011) ("as a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between party's attorney and the expert witness") (citing Advisory Committee Note to the 2010 Amendment of Rule 26(b)(4)).

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information ... as required by Rule 26(a) ... the party is not allowed to use that information or witness to supply evidence ... at a hearing or a trial, unless the failure was substantially justified or is harmless." *See also Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements*, --- F. Supp. 2d ---, 2013 WL 310403, at *2-3 (W.D.N.Y. 2013) (court precluded the defendant from offering testimony of his purported expert witness where the witness, *inter alia*, did not identify the facts or data considered by the witness in forming his opinions, and noted that "[a] party that fails to satisfy the Rule 26 disclosure requirements without justification is precluded from offering expert witnesses at trial") (quoting *Smolowitz v. Sherwin-Williams Co.*, No.. 02-CV-5940, 2008 WL 4862981, at *3 (E.D.N.Y. 2008)).

The Investors have asked the Debtors repeatedly to produce any of Mr. Lipps' work papers, or else to notify the Investors whether any such work papers are being withheld on

---

[28] July 25, 2013 Hearing Tr. at 36:17-20 (Eaton Decl. Ex. 3).

any privilege grounds.[29] To date, such work papers have not been produced or logged, and the simple question of whether such work papers exist has gone unanswered.[30] Because of Debtors' recalcitrance on this issue, to the extent Mr. Lipps has work papers related to his expert submissions that have not been produced, the rules are clear that the Court must now preclude Mr. Lipps from testifying.

## CONCLUSION

WHEREFORE, the Investors respectfully request that the Court enter an Order precluding Mr. Lipps from offering expert testimony at the hearing regarding the 9019 Motion to be held on August 16 and August 19, 2013.

Dated: August 7, 2013
      New York, New York

                                        WILLKIE FARR & GALLAGHER LLP

                                        By: /s/ Joseph T. Baio
                                              Joseph T. Baio

                                        Mary Eaton
                                        Emma J. James
                                        787 Seventh Avenue
                                        New York, New York 10019
                                        (212) 728-8000

                                        *Attorneys for Monarch Alternative Capital LP,*
                                        *Stonehill Capital Management LLC, and Bayview*
                                        *Fund Management LLC, each in its capacity as*
                                        *investment advisor to certain funds, and for CQS*
                                        *ABS Master Fund Limited and CQS ABS Alpha*
                                        *Master Fund Limited.*

---

[29]     *See* Email chain dated August 5, 2013, from M. Eaton to J. Lawrence re "In re Residential Capital LLC." Eaton Decl. Ex. 36.

[30]     *See id.*