WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore
Harrison L. Denman

   and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi

*Attorneys for the Ad Hoc Group
of Junior Secured Noteholders*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | Case No. 12-12020 (MG) |
| Debtors. | (Jointly Administered) |

**OMNIBUS MOTION *IN LIMINE* OF THE AD HOC GROUP OF JUNIOR
SECURED NOTEHOLDERS TO PRECLUDE CERTAIN ASPECTS OF THE
TESTIMONY OF LEWIS KRUGER AND JOHN DUBEL AND THE EXPERT
TESTIMONY OF RON D'VARI AND JEFFREY LIPPS PROFFERED
<u>IN CONNECTION WITH THE FGIC SETTLEMENT MOTION</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.    The Debtors And FGIC Should Be Precluded From Offering Evidence Regarding The Basis Of Their Business Judgment And The Merits Of The Settlement Agreement ......... 3

    II.   The Debtors Should Be Precluded From Offering Mr. D'Vari's And Mr. Lipps' Conflicted Expert Testimony In Support Of The Settlement Agreement ........................... 8

        A.  Mr. D'Vari Was Retained By FGIC With Respect To The Same Trusts To Which He Seeks To Give Expert Testimony While Refusing To Testify Regarding The Substance Of His Prior Representation ........................................................................ 10

        B.  Mr. Lipps Was Counsel To The Debtors On The Very Issues To Which He Seeks To Give Expert Testimony .............................................................................................. 12

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

## CASES

Arista Records LLC v. Lime Group LLC, Civ. A. No. 06-5936 (KMW), 2011 WL 1642434 (S.D.N.Y. April 20, 2011) ................................................................................................6

Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., Civ. A. No. 95-8833, 2000 WL 42202 (S.D.N.Y. Jan. 19, 2000) .............................................................................................12

Grioli v. Delta Int'l Machinery Corp., 395 F. Supp. 2d 11 (E.D.N.Y. 2005) .....................................9

In re Residential Capital, LLC, 491 B.R. 63 (Bankr. S.D.N.Y. 2013) ...........................................1, 6

L Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277 (S.D.N.Y. 2000), aff'd, 4 F. App'x 91 (2d. Cir. 2001) ..........................................................................................................6

Lippe v. Bairnco Corp., 288 B.R. 678 (S.D.N.Y. 2003) ............................................................10, 12

Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc., Civ. A. No. 83-8898, 1989 WL 31514 (S.D.N.Y. Mar. 28, 1989) ................................................................................................9, 12

Tagatz v. Marquette Univ., 861 F.2d 1040 (7th Cir. 1988) (Posner, J.) .............................................9

## MISCELLANEOUS

Steven Lubet & Elizabeth I. Boals, *Expert Testimony: A Guide for Expert Witnesses and the Lawyers Who Examine Them* 163 (2d ed. 2009) ..................................................................9, 13

TO THE HONORABLE MARTIN GLENN:

The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group") by and through its undersigned counsel, hereby files this omnibus motion in limine (the "Motion") to preclude certain aspects of the testimony of Lewis Kruger and John Dubel and expert testimony of Ron D'Vari and Jeffrey Lipps proffered by the Debtors in connection with the Debtors' Motion Pursuant to Federal Rules of Bankruptcy Procedure 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Docket No. 3929] (the "FGIC Motion"). In support of its Motion, the Ad Hoc Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.  The Debtors' evidentiary record in support of the FGIC Motion suffers from many of the same deficiencies that the Committee raised with respect to the record created on the now abandoned RMBS Settlement. First, the Debtors seek to use attorney-client privilege and the Court's mediation order as both a sword—to offer evidence that the FGIC Settlement Agreement meets the Iridium factors— and as a shield—to prevent them from having to reveal in discovery the actual substance of any advice rendered or discussions had in mediation. The Court has repeatedly cautioned the Debtors that they may not do so. See, e.g., In re Residential Capital, LLC, 491 B.R. 63, 70 (Bankr. S.D.N.Y. 2013) ("The law does not permit such cherry-picking of reliance on counsel evidence."). Consistent with that prior ruling, the Court should now hold the playing field level and preclude the Debtors and FGIC from introducing certain aspects of the testimony of Lewis Kruger and John Dubel regarding advice of their counsel and their participation in the mediation process. Marked declarations reflecting the materials that the Ad Hoc Group contends should be precluded are attached hereto as Exhibits A and B.

