**Hearing Date: To Be Determined**
**Objection Deadline:  August 13, 2013**

**MCKOOL SMITH, P.C.**
Peter S. Goodman
Michael R. Carney
One Bryant Park, 47th Floor
New York, New York 10036
Telephone:  212-402-9400
Facsimile:  212-402-4444

*Counsel for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**MOTION *IN LIMINE* OF FEDERAL HOME LOAN MORTGAGE CORPORATION TO PRECLUDE CERTAIN EXPERT TESTIMONY OF DR. RON D'VARI IN CONNECTION WITH THE DEBTORS' MOTION PURSUANT TO FED R. BANKR. P. 9019 FOR APPROVAL OF THE SETTLEMENT AGREEMENT AMONG THE DEBTORS, FGIC, THE FGIC TRUSTEES AND CERTAIN INSTITUTIONAL INVESTORS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac"), by and through its undersigned counsel, hereby files this motion *in limine* (the "Motion") to preclude certain expert testimony of Dr. Ron D'Vari ("D'Vari") in connection with the *Debtors' Motion Pursuant to Fed. Bankr. P. 9019 for Approval of the Settlement Agreement among the Debtors,*

*FGIC, the FGIC Trustees and Certain Institutional Investors* [ECF No. 3929] (the "9019 Motion").[1]  In support of this Motion, Freddie Mac respectfully states as follows:

## OVERVIEW

1.  D'Vari's firm, NewOak Capital Advisors, LLC ("NewOak"), was a consultant/advisor to Federal Guaranty Insurance Company ("FGIC")         .[2]  The work involved running stress loss analysis, which formed the bases of the FGIC Rehabilitation Plan term sheet (the "Terms Sheet") that FGIC—and the Steering Committee[3] submitted to the New York Department of Financial Services.  This Term Sheet, in turn, formed the basis of FGIC's rehabilitation plan (the "Rehabilitation Plan").  Sometime after the filing of the Rehabilitation Plan, NewOak commenced providing services to the above-captioned debtors and debtors-in-possession (collectively, "ResCap," or the "Debtors") analyzing the very same ResCap trusts to (the "FGIC-Insured ResCap Trusts").[4]

---

[1] This Motion and accompanying exhibits have been filed publicly in redacted form pursuant to this Court's July 16, 2013, *Order Regarding the Exchange of Confidential Information* (the "Confidentiality Order") [ECF No. 4249]. Non-redacted copies of this Objection will be delivered to the Court and served upon the parties covered by the Confidentiality Order.  Copies of deposition transcripts cited herein will be made available to the parties covered by the Confidentiality Order upon request.

[2] *See Deposition of Ron D'Vari* (the "D'Vari Deposition"), July 25, 2013, at 26:22-25.  The relevant pages from the D'Vari Deposition cited herein are attached as Exhibit A hereto.

[3] The "Steering Committee" is comprised of a number of large holders of securities that were insured by FGIC-issued policies that worked with FGIC to formulate its plan of rehabilitation plan.  The Steering Committee is represented by the Bingham Dana firm, and Freddie Mac was an adjunct member.

[4] The payment of principal and interest of certain tranches of securities in the FGIC-Insured ResCap Trusts are insured/guaranteed by certain policies FGIC issued (the "Policies").

2.      D'vari has submitted two declarations to this court in support of the 9019 Motion. His first declaration (the "D'Vari Declaration"), attached hereto as Exhibit B, was submitted on June 11, 2013, as Exhibit 5 to the 9019 Motion.[5]  It said, on paragraph 2, that "I believe that a conservative estimate of the aggregate amount of the claims [related to collateral losses] released by the FGIC [ResCap] Trustees . . . under the Settlement Agreement is $5,001,609,304." Paragraphs 55-56 of the D'Vari Declaration explain how D'Vari arrived at this number. After his deposition, D'Vari submitted the *Direct Testimony of Ron D'Vari* (the "D'Vari Direct Testimony") [ECF No. 4432]. In the D'Vari Direct Testimony, D'Vari said that the $5,001,609,304 figure "does *not* reflect an analysis of the potential losses to Wrapped Bonds." That statement contradicts the D'Vari Declaration and is not adequately justified or explained in the D'Vari Direct Testimony.

3.      Accordingly, through this Motion, Freddie Mac requests that this Court not consider and exclude D'Vari's qualification that the $5,001,609,304 figure "does *not* reflect an analysis of the potential losses to Wrapped Bonds."

## RELEVANT FACTS

4.      In D'Vari Declaration, D'Vari states unequivocally that:

> I believe that a <u>conservative estimate</u> of the aggregate amount of the claims released by the FGIC Trustees (as defined below) under the Settlement Agreement is $5,001,609,304.

