Hearing Date:  September 11, 2013 at 10:00 am
General Objection Deadline:  August 21, 2013 at 4:00 pm
United States Trustee Objection Deadline:  August 28, 2013 at 4:00 pm

CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ----------------------------------------------------------------- ) | |
| In re:                                          ) | Case No. 12-12020 (MG) |
|                                                    ) | |
| RESIDENTIAL CAPITAL, LLC, et al.,    ) | Chapter 11 |
|                                                    ) | |
|                                                    ) | Jointly Administered |
| Debtors.                                     ) | |

**SUMMARY OF THIRD INTERIM APPLICATION OF CARPENTER LIPPS**
**& LELAND LLP AS SPECIAL LITIGATION COUNSEL FOR THE**
**DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**INCURRED FOR THE PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013**

{00360565-3}

This is a(n):  ___  monthly   _x_  interim  ___  final application.

| | |
|---|---|
| Name of Applicant: | Carpenter Lipps & Leland LLP ("**Applicant**") |
| Authorized to Provide Professional Services to: | Residential Capital, LLC, *et al*. (collectively, the "**Debtors**") |
| Date of Retention: | Order entered on July 25, 2012 retaining Applicant *nunc pro tunc* to May 14, 2012 |
| Period for which Compensation and Reimbursement is sought: | January 1, 2013 through April 30, 2013 (the "**Third Compensation Period**") |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $1,659,806.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $977,371.77 |
| Previous Compensation awarded on an interim basis: | $2,821.599.50 |
| Previous Reimbursement of Expenses awarded on an interim basis: | $975,113.76 |

**Summary of Monthly Applications for Third Compensation Period:**

| Date Filed | Compensation Period | Requested Fees | Requested Expenses | Fees Paid | Expenses Paid | 20% Holdback |
|---|---|---|---|---|---|---|
| 02/27/2013 | 01/01/2013-01/31/2013 | $571,263.50 | $265,594.11 | $456,695.60[1] | $265,594.11 | $114,077.90[2] |
| 03/20/2013 | 02/01/2013-02/28/2013 | $466,030.50 | $667,486.87 | $372,056.40[3] | $663,980.79[4] | $93,116.10 |
| 04/23/2013 | 03/01/2013-03/31/2013 | $415,666.50 | $25,772.95 | $244,116.79[5] | $25,526.10[6] | $83,079.30 |
| 05/23/2013 | 04/01/2013-04/30/2013 | $208,055.50 | $22,023.92 | $166,444.40 | $22,023.92 | $41,611.10 |
| **TOTAL** | 01/01/2013-04/30/2013 | $1,661,016.00[7] | $980,877.85[8] | $1,239,313.19 | $977,124.92 | $331,884.40 |

---

[1] After reviewing the application, the Debtors requested a reduction of $394.00 in fees for the January Application. This total represents 80% of the requested fees less the $394.00 reduction.

[2] This total represents the 20% holdback based on the fees originally requested minus the Debtors' requested reduction of $394.00. This then subtracts $96.00 in fees that Applicant is voluntarily reducing based on the charges of a timekeeper who billed less than five hours for the Third Compensation Period.

[3] After reviewing the application, the Debtors requested a reduction of $450.00 in fees for the February Application. This total represents 80% of the requested fees minus the $450.00 reduction less $408.00 for invoice 53435, for which Applicant has not yet received the full 80% of fees from the Debtors.

[4] After reviewing the application, the Debtors requested a reduction of $3,506.08 in expenses for the February Application. This total represents 100% of the requested expenses less the $3,506.08 reduction.

[5] After reviewing the application, the Debtors requested a reduction of $270.00 in fees for the March Application. This total represents 80% of the requested fees minus the $270.00 reduction minus $88,200.41 for invoices 53926, 53927, 53928, 53930, 53931 and 53936 for which Applicant has not yet received the full 80% of fees from the Debtors.

[6] This total represents 100% of the requested expenses minus $246.85 for invoices 53930 and 53931, for which Applicant has not yet received the full 100% of expenses from the Debtors.

