Hearing Date and Time: September 11, 2013 at 10:00 a.m.
Objection Deadline: August 28, 2013 at 4:00 p.m.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al.,[1] | ) | |
| | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### THIRD INTERIM FEE APPLICATION OF
### MESIROW FINANCIAL CONSULTING, LLC FOR
### COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
### FINANCIAL ADVISOR TO THE EXAMINER
### <u>FOR THE PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013</u>

| | |
|---|---|
| Name of Applicant: | Mesirow Financial Consulting, LLC |
| Professional Services to: | The Examiner |
| Date of Retention: | August 29, 2012, *nunc pro tunc* to July 24, 2012 |
| Period for which Compensation and Reimbursement are Sought: | January 1, 2013 through April 30, 2013 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $23,210,644 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $    299,682 |
| Total Amount of Fees and Expense Reimbursement Sought as Actual, Reasonable and Necessary: | **$23,510,325** |

This is a(n): _____ Monthly     __x__ Interim     _____ Final Application

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

Prior Monthly Fee Statements

| Date Served | Period Covered | Fees Requested | Expenses Requested | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|
| 09/28/2012 | 07/24/2012 - 08/31/2012 | $ 3,007,275 | $ 30,048 | $ 2,681,925 | $ 28,557 |
| 11/02/2012 | 09/01/2012 - 09/30/2012 | 2,505,381 | 9,205 | 2,004,304 | 9,205 |
| 12/05/2012 | 10/01/2012 - 10/31/2012 | 2,898,967 | 33,968 | 2,319,174 | 33,968 |
| 01/02/2013 | 11/01/2012 - 11/30/2012 | 2,556,250 | 17,515 | 2,045,000 | 17,515 |
| 02/06/2013 | 12/01/2012 - 12/31/2012 | 2,723,418 | 15,716 | 2,178,535 | 15,716 |
| 03/06/2013 | 01/01/2013 - 01/31/2013 | 6,107,257 | 81,084 | 4,885,806 | 81,084 |
| 07/05/2013 | 02/01/2013 - 02/28/2013 | 5,528,933 | 69,396 | 4,423,146 | 69,396 |
| 08/06/2013 | 03/01/2013 - 03/31/2013 | 5,179,263 | 84,465 | -0- | -0- |
| 08/06/2013 | 04/01/2013 - 04/30/2013 | 6,421,831 | 64,737 | -0- | -0- |

Interim Fee Applications

| Date Filed | Period Covered | Approval Date | Total Fees Requested / Approved | Total Expenses Requested / Approved | Amounts Paid / Holdback Due |
|---|---|---|---|---|---|
| 10/19/2012 (Docket No. 1906) | 7/24/2012 - 8/31/2012 | 12/28/2012 (Docket No. 2530) | $ 3,007,275 / 2,979,917* | $ 30,048 / 28,557* | $ 2,710,482 / 297,992 |
| 03/14/2013 (Docket No. 3193) | 09/01/2012 - 12/31/2012 | 04/29/2013 (Docket No. 3556) | $ 10,671,089 / 10,547,256* | $ 68,482 / 68,178* | $ 9,560,709/ 1,054,725* |
| 08/07/2013 | 01/01/2013 - 04/30/2013 | Pending | $23,210,644/ Pending | $299,682 / Pending | $9,459,432 / Pending |

* Reflects certain reductions in settlement of the objection filed by the United States Trustee.

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al.,[2] | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

### THIRD INTERIM FEE APPLICATION OF
### MESIROW FINANCIAL CONSULTING, LLC FOR
### COMPENSATION AND REIMBURSEMENT OF EXPENSES AS
### FINANCIAL ADVISOR TO THE EXAMINER
### FOR THE PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013

Mesirow Financial Consulting, LLC ("MFC"), financial advisor to Arthur J. Gonzalez, the Court-appointed Examiner (the "Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby submits this Third Interim Fee Application (the "Application") for allowance of compensation for professional services rendered and reimbursement of expenses in connection with MFC's services to the Examiner. This Application seeks allowance and approval of the compensation for services rendered by professionals and actual and necessary expenses as described more fully herein for the period January 1, 2013 through April 30, 2013 (the "Third Interim Fee Period").

---

[2] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors" includes any such entities.

## PRELIMINARY STATEMENT

1.     By this Application and pursuant to sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012 (the "Interim Compensation Order"), MFC seeks allowance and approval of reasonable compensation in the amount of $23,210,644 for 37,410.6 hours of professional services rendered to the Examiner, and reimbursement of $299,682 for actual and necessary expenses and disbursements incurred, for a total of $23,510,325 for the Third Interim Fee Period.

