# **<u>EXHIBIT 14</u>**

Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP and
Stonehill Capital Management LLC, in their capacity
as investment advisors to certain funds*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Residential Capital, LLC, *et al.*, | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |

**MONARCH ALTERNATIVE CAPITAL LP AND STONEHILL CAPITAL**
**MANAGEMENT LLC'S FIRST REQUEST FOR THE PRODUCTION OF**
**DOCUMENTS TO LAZARD FRERES & CO. LLC**

Pursuant to Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure

and Rule 34 of the Federal Rules of Civil Procedure, Monarch Alternative Capital LP

("Monarch") and Stonehill Capital Management LLC ("Stonehill" and, together with Monarch,

the "Advisors"), in their capacity as investment advisors to certain funds, hereby request that

Lazard (as defined below) produce the documents requested below for inspection and copying at

the offices of Willkie Farr & Gallagher LLP, c/o Emma J. James, Esq., 787 Seventh Avenue,

New York, New York, 10019, on or before June 14, 2013.

**INSTRUCTIONS**

1.      This Request calls for the production of all responsive documents in your

possession, custody or control, or that are available to you from any source, wherever situated.

2.      Pursuant to F.R.B.P. 7034, F.R.C.P. 34(b) regarding the organization of production applies to this request for production.

3.      In addition to original and final versions of documents, all drafts, alterations, modifications, changes and amendments of documents should be produced, as well as copies that are not identical to the original in any respect, including any copy bearing non-identical markings or notations of any kind.

4.      Every document produced pursuant to this request is to be produced in its entirety, including all attachments and documents affixed thereto.

5.      Pursuant to F.R.B.P. 7026, F.R.C.P. 26(b)(5) regarding privileged materials applies to this request for production.

6.      If you object to any document request set forth herein, state the specific grounds therefore and produce all documents responsive to the document request to which there is no objection.

7.      If a portion of an otherwise responsive document contains information subject to a claim of privilege, those portions of the document subject to the claim of privilege shall be redacted from the document and the rest of the document shall be produced.

8.      For any document that you are aware existed at one time, but no longer exists, or that was once, but is no longer, within your possession, custody or control, describe fully each document, the circumstances under which the document ceased to exist or left your possession, and identify the document request(s) to which that document was responsive.

9.      Information shall not be withheld merely because such information is stored electronically (e.g., word processing files, electronic mail, databases, accounting information, and spread sheets).

10.     The documents or tangible things produced in response hereto shall be segregated and clearly marked or labeled so as to correspond to the specific production request to which such documents or tangible things are responsive and are being produced.  Alternatively, such documents or tangible things shall be produced as they are kept in the usual course of business, including the production of files from which such documents or tangible things are taken.

11.     Produce all responsive, non-privileged documents in standard Concordance format with searchable text.  Non-electronic documents should be scanned into a static-image format and produced as 300 dpi, single-page black and white Group IV TIFF image files.  Individual document level OCR text files should be provided in a separate folder.  The Concordance load file should be provided as a .DAT file, delimited by the Concordance default format delimiters, e.g., ASCII 020 (for comma), 254 (þ for quote), and 174 (® for newline).

12.     Each Request for Production set forth herein calls for the production of electronically stored information ("ESI"), and ESI shall be produced in single-page, black and white (or color if the original is in color).  Provide all ESI in standard Group IV TIFF image files, in at least 300 dpi format, with accompanying text extraction and metadata in a Concordance load file.  Each TIFF image shall have a unique, sequential identifying number which is the Bates number of the page.  To the extent You produce one form of a document, it need not be produced in another form; however, the Advisors reserve their right to request native files for any document that is unreadable or has limited accessibility in the Group IV TIFF format (e.g., PowerPoint, or databases).

13.    Produce any Excel, audio, audiovisual, and video files in their native formats.  Produce the metadata for any responsive ESI with the responsive data, including the following fields as appropriate for the file type:

| Non-Electronic Documents | Electronic Documents | E-Mail |
|---|---|---|
| BegProd | BegProd | BegProd |
| EndProd | EndProd | EndProd |
| BegAttach | BegAttach | BegAttach |
| EndAttach | EndAttach | EndAttach |
| AttachRange | AttachRange | AttachRange |
| OCR | LastModifiedDate | Source |
| | Custodian | Custodian |
| | Source | To |
| | FileName | From |
| | Extracted Text (or OCR where extracted text unavailable) | CC |
| | CreateDate | BCC |
| | ModifiedDate | SentDate |
| | FilePath and Folder Information | Subject |
| | | Extracted Text |

14.    In searching for electronic documents responsive to these Requests, you shall search for all such electronic documents regardless of the form in which the document exists or the location in which it is stored.  Among other places, you shall search for electronic documents stored on all servers, networks, hard drives, desktop computers, notebook computers, personal digital devices, all back-up storage tapes, and with any third party cloud providers.  Each responsive Document shall be produced in its entirety.  In producing documents, if an identical copy appears in more than one person's files, you shall either (1) produce each copy, or (2) provide the names of each Custodian in the "Custodian" field.

