Peter S. Goodman
Kyle A. Lonergan
Paul Moak
Michael R. Carney
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
Email:  pgoodman@mckoolsmith.com
         klonergan@mckoolsmith.com
         pmoak@mckoolsmith.com
         mcarney@mckoolsmith.com

*Counsel for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**FEDERAL HOME LOAN MORTGAGE CORPORATION'S OBJECTION TO THE DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Federal Home Loan Mortgage Corporation, in Conservatorship ("Freddie Mac"), by and through its undersigned counsel, hereby files this objection (the "Objection") to approval of the Disclosure Statement (the "Disclosure Statement") of Debtor Residential Capital, LLC (together with its direct and indirect Debtor subsidiaries and affiliates, "ResCap" or the "Debtors"), with

respect to the Joint Chapter 11 Plan (the "Plan").[1] In support of its Objection, Freddie Mac respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Court should not approve the Disclosure Statement because it does not provide adequate information for Freddie Mac and the other investors (the "Investors") in ResCap residential mortgage-backed securities ("ResCap RMBS") to make an informed decision as to whether to support or oppose the Plan.

2. Freddie Mac is a significant holder of ResCap RMBS and has the ability to direct the Trustees to vote to accept or reject the Plan for many of the Trusts. Pursuant to the Plan, the Debtors are proposing to settle tens of billions of dollars of RMBS-related claims against the Debtors (the "RMBS Settlement" or "Settlement") with respect to over 800 RMBS trusts ("RMBS Trusts" or "Trusts") for an aggregate allowed claim amount of $7.301 billion.[2] A critical component of the RMBS Settlement is the amount of proceeds that each Trust will actually receive pursuant to the Settlement. But the Disclosure Statement fails to provide this essential information, and instead sets forth a disjointed, ambiguous allocation methodology that is virtually impossible to follow. Additionally, the Disclosure Statement includes several Schedules[3] identifying the "Recognized Claims" of each of the Trusts that are inaccurate and faulty in various respects. Thus, even if one could understand the allocation methodology, one still could not compute the expected recoveries of any given RMBS Trust because the information in the Schedules is admittedly incorrect.

---

[1] All references to sections will be to title 11 of the United States Code unless otherwise stated. All capitalized terms not defined herein shall have the meaning ascribed to them in the Disclosure Statement, filed on July 4, 2013 [ECF No. 4157], and Plan, filed on July 3, 2013 [ECF No. 4153].

[2] Disclosure Statement at p. 27.

[3] Schedules 1-G, 1-R, 2-G, 2-R, 3-G, 3-R, 4-G, and 4-R to the Plan (collectively, the "Schedules").

2

3. Freddie Mac contacted the Debtors about its concerns with the allocation methodology described in the Disclosure Statement. The Debtors informed Freddie Mac that it should speak to the Trustees about the allocation methodology and the Schedules because, according to the Debtors, the Trustees are responsible for those portions of the Disclosure Statement. Freddie Mac was finally able to speak to counsel for one of the Trustees on August 5, 2013. In a conversation lasting over one hour, counsel for one of the Trustee attempted to explain an enormously complex, multi-part allocation methodology relating to the eight (8) Schedules attached to the Disclosure Statement. At the conclusion of the discussion and in response to Freddie Mac's and other Investors' concerns, the Trustee told Freddie Mac that amended Schedules would be provided at some point in the future that adjusted many of the Trusts' "Recognized Claim" amounts and provided the actual expected recoveries of each Trust included in the Settlement.

4. Moreover, the Disclosure Statement does not disclose that Freddie Mac and other Investors, which hold at least $1.2 billion in FGIC-wrapped RMBS Trusts, have objected to a proposed settlement agreement among the Debtors, Federal Guaranty Insurance Company ("FGIC"), the Rehabilitator appointed in FGIC's insurance insolvency proceeding (the "Rehabilitation Proceeding") in New York Supreme Court (the "Rehabilitation Court"), the Trustee, and certain institutional investors, among others (the "FGIC Settlement"). Freddie Mac objects to the FGIC Settlement because the recoveries under the FGIC Settlement—which is essentially a material modification to the Rehabilitation Plan—will be substantially less than Freddie Mac was entitled to under FGIC's rehabilitation plan, as approved by the Rehabilitation Court on June 11, 2013 (the "Rehabilitation Plan"). Freddie Mac also objects to the FGIC Settlement because it had no notice that the Rehabilitation Plan was being modified by the

Settlement Agreement until the Settlement Agreement was already executed; indeed, Freddie Mac was shut out of the court-ordered mediation process where the FGIC Settlement was agreed to because, according to the Rehabilitator, the negotiations were covered by a court-ordered mediation privilege preventing such disclosure to Freddie Mac.

