**McKENNA LONG & ALDRIDGE LLP**
230 Park Avenue
New York, New York 10169
Telephone: (212) 905-8348
Facsimile: (212) 922-1819
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
cgraham@mckennalong.com
akaufman@mckennalong.com

303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
David E. Gordon, Esq.
dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation*
*and Impac Mortgage Holdings, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC et al.,** | **Chapter 11** |
| Debtors. | **Jointly Administered** |

**OBJECTION OF IMPAC COMPANIES TO DISCLOSURE STATEMENT FOR THE DEBTORS' JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "Impac"), by and through their undersigned counsel, hereby make and file this objection (the "Objection") to the Disclosure Statement for the Debtors' Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"), filed by the Debtors on July 4, 2013 [Docket No. 4157] (the "Disclosure Statement"). In support of this Objection, Impac states as follows:

**PRELIMINARY STATEMENT**

1. Approval of the Disclosure Statement must be denied because the Plan described by the Disclosure Statement contravenes the Bankruptcy Code, United States Supreme Court, and Second Circuit precedents. Thus, the Plan is thus inherently unconfirmable, making approval of the Disclosure Statement inappropriate.

**BACKGROUND**

2. On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors continue to operate their business and manage their affairs as debtors and debtors-in-possession. On May 16, 2012, the United States Trustee for the Southern District of New York appointed the Committee.

3. Impac is a party to several executory contracts with debtor GMAC Mortgage, LLC ("GMAC") relating to the servicing of residential mortgage loans (the "Servicing Agreements"). While certain of the Servicing Agreements have been assumed by the Debtors and assigned to Ocwen Loan Servicing, LLC ("Ocwen"), several of the Servicing Agreements have been neither assumed nor rejected by the Debtors. Impac Funding Corporation is a creditor of GMAC and holds a claim against GMAC in the amount of $8,000,000 for various defaults by GMAC under the Servicing Agreements [Claims Register, Claim No. 4086].

4. On July 3, 2012, the Debtors and Committee filed their Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors [Docket No. 4153] (the "Plan"). On July 4, 2013, the Debtors and Committee filed the Disclosure Statement.

5.By this Objection, Impac objects to approval of the Disclosure Statement and requests that the Court deny such approval.

**ARGUMENT**

6.Unless Debtors and Committee amend the Plan and Disclosure Statement to remedy the defects identified below, the Court should deny approval of the Disclosure Statement because the Disclosure Statement describes a Plan that is inherently unconfirmable.[1]

7.As Chief Judge Gonzales of this Court recently wrote, "[a]n unconfirmable plan is grounds for rejection of the disclosure statement; a disclosure statement that describes a plan patently unconfirmable on its face should not be approved." In re GSC, Inc., 453 B.R. 132, 157 n.27 (Bankr. S.D.N.Y. 2011); accord In re Quigley Co., 377 B.R. 110, 115-16 (Bankr. S.D.N.Y. 2007) ("If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied, as solicitation of the vote would be futile."); In re Filex, 116 B.R. 37, 71 (Bankr. S.D.N.Y. 1990) ("[A]pproval of a disclosure statement for a plan which will not, nor can not, be confirmed by the Bankruptcy Court is a misleading and artificial charade which should not bear the imprimatur of the court."); see also In re Am. Capital Equip. LLC, 688 F.3d 145, 153-54 (3d Cir. 2012). The Plan filed by the Debtors is inherently unconfirmable because it impermissibly extends the deadline for the Debtors to assume or reject executory contracts well-beyond plan confirmation in violation of Sections 1129(a)(1), 1129(a)(3), 365(d), and 1123(b)(2) of the Bankruptcy Code, while requiring that contract counterparties perform under such contracts post-confirmation without the Debtors being required to cure their defaults timely – if at all.

---

[1] Impac reserves the right to revise its objections to the Disclosure Statement, to object to any supplemental or amended disclosure statement filed by the Debtors and/or Committee, and to object to the Plan or any other plan filed by the Debtors and/or Committee.

8. Pursuant to the Plan, twenty-one days prior to the Confirmation Hearing the Debtors will file the Assumption Schedule[2] identifying the executory contracts that Debtors "propose" to assume. (Plan at 75). The Assumption Schedule will set forth the proposed cure amounts to be paid by the Debtors in connection with such assumption. (Id.). The Debtors will serve the Assumption Schedule on all counterparties to the Executory Contracts along with a notice setting forth procedures under which the counterparty may object to the assumption of their contract or the Debtors' proposed cure amount. (Id.).

