ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
ANDREA M. WONG
Assistant Chief Counsel
VICENTE MATIAS MURRELL (MD Bar No. 9806240098)
Attorney
PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Telephone: (202) 326-4020, ext. 3580
Fax: (202) 326-4112
e-mail: murrell.vicente@pbgc.gov and efile@pbgc.gov

Attorneys for Creditor
Pension Benefit Guaranty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                              )    Case Nos. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.                    )    Chapter 11
                                                    )
                                                    )
                                                    )    (Jointly Administered)
                    Debtors.                        )
---------------------------------------------------------x

**LIMITED OBJECTION OF THE
PENSION BENEFIT GUARANTY CORPORATION TO PLAN PROPONENTS'
MOTION FOR AN ORDER (I) APPROVING DISCLOSURE STATEMENT, (II)
ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF
VOTES TO ACCEPT OR REJECT THE PLAN PROPONENTS' JOINT CHAPTER 11
PLAN, (III) APPROVING THE FORM OF BALLOTS, (IV) SCHEDULING A HEARING
ON CONFIRMATION OF THE PLAN, (V) APPROVING PROCEDURES FOR NOTICE
OF THE CONFIRMATION HEARING AND FOR FILING OBJECTIONS
<u>TO CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF</u>**

The Pension Benefit Guaranty Corporation ("PBGC")[1], on its own and on behalf of the Employees Retirement Plan for GMAC Mortgage Group, LLC Pension Plan's ("Pension Plan"), hereby objects to the Motion (Docket No. 4152) to Approve the proposed Disclosure Statement ("Disclosure Statement") filed by the Debtors on July 4, 2013 (Docket No. 4157).

## BACKGROUND

### A.     PBGC and the Employee Retirement Income Security Act

PBGC is a United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of ERISA, 29 U.S.C. §§ 1301-1461 (2006 and Supp. V 2011).  When a pension plan covered by Title IV terminates without sufficient assets to pay promised benefits, PBGC typically becomes the statutory trustee of the plan and pays covered plan participants and their beneficiaries their pension benefits up to the limits established by Title IV.  *See* 29 U.S.C. §§ 1321, 1322, and 1361.

Pursuant to ERISA and the Internal Revenue Code, a sponsor of a pension plan covered by Title IV and the sponsor's controlled group members must satisfy certain financial obligations to the plan.[2]  The responsibilities of the plan sponsor and controlled group members to an on-going pension plan include the following:  (1) paying the statutorily required minimum funding contributions to the pension plan, 26 U.S.C. § 412; 29 U.S.C.A. § 1082; and (2) paying flat-rate and variable-rate insurance premiums to PBGC, 29 U.S.C. §§ 1306, 1307.

The liabilities of the plan sponsor and controlled group members with regard to the pension plan are joint and several.  *See* 26 U.S.C. § 412(b)(2) (2009); 29 U.S.C. §§ 1082(b)(2),

---

[1]  Capitalized terms not defined herein are defined in the Motion to Approve the Disclosure Statement, the Disclosure Statement or the Plan of Reorganization.

[2]  A group of trades or business under common control, referred to as a "controlled group," includes, for example, a parent and its 80% owned subsidiaries.  Another example includes brother-sister groups of trades or business under common control.  See 29 U.S.C. § 1301(14)(A), (B); 26 U.S.C. § 414(b), (c); 26 C.F.R. §§ 1.414(b)-1, 1.414(c)-1, 1.414(c)-2.

2

1307(e)(2). Therefore, should the plan sponsor default on its obligations to a pension plan, the resulting liability for the plan rests with its controlled group members.

Upon termination of a pension plan, the contributing sponsor and controlled group members become jointly and severally liable to PBGC for the plan's unfunded benefit liabilities. 29 U.S.C. § 1362(a), (b). Upon termination, the plan sponsor and controlled group members remain jointly and severally liable to PBGC for any unpaid premiums — not just the flat-rate and variable-rate premiums, but also a termination premium at the rate of $1,250 per plan participant per year for three years. *See* 29 U.S.C. § 1306(a)(7). Finally, because PBGC typically becomes the statutory trustee of the terminated pension plan, it has authority to collect all amounts owed to the pension plan, including any unpaid minimum funding contributions for which the plan sponsor and controlled group members are jointly and severally liable. *See* 29 U.S.C. §§ 1082(c), 1342(d), 1362(a), (c); 26 U.S.C. § 412(c).

