**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC, *et al.*,<br><br>  Debtors. | Case No. 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered |

**OBJECTION OF THE FEDERAL HOUSING FINANCE AGENCY TO APPROVAL OF PROPOSED DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL <u>COMMITTEE OF UNSECURED CREDITORS</u>**

KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP

Andrew K. Glenn (aglenn@kasowitz.com)
Kanchana Wangkeo Leung (kleung@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Attorneys for Federal Housing Finance Agency,*
*as Conservator for the Federal Home Loan*
*Mortgage Corporation*

**TABLE OF CONTENTS**

| | Page |
|---|---:|
| PRELIMINARY STATEMENT | 1 |
| FACTUAL BACKGROUND | 2 |
|     A.    The Ally Action and Amended Complaint. | 2 |
|     B.    The FHFA Proofs of Claim. | 4 |
|     C.    The Disclosure Statement and Plan. | 4 |
| ARGUMENT | 5 |
| RESERVATION OF RIGHTS | 11 |
| CONCLUSION | 12 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Cardinal Congregate I*,
   121 B.R. 760 (Bankr. S.D. Ohio 1990)..................................................................6, 7, 10

*In re Colonial Realty*,
   980 F.2d 125, 134 (2d Cir. 1992)....................................................................................8

*In re Copy Crafters Quickprint, Inc.*,
   92 B.R. 973 (Bankr. N.D.N.Y. 1988) .............................................................................7

*In re Eastern Maine Elec. Coop., Inc.*,
   125 B.R. 329 (Bankr. D. Me. 1991)..............................................................................6,7

*In re Ferretti*,
   128 B.R. 16 (Bankr. D.N.H. 1991) .................................................................................6

*In re Stanley Hotel, Inc.*,
   13 B.R. 926 (Bankr. D. Colo. 1981) ...............................................................................6

*In re Weiss-Wolf, Inc.*,
   59 B.R. 653 (Bankr. S.D.N.Y. 1986) ..............................................................................6

*Kirk v. Texaco, Inc.*,
   82 B.R. 678 (S.D.N.Y. 1988).........................................................................................6

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
   25 F.3d 1132 (2d Cir. 1994) ...........................................................................................6

*Sure-Snap Corp. v. State Street Bank & Trust Co.*,
   948 F.2d 869 (2d Cir. 1991) ...........................................................................................5

**STATUTES**

11 U.S.C. § 1122...............................................................................................................11

11 U.S.C. § 1125.............................................................................................................5, 7

11 U.S.C. § 1126...............................................................................................................11

12 U.S.C. § 1821.................................................................................................................8

12 U.S.C. § 4617...............................................................................................2, 7, 8, 9, 10

The Federal Housing Finance Agency ("FHFA") as Conservator for the Federal Home Loan Mortgage Corporation ("Freddie Mac"), hereby submits this objection (the "Objection") to the *Plan Proponents' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to Confirmation of the Plan, and (VI) Granting Related Relief*, dated July 3, 2013 [Docket No. 4152] (the "Disclosure Statement Application") and, related thereto, the approval of the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (the "Disclosure Statement"), and in support hereof respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

The Disclosure Statement fails to provide adequate information concerning key aspects of the Plan affecting all creditors. Chief among the omitted information is FHFA's first priority right, under statutory authority and binding Second Circuit precedent, to receive proceeds of certain estate avoidance actions being retained under the Plan. The Disclosure Statement wholly fails to apprise stakeholders of FHFA's superior rights to such proceeds. Moreover, the Disclosure Statement falls far short of the requisite amount of information it must contain by omitting any substantive disclosures concerning the method of allocating the Ally Contribution between estate and non-estate causes of action and as among the Debtor estates. The Plan Proponents have also failed to provide sufficient clarity concerning the process by which they

---

[1] Capitalized terms not defined in the Preliminary Statement have the meanings ascribed to them *infra*.

will address the allowance and priority of FHFA's Proofs of Claim.[2] These glaring omissions in the Disclosure Statement prevent approval of the Disclosure Statement.

Accordingly, and for the reasons set forth below, the Disclosure Statement should not be approved.

