**GIBSON, DUNN & CRUTCHER LLP**
David M. Feldman (DF-8070)
Joshua P. Weisser (JW-0185)
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Attorneys for Amherst Advisory & Management, LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------
In re:

RESIDENTIAL CAPITAL, LLC, *et al.*,

               Debtors.
------------------------------------------------------------

Case No. 12-12020 (MG)

Chapter 11

Jointly Administered

**LIMITED OBJECTION TO PLAN PROPONENTS' MOTION FOR AN ORDER
(I) APPROVING DISCLOSURE STATEMENT, (II) ESTABLISHING
PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO
ACCEPT OR REJECT THE PLAN PROPONENTS' JOINT CHAPTER 11 PLAN,
(III) APPROVING THE FORM OF BALLOTS, (IV) SCHEDULING A HEARING
ON CONFIRMATION OF THE PLAN, (V) APPROVING PROCEDURES FOR
NOTICE OF THE CONFIRMATION HEARING AND FOR FILING OBJECTIONS
TO CONFIRMATION OF THE PLAN, AND (VI) GRANTING RELATED RELIEF**

Amherst Advisory & Management, LLC, acting in its capacity as investment manager ("**AAM**") for holder(s) of trust certificates issued by RALI Series 2006-QO7 Trust ("**RALI 2006-QO7**"), hereby submits this limited objection (the "**Objection**") to the *Plan Proponents' Motion for an Order (I) Approving Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan, (III) Approving the Form of Ballots, (IV) Scheduling a Hearing on Confirmation of the Plan, (V) Approving Procedures for Notice of the Confirmation Hearing and for Filing*

- 1 -

*Objections to Confirmation of the Plan, and (VI) Granting Related Relief* (the "**Disclosure Statement Motion**")[1] [Docket No. 4152] and, in support of this Objection, respectfully represents as follows:

## PRELIMINARY STATEMENT

AAM serves as investment manager for one or more RMBS investors that hold, in the aggregate, approximately 50% of a class of residential mortgage-backed securities issued by RALI 2006-QO7, a securitization trust that originally issued over $1.5 billion of RMBS. As discussed on the record at the June 26, 2013 hearing for approval of the Debtors' Support Agreement, AAM delivered a direction and indemnity letter to the RALI 2006-QO7 Trustee, directing the trustee to withdraw from the Support Agreement and reserved its right to further direct the trustee to opt out of any settlement of the RMBS Claims. AAM took this serious action given the requirement in the PSA Motion that any RMBS Investor that sought to opt out of the Support Agreement was required to so direct their trustee prior to entry of an order approving the PSA Motion. As noted on the record, AAM may be the only RMBS Investor in these cases (whose RMBS Trust has breach of representation and warranty claims) that has taken the steps necessary to direct its RMBS Trust to opt out.

AAM sought to preserve the ability of the RALI 2006-Q07 Trust to opt out because AAM believes that the methodology used for estimating the RMBS Trusts' respective claims for purposes of allocating the Allowed RMBS Trust Claims among the various RMBS Trusts is fundamentally flawed, to the detriment of the RALI 2006-Q07 certificate holders. The Debtors,

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement Motion or the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157].

in their response to various objections to the PSA Motion, expressly noted that the ability of any RMBS Trust (who had been directed to opt out) would be preserved.

Shockingly, however, the Debtors' proposed Plan seeks to eliminate the trusts' opt out right and instead, to force all RMBS Trusts to take the distribution determined by Duff & Phelps. AAM respectfully submits that the elimination of the RALI 2006-Q07's right to opt out is a violation of the trust's due process rights. This problem is compounded by the fact that the Debtors have not made a motion to estimate the RMBS Trusts' respective recognized claims (for allocation purposes or otherwise). For these reasons and others discussed below, AAM submits that the proposed Plan is unconfirmable and, therefore, the Disclosure Statement Motion should be denied unless and until the right of RALI 2006-Q07 to elect to litigate its claim is preserved.

