UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date: August 21, 2013
Hearing Time: 10:00 a.m.

------------------------------------------------------- x
                                                           :

In re                                 :                Chapter 11

                                                  :

RESIDENTIAL CAPITAL, LLC,         :               Case No. 12-12020 (MG)

                                                  :

                         Debtors.     :              Jointly Administered

                                                    :

------------------------------------------------------- x

## OBJECTION OF THE UNITED STATES TRUSTEE TO
## PLAN PROPONENTS' DISCLOSURE STATEMENT

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:    Brian S. Masumoto
        Eric Small
        Trial Attorneys
        Office of the United States Trustee
        U.S. Federal Office Building
        201 Varick Street, Suite 1006
        New York, NY 10014

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      PRELIMINARY STATEMENT ...............................................................................1

II.     STATEMENT OF FACTS .........................................................................................2
        A.      General Background ......................................................................................2
        B.      The Plan Support Agreement........................................................................3
        C.      The Plan and Disclosure Statement .............................................................4

III.    OBJECTION...............................................................................................................4
        A.      The Governing Law .......................................................................................4
        B.      The Disclosure Statement Should be Amended to Provide a Clear
                Statement of the Identities of All Parties for Which the Plan
                Provides Payment of Professional Fees and Expenses, and the
                Factual and Legal Justification for the Proposed Payment of Any
                Such Fees and Expenses Without Court Approval .................................6
                i.      Section 503(b)...................................................................................9
                ii.     The Payments Are Not Fully Disclosed and Violate
                        Section 1129(a)(4) ...................................................................13
        C.      The Disclosure Statement Should be Amended to Provide
                Adequate Information Concerning the Bases for the Proposed Partial
                Substantive Consolidation of the Debtors..............................................15
        D.      The Disclosure Statement Should be Amended to Provide Adequate
                Information Concerning the Proposed Non-Debtor Third-Party Releases,
                Exculpations, Limitations of Liability and Injunctions. ......................16
        E.      The Disclosure Statement Should be Amended to Provide Additional
                Information Concerning the Debtors' Obligation to Pay UST Fees.....................20

IV.     OBJECTIONS TO CONFIRMATION ........................................................................20

V.      CONCLUSION............................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

In re Adelphia Commc'ns Corp., 441 B.R. 6 (Bankr. S.D.N.Y. 2010) ................................. *passim*

In re Alert Holdings, Inc., 157 B.R. 753 (Bankr. S.D.N.Y. 1993)……………………………10

In re Am. Capital Equip., LLC, 688 F.3d 145 (3d Cir. 2012)…………………………………….4

In re Augie/Restivo Baking Company, Ltd., 860 F.2d 515 (2d Cir. 1988) ........................................16

In re Baldwin-United Corp., 79 B.R. 321 (Bankr. S.D. Ohio 1987) .............................................11

In re Best Prods. Co., 173 B.R. 862 (Bankr. S.D.N.Y. 1994).......................................................10

In re Big Rivers Elec. Corp., 233 B.R. 739 (W.D. Ky. 1998). .....................................................11

In re Celotex Corp., 227 F.3d 1336 (11th Cir. 2000)……………………………………………11

Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94 (3d Cir. 1988) ...............5

In re Charles Stevens & Co., 105 B.R. 866 (Bankr. N.D. Ill. 1989)……………………………14

In re Child World, Inc., 185 B.R. 14 (Bankr. S.D.N.Y. 1995)……………………………………15

In re Copy Crafters Quickprint, Inc., 92 B.R. 973 (Bankr. N.D.N.Y. 1988).................................5

In re Crowthers McCall Pattern, Inc., 120 B.R. 279 (Bankr. S.D.N.Y. 1990) ...............................5

In re DBSD N. Am., Inc., 419 B.R. 179 (Bankr. S.D.N.Y. 2009).......................................................18

In re Dreier LLP, 429 B.R. 112 (Bankr. S.D.N.Y. 2010)…………………………………………19

Deutsche Bank AG v. Metromedia Fiber Network, Inc.
   (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005)……………17

In re Duratech Indus., 241 B.R. 291 (Bankr. E.D.N.Y. 1999)...........................................................6

In re Duratech Indus., 241 B.R. 283 (E.D.N.Y. 1999) ....................................................................6

In re Ferretti, 128 B.R. 16 (Bankr. D.N.H. 1991) ..........................................................................6

In re Fibrex, 270 B.R. 714 (Bankr. S.D. Ind. 2001)…………………………………………11, 12

In re FirstPlus Fin., Inc., 254 B.R. 888 (Bankr. N.D. Tex. 2000)…………………………...11, 12

In re General Homes Corp., 143 B.R. 99 (Bankr. S.D. Tex. 1992)……………………………...10

In re Granite Partners, L.P., 213 B.R. 440 (Bankr. S.D.N.Y. 1997)......................................10, 11

In re GSC, Inc., 455 B.R. 132 (Bankr. S.D.N.Y. 2011)…………………………………………….4

In re Hooker Invs., Inc., 188 B.R. 117 (S.D.N.Y. 1995) .........................................................10, 11

In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985)…………………………10

In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) .......................................................17, 19

In re Johns-Manville Corp., 557 U.S. 137 (2009) ..........................................................................17

