MCKOOL SMITH, P.C.
Peter S. Goodman
Michael R. Carney
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: 212-402-9400
Facsimile: 212-402-9444

*Counsel for Federal Home Loan Mortgage Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION OF FEDERAL HOME LOAN MORTGAGE CORPORATION TO FINANCIAL GUARANTY INSURANCE COMPANY'S MOTION *IN LIMINE***

Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the motion *in limine* of Financial Guaranty Insurance Company ("FGIC") [ECF No. 4550] (the "Motion").[1] In support of this Objection, Freddie Mac respectfully states as follows:

**OVERVIEW**

1. Scott R. Gibson, Freddie Mac's expert, in his declaration (the "Gibson Declaration") determined that the recovery to holders of FGIC-wrapped ResCap mortgage-

---

[1] This Objection has been filed publicly in redacted form pursuant to this Court's July 16, 2013, *Order Regarding the Exchange of Confidential Information* [ECF No. 4249] (the "Confidentiality Order"). Non-redacted copies of this Objection will be delivered to the Court and served upon the parties covered by the Confidentiality Order. Copies of deposition transcripts cited herein will be made available to the parties covered by the Confidentiality Order upon request.

backed securities (the "FGIC-Wrapped ResCap RMBS Holders") under FGIC's current plan of rehabilitation (the "Rehabilitation Plan")

("ResCap," or the "Debtors"), and other parties (the "ResCap Settlement Agreement"). (Gibson Declaration ¶¶ 13-16, 39-42.) This is *without* accounting for additional recoveries of the assumed $41.3 million-plus "litigation upside" the FGIC-Wrapped ResCap RMBS Holders will receive from ResCap. It also does not include recoveries from FGIC's litigation against third-party mortgage originators and/or servicers, such as Countrywide. But using the $41.3 million number FGIC-Wrapped ResCap RMBS Holders would be entitled to (20% of the $206.5 million) under the ResCap Settlement Agreement as a proxy for litigation recovery,

[2] (Gibson Declaration ¶¶ 39-42.)

2. FGIC seeks to exclude Gibson's expert solely because Gibson determined that FGIC would settle its litigation against ResCap for at least $206.5 million. This is a conservative estimate: Gibson does not even include any recoveries against other third parties such as Countrywide, against which FGIC possesses its most significant claims. Rather than addressing Gibson's analysis, FGIC is grasping at straws, arguing the unlikely scenario that the $206.5 million would never materialize if the ResCap Settlement Agreement is not approved. (*See*

[2] As set forth in the *Affidavit of Michael W. Miller in Further Support of FGIC's Rehabilitation Plan* (the "Miller Affidavit"), it is expected that there will be a total of approximately $6.3 billion in claims against FGIC. (Miller Affidavit Ex. 1, p 6.)

(Gibson Declaration ¶¶ 17-18.)

Motion ¶ 17.) FGIC's contention has no support in the record. Even the Debtors' expert, Jeffrey Lipps, has testified in his declaration in support of the 9019 Motion that ResCap has significant vulnerability to FGIC's claims. Also, ResCap is admittedly agnostic about the commutation envisioned in the ResCap Settlement Agreement. From discovery,

. Since the principal objection to the ResCap Settlement Agreement is the commutation and the loss of the right to share in third-party litigation recoveries, in the event the Plan of Rehabilitation goes effective without the ResCap Settlement Agreement in its current form, it is fair to assume that the parties could likely come to a similar economic resolution of FGIC's claims against ResCap without these encumbrances.

3.    Moreover, the $206.5 million estimated recovery grossly understates the true litigation upside under the Rehabilitation Plan because, among other reasons, FGIC's claims against other mortgage servicers/originators, such as Countrywide, were not included in that number. Even if the litigation upside were eliminated from the Gibson Declaration, MountainView's analysis still makes clear that FGIC-Wrapped Holders (defined below) would fare much better under FGIC's rehabilitation plan (as approved on June 11th, the "Rehabilitation Plan") versus the ResCap Settlement Agreement. MountainView's conclusions would not change.

4.    Accordingly, the Gibson Declaration should not be excluded and this Court should consider the Gibson Declaration in its entirety, as this is a bench trial and the signatories to the ResCap Settlement Agreement will have the opportunity to cross examine Gibson and the Court can give appropriate consideration to Gibson's direct testimony.

5.  Finally, Marcelo Messer was on Freddie Mac's witness list and FGIC chose not to depose him. Messer was also on Freddie Mac's adverse witness list and is not a party under Freddie Mac's control. There is no basis for FGIC to seek to preclude his testimony should Freddie Mac choose to call him on direct, and Freddie Mac reserves all its rights to do so.

## FACTUAL BACKGROUND

6.  Prior to the commencement of FGIC's rehabilitation proceeding (the "Rehabilitation Proceeding") in New York State Court, certain of the Debtors originated and/or serviced residential mortgage loans that they contributed or otherwise sold to forty-seven trusts (the "FGIC-Insured ResCap Trusts"). These FGIC-Insured ResCap Trusts then issued residential mortgage-back securities consisting of certificates collateralized by such residential mortgage loans. FGIC, a monoline financial guaranty insurance company, wrote policies that insured the payment of principal and interest with respect to the securities issued by the FGIC-Insured ResCap Trusts; by "wrapping" the securities the FGIC-Insured ResCap Trusts issued, FGIC essentially guaranteed the payment of principal and interest due on such securities.

