Hearing Date and Time:  TBD

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Philip S. Kaufman
Douglas H. Mannal
Daniel M. Eggermann
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: : | Chapter 11 |
| : | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., : | |
| : | Jointly Administered |
| Debtors. : | |
| : | Related Docket Nos.: 4545, 4549 |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THOSE PORTIONS OF THE MOTIONS *IN LIMINE* FILED BY THE MONARCH GROUP AND THE JSNs THAT SEEK TO EXCLUDE EVIDENCE CONCERNING THE GENERAL NATURE AND CHARACTERISTICS OF THE MEDIATION PROCESS THROUGH WHICH THE FGIC 9019 SETTLEMENT WAS REACHED**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this response to the motions *in limine* filed by (i) an ad hoc group of holders of residential mortgage-backed securities (the "Monarch Group") [Docket No. 4545] and (ii) the ad hoc group of certain holders of the Debtors' junior secured notes (the "JSNs") [Docket No. 4549] to the extent that such motions seek to exclude evidence at the hearing on the Debtors' Motion Pursuant to Fed. Rule of Bankruptcy Procedure 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Institutional Investors (the "FGIC Settlement")

concerning the general nature and characteristics of the mediation process through which the FGIC Settlement was reached. In support of this response, the Committee respectfully states as follows:

1.  Both the Monarch Group and the JSNs appear to pattern their motions after the motion filed by the Committee earlier in these cases to preclude the Debtors from offering evidence of their reliance on the advice of counsel in connection with the hearing of their Rule 9019 motion to approve the RMBS Settlement. The imitation is flattering, but the attempt to compare the circumstances surrounding these motions with those underlying the Committee's prior motion is completely unfounded.

2.  In seeking approval of the RMBS Settlement, the Debtors made a deliberate – and purely voluntary – tactical decision to withhold from discovery virtually all of their confidential communications with counsel. They subsequently tried to use those same communications to prove they acted reasonably and in good faith, not merely by consulting counsel but also in *relying* on the advice they received. The Committee had no objection to the Debtors' introduction of evidence of their consultation with counsel, and, indeed, stipulated that such evidence would be admissible. *See* Apr. 11, 2013 Preclusion Hr'g Tr. at 35:20-36:15. But the Committee did object to any evidence of the Debtors' reliance on the advice they received from their attorneys because they had shielded the substance of that advice from discovery. The law prohibiting a party's use of the attorney-client privilege as both a sword at trial and a shield in discovery supported that position. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *Trouble v. The Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304, (S.D.N.Y. 2001); *Chesapeake Corp. v. Shore*, 771 A.2d 293, 301 (Del. Ch. 2000). This Court agreed. *See In re Residential Capital, LLC*, 491 B.R. 63, 68 (Bankr. S.D.N.Y. 2013).

3.      Here, in contrast, the parties to the FGIC Settlement made no voluntary decision – tactical or otherwise – to protect from discovery their confidential negotiations during the mediation overseen by Judge Peck.  The Order Appointing Mediator issued by the Court on December 26, 2012 [Docket No. 2519] (the "Mediation Order") eliminated any choice in the matter, strictly prohibiting them from divulging any "discussions among any of the Mediation Parties," "any mediation statements and any other documents or information provided to the Mediator or the Mediation Parties in the course of the mediation," or any "correspondence, draft resolutions, offers, and counteroffers produced for or as a result of the mediation."  (Mediation Order ¶ 4.)  General Order M-390 imposed a similar prohibition:  "Any statements made by the mediator, by the parties or by others during the mediation process shall not be divulged by any of the participants in the mediation (or their agents) or by the mediator to the court or to any third party."  General Order M-390 § 5.1.  A fundamental basis for application of the sword/shield doctrine is thus non-existent here.

4.      In addition, the parties to the FGIC Settlement, unlike the Debtors in connection with the RMBS Settlement, do not seek to offer at trial any evidence whatsoever of the substance of the negotiations giving rise to the FGIC Settlement.  The declarations they have filed, including all of the excerpts cited in the JSNs' and Monarch Group's motions, describe only the general nature and characteristics of the mediation *process*, and do not attempt to introduce evidence of any of the oral or written communications made in the course of the mediation.  The communications that were shielded from discovery in compliance with the Mediation Order are therefore not being used as a sword.

5.      Given these basic differences between the situation here and the one presented by the RMBS Settlement motion, the Monarch Group's reliance on *In re MSTG, Inc.*,

675 F.3d 1337 (Fed. Cir. 2012), and *Hays v. Equitex, Inc.* (*In re RDM Sports Group, Inc.*), 277 B.R. 415 (Bankr. N.D. Ga. 2002), is woefully misplaced. Neither of those cases involved a court-ordered bar to disclosure in aid of mediation, and *MSTG* did not involve a mediation at all but rather only settlement negotiations generally. In *Hays*, the court actually held that a mediation privilege was not being used as a sword and shield. 277 B.R. 438.

6.  In fact, contrary to the assertions by the Monarch Group and the JSNs, discovery concerning the general nature and characteristics of the mediation process has not been withheld from them. The witnesses whom they deposed testified extensively about these matters, and were instructed not to answer only questions addressed to the substance of negotiations.[1] While the Monarch Group and the JSNs may find the testimony given during depositions inconvenient, there is simply no reason why evidence of the nature and characteristics of the mediation process should not be admitted at trial.

---

[1] The Committee understands that the Debtors and FGIC will be including in their responses to these *in limine* motions numerous examples where the witnesses testified about the mediation process without revealing the substance of the negotiations.

- 4 -

## **CONCLUSION**

For all of the foregoing reasons, the Committee respectfully requests that the subject motions *in limine* be denied.

Dated:  August 13, 2013

                KRAMER LEVIN NAFTALIS & FRANKEL LLP


                  /s/ Philip S. Kaufman
                Kenneth H. Eckstein
                Philip S. Kaufman
                Douglas H. Mannal
                Daniel M. Eggermann
                1177 Avenue of the Americas
                New York, NY 10036
                Telephone: (212) 715-9100
                Facsimile: (212) 715-8000

                *Counsel for the Official Committee of Unsecured Creditors*