Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP,
Stonehill Capital Management LLC, and Bayview Fund
Management LLC, each in its capacity as
investment advisor to certain funds, and for CQS ABS Master
Fund Limited and CQS ABS Alpha Master
Fund Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

_____

**MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL MANAGEMENT LLC, CQS ABS ALPHA MASTER FUND LIMITED, CQS ABS MASTER FUND LIMITED, AND BAYVIEW FUND MANAGEMENT LLC'S OPPOSITION TO FINANCIAL GUARANTY INSURANCE COMPANY'S <u>MOTION *IN LIMINE*</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and CQS ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited (collectively, the "**Investors**") hereby file this opposition to that portion of Financial Guaranty Insurance Company's ("**FGIC**") Motion *In Limine* that seeks to exclude the testimony of Charles R. Goldstein and Gary T. Holtzer in connection with the upcoming hearing of the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors (the "**9019 Motion**").[1]

## PRELIMINARY STATEMENT

In its motion *in limine*, FGIC seeks to exclude the testimony of two witnesses the Investors either will or may call at trial: Charles R. Goldstein, an expert witness who will opine on (among other things) whether the FGIC Settlement Agreement is in the best interests of the Investors from an economic perspective; and Gary T. Holtzer, a percipient witness whom the Investors identified as a potential witness on their adverse witness list. According to FGIC, Mr. Goldstein's testimony is based on "faulty assumptions" and "impermissible speculation" and is therefore "useless" to the Court. Mr. Holtzer should likewise be excluded, according to FGIC, because the Investors did not submit "direct testimony" from him and, in any event, he has allegedly been "improperly identified" as an adverse witness on the Investors' adverse witness list because he serves as counsel for the Rehabilitator in the Rehabilitation Proceeding pending in

---

[1] The Investors do not respond to those portions of FGIC's Motion *In Limine* seeking to exclude the testimony of Scott R. Gibson and Marcelo Messer.

the Supreme Court of New York.  FGIC's complaints are devoid of either legal or factual support and should be swiftly rejected.

As to Mr. Goldstein's report and testimony, the law is clear that disputes about the facts and assumptions underlying an expert's opinion go to the weight of the testimony, not its admissibility, and are not grounds for preclusion under *Daubert* or otherwise.  Rather, the assumptions behind and factual basis for an expert's opinion goes to the credibility of the testimony, which is to be tested via cross-examination at trial, and none of the authorities cited in FGIC's Motion even remotely suggest otherwise.  Accordingly, even if Mr. Goldstein had made the "faulty assumptions" he is alleged to have made – which the Investors dispute – that is not a basis to preclude his opinion in its entirety or at all.

In any event, as Mr. Goldstein made clear during his deposition testimony and in his direct-testimony declaration, the purportedly "faulty assumption" identified by FGIC did not alter his conclusion that the FGIC Settlement Agreement is not in the best interests of the Investors from an economic perspective. ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

As to Mr. Holtzer, there was nothing "improper" about the Investors' reserving their rights by identifying Mr. Holtzer as a potential witness on their adverse witness list.  While Mr. Holtzer is an attorney, he is not counsel to any party in this matter (let alone litigation

counsel) and is a percipient witness to certain facts in dispute, namely the purported benefit to be received by policyholders under the FGIC Settlement Agreement. The policy disfavoring the testimony of opposing counsel simply has no application to these facts. What is more, the notion that the Investors should somehow be precluded from calling Mr. Holtzer as an adverse witness because they did not submit direct written testimony from him borders on the absurd. Obviously the Investors could not have secured a declaration from Mr. Holtzer because he is a *hostile* witness.

For these reasons, and as more fully described below, FGIC's Motion *In Limine* is without merit and should be denied.

## BACKGROUND

### 1. *The Expert Testimony of Mr. Goldstein*

On July 19, 2013, Mr. Goldstein submitted his expert report, outlining the opinions he expected to testify to in this matter (the "Goldstein Report").[2] ███████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[2]   Expert Witness Report of Charles R. Goldstein Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure (July 19, 2013) (Exhibit 3 to FGIC's Motion *In Limine*) [hereinafter the "Goldstein Report"].

