# Exhibit 1

# QUARTERLY STATEMENT

OF THE

# FINANCIAL GUARANTY INSURANCE COMPANY
## (In Rehabilitation)

2013

OF

New York

IN THE STATE OF

New York

TO THE

INSURANCE  DEPARTMENT

OF THE

STATE OF New York

AS OF

MARCH 31, 2013

**PROPERTY AND CASUALTY**

# 2013

**Confidential**

**PFEIFFER 000333**



PROPERTY AND CASUALTY COMPANIES —ASSOCIATION EDITION

# QUARTERLY STATEMENT

### AS OF MARCH 31, 2013
OF THE CONDITION AND AFFAIRS OF THE

## FINANCIAL GUARANTY INSURANCE COMPANY   (In Rehabilitation)

NAIC Group Code _____0000_____ , _____0000_____   NAIC Company Code ____12815____   Employer's ID Number ____13-2710717____
(Current Period)   (Prior Period)

Organized under the Laws of _____New York_____ , State of Domicile or Port of Entry _____New York_____

Country of Domicile _____United States_____

Incorporated/Organized ____04/10/1972____   Commenced Business ____07/01/1972____

Statutory Home Office ____125 Park Avenue____ , ____New York, NY, US 10017____
(Street and Number)   (City or Town, State, Country and Zip Code)

Main Administrative Office ____125 Park Avenue____   New York, NY, US 10017   212-312-3000
(Street and Number)   (City or Town, State, Country and Zip Code)   (Area Code) (Telephone Number)

Mail Address ____125 Park Avenue____ , ____New York, NY, US 10017____
(Street and Number or P.O. Box)   (City or Town, State, Country and Zip Code)

Primary Location of Books and Records ____125 Park Avenue____   New York, NY, US 10017   212-312-3012
(Street and Number)   (City or Town, State, Country and Zip Code)   (Area Code) (Telephone Number)

Internet Web Site Address ____http://www.fgic.com____

Statutory Statement Contact ____Guillermo A. Sucre____   212-312-3012
(Name)   (Area Code) (Telephone Number) (Extension)

____guillermo.sucre@fgic.com____   212-312-3084
(E-Mail Address)   (Fax Number)

### OFFICERS

| Name | Title | Name | Title |
|---|---|---|---|
| John S. Dubel | Chief Executive Officer | A. Edward Turi III | General Counsel |

### OTHER OFFICERS

### DIRECTORS OR TRUSTEES

State of ...............New York...............   ss
County of ...............New York...............

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and has been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that: (1) state law may differ; or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively. Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement. The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement.

_____John S. Dubel_____   _____A. Edward Turi III_____
Chief Executive Officer   General Counsel

a. Is this an original filing?   Yes [ X ]   No [ ]

Subscribed and sworn to before me this
_14th_ day of _MAY_ 2013

_Camille A. Taylor_

b. If no,
1. State the amendment number _____
2. Date filed _____
3. Number of pages attached _____

Camille A. Taylor
Notary Public, State of New York
No. 43-OITA4994058
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 30, 20_14_

Confidential   PFEIFFER 000334

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# ASSETS

| | Current Statement Date | | | 4 |
| | 1 | 2 | 3 | December 31 |
| | | | | Prior Year Net |
| | Assets | Nonadmitted Assets | Net Admitted Assets (Cols. 1 - 2) | Admitted Assets |
|---|---|---|---|---|
| 1. Bonds | 1,445,307,228 | | 1,445,307,228 | 1,296,051,249 |
| 2. Stocks: | | | | |
| 2.1 Preferred stocks | | | 0 | 0 |
| 2.2 Common stocks | 413,385 | 413,385 | 0 | 0 |
| 3. Mortgage loans on real estate: | | | | |
| 3.1 First liens | | | 0 | 0 |
| 3.2 Other than first liens | | | 0 | 0 |
| 4. Real estate: | | | | |
| 4.1 Properties occupied by the company (less $ _____ encumbrances) | | | 0 | 0 |
| 4.2 Properties held for the production of income (less $ _____ encumbrances) | | | 0 | 0 |
| 4.3 Properties held for sale (less $ _____ encumbrances) | | | 0 | 0 |
| 5. Cash ($ _____ 8,318,294 ), cash equivalents ($ _____ 159,015 ) and short-term investments ($ _____ 581,649,246 ) | 590,126,555 | | 590,126,555 | 685,075,451 |
| 6. Contract loans (including $ _____ premium notes) | | | 0 | 0 |
| 7. Derivatives | | | 0 | 0 |
| 8. Other invested assets | | | 0 | 0 |
| 9. Receivables for securities | 195,333 | | 195,333 | 0 |
| 10. Securities lending reinvested collateral assets | | | 0 | 0 |
| 11. Aggregate write-ins for invested assets | 21,128,805 | | 21,128,805 | 22,370,976 |
| 12. Subtotals, cash and invested assets (Lines 1 to 11) | 2,057,171,306 | 413,385 | 2,056,757,921 | 2,003,497,676 |
| 13. Title plants less $ _____ charged off (for Title insurers only) | | | 0 | 0 |
| 14. Investment income due and accrued | 17,518,709 | | 17,518,709 | 14,375,759 |
| 15. Premiums and considerations: | | | | |
| 15.1 Uncollected premiums and agents' balances in the course of collection | | | 0 | 0 |
| 15.2 Deferred premiums, agents' balances and installments booked but deferred and not yet due (including $ _____ earned but unbilled premiums) | 895,036 | | 895,036 | 535,998 |
| 15.3 Accrued retrospective premiums | | | 0 | 0 |
| 16. Reinsurance: | | | | |
| 16.1 Amounts recoverable from reinsurers | 237,584 | | 237,584 | 666,156 |
| 16.2 Funds held by or deposited with reinsured companies | | | 0 | 0 |
| 16.3 Other amounts receivable under reinsurance contracts | 76,411 | | 76,411 | 76,411 |
| 17. Amounts receivable relating to uninsured plans | | | 0 | 0 |
| 18.1 Current federal and foreign income tax recoverable and interest thereon | | | 0 | 0 |
| 18.2 Net deferred tax asset | | | 0 | 0 |
| 19. Guaranty funds receivable or on deposit | | | 0 | 0 |
| 20. Electronic data processing equipment and software | | | 0 | 0 |
| 21. Furniture and equipment, including health care delivery assets ($ _____ ) | 2,184,736 | 2,184,736 | 0 | 0 |
| 22. Net adjustment in assets and liabilities due to foreign exchange rates | | | 0 | 0 |
| 23. Receivables from parent, subsidiaries and affiliates | 465,221 | | 465,221 | 241,510 |
| 24. Health care ($ _____ ) and other amounts receivable | | | 0 | 0 |
| 25. Aggregate write-ins for other than invested assets | 2,760,815 | 1,173,758 | 1,587,057 | 1,442,981 |
| 26. Total assets excluding Separate Accounts, Segregated Accounts and Protected Cell Accounts (Lines 12 to 25) | 2,081,309,818 | 3,771,879 | 2,077,537,939 | 2,020,836,491 |
| 27. From Separate Accounts, Segregated Accounts and Protected Cell Accounts | | | 0 | 0 |
| 28. Total (Lines 26 and 27) | 2,081,309,818 | 3,771,879 | 2,077,537,939 | 2,020,836,491 |
| DETAILS OF WRITE-INS | | | | |
| 1101. Other Invested Assets | 21,128,805 | | 21,128,805 | 22,370,976 |
| 1102. | | | | |
| 1103. | | | | |
| 1198. Summary of remaining write-ins for Line 11 from overflow page | 0 | 0 | 0 | 0 |
| 1199. Totals (Lines 1101 through 1103 plus 1198)(Line 11 above) | 21,128,805 | 0 | 21,128,805 | 22,370,976 |
| 2501. Cash Surrender Value of Life Insurance Policies | 1,330,361 | | 1,330,361 | 1,341,603 |
| 2502. Premium Taxes and State Income Tax Refunds | 256,696 | | 256,696 | 101,378 |
| 2503. Prepaid Expenses | 1,173,758 | 1,173,758 | 0 | 0 |
| 2598. Summary of remaining write-ins for Line 25 from overflow page | 0 | 0 | 0 | 0 |
| 2599. Totals (Lines 2501 through 2503 plus 2598)(Line 25 above) | 2,760,815 | 1,173,758 | 1,587,057 | 1,442,981 |

Confidential

PFEIFFER 000335

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# LIABILITIES, SURPLUS AND OTHER FUNDS

| | 1<br>Current<br>Statement Date | 2<br>December 31,<br>Prior Year |
|---|---|---|
| 1. Losses (current accident year $                    ) | 4,008,527,460 | 3,863,104,248 |
| 2. Reinsurance payable on paid losses and loss adjustment expenses | | 0 |
| 3. Loss adjustment expenses | 35,768,311 | 33,325,348 |
| 4. Commissions payable, contingent commissions and other similar charges | | 0 |
| 5. Other expenses (excluding taxes, licenses and fees) | 11,541,272 | 8,112,318 |
| 6. Taxes, licenses and fees (excluding federal and foreign income taxes) | 152,433 | 2,895 |
| 7.1 Current federal and foreign income taxes (including $                    on realized capital gains (losses)) | 145,270 | 142,560 |
| 7.2 Net deferred tax liability | | 0 |
| 8. Borrowed money $                    and interest thereon $ | | 0 |
| 9. Unearned premiums (after deducting unearned premiums for ceded reinsurance of $                    and including warranty reserves of $                    and accrued accident and health experience rating refunds including $                    for medical loss ratio rebate per the Public Health Service Act) | 170,397,205 | 172,151,354 |
| 10. Advance premium | | 0 |
| 11. Dividends declared and unpaid: | | |
| 11.1 Stockholders | | 0 |
| 11.2 Policyholders | | 0 |
| 12. Ceded reinsurance premiums payable (net of ceding commissions) | 0 | 351,165 |
| 13. Funds held by company under reinsurance treaties | | 0 |
| 14. Amounts withheld or retained by company for account of others | | 0 |
| 15. Remittances and items not allocated | | 0 |
| 16. Provision for reinsurance (including $                    certified) | | 0 |
| 17. Net adjustments in assets and liabilities due to foreign exchange rates | | 0 |
| 18. Drafts outstanding | | 0 |
| 19. Payable to parent, subsidiaries and affiliates | | 0 |
| 20. Derivatives | | 0 |
| 21. Payable for securities | 7,124,651 | 10,738,078 |
| 22. Payable for securities lending | | 0 |
| 23. Liability for amounts held under uninsured plans | | 0 |
| 24. Capital notes $                    and interest thereon $ | | 0 |
| 25. Aggregate write-ins for liabilities | 569,993,557 | 543,821,629 |
| 26. Total liabilities excluding protected cell liabilities (Lines 1 through 25) | 4,803,650,159 | 4,631,749,595 |
| 27. Protected cell liabilities | | 0 |
| 28. Total liabilities (Lines 26 and 27) | 4,803,650,159 | 4,631,749,595 |
| 29. Aggregate write-ins for special surplus funds | 0 | 0 |
| 30. Common capital stock | 15,000,000 | 15,000,000 |
| 31. Preferred capital stock | 300,000,000 | 300,000,000 |
| 32. Aggregate write-ins for other than special surplus funds | 0 | 0 |
| 33. Surplus notes | | |
| 34. Gross paid in and contributed surplus | 439,879,466 | 439,879,466 |
| 35. Unassigned funds (surplus) | (3,480,991,686) | (3,365,792,570) |
| 36. Less treasury stock, at cost: | | |
| 36.1                    shares common (value included in Line 30 $                    ) | | 0 |
| 36.2                    shares preferred (value included in Line 31 $                    ) | | 0 |
| 37. Surplus as regards policyholders (Lines 29 to 35, less 36) | (2,726,112,220) | (2,610,913,104) |
| 38. Totals (Page 2, Line 28, Col. 3) | 2,077,537,939 | 2,020,836,491 |
| DETAILS OF WRITE-INS | | |
| 2501. Contingency Reserve | 569,993,557 | 543,821,629 |
| 2502. | | |
| 2503. | | |
| 2598. Summary of remaining write-ins for Line 25 from overflow page | 0 | 0 |
| 2599. Totals (Lines 2501 through 2503 plus 2598) (Line 25 above) | 569,993,557 | 543,821,629 |
| 2901. | | |
| 2902. | | |
| 2903. | | |
| 2998. Summary of remaining write-ins for Line 29 from overflow page | 0 | 0 |
| 2999. Totals (Lines 2901 through 2903 plus 2998) (Line 29 above) | 0 | 0 |
| 3201. | | |
| 3202. | | |
| 3203. | | |
| 3298. Summary of remaining write-ins for Line 32 from overflow page | 0 | 0 |
| 3299. Totals (Lines 3201 through 3203 plus 3298) (Line 32 above) | 0 | 0 |

Confidential

PFEIFFER 000336

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# STATEMENT OF INCOME

| | 1 Current Year to Date | 2 Prior Year to Date | 3 Prior Year Ended December 31 |
|---|---|---|---|
| **UNDERWRITING INCOME** | | | |
| 1. Premiums earned: | | | |
| 1.1 Direct (written $ ........... 9,158,678 ) | 57,842,294 | 45,072,285 | 193,158,578 |
| 1.2 Assumed (written $ ........... ) | | 0 | |
| 1.3 Ceded (written $ ........... (10,472,440) ) | 36,435,448 | 22,658,248 | 122,250,633 |
| 1.4 Net (written $ ........... 19,631,118 ) | 21,406,846 | 22,414,037 | 70,907,945 |
| **DEDUCTIONS:** | | | |
| 2. Losses incurred (current accident year $ ........... ): | | | |
| 2.1 Direct | 64,042,552 | 174,843,939 | (1,001,790,415) |
| 2.2 Assumed | | 0 | |
| 2.3 Ceded | (37,162,816) | 4,439,227 | (29,243,796) |
| 2.4 Net | 101,205,368 | 170,404,712 | (972,546,619) |
| 3. Loss adjustment expenses incurred | 8,027,713 | (1,086,584) | (5,012,487) |
| 4. Other underwriting expenses incurred | 10,282,072 | 15,590,915 | 53,504,262 |
| 5. Aggregate write-ins for underwriting deductions | 0 | 0 | 0 |
| 6. Total underwriting deductions (Lines 2 through 5) | 119,495,153 | 184,909,043 | (924,054,844) |
| 7. Net income of protected cells | | | |
| 8. Net underwriting gain (loss) (Line 1 minus Line 6 + Line 7) | (98,088,307) | (162,495,006) | 994,962,789 |
| **INVESTMENT INCOME** | | | |
| 9. Net investment income earned | 12,153,838 | 11,098,699 | 46,994,931 |
| 10. Net realized capital gains (losses) less capital gains tax of $ | (3,297,368) | (383,394) | 5,220,362 |
| 11. Net investment gain (loss) (Lines 9 + 10) | 8,856,470 | 10,715,305 | 52,215,293 |
| **OTHER INCOME** | | | |
| 12. Net gain or (loss) from agents' or premium balances charged off (amount recovered $ ........... amount charged off $ ........... ) | | 0 | 0 |
| 13. Finance and service charges not included in premiums | | 0 | 0 |
| 14. Aggregate write-ins for miscellaneous income | 2,811,219 | 4,594,179 | 18,956,245 |
| 15. Total other income (Lines 12 through 14) | 2,811,219 | 4,594,179 | 18,956,245 |
| 16. Net income before dividends to policyholders, after capital gains tax and before all other federal and foreign income taxes (Lines 8 + 11 + 15) | (86,420,618) | (147,185,522) | 1,066,134,327 |
| 17. Dividends to policyholders | | 0 | 0 |
| 18. Net income, after dividends to policyholders, after capital gains tax and before all other federal and foreign income taxes (Line 16 minus Line 17) | (86,420,618) | (147,185,522) | 1,066,134,327 |
| 19. Federal and foreign income taxes incurred | 88,823 | (476,188) | (324,957) |
| 20. Net income (Line 18 minus Line 19)(to Line 22) | (86,509,441) | (146,709,334) | 1,066,459,284 |
| **CAPITAL AND SURPLUS ACCOUNT** | | | |
| 21. Surplus as regards policyholders, December 31 prior year | (2,610,913,104) | (3,557,076,095) | (3,557,076,095) |
| 22. Net income (from Line 20) | (86,509,441) | (146,709,334) | 1,066,459,284 |
| 23. Net transfers (to) from Protected Cell accounts | | 0 | 0 |
| 24. Change in net unrealized capital gains or (losses) less capital gains tax of $ | 2,849,708 | | |
| 25. Change in net unrealized foreign exchange capital gain (loss) | (4,136,331) | 452,603 | 1,362,687 |
| 26. Change in net deferred income tax | | 0 | 0 |
| 27. Change in nonadmitted assets | (1,231,124) | 93,398 | 1,978,482 |
| 28. Change in provision for reinsurance | | 8,336 | 1,132,135 |
| 29. Change in surplus notes | | 0 | 0 |
| 30. Surplus (contributed to) withdrawn from protected cells | | 0 | 0 |
| 31. Cumulative effect of changes in accounting principles | | 0 | 0 |
| 32. Capital changes: | | | |
| 32.1 Paid in | | 0 | 0 |
| 32.2 Transferred from surplus (Stock Dividend) | | 0 | 0 |
| 32.3 Transferred to surplus | | 0 | 0 |
| 33. Surplus adjustments: | | | |
| 33.1 Paid in | | 0 | 0 |
| 33.2 Transferred to capital (Stock Dividend) | | 0 | 0 |
| 33.3 Transferred from capital | | 0 | 0 |
| 34. Net remittances from or (to) Home Office | | 0 | 0 |
| 35. Dividends to stockholders | | 0 | 0 |
| 36. Change in treasury stock | | 0 | 0 |
| 37. Aggregate write-ins for gains and losses in surplus | (26,171,928) | (29,281,249) | (114,769,607) |
| 38. Change in surplus as regards policyholders (Lines 22 through 37) | (115,199,116) | (175,436,246) | 956,162,991 |
| 39. Surplus as regards policyholders, as of statement date (Lines 21 plus 38) | (2,726,112,220) | (3,742,512,341) | (2,610,913,104) |
| **DETAILS OF WRITE-INS** | | | |
| 0501. | | | |
| 0502. | | | |
| 0503. | | | |
| 0598. Summary of remaining write-ins for Line 5 from overflow page | 0 | 0 | 0 |
| 0599. TOTALS (Lines 0501 through 0503 plus 0598) (Line 5 above) | 0 | 0 | 0 |
| 1401. Other Income | 58,329 | 181,584 | 819,301 |
| 1402. Salvage and Subrogation Income | 2,752,890 | 4,412,595 | 18,136,944 |
| 1403. | | | |
| 1498. Summary of remaining write-ins for Line 14 from overflow page | 0 | 0 | 0 |
| 1499. TOTALS (Lines 1401 through 1403 plus 1498) (Line 14 above) | 2,811,219 | 4,594,179 | 18,956,245 |
| 3701. (Increase) / decrease in contingency reserve | (26,171,928) | (29,281,249) | (114,769,607) |
| 3702. | | | |
| 3703. | | | |
| 3798. Summary of remaining write-ins for Line 37 from overflow page | 0 | 0 | 0 |
| 3799. TOTALS (Lines 3701 through 3703 plus 3798) (Line 37 above) | (26,171,928) | (29,281,249) | (114,769,607) |

Confidential

PFEIFFER 000337

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# CASH FLOW

| | 1<br>Current Year<br>To Date | 2<br>Prior Year To Date | 3<br>Prior Year Ended<br>December 31 |
|---|---|---|---|
| **Cash from Operations** | | | |
| 1.   Premiums collected net of reinsurance | 18,942,494 | 13,774,563 | 72,556,250 |
| 2.   Net investment income | 11,881,152 | 12,282,869 | 55,130,309 |
| 3.   Miscellaneous income | 2,811,219 | 4,594,179 | 18,956,245 |
| 4.   Total (Lines 1 to 3) | 33,634,865 | 30,651,611 | 146,642,804 |
| 5.   Benefit and loss related payments | (38,633,094) | 5,892,416 | 119,344,741 |
| 6.   Net transfers to Separate Accounts, Segregated Accounts and Protected Cell Accounts | 0 | 0 | 0 |
| 7.   Commissions, expenses paid and aggregate write-ins for deductions | 7,307,030 | 15,228,028 | 55,721,999 |
| 8.   Dividends paid to policyholders | 0 | 0 | 0 |
| 9.   Federal and foreign income taxes paid (recovered) net of $ .............................. tax on capital gains (losses) | 86,113 | 3,801 | 326,528 |
| 10.  Total (Lines 5 through 9) | (31,239,951) | 21,124,245 | 175,393,268 |
| 11.  Net cash from operations (Line 4 minus Line 10) | 64,874,816 | 9,527,366 | (28,750,464) |
| **Cash from Investments** | | | |
| 12.  Proceeds from investments sold, matured or repaid: | | | |
| 12.1 Bonds | 63,848,984 | 32,725,748 | 171,299,783 |
| 12.2 Stocks | 0 | 213,587 | 9,569,087 |
| 12.3 Mortgage loans | 0 | 0 | 0 |
| 12.4 Real estate | 0 | 0 | 0 |
| 12.5 Other invested assets | 1,242,171 | 197,888 | 1,256,706 |
| 12.6 Net gains or (losses) on cash, cash equivalents and short-term investments | 39,403 | 0 | 7,180 |
| 12.7 Miscellaneous proceeds | 0 | 0 | 1,991,839 |
| 12.8 Total investment proceeds (Lines 12.1 to 12.7) | 65,130,558 | 33,137,223 | 184,124,595 |
| 13.  Cost of investments acquired (long-term only): | | | |
| 13.1 Bonds | 220,870,155 | 33,068,321 | 404,755,159 |
| 13.2 Stocks | 0 | 0 | 0 |
| 13.3 Mortgage loans | 0 | 0 | 0 |
| 13.4 Real estate | 0 | 0 | 0 |
| 13.5 Other invested assets | 0 | 184,694 | 0 |
| 13.6 Miscellaneous applications | 3,950,611 | 4,336,643 | 0 |
| 13.7 Total investments acquired (Lines 13.1 to 13.6) | 224,820,766 | 37,589,658 | 404,755,159 |
| 14.  Net increase (or decrease) in contract loans and premium notes | 0 | 0 | 0 |
| 15.  Net cash from investments (Line 12.8 minus Line 13.7 and Line 14) | (159,690,208) | (4,452,435) | (220,630,564) |
| **Cash from Financing and Miscellaneous Sources** | | | |
| 16.  Cash provided (applied): | | | |
| 16.1 Surplus notes, capital notes | 0 | 0 | 0 |
| 16.2 Capital and paid in surplus, less treasury stock | 0 | 0 | 0 |
| 16.3 Borrowed funds | 0 | 0 | 0 |
| 16.4 Net deposits on deposit-type contracts and other insurance liabilities | 0 | 0 | 0 |
| 16.5 Dividends to stockholders | 0 | 0 | 0 |
| 16.6 Other cash provided (applied) | (133,504) | (1,119) | (311,338) |
| 17.  Net cash from financing and miscellaneous sources (Line 16.1 through Line 16.4 minus Line 16.5 plus Line 16.6) | (133,504) | (1,119) | (311,338) |
| **RECONCILIATION OF CASH, CASH EQUIVALENTS AND SHORT-TERM INVESTMENTS** | | | |
| 18.  Net change in cash, cash equivalents and short-term investments (Line 11, plus Lines 15 and 17) | (94,948,896) | 5,073,812 | (249,692,366) |
| 19.  Cash, cash equivalents and short-term investments: | | | |
| 19.1 Beginning of year | 685,075,451 | 934,767,817 | 934,767,817 |
| 19.2 End of period (Line 18 plus Line 19.1) | 590,126,555 | 939,841,629 | 685,075,451 |

Confidential

PFEIFFER 000338

# NOTES TO FINANCIAL STATEMENTS

**Organization and Background**

Financial Guaranty Insurance Company (the "Company" or "FGIC"), a wholly owned subsidiary of FGIC Corporation ("FGIC Corp."), is a New York stock insurance corporation regulated by the New York State Department of Financial Services (the "NYSDFS"), which assumed the functions and authority of the New York State Insurance Department (the "NYSID") on October 3, 2011. The Company provided financial guaranty insurance and other forms of credit enhancement for public finance and structured finance obligations. FGIC UK Limited ("FGIC UK Ltd.") is a wholly owned United Kingdom insurance subsidiary of FGIC that was engaged in the business of writing financial guaranties in the United Kingdom and in other European Union member countries.

