Hearing Date: August 14, 2013 at 4:00 p.m.

| | |
|---|---|
| **DECHERT LLP** <br> Glenn E. Siegel <br> Mauricio A. España <br> Rebecca S. Kahan <br> 1095 Avenue of the Americas <br> New York, New York 10036-6797 <br> Telephone: (212) 698-3500 <br> Facsimile: (212) 698-3599 <br><br> *Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts* | **SEWARD & KISSEL LLP** <br> Mark D. Kotwick <br> Brian P. Maloney <br> Ryan Suser <br> One Battery Park Plaza <br> New York, New York 10004 <br> Telephone: (212) 574-1200 <br> Facsimile: (212) 480-8421 <br><br> *Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts* |
| **ALSTON & BIRD LLP** <br> John C. Weitnauer (*pro hac vice*) <br> Michael E. Johnson <br> 90 Park Avenue <br> New York, New York 10016 <br> Telephone: (212) 210-9400 <br> Facsimile: (212) 210-9444 <br><br> *Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts* | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** <br><br> **RESIDENTIAL CAPITAL, LLC**, *et al.*, <br><br> **Debtors.** | ) <br> ) Case No. 12-12020 (MG) <br> ) <br> ) Chapter 11 <br> ) <br> ) Jointly Administered |

**THE TRUSTEES' RESPONSE TO THE OBJECTORS'
MOTION *IN LIMINE* TO PRECLUDE THE TRUSTEES FROM
OFFERING ANY EVIDENCE OF THEIR RELIANCE ON COUNSEL
IN SUPPORT OF DEBTORS' 9019 MOTION (*IN LIMINE* MOTION FOUR)**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I. THE TRUSTEES HAVE NEITHER WAIVED THE ADVICE OF THEIR COUNSEL NOR HAVE THEY USED THAT ADVICE AS BOTH SWORD AND SHIELD ................................................................................................................. 3

    A.    The Trustees Have Not Asserted an Advice-of-Counsel Defense by Testifying That They Considered their Counsel's Legal Advice in Determining Whether to Enter into the Settlement Agreement. ............................ 4

    B.    The Trustees Have Not and Will Not Assert A Good Faith Defense. ................... 8

    C.    The Trustees Have Not and Do Not Intend To Selectively Disclose Privileged Information. ........................................................................................ 10

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Baxter Travenol Labs.*,
    676 F. Supp. 831 (N.D. Ill. 1987) ..................................................................................9

*Arista Records LLC v. Lime Grp. LLC*,
    No. 06 CV 5936, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ...............................4

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*,
    No. 04 Civ. 10014, 2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ................................ passim

*Bodega Invs. LLC ex rel. Kreisberg v. United States*,
    No. 08 Civ. 4065, 2009 WL 2634765 (S.D.N.Y. Aug. 21, 2009) ............................4

*CFIP Master Fund. Ltd v. Citibank, N.A.*,
    738 F. Supp. 2d 450 (S.D.N.Y. 2010) ....................................................................6, 7, 8

*Chesapeake Corp. v. Shore*,
    771 A.2d 293 (Del. Ch. 2000) ..................................................................................5

*Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*,
    837 N.Y.S.2d 15 (1st Dep't 2007) ...............................................................6, 7, 8, 10

*In re Bank of New York Mellon*,
    No. 651786/2011, NYSCEF No. 825 (N.Y. Sup. Ct. May 20, 2013) .......................6

*In re County of Erie*,
    546 F.3d 222 (2d Cir. 2008) ..................................................................................4, 10

*In re Human Tissue Prods. Liab. Litig.*,
    255 F.R.D. 151 (D.N.J. 2008), *aff'd*, No. 06 Civ. 135, 2009 WL 1097671 (D.N.J.
    Apr. 23, 2009) ..........................................................................................................9

*In re Kidder Peabody Sec. Litig.*,
    168 F.R.D. 459 (S.D.N.Y. 1996) .............................................................................4

*McLean v. Garage Mgmt. Corp.*,
    10 CIV. 3950, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012) ..................................9

*Miteva v. Third Point Mgt. Co. L.L.C.*,
    218 FRD 397 (S.D.N.Y. 2003) ................................................................................8

*Oxyn Telecomms., Inc. v. Onse Telecom*,
    55 Fed. R. Serv. 3d 1263, 2003 WL 660848 (S.D.N.Y. 2003) ...............................9

