**Hearing Date: September 11, 2013 at 10:00 a.m. (ET)**
**Response Deadline: September 3, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
J. Alexander Lawrence
Kayvan B. Sadeghi
Alexandra Steinberg Barrage

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------- ) | | |
| In re: ) | | Case No. 12-12020 (MG) |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al.</u>, ) | | Chapter 11 |
| ) | | |
| Debtors. ) | | Jointly Administered |
| ------------------------------------------- ) | | |

**DEBTORS' OBJECTION TO PROOF OF**
**CLAIM # 2781 OF SYNCORA GUARANTEE INC.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

JURISDICTION, VENUE, AND STATUTORY PREDICATE .................................. 3

BACKGROUND ............................................................................... 3

I.      SYNCORA'S PROOF OF CLAIM .............................................. 3

II.     SYNCORA'S PSA OBJECTION AND ITS JULY 15 LETTER ...................... 4

RELIEF REQUESTED.......................................................................... 7

OBJECTION.................................................................................... 8

I.      NEITHER SYNCORA'S PROOF OF CLAIM NOR ITS JULY 15 LETTER
        SETS FORTH ALLEGATIONS SUFFICIENT TO SUPPORT A LEGALLY
        COGNIZABLE CLAIM ........................................................ 8

        A.    The Proof of Claim Does Not Allege Facts Sufficient to Support a Claim........... 8

        B.    The Proof of Claim Should Not be Deemed Amended by the July 15
              Letter ................................................................ 9

        C.    Even If Deemed to Amend Its Proof of Claim, Syncora's July 15 Letter
              Does Not Allege Sufficient Facts to Support a Claim ....................... 11

              1.    Syncora Has Not Even Purported to Assert a Claim Arising Out of
                    the GMFT 2006-HE1 and STACS 2007-1 Transactions........................ 11

              2.    Syncora's Claims Arising Out of the BSSLT 2007-SV1
                    Transaction Are Legally Insufficient...................................... 11

                    i.    Syncora Cannot Use Servicing Claims as a Back-Door to
                          Assert Breach of Mortgage Loan Representation and
                          Warranty Claims against GMACM ............................... 12

                    ii.   Syncora Has Identified No Plausible Basis to Attribute
                          Damages to Any Failure by GMACM to Notify Third
                          Parties of Breaches of Representations and Warranties .............. 15

II.     IF THE COURT DOES NOT DISALLOW THE PROOF OF CLAIM AS
        LEGALLY INSUFFICIENT, IT SHOULD ESTIMATE THE CLAIM AT ZERO ....... 17

NOTICE....................................................................................... 18

CONCLUSION................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambac Assurance Corp. v. First Franklin Financial Corp.*,
   No. 651217/2012, 2013 N.Y. Misc. LEXIS 3092 (Sup. Ct., N.Y. Cnty. July 18, 2013) ........14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................8

*Assured Guaranty Corp. v. EMC Mortgage., LLC*,
   650805/12, 2013 N.Y. Misc. LEXIS 1371 (Sup. Ct., N.Y. Cnty. Apr. 4, 2013)....................15

*Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB*,
   11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 8, 2011)....................15

*Bear Stearns Funding Trust 2007-AR2 v. EMC Mortgage LLC*,
   C.A. No. 6861-CS, 2013 Del. Ch. LEXIS 9 (Del. Ch. Jan. 15, 2013)....................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2006)........................................................................................................8

*BNP Paribas Mortgage Corp. v. Bank of America, N.A.*,
   778 F. Supp. 2d 375 (S.D.N.Y. 2011)...................................................................................14

*Gotham Partners L.P. v. High River L.P.*,
   76 A.D.3d 203 (1st Dep't 2010) ...........................................................................................14

*Haynes v. Kleinewefers & Lembo Corp.*,
   921 F.2d 453 (2d Cir. 1990)...................................................................................................14

*Hooper Associates, Ltd. v. AGS Computers, Inc.*,
   74 N.Y.2d 487 (1989) .............................................................................................................14

*In re Adelphia Communications Corp.*,
   359 B.R. 54 (Bankr. S.D.N.Y. 2006)......................................................................................8

*In re Alper Holdings USA*,
   No. 07-BR-12148 (BRL), 2008 Bankr. LEXIS 86 (Bankr. S.D.N.Y. Jan. 15, 2008) ..............8

*In re Andover Togs, Inc.*,
   231 B.R. 521 (Bankr. S.D.N.Y. 1999) ...................................................................................10

*In re Barquet Group, Inc.*,
   477 B.R. 454 (Bankr. S.D.N.Y. 2012) ...................................................................................10

*In re DJK Residential, LLC*,
   416 B.R. 100 (Bankr. S.D.N.Y. 2009) ............................................................................ 8, 17

*In re Enron Corp.*,
   298 B.R. 513 (Bankr. S.D.N.Y. 2003) ...................................................................................10

*In re McLean Industries, Inc.*,
   121 B.R. 704 (Bankr. S.D.N.Y. 1990) ...................................................................................10

*In re W.T. Grant Co.*,
   53 B.R. 417 (Bankr. S.D.N.Y. 1985) .....................................................................................10

*Integrated Resources, Inc. v. Ameritrust Co. N.A. (In re Integrated Resources, Inc.)*,
   157 B.R. 66 (S.D.N.Y. 1993) .................................................................................................10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
   821 F. Supp. 2d 616 (S.D.N.Y. 2011) .....................................................................................9

*MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*,
   No. 602825/08, 2013 N.Y. Misc. LEXIS 1774 (Sup. Ct., N.Y. Cnty. Apr. 29, 2013) ...........15

