**Hearing Date: September 11, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: September 3, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Melissa A. Hager
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

PRINCE LOBEL & TYE LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114
Telephone: 617-456-8000
Facsimile: 617-456-8100
Richard E. Briansky *(pro hac vice*
                *admission pending)*

*Counsel to Homecomings Financial, LLC*
*and Residential Funding Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
|  | ) |  |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---

**NOTICE OF DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY**
**THOMAS LACASSE AGAINST HOMECOMINGS FINANCIAL, LLC**
**(CLAIM NO. 3852) AND RESIDENTIAL FUNDING COMPANY, LLC**
**(CLAIM NOS. 3856 AND 3860) PURSUANT TO**
**BANKRUPTCY CODE SECTION 502(b) AND BANKRUPTCY RULE 3007**

**PLEASE TAKE NOTICE** that the undersigned have filed the attached *Debtors'*

*Objection to the Proofs of Claim filed by Thomas LaCasse against Homecomings*

*Financial, LLC (Claim No. 3852) and Residential Funding Company, LLC (Claim Nos.*

*3856 and 3860) Pursuant to Bankruptcy Code Section 502(b) and Bankruptcy Rule 3007*

(the "<u>Objection</u>").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Objection will take place on **September 11, 2013 at 10:00 a.m. (Eastern Time)** before the Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case Management, and Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case filing system, and be served, so as to be received no later than **September 3, 2013 at 4:00 p.m. (Eastern Time)**, upon (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Gary S. Lee, Norman S. Rosenbaum, Melissa A. Hager and Erica J. Richards), and Prince Lobel Tye LLP, 100 Cambridge Street, Suite 2200, Boston, MA 02114 (Attention:  Richard E. Briansky); (b) Thomas LaCasse, 270 Park Drive, Longmeadow, MA 01106; (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (d) the Office of the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (e)  Office of the New York State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N. Stuart, Esq.); (f) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (g)

counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York,

NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (h) counsel for the committee

of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the

Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal);

(i) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd

Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman);

(j) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand

Avenue, Los Angeles, CA 90071 (Attention:  Thomas Walper and Seth Goldman);

(k) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by

overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-

5016); and (l) Securities and Exchange Commission, New York Regional Office, 3

World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S.

Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a

written response to the relief requested in the Objection, the Bankruptcy Court may deem

any opposition waived, treat the Objection as conceded, and enter an order granting the

relief requested in the Objection without further notice or hearing.

Dated:  August 13, 2013
       New York, New York

                                  /s/  Norman S. Rosenbaum
                                  Gary S. Lee
                                  Norman S. Rosenbaum
                                  Melissa A. Hager
                                  Erica J. Richards
                                  MORRISON & FOERSTER LLP
                                  1290 Avenue of the Americas
                                  New York, New York 10104
                                  Telephone: (212) 468-8000
                                  Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in Possession*

-and-

PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114
Telephone: 617-456-8000
Facsimile:  617-456-8100
Richard E. Briansky  *(pro hac vice admission pending)*

*Counsel to Residential Funding Company, LLC*

**Hearing Date: September 11, 2013 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: September 3, 2013 at 4:00 p.m. (Prevailing Eastern Time)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:     (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Melissa A. Hager
Erica J. Richards

*Counsel for the Debtors and*
*Debtors in Possession*

PRINCE LOBEL & TYE LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114
Telephone: 617-456-8000
Facsimile: 617-456-8100
Richard E. Briansky *(pro hac vice admission pending)*

*Counsel to Homecomings Financial, LLC and*
*Residential Funding Company, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' OBJECTION TO PROOFS OF CLAIM FILED BY
THOMAS LACASSE AGAINST HOMECOMINGS FINANCIAL, LLC
(CLAIM NO. 3852) AND RESIDENTIAL FUNDING COMPANY, LLC
(CLAIM NOS. 3856 AND 3860) PURSUANT TO
<u>BANKRUPTCY CODE SECTION 502(b) AND BANKRUPTCY RULE 3007</u>**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................2

II.   JURISDICTION, VENUE, AND STATUTORY PREDICATE ....................2

III.  BACKGROUND ..................................................................................2

    A.    Chapter 11 Cases Background................................................2

    B.    Claimant's Prior Litigation ....................................................5

        1.    The Aurora Action................................................5

        2.    The Foreclosure Action ........................................6

    C.    The Proofs of Claim ..............................................................9

        1.    The Homecomings Proof of Claim.......................9

        2.    The First RFC Proof of Claim ..............................9

        3.    The Second RFC Proof of Claim.........................10

IV.  RELIEF REQUESTED .......................................................................10

V.   OBJECTION ......................................................................................11

    A.    Applicable Legal Standard ....................................................11

    B.    The Homecomings Proof of Claim and Second RFC Proof Of Claim  Fail To State A Claim Against Any Debtor..................................12

    C.    The First RFC Proof Of Claim Fails To State  A Valid Claim Against Any Debtor ...................................................................12

        1.    The State Court Entered A Judgment of Strict Foreclosure And Claimant Failed to Diligently Seek Relief In State Court ......................13

        2.    As The Holder Of The Note, RFC Was Entitled To Foreclose On The Valley Forge Property .......................................15

        3.    Claimant's Allegation That The Stephan Affidavit Is Fraudulent Is Moot And Unsupported By Evidence ......................................18

    D.    The Proofs Of Claim Are Not Supported By Sufficient Documentation............19

VI.  NOTICE; NO PRIOR REQUEST ........................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bankers Trust Co. of Cal., N.A. v. Vaneck,*
  95 Conn. App. 390 (2006) ...................................................................................... 17

