## Exhibit 1-C

**Proof of Claim No. 3860**

Claim #3860  Date Filed: 11/9/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>Residential Funding Company , LLC | Case Number:<br>12-12019 |
|---|---|

**RECEIVED**

**NOV 0 9 2012**

**KURTZMAN CARSON CONSULTANTS**
COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Thomas James La Cassse

Name and address where notices should be sent:

270 Park Drive
Longmeadow, MA 01106

Telephone number: (413) 272-3882    email:  Homezeller1@yahoo.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):



Telephone number:         email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**            $            5,289,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  __See attached, relating to fraudulent foreclosure.__
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>_____<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

**Value of Property: $**_____

**Annual Interest Rate**_____**%** ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**  $_____

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

1212019121109000000000007

B 10 (Official Form 10) (12/11)                                                                                                          2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**RECEIVED**

NOV 0 9 2012

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Laird J. Heal, Esq.
Title:  Attorney
Company:
Address and telephone number (if different from notice address above):  120 Chandler St.  #1R  Worcester, MA 01609

(Signature)  *Laird J. Heal*   Nov. 8, 2012   (Date)

Telephone number: 508-459-2676  email: laird.heal@lh-law-office.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the type and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

| | |
|---|---|
| *Laird J. Heal, Esq.* | *120 Chandler Street* |
| *Attorney at Law* | *Worcester, MA 01609* |
| *Admitted to practice in Massachusetts,* | *Telephone: (508) 450-5095* |
| *New Hampshire and Illinois* | *Telecopier: (508) 459-5320* |

November 8, 2012

Residential Capital Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, California 90425

Re: **In Re Residential Capital Corp, U.S.Bankruptcy Court (S.D.N.Y.) 12-12020**

<u>By Overnight Delivery</u>

Dear Sirs,

Please find Proofs of Claim for the following creditors in these consolidated cases:

Thomas J. La Casse, 270 Park Drive, Longmeadow, MA 01106 (3 claims)
Rhonda Gosselin 16 (or 25) Rolf Avenue, Chicopee, MA 01020
Robert R. De Simone, 11 Village Road, Acton, MA 01720
Matina De Simone, 11 Village Road, Acton, MA 01720

Sincerely yours,

Laird J. Heal, Esq.

1

# EXHIBIT A

Itemized List

| | | | |
|---|---|---|---|
| Direct Damages | $900,000.00 | (Nine Hundred Thousand Dollars) | value of property |
| Punitive Damages | $900,000.00 | (Nine Hundred Thousand Dollars | |
| Emotional Distress | $500,000.00 | (Five Hundred Thousand Dollars) | |
| Attorney Fees | $50,000.00 | (Fifty Thousand Dollars) | |
| Costs | $2,000.00 | (Estimated) | |
| Expert Witness Costs | | | |
| Costs for Legal Preparation | $6,000.00 | (Expert Witness Report Preparation) | |
| Liquidated Damages | $6,000.00 | (TILA violation, M.G. L. c. 93A claim) | |
| | $75,000.00 | Additional Down payment demanded after loan terms agreed | |
| Consequential Damages | $350,000.00 | (damage to property after taking possession without court authority) | |
| | $500,000.00 | (Lost revenue) | |
| Loss of Reputation | $2,000,000.00 | (Two Million Dollars) | |
| | $5,289,000.00 | (Five Million, Two Hundred Eighty-Nine Thousand) | |

# EXHIBIT B

| | | |
|---|---|---|
| **RETURN DATE: December 14, 2010** | : | **SUPERIOR COURT** |
| **THOMAS J. LACASSE** | : | **JUDICIAL DISTRICT OF STAMFORD / NORWALK** |
| **VS:** | | |
| | : | **AT STAMFORD** |
| **AURORA LOAN SERVICES LLC, ET AL** | : | **November 19, 2010** |

*Jury Trial Demanded*

## Complaint

The Plaintiff, Thomas J. LaCasse, complaining of the above-named Defendants, Aurora Loan Services, LLC and Mortgage Electronic Registration Systems, Inc. ("MERS"), alleges and charges upon information and belief, that:

### PARTIES

1. *Plaintiff* Thomas J. LaCasse is a resident of Connecticut, with his current principal place of residency in Weston, CT. Mr. LaCasse owns and lives in a single family home located at 153 Valley Forge Road, Weston, CT 06883.

