## **Exhibit H**

**Objection to Motion to Vacate**

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · (860) 347-3597 · FAX (860) 347-3597 · JURIS NO. 103023

DOCKET NO. CV-09-5011591-S            :        SUPERIOR COURT

RESIDENTIAL FUNDING COMPANY, LLC      :        JUDICIAL DISTRICT OF
                                               STAMFORD/NORWALK

v.                                    :        AT STAMFORD

THOMAS J. LA CASSE                    :        JANUARY 23, 2012

### RESIDENTIAL FUNDING COMPANY, LLC'S OBJECTION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND DISMISS WITH PREJUDICE

The plaintiff, Residential Funding Company, LLC ("RFC"), objects to the Motion to Vacate Judgment and Dismiss with Prejudice (the "Motion") filed by the defendant, Thomas J. La Casse ("La Casse").

### INTRODUCTION

By this Motion, La Casse seeks to vacate a judgment of strict foreclosure entered against him nearly two and a half years ago after he failed to plead or otherwise defend RFC's attempt to foreclose on property located at 153 Valley Forge Road, Weston, Connecticut (the "Property"). La Casse claims that RFC committed "fraud" on this Court when it alleged in its Complaint that it was the current holder of La Casse's promissory note, that it would be assigned the mortgage securing the Property, and when it received an assignment of mortgage from the then-current mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"). Specifically, La Casse claims, without any evidentiary foundation, that RFC did not hold the note, that MERS did not have the authority to assign the mortgage, and that even if it did, the individual who executed the assignment did so without first reviewing its terms. Even if La Casse had asserted these claims diligently, which he did not, the Connecticut Supreme Court has already rejected La Casse's claims regarding MERS' ability to hold and assign mortgages. Moreover, since the evidence undisputably establishes that RFC was the holder of La Casse's note before it commenced

1

foreclosure proceedings and remains so to this day, RFC was entitled to foreclose regardless of any alleged impropriety with the mortgage assignment. Since La Casse's Motion is not based on facts but is rather put forth to obtain a further delay of this foreclosure, his Motion should be denied.

## FACTUAL BACKGROUND

On January 30, 2006, La Casse obtained a loan in the principal amount of $650,000 from Homecomings Financial Network, Inc. ("Homecomings") to assist him in the purchase of the $1.2 million Property. In connection with the loan, La Casse executed an InterestFirst Adjustable Rate Note (the "Note") by which he agreed to make certain monthly payments to repay the principal balance with interest over a period of thirty years. *Note*, a true and accurate copy of which is attached as **Exhibit A**. The Note was secured by an Open-End Mortgage Deed (the "Mortgage") naming MERS as the mortgagee, in its capacity as nominee for Homecomings and Homecomings' successors and assigns. *Mortgage*, a true and accurate copy of which is attached as **Exhibit B**. By executing the Mortgage, La Casse specifically agreed to "grant and convey to MERS (solely as nominee for [Homecomings] and [Homecomings'] successors and assigns) and to the successors and *assigns* of MERS" the Property. *Mortgage*, 3 (emphasis supplied). The Mortgage was recorded in Volume 432, Page 496 of the Weston Land Records on February 8, 2006. *Id.*

In 2006, Homecomings sold the Note and specifically indorsed it to Residential Funding Corporation, which later changed its name to Residential Funding Company, LLC. *Note*. The Note was indorsed in blank and held by Wells Fargo on behalf of RFC under a custodial agreement. On April 26, 2009, RFC acquired possession of the original note and transferred it

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

to its counsel to conduct the foreclosure. RFC retains physical possession of the Note indorsed in blank to this day.

By 2009, La Casse had defaulted under the terms of the Note. As a result, on May 18, 2009, RFC filed the Complaint in this Court alleging that it was the holder of the Note, that La Casse had defaulted under the Note, and that RFC had elected to accelerate the balance due on the Note and foreclose the Mortgage. *Complaint*, ¶¶ 4 and 5. RFC specifically identified that an Assignment of Mortgage reflecting that Mortgage had been assigned to RFC "will be" recorded in the Weston Land Records. *Id.*, ¶ 4.

In fact, on August 13, 2009, an Assignment of Mortgage was recorded in Volume 489, Page 786 of the Weston Land Records, evidencing that the Mortgage had been assigned from MERS to RFC. *Assignment of Mortgage*, a true and accurate copy of which is attached as **Exhibit C**. The Assignment of Mortgage was executed before a notary public by Jeffrey Stephan, a Vice President of MERS, who had the requisite authority to execute documents on behalf of RFC. *Assignment of Mortgage; Secretary's Certificate*, a true and accurate copy of which is attached as **Exhibit D**.

On August 18, 2009, having received no response to the Complaint, RFC filed a motion for default and a motion for judgment of strict foreclosure. (Doc. 105.00 and 106.00). In connection with these motions, RFC submitted an Affidavit of Debt signed by Jeffrey Stephan (the "Affidavit"). Mr. Stephan stated that he had reviewed the books and records maintained on behalf of RFC and that La Casse owed a total amount of $696,503.31. A true and accurate copy of the Affidavit is attached hereto as **Exhibit E**.

La Casse did not oppose the motion to default, the motion for judgment of strict foreclosure, or file an Answer to the Complaint. As a result, on September 2, 2009, the Court

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

(Mintz, J.) entered a Judgment of Strict Foreclosure against La Casse, finding that the debt, after attorneys' fees, amounted to $697,997.60. *Judgment*, a true and accurate copy of which is attached hereto as **Exhibit F**. The Court set the law day for redemption for October 20, 2009. *Id.*

Rather than redeem the Property or move to vacate the judgment, at approximately 3:10 p.m. on the afternoon of October 29, 2009 – approximately two hours before title vested in RFC – La Casse filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code. A true and accurate copy of La Casse's October 22, 2009 "Motion" notifying the Court of this filing is attached as **Exhibit G**; *First Bankruptcy Docket*, a true and accurate copy of which is attached hereto as **Exhibit H**. However, on December 8, 2009, La Casse's bankruptcy petition was dismissed as a result of his failure to file the appropriate documentation. *First Bankruptcy Docket*.

On December 28, 2009, RFC filed a Motion to Reset Law Days and Reenter Judgment. (Doc. 119.00). Before judgment could enter, however, La Casse once again filed for bankruptcy, this time under Chapter 11 of the United States Bankruptcy Code. *Second Bankruptcy Docket*, a true and accurate copy of which is attached hereto as **Exhibit I**. After the bankruptcy was converted to a Chapter 7, RFC moved for and obtained relief from the automatic stay permitting it to proceed with this action. *Id.*; *November 4, 2010 Order*, a true and accurate copy of which is attached hereto as **Exhibit J**.

On November 30, 2010, RFC once again filed a Motion to Reset Law Days And Reenter Judgment. In connection with this motion, RFC submitted a revised Affidavit of Debt signed by Douglass Wilson (the "Revised Affidavit"). (Doc. 130.00); *Revised Affidavit*, attached hereto as **Exhibit K**. In the Revised Affidavit, Mr. Wilson stated that he had reviewed the records

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

maintained on behalf of RFC and that the total amount La Casse owed under the Note as of

September 27, 2011 was $786,622.14. *Id.*

On November 14, 2011, over two years after the Assignment of Mortgage was recorded

and judgment first entered, La Casse filed his Motion. In his Motion, La Casse does not dispute

that he is in default or the particular amount due under the Note. Rather, La Casse alleges that

the judgment should be vacated and the Complaint dismissed as a result of "fraud" allegedly

perpetrated on the Court by RFC. Specifically, La Casse alleges that the judgment is invalid

because: (a) RFC lacked standing to commence this action because it did not have an

Assignment of Mortgage at that time of filing; (b) MERS could not validly assign the Mortgage

to RFC; (c) RFC failed to prove that it was the holder of the Note; and (d) any instrument signed

by Mr. Stephan, including the Assignment of Mortgage and the Affidavit, were void as a result

of La Casse's conclusory allegation that Mr. Stephan had not personally reviewed the documents

prior to their execution.

Meanwhile, the debt owed by Mr. La Casse continues to grow. As of January 20, 2012,

La Casse owes a total of $805,140.53. This figure consists of $649,974.31 in principal,

$76,303.75 in accrued interest, $68,139.10 in escrow payments, and other fees and expenses.

*Fair Debt Figures*, a true and accurate copy of which is attached as **Exhibit L**.

## ARGUMENT

**A.    La Casse Failed to Diligently Seek Relief From This Court.**

RFC acknowledges that La Casse's eleventh-hour bankruptcy filing on the afternoon of

October 20, 2009 automatically re-set the passage of the law days and entitles him, as a technical

matter, to continue to seek relief from that judgment. See C.G.S. § 49-15(b). The Court,

however, still has discretion over whether to actually grant this relief. See C.G.S. § 49-15(a)(1).

MICHAEL F. DOWLEY, ATTORNEY AT LAW    ·    JURIS NO. 103023
116 WASHINGTON STREET    ·    P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457    ·    (860) 347-9987    ·    FAX (860) 347-3597

In making this determination, the Court should consider whether the moving party has acted promptly and diligently in presenting the alleged fraud, and whether he has demonstrated a compelling reason to open the judgment. Chapman Lumber, Inc. v. Tager, 288 Conn. 69, 107 (2008) ("When a party seeks to open and vacate a judgment based on new evidence allegedly showing that the judgment is tainted by fraud, he must show, inter alia, that he was diligent during trial in trying to discover and expose the fraud, and that there is clear proof of that fraud"); Eastern Elevator Co., Inc. v. Scalzi, 193 Conn. 128, 131 (1984) (holding that a defaulted party seeking relief from judgment must show that he was prevented from making that defense because of mistake, accident or other reasonable cause).

