# **Exhibit I**

**Reply to RFC's Objection to Motion to Vacate**

DOCKET NO. CV - 09- 5011591 S      :      **SUPERIOR COURT**

**RESIDENTIAL FUNDING COMPANY LLC**

     :      **JUDICIAL DISTRICT OF**
                              **STAMFORD / NORWALK**

**VS:**

     :      **AT STAMFORD**

**THOMAS J. LA CASSE**      :      **FEBRUARY 7, 2012**

## REPLY TO PLAINTIFF RESIDENTIAL FUNDING COMPANY, LLC'S OBJECTION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND DISMISS WITH PREJUDICE

The Defendant, Thomas J. La Casse, in the above-captioned matter hereby files his Reply to the Plaintiff's Objection dated January 23, 2012, entitled Residential Funding Company, LLC's Objection To Defendant's Motion To Vacate Judgment And Dismiss With Prejudice. In conjunction with the valid reasons as set forth in Defendant's motion, and as Defendant factually and procedurally sets forth below, Plaintiff's Objection should be overruled:

1. Plaintiff incorrectly states in its objection that La Casse claims "without any evidentiary foundation" that RFC did not hold the note. What Plaintiff fails to cite or acknowledge is the fact that Plaintiff has the burden of proving its standing, as it has been challenged and contested.

2. Count/Section II of Defendant's *Motion To Vacate Judgment And Dismiss With Prejudice* clearly raises and challenges the lack of standing and Plaintiff's failure to attach any supporting alleged evidence to its complaint. Moreover, Defendant's motion clearly argues the fact that Plaintiff has yet to produce an original "wet ink" note with a proper dated endorsement which would definitively provide the court with substantiation of the allegations that Plaintiff was the holder in due course of the alleged note at the time of filing of this action (see Park National Bank v. 3333 Main, LLC, 127 Conn. App. 774 (2011) (AC 32300).

(2)

3. In the appellate case of <u>Park National Bank v. 3333 Main, LLC</u>, the judges confirmed

    that it was indeterminate when the plaintiff came into possession of the alleged note as

    there was no dated endorsement to evidence Plaintiff's standing at the commencement of

    the action. The Appellate Court stated, "In light of the documents before the court,

    showing discrepancies as to the <u>date of the transfer of the note</u>, as well as the defendant's

    argument that the plaintiff had not demonstrated that it was the holder of the note when

    this complaint was filed, the court improperly formed a legal conclusion without

    establishing the factual predicate for the court's subject matter jurisdiction."

4. The legally insufficient and slanderous argument that Defendant has been delaying and/or

    is further attempting to delay the seeking of foreclosure for over 2 ½ years, fails, as

    standing and the jurisdiction of the court can be challenged at any time through an appeal.

    The fact that Defendant had no legal representation or legal capacity to realize Plaintiff's

    lack of proper standing prior to the entry of judgment is irrelevant to the motions now

    before the court and Defendant's constitutional rights given by the fourteenth amendment

    to the United States Constitution. "The plaintiff bears the burden of proving subject

    matter jurisdiction, whenever and however raised." <u>Fink v. Golenbock</u>, 238 Conn. 183,

    199 n.13, 680 A.2d 1243 (1996).

5. Plaintiff inappropriately, and without any legal authority or basis, throughout the entirety

    of its subject objection refers to Defendant's filing of Bankruptcy and his continued

    defense of this action as a "scheme to delay this matter as long as possible." The fact is

    that Defendant has availed himself of his constitutional rights. The Defendant did not

    obtain counsel until just over a year ago. As noted, challenge of jurisdiction can be raised

    at any time. It only became obvious to Defendant in recent months, after he retained

    counsel, that it is in fact the Plaintiff who is operating under a scheme of filing false and

    fraudulent documents meant to mislead this court. Defendant is appalled that Plaintiff

has recited the name of the infamous Robo Signer, Jeffery Stephan. At page 3 of

Plaintiff's Objection to Defendant's Motion to Vacate Judgment and Dismiss with

Prejudice, Plaintiff incredulously states "RFC submitted an Affidavit of Debt signed by

Jeffrey Stephan (the "Affidavit"). Mr. Stephan stated that he had reviewed the books and

records maintained on behalf of RFC…..". This is indeed an incredulous statement in

view of the sworn testimony in two Jeffery Stephan depositions (see Exhibit A).

6. Mr. Stephan admits to signing over Ten (10,000) Thousand documents per month without

reviewing them. The Court should take judicial notice that the shocking revelations of

Jeffrey Stephan, discovered by two State of Maine attorneys caused a halt to foreclosures

in twenty three (23) different states (See Defendant's Exhibit B). In addition there are

numerous Jeffrey Stephan's signatures that are unidentifiable squiggles, very dissimilar

and clearly not signed by the same person (See Exhibit C).

7. Defendant also references the MERS defense. Defendant is well aware of the <u>RMS

Residential Properties, LLC v. Miller</u> case, 2011 WL 6033011. Subject case is

distinguished by the Affidavit executed by Defendant La Casse challenging the

presumption that the Plaintiff was the rightful owner and holder of the note. Again, this

Court should take notice of the sundry newspaper articles in the New York Times and the

Wall Street Journal, which discuss the lack of authority of MERS. As recently as

Saturday, February 4, 2012 the New York Times recites the action of New York Attorney

General Eric T. Schneiderman, who is suing several major banks, as quoted in the Times

article, "accusing them of fraud in their use of an electronic data base that he said resulted

in deceptive and illegal practices, including false documents in foreclosure proceedings".

