UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

In re:                                              Case No.: 12-12020 (MG)

RESIDENTIAL CAPITAL, LLC, et al.                    Chapter 11

_____x

### MOTION TO (1) DETERMINE THAT BANKRUPTCY ESTATE OWNS TITLE TO NOTE, (2) VOID STATE COURT TITLE TRANSFER, AND (3) ENJOIN POST PETITION STATE COURT PROSECUTION

Phillip Scott ("Borrower"), by attorney Kim DSouza ("Counsel"), in support of the

motion, respectfully states as follows:

### REFERENCES AND INCORPORATIONS

1. On May 6, 2012, Borrower served the Supreme Court of the State of New York,

   County of Westchester, the Court Appointed Foreclosure Referee, and the Bank of

   New York, with the **NOTICE OF BANKRUPTCY AND EFFECT OF**

   **AUTOMATIC STAY** ("**Borrower Notice**"), a copy of which, together with the

   affidavit of service therefore, and the exhibits therein, counsel annexed hereto,

   marked **EXHIBIT A**.

2. Counsel annexed a copy of the **NOTICE OF SECOND FORECLOSURE SALE**

   **DATE**, marked **EXHIBIT B**.

RECEIVED
AUG _ 9 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

3.  Counsel provided the Supreme Court of the State of New York, County of

    Westchester, with a letter, dated August 5, 2013, informing the court that Counsel

    could not obtain a copy the motion filed July 15, 2013.  Counsel annexed a copy of

    the letter, together with the affirmation of service therefore, and the exhibits therein,

    marked **EXHIBIT C**.

4.  Counsel refers to **EXHIBIT A**, **EXHIBIT B**, and **EXHIBIT C** herein, and

    incorporates fully the same, as if set froth again herein at length.

## 1.  <u>BANKRUPTCY ESTATE OWNS TITLE TO NOTE</u>

5.  Borrower resides at 12 Inverness Road, Scarsdale, NY 10593 ("Premises"), and

    executed a mortgage loan promissory note ("Note") secured against the Premises.

6.  RAMP 2005 RZ3, a subsidiary of Debtor, acquired ownership of the Note in 2005,

    and so remained, up to, and including May 14, 2012.

7.  Debtor filed the Chapter 11 bankruptcy petition on May 14, 2012, at which time the

    assets of RAMP 2005 RZ3 passed into the bankruptcy estate.

8. RAMP 2005 RZ3 qualifies as a securitized trust, and issuer of Residential Mortgage Backed Securities ("RMBS"). Purchasers ("Investors") of RMBS appeared, and appear, as creditors in this action.

9. The Bankruptcy Court approved agreement(s) and/or plan(s) providing for the sale of RMBS assets, with proceeds caused to be placed in a liquidating trust, and/or other trust, for creditors.

10. The Bank of New York ("BNY") asserted itself in the instant action as indenture trustee for RAMP 2005 RZ3.

11. On July 29, 2008, BNY commenced a mortgage foreclosure action in the state court for possession of the Premises. BNY did not join Debtor as a party, and did not bring the action on behalf of Debtor.

12. In 2009, the court granted a Judgment of Foreclosure and Sale, and an Order of Reference, in the name of the Bank of New York.

13. In 2012, Borrower discovered new evidence as follows:

    a) MERS milestones, audits, and transfer reports, subpoenaed from Mortgage Electronic Registrations Systems, Inc., and

b) Notice of Bankruptcy and Effect of Automatic Stay, filed by the Debtor in a quiet title action Borrower brought in federal court, and

c) appearance in quiet title action by RFC attorney, stating he had physical possession of the note, and

d) letter from Bank of New York, dated August 27, 2012,

## 2. <u>STATE COURT TITLE TRANSFER VOID</u>

14. A debtor in possession shall have all the rights, and powers, and shall perform all the functions and duties of a trustee serving in a case.

15. The debtor in possession may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a bona fide purchase of real property from the debtor against who applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchase and has perfected such transfer at the time of the commencement of the case.

16. In 2005, RAMP 2005 RZ3 perfected title to the mortgage lien as a bona fide purchaser of an interest in real property, with priority superior to that BNY claims by virtue of the Foreclosure Judgment, and Order of Reference.

17. To the extent that a lien secures a claim against a debtor that is not an allowed secured claim, such lien is void.

4

18. Outstanding indebtedness on the mortgage loan totals about $900,000.00, but would likely appraise at $400,000.00.   As owner of the primary lien against borrower's principal residence, RAMP 2005 RZ3 retains an allowed secured claim, notwithstanding the profound negative equity.

19. By contrast, the negative equity renders Bank of New York's junior lien wholly unsecured, and not an allowed secured claim.

20. Borrower respectfully requests that the court void the judicial lien

3.  **POST PETITION STATE COURT PROSECUTION VIOLATES AUTOMATIC STAY**

21. In, and by, the Borrower's Notice, Counsel wrote:

> **"In the event that a foreclosure sale occurs, without the express directive of the bankruptcy court, Defendant will move the Bankruptcy court for an order for Violation of the Automatic Stay, in which Defendant will request that the Bankruptcy Court void the sale as if it never occurred, and for costs, attorney's fees, sanctions, and/or contempt of court".**

22. 11 U.S.C 362 states that a petition operates as a stay, applicable to all entities, of-

> "(1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of a case under this title;
>
> (2) the enforcement, against the debtor or property of the estate, of a judgment obtained before commencement of the case under this title;

5

(3) any act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate."

