RECEIVED

AUG 12 2013

U.S. BANKRUPTCY COURT
S. DIST. OF NEW YORK

# UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK
## (at Manhattan)

[18 USC §§ 242, 1951, 1962, 666][49 USC §§ 104(b)(1)&(c)(1), 106(f)(1), 40117(a)(3)(E), 47141(c)(1)(A)&(B), 47504(a)(2)(D)&(E), 48103(a)][12 USC §§ 1701 et seq., 1715u, 1710][23 USC §§ 107(a)(1), 109(f),(h)(1),&(j), 401][40 USC § 3114][42 USC §§ 3535(d), 3601, 4621(c)(4), 4651(3) "just compensation", 4653(2) preexisting recorded mortgage, 7401, 7407(d), 7505a, 7571][Fed. R. Civ. P., Rules 7(b), 60(b), 71.1][Article IV, "Privileges and Immunities Clause", the 1st AM. "Petition Clause", the 5th AM. "Taking & Due Process Clauses", with 14th AM. "Equal Protection & Due Process Clauses", of U.S. Const.]

| | |
|---|---|
| In Re: Residential Capital, LLC., et al., And, )<br>In Re: GMAC, Mortgage Co., et al, )<br>Debtors )<br> )<br> )<br> )<br> )<br>UNITED STATES of America, Ex Rel., )<br>Yvonne D. Lewis, et al., )<br>Plaintiffs/ Surplus Creditors )<br>Vs. )<br> )<br> )<br>GMAC, Mortgage Co., et al, )<br>Defendants/ Bankrupt Debtor, ) | Case No. 12-bk-12020 (MG)<br>Chapter____(Ch.11, Joint Admin. )<br>(Related BR Case No.07-bk-57237, S.D., OHIO)<br>(Related BR Case No. 12-bk-12032, S.D., N.Y.)<br>JUDGE: GLENN, MARTIN<br><br>Adversary Case No.: 12-01731<br>(Related Case No.1:12-cv-361, USDC, DC.);<br>05-CV-7346 (03-CV-7478); 03-CV-10836;<br>98-CV-3445, 05-CV-4555; 03-CV-6954;<br>12-AP-506, 11-AP-875, COA10th Dist., OHIO;<br>(Related Case No.96-cv-494, USDC, S.D.,OH.) |

MOTION TO VACATE ORDER OF DISMISSAL ON **FEB. 4, 2000** THAT AWARDED POSSESSION OF "NAVIGABLE AIRSPACE[1]" OVER CONDEMNEE'S PROPERTIES IN CASE NO. 98-CV-3445 [40 USC § 3114; 49 USC §§ 40101(d)(4), 47504(a)(2)(E)];
And,
DECLARATION OF TAKING IN CASE NO. 12-bk-12020 PURSUANT TO 40 U.S.C.A. § 3114 GROUNDED ON EXECUTIVE ORDER 11738 [38 FR 25161] FOR EPA & DOT REGULATORY TAKINGS OF UNCOMPENSATED "AVIATION EASEMENTS 42 USC §§7571(c)" [14 CFR §§ 34.3, 150 et seq., 158.7; 40 CFR §§ 87.6; 23 CFR §§ 24.102(l)[2], 771].

---

[1] 49 USCS § 40101(d)(4) Safety Considerations in Public Interest reads in pertinent parts: "***, the Administrator shall consider the following matters, [inter alia], as being in the public interest: controlling the use of the NAVIGABLE AIRSPACE and regulating civil ***operations in that airspace in the interest of the safety and efficiency ***.";

[2] 23 CFR § 24.102(l) reads: (**"Inverse condemnation.** If the Agency intends to acquire <u>any</u> <u>interest</u> in real property by exercise of the power of **eminent domain**, it shall institute formal condemnation proceedings and not intentionally make it necessary for the owner to institute legal proceedings to prove the fact of the taking of the real property").

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of AMERICA, et al.,<br>Plaintiffs,<br><br>Vs.<br><br>Bank of AMERICA (BOA), et al.,<br>Defendants. | )<br>) Case: <u>1: 12-cv-00361</u>[3]<br>) (Related Dist. Ct. Case No. 1:12-cv-00363;<br>) No.2:96-cv-494, USDC, S.D., OH.;<br>) No.2:06-cv-312, USDC, S.D., OH.;<br>)<br>) Assigned To: <u>Rosemary M. Collyer</u>, Judge<br>)<br>) |

| | |
|---|---|
| FRIENDS OF THE EARTH, et al.,<br>Plaintiffs,<br><br>Vs.<br><br>UNITED STATES E.P.A. and<br>LISA JACKSON, Administrator,<br>Defendants. | )<br>) Case: <u>1:12-cv-00363</u><br>) (Related Dist. Ct. Case no.1:12-cv-00361);<br>)<br>) Assigned To: <u>Jackson, Amy Berman</u>, Judge<br>)<br>)<br>)<br>)<br>) |

## UNITED STATES OF AMERICA BEFORE THE
## BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
## WASHINGTON, D.C.

## FEDERAL DEPOSIT INSURANCE CORPORATION WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br>ALLY FINANCIAL INC.<br>Detroit, Michigan | :    FRB Docket No. 11-020-B-HC<br>:                11-020-B-DEO<br>:    FDIC-11-123b<br>: |
| ALLY BANK<br>Midvale, Utah | : (Related No.07-<u>bk-57237, USDC, S.D., OH.</u>,<br>: at Doc. 108, pg. 4 of 4, at items 2 & 3)<br>: |
| RESIDENTIAL CAPITAL, LLC | : (Related Case No.<u>1:12-cv-361, USDC, DC.</u>); |

[3] "United States v. Summerlin, 310 U.S. 414, 416, 84 L. Ed. 1283, 60 S. Ct. 1019, 1940-2 C.B. 435 (1940) (**"It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights"**); Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 61 L. Ed. 791, 37 S. Ct. 387 (1917)" (**See: Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 514 (U.S. 2004)**)

| | |
|---|---|
| Minneapolis, Minnesota | : (Related Case No. 01-cv-1236, Id,  M.D., FL.); |
| | : (Related Case No. 96-cv-494, Id., S. D., OH.); |
| and | : (Related Case # 05-CV-122, Id., W. D., KY.); |
| | : (Related Case No. 08-cv-75, Id., S. D., OH.); |
| | : (Related Case # 01-CV-259, Id., W. D., KY.); |
| GMAC MORTGAGE, LLC | : (Related Case No. 10-cv-87, Id., S. D., IA.); |
| Fort Washington, Pennsylvania | : (Related Case No. 06-cv-312, Id., S. D., OH.); |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### (at Manhattan)

