Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP,*
*Stonehill Capital Management LLC, and Bayview Fund*
*Management LLC, each in its capacity as*
*investment advisor to certain funds, and for CQS ABS Master*
*Fund Limited and CQS ABS Alpha Master*
*Fund Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Residential Capital, LLC, *et al*., | ) ) ) | Case No. 12-12020 (MG) |
| Debtors. | ) ) | Jointly Administered |

_____

**MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL MANAGEMENT LLC, CQS ABS ALPHA MASTER FUND LIMITED, CQS ABS MASTER FUND LIMITED, AND BAYVIEW FUND MANAGEMENT LLC'S MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF S.P. KOTHARI REGARDING THE DEBTORS' 9019 MOTION (*IN LIMINE* MOTION TWO)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and CQS ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited (collectively, the "**Investors**") hereby file this motion *in limine* to preclude the expert testimony of S.P. Kothari regarding the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors (the "**9019 Motion**").

## PRELIMINARY STATEMENT

Mr. Kothari has been offered as an expert by the Trustees to propound on the reasonableness of the analysis conducted by the Trustees' financial advisor, Duff & Phelps, LLC. But, rather than conduct any sort of independent analysis, Mr. Kothari merely parrots certain of Duff & Phelps' conclusions, accepting all of their key underlying assumptions without question. As such, Mr. Kothari's testimony is both unreliable and unhelpful and should be precluded.

For example, Mr. Kothari concludes that the Commutation Payment Amount of $253.3 million Commutation Amount that the FGIC-wrapped trusts are to receive pursuant to the Settlement Agreement is within a range of present values of expected future payouts under the FGIC Rehabilitation Plan, but he does not know how the Commutation Amount was derived. Similarly, Mr. Kothari opines that the discount rate applied by Duff & Phelps when calculating future potential recoveries pursuant to the FGIC Rehabilitation Plan was reasonable, yet Mr. Kothari does not know how Duff & Phelps chose that rate.

Moreover, although Mr. Kothari concurs with Duff & Phelps' conclusion that FGIC's potential litigation recoveries are too "speculative" and thus should be given no value

- 2 -

whatsoever, he admittedly is not a lawyer, has no expertise in the area of assessing potential litigation recoveries or exposure and, indeed, has no knowledge of the nature of FGIC's claims, the amount of damages that FGIC seeks, the status of those litigations or any developments in the law that would shed light on the likelihood that FGIC might prevail in those cases.

Mr. Kothari's "expert" opinions with respect to the market value of the FGIC-wrapped securities is similarly infirm. Mr. Kothari conjures that "one cannot conclude from [the] price declines" in the market value of the FGIC-wrapped securities that the Settlement Agreement is unfavorable to investors. However, he fails to provide any explanation for that belief or to posit an alternative theory for the price declines.

Finally, Mr. Kothari's opinion will not aid the Court because he takes no stance on the reasonableness of Settlement Agreement from an economic point of view or the standard of care against which the reasonableness of the Trustees' conduct in approving the Settlement Agreement should be measured.

Mr. Kothari should therefore be precluded from testifying because 1) his opinion is unreliable because he failed to independently verify the method used to arrive at the Commutation Payment Amount of $253.3 million; 2) his opinion is unreliable because he failed to conduct an independent analysis of the discount rates used by Duff & Phelps; 3) his opinion is unreliable because he failed to analyze FGIC's potential litigation recoveries; 4) his opinion about price declines in FGIC-wrapped securities post-Settlement Agreement is an impermissible *ipse dixit* conclusion; 5) his opinion is unreliable because he failed to verify the accuracy of the underlying information that he relied on; and 6) his opinion will not aid the Court because he offers no opinion on whether the Settlement Agreement is in the best interests of investors or whether the Trustees acted in good faith.

