Joseph T. Baio
Mary Eaton
Emma J. James
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Attorneys for Monarch Alternative Capital LP,*
*Stonehill Capital Management LLC, and Bayview Fund*
*Management LLC, each in its capacity as*
*investment advisor to certain funds, and for CQS ABS Master*
*Fund Limited and CQS ABS Alpha Master*
*Fund Limited.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | Chapter 11 |
| Residential Capital, LLC, *et al.*, | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

_____


**MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL MANAGEMENT LLC, CQS ABS ALPHA MASTER FUND LIMITED, CQS ABS MASTER FUND LIMITED, AND BAYVIEW FUND MANAGEMENT LLC'S**
**MOTION *IN LIMINE* TO PRECLUDE THE TESTIMONY OF ALLEN M. PFEIFFER REGARDING THE DEBTORS' 9019 MOTION (MOTION *IN LIMINE* THREE)**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and CQS ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited (collectively, the "**Investors**") hereby file this motion *in limine* to preclude the expert testimony of Allen M. Pfeiffer regarding the Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees (the "**Trustees**") and Certain Institutional Investors (the "**9019 Motion**").

**PRELIMINARY STATEMENT**

Under the settled law of this Circuit, when a party fails to produce all documents "considered" or "relied upon" by an expert witness within the meaning of the Federal Rules, that witness is precluded from testifying at trial. Application of this fundamental rule of fairness requires that the Trustees' designated expert, Allen Pfeiffer, should be precluded from testifying at the upcoming hearing on the Debtors' 9019 Motion for approval of the FGIC Settlement Agreement.

The Trustees have designated Mr. Pfeiffer, a managing director of Duff & Phelps, the Trustee's financial advisor, as an expert witness to opine on the valuation of RMBS securities as part of the reorganization of FGIC, and on the reasonableness, from a financial perspective, of the Settlement Agreement between FGIC, the Debtors, the FGIC Trustees, and Certain Institutional Investors (the "Settlement Agreement"). On July 19, the Trustees purported to comply with the Federal Rules by producing Mr. Pfeiffer's expert report, together with certain materials he supposedly relied upon in reaching his opinions. It quickly became evident, however, that the Trustees had withheld documents whose production is *mandatory* under the

- 2 -

Rules, including facts and data that Mr. Pfeiffer considered or generated in formulating his opinions, as well as materials concerning the development, foundation, or basis of those opinions, whether Mr. Pfeiffer considered them in formulating the opinions he expressed or not.

The Trustees' withholding of these documents was no mere happenstance: it was purposeful and intentional and designed to prejudice the Investors' case. Indeed, in countless communications over numerous days – both before and after this Court made plain that the documents were to be produced or the witness would not be permitted to testify – the Investors repeatedly requested production of the missing documents only to be told that Mr. Pfeiffer's "*primary*" work papers (whatever that means) would be disclosed but nothing more. To make matters worse, just last night the Trustees informed the Investors that they would finally produce the long-requested materials today, August 7, and that the production would comprise "*several gigabytes*" of data.

Absent a continuance of the hearing set to commence in just over a week and an extension of the already-expired discovery period (which the Court has noted will not happen), it is impossible for the Investors to review and absorb all of that information and then re-depose the witness about those documents and their relation to his opinions. But a finding of prejudice is not necessary here. The Trustees have engaged in discovery gamesmanship of the worse kind and should not be allowed to profit from that. Mr. Pfeiffer should therefore be precluded from testifying at trial.

**BACKGROUND**

Even before the expert declarations were served, the Investors requested documents considered or relied upon by Duff & Phelps via document requests to the Trustees, FGIC, Duff

& Phelps, and Lazard.[1] With the exception of the Duff & Phelps Presentation and a draft Duff & Phelps Presentation – and despite the clear direction of the Court that all information "provided" to or "considered by" Duff & Phelps be produced[2] – documents responsive to these requests were not produced.

