## EXHIBIT 3

**In Re:**

*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

---

*July 25, 2013*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us.*



**Min-U-Script® with Word Index**

1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10                Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                July 25, 2013

19                9:03 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Status Conference, on the record, re: FGIC 9019 Settlement

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  David Rutt, CET**D-635

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   CHARLES L. KERR, ESQ.

9

10

11  ALSTON & BIRD LLP

12        Attorneys for Wells Fargo Bank, as Trustee

13        90 Park Avenue

14        New York, NY 10016

15

16  BY:   MICHAEL E. JOHNSON, ESQ.

17

18

19  ALSTON & BIRD LLP

20        Attorneys for Wells Fargo Bank, as Trustee

21        One Atlantic Center

22        1201 West Peachtree Street

23        Atlanta, GA 30309

24

25  BY:   JOHN C. WEITNAUER, ESQ.

4

```
 1
 2   DECHERT LLP
 3        Attorneys for The Bank of New York Mellon and The Bank of
 4         New York Mellon Trust Company N.A.
 5        1095 Avenue of the Americas
 6        New York, NY 10036
 7
 8   BY:   REBECCA S. KAHAN, ESQ.
 9
10
11   JONES DAY
12        Attorneys for FGIC
13        222 East 41st Street
14        New York, NY 10017
15
16   BY:   HOWARD F. SIDMAN, ESQ.
17
18
19   SEWARD & KISSELL LLP
20        Attorneys for U.S. Bank as Indenture Trustee
21        One Battery Park Plaza
22        New York, NY 10004
23
24   BY:   MARK D. KOTWICK, ESQ.
25
```

5

1

2  WEIL, GOTSHAL & MANGES LLP

3      Attorneys for Rehabilitator of FGIC

4      767 Fifth Avenue

5      New York, NY 10153

6

7  BY:   RICHARD W. SLACK, ESQ.

8

9

10  WILLKIE FARR & GALLAGHER LLP

11      Attorneys for Monarch, Stonehill, CQS and Bayview

12      787 Seventh Avenue

13      New York, NY 10019

14

15  BY:   EMMA J. JAMES, ESQ.

16      MARY EATON, ESQ.

17

18

19

20

21

22

23

24

25

6

1                          P R O C E E D I N G S

2            (Audio begins mid-sentence)

3            THE COURT:  -- number 12-12020, here in connection

4     with a dispute concerning -- or, well, a dispute arising in

5     connection with the FGIC 9019 settlement proceeding; concerns

6     discovery from FGIC and Lazard regarding documents or

7     information that FGIC asserts is protected by the mediation

8     privilege.

9            Mr. Kerr?

10           MR. KERR:  Your Honor, Charles Kerr of Morrison &

11    Foerster, on behalf of the debtors.  Let me just frame the

12    issue.  We're here on a request by FGIC to -- for an order

13    approving the production of a specific document under Federal

14    Rule of Civil Procedure 26(b)(4)(C) and Bankruptcy Rule

15    1914(c), in light of the confidentiality provisions in this

16    Court's order appointing mediator, dated December 26, 2012;

17    that's docket number 2519.  Your Honor previously directed that

18    any 26(b)(4)(C) information be turned over.  That document was

19    turned over yesterday during Mr. Pfeiffer's deposition.  And

20    I'll let Mr. Sidman address that issue.

21           One issue I'd just like to note before I sit down,

22    Your Honor:  In the objectors' letter that they sent to Your

23    Honor yesterday, they -- at the very end of the letter, they --

24    as Your Honor noted, they wrote and made a separate request

25    that they be allowed to take an additional fact witness of

1    Lazard.  The debtor objects to that.  Under this Court's

2    scheduling order, the Court had directed that the objectors

3    could take six fact depositions, and that deposition -- that

4    fact discovery had to be completed by July 17, 2013.  They in

5    fact took six fact depositions.  The request for Lazard came up

6    yesterday after the time period for fact discovery had been

7    completed.  So I just want to make our position --

8              THE COURT:  All right.

9              MR. KERR:  -- clear on that, on the record.

10             THE COURT:  Okay.

11             Mr. Sidman?

12             MR. SIDMAN:  Good morning, Your Honor.  Howard Sidman,

13   Jones Day, for FGIC.  I just want to give you a little bit of

14   background here, just two minutes, to sort of explain why we're

15   here and what we want.  During the mediation process, FGIC

16   created a document that analyzed the commutation proposal to --

17   in order to help evaluate that proposal.  The -- that

18   information that FGIC created was then provided to the

19   trustees.  The trustees then utilized that information and, now

20   clear that they're Trustees' expert, utilized that information

21   in valuating the merits of the commutation proposal and the

22   settlement agreement generally.  FGIC withheld that document

23   from production because it was created by FGIC in connection

24   with the mediation, and we put it on our privilege log and we

25   believe it was -- and we still believe it is covered by the

**8**

1    mediation order issued by this Court.

2             Following Your Honor's direction at the -- it was the

3    July 17th hearing in this case -- to produce anything that Duff

4    & Phelps relied upon in its analysis, in its report, the

5    trustees, with FGIC's consent, reached out to counsel for the

6    investor objectors -- the objectors generally -- and tried to

7    enter into a stipulation whereby they could -- they, the

8    trustees, could produce this document that Duff & Phelps relied

9    upon, without violation or any waiver of the mediation -- the

10   confidentiality provisions in the mediation order.

11            We thought it was a relatively straightforward request

12   that would both protect our rights and obligations under the

13   order but allow them to review the document, inconsistent with

14   Your Honor's order.  They didn't respond for a couple days.

15   The deposition of Mr. Pfeiffer was yesterday, so on -- I think

16   it was -- sorry, the days are confusing me now -- but I think

17   Tuesday I finally reached out and called counsel for the

18   objectors, both counsel at Willkie Farr and McKool Smith, and

19   asked them why we can't get this issue resolved.  We were

20   unable to resolve the issue, so then we -- I guess it was

21   Monday evening -- Tuesday --

22            UNIDENTIFIED SPEAKER:  Tuesday.

23            MR. SIDMAN:  Tuesday evening --

24            Thank you.

25            Been a lot -- it's been a crazy few days.  -- but

**9**

1    Tuesday evening, contacted the Court to see if we could get

2    this issue resolved via court order, because the mediation

3    order specifically says that any such deviations from --

4    paraphrasing -- any such sort of deviations from the

5    mediation -- the confidentiality provisions in the mediation

6    order should be authorized by the Court.  So we thought that

7    was an appropriate way to handle this dispute.

8            We sent the letter to Your Honor I guess around 5 p.m.

9    on Tuesday evening.  The deposition then proceeded with

10   Mr. Pfeiffer yesterday.  During the course of the deposition,

11   it became clear to us that Mr. Pfeiffer not only -- and Duff &

12   Phelps, not only utilized this information in connection with

13   preparing its internal analysis to the trustees, but it also --

14   Mr. Pfeiffer also utilized this information, preparing his

15   report that he filed on July 19th in this case.  When it became

16   clear to us that that's what happened, we then provided the

17   document to the objectors, for use at the deposition.  The

18   document has been provided to the objectors.

19           THE COURT:  Let me ask you this, Mr. Sidman --

20           MR. SIDMAN:  Yeah.

21           THE COURT:  -- and it may be that one of the other

22   counsel needs to address this issue:  Is this the only analysis

23   prepared by or on behalf of FGIC, that was provided to Duff &

24   Phelps?

25           MR. SIDMAN:  Your Honor, from my perspective, this is

1   the only document that I'm aware of.

2          THE COURT:  Okay.

3          MR. SIDMAN:  And so the reason why we're here now is

4   just because --

5          THE COURT:  Oh, because Ms. Eaton's letter to the

6   Court suggests there are other documents as well --

7          MR. SIDMAN:  Uh-huh.

8          THE COURT:  -- and -- but we'll come to that.  I want

9   all -- each of the counsel to address that and specifically

10  what Mr. Pfeiffer may have said in his deposition, in that

11  regard.

12         MR. SIDMAN:  And I can tell you I was at

13  Mr. Pfeiffer's deposition, and I don't believe he identified

14  any other document that was provided -- was prepared by FGIC,

15  that he relied upon.

16         So here we are.  We've produced the document.  We just

17  don't want to have that production of the document be deemed a

18  violation of the confidentiality provisions of the mediation

19  order or some kind of broader waiver of the confidentiality

20  provisions of the mediation order.  So that's the limited --

21  very limited request we're seeking here, Your Honor, to protect

22  ourselves --

23         THE COURT:  All right.

24         MR. SIDMAN:  -- basically.

25         THE COURT:  Thank you, Mr. Sidman.

1          MR. SIDMAN:  Yeah, thank you, Your Honor.

2          THE COURT:  Let me hear from the -- I want to hear --

3   well, I'll give you a -- I want to hear from the FGIC trustee's

4   counsel.  I don't know; Mr. Johnson, are you going to address

5   this?

6          MR. JOHNSON:  Good morning, Your Honor.  Michael

7   Johnson from Alston & Bird, on behalf of Wells Fargo.  And of

8   course, I was the signatory on a letter that was sent to Your

9   Honor in accordance with Your Honor's directive yesterday

10  afternoon.

11         I agree with everything that Mr. Sidman has indicated.

12         THE COURT:  Let me ask this very specifically.

13         MR. JOHNSON:  Sure.

14         THE COURT:  In connection with forming his opinion,

15  did Mr. Pfeiffer consider -- I'm using the word "consider", not

16  "rely" -- did he consider any documents prepared by or on

17  behalf of FGIC other than the commutation breakout that has not

18  been produced?

19         MR. JOHNSON:  That has not been produced --

20         THE COURT:  Yes.

21         MR. JOHNSON:  -- no.  To be clear, Your Honor, there

22  are other documents that he relied on, but they are public

23  documents.

24         THE COURT:  Yeah.  I --

25         MR. JOHNSON:  And of course they've been produced.

12

1          THE COURT:  This is what I want to be -- because

2    Ms. Eaton's letter suggests -- and this is what I want some

3    clarity about -- that in the course of the deposition,

4    Mr. Pfeiffer testified that there were other documents -- and

5    I'm going to broaden this a little bit -- either documents or

6    information provided by FGIC, that has not been disclosed, that

7    he considered it in preparing his -- informing his expert

8    opinions, because the Rules talk about considering rather than

9    relying upon, and that's why I want to draw that -- I want to

10   be careful in drawing that distinction.

11          MR. JOHNSON:  Correct, Your Honor.  The trustees have

12   always treated Rule 26(a)(2)(B), which has the documents --

13          THE COURT:  Right.

14          MR. JOHNSON:  -- consider -- or data considered by --

15   as applicable here.  We turned over everything that was

16   considered by Duff, except for that one document which was

17   turned over yesterday.  And the only reason that document was

18   not turned over, Your Honor, was because of the mediation order

19   and concerns that FGIC expressed to us that turning it over

20   could violate it.  But now, Your Honor, as of yesterday, there

21   is nothing that Mr. Pfeiffer or Duff considered that has not

22   been turned over.

