# **EXHIBIT 8**

```
 1
 2           UNITED STATES BANKRUPTCY COURT
 3           SOUTHERN DISTRICT OF NEW YORK
 4
 5   ----------------------------X
     In Re:                       ) Case No.
 6                                ) 12-12020 (MG)
     RESIDENTIAL CAPITAL, LLC,    )
 7   et al.,                      ) Jointly Administered
                                  ) Bankr. S.D.N.Y.
 8        Debtors.                )
     ----------------------------X
 9
10
11
12                   CONFIDENTIAL
13
14
15         DEPOSITION OF MAMTA SCOTT
16              Chicago, Illinois
17           Thursday, July 18, 2013
18
19
20
21
22
23   Reported by:
24   PAULA CAMPBELL, CSR, RDR, CRR, CCP
25   JOB NO. 63796
```

Page 35

1 CONFIDENTIAL - M. SCOTT
2 without negotiation?
3     MR. KOTWICK: Objection to the form.
4   A. We reviewed the terms, vetted the terms,
5 engaged a financial advisor to do an analysis.
6   Q. But did not negotiate any of the terms in
7 the FGIC settlement agreement as presented to you?
8   A. We did not.
9   Q. Okay. Did the FGIC settlement agreement,
10 as presented to U.S. Bank, change from the time it
11 was first presented to U.S. Bank through the time it
12 was executed?
13     MR. KOTWICK: Objection. I'm going to
14     direct the witness not to answer to the extent
15     that those discussions or any changes, if any,
16     would have occurred during the mediation
17     process, which is subject to the mediation
18     order.
19   A. I can't answer the question.
20     MS. JAMES: Can we go off the record and
21     take a break?
22     (Recess taken from 11:43 A.M. to
23     11:49 A.M.)
24     MS. JAMES: I'm going to hand you the
25     exhibit -- I'm sorry. I'm going to hand to the

Page 108

1       CONFIDENTIAL - M. SCOTT
2       A.  No.  We engaged them as our financial
3   advisor to do this work.
4       Q.  And when I say "you," I mean U.S. Bank.
5   Did anyone else at U.S. Bank check the work?
6       A.  The answer is the same.
7       Q.  So the answer is no.  Thanks.
8           MR. KOTWICK:  Just make sure you verbalize
9       your answers and not nods.
10          THE WITNESS:  Sorry.
11      A.  No.
12      Q.  Do you know when Duff & Phelps determined
13  the amount that each of these three trusts were to
14  receive, did Duff & Phelps take into account future
15  losses expected on the securities in these three
16  trusts?
17      A.  Can you repeat the question?
18      Q.  Yes.
19          Do you know when you -- did you ask Duff &
20  Phelps to take into account future projected losses
21  on the securities in the trusts in determining the
22  amounts that Freddie Mac was to receive if the
23  policies were commuted?
24          MR. KOTWICK:  Objection to the form.
25      A.  We engaged Duff & Phelps and asked them to

1                CONFIDENTIAL - M. SCOTT
2    provide the allocations --
3         Q.   And what did you --
4         A.   -- per trust.
5         Q.   What did you exactly ask them to do?
6         A.   I couldn't speak to you exactly what we
7    asked them to do.
8         Q.   Who asked them?
9              MR. KOTWICK:  And I will counsel the
10        witness to the extent that any knowledge that
11        she has that is part of discussions that she
12        had with counsel, not to disclose the
13        discussions with counsel.
14             MR. GELFARB:  Of course.
15        Q.   Who -- were you the one who asked Duff &
16   Phelps to make these computations?
17        A.   No.
18        Q.   Do you know who asked Duff & Phelps to do
19   this from U.S. Bank?
20        A.   It would have been through counsel that the
21   request was made.
22        Q.   Oh, all right.
23             MR. GELFARB:  I'm going to ask you to mark
24        this as Exhibit 9.
25             (Scott Exhibit 9 marked for

1       CONFIDENTIAL - M. SCOTT

2       Q.  And what about a deal where a judge was

3   asked to sign an order saying that U.S. Bank acted

4   in the best interests of investors in trusts for

5   which U.S. Bank was a trustee?

6           MR. KOTWICK:  Objection to the form.

7       A.  I can't recall.

8       Q.  And what about a deal where a judge was

9   asked to state that you were -- acted in the best

10  interests of the investors in each trust?

11          MR. KOTWICK:  Objection to form.

12      A.  I don't recall.

13      Q.  Is your understanding that U.S. Bank has

14  acted in good faith with respect to the commutation

15  agreement?

16      A.  Yes.

17      Q.  And you have acted in good faith towards

18  Freddie Mac?

19      A.  Yes.

20      Q.  And why do you believe that to be the case?

21      A.  We were approached with the settlement, the

22  FGIC settlement.  We engaged Duff & Phelps to do the

23  analysis.  We worked with counsel.  We worked with

24  the other trustees.  We provided notice.  I mean,

25  this -- all of this was part of a mediation process

Page 135

1    CONFIDENTIAL - M. SCOTT
2  which demands acting in good faith.
3      Q.  What kind of notice did you ever give to
4  Freddie Mac?  You said you gave notice.  Do you mean
5  notice to Freddie Mac?
6      A.  Related to the FGIC settlement?
7      Q.  Yes.
8      A.  The trustee groups -- the trustee group
9  gave a notice to all holders regarding the entry
10 into the plan support agreement and the FGIC
11 settlement and another notice went out on the eight
12 trusts for which U.S. Bank is trustee regarding the
13 FGIC settlement.
14     Q.  And by FGIC settlement, you mean a
15 commuting of the policies?
16         MR. KOTWICK:  Objection to the form.
17     A.  Yes.
18     Q.  When did that notice to FGIC -- excuse
19 me -- to Freddie Mac go out?
20         MR. KOTWICK:  Objection to the form.
21     A.  I would have to refer to the notices for
22 the exact dates.
23     Q.  Can you approximate?
24     A.  It was very short after the entry into the
25 plan support agreement, the first -- the first