# Exhibit 6

# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-922-3884
www.alston.com

Michael E. Johnson    Direct Dial: 212-210-9584    Email: michael.johnson@alston.com

July 15, 2013

VIA EMAIL AND HAND DELIVERY

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
New York, New York 10004

Re: *In re Residential Capital, LLC, et al.* (Case No. 12-12020(MG)); *Debtors' Motion Pursuant to Fed. R. Bankr, P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees and Certain Institutional Investors* (the "**FGIC Motion**") [Docket No. 3929]

Dear Judge Glenn:

    I write on behalf of all of the **FGIC Trustees**[1] to request that Your Honor hear and determine a dispute that has arisen concerning the FGIC Trustees' proposed deposition of Marc Abrams, Esq. of Willkie Farr & Gallagher LLP ("**Willkie Farr**"), counsel to objecting party Monarch Alternative Capital LP ("**Monarch**"). As described in further detail below, the FGIC Trustees have good reason to believe that Willkie Farr, in its capacity as counsel for Monarch, received information about certain material terms of the **FGIC Settlement Agreement**[2] prior to the settlement being finalized. The FGIC Trustees further have reason to believe that, notwithstanding the fact that Willkie Farr had material information about the potential settlement, which information might have

---

[1] For purposes of this letter, the FGIC Trustees are The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., U.S. Bank National Association, and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees or indenture trustees for the FGIC Insured Trusts. Capitalized terms not defined in this letter shall have the meanings ascribed to them in the FGIC Motion or the FGIC Settlement Agreement, as applicable.

[2] That certain Settlement Agreement dated as of May 23, 2013 by and among Residential Capital, LLC and its direct and indirect subsidiaries listed on Exhibit A to the FGIC Settlement Agreement, Financial Guaranty Insurance Corporation, The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., Law Debenture Trust Company of New York, U.S. Bank National Association and Wells Fargo Bank, N.A., each solely in their respective capacities as trustees, indenture trustees, or separate trustees under the Trusts and the Institutional Investors, a copy of which is attached as Exhibit 2 to the FGIC Motion.

---

July 15, 2013
Page 2

caused its client to raise concerns it had prior to execution of the FGIC Settlement Agreement, Willkie Farr did not disclose that information, because Monarch did not want to receive non-public information that might have restricted its trading activities. In short, Monarch chose to remain willfully blind to key developments directly pertaining to the FGIC Settlement Agreement, yet it now apparently intends to object to the FGIC Settlement Agreement and accuse the Trustees of acting unreasonably in entering into the FGIC Settlement Agreement. In order to ascertain relevant details concerning the information Monarch's counsel possessed, the FGIC Trustees timely served a notice of deposition and subpoena on Mr. Abrams. Willkie Farr has taken the position that Mr. Abrams will not appear for a deposition, compelling the FGIC Trustees to write this letter.

Effective as of May 2, 2013, Willkie Farr, acting as counsel for Monarch in connection with the mediation overseen by Judge Peck (the "**Mediation**"), entered into a confidentiality agreement with the above-referenced Debtors as of May 2, 2013 (the "**Confidentiality Agreement**;" attached hereto as Exhibit A). Under the Confidentiality Agreement, Willkie Farr was able to receive Confidential Information (as defined in the Confidentiality Agreement) relating to the Debtors, their chapter 11 cases, and the Mediation. However, because Monarch declined to agree to the Confidentiality Agreement, Willkie Farr was not entitled to disclose any Confidential Information to Monarch. The FGIC Trustees understand that Monarch chose not to receive Confidential Information so that it would not become restricted from trading in the Debtors' securities.

The FGIC Trustees further understand that, after entering into the Confidentiality Agreement, but prior to the FGIC Settlement Agreement being executed, Willkie Farr received certain Confidential Information relating to the terms of a potential FGIC Settlement Agreement. *See* Monarch000000622 – Monarch000000624, attached hereto as Exhibit B; Monarch000000644 – Monarch000000645, attached hereto as Exhibit C. While the documents produced to date make clear that some Confidential Information was disclosed to Mr. Abrams, they do not reveal the precise nature of that information, whether other disclosures occurred that were not memorialized in emails or other writings, or the timing of the disclosures. In fact, the FGIC Trustees understand that the bulk of the Confidential Information transmitted to Mr. Abrams was in several lengthy telephone conversations with counsel for the Institutional Investors.

