UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In Re:** | **Case No. 12-12020 (MG)** |
| **Residential Capital, LLC, et al.,** | **Chapter 11** |
| **Debtors.** | **Jointly Administered** |

DECLARATION OF CHARLES R. GOLDSTEIN IN SUPPORT OF THE MOTION IN
*LIMINE* OF MONARCH ALTERNATIVE CAPITAL LP, STONEHILL CAPITAL
MANAGEMENT LLC, BAYVIEW FUND MANAGEMENT LLC, CQS ABS MASTER
FUND LIMITED AND CQS ABS ALPHA MASTER FUND LIMITED

I, Charles R. Goldstein, declare as follows:

1. I am a managing director of Protiviti Inc. ("Protiviti"), a professional services firm engaged in the business of providing financial advisory and professional consulting services.

2. This declaration includes terms defined in the Goldstein Report and the expert report dated July 19, 2013 prepared by Allen M. Pfeiffer ("Mr. Pfeiffer") on behalf of the Trustees (the "Pfeiffer Report"), and the declaration of Alice Chong dated August 13, 2013 (the "Chong Declaration").

## I. Timing and Size of Data Provided

3. On August 6, 2013, almost two weeks after Mr. Pfeiffer's deposition, counsel for the Investors, Willkie Farr & Gallagher LLP ("Willkie") received an email from counsel for the Trustees stating that a hard drive would be delivered the following day that was to include "several gigabytes of raw databases, secondary databases with D&P's calculations, and Excel files that serve as the next level of information "underneath" the Loss Information, including Intex program files for the 47 Trusts."[1] The email also stated that support for the $92 million in potential recoveries referenced in the Pfeiffer Report would be produced.

---
[1] Email from Michael Johnson to Willkie on August 6, 2013.

4.  On August 7, 2013, I received a spreadsheet that allegedly supports the $92 million in potential recoveries for the 47 FGIC wrapped trusts under the proposed Plan.

5.  On August 7, 2013, Willkie received a hard drive with 113 gigabytes of data from the Trustees' counsel with databases and spreadsheets. Due to the large amount of data delivered, it took approximately 18 hours to convert/copy the data so that it could be delivered to my company. On August 10, 2013, I received the data and immediately began evaluating its contents.

## II.   Description of Data Provided

6.  The foundation of the Pfeiffer Report is the creation of a wide range of projected payments of claims that the Investors will receive, absent the settlement agreement, compared to the Commutation Payment. In order to calculate the projected payments absent the settlement agreement, Pfeiffer states that he analyzed the historical claims and activity associated with the underlying mortgages and projected the future claims using economic data, industry metrics, and specific performance of the securities beginning at origination. Based on my analysis, the data that was provided on August 7, 2013 comprises historical mortgage activity and origination data. It is my understanding from the Chong Declaration including Exhibit A that this data supports the underlying assumptions and projections that were used as a basis of the May 15, 2013 presentation to the Trustees.

7.  The data provided by D&P on August 7, 2013 and discussed in the Chong Declaration also contained support for the two Excel workbooks that are the alleged sources for the high and low estimates of realized losses and projected future losses of the 47 FGIC Insured Trusts ("Losses Workbooks"). Based on the Chong Declaration including Exhibit A, the Losses Workbooks appear to derive from the 113 gigabytes of data for various inputs and assumptions incorporated into the calculations for realized losses and projected future losses contained in the May 15, 2013 presentation to the Trustees.

8.  In the Chong Declaration, Ms. Chong (Mr. Pfeiffer's associate at D&P) states, "I used the Losses Workbooks in connection with [the May 15, 2013 presentation to the Trustees], and later I used the same Losses Workbooks in connection with my assistance to Mr. Pfeiffer in preparing the Expert Report".

9.  In Table 1 of the Chong Declaration, Ms. Chong illustrates the relationship between the Expert Report of Allen Pfeiffer and the data provided on August 7, 2013. It appears from the table that

2

the data provided on August 7, 2013 is the underlying support for the Plan of Rehabilitation realized losses to date and the projected future losses of the 47 FGIC Insured Trusts that served as the basis for the May 15, 2013 presentation to the Trustees. Without data such as this, projections that served as the basis for the May 15, 2013 presentation to the Trustees could not have been calculated.

## III.    Status of Evaluation of Data Provided by D&P

10. The hard drive of data provided by D&P that I received on August 10, 2013 included 113 gigabytes of data. In order to understand the volume of data, it is helpful to understand the approximate number of pages found in a gigabyte.

