1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 - - - - - - - - - - - - - - - - - - - -x

6 In the Matter of:

7

8 RESIDENTIAL CAPITAL, LLC, et al.,

9

10          Debtors.

11

12 - - - - - - - - - - - - - - - - - - - -x

13

14          United States Bankruptcy Court

15          One Bowling Green

16          New York, New York

17

18          August 14, 2013

19          4:03 PM

20

21 B E F O R E:

22 HON. MARTIN GLENN

23 U.S. BANKRUPTCY JUDGE

24

25

Final Pre-Trial Hearing

Transcribed by:   Penina Wolicki

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4      Attorneys for Debtors

5      1290 Avenue of the Americas

6      New York, NY 10104

7

8  BY:   CHARLES L. KERR, ESQ.

9      JOSEPH ALEXANDER LAWRENCE, ESQ.

10      ANTHONY PRINCI, ESQ.

11

12

13  KRAMER LEVIN NAFTALIS & FRANKEL LLP

14      Attorneys for Official Creditors' Committee

15      1177 Avenue of the Americas

16      New York, NY 10036

17

18  BY:   PHILIP S. KAUFMAN, ESQ.

19      DANIEL M. EGGERMAN, ESQ.

20

21

22

23

24

25

4

1    WHITE & CASE LLP

2         Attorneys for Ad Hoc Group of Junior Secured Noteholders

3         1155 Avenue of the Americas

4         New York, NY 10036

5

6    BY:    J. CHRISTOPHER SHORE, ESQ.

7           VANESSA D. SODERBERG, ESQ.

8

9

10   JONES DAY

11        Attorneys for FGIC

12        222 East 41st Street

13        New York, NY 10017

14

15   BY:    HOWARD F. SIDMAN, ESQ.

16           RICHARD L. WYNNE, ESQ.

17           STEVEN C. BENNETT, ESQ.

18

19

20   ALSTON & BIRD LLP

21        Attorneys for Wells Fargo Bank

22        1201 West Peachtree Street

23        Atlanta, GA 30309

24

25   BY:    JOHN C. WEITNAUER, ESQ.

5

1

2    SEWARD & KISSEL LLP

3         Attorneys for US Bank as Securitization Trustee

4         One Battery Park Plaza

5         New York, NY 10004

6

7    BY:    MARK D. KOTWICK, ESQ.

8           THOMAS ROSS HOOPER, ESQ.

9

10

11    DECHERT LLP

12         Attorneys for Bank of New York Mellon

13         1095 Avenue of the Americas

14         New York, NY 10036

15

16    BY:    REBECCA S. KAHAN, ESQ.

17           MAURICIO A. ESPANA, ESQ.

18

19

20    MOSS & KALISH, PLLC

21         Attorneys for Freddie Mac

22         125 East 42nd Street

23         New York, NY 10168

24

25    BY:    DAVID B. GELFARB, ESQ.

6

1

2   MCKOOL SMITH, P.C.

3          Attorneys for Freddie Mac

4          One Bryant Park

5          47th Floor

6          New York, NY 10036

7

8   BY:   ANN SCHOFIELD BAKER, ESQ.

9          MICHAEL R. CARNEY, ESQ.

10

11

12  WILLKIE FARR & GALLAGHER LLP

13          Attorneys for Monarch, Stonehill, CQS, Bayview

14          787 Seventh Avenue

15          New York, NY 10019

16

17  BY:   JOSEPH T. BAIO, ESQ.

18          MARY EATON, ESQ.

19          EMMA J. JAMES, ESQ.

20

21

22

23

24

25

7

```
 1
 2   WEIL, GOTSHAL & MANGES LLP
 3        Attorneys for the FGIC Rehabilitator
 4        767 Fifth Avenue
 5        New York, NY 10153
 6
 7   BY:   RICHARD W. SLACK, ESQ.
 8
 9
10   MUNGER, TOLLES & OLSON LLP
11        Attorneys for Berkshire Hathaway, Inc.
12        355 South Grand Avenue
13        35th Floor
14        Los Angeles, CA 90071
15
16   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)
17
18
19
20
21
22
23
24
25
```

**RESIDENTIAL CAPITAL, LLC, ET AL.**

8

1                    P R O C E E D I N G S

2          THE COURT:  All right.  Please be seated.

3          We're here in Residential Capital, number 12-12020.

4  This hearing was scheduled in a supplemental scheduling order

5  number 2 that was entered yesterday.  I have some things I

6  specifically want to cover.  We'll go in the order in which I

7  have them rather than the agenda.

8          First with respect to the motions in limine.  It's

9  important that you all be aware of my rulings so that you can

10 be fully prepared for trial on Friday, so I'm going to render

11 oral decisions on each of the motions in limine.  With respect

12 to one of them, there will -- because it's a little more

13 complicated, there will be an order entered shortly after the

14 hearing.

15         So I have five motions in limine from the investor

16 parties, two motions in limine from Freddie Mac, one motion in

17 limine from the junior secured noteholders, one motion in

18 limine from FGIC.

19         MR. SIDMAN:  Your Honor, if I -- I don't want to

20 interrupt you, but you asked us to meet and confer with respect

21 to the motions in limine.  We have reached an agreement as to

22 one tiny issue, but however you --

23         THE COURT:  Well, I asked you and meet and confer with

24 respect to the deposition designations and counter-

25 designations.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

9

1          MR. SIDMAN:  Okay.  Well, we did speak --

2          THE COURT:  Go ahead.

3          MR. SIDMAN:  -- right before the conference --

4          THE COURT:  Identify yourself for the record, Mr.

5    Sidman.

6          MR. SIDMAN:  Sure.  Your Honor, this is Howard Sidman

7    from Jones Day for FGIC.  Right before the hearing, Your Honor,

8    we reached an agreement with counsel for McKool Smith with

9    respect to one issue.  We will withdraw our motion in limine

10   with respect to Scott Gibson.

11         THE COURT:  Okay.

12         MR. SIDMAN:  And in turn, McKool Smith will agree to

13   not call -- I forget the person's name, but the representative

14   from Rothschild.

15         MR. CARNEY:  Rothschild.  Mr. Messer.  That's correct,

16   Your Honor.

17         THE COURT:  All right.

18         MR. SIDMAN:  Thank you, Your Honor.

19         THE COURT:  Thank you.  All right.

20         Let me deal first with the motion in limine to

21   preclude the testimony of Jeffrey Lipps.  This is the one that

22   is slightly more complicated.  The motion in limine is granted

23   in part and denied in part.  And they're for several reasons.

24         First, to the extent that Mr. Lipps has been proffered

25   as an expert witness, his testimony as an expert is precluded.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  The record is clear that his legal advice or his legal opinions

2  did not form the basis for Mr. Kruger's decision to enter into

3  the proposed FGIC settlement.  Mr. Lipps was not permitted to

4  testify about any prior legal advice he'd given to the debtors

5  with respect to any of the matters as to which he had

6  previously represented them.  If he was to testify as an

7  expert, the Court concludes, essentially for the reasons I set

8  forth in an earlier published opinion on April 12th, 2013, in

9  response to the committee's preclusion motion -- if he was

10  going to testify and give legal opinions as an expert, I would

11  require that he be examined on all advice he had given to the

12  debtors on any of the subject matters about the RMBS cases.

13          Additionally, the Court does not believe that much of

14  Mr. Lipps' direct testimony -- and that's in his July 31,

15  2013 -- the direct testimony that was provided to the Court --

16  is an appropriate subject for expert testimony.

17          The debtor argues that the only thing that would be

18  precluded is the ultimate legal issues.  But for the purposes

19  of a 9019 hearing, the legal issues indeed are the strengths

20  and weaknesses of the claims and defenses.  That's precisely

21  what Mr. Lipps is testifying about.

22          With that said, for the reasons I've just explained,

23  the motion in limine to preclude the direct testimony of

24  Jeffrey A. Lipps dated July 31, 2013 is granted in part and

25  denied in part.  Lipps will not be permitted to testify as an

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    expert witness; but portions of his testimony, as will be

2    identified in a written order that will be entered immediately

3    after the hearing, will be admitted into evidence as fact

4    witness testimony.  Portions of his testimony as identified

5    paragraph number will be excluded from evidence for the reasons

6    I've given -- the expert portions.  And portions of the

7    testimony, as will be identified by paragraph number will not

8    be admitted into evidence, but will be considered by the Court

9    as part of the legal arguments of the debtors in support of

10   approval of the FGIC Rule 9019 settlement.

11          While I think that -- I mean, Mr. Lipps' direct

12   testimony much reads like a brief, and that's exactly how the

13   Court's going to treat it, and I believe it's appropriate to

14   treat it, so I will enter an order to that effect.  And I also

15   want to make clear that to the extent that the specific

16   paragraphs are not being admitted into evidence but will be

17   considered as legal argument, they will not be subject to

18   cross-examination at trial either.  The objectors having made

19   their motion, they now will be precluded from cross-examining

20   on those subjects.  Those will be -- those are essentially

21   legal arguments that more properly belonged in a brief.

22          But the written order will be entered.  It will

23   reflect each and every paragraph.  In some paragraphs, certain

24   sentences are carved out.  All right.

25          The motion to preclude the testimony of S.P. Kothari

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    is denied.  The investor parties, joined by Freddie Mac, argue

2    that Kothari's opinions are unreliable because he failed to

3    identify -- independently verify the method used to arrive at

4    the 253.3 million commutation payment amount, he failed to

5    conduct an independent analysis of the discount rate used by

6    Duff & Phelps, he failed to analyze FGIC's potential litigation

7    recoveries, his opinion about price declines and FGIC-wrapped

8    securities post-settlement agreement is an impermissible ipse

9    dixit conclusion, and he failed to verify the accuracy of the

10   underlying information he relied on.

11           The investor parties also argue that Kothari's opinion

12   is not relevant because he offers no opinion on whether the

13   settlement agreement is in the best interests of investors or

14   whether the trustees acted in good faith.

15           All of these arguments are reserved for cross-

16   examination.  They do not overcome the admissibility of

17   Kothari's expert testimony, and therefore the motion is denied.

18           With respect to the motion to preclude the testimony

19   of Allen Pfeiffer, the motion is denied.  The investor parties,

20   joined by Freddie Mac, seek to preclude the testimony of Allen

21   Pfeiffer.  The investor parties' only argument is that the FGIC

22   trustees have withheld work product documents of Pfeiffer's

23   including facts and data that Pfeiffer considered or generated

24   in formulating his opinion as well as materials concerning the

25   development, foundation, or basis of those opinions, whether

**RESIDENTIAL CAPITAL, LLC, ET AL.**

13

1    Pfeiffer considered them in formulating the opinions he

2    expressed or not.

3           Only Pfeiffer's primary work papers were produced, at

4    least initially.  Moreover, on the evening of August 6th, the

5    FGIC trustees informed the investor parties they would finally

6    produce the requested material the next day, several gigabytes

7    of data.  The investor parties argued that would give them

8    enough time to review the additional material.

9           It appears to the Court the FGIC trustees have now

10   produced all of the work papers Pfeiffer relied on in forming

11   his expert opinion in this case.  Accordingly, the motion is

12   denied.

13          All right.  The motion to preclude testimony on

14   reliance of counsel.  The motion is denied.  The investor

15   parties, joined by Freddie Mac, argue that the FGIC trustees

16   cannot produce any evidence at trial that they relied on

17   counsel in deciding to enter into the settlement with the

18   debtors and FGIC because they repeatedly withheld documents

19   that go to this point on the basis of attorney-client privilege

20   and instructed witnesses not to answer on the basis of

21   attorney-client privilege.

22          The investor parties point to the declarations made by

23   the FGIC trustees in the context of the hearing on approval of

24   the plan support agreement and quote several statements from

25   those declarations or depositions in which the declarant said

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  that he or she relied on the advice of counsel in deciding to

2  enter into the settlement.

