# Exhibit A

EXECUTION
COPY

GMACM HOME EQUITY LOAN TRUST 2006-HE2,

Issuer,

and

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

Indenture Trustee

_____

INDENTURE

_____

Dated as of June 29, 2006

GMACM HOME EQUITY LOAN-BACKED TERM NOTES

---

RECONCILIATION AND TIE BETWEEN TRUST INDENTURE
ACT OF 1939 AND INDENTURE PROVISIONS*

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1) | 6.11 |
| (a)(2) | 6.11 |
| (a)(3) | 6.10 |
| (a)(4) | Not Applicable |
| (a)(5) | 6.11 |
| (b) | 6.08, 6.11 |
| (c) | Not Applicable |
| 311(a) | 6.12 |
| (b) | 6.12 |

```
(c).............................................................Not Applicable
312(a).....................................................7.01, 7.02(a)
(b).............................................................7.02(b)
(c).............................................................7.02(c)
313(a).............................................................7.04
(b).............................................................7.04
(c)..................................................7.03(a)(iii), 7.04
(d).............................................................7.04
314(a)...................................................3.10, 7.03(a)
(b).............................................................3.07
(c)(1).................................................8.05(c), 10.01(a)
(c)(2).................................................8.05(c), 10.01(a)
(c)(3)....................................................Not Applicable
(d)(1).................................................8.05(c), 10.01(b)
(d)(2).................................................8.05(c), 10.01(b)
(d)(3).................................................8.05(c), 10.01(b)
(e).............................................................10.01(a)
315(a).............................................................6.01(b)
(b).............................................................6.05
(c).............................................................6.01(a)
(d).............................................................6.01(c)
(d)(1).............................................................6.01(c)
(d)(2).............................................................6.01(c)
(d)(3).............................................................6.01(c)
(e).............................................................5.13
316(a)(1)(A).............................................................5.11
316(a)(1)(B).............................................................5.12
316(a)(2)....................................................Not Applicable
316(b).............................................................5.07
317(a)(1).............................................................5.04
317(a)(2).............................................................5.03(d)
317(b).............................................................3.03(a)
318(a).............................................................10.07
```

*This reconciliation and tie shall not, for any purpose, be deemed to be part of the within _____ indenture.

TABLE OF CONTENTS

PAGE

ARTICLE I
Definitions...............................................................2

        Section 1.01
Definitions......................................................2

        Section 1.02        Incorporation by Reference of Trust Indenture
Act.................2

14446915.1.LITIGATION

Section 1.03    Rules of Construction.............................................2

ARTICLE II    Original Issuance of Notes...............................................3

Section 2.01 Form.............................................................3

Section 2.02    Execution, Authentication and Delivery...........................3

ARTICLE III Covenants...............................................................4

Section 3.01    Collection of Payments with Respect to the Mortgage Loans........4

Section 3.02    Maintenance of Office or Agency...................................4

Section 3.03    Money for Payments to Be Held in Trust; Paying Agent..............4

Section 3.04 Existence.......................................................6

Section 3.05    Priority of Distributions; Defaulted Interest......................6

Section 3.06    Protection of Trust Estate......................................9

Section 3.07    Opinions as to Trust Estate.....................................9

Section 3.08    Performance of Obligations; Servicing Agreement..................10

Section 3.09    Negative Covenants.............................................10

Section 3.10    Annual Statement as to Compliance..............................11

Section 3.11    Recordation of Assignments.....................................11

Section 3.12    Representations and Warranties Concerning the Mortgage Loans.....11

Section 3.13    Assignee of Record of the Mortgage Loans........................11

Section 3.14    Servicer as Agent and Bailee of the Indenture Trustee............12

Section 3.15      Investment Company Act.........................................12

Section 3.16      Issuer May Consolidate, etc...................................12

Section 3.17      Successor or Transferee.......................................14

Section 3.18      No Other Business.............................................14

Section 3.19      No Borrowing..................................................14

Section 3.20      Guarantees, Loans, Advances and Other Liabilities...............14

Section 3.21      Capital Expenditures..........................................14

Section 3.22      Owner Trustee Not Liable for Certificates or Related Documents...................................................14

Section 3.23      Restricted Payments...........................................15

Section 3.24      Notice of Events of Default...................................15

Section 3.25      Further Instruments and Acts..................................15

Section 3.26      Statements to Noteholders.....................................15

Section 3.27      Determination of Note Rate....................................16

Section 3.28      Payments under the Policy.....................................16

Section 3.29      Replacement/Additional Enhancement.............................16

Section 3.30      Additional Representations of Issuer...........................17

ARTICLE IV      The Notes; Satisfaction And Discharge Of Indenture.......................18

Section 4.01      The Notes.....................................................18

Section 4.02      Registration of and Limitations on Transfer and Exchange of

Notes; Appointment of Certificate Registrar......................18

Section 4.03     Mutilated, Destroyed, Lost or Stolen Notes......................19

Section 4.04     Persons Deemed Owners...........................................20

Section 4.05     Cancellation....................................................20

Section 4.06     Book-Entry Notes................................................21

Section 4.07     Notices to Depository...........................................21

Section 4.08     Definitive Notes................................................22

Section 4.09     Tax Treatment...................................................22

Section 4.10     Satisfaction and Discharge of Indenture.........................22

Section 4.11     Application of Trust Money......................................23

Section 4.12     Subrogation and Cooperation.....................................23

Section 4.13     Repayment of Monies Held by Paying Agent........................24

Section 4.14     Temporary Notes.................................................24

ARTICLE V        Default And Remedies.................................................25

Section 5.01     Events of Default...............................................25

Section 5.02     Acceleration of Maturity; Rescission and Annulment..............25

Section 5.03     Collection of Indebtedness and Suits for Enforcement by Indenture Trustee................................................26

Section 5.04     Remedies; Priorities............................................28

Section 5.05     Optional Preservation of the Trust Estate.......................30

Section 5.06        Limitation of Suits..........................................30

Section 5.07        Unconditional Rights of Noteholders to Receive Principal and Interest......................................................31

Section 5.08        Restoration of Rights and Remedies............................31

Section 5.09        Rights and Remedies Cumulative.................................31

Section 5.10        Delay or Omission Not a Waiver.................................31

Section 5.11        Control by Enhancer or Noteholders.............................31

Section 5.12        Waiver of Past Defaults.......................................32

Section 5.13        Undertaking for Costs.........................................32

Section 5.14        Waiver of Stay or Extension Laws...............................33

Section 5.15        Sale of Trust Estate..........................................33

Section 5.16        Action on Notes...............................................35

Section 5.17        Performance and Enforcement of Certain Obligations..............35

ARTICLE VI          The Indenture Trustee....................................................36

Section 6.01        Duties of Indenture Trustee....................................36

Section 6.02        Rights of Indenture Trustee....................................37

Section 6.03        Individual Rights of Indenture Trustee.........................39

Section 6.04        Indenture Trustee's Disclaimer.................................39

Section 6.05        Notice of Event of Default.....................................39

Section 6.06        Reports by Indenture Trustee to Noteholders......................39

Section 6.07        Compensation and Indemnity.....................................39

Section 6.08        Replacement of Indenture Trustee...............................40

Section 6.09        Successor Indenture Trustee by Merger..........................41

Section 6.10        Appointment of Co-Indenture Trustee or Separate Indenture Trustee.........................................................41

Section 6.11        Eligibility; Disqualification..................................42

Section 6.12        Preferential Collection of Claims Against Issuer................43

Section 6.13        Representations and Warranties.................................43

Section 6.14        Directions to Indenture Trustee................................43

Section 6.15        Indenture Trustee May Own Securities...........................44

ARTICLE VII        Noteholders' Lists and Reports........................................44

Section 7.01        Issuer to Furnish Indenture Trustee Names and Addresses of Noteholders....................................................44

Section 7.02        Preservation of Information; Communications to Noteholders.......44

Section 7.03        Reports by Issuer..............................................44

Section 7.04        Reports by Indenture Trustee...................................45

Section 7.05        Exchange Act Reporting.........................................45

ARTICLE VIII        Accounts, Disbursements and Releases...................................45

Section 8.01        Collection of Money............................................45

14446915.1.LITIGATION

Section 8.02        Trust Accounts...............................................46

Section 8.03        Officer's Certificate..........................................46

Section 8.04        Termination Upon Distribution to Noteholders.....................47

Section 8.05        Release of Trust Estate........................................47

Section 8.06        Surrender of Notes Upon Final Payment...........................47

ARTICLE IX          Supplemental Indentures................................................47

Section 9.01        Supplemental Indentures Without Consent of Noteholders..........47

Section 9.02        Supplemental Indentures With Consent of Noteholders.............49

Section 9.03        Execution of Supplemental Indentures...........................50

Section 9.04        Effect of Supplemental Indenture...............................50

Section 9.05        Conformity with Trust Indenture Act............................51

Section 9.06        Reference in Notes to Supplemental Indentures..................51

ARTICLE X Miscellaneous......................................................51

Section 10.01       Compliance Certificates and Opinions, etc......................51

Section 10.02       Form of Documents Delivered to Indenture Trustee................53

Section 10.03       Acts of Noteholders............................................54

Section 10.04       Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating Agencies...............................................54

Section 10.05       Notices to Noteholders; Waiver.................................55

Section 10.06       Alternate Payment and Notice Provisions........................55

Section 10.07      Conflict with Trust Indenture
Act................................56

Section 10.08      Effect of
Headings.............................................56

Section 10.09      Successors and
Assigns.........................................56

Section 10.10
Severability...................................................56

Section 10.11      Benefits of
Indenture........................................56

Section 10.12      Legal
Holidays.................................................56

Section 10.13      GOVERNING
LAW.....................................................56

Section 10.14
Counterparts...................................................57

Section 10.15      Recording of
Indenture........................................57

Section 10.16      Issuer
Obligation...............................................57

Section 10.17      No
Petition....................................................57

Section 10.18
Inspection....................................................57

EXHIBITS
Exhibit A          -Form of Notes
Exhibit B          -Form of 144A Investment Representation
Exhibit C          -Form of Investor Representation Letter
Exhibit D          -Form of Transferor Certificate
Appendix A         -Definitions

This  Indenture,  dated as of June 29, 2006,  is between  GMACM Home Equity Loan
Trust

14446915.1.LITIGATION

2006-HE2, a Delaware statutory trust, as issuer (the "Issuer"), and JPMorgan Chase Bank,
National Association, as indenture trustee (the "Indenture Trustee").


WITNESSETH:

        Each party hereto agrees as follows for the benefit of the other party and for the
equal and ratable benefit of the Noteholders and the Enhancer of the Issuer's Series
2006-HE2 GMACM Home Equity Loan-Backed Term Notes (the "Notes").


GRANTING CLAUSE:

        The Issuer hereby Grants to the Indenture Trustee on the Closing Date, as trustee for
the benefit of the Noteholders and the Enhancer, all of the Issuer's right, title and
interest in and to all accounts, chattel paper, general intangibles, contract rights,
payment intangibles, certificates of deposit, deposit accounts, instruments, documents,
letters of credit, money, advices of credit, investment property, goods and other property
consisting of, arising under or related to whether now existing or hereafter created in any
of the following: (a) the Initial Mortgage Loans and any Subsequent Mortgage Loans, and all
monies due or to become due thereunder; (b) the Custodial Account, Note Payment Account,
Pre-Funding Account and Capitalized Interest Account, and all funds on deposit or credited
thereto from time to time; (c) all hazard insurance policies; and (d) all present and future
claims, demands, causes and choses in action in respect of any or all of the foregoing and
all payments on or under, and all proceeds of every kind and nature whatsoever in respect
of, any or all of the foregoing and all payments on or under, and all proceeds of every kind
and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or
other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts,
acceptances, checks, deposit accounts, rights to payment of any and every kind, and other
forms of obligations and receivables, instruments and other property which at any time
constitute all or part of or are included in the proceeds of any of the foregoing
(collectively, the "Trust Estate" or the "Collateral").


        The foregoing Grant is made in trust to secure the payment of principal of and

interest  on, and any other  amounts  owing in respect  of, the  Notes,  equally  and ratably
without  prejudice,  priority or distinction,  and to secure compliance with the provisions of
this Indenture, all as provided in this Indenture.

The  foregoing  Grant shall  inure to the benefit of the  Enhancer in respect of draws
made on the Policy and amounts  owing from time to time  pursuant to the  Insurance Agreement
(regardless of whether such amounts relate to the Notes or the  Certificates),  and such Grant
shall  continue  in full force and  effect for the  benefit  of the  Enhancer  until all such
amounts owing to it have been repaid in full.

The Indenture  Trustee,  as trustee on behalf of the  Noteholders,  acknowledges such
Grant,  accepts the trust under this Indenture in accordance  with the  provisions hereof and
agrees to perform its duties as Indenture Trustee as required herein.

---

ARTICLE I

Definitions

Section 1.01  Definitions.  For all  purposes of this  Indenture,  except as otherwise
expressly  provided herein or unless the context  otherwise  requires,  capitalized terms not
otherwise  defined  herein shall have the meanings  assigned to such terms in the Definitions
attached  hereto  as  Appendix  A,  which is  incorporated  by  reference  herein.  All other
capitalized terms used herein shall have the meanings specified herein.

Section 1.02  Incorporation  by  Reference  of  Trust  Indenture  Act.  Whenever this
Indenture  refers to a provision of the Trust  Indenture  Act (the "TIA"),  such provision is
incorporated  by  reference  in and made a part of this  Indenture.  The  following  TIA terms
used in this Indenture have the following meanings:

"Commission" means the Securities and Exchange Commission.

"indenture securities" means the Notes.

"indenture security holder" means a Noteholder.

"indenture to be qualified" means this Indenture.

"indenture trustee" or "institutional trustee" means the Indenture Trustee.

"obligor" on the  indenture  securities  means the Issuer and any other obligor
on the indenture securities.

All other TIA terms used in this Indenture that are defined by TIA, defined by
TIA reference to another  statute or defined by Commission  rule have the meaning assigned to
them by such definitions.

Section 1.03  Rules of Construction. Unless the context otherwise requires:

(a)a term has the meaning assigned to it;

(b)an accounting term not otherwise  defined has the meaning  assigned to it in
accordance with generally accepted accounting principles as in effect from time to time;

(c)"or" includes "and/or";

(d)"including" means "including without limitation";

(e)words in the  singular  include  the plural and words in the plural include
the singular;

(f)the term "proceeds" has the meaning ascribed thereto in the UCC; and

(g)any  agreement,  instrument  or statute  defined or referred to herein or in
any  instrument  or  certificate  delivered  in  connection  herewith  means  such  agreement,
instrument  or statute as from time to time  amended,  modified or  supplemented  and includes
(in  the  case of  agreements  or  instruments)  references  to all  attachments  thereto and
instruments  incorporated  therein;  references  to  a  Person  are  also  to  its  permitted
successors and assigns.

---

ARTICLE II

Original Issuance of Notes

Section 2.01  Form. The Notes,  together with the Indenture  Trustee's  certificate of

authentication, shall be in substantially the form set forth in Exhibit A, with such
appropriate insertions, omissions, substitutions and other variations as are required or
permitted by this Indenture and may have such letters, numbers or other marks of
identification and such legends or endorsements placed thereon as may, consistently
herewith, be determined by the officers executing the Notes, as evidenced by their execution
thereof. Any portion of the text of any Note may be set forth on the reverse thereof, with
an appropriate reference thereto on the face of such Note.

The Notes shall be typewritten, printed, lithographed or engraved or produced by any
combination of these methods, all as determined by the Authorized Officers executing such
Notes, as evidenced by their execution of such Notes.

The terms of the Notes set forth in Exhibit A are part of the terms of this
Indenture.

Section 2.02  Execution, Authentication and Delivery.  The Notes shall be executed on
behalf of the Issuer by any of its Authorized Officers. The signature of any such
Authorized Officer on the Notes may be manual or facsimile.

Notes bearing the manual or facsimile signature of individuals who were at any time
Authorized Officers of the Issuer shall bind the Issuer, notwithstanding that such
individuals or any of them have ceased to hold such offices prior to the authentication and
delivery of such Notes or did not hold such offices at the date of such Notes.

The Indenture Trustee shall upon Issuer Request authenticate and deliver Notes for
original issue in an amount equal to the Initial Aggregate Note Balance. The Class A-1,
Class A-2, Class A-3 and Class A-4 Notes shall have initial principal or notional amounts of
the Initial Class A-1 Note Balance, Initial Class A-2 Note Balance, Initial Class A-3 Note
Balance and Initial Class A-4 Note Balance, respectively.

Each Note shall be dated the date of its authentication. The Notes shall be issuable
as registered Book-Entry Notes, and the Notes shall be issuable in minimum denominations of
$25,000 and integral multiples of $1,000 in excess thereof.

No Note shall be entitled to any benefit under this Indenture or be valid or
obligatory for any purpose, unless there appears on such Note a certificate of

14446915.1.LITIGATION

authentication  substantially  in the form  provided  for  herein  executed  by the  Indenture
Trustee by the manual  signature of one of its authorized  signatories,  and such certificate
upon any Note shall be conclusive  evidence,  and the only  evidence,  that such Note has been
duly authenticated and delivered hereunder.

ARTICLE III

Covenants

    Section 3.01  Collection  of  Payments  with  Respect  to  the  Mortgage  Loans.  The
Indenture  Trustee shall  establish and maintain with itself the Note Payment Account in which
the Indenture  Trustee shall,  subject to the terms of this  paragraph,  deposit,  on the same
day as it is received from the Servicer,  each  remittance  received by the Indenture  Trustee
with  respect  to the  Mortgage  Loans.  The  Indenture  Trustee  shall make all  payments  of
principal of and interest on the Notes,  subject to Section 3.03  as provided in Section 3.05
herein from monies on deposit in the Note Payment Account.

    Section 3.02  Maintenance  of Office or Agency.  The Issuer will  maintain in the City
of New York, New York, an office or agency where,  subject to  satisfaction  of  conditions set
forth herein,  Notes may be surrendered for  registration  of transfer or exchange,  and where
notices  and demands to or upon the Issuer in respect of the Notes and this  Indenture  may be
served.  The Issuer  hereby  initially  appoints the  Indenture  Trustee to serve as its agent
for the  foregoing  purposes.  If at any time  the  Issuer  shall  fail to  maintain  any such
office or agency or shall fail to furnish the  Indenture  Trustee  with the  address  thereof,
such  surrenders,  notices and demands may be made or served at the  Corporate  Trust Office,
and the  Issuer  hereby  appoints  the  Indenture  Trustee  as its agent to  receive  all such
surrenders, notices and demands.

    Section 3.03  Money for  Payments to Be Held in Trust;  Paying  Agent.  As provided in
Section  3.01,  all  payments of amounts due and payable with  respect to any Notes that are to

be made from amounts  withdrawn from the Note Payment  Account  pursuant to Section 3.01 shall
be made on behalf of the  Issuer by the  Indenture  Trustee  or by the  Paying  Agent, and no
amounts so withdrawn  from the Note  Payment  Account for payments of Notes shall be paid over
to the Issuer  except as  provided  in this  Section  3.03.  The Issuer  hereby  appoints the
Indenture  Trustee to act as  initial  Paying  Agent  hereunder.  The  Issuer  will cause each
Paying  Agent  other  than the  Indenture  Trustee  to execute  and  deliver to the  Indenture
Trustee an instrument  in which such Paying Agent shall agree with the Indenture  Trustee (and
if the  Indenture  Trustee  acts as  Paying  Agent,  it  hereby  so  agrees),  subject to the
provisions of this Section 3.03, that such Paying Agent will:

        (a)   hold all sums held by it for the payment of amounts due with respect to
the Notes in trust for the benefit of the Persons  entitled  thereto  until such sums shall be
paid to such  Persons or  otherwise  disposed of as herein  provided and pay such sums to such
Persons as herein provided;

        (b)   give the  Indenture  Trustee  and the  Enhancer  written  notice of any
default by the Issuer of which it has actual  knowledge in the making of any payment required
to be made with respect to the Notes;

        (c)   at any  time  during  the  continuance  of any  such  default, upon the
written request of the Indenture  Trustee,  forthwith pay to the Indenture Trustee all sums so
held in trust by such Paying Agent;

        (d)   immediately  resign as Paying Agent and  forthwith  pay to the  Indenture
Trustee  all sums held by it in trust for the  payment  of Notes,  if at any time it ceases to
meet the standards required to be met by a Paying Agent at the time of its appointment;

        (e)   comply  with  all  requirements  of  the  Code  with  respect  to the
withholding  from any payments  made by it on any Notes of any  applicable  withholding taxes
imposed  thereon and with  respect to any  applicable  reporting  requirements  in connection
therewith; and

        (f)   deliver to the Indenture  Trustee a copy of the statement to Noteholders
prepared  with respect to each Payment Date by the Servicer  pursuant to  Section 4.01 of the
Servicing Agreement.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, by Issuer Request direct any Paying Agent to pay to the Indenture Trustee all sums held in trust by such Paying Agent, such sums to be held by the Indenture Trustee upon the same trusts as those upon which the sums were held by such Paying Agent; and upon such payment by any Paying Agent to the Indenture Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Subject to applicable laws with respect to escheat of funds, any money held by the Indenture Trustee or any Paying Agent in trust for the payment of any amount due with respect to any Note and remaining unclaimed for one year after such amount has become due and payable shall be discharged from such trust and be paid to the Issuer on Issuer Request; and the Noteholder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof (but only to the extent of the amounts so paid to the Issuer), and all liability of the Indenture Trustee or such Paying Agent with respect to such trust money shall thereupon cease; provided, however, that the Indenture Trustee or such Paying Agent, before being required to make any such repayment, shall at the expense and direction of the Issuer cause to be published once, in an Authorized Newspaper, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer. The Indenture Trustee may also adopt and employ, at the expense and direction of the Issuer, any other reasonable means of notification of such repayment (including, but not limited to, mailing notice of such repayment to the Enhancer and Noteholders of the Notes which have been called but have not been surrendered for redemption or whose right to or interest in monies due and payable but not claimed is determinable from the records of the Indenture Trustee or of any Paying Agent, at the last address of record for each such Noteholder).

Section 3.04 Existence. The Issuer will keep in full effect its existence, rights and franchises as a statutory trust under the laws of the State of Delaware (unless it

becomes,  or any successor  Issuer  hereunder is or becomes,  organized  under the laws of any
other  state or of the United  States of  America,  in which case the Issuer will keep in full
effect its existence,  rights and franchises  under the laws of such other  jurisdiction)  and
will obtain and preserve its  qualification to do business in each  jurisdiction in which such
qualification  is or shall be necessary to protect the  validity  and  enforceability  of this
Indenture,  the Notes, the Mortgage  Loans and each other  instrument or agreement included in
the Trust Estate.

        Section 3.05  Priority of Distributions; Defaulted Interest.

(a)      In  accordance  with  Section 3.03(a)  of the  Servicing  Agreement,  the priority of
distributions  on each Payment Date from Principal  Collections and Interest  Collections with
respect to the Mortgage  Loans,  any optional  advance of delinquent  principal or interest on
the  Mortgage  Loans  made by the  Servicer in respect of the related  Collection  Period,  any
Policy  Draw  Amount  deposited  into the Note  Payment  Account  (to be applied  solely with
respect  to  the  payment  of  amounts  described  in  clauses  (i)  and  (vi)  under this
Section 3.05(a)),  and  any  amounts  transferred  to  the  Note  Payment  Account  from the
Pre-Funding  Account and Capitalized  Interest Account  pursuant to Sections 3.18  and 3.19 of
the Servicing Agreement, is as follows:

                (i)    from Interest  Collections,  to the  Enhancer,  the amount of the
        premium  for the Policy  and any unpaid  premium  for the  Policy  from prior Payment
        Dates, with  interest thereon as provided  in the  Insurance  Agreement;

                (ii)   from Interest  Collections,  any Capitalized  Interest Requirement
        pursuant to  Section 3.19(b)  of the  Servicing  Agreement  and any Policy Draw Amount
        with  respect to the Notes  deposited  into the Note  Payment  Account on such Payment
        Date pursuant to Section 3.28(a)(ii),  to the Note Payment Account, for payment by the
        Paying  Agent to the  Noteholders,  interest  for the related  Interest  Period at the
        related Note Rate on the related Note Balance  immediately prior to such Payment Date,
        excluding any Relief Act Shortfalls  allocated  thereto  pursuant to Section 3.05(f),
        plus any such amount remaining unpaid from prior Payment Dates;

(iii) from Principal Collections, for payment by the Paying Agent to the Noteholders, as a distribution of principal on the Notes, the Principal Distribution Amount for such Payment Date to be allocated to each Class of Notes as described in Section 3.05(b) below, until the Note Balances thereof have been reduced to zero;

(iv) from Excess Spread, for payment by the Paying Agent to each Class of Notes, as a distribution of principal on the Notes, in the priority set forth in section 3.05(b), an amount equal to the Liquidation Loss Distribution Amount (excluding Liquidation Loss Amounts that have been allocated to the reduction of the Note Balance of the Notes pursuant to Section 3.05(c) hereof) until the Note Balance of each Class of Notes has been reduced to zero;

(v) to the Enhancer, to reimburse it for prior draws made on the Policy, with interest thereon as provided in the Insurance Agreement;

(vi) from Excess Spread, or payment by the Paying Agent to the Noteholders of the Class of Notes in the priority set forth in Section 3.05(b), the Overcollateralization Increase Amount, if any, until the Note Balance of each Class of Notes has been reduced to zero;

(vii) to the Enhancer, any amounts owed to the Enhancer pursuant to the Insurance Agreement other than amounts specified in clauses (i) or (vi) above;

(viii) to the Indenture Trustee, any amounts owing to the Indenture Trustee pursuant to Section 6.07 to the extent remaining unpaid; and

(ix) any remaining amount, to the Distribution Account, for distribution to the holders of the Certificates by the Certificate Paying Agent in accordance with the Trust Agreement;

provided, that on the Final Payment Date, the amount that is required to be paid pursuant to clause (iii) above shall be equal to the Note Balance immediately prior to such Payment Date.

Amounts distributed to the Noteholders pursuant to the above clauses (ii),

(iii), (iv) and (vi) from Interest Collections, Principal Collections and the Policy Draw
Amount shall be treated for tax purposes as distributions with respect to the REMIC II
Regular Interests A-1, A-2, A-3 and A-4, respectively. Amounts distributed pursuant to
clause (ix) shall be treated as having been distributed to the REMIC II Regular Interest
SB-IO.

On each Payment Date, the Paying Agent shall apply, from amounts on
deposit in the Note Payment Account, and in accordance with the Servicing Certificate, the
amounts set forth above in the order of priority set forth in Section 3.05(a).

Amounts paid to Noteholders shall be paid in respect of the Notes in
accordance with the applicable percentage as set forth in Section 3.05(e). Interest on the
Notes will be computed on the basis of a 360-day year consisting of twelve 30-day months.
Any installment of interest or principal payable on any Note that is punctually paid or duly
provided for by the Issuer on the applicable Payment Date shall be paid to the Noteholder of
record thereof on the immediately preceding Record Date by wire transfer to an account
specified in writing by such Noteholder reasonably satisfactory to the Indenture Trustee, or
by check or money order mailed to such Noteholder at such Noteholder's address appearing in
the Note Register, the amount required to be distributed to such Noteholder on such Payment
Date pursuant to such Noteholder's Notes; provided, that the Indenture Trustee shall not pay
to any such Noteholder any amounts required to be withheld from a payment to such Noteholder
by the Code.

(b)    The Principal Distribution Amount distributable pursuant to Section 3.05(a)(iii),
Liquidation Loss Distribution Amounts distributable to the holders of the Notes pursuant to
Section 3.05(a)(iv) and Overcollateralization Increase Amounts distributable to the holders
of the Notes pursuant to Section 3.05(a)(vi) will be to the Class A-1, Class A-2, Class A-3
and Class A-4 Notes, in that order, in each case until the Note Balance thereof has been
reduced to zero;

(c)    Principal of each Note shall be due and payable in full on the Final Payment Date as
provided in the applicable form of Note set forth in Exhibits A. All principal payments on

the Notes shall be made in accordance  with the priorities set forth in  Sections 3.05(a) and
3.05(b)  to the  Noteholders  entitled  thereto  in  accordance  with the  related Percentage
Interests  represented  thereby.  Upon written notice to the Indenture  Trustee by the Issuer,
the  Indenture  Trustee  shall notify the Person in  the name of which a Note is registered at
the close of business  on the Record  Date  preceding  the Final  Payment  Date or other final
Payment  Date,  as  applicable.  Such notice shall be mailed no later than five  Business Days
prior to the Final  Payment  Date or such other final  Payment  Date and,  unless such Note is
then a Book-Entry  Note,  shall specify that payment of the principal  amount and any interest
due with  respect to such Note at the Final  Payment  Date or such other  final  Payment Date
will be payable  only upon  presentation  and  surrender of such Note,  and shall specify the
place where such Note may be presented and surrendered for such final payment.

On each Payment Date, the  Overcollateralization  Amount  available to cover
any  Liquidation  Loss  Amounts on such Payment Date shall be deemed to be reduced by an amount
equal to such  Liquidation  Loss  Amounts  (except to the extent  that such  Liquidation Loss
Amounts  were  covered  on such  Payment  Date by a payment  in  respect  of  Liquidation Loss
Amounts).

(d)    With respect to any Payment  Date,  interest  payments on the Notes will be reduced by
any  Relief  Act  Shortfalls  for  the  related  Collection  Period  on a pro  rata  basis  in
accordance  with the amount of  interest  payable on the Notes on such  Payment  Date, absent
such reduction.

Section 3.06  Protection of Trust Estate.

(a)    The  Issuer  shall  from  time to time  execute  and  deliver  all  such
supplements  and amendments  hereto  and all such  financing  statements,  continuation
statements,  instruments of further assurance and other instruments,  and will take such other
action necessary or advisable to:

(i)    maintain  or preserve  the lien and  security  interest  (and the
priority thereof) of this Indenture or carry out more effectively the purposes hereof;

(ii)    perfect,  publish  notice of or protect  the validity of any  Grant
made or to be made by this Indenture;

(iii)  cause the Trust to enforce any of the Mortgage Loans; or

(iv)    preserve  and defend  title to the Trust Estate and the  rights of
the Indenture  Trustee and the  Noteholders in such Trust Estate against the claims of
all persons and parties.

(b)    Except as otherwise  provided in this Indenture,  the Indenture  Trustee
shall not remove any portion of the Trust  Estate that  consists of money or is evidenced  by
an  instrument,  certificate  or other writing from the  jurisdiction  in which it was held at
the date of the most recent Opinion of Counsel  delivered  pursuant to  Section 3.07  (or from
the  jurisdiction  in which it was held as  described  in the Opinion of Counsel delivered at
the Closing Date  pursuant to  Section 3.07,  if no Opinion of Counsel has yet been delivered
pursuant to  Section 3.07)  unless the Indenture  Trustee shall have first received an Opinion
of Counsel to the effect that the lien and security  interest  created by this  Indenture with
respect to such property  will  continue to be  maintained  after giving effect to such action
or actions.

The Issuer hereby designates the Indenture Trustee its agent and  attorney-in-fact  to
execute any financing  statement,  continuation  statement or other instrument  required to be
executed pursuant to this Section 3.06.

Section 3.07  Opinions as to Trust Estate.

On the Closing Date,  the Issuer shall furnish to the Indenture  Trustee and the Owner
Trustee an Opinion of Counsel at the  expense of the Issuer  stating  that,  upon delivery of
the Mortgage  Notes  relating to the Initial  Mortgage  Loans to the Indenture  Trustee or the
Custodian in the State of  Pennsylvania,  the Indenture  Trustee will have a perfected, first
priority security interest in such Mortgage Loans.

On or before December 31st in each calendar year,  beginning in 2006, the Issuer shall

furnish to the  Indenture  Trustee an Opinion of Counsel at the  expense of the Issuer
either
stating  that, in the opinion of such  counsel,  no further  action is necessary to
maintain a
perfected,  first  priority  security  interest in the Mortgage Loans until December 31
in the
following  calendar  year or,  if any such  action  is required  to  maintain  such
security
interest in the Mortgage  Loans,  such Opinion of Counsel shall also  describe the
recording,
filing,  re-recording and refiling of this Indenture,  any indentures  supplemental
hereto and
any other  requisite  documents and the execution and filing of any financing  statements
and
continuation  statements  that will, in the opinion of such  counsel,  be required to
maintain
the security interest in the Mortgage Loans until December 31 in the following calendar
year.

Section 3.08  Performance of Obligations; Servicing Agreement.

(a)    The Issuer shall  punctually  perform and observe all of its
obligations
and agreements  contained in this  Indenture,  the Basic  Documents and in the
instruments and
agreements included in the Trust Estate.

(b)    The Issuer may contract  with other  Persons to assist it in
performing
its duties under this  Indenture,  and any  performance of such duties by a Person
identified
to the  Indenture  Trustee in an  Officer's  Certificate  of the Issuer  shall be deemed
to be
action taken by the Issuer.

(c)    The  Issuer  shall not take any  action or permit any action to be
taken
by others that would  release any Person from any of such  Person's  covenants or
obligations
under any of the documents  relating to the Mortgage  Loans or under any  instrument
included
in the Trust  Estate,  or that would result in the  amendment,  hypothecation,
subordination,
termination  or  discharge  of,  or  impair  the  validity  or  effectiveness  of,  any
of the
documents  relating to the Mortgage Loans or any such  instrument,  except such actions
as the
Servicer is expressly permitted to take in the Servicing Agreement.

(d)    The  Issuer  may retain an  administrator  and may enter into
contracts
with  other  Persons  for  the  performance  of  the  Issuer's  obligations  hereunder,
and
performance  of such  obligations  by such Persons shall be deemed to be  performance  of
such
obligations by the Issuer.

Section 3.09  Negative  Covenants.  So long as any Notes are  Outstanding,  the Issuer
shall not:

(a)    except  as  expressly  permitted  by  this  Indenture,  sell, transfer,
exchange or  otherwise  dispose of the Trust  Estate,  unless  directed to do so in writing by
the Indenture Trustee pursuant to Section 5.04 hereof;

(b)    claim  any  credit  on,  or make any  deduction  from the principal  or
interest  payable in respect of, the Notes (other than  amounts  properly  withheld  from such
payments  under the Code) or assert any claim  against  any  present or former Noteholder  by
reason of the payment of the taxes levied or assessed upon any part of the Trust Estate;

(c)    (i)  permit  the  validity  or  effectiveness  of this  Indenture to be
impaired,  or permit the lien of this  Indenture  to be amended,  hypothecated,  subordinated,
terminated  or  discharged,  or  permit  any  Person  to be  released  from any covenants  or
obligations with  respect  to the Notes  under  this  Indenture except  as may be expressly
permitted hereby,  (ii) permit any lien, charge,  excise, claim,  security interest, mortgage
or other  encumbrance  (other than the lien of this  Indenture)  to be created on or extend to
or otherwise  arise  upon or burden  the Trust  Estate or any part  thereof  or any interest
therein or the proceeds  thereof or (iii) permit  the lien of this Indenture not to constitute
a valid first priority security interest in the Trust Estate; or

(d)    impair or cause to be impaired  the  Issuer's  interest in the Mortgage
Loans,  the  Purchase  Agreement  or in any other Basic  Document,  if any such  action would
materially and adversely affect the interests of the Noteholders or the Enhancer.

Section 3.10  Annual  Statement  as to  Compliance.  The Issuer  shall  deliver to the
Indenture  Trustee,  within  120  days  after  the  end of  each  fiscal  year  of the Issuer
(commencing  with the fiscal  year ending on  December  31,  2006),  an Officer's Certificate
stating, as to the Authorized Officer signing such Officer's Certificate, that:

(a)    a review of the  activities  of the Issuer  during  such year and of its
performance  under this Indenture and the Trust  Agreement  has been made under such Authorized
Officer's supervision; and

(b)    to the best of such Authorized Officer's knowledge, based on such
review, the Issuer has complied with all conditions and covenants under this Indenture and
the provisions of the Trust Agreement throughout such year, or, if there has been a default
in its compliance with any such condition or covenant, specifying each such default known to
such Authorized Officer and the nature and status thereof.

Section 3.11  Recordation of Assignments.  The Issuer shall enforce the obligation,
if any, of the Sellers under the Purchase Agreement to submit or cause to be submitted for
recordation all Assignments of Mortgages within 60 days of receipt of recording information
by the Servicer.

Section 3.12  Representations and Warranties Concerning the Mortgage Loans.  The
Indenture Trustee, as pledgee of the Mortgage Loans, shall have the benefit of (i) the
representations and warranties made by GMACM in Section 3.1(a) and Section 3.1(b) of the
Purchase Agreement, (ii) the benefit of the representations and warranties made by WG Trust
2003 in Section 3.1(d) of the Purchase Agreement and (iii) the benefit of the
representations and warranties made by GMACM or WG Trust 2003, as applicable, in Section 2
of any Subsequent Transfer Agreement, in each case, concerning the Mortgage Loans and the
right to enforce the remedies against GMACM or WG Trust 2003 provided in Section 3.1(e) of
the Purchase Agreement, as applicable, to the same extent as though such representations and
warranties were made directly to the Indenture Trustee.

Section 3.13  Assignee of Record of the Mortgage Loans.  As pledgee of the Mortgage
Loans, the Indenture Trustee shall hold title to the Mortgage Loans by being named as payee
in the endorsements or assignments of the Mortgage Notes and assignee in the Assignments of
Mortgage to be delivered under Section 2.1 of the Purchase Agreement.  Except as expressly
provided in the Purchase Agreement or in the Servicing Agreement with respect to any
specific Mortgage Loan, the Indenture Trustee shall not execute any endorsement or
assignment or otherwise release or transfer such title to any of the Mortgage Loans until
such time as the remaining Trust Estate may be released pursuant to Section 8.05(b).  The
Indenture Trustee's holding of such title shall in all respects be subject to its fiduciary
obligations to the Noteholders hereunder.

