# **EXHIBIT 4**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------- X
In the Matter of the Rehabilitation of

FINANCIAL GUARANTY INSURANCE
COMPANY.

---------------------------------------- X

Index No. 401265/2012

Doris Ling-Cohen, J.

Motion Sequence No. 4

**AFFIDAVIT OF MICHAEL W. MILLER IN FURTHER SUPPORT OF APPROVAL OF FIRST AMENDED PLAN OF REHABILITATION**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Michael W. Miller, being duly sworn, deposes and says:

    1.    I am a Director in the Financial Institutions Group of Lazard Frères & Co. LLC ("<u>Lazard</u>"), which maintains offices at 30 Rockefeller Plaza, New York, NY 10020. Lazard is an industry leader, among other areas, in providing financial advice to debtors, creditors, equity constituencies and government agencies in restructuring and reorganization cases and in providing financial advisory services to financial institutions, including insurance companies, worldwide.

    2.    I hold a Bachelor's degree from Brigham Young University. I am a Chartered Property and Casualty Underwriter (CPCU). I am registered as an Investment Banking Representative (Series 79) and as a General Securities Representative (Series 7).

    3.    I have been employed by Lazard since 2006. Prior to joining Lazard I worked in the insurance industry and also at a boutique investment bank that specialized in insurance advisory services. Since 2004, I have provided financial advisory services to a variety

6.  This affidavit is submitted in further support of the Omnibus Reply Memorandum of Law in Further Support of Approval of First Amended Plan of Rehabilitation for FGIC dated December 12, 2012 (the "**Plan**").[1] I am generally familiar with the terms and provisions of the Plan, the Disclosure Statement and the documents comprising the Plan Supplement. Except as otherwise indicated, all statements set forth in this declaration are based on my personal knowledge, my review of relevant documents, the Lazard team's work on this project, or my opinion based upon experience, knowledge and information concerning FGIC's operations. If called upon to testify, I can and will testify competently to the facts and opinions set forth herein.

7.  On September 22, 2011, Lazard was engaged as a financial advisor to assist in providing services for the New York Liquidation Bureau (the "**NYLB**") in connection with a potential rehabilitation of FGIC. Since then, under the supervision of Ari Lefkovits, a Managing Director in the Restructuring Group, I have been an active member of the team of Lazard professionals who assisted in performing the financial advisory services for which Lazard was retained.

8.  As part of this engagement, Lazard assisted Weil, Gotshal & Manges and the NYLB in analyzing the financial aspects of the FGIC plan and developing a plan that met the NYLB's objectives, including providing for reasonable conservatism.

9.  Specifically, among other tasks, Lazard reviewed and commented on the Run-Off Projections and the Run-Off Assumptions prepared by FGIC. In addition, Lazard

---

[1] Where I use terms not otherwise defined herein, I intend those terms to have the same meanings as in the Plan.

3

assisted the NYLB in preparation of the Liquidation Analysis which is discussed in more detail below. In order to consider a liquidation as an alternative to the Plan, a Liquidation Analysis was prepared by the Rehabilitator, assisted by Lazard and other advisors to the Rehabilitator. Comparing indicative recoveries under the Plan to those under the Liquidation Analysis, and taking into account the discount rate analysis below, the Plan provides superior and more immediate recoveries to the policyholders than a liquidation.

10. Lazard also reviewed and considered input from the independent research firm Municipal Market Advisors ("**MMA**"), which advised Weil and the NYLB on the expected losses under a Base and Stress Case scenario for FGIC's retained U.S. Public Finance book and the book reinsured by National Public Finance. Lazard also relied on tax analysis provided by FGIC's advisors and the NYLB's advisors.

11. The Run-Off Projections project FGIC's cash flows from January 1, 2012 through December 31, 2052 (the time at which the last of FGIC's insured risks matures on the basis of the Run-Off Assumptions) (the "**Run-Off Period**"). Among other things, the Run-Off Projections were an important component in estimating the amount of the initial CPP and the ultimate recoveries under the Plan. Exhibit C to the Disclosure Statement contains a summary of the Run-Off Projections, Run-Off Assumptions and calculation of initial CPP.

12. Lazard also reviewed run-off projections previously prepared by FGIC in consultation with its advisors, including Blackstone Advisory Partners L.P. ("**Blackstone**"), and stress case assumptions for FGIC's insured portfolio developed by NewOak Capital Advisors LLC ("**NewOak**"), an independent financial advisor retained by counsel to FGIC.

13. Lazard did not independently verify the projections, assumptions or analyses prepared by FGIC or its advisors, the NYLB or its advisors, Blackstone or MMA in

connection with its services, including in connection with the assistance in preparation of the Run-Off Projections and Run-Off Assumptions. Lazard assumed that projections, assumptions and analyses prepared or provided by MMA, FGIC, the NYLB and other parties, as applicable, were reasonably prepared in good faith and on a basis reflecting the best currently available estimates and judgments as to the future operating and financial performance of FGIC during the Run-Off Period.

14. Lazard also performed the following tasks:

- Reviewed certain recent historical financial information of FGIC;
- Reviewed certain internal, projected financial and operating data related to FGIC's business and its prospects, including FGIC's income statement, balance sheet and cash flows as of December 31, 2011;
- Met with and discussed FGIC's operations and future prospects with FGIC's management team and its advisors, including FGIC's advisors and other constituents;
- Considered certain economic and industry information relevant to FGIC's business;
- Reviewed the terms of the Plan, including the Restructured Policy Terms, the Disclosure Statement, the documents filed as part of the Plan Supplement and other filings made in the proceedings; and
- Performed such other analyses and investigations and considered such other information as Lazard deemed appropriate under the circumstances, including the development of two illustrative loss scenarios for the non-US Public Finance policies.