# **EXHIBIT 5**

Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re:                              ) Chapter 11
RESIDENTIAL CAPITAL,                 )
LLC, et al.,                         ) Case No. 12-12020 (MG)
    Debtors.                         )
                                     )

SEWARD & KISSEL LLP
ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK  10004
JULY 12, 2013
1:37 P.M.


ORAL RULE 30(B)(6) DEPOSITION
OF
CSQ ABS ALPHA MASTER FUND LIMITED
AND
CQS ABS MASTER FUND LIMITED
BY AND THROUGH ITS DESIGNEE
DAVID WILLIAMS


REPORTED BY:
DEBRA SAPIO LYONS, RDR, CRR, CCR, CPE
JOB NO. 63331

Page 2

July 12, 2013

Oral Rule 30(b)(6) Deposition Of CSQ ABS Alpha Master Fund Limited and CQS ABS Master Fund Limited By and Through Its Designee David Williams, held at the offices of Seward & Kissel, LLP, One Battery Park Plaza, New York, New York  10004, before Debra Sapio Lyons, a Registered Diplomat Reporter, a Certified Realtime Reporter, a Certified LiveNote Reporter, an Approved Reporter of the United States District Court for the Eastern District of Pennsylvania, a Certified Court Reporter of the State of New Jersey, a Notary Public of the States of New Jersey, New York and the Commonwealth of Pennsylvania.

```
                                                              Page 3
 1
 2      APPEARANCES:
 3
              SEWARD & KISSEL
 4            BY:   BRIAN P. MALONEY, ESQUIRE
                    MARK D. KOTWICK, ESQUIRE
 5                  RYAN S. SUSER, ESQUIRE
              One Battery Park Plaza
 6            New York, New York  10004
              Attorneys for U.S. Bank as Trustee
 7
 8
 9
10
11            SEWARD & KISSEL
              BY:   BENAY L. JOSSELSON, ESQUIRE
12            One Battery Park Plaza
              New York, New York  10004
13            Attorneys for Law Debenture as Separate
              Trustee
14
15
16            JONES DAY
              BY:   STEVEN C. BENNETT, ESQUIRE
17            222 East 41st Street
              New York, New York  10017
18            Attorneys for FGIC
19
20
              DECHERT
21            BY:   REBECCA S. KAHAN, ESQUIRE
              1095 Avenue of the Americas
22            New York, New York  10036
              Attorneys for The Bank of New York Mellon
23            Trust Company, N.A.
24
25            ///
```

```
                                                            Page 4
 1   APPEARANCES CONTINUED:
 2           ROPES & GRAY
             BY:  ANDREW G. DEVORE, ESQUIRE
 3           Prudential Tower - 800 Boylston Street
             Boston, Massachusetts  02199
 4           Attorneys for Steering Committee of RMBS
             Investors
 5
 6

 7           KRAMER LEVIN NAFTALIS & FRANKEL
             BY:  DANIEL M. EGGERMANN, ESQUIRE
 8           1177 Avenue of the Americas
             New York, New York  10036
 9           Attorneys for Official Committee of Unsecured
             Creditors
10
11
12           MORRISON & FOERSTER
             BY:  KAYVAN B. SADEGHI, ESQUIRE
13           1290 Avenue of the Americas
             New York, New York  10104
14           Attorneys for The Debtors
15
16
             ALSTON & BIRD
17           BY:  MICHAEL E. JOHNSON, ESQUIRE
             90 Park Avenue
18           New York, New York  10016
             Attorneys for Wells Fargo Bank as Trustee
19
20
21           WILLKIE FARR & GALLAGHER
             BY:  JOSEPH T. BAIO, ESQUIRE
22           787 Seventh Avenue
             New York, New York  10019
23           Attorneys for the CQS Entities, Stonehill and
             The Witness
24
25           ///
```

1   APPEARANCES CONTINUED:
2           THE LAW OFFICE OF THOMAS M. MULLANEY
            BY:  THOMAS M. MULLANEY, ESQUIRE
3           489 Fifth Avenue
            New York, New York  10017
4           Attorneys for the CQS Entities and The
            Witness
5
6
7           MCKOOL SMITH
            BY:  MICHAEL R. CARNEY, ESQUIRE
8           (Present telephonically)
            One Bryant Park
9           New York, New York 10036
            Attorneys for Freddie Mac
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 127

1                    D. Williams

2       Q.   Do you remember having any problem
with any of those numbers when you reviewed them?
            MR. BAIO:  Object to the form.
        A.   My -- my first question when I first
saw them was where -- where -- where is the rep
and warranty recovery.  And -- and in the report
it said it's not included and on the -- whenever
that initial call was back in October or November
of 2012 it was stated those numbers were not
included.
        Q.   Setting aside the rep and warranty
recoveries, when you reviewed the Lazard report and
the projections of -- of income that were in there,
did you have any issue with the Lazard projections?
            MR. BAIO:  Same objection.
        A.   When you're referring to income,
what -- what are you referring to?
        Q.   Revenues in the future.
            MR. BAIO:  Same objection.
        A.   I'll be hon -- I did not really
analyze the -- the -- the revenues in the future.
        Q.   What about projected losses, did you
take a look at those in the Lazard analysis?
        A.   In the aggregate, yes.

1                     D. Williams

2           Q.    And did you have any issue with --
3    with those?
4                MR. BAIO:   Same objection.
5           A.    They're -- they're projections, no.
6           Q.    No is your answer?
7           A.    No.
8           Q.    The base case and the stress case
9    scenarios each had some -- some assumptions about
10   future events; correct?
11          A.    Yes.
12          Q.    And you reviewed those when you
13   looked over the Lazard analysis?
14          A.    Yes.
15          Q.    In respect of the base case
16   scenario, did you have a problem with any of the
17   assumptions that Lazard had made?
18               MR. BAIO:   Object to the form of the
19          question.
20          A.    I -- I mean for the big -- the big
21    concepts that I was concentrating on, no.
22          Q.    And with respect to the stress case
23   scenario, when you reviewed the Lazard analysis did
24   you have any problem with the assumptions that were
25   made?

1           D. Williams

2           MR. BAIO:  Same objection.

3       A.  Yeah, again, no.

4       Q.  When did CQS first acquire
FGIC-wrapped bonds and what -- FGIC -- the FGIC
wrapped bonds that are GMAC or RFC.

7       A.  Probably 2008.

8       Q.  Did CQS acquire any of those bonds
after FGIC stopped paying claims?

10      A.  Yes.

11      Q.  And in connection with the -- the
purchase of those bonds, did CQS do any modeling?

13      A.  Yes.

14      Q.  And did that modeling take account
of projected rep and warranty recoveries?

16          MR. BAIO:  Object to the form.

17      A.  Time dependent, but, yes.

18      Q.  What do you mean by time dependent?

19      A.  Over time it became obvious that the
rep and warranties were -- were going to happen
and that the numbers were increasing.  So in 2008
the answer may be no, by 2010 the answer was yes,
by 2011 yes and more, but, you know, as -- as
time went on and the cases were -- were being won
and the groundwork was getting laid it became