<table>
<tr><td>

**DECHERT LLP**
Glenn E. Siegel
Mauricio A. España
Rebecca S. Kahan
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

</td><td>

**SEWARD & KISSEL LLP**
Mark D. Kotwick
Brian P. Maloney
Ryan Suser
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

</td></tr>
</table>

**ALSTON & BIRD LLP**
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** ) | |
| ) | **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC,** *et al.*, ) | |
| ) | **Chapter 11** |
| Debtors. ) | |
| ) | **Jointly Administered** |

**NOTICE OF FILING OF UNREDACTED DECLARATION OF
ALICE CHONG IN SUPPORT OF FGIC TRUSTEES'
RESPONSE TO MOTION *IN LIMINE* THREE (PFEIFFER TESTIMONY)**

   **PLEASE TAKE NOTICE** that The Bank of New York Mellon, The Bank of New

York Mellon Trust Company, N.A. (collectively, "BNY Mellon"), U.S. Bank National

Association ("U.S. Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo"), solely in their

respective capacities as trustee or indenture trustee for certain mortgage backed securities trusts (collectively, the "FGIC Trustees") hereby file the unredacted version of the *Declaration of Alice Chong in Support of FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony)* (the "**Declaration**"). The Declaration was previously filed in redacted form on August 13, 2013 (Docket No. 4633), pursuant to the Court's *Order Regarding Exchange of Confidential Information* (Docket No. 4249) (the "**Confidentiality Order**").

Dated: New York, New York
August 15, 2013

**DECHERT LLP**
By: /s/ Glenn E. Siegel
Glenn E. Siegel
Mauricio A. España
Rebecca S. Kahan
1095 Avenue of the Americas
New York, New York 10036-6797
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Counsel to The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., as Trustee of Certain Mortgage-Backed Securities Trusts*

**ALSTON & BIRD LLP**
By: /s/ John C. Weitnauer
John C. Weitnauer (*pro hac vice*)
Michael E. Johnson
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Wells Fargo Bank, N.A., as Trustee of Certain Mortgage Backed Securities Trusts*

**SEWARD & KISSEL LLP**
By: /s/ Mark D. Kotwick
Mark D. Kotwick
Ronald L. Cohen
Arlene R. Alves
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel to U.S. Bank National Association, as Trustee of Certain Mortgage-Backed Securities Trusts*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |

**DECLARATION OF ALICE CHONG IN SUPPORT OF FGIC TRUSTEES' RESPONSE TO MOTION IN LIMINE THREE (PFEIFFER TESTIMONY)**

I, Alice Chong, hereby declare under penalty of perjury:

1. I am a Senior Associate with the firm of Duff & Phelps, LLC ("**Duff & Phelps**"). I submit this declaration in support of the *FGIC Trustees' Response to Motion in Limine Three (Pfeiffer Testimony)*.

2. In connection with Duff & Phelps' preparation of the **Duff Presentation Materials**[1] and the **Expert Report,**[2] and under the direction of Allen M. Pfeiffer, a Managing Director at Duff & Phelps, I had primary responsibility for determining the present value of the expected recoveries under FGIC's **Rehabilitation Plan**[3] (the "**Range of Recoveries**") for 47 FGIC Insured Trusts.

3. The only document used by Duff & Phelps to calculate the Range of Recoveries is the **Settlement Proposal Workbook.**[4] The calculation of the Range of Recoveries takes the expected losses of the 47 FGIC Trusts (already realized as of December 31, 2012, and projected

---

[1] "Duff Presentation Materials" refers to a PowerPoint presentation summarizing Duff & Phelps' analysis of the expected range of recoveries under the Rehabilitation Plan versus the Settlement Agreement, which was shown to and discussed with the FGIC Trustees on May 13, 2012, and a final version of that presentation was dated May 15, 2013.

[2] "Expert Report" refers to *The Expert Report of Allen M. Pfeiffer*, dated July 19, 2013.

[3] The proposed Plan of Rehabilitation for FGIC, which was approved (as amended) by the Supreme Court of the State of New York, County of New York on June 11, 2013.

[4] The filename of the Settlement Proposal Workbook is "FGIC_Settlement Proposal_D&P Analysis_051513.xlsx."

to occur thereafter) and calculates the present value of the payments projected to be made on the claims made for such losses under the FGIC Rehabilitation Plan, at various discount rates.

4.      In order to calculate the Range of Recoveries, I referenced two Excel workbooks – the Wrapped Deals Update Workbook[5] and the Non-Settlement CF Workbook[6] (together, the "**Losses Workbooks**") – as the source for "high" and "low" estimates of realized losses and projected future losses of the 47 FGIC Insured Trusts (reflecting the application sensitivities relating to the "high" and "low" cases set forth in the Duff Presentation Materials and the Expert Report) (collectively, the "**Loss Information**"). Attached hereto as Exhibit A is a diagram showing the relationship of the Range of Recoveries information contained in the Expert Report to the Settlement Proposal Workbook and the Losses Workbooks.

