# Exhibit A

Page 1

1                    L. Kruger
2         UNITED STATES BANKRUPTCY COURT
3          SOUTHERN DISTRICT OF NEW YORK
4
5    ------------------------------x
6    In Re:                              Case No.
                                         12-12020(MG)
7    RESIDENTIAL CAPITAL, LLC,
     et al.,                             (Jointly Administered)
8                                        (Bankr. S.D.N.Y.)
                  Debtors
9
     ------------------------------x
10
11
12
13
14
15           DEPOSITION OF LEWIS KRUGER
16                New York, New York
17              Thursday, July 11, 2013
18
19
20                                          ▓ AHG Designations
21                                          ▓ Debtor Designations
22                                          ▓ AHG Counter Designations
23   Reported by:                           __ Unresolved Objections
24   THOMAS A. FERNICOLA, RPR
25   JOB NO. 63547

Page 2

1         L. Kruger

2

3

4

5

6         July 11, 2013

7         10:06 a.m.

8

9

10        Deposition of LEWIS KRUGER, held at the

11   Law Offices of White & Case, LLP, 1155 Avenue of

12   the Americas, New York, New York, before

13   Thomas A. Fernicola, a Registered Professional

14   Reporter and Notary Public of the State of New

15   York.

16

17

18

19

20

21

22

23

24

25

1           L. Kruger

2       A.      I saw the document May 20th, 22nd,
3   23rd, some date like that.
4       Q.      How did you come to first see the
5   FGIC Settlement Agreement on or about May 23,
6   2013?
7       A.      I don't recall.
8       Q.      You don't remember who showed it to
9   you?
10      A.      No.
11      Q.      You don't remember if your counsel
12  provided it to you?
13      A.      I just don't recall.
14      Q.      Were you aware of the existence of a
15  settlement agreement involving the FGIC wrapped
16  trusts before May 23, 2013?
17      A.      I'm sorry, can you repeat the
18  question?  You're talking about a settlement
19  agreement or a settlement?
20      Q.      It's a fair point.
21              Prior to May 23, 2013, were you aware
22  that there were discussions underway between
23  and among FGIC, the trustees and others, with
24  respect to potential commutation of the FGIC
25  wrapped policies?

1                   L. Kruger
2              MR. KERR:  Objection.
3    BY MS. EATON:
4         Q.    You can answer.
5         A.    Yes.
6         Q.    And how did you become aware that
7    there were negotiations on that subject?
8         A.    In, I guess in early April as part of
9    the mediation, I became aware that there was a
10   prospective settlement between FGIC and the
11   trusts.
12        Q.    Did you say a "prospective
13   settlement"?
14        A.    Yes.
15        Q.    How did you come to learn that there
16   was a prospective settlement of that sort?
17        A.    Through the mediation process.
18        Q.    What do you mean by that?
19             MR. KERR:  Mary, we're going to
20   have -- let me just help the witness here.
21             MS. EATON:  Well --
22             MR. KERR:  No.
23             MS. EATON:  -- they're his words.
24   Those are the words he used.  I'm just
25   asking him what he meant by that, and I

```
 1                L. Kruger
 2      prefer that you not make speaking
 3      objections or assist the witness in
 4      answering a question regarding his own
 5      language.
 6          MR. KERR:  I'm not trying to assist
 7      the witness.  All I wanted to state is, as
 8      you were aware, there is an order entered
 9      by the court providing for confidentiality
10      with respect to the mediation.
11          In answering any questions,
12      Mr. Kruger, is respecting that
13      confidentiality.  So he is free to answer
14      questions as he can, consistent with that
15      confidentiality order.
16          I just want to be very clear that
17      what he is going to be acting and
18      testifying consistently.  Okay.
19          MS. EATON:  I understand your
20      position.  You understand we disagree with
21      that position.  Both of us are reserving
22      our rights.
23  BY MS. EATON:
24      Q.   Can you please answer the question,
25  Mr. Kruger, what did you mean when you used the
```

