1                          L. Kruger

2                     AFTERNOON SESSION

3               (Time noted:  1:30 p.m.)

4

5    L E W I S    K R U G E R,

6        resumed and testified as follows:

7    CONTINUED EXAMINATION

8    BY MR. SHORE:

9         Q.    Let's focus on the claims that are

10   being allowed at RFC -- sorry, ResCap, LLC.

11                    What's the reason why the claim is

12   fixed if the plan is confirmed but left

13   unliquidated if the plan is not confirmed?

14                    MR. KERR:   Again, Chris, as you know,

15            there's a question about whether or not

16            plan confirmation issues need to be

17            addressed as part of the plan confirmation

18            process.

19                    I recognize that there's stuff in the

20            FGIC Settlement Agreement, so -- and I --

21            this is not a place to be talking about

22            broader plan confirmation issues.  So I

23            will object if I think we're getting there.

24            A.    Want to start the question again.

25            Q.    Sure.

Page 157

1                          L. Kruger

2                 What's the reason why the FGIC claim

3        at ResCap, LLC is fixed if the plan is

4        confirmed but left unliquidated if the plan is

5        not?

6                 MR. KERR:  And, again, are you

7            talking -- you're referring to the FGIC

8            Settlement Agreement, because if you're

9            talking more than that, then I don't think

10           it's appropriate.

11   BY MR. SHORE:

12         Q.    Can you answer the question?

13         A.    Are you asking -- if I can respond by

14   this way.  Are you talking about the

15   $337 billion allocation?

16         Q.    Yes.

17         A.    I think it is in the context of the

18   plan.  But having said that, I think the reason

19   that there is a claim there is that FGIC did

20   have, indeed, claims against ResCap, as well as

21   against Ally, and it seemed to be appropriate

22   that it should be there and it's part of the

23   global summary and part of the allocation

24   process that we went through as part of the

25   mediation.

1                          L. Kruger

2          Q.    All right.  So let me break that into

3    two pieces.

4                  First of all, why was it left

5    unliquidated in the event that the plan was not

6    confirmed?

7                  MR. WYNNE:   I'm going to object to

8    the extent that that would require him to

9    disclose what was discussed in the

10   mediation.

11                 MR. KERR:   Let me state it this way.

12   All right.

13                 MR. SHORE:   Please.

14                 MR. KERR:   To the extent you can

15   answer the question without revealing

16   discussions that happened in mediation --

17   let me read the question again.

18                 To the extent you can answer the

19   question without disclosing anything that

20   occurred in the mediation, that's fine.

21                 Again, Chris --

22          A.    It was part of the --

23                 MR. KERR:   Chris, if you're asking

24   about the FGIC Settlement Agreement and

25   you're referring us to why is it this way

Page 159

1                      L. Kruger

2        in the FGIC Settlement Agreement, I think

3        that's a fair question.

4            So -- but if you're going to be

5        talking more broadly about what was the

6        discussion at the mediation, I'm going to

7        direct him not to answer.  If you're going

8        to be talking about what is in the plan

9        confirmation, that is not what we're here

10        for, as well.

11        A.    It was part of the negotiation of the

12   settlement agreement in the mediation.

13        Q.    And what were the reasons that the

14   debtors were willing to proceed or ResCap, LLC

15   was willing to proceed with the settlement

16   agreement in which it didn't fix its claim, the

17   claim asserted by FGIC against it?

18            MR. KERR:  Again, on that question,

19        I'm going to direct him not to answer due

20        to the confidentiality provision.

21   BY MR. SHORE:

22        Q.    So you're not going to testify at all

23   as to why the claim is left unliquidated at

24   ResCap, LLC in the event that the plan doesn't

25   close?

Page 160

1              L. Kruger

2              MR. KERR:  Chris, you can ask him --

3         you can show him the settlement agreement,

4         ask him what's your understanding of why

5         this is.  And if you can answer that

6         question without revealing discussions in

7         the mediation, you can answer that.

8              MR. SHORE:  Well, look, I've been

9         avoiding making speeches, unlike some

10        others at the table.  I don't agree that

11        you can come in and take the position that

12        the agreement was negotiated at arm's

13        length, but then say you're not entitled to

14        ask any questions with respect to what I

15        meant by arm's lengths, and we'll get to

16        those questions.

17             You guys can take whatever positions

18        you want, but you can't take a sword and a

19        shield.  I'm here on the FGIC Settlement

20        Agreement.

21    BY MR. SHORE:

22        Q.    If you turn to Article III, am I

23    correct that Article or Section 3.01 describes

24    the two scenarios in which -- in which the

25    claims that FGIC has asserted at ResCap, LLC

1               L. Kruger

2               Does that 337 reflect just a view of

3       management, you -- as advised by the lawyers

4       that that's the liability for a alter ego

5       theory; in other words, one way to look at this

6       is that if you looked at the allowance of 337

7       versus a total maximum liability of 596, that

8       represents more than a 50 percent likelihood

9       that if you litigated it to conclusion, that

10      ResCap, LLC would be held liable for the debts

11      of GMACM and RFC?

12              MR. KERR:   Objection.

13      A.      Is there a question in there?

14      Q.      Yes.

15              First of all, is that the proper way

16      of looking at it?

17      A.      I think the way I looked at the, if

18      that's the question that you're asking, with

19      respect to the plan being confirmed, then it

20      seems to be that the way to think about it is

21      in the context of the global settlement and the

22      mediation process.

