1                   L. Kruger

2    settlement and no global settlement agreement
3    would mean that the parties themselves, all the
4    inter-creditor issues would come to the forth
5    creditors would be suing each other, creditors
6    would all be suing ResCap.  This case would go
7    on forever.  Professional fees and the costs of
8    administering this estate are enormous.
9                   And it seems to me that that will be
10   to the detriment of all competitors.  And I
11   think that's not helpful.  I think in my
12   business judgment this is a far better
13   alternative.
14           Q.     So in your view that you would
15   consider what anybody asked you for a claim
16   amount, if that --
17           A.     That's why I asked him whether
18   Ms. Lincoln was happy or -- I don't understand
19   that.  You can't ask me that question that way.
20           Q.     Let me ask you the question.
21                   Are you saying then that in order to
22   allow that global settlement with all what you
23   believed to be the important benefits of that
24   global settlement to go forward, you'd give a
25   claim to somebody if they wanted it in exchange

1          L. Kruger
2   for the support for that settlement?
3          MR. KERR:  Objection.
4      A.  Of course not.
5      Q.  Okay.
6          So what are the criteria you apply to
7   determine whether or not they should be getting
8   a claim?
9      A.  The same one --
10         MR. KERR:  Objection.  Asked and
11  answered.
12     A.  The same one I just gave before.  In
13  my judgment, the arguments as to whether or not
14  the claims of FGIC or the trust should be
15  equitably subordinated, could be subordinated
16  under the Bankruptcy Code, whether alter ego
17  arguments are possible, whether aiding and
18  abetting arguments are possible, all of those I
19  believe are the subject of litigation that
20  would be time consuming, costly, destroy the
21  global settlement agreement, and ultimately not
22  be for the benefit of the creditors for this
23  estate or for the estate of which I'm
24  responsible.
25         So, in my mind, a global settlement

1                    L. Kruger
2    agreement is a far better outcome.
3        Q.    I got time consuming.  We're all
4    caught up in time consuming right now.  I want
5    to talk about the merits.  The merits.
6              Does a $331 million claim at ResCap,
7    LLC reflect, in your view, the merits of
8    litigating a $596 million claim to conclusion?
9              MR. KERR:  Objection.
10             MR. WYNNE:  Objection.  Asked and
11       answered.  Mischaracterizes his testimony.
12       A.    I think I've answered that question.
13       Q.    Answer it again, please.
14             MR. KERR:  Objection.  Asked and
15       answered.
16   BY MR. SHORE:
17       Q.    That's your objection.
18             You can answer it again.
19       A.    In my mind, as I've had said before,
20   I think the $337 million claim in the context
21   of the global settlement agreement is an
22   appropriate resolution as part of the mosaic of
23   the global settlement agreement and is
24   appropriate under the circumstances as
25   reasonable and appropriate.

1           L. Kruger

2      Q.   That wasn't my question.  That's why
3  I wanted you to answer my question.
4           Does $337 million reflect your
5  understanding of the likely result or within
6  the range of results that would occur if
7  independent of the global settlement FGIC
8  pressed its $596 million claim?
9      A.   I don't know the answer to that
10 question.
11     Q.   Okay.
12          Let's focus on the disclosure
13 statement.  Did you play any role in the
14 drafting of the disclosure statement sections
15 that discuss substantive consolidation?
16          MR. KERR:  Objection.  Objection.
17     This is not the time to be talking about
18     disclosure of planned confirmation issues.
19     All right?  And if you're not going to
20     focus on the FGIC settlement, I will direct
21     him not to answer and Judge Glenn, I think,
22     will support me down the line on it.
23 BY MR. SHORE:
24     Q.   Well, let me ask you this question.
25          Is there any basis for allowing FGIC

1          L. Kruger

2              Hypothetical creditor who asserts a

3      claim at GMACM Mortgage and at ResCap, LLC, on

4      alter ego theories, shouldn't they also be able

5      to get a claim at G -- sorry -- at ResCap, LLC?

6              MR. KERR:  Objection.  I'll direct

7      him not to answer that question.

8              MR. SHERWIN:  On what basis?

9              MR. KERR:  That's a hypothetical.  It

10     has to do with planned confirmation.  It

11     has nothing to do with the FGIC Settlement

12     Agreement.

13             MR. SHORE:  Let me take a quick

14     break.

15             MR. KERR:  Sure.

16             (Recess taken from 2:03 p.m. to

17     2:09 p.m.)

18 BY MR. SHORE:

19     Q.     All right.

20             If you could turn to the Iridian

21     (phonetic) factors, which start on page 11.

22             We've gone through the -- with

23     respect to A, right, the balance between the

24     possibility of success, I take it that you're

25     following your counsel's instruction that

1        L. Kruger

2   case; right, that proof of claim?

3        MR. KERR:  Objection.

4        A.    I don't know how much of that is

5   spent in litigating that proof of claim, but it

6   was part obviously of the global settlement

7   agreement, and that's what motivated me in part

8   to apply for a claim at the ResCap level.  And

9   the recognition that if there were to be

10  litigation, there would obviously be no global

11  settlement agreement, and the litigation would

12  be both time consuming, costly and uncertain

13  outcome.

14       Q.    Okay.

15             Did you have any views, form any

16  views of what it would take, how much it would

17  cost to litigate the FGIC issues at the time

18  you entered into the settlement agreement?

19       A.    I was aware that there had been MBIA

20  litigation against ResCap prior to the filing

21  of the petition and had gone for three and a

22  half years.  So I assumed this was going to be

23  a lengthy litigation, as well.  I believe in

24  the MBIA more than a million documents were

25  produced.  This looks to me like complex and

1           L. Kruger

2     long-term litigation.

3        Q.    Okay.

4              Other than your knowledge that the
5     MBIA litigation had gone on for three and a
6     half years, did you have any other view, any
7     other basis on which you formed your
8     conclusions that it would be a complex and
9     protracted litigation?

10       A.    I had read, I think I referred to
11    before, the Carpenter Lipps report, memorandum.
12    That's what informed my view.

13       Q.    Just so we are clear.  I forgot to
14    ask this question before.

15             The NewOak analysis, Dr. D'Vari, did
16    you have that before you decided to enter into
17    the settlement agreement?

18       A.    No, I did not.

19       Q.    Okay.

20             Had they performed any analysis for
21    you prior to the entering into the settlement
22    agreement?

23       A.    Not for me, no, they did not.

24       Q.    Okay.

25             So I take it that your decision to