1                  L. Kruger

2    enter into the settlement agreement was not
3    based in any way on any conclusions, either
4    preliminary or final, that NewOak had reached
5    with respect to the analysis set forth in
6    Dr. D'Vari's report?
7         A.    That's correct.
8         Q.    Okay.
9               Then if you turn to paragraph 34.
10        A.    Yes.
11        Q.    The arm's length negotiations, and
12   just so I'm clear. It's the debtor's position
13   that the mediation confidentiality order in
14   place prohibits the disclosure of any substance
15   between FGIC or its counsel, on the one side,
16   and the debtors and their counsel, on the other
17   side, with respect to the FGIC claims?
18              MR. KERR: Let me put it this way. I
19   think Mr. Kruger has described the
20   mediation, the involvement of people or
21   whatever; but I think the communications,
22   the substance, the back and forth, is
23   subject to the confidentiality order
24   entered by Judge Glenn, relied upon by
25   Judge Peck and all the parties.

1            L. Kruger
2            And so, in terms of the substance of
3    the communications back and forth, that's
4    confidential.
5    BY MR. SHORE:
6        Q.    So what can you, beyond what you've
7    testified to today, tell me about the arm's
8    length nature of the negotiations with FGIC?
9            MR. KERR:    Again, just without
10    disclosing any of the substance of the
11    conversations.
12        A.    I can say that they were obviously
13    experienced trustees, experienced counsel,
14    experienced advisors, FGIC itself were
15    well-represented, and all of that a process
16    overseen by Judge Peck, looked to me like a
17    very vigorous, robust process that went on for
18    months.
19        Q.    And let me talk about it from the
20    debtor's side.
21            What can you testify to today, other
22    than what you already have, to give any
23    creditor, creditors within the case, leave
24    aside the non-creditors in the case, comfort
25    that the debtors didn't just roll over and give

L. Kruger

a 330 million, $337 million claim to FGIC in exchange for a signature on a plan support agreement?

MR. KERR: Objection.

A. Let me answer it this way.

We were part of the mediation process all through it. I've only been part of the mediation process since the middle of February. And the mediation process, as I saw it myself, was one that was both vigorously contested by the parties. We had reviewed with people, parties, the pros and cons of their positions. We did that for Judge Peck, as well.

So I was informed with respect to all of those kinds of issues, that presentations made to me by parties, all of that led me to believe that the global settlement agreement was a sensible thing to pursue and that this settlement agreement was an important part of that.

Q. And that's the extent of your defense of a concern that creditors at ResCap, LLC might have that a 330 million, $337 million claim was given in exchange for a plan support

1                      L. Kruger
2      agreement to foster the global settlement
3      which, of course, is important?
4              MR. KERR:  Objection.
5          A.   Because I believe that if there was
6      no global settlement agreement and there would
7      be no $337 million claim available at ResCap,
8      there would be no $2.1 billion coming into the
9      estate, there would be very little recovery for
10     a creditors out of this estate, and ResCap,
11     GMAC or RFC.
12         Q.   Well, let's peel that apart.
13              First of all, if the global
14     settlement didn't occur, the -- no one would
15     release claims against Ally; right?
16         A.   Right.
17         Q.   And we would have every cause of
18     action that was identified against Ally in the
19     examiner's report would still be a valid claim
20     that the debtors would bring that's not time
21     barred; right?
22         A.   Examiner's report?
23         Q.   In the examiner's report.  The
24     examiner's report lays out all sorts of claims
25     that the debtors could bring and might even win

```
 1                    L. Kruger
 2    against Ally; right?
 3         A.    I'm not going to comment on the
 4    examiner's report.  It's all hearsay whether
 5    the advised causes of action that are sensible
 6    to pursue or not is subject to a different
 7    conversation.
 8         Q.    But the claims, whatever the claims
 9    are, whether you believe what Judge Gonzales
10    said or whatever ResCap has looked at
11    internally, the claims would still be there?
12         A.    Which claims are these?
13         Q.    The claims against Ally --
14         A.    Sure.
15         Q.    -- that you're trying to preserve
16    again.
17               Why does the -- what I don't
18    understand is, why does the amount of the claim
19    at ResCap, LLC go up or down depending upon the
20    global settlement?  I could understand that the
21    recovery would go up.  You're right.  They will
22    recover a lot more on their $337 million claim
23    in the event of a global settlement than they
24    will in the event that these cases get
25    converted.  I get that.
```

```
 1                     L. Kruger
 2              Why does the claim amount differ?
 3              MR. KERR:  And, again, if you can
 4      answer that question without revealing what
 5      was discussed and agreed to in the
 6      confidential mediation.
 7         A.   All I can say is that that claim
 8      amount results from the global settlement
 9      agreement.
10         Q.   And that's it?
11         A.   That's it.
12              MR. SHORE:  Okay.
13              I have no further questions.
14              Anybody else?
15              MR. CARNEY:  Mike Carney.  I have
16      about 10 minutes.
17
18  EXAMINATION BY MR. CARNEY:
19         Q.   Sir, I'm Michael Carney again from
20      McKool Smith for Freddie Mac.
21              The ResCap trust holding FGIC wrapped
22      securities claims have claims against the
23      debtors; is that correct?
24         A.   Sorry?  Say that again.
25         Q.   The ResCap trust holding FGIC wrapped
```

```
 1                    L. Kruger
 2              Did you personally have an opinion
 3     about it when you became aware of it?
 4              MR. KERR:  Objection.
 5         A.   Yes.
 6         Q.   And what was that opinion?
 7         A.   That if it could be accomplished in
 8     the context of a global settlement agreement,
 9     it would be helpful.
10         Q.   Uh-huh.
11              But other than -- strike that.
12              Is it your understanding that the
13     FGIC computation was insisted upon as part of
14     that global settlement?
15              MR. KERR:  Objection.  On that, I
16     will direct -- I think that's covered by
17     the confidential mediation order, and I'll
18     direct the witness not to answer that.
19     BY MR. CARNEY:
20         Q.   And I assume you're going to abide by
21     your counsel's direction?
22         A.   Yes.
23         Q.   Did you or did the debtors, rather --
24     first we'll start with the debtors -- did the
25     debtors do any substantive analysis of the FGIC
```