# Exhibit B

Page 1

```
 1
 2                UNITED STATES DISTRICT COURT
 3               SOUTHERN DISTRICT OF NEW YORK
 4    IN RE:                        )
      RESIDENTIAL CAPITAL, LLC,     )Civil Action No.
 5    et al.,                       )12-12020 (MG)
                    Debtors,        )
 6                                  )
      ------------------------------)
 7
 8
 9
10
11
12        CONFIDENTIAL DEPOSITION OF JEFFREY A. LIPPS
13                    New York, New York
14                   Tuesday, July 23, 2013
15
16
17
18
19
20
21                              ▓▓▓  AHG Designations
22                              ▓▓▓  Debtor Designations
23                              ▓▓▓  AHG Counter Designations
24    Reported by:              ___  Unresolved Objections
      JOMANNA DeROSA, CSR
25    JOB NO. 64088
```

Page 2

1
2          July 23, 2013
3          10:00 a.m.
4
5
6          Confidential Deposition of
7    JEFFREY LIPPS, held at the offices
8    of McKool Smith, One Bryant Park,
9    New York, New York, before Jomanna
10   DeRosa, a Certified Shorthand Reporter
11   and Notary Public of the States of
12   New York, New Jersey, California
13   and Arizona.
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                J. LIPPS - CONFIDENTIAL
 2     commercial litigator for now 32 years.  The last
 3     three years of which -- or I guess two years
 4     before the filing of the bankruptcy and the year
 5     after I have been actively involved with respect
 6     to RMBS securitizations, and rep and warranty
 7     claims, as well as PLS claims.  So, I have had
 8     substantial experience in the area.
 9                And as part of my ongoing
10     assistance with the Debtors' counsel, I continue
11     to stay abreast of what is developing in the law
12     with respect to the legal issues, and I have
13     direct experience in terms of representing the
14     Debtors and some of the non-Debtors pre-petition
15     in these cases, and have a very good understanding
16     of what the complexities are in terms of the
17     discovery that will be encountered, as well as the
18     legal issues that you have to confront in these
19     kinds of claims.
20          Q.   So, is it fair that you have
21     submitted a Declaration as an expert in the
22     litigation of complex commercial disputes with
23     specific subject matter expertise in the body of
24     law that is developed in disputes regarding the
25     sale of residential mortgage-backed securities or
```

1          J. LIPPS - CONFIDENTIAL

2     around the cases or put yourself in the case, if

3     you want to do it.  So, you know, I've got to

4     emphasize that I have what I consider to be some

5     unique specific factual knowledge, that it would

6     take years of discovery and interviews and active

7     involvement in litigation, I think, to replicate.

8            Q.    When were you first retained by

9     Residential Capital, LLC or any of its affiliates

10    as counsel?

11           A.    I believe that back in, I'm going

12    to say the '90s, I did some work for RFC when they

13    had their commercial mortgage unit, that I was

14    engaged to represent them on some lender liability

15    cases that they had and some legal disputes

16    related to some portfolios that they had acquired.

17                 But that was the commercial

18    division.  And then I continued to represent them

19    in that capacity up until they sold off that unit.

20    I can't remember the exact year.  It might have

21    been 2004/2005.

22                 And then as far as representing

23    Residential Capital, I believe that I was first

24    retained in, say, March or April of 2010, and

25    there were MBIA versus RFC was pending at the

```
 1              J. LIPPS - CONFIDENTIAL
 2    time.  New Jersey Carpenters was pending at the
 3    time, and the MBIA/GMAC Mortgage case had just
 4    been filed.  So, those were the three cases I
 5    started working on, one which was in the midst of
 6    discovery at that point.
 7           Q.   So, for the period from 2004 or
 8    2005, when you said that the commercial unit --
 9    the commercial mortgage unit was sold, through
10    2010, when you said you were retained by ResCap,
11    did you do any work for Residential Capital or any
12    of the Residential Capital affiliates?
13           A.   I guess I should probably take a
14    step back because I've represented GM for many
15    many, many years, and then I also represented
16    GMAC, principally on its auto finance side,
17    handling a lot of major cases for them.  And then
18    at some point in time, probably in the 2000s, my
19    firm got retained to assist them in foreclosure
20    actions where the borrowers asserted counterclaims
21    or made direct challenges to the actual loan.
22                So, we had represented them for a
23    number of years, more on one-off type cases, and
24    then at or about the time that I gotten engaged
25    for RMBS litigation we also entered into a
```

Page 14

