1               J. LIPPS - CONFIDENTIAL
2       have been is in the Federated case. It's been
3       quite a few years ago. I can't remember all the
4       specifics that I would have been involved in.
5       There may have been some proofs of claim that were
6       substantial enough that we didn't need to talk and
7       plan for discovery, but that's sort of faded from
8       my memory.
9             Q.    And so I take it, it didn't form or
10      help you form any of the opinions that you have
11      expressed in Lipps No. 1?
12            A.    No.
13            Q.    What do you understand claims
14      estimation proceedings to be?
15            A.    I'm not a bankruptcy lawyer, so I
16      may not get it right, but I understand it's part
17      of a plan process. It's an effort to try and
18      establish or estimate an amount that would be set
19      up to deal with a group of claims or potential
20      claims, and I did have -- it's been a while since
21      I've looked at it, but I did have early on in the
22      bankruptcy an opportunity to look at what was
23      occurring in the Lehman case with respect to the
24      estimation of -- I think it was an RMBS claims,
25      actually.

```
 1                J. LIPPS - CONFIDENTIAL
 2          Q.    And what about -- what, if
 3    anything -- let me withdraw that question.
 4                In forming the opinions expressed
 5    in Lipps No. 1, how did you factor in any
 6    knowledge you had with respect to estimation
 7    proceedings, if any?
 8          A.    As specifically relates to FGIC, I
 9    didn't specifically discuss, as you can read,
10    estimation proceedings.  I know I became a little
11    bit more familiar with them, and particularly the
12    Lehman, in the context of the declaration that I
13    offered or declarations that I offered in context
14    with the 9019 for the RMBS trust settlement, and I
15    know I offered opinions with respect to costs
16    there.  And I didn't find anything associated with
17    the estimating proceeding, something that would
18    cause me to rachet back my views on the
19    estimating -- or on the costs associated with
20    litigating those claims.  So I naturally didn't go
21    backwards and try and see if this would affect
22    that.  I saw that the scope of discovery would be
23    sufficient, even in a compressed time, and the
24    preparation associated with it, that that cost
25    could be supported -- or my opinion could be
```

1          J. LIPPS - CONFIDENTIAL

2     supported in those costs.
3          Q.    And do you express those views at
4     all in Lipps No. 1?
5          A.    What I've just said?
6          Q.    Yes.  That estimation would have no
7     impact on your views with respect to the costs
8     associated with litigating the claims that are
9     resolved in the FGIC Settlement Agreement?
10              MR. KERR:  Objection.
11          A.    Well, I still think in the
12    estimation process you have to address these
13    issues.  It may be in a more compressed time
14    period, but you still have got the discovery that
15    leads up to it.  In my experience, it's fairly
16    massive discovery, and it will be in a more
17    compressed time, but a lot of discovery is going
18    to happen which is, I think, what you see in the
19    foundation of my costs being essentially what the
20    demands are in connection with the discovery
21    associated with this.
22          Q.    Did anybody ask you to prepare a
23    budget for what it would cost to litigate the
24    claims that are being resolved in the FGIC
25    Settlement Agreement?

```
 1                    J. LIPPS - CONFIDENTIAL
 2              A.      No.
 3              Q.      And did you form any views as to
 4    the costs?
 5                      MR. KERR:   Objection.
 6              A.      Well, I offered views on -- I
 7    offered my opinion with respect to the costs
 8    associated with prosecuting and/or defending these
 9    claims.  If you're asking me if I quantified a
10    dollar amount, no, I never did that.
11              Q.      And did you quantify a range?
12              A.      In my declaration I don't think I
13    put a range in, as I recall, or a specific dollar
14    amount.  I may have in some of my earlier
15    declarations, particularly when I talked about
16    that the judge utilized in the Western and
17    Southern decision.  I may have put some numbers in
18    there associated with restoration of e-mails
19    and/or retrieval and review of loan files, and I
20    probably had some numbers associated with hosting
21    documents in the course of discovery preparation.
22    So I think --
23              Q.      That's not expressed in Lipps No.
24    1?
25              A.      Not specifically.
```

```
 1                  J. LIPPS - CONFIDENTIAL
 2          Q.    When was the first time you
 3   reviewed the claims that either FGIC or the FGIC
 4   wrapped trust asserted against ResCap, LLC?
 5          A.    When was the bar date?  Probably
 6   about the bar date.
 7          Q.    And what do you understand to be
 8   the nature of the claims that those entities have
 9   asserted against ResCap, LLC?
10          A.    I understand them to be in the
11   nature of aiding and abetting and piercing the
12   corporate veil.
13          Q.    And do you understand alter ego
14   claims might also have been asserted?
15          A.    Yes, alter ego.  I'm sorry I think
16   of piercing --
17          Q.    Sure.
18                Did you perform any analysis of
19   those claims in connection with forming the
20   opinions you expressed in Lipps No. 1?
21          A.    I did not get down into an
22   allocation and an assessment of allocation at
23   various entity levels.  I was looking at the
24   aggregate.  I was looking at the aggregate of the
25   claims that were being released.  But, I mean, I
```

1         J. LIPPS - CONFIDENTIAL

2    have at different times looked at aiding and

3    abetting claims, alter ego, piercing the corporate

4    veil.

5         Q.    As they relate to claims asserted

6    by RMBS claimants against ResCap, LLC?

7         A.    Yes.

8         Q.    I'm going to come back to that in a

9    second.  With respect to Lipps No. 1, though, you

10   note in footnote No. 3 that the underlying fraud

11   claims and misrepresentation claims are beyond the

12   scope of your report.  Right?

13             MR. KERR:  Objection.

14        A.    I don't know that I said they're

15   beyond the scope of it.  I think I said I could

16   look at the riskier claim, the rep and warranty

17   claim, at least I think that's the way I described

18   it, and support my conclusion with an analysis of

19   that.

20        Q.    Okay.  And so did you perform any

21   analysis of any tort-based claims in forming the

22   opinions expressed in Lipps No. 1?

23        A.    Beyond what I put in that footnote,

24   no.

25        Q.    And you don't mention aiding or

1           J. LIPPS - CONFIDENTIAL
2    abetting, piercing the corporate veil or alter ego
3    anywhere in Lipps No. 1. Why is that?
4           A.    For purposes of offering my
5    opinion, I didn't need to concern myself with
6    allocation between the various entities.
7           Q.    Why do you say that?
8           A.    I was more interested in what
9    claims were being released and who was being
10   released of those claims. And as I understood it
11   ResCap, GMAC Mortgage, RFC were receiving releases
12   from FGIC of all claims that they could have
13   against them and from the trustees on the
14   origination-based claims.
15          Q.    Do you express anywhere in Lipps
16   No. 1 your views of the costs for ResCap, LLC, to
17   litigate aiding and abetting, piercing the
18   corporate veil and alter ego claims?
19          A.    I did not specifically isolate
20   costs associated with litigating those issues.
21          Q.    And do you express anywhere in
22   Lipps No. 1 any risks associated with ResCap, LLC,
23   litigating aiding and abetting, piercing the
24   corporate veil and alter ego claims?
25          A.    Yes, I would say I do.