# Exhibit C

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
IN RE:
RESIDENTIAL CAPITAL, LLC, et al.

Civil Action No. 12-12020 (MG)
----------------------------------------X

***CONFIDENTIAL***
DEPOSITION OF RON D'VARI
New York, New York
July 25, 2013

Reported by:
Rebecca Schaumloffel, RPR, CLR
Job No:  64177

- AHG Designations (yellow)
- Debtor Designations (green)
- AHG Counter Designations (blue)
- Unresolved Objections

Confidential

Page 2

1
2
3           July 25, 2013
4            9:08 a.m.
5
6
7
8       Deposition of RON D'VARI, held at
9   the offices of McKool Smith, One Bryant Park,
10  New York, New York, before Rebecca
11  Schaumloffel, a Registered Professional
12  Reporter, Certified Livenote Reporter and
13  Notary Public of the State of New York.
14
15
16
17
18
19
20
21
22
23
24
25

Confidential

Page 25

1            R. D'VARI
2    June, early July?
3        A.    Yeah.
4        Q.    And do you recall when you were
5    actually retained?
6        A.    Same timeframe.  Not exact dates.
7        Q.    So a little bit after that?
8        A.    Sure.
9        Q.    So a week after, two weeks?
10       A.    Yeah, probably.  A week probably.
11   I don't know the exact.
12       Q.    All right.
13             MR. LAWRENCE:  Again, that
14       retention application is on file with
15       the court, so if you want the exact
16       date, you can get it there.
17       Q.    Have you ever been retained by
18   FGIC?
19       A.    It was already -- by the FGIC's
20   counsel, yes.
21       Q.    And when were you retained by
22   FGIC?
23       A.    Would have been, I believe 2010.
24       Q.    When in 2010?
25       A.    I don't remember the exact date.

TSG Reporting - Worldwide    (877) 702-9580

Confidential

Page 26

1                    R. D'VARI

2   Would have been probably -- I don't want to
3   speculate but sometime in 2010.
4        Q.    The middle of the year, end of
5   the year?
6        A.    You are asking me to tell you
7   something I don't remember.
8        Q.    So you don't know, you can't give
9   me an approximate time in 2010?
10            MR. LAWRENCE:  Objection.  Asked
11   and answered.
12        A.    No, I can't.
13        Q.    You can answer.
14        A.    As I said, I don't necessarily
15   keep track of time that way.
16        Q.    All right.  Are you still
17   retained by FGIC now?
18        A.    No.  But again, you know, the --
19   I am not exactly sure, you know, the
20   termination clauses, but we haven't worked
21   for FGIC for sometime now.
22        Q.    How long has it been since you
23   worked for FGIC?
24        A.    I think our effort would have
25   probably ended in late 2011.

1               R. D'VARI

2       Q.      And can you describe for me how
3  that ended?
4       A.      Very normal fashion, completed
5  our assignment.
6       Q.      What was that assignment?  V?
7       A.      Really we were asked to calculate
8  losses for --
9               MR. GREEN:  Bart Green
10  representing FGIC.  I am going to
11  object to the extent you are asking
12  him to reveal communications with
13  counsel.
14              So to the extent that answer is
15  revealing your conversations with FGIC
16  or FGIC's counsel, I instruct you not
17  to answer.
18              MR. SHORE:  Chris Shore.  Can we
19  get a clarification on that?  Are you
20  instructing him not answer with
21  respect to communications that
22  occurred since he was retained by the
23  debtors in this case or this is only
24  with respect to the prior matter?
25              MR. GREEN:  Only to the prior

1                    R. D'VARI

2        matter.

3          Q.    So let me repeat my question.

4               So I asked you, Dr. D'Vari, can

5    you describe for me how that ended your

6    retention with FGIC and you said very normal

7    fashion, completed our assignment.  I asked

8    you what was that assignment.  So if you can

9    answer that question for me.

10         A.    That matter is really

11   confidential in nature.  And that's really as

12   far as I can go.

13         Q.    Okay.  Let me mark as, I believe,

14   Exhibit 4.  This is the Affidavit of

15   Michael W. Miller in further Support of the

16   first amended plan of rehabilitation.

