Confidential

Page 37

1                    R. D'VARI
2    description of at least one of the things
3    that you did for FGIC in paragraph 12 is
4    correct?
5             MR. LAWRENCE:  Objection; vague.
6        A.   As I highlighted the
7    paragraph 12, I believe is correct.
8        Q.   In connection with what you --
9    the work you did for FGIC, did you produce a
10   written deliverable?
11       A.   Again, I think we are going into
12   confidential matters.  Anything related to
13   that, unless -- I would like to ask you
14   whether there is an objection to that.
15            MR. LAWRENCE:  It is FGIC's
16       objection.  So FGIC will object if
17       they think that it goes beyond the
18       bounds of what you can testify to with
19       your relationship.
20       Q.   My question was, again, in
21   connection with the work you did for FGIC,
22   did you produce a written deliverable?
23            MR. GREEN:  The witness can
24       answer that question with a yes or
25       a no.

1                  R. D'VARI

2      A.    Yes.
3      Q.    Did that written deliverable
4  contain runoff projections?
5            MR. GREEN:  I will object to the
6  question to the extent it is seeking
7  confidential and privileged
8  information about a previous
9  engagement that's not related to this
10 deposition or this matter.
11           MR. CARNEY:  Are you instructing
12 him not to answer that question?
13           MR. GREEN:  He can answer the
14 question with a yes or a no.
15     A.    Please repeat the question.
16     Q.    Certainly.  Did the written
17 deliverable contain runoff projections?
18     A.    Yes.
19     Q.    Okay.  And did that written
20 deliverable contain stress case assumptions
21 for FGIC's insured portfolio?
22     A.    Yes.
23     Q.    Did that written deliverable
24 contain Base Case assumptions for FGIC's
25 insured portfolio?

Confidential

Page 39

1                    R. D'VARI

2        A.     Frankly, I don't recall.

3        Q.     Did that written --

4        A.     Let me -- most likely not but I
5   don't remember.

6        Q.     Why would you say "most
7   likely not"?

8               MR. GREEN:  I will object to
9   this question to the extent it is
10  seeking information about a previously
11  engagement that's confidential.

12              MR. CARNEY:  Are you instructing
13  him not to answer?

14              MR. GREEN:  To the he's going to
15  reveal confidential information, yes.

16              MR. LAWRENCE:  I think he has
17  already answered.

18       Q.     Let me ask the question again
19  with that objection.  My question was, did
20  that written deliverable contain Base Case
21  assumptions for FGIC's portfolio?  You
22  answered frankly, I don't recall.  Then you
23  said most likely not but I don't remember.
24              And then I just asked you why
25  would you say most likely not and we had

1          R. D'VARI

2     Mr. Green interpose his objection, and I am
3     asking you the question again. Why would you
4     say that your written deliverable to FGIC
5     most likely did not contain a Base Case
6     assumption for FGIC's insured portfolio?
7          A.    I don't have any further comment.
8                MR. GREEN: Same objection.
9                MR. LAWRENCE: Let FGIC object,
10    Dr. D'Vari.
11               MR. GREEN: Same objection.
12         A.    I am being instructed not to
13    answer.
14               MR. CARNEY: Did you instruct
15    him not to answer?
16               MR. GREEN: To the extent it is
17    revealing confidential information,
18    yes. Or privileged information, yes.
19         Q.    And you believe my question
20    implicates privileged and confidential
21    information?
22         A.    I do believe.
23         Q.    As to why there is no Base Case
24    scenario in your written to FGIC, correct?
25         A.    Correct.

1                    R. D'VARI

2        Q.    Now, can you tell me whether your
3    written deliverable contained anything other
4    than runoff projections and stress case
5    assumptions for FGIC's insured portfolio?
6            MR. GREEN:   I object to this
7    questioning.
8            MR. CARNEY:   It is a yes or no
9    question, anything other than.
10           MR. GREEN:   I object to the
11   question.
12           MR. CARNEY:   Are you instructing
13   him not answer?
14           MR. GREEN:   Yes.
15           MR. CARNEY:   You are instructing
16   him not to answer, yes or no, whether
17   or not his report to deliver to FGIC
18   contained anything other than runoff
19   projections and stress case
20   assumptions for FGIC's insured
21   portfolio?  You won't let him answer
22   yes or no to that question?
23           MR. GREEN:   Yes, I think that's
24   requiring him to reveal confidential
25   information about the previous

1              R. D'VARI
2    engagement.  You have asked a number
3    of questions like this and you are
4    getting the same objection, yes.
5         Q.    Are you abiding by FGIC's counsel
6    instruction not to answer?
7         A.    Yes.
8              MR. LAWRENCE:  It is improper to
9    ask whether he is abiding by -- by a
10   prior engagement where it is their
11   privilege to waive to say to the
12   witness are you abiding by it.  If he
13   is instructed not to answer by counsel
14   in a prior engagement, he has to
15   follow that.  It is improper to ask
16   him as if it is his choice.
17             MR. CARNEY:  I completely
18   disagree with that but duly noted.
19             MR. SHORE:  As far as perfecting
20   our objection and our right to seek
21   discovery, are you saying that every
22   time he is instructed not to answer,
23   the witness is not going to answer and
24   we don't have to follow-up?
25             MR. LAWRENCE:  It is not the

1                    R. D'VARI

2       debtor's privilege to waive.  It is

3       FGIC's privilege to waive.  It is an

4       unrelated matter.

