**QUINN EMANUEL URQUHART
  & SULLIVAN, LLP**
Susheel Kirpalani
Jennifer Barrett
Scott C. Shelley
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100

**QUINN EMANUEL URQUHART
  & SULLIVAN, LLP**
Eric D. Winston (admitted *pro hac vice*)
865 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Counsel for*

*AIG Asset Management (U.S.), LLC. et al.,*
*Allstate Insurance Company, et al.,*
*Massachusetts Mutual Life Insurance Company, and*
*The Prudential Insurance Company of America, et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**REPLY OF AIG ASSET MANAGEMENT (U.S.), LLC,
ALLSTATE INSURANCE COMPANY, MASSACHUSETTS MUTUAL
LIFE INSURANCE COMPANY, AND THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA TO OBJECTION OF NATIONAL CREDIT
UNION ADMINISTRATION BOARD TO DISCLOSURE STATEMENT**

AIG Asset Management (U.S.), LLC ("AIG"), Allstate Insurance Company ("Allstate"), Massachusetts Mutual Life Insurance Company ("MassMutual"), and The Prudential Insurance Company of America ("Prudential," and, with AIG, Allstate, and MassMutual, the "Investors"), holders of general unsecured claims against Residential Capital, LLC and its debtor-subsidiaries (the "Debtors"), by and through their undersigned counsel, hereby submit this reply to the Objection of National Credit Union Administration Board to Disclosure Statement, dated August

01456.62468/5465857

5, 2013 [Docket No. 4509] (the "NCUAB Objection"), and in support thereof respectfully state as follows:

## INTRODUCTION

1.  The Investors, who collectively hold more than $1.75 billion in fraud and other claims arising under state and federal securities laws and common law, are parties to the Plan Support Agreement, dated as of May 13, 2013 (the "PSA") and approved by the Court by order dated June 26, 2013.  Under the PSA, $225.7 million (based on certain assumptions and subject to adjustments) was allocated for distribution to the twenty-one (21) Private Securities Claimants (the "Private Securities Claims Fund") that timely asserted (or consensually tolled) claims against Ally Securities in the aggregate estimated amount of $1,409,892,416, and against the Debtors and AFI in the aggregate estimated amount of  $2,429,425,521.[1]  Following extensive negotiations with the other Private Securities Claimants, the Investors are pleased to report that they have reached an agreement in principle among all Private Securities Claimants regarding the allocation of the Private Securities Claims Fund, which should remove a major obstacle to confirmation of the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors (the "Plan").[2]

2.  The National Credit Union Administration Board ("NCUAB") is not a Private Securities Claimant under the Plan.  As of the date the PSA was executed by all parties, the NCUAB had not filed a lawsuit against Ally Financial, Inc. or any of its non-Debtor affiliates

---

[1]  Based on recent adjustments driven by an increase in the estimated value of estate assets (which continues to change as estimates are updated), the Disclosure Statement currently projects the amount of the Private Securities Claims Fund will be $235 million.

[2]  Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Plan.

01456.62468/5465857                                   2

12-12020-mg    Doc 4721    Filed 08/16/13    Entered 08/16/13 11:40:32    Main Document
Pg 3 of 9

(each, an "Ally Entity", and collectively, the "Ally Entities").[3] Nor did NCUAB have a tolling agreement with any Ally Entity. Instead, unlike the Private Securities Claimants, NCUAB appears to rely on an unproven theory of equitable tolling that is inconsistent with Second Circuit law[4] to support putative claims against one or more of the Ally Entities. Thus, while it is not clear whether NCUAB will be able to assert any valid claims against any of the Ally Entities, or whether its litigation claims against any of the Debtors will be allowed and/or may be the subject of subordination litigation under section 510 of the Bankruptcy Code, what is clear is that (a) NCUAB's putative claims are legally distinguishable from those of the Private Securities Claimants, (b) the basis for that distinction was adequately disclosed, and (c) the Plan properly classifies NCUAB's claims as General Unsecured Claims and not Private Securities Claims. Accordingly, no further disclosure is required concerning the treatment of Private Securities Claims.

## REPLY

3.      The NCUAB Objection raises seven objections to the Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors (the "Disclosure Statement"). The Investors believe that each of these objections has been addressed by amendments to the Disclosure Statement (the "Amendments") that the Debtors and the Creditors' Committee, with the assistance of the Investors, prepared and will be filing contemporaneously herewith.