1

2.  <u>Second</u>, the Debtors' proposed direct testimony from two experts should be precluded as failing to meet the minimum requirements for admissible evidence under Federal Rules of Evidence 701 or 702. The Debtors have offered Ron D'Vari as an expert witness with respect to the lifetime expected collateral losses of certain residential mortgage-backed securities trusts (the "<u>FGIC Insured Trusts</u>") and the extent of past or future losses to holders of securities issued by those trusts which were not insured by FGIC. That is the very same subject matter of a detailed analysis that Mr. D'Vari apparently performed <u>for FGIC</u> in 2011. As set forth in Section II(A), <u>infra</u>, an expert can be found to lack the requisite impartiality and objectivity when he or she has previously been retained by the other side in a litigation, particularly where the expert is testifying to the same subject matter and had access to the other side's confidential materials. The task for a court in a dual representation case is to determine how the prior expert retention could potentially impact the proposed expert's present testimony, at the least by comparing the substance of the two engagements. During Mr. D'Vari's deposition, however, FGIC refused to allow Mr. D'Vari to testify at all regarding the substance of his prior FGIC representation, effectively forestalling the parties or the Court from even understanding the scope of the problem. Due to FGIC's insistence on keeping Mr. D'Vari's prior work secret, the Debtors cannot now establish that Mr. D'Vari can present an objective and independent expert opinion to the Court.

3.  Similarly, the Debtors' offer Jeffrey Lipps as a legal expert on RMBS litigation to testify as to the potential costs and delays of litigating with FGIC and the FGIC Insured Trusts. That is the exact same subject area on which Mr. Lipps has previously provided legal advice to the Debtors as their retained section 327(e) counsel. The Debtors, however, have asserted privilege with respect to all of that prior legal advice, in essence, offering Mr. Lipps to testify as

2

a virtual witness to explain not what he actually advised the Debtors prior to the execution of the FGIC Settlement Agreement, but rather what he theoretically would have advised if he had been asked.  That facile strategy, presumably employed as a potential end run around this Court's rulings on the advice of counsel defense, must fail.  As set forth in Section II(B), <u>infra</u>, Mr. Lipps' present retention as legal counsel to the Debtors renders him incapable of providing the Court with an objective and independent expert opinion on the Settlement Agreement that meets the requirements of Federal Rules of Evidence 701 or 702.  Accordingly, the Court should preclude Mr. D'Vari's and Mr. Lipps' testimony as lacking the requisite indicia of impartial and objective expert opinions.

## **ARGUMENT**

### I. The Debtors And FGIC Should Be Precluded From Offering Evidence Regarding The Basis Of Their Business Judgment And The Merits Of The Settlement Agreement

4.      Since the FGIC Settlement was first announced, the Ad Hoc Group has been concerned that the Debtors' agreement to provide FGIC a $337 million allowed claim at ResCap, LLC is not an accurate reflection of any real legal risk at that estate, but rather represents the price that FGIC demanded for signing onto a plan process that would require it to release claims against Ally.  Based on Mr. Kruger's vague deposition testimony on the subject, the allowance of any claim at ResCap, LLC seems aimed, at least in part, to provide FGIC with a targeted allocation of the Ally Contribution that the Debtors have now sought to justify with post hoc expert reports.  If that is not what actually happened, the Debtors should have just said so.  In discovery, however, the Debtors refused to provide any evidence to address the Ad Hoc Group's concerns.  Instead, they shielded from discovery virtually all evidence of the process and

reasoning by which they actually agreed to enter into the Settlement Agreement and the risks that they actually were trying to mitigate when they came to their business judgment decision.