(D'Vari Declaration ¶ 2.)  D'Vari goes on to explain his calculation in paragraphs 55-56 of the D'Vari Declaration:

> In summary, the total estimated lifetime losses to Non-Wrapped Bonds is $22,537,395, the estimated lifetime losses to Senior IO certificates is zero, and the

---

[5] The D'Vari Declaration is attached hereto as Exhibit B.

>   estimated upper bound of unrealized expected Residual economic value is
>   $390,385,776, <u>for a total estimated lifetime loss to non-wrapped interests in the
>   FGIC Insured Trusts of $412,923,171.</u>

(D'Vari Declaration ¶ 55 (emphasis added).)  Hence, under the Debtors' own expert's estimation, the losses to non-wrapped tranches of the FGIC-Insured ResCap Trusts amount to approximately $413 million. (*Id.*)  D'Vari goes on to say that:

>   Based on my understanding that the FGIC Trustees have asserted that their claims
>   are premised on the total lifetime collateral losses to the FGIC Insured Trusts,
>   which I estimate to be $5,414,532,474 as set forth above, and my understanding
>   that the those claims are being released under the Settlement Agreement except
>   that claims arising out of any past or future losses to holders of non-wrapped
>   interests are not being released, I estimate of the aggregate amount of the claims
>   released by the FGIC Trustees under the Settlement Agreement to be
>   $5,001,609,304.

(D'Vari Declaration 56.)

    5.    In sum, D'Vari estimated the lifetime collateral losses to each of the FGIC-Insured ResCap Trusts (approximately $5.4 billion), subtracted the amounts related to the un-wrapped tranches of such trusts (approximately $413 million) then arrived at the amount of around $5.0 billion for the lifetime collateral losses—the alleged basis for the claims of the FGIC Trustees related to the FGIC-Insured Tranches, as summarized in the chart below:

| | |
|---|---|
| Total Collateral Losses to FGIC-Insured ResCap Trusts | $5,414,532,474 |
| Minus Total Collateral Losses to Non-Wrapped Tranches | ($412,923,171) |
| **Equals Total Collateral to Wrapped Tranches** | **$5,001,609,304** |

Because such wrapped tranches are wrapped by FGIC-issued policies, FGIC would be responsible covering such $5.0 billion in losses by D'Vari's own logic.  Indeed, D'Vari testified

- 4 -

that the $5.0 billion was a "Base Case" analysis reflecting the expected outcome under the current economic environment.[6]

6. This is in stark contrast to the Rehabilitator's alleged claims of the FGIC Trustees in the Affirmation of Gary T. Holtzer (the "Holtzer Affirmation") submitted to the New York State court overseeing FGIC's rehabilitation proceeding. The Holtzer Affirmation estimates that there are $789 million in claims currently pending against FGIC related to its obligations under Policies sought to be commuted, with additional claims in excess of $400 million that will arise under the Policies in the future, totaling approximately $1.2 billion in claims.

7. D'Vari's estimates, when compared to those in the Holtzer Affirmation, illustrate the inherent riskiness and uncertainty inherent in the proposed commutation of the Policies in exchange for a lump-sum payment of $253.3 million and $18.3 million in waived future premiums that would otherwise have to be paid on the Policies. Simple mathematics illustrates this point: Dividing the estimated $1.2 billion into the $253.3 million commutation amount plus the $18.3 million in premiums waived indicates that the Settlement Agreement would provide for a recovery of approximately 21 cents on the dollar to holders of FGIC-wrapped securities in the FGIC-Insured ResCap Trusts. Taking D'Vari's $5.0 billion number as the denominator, the recovery under the Settlement Agreement amounts to a recovery of only 5.4 cents on the dollar.

8. In a likely recognition of the effect D'Vari's numbers would have on projected recoveries to investors in the FGIC-Insured ResCap Trusts, D'Vari, in an abrupt about-face,

---

[6] D'Vari Deposition at 94: 7-12:

> Q. Before we take a break, I will ask you, is it your opinion that the Base Case—the Base Case analysis in your Declaration reflects the expected outcome under the current economic environment?
>
> A. Right.

claimed at his deposition that the $5.0 billion number he claimed that is "conservative estimate of the aggregate amount of the claims released by the FGIC Trustees" and was not actually the amount of losses attributable to the FGIC-Insured ResCap Trusts. He also back-tracked on the original D'Vari Declaration that "a <u>conservative estimate</u> of the aggregate amount of the claims released by the FGIC Trustees (as defined below) under the Settlement Agreement is $5,001,609,304" in the D'Vari Direct Testimony, where he states:

> I estimate the aggregate amount of the claims released by the FGIC Trustees under the Settlement Agreement to be $5,001,609,304. <u>That figure does *not* reflect an analysis of the potential losses to Wrapped Bonds</u>, but rather reflects the Lifetime Expected Collateral Losses of the FGIC Insured Trusts based on a base case forecast *minus* the upper limit of Losses to Non Wrapped Interests in the FGIC Insured Trusts, as explained below [emphasis added].