[7] This total is based on the monthly totals before making the reductions in fees described above. The aggregate request of Applicant on the cover for $1,659,806.00 in fees reflects these reductions.

[8] This total is based on the monthly totals before making the reductions in expenses described above. The aggregate request of Applicant on the cover for $977,371.77 in expenses reflects these reductions.

{00360565-3}

CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio  43215
Phone:  (614) 365-4100
Fax:  (614) 365-9145
Jeffrey A. Lipps (admitted *pro hac vice*)
Jennifer A.L. Battle (admitted *pro hac vice*)
David A. Beck (admitted *pro hac vice*)

*Special Litigation Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

------------------------------------------------------------

## THIRD INTERIM APPLICATION OF CARPENTER LIPPS & LELAND LLP AS SPECIAL LITIGATION COUNSEL FOR THE DEBTORS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES <u>INCURRED FOR THE PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013</u>

For its third interim application for compensation and reimbursement of expenses

(the "**Application**") for the period January 1, 2013 through April 30, 2013 (the "**Third**

**Compensation Period**") Carpenter Lipps & Leland LLP ("**Applicant**"), special litigation

counsel to Residential Capital, LLC., *et al.*, as debtors and debtors in possession (collectively,

the "**Debtors**"), respectfully represents as follows:

## <u>JURISDICTION, VENUE AND STATUTORY PREDICATES</u>

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of

this proceeding and this Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409.

       2.      The statutory bases for the relief requested herein are sections 330, 331, and 1103

of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**").

This Application has been prepared in accordance with General Order M-447, *Amended*

*Guidelines for Fees and Disbursements for Professionals in Southern District of New York*

*Bankruptcy Cases*, entered December 21, 2010 (the "**Local Guidelines**"), and the *United States*

*Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of*

*Expenses Filed Under 11 U.S.C. § 330* effective January 30, 1996 (the "**UST Guidelines**" and,

together with the Local Guidelines, the "**Guidelines**").  Pursuant to the Local Guidelines, a

certification regarding compliance with the Local Guidelines is attached hereto as <u>Exhibit A</u>.

**<u>BACKGROUND</u>**

**<u>The Chapter 11 Cases</u>**

       3.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are

managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).  No trustee has been appointed in these Chapter 11 cases.

       4.      On May 16, 2012, the United States Trustee for the Southern District of New

York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors

(the "**Creditors' Committee**").

5.      On June 20, 2012, the Court directed that an examiner be appointed, and on

July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner (Docket Nos. 454, 674).

On May 13, 2013, the Examiner filed his report under seal (Docket Nos. 3677, 3697). On

June 26, 2013, the report was unsealed and made available to the public (Docket No. 4099).

**Applicant's Retention and Interim Compensation**

6.      On July 25, 2012, the Court entered the Order Under Section 327(e) of the

Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1 Authorizing the

Employment and Retention of Carpenter Lipps & Leland LLP as Special Litigation Counsel to

the Debtors, *Nunc Pro Tunc*, to May 14, 2012 (Docket No. 907), approving Applicant's

retention.

7.      On July 17, 2012, the Court entered the *Order Establishing Procedures for

Interim Compensation and Reimbursement of Expenses of Professionals* (the "**Interim

Compensation Order**") (Docket No. 797).  Pursuant to the terms of the Interim Compensation

Order, Applicant, among others, is authorized to file and submit monthly fee applications to the

Debtors and their counsel, counsel for the Creditors' Committee, counsel for Ally Financial Inc.,

and the United States Trustee (collectively, the "**Notice Parties**").

8.      On October 19, 2012, Applicant filed its first interim fee application (Docket

No. 1889) (the "**First Interim Application**").  On December 28, 2012, the Court entered its

Omnibus Order (Docket No. 2530) (the "**First Fee Order**") concerning the first fee applications

filed for retained professionals.  As part of the First Fee Order, the Court authorized on an

interim basis $949,060.00 in fees and $334,034.08 in expenses for Applicant, which reflected

certain consensual reductions from the amounts requested in the First Interim Application agreed

to between the Applicant and the United States Trustee.