2.     This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases effective as of February 5, 2013 (the "Local Guidelines") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines" and, together with the Local Guidelines, the "Guidelines"). Pursuant to the Guidelines, a certification regarding compliance with same is attached hereto as **Exhibit G**.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§ 330, 331 and 503(b) of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules and Rule 2016-1 of the Local Rules.

**BACKGROUND**

4.    The Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code on May 14, 2012, and the Court authorized joint administration of the cases. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    On June 4, 2012, Berkshire Hathaway, Inc. filed a motion (the "Examiner Motion") for the appointment of an examiner pursuant to 11 U.S.C. § 1104(c).  On June 20, 2012, the Court issued a Memorandum Opinion and Order granting the Examiner Motion (the "Memorandum Decision").   On June 28, 2012, the Court entered the Order Directing the Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code (the "Examiner Order").

6.    On July 3, 2012, the United States Trustee for the Southern District of New York appointed Arthur J. Gonzalez as Examiner in the Chapter 11 Cases, subject to Court approval.  On that same date, the Court entered an order approving the appointment.

7.    Pursuant to the Examiner Order, and in accordance with the Memorandum Decision, the Examiner was directed to conduct an investigation of a scope, timing, and budget to be set by the Court after the Examiner had conferred with other parties in interest.  After the requisite consultations, the Court mandated that the Examiner conduct an investigation covering the topics set forth in the Order Approving Scope of Investigation of Arthur J. Gonzalez, Examiner, dated July 27, 2012 (the "Scope Order").

8.    The Examiner filed the Work Plan of Arthur J. Gonzalez, Examiner on August 6, 2012 (the "Initial Work Plan") and filed supplements thereto on August 23, 2012 (the "First Supplemental Work Plan"), November 26, 2012 (the "Second Supplemental Work Plan"),

February 8, 2013 (the "Third Supplemental Work Plan") and April 5, 2013 (the "Fourth Supplemental Work Plan") (collectively, the "Supplemental Work Plans"). The Initial Work Plan indicated that the Examiner believed that a realistic time frame for the preparation of a report containing his findings regarding the investigation was six months (*i.e.*, report issuance in early February, 2013), subject to adjustment after meaningful due diligence. The Initial Work Plan further noted that the Examiner was not yet able to assess the full scope of the efforts he would need to undertake, did not yet know when requested discovery would be produced, and did not yet know whether and to what extent he would obtain cooperation on document production and access to persons he believed were material witnesses. The Supplemental Work Plans cited factors including the extent and timing of document productions by parties-in-interest and the schedules for witness interviews as factors necessitating that the deadline be extended first to early April, 2013, and then by one additional month to early May, 2013, as well as the correlative effect on the estimated fees and expenses to be incurred by the Examiner and his professionals.

9.      On July 25, 2013, the Debtors filed their Monthly Operating Report ("MOR") for the Period from June 1, 2013 through June 30, 2013, indicating that the Debtors had cash and equivalents of approximately $1.6 billion, total assets of approximately $3.8 billion, and liabilities not subject to compromise of approximately $1.1 billion. The MOR indicated that the Debtors are not delinquent in paying any United States Trustee fees.

10.      On May 13, 2013, the Examiner filed his report under seal. On June 26, 2013, the Bankruptcy Court entered the Order Authorizing the Debtors' Motion to Enter Into A Plan Support Agreement with Ally Financial Inc., The Creditors' Committee, and Certain Consenting Claimants. Further, on June 26, 2013, the Bankruptcy Court entered its Order Unsealing the Examiner's Report.

11.     On July 3, 2013, the Debtors filed the Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors and the related disclosure statement (the "Plan" and the "Disclosure Statement," respectively). A hearing on the Disclosure Statement is scheduled for August 21, 2013.

## RETENTION AND COMPENSATION OF MFC

12.     MFC, a full service financial advisory consulting firm, provides corporate recovery, litigation, investigative and intelligence services, valuation services, interim management services, and distressed M&A and capital raising services.

13.     On August 13, 2012, the Examiner filed the Application of the Examiner for Order Authorizing the Retention and Employment of Mesirow Financial Consulting, LLC as Financial Advisor to Examiner *nunc pro tunc* to July 24, 2012 (the "Employment Application"). On August 29, 2012, this Court entered an Order authorizing the retention and employment of MFC (the "Retention Order").