- 4 -

15.     Pursuant to F.R.B.P. 7026, F.R.C.P. 26(e) regarding a duty to supplement or correct applies to this request for production.

16.     Unless otherwise specifically noted below, each and every Request for Production made herein shall be limited to the time period from May 14, 2012 through the present.

17.     The Advisors hereby expressly reserve the right to supplement these requests and to propound new requests, to the extent permitted by applicable law and rules.

## DEFINITIONS

1.     "9019 Motion" shall mean *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 For Approval Of The Settlement Agreement Among The Debtors, FGIC, The FGIC Trustees And Certain Individual Investors*, dated June 7, 2013 [Docket No. 3929].

2.      "Chapter 11 Cases" shall mean those cases collectively captioned *In re Residential Capital, LLC, et. al.*, Case No. 12-12020 (MG), currently pending in the United States Bankruptcy Court for the Southern District of New York.

3.     "Communication" shall mean and refer to the transmittal of information (in the form of words, facts, ideas, inquiries, or otherwise), including any conversation, meeting, conference, correspondence, or other written or oral transmission by letter, facsimile, telephone, e-mail, or any other mode or medium, whether formal or informal.

4.     "Concern" or "Concerning" shall mean referring to, describing, evidencing, pertaining to, consisting of, constituting, reflecting, relating to, or in any way logically or factually connected with the matter discussed.

5.      "Commutation Amount" shall mean a cash payment by FGIC to the Trusts and FGIC's agreement to forgo future premiums with respect to the Policies (as defined below) pursuant to the FGIC Settlement Agreement (as defined below).

6.      "Confidentiality Agreement" shall mean any agreement, whether formal or informal, oral or written, entered into between or among ResCap, the Trustees, FGIC, the Institutional Investors (as defined below, respectively), or any other entity in connection with the negotiation, drafting, or execution of the PSA or the FGIC Settlement Agreement (each as defined below).

7.      "Debtors" and "ResCap" shall mean Residential Capital, LLC, its affiliated debtors and debtors-in-possession, its affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, consultants, representatives, agents, or other persons and entities acting under its control or on its behalf.

8.      "Document" and "documents" shall have the broadest meaning permitted by the rules of this Court and include, without limitation, all writings or recordings of data or information of any nature whatsoever, including, without limitation, originals, drafts, revisions, and non-identical copies thereof (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), that are fixed in any medium upon which intelligence or information can be recorded or retrieved – including, but not limited to documents fixed in tangible media, including without limitation documents that are typed, handwritten, printed, recorded magnetically, digitally, graphically, or otherwise, and any other data or information that exists in electronic or mechanical form (including metadata) from any source or media whatsoever, including but not limited to microcomputers (also known as personal computers), laptop computers, portable computers,

notebook computers, palmtop computers, or personal digital assistants (such as Blackberry devices, iPhones, Palm Pilots, and their equivalent), minicomputers, mainframe computers, computer memories, hard disks, floppy disks, network drives, computer backup tapes, drives, discs, or other backup systems, DVDs, CD-ROMs, removable media (such as flash drives, thumb drives, zip drives, Snap Servers, Jaz cartridges, and their equivalent), magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, microchips, and any other medium for the storage or transmission of digital data, from which such data or information can be obtained, if necessary, through detection devices into reasonably usable form. "Document" and "documents" include without limitation all books, pamphlets, periodicals, lists, ledgers, checks, promissory notes, journals, work sheets, accounts, invoices, bills, order forms, receipts, financial statements, accounting entry sheets, data processing cards, letters, notes, codes, reports, memoranda, analyses, charts, graphs, indexes, spreadsheets, drawings, maps, books, reports, schematics, statements, summaries, diaries, transcripts, agreements, contracts, studies, working papers, minutes, manuals, methods and procedures, policies, photographs, photostats, phonorecords, electronic images, videotapes, or other video media, audio recordings, phone records, calendars, presentations, microfilm, tapes, wires, telegrams, telexes, faxes, cables, tape recordings, emails, and other forms of electronic messaging (such as deleted emails, instant messages, text messages, Bloomberg messages, and social networking systems such as Facebook and Twitter), and voicemail. The terms "document" and "documents" further mean any document(s) now or at any time in the possession, custody, or control of you or your officers, employees, or agents, including documents in the possession, custody, or control of any internet service provider, electronic communications service, or remote computing system (such as Yahoo!, Gmail or Hotmail) with whom you maintain or maintained an account. Without limiting

the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right or practical ability to secure the document or a copy thereof from another person having actual possession thereof.