5. Freddie Mac files this objection in order to preserve its rights and to ensure that an amended Disclosure Statement is filed along with amended Schedules that provide adequate information for Freddie Mac and other Investors to evaluate the RMBS Settlement. In addition to amended Schedules that provide the correct "Recognized Claim" amounts and the expected recovery amount for each Trust, including FGIC-wrapped Trusts, Freddie Mac requests that the back-up information for the expected recoveries, including the formulas, with sample calculations, be provided in one, clearly worded section of the Disclosure Statement, so that Freddie Mac and other Investors can understand how the expected recoveries were computed. Moreover, importantly, the Schedules must be amended to show recoveries by Loan Group[4] for RMBS Trusts with more than one Loan Group. The most recent version of the RMBS Settlement filed with this Court on March 15, 2013 states that the allocation methodology shall divide recoveries not only by RMBS Trust, but also by Loan Group where a Trust has multiple Loan Groups.[5] Notwithstanding this, the Schedules fail to allocate recoveries in this way and only show "Recognized Claims" on a Trust-by-Trust basis without regard to whether a Trust has more than one Loan Group.

6. Notwithstanding that one Trustee has indicated that an amended Disclosure Statement with amended Schedules will be provided, Freddie Mac is currently without adequate

---

[4] Loan Group is as defined in the Third Amended and Restated RMBS Trust Settlement Agreement, dated September 21, 2012, at Exhibit B. [ECF No. 3220-1].

[5] *Id.*

4

information concerning the expected amount that each Trust will recover pursuant to the RMBS Settlement.  As a result, Freddie Mac, which has the ability to direct the Trustees to vote to accept or reject the Plan for many of the Trusts, does not have the information necessary to evaluate whether to support or oppose the Plan.  Accordingly, Freddie Mac files this Objection to the Disclosure Statement in order to preserve its rights and to ensure that the Disclosure Statement is not approved and that adequate information is provided concerning the RMBS Settlement in an amended Disclosure Statement with amended Schedules.

## BACKGROUND

**A.     Freddie Mac and the ResCap RMBS**

7.      Freddie Mac is a corporate instrumentality of the United States of America, chartered by Congress under the Federal Home Loan Mortgage Corporation Act, Title III of the Emergency Home Finance Act of 1970, 12 U.S.C. §§ 1451-59. Congress created Freddie Mac for the purpose of increasing the funds available to homebuyers through the creation of a secondary mortgage market for the purchase and sale of conventional residential mortgage loans.  On September 6, 2008, the Director of the Federal Housing Finance Agency (the "FHFA" or the "Conservator") placed Freddie Mac into conservatorship pursuant to express authority granted under the Housing and Economic Recovery Act of 2008 to preserve and conserve Freddie Mac's assets and property.  As Conservator, FHFA immediately succeeded to "all rights, titles, powers and privileges" of Freddie Mac.  *See* 12 U.S.C. § 4617(b)(2)(A)(i).[6]

8.      The Debtors were a leading residential real estate finance company indirectly owned by Ally Financial, Inc., which is not a Debtor.  The Debtors and their non-debtor affiliates operated the fifth-largest mortgage servicing business and the tenth-largest mortgage origination

---

[6] This Objection does not constitute submission to this Court's jurisdiction by the FHFA.

5

business in the United States. Prior to the Petition Date, a principal business of the Debtors was the origination, acquisition, and securitization of residential mortgage loans. From 2004 to 2007, the Debtors were involved in securitizations of RMBS with an original issue balance of approximately $221 billion.

9. Prior to the Petition Date, certain of the Debtors originated and/or serviced residential mortgage loans that they contributed or otherwise sold to the RMBS Trusts. The RMBS Trusts then issued the ResCap RMBS, consisting of certificates collateralized by such residential mortgage loans. Freddie Mac is a significant Investor in the RMBS Trusts, currently holding certificates in 135 of the RMBS Trusts. On account of the underperformance of the trust collateral, Freddie Mac has not received the principal and interest payments that it should have received from the RMBS Trusts in which it invested.