9. While any objections to the Debtors' unilaterally proposed cure amounts will be resolved by the Court, the Plan provides: "If an objection to the proposed Cure Claim is sustained by the Bankruptcy Court, the Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the Effective Date, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it . . . ." (Id.). The Plan further provides:

> The Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the Effective Date, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease no later than thirty days after a Final Order determining a Cure Claim greater than that proposed by the Debtors.

(Id. at 76). Finally, the Plan provides that, while any cure objections are pending, no cure will be paid to the objecting contract counterparty until ten days after the dispute is adjudicated by the Court. (Id.)

10. Under the Plan, therefore, the Debtors would be free to reject executory contracts on a post-confirmation basis in contravention of the Bankruptcy Code. The Debtors would enjoy this extension of time to decide until 30 days after the Court adjudicates the amount of the Cure

---

[2] Capitalized terms used but not defined herein shall have the meaning set forth in the Plan and Disclosure Statement.

Claim validly due and owing by the Debtors. In the event that a contract counterparty disputes the amount of the cure unilaterally set by the Debtors, the Plan provides that that the Debtors will provide <u>no</u> cure payment to the contract counterparty. Instead, 100% of the cure will remain unpaid until such time as either: (1) the Court resolves the dispute; or (2) the Debtors and the contract counterparty settle the dispute. These provisions deny contract counterparties <u>any</u> cure if there is a dispute regarding the appropriate amount of the cure and extend the time period for rejection well beyond the confirmation date, months (and potentially years) after the Effective Date.

11.     Section 365 of the Bankruptcy Code, governing executory contracts and unexpired leases, provides that in a Chapter 11 case, unless the court orders the debtor to assume or reject earlier, the debtor may assume or reject an executory contract "at any time <u>before</u> the confirmation of a plan". 11 U.S.C. § 365(d)(2) (emphasis added). In a Chapter 11 case "assumption or rejection must take place prior to confirmation of a plan, unless the court sets an earlier deadline." <u>In re Resource Tech. Corp.</u>, 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000).

12.     The United States Supreme Court has twice held that this deadline is mandatory – confirmation of a plan is the <u>final</u> deadline for a Chapter 11 debtor to decide whether to assume or reject an executory contract. See <u>Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.</u>, 554 U.S. 33, 45 (2008) ("We agree with <u>Bildisco's</u> commonsense observation that the decision whether to reject a contract or lease must be made before confirmation."); <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."). The U.S. Court of Appeals for the Second Circuit has also held that

"[t]he plain language of the Code permits a chapter 11 trustee (and, by extension through § 1107, a debtor-in-possession) to assume or reject the executory contract 'at any time before the confirmation of a plan.'" In re Penn Traffic Co., 524 F.3d 373, 378-79 (2d Cir. 2008); accord In re Dana Corp., 350 B.R. 144, (Bankr. S.D.N.Y. 2006) ("'[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.'") (citations omitted); In re Worldcom, Inc., 2006 WL 898029, No. 02-13533 (AJG), at *3 (Bankr. S.D.N.Y. Mar. 9, 2006) (denying debtor's post-confirmation motion to reject executory contract *nunc pro tunc* and stating "Section 365(d)(2) of the Bankruptcy allows for rejection of an executory contract prior to confirmation, while Section 1123(b)(2) allows for rejection through a plan. In this case, rejection of the Alleged Contract clearly was not sought prior to confirmation of the Plan and is not provided for in the Plan itself. Thus, to reject the Alleged Contract at this point in time would constitute an act that is inconsistent with those provisions of the Bankruptcy Code that permit rejection of executory contracts.").

13. The Plan, by permitting the Debtors to make decisions on whether to assume or reject executory contracts months or even years after confirmation, violates the plain language of Section 365(d)(2) of the Bankruptcy Code, which has been held under binding Supreme Court and Second Circuit precedent to require assumption or rejection before plan confirmation.