**B. The Pension Plan**

Ally Financial, Inc. ("Ally") sponsors the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "Pension Plan"). The Debtors are members of Ally's controlled group, within the meaning of Title IV of ERISA. *See* 29 U.S.C. §1301(a)(13). The Pension Plan is a defined benefit plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321. The Debtors, Ally and any other members of Ally's controlled group, have joint and several liability with respect to the Pension Plan for any unpaid minimum funding contributions owed to the Pension Plan and unpaid premiums owed to PBGC. *See* 26 U.S.C. § 412(b)(2); 29 U.S.C. §§ 1307(e)(2). In the event the Pension Plan were to terminate, the Debtors, Ally and any other members of Ally's controlled group would, in addition to unpaid contributions and premiums, become jointly and severally liable to the PBGC for the Pension Plan's unfunded benefit

3

liability.  *See* 29 U.S.C. § 1362(a), (b).

### C. Debtor's Bankruptcy Proceedings

On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On the Petition Date, the Bankruptcy Court procedurally consolidated the Debtors' cases and ordered that they be jointly administered.

By stipulation approved by the Court on November 7, 2013 PBGC filed four (4) separate claims against each of the fifty-one (51) Debtors, representing the claims for which the Debtors are jointly and severally liable to the Pension Plan and PBGC under 26 U.S.C. § 412; 29 U.S.C. §§ 1082, 1306, 1307, 1362.

On July 4, 2013, the Debtors filed the instant Motion to Approve the Disclosure Statement.

### **Argument**

PBGC, on its own behalf and on behalf of the Pension Plan, objects to the Disclosure Statement because it fails to provide "adequate information," as that term is defined under 11 U.S.C. § 1125.  As used in that section, adequate information means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).  *See In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *also Hall v. Vance,* 887 F.2d 1041, 1043 (10th Cir. 1989).  Furthermore, Section 1125(b) of the Bankruptcy Code requires that in order to solicit votes on a plan of reorganization, concurrent with the solicitation, "a written disclosure statement approved . . . by the court as containing

adequate information." must have been transmitted to the holders of claims and interests. 11 U.S.C. § 1125(b). An adequate disclosure statement should "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Disclosure Statement submitted by the Debtors fails to meet this threshold in that it does not provide adequate information justifying the need for overly broad release, exculpation and injunction provisions that release or otherwise shield non-debtors from liability. [3]

PBGC believes that the Debtors' Joint Chapter 11 Plan would not release, in any way, Ally or any of it controlled group members and officers, employees, agents, and representatives from their obligations to the Pension Plan. However, out of an abundance of caution, PBGC files this objection to ensure that the broad releases (including the exculpation and injunction provisions) described in the Disclosure Statement and contained in the Chapter 11 Plan do not release Ally or any of its controlled group members and officers, employees, and representatives from their statutory objections and liabilities with respect to the Pension Plan. In addition, PBGC objects to any release of the Debtors and their officers, employees, agents, and representatives with respect to any fiduciary breach or prohibited transaction, as defined in ERISA, that may have been committed with respect to the Pension Plan. Accordingly, the Debtors should disclose why these releases, injunctions and exculpations are necessary in relation to the Pension Plan.

PBGC would withdraw its limited objection if the following provision were included in the Disclosure Statement and Chapter 11 Plan:

> Nothing in the Debtors' bankruptcy proceedings, Confirmation Order, Plan of Liquidation, the Bankruptcy Code (and section 1141 thereof), or any other document filed in the Debtors' bankruptcy

---

[3] *See* Disclosure Statement, Art. V, section W.

5

case shall in any way be construed to discharge, release, limit, or relieve the Debtors or any other party, in any capacity, from any liability or responsibility with respect to the GMAC Mortgage Group, LLC Pension Plan ("Pension Plan") or any other defined benefit pension plan under any law, governmental policy, or regulatory provision.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Chapter 11 Plan of Reorganization, Confirmation Order, Bankruptcy Code, or any other document filed in any Debtors' bankruptcy cases.

## **CONCLUSION**

For the forgoing reasons, PBGC objects to the Debtors' Disclosure Statement and requests that it be modified as stated above.

Dated: August 8, 2013
Washington, DC

/s/Vicente Matias Murrell
ISRAEL GOLDOWITZ
Chief Counsel
CHARLES L. FINKE
Deputy Chief Counsel
ANDREA WONG
Assistant Chief Counsel
VICENTE MATIAS MURRELL
(MD Bar No. 9806240098)
Attorney
PENSION BENEFIT GUARANTY
 CORPORATION
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005-4026
Tel: (202) 326-4020
Fax: (202) 326-4112