## FACTUAL BACKGROUND

**A.    The Ally Action and Amended Complaint.**

1.  FHFA, in its capacity as Conservator of Freddie Mac, commenced an action in the Supreme Court of the State of New York, County of New York, on September 2, 2011. That complaint (the "Complaint") named as defendants: (1) Ally Financial, Inc. ("AFI"), GMAC Mortgage Group, Inc. ("GMACM"), and Ally Securities, LLC ("Ally Securities"); (2) ResCap, GMAC-RFC Holding, RFC, RAMP, RASC, and RALI (the "ResCap Defendants"); and (3) seven underwriters (collectively, the "Underwriter Defendants"). The Complaint generally alleged that, between September 23, 2005 and May 30, 2007, Freddie Mac purchased over $6 billion in residential mortgage backed securities (the "Certificates") issued in connection with 21 securitizations ("Securitizations") for which the ResCap Defendants acted as depositors, sponsor, and control persons thereof.

2.  On October 6, 2011, all defendants removed the action to the United States District Court for the Southern District of New York (the "District Court"), where it was assigned to the Honorable Denise L. Cote, U.S.D.J., as Case No. 11- Civ. 7010 (the "Ally Action"). Judge Cote thereafter entered an order coordinating for pretrial proceedings the Ally Action with 15 similar actions commenced by FHFA against other defendants regarding other residential mortgage backed securities.

---

[2]    FHFA is presently evaluating how to proceed concerning its claims, including, whether to seek to withdraw the reference of proceedings adjudicating its proofs of claim. Moreover, FHFA does not submit to the jurisdiction of this Court with respect to the adjudication of any issues implicated by 12 U.S.C. § 4617.

2

3. On May 14, 2012 (the "Petition Date"), the above-captioned debtors (the "Debtors"), including the Subject Debtors (defined below), filed petitions in the United States Bankruptcy Court for the Southern District of New York to commence their chapter 11 bankruptcy cases (the "Bankruptcy Cases").

4. On June 13, 2012, FHFA amended its Complaint in the Ally Action (the "Amended Complaint"). Because of the Debtors' bankruptcy filing, FHFA's Amended Complaint removed all Debtors from the Ally Action, but continued to assert claims against AFI, GMACM and Ally Securities and the Underwriter Defendants (collectively, the "Non-Debtor Defendants"). Otherwise, the Amended Complaint makes the same substantive allegations as the original Complaint.

5. FHFA's Amended Complaint asserts seven claims against the Non-Debtor Defendants. FHFA asserts four claims against Ally Securities and the Underwriter Defendants in their roles as underwriters of the Certificates: (i) violations of section 11 of the Securities Act of 1933; (ii) violations of section 12(a)(2) of the Securities Act; (iii) violations of section 13.1-522(A)(ii) of the Virginia Securities Act; and (iv) common law fraud. FHFA also asserts three claims against AFI and GMACM: (i) violations of section 15 of the Securities Act; (ii) violations of section 13.1-522(C) of the Virginia Securities Act; and (iii) aiding and abetting the fraud.

**B.    The FHFA Proofs of Claim.**

6.    On November 30, 2012, FHFA timely filed proofs of claim (the "Proofs of Claim")[3] against debtors Residential Capital, LLC ("ResCap"), GMAC-RFC Holding Company ("GMAC-RFC Holding"), LLC, Residential Funding Company, LLC ("RFC"), Residential Asset Mortgage Products, Inc. ("RAMP"), Residential Asset Securities Corporation ("RASC") and Residential Accredit Loans, Inc. ("RALI") (collectively, the "Subject Debtors").

7.    In the Proofs of Claim, FHFA alleges that the Subject Debtors, who are issuers and sponsors and/or controlled the issuers, sponsors, and underwriters of the Certificates purchased by Freddie Mac, are liable for the misstatements and omissions of material fact contained in the Registration Statements and other Offering Materials because they prepared, filed, and/or used these documents to market and sell the Certificates to Freddie Mac, or because they directed and controlled the entities that did so.

8.    FHFA's Proofs of Claim assert claims on four independent bases against Debtors RALI, RASC, and RAMP for (i) violations of section 11 of the Securities Act; (ii) violations of section 12(a)(2) of the Securities Act; (iii) violations of section 13.1-522(A)(ii) of the Virginia Securities Act; and (iv) common law fraud. FHFA's Proofs of Claim assert claims on three independent bases against Debtors RFC, GMAC-RFC Holding, and ResCap for (i) violations of section 15 of the Securities Act; (ii) violations of section 13.1-522(C) of the Virginia Securities Act; and (iii) aiding and abetting the fraud.