## FACTS

1. On May 23, 2013, Residential Capital, LLC and its affiliated debtors (collectively, the "***Debtors***") in the above captioned chapter 11 cases (collectively, the "***Chapter 11 Cases***") filed the *Debtors' Motion for an Order under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants* [Docket No. 3814] (the "***PSA Motion***"). Attached to the PSA Motion as Exhibit 3 is a Plan Support Agreement (including the exhibits annexed thereto, the "***Support Agreement***") executed by the Debtors, Ally and certain other consenting creditors, including the RMBS Trustees and certain holders of RMBS Trust certificates ("***RMBS Investors***").

2. AAM, in its capacity as investment manager, objected to the PSA Motion [Docket No. 4008] (the "***PSA Objection***"). One of AAM's primary grounds for objection was the Debtors' failure to provide informed RMBS Investors, like AAM, with input on the allocation of the Allowed RMBS Trust Claims among the RMBS Trusts. PSA Objection ¶¶ 6-10. The

proposed RMBS Trust Allocation Protocol set forth in the PSA Motion and its supporting exhibits endeavored to subject claim allocation to the unfettered discretion of one professional, Duff & Phelps ("**Duff**"), retained to estimate the trusts' relative losses. In the PSA Objection, AAM argued against providing Duff with unchecked authority to guesstimate RMBS Trust losses and claim allocation. Duff's stated intention to base its analysis on deviations from underwriting guidelines, rather than identification of actual breaches of representations and warranties under the underlying transaction documents (which breaches would trigger repurchase obligations), highlights a fundamental problem in the claim allocation process. The Committee's expert has acknowledged that analysis of underwriting guidelines (and marketing prospectuses) is "not equivalent" to identifying breaches of representations and warranties under the actual governing documents.[2] "R&W breaches (e.g. flawed appraisals that lead to misstated home values) might successfully be argued by the Trusts to constitute material R&W breaches yet would not be included as 'materially defective' underwriting as determined by the re-underwriting process."[3]

3.  On June 24, 2013, the Debtors filed their omnibus response to the 21 objections and reservations of rights filed in response to the PSA Motion [Docket No. 4066] (the "**Debtors' Reply**"). A chart summarizing the 21 objections and the Debtors' responses thereto is annexed as Exhibit A to the Debtors' Reply. In the chart, the Debtors rejected AAM's proposed modification of the RMBS Trust Allocation Protocol but assured AAM that, at AAM's election, RALI 2006-QO7 could opt out of the RMBS Settlement. Debtors' Reply, Exhibit A, at 1

---

[2] *The Official Committee of Unsecured Creditors' Federal Rule of Civil Procedure 26(A)(2) Expert Disclosures*, Exhibit A, ¶ 31.

[3] *Id*. at 31 n.19.

("**Amherst continues to have the ability to direct the RMBS Trustees to opt out of the RMBS Settlement**.") [Emphasis added]. The Debtors made no such commitment as to any other RMBS Trust. Based on the Debtors' assurance that RALI 2006-QO7 could opt out of the RMBS Settlement, AAM discontinued prosecution of the PSA Objection at the June 26, 2013 hearing held for consideration of the PSA Motion (the "***PSA Hearing***"). Transcript of June 26, 2013 Hearing (the "***June 26 Transcript***"), at 120, 15-22. On June 26, 2013, the Court entered an order approving the PSA Motion [Dkt No. 4098] (the "***PSA Order***").

4. The Plan Proponents now state that the RMBS Settlement, if approved, will be binding on all RMBS Trusts. Disclosure Statement, Art. II(B), Art. III(D)(5). Column H of Schedule 2-R to the proposed Plan annexed to the Disclosure Statement further sets forth the "RFC Recognized Claim" amount for each RMBS Trust holding a claim against the RFC Debtors, including RALI 2006-QO7. The recognized claim amount will determine each RMBS Trust's receipt of value under the Plan.