In re Johns-Manville Corp., 600 F.3d 135 (2d Cir. 2010) ......................................................17, 19

In re Journal Register Co., 407 B.R. 520 (Bankr. S.D.N.Y. 2009).................................................13

In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) ...........................................................................18

In re Keene Corp., 205 B.R. 690 (Bankr. S.D.N.Y. 1997)…………………………………………14

Kunica v. St. Jean Fin., Inc., 233 B.R. 46 (S.D.N.Y. 1999) ............................................................5

In re Lehman Brothers Holdings Inc., 487 B.R. 181 (Bankr. S.D.N.Y. 2013)............................14

McGuirl v. White, 86 F.3d 1232 (D.C. Cir. 1996)……………………………………………………15

In re McLean Indus., Inc., 87 B.R. 830 (Bankr. S.D.N.Y. 1987) .....................................................5

In re Metcalfe & Mansfield Alternative Invs., 421 B.R. 685 (Bankr. S.D.N.Y. 2010)................19

Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),
   25 F.3d 1132 (2d Cir. 1994)........................................................................................................5

In re Motors Liquidation Co., 477 B.R. 198 (Bankr. S.D.N.Y. 2011)..........................................18

In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) ...............................................................18

In re Quigley Co., 377 B.R. 110 (Bankr. S.D.N.Y. 2007)………………………………………...4
In re Resource Technology Corp., 356 B.R. 435 (Bankr N.D. Ill. 2006)………………………14
In re Revere Copper and Brass, Inc., 60 B.R. 892 (Bankr. S.D.N.Y. 1986)………………………10
SEC v. Drexel Burnham Lambert Group, Inc.
  (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285 (2d Cir. 1992)....................17
In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825
  (Bankr. S.D.N.Y. Aug. 16, 2006) .................................................................................18
In re Summit Metals, Inc., 379 B.R. 40 (Bankr. D. Del. 2007)…………………………………. 9
In re TCI 2 Holdings, LLC, et. al., 428 B.R. 117 (Bankr. D. N.J. 2010)…………………… 10, 13
In re Temple Retirement Community, Inc., 97 B.R. 333 (Bankr. W.D. Tex. 1989)……………15
In re Washington Mutual, Inc., 442 B.R. 314 (Bankr. D. Del. 2011).....................................13, 20
In re Wind N'Wave, 509 F.3d 938 (9th Cir. 2007)…………………………………………………11
In re XO Commc'ns, Inc., 330 B.R. 394 (Bankr. S.D.N.Y. 2005) .............................................18

**Statutes**

11 U.S.C. § 503(b) ........................................................................................................ *passim*
11 U.S.C. § 1125............................................................................................................ *passim*
11 U.S.C. § 1129(a) ....................................................................................................... *passim*
28 U.S.C. § 1930.....................................................................................................................20
31 U.S.C. § 3717.....................................................................................................................20

**Other Authorities**

4 Collier on Bankruptcy ¶ 503.11[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)………12
H.R. Rep. No. 103-835 at 39 (1994); *reprinted in* 1994 U.S.C.C.A.N. 3340, 3348 ....................12

TO:     THE HONORABLE MARTIN GLENN,
        UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"),

respectfully submits this objection (the "Objection") to the Plan Proponents' Motion For an

Order (i) Approving Disclosure Statement; (ii) Establishing Procedures for Solicitation and

Tabulation of Votes to Accept or Reject the Plan Proponents' Joint Chapter 11 Plan; (iii)

Approving the Form of Ballots; (iv) Scheduling a Hearing on Confirmation of the Plan; (v)

Approving Procedures for Notice of the Confirmation Hearing and for Filing Objections to

Confirmation of the Plan; and (vi) Granting Related Relief  (the "Motion").  ECF Doc. No. 4152.

In support of the Objection, the United States Trustee respectfully states as follows:

## I.  PRELIMINARY STATEMENT

The Disclosure Statement fails to meet the requirements of Section 1125 of the

Bankruptcy Code. The underlying Plan to the Disclosure Statement has two significant legal

flaws.  First, it describes a Plan that contains provisions that do not comply with Section

1129(a)(1).   Specifically, the Plan requires impermissible payments to be made for the

reimbursement of legal expenses of certain creditors, which payments are permitted only if the

requirements of Section 503(b) have been met.  Unless these provisions are removed from the

Plan, the Plan is not confirmable and neither the Plan nor the Disclosure Statement may be

approved.

Second, even if the Court declines to find that the Plan as proposed cannot be confirmed,

the United States Trustee objects to the approval of the Disclosure Statement because it does not

provide adequate information concerning the Plan.  As set forth below, the Debtors should be

required to provide further disclosure concerning:

1

- the identity of all parties for which the Plan provides for reimbursement of fees and expenses and the legal and factual bases for those not seeking prior Court approval for payment;

- the legal and factual bases for the proposed partial substantive consolidation of the Debtors;

- the proposed non-debtor third-party releases, exculpation provisions, limitations of liability and injunction; and

- each Debtors' obligation to pay UST fees and to separately report its disbursements.

Absent amendment of the Disclosure Statement and the Plan as set forth herein, the Disclosure Statement fails to meet the requirements of Section 1125 of the Bankruptcy Code and the Motion should be denied.