7.  FGIC has been unable to make payments under any of the Policies since approximately November of 2009 when the New York State Department of Insurance (now known as the New York Department of Financial Services) prevented FGIC from making payments on any policy claims. The Rehabilitation Plan provides that the holders of FGIC policy claims will receive payments of 17.25% of the total amount of their claims against FGIC (the "Cash Payment Percentage" or "CPP"), which will be adjusted over time. The financial disclosures in connection with the Rehabilitation Plan contemplate that the present value of recoveries under a "Base Scenario" will be between 27 and 30 cents on the dollar for FGIC

policy claims.[3] The Rehabilitation Plan contains mechanisms that will "true up" earlier-filed FGIC policy claims such that these earlier-dated claims may receive subsequent payments based upon subsequent increases to CPP. By contrast, the ResCap Settlement Agreement proposes to take out FGIC-Wrapped ResCap RMBS Holders at around 21 cents on the dollar—and possibly significantly less depending upon future claims and also terminate any rights to the proceeds from other third-party litigation, such as Countrywide.

8.  The Gibson Declaration was served on the parties on July 29, 2013, and submitted to the Court as Gibson's direct testimony on July 31, 2013. Pursuant to the Confidentiality Order, the Gibson Declaration was filed in redacted form on that same day.

## OBJECTION

9.  Under the ResCap Settlement, FGIC-Wrapped Holders would be limited to a share in the $253.3 million commutation payment only and would be cutoff from any further distributions under the Rehabilitation Plan, including on account of FGIC's recoveries in litigation against third parties, such as Countrywide. To estimate the litigation upside, Gibson used as a proxy the $206.5 million cash recovery that ResCap would pay to FGIC if the Settlement Agreement is approved.[4] This proxy is reasonable given that the only party impeding the ResCap Settlement Agreement is FGIC and its requirement that FGIC-Wrapped ResCap RMBS holders be commuted out, and the proposed commutation is only important to other

---

[3] *See Affidavit of Michael W. Miller in Further Support of Approval of First Amended Plan of Rehabilitation* (the "Miller Affidavit") ¶ 28, Ex. 1, p. 6.

[4] If the ResCap Settlement Agreement is approved, FGIC's direct claims against ResCap would be settled for an allowed, unsecured claim of $934 million, of which FGIC estimates it will receive a cash recovery of $206.5 million. *See Affirmation of Gary T. Holtzer* (the "Holtzer Affirmation") ¶ 24.

parties here because FGIC has required it.[5] While not essential to his analysis, it is reasonably safe for Gibson to assume that if the ResCap Settlement is not approved, FGIC would receive at least $206.5 million on account of its direct claims against ResCap, which would such recoveries would be distributed to satisfy the claims of all FGIC policyholders:

>to FGIC-Wrapped ResCap RMBS Holders.

10. A motion to exclude the testimony of an expert witness is governed by Federal Rule of Evidence 702, which provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

11. Although there is no definitive test for determining whether a Court should admit and consider expert testimony, at a bare minimum, such expert testimony must be relevant to the facts at hand: "expert testimony proffered in the case" must be "sufficiently tied to the facts of the case" such that the expert testimony will aid the finder of fact in resolving a factual dispute." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993); *see also* Fed. R. Evid. 702(a) (requiring that "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"); *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 49 (E.D.N.Y. 1999) (same). That is, expert testimony must "fit" the facts of the case. *See Daubert*, 509 U.S. at 591.

---

[5]

12. Here, the Gibson Declaration squarely "fits" the facts of this case: the FGIC-Wrapped Holders would be shut out of sharing in any recoveries on FGIC's claims against mortgage servicers/originators such as ResCap and Countrywide if the ResCap Settlement Agreement is approved.

13. FGIC is free to cross examine Gibson at the hearing on the basis for his use of the $206.5 number, and this Court would determine the weight to give Gibson's testimony. Gibson used the only concrete number available as a proxy for the litigation upside. The $206.5 million settlement amount is the only estimate in existence that has been made available that puts a number on FGIC's claims against ResCap.[6]

## JOINDER

14. Freddie Mac hereby joins all other objections to the Motion to the extent not inconsistent herewith.

*(Remainder of Page Intentionally Left Blank)*

---

[6] *See* Holtzer Affirmation ¶ 24.

**WHEREFORE**, for the reasons set forth above, Freddie Mac respectfully requests that the Court (i) sustain the Objection, (ii) deny the Motion, and (iii) grant such other and further relief that may be just and proper under the circumstances.

Dated: August 13, 2013
      New York, New York

                Respectfully submitted,

                **MCKOOL SMITH, P.C.**

                By: /s/ Michael R. Carney

                Peter S. Goodman
                Michael R. Carney
                One Bryant Park, 47th Floor
                New York, New York 10036
                Telephone: 212-402-9414
                Facsimile: 212-402-9444

                *Counsel for Federal Home Loan Mortgage Corporation*