████████████████████████



Mr. Goldstein based his statement on certain information set forth in FGIC's statutory financials for the quarter ending March 31, 2013, which listed "Gross projected recoveries" in the amount of approximately $1.058 billion as an item to be deducted from "Gross loss reserves."[6] In that statutory filing, FGIC explained that "gross projected recoveries" include amounts from "[l]oss mitigation activities," such as "making repurchase claims or pursuing other claims for breaches or representations and warranties by the originator or others . . . and in some cases, litigation or arbitration as and where appropriate."[7]

---

[6]  Quarterly Statement of the Financial Guaranty Insurance Company (In Rehabilitation), at 6.16 (March 31, 2013) [hereinafter "FGIC Quarterly Statement"]; *see also* Goldstein Report ¶ 12 & n.3 (Declaration of Mary Eaton ("Eaton Decl."), Ex. 1).

[7]  FGIC Quarterly Statement at 6.16.



On July 31, 2013, Mr. Goldstein submitted his declaration that will serve as his direct testimony at the hearing per the Court's directive (the "Goldstein Declaration").[11]  In his direct testimony, Mr. Goldstein reiterated the basis for his prior statements relating to FGIC's potential litigation recoveries, explaining that "[p]ursuant to the statutory accounting principles and the information that was made available to [him, he] assumed the gross projected recoveries included in FGIC's loss reserves as of March 31, 2013 included potential recoveries from loss mitigation activities, including litigation."[12]  Mr. Goldstein then went on to state that although he had not received information confirming whether those initial assumptions were correct or not, it

---

[11]  *See* Declaration of Charles R. Goldstein in Support of Objection of Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQSS ABS Alpha Master Fund Limited to Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors [Dkt. No. 4435] (July 31, 2013) (hereinafter the "Goldstein Declaration").

[12]  *Id.* at ¶ 10.

did not alter his conclusion that the FGIC Settlement Agreement was not in the Investors best interests from an economic perspective. Mr. Goldstein illustrated that point by reference to "the potential proceeds from litigation" provided for in the FGIC Settlement.[13]

The FGIC Settlement Agreement provides that FGIC's litigation claims against the Debtors "will be deemed allowed as general unsecured claims" and "are projected to yield a recovery of approximately $206.5 million" for FGIC.[14] ████████████████████

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████

---

[13]    *Id.*

[14]    Affirmation of Gary T. Holtzer ¶ 13 (May 29, 2013) (Eaton Decl. Ex. 3) [hereinafter "Holtzer Aff."]; *see also* Goldstein Declaration ¶ 11.

████████████████████████████
████████
████████

### 2. *The Identification Of Mr. Holtzer As An Adverse Witness*

On July 2, 2013, the parties exchanged fact witness disclosures identifying witnesses from whom each party intended to elicit direct testimony. The Trustees identified Marc Abrams, counsel for the Investors, and Keith Wofford, counsel for the Ad Hoc RMBS Holder Group, as intended fact witnesses.[18] In their fact witness disclosures, the Debtors "reserved the right to call any witness designated by any other party," which included Messrs. Abrams and Wofford.[19]

On July 31, 2013, the parties exchanged adverse witness lists. The Investors identified Mr. Holtzer as an adverse witness[21] whom they might potentially call at trial because he is percipient witness with knowledge of the facts surrounding the FGIC Settlement Agreement and the events leading up to its consummation.

## ARGUMENT

**I.    The Motion *In Limine* To Exclude Mr. Goldstein Should be Denied**

When it comes to expert testimony, a court has a "basic gatekeeping obligation" to ensure that expert testimony is reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). In deciding whether an expert opinion is reliable, a court must consider

---

[18]   The RMBS Trustees' Fact Witness Disclosure, at 3 (July 2, 2013) (Eaton Decl. Ex. 4). The Trustees have never amended their fact witness disclosure.

[19]   The Debtors' Witness Disclosures, at 2 (July 2, 2013) (Eaton Decl. Ex. 5). The Debtors have never amended their witness disclosures.

[21]   Monarch Alternative Capital LP, Stonehill Capital Management LLC, CQS ABS Alpha Master Fund Limited, CQSS ABS Master Fund Limited, and Bayview Fund Management LLC's List of Adverse Witnesses for Hearing on Debtors' 9019 Motion (July 31, 2013) [Dkt. No. 4437].

the indicia of reliability outlined in Rule 702, and, in particular, whether: "the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

"Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith, or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility of the testimony." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Disputes about the assumptions underlying an expert's opinion therefore "go to weight, not the admissibility, of the testimony." *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992); *see also Hollman v. Taser Internat'l Inc.*, No. 06-cv-3588, __ F. Supp. 2d __, 2013 WL 864538, at *10 (E.D.N.Y. March 8, 2013) ("the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion on cross-examination.").