Based on FGIC's reported statutory surplus deficit as of September 30, 2009, on November 24, 2009, the NYSID issued an order pursuant to Section 1310 of the New York Insurance Law (the "Insurance Law") requiring FGIC, effective that day, to suspend paying any and all claims, not to write any new policies and to operate only in the ordinary course of business and as necessary to effectuate its plan to eliminate its policyholders' surplus deficit. FGIC developed a comprehensive surplus restoration plan that it submitted to the NYSID, but ultimately FGIC was unable to implement the plan and eliminate its policyholders' surplus deficit.

On June 28, 2012, the Supreme Court of the State of New York (the "Rehabilitation Court") issued an order of rehabilitation pursuant to Article 74 of the Insurance Law ("Article 74") placing FGIC in rehabilitation (see Note 21).

FGIC Corp. reorganized under Chapter 11 of the United States Bankruptcy Code from August 3, 2010 until emergence on April 19, 2013 (the "Chapter 11 Effective Date"). On the Chapter 11 Effective Date, the transactions contemplated under the Plan of Reorganization for FGIC Corp. (the "Reorganization Plan") were consummated. None of the subsidiaries or affiliates of FGIC Corp., including FGIC, were subject to FGIC Corp.'s Chapter 11 case.

## Note 1 - Summary of Significant Accounting Policies

The March 31, 2013 quarterly statement should be read in conjunction with FGIC's 2012 annual statement, including the notes therein. The December 31, 2012 balance sheet was derived from audited financial statements, but does not include all disclosures required by SAP for annual periods.

Certain amounts have been reclassified in prior years' financial statements to conform to the current presentation.

Effective for quarterly and annual periods beginning January 1, 2012, the NAIC adopted Statement of Statutory Accounting Principles ("SSAP") No. 101, *Income Taxes, A Replacement of SSAP No. 10R and SSAP No. 10* ("SSAP 101"). SSAP 101 increases the level of conservatism in the accounting for tax loss contingencies, eliminates the deferred tax asset eligibility test in SSAP No. 10R, and significantly alters each of the three components of the admissibility limitation. The adoption of SSAP 101 did not impact the Company's statutory surplus.

## Note 2 - Accounting Changes and Correction of Errors

None.

## Note 3 - Business Combinations and Goodwill

None.

## Note 4 - Discontinued Operations

None.

6

                                                                                          **PFEIFFER 000339**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

## Note 5 - Investments

The amortized cost and fair value of admitted investments in bonds, preferred stock and short-term investments are as follows:

| | Amortized Cost | Gross Unrealized Holding Gains | Gross Unrealized Holding Losses | Fair Value |
|---|---|---|---|---|
| | *In thousands* | | | |
| **March 31, 2013** | | | | |
| Obligations of states and political subdivisions | $   795,587 | $   49,442 | $   – | $   845,029 |
| Asset- and mortgage-backed securities | 413,772 | 21,143 | – | 434,915 |
| U.S. Treasury securities and obligations of U.S. Government corporations and agencies | 38,493 | 9,742 | – | 48,235 |
| Debt securities issued by foreign governments | 30,169 | 621 | – | 30,790 |
| Corporate | 167,286 | 9,338 | – | 176,624 |
| Total bonds | 1,445,307 | 90,286 | – | 1,535,593 |
| Other invested assets | 21,129 | 38,201 | – | 59,330 |
| Short-term investments | 581,649 | – | – | 581,649 |
| Total | $   2,048,085 | $   128,487 | $   – | $   2,176,572 |

| | Amortized Cost | Gross Unrealized Holding Gains | Gross Unrealized Holding Losses | Fair Value |
|---|---|---|---|---|
| | *In thousands* | | | |
| **December 31, 2012** | | | | |
| Obligations of states and political subdivisions | $   723,948 | $   52,946 | $   – | $   776,894 |
| Asset- and mortgage-backed securities | 359,532 | 24,219 | – | 383,751 |
| U.S. Treasury securities and obligations of U.S. Government corporations and agencies | 38,533 | 10,576 | – | 49,109 |
| Debt securities issued by foreign governments | 31,899 | 528 | – | 32,427 |
| Corporate | 142,139 | 10,140 | – | 152,279 |
| Total bonds | 1,296,051 | 98,409 | – | 1,394,460 |
| Other invested assets | 22,371 | 33,551 | – | 55,922 |
| Short-term investments | 676,681 | – | – | 676,681 |
| Total | $   1,995,103 | $   131,960 | $   – | $   2,127,063 |

The Company has determined either that it does not intend to hold certain fixed income securities until their fair value exceeds their amortized cost or that it intends to sell, or it is more likely than not that the Company will be required to sell, certain fixed income securities before recovery of their amortized cost basis. The Company has recorded other-than-temporary impairment losses of $4.0 million and $0.4 million on its fixed income securities for the three month period ended March 31, 2013 and 2012, respectively. These losses are included in "Net realized capital gains or losses net of tax" in the Statements of Operations and represent the difference between the amortized cost basis of these securities and their fair value at the balance sheet date.

The amortized cost and fair value of investments in bonds at March 31, 2013, by contractual maturity date, are shown below. Expected maturities may differ from contractual maturities because borrowers may have the right to call or prepay obligations with or without call or prepayment penalties.

Confidential

PFEIFFER 000340

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

| | Amortized Cost | Fair Value |
|---|---|---|
| | *In thousands* | |
| Due in one year | $ 31,471 | $ 31,688 |
| Due after one year through five years | 168,196 | 177,537 |
| Due after five years through ten years | 322,045 | 341,577 |
| Due after ten years | 509,823 | 549,877 |
| Asset- and mortgage-backed securities | 413,772 | 434,914 |
| Total | $ 1,445,307 | $ 1,535,593 |

Net investment income of the Company was derived from the following sources.

| | Three Months Ended March 31, | |
|---|---|---|
| | 2013 | 2012 |
| | *In thousnads* | |
| Income from bonds | $ 11,062 | $ 9,745 |
| Income from preferred stocks | - | 49 |
| Income from cash, cash equivalents and short-term investments | 1,676 | 1,779 |
| Total investment income | 12,738 | 11,573 |
| Investment expenses | (584) | (474) |
| Net investment income | $ 12,154 | $ 11,099 |

For the three month period ended March 31, 2013 there were $28.8 million sales of investments in bonds carried at amortized cost. For the three month period ended March 31, 2012 there were no sales of investments in bonds. For the three month period ended March 31, 2013 and 2012, gross realized gains of $0.4 million and $0, respectively, were realized on such sales.

Investments in cash, cash equivalents, short-term investments and bonds carried at amortized cost of $24.0 million and $24.2 million as of March 31, 2013 and December 31, 2012, respectively, were on deposit with various regulatory authorities.

The non-admitted carrying values of the Company's investment in the equity of subsidiaries were $0.4 million and $0 at March 31, 2013 and 2012, respectively. Included in the change in net unrealized gains or losses for the three month period ended March 31, 2013 and 2012 were $2.8 million and losses of $0, respectively, related to the change in carrying values of the Company's investments in subsidiaries.

## Note 6 - Joint Ventures, Partnerships and Limited Liability Companies

None.

## Note 7 - Investment Income

No significant changes from 2012 Notes to Financial Statements.

## Note 8 - Derivative Investments

None.

Confidential                                                                                        PFEIFFER 000341

# NOTES TO FINANCIAL STATEMENTS

## Note 9 – Income Taxes

The Company files a consolidated U.S. federal income tax return with FGIC Corp. The method of allocation between FGIC Corp. and FGIC is determined under an amended and restated income tax allocation agreement approved by the NYSDFS, and is based upon separate return calculations.

The following is a reconciliation of current federal income taxes computed on loss before provision for federal and foreign income taxes at the statutory rate and the provision for current federal income taxes.

| | Three Months Ended March 31, | |
|---|---|---|
| | **2013** | 2012 |
| | *In thousands* | |
| Income tax benefit computed on loss before provision for federal and foreign income taxes, at the statutory rate | **$ (30,195)** | $   (50,401) |
| Tax effect of: | | |
| Tax-exempt interest | **(2,052)** | (1,687) |
| Change in valuation allowance | **32,556** | 51,828 |
| Other, net | **(220)** | (216) |
| Expense (benefit) for federal and foreign income taxes | **$      89** | $       (476) |

The composition of total tax expense (benefit) for the three month period ended March 31, 2013 and 2012 is as follows:

| | Three Months Ended March 31, | |
|---|---|---|
| | **2013** | 2012 |
| | *In thousands* | |
| Current: | | |
| Federal | **$        –** | $        – |
| Foreign | **89** | (476) |
| Federal and foreign income tax expense (benefit) | **$      89** | $     (476) |

There was no change in net deferred income taxes, inclusive of non-admitted assets, for the three month period ended March 31, 2013 and 2012.

As of March 31, 2013, the Company had a domestic net operating loss ("NOL") carryforward of $4.2 billion for federal income tax purposes, which will be available (subject to the limitations discussed below) to offset future taxable income. If not used, the NOL will start expiring in 2027 through 2031 depending on the originating year.

FGIC's ability to utilize its NOLs will be limited if an "ownership change" under Section 382 of the Internal Revenue Code ("Section 382") were to occur. Section 382 limits the ability of a corporation that experiences an ownership change to utilize its NOLs and certain built-in losses after the ownership change. An ownership change is generally any change in ownership of more than 50 percentage points of a corporation's stock over a rolling 3-year period. Generally under Section 382, upon an ownership change, the amount of taxable income that a corporation can offset by its "pre-change losses" (which include its NOLs) is restricted to an annual amount equal to the equity value of the corporation immediately prior to the ownership change multiplied by the long-term tax-exempt rate.

Notwithstanding Section 382's restriction on a corporation's use of NOLs, Section 382 provides significant relief to a corporation if an ownership change occurs in the context of a Chapter 11 case. Specifically, section 382(l)(5) of the Internal Revenue Code provides that a corporation under the jurisdiction of a court in a Chapter 11 case is not subject to the general limitations imposed by Section 382 if historic stockholders and/or the corporation's "qualified creditors" own at least 50% of the total value and voting power of the corporation's stock after the ownership change occurs (the "Section 382(l)(5) Exception"). The ownership change of FGIC Corp. and FGIC that occurred on the Chapter 11 Effective Date when the then existing

6.3

Confidential                                                                                    PFEIFFER 000342

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

equity in FGIC Corp. was cancelled and creditors of FGIC Corp. acquired the new equity of reorganized FGIC Corp., qualified for the Section 382(l)(5) Exception.

The amount of federal income taxes incurred and available for recoupment in the event of future losses is $0.

In accordance with SSAP 101, *Income Taxes, A Replacement of SSAP No. 10R and SSAP No. 10* ("SSAP 101"), the Company evaluates its deferred income tax asset to determine if valuation allowances are required. SSAP 101 requires that companies assess whether valuation allowances should be established based on the consideration of all available evidence using a "more likely than not" standard. In making such judgments, significant weight is given to evidence that can be objectively verified. Management believes it is more likely than not that the amortization of the net unearned premium reserve, collection of future installment premiums on contracts already written, and income from the investment portfolio will not generate sufficient taxable income to realize the entire deferred tax asset that currently exists. Accordingly, a full valuation allowance was established against the Company's domestic net deferred tax asset of $1.7 billion as of March 31, 2013. The Company will continue to analyze the need for a valuation allowance on a quarterly basis.

The following table presents the total of deferred tax assets and liabilities by tax character:

| | March 31, 2013 | December 31, 2012 |
|---|---|---|
| | *In thousands* | |
| Deferred tax assets: | | |
| Ordinary income | $   1,689,181 | $   1,658,034 |
| Capital losses | 12,020 | 10,610 |
| Gross deferred tax asset | 1,701,201 | 1,668,644 |
| | | |
| Valuation allowance | (1,699,536) | (1,666,384) |
| Adjusted deferred tax asset | 1,665 | 2,260 |
| Nonadmitted adjusted deferred tax asset | – | – |
| Total admitted gross deferred tax asset | 1,665 | 2,260 |
| | | |
| Deferred tax liabilities: | | |
| Ordinary income | (1,266) | (1,266) |
| Capital gains | (399) | (994) |
| Total gross deferred tax liability | (1,665) | (2,260) |
| Net admitted deferred tax asset | $          – | $          – |

Confidential

PFEIFFER 000343

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

The tax effects of temporary differences that give rise to significant portions of the net deferred tax asset at March 31, 2013 and December 31, 2012 are presented below by tax component:

|  | March 31, 2013 | December 31, 2012 |
|---|---|---|
|  | *In thousands* | |
| Deferred tax assets: | | |
| Premiums revenue recognition | $    6,406 | $    7,659 |
| Net operating loss carryforward | 1,457,289 | 1,425,177 |
| Impairment losses on investments | 10,524 | 9,122 |
| Losses-salvage and subrogation recoverable | 219,851 | 219,851 |
| Other | 7,131 | 6,835 |
| Gross deferred tax asset | 1,701,201 | 1,668,644 |
|  | | |
| Valuation allowance | (1,699,536) | (1,666,384) |
| Adjusted deferred tax asset | 1,665 | 2,260 |
| Nonadmitted adjusted deferred tax asset | – | – |
| Total admitted gross deferred tax asset | 1,665 | 2,260 |
|  | | |
| Deferred tax liabilities: | | |
| Foreign currency | (284) | (879) |
| Discount on bonds and other | (1,381) | (1,381) |
| Total gross deferred tax liability | (1,665) | (2,260) |
| Net admitted deferred tax asset | $    – | $    – |

## Note 10 – Parent, Subsidiaries and Affiliates

No significant changes from 2012 Notes to Financial Statements.

## Note 11 - Debt

None.

## Note 12 - Retirement Plans, Deferred Compensation and Other Postretirement Benefit Plans

No significant changes from 2012 Notes to Financial Statements.

## Note 13 - Capital and Surplus and Shareholders' and Policyholders' Dividend Restrictions

FGIC was in a policyholders' surplus deficit position of approximately $2.7 billion and $2.6 billion at March 31, 2013 and December 31, 2012, respectively. See Note 21 for further information.

In addition, as of March 31, 2013, FGIC's aggregate net liability under its insured exposures continued to exceed the aggregate risk limit prescribed by the Insurance Law and FGIC's insured exposure under certain individual policies continued to exceed the applicable single risk limits prescribed by the Insurance Law.

FGIC's ability to pay dividends on its common stock and on its preferred stock to the holders thereof is subject to restrictions contained in the Insurance Law. Due to FGIC's statutory earned surplus deficit at March 31, 2013, FGIC does not currently have the capacity to pay dividends on its common stock or preferred stock. See Note 21 for additional information.

Confidential                                                                                   PFEIFFER 000344

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

## Note 14 - Contingencies

In City of Phoenix v. Ambac Financial Group, Inc., et al. (United States District Court, District of Arizona, filed on or about March 11, 2010), FGIC, MBIA Insurance Corporation ("MBIA"), and Ambac Assurance Corporation ("Ambac") are named as defendants in a lawsuit in which the plaintiff asserts causes of action based principally on the defendants' alleged violations of Arizona insurance law prohibiting unfair discrimination in the rate or amount of premium charged. FGIC filed an answer to the complaint in May 2010. Fact discovery has been completed. Plaintiff has explicitly acknowledged that it is bound by the Rehabilitation Order (as defined in Note 21 below) and that the Rehabilitation Order has effected a stay of plaintiff's litigation against FGIC. Plaintiff and FGIC have, therefore, agreed that neither party will pursue expert discovery or engage in motion practice against each other until such time as the injunction in the Rehabilitation Order is lifted. On November 29, 2012, FGIC filed a notice of acknowledgment of injunction with the court.

In Wilson v. JP Morgan Chase & Co., et al. (Circuit Court of Jefferson County, Alabama, filed on or about June 17, 2008), FGIC and a number of other defendants were named in a purported class action case on behalf of customers that paid for sewer service within Jefferson County, Alabama ("Jefferson County"), since January 1, 1993. The complaint alleges, inter alia, that the Jefferson County Commissioners, in a conspiracy with several individuals, financial companies, law firms and bond insurers, refinanced certain fixed-rate sewer system warrants with a combination of variable rate and auction rate sewer system warrants that were hedged by interest rate swaps. These transactions, the complaint alleges, were purportedly done to facilitate the payment of fees to several bond brokers and financial advisors that in turn were paid to certain Jefferson County officials. With respect to the bond insurers, including FGIC, the most recent amended complaint alleges, inter alia, that the bond insurers were undercapitalized and failed to make payments to certain holders following Jefferson County's payment default on certain of its sewer system warrants. The plaintiffs seek rescission of the warrants and a declaration "that payments pursuant to all contracts for insurance and reinsurance be honored and payment thereunder be used for the use and benefit of the rate payers to the Jefferson County sewer system." FGIC's and the other defendants' motions to dismiss the complaint for lack of standing were denied in January 2011. On December 15, 2011, based upon FGIC's filing for removal of the case, the case was transferred to the U.S. Bankruptcy Court for the Northern District of Alabama, Southern Division, which is hearing the Chapter 9 bankruptcy proceeding commenced by Jefferson County (the "Chapter 9 Proceeding"). On December 22, 2011, FGIC filed an answer to the complaint. On April 10, 2013, the bankruptcy judge stayed the case during the pendency of the Chapter 9 Proceeding.

In Bennett, et al. v. Jefferson County, et al. filed on or about September 6, 2012, and thereafter amended (Case No. 11-05736-TBB9, Adv. No. 12-00120-TBB), in the U.S. Bankruptcy Court for the Northern District of Alabama, Southern Division, plaintiffs commenced a purported class action adversary proceeding within the Chapter 9 Proceeding against FGIC and certain other defendants on behalf of Jefferson County sewer system ratepayers. Plaintiffs are seeking, inter alia, declaratory judgments invalidating certain Jefferson County sewer system warrants (certain of which are insured by FGIC) and/or the liens on sewer system revenues securing such warrants and monetary damages relating thereto. On November 19, 2012, FGIC and certain other defendants filed a motion to dismiss the case on the basis of, inter alia, plaintiffs' standing. At a December 6, 2012 status conference in the Chapter 9 Proceeding, the plaintiffs voluntarily dismissed (with prejudice) all monetary damage claims against FGIC and the other defendants. On April 4, 2013, plaintiffs filed a second amended complaint that omitted FGIC as a defendant.

In Museum Associates, dba Los Angeles County Museum of Art v. Financial Guaranty Insurance Co. (United States District Court for the Central District of California, filed on or about November 4, 2008), plaintiff alleges, inter alia, that it incurred increased interest costs in respect of its FGIC-insured auction rate securities as a result of misrepresentations by FGIC concerning its exposure to securities backed by residential mortgages and the risk of a downgrade of FGIC's credit ratings. The case has been stayed voluntarily by the parties since early 2010.

In April 2009, a monoline insurance company from which FGIC assumed certain risks under a facultative reinsurance agreement demanded arbitration to resolve certain disputes relating to the reinsurance agreement and such company's demand for a $46 million termination payment from FGIC. The arbitration has been dormant since early 2010.

FGIC has received various regulatory inquiries, requests for information and document preservation letters. In addition, FGIC is involved from time to time in various routine legal proceedings.

It is not possible to predict whether additional suits will be filed against FGIC, including suits as to which previously filed claims against FGIC have been dismissed, either voluntarily or by an order that has not

6.6

# NOTES TO FINANCIAL STATEMENTS

become final and non-appealable, or whether additional inquiries or requests for information will be made, and it is also not possible to predict the outcome of litigation, inquiries or requests for information. Management is unable to make a meaningful estimate of the amount or range of loss that could result from unfavorable outcomes but, under some circumstances, adverse results in certain proceedings could have a material and adverse impact on FGIC. Additionally, defending against lawsuits and proceedings and responding to inquiries and requests for information may involve significant expense and diversion of management's attention and other FGIC resources.

In addition to the lawsuits described above, FGIC has asserted, and from time to time may assert, claims in legal or arbitration proceedings against third parties to recover losses already incurred by FGIC or to mitigate future losses that FGIC may incur. The amount of losses that FGIC may recover or mitigate as a result of these proceedings is uncertain, although, in the event of favorable outcomes or settlements, such amount could be material to FGIC's results of operations, financial position, profitability or cash flows.

In Financial Guaranty Insurance Co. v. Countrywide Home Loans, Inc. (N.Y. Sup.Ct., Index No. 650736/2009, filed on December 11, 2009) (the "Countrywide Litigation"), FGIC sued Countrywide, alleging fraud and negligent misrepresentation by Countrywide and its affiliates in the origination of several RMBS transactions that closed in 2006 and 2007, and breach of contract in connection with Countrywide's failure to repurchase certain mortgage loans as provided by the operational agreements for those RMBS transactions, as well as a number of other RMBS transactions that closed in the period from 2004 to 2005. On April 30, 2010, FGIC filed an amended complaint adding Countrywide Financial Corp., Countrywide Securities Corporation, Countrywide Bank, FSB, and Bank of America Corporation ("BAC") as defendants. FGIC's complaint in the Countrywide Litigation alleges damages to FGIC in excess of $1 billion.

In February 2010, Countrywide filed a motion to dismiss certain of FGIC's claims in its initial complaint. On June 15, 2010, Countrywide's motion to dismiss was generally denied by the court, but granted with respect to FGIC's claims based on negligent misrepresentation and the breach of the covenant of good faith. The court's ruling on Countrywide's motion to dismiss has become final since, on October 20, 2011, FGIC and Countrywide jointly filed a stipulation withdrawing their respective appeals of the court's ruling on Countrywide's motion to dismiss.

On June 3, 2011, BAC filed a motion for the severance of FGIC's successor liability claim against BAC from FGIC's other claims in this case, and the consolidation of the successor liability claim with similar claims that currently form parts of three other cases brought by bond insurance companies against Countrywide and BAC. On October 31, 2011, the court denied BAC's motion insofar as it applied to discovery, but held in abeyance the motion insofar as it applies to trial of the successor liability claim, until final submission of summary judgment motions on the successor liability claim in FGIC's or any of the other bond insurance companies' cases. BAC appealed the court's decision on BAC's motion to the Appellate Division of the N.Y. Supreme Court; on April 5, 2012, the Appellate Division unanimously affirmed the decision of the lower court.