*Pall Corp. v. Cuno Inc.*,
  268 F.R.D. 167 (E.D.N.Y. 2010) ...................................................................................................9

*Pereira v. United Jersey Bank*,
  No. 94 Civ. 1565, 1997 WL 773716 (S.D.N.Y Dec. 11, 1997)...................................................4

*Trouble v. Wet Seal, Inc.*,
  179 F. Supp. 2d 291 (S.D.N.Y. 2001)..........................................................................................9

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991), *aff'd*, 127 F.3d 237 (2d Cir. 1997) .......................................4, 10

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. (collectively, "**BNY Mellon**"), U.S. Bank National Association ("**U.S. Bank**"), and Wells Fargo Bank, N.A. ("**Wells Fargo**"), each in their respective capacities as a Trustee[1] for certain FGIC Insured Trusts[2] (collectively, the "**Trustees**") hereby oppose the *Motion in Limine* to Preclude the Trustees from Offering Any Evidence of Their Reliance on Counsel in Support of Debtors' 9019 Motion (Docket No. 4548) ("**Motion Four**" or "**Motion**"), filed by Monarch Alternative Capital LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Alpha Master Fund Limited, and CQS ABS Master Fund Limited (collectively, the "**Objectors**").[3]

## PRELIMINARY STATEMENT

1.  Motion Four is yet another attempt by the Objectors to derail these proceedings by arguing that the Court cannot enter the Findings[4] that the Trustees acted reasonably, in good faith and in the best interest of the certificateholders because the Trustees withheld privileged communications. Specifically, the Objectors request that this Court preclude the Trustees from

---

[1] The term "FGIC Trustees" or "Trustees" has been defined, at different times in the Chapter 11 Cases, in slightly different ways. As used herein, unless the context dictates otherwise, the term "Trustees" shall include BNY Mellon, U.S. Bank, and Wells Fargo and refers to such entities in their capacities as trustee, indenture trustee, separate trustee, securities administrator, co-administrator, paying agent, grantor trustee, custodian and/or other similar agencies or as master servicer for the FGIC Trusts.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Joinder of Certain FGIC Trustees to the Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and the Consenting Claimants* [Docket No. 3940] (the "**PSA Joinder**") or the FGIC 9019 Motion (as defined below).

[3] The Objectors first raised this issue during the July 17, 2013 hearing on their motion to pierce the Trustees' privilege pursuant to the fiduciary exception, but waited until July 23, 2013, to seek to meet and confer with BNY Mellon. BNY Mellon promptly responded with case citations supporting its position and agreed to meet and confer the next day, on July 24, 2013. The Objectors, however, did not contact BNY Mellon again until August 1, 2013, when they demanded that BNY Mellon meet and confer, but refused to agree to a mutually convenient time. The Objectors neither raised this issue with Wells Fargo and U.S. Bank nor sought to meet and confer with their respective counsel.

[4] Capitalized terms used but not defined herein have the same meaning given to them in Motion Four.

1

introducing any argument or evidence of the "(i) Trustees' reliance on the recommendations of their counsel with respect to the FGIC Settlement Agreement" and "(ii) the Trustees' good faith belief that the FGIC Settlement Agreement was in the best interests of the Trusts or the Investors" because, according to the Objectors, the Trustees put the advice of their counsel at issue – by testifying merely as to the *fact* that they retained counsel who provided advice – and yet improperly shielded that advice from disclosure by invoking the attorney-client privilege.

        2.      The Objectors' arguments do not withstand scrutiny because the Trustees neither put the advice of their counsel at issue since they are not relying upon the substance of any privileged advice in support of a claim or defense in this matter nor have they selectively disclosed any privileged information.  Indeed, the Trustees' pre-trial submissions unequivocally demonstrate that the Trustees are only asserting the *fact* that they retained counsel who provided legal advice in connection with the Settlement Agreement as one of the factors that the Court should consider in finding that they acted reasonably and in good faith—a finding that this Court has already made under nearly identical circumstances.[5]  Those submissions also plainly reflect that the Trustees have not relied upon, and do not plan to rely upon, the substance of any privileged advice they received from counsel to support the Findings.  Courts, under similar circumstances, have held that the Trustees' conduct here did not, explicitly or implicitly, waive any privilege and does not warrant disclosure of privileged communications.  The Court, therefore, should deny the Objectors' request.