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*,
   419 F.3d 115 (2d Cir. 2005) ..................................................................................................10

*Syncora Guarantee Inc. v. EMC Mortgage, LLC*,
   No. 650420/12, 2013 N.Y. Misc. LEXIS 1519 (Sup. Ct., N.Y. Cnty. Apr. 15, 2013) ...........14

*U.S. Bank N.A. v. Greenpoint Mortgage Funding, Inc.*,
   105 A.D.3d 639 (1st Dep't 2013) ..........................................................................................16

*WestLB AG v. BAC Florida Bank*,
   912 F. Supp. 2d 86 (S.D.N.Y. 2012) ....................................................................................8, 9

**STATUTES, RULES, & REGULATIONS**

11 U.S.C.
   § 105 .....................................................................................................................................1, 4
   § 363 .........................................................................................................................................4
   § 502 ..................................................................................................................................1, 3, 7

28 U.S.C.
   § 157 .....................................................................................................................................1, 3
   § 1334 ...................................................................................................................................1, 3
   § 1408 ...................................................................................................................................1, 3
   § 1409 ...................................................................................................................................1, 3

Fed. R. Bankr. P.
   Rule 3007 ..............................................................................................................................1, 3

iii

**EXHIBITS**

Exhibit 1 – Proposed Order

Exhibit 2 – Proof of Claim No. 2781

Exhibit 3 – Letter from J. Alexander Lawrence to Randall R. Rainer, dated June 26, 2013

Exhibit 4 – Letter from J. Alexander Lawrence to Randall R. Rainer, dated July 10, 2013

Exhibit 5 – Letter from Randall R. Rainer to J. Alexander Lawrence, dated July 15, 2013

Exhibit 6 – First Amended Complaint, *U.S. Bank N.A., Syncora Guarantee Inc., CIFG Assurance N.A., Inc. v. Greenpoint Mortgage Funding*, 600352/2009 (Sup. Ct., N.Y. Cnty. Apr. 14, 2010)

Exhibit 7 – Claim No. 13909, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 16, 2009)

Exhibit 8 – Claim No. 66099, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 13, 2010)

Exhibit 9 – Complaint, *Lehman Brothers Holdings Inc. v. Syncora Guarantee Inc.*, 1:13-ap-01341 (Bankr. S.D.N.Y. May 2, 2013) [Dkt. No. 37147], excluding exhibits thereto

Exhibit 10 - Complaint, *Suntrust Acquisition Closed-End Seconds Trust, Series 2001-1, by HSBC Bank USA, N.A., in its capacity as Trustee v. Suntrust Robinson Humphrey Funding, LLC*, No. 1:13-cv-01635 (TWT) (N.D. Ga. May 14, 2013)

Exhibit 11 – BSSLT 2007-SV1 Insurance and Indemnity Agreement, dated March 30, 2007

Exhibit 12 – STACS 2007-1 Insurance and Indemnity Agreement, dated May 15, 2007

Exhibit 13 – GMFT 2006-HE1 Insurance and Indemnity Agreement, dated August 28, 2006

Exhibit 14 – STACS 2007-1 Pooling and Servicing Agreement, dated April 1, 2007

Exhibit 15 – GMFT 2006-HE1 Transfer and Servicing Agreement, dated August 1, 2006

12-12020-mg    Doc 4632    Filed 08/13/13    Entered 08/13/13 17:07:53    Main Document
Pg 6 of 23

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and its affiliated debtors in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), as debtors and debtors-in-possession (collectively, the

"Debtors"), hereby file this objection (the "Objection") seeking to disallow and expunge

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule

3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") proof of claim

number 2781 (the "Proof of Claim") asserted by Syncora Guarantee Inc. f/k/a XL Capital

Assurance Inc. ("Syncora") against GMAC Mortgage, LLC ("GMACM") with respect to its

servicing of the loans in (1) Bear Stearns Second Lien Trust 2007-SV1 ("BSSLT 2007-SV1");

(2) Greenpoint Mortgage Funding Trust 2006-HE1 ("GMFT 2006-HE1"); and (3) Suntrust

Acquisition Closed-End Second Trust, Series 2007-1 ("STACS 2007-1" and collectively, the

"Syncora-Related Trusts").  The Debtors move to disallow and expunge the Proof of Claim

because it is unsubstantiated and fails to state a claim.[1]

The Debtors seek entry of an order, substantially in the form attached hereto as Exhibit 1

(the "Proposed Order"), and in support of the Objection, the Debtors respectfully represent as

follows:

## PRELIMINARY STATEMENT

1.      Nine months ago, Syncora filed its Proof of Claim in these proceedings against

GMACM.  The Proof of Claim is a mere placeholder, devoid of any explanation as to why

Syncora is entitled to recover from GMACM.  It does nothing more than identify three trusts

---

[1] The Debtors reserve all their rights to object on any other basis to Syncora's Proof of Claim.

involving residential mortgage-backed securities ("RMBS") that Syncora insured and list various contracts related to those three transactions.

2.       Notably, the Debtors did not sponsor any of these three transactions.  Instead, the three transactions were sponsored by unrelated third parties (Lehman Brothers, Bear Stearns, and SunTrust).  GMACM simply acted as the servicer or sub-servicer.  The Proof of Claim does not allege that GMACM breached any of its servicing obligations—or obligations of any other sorts—under those agreements, much less that Syncora suffered losses as a result of any such breaches.