*Chapman Lumber, Inc. v. Tager,*
  288 Conn. 69 (2008) ............................................................................................... 13

*Chase Home Fin., LLC v. Fequiere,*
  119 Conn. App. 570 (2010) ............................................................................... 16, 17

*E. Elevator Co., Inc. v. Scalzi,*
  193 Conn. 128 (1984) ............................................................................................. 14

*Ertel v. Rocque,*
  2009 WL 5305978 (Conn. Super. Dec. 4, 2009) .................................................... 14

*Feinberg v. Bank of N.Y. (In re Feinberg),*
  442 B.R. 215 (Bankr. S.D.N.Y. 2010) ................................................................... 11

*First Nat. Bank of Chicago v. Luecken,*
  66 Conn. App. 606 (Conn. App. 2001) .................................................................. 14

*Fleet Nat'l Bank v. Nazareth,*
  75 Conn. App. 791 (2003) ...................................................................................... 17

*HSBC Bank, N.A. v. Navin,*
  129 Conn. App. 707 (2011) .................................................................................... 17

*In re Adelphia Commc'ns Corp.,*
  No. 02-41729 (REG), 2007 Bankr. LEXIS 660 (Bankr. S.D.N.Y. Feb. 20, 2007) ................. 11

*In re Allegheny Int'l, Inc.,*
  954 F.2d 167 (3d Cir. 1992) ................................................................................... 11

*In re DePugh,*
  409 B.R. 125 (Bankr. S.D. Tex. 2009) ................................................................... 19

*In re Hess,*
  404 B.R. 747 (Bankr. S.D.N.Y. 2009) ................................................................... 11

*In re Hight,*
  393 B.R. 484 (Bankr.S.D.Tex.2008) ...................................................................... 19

-ii-

*In re Lundberg*,
    No. 02–34542 (LMW), 2008 WL 4829846 (Bankr. D. Conn. Oct. 27, 2008) ....................... 19

*In re Minbatiwalla*,
    424 B.R. 104 (Bankr. S.D.N.Y. 2010) ................................................................................. 19

*In re Oneida Ltd.*,
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09-CV-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010) ........ 11

*In re Porter*,
    374 B.R. 471 (Bankr. D. Conn. 2007) ............................................................................ 19, 20

*In re Rockefeller Ctr. Props.*,
    272 B.R. 524 (Bankr. S.D.N.Y. 2000), *aff'd sub nom.*, *NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.)*, 266 B.R. 52 (S.D.N.Y. 2001), *aff'd*, 46 Fed. App'x. 40 (2d Cir. 2002) ......................................................................................................... 11

*In re W.R. Grace & Co.*,
    346 B.R. 672 (Bankr. D. Del. 2006) .................................................................................. 11

*RMS Residential Props., LLC v. Miller*,
    303 Conn. 224 (2011) ........................................................................................ 15, 16, 17

*Soc'y for Sav. v. Stramaglia*,
    225 Conn. 105 (1993) ...................................................................................................... 14

*Vanston Bondholders Protective Comm. v. Green*,
    329 U.S. 156 (1946) ........................................................................................................ 11

## STATUTES

11 U.S.C. § 502(b)(1) ................................................................................................. 11, 12

CONN. GEN STAT. § 42a-1-201(b)(21)(A) ....................................................................... 16

CONN. GEN STAT. § 42a-3-109 ....................................................................................... 16

CONN. GEN STAT. § 42a-3-201 ....................................................................................... 16

CONN. GEN STAT. § 42a-3-203 ....................................................................................... 16

CONN. GEN STAT. § 42a-3-205(b) ................................................................................... 16

CONN. GEN STAT. § 42a-3-301 ................................................................................... 15, 16

CONN. GEN STAT. § 49-15(a)(1) ..................................................................................... 13

CONN. GEN STAT. § 49-15(b) .......................................................................................... 13

CONN. GEN STAT. § 49-17 ............................................................................................................. 15

-iv-

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Residential Capital, LLC ("**ResCap**") and its affiliated debtors in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"),[1] as debtors and debtors in possession (collectively, the "**Debtors**"),[2] hereby file this objection (the "**Objection**") seeking to disallow and expunge Claim No. 3852 (the "**Homecomings Proof of Claim**") against Homecomings Financial, LLC ("**Homecomings**"), and Claim No. 3856 (the "**First RFC Proof of Claim**") and Claim No. 3860 (the "**Second RFC Proof of Claim**" and, collectively with the Homecomings Proof of Claim and First RFC Proof of Claim, the "**Proofs of Claim**," copies of which are attached hereto as Exhibit 1-A, 1-B, and 1-C respectively) against Residential Funding Company, LLC ("**RFC**"), each filed by Thomas James LaCasse ("**Claimant**") pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") on the grounds that the Proofs of Claim: (a) are not supported by sufficient documentation, and (b) fail to state a basis for liability against the Debtors.[3]   The Debtors seek the entry of an order, substantially in the form annexed hereto as Exhibit 2, granting the requested relief.  In support of the Objection, the Debtors rely upon and incorporate by reference the Declaration of Lauren Graham Delehey, In-House Litigation Counsel at Residential Capital, LLC, dated August 13, 2013 (the "**Delehey Decl.**"), annexed hereto as Exhibit 3.   In further support of the Objection, the Debtors respectfully represent as follows:

---

[1]    Creditors and parties-in-interest with questions or concerns regarding the Debtors' chapter 11 cases or the relief requested in this Objection may refer to http://www.kccllc.net/rescap for additional information.

[2]    The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6], dated May 14, 2012.

[3]    The Debtors reserve all of their rights to object on any other basis to the Proofs of Claim not set forth in this Objection, and the Debtors reserve all of their rights to amend this Objection should any further bases come to light.