2. *Defendant* Aurora Loan Services, LLC, originates residential mortgage loans and also operates as a residential loan servicer. Aurora maintains its principal place of business in the State of Colorado, headquarters located at 10350 Park Meadows Dr., Littleton, CO 80124.

3. *Defendant* Mortgage Electronic Registration Systems ("MERS"), is a privately held company that operates an electronic registry designed to track servicing rights and ownership of mortgage loans in the United States. "MERS" is headquartered at 1818 Library Street, Reston, Virginia 20190.

Note: Mortgage Electronic Registration Systems, Inc. may be referred to sometimes throughout this Complaint as "MERS". The subject property of this action is a residential home located at 270 Park Drive, Longmeadow, MA 01106.

(2)

## PRELIMINARY STATEMENT OF THE FACTS

1. On or about November 15, 2006, the Plaintiff, Thomas J. LaCasse, consummated a loan to purchase a residential home in Longmeadow, Massachusetts with Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc.

2. The Plaintiff obtained the subject residential loan from Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc., to buy a property located at 270 Park Drive, Longmeadow, MA 01106.

3. The "Borrower" (mortgagor) as stated in the Mortgage is Thomas J LaCasse [Exhibit A, page 1, Par (B)].

4. The "Lender" is offered to be Homecomings Financial, LLC (F/K/A Homecomings Financial Network, Inc.) [Exhibit A-2, page 2, Par (D)].

5. The "Mortgagee" as set forth in the subject alleged Mortgage is "MERS" {Mortgage Electronic Registration Systems, Inc.} [Exhibit A, page 1, Par (C)].

6. In said alleged Mortgage, MERS represents that it is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns [Exhibit A, page 1, Par (C)].

7. MERS at all times represents that it is acting solely as "nominee" for lender, however it further represents that it has power of sale.

8. MERS it is said to be understood in said alleged Mortgage holds only legal title to the interests of the "Borrower" Thomas J. LaCasse [Exhibit A-3].

9. MERS in said Mortgage is said to have right to comply with custom, the ability as nominee to exercise any or all of those interests of Lender, and/or Lender's successors and assigns, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, inclusive of releasing and cancelling the alleged Security Instrument [Exhibit A-3].

(3)

10. MERS who has represented to be at all times acting as a "nominee" for Lender, has no beneficial and substantive "real" interest and/or stake in the subject alleged note and property.

11. On or about July 31, 2009 Mortgage Electronic Registration Systems ("MERS") representing to be "Assignor" professes to have executed an *Assignment Of Mortgage* and sale of the alleged Mortgage and Note pertaining to the "LaCasse" property at 270 Park Drive, Longmeadow, MA 01106, to Aurora Loan Services LLC(Assignee)[Exhibit B].

## COUNT ONE:

### (Predatory Lending Practices)

1. On or about October 21, 2010, the Plaintiff, Thomas J. LaCasse, discovered that Defendant Aurora Loan Services LLC had apparently initiated a foreclosure action in Massachusetts, noticed the Land Court and set a sale date of November 22, 2010.

2. At all times, Plaintiff believed that Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc. was the alleged owner/holder of the subject alleged Mortgage and Note.

3. At no time, did either Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc. or Defendant Aurora Loan Services LLC ever disclose and provide "notice" to the Plaintiff that the alleged Note and Mortgage was being sold, Assigned, and/or otherwise transferred to Aurora Loan Services LLC.

4. The alleged new owner/holder of the subject alleged Note and Mortgage, Aurora Loan Services LLC failed to follow expected and required ethical fiduciary duties to act in "good faith" and contact the Plaintiff to explain, introduce, and or otherwise apprise Plaintiff of the fact such "assignment" and/or "sale" had taken place and that Aurora Loan Services, LLC would be handling the alleged loan claimed to have been granted to "MERS".