Rather than acting promptly to seek relief from this Court, La Casse has employed a scheme designed to delay this matter as long as possible. La Casse had notice of the Complaint and RFC's sought-after judgment. He permitted judgment to enter without opposition, and waited until the last possible minute to file his first bankruptcy petition. He chose not to pursue that bankruptcy and instead filed a second time once RFC re-commenced this action. Now that RFC moved for and obtained relief from the automatic stay, La Casse had no further delay option other than to file his Motion claiming *for the first time in over two years* that RFC's judgment was invalid. La Casse's strategy for delaying this matter contradicts Connecticut's recognized policy of fostering efficient and judicious foreclosures, and should not be tolerated. See First Nat. Bank of Chicago v. Luecken, 66 Conn. App. 606, 610 (Conn. App. 2001) (recognizing that Connecticut has a "policy of expediting foreclosure cases whenever possible"); Ertel v. Rocque, 2009 WL 5305978, *4 (Conn. Super. Dec. 4, 2009) ("Among the limitations on a court's ability to grant relief from a judgment secured by fraud is that 'there must have been no laches or unreasonable delay by the injured party after the fraud was discovered"). This is

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

particularly true where La Casse has not even attempted to explain why he could not have raised these alleged "defenses" at the time RFC first sought judgment against him. Eastern Elevator, 193 Conn. at 134 (denying motion to vacate default judgment where defendant did not sustain burden of showing that he was prevented from asserting defense in opposition to default motion); Society for Sav. v. Stramaglia, 225 Conn. 105, 111 (1993) ("We have similarly found no abuse of discretion when the defendant sought to raise a defense that, but for his own negligence, he could have discovered and presented at the time of the rendition of the foreclosure judgment")

**B.     Any Alleged Deficiency With the Mortgage Or Its Subsequent Assignment Is Irrelevant Because A Note Holder Need Not Hold The Mortgage To Foreclose Under C.G.S. § 49-17.**

La Casse's claim that the judgment is void is based primarily on his allegation that there were several deficiencies with the Mortgage and its subsequent Assignment, including his allegation that MERS lacked authority to hold and assign the Mortgage, that RFC did not actually hold the Mortgage at the time it commenced this action, and that the subsequent Assignment from MERS was unlawfully "robo-signed" by Mr. Stephan. None of these allegations, even if they were true, have any impact on RFC's right to foreclose.[1]

Unlike other states (most notably, Massachusetts), Connecticut has specifically granted the right to foreclose to the owner of the note, even if that entity does not hold the mortgage. Connecticut General Statutes § 49-7 provides:

> When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such

---

[1] On December 13, 2011, the Supreme Court of Connecticut issued its decision in RMS Residential Properties, LLC v. Miller, 2011 WL 6033011, -- A.3d – (2011), in which it specifically upheld MERS' ability to serve as a mortgagee and assign such mortgages in its capacity as nominee for the original lender and the lender's successors and assigns. As reasoned by the Court, since both the mortgagor and mortgagee consented to this transaction by signing the Mortgage, voiding such a transaction would frustrate the intentions of both parties. Id., at *6. While this decision invalidates La Casse's primary allegation that MERS lacked the authority to hold or assign the Mortgage, the allegation is irrelevant because it does not impact RFC's ability to foreclose under C.G.S. § 49-17. RFC never alleged that MERS ever had an ownership interest in the Note or otherwise assigned any interest in it.

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

MICHAEL F. DOWLEY, ATTORNEY AT LAW
116 WASHINGTON STREET · P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

> premises shall, upon the expiration of the time limited for
> redemption and on failure of redemption, vest in him in the same
> manner and to the same extent as such title would have vested in
> the mortgagee if he had foreclosed, provided the person so
> foreclosing shall forthwith cause the decree of foreclosure to be
> recorded in the land records in the town in which the land lies.

C.G.S. § 49-17. This codifies the long-standing common law in Connecticut that "the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage." RMS Residential Properties, LLC v. Miller, 2011 WL 6033011, *3 (Conn. Dec. 13, 2011); Chase Home Finance, LLC v. Fequiere, 119 Conn. App. 570, 576 (Conn. App. 2010). Thus, as the Supreme Court of Connecticut confirmed just several weeks ago, "[o]ur legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." Id.; see also Chase Home Finance, 119 Conn. App. at 576-577 ("Our legislature . . . has provided an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him"). Based on this well-established principal, courts in Connecticut unanimously hold that any alleged deficiency in a mortgage assignment, including an alleged lack of any interest whatsoever, cannot defeat a note holder's right to foreclose as a matter of law. See RMS Residential Properties, 2011 WL 6033011 at *5 ("RMS need only prove that it was the holder of the note when it initiated the foreclosure action, and that the note was secured by a mortgage"); Chase Home Finance, 119 Conn. App. at 576-577 (affirming judgment of strict foreclosure where court assumed for sake of argument that there was an invalid mortgage assignment from MERS because defendant failed to offer any evidence that plaintiff was not the note holder); HSBC Bank, N.A. v. Navin, 129 Conn. App. 707, 713 (Conn. App. 2011) (foreclosing entity "need not prove that it held the mortgage" at the time of commencement).

In this case, RFC's status as the holder of the Note has been conclusively established as a result of La Casse's failure to deny or otherwise respond to RFC's Complaint. Deutsche Bank Nat. Trust Co. v. DeFranco, 2011 WL 1759816, *3 (Conn. Super. Mar. 14, 2011) ("the defendant's defaulted status conclusively establishes the allegations of the complaint as true, and the complaint states that the plaintiff holds the note and the mortgage"); U.S. Bank v. Curtis, 2010 WL 3326976, *3 (Conn. Super. July 23, 2010) ("the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations" as all allegations have been deemed admitted). Even if the Court were to ignore La Casse's defaulted status, RFC has firmly established that it was in possession of the original Note and that this Note was indorsed in blank (permitting the holder to enforce it) before and during these foreclosure proceedings. La Casse has not supported his conclusory allegation with any contrary evidence whatsoever. See RMS Residential Properties, 2011 WL 6033011 at *5 (holding that a holder of a note endorsed in blank is presumed as a matter of law to be its owner); see also Chase Home Finance, 119 Conn. App. at 577 (affirming judgment of strict foreclosure where mortgagor failed to rebut plaintiff's status as note holder when a copy of the note endorsed in blank was provided to court); Navin, 129 Conn. App. at 713 (affirming judgment where mortgagor's unsupported statement that plaintiff was not holder of the note was contradicted by affidavit affirming that the plaintiff was note holder at time of commencement); DeFranco, 2011 WL 1759816 at *5 (mortgagor could not rebut plaintiff's standing to enforce the note where a copy of the note endorsed in blank was attached to affidavit stating that the note had not been further assigned or transferred). Since La Casse has failed to rebut this presumption with even a scintilla of evidence, and because its status as a holder of the Mortgage is irrelevant to whether RFC is entitled to foreclose, La Casse has failed to demonstrate that RFC lacked standing to foreclose.

MICHAEL F. DOWLEY, ATTORNEY AT LAW    ·    116 WASHINGTON STREET    ·    P. O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457    ·    (860) 347-9987    ·    FAX (860) 347-3597    ·    JURIS NO. 103023

**C.      La Casse Does Not Offer Any Evidence To Support His Allegation That Mr.
Stephan Failed To Review The Affidavit Prior To Its Execution.  Even if He Had,
this Affidavit Has Been Superseded By Both the Revised Affidavit And The
Updated Judgment Figures.**

La Casse does not dispute that he has defaulted under the Note or that he owed nearly

$700,000 in August 2009, the date judgment first entered.  Instead, La Casse has sought to

collaterally attack this judgment by claiming – without any evidentiary support – that Mr.

Stephan, the signatory to the Affidavit, failed to review the books and records maintained on

behalf of RFC prior to executing the Affidavit.  La Casse refers in general terms to some

unknown "deposition testimony" and certain statements Mr. Stephan has allegedly made in

connection therewith, but fails to provide this Court with a copy of the testimony he allegedly

relies on and fails to explain or even identify any testimony that is particular to Mr. La Casse's

account.  Without providing any evidence that Mr. Stephan failed to review La Casse's specific

account history prior to executing the Affidavit, or even any evidence that the particular amount

found by the Court to be owed is incorrect, La Casse has failed to meet his burden that this

Affidavit was in any way fraudulent.

More important, however, is the fact that the Affidavit has been superseded by both a

subsequent Affidavit and anticipated testimony.  In November 2011, RFC submitted the Revised

Affidavit that was executed by Mr. Wilson.  La Casse does not claim, nor can he, that Mr.

Wilson failed to review RFC's records, that the amount stated therein is incorrect, or that he

relied in any way on the previous Affidavit submitted by Mr. Stephan.  Moreover, RFC has

provided updated judgment figures and will make its witness available to the Court at the

upcoming hearing to verify these figures.  As a result, any alleged impropriety with the Affidavit

will not have any impact on the ultimate judgment set by the Court.  Accordingly, La Casse is

not entitled to vacate the judgment or dismiss the Complaint.

MICHAEL F. DOWLEY, ATTORNEY AT LAW  ·  116 WASHINGTON STREET  ·  P. O. BOX 1236, MIDDLETOWN, CONNECTICUT 06457  ·  (860) 347-3987  ·  FAX (860) 347-3597  ·  JURIS NO. 103023

Respectfully submitted,

RESIDENTIAL FUNDING COMPANY, LLC,

By Its Attorney,

Jennifer G. Farrell
Dowley & Associates
116 Washington Street
Middletown, CT 06457
(860) 347-9987
Juris No. 103023

## ORDER

The foregoing Motion, having been heard by the court is hereby ordered:

SUSTAINED / OVERRULED

_____          _____
Date                                                        Judge/Clerk

## CERTIFICATION OF SERVICE

On January 23, 2012 I hereby certify that a true and correct copy of this Objection was sent via first-class mail, postage prepaid, as well as by facsimile, to the following counsel of record:

Paul S. Nakian, Esq.
90 Campbell Drive
Stamford, CT 06903

_____
Jennifer G. Farrell
Commissioner of the Superior Court

11

# EXHIBIT A

# InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JANUARY 30TH, 2006                         EAST GREENWICH                         RHODE ISLAND
[Date]                                               [City]                                               [State]

153 VALLEY FORGE ROAD, WESTON, CT 06883
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $   650,000.00              (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.5000         %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on  MARCH 1ST, 2006              . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  FEBRUARY 1ST, 2036            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  800 CORPORATE DRIVE, SUITE 424, FT LAUDERDALE, FL 33334
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

My monthly payment will be in the amount of U.S. $      3,520.83        before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of   FEBRUARY, 2009             , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND ONE FOURTH percentage points (    2.2500          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    8.5000       % or less than  4.5000          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    12.5000      %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be on that date which is the         10th              anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period

Initials: *IL*

when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000    % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

7764073 (0307)
M/FC06737 (06/2005) / 042-591074-2

Page 3 of 5

Initials:

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

7764073 (0307)
MFCI06257 (06/2009) / 042-591074-2

Page 4 of 5

Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
THOMAS LACASSE     -Borrower                         -Borrower

_____(Seal)        _____(Seal)
-Borrower                                   -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION

_____(Seal)        _____(Seal)
-Borrower                                   -Borrower

RAYNETTE BUERKE
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC.
A DELAWARE CORPORATION

_____(Seal)        _____(Seal)
-Borrower                                   -Borrower

*[Sign Original Only]*

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:    3850           LOAN ID:    10419663

NOTE DATE:    1/30/2006       LOAN AMOUNT:       $650,000.00

BORROWER NAME:  THOMAS  LACASSE

PROPERTY ADDRESS:   153 VALLEY FORGE ROAD, WESTON, CT  06883

PAY TO THE ORDER OF

WITHOUT RECOURSE

Residential Funding Corporation

By:

Name: John Hagebock

Title: Assistant Vice President

Residential Funding Corporation

# EXHIBIT B

VOL432PG0496

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC.
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 042-591074-2

Prepared By: HomeComings Financial Network
800 Corporate Drive, Suite 424
Fort Lauderdale, FL 33334

002018

—————————————[Space Above This Line For Recording Data]—————————————

## OPEN-END MORTGAGE DEED

MIN 100062604259107425

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JANUARY 30TH, 2006
together with all Riders to this document.
(B) "Borrower" is
THOMAS LACASSE, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

CONNECTICUT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3007  1/01
MFCT7710 (06/2004) / 042-591074-2
-6A(CT) (0005)
Page 1 of 14                            Initials:
VMP MORTGAGE FORMS - (800)521-7291

VOL 432 PG 0497

(D) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  800 CORPORATE DRIVE, SUITE 424
FT LAUDERDALE, FL 33334
(E) "Note" means the promissory note signed by Borrower and dated JANUARY 30TH, 2006
The Note states that Borrower owes Lender  SIX HUNDRED FIFTY THOUSAND AND NO/100

                                                             Dollars
(U.S. $  650,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1ST, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0006)                      Page 2 of 14              Initials:                 Form 3007  1/01

VOL 432 PG 0498

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the CITY/TOWN LAND RECORDS          of FAIRFIELD COUNTY          :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Parcel ID Number:  17/3/17                              which currently has the address of
153 VALLEY FORGE ROAD                                            ,          [Street]
WESTON                                          [City] , Connecticut     06883    [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                    Page 3 of 14                    Form 3007  1/01

VOL432PG0499

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

MFCT7770 (06/2004) / 042-591074-2
SMD -GA(CT) (0005)          Page 4 of 14          Initial: TL          Form 3007  1/01

VOL 432 PG 0500

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                    Page 5 of 14                    Initials ___    Form 3007    3/01

VOL 432 PG 0501

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

MFCT7770 (06/2004) / 042-591074-2
(GMAC)-6A(CT) (0005)                   Page 8 of 14                   Initials: _TZ_                   Form 3007   1/01

VOL 432 PG 0502

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MFCT7770 (06/2004) / 042-391074-2
-6A(CT) (0005)                    Page 7 of 14        Initials: TL        Form 3007   1/01

VOL432PG0503

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

MFCT7770 (06/2004) / 042-591074-2
(XXX) -6A(CT) (0008)                    Page 8 of 14              Initials: _TL_              Form 3007  1/01

VOL 432 PG 0504

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MFCT7770 (06/2004) / 012-591074-2
-6A(CT) (0005)    Page 9 of 14    Initials: ___    Form 3007  1/01

VOL 432 PG 0505

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFCT7770 (06/2004) / 042-591074-2

-6A(CT) (0005)                    Page 10 of 14                    Initials: _____                    Form 3007    1/01

VOL 432 PG 0506

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

MFCT7770 (06/2004) / 042-591074-2
&reg; -6A(CT) (0005)          Page 11 of 14          Initials: _____          Form 3007  1/01

VOL 432 PG 0507

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MFCT7770 (05/2004) / 042-591074-2
-6A(CT) (0001)                    Page 12 of 14            Initials:                    Form 3007  1/01

VOL 432 PG 0508

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

25. Future Advances. Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

MPCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                    Page 13 of 14        Initials:        Form 3007  1/01

VOL 432 PG 0509

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

WITNESS — Joseph LaCasse

_____ (Seal)
THOMAS LACASSE        -Borrower

Amanda Werner

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower


STATE OF CONNECTICUT,    Fairfield           County ss: Westport
    The foregoing instrument was acknowledged before me this 30th of January, 2006
by
THOMAS LACASSE, AN UNMARRIED MAN


My Commission Expires:

                        _____
                        Notary Public    Angela M. Florino,
                        Commissioner of the Superior Court
                        State of Connecticut

MFCT7770 (06/2004) / 042-591074-2
        -6A(CT) (0006)          Page 14 of 14          Form 3007  1/01

VOL 432 PG 0510

## SCHEDULE A
## DESCRIPTION

ALL THAT CERTAIN piece, parcel or tract of land, with the buildings and improvements located thereon, situated in the Town of Weston, County of Fairfield and State of Connecticut, shown and designated as "Area = 2.002 Ac. +" on that certain map entitled "Map of Property Prepared For Charles E. Squires Weston, Conn. Scale: 1"=40' Feb. 15, 1993", which map is on file in the office of the Town Clerk of said Weston as Map No. 3262.

VOL432PG0511

# ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published in *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30TH    day of   JANUARY, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
HOMECOMINGS FINANCIAL NETWORK, INC.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
153 VALLEY FORGE ROAD
WESTON, CT 06883

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   6.5000       %. The Note provides
for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of   FEBRUARY, 2009       ,
and on that day every 12th month thereafter. Each date on which my interest rate could
change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae
UNIFORM INSTRUMENT
-166R (0401) Form 3189 6/01    MFCD6131 - (08/2004) / 042-591874-2
Page 1 of 4    Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

VOL 432 PG 0512

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE FOURTH                                                                         percentage points
(   2.2500                %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 8.5000          % or less than 4.5000             %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    12.5000          %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _____

-166R (0401)                          Page 2 of 4                          Form 3189 6/01
MFCD6136 - (08/2004) / 043-591074-2

VOL 432 PG 0513

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-166R (0401)                 Page 3 of 4        Initials: _____        Form 3189 6/01
MFCD6131 - (08/2004) / 042-591074-2

VOL432PG0514

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
THOMAS LACASSE              -Borrower                                      -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower

_____(Seal)          _____(Seal)
                            -Borrower                                      -Borrower

-166R (0401)                 Page 4 of 4                 Form 3189 6/01
MFCD6131 - (08/2004) / 042-591074-2

RECEIVED FOR RECORD FEB 8 2006
AT 10:46 A M, ATEST [signature]
WESTON TOWN CLERK

# EXHIBIT C

VOL 489 PG 786

| After recording please return to:<br>HUNT LEIBERT JACOBSON PC<br>50 Weston Street<br>Hartford CT 06120 |
|---|

1/53E

## ASSIGNMENT OF MORTGAGE

POOL NUMBER_____                          000384

KNOW YE THAT Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc, ( Assignor"), having an office and place of business at 3300 SW 34th Avenue Suite 101, Ocala, FL 34474 for the consideration of One Dollar and other valuable considerations, does hereby assign to Residential Funding Company, LLC fka Residential Funding Corporation ("Assignee"), having an address of c/o GMAC Mortgage, LLC, 4 Walnut Grove Drive, Horsham, PA 19044, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Thomas LaCasse to Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc. dated January 30, 2006 and recorded on February 08, 2006 in Volume 432 at Page 496 of the Weston Land Records , in or to the property described in said mortgage deed situated in the Town of Weston, County of Fairfield and State of Connecticut, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee, its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the 25 day of JULY , 2009, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by _____ Jeffrey Stephan , who is duly authorized and empowered.

Signed, sealed and delivered                MORTGAGE ELECTRONIC REGISTRATION
in the presence of:                          SYSTEMS, INC. AS NOMINEE FOR HOMECOMINGS
                                             FINANCIAL NETWORK, INC

                                             By _____
                                             Its Vice President

                                             Jeffrey Stephan
STATE OF PA                                  Vice President
COUNTY OF Montgomery         : ss.

On this 25 day of JULY , 2009, before me personally came that he/she Jeffrey Stephan to me known, who being by me duly sworn, did depose and say that he/she is a Vice President of MERS, INC, which executed the above instrument: that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

_____
Notary Public
My Commission Expires:

| COMMONWEALTH OF PENNSYLVANIA<br>NOTARIAL SEAL<br>Nikole Stephan, Notary Public<br>Upper Dublin Twp, Montgomery County<br>My Commission Expires Aug. 11, 2010<br>Member, Pennsylvania Association of Notaries |
|---|

PROPERTY:
153 Valley Forge Road
Weston, CT 06883
Lacasse, Thomas
File 01625-80701

## RECEIVED FOR RECORD
At _____

AUG 1 0 2009    11:32AM

Attest _____

*01625-80701$8*



# EXHIBIT D

# RESIDENTIAL FUNDING COMPANY, LLC

## CERTIFICATE OF ASSISTANT SECRETARY

I, Carolyn B. Traczykiewicz, Assistant Secretary of Residential Funding Company, LLC (the "Company"), hereby certify that the following is a true and correct copy of the resolution(s) adopted by the Board of Directors of the Company by the Unanimous Written Consent dated January 7, 2008.

**RESOLVED,** that instruments, documents, or agreements relating to or affecting the property or business and affairs of the Company may be executed in its name, with or without its corporate seal, by the persons hereinafter designated. For the purpose of this Resolution, the terms "Executive Officer," "Senior Officer," and "Junior Officer" are defined as follows:

"Executive Officer" shall mean the President, Chief Financial Officer, Treasurer, or Secretary of the Company or GMAC Mortgage, LLC ("GMACM").

"Senior Officer" shall mean any Managing Director of the Company, any Senior Managing Director of Residential Capital, LLC, or any Executive Vice President, Senior Vice President or Vice President of GMACM.

"Junior Officer" shall mean any Director, Assistant Treasurer, Assistant Secretary, or Limited Signing Officer of the Company, or any Assistant Vice President, Assistant Treasurer, Assistant Secretary, or Limited Signing Officer of GMACM.