The electronic data base he refers to is MERS (See Exhibit D, E-Mass), which references

said lawsuit, i.e, The State of New York Complaint on behalf of the people of New York

dated February 3, 2012, filed in the Supreme Court State Of New York, Kings County.

8. Finally, as will become evident by further Defendant pleadings filed this date, there have
been gross abuses by Plaintiff in violation of Federal Bankruptcy laws and a direct
violation of Federal Bankruptcy Judge Henry J. Boroff Court Order (See Exhibit F).
Plaintiff motion to Reset the Law Day and Re-enter Judgment filed on November 30,
2010, Court Document # 126, is, as noted, unlawful and unconscionable. Such
reprehensible conduct is plead and illuminated in our Motion to Vacate Judgment and
Dismiss with Prejudice Plaintiff, highlighting the myriad of carried out criminal acts,
breaking and entering, vandalism and theft.

9. The Plaintiff's citing and argument of the filing of a second and subsequent Affidavit Of
Debt to the Stephan Affidavit, has no bearing on the consequences that Plaintiff should
face, inclusive, but not limited to dismissal with prejudice for the filing of false and
misleading documents in attempt to validate the alleged debt and seek foreclosure. The
perpetrating of fraud and/or crimes to achieve success in foreclosing on Mr. LaCasse and
other unsuspecting homeowners in the State of Connecticut is not an excusable act and
practice. In the instant case, Thomas La Casse and his family have suffered grievous
harm, both financially and emotionally as a result of the multiple counts of illegal acts
and practices acted upon by Plaintiff and/or its agents (Exhibit G – List Of Stolen &
Damaged Items In Excess Of $380,000). The facts and information as plead in the
Defendant's Motion To Vacate Judgment And Dismiss With Prejudice and supporting
Memorandum are hereby incorporated herein this pleading.

10. It should be noted that the Court has been duped and mislead by the Stephan Affidavit
which ultimately spurred the Court to grant the standing Default Judgment. Any affidavit
that follows Stephan's inadmissible hearsay pleading cannot be used and/or otherwise
relied upon by this Court to validate the contested alleged debt. Jeffrey Stephan is not an

Affiant who holds any personal first- hand knowledge, and does not meet the standards of

admissibility of evidence in the State of Connecticut. Affidavits that hold any legal

sufficiency and weight in Connecticut that lead to the substantiation of the merits of

allegations in a Complaint are those that are based upon personal knowledge. Relevantly,

in the matter of Winkleman v. Dohm, Superior Court, judicial district of Waterbury,

Docket No. 096682 (April 27, 1992, Barnett, J.) (6 Conn. L. Rptr. 382)], the court held

that an affidavit in support of a motion to dismiss must meet the same requirements of an

affidavit in support of a motion for summary judgment . The statements contained in the

affidavit must be based on personal knowledge. Defendant further cites the case of JP

Morgan Chase Bank v. Porzio, Michael, et al, Superior Court, Judicial district of

Stamford, Docket No. CV-095019388S (October 11, 2011, Mintz, Douglas C.), the court

granted Defendant's Motion To Strike Lost Note Affidavit of Christie Hill, as it was not

based upon personal knowledge.

**WHEREFORE**, The Defendant, Thomas J. La Casse, based on the foregoing facts and

information respectfully asks the Court to Overrule Plaintiff's Objection. The Plaintiff's

conduct, acts and practices as stated in the Defendant's associated motion is clearly

unconscionable. The Superior Court at Stamford is a Court of Equity, and as our Connecticut

Supreme Court has clearly stated, a foreclosure is peculiarly an equitable proceeding. "Because

a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant

circumstances to ensure that complete justice is done." City Savings Bank v. Lawler, 163 Conn.

149, 155, 302 A.2d 252 (1972); Hartford Federal Savings & Loan Assn. V. Lenczyk, 153 Conn.

457, 463, 217 A.2d 694 (1966).

**The Defendant**

*Respectfully Submitted,*

By:_____-042191-_____

Paul S. Nakian, Plaintiff's Attorney

90 Campbell Drive
Stamford, CT  06903
Tel: 203-357-7777 - Office
      203-356-9490 – Fax
Email: NakianLaw@aol.com

Juris #042191


## CERTIFICATE OF SERVICE

The Defendant, Thomas J. La Casse, hereby certifies that a true and correct copy of the

foregoing Defendant's *Reply To Plaintiff's Objection To Defendant's Motion To Vacate*

*Judgment And Dismiss With Prejudice* has been furnished via U.S. First Class Mail on February

7, 2012 to the office of the Plaintiff's counsel Jennifer G. Farrell, of Dowley & Associates, at the

address of 116 Washington Street, Middletown, CT  06457.


**Certification Of Service By The Defendant:**

-042191-
_____

Thomas J. La Casse by his Attorney
*Paul S. Nakian, Esq.*

# EXHIBIT A

*(A-1)*

## HIGHLIGHTS FROM A DEPOSITION OF JEFFREY STEPHAN

By Lynn E. Szymoniak, Esq. Ed., Fraud Digest (www.frauddigest.com) July 18, 2010

These are highlights from the deposition of Jeffrey B. Stephan, taken June 7, 2010, in a foreclosure case in Maine, Federal National Mortgage Association v. Nicole M. Bradbury, et al., Maine District Court, District Nine, Division of Northern Cumberland, Docket No. BRI-RE-09-65.  The deposition was taken by Attorney Thomas Cox of Portland, Maine.