23. At various times after Debtor filed the petition, BNY filed motions, served notices, and attempted to hold auctions to transfer title of the property.

24. BNY apparently continues to prosecute that state mortgage foreclosure action, apparently on the grounds that BNY brought the action in its own behalf, and therefore, since BNY does not appear as a creditor in the bankruptcy, the prosecution falls entirely outside of the bankruptcy estate.

25. However, Debtor sold the RMBS owned mortgage loans to third party purchaser(s) for a cash price based on the aggregate unpaid principal balance of the loans. Facilitation of prosecution entirely outside the bankruptcy estate would require the Bank of New York not to include the amount of the note in the aggregate unpaid principal balance of the RMBS.

26. The RMBS investors received, or will receive, payment based, on that cash price. Prosecution outside of the bankruptcy estate would deprive RMBS investors of the cash properly owed for the RMBS asset.

**WHEREFORE,** borrower requests:

a)  declaratory relief determining that the bankruptcy estate owns title to the note and mortgage secured against the premises located at 12 Inverness Road, Scarsdale, NY 10583, and

b)  injunctive relief enjoining, restraining, and prohibiting post-petition prosecution of the mortgage foreclosure action the Supreme Court of New York, County of Westchester, and

c)  money judgment for costs, including attorneys fees.

DATED:

LaGrangeville, NY
August 6, 2013

Kim DSouza, Esq.
Attorney for Borrower, Phillip Scott
1131 Route #55, Suite #6
LaGrangeville, NY 12540
(845) 570-9300

Clerk of the Bankruptcy Court
One Bowling Green
New York, New York 1004-1408

Chambers of Honorable Martin Glen
United States Bankruptcy Court of the Southern District Court of New York
One Bowling Green
New York, New York 10004

Office of the United States Trustee
Southern District of New York
Attention:  Brian Masumoto and Briand Driscoll
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014

Chambers of Hon. Mary H. Smith
Supreme Court of the State of New York, County of Westchester
Westchester County Courthouse
111 Dr. Martin Luther King, Jr. Boulevard
White Plains, New York 10601

Anthony Centone, P.C.
State Court Appointed Foreclosure Referee
244 Westchester Avenue
White Plains, New York 10604

Rosicki, Rosicki, and Associates, P.C.
Attorney for Supreme Court Foreclosure Plaintiff, Bank of New York
26 Harvestor Avenue
Batavia, New York 14020

Steven S. Rand, Esq.
Zeichner, Ellman, & Krause
Attorney for  Supreme Court Foreclosure Plaintiff, Bank of New York
575 Lexington Avenue
New York, New York 10022


Residential Capital LLC
Lewis Kruger, CRO  c/o Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104

Morrison & Foerster LLP
Attention:  Gary Lee, Lorenzo Marinuzzi, and Todd Goren
1290 Avenue of the Americas
New York, New York 10104

Kramer Levin Naftalis & Frankel LLP
Attention:  Kenneth H. Eckstein, Douglas H. Mannal, and Stephan D. Zide
1177 Avenue of the Americas
New York, New York 10036

Ally Financial, Inc.
Attention:  William B. Solomon and Timothy Devine
1177 Avenue of the Americas
New York, New York 10036

Kirkland & Ellis LLP
Attention:  Richard M Cieri and Ray C. Schrock
601 Lexington Avenue
New York, New York 10022

**STATE OF NEW YORK**
**SUPREME COURT:  COUNTY OF WESTCHESTER**

---

THE BANK OF NEW YORK TRUST COMPANY. N.A.,
Plaintiff,

**AFFIRMATION OF SERVICE**

-against-

**INDEX NO: 16483-08**

BARBARA CAMPBELL, MARLENE GATHER
LANGLEY, PHILLIP SCOTT, et. al,
Defendant.

---

STATE OF NEW YORK, COUNTY OF DUTCHESS

The undersigned attorney at law of the State of New York affirms that deponent is Kim DSouza with a place for the purpose of business at 1131 Route 55, Suite #6,  LaGrangeville, NY 12540.

On May 8, 2013, I served the annexed <u>NOTICE OF BANKRUPTCY AND EFFECT OF STAY</u>, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service addressed to each person at the address set forth after each name:

Timothy Menasco, Esq.
Rosicki, Rosicki, and Associates, P.C.
26 Harvestor Avenue
Batavia, New York 14020

Steven S. Rand, Esq.
Zeichner, Ellman, & Krause
575 Lexington Avenue
New York, New York 10022

Chambers of Hon. Mary H. Smith
Supreme Court of New York
Westchester County Courthouse
111 Dr. Martin Luther King Jr. Boulevard
White Plains, NY 12601

On May 6, 2013, I served the annexed <u>NOTICE OF BANKRUPTCY AND EFFECT OF STAY</u> upon each person named below, by personal delivery upon the person, or an authorized agent for the person, at the address set forth delivery:

SUPREME COURT, COUNTY OF WESTCHESTER
C/O Westchester County Clerk
110 Dr. Martin Luther King, Jr. Blvd., Room 330
White Plains, New York 10601

Chambers of Hon. Mary H. Smith
Supreme Court of New York

Westchester County Courthouse
111 Dr. Martin Luther King Jr. Boulevard
White Plains, NY 12601

Anthony Centone, P.C.,
244 Westchester Avenue
White Plains, New York 10604

The undersigned represents the foregoing statement to be true under penalty of perjury.