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel,) | |
| EDWARD O'DONNELL, et al., ) | Case No.:  12-cv-1422 |
| appearing QUI TAM, ) | (Related Case No.1:12-cv-361, USDC, D.C.; |
| Plaintiff /Relator, ) | Related Case No.96-cv-494, USDC, S.D.,OH; |
| Vs. ) | 05-CV-7346 (03-CV-7478); 03-CV-10836; |
| ) | 05-CV-4555; 03-CV-6954);(04-AP-469, 04-AP- |
| ) | 1135; 04-AP-1347; 11-AP-1132; 12-AP-506; |
| BANK OF AMERICA CORP.., et al, ) | 10-AP-110, COA10th Dist., OH.; (Related |
| Defendants. ) | Case Nos.08-cv-75, 06-cv-312,USDC, S.D.,OH) |

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF
## OHIO;
### (at Columbus)

| | |
|---|---|
| In Re: SIDNEY T. LEWIS, pro se, ) | Case No. 2:07-bk-57237 |
| ) | (Ch.7 ) |
| Debtor ) | (Related Bankr Case No. 2:05-bk-75111) |
| ) | (Related Case No.1:12-cv-361, USDC, D.C.) |
| Social Security No.: xxx-xx-5959 ) | JUDGE: HOFFMAN, JOHN, Jr. |

| | |
|---|---|
| In Re: Yvonne D. Lewis, ) | Case No. 2:05-bk-75111 |
| ) | (Ch.7 ) |
| Debtor ) | (Related Case No. 2:07-bk-57237) |
| ) | (Related BR Case No. 12-bk-12020, S.D., N.Y.) |
| Social Security No.: xxx-xx-2390 ) | JUDGE: HOFFMAN, JOHN, Jr. |

## IN THE UNITED STATES DISTRICT COURT, S. D. OF OHIO
## EASTERN DIVISION (at Columbus)

| | |
|---|---|
| UNITED STATES of America, Ex Rel., ) | |
| Sidney T. Lewis, et al., ) | Action No. 2:08-cv-1042 |
| Plaintiffs ) | (Related Dist. Ct. Cases 2:08-cv-16; 2:96-cv-494; |

| | |
|---|---|
| 1  Vs. | ) 2:09-cv-179, 2:08-cv-75; 09-cv-936; 09-cv-944;) |
| 2  Larry McClatchey, et al., of the | ) 2:06-cv-312; 08-cv-1040 and 08-cv-736); |
| 3  Kegler, Brown, Hill & Ritter Lawfirm | ) |
|    Defendants. | ) JUDGE: <u>HOLSCHUH</u> |
| 4 | Magistrate Judge: KING |

| | |
|---|---|
| 5 | |
| 6  The Huntington National Bank, et al., | ) Civil Action No. <u>2:08-cv-00073</u> |
|    Plaintiffs | ) (Related Case No.08-cv-75, at Doc. 14-4, pg.4, |
| 7  v. | ) P.3; No. 96-cv-494, at Doc. 70; No. 08-cv-1040, |
| 8 | ) at Doc. 2-4, pgs.13 & 18 at P.3 [No.05-JG-6455]); |
|    Yvonne D. Lewis, et al., | ) JUDGE <u>GRAHAM</u> |
| 9  Defendants. | ) Magistrate Judge: ABEL |
| 10 | |

| | |
|---|---|
| 11  Sidney T. Lewis, et al., | ) Action No. <u>2:08-cv-1040</u> |
| 12  Plaintiffs, | ) (Related Dist. Ct. Cases 2:08-cv-73; 2:96-cv-494; |
|     Vs. | ) 2:09-cv-179, 2:08-cv-75; 09-cv-936; 09-cv-944;) |
| 13 | ) 2:06-cv-312; 08-cv-1042 and 08-cv-736); |
| 14  James Johnston, et al., involving | ) |
|     Countrywide Home Loans. | ) JUDGE: <u>HOLSCHUH</u> |
| 15  Defendants. | ) Magistrate Judge: TERENCE P KEMP |

| | |
|---|---|
| 16 | |
| 17 | **FRANKLIN COUNTY COMMON PLEAS COURT, OHIO** |
| 18 | **CIVIL DIVISION (at Columbus)** |
| 19 | |

| | |
|---|---|
| 20  Sidney Lewis, et al. (FHA program) | ) Case No. <u>98-CV-3445</u> |
|     Plaintiff(s) | ) |
| 21  Vs. | ) Judge: <u>ALAN TRAVIS</u> |
| 22 | ) |
| 23  City of Columbus, Dept. of Dev., Utltes & | ) |
|     Aviation Div. (FAA/ DOT, program) | ) |
| 24 | |
| 25  GMAC Mrtg. Co., LLC, (FAA, program) | ) Case No. <u>05-CV-4555</u> |
|     Plaintiff(s) | ) |
| 26  Vs. | ) Judge: <u>JULIE LYNCH</u> |
| 27 | ) |
|     Yvonne D. Lewis, et al. (FHA, program) | ) |
| 28  Defendant(s) | ) |
| 29 | |
| 30  GMAC Mrtg. Co., LLC, (FAA, program) | )Case No. <u>03-CV-6954</u> |
|     Plaintiff(s) | ) |
| 31  Vs. | ) Judge: <u>PATRICK SHEERAN</u> |
| 32 | ) |

Sidney T. Lewis (HUD/FHA, program)        )
        Defendant(s)

MOTION TO VACATE DISMISSAL ON FEB. 4, 2000 IN CASE NO. 98-CV-3445
[40 USC § 3114; 49 USC §§ 40101(d)(4), 47504(a)(2)(E)];

And,

DECLARATION OF UNCOMPENSATED REGULATORY TAKINGS IN CASE NO. 12-
bk-12020; 42 USC § 7571(c); 40 USC § 3114 [14 CFR §§ 34.3, 150 et seq., 158.7]