## BACKGROUND

The Trustees offer Dr. Kothari as an expert to opine on four issues. First, Dr. Kothari was asked to opine on the reasonableness of the discount rates applied by Duff & Phelps in analyzing the expected payouts pursuant to the FGIC Rehabilitation Plan.[1] Yet, Dr. Kothari was not asked to "render an opinion on the *appropriate* discount rate to use in analyzing the expected payouts to the ResCap policyholders under FGIC's rehabilitation plan."[2]

Second, Dr. Kothari was asked to provide an opinion on the reasonableness of the conclusion that the Commutation Payment Amount "is within the range of present values of the expected payouts to ResCap policyholders" pursuant to the FGIC Rehabilitation Plan.[3] He was not asked, however, to assess whether the Commutation Payment Amount itself was reasonable.[4]

Third, Dr. Kothari was asked to determine whether it was reasonable for Duff & Phelps to exclude FGIC's potential litigation recoveries in calculating expected payouts pursuant to the FGIC Rehabilitation Plan.[5] In doing so, however, Dr. Kothari did no analysis of the multi-billion dollar claims involved, and could not even identify all of the causes of action that FGIC was pursuing, or ascertain the total amount of damages that FGIC was seeking.[6]

Fourth, Dr. Kothari was asked to opine on whether price declines of FGIC-wrapped securities in the wake of the announcement of the Settlement Agreement suggests that

---

[1] Direct Testimony Declaration of S.P. Kothari, Ph.D. ¶ 5 (July 31, 2013) [Dkt. No. 4443] [hereinafter "Kothari Direct"].

[2] Transcript of Deposition of S.P. Kothari, Ph.D. 42:25-43:10 (July 26, 2013) (emphasis added) (Declaration of Mary Eaton ("Eaton Decl.") Ex. 11) [hereinafter "Kothari Tr."].

[3] Kothari Direct ¶ 5.

[4] Kothari Tr. 44:5-16 (Eaton Decl. Ex. 11).

[5] Kothari Direct ¶ 5.

[6] Kothari Tr. 83:21-84:16 (Eaton Decl. Ex. 11).

the Settlement Agreement is unfavorable to holders of those securities.[7] Dr. Kothari does not provide any opinion, however, on what may have caused the prices to drop.[8]

Furthermore, in providing each of his four opinions, Dr. Kothari was not asked to, nor did he, independently verify the information relied on by Duff & Phelps, including the cash flow forecasts.[9] Nor did Dr. Kothari opine on whether the Settlement Agreement was in the best interests of investors or whether the Trustees acted in good faith in approving the Settlement Agreement.[10]

## ARGUMENT

A court has a "basic gatekeeping obligation" regarding the admissibility of expert testimony to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999). As gatekeeper, a court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

As a result, a court acting as a gatekeeper pursuant to *Daubert* must consider: 1) whether the witness is "qualified as an expert"; 2) whether the expert's "opinion is based upon reliable data and methodology"; and 3) whether the expert's testimony on a particular issue "will assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (internal quotation marks omitted).

---

[7] Kothari Direct ¶ 5.

[8] *Id.* at ¶ 29.

[9] Kothari Tr. 47:21-22, 172:7-11 (Eaton Decl. Ex. 11).

[10] *Id.* at 56:15-25.

## I. Dr. Kothari Should Be Precluded from Testifying Because His Opinions are Unreliable and Unfounded

In deciding whether an expert opinion is reliable, a court must consider the indicia of reliability outlined in Rule 702, and, in particular, whether: "the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

Additionally, "it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). In determining whether an expert's analysis is unreliable, a court "should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Although a minor flaw may not automatically make an expert's opinion inadmissible, a court should bar an expert's testimony when "the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.*; *see also Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 186-87 (S.D.N.Y. 2006) (rejecting expert conclusion on the basis that the expert relied "on projections that were not borne out in reality.").