Investors once again requested documents considered or relied upon by Duff & Phelps following receipt of the July 19, 2013 Pfeiffer Expert Report. In response, the Trustees initially asserted that "non-privileged documents considered by Duff in preparing its analysis for the Trustees were previously produced,"[3] but then noted that a "single document that FGIC disclosed to the Trustees as part of the mediation that Duff considered" had been withheld.[4] Counsel to Duff & Phelps similarly stated that "Duff & Phelps and counsel for the Trustees have confirmed to me that they have produced all documents provided by Duff & Phelps, or that Duff & Phelps considered in connection with preparing its report" had been produced.[5]

---

[1] *See*, *e.g.*, *Monarch Alternative Capital LP and Stonehill Capital Management LLC's First Request for the Production of Documents to the Trustees* dated June 12, 2013 (Eaton Decl. Ex. 12); *Monarch Alternative Capital LP and Stonehill Capital Management LLC's First Request for the Production of Documents to Duff & Phelps Corp.* dated June 12, 2013 (Eaton Decl. Ex. 13); *Monarch Alternative Capital LP and Stonehill Capital Management LLC's First Request for the Production of Documents to Lazard Freres & Co., LLC* dated June 12, 2013 (Eaton Decl. Ex. 14).

[2] July 17, 2013 Hearing Tr. (Eaton Decl. Ex. 1) at 31:22-25 ("I want to make it clear, I'm going to have no patience if anything that was provided to Duff & Phelps that they considered in preparing their report is not provided. I mean, it's just – that should have been done already.")

[3] July 21, 2013 email from M. Johnson to M. Eaton and others re "Duff & Phelps Materials." Eaton Decl. Ex. 29.

[4] July 21, 2013 email from M. Johnson to M. Eaton and others re "Duff & Phelps Materials." Eaton Decl. Ex. 29.

[5] July 21, 2013 email from H. Koh to M. Eaton and others re "Duff & Phelps deposition." Eaton Decl. Ex. 29.

Notwithstanding these assertions, on July 22, the Trustees – after first repeating their claim that all documents had been produced[6] – stated that they would produce "two additional spreadsheets that reflect Duff's analysis of the trust losses."[7] That eleventh hour production was lacking as well since the excel files produced contained links to other excel files that had not been produced yet were critical if Duff & Phelps' calculations and analysis were to be tested.[8]

But the Trustees' obfuscation did not stop there. At his deposition on July 24, Mr. Pfeiffer admitted that the additional $92 million in value he estimated "will be distributed to the FGIC Insured Trusts" was information that did not exist and was not imparted to the Trustees at the time they determined to approve the FGIC Settlement Agreement.[9] To date, however, *no documents* have been produced regarding that calculation and Mr. Pfeiffer's assumptions behind or data used in making that estimate.[10] That is in spite of the facts that Mr. Pfeiffer and Duff & Phelps "spent significant time over many months estimating rep and warranty claims that would be applicable to these 47 trusts"[11] and that documents reflecting those estimates bear directly

---

[6] *See* July 22, 2013 email from M. Johnson to M. Eaton and others re "Duff & Phelps Materials" ("Mary: as previously indicated, everything which you're entitled to under the rules in respect of the Duff analysis and the trustees' expert reports have been produced to you."). Eaton Decl. Ex. 33.

[7] July 22, 2013 email from M. Johnson to M. Eaton and others re "Duff & Phelps Materials." Eaton Decl. Ex. 33.

[8] In response to numerous requests for the remaining responsive work papers, the Trustees asserted that all "primary workpapers" had been produced. But even if the law distinguished "primary workpapers" from (presumably) 'non-primary workpapers' – which it doesn't – the work papers that have been withheld by the Trustees feed into, and therefore are critical to, the calculations and analysis performed by Mr. Pfeiffer and Duff & Phelps. As such, and notwithstanding any label the Trustees attach to these work papers, they are clearly documents considered or relied upon by Mr. Pfeiffer in connection with his expert declaration. (For examples of the Trustees' novel attempt to withhold certain documents on the ground that they are non-"primary workpaper[s]" *see*, *e.g.*, July 25, 2013 Hearing Tr. (Eaton Decl. Ex. 3) at 17; and August 2, 2013 email from M. Johnson to M. Eaton and others re "In re Residential Capital, LLC, et al. (Case No. 12-12020 (MG)) - Email 1 of 2" (Eaton Decl. Ex. 35).)