23          THE COURT:  So what I -- Ms. Eaton attached to her

24   letter, as Exhibit A, the Pfeiffer expert report.  And

25   attachment 2 to the expert report has a heading, "List of

1   Documents Considered".  And I did not see the commutation

2   breakout identifi -- I may have missed it; it's a long --

3   and -- but I looked for it this morning.

4           I was in Washington for the last two days; that's why

5   you didn't get a hearing any sooner than that.

6           I looked for it; I didn't see it there.  It is correct

7   also that on page 7 of the report, in paragraph 11, it says,

8   quote, "I reserve the right to update Attachment 2 as

9   additional documentation is reviewed and/or considered."  So --

10  but is the commutation breakout listed?  Did I miss it

11  somewhere?

12          MR. JOHNSON:  Your Honor, I can't answer that

13  question.  I'm not sure if my partner Kit Weitnauer can answer

14  that question --

15          THE COURT:  All right.

16          MR. JOHNSON:  -- off the top of his head.

17          So I don't know.  This was prepared by Duff itself,

18  not by outside counsel.

19          THE COURT:  All right.  To the best --

20          MR. JOHNSON:  I would have to get back to you.

21          THE COURT:  Okay, but do you represent to the Court

22  that Duff, in connection -- did Mr. Pfeiffer, in connection

23  with forming his opinion and his work on it, consider any other

24  document or information provided by or on behalf of FGIC?  And

25  I say "by or on behalf of" because if Lazard was FGIC's

14

1    advisor, if Lazard provided to Duff & Phelps information that

2    has not been disclosed, I want to know about that as well.

3              MR. JOHNSON:  Your Honor, that is correct, what you

4    stated, that --

5              THE COURT:  They did not?

6              MR. JOHNSON:  -- I confirmed that and represent that

7    to the Court --

8              THE COURT:  Okay.

9              MR. JOHNSON:  -- that everything that was prepared or

10   given to Duff by FGIC has been disclosed.

11             THE COURT:  Okay.

12             Mr. Weitnauer, did you want to add something?

13             MR. WEITNAUER:  I just want to be clear, because I --

14             THE COURT:  Just make your appearance.

15             MR. WEITNAUER:  I'm sorry.  I'm Kit Weitnauer.  I'm

16   with Alston & Bird; one of Mike's partners.

17             You'll see on page 7 of Mr. Pfeiffer's report, he

18   references both an interview with Tim Travers, FGIC's CRO; an

19   interview with certain Lazard personnel.  Those topics were

20   inquired into at the deposition --

21             THE COURT:  All right.

22             MR. WEITNAUER:  -- and he --

23             THE COURT:  So there was no assertion of mediation

24   privilege --

25             MR. WEITNAUER:  That's correct, Your Honor.

15

1        THE COURT:  -- with respect to any of the

2   communications?

3        MR. WEITNAUER:  That's correct.

4        THE COURT:  All right.  Thank you very much.

5        Go ahead.

6        MR. JOHNSON:  Your Honor, from our perspective, the

7   trustees have fully complied with the requirements of --

8        THE COURT:  All right.

9        MR. JOHNSON:  -- Rule 26(a)(2)(B), and the materials

10  have all been turned over that were considered by Duff.  And

11  also, we do have a second expert witness, Your Honor:  Dr. S.P.

12  Kothari.  I don't think there's been any allegation that

13  there's been some incomplete disclosure --

14        THE COURT:  Okay.

15        MR. JOHNSON:  -- with respect of his expert report.

16        Your Honor, I think what this comes down to actually,

17  but it's not very clear, I don't think, from the

18  correspondence, is work papers.  And I don't think -- and

19  honestly, Your Honor, work papers are encompassed within the

20  Rule 26(a)(2)(B) language which talks about documents and

21  materials, or data and materials, that are considered, which I

22  think has traditionally been understood to mean the sources

23  that provided basically the foundation upon which the

24  information -- or the report or opinion is based.

25        But in any event, Your Honor, while we have been clear

1    in our position that work papers aren't covered by that Rule,

2    we have turned over work papers.  I brought today, Your Honor,

3    a stack.  It's very hard to print them out, because it's

4    several Excel spreadsheets; but they're sitting there on the

5    table, and you can see them.  Significant work papers have been

6    disclosed already.  I note that we have provided information --

7    we have identified them by Bates numbers this week -- to

8    counsel for the objectors.

9            Nonetheless, those work papers were not the subject of

10   any of the examination of Mr. Pfeiffer yesterday.  We've not

11   been told, with any specificity, that there is anything

12   incomplete about those work papers.  And Mr. Pfeiffer was not

13   asked whether there were any holes in what's been produced, or

14   anything else.

15           So, Your Honor, quite frankly, we --

16           THE COURT:  So, when --

17           MR. JOHNSON:  -- are at a loss to understand --

18           THE COURT:  -- when you talk about this issue about

19   work papers, the Rule doesn't specifically address it.  But the

20   reporter's note -- or the advisory committee note -- not

21   reporter's note -- talks about -- my takeaway from it is that

22   discovery is permitted about any alternative analyses, testing

23   methods or approaches to the issues on which the expert will be

24   testifying, whether or not the expert considered them in

25   forming the opinions expressed.  And that seems to me to go to

1    what would ordinarily be work papers doesn't appear in the

2    report.  But you're representing that work papers have been

3    produced and, if any more are identified, you'll produce them

4    as well?

5            MR. JOHNSON:  Well, Your Honor, I think that we -- the

6    second part I think we might have a problem with.  I mean, the

7    analysis, Your Honor, is very sophisticated.  We have provided

8    what we consider to be the primary work papers.  We don't know

9    what further information they might be looking for, but there

10   may be layers of information below that that we -- that have

11   not been produced.  For example, there may be spreadsheets that

12   might feed into the base work paper documents that are

13   documents.  And, Your Honor, quite honestly, producing that

14   would be very, very cumbersome.  And again, we don't know if

15   there's --

16           THE COURT:  It's actually pretty easy; you produce

17   worksheet -- Excel spreadsheets electronically; that's not very

18   cumbersome.  But that's not the issue that I consider before me

19   today.  What I consider before me today is really the issue of

20   whether FGIC and/or Lazard is required to disclose any

21   additional documents or information that would otherwise be

22   protected by the mediation privilege; that's what seems to me

23   to be framed by the letters.  And I know that Ms. Eaton's

24   letter does address the work product issue, but I don't believe

25   that's properly framed before me at this point.

1        MR. JOHNSON:  And, Your Honor, I can --

2        THE COURT:  I don't want to get into --

3        MR. JOHNSON:  I don't know why their work product --

4        THE COURT:  Mr. Johnson, I don't want to get --

5        MR. JOHNSON:  There's nothing to produce.

6        THE COURT:  I don't want to get into it --

7        MR. JOHNSON:  Okay.

8        THE COURT:  -- further now, okay?

9        MR. JOHNSON:  Understood, Your Honor.  Understood,

10   Your Honor.

11        THE COURT:  All right, let me hear from the

12   rehabilitator's counsel.

13        MR. SLACK:  Good morning, Your Honor.  Richard Slack

14   from Weil Gotshal, for the rehabilitator of FGIC.

15        And I just had one clarification which -- something

16   Your Honor had said, and that is that Lazard -- it's an

17   important distinction --

18        THE COURT:  Okay.

19        MR. SLACK:  -- for my client.  But Lazard was retained

20   by Weil --

21        THE COURT:  Right.

22        MR. SLACK:  -- to work for the rehabilitator --

23        THE COURT:  I stand corrected.

24        MR. SLACK:  -- not for FGIC.

25        THE COURT:  I stand corrected.

**19**

1        MR. SLACK:  Well, and the reason it's important, Your

2   Honor, is that there's a lot of work that Lazard has done that

3   FGIC has not had access to, FGIC's management has not had

4   access to.  FGIC's management doesn't direct Lazard.  And so

5   it's not really the same as FGIC, dealing with Lazard.

6        What I can tell the Court, Your Honor, is that Lazard

7   did not provide any documents to the trustees, to the debtors.

8   And so the only document that I understand was at issue here

9   was a document that was actually prepared by FGIC, as

10  Mr. Sidman said, that was sent to the trustees and then handed

11  over.

12       I guess, in point of full disclosure, I would say that

13  Lazard did meet -- and I think this came out in the

14  deposition -- with representatives of Duff & Phelps, for an

15  hour and a half, roughly.  My understanding is that, because

16  the -- some of the clients of Duff & Phelps had not signed a

17  confidentiality (sic), at the beginning of the meeting the

18  Lazard representatives said, 'We are not discussing anything

19  that's not public.'  And I'd been told by counsel for Lazard

20  that in fact that's what happened; there was not any

21  information that was provided that wasn't public information.

22  And --

23       THE COURT:  May I ask you this, Mr. Slack:  Were you

24  at Mr. Pfeiffer's deposition?

25       MR. SLACK:  I wasn't.  What I understand -- and I'll

20

1    let somebody talk, but what I understand is that Mr. Pfeiffer,

2    who wasn't at that meeting, said that he could not identify --

3    and again, I'll let somebody talk to it -- any information that

4    was not public, that was provided to Duff & Phelps.  But again,

5    I'll let somebody who was at the deposition talk to it.

6            THE COURT:  All right.

7            Mr. Sidman, briefly --

8            MR. SIDMAN:  Yeah.  Just --

9            THE COURT:  -- before I hear from Ms. Eaton.

10           MR. SIDMAN:  Just to follow on what Mr. Slack just

11   said, I actually specifically asked the question to

12   Mr. Pfeiffer at the deposition yesterday:  if he could identify

13   any nonpublic information that Duff & Phelps received from

14   Lazard in connection with the preparation of his report, and he

15   could not.

16           THE COURT:  Okay, thank you.

17           Ms. Eaton?

18           MS. EATON:  Good afternoon, Your -- or good morning,

19   Your Honor.  Mary Eaton on behalf of the investors in the FGIC

20   wrapped trusts.

21           I have to confess to the Court, all of this is a

22   little confusing from our perspective.  We were -- we certainly

23   were not aware, and nobody informed us, that the document at

24   issue was the only document that had been supplied by either

25   FGIC or its advisor Lazard.  And frankly, it seemed somewhat

1    inconsistent with the facts --

2            THE COURT:  We'd just been told by Mr. Slack that

3    Lazard is not FGIC's advisor; it's the rehabilitator's --

4            MS. EATON:  I beg your pardon --

5            THE COURT:  -- advisor.

6            MS. EATON:  -- Your Honor.  Yeah.

7            THE COURT:  You don't dispute that, do you?

8            MS. EATON:  I have no basis to --

9            THE COURT:  Okay.

10            MS. EATON:  -- dispute it --

11            THE COURT:  All right.  Go ahead.

12            MS. EATON:  -- Your Honor.  I simply -- I misspoke.

13            THE COURT:  All right.

14            MS. EATON:  What we do have -- leaving the work papers

15    issue aside, what we do have are certain indications that other

16    information, apart from the document at issue, was provided to

17    Duff & Phelps, including information that was not confidential.

18    The witness yesterday was asked a series of questions designed

19    to clarify what information was provided by whom and when, but

20    on several occasions was unable to answer those questions,

21    including because, for instance, he was not present at the

22    due -- initial due-diligence meeting with Duff & Phelps, that I

23    believe happened in April.