On June 13, 2013, the FGIC Trustees served a notice of deposition on Mr. Abrams and a set of document requests on Willkie Farr (attached hereto as Exhibit D). On June 25, 2013, Willkie Farr responded with a letter stating that they would not be responding to either the June 13 deposition notice or document requests (attached hereto as Exhibit E). In discussions with Willkie Farr, counsel for the FGIC Trustees explained that it sought very narrow discovery of Mr. Abrams relating to his conversations with third parties concerning Confidential Information, and does not seek to intrude on his privileged conversations with his client, Monarch. On June 26, 2013, the FGIC Trustees served a subpoena for testimony and documents on Mr. Abrams and a subpoena for

July 15, 2013
Page 3

documents on Willkie Farr (attached hereto as Exhibit F). On June 28, 2012, Willkie Farr responded in writing (attached hereto as Exhibit G), stating that they would not be responding to the June 26 subpoenas.

While depositions of counsel may be disfavored, "the disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 U.S. Dist. LEXIS 36353, at *3 (S.D.N.Y. Mar. 15, 2013). Rather, "[a]ttorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation." *Murata Mfg. Co. v. Bel Fuse Inc.*, No. M8-85 (JFK), 2007 U.S. Dist. LEXIS 97126, at *5 (S.D.N.Y. Apr. 19, 2007). As the Second Circuit has held, a court should balance certain considerations in deciding a dispute arising from a request to depose a party's counsel:

> [T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted.

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Subpoena Issued to Dennis Friedman)*, 350 F.3d 65, 71-72 (2d Cir. 2003) ("*Friedman*"). Where, as here, counsel has played a material role in the subject of the dispute, courts in the Second Circuit applying the factors set forth in *Friedman* have permitted the deposition of a party's counsel. *See, e.g.*, *Murata Mfg. Co. v. Bel Fuse Inc.*, 2007 U.S. Dist. LEXIS 97126, at *5 (denying motion to quash deposition of counsel where counsel had unique information given his primary role in the subject of each topic); *Kleiman v. Jay Peak, Inc.*, No. 1:10-CV-83, 2012 U.S. Dist. LEXIS 89968, at *20 (D. Vt. June 27, 2012) (holding that the attorney-client privilege did not prevent the deposition of an attorney based on a limited factual issue relating to his investigator's receipt of a certain document).

The *Friedman* factors weigh strongly in favor of allowing the FGIC Trustees to take Mr. Abrams' deposition. The documents produced to date (*see, e.g.,* Exs. B and C hereto) make clear that Mr. Abrams received Confidential Information under the Confidentiality Agreement prior to execution of the FGIC Settlement Agreement. The documents also make clear (*see, id.*) that Mr. Abrams had multiple conversations

July 15, 2013
Page 4

discussing Confidential Information with counsel for the Institutional Investors. The FGIC Trustees have reason to believe that this information included certain terms of the anticipated settlement, which information, had it been disclosed to Monarch, might have allowed Monarch to raise its concerns with the settlement with the FGIC Trustees prior to their execution of the FGIC Settlement Agreement. Mr. Abrams thus potentially has non-privileged information that would allow the FGIC Trustees to show that they acted reasonably in not discussing the terms of the potential settlement with Monarch because Monarch chose to remain blind to such information.[3]

The FGIC Trustees have endeavored to avoid the need for a deposition by proposing to stipulate to certain facts concerning Mr. Abrams, which they would introduce at the FGIC Settlement Agreement hearing on August 16, 2013. Indeed, the FGIC Trustees drafted and presented to Willkie Farr on July 10, 2013, a proposed set of stipulated facts, but Willkie Farr has not yet responded substantively to that proposal. In light of the imminent July 17, 2013 deadline for completion of fact discovery, the FGIC Trustees have no choice but to request that Your Honor consider the dispute regarding the proposed deposition of Mr. Abrams at the conference currently scheduled for July 17, 2013 at 3 p.m.

Respectfully submitted,

Michael E. Johnson

Enclosures

cc: *Counsel for Monarch*
*Counsel for the Debtors*
*Counsel for FGIC*

---

[3] A deposition of Mr. Abrams will not interfere with Monarch's pursuit of its objection, as other Willkie Farr attorneys have been handling this matter.