The table below provides an average number of pages per gigabyte for some common document types:



Source: http://www.lexisnexis.com/applieddiscovery/lawlibrary/whitepapers/adi_fs_pagesinagigabyte.pdf

3

The table below provides the average number of pages per 113 gigabytes for some common document types:



11. The 113 gigabytes includes origination data, projected losses by month for multiple scenarios, and the historical performance of tens of thousands of mortgages that comprise the 47 FGIC wrapped Trusts. Mr. Pfeiffer stated in his deposition that he worked for many months estimating claims applicable to the 47 trusts[2].

12. I have not completed my assessment of the underlying data, and because of the volume, will not be able to do so in advance of trial. Thus far, in the limited time provided, we have rigorously attempted to determine the type of data provided and how this data reconciles to the D&P Report specifically in relation to the support for the May 15, 2013 presentation to the Trustees and the $92 million distribution to FGIC Insured Trusts.

## IV.    Present Value of Future Claims Payments

13. In the Chong Declaration, Ms. Chong indicates that the data provided on August 7, 2013 (which I received on August 10, 2013) is the underlying support for the realized losses to date and the projected future losses of the 47 FGIC Insured Trusts that were used as the basis for the May 15, 2013 presentation to the Trustees.

14. I have not been able to reconcile the claims data and timing of claims data provided on August 7,

---

[2] Pfeiffer Deposition, page 122.

2013 to the amount of realized losses to date or the projected future losses of the 47 FGIC Insured Trusts included in the D&P Report. This could be a function of the large amount of data, the limited time which I have had to analyze the data, a fundamental problem with the calculations, or a combination of these or other factors.

15. Due to my inability to reconcile the claims and timing of claims data, I have not had the opportunity to recalculate the results, assess the assumptions utilized, or critique the methodology utilized in the May 15, 2013 presentation to the Trustees, beyond the analyses and criticisms contained in the Goldstein Report and the Goldstein Declaration. Until I perform these functions, I cannot determine whether the information provided is adequate or whether additional items were withheld.

16. If I had been afforded an adequate opportunity to completely analyze the data, I would have been able to determine whether the appropriate data was provided and I could have assessed the following components of the calculation:

- Recreate D&P's discounted cash flow model to validate the accuracy of the calculations;
- Evaluate Trusts on a loan by loan basis including analysis of underlying collateral for each Trust;
- Validate projections for claim amounts and timing of claims including determining the adequacy of 10% adjustments to default rates, prepayments, and severity rates;
- Prepare a stress test to determine the effect of changing the assumptions in preparing a high and low case;
- Further assess the propriety of the high case and low case parameters; and
- Analyze the timing of the claims in the projections.

## V.   $92 Million Distribution to FGIC Insured Trusts

17. In the D&P Report, Mr. Pfeiffer states that if the ResCap Plan of Liquidation contemplated by the Plan Support Agreement is confirmed, an additional estimated $92 million in recoveries will be distributed to the FGIC Insured Trusts. These recoveries represent payments on claims (in excess of $900 million) against ResCap and not FGIC. Proceeds from these bankruptcy claims will be distributed to the FGIC Insured Trusts irrespective of the acceptance of the FGIC Settlement and will be based on the bankruptcy court's claims allowance process.

18. Willkie immediately requested support for the $92 million and counsel asked questions about the

$92 million at Pfeiffer's deposition on July 24, 2013.[3]

19. During the Pfeiffer deposition, he stated that, "There's an allocation schedule that is provided in connection with the plan support agreement and with -- in connection with the disclosure statements. And if you do the arithmetic to add the 47 insured trusts' recovery, you would -- you would arrive at a number which is approximately $92 million".[4]

20. Based on the description provided in the Pfeiffer deposition, I have not been able to calculate the $92 million using the plan support agreement and the disclosure statements. Specifically, the FGIC Claims, the total ResCap claims, the GMACM percentage recovery, and the RFC percentage recovery from the disclosure statements do not agree to the claims and recovery percentages in the $92 million calculation that was provided on August 7, 2013.

21. The claims and the recovery percentages are the fundamental input components of Pfeiffer's $92 million calculation and without support, I am unable to provide an assessment of the conclusions, calculations, or assumptions utilized in deriving this figure.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 14, 2013

**Charles R. Goldstein**

---

[3] Pfeiffer Deposition, page 134.
[4] Pfeiffer Deposition, page 132.