3       In addition, while this motion focuses most of its

4  attention on the FGIC trustee's witnesses, the investor parties

5  also argue that the debtors relied on counsel -- on the advice

6  of Jeffrey Lipps, but refused to produce the documents

7  considered by Lipps in forming his opinion.

8       Moreover, the investor parties argue that the trustees

9  cannot prove that they acted reasonably and in good faith

10  because they sought guidance from their legal advisors before

11  approving the FGIC settlement agreement.

12       Second Circuit law is clear that a party may not

13  assert that it believed it acted in good faith and

14  simultaneously claim privilege to block inquiry into the

15  party's state of mind.  By insisting that the Court make the

16  requested findings, the FGIC trustees -- this is the argument

17  that's been made, not my conclusions.  Okay?  The investor

18  parties argue that the FGIC trustees have elected to put their

19  state of mind at issue and that that necessarily implicated the

20  substance of the counsel communications.

21       As the Court has already established in an earlier

22  preclusion opinion in this case, parties may introduce evidence

23  that they sought and received the advice of counsel, but they

24  cannot put forth evidence of the substance of that advice and

25  argue that they relied on it in entering into the settlement

**RESIDENTIAL CAPITAL, LLC, ET AL.**

15

1   without waiving the attorney-client privilege.

2           The Court concludes that the direct testimony and

3   declarations submitted by the settling parties do not divulge

4   the substance of those attorney-client communications nor do

5   they argue that they relied on advice of counsel in entering

6   into the settlement.  To the extent the parties put forth

7   reliance of counsel evidence at trial, any party can object on

8   that basis.  Accordingly, the motion in limine is denied.

9           All right.  The motion to preclude testimony of

10  reliance on mediation negotiations.  The motion is denied.

11          Similar to their objection to reliance on counsel

12  evidence coming in at trial, the investor parties, joined by

13  Freddie Mac, asked this Court to preclude any argument or

14  evidence at the settlement hearing concerning the mediation and

15  any testimony about the parties' conduct during those

16  negotiations.  The investor parties claim that they've been

17  blocked from learning about anything that was discussed,

18  exchanged, proposed, considered, or evaluated by any of the

19  parties to the mediation, including the negotiations that

20  eventually culminated in the FGIC settlement and the

21  commutation payment amount.

22          The investor parties specifically requested that the

23  Court preclude evidence in paragraphs 4, 6, 9 through 16, and

24  18 of the Dubel witness statement and exhibits referred to

25  therein; paragraphs 6 through 9 and 14 through 20 of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

16

1  Sohlberg declaration, and the exhibits referred to therein;

2  paragraphs 7 through 9, 12, 17 through 21, 23 through 24, of

3  the Major declaration, and the exhibits referred to therein;

4  paragraphs 5, 14 and 15, 25, 26, 28, 35 through 39, 41, 42 and

5  57 through 59 of the Kruger direct testimony, and the exhibits

6  referred to therein.

7  The parties to the FGIC settlement did not make a

8  voluntary decision to protect from discovery their confidential

9  negotiations during the mediation overseen by Judge Peck.  The

10  mediation order, which is at ECF 2519, eliminated any choice in

11  the matter by strictly prohibiting the parties from divulging

12  any "discussions among any of the mediation parties"; "any

13  mediation statements and any other documents or information

14  provided to the mediator or the mediation parties in the course

15  of the mediation"; or any "correspondence, draft resolutions,

16  offers, and counter-offers produced for or as a result of the

17  mediation."  See mediation order at paragraph 4.

18  General Order M-390 imposes a similar prohibition.

19  "Any statements made by the mediator, by the parties, or by

20  others during the mediation process shall not be divulged by

21  any of the participants in the mediation (or their agents) or

22  by the mediator to the Court or to any third party."  That's

23  General Order M-390, section 5.1.

24  Moreover, the evidence concerning the mediation

25  process, that is, the general nature and characteristics of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   mediation, is admissible.  The parties are not attempting to

2   introduce evidence of any of the oral or written communications

3   made in the course of the mediation.  Accordingly, the Court

4   denies the motion.

5          Freddie Mac's motion to preclude testimony of Ron

6   D'Vari is denied.  In addition to joining in the in limine

7   motions filed by the investor parties, Freddie Mac seeks to

8   preclude certain aspects of the testimony of Ron D'Vari.

9   D'Vari's firm was a consultant and advisor to FGIC until late

10   2011.  The firm was hired to run stress loss analysis, which

11   formed the basis of the FGIC rehabilitation plan term sheet

12   that FGIC and the steering committee in the rehabilitation

13   proceeding, of which Freddie Mac was an adjunct member,

14   submitted to the New York Department of Financial Services.

15   The term sheet formed the basis of FGIC's rehabilitation plan.

16          Sometime after the filing of the rehabilitation plan,

17   NewOak commenced providing services to the debtor, analyzing

18   the same ResCap trusts.  Freddie Mac's main argument in its

19   motion is that D'Vari has changed his expert testimony and

20   should not be allowed to do so.  Specifically, D'Vari, one of

21   the debtors' expert witnesses, submitted a declaration on June

22   11th, 2013 in which he opined that he believed "a conservative

23   estimate of the aggregate amount of the claims" -- I'll put

24   this in brackets -- [related to collateral losses] -- "released

25   by the FGIC trustees, under the settlement agreement, is

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1    5,001,609,304 dollars."

2          However, in D'Vari's direct testimony, D'Vari said

3    that the figure I just gave, "does not reflect an analysis of

4    the potential losses to wrapped bonds," which they argue

5    contradicts his declaration, and is not adequately addressed in

6    his direct testimony, according -- that's according to Freddie

7    Mac.  Therefore, Freddie Mac asked that the Court preclude

8    D'Vari's statement regarding the five-billion-plus figure.

9          To the extent Freddie Mac is objecting to D'Vari on

10   the basis that he cannot be an objective witness, the Court

11   denies the motions for the reasons that I will outline shortly

12   when ruling on the JSN's in limine motion.  In addition,

13   Freddie Mac's motion concerning shifts in D'Vari's testimony

14   should be reserved for cross-examination and do not overcome

15   the admissibility of D'Vari's expert witness testimony.

16   Accordingly the motion is denied.  All right.

17          With respect to the Junior Secured Noteholders'

18   preclusion motion, it's granted in part and denied in part.

19   The JSN -- it's granted with respect to the Lipps testimony

20   that I've already ruled.

21          The JSNs argue in the motion that the debtors and FGIC

22   should be precluded from offering evidence regarding the basis

23   of their business judgment in the merits of the settlement

24   agreement, and the debtors should be precluded from offering

25   the testimony of D'Vari and Lipps because they are both,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**19**

1  according to the JSNs, conflicted.  D'Vari because he was

2  retained by FGIC with respect to the same trust to which he

3  seeks to give expert testimony; and Lipps was retained by the

4  debtors on the same issues to which he seeks to give expert

5  testimony.

6        As to the first argument, the JSNs essentially argue

7  that this evidence should be precluded because the debtors did

8  not produce a single substantive e-mail, letter, presentation,

9  spreadsheet, term sheet, or draft agreement relating to the

10  settlement agreement.  Moreover, during the deposition of the

11  debtors' CRO, Mr. Kruger, the JSNs argue that debtors' counsel

12  prohibited inquiry into the substance of the mediation and

13  settlement agreement communications.

14        They make the same argument with respect to FGIC's

15  CEO, John Dubel, in that his -- they argue his testimony was

16  restricted by his counsel's instruction not to answer questions

17  about the substance of the mediation or the FGIC settlement on

18  the grounds of attorney-client communication and mediation

19  privilege.  The JSNs argue that portions of these individuals'

20  direct testimony should be precluded.  See the JSNs' motion in

21  limine, Exhibits A and B.

22        As to the second argument the debtors have offered Ron

23  D'Vari as an expert witness with respect to the lifetime

24  expected collateral losses of certain residential mortgage-

25  backed securities issued by those trusts which are not insured

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1    by FGIC, this is the very same subject matter of a detailed

2    analysis that D'Vari apparently performed for FGIC in 2011;

3    this according to the JSNs.  Similarly, the Lipps testimony is

4    offered as to the potential costs and delays of litigating with

5    FGIC and the FGIC-insured trusts.  But they argue, this is the

6    exact same subject area on which Lipps has previously provided

7    legal advice to the debtors as their retained Section 327(e)

8    counsel.

9          The Court denies the JSN motion as to the testimony of

10   Kruger and Dubel for the reasons outlined above.  The Court

11   rejects the JSNs argument that D'Vari lacks objectivity to be

12   an expert.  As FGIC's counsel highlighted in its letter to the

13   objecting parties dated July 29, 2013, see Freddie Mac's D'Vari

14   in limine motion Exhibit D, Dr. D'Vari, as an expert witness,

15   has testified that he did not consider, rely on, or use these

16   materials in preparing his expert opinion set forth in his

17   declaration in support of the pending Rule 9109 motion.  Dr.

18   D'Vari testified that he did not consider or use any of this

19   work on the prior FGIC engagement informing his opinions.  He

20   also testified that none of his staff at NewOak who worked on

21   the D'Vari expert declaration also worked on the prior FGIC

22   engagement.  See D'Vari deposition transcript page 132 line 24

23   through 133 line 5; page 136 line 10 through 138 line 22; page

24   129 lines 6 through 22.

25          Accordingly the JSNs' in limine motion is denied as to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1    the testimony of Ron D'Vari.  As to the testimony of Mr. Lipps,

2    the motion is granted in part, denied in part, to the extent

3    I've already described.

4           Mr. Sidman, let me just ask now.  You resolved the

5    issue as to Gibson, is that --

6           MR. SIDMAN:  Yes, Your Honor.

7           THE COURT:  What about -- is Goldstein still

8    outstanding?

9           MR. SIDMAN:  Goldstein is still outstanding, Your

10   Honor.

11          THE COURT:  Okay.  All right.  Thank you.  All right.

12          The Court has already been advised that the issues

13   with respect to the testimony of Scott Gibson have been

14   resolved and therefore the Court won't rule on it.

15          FGIC seeks to preclude the expert testimony of Charles

16   Goldstein, the investors' expert.  Goldstein essentially

17   testifies that if the settlement is approved, investors in the

18   FGIC insured trusts, including Freddie Mac and the investor

19   parties, will receive a lower economic recovery than they

20   otherwise might under the FGIC rehabilitation plan, and that

21   for this reason, the settlement agreement is not in the best

22   interests of investors in the FGIC insured trusts.

23          However, according to FGIC, the Goldstein opinion

24   wrongly assumes that FGIC publicly identified one billion in

25   expected litigation recoveries when FGIC actually never

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1    indicated any such expectation or projection.

2         Goldstein states in his opinion that he got this

3    figure from FGIC's March 31, 2013 quarterly statement.  However

4    FGIC argues that in fact, the one-billion-dollar figure relates

5    not to loss mitigation activities, but to reimbursement

6    recoveries that FGIC estimated it would receive through the

7    waterfall provisions under the governing documents of the

8    various trusts insured by FGIC, from funds available from

9    projected collateral cash flows, and projected payments from

10   other providers of credit enhancement in the subject

11   transactions.  Under the terms of the settlement agreement,

12   these substantial potential reimbursement recoveries, otherwise

13   payable to FGIC, will instead be payable to the FGIC-insured

14   trusts.

15        Goldstein -- it is argued that Goldstein completely

16   ignores the fact that the settlement agreement assigns FGIC's

17   right to these reimbursement recoveries to the investors.  He

18   assumes that FGIC will retain these recoveries.  See FGIC

19   opinion paragraph 27:  "It is my understanding that FGIC may

20   receive significant reimbursements from projected cash flows

21   from the mortgage loans underlying the securities on which it

22   has paid."

23        In addition, FGIC further moves to preclude -- is the

24   Messer issue still open?

25        UNIDENTIFIED SPEAKER:  Your Honor, that was resolved.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1          THE COURT:  That's resolved.