Section 3.14  Servicer  as Agent  and  Bailee of the  Indenture  Trustee.  Solely for
purposes of perfection  under  Section  9-313 or 9-314 of the UCC or other similar applicable
law, rule or  regulation  of the state in which such  property is held by the  Servicer, the
Issuer and the Indenture  Trustee hereby  acknowledge that the Servicer is acting as agent and
bailee of the  Indenture  Trustee in holding  amounts  on  deposit  in the  Custodial Account
pursuant  to Section  3.02 of the  Servicing  Agreement  that are  allocable  to the Mortgage
Loans,  as well as the agent and  bailee of the  Indenture  Trustee  in  holding  any Related
Documents  released to the Servicer  pursuant to Section  3.06(c) of the Servicing Agreement,
and any other  items  constituting  a part of the Trust  Estate  which  from time to time come
into the  possession  of the Servicer.  It is intended  that, by the  Servicer's acceptance of
such agency pursuant to Section 3.02 of the Servicing  Agreement,  the Indenture Trustee, as a
pledgee of the Mortgage Loans,  will be deemed to have  possession of such Related Documents,
such  monies and such other  items for  purposes  of Section  9-313 or 9-314 of the UCC of the
state in which such property is held by the Servicer.

Section 3.15  Investment  Company  Act.  The Issuer  shall not  become an "investment
company" or under the  "control" of an  "investment  company" as such terms are defined in the
Investment Company Act of 1940, as amended (or any successor or amendatory  statute), and the
rules and regulations  thereunder  (taking into account not only the general definition of the
term "investment  company" but also any  available  exceptions  to such general definition);
provided,  however,  that the Issuer shall be in compliance with this Section 3.15 if it shall
have obtained an order exempting it from  regulation as an "investment  company" so long as it
is in compliance with the conditions imposed in such order.

Section 3.16  Issuer May Consolidate, etc.

(a)  The  Issuer  shall  not  consolidate  or merge  with or into  any other
Person, unless:

(i)  the  Person  (if other than the  Issuer)  formed by or surviving
such  consolidation  or merger shall be a Person organized and existing under the laws
of the United  States of America or any state or the  District of  Columbia  and shall

expressly assume, by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form reasonably satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on all Notes and to the Certificate Paying Agent, on behalf of the Certificateholders and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein;

(ii)    immediately after giving effect to such transaction, no Event of Default shall have occurred and be continuing;

(iii)    the Enhancer shall have consented thereto and each Rating Agency shall have notified the Issuer that such transaction will not cause a Rating Event, without taking into account the Policy;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee and the Enhancer) to the effect that such transaction will not have any material adverse tax consequence to the Issuer, any Noteholder or any Certificateholder;

(v)    any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)    the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such consolidation or merger and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

(b)    The Issuer shall not convey or transfer any of its properties or assets, including those included in the Trust Estate, to any Person, unless:

(i)    the Person that acquires by conveyance or transfer the properties and assets of the Issuer the conveyance or transfer of which is hereby restricted shall (A) be a United States citizen or a Person organized and existing under the laws of the United States of America or any state, (B) expressly assumes,

by an indenture supplemental hereto, executed and delivered to the Indenture Trustee, in form satisfactory to the Indenture Trustee, the due and punctual payment of the principal of and interest on all Notes and the performance or observance of every agreement and covenant of this Indenture on the part of the Issuer to be performed or observed, all as provided herein, (C) expressly agrees by means of such supplemental indenture that all right, title and interest so conveyed or transferred shall be subject and subordinate to the rights of Noteholders of the Notes, (D) unless otherwise provided in such supplemental indenture, expressly agrees to indemnify, defend and hold harmless the Issuer against and from any loss, liability or expense arising under or related to this Indenture and the Notes and (E) expressly agrees by means of such supplemental indenture that such Person (or if a group of Persons, then one specified Person) shall make all filings with the Commission (and any other appropriate Person) required by the Exchange Act in connection with the Notes;

(ii)    immediately after giving effect to such transaction, no Default or Event of Default shall have occurred and be continuing;

(iii)   the Enhancer shall have consented thereto, and each Rating Agency shall have notified the Issuer that such transaction will not cause a Rating Event, if determined without regard to the Policy;

(iv)    the Issuer shall have received an Opinion of Counsel (and shall have delivered copies thereof to the Indenture Trustee) to the effect that such transaction will not have any material adverse tax consequence to the Issuer or any Noteholder;

(v)     any action that is necessary to maintain the lien and security interest created by this Indenture shall have been taken; and

(vi)    the Issuer shall have delivered to the Indenture Trustee an Officer's Certificate and an Opinion of Counsel each stating that such conveyance or transfer and such supplemental indenture comply with this Article III and that all conditions precedent herein provided for relating to such transaction have been complied with (including any filing required by the Exchange Act).

Section 3.17  Successor or Transferee.

(a) Upon any consolidation or merger of the Issuer in accordance with Section 3.16(a), the Person formed by or surviving such consolidation or merger (if other than the Issuer) shall succeed to, and be substituted for, and may exercise every right and power of, the Issuer under this Indenture with the same effect as if such Person had been named as the Issuer herein.

(b) Upon a conveyance or transfer of all the assets and properties of the Issuer pursuant to Section 3.16(b), the Issuer shall be released from every covenant and agreement of this Indenture to be observed or performed on the part of the Issuer with respect to the Notes immediately upon the delivery of written notice to the Indenture Trustee of such conveyance or transfer.

Section 3.18  No Other Business.  The Issuer shall not engage in any business other than financing, purchasing, owning and selling and managing the Mortgage Loans and the issuance of the Notes and Certificates in the manner contemplated by this Indenture and the Basic Documents and all activities incidental thereto.

Section 3.19  No Borrowing.  The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes.

Section 3.20  Guarantees, Loans, Advances and Other Liabilities. Except as contemplated by this Indenture or the other Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

Section 3.21  Capital Expenditures.  The Issuer shall not make any expenditure (by

long-term or operating lease or otherwise) for capital assets (either realty or personalty).

Section 3.22 Owner Trustee Not Liable for Certificates or Related Documents. The recitals contained herein shall be taken as the statements of the Issuer, and the Owner Trustee and the Indenture Trustee assume no responsibility for the correctness of the recitals contained herein. The Owner Trustee and the Indenture Trustee make no representations as to the validity or sufficiency of this Indenture or any other Basic Document, of the Certificates (other than the signatures of the Owner Trustee or the Indenture Trustee on the Certificates) or the Notes, or of any Related Documents. The Owner Trustee and the Indenture Trustee shall at no time have any responsibility or liability with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to Certificateholders under the Trust Agreement or the Noteholders under this Indenture, including, the compliance by the Depositor or the Sellers with any warranty or representation made under any Basic Document or in any related document or the accuracy of any such warranty or representation, or any action of the Certificate Paying Agent, the Certificate Registrar or any other person taken in the name of the Owner Trustee or the Indenture Trustee.

Section 3.23 Restricted Payments. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; provided, however, that the Issuer may make, or cause to be made, (x) distributions to the Owner Trustee and the Certificateholders as contemplated by, and to the extent funds are available for such purpose under, the Trust Agreement and (y) payments to the Servicer pursuant to the terms of the Servicing Agreement. The Issuer will not, directly or indirectly, make payments to or distributions from the Custodial Account except in accordance with this Indenture and the other Basic

Documents.

Section 3.24  Notice  of  Events of  Default.  The  Issuer  shall  give the Indenture
Trustee,  the Enhancer and the Rating  Agencies prompt written notice of each Event of Default
hereunder and under the Trust Agreement.

Section 3.25  Further  Instruments  and Acts.  Upon request of the Indenture Trustee,
the Issuer  shall  execute and deliver such  further  instruments  and do such further acts as
may be  reasonably  necessary  or proper to carry out more  effectively  the  purposes of this
Indenture.

Section 3.26  Statements to  Noteholders.  On each Payment Date, each of the Indenture
Trustee and the  Certificate  Registrar  shall make  available  to the  Depositor,  the Owner
Trustee,  each Rating Agency, each Noteholder and each  Certificateholder,  with a copy to the
Enhancer,  the  Servicing  Certificate  provided  to the  Indenture  Trustee  by the Servicer
relating  to such  Payment  Date and  delivered  pursuant  to  Section  4.01 of the Servicing
Agreement.

The Indenture  Trustee will make the Servicing  Certificate  (and, at its option, any
additional  files  containing the same  information in an alternative  format)  available each
month to  Securityholders  and the  Enhancer,  and other  parties  to this  Indenture via the
Indenture  Trustee's  internet  website.  The  Indenture  Trustee's  internet  website shall
initially  be  located  at  "www.jpmorgan.com/sfr."  Assistance  in using the  website can be
obtained  by  calling  the  Indenture  Trustee's  customer  service  desk at  (877)  722-1095.
Parties  that are unable to use the above  distribution  options are  entitled to have a paper
copy mailed to them via first class mail by calling the customer  service desk and indicating
such.  The  Indenture  Trustee  shall  have  the  right to  change  the way the  statement  to
Securityholders  are  distributed in order to make such  distribution  more convenient or more
accessible to the above parties and the  Indenture  Trustee shall provide  timely and adequate
notification to all above parties regarding any such changes.

Section 3.28  Payments under the Policy.

(a)(i) If the  Servicing  Certificate  specifies  a Policy  Draw Amount for any

Payment Date, the Indenture Trustee shall make a draw on the Policy in an amount specified
in the Servicing Certificate for such Payment Date or, if no amount is specified, the
Indenture Trustee shall make a draw on the Policy in the amount by which the amount on
deposit in the Note Payment Account is less than interest due on the Notes on such Payment
Date.

(ii) The Indenture Trustee shall deposit or cause to be deposited such Policy
Draw Amount into the Note Payment Account on such Payment Date to the extent such amount
relates to clause (a) of the definition of "Deficiency Amount" or clause (b) of the
definition of "Insured Payment".

(b) The Indenture Trustee shall submit, if a Policy Draw Amount is specified
in any statement to Securityholders prepared pursuant to Section 4.01 of the Servicing
Agreement, the Notice (in the form attached as Exhibit A to the Policy) to the Enhancer no
later than 12:00 noon, New York City time, on the second (2nd) Business Day prior to the
applicable Payment Date.

Section 3.29  Replacement/Additional Enhancement. The Issuer (or the Servicer on its
behalf) may, at its expense, in accordance with and upon satisfaction of the conditions set
forth herein, but shall not be required to, obtain a surety bond, letter of credit, guaranty
or reserve account as a Permitted Investment for amounts on deposit in the Capitalized
Interest Account, or may arrange for any other form of additional credit enhancement;
provided, that after prior notice thereto, no Rating Agency shall have informed the Issuer
that a Rating Event would occur as a result thereof (without taking the Policy into
account); and provided further, that the issuer of any such instrument or facility and the
timing and mechanism for drawing on such additional enhancement shall be acceptable to the
Indenture Trustee and the Enhancer. It shall be a condition to procurement of any such
additional credit enhancement that there be delivered to the Indenture Trustee and the
Enhancer (a) an Opinion of Counsel, acceptable in form to the Indenture Trustee and the
Enhancer, from counsel to the provider of such additional credit enhancement with respect to
the enforceability thereof and such other matters as the Indenture Trustee or the Enhancer

may require and (b) an Opinion of Counsel to the effect that the procurement of such
additional enhancement would not (i) adversely affect in any material respect the tax status
of the Notes or the Certificates or (ii) cause the Issuer to be taxable as an association
(or a publicly traded partnership) for federal income tax purposes or to be classified as a
taxable mortgage pool within the meaning of Section 7701(i) of the Code.

Section 3.30  Additional Representations of Issuer.

The Issuer hereby represents and warrants to the Indenture Trustee that as of the
Closing Date (which representations and warranties shall survive the execution of this
Indenture):

(a)    This Indenture creates a valid and continuing security interest (as defined in the
applicable UCC) in the Mortgage Notes in favor of the Indenture Trustee, which
security interest is prior to all other Liens (except as expressly permitted
otherwise in this Indenture), and is enforceable as such as against creditors of
and purchasers from the Issuer.

(b)    The Mortgage Notes constitute "instruments" within the meaning of the applicable UCC.

(c)    The Issuer owns and has good and marketable title to the Mortgage Notes free and
clear of any Lien of any Person.

(d)    The original executed copy of each Mortgage Note (except for any Mortgage Note with
respect to which a Lost Note Affidavit has been delivered to the Custodian) has
been delivered to the Custodian.

(e)    The Issuer has received a written acknowledgment from the Custodian that the
Custodian is acting solely as agent of the Indenture Trustee for the benefit of
the Noteholders and the Enhancer.

(f)    Other than the security interest granted to the Indenture Trustee pursuant to this
Indenture, the Issuer has not pledged, assigned, sold, granted a security
interest in, or otherwise conveyed any of the Mortgage Notes. The Issuer has not
authorized the filing of and is not aware of any financing statements against the
Issuer that include a description of collateral covering the Mortgage Notes other

14446915.1.LITIGATION

than any financing statement relating to the security interest granted to the
Indenture Trustee hereunder or any security interest that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

(g)    None of the Mortgage Notes has any marks or notations indicating that they have been
pledged, assigned or otherwise conveyed to any Person other than the Indenture
Trustee, except for (i) any endorsements that are part of a complete chain of
endorsements from the originator of the Mortgage Note to the Indenture Trustee,
and (ii) any marks or notations pertaining to Liens that have been terminated or
released.

(h)    None of the provisions of this Section 3.30 shall be waived without the prior written
confirmation from Standard & Poor's that such waiver shall not result in a
reduction or withdrawal of the then-current rating of the Notes.

---

ARTICLE IV

The Notes; Satisfaction And Discharge Of Indenture

Section 4.01   The Notes

(a) The Notes shall be registered in the name of a nominee designated by the
Depository. Beneficial Owners will hold interests in the Notes through the book-entry
facilities of the Depository in minimum initial Note Balances of $25,000 and integral
multiples of $1,000 in excess thereof.

The Indenture Trustee may for all purposes (including the making of payments due on
the Notes) deal with the Depository as the authorized representative of the Beneficial
Owners with respect to the Notes for the purposes of exercising the rights of Noteholders of
Notes hereunder. Except as provided in the next succeeding paragraph of this Section 4.01,
the rights of Beneficial Owners with respect to the Notes shall be limited to those
established by law and agreements between such Beneficial Owners and the Depository and
Depository Participants. Except as provided in Section 4.08, Beneficial Owners shall not be

entitled to definitive certificates for the Notes as to which they are the Beneficial Owners. Requests and directions from, and votes of, the Depository as Noteholder of the Notes shall not be deemed inconsistent if they are made with respect to different Beneficial Owners. The Indenture Trustee may establish a reasonable record date in connection with solicitations of consents from or voting by Noteholders and give notice to the Depository of such record date. Without the consent of the Issuer and the Indenture Trustee, no Term Note may be transferred by the Depository except to a successor Depository that agrees to hold such Note for the account of the Beneficial Owners.

In the event the Depository Trust Company resigns or is removed as Depository, the Indenture Trustee, at the request of the Servicer and with the approval of the Issuer may appoint a successor Depository. If no successor Depository has been appointed within 30 days of the effective date of the Depository's resignation or removal, each Beneficial Owner shall be entitled to certificates representing the Notes it beneficially owns in the manner prescribed in Section 4.08.

The Notes shall, on original issue, be executed on behalf of the Issuer by the Owner Trustee, not in its individual capacity but solely as Owner Trustee and upon Issuer Order, authenticated by the Note Registrar and delivered by the Indenture Trustee to or upon the order of the Issuer.

Section 4.02 Registration of and Limitations on Transfer and Exchange of Notes; Appointment of Certificate Registrar. The Issuer shall cause to be kept at the Indenture Trustee's Corporate Trust Office a Note Register in which, subject to such reasonable regulations as it may prescribe, the Note Registrar shall provide for the registration of Notes and of transfers and exchanges of Notes as herein provided. The Issuer hereby appoints the Indenture Trustee as the initial Note Registrar.

Subject to the restrictions and limitations set forth below, upon surrender for registration of transfer of any Note at the Corporate Trust Office, the Issuer shall execute, and the Note Registrar shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes in authorized initial Balances evidencing the same aggregate Percentage Interests.

Subject to the foregoing, at the option of the Noteholders, Notes may be exchanged
for other Notes of like tenor, in each case in authorized initial Note Balances evidencing
the same aggregate Percentage Interests, upon surrender of the Notes to be exchanged at the
Corporate Trust Office of the Note Registrar. Whenever any Notes are so surrendered for
exchange, the Issuer shall execute and the Note Registrar shall authenticate and deliver the
Notes which the Noteholder making the exchange is entitled to receive. Each Note presented
or surrendered for registration of transfer or exchange shall (if so required by the Note
Registrar) be duly endorsed by, or be accompanied by a written instrument of transfer in
form reasonably satisfactory to the Note Registrar duly executed by, the Noteholder thereof
or his attorney duly authorized in writing with such signature guaranteed by a commercial
bank or trust company located or having a correspondent located in The City of New York.
Notes delivered upon any such transfer or exchange will evidence the same obligations, and
will be entitled to the same rights and privileges, as the Notes surrendered.

No service charge shall be imposed for any registration of transfer or exchange of
Notes, but the Note Registrar shall require payment of a sum sufficient to cover any tax or
governmental charge that may be imposed in connection with any registration of transfer or
exchange of Notes.

All Notes surrendered for registration of transfer and exchange shall be cancelled by
the Note Registrar and delivered to the Indenture Trustee for subsequent destruction without
liability on the part of either.

The Issuer hereby appoints the Indenture Trustee as Certificate Registrar to keep at
its Corporate Trust Office a Certificate Register pursuant to Section 3.09 of the Trust
Agreement in which, subject to such reasonable regulations as it may prescribe, the
Certificate Registrar shall provide for the registration of Certificates and of transfers
and exchanges thereof pursuant to Section 3.05 of the Trust Agreement. The Indenture
Trustee hereby accepts such appointment.

Each purchaser of a Note, by its acceptance of the Note, shall be deemed to have
represented that the acquisition of such Note by the purchaser does not constitute or give

14446915.1.LITIGATION

rise to a prohibited transaction under Section 406 of ERISA or Section 4975 of the Code, for
which no statutory, regulatory or administrative exemption is available.

Section 4.03 Mutilated, Destroyed, Lost or Stolen Notes. If (i) any mutilated Note
is surrendered to the Indenture Trustee, or the Indenture Trustee receives evidence to its
satisfaction of the destruction, loss or theft of any Note, and (ii) there is delivered to
the Indenture Trustee such security or indemnity as may be required by it and the Issuer to
hold the Issuer and the Indenture Trustee harmless, then, in the absence of notice to the
Issuer, the Note Registrar or the Indenture Trustee that such Note has been acquired by a
bona fide purchaser, and provided that the requirements of Section 8 405 of the UCC are met,
the Issuer shall execute, and upon its request the Indenture Trustee shall authenticate and
deliver, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Note, a
replacement Note of the same class; provided, however, that if any such destroyed, lost or
stolen Note, but not a mutilated Note, shall have become or within seven days shall be due
and payable, instead of issuing a replacement Note, the Issuer may pay such destroyed, lost
or stolen Note when so due or payable without surrender thereof. If, after the delivery of
such replacement Note or payment of a destroyed, lost or stolen Note pursuant to the proviso
to the preceding sentence, a bona fide purchaser of the original Note in lieu of which such
replacement Note was issued presents for payment such original Note, the Issuer and the
Indenture Trustee shall be entitled to recover such replacement Note (or such payment) from
the Person to whom it was delivered or any Person taking such replacement Note from such
Person to whom such replacement Note was delivered or any assignee of such Person, except a
bona fide purchaser, and shall be entitled to recover upon the security or indemnity
provided therefor to the extent of any loss, damage, cost or expense incurred by the Issuer
or the Indenture Trustee in connection therewith.

Upon the issuance of any replacement Note under this Section 4.03, the Issuer may
require the payment by the Noteholder of such Note of a sum sufficient to cover any tax or
other governmental charge that may be imposed in relation thereto and any other reasonable
expenses (including the fees and expenses of the Indenture Trustee) connected therewith.

Every  replacement  Note issued  pursuant to this  Section 4.03  in replacement of any
mutilated,  destroyed,  lost  or  stolen  Note  shall  constitute  an  original additional
contractual  obligation  of the  Issuer,  whether  or not the  mutilated,  destroyed, lost or
stolen  Note shall be at any time  enforceable  by anyone,  and shall be  entitled  to all the
benefits  of this  Indenture  equally  and  proportionately  with any and all other Notes duly
issued hereunder.

The  provisions  of this  Section 4.03  are exclusive and shall preclude (to the extent
lawful)  all other  rights  and  remedies  with  respect  to the  replacement  or payment  of
mutilated, destroyed, lost or stolen Notes.

Section 4.04  Persons Deemed Owners.  Prior to due  presentment  for registration  of
transfer of any Note,  the Issuer,  the  Indenture  Trustee and any agent of the Issuer or the
Indenture  Trustee  may treat the Person  in whose name any Note is  registered  (as of the day
of  determination)  as the  owner of such  Note  for the  purpose  of  receiving payments  of
principal  of and  interest,  if any,  on such  Note and for all  other  purposes whatsoever,
whether or not such Note be overdue,  and none of the  Issuer,  the  Indenture  Trustee or any
agent of the Issuer or the Indenture Trustee shall be affected by notice to the contrary.

Section 4.05  Cancellation.  All  Notes  surrendered  for  payment, registration  of
transfer,  exchange  or  redemption  shall,  if  surrendered  to any  Person  other  than the
Indenture  Trustee,  be delivered to the Indenture Trustee and shall be promptly cancelled by
the  Indenture  Trustee.  The  Issuer  may at any time  deliver to the  Indenture  Trustee for
cancellation any Notes previously  authenticated and delivered  hereunder which the Issuer may
have  acquired  in any  manner  whatsoever,  and all  Notes so  delivered  shall  be promptly
cancelled  by the  Indenture  Trustee.  No  Notes  shall  be  authenticated  in  lieu of or in
exchange  for any Notes  cancelled  as  provided in this  Section  4.05,  except as expressly
permitted  by this  Indenture.  All  cancelled  Notes  may  be  held  or  disposed  of by the
Indenture  Trustee in accordance  with its standard  retention or disposal policy as in effect
at the time unless the Issuer  shall  direct by an Issuer  Request  that they be destroyed or
returned to it; provided,  however,  that such Issuer Request is timely and the Notes have not
been previously disposed of by the Indenture Trustee.

Section 4.06  Book-Entry  Notes. The Notes,  upon original  issuance,  shall be issued
in the form of typewritten Notes  representing  the Book-Entry  Notes, to be delivered to The
Depository  Trust  Company,  the initial  Depository,  by, or on behalf of, the  Issuer. Such
Notes shall  initially  be  registered  on the Note  Register  in the name of Cede & Co., the
nominee of the initial  Depository,  and no Beneficial  Owner shall receive a Definitive Note
representing  such Beneficial  Owner's  interest  in such Note, except  as provided  in
Section 4.08.  Unless and until  definitive,  fully registered Notes (the "Definitive Notes")
have been issued to Beneficial Owners pursuant to Section 4.08:

(a) the provisions of this Section 4.06 shall be in full force and effect;

(b) the Note  Registrar  and the  Indenture  Trustee  shall be  entitled to deal
with the  Depository  for all purposes of this  Indenture  (including the payment of principal
of and interest on the Notes and the giving of  instructions  or directions  hereunder) as the
sole holder of the Notes, and shall have no obligation to the Beneficial Owners;

(c) to the extent that the  provisions  of this  Section 4.06  conflict with any
other provisions of this Indenture, the provisions of this Section 4.06 shall control;

(d) the  rights  of  Beneficial  Owners  shall be  exercised  only  through the
Depository  and shall be limited  to those  established  by law and  agreements  between such
Owners  of  Notes  and  the  Depository  or the  Depository  Participants.  Unless  and until
Definitive  Notes are issued  pursuant  to Section  4.08,  the  initial  Depository  will make
book-entry  transfers among the Depository  Participants and receive and transmit payments of
principal of and interest on the Notes to such Depository Participants; and

(e) whenever this Indenture  requires or permits  actions to be taken based upon
instructions  or directions of Noteholders of Notes  evidencing a specified  percentage of the
Note Balances of the Notes,  the Depository  shall be deemed to represent such percentage only
to the extent that it has  received  instructions  to such effect  from  Beneficial  Owners or
Depository  Participants  owning or representing,  respectively,  such required percentage of
the  beneficial  interest in the Notes and has delivered  such  instructions  to the Indenture
Trustee.

Section 4.07  Notices to Depository.  Whenever a notice or other  communication to the
Noteholders of the Notes is required under this Indenture,  unless and until  Definitive Notes
shall have been issued to Beneficial  Owners  pursuant to Section 4.08, the Indenture Trustee
shall give all such notices and  communications  specified  herein to be given to Noteholders
of the Notes to the Depository, and shall have no obligation to the Beneficial Owners.

Section 4.08  Definitive  Notes. If (i) the  Depositor  determines that the Depository
is no longer willing or able to properly  discharge its  responsibilities  with respect to the
Notes and the Depositor is unable to locate a qualified  successor, (ii) the Depositor, with
the  prior  consent  of  the  Beneficial  Owners,  notifies  the  Indenture  Trustee and the
Depository that it has elected to terminate the book-entry  system through the Depository,  or
(iii) after  the occurrence of an Event of Default,  Beneficial  Owners of Notes representing
beneficial  interests  aggregating  at least a majority of the aggregate  Term Note Balance of
the Notes advise the  Depository  in writing  that the  continuation  of a  book-entry system
through the Depository is no longer in the best interests of the Beneficial  Owners, then the
Depository shall notify all Beneficial  Owners and the Indenture  Trustee of the occurrence of
any such event and of the  availability of Definitive  Notes to Beneficial  Owners requesting
the same.  Upon  surrender  by the  Depository  to the  Indenture  Trustee of the typewritten
Notes  representing  the Book-Entry  Notes by the  Depository  (or Percentage  Interest of the
Book-Entry  Notes  being  transferred  pursuant  to clause  (iii)  above), accompanied  by
registration  instructions,  the  Issuer  shall  execute  and  the  Indenture  Trustee shall
authenticate  the Definitive  Notes in accordance  with the  instructions  of the Depository.
None of the  Issuer,  the Note  Registrar  or the  Indenture  Trustee  shall be liable for any
delay in  delivery  of such  instructions,  and each may  conclusively  rely on,  and shall be
protected  in relying on,  such  instructions.  Upon the  issuance of  Definitive  Notes, the
Indenture Trustee shall recognize the Noteholders of the Definitive Notes as Noteholders.

Section 4.09  Tax  Treatment.  The Issuer has  entered  into this  Indenture, and the
Notes will be issued, with the intention  that, for federal,  state and local income, single
business and  franchise  tax  purposes,  the Notes will qualify as (i) regular  interests in a

REMIC as defined in the Code, which will be treated as indebtedness for purposes of such
taxes and (ii) the right to receive payments from outside the REMIC. The Issuer, by
entering into this Indenture, and each Noteholder, by its acceptance of its Note (and each
Beneficial Owner by its acceptance of an interest in the applicable Book-Entry Note),
agree
to treat the Notes for federal, state and local income, single business and franchise tax
purposes as (i) regular interests in a REMIC as defined in the Code, which will be treated
as indebtedness for purposes of such taxes and (ii) the right to receive payments from
outside the REMIC.

Section 4.10   Satisfaction and Discharge of Indenture.   This Indenture shall cease to
be of further effect with respect to the Notes except as to (i) rights of registration of
transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes,
(iii) rights of Noteholders to receive payments of principal thereof and interest thereon,
(iv) Sections 3.03, 3.04, 3.06, 3.09, 3.16, 3.18 and 3.19, (v) the rights, obligations and
immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee
under Section 6.07 and the obligations of the Indenture Trustee under Section 4.11) and (vi)
the rights of Noteholders as beneficiaries hereof with respect to the property so deposited
with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on
written demand of and at the expense of the Issuer, shall execute proper instruments
acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when:

(A)   either:

(1) all Notes theretofore authenticated and delivered (other
than (i) Notes that have been destroyed, lost or stolen and that have
been replaced or paid as provided in Section 4.03 and (ii) Notes for
whose payment money has theretofore been deposited in trust or
segregated and held in trust by the Issuer and thereafter repaid to the
Issuer or discharged from such trust, as provided in Section 3.03) have
been delivered to the Indenture Trustee for cancellation; or

(2) all Notes not theretofore delivered to the Indenture Trustee

for cancellation:

a)  have become due and payable;

b)  will become due and payable at the Final  Payment
Date
within one year; or

c)  have  been  declared   immediately   due  and
payable
pursuant to Section 5.02.

and the Issuer, in the case of (a) and (b) above, has irrevocably  deposited or
caused
to be irrevocably  deposited with the Indenture Trustee cash or direct
obligations of
or obligations  guaranteed by the United States of America (which will mature
prior to
the  date  such  amounts  are  payable),  in  trust  for such  purpose,  in an
amount
sufficient  to  pay  and  discharge  the  entire   indebtedness   on  such  Notes
and
Certificates  then Outstanding not theretofore  delivered to the Indenture
Trustee for
cancellation when due on the Final Payment Date;

(B)   the Issuer  has paid or caused to be paid all other sums
payable
hereunder and under the Insurance Agreement by the Issuer; and

(C)   the  Issuer  has  delivered  to  the  Indenture  Trustee  and
the
Enhancer an Officer's  Certificate and an Opinion of Counsel,  each
meeting the
applicable  requirements of Section 10.01  and each stating that all
conditions
precedent  herein  provided for relating to the  satisfaction  and
discharge of
this Indenture  have been complied with and, if the Opinion of Counsel
relates
to a deposit made in connection with  Section 4.10(A)(2)b.  above, such
opinion
shall  further be to the effect that such  deposit  will not have any
material
adverse  tax  consequences  to  the  Issuer,  any  Noteholders  or
any
Certificateholders.

Section 4.11  Application  of Trust Money.  All monies  deposited  with the
Indenture
Trustee  pursuant  to Section  4.10 hereof  shall be held in trust  and  applied by
it,  in
accordance  with the  provisions  of the  Notes and this  Indenture,  to the  payment,
either
directly or through any Paying Agent or  Certificate  Paying Agent,  as the Indenture
Trustee

may determine, to the Securityholders of Securities, of all sums due and to become
due
thereon for principal and interest; but such monies need not be segregated from other
funds
except to the extent required herein or required by law.

Section 4.12 Subrogation and Cooperation. The Issuer and the Indenture
Trustee
acknowledge that (i) to the extent the Enhancer makes payments under the Policy on
account
of principal of or interest on the Notes, the Enhancer will be fully subrogated
to the
rights the Noteholders to receive such principal and interest, and (ii) the Enhancer
shall
be paid such principal and interest only from the sources and in the manner provided
herein
and in the Insurance Agreement for the payment of such principal and interest.

The Indenture Trustee shall cooperate in all respects with any reasonable
request by
the Enhancer for action to preserve or enforce the Enhancer's rights or interest under
this
Indenture or the Insurance Agreement, consistent with this Indenture and without
limiting
the rights of the Noteholders as otherwise set forth in the Indenture, including
upon the
occurrence and continuance of a default under the Insurance Agreement, a request
(which
request shall be in writing) to take any one or more of the following actions:

(i) institute Proceedings for the collection of all amounts
then
payable on the Notes or under this Indenture in respect to the Notes and all
amounts
payable under the Insurance Agreement and to enforce any judgment obtained
and
collect from the Issuer monies adjudged due;

(ii) sell the Trust Estate or any portion thereof or
rights or
interest therein, at one or more public or private Sales (as defined in Section
5.15
hereof) called and conducted in any manner permitted by law;

(iii) file or record all assignments that have not previously
been
recorded;

(iv) institute Proceedings from time to time for the
complete or
partial foreclosure of this Indenture; and

(v) exercise any remedies of a secured party under the UCC and
take
any other appropriate action to protect and enforce the rights and remedies
of the
Enhancer hereunder.

Following the payment in full of the Notes, the Enhancer shall continue to have all
rights and privileges provided to it under this Section and in all other provisions of this
Indenture, until all amounts owing to the Enhancer have been paid in full.

Section 4.13 Repayment of Monies Held by Paying Agent. In connection with the
satisfaction and discharge of this Indenture with respect to the Notes, all monies then held
by any Paying Agent (other than the Indenture Trustee) under the provisions of this
Indenture with respect to such Notes shall, upon demand of the Issuer, be paid to the
Indenture Trustee to be held and applied according to Section 3.05; and thereupon, such
Paying Agent shall be released from all further liability with respect to such monies.

Section 4.14 Temporary Notes. Pending the preparation of any Definitive Notes, the
Issuer may execute and upon its written direction, the Indenture Trustee may authenticate
and make available for delivery, temporary Notes that are printed, lithographed,
typewritten, photocopied or otherwise produced, in any denomination, substantially of the
tenor of the Definitive Notes in lieu of which they are issued and with such appropriate
insertions, omissions, substitutions and other variations as the officers executing such
Notes may determine, as evidenced by their execution of such Notes.

If temporary Notes are issued, the Issuer will cause Definitive Notes to be prepared
without unreasonable delay. After the preparation of the Definitive Notes, the temporary
Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at
the office or agency of the Indenture Trustee, without charge to the Noteholder. Upon
surrender for cancellation of any one or more temporary Notes, the Issuer shall execute and
the Indenture Trustee shall authenticate and make available for delivery, in exchange
therefor, Definitive Notes of authorized denominations and of like tenor and aggregate
principal amount. Until so exchanged, such temporary Notes shall in all respects be
entitled to the same benefits under this Indenture as Definitive Notes.

ARTICLE V

Default And Remedies

        Section 5.01  Events of Default.  The Issuer shall  deliver to the  Indenture Trustee
and the  Enhancer,  within five days after  learning of the  occurrence of any event that with
the giving of notice and the lapse of time would  become an Event of Default  under clause (c)
of the  definition  of  "Event  of  Default"  written  notice  in  the  form  of an Officer's
Certificate  of its status  and what  action  the  Issuer is taking or  proposes  to take with
respect thereto.

        Section 5.02  Acceleration  of  Maturity;  Rescission  and  Annulment.  If an Event of
Default  shall occur and be  continuing,  then and in every such  case the  Indenture Trustee,
acting at the  direction of the Enhancer or the  Noteholders  of Notes  representing  not less
than a majority of the aggregate  Note Balance of the Notes,  with the written  consent of the
Enhancer  (so long as no Enhancer  Default  exists),  may declare the Notes to be immediately
due and  payable by a notice in writing to the Issuer (and to the  Indenture  Trustee if given
by  Noteholders);  and upon any such  declaration,  the unpaid  principal amount of the Notes,
together with accrued and unpaid  interest  thereon  through  the date of  acceleration, shall
become immediately due and payable.

        At any time after such  declaration  of  acceleration  of maturity  with respect to an
Event of Default  has been made and before a judgment  or decree for  payment of the money due
has been obtained by the Indenture  Trustee as  hereinafter  provided in this  Article V, the
Enhancer or the  Noteholders  of Notes  representing  a majority of the aggregate Note Balance
of the Notes,  with the written  consent of the Enhancer,  by written notice to the Issuer and
the  Indenture  Trustee,  may in writing  waive the  related  Event of Default and rescind and
annul such declaration and its consequences if:

                (a)the  Issuer  has  paid  or  deposited  with  the  Indenture  Trustee  a sum
sufficient to pay:

                        (i)    all  payments of  principal  of and interest on the Notes and all
other  amounts  that  would  then be due  hereunder  or upon the Notes if the Event of
Default giving rise to such acceleration had not occurred;

(ii)    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel; and

(iii)    all Events of Default, other than the nonpayment of the principal of the Notes that has become due solely by such acceleration, have been cured or waived as provided in Section 5.12.

No such rescission shall affect any subsequent default or impair any right consequent thereto.

Section 5.03   Collection of Indebtedness and Suits for Enforcement by Indenture Trustee.

(a) The Issuer covenants that if default in the payment of (i) any interest on any Note when the same becomes due and payable, and such default continues for a period of five days, or (ii) the principal of or any installment of the principal of any Note when the same becomes due and payable, the Issuer shall, upon demand of the Indenture Trustee, pay to it, for the benefit of the Noteholders, the entire amount then due and payable on the Notes for principal and interest, with interest on the overdue principal, and in addition thereto such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee and its agents and counsel.

(b) In case the Issuer shall fail forthwith to pay such amounts upon such demand, the Indenture Trustee, in its own name and as trustee of an express trust, subject to the provisions of Section 10.17 hereof, may institute a Proceeding for the collection of the sums so due and unpaid, and may prosecute such Proceeding to judgment or final decree, and may enforce the same against the Issuer or other obligor on the Notes and collect in the manner provided by law out of the property of the Issuer or other obligor on the Notes, wherever situated, the monies adjudged or decreed to be payable.

(c) If an Event of Default shall occur and be continuing, the Indenture Trustee, subject to the provisions of Section 10.17 hereof, may, as more particularly

provided in Section 5.04, in its discretion proceed to protect and enforce its
rights and
the rights of the Noteholders by such appropriate Proceedings as the Indenture Trustee
shall
deem most effective to protect and enforce any such rights, whether for the
specific
enforcement of any covenant or agreement in this Indenture or in aid of the exercise
of any
power granted herein, or to enforce any other proper remedy or legal or equitable
right
vested in the Indenture Trustee by this Indenture or by law.