5.      Both of the Losses Workbooks were created by Duff & Phelps using data generated in connection with a *different* project at Duff & Phelps: calculating the "rep and warranty" claims of both the Original Settling Trusts and the Additional Settling Trusts.[7] In connection with my assignment to assist Mr. Pfeiffer with the recommendations of Duff &

---

[5]     The exact filename of the Wrapped Deals Update Workbook is "FGIC Wrapped Deals_Update_2013_04_10 - Update.xlsx."

[6]     The exact filename of the Non-Settlement CF Workbook is "Non-Settlement_Monoline Anlysis_Monthly CF - PIVOT.xlsx."

[7]     I understand that early in the Debtors' Chapter 11 cases, the FGIC Trustees and Deutsche Bank National Trust Company and Deutsche Bank Trust Company Americas (the "**RMBS Trustees**"), retained Duff & Phelps as their financial advisors. Among other things, Duff & Phelps analyzed the "rep and warranty" claims of the over one thousand residential mortgage-backed securities ("**RMBS**") trusts for which the RMBS Trustees serve as trustee (the "**RMBS Trusts**")against the Debtors, both in connection with their evaluation of the RMBS Settlement Motion filed by the Debtors on June 11, 2012, for the trusts covered by that motion (the "**Original Settling Trusts**") and the other trusts that the RMBS Trustees act for that also have similar claims. The development of the rep and warranty claims for the RMBS Trusts was a comprehensive undertaking that involved the organization and normalization of tens of gigs of raw data into databases and the feeding of resulting inputs into a cash-flow modeling engine called Intex. The loss information contained in the Losses Workbooks relating to the 47 FGIC Trusts and used in the Settlement Proposal Workbook is but a small subset of the rep and warranty claim information produced by Duff & Phelps for the RMBS Trustees. From the time they were first engaged by the RMBS Trustees, Duff & Phelps has continually analyzed and refined the rep and warranty claims, first in connection with the RMBS Settlement Motion and now in connection with analyzing the claims, and the recoveries, of the RMBS Trusts under the Proposed Plan. John Schrader, a Managing Director, leads the Duff & Phelps team that has been working on, and continues to work on, the rep and warranty claims.

Phelps contained in the Duff Presentation Materials, I asked the Duff & Phelps team that was responsible for calculating such "rep and warranty claims" for workbooks containing the Loss Information for the 47 FGIC Insured Trusts, and the Losses Workbooks were provided to me. I used the Losses Workbooks in connection with the Duff Presentation Materials, and later I used the same Losses Workbooks in connection with my assistance to Mr. Pfeiffer in preparing the Expert Report.

6. Excel workbooks can contain information (for instance, a number) contained in another workbook. When one opens an Excel workbook that has a link to information contained in another workbook, Excel gives the choice of updating the linked information, or keeping the existing information. I did not update, at any point, the Loss Information contained in the Losses Workbooks in connection with the preparation of either the Duff Presentation Materials or Mr. Pfeiffer's Expert Report.

7. The Losses Workbooks simply take the Loss Information generated from Duff & Phelps' previous work for the RMBS Trustees on "rep and warranty" claims and, as noted above, reflect the application of sensitivities relating to the "high" and "low" cases set forth in the Duff Presentation Materials and the Expert Report. Since my only use of the Losses Workbooks was to refer to the Loss Information that they outputted, and since I never updated the Losses Workbooks or the Loss Information contained therein, neither of the Losses Workbooks reflect any "alternative analyses, testing methods or approaches" (in my common understanding of those words) to any of the analysis set forth in the Duff Presentation Materials or Expert Report.

8. I understand that there are two collective sources of information contained in the Losses Workbooks – the **Non-Settlement Pool Policy Workbook**[8] and the files on the **Hard Drive**.[9] I never referred to, reviewed, or considered the Non-Settlement Pool Policy Workbook or the files on the Hard Drive to do any of my work associated with the Expert Report or the Duff Presentation Materials. It is my understanding that the files contained on the Hard Drive allow anyone with a subscription to Intex (like Duff & Phelps) to calculate projected future losses of RMBS trusts. It is also my understanding that the Non-Settlement Pool Policy Workbook includes information "linked" to the Non-Settlement CF Workbook, one of the Losses Workbooks. As I stated above, I never "updated" the Losses Workbooks and only referred to them for the Loss Information utilized in calculating the Range of Recoveries. Moreover, to my knowledge neither the Non-Settlement Pool Policy Workbook nor any of the files on the Hard Drive contains any "alternative analyses, testing methods or approaches" (in my common understanding of those words) to the analysis set forth in the Duff Presentation Materials or Expert Report.

[*remainder of page intentionally left blank*]

---

[8] Non-Settlement Pool Policy Workbook refers to an Excel workbook entitled "Non-Settlement_Cashflow_WithPoolPolicy.xlsx", which I understand was provided to parties objecting to the FGIC 9019 Motion on August 7, 2013.

[9] Hard Drive refers to a computer hard drive containing over 100 gigabytes of databases, text files, Vision source files and workbooks, which I understand was provided to parties objecting to the FGIC 9019 Motion on August 8, 2013.

I declare under penalty of perjury that the foregoing is true and correct.

This 13th day of August 2013.

_____
Alice Chong