1                       L. Kruger
2      words, quote, "through the mediation process,"
3      close quote?
4           A.    I saw a -- I saw a proposal for a
5      settlement.
6           Q.    A physical proposal, as in a
7      document?
8           A.    I believe so.
9           Q.    Was it a term sheet?
10          A.    I think it may have been.
11          Q.    It wasn't a fully fleshed out
12     agreement in any sense of that term; is that
13     fair?
14          A.    Yes.
15          Q.    Who showed you the proposal?
16          A.    I don't recall.
17          Q.    Was it during a mediation session,
18     per se, with the mediator that you saw that
19     document?
20          MR. KERR:    Objection.
21     BY MS. EATON:
22          Q.    Let me fix it.
23                Was it in a session at which the
24     mediator was present that you first saw that
25     document?

```
1                          L. Kruger
2          A.      I just don't recall.
3          Q.      It could have been in the presence of
4    Judge Peck or outside the presence of Judge
5    Peck?
6                  MR. KERR:   Objection.
7          A.      No.
8          Q.      You don't remember one way or the
9    other?
10         A.      No.
11         Q.      Who else was there?
12         A.      I think counsel from MoFo.
13         Q.      Anyone else?
14         A.      Not that I recall.
15         Q.      Was it counsel from MoFo who showed
16   you the document?
17         A.      I don't recall.
18         Q.      Do you have any understanding of how
19   that document came to be, that is, how it came
20   to be prepared?
21         A.      No, I don't.
22         Q.      Do you know who was involved in
23   preparing the document?
24         A.      No, I don't.
25         Q.      Do you know anything at all about the
```

```
 1                    L. Kruger
 2     discussions that led to the preparation of that
 3     document?
 4          A.    No.
 5          Q.    That's a "yes" or "no" question.
 6                MR. KERR:  That's fair.
 7     BY MS. EATON:
 8          Q.    Let me, just so the court reporter
 9     gets it down straight, do you know anything at
10     all about the facts and circumstances that led
11     to the preparation of that document?
12          A.    No, I do not.
13          Q.    Would it be fair to say that you
14     personally had no idea that there were
15     discussions underway about an -- possible
16     settlement involving the FGIC wrapped trusts?
17                MR. KERR:  Objection.
18          A.    I don't recall knowing anything about
19     that before I saw the April presentation.
20          Q.    Prior to the date when you saw that
21     that document, the term sheet, had you
22     participated in mediation sessions with
23     Magistrate Judge Peck?
24          A.    Yes.
25          Q.    And during any of those sessions, was
```

1                    L. Kruger

2       the subject of a potential settlement involving
3       the FGIC wrapped trusts ever discussed?  I'm
4       not asking you to describe it, just "yes" or
5       "no," was it ever discussed?
6               MR. KERR:  And I will let him answer
7       that question, but no further, if you
8       recall.
9       A.      Yes.
10      Q.      When?
11      A.      During mediation sessions.
12      Q.      Can you give the date?
13      A.      No.
14      Q.      Even an approximate date?
15      A.      March.
16      Q.      Some time in March?  Early March,
17      late March, any idea?
18      A.      No recollection.
19      Q.      Who was at the mediation session when
20      that subject was raised?
21      A.      I have no idea.
22      Q.      Was it the -- was it an all-hands
23      session?  Do you know what I mean by that?
24              MR. KERR:  Objection.
25

```
 1                    L. Kruger
 2    BY MS. EATON:
 3        Q.    Okay.
 4              Let me rephrase the question.
 5              There were -- isn't it correct that
 6    there were sessions with the mediator that
 7    sometimes involved all of the mediating parties
 8    and sometimes involved a subset of the
 9    mediating parties?
10        A.    Yes.
11        Q.    At this particular session that you
12    described, was this an occasion where all of
13    the mediating parties were present or rather an
14    occasion where a subset of the mediation
15    parties were present?
16              MR. KERR:  Objection to form.
17        A.    I think a subset.  I don't recall.
18        Q.    At that session, did anyone present
19    indicate whether the prospective settlement
20    under discussion had been reduced to any kind
21    of a writing?
22              MR. KERR:  Objection.  And I'll
23        direct him not to answer that in
24        confidentiality, based on the
25        confidentiality mediation.
```

```
1                   L. Kruger
2    why the board authorized you to do so?
3         A.    That would be facetious wisdom and
4    good judgment on their part.
5         Q.    I'm sorry, I didn't understand your
6    last answer.
7         A.    Why don't you ask me the question
8    again and I'll answer it.
9         Q.    Sure.  I'll ask you a new question.
10               What were the reasons why the board
11   authorized you to enter into the FGIC
12   Settlement Agreement?
13               MR. KERR:  Objection.
14        A.    Because I was the chief restructuring
15   officer of the company and I had the authority
16   to do so, and they gave me that authority.
17        Q.    Did you think entering into the
18   agreement was a good idea?
19        A.    Yes, I did.
20        Q.    Did you believe it was in the best
21   interest of the debtors?
22        A.    Yes, I did.
23        Q.    Did you express that view to the
24   board of directors?
25        A.    I'm sure I did.
```