23              And we came to a conclusion and I

24      came to a conclusion myself that it was not an

25      appropriate for there to be a FGIC claim at

1                          L. Kruger

2        ResCap, because they had alleged theories why

3        they should have claims at the ResCap level and

4        theories why they should have claims against

5        Ally.

6                 So it seemed to be not inappropriate

7        for them to have a claim against ResCap in the

8        context of a confirmed plan, although I really

9        think in part it's a planned confirmation

10       issue; but, nonetheless, that's why it came

11       out.

12          Q.     But what do you mean by it would be

13       not -- was it not inappropriate to give them a

14       claim on account of they had claims against

15       Ally.

16                 I don't understand what that means.

17          A.     Well, there is an Ally settlement as

18       part of the global claim settlement, global

19       claim agreement.    And I think and my thought

20       was that in light of that and in view of the

21       fact that, in my mind, the prospect of

22       litigating with FGIC over the proof of claims

23       on alter ego theories would be a unfortunate

24       outcome because we would spend years in

25       litigation with uncertain results, and that the

1                      L. Kruger

2    global plan agreement was a far better outcome.

3              And part of that global plan

4    agreement was an acknowledgment that they're

5    entitled to a claim against ResCap.

6        Q.    So let me ask it this way.

7              Do you believe that $337 million

8    claim at ResCap outside the context of the

9    global settlement would be an appropriate claim

10   amount?

11             MR. KERR:   Objection.

12       A.    I haven't considered that, no.

13       Q.    Okay.

14             What was the reason you didn't just

15   agree to fix the liability at 337 under all

16   circumstances?

17             MR. KERR:   Objection.  Again, if you

18        can -- again, I don't want you to disclose

19        anything that was discussed in the

20        mediation, you can answer that question

21        without disclosing what was discussed in

22        the mediation.

23       A.    It was part of the mediation in the

24   global settlement agreement.  It's hard for me

25   to separate out.

Page 168

1                        L. Kruger

2        Q.    You said before that it was

3  compensating for their claims against Ally.

4              What did you mean about that?

5        A.    Well, they alleged that they had

6  claims against Ally.

7        Q.    So?

8        A.    Domination control of ResCap, Ally is

9  paying $2.1 billion to settle these claims.

10 They are looking for releases from FGIC, as

11 well.   It's not inappropriate for part of the

12 proceeds of their contribution to be used to

13 satisfy the FGIC claims.

14       Q.    Okay.

15             Well, did GMACM contribute more

16 claims or give more claims to FGIC in the event

17 of the settlement?

18             Its claim is fixed; right?

19       A.    When you say it's fixed, I'm not sure

20 I'm following that.

21       Q.    Okay.

22             The claim against GMACM that you're

23 allowing FGIC is the same claim whether the

24 plan is confirmed or not; right?

25       A.    It's 596.

Page 169

1                          L. Kruger

2          Q.    Right.

3                Well, 596 is combined for both GMACM

4    and RFC; right?

5          A.    Correct.

6          Q.    Okay.

7                Well, let's just ask it that way.

8    And it's 596, whether or not the plan is

9    confirmed; right?

10               MR. KERR:   Objection.

11               MR. WYNNE:   Objection.

12         A.    I don't think I can answer that

13   outside of the context of the mediation.

14         Q.    So what is it?  You're here as the

15   business person.  What is the claim that FGIC

16   has against GMACM in the event that the plan is

17   confirmed or is not confirmed?

18         A.    That was just set forth in the

19   settlement agreement.

20         Q.    Okay.

21               What is it?  What is your business

22   understanding?

23         A.    My business understanding is that

24   those claims, if the plan is not confirmed,

25   right, is that those allocations are, in part,

Page 170

```
 1              L. Kruger

 2   based upon the governing agreements under the

 3   trusts and FGIC and the debt.

 4       Q.    Okay.

 5             And if it isn't confirmed -- or,

 6   sorry, if it is confirmed?

 7       A.    Then if it is confirmed, then FGIC

 8   does get a claim against ResCap.

 9       Q.    Okay.

10             But why -- when you say "ResCap," you

11   mean ResCap, LLC?

12       A.    LLC.

13       Q.    Okay.

14             But why would ResCap, LLC be the one

15   giving the claim in the event that there is a

16   confirmation?

17             MR. KERR:   Objection.

18       A.    Again, Chris, that's part of the

19   global settlement that was agreed to during the

20   course of the mediation.

21       Q.    Okay.

22             Let me just ask it this way.  Is what

23   you're saying is that this is the way in which

24   FGIC gets a direct or gets a piece of the Ally

25   settlement by resolving the claim -- resolving
```

1                              L. Kruger

2       estate or the estates.

3           Q.      Well, you wouldn't be allowing claims

4       that you thought were illegitimate claims just

5       to foster a settlement, would you?

6               MR. KERR:    Objection.

7           A.      What do you mean?    I'm not sure what

8       you mean.

9           Q.      Well you wouldn't, for example, if

10      FGIC said I'm only going to settle if you give

11      me a secured claim at ResCap, LLC, that

12      wouldn't have been something in your

13      consideration; right?

14          A.      I would consider whatever a party

15      suggests was appropriate for them to be part of

16      the process of choosing a global settlement

17      agreement.

18          Q.      Okay.

19              So why is the global settlement so

20      important here?

21          A.      I think it's very important, because

22      it does seemed to me that the alternative to

23      the global settlement is no Ally contribution

24      of $2.1 billion, which I believe is a lot of

25      money; secondly, that the outcome of no Ally