```
 1            J. LIPPS - CONFIDENTIAL
 2       "Declaration of Jeffrey A. Lipps In Support of
 3       Debtors' Motion Pursuant to Federal Rules of
 4       Bankruptcy Procedure 9019 for Approval of the
 5       Settlement Agreement Among the Debtors, FGIC,
 6       the FGIC Trustees, and Certain Institutional
 7       Investors."
 8            (Lipps Exhibit 1 marked for
 9       identification.)
10       Q.    Do you recognize this document as
11  your Declaration?
12       A.    It is my Declaration.
13       Q.    Did you write this Declaration?
14       A.    I did.
15       Q.    And your electronic signature
16  appears on page 54.  Is that correct?
17       A.    This version does have an
18  electronic signature.  I think I probably had a
19  wet signature on it that I did on the 7th of June,
20  too.
21       Q.    And when did you begin drafting
22  this Declaration, Mr. Lipps?
23       A.    This particular Declaration, I
24  started working on it, I'm going to say, on May
25  31st.
```

1        J. LIPPS - CONFIDENTIAL
2             Q.    And what caused you to begin
3    drafting this Declaration on May 31st?
4             A.    I met with Debtors' counsel at
5    Morrison & Foerster, and they asked me if I would
6    review the FGIC settlement and offer some opinions
7    with respect to that settlement.
8             Q.    And was May 31st the first date you
9    had been shown the FGIC Settlement Agreement?
10            A.    I believe that's right.
11            Q.    Okay.  When did you first learn
12   that a FGIC Settlement Agreement was being
13   negotiated?
14            A.    I don't know that I could answer
15   that because I don't know that I knew a FGIC
16   Settlement Agreement was being negotiated until I
17   was asked to come to New York, and have the
18   meeting with Morrison & Foerster to take on an
19   evaluation of the Settlement Agreement.
20            Q.    And that meeting was on May 31st?
21            A.    That's what I best remember.
22            Q.    And what documents were provided to
23   you in connection with your evaluation of the FGIC
24   Settlement Agreement?
25                 MR. KERR:  Objection.  Are you

```
 1                 J. LIPPS - CONFIDENTIAL
 2      put forward the two issues.  But what I was
 3      essentially asked to look at -- I mean, I am
 4      familiar with the array of factors that have to be
 5      evaluated with respect to the 9019, and I was
 6      being asked to provide my opinions with respect to
 7      the uncertainty and/or risk associated with
 8      prosecuting or defending the various claims that
 9      were being asserted initially by FGIC and the
10      litigation that I was involved in representing the
11      various Debtors on, as well as in the proofs of
12      claim.
13              And then I was also asked to offer
14      my view on the complexity of defending and/or
15      prosecuting these cases and the costs and burdens
16      associated with such prosecution or defense.
17         Q.   And those opinions, is it fair to
18      say they're summarized in the two bullet points in
19      your Declaration, appearing on page 2?
20         A.   Correct.  Under legal uncertainty
21      and expensive resolution.
22         Q.   Okay.  And referring to the legal
23      uncertainty opinion, the first sentence there
24      reads:
25              "The liabilities to be released
```

Page 22

1                J. LIPPS - CONFIDENTIAL
2    Debtor-affiliated entities, is it fair to say that
3    each has some relationship with the Debtor?
4            MR. KERR:  Objection.
5        A.   I don't know what you're asking.
6        Q.   Does AFI, GMAC Holding, Ally Bank,
7    and Ally Securities have some relationship with
8    Residential Capital and its affiliated entities?
9        A.   Well, I have some understanding as
10   to the corporate structure.  I think AFI and GMAC
11   Holding are still the parent -- indirect and
12   direct parent of Residential Capital.  Ally Bank
13   would be, at best, just affiliate, and the same
14   with Ally Securities, at least at the time I was
15   representing them.
16           At one point in time both of those
17   entities were owned either by RFC or GMAC
18   Mortgage, but I don't think at the time of my
19   representation they were in that ownership chain,
20   so they would have been subsidiaries of either
21   GMAC Holdings or Ally Financial.
22       Q.   Your representation of these -- was
23   your representation of these four non-Debtor
24   affiliated entities in connection with RMBS
25   litigation?

```
 1                  J. LIPPS - CONFIDENTIAL
 2            A.    Mostly.  As I said, I have
 3   represented GMAC for many, many years, and GMAC
 4   was renamed to Ally Financial.  So, I've had a lot
 5   of representation with GMAC over the years.
 6                  But what I was -- to the extent in
 7   my Declaration I'm talking about RMBS, that would
 8   be -- those would be the only circumstances in
 9   which I was representing those entities, would be
10   in RMBS, other than GMAC, or now known as Ally
11   Financial.
12            Q.    And in Paragraph 8 of your
13   Declaration, toward the end of that paragraph, you
14   write that:
15                  "The cases involve claims of
16   breaches of representations and warranties and
17   related claims of alleged failure to repurchase
18   loans pursuant to the terms of the applicable
19   contracts."
20                  Is it okay if I refer to these
21   types of cases as reps and warranties cases?
22            A.    Specifically the FGIC/MBIA -- or
23   specifically the 12 FGIC and MBIA suits, sure.
24            Q.    And were the cases for the four
25   non-Debtor affiliated entities also rep and
```

```
 1                    J. LIPPS - CONFIDENTIAL
 2      warranty cases?
 3              A.    Arguably, yes, with respect to the
 4      FGIC claims.   In the MBIA cases I didn't represent
 5      the non-Debtor affiliated entities because they
 6      weren't sued.   It was only directly MBIA versus
 7      Residential Funding and GMAC Mortgage.
 8              Q.    In Paragraph 7 you also refer to
 9      your representation of several individual former
10      directors and officers of Debtor entities in over
11      a dozen separate lawsuits involving certain Debtor
12      entities issuance of RMBS.
13                    Are the cases you're referring to
14      in that part of Paragraph 7 connected to the 12
15      FGIC cases brought against the Debtor?
16              A.    That's part of it.   At one point in
17      time I think pre-petition there were about 17
18      lawsuits that I was counsel of record for Debtors,
19      some combination of Debtors, individual
20      shareholders and/or the non-affiliated entities.
21                    The pure rep and warranty claims
22      were really brought by the credit enhancers, MBIA
23      and FGIC.   Most of the other suits were investors
24      in the securities that were bringing any number of
25      claims.
```