17              (Whereupon, D'Vari Exhibit 4,

18        Affidavit of Michael W. Miller in

19        Further Support of the First Amended

20        Plan of Rehabilitation was marked for

21        identification as of this date by the

22        Reporter.)

23         Q.    We may look at this for other

24   issues again later, but if you can turn to

25   paragraph 12 on page --

Page 32

1                    R. D'VARI
2        MR. LAWRENCE:  And Mr. D'Vari is
3    following those instructions based on
4    his obligations to FGIC.
5        Q.    Let me ask you:  Are you
6    following FGIC's counsel instructions not to
7    answer?
8        A.    Correct.
9        Q.    Okay.
10       MR. LAWRENCE:  It is not the
11   debtor's privilege to waive.  Just to
12   be clear.  Nor Mr. D'Vari's.
13       Q.    Can you tell me if the work you
14   did for FGIC was related to the ResCap
15   bankruptcy?
16       A.    The answer is no.
17       Q.    In connection with paragraph,
18   what's stated in paragraph 12 of the Miller
19   Affidavit, did you or did your firm NewOak
20   review the results of the analysis you
21   provided with Lazard?
22       A.    Confidential.  I am under -- I
23   cannot make references or reveal any
24   assignment within.  I have been instructed by
25   FGIC attorneys not to answer anything related

1                    R. D'VARI
2   to that.
3       Q.    I think you can answer -- I am
4   not asking for the substance, I'm just asking
5   if you reviewed the results with Lazard?
6              MR. LAWRENCE:   Objection; vague.
7   I also object to this whole line of
8   questioning as beyond the scope of
9   Mr. D'Vari's opinions in this case.
10             MR. SHORE:   Can we get a
11  clarification from FGIC's counsel?
12  Are you directing him not to answer
13  anything that calls for a confidence
14  that FGIC controls even though we can
15  designate it as Attorney's Eyes Only
16  under the existing confidentiality
17  stip and order?
18             MR. GREEN:   Will you repeat
19  that?
20             MR. SHORE:   Sure.   The
21  confidential order and stip allows to
22  have deposition transcripts sought
23  designated as whatever we ended up
24  with, highly confidential or
25  Attorney's Eyes Only.   We will happily

1           R. D'VARI

2   take that information subject to an

3   Attorney's Eyes Only designation.

4           MR. GREEN:  I am objecting to

5   the line of questioning as it's

6   seeking information that's protected

7   with, I believe a Confidentiality

8   Agreement with the witness on a

9   previous engagement and previous

10  matter.

11          MR. NAPOLI:  This is Ed Napoli

12  from NewOak Capital.  I concur and I

13  object also with any discussion of

14  that as, again, touching upon

15  confidential information.

16          MR. SHORE:  I'm just trying to

17  get -- the confidential information is

18  controlled by FGIC, right?

19          MR. NAPOLI:  We are party to

20  that agreement and it is also our

21  responsibility to protect and enforce

22  that agreement.  So I am concurring

23  with FGIC's objection and adding

24  NewOak's objection to it.

25          MR. SHORE:  That would be that

Confidential

Page 35

1                    R. D'VARI
2         notwithstanding the ability to
3         designate it as Attorney's Eyes Only
4         or highly confidential material you do
5         not want to disclose to anybody?
6              MR. NAPOLI:  That's correct.
7    BY MR. CARNEY:
8         Q.   And --
9         A.   I would like to take a quick
10   break to consult my attorney.
11             MR. CARNEY:  Certainly.
12             MR. LAWRENCE:  There is no
13        question pending.
14             MR. CARNEY:  If there is, I will
15        ask it again.  That's fine.
16             (Whereupon, a recess was held.)
17        A.   Yes, please.
18   BY MR. CARNEY:
19        Q.   I believe you testified earlier
20   that your engagement with FGIC ended in, I
21   believe it was late 2011; is that correct?
22        A.   Our last work was done around --
23   end of 2011.
24        Q.   And I believe you testified that
25   that work was done when you -- I believe you