5            MR. SHORE:  You're not answering

6       my question.  Every time he is

7       instructed not to answer, do we need

8       to follow-up with the perfection of

9       our discovery objection by asking the

10      witness are you going to follow that

11      instruction?  That's all.

12           MR. LAWRENCE:  You don't have to

13      ask the witness whether he will follow

14      the instruction.  The witness is not

15      going to disobey instructions from

16      counsel.

17           MR. SHORE:  Thank you.

18   BY MR. CARNEY:

19      Q.   This is another yes or no

20   question, I want a yes or no answer.  Did

21   anyone within NewOak review the results of

22   your written deliverable to FGIC with Lazard?

23           MR. LAWRENCE:  Objection.  Vague

24   as to time.

25      Q.   In late 2011.

1                     R. D'VARI

2           MR. SHORE:  I will take it out

3      of turn and ask the question, if you

4      want me to.

5           THE WITNESS:  Please.

6           MR. SHORE:  Go ahead.  I got my

7      list.  I will get to it later.

8           MR. LAWRENCE:  No one wants to

9      ask the question.

10          MR. SHORE:  I don't have -- it

11     is out of deference.

12          THE WITNESS:  I will call my

13     secretary and cancel my matinee.

14          MR. LAWRENCE:  Go ahead.

15   BY MR. CARNEY:

16     Q.    Did you consider any prior work

17   in connection with your opinions here?

18     A.    No.

19          MR. SHORE:  Did your team?

20     Q.    Did your team?

21     A.    No.

22     Q.    Have you ever analyzed any of

23   these trusts before on Schedule 3 in

24   connection with any other -- any other -- at

25   any other time, other than in this engagement

Confidential

Page 66

1           R. D'VARI

2   with ResCap?

3           MR. GREEN:  I am going to object

4   to that question.  If it is asking

5   about his previous work for FGIC on a

6   separate matter, that's confidential.

7           MR. CARNEY:  I am asking if he

8   ever, in any capacity before you get

9   your authority or not, I am asking if

10  him ever analyzed the trusts in any

11  capacity before.  It is a yes or no.

12          MR. GREEN:  Other than his

13  previous work for FGIC?

14          MR. SHORE:  I think a yes or no

15  answer will not reveal if it had been

16  done for FGIC.

17          MR. GREEN:  If it was only for

18  previous work for FGIC, yes, it will

19  reveal the answer for that.  Logically

20  it would.

21          MR. CARNEY:  Logically, I am

22  asking if he ever looked at these

23  before in connection with any other

24  engagement.  That's all I want to know

25  right now.

Page 70

1           R. D'VARI
2  So I would not be able to tell you whether we
3  have or not because then I would be perjuring
4  myself if I answered.
5       Q.   So you don't know?
6       A.   I don't know.
7            MR. CARNEY:  I want to take a
8       quick break for a couple of minutes,
9       if that's all right.
10           MR. LAWRENCE:  That's fine
11      with us.
12           (Whereupon, a recess was held.)
13  BY MR. CARNEY:
14      Q.   I would like to -- going to ask
15  you a question I previously asked again, and
16  based on discussion I had with FGIC counsel,
17  and if you would look at Schedule 1 to your
18  Declaration again.
19      A.   Sure.  Did you analyze any of
20  these trusts on Schedule 1 in connection with
21  the deliverable you produced to FGIC that we
22  discussed earlier?
23           MR. GREEN:  The witness can
24      answer that question with a yes or
25      a no.

12-12020-mg    Doc 4712-13    Filed 08/15/13    Entered 08/15/13 16:45:44    Exhibit C
Part 2    Pg 11 of 11
Confidential

Page 71

```
 1                      R. D'VARI
 2         A.    Yes.
 3         Q.    Can you tell me which ones?
 4              MR. GREEN:   You can answer that
 5    question.
 6         A.    All of them.
 7         Q.    All of them?
 8         A.    Only -- of the trusts themselves
 9    or the tranches?  Yes, we have looked at all
10    of these.  But not as it relates to
11    Question 1.  But, again, the answer is all of
12    them as far as looking at bonds -- I have to
13    be very careful.  The Question 1 is not
14    really relates to that assignment.  What we
15    are talking about is our work is tranche
16    based.
17         Q.    Okay.  So --
18         A.    Did we look at these trusts, all
19    of these trusts were looked at.
20         Q.    Okay.  If you turn to Schedule 3
21    of your Declaration.
22         A.    Yes.
23         Q.    Could you describe for me what is
24    on Schedule 3 of your Declaration?
25         A.    It lists the tranches of the FGIC
```