4.      **NCUAB's First Objection** – NCUAB's first objection is that the Disclosure Statement does not disclose the expected recoveries on the Private Securities Claims against the

---

[3]   To date, NCUAB still has not filed a lawsuit against any Ally Entity.

[4]   The theory of equitable tolling and relation back on which NCUAB apparently relies was rejected recently by the Second Circuit Court of Appeals. *See Police and Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*, 2013 WL 3214588 (2d Cir. June 27, 2013).

Debtors. As set forth in the Disclosure Statement, although the Private Securities Claimants hold claims against the Debtors and the Ally Entities, they have agreed to a settlement where they will limit their recovery to the funds set aside for them as contemplated by the PSA, and will waive any entitlement to recover additional sums as a general unsecured creditor of the Debtors or from the funds provided the members of the NJ Carpenters Securities Class Action. The recovery on contested litigation claims like these varies depending on the facts and circumstances pertaining to each claim, but in each case were negotiated by the affected creditor providing a consensual Third Party Release.

5. As the Court can appreciate, each of the Private Securities Claims relates to different securities, relies on different legal theories and applicable law, and is at a different stage of litigation in what would undoubtedly be costly and protracted to adjudicate in various courts around the country. Nevertheless, obtaining third-party releases from each of these claimants in favor of Ally Entities has been and continues to be an integral part of any consensual plan. Making this even more challenging is that each litigant assesses its leverage differently and obtaining uniform views on which particular claims are meritorious or warrant what level of settlement consideration has required an unprecedented effort on the part of the Investors. Nevertheless, the Investors were tasked with obtaining support for the Plan and obtaining, if at all possible, consensual releases in favor of the Ally Entities utilizing only the funds made available for Private Securities Claimants.

6. Accordingly, as set forth in the Amendments, in seeking to allocate the Private Securities Claims Fund among the Private Securities Claimants in a rational and fair manner that would garner the broadest level of support, the Investors established a tiering structure that took

into account the nature and strength of the legal theories underpinning a claim, the litigation posture of each claim, and any unique characteristics of a claim.

7.  Significantly, following extensive discussions with counsel to the Investors, each of the Private Securities Claimants has indicated that it is satisfied with the distribution it would receive and is willing to provide the consensual third-party release contemplated by the Plan. The Investors are now in the process of finalizing a written agreement with the other Private Securities Claimants to memorialize the allocation of the Private Securities Claims Fund and to lock in their support for the Plan upon approval of the Disclosure Statement.

8.  NCUAB asserts that it is "entitled to know how the recovery for allowed, non-subordinated claims based on securities claims against the Debtors that are resolved through the PSC Trust compares to the recovery for its Claims." NCUAB Objection, ¶ 14. The Investors submit that NCUAB's apparent premise – that NCUAB's recovery as a general unsecured creditor should parallel the recovery of Private Securities Claimants – is flawed. NCUAB had not timely filed or consensually tolled any claims it may have against the Ally Entities, and is not entitled to similar treatment to those that had. The treatment afforded to Private Securities Claimants is the result of hard-fought, arm's length, good faith mediation between the Investors (recognizing the need to attempt to solve for consensual settlement values for all defined members of the Private Securities Claimants class), on the one hand, and the Ally Entities, on the other—the fact that NCUAB is a general unsecured creditor who wishes it could be included in the definition of Private Securities Claimants is irrelevant. The disclosure about why it is not is abundant.

9.      In any event, based on the additional disclosures included in the Amendments, as outlined above, the Investors submit that the disclosures concerning the Private Securities Claims is more than adequate.

10.     **NCUAB's Second Objection** – NCUAB's second objection is that the Disclosure Statement does not adequately explain the treatment of NCUAB's claims. The Investors disagree. As NCUAB acknowledges, the Disclosure Statement clearly classifies NCUAB's claims a general unsecured claims that are projected to receive 9% recovery of the allowed amount. The Disclosure Statement also states that NCUAB's claims are subject to subordination under Bankruptcy Code section 510. The treatment of NCUAB's claim is plainly disclosed. Nonetheless, NCUAB again raises the issue of why Private Securities Claims are given what NCUAB views as "greater recoveries," and why they are not subject to subordination.