5. As set forth in the Ad Hoc Group's Supplemental Objection, the Debtors did not produce a single substantive email, letter, presentation, spreadsheet, term sheet, or draft agreement relating to the Settlement Agreement. (See Suppl. Obj. ¶ 10.) While Mr. Kruger acknowledges that he "regularly met with the Board of Directors of ResCap to update them about this process, the mediation [and] kept the Board generally informed about these matters" (see Direct Testimony of Lewis Kruger at ¶ 15), the Debtors have not produced any documents bearing on the evaluation, negotiation, and approval of the Settlement Agreement, or any materials presented to the Board concerning the Settlement Agreement. (Suppl. Obj. ¶¶ 10, 34.) Based on the Debtors' privilege logs (attached hereto as Exhibit C), which appear to imply that extensive legal advice was rendered, as well as the absence of any unprivileged documents, it appears that Mr. Kruger relied heavily on written privileged analyses in deciding to settle.

6. In addition to withholding all written communications concerning the mediation and Settlement Agreement, Mr. Kruger's counsel prohibited inquiry into the substance of these communications during Mr. Kruger's deposition. At that deposition, counsel repeatedly instructed Mr. Kruger not to answer questions about certain aspects of his declaration on the

NEWYORK 8940724

grounds of attorney client privilege and mediation privilege.[1] Mr. Kruger was instructed not to answer questions concerning an array of subjects that bear directly on his conclusions (expressed in his declaration and Direct Testimony) concerning the reasonableness of the FGIC Settlement and the process through which it was negotiated and approved, including the arm's length nature of the negotiations and the merits of the FGIC Settlement Agreement. (See, e.g., Kruger Dep. Tr. at 191:11-192:4 ("Q. The arm's length negotiations, and just so I'm clear. It's the debtor's position that the mediation confidentiality order in place prohibits the disclosure of any substance between FGIC or its counsel, on the one side, and the debtors and their counsel, on the other side, with respect to the FGIC claims? Mr. Kerr: . . . the communications, the substance, the back and forth, is subject to the confidentiality order entered by Judge Glenn, relied upon by Judge Peck and all the parties. And so, in terms of the substance of the communications back and forth, that's confidential.").) Indeed, Mr. Kruger ultimately testified that he could not disclose <u>anything</u> that he relied upon in making his determination to enter into the FGIC Settlement Agreement. (See id. at 127:11-20 ("Q. Okay. So what of the things you relied upon in making your determination with respect to the advisability of entering into the FGIC Settlement Agreement do you feel can be appropriately disclosed without waiving an attorney-client privilege or waiving a mediation privilege? . . . A. I don't think there's anything.").)

---

[1] See, e.g., Kruger Dep. Tr. at 45:2-10 ("Mr. Eggerman: I'm going to interpose an objection, in my view the dynamics that occurred during the mediation were probably within the ambit of the court's order. And a lot of the questions that are being asked seems to be designed to elicit the dynamics which, to me, are not far off from the substance of the mediation."); Id. at 167:14-25 ("Q. What was the reason you didn't just agree to fix the liability at 337 under all circumstances? Mr. Kerr: Objection. Again . . . I don't want you to disclose anything that was discussed in the mediation, you can answer that question without disclosing what was discussed in mediation. A. It was part of the mediation in the global settlement agreement. It's hard for me to separate out."); Id. at 169:7-13 (". . . Q. And it's 596, whether or not the plan is confirmed; right? Mr. Kerr: Objection. . . . A. I don't think I can answer that outside the context of the mediation."); Id. at 207:12-18 ("Q. Is it your understanding that the FGIC computation was insisted upon as part of that global settlement? Mr. Kerr Objection. On that, I will direct – I think that's covered by the confidential mediation order, and I'll direct the witness not to answer that.").