9. Yet, as is the case in his deposition, he utterly fails to explain how the claims the FGIC Trustees are releasing under the Settlement Agreement against FGIC of approximately $5.0 billion do not reflect the upside of the "potential losses to the Wrapped Bonds." (*See* D'Vari Declaration ¶¶ 2, 55-56; D'Vari Direct Testimony ¶ 4.)

10. D'Vari's supplementation/qualification is not accompanied by any adequate justification or explanation and should be stricken from the D'Vari Direct Testimony and not considered by this Court.

11. Notably, the testimony in the original D'Vari Declaration supports the reality here that if losses are within the higher end of their range for a particular FGIC-Insured Trust (as predicted by D'Vari), under the Rehabilitation Plan Investors in such trust can look to have their claims paid by FGIC at the 27 to 30% rate (the recovery range amount determined by the Rehabilitator's financial advisor in the *Affidavit of Michael W. Miller* in support of the Rehabilitation Plan, attached hereto as Exhibit D). That is because the risk is spread across FGIC's entire portfolio and not to any particular trust or group of trusts. But if the FGIC-Insured

ResCap Trusts are limited to the $253.3 million commutation payment, Investors in the affected trusts recovery percentage would decline as a result of increased losses.  So, rather than reducing risk of recoveries, the proposed FGIC commutation actually works to increase risk to investors in the trusts as long as claims remain undetermined and may possibly rise in the future.  Any estimate of recoveries under the Rehabilitation Plan *vis-à-vis* the FGIC commutation must take into account the rest of FGIC's portfolio.

## RELIEF REQUESTED

12.     Through this Motion, Freddie Mac respectfully requests that this Court preclude the expert testimony of D'Vari stated in the D'Vari Direct Testimony in paragraphs 4 and 70 to because they are inconsistent with the D'Vari Declaration.[7]

## BASIS FOR RELIEF

13.     Courts have stated that rebuttal expert reports (what the D'Vari Direct Testimony essentially is) are not the proper place for presenting new arguments—unless presenting those arguments is substantially justified. *Ebbert v. Nassau County*, No. CV 05-5445, 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ("A rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'") (citations omitted); *Larson v. Wis. Cent. Ltd.*, No. 10-C-446, 2012 LEXIS 13057, at *10 (E.D. Wis. Feb. 3, 2012) (rebuttal report "cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions"); *Cage v. City of Chi.*,

---

[7] Freddie Mac also requests that this Court preclude his testimony that he did not review, consider, or rely on NewOak's prior work for FGIC in the analysis for the Debtors because he outright refused (or was improperly instructed to refuse) to answer any but the most basic questions pertaining to the FGIC engagement. (See D'Vari Direct Testimony ¶ 70.)

- 7 -

No. 09-C-3078, 2012 LEXIS 163026, at *7 (N.D. Ill. Nov. 14, 2012) (party cannot "offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief").

14.     There is no adequate explanation in the D'Vari Direct Testimony—where he states that the $5.0 billion in collateral losses to the wrapped tranches in the FGIC-Insured ResCap Trusts "does *not* reflect an analysis of the potential losses to Wrapped Bonds"—for as a qualification to the D'Vari Declaration regarding his "<u>conservative estimate</u> of the aggregate amount of the claims released by the FGIC Trustees (as defined below) [against FGIC] under the Settlement Agreement is $5,001,609,304." This statement should be stricken and should not be considered by the Court because there is no adequate justification or explanation for D'Vari's qualification in the D'Vari Direct Testimony.



REDACTED

**WHEREFORE**, for the reasons set forth above, Freddie Mac respectfully requests that the Court (i) grant the Motion, (ii) preclude D'Vari from offering expert testimony at the hearing

---

[8] D'Vari Deposition at 104:3-105:12.

[9] D'Vari Deposition 111:10-12.

[10] D'Vari Deposition 113:6-15.

on the 9019 Motion as set forth herein, and (iii) grant such other and further relief that may be just and proper under the circumstances.

Dated: August 7, 2013
New York, New York

                Respectfully submitted,

                    **MCKOOL SMITH, P.C.**

                By: /s/ Michael R. Carney

                Peter S. Goodman
                Michael R. Carney
                One Bryant Park, 47th Floor
                New York, New York 10036
                Telephone: 212-402-9414
                Facsimile: 212-402-9444

              *Counsel for Federal Home Loan Mortgage Corporation*

REDACTED