9.      On March 13, 2013, Applicant filed its second interim fee application (Docket No. 3174) (the "**Second Interim Application**").  On April 29, 2013, the Court entered its Omnibus Order (Docket No. 3556) (the "**Second Fee Order**) concerning the second fee applications filed for retained professionals.  As part of the Second Fee Order, the Court authorized on an interim basis $1,872,539.50 in fees and $641,079.68 in expenses for Applicant, which reflected certain consensual reductions from the amounts requested in the Second Interim Application agreed to between the Applicant and the United States Trustee.

10.      On February 27, 2013, Applicant served its monthly fee application covering the period from January 1, 2013 to January 31, 2013 (the "**January Monthly Fee Application**") on the Notice Parties.  On March 20, 2013, Applicant served its monthly fee application covering the period from February 1, 2013 to February 28, 2013 (the "**February Monthly Fee Application**") on the Notice Parties.  On April 23, 2013, Applicant served its monthly fee application covering the period from March 1, 2013 to March 31, 2013 (the "**March Monthly Fee Application**") on the Notice Parties.  On May 23, 2013, Applicant served its monthly fee application covering the period from April 1, 2013 to April 30, 2013 (the "**April Monthly Fee Application**" and, together with the January Monthly Fee Application, the February Monthly Fee Application, and the March Monthly Fee Application, the "**Monthly Fee Applications**") on the Notice Parties.  The Applicant did not receive any formal objections to the Monthly Fee Applications, although the Debtors did request reductions based on their ordinary course review of Applicant's fees of **$**1,114.00 and expenses of $3,506.08.  Applicant has agreed to those reductions.  The totals sought on the cover sheet reflect these reductions.

11.    For the convenience of this Court and all parties in interest, attached hereto as
Exhibit B is a schedule of the total amount of fees incurred under each of Applicant's internal
task codes during the Third Compensation Period.

12.    To date, the Applicant has received payments totaling $2,216,438.11, representing
$1,239,313.19 in fees and $977,124.92 in expenses on account of the Monthly Fee Applications.
This represents 80% of the fees and 100% of the expenses for the January and April Fee
Applications (subject to the agreed reductions described above).  Applicant has to date been paid
only a portion of the amounts requested for the February and March Fee Applications.

13.    Applicant maintains computerized records of the time expended in the rendering
of the professional services required by the Debtors.  These records are maintained in the
ordinary course of Applicant's practice.  For the convenience of this Court and all parties in
interest, attached hereto as Exhibit C is a billing summary for the Third Compensation Period,
setting forth the name of each attorney and paraprofessional who rendered services during the
Third Compensation Period, each attorney's year of bar admission, the aggregate time expended
by each attorney and each paraprofessional, the hourly billing rate for each attorney and each
paraprofessional at Applicant's current billing rates, and the individual amounts requested for
each professional.  Exhibit C also provides the blended hourly rate for Applicant's attorneys
during the Third Compensation Period.  The compensation requested by Applicant is based on
the agreed hourly rates it has in place with the client.  As disclosed by Supplemental Declaration
(Docket No. 2775), certain of Applicant's professionals' rates were increased by agreement with
the Debtors effective January 1, 2013.  For the remaining professionals, the applicable rate is
either the rate in place prepetition or the rate agreed to by the Debtors when that professional

first started working for the Debtors' postpetition.  All of these agreed on rates are discounted from Applicant's standard hourly rates.

14.    Applicant also maintains computerized records of all expenses incurred in connection with the performance of professional services.  A summary of the amounts and categories of expenses for which reimbursement is sought is attached hereto as Exhibit D.   In accordance with the Court's instructions at the previous fee hearing, included in Exhibit D are copies of the invoices supporting Applicant's request for reimbursement of contract attorneys and airfare.