14.     MFC's requested compensation for professional services rendered to the Examiner is based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.   The hourly rates included in the Employment Application and applicable herein for financial advisory services rendered by MFC during the Third Interim Fee Period are as follows:

| Level | Hourly Rates |
|---|---|
| CEO, Senior Managing Director, Managing Director and Director | $855-$895 |
| Senior Vice President | $695-$755 |
| Vice President | $595-$655 |
| Senior Associate | $495-$555 |
| Associate | $315-$425 |
| Paraprofessional | $160-$250 |

15.    MFC's Employment Application indicated that hourly rates were subject to periodic adjustment (typically on January 1 of each year) to reflect economic and other conditions. The Retention Order required that, prior to any changes in MFC's rates, MFC was to file a supplemental affidavit with the Court and provide ten business days' notice to the Debtors, the United States Trustee and any official committee.[3]

16.    As of January 1, 2013, MFC's normal and customary hourly rates changed to the following:

| Level | Hourly Rates |
|---|---|
| CEO, Senior Managing Director, Managing Director and Director | $895-$950 |
| Senior Vice President | $725-$795 |
| Vice President | $625-$695 |
| Senior Associate | $495-$595 |
| Associate | $295-$445 |
| Paraprofessional | $160-$250 |

17.    At the request of the Examiner, based on the specific facts and circumstances of this case, MFC agreed to continue utilizing its 2012 rate structure and not to increase the hourly rates charged in this matter to the normal and customary billing rates outlined above as of January 1, 2013. As a result of this accommodation, the requested fees for the Third Interim Fee Period reflect a significant voluntary reduction of approximately $1.02 million. The hourly rates of certain individuals increased on April 1, 2013 as a result of promotions that went into effect at the beginning of MFC's fiscal year. Any such increases were consistent with the 2012 rate structure as agreed with the Examiner and described above.

---

[3] MFC followed this procedure and was granted the requested relief in cases in this and other districts, including AMR Corporation, et al.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES PREVIOUSLY REQUESTED

18.     On October 19, 2012, MFC filed the First Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period July 24, 2012 through August 31, 2012 (the "First Interim Application").   In the First Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the First Interim Fee Period in the amount of $3,007,275 and (ii) reimbursement of actual and necessary expenses incurred by MFC during the First Interim Fee Period in the amount of $30,048.

19.     MFC did not seek compensation for 171.9 hours and $104,358 in fees or reimbursement for $18,956 in expenses incurred in this matter during the First Interim Fee Period but voluntarily excluded from the First Interim Application.  Additionally, MFC's First Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel and seventy-five percent (75%) of fees related to the retention application, totaling $119,070.  Finally, MFC agreed to additional reductions of $27,358 in fees and $1,491 in expenses in settlement of the Omnibus Objection of the United States Trustee Regarding Fee Applications for First Interim Compensation and Reimbursement of Expenses filed December 7, 2012.  As such, MFC's total fee and expense reductions in the First Interim Fee Period were $271,233.

20.     On December 28, 2012, the Court entered the Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses granting MFC's request for fees in the amount of $2,979,917 and expenses in the amount of $28,557.

21.     On March 14, 2013, MFC filed the Second Interim Fee Application of Mesirow Financial Consulting, LLC, for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period September 1, 2012 through December 31, 2012

(the "Second Interim Application").  In the Second Interim Application, MFC sought (i) an interim allowance of compensation for professional services rendered to the Examiner during the First Interim Fee Period in the amount of $10,671,089 and (ii) reimbursement of actual and necessary expenses incurred by MFC during the Second Interim Fee Period in the amount of $68,482.

22.    MFC did not seek compensation for 159.4 hours and $97,992 in fees or reimbursement for $19,392 in expenses incurred in this matter during the Second Interim Fee Period but voluntarily excluded from the Second Interim Application.  Additionally, MFC's Second Interim Application reflected voluntary reductions for fifty percent (50%) of non-working travel of $95,542.  Finally, MFC agreed to additional reductions of $123,833 in fees and $304 in expenses in settlement of the Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim Compensation and Reimbursement of Expenses filed March 25, 2013.  As such, MFC's total fee and expense reductions in the Second Interim Fee Period were $337,063.

23.    On April 29, 2013, the Court entered the Order Granting Applications for Allowance of Interim Compensation and Reimbursement of Expenses granting MFC's request for fees in the amount of $10,547,256 and expenses in the amount of $68,178.

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES CURRENTLY REQUESTED

24.    By this Application, MFC seeks (i) an interim allowance of compensation for professional services rendered to the Examiner during the Third Interim Fee Period in the

amount of $23,210,644[4] and (ii) reimbursement of actual and necessary expenses incurred by

MFC during the Third Interim Fee Period in the amount of $299,682.  During the Third Interim

Fee Period, MFC professionals and paraprofessionals expended a total of 37,410.6 hours for

which compensation is requested.  The blended hourly rate for all services during the Third

Interim Fee Period was $621.