9.      "Duff" shall mean Duff & Phelps, its corporate parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, consultants, representatives, agents or other persons and entities acting under its control or on its behalf.

10.      "Duff Engagement" shall mean any contract, agreement or understanding, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto, between Duff (on the one hand) and the Trustees (on the other hand) concerning any matter concerning the Trusts.

11.      "Duff Report" shall mean any report, study, projections, evaluations, assessments, analyses, or estimates prepared by Duff, including all drafts thereof and amendments thereto, prepared by or on behalf of Duff concerning FGIC, the Debtors, the FGIC Settlement Agreement, the PSA, the Holders, the Securities or any matter concerning the Trusts.

12.      "FGIC" shall mean Financial Guaranty Insurance Company, its corporate parents, subsidiaries, affiliates, predecessors and successors in interest, and any of its officers, directors, partners, employees, consultants, representatives, agents, or other persons and entities acting under its control or on its behalf.

13.      "FGIC Settlement Agreement" shall mean that agreement annexed as Exhibit B to the Affirmation of Gary T. Holtzer, dated May 29, 2013, filed in the Rehabilitation Action (as defined below).

14.    "Governing Agreements" shall have the same meaning as set forth in the FGIC Settlement Agreement.

15.    "Holders" shall mean persons or entities holding Securities in the Trusts (as defined below).

16.    "Holtzer Affirmation" shall mean the Affirmation of Gary T. Holtzer, dated May 29, 2013, filed in the Rehabilitation Action (as defined below).

17.    "Institutional Investors" shall have the same meaning set forth in the FGIC Settlement Agreement.

18.    "Lazard," shall mean and refer to Lazard Freres & Co., its corporate parents, subsidiaries, affiliates, predecessors, and successors in interest, and any of its officers, directors, partners, employees, consultants, representatives, agents or other persons and entities acting under its control or on its behalf.

19.    "Lazard Engagement" shall mean any contract, agreement or understanding, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto, between Lazard (on the one hand) and FGIC (on the other hand) concerning any matter concerning the Trusts.

20.    "Lazard Report" shall mean any report, study, projections, evaluations, assessments, analyses, or estimates prepared by Lazard, including all drafts thereof and amendments thereto, prepared by or on behalf of Lazard concerning FGIC, the Debtors, the FGIC Settlement Agreement, the PSA, the Holders, the Securities or any matter concerning the Trusts.

21.    "Miller Affidavit" shall mean the *Affidavit of Michael W. Miller in Further Support of Approval of First Amended Plan of Rehabilitation*, dated December 12, 2012 and filed in the Rehabilitation Action (as defined below).

22.    "Prepetition Litigation" shall mean those actions set forth on Exhibit C to the FGIC Settlement Agreement.

23.    "PSA Motion" shall mean *Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants*, dated May 23, 2013 [Docket No. 3814].

24.    "Policies" shall have the same meaning as set forth in the FGIC Settlement Agreement.

25.    "Proposed Order" shall mean the proposed order annexed as Exhibit 1 to the PSA Motion [Docket No. 3814-2].

26.    "Proposed Settlement Agreement Order" shall mean the proposed order annexed as Exhibit 1 to the *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 For Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Institutional Investors*, dated June 7, 2013, filed in the Chapter 11 Cases [Docket No. 3929-1].

27.    "PSA" shall mean the Plan Support Agreement annexed as Exhibit 3 to the PSA Motion [Docket No. 3814].

28.    "Rehabilitation Action" shall mean the matter captioned *In the Matter of the Rehabilitation of Financial Guaranty Insurance Company*, Index No. 401265/2012 (Ling-Cohan, J.), currently pending in the Supreme Court for the State of New York, County of New York.

29.    "Securities" shall mean the securities, notes, bonds, certificates and/or other instruments issued by the Trusts (as defined below).

30.    "Trustees" shall mean The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo, Bank, N.A., collectively and individually, in their respective capacities as trustees, indenture trustees or separate trustees for the Trusts (as defined below), and any consultants, representatives, advisors or agents thereof.

31.    "Trusts" shall mean the residential mortgage-backed securitizations identified on Exhibit B of the FGIC Settlement Agreement.