10. In connection with transferring the residential mortgage loan collateral to the RMBS Trusts, one or more of the Debtors provided contractual representations and warranties in the agreements that govern the RMBS Trusts, the breach of which requires the Debtors to repurchase the related residential mortgage loans sold to the RMBS Trusts. The RMBS Trustees have asserted claims against ResCap related to the breach of representations and warranties concerning the residential mortgages collateralizing the ResCap RMBS. The RMBS Trustees hold these claims for the benefit of the Investors, including Freddie Mac, which will ultimately receive the distributions to the RMBS Trusts on account of such RMBS-related claims.

**B.    The Original RMBS Settlement**

11. Shortly after the Petition Date, the Debtors filed what is known as the "Original Settlement Agreement" covering 392 RMBS Trusts.[7] The RMBS Trusts that opted into the

---

[7] *See* Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the RMBS Settlement Agreements [ECF No. 320].

6

Original Settlement Agreement were to receive an allocable share of an allowed general unsecured claim in the maximum amount of $8.7 billion against debtors Residential Funding Company, LLC ("RFC") and GMAC Mortgage, LLC ("GMACM"). In exchange for their allocable portion of the Original RMBS Allowed Claim, the participating Trusts would have released Representation and Warranty Claims against RFC and GMACM. The Original Settlement Agreement also stipulated that, in the event any of the Original Settling Trusts were divided into Loan Groups, the Loan Groups were deemed to be separate Trusts for the purposes of allocating and distributing the proceeds of the Original Settlement Agreement. This same allocation requirement is included in the latest, third amended version of the Settlement Agreement filed with this Court on March 15, 2013.[8]

C.   **Plan and Disclosure Statement**

12.   On July 3 and 4, 2013, the Debtors filed the Plan and Disclosure Statement. The Debtors seek approval of the RMBS Settlement through confirmation of the Plan. The Schedules attached to the Disclosure Statement list over $9.08 billion in Recognized Claims.[9] However, the Disclosure Statement does not provide the actual amounts that any Trust is expected to recover pursuant to the RMBS Settlement. Instead, the Disclosure Statement provides a disjointed, ambiguous allocation methodology that is virtually impossible to follow along with Schedules that provide admittedly inaccurate Recognized Claim amounts.

---

[8]   Loan Group is as defined in the Third Amended and Restated RMBS Trust Settlement Agreement, dated September 21, 2012, at Exhibit B. [ECF No. 3220-1].

[9]   Plan at the Schedules.

**OBJECTION**

**A.    The Disclosure Statement must provide information that allows Freddie Mac to evaluate the Plan.**

13.    "The preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor." *In re Galerie Des Monnaies of Geneva, Ltd.*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985). In evaluating whether the Disclosure Statement passes muster under Bankruptcy Code § 1125, this Court must consider whether the Disclosure Statement provides "adequate information" to creditors and other parties-in-interest about the terms of the Plan to allow for well-informed participation in the confirmation process. Bankruptcy Code § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin.*, Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999); *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999); *Ridge at Hiwan, Ltd. v. Thompson (In re Thompson)*, 231 B.R. 802, 807 (D. Colo. 1999); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1997).

14.    This Court should not approve the Disclosure Statement if it fails to disclose adequate information to permit parties-in-interest to make an informed decision on whether to support or to oppose the Plan. Indeed, the overarching purpose of disclosure statements generally is to give creditors and parties-in-interest information necessary to decide whether to accept a proposed plan. *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) ("The primary purpose of a disclosure statement is to give creditors information necessary to decide whether to accept the plan."); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) (same); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) ("[t]he disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment

about a plan of reorganization"). Essentially, a disclosure statement must inform a party-in-interest what it is going to get, when it is going to get it, and what contingencies exist to getting it. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). As such, before acceptances or rejections of a proposed chapter 11 plan may be solicited, this Court must find that the Disclosure Statement contains adequate information. Bankruptcy Code § 1125(b). Section 1125(a)(1) defines "adequate information," in pertinent part, as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records… that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan[.]

15.     What constitutes adequate information in any particular instance is determined on a case-by-case basis. *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (S.D.N.Y. 1995); *see also In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999); *In re A.C. Williams Co.*, 25 B.R. 173, 176 (Bankr. N.D. Ohio 1982); *In re Ariz. Fast Foods, LLC*, 299 B.R. 589, 593 (Bankr. D. Ariz. 2003) ("[a]dequate information will be determined by the facts and circumstances of each case"); *see also Diversified Investors Fund*, 91 B.R. at 560 (same; citing legislative history).