14. Through the Plan, the Debtors are seeking to hold "hostage" contract counterparties who have continued to honor and perform under their contracts postpetition. The executory contract provisions in the Plan are coercive and structured to intimidate contract counterparties into accepting cure amounts that are significantly less than the actual amounts owed. The Debtors will identify proposed cure amounts set by the Debtors in their sole

discretion in the Assumption Schedule, <u>after</u> the hearing on approval of the Disclosure Statement. The Debtors will retain the right to reject any contract after the Confirmation Date and Effective Date. Any contract counterparty who disputes the Debtors' proposed cure amount will receive <u>no</u> <u>cure</u> and will be held in limbo while litigating with the Debtors. Presumably, during that time, the objecting party will be required to perform under the executory contract. If at any point during that potentially protracted dispute it becomes advantageous to the Debtors to simply reject the executory contract rather than pay the disputed cure amount (as well as the undisputed cure amount), the Debtors are free to "change their minds" and do so well after confirmation to the extreme prejudice of the contract counterparty. Meanwhile, the Debtors will have enjoyed the benefits of the executory contract well after the confirmation date without providing any cure at all. Such patently one-sided provisions are not proposed in good faith and are contrary to well-established law.

15.     If the Debtors desire to retain the benefits of an executory contract and continue their relationship with a prepetition contract counterparty, the Debtors must commit to curing and assuming the contract on or before the Confirmation Date as required by the Bankruptcy Code. Further, the Debtors should be required to pay any undisputed cure amounts immediately and escrow any disputed cure amounts until the dispute can be resolved by the Court. Anything less is unfair and inequitable to the Debtors' contract counterparties. Debtors' Plan will remain inherently unconfirmable unless and until the Debtors modify the Plan to provide, at a minimum, that: (1) all decisions on whether to assume or reject executory contracts will be <u>irrevocably</u> made on or prior to the Confirmation Date; and (2) in the event Debtors and a contract counterparty dispute a cure amount (i) the undisputed amount will be immediately paid to the

contract counterparty, and (ii) the disputed amount will be escrowed pending resolution of the dispute. Until the Plan is so modified, the Disclosure Statement should not be approved.

16. The Plan in its current form, rather than providing for the assumption or rejection of executory contracts, provides the Debtors with increased leverage in negotiating reduced cure costs with contract counterparties. The Plan is therefore not proposed in good faith.

17. Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if the plan complies with all applicable provisions of the Bankruptcy Code. The Debtors' Plan does not comply with Section 365(d)(2) of the Bankruptcy Code because it allows the Debtors to assume or reject executory contracts after confirmation of the Plan in violation of the plain language of the Bankruptcy Code and binding Supreme Court and Second Circuit precedents. Further, the Plan does not comply with Section 1129(a)(3) of the Bankruptcy Code. As detailed above, (a) the provisions allowing for the assumption or rejection of executory contracts after confirmation of the Plan and (b) the absence of required payments of undisputed cure amounts, were not proposed in good faith. As such, the Plan does not comply with the applicable provisions of the Bankruptcy Code and cannot be confirmed. Approval of the Disclosure Statement must be denied unless the Plan is modified as set forth above.

## NOTICE

18. Notice of this Objection shall be provided to the following parties: (a) the Clerk of the Bankruptcy Court; (b) the Chambers of the Honorable Martin Glenn; (c) the Debtors; (d) the Committee; (e) Ally Financial, Inc. and (f) the Office of the United States Trustee.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Impac respectfully requests that the Disclosure Statement not be approved unless the following modification are made to the Plan

and Disclosure Statement:

(1) the Plan is modified to require that all decisions on whether to assume or reject executory contracts will be <u>irrevocably</u> made on or prior to the Confirmation Date; and

(2) the Plan is modified to require that, in the event Debtors and a contract counterparty dispute a cure amount: (a) the undisputed amount will be immediately paid to the contract counterparty on the Effective Date; and (b) the disputed amount will be escrowed pending resolution of the dispute.

Dated: New York, New York
August 8, 2013.

MCKENNA LONG & ALDRIDGE LLP

/s/ Christopher F. Graham
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
230 Park Avenue, Suite 1700
New York, New York 10169
Telephone: (212) 905-8348
Facsimile: (212) 922-1819
Email: cgraham@mckennalong.com
akaufman@mckennalong.com

and

David E. Gordon, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Email: dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation and Impac Mortgage Holdings, Inc.*