**C.    The Disclosure Statement and Plan.**

9.    On July 4, 2013, the Debtors and the Official Committee of Unsecured Creditors (the "Creditors Committee" and, with the Debtors, the "Plan Proponents") filed the Disclosure

---

[3]    FHFA timely presented the Proofs of Claim to Kurtzman Carson Consultants, the Debtors' claims agent, which assigned Claim Nos. 6296, 6297, 6298, 6299, 6300, and 6301 to the Proofs of Claims.

4

Statement and the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "<u>Plan</u>"). The terms of the Plan are premised upon Ally's agreement to provide $2.1 billion in plan funding (the "<u>Ally Contribution</u>") in exchange for certain releases.[4] The Debtors assert that the Plan embodies a "global settlement" of claims that would otherwise leave the Debtors embroiled in costly litigation for years to come, and that such settlement would not have been possible without the Ally Contribution.

10. The Plan releases the estates' claims, including avoidance actions, against, among others, Ally and those parties that consented to the Plan under the plan support agreement.[5] The Plan preserves, however, all other estate causes of action, which are vested in the Liquidating Trust established under the Plan. (*See* Plan, Art. IV. R (Preservation of Causes of Action); Plan Art. VI (The Liquidating Trust).) Under the Plan, the Debtors' general unsecured creditors, but not FHFA, would be the beneficiaries of recoveries by the Liquidating Trust on account of avoidance recoveries. (*See* Plan, Art. III, D.)

## ARGUMENT

11. To approve the Disclosure Statement, this Court must find that the Disclosure Statement contains "adequate information," meaning "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor [typical of the holders of claims in the case] of the relevant class to make an *informed* judgment about the plan[.]" 11 U.S.C. § 1125(a)(1) (emphasis added); *see* 11 U.S.C. § 1125(b). *See also Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991) (Section 1125(b) "requires Chapter 11

---

[4]  For purposes of discussion of the Plan, Ally shall mean, as defined in the Plan, collectively, AFI and its direct and indirect subsidiaries and affiliates, excluding the Debtors and their direct and indirect subsidiaries.

[5]  *See* Plan Art. IX.C. Releases by the Debtors:

> Debtor Released Parties are deemed released and discharged by the Debtors . . . of any and all Causes of Action . . . including those Causes of Action based on avoidance liability under federal or state laws . . . .

5

petitioners to file a mandatory disclosure statement listing all 'adequate information' which would enable holders of claims to take an informed position on a proposed reorganization plan.").

12. The principle of disclosure is "of prime importance in the reorganization process . . . . The [Bankruptcy] Code obliges a Debtor to engage in full and fair disclosure . . . ." *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (rejecting disclosure statement that "fails this test"). *See In re Weiss-Wolf, Inc.*, 59 B.R. 653, 656 (Bankr. S.D.N.Y. 1986) (denying approval of disclosure statement; "It is not enough for a debtor to say, in effect, trust me, this is a good deal for creditors."). "[T]he information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981).

13. "The court has an independent obligation to determine whether a disclosure statement includes adequate information within the meaning of the Bankruptcy Code." *In re Eastern Maine Elec. Coop., Inc.*, 125 B.R. 329, 330, 333 (Bankr. D. Me. 1991) (disapproving disclosure statement) (citing 11 U.S.C. § 1125(b); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990)). *See also Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988) ("Under § 1125(b) of the Bankruptcy Code, a disclosure statement concerning a plan may not be distributed for consideration unless the supervising bankruptcy judge is satisfied that the statement contains 'adequate information' . . . ."). The court must evaluate the disclosure statement's adequacy "in light of the facts unique to the case . . . . The debtor's particular

6

circumstances must be taken into account." *Eastern Maine Elec.*, 125 B.R. at 333 (citing *Cardinal Congregate*, 121 B.R. at 764). "Generally speaking, the Chapter 11's size and complexity, the kind of plan proposed and the kind of claims or interests it impairs and the access by these impaired holders to relevant information from other sources serve as a starting point in the evaluation of the adequacy of disclosure." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980-81 (Bankr. N.D.N.Y. 1988) (denying approval of disclosure statement that "does not contain the kind of clarity nor realism required by the adequate information standard").

14. The Disclosure Statement falls woefully short of satisfying the requirements of Section 1125 of the Bankruptcy Code.

15. <u>First</u>, the Disclosure Statement lacks any, let alone adequate, disclosures concerning FHFA's first priority, ahead of all stakeholders, to recoveries of certain estate avoidance actions preserved under the Plan.