5. AAM retains the right to elect to direct RALI 2006-QO7's withdrawal from the Support Agreement and vote against the Plan in accordance with the terms of the Support Agreement and RALI 2006-QO7's organizational documents. All four RMBS Trustees executed the Support Agreement. That execution, however, does not forever bind all RMBS Trusts to that document. An RMBS Trustee that received a qualifying direction and indemnity letter prior to entry of the PSA Order, under the Support Agreement, may direct an RMBS Trust's withdrawal from the agreement at any time. Support Agreement § 5.2.

6. Prior to the PSA Hearing, AAM caused a direction and indemnity letter (the "***Direction Letter***") to be delivered to Deutsche Bank Trust Company Americas, trustee for the RALI 2006-QO7 (in such capacity, the "***RALI 2006-QO7 Trustee***"), which trustee counsel

acknowledged was both valid and consistent with the RALI 2006-QO7 organizational documents. Nonetheless, as permitted under Article 8 of the RALI 2006-QO7 Pooling and Servicing Agreement, the RALI 2006-QO7 Trustee declined to comply with the Direction Letter or to direct RALI 2006-QO7's withdrawal from the Support Agreement. Trustee counsel, however, acknowledged that, under Section 11.03(c) of the RALI 2006-QO7 Pooling and Servicing Agreement, on account of that refusal, AAM may act with respect to RALI 2006-QO7 in these proceedings and may direct RALI 2006-QO7's withdrawal from the Support Agreement. Counsel to Bank of New York Mellon Trust Company, N.A., acting as a representative for all four RMBS Trustees, further acknowledged the existence of this right at the PSA Hearing. June 26 Transcript, at 90, 9-17 ("If in fact Amherst provided a direction to Deutsche Bank that is determined to be valid, that means that the trust itself is no longer controlled by the trustee but is rather controlled by the directing holder. Under the terms of the plan support agreement, that would entitle the trustee to withdraw that trust from the PSA, which would mean Amherst, acting through that trust would have all rights to object to confirmation, to object to the disclosure statement, and so forth.").

## **LIMITED OBJECTION**

**A.    Plan Provisions Seeking To Bind All RMBS Investors and RMBS Trusts to the RMBS Settlement Render the Plan Unconfirmable**

7.    While other RMBS Trusts may be deemed to support the RMBS Settlement and its allocation methodology, as noted above, the RALI 2006-Q07 trust is different. Having taken the steps necessary to preserve the right to opt out of the RMBS Settlement, RALI 2006-Q07 (and AAM) has retained its due process right to be heard on the determination of the RALI 2006-

Q07 claim in the bankruptcy case if it so chooses.[4] AAM is fully capable of litigating in a separate proceeding the merits and amount of the RALI 2006-Q07 claim. AAM understands that the bankruptcy court may, in lieu of a full trial on the claim, allow for the estimation of certain claims to avoid delaying administration of a bankruptcy case. *In re Superior Offshore Intern., Inc.*, 591 F.3d 350 (5th Cir. 2009). Given that RALI 2006-Q07 may be the only RMBS Trust to have exercised its opt out rights, it is not at all clear that the litigation of this one trust's claims would materially delay the case. However, even if an estimation proceeding were appropriate, neither the Debtors nor any other Plan Proponent has moved for an estimation proceeding. Instead, the Plan Proponents seek to deprive RALI 2006-Q07's beneficiaries of their right to be heard on the allowed amount of their claim.