## II. STATEMENT OF FACTS

### A.    General Background

1.    On May 14, 2012, Residential Capital, LLC ("ResCap"), GMAC Mortgage LLC ("GMAC Mortgage"), and certain of their direct and indirect subsidiaries (collectively, the "Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code.  ECF Doc. No. 1.

2.    The Debtors are wholly owned, indirect domestic subsidiaries of Ally Financial, Inc. ("AFI").  Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleading, ECF Doc. No. 6, ¶ 46.

3.    On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") in these cases.  ECF Doc. No. 102.

4.    The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2

5.      On July 3, 2012, the Court entered an order approving the United States Trustee's

appointment of Arthur J. Gonzalez, Esq. as the chapter 11 examiner (the "Examiner") in these

cases.  ECF Doc. No. 674.

6.      The Examiner filed the Examiner's Report on May 13, 2013.  ECF Doc No. 3697.

7.      By Order entered on December 26, 2012, the Court appointed the Honorable

James M. Peck as a mediator ("Mediator") to mediate issues related to the formulation of a plan

of reorganization in the cases.[1] ECF Doc No. 2519

**B.      The Plan Support Agreement**

8.      On May 23, 2013, the Debtors filed a motion to approve a plan support agreement

("PSA") between (a) the Debtors, (b) AFI and its non-debtor affiliates ("Ally"),

(c) the Creditors' Committee and (d) certain Consenting Claimants (the "Consenting

Claimants").  The PSA included a Term Sheet, as supplemented, describing the terms of a

proposed plan.  ECF Doc. No. 3814.

9.      The Court approved the PSA by order entered on June 26, 2013.  ECF Doc No.

4098.  The order provided that "nothing herein shall prejudice or waive any party in interest's

rights to fully prosecute an objection, or be deemed to constitute any finding of fact or

conclusion of law, with respect to: (i) any proposed disclosure statement, (ii) any proposed

chapter 11 plan . . . ."  Id. at ¶ 5.

10.     In its Memorandum Opinion dated June 27, 2013 approving the PSA ("Opinion"),

the Court stated that "[its] findings in the context of the approval of the [PSA] do not preclude a

challenge to a plan that includes the proposed settlements embodied in the [PSA] and term

---

[1] By orders entered on March 5, 2013 and June 5, 2013, the Court extended the Mediator's term up to and including
May 31, 2013 and October 31, 2013 respectively.  ECF Doc. Nos. 3101 and 3877.

3

sheets.  Moreover, the findings of fact made in connection with approval of the PSA do not

constitute a release of any claims." Opinion, p. 45; ECF Doc. No. 4102.

### C.      The Plan and Disclosure Statement

11.      On July 4, 2013, the Debtors and the Creditors' Committee (jointly "the Plan

Proponents") filed a Joint Chapter 11 Plan ("Plan") and related Disclosure Statement

("Disclosure Statement"), together with the Motion.  ECF Doc Nos. 4152, 4153, and 4157.

## III.  OBJECTION

### A.      The Governing Law

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain

"adequate information" describing a confirmable plan.  11 U.S.C. § 1125; see also In re Quigley

Co., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).  The Court may consider the confirmability of a

plan in the context of a hearing of the approval of the disclosure statement.  See In re Am.

Capital Equip., LLC, 688 F.3d 145, 156 (3d Cir. 2012) (holding that a bankruptcy court may

address the issue of plan confirmation where it is obvious at the disclosure statement stage that a

later confirmation hearing would be futile because the plan described by the disclosure statement

is patently non-confirmable).  If the plan is patently non-confirmable on its face, the application

to approve the disclosure statement must be denied.  See In re GSC, Inc., 455 B.R. 132, 157,

n.27 (Bankr. S.D.N.Y. 2011) (stating that an non-confirmable plan is grounds for rejection of the

disclosure statement; a disclosure statement that describes a plan patently non-confirmable on its

face should not be approved) (citing Quigley, 377 B.R. at 115).

The Bankruptcy Code defines "adequate information" as:

Information of a kind, and in sufficient detail, as far as is reasonably practicable in
light of the nature and history of the debtor and the condition of the debtor's
books and records, including a discussion of the potential material Federal tax
consequences of the plan to the debtor, any successor to the debtor, and a

4

hypothetical investor typical of the holders of claims or interests in the case, that
would enable such a hypothetical reasonable investor of the relevant class to make
an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re

Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994); In re Adelphia Commc'ns Corp.,

352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); Kunica v. St. Jean Fin., Inc., 233 B.R. 46, 54

(S.D.N.Y. 1999).

        To be approved, a disclosure statement must include sufficient information to apprise

creditors of the risks and financial consequences of the proposed plan.  See In re McLean Indus.,

Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to

the ramifications of any proposed plan will have to be provided to, and digested by, the creditors

and other parties in interest in order to arrive at an informed decision concerning the acceptance

or rejection of a proposed plan").  Although the adequacy of the disclosure is determined on a

case-by-case basis, the disclosure must "contain simple and clear language delineating the

consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code]

alternatives . . . ."  In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y.

1988).

        Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less.

See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  The

"adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to

voting creditors.  Adelphia, 352 B.R. at 596 (citing Century Glove, Inc. v. First American Bank

of New York, 860 F.2d 94, 100 (3d Cir. 1988)).