FGIC argues that Mr. Goldstein's testimony should be excluded under Rule 702 because it "improperly relies on a faulty assumption regarding FGIC's projected litigation recoveries."[22] In particular, FGIC complains that Mr. Goldstein engaged in "erroneous speculation" when he assumed that the $1 billion in "gross projected recoveries" in FGIC's statutory financial statements referred to litigation recoveries.[23] That figure, apparently, is

---

[22]    FGIC's Motion *In Limine* at 7.

[23]    *Id.* at ¶ 19.

actually meant to refer to "reimbursement recoveries" instead.[24] According to FGIC, therefore, Mr. Goldstein's error "demonstrate[s] that the Goldstein Report is based on mere speculation," and renders his entire opinion "useless to the Court."[25]

FGIC could not be more wrong. For one thing, FGIC conveniently ignores what Mr. Goldstein expressed in his subsequent Declaration, which clarified his opinion. There, Mr. Goldstein addressed the basis for his original assumption, explaining why he believed that some portion of the "gross projected recoveries" referred to in FGIC's statutory financials might encompass litigation recoveries and why – even assuming he was in error – it did not alter his conclusion that the FGIC Settlement Agreement is not in the best interests of the Investors from a financial point of view.[26] This is not a situation, therefore, where an expert's opinion is predicated on an uncorrected and fundamental factual error. To the contrary, Mr. Goldstein did no more than supplement his opinions, consistent with what the Rules require. *See, e.g.,* Fed. R. Civ. P. 26(e) ("For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.").

But even if this were a case involving a "faulty assumption," as FGIC contends, preclusion would still not be warranted. As the cases show, mistaken assumptions and factual errors are issues that go to the weight of an expert's opinion, not its admissibility.[27] *See Tyler*,

---

[24] *Id.*

[25] *Id.* ¶ 21.

[26] Goldstein Declaration ¶¶ 6, 13(iv)(c).

[27] FGIC also argues that the allegedly faulty assumption renders a "significant portion" of Mr. Goldstein's testimony inadmissible. FGIC's Motion *In Limine* ¶ 3. The Investors maintain that all of Mr. Goldstein's testimony is reliable and admissible, but even if a portion were unsupported, the Court should use its discretion to admit all of the testimony and permit FGIC to attempt to challenge the weight of the challenged portion of the testimony on cross-examination. *See Olin Corp. v. Certain Underwriters at*

- 10 -

958 F.2d at 1188 (no abuse of discretion when the district court denied a motion to exclude expert testimony on the basis of flaws in an expert's assumptions); *Grand River Enters. Six Nations, Ltd. v. King*, 783 F. Supp. 2d 516, 527-28 (S.D.N.Y. 2011) (admitting expert testimony where movants questioned certain data used by experts and conclusions drawn by experts because such "arguments do not diminish the reliability of the process or methodology employed."); *Hollman*, 2013 WL 864538, at *10 (admitting expert's opinions over party's objection that there was a lack of a factual basis for the opinions); *On Site Energy Co. v. MTU Onsite Energy Corp.*, No. 10-CV-1671, 2012 WL 2952424, at *1 (E.D.N.Y. July 19, 2012) (denying motion to exclude expert testimony when party's "criticisms of [the expert's] analysis go to the weight of [the expert's] opinion, not its admissibility.").

None of the cases cited by FGIC compel a different result.  Indeed, unlike the present situation, all FGIC's cases involved situations whereby the *central* assumption underlying the expert's opinion was fundamentally erroneous.  In *Carroll v. United States*, No. 06-2000-cv, 2008 WL 4482230, at *2 (2d Cir. Oct. 2, 2008), for example, the court upheld a magistrate judge's decision to exclude testimony from plaintiff's economic expert regarding plaintiff's future earning capacity because it was based on the speculative assumption that plaintiff would have worked as a physician's assistant, a job he had never performed.  Likewise, in *In re Fosamax Prods. Liab. Litig*, 807 F. Supp. 2d 168, 183 (S.D.N.Y. 2011), the court excluded an expert's opinion regarding Fosamax being the cause of plaintiff's injury because the

---

*Lloyd's London*, 468 F.3d 120, 133-34 (2d Cir. 2006) (holding that the district court had discretion to admit entirety of expert testimony where certain portions of testimony were problematic, but others were helpful).

expert's testimony "was based on hypothetical assumptions about [plaintiff's] use of Fosamax rather than concrete facts."[28] No such fundamental error is present here.