In November and December 2011, FGIC initiated the following seven actions: (1) Financial Guaranty Insurance Company v. GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation); Ally Bank (f/k/a GMAC Bank); Residential Capital, LLC (f/k/a Residential Capital Corporation) (S.D.N.Y. Case No. 11-cv-9729) (relating to GMACM Series 2006-HE1), which was amended on March 30, 2012, to include allegations against Ally Financial, Inc. (f/k/a GMAC, LLC); (2) Financial Guaranty Insurance Company v. Residential Funding Company, LLC (f/k/a Residential Funding Corporation); Residential Capital, LLC (f/k/a Residential Capital Corporation) (S.D.N.Y. Case No. 11-cv-9737) (relating to RAMP Series 2005-RS9); (3) Financial Guaranty Insurance Company v. Residential Funding Company, LLC (f/k/a Residential Funding Corporation); Residential Capital, LLC (f/k/a Residential Capital Corporation) (S.D.N.Y. Case No. 11-cv-9736) (relating to RFMSII Series 2005-HS1 and RFMSII Series 2005-HS2); (4) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC), Residential Capital, LLC (f/k/a Residential Capital Corporation) and Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (S.D.N.Y. Case No. 12-cv-0341) (relating to RASC Series 2005-EMX5); (5) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential)Capital Corporation) and Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (S.D.N.Y. Case No. 12-cv-0338) (relating to RAMP Series 2005-EFC7); (6) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation) and Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (S.D.N.Y. Case No. 12-cv-0339) (relating to RAMP Series 2005-NC1); and (7) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation) and Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (S.D.N.Y. Case No. 12-cv-0340) (relating to RFMSII Series 2005-HSA1, RFMSII Series 2006-HSA1 and RFMSII Series 2006-HSA2).

Confidential

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

These actions were initiated by FGIC in New York state court, but have been removed to the U.S. District Court for the Southern District of New York.

In January and March 2012, FGIC initiated the following five actions: (1) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) (S.D.N.Y., Case No. 12-cv-0780) (relating to GMACM Series 2005-HE1); (2) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC), Residential Capital, LLC and Residential Funding Company, LLC (S.D.N.Y. Case No. 12-cv-1601) (relating to RASC Series 2007-EMX1); (3) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) (S.D.N.Y., Case No. 12-cv-1658) (relating to GMACM Series 2006-HE3); (4) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC); Residential Capital, LLC (f/k/a Residential Capital Corporation); Ally Bank (f/k/a GMAC Bank); and GMAC Mortgage, LLC (f/k/a GMAC Mortgage Corporation) (S.D.N.Y., Case No. 12-cv-1818) (relating to GMACM Series 2006-HE2 and GMACM Series 2007-HE2); and (5) Financial Guaranty Insurance Company v. Ally Financial, Inc. (f/k/a GMAC LLC), Residential Capital, LLC (f/k/a Residential Capital Corporation) and Residential Funding Company, LLC (f/k/a Residential Funding Corporation) (S.D.N.Y. Case No. 12-cv-1860) (relating to RFMSII Series 2006-HI2, RFMSII Series 2006-HI3, RFMSII Series 2006-HI4, RFMSII Series 2006-HI5 and RFMSII Series 2007-HI1) (together with the aforementioned actions initiated against Ally Financial, Inc. or its affiliates, the "Ally Financial Actions").

In the Ally Financial Actions, FGIC variously alleges against the above entities, with respect to certain RMBS transactions (noted parenthetically in the case descriptions above), inter alia: (i) fraudulent inducement of the subject transactions, (ii) breaches of representations, warranties and affirmative covenants, (iii) breaches of the obligation to repurchase certain mortgage loans, (iv) breaches of the obligation to provide information to, and allow inspection of records by, FGIC, (v) improper transfer of additional mortgage collateral, and (vi) improper amendment of operative agreements.

On May 14, 2012, defendants Residential Capital LLC, Residential Funding Company, LLC, and GMAC Mortgage LLC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. Pursuant to that bankruptcy filing, the Ally Financial Actions as against those defendants were automatically stayed. In addition, FGIC entered into a stipulation with defendants Ally Financial and Ally Bank to stay the Ally Financial Actions as against Ally Financial and Ally Bank, which was approved by the court on July 19, 2012, and which stay was continued through April 30, 2013.

In Financial Guaranty Insurance Company v. The Putnam Advisory Company, LLC (U.S. District Court for the Southern District of New York, filed October 1, 2012 and thereafter amended on November 19, 2012), FGIC sued The Putnam Advisory Company ("Putnam"), alleging fraud, negligent misrepresentation and negligence by Putnam in connection with the Pyxis ABS CDO 2006-1 transaction for which Putnam acted as collateral manager. On December 20, 2012, Putnam moved for dismissal of all of the claims in FGIC's complaint. On February 8, 2013, FGIC filed its opposition to Putnam's motion to dismiss.

In Financial Guaranty Insurance Co. v. Credit Suisse Securities (USA) LLC, et al. (N.Y. Sup.Ct., Index No. 651178/2013, filed on April 2, 2013), FGIC sued Credit Suisse Securities (USA) LLC ("CS Securities") and DLJ Mortgage Capital, Inc. ("DLJ"), alleging, inter alia, that (i) CS Securities and DLJ fraudulently induced FGIC to insure the RMBS transaction known as Home Equity Mortgage Trust 2006-2 and (ii) DLJ breached various representations, warranties and affirmative covenants, including its obligation to repurchase breaching or fraudulent mortgage loans and to reimburse FGIC for payments made under the related FGIC policy.

## Note 15 - Leases

No significant changes from 2012 Notes to Financial Statements.

## Note 16 - Information About Financial Instruments With Off-Balance Sheet Risk And Financial Instruments With Concentrations of Credit Risk

None.

## Note 17 - Sale, Transfer and Servicing of Financial Assets and Extinguishments of Liabilities

None.

Confidential                                                                                      PFEIFFER 000347

# NOTES TO FINANCIAL STATEMENTS

## Note 18 - Gains or Loss to the Reporting Entity from Uninsured A&H Plans and the Uninsured Portion of Partially Insured Plans

None.

## Note 19 - Direct Premiums Written by Managing General Agents/Third Party Administrators

None.

## Note 20 – Fair Value Measurement

No significant SSAP 100 specifies a fair value hierarchy based on whether the inputs to valuation techniques used to measure fair value are observable or unobservable. Observable inputs reflect market data obtained from independent sources, while unobservable inputs reflect the Company's assumptions about market participants' assumptions based on the best information available in the circumstances. In accordance with SSAP 100, the fair value hierarchy prioritizes model inputs into three broad levels: quoted prices for identical instruments in active markets are Level 1 inputs; quoted prices for similar instruments in active markets, quoted prices for identical or similar instruments in markets that are not active, and model-derived valuations in which all significant inputs and significant value drivers are observable in active markets are Level 2 inputs; and model-driven valuations in which one or more significant inputs or significant value drivers are unobservable are Level 3 inputs.

The Company did not report any securities at fair value on the balance sheets as of March 31, 2013 and December 31, 2012.

Confidential                                                    PFEIFFER 000348

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

The fair value of admitted investments in bonds, preferred stock and short-term investments by level are as follows:

| | Level 1 | Level 2 | Level 3 | Admitted Value |
|---|---|---|---|---|
| | | *In thousands* | | |
| **March 31, 2013** | | | | |
| Obligations of states and political subdivisions | $   – | $ 845,029 | $   – | $   795,587 |
| Asset- and mortgage-backed securities | – | 434,915 | – | 413,772 |
| U.S. Treasury securities and obligations of U.S. Government corporations and agencies | – | 48,235 | – | 38,493 |
| Debt securities issued by foreign governments | – | 30,790 | – | 30,169 |
| Corporate | – | 176,624 | – | 167,286 |
| Total bonds | – | 1,535,593 | – | 1,445,307 |
| Other invested assets | – | – | 59,330 | 21,129 |
| Short-term investments | – | 581,649 | – | 581,649 |
| Total | $   – | $2,117,242 | $ 59,330 | $2,048,085 |

| | Level 1 | Level 2 | Level 3 | Admitted Value |
|---|---|---|---|---|
| | | *In thousands* | | |
| **December 31, 2012** | | | | |
| Obligations of states and political subdivisions | $   – | $ 776,894 | $   – | $   723,948 |
| Asset- and mortgage-backed securities | – | 383,751 | – | 359,532 |
| U.S. Treasury securities and obligations of U.S. Government corporations and agencies | – | 49,109 | – | 38,533 |
| Debt securities issued by foreign governments | – | 32,427 | – | 31,899 |
| Corporate | – | 152,279 | – | 142,139 |
| Total bonds | – | 1,394,460 | – | 1,296,051 |
| Other invested assets | – | – | 55,922 | 22,371 |
| Short-term investments | – | 676,681 | – | 676,681 |
| Total | $   – | $2,071,141 | $ 55,922 | $1,995,103 |

Confidential

PFEIFFER 000349

# NOTES TO FINANCIAL STATEMENTS

Level 3 activity during 2013 is as follows:

| | Balance at January 1, 2013 | Transfers In (Level 3) | Transfers Out (Level 3) | Total Gains and (Losses) Included in Net Income | Total Gains and (Losses) Included in Surplus | Purchases, Issuances, Sales and Settlements | Balance at March 31, 2013 |
|---|---|---|---|---|---|---|---|
| | | | | *In thousands* | | | |
| | | | | | | | |
| Other invested assets | $  55,922 | $    – | $    – | $    1,375 | $    2,544 | $    (511) | $    59,330 |
| | $  55,922 | $    – | $    – | $    1,375 | $    2,544 | $    (511) | $    59,330 |

There have been no transfers in and out of Level 3 during the period.

**Bonds, Preferred Stock, Common Stock and Other Invested Assets**

Any of the Company's investments in bonds that are classified as NAIC rated 3 through 6 are recorded at lower of amortized cost or fair value as determined by the Securities Valuation Office. Short-term investments are classified at cost which approximates fair value. Unrealized gains and losses on these investments are recorded as a separate component of surplus.

Because many bonds do not trade on a daily basis, information and other data, including benchmark curves, benchmarking of like securities and matrix pricing, are utilized to value the securities. Inputs to the valuation process include benchmark yields, reported trades, broker/dealer quotes, issuer spreads, two-sided markets, benchmark securities, bids, offers and other reference data. Any investments in preferred or common stock of unaffiliated entities are valued consistent with the method used to value bonds.changes from 2012 Notes to Financial Statements.

**Note 21 - Other Items**

**FGIC Rehabilitation Proceeding**

Based on FGIC's continuing statutory insolvency and its inability to eliminate its policyholders' surplus deficit, on June 11, 2012, the Superintendent of Financial Services of the State of New York (the "Superintendent") filed a verified petition with the Rehabilitation Court for an order of rehabilitation (the "Rehabilitation Order") pursuant to Article 74.

On June 28, 2012, the Rehabilitation Court issued the Rehabilitation Order (i) appointing the Superintendent as rehabilitator of FGIC (the "Rehabilitator"), (ii) directing the Rehabilitator to take possession of the property and assets of FGIC and to conduct the business thereof, and (iii) directing the Rehabilitator to take steps towards the removal of the causes and conditions which have made FGIC's rehabilitation proceeding (the "Rehabilitation Proceeding") necessary. The Rehabilitation Order also provides for certain injunctive relief during the continuation of the Rehabilitation Proceeding. FGIC consented to the commencement of the Rehabilitation Proceeding and, upon such commencement, the board of directors of FGIC resigned. The Rehabilitation Proceeding is currently pending before the Rehabilitation Court, styled as *In the Matter of the Rehabilitation of Financial Guaranty Insurance Company*, Index No. 401265/2012, and is assigned to the Honorable Justice Doris Ling-Cohan.

On September 27, 2012, the Rehabilitator filed with the Rehabilitation Court a proposed Plan of Rehabilitation for FGIC, which was thereafter amended on December 12, 2012 and was further modified on April 12, 2013 as described below (as amended, modified or supplemented to date, the "Rehabilitation Plan"). The goal of the Rehabilitation Plan is to treat FGIC's policyholders in a fair and equitable manner while at the same time removing the causes and conditions that made the Rehabilitation Proceeding necessary. The Rehabilitation Court held a hearing on December 18, 2012, regarding, among other things, the Rehabilitation Plan and outstanding objections filed with the Rehabilitation Court with respect thereto, and to consider approval of the CDS Commutation Agreements (as such term is defined below). The Rehabilitation Court held another hearing on January 15, 2013, and a status conference on February 15, 2013, relating to those objections which remained outstanding. At the February 15, 2013 status conference, the Rehabilitator advised the Rehabilitation Court that he had reached an agreement with certain trustees that had objected to the Rehabilitation Plan regarding certain proposed amended terms of the Rehabilitation Plan and that, subject to the trustees withdrawing their objections, the Rehabilitator would file and seek approval of the agreed upon revisions. On April 12, 2013, such trustees withdrew their objections and the Rehabilitator filed with

**Confidential**                                    **PFEIFFER 000350**

# NOTES TO FINANCIAL STATEMENTS

the Rehabilitation Court the revised Rehabilitation Plan incorporating such amended terms. The Rehabilitator has continued to pursue resolution of certain of the remaining objections, and the Rehabilitation Court adjourned the hearing, which had been scheduled for April 30, 2013, to consider approval of the Rehabilitation Plan, including approval of the Novation Agreement (as such term is defined below), to June 11, 2013 to allow further progress.

In an effort to mitigate its liabilities and increase recoveries for policyholders, as contemplated by the Rehabilitation Plan, FGIC entered into agreements (the "CDS Commutation Agreements") with all counterparties to credit default swaps ("CDS") insured by FGIC whose CDS had not previously been terminated (as well as Société Générale, whose CDS had been terminated but which termination was the subject of litigation between FGIC and Société Générale in the U.S. District Court for the Southern District of New York (*Société Générale v. Financial Guaranty Insurance Co., et al.,* 10 Civ. 0472 (NRB)) (collectively, the "CDS Counterparties"), pursuant to which the CDS Counterparties and FGIC agreed, subject to approval by the Rehabilitation Court and the other terms of such agreements, to terminate all their FGIC-insured CDS and all the related FGIC policies, and to mutually release all related obligations, claims and liabilities, in exchange for payments by FGIC aggregating approximately $176.4 million (the "Payment Amount"). Following the hearing held by the Rehabilitation Court on December 18, 2012, the Rehabilitation Court approved the CDS Commutation Agreements by Order dated December 19, 2012. FGIC paid the Payment Amount pursuant to the CDS Commutation Agreements on December 19, 2012, upon which payment the CDS and the related FGIC policies were terminated and FGIC and the CDS Counterparties were released from all obligations, claims and liabilities thereunder or relating thereto. Accordingly, based on a joint stipulation filed by FGIC and Société Générale following such payment, the litigation referred to above was dismissed by the court with prejudice and without costs.

In a further effort to mitigate its liabilities and increase recoveries for policyholders, as part of the Rehabilitation Plan, FGIC entered into a Novation Agreement dated as of September 14, 2012 (the "Novation Agreement") with National Public Finance Guarantee Corporation ("National Public"), pursuant to which they have agreed, subject to approval by the Rehabilitation Court and the other terms of such agreement, to novate the National Public Reinsured Policies (as defined below) from FGIC to National Public. Pursuant to a Reinsurance Agreement dated as of September 30, 2008, National Public provides FGIC with reinsurance on FGIC policies covering U.S. public finance credits with total NPIF of approximately $107.0 billion as of December 31, 2012 (collectively, the "National Public Reinsured Policies"). However, as the issuer of the National Public Reinsured Policies, FGIC continues to be directly responsible for all obligations under the National Public Reinsured Policies and, as such, FGIC is subject to the risk that National Public is unable or unwilling to perform its reinsurance obligations relating to the National Public Reinsured Policies. Should the proposed novation be approved by the Rehabilitation Court, (i) National Public (rather than FGIC) would thereafter be the issuer of the National Public Reinsured Policies and would be directly responsible for all obligations under the National Public Reinsured Policies and (ii) FGIC would be released from all obligations thereunder.

Although the Rehabilitator believes that the implementation of the Rehabilitation Plan, including consummation of the transactions contemplated by the Novation Agreement, is fair and equitable and in the best interests of FGIC's policyholders and other creditors, there can be no assurance that the Rehabilitation Court will reach the same conclusion and approve the Rehabilitation Plan, that further modifications of the Rehabilitation Plan may not be required for approval thereof (whether based on objections filed with the Rehabilitation Court or otherwise), that approval of the Rehabilitation Plan will not be overturned on appeal or that the Rehabilitator may not of his own initiative withdraw or further modify the Rehabilitation Plan for any reason. Accordingly, no assurance can be given as to whether, when or to what extent any claims may be paid by FGIC.

If the Rehabilitator at any time prior to the effective date of the Rehabilitation Plan (the "Effective Date") determines that efforts to rehabilitate FGIC would be futile, whether pursuant to the Rehabilitation Plan or otherwise, the Rehabilitator may seek to convert the Rehabilitation Proceeding into a liquidation proceeding under Article 74. Such a conversion could materially adversely impact FGIC and the amount and timing of recoveries by FGIC's policyholders.

Should the Rehabilitation Court approve the Rehabilitation Plan, any failure of the Rehabilitation Court to approve the Novation Agreement could cause cash payments pursuant to the Rehabilitation Plan on account of policy claims to be substantially reduced and/or delayed.

Should the Rehabilitation Court approve the Rehabilitation Plan, there can be no assurance as to whether or when all the conditions to the Effective Date will be satisfied or waived by the Rehabilitator. Events that may

6.12

# NOTES TO FINANCIAL STATEMENTS

delay the Effective Date (or prevent it from occurring) include appeals of the Rehabilitation Court's order approving the Rehabilitation Plan.

Should the Effective Date occur, FGIC will emerge from this Rehabilitation Proceeding as a solvent insurance company under the Insurance Law and the Rehabilitation Plan will be the exclusive means for resolving and paying (i) all policy claims, whenever arising, (ii) all other claims arising during, or relating to, the period prior to the Effective Date and (iii) all equity interests in FGIC in existence as of the date of the Rehabilitation Order (June 28, 2012), in each case other than claims (including policy claims) paid in full by FGIC prior to the date of the Rehabilitation Order. Claims arising during or relating to the period on and after the Effective Date (other than policy claims) are not covered by the Rehabilitation Plan and will be resolved and paid by FGIC in the ordinary course of business. Based on the magnitude of FGIC's accrued and projected policy claims, FGIC expects to make payments in cash pursuant to the Rehabilitation Plan of a fractional percentage of its policy claims and it does not expect to make any payments pursuant to the Rehabilitation Plan with respect to non-policy claims (other than in respect of administrative expenses and certain other costs) or equity interests. The percentage of policy claims that FGIC ultimately pays in cash in accordance with the Rehabilitation Plan, and the timing of any such payments, is subject to various factors and the outcome of future events, including any further modifications to the terms, requirements or conditions of the Rehabilitation Plan, the performance of FGIC's insured and investment portfolios and the results of FGIC's litigation and other loss mitigation efforts, and no assurance can be given with respect to the amount of any such percentage or the timing of any such payments.

The summaries of the Rehabilitation Plan included in these financial statements do not include all the specific terms, requirements or conditions of the Rehabilitation Plan. The specific terms, requirements and conditions of the Rehabilitation Plan that is approved by the Rehabilitation Court will govern, rather than any summary description contained in these financial statements.

### Assessment of the Company's Ability to Continue as a Going Concern

As a result of uncertainties associated with the Rehabilitation Plan described in the FGIC Rehabilitation Proceeding section of this Note, including the continuing risk that the Rehabilitator at any time prior to the Effective Date may determine that efforts to rehabilitate the Company would be futile, whether pursuant to the Rehabilitation Plan or otherwise, and may seek to convert the Rehabilitation Proceeding into a liquidation proceeding under Article 74, management has concluded that there is substantial doubt about the ability of the Company to continue as a going concern. The Company's financial statements as of March 31, 2013 and 2012 and for the three month period ended March 31, 2013 and 2012 are prepared assuming the Company continues as a going concern and do not include any adjustment that might result from its inability to continue as a going concern.

### Business Restructuring

In connection with a workforce reduction in 2008, the Company ceased using approximately 50% of its leased office space in 2008. Further, in 2009, the Company ceased using an additional 25% of its leased office space. In February 2010, the Company subleased approximately two-thirds of the unused office space and in June 2012, the remaining unused office space was also subleased.

Beginning in 2008, the Company recorded a liability for the unused leased office space, representing the Company's obligation for the remaining lease term reduced by estimated sublease rentals. The liability is adjusted in each period to reflect revisions to estimated net cash flows. The liability is recorded as a component of "Accounts payable and accrued expenses" on the Balance Sheets and the corresponding (expense) benefit is recorded in "Other underwriting expenses incurred" in the Statements of Operations. "Other underwriting expenses incurred" in the Statements of Operations include a (expense) benefit related to vacated office space for the three month period ended March 31, 2013 and 2012 of $(0.2) million and $0.4 million, respectively.

6.13

                                                                                      **PFEIFFER 000352**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

## Note 22 - Events Subsequent

SSAP No. 9, *Subsequent Events* defines events subsequent to the financial statement date requiring disclosure. The date through which subsequent events have been evaluated was May 10, 2013.

## Note 23 - Reinsurance

No significant changes from 2012 Notes to Financial Statements.

## Note 24 - Retrospectively Rated Contracts & Contracts Subject to Redetermination

None.

## Note 25 - Change in Incurred Losses and Loss Adjustment Expenses

Activity for loss and loss adjustment expenses (LAE) reserves is summarized as follows:

|  | March 31, 2013 | December 31, 2012 |
|---|---|---|
|  | *In thousands* | |
| Net balance at beginning of period | $ 3,896,430 | $ 4,992,866 |
|  |  |  |
| Incurred related to: |  |  |
| Current year | – | 2,710 |
| Prior years | 109,233 | (980,269) |
| Total incurred | 109,233 | (977,559) |
|  |  |  |
| Recovery (paid) related to: |  |  |
| Current year | – | 2 |
| Prior years | 38,633 | (118,879) |
| Total recovery (paid) | 38,633 | (118,877) |
| Net balance at end of period | $ 4,044,296 | $ 3,896,430 |

Loss and LAE reserves have increased to $4.0 billion at March 31, 2013 from $3.9 billion at December 31, 2012. The net loss and loss adjustment expense activity for the first quarter of 2013 was mainly attributable to incurred losses for RMBS backed by first lien mortgage loans driven by steeper LIBOR curves, partially offset by a reinsurance commutation settlement. Loss reserves were discounted at 2.78% and 2.72% at March 31, 2013 and December 31, 2012, respectively. The reserves at March 31, 2013 relate predominantly to RMBS transactions.

Pursuant to applicable reinsurance agreements, upon the commencement of the Rehabilitation Proceeding, the reinsurance assumed by FGIC's reinsurers is payable on the basis of the liability of FGIC under the related reinsured policies, without diminution because of insolvency of FGIC or because FGIC or the Rehabilitator has failed to pay all or a portion of any claim. During 2013, FGIC received funds from reinsurers in payment of their proportionate reinsurer's share of claims on reinsured policies, which decreased the reinsurance receivable, thus increasing the net loss reserve liability.