---

[5]     As noted by the Objectors, "[i]n granting the PSA Motion, the Court found that the fact that the Trustees relied on the advice of counsel was evidence that the Trustees acted in good faith in entering into the PSA." Motion at 10 (quoting PSA Opinion, at 45 [Docket No. 4102]).  The Court made that finding without the need to pierce the Trustees' privileged communications.

**ARGUMENT**

**I.     THE TRUSTEES HAVE NEITHER WAIVED THE ADVICE OF THEIR COUNSEL NOR HAVE THEY USED THAT ADVICE AS BOTH SWORD AND SHIELD**

3.     Recognizing that the Trustees will remain true to their position that they are not relying on the substance of their counsel's advice in support of any claim or defense, the Objectors argue that the Trustees have "downplay[ed] the critical role their counsel played and pretend to walk away from the unequivocal sworn statements they previously made." Motion at 11. On the contrary, the Trustees are neither walking away from previous statements nor "'danc[ing] between the raindrops'" (Motion at 11): the Trustees have consistently maintained, and continue to maintain, that the Trustees' process of determining whether to enter into the Settlement Agreement, which included considering the advice of their counsel, demonstrates unequivocally that they acted reasonably, in good faith and in the best interests of the FGIC Insured Trusts.

4.     Contrary to the Objectors' contention, references to the fact that the Trustees' deliberative *process* included consulting counsel who provided legal advice, rather than relying on the *substance* of their counsel's advice, neither places privileged advice at issue nor does it mean that the Trustees wielded the privilege as both "sword and shield."[6] Indeed, no case cited in the Objectors' motion, and no case that the Trustees have been able to find, has held otherwise. Rather, several courts, including this one, have held that mere reference to the fact that counsel was involved in a decision-making process does not implicate the attorney-client privilege.

---

[6]    In fact, the Objectors have not included a single citation to the Trustees' pre-trial submissions that would reflect the use of privilege as "sword and shield." *See* Trustee Reply to Objections [Docket No. 4475]; [Docket Nos. 4438 (the "**Major Declaration**", 4442 (the "**Sohlberg Declaration**") and 4444 (the "**Scott Declaration**")].

      **A.**     **The Trustees Have Not Asserted an Advice-of-Counsel Defense by Testifying That They Considered their Counsel's Legal Advice in Determining Whether to Enter into the Settlement Agreement.**

      5.     Courts may find a waiver of the attorney client privilege "when a client asserts reliance on an attorney's advice as an element of a claim or defense[.]" *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (citations omitted) (holding that for waiver to occur, a party must rely on privileged advice to make a claim or defense). Because "reliance on privileged advice in the assertion of the claim or defense" is "the essential element" required for a party to place a privileged communications at issue, *id.*, the Objectors' motion purposefully mischaracterizes the evidence that the Trustees seek to introduce— evidence of the fact that the Trustees retained counsel and considered their legal advice in connection with their decision to enter into the Settlement Agreement—as "evidence of their reliance on counsel." *See* Motion at 1.

      6.     However, courts, including this one, distinguish a party's assertion that it *sought and considered* the advice of counsel—offered to demonstrate the reasonableness of its deliberative process—from *reliance* on the substance of counsel's advice in support of a claim or defense. The Objectors ignore this distinction between process and substance, and thus their reliance on *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), *aff'd*, 127 F.3d 237 (2d Cir. 1997) (and similar cases) is misplaced.[7] *See* Motion at 3, 13-14. Here, the only evidence that the

---

[7]    This case differs fundamentally from *Bilzerian* and other cases cited by the Objectors in which parties made assertions regarding the substance of privileged advice and only the privileged advice itself could serve to test those assertions. *See, e.g.*, *Bilzerian*, 926 F.2d at 1293-94 (upholding finding of waiver where defendant was charged with a series of securities-related offenses and sought to introduce his good faith attempts to comply with the securities laws); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (finding waiver regarding an investigative report where a party had "made the invocation of that report and its conclusions a leitmotif" of its case); *Arista Records LLC v. Lime Grp. LLC*, No. 06 CV 5936, 2011 WL 1642434, at *1 (S.D.N.Y. Apr. 20, 2011) (precluding defendants from offering argument or evidence regarding purported good faith belief in the lawfulness of their conduct with respect to elements of secondary copyright infringement charges where defendants repeatedly invoked privilege to block inquiry into facts that served as basis for that belief); *Bodega Invs. LLC ex rel. Kreisberg v. United States*, No. 08 Civ. 4065, 2009 WL 2634765, at *1 (S.D.N.Y. Aug. 21, 2009) (finding waiver where plaintiff claimed reliance on representations of IRS agent and counsel when agreeing to extend the statutory limitations period during audit of plaintiff's challenged tax return); *Pereira v. United Jersey*

Trustees have submitted in this regard is the fact that they retained counsel and considered counsel's advice in determining whether to enter into the Settlement Agreement. *See* Major Declaration ¶¶ 17, 26; Scott Declaration ¶¶ 14, 17; Sohlberg Declaration ¶ 17.