3.       For months, the Debtors repeatedly asked Syncora to explain the basis for its Proof of Claim.  Finally, on July 15, 2013, Syncora responded with a letter providing a brief explanation for how it purported to recover in connection with one of the three transactions.  Nevertheless, as discussed below, those allegations, even if deemed to be incorporated into Syncora's Proof of Claim (which they should not be), are not sufficient to support a legally cognizable claim.  With respect to the other two transactions, Syncora only stated that it was considering asserting certain "Potential Claims"—and it did not even describe the basis of those "Potential Claims."

4.       Syncora is a highly sophisticated monoline financial guaranty insurance company, which has been represented by highly competent bankruptcy counsel in these proceedings.[2] When Syncora has claims to assert, it certainly knows how to assert them.  In fact, Syncora has actively pursued litigation against numerous issuers of RMBS that Syncora insured.  But while Syncora has sued to recoup its losses—including a suit arising out one of the transactions at issue

---

[2] On September 26, 2012, Gary T. Holtzer of Weil, Gotshal & Manges LLP entered an appearance in these proceedings on behalf of Syncora.  [Dkt. No. 1593].  As of June 19, 2013, Syncora has been represented by Wollmuth Maher & Deutsch LLP.  [Dkt. No. 4028].

here[3]—Syncora never filed suit against GMACM, or any Debtor, simply for servicing the loans

in these transactions.  If Syncora believed that its claims had merit, it would have brought suit

prepetition against GMACM just as it brought suit against the issuers of the RMBS it insured.

At the very least, Syncora would have set forth the basis for its claim in its Proof of Claim.

Syncora took neither course of action.  The Proof of Claim should therefore be disallowed.[4]

## JURISDICTION, VENUE, AND STATUTORY PREDICATE

5.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This

matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under

28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicate for the relief requested herein is section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007(a).

## BACKGROUND

### I.      SYNCORA'S PROOF OF CLAIM

7.      On November 7, 2012, Syncora filed its Proof of Claim seeking an unliquidated

amount from GMACM based on three trusts—BSSLT 2007-SV1, GMFT 2006-HE1, and

STACS 2007-1—that were structured, marketed, and sold by non-debtor third parties.  (Proof of

---

[3] *See* First Am. Compl., *U.S. Bank Nat'l Ass'n, Syncora Guar. Inc., CIFG Assur. N.A., Inc. v. Greenpoint Mortg. Funding*, 600352/2009 (Sup. Ct., N.Y. Cnty. Apr. 14, 2012), Ex. 6; Claim No. 13909, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 16, 2009), Ex. 7 (claim regarding Greenpoint Mortgage Funding Trust 2006-HE1); Claim No. 66099, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 13, 2010), Ex. 8 (amending prior claim to clarify that Syncora was seeking $1,331,838,000 from Lehman); Complaint, *Lehman Brothers Holdings Inc. v. Syncora Guarantee Inc.*, 1:13-ap-01341 (Bankr. S.D.N.Y. May 2, 2013) [Dkt. No. 37147], Ex. 9 (adversary proceeding complaint seeking to subordinate Syncora's claim).

[4] The Debtors will be filing a motion to assume and assign the servicing related agreements (the "Syncora Agreements") pertaining to the three trusts described below, BSSLT 2007-SV1, GMFT 2006-HE1, and STACS 2007.  The Debtors do not believe that Syncora is entitled to any cure payment in connection with the proposed assignment and assumption, including any servicing-related claims.  Moreover, any such claim would, pursuant to prior orders of this Court entered in connection with the Debtors's sale of the servicing platform, be time-barred.

Claim, Ex. 2.)  Nowhere in the Proof of Claim does Syncora even make a general allegation

concerning any breach by GMACM of its servicing obligations or how any such breach damaged

Syncora.  Until recently, Syncora rebuffed all requests to provide any explanation of the basis for

its Proof of Claim.

## II.    SYNCORA'S PSA OBJECTION AND ITS JULY 15 LETTER.

8.    On June 19, 2013—over seven months after filing its Proof of Claim—Syncora

filed its Objection to the Debtors' Motion for an Order under Bankruptcy Code Sections 105(a)

and 363(b) Authorizing the Debtors to Enter into and Perform under a Plan Support Agreement

with Ally Financial Inc., the Creditors' Committee and Certain Consenting Claimants [Dkt. No.

4028] (the "Syncora Objection").  In the Syncora Objection, Syncora provides a cursory

discussion of GMACM's duties and obligations as the servicer for certain transactions, and in the

vaguest of terms, Syncora claims that it is entitled to indemnity for any losses that may have

resulted from breaches of GMACM's servicing obligations.  (Syncora Objection at 2-4.)

Nevertheless, Syncora does not identify any such breaches.  Instead, it merely states, in

conclusory fashion, that "it appears GMACM has breached its above-described duties and

obligations as Servicer by failing to act prudently to safeguard mortgage loan collateral and,

where loans were delinquent or defaulted, failing to act timely to maximize recovery."  (Id. at 4.)

No further particulars are provided.

9.    On June 26, 2013, counsel for the Debtors wrote to counsel for Syncora regarding

assertions in the Syncora Objection.  (June 26 Letter, Ex. 3.)  Counsel for the Debtors noted that

for months the Debtors had been asking Syncora to describe the nature and quantify the amounts

of its claims, but the Debtors had received no response.  (Id.)  Counsel for the Debtors again

asked that Syncora provide, among other things, the amount of each claim asserted against the

Debtors and the basis for Syncora's assertion that it is entitled to recover those amounts against specific debtor entities.  (*Id.*)

10.    On July 10, 2013, counsel for the Debtors sent counsel for Syncora a second letter, explaining again that, despite correspondence on other issues, Syncora had not yet described the nature or quantified the amount of its claims.  (July 10 Letter, Ex. 4.)