## I.    PRELIMINARY STATEMENT

1.    The Proofs of Claim filed by Claimant, which allege $5,289,000 in claims against Homecomings, and $31,789,000 in aggregate claims against RFC, should be disallowed and expunged pursuant to section 502(b) of the Bankruptcy Code on the grounds that Claimant fails to state a claim against any of the Debtors under applicable law.  As discussed in detail below, the Proofs of Claim are based on claims arising under two foreclosure-related actions filed in Connecticut state court.  With respect to one of those actions, no Debtor is named as a party, nor was a Debtor involved in the underlying foreclosure.  With respect to the second action, Claimant fails to articulate a valid legal basis that would give rise liability on the part of any Debtor.  Further, Claimant provides no support for the tens of millions of dollars in claims asserted against the Debtors, beyond perfunctory lists of alleged damages.  The Proofs of Claim are without merit and fail to state a claim against the Debtors.  Accordingly, the Proofs of Claim should be disallowed and expunged from the Debtors' claims register in their entirety.

## II.    JURISDICTION, VENUE, AND STATUTORY PREDICATE

2.    This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are Bankruptcy Code section 502(b) and Bankruptcy Rule 3007(a).

## III.    BACKGROUND

### A.    Chapter 11 Cases Background

3.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with the Bankruptcy Court for the Southern District of New York (the "**Court**") under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  Since the Petition Date, the Debtors have operated their businesses and managed their properties

-2-

as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No trustee has been appointed in the Chapter 11 Cases.

4.      On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine member official committee of unsecured creditors.

5.      On June 20, 2012, the Court directed that an examiner (the "**Examiner**") be appointed, and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket Nos. 454, 674].  On May 13, 2013, the Examiner filed his report under seal [Docket No. 3698].  On June 26, 2013, the Examiner's report was unsealed and made available to the public [Docket No. 4099].

6.      On July 3, 2012, the Debtors filed their Schedules of Assets and Liabilities (collectively, as amended, the "**Schedules**") and listed the claims of their known prepetition creditors therein.  The Foreclosure Action (defined below) is listed in the Schedules as an unsecured claim on Schedule F-3 "General Litigation" for Residential Funding Company, LLC ("**RFC**") and scheduled as contingent, unliquidated, and disputed in an unknown amount [Docket No. 684].

7.      On July 17, 2012, the Court entered an order [Docket No. 798] appointing Kurtzman Carson Consultants LLC ("**KCC**") as the notice and claims agent in these Chapter 11 Cases.    Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 cases and (b) maintain official claims registers for each of the Debtors.

8.     On August 29, 2012, this Court entered an order approving the Debtors'
motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No.
1309] (the "**Bar Date Order**").[4]

9.     On March 21, 2013, the Court entered an order (the "**Procedures Order**")
[Docket No. 3294] approving, among other things, certain procedures to be applied in connection
with objections to claims filed by current or former borrowers (collectively, the "**Borrower
Claims**," and the procedures relating thereto, the "**Borrower Claims Procedures**").  Based on
substantial input from the Creditors' Committee and Special Counsel to the Creditors'
Committee for Borrower Issues ("**Special Counsel**"), the Procedures Order includes specific
protections for borrowers and sets forth a process for the Debtors to follow before objecting to
certain categories of Borrower Claims. For example, the Borrower Claims Procedures require
that prior to objecting to certain categories of Borrower Claims, the Debtors must furnish the
individual borrower with a letter, with notice to Special Counsel, requesting additional
documentation in support of the purported claim (the "**Request Letter**").  (*See* Procedures Order
at 4).

10.     The Debtors determined, in consultation with Special Counsel, that no
Request Letter was required to be sent to Claimant under the Borrower Claims Procedures.

---

[4]     The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern
Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "**General Bar Date**")
and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing
Eastern Time) as the deadline for governmental units to file proofs of claim (the "**Governmental Bar Date**").  (Bar
Date Order ¶¶ 2, 3).  On November 7, 2012, the Court entered an order extending the General Bar Date to
November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was
**not** extended.  To date, approximately 6,890 proofs of claim have been filed in these Chapter 11 Cases as reflected
on the Debtors' claims registers.

ny-1096761

B.      **Claimant's Prior Litigation**

1.      **The Aurora Action**

11.      Claimant was a borrower under a loan (the "**Park Drive Loan**") evidenced by a note (the "**Park Drive Note**") in the principal amount of $600,000 executed on November 15, 2006, in favor of Homecomings, which was secured by a mortgage (the "**Park Drive Mortgage**") on property located at 270 Park Drive, Longmeadow, Massachusetts (the "**Park Drive Property**"), identifying Mortgage Electronic Registration Systems, Inc. ("**MERS**") as nominee for Homecomings.  Delehey Decl. ¶ 4.  Homecomings subsequently transferred the Park Drive Note to Aurora Loan Services, LLC ("**Aurora**").  *Id.*

12.      On November 22, 2010, the Park Drive Property was sold in a foreclosure auction pursuant to a September 15, 2009 foreclosure judgment issued by the Commonwealth of Massachusetts Land Court.  Delehey Decl. ¶ 5.

13.      On or about December 8, 2010, Claimant filed a complaint against Aurora and MERS (the "**Aurora Complaint**") in the Superior Court for the Judicial District of Stamford-Norwalk, Connecticut (the "**State Court**"), commencing a case captioned *LaCasse v. Aurora Loan Servs., LLC, et al.*, CV10-6007676-S (the "**Aurora Action**").  Delehey Decl. ¶ 6. A copy of the Aurora Complaint is attached as "Exhibit B" to Exhibit 1-C.  In the Aurora Complaint, Claimant asserted claims against Aurora and MERS for (I) Predatory Lending Practices, (II) Breach of Contract, (III) Fraud, (IV) Unconscionability, (V) Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, *et seq.*, and  (VI) Breach of Implied Covenant of Good Faith and Fair Dealing.  Claimant sought actual and compensatory damages, costs, and possession of the Park Drive Property.