(4)

5. On or about July 31st, 2009, Defendant Mortgage Electronic Registration Systems ("MERS") alleges to have assigned and sold the alleged "LaCasse" Note and Mortgage to Aurora Loan Services LLC, acting in the legal capacity of a "Lender" and "Assignor". The stated intent to attempt to sell and assign the subject Note and Mortgage by "MERS" is reprehensible, deceptive, and an unfair and predatory lending practice [Exhibit B].

6. MERS at all times in said alleged Mortgage, and in other instances and depositions has represented to be solely a "nominee". By mere description a nominee is a person or organization who is named to act in a extremely limited capacity for another.

7. MERS readily admits they do not hold an interest in any mortgage. The attempted "assignment" by MERS in the instant LaCasse matter is in violation of a myriad of Federal, State, and local laws and constitutes conduct the nature which is deemed a "Predatory Lending Practice". In fact the intended act of transacting a sale and assignment is illegal, as MERS is not a "Lender", and holds no banking or mortgage license in the State Of Massachussetts, Connecticut, or any other state [Emphasis Added]. MERS is in fact unlawfully performing lending and banking acts without any license, state, or federal authority to do so.

8. MERS at no time ever bought, acquired, and or shared an interest in the underlying subject LaCasse Note and Mortgage, and simply has no legal authority to sell something that it does not own.

9. The Defendant, Aurora Loan Services LLC, unlawfully and reprehensibly has knowingly conspired with MERS to injure the Plaintiff, and ensuingly illegally foreclose on his property. The illegal and predatory acts and practices of MERS and Aurora Loan Services LLC in transacting and concluding an assignment from a fictitious Assignor who "owns nothing" is demeritorious.

(5)

10. Defendant, Aurora Loan Services LLC has engaged in Predatory Lending Practices and has irreversibly injured the Plaintiff Thomas J. LaCasse. The stated Defendant has persisted in seizing the Plaintiff's property by foreclosure, based on its claim of ownership drawn from a fraudulent and legally "void" Assignment Of Mortgage.

11. Aurora Loan Services LLC is not the "Real Party In Interest" and has no authority to foreclose on an assignment from a seller (MERS) who legally could not sell the LaCasse Note or Mortgage as it was never the "Beneficial Owner".

12. Numerous Judges and Courts across America have very recently began Dismissing With Prejudice such foreclosure lawsuits which are in reliance upon legally invalid MERS Assignments.

13. On March 19, 2009, the **Supreme Court Of Arkansas** issued an opinion an upheld a circuit court ruling, blasting MERS alleged interest in property. In the Appeal from the Benton County Circuit Court (Case No. CIV07-223-2), _Mortgage Electronic Registration System, Inc. vs. Southwest Homes Of Arkansas_, Chief Justice Jim Hannah stated, "MERS holds no authority to act as an agent and holds no property interest in the mortgage land. It is not a necessary party...MERS has no interest to protect. It simply was not a necessary party."

14. On August 29, 2009, in the matter of _Landmark National Bank v. Kesler_, the Supreme Court Of Kansas Blasted MERS' alleged right to Assign Mortgages and Notes. MERS and Sovereign Bank sought to overturn a lower court ruling that a non-lender is not a "contingency necessary party" in a foreclosure action. The Kansas Supreme Court held that MERS had no such authority or right to intervene and be made a party to the foreclosure action, and ultimately found that MERS had no authority to assign mortgages and notes. The Kansas Court held that because MERS was not the original holder of the

(6)

promissory note and because the record contained no evidence that the original holder of the note authorized MERS to transfer the note (as MERS' authority, as set forth in the mortgage document itself, was "solely as nominee"), the language of the assignment proclaiming to transfer the promissory note was ineffective.  The Court found that there was no evidence that established that MERS either held the note or was given authority to assign the note, resulting in the assignment being ineffective.

## COUNT TWO:

### (Breach Of Contract)

1. The acts and practices as described in COUNT ONE are incorporated herein COUNT TWO and constitute conduct which is a breach of the alleged Mortgage Contract.

2. The Plaintiff, Thomas J. LaCasse dispels the notion that there exists a valid Mortgage Agreement.  MERS unlawfully was co-joined to the alleged agreement by the original alleged "Lender", improperly giving MERS a self-appointed authority to later assign mortgages and notes stemming from this alleged agreement.