1.  Any Executive Officer, acting alone, may execute:

    a)  Deeds and conveyances of any real or personal property.

    b)  Leases of any real or personal property.

    c)  Any other instruments, documents, or agreements which may be found necessary, proper, or expedient to be executed in conducting the business of the Company, *specifically excluding* any instruments, documents, or agreements for the borrowing of money and/or the transfer of securities.

    d)  Any and all instruments, documents, or agreements that a Senior Officer is authorized to execute pursuant to this Resolution.

2.  Any Senior Officer, acting alone, may execute:

    a)  Deeds and conveyances of any real or personal property for a consideration of $300,000.00, or less.

    b)  Any endorsements of mortgage notes and/or assignments or assumptions of security instruments (mortgages, deeds of trust, security deeds, etc.), allonges to notes, lost note affidavits, and note endorsements relating to real estate loans held by the Company, either in its own behalf or in a fiduciary or agency capacity.

    c)  Full or partial releases, subordinations, satisfactions and modifications of security instruments (mortgages, deeds of trust, security deeds, etc.), certificates of redemption, and assignments of sheriff's certificates.

    d)       Loan and/or loan servicing acquisition agreements and loan and/or loan servicing sale agreements, including participation agreements and participation certificates, broker agreements, commitment letters with customers, indemnification agreements, workout agreements and settlement agreements.

    e)       Any and all instruments, documents, or agreements relating to an individual loan closing, including, but not limited to, matters relating to the application for HUD insurance, private mortgage insurance, or a VA loan guarantee.

    f)       Any Power of Attorney as the officer deems necessary or appropriate for the transaction of business on behalf of the Company.

    g)       Any agreements with outside contractors or vendors for goods or services.

    h)       Licenses (as necessary) under applicable state laws or regulations.

    i)       "Doing Business" qualification forms or annual reports.

    j)       Computer technology leases, contracts or agreements and related services, including consulting agreements.

    k)       Any and all instruments, documents, or agreements that a Junior Officer is authorized to execute pursuant to this Resolution.

3.     Any Junior Officer, acting alone, may execute:

    a)       Any endorsements of mortgage notes and/or assignments or assumptions of security instruments (mortgages, deeds of trust, security deeds, etc.), allonges to notes, lost note affidavits, and note endorsements, but only if such instruments, documents, or agreements (i) relate to one-to-four family real estate loans held by the Company, either in its own behalf or in a fiduciary or agency capacity, and (ii) are intended to transfer beneficial interest to Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, the Company, GMACM or Homecomings Financial, LLC, Bond agencies, private investors and/or home equity securitizations.

    b)       Full or partial releases, satisfactions, subordinations, and modifications of security instruments (mortgages, deeds of trust, security deeds, etc.), certificates of redemption, and assignments of sheriff's certificates, but only if such instruments, documents, or agreements relate to one-to-four family mortgage loans held by the Company, either in its own behalf or in a fiduciary or agency capacity.

    c)       Deed under Power, Substitution of Trustee, Special Warranty Deeds, Assignments, General Warranty Deeds, Grant Deeds, Allonges, Assignments Affidavits, Loss Assignment Affidavits, Forbearance Agreements, Quit Claim Deeds or any other instruments, documents, or agreements which may be found necessary, proper, or expedient to be executed in connection with foreclosure proceedings or REO property sales in which the Company is involved as owner, mortgagee or in a similar capacity.

    d)       Any documents relating to mortgage origination, consolidation, extension and modification agreements that require a signature of lender.

4.      In addition to the foregoing, the Board of Directors or any two Executive Officers, one of whom must be the Chief Financial Officer of the Company, may, by filing a written authorization with the Secretary of the Company, designate any person, whether an employee of the Company or not, to execute on behalf of the Company such instruments, documents, or agreements as are specified in such written authorization, *specifically excluding* any instruments, documents, or agreements for the borrowing of money and/or the transfer of securities.  Any person so designated in such written authorization shall have such authority as is specifically set forth therein.  Revocation of any such authority, in whole or in part, shall likewise be filed with the Secretary.

5.      In addition to the foregoing, the Secretary of the Company, may, by filing a written authorization with the Company, designate any associate of the Company as a Limited Signing Officer, to execute on behalf of the Company such instruments, documents, or agreements as are specified in such written authorization, *specifically excluding* any instruments, documents, or agreements for the borrowing of money and/or the transfer of securities.  Any person so designated in such written authorization shall have such authority as is specifically set forth therein.  Revocation of any such authority, in whole or in part, shall likewise be filed with the Secretary.

6.      The above stated documents may be executed by any authorized person as stated in the foregoing resolution when bearing or purporting to bear the signature of such person in facsimile form.  All documents signed prior to the date of this Resolution in facsimile format are hereby ratified, and affirmed.

7.      The Secretary shall designate by name any Assistant Secretary who is authorized to execute corporate certifications for this Company, and shall file such designation in the Company record books.

    I further certify that Jeffrey Stephan served as a Limited Signing Officer of the Company from September 25, 2007 until September 30, 2010 and was authorized under the above stated Resolutions which were in effect from January 7, 2008 through December 3, 2010.

    **IN WITNESS WHEREOF**, I have hereunto set my hand and affixed hereto the Company Seal this 20th day of May, 20 11 .

                    _Carolyn B. Trzczykiewicz_
                    Carolyn B. Trzczykiewicz, Assistant Secretary

# EXHIBIT E

DOCKET NO. FST-CV-09-5011591-S          :  SUPERIOR COURT

RESIDENTIAL FUNDING COMPANY, LLC      :  JUDICIAL DISTRICT OF
FKA RESIDENTIAL FUNDING                      STAMFORD/NORWALK
CORPORATION
V.                                                          :  AT STAMFORD

*THOMAS LACASSE, ET AL.*                 :  DATE:

## AFFIDAVIT OF DEBT

I, Jeffrey Stephan Limited-Signing Officer, being duly sworn, depose and say:

1. I am over the age of eighteen years and believe in the obligation of an oath.

2. I am an authorized signer as a _____ISO_____ on behalf of GMAC Mortgage, LLC, the authorized loan servicing agent on behalf of the Plaintiff in this action.

3. As the authorized loan servicing agent for the Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation, GMAC Mortgage, LLC has the responsibility to accept mortgage payments from the Defendant(s), apply them to the mortgage debt and maintain records of the amount of the debt.

4. I am personally familiar with the books and records maintained on behalf of Residential Funding Company, LLC fka Residential Funding Corporation utilized to generate payoff statements to determine the amount of the debt owed herein, and have reviewed the account of Thomas LaCasse, the Defendant(s), in this matter. The books and records utilized to determine the amount of the debt are generated in the usual and ordinary course of business and the information contained therein is entered into the records within a reasonable time after the transaction reflected therein.

5. There is due and owing to the Plaintiff on the Note dated January 30, 2006 made by the makers thereof, in the original principal amount of 650,000.00, a sum computed as follows:

| | |
|---|---:|
| Principal | $   649,974.31 |
| Interest from 12/01/08 to 08/17/09 | 24,037.00 |
| Pre- acceleration Late Charges | 2,212.15 |
| Private Mortgage Insurance Premiums | 00.00 |
| Real Estate Taxes Advanced | 13,756.10 |

THIS LAW FIRM IS A DEBT COLLECTOR.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

| | |
|---|---|
| Hazard Insurance Premiums Advanced | 4,875.00 |
| Property Inspections | 56.25 |
| Other (Itemized as follows:) | |
| BPO | 83.00 |
| Property Preservation | 1,509.50 |

TOTAL    $    696,503.31

Current Interest Rate as of the Date of the Affidavit    6.5%
Current Per Diem as of the Date of the Affidavit    $    117.36

6.    I know of no setoffs or counterclaims to this account.

GMAC Mortgage, LLC    Jeffrey Stephan
Limited Signing Officer

Subscribed and sworn to before me this _____ day of _____ , 2009.

Notary Public
My Commission expires:

SEAL

Lacasse, Thomas
01625-80701

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nikole Shelton, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Aug. 11, 2010
Member Pennsylvania Association of Notaries

01625-00701
GMAC



# EXHIBIT F

Page 1 of 1

DOCKET NUMBER: **FSTCV095011591S**
RESIDENTIAL FUNDING COMPANYLLC
vs.
THOMAS LACASSE

JUDICIAL DISTRICT
OF STAMFORD

JUDGMENT DATE:
**Wednesday, September 02, 2009**

## Notice of Judgment of Strict Foreclosure

Property Address: 153 Valley Forge Road, Weston, Connecticut 06889

**Judgment of Strict Foreclosure is hereby entered as follows:**
The debt amount of $696,497.60 was found by the court as of 08/31/2009, and not on the date of judgment.

| | | | |
|---|---|---|---|
| Debt: | $696,497.60 | Appraisal Fee: | $335.00 |
| Attorney Fees: | $1,500.00 | Title Search Fee: | $225.00 |
| Total: | $697,997.60 | Fair Market Value: | $590,000.00 |

LAW DAY SET FOR Tuesday, October 20, 2009, for the owner of the equity of redemption, and subsequent
days for subsequent encumbrancers in the inverse order of their priorities.

BY THE COURT (Mintz,J)

Copies sent Thursday, September 03, 2009 to:
HUNT LEIBERT JACOBSON PC

Karen Lucien



RECEIVED
SEP 0 9 2009

# EXHIBIT G



**Motion**
**Stamford Superior Court**
**State of Connecticut**

Docket Number CV095011591
Residential Funding vs. Thomas La Casse

May it please the court, Thomas J. La Casse of 153 Valley Forge Road in
Weston Connecticut, the defendant in the aforementioned civil suit, acting as
Pro se Counsel did indeed petition the Federal Court of the United States for
Bankruptcy protection. The case filing Number is 09-31866.  The filing took
place at 3:10p.m. on October 20, 2009. The Defendant has attached a notice
of Bankruptcy case filing. Defendant has also informed the attorneys for the
Plaintiff, Residential Funding, Hunt Leibert fax and registered mail.