Jeffrey Stephan says his current title is team leader of the document execution team for GMAC.  He estimates that he signs between 8,000 and 12,000 documents monthly.  He supervises a team of 14 employees.

Mortgage Assignments and Affidavits in support of Summary Judgment signed by Stephan have been used by GMAC, FANNIE & FREDDIE in over 100,000 foreclosure cases.

"LPS" in the last line refers to Lender Processing Services in Jacksonville, Florida.

In a previous deposition, Stephan stated that the notaries who notarize his signature are often not actually present in the room with him when he signs documents.

Despite all of the mounting evidence and admissions, Jeffrey Stephan, Scott Anderson, Bryan Bly, Linda Green, Erica Johnson-Seck, Christina Trowbridge and the other "bank officers" employed by the companies serving the securitized mortgage-backed trust industry will be back at their desks Monday morning, pens (or rubber stamps) in hand.

### Page 16-17, Lines 17-25, 2-11

Q: What training have you received?

A: I received side-by-side training from another team leader to instruct me on how to review the documents when they are received from my staff.

Q: Who was that person?

A: That person, at the time, I believe, was a gentleman named Kenneth Ugwuadu. U-G-W-U-A-D-U. He is no longer with GMAC.

Q: How long did that training last?

A: Three days.

# EXHIBIT A

(A-2)

Q: Were there any written or printed training materials or manuals used as a part of that training?

A: No.

**Page 20, Lines 19-24:**

Q.: In your capacity as the team leader for the document execution team, do you have any role in the foreclosure process, other than the signing of documents?

A: No.

**Page 54, Lines 12-25:**

Q: When you sign a summary judgment affidavit, do you check to see if all of the exhibits are attached to it?

A: No.

Q. Does anybody in your department check to see if all the exhibits are attached to it at the time that it is presented to you for your signature?

A: No.

Q: When you sign a summary judgment affidavit, do you inspect any exhibits attached to it?

A: No.

**Page 62-63, Lines 23-25, 2-6:**

Q: Is it fair to say when you sign a summary judgment affidavit, you don't know what information it contains, other than the figures that are set forth within it?

A: Other than the borrower's name, and if I have signing authority for that entity, that is correct.

**Page 69, Lines 2-20:**

Q: Mr. Stephan, referring you again to the bottom line on Page 1 of Exhibit 1, it states: I have under my custody and control, the records relating to the mortgage transaction referenced below.

2

# EXHIBIT A
(A-3)

It's correct, is it not, that you did not have in your custody any records of GMAC at the time that you signed a summary judgment affidavit?

A: I have the electronic record. I do not have papers.

Q: You have access to a computer, is that what you mean?

A: Yes.

(objections omitted)

**Page 45, Lines 2-11:**

Q: Mr. Stephan, do you recall testifying in your Florida deposition in December with regard to your employees, and you said, quote, they do not go into the system and verify that the information is accurate?

A: That is correct.

**Page 41, Line 19:**

Q: Do your employees have any direct communication with outside counsel?

A: Yes, through the LPS System.

#

Pro Bono

# How 2 Pro Bono Lawyers Uncovered 'Robo-Signer,' Halting Foreclosures in 23 States

Posted Sep 23, 2010 7:20 AM CST
By Debra Cassens Weiss

A Maine pro bono lawyer's suspicions helped uncover a "robo-signer" mortgage employee and halt mortgage foreclosures in 23 states.

Pro bono lawyer Thomas Cox, who is retired from law practice, was representing a homeowner in a foreclosure case when he came across several documents signed by one GMAC employee: Jeffrey Stephan.

Cox, a lawyer in South Portland, Maine, turned for help to Geoffrey Lewis, a lawyer in Fryeburg, the Press Herald reports. In June, Cox deposed Stephan and learned that the employee of GMAC, now known as Ally Financial, was signing off on documents without verifying their accuracy.

It turned out that Stephan was signing 10,000 foreclosure documents a month, giving him only 1.5 minutes to review each document. Cox had uncovered information similar to that revealed in a December deposition. Both depositions were cited in a Washington Post story that says the revelations led Ally to halt foreclosures in 23 states and could pave the way to foreclosure challenges across the country.

"What blew me away," Cox told the Portland Press Herald, "was that Stephan admitted he didn't have custody of the file. It was scanned into a computer and he didn't even look at it. He didn't know if it was a true and accurate copy. He didn't read the affidavits. He just checked the numbers."

Cox and Lewis are volunteers with the pro bono group Maine Attorneys Saving Homes. They are still trying to get a summary judgment overturned in their client's case.

Before retiring, Cox helped collect money from businesses that had borrowed money from a failed Maine bank, according to The Home Equity Theft Reporter blog, citing a story from the Morning Sentinel.

Additional coverage:

Washington Post: " 'Robo-signer' played quiet role in huge number of foreclosures"

Washington Post: "Amid mountain of paperwork, shortcuts and forgeries mar foreclosure process"

Washington Post: "Amid mountain of paperwork, shortcuts and forgeries mar foreclosure process"

4ClosureFraud.org: "Highlights From a Deposition of Jeffrey Stephan GMAC"

Copyright 2012 American Bar Association. All rights reserved.