LaGrangeville, NY
May 8, 2013

Kim DSouza, Esq.
Attorney for Defendant
1131  Route 55, Suite #6
LaGrangville, NY 12540
(845) 570-9300

STATE OF NEW YORK
SUPREME COURT:  COUNTY OF WESTCHESTER

---

THE BANK OF NEW YORK TRUST COMPANY. N.A.,

                    Plaintiff,

-against-

                                    INDEX NO: 16483-08

BARBARA CAMPBELL, MARLENE GATHER
LANGLEY, PHILLIP SCOTT, et. al,

                    Defendant.

---

RECEIVED

MAY – 6 2013

TIMOTHY C. IDONI
COUNTY CLERK
COUNTY OF WESTCHESTER

## NOTICE OF BANKRUPTCY AND EFFECT OF AUTOMATIC STAY

    Defendant, Phillip Scott, by and through attorney Kim DSouza, respectfully submits this Notice of Bankruptcy and Effect of Automatic Stay, and states as follows:

1. On May 14, 2012, Residential Capital, LLC, and certain of its affiliates, (together "RFC") filed voluntary petitions under Chapter 11 of Title 11 of the Bankruptcy Code in the United State Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408.  The Debtor's case was, and is, administered in the Chapter 11 Case indexed as case number 12-12020.  A copy of the title page for the action is annexed hereto, marked **EXHIBIT A.**

2. RFC included the plaintiff on the schedules annexed to the bankruptcy petition, as a creditor with a claim described as "Contingent, Unliquidated, or Disputed".  A copy of the schedule page is annexed hereto, marked **EXHIBIT B.**

1

3. On August 22, 2013, plaintiff issued a "Time Sensitive Notice" in which plaintiff indicated that the bankruptcy estate included the trust which owns the mortgage on Defendant's house, that plaintiff serves as indenture trustee for the trust, and that a priority dispute existed with respect to the assets of the trust, between the trustee and the certificate holders. Copies of relevant pages of the Notice are annexed, marked **EXHIBIT C.**

4. In, and by, its bankruptcy petitioner, debtor included a list of its affiliates, for the purposes of the bankruptcy, a copy of which is annexed hereto, marked **EXHIIBT D.**

5. The RAMP2005RZ3 PSA shows that RFC served, or serves, as Sponsor, Depositor, Title Issuer, Document Custodian, and Master Servicer of the subject note and mortgage. As of the date of the commencement of the bankruptcy, RFC, and RFC creditors, retained significant rights in the note and mortgage, which qualify as "property of the estate".

6. The Automatic Stay is codified in section 362 of the Bankruptcy code Section 362(a), inter alia, operates as an automatic stay of: (i) the enforcement against property of the estate of a judgment obtained before the commencement of the bankruptcy, and (ii) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, and (3) any act to or enforce any lien against property of the estate, and (iii) any act to enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title, and, (iv) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

2

7. On, or about, July 29, 2008, Plaintiff commenced a mortgage foreclosure for possession of the premises located at 12 Inverness Road, Scarsdale, NY 10583, by filing of the summons and complaint with the Supreme Court of the State of New York, County of Westchester, and purchase of Index No.: 16483-08.

8. On, or about, January 29, 2009, the court entered an <u>Order of Reference In Mortgage Foreclosure</u> in the above matter, appointing Antony Centone, Esq. the foreclosure referee.

9. On, or about, March 16, 2009, the court entered a <u>Judgment of Foreclosure and Sale</u>, a copy of which is annexed hereto, marked **EXHIBIT E.**

10. On, or about, April 18, 2013, Anthony Centone served, caused to be served, and/or nominally served a "NOTICE OF SALE" upon Defendant, and Defendant's attorney, a copy of which is annexed hereto, marked **EXHIBIT F.**

11. The foreclosure sale would constitute enforcement against property of the estate of a judgment obtained before the commencement of the bankruptcy, an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, an act to or enforce any lien against property of the estate, an act to enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title, and/or an act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

3

12. The Automatic Stay pursuant to 362 applies to the scheduled foreclosure sale.

13. Evidence which demonstrates the dispute referred to in the "Time Sensitive Notice" with

respect to subject note and mortgage exists as follows:

a)  the originator endorsed the note in blank, signed by Gina Gerwig, who left Finance
America, LLC in December 2005, as more fully appears on the "LINKEDIN" entry, a
copy of which is annexed, marked **EXHIBIT G,** and

b)   RAMP2005RZ3 owns the loan, as more fully appears by the attorney letter, a copy of
which is annexed hereto, marked **EXHIBIT H,** and

c)  RFC took possession of the note on behalf of RAMP2005RZ3 in 2005 as appears on the
MERS MILESTONES AND MIN SUMMARY, copies of which are annexed hereto,
marked **EXHIBIT I,** and

d)  the PSA provided that RFC would signify the transfer title of the mortgage to the trust by
certifying that it specifically endorsed to JP Morgan Chase, an endorsement which does
not appear on the note proffered in the mortgage foreclosure, and

e)  Jeffrey Stephan signed the affidavit in support of the Order of Reference and the
purported Assignment of Mortgage from JPMorgan Chase to the Plaintiff.   At all
relevant times, Jeffrey Stephan worked for RFC, and did not work for JP Morgan Chase,
and

f)  in depositions dated December 10, 2009 [see GMAC Mortgage LLC. V. Neu., No. 50-
2008-CA-040805 (Florida Cir. Ct)] and dated December 20, 2010, Jeffrey Stephan stated
under oath that he did not have personal knowledge of the matters in the documents he
signed, that he signed 10,000 documents a month, and that he regularly signed documents
to be notarized outside the presence of the notary, and

g)  the affidavit in support of the Order of Reference relies on the personal knowledge of
Jeffrey Stephan, and

h)  an Administrative Order issued on December 20, 2010, by Hon. Glen Grant, Acting
Administrative Director of the Courts of New Jersey memorialized that the banks would

4

withdraw robo-signed documents signed by Jeffrey Stephan in pending mortgage foreclosure actions.