## MOTION

SIDNEY LEWIS and YVONNE D. LEWIS as plaintiffs/creditors/mortgagors, appearing as the movants in the above-entitled state **Inverse condemnation** action for "*Regulatory Takings*", 23 CFR § 24.102(l); 14 CFR §§ 34.3, 150 et seq., 158.7 in Ohio State CPC case no. 98-CV-3445, moves all State and Federal Courts to vacate their respective court's Orders subsequent to the "at issue" Order of DISMISSAL on **FEBRUARY 4, 2000** [*in the case of Lewis et al. (i.e., Argyle Park Subdivision "APS") plaintiffs, vs. City of Columbus, (i.e., Columbus International Airport Hub "CMH") defendants*], which indirectly commanded plaintiffs to surrender possession of their "at issue" uncompensated private aviation easements over the above-referenced private "APS" properties.   The Defendant City of Columbus [*as owner and operator*], statutorily acquired said properties via Federal approval of "Land Use Controls" on **JULY 28, 1987** under ASNA of 1979[4] (See: **EXHIBIT 1**, FAA approval), on behalf of the Administrator of the Federal Aviation Administration "FAA", for the Secretary of the Dept. of Transportation "DOT", United States of America "US" [See: 23 USC § 401; 49 USC §§ 104(c)(1), 106(f)(1)], without requiring advance payments before taking possession of "interest

---

[4] ASNA of 1979 codified 49 USC §§ 47504(a)(2)(D) and (c)(2)(B) "to acquire residential properties".

in private lands" to collect a "public use tax" called a "passenger facility charge[5]" [See: 23 USC §107(a)(1); 23 CFR § 24.102(j); 14 CFR § 158.7] under the power of eminent domain (see fnt.2) under the "Taking Clause" (See 5th & 14th Amend., of the U.S. Const.) or, in the alternative, to issue an amended Order to Desist or Pay providing that APS Plaintiffs obligation to surrender possession of their private properties be deferred until the court's determination of Defendant City's right to take the aviation easement over said private properties in connection with a July 28, 1987 approved US DOT/FAA Airport Improvement Grant no. 84-2-3-39-0025-03-85 after an evidentiary hearing on that sole *De facto Takings*[6] issue at a time and date fixed by the Court in case no. 98-CV-3445.

(See: 49 USC §§ 48103(a), 46310(b); 14 CFR § 300.1-"Judicial standards of practice.")

In support of the instant motion Plaintiffs/Creditors/FHA Mortgagors' allege that:

1. Defendant City of Columbus (i.e. DOT) has no viable defense to this Taking/Condemnation action pursuant to 23 CFR § 24.102(l) and 24 CFR § 203.605 as shown in the succeeding paragraph, and defendant City has raised the defective defense under 42 USC §7573 by filing on *May 28, 1998,* a timely Motion To Dismiss plaintiffs' takings complaint in **Inverse condemnation.** (See: **EXHIBIT A**, pgs. 001-008)

2. Plaintiffs' aver Federally Protected "Affirmative Defenses" (in case nos. 05-CV-4555; 03-CV-6954; 03-CV-10836; 07-EVH-60047) to any/all attempted foreclosures of "at issue" HUD/FHA insured mortgages in "APS" pursuant to 24 CFR §§ 203.500-605, 604(b) and "Takings Claim" pursuant to 23 CFR § 24.102(l); 5th & 14th Amend., of the

---

[5] *"PFC means a passenger facility charge covered by this part imposed by a public agency on passengers enplaned at a commercial service airport it controls."* (See: 14 CFR § 158.3)
[6] "...noise levels, which is only one factor to be considered in a de facto taking determination." (See: In re In re Harr, 96 Pa. Commw. 306, 310-311 (Pa. Commw. Ct. 1986), citing Allegheny County Appeal, 63 Pa. Commonwealth Ct. 99, 102, 437 A.2d 795, 797 (1981).)

U.S. Const.; 49 USC § 48103(a), for the Taking actions in that the property(s) are not being condemned strictly for a "public use" purpose; Although the complaint states the property is being taken to implement "lead pollution emission" abatement "Overlay" under a "Transportation Improvement Project, TIP" for Defendant City Ordinance Nos. 40-89 and 1533-93; The uncompensated private aviation easements over said private property(s) are <u>not</u> susceptible to any leaded "automobile engine emission" use that would implement those purposes, and Defendant City's real purpose is to avoid the prospect of either having to make expensive payments to acquire Plaintiffs' property(s) for "lead av-gas pollution from aircraft and aircraft engine emissions" under the aviation safety and noise abatement act pursuant to 23 CFR § 24.102(f)&(j); 5th & 14th Amend., of the U.S. Const.; 49 USC §§ 48103(a), 47504(a)(2)(E).

3. In undertaking to unlawfully acquire plaintiffs' aviation easement which run with the property, Defendant City and the Secretary of the DOT have acted arbitrarily, capriciously, and in bad faith due to the fact that the DOT/FAA and Defendant City have taken prohibited **"Coercive action"** from JULY 28, 1987 to JULY 18, 2013[7] by deferring negotiations and failing to make a timely deposit of funds with the court, as coercive action in order to induce an agreement on the price to be paid for the property(s) (See 23 CFR § 24.102(h)).

4. Attached to and made a part of this motion as **EXHIBIT A**, at pgs. 001-008, is the Motion of Defendant City of Columbus corroborating and establishing in more detail the fraudulent

---

[7] Compare: Exhibit 1, at 002, **July 28, 1987**; With: 40 CFR § 87.6 as amended, eff. **July 18, 2012**)

concealment of operative facts in support of plaintiff's Taking allegations made in this

motion. (<u>Compare</u>: **EXHIBIT 1**, FAA approval: <u>With</u>: **EXHIBIT A**, Motion)

Dated: 08-07-13 _(signature)_ Dated: 08-07-13 _(signature)_

Sidney T. Lewis, pro se          Yvonne D. Lewis, pro se
1875 Alvason Avenue              1875 Alvason Avenue
Columbus, Ohio 43219            Columbus, Ohio 43219
(614-940-3306)                   (614-940-3306)

### DECLARATION
[40 U.S.C.A. § 3114]

Pursuant to authority under 23 U.S.C.A. § 401; 42 U.S.C.A. § 7571(b)&(c) <u>ANTHONY</u>

<u>FOXX,</u> the Secretary of the Department of Transportation, as the official duly authorized to

take by acquisition in the name of and for a "public use" by the United States the interest in

real property being aviation easements over residential properties described below, make this

declaration of taking pursuant to 40 U.S.C.A. § 3114; 49 USC §§ 48103(a), 47504(a)(2)(E) and

(c)(2)(B); and 5th Amendment "Taking & Due Process Clauses", with 14th Amendment "Equal

Protection & Due Process Clauses", of United States Constitution declaring:

### I.

Authority for the taking derives from the Act of Feb. 18, 1980, known as the **AVIATION
SAFETY AND NOISE ABATEMENT ACT of 1979**, Pub. L. 96-193, 94 Stat. 50 (See:
**EXHIBIT 1**, at 001-009), authorizing the Secretary of Transportation to acquire private
easements and residential property for the improvement of AIR COMMERCE AND SAFETY
for AIRPORT DEVELOPMENT and NOISE, 49 USC §§ 40117(a)(3)(E), 47504(a)(2)(E); the
act of Dec. 30, 1987, known as the Airport and Airway Safety and Capacity Expansion Act of
1987, Pub. L. 100-223, 101 Stat. 1486, the Act of Aug. 27, 1958 Pub. L. 85–767, as amended
in 2006, by Subsec. (a). Pub. L. 109–284substituted conferring the same federal power over
property needed for implementation of ACQUISITION OF RIGHTS-OF-WAY as in the case
of an "overlay" for an aviation easement on private property needed for Highway

8 of 12 pages

improvements, 23 U.S.C.A. § 107(a)(1); the 49 U.S.C.A. §§ 47115(b)(1), 47117(e)(1)(A) which authorized the project for which the interest is being taken, the Act of AIRPORT AND AIRWAY TRUST FUND AUTHORIZATIONS, which appropriated funds for the project and the Act of Feb. 26, 1931, known as the Declaration of Taking Act, ch. 307, 46 Stat. 1421, Pub.L.71-736, the general federal Takings statute, 40 U.S.C.A. § 3114; 49 U.S.C.A. § 48103.

## II.

The 1987 through July 18, 2013 "public use" for which the "APS" aviation easements (See: **EXHIBIT 2**, at 010 to 015), and private property interests known as "PFC's" (See: 49 U.S.C.A. § 40117), were taken in the accomplishment of mandates of the CLEAN AIR ACT under Exec. Order 11738 and necessary private "Land Use Controls" for collection of "ad valorem taxes" known as a "Public Use Charge" (See: 14 CFR § 158.3) in the State of Ohio, at Columbus International Airport. (See: **EXHIBIT 1**, at 003 to 004, Land Use Planning),

## III.

A general description of the private residential aviation easements in the Argyle Park Subdivision (lots 1 to 128) and real property the FR Winget's Estate (lots 1 to 4) in which the interest is being taken is set forth in Exhibit 2 (See: **EXHIBIT 2**, at 012), attached here and made a part of this declaration, the property described being the same property described in the takings complaint in case no. 98-CV-3445 and in the above-entitled cause(s). (See: **EXHIBIT 2**, at 007-009)

## IV.

The interest taken for the aforesaid "public use" is *land use controls on private aviation easements* in the real property(s) described in **EXHIBIT 2** (See: EXHIBIT 2, at 012). The

nature and character of the easement is described in Exhibit 1 (See: **EXHIBIT 1**), which is attached here and made a part of this declaration.

### V.

A plan showing the property in which the land use control for noise exposure map "NEM" requiring leaded air pollution emission abatements in private residential aviation easements and lead contaminated soil is being taken is annexed here as EXHIBIT 1 (See: EXHIBIT 1, at 008-009) and made a part of this declaration.

### VI.

The sum estimated by me as just compensation for the taking of the private residential subdivision aviation easements is in excess of **$184,000,000.00** as just compensation for PFC's taken (See: 76 FR 12407 at PFC Application no. 10-09-C-00-CMH at $184,864,011), which sum I have caused to be deposited herewith in the registry of the court for the use and benefit of the persons entitled to compensation pursuant to the 1988 Exec. Order No. 12630 [see: 53 FR 8859] and the 1973 Exec. Order No. 11738 [see: 38 FR 25161] with respect to a Federal Grant from DOT/FAA Airport Improvement Grant no. 84-2-3-39-0025-03-85. In my opinion the prior FAA administration's failure to submit timely **"Takings Implications Assessments**[8]**"** for *"aircraft safety"* (*see: 77 FR 36379 at JULY 18, 2012 citing Secretary of Transportation "DOT", 49 USC §§ 46310(b), 44714*) over FHA insured mortgaged properties already tainted with lead-based paint hazards for abatement; then Exposed to additional the FAA's toxic leaded av-gas air pollutants from aircraft and aircraft engine emissions near the Columbus Metro Airport Hub ("CMH") [see: 53 FR 2800] in violation of the CLEAN AIR ACT 42 USC §§ 7401, 7571; Id. § 46310(b), guided the maximum compensation ultimately awarded for the

---

[8] "Pursuant to a 1988 Executive Order, executive agencies must analyze the takings implications of certain actions and must report any significant findings to the Office of Management and Budget: these reports are called **"Takings Implications Assessments."** See Cong. Budget Office, Regulatory Takings and Proposals for Change 45 (1998) (discussing Exec. Order No. 12630, 53 Fed. Reg. 8859 (1988)), available at http://www.cbo.gov/doc.cfm?index=1051&type=0&sequence=6.") (see: **Res. Invs., Inc. v. United States, 97 Fed. Cl. 545, 548, at fnt. 5, (Fed. Cl. 2011))**

taking of the Argyle Park Subdivision Av-easements and FR Winget's Estate (lots 1 to 4) which will be within any maximum price limit that may be set by law to be paid for the private av-easements.

"Section 3114 pertains specifically to declaration of taking actions. Subsection (a) provides that the Government may file a declaration of taking to acquire an easement or right of way in land. 40 U.S.C. § 3114(a)."

(See: United States v. 3.6 Acres of Land, 395 F. Supp. 2d 982, 987-988 (E.D. Wash. 2004), citing Chandler v. United States, 372 F.2d 276, 278-79 (10th Cir. 1967) following United States v. Hayes, 172 F.2d 677 (9th Cir. Or. 1949))

Dated: Retroactively executed July 28, 1987 on 08-07-13

Dated: 08-07-13  _____          Dated: 08-07-13  _____
              Sidney T. Lewis, pro se                          Yvonne D. Lewis, pro se
              1875 Alvason Avenue                              1875 Alvason Avenue
              Columbus, Ohio 43219                             Columbus, Ohio 43219
              (614-940-3306)                                   (614-940-3306)

              Sidney T. Lewis, pro se                          Yvonne D. Lewis, pro se
              P. O. Box 247916                                 P. O. Box 247916
              Columbus, Ohio 43224                             Columbus, Ohio 43224
              (614-940-3306)                                   (614-940-3306)

### CERTIFICATE OF SERVICE

We, the Creditors, Sidney T. Lewis and Yvonne D. Lewis, certify that the "Motion/ Declaration/Supplement to Objections" were served by regular U.S. Mail (postage prepaid) on 08-07-13 on the following parties:

The Clerk of the Bankruptcy Court,
One Bowling Green,
New York, New York 10004-1408;

Chambers of the Honorable Martin Glenn, Judge
United States Bankruptcy Court for the Southern District of New York,
One Bowling Green,
New York, NY 10004

The Office of the United States Trustees, Southern District of New York,
Attn: Brian Masumoto and Michael Driscoll
U.S. Federal Office Building,
201 Varick Street, Suite 1006,
New York, New York 10014.