Finally, an "expert must do more than merely provide "a 'because I said so' explanation." *E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383, 2010 WL 3466370, at *15 (S.D.N.Y. Aug. 31, 2010). A court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

A.  *Dr. Kothari Blindly Accepts the Information Underlying Duff & Phelps' Analysis*

Dr. Kothari understood that Duff & Phelps relied on certain information provided by FGIC, and that Duff & Phelps did not verifying the accuracy of that information.[11] Dr. Kothari did not undertake to verify any of the underlying information supplied by FGIC either.[12] For instance, Dr. Kothari "did not independently verify cash flow forecasts";[13] instead, he blindly accepted the cash flows "given from Lazard and from FGIC and from Duff & Phelps," without "look[ing] into the veracity or accuracy of those projected cash flows."[14]

This begs the question of what purpose Dr. Kothari, a cash flow expert, could possibly serve if he not only failed to conduct his own cash flow analysis, but if he also failed to verify the cash flow analysis used by Duff & Phelps. The answer, is none.

Because Dr. Kothari failed to scrutinize any of the underlying information relied on by Duff & Phelps, he cannot reliably opine on the reasonableness of Duff & Phelps' analysis, and the Court should therefore preclude his testimony.[15]

B.  *Dr. Kothari Failed to Verify the Method Used to Arrive at the Commutation Payment Amount*

Dr. Kothari opines that the Commutation Payment Amount of $253.3 million "is within the range of present values of the expected payouts to ResCap policyholders."[16] Dr. Kothari has

---

[11]   Kothari Tr. 61:22-62:2, 64:2-8 (Eaton Decl. Ex. 11).

[12]   *Id.* at 66:22-67:4.

[13]   *Id.* at 47:21-22.

[14]   *Id.* at 172:7-11.

[15]   Having relied on the underlying information without scrutinizing it, Dr. Kothari does little more than serve as an impermissible "conduit" for Duff & Phelps. *See Malletier v. Dooney & Burke, Inc.*, 525 F. Supp. 2d 558, 573 (S.D.N.Y. 2007) (precluding portion of expert's testimony that wholly relied on the analysis of another expert). If the Trustees wished to demonstrate the reasonableness of Duff & Phelps' analysis, they should have asked Dr. Kothari to independently assess the analysis, rather than mindlessly regurgitate it.

[16]   Kothari Direct ¶ 6.

no idea, however, how the Commutation Payment Amount was derived, nor did he even consider that as part of his analysis.[17]

Furthermore, Dr. Kothari was aware that, in arriving at the Commutation Payment Amount, Duff & Phelps applied a "haircut of 40% of unpaid payout claim estimates."[18] Dr. Kothari, however, did not discuss with anyone, nor did he give any consideration to, that 40% haircut.[19]

Dr. Kothari simply cannot be permitted to opine on the reasonableness of the Commutation Payment Amount if he has not formulated an understanding of how it was derived or why certain steps were taken in calculating that amount. Dr. Kothari's opinion on this point is not even a "because I said so" explanation, *E.E.O.C.*, 2010 WL 3466370, at*15; it is a "because *they* said so" explanation, and simply cannot survive the "rigorous examination" that this Court is bound to apply. *Amorgianos*, 303 F.3d at 267.

C.    *Dr. Kothari Failed to Independently Calculate a Discount Rate Range*

Dr. Kothari also opines that Duff & Phelps applied a reasonable discount rate in its analysis.[20] Dr. Kothari does not know, however, how Duff & Phelps developed the range of discount rates that they applied, or why they used it.[21] Moreover, Dr. Kothari did not even

---

[17]    Kothari tr. 132:8-13 (Eaton Decl. Ex. 11). Nor did Dr. Kothari discuss with Duff & Phelps what the expected range of payouts pursuant to the FGIC Rehabilitation Plan would be. *Id.* at 117:8-21.

[18]    *Id.* at 134:4-7.

[19]    *Id.* at 134:4-135:5. This lack of analysis into the 40% haircut is in lockstep with Duff & Phelps' failure to inquire into the 40% haircut as well. *See* Deposition of Allen M. Pfeiffer 105:4-107:6 (July 24, 2013).

[20]    Kothari Direct ¶ 6.

[21]    Kothari Tr. 135:18-136:4 (Eaton Decl. Ex. 11).