[9] Pfeiffer Tr. (Eaton Decl. Ex. 10) at 131:14-132:9.

[10] *See* August 6, 2013 email from M. Johnson to M. Eaton and others (Eaton Decl. Ex. 44).

[11] Pfeiffer Tr. (Eaton Decl. Ex. 10) at 22:12-17.

- 5 -

upon his $92 million calculation.[12] When asked at deposition whether there were documents reflecting these "scenarios" and other work performed by Pfeiffer and Duff & Phelps in connection with these estimates and calculations, Mr. Pfeiffer acknowledged that Duff & Phelps "continuously modeled different assumptions on recovery and allocation"[13] and that "over many months [Duff and Phelps] have documented and analyzed recoveries."[14] Despite the existence of models and other analyses of the purported $92 million of additional payments to the FGIC Trustees, the Trustees have failed to produce a single document in support of Mr. Pfeiffer's opinion, although each Trustee willingly adopts the $92 million projection as true in their written submissions to this court.[15]

Even more astoundingly, on the evening of August 6 – *almost two weeks after the Conference during which the Court stated unequivocally that Mr. Pfeiffer's work papers must be produced* – counsel for the Investors received an email from counsel for the Trustees, indicating that they would be producing

> a hard drive that contains several gigabytes of raw databases, secondary databases with D&P's calculations, combinations and categorizations, and Excel files that serve as the next level of information 'underneath' the Loss Information, including Intex files for the 47 Trusts."[16]

The announcement that "several gigabytes" of additional data would be produced long after the close of the discovery period and shortly before trial was shocking in and of itself, since there

---

[12] Pfeiffer Tr. (Eaton Decl. Ex. 10) 122:19-20.

[13] Pfeiffer Tr. (Eaton Decl. Ex. 10) 123:23-24.

[14] Pfeiffer Tr. (Eaton Decl. Ex. 10) 123:15-16.

[15] July 31, 2013 Major Decl. [Dkt. No. 4438] ¶10; July 31, 2013 Sohlberg Decl. [Dkt. No. 4442] ¶31; July 31, 2013 Scott Decl. [Dkt. No. 4444] ¶9.

[16] August 6, 2013 email from M. Johnson to M. Eaton (Eaton Decl. Ex. 44).

- 6 -

would be no opportunity in the short amount of time left to secure, load and review the documents, let alone absorb their contents. But even more fundamentally, the documents at issue appear to comprise the core work papers underlying Duff & Phelps' estimates of the projected future losses of the 47 FGIC-wrapped trusts at issue. Those estimates form the basis of the complex calculations described in paragraphs 33 to 41 of Mr. Pfeiffer's Expert Declaration and which in turn comprise a critical component of each of Mr. Pfeiffer's opinions concerning the adequacy of the Commutation Amount.[17]

## ARGUMENT

### I. Pfeiffer Should Be Precluded From Testifying At Trial Because The Trustees Failed To Abide By Their Expert Disclosure Obligations.