24            What the witness did testify to was that member -- and

25    I can pull out the testimony if the Court would find that

1    beneficial -- that while he was not at that meeting, members of

2    his team were there and that he did not know whether they had

3    any documents or notes of the meeting, one way or the other.

4            With respect to the provision of confidential --

5            THE COURT:  Which meeting are you referring to?

6            MS. EATON:  The due-diligence meeting that took place

7    between representatives of Duff & Phelps, representatives of

8    Lazard, and representatives of FGIC.  I believe it was at the

9    beginning of April and it was -- there was an agenda; there was

10   a list of diligence items that were to be discussed in

11   connection with Duff & Phelps' analysis of the -- what was then

12   the proposed FGIC settlement agreement.

13           THE COURT:  So do you have any evidence that any

14   nonpublic information was provided by Lazard at the meeting?

15           MS. EATON:  The only evidence we have, Your Honor, is

16   the statement of Mr. Pfeiffer at paragraph 14 of his expert

17   report, where he says that --

18           THE COURT:  Let me turn to it, okay?  Hold on.  Go

19   ahead.

20           MS. EATON:  -- quote, "D&P was asked by the FGIC

21   trustees to advise them regarding D&P's assessment of the

22   reasonableness, risks and benefits of accepting the proposal,

23   in part, on confi" -- "based in part on confidential

24   information communicated by FGIC's chief restructuring officer

25   and Lazard, financial advisors to Weil Gotshal, counsel to the

1    New York Liquidation Bureau.  D&P performed an independent

2    financial analysis to determine a reasonable range of the value

3    of projected payments to the FGIC insured trust, based on the

4    rehabilitation plan."

5         So the expert's report of the representative from Duff

6    & Phelps is stating, in our view, clearly here that their

7    analysis was based in part on confidential information that was

8    provided by FGIC and Lazard.  But apart from that, I don't know

9    of anything, Your Honor.  Most of these items, including the

10   document in question, was not identified to us; it was not

11   logged as privileged --

12        THE COURT:  Well, that doesn't indicate --

13        MS. EATON:  -- either by --

14        THE COURT:  He doesn't say anything about document; it

15   says "information".  So there may not be a document.

16        MS. EATON:  There may or may not be, Your Honor; we

17   don't have any way of knowing, including based on the testimony

18   of Mr. Pfeiffer that I was referencing a moment ago.  And it

19   could very well be that members of his team have documents, but

20   that we don't know; he could not say one way or the other.

21        So we're a little bit in the dark about this.  There

22   are indications that there should be -- if there weren't

23   documents sent by FGIC or Lazard, that there was information

24   imparted by FGIC or Lazard that Duff & Phelps considered in

25   rendering its opinions and, in our submission, that

24

1   information -- we're entitled to discovery of that information,

2   as well as other information, in order to effectively cross-

3   examine the trustee's expert with regard to the advice they got

4   on whether to approve the FGIC settlement agreement --

5            THE COURT:  Well, did you --

6            MS. EATON:  -- or not.

7            THE COURT:  -- did you examine Mr. Pfeiffer about all

8   of the data analysis, summaries, whatever, that he considered

9   in forming his opinions?

10           MS. EATON:  Well, two things, Your Honor:  First, it

11  was my partner Mr. Baio, not myself, who --

12           THE COURT:  Okay.

13           MS. EATON:  -- who took that deposition.  I don't know

14  that the witness was presented with every document we were --

15           THE COURT:  I didn't ask whether he was presented with

16  every document.

17           MS. EATON:  I realize that, Your Honor.  I'm trying to

18  be responsive to the Court's question.

19           The witness was repeat -- I read the transcript last

20  night; the witness was repeatedly questioned about the

21  existence of documents that they either were -- that Duff &

22  Phelps was either supplied with or generated in the course

23  of --

24           THE COURT:  Well, the issue isn't "reviewed"; the

25  issue is "considered in forming his opinions".

25

1          MS. EATON:  Correct, Your Honor.

2          THE COURT:  You agree with that?

3          MS. EATON:  I certainly do.  And it's interesting --

4          THE COURT:  So, frequently in a situation,

5  particularly where somebody starts out as a consulting expert,

6  you may get a ton of documents; it doesn't mean you considered

7  them in forming your opinions.

8          MS. EATON:  That may well be the case in a great many

9  circumstances here, Your Honor, although I would point out that

10  there's one very significant issue, that bears directly on the

11  opinion of Duff & Phelps in this case, that we believe relates

12  to the work that they -- that Duff & Phelps did as a consulting

13  expert and is critical to our ability to challenge that expert

14  testimony, and that goes to Duff & Phelps' determination not to

15  ascribe any value to the representation and warranty claims

16  that FGIC had.  According to the test -- we have not been

17  provided with any analysis of why Duff & Phelps made that

18  determination and gave zero value to those claims, claims that

19  I understand FGIC has itself stated are worth in excess of a

20  billion dollars.

21          According to the testimony, Duff & Phelps -- I could

22  get the precise page -- spent months and months analyzing these

23  claims and their value, and, oddly enough, not a single scrap

24  of paper has been --

25          THE COURT:  That doesn't entitle you --

1          MS. EATON:  -- supplied to us.

2          THE COURT:  But whether -- we'll see whether that's

3    true or not; but assuming it is, you've got grist for cross-

4    examination of Mr. Pfeiffer at trial.  What you don't have is a

5    basis to require FGIC to produce documents or information that

6    were not provided to Mr. Pfeiffer and which he considered in

7    preparing his opinion.  I mean, your -- the problem with your

8    letter, frankly, is you're like a broken record, Ms. Eaton.

9    What you want to do is break into the mediation and find out

10   everything that happened in a confidential mediation.  That

11   you're not going to do.  Okay?

12          So you correctly recite in your letter many of the

13   applicable principles that the Court has to consider in

14   resolving this dispute, but you carry it well beyond the facts

15   that you have to support your arguments.

16          With respect to -- if there are --

17          Mr. Johnson, if Duff & Phelps considered documents or

18   information in connection with forming its opinions, it has to

19   be provided, okay?  You've represented you've done that.

20   You've represented you've done that, and I have no reason to

21   believe that you haven't.  And if there is additional

22   information that comes to light, you need to provide it, okay?

23          So Ms. Eaton points to page 8 of the report, the

24   Pfeiffer report, paragraph 14, and the sentence that begins

25   "Based in part on confidential information communicated by

27

1  FGIC's chief restructuring officer and Lazard, financial

2  advisors to Weil, Gotshal & Manges," et cetera, "D&P performed

3  an independent financial analysis."

4          So if there is confidential information that Duff &

5  Phelps received and considered in its analysis, it has to be

6  provided.  I mean, it's -- that's the reality of it.

7          MR. JOHNSON:  May I -- may I address that, Your Honor?

8          THE COURT:  Yeah, go ahead.

9          I'll give you a chance, Ms. Eaton, to say some more,

10 but let me --

11         MR. JOHNSON:  Yeah, I'll just stress this one issue,

12 Your Honor.  Mr. Pfeiffer's report refers to confidential

13 information, and he used that word, Your Honor, because --

14         THE COURT:  You have to go up to the microphone.

15         MR. JOHNSON:  Oh, this one --

16         THE COURT:  We're not -- we're not picking it up.

17         MR. JOHNSON:  I'm sorry, Your Honor.

18         THE COURT:  Okay.  Go ahead.

19         MR. JOHNSON:  Mike Johnson again.

20         THE COURT:  It's because you're tall is what Karen

21 said.

22         MR. JOHNSON:  Mike Johnson again, Your Honor.

23         Mr. Pfeiffer's report at paragraph 14, which is what

24 Ms. Eaton cited to you, refers to confidential information

25 which I think -- I don't know if it's the same thing that Mr.

28

1  Slack, a nonpublic.  The reason Mr. Pfeiffer referred to

2  confidential information was because FGIC required Mr. Pfeiffer

3  and his firm to sign an NDA, so in an abundance of caution, he

4  treated at least some of the information as confidential.  It

5  refers solely to the existence of an NDA, not any

6  characterization as public or nonpublic.

7         THE COURT:  I'm sure, Mr. Johnson, this issue is going

8  to come up again at trial, if not sooner, so head it off at the

9  pass.  Go back to Mr. Pfeiffer and his people at Duff & Phelps

10  and confirm again because I'm sure, if he testifies at trial,

11  he's going to be asked in cross-examination about it.  So

12  what's -- you know, get some clarity and communicate with Ms.

13  Eaton about that.

14         MR. JOHNSON:  Your Honor, for the record, I have gone

15  back again, not just to Mr. Pfeiffer but to his team members

16  and confirmed --

17         THE COURT:  All right.

18         MR. JOHNSON:  -- that we have turned over all

19  documents considered.

20         THE COURT:  All right.  Ms. Eaton, I interrupted you,

21  so is there anything else you wanted to add?

22         MS. EATON:  Just briefly, Your Honor.  We were told

23  before the exchange of letters took place that documents --

24  nonprivileged documents that had been relied upon by the expert

25  had been produced to us, and at the deposition yesterday of Mr.

1   Pfeiffer, the witness was repeatedly instructed to confine his

2   answers to information that he relied upon from Lazard and FGIC

3   and whomever else.  If there's confusion here about whether

4   documents that the expert considered, which is a broader --

5           THE COURT:  Yes.

6           MS. EATON:  -- universe of documents than those he

7   relied upon, you know, respectfully, it's -- that is as a

8   result of the instructions given to the witness and what we

9   were told previously, if indeed everything that the expert had

10  considered in rendering his opinions, including information

11  that either received or generated in his role as a consulting

12  expert were considered in rendering his opinions, our view is

13  simply that it needs to be produced and --

14          THE COURT:  Let me ask you this.  First off, can

15  somebody confirm whether he was limited to testifying yesterday

16  about information upon which he relied as opposed to

17  considered --

18          MR. SIDMAN:  Yes.  If I can --

19          THE COURT:  -- because the Rule does draw a

20  distinction -- I mean, that certainly the advisory committee

21  note clearly draws a distinction --

22          MR. SIDMAN:  Your Honor --

23          THE COURT:  -- between considered and relied.

24          MR. SIDMAN:  -- I -- you're absolutely right, Your

25  Honor, and -- this is Howard Sidman from Jones Day.  I gave the

30

1    instruction, Your Honor, at the deposition yesterday, and I

2    used the word "rely".  So there's no reason to -- and I was --

3    it was a mistake on my part and --

4            THE COURT:  Here is what I -- with respect to this

5    issue, confer with Ms. Eaton, yeah, after the conclusion of the

6    hearing.  If she wishes -- you know, it seems to me there's two

7    ways to deal with this.  You can either, if she's willing -- if

8    she's satisfied with this, get a declaration from Mr. Pfeiffer

9    that addresses the issue of what they considered.  And if you

10   do that and the answer is, there's nothing other than the one

11   document, I'm going to allow Ms. Eaton to decide whether she

12   wants to resume the Pfeiffer deposition for no more than an

13   hour because it's really just this one point; it shouldn't even

14   take that long.  But she's entitled because I think, to the

15   extent that you instructed that he address -- that he identify

16   only things they relied on, I think that was not consistent

17   with the Rule.  Let me just put it that way.