2          UNIDENTIFIED SPEAKER:  That was resolved by --

3          THE COURT:  All right.

4          With respect to the Goldstein, the Court concludes

5    that all of the arguments should be reserved for cross-

6    examination and do not overcome Goldstein's admissibility as an

7    expert witness.

8          What about the issue about Holtzer?

9          MR. SIDMAN:  Your Honor, that has not been resolved at

10   this point.

11         THE COURT:  All right.  With respect to Mr. Holtzer

12   being listed as an adverse witness, the Court will not preclude

13   the possible calling of Holtzer as an adverse witness.  FGIC's

14   counsel can object to any questions that Holtzer is asked if he

15   is called as a witness.

16         So therefore, the motion in limine with respect to

17   Goldstein and Holtzer is denied without prejudice.  I think

18   that resolves all of the motions in limine.

19         As I say, a separate order will be entered with

20   respect to the Lipps testimony, because it's a very long list

21   of paragraphs.  So I'll deal with it there.

22         All right.  Can somebody fill me in on the status of

23   the state court rehabilitation proceeding?

24         MR. KERR:  It's not me, Your Honor.

25         THE COURT:  Mr. Slack?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1      MR. SLACK:  Good afternoon, Your Honor.  Richard Slack

2  from Weil, counsel for the rehabilitator of FIGC.  The hearing

3  in the state court did take place on the 6th.  It was not an

4  evidentiary hearing by ruling of the court.  There was oral

5  argument.  The parties were heard.  And the court took the

6  matter under advisement and it has not ruled yet.

7      THE COURT:  Did Justice Ling-Cohan give any indication

8  of when she was likely to rule?

9      MR. SLACK:  She did not.

10      THE COURT:  Okay.  Thank you, Mr. Slack.

11      All right.  The next issue I want to raise is the

12  deadline for approval of the FGIC settlement.  As I understand

13  it, it currently is August 19.  Am I correct in that?

14      MR. KERR:  I think that's --

15      THE COURT:  All right.  It's going to have to be

16  extended.  And the Court -- so you better work on it now.  I

17  gather you need consent of parties, so you may blow the whole

18  thing up if you can't get the consent of the necessary parties.

19  The Court requests that you get an extension of that deadline

20  to September 16th, 2013.

21      It's the Court's hope to rule before then.  But I want

22  to be sure that I've -- I've got a room full of exhibits,

23  transcripts, testimony.  I plan to consider -- I was away on

24  vacation, wound up reading more motions in limine and things

25  than either I or my wife wished would happen.  Fortunately I

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  was able to do that on my iPad, so it was e-mailed to me.  But

2  there is a roomful of stuff inside.  And I consider the issues

3  as serious issues and I plan to listen to the evidence at the

4  hearing and review the exhibits, deposition designations,

5  listen to the testimony.  It's unrealistic to think that I'm

6  going to rule from the bench on Monday, August 19th.  As I say,

7  advise me during the hearing whether the parties consent.  If

8  they don't we may just call it off.

9        Okay.  Next item on my agenda is the treatment of

10  confidential information during the trial.  I conduct public

11  trials.  Any pleading that you wish me to consider in ruling,

12  any trial exhibits, deposition designations, must be unsealed.

13  If they're previously filed -- and I want to be clear about

14  filed -- if they're previously -- so it doesn't mean that

15  everything that's been filed in connection with this FGIC

16  settlement has to be unsealed.  But anything that you're asking

17  me to consider, if there's a brief in support or opposition to

18  approval of the settlement, if it's been filed in redacted

19  form, you have until 4 p.m. tomorrow to file it in unredacted

20  form.

21        Trial exhibits are not filed, but all trial exhibits

22  need to be presented to the Court in unredacted form.

23  Testimony will, at some point, go on ECF and deposition

24  designations do need to be filed.  That's testimony.  They need

25  to be filed in unredacted form.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

26

1          So I am ordering the unsealing of any evidence or

2    arguments that will be offered in support of or in opposition

3    to approval of the 9019 settlement.  In reaching that

4    conclusion, I've been reviewing unredacted -- I mean, we've

5    been -- where we didn't have them, my clerks have been asking

6    to have you forward things in unredacted form.  I've been

7    reviewing them in unredacted form.  And I expect when I rule,

8    there will be references to evidence in unredacted form that

9    will be part of the public record.  So that's the Court's

10   ruling with respect to this will be a public trial.

11          Let me ask, are there any remaining issues concerning

12   deposition designations and counter-designations?  I had the

13   McKool Smith letter raising the issue.  Where do we stand?

14          MR. KERR:  Your Honor, this is Charles Kerr of

15   Morrison & Foerster on behalf of the debtors.  Let me just

16   bring you up to date.  There was a meet-and-confer this

17   afternoon addressing deposition designations.  I think there's

18   still some open issues on them.  And so I'm not sure we've come

19   to consensus on that at all.  But we will keep working on that.

20          I would like to just raise one thing that was raised

21   in the call today, and it may be moot in light of what Your

22   Honor just said.  But the question of whether deposition

23   designations are appropriate in light of witnesses who are

24   actually going to come forward and testify, it's hard to do

25   redirect without knowing what's in the deposition designations

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1    versus what's being testified live.  We're on a timed trial.

2    And so it's -- it seems to be that it's not consistent with

3    those requirements that there be deposition designations.

4              THE COURT:  Well, the Federal Rules of Civil Procedure

5    indicate when depositions may be used.  That's the rule I

6    follow.  Okay?  So if it's of an adverse party, it's

7    admissible -- deposition testimony is admissible.  So follow

8    the Federal Rules of Civil Procedure.

9              It is a timed trial.  And to the extent you all

10   feel -- I mean, so one of two things happens frequently with

11   deposition designations.  If the parties can't agree on broad

12   use of deposition designations, if they insist on adhering to

13   what the Rules of Civil Procedure permit -- so if somebody

14   offers a deposition designation and I get an objection that

15   it's hearsay, that it doesn't come within the rules, I'll

16   consider it and rule on it appropriately.

17             So frequently what happens is, particularly with a

18   timed trial, the parties confer and they agree, will agree that

19   the deposition designations can be used, whether it's of an

20   adverse witness or not.  There's still -- the witness still has

21   to be available for in-court testimony if somebody wishes to

22   cross-examine -- I'm not going to allow -- if a party offers a

23   deposition designation, I'm not going to let you repeat the

24   precise same testimony again.  I only want to hear it once,

25   either by deposition or live.  I don't know if that answers

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1    your question, Mr. Kerr.

2            MR. KERR:  Well, one question I have, Your Honor, just

3    in terms of your procedure; to the extent that a party is going

4    to be offering deposition designations, would it be the Court's

5    expectation that it be read in?

6            THE COURT:  No.

7            MR. KERR:  No.  Okay.

8            THE COURT:  No, no, no, no, no, no.

9            MR. KERR:  Okay.  And so to the extent --

10           THE COURT:  No, so you got -- you all have limited

11   time.  And I will spare you -- spare everybody in the courtroom

12   having to sit through the reading of deposition testimony.

13   That's why they ought to -- the transcripts, if there are

14   designations and counter-designations, you ought to be color

15   coded.  And provide me with the transcripts and I will read

16   them when you're not all sitting there.

17           MR. KERR:  One final question, Your Honor.  To the

18   extent there is a question or objection to a designation under

19   Rule 32(a), because it's not of a party -- a party's designee;

20   for example, some of the experts are not party designees under

21   that rule, should we -- how should we raise it?  Should we

22   raise it at the time it's offered or --

23           THE COURT:  Yes.

24           MR. KERR:  Okay.

25           THE COURT:  You haven't been able to work this issue

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    out?

2            MR. KERR:  Well, we're still working on it, Your

3    Honor.  And we will commit to keep working on it.

4            THE COURT:  Okay.  Look, it's a bench trial.  Whether

5    you think -- if somebody really wants to spend their time

6    cross-examining a witness on the witness stand because they

7    think they're going to score points, fine, let them do it.  But

8    it's a bench trial.  I'll read the deposition transcripts.  But

9    I'll follow -- I will apply the rules as set forth in the Rules

10   of Civil Procedure with respect to deposition transcripts,

11   unless you all agree to a different result, which usually

12   happens.  Okay?

13           MR. KERR:  Your Honor, let me raise one other thing.

14           THE COURT:  Go ahead.

15           MR. KERR:  The parties have -- obviously have

16   identified trial exhibits.  We have just, I think, today

17   exchanged some objections to those.  We're still working on

18   those.  We hope -- my hope is that we can resolve those.  To

19   the extent we cannot, we'll bring them to Your Honor when the

20   objection's being offered.

21           THE COURT:  That's all right.

22           MR. KERR:  But we hope to resolve all that.

23           THE COURT:  And let me make clear.  With respect to

24   objections, I don't like speaking objections during trial.  You

25   can state short legal objection.  And if it's testimony I

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1  usually will rule promptly.  If I want to hear an explanation

2  I'll ask for it.  So I don't like speaking objections.  If

3  there's an objection to an exhibit, you'll tell me briefly,

4  very briefly, what it is.  Okay?

5          MR. KERR:  Good.  Thank you, Your Honor.

6          THE COURT:  All right.  Okay.  All right.

7          MR. KERR:  Your Honor, one other --

8          THE COURT:  Go ahead, Mr. Kerr.

9          MR. KERR:  -- thing.  We have advised the other side

10  about the order of witnesses that we are going to call.  I'm

11  expecting to get from the other side their order of witnesses.

12  We can provide that to the Court if --

13          THE COURT:  I don't care to know, unless -- what I

14  wanted -- the reason I put that in this last order is I want

15  this to go as smoothly as possible.  There's a lot of lawyers

16  involved.  Frequently -- I hope what will happen is that

17  somebody's going to take primary responsibility for cross-

18  examination of a witness.  I'm not going to have repe -- I

19  won't permit -- let me just tell you right now, I will not

20  permit repetitive cross-examination, even though you represent

21  different parties.

22          So what I usually expect is going to happen, and I

23  think it's most effective for all of you, is if you agree who's

24  going to take the lead, yes you may have some separate

25  questions that affect your client, I understand you want to do

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1    that.  And there are a lot of lawyers involved, and they ought

2    to -- it works for everybody's advantage to know who the next

3    witness is, so you know I'm going to be up for cross -- cross-

4    examining that you're prepared.  That's my goal.  Okay?

5         I'm willing -- if you discuss if there are issues

6    about taking witnesses out of order, if the parties agree --

7    they usually do -- I usually will hear them out of order, if

8    there's some scheduling issue.  But you all ought to know what

9    order the witnesses are going to be in and hopefully you're

10   each figuring out who's going to take the lead in cross-

11   examining.  I don't know if that helps you, Mr. Kerr?

12        MR. KERR:  It does, Your Honor.  Thank you.

13        THE COURT:  Okay.  All right.  Let me talk a little

14   bit about the treatment of the timed trial.  I know my clerks

15   have gotten some questions about this.  You should keep track

16   of your own time.  I've indicated there's six hours allocated

17   to each side.  Use it as you wish.  At each break, my clerks

18   will typically confer with you and tell you what they believe

19   you've used.  If you disagree, tell them.  And I'm usually

20   keeping track of it as well.

21        So during -- what I usually try to do is, we're going

22   to start at 9.  We'll take a fifteen-minute recess at some

23   point that seems convenient about halfway through the morning.

24   What I hope to do is get three hour hours of testimony in the

25   morning and three hours in the afternoon.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1        Because of sequestration, we stop at 5 o'clock.  If

2    you've got one or two questions that you need to finish, finish

3    them.  But because of sequestration, we stop at 5.

4        Let me ask -- I've read all the briefs.  I've been

5    reading the testimony.  I can't say I've read every exhibit.

6    They -- I didn't have those while I was away.  I came back and

7    they're here.  Are counsel intending to make opening

8    statements?  You don't need to.  Let me put it this way.  I've

9    read all the briefs.  You may want to save your time and have

10   some time at the end.  What's your pleasure, Mr. Kerr?