(d)If there shall be pending, relative to the Issuer or any other
obligor on
the Notes or any Person having or claiming an ownership interest in the Trust
Estate,
Proceedings under Title 11 of the United States Code or any other applicable
federal or
state bankruptcy, insolvency or other similar law, or if a receiver, assignee or
trustee in
bankruptcy or reorganization, liquidator, sequestrator or similar official shall have
been
appointed for or taken possession of the Issuer or its property or such other
obligor or
Person, or if there shall be any other comparable judicial Proceedings relative
to the
Issuer or other any other obligor on the Notes, or relative to the creditors or
property of
the Issuer or such other obligor, then the Indenture Trustee, irrespective of
whether the
principal of any Notes shall then be due and payable as therein expressed or by
declaration
or otherwise, and irrespective of whether the Indenture Trustee shall have made any
demand
pursuant to the provisions of this Section, shall be entitled and empowered, by
intervention
in such Proceedings or otherwise:

(i)   to file and prove a claim or claims for the entire
amount of
principal and interest owing and unpaid in respect of the Notes and to file
such
other papers or documents as may be necessary or advisable in order to
have the
claims of the Indenture Trustee (including any claim for reasonable
compensation to
the Indenture Trustee and each predecessor Indenture Trustee, and their
respective
agents, attorneys and counsel, and for reimbursement of all expenses and
liabilities
incurred, and all advances made, by the Indenture Trustee and each
predecessor
Indenture Trustee, except as a result of negligence, willful misconduct or bad
faith)
and of the Noteholders allowed in such Proceedings;

(ii)   unless  prohibited by applicable law and regulations,  to vote on
behalf of the  Noteholders in any election of a trustee,  a standby  trustee or Person
performing similar functions in any such Proceedings;

(iii)  to collect and receive  any monies or other  property payable or
deliverable on any such claims and to distribute all amounts  received with respect to
the claims of the Noteholders and of the Indenture Trustee on their behalf; and

(iv)   to file such  proofs of claim and other  papers or documents  as
may be necessary or advisable in order to have the claims of the Indenture Trustee or
the  Noteholders  allowed in any  judicial  proceedings relative to the  Issuer, its
creditors and its property;

and any  trustee,  receiver,  liquidator,  custodian  or other  similar  official  in any such
Proceeding is  hereby  authorized  by each  of  such  Noteholders  to  make  payments to the
Indenture  Trustee,  and,  in the event the  Indenture  Trustee  shall consent to the making of
payments directly to such  Noteholders,  to pay to the Indenture Trustee such amounts as shall
be sufficient to cover  reasonable  compensation to the Indenture  Trustee,  each predecessor
Indenture Trustee and their respective agents,  attorneys and counsel,  and all other expenses
and  liabilities  incurred,  and  all  advances  made,  by  the  Indenture  Trustee  and each
predecessor  Indenture  Trustee,  except as a result of negligence,  willful misconduct or bad
faith.

(e)Nothing  herein  contained  shall  be  deemed  to  authorize  the Indenture
Trustee  to  authorize  or  consent  to or vote  for or  accept  or  adopt  on  behalf of any
Noteholder any plan of reorganization,  arrangement,  adjustment or composition affecting the
Notes or the rights of any  Noteholder  thereof or to authorize the Indenture  Trustee to vote
in respect of the claim of any  Noteholder in any such  proceeding  except,  as aforesaid,  to
vote for the election of a trustee in bankruptcy or similar Person.

(f)All rights of action  and of  asserting  claims  under  this Indenture,  or
under any of the Notes,  may be enforced by the Indenture  Trustee  without the possession of
any of the  Notes  or the  production  thereof  in any  trial or  other  Proceedings relative

thereto, and any such action or proceedings instituted by the Indenture Trustee shall be
brought in its own name as trustee of an express trust, and any recovery of judgment,
subject to the payment of the expenses, disbursements and compensation of the Indenture
Trustee, each predecessor Indenture Trustee and their respective agents and attorneys, shall
be for the ratable benefit of the Holders of the Notes.

(g)In any Proceedings to which the Indenture Trustee shall be a party
(including any Proceedings involving the interpretation of any provision of this Indenture),
the Indenture Trustee shall be held to represent all Noteholders, and it shall not be
necessary to make any Noteholder a party to any such Proceedings.

Section 5.04  Remedies; Priorities.

(a)If an Event of Default shall have occurred and be continuing, then the
Indenture Trustee, subject to the provisions of Section 10.17 hereof, with the written
consent of the Enhancer may, or, at the written direction of the Enhancer, shall, do one or
more of the following, in each case subject to Section 5.05:

(i)   institute Proceedings in its own name and as trustee of an
express trust for the collection of all amounts then payable on the Notes or under
this Indenture with respect thereto, whether by declaration or otherwise, and all
amounts payable under the Insurance Agreement, enforce any judgment obtained, and
collect from the Issuer and any other obligor on the Notes monies adjudged due;

(ii)   institute Proceedings from time to time for the complete or
partial foreclosure of this Indenture with respect to the Trust Estate;

(iii)   exercise any remedies of a secured party under the UCC and take
any other appropriate action to protect and enforce the rights and remedies of the
Indenture Trustee and the Noteholders; and

(iv)   sell the Trust Estate or any portion thereof or rights or
interest therein, at one or more public or private sales called and conducted in any
manner permitted by law;

provided, however, that the Indenture Trustee may not sell or otherwise liquidate the Trust

Estate following an Event of Default, unless (A) the Indenture Trustee obtains the consent
of the Enhancer (or if an Enhancer Default has occurred and is continuing, the Noteholders
of 100% of the aggregate Note Balance of the Notes), (B) the proceeds of such sale or
liquidation distributable to Noteholders are sufficient to discharge in full all amounts
then due and unpaid upon the Notes for principal and interest and to reimburse the Enhancer
for any amounts drawn under the Policy and any other amounts due the Enhancer under the
Insurance Agreement or (C) the Indenture Trustee determines that the Mortgage Loans will not
continue to provide sufficient funds for the payment of principal of and interest on the
Notes as they would have become due if the Notes had not been declared due and payable, and
the Indenture Trustee obtains the consent of the Enhancer (or if an Enhancer Default has
occurred and is continuing, and the Noteholders of 66 2/3% of the aggregate Note Balance of
the Notes). In determining such sufficiency or insufficiency with respect to clause (B) and
(C) above, the Indenture Trustee may, but need not, obtain and rely, and shall be protected
in relying in good faith, upon an opinion of an Independent investment banking or accounting
firm of national reputation as to the feasibility of such proposed action and as to the
sufficiency of the Trust Estate for such purpose. Notwithstanding the foregoing, provided
that a Servicing Default shall not have occurred, any Sale (as defined in Section 5.15
hereof) of the Trust Estate shall be made subject to the continued servicing of the Mortgage
Loans by the Servicer as provided in the Servicing Agreement. Notwithstanding any sale of
the Mortgage Loans pursuant to this Section 5.04(a), the Indenture Trustee shall, for so
long as any principal or accrued interest on the Notes remains unpaid, continue to act as
Indenture Trustee hereunder and to draw amounts payable under the Policy in accordance with
its terms.

(b)If the Indenture Trustee collects any money or property pursuant to this
Article V, it shall pay out such money or property in the following order:

FIRST: to the Indenture Trustee for amounts due under Section 6.07;

SECOND:to the Noteholders for amounts due and unpaid on the related
Notes for
interest, including accrued and unpaid interest on the Notes for any
prior

Payment Date, ratably, without preference or priority of any kind, according amounts to the amounts due and payable on such Notes for interest from available in the Trust Estate for such Noteholders;

THIRD: to the Noteholders for amounts due and unpaid on the related Notes for principal, ratably, without preference or priority of any kind, according to the amounts due and payable on such Notes for principal, from amounts available in the Trust Estate for such Noteholders, until the respective Note Balances of such Notes have been reduced to zero;

FOURTH:to the payment of all amounts due and owing the Enhancer under the Insurance Agreement; and

FIFTH: to the Certificate Paying Agent for amounts due under Article VIII of the Trust Agreement; and

SEVENTH:   to the payment of the remainder, if any, to the Issuer or any other person legally entitled thereto.

The Indenture Trustee may fix a record date and payment date for any payment to Noteholders pursuant to this Section 5.04. At least 15 days before such record date, the Indenture Trustee shall mail to each Noteholder a notice that states the record date, the payment date and the amount to be paid.

Section 5.05 Optional Preservation of the Trust Estate. If the Notes have been declared due and payable under Section 5.02 following an Event of Default and such declaration and its consequences have not been rescinded and annulled, the Indenture Trustee may, but need not (but shall at the written direction of the Enhancer so long as no Enhancer default exists), elect to take and maintain possession of the Trust Estate. It is the desire of the parties hereto and the Noteholders that there be at all times sufficient funds for the payment of principal of and interest on the Notes and other obligations of the Issuer including payment to the Enhancer, and the Indenture Trustee shall take such desire into account when determining whether or not to take and maintain possession of the Trust Estate. In determining whether to take and maintain possession of the Trust Estate, the

Indenture Trustee may, but need not, obtain and rely, and shall be protected in relying in good faith, upon an opinion of an Independent investment banking or accounting firm of national reputation as to the feasibility of such proposed action and as to the sufficiency of the Trust Estate for such purpose.

Section 5.06 Limitation of Suits. No Noteholder shall have any right to institute any Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless and subject to the provisions of Section 10.17 hereof:

(a) such Noteholder shall have previously given written notice to the Indenture Trustee of a continuing Event of Default;

(b) the Noteholders of not less than 25% of the aggregate Note Balance of the Notes shall have made written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;

(c) such Noteholder or Noteholders shall have offered the Indenture Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred by it in complying with such request;

(d) the Indenture Trustee for 60 days after its receipt of such notice, request and offer of indemnity shall have failed to institute such Proceedings; and

(e) no direction inconsistent with such written request shall have been given to the Indenture Trustee during such 60-day period by the Noteholders of a majority of the aggregate Note Balance of the Notes or by the Enhancer.

It is understood and intended that no Noteholder shall have any right in any manner whatever by virtue of, or by availing itself of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Noteholders or to obtain or to seek to obtain priority or preference over any other Noteholders or to enforce any right under this Indenture, except in the manner herein provided.

In the event the Indenture Trustee shall receive conflicting or inconsistent requests and indemnity from two or more groups of Noteholders, each representing less than a majority

of the aggregate Note Balance of the Notes, the Indenture Trustee shall act at the direction
of the group of Noteholders with the greater Note Balance. In the event that the Indenture
Trustee shall receive conflicting or inconsistent requests and indemnity from two or more
groups of Noteholders representing the same Note Balance, then the Indenture Trustee in its
sole discretion may determine what action, if any, shall be taken, notwithstanding any other
provisions of this Indenture.

Section 5.07 Unconditional Rights of Noteholders to Receive Principal and Interest.
Subject to the provisions of this Indenture, the Noteholder of any Note shall have the
right, which is absolute and unconditional, to receive payment of the principal of and
interest, if any, on such Note on or after the respective due dates thereof expressed in
such Note or in this Indenture and to institute suit for the enforcement of any such
payment, and such right shall not be impaired without the consent of such Noteholder.

Section 5.08 Restoration of Rights and Remedies. If the Indenture Trustee or any
Noteholder has instituted any Proceeding to enforce any right or remedy under this Indenture
and such Proceeding has been discontinued or abandoned for any reason or has been determined
adversely to the Indenture Trustee or to such Noteholder, then and in every such case the
Issuer, the Indenture Trustee and the Noteholders shall, subject to any determination in
such Proceeding, be restored severally and respectively to their former positions hereunder,
and thereafter all rights and remedies of the Indenture Trustee and the Noteholders shall
continue as though no such Proceeding had been instituted.

Section 5.09 Rights and Remedies Cumulative. No right or remedy herein conferred
upon or reserved to the Indenture Trustee, the Enhancer or the Noteholders is intended to be
exclusive of any other right or remedy, and every right and remedy shall, to the extent
permitted by law, be cumulative and in addition to every other right and remedy given
hereunder or now or hereafter existing at law, in equity or otherwise. The assertion or
employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent
assertion or employment of any other appropriate right or remedy.

Section 5.10 Delay or Omission Not a Waiver. No delay or omission of the Indenture

Trustee, the Enhancer or any Noteholder to exercise any right or remedy accruing upon any
Event of Default shall impair any such right or remedy or constitute a waiver of any such
Event of Default or an acquiescence therein. Every right and remedy given by this Article V
or by law to the Indenture Trustee or to the Noteholders may be exercised from time to time,
and as often as may be deemed expedient, by the Indenture Trustee or by the Noteholders, as
the case may be.

        Section 5.11 Control by Enhancer or Noteholders. The Enhancer (so long as no
Enhancer Default exists) or the Noteholders of a majority of the aggregate Note Balance of
Notes with the consent of the Enhancer, shall have the right to direct the time, method and
place of conducting any Proceeding for any remedy available to the Indenture Trustee with
respect to the Notes or exercising any trust or power conferred on the Indenture Trustee,
provided that:

        (a)such direction shall not be in conflict with any rule of law or with this
Indenture;

        (b)subject to the express terms of Section 5.04, any direction to the
Indenture Trustee to sell or liquidate the Trust Estate shall be by the Enhancer (so long as
no Enhancer Default exists) or by the Noteholders of Notes representing not less than 100%
of the aggregate Note Balance of the Notes with the consent of the Enhancer;

        (c)if the conditions set forth in Section 5.05 shall have been satisfied and
the Indenture Trustee elects to retain the Trust Estate pursuant to such Section, then any
direction to the Indenture Trustee by Noteholders of Notes representing less than 100% of
the aggregate Note Balance of the Notes to sell or liquidate the Trust Estate shall be of no
force and effect; and

        (d)the Indenture Trustee may take any other action deemed proper by the
Indenture Trustee that is not inconsistent with such direction.

Notwithstanding the rights of Noteholders set forth in this Section, subject to
Section 6.01, the Indenture Trustee need not take any action that it determines (in its sole
discretion) might involve it in liability or might materially adversely affect the rights of

any Noteholders not consenting to such action, unless the Trustee has received satisfactory
indemnity from the Enhancer or a Noteholder.

Section 5.12  Waiver of Past Defaults.  Prior to the  declaration of the acceleration
of the maturity of the Notes as provided in Section 5.02, the Enhancer (so long as no
Enhancer Default exists) or the Noteholders of not less than a majority of the aggregate
Note Balance of the Notes, with the consent of the Enhancer, may waive any past Event of
Default and its consequences, except an Event of Default (a) with respect to payment of
principal of or interest on any of the Notes or (b) in respect of a covenant or provision
hereof that cannot be modified or amended without the consent of the Noteholder of each
Note. In the case of any such waiver, the Issuer, the Indenture Trustee and the Noteholders
shall be restored to their respective former positions and rights hereunder; but no such
waiver shall extend to any subsequent or other Event of Default or impair any right
consequent thereto.

Upon any such waiver, any Event of Default arising therefrom shall be deemed to have
been cured and not to have occurred, for every purpose of this Indenture; but no such waiver
shall extend to any subsequent or other Event of Default or impair any right consequent
thereto.

Section 5.13  Undertaking for Costs.  All parties to this Indenture agree, and each
Noteholder by such Noteholder's acceptance of the related Note shall be deemed to have
agreed, that any court may in its discretion require, in any Proceeding for the enforcement
of any right or remedy under this Indenture, or in any Proceeding against the Indenture
Trustee for any action taken, suffered or omitted by it as Indenture Trustee, the filing by
any party litigant in such Proceeding of an undertaking to pay the costs of such Proceeding,
and that such court may in its discretion assess reasonable costs, including reasonable
attorneys' fees, against any party litigant in such Proceeding, having due regard to the
merits and good faith of the claims or defenses made by such party litigant; but the
provisions of this Section 5.13 shall not apply to (a) any Proceeding instituted by the
Indenture Trustee, (b) any Proceeding instituted by any Noteholder, or group of Noteholders,

in each case  holding  in the  aggregate  more than 10% of the  aggregate  Note  Balance
of the
Notes or (c) any Proceeding  instituted by any  Noteholder for the  enforcement of the
payment
of  principal  of or interest  on any Note  on or after the  respective  due dates
expressed in
such Note and in this Indenture.

        Section 5.14  Waiver of Stay or Extension  Laws.  The Issuer  covenants (to the
extent
that it may  lawfully  do so)  that it will not at any time  insist  upon,  or plead or
in any
manner  whatsoever,  claim or take the  benefit or  advantage  of, any stay or  extension
law
wherever  enacted,  now or at any time  hereafter in force,  that may affect the
covenants or
the performance of this  Indenture; and the Issuer (to the extent that it may lawfully
do so)
hereby  expressly  waives all benefit or  advantage  of any such law,  and  covenants
that it
shall not hinder,  delay or impede the execution of any power herein  granted to the
Indenture
Trustee,  but will suffer and permit the  execution  of every such power as though no
such law
had been enacted.

        Section 5.15  Sale of Trust Estate.

            (a)The  power to  effect  any  sale or  other  disposition  (a  "Sale")
of any
portion of the Trust Estate pursuant to  Section 5.04  is expressly  subject to the
provisions
of  Section 5.05  and this  Section 5.15.  The  power to  effect  any such  Sale  shall
not be
exhausted  by any one or more Sales as to any portion of the Trust  Estate  remaining
unsold,
but shall  continue  unimpaired  until the  entire  Trust  Estate  shall have been sold
or all
amounts  payable  on the Notes and under  this  Indenture  and under the  Insurance
Agreement
shall have been paid.  The  Indenture  Trustee may from time to time  postpone any public
Sale
by  public  announcement  made at the  time and  place of such  Sale.  The  Indenture
Trustee
hereby expressly waives its right to any amount fixed by law as compensation for any
Sale.

            (b)The  Indenture  Trustee shall not in any private Sale sell the Trust
Estate,
or any portion thereof, unless:

                (i)    the Enhancer  direct(s) the Indenture  Trustee in writing to
make
        such Sale in accordance with the provisions of Section 5.04,

                (ii)    the  proceeds  of such  Sale  would be not less  than the
entire

amount   that   would   be   payable   to   the   Noteholders   under   the   Notes,
the
Certificateholders   under   the   Certificates   and   the   Enhancer   in   respect   of
amounts
drawn   under   the   Policy   and   any   other   amounts   due   the   Enhancer   under   the
Insurance
Agreement,   in   full   payment   thereof   in   accordance   with   Section 5.02,   on   the
Payment
Date next succeeding the date of such Sale, or

(iii)   the   Indenture   Trustee   determines,   in   its   sole   discretion,
that
the conditions for retention of the Trust Estate set forth in  Section 5.05
cannot be
satisfied (in making any such determination,  the Indenture Trustee may rely and
shall
be   protected   in   relying   in   good   faith   upon   an   opinion   of   an   Independent
investment
banking firm  obtained and  delivered as provided in  Section 5.05),  and the
Enhancer
consents to such Sale.

The purchase by the  Indenture  Trustee of all or any portion of the Trust Estate at a
private
Sale   shall   not   be   deemed   a   Sale   or   other   disposition   thereof   for   purposes   of
this
Section 5.15(b).

(c)Unless the  Noteholders  and the Enhancer shall have otherwise
consented or
directed the Indenture  Trustee,  at any public Sale of all or any portion of the Trust
Estate
at which a minimum bid equal to or greater  than the amount  described  in  paragraph
(ii) of
Section   5.15(b)   has   not   been   established   by   the   Indenture   Trustee   and   no   Person
bids an
amount equal to or greater than such amount,  then the  Indenture  Trustee shall bid an
amount
at least $1.00 more than the highest other bid,  which bid shall be subject to the
provisions
of Section 5.15(d)(ii) herein.

(d)In connection with a Sale of all or any portion of the Trust Estate:

(i)   any  Noteholder  may  bid  for  and,  with  the  consent  of
the
Enhancer,  purchase the property  offered for sale, and upon compliance with the
terms
of sale may hold,  retain and possess and dispose of such  property,  without
further
accountability,  and may, in paying the purchase money therefor,  deliver any
Notes or
claims  for  interest  thereon  in lieu of cash up to the  amount  which  shall,
upon
distribution of the net proceeds of such sale, be payable thereon,  and such
Notes, in

case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Noteholders thereof after being appropriately stamped to show such partial payment;

(ii) the Indenture Trustee may bid for and acquire the property offered for Sale in connection with any Sale thereof and, subject to any requirements of, and to the extent permitted by, applicable law in connection therewith, may purchase all or any portion of the Trust Estate in a private sale. In lieu of paying cash therefor, the Indenture Trustee may make settlement for the purchase price by crediting the gross Sale price against the sum of (A) the amount that would be distributable to the Noteholders and the Certificateholders and amounts owing to the Enhancer as a result of such Sale in accordance with Section 5.04(b) on the Payment Date next succeeding the date of such Sale and (B) the expenses of the Sale and of any Proceedings in connection therewith that are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

(iii) the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance transferring its interest in any portion of the Trust Estate in connection with a Sale thereof;

(iv) the Indenture Trustee is hereby irrevocably appointed the agent and attorney-in-fact of the Issuer to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale; and

(v) no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any monies.

Section 5.16 Action on Notes. The Indenture Trustee's right to seek and recover

judgment  on the  Notes  or  under  this  Indenture  shall  not be  affected  by the
seeking,
obtaining  or  application  of any  other  relief  under or with  respect  to this
Indenture.
Neither the lien of this  Indenture  nor any rights or remedies  of the  Indenture
Trustee or
the  Noteholders  shall be impaired by the recovery of any judgment by the  Indenture
Trustee
against the Issuer or by the levy of any  execution  under such  judgment  upon any
portion of
the Trust  Estate or upon any of the assets of the  Issuer.  Any money or  property
collected
by the Indenture Trustee shall be applied in accordance with Section 5.04(b).

     Section 5.17  Performance and Enforcement of Certain Obligations.

          (a)Promptly  following a written  request  from the  Enhancer or the
Indenture
Trustee (with the written  consent of the Enhancer),  the Issuer,  in its capacity as
owner of
the Mortgage  Loans,  shall,  with the written  consent of the Enhancer,  take all such
lawful
action as the  Indenture  Trustee may  request  to cause the  Issuer to compel or secure
the
performance  and observance by the Sellers and the Servicer,  as applicable,  of each of
their
obligations  to the  Issuer  under  or in  connection  with  the  Purchase  Agreement
and the
Servicing  Agreement,  and to exercise  any and all rights,  remedies,  powers and
privileges
lawfully  available to the Issuer under or in connection  with the Purchase  Agreement
and the
Servicing  Agreement to the extent and in the manner  directed by the  Indenture
Trustee,  as
pledgee of the Mortgage  Loans,  including the  transmission of notices of default on the
part
of the Sellers or the  Servicer  thereunder  and the  institution  of legal or
administrative
actions or  proceedings  to compel or secure  performance  by the  Sellers or the
Servicer of
each of their obligations under the Purchase Agreement and the Servicing Agreement.

          (b)If  an  Event  of  Default  shall  have  occurred  and  be  continuing,
the
Indenture  Trustee,  as pledgee of the Mortgage  Loans,  subject to the rights of the
Enhancer
under  the  Servicing  Agreement,  may,  and at the  direction  (which  direction  shall
be in
writing or by telephone  (confirmed in writing promptly  thereafter)) of the Noteholders
of 66
2/3% of the  aggregate  Note  Balance of the Notes,  shall,  exercise  all  rights,
remedies,
powers,  privileges  and claims of the Issuer  against the Sellers or the Servicer under
or in
connection  with the Purchase  Agreement and the Servicing  Agreement,  including the
right or

power to take any action to compel or secure  performance  or observance by the Sellers or the
Servicer,  as the case may be, of each of their  obligations  to the Issuer  thereunder and to
give any  consent,  request,  notice,  direction,  approval,  extension  or  waiver  under the
Purchase  Agreement  and the  Servicing  Agreement,  as the case may be,  and any right of the
Issuer to take such action shall not be  suspended.  In  connection  therewith,  as determined
by the Indenture  Trustee,  the Issuer shall take all actions necessary to effect the transfer
of the Mortgage Loans to the Indenture Trustee.

---

ARTICLE VI

The Indenture Trustee

Section 6.01  Duties of Indenture Trustee.

(a)If  an  Event  of  Default  shall  have  occurred  and  be  continuing,  the
Indenture  Trustee  shall  exercise the rights and powers  vested in it by this  Indenture and
use the same degree of care and skill in their  exercise as a prudent  Person  would  exercise
or use under the circumstances in the conduct of such Person's own affairs.

(b)Except during the continuance of an Event of Default:

(i)   the  Indenture  Trustee  undertakes  to perform  such  duties and
only  such  duties as are  specifically  set  forth in this  Indenture  and no  implied
covenants  or  obligations  shall be read into this  Indenture  against the  Indenture
Trustee; and

(ii)   in the absence of bad faith on its part,  the  Indenture  Trustee
may  conclusively  rely, as to the truth of the statements and the  correctness of the
opinions  expressed therein,  upon certificates,  reports or opinions furnished to the
Indenture  Trustee and conforming to the  requirements  of this  Indenture;  provided,
however,  that the  Indenture  Trustee  shall  examine the  certificates,  reports and
opinions  to  determine  whether  or not  they  conform  to the  requirements  of this
Indenture.

(c) The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    this paragraph does not limit the effect of Section 6.01(a);

(ii)    the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts; and

(iii)    the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 5.11 or any direction from the Enhancer that the Enhancer is entitled to give under any of the Basic Documents.

(d) The Indenture Trustee shall not be liable for interest on any money received by it except as the Indenture Trustee may agree in writing with the Issuer.

(e) Money held in trust by the Indenture Trustee need not be segregated from other funds except to the extent required by law or the terms of this Indenture or the Trust Agreement.

(f) No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(g) Every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Indenture Trustee shall be subject to the provisions of this Section and to the provisions of TIA.

(h) With respect to each Payment Date, on the Business Day following the related Determination Date, the Indenture Trustee shall forward or cause to be forwarded by mail, or other mutually agreed-upon method, to the Enhancer and the Servicer, a statement setting forth, to the extent applicable, during the Pre-Funding Period, the Pre-Funded

Amount as of such Determination Date and any transfers of funds in connection therewith.

(i)The Indenture Trustee hereby accepts appointment as Certificate Paying Agent under the Trust Agreement and agrees to be bound by the provisions of the Trust Agreement relating to the Certificate Paying Agent. The Indenture Trustee hereby agrees to be bound by the provisions of Article IX of the Trust Agreement.

(j)The Indenture Trustee shall not be required to take notice or be deemed to have notice or knowledge of any Event of Default (except for an Event of Default specified in clause (a) of the definition thereof) unless a Responsible Officer of the Indenture Trustee shall have received written notice or have actual knowledge thereof. In the absence of receipt of such notice or such knowledge, the Indenture Trustee may conclusively assume that there is no default or Event of Default.

(k)The Indenture Trustee shall have no duty to see to any recording or filing of any financing statement or continuation statement evidencing a security interest or to see to the maintenance of any such recording or filing or to any rerecording or refiling of any thereof.

Section 6.02  Rights of Indenture Trustee.

(a)The Indenture Trustee may rely and shall be protected in acting or refraining from acting in good faith upon any resolution, Officer's Certificate, opinion of counsel, certificate of auditors, or any other certificate, statement, instrument, report, notice, consent or other document believed by it to be genuine and to have been signed or presented by the proper person. The Indenture Trustee need not investigate any fact or matter stated in any such document.

(b)Before the Indenture Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel. The Indenture Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on any such Officer's Certificate or Opinion of Counsel.

(c)The Indenture Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys or a

custodian or nominee, and the Indenture Trustee shall not be responsible for any misconduct
or negligence on the part of, or for the supervision of, any such agent, attorney, custodian
or nominee appointed with due care by it hereunder.

(d)The Indenture Trustee shall not be liable for any action it takes or omits
to take in good faith which it believes to be authorized or within its rights or powers;
provided, however, that the Indenture Trustee's conduct does not constitute willful
misconduct, negligence or bad faith.

(e)The Indenture Trustee may consult with counsel, and the advice or opinion
of counsel with respect to legal matters relating to this Indenture and the Notes shall be
full and complete authorization and protection from liability in respect to any action
taken, omitted or suffered by it hereunder in good faith and in accordance with the advice
or opinion of such counsel.

(f)The Indenture Trustee shall not be personally liable for any action taken,
suffered or omitted by it in good faith and believed by it to be authorized or within the
discretion or rights or powers conferred upon it by this Indenture, unless it shall be
proved that the Indenture Trustee was negligent in ascertaining the pertinent facts.

(g)Prior to the occurrence of an Event of Default hereunder, and after the
curing or waiver of all Events of Default that may have occurred, the Indenture Trustee
shall not be bound to make any investigation into the facts or matters stated in any
resolution, certificate, statement, instrument, opinion, report, notice, request, consent,
order, approval, bond or other paper or document, unless requested in writing to do so by
the Enhancer or the Noteholders representing a majority of the aggregate Note Balance;
provided, however, that if the payment within a reasonable time to the Indenture Trustee of
the costs, expenses or liabilities likely to be incurred by it in the making of such
investigation is, in the opinion of the Indenture Trustee, not assured to the Indenture
Trustee by the security afforded to it by the terms of this Indenture, the Indenture Trustee
may require indemnity satisfactory to the Indenture Trustee against such cost, expense or
liability as a condition to taking any such action.

(h)The Indenture Trustee shall be under no obligation to exercise any of the
trusts or powers vested in it by this Indenture or to institute, conduct or defend any
litigation hereunder or in relation hereto at the request, order or direction of any of the
Enhancer or the Noteholders, pursuant to the provisions of this Indenture, unless the
Enhancer or the Noteholders shall have offered to the Indenture Trustee reasonable security
or indemnity against the costs, expenses and liabilities which may be incurred therein or
thereby; nothing contained herein shall, however, relieve the Indenture Trustee of the
obligation, upon the occurrence of an Event of Default (which has not been cured or waived),
to exercise such of the rights and powers vested in it by this Indenture, and to use the
same degree of care and skill in their exercise as a prudent investor would exercise or use
under the circumstances in the conduct of such investor's own affairs.

Section 6.03 Individual Rights of Indenture Trustee. The Indenture Trustee in its
individual or any other capacity may become the owner or pledgee of Notes and may otherwise
deal with the Issuer or its Affiliates with the same rights it would have if it were not
Indenture Trustee. Any Note Registrar, co-registrar or co-paying agent may do the same with
like rights. However, the Indenture Trustee must comply with Sections 6.11 and 6.12.

Section 6.04 Indenture Trustee's Disclaimer. The Indenture Trustee shall not be
(i) responsible for and makes no representation as to the validity or adequacy of this
Indenture or the Notes, (ii) accountable for the Issuer's use of the proceeds from the Notes
or (iii) responsible for any statement of the Issuer in this Indenture or in any document
issued in connection with the sale of the Notes or in the Notes, other than the Indenture
Trustee's certificate of authentication thereon.

Section 6.05 Notice of Event of Default. If an Event of Default shall occur and be
continuing, and if such Event of Default is known to a Responsible Officer of the Indenture
Trustee, then the Indenture Trustee shall give prompt notice thereof to the Enhancer. The
Indenture Trustee shall mail to each Noteholder notice of such Event of Default within 90
days after it occurs. Except in the case of an Event of Default with respect to the payment
of principal of or interest on any Note, the Indenture Trustee may withhold such notice if

and so long as a committee of its Responsible Officers in good faith determines that
withholding such notice is in the interests of the Noteholders.

Section 6.06  Reports by Indenture Trustee to Noteholders. The Indenture Trustee
shall deliver to each Noteholder such information as may be required to enable such
Noteholder to prepare its federal and state income tax returns. In addition, upon Issuer
Request, the Indenture Trustee shall promptly furnish such information reasonably requested
by the Issuer that is reasonably available to the Indenture Trustee to enable the Issuer to
perform its federal and state income tax reporting obligations.

Section 6.07  Compensation and Indemnity. The Indenture Trustee shall be compensated
and indemnified by the Servicer in accordance with Section 6.06 of the Servicing Agreement.
All amounts owing the Indenture Trustee hereunder in excess of such amount, as well as any
amount owed to the Indenture Trustee in accordance with Section 6.06 of the Servicing
Agreement, to the extent the Servicer has failed to pay such amount, shall be paid solely as
provided in Section 3.05 hereof (subject to the priorities set forth therein). The Indenture
Trustee's compensation shall not be limited by any law on compensation of a trustee of an
express trust. The Issuer shall reimburse the Indenture Trustee for all reasonable
out-of-pocket expenses incurred or made by it, including costs of collection, in addition to
the compensation for its services. Such expenses shall include the reasonable compensation,
expenses, disbursements and advances of the Indenture Trustee's agents, counsel, accountants
and experts. The Issuer shall indemnify the Indenture Trustee against any and all loss,
liability or expense (including attorneys' fees) incurred by it in connection with the
administration of this trust and the performance of its duties hereunder. The Indenture
Trustee shall notify the Issuer promptly of any claim for which it may seek indemnity.
Failure by the Indenture Trustee to so notify the Issuer shall not relieve the Issuer of its
obligations hereunder. The Issuer shall defend any such claim, and the Indenture Trustee
may have separate counsel and the Issuer shall pay the fees and expenses of such counsel.
The Issuer is not obligated to reimburse any expense or indemnify against any loss,
liability or expense incurred by the Indenture Trustee through the Indenture Trustee's own
willful misconduct, negligence or bad faith.

The Issuer's payment obligations to the Indenture Trustee pursuant to this Section 6.07 shall survive the discharge of this Indenture or the termination or resignation of the Indenture Trustee. When the Indenture Trustee incurs expenses after the occurrence of an Event of Default specified in clause (c) or (d) of the definition thereof with respect to the Issuer, such expenses are intended to constitute expenses of administration under Title 11 of the United States Code or any other applicable federal or state bankruptcy, insolvency or similar law.

Section 6.08 Replacement of Indenture Trustee. No resignation or removal of the Indenture Trustee and no appointment of a successor Indenture Trustee shall become effective until the acceptance of appointment by the successor Indenture Trustee pursuant to this Section 6.08. The Indenture Trustee may resign at any time by so notifying the Issuer and the Enhancer. The Enhancer or the Noteholders of a majority of the aggregate Note Balance of the Notes may remove the Indenture Trustee by so notifying the Indenture Trustee and the Enhancer (if given by such Noteholders) and may appoint a successor Indenture Trustee. Unless a Servicer Default has occurred and is continuing, the appointment of any successor Indenture Trustee shall be subject to the prior written approval of the Servicer. The Issuer shall remove the Indenture Trustee if:

(a) the Indenture Trustee fails to comply with Section 6.11;

(b) the Indenture Trustee is adjudged a bankrupt or insolvent;

(c) a receiver or other public officer takes charge of the Indenture Trustee or its property; or

(d) the Indenture Trustee otherwise becomes incapable of fulfilling its duties under the Basic Documents.

If the Indenture Trustee resigns or is removed or if a vacancy exists in the office of the Indenture Trustee for any reason (the Indenture Trustee in such event being referred to herein as the retiring Indenture Trustee), the Issuer shall promptly appoint a successor Indenture Trustee with the consent of the Enhancer, which consent shall not be unreasonably withheld. In addition, the Indenture Trustee shall resign to avoid being directly or

indirectly controlled by the Issuer.

A successor Indenture Trustee shall deliver a written acceptance of its appointment
to the retiring Indenture Trustee and to the Issuer. Thereupon, the resignation or removal
of the retiring Indenture Trustee shall become effective, and the successor Indenture
Trustee shall have all the rights, powers and duties of the Indenture Trustee under this
Indenture. The successor Indenture Trustee shall mail a notice of its succession to the
Noteholders. The retiring Indenture Trustee shall promptly transfer all property held by it
as Indenture Trustee to the successor Indenture Trustee.

If a successor Indenture Trustee does not take office within 60 days after the
retiring Indenture Trustee resigns or is removed, then the retiring Indenture Trustee, the
Issuer or the Noteholders of a majority of aggregate Note Balance of the Notes may petition
any court of competent jurisdiction for the appointment of a successor Indenture Trustee.

If the Indenture Trustee fails to comply with Section 6.11, any Noteholder may
petition any court of competent jurisdiction for the removal of the Indenture Trustee and
the appointment of a successor Indenture Trustee.

Notwithstanding the replacement of the Indenture Trustee pursuant to this Section,
the Issuer's obligations under Section 6.07 shall continue for the benefit of the retiring
Indenture Trustee.

Section 6.09 Successor Indenture Trustee by Merger. If the Indenture Trustee
consolidates with, merges or converts into, or transfers all or substantially all its
corporate trust business or assets to, another corporation or banking association, then the
resulting, surviving or transferee corporation without any further act shall be the
successor Indenture Trustee; provided, that such corporation or banking association shall be
otherwise qualified and eligible under Section 6.11. The Indenture Trustee shall provide
the Rating Agencies with written notice of any such transaction occurring after the Closing
Date.

If at the time of any such succession by merger, conversion or consolidation, any of
the Notes shall have been authenticated but not delivered, then any such successor to the

Indenture   Trustee may adopt  the certificate  of   authentication   of any   predecessor   trustee,
and  deliver  such  Notes  so  authenticated.  If at such time any of the  Notes  shall not have
been  authenticated,  any  successor  to the  Indenture  Trustee may  authenticate  such  Notes
either  in the  name of any  predecessor  hereunder  or in the  name of the  successor  to the
Indenture  Trustee;  and in all such cases, such  certificates  shall have the full force that
it is  anywhere  in the  Notes  or in this  Indenture  provided  that the  certificate  of the
Indenture Trustee shall have.

        Section 6.10  Appointment of Co-Indenture Trustee or Separate Indenture Trustee.

            (a)Notwithstanding  any other  provisions of this  Indenture,  at any  time, for
the  purpose of meeting any legal  requirement  of any  jurisdiction  in which any part of the
Trust Estate may at such time be located,  the Indenture  Trustee shall have the power and may
execute and deliver all  instruments  to appoint one or more Persons to act as a co-trustee or
co-trustees,  or separate trustee or separate trustees,  of all or any part of the Issuer, and
to vest in such Person or Persons,  in such  capacity  and for the benefit of the Noteholders
and the Enhancer,  such title to the Trust Estate,  or any part thereof,  and,  subject to the
other provisions of this Section, such powers, duties,  obligations,  rights and trusts as the
Indenture  Trustee may consider  necessary  or  desirable.  No co trustee or separate trustee
hereunder  shall be required to meet the terms of  eligibility  as a successor  trustee under
Section 6.11, and no notice to  Noteholders  of the  appointment of any co trustee or separate
trustee shall be required under Section 6.08 hereof.

            (b)Every separate  trustee and  co-trustee  shall,  to the extent  permitted by
law, be appointed and act subject to the following provisions and conditions:

                (i)    all rights,  powers,  duties and obligations conferred or  imposed
            upon the  Indenture  Trustee  shall be  conferred  or imposed  upon and  exercised  or
            performed by the  Indenture  Trustee and such separate  trustee or co-trustee  jointly
            (it being  understood  that such separate  trustee or co-trustee is not  authorized to
            act  separately  without the  Indenture  Trustee  joining in such act),  except to the
            extent that under any law of any  jurisdiction in which any particular act or  acts are

to be performed the Indenture Trustee shall be incompetent or unqualified to perform
such act or acts, in which event such rights, powers, duties and obligations
(including the holding of title to the Trust Estate or any portion thereof in any
such jurisdiction) shall be exercised and performed singly by such separate trustee
or co-trustee, but solely at the direction of the Indenture Trustee;

(ii)    no trustee hereunder shall be personally liable by reason of
any act or omission of any other trustee hereunder; and

(iii)    the Indenture Trustee may at any time accept the resignation of
or remove any separate trustee or co-trustee.