11.     Regarding the first point, the Disclosure Statement clearly explains, as did the PSA, the identity of the holders of the Private Securities Claims and the basis for including such creditors in that class. With respect to NCUAB's assertion that the Disclosure Statement fails to explain "why the Debtors may seek to subordinate the NCUAB Claims even if they are allowed, when they have agreed not to subordinate other claims that, like the NCUAB Claims, rest on unliquidated securities claims against the Debtors." NCUAB Objection, ¶ 17. The answer to this, set forth in the Amendments, is simple: The Debtors, Ally, and the Investors (all of which were then embroiled in subordination litigation) reached a global settlement, which has been embodied in the PSA. The Investors agreed to compromise their claims by accepting a portion of the Ally Contribution and sharing that with a defined group of similarly situated claimants; in exchange, the Investors insisted that their claims not be subject to further diminution (or elimination) through a subordination challenge, which was already the subject of competing

summary judgment motions. In addition, claims against the non-Debtor Ally Entities would not, in any event, be subject to any subordination challenge, so in that regard, the agreement not to seek subordination against the Private Securities Claims was inconsequential to the overall settlement.

12. **NCUAB's Third Objection** – NCUAB's third objection is that the description of the Private Securities Claims resolved through the PSC Trust is inadequate. In this regard, the Investors submit that the original Disclosure Statement was not accurate in referring to "tens of billions of dollars of Private Securities Claims." As noted above, the estimated total of Private Securities Claims is approximately $2.4 billion. The Amendments correct the disclosure on this point.

13. **NCUAB's Fourth Objection** – NCUAB's fourth objection is that the Disclosure Statement contains an inadequate explanation for the discrepancy between the amount of the PSC trust set forth in the Disclosure Statement ($235 million) and the amount in the Plan Term Sheet ($225.7 million). The Amendments provide the requested disclosure on this point, noting that the $235 million figure is the current projected amount that will be funded to the PSC Trust, and that the number increased from $225.7 million based on projections that net estate asset value will be greater than projected at the time the PSA was executed.

14. **NCUAB's Fifth Objection** – NCUAB's fifth objection is that the Disclosure Statement fails to state the basis for the allowed claims of the Settling Private Securities Claimants. The Amendments address this concern, explaining that as part of a global settlement, the Investors provided confidential loss information to the Debtors and the Ally Entities, and the allowed amount of their claims was agreed – just as the allowed amount of the claims of other parties (including MBIA, FGIC and the RMBS trustees) were agreed in connection with

approval of the PSA. Because the allowed amounts of the claims are based on a settlement that by its own terms never included NCUAB, NCUAB cannot extract a precise formula "to better predict the level at which its claims would be allowed were it a Private Securities Claimant." NCUAB Objection, ¶ 25.

15. **NCUAB's Sixth Objection** – NCUAB's sixth objection relates to the description of the consequences of a Private Securities Claimant opting out, or not opting out, of the *N.J. Carpenters* class action. The Amendments address each of the concerns raised here by NCUAB, and clarify that under all circumstances, Private Securities Claimants will receive payments in respect of their Private Securities Claims only from the PSC Trust.

16. **NCUAB's Seventh Objection** – NCUAB's final objection is that the Disclosure Statement fails to adequately describe the judgment reduction provision. As set forth in the Amendments, the judgment reduction provision has been revised and simplified so that it operates only to preserve whatever rights a non-settling co-defendant might have under applicable statutory or common law, and does not provide any enhanced rights for defendants or diminish rights for plaintiffs. The Investors submit that the revised provision addresses the concerns raised by NCUAB.

## CONCLUSION

17. For all the foregoing reasons, the Investors submit that the NCUAB Objection should be overruled in its entirely.

*[signature page follows]*

                                    Respectfully submitted,

Dated: August 16, 2013
       New York, New York

                                **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

                                /s/ Susheel Kirpalani
                                Susheel Kirpalani
                                Jennifer Barrett
                                Scott C. Shelley

                                51 Madison Avenue, 22nd Floor
                                New York, New York 10010
                                Telephone: (212) 849-7000
                                Facsimile: (212) 849-7100

                                Eric D. Winston (admitted *pro hac vice*)
                                865 South Figueroa Street
                                Los Angeles, California 90017
                                Telephone: (213) 443-3000
                                Facsimile: (213) 443-3100

                                *Counsel for AIG Asset Management (U.S.), LLC, Allstate Insurance Company, Massachusetts Mutual Life Insurance Company, and The Prudential Insurance Company of America*

01456.62468/5465857