7.  Similarly, FGIC produced its CEO, John Dubel, for a deposition on July 10, 2013. Mr. Dubel's testimony was also restricted by his counsel's instruction not to answer questions about the substance of the mediation or the FGIC Settlement on the grounds of attorney client communication and mediation privilege. (See, e.g., Dubel Dep. Tr. at 138:14-21 ("Mr. Slack: Let me -- let me object to only -- only to the extent that whatever analysis he's thinking about was done in furtherance of either the -- the settlement or -- or the plan, then I would instruct you not to answer on the basis of work – work product privilege and attorney- client and the mediation privilege.").) As a result, Mr. Dubel's deposition testimony lacked disclosure of any of the substantive back and forth between the parties on the allowance of claims against GMACM, RFC or ResCap LLC.

8.  This Court has made clear that, in the context of a proposed settlement under Bankruptcy Rule 9019, a movant's failure to disclose advice or communication on the ground that such advice or communication is privileged will preclude that party from later presenting such privileged or confidential information to support its positions.  See In re Residential Capital, LLC, 491 B.R. at 70 ("The law does not permit such cherry-picking of reliance on counsel evidence.  The consequence of failing to make full disclosure of the advice that was given is that the Debtors are now precluded from offering any advice provided to the Debtors' officers and directors that was considered in connection with the decision to enter into the RMBS Trust Settlement."); see also E.G.L Gem Lab Ltd. v. Gem Quality Inst., Inc., 90 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2000), aff'd, 4 F. App'x 91 (2d. Cir. 2001) (where a party "blocked his adversary from conducting discovery on [his communications with counsel], he will not now be heard to advance reliance on counsel."); Arista Records LLC v. Lime Group LLC, Civ. A. No. 06-5936, (KMW), 2011 WL 1642434 at *2 (S.D.N.Y. April 20, 2011) (precluding defendants

6

from offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct where defendants had blocked inquiry on the basis of privilege).

9. FGIC itself recognized the need for such relief when it joined in the Committee's motion to preclude evidence of the Debtors' reliance on counsel during the RMBS trial, all on identical grounds to the present dispute. (See Joinder of Financial Guaranty Insurance Company in Support of the Motion of the Official Committee of Unsecured Creditors to Preclude the Debtors from Offering Any Evidence of Their Reliance on Counsel for Advice Concerning the Evaluation, Negotiation or Approval of the RMBS Settlement [Docket No. 2932].) Moreover, FGIC and the Debtors could have disclosed their own mediation confidences without violating the Mediation Order, by making an application to the Court, but they chose not to do so. (See July 25, 2013, H'rg Tr. at 35:17-36:8 ("The Court concludes that by permitting disclosure of the one-page commutation break-out, FGIC has not provided a subject matter waiver of any applicable privilege including mediation privilege. This is not a situation where FGIC is seeking to use an assertion of privilege as a sword and a shield.").)

10. Here, when tested through discovery, many of Mr. Kruger's summary conclusions expressed in his Declaration proved to be supported only by the advice of counsel and the mediation privilege—none of which was disclosed during discovery. As set forth in Exhibit A, the highlighted portions of Mr. Kruger's Direct Testimony should therefore be precluded.[2] Mr. Dubel provided very limited testimony with respect to the FGIC Settlement Agreement and no testimony with respect to settlement of FGIC Claims and the allowed claims against RFC,

---

[2] The Ad Hoc Group presumes that the Direct Testimony of Lewis Kruger filed in support of the FGIC Motion on July 31, 2013 supersedes the previously filed Declaration of Lewis Kruger, attached to the FGIC Motion as Exhibit 3. To the extent that the Debtors intend to offer the prior declaration into evidence, the Ad Hoc Group respectfully requests that the same testimony from that declaration be stricken as well.

7

GMACM or ResCap, LLC.  Mr. Dubel's testimony was restricted by his counsel's instruction not to answer questions on the grounds of attorney client and mediation privilege.  As set forth in Exhibit B, the highlighted portions of Mr. Dubel's Witness Statement should therefore be precluded.