15.    In connection with the requested reimbursement of expenses for the fees incurred by contract document reviewers, Applicant wishes to provide the following additional detail. The use of these reviewers was essential for the review of over 400,000 documents and the production of almost three million pages during the Third Compensation Period.  Using contract reviewers resulted in substantial savings to the Debtors' estates over alternative forms of production.  The electronic review platforms Applicant uses track the number of hours each contract reviewer is logged in and the average number of documents coded per hour for each reviewer.  On a weekly basis, Applicant reviews the time cards submitted by the staffing agencies for each contract attorney and compares these against the reports produced by the review platform.  This is used to verify that hours on time cards are actually worked and that the reviewer is being productive based on the number of documents reviewed per hour.  If based on this review the time spent by the contract attorney appears unreasonable, the time card is rejected.  The benchmarks for what is reasonable are based on both years of experience in conducting complex document reviews for Residential Capital and industry standards and are adjusted based on the complexity of the documents which each reviewer is assigned to review.

Applicant only bills Residential Capital for contract reviewer time which is approved through this process.

16.    Copies of Applicant's computerized records of fees and expenses in the format specified by the Guidelines have been served on the Notice Parties with each of the Monthly Fee Applications and are attached hereto as <u>Exhibit E</u>.[1]

17.    There is no agreement or understanding between Applicant and any other person, other than partners and of counsel of the firm, for the sharing of compensation to be received for services rendered in the Chapter 11 Cases.

18.    The Monthly Fee Applications submitted by Applicant are subject to a 20% holdback (as is customary in this District) imposed by the Court on the allowance of fees.  The aggregate amount of Applicant's holdback during the Third Compensation Period is $331,884.40 (the "**Third Holdback**").  In addition, as parts of the First Fee Order and the Second Fee Order, the Court directed that $95,796.00 in compensation (the "**First Holdback**"), and $187,253.95 in compensation (the **"Second Holdback**"), respectively, approved on an interim basis by the Court be withheld by the Debtors as part of the general withholding of 10% of allowed compensation for all professionals.  Applicant respectfully requests, in connection with the relief requested herein, that the Court allow both the Third Holdback on an interim basis pursuant to sections 330 and 331 of the Bankruptcy Code and authorize the Debtors to satisfy the First Holdback, the Second Holdback, and the Third Holdback.

---

[1] Based on the Applicant's discussions with the UST in connection with its objection to the Second Interim Application regarding vague time entries, Applicant has provided supplements to the descriptions of a handful of time entries.  Those time entries are designated with a star in the invoices and the invoice is followed by a page providing the additional description beyond that which was previously served out on the Notice Parties.  Applicant is not charging the Debtors for time spent in connection with this supplementation.

## DESCRIPTION OF SERVICES AND
## EXPENSES AND RELIEF REQUESTED

19.     In general, Applicant has represented the Debtors in connection with the

following aspects of the Chapter 11 Cases during the Third Compensation Period:

- Applicant has assisted in the production of almost three million pages of documents, the research and drafting of submission papers to the Examiner and in the preparation of approximately 20 witnesses who were interviewed by the Examiner;

- Applicant assisted Morrison & Foerster LLP ("**Morrison & Foerster**") in analysis and preparations to litigate claims with the monoline insurers, including preparing draft objections to claims and preparing discovery requests to certain monoline insurers;

- Applicant has assisted Morrison & Foerster in the Debtors' efforts to obtain approval of the Debtors' proposed settlement of claims related to securitizations sponsored by the Debtors between 2004 and 2007, including researching and drafting work in support of the Settlement, and having Jeffrey Lipps serve as an expert witness in connection with that proceeding;

- Applicant has assisted the Debtors and Morrison & Foerster in responding to numerous discovery requests in the bankruptcy cases, including discovery from the Official Committee of Unsecured Creditors and third parties and provided advice on e-discovery and record retention issues;

- Applicant has analyzed issues relating to the securities claims being asserted against the Debtors;

- Applicant has helped the Debtors respond to the ongoing investigation by the Securities and Exchange Commission; and

- Applicant has represented the Debtors in numerous suits in the state of Ohio arising out of their servicing of mortgage loans.