25.     MFC is not seeking compensation for 278.2 hours and $162,953 in fees or

reimbursement for $25,960 in expenses incurred in this matter during the Third Interim Fee

Period but voluntarily excluded from this Application.  Additionally, MFC's Third Interim

Application reflects voluntary reductions for fifty percent (50%) of non-working travel

($250,379), and approximately $1.02 million in connection with MFC's agreement with the

Examiner not to implement the normal and customary hourly rates in effect as of January 1, 2013,

as described above.  As such, MFC's voluntary fee and expense reductions in the Third Interim

Fee Period have totaled approximately $1.46 million.  MFC's average hourly rate including the

voluntarily reduced hours was $616.

26.     Attached as **Exhibit A** hereto is a summary of hours and fees incurred

during the Third Interim Fee Period setting forth the names, titles, hourly rates and total hours

charged for the professionals and paraprofessionals providing services during the Third Interim

Fee Period.  Attached as **Exhibit B** hereto is a summary schedule of hours and fees incurred by

professional for each monthly period during the Third Interim Fee Period.  Attached as **Exhibit

C-1** hereto is a summary schedule of hours and fees incurred by category of services for each

monthly period during the Third Interim Fee Period.  Attached as **Exhibit C-2** hereto is a

---

4 Due to reconciling items related to the hours and billing rates for certain individuals that were identified during the
preparation of the Application, certain amounts included in the Application differ slightly from those in the monthly
fee statements.  Adjustments to the totals for each monthly category affected are noted in Exhibit D.

summary schedule of hours and fees incurred by each professional for each category of services provided during the Third Interim Fee Period. Attached as **Exhibit D** hereto are the redacted detailed daily descriptions of services rendered by each professional and paraprofessional and billed to the estate during the Third Interim Fee Period for each category, including the hours necessarily incurred with respect to each task and the resultant fees.

27.    The following is a summary of the services provided by MFC professionals and paraprofessionals during the Third Interim Fee Period, by category:

a.    <u>Case Administration / General Bankruptcy Matters</u>

   Fees: $118,792    Hours: 193.7

During the Third Interim Fee Period, MFC performed various general and administrative tasks to support its work on this engagement. MFC addressed knowledge management and technology matters, Relativity electronic document management support, and ongoing support, customization and population of Synthesis, an MFC proprietary web-based analytical tool designed to synthesize and analyze data and information, manage workflows, and coordinate engagement activities. MFC prepared and monitored fee forecasts as requested by the Examiner and the Debtors and identified skills and professional resources necessary to accomplish the work plans for various functional and transaction teams. Finally, MFC disseminated relevant information and coordinated various meetings, agendas and other efforts internally and with Chadbourne, the Examiner, and counsel and financial advisors to the Debtors, Ally Financial, Inc. ("<u>AFI</u>"), and other parties-in-interest.

b.    <u>Document Review and Analysis</u>

   Fees: $10,132,557    Hours: 17,419.6

A primary focus of MFC's efforts during the Third Interim Fee Period was the review and analysis of information from a number of sources in support of a broad range of quantitative and qualitative issues relevant to the scope of the Examiner's investigation. MFC received numerous documents during the Third Interim Fee Period from various constituents pursuant to production requests, including additions to the Relativity database of over 775,000 documents with over 6.6 million pages. The Examiner's professionals were therefore required to review a substantial number of documents on an expedited basis. For each production, MFC professionals performed a review of documents received in order to identify those relevant to ascertaining the financial impact of various transactions, the financial condition of the Debtors at various points in time, and relevant aspects of decision-making related thereto. Based on use of search terms and other preliminary reviews, summaries of the types of documents identified and access to the relevant files were provided to team members based on their assigned areas of responsibility. Using the documents obtained, MFC transaction teams undertook various detailed analyses of numerous pre-petition and post-petition transactions between or among the Debtors and AFI, Cerberus or their direct or indirect affiliates or subsidiaries, and issues related thereto, including but not limited to the following:

- transfers of cash, assets, property, stock, contracts, or other items of value including any servicing agreements, repurchase transactions, exchange offers, hedging arrangements, derivative agreements or contracts, swap agreements or contracts, or foreign exchange agreements or contracts;

- payments, dividends, or capital contributions;

- extensions of loans or lines of credit, including factoring arrangements;

- debt, or liens related thereto, or the transfer, assignment, repayment, or forgiveness of such debt;

- claims and payments made on account of such claims;

- negotiation and entry into plan sponsor, plan support, or settlement agreement;

- the debtor-in-possession financing with AFI;

- the stalking horse asset purchase agreement with AFI;

- the post-petition servicing agreements with Ally Bank;

- activities of the Debtors' officers and board of directors concerning pre-petition and post-petition transactions and agreements;