32.    "You" shall mean Lazard (as defined above) collectively or individually as the case may be.

33.    The terms "any" and "all" shall be construed so as to include both "all" and "any" and to include the terms "each" and "every."

34.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

35.    The use of the singular form of any word includes the plural and vice versa.

36.    All terms defined herein shall have the meanings set forth in Definition Nos. 1 through 29 above, whether such terms are capitalized in these Requests or not.

## REQUESTS FOR PRODUCTION

1.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement Agreement was in the best interests of the Trusts.

2.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement Agreement was in the best interests of the Holders.

3.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement Agreement was in the best interests of the Holders of the Securities that are insured by FGIC.

4.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement Agreement was in the best interests of the Holders of the Securities that are not insured by FGIC.

5.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that the Commutation Amount constituted adequate consideration for the commutation of the Policies.

6.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement Agreement did not or should not require the consent of the Holders under the Governing Agreements.

7.       All documents (including communications) concerning, evidencing, underlying, or supporting any determination by the Trustees that entry into the FGIC Settlement

Agreement did not or should not require the consent of the insured Holders under the Governing Agreements.

8.      All documents (including communications) supporting or evidencing the assertion in Paragraph 22 of the Holtzer Affirmation that "Settling the FGIC Claims pursuant to the terms of the Settlement Agreement … will result in greater value to FGIC's policyholders and other claimants than continuing to litigate such claims."

9.      All documents (including communications) concerning the assertion in Paragraph 24 of the Holtzer Affirmation that entry into the PSA "will maximize FGIC's recovery on account of the FGIC Allowed Claims and result in greater value to FGIC's policyholders and other claimants than continuing to pursue … litigation."

10.     All documents (including communications) concerning the statements in paragraph 4 of the Proposed Order.

11.     All versions of each and every Confidentiality Agreement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

12.     All documents (including communications) concerning any version of any Confidentiality Agreement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

13.     All versions of the FGIC Settlement Agreement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

14.     All versions of all term sheets concerning the FGIC Settlement Agreement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

15.    All documents (including communications) concerning any version of the FGIC Settlement Agreement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

16.    All versions of the Duff Report, including all drafts thereof or amendments thereto.

17.    All documents (including communications) concerning any version of the Duff Report, including all drafts thereof or amendments thereto.

18.    All versions of the Lazard Report, including all drafts thereof or amendments thereto.

19.    All documents (including communications) concerning any version of the Lazard Report, including all drafts thereof or amendments thereto.

20.    All versions of the Duff Engagement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

21.    All documents (including communications) concerning any version of any Duff Engagement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

22.    All documents (including communications) concerning the compensation, remuneration, fees, expenses, or costs charged by Duff concerning the Duff Engagement.

23.    All versions of the Lazard Engagement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

24.    All documents (including communications) concerning any version of any Lazard Engagement, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

25.    All documents (including communications) concerning the compensation, remuneration, fees, expenses, or costs charged by Lazard concerning the Lazard Engagement.

26.    All projections, evaluations, assessments, analyses, or estimates of the size, amount, value, or scope of any claims asserted by FGIC in the Chapter 11 Cases, including, without limitation, any such documents prepared by Duff or Lazard.

27.    All documents (including communications) concerning any projection, evaluation, analysis or estimate of the value of any claims asserted by FGIC in the Chapter 11 Cases, or the process for calculating same, including, without limitation, any such documents prepared by Duff or Lazard.

28.    All projections, evaluations, assessments, analyses, or estimates of any potential recovery for FGIC in the Chapter 11 Cases, including, without limitation, any such documents prepared by Duff or Lazard.

29.    All documents (including communications) concerning any projection, evaluation, analysis, or estimate of the value of any potential recovery for FGIC in the Chapter 11 Cases, or the process for calculating same.

30.    All projections, evaluations, assessments, analyses, or estimates of any potential recovery for the Trusts or the Holders in the Rehabilitation Action, including, without limitation, any such documents prepared by Duff or Lazard.

31.    All documents (including communications) concerning any projection, evaluation, analysis, or estimate of any recovery for the Trusts, the Holders, or any other policyholders or claimants in the Rehabilitation Action, or the process for calculating same.

32.    All projections, evaluations, assessments, analyses, or estimates of any recovery for the Trusts, the Holders, or any other policyholders or claimants in the Rehabilitation

- 15 -

Action in the event that the FGIC Settlement Agreement was not entered into, including, without limitation, any such documents prepared by Duff or Lazard.

33.      All documents (including communications) concerning any projection, evaluation, analysis, or estimate of any potential recovery for the Trusts, the Holders, or any other policyholders, or claimants in the Rehabilitation Action in the event that the FGIC Settlement Agreement was not entered into, or any such documents concerning the process for calculating same.