**B.     The Disclosure Statement fails to provide adequate information.**

16.     The Disclosure Statement fails to provide the amounts that each Trust will actually recover from the RMBS Settlement. This information is essential to evaluating the RMBS Settlement. Moreover, the Disclosure Statement fails to even provide a formula or sample calculations which one could use to calculate the amounts that each Trust will recover. Instead, the Disclosure Statement provides a convoluted and enormously complex distribution scheme that relies on vague and ambiguous phrasing.

17.     For example, the Disclosure Statement variously describes and divides the Recognized RMBS Claims into (i) "alleged and Potential Claims" for breaches of representations

9

and warranties and "alleged and Potential Claims" for damages arising from servicing;[10] (ii) claims to be allocated against the "GMACM Debtors" and claims to be allocated against the "RFC Debtors";[11] (iii) representation and warranty claims belonging to the Original Settling Trusts and representation and warranty claims belonging to the Additional Settling Trusts; and (iv) "Servicing Damage Claims" and "Cure Claims."[12] These claims are then divided into eight separate categories, with the individual RMBS Trusts appearing on some but not all of the Schedules.[13]

18.   Further, the eight categories of the aforementioned RMBS Claims are to receive distributions from the RFC and GMACM Pools, but the amounts available in the RFC and GMACM Pools can only be calculated after undertaking a complicated and multi-step process. In order to determine the dollar amounts available to the RMBS Trusts in the RFC and GMACM Pools, the number of Units allocated to each Pool designated for RMBS Trust Claims[14] must first be reduced by 5.7% in order to account for the Allowed Claims Fee.[15] Next, the Plan requires the number of Units for both the RFC and GMACM Pools be adjusted to reflect the reallocation of 2,940,581 "Units" from the RFC Pool to the GMACM Pool, without explanation as to why this transfer is taking place.[16]

---

[10]   Disclosure Statement at p. 27.

[11]   The Plan Support Agreement states that 8.7% of the RMBS Representation and Warranty Claims of the Original Settling Trusts will be paid from the GMACM Pool and 91.3% will be paid from the RFC Pool, while 19.4% of the RMBS Representation and Warranty Claims of the Additional Settling Trusts will be paid from the GMACM Pool and 80.6% will be paid from the RFC Pool. Plan Support Agreement at Annex III.

[12]   Disclosure Statement at Exhibit 6; Exhibit 8.

[13]   Plan, Schedules.

[14]   The baseline number of Units in the RFC and GMACM Pools designated for RMBS Trust Claims is listed Exhibit 4 to the Disclosure Statement.

[15]   Plan at p. 59.

[16]   Plan at p. 61.

19. Additionally, in order to ascertain distributions to Investors, Article IV(C) of the Plan requires that a Weighted Claim be calculated for each of the RMBS Trusts' Recognized RMBS Claims against GMACM and RFC.[17] Such "Weighted Claims" are calculated by summing the "values" for the various categories of Recognized RMBS Claims to be allocated against the RFC and GMACM Pools described above. Article IV(C) lists different percentages at which different types of Recognized RMBS Claims "shall be valued," again without explanation.[18]

20. As written, Freddie Mac and the other Investors would be forced to assume un-established facts and make several leaps of faith in order to attempt to compute recoveries under the Plan. Freddie Mac should not be required to undertake such a burden. Instead, the Debtors are required to provide this information in the Disclosure Statement. Any calculations performed by Freddie Mac would simply represent Freddie Mac's best estimation based on guidance from counsel to one of the RMBS Trustees as to how different parts of the Plan work. This convoluted process, as described by Trustee's counsel, is not set forth in one place in the Disclosure Statement, and ultimately cannot be verified. Freddie Mac should not have to rely on third parties or its own analysis in order to determine the amounts it stands to receive under the Plan.

21. Moreover, even if Freddie Mac could compute the Trust allocations as contemplated by the RMBS Settlement, the results would be incorrect. Counsel for one of the Trustees has told Freddie Mac that the Schedules are inaccurate in various respects and are being revised to provide the correct Recognized Claim amounts. In addition, counsel for one of the

---

[17] Plan at pp. 61-62.

[18] Plan at pp. 61-62. For example, both the GMACM and RFC Recognized Cure Claims "shall be valued" at 100%, while various types of Recognized Representation and Warranty Claims and Unsecured Servicing Claims "shall be valued" at either 6.1% or 18.2%.

11

Trustees has told Freddie Mac that the amended Schedules will include the actual expected recoveries from the RMBS Settlement on a Trust-by-Trust basis. Accordingly, as written, the Disclosure Statement is inadequate and provides incorrect information and must be amended. *In re Cardinal Congregate I*, 121 B.R. 760, 766-67 (Bankr. S.D. Ohio 1990) ("Where inaccuracies are so numerous or significant that creditors or interest holders can no longer make an informed judgment about whether to accept or reject the proposed plan of reorganization, approval of the Disclosure Statement must be denied.").