16. Congress enacted the Housing and Economic Recovery Act of 2008 ("<u>HERA</u>"), which established FHFA and gave the agency extensive authority over the government-sponsored entities ("<u>GSEs</u>"), Freddie Mac and the Federal National Mortgage Association ("<u>Fannie Mae</u>"). FHFA has the responsibility to ensure the safety and soundness of the GSEs to protect the U.S. housing market. Congress accorded FHFA broad powers to fulfill its statutory mandate by permitting the Director to appoint FHFA as Conservator of the GSEs with the authority to conserve and preserve assets, including by commencing lawsuits on behalf of Freddie Mac.

17. Section 4617(b)(15) of HERA provides FHFA with explicit authority to avoid intentional fraudulent transfers made by debtors of Freddie Mac and to recover such transfers or their value. Moreover, the statute expressly gives FHFA priority over any party under the Bankruptcy Code (other than another Federal agency) with respect to such recovery. HERA

7

provides, in pertinent part:

>    (b) Powers and duties of the Agency as conservator or receiver.
>
>    (15) Fraudulent transfers.
>
>    (A) *In general.  The Agency, as conservator or receiver, may avoid a transfer of any interest of an entity-affiliated party, or any person determined by the conservator or receiver to be a debtor of the regulated entity, in property, or any obligation incurred by such party or person*, that was made within 5 years of the date on which the Agency was appointed conservator or receiver, if such party or person voluntarily or involuntarily made such transfer or incurred such liability with the intent to hinder, delay, or defraud the regulated entity, the Agency, the conservator, or receiver.
>
>    (B) Right of recovery.  To the extent a transfer is avoided under subparagraph (A), the conservator or receiver may recover, for the benefit of the regulated entity, the property transferred, or, if a court so orders, the value of such property (at the time of such transfer) from—
>
>        (i) the initial transferee of such transfer or the entity-affiliated party or person for whose benefit such transfer was made; or
>
>        (ii) any immediate or mediate transferee of any such initial transferee.
>
>    . . . .
>
>    (D) Rights under this paragraph. The rights under this paragraph of the conservator or receiver described under subparagraph (A) *shall be superior to any rights of a trustee or any other party (other than any party which is a Federal agency) under title 11, United States Code.*

U.S.C. § 4617(b)(15) (emphasis added).

18.    In *In re Colonial Realty Co.,* the Second Circuit – evaluating the Federal Deposit Insurance Corporation's ("FDIC") rights under 12 U.S.C. § 1821(d)(17), which is nearly identical to section 4617(b)(15) of HERA – held that where a bankruptcy estate's claims overlap with those of the FDIC, the FDIC retains a *superior* right to receive *first recoveries* of the proceeds thereof.  980 F.2d 125, 134 (2d Cir. 1992) (FDIC was entitled to "a preferential claim . . . . the word 'superior' . . . means prior in right.") (quotations omitted).

19.    As set forth in the Disclosure Statement, estate avoidance actions against parties

8

other than the Debtor Released Parties will be preserved under the Plan (the "Preserved Avoidance Actions") and may be brought by the Liquidating Trust for the benefit of unsecured creditors (excluding FHFA). To the extent the Preserved Avoidance Actions constitute actions to avoid actual fraudulent conveyances made by the Subject Debtors, FHFA is entitled to priority recovery therefrom.

20. The Disclosure Statement does not contain adequate – or any – information about FHFA's superior rights. This omission is fatal to the Disclosure Statement. Creditors recovering under the Plan described by the Disclosure Statement should and must be informed that FHFA may recover on such actions *first*, which will reduce all other creditors' recoveries.

21. Moreover, with respect to avoidance actions being released under the Plan, the Disclosure Statement should clearly state that, notwithstanding such releases, FHFA's rights to bring any such actions under Section 4617(b)(15) of HERA are fully preserved. Parties being released by the Debtors under the Plan must be explicitly informed that, regardless of such releases (which plainly cannot be absolute), they remain liable to FHFA for any transfers they received that are covered by Section 4617(b)(15) of HERA.