8. The RMBS Settlement seeks to impose its own estimation of the RMBS Trusts' "recognized claims", as identified on Schedule 2-R to the Disclosure Statement, without the benefit of a full hearing or contested matter. The sole information available regarding the estimation method employed by Duff is a one paragraph description in an exhibit to the Support Agreement. Consistent with section 502(c) of the Bankruptcy Code, if the Court is inclined to hear this issue as an estimation proceeding, AAM should be permitted to offer its legal and factual responses to the proposed claim allowance. As noted in prior pleadings, AAM performed prior to the Petition Date its own, in depth analysis of actual breaches of representations and warranties of the RALI 2006-QO7 loan documentation and performed its own calculation of trust claims. AAM merely seeks to preserve its right to its day in court to submit its arguments

---

[4] For the avoidance of doubt, AAM objects to the current estimated "RFC Recognized Claims" amount of RALI 2006-QO7, as set forth in Schedule 2-R to the proposed Plan, as being woefully insufficient.

and facts prior to a determination by this Court of the appropriate Allowed Amount of the RALI 2006-Q07 claim.

9.     AAM submits that the eradication of the RALI 2006-Q07 Trust's right to contest its recognized claim amount is inappropriate under any circumstances. However, these provisions of the proposed Plan are especially egregious given the prior inconsistent statements made by the Debtor in connection with the PSA Motion – "Amherst continues to have the ability to direct the RMBS Trustees to opt out of the RMBS Settlement." Debtors' Reply, Exhibit A, at 1. The disingenuous about face by the Debtors should not be tolerated and should be precluded under the doctrine of judicial estoppel.

10.    Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contrary position to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted). The doctrine applies to a party's arguments of law and fact. *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004). Judicial estoppel is particularly important in a bankruptcy context and works to prevent a litigant from "thwart[ing] a bankruptcy court order which has been 'conceived and fostered through its participation.'" *In re J.F. Hing & Son,* 815 F.2d 1314, 1318 (9th Cir. 1987) (citations omitted). In so doing, judicial estoppel protects the "integrity of the bankruptcy system" by ensuring "full and honest disclosure by the debtors." *Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996).

11.    "Judicial estoppel is invoked where (1) a party's later position is 'clearly inconsistent' with its earlier position, and (2) the party has succeeded in persuading a court to accept its earlier position." *Sewell v. The 1199 Nat'l Benefit Fund for Health & Human Servs.*, 187 Fed. Appx. 36, 40 (2d Cir. 2006). Courts are especially likely to invoke judicial estoppel

where the inconsistent position is "to the prejudice of the party" who previously "acquiesced" to the original position taken. *New Hampshire*, 532 at 749.

12. The Debtors successfully advocated for entry of the PSA Order over approximately 20 separate objections. To successfully resist AAM's arguments as to the inadequacy of the RMBS Settlement, the Debtors assured AAM that the settlement would not be binding on RALI 2006-QO7 should AAM elect to opt out of the RMBS Settlement, and RALI 2006-QO7 retained the right to opt out of the RMBS Settlement, notwithstanding the terms of the Support Agreement. Based on that commitment, AAM "acquiesced" and discontinued prosecution of the PSA Objection. Allowing Debtors to reverse course now and to prohibit RALI 2006-QO7 from challenging its recognized claim amount by opt out litigation or an estimation hearing is clearly prejudicial to AAM and all RALI 2006-Q07 certificate holders.

B. **The Disclosure Statement Fails to Provide Adequate Information as to the Payment of Allowed Fee Claims of Specific RMBS Investors**

13. Section 1125 of the Bankruptcy Code provides that before a plan proponent can solicit acceptances of a plan, the court must find that the disclosure statement contains "adequate information." Section 1125 further defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).

14. The Plan continues to set aside 5.7% of the aggregate Allowed RMBS Trust Claims (the set aside, the "***Allowed Fee Claims***") to pay counsel to a select group of institutional investors. The Allowed Fee Claims approximate to a $40 million surtax on all RMBS Investors. Plan § 4(C)(2)(a). Disclosure with respect to the Allowed Fee Claims, however, is totally inadequate.