        Once the "adequate disclosure" floor is satisfied, additional information can go into a

disclosure statement too, at least so long as the additional information is accurate and its

inclusion is not misleading.  <u>Adelphia</u>, 352 B.R. at 596.  The purpose of the disclosure statement

is to give creditors enough information so that they can make an informed choice of whether to

approve or reject the debtor's plan.  <u>In re Duratech Indus.</u>, 241 B.R. 291, 298 (Bankr. E.D.N.Y.

1999), <u>aff'd</u>, 241 B.R. 283 (E.D.N.Y. 1999).  The disclosure statement must inform the average

creditor what it is going to get and when, and what contingencies there are that might intervene.

<u>In re Ferretti</u>, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).  For the reasons set forth below, the

Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of

these cases.

A review of the Disclosure Statement reveals that it should be amended to provide

additional information to include "adequate information" of a nature sufficient to meet the

requirements of Section 1125 of the Bankruptcy Code.

**B.      The Disclosure Statement Should be Amended to Provide a Clear Statement of the
        Identities of All Parties for Which the Plan Provides Payment of Professional
        Fees and Expenses, and the Factual and Legal Justification for the Proposed
        Payment of Any Such Fees and Expenses Without Court Approval**

Provisions for the payment of fees and expenses of the Debtors and creditors and their

various professionals are interspersed throughout the Plan and Disclosure Statement.  These

include, but are not limited to, the following:

(i) the professional fees of the Debtors' and Creditors' Committee's attorneys, identified

as payable only after application and award by the Court.  Plan, at 26, ¶ 195; 34, § II(B);

Disclosure Statement at 97-98, § V(A)(2).

(ii) Wilmington Trust, NA as Senior Unsecured Notes Indenture Trustee ("Wilmington

Trust") and its professionals: Seward & Kissel ("SK"); Loeb & Loeb ("Loeb"); Cleary Gottlieb

Steen & Hamilton, LLP ("Cleary Gottlieb"); and Alvarez & Marsal, NA, LLC ("A&M")

(collectively, the "SUN Professionals") are described as receiving payment with no reference to Court approval.  Plan at 31, ¶ 245; Disclosure Statement at 108-109; § V(E).

(iii) the RMBS Trustees are described as receiving attorney fees and costs pursuant to the Court's order authorizing the Debtors' to pay securitization trustee fees and expenses and to the order approving the sale of the Debtors' assets to Ocwen Loan Servicing, LLC.  Plan at 63; § IV(C)(5); see also ECF Doc Nos. 774 and 2246.  It is not clear from the Disclosure Statement whether there are other professional fees and expenses of the RMBS Trustees not included under the terms of the two referenced Court orders proposed to be paid under the Plan.  For example, the Disclosure Statement indicates that the procedures in those orders will also apply to HSBC. Id.

In addition, the Supplemental Term Sheet annexed to the PSA Motion proposes that the "Resolution of the RMBS Trust Claims (both R+W Claims and RMBS Cure Claims[)]" will include the payment of "attorneys fees" and "the reasonable pre-and post-petition fees and expenses of the RMBS Trustees."  See PSA Motion, ECF Doc 3814, Supplemental Term Sheet at pp. 4–6, 10.  The Disclosure Statement should be clarified to clearly identify all professional fees proposed to be paid to the RMBS Trustees.  If the fees are limited to the payments under the two specified Court orders, the Disclosure Statement should state that fact.

(iv)  Allowed Fee Claim of the Steering Committee Consenting Claimants, represented by Gibbs & Bruns LLP and Ropes & Gray LLP; and the Talcott Franklin Consenting Claimants, represented by Talcott Franklin, P.C., Carter, Ledyard & Melburn LLP and Miller Johnson. (collectively the "Allowed Fee Claim").  Plan at 6, ¶ 9; p. 31, ¶ 251, 253; p. 63, § IV(C)(6).  The stipulated amount of the Allowed Fee Claim is 5.7% of the Allowed RMBS Trust Claims.  Id. It is described in the Disclosure Statement as reducing the amount of cash ultimately distributed to

the RMBS Claims Trust, and of having "no impact on any other party entitled to a distribution under this Plan." Id.

(v)  the Restructuring Fee of Moelis & Company, LLC and the In-Court Transaction Fee of Centerview Partners, LLP, payable in full on the Effective Date pursuant to the terms of their respective engagement letters, with a fee application to be filed within seventy-five days after the Effective Date.  Plan at 35-36; II(B)(2); see also ECF Doc Nos. 920 and 1315.

The above listed payment terms represent examples of various provisions in the Plan that provide for the proposed payment of professional fees and expenses under the Plan.  The Disclosure Statement is replete with impermissible provisions authorizing the payment of fees and expenses to professionals without Court approval and compliance with the Bankruptcy Code.  The Disclosure Statement should be amended to include one complete and comprehensive list.  To be comprehensive, the Court and parties in interest should not have to search for they proposed payments.  The Disclosure Statement should clearly identify the entities and individuals, delineate the amounts proposed to be paid, whether or not prior Court approval after notice and hearing will be sought, and the applicable facts and legal standards supporting the proposed payments.  Whether the payments have already been made, should also be clearly disclosed.  The drafters of this Disclosure Statement have interspersed the document with provisions relating to payments made or to be made to entities, without taking the time to provide sufficient disclosure relating to such payments.  The proponents of this Disclosure Statement have not met there burden under Section 1125 of the Bankruptcy Code. Under the circumstances, the Disclosure Statement should, therefore, not be approved.