Accordingly, FGIC's motion to preclude Mr. Goldstein's testimony should be denied, and his testimony should be considered by this Court.[29]

## II. The Motion *In Limine* To Exclude Mr. Holtzer As a Potential Adverse Witness Should Be Denied

FGIC also argues that the Investors should "not be allowed to call to testify at a hearing any individuals that have not been deposed or submitted direct testimony" in accordance with the Court's July 8 Scheduling Order.[30] In particular, FGIC complains that the Investors "improperly" identified Gary T. Holtzer as an adverse witness, even though he has neither submitted an affidavit in this matter nor been deposed, suggesting that the "rationale" for including him on the adverse witness list "appears to be completely improper."[31] According to FGIC, when Marc Abrams, counsel for the investors was subpoenaed for deposition, the Investors "strongly objected, based on the longstanding policy of disfavoring the depositions of

---

[28] *Faively Transport USA, Inc. v. Wabtec*, No. 11-3518-CV, 2013 WL 440200, at *2 (2d Cir. Feb. 6, 2013), is similarly inapplicable. In that case, the Second Circuit upheld the district court's exclusion of expert testimony that "included sweeping statements that were detached from the actual evidence," a complaint that FGIC does not make about Mr. Goldstein's testimony.

[29] FGIC has made an argument about the $206.5 million figure with respect to the portion of its motion relating to Mr. Gibson, but not in the portion relating to Mr. Goldstein. To the extent that FGIC intends to apply this argument to Mr. Goldstein, the Investors respond to it here briefly. FGIC argues that its receipt of the $206.5 million is contingent upon the survival of the Plan Support Agreement, which (FGIC claims) will not survive if the FGIC Settlement Agreement is not approved. Assuming, *arguendo*, that this assertion holds water, it suffers from the same defect as FGIC's Motion *In Limine* more generally—it relates to an issue of fact and thus is relevant solely as to the weight to be accorded Mr. Goldstein's opinion, not its admissibility. *Boucher*, 73 F.3d at 21.

[30] FGIC's Motion *In Limine* ¶ 22.

[31] *Id.* at ¶ 24.

- 12 -

adverse counsel."[32]  Since Mr. Holtzer is counsel to the Rehabilitator, FGIC argues, the same rule should apply, and he should not required to testify at the hearing of this matter either.

FGIC is wrong.

First, although FGIC is correct that depositions of opposing counsel are disfavored, that argument is irrelevant because Mr. Holtzer is not the Investors' *opposing counsel* in this matter.  For example, in *Nakash v. United States Dep't of Justice*, 128 F.R.D. 32 (S.D.N.Y. 1989), attorneys who were not counsel of record in the matter sought to avoid deposition on the grounds that they were still on the opposite side of the party issuing the subpoenas.  The court disagreed, explaining that the attorneys' attempt to avoid deposition by

> cast[ing] themselves in the role of "opposing" counsel, to bring themselves within the strict standards of cases such as *Shelton v. American Motors Corp.*, is not persuasive because they are not opposing counsel in this action. Therefore, the major rationales in these cases—discouraging the depositions of opposing attorneys in a particular lawsuit to avoid unnecessary expense and interference with the attorney-client relationship—are not applicable here.

*Id.* at 35.  Here, Mr. Holtzer represents the Rehabilitator in the FGIC Rehabilitation proceeding, but the Rehabilitator is not a Moving Party, nor has the Rehabilitator filed any opposition to the Investors' objection in this matter.  As a result, the cases that FGIC cites regarding depositions of *opposing counsel* are simply inapplicable.[33]

---

[32]  *Id.*

[33]  *See Lee v. Kucker & Bruh, LLP*, No. 12 Civ. 4662 (BSJ) (JCF), 2013 WL 680929, at *1 (S.D.N.Y. Feb. 25, 2013) (denying defendant's attempt to depose plaintiff's attorney); *Sea Tow Internat'l, Inc. v. Pontin*, 246 F.R.D. 421, 423 (S.D.N.Y. 2007) (same).  FGIC's citation to *United States v. Yonkers Bd. of Ed.*, 946 F.2d 180 (S.D.N.Y. 1991), is similarly unavailing.  In that case, the court's ruling on a party's attempt to depose the court's housing advisor was not only dicta, but was decided in reliance on the *Shelton* Rule, which is not controlling law in the Second Circuit.  *See id.* at 185; *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 66-67 (2d Cir. 2003) (Sotomayor, J.) (reasoning that the Federal Rules require "a more flexible approach to attorney depositions than the *Shelton* rule"); *see also Sea Tow Internat'l*, 246 F.R.D. 421 (district courts follow the factors outlined in *Friedman*, not *Shelton*).