As of March 31, 2013, the Company has received, but as a result of the 1310 Order and the Rehabilitation Order, has not paid $2.3 billion in claims which is included in "Loss Reserves" on the Balance Sheet.

The Company recorded an incurred loss, net of reinsurance, of $30.3 million and $0.5 million on its guarantees of sewer revenue warrants issued by Jefferson County, Alabama (the "Jefferson County guarantees") for the three month period ended March 31, 2013 and 2012, respectively. At March 31, 2013 and December 31, 2012, the loss reserve, net of reinsurance, was $127.2 million and $97.3 million, respectively. The estimated incurred losses were necessarily based upon estimates and subjective judgments about the outcomes of future events, including the County's Chapter 9 bankruptcy filing on November 9, 2011. The incurred losses will be adjusted as additional information becomes available and differences between estimated and actual results may be material. At March 31, 2013, the net principal outstanding on the Jefferson County guarantees was $1.4 billion.

FGIC's liability in RMBS, Asset Backed Securities ("ABS") and other securitization transactions is governed by the structure of the waterfall of cash flows in the transaction documents. In certain cases, these transaction

**Confidential**
**PFEIFFER 000353**

# NOTES TO FINANCIAL STATEMENTS

documents are subject to interpretation. Loss reserves have been established based on the impact that the performance of the underlying collateral has on FGIC's duty to support the cash flows of the transaction. If the Company identifies credit impairment, a provision for loss and loss adjustment expense is recorded. At each reporting date, loss reserves are evaluated and may be adjusted to reflect the impact of any loss mitigation efforts, including the purchase of, or the effective removal of insurance coverage on, FGIC insured securities by FGIC, that have yielded results that are probable and estimable. The Company believes that the reserve for estimated losses as of March 31, 2013 is adequate to cover expected future net claims. However, the establishment of the appropriate level of reserves is an inherently uncertain process involving numerous estimates and subjective judgments by management.

Small changes in the assumptions underlying these estimates could result in significant changes in the Company's loss expectations. At present, there remains a considerable amount of uncertainty relating to risks in real estate prices, credit markets and the economy as a whole, and there is no historical precedent for the current conditions. There can be no assurance that the Company's estimates of probable and estimable losses are accurate. Accordingly, there can be no assurance that actual claims paid by the Company will not exceed or be less than its reserves at March 31, 2013, and it is possible that they could significantly exceed those reserves. Additionally, further deterioration in the performance of RMBS and other obligations the Company insures could lead to the establishment of additional loss reserves and further loss or reduction to income. The Company's loss and loss adjustment expense reserves do not reflect the impact of any termination agreements that have been entered into but not completed and the potential impact, if any, of additional ongoing commutation, settlement and restructuring efforts by the Company. There can be no assurance that any loss mitigation efforts will be successful, and it is not possible to predict the magnitude of any benefit that might be derived from any such efforts that are successful.

The Company evaluates the portfolio of insured financial obligations on a regular basis to determine if there has been credit deterioration. The Company evaluates such factors as rating agency downgrades, significant changes in a specific industry or specific events impacting a particular credit, such as a negative credit event, performance below expectations, breaches of representations, warranties, covenants or deal triggers, changes of management, regulatory changes, material litigation or other legal issues. Based on the evaluation of these factors the Company assigns credits to risk ratings categories, which then determines the level of on-going monitoring and surveillance efforts required, and whether loss reserves are recognized.

The Company uses the following risk categories to define and monitor insured financial obligations:

### Risk Category 1 – Performing Credits

Transactions are performing with no expectation of loss. Financial strength of the transaction would enable it to withstand volatility in performance without risk of non-payment on timely debt service. Transactions are considered to be investment grade by the Company. Although rating changes may occur, it is not expected that a downgrade would be to below investment grade.

### Risk Category 2 – Watchlist Credits Under Heightened Surveillance

Credits in this category typically would be considered marginal investment grade or higher rated "non-investment grade". Credits in this risk category have been determined to require heightened surveillance, taking into account the totality of circumstances surrounding the particular credit, but have not deteriorated to the level that they would be considered impaired and require a loss reserve.

### Risk Category 3 – Watchlist Credits Experiencing Credit Deterioration

Credit deterioration has occurred and there is substantial uncertainty as to the credit's ability or willingness to pay its debt service obligations in a timely manner. Credits in this category typically would have suffered sustained negative trends or would have been the subject of a significant adverse event, but are currently not in payment default. Credits in this category have been determined to be impaired, and there is an increased probability of default.

### Risk Category 4 – Watchlist Credits Currently or Likely to Be in Payment Default

Credits that have deteriorated to the point where payment default on their debt service obligations has occurred or is probable and the ultimate loss can be reasonably estimated. Reserves are established on a case basis and are inclusive of any anticipated recoveries from the particular credit or the related collateral. Credits in this category

Confidential                                                                                    PFEIFFER 000354

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# NOTES TO FINANCIAL STATEMENTS

would be consistent with the lowest or in-default credit ratings. Credits in risk category 4 are reviewed and updated on at least a quarterly basis for any change in status.

The following table is a breakdown, as of March 31, 2013, of the Company's portfolio of insured financial obligations assigned to risk category 4.

|  |  | Risk Category 4 |
|---|---|---|
|  |  | *Dollars in thousands* |
|  |  |  |
| Number of policies |  | 146 |
| Remaining weighted-average contract period (in years) |  | 23 |
| Insured contractual payments outstanding: |  |  |
|   Principal | $ | 13,455,982 |
|   Interest |  | 2,549,422 |
| Total | $ | 16,005,404 |
|  |  |  |
| Gross loss reserves | $ | 6,270,342 |
| Less: |  |  |
|   Gross projected recoveries |  | 1,058,632 |
|   Discount, net |  | 847,214 |
| Gross loss reserves, net of discount | $ | 4,364,496 |
|  |  |  |
| Unearned premiums | $ | 16,060 |
|  |  |  |
| Reinsurance recoverable on paid losses reported in the balance sheet | $ | 228 |

The Company's insured financial obligations are structured to provide for rights and remedies in order to mitigate claim loss exposure. Loss mitigation activities may include making repurchase claims or pursuing other claims for breaches of representations and warranties by the originator or others, obtaining appraisals of collateral or reviews of loan files, enforcing collateral provisions and covenants of the servicer or others, more frequent meetings with the issuer or servicer, evaluating the financial position of the originator or servicer, renegotiation of financial covenants, triggers, or terms of servicing, enforcing rights to remove and replace the servicer, evaluation of restructuring plans or bankruptcy proceedings, and in some cases, litigation or arbitration as and where appropriate.

In January 2013, following approval by the Rehabilitation Court and the satisfaction of all other conditions to closing, Radian Asset Assurance Inc. ("Radian") paid approximately $52.3 million to FGIC pursuant to a reinsurance commutation agreement entered into by FGIC and Radian in November 2012 (the "Radian Commutation Agreement"), and FGIC reassumed approximately $732.8 million of par exposure and $38.3 million of loss reserves previously ceded to Radian. In accordance with SSAP No. 62, *Property and Casualty Reinsurance*, FGIC will recognize a net underwriting gain of approximately $3.3 million from the completion of the Radian Commutation Agreement in the quarter ending March 31, 2013.

## Note 26 – Inter-company Pooling Arrangements

    None.

## Note 27 - Structured Settlements

    None.

## Note 28 - Health Care Receivables

    None.

## Note 29 - Participating Policies

    None.

Confidential                                                                   PFEIFFER 000355

# NOTES TO FINANCIAL STATEMENTS

### Note 30 - Premium Deficiency Reserves

None.

### Note 31 - High Deductibles

None.

### Note 32 - Discounting of Liabilities for Unpaid Losses or Unpaid Loss Adjustment Expenses

No significant changes from 2012 Notes to Financial Statements.

### Note 33 - Asbestos/Environmental (Mass Tort) Reserves

None.

### Note 34 - Subscriber Savings Accounts

None.

### Note 35 - Multiple Peril Crop Insurance

None.

### Note 36 – Financial Guaranty Insurance

No significant changes from 2012 Notes to Financial Statements.

Confidential                                                  **PFEIFFER 000356**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# GENERAL INTERROGATORIES

## PART 1 - COMMON INTERROGATORIES
### GENERAL

1.1 Did the reporting entity experience any material transactions requiring the filing of Disclosure of Material Transactions with the State of Domicile, as required by the Model Act? .......................................................................................................................................................... Yes [ ]  No [X]

1.2 If yes, has the report been filed with the domiciliary state? ................................................................................................................................ Yes [ ]  No [ ]

2.1 Has any change been made during the year of this statement in the charter, by-laws, articles of incorporation, or deed of settlement of the reporting entity? ........................................................................................................................................................................................................ Yes [ ]  No [X]

2.2 If yes, date of change: ...........................................................................................................................................................................................

3.1 Have there been any substantial changes in the organizational chart since the prior quarter end? .................................................................... Yes [X]  No [ ]

3.2 If the response to 3.1 is yes, provide a brief description of those changes.
   Please see Schedule Y - Part 1 - Organizational Chart ...........................................................................................................................................

4.1 Has the reporting entity been a party to a merger or consolidation during the period covered by this statement? ............................................... Yes [ ]  No [X]

4.2 If yes, provide the name of entity, NAIC Company Code, and state of domicile (use two letter state abbreviation) for any entity that has ceased to exist as a result of the merger or consolidation.

| 1 Name of Entity | 2 NAIC Company Code | 3 State of Domicile |
|---|---|---|
|  |  |  |

5. If the reporting entity is subject to a management agreement, including third-party administrator(s), managing general agent(s), attorney-in-fact, or similar agreement, have there been any significant changes regarding the terms of the agreement or principals involved? ... Yes [ ]  No [ ]  N/A [X]
   If yes, attach an explanation.

6.1 State as of what date the latest financial examination of the reporting entity was made or is being made. ......................................................... 12/31/2007

6.2 State the as of date that the latest financial examination report became available from either the state of domicile or the reporting entity. This date should be the date of the examined balance sheet and not the date the report was completed or released. ..................................... 12/31/2004

6.3 State as of what date the latest financial examination report became available to other states or the public from either the state of domicile or the reporting entity. This is the release date or completion date of the examination report and not the date of the examination (balance sheet date). ................................................................................................................................................................................................ 05/29/2007

6.4 By what department or departments?
   .................................................................................................................................................................................................................

6.5 Have all financial statement adjustments within the latest financial examination report been accounted for in a subsequent financial statement filed with Departments? ........................................................................................................................................................................... Yes [ ]  No [ ]  N/A [X]

6.6 Have all of the recommendations within the latest financial examination report been complied with? ................................................................ Yes [X]  No [ ]  N/A [ ]

7.1 Has this reporting entity had any Certificates of Authority, licenses or registrations (including corporate registration, if applicable) suspended or revoked by any governmental entity during the reporting period? ..................................................................................................... Yes [ ]  No [X]

7.2 If yes, give full information:
   .................................................................................................................................................................................................................

8.1 Is the company a subsidiary of a bank holding company regulated by the Federal Reserve Board? ................................................................. Yes [ ]  No [X]

8.2 If response to 8.1 is yes, please identify the name of the bank holding company.

8.3 Is the company affiliated with one or more banks, thrifts or securities firms? ..................................................................................................... Yes [X]  No [ ]

8.4 If response to 8.3 is yes, please provide below the names and location (city and state of the main office) of any affiliates regulated by a federal regulatory services agency [i.e. the Federal Reserve Board (FRB), the Office of the Comptroller of the Currency (OCC), the Federal Deposit Insurance Corporation (FDIC) and the Securities Exchange Commission (SEC)] and identify the affiliate's primary federal regulator.]

| 1 Affiliate Name | 2 Location (City, State) | 3 FRB | 4 OCC | 5 FDIC | 6 SEC |
|---|---|---|---|---|---|
| Blackstone Alternative Asset Management L.P. (BAAM) | New York, N.Y. |  |  |  | Yes |
| Blackstone Communications Advisors I L L C (BCOM) | New York, N.Y. |  |  |  | Yes |
| Blackstone Debt Advisors L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Distressed Securities Advisors L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Management Partners III L.L.C. | New York, N.Y. |  |  |  | Yes |
| Blackstone Management Partners IV L.L.C. | New York, N.Y. |  |  |  | Yes |
| Blackstone Management Partners L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Mezzanine Advisors L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Mezzanine Advisors II L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors III L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors International LLC | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors International II | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors IV L.L.C. | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors Europe L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Management Partners L L C | New York, N.Y. |  |  |  | Yes |
| Blackstone Management Partners L.L.C. (India) | New York, N.Y. |  |  |  | Yes |
| Blackstone Asia Advisors L.L.C. | New York, N.Y. |  |  |  | Yes |
| Blackstone Fund Services India Private Limited | New York, N.Y. |  |  |  | Yes |
| Blackstone Real Estate Advisors V L.P. | New York, N.Y. |  |  |  | Yes |
| BREA L.P. | New York, N.Y. |  |  |  | Yes |
| Blackstone Strategic Alliance Advisors L.L.C. | New York, N.Y. |  |  |  | Yes |

Confidential

PFEIFFER 000357

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# GENERAL INTERROGATORIES

9.1  Are the senior officers (principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions) of the reporting entity subject to a code of ethics, which includes the following standards?........................................................ Yes [X]  No [ ]

   (a)  Honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships;

   (b)  Full, fair, accurate, timely and understandable disclosure in the periodic reports required to be filed by the reporting entity;

   (c)  Compliance with applicable governmental laws, rules and regulations;

   (d)  The prompt internal reporting of violations to an appropriate person or persons identified in the code; and

   (e)  Accountability for adherence to the code.

9.11  If the response to 9.1 is No, please explain:

9.2  Has the code of ethics for senior managers been amended?........................................................................................................................ Yes [ ]  No [X]

9.21  If the response to 9.2 is Yes, provide information related to amendment(s).

9.3  Have any provisions of the code of ethics been waived for any of the specified officers?.................................................................. Yes [ ]  No [X]

9.31  If the response to 9.3 is Yes, provide the nature of any waiver(s).

## FINANCIAL

10.1  Does the reporting entity report any amounts due from parent, subsidiaries or affiliates on Page 2 of this statement?.................... Yes [X]  No [ ]

10.2  If yes, indicate any amounts receivable from parent included in the Page 2 amount: ..................... $ ........................ 35,689

## INVESTMENT

11.1  Were any of the stocks, bonds, or other assets of the reporting entity loaned, placed under option agreement, or otherwise made available for use by another person? (Exclude securities under securities lending agreements.)................................................... Yes [ ]  No [X]

11.2  If yes, give full and complete information relating thereto:

12.  Amount of real estate and mortgages held in other invested assets in Schedule BA: ........................................................ $ ........................ 0

13.  Amount of real estate and mortgages held in short-term investments: ...................................................... $ ........................ 0

14.1  Does the reporting entity have any investments in parent, subsidiaries and affiliates?.................................................... Yes [X]  No [ ]

14.2  If yes, please complete the following:

| | 1<br>Prior Year-End<br>Book/Adjusted<br>Carrying Value | 2<br>Current Quarter<br>Book/Adjusted<br>Carrying Value |
|---|---|---|
| 14.21  Bonds | $ | $ |
| 14.22  Preferred Stock | $ | $ |
| 14.23  Common Stock | $ | $ |
| 14.24  Short-Term Investments | $ | $ |
| 14.25  Mortgage Loans on Real Estate | $ | $ |
| 14.26  All Other | $ | $ |
| 14.27  Total Investment in Parent, Subsidiaries and Affiliates (Subtotal Lines 14.21 to 14.26) | $ 0 | $ 0 |
| 14.28  Total Investment in Parent included in Lines 14.21 to 14.26 above | $ | $ |

15.1  Has the reporting entity entered into any hedging transactions reported on Schedule DB?..................................................... Yes [ ]  No [X]

15.2  If yes, has a comprehensive description of the hedging program been made available to the domiciliary state?..................... Yes [ ]  No [ ]
If no, attach a description with this statement.

**Confidential**

**PFEIFFER 000358**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# GENERAL INTERROGATORIES

16. For the reporting entity's security lending program, state the amount of the following as of the current statement date:
16.1 Total fair value of reinvested collateral assets reported on Schedule DL, Parts 1 and 2..................................................... $ ...........................0
16.2 Total book adjusted/carrying value of reinvested collateral assets reported on Schedule DL, Parts 1 and 2............................. $ ...........................0
16.3 Total payable for securities lending reported on the liability page.......................................................................................... $ ...........................0

17. Excluding items in Schedule E - Part 3 - Special Deposits, real estate, mortgage loans and investments held physically in the reporting entity's offices, vaults or safety deposit boxes, were all stocks, bonds and other securities, owned throughout the current year held pursuant to a custodial agreement with a qualified bank or trust company in accordance with Section 1, III – General Examination Considerations, F. Outsourcing of Critical Functions, Custodial or Safekeeping Agreements of the NAIC Financial Condition Examiners Handbook?....................................................................................................................................................................................... Yes [X]   No [ ]

17.1 For all agreements that comply with the requirements of the NAIC Financial Condition Examiners Handbook, complete the following:

| 1
Name of Custodian(s) | 2
Custodian Address |
|---|---|
| State Street bank and Trust Company | 225 Liberty Street, New York, N.Y. 10281 |

17.2 For all agreements that do not comply with the requirements of the NAIC Financial Condition Examiners Handbook, provide the name, location and a complete explanation:

| 1
Name(s) | 2
Location(s) | 3
Complete Explanation(s) |
|---|---|---|
| | | |

17.3 Have there been any changes, including name changes, in the custodian(s) identified in 17.1 during the current quarter? ........................ Yes [ ]   No [X]

17.4 If yes, give full and complete information relating thereto:

| 1
Old Custodian | 2
New Custodian | 3
Date of Change | 4
Reason |
|---|---|---|---|
| | | | |

17.5 Identify all investment advisors, broker/dealers or individuals acting on behalf of broker/dealers that have access to the investment accounts, handle securities and have authority to make investments on behalf of the reporting entity:

| 1
Central Registration Depository | 2
Name(s) | 3
Address |
|---|---|---|
| 107717 | MacKay Shields LLC | 9 West 57th Street, New York, N.Y. 10019 |

18.1 Have all the filing requirements of the Purposes and Procedures Manual of the NAIC Securities Valuation Office been followed? ................... Yes [X]   No [ ]

18.2 If no, list exceptions:

.........................................................................................................................................................................................................

Footnote to 7.2

As of May 10, 2013, and as reported in the previous annual statement, 32 state insurance departments have suspended or revoked FGIC's certificate of authority or taken, or indicated that they intend to take, substantially similar action (OH, FL, VA, NH, MS, NC, AK, MI, WA, CT, AR, ID, WV, MO, SC, OR, AL, KY, IN, ND, NV, WY, LA, CO, OA, MA, TN, IA IL, ME, GA and UT).

User Note to Item 8.4

As of April 19, 2013, the Company is no longer affiliated with these entities.

Confidential
PFEIFFER 000359

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# GENERAL INTERROGATORIES

(Responses to these interrogatories should be based on changes that have occurred since prior year end unless otherwise noted.)

## PART 2
## PROPERTY & CASUALTY INTERROGATORIES

1.  If the reporting entity is a member of a pooling arrangement, did the agreement or the reporting entity's participation change? ..................   Yes [ ]   No [ ]   NA [X]

    If yes, attach an explanation.

2.  Has the reporting entity reinsured any risk with any other reporting entity and agreed to release such entity from liability, in whole or in part, from any loss that may occur on the risk, or portion thereof, reinsured?   Yes [X]   No [ ]

    If yes, attach an explanation.

3.1  Have any of the reporting entity's primary reinsurance contracts been canceled? ......................................................................   Yes [X]   No [ ]

3.2  If yes, give full and complete information thereto

     Please see user footnote below ....................................................................................................................................

4.1  Are any of the liabilities for unpaid losses and loss adjustment expenses other than certain workers' compensation tabular reserves (see Annual Statement Instructions pertaining to disclosure of discounting for definition of  "tabular reserves,") discounted at a rate of interest greater than zero?   Yes [X]   No [ ]

4.2  If yes, complete the following schedule:

| 1 | 2 | 3 | TOTAL DISCOUNT | | | | DISCOUNT TAKEN DURING PERIOD | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Line of Business | Maximum Interest | Discount Rate | 4 Unpaid Losses | 5 Unpaid LAE | 6 IBNR | 7 TOTAL | 8 Unpaid Losses | 9 Unpaid LAE | 10 IBNR | 11 TOTAL |
| Financial Guaranty - Unpaid Loss............ | | 2.780 | 831,576,005 | | | 831,576,005 | 40,219,545 | | | 40,219,545 |
| | | | | | | | | | | |
| | TOTAL | | 831,576,005 | 0 | 0 | 831,576,005 | 40,219,545 | 0 | 0 | 40,219,545 |

5.  Operating Percentages:

    5.1  A&H loss percent .....................................................................................................................................................   %

    5.2  A&H cost containment percent ................................................................................................................................   %

    5.3  A&H expense percent excluding cost containment expenses ...................................................................................   %

6.1  Do you act as a custodian for health savings accounts?   Yes [ ]   No [X]

6.2  If yes, please provide the amount of custodial funds held as of the reporting date.   $ ...................................

6.3  Do you act as an administrator for health savings accounts?   Yes [ ]   No [X]

6.4  If yes, please provide the balance of the funds administered as of the reporting date.   $ ...................................

User Note to Items 2 and 3.2

During 2012, the Company entered into separate reinsurance commutation agreements with reinsurers Syncora Guarantee Inc., Munich Reinsurance America, Inc., and Radian Asset Assurance Inc., to settle all of their respective reinsurance and other obligations under various reinsurance agreements with the Company, which settlements became effective in 2013 upon satisfaction of the specified conditions to effectiveness and the applicable reinsurer's payment to the Company of a mutually agreed commutation amount.  In addition, in 2013, the Company entered into a reinsurance commutation agreement with Colisee Re (f/k/a Axa Re Finance Madeira Branch), but the settlement thereunder has not yet become effective.