7.  Although the Objectors cite to the Court's Preclusion Motion Order[8] in support of their Motion (at 14), that order actually highlights this significant distinction and militates denial of the Objectors' motion. There, the Court not only recognized that "the attorney-client privilege is not waived if the [party] argued that they sought the advice of counsel, among other actions, in an effort to reasonably educate themselves as to the merits of the settlement," the Court also held that "the Debtors cannot now introduce *the substance* of whatever advice it sought and received in order to demonstrate that it exercised proper business judgment in approving the RBMS Trust Settlement." *See* Preclusion Motion Order at 14 (quoted in Motion at 14) (emphasis added). Here, the Trustees seek to do the very thing that the Court held does not waive the privilege: offer evidence that they considered their counsel's advice to reasonably educate themselves regarding the Settlement Agreement and, unlike the Debtors in that motion, the Trustees have no intention of seeking to introduce any evidence of the "substance" of the advice they received from counsel.

8.  This Court is not alone in drawing a line between *seeking* and *relying* on advice of counsel. For example, the court in *Aristocrat Leisure Ltd.* (cited by the Objectors) found that "the fact that counsel was consulted on the subject matter underlying the litigation" was "a fact

---

*Bank*, No. 94 Civ. 1565, 1997 WL 773716, at *3 (S.D.N.Y Dec. 11, 1997) (holding that an implied waiver of privilege should only be found "if the privilege holder makes factual assertions the truth of which can only be assessed by examination of the privileged communication") (internal citations omitted); *Chesapeake Corp. v. Shore*, 771 A.2d 293, 301 (Del. Ch. 2000) (precluding evidence of the content of deliberations with counsel to prove good faith in assessing strategic alternatives, where the privilege had previously been invoked to bar inquiry into those same facts).

[8] *See* Mem. Op. & Order Granting in Part & Denying in Part the Unsecured Creditors Committee's Preclusion Motion (April 12, 2013) (Docket No. 3434) ("**Preclusion Motion Order**") at 14.

that in and of itself [wa]s not privileged" and further found that where "[the defendants] are not claiming to have relied on an opinion of counsel, the actual content of the advice provided to [the defendants] is irrelevant." *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co.*, No. 04 Civ. 10014, 2009 WL 3111766, at *16 (S.D.N.Y. Sept. 28, 2009).

9.  *CFIP Master Fund, Ltd. v. Citibank, N.A.* is also instructive.[9] 738 F. Supp. 2d 450 (S.D.N.Y. 2010). In *CFIP Master Fund Ltd.*, a trustee was sued by a trust beneficiary for accepting an allegedly improper substitution of trust assets in violation of its fiduciary duty. *Id.* at 470-72. To prevail in its claim against the trustee the beneficiary was required to prove the trustee's bad faith or negligence. *Id.* at 473. The court held, based in part on the trustee's consultation with outside counsel, that the beneficiary could not establish either. *Id.* at 474. Notably, the court also rejected the beneficiary's argument that the trustee, by stating that it had conferred with counsel in support of its assertion that it acted in good faith in making the determination at issue, had asserted an "advice of counsel" defense which would require waiver of the attorney-client privilege:

> Contrary to the Fund's contentions, *U.S. Bank is not asserting an "advice of counsel" defense, which would require the waiver of attorney-client privilege, by referring to the fact of its communication with counsel in the context of demonstrating its good faith.* U.S. Bank has specifically disclaimed reliance on a provision of the BTA that allows an advice of counsel defense, *see* BTA § 8.2(a)(ii). *The focus of U.S. Bank's "good faith" defense is on the nature of the*