11.    On July 15, 2013, Syncora finally provided a partial response to the Debtors' requests.  (July 15 Letter, Ex. 5.)  In its letter, Syncora sets forth its theory for why it is entitled to recover from GMACM with respect to one of the three transactions—BSSLT 2007-SV1— while remaining silent as to the basis for its claims, or even whether it is asserting any claims, arising out of the two other transactions.

12.    With respect to the BSSLT 2007-SV1 transaction, the July 15 Letter does not allege any traditional servicer breach claims, *e.g.*, that GMACM failed to act prudently in pursuing remedies against borrowers.  Instead, the letter asserts a novel theory, which seeks to impose liability on GMACM, as sub-servicer, for possible breaches of representations and warranties by the sponsor or seller:

> [W]e fully expect that it will be proven that GMACM became aware of pervasive, material breaches of representations and warranties.  As a prudent servicer under a duty to service the loans as if they were its own and to maximize the receipt of principal and interest for certificateholders, including those insured by Syncora, GMACM's single best available method for maximizing loan receipts was to notify its Master Servicer, Wells Fargo Bank, National Association ("Master Servicer"), of such breached representations and warranties. Pursuant to the Pooling and Servicing Agreement, dated as of March 1, 2007, between and among SACO I Inc. as Depositor, EMC as Seller, the Master Servicer and Citibank, N.A. as Trustee (the "PSA"), upon learning of such breaches from GMACM, the Master Servicer would have been required to formally and promptly notify the Trustee, who in turn would have been required to "put back" each defective loan for repurchase or substitution.  *See* PSA § 2.02(d).

(*Id.*)  The letter further alleges, based on speculation, that GMACM as servicer had failed to undertake such action "without good faith," and it asserts that, by virtue of GMACM's alleged

breaches, it is required to indemnify Syncora for any resulting losses. (*Id.*) Syncora offers no

legal authority for its novel theory that a sub-servicer's failure to notify the master servicer of a

breach would render the sub-servicer co-liable with the seller for the underlying liability.

13.     Putting aside the untenability of its legal theory, the July 15 Letter conceded that

Syncora has not actually paid any claims with respect to the BSSLT 2007-SV1 transaction.

Instead, Syncora sought $1,737,173 for forecasted *future* claims that might be asserted against

Syncora. (*Id.*) In addition, Syncora claimed that it had "expended $15,682,080 in remediation

expenses" given "distress in the transaction"—approximately *ten times* the total future claims it

expected to receive—with no explanation of what the "remediation expenses" encompassed.

(*Id.*) Syncora did not even attempt to explain how it was reasonable for it to have already spent

as remediation expenses ten times the possible projected future claims on the transaction.

14.     Regarding the GMFT 2006-HE1 and STACS 2007-1 transactions, the July 15

Letter does not even assert claims against GMACM, much less provide an explanation for the

basis of any potential claims. Unlike the section of the letter discussing the "**Claims** against

[GMACM] as Servicer in connection with the [BSSLT 2007-SV1 transaction]", the section of

the letter regarding the GMFT 2006-HE1 and STACS 2007-1 transactions merely refers to

"**Potential Claims** against [GMACM] as Servicer in connection with the [GMFT 2006-HE1 and

STACS 2007-1 transactions]." Syncora has provided no explanation for the legal theories or

factual basis for any recovery based on the GMFT 2006-HE1 and STACS 2007-1 transactions.

Rather, Syncora simply stated that it had paid $690,197,904 in insurance claims on the two

transactions and that it forecasted future insurance claims of $93,327,454. Syncora also alleged

that it had incurred other unspecified "substantial related expenses" arising from the transactions.

15.     Although Syncora has never specified how much it seeks to recover from

GMACM or on what basis, Syncora has sought to leave the Debtors with the impression that

those claims are substantial.  In its July 15 Letter, Syncora suggests that if it sought to recover for

*all* losses it has purportedly incurred on these non-Debtor-sponsored transactions, regardless of

whether the Debtors are contractually obligated to remedy any such losses and irrespective of

whether the loss has any relationship to the servicing of these loans, Syncora would be seeking at

least $800 million:

| | Alleged Remediation Expenses | Alleged Claims Paid | Alleged Future Claims (Est.) |
|---|---|---|---|
| **BSSLT 2007-SV1** | $15,682,080 | $0 | $1,737,173 |
| **GP 2006-HE1** | TBD | $524,798,528 | $62,971,254 |
| **STACS 2007-1** | TBD | $165,399,376 | $30,356,200 |
| **TOTAL** | $15,682,080 | $690,197,904 | $95,064,627 |

And Syncora's claims may not end there.  Syncora asserted that it was "still determining whether

to assert additional claims against Debtor GMACM"—more than eight months after the Bar Date

and in contravention of the Bar Date Order.[5]

## **RELIEF REQUESTED**

16.     The Debtors file this Objection under section 502(b) of the Bankruptcy Code,

seeking to disallow and expunge the Proof of Claim in its entirety.

---

[5] *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice
Thereof (the "General Bar Date Order") [Dkt. No.1309).  The November 9, 2012 deadline to file proofs of claim
was fixed by the General Bar Date Order.  On November 7, 2012, the Court entered an order extending the General
Bar Date to November 16, 2012 [Docket No. 2093].