14.      As of the date hereof, the Aurora Action is still pending, and no determination has been made as to the liability of Aurora or MERS.  Delehey Decl. ¶ 8.

-5-

### 2.     The Foreclosure Action

15.     Claimant was a borrower under a loan (the "**Valley Forge Loan**") evidenced by a note (the "**Valley Forge Note**") in the principal amount of $650,000 executed on January 30, 2006, in favor of Homecomings, which was secured by a mortgage (the "**Valley Forge Mortgage**") on property located at 153 Valley Forge Road, Weston, Connecticut (the "**Valley Forge Property**"), identifying MERS as nominee for Homecomings.  Delehey Decl. ¶ 9.  In 2006, Homecomings sold the Valley Forge Note and specifically indorsed it to Residential Funding Corporation, which later changed its name to Residential Funding Company, LLC.  *Id*. at ¶ 10. The Valley Forge Note was indorsed in blank and held by Wells Fargo on behalf of RFC under a custodial agreement.   *Id*.  On April 26, 2009, RFC acquired possession of the original Valley Forge Note and transferred it to its counsel to conduct the foreclosure. *Id*.

16.     After Claimant defaulted on the Valley Forge Note, on May 18, 2009, RFC filed a complaint (the "**RFC Complaint**") in the State Court, thereby commencing an action captioned *Residential Funding v. LaCasse*, CV09-5011591-S (the "**Foreclosure Action**") for strict foreclosure on the Valley Forge Loan.[5]  Delehey Decl. ¶ 11.  A copy of the RFC Complaint is attached as Exhibit A to the Delehey Decl.  Specifically, RFC maintained that it held the Valley Forge Note, that Claimant defaulted under the terms of the Valley Forge Note, and that RFC exercised its right to accelerate the balance on the Valley Forge Note and foreclose on the Valley Forge Property.  *See* RFC Complaint at 5.

---

[5]     Connecticut is a judicial foreclosure state. The judicial foreclosure process in Connecticut is commenced by filing a civil action with the State Court.  At the conclusion of the action, the State Court may grant a "strict foreclosure" if it determines that there is no equity in the property, in which case no foreclosure auction is held.  The State Court will assign "law days" in reverse order of priority, which allows parties with an interest to redeem the property.  If no party redeems the property on their law day, title of the property will vest, free and clear to the lender.

ny-1096761

17.    Claimant failed to participate in foreclosure mediation or even appear in the Foreclosure Action prior to the expiration of the foreclosure mediation period, which expired on June 18, 2009.  Delehey Decl. ¶ 12.  On August 18, 2009, the State Court entered a default against Claimant for failure to appear.  *Id*.

18.    On August 18, 2009, RFC filed a Motion for Judgment of Strict Foreclosure.  In connection with this motion, RFC submitted an Affidavit of Debt signed by Jeffrey Stephan (the "**Stephan Affidavit**").  Delehey Decl. ¶ 13.  On September 2, 2009, the State Court granted RFC's motion and entered a Judgment of Strict Foreclosure in favor of RFC, with law days set to run beginning on October 20, 2009.  *Id*.  A copy of the Judgment of Strict Foreclosure is attached as Exhibit B to the Delehey Decl.

19.    On October 20, 2009, Claimant filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts (the "**Massachusetts Bankruptcy Court**"), Case No. 09-31866, thereby vacating the law days and reopening the Judgment of Strict Foreclosure.  Delehey Decl. ¶ 14.  On December 8, 2009, the Claimant's Chapter 13 bankruptcy case was dismissed.  *Id*.

20.    On January 19, 2010, Claimant filed a voluntary Chapter 7 bankruptcy petition in the Massachusetts Bankruptcy Court, Case No. 10-30088.  Delehey Decl. ¶ 15.  On November 4, 2010, the Massachusetts Bankruptcy Court issued an Order of Relief permitting RFC to proceed with the Foreclosure Action.  *Id*.  A copy of the Order of Relief is attached as Exhibit D to the Delehey Decl.

21.    As a result, on or about November 30, 2010, RFC filed Motion to Reset Law Days and Reenter Judgment.  Delehey Decl. ¶ 16.  In connection with this motion, RFC submitted a revised Affidavit of Debt signed by Douglas Wilson (the "**Wilson Affidavit**").  *Id*.

-7-

A copy of the Wilson Affidavit is attached as <u>Exhibit F</u> to the Delehey Decl.  In the Wilson Affidavit, Mr. Wilson stated that he had reviewed the records maintained on behalf of RFC and that the total amount Claimant owed under the Valley Forge Note as of September 27, 2011 was $786,622.14.  *See* Wilson Aff.

22.    On or about November 11, 2011, more than two years after the Judgment of Strict Foreclosure was obtained, Claimant filed a *Motion to Vacate Judgment and Dismiss With Prejudice* (the "**Motion to Vacate**") in the Foreclosure Action.  Delehey Decl. ¶ 17.  A copy of the Motion to Vacate is attached as <u>Exhibit G</u> to the Delehey Decl.  The Motion to Vacate asserts that: (a) the assignment of the Valley Forge Mortgage by MERS as nominee to RFC is legally void, (b) RFC lacked standing to bring the Foreclosure Action, and (c) RFC committed "fraud" on the State Court when it alleged that RFC was the holder of the Valley Forge Note and Valley Forge Mortgage.  By the Motion to Vacate, Claimant requests that the State Court vacate the Judgment of Strict Foreclosure and dismiss the Foreclosure Action with prejudice.