3. If it could ever be proven that there did exist any agreement made between the parties Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc. and Plaintiff Thomas J. LaCasse, the wrongful, deceptive and predatory acts committed by MERS who was never a legal and "necessary party" to the alleged contract, have become a Breach Of Contract under the Governing Law of said contract and higher authority and laws of the United States.

4. The attempts at wrongful foreclosure by Defendant Aurora Loan Services LLC stemming from reliance upon authority given by a legally void MERS assignment, associated with the alleged mortgage, is in itself a breach of the same original contract being relied upon.

(7)

## COUNT THREE:

### (Fraud)

1. The wrongful acts and practices as stated in COUNTS ONE and TWO are incorporated and constitute conduct the nature which is deemed fraudulent and have caused injury upon the Plaintiff and his family.

**Fraud In The Inducement**

2. MERS deceptively worked its way into the alleged mortgage contact, and underhandedly conspired with the original alleged "Lender", to attempt to make itself a "necessary party", unlawfully self-appointing itself authority to have equal rights as a true Beneficial Party In Interest, so that it could later have the same improper authority to assign and sell the alleged note and mortgage to Defendant Aurora Loan Services LLC.

3. The Plaintiff, Thomas J. LaCasse was Induced to enter into the alleged original mortgage contract by MERS who claimed to be solely acting as a "nominee" for the alleged "Lender" Homecomings Financial, LLC F/K/A Homecomings Financial Network, Inc. If Plaintiff had known that MERS would at a later point perpetrate fraud and crimes by selling a professed loan and note it was not a party to, and performing mortgage lending acts without a license, Plaintiff would never have entertained such a mortgage.

4. MERS in furthering its fraud, induced co-defendant Aurora Loan Servicing LLC to allegedly purchase the alleged subject LaCasse Note and Loan, by representing either directly or indirectly that it had some sort of beneficial and substantive interest, allowing itself to transact such an Assignment Of Mortgage. If MERS had fully and truthfully disclosed that it *owned nothing* and could *sell nothing* to "Aurora", there would be no sale, and thus no subsequent foreclosure.

(8)

**Mail Fraud**

5. Defendant Aurora Loan Services LLC violated the United States Mail Fraud Statute, 18 USC § 1341. *Frauds and swindles* in its attempts to bring unlawful foreclosure upon the Plaintiff.

6. The Defendant Aurora Loan Services, by and through its counsel Harmon Law Offices, violated Connecticut Laws by mailing to Plaintiff, Thomas J. LaCasse, a Connecticut Resident, fallacious and fraudulent legal papers. Aurora claims to have sent default notices, notices of foreclosure sale and a foreclosure complaint to Plaintiff's Connecticut Address in Weston Connecticut, all of which that were never received by Plaintiff at his residence in Connecticut. Aurora Loan Services, in its undated complaint, shows a completely false and incorrect home address for then Defendant Thomas J. LaCasse. *The Complaint To Foreclose Mortgage* filed in a Massachusetts Land Court represented that then Defendant LaCasse resided in Springfield, Massachusetts, although Mr. LaCasse hasn't lived in Springfield for over 30 years, and at no time owned any real property in Springfield [Exhibit C].

7. *Violations Of Mail Fraud Statute Denied Then Defendant Thomas LaCasse Due Process:* Defendant Aurora Loan Services LLC's unlawful activities and improper service, false allegations of service of legal papers in Connecticut, caused Plaintiff's right to *Due Process* to be denied. The Plaintiff Thomas LaCasse was never served with a Complaint in the Massachusetts foreclosure matter and was not legally apprised of the allegations in its Complaint. The alleged Massachusetts Complaint served by Aurora Loan Services LLC, never reached the intended Connecticut Resident Thomas LaCasse, but instead was fraudulently and defectively steered to Springfield Massachusetts, according to Aurora's Complaint [Exhibit C].