Respectfully

Thomas J. La Casse
Telephone # 413 565-2507

# EXHIBIT H

**09-31866** Thomas James La Casse
Case type: bk Chapter: 13 Asset: Yes Vol: v Judge: Henry J. Boroff
Date filed: 10/20/2009 Date of last filing: 01/21/2010
Debtor dismissed: 12/08/2009
Date terminated: 12/31/2009

# History

| Doc. No. | Dates | Description |
|---|---|---|
| -- | *Filed & Entered:* 10/20/2009 | Meeting of Creditors Chapter 13 |
| 1 | *Filed & Entered:* 10/20/2009 | Voluntary Petition (Chapter 13) |
| 3 | *Filed & Entered:* 10/20/2009 | Order to Update |
| 4 | *Filed & Entered:* 10/20/2009 | Court Certificate of Mailing |
| 6 | *Filed:* 10/23/2009 *Entered:* 10/24/2009 | BNC Certificate of Mailing - Notice |
| 7 | *Filed & Entered:* 11/04/2009 | Notice of Appearance |
| 8 | *Filed & Entered:* 11/06/2009 | Matrix |
| 9 | *Filed & Entered:* 11/06/2009 *Terminated:* 11/10/2009 | Motion to Extend |
| 10 | *Filed & Entered:* 11/06/2009 | Court's Notice of 341 sent 13 |
| 11 | *Filed:* 11/08/2009 *Entered:* 11/09/2009 | BNC Certificate of Mailing - Meeting of Creditors |
| 12 | *Filed & Entered:* 11/10/2009 | Order on Motion to Extend |
| 13 | *Filed:* 11/12/2009 *Entered:* 11/13/2009 | BNC Certificate of Mailing - PDF Document |
| 15 | *Filed & Entered:* 11/20/2009 | Notice of Appearance |
| 16 | *Filed:* 11/20/2009 *Entered:* 11/21/2009 | BNC Certificate of Mailing - Notice |
| 17 | *Filed & Entered:* 11/25/2009 | Notice of Unfiled Prepetition Tax Returns |
| 18 | *Filed & Entered:* 11/29/2009 | Request for Notice(s) (batch) |
| 19 | *Filed:* 11/30/2009 *Entered:* 12/01/2009 | Notice of Appearance |
| 20 | *Filed & Entered:* 12/02/2009 | Notice of Appearance |
| -- | *Filed & Entered:* 12/03/2009 | 341 Meeting Not Held |
| 21 | *Filed & Entered:* 12/08/2009 | Order Dismissing Case |
| 22 | *Filed & Entered:* 12/08/2009 | Court Certificate of Mailing |
| 23 | *Filed & Entered:* 12/28/2009 | Notice of Dismissal |
| 24 | *Filed:* 12/30/2009 *Entered:* 12/31/2009 | BNC Certificate of Mailing - Notice |
| -- | *Filed & Entered:* 12/31/2009 | Close Bankruptcy Case |

LIVE database                                                                    Page 2 of 2

| -- | *Filed & Entered:* 01/11/2010 | ⊕ Order Discharging Chapter 13 Trustee |
|----|---|---|
| 25 | *Filed & Entered:* 01/11/2010 | ⊕ Chapter 13 Trustee's Final Report and Account |
| 26 | *Filed & Entered:* 01/18/2010 | ⊕ Notice of Appearance |
| 27 | *Filed & Entered:* 01/18/2010 *Terminated:*        01/19/2010 | ⊕ Motion to Vacate |
| 28 | *Filed & Entered:* 01/19/2010 *Terminated:*        01/19/2010 | ⊕ Motion to Withdraw Document |
| 29 | *Filed & Entered:* 01/19/2010 | ⊕ Order on Motion to Withdraw Document |
| 30 | *Filed:*                01/21/2010 *Entered:*            01/22/2010 | ⊕ BNC Certificate of Mailing - PDF Document |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/13/2012 13:11:57 | | |
| PACER Login: | pl0230 | Client Code: |
| Description: | History/Documents | Search Criteria: | 09-31866 Type: History |
| Billable Pages: | 2 | Cost: | 0.16 |

# EXHIBIT I

LIVE database                                                           Page 1 of 12

**10-30088** Thomas James LaCasse
**Case type:** bk **Chapter:** 7 **Asset:** Yes **Vol:** v **Judge:** Henry J. Boroff
**Date filed:** 01/19/2010 **Date of last filing:** 01/06/2012

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed & Entered:* 01/19/2010 | Voluntary Petition (Chapter 11) |
| 3 | *Filed & Entered:* 01/19/2010 | Declaration Re: Electronic Filing |
| 4 | *Filed & Entered:* 01/19/2010 | Certificate of Credit Counseling |
| 5 | *Filed & Entered:* 01/19/2010 | Exhibit D |
| 6 | *Filed & Entered:* 01/19/2010 | Chapter 11 Statement of Current Monthly Income |
| -- | *Filed & Entered:* 01/20/2010 | Internet Payment Made |
| -- | *Filed & Entered:* 01/25/2010 | Meeting of Creditors Chapter 11 & 12 |
| 7 | *Filed & Entered:* 01/25/2010 | Court's Notice of 341 sent - 11 Individual |
| 8 | *Filed & Entered:* 01/26/2010 | Notice of Appearance |
| 9 | *Filed:* 01/27/2010 *Entered:* 01/28/2010 | BNC Certificate of Mailing - Meeting of Creditors |
| 10 | *Filed & Entered:* 02/03/2010 | Notice of Appearance |
| 11 | *Filed & Entered:* 02/09/2010 *Terminated:* 02/18/2010 | Motion to Extend Automatic Stay |
| 12 | *Filed & Entered:* 02/09/2010 | Order To Set Hearing |
| 13 | *Filed & Entered:* 02/09/2010 | Court Certificate of Mailing |
| 14 | *Filed & Entered:* 02/09/2010 | Certificate of Service of Notice of Hearing |
| -- | *Filed & Entered:* 02/18/2010 | Hearing Held |
| 15 | *Filed & Entered:* 02/18/2010 | Order on Motion to Extend Automatic Stay |
| 16 | *Filed:* 02/20/2010 *Entered:* 02/21/2010 | BNC Certificate of Mailing - PDF Document |
| 17 | *Filed & Entered:* 02/22/2010 | Request for Notice(s) (batch) |
| -- | *Filed:* 02/24/2010 *Entered:* 02/25/2010 | Meeting of Creditors Held |
| 18 | *Filed & Entered:* 02/26/2010 | Statement of UST |
| 19 | *Filed & Entered:* 03/01/2010 | Notice of Appearance |
| 20 | *Filed & Entered:* 03/31/2010 *Terminated:* 05/28/2010 | Motion to Convert Case to Chapter 7 |
| 21 | *Filed & Entered:* 04/20/2010 | Hearing Scheduled |
| 22 | *Filed & Entered:* 04/20/2010 | Objection |
| 23 | *Filed:* 04/22/2010 *Entered:* 04/23/2010 | BNC Certificate of Mailing - Hearing |
| -- | *Filed & Entered:* 04/28/2010 | Internet Payment Made |

| 24 | *Filed & Entered:* 04/28/2010 | ⊕ Notice of Appearance |
|---|---|---|
| 25 | *Filed & Entered:* 04/28/2010<br>*Terminated:* 08/06/2010 | ⊕ Motion for Relief From Stay |
| 26 | *Filed & Entered:* 05/12/2010 | ⊕ Objection |
| 27 | *Filed & Entered:* 05/13/2010<br>*Terminated:* 05/13/2010 | ⊕ Miscellaneous Motion |
| 28 | *Filed & Entered:* 05/13/2010<br>*Terminated:* 06/10/2010 | ⊕ Application to Employ |
| 29 | *Filed & Entered:* 05/13/2010 | ⊕ Order on Generic Motion |
| 30 | *Filed:* 05/13/2010<br>*Entered:* 05/14/2010<br>*Terminated:* 05/17/2010 | ⊕ Motion to Set Bar Date |
| 31 | *Filed:* 05/13/2010<br>*Entered:* 05/14/2010<br>*Terminated:* 06/10/2010 | ⊕ Application to Employ |
| 32 | *Filed:* 05/15/2010<br>*Entered:* 05/16/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
| 33 | *Filed:* 05/17/2010<br>*Entered:* 05/18/2010 | ⊕ Order on Motion To Set Bar Date |
| 34 | *Filed & Entered:* 05/19/2010 | ⊕ Hearing Scheduled |
| 35 | *Filed & Entered:* 05/20/2010 | ⊕ Certificate of Service of Notice of Hearing |
| 36 | *Filed:* 05/20/2010<br>*Entered:* 05/21/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
| 37 | *Filed & Entered:* 05/26/2010<br>*Terminated:* 05/26/2010 | ⊕ Motion to Continue/Cancel Hearing |
| 38 | *Filed & Entered:* 05/26/2010 | ⊕ Order on Motion to Continue/Cancel Hearing |
| 39 | *Filed & Entered:* 05/26/2010 | ⊕ Certificate of Service of Notice of Hearing |
| -- | *Filed:* 05/27/2010<br>*Entered:* 05/28/2010 | ⊕ Hearing Held |
| 40 | *Filed & Entered:* 05/28/2010 | ⊕ Order on Motion to Convert Case to Chapter 7 |
| 41 | *Filed & Entered:* 05/28/2010 | ⊕ Motion to Approve |
| 42 | *Filed & Entered:* 05/28/2010 | ⊕ Order Appointing Trustee |
| 43 | *Filed:* 05/28/2010<br>*Entered:* 05/29/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
| 44 | *Filed:* 05/30/2010<br>*Entered:* 05/31/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
| 45 | *Filed:* 05/30/2010<br>*Entered:* 05/31/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
| 46 | *Filed & Entered:* 06/02/2010 | ⊕ Statement |
| 47 | *Filed & Entered:* 06/02/2010 | ⊕ Bond |
| 48 | *Filed & Entered:* 06/04/2010<br>*Terminated:* 06/22/2010 | ⊕ Application to Employ |