# EXHIBIT B

# EXHIBIT C-1

VOL 489 PG 786

After recording please return to:
HUNT LEIBERT JACOBSON PC
50 Weston Street
Hartford CT 06120

1/53E

## ASSIGNMENT OF MORTGAGE

000384

POOL NUMBER_____

KNOW YE THAT Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc, ( Assignor"), having an office and place of business at 3300 SW 34th Avenue Suite 101, Ocala, FL 34474 for the consideration of One Dollar and other valuable considerations, does hereby assign to **Residential Funding Company, LLC fka Residential Funding Corporation** ("Assignee"), having an address of c/o GMAC Mortgage, LLC, 4 Walnut Grove Drive, Horsham, PA 19044, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Thomas LaCasse to Mortgage Electronic Registration Systems, Inc. as Nominee for Homecomings Financial Network, Inc. dated January 30, 2006 and recorded on February 06, 2006 in Volume 432 at Page 496 of the Weston Land Records , in or to the property described in said mortgage deed situated in the Town of Weston, County of Fairfield and State of Connecticut, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee, its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the ___ day of ___, 2009, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by _____ Jeffrey Stephan _____ who is duly authorized and empowered.

Signed, sealed and delivered
in the presence of:

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR HOMECOMINGS
FINANCIAL NETWORK, INC

By _____

Its Vice President

STATE OF ___     :
                         : ss.
COUNTY OF Montgomery

Jeffrey Stephan
Vice President

On this ___ day of ___, 2009, before me personally came Jeffrey Stephan to me known, who being by me duly sworn, did depose and say that he/she is a Vice President of MERS, INC, which executed the above instrument; that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

Notary Public
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Nikole Stephan, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Aug. 11, 2010
Member, Pennsylvania Association of Notaries

**PROPERTY:**
153 Valley Forge Road
Weston, CT 06883
Lacasse, Thomas
File 01625-80701

RECEIVED FOR RECORD
At _____
AUG 1 0 2009    11:32AM

Attest _____

*01625-80701$8*

# EXHIBIT C
## (C-2)

INSTRUMENT#: 2010051287, BK: 19717 PG: 1918 PGS: 1918 - 1918 02/12/2010 at
02:13:28 PM,   DEPUTY CLERK:YROCHE Pat Frank,Clerk of the Circuit Court
Hillsborough County

This space is for recording purposes only

Prepared by
Record Reference

MIN: 100226000000019296
MERS PHONE NUMBER 1.888.679.6377

## ASSIGNMENT OF MORTGAGE
### KNOW ALL MEN BY THESE PRESENTS:

THAT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for OWNIT MORTGAGE
SOLUTIONS, INC.

Residing or located at one HOMECOMINGS FINANCIAL, LLC, ONE MERIDIAN CROSSING, SUITE 100,
MINNEAPOLIS, MN 55423, herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and
other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell,
assign, transfer and set over unto US BANK NATIONAL ASSOCIATION, AS TRUSTEE residing or located at C/O
HOMECOMINGS FINANCIAL, LLC, ONE MERIDIAN CROSSING, SUITE 100, MINNEAPOLIS, MN 55423 herein
designated as the assignee, the mortgage executed by JOSE A. GARRIDO AND IRIS GARRIDO, HUSBAND AND WIFE
AND JOSE W. GARRIDO, JOINED BY OMARIS CLAUDIO GARRIDO recorded in HILLSBOROUGH County, Florida at
book 16652 and page 1960 encumbering the property more particularly described as follows:

LOTS 130, 131, 132 AND 133 LESS THE PART LYING WITHIN 10 FEET OF THE 20 FOOT RIGHT OF WAY FOR
CLAY PIT ROAD, MANGO HILLS SUBDIVISION, AS RECORDED IN PLAT BOOK 12 PAGE 23 OF THE PUBLIC
RECORDS OF HILLSBOROUGH COUNTY, FLORIDA

together with the note and each and every other obligation described in said mortgage and the money due and to
become due thereon.

TO HAVE AND TO HOLD the same unto the said assignee forever, but without recourse on the undersigned.

Pursuant to the provisions of Sec. 559.271, Florida Statutes, the within named assignee has the power and authority to
collect, conserve and to act or to lease or to encumber, or otherwise to manage and dispose of the above described
mortgage and the real property encumbered thereby.

In Witness Whereof, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its
proper corporate officers and its corporate seal to be herein affixed, this ___ day of _____, 2010 but
effective as of the 17th day of November, 2009.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
as nominee for OWNIT MORTGAGE SOLUTIONS, INC.
(CORPORATE SEAL)

BY
PRINT NAME
TITLE   Jeffrey Stephan
        Vice President

ATTEST
WITNESS
Print Name

Print Name Camaris Ducktare

STATE OF
COUNTY OF   Montgomery

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state,
on this the ___ day of _____, 2010, within my jurisdiction, the within named
Jeffrey Stephan who is personally known to me and who acknowledged to me that (s)he is
_____ and for and on behalf of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for OWNIT MORTGAGE SOLUTIONS, INC. and as its act and deed (s)he executed the
above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for OWNIT MORTGAGE SOLUTIONS, INC. to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 21 day of Jan
2010

_____, NOTARY PUBLIC

# ASSIGNMENT OF MORTGAGE    EXHIBIT C

(C-3)

FOR VALUE RECEIVED, on or before October 03, 2009, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM, ("Assignor") whose address is assigned, transferred and conveyed to: GMAC MORTGAGE, LLC, ("Assignee") whose address is 1100 Virginia Drive, Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated October 21, 2006 and recorded November 30, 2006 in Official Records Book 5961 at Page 3533 of the public records of VOLUSIA County, Florida, encumbering the following-described real property:

LOT 102, FAIRGREEN UNIT NO 1B, ACCORDING TO THE PLAT THEREOF AS RECORDED IN MAP BOOK 33, PAGE(S) 183, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S):  RON CERELLI

IN WITNESS WHEREOF, Assignor has executed and delivered this Instrument on _____, 2009.