14. Defendant moved Pro Se three times Pro Se to vacate the <u>Order of Reference</u>, but failed to present the extensive evidence indicated herein. After the third time, the trial court indicated it would enter sanctions against the Defendant if he moved again to vacate. Defendant, by counsel, brought a motion which would allow Defendant, by Counsel, to present the new evidence. The court denied the request, and the defendant appealed, which appeal is currently pending.

15. By time of perfection of, and decision on, the appeal, the schedule foreclosure sale will have been completed.

16. In light of the content of Plaintiff's "Time Sensitive Notice", pushing the foreclosure sale at this time raises the question of whether RFC is attempting to change the classification of an asset (from a mortgage to cash) in order to take the value of the mortgage outside the area of dispute, in order to defraud thereby, the purchasers of RAMP2005RZ3 securities.

17. Plaintiff failed to join RFC as a party in the mortgage foreclosure proceeding, whereby the plaintiff damaged the creditors, and created competing claims against title to the premises, which damaged, and damages, the defendant.

18. Defendant commenced an action in federal court with respect to the title issues surrounding the note and mortgage.   In that action, RFC and the plaintiff filed a <u>Notice of Bankruptcy and Effect of Automatic Stay</u> in which Plaintiff specifically argued that the action qualified as a "judicial action to obtain of the Debtor's property".   A copy of the notice is annexed hereto, marked **EXHIBIT J.**

19. Plaintiff's fraudulent documents, and false court submission, breached the duty to provide competent servicing, created defects of title, render a commercially reasonable foreclosure sale impossible, which will result in actual damages.   As the owner of title to land, to which Plaintiff caused, and causes, defects, the defendant is a party in interest herein.

19) In the event that the foreclosure sale occurs, without the express directive of the bankruptcy court, Defendant will move the Bankruptcy court for an order for Violation of the Automatic Stay, in which Defendant will request that the Bankruptcy Court void the sale as if it had never occurred, and for costs, attorney's fees, sanctions, and/or contempt of court.

Dated:  May 3, 2013
LaGrangeville, NY

Kim DSouza, Esq.
Attorney for Phillip Scott
1131 Route 55, Suite #6
LaGrangeville, NY 12540
(845) 570-9300

TO:

6

Chambers of Hon. Mary H. Smith
Supreme Court of New York
Westchester County Courthouse
111 Dr. Martin Luther King Jr. Boulevard
White Plains, NY 12601

Anthony Centone, P.C.,
Court Appointed Foreclosure Referee
244 Westchester Avenue
White Plains, New York 10604

Timothy Menasco, Esq.
Rosicki, Rosicki, and Associates, P.C.
26 Harvestor Avenue
Batavia, New York 14020

Steven S. Rand, Esq.
Zeichner, Ellman, & Krause
575 Lexington Avenue
New York, New York 10022

B 1 (Official Form 1) (4/10)

**United States Bankruptcy Court**
**Southern District of New York**

Voluntary Petition

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Residential Capital, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**Residential Capital Corporation** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): 20-1770738 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>**1177 Avenue of the Americas**<br>**New York, NY**          ZIP CODE 10036 | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>**New York** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br><br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):<br>ZIP CODE | |

<table>
<tr><td><b>Type of Debtor</b><br>(Form of Organization)<br>(Check one box.)<br><br>☐ Individual (includes Joint Debtors)<br><i>See Exhibit D on page 2 of this form</i><br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)<br><br>_____</td>
<td><b>Nature of Business</b><br>(Check one box.)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other<br><br><b>Tax-Exempt Entity</b><br>(Check box, if applicable.)<br><br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).</td>
<td><b>Chapter of Bankruptcy Code Under Which the Petition is Filed</b> (Check one box.)<br><br>☐ Chapter 7<br>☐ Chapter 9<br>☒ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br><br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br><br><b>Nature of Debts</b><br>(Check one box.)<br><br>☐ Debts are primarily consumer, debts defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."     ☒ Debts are primarily business debts</td>
</tr>
</table>

<table>
<tr><td><b>Filing Fee</b> (Check one box.)<br><br>☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.</td>
<td><b>Chapter 11 Debtors</b><br><b>Check one box:</b><br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br><b>Check if:</b><br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $ 2,343,300<br><b>Check all applicable boxes:</b><br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).</td>
</tr>
</table>

<table>
<tr><td colspan="2"><b>Statistical/Administrative Information</b><br>☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.</td>
<td><b>THIS SPACE IS FOR COURT USE ONLY</b></td>
</tr>
</table>