And by email to: lewis.kruger@gmacrescap.com, glee@mofo.com, lmarinuzzi@mofo.com,
and tgoren@mofo.com; and email to: keckstein@kramerlevin.com,
dmannal@kramerlevin.com, and szide@kramerlevin.com; And by email to:
richard.cieri@kirkland.com and ray.schrock@kirkland.com;.

Dated: 08-07-13 _____      Dated: 08-07-13 _____
        Sidney T. Lewis, pro se                      Yvonne D. Lewis, pro se

EXHIBIT
1

001

20826 - I17

AUG - 6 RECD 2-00 PM   Org: Hedrik
                                      cc: Eds

AUG 3 1987                    XC: Bernie M - 8-6-3

DIVISION OF AIRPORTS

**U.S. Department of Transportation**

**Federal Aviation Administration**

Great Lakes Region
Illinois, Indiana, Michigan,
Minnesota, North Dakota,
Ohio, South Dakota,
Wisconsin

RECEIVED
JUL 30 1987
PUBLIC UTILITIES/
AVIATION DEPT.

July 28, 1987

Mr. Michael D. Long, P.E.
Director, Public Utilities And Aviation
109 N. Front Street, 4th Floor
Columbus, Ohio  43215-2835

Dear Mr. Long:

This is to notify you that the Federal Aviation Administration (FAA) has evaluated your final submission of the noise exposure maps and supporting documentation transmitted by your letter of March 26, 1987, in accordance with section 103(a)(1) of the Aviation Safety and Noise Abatement Act of 1979 (ASNA), and has determined that they are in compliance with applicable requirements of 14 CFR Part 150. Further, we have determined that Noise Exposure Map - 1985 (1 of 2) and Noise Exposure Map - 1990 (2 of 2) as presented in the Part 150 Noise Compatibility Program for Port Columbus International Airport fulfill the requirements of the noise exposure maps and supporting documentation. FAA's determination that your noise exposure maps are in compliance is limited to a finding that the maps were developed in accordance with the procedures contained in Appendix A of Federal Aviation Regulation (FAR) Part 150.  Such determination does not constitute approval of your data, information or plans.

Should questions arise concerning the precise relationship of specific properties to noise exposure contours depicted on your noise exposure maps, you should note that the FAA will not be involved in any way in determining the relative locations of specific properties with regard to the depicted noise contours, or in interpreting the maps to resolve questions concerning, for example, which properties should be covered by the provisions of section 107 of the Act.  These functions are inseparable from the ultimate land use control and planning responsibilities of local government.  These local responsibilities are not changed in any way under Part 150 or through FAA's determination relative to your noise exposure maps.  Therefore, the responsibility for the detailed overlaying of noise exposure contours onto the maps depicting properties on the surface rests exclusively with you, the airport operator, or with those public agencies and planning agencies with which consultation is required under section 103 of the Act.  The FAA relies on the certification by you, under 150.21 of FAR Part 150, that the statutorily required consultation has been accomplished.



002



**U.S. Department
of Transportation**

**Federal Aviation
Administration**

# Memorandum

| | | | |
|---|---|---|---|
| **Subject:** | ACTION:  FAR Part 150 Noise Compatibility Program, Record of Decision; Port Columbus International Airport, Columbus, Ohio | **Date:** | SEP 11 1987 |
| **From:** | Director, AGL-1 | **Reply to Attn. of:** | Lamberts:384-7387 |

**To:**   Administrator

The city of Columbus, Public Utilities and Aviation Department, owner and operator of Port Columbus International Airport, has submitted noise exposure maps (NEM's) and a proposed noise compatibility program (NCP) to this office.  The NEM's were previously accepted by FAA effective July 27, 1987.  The proposed NCP must be approved or disapproved on or before January 23, 1988.  A Federal Register notice announcing the submission of the NCP for FAA approval was published July 27, 1987.  The maps and proposed program have been coordinated with airport users, community officials, land use planning agencies, and the public.  Documentation of this coordination is found in the appendices of the study report.

Earlier review of the proposed NCP by this office and APP-600 found the program to be compliant with the standards set forth in FAR Part 150, paragraph 150.23.  This submittal requests formal FAA review and approval of the NCP for Port Columbus International Airport.  The airport is situated in the eastern part of the city of Columbus, which is currently designated as a medium hub.  It has 184 based aircraft and had approximately 230,000 operations in 1986.  This Part 150 study was funded under AIP Grant 84-2-3-39-0025-03-85 with a Federal project share of $267,188, which includes a master plan update.

This office believes the NCP complies with published standards for FAR Part 150 submittals.  We have coordinated this report with Regional Counsel, the regional Planning Staff, and affected operational divisions.  We are pleased to forward this candidate NCP for your consideration.  We recommend you approve this NCP.

*Bill Pollard*

William H. Pollard

Attachment

003

2

Date:
Subject:  FAR Part 150 Noise Compatibility Program, Record of Decision;
          Port Columbus International Airport, Columbus, Ohio

---

Associate Administrator for Airports, ARP-1

(Concur)/Non-concur: _Robert E. Whinbee_  Date: 9/16/87

Associate Administrator for Policy and International Aviation, API-1

(Concur)/Non-concur: _____  Date: 9/18/87

Chief Counsel, AGC-1

(Concur)/Non-concur: _by: Carol M. Aspull_  Date: 9/21/87

Administrator, AOA-1

(Approved)/Disapproved: _A. M. Loiter_  Date: 9-25-87

004

20826 - I14



City of Columbus
Mayor Dana G. Rinehart

# Public Utilities and Aviation Department

MICHAEL D. LONG, Director

March 26, 1987

Mr. Bob Allen
FAA-ADO
Willow Run Airport-East Side
880 Beck Road
Belleville, Michigan  48111

Dear Mr. Allen:

With this letter, the City of Columbus offers Noise Exposure Map-1985 (1 of 2) and Noise Exposure Map-1990 (2 of 2), as presented in the Part 150 Noise Compatibility Program for Port Columbus International Airport (PCIA), as the official noise exposure maps to be accepted by the Federal Aviation Administration.