- 8 -

consider whether it was appropriate or not for Duff & Phelps to simply use the same discount rate range that Lazard used.[22]

Nevertheless, on this subject Dr. Kothari at least took some affirmative action – he opened a book. Unfortunately for Dr. Kothari, he failed to follow the instructions in that book. The book Dr. Kothari turned to was the Ibbotson Cost of Capital Yearbook ("Ibbotson"), which he used to try to ascertain the reasonableness of the discount rate applied by Duff & Phelps.[23]

Dr. Kothari's use of Ibbotson is unreliable, however, because he ignored Ibbotson's warnings about using the book for companies in rehabilitation, such as FGIC. Ibbotson does not include in its calculation of weighted average cost of capital companies in rehabilitation, and specifically warns that the financial performance of such companies "would probably not be indicative of the financial performance of other companies in the industry."[24] Dr. Kothari also expressly disregarded Ibbotson's warning that, "On an individual company basis, the models utilized in this book may provide information that is inaccurate or misleading."[25]

In improperly relying on Ibbotson, Dr. Kothari failed to exhibit "the same level of intellectual rigor that characterizes the practice of an expert" in the field of cash flow valuation, and the Court should therefore preclude Dr. Kothari from testifying. *See Kumho Tire Co.*, 526 U.S. at 152.

---

[22]    *Id.* at 136:5-12.

[23]    *Id.* 137:5-18.

[24]    Ibbotson Cost of Capital 2013 Yearbook, page 7 (Eaton Decl. Ex. 39).

[25]    *Id.* at 5; Kothari Tr. 140:10-15 (Eaton Decl. Ex. 11) (testifying that he disagrees with the quoted warning in Ibbotson).

D.   *Dr. Kothari Unreasonably Failed to Consider FGIC's Potential Litigation Recoveries*

Dr. Kothari concluded that it was reasonable for Duff & Phelps to exclude FGIC's potential litigation recoveries from its analysis.[26] Ultimately, Dr. Kothari opined that "attempting to quantify the highly uncertain litigation recoveries and losses in the Duff & Phelps model would be speculative."[27]

Dr. Kothari explained that he had four reasons for concluding that the exclusion of litigation recoveries was reasonable. First, Dr. Kothari observed that "in some litigations FGIC is a plaintiff and in some litigations FGIC is a defendant," which Dr. Kothari believes creates uncertainty regarding "inflows and outflows," "timing of settlement," and the final outcome of the litigation.[28] Second, Dr. Kothari relied on a footnote in FGIC's financial disclosure in which FGIC noted uncertainty in potential litigation.[29] Next, Dr. Kothari relied on a declaration prepared by Jeffrey Lipps regarding the uncertainty of litigation.[30] Finally, Dr. Kothari, without explanation, relied on certain statistics regarding securities class action litigation in a misguided attempt to analogize to FGIC's likelihood of recovery in suits that, of course, are not securities class actions.[31] None of those reasons involve any independent analysis conducted by Dr. Kothari, and his lack of independent judgment in this area was laid bare upon examination at his deposition.

---

[26]   Kothari Direct ¶ 6.

[27]   *Id.* at ¶ 26.

[28]   Kothari Tr. 68:10-69:4 (Eaton Decl. Ex. 11).

[29]   Kothari Direct ¶ 22.

[30]   *Id.* at ¶ 25. Dr. Kothari chose to rely on Mr. Lipps even though Dr. Kothari had no clue whether Mr. Lipps was an expert in litigation recoveries, or any other field. *See* Kothari Tr. 96:11-97:3 (Eaton Decl. Ex. 11).

[31]   Kothari Direct ¶ 27.