Under the Federal Rules, all "facts or data" considered or relied upon by an expert who is to testify at trial must be disclosed, as well as all "assumptions" the expert utilized in formulating his opinions. Fed. R. Civ. P. 26(a)(2) and 26(b)4). This includes the expert's "notes," as well as materials concerning "alternative analyses, testing methods, or approaches to the issues on which [the expert is] testifying, whether or not the expert considered them in forming the opinions expressed. " Advisory Committee Note to the 2010 Amendment of Rule 26(b)(4). Indeed, it is well-established that "material generated by the expert in connection with his report and expert testimony," must be produced, and cannot be withheld on the ground that such materials are protected by the work product privilege because it is "quite clear that Rule 26 does not include within the definition of 'work product' documents generated or consulted by experts in connection with litigation." *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.* 171 F.R.D. 57, 62 (S.D.N.Y. 1997) (quoting *Hewlett-Packard Co. v. Bausch & Lomb*, 116 F.R.D. 533, 536 (N.D. Cal. 1987). *See also Dongguk University v. Yale University*, No. 3:08-

---

[17] *See generally* Pfeiffer Expert Decl., dated July 19, 2013 (Eaton Decl. Ex. 40.)

CV-00441, 2011 WL 1935865, at *1 (D. Conn. 2011) ("as a general matter, an expert's notes are not protected by 26(b)(4)(B) or (C), as they are neither drafts of an expert report nor communications between party's attorney and the expert witness").

Referencing the above Rules and the Advisory Committee Notes respecting their interpretation, this Court made it clear that no expert would be permitted to testify if the required disclosures were not made:

> The question now is whether Pfeiffer considered other documents or information … that have not been disclosed through document production or deposition testimony.  If the answer is no, then Pfeiffer may testify at trial.  If the answer is yes, then Pfeiffer may not testify at trial unless the addition documents or information is disclosed.[18]

Notwithstanding these bedrock legal principles and this Court's own admonition about the consequences of nondisclosure, the Trustees have played fast and loose with their discovery obligations, withholding "*several gigabytes*" of data that should have been produced long ago and which we have still not received.  To the contrary, the Trustees have taken the position all along that they need only produce work papers of Mr. Pfeiffer's that the they have unilaterally determined are his "*primary*" work papers.  But the Trustees have provided no support for their assertion that they have the right to pick and choose which work papers are "primary" and which are not -- and there is none.  And in any event, some of the work papers the Trustees appear to be labeling "non-primary" feed into – and, are therefore critical to – the limited set of work papers that have been produced.

Similarly, where a testifying expert has "reviewed documents in his role as an expert that he previously had reviewed in his role as consultant, the delineation between those roles would become blurred and those documents would be discoverable." *Grace A. Detwiler Trust v.*

---

[18] July 25, 2013 Hearing Transcript at 35 (Eaton Decl. Ex. 3)..

*Offenbecher*, 124 F.R.D. 545, 546 (S.D.N.Y. 1989). Documents considered by a testifying expert during his consulting engagement are only shielded where such expert is "retained to testify and in addition to advise counsel *outside the subject of his testimony*." *Beverage Mktg. Corp. v. Ogilvy & Mather*, *Direct Response, Inc.*, 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983) (emphasis added); *In re Air Crash at Dubrovnik*, No. MDL 1180, 2001 WL 777433, at *3 (D. Conn. 2001) (where "an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in [his] consultative capacity as long as there exists a clear distinction between the two roles.").

Here, Mr. Pfeiffer acknowledged that the documents reflecting his analysis of the projected losses on the FGIC-wrapped trusts were not produced,[19] even though those projections provide the undergirding for all of his opinions respecting the adequacy of the Commutation Amount under the FGIC Settlement Agreement. Mr. Pfeiffer similarly acknowledged that, in connection with his estimate that the FGIC Trusts will supposedly receive $92 million under the ResCap Plan, he considered and relied upon documents created or received that were not produced.[20] The Trustees seem to believe that they were under no obligation to produce those documents because they were not part of Mr. Pfeiffer's "primary" work papers (which is utter nonsense) and because Mr. Pfeiffer performed the analyses reflected in those documents while working on other projects as a consultant to the Trustees.[21] But as set forth above, that is not the law. And in the event ambiguity exists as to the hat Mr. Pfeiffer was wearing when he generated these documents, "any ambiguity as to the role played by the expert when reviewing or

---

[19] Pfeiffer Tr. at 202:5-202:14 (Eaton Decl. Ex. 10)..