18           MR. SIDMAN:  I understand, Your Honor, and that was --

19           THE COURT:  Okay.  So I'm going to leave that for the

20   two of you, all of you, to see if you can resolve.

21           MR. SIDMAN:  Yeah.

22           THE COURT:  And if necessary, Ms. Eaton can resume the

23   deposition on that point.

24           MR. SIDMAN:  Thank you, Your Honor.

25           THE COURT:  All right.

1        MR. SIDMAN:  I will say though that there was at least

2    two hours of examination on this particular issue of the

3    meeting.  So there's been an opportunity to have this

4    disclosure.

5        THE COURT:  Well --

6        MR. SIDMAN:  And we'll figure out the consideration

7    versus relied issue.

8        THE COURT:  -- let's get some clarity on this issue.

9        MR. SIDMAN:  Yes.

10       THE COURT:  All right.  Anything else anybody wants to

11   add quickly?

12       Ms. Eaton.

13       MS. EATON:  A question, Your Honor, two questions.

14   We'd like some guidance about the -- how to tee up the issue of

15   the Lazard deposition.

16       THE COURT:  Well, first, let me -- you can't.  That --

17   I'm teeing up that issue -- that I'm resolving.  Discovery

18   closed.  You had your chance if you wanted to depose Lazard,

19   you thought you -- if you thought you were entitled to.  You

20   had your chance to do it so I'm not altering the schedule that

21   was previously approved.  So that resolves that issue.

22       MS. EATON:  May I say, Your Honor, I -- before the

23   close of discovery, I spoke with counsel for Lazard who

24   themselves suggested to me that we should await the Duff &

25   Phelps deposition, and if the Lazard deposition we still felt

32

1  it was necessary after that, that we could discuss it at that

2  time.

3       THE COURT:  Well, that's good.  I'm glad you're

4  discussing it with Lazard and its counsel, but nobody raised

5  the issue with me.  I set a discovery schedule; that's the

6  discovery schedule.  I'm not altering it.  So that's the answer

7  with respect to the Lazard.

8       MS. EATON:  Very well, Your Honor.  And with respect

9  to the separate issue of the work papers that Your Honor

10  indicated was not right --

11       THE COURT:  That issue is not sufficiently presented

12  to me at this point.  Mr. Johnson has represented that some

13  volume of work papers were provided.  You need to confer with

14  him further.  Hopefully, you'll resolve -- be able to resolve

15  this issue without further court intervention.

16       MS. EATON:  Thank you, Your Honor.

17       THE COURT:  All right.  So, pending before the Court

18  is a dispute between the objecting partying, and the objecting

19  parties are identified in Ms. Eaton's July 24th, 2013 letter.

20  It's a dispute between the objecting parties on the one hand

21  and FGIC and the FGIC trustees on the other hand concerning

22  whether FGIC and Lazard must produce additional documents and

23  permit the deposition of Lazard in matters that are otherwise

24  protected by the mediation privilege.  The Court received and

25  reviewed letter briefs from the parties last night and

1    scheduled a hearing for this morning.

2           With respect to the letters, I'm referring to -- all

3    three letters are dated July 24, 2013.  It's a letter from

4    Ms. Eaton at Willkie Farr, a letter from Mr. Sidman at Jones

5    Day, and a letter from Mr. Johnson at Alston & Bird.

6           During the deposition of Allen Pfeiffer, an expert

7    within retained by the FGIC trustees, FGIC produced a one-page

8    document bearing the legend "FGIC-ResCap-trusts commutation

9    break-out."  It appears that this document was considered by

10   Pfeiffer in forming his expert opinions and in preparing his

11   expert report.

12          "An expert must provide discovery of the opinions to

13   be offered by the expert and the development, foundation, and

14   basis of those opinions.  Communications the expert had with

15   anyone other than the parties' counsel about the opinions also

16   must be disclosed.

17          "Discovery is permitted without any alternative

18   analyses, testing methods or approaches to the issues on which

19   is expert will be testifying whether the expert considered them

20   in forming the opinions expressed.  Discovery is also permitted

21   to identify facts or data provided to the expert and that the

22   expert considered in forming the opinions expressed.  Discovery

23   is also permitted to identify any assumptions that the expert

24   relied upon in forming the opinions to be expressed.

25          "Such information is discoverable, even if it results

34

from an attorney-client privileged communication.  But where the communication comes from counsel for the party on whose behalf the expert will testify, this exception is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed."

The issue here is whether Pfeiffer "considered" any other documents or information provided by FGIC or on behalf of FGIC in forming his opinions.  If the one-page commutation break-out is the only such document that Pfeiffer considered, no other documents must be produced.  If Pfeiffer considered other FGIC documents which had been withheld from production, one of two things must happen.  If the documents and information are disclosed, Pfeiffer may testify at trial.  If the documents are not disclosed, Pfeiffer may not testify at trial.  The mediation privilege remains a proper basis on which FGIC may refuse production of documents or information that are properly the subject of the mediation privilege.

Pfeiffer was originally selected as a consulting expert rather than as a testifying expert.  It is typical for consulting experts to be given access to information that may not be provided to testifying experts, but if the information is provided to a testifying expert who has considered it in forming expert opinions, information must be disclosed or the expert may not testify.

Pfeiffer's report includes "attachment to" with the

heading "list of documents considered".  The commutation

break-out does not appear to be on the list, but Pfeiffer's

expert report in paragraph 11 states that, "I reserve the right

to update the list as additional documentation is reviewed

and/or considered."

During the deposition, at or prior to the deposition,

it was disclosed that the one-page commutation break-out was

considered by Mr. Pfeiffer and was provided at the time of the

deposition.

The question now is whether Pfeiffer considered other

documents or information provided by or on behalf of FGIC that

have not been disclosed through document production or

deposition testimony.  If the answer is no, then Pfeiffer may

testify at trial.  If the answer is yes, then Pfeiffer may not

testify at trial unless the additional documents or information

are disclosed.

The Court concludes that by permitting disclosure of

the one-page commutation break-out, FGIC has not provided a

subject matter waiver of any applicable privilege including

mediation privilege.  This is not a situation where FGIC is

seeking to use an assertion of privilege as a sword and a

shield.  Pfeiffer is testifying on behalf of the FGIC trustees,

not on behalf of FGIC or the FGIC rehabilitator.  Properly

considered, the issue here is whether Pfeiffer may be permitted

to provide expert testimony at trial.  That is the issue and

1    the only issue the Court needs to resolve.

2            Since the parties were unable to reach agreement on

3    the form of the stipulation, I will not enter an order based on

4    the stipulation; however, by my ruling today, the Court

5    concludes that FGIC has not waived its mediation privilege with

6    respect to any other documents than the one page that was

7    provided.  The record will be so ordered, and no separate order

8    will be entered based on the ruling.

9            All right.  Let me go back to the work product -- the

10   work papers issue.  With respect to the work papers, I expect

11   that you'll cooperate with Ms. Eaton and -- so that you can

12   assure her that the work papers have been provided to the

13   extent that, as I indicated, discovery is permitted, disclosure

14   is required with respect to any alternative analyses, testing

15   methods or approaches to the issues on which the expert will be

16   testifying.

17           So if there are work papers that include such

18   alternative analyses, testing methods or approaches to the

19   issues on which the expert will be testifying, they must be

20   produced.  To the extent that the work papers reflect drafts of

21   the expert report that has been provided, doesn't the Rule --

22   the Rule was amended in 2010 to make clear that the drafts

23   don't have to be provided.  So if the work papers reflect

24   drafts of the report, they don't have to be provided.  If they

25   reflect alternative analyses, et cetera, that are not included

37

1   in the report, they do have to be provided.

2          That's going to be the Court's disposition and ruling,

3   and the transcript is so ordered.

4          Okay.  We're going to take a ten-minute recess before

5   I start the regular calendar.

6          MR. JOHNSON:  Thank you, Your Honor.

7          UNIDENTIFIED SPEAKER:  I know you're taking a recess.

8   I don't think there's any other ResCap matters on this morning;

9   is that correct?

10          THE COURT:  There are.  We're back tomorrow.

11          UNIDENTIFIED SPEAKER:  That -- I'll leave that to my

12   partners.

13          THE COURT:  Leave that to your partners for tomorrow.

14          UNIDENTIFIED SPEAKER:  Okay.  Thank you, Your Honor.

15   Appreciate it.

16          UNIDENTIFIED SPEAKER:  Every day seems to be a ResCap

17   day.

18      (Whereupon these proceedings were concluded at 9:48 AM)

19

20

21

22

23

24

25

38

**I N D E X**

**RULINGS**

|                                                        | Page | Line |
|--------------------------------------------------------|------|------|
| FGIC has not waived its mediation privilege            | 36   | 5    |
| with respect to any other documents than the           |      |      |
| one page that was provided.                            |      |      |
| If the work papers reflect drafts of the               | 36   | 23   |
| report, they don't have to be provided.  If            |      |      |
| they reflect alternative analyses, et                  |      |      |
| cetera, that are not included in the report,           |      |      |
| they do have to be provided.                           |      |      |

39

1

2                        C E R T I F I C A T I O N

3

4    I, David Rutt, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   DAVID RUTT

11   AAERT Certified Electronic Transcriber CET**D-635

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  July 25, 2013

18

19

20

21

22

23

24

25

## A

**ability (1)**
25:13
**able (1)**
32:14
**absolutely (1)**
29:24
**abundance (1)**
28:3
**accepting (1)**
22:22
**access (3)**
19:3,4;34:20
**accordance (1)**
11:9
**According (2)**
25:16,21
**actually (5)**
15:16;17:16;19:9;
20:11;34:4
**add (3)**
14:12;28:21;31:11
**additional (7)**
6:25;13:9;17:21;
26:21;32:22;35:4,15
**address (8)**
6:20;9:22;10:9;
11:4;16:19;17:24;
27:7;30:15
**addresses (1)**
30:9
**advice (1)**
24:3
**advise (1)**
22:21
**advisor (4)**
14:1;20:25;21:3,5
**advisors (2)**
22:25;27:2
**advisory (2)**
16:20;29:20
**afternoon (2)**
11:10;20:18
**again (8)**
17:14;20:3,4;
27:19,22;28:8,10,15
**agenda (1)**
22:9
**ago (1)**
23:18
**agree (2)**
11:11;25:2
**agreement (4)**
7:22;22:12;24:4;
36:2
**ahead (5)**
15:5;21:11;22:19;
27:8,18
**allegation (1)**
15:12
**Allen (1)**