11       MR. KERR:  Your Honor, it was my intention, but I'll

12   only do it if it's helpful to the Court, just to do a very

13   brief, kind of just --

14       THE COURT:  That's fine.

15       MR. KERR:  -- picture.  But it'll be very brief.

16       THE COURT:  I'm not going to preclude them.  Just if

17   you want to do that, that's fine.  Anybody else want to

18   indicate what you're going to do?  Objectors?  What do they --

19       UNIDENTIFIED SPEAKER:  We were planning on doing very

20   brief --

21       THE COURT:  Okay.

22       UNIDENTIFIED SPEAKER:  -- opening statements, Your

23   Honor.

24       THE COURT:  That's fine.

25       UNIDENTIFIED SPEAKER:  Same here, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

33

1          THE COURT:  Okay.  All right.  One surprise for you

2    all.  As I look at the mountain of evidence that I see in my

3    chambers, I'm going to require preparation of proposed findings

4    of fact and conclusions of law.  And I'm going to set a

5    deadline for simultaneous submission of them of 10 a.m. August

6    26th, 2013.  Somebody better order daily if you want.  So I

7    want simultaneous filings.  Provide the Court with an

8    electronic copy in Word format on CD or flash drive.

9          So you can have your minions trying to keep track of

10   the evidence as it's coming in.  I'm just -- I've read a lot.

11   There's a lot more that I still have to look at and will look

12   at.  We're on an expedited schedule.  And setting that August

13   26th date, I set that before I set the September 16th date as

14   the deadline for -- that I want extended for decision on this

15   issue.

16         Let me open the floor.  Are there issues that you all

17   want to raise?  Mr. Kerr, anything you wanted to raise?

18         MR. KERR:  Yeah, Your Honor.  Just one issue in terms

19   of scheduling of witnesses.  I just want to make the Court

20   aware of this.  In the -- we had sent over an order of our

21   witnesses.  One of the witness, or the trustee's witnesses, Mr.

22   Major, as I understand it, by regulation, he cannot work on

23   Friday.  There's a federal regulation that prevents him to do

24   that, because he's a banking officer.  We have said he -- he

25   has to appear on Monday.  I -- so I just -- that may be a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  witness that may --

2        THE COURT:  That's one of the -- I'm willing to take

3  witnesses out of order.  I mean -- are we going to have

4  objections from the opponents of the settlement to having Mr.

5  Major testify out of order?

6        UNIDENTIFIED SPEAKER:  No, Your Honor.  We don't stand

7  in the way of federal rules.

8        MR. KERR:  Even I was surprised by that, Your Honor.

9  I was --

10        THE COURT:  I'm not surprised at anything.

11        MR. KERR:  That's it, Your Honor.

12        THE COURT:  Okay.  Anything that anybody else wants to

13  raise?

14        I think -- I was told by the IT people that somebody's

15  been here trying to set up their technology in the courtroom.

16  We do have some technology in the courtroom.  Any exhibits --

17  and they -- who's using that?  Everybody?  Nobody?  Ms. Eaton?

18        MS. EATON:  We may use it, Your Honor.

19        THE COURT:  Okay.  So I know, because they came to see

20  me to ask about -- did I want another monitor on here, and I

21  said no, because I'm able -- any exhibit that you display by

22  computer or the overhead camera that's there, gets displayed on

23  my monitor, the monitor on the witness stand, and there's a

24  large screen monitor in the back of the courtroom.

25        I will also have lots of documents out here.  So in

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1   addition to wanting to see it on the screen, I do want you to

2   identify the exhibit by number.  I hope I have been clear.

3   Everything needs to be pre-marked.  We don't have a reporter

4   who can mark anything.

5          So you're welcome to use a computer.  If you want to

6   use PowerPoint in openings or closings or anything like that,

7   be my guest.  If you want to display exhibits for the witness,

8   I will see it at the same time on my screen.

9          Anybody have any logistic quest -- so the courthouse

10  opens at 8:30.  That's when you can get in the door downstairs.

11  So it gives you a half hour to -- you're welcome to bring

12  things tomorrow, if you want.  I have a calendar -- the

13  calendar ends at 3 o'clock tomorrow.  So or you can arrange for

14  somebody to come in lunchtime.  If there are things you want to

15  bring in tomorrow, because the half hour before the court

16  opens, feel free to do it.

17         Let's not try and create a firetrap in doing it.  The

18  courtroom is locked at night, so whatever is in here should be

19  safe.  But I can't -- obviously, can't guarantee all of that,

20  but we do keep the courtroom locked.

21         MR. KERR:  Your Honor, if I -- this is Charles Kerr

22  again.  If I can ask one other question.  Just a logistical

23  question and ease.  It was our intention in putting on a

24  witness we would offer his direct, offer in -- like Mr.

25  Kruger -- offer in the exhibits that are referred to in his

**RESIDENTIAL CAPITAL, LLC, ET AL.**

36

1    direct, and then assuming they're in or whether they are not, I

2    was intending to have a binder of that material provided to Mr.

3    Kruger, to yourself, and the other counsel here, so he can

4    refer to that during the course of his cross-examination and

5    redirect, if that's okay.

6         THE COURT:  That's absolutely appropriate.  And if, in

7    cross, you have any additional exhibits you want -- I've asked

8    if -- unless you think you've got some surprise smoking gun

9    that you want to spring on a witness, which I haven't seen

10    happen yet, but if you do, I'd like all the exhibits put in

11    front of the witness at the start, and in front of me, so it's

12    easy to find.  I already made clear that you don't have to ask

13    for permission to approach the witness.  That sort of thing.

14         MR. KERR:  Thank you, Your Honor.

15         THE COURT:  Okay.  Anybody else have any other

16    logistics?  We'll see you all Friday morning.  We're adjourned.

17         (Whereupon these proceedings were concluded at 4:47 PM)

18

19

20

21

22

23

24

25

37

1

2                              **I N D E X**

3

4                                RULINGS

5                                               Page      Line

6   Motion in limine to preclude testimony of        9         23

7   Jeffrey Lipps is granted in part and denied

8   in part

9   Motion in limine to preclude the testimony of 11      26

10  S.P. Kothari is denied

11  Motion in limine to preclude testimony of       12        18

12  Allen Pfeiffer is denied.

13  Motion in limine to preclude testimony on       13        13

14  reliance of counsel is denied.

15  Motion in limine to preclude testimony of       15        10

16  reliance on mediation negotiations is denied.

17  Freddie Mac's motion to preclude testimony of 17         6

18  Ron D'Vari is denied

19  The JSN's preclusion motion is granted in       18        18

20  part regarding Lipps and denied in part.

21  FGIC's motion to preclude the expert            23         4

22  testimony of Charles Goldstein is denied

23  Motion in limine with respect to Goldstein      23        16

24  and Holtzer is denied without prejudice

25

38

RULINGS

|  | Page | Line |
|---|---|---|
| All evidence or arguments must be presented | 26 | 1 |

in unredacted form and unsealed by 4 p.m.

August 15.

39

1

2                                C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10

_____

11

PENINA WOLICKI

12

AAERT Certified Electronic Transcriber CET**D 569

13

14

eScribers

15

700 West 192nd Street, Suite #607

16

New York, NY 10040

17

18

Date:  August 15, 2013

19

20

21

22

23

24

25

## [

**[related (1)**
17:24

## A

**able (3)**
25:1;28:25;34:21
**above (1)**
20:10
**absolutely (1)**
36:6
**according (5)**
18:6,6;19:1;20:3;
21:23
**Accordingly (5)**
13:11;15:8;17:3;
18:16;20:25
**accuracy (1)**
12:9
**acted (3)**
12:14;14:9,13
**activities (1)**
22:5
**actually (2)**
21:25;26:24
**Ad (1)**
4:2
**addition (5)**
14:3;17:6;18:12;
22:23;35:1
**additional (2)**
13:8;36:7
**Additionally (1)**
10:13
**addressed (1)**
18:5
**addressing (1)**
26:17
**adequately (1)**
18:5
**adhering (1)**
27:12
**adjourned (1)**
36:16
**adjunct (1)**
17:13
**admissibility (3)**
12:16;18:15;23:6
**admissible (3)**
17:1;27:7,7
**admitted (3)**
11:3,8,16
**advantage (1)**
31:2
**adverse (4)**
23:12,13;27:6,20
**advice (9)**
10:1,4,11;14:1,5,
23,24;15:5;20:7
**advise (1)**

**25:7**
**advised (2)**
21:12;30:9
**advisement (1)**
24:6
**advisor (1)**
17:9
**advisors (1)**
14:10
**affect (1)**
30:25
**afternoon (3)**
24:1;26:17;31:25
**again (2)**
27:24;35:22
**agenda (2)**
8:7;25:9
**agents (1)**
16:21
**aggregate (1)**
17:23
**agree (7)**
9:12;27:11,18,18;
29:11;30:23;31:6
**agreement (14)**
8:21;9:8;12:8,13;
13:24;14:11;17:25;
18:24;19:9,10,13;
21:21;22:11,16
**ahead (3)**
9:2;29:14;30:8
**Allen (2)**
12:19,20
**allocated (1)**
31:16
**allow (1)**
27:22
**allowed (1)**
17:20
**ALSTON (1)**
4:20
**Americas (2)**
4:3;5:13
**among (1)**
16:12
**amount (3)**
12:4;15:21;17:23
**analysis (4)**
12:5;17:10;18:3;
20:2
**analyze (1)**
12:6
**analyzing (1)**
17:17
**Angeles (1)**
7:14
**ANN (1)**
6:8
**apparently (1)**
20:2
**appear (1)**
33:25
**appears (1)**

**13:9**
**apply (1)**
29:9
**approach (1)**
36:13
**appropriate (4)**
10:16;11:13;26:23;
36:6
**appropriately (1)**
27:16
**approval (5)**
11:10;13:23;24:12;
25:18;26:3
**approved (1)**
21:17
**approving (1)**
14:11
**April (1)**
10:8
**area (1)**
20:6
**argue (15)**
12:1,11;13:15;
14:5,8,18,25;15:5;
18:4,21;19:6,11,15,
19;20:5
**argued (2)**
13:7;22:15
**argues (2)**
10:17;22:4
**argument (10)**
11:17;12:21;14:16;
15:13;17:18;19:6,14,
22;20:11;24:5
**arguments (5)**
11:9,21;12:15;
23:5;26:2
**arrange (1)**
35:13
**arrive (1)**
12:3
**aspects (1)**
17:8
**assert (1)**
14:13
**assigns (1)**
22:16
**assumes (2)**
21:24;22:18
**assuming (1)**
36:1
**Atlanta (1)**
4:23
**attempting (1)**
17:1
**attention (1)**
14:4
**attorney-client (5)**
13:19,21;15:1,4;
19:18
**Attorneys (10)**
4:2,11,21;5:3,12,
21;6:3,13;7:3,11

**August (5)**
13:4;24:13;25:6;
33:5,12
**available (2)**
22:8;27:21
**Avenue (5)**
4:3;5:13;6:14;7:4,
12
**aware (2)**
8:9;33:20
**away (2)**
24:23;32:6

## B

**back (2)**
32:6;34:24
**backed (1)**
19:25
**BAIO (1)**
6:17
**BAKER (1)**
6:8
**Bank (3)**
4:21;5:3,12
**banking (1)**
33:24
**basis (9)**
10:2;12:25;13:19,
20;15:8;17:11,15;
18:10,22
**Battery (1)**
5:4
**Bayview (1)**
6:13
**behalf (1)**
26:15
**belonged (1)**
11:21
**bench (3)**
25:6;29:4,8
**BENNETT (1)**
4:17
**Berkshire (1)**
7:11
**best (2)**
12:13;21:21
**better (2)**
24:16;33:6
**billion (1)**
21:24
**binder (1)**
36:2
**BIRD (1)**
4:20
**bit (1)**
31:14
**block (1)**
14:14
**blocked (1)**
15:17
**blow (1)**
24:17