(c) Any notice, request or other writing given to the Indenture Trustee shall
be deemed to have been given to each of the then separate trustees and co-trustees, as
effectively as if given to each of them. Every instrument appointing any separate trustee
or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each
separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be
vested with the estates or property specified in its instrument of appointment, either
jointly with the Indenture Trustee or separately, as may be provided therein, subject to all
the provisions of this Indenture, specifically including every provision of this Indenture
relating to the conduct of, affecting the liability of, or affording protection to, the
Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d) Any separate trustee or co-trustee may at any time constitute the
Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the
extent not prohibited by law, to do any lawful act under or in respect of this Indenture on
its behalf and in its name. If any separate trustee or co-trustee shall die, become
incapable of acting, resign or be removed, all of its estates, properties, rights, remedies
and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted
by law, without the appointment of a new or successor trustee.

Section 6.11 Eligibility; Disqualification. The Indenture Trustee shall at all
times satisfy the requirements of TIAss.310(a). The Indenture Trustee shall have a combined

capital and surplus of at least $50,000,000 as set forth in its most recent published annual
report of condition and it or its parent shall have a long-term debt rating of "A" or better
by Moody's. The Indenture Trustee shall comply with TIAss.310(b); provided, however, that
there shall be excluded from the operation of TIAss.310(b)(1) any indenture or indentures
under which other securities of the Issuer are outstanding if the requirements for such
exclusion set forth in TIAss.310(b)(1) are met.

        Section 6.12 Preferential Collection of Claims Against Issuer. The Indenture
Trustee shall comply with TIAss.311(a), excluding any creditor relationship listed in TIAss.
311(b). An Indenture Trustee that has resigned or been removed shall be subject to TIAss.
311(a) to the extent indicated.

        Section 6.13 Representations and Warranties. The Indenture Trustee hereby
represents and warrants that:

        (a)The Indenture Trustee is duly organized, validly existing and in good
standing as a national banking association with power and authority to own its properties
and to conduct its business as such properties are currently owned and such business is
currently conducted.

        (b)The Indenture Trustee has the power and authority to execute and deliver
this Indenture and to carry out its terms; and the execution, delivery and performance of
this Indenture have been duly authorized by the Indenture Trustee by all necessary corporate
action.

        (c)The consummation of the transactions contemplated by this Indenture and
the fulfillment of the terms hereof do not conflict with, result in any breach of any of the
terms and provisions of, or constitute (with or without notice or lapse of time) a default
under, the articles of organization or bylaws of the Indenture Trustee or any agreement or
other instrument to which the Indenture Trustee is a party or by which it is bound.

        (d)To the Indenture Trustee's best knowledge, there are no Proceedings or
investigations pending or threatened before any court, regulatory body, administrative
agency or other governmental instrumentality having jurisdiction over the Indenture Trustee

or its properties (A) asserting the invalidity of this Indenture, (B) seeking to prevent the
consummation of any of the transactions contemplated by this Indenture or (C) seeking any
determination or ruling that might materially and adversely affect the performance by the
Indenture Trustee of its obligations under, or the validity or enforceability of, this
Indenture.

        (e)The Indenture Trustee does not have notice of any adverse claim (as such
terms are used in Section 8-302 of the UCC in effect in the State of Delaware) with respect
to the Mortgage Loans.

        Section 6.14 Directions to Indenture Trustee. The Indenture Trustee is hereby
directed:

        (a)to accept the pledge of the Mortgage Loans and hold the assets of the
Trust in trust for the Noteholders and the Enhancer;

        (b)to authenticate and deliver the Notes substantially in the form prescribed
by Exhibit A in accordance with the terms of this Indenture; and

        (c)to take all other actions as shall be required to be taken by the terms of
this Indenture.

        Section 6.15 Indenture Trustee May Own Securities. The Indenture Trustee, in its
individual or any other capacity, may become the owner or pledgee of Securities with the
same rights it would have if it were not Indenture Trustee.

---

ARTICLE VII

Noteholders' Lists and Reports

        Section 7.01 Issuer to Furnish Indenture Trustee Names and Addresses of
Noteholders. The Issuer shall furnish or cause to be furnished to the Indenture Trustee (a)
not more than five days after each Record Date, a list, in such form as the Indenture
Trustee may reasonably require, of the names and addresses of the Noteholders as of such

Record Date, and (b) at such other times as the Indenture Trustee and the Enhancer may
request in writing, within 30 days after receipt by the Issuer of any such request, a list
of similar form and content as of a date not more than 10 days prior to the time such list
is furnished; provided, however, that for so long as the Indenture Trustee is the Note
Registrar, no such list need be furnished.

Section 7.02    Preservation of Information; Communications to Noteholders.

(a)The Indenture Trustee shall preserve, in as current a form as is
reasonably practicable, the names and addresses of the Noteholders contained in the most
recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and
addresses of the Noteholders received by the Indenture Trustee in its capacity as Note
Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such
Section 7.01 upon receipt of a new list so furnished.

(b)Noteholders may communicate pursuant to TIA ss. 312(b) with other
Noteholders and the Enhancer with respect to their rights under this Indenture or under the
Notes.

(c)The Issuer, the Indenture Trustee and the Note Registrar shall have the
protection of TIA ss. 312(c).

Section 7.03    Reports by Issuer.

(a)The Issuer shall:

(i) file with the Indenture Trustee, within 15 days after the
Issuer is required to file the same with the Commission, copies of the annual reports
and the information, documents and other reports (or copies of such portions of any
of the foregoing as the Commission may from time to time by rules and regulations
prescribe) that the Issuer may be required to file with the Commission pursuant to
Section 13 or 15(d) of the Exchange Act;

(ii) file with the Indenture Trustee and the Commission, in
accordance with rules and regulations prescribed from time to time by the Commission,
such additional information, documents and reports with respect to compliance by the

Issuer with the conditions and covenants of this Indenture as may be required from
time to time by such rules and regulations; and

(iii) supply to the Indenture Trustee (and the Indenture Trustee
shall transmit by mail to all Noteholders described in TIA§. 313(c)) such summaries
of any information, documents and reports required to be filed by the Issuer pursuant
to clauses (i) and (ii) of this Section 7.03(a) and by rules and regulations
prescribed from time to time by the Commission.

(b)Unless the Issuer otherwise determines, the fiscal year of the Issuer
shall end on December 31 of each year.

Section 7.04  Reports by Indenture Trustee. If required by TIA§.313(a), within 60
days after each January 1, beginning with January 1, 2007, the Indenture Trustee shall make
available to each Noteholder as required by TIA§.313(c) and to the Enhancer a brief report
dated as of such date that complies with TIA§.313(a). The Indenture Trustee also shall
comply with TIA§.313(b).

A copy of each report at the time of its distribution to Noteholders shall be filed
by the Indenture Trustee with the Commission, if required, and each stock exchange, if any,
on which the Notes are listed. The Issuer shall notify the Indenture Trustee if and when
the Notes are listed on any stock exchange.

Section 7.05  Exchange Act Reporting. In connection with the preparation and filing
of periodic reports by the Servicer pursuant to Article IV of the Servicing Agreement, the
Indenture Trustee shall timely provide to the Servicer (I) a list of Holders as shown on the
Note Register or Certificate Register as of the end of each calendar year, (II) copies of
all pleadings, other legal process and any other documents relating to any claims, charges
or complaints involving the Indenture Trustee, as indenture trustee hereunder, or the Trust
Estate that are received by the Indenture Trustee, (III) notice of all matters that, to the
actual knowledge of a Responsible Officer of the Indenture Trustee, have been submitted to a
vote of the Holders, other than those matters that have been submitted to a vote of the
Holders at the request of the Depositor or the Servicer, and (IV) notice of any failure of

the Indenture Trustee to make any payment to the Holders as required pursuant to this
Indenture. The Indenture Trustee shall not have any liability with respect to the
Servicer's failure to properly prepare or file such periodic reports and the Servicer shall
not have any liability with respect to such failure resulting from or relating to the
Servicer's inability or failure to obtain any information not resulting from the Servicer's
own negligence or willful misconduct.

ARTICLE VIII

Accounts, Disbursements and Releases

Section 8.01  Collection of Money.  Except as otherwise expressly provided herein,
the Indenture Trustee may demand payment or delivery of, and shall receive and collect,
directly and without intervention or assistance of any fiscal agent or other intermediary,
all money and other property payable to or receivable by the Indenture Trustee pursuant to
this Indenture. The Indenture Trustee shall apply all such money received by it as provided
in this Indenture. Except as otherwise expressly provided in this Indenture, if any default
occurs in the making of any payment or performance under any agreement or instrument that is
part of the Trust Estate, the Indenture Trustee may take such action as may be appropriate
to enforce such payment or performance, including the institution and prosecution of
appropriate Proceedings. Any such action shall be without prejudice to any right to claim a
Default or Event of Default under this Indenture and any right to proceed thereafter as
provided in Article V.

Section 8.02  Trust Accounts.

(a) On or prior to the Closing Date, the Issuer shall cause the Indenture
Trustee to establish and maintain, in the name of the Indenture Trustee, for the benefit of
the Noteholders, the Certificate Paying Agent, on behalf of the Certificateholders, and the
Enhancer, the Note Payment Account as provided in Section 3.01 of this Indenture.

(b)All monies deposited from time to time in the Note Payment Account pursuant to the Servicing Agreement and all deposits therein pursuant to this Indenture are for the benefit of the Noteholders, the Enhancer and the Certificate Paying Agent, on behalf of the Certificateholders, and all investments made with such monies, including all income or other gain from such investments, are for the benefit of the Servicer as provided in Section 5.01 of the Servicing Agreement.

On each Payment Date, the Indenture Trustee shall distribute all amounts on deposit in the Note Payment Account to the Noteholders in respect of the Notes and, in its capacity as Certificate Paying Agent, to the Certificateholders from the Distribution Account in the order of priority set forth in Section 3.05 (except as otherwise provided in Section 5.04(b)) and in accordance with the Servicing Certificate.

The Indenture Trustee shall invest any funds in the Note Payment Account in Permitted Investments selected in writing by the Servicer maturing no later than the Business Day preceding the next succeeding Payment Date (except that any investment in the institution with which the Note Payment Account is maintained may mature on such Payment Date) and shall not be sold or disposed of prior to the maturity. In addition, such Permitted Investments shall not be purchased at a price in excess of par. The Indenture Trustee shall have no liability whatsoever for investment losses on Permitted Investments, if such investments are made in accordance with the provisions of this Indenture and the Indenture Trustee is not the obligor under the Permitted Investment.

Section 8.03 Officer's Certificate. The Indenture Trustee shall receive at least seven days' notice when requested by the Issuer to take any action pursuant to Section 8.05(a), accompanied by copies of any instruments to be executed, and the Indenture Trustee shall also require, as a condition to such action, an Officer's Certificate, in form and substance satisfactory to the Indenture Trustee, stating the legal effect of any such action, outlining the steps required to complete the same, and concluding that all conditions precedent to the taking of such action have been complied with.

Section 8.04 Termination Upon Distribution to Noteholders. This Indenture and the

respective  obligations  and  responsibilities  of the Issuer and the Indenture Trustee created
hereby shall  terminate  upon  the  distribution  to the  Noteholders,  the  Certificate Paying
Agent on behalf of the  Certificateholders  and the Indenture  Trustee of all amounts required
to be distributed  pursuant  to Article III and the  distribution  to the Credit  Enhancer of all
amounts  owing  to it;  provided,  however,  that in no event  shall the trust  created hereby
continue  beyond the expiration  of 21 years from the death of the survivor of the descendants
of Joseph P. Kennedy,  the late  ambassador  of the United States to the Court of St. James's,
living on the date hereof.

Section 8.05  Release of Trust Estate.

(a)Subject  to the  payment  of its fees,  expenses  and  indemnification,  the
Indenture  Trustee  may,  and  when  required  by the  provisions  of  this  Indenture  or the
Servicing  Agreement,  shall,  execute  instruments to release  property  from the lien of this
Indenture,  or convey the  Indenture  Trustee's  interest  in the same,  in a manner and under
circumstances  that are not  inconsistent  with the  provisions of this  Indenture.  No Person
relying  upon an  instrument  executed by the  Indenture  Trustee as provided in Article VIII
hereunder  shall be bound to ascertain the  Indenture  Trustee's  authority,  inquire into the
satisfaction of any conditions precedent, or see to the application of any monies.

(b)The  Indenture  Trustee  shall,  at such  time  as  (i) there  are no Notes
Outstanding,  (ii) all sums due the Indenture  Trustee  pursuant to this  Indenture  have been
paid and  (iii) all  sums due the Enhancer  have been paid and the Policy has been returned to
the Credit  Enhancer,  release any  remaining  portion of the Trust  Estate  that secured the
Notes from the lien of this Indenture.

(c)The  Indenture  Trustee  shall  release  property  from  the lien  of this
Indenture  pursuant to this  Section 8.05  only upon  receipt of an Issuer Request accompanied
by an Officers'  Certificate  and a letter from the Enhancer  stating that the Enhancer has no
objection to such request from the Issuer.

(d)The  Indenture  Trustee  shall,  at  the  request  of  the  Issuer or the
Depositor,  surrender  the Policy to the  Enhancer  for  cancellation,  upon final payment of
principal of and interest on the Notes.

Section 8.06  Surrender of Notes Upon Final  Payment.  By acceptance of any Note, the
Noteholder  thereof agrees to surrender such Note to the Indenture Trustee promptly, prior to
such Noteholder's receipt of the final payment thereon.

---

ARTICLE IX

Supplemental Indentures

Section 9.01  Supplemental Indentures Without Consent of Noteholders.

(a)Without the consent of the  Noteholders of any Notes,  but with prior notice
to the Rating  Agencies and the prior  written  consent of the Enhancer  (which  consent shall
not be unreasonably  withheld and so long as no Enhancer Default  exists),  the Issuer and the
Indenture  Trustee,  when authorized by an Issuer Request,  at any time and from time to time,
may  enter  into one or more  indentures  supplemental hereto (which  shall  conform to the
provisions of the Trust  Indenture Act as in force at the date of the execution thereof),  in
form satisfactory to the Indenture Trustee, for any of the following purposes:

(i)   to correct or amplify  the  description  of any  property at any
time subject to the lien of this  Indenture,  or better to assure,  convey and confirm
unto the  Indenture  Trustee any  property  subject or required to be subjected to the
lien of this  Indenture,  or to  subject  to the  lien  of this  Indenture additional
property;

(ii)  to evidence the  succession,  in compliance  with the applicable
provisions  hereof,  of another  Person to the Issuer,  and the assumption by any such
successor of the covenants of the Issuer herein and in the Notes contained;

(iii) to add to the  covenants  of the  Issuer,  for the benefit of the
Noteholders or the Enhancer,  or to surrender any right or power herein conferred upon
the Issuer;

(iv)  to convey,  transfer,  assign, mortgage or pledge any property to

or with the Indenture Trustee;

(v)   to cure any  ambiguity,  to  correct  any error or to correct or
supplement  any  provision  herein  or in  any  supplemental  indenture  that  may  be
inconsistent with any other provision herein or in any supplemental indenture;

(vi)  to  make  any  other   provisions  with  respect  to  matters  or
questions  arising under this Indenture or in any  supplemental  indenture;  provided,
that such action  shall not  materially  and  adversely  affect the  interests  of the
Noteholders or the Enhancer (as evidenced by an Opinion of Counsel);

(vii)  to evidence  and provide for the   acceptance  of the  appointment
hereunder  by a successor  trustee  with  respect to the Notes and to add to or  change
any of the  provisions  of this  Indenture  as shall be necessary  to  facilitate  the
administration  of the trusts  hereunder  by more than one  trustee,  pursuant  to the
requirements of Article VI; or

(viii) to modify,  eliminate or add to the  provisions of this  Indenture
to such extent as shall be necessary  to effect the  qualification  of this  Indenture
under TIA or under any similar  federal statute  hereafter  enacted and to add to this
Indenture such other provisions as may be expressly required by TIA;

provided,  however,  that no such  supplemental  indenture  shall be entered  into  unless the
Indenture  Trustee  shall have received an Opinion of Counsel to the effect that the  execution
of such  supplemental  indenture will not give rise to any material adverse tax  consequence to
the Noteholders, including any Adverse REMIC Event.

The  Indenture  Trustee  is hereby  authorized  to join in the  execution  of any  such
supplemental  indenture and to make any further  appropriate  agreements and stipulations  that
may be therein contained.

(b)The  Issuer  and  the  Indenture  Trustee,  when  authorized  by  an  Issuer
Request,  may,  without  the  consent of any  Noteholder  but with  prior  notice to the  Rating
Agencies and the Enhancer,  enter into an indenture or indentures  supplemental hereto  for the
purpose of adding any  provisions  to, or  changing  in any manner or  eliminating  any  of the

provisions of, this Indenture or of modifying in any manner the rights of the Noteholders under this Indenture; provided, however, that such action shall not, as evidenced by an Opinion of Counsel, (i) adversely affect in any material respect the interests of any Noteholder or the Enhancer or (ii) cause the Issuer to be subject to an entity level tax.

Section 9.02 Supplemental Indentures With Consent of Noteholders. The Issuer and the Indenture Trustee, when authorized by an Issuer Request, may, with prior notice to the Rating Agencies and with the consent of the Enhancer and the Noteholders of not less than a majority of the Note Balances affected thereby, by Act (as defined in Section 10.03 hereof) of such Noteholders delivered to the Issuer and the Indenture Trustee, enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or of modifying in any manner the rights of the Noteholders under this Indenture; provided, however, that no such supplemental indenture shall, without the consent of the Noteholder of each Note affected thereby:

(a) change the date of payment of any installment of principal of or interest on any Note, or reduce the principal amount thereof or the Note Rate thereon, change the provisions of this Indenture relating to the application of collections on, or the proceeds of the sale of, the Trust Estate to payment of principal of or interest on the Notes, or change any place of payment where, or the coin or currency in which, any Note or the interest thereon is payable, or impair the right to institute suit for the enforcement of the provisions of this Indenture requiring the application of funds available therefor, as provided in Article V, to the payment of any such amount due on the Notes on or after the respective due dates thereof;

(b) reduce the percentage of the Note Balances, the consent of the Noteholders of which is required for any such supplemental indenture, or the consent of the Noteholders of which is required for any waiver of compliance with certain provisions of this Indenture or certain defaults hereunder and their consequences provided for in this Indenture;

(c) modify or alter the provisions of the proviso to the definition of the

term "Outstanding" or modify or alter the exception in the definition of the term
"Noteholder";

(d) reduce the percentage of the aggregate Note Balance of the Notes required
to direct the Indenture Trustee to direct the Issuer to sell or liquidate the Trust Estate
pursuant to Section 5.04;

(e) modify any provision of this Section 9.02 except to increase any
percentage specified herein or to provide that certain additional provisions of this
Indenture or the other Basic Documents cannot be modified or waived without the consent of
the Noteholder of each Note affected thereby;

(f) modify any of the provisions of this Indenture in such manner as to affect
the calculation of the amount of any payment of interest or principal due on any Note on any
Payment Date (including the calculation of any of the individual components of such
calculation); or

(g) permit the creation of any lien ranking prior to or on a parity with the
lien of this Indenture with respect to any part of the Trust Estate or, except as otherwise
permitted or contemplated herein, terminate the lien of this Indenture on any property at
any time subject hereto or deprive the Noteholder of any Note of the security provided by
the lien of this Indenture; and provided further, that such action shall not, as evidenced
by an Opinion of Counsel, cause the Issuer to be subject to an entity level tax or cause any
Adverse REMIC Event.

The Indenture Trustee may in its discretion determine whether or not any Notes would
be affected by any supplemental indenture and any such determination shall be conclusive
upon the Noteholders of all Notes, whether theretofore or thereafter authenticated and
delivered hereunder. The Indenture Trustee shall not be liable for any such determination
made in good faith.

It shall not be necessary for any Act (as defined in Section 10.03 hereof) of
Noteholders under this Section 9.02 to approve the particular form of any proposed
supplemental indenture, but it shall be sufficient if such Act shall approve the substance
thereof.

Promptly after the execution by the Issuer and the Indenture Trustee of any supplemental indenture pursuant to this Section 9.02, the Indenture Trustee shall mail to the Noteholders of the Notes to which such amendment or supplemental indenture relates a notice setting forth in general terms the substance of such supplemental indenture. Any failure of the Indenture Trustee to mail such notice, or any defect therein, shall not, however, in any way impair or affect the validity of any such supplemental indenture.

Section 9.03 Execution of Supplemental Indentures. In executing, or permitting the additional trusts created by, any supplemental indenture permitted by this Article IX or the modification thereby of the trusts created by this Indenture, the Indenture Trustee shall be entitled to receive and, subject to Sections 6.01 and 6.02, shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Indenture Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Indenture Trustee's own rights, duties, liabilities or immunities under this Indenture or otherwise.

Section 9.04 Effect of Supplemental Indenture. Upon the execution of any supplemental indenture pursuant to the provisions hereof, this Indenture shall be and shall be deemed to be modified and amended in accordance therewith with respect to the Notes affected thereby, and the respective rights, limitations of rights, obligations, duties, liabilities and immunities under this Indenture of the Indenture Trustee, the Issuer, the Enhancer and the Noteholders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modifications and amendments, and all the terms and conditions of any such supplemental indenture shall be and be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 9.05 Conformity with Trust Indenture Act. Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of TIA as in effect at the time of such amendment or supplement so long as this Indenture shall then be qualified under TIA.

Section 9.06  Reference in Notes to Supplemental  Indentures.  Notes authenticated and
delivered after the execution of any supplemental  indenture  pursuant to this Article IX may,
and if required by the  Indenture  Trustee,  shall,  bear a notation in form  approved by the
Indenture  Trustee  as to any  matter  provided  for in such  supplemental  indenture.  If the
Issuer or the Indenture  Trustee shall so determine,  new Notes so modified as to conform,  in
the opinion of the Indenture Trustee and the Issuer,  to any such  supplemental  indenture may
be prepared  and  executed by the Issuer and  authenticated  and  delivered  by the  Indenture
Trustee in exchange for Outstanding Notes.

---

ARTICLE X

Miscellaneous

Section 10.01 Compliance Certificates and Opinions, etc.

(a)Upon any  application  or request by the Issuer to the Indenture  Trustee to
take any  action  under any  provision  of this  Indenture,  the Issuer  shall  furnish to the
Indenture  Trustee  and  to  the  Enhancer (i) an  Officer's  Certificate  stating  that all
conditions  precedent,  if any, provided for in this Indenture relating to the proposed action
have been  complied  with and (ii) an  Opinion of Counsel  stating that in the opinion of such
counsel all such conditions  precedent,  if any, have been complied with,  except that,  in the
case of any such  application  or  request as to which the  furnishing  of such  documents  is
specifically  required by any  provision  of this  Indenture,  no  additional  certificate  or
opinion need be furnished.

Every  certificate or opinion with respect to compliance  with a condition or covenant
provided for in this Indenture shall include:

(i)   a statement  that each  signatory of such  certificate or opinion
has read or has  caused  to be read such  covenant  or  condition  and the  definitions
herein relating thereto;

(ii)    a brief   statement as to the nature and scope of the examination
or investigation  upon which the statements or opinions  contained in such certificate
or opinion are based;

(iii)  a statement  that,  in the opinion of each such  signatory, such
signatory has made such  examination or  investigation  as is necessary to enable such
signatory to express an  informed  opinion  as to  whether  or not such covenant  or
condition has been complied with;

(iv)  a  statement  as  to  whether,  in  the  opinion  of  each such
signatory, such condition or covenant has been complied with; and

(v)    if the signer of such  certificate  or opinion is  required to be
Independent, the statement required by the definition of the term "Independent."

(b)(i) Prior to the deposit of any  Collateral or other  property or securities
with the  Indenture  Trustee  that is to be made the basis for the release of any property or
securities  subject  to the lien of this  Indenture,  the Issuer  shall,  in  addition to any
obligation  imposed  in  Section 10.01(a)  or  elsewhere  in this  Indenture,  furnish to the
Indenture  Trustee an Officer's  Certificate  certifying or stating the opinion of each person
signing such  certificate  as to the fair value (within 90 days of such deposit) to the Issuer
of the Collateral or other property or securities to be so deposited.

(ii)   Whenever  the Issuer is  required  to  furnish  to the Indenture
Trustee an  Officer's  Certificate  certifying  or stating  the  opinion of any signer
thereof as to the  matters  described  in  clause (i)  above,  the  Issuer  shall also
deliver  to the Indenture  Trustee an  Independent  Certificate as to the same matters,
if the fair value to the Issuer of the  securities to be so deposited and of all other
such  securities  made  the  basis  of  any  such  withdrawal  or  release  since the
commencement  of the  then-current  fiscal  year of the  Issuer,  as set  forth in the
certificates  delivered  pursuant to clause (i) above and this clause (ii),  is 10% or
more of the aggregate  Note Balance of the  Notes,  but such a certificate  need not be
furnished  with respect to any  securities so deposited,  if the fair value thereof to

the Issuer as set forth in the related  Officer's  Certificate is less than $25,000 or
less than one percent of the aggregate Note Balance of the Notes.

(iii)  Whenever any property or  securities  are to be released from the
lien of  this  Indenture,  the  Issuer  shall  furnish  to the  Indenture Trustee an
Officer's  Certificate  certifying or stating the opinion of each person  signing such
certificate  as to the fair value  (within 90 days of such release) of the property or
securities  proposed  to be released and stating that in the opinion of such person the
proposed  release will not impair the security under this  Indenture in contravention
of the provisions hereof.

(iv)  Whenever  the Issuer is  required  to  furnish  to the Indenture
Trustee an  Officer's  Certificate  certifying  or stating  the  opinion of any signer
thereof as to the matters  described  in clause  (iii)  above,  the Issuer  shall also
furnish  to the Indenture Trustee an Independent  Certificate as to the same matters if
the fair value of the property or  securities  and of all other  property,  other than
property as contemplated  by clause (v) below or securities  released from the lien of
this Indenture since the commencement  of the then-current  calendar year, as set forth
in the  certificates  required by clause (iii) above and this clause (iv), equals 10%
or more of the aggregate Note Balance of the Notes,  but such  certificate need not be
furnished  in the case of any  release of  property  or  securities  if the fair value
thereof as set forth in the  related  Officer's  Certificate  is less than $25,000 or
less than one percent of the aggregate Note Balance of the Notes.

(v)  Notwithstanding  the foregoing,  this Section  10.01(b) shall not
apply to (A) collection  upon,  sales or other  dispositions  of the Mortgage Loans as
and to the extent  permitted  or required by the Basic  Documents or (B) the making of
cash  payments  out of the Note  Payment  Account  as and to the extent permitted  or
required by the Basic Documents,  so long as the Issuer shall deliver to the Indenture
Trustee every six months,  commencing  December 31, 2006, an Officer's Certificate of
the Issuer stating that all the  dispositions  of Collateral  described in clauses (A)

or (B) above that occurred during the preceding six calendar months (or such longer
period, in the case of the first such Officer's Certificate) were permitted or
required by the Basic Documents and that the proceeds thereof were applied in
accordance with the Basic Documents.

Section 10.02 Form of Documents Delivered to Indenture Trustee.

In any case where several matters are required to be certified by, or covered by an
opinion of, any specified Person, it is not necessary that all such matters be certified by,
or covered by the opinion of, only one such Person, or that they be so certified or covered
by only one document, but one such Person may certify or give an opinion with respect to
some matters and one or more other such Persons as to other matters, and any such Person may
certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Officer of the Issuer may be based,
insofar as it relates to legal matters, upon a certificate or opinion of, or representations
by, counsel, unless such officer knows, or in the exercise of reasonable care should know,
that the certificate or opinion or representations with respect to the matters upon which
his certificate or opinion is based are erroneous. Any such certificate of an Authorized
Officer or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a
certificate or opinion of, or representations by, an officer or officers of any Seller or
the Issuer, stating that the information with respect to such factual matters is in the
possession of any Seller or the Issuer, unless such counsel knows, or in the exercise of
reasonable care should know, that the certificate or opinion or representations with respect
to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications,
requests, consents, certificates, statements, opinions or other instruments under this
Indenture, they may, but need not, be consolidated and form one instrument.

Whenever in this Indenture, in connection with any application or certificate or
report to the Indenture Trustee, it is provided that the Issuer shall deliver any document
as a condition of the granting of such application, or as evidence of the Issuer's

compliance with any term hereof, it is intended that the truth and accuracy, at the time of
the granting of such application or at the effective date of such certificate or report (as
the case may be), of the facts and opinions stated in such document shall in such case be
conditions precedent to the right of the Issuer to have such application granted or to the
sufficiency of such certificate or report. The foregoing shall not, however, be construed
to affect the Indenture Trustee's right to rely upon the truth and accuracy of any statement
or opinion contained in any such document as provided in Article VI.

        Section 10.03 Acts of Noteholders.

                (a)Any request, demand, authorization, direction, notice, consent, waiver or
other action provided by this Indenture to be given or taken by Noteholders may be embodied
in and evidenced by one or more instruments of substantially similar tenor signed by such
Noteholders in person or by agents duly appointed in writing; and except as herein otherwise
expressly provided such action shall become effective when such instrument or instruments
are delivered to the Indenture Trustee, and, where it is hereby expressly required, to the
Issuer. Such instrument or instruments (and the action embodied therein and evidenced
thereby) are herein sometimes referred to as the "Act" of the Noteholders signing such
instrument or instruments. Proof of execution of any such instrument or of a writing
appointing any such agent shall be sufficient for any purpose of this Indenture and (subject
to Section 6.01) conclusive in favor of the Indenture Trustee and the Issuer, if made in the
manner provided in this Section 10.03.

                (b)The fact and date of the execution by any person of any such instrument or
writing may be proved in any manner that the Indenture Trustee deems sufficient.

                (c)The ownership of Notes shall be proved by the Note Register.

                (d)Any request, demand, authorization, direction, notice, consent, waiver or
other action by the Noteholder of any Note shall bind the Noteholder of every Note issued
upon the registration thereof or in exchange therefor or in lieu thereof, in respect of
anything done, omitted or suffered to be done by the Indenture Trustee or the Issuer in
reliance thereon, whether or not notation of such action is made upon such Note.

Section 10.04 Notices, etc., to Indenture Trustee, Issuer, Enhancer and Rating Agencies. Any request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders or other documents provided or permitted by this Indenture shall be in writing and if such request, demand, authorization, direction, notice, consent, waiver or Act of Noteholders is to be made upon, given or furnished to or filed with:

(a)the Indenture Trustee by any Noteholder or by the Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Indenture Trustee at its Corporate Trust Office with a copy to JPMorgan Chase Bank, National Association, 227 W. Monroe Street, Chicago, Illinois 60606. The Indenture Trustee shall promptly transmit any notice received by it from the Noteholders to the Issuer,

(b)the Issuer by the Indenture Trustee or by any Noteholder shall be sufficient for every purpose hereunder if in writing and mailed first-class, postage prepaid to the Issuer addressed to: GMACM Home Equity Loan Trust 2006-HE2, in care of the Owner Trustee, or at any other address previously furnished in writing to the Indenture Trustee by the Issuer. The Issuer shall promptly transmit any notice received by it from the Noteholders to the Indenture Trustee, or

(c)the Enhancer by the Issuer, the Indenture Trustee or by any Noteholders shall be sufficient for every purpose hereunder to in writing and mailed, first-class postage pre-paid, or personally delivered or telecopied to: Financial Guaranty Insurance Company, 125 Park Avenue, New York, New York 10017, Attention: Structured Finance Surveillance (GMACM Home Equity Loan Trust 2006-HE2), telecopier number (212) 312-3220. The Enhancer shall promptly transmit any notice received by it from the Issuer, the Indenture Trustee or the Noteholders to the Issuer or Indenture Trustee, as the case may be.

Notices required to be given to the Rating Agencies by the Issuer, the Indenture Trustee or the Owner Trustee shall be in writing, personally delivered or mailed by certified mail, return receipt requested, to (i) in the case of Moody's, at the following address: Moody's Investors Service, Inc., ABS Monitoring Department, 99 Church Street, New York, New York 10007 and (ii) in the case of Standard & Poor's, at the following address:

Standard & Poor's, 55 Water Street, New York, New York 10041-0003, Attention: Asset Backed
Surveillance Department; or, as to each of the foregoing Persons, at such other address as
shall be designated by written notice to the other foregoing Persons.

      Section 10.05 Notices to Noteholders; Waiver. Where this Indenture provides for a
Notice, certificate, opinion, report or similar delivery to be given to any transaction
party or to a Rating Agency, a copy of such document shall be contemporaneously sent to the
Enhancer. Where this Indenture provides for notice to Noteholders of any event, such notice
shall be sufficiently given (unless otherwise herein expressly provided) if in writing and
mailed, first-class, postage prepaid to each Noteholder affected by such event, at such
Person's address as it appears on the Note Register, not later than the latest date, and not
earlier than the earliest date, prescribed for the giving of such notice. In any case where
notice to Noteholders is given by mail, neither the failure to mail such notice nor any
defect in any notice so mailed to any particular Noteholder shall affect the sufficiency of
such notice with respect to other Noteholders, and any notice that is mailed in the manner
herein provided shall conclusively be presumed to have been duly given regardless of whether
such notice is in fact actually received.

      Where this Indenture provides for notice in any manner, such notice may be waived in
writing by any Person entitled to receive such notice, either before or after the event, and
such waiver shall be the equivalent of such notice. Waivers of notice by Noteholders shall
be filed with the Indenture Trustee, but such filing shall not be a condition precedent to
the validity of any action taken in reliance upon such a waiver.

      In case, by reason of the suspension of regular mail service as a result of a strike,
work stoppage or similar activity, it shall be impractical to mail notice of any event to
Noteholders when such notice is required to be given pursuant to any provision of this
Indenture, then any manner of giving such notice as shall be satisfactory to the Indenture
Trustee shall be deemed to be a sufficient giving of such notice.

      Where this Indenture provides for notice to the Rating Agencies, failure to give such
notice shall not affect any other rights or obligations created hereunder, and shall not
under any circumstance constitute an Event of Default.

Section 10.06 Alternate Payment and Notice Provisions. Notwithstanding any provision
of this Indenture or any of the Notes to the contrary, the Issuer may enter into any
agreement with any Noteholder providing for a method of payment, or notice by the Indenture
Trustee to such Noteholder, that is different from the methods provided for in this
Indenture for such payments or notices. The Issuer shall furnish to the Indenture Trustee a
copy of each such agreement and the Indenture Trustee shall cause payments to be made and
notices to be given in accordance with such agreements.

Section 10.07 Conflict with Trust Indenture Act. If any provision hereof limits,
qualifies or conflicts with another provision hereof that is required to be included in this
Indenture by any of the provisions of TIA, such required provision shall control.

The provisions of TIAss.ss. 310 through 317 that impose duties on any Person (including
the provisions automatically deemed included herein unless expressly excluded by this
Indenture) are a part of and govern this Indenture, whether or not physically contained
herein.

Section 10.08 Effect of Headings. The Article and Section headings herein are for
convenience only and shall not affect the construction hereof.

Section 10.09 Successors and Assigns. All covenants and agreements in this Indenture
and the Notes by the Issuer shall bind its successors and assigns, whether so expressed or
not. All agreements of the Indenture Trustee in this Indenture shall bind its successors,
co-trustees and agents.

Section 10.10 Severability. In case any provision in this Indenture or in the Notes
shall be held invalid, illegal or unenforceable, the validity, legality, and enforceability
of the remaining provisions hereof shall not in any way be affected or impaired thereby.

Section 10.11 Benefits of Indenture. Nothing in this Indenture or in the Notes,
express or implied, shall give to any Person, other than the parties hereto and their
successors hereunder, and the Noteholders, the Enhancer, and any other party secured
hereunder, and any other Person with an ownership interest in any part of the Trust Estate,
any benefit or any legal or equitable right, remedy or claim under this Indenture. The

Enhancer shall be a third party beneficiary of this Indenture.

Section 10.12 Legal Holidays. In any case where the date on which any payment is due
shall not be a Business Day, then (notwithstanding any other provision of the Notes or this
Indenture) payment need not be made on such date, but may be made on the next succeeding
Business Day with the same force and effect as if made on the date on which nominally due,
and no interest shall accrue for the period from and after any such nominal date.

Section 10.13 GOVERNING LAW. THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY AND
CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE
CONFLICT OF LAW PRINCIPLES THEREOF, OTHER THAN SECTIONS 5-1401 AND 5-1402 OF THE NEW YORK
GENERAL OBLIGATIONS LAW, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER
SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 10.14 Counterparts. This Indenture may be executed in any number of
counterparts, each of which so executed shall be deemed to be an original, but all such
counterparts shall together constitute but one and the same instrument.

Section 10.15 Recording of Indenture. If this Indenture is subject to recording in
any appropriate public recording offices, such recording is to be effected by the Issuer and
at its expense accompanied by an Opinion of Counsel (which counsel shall be reasonably
acceptable to the Indenture Trustee) to the effect that such recording is necessary either
for the protection of the Noteholders or any other Person secured hereunder or for the
enforcement of any right or remedy granted to the Indenture Trustee under this Indenture.

Section 10.16 Issuer Obligation. No recourse may be taken, directly or indirectly,
with respect to the obligations of the Issuer, the Owner Trustee or the Indenture Trustee on
the Notes or under this Indenture or any certificate or other writing delivered in
connection herewith or therewith, against (i) the Indenture Trustee or the Owner Trustee in
its individual capacity, (ii) any owner of a beneficial interest in the Issuer or (iii) any
partner, owner, beneficiary, agent, officer, director, employee or agent of the Indenture
Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest
in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of

the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such
Person may have expressly agreed (it being understood that the Indenture Trustee and the
Owner Trustee have no such obligations in their respective individual capacities), and
except that any such partner, owner or beneficiary shall be fully liable, to the extent
provided by applicable law, for any unpaid consideration for stock, unpaid capital
contribution or failure to pay any installment or call owing to such entity. For all
purposes of this Indenture, in the performance of any duties or obligations of the Issuer
hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms
and provisions of Articles VI, VII and VIII of the Trust Agreement.