11.     Indeed, the Debtors offered no evidence in discovery to support the conclusion that the Settlement Agreement is a fair resolution of a complex legal issue, without which the FGIC Motion cannot be approved.  As the Committee, joined by FGIC, argued, the Debtors' "deliberate tactical decision to subject the [RMBS] Settlement to Court scrutiny without evidence of such [legal] advice . . . had both procedural and legal consequences that cannot be undone." (Committee Motion to Preclude the Debtors from Offering Any Evidence of their Reliance on Counsel for Advice Concerning the Evaluation, Negotiation or Approval of the RMBS Settlement [Docket No. 2906] ¶ 19; FGIC Joinder to Committee Motion to Preclude [Docket No. 2932].)

## II. The Debtors Should Be Precluded From Offering Mr. D'Vari's And Mr. Lipps' Conflicted Expert Testimony In Support Of The Settlement Agreement

12.     As an initial matter, the expert testimony of Mr. D'Vari and Mr. Lipps are irrelevant post-hoc justifications of the Settlement Agreement, as to which the Court should provide no weight under Federal Rules of Evidence 402.  That is an objection that can be addressed at trial.  This Motion addresses threshold admissibility of Mr. D'Vari's and Mr. Lipps' testimony under either Federal Rules of Evidence 701 or 702.  Despite the availability of numerous potential experts on the subject of RMBS claims litigation who could have advised the Debtors prior to settling, the Debtors chose to retain Mr. D'Vari and Mr. Lipps— each of whom has prior conflicting roles in these Cases—after settling and then sought to preclude any inquiry

into the extent of these experts' conflicts during discovery. That was a fatal decision in light of the law on the admissibility of expert opinions.

13.  It is widely recognized that "[t]he single most important obligation of an expert witness is to approach every question with independence and objectivity." Steven Lubet & Elizabeth I. Boals, *Expert Testimony: A Guide for Expert Witnesses and the Lawyers Who Examine Them* 163 (2d ed. 2009). Courts in this Circuit note that, when necessary "to protect the integrity of the legal process," they must exercise their inherent power to disqualify expert witnesses. See, e.g., Grioli v. Delta Int'l Machinery Corp., 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005) (citing Koch Ref. Co. v. Jennifer L. Boudreax MV, 85 F.3d 1178, 1181 (5th Cir. 1996)). No "bright line rules" restrict the court's discretion in this analysis and courts may consider an expert's potential conflict as a matter of evidentiary weight rather than admissibility. Id.; see also Tagatz v. Marquette Univ., 861 F.2d 1040, 1042 (7th Cir. 1988) (Posner, J.) (permitting plaintiff to provide expert testimony, as the "trier of fact should be able to discount for so obvious a conflict of interest."). Such a determination, however, necessarily follows after the court is appraised of the nature of the expert's potential conflict. For example, Courts consistently disqualify expert witnesses who: (1) previously enjoyed access to a party's confidential information; and (2) subsequently enter the service of an adverse party in a manner implicating "the potential breach of such confidences, even without any predicate showing of actual breach." Michelson v. Merrill Lynch Pierce Fenner & Smith, Inc., Civ. A. No. 83-8898, 1989 WL 31514, at *4 (S.D.N.Y. Mar. 28, 1989) (quoting Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 591 (D. Minn. 1986)) (internal quotation marks and punctuation omitted).

9

14. In Lippe v. Bairnco Corp., 288 B.R. 678 (S.D.N.Y. 2003), the court excluded the expert testimony of a law professor who sought to provide an opinion as to the business purpose of the transaction challenged in that case. The court observed that the professor had been engaged as counsel by plaintiffs and their attorneys of record, and in that role had "helped plaintiffs 'explore and develop legal theories,' 'identify the legal issues and the facts – the kinds of facts that would be necessary to support various claims,' 'formulat[e] and develop [] issues and theories in the case,' and 'evaluat[e] the defense that would be put up in this case[.]'" Id. at 683-84. In language equally applicable to Mr. D'Vari and Mr. Lipps, Judge Chin held that this dual role made proper expert testimony impossible: "because of [the expert's] advocacy on behalf of plaintiffs as counsel and legal advisor, I do not believe that he can now testify with the detachment and independence that one would expect from an expert witness offering views as a professional." Id. at 688. The same rule applies here.