To provide an orderly and meaningful summary of the services rendered by Applicant on behalf

of the Debtors during the Third Compensation Period, Applicant established, in accordance with

the Guidelines and its internal billing procedures, separate task codes in connection with the

Chapter 11 Cases.[2]  The following is a summary of the most significant professional services

rendered by Applicant during the Third Compensation Period organized in accordance with

Applicant's internal system of task codes:

**SEC Post-Petition (932-054)**

Fees:  $8,146.00; Total Hours: 37.00;

20.    Prior to the Petition Date, Applicant represented the Debtors in responding to an

ongoing SEC investigation by assisting in the collection and production of documents to the

SEC.  Since the Petition Date, Applicant has continued to work on the collection, review, and

production of documents for this investigation. Applicant's activities with respect to the SEC

during the Third Compensation Period included:

- Applicant worked with the Debtors and Morrison & Foerster to locate sources of information responsive to the SEC's inquiries;

- Applicant participated in calls with the Debtors and Morrison & Foerster's securities litigation team regarding the SEC investigation and responding to the SEC's inquiries; and

- Applicant helped Morrison & Foerster prepare for meetings with SEC personnel.

**RMBS Trust Settlement (932-057)**
Fees:  $69,427.00; Total Hours:  295.9

21.    Because of Applicant's representation of the Debtors in prepetition representation

and warranty litigation, Morrison & Foerster has regularly consulted with Applicant regarding

the issues involved in the settlement.  As part of this consultation, Morrison & Foerster requested

Applicant research certain legal or factual issues related to the settlement.  Jeffrey Lipps of the

---

[2] Because almost all of CLL's services as special litigation counsel would fit either within the claims administration or litigation matter categories in the United States Trustee's standard list of matters, CLL has created specific matter numbers by particular litigation project to help better track the time and expenses it is incurring in these cases.  The categories are the same ones used in connection with the First Fee Application and the Second Fee Application, but with the addition of certain additional matters for specific litigation cases for which it is representing the Debtors on in the State of Ohio related to the Debtors' servicing of mortgage loans.

Applicant provided a supplemental declaration in support of the settlement during the Third

Compensation Period, which required substantial work on the part of Applicant during the Third

Compensation Period.

22.    During the Third Compensation Period, the Official Committee of Unsecured

Creditors and Financial Guaranty Insurance Company filed motions to preclude Mr. Lipps from

testifying.  At the request of Morrison & Forester, Applicant assisted in drafting responses to

these objections.

23.    Applicant also worked with Morrison & Foerster and the Debtors' other experts

regarding their reply reports.  In connection with this work, Applicant also helped analyze the

expert reports filed by objectors to the settlement and helped Morrison & Foerster analyze the

best way to respond to these experts, including the filing of motions in limine with respect to

some of these reports.

24.    Applicant also assisted Morrison & Foerster in working on the reply briefing in

support of the RMBS Trust Settlement.  At Morrison & Foerster's request, Applicant analyzed

certain of the objections to the RMBS Trust Settlement.  Applicant researched certain issues

relevant to the reply briefing and prepared drafts of sections of the brief in close coordination

with Morrison & Foerster.  Among the objections to the RMBS Trust Settlement were objections

by the monolines to the scope of the releases in the settlement.  Applicant assisted Morrison &

Foerster in analyzing the settlement proposals made by the monolines regarding the release and

participated in meet and confer sessions regarding the meaning of the releases.

**Securities Claims (932-058)**
Fees:  $35,974.00 Total Hours:  122.7

25.    To prepare for the litigation concerning security claims in these cases, Applicant

monitored developments in other securities cases.  Applicant also researched certain potential

defenses to the securities claims being asserted against the Debtors and consulted with Morrison & Forester regarding potential defenses to these claims. Applicant also provided information to Morrison & Foerster regarding certain securities claims to help it prepare for the mediation sessions with Judge Peck. Morrison & Foerster also asked for information from Applicant for use in the briefing as part of the Debtors' attempt to subordinate certain securities claims in *Residential Capital LLC, et al. v. Allstate Insurance Company, et al.*, Adv. Pro. Case No. 13-01262 (MG) (Bankr. S.D.N.Y.). Applicant also analyzed the class certification motion filed by the New Jersey Carpenters plaintiffs with the Bankruptcy Court and conferenced with Morrison & Foerster regarding a response strategy to that motion. Finally, Applicant helped provide information to the Debtors regarding the securities claims as part of the Debtors' ordinary course audit letter process.