- the Debtors' decision to file (or to refrain from filing, or delaying the filing of) voluntary petitions under Chapter 11 of the United States Bankruptcy Code;

- the Debtors' decisions to pursue (or refrain from pursuing) a sale of substantially all of their assets; and

- the financial and related foundational aspects of state and federal law claims or causes of action of the Debtors against current or former directors and officers of the Debtors, and against AFI and/or its insiders including current and former directors, officers, and shareholders, including but not limited to the following:

   o preference and fraudulent transfer claims,

   o equitable subordination claims,

   o alter ego and veil piercing claims,

   o debt recharacterization claims,

   o constructive trust and unjust enrichment claims,

   o breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims,

   o securities law claims,

   o claims held by third parties, *i.e.,* parties that are not affiliates of the Debtors, and

   o the value of the releases contemplated by the Debtors.

The complexity and scope of the transactions required that MFC perform discrete quantitative financial, accounting, tax, economic, and valuation analyses of transactions occurring

14

over a period exceeding seven years, as well as qualitative analyses as to ResCap's decision making process and governance.  MFC produced numerous analyses summarizing the financial aspects of many of the transactions under review, including analytical support regarding reasonably equivalent value, damages, and quantitative aspects of certain liability assessments. MFC also contributed specialized industry knowledge necessary to document and analyze practices specific to operating a business that originates, services, and securitizes residential mortgage loans, as well as litigation attendant therewith.  Further, as a thorough analysis of ResCap's financial condition is a central underpinning of many of these investigatory areas, MFC's work included assessing balance sheet solvency, adequacy of capital, and ability to pay debts as due over the relevant time periods for the Debtors and key subsidiaries.

c.    Fee / Retention Applications

    Fees: $198,775        Hours: 706.8

    This category, which comprises 0.86% of total fees during the Third Interim Fee Period, includes the preparation of the detailed monthly statements and interim fee applications, as required, in order to comply with the Bankruptcy Code, the Bankruptcy Rules, the Guidelines, the Interim Compensation Order and other guidelines governing the payment of professionals in these cases.  In this regard, MFC undertook analyses and reconciliations of time and expenses incurred in the Second and Third Interim Fee Periods, and prepared or initiated preparation of the Fourth Monthly Fee Statement for November 2012, the Fifth Monthly Fee Statement for December 2012, the Sixth Monthly Fee Statement for January 2013, the Seventh Monthly Fee Statement for February 2013, and the Eighth Monthly Fee Statement for March 2013.  MFC prepared both redacted and unredacted versions of the time detail attached to its monthly fee statements to ensure that investigation details and strategy were not inappropriately disclosed to any case party.

15

MFC also prepared the Second Interim Application, including both narrative and exhibits. While MFC responded to the Omnibus Objection of the United States Trustee Regarding Fee Applications for Second Interim Compensation and Reimbursement of Expenses filed March 25, 2013, none of the hours and related fees have been included in this Application. This category also includes monitoring of actual fees incurred relative to forecasts.

d.    Report Drafting

    Fees: $7,012,382    Hours: 10,882.4

    As the Third Interim Fee Period progressed, MFC's time and efforts increasingly focused on drafting the Examiner's report. Chadbourne and MFC formed a joint report structuring team that was responsible for developing the report outline, assigning drafting responsibilities, determining the processes and guidelines for the report, and implementing and overseeing the report drafting process. MFC had primary responsibility for drafting certain report sections, including those addressing macroeconomic, industry, and capital markets developments and their impact on ResCap and other affiliated entities; the financial condition and solvency of ResCap and its major subsidiaries, GMAC Mortgage and Residential Funding Company; the reasonably equivalent value exchanged in transactions involving Ally Bank and other asset sales; and the financial, tax, and accounting impacts of various other pre-petition and post-petition transactions. MFC had joint or secondary responsibility with its Chadbourne counterparts for developing the factual record, describing the basis of the potential claims, and drafting the remaining report sections, including but not limited to significant assistance with summarizing the investigations of the board of directors and third-party claims. MFC also was responsible for preparing the report exhibits and appendices, including detailed tables, figures, charts, and graphs. MFC formed a team that developed and implemented a consistent presentation and formatting protocol for the

exhibits and appendices, including interfacing with Chadbourne and the third party vendor that

collated and typeset the report. Finally, MFC performed extensive data, footnote, and cite

checking of the report text, exhibits, and appendices to verify content and utilize form consistent

with the report glossary and style guide. This process also included efforts to identify necessary

information sourced to any of the approximately 3,000 documents designated as "highly

confidential" or the almost 100,000 documents designated as "professionals' eyes only" by the

producing parties to assist counsel in facilitating usage in the report in accordance with the

protective orders entered in this matter.