34.      All projections, evaluations, assessments, analyses, or estimates of any potential recovery for the Trusts, the Holders, or any other policyholders, or claimants in the Rehabilitation Action in the event that the FGIC Settlement Agreement is not approved, including, without limitation, any such documents prepared by Duff or Lazard.

35.      All documents (including communications) concerning any projection, evaluation, analysis, or estimate of any potential recovery for the Trusts, the Holders, or any other policyholders, or claimants in the Rehabilitation Action in the event that the FGIC Settlement Agreement is not approved, or any such documents concerning the process for calculating same.

36.      All projections, evaluations, assessments, analyses, or estimates of the size, amount, value, or scope of liabilities or obligations in connection with the Policies from which FGIC would be released under the FGIC Settlement Agreement, including, without limitation, any such documents prepared by Duff or Lazard.

37.      All documents (including communications) concerning any projection, evaluation, analysis or estimate of the size, amount, or scope of liabilities or obligations in

- 16 -

connection with the Policies from which FGIC would be released under the FGIC Settlement

Agreement, or any such documents concerning the process for calculating same.

38.    All projections, evaluations, assessments, analyses, or estimates of the

Commutation Amount, including, without limitation, any such documents prepared by Duff or

Lazard.

39.    All documents (including communications) concerning any projection,

evaluation, analysis or estimate of the Commutation Amount.

40.    All projections, evaluations, assessments, analyses, or estimates of the

size, amount, value, or scope of unsecured claims in the Chapter 11 Cases, including, without

limitation, any such documents concerning the Debtors' assessment of the eventual recovery

yielded by such claims.

41.    All documents (including communications) concerning any projection,

evaluation, analysis, or estimate of the amount of unsecured claims in the Chapter 11 Cases,

including, without limitation, any such documents concerning the Debtors' assessment of the

eventual recovery yielded by such claims, and including, without limitation, any such documents

concerning the process for calculating same.

42.    All documents (including communications) concerning or evidencing any

direction or instruction to the Trustees by the Holders or the Institutional Investors regarding the

FGIC Settlement Agreement (or any unexecuted or draft version thereof).

43.    All versions of the PSA, whether executed or unexecuted or actual or

proposed, including all drafts thereof or amendments thereto.

44.    All versions of all term sheets concerning the PSA, whether executed or

unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

45.     All documents (including communications) concerning any version of the PSA, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

46.     All versions of any term sheet negotiated in connection with the PSA, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

47.     All documents (including communications) concerning any version of any term sheet negotiated in connection with the PSA, whether executed or unexecuted or actual or proposed, including all drafts thereof or amendments thereto.

48.     All projections, evaluations, assessments, analyses, or estimates of FGIC's potential recovery in the Prepetition Litigation.

49.     All documents (including communications) concerning any projection, evaluation, analysis, or estimate of FGIC's potential recovery in the Prepetition Litigation, or the process for calculating same.

50.     All documents (including communications) concerning or evidencing any direction or instruction to the Trustees by the Holders or the Institutional Investors regarding the PSA (or any unexecuted or draft version thereof).

51.     Documents sufficient to identify the amount of Securities held by the Institutional Investors, including, without limitation, documents sufficient to identify the amount of such holdings by tranche or trust.

52.     Any opinion of counsel rendered to the Trustees in connection with the FGIC Settlement Agreement, the PSA, or any other topic covered by these Requests.

53.     All documents (including communications) concerning any opinion of counsel rendered to the Trustees in connection with the FGIC Settlement Agreement, the PSA, or any other topic covered by these Requests.

54.     All documents (including communications) concerning the need (if any) for an opinion of counsel rendered to the Trustees in connection with the FGIC Settlement Agreement, the PSA, or any other topic covered by these Requests.

55.     All documents (including communications) concerning the PSA Motion, including but not limited to all documents concerning any filing or submission to the Court concerning the PSA Motion.

56.     All documents (including communications) concerning the 9019 Motion, including but not limited to all documents concerning any filing or submission to the Court concerning the 9019 Motion.

Dated: June 12, 2013

      New York, New York

                        WILLKIE FARR & GALLAGHER LLP


                        By: _____/s/_____
                              Mary Eaton

                        Joseph T. Baio
                        Emma J. James
                        787 Seventh Avenue
                        New York, New York 10019
                        (212) 728-8000

                        *Attorneys for Monarch Alternative Capital LP and
Stonehill Capital Management LLC, in their
capacity as investment advisors to certain funds.*

9731520.4