22.     By way of example (and as this Court is aware), Freddie Mac holds ResCap RMBS in nine ResCap trusts (the "FGIC-Wrapped Trusts"), where the payment of the principal and interest owing on the RMBS held in the FGIC-Wrapped Trusts is guaranteed/insured by FGIC. Through the *Debtors' Motion Pursuant to Fed. Bankr. P. 9019 for Approval of the Settlement Agreement among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors* [ECF No. 3929] (the "9019 Motion"), the Debtors have sought this Court's approval of the FGIC Settlement.

23.     Freddie Mac has opposed the FGIC Settlement (which this Court will consider beginning on August 16, 2013) insofar as it would commute the FGIC-issued policies "wrapping" certain tranches of the RMBS in the FGIC-Wrapped Trusts. Whereas Freddie Mac believes that it (and similarly situated holders) would be materially worse off under the FGIC Settlement than under FGIC's Rehabilitation Plan, in publicly filed pleadings in the Rehabilitation Proceeding and elsewhere, the Trustee has asserted that Freddie Mac will, among other things, receive an alleged pro rata distribution of $92 million to the FGIC-Wrapped Trusts' claims against the Debtors pursuant to the Plan. Yet the Trustee has been unable to verify the origin of this alleged $92 million other than to say "it's in the Disclosure Statement"—although

no one to date has been able to walk Freddie Mac through any calculation to verify what at least some of the Trusts at issue will receive from the estate on account of their claims. This problem is a microcosm of the larger reason the Disclosure Statement is defective and should not be approved—the Disclosure Statement does not disclose what the holders of the RMBS in the ResCap Trusts will receive under the Plan, including a calculation of what the holders of securities in the FGIC-wrapped ResCap RMBS Trusts will receive under the Plan on account of such Trusts' claims against ResCap as well as, a calculation of what each tranche of the FGIC-wrapped ResCap RMBS Trusts will receive under the Plan and percentage recovery.

24.    As stated above, under the Original Settlement Agreement, as most recently amended, if any of the Trusts has more than one Loan Group, each Loan Group is deemed to be a separate Trust for purposes of allocating recoveries from the Settlement.[19] Notwithstanding this, the Disclosure Statement does not reference Loan Groups at all, and the Schedules do not divide up the Recognized Claims by Loan Group. Of the 135 Trusts in which Freddie Mac is invested, 132 of these Trusts include more than one Loan Group. Because recoveries for repurchase claims are distributed to the Loan Group in which the breach of representation and warranty occurred, the Disclosure Statement and Schedules must indicate what each Loan Group will recover. Without this information, Freddie Mac and the other investors do not have adequate information to evaluate the Plan and RMBS Settlement.

25.    At bottom, it is not Freddie Mac's, or any other Investor's, responsibility to estimate or guess what they will recover under the Plan. *See, e.g., In re Ferretti*, 128 B.R. 16, 21 (Bankr. D.N.H. 1991) ("You cannot expect general creditors to go through various reports submitted to the court over the history of the case and try to figure out what qualifications and

---

[19]    Third Amended and Restated RMBS Trust Settlement Agreement, dated September 21, 2012, at Exhibit B. [ECF No. 3220-1].

13

what supplementation might be there from what they read in the disclosure statement."). While counsel for one of the Trustees informed Freddie Mac that the Disclosure Statement and Schedules would be amended in order to address Freddie Mac's and other Investors' concerns, Freddie Mac currently does not have the information necessary to evaluate the Plan, and thus files this Objection in order to preserve its rights and to ensure that the Disclosure Statement and Schedules are amended.

## JOINDER

26.    Freddie Mac hereby joins all other objections to the Disclosure Statement to the extent not inconsistent herewith.

## CONCLUSION

For the reasons set forth above, Freddie Mac respectfully requests that this Court sustain the Objection, deny approval of the Disclosure Statement, and grant such other and further relief that may be just and proper under the circumstances.

Dated:   August 8, 2013
         New York, New York

Respectfully submitted,

**MCKOOL SMITH P.C.**

 /s/ *Michael R. Carney*
Peter S. Goodman
Kyle A. Lonergan
Paul Moak
Michael R. Carney
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: (212) 402-9200
Facsimile: (212) 402-9444

*Counsel for Federal Home Loan Mortgage Corporation*