22. Second, the Disclosure Statement lacks adequate disclosure concerning the allocation of the Ally Contribution as between released estate causes of action and released third-party claims. The distinction is of vital importance to FHFA, which, as a creditor, is entitled to share in any consideration received by the Debtors on account of released estate causes of action, but which, as a party not granting third-party releases, is not entitled to share in consideration received on account of released non-estate claims. The Disclosure Statement must also disclose the allocation of the Ally Contribution as among categories of settled claims because FHFA is entitled to first priority on any recoveries received from Ally on account of fraudulent transfers covered by Section 4617(b)(15) of HERA. Full disclosure is imperative (i) to ensuring that the

9

allocation of the Ally Contribution is fair, appropriate and does not contravene HERA and (ii) also for the affected parties, like FHFA, to ensure they will receive the amounts to which they are rightfully entitled. Otherwise, confirmation of the Plan would be impermissible.

23. <u>Third</u>, as set forth in the Disclosure Statement, the "cornerstone" of the settlement embodied in the Plan is the $2.1 billion Ally Contribution. The Disclosure Statement allocates value for the Ally Contribution among each of the Debtor groups, including $782.7 million to the "ResCap Debtors," $462.3 million to the "GMACM Debtors" and $462.3 million to the "RFC Debtors." (Disclosure Statement at 37-8.) The Disclosure Statement does not contain adequate disclosures concerning the bases for such allocations, but rather references an "agreed upon allocation" arrived at in closed-door mediation sessions. FHFA and other creditors are entitled to understand the basis for allocating hundreds of millions of dollars of value among the various Debtors. If the Plan fails to properly allocate value among estates, confirmation could end up failing.

24. <u>Fourth</u>, the Disclosure Statement alludes to the Plan Proponents' intention to seek to subordinate FHFA's Proofs of Claim, by stating that, "if the Bankruptcy Court determines that the FHFA Claims are not subject to subordination under section 510(b) of the Bankruptcy Code . . ." (Disclosure Statement at 17). The Disclosure Statement, however, fails adequately to disclose the timing or procedure by which the Plan Proponents intend to seek subordination. *See Cardinal Congregate*, 121 B.R. at 767 (rejecting disclosure statement that contained inadequate discussion of certain claims held, finding that a more complete discussion of the plan's proposed treatment of such claims was necessary). Moreover, the Disclosure Statement should make clear to all stakeholders that, even if the Debtors succeed in subordinating FHFA's Proofs of Claim, FHFA nonetheless is entitled to first recoveries, ahead of all other stakeholders, from Preserved Avoidance Actions covered by r my f of HERA.

10

25. <u>Fifth</u>, in the Disclosure Statement Application, the Plan Proponents ask the Court to find that FHFA will not receive or retain any property under the Plan and to hold that FHFA is conclusively deemed to reject the Plan and is not entitled to vote. (*See* Proposed Order annexed to Disclosure Statement Application at ¶ M.) The Plan Proponents rely on Section 1126(g) of the Bankruptcy Code for this provision, which provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g). FHFA's treatment under the Plan, however, does not fall under Section 1126(g) because the Plan **does** provide FHFA a recovery on account of its allowed claims. Indeed, this issue highlights the flawed classification in the Plan – wherein FHFA's general unsecured claims and purported subordinated claims are jointly classified, in violation of Section 1122(a) of the Bankruptcy Code – which renders the Plan unconfirmable. The mere fact that the Plan Proponents may try to subordinate FHFA's claims – on grounds that FHFA believes are wholly without merit – is an insufficient basis to deprive FHFA of the right to vote on the Plan. Accordingly, FHFA is entitled to receive adequate disclosures, which are absent from the Disclosure Statement.

## RESERVATION OF RIGHTS

26. FHFA believes that the Plan suffers from various insurmountable flaws that should prevent confirmation. FHFA reserves the right to object to confirmation of the Plan on any basis and the omission of any argument herein shall not be deemed to waive any confirmation objection that FHFA may have.

**CONCLUSION**

    For the foregoing reasons, FHFA respectfully requests that the Court deny approval of the Disclosure Statement.

DATED:    August 8, 2013
               New York, New York

                                  KASOWITZ, BENSON, TORRES &
                                   FRIEDMAN LLP

                                  /s/ Daniel A. Fliman
                                  Andrew K. Glenn (aglenn@kasowitz.com)
                                  Kanchana Wangkeo Leung (kleung@kasowitz.com)
                                  Daniel A. Fliman (dfliman@kasowitz.com)
                                  1633 Broadway
                                  New York, New York 10019
                                  Telephone: (212) 506-1700
                                  Facsimile: (212) 506-1800

                                  *Attorneys for Federal Housing*
                                  *Finance Agency, as Conservator for the Federal*
                                  *Home Loan Mortgage Corporation*