15.     As a threshold issue, while the proposed Plan annexed to the Disclosure Statement plainly allocates $40 million to the Allowed Fee Claims, the Disclosure Statement itself does not even address their existence.  Disclosure Statement sections describing the terms of the Support Agreement and the original RMBS Settlement (which included an almost identical set aside for largely the same parties) make no reference to the Debtors' agreement to redirect tens of millions of dollars from RMBS Investors to a small group of non-estate professionals.  RMBS Investors receive no notice that the Allowed Fee Claims exist, much less the extent to which the claims stand to reduce RMBS Investor recoveries.

16.     In addition, the Disclosure Statement provides no information supporting the need for, or the propriety of, the Allowed Fee Claims.  The Plan "Allows" these claims.  However, it is unclear what section of the Bankruptcy Code permits such an allowance.  The Disclosure Statement fails to describe any contribution (much less any substantial contribution) to the formation of the Plan made by the limited group of institutional RMBS Investors and non-estate professionals who stand to benefit from the Allowed Fee Claims.  Nor, as noted in the PSA Objection, does the PSA Motion provide any evidence as to their propriety.  Because the Allowed Fee Claims apply equally to all Allowed RMBS Trust Claims (and not just the claims held by RMBS Investors that hired the attorneys in question), it only follows that the Disclosure Statement should evidence the Allowed Fee Claims beneficiaries' positive impact on other RMBS Investors' recoveries.

17.     The reason behind the Debtors' failure to include any information regarding the existence or propriety of the Allowed Claims is simple; the Allowed Fee Claims were made without consideration flowing back to the estates and are essentially an unsupportable "gift" to a few institutional investors.  Notably, the similarities between the current set aside and that

incorporated into the Original RMBS Settlement Agreements belie any argument that payment is related to the post-petition contribution of the institutional investors or their counsel. The primary difference between the current set aside and the previous one is that the current one applies against all RMBS Trusts, not only the "Covered Trusts" that accept the settlement. Because the Disclosure Statement is silent as to the Allowed Fee Claims and contains inadequate information concerning the need for, or propriety of, the Allowed Fee Claims, the Court should not approve the Disclosure Statement.[5]

### C.  The Disclosure Statement Motion Should Be Modified to Permit AAM to Vote on Behalf of RALI 2006-QO7

18.   As noted above, AAM delivered a qualifying Direction Letter to the RALI 2006-QO7 Trustee prior to the PSA Hearing and, therefore, maintains the right to vote for or against the Plan on behalf of the trust. This right has been acknowledged by the RALI 2006-QO7 Trustee and counsel to the Bank of New York Mellon Trust Company, N.A., speaking on behalf of all RMBS Trustees.

19.   The Disclosure Statement Motion mechanism for voting Allowed RMBS Trust Claims directs that "[t]he respective RMBS Trustees will vote on behalf of the RMBS Trusts via a consolidated Ballot." Disclosure Statement Motion ¶ 64. No mechanism exists for circumstances where one or more RMBS Investors obtain the right to act on behalf of an RMBS Trust, as permitted under the RMBS Trust organizational documents. Plan voting, therefore, requires modification to permit AAM to vote on RALI 2006-QO7's behalf. Specifically, the proposed form of order for the Disclosure Statement Motion should direct the Debtors to deliver

---

[5] Alternatively, should the Court find that disclosure with respect to the Allowed Fee Claims is sufficient and their payment is allowable (at any hearing on confirmation of the Plan), the Debtors should be directed to pay the fees of other RMBS Investors as well (including those of AAM).

a ballot for RALI 2006-QO7 to AAM, as well as the RALI 2006-QO7 Trustee.

WHEREFORE, AAM respectfully requests that the Disclosure Statement Motion be denied and the Court grant AAM such other and further relief as it may deem just and proper.

Dated: New York, New York
August 8, 2013

Respectfully submitted,

/s/ David M. Feldman
David M. Feldman (DF-8070)
Joshua Weisser (JW-0185)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for*
*Amherst Advisory & Management, LLC*