Moreover, as set forth below, the Disclosure Statement should be amended to provide adequate information concerning the legal justification upon which the Plan Proponents base the ability to make these payments.

(i)    *Section 503(b)*

Section 503(b)(3) of the Bankruptcy Code authorizes the Court to allow, as an administrative expense, "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4)" incurred by (i) an indenture trustee in making a substantial contribution in a Chapter 11 case, see 11 U.S.C. § 503(b)(3)(D), and (ii) a member of a creditors' committee, if such expenses are incurred in the performance of the duties of such committee. 11 U.S.C. § 503(b)(F); see also In re Summit Metals, Inc., 379 B.R. 40, 68 (Bankr. D. Del. 2007) (noting that expenses that individual committee members may be allowed include expenses for travel, lodging and meals while attending committee meetings or court hearings).

As stated above, the creditor may seek the payment of actual and necessary expenses by proving that it made a "substantial contribution" to the case, 11 U.S.C. § 503(b)(3)(D), and, if it is a member of the Creditors' Committee, the creditor or indenture trustee may seek its actual and necessary expenses incurred in the performance of the Committee's duties. 11 U.S.C. § 503(b)(3)(F). In addition, an "attorney" or "accountant" employed by the creditor may seek "reasonable compensation for professional services rendered" if the creditor has an allowable expense under Section 503(b)(3)(D) (i.e., if there has been a showing that the creditor substantially contributed to the case). 11 U.S.C. § 503(b)(4). The allowance of any administrative claims, however, should only be granted "after notice and a hearing." 11 U.S.C. § 503(b).

Accordingly, a creditor that seeks repayment for its counsel's fees and expenses as an administrative expense under Section 503(b) must (i) file a request for such administrative expense and (ii) show that it has provided a "substantial contribution" to the case-at-hand.  11 U.S.C. § 503(b); see also In re Granite Partners, L.P., 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997); In re TCI 2 Holdings, LLC, et. al., 428 B.R. 117, 145-47 (Bankr. D. N.J. 2010) (holding that while Section 1129(a)(4) does not specifically refer to Section 503(b), Section 1129(a)(1) requires compliance with the applicable provisions of title 11, and plan provision allowing payment of fees to the Ad Hoc Committee, the Backstop Parties, and the Indenture Trustee without prior court approval under substantial contribution standards plainly violated Section 503(b)); In re General Homes Corp., 143 B.R. 99 (Bankr. S.D. Tex. 1992) (holding that in order to be entitled to any payment from the bankruptcy estate, an indenture trustee must make a prima facie showing that it has made a substantial contribution); In re Revere Copper and Brass, Inc., 60 B.R. 892 (Bankr. S.D.N.Y. 1986) (finding that services rendered by the indenture trustee and its attorneys were not compensable by the estates under Section 503(b)(3), (4) or (5) because they did not make a substantial contribution to the case).

Compensation under "substantial contribution" grounds "is limited to those extraordinary actions that lead to an 'actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders.'" In re Randall's Island Family Golf Ctrs., Inc., 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) (quoting In re Jensen-Farley Pictures, Inc., 47 B.R. 557, 569 (Bankr. D. Utah 1985)); accord In re Best Prods. Co., Inc., 173 B.R. 862, 866 (Bankr. S.D.N.Y. 1994); In re Alert Holdings, Inc., 157 B.R. 753, 757 (Bankr. S.D.N.Y. 1993). Extensive participation in a case alone is insufficient to justify compensation by the estate under 11 U.S.C. § 503(b).  Granite Partners, 213 B.R. at 445); In re Hooker Investments, Inc., 188 B.R.

117, 120 (Bankr. S.D.N.Y. 1995); In re Big Rivers Elec. Corp., 233 B.R. 739, 749-50 (W.D. Ky.

1998).  The "same documentation and substantiation requirements apply to substantial

contribution claims as apply to requests for compensation under section 330." Granite Partners,

213 B.R. at 445; In re Baldwin-United Corp., 79 B.R. 321, 336 (Bankr. S.D. Ohio 1987)

("requirements for documenting how time was spent are no less applicable to fee applications

and time sheets being judged under § 503(b) than they are for applications under § 330.").

To the extent that "substantial contribution" is proven, then the standards that are set

forth in Section 330 of the Bankruptcy Code apply in determining the extent the fees and

expenses of a professional are reimbursable under Section 503(b)(4).  See e.g., In re Wind

N'Wave, 509 F.3d 938, 944 (9th Cir. 2007); In re Celotex Corp., 227 F.3d 1336, 1341 (11th Cir.

2000).