- 13 -

Second, FGIC's allusion to the Investors' opposition to the Trustees' subpoena directed to Marc Abrams, Investors' counsel, likewise misses the mark. Unlike Mr. Holtzer, Mr. Abrams *is* opposing counsel in this matter, having entered an appearance in this action and argued applications concerning this very matter before this Court. As such, the Investors were perfectly within their rights – and squarely within the decided cases – in opposing the Abrams subpoena.[34]

Third, and unlike the facts presented in connection with the Abrams subpoena, Mr. Holtzer is a percipient witness with direct knowledge of certain issues in dispute. Mr. Holtzer affirmed to the court presiding over the FGIC Rehabilitation that "extensive negotiations" occurred "in an effort to resolve the current and future claims against FGIC under the Policies, as well as the FGCI Claims against [the Debtors]."[35] Moreover, Mr. Holtzer also affirmed that the Rehabilitator "determined that the Settlement Agreement is in the best interests of FGIC and its policyholders and other claimants and should be approved."[36] There is, therefore, nothing "improper" about the Investors naming Mr. Holtzer as an adverse witness.

Fourth, nothing in the Court's July 8, 2013 Scheduling Order requires that a witness must submit direct testimony before they may be called as an adverse witness at trial.[37]

---

[34] In Investors' Letter to the Trustees, dated June 28, 2013[Ex. 5 to FGIC's Motion *In Limine*], the Investors argued that "[w]ith respect to the Subpoena seeking Mr. Abrams's deposition, as you must or should know, *depositions* of counsel are disfavored and rarely granted. *See, e.g.*, *Lee v. Kucker & Bruh, LLP*, 2013 WL 680929 (S.D.N.Y. Feb. 25, 2013)." (Emphasis added). It should also be noted that the Trustees voluntarily withdrew their subpoena to depose Mr. Abrams. Letter from Michael Johnson on behalf of the Trustees to the Hon. Martin Glenn (July 17, 2013) (Eaton Decl. Ex. 7).

[35] Holtzer Aff. ¶ 9.

[36] Holtzer Aff. ¶ 23.

[37] The only reference to "direct testimony" in the Scheduling Order is as follows: "Direct testimony, lists of exhibits, and lists of adverse witnesses to be introduced at the hearing on the 9019 Motion shall be filed and served on or before Wednesday, July 31, 2013, at 5:00 p.m." Scheduling Order ¶ 12 (July 8, 2013) [Dkt. No. 4168]. The Scheduling Order also states, with regard to non-adverse witnesses, that "The Parties shall identify the witnesses from whom they intend to introduce testimony at the hearing in connection with the

Nor could it sensibly do so. Mr. Holtzer is an *adverse* witness and, as such, could not be compelled to supply a supporting affirmation. Nor is the fact that he was not deposed of any moment. The Investors were permitted to take a very limited number of depositions, fewer than the number of fact witnesses the Proponents identified on their witness lists. It simply cannot be the case that the Investors should be precluded from putting on their case at trial as a result of an order that severely limited their discovery rights.

The Court should therefore deny FGIC's Motion *In Limine* and permit the testimony of Mr. Holtzer to go forward, should the Investors determine that such testimony is necessary or helpful to their case.[38]

## CONCLUSION

WHEREFORE, the Investors respectfully request that the Court enter an Order denying FGIC' Motion *In Limine*, and permitting the testimony of both Mr. Goldstein and Mr. Holtzer to go forward at the hearing regarding the 9019 Motion to be held on August 16 and August 19, 2013.

---

FGIC 9019 Motion on or before Tuesday, July 2, 2013, at 5:00 p.m." *Id.* at ¶ 6. When taken together, these two instructions indicate that this Court intended adverse witnesses to be treated differently from regular witnesses, and as such did not intend to apply the direct testimony requirement to adverse witnesses.

[38] FGIC also refers, in a footnote, to the Investors listing Michael Miller as an adverse witness. It is unclear whether FGIC also challenges the proposed testimony of Mr. Miller, but to the extent it does, the same reasoning that applies to Mr. Holtzer's testimony in section II.B here would apply to Mr. Miller's testimony.

Dated: August 13, 2013
      New York, New York

                              WILLKIE FARR & GALLAGHER LLP

                              By: _____/s/_____
                                  Mary Eaton

                              Joseph T. Baio
                              Emma J. James
                              787 Seventh Avenue
                              New York, New York 10019
                              (212) 728-8000

*Attorneys for Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and for CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited.*