Confidential                                                                                                     PFEIFFER 000360

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

## SCHEDULE F—CEDED REINSURANCE

**Showing All New Reinsurers - Current Year to Date**

| 1<br>NAIC<br>Company Code | 2<br>Federal<br>ID Number | 3<br>Name of Reinsurer | 4<br>Domiciliary Jurisdiction | 5<br>Is Insurer<br>Authorized?<br>(Yes or No) |
|---|---|---|---|---|
| | | AFFILIATES | | |
| | | US INSURERS | | |
| | | POOLS AND ASSOCIATIONS | | |
| | | ALL OTHER INSURERS | | |

# NONE

Confidential                    PFEIFFER 000361

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE T - EXHIBIT OF PREMIUMS WRITTEN

## Current Year to Date - Allocated by States and Territories

| | 1 | Direct Premiums Written | | Direct Losses Paid (Deducting Salvage) | | Direct Losses Unpaid | |
| | | 2 | 3 | 4 | 5 | 6 | 7 |
| States, etc. | Active Status | Current Year To Date | Prior Year To Date | Current Year To Date | Prior Year To Date | Current Year To Date | Prior Year To Date |
|---|---|---|---|---|---|---|---|
| 1.  Alabama ............... AL | L | 0 | 0 | | 0 | 158,288,271 | 155,871,582 |
| 2.  Alaska ................. AK | L | 0 | 51 | | 0 | | 0 |
| 3.  Arizona ............... AZ | L | 0 | 0 | | 0 | | 0 |
| 4.  Arkansas ............ AR | L | 0 | 0 | | 0 | | 0 |
| 5.  California ............ CA | L | 34,666 | 41,830 | | 0 | | 0 |
| 6.  Colorado ............. CO | L | 0 | 0 | | 0 | | 0 |
| 7.  Connecticut ........ CT | L | 0 | 0 | | 0 | | 0 |
| 8.  Delaware ............ DE | L | 0 | 0 | | 0 | | 0 |
| 9.  Dist. Columbia .... DC | L | 0 | 0 | | 0 | | 0 |
| 10.  Florida .............. FL | L | 0 | 4,431 | | 0 | 1,741,512 | 1,825,770 |
| 11.  Georgia ............. GA | L | 13,217 | 13,433 | | 0 | | 0 |
| 12.  Hawaii .............. HI | L | 0 | 0 | | 0 | | 0 |
| 13.  Idaho ............... ID | L | 0 | 0 | | 0 | | 0 |
| 14.  Illinois .............. IL | L | 40,744 | 44,252 | | 0 | | 0 |
| 15.  Indiana ............. IN | L | 0 | 145 | | 0 | | 0 |
| 16.  Iowa ................ IA | L | 0 | 41 | | 0 | | 0 |
| 17.  Kansas ............. KS | L | 0 | 59 | | 0 | | 0 |
| 18.  Kentucky .......... KY | L | 0 | 0 | | 0 | | 0 |
| 19.  Louisiana .......... LA | L | 0 | 0 | | 0 | | 0 |
| 20.  Maine .............. ME | L | 0 | 58 | | 0 | | 0 |
| 21.  Maryland .......... MD | L | 0 | 0 | | 0 | | 0 |
| 22.  Massachusetts ... MA | L | 53 | 272 | | 0 | | 0 |
| 23.  Michigan ........... MI | L | 0 | 9 | | 0 | | 0 |
| 24.  Minnesota ......... MN | L | 56 | 345 | | 0 | | 0 |
| 25.  Mississippi ........ MS | L | 0 | 0 | | 0 | | 0 |
| 26.  Missouri ........... MO | L | 0 | 30 | | 0 | | 0 |
| 27.  Montana ........... MT | L | 0 | 0 | | 0 | | 0 |
| 28.  Nebraska .......... NE | L | 0 | 12 | | 0 | | 0 |
| 29.  Nevada ............ NV | L | 0 | 0 | | 0 | | 0 |
| 30.  New Hampshire ... NH | L | 0 | 0 | | 0 | | 0 |
| 31.  New Jersey ........ NJ | L | 0 | 6 | | 0 | | 0 |
| 32.  New Mexico ....... NM | L | 0 | 0 | | 0 | | 0 |
| 33.  New York .......... NY | L | 7,989,653 | 9,957,748 | (1,935,881) | (492,247) | 3,893,485,585 | 5,078,047,603 |
| 34.  No. Carolina ...... NC | L | 0 | 25 | | 0 | | 0 |
| 35.  No. Dakota ........ ND | L | 0 | 0 | | 0 | | 0 |
| 36.  Ohio ................ OH | L | 0 | 145 | | 0 | | 0 |
| 37.  Oklahoma ......... OK | L | 0 | 0 | | 0 | | 0 |
| 38.  Oregon ............. OR | L | 0 | 0 | | 0 | | 0 |
| 39.  Pennsylvania ..... PA | L | 0 | 147 | | 0 | | 0 |
| 40.  Rhode Island ..... RI | L | 0 | 12 | | 0 | | 0 |
| 41.  So. Carolina ...... SC | L | 0 | 0 | | 0 | | 0 |
| 42.  So. Dakota ........ SD | L | 0 | 0 | | 0 | | 0 |
| 43.  Tennessee ........ TN | L | 0 | 0 | | 0 | | 0 |
| 44.  Texas .............. TX | L | 0 | 115 | | 0 | 2,088,270 | 2,304,143 |
| 45.  Utah ............... UT | L | 0 | 84 | | 0 | | 0 |
| 46.  Vermont ........... VT | L | 0 | 7 | | 0 | | 0 |
| 47.  Virginia ............ VA | L | 0 | 0 | | 0 | | 0 |
| 48.  Washington ....... WA | L | 0 | 41 | | 0 | | 0 |
| 49.  West Virginia ..... WV | L | 0 | 0 | | 0 | | 0 |
| 50.  Wisconsin ......... WI | L | 0 | 0 | | 0 | | 0 |
| 51.  Wyoming .......... WY | L | 0 | 30 | | 0 | | 0 |
| 52.  American Samoa ... AS | N | 0 | 0 | | 0 | | 0 |
| 53.  Guam .............. GU | N | 0 | 0 | | 0 | | 0 |
| 54.  Puerto Rico ....... PR | N | 0 | 0 | | 0 | | 0 |
| 55.  U.S. Virgin Islands ... VI | N | 0 | 0 | | 0 | | 0 |
| 56.  Northern Mariana Islands .. MP | N | 0 | 0 | | 0 | | 0 |
| 57.  Canada ............ CAN | N | 0 | 0 | | 0 | | 0 |
| 58.  Aggregate Other Alien ... OT | XXX | 1,080,259 | 2,145,039 | 0 | 0 | 0 | 0 |
| 59.  Totals | (a)   53 | 9,158,678 | 12,208,367 | (1,935,881) | (492,247) | 4,055,603,638 | 5,238,049,098 |
| DETAILS OF WRITE-INS | | | | | | | |
| 58001.  AUS | XXX | 799,146 | 799,216 | | 0 | | 0 |
| 58002.  GBR | XXX | 0 | 654,372 | | 0 | | 0 |
| 58003.  TUR | XXX | 243,844 | 405,484 | | 0 | | 0 |
| 58998.  Summary of remaining write-ins for Line 58 from overflow page | XXX | 37,269 | 285,967 | 0 | 0 | 0 | 0 |
| 58999.  Totals (Lines 58001 through 58003 plus 58998) (Line 58 above) | XXX | 1,080,259 | 2,145,039 | 0 | 0 | 0 | 0 |

(L) Licensed or Chartered - Licensed Insurance Carrier or Domiciled RRG; (R) Registered - Non-domiciled RRGs; (Q) Qualified - Qualified or Accredited Reinsurer; (E) Eligible - Reporting Entities eligible or approved to write Surplus Lines in the state; (N) None of the above - Not allowed to write business in the state.

(a) Insert the number of L responses except for Canada and Other Alien.

Confidential                                                                        PFEIFFER 000362

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE Y - INFORMATION CONCERNING ACTIVITIES OF INSURER MEMBERS OF A HOLDING COMPANY GROUP
# PART 1 - ORGANIZATIONAL CHART

## FGIC Corporation Structure (as of 4/22/13)



*All ownership interests are 100%*

☐ Never conducted business; in process of being dissolved.

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

## SCHEDULE Y PART 1A - DETAIL OF INSURANCE HOLDING COMPANY SYSTEM

| 1 Group Code | 2 Group Name | 3 NAIC Company Code | 4 Federal ID Number | 5 Federal RSSD | 6 CIK | 7 Name of Securities Exchange if Publicly Traded (U.S. or International) | 8 Names of Parent Subsidiaries or Affiliates | 9 Domiciliary Location | 10 Relationship to Reporting Entity | 11 Directly Controlled by (Name of Entity/Person) | 12 Type of Control (Ownership, Board, Management, Attorney-in-Fact, Influence, Other) | 13 If Control is Ownership Provide Percentage | 14 Ultimate Controlling Entity(ies)/Person(s) | 15 * |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | NONE | | | | | | | |

# NONE

Confidential

PFEIFFER 000364

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# PART 1 - LOSS EXPERIENCE

| | | Current Year to Date | | | 4 |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | Prior Year to |
| | | Direct Premiums | Direct Losses | Direct Loss | Date Direct Loss |
| | Line of Business | Earned | Incurred | Percentage | Percentage |
| 1. | Fire | | | 0.0 | 0.0 |
| 2. | Allied lines | | | 0.0 | 0.0 |
| 3. | Farmowners multiple peril | | | 0.0 | 0.0 |
| 4. | Homeowners multiple peril | | | 0.0 | 0.0 |
| 5. | Commercial multiple peril | | | 0.0 | 0.0 |
| 6. | Mortgage guaranty | | | 0.0 | 0.0 |
| 8. | Ocean marine | | | 0.0 | 0.0 |
| 9. | Inland marine | | | 0.0 | 0.0 |
| 10. | Financial guaranty | 57,842,294 | 64,042,552 | 110.7 | 387.9 |
| 11.1 | Medical professional liability - occurrence | | | 0.0 | 0.0 |
| 11.2 | Medical professional liability – claims made | | | 0.0 | 0.0 |
| 12. | Earthquake | | | 0.0 | 0.0 |
| 13. | Group accident and health | | | 0.0 | 0.0 |
| 14. | Credit accident and health | | | 0.0 | 0.0 |
| 15. | Other accident and health | | | 0.0 | 0.0 |
| 16. | Workers' compensation | | | 0.0 | 0.0 |
| 17.1 | Other liability occurrence | | | 0.0 | 0.0 |
| 17.2 | Other liability – claims made | | | 0.0 | 0.0 |
| 17.3 | Excess Workers' Compensation | | | 0.0 | 0.0 |
| 18.1 | Products liability – occurrence | | | 0.0 | 0.0 |
| 18.2 | Products liability – claims made | | | 0.0 | 0.0 |
| 19.1,19.2 | Private passenger auto liability | | | 0.0 | 0.0 |
| 19.3,19.4 | Commercial auto liability | | | 0.0 | 0.0 |
| 21. | Auto physical damage | | | 0.0 | 0.0 |
| 22. | Aircraft (all perils) | | | 0.0 | 0.0 |
| 23. | Fidelity | | | 0.0 | 0.0 |
| 24. | Surety | | | 0.0 | 0.0 |
| 26. | Burglary and theft | | | 0.0 | 0.0 |
| 27. | Boiler and machinery | | | 0.0 | 0.0 |
| 28. | Credit | | | 0.0 | 0.0 |
| 29. | International | | | 0.0 | 0.0 |
| 30. | Warranty | | | 0.0 | 0.0 |
| 31. | Reinsurance - Nonproportional Assumed Property | XXX | XXX | XXX | XXX |
| 32. | Reinsurance - Nonproportional Assumed Liability | XXX | XXX | XXX | XXX |
| 33. | Reinsurance - Nonproportional Assumed Financial Lines | XXX | XXX | XXX | XXX |
| 34. | Aggregate write-ins for other lines of business | 0 | 0 | 0.0 | 0.0 |
| 35. | TOTALS | 57,842,294 | 64,042,552 | 110.7 | 387.9 |
| | DETAILS OF WRITE-INS | | | | |
| 3401. | | | | | |
| 3402. | | | | | |
| 3403. | | | | | |
| 3498. | Sum. of remaining write-ins for Line 34 from overflow page | 0 | 0 | 0.0 | 0.0 |
| 3499. | Totals (Lines 3401 through 3403 plus 3498) (Line 34) | 0 | 0 | 0.0 | 0.0 |

# PART 2 - DIRECT PREMIUMS WRITTEN

| | | 1 | 2 | 3 |
|---|---|---|---|---|
| | | Current | Current | Prior Year |
| | Line of Business | Quarter | Year to Date | Year to Date |
| 1. | Fire | 0 | | 0 |
| 2. | Allied lines | 0 | | 0 |
| 3. | Farmowners multiple peril | 0 | | 0 |
| 4. | Homeowners multiple peril | 0 | | 0 |
| 5. | Commercial multiple peril | 0 | | 0 |
| 6. | Mortgage guaranty | 0 | | 0 |
| 8. | Ocean marine | 0 | | 0 |
| 9. | Inland marine | 0 | | 0 |
| 10. | Financial guaranty | 9,158,678 | 9,158,678 | 12,208,367 |
| 11.1 | Medical professional liability - occurrence | 0 | | 0 |
| 11.2 | Medical professional liability – claims made | 0 | | 0 |
| 12. | Earthquake | 0 | | 0 |
| 13. | Group accident and health | 0 | | 0 |
| 14. | Credit accident and health | 0 | | 0 |
| 15. | Other accident and health | 0 | | 0 |
| 16. | Workers' compensation | 0 | | 0 |
| 17.1 | Other liability-occurrence | 0 | | 0 |
| 17.2 | Other liability – claims made | 0 | | 0 |
| 17.3 | Excess Workers' Compensation | 0 | | 0 |
| 18.1 | Products liability - occurrence | 0 | | 0 |
| 18.2 | Products liability – claims made | 0 | | 0 |
| 19.1,19.2 | Private passenger auto liability | 0 | | 0 |
| 19.3,19.4 | Commercial auto liability | 0 | | 0 |
| 21. | Auto physical damage | 0 | | 0 |
| 22. | Aircraft (all perils) | 0 | | 0 |
| 23. | Fidelity | 0 | | 0 |
| 24. | Surety | 0 | | 0 |
| 26. | Burglary and theft | 0 | | 0 |
| 27. | Boiler and machinery | 0 | | 0 |
| 28. | Credit | 0 | | 0 |
| 29. | International | 0 | | 0 |
| 30. | Warranty | 0 | | 0 |
| 31. | Reinsurance - Nonproportional Assumed Property | XXX | XXX | XXX |
| 32. | Reinsurance - Nonproportional Assumed Liability | XXX | XXX | XXX |
| 33. | Reinsurance - Nonproportional Assumed Financial Lines | XXX | XXX | XXX |
| 34. | Aggregate write-ins for other lines of business | 0 | 0 | 0 |
| 35. | TOTALS | 9,158,678 | 9,158,678 | 12,208,367 |
| | DETAILS OF WRITE-INS | | | |
| 3401. | | | | |
| 3402. | | | | |
| 3403. | | | | |
| 3498. | Sum. of remaining write-ins for Line 34 from overflow page | 0 | 0 | 0 |
| 3499. | Totals (Lines 3401 through 3403 plus 3498) (Line 34) | 0 | 0 | 0 |

13

**STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY**

# PART 3 (000 omitted)

## LOSS AND LOSS ADJUSTMENT EXPENSE RESERVES SCHEDULE

| Years in Which Losses Occurred | 1 Prior Year-End Known Case Loss and LAE Reserves | 2 Prior Year-End IBNR Loss and LAE Reserves | 3 Total Prior Year-End Loss and LAE Reserves (Cols. 1 + 2) | 4 2013 Loss and LAE Payments on Claims Reported as of Prior Year-End | 5 2013 Loss and LAE Payments on Claims Unreported as of Prior Year-End | 6 Total 2013 Loss and LAE Payments (Cols. 4 + 5) | 7 Q.S. Date Known Case Loss and LAE Reserves on Claims Reported and Open as of Prior Year-End | 8 Q.S. Date Known Case Loss and LAE Reserves on Claims Reported or Reopened Subsequent to Prior Year-End | 9 Q.S. Date IBNR Loss and LAE Reserves | 10 Total Q.S. Loss and LAE Reserves (Cols.7 + 8 + 9) | 11 Prior Year-End Known Case Loss and LAE Reserves Developed (Savings)/Deficiency (Cols. 4 + 7 minus Col. 1) | 12 Prior Year-End IBNR Loss and LAE Reserves Developed (Savings)/Deficiency (Cols. 5 + 8 + 9 minus Col. 2) | 13 Prior Year-End Total Loss and LAE Reserves Developed (Savings)/Deficiency (Cols. 11 + 12) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. 2010 + Prior | 3,871,563 | | 3,871,563 | (38,508) | | (38,508) | 4,009,727 | | | 4,009,727 | 99,656 | 0 | 99,656 |
| 2. 2011 | 24,867 | | 24,867 | (125) | | (125) | 34,482 | | | 34,482 | 9,490 | 0 | 9,490 |
| 3. Subtotals 2011 + prior | 3,896,430 | 0 | 3,896,430 | (38,633) | 0 | (38,633) | 4,044,208 | 0 | 0 | 4,044,208 | 109,146 | 0 | 109,146 |
| 4. 2012 | 0 | | 0 | | | 0 | | | | 0 | 0 | 0 | 0 |
| 5. Subtotals 2012 + prior | 3,896,430 | 0 | 3,896,430 | (38,633) | 0 | (38,633) | 4,044,208 | 0 | 0 | 4,044,208 | 109,146 | 0 | 109,146 |
| 6. 2013 | XXX | XXX | XXX | XXX | | 0 | XXX | 87 | | 87 | XXX | XXX | XXX |
| 7. Totals | 3,896,430 | 0 | 3,896,430 | (38,633) | 0 | (38,633) | 4,044,208 | 87 | 0 | 4,044,296 | 109,146 | 0 | 109,146 |
| 8. Prior Year-End Surplus As Regards Policy-holders | (2,610,913) | | | | | | | | | | | | |

| Col. 11, Line 7 As % of Col. 1 Line 7 | Col. 12, Line 7 As % of Col. 2 Line 7 | Col. 13, Line 7 As % of Col. 3 Line 7 |
|---|---|---|
| 1.  2.8 | 2  0.0 | 3  2.8 |

| Col. 13, Line 7 As a % of Col. 1 Line 8 |
|---|
| 4  (4.2) |

14

**PFEIFFER 000366**

Confidential                                                        **PFEIFFER 000367**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# OVERFLOW PAGE FOR WRITE-INS

PQ010 Additional Aggregate Lines for Page 10 Line 58.
*SCT

| | 1 Active Status | 2 Current Year To Date | 3 Prior Year To Date | 4 Current Year To Date | 5 Prior Year To Date | 6 Current Year To Date | 7 Prior Year To Date |
|---|---|---|---|---|---|---|---|
| 58004 FRA | XXX | 37,289 | 274,033 | | 0 | | 0 |
| 58005 I TA | XXX | 0 | | | 0 | | 0 |
| 58006 FRA | XXX | 0 | 11,884 | | 0 | | 0 |
| 58007 | XXX | | | | 0 | | 0 |
| 58008 | XXX | | 0 | | 0 | | 0 |
| 58009 | XXX | | 0 | | 0 | | 0 |
| 58010 | XXX | | 0 | | 0 | | 0 |
| 58011 | XXX | | 0 | | 0 | | 0 |
| 58012 | XXX | | 0 | | 0 | | 0 |
| 58013 | XXX | | 0 | | 0 | | 0 |
| 58014 | XXX | | 0 | | 0 | | 0 |
| 58015 | XXX | | 0 | | 0 | | 0 |
| 58016 | XXX | | 0 | | 0 | | 0 |
| 58017 | XXX | | 0 | | 0 | | 0 |
| 58018 | XXX | | 0 | | 0 | | 0 |
| 58019 | XXX | | 0 | | 0 | | 0 |
| 58020 | XXX | | 0 | | 0 | | 0 |
| 58021 | XXX | | 0 | | 0 | | 0 |
| 58022 | XXX | | 0 | | 0 | | 0 |
| 58023 | XXX | | 0 | | 0 | | 0 |
| 58024 | XXX | | 0 | | 0 | | 0 |
| 58025 | XXX | | 0 | | 0 | | 0 |
| 58026 | XXX | | 0 | | 0 | | 0 |
| 58027 | XXX | | 0 | | 0 | | 0 |
| 58028 | XXX | | 0 | | 0 | | 0 |
| 58029 | XXX | | 0 | | 0 | | 0 |
| 58030 | XXX | | 0 | | 0 | | 0 |
| 58031 | XXX | | 0 | | 0 | | 0 |
| 58032 | XXX | | 0 | | 0 | | 0 |
| 58033 | XXX | | 0 | | 0 | | 0 |
| 58034 | XXX | | 0 | | 0 | | 0 |
| 58035 | XXX | | 0 | | 0 | | 0 |
| 58036 | XXX | | 0 | | 0 | | 0 |
| 58037 | XXX | | 0 | | 0 | | 0 |
| 58038 | XXX | | 0 | | 0 | | 0 |
| 58039 | XXX | | 0 | | 0 | | 0 |
| 58040 | XXX | | 0 | | 0 | | 0 |
| 58041 | XXX | | 0 | | 0 | | 0 |
| 58042 | XXX | | 0 | | 0 | | 0 |
| 58043 | XXX | | 0 | | 0 | | 0 |
| 58044 | XXX | | 0 | | 0 | | 0 |
| 58045 | XXX | | 0 | | 0 | | 0 |
| 58046 | XXX | | 0 | | 0 | | 0 |
| 58047 | XXX | | 0 | | 0 | | 0 |
| 58048 | XXX | | 0 | | 0 | | 0 |
| 58049 | XXX | | 0 | | 0 | | 0 |
| 58050 | XXX | | 0 | | 0 | | 0 |

16

Confidential

PFEIFFER 000368

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# OVERFLOW PAGE FOR WRITE-INS

PQ010 Additional Aggregate Lines for Page 10 Line 58.
*SCT

| | 1 Active Status | 2 Current Year To Date | 3 Prior Year To Date | 4 Current Year To Date | 5 Prior Year To Date | 6 Current Year To Date | 7 Prior Year To Date |
|---|---|---|---|---|---|---|---|
| 58051 | XXX | | 0 | | 0 | | 0 |
| 58052 | XXX | | 0 | | 0 | | 0 |
| 58053 | XXX | | 0 | | 0 | | 0 |
| 58054 | XXX | | 0 | | 0 | | 0 |
| 58055 | XXX | | 0 | | 0 | | 0 |
| 58056 | XXX | | 0 | | 0 | | 0 |
| 58057 | XXX | | 0 | | 0 | | 0 |
| 58058 | XXX | | 0 | | 0 | | 0 |
| 58059 | XXX | | 0 | | 0 | | 0 |
| 58060 | XXX | | 0 | | 0 | | 0 |
| 58061 | XXX | | 0 | | 0 | | 0 |
| 58062 | XXX | | 0 | | 0 | | 0 |
| 58063 | XXX | | 0 | | 0 | | 0 |
| 58064 | XXX | | 0 | | 0 | | 0 |
| 58065 | XXX | | 0 | | 0 | | 0 |
| 58066 | XXX | | 0 | | 0 | | 0 |
| 58067 | XXX | | 0 | | 0 | | 0 |
| 58068 | XXX | | 0 | | 0 | | 0 |
| 58069 | XXX | | 0 | | 0 | | 0 |
| 58070 | XXX | | 0 | | 0 | | 0 |
| 58071 | XXX | | 0 | | 0 | | 0 |
| 58072 | XXX | | 0 | | 0 | | 0 |
| 58073 | XXX | | 0 | | 0 | | 0 |
| 58074 | XXX | | 0 | | 0 | | 0 |
| 58075 | XXX | | 0 | | 0 | | 0 |
| 58076 | XXX | | 0 | | 0 | | 0 |
| 58077 | XXX | | 0 | | 0 | | 0 |
| 58078 | XXX | | 0 | | 0 | | 0 |
| 58079 | XXX | | 0 | | 0 | | 0 |
| 58080 | XXX | | 0 | | 0 | | 0 |
| 58081 | XXX | | 0 | | 0 | | 0 |
| 58082 | XXX | | 0 | | 0 | | 0 |
| 58083 | XXX | | 0 | | 0 | | 0 |
| 58084 | XXX | | 0 | | 0 | | 0 |
| 58085 | XXX | | 0 | | 0 | | 0 |
| 58086 | XXX | | 0 | | 0 | | 0 |
| 58087 | XXX | | 0 | | 0 | | 0 |
| 58088 | XXX | | 0 | | 0 | | 0 |
| 58089 | XXX | | 0 | | 0 | | 0 |
| 58090 | XXX | | 0 | | 0 | | 0 |
| 58091 | XXX | | 0 | | 0 | | 0 |
| 58092 | XXX | | 0 | | 0 | | 0 |
| 58093 | XXX | | 0 | | 0 | | 0 |
| 58094 | XXX | | 0 | | 0 | | 0 |
| 58095 | XXX | | 0 | | 0 | | 0 |
| 58096 | XXX | | 0 | | 0 | | 0 |
| 58097 | XXX | | 0 | | 0 | | 0 |
| 58098 | XXX | | 285,957 | | 0 | | 0 |