---

[9] *See also Aristocrat Leisure Ltd.*, 2009 WL 3111766, at *16 (finding that "merely stating that individual Bondholders sought advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive privilege"); *Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*, 837 N.Y.S.2d 15, 25, 27 (1st Dep't 2007) (finding that a "good faith requirement does not… give [a party] warrant to invade… attorney-client privilege" where the party asserting privilege "never, either through counsel or through… testimony, stated an intention to use the advice of counsel to prove the reasonableness of [a settlement]" nor "selectively disclose[d] the substance of any of the legal advice [the party] received."); Decision & Order, *In re Bank of New York Mellon*, No. 651786/2011, NYSCEF No. 825, at *9-10 (N.Y. Sup. Ct. May 20, 2013) (finding under similar factual circumstances that "waiver of the attorney-client privilege ha[d] not occurred because petitioner ha[d] not placed its attorneys' legal advice or work product at issue by using such material to prove its case; nor ha[d] there been selective disclosure of legal advice or attorney work product").

> *inquiry that U.S. Bank undertook, not the substance of the legal advice that was eventually provided.*

*Id.* at 474 n.27 (S.D.N.Y. 2010) (emphasis added). Here, as in *CFIP Master Fund Ltd.*, the Court's inquiry is focused on the Trustees' deliberative process, which was the subject of robust discovery, and not on the substance of any legal advice that was provided by counsel.

10. On closely analogous facts, the Appellate Division of the State of New York also endorsed the distinction between a party's statement of the fact that it sought the advice of counsel in seeking to demonstrate it acted reasonably and in good faith and the assertion of an advice of counsel defense. In *Deutsche Bank Trust Co. v. Tri-Links Inv. Trust*, the court held that the following testimony by a bank executive concerning the process he undertook in determining whether to enter into a settlement agreement neither placed his counsel's advice at issue nor did it waive the attorney-client privilege:

> Q: Did you rely on the advice of counsel in determining whether or not to approve in determining whether to approve [sic] the settlement of the WMI action?
>
> A: Yes.

*Id.* at 26. The court held that the executive's testimony did not place his counsel's advice at issue because the executive "neither sought to justify the decision to settle . . . on the ground that it was based on the advice of counsel, nor did he divulge the contents of any of the advice [the Bank] received from its counsel." *Id.* at 26. Rather, the court found that the executive "simply testified to the *fact* that, in deciding to settle the [] action, [the Bank] (not surprisingly) considered the advice of its attorneys." *Id.* at 26-27 (emphasis added).

11. Remarkably, much of the Objectors' argument is founded upon nearly identical testimony from the deposition of Robert Major, a Trustee representative:

7

> Q: But did you rely on whatever it was that [counsel] told you in reaching your conclusion that the settlement is in the best interests of the investors; is that correct?
>
> A: Yes.

*See* Motion at 8-9 (quoting Major Tr. 19:9-13). Like the executive in *Deutsche Bank Trust. Co.*, however, the Trustees' pre-trial declarations plainly and unambiguously assert that the Trustees considered, among other things, the advice of its counsel in deciding whether to enter into the Settlement Agreement and, as discussed *infra* Section I.C., they do not seek to divulge the contents of any legal advice. *See Deutsche Bank Trust. Co.*, 837 N.Y.S.2d at 26-27. Moreover, the Trustees have not and do not intend to offer the substance of their counsel's advice in support of the Court's Finding that the Settlement is in the best interest of the Objectors and the Trusts. The Court will make that determination based on the expert testimony presented at trial. On that basis alone the Court may dismiss the Objectors' motion. *See Miteva v. Third Point Mgt. Co. L.L.C.*, 218 FRD 397, 397-398 (S.D.N.Y. 2003) (holding that deposition testimony by a company's principal that the company "worded" a letter based on the advice of counsel and that the company "intended to rely on that advice of counsel as a defense," did not constitute a waiver of privilege, where the company's counsel subsequently "explicitly represented to the Court . . . that, despite [the principal's] deposition statement to the contrary, [the company] is not asserting nor relying on the advice of counsel defense").