## **OBJECTION**

I.    **NEITHER SYNCORA'S PROOF OF CLAIM NOR ITS JULY 15 LETTER SETS FORTH ALLEGATIONS SUFFICIENT TO SUPPORT A LEGALLY COGNIZABLE CLAIM.**

17.    A proof of claim is *prima facie* evidence of the validity of a claim *only* if it is legally sufficient. *In re Alper Holdings USA*, No. 07-BR-12148 (BRL), 2008 Bankr. LEXIS 86, at *9 (Bankr. S.D.N.Y. Jan. 15, 2008), *aff'd*, 398 B.R. 736 (S.D.N.Y. 2008). That is, among other things, it "allege[s] facts sufficient to support the claim." *Id.* "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential, LLC*, 416 B.R. 100, 106-07 (Bankr. S.D.N.Y. 2009); *accord WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86 (S.D.N.Y. 2012); *In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 56 n.5 (Bankr. S.D.N.Y. 2006)). In *DJK Residential*, the court held:

> While [a] Claim "does not need detailed factual allegations, . . . [it] requires more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2006). The Claimant must assert "enough facts to state a claim to relief that is plausible on its face." *Id.* at 577. To show facial plausibility, the Claimant must plead "factual content that allows the court to draw the reasonable inference that the [Debtor] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L Ed. 2d 868 (2009).

*DJK Residential,* 416 B.R. at 106.

18.    Syncora's Proof of Claim does not come close to satisfying the governing legal standards. And even if the Court were to deem the Proof of Claim informally amended to incorporate the claims asserted in the July 15 Letter, the allegations still would not be sufficient to state a legally cognizable claim.

A.    **The Proof of Claim Does Not Allege Facts Sufficient to Support a Claim.**

19.    The Proof of Claim does not allege facts remotely sufficient to support a cognizable claim. Rather, the Proof of Claim is a mere placeholder, which utterly fails to

provide the Debtors "notice of the particulars:  the 'who, what, when, where and how'" required

to state a claim.  *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d

616, 622 (S.D.N.Y. 2011) (quoting *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993)).  It is

not based upon pre-petition complaints, nor does it explain why Syncora has any claim related to

the three transactions identified.

20.     The Proof of Claim does nothing more than identify three securitizations that

were not Debtor-sponsored for which GMACM was the servicer or sub-servicer.  It fails to

provide any hint as to what GMACM allegedly did or failed to do in its role as servicer or sub-

servicer for those third-party sponsored transactions that might give rise to any claim.  Indeed,

the Proof of Claim does not even allege that GMACM breached any of its obligations under the

agreements governing these deals.  Instead, it merely states that "[t]he basis for Syncora's claim

is Syncora's right arising out of, arising under, or associated with the Syncora-Related Trusts,

including, without limitation, all rights arising out of or related to the Trust Documents."  (Proof

of Claim, Ex. 2 ¶ 3.)

21.     Because the Proof of Claim provides no basis for the Debtors to evaluate the

claim's validity, and indeed does not even allege any contractual breaches by the Debtors, it

provides no basis for this Court to accept the claim as *prima facie* valid.  *See WestLB AG*, 912 F.

Supp. 2d at 92 (the "only allegations as to a breach of contract based on BAC's wasteful

expenditures are conclusory and, for that reason . . . [they] are insufficient to state plausibly a

claim).

**B.      The Proof of Claim Should Not be Deemed Amended by the July 15 Letter.**

22.     If Syncora were to take the position that its July 15 Letter reflects a purported

amendment to its Proof of Claim, this argument should be rejected.  When deciding whether to

permit an amendment to a proof of claim, bankruptcy courts are guided by a two-prong test.  *See*

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d

Cir. 2005); *Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66,

70 (S.D.N.Y. 1993); *see also In re Barquet Group, Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y.

2012) (Glenn, J.), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012).  With the first prong, the court must

determine whether the claim is a new claim.  In doing so, the court looks to whether the proposed

amendment "1) corrects a defect of form in the original claim; 2) describes the original claim

with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the

original claim."  *In re Enron Corp.*, 419 F.3d at 133; *see also In re W.T. Grant Co.*, 53 B.R. 417,

420 (Bankr. S.D.N.Y. 1985); *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y.

1990).  The July 15 Letter, even if construed as a purported amendment, does none of these

things.  The claims reflected in the July 15 Letter are new claims:  as discussed above, the Proof

of Claim did not even allege that the Debtors had breached their contractual obligations, let alone

provide any details concerning any such alleged breaches.  Thus, the analysis stops there; the

amendment should be denied, without any need to consider the second prong.  *See In re Andover

Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999) ("Amendments are disallowed when their

purpose is to create a new claim.").

    23.     Nevertheless, it bears note that any attempt to deem the Proof of Claim amended

by the July 15 Letter would also fail under the second prong of the analysis.  With the second

prong, bankruptcy courts look to the following factors: "(1) undue prejudice to opposing party;

(2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would

receive a windfall were the amendment not allowed; (4) whether other claimants might be

harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the

time the original claim was filed."  *In re Enron Corp.,* 298 B.R. 513, 517 (Bankr. S.D.N.Y.

2003).  Particularly in light of Syncora's utter lack of justification for filing a Proof of Claim

devoid of any allegations of breach, much less any particulars, Syncora cannot satisfy the second

prong any more than the first.