23.    On January 23, 2012, RFC filed an objection to the Motion to Vacate, Delehey Decl. ¶ 18, and on February 7, 2012, Claimant filed a reply in further support of the Motion to Vacate.  *Id*. ¶ 19.

24.    The State Court scheduled an evidentiary hearing on the Motion to Vacate.  The evidentiary hearing (following several continuances) was scheduled for September 14, 2012.  Delehey Decl. ¶ 20.

25.    Before the scheduled evidentiary hearing was conducted, the State Court issued a stay of this proceeding based upon RFC's bankruptcy filing.  Delehey Decl. ¶ 21.  The

-8-

State Court specifically requested that RFC obtain an order from this Court (the "**Stay Relief Order**") granting relief allowing the Foreclosure Action to proceed. *Id.*

26.    On April 30, 2013, this Court entered the Stay Relief Order [Docket No. 3562], which provided that, pursuant to the Supplemental Servicing Order, the automatic stay was lifted to allow Claimant to prosecute any claims or causes of action asserted in the Foreclosure Action to the extent such claims and causes of action constitute defenses to the pending foreclosure of the Loan, including Claimant's prosecution of the Motion to Vacate and any opposition thereto by RFC. *See* Stay Relief Order ¶ 2.

27.    On May 14, 2013, RFC filed a notice of entry of the Stay Relief Order in the Foreclosure Action. Delehey Decl. ¶ 22. However, to date, no further proceedings have been held before the State Court following entry of that order. *Id.*

### C.    The Proofs of Claim

#### 1.    The Homecomings Proof of Claim

28.    On November 9, 2012, Claimant filed the Homecomings Proof of Claim asserting a claim against Homecomings in the amount of $5,289,000.00. *See* Exhibit 1-A. The Homecomings Proof of Claim describes the basis for claim as "See attached, relating to fraudulent foreclosure" and attaches the following:

- a one page "Itemized List" of asserted damages consisting of direct damages, punitive damages, emotional distress, attorney fees, costs, costs for legal preparation, liquidated damages, consequential damages, and loss of reputation, and the values ascribed by Claimant to each category (*see* "Exhibit A" to Exhibit 1-A); and

- copies of the Claimant's Park Drive Mortgage (including assignments) and Park Drive Note (*see* "Exhibit B" to Exhibit 1-A).

#### 2.    The First RFC Proof of Claim

29.    On November 9, 2012, Claimant filed the First RFC Proof of Claim asserting a claim against RFC in the amount of $26,500,000.00. *See* Exhibit 1-B. The RFC

Proof of Claim describes the basis for claim as "See attached, relating to fraudulent foreclosure"

and attaches the following:

- a one page "Itemized List" of asserted damages consisting of damages under "Civil RICO (Settlement Demand)," property to be transferred free and clear, and insurance coverage to be transferred, and the values ascribed by Claimant to each category (*see* "Exhibit A" to Exhibit 1-B);

- a copy of Claimant's settlement demand in the amount of $25 million, dated May 15, 2012 (*see* "Exhibit B" to Exhibit 1-B);

- a copy of the RFC Complaint (see "Exhibit C" to Exhibit 1-B);

- a copy of the Motion to Vacate and memorandum of law in support thereof (*see* "Exhibit D" and "Exhibit E" to Exhibit 1-B); and

- a copy of an affidavit submitted by Claimant in support of the Motion to Vacate (*see* "Exhibit F" to Exhibit 1-B).

### 3.    The Second RFC Proof of Claim

30.    On November 9, 2012, Claimant filed the Second RFC Proof of Claim

asserting a claim against RFC in the amount of $5,289,000.00.  *See* Exhibit 1-C.  The Second

RFC Proof of Claim describes the basis for claim as "See attached, relating to fraudulent

foreclosure" and attaches the following:

- a one page "Itemized List" of asserted damages consisting of direct damages, punitive damages, emotional distress, attorney fees, costs, costs for legal preparation, liquidated damages, consequential damages, and loss of reputation, and the values ascribed by Claimant to each category (*see* "Exhibit A" to Exhibit 1-C);

- a copy of the Aurora Complaint (*see* "Exhibit B" to Exhibit 1-C); and

- a copy of the Claimant's Park Drive Mortgage and Park Drive Note (*see* "Exhibit C" to Exhibit 1-C).

### IV.    RELIEF REQUESTED

31.    The Debtors hereby file this Objection pursuant to section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007, and seek the entry of an order, substantially in the

-10-

form annexed hereto as <u>Exhibit 2</u>, disallowing and expunging the Proofs of Claim from the claims register maintained in these Chapter 11 Cases.

## V.    OBJECTION

### A.    Applicable Legal Standard

32.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C.  § 502(a).   If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*, *Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09-CV-2229, 2010 U.S. Dist. LEXIS 6500 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000), *aff'd sub nom.*, *NBC v. Rockefeller Ctr. Props. (In re Rockefeller Ctr. Props.)*, 266 B.R. 52 (S.D.N.Y. 2001), *aff'd*, 46 Fed. App'x. 40 (2d Cir. 2002).  The burden of persuasion is on the holder of a proof of claim to establish a valid claim against a debtor.  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *see also Feinberg v. Bank of N.Y. (In re Feinberg)*, 442 B.R. 215, 220-22 (Bankr. S.D.N.Y. 2010) (stating the claimant "bears the burden of persuasion as to the allowance of [its] claim.").