(9)

**Concealment**

8.  MERS failed to disclose that it could not legally act on it's own and Assign an Interest in a mortgage and note it never itself owned.  The silence and concealment of crucial material facts, allowed the MERS assignment to be fully executed, and paved the way for Aurora Loan Services LLC to later offer said legally void assignment to a Massachusetts Land Court to bring an unlawful foreclosure [Exhibit B].

9.  MERS mislead the State Of Massachusetts, and through such deception caused injury to the Plaintiff Thomas LaCasse in Connecticut.

## <u>COUNT FOUR:</u>

**(Unconscionability)**

1.  The acts and practices of the Defendants as described above and in COUNTs ONE through FOUR constitute conduct the nature which is Unconscionable.

2.  The intentional and deceptive act to craftily make itself an apparent "necessary party" to the alleged original mortgage contract by MERS is unconscionable.

3.  The intentional, fraudulent, and or grossly irresponsible misrepresentations of authority and purpose by MERS is unconscionable and has caused irreparable harm on Plaintiff Thomas J. LaCasse.  MERS knew that it had no interest or standing, and rightfully and legally had no authoritativeness to claim in the original alleged mortgage that it had authority to foreclose and/or sell the property [Exhibit A-3].

4.  It is unconscionable that MERS and the first stated "Lender" alleged in the original professed mortgage that if it were necessary to comply with law that MERS would exercise its believed right to bring foreclosure or assign mortgages.  Contrarily, the wrongful acts stated herein are antagonistic of well established laws of the United States [Exhibit A-3].

(10)

## COUNT FIVE:

**(Violations Of The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1601 et seq)**

1. The acts and practices of the Defendant's as outlined above in COUNTs ONE through FOUR are incorporated herein this COUNT FIVE and represent conduct the nature which is a violation of multiple sections of the FDCPA.

2. The above cited misrepresentations of MERS and their lack of authority and real interest is a violation of 15 USC §1692e – 807 *False Or Misleading Representations*.

3. The above cited unconscionable acts and practices of the Defendants, MERS and Aurora Loan Services LLC are a violation of 15 USC §1692f – 808 *Unfair Practices*.

4. The unlicensed MERS lending and banking activity; particularly selling mortgages and instituting, and/or bringing foreclosures is a violation of 15 USC §1692f – 808 *Unfair Practices*.

5. Aurora Loan Services LLC committed fraud and operated in an unfair manner with respect to the alleged mortgage, by furthering a working fraud and conspiracy of MERS to Assign and Sell Mortgages and Notes it was not a party to. Aurora knew, and/or should have known that the subject "LaCasse" MERS Assignment was invalid and caused a fatal and irreparable rupture in the alleged *"Chain Of Title"*. Aurora Loan Services is furthering a mortgage Ponzi Scheme attempting to sell the LaCasse property and ruptured void ownership title to the next unsuspecting buyer.

## COUNT SIX:

**(Breach Of The Implied Covenant Of Good Faith And Fair Dealing)**

1. The acts and practices of the Defendants above-mentiones and outlined herein this complaint are incorporated and constitute conduct that is a Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

(11)

WHEREFORE, the Plaintiff, Thomas J. LaCasse, based on the foregoing reasons brings this

action for just recovery and  seeks any and all damages and relief allowed by law.

The Plaintiff seeks:

1. Money Damages
2. The Value of the Plaintiff's MA home = $900,000 (Real Damages)
3. Interest
4. The removal, retraction and cancellation of any claim of title, ownership and or possession of the subject property
5. Punitive Damages
6. Emotional Damages
7. Attorney Fees
8. Costs
9. Costs for legal preparation
10. Expert Witness Costs
11. Liquidated Damages
12. Consequential Damages
13. Unjust Enrichment
14. Actual and Future Loss of Revenue From the obliterated Mortgage and Real Estate Business.
15. Future damages and loss of future revenue
16. Treble Damages
17. Any and all relieve and damages allowed by Federal and State law

**The Plaintiff**
*Respectfully Submitted,*


By: _____
Paul S. Nakian, Plaintiff's Attorney

90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
      203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191


***Jury Trial Demanded***

(12)

| | | |
|---|---|---|
| RETURN DATE: December 14, 2010 | : | SUPERIOR COURT |
| THOMAS J. LACASSE | : | JUDICIAL DISTRICT OF |
| VS: | | STAMFORD / NORWALK |
| | : | AT STAMFORD |
| AURORA LOAN SERVICES LLC, ET AL | : | November 19, 2010 |

# STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest, or property in demand is Fifteen Thousand Dollars (15,000.00) or more, exclusive of interest and costs.