| 49 | Filed & Entered: 06/10/2010 | Order on Application to Employ |
|----|------------------------------|--------------------------------|
| 50 | Filed & Entered: 06/10/2010 | Order on Application to Employ |
| 51 | Filed & Entered: 06/11/2010 | Notice of Appearance |
| 52 | Filed: 06/12/2010 Entered: 06/13/2010 | BNC Certificate of Mailing - PDF Document |
| 53 | Filed: 06/12/2010 Entered: 06/13/2010 | BNC Certificate of Mailing - PDF Document |
| 54 | Filed & Entered: 06/17/2010 Terminated: 06/21/2010 | Motion to Convert Case to Chapter 7 |
| 55 | Filed: 06/17/2010 Entered: 06/18/2010 | Order To Set Hearing |
| 56 | Filed & Entered: 06/18/2010 | Court Certificate of Mailing |
| 57 | Filed & Entered: 06/18/2010 | Objection |
| 58 | Filed & Entered: 06/18/2010 | Evidence of Current and Sufficient Liability and Property Insurance |
| 59 | Filed & Entered: 06/18/2010 | Certificate of Service of Notice of Hearing |
| -- | Filed & Entered: 06/21/2010 | Meeting of Creditors Chapter 7 No Asset |
| -- | Filed: 06/21/2010 Entered: 06/25/2010 | Hearing Held |
| 60 | Filed & Entered: 06/21/2010 | Statement of Financial Affairs |
| 61 | Filed & Entered: 06/21/2010 | Amended Schedules-Creditor Matrix |
| 62 | Filed & Entered: 06/21/2010 Terminated: 07/09/2010 | Motion to Amend Schedules |
| 63 | Filed & Entered: 06/21/2010 | Exhibit |
| 64 | Filed & Entered: 06/21/2010 | Order on Motion to Convert Case to Chapter 7 |
| 65 | Filed & Entered: 06/21/2010 | Certificate of Appointment of Trustee |
| 66 | Filed & Entered: 06/21/2010 | Court's Notice of 341 sent Individual No Asset |
| 67 | Filed & Entered: 06/21/2010 | Order to Update |
| 68 | Filed & Entered: 06/22/2010 | Order on Application to Employ |
| 69 | Filed & Entered: 06/22/2010 Terminated: 06/23/2010 | Motion to Continue/Cancel Hearing |
| 70 | Filed & Entered: 06/23/2010 | Order on Motion to Continue/Cancel Hearing |
| 71 | Filed: 06/23/2010 Entered: 06/24/2010 | BNC Certificate of Mailing - Meeting of Creditors |
| 72 | Filed: 06/23/2010 Entered: 06/24/2010 | BNC Certificate of Mailing |
| 73 | Filed: 06/23/2010 Entered: 06/24/2010 | BNC Certificate of Mailing - PDF Document |
| -- | Filed: 06/24/2010 Entered: 06/25/2010 | Hearing Held |
| 74 | Filed & Entered: 06/24/2010 | Certificate of Service of Notice of Hearing |

| 75 | Filed: 06/24/2010<br>Entered: 06/25/2010 | BNC Certificate of Mailing - PDF Document |
| -- | Filed & Entered: 06/25/2010 | Hearing Continued/Rescheduled |
| 76 | Filed: 06/25/2010<br>Entered: 06/26/2010 | BNC Certificate of Mailing - PDF Document |
| 77 | Filed & Entered: 06/29/2010<br>Terminated: 07/20/2010 | Application to Employ |
| 78 | Filed & Entered: 07/01/2010 | Notice of Appearance |
| 79 | Filed & Entered: 07/02/2010 | Turnover of Property |
| 80 | Filed & Entered: 07/06/2010 | Trustee's Request for Bar Date |
| 81 | Filed & Entered: 07/06/2010 | Notice of Appearance |
| 82 | Filed & Entered: 07/06/2010 | Statement of Intent |
| 83 | Filed & Entered: 07/06/2010 | Chapter 7 Means Test |
| 84 | Filed & Entered: 07/06/2010<br>Terminated: 07/07/2010 | Motion to Extend |
| 85 | Filed & Entered: 07/07/2010 | Asset Notice Report |
| 86 | Filed & Entered: 07/07/2010 | Order on Motion to Extend |
| 87 | Filed & Entered: 07/08/2010 | Notice of Withdrawal of Appearance/Representation |
| 88 | Filed & Entered: 07/08/2010<br>Terminated: 09/02/2010 | Motion for Relief From Stay |
| -- | Filed & Entered: 07/09/2010 | Internet Payment Made |
| -- | Filed: 07/09/2010<br>Entered: 07/13/2010 | Receipt Number and Filing Fee |
| 89 | Filed & Entered: 07/09/2010 | Motion to Reinstate Document |
| 90 | Filed & Entered: 07/09/2010 | Order on Motion to Amend Schedule |
| 91 | Filed & Entered: 07/09/2010 | Order on Objection to Confirmation of Plan |
| 92 | Filed: 07/09/2010<br>Entered: 07/10/2010 | BNC Certificate of Mailing - Notice |
| 93 | Filed: 07/09/2010<br>Entered: 07/10/2010 | BNC Certificate of Mailing - PDF Document |
| 94 | Filed: 07/11/2010<br>Entered: 07/12/2010 | BNC Certificate of Mailing - PDF Document |
| 95 | Filed & Entered: 07/12/2010 | Response |
| 96 | Filed & Entered: 07/12/2010 | Supplemental Document |
| 97 | Filed & Entered: 07/12/2010 | Supplemental Document |
| 98 | Filed & Entered: 07/12/2010 | Supplemental Document |
| 99 | Filed & Entered: 07/13/2010 | Affidavit/Declaration |
| 100 | Filed: 07/13/2010<br>Entered: 07/14/2010 | Amended Document |
| -- | Filed & Entered: 07/19/2010 | Internet Payment Made |

LIVE database                                                                 Page 5 of 12

| 101 | Filed & Entered: 07/19/2010 | Amended Schedules-Creditor Matrix |
|---|---|---|
| 102 | Filed & Entered: 07/19/2010 | Motion to Amend Schedules |
| 103 | Filed & Entered: 07/19/2010 | Declaration Re: Electronic Filing |
| 104 | Filed & Entered: 07/20/2010 | Order on Application to Employ |
| 105 | Filed & Entered: 07/20/2010 | Court's Order of Deficiency |
| 106 | Filed & Entered: 07/21/2010 | Opposition |
| 107 | Filed & Entered: 07/21/2010 | Hearing Scheduled |
| 108 | Filed & Entered: 07/21/2010 | Certificate of Service |
| 109 | Filed & Entered: 07/22/2010 | Certificate of Service of Notice of Hearing |
| 110 | Filed: 07/22/2010  Entered: 07/23/2010 | BNC Certificate of Mailing - PDF Document |
| 111 | Filed: 07/23/2010  Entered: 07/24/2010 | BNC Certificate of Mailing - Hearing |
| -- | Filed & Entered: 07/27/2010 | Meeting of Creditors Held |
| 112 | Filed & Entered: 07/28/2010 | Opposition |
| 113 | Filed & Entered: 07/28/2010 | Notice of Abandonment |
| 114 | Filed & Entered: 07/30/2010 | Hearing Scheduled |
| 115 | Filed & Entered: 08/02/2010 | Certificate of Service of Notice of Hearing |
| 116 | Filed & Entered: 08/03/2010  Terminated: 08/25/2010 | Application to Employ |
| 117 | Filed & Entered: 08/03/2010 | Certificate of Service |
| 118 | Filed & Entered: 08/04/2010  Terminated: 08/04/2010 | Motion to Continue/Cancel Hearing |
| 119 | Filed & Entered: 08/04/2010 | Order on Motion to Continue/Cancel Hearing |
| 120 | Filed & Entered: 08/04/2010 | Opposition |
| -- | Filed & Entered: 08/05/2010 | Hearing Continued/Rescheduled |
| -- | Filed: 08/05/2010  Entered: 08/06/2010 | Hearing Held |
| 121 | Filed & Entered: 08/05/2010  Terminated: 08/05/2010 | Motion for Emergency/Expedited Determination |
| 122 | Filed & Entered: 08/05/2010 | Order on Motion for Emergency/Expedited Determination |
| 123 | Filed & Entered: 08/05/2010 | Certificate of Service of Notice of Hearing |
| 125 | Filed: 08/05/2010  Entered: 08/06/2010 | Order on Motion For Relief From Stay |
| -- | Filed: 08/06/2010  Entered: 08/09/2010 | Hearing Held |
| 124 | Filed & Entered: 08/06/2010 | Evidence of Current and Sufficient Liability and Property Insurance. |
| 126 | Filed: 08/06/2010  Entered: 08/07/2010 | BNC Certificate of Mailing - PDF Document |

| 128 | Filed: | 08/06/2010 | Order |
| | Entered: | 08/09/2010 | |
| 127 | Filed: | 08/08/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 08/09/2010 | |
| 129 | Filed: | 08/11/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 08/12/2010 | |
| 130 | Filed & Entered: | 08/13/2010 | Certificate of Service of Notice of Hearing |
| 131 | Filed & Entered: | 08/16/2010 | Hearing Scheduled |
| 132 | Filed: | 08/18/2010 | BNC Certificate of Mailing - Hearing |
| | Entered: | 08/19/2010 | |
| 133 | Filed & Entered: | 08/20/2010 | Notice of Appearance |
| | Terminated: | 10/20/2010 | |
| 134 | Filed & Entered: | 08/24/2010 | Motion to Extend |
| | Terminated: | 09/14/2010 | |
| 135 | Filed & Entered: | 08/25/2010 | Order on Application to Employ |
| -- | Filed & Entered: | 08/26/2010 | Hearing Held |
| -- | Filed & Entered: | 08/26/2010 | Hearing Continued/Rescheduled |
| -- | Filed & Entered: | 08/26/2010 | Hearing Scheduled (multi) |
| 136 | Filed & Entered: | 08/26/2010 | Order to Continue Hearing |
| 137 | Filed & Entered: | 08/27/2010 | Notice of Requirement to Complete Course in Financial Management |
| 138 | Filed: | 08/27/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 08/28/2010 | |
| 139 | Filed: | 08/28/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 08/29/2010 | |
| 140 | Filed: | 08/29/2010 | BNC Certificate of Mailing - Notice |
| | Entered: | 08/30/2010 | |
| -- | Filed: | 09/02/2010 | Hearing Held |
| | Entered: | 09/03/2010 | |
| 141 | Filed: | 09/02/2010 | Order on Motion For Relief From Stay |
| | Entered: | 09/03/2010 | |
| 142 | Filed: | 09/05/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 09/06/2010 | |
| 143 | Filed & Entered: | 09/14/2010 | Order on Motion to Extend |
| 144 | Filed: | 09/16/2010 | BNC Certificate of Mailing - PDF Document |
| | Entered: | 09/17/2010 | |
| -- | Filed & Entered: | 09/17/2010 | Internet Payment Made |
| 145 | Filed & Entered: | 09/17/2010 | Motion for Relief From Stay |
| | Terminated: | 11/04/2010 | |
| -- | Filed & Entered: | 09/22/2010 | Hearing Continued/Rescheduled |
| -- | Filed & Entered: | 09/23/2010 | Hearing Continued/Rescheduled |
| 146 | Filed & Entered: | 09/23/2010 | Motion to Extend |