Witness
Print Name  Maring Gerard

By: _____
Print Name:  Jeffrey Stephan
Title: Vice President    Vice President

Attest:
Print Name:
Witness    Title:    John Kerr, Assistant Secretary
Print Name:

(Affix Corporate Seal)

STATE OF  PA
COUNTY OF  Montgomery

BEFORE ME, the undersigned, personally appeared _____ Jeffrey Stephan and John Kerr, Assistant Secretary as VP and Assistant Secretary respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM this ___ day of ___ 2009.

Notary Public:
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Trina Wiltbank, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Sept. 10, 2013
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Maria Zuniga
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
F09102196-GMAC MORTGAGE, LLC-

FILE_NUMBER: F09102196    DOC_ID: M001100

*F09102196*    *M001100*

# ASSIGNMENT OF MORTGAGE

**EXHIBIT C**

(C-4)

**FOR VALUE RECEIVED**, on or before October 03, 2009, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM,** ("Assignor") whose address is _____ assigned, transferred and conveyed to: **GMAC MORTGAGE, LLC**, ("Assignee") whose address is 1100 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated August 08, 2003 and recorded October 06, 2003 in Official Records Book 5180 at Page 2878 of the public records of VOLUSIA County, Florida, encumbering the following-described real property:

ALL THAT PARCEL OF LAND IN CITY OF NEW SMYRNA BEACH, VOLUSIA COUNTY, STATE OF FLORIDA, AS MORE FULLY DESCRIBED IN DEED BOOK 3847, PAGE 1722, ID NO. 7430-04-05-0070, BEING KNOWN AND DESIGNATED AS:

LOTS SEVEN (7), EIGHT (8), NINE (9), TEN (10) AND ELEVEN (11), BLOCK 5, UNIT 2, SPANISH MISSION HEIGHTS SUBDIVISION ACCORDING TO THE PLAT THEREOF AS RECORDED IN MAP BOOK 23, PAGE 119 OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S): CONNIE V. TEAGUE

**IN WITNESS WHEREOF**, Assignor has executed and delivered this Instrument on _____, 2009.

Witness
Print Name: Yolanda S Garrett

Witness
Print Name: IRA WILSON

By: _____
Print Name: John Kerr, Vice President
Title: Vice President

Attest: _____
Print Name: Jeffrey Stephan
Title: Ass't Secretary

(Affix Corporate Seal)

STATE OF PA
COUNTY OF MONTGOMERY

BEFORE ME, the undersigned, personally appeared JOHN KERR and Jeffrey Stephan as V P and Ass't Secretary respectively, and known to me to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION DBA DITECH.COM this 26th day of OCTOBER 2009.

Notary Public: _____
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2010
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:

FILE_NUMBER: F09102194          DOC_ID: M001100

**\*F09102194\***          **\*M001100\***

# ASSIGNMENT OF MORTGAGE    **EXHIBIT C**
## (C-5)

**FOR VALUE RECEIVED,** on or before September 30, 2009, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION,** ("Assignor") whose address is _____ _____ assigned, transferred and conveyed to: GMAC MORTGAGE, **LLC,** ("Assignee") whose address is 1100 Virginia Drive, , Fort Washington, PA 19034, its successors and/or assigns, all of the right, title, and interest of Assignor in and to that certain Mortgage (the "Mortgage") dated July 25, 2005 and recorded August 13, 2005  in Official Records Book 5625 at Page 1366 of the public records of VOLUSIA County, Florida, encumbering the following-described real property:

> **LOT 19, SAXON RIDGE, PHASE 1, ACCORDING TO THE PLAT THEREOF AS RECORDED IN MAP BOOK 48, PAGE 21, OF THE PUBLIC RECORDS OF VOLUSIA COUNTY, FLORIDA.**

as the same may have been amended from time to time; together with the Note and indebtedness secured thereby.

MORTGAGOR(S):  JASON P. PIKE, and FLORENCE PIKE

**IN WITNESS WHEREOF,** Assignor has executed and delivered this instrument on _____, 2009.

Witness
Typed Name: Heather Renhart

Witness
Typed Name: Laura Craft

By: _____
Typed Name:    **Jeffrey Stephan**
Title: Vice President    **Vice President**

Attest: _____
Typed Name:    **John Kerr**
Title: _____    **Assistant Secretary**

(Affix Corporate Seal)

**Jeffrey Stephan**
**Vice President**

**STATE OF** _____
**COUNTY OF** _____ Montgomery

BEFORE ME, the undersigned, personally appeared _____
and **John Kerr** as ___ and **ASST Secretary**
respectively **Assistant Secretary** to be the persons that executed the foregoing instrument, and acknowledged that they executed the foregoing as its duly authorized officers and that such execution was done as the free act and deed of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS NOMINEE FOR GMAC MORTGAGE CORPORATION** this ___ day of _____, 2009.

Notary Public:
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Mary Lynch, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Nov. 3, 2010
Member, Pennsylvania Association of Notaries

Recording requested by, prepared by and return to:
Maria Zuniga
Florida Default Law Group, P.L.
P.O. Box 25018
Tampa, Florida  33622-5018
F09101527-GMAC MORTGAGE, LLC-

FILE_NUMBER: F09101527

DOC_ID: M001100

**\*F09101527\***

**\*M001100\***

**The New York Times** Reprints



This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.