**Estimated Number of Creditors**

| ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

**Estimated Assets**

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

**Estimated Liabilities**

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |



EXHIBIT A

Residential Capital LLC, et al.
Top Unsecured Creditors
*In USD*
(All Amounts Are Estimated)

| No. | Creditor [1] | Creditor Contact | Nature of Claim [2] | Contingent, Unliquidated, or Disputed | Amount of Claim [3] |
|---|---|---|---|---|---|
| 1 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due April 2013 [4] | | 473,416,000.00 |
| 2 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 750,000,000 Euros Aggregate Principal Amount of 7.125% Notes due May 2012 [4] | | 127,671,000.00 [5] |
| 3 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.875% Senior Unsecured Notes due June 2015 [4] | | 112,227,000.00 |
| 4 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 9.875% Notes due July 2014 [4] | | 103,743,000.00 [6] |
| 5 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | 8.500% Senior Unsecured Notes due June 2012 [4] | | 79,879,000.00 |
| 6 | Deutsche Bank Trust Company Americas<br>C/O Kelvin Vargas<br>25 De Forest Ave<br>Summit, NJ 07901 | Phone: (201) 593-2456<br>Fax:<br>Email: kelvin.vargas@db.com | £400,000,000 Aggregate Principal Amount of 8.375% Notes due May 2013 [4] | | 59,379,200.00 [6] |
| 7 | BNYMellon<br>C/O Dechert LLP<br>1095 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 698-3621<br>Fax: (212) 698-3599<br>Email: hector.gonzalez@dechert.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 8 | US Bank<br>C/O Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, NY 10004 | Phone: (212) 574-1391<br>Fax: (212) 480-8421<br>Email: das@sewkis.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 9 | Deutsche Bank AG, New York<br>C/O Joe Salama<br>60 Wall Street<br>New York, NY 10005-2836 | Phone: (212) 250-9536<br>Fax: (866) 785-1127<br>Email: joe.salama@db.com | Contingent Claim- Securitization | Contingent, Unliquidated, Disputed | Unknown |
| 10 | Federal Housing Finance Agency<br>C/O Alfred Pollard<br>400 Seventh Street, SW | Phone: (202) 649-3804<br>Fax:<br>Email: GeneralCounsel@FHFA.org | Contingent Claim- Securities | Contingent, Unliquidated, Disputed | Unknown |
| 11 | MBIA, Inc.<br>C/O Cadwalader, Wickersham & Taft<br>One World Financial Center<br>New York, NY 10281 | Phone: (212) 504-6373<br>Fax: (212) 504-6666<br>Email: gregory.petrick@cwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 12 | Ambac Assurance Corp<br>C/O Patterson Belknap Webb & Tyler<br>1133 Avenue of the Americas<br>New York, NY 10036 | Phone: (212) 336-2140<br>Fax: (212) 336-2094<br>Email: prforienza@pbwt.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 13 | Financial Guaranty Insurance Co.<br>C/O Jones Day<br>222 East 41st Street<br>New York, NY 10017-6702 | Phone: (212) 326-7844<br>Fax: (212) 755-7306<br>Email: cball@jonesday.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |
| 14 | Assured Guaranty Corp.<br>C/O Margaret Yanney<br>31 West 52nd Street<br>New York, NY 10019 | Phone: (212) 857-0581<br>Fax: (212) 893-2792<br>Email: myanney@assuredguaranty.com | Contingent Claim- Litigation | Contingent, Unliquidated, Disputed | Unknown |



EXHIBIT

B

1 of 4

## ANNEX 1

On May 14, 2012, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  A motion has been filed or shortly will be filed with the Court requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered.

| Name of Debtor |
| --- |
| ditech, LLC |
| DOA Holding Properties, LLC |
| DOA Properties IX (Lots-Other), LLC |
| EPRE LLC |
| Equity Investment I, LLC |
| ETS of Virginia, Inc. |
| ETS of Washington, Inc. |
| Executive Trustee Services LLC |
| GMAC – RFC Holding Company, LLC |
| GMAC Model Home Finance I, LLC |
| GMAC Mortgage USA Corporation |
| GMAC Mortgage, LLC |
| GMAC Residential Holding Company, LLC |
| GMAC RH Settlement Service, LLC |
| GMACM Borrower LLC |
| GMACM REO LLC |
| GMACR Mortgage Products, LLC |
| HFN REO SUB II, LLC |
| Home Connects Lending Services, LLC |
| Homecomings Financial Real Estate Holdings, LLC |
| Homecomings Financial, LLC |



EXHIBIT

D

**TIME-SENSITIVE NOTICE**
**REGARDING A PROPOSED SETTLEMENT BETWEEN RESIDENTIAL CAPITAL, LLC, *et al.*, AND THE SETTLEMENT TRUSTS**

**NOTICE IS HEREBY GIVEN BY:**

**THE BANK OF NEW YORK MELLON,**
**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,**
**DEUTSCHE BANK NATIONAL TRUST COMPANY,**
**DEUTSCHE BANK TRUST COMPANY AMERICAS,**
**U.S. BANK NATIONAL ASSOCIATION AND**
**WELLS FARGO BANK, N.A.**

**IN THEIR SEVERAL CAPACITIES AS TRUSTEES OR INDENTURE TRUSTEES (COLLECTIVELY, THE "RMBS TRUSTEES" AND EACH, AN "RMBS TRUSTEE"), TO THE HOLDERS OF CERTIFICATES, NOTES OR OTHER SECURITIES (THE "CERTIFICATEHOLDERS") UNDER THE RESIDENTIAL MORTGAGE-BACKED SECURITIZATION TRUSTS IDENTIFIED IN EXHIBIT A (COLLECTIVELY, THE "SETTLEMENT TRUSTS" AND EACH A "SETTLEMENT TRUST").**