This letter also certifies that since the FAR 150 Noise Study, Noise Contour Maps for both base year (1985) and base year plus five (5) years (1990) have been prepared for PCIA under AIP Project Number 3-39-0025-03, there have been no significant changes in the following airport operational characteristics that would invalidate the proposed Noise Compatibility Program. A tabulation entitled "Summary INM Input Data for Noise Maps" is attached.

Sincerely,

MICHAEL D. LONG, P.E.
Director
Public Utilities and Aviation

MDL/BFN:sss
Enclosures

cc: Mr. David Shine
    AGL-610

005

20826 - I15



**PART 150 STUDY ORGANIZATION**
**PORT COLUMBUS INTERNATIONAL AIRPORT**

CITY OF COLUMBUS

**NOISE STUDY CONSULTANT TEAM**

**LAND USE PLANNING COMMITTEE**
- Mid-Ohio Regional Planning Commission
- Columbus
- Gahanna
- Whitehall
- Bexley
- Mifflin Township
- Jefferson Township
- Reynoldsburg

**PUBLIC INVOLVEMENT**
- Public Information Meetings
- Periodic Newsletters
- City Contact/Information Telephone Numbers

**TECHNICAL/OPERATIONS COMMITTEE**
- Airport Operations (Columbus)
- FAA Air Traffic Control
- FAA Airports District Office
- Air Transport Association (ATA)
- Air Line Pilots Association (ALPA)
- Local Air Carrier Representative
- National Business Aircraft Association (NBAA)
- Local Professional Pilots Association
- Commuter Representative
- FBO Representative
- Citizen Representative
- Mid-Ohio Regional Planning Commission

EXHIBIT A-1

006





008



009

EXHIBIT

2

010





**Wednesday,**
**April 28, 2010**

## Part II

# Environmental Protection Agency

**40 CFR Part 87**
**Advance Notice of Proposed Rulemaking on Lead Emissions From Piston-Engine Aircraft Using Leaded Aviation Gasoline; Proposed Rule**

O 11

20318F14

**ATTACHMENT B**
**Avigation Easement**

137475    TIME 10:20A M
RECORDER FRANKLIN CO., OHIO

SEP 2 1992

-- HOMEOWNER PARTICIPATION AGREEMENT
RESIDENTIAL SOUND INSULATION PROGRAM
Port Columbus International Airport

RICHARD B. METCALF, RECORDER

RECORDER'S FEE 18⁰⁰

This easement is conveyed from YVONNE DeCAROL WEBB.
hereinafter called "Grantor", to the Columbus Municipal Airport
Authority of Columbus, Ohio, hereinafter called the "Grantee".
This easement is entered into this 20TH day of APRIL ,
1992.

Grantor is the owner of land and improvements thereto located at
1895 ALVASON AVE., COLUMBUS , of the State of Ohio, and
described as follows:

**DESCRIPTION**

Being Lot Number Seventeen (17) of Argyle Park Subdivision, as
the same is numbered and delineated upon the recorded plat
thereof, of record in Plat Book 36, page 6, Recorder's Office,
Franklin County, Ohio.

The Grantee is the proprietor of the Port Columbus International
Airport.

MAILD
ENVELOPE FURNISHED

TRANSFER
NOT NECESSARY
SEP 2 1992
JOSEPH W. TESTA
AUDITOR
FRANKLIN COUNTY, OHIO

CONVEYANCE TAX
EXEMPT
PM
JOSEPH W. TESTA
FRANKLIN COUNTY AUDITOR

012

# Presidential Documents

## Title 3—The President

### EXECUTIVE ORDER 11738

Providing for Administration of the Clean Air Act and the Federal
Water Pollution Control Act With Respect to Federal Contracts,
Grants, or Loans

By virtue of the authority vested in me by the provisions of the Clean
Air Act, as amended (42 U.S.C. 1857 et seq.), particularly section 306
of that Act as added by the Clean Air Amendments of 1970 (Public Law
91–604), and the Federal Water Pollution Control Act (33 U.S.C. 1251
et seq.), particularly section 508 of that Act as added by the Federal
Water Pollution Control Act Amendments of 1972 (Public Law
92–500), it is hereby ordered as follows:

SECTION 1. *Policy.* It is the policy of the Federal Government to im-
prove and enhance environmental quality. In furtherance of that policy,
the program prescribed in this Order is instituted to assure that each
Federal agency empowered to enter into contracts for the procurement
of goods, materials, or services and each Federal agency empowered to
extend Federal assistance by way of grant, loan, or contract shall under-
take such procurement and assistance activities in a manner that will
result in effective enforcement of the Clean Air Act (hereinafter referred
to as "the Air Act") and the Federal Water Pollution Control Act
(hereinafter referred to as "the Water Act").

SEC. 2. *Designation of Facilities.* (a) The Administrator of the Envi-
ronmental Protection Agency (hereinafter referred to as "the
Administrator") shall be responsible for the attainment of the purposes
and objectives of this Order.

(b) In carrying out his responsibilities under this Order, the Admin-
istrator shall, in conformity with all applicable requirements of law,
designate facilities which have given rise to a conviction for an offense
under section 113(c)(1) of the Air Act or section 309(c) of the Water
Act. The Administrator shall, from time to time, publish and circulate
to all Federal agencies lists of those facilities, together with the names
and addresses of the persons who have been convicted of such offenses.
Whenever the Administrator determines that the condition which gave
rise to a conviction has been corrected, he shall promptly remove the
facility and the name and address of the person concerned from the list.

SEC. 3. *Contracts, Grants, or Loans.* (a) Except as provided in section
8 of this Order, no Federal agency shall enter into any contract for the
procurement of goods, materials, or services which is to be performed in

O13

25162

whole or in part in a facility then designated by the Administrator pursuant to section 2.

(b) Except as provided in section 8 of this Order, no Federal agency authorized to extend Federal assistance by way of grant, loan, or contract shall extend such assistance in any case in which it is to be used to support any activity or program involving the use of a facility then designated by the Administrator pursuant to section 2.