Dr. Kothari admitted that there were several factors that he would typically examine when projecting litigation recoveries, but he failed to examine any of those factors here.  For instance, Dr. Kothari acknowledged that one can account for the stage of the litigation, developments in applicable law, range of recoveries in similar cases, and a legal and factual analysis of the strengths of the asserted claims.[32]

Here, however, Dr. Kothari admitted that he neglected to actually examine FGIC's asserted claims in detail.[33]  This was apparent in Dr. Kothari's barely rudimentary understanding of FGIC's claims: Dr. Kothari was only aware of one type of cause of action asserted by FGIC, was ignorant about the "total damages FGIC was seeking," and was unaware of what stage FGIC's cases were in.[34]  Dr. Kothari did not even consider the $206 million that FGIC is projected to obtain pursuant to the deal documents.[35]

Finally, Dr. Kothari also failed to "quantitatively" consider recoveries in similar cases or to compare FGIC's claims to those asserted by other monoline insurers elsewhere.[36]  Dr. Kothari misguidedly attempted to examine securities class action litigations as a comparison to FGIC's claims, but he could not provide specific details about why that comparison was attempted other than that securities class actions are "large, complex matters that are litigated in court" and involve discovery, expert reports, and depositions.[37]

---

[32] Id. at 73:4-74:7.

[33] Kothari Tr. 79:23-80:2 (Eaton Decl. Ex. 11).

[34] *Id.* 83:21-84:21.

[35] *Id.* at 94:20-95:8.

[36] Id. at 85:13-90:6.

[37] *Id.* at 106:16-107:16.

Dr. Kothari's lack of knowledge about FGIC's asserted claims therefore makes his opinion unreliable even by his own standards. His failure to educate himself on FGIC's claims means that he has no basis for his conclusion that excluding potential recoveries from analysis of the Settlement Agreement was reasonable, thus rendering his opinion unreliable.

E.    *Dr. Kothari Provides No Support for His Price Decline Conclusion*

Dr. Kothari's opinion on price declines is yet another textbook "because I said so" explanation. Dr. Kothari opines that a price decline in the market for FGIC-wrapped securities does not necessarily reflect a bad deal for investors, but he devotes merely one paragraph to this opinion in his direct testimony, the balance of which is little more than supposition.[38] Dr. Kothari only states that one cannot conclude by looking at the price decline alone whether the Settlement Agreement is unfavorable to investors, but then declines to offer an alternative explanation, or delve into what else may have caused the price decline. Dr. Kothari's one-paragraph opinion on this point is nothing more than a summary, *ipse dixit* conclusion that should be rejected by the Court. *See Joiner*, 522 U.S. at 146.

## II.    Dr. Kothari Should Be Precluded from Testifying Because His Opinion Will Not Aid the Court

Federal Rule of Evidence 702 provides that expert testimony will only be admissible "[i]f the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.

Dr. Kothari's proposed opinions would not be helpful to the Court because Dr. Kothari does not provide any opinion relating to the central issues in this dispute, namely, the Investors'

---

[38]    Kothari Direct ¶ 29.

objections to the proposed findings that 1) the FGIC Settlement Agreement, including the Commutation, is in the best interests of the investors in each of the FGIC Insured Trusts (including the Investors); and 2) the Trustees acted in good faith in entering into the FGIC Settlement Agreement.[39]

Dr. Kothari testified during his deposition that he has no opinion on whether the Settlement Agreement is in the best interests of investors, nor does he have an opinion on whether the Trustees acted in good faith.[40] Nor does Dr. Kothari even have an opinion on whether the Trustees acted reasonably in approving the Settlement Agreement or whether the Commutation was reasonable.[41]

Because Dr. Kothari has failed to opine on either of the proposed findings in dispute here, his opinion would not aid the Court in deciding whether to make those findings, and therefore should be precluded.

## CONCLUSION

WHEREFORE, the Investors respectfully request that the Court enter an Order precluding S.P. Kothari from offering expert testimony at the hearing regarding the 9019 Motion to be held on August 16 and August 19, 2013.

---

[39] *See* 9019 Motion, Ex. 1 ¶¶ C, D.

[40] Kothari Tr. 56:15-25 (Eaton Decl. Ex. 11).

[41] *Id.* 55:16-56:14.

Dated: August 7, 2013
      New York, New York

                    WILLKIE FARR & GALLAGHER LLP

                    By: /s/ Joseph T. Baio
                         Joseph T. Baio

                    Mary Eaton
                    Emma J. James
                    787 Seventh Avenue
                    New York, New York 10019
                    (212) 728-8000

*Attorneys for Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and for CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited.*