[20] *See*, *e.g.*, Pfeiffer Tr. 122:12-17; 122:19-20; and 123:14-18 (Eaton Decl. Ex. 10).

[21] *See* August 6, 2013 email from M. Johnson to M. Eaton (Eaton Decl. Ex. 44).

- 9 -

generating documents should be resolved in the favor of the party seeking discovery." *B.C.F.* 171 F.R.D. at 62; *Messier v. Southbury Training Sch.*, No. 3:94-CV-1706 (EBB), 1998 WL 422858 at *2 (D. Conn. 1998) ("Any ambiguity about which function was served by the expert when creating a document must be resolved in favor of discovery."). Further, the Court stated at the July 25, 2013 hearing that:

> It is typical for consulting experts to be given access to information that may not be provided to testifying experts, but if the information is provided to a testifying expert who has considered it in forming expert opinions, information must be disclosed or the expert may not testify.[22]

Notwithstanding the Court's clear direction, no documents reflecting the "many months" Duff & Phelps spent "document[ing] and analyz[ing] recoveries"[23] have yet been produced either.

Under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information … as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence ... at a hearing or a trial, unless the failure was substantially justified or is harmless." *See also Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements*, --- F. Supp. 2d ---, 2013 WL 310403, at *2-3 (W.D.N.Y. 2013) (court precluded the defendant from offering testimony of his purported expert witness where the witness, *inter alia*, did not identify the facts or data considered by the witness in forming his opinions, and noted that "[a] party that fails to satisfy the Rule 26 disclosure requirements without justification is precluded from offering expert witnesses at trial") (quoting *Smolowitz v. Sherwin-Williams Co.*, No.. 02-CV-5940, 2008 WL 4862981, at *3 (E.D.N.Y. 2008)).

The Trustees cannot show that their failure to produce the required disclosures was "substantially justified." For one thing, the Investors have been seeking this information for

---

[22]    July 25, 2013 Hearing Tr. (Eaton Decl. Ex. 3) at 34:19-24.

[23]    Pfeiffer Tr. (Eaton Decl. Ex. 10) 123:15-16

*weeks* but have been stymied and rebuffed at every turn. The Investors' entitlement to the withheld information was ultimately confirmed by this Court, when it ruled at the July 25, 2013 hearing that "disclosure is required with respect to any alternative analyses, testing methods or approaches to the issues on which the expert will be testifying."[24] Even after this Court spelled out the Trustee's obligations in no uncertain terms, the Trustees persisted in the obstructionist tactics unabated, refusing to produce anything but Mr. Pfeiffer's "primary" work papers and insisting that the Investors first identify what was missing – which was impossible of course, since that information had been hidden. Nor can the Trustees show that their discovery failures were in any sense "harmless." Trial is now only slightly over a week away and a continuance, as this Court has already clearly stated, will not be granted. It is impossible for the Investors to secure, load, review and absorb "several gigabytes" of data – which we have still not received -- and then re-depose Mr. Pfeiffer about that information.

Because the Trustees knew full well what the consequences of non-disclosure would be, preclusion is the only appropriate remedy here. The motion should therefore be granted.

## CONCLUSION

WHEREFORE, the Investors respectfully request that the Court enter an Order precluding Mr. Pfeiffer from offering expert testimony at the hearing regarding the 9019 Motion to be held on August 16 and August 19, 2013.

---

[24] July 25, 2013 Hearing Tr. (Eaton Decl. Ex. 3) at 36:13-36:16.

Dated: August 7, 2013
       New York, New York

                      WILLKIE FARR & GALLAGHER LLP

                      By: /s/ Joseph T. Baio
                           Joseph T. Baio

Mary Eaton
Emma J. James
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Monarch Alternative Capital LP, Stonehill Capital Management LLC, and Bayview Fund Management LLC, each in its capacity as investment advisor to certain funds, and for CQS ABS Master Fund Limited and CQS ABS Alpha Master Fund Limited.*