**33:6**
**allow (2)**
8:13;30:11
**allowed (1)**
6:25
**Alston (3)**
11:7;14:16;33:5
**altering (2)**
31:20;32:6
**alternative (5)**
16:22;33:17;36:14,
18,25
**although (1)**
25:9
**always (1)**
12:12
**amended (1)**
36:22
**Americas (1)**
4:5
**analyses (5)**
16:22;33:18;36:14,
18,25
**analysis (11)**
8:4;9:13,22;17:7;
22:11;23:2,7;24:8;
25:17;27:3,5
**analyzed (1)**
7:16
**analyzing (1)**
25:22
**and/or (3)**
13:9;17:20;35:5
**apart (2)**
21:16;23:8
**appear (2)**
17:1;35:2
**appearance (1)**
14:14
**appears (1)**
33:9
**applicable (3)**
12:15;26:13;35:19
**appointing (1)**
6:16
**Appreciate (1)**
37:15
**approaches (4)**
16:23;33:18;36:15,
18
**appropriate (1)**
9:7
**approve (1)**
24:4
**approved (1)**
31:21
**approving (1)**
6:13
**April (2)**
21:23;22:9
**arguments (1)**
26:15
**arising (1)**

**6:4**
**around (1)**
9:8
**ascribe (1)**
25:15
**aside (1)**
21:15
**assertion (2)**
14:23;35:21
**asserts (1)**
6:7
**assessment (1)**
22:21
**assuming (1)**
26:3
**assumptions (2)**
33:23;34:4
**assure (1)**
36:12
**attached (1)**
12:23
**attachment (3)**
12:25;13:8;34:25
**attorney-client (1)**
34:1
**Attorneys (5)**
4:3,12,20;5:3,11
**Audio (1)**
6:2
**authorized (1)**
9:6
**Avenue (3)**
4:5;5:4,12
**await (1)**
31:24
**aware (2)**
10:1;20:23

## B

**back (5)**
13:20;28:9,15;
36:9;37:10
**background (1)**
7:14
**Baio (1)**
24:11
**Bank (3)**
4:3,3,20
**Bankruptcy (1)**
6:14
**base (1)**
17:12
**based (8)**
15:24;22:23;23:3,
7,17;26:25;36:3,8
**basically (2)**
10:24;15:23
**basis (2)**
21:8;26:5;33:14;
34:15
**Bates (1)**
16:7

**Battery (1)**
4:21
**Bayview (1)**
5:11
**bearing (1)**
33:8
**bears (1)**
25:10
**became (2)**
9:11,15
**beg (1)**
21:4
**beginning (2)**
19:17;22:9
**begins (2)**
6:2;26:24
**behalf (12)**
6:11;9:23;11:7,17;
13:24,25;20:19;34:3,
7;35:11,22,23
**below (1)**
17:10
**beneficial (1)**
22:1
**benefits (1)**
22:22
**best (1)**
13:19
**beyond (1)**
26:14
**billion (1)**
25:20
**Bird (3)**
11:7;14:16;33:5
**bit (3)**
7:13;12:5;23:21
**both (3)**
8:12,18;14:18
**break (1)**
26:9
**breakout (1)**
11:17;13:2,10
**break-out (5)**
33:9;34:9;35:2,7,
18
**briefly (2)**
20:7;28:22
**briefs (1)**
32:25
**broaden (1)**
12:5
**broader (2)**
10:19;29:4
**broken (1)**
26:8
**brought (1)**
16:2
**Bureau (1)**
23:1

## C

**calendar (1)**

**37:5**
**called (1)**
8:17
**came (2)**
7:5;19:13
**can (12)**
10:12;13:13;16:5;
18:1;19:6;21:25;
29:14,18;30:7,20,22;
36:11
**careful (1)**
12:10
**carry (1)**
26:14
**case (4)**
8:3;9:15;25:8,11
**caution (1)**
28:3
**certain (2)**
14:19;21:15
**certainly (1)**
20:22;25:3;29:20
**cetera (2)**
27:2;36:25
**challenge (1)**
25:13
**chance (3)**
27:9;31:18,20
**characterization (1)**
28:6
**Charles (1)**
6:10
**chief (2)**
22:24;27:1
**circumstances (1)**
25:9
**cited (1)**
27:24
**Civil (1)**
6:14
**claims (4)**
25:15,18,18,23
**clarification (1)**
18:15
**clarify (1)**
21:19
**clarity (3)**
12:3;28:12;31:8
**clear (9)**
7:9;20:9;11:16;
11:21;14:13;15:17,
25;36:22
**clearly (2)**
23:6;29:21
**client (1)**
18:19
**clients (1)**
19:16
**close (1)**
31:23
**closed (1)**
31:18
**committee (2)**

12-12020-mg    Doc 4681-3    Filed 08/15/13    Entered 08/15/13 01:22:14    Exhibit 3

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

Pg 43 of 49

July 25, 2013

16:20;29:20

**communicate (1)**
28:12
**communicated (2)**
22:24;26:25
**communication (2)**
34:1,2
**communications (2)**
15:2;33:14
**commutation (10)**
7:16,21;11:17;
13:1,10;33:8;34:8;
35:1,7,18
**Company (1)**
4:4
**completed (2)**
7:4,7
**complied (1)**
15:7
**concerning (2)**
6:4;32:21
**concerns (2)**
6:5;12:19
**concluded (1)**
37:18
**concludes (2)**
35:17;36:5
**conclusion (1)**
30:5
**confer (2)**
30:5;32:13
**confess (1)**
20:21
**confi (1)**
22:23
**confidential (11)**
21:17;22:4,23;
23:7;26:10,25;27:4,
12,24;28:2,4
**confidentiality (6)**
6:15;8:10;9:5;
10:18,19;19:17
**confine (1)**
29:1
**confirm (2)**
28:10;29:15
**confirmed (2)**
14:6;28:16
**confusing (2)**
8:16;20:22
**confusion (1)**
29:3
**connection (10)**
6:3,5;7:23;9:12;
11:14;13:22,22;
20:14;22:11;26:18
**consent (1)**
8:5
**consider (9)**
11:15,15,16;12:14;
13:23;17:8,18,19;
26:13
**consideration (1)**

31:6
**considered (35)**
12:7,14,16,21;13:1,
9;15:10,21;16:24;
23:24;24:8,25;25:6;
26:6,17;27:5;28:19;
29:4,10,12,17,23;
30:9;33:9,19,22;34:6,
9,10,22;35:1,5,8,10,
24
**considering (1)**
12:8
**consistent (1)**
30:16
**consulting (5)**
25:5,12;29:11;
34:18,20
**contacted (1)**
9:1
**cooperate (1)**
36:11
**corrected (2)**
18:23,25
**correctly (1)**
26:12
**correspondence (1)**
15:18
**counsel (15)**
8:5,17,18;9:22;
10:9;11:4;13:18;
16:8;18:12;19:19;
22:25;31:23;32:4;
33:15;34:2
**couple (1)**
8:14
**course (5)**
9:10;11:8,25;12:3;
24:22
**COURT (110)**
6:3;7:2,8,10;8:1;
9:1,2,6,19,21;10:2,5,
6,8,23,25;11:2,12,14,
20,24;12:1,13,23;
13:15,19,21,21;14:5,
7,8,11,14,21,23;15:1,
4,8,14;16:16,18;
17:16;18:2,4,6,8,11,
18,21,23,25;19:6,23;
20:6,9,16,21;21:2,5,
7,9,11,13,25;22:5,13,
18;23:12,14;24:5,7,
12,15,24;25:2,4,25;
26:2,13;27:8,14,16,
18,20;28:7,17,20;
29:5,14,19,23;30:4,
19,22,25;31:5,8,10,
16;32:3,11,15,17,17,
24;35:17;36:1,4;
37:10,13
**Court's (4)**
6:16;7:1;24:18;
37:2
**covered (2)**

7:25;16:1
**CQS (1)**
5:11
**crazy (1)**
8:25
**created (3)**
7:16,18,23
**critical (1)**
25:13
**CRO (1)**
14:18
**cross- (2)**
24:2;26:3
**cross-examination (1)**
28:11
**cumbersome (2)**
17:14,18

---

## D

**D&P (3)**
22:20;23:1;27:2
**D&P's (1)**
22:21
**dark (1)**
23:21
**data (4)**
12:14;15:21;24:8;
33:21
**dated (2)**
6:16;33:3
**DAY (6)**
4:11;7:13;29:25;
33:5;37:16,17
**days (4)**
8:14,16,25;13:4
**deal (1)**
30:7
**dealing (1)**
19:5
**debtor (1)**
7:1
**debtors (2)**
6:11;19:7
**December (1)**
6:16
**DECHERT (1)**
4:2
**decide (1)**
30:11
**declaration (1)**
30:8
**deemed (1)**
10:17
**depose (1)**
31:18
**deposition (28)**
6:19;7:3;8:15;9:9,
10,17;10:10,13;12:3;
14:20;19:14,24;20:5,
12;24:13;28:25;30:1,
12,23;31:15,25,25;
32:23;33:6;35:6,6,9,

13
**depositions (2)**
7:3,5
**designed (1)**
21:18
**determination (2)**
25:14,18
**determine (1)**
23:2
**development (1)**
33:13
**deviations (2)**
9:3,4
**diligence (1)**
22:10
**direct (1)**
19:4
**directed (2)**
6:17;7:2
**direction (1)**
8:2
**directive (1)**
11:9
**directly (1)**
25:10
**disclose (1)**
17:20
**disclosed (11)**
12:6;14:2,10;16:6;
33:16;34:13,14,23;
35:7,12,16
**disclosure (5)**
15:13;19:12;31:4;
35:17;36:13
**discoverable (1)**
33:25
**discovery (14)**
6:6;7:4,6;16:22;
24:1;31:17,23;32:5,
6;33:12,17,20,22;
36:13
**discuss (1)**
32:1
**discussed (1)**
22:10
**discussing (2)**
19:18;32:4
**disposition (1)**
37:2
**dispute (8)**
6:4,4;9:7;21:7,10;
26:14;32:18,20
**distinction (4)**
12:10;18:17;29:20,
21
**docket (1)**
6:17
**document (30)**
6:13,18;7:16,22;
8:8,13;9:17,18;10:1,
14,16,17;12:16,17;
13:24;19:8,9;20:23,
24;21:16;23:10,14,

13;24:14,16;30:11;
33:8,9;34:9;35:12
**documentation (2)**
13:9;35:4
**documents (37)**
6:6;10:6;11:16,22,
23;12:4,5,12;13:1;
15:20;17:12,13,21;
19:7;22:3;23:19,23;
24:21;25:6;26:5,17;
28:19,23,24;29:4,6;
32:22;34:7,10,11,12,
14,16;35:1,11,15;
36:6
**dollars (1)**
25:20
**done (3)**
19:2;26:19,20
**down (2)**
6:21;15:16
**Dr (1)**
15:11
**drafts (3)**
36:20,22,24
**draw (1)**
12:9;29:19
**drawing (1)**
12:10
**draws (1)**
29:21
**due (1)**
21:22
**due-diligence (2)**
21:22;22:6
**Duff (31)**
8:3,8;9:11,23;
12:16,21;13:17,22;
14:1,10;15:10;19:14,
16;20:4,13;21:17,22;
22:7,11;23:5,24;
24:21;25:11,12,14,
17,21;26:17;27:4;
28:9;31:24
**during (3)**
6:19;7:15;9:10;
33:6;35:6