**bonds (1)**
18:4
**both (1)**
18:25
**brackets (1)**
17:24
**break (1)**
31:17
**brief (6)**
11:12,21;25:17;
32:13,15,20
**briefly (2)**
30:3,4
**briefs (2)**
32:4,9
**bring (3)**
26:16;29:19;35:11,
15
**broad (1)**
27:11
**Bryant (1)**
6:4
**business (1)**
18:23

## C

**CA (1)**
7:14
**calendar (2)**
35:12,13
**call (4)**
9:13;25:8;26:21;
30:10
**called (1)**
23:15
**calling (1)**
23:13
**came (2)**
32:6;34:19
**camera (1)**
34:22
**can (14)**
8:9;15:7;23:14,22;
27:19;29:18,25;
30:12;33:9;35:4,10,
13,22;36:3
**Capital (1)**
8:3
**care (1)**
30:13
**CARNEY (2)**
6:9;9:15
**carved (1)**
11:24
**CASE (3)**
4:1;13:11;14:22
**cases (1)**
10:12
**cash (2)**
22:9,20
**CD (1)**
33:8

**CEO (1)**
19:15
**certain (3)**
11:23;17:8;19:24
**chambers (1)**
33:3
**changed (1)**
17:19
**characteristics (1)**
16:25
**Charles (3)**
21:15;26:14;35:21
**choice (1)**
16:10
**CHRISTOPHER (1)**
4:6
**Circuit (1)**
14:12
**Civil (4)**
27:4,8,13;29:10
**claim (2)**
14:14;15:16
**claims (2)**
10:20;17:23
**clear (7)**
10:1;11:15;14:12;
25:13;29:23;35:2;
36:12
**clerks (3)**
26:5;31:14,17
**client (1)**
30:25
**closings (1)**
35:6
**coded (1)**
28:15
**collateral (3)**
17:24;19:24;22:9
**color (1)**
28:14
**coming (2)**
15:12;33:10
**commenced (1)**
17:17
**commit (1)**
29:3
**committee (1)**
17:12
**committee's (1)**
10:9
**communication (1)**
19:18
**communications (4)**
14:20;15:4;17:2;
19:13
**commutation (2)**
12:4;15:21
**completely (1)**
22:15
**complicated (2)**
8:13;9:22
**computer (2)**
34:22;35:5

**concerning (5)**
12:24;15:14;16:24;
18:13;26:11
**concluded (1)**
36:17
**concludes (3)**
10:7;15:2;23:4
**conclusion (2)**
12:9;26:4
**conclusions (2)**
14:17;33:4
**conduct (3)**
12:5;15:15;25:10
**confer (4)**
8:20,23;27:18;
31:18
**conference (1)**
9:3
**confidential (2)**
16:8;25:10
**conflicted (1)**
19:1
**connection (1)**
25:15
**consensus (1)**
26:19
**consent (3)**
24:17,18;25:7
**conservative (1)**
17:22
**consider (7)**
20:15,18;24:23;
25:2,11,17;27:16
**considered (6)**
11:8,17;12:23;
13:1;14:7;15:18
**consistent (1)**
27:2
**consultant (1)**
17:9
**context (1)**
13:23
**contradicts (1)**
18:5
**convenient (1)**
31:23
**copy (1)**
33:8
**correspondence (1)**
16:15
**costs (1)**
20:4
**counsel (17)**
9:8;13:14,17;14:1,
5,20,23;15:5,7,11;
19:11;20:8,12;23:14;
24:2;32:7;36:3
**counsel's (1)**
19:16
**counter- (1)**
8:24
**counter-designations (2)**
26:12;28:14

**counter-offers (1)**
16:16
**course (3)**
16:14;17:3;36:4
**COURT (73)**
8:2,23;9:2,4,11,17,
19;10:7,13,15;11:8;
13:9;14:15,21;15:2,
13,23;16:22;17:3;
18:7;10;20:9,10;21:7,
11,12,14;23:1,3,4,11,
12,23,25;24:3,4,5,7,
10,15,16,19;25:22;
27:4;28:6,8,10,23,25;
29:4,14,21,23;30:6,8,
12,13;31:13;32:12,
14,16,21,24;33:1,7,
19;34:2,10,12,19;
35:15;36:6,15
**courthouse (1)**
35:9
**courtroom (6)**
28:11;34:15,16,24;
35:18,20
**Court's (4)**
11:13;24:21;26:9;
28:4
**cover (1)**
8:6
**CQS (1)**
6:13
**create (1)**
35:17
**credit (1)**
22:10
**CRO (1)**
19:11
**cross (2)**
31:3;36:7
**cross- (5)**
12:15;23:5;30:17;
31:3,10
**cross-examination (4)**
11:18;18:14;30:20;
36:4
**cross-examine (1)**
27:22
**cross-examining (2)**
11:19;29:6
**culminated (1)**
15:20
**currently (1)**
24:13

**D**

**daily (1)**
33:6
**data (2)**
12:23;13:7
**date (3)**
26:16;33:13,13
**dated (2)**

10:24;20:13
**DAVID (1)**
5:25
**DAY (3)**
4:10;9:7;13:6
**deadline (4)**
24:12,19;33:5,14
**deal (2)**
9:20;23:21
**debtor (2)**
10:17;17:17
**debtors (12)**
10:4,12;11:9;
13:18;14:5;18:21,24;
19:4,7,22;20:7;26:15
**debtors' (3)**
17:21;19:11,11
**DECHERT (1)**
5:11
**deciding (2)**
13:17;14:1
**decision (3)**
10:2;16:8;33:14
**decisions (1)**
8:11
**declarant (1)**
13:25
**declaration (6)**
16:1,3;17:21;18:5;
20:17,21
**declarations (3)**
13:22,25;15:3
**declines (1)**
12:7
**defenses (1)**
10:20
**delays (1)**
20:4
**denied (15)**
9:23;10:25;12:1,
17,19;13:12,14;15:8,
10;17:6;18:16,18;
20:25;21:2;23:17
**denies (3)**
17:4;18:11;20:9
**Department (1)**
17:14
**deposition (22)**
8:24;19:10;20:22;
25:4,12,23;26:12,17,
22,25;27:3,7,11,12,
14,19,23,25;28:4,12;
29:8,10
**depositions (2)**
13:25;27:5
**described (1)**
21:3
**designation (3)**
27:14,23;28:18
**designations (15)**
8:24,25;25:4,12,
24;26:12,17,23,25;
27:3,11,12,19;28:4,

14
**designee (1)**
28:19
**designees (1)**
28:20
**detailed (1)**
20:1
**development (1)**
12:25
**different (2)**
29:11;30:21
**direct (11)**
10:14,15,23;11:11;
15:2;16:5;18:2,6;
19:20;35:24;36:1
**disagree (1)**
31:19
**discount (1)**
12:5
**discovery (1)**
16:8
**discuss (1)**
31:5
**discussed (1)**
15:17
**discussions (1)**
16:12
**display (2)**
34:21;35:7
**displayed (1)**
34:22
**divulge (1)**
15:3
**divulged (1)**
16:20
**divulging (1)**
16:11
**dixit (1)**
12:9
**documents (6)**
12:22;13:18;14:6;
16:13;22:7;34:25
**dollars (1)**
18:1
**door (1)**
35:10
**downstairs (1)**
35:10
**Dr (2)**
20:14,17
**draft (2)**
16:15;19:9
**drive (1)**
33:8
**Dubel (3)**
15:24;19:15;20:10
**Duff (1)**
12:6
**during (9)**
15:15;16:9,20;
19:10;25:7,10;29:24;
31:21;36:4
**D'Vari (17)**

12-12020-mg    Doc 4686    Filed 08/15/13    Entered 08/15/13 09:22:12    Main Document

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

Pg 42 of 48

August 14, 2013

17:6,8,19,20;18:2,
9,25;19:1,23;20:2,11,
13,14,18,21,22;21:1
**D'Vari's (5)**
17:9;18:2,8,13,15

# E

**earlier (2)**
10:8;14:21
**ease (1)**
35:23
**East (2)**
4:12;5:22
**easy (1)**
36:12
**EATON (3)**
6:18;34:17,18
**ECF (2)**
16:10;25:23
**economic (1)**
21:19
**effect (1)**
11:14
**effective (1)**
30:23
**either (3)**
11:18;24:25;27:25
**elected (1)**
14:18
**electronic (1)**
33:8
**eliminated (1)**
16:10
**else (3)**
32:17;34:12;36:15
**e-mail (1)**
19:8
**e-mailed (1)**
25:1
**EMMA (1)**
6:19
**end (1)**
32:10
**ends (1)**
35:13
**engagement (2)**
20:19,22
**enhancement (1)**
22:10
**enough (1)**
13:8
**enter (4)**
10:2;11:14;13:17;
14:2
**entered (5)**
8:5,13;11:2,22;
23:19
**entering (2)**
14:25;15:5
**ESPANA (1)**
5:17
**ESQ (18)**

4:6,7,15,16,17,25;
5:7,8,16,17,25;6:8,9,
17,18,19;7:7,16
**essentially (4)**
10:7;11:20;19:6;
21:16
**established (1)**
14:21
**estimate (1)**
17:23
**estimated (1)**
22:6
**evaluated (1)**
15:18
**even (2)**
30:20;34:8
**evening (1)**
13:4
**eventually (1)**
15:20
**everybody (2)**
28:11;34:17
**everybody's (1)**
31:2
**evidence (20)**
11:3,5,8,16;13:16;
14:22,24;15:7,12,14,
23;16:24;17:2;18:22;
19:7;25:3;26:1,8;
33:2,10
**evidentiary (1)**
24:4
**exact (1)**
20:6
**exactly (1)**
11:12
**examination (3)**
12:16;23:6;30:18
**examined (1)**
10:11
**examining (2)**
31:4,11
**example (1)**
28:20
**exchanged (2)**
15:18;29:17
**excluded (1)**
11:5
**Exhibit (5)**
20:14;30:3;32:5;
34:21;35:2
**exhibits (16)**
15:24;16:1,3,5;
19:21;24:22;25:4,12,
21,21;29:16;34:16;
35:7,25;36:7,10
**expect (2)**
26:7;30:22
**expectation (2)**
22:1;28:5
**expected (2)**
19:24;21:25
**expecting (1)**

30:11
**expedited (1)**
33:12
**expert (22)**
9:25,25;10:7,10,
16;11:1,6;12:17;
13:11;17:19,21;
18:15;19:3,4,23;
20:12,14,16,21;
21:15,16;23:7
**experts (1)**
28:20
**explained (1)**
10:22
**explanation (1)**
30:1
**expressed (1)**
13:2
**extended (2)**
24:16;33:14
**extension (1)**
24:19
**extent (10)**
9:24;11:15;15:6;
18:9;21:2;27:9;28:3,
9,18;29:19

# F

**fact (4)**
11:3;22:4,16;33:4
**facts (1)**
12:23
**failed (4)**
12:2,4,6,9
**faith (3)**
12:14;14:9,13
**Fargo (1)**
4:21
**FARR (1)**
6:12
**Federal (4)**
27:4,8;33:23;34:7
**feel (2)**
27:10;35:16
**FGIC (47)**
4:11;7:3;8:18;9:7;
10:3;11:10;12:21;
13:5,9,15,18,23;14:4,
11,16,18;15:20;16:7;
17:9,11,12,25;18:21;
19:2,17;20:1,2,5,19,
21;21:15,18,20,22,
23,24,25;22:4,6,8,13,
18,18,19,23;24:12;
25:15
**FGIC-insured (2)**
20:5;22:13
**FGIC's (7)**
12:6;17:15;19:14;
20:12;22:3,16;23:13
**FGIC-wrapped (1)**
12:7