    Section 10.17 No Petition. The Indenture Trustee, by entering into this Indenture,
and each Noteholder, by its acceptance of a Note, hereby covenant and agree that they will
not at any time institute against the Depositor or the Issuer, or join in any institution
against the Depositor or the Issuer of, any bankruptcy, reorganization, arrangement,
insolvency or liquidation proceedings, or other proceedings under any United States federal
or state bankruptcy or similar law in connection with any obligations relating to the Notes,
this Indenture or any of the other Basic Documents.

    Section 10.18 Inspection. The Issuer agrees that, on reasonable prior notice, it
shall permit any representative of the Indenture Trustee, during the Issuer's normal
business hours, to examine all the books of account, records, reports and other papers of
the Issuer, to make copies and extracts therefrom, to cause such books to be audited by
Independent certified public accountants, and to discuss the Issuer's affairs, finances and
accounts with the Issuer's officers, employees, and Independent certified public
accountants, all at such reasonable times and as often as may be reasonably requested. The
Indenture Trustee shall and shall cause its representatives to hold in confidence all such
information except to the extent disclosure may be required by law (and all reasonable
applications for confidential treatment are unavailing) and except to the extent that the
Indenture Trustee may reasonably determine that such disclosure is consistent with its
obligations hereunder.

ARTICLE XI

REMIC Provisions

Section 11.01 REMIC Administration.

(a)     The REMIC Administrator shall make an election to treat the Trust Estate, as set forth in Section 2.06 of the Trust Agreement, as three REMICs under the Code and, if necessary, under applicable state law, in accordance with Section 2.06 of the Trust Agreement.  Such election will be made on Form 1066 or other appropriate federal tax or information return (including Form 8811) or any appropriate state return for the taxable year ending on the last day of the calendar year in which the Securities are issued.  For the purposes of the REMIC elections in respect of the Trust Estate, Securities and interests
to be designated as the "regular interests" and the sole class of "residual interests" in each REMIC will be set forth in Section 11.03.  The REMIC Administrator and the Indenture Trustee shall not permit the creation of any "interests" (within the meaning of Section 860G
of the Code) in each REMIC elected in respect of the Trust Fund other than the "regular interests" and "residual interests" so designated.  The REMIC Administrator shall prepare and file or distribute such forms as may be required under the Code and related Treasury Regulations with respect to any payments of Interest Carry Forward Amounts to the holders of
the Class A-IO Notes consistent with their treatment as payments pursuant to an interest rate cap agreement for federal tax purposes. The REMIC Administrator may assume that such interest rate cap contract has a value of zero.

(b)     The Closing Date is hereby  designated  as the  "startup  day" of each of REMIC I and
REMIC II  as  designated  in Section  11.03  below,  the Trust  Estate  within the meaning of
Section 860G(a)(9) of the Code.

(c)     GMAC Mortgage  Corporation  shall hold a Class R Certificate  representing  at least a
0.01%  Percentage  Interest  in each Class of the Class R Certificates  and shall be designated
as "the tax matters  person" with  respect to each REMIC in the manner  provided under Treasury
regulations  ss.1.860F-4(d)  and  Treasury  regulations  ss.301.6231(a)(7)-1. The
REMIC Administrator,  on behalf of the Tax  Matters  Partner,  shall (i) act on behalf of each
REMIC in  relation  to  any  tax  matter  or  controversy  involving  the  Trust  Estate and
(ii) represent  the Trust Estate in any administrative or judicial  proceeding  relating to an
examination or audit by any  governmental  taxing  authority with respect  thereto.  The legal
expenses,  including  without  limitation  attorneys' or  accountants'  fees, and costs of any

such   proceeding and any liability   resulting   therefrom shall be expenses of the Trust Estate
and the   REMIC Administrator   shall be   entitled   to   reimbursement   therefor   out of amounts
attributable   to the   Mortgage   Loans on deposit in the   Custodial   Account unless such legal
expenses and costs are incurred by reason of the   REMIC Administrator's   willful misfeasance,
bad faith or gross negligence.

(d)      The   REMIC Administrator   shall prepare or cause to be prepared all of the Tax Returns
that it   determines   are   required   with   respect   to each   REMIC created   hereunder and,  if
approval   therefore is received from the applicable   District Director of the Internal Revenue
Service,   shall sign and file such returns in a timely   manner and,   otherwise,   shall, shall
deliver   such Tax Returns in a timely   manner to the Owner   Trustee,   if the Owner Trustee is
required to sign such returns in   accordance   with Section   5.03 of the Trust   Agreement, and
shall sign (if the Owner   Trustee is not so   required)   and file such Tax   Returns in a timely
manner.   The expenses of   preparing   such   returns   shall be borne by the   REMIC Administrator
without any right of   reimbursement   therefor.   The   REMIC Administrator   agrees to indemnify
and hold   harmless the Owner   Trustee with   respect to any tax or liability   arising from the
Owner   Trustee's   signing of Tax Returns   that   contain   errors or   omissions.   The Indenture
Trustee and Servicer shall promptly provide the   REMIC Administrator   with such information as
the   REMIC Administrator   may from   time to time   request   for the   purpose   of   enabling the
REMIC Administrator to prepare Tax Returns.

(e)      The   REMIC Administrator   shall provide (i) to any Transferor of a Class R Certificate
such   information   as is necessary for the   application of any tax relating to the transfer of
a Class R Certificate to any Person who is not a Permitted   Transferee,   (ii) to the Indenture
Trustee,   and the   Indenture   Trustee   shall   forward   to the   Noteholders   and the
Certificateholders,   such   information   or   reports   as are   required   by   the   Code   or the
REMIC Provisions   including   reports relating to interest,   original issue discount and market
discount   or premium   (using the   Prepayment   Assumption)   and (iii) to the   Internal Revenue
Service   the name,   title,   address and   telephone   number of the person who will serve as the
representative of each REMIC.

(f)     The Servicer and the REMIC Administrator  shall take such actions and shall cause each
REMIC created  hereunder to take such actions as are  reasonably  within the Servicer's or the
REMIC Administrator's  control and the scope of its duties more  specifically set forth herein
as shall be necessary or desirable to maintain the status of each REMIC as a  REMIC under the
REMIC Provisions  (and the  Indenture  Trustee  shall  assist  the  Servicer  and the
REMIC Administrator,  to the  extent  reasonably  requested  by the  Servicer and the
REMIC Administrator  to do so). The Servicer and the  REMIC Administrator  shall not knowingly
or  intentionally  take any action,  cause the Trust Estate to take any action or fail to take
(or fail to cause to be taken) any action  reasonably  within their  respective  control that,
under the  REMIC Provisions,  if taken or not taken,  as the case may be,  could (i) endanger
the status of any  portion of any of the REMICs as a REMIC or  (ii)  result in the imposition
of a tax  upon  any of the  REMICs  (including but  not  limited  to  the  tax on prohibited
transactions as defined in Section  860F(a)(2) of the Code and the tax on  contributions to a
REMIC set  forth in Section  860G(d) of the Code) (either  such  event,  in the absence of an
Opinion  of  Counsel  or  the  indemnification  referred  to in  this  sentence,  an "Adverse
REMIC Event") unless the Servicer or the REMIC Administrator,  as applicable,  has received an
Opinion  of Counsel (at the  expense  of the party  seeking  to take such  action or, if such
party fails to pay such expense, and the Servicer or the  REMIC Administrator,  as applicable,
determines  that  taking  such  action is in the best  interest  of the Trust  Estate and the
Noteholders and the  Certificateholders,  at the expense of the Trust  Estate,  but in no event
at the expense of the Servicer,  the  REMIC Administrator,  the Owner Trustee or the Indenture
Trustee) to the  effect  that  the  contemplated  action  will  not, with  respect  to each
REMIC created   hereunder,  endanger  such  status  or, unless  the  Servicer, the
REMIC Administrator  or both,  as  applicable,  determine in its or their sole discretion  to
indemnify the Trust Estate against the  imposition of such a tax,  result in the imposition of
such a tax.  Wherever in this  Agreement a  contemplated  action may not be taken because the
timing of such action  might result in the  imposition  of a tax on the Trust  Estate, or may
only be taken  pursuant to an Opinion of Counsel  that such  action  would not impose a tax on

the Trust Estate, such action may nonetheless be taken provided that the indemnity given in the preceding sentence with respect to any taxes that might be imposed on the Trust Estate has been given and that all other preconditions to the taking of such action have been satisfied. The Indenture Trustee shall not take or fail to take any action (whether or not authorized hereunder) as to which the Servicer or the REMIC Administrator, as applicable, has advised it in writing that it has received an Opinion of Counsel to the effect that an Adverse REMIC Event could occur with respect to such action. In addition, prior to taking any action with respect to any of the REMICs created hereunder or any related assets thereof, or causing any of the REMICs to take any action, which is not expressly permitted under the terms of this Agreement, the Indenture Trustee will consult with the Servicer or the REMIC Administrator, as applicable, or its designee, in writing, with respect to whether such action could cause an Adverse REMIC Event to occur with respect to any of the REMICs, and the Indenture Trustee shall not take any such action or cause either REMIC to take any such action as to which the Servicer or the REMIC Administrator, as applicable, has advised it in writing that an Adverse REMIC Event could occur. The Servicer or the REMIC Administrator, as applicable, may consult with counsel to make such written advice, and the cost of same shall be borne by the party seeking to take the action not expressly permitted by this Agreement, but in no event at the expense of the Servicer or the REMIC Administrator. At all times as may be required by the Code, the Servicer will to the extent within its control and the scope of its duties more specifically set forth herein, maintain substantially all of the assets of each REMIC created hereunder as "qualified mortgages" as defined in Section 860G(a)(3) of the Code and "permitted investments" as defined in Section 860G(a)(5) of the Code.

(g)    In the event that any tax is imposed on "prohibited transactions" of any of the REMICs created hereunder as defined in Section 860F(a)(2) of the Code, on "net income from foreclosure property" of any of the REMICs as defined in Section 860G(c) of the Code, on any contributions to any of the REMICs after the Startup Day therefor pursuant to Section 860G(d) of the Code, or any other tax is imposed by the Code or any applicable provisions of

state or local tax laws, such tax shall be charged (i) to the Servicer, if such tax arises
out of or results from a breach by the Servicer of any of its obligations under this
Agreement or the Servicer has in its sole discretion determined to indemnify the Trust
Estate against such tax, (ii) to the Indenture Trustee, if such tax arises out of or results
from a breach by the Trustee of any of its obligations under this Article XI, or (iii)
otherwise against amounts on deposit in the Custodial Account and on the Payment Date(s)
following such reimbursement the aggregate of such taxes shall be allocated in reduction of
the accrued interest due on each Class entitled thereto on a pro rata basis.

(h)    The Indenture Trustee and the Servicer shall, for federal income tax purposes,
maintain books and records with respect to each REMIC created hereunder on a calendar year
and on an accrual basis or as otherwise may be required by the REMIC Provisions.

(i)    Following the Startup Day, neither the Servicer nor the Indenture Trustee shall
accept any contributions of assets to any of the REMICs created hereunder unless (subject to
Section 11.01(f)) the Servicer and the Indenture Trustee shall have received an Opinion of
Counsel (at the expense of the party seeking to make such contribution) to the effect that
the inclusion of such assets in such REMIC will not cause any of the REMICs to fail to
qualify as a REMIC at any time that any Notes or Certificates are outstanding or subject any
of the REMICs to any tax under the REMIC Provisions or other applicable provisions of
federal, state and local law or ordinances.

(j)    Neither the Servicer nor the Trustee shall (subject to Section 11.01(f)) enter into
any arrangement by which any of the REMICs created hereunder will receive a fee or other
compensation for services nor permit any of the REMICs to receive any income from assets
other than "qualified mortgages" as defined in Section 860G(a)(3) of the Code or "permitted
investments" as defined in Section 860G(a)(5) of the Code.

(k)    Solely for the purposes of Section 1.860G-1(a)(4)(iii) of the Treasury Regulations,
the "latest possible maturity date" by which the Certificate Principal Balance of each Class
of Notes and Certificates representing a regular interest in the applicable REMIC is the
Final Payment Date.

14446915.1.LITIGATION

(l)      Within 30 days after the Closing Date, the REMIC Administrator  shall prepare and file
with the Internal  Revenue  Service  Form 8811,  "Information  Return for Real Estate Mortgage
Investment  Conduits  (REMIC)  and  Issuers  of  Collateralized  Debt  Obligations"  for each
REMIC created hereunder.

(m)      Neither the Indenture  Trustee nor the Servicer  shall sell,  dispose of or substitute
for any of the Mortgage  Loans (except in connection  with (i) the default,  imminent default
or foreclosure of a Mortgage  Loan,  including but not limited to, the  acquisition or sale of
a Mortgaged  Property  acquired by deed in lieu of foreclosure,  (ii) the bankruptcy of any of
the REMICs  created  hereunder,  (iii) the  termination of the  applicable  REMIC pursuant  to
Section 8.02 of the Trust  Agreement  or (iv) a purchase  of Mortgage  Loans  pursuant to the
Purchase  Agreement) nor acquire any assets for any of the REMICs,  nor sell or dispose of any
investments  in the  Custodial  Account  or the  Payment  Account  for  gain  nor  accept any
contributions  to any of the REMICs  after the Closing  Date unless it has received an Opinion
of Counsel  that such  sale,  disposition,  substitution  or  acquisition  will not (a) affect
adversely  the  status  of any of the  REMICs  as a REMIC or  (b)  unless  the  Servicer has
determined in its sole  discretion to indemnify the Trust Estate  against such tax, cause any
REMIC to be subject to a tax on "prohibited  transactions" or "contributions"  pursuant to the
REMIC Provisions.

(n)      The  Indenture  Trustee  will  apply for an  employer  identification  number from the
Internal Revenue Service on a Form SS-4 or any other acceptable method for all tax entities.

          Section 11.02 Servicer, REMIC Administrator and Indenture Trustee Indemnification.

               The   Indenture   Trustee   agrees   to   indemnify   the   Trust   Estate, the
REMIC Administrator  and the Servicer for any taxes and costs including,  without limitation,
any reasonable  attorneys fees imposed on or incurred by the Trust Estate or the Servicer, as
a result of a breach of the  Indenture  Trustee's  covenants set forth in Article VIII or this
Article XI.

               The  REMIC Administrator  agrees to indemnify the Trust  Estate,  the Servicer,

the Depositor, the Owner Trustee and the Indenture Trustee for any taxes and costs
(including, without limitation, any reasonable attorneys' fees) imposed on or incurred by
the Trust Estate, the Depositor, GMACM Mortgage Corporation, the Servicer, the Owner Trustee
or the Indenture Trustee, as a result of a breach of the REMIC Administrator's covenants set
forth in this Article XI with respect to compliance with the REMIC Provisions, including
without limitation, any penalties arising from the Owner Trustee's execution of Tax Returns
prepared by the REMIC Administrator that contain errors or omissions; provided, however,
that such liability will not be imposed to the extent such breach is a result of an error or
omission in information provided to the REMIC Administrator by the Servicer in which case
Section 11.02(c) will apply.

The Servicer agrees to indemnify the Trust Estate, the REMIC Administrator,
the Owner Trustee and the Indenture Trustee for any taxes and costs (including, without
limitation, any reasonable attorneys' fees) imposed on or incurred by the Trust Estate, the
REMIC Administrator, the Owner Trustee or the Indenture Trustee, as a result of a breach of
the Servicer's covenants set forth in this Article XI or in Article III with respect to
compliance with the REMIC Provisions, including without limitation, any penalties arising
from the Indenture Trustee's execution of Tax Returns prepared by the Servicer that contain
errors or omissions.

Section 11.03 Designation of REMIC(s).

The REMIC Administrator will make an election to treat the entire segregated pool of
assets described in the definition of Trust Estate (but excluding the Pre-Funding Account
and the Capitalized Interest Account), and subject to this Agreement (including the Mortgage
Loans, as set forth in Section 2.06 of the Trust Agreement ) as a REMIC ("REMIC I") and will
make an election to treat the pool of assets comprised of the REMIC I Regular Interests as a
REMIC ("REMIC II") for federal income tax purposes.

The REMIC I Regular Interests will be "regular interests" in REMIC I and the Class
R-I Certificates will be the sole class of "residual interests" in REMIC I for purposes of
the REMIC Provisions under the federal income tax law.

The REMIC II Regular Interests will be "regular interests" in REMIC II and the Class

R-II Certificates will be the sole class of "residual interests" therein for purposes of the
REMIC Provisions (as defined herein) under federal income tax law.

---

          IN WITNESS WHEREOF, the Issuer and the Indenture Trustee have caused their names to
be signed hereto by their respective officers thereunto duly authorized, all as of the day
and year first above written.

                                        GMACM HOME EQUITY LOAN TRUST 2006-HE2, as Issuer


                                        By:  WILMINGTON TRUST COMPANY, not in its
                                             individual capacity but solely as Owner
                                             Trustee


                                        By:

_____            Name:
                                              Title:


                                        JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as
                                        Indenture Trustee


                                        By:

_____            Name:
                                              Title:

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
hereby accepts appointment as Paying
Agent pursuant to Section 3.03 hereof
and as Note Registrar pursuant to Section
4.02 hereof.


By: _____
          Name:
          Title:

Signatures and Seals

---

STATE OF _____    )
                                )        ss.:
COUNTY OF _____       )

       On this ___ day of June 2006, before me personally appeared _____, to me known, who being by me duly sworn, did depose and say, that he/she resides at _____,
that he/she is the _____ of Wilmington Trust Company, the Owner Trustee, one of the
corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal;
that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

        _____
        Notary Public

Acknowledgements

---

STATE OF _____    )
                                ) ss.:
COUNTY OF _____       )

       On this ___ day of June 2006, before me personally appeared _____, to me known,
who being by me duly sworn, did depose and say, that he/she resides at _____;
that
he/she is the _____ of JPMorgan Chase Bank, National Association as Indenture Trustee,
one of the corporations described in and which executed the above instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

        _____
        Notary Public

NOTORIAL SEAL

14446915.1.LITIGATION

EXHIBIT A-1
FORM OF CLASS A-1, CLASS A-2, CLASS A-3 AND CLASS A-4 NOTE

UNLESS THIS NOTE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST
COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
TRANSFER, EXCHANGE OR PAYMENT, AND ANY NOTE ISSUED IS REGISTERED IN THE NAME OF CEDE &
CO.
OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY
PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED
REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE
BY
OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN
INTEREST HEREIN.

SOLELY FOR U.S. FEDERAL INCOME TAX PURPOSES, THIS NOTE IS A "REGULAR INTEREST" IN A
"REAL
ESTATE MORTGAGE INVESTMENT CONDUIT" AS THOSE TERMS ARE DEFINED, RESPECTIVELY, IN
SECTIONS
860G AND 860D OF THE INTERNAL REVENUE CODE OF 1986 (THE "CODE").

THE PRINCIPAL OF THIS NOTE IS PAYABLE IN INSTALLMENTS AS SET FORTH HEREIN. ACCORDINGLY,
THE
OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE AMOUNT SHOWN
ON
THE FACE HEREOF.

THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLERS, THE DEPOSITOR,
THE
SERVICER, THE INDENTURE TRUSTEE, THE OWNER TRUSTEE OR GMAC MORTGAGE GROUP, INC. OR ANY OF
THEIR RESPECTIVE AFFILIATES, EXCEPT AS EXPRESSLY PROVIDED IN THE INDENTURE OR THE OTHER
BASIC DOCUMENTS.

THE HOLDER OF THIS NOTE IS DEEMED TO HAVE REPRESENTED THAT THE ACQUISITION OF THIS NOTE
BY
THE HOLDER DOES NOT CONSTITUTE OR GIVE RISE TO A PROHIBITED TRANSACTION UNDER SECTION 406
OF
ERISA OR SECTION 4975 OF THE CODE, FOR WHICH NO STATUTORY, REGULATORY OR ADMINISTRATIVE
EXEMPTION IS AVAILABLE.

GMACM Home Equity Loan-Backed Term Note, Class A-[___]

Registered

Initial Note Balance:  $[    ]

No. A-[___]-___

Note Rate:  [_____%]

CUSIP NO. [   ]

GMACM HOME EQUITY LOAN TRUST 2006-HE2

        GMACM Home Equity Loan Trust 2006-HE2, a statutory trust duly organized and existing
under the laws of the State of Delaware (herein referred to as the "Issuer"), for value
received, hereby promises to pay to Cede & Co. or its registered assigns, the principal sum
of [_____] Dollars ($[_____]), payable on each Payment Date in an amount
equal to the pro rata portion allocable hereto (based on the Initial Note Balance specified
above and the Initial Note Balance of all A-[___] Notes) of the aggregate amount, if any,
payable from the Note Payment Account in respect of principal of the Class A-[___] Notes (the
"Notes") pursuant to Section 3.05 of the indenture dated as of June 29, 2006 (the "Indenture"), between the Issuer and JPMorgan Chase Bank, National Association as indenture
trustee (the "Indenture Trustee"); provided, however, that the entire unpaid principal
amount of this Note shall be due and payable on the Payment Date in May 2036, to the extent
not previously paid on a prior Payment Date.  Capitalized terms used herein that are not
otherwise defined shall have the meanings ascribed thereto in Appendix A to the Indenture.

        Interest on the Notes will be paid monthly on each Payment Date at the Note Rate for
the related Class of Notes for the Interest Period.

        This Note is entitled to the benefits of an irrevocable and unconditional financial
guaranty insurance policy issued by Financial Guaranty Insurance Company (the "Enhancer").

        Principal of and interest on this Note are payable in such coin or currency of the
United States of America as at the time of payment is legal tender for payment of public and
private debts.  All payments made by the Issuer with respect to this Note shall be applied
first to interest due and payable on this Note as provided above and then to the unpaid
principal of this Note.

        Unless the certificate of authentication hereon has been executed by the Indenture
Trustee whose name appears below by manual signature, this Note shall not be entitled to any
benefit under the Indenture referred to herein, or be valid or obligatory for any purpose.

This Note is one of a duly authorized issue of Notes of the Issuer, designated as its
GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2 (the "Series 2006-HE2 Notes"), all
issued under the Indenture, to which Indenture and all indentures supplemental thereto
reference is hereby made for a statement of the respective rights and obligations thereunder
of the Issuer, the Indenture Trustee and the Noteholders of the Series 2006-HE2 Notes. The
Series 2006-HE2 Notes are subject to all terms of the Indenture.

The Series 2006-HE2 Notes are and will be equally and ratably secured by the
collateral pledged as security therefor as provided in the Indenture.

Principal of and interest on this Note will be payable on each Payment Date,
commencing on July 25, 2006, as described in the Indenture.  "Payment Date" means the
twenty-fifth day of each month, or, if any such date is not a Business Day, then the next
succeeding Business Day.

The entire unpaid principal amount of this Note shall be due and payable in full on
the Payment Date in May 2036 pursuant to the Indenture, to the extent not previously paid on
a prior Payment Date.  Notwithstanding the foregoing, if an Event of Default shall have
occurred and be continuing, then the Indenture Trustee, the Enhancer or the Noteholders of
Notes representing not less than a majority of the aggregate Voting Rights of the Notes,
with the consent of the Enhancer, may declare the Notes to be immediately due and payable in
the manner provided in Section 5.02 of the Indenture.  All principal payments on the Notes
shall be made pro rata to the Noteholders of Notes entitled thereto.

Any installment of interest or principal, if any, payable on any Note that is
punctually paid or duly provided for by the Issuer on the applicable Payment Date shall be
paid to the related Noteholder on the preceding Record Date, by wire transfer to an account
specified in writing by such Noteholder reasonably satisfactory to the Indenture Trustee as
of the preceding Record Date or, if no such instructions have been delivered to the
Indenture Trustee, by check or money order to such Noteholder mailed to such Noteholder's
address as it appears in the Note Register, the amount required to be distributed to such
Noteholder on such Payment Date pursuant to such Noteholder's Notes; provided, however, that
the Indenture Trustee shall not pay to such Noteholder any amount required to be withheld
from a payment to such Noteholder by the Code.  Any reduction in the principal amount of
this Note (or any one or more predecessor Notes) effected by any payments made on any
Payment Date shall be binding upon all future Noteholders of this Note and of any Note
issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof,
whether or not noted hereon.  If funds are expected to be available, as provided in the
Indenture, for payment in full of the then remaining unpaid principal amount of this Note on
a Payment Date, then the Indenture Trustee, in the name of and on behalf of the Issuer, will
notify the Person who was the registered Noteholder hereof as of the Record Date preceding

such Payment Date by notice mailed or transmitted by facsimile prior to such Payment
Date,
and the amount then due and payable shall be payable only upon presentation and surrender
of
this Note at the address specified in such notice of final payment.

    As provided in the Indenture and subject to certain limitations set forth
therein,
the transfer of this Note may be registered on the Note Register upon surrender of this
Note
for registration of transfer at the Corporate Trust Office of the Indenture Trustee, duly
endorsed by, or accompanied by a written instrument of transfer in form satisfactory to
the
Indenture Trustee duly executed by, the Noteholder hereof or such Noteholder's attorney
duly
authorized in writing, with such signature guaranteed by an "eligible guarantor
institution"
meeting the requirements of the Note Registrar, which requirements include membership or
participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such
other
"signature guarantee program" as may be determined by the Note Registrar in addition to,
or
in substitution for, STAMP, all in accordance with the Exchange Act, and thereupon one or
more new Notes in authorized denominations and in the same aggregate principal amount
will
be issued to the designated transferee or transferees.  No service charge will be charged
for any registration of transfer or exchange of this Note, but the Note Registrar shall
require payment of a sum sufficient to cover any tax or governmental charge that may be
imposed in connection with any registration of transfer or exchange of this Note.

    Each Noteholder or Beneficial Owner of a Note, by its acceptance of a Note, or,
in
the case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and
agrees that no recourse may be taken, directly or indirectly, with respect to the
obligations of the Issuer, the Owner Trustee, the Sellers, the Servicer, the Depositor or
the Indenture Trustee on the Notes or under the Indenture or any certificate or other
writing delivered in connection therewith, against (i) the Indenture Trustee or the Owner
Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer
or
(iii) any partner, owner, beneficiary, agent, officer, director or employee of the
Indenture
Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial
interest
in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign
of
the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such
Person may have expressly agreed and except that any such partner, owner or beneficiary
shall be fully liable, to the extent provided by applicable law for any unpaid
consideration
for stock, unpaid capital contribution or failure to pay any installment or call owing to
such entity.

    Each Noteholder or Beneficial Owner of a Note, by its acceptance of a Note or, in
the
case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and
agrees

by accepting the benefits of the Indenture that such Noteholder or Beneficial Owner will not
at any time institute against the Depositor, the Sellers, the Servicer, GMAC Mortgage Group,
Inc. or the Issuer, or join in any institution against the Depositor, the Sellers, the
Servicer, GMAC Mortgage Group, Inc. or the Issuer of, any bankruptcy, reorganization,
arrangement, insolvency or liquidation proceedings under any United States federal or state
bankruptcy or similar law in connection with any obligations relating to the Notes, the
Indenture or the other Basic Documents.

        Prior to the due presentment for registration of transfer of this Note, the Issuer,
the Indenture Trustee and any agent of the Issuer or the Indenture Trustee may treat the
Person in the name of which this Note is registered (as of the day of determination or as of
such other date as may be specified in the Indenture) as the owner hereof for all purposes,
whether or not this Note be overdue, and none of the Issuer, the Indenture Trustee or any
such agent shall be affected by notice to the contrary.

        The Indenture permits, with certain exceptions therein provided, the amendment
thereof and the modification of the rights and obligations of the Issuer and the Indenture
Trustee and the rights of the Noteholders of the Series 2006-HE2 Notes under the Indenture
at any time by the Issuer and the Indenture Trustee with the consent of the Enhancer and the
Noteholders of Notes representing a majority of the aggregate Voting Rights of the Notes
then Outstanding and with prior notice to the Rating Agencies.  The Indenture also contains
provisions permitting the Noteholders of Notes representing specified percentages of the
Voting Rights of the Series 2006-HE2 Notes, on behalf of the Noteholders of all Series
2006-HE2 Notes, to waive compliance by the Issuer with certain provisions of the Indenture
and certain past defaults under the Indenture and their consequences.  Any such consent or
waiver by the Noteholder of this Note (or any one of more predecessor Notes) shall be
conclusive and binding upon such Noteholder and upon all future Noteholders of this Note and
of any Note issued upon the registration of transfer hereof or in exchange hereof or in lieu
hereof whether or not notation of such consent or waiver is made upon this Note.  The
Indenture also permits the Issuer and the Indenture Trustee to amend or waive certain terms
and conditions set forth in the Indenture without the consent of Noteholders of the Series
2006-HE2 Notes issued thereunder but with prior notice to the Rating Agencies and the
Enhancer.

        The term "Issuer" as used in this Note includes any successor or the Issuer under the
Indenture.

        The Issuer is permitted by the Indenture, under certain circumstances, to merge or
consolidate, subject to the rights of the Indenture Trustee and the Noteholders of Notes

under the Indenture.

        The Notes are issuable only in registered form in denominations as provided in the
Indenture, subject to certain limitations therein set forth.

        This Note and the Indenture shall be construed in accordance with the laws of the
State of New York, without reference to its conflicts of law provisions, and the
obligations, rights and remedies of the parties hereunder and thereunder shall be determined
in accordance with such laws.

        No reference herein to the Indenture and no provision of this Note or of the
Indenture shall alter or impair the obligation of the Issuer, which is absolute and
unconditional, to pay the principal of and interest on this Note at the times, place and
rate, and in the coin or currency herein prescribed.

        Anything herein to the contrary notwithstanding, except as expressly provided in the
Basic Documents, none of Wilmington Trust Company in its individual capacity, JPMorgan Chase
Bank, National Association, in its individual capacity, any owner of a beneficial interest
in the Issuer, or any of their respective partners, beneficiaries, agents, officers,
directors, employees or successors or assigns shall be personally liable for, nor shall
recourse be had to any of them for, the payment of principal of or interest on this Note or
the performance of, or the failure to perform, any of the covenants, obligations or
indemnifications contained in the Indenture.  The Noteholder of this Note, by its acceptance
hereof, agrees that, except as expressly provided in the Basic Documents, in the case of an
Event of Default under the Indenture, such Noteholder shall have no claim against any of the
foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing
contained herein shall be taken to prevent recourse to, and enforcement against, the assets
of the Issuer for any and all liabilities, obligations and undertakings contained in the
Indenture or in this Note.

                        [Signature Page Follows]

_____

        IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its
individual capacity, has caused this Note to be duly executed.

                        GMACM HOME EQUITY LOAN TRUST 2006-HE2

By:  WILMINGTON TRUST COMPANY, not in its
     individual capacity but solely as Owner
     Trustee

Dated:  June 29, 2006

By: _____
                Authorized Signatory

CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
not in its individual capacity but solely as
Indenture Trustee

By: _____
                Authorized Signatory

Dated: June 29, 2006

---

ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee:

        FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto

_____
                    (name and address of assignee)

the within Note and all rights thereunder, and hereby irrevocably constitutes and
appoints
_____
___,
attorney,  to transfer said Note on the books kept for registration  thereof,  with full
power
of substitution in the premises.

14446915.1.LITIGATION

Dated: _____                    _____*/
                                            Signature Guaranteed:

                                            _____*/


*       NOTICE:  The signature to this assignment must correspond with the name of the
registered owner as it appears on the face of the within Note in every particular,
without
alteration, enlargement or any change whatever. Such signature must be guaranteed by an
"eligible guarantor institution" meeting the requirements of the Note Registrar, which
requirements include membership or participation in STAMP or such other "signature
guarantee
program" as may be determined by the Note Registrar in addition to, or in substitution
for,
STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

---

EXHIBIT A
FORM OF NOTES

UNLESS  THIS  NOTE IS  PRESENTED  BY AN  AUTHORIZED  REPRESENTATIVE  OF THE  DEPOSITORY
TRUST
COMPANY,  A NEW YORK  CORPORATION  ("DTC"),  TO THE  ISSUER OR ITS AGENT FOR
REGISTRATION  OF
TRANSFER,  EXCHANGE OR PAYMENT,  AND ANY NOTE ISSUED IS  REGISTERED  IN THE NAME OF CEDE
& CO.
OR IN SUCH  OTHER  NAME AS IS  REQUESTED  BY AN  AUTHORIZED  REPRESENTATIVE  OF DTC  (AND
ANY
PAYMENT  IS MADE TO CEDE & CO.  OR TO SUCH  OTHER  ENTITY  AS IS  REQUESTED  BY AN
AUTHORIZED
REPRESENTATIVE  OF DTC),  ANY  TRANSFER,  PLEDGE OR OTHER USE HEREOF FOR VALUE OR
OTHERWISE BY
OR TO ANY PERSON IS WRONGFUL  INASMUCH AS THE  REGISTERED  OWNER  HEREOF,  CEDE & CO.,
HAS AN
INTEREST HEREIN.


THE PRINCIPAL OF THIS NOTE IS PAYABLE IN  INSTALLMENTS AS SET FORTH HEREIN.  ACCORDINGLY,
THE
OUTSTANDING  PRINCIPAL  AMOUNT OF THIS NOTE AT ANY TIME MAY BE LESS THAN THE  AMOUNT
SHOWN ON
THE FACE HEREOF.


THIS NOTE DOES NOT REPRESENT AN INTEREST IN OR OBLIGATION OF THE SELLERS,  THE DEPOSITOR,
THE
SERVICER,  THE INDENTURE  TRUSTEE,  THE OWNER TRUSTEE OR GMAC MORTGAGE  GROUP,  INC. OR
ANY OF

THEIR  RESPECTIVE  AFFILIATES,  EXCEPT  AS  EXPRESSLY  PROVIDED  IN  THE   INDENTURE  OR  THE  OTHER
BASIC DOCUMENTS.

GMACM HOME EQUITY LOAN TRUST 2006-HE2

GMACM Home Equity Loan-Backed Note, Class A

Registered                                          Initial Note Balance:
                                                    $_____

No. A-__                                            Note Rate:  Variable

                                                    CUSIP NO. _____

        GMACM Home Equity Loan Trust  2006-HE2,  a statutory trust duly organized and existing
under  the laws of the State of  Delaware  (herein  referred  to as the  "Issuer"),  for value
received,  hereby promises to pay to Cede & Co. or its registered  assigns,  the  principal sum
of  _____dollars  ($_____),  payable on each  Payment Date in an amount equal
to the pro rata portion  allocable  hereto (based on the Initial Note Balance  specified above
and the  Initial  Note  Balance  of all Class A-__  Notes) of the  aggregate  amount,  if any,
payable  from the Note  Payment  Account  in respect  of  principal  of the Class A Notes (the
"Notes")  pursuant  to  Section  3.05  of  the  indenture  dated  as of  June 29,  2006  (the
"Indenture"),  between the Issuer and JPMorgan Chase Bank, National Association, as indenture
trustee (the "Indenture  Trustee");  provided,  however,  provided however,  the entire unpaid
principal  amount of this Note shall be due and payable on the Payment  Date  occurring in May
2036, in each case,  to the extent not  previously  paid on a prior Payment Date.  Capitalized
terms used herein that are not otherwise  defined shall have the meanings  ascribed thereto in
Appendix A to the Indenture.

        Interest on the Notes will be paid  monthly on each  Payment Date at the Note Rate for
the related  Interest  Period  subject to limitations  that may result in Interest Shortfalls
(as further  described in the  Indenture).  Interest on this Note will accrue for each Payment
Date from the most recent  Payment  Date on which  interest  has been paid (in the case of the
first Payment  Date,  from the Closing  Date) to but  excluding  such Payment  Date.  Interest
will be  computed  on the basis of the  actual  number of days in each  Interest  Period and a
year assumed to consist of 360 days.

Principal  of and  interest  on this Note are  payable in such coin or currency of the
United  States of America as at the time of payment is legal  tender for payment of public and
private  debts.  All  payments  made by the Issuer with  respect to this Note shall be applied
first to  interest  due and  payable  on this Note as  provided  above and then to the unpaid
principal of this Note.

Unless the  certificate  of  authentication  hereon has been executed by the Indenture
Trustee whose name appears below by manual  signature,  this Note shall not be entitled to any
benefit under the Indenture, or be valid or obligatory for any purpose.

This Note is one of a duly authorized issue of Notes of the Issuer,  designated as its
GMACM Home Equity  Loan-Backed  Notes,  Series  2006-HE2 (the "Series  2006-HE2  Notes"), all
issued  under the  Indenture,  to which  Indenture  and all  indentures  supplemental thereto
reference is hereby made for a statement of the respective  rights and obligations thereunder
of the Issuer,  the Indenture  Trustee and the Noteholders of the Series  2006-HE2 Notes. The
Series 2006-HE2 Notes are subject to all terms of the Indenture.

The Series  2006-HE2  Notes (the "Notes") are and will be equally and ratably secured
by the collateral pledged as security therefor as provided in the Indenture.

This Note is entitled to the benefits of an irrevocable  and  unconditional financial
guaranty insurance policy issued by Financial Guaranty Insurance Company.

Principal  of and  interest  on this  Note  will be  payable  on  each  Payment Date,
commencing  on July 25,  2006,  as  described  in the  Indenture.  "Payment  Date"  means the
twenty-fifth  day of each  month,  or, if any such date is not a Business  Day,  then the next
succeeding Business Day.

Unless an Early  Amortization  Event (as defined in the Indenture) shall have occurred
and be continuing,  it is expected that the entire unpaid  principal amount of this Note shall
be due and payable on the related  Targeted  Final Payment Date in  accordance  with the terms
of the  Indenture,  to  the  extent  not  previously  paid  on  a  prior  Payment Date.
Notwithstanding  the foregoing,  the entire unpaid  principal  amount of this Note shall be due
and payable in full on the Payment Date in [August  2035]  pursuant to the  Indenture, to the

extent not previously paid on a prior Payment Date. Notwithstanding the foregoing, if an
Event of Default shall have occurred and be continuing, then the Indenture Trustee, the
Enhancer or the Noteholders of Notes representing not less than a majority of the aggregate
Note Balance of the Notes, with the consent of the Enhancer, may declare the Notes to be
immediately due and payable in the manner provided in Section 5.02 of the Indenture. All
principal payments on the Notes shall be made pro rata to the Noteholders of Notes entitled
thereto.