A. **Mr. D'Vari Was Retained By FGIC With Respect To The Same Trusts To Which He Seeks To Give Expert Testimony While Refusing To Testify Regarding The Substance Of His Prior Representation**

15. On June 11, 2013, the Debtors filed their Application for an Order Under Bankruptcy Code Sections 327(a) and 328(a) Authorizing the Employment and Retention of NewOak Capital Advisors as Consultant Nunc Pro Tunc to May 24, 2013 (the "NewOak Retention Motion") [Docket No. 3953]. In support of the NewOak Retention Motion, and as required by Federal Rule of Bankruptcy Procedure 2014, the Debtors attached and referred to a Declaration by NewOak's Chief Executive Officer, Ron D'Vari, in which Mr. D'Vari admitted that NewOak "has in the past and may currently represent certain of the Interested Parties in other matters. However, each of the matters was or is wholly unrelated to the Debtors and these Chapter 11 cases and, accordingly, none of the said representations is adverse to the interests of

10

the Debtors or their estates." (See NewOak Retention Mot. ¶ 28.) On this basis, the Debtors asserted that NewOak qualified as a "disinterested person" within the meaning of 11 U.S.C. §§ 101(14) and 1107(b).

16. At Mr. D'Vari's deposition, however, he testified that he and NewOak had provided services to FGIC related to the very same FGIC Insured Trusts that the Settlement Agreement purports to resolve. (D'Vari Dep. Tr. at 70:14-71-19.) In fact, Mr. D'Vari personally provided expert services and advice to FGIC between 2010 and 2011 with respect to all of the 47 FGIC Insured Trusts that are the subject of the Settlement Agreement. (Id.) FGIC precluded him from testifying about that representation. (Id. at 27:6-28:12; 37:20-42:7; 133:6-22).)

17. It is undisputed that Mr. D'Vari had access to sensitive, confidential FGIC information in his work regarding the FGIC Insured Trusts in 2010-2011. Indeed, FGIC's counsel instructed Mr. D'Vari not to answer any substantive questions regarding Mr. D'Vari's prior advice, solely on the basis of confidentiality, despite repeated requests that he testify on an attorneys' eyes only basis. (Id. at 33:20-35-6.) The parties and the Court, then, are left to speculate as to exactly what Mr. D'Vari told FGIC in 2011 and how he could have possibly rendered an impartial and objective opinion for the Debtors.[3]

18. Simply, how could Mr. D'Vari provide a fresh opinion to the Debtors without implicating his prior duties to FGIC to retain its confidences and defend the soundness of his prior advice? Mr. D'Vari cannot "possibly create separate spaces within his memory" to guard against inappropriate disclosure or use of information he obtained in his work for FGIC. See

---

[3] Because there has been no disclosure, the Court cannot grant any weight to Mr. D'Vari's testimony and thus should preclude it outright at this time.

11

Michelson, 1989 WL 31514, at *4; see also Lippe v. Bairnco Corp., 288 B.R. at 688 ("because of his advocacy on behalf of the plaintiffs as counsel and legal advisor, I do not believe that he can now testify with the detachment and independence that one would expect from an expert witness offering views as a professional."); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., Civ. A. No. 95-8833, 2000 WL 42202, at *5 (S.D.N.Y. Jan. 19, 2000) (disqualifying doctor who had learned confidential information belonging to defendant from serving as expert against defendant in subsequent litigation). To safeguard the integrity of the litigation process, the Court cannot simply take FGIC's word that Mr. D'Vari's prior advice does not conflict with testimony here and should preclude his testimony.

### B.    Mr. Lipps Was Counsel To The Debtors On The Very Issues To Which He Seeks To Give Expert Testimony

19.    Mr. Lipps was first retained by RFC in the 1990s and was retained to represent the Debtors regarding pending MBIA litigation in 2010 (See Lipps Dep. Tr. at 10:8-11:6; 22:22-24:25.). On July 25, 2012, the Court entered an order under section 327(e) authorizing the employment and retention of Carpenter Lipps & Leland LLP as Special Litigation Counsel to the Debtors, Nunc Prop Tunc to May 14, 2012 [Docket No. 907]. In addition to serving as the Debtors' defense counsel in RMBS litigation for the past three years, Mr. Lipps was deeply involved in the prosecution of the RMBS Settlement Motion, including drafting briefs for the Debtors. (See id. at 8:2-8.) With respect to the FGIC Settlement Agreement, Mr. Lipps was asked "to provide [his] opinions with respect to the uncertainty and/or risk associated with

prosecuting or defending the various claims that were being asserted initially by FGIC and the litigation that [he] was involved in representing the various Debtors on[.]"[4] (Id. at 17:3-12.)