**Monoline Claims (932-059)**
Fees: $ 195,075.50; Total Hours: 699.30.

26.     Prior to the Petition Date, Applicant represented the Debtors in the cases brought by monoline insurers MBIA and FGIC. Since the Petition Date and at the request of Morrison & Foerster, Applicant has been working on addressing the monoline claims asserted in these cases. As the Court is well aware, these were some of the largest unliquidated proofs of claims filed in these cases addressing the monoline claims was one of the major impediments in negotiating the plan support agreement and is a major issue that needs to be faced to get a confirmable plan in these cases.

27.     Applicant provided a wide range of services to help address the claims of the monoline insurers during the Third Compensation Period:

- Based on its extensive prepetition experience with monoline insurers, Applicant helped Morrison & Foerster prepare discovery requests to certain of the monoline insurers. Applicant also helped with the drafting of Rule 2004 motions directed at

certain of the monoline insurers.  The monolines' agreement to produce documents led to these motions not being filed.

- Applicant participated in a series of meet and confers with two of the monoline insurers regarding the Debtors' document requests to the monolines.

- Applicant helped prepare responses to document requests the Debtors received from the two monoline insurers the Debtors had served document requests on.

- Applicant analyzed what records would likely have to be produced in response to discovery demands of monoline insurers.  In connection with this, the Applicant reviewed certain records and worked to identify likely custodians for litigation with monoline insurers.

- Applicant helped Morrison & Foerster prepare draft objections to claims of several of the monoline insurers and engaged in extensive analysis of the likely issues in litigation with these monoline insurers.

- Applicant participated in meetings with Morrison & Foerster and counsel to certain creditors regarding monoline claims.

- Applicant prepared analyses for Morrison & Foerster and the Debtors regarding the range of issues posed by the monoline claims.

- Applicant participated in meetings with Morrison & Foerster and the Debtors regarding strategy on monoline and other major claims.

- Applicant monitored the significant caselaw developments related to monoline claims during the Third Compensation Period and advised Morrison & Foerster and the Debtors regarding the impact of these decisions.

- Applicant helped advise Morrison & Foerster regarding the cure claim objections made by certain of the Monolines to the Debtors' proposed sale of assets.

**ResCap Discovery Issues (932-060)**
Fees:  $12,184.50; Total Hours:  53.60 hours

28.    Applicant used this matter for work on discovery issues not reported under another specific matter.  Specifically, Applicant used this matter for time and expenses related to assisting the Debtors in responding to third party subpoenas during this time period.  Applicant also advised the Debtors concerning certain e-discovery and record retention issues as they prepared for and consummated the sale of their servicing platform.

**Examiner (932-064)**
Fees:  $1,227,658.00; Total Hours:  5,480.20

29.    The bulk of Applicant's services for the Debtors during the Third Compensation Period related to the Examiner's investigation of the Debtors.  Applicant's work in responding to the Examiner's investigation can be broken into four broad categories.

30.    The first category was the ongoing collection, review, and production of documents to the Examiner.  While contract attorneys were generally used by the Applicant for the first level of review to keep costs down, Applicant's own employees engaged in extensive quality control reviews of the work of the contract attorneys to insure that documents were reviewed and coded properly, and prepared detailed privilege logs to accompany the productions. In order for this review to be conducted properly, Applicant had to research the factual backgrounds and roles of various current and former employees of the Debtors and advisors to the Debtors and others to insure that joint privilege and other review issues were analyzed correctly.  During the Third Compensation Period, Applicant assisted the Debtors in producing almost three million pages of documents to the Examiner.