The report, which was ultimately filed under seal on May 13, 2013, comprised over 2,200

pages and contained approximately 9,500 footnotes, 180 exhibits, and 58 appendices. The report

included analyses of every material transaction between and among ResCap, AFI, and their

corporate affiliates over a seven-year period, involving complicated financings, asset sales,

mortgage-backed securities, derivatives and swaps, among other areas of investigation. The

report provided determinations on every material transaction and business dealing and its impact

on the overall potential claims implicated thereby.

e.    Substantive Investigation Planning and Coordination

Fees: $2,578,879     Hours: 3,154.7

During the Third Interim Fee Period, MFC's various transaction and functional teams, as

well as the engagement leadership team, spoke or met regularly to plan and coordinate work,

assess progress, and discuss the results of document reviews and analyses underway. MFC also

regularly communicated and met with the Examiner and Chadbourne to perform planning and

coordination, discuss observations and findings, and address substantive case issues. These calls

and meetings included weekly update calls between Chadbourne and MFC as well as weekly calls

among Chadbourne, MFC, and the Examiner.  On a periodic basis, Chadbourne and MFC scheduled extended meetings at which key topics, information, and implications for the investigation could be discussed, and at which MFC made substantive presentations to facilitate those discussions.  As the investigation progressed during the Third Interim Fee Period, the leadership teams from both firms and the Examiner met not only to evaluate the results of the factual investigation and analyses performed, but also to coalesce around the theories and evidence that supported or refuted the likelihood that any given cause of action would prevail. MFC participated in numerous ancillary discussions within the various transaction teams and between these teams and the Chadbourne attorneys responsible for defining and developing the basis for each cause of action.  MFC's efforts were led by eleven different substantive teams, including members from both MFC and Chadbourne, investigating over 30 different transactions. Given the enormity of the investigation (during the course of the entire investigation, over nine million pages of documents were reviewed, 99 days of interviews were conducted, and 66 third-party meetings were held), the teams met routinely to discuss the status of their analyses and to share relevant findings from the investigation.  The Third Interim Fee Period also included a number of internal MFC working sessions dedicated to drafting the report and preparing the related exhibits and appendices.  Given the breadth and complexity of the subject matter and the limited time allotted for the Examiner's investigation, frequent communication within MFC's leadership and project teams, as well as between MFC, Chadbourne, and the Examiner, was critical to ensuring that the investigation progressed effectively, work was coordinated to avoid duplication of effort, and information was disseminated in a timely and efficient manner to appropriate individuals working on a variety of distinct yet interrelated efforts.  Whether internal or with counsel, various meetings and calls had multiple participants to ensure that individuals

18

with different subject matter knowledge, functional areas of expertise, or roles within the transaction and engagement teams were involved and provided with appropriate information and guidance.

f.    Travel Time

Fees: $500,758        Hours: 671.8

This category includes non-working travel time to attend various meetings and other case functions with counsel and team members, primarily in New York. MFC also traveled to Fort Washington, Pennsylvania for meetings with ResCap as well to various locations to attend witness interviews, including New York, Minneapolis, Washington DC, and Detroit. Fees for non-working travel time were reduced by fifty percent ($250,379), and one-way travel time was generally limited to four (4) hours absent extraordinary circumstances.

g.    Witness Interviews and Discovery

Fees: $2,918,881        Hours: 4,381.6

During the Third Interim Fee Period, MFC supported Chadbourne in conducting 59 witness interviews. MFC professionals collaborated with the Examiner and Chadbourne to identify prospective witnesses for interview. MFC assisted in preparation for witness interviews, including developing questions specific to the transactions or other matters at issue. MFC performed targeted document searches to identify relevant financial documents for certain witnesses, and also reviewed and provided input for the witness binders compiled by Chadbourne. For certain more financially focused interviews, MFC was responsible for leading the process of compiling witness binders for Chadbourne's review. MFC attended the interviews and participated in questioning witnesses to address a broad range of financial and related issues. As

appropriate, other MFC professionals later reviewed interview summaries and transcripts to identify information relevant to their areas of analysis.

In addition to the interview process, MFC team leaders with knowledge of the relevant transactional or functional areas being discussed attended 66 formal meetings with the Debtors, AFI, the Official Committee of Unsecured Creditors and various creditor constituents or other parties-in-interest. MFC also conducted multiple calls and informal meetings with the Debtors, AFI, and their financial advisors, investment bankers, and auditors, and led an ongoing dialogue to obtain and discuss specific accounting and financial information needed for analysis. These informal meetings included approximately two weeks on-site at ResCap in March, 2013 to finalize many open requests and areas of analysis.