In determining whether the "substantial contribution" standard has been met after notice

and a hearing the Court would necessarily consider, as it is precluded from doing so under the

Plan, why all of the Debtors' creditors should bear the expenses of Wilmington Trust rather than

only the counterparties to the Bond Documents.[2]

Wilmington Trust is a member of the Creditors' Committee.  While an individual member

of the Creditors' Committee is entitled to an administrative expense claim for expenses incurred

in the performance of committee duties (i.e., expenses for travel, lodging and meals), the

reimbursement of, or an administrative expense claim for, professional fees is not allowed under

the Bankruptcy Code.  See 11 U.S.C. § 503(b)(4); see also Summit, 379 B.R. at 68; In re Fibrex,

270 B.R. 714, 718 (Bankr. S.D. Ind. 2001); In re FirstPlus Fin., Inc., 254 B.R. 888, 895 (Bankr.

---

[2] While the Allowed Fee Claim of the Steering Committee Consenting Claimants and the Talcott Franklin
Consenting Claimants is described as having no impact upon creditors other than the beneficiaries of the RMBS
Trust, the payment terms similarly precludes an evaluation of the statement by the Court in connection with a
Section 503(b) application and hearing.

N.D. Tex. 2000); see also 4 Collier on Bankruptcy ¶ 503.11[6] (Alan N. Resnick & Henry J.

Sommer eds., 16th ed.).  Therefore, by providing for the payment of at least one member of the

Creditors' Committee, the Plan violates Sections 503(b)(3)(F) and (b)(4) of the Bankruptcy

Code.

The legislative history of Section 503(b) and applicable case law, while limited, provides

insight regarding Congress's intent regarding the administrative claim status for professional fees

incurred by committee members as a result of serving on an official committee of unsecured

creditors.  By way of background, Paragraph (F) was added to Section 503(b)(3) by the

Bankruptcy Reform Act of 1994.  While this paragraph was enacted to address the split among

courts as to whether a member of an official committee is entitled to recover actual expenses as

an administrative priority claim and to allow for such expenses, the legislation does not define

the term "expense."  See Fibrex, 270 B.R. at 716.  The legislative history is instructive as to what

should be included as a reimbursable expense, and makes clear that professional fees and

expenses are not intended to be reimbursable under this section:

> The current Bankruptcy Code is silent regarding whether members of official
> committees appointed in Chapter 11 cases are entitled to reimbursement of out-of-
> pocket expenses (such as travel and lodging), and the courts have split on the
> question of allowing reimbursement.  This section of the bill amends section
> 503(b) of the Bankruptcy Code to specifically permit members of the Chapter
> 11 committees to receive court-approved reimbursement of their actual and
> necessary expenses. The new provision would not allow the payment of
> compensation for services rendered by or to committee members.

H.R. Rep. No. 103-835 at 39, 103d Cong., 2nd Sess. (1994), U.S. Code Cong. & Admin. News

1994, pp. 3340, 3348 (footnote omitted) (emphasis added); see also FirstPlus Fin., 254 B.R. at

893-94.

Any doubt that may have remained following the 1994 enactment of Section 503(b)(3)(F)

was clarified by the 2005 amendment to Section 503(b)(4) enacted through the Bankruptcy

Abuse Prevention and Consumer Protection Act.  The 2005 amendment to Section 503(b)(4)

expressly excluded compensation of professionals for an entity whose expenses are reimbursable

under subsection 503(b)(3)(F).  The Disclosure Statement contains a description of the Plan

Proponents' perception of the benefit conferred upon the estate by Wilmington Trust.  Disclosure

Statement at 108-09, § V(E).  That should be part of a formal application under Section 503(b).

> (ii)     *The Payments Are Not Fully Disclosed and Violate Section 1129(a)(4)*

As stated above, the Disclosure Statement provides incomplete information about the

amount of fees and expenses at issue.  The Disclosure Statement contains a blank space for

inclusion of total fees for Wilmington Trust and the SUN Professionals, with no specification of

amounts sought by each professional.  Disclosure Statement, p. 109.  While the Disclosure

Statement provides for the Allowed Fee Claim to be capped at 5.7% of the Allowed RMBS Trust

Claims, it provides no breakout of the fees sought by each professional.

Nor does the Disclosure Statement address the fact that these provisions do not comply

with, among others, Section 1129(a)(4) of the Bankruptcy Code, which requires that any

payments made for services or for costs and expenses of Chapter 11 cases (i) be disclosed and

(ii) be approved by the Court.  11 U.S.C. § 1129(a)(4); see e.g., In re Washington Mutual, Inc.,

No. 08-12229 (MFW), 2011 WL 57111, at *43 (Bankr. D. Del. Jan. 7, 2011) (denying

confirmation where proposed plan provided for payment of fees to indenture trustees, settling

noteholders and liquidating trustee without notice and approval by the bankruptcy court); TCI 2

Holdings, at 145-147; In re Journal Register Co., 407 B.R. 520, 536 (Bankr. S.D.N.Y. 2009)

(holding that the requirements under Section 1129(a)(4) are two-fold:  (i) first there must be

disclosure of the fees and (ii) the court must approve the reasonableness of the payments).