16.1

Confidential

PFEIFFER 000369

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# OVERFLOW PAGE FOR WRITE-INS

PQ010 Additional Aggregate Lines for Page 10 Line 58.
*SCT

| | 1 Active Status | 2 Current Year To Date | 3 Prior Year To Date | 4 Current Year To Date | 5 Prior Year To Date | 6 Current Year To Date | 7 Prior Year To Date |
|---|---|---|---|---|---|---|---|
| 58099. | XXX | | 2,145,039 | 0 | | | 0 |
| 58997. Summary of remaining write-ins for Line 58 from Page 10 | XXX | 37,289 | 285,957 | 0 | 0 | 0 | 0 |

Confidential

PFEIFFER 000370

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

## SCHEDULE A - VERIFICATION

**Real Estate**

| | 1<br>Year to Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1. Book/adjusted carrying value, December 31 of prior year | 0 | 0 |
| 2. Cost of acquired: | | |
| 2.1  Actual cost at time of acquisition | | 0 |
| 2.2  Additional investment made after acquisition | | 0 |
| 3. Current year change in encumbrances | | 0 |
| 4. Total gain (loss) on disposals | | 0 |
| 5. Deduct amounts received on disposals | | 0 |
| 6. Total foreign exchange change in book/adjusted carrying value | | 0 |
| 7. Deduct current year's other than temporary impairment recognized | | 0 |
| 8. Deduct current year's depreciation | | 0 |
| 9. Book/adjusted carrying value at the end of current period (Lines 1+2+3+4-5+6-7-8) | 0 | 0 |
| 10. Deduct total nonadmitted amounts | 0 | 0 |
| 11. Statement value at end of current period (Line 9 minus Line 10) | 0 | 0 |

## SCHEDULE B – VERIFICATION

**Mortgage Loans**

| | 1<br>Year to Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1. Book value/recorded investment excluding accrued interest, December 31 of prior year | 0 | 0 |
| 2. Cost of acquired: | | |
| 2.1  Actual cost at time of acquisition | | 0 |
| 2.2  Additional investment made after acquisition | | 0 |
| 3. Capitalized deferred interest and other | | 0 |
| 4. Accrual of discount | | 0 |
| 5. Unrealized valuation increase (decrease) | | 0 |
| 6. Total gain (loss) on disposals | | 0 |
| 7. Deduct amounts received on disposals | | 0 |
| 8. Deduct amortization of premium and mortgage interest points and commitment fees | | 0 |
| 9. Total foreign exchange change in book value/recorded investment excluding accrued interest | | 0 |
| 10. Deduct current year's other than temporary impairment recognized | | 0 |
| 11. Book value/recorded investment excluding accrued interest at end of current period (Lines 1+2+3+4+5+6-7-8+9-10) | 0 | 0 |
| 12. Total valuation allowance | | 0 |
| 13. Subtotal (Line 11 plus Line 12) | 0 | 0 |
| 14. Deduct total nonadmitted amounts | 0 | 0 |
| 15. Statement value at end of current period (Line 13 minus Line 14) | 0 | 0 |

## SCHEDULE BA – VERIFICATION

**Other Long-Term Invested Assets**

| | 1<br>Year To Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1. Book/adjusted carrying value, December 31 of prior year | 0 | 0 |
| 2. Cost of acquired: | | |
| 2.1  Actual cost at time of acquisition | | 0 |
| 2.2  Additional investment made after acquisition | | 0 |
| 3. Capitalized deferred interest and other | | 0 |
| 4. Accrual of discount | | 0 |
| 5. Unrealized valuation increase (decrease) | | 0 |
| 6. Total gain (loss) on disposals | | 0 |
| 7. Deduct amounts received on disposals | | 0 |
| 8. Deduct amortization of premium and depreciation | | 0 |
| 9. Total foreign exchange change in book/adjusted carrying value | | 0 |
| 10. Deduct current year's other than temporary impairment recognized | | 0 |
| 11. Book/adjusted carrying value at end of current period (Lines 1+2+3+4+5+6-7-8+9-10) | 0 | 0 |
| 12. Deduct total nonadmitted amounts | 0 | 0 |
| 13. Statement value at end of current period (Line 11 minus Line 12) | 0 | 0 |

## SCHEDULE D – VERIFICATION

**Bonds and Stocks**

| | 1<br>Year To Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1. Book/adjusted carrying value of bonds and stocks, December 31 of prior year | 1,296,051,249 | 1,074,128,524 |
| 2. Cost of bonds and stocks acquired | 220,870,155 | 404,755,159 |
| 3. Accrual of discount | 485,794 | 1,953,171 |
| 4. Unrealized valuation increase (decrease) | 2,849,708 | |
| 5. Total gain (loss) on disposals | 670,661 | 6,571,297 |
| 6. Deduct consideration for bonds and stocks disposed of | 63,846,964 | 179,312,027 |
| 7. Deduct amortization of premium | 3,366,058 | 10,929,741 |
| 8. Total foreign exchange change in book/adjusted carrying value | (3,994,480) | 228,122 |
| 9. Deduct current year's other than temporary impairment recognized | 4,007,432 | 1,343,256 |
| 10. Book/adjusted carrying value at end of current period (Lines 1+2+3+4+5-6-7-8-9) | 1,445,720,613 | 1,296,051,249 |
| 11. Deduct total nonadmitted amounts | 413,385 | |
| 12. Statement value at end of current period (Line 10 minus Line 11) | 1,445,307,228 | 1,296,051,249 |

SI01

Confidential

PFEIFFER 000371

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE D - PART 1B

Showing the Acquisitions, Dispositions and Non-Trading Activity
During the Current Quarter for all Bonds and Preferred Stock by Rating Class

| | 1<br>Book/Adjusted<br>Carrying Value<br>Beginning of<br>Current Quarter | 2<br>Acquisitions<br>During<br>Current Quarter | 3<br>Dispositions<br>During<br>Current Quarter | 4<br>Non-Trading<br>Activity<br>During<br>Current Quarter | 5<br>Book/Adjusted<br>Carrying Value<br>End of<br>First Quarter | 6<br>Book/Adjusted<br>Carrying Value<br>End of<br>Second Quarter | 7<br>Book/Adjusted<br>Carrying Value<br>End of<br>Third Quarter | 8<br>Book/Adjusted<br>Carrying Value<br>December 31<br>Prior Year |
|---|---|---|---|---|---|---|---|---|
| **BONDS** | | | | | | | | |
| 1. Class 1 (a) | 1,958,205,673 | 513,958,589 | 444,381,896 | (10,020,282) | 2,017,762,094 | 0 | 0 | 1,958,205,673 |
| 2. Class 2 (a) | 14,526,560 | 0 | 5,359,101 | 26,921 | 9,194,380 | 0 | 0 | 14,526,560 |
| 3. Class 3 (a) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4. Class 4 (a) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5. Class 5 (a) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6. Class 6 (a) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7. Total Bonds | 1,972,732,233 | 513,958,589 | 449,740,997 | (9,993,361) | 2,026,956,474 | 0 | 0 | 1,972,732,233 |
| **PREFERRED STOCK** | | | | | | | | |
| 8. Class 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9. Class 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10. Class 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11. Class 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12. Class 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 13. Class 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 14. Total Preferred Stock | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 15. Total Bonds & Preferred Stock | 1,972,732,233 | 513,958,589 | 449,740,997 | (9,993,361) | 2,026,956,474 | 0 | 0 | 1,972,732,233 |

(a) Book/Adjusted Carrying Value column for the end of the current reporting period includes the following amount of non-rated short-term and cash equivalent bonds by NAIC designation: NAIC 1  $.............383,962,776 ; NAIC 2  $.................7,900,000 ; NAIC 3  $..............................0 ;
NAIC 4  $.................................0 ; NAIC 5  $.........................0 ; NAIC 6  $...............................0

SI02

PFEIFFER 000372

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE DA - PART 1

**Short-Term Investments**

| | 1<br><br>Book/Adjusted<br>Carrying Value | 2<br><br>Par Value | 3<br><br>Actual Cost | 4<br><br>Interest Collected<br>Year To Date | 5<br>Paid for Accrued<br>Interest<br>Year To Date |
|---|---|---|---|---|---|
| 9199999 | 581,649,246 | XXX | 585,364,226 | 118,711 | 0 |

# SCHEDULE DA - VERIFICATION

**Short-Term Investments**

| | 1<br><br>Year To Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1.  Book/adjusted carrying value, December 31 of prior year | 676,680,983 | 931,289,319 |
| 2.  Cost of short-term investments acquired | 293,088,444 | 2,161,500,310 |
| 3.  Accrual of discount | 86,106 | 293,425 |
| 4.  Unrealized valuation increase (decrease) | 0 | 0 |
| 5.  Total gain (loss) on disposals | 39,403 | 7,180 |
| 6.  Deduct consideration received on disposals | 386,602,077 | 2,412,943,679 |
| 7.  Deduct amortization of premium | 1,643,613 | 4,333,009 |
| 8.  Total foreign exchange change in book/adjusted carrying value | 0 | 867,437 |
| 9.  Deduct current year's other than temporary impairment recognized | 0 | 0 |
| 10.  Book/adjusted carrying value at end of current period (Lines 1+2+3+4+5-6-7+8-9) | 581,649,246 | 676,680,983 |
| 11.  Deduct total nonadmitted amounts | 0 | 0 |
| 12.  Statement value at end of current period (Line 10 minus Line 11) | 581,649,246 | 676,680,983 |

Confidential                                                                                               PFEIFFER 000373

**STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY**

Schedule DB - Part A - Verification

# NONE

Schedule DB - Part B- Verification

# NONE

Schedule DB - Part C - Section 1

# NONE

Schedule DB - Part C - Section 2

# NONE

Schedule DB - Verification

# NONE

**Confidential**                                                                                      **PFEIFFER 000374**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE E-VERIFICATION
### (Cash Equivalents)

| | 1<br>Year To Date | 2<br>Prior Year Ended<br>December 31 |
|---|---|---|
| 1. Book/adjusted carrying value, December 31 of prior year | 135,395 | 203,891 |
| 2. Cost of cash equivalents acquired | 23,620 | 79,698 |
| 3. Accrual of discount | 0 | 0 |
| 4. Unrealized valuation increase (decrease) | 0 | 0 |
| 5. Total gain (loss) on disposals | 0 | 0 |
| 6. Deduct consideration received on disposals | 0 | 148,194 |
| 7. Deduct amortization of premium | 0 | 0 |
| 8. Total foreign exchange change in book/adjusted carrying value | 0 | 0 |
| 9. Deduct current year's other than temporary impairment recognized | 0 | 0 |
| 10. Book/adjusted carrying value at end of current period (Lines 1+2+3+4+5-6-7+8-9) | 159,015 | 135,395 |
| 11. Deduct total nonadmitted amounts | 0 | 0 |
| 12. Statement value at end of current period (Line 10 minus Line 11) | 159,015 | 135,395 |

Confidential                                                                                    PFEIFFER 000375

**STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY**

Schedule A - Part 2
# NONE

Schedule A - Part 3
# NONE

Schedule B - Part 2
# NONE

Schedule B - Part 3
# NONE

Schedule BA - Part 2
# NONE

Schedule BA - Part 3
# NONE

E01, E02, E03

**Confidential**

**STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY**

# SCHEDULE D - PART 3

Show All Long-Term Bonds and Stock Acquired During the Current Quarter

| 1 CUSIP Identification | 2 Description | 3 Foreign | 4 Date Acquired | 5 Name of Vendor | 6 Number of Shares of Stock | 7 Actual Cost | 8 Par Value | 9 Paid for Accrued Interest and Dividends | 10 NAIC Designation or Market Indicator (a) |
|---|---|---|---|---|---|---|---|---|---|
| 36178N-G6-0 | GNMA II Pool # R92921  4.000%/09/20/42 | | 02/06/2013 | Goldman Sachs. | | 2,863,546 | 2,589,430 | 5,179 | 1 |
| 36178N-H4-1 | GNMA II Pool # R92233  4.000%/11/20/42 | | 02/06/2013 | Goldman Sachs. | | 13,377,891 | 12,097,281 | 24,195 | 1 |
| 0599999 - Total - Bonds - U.S. Governments | | | | | | 16,241,437 | 14,686,711 | 29,373 | XXX |
| 34153R-L2-2 | Florida ST Brd Of Edu Public Ed Series F | | 02/15/2013 | Scott & Stringfellow. | | 1,918,420 | 1,620,000 | 18,000 | 1FE |
| 419791-G9-6 | Hawaii ST Series D2  5.000%/12/01/29 | | 02/13/2013 | Janney Montgomery, Scott Inc. | | 9,298,160 | 7,730,000 | 83,742 | 1FE |
| 60559D-6AA4 | Mississippi St Series A  5.000%/10/01/2 | | 02/13/2013 | Various. | | 8,073,994 | 6,725,000 | 125,217 | 1FE |
| 93974C-G6-1 | Washington ST Series C  5.000%/06/01/31 | | 02/08/2013 | Scott & Stringfellow. | | 4,475,187 | 3,775,000 | 37,780 | 1FE |
| 93974C-G7-9 | Washington ST  5.000%/06/01/32 | | 02/07/2013 | Scott & Stringfellow. | | 2,238,485 | 1,900,000 | 18,736 | 1FE |
| 1799999 - Total - Bonds - U.S. States, Territories and Possessions | | | | | | 26,005,276 | 21,750,000 | 283,444 | XXX |
| 213185-HA-2 | Cook City II  5.000%/11/15/21 | | 02/19/2013 | Tax Free Exchange. | | 2,731,886 | 2,660,000 | 35,119 | 1FE |
| 213185-HK-0 | Cook City II  5.000%/11/15/21 | | 02/19/2013 | Tax Free Exchange. | | 5,824,299 | 5,735,000 | 74,874 | 1FE |
| 303820-8P-2 | Fairfax County VA  5.000%/10/01/30 | | 01/30/2013 | Chase. | | 12,462,234 | 10,270,000 | 14,264 | 1FE |
| 303820-8G-0 | Fairfax County VA Series A  5.000%/10/0 | | 02/11/2013 | Barclays Capital Inc. | | 6,020,750 | 5,000,000 | 13,889 | 1FE |
| 517840-3L-6 | Las Vegas Vly  NV Wtr Dist  Series C  5. | | 02/14/2013 | Janney Montgomery, Scott Inc. | | 10,571,629 | 9,070,000 | 99,518 | 1FE |
| 517840-G5-1 | Las Vegas Vly  NV Wtr Dist  4.750%/06/0 | | 01/29/2013 | BNY Capital Mkts. | | 1,414,686 | 1,300,000 | 10,292 | 1FE |
| 2499999 - Total - Bonds - U.S. Political Subdivisions of States, Territories and Possessions | | | | | | 39,025,484 | 34,035,000 | 247,956 | XXX |
| 3132H5-6U-2 | FHLMC Gld Pool # U80883  3.500%/02/01/ | | 02/07/2013 | PNC Securities. | | 8,623,999 | 8,100,000 | 8,663 | 1 |
| 3132HR-JN-1 | FHLMC Pool # C04769  3.500%/01/01/43. | | 01/23/2013 | Greenwich Capital | | 2,647,463 | 2,451,355 | 2,622 | 1 |
| 3138EH-3V-2 | FNMA Pool # AL1711  4.500%/08/01/41. | | 03/25/2013 | Wells Fargo Bank | | 9,648,516 | 8,762,665 | 11,241 | 1 |
| 3138LT-4P-0 | FNMA Pool # AC8529  4.000%/06/01/42. | | 01/01/2013 | Nomura Securities Inc. | | (61,120) | (54,980) | (79) | 1 |
| 3138W-CD-4 | FNMA Pool # AR3899  3.500%/01/01/43. | | 01/23/2013 | Greenwich Capital | | 4,273,362 | 3,966,235 | 4,231 | 1 |
| 3138W-MI-7 | FNMA Pool # AR6860  3.500%/02/01/43. | | 02/06/2013 | PNC Securities. | | 13,990,302 | 13,136,434 | 14,049 | 1 |
| 3138W-SW2 | FNMA Pool # AR6832  3.500%/02/01/43. | | 02/06/2013 | PNC Securities. | | 11,419,092 | 10,712,722 | 11,457 | 1 |
| 3138W-CT-9 | FNMA Pool # AR9081  3.500%/03/01/43. | | 02/26/2013 | PNC Securities. | | 5,541,250 | 5,200,000 | 13,144 | 1 |
| 438701-TC-8 | Honolulu Hawaii City & Cnty  5.000%/07/ | | 01/29/2013 | Merrill Lynch Pierce Fenner. | | 2,347,480 | 2,000,000 | 32,500 | 1FE |
| 480780-CM-5 | Jordan Vly UT WF Conservancy Series B. | | 02/19/2013 | Scott & Stringfellow. | | 1,190,140 | 1,000,000 | 19,583 | 1FE |
| 57583U-NH-7 | Massachusetts St Dev Fin Agy  5.000%/07 | | 02/07/2013 | First Union. | | 11,658,200 | 10,000,000 | 56,944 | 1FE |
| 576000-LG-4 | Massachusetts St Sch Bldg Auth Series B. | | 01/29/2013 | BNY Capital Mkts. | | 4,467,780 | 3,800,000 | 55,944 | 1FE |
| 576000-NG-4 | Massachusetts St Sch Bldg Auth Series B. | | 02/12/2013 | First Union. | | 12,083,600 | 10,000,000 | 0 | 1FE |
| 656009-KF-3 | Norfolk VA Wtr Rev  5.000%/11/01/34. | | 02/12/2013 | Merrill Lynch Pierce Fenner. | | 2,688,088 | 2,295,000 | 0 | 1FE |
| 656009-KG-1 | Norfolk VA Wtr Rev  5.000%/11/01/35. | | 02/12/2013 | Merrill Lynch Pierce Fenner. | | 2,818,957 | 2,415,000 | 0 | 1FE |
| 656009-KH-9 | Norfolk VA Wtr Rev  5.000%/11/01/36. | | 02/12/2013 | Merrill Lynch Pierce Fenner. | | 2,946,887 | 2,535,000 | 0 | 1FE |
| 656009-KJ-5 | Norfolk VA Wtr Rev  5.000%/11/01/37. | | 02/12/2013 | Merrill Lynch Pierce Fenner. | | 769,884 | 665,000 | 0 | 1FE |
| 656009-KK-2 | Norfolk VA Wtr Rev  5.000%/11/01/38. | | 02/12/2013 | Merrill Lynch Pierce Fenner. | | 3,234,109 | 2,805,000 | 0 | 1FE |
| 684603-6T-7 | Orange Cnty FL Health Facs  5.000%/01/0 | | 02/01/2013 | Citigroup Global Markets, Inc. | | 3,904,040 | 3,500,000 | 17,014 | 1FE |
| 875290-WA4 | Tampa FL Wtr & Swr Revenue  5.000%/10/0 | | 02/19/2013 | Scott & Stringfellow. | | 1,192,670 | 1,000,000 | 19,583 | 1FE |
| 3199999 - Total - Bonds - U.S. Special Revenue and Special Assessment and all Non-Guaranteed Obligations of . | | | | | | 105,374,659 | 94,279,430 | 266,896 | XXX |
| 071813-BF-5 | Baxter International Inc  2.400%/08/15/ | | 02/22/2013 | Goldman Sachs. | | 6,541,277 | 6,700,000 | 5,360 | 1FE |
| 141781-AV-0 | Cargill Inc Series 144A  4.307%/05/14/2. | | 01/29/2013 | Chase. | | 965,077 | 870,000 | 7,911 | 1FE |
| 20030N-BD-2 | Comcast Corp  3.125%/07/15/22. | | 02/25/2013 | Morgan Stanley. | | 7,565,686 | 7,400,000 | 27,602 | 1FE |
| 38141E-A6-6 | Goldman Sachs Group Inc  6.000%/06/15/2 | | 02/12/2013 | Goldman Sachs. | | 4,272,948 | 3,600,000 | 36,000 | 1FE |
| 59156R-AX-6 | Met Life Inc  4.750%/02/08/21. | | 02/14/2013 | Deutsche Bank | | 3,431,220 | 3,000,000 | 4,750 | 1FE |
| 713448-BX-3 | Pepsico Inc  2.750%/03/05/22. | | 02/22/2013 | Various. | | 8,124,059 | 8,024,000 | 105,426 | 1FE |
| 94974B-FJ-4 | Wells Fargo & Company Series M  3.450%. | | 02/06/2013 | Wells Fargo Bank | | 3,333,032 | 3,335,000 | 0 | 1FE |
| 3899999 - Total - Bonds - Industrial, Misc. | | | | | | 34,233,300 | 32,929,000 | 187,068 | XXX |
| 8399997 - Total - Bonds - Part 3 | | | | | | 220,870,155 | 197,710,142 | 1,014,738 | XXX |
| 8399999 - Total - Bonds | | | | | | 220,870,155 | 197,710,142 | 1,014,738 | XXX |
| 8999999 - Total - Preferred Stocks | | | | | | 0 | XXX | 0 | XXX |
| 9799999 - Total - Common Stocks | | | | | | 0 | XXX | 0 | XXX |
| 9899999 - Total - Preferred and Common Stocks | | | | | | 0 | XXX | 0 | XXX |
| 9999999 Totals | | | | | | 220,870,155 | XXX | 1,014,738 | XXX |

(a) For all common stock bearing the NAIC market indicator "U" provide: the number of such issues .................... 0 .