### B. The Trustees Have Not and Will Not Assert A Good Faith Defense.

12. Just as the Trustees disclaim an advice-of-counsel defense, so too do they disclaim a good faith or state of mind defense to any claim. Contrary to the Objectors' assertions (at 15-18), the Trustees have not referred to their counsel's legal advice in support of any "good faith" safe harbor provision under the governing agreements or a defense or claim that goes to the Trustees' state of mind. *See CFIP Master Fund Ltd.*, at 474 n.27 (finding no waiver of

privilege and noting that "U.S. Bank has specifically disclaimed reliance on a provision of the BTA that allows an advice of counsel defense"). And reference to good faith alone does not implicate waiver of the attorney-client privilege. *See* Section I.A, *supra*.[10]

13.     The defendant in *Deutsche Bank Trust Co.* also argued—as Objectors do here—that it was entitled to inquire into the advice and opinions of counsel for the purpose of determining whether Bankers Trust acted in "good faith" when entering into a settlement of claims with a third-party. *Id.* at 25. The court rejected that argument, noting that the defendant had neither suggested any specific grounds to suspect that Bankers Trust had entered into the settlement in bad faith nor, if such grounds existed, offered any evidence that invasion of the privilege "would be the only way to lay bare such suspected bad faith." *Id.* The court went on to note that defendant's argument, if accepted, would mean the privilege "could be deemed waived by nothing more than the theoretical possibility of an issue concerning the settlement's good faith" and that "waiver would have to be implied in every case in which the bad faith of the plaintiff would constitute a defense." *Id.* The holding in *Deutsche Bank Trust Co.* is especially

---

[10]     The cases cited by the Objectors in support of their proposition that the Trustees have asserted a good faith defense are inapposite. *See McLean v. Garage Mgmt. Corp.*, 10 CIV. 3950, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (attempting to avail himself of statutory good-faith exception to liquidated damages provision, defendant could not rely on good-faith reliance on advice of counsel absent waiver of privilege); *Pall Corp. v. Cuno Inc.*, 268 F.R.D. 167, 169 (E.D.N.Y. 2010) (where counterclaim-defendant "offered the declaration of its primary patent prosecution counsel . . . in which [counsel] repeatedly offer[ed] his thoughts, mental impressions, opinions and conclusions as evidence of [defendant']s good faith during its appearance before the PTO," defendant was found to have waive the privilege); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) ("When a party intends to *rely at trial on the advice of counsel as a defense to a claim of bad faith*, that advice becomes a factual issue, and opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised.") (emphasis added) (internal quotations omitted); *Oxyn Telecomms., Inc. v. Onse Telecom*, 55 Fed. R. Serv. 3d 1263, 2003 WL 660848, at *6 (S.D.N.Y. 2003) (finding no waiver where defendant did not affirmatively assert good faith or reliance on advice of counsel as a defense); *In re Human Tissue Prods. Liab. Litig.*, 255 F.R.D. 151, 160 (D.N.J. 2008), *aff'd*, No. 06 Civ. 135, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) (where (1) defendant affirmatively relied on a statutory good faith immunity defense, (2) defendant had previously given testimony discussing the results of investigation, and (3) privileged information could potentially rebut assertion of facts underlying defense of good faith, court found "reliance [on advice of counsel was] implicit" to the defense); *Abbott Labs. v. Baxter Travenol Labs.*, 676 F. Supp. 831, 832 (N.D. Ill. 1987) (in patent infringement case where defendant (1) had asserted good faith advice-of-counsel defense and (2) had already produced three such written opinions of same counsel, court found privilege waived ).

9

applicable here where the Court has also already determined that the Objectors cannot make a colorable claim that the Trustees were conflicted or that they engaged in self-dealing in deciding to enter into the Settlement Agreement. *See* 7/17/2013 Hr'g Tr. at 71:10-13.

### C. The Trustees Have Not and Do Not Intend To Selectively Disclose Privileged Information.

14. The Trustees do not dispute that a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Blizerian*, 926 F.2d at 1292. The Trustees, however, have not made any selective disclosures and contrary to the apparent perception of the Objectors, the Trustees have no intention of selectively disclosing privileged information at trial.

15. By the Objectors' own admission the Trustees have thoroughly and consistently asserted privilege over all materials protected by the attorney-client privilege. Motion at 5-6. Therefore, any disclosures regarding the fact that the Trustees sought and obtained legal advice—but which do not touch upon the substance of any such advice—do not constitute partial disclosure of material protected by the attorney-client privilege. *See* Section I.A, *supra*; *Aristocrat Leisure Ltd.*, 2009 WL 3111766, at *16; *Deutsche Bank Trust Co.*, 837 N.Y.S.2d at 26-27; *In re Bank of New York Mellon*, No. 651786/2011, at *9-10. Accordingly, because the Trustees have not selectively disclosed a scintilla of the substance of their privileged advice "there is no unfairness to the [Objectors], because they are 'in no way worse off' as a result of the disclosure that communications exist than they would be if they were unaware of them." *In re County of Erie*, 546 F.3d at 229.