>    **C.    Even If Deemed to Amend Its Proof of Claim, Syncora's July 15 Letter Does
>    Not Allege Sufficient Facts to Support a Claim.**
>
>    >    **1.    Syncora Has Not Even Purported to Assert a Claim Arising Out of the
>    >    GMFT 2006-HE1 and STACS 2007-1 Transactions.**

24.    Syncora's July 15 Letter provides no details whatsoever regarding any factual or

legal basis to seek to recover in connection with the GMFT 2006-HE1 and STACS 2007-1

transactions.  Indeed, the letter does not even assert that Syncora has any claims against

GMACM relating to either of these transactions.  Rather, the letter refers merely to "**Potential**

**Claims**"—which it does not describe—that Syncora may have, and states that "Syncora is still

determining whether to assert additional claims against Debtor GMACM in respect to GP 2006-

HE1 and STAC 2007-1."  (July 15 Letter, Ex. 5 at 3.)  The letter goes on to state that Syncora

has paid approximately $690 million in claims and expects to pay an additional $95 million in

the future with respect to these two deals.  But it does not state what portions of these payments,

if any, it is allegedly entitled to recoup from GMACM, much less provide any information about

its legal theories or the facts that would entitle it to recover from GMACM in connection with

these two transactions.

>    >    **2.    Syncora's Claims Arising Out of the BSSLT 2007-SV1 Transaction
>    >    Are Legally Insufficient.**

25.    With respect to the BSSLT 2007-SV1 transaction, the July 15 Letter does not

allege that GMACM has committed servicing breaches of any conventional sort.[6]  Instead, the

---

[6] Any such allegation would be devoid of merit.  Duff & Phelps has determined, as part of its calculation of trust
claims in connection with the RMBS Settlement incorporated into the Plan of Reorganization, that the servicing
(Cont.'d)

letter asserts only a single claim:  that GMACM was on notice of "pervasive, material breaches of R&W" and failed to notify the master servicer of such breaches.  This novel attempt to hold GMACM—the sub-servicer—liable for the seller/sponsor's representations and warranties is legally deficient on its face.  This would be equally true as to the GMFT 2006-HE1 and STACS 2007-1 transactions, in the event Syncora were to seek to amend its Proof of Claim to add similar allegations as to those two deals.

**i.    Syncora Cannot Use Servicing Claims as a Back-Door to Assert Breach of Mortgage Loan Representation and Warranty Claims against GMACM.**

26.    Syncora's assertion that GMACM breached its servicing obligations by failing to pursue breaches of representations and warranties by the third-party sponsor is an impermissible attempt to make GMACM the guarantor of the sponsor's performance of its contractual duties.

27.    The underlying transaction documents clearly provide that Syncora's express remedy for alleged breaches of representations and warranties regarding mortgage loans is to request that the *sponsor* cure or repurchase defective loans or, in the event the issuer fails to cure or repurchase, demand reimbursement from the *sponsor* for any insurance payments Syncora makes as a result.  (*See* BSSLT 2007-SV1 I&I Agr. § 3.03(b), Ex. 11 (providing for reimbursement to Syncora from the sponsor in the event of failure to repurchase as provided in PSA section 2.03); *see also* STACS 2007-1 I&I Agr. § 3.03(b), Ex. 12 (same); GMFT 2006-HE1 I&I Agr. § 3.03(b), Ex. 13 (same).)

28.    That is why Syncora has and continues to pursue express remedies against the sponsors of the respective transactions to recover any and all amounts it pays on its policies as a

---

claims of these three trusts' insurers are *de minimis*—specifically, approximately $8,000 for the BSSLT 2007-SV1 transaction, $1,000 for the GMFT 2006-HE1 transaction, and $3,000 for the STACS 2007-1 transaction.  *See* Schedule 4-G to Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors, filed July 3, 2013  [Dkt. No. 4153].

result of breaches of representations and warranties regarding the mortgage loans. *See, e.g.*, First Am. Compl., *U.S. Bank Nat'l Ass'n, Syncora Guar. Inc., CIFG Assur. N.A., Inc. v. Greenpoint Mortg. Funding*, 600352/2009 (Sup. Ct., N.Y. Cnty. Apr. 14, 2012), Ex. 6 (seeking damages regarding GMFT 2006-HE1); Claim No. 66099, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 13, 2010), Ex. 8 (seeking damages regarding GMFT 2006-HE1); Complaint, *Suntrust Acquisition Closed-End Seconds Trust, Series 2001-1, by HSBC Bank USA, N.A., in its capacity as Trustee v. Suntrust Robinson Humphrey Funding, LLC*, No. 1:13-cv-01635 (TWT) (N.D. Ga. May 14, 2013), Ex. 10 (seeking damages regarding STACS 2007-1).

29.     Yet those damages for alleged breaches of representations and warranties are ostensibly the very same damages Syncora is seeking in its Proof of Claim against GMACM on the theory that GMACM was obligated "to notify its Master Servicer . . . of such breached representations and warranties" and, in effect, cause the issuer to "'put back' each defective loan for repurchase or substitution." (July 15 Letter, Ex. 5, at 2.)

30.     Syncora's Proof of Claim lacks merit because while the operative documents expressly provide that Syncora may pursue the remedy it seeks here against the sponsor/seller, they provide no such right against GMACM as servicer or sub-servicer.

31.     The reimbursement obligations outlined in the respective Insurance and Indemnity Agreements (to which GMACM and Syncora are parties) only provide that payments for losses caused by breaches of the loan representations and warranties are to be made by the sponsor/seller. Those agreements make no mention of potential payments by the servicer or sub-servicer. (*See* BSSLT 2007-SV1 I&I Agr. § 3.03, Ex. 11; *see also* STACS 2007-1 I&I Agr. § 3.03(b), Ex. 12; GMFT 2006-HE1 I&I Agr. § 3.03(b), Ex. 13.)