33.    Further, Bankruptcy Code section 502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law. . . ." 11 U.S.C. § 502(b)(1). Whether a claim is allowable "generally is determined by applicable nonbankruptcy law."  *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006).  "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law."

-11-

*In re Hess*, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting *Vanston Bondholders Protective*

*Comm. v. Green*, 329 U.S. 156, 161 (1946)).

34.     Here, the Debtors object to the Proofs of Claim on the basis that, after

reviewing the Debtors' books and records and the supporting documentation attached to the

Proofs of Claim, (a) the Debtors have no liability with respect to the Proofs of Claim, and (b) the

Proofs of Claim are not supported by sufficient documentation or the Debtors' books and

records.  For the reasons set forth below, each of the Proofs of Claim fail to state a claim against

any of the Debtors under applicable law and should be disallowed and expunged in its entirety.

**B.     The Homecomings Proof of Claim and Second RFC Proof Of Claim
Fail To State A Claim Against Any Debtor**

35.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that

the Court shall allow a claim except to the extent that "such claim is unenforceable against the

debtor and property of the debtor…." 11 U.S.C. § 502(b)(1).  The Homecomings Proof of Claim

and Second RFC Proof of Claim both seek damages related to a "fraudulent foreclosure" and

attach, respectively, a copy of the Park Drive Mortgage and Park Drive Note, and a copy of the

Aurora Complaint.  However, no Debtor is named as a party in the Aurora Action, and no Debtor

was involved in the foreclosure of the Park Drive Property.  Delehey Decl. ¶ 7.  Accordingly, the

Homecomings Proof of Claim and Second RFC Proof of Claim both fail to state a claim against

the Debtors and should be disallowed and expunged in their entirety.

**C.     The First RFC Proof Of Claim Fails To State
A Valid Claim Against Any Debtor**

36.     The First RFC Proof of Claim is based entirely on the claims asserted in

the Claimant's Motion to Vacate, by which Claimant seeks to vacate the Judgment of Strict

Foreclosure obtained by RFC in the Foreclosure Action nearly four years ago.  In the Motion to

Vacate, Claimant alleges, without any evidentiary foundation, that: (a) the assignment of the

-12-

Valley Forge Mortgage by MERS as nominee to RFC is legally void, (b) RFC lacked standing to bring the Foreclosure Action, and (c) RFC committed "fraud" on the State Court when it alleged that RFC was the holder of the Valley Forge Note and Valley Forge Mortgage.

37.     Even if Claimant had diligently pursued these claims, which he did not, the Connecticut courts have already rejected Claimant's arguments regarding MERS' ability to hold and assign mortgages.  Moreover, since the evidence indisputably establishes that RFC was the holder of the Valley Forge Note before it commenced foreclosure proceedings and remains so to this day(Delehey Decl. ¶¶ 9-10), RFC had standing under Connecticut law to foreclose on the Valley Forge Property, notwithstanding any alleged impropriety in connection with the assignment of the Valley Forge Mortgage.  Thus, the State Court properly granted a Judgment of Strict Foreclosure and Claimant has failed to state a valid claim against RFC relating to the Foreclosure Action.

1.     **The State Court Entered A Judgment of Strict Foreclosure And Claimant Failed to Diligently Seek Relief In State Court**

38.     The Judgment of Strict Foreclosure entered by the State Court has not been vacated, and the State Court should refuse to hear the merits of the Motion to Vacate due to Claimant's failure to diligently seek relief.  Admittedly, Claimant's eleventh-hour bankruptcy filing on the afternoon of October 20, 2009, automatically reset the passage of the law days and entitles him, as a technical matter, to continue to seek relief from that judgment.  *See* CONN. GEN. STAT. § 49-15(b).  The State Court, however, still has discretion over whether to actually grant this relief.  *See* CONN. GEN STAT. § 49-15(a)(1).  In making this determination, the State Court will consider whether the moving party has acted promptly and diligently in presenting the alleged fraud, and whether he has demonstrated a compelling reason to open the judgment.  *Chapman Lumber, Inc. v. Tager*, 288 Conn. 69, 107 (2008) ("When a party seeks to open and

-13-

vacate a judgment based on new evidence allegedly showing that the judgment is tainted by fraud, he must show, *inter alia*, that he was diligent during trial in trying to discover and expose the fraud, and that there is clear proof of that fraud"); *E. Elevator Co., Inc. v. Scalzi*, 193 Conn. 128, 131 (1984) (holding that a defaulted party seeking relief from judgment must show that he was prevented from making that defense because of mistake, accident or other reasonable cause).

39.    Rather than acting promptly to seek relief from the State Court, Claimant permitted the judgment to be entered against him without opposition and waited more than two years to assert his allegation that RFC's Judgment of Strict Foreclosure was invalid.  Claimant had notice of the judgment sought by RFC.  Claimant's delay in this matter contradicts Connecticut's recognized policy of fostering efficient and judicious foreclosures, and should not be tolerated.  *See First Nat. Bank of Chicago v. Luecken*, 66 Conn. App. 606, 610 (Conn. App. 2001) (recognizing that Connecticut has a "policy of expediting foreclosure cases whenever possible"); *Ertel v. Rocque*, 2009 WL 5305978, *4 (Conn. Super. Dec. 4, 2009) ("Among the limitations on a court's ability to grant relief from a judgment secured by fraud is that 'there must have been no laches or unreasonable delay by the injured party after the fraud was discovered").  This is particularly true where Claimant has not even attempted to explain why he could not have raised these alleged "defenses" at the time RFC first sought judgment against him.  *Scalzi*, 193 Conn. at 134 (denying motion to vacate default judgment where defendant did not sustain burden of showing that he was prevented from asserting defense in opposition to default motion); *Soc'y for Sav. v. Stramaglia*, 225 Conn. 105, 111 (1993) ("We have similarly found no abuse of discretion when the defendant sought to raise a defense that, but for his own negligence, he could have discovered and presented at the time of the rendition of the foreclosure

-14-

judgment"). Nor has Claimant alleged that he was not in default under the Valley Forge Note when the Foreclosure Action was commenced.