The Plaintiff
*Respectfully Submitted,*

By: _____

Paul S. Nakian, Plaintiff's Attorney

90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
       203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191

Return To:
Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 047-166317-9

Prepared By:
Homecomings Financial
800 Corporate Drive, Suite 424
Fort Lauderdale, FL 33334

# EXHIBIT A

---[Space Above This Line For Recording Data]---

## MORTGAGE

MIN ███████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   NOVEMBER 15TH, 2006
together with all Riders to this document.
(B) "Borrower" is
THOMAS J LACASSE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3022  1/01

███████████
Page 1 of 16              Initials:
VMP Mortgage Solutions, Inc.

Fax Server          11/18/2010 1:36:43 PM  PAGE    3/003

# EXHIBIT C

2. No defendant is in the military service within the meaning of the Servicemembers Civil Relief Act.

3. The plaintiff alleges on information and belief that the defendant is the only person interested in the equity of redemption of the property covered by the mortgage described in paragraph 1 of this petition so far as appeared of record in the said Registry of Deeds or as known to your plaintiff.

4. The plaintiff seeks to foreclose said mortgage described in said paragraph 1 to protect its interest as secured thereby for breach of the conditions thereof and desires to comply with the provisions of the Servicemembers Civil Relief Act.

Wherefore your plaintiff prays:

1. For an order of notice ordering the defendants to appear and answer to this complaint.

2. For a Judgment authorizing the plaintiff to make entry for the purpose of foreclosing and an order authorizing the plaintiff to foreclose the mortgage described in paragraph 1 of this complaint by a sale under the power of sale therein contained.

3. For such further relief as to the Court may deem meet and equitable.

_____
ATTORNEY FOR PLAINTIFF
Patrick R. Gamelin, Esquire
BBO# 663855

From the office of:

HARMON LAW OFFICES, P.C.
150 California Street
Newton, MA 02458

Telephone No. 617-558-0500

| Office | File | No. | (If | Available) | 200908-0281/FCL/ORE |

# EXHIBIT A-2

(D) "Lender" is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a LIMITED LIABILITY COMPANY
organized and existing under the laws of DELAWARE
Lender's address is 800 CORPORATE DRIVE, SUITE 424
FT. LAUDERDALE, FL 33334
(E) "Note" means the promissory note signed by Borrower and dated NOVEMBER 15TH, 2006
The Note states that Borrower owes Lender SIX HUNDRED THOUSAND AND NO/100

Dollars
(U.S. $ 600,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 1ST, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____

DA(MA) (0401).01    Page 2 of 15    Form 3022  1/01

# EXHIBIT A-3

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the REGISTRY OF DEEDS                              of   HAMPDEN COUNTY                              :
         [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]:
Legal description attached hereto and made a part hereof

Parcel ID Number:  561LOT6/2
270 PARK DRIVE                                                    which currently has the address of
LONGMEADOW                                                                                      [Street]
("Property Address"):                              [City] , Massachusetts     01106   [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

OMG -6A(MA) (0401).01                         Page 3 of 16          Initials:                    Form 3022   1/01

Total Pages:   2

# EXHIBIT B

HARMON LAW OFFICES, P.C.
P.O. BOX 610389
NEWTON HIGHLANDS, MA 02461-0389

Bk: 17990 Pg:528   $62473
09-18-2009 @ 01:30p

## CORPORATE ASSIGNMENT OF MORTGAGE

Hampden, Massachusetts
SELLER'S SERVICING #:0123236879 "LACASSE"

Date of Assignment: July 31st, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. at 3300 S.W. 34TH
AVENUE, SUITE 101, OCALA, FL 34474
Assignee: AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361