|     |                           |            |                                                      |
|-----|---------------------------|------------|------------------------------------------------------|
|     | *Terminated:*             | 10/14/2010 |                                                      |
| 147 | *Filed & Entered:*        | 09/23/2010 | Order on Motion for Turnover of Property              |
| 148 | *Filed & Entered:*        | 09/24/2010 | Opposition                                           |
| 149 | *Filed:*<br>*Entered:*    | 09/25/2010<br>09/26/2010 | BNC Certificate of Mailing - PDF Document |
| 150 | *Filed & Entered:*        | 10/01/2010 | Hearing Scheduled                                    |
| 151 | *Filed:*<br>*Entered:*    | 10/03/2010<br>10/04/2010 | BNC Certificate of Mailing - Hearing      |
| 152 | *Filed & Entered:*        | 10/05/2010 | Certificate of Service of Notice of Hearing          |
| 153 | *Filed & Entered:*        | 10/06/2010 | Request for Claims Register                          |
| 154 | *Filed & Entered:*        | 10/13/2010 | Clerk's Notice of Fees Due                           |
| 155 | *Filed & Entered:*        | 10/13/2010 | Document                                             |
| 156 | *Filed & Entered:*<br>*Terminated:* | 10/13/2010<br>10/13/2010 | Motion to Continue/Cancel Hearing |
| 157 | *Filed & Entered:*        | 10/13/2010 | Certificate of Service                               |
| 158 | *Filed:*<br>*Entered:*    | 10/13/2010<br>10/14/2010 | Order on Motion to Continue/Cancel Hearing |
| 159 | *Filed & Entered:*        | 10/14/2010 | Order on Motion to Extend                            |
| 160 | *Filed & Entered:*<br>*Terminated:* | 10/15/2010<br>10/20/2010 | Notice of Withdrawal of Appearance/Representation |
| 161 | *Filed & Entered:*        | 10/15/2010 | Certificate of Service of Notice of Hearing          |
| 162 | *Filed:*<br>*Entered:*    | 10/16/2010<br>10/18/2010 | BNC Certificate of Mailing - PDF Document |
| 163 | *Filed & Entered:*        | 10/19/2010 | Notice of Appearance                                 |
| 164 | *Filed & Entered:*<br>*Terminated:* | 10/19/2010<br>10/20/2010 | Motion to Continue/Cancel Hearing |
| 165 | *Filed & Entered:*        | 10/19/2010 | Order To Set Hearing                                 |
| 166 | *Filed & Entered:*        | 10/19/2010 | Order To Set Hearing                                 |
| --  | *Filed & Entered:*        | 10/20/2010 | Hearing Held                                         |
| --  | *Filed & Entered:*        | 10/20/2010 | Hearing Held                                         |
| --  | *Filed & Entered:*        | 10/20/2010 | Hearing Held                                         |
| 167 | *Filed & Entered:*        | 10/20/2010 | Order                                                |
| 168 | *Filed & Entered:*        | 10/20/2010 | Order on Motion to Continue/Cancel Hearing           |
| 169 | *Filed & Entered:*        | 10/20/2010 | Order on Motion for Turnover of Property             |
| 170 | *Filed:*<br>*Entered:*    | 10/21/2010<br>10/22/2010 | BNC Certificate of Mailing - PDF Document |
| 171 | *Filed:*<br>*Entered:*    | 10/21/2010<br>10/22/2010 | BNC Certificate of Mailing - PDF Document |
| 172 | *Filed & Entered:*<br>*Terminated:* | 10/22/2010<br>12/02/2010 | Motion to Reconsider |

| 173 | *Filed:* | 10/22/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|-----|----------|------------|---------------------------------------------|
|     | *Entered:* | 10/23/2010 | |
| 174 | *Filed:* | 10/22/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 10/23/2010 | |
| 175 | *Filed:* | 10/22/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 10/23/2010 | |
| 176 | *Filed & Entered:* | 10/25/2010 | ⊕ Opposition |
| 177 | *Filed & Entered:* | 10/26/2010 | ⊕ Hearing Scheduled |
| 178 | *Filed:* | 10/28/2010 | ⊕ BNC Certificate of Mailing - Hearing |
|     | *Entered:* | 10/29/2010 | |
| 179 | *Filed:* | 10/28/2010 | ⊕ Miscellaneous Motion |
|     | *Entered:* | 11/01/2010 | |
| 180 | *Filed:* | 10/28/2010 | ⊕ Order on Generic Motion |
|     | *Entered:* | 11/01/2010 | |
| 183 | *Filed:* | 11/02/2010 | ⊕ Miscellaneous Motion |
|     | *Entered:* | 11/05/2010 | |
| 181 | *Filed:* | 11/03/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 11/04/2010 | |
| --- | *Filed & Entered:* | 11/04/2010 | ⊕ Hearing Held |
| 182 | *Filed & Entered:* | 11/04/2010 | ⊕ Order on Motion For Relief From Stay |
| 184 | *Filed:* | 11/06/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 11/07/2010 | |
| 185 | *Filed & Entered:* | 11/12/2010 | ⊕ Transcript |
| 186 | *Filed:* | 11/13/2010 | ⊕ Notice of Filing of Official Transcript |
|     | *Entered:* | 11/15/2010 | |
| 187 | *Filed:* | 11/17/2010 | ⊕ BNC Certificate of Mailing - Notice |
|     | *Entered:* | 11/18/2010 | |
| --- | *Filed & Entered:* | 11/19/2010 | ⊕ Hearing Scheduled (multi) |
| --- | *Filed & Entered:* | 11/19/2010 | ⊕ Hearing Held |
| 188 | *Filed & Entered:* | 11/19/2010 | ⊕ Motion to Abandon |
|     | *Terminated:* | 11/19/2010 | |
| 189 | *Filed & Entered:* | 11/19/2010 | ⊕ Order on Motion to Abandon |
| 190 | *Filed & Entered:* | 11/19/2010 | ⊕ Certificate of Service of Notice of Hearing |
| 191 | *Filed & Entered:* | 11/19/2010 | ⊕ Order on Motion to Abandon |
| 192 | *Filed:* | 11/21/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 11/22/2010 | |
| 193 | *Filed:* | 11/21/2010 | ⊕ BNC Certificate of Mailing - PDF Document |
|     | *Entered:* | 11/22/2010 | |
| 194 | *Filed & Entered:* | 11/29/2010 | ⊕ Motion to Extend |
|     | *Terminated:* | 12/17/2010 | |
| --- | *Filed & Entered:* | 12/02/2010 | ⊕ Hearing Held |
| 195 | *Filed & Entered:* | 12/02/2010 | ⊕ Order on Motion To Reconsider |

| 196 | Filed:<br>Entered: | 12/04/2010<br>12/05/2010 | BNC Certificate of Mailing - PDF Document |
| -- | Filed:<br>Entered: | 12/16/2010<br>12/17/2010 | Receipt Number and Filing Fee |
| 198 | Filed:<br>Entered:<br>Terminated: | 12/16/2010<br>12/17/2010<br>12/20/2010 | Motion To Stay Pending Appeal |
| 199 | Filed:<br>Entered: | 12/16/2010<br>12/17/2010 | Notice |
| 200 | Filed:<br>Entered: | 12/16/2010<br>12/17/2010 | Notice of Appeal |
| 197 | Filed & Entered: | 12/17/2010 | Order on Motion to Extend |
| 201 | Filed & Entered:<br>Terminated: | 12/17/2010<br>01/31/2011 | Notice of Appeal to BAP |
| 202 | Filed & Entered: | 12/17/2010 | Court Certificate of Mailing |
| 203 | Filed & Entered:<br>Terminated: | 12/17/2010<br>01/31/2011 | Initial Transmittal |
| 204 | Filed:<br>Entered: | 12/19/2010<br>12/20/2010 | BNC Certificate of Mailing - PDF Document |
| 205 | Filed & Entered: | 12/20/2010 | Order on Motion To Stay Pending Appeal |
| 206 | Filed:<br>Entered: | 12/22/2010<br>12/23/2010 | BNC Certificate of Mailing - PDF Document |
| 207 | Filed:<br>Entered:<br>Terminated: | 12/23/2010<br>12/28/2010<br>01/06/2011 | Motion to Intervene |
| 208 | Filed:<br>Entered:<br>Terminated: | 12/23/2010<br>12/28/2010<br>01/06/2011 | Motion for Refund |
| 209 | Filed:<br>Entered:<br>Terminated: | 12/23/2010<br>12/28/2010<br>01/06/2011 | Motion to Amend |
| 209 | Filed:<br>Entered: | 12/23/2010<br>12/28/2010 | Motion to Extend |
| 210 | Filed:<br>Entered:<br>Terminated: | 12/23/2010<br>12/28/2010<br>01/06/2011 | Miscellaneous Motion |
| 211 | Filed & Entered:<br>Terminated: | 12/29/2010<br>02/04/2011 | Motion for Contempt |
| 212 | Filed & Entered:<br>Terminated: | 12/30/2010<br>01/05/2011 | Extend Time to Appeal Under Rule 8002(c) |
| 213 | Filed & Entered: | 01/05/2011 | Objection |
| 214 | Filed & Entered: | 01/05/2011 | Order on Motion to Extend Time to Appeal Under Rule 8002(c) |
| 215 | Filed & Entered: | 01/06/2011 | Order on Motion To Intervene |

| 216 | Filed & Entered: 01/06/2011 | Order on Generic Motion |
| 217 | Filed & Entered: 01/06/2011 | Order on Motion for Refund |
| 218 | Filed & Entered: 01/06/2011 | Order on Motion to Amend |
| 219 | Filed: 01/07/2011 Entered: 01/08/2011 | BNC Certificate of Mailing - PDF Document |
| 220 | Filed: 01/08/2011 Entered: 01/09/2011 | BNC Certificate of Mailing - PDF Document |
| 221 | Filed: 01/08/2011 Entered: 01/09/2011 | BNC Certificate of Mailing - PDF Document |
| 222 | Filed: 01/08/2011 Entered: 01/09/2011 | BNC Certificate of Mailing - PDF Document |
| 223 | Filed: 01/08/2011 Entered: 01/09/2011 | BNC Certificate of Mailing - PDF Document |
| 224 | Filed & Entered: 01/10/2011 | Hearing Scheduled |
| 225 | Filed & Entered: 01/10/2011 | Certificate of Service of Notice of Hearing |
| 226 | Filed & Entered: 01/11/2011 Terminated: 02/04/2011 | Motion to Withdraw Document |
| 227 | Filed: 01/12/2011 Entered: 01/13/2011 | BNC Certificate of Mailing - Hearing |
| 228 | Filed & Entered: 01/20/2011 Terminated: 01/31/2011 | Certification of Default |
| 229 | Filed & Entered: 01/24/2011 Terminated: 01/31/2011 | Appellee Designation |
| 230 | Filed & Entered: 01/31/2011 | Order from BAP re: Appeal |
| 231 | Filed & Entered: 02/04/2011 | Order on Motion to Withdraw Document |
| 232 | Filed: 02/06/2011 Entered: 02/07/2011 | BNC Certificate of Mailing - PDF Document |
| 233 | Filed & Entered: 03/03/2011 | Mandate Issued |
| 234 | Filed & Entered: 03/04/2011 | Notice of Abandonment |
| 235 | Filed & Entered: 03/08/2011 Terminated: 03/24/2011 | Miscellaneous Motion |
| 236 | Filed & Entered: 03/08/2011 | Notice |
| 237 | Filed & Entered: 03/08/2011 | Statement of Issues |
| 238 | Filed & Entered: 03/08/2011 | Affidavit/Declaration |
| 239 | Filed & Entered: 03/09/2011 | Transmittal of Complete Record on Appeal |
| 240 | Filed & Entered: 03/14/2011 | Order from BAP re: Appeal |
| 241 | Filed: 03/16/2011 Entered: 03/17/2011 | BNC Certificate of Mailing - PDF Document |
| 242 | Filed & Entered: 03/22/2011 | Order |
| 243 | Filed: 03/24/2011 Entered: 03/25/2011 | BNC Certificate of Mailing - PDF Document |

| 244 | *Filed & Entered:* 10/05/2011 | ⊕ Amended Schedules-Creditor Matrix |
| 245 | *Filed & Entered:* 10/05/2011 *Terminated:* 10/07/2011 | ⊕ Motion to Amend Schedules |
| 246 | *Filed & Entered:* 10/06/2011 *Terminated:* 10/25/2011 | ⊕ Motion to Avoid Lien |
| 247 | *Filed & Entered:* 10/07/2011 | ⊕ Order on Motion to Amend Schedule |
| 248 | *Filed:* 10/09/2011 *Entered:* 10/10/2011 | ⊕ BNC Certificate of Mailing - PDF Document |
| 249 | *Filed & Entered:* 10/25/2011 | ⊕ Order on Motion to Avoid Lien |
| 250 | *Filed:* 10/27/2011 *Entered:* 10/28/2011 | ⊕ BNC Certificate of Mailing - PDF Document |
| 251 | *Filed & Entered:* 11/22/2011 *Terminated:* 12/15/2011 | ⊕ Motion to Compromise |
| 252 | *Filed & Entered:* 11/28/2011 | ⊕ Hearing Scheduled |
| 253 | *Filed & Entered:* 11/29/2011 | ⊕ Certificate of Service of Notice of Hearing |
| 254 | *Filed:* 11/30/2011 *Entered:* 12/01/2011 | ⊕ BNC Certificate of Mailing - Hearing |
| -- | *Filed & Entered:* 12/07/2011 | ⊕ Internet Payment Made |
| 255 | *Filed & Entered:* 12/07/2011 *Terminated:* 01/04/2012 | ⊕ Motion for Relief From Stay |
| -- | *Filed & Entered:* 12/15/2011 | ⊕ Hearing Held |
| 256 | *Filed & Entered:* 12/15/2011 | ⊕ Order on Motion to Compromise |
| 257 | *Filed:* 12/17/2011 *Entered:* 12/18/2011 | ⊕ BNC Certificate of Mailing - PDF Document |
| 258 | *Filed & Entered:* 12/21/2011 | ⊕ Objection |
| 259 | *Filed & Entered:* 12/22/2011 | ⊕ Hearing Scheduled |
| 260 | *Filed & Entered:* 12/22/2011 | ⊕ Certificate of Service of Notice of Hearing |
| 261 | *Filed:* 12/24/2011 *Entered:* 12/25/2011 | ⊕ BNC Certificate of Mailing - Hearing |
| -- | *Filed & Entered:* 01/04/2012 | ⊕ Hearing Held |
| 262 | *Filed & Entered:* 01/04/2012 | ⊕ Order on Motion For Relief From Stay |
| 263 | *Filed:* 01/06/2012 *Entered:* 01/07/2012 | ⊕ BNC Certificate of Mailing - PDF Document |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/13/2012 13:13:03 | | |
| **PACER Login:** | pl0230 | **Client Code:** |
| **Description:** | History/Documents | **Search Criteria:** 10-30088 Type: History |

| Billable Pages: | 8 | Cost: | 0.64 |
|---|---|---|---|

# EXHIBIT J

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In Re:                                            Chapter 7
Thomas James La Casse                             Case No. 10-30088
                                                  Honorable Henry J. Boroff

        Debtor
_____/

### ORDER RE: MOTION OF RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362

Residential Funding Company, LLC fka Residential Funding Corporation, by and

through its attorneys Orlans Moran PLLC, having filed a Motion for Relief From Stay

regarding Real Property known and numbered as 153 Valley Forge Road, Weston, CT,

notice having been given and good cause appearing therefore, it is hereby ORDERED

that the Motion of Residential Funding Company, LLC fka Residential Funding

Corporation for Relief From Stay is allowed and Residential Funding Company, LLC fka

Residential Funding Corporation is granted relief from the automatic stay pursuant to 11

U.S.C. §362(d) so that it, and its successors and assigns, may proceed to exercise its

rights pursuant to the Note and Mortgage recorded with Fairfield County Registry of

Deeds at Book 432, on Page 496 in accordance with applicable state and federal law and

to commence a summary process action against occupants of that property. This Order

shall be binding and effective despite any conversion of this bankruptcy case to a case

under any other chapter of Title 11 of the United States Bankruptcy Code.

At *Springfield* this 4th day of *November*, 2010.

_____
Honorable Henry J. Boroff
U.S. BANKRUPTCY JUDGE

* effective 12/4/10. The debtor waives no defenses
against the movant under state or federal law

# EXHIBIT K

DOCKET NO. FST-CV-09-5011591-S      : SUPERIOR COURT

RESIDENTIAL FUNDING COMPANY, LLC    : JUDICIAL DISTRICT OF
FKA RESIDENTIAL FUNDING                 STAMFORD/NORWALK
CORPORATION
V.                                   : AT STAMFORD

*THOMAS LACASSE, ET AL.*            :

## AFFIDAVIT OF DEBT

I, <u>Douglass Wilson</u>, being duly sworn, depose and say:

1. I am over the age of eighteen years and believe in the obligation of an oath.

2. I am an authorized signer as a <u>Authorized Officer</u> on behalf of GMAC Mortgage, LLC, the authorized loan servicing agent on behalf of the Plaintiff in this action.

3. As the authorized loan servicing agent for the Plaintiff, Residential Funding Company, LLC fka Residential Funding Corporation, GMAC Mortgage, LLC has the responsibility to accept mortgage payments from the Defendant(s), apply them to the mortgage debt and maintain records of the amount of the debt.

4. I am personally familiar with the books and records maintained on behalf of Residential Funding Company, LLC fka Residential Funding Corporation utilized to generate payoff statements to determine the amount of the debt owed herein, and have reviewed the account of Thomas LaCasse, the Defendant(s), in this matter. The books and records utilized to determine the amount of the debt are generated in the usual and ordinary course of business and the information contained therein is entered into the records within a reasonable time after the transaction reflected therein.

5. There is due and owing to the Plaintiff on the Note dated January 30, 2006 made by the makers thereof, in the original principal amount of 650,000.00, a sum computed as follows:

| | |
|---|---|
| Principal | $ 649,974.31 |
| Interest from 12/01/2008 to 09/27/2011 | 70,177.95 |
| Pre- acceleration Late Charges | 1,724.67 |
| Private Mortgage Insurance Premiums | |

THIS LAW FIRM IS A DEBT COLLECTOR.  ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

| | |
|---|---|
| Real Estate Taxes Advanced | 37,516.46 |
| Hazard Insurance Premiums Advanced | 24,652.00 |
| Property Inspections | 237.25 |
| Other (Itemized as follows:) | |
|    Securing Property | 120.00 |
|    Trip Charges | 35.00 |
|    Property Preservation | 2,184.50 |

TOTAL $ 786,622.14

Current Interest Rate as of the Date of the Affidavit      3.000%
Current Per Diem as of the Date of the Affidavit    $ 53.42

5.   I know of no setoffs or counterclaims to this account.



[Signature & Name of Officer] Douglass Wilson
GMAC Mortgage, LLC

Subscribed and sworn to before me this _24_ day of _Oct_ __
2011.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Tamika Scott, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 27, 2014
Member, Pennsylvania Association of Notaries

Notary Public
My Commission expires: 11·27·2014

SEAL

Lacasse, Thomas

# EXHIBIT L

# *Fair Debt Figures*    As Of: 1/20/2012

Loan Number:  7425910742

THOMAS LACASSE
153 VALLEY FORGE ROAD
WESTON          CT 06883

| | |
|---|---|
| Loan Next Due : | 1/1/2009 |
| Interest Good | 1/20/2012 |
| Loan Int Rate | 6.5 |
| Principal Balance : | $649,974.31 |
| Deferred Principal : | |
| Suspense : | |
| Pre/Accelerated Late | $1,724.67 |
| Accrued Interest : | $76,303.75 |
| Advanced Escrow : | $68,139.10 |
| Escrow Surplus : | $0.00 |

## Breakdown for Other Fees and Expenses

| | |
|---|---|
| PROP INSPECTION FE | $288.50 |
| EXPENSE ADVANCES | $8,461.20 |
| CORP ADV 3 DRM | $249.00 |
| | 0 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| | $0.00 |
| Total Amt: | **$805,140.53** |