February 3, 2012

# New York Sues 3 Big Banks Over Mortgage Database

By REUTERS

Attorney General Eric T. Schneiderman of New York sued three major banks on Friday, accusing them of fraud in their use of an electronic mortgage database that he said resulted in deceptive and illegal practices, including false documents in foreclosure proceedings.

Mr. Schneiderman, co-chairman of a new mortgage crisis unit under President Obama, filed a lawsuit against Bank of America, Wells Fargo and JPMorgan Chase in New York State Supreme Court in Brooklyn.

The database, called the Mortgage Electronic Registration System or MERS, was created in the mid-1990s for tracking mortgage ownership. It is a collaboration of top mortgage servicers, mortgage insurers and Fannie Mae and Freddie Mac, the government entities that hold many of the country's mortgages.

"The mortgage industry created MERS to allow financial institutions to evade county recording fees, avoid the need to publicly record mortgage transfers and facilitate the rapid sale and securitization of mortgages en masse," Mr. Schneiderman said.

"By creating this bizarre and complex end-around of the traditional public recording system," Mr. Schneiderman's lawsuit asserts, the banks saved $2 billion in recording fees.

More than 70 million mortgage loans, including millions of subprime loans, have been registered in the MERS system, rather than in local county clerks' offices, according to the lawsuit.

The lawsuit asserts the database is inaccurate and seeks to stop the banks from filing foreclosure actions through MERS and executing false or defective mortgage assignments in New York foreclosure proceedings.



# EXHIBIT D
(D-1)

Mr. Schneiderman also is seeking all profits obtained through fraudulent and deceptive practices and other damages, including $5,000 for each violation of general business law.

Patrick Linehan, a JPMorgan spokesman, and Rick Simon, a Bank of America spokesman, declined to comment on the lawsuit. Ancel Martinez, a Wells Fargo spokesman, said the company was reviewing the lawsuit and did not have "anything to add at this time." Janis L. Smith, a spokeswoman for Merscorp and its subsidiary, MERS, said in a statement that the firms complied with the law and mortgage regulations.

"Federal and state courts around the country have repeatedly upheld the MERS business model, and the validity of MERS as legal mortgagee and nominee for lenders," the MERS statement said. "We refute the attorney general's claims and will defend the case vigorously in court."

# EXHIBIT D

(D-2)

**The New York Times** Reprints



This copy is for your personal, noncommercial use only. You can order presentation-ready
copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool
that appears next to any article. Visit www.nytreprints.com for samples and additional
information. Order a reprint of this article now.

December 1, 2011

# Massachusetts Sues 5 Major Banks Over Foreclosure Practices

By **GRETCHEN MORGENSON**

Citing extensive abuses of troubled borrowers across Massachusetts, the state's attorney general sued the nation's five largest mortgage lenders on Thursday, seeking relief for consumers hurt by what she called unfair and deceptive business practices.

In addition to creating a new and significant legal headache for the banks named in the suit — Bank of America, JPMorgan Chase, Citigroup, Wells Fargo and GMAC Mortgage — the Massachusetts action diminishes the likelihood of a comprehensive settlement between the banks and federal and state officials to resolve foreclosure improprieties.

Also named as a defendant in the Massachusetts suit was the electronic mortgage registry known as MERS, an entity set up by lenders to speed property transfers by circumventing local land recording officials.

The attorney general, Martha Coakley, and her investigators contend that the banks improperly foreclosed on troubled borrowers by relying on fraudulent legal documentation or by failing to modify loans for homeowners after promising to do so. The suit also contends that the banks' use of MERS "corrupted" the state's public land recording system by not registering legal transfers properly.

"There is no question that the deceptive and unlawful conduct by Wall Street and the large banks played a central role in this crisis through predatory lending and securitization of those loans," Ms. Coakley said at a news conference announcing the lawsuit. "The banks may think they are too big to fail or too big to care about the impact of their actions, but we believe they are not too big to have to obey the law."

Ms. Coakley has been among the most aggressive state regulators in her pursuit of financial institutions involved in the credit crisis. In addition to her inquiry into foreclosure improprieties in Massachusetts, she

## EXHIBIT E
(E-1)

has also conducted far-reaching investigations into predatory lending and securitization abuses.

Since 2009, Ms. Coakley has extracted more than $600 million in restitution and penalties from lawsuits against mortgage originators like Option One and Fremont Investment and Loan and Wall Street firms like Goldman Sachs and Morgan Stanley, which bundled loans into mortgage securities.

Officials at all of the banks issued statements saying they would fight the suit. Most of them also indicated dismay that Massachusetts had taken action during negotiations to reach a settlement over the types of practices highlighted in the case.

"We are disappointed that Massachusetts would take this action now," said Tom Kelly, a Chase spokesman, "when negotiations are ongoing with the attorneys general and the federal government on a broader settlement that could bring immediate relief to Massachusetts borrowers rather than years of contested legal proceedings."

Lawrence Grayson, a Bank of America spokesman, said: "We continue to believe that collaborative resolution rather than continued litigation will most quickly heal the housing market and help drive economic recovery."

And Vickee Adams of Wells Fargo said, "Regrettably, the action announced in Massachusetts today will do little to help Massachusetts homeowners or the recovery of the housing economy in the Commonwealth."