**THIS NOTICE CONTAINS IMPORTANT TIME-SENSITIVE INFORMATION FOR CERTIFICATEHOLDERS AND OTHER PERSONS POTENTIALLY INTERESTED IN THE SETTLEMENT TRUSTS. ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE, AS APPLICABLE, ARE REQUESTED TO EXPEDITE THE RE-TRANSMITTAL TO CERTIFICATEHOLDERS IN A TIMELY MANNER.**

Dated: August 22, 2012

This notice (the "**Notice**") is given to you by the RMBS Trustees under the Pooling and Servicing Agreements (including Series Supplements and Standard Terms of Pooling and Servicing Agreements), Indentures and related Servicing Agreements (collectively, the "**Governing Agreements**") governing the Settlement Trusts. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Governing Agreements.

**I. Background.**

As Certificateholders have previously been notified by each RMBS Trustee, on May 14, 2012, Residential Capital, LLC, and certain of its direct and indirect subsidiaries (collectively, "**ResCap**") filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") (*In re Residential Capital, LLC*, **Case No. 12-12020 (MG) and related cases**) (collectively, the "**Chapter 11 Cases**").

THIS NOTICE CONCERNS A PROPOSED SETTLEMENT OF CLAIMS OF THE SETTLEMENT TRUSTS AGAINST RESCAP IN THE CHAPTER 11 CASES. THESE CLAIMS INCLUDE, WITHOUT LIMITATION, CERTAIN CLAIMS RELATING TO THE ORIGINATION AND SALE BY RESCAP OF MORTGAGE LOANS AND TO CERTAIN ASPECTS OF RESCAP'S SERVICING OF THOSE MORTGAGE LOANS. THE PROPOSED SETTLEMENT WOULD, IF APPROVED BY THE COURT AND ACCEPTED BY THE RMBS TRUSTEE OF A SETTLEMENT TRUST, BIND THAT SETTLEMENT TRUST AND RELATED CERTIFICATEHOLDERS. ACCORDINGLY, THE PROPOSED SETTLEMENT AND RELATED COURT APPROVAL PROCEDURES MATERIALLY AFFECT THE INTERESTS OF THE CERTIFICATEHOLDERS, AND THE RMBS TRUSTEES RESPECTFULLY REQUEST THAT ALL CERTIFICATEHOLDERS AND OTHER NOTICE RECIPIENTS READ THIS NOTICE AND RELATED MATERIALS CAREFULLY IN CONSULTATION WITH THEIR LEGAL AND FINANCIAL ADVISORS.

## II. The Proposed Settlement.

On May 13, 2012, ResCap entered into separate agreements with two sets of Certificateholders (collectively, the "**Institutional Investors**"), each of which was titled an "RMBS Trust Settlement Agreement" (collectively, the "**Original Proposed RMBS Trust Settlement Agreements**"). On August 15, 2012, the Original Proposed RMBS Trust Settlement Agreements were amended (the "**Amended Proposed RMBS Trust Settlement Agreements**," and together with the Original Proposed RMBS Trust Settlement Agreements, the "**Proposed RMBS Trust Settlement Agreements**"). (Copies of these documents can be obtained as explained in Part IV below.) The Proposed RMBS Trust Settlement Agreements seek to, among other things, settle the claims of the Settlement Trusts concerning ResCap's alleged breaches of representations and warranties in the Governing Agreements and certain alleged violations of ResCap's servicing obligations. The Proposed RMBS Trust Settlement Agreements are subject to the approval of the Court and the settlements set forth therein cannot be offered to or accepted by the Settlement Trusts until and unless such approval is granted by the Court (see Part III below).

The Proposed RMBS Trust Settlement Agreements provide that in settlement of the Proposed Settled Claims (as defined below) against ResCap, each Settlement Trust that accepts the settlement (an "**Accepting Trust**") will be allowed a general unsecured claim against the estates of certain ResCap entities in the Chapter 11 Cases. If all Settlement Trusts become Accepting Trusts, such allowed claims will aggregate $8,700,000,000 (US$8.7 billion), less an allocation of the allowed claims for the payment of fees and expenses of the attorneys for the Institutional Investors as set forth in the Proposed RMBS Trust Settlement Agreements (the "**Settlement Claims Allowance**"). The Proposed RMBS Trust Settlement Agreements further provide that each Accepting Trust shall have the option (the "**HoldCo Option**"), at any time prior to confirmation of a chapter 11 plan in the Chapter 11 Cases (a "Plan"), to elect to receive up to twenty percent of that Accepting Trust's Settlement Claims Allowance as an allowed general unsecured claim against the estate of Residential Capital, LLC ("**HoldCo**"), in lieu of a general unsecured claim against the estates of certain of its direct and indirect subsidiaries thereby reducing each Accepting Trust's allowed general unsecured claim against such estates to the extent each Accepting Trust exercises the HoldCo Option. **The determination of the Settlement Claims Allowance of each Accepting Trust (*i.e.*, each Accepting Trust's share of the aggregate Settlement Claims Allowance) is subject to an allocation procedure set forth in the Proposed RMBS Trust Settlement Agreements and all recipients of this Notice are referred to such agreements for the details of that procedure.**