SEC. 4. *Procurement, Grant, and Loan Regulations.* The Federal Procurement Regulations, the Armed Services Procurement Regulations, and, to the extent necessary, any supplemental or comparable regulations issued by any agency of the Executive Branch shall, following consultation with the Administrator, be amended to require, as a condition of entering into, renewing, or extending any contract for the procurement of goods, materials, or services or extending any assistance by way of grant, loan, or contract, inclusion of a provision requiring compliance with the Air Act, the Water Act, and standards issued pursuant thereto in the facilities in which the contract is to be performed, or which are involved in the activity or program to receive assistance.

SEC. 5. *Rules and Regulations.* The Administrator shall issue such rules, regulations, standards, and guidelines as he may deem necessary or appropriate to carry out the purposes of this Order.

SEC. 6. *Cooperation and Assistance.* The head of each Federal agency shall take such steps as may be necessary to insure that all officers and employees of his agency whose duties entail compliance or comparable functions with respect to contracts, grants, and loans are familiar with the provisions of this Order. In addition to any other appropriate action, such officers and employees shall report promptly any condition in a facility which may involve noncompliance with the Air Act or the Water Act or any rules, regulations, standards, or guidelines issued pursuant to this Order to the head of the agency, who shall transmit such reports to the Administrator.

SEC. 7. *Enforcement.* The Administrator may recommend to the Department of Justice or other appropriate agency that legal proceedings be brought or other appropriate action be taken whenever he becomes aware of a breach of any provision required, under the amendments issued pursuant to section 4 of this Order, to be included in a contract or other agreement.

SEC. 8. *Exemptions—Reports to Congress.* (a) Upon a determination that the paramount interest of the United States so requires—

(1) The head of a Federal agency may exempt any contract, grant, or loan, and, following consultation with the Administrator, any class of contracts, grants or loans from the provisions of this Order. In any such case, the head of the Federal agency granting such exemption shall (A) promptly notify the Administrator of such exemption and the justification therefor; (B) review the necessity for each such exemption annually; and (C) report to the Administrator annually all such exemptions in effect. Exemptions granted pursuant to this section shall be for a period not to exceed one year. Additional exemptions may be granted

014

**THE PRESIDENT** 25163

for periods not to exceed one year upon the making of a new determination by the head of the Federal agency concerned.

(2) The Administrator may, by rule or regulation, exempt any or all Federal agencies from any or all of the provisions of this Order with respect to any class or classes of contracts, grants, or loans, which (A) involve less than specified dollar amounts, or (B) have a minimal potential impact upon the environment, or (C) involve persons who are not prime contractors or direct recipients of Federal assistance by way of contracts, grants, or loans.

(b) Federal agencies shall reconsider any exemption granted under subsection (a) whenever requested to do so by the Administrator.

(c) The Administrator shall annually notify the President and the Congress of all exemptions granted, or in effect, under this Order during the preceding year.

SEC. 9. *Related Actions.* The imposition of any sanction or penalty under or pursuant to this Order shall not relieve any person of any legal duty to comply with any provisions of the Air Act or the Water Act.

SEC. 10. *Applicability.* This Order shall not apply to contracts, grants, or loans involving the use of facilities located outside the United States.

SEC. 11. *Uniformity.* Rules, regulations, standards, and guidelines issued pursuant to this order and section 508 of the Water Act shall, to the maximum extent feasible, be uniform with regulations issued pursuant to this order, Executive Order No. 11602 of June 29, 1971, and section 306 of the Air Act.

SEC. 12. *Order Superseded.* Executive Order No. 11602 of June 29, 1971, is hereby superseded.

*Richard Nixon*

THE WHITE HOUSE,
  September 10, 1973.

[FR Doc.73–19498 Filed 9–10–73; 4:35 pm]

015

EXHIBIT
A

001

64693602

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

*MOTION*

| | | |
|---|---|---|
| SIDNEY LEWIS et al. | : | Case No. 98CVC05-3445 |
| Plaintiffs | : | JUDGE ALAN C. TRAVIS |
| v. | : | |
| CITY OF COLUMBUS | : | |
| Defendant. | : | |

## MOTION OF DEFENDANT CITY OF COLUMBUS TO DISMISS FOR FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT AND TO STRIKE

Now comes Defendant City of Columbus, by and through its counsel, City Attorney Janet Jackson and hereby moves the court, pursuant to Civ. R. 12(B)(6), to dismiss all claims set forth in Plaintiffs' complaint for failure to state a claim upon which relief can be granted, or in the alternative, pursuant to Civ. R. 12(E) and 12(F), for a definite statement and to strike. Defendant relies on the following memorandum in support of its motion.

Respectfully submitted,

CITY OF COLUMBUS DEPARTMENT OF LAW
JANET E. JACKSON, CITY ATTORNEY

*Cheryl Roberto*

Elizabeth C. Barke (0064838) APPR
Cheryl Roberto (0039036) APPR
Assistant City Attorneys
90 West Broad Street, Room 200
Columbus, Ohio 43215
Attorneys for Defendant
(614) 645-7385

002

8A

## MEMORANDUM IN SUPPORT

64693E03

### I.    FACTS

On May 4, 1998, three individuals and a neighborhood civic association initiated the above-captioned *pro se* action against the City of Columbus.  The complaint alleges that from 1993 through 1998 the City "intentionally conspired to devalue the real estate of the plaintiffs by taking of lands around plaintiffs property to enclose them in an industrial area where their health, property values, and community values" will be destroyed.  Plaintiffs assert that this action constitutes a violation of the United States Constitution's guarantees of equal protection and due process, as well as a civil rights violation.  Plaintiffs assert that this Court has jurisdiction over this matter pursuant to R.C. § 163.09(c), which relates to the valuation of property which has been appropriated by a public agency, and R.C. § 5543.13, which relates to compensation to owners of real property which is damaged by the county engineer.

The caption of the complaint references R.C. §163.56, which relates to relocation assistance for persons displaced by the appropriation of real property by a public agency, 42 U.S.C. §§ 1983, 1985, 1986 and 1988, Civ. R. 4, the United States Constitution, 14th Amendment, and the Ohio Constitution. Plaintiffs attached to their complaint a two-page "Memorandum in Support," five affidavits, a copy of the cover page to City Council Ordinance Number 1533-93, and copies of portions of the United States Code Annotated.

### II.    LAW AND ARGUMENT

A.    *Plaintiffs' complaint must be dismissed for failure to state a claim as they can prove no set of facts entitling them to recovery against the City.*

The City moves this Court to dismiss Plaintiffs' action for failure to state a claim.  When considering a motion brought under Civ. R. 12(B)(6), the court, as a matter of law, must accept

64693E04

all of the allegations stated in the complaint as true.  To grant such a motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.  *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.

Although Plaintiffs list numerous causes of action under multiple theories based upon both the Ohio and U.S. Constitutions and sections of both the Ohio Revised Code and the United States Code, Plaintiffs have alleged a single fact:  the City "intentionally conspired to devalue the real estate of the plaintiffs by taking of lands around plaintiffs property to enclose them in an industrial area where their health, property values, and community values" will be destroyed.  As best as the City is able to ascertain, Plaintiffs appear to aver that by assuming ownership of land in proximity to Plaintiffs, the City has damaged the value of Plaintiffs' real property.  Thus, the essence of Plaintiffs' complaint is an allegation of a *de facto* taking by the City in violation of constitutional principles and codified appropriation processes.

Plaintiffs' complaint must fail in that the facts, even if assumed to be true, do not constitute a taking.  Whether property has been taken for a public use so as to require just compensation is determined by the character of the invasion, not by the amount of damage suffered.  Damage or loss by itself does not create a taking.  *Woodland Market Realty Company v. City of Cleveland*, 426 F.2d 955, 958 (6th Cir. 1970).  There is no *de facto* taking of properties which have decreased in value unless there is a physical invasion, damage or injury, or a restraint of some type, or action by the City to appropriate such properties." *Sayre v. City of Cleveland*, 493 F.2d 64, 70 (6th Cir. 1974), *cert. den.* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64.  Actions done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use or value, do not

64693E05

amount to a taking of such property within the meaning of the constitutional provision that

private property shall not be taken for public use without just compensation.  *Woodland*

*Market*, 426 F. 2d at 958.  Diminution of value is not itself a taking.  *State, ex rel. Taylor v.*

*Whitehead* (1982), 70 Ohio St.2d 37, 434 N.E.2d 732.  The fact that property is rendered less

desirable as a result of governmental activity does not in and of itself constitute a taking so as

to entitle the owners to compensation.  *McKee v. City of Akron* (1964), 176 Ohio St. 282, 199

N.E.2d 592, *overruled on other grounds by Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio

St. 3d 26, 442 N.E.2d 749.  Alteration of the character of a neighborhood is not a taking.

*Woodland Market*, 426 F. 2d at 958.

Assuming, but not conceding as true that the City's ownership of property in Plaintiffs'

neighborhood caused the value of the Plaintiffs' real property to diminish, such diminished

value does not constitute a taking and therefore, Plaintiffs fail to state a claim on that basis.

Since the foundation of Plaintiffs' constitutional and statutory claims is a taking, all of their

derivative allegations must also fail for failure to state a claim.

B.    *Plaintiffs' complaint is so vague or ambiguous that the City cannot reasonably be
      required to frame a responsive pleading.  Additionally, it contains insufficient claims,
      redundant, immaterial, impertinent or scandalous matter which should be stricken.*

As stated above, as best as the City is able to ascertain, Plaintiffs have attempted to

state a claim based on a *de facto* taking.  Should the Court determine Plaintiffs' complaint

states something other than or in addition to that addressed, Defendant alternatively moves

the Court for a more definite statement and to strike nonconforming portions of Plaintiffs'

pleading.

The Ohio Civil Rules require "notice pleading."  Plaintiffs are required to make a

short plain statement of their claim showing that they are entitled to relief.  Civ. R.

-4-

005

64693E06

8(A)(1). Each averment of the pleading shall be simple concise, and direct. Civ. R. 8(E).

All averments of claim shall be made in numbered paragraphs, the contents of each of

which shall be limited as far as practicable to a statement of a single set of circumstances.

Civ. R. 10(B). "Notice pleading" under Civ.R. 8(A) and 8(E) requires that a claim

concisely set forth only those operative facts sufficient to give "fair notice of the nature of

the action." *Columbia Gas of Ohio, Inc. v. Robinson*, 81 OMisc.2d 15, 673 N.E.2d 701

(Ohio Mun. 1995).

If a pleading fails to provide fair notice, a defendant may move for relief in the

form of an order for a definite statement or to strike insufficient or immaterial matter.

Rule 12(E) of the Rules of Civil Procedure provides that:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous
> that a party cannot reasonably be required to frame a responsive pleading, he may
> move for a definite statement before interposing his responsive pleading.

Civ. R. 12(F) provides that the court may order stricken from any pleading any

insufficient claim or defense or any redundant, immaterial, impertinent or scandalous

matter.

Plaintiffs' complaint asserts a single fact to support a list of alleged violations. The

attachments to the complaint contain a disassociated narrative of perceived wrongs with the

only apparent common thread being the allegation of a City action transpiring in northeast

Columbus. Plaintiffs' filing is simply too vague or ambiguous for the City of Columbus

reasonably to decipher. Defendant respectfully requests that the attachments to the complaint

be stricken as an insufficient claim and immaterial and that Plaintiffs be directed to file a

complaint which contains a concise statement of their claims in numbered paragraphs and

which provides fair notice to the City of such claim(s).

III.    CONCLUSION                                                    64693E07

For the foregoing reasons, the City of Columbus requests that this Court dismiss Plaintiffs' complaint with prejudice for failure to state a claim for which relief can be granted pursuant to Civ. R. 12(B)(6). Alternatively, the City of Columbus requests that this Court strike nonconforming portions of Plaintiffs' pleading and order Plaintiffs to file a more definite statement of their claims.

Respectfully submitted,

CITY OF COLUMBUS DEPARTMENT OF LAW
JANET E. JACKSON, CITY ATTORNEY

_____
Elizabeth C. Burke (0064838)
Cheryl Roberto (0039036)
Assistant City Attorneys
90 West Broad Street, Room 200
Columbus, Ohio 43215
Attorneys for Defendant
(614) 645-7385

-6-
007

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Motion of Defendant City of Columbus for

More Definite Statement and to Strike or, in the Alternative, To Dismiss for Failure to State a

Claim was sent by regular U.S. Mail, postage prepaid, this _28th_ day of May, 1998, to the

following:

Mr. Sidney Lewis
1875 Alvason Avenue
Columbus, Ohio 43219

Mr. James Brawham
1905 Woodland Avenue
Columbus, Ohio 43219

Mr. Carl Walker
1704 E. 24th Avenue
Columbus, Ohio 43219

Ms. Betty L. Peele
The Argyle Park Civic Association
1704 E. 24th Avenue
Columbus, Ohio 43219

_Cheryl C. Roberto_
Cheryl Roberto
Assistant City Attorney



FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
98 MAY 28  PM 3: 56