---

## E

**East (1)**
4:13
**easy (1)**
17:16
**EATON (43)**
5:16;12:23;20:9,
17,18,19;21:4,6,8,10,
12,14;22:6,15,20;
23:13,16;24:6,10,13,
17;25:1,3,8;26:1,8,
23;27:9,24;28:13,20,
22;29:6;30:5,11,22;
31:12,13,22;32:8,16;
33:4;36:11

**Eaton's (4)**
10:5;12:2;17:23;
32:19
**effectively (1)**
24:2
**either (7)**
12:5;20:24;23:13;
24:21,22;29:11;30:7
**electronically (1)**
17:17
**else (4)**
16:14;28:21;29:3;
31:10
**EMMA (1)**
5:15
**encompassed (1)**
15:19
**end (1)**
6:23
**enough (1)**
25:23
**enter (2)**
8:7;36:3
**entered (1)**
36:8
**entitle (1)**
25:25
**entitled (3)**
24:1;30:14;31:19
**ESQ (6)**
4:8,16,24;5:7,15,16
**et (2)**
27:2;36:25
**evaluate (1)**
7:17
**even (2)**
30:13;33:25
**evening (4)**
8:21,23;9:1,9
**event (1)**
15:25
**evidence (2)**
22:13,15
**examination (3)**
16:10;26:4;31:2
**examine (2)**
24:3,7
**example (1)**
17:11
**Excel (2)**
16:4;17:17
**except (1)**
12:16
**exception (1)**
34:3
**excess (1)**
25:19
**exchange (1)**
28:23
**Exhibit (1)**
12:24
**existence (2)**
24:21;28:5

**expect (1)**
36:10
**expert (40)**
7:20;12:7,24,25;
15:11,15;16:23,24;
22:16;24:3;25:5,13,
13;28:24;29:4,9,12;
33:6,10,11,12,13,14,
19,19,21,22,23;34:3,
4,19,19,22,23,24;
35:3,25;36:15,19,21
**experts (2)**
34:20,21
**expert's (1)**
23:5
**explain (1)**
7:14
**expressed (6)**
12:19;16:25;33:20,
22,24;34:5
**extent (3)**
30:15;36:13,20

**F**

**fact (7)**
6:25;7:3,4,5,5,6;
19:20
**facts (3)**
21:1;26:14;33:21
**Fargo (1)**
11:7
**FARR (3)**
5:10;8:18;33:4
**Federal (1)**
6:13
**feed (1)**
17:12
**felt (1)**
31:25
**few (1)**
8:25
**FGIC (56)**
4:12;5:3;6:5,6,7,
12;7:13,15,18,22,23;
9:23;10:14;11:3,17;
12:6,19;13:24;14:10;
17:20;18:14,24;19:3,
5,9;20:19,25;22:8,12,
20;23:3,8,23,24;24:4;
25:16,19;26:5;28:2;
29:2;32:21,21,22;
33:7,7;34:7,8,11,16;
35:11,18,20,22,23,
23;36:5
**FGIC-ResCap-trusts (1)**
33:8
**FGIC's (8)**
8:5;13:25;14:18;
19:3,4;21:3;22:24;
27:1
**Fifth (1)**
5:4

**figure (1)**
31:6
**filed (1)**
9:15
**finally (1)**
8:17
**financial (4)**
22:25;23:2;27:1,3
**find (2)**
21:25;26:9
**firm (1)**
28:3
**First (3)**
24:10;29:14;31:16
**Foerster (1)**
6:11
**follow (1)**
20:10
**Following (1)**
8:2
**form (1)**
36:3
**forming (14)**
11:14;13:23;16:25;
24:9,25;25:7;26:18;
33:10,20,22,24;34:5,
8,23
**foundation (2)**
15:23;33:13
**frame (1)**
6:11
**framed (2)**
17:23,25
**frankly (5)**
16:15;20:25;26:8
**frequently (1)**
25:4
**full (1)**
19:12
**fully (1)**
15:7
**further (4)**
17:9;18:8;32:14,15

**G**

**GALLAGHER (1)**
5:10
**gave (2)**
25:18;29:25
**generally (2)**
7:22;8:6
**generated (2)**
24:22;29:11
**given (3)**
14:10;29:8;34:20
**glad (1)**
32:3
**goes (1)**
25:14
**Good (6)**
7:12;11:6;18:13;
20:18,18;32:3

**GOTSHAL (4)**
5:2;18:14;22:25;
27:2
**great (1)**
25:8
**grist (1)**
26:3
**guess (3)**
8:20;9:8;19:12
**guidance (1)**
31:14

**H**

**half (1)**
19:15
**hand (2)**
32:20,21
**handed (1)**
19:10
**handle (1)**
9:7
**happen (1)**
34:12
**happened (4)**
9:16;19:20;21:23;
26:10
**hard (1)**
16:3
**head (2)**
13:16;28:8
**heading (2)**
12:25;35:1
**hear (5)**
11:2,2,3;18:11;
20:9
**hearing (4)**
8:3;13:5;30:6;33:1
**help (1)**
7:17
**Hold (1)**
22:18
**holes (1)**
16:13
**honestly (2)**
15:19;17:13
**Honor (65)**
6:10,17,22,23,24;
7:12;9:8,25;10:21;
11:1,6,9,21;12:11,18,
20;13:12;14:3,25;
15:6,11,16,19,25;
16:2,15;17:5,7,13;
18:1,9,10,13,16;19:2,
6;20:19;21:6,12;
22:15;23:9,16;24:10,
17;25:1,9;27:7,12,13,
17,22;28:14,22;
29:22,25;30:1,18,24;
31:13,22;32:8,9,16;
37:6,14
**Honor's (3)**
8:2,14;11:9

**Hopefully (1)**
32:14
**hour (2)**
19:15;30:13
**hours (1)**
31:2
**HOWARD (3)**
4:16;7:12;29:25

**I**

**identifi (1)**
13:2
**identified (5)**
10:13;16:7;17:3;
23:10;32:19
**identify (5)**
20:2,12;30:15;
33:21,23
**imparted (1)**
23:24
**important (2)**
18:17;19:1
**include (1)**
36:17
**included (1)**
36:25
**includes (1)**
34:25
**including (6)**
21:17,21;23:9,17;
29:10;35:19
**incomplete (2)**
15:13;16:12
**inconsistent (2)**
8:13;21:1
**indeed (1)**
29:9
**Indenture (1)**
4:20
**independent (2)**
23:1;27:3
**indicate (1)**
23:12
**indicated (3)**
11:11;32:10;36:13
**indications (2)**
21:15;23:22
**information (51)**
6:7,18;7:18,19,20;
9:12,14;12:6;13:24;
14:1;15:24;16:6;
17:9,10,21;19:21,21;
20:3,13;21:16,17,19;
22:14,24;23:7,15,23;
24:1,1,2;26:5,18,22,
25;27:4,13,24;28:2,4;
29:2,10,16;33:25;
34:7,13,16,20,21,23;
35:11,15
**informed (1)**
20:23
**informing (1)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(3) Eaton's - informing

12-12020-mg    Doc 4681-3    Filed 08/15/13    Entered 08/15/13 01:22:14    Exhibit 3
Pg 45 of 49

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg                                                                July 25, 2013

12:7
**initial (1)**
    21:22
**inquired (1)**
    14:20
**instance (1)**
    21:21
**instructed (2)**
    29:1;30:15
**instruction (1)**
    30:1
**instructions (1)**
    29:8
**insured (1)**
    23:3
**interesting (1)**
    25:3
**internal (1)**
    9:13
**interrupted (1)**
    28:20
**intervention (1)**
    32:15
**interview (2)**
    14:18,19
**into (6)**
    8:7;14:20;17:12;
    18:2,6;26:9
**investor (1)**
    8:6
**investors (1)**
    20:19
**issue (37)**
    6:12,20,21;8:19,
    20;9:2,22;16:18;
    17:18,19,24;19:8;
    20:24;21:15,16;
    24:24,25;25:10;
    27:11;28:7;30:5,9;
    31:2,7,8,14,17,21;
    32:5,9,11,15;34:6;
    35:24,25;36:1,10
**issued (1)**
    8:1
**issues (4)**
    16:23;33:18;36:15,
    19
**items (2)**
    22:10;23:9

## J

**JAMES (1)**
    5:15
**Johnson (41)**
    11:4,6,7,13,19,21,
    25;12:11,14;13:12,
    16,20;14:3,6,9;15:6,
    9,15;16:17;17:5;
    18:1,3,4,5,7,9;26:17;
    27:7,11,15,17,19,19,
    22,22;28:7,14,18;
    32:12;33:5;37:6

## JONES (4)
    4:11;7:13;29:25;
    33:4
**July (5)**
    7:4;8:3;9:15;
    32:19;33:3

## K

**KAHAN (1)**
    4:8
**Karen (1)**
    27:20
**Kerr (4)**
    6:9,10,10;7:9
**kind (1)**
    10:19
**KISSELL (1)**
    4:19
**Kit (2)**
    13:13;14:15
**knowing (1)**
    23:17
**Kothari (1)**
    15:12
**KOTWICK (1)**
    4:24

## L

**language (1)**
    15:20
**last (3)**
    13:4;24:19;32:25
**layers (1)**
    17:10
**Lazard (35)**
    6:6;7:1,5;13:25;
    14:1,19;17:20;18:16,
    19;19:2,4,5,6,13,18,
    19;20:14,25;21:3;
    22:8,14,25;23:8,23,
    24;27:1;29:2;31:15,
    18,23,25;32:4,7,22,
    23
**least (2)**
    28:4;31:1
**leave (3)**
    30:19;37:11,13
**leaving (1)**
    21:14
**legend (1)**
    33:8
**letter (15)**
    6:22,23;9:8;10:5;
    11:8;12:2,24;17:24;
    26:8,12;32:19,25;
    33:3,4,5
**letters (4)**
    17:23;28:23;33:2,3
**light (2)**
    6:15;26:22
**limited (4)**

10:20,21;29:15;
    34:3
**Liquidation (1)**
    23:1
**List (5)**
    12:25;22:10;35:1,
    2,4
**listed (1)**
    13:10
**little (4)**
    7:13;12:5;20:22;
    23:21
**LLP (4)**
    4:2,19;5:2,10
**log (1)**
    7:24
**logged (1)**
    23:11
**long (2)**
    13:2;30:14
**looked (2)**
    13:3,6
**looking (1)**
    17:9
**loss (1)**
    16:17
**lot (2)**
    8:25;19:2

## M

**management (2)**
    19:3,4
**MANGES (2)**
    5:2;27:2
**many (2)**
    25:8;26:12
**MARK (1)**
    4:24
**MARY (2)**
    5:16;20:19
**materials (3)**
    15:9,21,21
**matter (1)**
    35:19
**matters (2)**
    32:23;37:8
**may (22)**
    9:21;10:10;13:2;
    17:10,11;19:23;
    23:15,16,16;25:6,8;
    27:7,7,31:22;34:13,
    14,16,20,24;35:13,
    14,24
**McKool (1)**
    8:18
**mean (6)**
    15:22;17:6;25:6;
    26:7;27:6;29:20
**mediation (21)**
    6:7;7:15,24;8:1,9,
    10;9:2,5,5;10:18,20;
    12:18;14:23;17:22;