**fifteen-minute (1)**
31:22
**Fifth (1)**
7:4
**FIGC (1)**
24:2
**figure (4)**
18:3,8;22:3,4
**figuring (1)**
31:10
**file (1)**
25:19
**filed (8)**
17:7;25:13,14,15,
18,21,24,25
**filing (1)**
17:16
**filings (1)**
33:7
**fill (1)**
23:22
**final (1)**
28:17
**finally (1)**
13:5
**Financial (1)**
17:14
**find (1)**
36:12
**findings (2)**
14:16;33:3
**fine (4)**
29:7;32:14,17,24
**finish (2)**
32:2,2
**firetrap (1)**
35:17
**firm (2)**
17:9,10
**First (4)**
8:8;9:20,24;19:6
**five (1)**
8:15
**five-billion-plus (1)**
18:8
**flash (1)**
33:8
**Floor (3)**
6:5;7:13;33:16
**flows (2)**
22:9,20
**focuses (1)**
14:3
**Foerster (1)**
26:15
**follow (3)**
27:6,7;29:9
**forget (1)**
9:13
**form (8)**
10:2;25:19,20,22,
25;26:6,7,8
**format (1)**

33:8
**formed (2)**
17:11,15
**forming (2)**
13:10;14:7
**formulating (2)**
12:24;13:1
**forth (5)**
10:8;14:24;15:6;
20:16;29:9
**Fortunately (1)**
24:25
**forward (2)**
26:6,24
**foundation (1)**
12:25
**Freddie (17)**
5:21;6:3;8:16;12:1,
20;13:15;15:13;17:5,
7,13,18;18:6,7,9,13;
20:13;21:18
**free (1)**
35:16
**frequently (3)**
27:10,17;30:16
**Friday (3)**
8:10;33:23;36:16
**front (2)**
36:11,11
**full (1)**
24:22
**fully (1)**
8:10
**funds (1)**
22:8
**further (1)**
22:23

# G

**GA (1)**
4:23
**GALLAGHER (1)**
6:12
**gather (1)**
24:17
**gave (1)**
18:3
**GELFARB (1)**
5:25
**General (3)**
16:18,23,25
**generated (1)**
12:23
**gets (1)**
34:22
**Gibson (3)**
9:10;21:5,13
**gigabytes (1)**
13:6
**given (3)**
10:4,11;11:6
**gives (1)**

35:11
**goal (1)**
 31:4
**Goldstein (10)**
 21:7,9,16,16,23;
 22:2,15,15;23:4,17
**Goldstein's (1)**
 23:6
**good (5)**
 12:14;14:9,13;
 24:1;30:5
**GOTSHAL (1)**
 7:2
**governing (1)**
 22:7
**Grand (1)**
 7:12
**granted (5)**
 9:22;10:24;18:18,
 19;21:2
**grounds (1)**
 19:18
**Group (1)**
 4:2
**guarantee (1)**
 35:19
**guest (1)**
 35:7
**guidance (1)**
 14:10
**gun (1)**
 36:8

**H**

**half (2)**
 35:11,15
**halfway (1)**
 31:23
**happen (4)**
 24:25;30:16,22;
 36:10
**happens (3)**
 27:10,17;29:12
**hard (1)**
 26:24
**Hathaway (1)**
 7:11
**hear (3)**
 27:24;30:1;31:7
**heard (1)**
 24:5
**hearing (11)**
 8:4,14;9:7;10:19;
 11:3;13:23;15:14;
 24:2,4;25:4,7
**hearsay (1)**
 27:15
**helpful (1)**
 32:12
**helps (1)**
 31:11
**highlighted (1)**

20:12
**hired (1)**
 17:10
**Hoc (1)**
 4:2
**Holtzer (5)**
 23:8,11,13,14,17
**Honor (31)**
 8:19;9:6,7,16,18;
 21:6,10;22:25;23:9,
 24;24:1;26:14,22;
 28:2,17;29:3,13,19;
 30:5,7;31:12;32:11,
 23,25;33:18;34:6,8,
 11,18;35:21;36:14
**HOOPER (1)**
 5:8
**hope (7)**
 24:21;29:18,18,22;
 30:16;31:24;35:2
**hopefully (1)**
 31:9
**hour (3)**
 31:24;35:11,15
**hours (3)**
 31:16,24,25
**HOWARD (2)**
 4:15;9:6

**I**

**identified (5)**
 11:2,4,7;21:24;
 29:16
**Identify (3)**
 9:4;12:3;35:2
**ignores (1)**
 22:16
**immediately (1)**
 11:2
**impermissible (1)**
 12:8
**implicated (1)**
 14:19
**important (1)**
 8:9
**imposes (1)**
 16:18
**Inc (1)**
 7:11
**including (3)**
 12:23;15:19;21:18
**in-court (1)**
 27:21
**indeed (1)**
 10:19
**independent (1)**
 12:5
**independently (1)**
 12:3
**indicate (2)**
 27:5;32:18
**indicated (2)**

22:1;31:16
**indication (1)**
 24:7
**individuals' (1)**
 19:19
**information (3)**
 12:10;16:13;25:10
**informed (1)**
 13:5
**informing (1)**
 20:19
**initially (1)**
 13:4
**inquiry (2)**
 14:14;19:12
**inside (1)**
 25:2
**insist (1)**
 27:12
**insisting (1)**
 14:15
**instead (1)**
 22:13
**instructed (1)**
 13:20
**instruction (1)**
 19:16
**insured (4)**
 19:25;21:18,22;
 22:8
**intending (2)**
 32:7;36:2
**intention (1)**
 32:11;35:23
**interests (2)**
 12:13;21:22
**interrupt (1)**
 8:20
**into (10)**
 10:2;11:3,8,16;
 13:17;14:2,14,25;
 15:6;19:12
**introduce (2)**
 14:22;17:2
**investor (17)**
 8:15;12:1,11,19,
 21;13:5,7,14,22;14:4,
 8,17;15:12,16,22;
 17:7;21:18
**investors (4)**
 12:13;21:17,22;
 22:17
**investors' (1)**
 21:16
**involved (2)**
 30:16;31:1
**iPad (1)**
 25:1
**ipse (1)**
 12:8
**issue (12)**
 8:22;9:9;14:19;
 21:5;22:24;23:8;

24:11;26:13;28:25;
 31:8;33:15,18
**issued (1)**
 19:25
**issues (10)**
 10:18,19;19:4;
 21:12;25:2,3;26:11,
 18;31:5;33:16
**item (1)**
 25:9

**J**

**JAMES (1)**
 6:19
**Jeffrey (3)**
 9:21;10:24;14:6
**JOHN (2)**
 4:25;19:15
**joined (4)**
 12:1,20;13:15;
 15:12
**joining (1)**
 17:6
**JONES (2)**
 4:10;9:7
**JOSEPH (1)**
 6:17
**JSN (2)**
 18:19;20:9
**JSNs (7)**
 18:21;19:1,6,11,
 19;20:3,11
**JSNs' (2)**
 19:20;20:25
**JSN's (1)**
 18:12
**Judge (1)**
 16:9
**judgment (1)**
 18:23
**July (3)**
 10:14,24;20:13
**June (1)**
 17:21
**Junior (3)**
 4:2;8:17;18:17
**Justice (1)**
 24:7

**K**

**KAHAN (1)**
 5:16
**KALISH (1)**
 5:20
**keep (5)**
 26:19;29:3;31:15;
 33:9;35:20
**keeping (1)**
 31:20
**KERR (30)**
 23:24;24:14;26:14,

14;28:1,2,7,9,17,24;
 29:2,13,15,22;30:5,7,
 8,9;31:11,12;32:10,
 11,15;33:17,18;34:8,
 11,35:21,21;36:14
**kind (1)**
 32:13
**KISSEL (1)**
 5:2
**knowing (1)**
 26:25
**Kothari (1)**
 11:25
**Kothari's (3)**
 12:2,11,17
**KOTWICK (1)**
 5:7
**Kruger (5)**
 16:5;19:11;20:10;
 35:25;36:3
**Kruger's (1)**
 10:2

**L**

**lacks (1)**
 20:11
**large (1)**
 34:24
**last (1)**
 30:14
**late (1)**
 17:9
**law (2)**
 14:12;33:4
**lawyers (2)**
 30:15;31:1
**lead (2)**
 30:24;31:10
**learning (1)**
 15:17
**least (1)**
 13:4
**legal (12)**
 10:1,1,4,10,18,19;
 11:9,17,21;14:10;
 20:7;29:25
**letter (3)**
 19:8;20:12;26:13
**lifetime (1)**
 19:23
**light (2)**
 26:21,23
**likely (1)**
 24:8
**limine (20)**
 8:8,11,15,16,17,18,
 21;9:9,20,22;10:23;
 15:8;17:6;18:12;
 19:21;20:14,25;
 23:16,18;24:24
**limited (1)**
 28:10

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

line (4)
20:22,23,23,23
lines (1)
20:24
Ling-Cohan (1)
24:7
Lipps (15)
9:21,24;10:3,21,24,
25;14:6,7;18:19,25;
19:3;20:3,6;21:1;
23:20
Lipps' (2)
10:14;11:11
list (1)
23:20
listed (1)
23:12
listen (2)
25:3,5
litigating (1)
20:4
litigation (2)
12:6;21:25
little (2)
8:12;31:13
live (2)
27:1,25
LLP (7)
4:1,20;5:2,11;6:12;
7:2,10
loans (1)
22:21
locked (2)
35:18,20
logistic (1)
35:9
logistical (1)
35:22
logistics (1)
36:16
long (1)
23:20
Look (4)
29:4;33:2,11,11
Los (1)
7:14
loss (2)
17:10;22:5
losses (2)
18:4;19:24
losses] (1)
17:24
lot (4)
30:15;31:1;33:10,
11
lots (1)
34:25
lower (1)
21:19
lunchtime (1)
35:14

## M

M-390 (2)
16:18,23
Mac (13)
5:21;6:3;8:16;12:1,
20;13:15;15:13;17:7,
13;18:7,7,9;21:18
Mac's (4)
17:5,18;18:13;
20:13
main (1)
17:18
Major (3)
16:3;33:22;34:5
MANGES (1)
7:2
March (1)
22:3
MARK (2)
5:7;35:4
MARY (1)
6:18
material (3)
13:6,8;36:2
materials (2)
12:24;20:16
matter (3)
16:11;20:1;24:6
matters (2)
10:5,12
MAURICIO (1)
5:17
may (12)
14:12,22;22:19;
24:17;25:8;26:21;
27:5;30:24;32:9;
33:25;34:1,18
MCKOOL (4)
6:2;9:8,12;26:13
mean (3)
11:11;25:14;26:4;
27:10;34:3
mediation (19)
15:10,14,19;16:9,
10,12,13,14,15,17,17,
20,21,24;17:1,3;
19:12,17,18
mediator (3)
16:14,19,22
meet (2)
8:20,23
meet-and-confer (1)
26:16
Mellon (1)
5:12
member (1)
17:13
merits (1)
18:23
Messer (2)
9:15;22:24

method (1)
12:3
MICHAEL (1)
6:9
might (1)
21:20
million (1)
12:4
mind (2)
14:15,19
minions (1)
33:9
mitigation (1)
22:5
Monarch (1)
6:13
Monday (2)
25:6;33:25
monitor (4)
34:20,23,23,24
moot (1)
26:21
more (5)
8:12;9:22;11:21;
24:24;33:11
Moreover (4)
13:4;14:8;16:24;
19:10
morning (3)
31:23,25;36:16
Morrison (1)
26:15
mortgage (1)
22:21
mortgage- (1)
19:24
MOSS (1)
5:20
most (2)
14:3;30:23
motion (34)
8:16,17;9:9,20,22;
10:9,23;11:19,25;
12:17,18,19;13:1,
13,14;14:3;15:8,9,10;
17:4,5,19;18:12,13,
16,18,21;19:20;20:9,
14,17,25;21:2,23;16
motions (9)
8:8,11,15,16,21;
17:7;18:11;23:18;
24:24
mountain (1)
33:2
moves (1)
22:23
much (2)
10:13;11:12
MUNGER (1)
7:10
must (1)
25:12