Any installment of interest or principal, if any, payable on any Note that is
punctually paid or duly provided for by the Issuer on the applicable Payment Date shall be
paid to the related Noteholder on the preceding Record Date, by wire transfer to an account
specified in writing by such Noteholder reasonably satisfactory to the Indenture Trustee as
of the preceding Record Date or, if no such instructions have been delivered to the
Indenture Trustee, by check or money order to such Noteholder mailed to such Noteholder's
address as it appears in the Note Register, the amount required to be distributed to such
Noteholder on such Payment Date pursuant to such Noteholder's Notes; provided, however, that
the Indenture Trustee shall not pay to such Noteholder any amount required to be withheld
from a payment to such Noteholder by the Code. Any reduction in the principal amount of
this Note (or any one or more predecessor Notes) effected by any payments made on any
Payment Date shall be binding upon all future Noteholders of this Note and of any Note
issued upon the registration of transfer hereof or in exchange hereof or in lieu hereof,
whether or not noted hereon. If funds are expected to be available, as provided in the
Indenture, for payment in full of the then remaining unpaid principal amount of this Note on
a Payment Date, then the Indenture Trustee, in the name of and on behalf of the Issuer, will
notify the Person who was the registered Noteholder hereof as of the Record Date preceding
such Payment Date by notice mailed or transmitted by facsimile prior to such Payment Date,
and the amount then due and payable shall be payable only upon presentation and surrender of
this Note at the address specified in such notice of final payment.

As provided in the Indenture and subject to certain limitations set forth therein,

the transfer of this Note may be registered on the Note Register upon surrender of this Note
for registration of transfer at the Corporate Trust Office of the Indenture Trustee, duly
endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the
Indenture Trustee duly executed by, the Noteholder hereof or such Noteholder's attorney duly
authorized in writing, with such signature guaranteed by an "eligible guarantor institution"
meeting the requirements of the Note Registrar, which requirements include membership or
participation in the Securities Transfer Agent's Medallion Program ("STAMP") or such other
"signature guarantee program" as may be determined by the Note Registrar in addition to, or
in substitution for, STAMP, all in accordance with the Exchange Act, and thereupon one or
more new Notes in authorized denominations and in the same aggregate principal amount will
be issued to the designated transferee or transferees. No service charge will be charged
for any registration of transfer or exchange of this Note, but the Note Registrar shall
require payment of a sum sufficient to cover any tax or governmental charge that may be
imposed in connection with any registration of transfer or exchange of this Note.

Each Noteholder or Beneficial Owner of a Note, by its acceptance of a Note, or, in
the case of a Beneficial Owner of a Note, a beneficial interest in a Note, covenants and
agrees that no recourse may be taken, directly or indirectly, with respect to the
obligations of the Issuer, the Owner Trustee, the Sellers, the Servicer, the Depositor or
the Indenture Trustee on the Notes or under the Indenture or any certificate or other
writing delivered in connection therewith, against (i) the Indenture Trustee or the Owner
Trustee in its individual capacity, (ii) any owner of a beneficial interest in the Issuer or
(iii) any partner, owner, beneficiary, agent, officer, director or employee of the Indenture
Trustee or the Owner Trustee in its individual capacity, any holder of a beneficial interest
in the Issuer, the Owner Trustee or the Indenture Trustee or of any successor or assign of
the Indenture Trustee or the Owner Trustee in its individual capacity, except as any such
Person may have expressly agreed and except that any such partner, owner or beneficiary
shall be fully liable, to the extent provided by applicable law for any unpaid consideration
for stock, unpaid capital contribution or failure to pay any installment or call owing to
such entity.

Each Noteholder or Beneficial  Owner of a Note, by its acceptance of a Note or, in the
case of a Beneficial  Owner of a Note, a beneficial  interest in a Note,  covenants and agrees
by accepting the benefits of the Indenture that such  Noteholder or Beneficial  Owner will not
at any time  institute  against  the  Depositor  or the  Issuer,  or join in any institution
against  the  Depositor  or  the  Issuer  of,  any  bankruptcy,  reorganization, arrangement,
insolvency or liquidation  proceedings  under any United States federal or state bankruptcy or
similar law in connection  with any  obligations  relating to the Notes,  the Indenture or the
other Basic Documents.

The Issuer has entered into the  Indenture  and this Note is issued with the intention
that, for federal,  state and local income,  single  business and franchise tax purposes, the
Notes will qualify as  indebtedness  of the Issuer.  Each  Noteholder  by its  acceptance of a
Note (and each  Beneficial  Owner of a Note by its  acceptance  of a beneficial  interest in a
Note),  agrees to treat the Notes for federal,  state and local  income,  single business and
franchise tax purposes as indebtedness of the Issuer.

Prior to the due  presentment  for  registration of transfer of this Note, the Issuer,
the  Indenture  Trustee  and any agent of the Issuer or the  Indenture  Trustee  may treat the
Person in the name of which this Note is registered (as of the day of  determination  or as of
such other date as may be specified in the  Indenture)  as the owner hereof for all purposes,
whether or not this Note be overdue,  and none of the  Issuer,  the  Indenture  Trustee or any
such agent shall be affected by notice to the contrary.

The  Indenture  permits,  with certain  exceptions  therein  provided,  the amendment
thereof and the  modification  of the rights and  obligations  of the Issuer and the Indenture
Trustee and the rights of the  Noteholders  of the Series  2006-HE2  Notes under the Indenture
at any time by the Issuer and the  Indenture  Trustee with the consent of the Enhancer and the
Noteholders  of Notes  representing a majority of the aggregate Note Balance of the Notes then
Outstanding  and with  prior  notice to the  Rating  Agencies.  The  Indenture  also contains
provisions  permitting the  Noteholders  of Notes  representing  specified  percentages of the
Note  Balances  of the  Series  2006-HE2  Notes,  on behalf of the  Noteholders  of all Series

2006-HE2 Notes,  to waive  compliance by the Issuer with certain  provisions of the Indenture
and certain past  defaults  under the Indenture  and their  consequences.  Any such consent or
waiver  by the  Noteholder  of this  Note  (or any one of more  predecessor  Notes) shall  be
conclusive and binding upon such  Noteholder and upon all future  Noteholders of this Note and
of any Note issued upon the  registration  of transfer hereof or in exchange hereof or in lieu
hereof  whether  or not  notation  of such  consent  or waiver is made  upon  this Note. The
Indenture  also permits the Issuer and the  Indenture  Trustee to amend or waive certain terms
and  conditions  set forth in the Indenture  without the consent of  Noteholders of the Series
2006-HE2 Notes  issued  thereunder  but with  prior  notice to the  Rating  Agencies and the
Enhancer.

The term  "Issuer" as used in this Note includes any successor or the Issuer under the
Indenture.

The Issuer is permitted by the  Indenture,  under certain  circumstances,  to merge or
consolidate,  subject to the rights of the  Indenture  Trustee  and the  Noteholders  of Notes
under the Indenture.

The Notes are issuable only in  registered  form in  denominations  as provided in the
Indenture, subject to certain limitations therein set forth.

This Note and the  Indenture  shall be  construed  in  accordance  with the laws of the
State  of  New  York,  without  reference  to  its  conflicts  of  law  provisions,  and the
obligations,  rights and remedies of the parties  hereunder and thereunder shall be determined
in accordance with such laws.

No  reference  herein  to the  Indenture  and no  provision  of  this  Note  or of the
Indenture  shall  alter  or  impair  the  obligation  of the  Issuer,  which is  absolute and
unconditional,  to pay the  principal  of and  interest  on this Note at the times, place and
rate, and in the coin or currency herein prescribed.

Anything herein to the contrary  notwithstanding,  except as expressly provided in the
Basic Documents,  none of Wilmington Trust Company in its individual capacity,  JPMorgan Chase
Bank, National  Association.  in its individual  capacity,  any owner of a beneficial interest

in the Issuer, or any of their respective partners, beneficiaries, agents, officers, directors, employees or successors or assigns shall be personally liable for, nor shall recourse be had to any of them for, the payment of principal of or interest on this Note or the performance of, or the failure to perform, any of the covenants, obligations or indemnifications contained in the Indenture. The Noteholder of this Note, by its acceptance hereof, agrees that, except as expressly provided in the Basic Documents, in the case of an Event of Default under the Indenture, such Noteholder shall have no claim against any of the foregoing for any deficiency, loss or claim therefrom; provided, however, that nothing contained herein shall be taken to prevent recourse to, and enforcement against, the assets of the Issuer for any and all liabilities, obligations and undertakings contained in the Indenture or in this Note.

The Servicer shall have the right to purchase from the Issuer all of the Mortgage Loans and related REO Property if the aggregate Note Balance of the Notes as of any Payment Date is less than 10% of the aggregate Note Balance of the Notes as of the Closing Date, (provided that a draw on the Policy would not occur as a result of such purchase and provided further that the purchase price will provide sufficient funds to pay the outstanding Note Balance and accrued and unpaid interest on the Notes to the Payment Date on which such amounts are to be distributed to the Securityholders), at a price equal to 100% of the aggregate unpaid Principal Balance of all such remaining Mortgage Loans, plus accrued and unpaid interest thereon at the weighted average of the Loan Rates thereon up to the date preceding the Payment Date on which such amounts are to be distributed to the Securityholders (and in the case of REO Property, the fair market value of the REO Property), plus any amounts due and owing to the Enhancer under the Insurance Agreement related to the Mortgage Loans or the Notes (and any unpaid Servicing Fee relating to the Mortgage Loans shall be deemed to have been paid at such time), plus any Interest Shortfall and interest owed thereon to the Noteholders.

IN WITNESS WHEREOF, the Owner Trustee, on behalf of the Issuer and not in its individual capacity, has caused this Note to be duly executed.


GMACM HOME EQUITY LOAN TRUST 2006-HE2


By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

Dated: _____

By: _____

_____

Authorized Signatory


CERTIFICATE OF AUTHENTICATION

This is one of the Notes referred to in the within-mentioned Indenture.


JPMorgan Chase Bank, National Association., not in its individual capacity but solely as Indenture Trustee

Dated: _____

By: _____

_____

Authorized Signatory


ASSIGNMENT

Social Security or taxpayer I.D. or other identifying number of assignee: _____

      FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfer unto
_____
_
                             (name and address of assignee)

the within Note and all rights thereunder, and hereby irrevocably constitutes and
appoints
_____,  attorney,  to  transfer  said  Note  on  the  books  kept
for
registration thereof, with full power of substitution in the premises.

Dated: _____      _____*/
                               Signature Guaranteed:

                             _____ */

*      NOTICE: The  signature  to this  assignment  must  correspond  with  the  name
of the
registered  owner as it  appears  on the face of the  within  Term  Note in every
particular,
without alteration,  enlargement or any change whatever.  Such signature must be
guaranteed by
an "eligible  guarantor  institution"  meeting the  requirements of the Note Registrar,
which
requirements  include membership or participation in STAMP or such other "signature
guarantee
program" as may be determined by the Note  Registrar in addition to, or in  substitution
for,
STAMP, all in accordance with the Securities Exchange Act of 1934, as amended.

                              EXHIBIT B
          FORM OF RULE 144A INVESTMENT REPRESENTATION

      Description of Rule 144A Securities, including numbers:
          _____
          _____
          _____
          _____

      The  undersigned  buyer  (the  "Buyer"),  intends to acquire  the Rule 144A
Securities
described above from the seller (the "Seller").

1.     In  connection  with  such  transfer  and in  accordance  with  the agreements
pursuant to which  the Rule 144A  Securities  were  issued,  the Seller  hereby  certifies the
following  facts:  Neither  the  Seller  nor  anyone  acting  on  its  behalf  has offered,
transferred,  pledged,  sold or otherwise  disposed of the Rule 144A Securities,  any interest
in the Rule 144A  Securities or any other  similar  security to, or solicited any offer to buy
or accept a transfer,  pledge or other  disposition of the Rule 144A Securities,  any interest
in the Rule 144A  Securities or any other similar  security form, or otherwise approached or
negotiated  with  respect  to  the  Rule  144A  Securities,  any  interest  in the  Rule 144A
Securities or any other similar  security with, any person in any manner,  or made any general
solicitation  by means of  general  advertising  or in any  other  manner,  or taken any other
action,  that  would  constitute  a public  offering  of the Rule  144A  Securities under the
Securities Act of 1933, as amended (the "1933 Act"),  or that would render the disposition of
the Rule 144A  Securities  a  violation  of Section 5 of the 1933 Act or require registration
pursuant  thereto,  and that the Seller has not offered the Rule 144A Securities to any person
other  than the Buyer or  another  "qualified  institutional  buyer" as  defined  in Rule 144A
under the 1933 Act.

2.     The Buyer  warrants  and  represents  to, and  covenants  with,  the Indenture
Trustee  and the  Issuer  (as  defined  in the  indenture  dated  as of  June  29,  2006 (the
"Indenture"),  between GMACM Home Equity Loan Trust  2006-HE2,  as Issuer,  and JPMorgan Chase
Bank, National  Association,  as Indenture Trustee,  pursuant to Section 4.02 of the Indenture,
as follows:

a.     The  Buyer  understands  that the  Rule  144A  Securities  have not been
registered under the 1933 Act or the securities laws of any state.

b.     The Buyer considers  itself a substantial,  sophisticated institutional
investor  having such knowledge and experience in financial and business  matters that
it is  capable of  evaluating  the  merits  and risks of  investment  in the Rule 144A
Securities.

c.     The Buyer has been  furnished  with all  information  regarding the Rule

144A Securities that it has requested from the Seller, the Indenture Trustee, the
Owner Trustee or the Servicer.

      d.    Neither the Buyer nor anyone acting on its behalf has offered,
transferred, pledged, sold or otherwise disposed of the Rule 144A Securities, any
interest in the Rule 144A Securities or any other similar security to, or solicited
any offer to buy or accept a transfer, pledge or other disposition of the Rule 144A
Securities, any interest in the Rule 144A Securities or any other similar security
from, or otherwise approached or negotiated with respect to the Rule 144A Securities,
any interest in the Rule 144A Securities or any other similar security with, any
person in any manner, or made any general solicitation by means of general
advertising or in any other manner, or taken any other action, that would constitute
a public offering of the Rule 144A Securities under the 1933 Act or that would render
the disposition of the Rule 144A Securities a violation of Section 5 of the 1933 Act
or require registration pursuant thereto, nor will it act, nor has it authorized or
will it authorize any person to act, in such manner with respect to the Rule 144A
Securities.

      e.    The Buyer is a "qualified institutional buyer" as that term is defined
in Rule 144A under the 1933 Act and has completed either of the forms of
certification to that effect attached hereto as Annex 1 or Annex 2. The Buyer is
aware that the sale to it is being made in reliance on Rule 144A. The Buyer is
acquiring the Rule 144A Securities for its own account or the accounts of other
qualified institutional buyers, understands that such Rule 144A Securities may be
resold, pledged or transferred only (i) to a person reasonably believed to be a
qualified institutional buyer that purchases for its own account or for the account
of a qualified institutional buyer to whom notice is given that the resale, pledge or
transfer is being made in reliance on Rule 144A, or (ii) pursuant to another
exemption from registration under the 1933 Act.

      3.    This document may be executed in one or more counterparts and by the
different

parties hereto on separate counterparts,  each of which, when so executed,  shall be deemed to
be an original; such counterparts, together, shall constitute one and the same document.

        IN WITNESS  WHEREOF,  the Buyer has  executed  this  document as of the date set forth
below.


Print Name of Buyer


By: _____
Name:
Title:

Taxpayer Identification:

No.
Date:

_____


                                                            ANNEX 1 TO
EXHIBIT B

                QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

            [For Buyers Other Than Registered Investment Companies]

        The  undersigned  hereby  certifies  as  follows  in  connection  with  the  Rule 144A
Investment Representation to which this Certification is attached:

        1.    As indicated below, the undersigned is the President,  Chief Financial Officer,
Senior Vice President or other executive officer of the Buyer.

        2.    In  connection  with  purchases  by  the  Buyer,  the  Buyer  is  a "qualified
institutional  buyer" as that term is defined in Rule 144A under the  Securities  Act of 1933,
as amended  ("Rule  144A")  because (i) the Buyer  owned  and/or  invested on a discretionary
basis $_____** in  securities  (except for the excluded  securities referred
to below) as of the end of the Buyer's most recent  fiscal year (such amount being calculated
in  accordance  with Rule 144A) and (ii) the Buyer  satisfies  the  criteria  in the category
marked below.

____    Corporation,  etc. The Buyer is a corporation  (other than a bank,
savings and    loan association or similar  institution),  Massachusetts or similar
statutory    trust,  partnership,  or charitable organization described in Section
501(c)(3)    of the Internal Revenue Code.

____    Bank. The Buyer (a) is a national bank or banking  institution  organized
under    the laws of any State,  territory or the District of Columbia,  the
business of    which is  substantially  confined to banking and is  supervised by the
State or    territorial  banking  commission  or similar  official or is a foreign
bank or    equivalent  institution,  and (b) has an audited net worth of at
least    $25,000,000 as demonstrated in its latest annual financial  statements,  a
copy    of which is attached hereto.

_____

** Buyer  must  own  and/or  invest  on  a  discretionary  basis  at  least
$100,000,000  in
securities  unless  Buyer is a dealer,  and,  in that case,  Buyer must own and/or  invest
on a
discretionary basis at least $10,000,000 in securities.

____    Savings  and Loan.  The Buyer (a) is a savings and loan  association,
building    and loan  association,  cooperative  bank,  homestead  association  or
similar    institution,  which is supervised and examined by a State or Federal
authority    having  supervision  over any such institutions or is a foreign savings and
loan    association  or equivalent  institution  and (b) has an audited net worth
of at    least $25,000,000 as demonstrated in its latest annual financial
statements.

____    Broker-Dealer.  The Buyer is a dealer registered  pursuant to Section 15
of the    Securities Exchange Act of 1934, as amended.

____    Insurance  Company.  The  Buyer  is an  insurance  company  whose  primary
and

predominant business activity is the writing of insurance or the reinsuring of risks underwritten by insurance companies and which is subject to supervision by the insurance commissioner or a similar official or agency of a state or territory or the District of Columbia.

____ State or Local Plan. The Buyer is a plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of the state or its political subdivisions, for the benefit of its employees.

____ ERISA Plan. The Buyer is an employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974, as amended.

____ Investment Adviser. The Buyer is an investment adviser registered under the Investment Advisers Act of 1940, as amended.

____ SBIC. The Buyer is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended.

____ Business Development Company. The Buyer is a business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

____ Trust Fund. The Buyer is a trust fund whose trustee is a bank or trust company and whose participants are exclusively (a) plans established and maintained by a State, its political subdivisions, or any agency or instrumentality of the State or its political subdivisions, for the benefit of its employees, or (b) employee benefit plans within the meaning of Title I of the Employee Retirement Income Security Act of 1974, but is not a trust fund that includes as participants individual retirement accounts or H.R. 10 plans.

3.    The term "securities" as used herein does not include (i) securities of issuers that are Affiliated with the Buyer, (ii) securities that are part of an unsold allotment to or subscription by the Buyer, if the Buyer is a dealer, (iii) bank deposit notes and certificates of deposit, (iv) loan participations, (v) repurchase agreements, (vi)

securities owned but subject to a repurchase agreement and (vii) currency, interest rate and
commodity swaps.

4.      For purposes of determining the aggregate amount of securities owned and/or
invested on a discretionary basis by the Buyer, the Buyer used the cost of such securities
to the Buyer and did not include any of the securities referred to in the preceding
paragraph. Further, in determining such aggregate amount, the Buyer may have included
securities owned by subsidiaries of the Buyer, but only if such subsidiaries are
consolidated with the Buyer in its financial statements prepared in accordance with
generally accepted accounting principles and if the investments of such subsidiaries are
managed under the Buyer's direction. However, such securities were not included if the
Buyer is a majority-owned, consolidated subsidiary of another enterprise and the Buyer is
not itself a reporting company under the Securities Exchange Act of 1934, as amended.

5.      The Buyer acknowledges that it is familiar with Rule 144A and understands that
the seller to it and other parties related to the Rule 144A Securities are relying and will
continue to rely on the statements made herein because one or more sales to the Buyer may be
in reliance on Rule 144A.

____    ____      Will the Buyer be purchasing the Rule 144A
 Yes     No       Securities only for the Buyer's own account?

6.      If the answer to the foregoing question is "no", the Buyer agrees that, in
connection with any purchase of securities sold to the Buyer for the account of a third
party (including any separate account) in reliance on Rule 144A, the Buyer will only
purchase for the account of a third party that at the time is a "qualified institutional
buyer" within the meaning of Rule 144A. In addition, the Buyer agrees that the Buyer will
not purchase securities for a third party unless the Buyer has obtained a current
representation letter from such third party or taken other appropriate steps contemplated by
Rule 144A to conclude that such third party independently meets the definition of "qualified
institutional buyer" set forth in Rule 144A.

7.    The Buyer will notify each of the parties to which this  certification  is made
of any changes in the  information  and conclusions  herein.  Until such notice is given, the
Buyer's  purchase of Rule  144A  Securities  will  constitute  a  reaffirmation  of this
certification as of the date of such purchase.


                              Print Name of Buyer

                              By: _____
                              Name:
                              Title:

                              Date:


                                                    ANNEX 2 TO
EXHIBIT B

          QUALIFIED INSTITUTIONAL BUYER STATUS UNDER SEC RULE 144A

          [For Buyers That Are Registered Investment Companies]

          The  undersigned  hereby  certifies  as  follows  in  connection  with the  Rule 144A
Investment Representation to which this certification is attached:

          1.    As indicated  below,  the undersigned is the President,  Chief Financial
Officer or Senior Vice  President of the Buyer or, if the Buyer is a "qualified institutional
buyer" as that term is defined in Rule 144A  under  the  Securities  Act of 1933  ("Rule 144A")
because  Buyer is part of a Family of  Investment  Companies  (as defined  below),  is such an
officer of the Adviser (as defined below).

          2.    In  connection  with  purchases  by  Buyer,  the  Buyer is a "qualified
institutional  buyer" as  defined  in SEC  Rule 144A  because  (i) the Buyer is an investment
company  registered  under the Investment  Company Act of 1940, and (ii) as marked below, the
Buyer alone,  or the Buyer's Family of Investment  Companies,  owned at least $100,000,000 in

securities (other than the excluded securities referred to below) as of the end of the
Buyer's most recent fiscal year.  For purposes of determining  the amount of securities owned
by the Buyer or the Buyer's Family of Investment  Companies,  the cost of such securities was
used.

____    The Buyer owned  $_____  in securities (other than the excluded securities
        referred to below) as of the end of the Buyer's  most recent  fiscal year (such amount
        being calculated in accordance with Rule 144A).

____    The Buyer is part of a Family of  Investment  Companies  which owned in the aggregate
        $_____ in securities (other than the excluded  securities  referred to below)
        as of the end of the Buyer's most recent fiscal year (such amount being calculated in
        accordance with Rule 144A).

        3.    The term "Family of  Investment  Companies"  as used herein means two or
more  registered  investment  companies  (or  series  thereof)  that have the same investment
adviser or investment  advisers  (each,  an "Adviser") that are affiliated (by virtue of being
majority  owned  subsidiaries  of the same  parent or  because  one  investment  adviser is a
majority owned subsidiary of the other).

        4.    The term  "securities"  as used herein does not include (i) securities of
issuers that are  affiliated  with the Buyer or are part of the Buyer's  Family of Investment
Companies,  (ii) bank deposit notes and  certificates of deposit,  (iii) loan participations,
(iv) repurchase  agreements,  (v) securities  owned but subject to a repurchase agreement and
(vi) currency, interest rate and commodity swaps.

        5.    The Buyer is familiar with  Rule 144A and  understands  that each of the
parties to which this  certification  is made are  relying  and will  continue  to rely on the
statements  made  herein  because  one or more  sales  to the  Buyer  will be in  reliance  on
Rule 144A.  In addition, the Buyer will only purchase for the Buyer's own account.

        6.    The  undersigned  will  notify  each  of  the  parties  to  which  this
certification  is made of any changes in the information and  conclusions  herein.  Until such
notice,  the Buyer's  purchase of Rule 144A Securities will constitute a reaffirmation of this
certification by the undersigned as of the date of such purchase.

```
                            Print Name of Buyer

                            By:  _____
                            Name:
                            Title:

                            IF AN ADVISER:


                            _____
                            Print Name of Buyer

                            Date:
```

EXHIBIT C
FORM OF INVESTOR REPRESENTATION LETTER


_____ , 20__


Re:    GMACM HOME EQUITY LOAN TRUST 2006-HE2
       GMACM Home Equity Loan-Backed Variable Pay Revolving Note

Ladies and Gentlemen:

[_____] (the "Purchaser") intends to purchase from
[_____]
(the "Seller") $[_____] Variable Pay Revolving Notes, GMACM Home Equity Loan Trust
2006-HE2 (the "Notes"), issued pursuant to the Indenture (the "Indenture"), dated as of June
29, 2006 between GMACM Home Equity Loan Trust 2006-HE2, as Issuer, and JPMorgan Chase Bank,
National Association, as Indenture Trustee (the "Indenture Trustee"). All terms used herein
and not otherwise defined shall have the meanings set forth in the Indenture. The Purchaser
hereby certifies, represents and warrants to, and covenants with, the Issuer and the
Indenture Trustee that:

1.    The Purchaser understands that (a) the Notes have not been and will not
be registered or qualified under the Securities Act of 1933, as amended (the "Act")

or any state securities law, (b) the Depositor is not required to so register or qualify the Notes, (c) the Notes may be resold only if registered and qualified pursuant to the provisions of the Act or any state securities law, or if an exemption from such registration and qualification is available, (d) the Indenture contains restrictions regarding the transfer of the Notes and (e) the Notes will bear a legend to the foregoing effect.

2.    The Purchaser is acquiring the Notes for its own account for investment only and not with a view to or for sale in connection with any distribution thereof in any manner that would violate the Act or any applicable state securities laws.

3.    The Purchaser is (a) a substantial, sophisticated institutional investor having such knowledge and experience in financial and business matters, and, in particular, in such matters related to securities similar to the Notes, such that it is capable of evaluating the merits and risks of investment in the Notes, (b) able to bear the economic risks of such an investment and (c) an "accredited investor" within the meaning of Rule 501(a) promulgated pursuant to the Act.

4.    The Purchaser has been furnished with, and has had an opportunity to review (a) a copy of the Indenture and (b) such other information concerning the Notes, the Mortgage Loans and the Depositor as has been requested by the Purchaser from the Depositor or the Seller and is relevant to the Purchaser's decision to purchase the Notes. The Purchaser has had any questions arising from such review answered by the Depositor or the Seller to the satisfaction of the Purchaser.

5.    The Purchaser has not and will not nor has it authorized or will it authorize any person to (a) offer, pledge, sell, dispose of or otherwise transfer any Note, any interest in any Note or any other similar security to any person in any manner, (b) solicit any offer to buy or to accept a pledge, disposition of other transfer of any Note, any interest in any Note or any other similar security from any person in any manner, (c) otherwise approach or negotiate with respect to any Note, any interest in any Note or any other similar security with any person in any manner,

(d) make any general solicitation by means of general advertising or in any other manner or (e) take any other action, that (as to any of (a) through (e) above) would constitute a public offering of any Note under the Act, that would render the disposition of any Note a violation of Section 5 of the Act or any state securities law, or that would require registration or qualification pursuant thereto. The Purchaser will not sell or otherwise transfer any of the Notes, except in compliance with the provisions of the Indenture.

6.    The Purchaser will comply with all applicable federal and state securities laws, and with the terms of the Indenture, in connection with any subsequent resale of the Notes by the Purchaser.

Very truly yours,

By: _____
Name:
Title:

EXHIBIT D
FORM OF TRANSFEROR CERTIFICATE

_____ , 20__

Re:   GMACM HOME EQUITY LOAN TRUST 2006-HE2
      GMACM Home Equity Loan-Backed Variable Pay Revolving Note

Ladies and Gentlemen:

This letter is delivered to you in connection with the transfer by [_____] (the "Seller") to [_____] (the "Purchaser") of $[_____] Variable Pay Revolving Notes, GMACM Home Equity Loan Trust 2006-HE2 (the "Notes"), issued pursuant to the Indenture (the "Indenture"), dated as of June 29, 2006 between GMACM Home Equity Loan Trust 2006-HE2, as Issuer, and JPMorgan Chase Bank, National

Association,  as  Indenture  Trustee (the "Indenture  Trustee").  All terms used herein and not
otherwise  defined  shall have the  meanings  set forth in the  Indenture.  The Seller hereby
certifies,  represents  and  warrants to,  and  covenants  with,  the Issuer and the Indenture
Trustee that:

Neither  the Seller nor anyone  acting on its behalf has (a)  offered,  pledged,
sold,  disposed of or otherwise  transferred  any Note,  any interest in any Note or any other
similar  security to any  person  in any  manner,  (b) has  solicited  any offer to buy or to
accept a pledge,  disposition  or other  transfer of any Note, any interest in any Note or any
other  similar  security from any  person in any  manner, (c) has  otherwise  approached  or
negotiated  with respect to any Note,  any interest in any Note or any other similar security
with any person in any  manner, (d) has  made any  general  solicitation  by means of general
advertising  or in any other manner,  or (e) has  taken any other  action,  that (as to any of
(a) through (e) above) would  constitute a distribution  of the Notes under the Securities Act
of 1933 (the "Act"),  that would render the  disposition  of any Note a violation of Section 5
of the Act or any state  securities law, or that would require  registration or qualification
pursuant  thereto. The  Seller  will not  act,  in any  manner  set  forth  in the foregoing
sentence with  respect  to any  Note. The  Seller  has not and will  not  sell or otherwise
transfer any of the Notes, except in compliance with the provisions of the Indenture.

Very truly yours,


(Seller)


By: _____
Name:
Title:

APPENDIX A

DEFINITIONS

Accrued Certificate  Interest:  With respect to the Class SB Certificates,
interest accrued during the
related  Interest  Period at the Certificate  Rate for such  Certificate on its Notional
Amount for such Payment
Date.

Addition  Notice:  With respect to the transfer of Subsequent  Mortgage Loans to
the Issuer by a Seller
pursuant to Section 2.2  of the Purchase  Agreement (in  substantially  the form set
forth in Exhibit 3 to such
agreement),  a notice  given by the  respective  Seller to the Rating  Agencies,  the
Indenture  Trustee,  the
Enhancer and the Owner  Trustee,  which shall be given not later than seven  Business
Days prior to the related
Subsequent  Transfer  Date,  of (i) the Seller's  designation  of Subsequent  Mortgage
Loans to be sold to the
Issuer and (ii) the aggregate  principal balance as of the Subsequent Cut-Off Date of
such Subsequent  Mortgage
Loans.

Adverse REMIC Event:  As defined in Section 11.01(f) of the Indenture.

Affiliate:  With respect to any Person,  any other Person  controlling,
controlled  by or under common
control  with  such  Person.  For  purposes  of this  definition,  "control"  means  the
power to  direct  the
management and policies of a Person,  directly or indirectly,  whether through ownership
of voting  securities,
by contract or otherwise and "controlling" and "controlled" shall have meanings
correlative to the foregoing.

Appraised Value:  With respect to any Mortgaged  Property,  either (x) the value
as generally set forth
in an appraisal of such Mortgaged  Property used to establish  compliance with the
underwriting  criteria then
in effect in connection with the application for the Mortgage Loan secured by such
Mortgaged  Property,  or (y)
if the sales price of such  Mortgaged  Property is  considered  in accordance  with the
underwriting  criteria
applicable to the related Mortgage  Loan,  the lesser of (i) the appraised  value
referred to in (x) above and
(ii) the sales price of such Mortgaged Property.

Assignment of Mortgage:  With respect to any Mortgage, an assignment,  notice of
transfer or equivalent
instrument,  in recordable form,  sufficient under the laws of the jurisdiction in which
the related  Mortgaged
Property  is located to reflect  the  conveyance  of such Mortgage,  which assignment,
notice of transfer or
equivalent  instrument  may be in the form of one or more blanket  assignments  covering
Mortgages  secured by
Mortgaged Properties located in the same jurisdiction.

Authorized Newspaper:  A newspaper of general circulation in the Borough of Manhattan,  The City of New
York,  printed  in the  English  language  and  customarily  published  on each  Business  Day,  whether or not
published on Saturdays, Sundays or holidays.

Authorized  Officer:  With respect to the Issuer, any officer of the Owner Trustee who is authorized to
act for the Owner  Trustee in matters  relating to the Issuer and who is  identified  on the list of Authorized
Officers  delivered  by the Owner  Trustee to the  Indenture  Trustee on the Closing Date (as such list may be
modified or supplemented from time to time thereafter).

Bankruptcy Code:  The Bankruptcy Code of 1978, as amended.

Basic Documents:  The Trust Agreement,  the Indenture, the Purchase Agreement, the Insurance Agreement,
the Policy, the Servicing Agreement,  the Custodial Agreement,  any Subsequent Transfer Agreement and the other
documents and certificates delivered in connection with any of the above.

Beneficial  Owner:  With respect to any Note,  the Person who is the  beneficial owner of such Note as
reflected  on the  books of the  Depository  or on the  books of a Person  maintaining an  account  with such
Depository  (directly as  a  Depository  Participant  or  indirectly  through  a Depository  Participant,  in
accordance  with the rules of such Depository).

Billing Cycle:  With respect to any Mortgage Loan and Due Date,  the calendar month  preceding such Due
Date.

Book-Entry  Notes:  Beneficial  interests in the Notes,  ownership and transfers of which shall be made
through book entries by the Depository as described in Section 4.06 of the Indenture.

Business  Day:  Any day other  than  (i) a  Saturday  or a  Sunday  or  (ii) a day on  which  banking
institutions  in the  States of New York,  Pennsylvania,  Delaware  or any State in which the  Corporate  Trust
Office are required or authorized by law to be closed.

Capitalized  Interest Account:  The account  established and maintained pursuant to Section 3.19 of the
Servicing Agreement.

Capitalized Interest  Requirement:  With respect to each Payment Date during the Pre-Funding Period and
on the Payment Date immediately after the end of the Pre-Funding  Period,  the excess, if any of (i) the sum of
(A) the  amount of  interest  that  would  accrue at the Net WAC Rate for the  related Interest  Period on the
amount on deposit in the Pre-Funding  Account as of the close of business on the preceding  Payment Date (or as

of the  Closing  Date,  in  the case  of  the  first  Payment  Date)  and  (B)  the  amount
of any fees paid to the
Enhancer for the Policy,  over (ii) the amount of  reinvestment  earnings since the
preceding  Payment  Date (or
the Closing Date, in the case of the first Payment Date) in the Pre-Funding Account.

        Certificate  Balance:  With respect to any Payment Date and the Class SB
Certificates,  an amount equal
to  the  then  applicable  Certificate  Percentage  Interest  of such  Certificate
multiplied  by  the
Overcollateralization Amount.

        Certificate  Distribution  Amount:  For any Payment  Date,  the amount,  if any,
distributable  on the
Certificates for such Payment Date pursuant to Section 3.05(a)(xv) of the Indenture.

        Certificate of Trust: The Certificate of Trust filed for the Trust pursuant to
Section 3810(a)  of the
Statutory Trust Statute.

        Certificate  Paying Agent:  The  Certificate  Paying Agent  appointed  pursuant
to  Section 3.10 of the
Trust Agreement.  Initially the Indenture Trustee has been appointed as the Certificate
Paying Agent.

        Certificate Percentage Interest:  With respect to any Payment Date and any
Certificate,  the Percentage
Interest for such Certificate.

        Certificate  Rate:  With respect to the Class SB Certificates  and REMIC II
Regular  Interest SB-IO and
any Payment Date, a rate per annum equal to the  percentage  equivalent  of a fraction,
the numerator of which
is the sum of the amounts  calculated  pursuant to clauses (i) through  (iii)  below,
and the  denominator  of
which is the aggregate  Uncertificated  Principal  Balance of the REMIC I Regular
Interests.  For purposes of
calculating  the  Certificate  Rate for the Class SB  Certificates  and REMIC II Regular
Interest  SB-IO,  the
numerator is equal to the sum of the following components:

        (i)  the REMIC I  Remittance  Rate for  REMIC I Regular  Interest  LT1 minus
the SB-IO  Marker  Rate,
applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I
Regular Interest LT1;

        (ii)  the REMIC I  Remittance  Rate for  REMIC I Regular  Interest  LT2 minus
the SB-IO  Marker  Rate,
applied to a notional amount equal to the  Uncertificated  Principal  Balance of REMIC I
Regular  Interest LT2;
and

        (iii) the REMIC I Remittance Rate for REMIC I Regular  Interest LT4 minus twice
the SB-IO Marker Rate,
applied to a notional amount equal to the Uncertificated Principal Balance of REMIC I
Regular Interest LT4.

Certificate Register: The register maintained by the Certificate Registrar in which the Certificate
Registrar shall provide for the registration of Certificates and of transfers and exchanges of Certificates.

Certificate Registrar: The Certificate Registrar appointed pursuant to Section 3.05 of the Trust
Agreement. Initially the Indenture Trustee has been appointed as the Certificate Registrar.

Certificateholder: The Person in whose name a Certificate is registered in the Certificate Register
except that, any Certificate registered in the name of the Issuer, the Owner Trustee or the Indenture Trustee
or any Affiliate of the Owner Trustee or the Indenture Trustee shall be deemed not to be outstanding and the
registered holder will not be considered a Certificateholder for purposes of giving any request, demand,
authorization, direction, notice, consent or waiver under the Indenture or the Trust Agreement; provided
that, in determining whether the Indenture Trustee or the Owner Trustee shall be protected in relying upon
any such request, demand, authorization, direction, notice, consent or waiver, only Certificates that the
Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded. Owners of Certificates
that have been pledged in good faith may be regarded as Certificateholders if the pledgee establishes to the
satisfaction of the Indenture Trustee or the Owner Trustee, as the case may be, the pledgee's right so to act
with respect to such Certificates and that the pledgee is not the Issuer, any other obligor upon the
Certificates or any Affiliate of the Owner Trustee or the Indenture Trustee.

Certificates: The Collective the Class R and the Class SB Certificates.

Class : With respect to any Note, all Notes that bear the same Class designation, (i.e., the Class
A-1 Notes as a group, Class A-2 Notes as a group, Class A-3 Notes as a group and the Class A-4 Notes as a
group). With respect to any Certificate, all Certificates that bear the same Class designation, (i.e., the
Class SB Certificates as a group, Class R-I Certificates as a group and Class R-II Certificates as a group).
With respect to any Regular Interest, all Regular Interests that bear the same class designation.