20. Mr. Lipps' role as the Debtors' counsel of record precludes him from meeting the obligation of all experts to "approach every question with independence and objectivity." Steven Lubet & Elizabeth I. Boals, *Expert Testimony: A Guide for Expert Witnesses and the Lawyers Who Examine Them* 163 (2d ed. 2009). Mr. Lipps cannot give impartial expert testimony on issues central to the Settlement Agreement, knowing that his candid testimony on these issues could damage his client's cause and could, in fact, conflict with his prior advice. Not only would this dual role pose a sharp conflict of interest for Mr. Lipps – potentially forcing him to choose between his duties as a lawyer to represent his client zealously and his duties to the Court to serve as an independent and objective expert—it would also create a glaring appearance of impropriety. The Committee raised this very issue in their Motion In Limine to Preclude the Expert Testimony of Jeffrey A. Lipps in Connection with the Debtors' Motion for Approval of the RMBS Trust Settlement Agreements (the "Committee Motion In Limine"), which motion was still sub judice when the settlement motion was overtaken by the Global Settlement. (See Committee Motion In Limine [Docket No. 3612] at 2 ("Mr. Lipps' proposed expert testimony is highly problematic . . . Mr. Lipps' ability to testify with the detachment and independence required of an expert is severely compromised by his simultaneous role as the Debtors' counsel in this very matter.") Notably, FGIC joined in the Committee's Motion In Limine and separately

---

[4] To the extent that the Debtors are offering Mr. Lipps to express a legal opinion, such testimony is inadmissible, as both the Committee and FGIC have previously noted. (See, e.g., FGIC Supplemental Objection at 2-3.)

13

objected to Lipps' testimony.[5] (See Joinder of Financial Guaranty Insurance Company in Support of Motions in Limine of the Official Committee of Unsecured Creditors [Docket No. 3618], and Financial Guaranty Insurance Company's Response to Debtors' Daubert Motion to Exclude the Testimony of FGIC's Expert Clifford Rossi and Supplemental Objection to the Testimony of Jeffrey Lipps [Docket No. 3724].) Despite this quite legitimate challenge interposed by the Committee and FGIC, the Debtors chose once again to retain Mr. Lipps as an expert with respect to FGIC and then to offer his testimony to the Court. The Court need not and should not admit that testimony into the record and should instead grant the Motion.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Ad Hoc Group respectfully requests that the Court enter an Order (i) precluding Mr. Kruger and Mr. Dubel from offering certain testimony at the hearing of the FGIC Settlement Motion, (ii) precluding Mr. D'Vari and Mr. Lipps from offering any expert testimony at the hearing of the FGIC Settlement Motion, and (iii) granting such other and further relief as the Court deems just and proper.

---

[5] Noting, among other things, that, "[t]he methodology employed by Mr. Lipps violates the reliability standards [for experts] . . . because, although he opines on the reasonableness of the [] settlement amount, his methods do not include any analysis of the quantitative components of the settlement." (FGIC Supplemental Objection to Testimony of Jeffrey Lipps [Docket No. 3724] at 4.)

Dated: August 7, 2013
     New York, New York

Respectfully submitted,

By: */s/ J. Christopher Shore*
J. Christopher Shore

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
J. Christopher Shore
Harrison L. Denman

       and

MILBANK, TWEED, HADLEY & MCCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 530-5219
Gerard Uzzi

*Attorneys for the Ad Hoc Group of Junior Secured Noteholders*

15

NEWYORK 8940724