31.    A second major category of Applicant's efforts during the Third Compensation Period was in assisting the Debtors' current and former employees in preparing for examiner interviews.  Because of Applicant's deep history of representing the Debtors, Morrison & Foerster requested the Applicants' assistance in this area.  The two firms collaborated closely in preparing these witnesses and divided up the preparation tasks for the various witnesses being interviewed by the Examiner.  Applicant assisted in the preparation of approximately 20 witnesses who were interviewed by the Examiner during the Third Compensation Period.  At Morrison & Foerster's request, Applicant also attended certain interviews of third parties to protect the Debtors' privilege and monitor what was said at these interviews.

32.     During the Third Compensation Period, a number of parties responded to the

Debtors' submission to the Examiner regarding the proposed release of third party claims.  At

Morrison & Foerster's request, Applicant analyzed these responses.  Of particular concern was a

response filed by MBIA based on discovery information from the Debtors' prepetition litigation

with MBIA.  Applicant helped analyze this response and the discovery materials from that

litigation.  Applicant then helped Morrison & Foerster with the preparation of rebuttal

submissions.

33.     Lastly, during the Third Compensation Period, the Examiner requested a meeting

with Applicant to get more background regarding the Debtors' securitization processes.  With the

approval of Morrison & Foerster and the Debtors, Applicant twice met with the Examiner to

provide a better understanding of the Debtors' securitization processes.  The Examiner ended up

citing to materials Applicant provided in his report.  *See* Examiner Report at VIII-17.

**Ohio Litigation Matters (Matters starting with 096 or 621).**
Fees:  $105,299.00; Total Hours: 449.50

34.     Applicant spent substantial time during the Third Compensation Period

representing the Debtors in litigation related to their servicing of mortgage loans in the state of

Ohio.  Applicant has been representing the Debtors for a number of years with respect to

contested foreclosures or other servicing related litigation in Ohio.  Applicant spent significant

time dealing with unstayed claims and claims for which the stay was modified pursuant to the

servicing orders entered in this case.  Substantial time was spent notifying individual courts and

opposing counsel concerning the provisions of the orders providing stay relief and explaining

how those orders affected the relief requested in each pending case.  In aggregate, Applicant

billed time to representing the Debtors in over 70 separate actions in the state of Ohio during the

Third Compensation Period.  Applicant opened new matters for cases which were transferred to

Walter or Ocwen in connection with the sale of the Debtors' servicing platform and does not charge the Debtors' estates for serviced rendered or expenses incurred on these matters after the effective date of the transfer.

35.    The foregoing descriptions of services rendered by Applicant in specific areas are not intended to be exhaustive of the scope of Applicant's activities in the Chapter 11 Cases.  The time records attached hereto as <u>Exhibit E</u> present more completely the work performed by Applicant in each billing category during the Third Compensation Period.

<u>**CONCLUSION**</u>

36.    Applicant believes that the services rendered during the Third Compensation Period on behalf of the Debtors were reasonable and necessary within the meaning of Bankruptcy Code section 330.  Further, the expenses requested were actual and necessary to the performance of Applicant's services.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

Applicant therefore requests an order (i) approving interim compensation in the amount

of $1,659,806.00 and interim reimbursement of expenses in the amount of $977,371.77,[3]

(ii) directing payment of the Third Holdback and any other amounts outstanding in connection

with the Monthly Fee Applications, (iii) authorizing payment of the First Holdback withheld

under the First Fee Order and the payment of the Second Holdback withheld under the Second

Fee Order; and (iv) granting such other and further relief as may be just and proper.

Dated: August 7, 2013

/s/ David A. Beck
Jeffrey A. Lipps (admitted *pro hac vice*)
lipps@carpenterlipps.com
Jennifer A.L. Battle (admitted *pro hac vice*)
battle@carpenterlipps.com
David A. Beck (admitted *pro hac vice*)
beck@carpenterlipps.com
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Phone: (614) 365-4100
Fax: (614) 365-9145

*Special Litigation Counsel to the Debtors and
Debtors in Possession*

---

[3] The rates charged for such expenses (i) are based on Applicant's policies used with the Debtors prior to these cases being filed; (ii) do not charge for certain expenses such as in house copying or phone calls which are chargeable under the Guidelines; and (iii) are calculated to compensate Applicant for only the actual costs of the expenses.