MFC assisted counsel in drafting highly detailed and ongoing document requests to various parties-in-interest, as well as monitoring, evaluating, and communicating with these parties-in-interest regarding responses received in connection therewith. This process became increasingly intense during the Third Interim Fee Period as efforts were underway to conclude discovery. MFC also assisted counsel in responding to 24 separate "clawback" requests comprising approximately 17,500 documents, through which the Debtors, AFI, and other parties-in-interest identified documents to which they asserted a privilege or other protection applied subsequent to being produced pursuant to protective orders entered in this matter. MFC assisted counsel in identifying which documents were being used in analyses, assessing the importance of the information, and identifying potential replacement sources, thus narrowing the subset for which stipulations, redactions, or other compromises as to their use needed to be developed.

28.    Attached as **Exhibit E** hereto is a summary schedule of actual and necessary expenses by category incurred for each monthly period during the Third Interim Fee

Period. Attached as **Exhibit F** hereto are the detailed descriptions of expenses incurred by each professional and billed to the estate during the Third Interim Fee Period for each category. MFC is seeking reimbursement for actual and necessary out of pocket expenses of $299,682 during the Third Interim Fee Period, after the voluntary reductions described herein.

29.    MFC has billed airfare only for coach class tickets or the contemporaneous equivalent thereto; has not billed in-town ground transportation; has limited lodging to the lesser of actual cost or $400 per night; has limited amounts billed for each out of town or overtime meal to the lesser of actual cost or $20 per person; and has limited charges for copies to the lesser of $0.10 per page or cost.

30.    MFC performed the above professional services and other necessary activities at the request and direction of the Examiner and his counsel, and closely coordinated such services with the Examiner and his counsel to avoid duplication of effort. Communication among MFC, the Examiner, and his counsel has been frequent, and such communication has been critical to ensuring that MFC's work was performed in an efficient and effective manner. Given the depth and breadth of the Examiner's scope and the limited time available to conduct the work required, the services provided by MFC were essential to assisting the Examiner and his counsel and were reasonable and necessary under the circumstances.

31.    All professional services and expenses for which an allowance is requested were performed or incurred by MFC for and on behalf of the Examiner and not on behalf of any other entity or party-in-interest.

32.    The fees and expenses sought by MFC, except to the extent prohibited by the Guidelines or as otherwise noted herein, are billed in accordance with practices customarily employed by MFC and generally accepted by MFC's clients. MFC's rates are established after a

comprehensive review of public information regarding competitors' requested rates of compensation and careful consideration of the marketplace by our senior leadership team, and are routine and generally applicable to all clients. As noted above, MFC agreed to not increase the rates charged in this matter to its normal and customary billing rates as of January 1, 2013.

33. MFC's compensation sought in this Application is based on the customary compensation charged by comparably skilled practitioners in cases other than in chapter 11. Further, the compensation is consistent with that awarded to financial advisors in chapter 11 cases of a similar size and complexity.

34. During the Third Interim Fee Period, other than pursuant to the Interim Compensation Order, MFC has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered in this Application.

35. No agreement or understanding exists between MFC and any other person for the sharing of compensation to be received for services rendered in, or in connection with, these cases.

36. The compensation sought herein is requested without prejudice to MFC's entitlement to seek such additional and reasonable compensation for any additional services rendered in these Chapter 11 cases at the conclusion thereof upon the filing of an appropriate application.

## NOTICE AND NO PRIOR APPLICATION

37. Pursuant to the Interim Compensation Order, notice of this Application has been served upon the following parties (collectively, as further defined in the Interim Compensation Order, the "Notice Parties"): (i) counsel for the Debtors; (ii) the Office of the

United States Trustee for the Southern District of New York; (iii) counsel for the Official

Committee of Unsecured Creditors; (iv) counsel for Ally Financial Inc.; and (v) counsel for

Barclays Bank PLC.    In light of the nature of the relief requested herein, MFC submits that no

further or other notice is required.

38.    No previous application for relief sought herein has been made to this or

any other court.