Further, the Disclosure Statement does not provide any binding authority that supports the proposed payments or the manner in which they are proposed to be made in these cases. Cf. In re Adelphia Commc'ns Corp., 441 B.R. 6 (Bankr. S.D.N.Y. 2010) (the reasonable professional fees of unsecured creditors that were incorporated as part of a global settlement embodied in confirmed Chapter 11 plan could be paid absent a showing of substantial contribution); In re Lehman Bros. Holdings Inc., 487 B.R. 181 (Bankr. S.D.N.Y. 2013), appeal docketed, 13-cv-02211-RJS (S.D.N.Y. April 3, 2013) (while members of creditors' committee might have been unable to obtain reimbursement under Section 503(b) for legal fees incurred in connection with their service on committee as administrative expense, this did not affect their ability, as part of plan confirmation process, to bargain for inclusion of provision in plan).

Here, instead of ensuring adequate disclosure, the Proponents have usurped the Court's authority to review and approve the fee requests under the appropriate statutory standards. See e.g. In re Resource Technology Corp., 356 B.R. 435, 450 (Bankr N.D. Ill. 2006) (quoting In re Charles Stevens & Co., 105 B.R. 866, 870 (Bankr. N.D. Ill. 1989) (denying a settlement that awarded the trustee's professionals administrative expense claims for their services and did not require them to file fee applications and noting that "[a]lthough private compensation agreements are permissible under the Code, the court retains the responsibility of ensuring that the compensation awarded to professional persons falls within the parameters prescribed by section 330."); see also In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (professionals cannot settle fee requests among themselves because it undermines the duties of the judicial and executive branches to review bankruptcy fees).

The Court has an independent burden to review fee applications and serves a vitally important gate-keeping role in (i) enforcing the Bankruptcy Code's requirements that only

reasonable fees be approved and paid and (ii) maintaining public confidence in the bankruptcy system itself.  In re Temple Retirement Community, Inc., 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989).  "[T]he judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."  In re Child World, Inc., 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995).  Coupled with the Court's judicial powers, the United States Trustee has the statutory duty to review and comment on requests for compensation.  See 28 U.S.C. § 586(a)(3)(A) and (B) (granting the United States Trustee the statutory duty to review disclosure statements and plans and file comments or objections with the Court); see also 11 U.S.C. § 307 (granting the United States Trustee the authority to "raise and . . . appear and be heard on any issue in any case or proceeding under this title . . .").  Lastly, other parties in interest have the right under the Bankruptcy Code to review and object to fee applications.  McGuirl v. White, 86 F.3d 1232, 1246 (D.C. Cir. 1996) ("many parties including the United States Trustee and creditors, as well as the bankruptcy court itself, have the right to object to fee applications.").

In short, the Disclosure Statement does not explain why there is a likelihood of success regarding confirmation of the proposed Plan despite the fact that in contravention of Sections 1129(a)(1), (2) and (4) of the Bankruptcy Code, the Plan circumvents the requirements of Section 503(b).

For all these reasons, the Disclosure Statement should be amended to provide additional information.

**C.      The Disclosure Statement Should be Amended to Provide Adequate
         Information Concerning the Bases for the Proposed Partial Substantive
         Consolidation of the Debtors**

The Disclosure Statement states that the cost of substantive consolidation litigation was prohibitive, and that the Plan does not substantively consolidate any of the Debtors.  The

Disclosure Statement further states that the Plan provides for partial consolidation into three (3) Debtor Groups solely for purposes of describing their treatment under the Plan, confirmation of the Plan, and making distributions under the Plan. These three groups are ResCap Debtors, GMACM Debtors and RFC Debtors.  Disclosure Statement at 37, § II(J).

"Substantive consolidation usually results in, *inter alia,* pooling the assets of, and claims against, the . . . entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the…companies for purposes of voting on reorganization plans."  See In re Augie/Restivo Baking Company, Ltd., 860 F.2d 515 (2d Cir. 1988) (setting forth a multi-pronged test for determining whether the proposed consolidation meets its sole purpose - to ensure the equitable treatment of all creditors).  The Disclosure Statement should be amended to contain information demonstrating that the proposed partial substantive consolidation for Plan purposes meets those standards.

**D.    The Disclosure Statement Should be Amended to Provide Adequate Information Concerning the Proposed Non-Debtor Third-Party Releases, Exculpations, Limitations of Liability and Injunctions**

The Plan provides for broad third party releases of liability.[3]  The Disclosure Statement explains that Ally Bank's payment of $2.1 billion is conditioned upon the releases of liability described in the Plan and the existence of a negotiated settlement.  Plan at p. 22, § II(2).  To be sure, these are large and complex cases, but the payment by a potential defendant and a global settlement of claims is hardly unique.

---

[3] The Third Party Release applies to Ally Released Parties, who are defined under the Plan as Ally, and each of Ally's and the Debtors' respective members, shareholders, partners, non-Debtor affiliates, and Representatives, including Cap Re of Vermont, LLC and its current and former members, officers, and directors and each of Ally's successors and assigns.  The Ally Released Parties release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors, and Representatives. Plan at 7,¶ 17; p.27, ¶ 209; pp. 95-96, § IX(D) and (E).

The Disclosure Statement should contain more information on how the broad exculpation and release provisions in the Plan, applying to multiple parties, including Ally Bank, is consistent with the Second Circuit's decisions in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).

In Metromedia, the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." Metromedia, 416 F. 3d at 141. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, and [and] . . .
>
> Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

Id. at 142.