E04

**Confidential**

**PFEIFFER 000377**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE D - PART 4

Show All Long-Term Bonds and Stock Sold, Redeemed or Otherwise Disposed of by the Company During the Current Quarter

| 1 | 2 | 3 Foreign | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Change in Book/Adjusted Carrying Value | | | | | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| | | | | | | | | | | 11 | 12 | 13 | 14 | 15 | | | | | | | |
| CUSIP Identification | Description | | Disposal Date | Name of Purchaser | Number of Shares of Stock | Consideration | Par Value | Actual Cost | Prior Year Book/Adjusted Carrying Value | Unrealized Valuation Increase/(Decrease) | Current Year's (Amortization)/Accretion | Current Year's Other Than Temporary Impairment Recognized | Total Change in B./A.C.V. (11 + 12 - 13) | Total Foreign Exchange Change in B./A.C.V. | Book/Adjusted Carrying Value at Disposal Date | Foreign Exchange Gain (Loss) on Disposal | Realized Gain (Loss) on Disposal | Total Gain (Loss) on Disposal | Bond Interest/Stock Dividends Received During Year | Stated Contractual Maturity Date | NAIC Designation or Market Indicator (a) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | GNMA II Pool # AB3021 | | | | | | | | | | | | | | | | | | | | |
| 36178N-0B-0 | 4.000%/09/33/42 | | 03/01/2013 | Paydown | | 34,784 | 34,784 | 38,468 | 0 | 0 | (3,682) | | (3,682) | 0 | 34,784 | 0 | 0 | 0 | 116 | 09/20/2042 | 1 |
| | GNMA II Pool # AB9233 | | | | | | | | | | | | | | | | | | | | |
| 36178NAHI-1 | 4.000%/11/20/42 | | 03/01/2013 | Paydown | | 67,735 | 67,735 | 74,905 | 0 | 0 | (7,170) | | (7,170) | 0 | 67,735 | 0 | 0 | 0 | 226 | 11/20/2042 | 1 |
| | GNMA Pool # 004679 | | | | | | | | | | | | | | | | | | | | |
| 36202K-GB-2 | 5.000%/03/20/41 | | 03/01/2013 | Paydown | | 247,668 | 247,668 | 273,520 | 273,520 | 0 | (25,852) | | (25,852) | 0 | 247,668 | 0 | 0 | 0 | 2,115 | 03/20/2041 | 1 |
| 0566999- | Bonds - U.S. Governments | | | | | 350,187 | 350,187 | 386,891 | 273,520 | 0 | (36,705) | 0 | (36,705) | 0 | 350,187 | 0 | 0 | 0 | 2,457 | XXX | XXX |
| 677516-GD-7 | Ohio St 5.250%/03/01/14) | | 02/01/2013 | Call | 100,0000 | 2,435,000 | 2,435,000 | 2,691,749 | 2,437,567 | 0 | (2,567) | | (2,567) | 0 | 2,435,000 | 0 | 0 | 0 | 63,919 | 03/01/2014 | 1FE |
| 1759999- | Bonds - U.S. States, Territories and Possessions | | | | | 2,435,000 | 2,435,000 | 2,691,749 | 2,437,567 | 0 | (2,567) | 0 | (2,567) | 0 | 2,435,000 | 0 | 0 | 0 | 63,919 | XXX | XXX |
| | Benton Tx Indep Sch Dist | | | | | | | | | | | | | | | | | | | | |
| 081077-YU-7 | 5.000%/02/15/ Cook City IL 5.000% | | 01/25/2013 | Lebenthal + Co, L.l.c. | | 854,750 | 725,000 | 848,148 | 848,148 | 0 | (227) | | (227) | 0 | 845,920 | 0 | 8,869 | 8,869 | 21,045 | 02/15/2039 | 1FE |
| 213183-SN-2 | 11/15/21 | | 02/19/2013 | Tax Free Exchange | | 8,556,184 | 8,425,000 | 8,644,259 | 8,563,635 | 0 | (7,450) | | (7,450) | 0 | 8,556,184 | 0 | 0 | 0 | 109,963 | 11/15/2021 | 1FE |
| 2499999- | Bonds - U.S. Political Subdivisions of States, Territories and Possessions | | | | | 9,410,974 | 9,150,000 | 9,490,389 | 9,409,782 | 0 | (7,677) | 0 | (7,677) | 0 | 9,402,105 | 0 | 8,869 | 8,869 | 131,038 | XXX | XXX |
| | FHMC Gld 15 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 31283K-6E-3 | G31769 5.000% | | 03/01/2013 | Paydown | | 32,034 | 32,034 | 31,654 | 31,722 | 0 | 313 | | 313 | 0 | 32,034 | 0 | 0 | 0 | 265 | 10/01/2020 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128H5-NN-2 | A47597 5.000% | | 03/01/2013 | Paydown | | 186,604 | 186,604 | 179,256 | 179,529 | 0 | 7,075 | | 7,075 | 0 | 186,604 | 0 | 0 | 0 | 1,519 | 10/01/2037 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128KV-6A-2 | A88085 6.000% | | 03/01/2013 | Paydown | | 111,330 | 111,330 | 114,044 | 113,906 | 0 | (2,576) | | (2,576) | 0 | 111,330 | 0 | 0 | 0 | 615 | 10/01/2037 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128KV-8C-8 | A98097 6.500% | | 03/01/2013 | Paydown | | 1,475 | 1,475 | 1,511 | 1,510 | 0 | (35) | | (35) | 0 | 1,475 | 0 | 0 | 0 | 16 | 10/01/2037 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128KV-RB-7 | A57832 6.500% | | 03/01/2013 | Paydown | | 117,252 | 117,252 | 120,110 | 119,994 | 0 | (2,742) | | (2,742) | 0 | 117,252 | 0 | 0 | 0 | 651 | 10/01/2037 | 1 |
| | FHMC Gld 15 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128M-CR-8 | G31980 5.000% | | 03/01/2013 | Paydown | | 79,457 | 79,457 | 76,981 | 77,377 | 0 | 2,080 | | 2,080 | 0 | 79,457 | 0 | 0 | 0 | 646 | 04/01/2021 | 1 |
| | FHMC Pool # G00607 | | | | | | | | | | | | | | | | | | | | |
| 3128N8-U6-5 | 4.500%/09/01/41 | | 03/01/2013 | Paydown | | 664,876 | 664,876 | 691,471 | 690,928 | 0 | (26,053) | | (26,053) | 0 | 664,876 | 0 | 0 | 0 | 4,619 | 09/01/2041 | 1 |
| | FHMC Pool # G14164 | | | | | | | | | | | | | | | | | | | | |
| 3128N5-Z5-7 | 3.500%/06/01/26 | | 03/01/2013 | Paydown | | 336,282 | 336,282 | 345,215 | 344,561 | 0 | (8,279) | | (8,279) | 0 | 336,282 | 0 | 0 | 0 | 1,820 | 06/01/2026 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 3128N8-FQ-8 | G08174 6.000% | | 03/01/2013 | Paydown | | 97,779 | 97,779 | 98,245 | 98,231 | 0 | (453) | | (453) | 0 | 97,779 | 0 | 0 | 0 | 970 | 09/01/2037 | 1 |
| | FHMC Pool # G01381 | | | | | | | | | | | | | | | | | | | | |
| 3128PF-RA-3 | 4.000%/07/01/31 | | 03/01/2013 | Paydown | | 740,718 | 740,718 | 762,748 | 762,011 | 0 | (21,294) | | (21,294) | 0 | 740,718 | 0 | 0 | 0 | 4,790 | 07/01/2031 | 1 |
| | FHMC Pool # Q01839 | | | | | | | | | | | | | | | | | | | | |
| 31282J-BG-4 | 5.000%/05/01/34 | | 03/01/2013 | Paydown | | 259,654 | 259,654 | 252,879 | 253,187 | 0 | 6,468 | | 6,468 | 0 | 259,654 | 0 | 0 | 0 | 2,103 | 05/01/2034 | 1 |
| | FHMC Pool # A90710 | | | | | | | | | | | | | | | | | | | | |
| 31288B-YF-4 | 4.500%/01/01/40 | | 03/01/2013 | Paydown | | 233,769 | 233,769 | 250,425 | 250,110 | 0 | (16,340) | | (16,340) | 0 | 233,769 | 0 | 0 | 0 | 1,701 | 01/01/2040 | 1 |
| | FHMC Gld 15 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 31284S-ZG-6 | 4.500%/02/01/41 | | 03/01/2013 | Paydown | | 199,148 | 199,148 | 207,083 | 206,910 | 0 | (7,761) | | (7,761) | 0 | 199,148 | 0 | 0 | 0 | 1,555 | 02/01/2041 | 1 |
| | FHMC Pool # B15981 | | | | | | | | | | | | | | | | | | | | |
| 31288S-J5-1 | 6.500% | | 03/01/2013 | Paydown | | 110,429 | 110,429 | 109,048 | 109,361 | 0 | 1,088 | | 1,088 | 0 | 110,429 | 0 | 0 | 0 | 844 | 07/01/2019 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 31297G-3N-0 | A24455 6.000% | | 03/01/2013 | Paydown | | 58,212 | 58,212 | 59,684 | 59,614 | 0 | (1,402) | | (1,402) | 0 | 58,212 | 0 | 0 | 0 | 518 | 07/01/2034 | 1 |
| | FHMC Gld 30 Yr Pool # | | | | | | | | | | | | | | | | | | | | |
| 31320A-HK-9 | U60068 4.500% | | 03/01/2013 | Paydown | | 287,798 | 287,798 | 298,983 | 298,638 | 0 | (10,841) | | (10,841) | 0 | 287,798 | 0 | 0 | 0 | 1,909 | 03/01/2041 | 1 |
| | FHMC Pool # Q04851 | | | | | | | | | | | | | | | | | | | | |
| 31333K-ZG-2 | 4.000%/11/01/41 | | 03/01/2013 | Paydown | | 26,204 | 26,204 | 27,748 | 27,728 | 0 | (1,525) | | (1,525) | 0 | 26,204 | 0 | 0 | 0 | 162 | 11/01/2041 | 1 |
| | FHMC Pool # Q05905 | | | | | | | | | | | | | | | | | | | | |
| 31333MCQ-8 | 4.000%/01/01/42 | | 03/01/2013 | Paydown | | 163,904 | 163,904 | 174,464 | 174,300 | 0 | (10,395) | | (10,395) | 0 | 163,904 | 0 | 0 | 0 | 1,165 | 01/01/2042 | 1 |
| | FHMC Gld Pool # U80883 | | | | | | | | | | | | | | | | | | | | |
| 3132H8-8U-2 | 3.500%/02/01/ | | 03/01/2013 | Paydown | | 12,004 | 12,004 | 12,780 | 0 | 0 | (778) | | (778) | 0 | 12,004 | 0 | 0 | 0 | 35 | 02/01/2043 | 1 |
| | FHMC Gld Pool # U80542 | | | | | | | | | | | | | | | | | | | | |
| 3132H6-S7-9 | 4.000%/12/01/ | | 03/01/2013 | Paydown | | 49,807 | 49,807 | 55,305 | 55,305 | 0 | (5,497) | | (5,497) | 0 | 49,807 | 0 | 0 | 0 | 331 | 12/01/2042 | 1 |
| | FHMC Pool # Q12394 | | | | | | | | | | | | | | | | | | | | |
| 3132H6-U5-5 | 3.500%/12/01/ | | 03/01/2013 | Paydown | | 34,798 | 34,798 | 37,663 | 37,663 | 0 | (2,865) | | (2,865) | 0 | 34,798 | 0 | 0 | 0 | 255 | 12/01/2042 | 1 |
| | FHMC Pool # Q04769 | | | | | | | | | | | | | | | | | | | | |
| 3132HN-JN-1 | 3.000%/01/01/43 | | 03/01/2013 | Paydown | | 6,928 | 6,928 | 7,482 | 0 | 0 | (554) | | (554) | 0 | 6,928 | 0 | 0 | 0 | 20 | 01/01/2043 | 1 |
| | FNMA Conventional Loan | | | | | | | | | | | | | | | | | | | | |
| 31371L-GB-3 | Pool # 254886 5 | | 03/01/2013 | Paydown | | 59,653 | 59,653 | 60,780 | 60,261 | 0 | (608) | | (608) | 0 | 59,653 | 0 | 0 | 0 | 472 | 09/01/2018 | 1 |

Confidential

PFEIFFER 000378

E05

**STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY**

# SCHEDULE D - PART 4

Show All Long-Term Bonds and Stock Sold, Redeemed or Otherwise Disposed of by the Company During the Current Quarter

| 1 CUSIP Identification | 2 Description | 3 Foreign | 4 Disposal Date | 5 Name of Purchaser | 6 Number of Shares of Stock | 7 Consideration | 8 Par Value | 9 Actual Cost | 10 Prior Year Book/Adjusted Carrying Value | 11 Unrealized Valuation Increase/(Decrease) | 12 Current Year's (Amortization)/Accretion | 13 Current Year's Other Than Temporary Impairment Recognized | 14 Total Change in B./A.C.V. (11 + 12 - 13) | 15 Total Foreign Exchange Change in B./A.C.V. | 16 Book/Adjusted Carrying Value at Disposal Date | 17 Foreign Exchange Gain (Loss) on Disposal | 18 Realized Gain (Loss) on Disposal | 19 Total Gain (Loss) on Disposal | 20 Bond Interest/Stock Dividends Received During Year | 21 Stated Contractual Maturity Date | 22 NAIC Designation or Market Indicator (a) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31371L-JS-9 | FNMA Conventional Loan Pool # 256073  5 | | 03/01/2013 | Paydown | | 212,594 | 212,594 | 217,477 | 217,192 | 0 | (4,598) | 0 | (4,598) | 0 | 212,594 | 0 | 0 | 0 | 1,933 | 03/01/2034 | 1 |
| 31371L-N4-8 | FNMA Conventional Loan Pool # 256179  5 | | 03/01/2013 | Paydown | | 244,550 | 244,550 | 248,256 | 248,012 | 0 | (3,462) | 0 | (3,462) | 0 | 244,550 | 0 | 0 | 0 | 1,980 | 04/01/2034 | 1 |
| 31371L-NZ-9 | FNMA Conventional Loan Pool # 256176  4 | | 03/01/2013 | Paydown | | 114,953 | 114,953 | 114,504 | 114,536 | 0 | 417 | 0 | 417 | 0 | 114,953 | 0 | 0 | 0 | 846 | 04/01/2019 | 1 |
| 31371L-QV-4 | FNMA Conventional Loan Pool # 256208  5 | | 03/01/2013 | Paydown | | 198,288 | 198,288 | 193,950 | 194,124 | 0 | 4,164 | 0 | 4,164 | 0 | 198,288 | 0 | 0 | 0 | 1,552 | 07/01/2034 | 1 |
| 31371L-VD-8 | FNMA Conventional Loan Pool # 256412  6 | | 03/01/2013 | Paydown | | 227,898 | 227,898 | 227,970 | 227,924 | 0 | (26) | 0 | (26) | 0 | 227,898 | 0 | 0 | 0 | 2,356 | 10/01/2034 | 1 |
| 31384A-Y5-8 | 3.500%/01/01/26 FNMA Pool # AH4631 | | 03/01/2013 | Paydown | | 132,001 | 132,001 | 135,445 | 135,282 | 0 | (3,281) | 0 | (3,281) | 0 | 132,001 | 0 | 0 | 0 | 744 | 01/01/2026 | 1 |
| 31384G-D8-0 | 3.500%/02/01/26 FNMA Pool # AH4636 | | 03/01/2013 | Paydown | | 284,605 | 284,605 | 291,587 | 291,298 | 0 | (6,692) | 0 | (6,692) | 0 | 284,605 | 0 | 0 | 0 | 1,587 | 02/01/2026 | 1 |
| 31384G-ZA-1 | 3.500%/01/01/26 FNMA Pool # AH5849 | | 03/01/2013 | Paydown | | 692,677 | 692,677 | 709,561 | 708,627 | 0 | (15,950) | 0 | (15,950) | 0 | 692,677 | 0 | 0 | 0 | 3,903 | 01/01/2026 | 1 |
| 31384T-GB-7 | 4.500%/02/01/41 FNMA Pool # AH6522 | | 03/01/2013 | Paydown | | 174,364 | 174,364 | 185,153 | 184,953 | 0 | (10,589) | 0 | (10,589) | 0 | 174,364 | 0 | 0 | 0 | 1,225 | 02/01/2041 | 1 |
| 31384N-LC-8 | 4.000%/03/01/41 FNMA Pool # AH7111 | | 03/01/2013 | Paydown | | 65,831 | 65,831 | 68,670 | 68,609 | 0 | (2,778) | 0 | (2,778) | 0 | 65,831 | 0 | 0 | 0 | 486 | 03/01/2041 | 1 |
| 31384A-AM-3 | 3.000%/03/01/26 FNMA Pool # AHO765 | | 03/01/2013 | Paydown | | 281,199 | 281,199 | 290,573 | 290,276 | 0 | (9,077) | 0 | (9,077) | 0 | 281,199 | 0 | 0 | 0 | 1,416 | 03/01/2026 | 1 |
| 31385J-Z7-9 | 4.000%/09/01/42 FNMA Pool # AK3592 | | 03/01/2013 | Paydown | | 63,614 | 63,614 | 68,728 | 68,645 | 0 | (5,031) | 0 | (5,031) | 0 | 63,614 | 0 | 0 | 0 | 579 | 09/01/2042 | 1 |
| 31385T-XA-9 | 4.000%/07/01/42 FNMA Pool # AO8529 | | 03/01/2013 | Paydown | | 193,978 | 193,978 | 204,660 | 204,628 | 0 | (10,647) | 0 | (10,647) | 0 | 193,978 | 0 | 0 | 0 | 1,026 | 07/01/2042 | 1 |
| 31385T-4P-0 | 4.000%/09/01/42 FNMA Pool # AO9471 | | 03/01/2013 | Paydown | | 98,695 | 98,695 | 109,716 | 109,716 | 0 | (11,020) | 0 | (11,020) | 0 | 98,695 | 0 | 0 | 0 | 539 | 09/01/2042 | 1 |
| 31385L-W9-6 | 3.500%/09/01/42 FNMA Pool # AR0356 | | 03/01/2013 | Paydown | | 53,704 | 53,704 | 57,139 | 57,110 | 0 | (3,406) | 0 | (3,406) | 0 | 53,704 | 0 | 0 | 0 | 313 | 09/01/2042 | 1 |
| 31385N-B3-3 | 4.000%/09/01/42 FNMA Pool # AS6736 | | 03/01/2013 | Paydown | | 190,661 | 190,661 | 210,502 | 210,411 | 0 | (19,749) | 0 | (19,749) | 0 | 190,661 | 0 | 0 | 0 | 1,717 | 09/01/2042 | 1 |
| 31385N-PA-4 | 3.500%/12/01/42 FNMA Pool # AR8999 | | 03/01/2013 | Paydown | | 12,790 | 12,790 | 13,926 | 13,926 | 0 | (1,137) | 0 | (1,137) | 0 | 12,790 | 0 | 0 | 0 | 75 | 12/01/2042 | 1 |
| 31385N-DD-4 | 3.500%/01/01/43 FNMA Pool # AR8960 | | 03/01/2013 | Paydown | | 6,089 | 6,089 | 6,556 | 0 | 0 | (467) | 0 | (467) | 0 | 6,089 | 0 | 0 | 0 | 18 | 01/01/2043 | 1 |
| 31385M-N7-7 | 3.500%/02/01/43 FNMA Pool # AR8332 | | 03/01/2013 | Paydown | | 22,446 | 22,446 | 23,905 | 0 | 0 | (1,459) | 0 | (1,459) | 0 | 22,446 | 0 | 0 | 0 | 85 | 02/01/2043 | 1 |
| 31385M-SM2 | 3.500%/02/01/43 FNMA Pool # AR8081 | | 03/01/2013 | Paydown | | 16,309 | 16,309 | 17,385 | 0 | 0 | (1,075) | 0 | (1,075) | 0 | 16,309 | 0 | 0 | 0 | 48 | 02/01/2043 | 1 |
| 31387V-CT-9 | 3.500%/01/01/43 FNMA Pool # AR9965 | | 03/01/2013 | Paydown | | 9,056 | 9,056 | 9,650 | 0 | 0 | (594) | 0 | (594) | 0 | 9,056 | 0 | 0 | 0 | 26 | 03/01/2043 | 1 |
| 31391G-5F-8 | FNMA Conventional Loan Pool # 893346  5 | | 03/01/2013 | Paydown | | 41,289 | 41,289 | 41,198 | 41,171 | 0 | 98 | 0 | 98 | 0 | 41,289 | 0 | 0 | 0 | 435 | 09/01/2017 | 1 |
| 31391D-FG-2 | FNMA Conventional Loan Pool # 893823  5 | | 03/01/2013 | Paydown | | 78 | 78 | 78 | 78 | 0 | 0 | 0 | 0 | 0 | 78 | 0 | 0 | 0 | 2 | 12/01/2017 | 1 |
| 31400F-X5-1 | FNMA Conventional Loan Pool # 698899  5 | | 03/01/2013 | Paydown | | 319 | 319 | 318 | 318 | 0 | 1 | 0 | 1 | 0 | 319 | 0 | 0 | 0 | 2 | 02/01/2018 | 1 |
| 31400C-4H-2 | FNMA Conventional Loan Pool # 725434  5 | | 03/01/2013 | Paydown | | 100,492 | 100,492 | 101,041 | 100,999 | 0 | (508) | 0 | (508) | 0 | 100,492 | 0 | 0 | 0 | 898 | 04/01/2034 | 1 |
| 31400C-VM-9 | FNMA Conventional Loan Pool # 725299  5 | | 03/01/2013 | Paydown | | 81,728 | 81,728 | 81,600 | 81,590 | 0 | 138 | 0 | 138 | 0 | 81,728 | 0 | 0 | 0 | 693 | 02/01/2034 | 1 |
| 31400D-H4-2 | FNMA Conventional Loan Pool # 725798  5 | | 03/01/2013 | Paydown | | 7,998 | 7,998 | 7,999 | 7,999 | 0 | 28 | 0 | 28 | 0 | 7,998 | 0 | 0 | 0 | 71 | 09/01/2019 | 1 |
| 31400D-PF-9 | FNMA Conventional Loan Pool # 725946  5 | | 03/01/2013 | Paydown | | 137,566 | 137,566 | 136,664 | 136,679 | 0 | 888 | 0 | 888 | 0 | 137,566 | 0 | 0 | 0 | 1,222 | 11/01/2034 | 1 |
| 31400H-YG-0 | FNMA Conventional Loan Pool # 729811  5 | | 03/01/2013 | Paydown | | 60,677 | 60,677 | 62,440 | 61,647 | 0 | (970) | 0 | (970) | 0 | 60,677 | 0 | 0 | 0 | 533 | 01/01/2019 | 1 |
| 31400Q-S2-5 | FNMA Conventional Loan Pool # 735036  5 | | 03/01/2013 | Paydown | | 142,458 | 142,458 | 141,401 | 141,421 | 0 | 1,038 | 0 | 1,038 | 0 | 142,458 | 0 | 0 | 0 | 1,286 | 12/01/2034 | 1 |
| 31400Q-VM-5 | FNMA Conventional Loan Pool # 735141  5 | | 03/01/2013 | Paydown | | 120,362 | 120,362 | 116,441 | 116,591 | 0 | 3,771 | 0 | 3,771 | 0 | 120,362 | 0 | 0 | 0 | 1,000 | 01/01/2035 | 1 |
| 31403N-C3-2 | FNMA Conventional Loan Pool # 739521  5 | | 03/01/2013 | Paydown | | 24,694 | 24,694 | 24,633 | 24,625 | 0 | 69 | 0 | 69 | 0 | 24,694 | 0 | 0 | 0 | 213 | 09/01/2020 | 1 |
| 31403G-2Z-3 | FNMA Conventional Loan Pool # 745192  5 | | 03/01/2013 | Paydown | | 14,769 | 14,769 | 14,719 | 14,718 | 0 | 51 | 0 | 51 | 0 | 14,769 | 0 | 0 | 0 | 135 | 06/01/2020 | 1 |