16. The Objectors' argument that the non-disclosure of privileged advice somehow prejudices their ability to assess the Trustees' decision-making process is particularly surprising

10

given the Court's recent review and assessment of the Trustees' privileged communications and the Trustees' extensive deposition testimony regarding that process. Specifically, the Court determined that the Objectors cannot demonstrate a need for the Trustees' privileged communications because the Trustees' consideration of their financial advisor's analyses and recommendation, all of which was disclosed, was the "driving factor" of their decision to enter into the Settlement Agreement:

> The trustees' counsel have said repeatedly in court that the Duff & Phelps report, the analysis of the economics, was the driving factor of the decision to enter into the FGIC settlement. And everything I read in here supports that contention, okay? Everything I read in here supports that contention. Yeah, there's a lot of drafts of -- and this would go to the mediation privileges – there's a lot of drafts of the PSA and the term sheet and the FGIC settlement and comments on it and all of that, but with respect to the approval of the FGIC settlement, these three binders that I went through have not established -- and there was nothing that I read in your material, and after reviewing this, I was more convinced than ever – there's nothing that establishes your need to break privilege; something I'm very reluctant to do.

7/17/2013 Hr'g Tr. at 42:9-22.[11] Furthermore, the Trustees testified at length about their own involvement in the ongoing settlement negotiations,[12] their review of, and reliance on, the advice of their financial advisor, Duff & Phelps, and the process that they used to evaluate the Settlement Agreement.[13]

---

[11]    In an effort to undermine the importance of this conclusion, the Objectors assert that the Trustees' privilege logs are incomplete and do not tell the full story, implying that the Court did not review all of the potentially relevant documents. Motion at 5. This assertion is baseless. The Trustees logged all *written* attorney-client communications regarding the FGIC Settlement Agreement from the relevant time period, including attorney-client communications that contained information that was subject to the *Order Appointing Mediator*, [Dkt. No. 2519].

[12]    *See, e.g.* Major Dep. Tr. at 17:4-18:5 (attended mediation sessions that were not "professionals only"), 138:4-6, Sohlberg Dep. Tr. at 68:2-71:4, 77:24-82:12. A copy of the transcript of the deposition of Robert H. Major, the Rule 30(b)(6) designee of BNY Mellon, is attached to *Debtors' Omnibus Opposition to the Motions* in Limine *of the Parties Objecting to the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors* ("**Debtors'** *in Limine* **Response**") as Exhibit 6. A copy of the transcript of the deposition of Mary L. Sohlberg, the Rule 30(b)(6) designee of Wells Fargo, is attached to Debtors' *in Limine* Response as Exhibit 5.

[13]    *See, e.g.*, Major Dep. Tr. at 14:19-21:12, 29:12-30:5, 30:19-90:1, 90:22-133:15, 138:4-6, 149:14-150:2, 159:16-164:13, 189:8-194:12, 205:11-207:20; Scott Dep. Tr. at 38:7-41:9; 43:20-46:13; 47:9-23; 81:8-82:13; 104:4-

11

## **CONCLUSION**

For the foregoing reasons, the Trustees respectfully request that the Court deny the Objectors' request that the Court preclude the Trustees from introducing evidence at the 9019 Motion Hearing of the fact that the Trustees retained counsel and considered counsel's legal advice in conjunction with their decision to enter into the Settlement Agreement.

[*Remainder of Page Intentionally Left Blank*]

---

11; 125:16-20; and 134:17-136:3; Sohlberg Dep. Tr. at 52:6-19, 56:3-18, 57 13-22, 118:16-121:3, 134:3-17, 142:15-144:24.  A copy of the transcript of the deposition of Mamta K. Scott, the Rule 30(b)(6) designee of U.S. Bank, is attached to Debtors' *in Limine* Response as Exhibit 4.

Dated: New York, New York
August 13, 2013

Respectfully submitted,

**DECHERT LLP**
By: /s/ Glenn E. Siegel
Glenn E. Siegel
Mauricio A. España
Rebecca S. Kahan
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALSTON & BIRD LLP**
By: /s/ John C. Weitnauer
John C. Weitnauer (*pro hac vice*)
William Hao
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
By: /s/ Mark D. Kotwick
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

15009187