32.    Syncora's only direct remedies against GMACM under the Insurance and Indemnity Agreements arise in the context of indemnification for losses or liabilities Syncora might incur in the event a third party were to assert claims against it.   But those indemnification provisions are explicit that each of the parties would indemnify Syncora only for its own representations and warranties.  The STACS Insurance and Indemnity Agreement expressly states that the parties would indemnify Syncora for claims that might arise as a result of their breaches "severally but not jointly," (STACS 2007 2007-1 I&I Agr.§ 3.04(a), Ex. 12), and the BSSLT 2007-SV1 and GMFT 2006-HE1 Insurance and Indemnity Agreements lay out GMACM's indemnification obligation in an entirely separate section from the Sponsor's obligations, making it clear GMACM owes no indemnity for a Sponsor's alleged breaches of representations and warranties.  (BSSLT 2007-SV1 I&I Agr. § 3.04(b), Ex. 11; GMFT 2006-HE1 I&I Agr. § 3.04(b), Ex. 13.)[7]

33.    Courts have routinely dismissed claims of monoline insurers who have sought to misuse such third-party indemnification clauses.  In fact, courts have dismissed such claims previously brought by Syncora.  *See Syncora Guar. Inc. v. EMC Mortg., LLC*, No. 650420/12, 2013 N.Y. Misc. LEXIS 1519 (Sup. Ct., N.Y. Cnty. Apr. 15, 2013) ("Such claims are classic first party claims and beyond the contemplation of the indemnification provision, which is subject to a strict interpretation.")[8]

---

[7] *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989) (reversing grant of summary judgment awarding interparty indemnification); *Gotham Partners L.P. v. High River L.P.*, 76 A.D.3d 203, 206 (1st Dep't 2010) (same); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("[u]nless the indemnification clause refers 'exclusively or unequivocally' to claims between the indemnitor and indemnitee, the court 'must find the agreement to be lacking evidence of the required intent' to cover such claims") (citation for quotation omitted).

[8] *See also Ambac Assur. Corp. v. First Franklin Fin. Corp.*, No. 651217/2012, 2013 N.Y. Misc. LEXIS 3092 (Sup. Ct., N.Y. Cnty. July 18, 2013) ("Ambac fails to allege a third-party claim within the scope of Section 3.04, as the Trustee is a party to the I & I and its demand that Ambac make payment under the Policy is not a third-party claim (Cont.'d)

34.     The Pooling and Servicing Agreements likewise expressly limit GMACM's liability.  For example, the STACS 2007-1 Pooling and Servicing Agreement states that GMACM, as servicer, "shall be liable in accordance herewith only to the extent of the obligations specifically imposed by this Agreement upon [it] in [its] capacity[y] as . . . Servicer." (STACS 2007-1 PSA § 7.01, Ex. 14.)  Those obligations do not include the making of any representations and warranties as to loan quality, and thus GMACM's liability cannot be extended to any losses that may be sustained by Syncora arising out of breaches and representations and warranties regarding the mortgage loans.  Similarly, the GMFT 2006-HE1 Transfer and Servicing Agreement states that, "[n]otwithstanding anything in this Agreement to the contrary, the Servicer shall not be liable for special, indirect or consequential losses or damages of any kind whatsoever (including, but not limited to, lost profits)."  (GMFT 2006-HE1 TSA § 3.02, Ex. 15.)

> ## ii.    Syncora Has Identified No Plausible Basis to Attribute Damages to Any Failure by GMACM to Notify Third Parties of Breaches of Representations and Warranties.

35.     Even if Syncora could pursue its novel reading of the governing agreements and assert representation and warranty claims through the guise of a servicing claim, there is no possible avenue for Syncora to establish that GMACM caused any damage to Syncora, which is a necessary element of any claim against GMACM.

---

as is required for indemnification under Section 3.04(d)."); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2013 N.Y. Misc. LEXIS 1774, at *43 (Sup. Ct., N.Y. Cnty. Apr. 29, 2013) (granting summary judgment on indemnification claim and holding "[t]he language of the reimbursement provision at issue fails to meet *Hooper's* strict standard, as it is does not 'exclusively or unequivocally' refer to claims brought between the parties themselves."); *Assured Guar. Corp. v. EMC Mortg., LLC*, 650805/12, 2013 N.Y. Misc. LEXIS 1371 (Sup. Ct., N.Y. Cnty. Apr. 4, 2013) ("Such claims are classic first party claims and beyond the contemplation of the indemnification provision, which is subject to strict interpretation."); *Bear Stearns Funding Trust 2007-AR2 v. EMC Mortg. LLC*, C.A. No. 6861-CS, 2013 Del. Ch. LEXIS 9, at *10 (Del. Ch. Jan. 15, 2013) ("The indemnification provisions in the Agreements cannot be read to cover first-party claims between EMC and the Trustee"); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722, at *18 (S.D.N.Y. Sept. 8, 2011) ("AGM's claims seeking indemnification and reimbursement must be dismissed.").

36.    The error of Syncora's causation theory, to the extent it has one, is laid bare in its

July 15 Letter.  According to Syncora, GMACM failed to service prudently by failing to notify

the master servicer (a non-debtor entity) of alleged breaches of representations and warranties to

the extent GMACM discovered them.  (July 15 Letter, Ex. 5.)  But Syncora does not—because it

cannot—allege that GMACM had any power to direct the non-debtor sponsors of these

transactions to repurchase any defective loans.  Instead, the theory goes, the master servicer in

turn would have been obligated to notify the trustee (a non-debtor entity), who in turn would

have been required to request that the issuer (a non-debtor entity) repurchase the loans, and

possibly pursue repurchase claims against that issuer if it failed to do so.  (*See* July 15 Letter, Ex.