### 2. As The Holder Of The Note, RFC Was Entitled To Foreclose On The Valley Forge Property

40. Section 49-17 of the Connecticut General Statues ("**Section 49-17**") codifies the long-standing common law rule that "the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage." *RMS Residential Props., LLC v. Miller*, 303 Conn. 224, 230 (2011).[6] Section 49-17 states in its entirety:

> When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies.

CONN. GEN STAT. § 49-17.

41. The statute does not define "the person entitled to receive the money secured thereby." Connecticut's adoption of the Uniform Commercial Code is instructive. Section 42a-3-301 provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a–3–309 or 42a–

---

[6]    The Supreme Court of Connecticut's decision in *Miller* specifically upheld MERS' ability to serve as a mortgagee and assign such mortgages in its capacity as nominee for the original lender and the lender's successors and assigns. As reasoned by the court, since both the mortgagor and mortgagee consented to this transaction by signing the mortgage, voiding such a transaction would frustrate the intentions of both parties. *Id.*, at *6. This decision invalidates Claimant's primary allegation that MERS lacked the authority to hold or assign the Valley Forge Mortgage. Furthermore, that allegation is irrelevant to the issue of whether RFC had the ability to foreclose under CONN. GEN STAT. § 49-17 because RFC never alleged that MERS ever had an ownership interest in the Valley Forge Note or otherwise assigned any interest in it.

> 3–418(d).  **A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.**

CONN. GEN STAT. § 42a-3-301(emphasis added).

42.     Section 42a-3-109 defines bearer paper as an instrument that is payable to the bearer if endorsed in blank.  CONN. GEN STAT. § 42a-3-109.  Further, Section 42a-3-205(b) provides,

> If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a 'blank endorsement'.  When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

CONN. GEN STAT. § 42a-3-205(b).

43.     Further, Section 42a-3-201 states in part, "[i]f an instrument is payable to bearer, it may be negotiated by transfer of possession alone."  CONN. GEN STAT. § 42a-3-201. Section 42a-3-203 provides, in pertinent part, "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course…"  CONN. GEN STAT. § 42a-3-203. Additionally, a "Holder" means "the person in possession of a negotiable instrument that is payable… to bearer."  CONN. GEN STAT. § 42a-1-201(b)(21)(A).  Taken together, these provisions establish that the entity in possession of a note endorsed in blank is a holder entitled to enforce the note. *See Miller*, 303 Conn. at 231.

44.     That right of enforcement has also been established under applicable case law.  In *Miller*, the Supreme Court of Connecticut stated that the "legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him."  *Miller*, 303 Conn. at 230. Similarly, in *Chase Home Fin., LLC v. Fequiere*, 119 Conn. App. 570 (2010), the foreclosing

-16-

entity possessed a copy of the promissory note, which was endorsed in blank by the original

lender. *Fequiere*, 119 Conn. App. at 577. The defendant, who was appealing the trial court's

denial of her motion to dismiss, failed to present evidence "demonstrating that the foreclosing

entity was not in possession of the promissory note or contradicting its status as a bona fide

holder of the note." *Id.* at 578. Thus, the court held that the production of the note established

*prima facie* proof of the entity's entitlement to foreclose, which the defendant had failed to rebut.

*Id. See also Miller*, 303 Conn. at 234-35 (affirming grant of summary judgment to foreclosing

entity, who was holder of note endorsed in blank, because defendant failed to demonstrate that

the foreclosing entity was not rightful owner of the note); *HSBC Bank, N.A. v. Navin*, 129 Conn.

App. 707, 712 (2011) (affirming order of summary judgment for foreclosing entity where

defendant offered no evidence to counter the plaintiff's sworn statement that it was in possession

of note endorsed in blank at the time it commenced the foreclosure action); *Fleet Nat'l Bank v.*

*Nazareth,* 75 Conn. App. 791, 794 (2003) ("It is undisputed that Fleet Mortgage is the holder of

the note, while the plaintiff is the holder of the mortgage."); *Bankers Trust Co. of Cal., N.A. v.*

*Vaneck,* 95 Conn. App. 390, 391 (2006) ("General Statutes §49-17 permits the holder of a

negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the

mortgage has not yet been assigned to him.").

45. Here, Claimant has supplied no evidence in support of his contention that

RFC was not the owner of the Valley Forge Note at the time it commenced the Foreclosure

Action. Indeed, that allegation seems to be based on Claimant's flawed conflation of mortgage

and note. However, RFC held the Valley Forge Note at the time of foreclosure. Delehey Decl.

¶¶ 9-10. Accordingly, RFC had the right to foreclose under Section 49-17, and Claimant's

allegation that RFC lacked standing to foreclose is without merit. Thus, to the extent the First

-17-

RFC Proof of Claim is based on Claimant's allegation that RFC improperly foreclosed on the Valley Forge Note, it fails to state a valid claim.

### 3.    Claimant's Allegation That The Stephan Affidavit Is Fraudulent Is Moot And Unsupported By Evidence

46.    Similarly, Claimant has not offered any evidence to support his allegation that RFC obtained the Judgment of Strict Foreclosure through fraud because it relied upon the Stephan Affidavit.  Moreover, the allegedly fraudulent Stephan Affidavit has been superseded by a revised affidavit and updated judgment figures.