Executed By: THOMAS J LACASSE To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC AS NOMINEE FOR HOMECOMINGS FINANCIAL, LLC F/K/A HOMECOMINGS FINANCIAL
NETWORK, INC.
Date of Mortgage: 11/15/2006 Recorded: 11/17/2006 in Book/Reel/Liber: 16332 Page/Folio: 249 as
Instrument No.: 102490 In Hampden, Massachusetts

Property Address: 270 PARK DRIVE, LONGMEADOW, MA 01106

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage together with the Note or other evidence of indebtedness (the "Note"), said
Note having an original principal sum of $600,000.00 with interest, secured thereby, together with all
moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants
and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said
Assignee forever, subject to the terms contained in said Mortgage and Note.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
On July 31st, 2009

By: _____
THEODORE SCHULTZ, Vice-President

Recording Requested By:
AURORA LOAN SERVICES
When Recorded Return To:
ASSIGNMENT PREP
AURORA LOAN SERVICES
P.O. Box 1706
Scottsbluff, NE 69363-1706

Bk 17990 Pg529 #62473

**EXHIBIT B**

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON July 31st, 2009, before me, JOANN REIN, a Notary Public in and for the County of Scotts Bluff County, State of Nebraska, personally appeared THEODORE SCHULTZ, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

JOANN REIN
Notary Expires: 12/27/2012

GENERAL NOTARY - State of Nebraska
JOANN REIN
My Comm. Exp. Dec. 22, 2012

(This area for notarial seal)

*SFL*SFL4LS*03/01/6889 11.27.23 AM* ALSOTALBA00060000X00X00X00560280* MANANMFO* 91392369FN MASTATE_MORT_ASSIGN_ASSN **SFL4LSI*

DONALD E. ASHE, REGISTER
HAMPDEN COUNTY REGISTRY OF DEEDS

Fax Server          11/18/2010 1:36:43 PM   PAGE   2/00

# EXHIBIT C

**COMMONWEALTH OF MASSACHUSETTS**
**LAND COURT**
**DEPARTMENT OF THE TRIAL COURT**

LET JUDGMENT ISSUE:

Land Court Use Only

Suffolk                                            ss.

Chief Justice

Case No.

## COMPLAINT TO FORECLOSE MORTGAGE

**PLAINTIFF:**
Name

Aurora Loan Services, LLC

City or Town
of Residence
Littleton, CO

**DEFENDANT:**
Name

Thomas J. Lacasse

City or Town
of Residence
Springfield, MA

Interest

Owner

1.   Your Plaintiff is the assignee and holder of a mortgage with the statutory power of sale given by
Thomas J. Lacasse

to Mortgage Electronic Registration Systems, Inc.
recorded at the   Hampden County Registry of Deeds at Book 16332, Page 249                dated  November 15, 2006

covering*  270 Park Drive, Longmeadow,

(street and number)
(and city and town)
(Unit No. and Condo.
Name if a Condominium)

and more particularly described in said mortgage.

**LAND COURT USE ONLY**

### JUDGMENT

Under the provisions of the Servicemembers Civil Relief Act, as amended, this cause came on to be heard and
thereupon, upon consideration thereof, it appearing to the court that the record owner is not entitled to the benefits of said
Act, it is

ORDERED and ADJUDGED that the plaintiff be authorized and empowered to make an entry and to sell the property
covered by the mortgage as set forth in this complaint in accordance with the powers contained in said mortgage.
**By the Court.**
Attest:

(SEAL)

DEBORAH J. PATTERSON
RECORDER

NOTE:   Wherever the singular is used herein, it shall be deemed to mean and include the plural where applicable.
* A metes and bounds description of the property is not necessary.

200906-0281/FCL/ORE

# EXHIBIT C

12-12020-mg   Doc 4635-3   Filed 08/13/13   Entered 08/13/13 18:02:42   Exhibit 1-C
- Second RFC Proof of Claim   Pg 28 of 33
Case 10-30088   Doc 88-1   Filed 07/08/10   Entered 07/08/10 16:27:32   Desc Exhibit
A- Mortgage   Note and Assignment   Page 26 of 33

# ADJUSTABLE RATE NOTE

### *Payment Option*

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

NOVEMBER 15TH, 2006                    SPRINGFIELD                    MASSACHUSETTS
    [Date]                                    [City]                              [State]

270 PARK DRIVE, LONGMEADOW, MA 01106
                           [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 600,000.00 (this is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided in this Note. Lender is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 2.0000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2007 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

### (C) Interest Rate Limit

My interest rate will never be greater than 9.9500 %.