But as Ms. Coakley made clear during the news conference, her office had come to view as unacceptable the negotiating stance taken by the banks in the protracted settlement talks.

"When those negotiations began over a year ago, I was hopeful that we would be able to reach a strong and effective solution," she said. "It is over a year later and I believe the banks have failed to offer meaningful relief to homeowners."

Delaware, Nevada and New York have also objected to the direction the settlement negotiations were taking.

Kurt Eggert, a professor at Chapman University School of Law in California who is an expert in mortgages and securitization, said the Massachusetts lawsuit was a significant step because it opened the banks' practices to far greater scrutiny than they had been subject to.

"So far the servicers have escaped any real review or punishment for their bad practices because federal regulators have by and large given them a pass on whether they followed the law in foreclosures," Mr.

# EXHIBIT E
(E-2)

Eggert said. "This lawsuit argues that they haven't followed the law and that they can't just fix all their problems after the fact."

Among the misconduct cited in the Massachusetts complaint were 14 cases of foreclosures by institutions that had not shown proof that they had the legal right to seize the underlying properties when they did so. All the banks also deceived troubled borrowers, the complaint said, about the loan modification process. For example, some banks incorrectly advised borrowers that they would receive priority treatment if they were more than 90 days delinquent on their loans. Other borrowers were misled when told that they must be more than two months' delinquent to receive a loan modification, it said.

Although Mr. Eggert said that the banks were likely to argue that a state like Massachusetts had no right to bring such a case against federally regulated institutions, he said that the Dodd-Frank legislation restricted the ability of federal authorities to bar states from acting in such cases.

"If the state can go forward and do real discovery, it will be the first time that anyone has really dug into the servicers' files to see what they have done," he added. "The feds conducted an investigation where they looked at very few files, and here the state could demand to see a lot."



# EXHIBIT E

(E-3)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

# EXHIBIT F

In Re:                                          Chapter 7
Thomas James La Casse                           Case No. 10-30088
                                                Honorable Henry J. Boroff

        Debtor

_____/

### ORDER RE: MOTION OF RESIDENTIAL FUNDING COMPANY, LLC FKA RESIDENTIAL FUNDING CORPORATION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. SECTION 362

Residential Funding Company, LLC fka Residential Funding Corporation, by and

through its attorneys Orlans Moran PLLC, having filed a Motion for Relief From Stay

regarding Real Property known and numbered as 153 Valley Forge Road, Weston, CT,

notice having been given and good cause appearing therefore, it is hereby ORDERED

that the Motion of Residential Funding Company, LLC fka Residential Funding

Corporation for Relief From Stay is allowed and Residential Funding Company, LLC fka

Residential Funding Corporation is granted relief from the automatic stay pursuant to 11

U.S.C. §362(d) so that it, and its successors and assigns, may proceed to exercise its

rights pursuant to the Note and Mortgage recorded with Fairfield County Registry of

Deeds at Book 432, on Page 496 in accordance with applicable state and federal law and

to commence a summary process action against occupants of that property. This Order

shall be binding and effective despite any conversion of this bankruptcy case to a case

under any other chapter of Title 11 of the United States Bankruptcy Code.

At _Springfield_ this _4th_ day of _November_, 2010.

                                        _[signature]_
                                        Honorable Henry J. Boroff
                                        U.S. BANKRUPTCY JUDGE

✝ effective 12/4/10. The Debtor waives no defenses
against the movant under state or federal law

| | | |
|---|---|---|
| 54 | gold leaf and wooden carved frames | 2,000.00 |
| 55 | antique bobsled made by grandfather and great grandfather, red, 16 feet, front axle | 25,000.00 |
| 56 | antique mahogony loveseat, ball and claw camelback | 4,500.00 |
| 57 | 9 oriental runners and throws different sizes | 3,500.00 |
| 58 | red deacon's bench | 450.00 |
| 60 | set of two bronze cranes | 900.00 |
| 61 | bronze bengal tiger | 1,900.00 |
| 62 | cusinart food processor | 400.00 |
| 63 | Vermont Pottery bowls, plates, platters cups, saucers, and vases | 3,000.00 |
| 64 | Haworth kitchen cabinetry custom made and not yet installed. Imported from England 13 cabinets stolen including a lazy susan, two 36 inch drawer bases, one 30 inch knife drawer unit, five 24 inch uppers with glass doors, one 18 inch pullout lower spice rack, 1 pull out 24 inch trash drawer, diswasher panel, plate rack, wine rack and the rest damaged by vandalism (This cabinet style and finish are no longer in production and need to be replaced.) | 100,000.00 |
| 65 | Subzero side by side regrigerator, with icemaker and water dispenser (custom finished in matching cabinetry panels and hardware by Hayworth) | 13,000.00 |
| 66 | Haworth kitchen ensemble, 74 bottle dual temp wine cooler Jenn-aire | 2,200.00 |
| 67 | Haworth Kitchen ensemble Miele stainless steel dishwasher w/ Hayworth cabinetry | 2,500.00 |
| 68 | Stickley Lamp in copper with glass shade | 2,700.00 |
| 69 | antique bluebird motif pottery jugs original to house and discovered hidden in basement a year after purchase when plumbing and heating construction took place | 9,000.00 |
| 70 | waterford crystal stemware,bowls, candle holders, clocks, vases and other pieces | 3,000.00 |
| 71 | antique sterling flatware service for eight, plateservers, platters and punchbowl | 6,500.00 |
| 72 | Chippendale style straight leg loveseat with scroll arms | 3,100.00 |
| 73 | Scotts rear wheel drive lawn mower | 500.00 |
| 74 | Echo weed whacker | 350.00 |
| 75 | Honda snowblower | 1,200.00 |
| 76 | Makita table saw | 400.00 |
| 77 | Porter cable circular saw | 280.00 |
| 78 | 18th century mahogany handerkercchief table with drop leaf | 2,500.00 |
| 79 | oak drop leaf dining table with bobbin and ring gate legs | 1,800.00 |
| 80 | New england pine tavern table with round top and box stretchers | 3,000.00 |
| 81 | Stickley plant stand with tapered corners and shelf | 1,200.00 |
| 82 | comb back Windsor armchair in ash 19th century | 1,000.00 |
| 83 | Connecticut Windsor armchair with scalloped seat and comb back | 1,700.00 |
| 84 | Oak fire place settle with curved back | 1,800.00 |
| | | |
| Total | | 380,530.00 |

# EXHIBIT G
(G-1)

Partial List of Stolen or damaged property owned by Lacasse family
Stolen/damaged at 153 Valley Forge Road, Weston, CT

| Item No. | Description | Replacement Estimate |
|---|---|---|
| 1 | antique New England rod back Windsor rocking chair | 2,500.00 |
| 2 | baseball card collection located in ten shoeboxes | 8,500.00 |
| 3 | mahogany half-round entrance table with in-lay | 550.00 |
| 4 | antique Chinese rug, 12 x 14 red and blue | 5,600.00 |
| 5 | Mashad Iranian wool rug, 9 x 12 | 7,000.00 |
| 6 | antique copper coach lights, 9 in number | 4,500.00 |
| 7 | antique dragon tapestry in silk with silver and gold thread | 1,500.00 |
| 8 | antique fish serving set in sterling c.1800 | 2,500.00 |
| 9 | antique flint lock pistols set of two | 3,500.00 |
| 10 | antique ewer and basin white with green outlined roses | 1,000.00 |
| 11 | antique horse carriage seat with spindle back and cushions | 2,700.00 |
| 12 | New England blanket chest with two lower drawers | 1,200.00 |
| 13 | two antique candle sconces with mirror back | 1,200.00 |
| 14 | antique mahogany plant stand with inlay | 950.00 |
| 15 | antique solid brass three tier chandelier | 4,500.00 |
| 16 | Mahogany tripod table with pie crust top | 2,200.00 |
| 17 | jelly cabinet in cherry | 800.00 |
| 18 | four antique handblown glass decanters with stoppers | 2,400.00 |
| 19 | antique Iranian Sultanabad wool carpet 9 x 12 | 6,100.00 |
| 20 | Heriz rug from Iran 7.10 x 11.5 | 4,500.00 |
| 21 | Saruk rug from Iran 8.11 x 12,4 | 6,000.00 |
| 22 | Kashan rug from Iran 8. 7 x 12 | 5,000.00 |
| 23 | Heriz rug from Iran 7.10 x 10.2 | 4,200.00 |
| 24 | Mashad Iranian wool rug 8.2 x 11.4 | 7,000.00 |
| 25 | leather motorcycle rucksacks | 500.00 |
| 26 | three black antique gothic Windsor armchairs | 5,400.00 |
| 27 | antique maple chest of drawers | 3,500.00 |
| 28 | antique round marquetry table in mahogany with star-shaped wood inlay | 1,900.00 |
| 29 | antique ladies secretary | 2,700.00 |
| 30 | Tiffany style glass lamp in dragonfly motif with brass base | 600.00 |
| 31 | antique Chippendale style shield back mirror in mahogany | 2,200.00 |
| 32 | antique gold leaf mirror with wheat shaft motif 3' round | 1,900.00 |
| 33 | antique slat back chair with rush seat | 400.00 |
| 34 | antique William & Mary blanket chest | 4,500.00 |
| 35 | antique copper weathervane | 1,900.00 |
| 36 | set of four antique Shaker chairs with round table | 5,200.00 |
| 37 | antique fireplace settle | 2,100.00 |
| 38 | antique Jacobean style gate-legged table | 3,600.00 |
| 39 | hand-forged andirons c.1800 | 2,200.00 |
| 40 | hand-forged hearth crane and pot kettle c.1800 | 3,300.00 |
| 41 | antique tavern table in pumpkin pine | 2,900.00 |
| 42 | collection of antique pewter and brass tavern plates, candlesticks, chargers, bowls, snuffers and goblets | 7,200.00 |
| 43 | antique fireplace backs in cast iron with fleur-de-lis design with hand-wrought fireplace tools, peels and poletrays | 5,800.00 |
| 44 | antique  cherry trestle tablewith wide plank drop leaves with original patina | 6,200.00 |
| 46 | Inlaid crotch mahogany oval dining table with gold medallions in empire style | 4,350.00 |
| 48 | uninstalled Kohler faucets and fixtures in boxes | 4,000.00 |
| 49 | uninstalled Newport Brass faucets including two hand held shower fixtures, seven eight-inch-spread lavatory faucets, a tub filler and two copper kitchen sink faucets. | 9,500.00 |
| 50 | Sony Trinitron 40 inch television | 800.00 |
| 51 | Iran silk Kashan 8 x 12.5 blue and white rug from Iran | 7,000.00 |
| 52 | crystal, brass and marble lamps | 3,600.00 |
| 53 | Artwork from early 1900's featuring a Habadasher shop with gilt wooden frame | 2,000.00 |

# EXHIBIT G



(G-2)