2

The Proposed RMBS Trust Settlement Agreements allow each related Settlement Trust to accept or reject the settlement offer independently without affecting the rights of any other Settlement Trust (including the share of the Settlement Claims Allowance to which any other Settlement Trust is entitled if it becomes an Accepting Trust). If approved by the Court, the Proposed RMBS Trust Settlement Agreements would affect the rights and interests of all Certificateholders, and their successors-in-interests and assigns, in any Accepting Trusts. The affected rights and interests will include, among other things, the release of claims against Rescap on behalf of the RMBS Trustee, the Accepting Trusts and all Certificateholders in the Accepting Trusts, arising out of or relating to (i) the origination and sale of mortgages to the Accepting Trusts, including representations and warranties made with respect to those mortgages and any mortgage repurchase obligations; (ii) documentation of the mortgages in the Accepting Trusts, with certain exceptions; (iii) servicing of the mortgages in the Accepting Trusts, with certain exceptions; (iv) certain setoff or recoupment under the Governing Agreements against ResCap; and (v) any loan seller that either sold loans to ResCap or Ally Financial Inc. that were sold or transferred to the Accepting Trusts (collectively, the "**Proposed Settled Claims**").

**The acceptance of the Proposed RMBS Trust Settlement Agreements by an Accepting Trust would not, at present, entitle such Accepting Trust to receive any specific amount of money or other consideration, at any specific time, as a distribution from the ResCap debtor entities' bankruptcy estates.** Rather, the Settlement Claims Allowance would entitle the Accepting Trust to receive such consideration as is eventually afforded to the claims of general unsecured creditors in the Chapter 11 Cases that are classified in the same manner as the claims of the Accepting Trusts. Accordingly, at present, Certificateholders cannot assume that acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement will result in any particular recovery with respect to the Settlement Claims Allowance of such Settlement Trust. Acceptance by any Settlement Trust of the related Proposed RMBS Trust Settlement Agreement would, however, resolve disputes with ResCap and other parties in interest to the Chapter 11 Cases as to the amount and general unsecured claim status of any claims such Settlement Trust may have with respect to the Proposed Settled Claims.

The RMBS Trustees have jointly engaged Duff & Phelps, LLC as their primary advisor with respect to their evaluation of the Proposed RMBS Trust Settlement Agreements and with respect to certain other matters in the Chapter 11 Cases. Each RMBS Trustee has also engaged independent counsel to advise it with respect to relevant legal matters affecting the particular Settlement Trusts that they administer. **None of the RMBS Trustees has made a determination, as of the date of this Notice, as to the reasonableness of, or the advisability of entering into, the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust. None of the RMBS Trustees anticipates making its decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust until and unless the proposed settlement has been approved by the Court (see Part III below). Although the RMBS Trustees are cooperating with each other in their evaluation of the proposed settlement, each RMBS Trustee will make its own decision as to whether or not to accept the proposed settlement on behalf of any Settlement Trust, and for each Accepting Trust, whether, and in what amount, to elect to exercise the HoldCo Option, on the basis of information available to that RMBS Trustee at the time of such decision.**

**Settlement Trusts that do not accept the Proposed RMBS Trust Settlement Agreements and do not become Accepting Trusts will be subject to the procedures of the Bankruptcy Code and the Court (including the scheduling order for the Chapter 11 Cases entered by the**

Court) relating to the assertion and allowance of claims, including, but not limited to, ResCap's right to object to the claims.

### III. ResCap's Motion for Approval of the Proposed RMBS Trust Settlement Agreements by the Court; The Rights of Certificateholders and Other Parties to Appear and Object.

The Proposed RMBS Trust Settlement Agreements are agreements between ResCap and the Institutional Investors and will not become effective or binding as to any Settlement Trust until and unless both (a) ResCap obtains Court approval to make the settlement offer to the Settlement Trusts and (b) such Settlement Trust, acting through its respective RMBS Trustee, accepts the Proposed RMBS Trust Settlement Agreements. Accordingly, on June 11, 2012, ResCap filed a motion with the Court seeking Court approval of the Proposed RMBS Trust Settlement Agreements and of ResCap's offer of the settlement proposed thereunder to each of the RMBS Trustees on behalf of the Settlement Trusts (the "**Original 9019 Motion**"). On August 15, 2012, ResCap filed a Supplement to the 9019 Motion (together with the Original 9019 Motion, the "**9019 Motion**").

Among other things, the 9019 Motion seeks a finding by the Court that the settlements proposed under the Proposed RMBS Trust Settlement Agreements are fair and reasonable to, and in the best interest of, all interested parties, including but not limited to, ResCap's creditors, the Institutional Investors, the Certificateholders for each Accepting Trust and each such Accepting Trust, the RMBS Trustees, and certain other persons, as a compromise of the claims asserted by each Accepting Trust against ResCap.

On July 31, 2012, the Court entered an order setting forth a schedule of deadlines and the date of a hearing related to the 9019 Motion and the RMBS Trustees' acceptance or rejection of the settlement under the Proposed RMBS Trust Settlement Agreements (the "**Order**"). **Pursuant to the Order, the Court will commence an evidentiary hearing on the 9019 Motion (the "Hearing") on November 5, 2012.** If the Court grants the 9019 Motion, the RMBS Trustees must accept or reject the Proposed RMBS Trust Settlement Agreements on behalf of any Settlement Trust on or before the later of (a) November 12, 2012 or (b) five business days after the entry of an order granting the 9019 Motion. The RMBS Trustees have until the confirmation of a Plan to elect to exercise the HoldCo Option on behalf of each Accepting Trust.

**Any Certificateholder or other person potentially having an interest in the Settlement Trusts may object to the 9019 Motion or any aspect of the Proposed RMBS Trust Settlement Agreements, may seek discovery regarding the 9019 Motion or the Proposed RMBS Trust Settlement Agreements, and may participate in the Hearing.** The Court has directed that:

- any objections to the 9019 Motion, along with any supporting expert reports, must be filed with the Court by **October 5, 2012**;

- the RMBS Trustees' objections or responses to the 9019 Motion, if any, must be served by **October 15, 2012**; and

- any reply to objections to the 9019 Motion must be filed by **October 29, 2012**.

(Further information regarding additional deadlines regarding the 9019 Motion is contained in the Order which can be obtained as explained in Part IV below.)

If the Court approves the 9019 Motion and an RMBS Trustee agrees to accept the settlement under the Proposed RMBS Trust Settlement Agreements on behalf of an Accepting Trust, all Certificateholders under the Accepting Trust will be bound by the Proposed RMBS Trust Settlement Agreements and the releases contained therein, whether or not the Certificateholder appeared in the Hearing or submitted an objection to the 9019 Motion or the Proposed RMBS Trust Settlement Agreements.    Accordingly, any Certificateholder that has concerns about or might object to the Proposed RMBS Trust Settlement Agreements should consider with their legal advisors whether to participate in the Court proceedings pursuant to any of the means described in the preceding paragraph. There will likely be no forum other than such Court proceedings in which a Certificateholder's objection to the Proposed RMBS Trust Settlement Agreements will be able to be heard.    If the Court approves the Proposed RMBS Trust Settlement Agreements, the decision of the applicable RMBS Trustee to accept or reject the proposed settlement on behalf of an individual Settlement Trust, and to exercise the HoldCo Option on behalf of an Accepting Trust, will be informed by each RMBS Trustee's analysis of the settlement taking into account interests of all of its respective Certificateholders and will not necessarily be based on the interests, objections or other position of any individual Certificateholder.

## IV.  This Notice is a Summary; Other Sources of Information.

This Notice summarizes the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and is not a complete statement of those documents, of relevant law or of relevant legal procedures.  The RMBS Trustees do not intend to send any further notices with respect to the matters addressed herein, and Certificateholders and other potentially interested persons are urged to carefully review the Proposed RMBS Trust Settlement Agreements, the 9019 Motion and the Order and other pleadings that have been filed, and that subsequently may be filed, in the Chapter 11 Cases, and to consult with their own legal and financial advisors.  The Proposed RMBS Trust Settlement Agreements and other related, material documents, including certain orders entered by the Court and other information relevant to the Proposed RMBS Trust Settlement Agreements, are available at **http://www.rescaprmbssettlement.com**, which will be updated each time additional, related, material papers are filed or orders are entered by the Court.  You may also obtain any documents filed with the Court in the Chapter 11 Cases by logging on to PACER at **https://www.uscourts.gov** or by visiting ResCap's claims agent website at **http://www.kccllc.net/rescap**.  If you have any questions, you may call (866) 241-7538 in the United States, +1 (202) 470-4565 outside the United States or send an email to questions@rescaprmbssettlement.com.

Inquiries regarding the matters set forth in this Notice may be directed to questions@rescaprmbssettlement.com or, with respect to any particular Settlement Trust, to the RMBS Trustee for such Settlement Trust using the "RMBS Trustee Contact Information" for such RMBS Trustee at **http://www.rescaprmbssettlement.com**.

## V.  Other Matters.

Certificateholders and other persons interested in the Settlement Trusts should not rely on the RMBS Trustees, or on counsel or other advisors retained by the RMBS Trustees, as their sole source of information.

Please note that the foregoing is not intended and should not be construed as investment, accounting, financial, legal or tax advice by or on behalf of the RMBS Trustees, or their directors,

5

officers, affiliates, agents, attorneys or employees. Each person or entity receiving this Notice should seek the advice of its own advisers in respect of the matters set forth herein.

Please be further advised that each of the RMBS Trustees reserves all of the rights, powers, claims and remedies available to it under the Governing Agreements and applicable law. No delay or forbearance by an RMBS Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Governing Agreements, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or an acquiescence therein.

Each of the RMBS Trustees expressly reserve all rights in respect of each applicable Governing Agreement, including without limitation its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by such RMBS Trustee in performing its duties, indemnities owing or to become owing to such RMBS Trustee, compensation for such RMBS Trustee's time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with any applicable Governing Agreement at the request or direction of any Certificateholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

Please be advised that with respect to any particular inquiry from individual Certificateholders, an RMBS Trustee may conclude that a specific response to such inquiry is not consistent with requirements under applicable law and regulation of equal and full dissemination of information to all Certificateholders.

THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., DEUTSCHE BANK NATIONAL TRUST COMPANY, DEUTSCHE BANK TRUST COMPANY AMERICAS, U.S. BANK NATIONAL ASSOCIATION OR WELLS FARGO BANK, N.A., severally, as trustees or indenture trustees of the Settlement Trusts