26:9,10;32:24;34:15,
    17;35:20;36:5
**mediator (1)**
    6:16
**meet (1)**
    19:13
**meeting (9)**
    19:17;20:2;21:22;
    22:1,3,5,6,14;31:3
**Mellon (2)**
    4:3,4
**member (1)**
    21:24
**members (3)**
    22:1;23:19;28:15
**merits (1)**
    7:21
**methods (4)**
    16:23;33:18;36:15,
    18
**Michael (1)**
    11:6
**microphone (1)**
    27:14
**mid-sentence (1)**
    6:2
**might (3)**
    17:6,9,12
**Mike (2)**
    27:19,22
**Mike's (1)**
    14:16
**minutes (1)**
    7:14
**miss (1)**
    13:10
**missed (1)**
    13:2
**misspoke (1)**
    21:12
**mistake (1)**
    30:3
**moment (2)**
    23:18
**Monarch (1)**
    5:11
**Monday (1)**
    8:21
**months (2)**
    25:22,22
**more (3)**
    17:3;27:9;30:12
**morning (7)**
    7:12;11:6;13:3;
    18:13;20:18;33:1;
    37:8
**Morrison (1)**
    6:10
**Most (1)**
    23:9
**much (1)**
    15:4
**must (7)**

26:9,10;32:24;34:15,
    17;35:20;36:5
**mediator (1)**
    6:16

26:9,10;32:24;34:15,
    17;35:20;36:5

32:22;33:12,16;
    34:10,12,23;36:19
**myself (1)**
    24:11

## N

**NA (1)**
    4:4
**NDA (2)**
    28:3,5
**necessary (2)**
    30:22;32:1
**need (2)**
    26:22;32:13
**needs (3)**
    9:22;29:13;36:1
**New (8)**
    4:3,4,6,14,22;5:5,
    13;23:1
**night (1)**
    24:20;32:25
**nobody (2)**
    20:23;32:4
**Nonetheless (1)**
    16:9
**nonprivileged (1)**
    28:24
**nonpublic (4)**
    20:13;22:14;28:1,6
**note (1)**
    6:21;16:6,20,20,
    21;29:21
**noted (1)**
    6:24
**notes (1)**
    22:3
**number (2)**
    6:3,17
**numbers (1)**
    16:7
**NY (5)**
    4:6,14,22;5:5,13

## O

**objecting (3)**
    32:18,18,20
**objectors (7)**
    7:2;8:6,6,18;9:17,
    18;16:8
**objectors' (1)**
    6:22
**objects (1)**
    7:1
**obligations (1)**
    8:12
**occasions (1)**
    21:20
**oddly (1)**
    25:23
**off (3)**
    13:16;28:8;29:14

**offered (1)**
  33:13
**officer (2)**
  22:24;27:1
**One (16)**
  4:21;6:21;9:21;
  12:16;14:16;18:15;
  22:3;23:20;25:10;
  27:11,15;30:10,13;
  32:20;34:12;36:6
**one-page (4)**
  33:7;34:8;35:7,18
**only (11)**
  9:11,12,22;10:1;
  12:17;19:8;20:24;
  22:15;30:16;34:9;
  36:1
**opinion (5)**
  11:14;13:23;15:24;
  25:11;26:7
**opinions (19)**
  12:8;16:25;23:25;
  24:9,25;25:7;26:18;
  29:10,12;33:10,12,
  14,15,20,22,24;34:5,
  8,23
**opportunity (1)**
  31:3
**opposed (1)**
  29:16
**order (17)**
  6:12,16;7:2,17;8:1,
  10,13,14;9:2,3,6;
  10:19,20;12:18;24:2;
  36:3,7
**ordered (2)**
  36:7;37:3
**ordinarily (1)**
  17:1
**originally (1)**
  34:18
**otherwise (2)**
  17:21;32:23
**ourselves (1)**
  10:22
**out (9)**
  8:5,17;16:3;19:13;
  21:25;25:5,9;26:9;
  31:6
**outside (1)**
  13:18
**over (11)**
  6:18,19;12:15,17,
  18,19,22;15:10;16:2;
  19:11;28:18

**P**

**page (5)**
  13:7;14:17;25:22;
  26:23;36:6
**paper (2)**
  17:12;25:24

**papers (20)**
  15:18,19;16:1,2,5,
  9,12,19;17:1,2,8;
  21:14;32:9,13;36:10,
  10,12,17,20,23
**paragraph (5)**
  13:7;22:16;26:24;
  27:23;35:3
**paraphrasing (1)**
  9:4
**pardon (1)**
  21:4
**Park (1)**
  4:21
**part (6)**
  17:6;22:23,23;
  23:7;26:25;30:3
**particular (1)**
  31:2
**particularly (1)**
  25:5
**parties (4)**
  32:19,20,25;36:2
**parties' (1)**
  33:15
**partner (2)**
  13:13;24:11
**partners (3)**
  14:16;37:12,13
**party (1)**
  34:2
**partying (1)**
  32:18
**pass (1)**
  28:9
**payments (1)**
  23:3
**pending (1)**
  32:17
**people (1)**
  28:9
**performed (2)**
  23:1;27:2
**period (1)**
  7:6
**permit (1)**
  32:23
**permitted (6)**
  16:22;33:17,20,23;
  35:24;36:13
**permitting (1)**
  35:17
**personnel (1)**
  14:19
**perspective (3)**
  9:25;15:6;20:22
**Pfeiffer (41)**
  8:15;9:10,11,14;
  10:10;11:15;12:4,21,
  24;13:22;16:10,12;
  20:1,12;22:16;23:18;
  24:7;26:4,6,24;28:1,
  2,9,15;29:1;30:8,12;

**33:6,10;34:6,9,10,13,
  14,18;35:8,10,13,14,
  22,24**
**Pfeiffer's (8)**
  6:19;10:13;14:17;
  19:24;27:12,23;
  34:25;35:2
**Phelps (23)**
  8:4,8;9:12,24;14:1;
  19:14,16;20:4,13;
  21:17,22;22:7;23:6,
  24;24:22;25:11,12,
  17,21;26:17;27:5;
  28:9;31:25
**Phelps' (2)**
  22:11;25:14
**picking (1)**
  27:16
**place (2)**
  22:6;28:23
**plan (1)**
  23:4
**Plaza (1)**
  4:21
**pm (1)**
  9:8
**point (6)**
  17:25;19:12;25:9;
  30:13,23;32:12
**points (1)**
  26:23
**position (2)**
  7:7;16:1
**precise (1)**
  25:22
**preparation (1)**
  20:14
**prepared (6)**
  9:23;10:14;11:16;
  13:17;14:9;19:9
**preparing (5)**
  9:13,14;12:7;26:7;
  33:10
**present (1)**
  21:21
**presented (3)**
  24:14,15;32:11
**pretty (1)**
  17:16
**previously (3)**
  6:17;29:9;31:21
**primary (1)**
  17:8
**principles (1)**
  26:13
**print (1)**
  16:3
**prior (1)**
  35:6
**privilege (11)**
  6:8;7:24;14:24;
  17:22;32:24;34:15,
  17;35:19,20,21;36:5

**privileged (2)**
  23:11;34:1
**problem (2)**
  17:6;26:7
**Procedure (1)**
  6:14
**proceeded (1)**
  9:9
**proceeding (1)**
  6:5
**proceedings (1)**
  37:18
**process (1)**
  7:15
**produce (7)**
  8:3,8;17:3,16;18:5;
  26:5;32:22
**produced (12)**
  10:16;11:18,19,25;
  16:13;17:3,11;28:25;
  29:13;33:7;34:10;
  36:20
**producing (1)**
  17:13
**product (3)**
  17:24;18:3;36:9
**production (6)**
  6:13;7:23;10:17;
  34:11,16;35:12
**projected (1)**
  23:3
**proper (1)**
  34:15
**properly (3)**
  17:25;34:17;35:23
**proposal (4)**
  7:16,17,21;22:22
**proposed (1)**
  22:12
**protect (2)**
  8:12;10:21
**protected (3)**
  6:7;17:22;32:24
**provide (4)**
  19:7;26:22;33:12;
  35:25
**provided (35)**
  7:18;9:16,18,23;
  10:14;12:6;13:24;
  14:1;15:23;16:6;
  17:7;19:21;20:4;
  21:16,19;22:14;23:8;
  25:17;26:6,19;27:6;
  32:13;33:21;34:7,21,
  22;35:8,11,18;36:7,
  12,21,23,24;37:1
**provision (1)**
  22:4
**provisions (5)**
  6:15;8:10;9:5;
  10:18,20
**public (4)**
  11:22;19:21;20:4;

**28:6**
**public' (1)**
  19:19
**pull (1)**
  21:25
**put (2)**
  7:24;30:17

**Q**

**quickly (1)**
  31:11
**quite (2)**
  16:15;17:13
**quote (2)**
  13:8;22:20

**R**

**raised (1)**
  32:4
**range (1)**
  23:2
**rather (2)**
  12:8;34:19
**reach (1)**
  36:2
**reached (2)**
  8:5,17
**read (1)**
  24:19
**reality (1)**
  27:6
**realize (1)**
  24:17
**really (3)**
  17:19;19:5;30:13
**reason (6)**
  10:3;12:17;19:1;
  26:20;28:1;30:2
**reasonable (1)**
  23:2
**reasonableness (1)**
  22:22
**REBECCA (1)**
  4:8
**received (4)**
  20:13;27:5;29:11;
  32:24
**recess (2)**
  37:4,7
**recite (1)**
  26:12
**record (4)**
  7:9;26:8;28:14;
  36:7
**references (1)**
  14:18
**referencing (1)**
  23:18
**referred (1)**
  28:1
**referring (2)**

22:5;33:2
**refers (3)**
    27:12,24;28:5
**reflect (3)**
    36:20,23,25
**refuse (1)**
    34:16
**regard (2)**
    10:11;24:3
**regarding (2)**
    6:6;22:21
**regular (1)**
    37:5
**rehabilitation (1)**
    23:4
**Rehabilitator (4)**
    5:3;18:14,22;35:23
**rehabilitator's (2)**
    18:12;21:3
**relates (1)**
    25:11
**relatively (1)**
    8:11
**relied (12)**
    8:4,8;10:15;11:22;
    28:24;29:2,7,16,23;
    30:16;31:7;33:24
**rely (3)**
    11:16;30:2;34:4
**relying (1)**
    12:9
**remains (1)**
    34:15
**rendering (3)**
    23:25;29:10,12
**repeat (1)**
    24:19
**repeatedly (2)**
    24:20;29:1
**report (22)**
    8:4;9:15;12:24,25;
    13:7;14:17;15:15,24;
    17:2;20:14;22:17;
    23:5;26:23,24;27:12,
    23;33:11;34:25;35:3;
    36:21,24;37:1
**reporter's (2)**
    16:20,21
**represent (2)**
    13:21;14:6
**representation (1)**
    25:15
**representative (1)**
    23:5
**representatives (5)**
    19:14,18;22:7,7,8
**represented (3)**
    26:19,20;32:12
**representing (1)**
    17:2
**request (5)**
    6:12,24;7:5;8:11;
    10:21

**require (1)**
    26:5
**required (3)**
    17:20;28:2;36:14
**requirements (1)**
    15:7
**ResCap (2)**
    37:8,16
**reserve (2)**
    13:8;35:3
**resolve (5)**
    8:20;30:20;32:14,
    14;36:1
**resolved (2)**
    8:19;9:2
**resolves (1)**
    31:21
**resolving (2)**
    26:14;31:17
**respect (11)**
    15:1,15;22:4;
    26:16;30:4;32:7,8;
    33:2;36:6,10,14
**respectfully (1)**
    29:7
**respond (1)**
    8:14
**responsive (1)**
    24:18
**restructuring (2)**
    22:24;27:1
**result (1)**
    29:8
**results (1)**
    33:25
**resume (2)**
    30:12,22
**retained (2)**
    18:19;33:7
**review (1)**
    8:13
**reviewed (4)**
    13:9;24:24;32:25;
    35:4
**RICHARD (2)**
    5:7;18:13
**right (23)**
    7:8;10:23;12:13;
    13:8,15,19;14:21;
    15:4,8;18:11,21;
    20:6;21:11,13;28:17,
    20;29:24;30:25;
    31:10;32:10,17;35:3;
    36:9
**rights (1)**
    8:12
**risks (1)**
    22:22
**role (1)**
    29:11
**roughly (1)**
    19:15
**Rule (11)**

6:14,14;12:12;
    15:9,20;16:1,19;
    29:19;30:17;36:21,
    22
**Rules (1)**
    12:8
**ruling (3)**
    36:4,8;37:2

_____

**S**

**same (2)**
    19:5;27:25
**satisfied (1)**
    30:8
**schedule (3)**
    31:20;32:5,6
**scheduled (1)**
    33:1
**scheduling (1)**
    7:2
**scrap (1)**
    25:23
**second (2)**
    15:11;17:6
**seeking (2)**
    10:21;35:21
**seemed (1)**
    20:25
**seems (4)**
    16:25;17:22;30:6;
    37:16
**selected (1)**
    34:18
**sent (5)**
    6:22;9:8;11:8;
    19:10;23:23
**sentence (1)**
    26:24
**separate (3)**
    6:24;32:9;36:7
**series (1)**
    21:18
**set (1)**
    32:5
**settlement (4)**
    6:5;7:22;22:12;
    24:4
**Seventh (1)**
    5:12
**several (2)**
    16:4;21:20
**SEWARD (1)**
    4:19
**shield (1)**
    35:22
**sic (1)**
    19:17
**SIDMAN (31)**
    4:16;6:20;7:11,12,
    12;8:23;9:19,20,25;
    10:3,7,12,24,25;11:1,
    11;19:10;20:7,8,10;

29:18,22,24,25;
    30:18,21,24;31:1,6,9;
    33:4
**sign (1)**
    28:3
**signatory (1)**
    11:8
**signed (1)**
    19:16
**Significant (2)**
    16:5;25:10
**simply (2)**
    21:12;29:13
**single (1)**
    25:23
**sit (1)**
    6:21
**sitting (1)**
    16:4
**situation (2)**
    25:4;35:20
**six (2)**
    7:3,5
**SLACK (12)**
    5:7;18:13,13,19,22,
    24;19:1,23,25;20:10;
    21:2;28:1
**Smith (1)**
    8:18
**solely (1)**
    28:5
**somebody (5)**
    20:1,3,5;25:5;
    29:15
**somewhat (1)**
    20:25
**somewhere (1)**
    13:11
**sooner (2)**
    13:5;28:8
**sophisticated (1)**
    17:7
**sorry (3)**
    8:16;14:15;27:17
**sort (2)**
    7:14;9:4
**sources (1)**
    15:22
**SP (1)**
    15:11
**SPEAKER (5)**
    8:22;37:7,11,14,16
**specific (1)**
    6:13
**specifically (5)**
    9:3;10:9;11:12;
    16:19;20:11
**specificity (1)**
    16:11
**spent (1)**
    25:22
**spoke (1)**
    31:23

**spreadsheets (3)**
    16:4;17:11,17
**stack (1)**
    16:3
**stand (2)**
    18:23,25
**start (1)**
    37:5
**starts (1)**
    25:5
**stated (2)**
    14:4;25:19
**statement (1)**
    22:16
**states (1)**
    35:3
**stating (1)**
    23:6
**still (2)**
    7:25;31:25
**stipulation (3)**
    8:7;36:3,4
**Stonehill (1)**
    5:11
**straightforward (1)**
    8:11
**Street (1)**
    4:13
**stress (1)**
    27:11
**subject (3)**
    16:9;34:17;35:19
**submission (1)**
    23:25
**sufficiently (1)**
    32:11
**suggested (1)**
    31:24
**suggests (2)**
    10:6;12:2
**summaries (1)**
    24:8
**supplied (3)**
    20:24;24:22;26:1
**support (1)**
    26:15
**Sure (4)**
    11:13;13:13;28:7,
    10
**sword (1)**
    35:21

_____

**T**

**table (1)**
    16:5
**takeaway (1)**
    16:21
**talk (5)**
    12:8;16:18;20:1,3,
    5
**talks (2)**
    15:20;16:21

**tall (1)**
27:20
**team (3)**
22:2;23:19;28:15
**tee (1)**
31:14
**teeing (1)**
31:17
**ten-minute (1)**
37:4
**test (1)**
25:16
**testified (1)**
12:4
**testifies (1)**
28:10
**testify (7)**
21:24;34:3,13,14,
24;35:14,15
**testifying (9)**
16:24;29:15;33:19;
34:19,21,22;35:22;
36:16,19
**testimony (6)**
21:25;23:17;25:14,
21;35:13,25
**testing (4)**
16:22;33:18;36:14,
18
**though (1)**
31:1
**thought (4)**
8:11;9:6;31:19,19
**three (1)**
33:3
**Tim (1)**
14:18
**today (4)**
16:2;17:19,19;36:4
**told (5)**
16:11;19:19;21:2;
28:22;29:9
**tomorrow (2)**
37:10,13
**ton (1)**
25:6
**took (4)**
7:5;22:6;24:13;
28:23
**top (1)**
13:16
**topics (1)**
14:19
**traditionally (1)**
15:22
**transcript (2)**
24:19;37:3
**Travers (1)**
14:18
**treated (2)**
12:12;28:4
**trial (8)**
26:4;28:8,10;

34:13,15;35:14,15,25
**tried (1)**
8:6
**true (1)**
26:3
**Trust (2)**
4:4;23:3
**Trustee (1)**
4:20
**trustees (13)**
7:19,19;8:5,8;9:13;
12:11;15:7;19:7,10;
22:21;32:21;33:7;
35:22
**Trustees' (1)**
7:20
**trustee's (2)**
11:3;24:3
**trusts (1)**
20:20
**trying (1)**
24:17
**Tuesday (6)**
8:17,21,22,23;9:1,9
**turn (1)**
22:18
**turned (9)**
6:18,19;12:15,17,
18,22;15:10;16:2;
28:18
**turning (1)**
12:19
**two (8)**
7:14;13:4;24:10;
30:6,20;31:2,13;
34:12
**typical (1)**
34:19

**U**

**unable (3)**
8:20;21:20;36:2
**under (3)**
6:13;7:1;8:12
**understood (3)**
15:22;18:9,9
**UNIDENTIFIED (5)**
8:22;37:7,11,14,16
**universe (1)**
29:6
**unless (1)**
35:15
**up (6)**
7:5;27:14,16;28:8;
31:14,17
**update (2)**
13:8;35:4
**upon (10)**
8:4,9;10:15;12:9;
15:23;28:24;29:2,7,
16;33:24
**use (2)**

9:17;35:21
**used (2)**
27:13;30:2
**using (1)**
11:15
**utilized (4)**
7:19,20;9:12,14

**V**

**valuating (1)**
7:21
**value (4)**
23:2;25:15,18,23
**versus (1)**
31:7
**via (1)**
9:2
**view (2)**
23:6;29:12
**violate (1)**
12:20
**violation (2)**
8:9;10:18
**volume (1)**
32:13

**W**

**waived (1)**
36:5
**waiver (3)**
8:9;10:19;35:19
**wants (2)**
30:12;31:10
**warranty (1)**
25:15
**Washington (1)**
13:4
**way (5)**
9:7;22:3;23:17,20;
30:17
**ways (1)**
30:7
**week (1)**
16:7
**WEIL (5)**
5:2;18:14,20;
22:25;27:2
**Weitnauer (8)**
13:13;14:12,13,15,
15,22,25;15:3
**Wells (1)**
11:7
**weren't (1)**
23:22
**what's (2)**
16:13;28:12
**whereby (1)**
8:7
**Whereupon (1)**
37:18
**whomever (1)**

29:3
**whose (1)**
34:2
**willing (1)**
30:7
**WILLKIE (3)**
5:10;8:18;33:4
**wishes (1)**
30:6
**withheld (2)**
7:22;34:11
**within (2)**
15:19;33:7
**without (3)**
8:9;32:15;33:17
**witness (9)**
6:25;15:11;21:18,
24;24:14,19,20;29:1,
8
**word (3)**
11:15;27:13;30:2
**work (28)**
13:23;15:18,19;
16:1,2,5,9,12,19;
17:1,2,8,12,24;18:3,
22;19:2;21:14;25:12;
32:9,13;36:9,10,10,
12,17,20,23
**worksheet (1)**
17:17
**worth (1)**
25:19
**wrapped (1)**
20:20
**wrote (1)**
6:24

**Y**

**yesterday (14)**
6:19,23;7:6;8:15;
9:10;11:9;12:17,20;
16:10;20:12;21:18;
28:25;29:15;30:1
**York (8)**
4:3,4,6,14,22;5:5,
13;23:1

**Z**

**zero (1)**
25:18

**1**

**10004 (1)**
4:22
**10017 (1)**
4:14
**10019 (1)**
5:13
**10036 (1)**
4:6

**10153 (1)**
5:5
**1095 (1)**
4:5
**11 (2)**
13:7;35:3
**12-12020 (1)**
6:3
**14 (3)**
22:16;26:24;27:23
**17 (1)**
7:4
**17th (1)**
8:3
**1914c (1)**
6:15
**19th (1)**
9:15

**2**

**2 (2)**
12:25;13:8
**2010 (1)**
36:22
**2012 (1)**
6:16
**2013 (3)**
7:4;32:19;33:3
**222 (1)**
4:13
**24 (1)**
33:3
**24th (1)**
32:19
**2519 (1)**
6:17
**26 (1)**
6:16
**26a2B (3)**
12:12;15:9,20
**26b4C (2)**
6:14,18

**4**

**41st (1)**
4:13

**5**

**5 (1)**
9:8

**7**

**7 (2)**
13:7;14:17
**767 (1)**
5:4
**787 (1)**
5:12

**RESIDENTIAL CAPITAL, LLC, et al.**
Case No. 12-12020-mg

**8**

**8 (1)**
26:23

**9**

**9:48 (1)**
37:18
**9019 (1)**
6:5