## N

name (1)
9:13
nature (1)
16:25
necessarily (1)
14:19
necessary (1)
24:18
need (6)
24:17;25:22,24,24;
32:2,8
needs (1)
35:3
negotiations (4)
15:10,16,19;16:9
New (10)
4:4,13;5:5,12,14,
23;6:6,15;7:5;17:14
NewOak (2)
17:17;20:20
next (4)
13:6;24:11;25:9;
31:2
night (1)
35:18
Nobody (1)
34:17
none (1)
20:20
nor (1)
15:4
Noteholders (2)
4:2;8:17
Noteholders' (1)
18:17
number (5)
8:3,5;11:5,7;35:2
NY (8)
4:4,13;5:5,14,23;
6:6,15;7:5

## O

object (2)
15:7;23:14
objecting (2)
18:9;20:13
objection (5)
15:11;27:14;28:18;
29:25;30:3
objections (5)
29:17,24,24;30:2;
34:4
objection's (1)
29:20
objective (1)
18:10
objectivity (1)
20:11
objectors (2)

11:18;32:18
obviously (2)
29:15;35:19
o'clock (2)
32:1;35:13
off (1)
25:8
offer (3)
35:24,24,25
offered (5)
19:22;20:4;26:2;
28:22;29:20
offering (3)
18:22,24;28:4
offers (4)
12:12;16:16;27:14,
22
officer (1)
33:24
OLSON (1)
7:10
once (1)
27:24
One (22)
5:4;6:4;8:12,16,17,
22;9:9,21;17:20;
21:24;26:20;27:10;
28:2,17;29:13;30:7;
32:2;33:1,18,21;
34:2;35:22
one-billion-dollar (1)
22:4
only (5)
10:17;12:21;13:3;
27:24;32:12
open (3)
22:24;26:18;33:16
opening (2)
32:7,22
openings (1)
35:6
opens (2)
35:10,16
opined (1)
17:22
opinion (12)
10:8;12:7,11,12,
24;13:11;14:7,22;
20:16;21:23;22:2,19
opinions (6)
10:1,10;12:2,25;
13:1;20:19
opponents (1)
34:4
opposition (2)
25:17;26:2
oral (3)
8:11;17:2;24:4
order (21)
8:4,6,13;11:2,14,
22;16:10,17,18,23;
23:19;30:10,11,14;
31:6,7,9;33:6,20;

34:3,5
**ordering (1)**
  26:1
**others (1)**
  16:20
**otherwise (2)**
  21:20;22:12
**ought (4)**
  28:13,14;31:1,8
**out (8)**
  11:24;29:1;31:6,7,
  10;34:3,5,25
**outline (1)**
  18:11
**outlined (1)**
  20:10
**outstanding (2)**
  21:8,9
**over (1)**
  33:20
**overcome (3)**
  12:16;18:14;23:6
**overhead (1)**
  34:22
**overseen (1)**
  16:9
**own (1)**
  31:16

**P**

**page (3)**
  20:22,23,23
**paid (1)**
  22:22
**papers (2)**
  13:3,10
**paragraph (5)**
  11:5,7,23;16:17;
  22:19
**paragraphs (7)**
  11:16,23;15:23,25;
  16:2,4;23:21
**Park (2)**
  5:4;6:4
**part (10)**
  9:23,23;10:24,25;
  11:9;18:18,18;21:2,
  2;26:9
**participants (1)**
  16:21
**particularly (1)**
  27:17
**parties (36)**
  8:16;12:1,11,19;
  13:5,7,15,22;14:4,8,
  18,22;15:3,6,12,16,
  19,22;16:7,11,12,14,
  19;17:1,7;20:13;
  21:19;24:5,17,18;
  25:7;27:11,18;29:15;
  30:21;31:6
**parties' (2)**

12:21;15:15
**party (8)**
  14:12;15:7;16:22;
  27:6,22;28:3,19,20
**party's (2)**
  14:15;28:19
**payable (2)**
  22:13,13
**payment (2)**
  12:4;15:21
**payments (1)**
  22:9
**PC (1)**
  6:2
**Peachtree (1)**
  4:22
**Peck (1)**
  16:9
**pending (1)**
  20:17
**people (1)**
  34:14
**performed (1)**
  20:2
**permission (1)**
  36:13
**permit (3)**
  27:13;30:19,20
**permitted (2)**
  10:3,25
**person's (1)**
  9:13
**Pfeiffer (5)**
  12:19,21,23;13:1,
  10
**Pfeiffer's (2)**
  12:22;13:3
**Phelps (1)**
  12:6
**picture (1)**
  32:15
**place (1)**
  24:3
**plan (7)**
  13:24;17:11,15,16;
  21:20;24:23;25:3
**planning (1)**
  32:19
**Plaza (1)**
  5:4
**pleading (1)**
  25:11
**Please (1)**
  8:2
**pleasure (1)**
  32:10
**PLLC (1)**
  5:20
**pm (2)**
  25:19;36:17
**point (3)**
  13:19,22;23:10;
  25:23;31:23

**points (1)**
  29:7
**portions (5)**
  11:1,4,6,6;19:19
**possible (2)**
  23:13;30:15
**post-settlement (1)**
  12:8
**potential (4)**
  12:6;18:4;20:4;
  22:12
**PowerPoint (1)**
  35:6
**precise (1)**
  27:24
**precisely (1)**
  10:20
**preclude (16)**
  9:21;10:23;11:25;
  12:18,20;13:13;15:9,
  13,23;17:5,8;18:7;
  21:15;22:23;23:12;
  32:16
**precluded (7)**
  9:25;10:18;11:19;
  18:22,24;19:7,20
**preclusion (3)**
  10:9;14:22;18:18
**prejudice (1)**
  23:17
**pre-marked (1)**
  35:3
**preparation (1)**
  33:3
**prepared (2)**
  8:10;31:4
**preparing (1)**
  20:16
**presentation (1)**
  19:8
**presented (1)**
  25:22
**prevents (1)**
  33:23
**previously (4)**
  10:6;20:6;25:13,14
**price (1)**
  12:7
**primary (2)**
  13:3;30:17
**prior (3)**
  10:4;20:19,21
**privilege (5)**
  13:19,21;14:14;
  15:1;19:19
**Procedure (5)**
  27:4,8,13;28:3;
  29:10
**proceeding (2)**
  17:13;23:23
**proceedings (1)**
  36:17
**process (2)**

16:20,25
**produce (4)**
  13:6,16;14:6;19:8
**produced (3)**
  13:3,10;16:16
**product (1)**
  12:22
**proffered (1)**
  9:24
**prohibited (1)**
  19:12
**prohibiting (1)**
  16:11
**prohibition (1)**
  16:18
**projected (3)**
  22:9,9,20
**projection (1)**
  22:1
**promptly (1)**
  30:1
**properly (1)**
  11:21
**proposed (3)**
  10:3;15:18;33:3
**protect (1)**
  16:8
**prove (1)**
  14:9
**provide (3)**
  28:15;30:12;33:7
**provided (4)**
  10:15;16:14;20:6;
  36:2
**providers (1)**
  22:10
**providing (1)**
  17:17
**provisions (1)**
  22:7
**public (3)**
  25:10;26:9,10
**publicly (1)**
  21:24
**published (1)**
  10:8
**purposes (1)**
  10:18
**put (7)**
  14:18,24;15:6;
  17:23;30:14;32:8;
  36:10
**putting (1)**
  35:23

**Q**

**quarterly (1)**
  22:3
**quest (1)**
  35:9
**quote (1)**
  13:24

**R**

**raise (8)**
  24:11;26:20;28:21,
  22;29:13;33:17,17;
  34:13
**raised (1)**
  26:20
**raising (1)**
  26:13
**rate (1)**
  12:5
**rather (1)**
  8:7
**reached (2)**
  8:21;9:8
**reaching (1)**
  26:3
**read (7)**
  28:5,15;29:8;32:4,
  5,9;33:10
**reading (3)**
  24:24;28:12;32:5
**reads (1)**
  11:12
**really (1)**
  29:5
**reason (2)**
  21:21;30:14
**reasonably (1)**
  14:9
**reasons (6)**
  9:23;10:7,22;11:5;
  18:11;20:10
**REBECCA (1)**
  5:16
**receive (3)**
  21:19;22:6,20
**received (1)**
  14:23
**recess (1)**
  31:22
**record (3)**
  9:4;10:1;26:9
**recoveries (3)**
  12:7;21:25;22:6,
  12,17,18
**recovery (1)**
  21:19
**redacted (1)**
  25:18
**redirect (2)**
  26:25;36:5
**refer (1)**
  36:4
**references (1)**
  26:8
**referred (5)**
  15:24;16:1,3,6;
  35:25
**reflect (2)**
  11:23;18:3

12-12020-mg    Doc 4686    Filed 08/15/13    Entered 08/15/13 09:22:12    Main Document
RESIDENTIAL CAPITAL, LLC, et al.
Pg 46 of 48
Case No. 12-12020-mg

August 14, 2013

refused (1)
    14:6
regarding (2)
    18:8,22
regulation (2)
    33:22,23
rehabilitation (6)
    17:11,12,15,16;
    21:20;23:23
Rehabilitator (2)
    7:3;24:2
reimbursement (3)
    22:5,12,17
reimbursements (1)
    22:20
rejects (1)
    20:11
relates (1)
    22:4
relating (1)
    19:9
released (1)
    17:24
relevant (1)
    12:12
reliance (4)
    13:14;15:7,10,11
relied (7)
    12:10;13:10,16;
    14:1,5,25;15:5
rely (1)
    20:15
remaining (1)
    26:11
render (1)
    8:10
repe (1)
    30:18
repeat (1)
    27:23
repeatedly (1)
    13:18
repetitive (1)
    30:20
reporter (1)
    35:3
represent (1)
    30:20
representative (1)
    9:13
represented (1)
    10:6
requested (3)
    13:6;14:16;15:22
requests (1)
    24:19
require (2)
    10:11;33:3
requirements (1)
    27:3
ResCap (1)
    17:18
reserved (3)

    12:15;18:14;23:5
Residential (2)
    8:3;19:24
resolutions (1)
    16:15
resolve (2)
    29:18,22
resolved (6)
    21:4,14;22:25;
    23:1,2,9
resolves (1)
    23:18
respect (21)
    8:8,11,20,24;9:9,
    10;10:5;12:18;18:17,
    19;19:2,14,23;21:13;
    23:4,11,16,20;26:10;
    29:10,23
response (1)
    10:9
responsibility (1)
    30:17
restricted (1)
    19:16
result (2)
    16:16;29:11
retain (1)
    22:18
retained (3)
    19:2,3;20:7
review (2)
    13:8;25:4
reviewing (2)
    26:4,7
RICHARD (3)
    4:16;7:7;24:1
right (23)
    8:2;9:3,7,17,19;
    11:24;13:13;15:9;
    18:16;21:11,11;
    22:17;23:3,11,22;
    24:11,15;29:21;30:6,
    6,19;31:13;33:1
RMBS (1)
    10:12
Ron (4)
    17:5,8;19:22;21:1
room (1)
    24:22
roomful (1)
    25:2
ROSS (1)
    5:8
Rothschild (2)
    9:14,15
Rule (12)
    11:10;20:17;21:14;
    24:8,21;25:6;26:7;
    27:5,16;28:19,21;
    30:1
ruled (2)
    18:20;24:6
Rules (7)

    27:4,8,13,15;29:9,
    9;34:7
ruling (4)
    18:12;24:4;25:11;
    26:10
rulings (1)
    8:9
run (1)
    17:10


S


safe (1)
    35:19
same (9)
    17:18;19:2,4,14;
    20:1,6;27:24;32:25;
    35:8
save (1)
    32:9
schedule (1)
    33:12
scheduled (1)
    8:4
scheduling (3)
    8:4;31:8;33:19
SCHOFIELD (1)
    6:8
score (1)
    29:7
Scott (2)
    9:10;21:13
screen (3)
    34:24;35:1,8
seated (1)
    8:2
Second (2)
    14:12;19:22
section (2)
    16:23;20:7
Secured (3)
    4:2;8:17;18:17
securities (3)
    12:8;19:25;22:21
Securitization (1)
    5:3
seek (1)
    12:20
seeks (4)
    17:7;19:3,4;21:15
seems (2)
    27:2;31:23
sent (1)
    33:20
sentences (1)
    11:24
separate (2)
    23:19;30:24
September (2)
    24:20;33:13
sequestration (2)
    32:1,3
serious (1)

    25:3
Services (2)
    17:14,17
set (7)
    10:7;20:16;29:9;
    33:4,13,13;34:15
setting (1)
    33:12
settlement (25)
    10:3;11:10;12:13;
    13:17;14:2,11,25;
    15:6,14,20;16:7;
    17:25;18:23;19:10,
    13,17;21:17,21;
    22:11,16;24:12;
    25:16,18;26:3;34:4
settling (1)
    15:3
Seventh (1)
    6:14
several (3)
    9:23;13:6,24
SEWARD (1)
    5:2
shall (1)
    16:20
sheet (3)
    17:11,15;19:9
shifts (1)
    18:13
SHORE (1)
    4:6
short (1)
    29:25
shortly (2)
    8:13;18:11
side (3)
    30:9,11;31:17
SIDMAN (13)
    4:15;8:19;9:1,3,5,
    6,6,12,18;21:4,6,9;
    23:9
significant (1)
    22:20
Similar (2)
    15:11;16:18
Similarly (1)
    20:3
simultaneous (2)
    33:5,7
simultaneously (1)
    14:14
single (1)
    19:8
sit (1)
    28:12
sitting (1)
    28:16
six (1)
    31:16
SLACK (6)
    7:7;23:25;24:1,1,9,
    10

slightly (1)
    9:22
SMITH (4)
    6:2;9:8,12;26:13
smoking (1)
    36:8
smoothly (1)
    30:15
SODERBERG (1)
    4:7
Sohlberg (1)
    16:1
somebody (6)
    23:22;27:13,21;
    29:5;33:6;35:14
somebody's (2)
    30:17;34:14
Sometime (1)
    17:16
sort (1)
    36:13
sought (2)
    14:10,23
South (1)
    7:12
SP (1)
    11:25
spare (2)
    28:11,11
speak (1)
    9:1
SPEAKER (6)
    22:25;23:2;32:19,
    22,25;34:6
speaking (2)
    29:24;30:2
specific (1)
    11:15
specifically (3)
    8:6;15:22;17:20
spend (1)
    29:5
spreadsheet (1)
    19:9
spring (1)
    36:9
staff (1)
    20:20
stand (4)
    26:13;29:6;34:6,23
start (2)
    31:22;36:11
state (5)
    14:15,19;23:23;
    24:3;29:25
statement (3)
    15:24;18:8;22:3
statements (5)
    13:24;16:13,19;
    32:8,22
states (1)
    22:2
status (1)

23:22
**steering (1)**
17:12
**STEVEN (1)**
4:17
**still (9)**
21:7,9;22:24;
26:18;27:20,20;29:2,
17;33:11
**Stonehill (1)**
6:13
**stop (2)**
32:1,3
**Street (3)**
4:12,22;5:22
**strengths (1)**
10:19
**stress (1)**
17:10
**strictly (1)**
16:11
**stuff (1)**
25:2
**subject (6)**
10:12,16;11:17;
20:1,6;22:10
**subjects (1)**
11:20
**submission (1)**
33:5
**submitted (3)**
15:3;17:14,21
**substance (5)**
14:20,24;15:4;
19:12,17
**substantial (1)**
22:12
**substantive (1)**
19:8
**supplemental (1)**
8:4
**support (5)**
11:9;13:24;20:17;
25:17;26:2
**Sure (3)**
9:6;24:22;26:18
**surprise (2)**
33:1;36:8
**surprised (2)**
34:8,10

**T**

**talk (1)**
31:13
**technology (2)**
34:15,16
**TELEPHONICALLY (1)**
7:16
**term (3)**
17:11,15;19:9
**terms (3)**
22:11;28:3;33:18

**testified (4)**
20:15,18,20;27:1
**testifies (1)**
21:17
**testify (6)**
10:4,6,10,25;
26:24;34:5
**testifying (1)**
10:21
**testimony (51)**
9:21,25;10:14,15,
16,23;11:1,4,4,7,12,
25;12:17,18,20;
13:13;15:2,9,15;
16:5;17:5,8,19;18:2,
6,13,15,19,25;19:3,5,
15,20;20:3,9;21:1,1,
13,15;23:20;24:23;
25:5,23,24;27:7,21,
24;28:12;29:25;
31:24;32:5
**therefore (4)**
12:17;18:7;21:14;
23:16
**therein (4)**
15:25;16:1,3,6
**third (1)**
16:22
**THOMAS (2)**
5:8;7:16
**though (1)**
30:20
**three (2)**
31:24,25
**timed (4)**
27:1,9,18;31:14
**tiny (1)**
8:22
**today (2)**
26:21;29:16
**told (1)**
34:14
**TOLLES (1)**
7:10
**tomorrow (4)**
25:19;35:12,13,15
**took (1)**
24:5
**track (3)**
31:15,20;33:9
**transactions (1)**
22:11
**transcript (1)**
20:22
**transcripts (5)**
24:23;28:13,15;
29:8,10
**treat (2)**
11:13,14
**treatment (2)**
25:9;31:14
**trial (18)**
8:10;11:18;13:16;

15:7,12;25:10,12,21,
21;26:10;27:1,9,18;
29:4,8,16,24;31:14
**trials (1)**
25:11
**trust (1)**
19:2
**Trustee (1)**
5:3
**trustees (10)**
12:14,22;13:5,9,15,
23;14:8,16,18;17:25
**trustee's (2)**
14:4;33:21
**trusts (7)**
17:18;19:25;20:5;
21:18,22;22:8,14
**try (2)**
31:21;35:17
**trying (2)**
33:9;34:15
**turn (1)**
9:12
**two (3)**
8:16;27:10;32:2
**typically (1)**
31:18

**U**

**ultimate (1)**
10:18
**under (7)**
17:25;21:20;22:7,
11;24:6;28:18,20
**underlying (2)**
12:10;22:21
**UNIDENTIFIED (6)**
22:25;23:2;32:19,
22,25;34:6
**unless (3)**
29:11;30:13;36:8
**unrealistic (1)**
25:5
**unredacted (7)**
25:19,22,25;26:4,6,
7,8
**unreliable (1)**
12:2
**unsealed (2)**
25:12,16
**unsealing (1)**
26:1
**up (5)**
24:18,24;26:16;
31:3;34:15
**use (7)**
20:15,18;27:12;
31:17;34:18;35:5,6
**used (5)**
12:3,5;27:5,19;
31:19
**using (1)**

34:17
**usually (7)**
29:11;30:1,22;
31:7,7,19,21

**V**

**vacation (1)**
24:24
**VANESSA (1)**
4:7
**various (1)**
22:8
**verify (2)**
12:3,9
**versus (1)**
27:1
**voluntary (1)**
16:8

**W**

**waiving (1)**
15:1
**WALPER (1)**
7:16
**wants (2)**
29:5;34:12
**waterfall (1)**
22:7
**way (2)**
32:8;34:7
**weaknesses (1)**
10:20
**WEIL (2)**
7:2;24:2
**WEITNAUER (1)**
4:25
**welcome (2)**
35:5,11
**Wells (1)**
4:21
**West (1)**
4:22
**what's (3)**
26:25;27:1;32:10
**Whereupon (1)**
36:17
**WHITE (1)**
4:1
**whole (1)**
24:17
**who's (3)**
30:23;31:10;34:17
**wife (1)**
24:25
**willing (2)**
31:5;34:2
**WILLKIE (1)**
6:12
**wish (2)**
25:11;31:17
**wished (1)**

24:25
**wishes (1)**
27:21
**withdraw (1)**
9:9
**withheld (2)**
12:22;13:18
**within (1)**
27:15
**without (3)**
15:1;23:17;26:25
**witness (26)**
9:25;11:1,4;15:24;
18:10,15;19:23;
20:14;23:7,12,13,15;
27:20,20;29:6,6;
30:18;31:3;33:21;
34:1,23;35:7,24;36:9,
11,13
**witnesses (12)**
13:20;14:4;17:21;
26:23;30:10,11;31:6,
9;33:19,21,21;34:3
**Word (1)**
33:8
**work (7)**
12:22;13:3,10;
20:19;24:16;28:25;
33:22
**worked (2)**
20:20,21
**working (4)**
26:19;29:2,3,17
**works (1)**
31:2
**wound (1)**
24:24
**wrapped (1)**
18:4
**written (3)**
11:2,22;17:2
**wrongly (1)**
21:24
**WYNNE (1)**
4:16

**Y**

**yesterday (1)**
8:5
**York (10)**
4:4,13;5:5,12,14,
23;6:6,15;7:5;17:14

**1**

**10 (2)**
20:23;33:5
**10004 (1)**
5:5
**10017 (1)**
4:13
**10019 (1)**

6:15
**10036 (3)**
  4:4;5:14;6:6
**10153 (1)**
  7:5
**10168 (1)**
  5:23
**1095 (1)**
  5:13
**1155 (1)**
  4:3
**11th (1)**
  17:22
**12 (1)**
  16:2
**1201 (1)**
  4:22
**12-12020 (1)**
  8:3
**125 (1)**
  5:22
**129 (1)**
  20:24
**12th (1)**
  10:8
**132 (1)**
  20:22
**133 (1)**
  20:23
**136 (1)**
  20:23
**138 (1)**
  20:23
**14 (2)**
  15:25;16:4
**15 (1)**
  16:4
**16 (1)**
  15:23
**16th (2)**
  24:20;33:13
**17 (1)**
  16:2
**18 (1)**
  15:24
**19 (1)**
  24:13
**19th (1)**
  25:6

**2**

**2 (1)**
  8:5
**20 (1)**
  15:25
**2011 (2)**
  17:10;20:2
**2013 (8)**
  10:8,15,24;17:22;
  20:13;22:3;24:20;
  33:6
**21 (1)**

16:2
**22 (2)**
  20:23,24
**222 (1)**
  4:12
**23 (1)**
  16:2
**24 (2)**
  16:2;20:22
**25 (1)**
  16:4
**2519 (1)**
  16:10
**253.3 (1)**
  12:4
**26 (1)**
  16:4
**26th (2)**
  33:6,13
**27 (1)**
  22:19
**28 (1)**
  16:4
**29 (1)**
  20:13

**3**

**3 (1)**
  35:13
**30309 (1)**
  4:23
**31 (3)**
  10:14,24;22:3
**327e (1)**
  20:7
**32a (1)**
  28:19
**35 (1)**
  16:4
**355 (1)**
  7:12
**35th (1)**
  7:13
**39 (1)**
  16:4

**4**

**4 (3)**
  15:23;16:17;25:19
**4:47 (1)**
  36:17
**41 (1)**
  16:4
**41st (1)**
  4:12
**42 (1)**
  16:4
**42nd (1)**
  5:22
**47th (1)**
  6:5

**5**

**5 (4)**
  16:4;20:23;32:1,3
**5,001,609,304 (1)**
  18:1
**5.1 (1)**
  16:23
**57 (1)**
  16:5
**59 (1)**
  16:5

**6**

**6 (3)**
  15:23,25;20:24
**6th (2)**
  13:4;24:3

**7**

**7 (1)**
  16:2
**767 (1)**
  7:4
**787 (1)**
  6:14

**8**

**8:30 (1)**
  35:10

**9**

**9 (4)**
  15:23,25;16:2;
  31:22
**90071 (1)**
  7:14
**9019 (3)**
  10:19;11:10;26:3
**9109 (1)**
  20:17