Class A-1 Notes: The Class A-1 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in
substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-2 Notes: The Class A-2 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in
substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-3 Notes: The Class A-3 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in

substantially the form set forth in Exhibit A-1 to the Indenture.

Class A-4 Notes: The Class A-4 GMACM Home Equity Loan-Backed Term Notes, Series 2006-HE2, in
substantially the form set forth in Exhibit A-1 to the Indenture.

Class Principal Balance: For each Class of Notes, the Initial Note Balance thereof as reduced on
each successive Payment Date by principal distributed in respect thereof on such Payment Date pursuant to
Section 3.03 of the Servicing Agreement and Section 3.05 of the Indenture.

Class R Certificates: The Class R-I Certificates and Class R-II Certificates, each as substantially
in the form of Exhibit I to the Trust Agreement and entitled to distributions as provided in the Trust
Agreement.

Class SB Certificates: The Class SB Certificates substantially in the form of Exhibit A to the Trust
Agreement and entitled to distributions as provided in the Trust Agreement.

Class SB Distribution Amount: On any Payment Date, the sum of (i) Accrued Certificate Interest for
such Payment Date, (ii) the amounts payable to the Certificates pursuant to Section 3.05(a)(ix) of the
Indenture and (iii) the Overcollateralization Release Amount, if any, for the Determination Date related to
such Payment Date, reduced, but not below zero, by the Liquidation Loss Distribution Amount and
Overcollateralization Increase Amount for such Payment Date, all of the foregoing done without double
counting either in addition or subtraction.

Closing Date: June 29, 2006.

Code: The Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated
thereunder.

Collateral: The meaning specified in the Granting Clause of the Indenture.

Collection Period: With respect to any Mortgage Loan and Payment Date, the calendar month preceding
any such Payment Date.

Collections: With respect to any Collection Period, all Interest Collections and Principal Collections
during such Collection Period.

Combined Loan-to-Value Ratio or CLTV: With respect to each Mortgage Loan, the ratio, expressed as a
percentage, of the sum of (i) the initial principal balance of such Mortgage Loan, and (ii) any outstanding
principal balance, at origination of such Mortgage Loan, of all other mortgage loans, if any, secured by

senior or subordinate liens on the related Mortgaged Property, to the Appraised Value, or, when not
available, the Stated Value.

Commission: The Securities and Exchange Commission.

Corporate Trust Office: With respect to the Indenture Trustee, Certificate Registrar, Certificate
Paying Agent and Paying Agent, the principal corporate trust office of the Indenture Trustee and Note
Registrar at which at any particular time its corporate trust business shall be administered, which office at
the date of the execution of this instrument is located at 4 New York Plaza, 6th Floor, New York, New York
10004, Attention: Worldwide Securities Services/Structured Finance Services-GMACM Series 2006-HE2. With
respect to the Owner Trustee, the principal corporate trust office of the Owner Trustee at which at any
particular time its corporate trust business shall be administered, which office at the date of the execution
of this Trust Agreement is located at Rodney Square North, 1100 North Market Street, Wilmington, Delaware
19890, Attention: Corporate Trust Administration.

Custodial Account: The account or accounts created and maintained by the Servicer pursuant to
Section 3.02(b) of the Servicing Agreement, in which the Servicer shall deposit or cause to be deposited
certain amounts in respect of the Mortgage Loans.

Custodial Agreement: The Custodial Agreement, dated the Closing Date, among the Custodian, the
Indenture Trustee, the Issuer and the Servicer relating to the custody of the Mortgage Loans and the Related
Documents.

Custodian: GMAC Bank and its successors and assigns, as applicable pursuant to the Custodial
Agreement, or any other successor custodian of the Mortgage Files appointed by the Indenture Trustee and
reasonably acceptable to the Enhancer and the Servicer.

Cut-Off Date: June 1, 2006.

Cut-Off Date Principal Balance: With respect to any Initial Mortgage Loan or Subsequent Mortgage
Loan, the unpaid principal balance thereof as of the close of business on the last day of the Billing Cycle
immediately prior to the Cut-Off Date or Subsequent Cut-Off Date, as the case may be.

Default: Any occurrence which is or with notice or the lapse of time or both would become an Event of
Default.

Deficiency Amount: As defined in the Policy.

Definitive Notes: Any definitive, fully registered Note, as described in Section 4.06 of the Indenture.

Deleted Loan: A Mortgage Loan replaced or to be replaced with an Eligible Substitute Loan.

Delinquent: As used herein, a Mortgage Loan is considered to be: "30 to 59 days" or "30 or more days" delinquent when a payment due on any scheduled due date remains unpaid as of the close of business on the next following monthly due date. Since the determination as to whether a Mortgage Loan falls into these categories is made as of the close of business on the last business day of each month, a Mortgage Loan with a payment due on July 1 that remained unpaid as of the close of business on July 31 would still be considered current as of July 31. If that payment remained unpaid as of the close of business on August 31, the Mortgage Loan would then be considered 30-59 days delinquent. Delinquency information as of the Cut-off Date is determined and prepared as of the close of business on the last business day immediately prior to the Cut-off Date.

Delinquency Percentages: With respect to any Payment Date, the percentage equivalent of a fraction (A) the numerator of which is the Principal Balance that are Delinquent for 60 days or more as of such Payment Date and (B) the denominator of which is the Pool Balance, in each case as of the beginning of the related Collection Period, expressed as a percentage.

Depositor: Residential Asset Mortgage Products, Inc., a Delaware corporation, or its successor in interest.

Depository: The Depository Trust Company or a successor appointed by the Indenture Trustee with the approval of the Issuer. Any successor to the Depository shall be an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act and the regulations of the Commission thereunder.

Depository Participant: A Person for whom, from time to time, the Depository effects book-entry transfers and pledges of securities deposited with the Depository.

Determination Date: With respect to any Payment Date, the 18th day of the month in which such Payment Date occurs or if such day is not a Business Day, the next succeeding Business Day.

Disqualified Organization: Any organization defined as a "disqualified organization" under Section 860E(e)(5) of the Code, and if not otherwise included, any of the following: (i) the United States, any

14446915.1.LITIGATION

State or political  subdivision  thereof, any possession of the United States, or any agency or instrumentality
of any of the foregoing  (other than an  instrumentality  which is a corporation  if all of its  activities are
subject to tax and,  except for  Freddie  Mac, a majority  of its board of  directors  is not  selected by such
governmental  unit),  (ii)  a  foreign  government,  any  international  organization, or  any  agency  or
instrumentality  of any of the foregoing,  (iii) any  organization  (other than certain farmers' cooperatives
described  in  Section  521 of the  Code)  which  is  exempt  from the tax  imposed  by Chapter  1 of the Code
(including  the tax  imposed by Section  511 of the Code on  unrelated  business  taxable income),  (iv) rural
electric and telephone  cooperatives  described in Section  1381(a)(2)(C)  of the Code, (v) any "electing large
partnership,"  as defined in Section  775(a) of the Code and (vi) any other Person so designated by the Trustee
based upon an Opinion of Counsel that the holding of an  Ownership  Interest in a Class R Certificate  by such
Person may cause the Trust  Estate or any Person  having an  Ownership  Interest  in any Class of  Certificates
(other  than such  Person) to incur a  liability  for any  federal  tax  imposed  under the Code that would not
otherwise  be imposed but for the Transfer of an Ownership  Interest in a Class R Certificate  to such Person.
The terms  "United  States,"  "State" and  "international  organization"  shall have the meanings set forth in
Section 7701 of the Code or successor provisions.

Distribution  Account:  The account or accounts created and maintained by the Certificate  Paying Agent
pursuant to  Section 3.10(c)  of the Trust Agreement.  The Certificate Paying Agent will make all distributions
on the Certificates from money on deposit in the Distribution Account.

Due Date: With respect to each Mortgage Loan, the date on which monthly  payments on such Mortgage Loan
are due.

Eligible  Account:  An  account  that  is  any  of  the  following:  (i) maintained  with a  depository
institution  the  short-term  debt  obligations  of which have been rated by each Rating Agency in its highest
rating category  available,  or (ii) an account or accounts in a depository  institution in which such accounts
are fully insured to the limits  established by the FDIC,  provided that any deposits not so insured shall,  to
the extent  acceptable to each Rating Agency,  as evidenced in writing,  be maintained such that (as evidenced
by an Opinion of Counsel  delivered to the  Indenture  Trustee and each Rating  Agency) the  Indenture  Trustee
have a claim with  respect to the funds in such  account or a perfected  first  security interest  against any
collateral  (which shall be limited to Permitted  Investments)  securing  such funds that is superior to claims

of any other depositors or creditors of the depository institution with which such account is maintained, or (iii) an account or accounts maintained with a depository institution or trust company, as long as its short-term debt obligations are rated P-1 by Moody's, and A-1+ by Standard & Poor's (or the equivalent) or better by each Rating Agency, and its long term debt obligations are rated A2 by Moody's and AA- by Standard & Poor's (or the equivalent) or better by each Rating Agency, or (iv) a segregated trust account or accounts maintained in the corporate trust division of a depository institution or trust company, acting in its fiduciary capacity, or (v) an account or accounts of a depository institution acceptable to each Rating Agency (as evidenced in writing by each Rating Agency that use of any such account will not cause a Rating Event (if determined without regard to the Policy).

Eligible Substitute Loan: A Mortgage Loan substituted by either Seller for a Deleted Loan, which must, on the date of such substitution, as confirmed in an Officers' Certificate delivered to the Indenture Trustee, (i) have an outstanding principal balance, after deduction of the principal portion of the monthly payment due in the month of substitution (or in the case of a substitution of more than one Mortgage Loan for a Deleted Mortgage Loan, an aggregate outstanding principal balance, after such deduction), not in excess of the outstanding principal balance of the Deleted Loan (the amount of any shortfall to be deposited by the Seller in the Custodial Account in the month of substitution); (ii) comply with each representation and warranty made by GMACM and set forth in Section 3.1(b) of the Purchase Agreement, other than clauses (viii), (xiii), (xxiv), (xxv)(B), (xxvi) and (xxvii) thereof, and comply with each of the representations and warranties made by WG Trust 2003 set forth in Section 3.1(d)(II) of the Purchase Agreement, as of the date of substitution; (iii) have a Loan Rate and Net Loan Rate no lower than and not more than 1% per annum higher than the Loan Rate and Net Loan Rate, respectively, of the Deleted Loan as of the date of substitution; (iv) have a CLTV at the time of substitution no higher than that of the Deleted Loan at the time of substitution; (v) have a remaining term to stated maturity not greater than (and not more than one year less than) that of the Deleted Loan; and (vi) not be 30 days or more delinquent.

Enhancer: Financial Guaranty Insurance Company, or any successor thereto.

Enhancer Default: Any failure by the Enhancer to make a payment required under the Policy in accordance with its terms.

Enhancer Optional Deposit: Amounts deposited by or on behalf of the Enhancer in the Note Payment Account, other than Insured Payments, to be applied to the Notes.

ERISA:  The Employee Retirement Income Security Act of 1974, as amended.

Event of Default:  With respect to the Indenture,  any one of the following events (whatever the reason
for such Event of Default and whether it shall be voluntary or  involuntary  or be effected by operation of law
or  pursuant  to any  judgment,  decree  or order  of any  court  or any  order, rule or  regulation  of any
administrative or governmental body):

(a)      a default in the payment of the  principal of, any  installment  of the principal of or interest on any
Note when the same becomes due and payable, and such default shall continue for a period of five days;

(b)      there occurs a default in the  observance  or  performance  in any material respect of any covenant or
agreement  of the Issuer made in the  Indenture,  or any  representation  or warranty of the Issuer made in the
Indenture or in any  certificate  delivered  pursuant  hereto or in  connection  herewith proving to have been
incorrect  in any  material  respect  as of the time  when the same  shall  have  been made that has a  material
adverse  effect on the  Noteholders  or the Enhancer,  and such default shall  continue or not be cured,  or the
circumstance  or condition in respect of which such  representation  or warranty was incorrect  shall not have
been  eliminated  or otherwise  cured,  for a period of 30 days after there shall have been given, by registered
or certified  mail,  to the Issuer by the Indenture  Trustee or to the Issuer and the Indenture  Trustee by the
Enhancer or the  Noteholders  of at least 25% of the  aggregate  Note  Balance of the Notes,  a written  notice
specifying  such default or incorrect  representation  or warranty and  requiring it to be remedied and stating
that such notice is a notice of default hereunder;

(c)      there occurs the filing of a decree or order for relief by a court having jurisdiction in the premises
in  respect  of the  Issuer or any  substantial  part of the  Trust  Estate in an involuntary  case  under any
applicable  federal or state  bankruptcy,  insolvency  or other  similar  law now or hereafter  in effect,  or
appointing a receiver,  liquidator,  assignee,  custodian,  trustee,  sequestrator  or similar  official of the
Issuer or for any  substantial  part of the Trust  Estate,  or ordering the  winding-up or  liquidation  of the
Issuer's  affairs,  and such decree or order shall remain unstayed and in effect for a period of 60 consecutive
days; or

(d)      there occurs the  commencement  by the Issuer of a voluntary case under any applicable  federal or state
bankruptcy,  insolvency  or other  similar law now or hereafter in effect,  or the consent by the Issuer to the

14446915.1.LITIGATION

entry of an order for relief in an involuntary case under any such law, or the consent by the Issuer to the
appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator or
similar official of the Issuer or for any substantial part of the assets of the Trust Estate, or the making
by the Issuer of any general assignment for the benefit of creditors, or the failure by the Issuer generally
to pay its debts as such debts become due, or the taking of any action by the Issuer in furtherance of any of
the foregoing.

Exchange Act: The Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

Excess Spread: With respect to any Payment Date and without taking into account any Insured Payment,
if any, paid by the Enhancer under the Policy for such Payment Date, the excess, if any, of (i) Interest
Collections for the related Collection Period over (ii) the sum of (x) the sum of (A) the premium allocable
to such Payment Date and (B) any unpaid premium for the Policy, with interest thereon as provided in the
Insurance Agreement and (y) the aggregate amount distributed to the Noteholders as interest on such Payment
Date pursuant to Section 3.05(a)(i) of the Indenture.

Expenses: The meaning specified in Section 7.02 of the Trust Agreement.

Fannie Mae: Fannie Mae, formerly the Federal National Mortgage Association, or any successor thereto.

FDIC: The Federal Deposit Insurance Corporation or any successor thereto.

Final Payment Date: The Payment Date in May 2036.

Fiscal Year: The fiscal year of the Trust, which shall end on December 31 of each year.

Foreclosure Profit: With respect to a Liquidated Mortgage Loan, the amount, if any, by which (i) the
aggregate of Liquidation Proceeds net of Liquidation Expenses exceeds (ii) the Principal Balance of such
Liquidated Mortgage Loan (plus accrued and unpaid interest thereon at the applicable Loan Rate from the date
interest was last paid through the date of receipt of the final Liquidation Proceeds) immediately prior to
the final recovery of the related Liquidation Proceeds.

Form 10-K Certification: As defined in Section 4.02(c) of the Servicing Agreement.

Freddie Mac: Freddie Mac, formerly the Federal Home Loan Mortgage Corporation, or any successor thereto.

14446915.1.LITIGATION

GAAP: Generally accepted accounting principles.

Grant: Pledge, bargain, sell, warrant, alienate, remise, release, convey, assign, transfer, create,
and grant a lien upon and a security interest in and right of set-off against, deposit, set over and confirm
pursuant to the Indenture. A Grant of the Collateral or of any other agreement or instrument shall include
all rights, powers and options (but none of the obligations) of the granting party thereunder, including the
immediate and continuing right to claim for, collect, receive and give receipt for principal and interest
payments in respect of such collateral or other agreement or instrument and all other moneys payable
thereunder, to give and receive notices and other communications, to make waivers or other agreements, to
exercise all rights and options, to bring proceedings in the name of the granting party or otherwise, and
generally to do and receive anything that the granting party is or may be entitled to do or receive
thereunder or with respect thereto.

GMAC: General Motors Acceptance Corporation, and its successors and assigns.

GMACM: GMAC Mortgage Corporation, and its successors and assigns.

Indemnified Party: The meaning specified in Section 7.02 of the Trust Agreement.

Indenture: The indenture dated as of the Closing Date between the Issuer and the Indenture Trustee.

Indenture Trustee: JPMorgan Chase Bank, National Association, a national banking association, and its
successors and assigns or any successor indenture trustee appointed pursuant to the terms of the Indenture.

Independent: When used with respect to any specified Person, such Person (i) is in fact independent
of the Issuer, any other obligor on the Notes, the Sellers, the Depositor and any Affiliate of any of the
foregoing Persons, (ii) does not have any direct financial interest or any material indirect financial
interest in the Issuer, any such other obligor, the Sellers, the Depositor or any Affiliate of any of the
foregoing Persons and (iii) is not connected with the Issuer, any such other obligor, the Sellers, the
Depositor or any Affiliate of any of the foregoing Persons as an officer, employee, promoter, underwriter,
trustee, partner, director or person performing similar functions.

Independent Certificate: A certificate or opinion to be delivered to the Indenture Trustee under the
circumstances described in, and otherwise complying with, the applicable requirements of Section 10.01 of the
Indenture, made by an Independent appraiser or other expert appointed by an Issuer Order and approved by the

Indenture  Trustee in the exercise of reasonable  care,  and such opinion or  certificate shall state that the
signer has read the definition of  "Independent"  in this  Indenture and that the signer is Independent  within
the meaning thereof.

    Initial Aggregate Note Balance: $626,240,000.

    Initial Class A-1 Note Balance: $368,000,000.

    Initial Class A-2 Note Balance: $28,500,000.

    Initial Class A-3 Note Balance: $145,000,000.

    Initial Class A-4 Note Balance: $84,740,000.

    Initial Certificate Balance: $13,760,000.

    Initial  Mortgage  Loans:  The mortgage loans  initially  transferred by the Depositor to the Issuer on
the Closing Date, which are listed on the Mortgage Loan Schedule on such date.

    Initial Note  Balance:  The Initial Class A-1 Note  Balance,  Initial  Class A-2 Note Balance,  Initial
Class A-3 Note Balance or Initial Class A-4 Note Balance, as applicable.

    Initial Pool Balance:  The sum of (a) the aggregate  Principal  Balances of the Initial  Mortgage Loans
as of the Cut-off Date and (b) the Original Pre-Funded Amount.

    Insolvency Event:  With respect to a specified  Person,  (a) the filing of a decree or order for relief
by a court  having  jurisdiction in the  premises  in respect of such  Person or any substantial  part of its
property  in an  involuntary  case under any  applicable  bankruptcy,  insolvency  or other  similar law now or
hereafter in effect,  or appointing a receiver,  liquidator,  assignee,  custodian, trustee,  sequestrator or
similar  official for such Person or for any  substantial  part of its property,  or ordering the winding-up or
liquidation of such  Person's  affairs,  and such decree or order shall  remain unstayed  and in effect for a
period of 60  consecutive  days;  or (b) the  commencement  by such  Person of a voluntary  case under  any
applicable  bankruptcy,  insolvency  or other  similar law now or hereafter  in effect, or the consent by such
Person to the entry of an order for relief in an  involuntary  case under any such law, or the consent by such
Person to the appointment of or taking  possession by a receiver,  liquidator,  assignee, custodian,  trustee,
sequestrator  or similar  official for such Person or for any substantial  part of its property,  or the making
by such  Person of any  general  assignment  for the  benefit  of  creditors,  or the failure  by such  Person
generally  to pay its debts as such debts  become due or the  admission  by such Person in writing (as to which

14446915.1.LITIGATION

the Indenture  Trustee shall have notice) of its inability to pay its debts  generally, or the adoption by the
Board of Directors or managing  member of such Person of a resolution  which  authorizes action by such Person
in furtherance of any of the foregoing.

Insurance  Agreement:  The Insurance and Indemnity  Agreement  dated as of the Closing Date,  among the
Servicer,  the Sellers,  the  Depositor,  the Issuer,  the  Indenture  Trustee and the Enhancer,  including any
amendments and supplements thereto.

Insurance  Proceeds:  Proceeds paid by any insurer (other than the Enhancer) pursuant to any insurance
policy  covering a Mortgage Loan which are required to be remitted to the Servicer,  or amounts  required to be
paid by the Servicer pursuant to the next to last sentence of Section 3.04 of the Servicing  Agreement,  net of
any component  thereof (i) covering any expenses  incurred by or on behalf of the Servicer in  connection  with
obtaining such proceeds,  (ii) that is applied to the restoration or repair of the related Mortgaged  Property,
(iii)  released to the related  Mortgagor in accordance  with the  Servicer's  normal servicing  procedures or
(iv) required to be paid to any holder of a mortgage senior to such Mortgage Loan.

Insured Payment:  As defined in the Policy.

Interest  Collections:  With  respect to any Payment  Date,  the sum of all payments by or on behalf of
Mortgagors  and any other  amounts  constituting  interest  (including  without  limitation  such  portion  of
Insurance  Proceeds, Net  Liquidation  Proceeds and  Repurchase  Prices as is allocable  to  interest on the
applicable  Mortgage  Loan) as is paid by the  Sellers  or the  Servicer  (including any optional  servicing
advance) or is collected  and applied by the Servicer  under the Mortgage  Loans during the related  Collection
Period,  and reduced by the Servicing Fee for the related  Collection  Period and by any fees (including annual
fees) or late  charges  or  similar  administrative  fees paid by  Mortgagors  during the related  Collection
Period. The terms of the related  Mortgage  Note shall  determine  the portion of each payment in respect of
such Mortgage Loan that constitutes principal or interest.

Interest  Coverage  Amount:  The amount to be paid from proceeds from the sale of the Notes for deposit
into the  Capitalized  Interest  Account  pursuant to Section  3.19 of the  Servicing Agreement on the Closing
Date,  which  amount  initially  shall be  $1,759,315.20  and  thereafter,  shall be the amount  computed  in
accordance with Section 3.19 of the Servicing Agreement.

Interest  Period:  With respect to the Notes and any Payment  Date,  the calendar month  preceding such
Payment Date.

Issuer or Trust:  The GMACM  Home  Equity  Loan Trust  2006-HE2,  a Delaware statutory  trust,  or its
successor in interest.

Issuer  Order or Issuer  Request:  A written  order or request  signed in the name of the Issuer by any
one of its Authorized Officers and delivered to the Indenture Trustee.

Lien:  Any mortgage,  deed of trust,  pledge,  conveyance,  hypothecation, assignment,  participation,
deposit arrangement,  encumbrance,  lien (statutory or other),  preference,  priority right or interest or other
security  agreement  or  preferential  arrangement  of  any  kind  or  nature  whatsoever,  including,  without
limitation,  any conditional sale or other title retention agreement,  any financing lease having substantially
the same  economic  effect as any of the  foregoing  and the filing of any  financing statement  under the UCC
(other than any such  financing  statement  filed for  informational  purposes  only) or comparable  law of any
jurisdiction  to  evidence  any  of  the  foregoing;  provided,  however,  that  any assignment  pursuant  to
Section 6.02 of the Servicing Agreement shall not be deemed to constitute a Lien.

Liquidated  Mortgage Loan:  With respect to any Payment Date, any Mortgage Loan in respect of which the
Servicer has determined,  in accordance with the servicing procedures specified in the Servicing Agreement,  as
of the end of the related  Collection  Period that  substantially  all Liquidation Proceeds which it reasonably
expects to recover, if any, with respect to the disposition of the related REO Property have been recovered.

Liquidation  Expenses:  All out-of-pocket  expenses (exclusive of overhead) incurred by or on behalf of
the Servicer in connection  with the  liquidation  of any Mortgage  Loan and not recovered  under any insurance
policy,  including legal fees and expenses,  any unreimbursed amount expended (including,  without limitation,
amounts  advanced to correct  defaults on any mortgage  loan which is senior to such Mortgage Loan and amounts
advanced to keep  current or pay off a mortgage  loan that is senior to such  Mortgage Loan)  respecting such
Mortgage Loan and any related and  unreimbursed  expenditures  for real estate  property taxes or for property
restoration, preservation or insurance against casualty loss or damage.

Liquidation  Loss  Amount:  With  respect  to any  Payment  Date and any Mortgage  Loan that  became a
Liquidated  Mortgage  Loan during the related  Collection  Period,  the  unrecovered portion of the  Principal
Balance of such Mortgage Loan and any unpaid accrued  interest  thereon at the end of such  Collection  Period,
after giving effect to the Net Liquidation Proceeds applied in reduction of such Principal Balance.

Liquidation Loss Distribution Amount: With respect to any Payment Date, an amount equal to the sum of
(A) 100% of the Liquidation Loss Amounts on such Payment Date, plus (B) any Liquidation Loss Amounts
remaining undistributed from any preceding Payment Date. Any Liquidation Loss Amount remaining undistributed
from any preceding payment date shall not be required to be paid as a Liquidation Loss Distribution Amount to
the extent that a Liquidation Loss Amount was paid on the notes by means of excess interest or a draw on the
Policy or was reflected in the reduction of the Overcollateralization Amount.

Liquidation Proceeds: Proceeds (including Insurance Proceeds but not including amounts drawn under
the Policy) if any received in connection with the liquidation of any Mortgage Loan or related REO Property,
whether through trustee's sale, foreclosure sale or otherwise.

LT1 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal
Reduction Amount for REMIC I Regular Interest LT1 for such Payment Date over the principal Liquidation Loss
Amounts allocated to REMIC I Regular Interest LT1 on such Payment Date.

LT2 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal
Reduction Amount REMIC I Regular Interest LT2 for such Payment Date over the principal Liquidation Loss
Amounts allocated to REMIC I Regular Interest LT2 on such Payment Date.

LT3 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal
Reduction Amount REMIC I Regular Interest LT3 for such Payment Date over the principal Liquidation Loss
Amounts allocated to REMIC I Regular Interest LT3 on such Payment Date.

LT4 Principal Distribution Amount: For any Payment Date, the excess, if any, of the REMIC I Principal
Reduction Amount REMIC I Regular Interest LT4 for such Payment Date over the principal Liquidation Loss
Amounts allocated to REMIC I Regular Interest LT4 on such Payment Date.

Loan Rate: With respect to any Mortgage Loan and any day, the per annum rate of interest applicable
under the related Mortgage Note.

Lost Note Affidavit: With respect to any Mortgage Loan as to which the original Mortgage Note has
been permanently lost or destroyed and has not been replaced, an affidavit from the related Seller certifying
that the original Mortgage Note has been lost, misplaced or destroyed (together with a copy of the related
Mortgage Note, if available).

MERS: Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the
laws of the State of Delaware, or any successor thereto.

MERS(R)System:  The system of recording transfers of Mortgages electronically maintained by MERS.

MIN:  The Mortgage Identification Number for Mortgage Loans registered with MERS on the MERS(R)System.

MOM Loan:  With respect to any Mortgage  Loan,  MERS acting as the  mortgagee  of such Mortgage  Loan,
solely as nominee for the originator of such Mortgage Loan and its successors and assigns,  at the  origination
thereof.

Monthly  Payment:  With respect to any Mortgage Loan (including any REO Property) and any Due Date, the
payment of principal and interest due thereon in accordance with the terms of such Mortgage Loan.

Moody's:  Moody's Investors Service, Inc., or its successor in interest.
Mortgage:  The mortgage,  deed of trust or other  instrument  creating  a first or  second  lien on an
estate in fee simple interest in real property securing a Mortgage Loan.

Mortgage File:  With respect to each Mortgage Loan:

(i)     the original  Mortgage Note endorsed or assigned  without  recourse in blank (which  endorsement  shall
contain  either an original  signature  or a facsimile  signature of an  authorized officer of GMACM) or, with
respect to any Mortgage  Loan as to which the original  Mortgage  Note has been permanently  lost or destroyed
and has not been replaced, a Lost Note Affidavit;

(ii)    the  original  Mortgage,  noting the  presence  of the MIN of the  Mortgage Loan,  if the  Mortgage is
registered on the MERS(R)System,  and language  indicating  that the Mortgage Loan is a MOM Loan if the Mortgage
Loan is a MOM Loan,  with  evidence  of  recording  thereon,  or,  if the  original Mortgage  has not yet been
returned  from the public  recording  office,  a copy of the  original  Mortgage certified  by GMACM that such
Mortgage has been sent for  recording,  or a county  certified  copy of such Mortgage in the event the recording
office keeps the original or if the original is lost;

(iii)   unless  the  Mortgage  Loan is  registered  on the MERS(R)System,  original assignments  (which may be
included in one or more  blanket  assignments  if permitted by  applicable  law) of the Mortgage in  recordable
form from GMACM to "JPMorgan  Chase Bank, as Indenture  Trustee under that certain Indenture  dated as of June
29, 2006, for GMACM Home Equity Loan Trust 2006-HE2,  Home Equity  Loan-Backed  Term Notes" c/o the Servicer at
an address specified by the Servicer;

(iv)    originals of any  intervening  assignments of the Mortgage from the originator to GMACM (or to MERS, if

the Mortgage Loan is registered on the MERS(R)System,  and which notes the presence of a MIN),  with evidence of
recording  thereon,  or, if the original of any such intervening  assignment has not yet been returned from the
public recording office, a copy of such original  intervening  assignment certified by GMACM that such original
intervening assignment has been sent for recording; and

(v)     a true and correct copy of each assumption,  modification,  consolidation or substitution agreement, if
any, relating to such Mortgage Loan; and

(vi)    any documents  required to be added to such  documents  pursuant to the Purchase Agreement,  the Trust
Agreement or the Servicing Agreement.

    It is  understood  that the  Mortgage  File (other  than item (i) above) may be retained in  microfilm,
microfiche,  optical  storage  or  magnetic  media in lieu of hard  copy;  provided, that with  respect to any
Mortgage  Loan not  registered  on the MERS(R)System,  the original  assignment of Mortgage  described in clause
(iii) above shall be retained in the Mortgage File.

    Mortgage  Loan  Schedule:  The initial  schedule of Initial  Mortgage  Loans as of the Cut-Off Date set
forth in  Exhibit  A of the  Servicing  Agreement,  and as of each  Subsequent  Cut-Off Date,  any  Subsequent
Mortgage  Loans,  which  schedule sets forth as to each Mortgage Loan (i) the Cut-Off Date  Principal  Balance,
(ii) the loan number and (iii) the lien position of the related Mortgage.

    Mortgage  Loans: At any time, all Initial  Mortgage Loans and Subsequent Mortgage Loans that have been
sold to the Issuer pursuant to, in the case of Initial  Mortgage Loans,  the Trust Agreement,  or, in the case
of Subsequent  Mortgage  Loans,  a Subsequent  Transfer  Agreement,  together with all monies due or become due
thereunder or the Related Documents, and that remain subject to the terms thereof.

    Mortgage  Note:  With respect to a Mortgage  Loan,  the  promissory  note pursuant to which the related
Mortgagor agrees to pay the indebtedness  evidenced  thereby and secured by the related Mortgage as modified or
amended.

    Mortgaged  Property:  The  underlying  property,  including  real  property and improvements  thereon,
securing a Mortgage Loan.

    Mortgagor:  The obligor or obligors under a Mortgage Note.

    Net Liquidation  Proceeds:  With respect to any Liquidated Mortgage Loan, Liquidation  Proceeds net of
amounts drawn on the Policy,  Liquidation  Expenses (but not including the portion, if any, of such amount that

exceeds the Principal Balance of, plus accrued and unpaid interest on, such Mortgage Loan at the end of the
Collection Period immediately preceding the Collection Period in which such Mortgage Loan became a Liquidated
Mortgage Loan) and including any Recovery Amounts.

Net Loan Rate: With respect to any Payment Date and any Mortgage Loan, the Loan Rate of that Mortgage
Loan applicable to the Due Date in the related Collection Period, net of the Servicing Fee Rate.

Net WAC Rate: With respect to any Payment Date, (i) a per annum rate equal to the weighted average of
the Net Loan Rates of the Mortgage Loans as of the first day of the month preceding the month in which such
Payment Date occurs, and weighted on the basis of the respective Principal Balances of such Mortgage Loans as
of the first day of the related Collection Period, minus (ii) the premium rate on the Policy multiplied by a
fraction, the numerator of which is the sum of the Note Balances and the denominator of which is the Pool
Balance.

Net Worth: As of any date of determination, the net worth of GMACM and its consolidated subsidiaries,
as determined in accordance with GAAP.

Non-United States Person: Any Person other than a United States Person.

Note Balance: With respect to any Payment Date and the Notes, the Initial Aggregate Note Balance
reduced by all payments of principal on the Notes prior to such Payment Date.

Note Owner or Owner: The Beneficial Owner of a Note.

Note Payment Account: The account established by the Indenture Trustee pursuant to Sections 3.01
and 8.02 of the Indenture and Section 5.01 of the Servicing Agreement. Amounts deposited in the Note Payment
Account will be distributed by the Indenture Trustee in accordance with Section 3.05 of the Indenture.

Note Rate: With respect to each Interest Period and the related Payment Date, a per annum rate equal
to with respect to:

(a)    the Class A-1 Notes, the lesser of (i) 6.310% and (ii) the Net WAC Rate;

(b)    the Class A-2 Notes, the lesser of (i) 6.180% and (ii) the Net WAC Rate;

(c)    the Class A-3 Notes, the lesser of (i) 6.320% and (ii) the Net WAC Rate; and

(d)    the Class A-4 Notes, the lesser of (i) 6.471% (or, for any Payment Date after the second
Payment Date on which the Servicer can repurchase the Mortgage Loans pursuant to section 8.08(b) of the

Servicing Agreement, 7.471% per annum) and (ii) the Net WAC Rate;.

Note Register: The register maintained by the Note Registrar in which the Note Registrar shall
provide for the registration of Notes and of transfers and exchanges of Notes.

Note Registrar: The Indenture Trustee, in its capacity as Note Registrar.

Noteholder or Holder: The Person in whose name a Note is registered in the Note Register, except
that, any Note registered in the name of the Depositor, the Issuer or the Indenture Trustee or any Affiliate
of any of them shall be deemed not to be outstanding and the registered holder will not be considered a
Noteholder for purposes of giving any request, demand, authorization, direction, notice, consent or waiver
under the Indenture or the Trust Agreement; provided, that in determining whether the Indenture Trustee shall
be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver,
only Notes that the Indenture Trustee or the Owner Trustee knows to be so owned shall be so disregarded.
Owners of Notes that have been pledged in good faith may be regarded as Noteholders if the pledgee thereof
establishes to the satisfaction of the Indenture Trustee or the Owner Trustee such pledgee's right so to act
with respect to such Notes and that such pledgee is not the Issuer, any other obligor on the Notes or any
Affiliate of any of the foregoing Persons.

Notes: Any of the Class A-1 Notes, Class A-2 Notes, Class A-3 Notes or Class A-4 Notes, issued and
outstanding pursuant to the Indenture.

Notional Amount: With respect to the Class SB Certificates and REMIC II Regular Interest SB-IO,
immediately prior to any Payment Date a notional amount equal to the aggregate of the Uncertificated
Principal Balances of the REMIC I Regular Interests.

Officer's Certificate: With respect to the Servicer, a certificate signed by the President, Managing
Director, a Director, a Vice President or an Assistant Vice President, of the Servicer and delivered to the
Indenture Trustee. With respect to the Issuer, a certificate signed by any Authorized Officer of the Issuer,
under the circumstances described in, and otherwise complying with, the applicable requirements of
Section 10.01 of the Indenture, and delivered to the Indenture Trustee. Unless otherwise specified, any
reference in the Indenture to an Officer's Certificate shall be to an Officer's Certificate of any Authorized
Officer of the Issuer.

Opinion of Counsel: A written opinion of counsel of a law firm reasonably acceptable to the recipient

thereof. Any Opinion of Counsel for the Servicer may be provided by in-house counsel for the Servicer if
reasonably acceptable.

Original Pre-Funded Amount: The amount deposited from the proceeds of the sale of the Securities into
the Pre-Funding Account on the Closing Date, which amount is $160,042,722.

Outstanding: With respect to the Notes, as of the date of determination, all Notes theretofore
executed, authenticated and delivered under this Indenture except:

(i) Notes theretofore cancelled by the Note Registrar or delivered to the Indenture Trustee
for cancellation; and

(ii) Notes in exchange for or in lieu of which other Notes have been executed, authenticated
and delivered pursuant to the Indenture unless proof satisfactory to the Indenture Trustee is
presented that any such Notes are held by a holder in due course;

provided, however, that for purposes of effectuating the Enhancer's right of subrogation as set forth in
Section 4.12 of the Indenture only, all Notes that have been paid with funds provided under the Policy shall
be deemed to be Outstanding until the Enhancer has been reimbursed with respect thereto.

Overcollateralization Amount: With respect to any Payment Date, the amount (but not less than zero),
if any, by which (a) the aggregate outstanding Principal Balance of the Mortgage Loans as of the close of
business on the last day of the related Collection Period, plus amounts on deposit in the Pre-Funding Account
(excluding any investment earnings thereon) exceeds (b) the aggregate Note Balance of the Notes.

Overcollateralization Increase Amount: With respect to any Payment Date, an amount equal to the lesser
of (1) the Excess Spread remaining after the application thereof to the payment of any Liquidation Loss
Distribution Amount on such payment date and (2) the amount necessary to increase the Overcollateralization
Amount to the Overcollateralization Target Amount.

Overcollateralization Release Amount: With respect to any Payment Date, the excess, if any, of the
Overcollateralization Amount over the Overcollateralization Target Amount, which, on such Payment Date, shall
not exceed an amount equal to the total Principal Collections for such Payment Date.

Overcollateralization Target Amount: With respect to any Payment Date prior to the Stepdown Date, the
Required Overcollateralization Amount will be 3.80% of the initial Pool Balance. With respect to any Payment
Date on or after the Stepdown Date, an amount equal to the greater of (i) 7.60% of the Pool Balance as of the

last day of the related Collection Period and (ii) 0.50% of the initial Pool
Balance; provided, however,
upon the occurrence of a Servicing Trigger Event, the Overcollateralization Target
Amount shall be no less
than the Overcollateralization Target Amount as of the previous Payment Date. The
Overcollateralization
Target Amount may be reduced from time to time with the consent of the Enhancer and
written notice from each
Rating Agency that the rating will not be reduced or withdrawn as a result
of the change in the
Overcollateralization Target Amount.

Owner Trust:  GMACM Home Equity Loan Trust 2006-HE2, created by the
Certificate of Trust pursuant to
the Trust Agreement.

Owner Trustee:  Wilmington Trust Company, not in its individual capacity but
solely as owner trustee,
and its successors and assigns or any successor Owner Trustee appointed pursuant to
the terms of the Trust
Agreement.

Ownership Interest: As to any Certificate, any ownership or security interest
in such Certificate,
including any interest in such Certificate as the Certificateholder thereof and any
other interest therein,
whether direct or indirect, legal or beneficial, as owner or as pledgee.

Paying Agent: Any paying agent or co-paying agent appointed pursuant to
Section 3.03 of the
Indenture, which initially shall be the Indenture Trustee.

Payment Date: The 25th day of each month, or if such day is not a
Business Day, then the next
Business Day.

Percentage Interest: With respect to any Note and Payment Date, the percentage
obtained by dividing
the Note Balance of such Note by the aggregate Note Balance of all Notes prior to such
Payment Date. With
respect to any Certificate and any Payment Date, the Percentage Interest stated
on the face of such
Certificate.
Permitted Investments:  One or more of the following:

(i)  obligations of or guaranteed as to principal and interest by the United
States or any agency or
instrumentality thereof when such obligations are backed by the full faith and credit of
the United States;

(ii)  repurchase agreements on obligations specified in clause (i) above
maturing not more than one
month from the date of acquisition thereof; provided, that the unsecured short-term
debt obligations of the
party agreeing to repurchase such obligations are at the time rated by each Rating
Agency in its highest
short-term rating category available;

(iii)  federal funds,  certificates of deposit, demand deposits, time deposits and bankers' acceptances
(which shall  each have an  original  maturity  of not  more  than  90  days  and,  in the  case of  bankers'
acceptances,  shall in no event have an  original  maturity  of more than 365 days or a remaining  maturity of
more than 30 days)  denominated  in United States dollars of any  U.S. depository institution or trust company
incorporated  under the laws of the United States or any state  thereof or of any domestic  branch of a foreign
depository  institution or trust company;  provided,  that the short-term  debt obligations of such depository
institution  or trust  company  (or,  if the only  Rating  Agency  is  Standard  & Poor's,  in the case of the
principal  depository  institution  in a  depository  institution  holding  company, debt  obligations  of the
depository  institution  holding  company) at the date of  acquisition  thereof  have been rated by each Rating
Agency in its highest  short-term  rating category  available;  and provided  further, that if the only Rating
Agency is  Standard  & Poor's  and if the  depository  or trust  company is a  principal subsidiary  of a bank
holding company and the debt  obligations of such subsidiary are not separately  rated, the applicable  rating
shall be that of the bank holding company;  and provided further,  that if the only Rating Agency is Standard &
Poor's and the  original  maturity  of such  short-term  debt  obligations  of a domestic  branch of a foreign
depository  institution or trust company shall exceed 30 days, the short-term  rating of such institution shall
be A-1+;

(iv)  commercial  paper  (having  original  maturities  of not more than 365 days) of any  corporation
incorporated  under the laws of the United  States or any state thereof  which on the date of  acquisition  has
been rated by each Rating Agency in its highest  short-term  rating  category  available; provided,  that such
commercial paper shall have a remaining maturity of not more than 30 days;

(v)  a money market fund or a qualified investment fund (including without limitation,  any such fund
for which the  Indenture  Trustee or an  Affiliate  of the  Indenture  Trustee acts as an advisor or a manager)
rated by each Rating Agency in one of its two highest  long-term  rating  categories available (if so rated by
such Rating Agency); and

(vi)  other  obligations  or  securities  that are  acceptable  to each  Rating Agency as a Permitted
Investment  hereunder  and will not  cause a Rating  Event,  and  which  are  acceptable to the  Enhancer,  as
evidenced in writing;


provided,  however,  that no instrument shall be a Permitted Investment if it represents, either (1) the right

to receive only interest  payments with respect to the underlying  debt  instrument or (2) the right to receive
both principal and interest  payments  derived from  obligations  underlying  such instrument and the principal
and interest  payments  with respect to such  instrument  provide a yield to maturity greater than 120% of the
yield to maturity at par of such  underlying  obligations.  References  herein to the highest  long-term debt
rating category  available shall mean AAA in the case of Standard & Poor's and Aaa in the case of Moody's,  and
references herein to the highest  short-term  rating category  available shall mean A-1 in the case of Standard
& Poor's and P-1 in the case of Moody's.

Permitted Transferee:  Any Transferee of a Class R Certificate,  other than a Disqualified Organization
or Non-United States Person.

Person:  Any legal  individual,  corporation,  partnership,  joint  venture, association,  joint-stock
company,  limited  liability  company,  trust,  unincorporated  organization  or government  or any  agency or
political subdivision thereof.

Plan:  Any employee  benefit  plan or  certain  other  retirement  plans and arrangements,  including
individual  retirement accounts and annuities,  Keogh plans and bank collective investment funds and insurance
company  general or separate  accounts in which such plans,  accounts or  arrangements are invested,  that are
subject to ERISA or Section 4975 of the Code, as described in Section 3.05 of the Trust Agreement.

Plan Assets: The meaning specified in  Section 2510.3-101 of the Department of Labor Regulations and as
described in Section 3.05 of the Trust Agreement.

Policy: The Financial  Guaranty Insurance Policy 06030080,  dated as of the Closing Date, issued by the
Enhancer.

Policy Draw Amount: With respect to any Payment Date, the Insured Payment.

Pool Balance:  With respect to any date,  the aggregate  Principal  Balance of all Mortgage Loans as of
such date plus, during the Pre-Funding Period, the Pre-Funded Amount.

Predecessor  Note:  With respect to any Note,  every  previous Note  evidencing all or a portion of the
same debt as that evidenced by such Note; and, for the purpose of this definition,  any Note  authenticated and
delivered under Section 4.03 of the Indenture in lieu of a mutilated,  lost,  destroyed or stolen Note shall be
deemed to evidence the same debt as such mutilated, lost, destroyed or stolen Note.

Pre-Funded  Amount:  With  respect to any date of  determination  during the Pre-Funding  Period,  the

amount on deposit in the Pre-Funding Account.

Pre-Funding Account: The account established and maintained pursuant to Section 3.18 of the Servicing Agreement.

Pre-Funding Period: The period commencing on the Closing Date until the earliest of (i) the date on which the amount on deposit in the Pre-Funding Account is less than $100,000, (ii) September 26, 2006 or (iii) the occurrence of a Servicing Default.

Principal Balance: With respect to any Mortgage Loan, other than a Liquidated Mortgage Loan, and as of any day, the related Cut-Off Date Principal Balance, minus all collections credited as principal in respect of any such Mortgage Loan in accordance with the related Mortgage Note and applied in reduction of the Principal Balance thereof. For purposes of this definition, a Liquidated Mortgage Loan shall be deemed to have a Principal Balance equal to the Principal Balance of the related Mortgage Loan immediately prior to the final recovery of substantially all related Liquidation Proceeds and a Principal Balance of zero thereafter.

Principal Collections: With respect to any Payment Date, an amount equal to the sum of (i) the principal portion of all scheduled Monthly Payments on the Mortgage Loans received during the related Collection Period, as reported by the Servicer or the related Subservicer; (ii) the principal portion of all proceeds of the repurchase of any Mortgage Loans (or, in the case of a substitution, any Substitution Adjustment Amounts) during the related Collection Period; (iii) the principal portion of all other unscheduled collections received on the Mortgage Loans during the related Collection Period (or deemed to be received during the related Collection Period), including, without limitation, full and partial Principal Prepayments made by the respective Mortgagors, Insurance Proceeds, Net Liquidation Proceeds and Subsequent Net Recovery Amounts, to the extent not previously distributed; and (iv) on the Payment Date immediately following the end of the Pre-Funding Period, any amount transferred from the Pre Funding Account to the Note Payment Account in accordance with Section 3.17 of the Servicing Agreement.

Principal Distribution Amount: For any Payment Date, the total Principal Collections for such Payment Date less any Overcollateralization Release Amount for such Payment Date; provided that the Principal Distribution Amount for any Payment Date shall not be less than $0.

Proceeding: Any suit in equity, action at law or other judicial or administrative proceeding.

Program Guide: The GMACM Home Equity Servicing Guidelines, as in effect from time to time.

Purchase Agreement: The mortgage loan purchase agreement dated as of the Closing Date, among the
Sellers, the Purchaser, the Issuer and the Indenture Trustee.

Purchase Price: The amounts specified in Section 2.3(a) of the Purchase Agreement.

Purchaser: Residential Asset Mortgage Products, Inc., as purchaser under the Purchase Agreement.

Rating Agency: Each of Moody's and Standard & Poor's or, if any such organization or a successor
thereto is no longer in existence, such nationally recognized statistical rating organization, or other
comparable Person, designated by the Depositor, notice of which designation shall be given to the Indenture
Trustee. References herein to the highest short term unsecured rating category of a Rating Agency shall mean
A-1 or better in the case of Standard & Poor's and P-1 or better in the case of Moody's; and in the case of
any other Rating Agency, shall mean such equivalent ratings. References herein to the highest long-term
rating category of a Rating Agency shall mean "AAA" in the case of Standard & Poor's and "Aaa" in the case of
Moody's; and in the case of any other Rating Agency, shall mean such equivalent rating.

Record Date: With respect to the Notes and any Payment Date, unless Notes are no longer held in
book-entry form, the close of business on the Business Day immediately preceding such Payment Date and if the
Notes are no longer held in book-entry form, the last Business Day of the calendar month preceding the month
of such Payment Date.

Recovery Amount: Amounts collected on a Mortgage Loan after the Mortgage Loan becomes a Liquidated
Mortgage Loan, net of any Servicing Fee, Recovery Fee and any reimbursement for advances and expenses of the
Servicer.

Recovery Fee: A customary fee calculated based on additional recovery amounts charged for the
collection of such additional recovery amounts on any Mortgage Loan after the date that such Mortgage Loan
became a Liquidated Mortgage Loan.

Regular Interest: Any of the REMIC I Regular Interests or REMIC II Regular Interests.

Related Class: A Class of REMIC II Regular Interests and a class of Notes are related if, and only
if, they bear the same Letter/number combination designating their Class, e.g. REMIC II Regular Interest A-2
is related to the Class A-2 Notes.

Regulation   AB:   Subpart   229.1100  -  Asset   Backed   Securities
(Regulation   AB),   17  C.F.R.
ss.ss.229.1100-229.1123,   as  such  may  be  amended  from  time  to  time,  and  subject
to  such  clarification  and
interpretation  as  have  been   provided  by  the  Commission   in the adopting  release
(Asset-Backed  Securities,
Securities  Act  Release  No.  33-8518,  70  Fed.  Reg.  1,506,  1,531  (January 7, 2005))
or  by  the  staff  of  the
Commission,  or  as  may  be  provided  by  the  Commission  or  its  staff  from  time  to  time.

Related  Documents:  With  respect  to  each  Mortgage  Loan,  the  documents  contained
in  the  Mortgage  File.

Relief  Act   Shortfalls:  With  respect  to  any  Payment  Date,   for  any  Mortgage  Loan
as  to  which  there  has
been  a  reduction  in  the  amount  of  interest   collectible   thereon  for  the  related
Collection  Period  as  a  result
of  the  application  of  the   Servicemembers   Civil  Relief  Act,  formerly  known  as  the
Soldiers'  and  Sailors'  Civil
Relief  Act  of  1940,  as  amended,  or  any  similar  state  legislation  or  regulations,   the
shortfall,   if  any,  equal
to  (i)  one  month's   interest  on  the  Principal   Balance  of  such  Mortgage  Loan  at  the
applicable   Loan  Rate,  over
(ii)  the  interest  collectible  on  such  Mortgage  Loan  during  such  Collection  Period.

REMIC:  A  "real  estate  mortgage  investment  conduit"  within  the  meaning  of  Section
860D  of  the  Code.

REMIC   Administrator:   JPMorgan  Chase  Bank,  N.A.;  provided  that  if  the  REMIC
Administrator  is  found  by
a  court  of   competent   jurisdiction  to  no  longer  be  able  to  fulfill   its   obligations
as  REMIC   Administrator
under  this   Agreement  the  Servicer  or  Indenture   Trustee   acting  as  Servicer   shall
appoint  a  successor   REMIC
Administrator,  subject  to  assumption  of  the  REMIC  Administrator  obligations  under  this
Agreement.

REMIC  I:   The   segregated   pool  of  assets  in  the  Trust  Estate  with  respect  to
which  a  REMIC  election  is
to  be  made.

REMIC  I  Certificates:   The  Class  R-I  Certificates  and  the  REMIC  I  Regular
Interests.

REMIC  I  Liquidation  Loss  Amounts:  For  any  Payment  Date,   Liquidation  Loss  Amounts
on  the  Mortgage  Loans
for  the  related   Collection   Period   shall  be  allocated  as  follows:  (i)  the   interest
portion  of   Liquidation
Loss  Amounts,   if  any,  shall  be  allocated  pro  rata  to  accrued  interest  on  the  REMIC  I
Regular   Interests  to  the
extent  of  such  accrued  interest,   and  (ii)  any  remaining   interest  portions  of
Liquidation  Loss  Amounts  and  any
principal   portions  of   Liquidation   Loss  Amounts  shall  be  treated  as  principal   portions
of  Liquidation  Loss
Amounts  and  allocated  (a)  to  REMIC  I  Regular   Interest  LT2,  REMIC  I   Regular   Interest
LT3  and  REMIC  I  Regular

Interest LT4, pro rata according to their respective REMIC I Principal  Reduction
Amounts,  provided that such
allocation to each of REMIC I Regular  Interest LT2,  REMIC I Regular Interest LT3 and
REMIC I Regular Interest
LT4 shall not exceed their  respective REMIC I Principal  Reduction  Amounts for such
Payment Date, and (b) any
Liquidation  Loss Amounts not allocated to any of REMIC I Regular  Interest LT2,  REMIC I
Regular  Interest LT3
or REMIC I  Regular  Interest  LT4  pursuant to the proviso of clause (a) above shall be
allocated  to REMIC I
Regular Interest LT1.

        REMIC I  Principal  Reduction  Amounts:  For any Payment Date, the amounts by
which the  Uncertificated
Principal  Balances of the REMIC I Regular  Interests will be reduced on such Payment
Date by the allocation of
REMIC I Liquidation Loss Amounts and the distribution of principal, determined as
follows:

        For purposes of the succeeding formulas the following symbols shall have the
meanings set forth below:

        Y1 =   the Uncertificated  Principal Balance of REMIC I Regular Interest LT1
after distributions on the
prior Payment Date.

        Y2 =   the Uncertificated  Principal Balance of REMIC I Regular Interest LT2
after distributions on the
prior Payment Date.

        Y3 =   the Uncertificated  Principal Balance of REMIC I Regular Interest LT3
after distributions on the
prior Payment Date.

        Y4 =   the Uncertificated  Principal Balance of REMIC I Regular Interest LT4
after distributions on the
prior Payment Date (note:  Y3 = Y4).

        AY1 =  the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT1.

        AY2 =  the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT2.

        AY3 =  the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT3.

        AY4 =  the REMIC I Principal Reduction Amount for REMIC I Regular Interest LT4.

        P0 =   the aggregate  Uncertificated  Principal  Balance  of  the  REMIC I
Regular  Interests  after
distributions and the allocation of REMIC I Liquidation Loss Amounts on the prior Payment
Date.

        P1 =   the aggregate  Uncertificated  Principal  Balance  of  the  REMIC I
Regular  Interests  after
distributions and the allocation of REMIC I Liquidation Loss Amounts to be made on such
Payment Date.

        AP =  P0 - P1 = the aggregate of the REMIC I Principal Reduction Amounts.

=the  aggregate  of the principal  portions of REMIC I Liquidation  Loss Amounts
to be allocated to, and
the  principal  distributions  to be made on, the Notes and the  Certificates  on such
Payment Date  (including
distributions of accrued and unpaid interest on the Class SB Certificates for prior
Payment Dates).

R0 =   the Net WAC Rate  (stated as a monthly  rate) after  giving  effect to
amounts  distributed  and
Liquidation Loss Amounts allocated on the prior Payment Date.

R1 =   the Net WAC Rate  (stated as a monthly  rate) after giving  effect to
amounts to be  distributed
and Liquidation Loss Amounts to be allocated on such Payment Date.

a =   (Y2 + Y3)/P0.  The initial  value of a on the  Closing  Date for use on
the first  Payment  Date
shall be 0.0001.

a0 =  the lesser of (A) the sum for all  Classes of Notes,  of the  product  for
each Class of (i) the
monthly  interest  rate  (as  limited  by the Net WAC Rate,  if  applicable)  for  such
Class applicable  for
distributions  to be made on such  Payment  Date and (ii)  the  aggregate  Note  Balance
for such  Class after
distributions and the allocation of Liquidation Loss Amounts on the prior Payment Date
and (B) R0*P0.

a1 = the  lesser  of (A) the sum for all  Classes  Notes,  of the  product  for
each  Class of (i) the
monthly  interest  rate  (as  limited  by the Net WAC Rate,  if  applicable)  for  such
Class applicable  for
distributions  to be made on the next  succeeding  Payment  Date and (ii)  the  aggregate
Note Balance for such
Class after  distributions  and the allocation of Liquidation  Loss Amounts to be made on
such Payment Date and
(B) R1*P1.

Then, based on the foregoing definitions:

$AY1 = AP - AY2 - AY3 - AY4;$

$AY2 = (a/2)\{(a0R1 - a1R0)/R0R1\};$

$AY3 = aAP - AY2;$ and

$AY4 = AY3.$

if both AY2 and AY3, as so determined, are non-negative numbers.  Otherwise:

(1)If AY2, as so determined, is negative, then

$AY2 = 0;$

$AY3 = a\{a1R0P0 - a0R1P1\}/\{a1R0\};$

AY4 = AY3; and

AY1 = AP - AY2 - AY3 - AY4.

(2) If AY3, as so determined, is negative, then

AY3 = 0;

AY2 = a{a0R1P1 - a1R0P0}/{2R1R0P1 - a1R0};

AY4 = AY3; and

AY1 = AP - AY2 - AY3 - AY4.

REMIC I Regular Interests: Each of the following separate non-certificated beneficial ownership
interests in REMIC I having the properties set forth in the following table and elsewhere herein:

| DESIGNATION FOR EACH REMIC I REGULAR INTEREST | REMIC I REMITTANCE RATE | INITIAL UNCERTIFICATED PRINCIPAL BALANCE | LATEST POSSIBLE MATURITY |
|---|---|---|---|
| LT1 | Variable(1) | $639,898,082.01 | May 25, 2036 |
| LT2 | Variable(1) | $26,082.42 | May 25, 2036 |
| LT3 | Variable(1) | $37,917.58 | May 25, 2036 |
| LT4 | Variable(1) | $37,917.58 | May 25, 2036 |

(1)     Calculated in accordance with the definition of "REMIC I Remittance Rate" herein.

REMIC I Remittance Rate: With respect to any Payment Date and (i) REMIC I Regular Interests LT1 and
LT2, a per annum rate equal to the weighted average of the Net Loan Rates of the Loans applicable for the
Interest Period for such Payment Date, (ii) REMIC I Regular Interest LT3, zero (0.00%), and (iii) REMIC I
Regular Interest LT4, a per annum rate equal to twice the weighted average of the Net Loan Rates of the
Loans applicable for the Interest Period for such Payment Date.

REMIC II: The segregated pool of assets subject hereto, constituting a portion of the primary trust
created hereby and to be administered hereunder, with respect to which a separate REMIC election is to be
made, consisting of the REMIC I Regular Interests.

REMIC II Liquidation Loss Amounts: On any Payment Date, Liquidation Loss Amounts for the related
Collection Period shall be allocated first to REMIC II Regular Interest SB-IO in reduction of the accrued and
unpaid interest thereon until such accrued and unpaid interest shall have been reduced to zero, second to
REMIC II Regular Interest SB-PO in reduction of the Uncertificated Principal Balance thereof until such
Uncertificated Principal Balance shall have been reduced to zero and third to the Notes to the same extent,
if any, that (i) amounts interest accrued on such Notes since the prior Payment Date remain unpaid after
distributions on such Payment Date and (ii) the aggregate of the Class Principal Balances of the Notes
following distributions on such Payment Date exceed the aggregate principal balance of the Loans by more
than such excess, if any, after distributions on the immediately prior Payment Date.

REMIC II Regular Interest SB-IO: A regular interest in REMIC II with no entitlement to principal and
entitled to (i) interest at the Certificate Rate on its Notional Amount and (ii) payments of prepayment
charges.

REMIC II Regular Interest SB-PO: A regular interest in REMIC II with no entitlement to interest and
entitled to principal in an amount equal to the Initial Certificate Balance and any amounts in the nature of
prepayment charges received in connection with Loans, provided that any payment of prepayment charges shall
not be deemed to reduce the Uncertificated Principal Balance of REMIC II Regular Interest SB-PO.

REMIC II Regular Interests: Each Class of the Notes and REMIC II Regular Interests SB-IO and SB-PO.

REMIC II Remittance Rate: With respect to each Class of Notes, the Note Rate for such Class. With
respect to REMIC II Regular Interest SB-PO, 0% per annum. With respect to REMIC II Regular Interest SB-IO
the Certificate Rate therefor.

REMIC Provisions: Provisions of the federal income tax law relating to real estate mortgage
investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and
related provisions, and temporary and final regulations (or, to the extent not inconsistent with such
temporary or final regulations, proposed regulations) and published rulings, notices and announcements
promulgated thereunder, as the foregoing may be in effect from time to time.

Remittance Rate: The REMIC I Remittance Rate or REMIC II Remittance Rate, as applicable.

Repurchase Event: With respect to any Mortgage Loan, either (i) a discovery that, as of the Closing Date with respect to an Initial Mortgage Loan or the related Subsequent Transfer Date with respect to any Subsequent Mortgage Loan, the related Mortgage was not a valid lien on the related Mortgaged Property subject only to (A) the lien of any prior mortgage indicated on the Mortgage Loan Schedule, (B) the lien of real property taxes and assessments not yet due and payable, (C) covenants, conditions, and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage and such other permissible title exceptions as are customarily accepted for similar loans and (D) other matters to which like properties are commonly subject that do not materially adversely affect the value, use, enjoyment or marketability of the related Mortgaged Property or (ii) with respect to any Mortgage Loan as to which either Seller delivers an affidavit certifying that the original Mortgage Note has been lost or destroyed, a subsequent default on such Mortgage Loan if the enforcement thereof or of the related Mortgage is materially and adversely affected by the absence of such original Mortgage Note.

Repurchase Price: With respect to any Mortgage Loan required to be repurchased on any date pursuant to the Purchase Agreement or purchased by the Servicer pursuant to the Servicing Agreement, an amount equal to the sum of (i) 100% of the Principal Balance thereof (without reduction for any amounts charged off), (ii) unpaid accrued interest at the Loan Rate (or with respect to the last day of the month in the month of repurchase, the Loan Rate will be the Loan Rate in effect as of the second to last day in such month) on the outstanding Principal Balance thereof from the Due Date to which interest was last paid by the related Mortgagor to the first day of the month following the month of purchase and (iii) in connection with any Mortgage Loan required to be repurchased pursuant to Sections 2.1 or 3.1 of the Purchase Agreement, any costs and damages incurred by the Trust Fund with respect to such Mortgage Loan in connection with a breach of Section 3.1(b)(x) of the Purchase Agreement.

Required Insurance Policy: With respect to any Mortgage Loan, any insurance policy which is required to be maintained from time to time under the Servicing Agreement or the related Subservicing Agreement in respect of such Mortgage Loan.

Responsible Officer: With respect to the Indenture Trustee, any officer of the Indenture Trustee with direct responsibility for the administration of the Indenture and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with the particular subject.

Rolling Six-Month Annualized Liquidation Loss Amounts: With respect to any Determination Date
occurring after the fifth Determination Date, the product (expressed as a percentage) of (i) the aggregate
Liquidation Loss Amounts as of the end of each of the six Collection Periods (reduced by the aggregate
Subsequent Net Recovery Amounts for such Collection Periods) immediately preceding such Determination Date
divided by the Initial Pool Balance and (ii) two (2).

Rolling Three Month Delinquency Percentage: With respect to any Payment Date and the Mortgage Loans,
the arithmetic average of the Delinquency Percentages determined for such Payment Date and for each of the
two preceding Payment Dates.

SB-IO Marker Rate: Two times the weighted average of the REMIC I Remittance Rates for REMIC I Regular
Interests LT2 and LT3, weighted by their respective Uncertificated Principal Balances.

Secretary of State: The Secretary of State of the State of Delaware.

Securities Act: The Securities Act of 1933, as amended, and the rules and regulations promulgated
thereunder.

Securitization Transaction: Any transaction involving a sale or other transfer of mortgage loans
directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately
placed, rated or unrated mortgage-backed securities.

Securities Balance: The Note Balance or Certificate Balance, as the context may require.

Security: Any Certificate or a Note, as the context may require.

Securityholder: Any Noteholder or Certificateholder.

Seller or Sellers: GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and
assigns, and Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust, and its successors and
assigns.

Servicer: GMAC Mortgage Corporation, a Pennsylvania corporation, and its successors and assigns.

Servicer Advances: Any advances the Servicer may make with respect to the Mortgage Loans, whether or
not required, in respect of principal, interest, taxes, insurance or otherwise.

Servicing Agreement: The servicing agreement dated as of the Closing Date among the Servicer, the
Issuer and the Indenture Trustee.

Servicing Certificate: A certificate completed and executed by a Servicing Officer on behalf of the
Servicer in accordance with Section 4.01 of the Servicing Agreement.

Servicing Criteria: The "servicing criteria" set forth in Item 1122(d) of Regulation AB, as such may
be amended from time to time.

Servicing Default: Any one of the following events:

(i)    any failure by the Servicer to deposit in the Custodial Account, , the Note Payment Account or the
Distribution Account any deposit required to be made under the terms of the Servicing Agreement that
continues unremedied for a period of five Business Days after the date upon which written notice of such
failure shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the Servicer, the
Issuer and the Indenture Trustee by the Enhancer;

(ii)    any failure on the part of the Servicer duly to observe or perform in any material respect any other
covenants or agreements of the Servicer set forth in the Securities or in the Servicing Agreement, which
failure, in each case, materially and adversely affects the interests of the Securityholders or the Enhancer,
and which failure continues unremedied for a period of 45 days after the date on which written notice of such
failure, requiring the same to be remedied, and stating that such notice is a "Notice of Default" under the
Servicing Agreement, shall have been given to the Servicer by the Issuer or the Indenture Trustee, or to the
Servicer, the Issuer and the Indenture Trustee by the Enhancer;

(iii)    the entry against the Servicer of a decree or order by a court or agency or supervisory authority
having jurisdiction under Title 11 of the United States Code or any other applicable federal or state
bankruptcy, insolvency or other similar law, or if a receiver, assignee or trustee in bankruptcy or
reorganization, liquidator, sequestrator or similar official shall have been appointed for or taken
possession of the Servicer or its property, and the continuance of any such decree or order unstayed and in
effect for a period of 60 consecutive days;

(iv)    the Servicer shall voluntarily submit to Proceedings under Title 11 of the United States Code or any
other applicable federal or state bankruptcy, insolvency or other similar law relating to the Servicer or of
or relating to all or substantially all of its property; or the Servicer shall admit in writing its inability
to pay its debts generally as they become due, file a petition to take advantage of any applicable insolvency
or reorganization statute, make an assignment for the benefit of its creditors or voluntarily suspend payment
of its obligations;

(v)    the Servicer's Tangible Net Worth at any time is less than $100,000,000 and GMAC fails to own,
directly or indirectly, at least 51% of the common stock of the Servicer; or

(vi)    the Rolling Six-Month Annualized Liquidation Loss Amount with respect to the Mortgage Loans exceeds
1.50%.

Servicing Fee: With respect to any Mortgage Loan and any Collection Period, the product of (i) the
Servicing Fee Rate divided by 12 and (ii) the related Principal Balance as of the first day of such
Collection Period.

Servicing Fee Rate: 0.50% per annum.

Servicing Officer: Any officer of the Servicer involved in, or responsible for, the administration
and servicing of the Mortgage Loans whose name and specimen signature appear on a list of servicing officers
furnished to the Indenture Trustee (with a copy to the Enhancer) by the Servicer, as such list may be amended
from time to time.

Servicing Termination Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a)    the Rolling Three Month Delinquency Percentage is greater than 4.00% for the then-current
Payment Date; or

(b)    on or after the Payment Date in October 2008, the aggregate amount of Liquidation Loss Amounts
(reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the
Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth
below:

December 2008 to June 2009:         2.00% with respect to December 2008, plus an additional 1/6th of 0.50% for each
month
                                    thereafter.

July 2009 to June 2010:             2.50% with respect to June 2009, plus an additional 1/12th of 0.60% for each month
                                    thereafter.

July 2010 to June 2011:             3.10% with respect to June 2010, plus an additional 1/12th of 1.00% for each month
                                    thereafter.

July 2011 and thereafter:           4.10%.

Servicing Trigger Event: As of any Payment Date, the occurrence of any of the following scenarios:

(a)    the Rolling Three Month Delinquency Percentage is greater than 4.00% for the then-current
Payment Date; or

(b)    on or after the Payment Date in December 2008, the aggregate amount of Liquidation Loss Amounts
(reduced by the aggregate Subsequent Net Recovery Amounts, if any, with respect to such Payment Date) on the
Mortgage Loans as a percentage of the Cut-Off Date Principal Balance exceeds the applicable amount set forth
below:

December 2008 to June 2009:          1.50% with respect to December 2008, plus
                                     an additional 1/6th of 0.50% for each
month
                                     thereafter;

April 2009 to June 2010:             2.00% with respect to June 2009, plus an
                                     additional 1/12th of 0.60% for each month
                                     thereafter;

April 2010 to June 2011:             2.60% with respect to June 2010, plus an
                                     additional 1/12th of 1.00% for each month
                                     thereafter; and

June 2011 and thereafter:            3.60%.

Standard & Poor's:  Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.
or its successor in interest.

Stated Value:  With respect to any Mortgage Loan, the stated value of the related Mortgaged Property
determined in accordance with the Program Guide and given by the related Mortgagor in his or her application.

Statutory Trust Statute:  Chapter 38 of Title 12 of the Delaware Code, 12 Del. Codess.ss.3801 et seq., as
the same may be amended from time to time.

Stepdown Date:  The later of (i) the Payment Date in January 2009 and (ii) the Payment Date on which
the Pool Balance (after applying payments received in the related Collection Period) as of such Payment Date
is less than 50% of the Initial Pool Balance.

Subsequent Cut-Off Date:  With respect to any Subsequent Mortgage Loan, the date specified in the
related Subsequent Transfer Agreement.

Subsequent Cut-Off Date Principal Balance:  With respect to any Subsequent Mortgage Loan, the
Principal Balance thereof as of the close of business on the last day of the Collection Period immediately
prior to the related Subsequent Cut-Off Date.

Subsequent  Mortgage  Loan: An mortgage loan sold by a Seller to the Issuer
pursuant to Section 2.2 of
the Purchase  Agreement,  such  Mortgage  Loan being  identified  on the Mortgage Loan
Schedule  attached to the
related  Subsequent Transfer  Agreement, as set forth in such Subsequent Transfer
Agreement.

Subsequent  Net Recovery  Amounts:  Recovery  Amounts  collected on a Mortgage
Loan after the Mortgage
Loan becomes a Liquidated Mortgage Loan, net of any Recovery Fee.

Subsequent  Transfer  Agreement:  Each Subsequent  Transfer Agreement dated as of
a Subsequent Transfer
Date executed by the respective  Seller and the Issuer  substantially  in the form of
Exhibit 2 to the Purchase
Agreement, by which the related  Subsequent Mortgage Loans are sold to the Issuer.

Subsequent  Transfer Date: With respect to each Subsequent  Transfer  Agreement,
the date on which the
related Subsequent Mortgage Loans are sold to the Issuer.

Subservicer:  Each Person that enters into a Subservicing Agreement as a
subservicer of Mortgage Loans.

Subservicing  Agreement:  The written  contract  between the Servicer and any
Subservicer  relating to
servicing  and  administration  of certain  Mortgage  Loans as provided  in  Section
3.01(b)  of the  Servicing
Agreement.

Substitution  Adjustment  Amount:  With respect to any Eligible  Substitute  Loan
and any Deleted Loan,
the amount,  if any, as  determined  by the  Servicer,  by which the  aggregate
principal  balance of all such
Eligible  Substitute Loans as of the date of substitution is less than the aggregate
Principal  Balance of all
such Deleted  Loans (after  application  of the principal  portion of the Monthly
Payments due in the month of
substitution that are to be distributed to the Securityholders in the month of
substitution).

Tangible Net Worth: Net Worth,  less the sum of the  following  (without
duplication):  (a) any other
assets of GMACM and its consolidated  subsidiaries  that would be treated as intangibles
under GAAP including,
without  limitation,  any write-up of assets  (other than  adjustments  to market value
to the extent  required
under GAAP with respect to excess  servicing,  residual  interests in offerings of asset-
backed  securities and
asset-backed  securities  that are  interest-only  securities),  good-will,  research
and  development  costs,
trade-marks,  trade names,  copyrights,  patents and  unamortized debt  discount and
expenses and (b) loans or
other  extensions of credit to officers of GMACM or its  consolidated  subsidiaries
other than mortgage  loans
made to such Persons in the ordinary course of business.

Tax Matters  Partner:  GMACM, as the Servicer,  for so long as the Servicer holds all or any portion of
the Class R Certificates;  if any other Person holds 100% of the  Certificates,  such Person;  and otherwise as
provided in the Code.

Tax Returns:  The federal  income tax return on Internal  Revenue  Service Form 1066, U.S. Real Estate
Mortgage  Investment  Conduit Income Tax Return,  including  Schedule Q thereto, Quarterly  Notice to Residual
Interest  Holders of REMIC  Taxable  Income or Net Loss  Allocation,  or any  successor forms,  to be filed on
behalf of each REMIC due to their  classification as a REMIC under the REMIC Provisions, together with any and
all other  information,  reports or returns that may be required to be furnished to the Certificateholders  or
filed with the  Internal  Revenue  Service or any other  governmental  taxing  authority under any  applicable
provisions of federal, state or local tax laws.

Transfer: Any direct or indirect transfer,  sale, pledge,  hypothecation or other form of assignment of
any Ownership Interest in a Certificate.

Transfer  Date:  The Payment Date on which the Servicer,  upon receipt of written notice and direction
from the Issuer,  shall cause the  retransfer of Mortgage  Loans from the Trust Estate to the Issuer,  pursuant
to Section 3.15(c) of the Servicing Agreement.

Transfer  Notice Date:  The fifth  Business Day prior to the Transfer Date for which the Servicer shall
give the  Indenture  Trustee,  the Rating  Agencies  and the Enhancer a notice of the proposed  retransfer of
Mortgage Loans, pursuant to Section 3.15(c) of the Servicing Agreement.

Transferee:  Any Person who is acquiring by Transfer any Ownership Interest in a Certificate.

Transferor:  Any Person who is disposing by Transfer of any Ownership Interest in a Certificate.

Treasury Regulations:  Regulations, including proposed or temporary Regulations, promulgated under the
Code.  References  herein to specific  provisions of proposed or temporary  regulations shall include analogous
provisions of final Treasury Regulations or other successor Treasury Regulations.

Trust  Agreement:  The trust agreement dated as of the Closing Date,  between the Owner Trustee and the
Depositor.

Trust Estate:  The meaning specified in the Granting Clause of the Indenture.

Trust  Indenture  Act or TIA: The Trust  Indenture  Act of 1939,  as amended from time to time,  as in
effect on any relevant date.

14446915.1.LITIGATION

UCC:   The   Uniform   Commercial   Code,   as in effect   from time to time,   as in effect in any   specified
jurisdiction.

Unpaid Principal Amount:   As defined in Section 3.05(a) of the Indenture.

Uncertificated   Accrued   Interest:  With respect to any REMIC I Regular   Interest for any Payment Date,
one month's   interest   at the related   REMIC I   Remittance   Rate   for   such   Payment Date,   accrued   on the
Uncertificated   Principal Balance immediately prior to such Payment Date.   Uncertificated Accrued Interest for
the REMIC I and REMIC II Regular   Interests   shall accrue on the basis of a 360-day year consisting   of twelve
30-day   months.   For purposes of   calculating   the amount of   Uncertificated   Accrued Interest for the REMIC I
Regular   Interests for any Payment Date, any Prepayment   Interest   Shortfalls or Relief Act Shortfalls for such
Payment Date shall be allocated   among the REMIC I Regular   Interests   pro rata based on, and to the extent of,
the   Uncertificated   Accrued Interest   thereon,   as calculated   without the application of this sentence.   With
respect   to any   Payment   Date and REMIC II   Regular   Interest SB-IO,   one   month's   interest   at the related
Certificate   Rate on the Notional   Amount   thereof   reduced by its pro-rata   share of any Prepayment   Interest
Shortfalls or Relief Act   Shortfalls,   but not reduced by amounts   distributable pursuant to clauses (iv), (v)
or (vi) of Section 3.05(a)(I) of the Indenture.

Uncertificated   Principal   Balance:   With respect to any Payment Date and any REMIC I Regular Interest,
the initial   Uncertificated   Principal   Balance   thereof as reduced on each   successive Payment   Date first by
Liquidation   Loss Amounts   allocated to the principal   thereof by the   definition   of REMIC I Liquidation Loss
Amounts   and second by   principal   deemed   distributed   in respect   thereof on such Payment   Date   pursuant to
Section 5.01(e) of the Trust   Agreement.   With respect to any Payment Date and REMIC II Regular Interest SB-PO,
the   Initial   Certificate   Balance reduced by the allocation to the principal   thereof on prior Payment Dates of
Liquidation   Loss Amounts,   to the extent such   Liquidation   Loss Amounts are allocated to the principal of the
Class SB Certificates, and amounts deemed distributed with respect to such REMIC II Regular Interest.

Uncertificated   Regular   Interests:   The REMIC I Regular Interests,   REMIC II Regular Interest SB-IO and
REMIC II Regular Interest SB-PO.

WG Trust 2003:   Walnut Grove Mortgage Loan Trust 2003-A, a Delaware statutory trust.