## CONCLUSION

**WHEREFORE,** MFC respectfully requests that this Court issue and enter an order (i) authorizing compensation in the amount of $23,210,644 for professional services rendered and reimbursement of actual and necessary expenses incurred in connection therewith in the amount of $299,682 during the Third Interim Fee Period for a total fee and expense request of $23,510,325; (ii) authorizing and directing the Debtors to remit payment to MFC as set forth herein, less all amounts previously paid on account of such fees and expenses; and (ii) granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        August 7, 2013

**MESIROW FINANCIAL CONSULTING, LLC**


By: */s/ Ralph S. Tuliano*
    Ralph S. Tuliano
    Chief Executive Officer
    Mesirow Financial Consulting, LLC
    666 Third Avenue, 21st Floor
    New York, NY  10017

EXHIBIT G

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al.,[1] | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS
FOR PROFESSIONALS IN RESPECT TO THIRD INTERIM FEE APPLICATION OF
MESIROW FINANCIAL CONSULTING, LLC FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE EXAMINER
FOR THE PERIOD JANUARY 1, 2013 THROUGH APRIL 30, 2013**

I, Ralph Tuliano, hereby certify that:

1.     I am the Chief Executive Officer of Mesirow Financial Consulting, LLC

("MFC"), financial advisor to Arthur J. Gonzalez, the Court-appointed Examiner (the

"Examiner") for Residential Capital, LLC and its affiliated debtors (collectively, the "Debtors")

in the above-captioned cases (the "Chapter 11 Cases"). I am the professional designated by

MFC in connection with the Chapter 11 Cases with respect to compliance with the Amended

Guidelines for Fees and Disbursements for Professionals in Southern District of New York

Bankruptcy Cases effective as of February 5, 2013 (the "Local Guidelines"), and the United

States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit
1 to the Declaration of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of
Chapter 11 Petitions and First Day Pleadings, filed with the Court on May 14, 2012. Additional subsidiaries
and affiliates of the Debtors may file Chapter 11 petitions on a rolling basis. As used herein, the term "Debtors"
includes any such entities.

1

Expenses Filed Under 11 U.S.C. §330 adopted on January 30, 1996 (the "UST Guidelines" and,

together with the Local Guidelines, the "Guidelines").

     2.     I make this certification in support of the Third Interim Fee Application of

Mesirow Financial Consulting, LLC for Compensation and Reimbursement of Expenses as

Financial Advisor to the Examiner for the Period January 1, 2013 through April 30, 2013 (the

"Application"), in accordance with the Local Guidelines.

     3.     In respect to section B(1) of the Local Guidelines, I certify that:

     a.  I have read the Application.

     b.  To the best of my knowledge, information, and belief formed after reasonable

inquiry, the fees and disbursements sought fall within the Local Guidelines

unless otherwise specifically noted herein and described in the Application.

     c.  Except to the extent that fees or disbursements are prohibited by the Local

Guidelines, the fees and disbursements sought are billed at rates and in

accordance with practices customarily employed by MFC and generally

accepted by MFC's clients, except as specifically noted herein and described

in the Application.  At the request of the Examiner, based on the specific facts

and circumstances of this case, MFC agreed to continue utilizing its 2012

hourly rate structure included in the Application of the Examiner for Order

Authorizing the Retention and Employment of Mesirow Financial Consulting,

LLC as Financial Advisor to Examiner *nunc pro tunc* to July 24, 2012, and

not to increase the hourly rates charged in this matter to the normal and

customary hourly billing rates as of January 1, 2013.

    d.  In providing a reimbursable service, MFC does not make a profit on the service, whether the service is performed by MFC in-house or through a third party.

4.      In respect to section B(2) of the Local Guidelines, I certify that MFC has provided monthly statements of MFC's fees and disbursements on the dates noted at page 2 of the Application to counsel to the Debtors, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), counsel to the Official Committee of Unsecured Creditors, counsel for Ally Financial Inc., and counsel for Barclays Bank PLC in accordance with the provisions for seeking interim compensation outlined in the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, dated July 17, 2012.

5.      In respect to section B(3) of the Local Guidelines, I certify that counsel for the Debtors, the U.S. Trustee, counsel for the Official Committee of Unsecured Creditors, counsel for Ally Financial Inc., and counsel for Barclays Bank PLC are each being provided with a copy of the Application at least fourteen (14) days before the hearing on the Application.

6.      In respect to section A(1)(v) of the Local Guidelines, I certify that the Examiner has reviewed and approved the Application.

7.      In respect to air travel, I certify that all fares submitted for reimbursement by MFC were for coach class tickets or were reduced to the equivalent coach class fare if circumstances dictated that a higher class of service be utilized.

8.      By this certification, MFC does not waive or release any rights or entitlements it

has under the order of this Court dated August 29, 2012, approving, under section 327(a) of title

11, United States Code, MFC's retention by the Examiner pursuant to MFC's normal billing rates

and customary reimbursement and disbursement practices.


Dated:  New York, New York
        August 7, 2013

                             **MESIROW FINANCIAL CONSULTING, LLC**


                        By: */s/ Ralph S. Tuliano*
                            Ralph S. Tuliano
                            Chief Executive Officer
                            Mesirow Financial Consulting, LLC
                            666 Third Avenue, 21st Floor
                            New York, NY  10017

4