The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan." Id. at 141 (quoting SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 292 (2d Cir. 1992)). The appellate court cautioned, however, that a non-debtor third-party release is not considered to be adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out. Metromedia at 143. Rather, "[a] non-debtor third-party

release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan."  Id.

Subsequent cases further clarify the Metromedia requirements.  For example, in In re DBSD N. Am., Inc., the Court stated:

> As the Second Circuit's decision in Metromedia and my earlier decision in Adelphia provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter.  They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims.

In re DBSD N. Am., Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis in original) (footnotes omitted); In re Motors Liquidation Co., 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed.  But where those circumstances haven't been shown, third-party releases can't be found to be appropriate.").[4]

---

[4] Other examples include: (i) Adelphia, 368 B.R. at 268-69 (holding that three categories of non-debtor third-party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements, (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); (ii) In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) (framing inquiry as  "whether a significant non-debtor financial contribution plus other unusual factors render a situation so "unique" that the non-debtor third-party releases are appropriate.").  Id. at 55; (iii) In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the equity committee had raised, but then abandoned, an objection to the validity of the non-debtor third-party releases, and the court found that the releases in that case were acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their willingness to grant the releases); (iii) In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825, at *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (plan's non-debtor third-party releases and injunctions were critical components of the settlement that played a "vital part in the plan" and "were necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); and (iv) In re XO Commc'ns, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtor third-party releases were permissible where the non-debtors provided significant consideration, the non-debtors were integral to the plan, and the non-debtors' interests aligned with those of the debtors with regard to the claims).

Before a court considers whether the proponent of a plan has demonstrated the "truly unusual circumstances" mandated by Metromedia, it must first determine whether it has subject matter jurisdiction to approve the releases or injunctions provided for by and against non-debtor third-parties. See Manville II; accord In re Dreier LLP, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R.685, 695 (Bankr. S.D.N.Y. 2010). In Manville II, the Second Circuit held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate." Manville II, 517 F.3d at 66; see also Dreier, 429 BR. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor third-party releases must be limited to claims that are derivative of the debtors).

The Plan contains provisions for the release and exculpation of non-debtor third-parties from various claims and liabilities, and an injunction against claims by and against non-debtor third-parties and other related relief. Plan at 94, § IX; Disclosure Statement at 123-126, § V(W).

Because this release seeks to include the release of claims by non-debtor third- parties against non-debtor third-parties, the Second Circuit's rulings in Manville II and Metromedia govern the Court's determination as to whether this release may be approved. It is now settled in the Second Circuit that the Court does not have subject matter jurisdiction to approve this provision because it seeks to release "direct" (non- derivative) claims that non-debtor third-parties may have against other non-debtor third parties. See Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 600 F.3d 135, 153 (2d Cir. 2010) (clarifying on remand that the bankruptcy court does not have jurisdiction to enjoin claims against non-debtor insurers that are not derivative of the debtor).

The Plan Proponents have also failed to explain why the exculpation provision, which extends to third-parties who are not estate fiduciaries who served during the chapter 11 cases (such as the estate professionals and the Committee and its members) is appropriate.[5] See Washington Mut., 442 B.R. at 350-51 (limiting exculpation clause to estate fiduciaries). Accordingly, the Disclosure Statement should be amended to provide this information.

**E.      The Disclosure Statement Should be Amended to Provide Additional Information Concerning the Debtors' Obligation to Pay UST Fees**

The Disclosure Statement and the Plan reference the Debtors' obligation to pay statutory fees and charges to the United States Trustee ("UST Fees") pursuant to Section 1930 of Title 28 with interest pursuant to Section 3717 of title 31 United States Code, if applicable until the case is converted, dismissed or closed by Court order.  Disclosure Statement at 130, § V(AA)(3); Plan at 105, § XIII(C).  Both the Plan and the Disclosure Statement should be supplemented by clearly stating that each Debtor has the obligation to pay UST Fees, that each of the Debtors should separately report its disbursements when required, and should include an estimate of what these fees will be for each Debtor on the Effective Date.  Accordingly, the Disclosure Statement and Plan should be amended to provide this information.

## IV.  OBJECTIONS TO CONFIRMATION

If applicable, the objections raised herein are, by way of this Objection, being asserted as objections to confirmation of the Plan.

---

[5] "Exculpated Party" as defined in the Plan means each of the following in its capacity as such: (a) the Debtors; (b) the Consenting Claimants; (c) Ally, (d) the Creditors' Committee and the members thereof; and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity's successors and assigns, members, affiliates, subsidiaries, officers, directors, partners, principals, employees, and Representatives. Plan at 14, ¶ 84.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) sustain

the Objection, (ii) direct the Plan Proponents to amend the Disclosure Statement and Plan

to cure the informational inadequacies and to address the issues identified in the Objection and

(iii) grant such other relief as is just.

Dated: New York, New York
      August 8, 2013               Respectfully submitted,

                                 TRACY HOPE DAVIS
                                 UNITED STATES TRUSTEE

By     */s/ Brian S. Masumoto*
                                 Brian S. Masumoto
                                 Eric Small
                                 Trial Attorneys
                                 Office of the United States Trustee
                                 201 Varick Street, Suite 1006
                                 New York, NY   10014
                                 Tel. No. (212) 510-0500