E05.1

Confidential
PFEIFFER 000379

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE D - PART 4

Show All Long-Term Bonds and Stock Sold, Redeemed or Otherwise Disposed of by the Company During the Current Quarter

| 1 CUSIP Identi- fication | 2 Description | 3 Foreign | 4 Disposal Date | 5 Name of Purchaser | 6 Number of Shares of Stock | 7 Consideration | 8 Par Value | 9 Actual Cost | 10 Prior Year Book/Adjusted Carrying Value | 11 Unrealized Valuation Increase/ (Decrease) | 12 Current Year's (Amortization)/ Accretion | 13 Current Year's Other Than Temporary Impairment Recognized | 14 Total Change in B./A.C.V. (11 + 12 - 13) | 15 Total Foreign Exchange Change in B./A.C.V. | 16 Book/ Adjusted Carrying Value at Disposal Date | 17 Foreign Exchange Gain (Loss) on Disposal | 18 Realized Gain (Loss) on Disposal | 19 Total Gain (Loss) on Disposal | 20 Bond Interest/Stock Dividends Received During Year | 21 Stated Contractual Maturity Date | 22 NAIC Desig- nation or Market Indicator (a) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31403G FQ-5 | FNMA Conventional Loan Pool # 746375    5 | | 03/01/2013. | Paydown | | 62,542 | 62,542 | 64,301 | 63,610 | 0 | (1,068) | 0 | (1,068) | 0 | 62,542 | 0 | 0 | 0 | 548 | 10/01/2018. | 1 |
| 31403J-YJ-4 | FNMA Conventional Loan Pool # 750523    5 | | 03/01/2013. | Paydown | | 6,930 | 6,930 | 7,126 | 7,059 | 0 | (129) | 0 | (129) | 0 | 6,930 | 0 | 0 | 0 | 58 | 01/01/2019. | 1 |
| 31403K-SM-6 | FNMA Conventional Loan Pool # 751224    5 | | 03/01/2013. | Paydown | | 4,801 | 4,801 | 4,915 | 4,908 | 0 | (108) | 0 | (108) | 0 | 4,801 | 0 | 0 | 0 | 37 | 02/01/2034. | 1 |
| 31403N-HV-2 | FNMA Conventional Loan Pool # 753644    5 | | 03/01/2013. | Paydown | | 22,377 | 22,377 | 23,191 | 22,830 | 0 | (453) | 0 | (453) | 0 | 22,377 | 0 | 0 | 0 | 208 | 11/01/2018. | 1 |
| 31403R-KI-6 | FNMA Conventional Loan Pool # 755497    5 | | 03/01/2013. | Paydown | | 5,087 | 5,087 | 5,075 | 5,073 | 0 | 15 | 0 | 15 | 0 | 5,087 | 0 | 0 | 0 | 44 | 11/01/2018. | 1 |
| 31403V-ED-7 | FNMA Conventional Loan Pool # 758652    5 | | 03/01/2013. | Paydown | | 21,287 | 21,287 | 21,889 | 21,644 | 0 | (357) | 0 | (357) | 0 | 21,287 | 0 | 0 | 0 | 177 | 01/01/2019. | 1 |
| 31403WBJ-0 | FNMA Conventional Loan Pool # 759751    5 | | 03/01/2013. | Paydown | | 3,050 | 3,050 | 3,085 | 3,075 | 0 | (25) | 0 | (25) | 0 | 3,050 | 0 | 0 | 0 | 28 | 01/01/2034. | 1 |
| 31403X-YW-9 | FNMA Conventional Loan Pool # 761325    5 | | 03/01/2013. | Paydown | | 11,409 | 11,409 | 11,373 | 11,371 | 0 | 38 | 0 | 38 | 0 | 11,409 | 0 | 0 | 0 | 124 | 04/01/2019. | 1 |
| 31404A-GB-7 | FNMA Conventional Loan Pool # 762620    5 | | 03/01/2013. | Paydown | | 23,998 | 23,998 | 24,584 | 24,547 | 0 | (562) | 0 | (562) | 0 | 23,998 | 0 | 0 | 0 | 241 | 12/01/2033. | 1 |
| 31404B-3G-5 | FNMA Conventional Loan Pool # 764099    5 | | 03/01/2013. | Paydown | | 52,416 | 52,416 | 52,670 | 52,649 | 0 | (233) | 0 | (233) | 0 | 52,416 | 0 | 0 | 0 | 233 | 03/01/2034. | 1 |
| 31404B-GD-7 | FNMA Conventional Loan Pool # 763752    5 | | 03/01/2013. | Paydown | | 35,672 | 35,672 | 35,656 | 35,650 | 0 | 23 | 0 | 23 | 0 | 35,672 | 0 | 0 | 0 | 334 | 01/01/2034. | 1 |
| 31404K-FX-5 | FNMA Conventional Loan Pool # 770082    5 | | 03/01/2013. | Paydown | | 127,422 | 127,422 | 128,039 | 127,986 | 0 | (564) | 0 | (564) | 0 | 127,422 | 0 | 0 | 0 | 886 | 04/01/2034. | 1 |
| 31404V-VP-0 | FNMA Conventional Loan Pool # 780122    5 | | 03/01/2013. | Paydown | | 1,879 | 1,879 | 1,838 | 1,842 | 0 | 38 | 0 | 38 | 0 | 1,879 | 0 | 0 | 0 | 16 | 05/01/2034. | 1 |
| 31405A-TF-0 | FNMA Conventional Loan Pool # 783850    5 | | 03/01/2013. | Paydown | | 214,166 | 214,166 | 205,466 | 205,654 | 0 | 8,512 | 0 | 8,512 | 0 | 214,166 | 0 | 0 | 0 | 1,693 | 09/01/2019. | 1 |
| 31405F-46-9 | FNMA Conventional Loan Pool # 788421    5 | | 03/01/2013. | Paydown | | 1,200 | 1,200 | 1,197 | 1,197 | 0 | 4 | 0 | 4 | 0 | 1,200 | 0 | 0 | 0 | 9 | 09/01/2019. | 1 |
| 31405F-4M1. | FNMA Conventional Loan Pool # 788428    5 | | 03/01/2013. | Paydown | | 1,632 | 1,632 | 1,627 | 1,627 | 0 | 6 | 0 | 6 | 0 | 1,632 | 0 | 0 | 0 | 15 | 09/01/2019. | 1 |
| 31406G-YR-4 | FNMA Conventional Loan Pool # 808620    5 | | 03/01/2013. | Paydown | | 97,451 | 97,451 | 98,319 | 98,261 | 0 | (810) | 0 | (810) | 0 | 97,451 | 0 | 0 | 0 | 1,310 | 09/01/2035. | 1 |
| 31407H-F7-6 | FNMA Conventional Loan Pool # 830360    6 | | 03/01/2013. | Paydown | | 104,335 | 104,335 | 103,708 | 103,715 | 0 | 620 | 0 | 620 | 0 | 104,335 | 0 | 0 | 0 | 976 | 08/01/2035. | 1 |
| 31407H-PD-2. | FNMA Conventional Loan Pool # 831220    6 | | 03/01/2013. | Paydown | | 215,330 | 215,330 | 218,089 | 217,938 | 0 | (2,608) | 0 | (2,608) | 0 | 215,330 | 0 | 0 | 0 | 2,047 | 01/01/2036. | 1 |
| 31407X-NJ-9. | FNMA Conventional Loan Pool # 843804    6 | | 03/01/2013. | Paydown | | 143,710 | 143,710 | 145,012 | 144,929 | 0 | (1,220) | 0 | (1,220) | 0 | 143,710 | 0 | 0 | 0 | 1,257 | 11/01/2035. | 1 |
| 31410B-2S-2. | FNMA Conventional Loan Pool # 884695    6 | | 03/01/2013. | Paydown | | 5,642 | 5,642 | 5,698 | 5,693 | 0 | (51) | 0 | (51) | 0 | 5,642 | 0 | 0 | 0 | 57 | 04/01/2036. | 1 |
| 31410G-GT-2. | FNMA Conventional Loan Pool # 885286    6 | | 03/01/2013. | Paydown | | 933 | 933 | 942 | 941 | 0 | (9) | 0 | (9) | 0 | 933 | 0 | 0 | 0 | 9 | 05/01/2036. | 1 |
| 31410G-MS-0. | FNMA Conventional Loan Pool # 886659    6 | | 03/01/2013. | Paydown | | 41,570 | 41,570 | 41,401 | 41,401 | 0 | 169 | 0 | 169 | 0 | 41,570 | 0 | 0 | 0 | 305 | 09/01/2036. | 1 |
| 31410G-AF-0. | FNMA Conventional Loan Pool # 888406    5 | | 03/01/2013. | Paydown | | 211,201 | 211,201 | 199,948 | 200,339 | 0 | 10,862 | 0 | 10,862 | 0 | 211,201 | 0 | 0 | 0 | 1,626 | 08/01/2036. | 1 |
| 31410K-X6-5. | FNMA Pool # 886074 5.029%09/01/35. | | 03/01/2013. | Paydown | | 249,444 | 249,444 | 269,633 | 269,123 | 0 | (19,680) | 0 | (19,680) | 0 | 249,444 | 0 | 0 | 0 | 2,028 | 09/01/2035. | 1 |
| 31411H-RS-1. | FNMA Conventional Loan Pool # 908697    6 | | 03/01/2013. | Paydown | | 42,831 | 42,831 | 43,259 | 43,235 | 0 | (404) | 0 | (404) | 0 | 42,831 | 0 | 0 | 0 | 608 | 08/01/2036. | 1 |
| 31412N-6G-6. | FNMA Pool # 930371 4.500%03/01/39. | | 03/01/2013. | Paydown | | 489,221 | 489,221 | 510,395 | 509,812 | 0 | (20,591) | 0 | (20,591) | 0 | 489,221 | 0 | 0 | 0 | 3,696 | 03/01/2039. | 1 |
| 31412R-9L-1. | FNMA Pool # 931551 4.500%07/01/39. | | 03/01/2013. | Paydown | | 682,645 | 682,645 | 712,160 | 711,463 | 0 | (28,818) | 0 | (28,818) | 0 | 682,645 | 0 | 0 | 0 | 4,892 | 07/01/2039. | 1 |
| 31416G-EZ-5. | FNMA Pool # 955752 4.500%09/01/39. | | 03/01/2013. | Paydown | | 743,540 | 743,540 | 775,721 | 774,973 | 0 | (31,433) | 0 | (31,433) | 0 | 743,540 | 0 | 0 | 0 | 5,403 | 05/01/2039. | 1 |
| 31416WU5-9. | FNMA Pool # A82503 3.032%09/01/25. | | 03/01/2013. | Paydown | | 45,352 | 45,352 | 46,821 | 46,748 | 0 | (1,396) | 0 | (1,396) | 0 | 45,352 | 0 | 0 | 0 | 227 | 09/01/2025. | 1 |
| 31416X-JD-3. | FNMA Pool # A82546 3.500%01/01/26. | | 03/01/2013. | Paydown | | 1,197,207 | 1,197,207 | 1,228,447 | 1,226,886 | 0 | (29,679) | 0 | (29,679) | 0 | 1,197,207 | 0 | 0 | 0 | 6,405 | 01/01/2026. | 1 |
| 31416Y-5G-9. | FNMA Pool # N0818 4.000%09/01/31. | | 03/01/2013. | Paydown | | 808,915 | 808,915 | 852,304 | 850,901 | 0 | (43,985) | 0 | (43,985) | 0 | 808,915 | 0 | 0 | 0 | 5,357 | 09/01/2031. | 1 |
| 31417Y-4C-8. | FNMA Pool # N0818 4.000%09/01/31. | | 03/01/2013. | Paydown | | 907,762 | 907,762 | 934,144 | 933,242 | 0 | (25,480) | 0 | (25,480) | 0 | 907,762 | 0 | 0 | 0 | 5,959 | 08/01/2031. | 1 |

E05.2

Confidential

PFEIFFER 000380

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE D - PART 4

Show All Long-Term Bonds and Stock Sold, Redeemed or Otherwise Disposed of by the Company During the Current Quarter

E05.3

| 1 | 2 | 3 For eig n | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Change in Book/Adjusted Carrying Value | | | | | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| | | | | | | | | | | 11 | 12 | 13 | 14 | 15 | | | | | | | |
| CUSIP Identi- fication | Description | | Disposal Date | Name of Purchaser | Number of Shares of Stock | Consideration | Par Value | Actual Cost | Prior Year Book/Adjusted Carrying Value | Unrealized Valuation Increase/ (Decrease) | Current Year's (Amortization)/ Accretion | Current Year's Other Than Temporary Impairment Recognized | Total Change in B./A.C.V. (11 + 12 - 13) | Total Foreign Exchange Change in B./A.C.V. | Book/ Adjusted Carrying Value at Disposal Date | Foreign Exchange Gain (Loss) on Disposal | Realized Gain (Loss) on Disposal | Total Gain (Loss) on Disposal | Bond Interest/Stock Dividends Received During Year | Stated Contractual Maturity Date | NAIC Desig- nation or Market Indicator (a) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31417H-TV-9 | FNMA Pool # MK0593 4.000%11/01/30 | | 03/01/2013. | Paydown. | | 260,321 | 260,321 | 274,683 | 274,469 | 0 | (14,148) | | (14,148) | 0 | 260,321 | 0 | 0 | 0 | 1,689 | 11/01/2030 | 1 |
| 31418D-KG-6 | FNMA Pool # MK8694 4.000%09/01/31 | | 03/01/2013. | Paydown. | | 838,742 | 838,742 | 883,955 | 882,618 | 0 | (43,876) | | (43,876) | 0 | 838,742 | 0 | 0 | 0 | 5,490 | 09/01/2031 | 1 |
| 31419A-4V-6 | FNMA Pool # AB2835 4.000%01/01/41 | | 03/01/2013. | Paydown. | | 278,394 | 278,394 | 305,320 | 305,034 | 0 | (26,640) | | (26,640) | 0 | 278,394 | 0 | 0 | 0 | 1,580 | 01/01/2041 | 1 |
| 442435-YW-9 | Houston Tex Util Sys Rev Series A   5.00 | | 01/30/2013. | Chase. Merrill Lynch Pierce Fenner. | | 13,254,438 | 11,400,000 | 13,123,110 | 13,122,300 | 0 | (5,251) | | (5,251) | 0 | 13,117,049 | 0 | 137,389 | 137,389 | 125,083 | 11/15/2033 | 1FE |
| 64972F-2L-3 | New York City Ny Muni Wtr Fin Series EE | | 01/24/2013. | Fenner. | | 2,877,400 | 2,500,000 | 2,844,825 | 2,836,942 | 0 | (3,738) | | (3,738) | 0 | 2,833,204 | 0 | 44,196 | 44,196 | 15,278 | 06/15/2039 | 1FE |
| 677519-GR-5 | Ohio St Revitalization Proj - Series A   5. | | 03/04/2013. | Call    100.0000. | | 4,370,000 | 4,370,000 | 4,634,429 | 4,370,000 | 0 | 0 | | 0 | 0 | 4,370,000 | 0 | 0 | 0 | 92,863 | 10/01/2016 | 1FE |
| 797869-VK-1 | San Francisco Ca Bay Area Rap    5.000%. | | 01/24/2013. | Chase. | | 6,050,453 | 5,000,000 | 6,008,250 | 6,008,250 | 0 | (7,333) | | (7,333) | 0 | 6,000,917 | 0 | 49,533 | 49,533 | 79,861 | 07/01/2034 | 1FE |
| 8371CD-HU-9 | South Carolina Hsg Fin & Dev Series A 2 | | 01/01/2013. | Call    100.0000. | | 20,000 | 20,000 | 17,783 | 17,924 | 0 | 2,076 | | 2,076 | 0 | 20,000 | 0 | 0 | 0 | 560 | 07/01/2034 | 1FE |
| 3199999 - Total - Bonds - US Special Revenue and Special Assessment and all Non-Guaranteed Obligations of | | | | | | 42,734,550 | 39,442,282 | 43,277,319 | 42,801,378 | 0 | (495,419) | | (495,419) | 0 | 42,493,431 | 0 | 231,118 | 231,118 | 427,734 | XXX | XXX |
| 36228C-VQ-3 | GS Mortgage Securities Corp II Series 20... | | 02/01/2013. | Paydown. | | 95,874 | 95,874 | 95,845 | 95,874 | 0 | 0 | | 0 | 0 | 95,874 | 0 | 0 | 0 | 738 | 07/10/2039 | 1FM |
| 58933H-AH-0 | Merck & Co Inc    4.375% 02/15/13 | | 02/15/2013. | Maturity. | | 500,000 | 500,000 | 487,515 | 499,780 | 0 | 220 | | 220 | 0 | 500,000 | 0 | 0 | 0 | 10,938 | 02/15/2013 | 1FE |
| 617446-HR-3 | Morgan Stanley   5.300% 03/01/13 | | 03/01/2013. | Maturity. | | 2,500,000 | 2,500,000 | 2,442,325 | 2,498,635 | 0 | 1,366 | | 1,366 | 0 | 2,500,000 | 0 | 0 | 0 | 66,250 | 03/01/2013 | 1FE |
| 61749M4B-0 | Morgan Stanley Capital I Series 2005-HQ6 | | 03/01/2013. | Paydown. | | 1,074 | 1,074 | 1,047 | 1,074 | 0 | 0 | | 0 | 0 | 1,074 | 0 | 0 | 6 | 06/13/2042 | 1FM |
| 90783V-AA-3 | Union Pacific Railroad 5.082%01/02/29 | | 01/02/2013. | Redemption    100.0000. | | 23,272 | 23,272 | 22,256 | 22,356 | 0 | 915 | | 915 | 0 | 23,272 | 0 | 0 | 561 | 01/02/2029 | 1 |
| 93977G-AD-0 | Wachovia Bank Commercial Mrtg Series 20... | | 03/01/2013. | Paydown. | | 18,280 | 18,280 | 14,613 | 16,319 | 0 | 1,961 | | 1,961 | 0 | 18,280 | 0 | 0 | 0 | 220 | 07/15/2045 | 1FM |
| 802815-AQ-3 | Santander US 144A 3.724%01/20/15 | R | 02/19/2013. | Morgan Stanley. | | 5,789,775 | 5,700,000 | 5,175,686 | 5,335,507 | 0 | 23,594 | | 23,594 | 0 | 5,359,101 | 0 | 430,674 | 430,674 | 125,002 | 01/20/2015 | 2FE |
| 3899999 - Bonds - Industrial and Miscellaneous | | | | | | 8,928,274 | 8,838,499 | 8,239,286 | 8,469,545 | 0 | 28,056 | | 28,056 | 0 | 8,497,601 | 0 | 430,674 | 430,674 | 203,743 | XXX | XXX |
| 8399997 - Bonds - Part 4 | | | | | | 63,848,984 | 60,215,947 | 64,085,609 | 63,391,791 | 0 | (514,313) | | (514,313) | 0 | 63,178,323 | 0 | 670,661 | 670,661 | 828,892 | XXX | XXX |
| 8399999 - Total - Bonds | | | | | | 63,848,984 | 60,215,947 | 64,085,609 | 63,391,791 | 0 | (514,313) | | (514,313) | 0 | 63,178,323 | 0 | 670,661 | 670,661 | 828,892 | XXX | XXX |
| 8999999 - Total - Preferred Stocks | | | | | 0 | XXX | | 0 | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | XXX | XXX |
| 9799999 - Total - Common Stocks | | | | | 0 | XXX | | 0 | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | XXX | XXX |
| 9899999 - Total - Preferred and Common Stocks | | | | | 0 | XXX | | 0 | 0 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | XXX | XXX |
| 9999999 Totals | | | | | | 63,848,984 | XXX | 64,085,609 | 63,391,791 | 0 | (514,313) | 0 | (514,313) | 0 | 63,178,323 | 0 | 670,661 | 670,661 | 828,892 | XXX | XXX |

(a)  For all common stock bearing the NAIC market indicator "U" provide: the number of such issues .........................................0 .

Confidential

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

Schedule DB - Part A - Section 1

# NONE

Sch. DB - Pt. A - Sn. 1 - Footnotes

# NONE

Schedule DB - Part B - Section 1

# NONE

Sch. DB - Pt. B - Sn. 1 - Footnotes

# NONE

Schedule DB - Part D Section 1

# NONE

Schedule DB - Part D Section 2

# NONE

Schedule DB - Part D Section 2 [Cont.]

# NONE

Schedule DL - Part 1

# NONE

Schedule DL - Part 2

# NONE

**Confidential**

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE E - PART 1 - CASH
### Month End Depository Balances

| 1 | 2 | 3 | 4 | 5 | 6 Book Balance at End of Each Month During Current Quarter | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|
| Depository | Code | Rate of Interest | Amount of Interest Received During Current Quarter | Amount of Interest Accrued at Current Statement Date | First Month | Second Month | Third Month | * |
| JP Morgan Chase Bank          New York, New York | | | | | 274,134 | 319,287 | 44,890 | XXX |
| JP Morgan Chase Bank          London, UK | | | | | 558,122 | 974,983 | 351,770 | XXX |
| JP Morgan Chase Bank          Paris, France | | | | | 634,556 | 581,277 | 562,806 | XXX |
| Caisse Des Depots Et Consignations          Paris, France | | | | | 6,808,250 | 6,793,978 | 6,620,972 | XXX |
| State Street Bank          New York, New York | | | | | 390,970 | 371,500 | 737,856 | XXX |
| 0199998    Deposits in ............ depositories that do not exceed the allowable limit in any one depository (see Instructions) - Open Depositories | XXX | XXX | | | 0 | 0 | 0 | XXX |
| 0199999 Totals - Open Depositories | XXX | XXX | | | 8,666,032 | 9,041,025 | 8,318,294 | XXX |
| 0399999 Total Cash on Deposit | XXX | XXX | | | 8,666,032 | 9,041,025 | 8,318,294 | XXX |
| 0499999 Cash in Company's Office | XXX | XXX | XXX | XXX | | | | XXX |
| 0599999 Total | XXX | XXX | | | 8,666,032 | 9,041,025 | 8,318,294 | XXX |

E12

Confidential

PFEIFFER 000383

STATEMENT AS OF MARCH 31, 2013 OF THE FINANCIAL GUARANTY INSURANCE COMPANY

# SCHEDULE E - PART 2 - CASH EQUIVALENTS

Show Investments Owned End of Current Quarter

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|
| Description | Code | Date Acquired | Rate of Interest | Maturity Date | Book/Adjusted Carrying Value | Amount of Interest Due & Accrued | Amount Received During Year |
| 8399999 - Total - Bonds | | | | | 0 | 0 | 0 |
| JP Morgan Chase Collateral Money Market | | 03/31/2013 | | 04/01/2013 | 2,000 | | |
| State Street Bank Operating Cash | | 03/31/2013 | | 04/01/2013 | 53,650 | | |
| US Bank Cash | | 03/31/2013 | | 04/01/2013 | 41,192 | | |
| First American Treasury Obligation Fund | | 03/31/2013 | | 04/01/2013 | 16,844 | | |
| Wells Fargo Adv Tr Pl | | 03/31/2013 | | 04/01/2013 | 35,016 | | |
| Century Trust Cash | | 03/31/2013 | | 04/01/2013 | 10,313 | | |
| 8599999 - Other Cash Equivalents | | | | | 159,015 | | |
| 8699999 Total Cash Equivalents | | | | | 159,015 | 0 | 0 |

E13

Confidential

PFEIFFER 000384