5 (citing BSSLT 2007-SV1 PSA § 2.02(d).)[9]

37.    The problem with this attenuated theory is that Syncora or the trustees have

always been free to pursue—and, in fact, already have pursued—repurchase claims on their own

initiative against the sponsors of the transactions.  *See, e.g.*, First Am. Compl., *U.S. Bank Nat'l*

*Ass'n, Syncora Guar. Inc., CIFG Assur. N.A., Inc. v. Greenpoint Mortg. Funding*, 600352/2009

(Sup. Ct., N.Y. Cnty. Apr. 14, 2012), Ex. 6 (seeking damages regarding GMFT 2006-HE1);[10]

Claim No. 66099, *In re Lehman Brothers Holdings, Inc. et al.*, Case No. 08-13555 (JMP)

---

[9] The other transactions at issue similarly impose on GMACM neither the power nor obligation to direct the non-debtor sponsors to repurchase loans.  In the STACS 2007-1 transaction, that power and obligation falls to the trustee. (*See* STACS 2007-1 PSA § 2.03(a), Ex. 14 ("Upon discovery or receipt of notice of . . . a breach by the Sponsor of any representation, warranty or covenant . . . the Trustee shall promptly notify the Sponsor, the Class A Certificate Insurer and the Servicer of such . . . breach and request that the Sponsor . . . cure such defect or breach . . . , and if the Sponsor does not . . . cure such defect or breach in all material respects during such period, the Trustee shall enforce the obligations of the Sponsor under the Mortgage Loan Purchase Agreement to repurchase . . . .").) Similarly, in the GMFT 2006-HE1 transaction, any party discovering a breach of representation and warranty is obligated to "give prompt written notice to the other parties," the Seller or the Depositor are obligated to cure such breach, and it is the Indenture Trustee who "shall enforce its rights . . . for the benefit of Securityholders and the Insurers."  (GMFT 2006-HE1 TSA § 3.03, Ex. 15.)

[10] The courts rebuffed Syncora's efforts to recover based on the GMFT 2006-HE1 transaction, which may in part account for Syncora's efforts to recover from GMACM here.  *See U.S. Bank N.A. v. Greenpoint Mortg. Funding, Inc.*, 105 A.D.3d 639 (1st Dep't 2013) (affirming dismissal of claims for lack of standing to assert breaches of representations and warranties, and affirming denial of motion to amend pleadings as barred by *res judicata*).

(Bankr. S.D.N.Y. Jan. 13, 2010), Ex. 8 (seeking damages regarding GMFT 2006-HE1);

Complaint, *Suntrust Acquisition Closed-End Seconds Trust, Series 2001-1, by HSBC Bank USA,*

*N.A., in its capacity as Trustee v. Suntrust Robinson Humphrey Funding, LLC*, No. 1:13-cv-

01635 (TWT) (N.D. Ga. May 14, 2013), Ex. 10 (seeking damages regarding STACS 2007-1).

The sponsors are the parties who organized the loans and selected the loans which Syncora now

claims breached representations and warranties.  Syncora has thus sought and can continue to

seek reimbursement from the parties that actually engaged in the conduct it claims is wrongful,

regardless of whether GMACM did or did not notify any master servicer of any potential

breaches.

38.    Syncora has not offered, and cannot offer, any reason to believe that its

repurchase claims against the respective sponsors would have met with any different result if

GMACM had issued additional notices to the master servicer.  Consequently, even if the Proof

of Claim were deemed amended to incorporate the allegations of the July 15 Letter, it still would

not satisfy the requirement of *Twombly* and *Iqbal*, applied to proofs of claim by bankruptcy

courts in this district, that the claim allege "enough facts to state a claim to relief that is plausible

on its face."  *DJK Residential,* 416 B.R. at 106 (quoting *Twombly*, 550 U.S. at 107).

## II.    IF THE COURT DOES NOT DISALLOW THE PROOF OF CLAIM AS LEGALLY INSUFFICIENT, IT SHOULD ESTIMATE THE CLAIM AT ZERO.

39.    Whether or not it is deemed amended by the July 15 Letter, the Proof of Claim is

legally deficient.  It should be disallowed on that ground, without the need for further

proceedings relating to the claim.  Syncora should not be permitted to burden the estate with

burdensome and expensive discovery unless it can first state a viable claim.

40.    If the Court were to decline to disallow the Proof of Claim despite its legal

insufficiency, or to permit Syncora to amend the Proof of Claim long after the Bar Date to add

further particulars, the Debtors will promptly seek to estimate the Proof of Claim at zero for

reserve and/or distribution purposes. In the event such estimation relief proves to be necessary,

the Debtors will request a hearing date on the Debtors' estimation relief on an expedited

timetable, well in advance of the proposed plan confirmation hearing.

## NOTICE

41.     The Debtors have provided notice of this Objection in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Dkt. No. 141].

## CONCLUSION

42.     WHEREFORE, the Debtors respectfully request entry of the Proposed Order

disallowing and expunging the Proof of Claim.


Dated: August 13, 2013                              /s/ Gary S. Lee
                                                    Gary S. Lee
                                                    J. Alexander Lawrence
                                                    Kayvan B. Sadeghi
                                                    Alexandra Steinberg Barrage
                                                    MORRISON & FOERSTER LLP
                                                    1290 Avenue of the Americas
                                                    New York, New York 10104
                                                    Telephone:  (212) 468-8000
                                                    Facsimile:  (212) 468-7900

                                                    *Counsel for the Debtors and
                                                    Debtors in Possession*


-18-