47.    Claimant does not dispute that he defaulted under the Valley Forge Note or that he owed nearly $700,000 as of August 2009, the date judgment first entered against the Valley Forge Property.  Instead, the Motion to Vacate seeks to collaterally attack the Judgment of Strict Foreclosure by alleging that Mr. Stephan, the signatory to the Stephan Affidavit, failed to review the books and records maintained on behalf of RFC prior to executing the Stephan Affidavit. Claimant refers in general terms to "deposition testimony" in an unrelated matter and certain statements Mr. Stephan has allegedly made in connection therewith, but has failed to explain or even identify any testimony that is particular to Claimant's account.  Claimant has failed to meet his burden to show that the Stephan Affidavit was in any way fraudulent.  Claimant has not provided any evidence that Mr. Stephan failed to review Claimant's specific account history prior to executing the Stephan Affidavit, or even any evidence that the particular amount found by the State Court to be owed is incorrect.

48.    More important, however, is the fact that the Stephan Affidavit has been superseded by the Wilson Affidavit.  In November 2011, RFC submitted a revised affidavit executed by Mr. Wilson.  Claimant does not claim, nor can he, that Mr. Wilson failed to review RFC's records, that the amount stated therein is incorrect, or that he relied in any way on the

previous Stephan Affidavit.  Moreover, RFC has provided updated judgment figures and will make its witness available to the State Court at an upcoming hearing to verify these figures.  As a result, any alleged impropriety with the Stephan Affidavit will not have any impact on the Judgment of Strict Foreclosure entered by the State Court.  Accordingly, Claimant's allegations of fraud related to the Stephan Affidavit lack merit and do not support a claim against RFC.

### D.    The Proofs Of Claim Are Not Supported By Sufficient Documentation

49.    The Debtors have determined that each of the Proofs of Claim should be disallowed and expunged because it lacks sufficient documentation and is unsupported by the Debtors' books and records.  Although a properly filed proof of claim constitutes *prima facie* evidence of the validity of the claim, Fed. R. Bankr. P. 3001(f), failure to attach the documentation required by Bankruptcy Rule 3001 will result in the loss of the *prima facie* validity of the claim,  *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010), citing *In re Lundberg*, No. 02–34542 (LMW), 2008 WL 4829846, at *2 (Bankr. D. Conn. Oct. 27, 2008); *In re Hight*, 393 B.R. 484, 493 (Bankr.S.D.Tex.2008).  Failure to attach sufficient documentation to a proof of claim can result in disallowance of the claim under appropriate circumstances because absent adequate documentation, the proof of claim is not sufficient for the objector to concede the validity of the claim.  *Minbatiwalla*, 424 B.R. at 119, citing *In re Porter*, 374 B.R. 471, 480 (Bankr. D. Conn. 2007) ("under some circumstances lack of [documentation required by Rule 3001(c)] followed by a creditor's failure to appear or otherwise respond to an objection . . .  made on the grounds of insufficient annexed documentation may result in a disallowance of the claim on procedural (*i.e.*, default) grounds"); *see also In re DePugh*, 409 B.R. 125, 137-8 (Bankr. S.D. Tex. 2009) (holding that insufficient documentation is a valid basis for disallowing a claim as "unenforceable against the debtor under applicable law" under 11 U.S.C. § 502(b)(1) because of a lack of compliance with Bankruptcy Rule 3001).

-19-

50.     The Proofs of Claim here lack sufficient supporting documentation as to their validity and amount and have no basis in the Debtors' books and records.  Specifically, other than copies of his mortgage documents and pleadings filed in cases in which no judgment has been entered against a Debtor, the only documentation Claimant has provided in support of his claim that he is entitled to over $5 million from Homecomings or over $31 million from RFC is:  a single page "Itemized List" of damages attached to each Proof of Claim, a list of personal property that Claimant alleges has been stolen or damaged as a result of the Debtors' actions and to which Claimant has independently ascribed an undocumented aggregate value of approximately $320,000, and an affidavit in which he attests that he has suffered emotional distress as a result of two allegedly fraudulent foreclosures, only one of which was prosecuted by a Debtor.  The Debtors submit that, in light of the other objections to the Proofs of Claim raised above, the documentation purportedly provided by Claimant in support of the claim is insufficient evidence of any liability of the Debtors to Claimant, much less $36 million in claims. *In re Porter*, 374 B.R. at 482 ("[I]n many cases . . . an Insufficient Doc. Objection fairly can be read to object on the grounds that the proof of claim is insufficient (when taken together with the objector's then-existing knowledge base) for the objector to concede the validity of the claim asserted." (citations omitted)).

51.     Because Claimant has not provided adequate documentation supporting the validity or amount of his claims against the Debtors, the Debtors request that the Court disallow and expunge each the Proof of Claim in its entirety.

## VI.    NOTICE; NO PRIOR REQUEST

52.     The Debtors have provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

-20-

53.     No previous request for the relief sought in this Objection has been made

by the Debtors to this or any other court.


**WHEREFORE**, the Debtors respectfully request entry of an order, substantially

in the form of Exhibit 2 attached hereto, (i) disallowing and expunging the Proofs of Claim; and

(ii) granting such other and further relief as is just and proper.

Dated:  August 13, 2013
       New York, New York

/s/  Norman S. Rosenbaum
_____
Gary S. Lee
Norman S. Rosenbaum
Melissa A. Hager
Erica J. Richards
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and Debtors in
Possession*

-and-

PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, Massachusetts 02114
Telephone: 617-456-8000
Facsimile:  617-456-8100
Richard E. Briansky  *(pro hac vice admission pending)*

*Counsel to Residential Funding Company, LLC*