### (D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

12-12020-mg    Doc 4635-3    Filed 08/13/13    Entered 08/13/13 18:02:42    Exhibit 1-C
- Second RFC Proof of Claim    Pg 29 of 33

Case 10-30088    Doc 88-1    Filed 07/08/10    Entered 07/08/10 16:27:32    Desc Exhibit
A- Mortgage    Note and Assignment    Page 27 of 33

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND FORTY FIVE HUNDREDTHS                                          percentage point(s) (  3.4500        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on    JANUARY 1ST, 2007                    . I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1ST, 2036                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    800 CORPORATE DRIVE, SUITE 424, FT. LAUDERDALE, FL 33334                                                                                      or at a different place if required by the Note Holder.

### (B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $   2,217.72                           . until a new Minimum Payment is required as provided below.

### (C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of JANUARY, 2008            , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

### (D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment that will be effective on a Payment Change Date will be in the amount of the Full Payment, except that my new Minimum Payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last Minimum Payment due before the Payment Change Date (this limitation is called the "Payment Change Cap"). The Payment Change Cap applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument (as defined in Section 11 of this Note, below).



Page 2 of 6                                                                    Initials: _TL_

12-12020-mg    Doc 4635-3    Filed 08/13/13    Entered 08/13/13 18:02:42    Exhibit 1-C
- Second RFC Proof of Claim    Pg 30 of 33
Case 10-30088    Doc 88-1    Filed 07/08/10    Entered 07/08/10 16:27:32    Desc Exhibit
A- Mortgage    Note and Assignment    Page 28 of 33

**(E) Additions to My Unpaid Principal**

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month, regardless of the Payment Change Cap. This amount will be my new Minimum Payment. This means that my Minimum Payment may change more frequently than annually. This new Minimum Payment amount will remain in effect until at least the next regular Payment Change Date, unless another recalculation of my Minimum Payment is required by this Section prior to such Payment Change Date.

**(G) Required Full Payment**

Regardless of the Payment Change Cap, on the  FIFTH    Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying at least the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)     **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(ii)    **Fully Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) at the Maturity Date in substantially equal installments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

(iii)   **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

Payment Options will only be available if they are greater than the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

## 4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



Initials: _TL_

12-12020-mg    Doc 4635-3    Filed 08/13/13    Entered 08/13/13 18:02:42    Exhibit 1-C
- Second RFC Proof of Claim    Pg 31 of 33
Case 10-30088    Doc 88-1    Filed 07/08/10    Entered 07/08/10 16:27:32    Desc Exhibit
A- Mortgage    Note and Assignment    Page 29 of 33

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received at least the full amount of any Minimum Payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.0000       % of my overdue Minimum Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay at least the full amount of each Minimum Payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Initials: 

12-12020-mg    Doc 4635-3    Filed 08/13/13    Entered 08/13/13 18:02:42    Exhibit 1-C
- Second RFC Proof of Claim    Pg 32 of 33

Case 10-30088    Doc 88-1    Filed 07/08/10    Entered 07/08/10 16:27:32    Desc Exhibit
A- Mortgage    Note and Assignment    Page 30 of 33

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: 

12-12020-mg    Doc 4635-3    Filed 08/13/13    Entered 08/13/13 18:02:42    Exhibit 1-C
- Second RFC Proof of Claim    Pg 33 of 33
Case 10-30088    Doc 88-1    Filed 07/08/10    Entered 07/08/10 16:27:32    Desc Exhibit
A- Mortgage    Note and Assignment    Page 31 of 33

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
THOMAS J LACASSE                      -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*[Sign Original Only]*

Without Recourse
Pay to the Order of
RESIDENTIAL FUNDING COMPANY, LLC

Matilda Okai-Johnson
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation