## Exhibit 1

## DISCLOSURE STATEMENT OBJECTION RESPONSE CHART

*As of 8/16/2013*

| | OBJECTING PARTY | | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|---|
| 1. | **Nassau County Treasurer**<br><br>**[Docket No. 4387]** | | *The Plan is Unconfirmable Because It Lacks Information Regarding the Tax Claims Filed by Nassau County* | | |
| | | (a) | The Disclosure Statement lacks adequate information because it fails to disclose any information with respect to the property tax arrearage on the Debtors' property located in Nassau County. | The Plan Proponents are not required to specifically identify the property taxes owed on each of the Debtors' properties.  The treatment of Priority Tax Claims and Administrative Claims arising from post-petition tax obligations are described in Article III of the Disclosure Statement. | **Withdrawn** |
| | | (b) | The Disclosure Statement should be denied because the Plan is unconfirmable as it fails to recognize the Nassau County Treasurer's secured claim or account for said claim in any way. | The Plan Proponents are not required to recognize the Nassau County Treasurer's claim  in the Disclosure Statement.  The Plan Proponents reserve all rights with respect to the allowance or objections to claims.<br><br>Though the Plan Proponents believe the treatment of tax claims is a confirmation issue, Article V.A.3 of the Disclosure Statement and Article II.C of the Plan have been modified to clarify the treatment of Priority Tax Claims and Administrative Claims to assure compliance with applicable provisions of the Bankruptcy Code as follows:<br><br>    Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, the Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim, in accordance with Bankruptcy Code section 1129(a)(9)(C), the full unpaid amount of such Allowed Priority Tax Claim in Cash on, or as soon as practicable after, the latest of: (1) the Effective Date; (2) the date such Allowed Priority Tax Claim becomes Allowed; or (3) in regular payments over a period of time not to exceed five (5) years after the Petition Date with interest at a rate determined in accordance with section 511 of the Bankruptcy Code, provided, that such Allowed Priority Tax Claims shall not be treated in a manner less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than Cash payments made to a class of creditors under section 1122(b)), and provided, further, that such election shall be without prejudice to the Liquidating Trust's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.  To the extent a holder of an Allowed Priority Tax Claim holds a valid lien (a "Tax Lien") for outstanding and unpaid real property taxes against property of the Debtors or the Liquidating Trust, as applicable, any liens imposed on account of such Claim shall remain unimpaired | **Withdrawn** |

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | until such Allowed Priority Tax Claim is paid in full. | |
| **2.** Wendy Alison Nora [Docket No. 4388][1] | *The Disclosure Statement Lacks Adequate Information* | | |
| | (a)  The Disclosure Statement lacks adequate information because if fails to include information regarding: | The Disclosure Statement contains sufficient disclosures with respect to the treatment of Borrowers under the Plan.  Consistent with Ms. Nora's objection, the Disclosure Statement includes information regarding: (i) the Debtors' obligations under the Consent Order, (ii) the funding of the Borrower Claims Trust, and (iii) treatment of borrowers.  *See* Disclosure Statement at Art. II.H, III.D.3(i). | **Addressed** |
| | i.  how the Debtors and AFI intend to satisfy their obligations under the DOJ/AG Consent Order and any impact of the Ally Release on such obligations; | Article II.H of the Disclosure Statement has been modified to provide:

The Plan provides for the treatment of claims asserted by Borrowers through the establishment of the Borrower Claims Trust. On the Effective Date, the Borrower Claims Trust will be funded in cash with $57.6 million plus the Borrower Trust True-Up, if any. The Borrower Claims Trust will be sufficiently funded such that the estimated Allowed Borrower Claims will receive a recovery from the Borrower Claims Trust comparable to recoveries of unsecured Creditors against the applicable Debtor Group against which the Borrower Claims would otherwise have been asserted. The Plan Proponents currently estimate that, based on estimated Allowed Borrower Claims at each of the Debtor Groups, an amount of $57.6 million will be sufficient to provide holders of Borrower Claims with a comparable recovery from the Borrower Claims Trust to that of general unsecured creditors at the respective Debtor Groups. Pursuant to the Borrower Trust True-Up, however, to the extent further analysis of the estimated Allowed Borrower Claims reveals that the projected $57.6 million to be funded to the Borrower Claims Trust will be insufficient to provide holders of Borrower Claims with a comparable recovery to general unsecured creditors of the applicable Debtor Groups, on the Effective Date the Debtors will fund the Borrower Claims Trust with an additional amount necessary to provide comparable recoveries to holders of Borrower Claims. The amount of the Borrower Trust True-Up, if any, will be set forth in the Plan Supplement and filed with the Bankruptcy Court no later than ten (10) days prior to the Voting Deadline.

The establishment of the Borrower Claims Trust—which will be funded with Cash, | |
| | ii.  (a) how the amount proposed to be paid to borrowers was determined, (b) the total estimated value of borrower claims, and (c) the pro rata share of distribution to holders of borrower claims; and | | |
| | iii.  the basis for treating borrowers differently from other unsecured claims. | | |

---

[1] The Plan Proponents believe that the remainder of the objection is inapplicable to the approval of the Disclosure Statement.  In her objection, Ms. Nora also asserts that the Disclosure Statement contains several other deficiencies in its disclosure.  The Plan Proponents dispute Ms. Nora's contentions, will not address them herein, and have not made additional modifications to the Disclosure Statement and Plan, as applicable, on account of such unfounded allegations.

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | in contrast to the Units that will be funding the Liquidating Trust—allows for Borrower Claims to be addressed in a streamlined manner, with the oversight of a Borrower Claims Trustee familiar with issues unique to Borrowers and Borrower Claims. The Borrower Claims Trust Agreement will establish procedures for the resolution of disputed Borrower Claims, whether pending at the time of confirmation and thereafter. In addition, by funding the Borrower Claims Trust with Cash (rather than Units such as those funding the Liquidating Trust), borrowers will be able to receive immediate Cash payments on account of their Allowed Borrower Claims, and such recoveries will be unaffected by any negative variation in the projected distributable value for unsecured creditors as a result of the wind down of the Debtors' Estates.<br><br>In addition to the amounts that will be funded to the Borrower Claims Trust, the Board of Governors of the Federal Reserve System (the "FRB") and the Debtors have agreed to an amendment to the Consent Order, pursuant to which the Debtors have funded approximately $230 million in Cash that will be paid directly to Borrowers, in full satisfaction of the foreclosure review requirements under the Consent Order. By entering into the amendment to the Consent Order, the Debtors eliminated costly professionals' fees associated with the foreclosure review, and, by entering into the Global Settlement, the Debtors resolved outstanding litigation with AFI regarding the allocation of liabilities for the foreclosure review obligations and ensured expedited payment of remediation payments to Borrowers. To the extent a holder of a Borrower Claim receives payment pursuant to the settlement of the Debtors' obligations under the Consent Order, the amount of such Borrower Claim shall be reduced in an amount equal to the amount received.<br><br>Based on the inclusion of the foregoing disclosures, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |

3

| | OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| 3. | **San Bernardino Taxing Authority**<br><br>**[Docket No. 4462]** | *The Disclosure Statement Lacks Adequate Information Regarding the Treatment of Tax Claims* | | |
| | | (a)  The Disclosure Statement lacks adequate information because it fails to disclose:<br><br>i.   information regarding county property taxes;<br><br>ii.  the treatment of pre-petition and post-petition secured property taxes;<br><br>iii. that governmental units are not required to submit a request for payment of an administrative expense pursuant to section 503(b)(1)(D) of the Bankruptcy Code; and<br><br>iv.  the applicable state law interest rates, lien retention and default provisions with respect to San Bernardino's property tax claims. | The Plan Proponents are not required to specifically identify the property taxes owed on each of the Debtors' properties, nor are they required to specifically identify state law interest rates, lien retention and default provisions for all states in which the Debtors may owe taxes.  Moreover, the treatment of Priority Tax Claims and Administrative Claims arising from postpetition tax obligations are described clearly in Article III of the Disclosure Statement.<br><br>The Plan Proponents have modified the provisions relating to the payment of Administrative Claims to reflect that governmental units are not required to submit a request for payment of an administrative expense pursuant to section 503(b)(1)(D) of the Bankruptcy Code:<br><br>Except as provided for in the Plan or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Claims (other than holders of Administrative Claims paid in the ordinary course of business, holders of Professional Claims, holders of Claims for fees and expenses pursuant to Section 1930 of Chapter 123 of title 28 of the United States Code, and holders of Postpetition Intercompany Balances) must File and serve on the Plan Proponents or the Liquidating Trust, as applicable, requests for the payment of such Administrative Claims not already Allowed by Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Claims Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors, the Liquidating Trust, or their assets or properties, and such Claims shall be deemed discharged as of the Effective Date.<br><br>*See* Disclosure Statement at Art. V.1.b; Plan at Art. II.A.2.<br><br>Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the Disclosure Statement. | **Addressed** |
| | | *The Plan is Not Confirmable* | | |
| | | (b)  The Disclosure Statement should be denied because the Plan is unconfirmable as it fails to include an adequate description of how pre- and post-petition property tax claims are to be treated under | This is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation.  Nonetheless, the Plan Proponents believe that the Plan provisions—modified to clarify the treatment of the Priority Tax Claims and Administrative Claims under the Plan—comply with the applicable provisions of the Bankruptcy Code.  *See* Disclosure Statement at Art. V.A.3; Plan at Art. II.C.  The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan, including the treatment of tax claims therein. | **Confirmation Objection** |

4

| | OBJECTING PARTY | | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|---|
| | | | the Plan. | | |
| 4. | Sidney and Yvonne Lewis [Docket No. 4505] | (a) | Borrower Objection | The Lewis' have failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by the Lewis' should be overruled by the Court. To the extent the Lewis' objection relates to the sufficiency of the Debtors' disclosures on borrower matters, the Disclosure Statement has been modified to include additional disclosures regarding the treatment of borrowers and the funding of the Borrower Claims Trust. *See* Disclosure Statement at Art. II.H. | **Inapplicable** |
| 5. | National Credit Union Administration Board [Docket No. 4509] | (a) | The Disclosure Statement fails to adequately disclose expected recoveries on Private Securities Claims. | The NCUAB (which is not a Private Securities Claimant) lacks standing to object to disclosures regarding the treatment of Private Securities Claims, which will have no impact on the NCUAB. In any case, the revised Disclosure Statement reports that, based on the allocation agreed among the Private Securities Claimants, "recovery for particular claims varies dramatically, depending on the facts and circumstances pertaining to each claim, though specific details have not yet been finalized in definitive documents and are therefore not available for disclosure at this time." *See* Disclosure Statement at Art. V.C.2. The revised Disclosure Statement also includes numerous details regarding the framework underlying the Private Securities Claimants' allocation agreement. *See id.* | **Unresolved** |
| | | (b) | The Disclosure Statement fails to provide sufficient information regarding the treatment of the NCUAB's claims, including: | The revised Disclosure Statement expands on characteristics of the Private Securities Claims that defined the boundaries of the class (excluding the NCUAB). The Disclosure Statement also explains that the aggregate amount allocated for the Private Securities Claims reflects a settlement of subordination issues (just as subordination of the NCUAB's claim could be settled, per ongoing discussions between the Creditors' Committee and the NCUAB). | **Partially Resolved** |
| | | | i.  why the NCUAB claims are treated differently than the Private Securities Claims, including why the Private Securities Claims are not subject to subordination (*unresolved*); and | Private Securities Claims comprise securities litigation claims against the Debtors and Ally, arising from the purchase or sale of RMBS, asserted by parties who have filed a lawsuit against the Debtors and Ally (including Ally Securities, LLC) within the relevant limitations period or who are Tolled Claimants (defined below). No Private Securities Claims rely on statutory or equitable tolling or have an untested or uncertain right to pursue securities litigation claims against the Debtors and Ally. To the contrary, the Private Securities Claimants asserted or conspicuously preserved securities claims against Ally. As a result, they were identifiable as parties with concrete relevance to a global settlement based on their third party claims. The Plan Proponents have established that Private | |
| | | | ii.  how the NCUAB claims would be treated if | | |

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | allowed (*resolved*). | Securities Claimants include only 21 entities, or groups of affiliated entities.<br><br>The creation of the Private Securities Claims Trust resolves nearly two and one-half billion dollars of securities law claims against the Debtors and non-Debtor affiliates arising from the Debtors' loan origination activities and the structuring, sponsoring, underwriting, and sale of RMBS. The Private Securities Claims Trust creates a streamlined process for the distribution recoveries to the Private Securities Claimants with alleged Claims against the Debtors and avoids significant litigation regarding some of the largest claims asserted against the Debtors, including litigation over the validity and value of the Private Securities Claims and whether such claims should be subordinated pursuant to Section 510 of the Bankruptcy Code.<br><br>*See* Disclosure Statement at Art. II.E.<br><br>The Plan Proponents submit that these disclosures are exhaustive; remaining concerns of the NCUAB, if any, reflect confirmation issues rather than a legitimate request for disclosure.<br><br>Other changes reflect a consensual resolution of the NCUAB's questions about its treatment. For example, the Disclosure Statement has been clarified to affirm that certain reserves will be maintained to cover disputed claims that are subsequently allowed. *See* Disclosure Statement at Art. I.D. n.14. | |
| | (c) The Disclosure Statement fails to explain the basis for the statement regarding the settled amounts of the Private Securities Claims against the Debtors. | The Disclosure Statement has been modified to clarify that the claims resolved through the Private Securities Claims Trust amount to approximately $2,429,425,521 in aggregate securities law claims against the Debtors, and approximately $1,409,892,416 in aggregate securities law claims against Ally Securities. *See* Disclosure Statement at Art. V.C.2. | **Resolved** |
| | (d) The Disclosure Statement lacks explanation for the discrepancy in allocation of funds of the Private Securities Claims Trust in the "Term Sheet" ($225.7 million) and the Disclosure Statement ($235 million). | The Disclosure Statement has been modified to clarify that the increased allocation to the Private Securities Claims Trust results from the Debtors' assets increasing in value from the date of execution of the Plan Support Agreement to the filing of the Disclosure Statement. *See* Disclosure Statement at Art. II.L. n.42. | **Resolved** |

6

| | OBJECTING PARTY | | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|---|
| | | (e) | The Disclosure Statement fails to explain the basis for the Allowed claims of Private Securities Claimants. | The Disclosure Statement has been revised to describe the manner in which the Settling Private Securities Claimants' and the other Private Securities Claimants' loss amounts were determined: In the case of the Settling Private Securities Claimants, allowed claim amounts were agreed pursuant to the PSA based on a settlement, supported by confidential loss information, which will be subject to approval pursuant to Bankruptcy Rule 9019.  In the case of the other Private Securities Claimants, a separate verification process occurred following the PSA's approval whereby parties demonstrated actual purchase prices for the relevant RMBS (less principal received) and either an arms' length sale price or published market price, both as of the Petition Date. *See* Disclosure Statement at Art. V.C.2.  The Plan Proponents submit that this disclosure is complete and more than adequate under section 1125 of the Bankruptcy Code.  In any case, because the Private Securities Claimants will strictly recover from the fixed amount allocated for the Private Securities Claims Trust, "allowed" claim amounts will not affect the recovery of other creditors like the NCUAB.  Accordingly, such figures have little salience outside of the Private Securities Claim Trust and the NCUAB's standing to demand this information is questionable. | **Unresolved** |
| | | (f) | The Disclosure Statement is ambiguous regarding the Private Securities Claimants eligibility to participate in the NJ Carpenters Settlement, and the treatment of opt-outs from the NJ Carpenters Class Settlement. | The Disclosure Statement has been revised to reiterate that the Private Securities Claimants sole source of recovery under the Plan, under all circumstances, is through the Private Securities Claims Trust.  *See* Disclosure Statement at Art. II.F. | **Resolved** |
| | | (g) | The Disclosure Statement fails to adequately explain the judgment reduction provision of the Plan. | The judgment reduction mechanism contained in the Plan has been simplified so as to merely preserve whatever rights a non-settling co-defendant might have, without providing enhanced rights to defendants.  *See* Disclosure Statement at Art. V.W.10; Plan at Art. IX.J. | **Resolved** |
| 6. | **Federal Home Loan Mortgage Corp.** | (a) | The Disclosure Statement schedules should be amended to indicate: | Article II.C of the Disclosure Statement provides a description of the treatment of the RMBS Claims in the Plan, and the Disclosure Statement was carefully drafted to strike a needed balance between brevity and an accurate explanation of the treatment of RMBS Claims. | **Addressed** |
| | | i. | the correct amounts that each RMBS Trust will | In response to Freddie Mac's objection, the Plan Proponents agreed to revise the description of the | |

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| ("Freddie Mac")<br><br>[Docket No. 4580] | recover under the RMBS Settlement; and<br><br>ii.  recoveries broken down by "Loan Group." | RMBS Trust Allocation Protocol in Article IV.A.17 of the Disclosure Statement, including a discussion of the mechanisms for determining the ultimate recovery for each RMBS Trust.<br><br>The RMBS Claims Schedules attached to the Plan have likewise been updated based on further due diligence, and the information contained therein has been amended to provide more information on the treatment of each RMBS Trust and, where applicable, loan groups within that trust.<br><br>Based on the inclusion of the foregoing disclosures, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | (b)  The Disclosure Statement fails to disclose that Freddie Mac and other Investors have objected to the FGIC Settlement. | Article II.D of the Disclosure Statement provides an overview of the FGIC Settlement and the Debtors' motion seeking approval of the FGIC Settlement in the Bankruptcy Court and the FGIC Rehabilitation Proceedings. In response to Freddie Mac's objection, the Disclosure Statement has been amended to provide a brief summary of the objections filed by Freddie Mac and certain investors to the FGIC Settlement, and the current status of the FGIC Settlement litigation. *See* Disclosure Statement at Art. II.D. | **Addressed** |
| | (c)  The Disclosure Statement should include the back-up information for the expected recoveries, including the formulas, with sample calculations, in a single section of the Disclosure Statement. | The Disclosure Statement and the Exhibits attached to the Disclosure Statement provide an overview of the RMBS Trust Allocation Protocol and the mechanism by which recovery amounts for each RMBS Trust can be calculated. In response to Freddie Mac's objection, however, the Plan Proponents have provided additional exhibits to the Disclosure Statement (Exhibits 4 and 9), which set forth (i) an illustrative example and sample calculations that can be used by an RMBS Investor to calculate the amounts each RMBS Trust will recover, and (ii) the recovery amounts for each RMBS Trust based on current estimates.<br><br>Based on the inclusion of the foregoing disclosures, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | **Addressed** |
| 7.  **Impac Funding Corporation** | (a)  The Plan contemplated by the Disclosure Statement is unconfirmable and should be modified to require that | The procedures discussed in Article V.L of the Disclosure Statement and set forth in Article V of the Plan providing for the assumption and rejection of executory contracts and/or unexpired real property leases post-confirmation, are entirely consistent with procedures approved by this Court and courts in this District. *See, e.g., In re MF Global*, Case No. 11-15059 (MG) [Docket No. | **Confirmation Objection** |

| OBJECTING PARTY | BASIS FOR OBJECTION | | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| and Impac Mortgage Holdings, Inc. ("Impac") [Docket No. 4584] | | all decisions regarding executory contracts be irrevocably made on or prior to the Plan confirmation date. | 1382]; *In re General Maritime Corp.*, Case No. 11-15285 (MG) [Docket No. 794]. Regardless, Impac's objection to the Plan procedures is unrelated to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to the treatment of executory contracts and unexpired leases under the Plan. In addition, the Debtors anticipate filing a motion to assume and assign the servicing-related agreements with Impac in the near term (the "Impac Assumption Motion"), which will obviate the purported need to modify the assumption/rejection procedures in the Plan and/or any deadlines with respect to the assumption of Impac's contracts.  Given that Impac's objections will be rendered moot by the filing of the Impac Assumption Motion, the Court should overrule this objection to the Disclosure Statement. | |
| | (b) | The Disclosure Statement and Plan should be modified to provide that, in the event the Debtors and a contract counterparty dispute a cure amount: (a) the undisputed amount will be immediately paid to the contract counterparty on the Effective Date; and (b) the disputed amount will be escrowed pending resolution of the dispute. | As discussed above, the procedures discussed in Article V.L of the Disclosure Statement are entirely consistent with similar procedures approved by this Court and other courts in the Southern District of New York, and Impac cites to no authority for the proposition that the Disclosure Statement and Plan must provide for the procedures it proposes.  Impac's objections in this regard are not objections to the adequacy of information provided by the Disclosure Statement, but rather raise issues properly reserved for confirmation. For the same reasons discussed above, Impac's objections will likely become moot as a result of the filing of the Impac Assumption Motion.  Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the Disclosure Statement. | **Confirmation Objection** |
| 8. **Pension Benefit Guaranty Corporation ("PBGC")** [Docket No. 4585] | (a) i. | The Plan should clarify that the releases (including the exculpation and injunction provisions) do not release: Ally or any of its controlled group members and officers, employees, and representative from their statutory obligations | This is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation.  In any event, in response to the PBGC's concerns, Article V.X.5 of the Disclosure Statement and Article IX.E of the Plan have been modified to provide the following language: Nothing in the Plan releases AFI or any other party from the obligations under the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "Pension Plan") and ERISA.  Notwithstanding the foregoing, upon the Effective Date, the Debtors and the Plan Trusts shall be released from all obligations under the Pension Plan and ERISA related thereto, except for any Claims for fiduciary breaches or prohibited | **Confirmation Objection** |

| | OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| | | and liabilities under the GMAC Mortgage Group, LLC Pension Plan; and | transactions (as defined in ERISA) relating to the Pension Plan under applicable law. | |
| | | ii.  the Debtors and their officers, employees, agents, and representatives with respect to any fiduciary breach or prohibited transaction (as defined in ERISA) that may have been committed with respect to the Pension Plan. | The Plan Proponents are hopeful that the addition of this language to the Disclosure Statement and Plan will satisfy the PBGC's concerns.  If it does not, the Plan Proponents submit that issues relating to the releases contained in the Plan are not objections to the adequacy of the information provided in the Disclosure Statement, but are issues properly reserved for confirmation.  The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan, including the with respect to the release, exculpation and injunction provisions. | |
| 9. | The Federal Housing Finance Agency ("FHFA") as Conservator for Freddie Mac<br><br>[Docket No. 4587] | *The Disclosure Statement Lacks Sufficient Information to Enable a Reasonable Creditor to Cast an Informed Vote* {: colspan} | | |

*The Disclosure Statement Lacks Sufficient Information to Enable a Reasonable Creditor to Cast an Informed Vote*

| 9. | The Federal Housing Finance Agency ("FHFA") as Conservator for Freddie Mac<br><br>[Docket No. 4587] | (a)  The Disclosure Statement fails to include information concerning the FHFA's:<br><br>i.  first priority to recoveries of certain avoidance actions that are preserved under the Plan;<br><br>ii.  right to bring avoidance actions under Section 4617(b)(15) of the Housing Recovery Act of 2008 ("HERA") (i.e., actual fraudulent conveyance actions relating to the transfers by debtors of Freddie Mac), which rights are fully preserved and not released under the Plan; and | It is the Plan Proponents' view that the FHFA's disclosure concerns are limited in nature as HERA is not likely to impact recoveries to creditors.  The Plan Proponents believe that HERA only relates to the FHFA's right to avoid transfers made with the intent to hinder, delay or defraud the FHFA or Freddie Mac, and, in any event, the Plan Proponents are not aware of any such claims.<br><br>Nonetheless, Article IV.A.19(v)(iii) of the Disclosure Statement has been modified to provide language reflecting FHFA's assertions and the Plan Proponents assessments thereof:<br><br>On November 30, 2012, FHFA timely filed proofs of claim against certain of the Debtors (Claim Nos. 6296, 6297, 6298, 6299, 6300, and 6301) (the "FHFA Claims").  FHFA has asserted that the FHFA Claims are entitled to be treated as priority claims under the Housing and Economic Recovery Act of 2008 ("HERA"), as codified in 12 U.S.C. §§ 4617(b)(15).<br><br>The Plan Proponents believe that, at best, HERA may provide the FHFA with a first priority right to avoidance of certain transfers made with the intent to hinder, delay, or defraud FHFA or Freddie Mac.  The Plan Proponents have conducted an intensive investigation of potential fraudulent conveyance claims and are not aware of any intentional fraudulent conveyance claims that may be covered by HERA that are being settled pursuant to the Global Settlement. | **Addressed** |

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | iii.  belief that parties being released by the Plan should be informed that they may still be liable as recipients of transfers they received that are covered by section 4617(b)(5) of HERA. | Moreover, the Plan Proponents are not aware of any avoidable transfers that were intended to defraud the FHFA or Freddie Mac.  Accordingly, the Plan Proponents have not modified any provisions in the Plan relating to the impact of HERA on creditor recoveries or the ability of the FHFA to bring such actions.<br><br>Notwithstanding anything herein to the contrary, nothing herein shall have any impact on the validity or classification of the FHFA Claims, and all rights of FHFA are fully preserved in that regard.  Moreover, subject to an order confirming the Plan, notwithstanding anything herein or in the Plan to the contrary, nothing herein or in the Plan shall have any impact on the right of FHFA to assert that the FHFA Claims are entitled to be treated as priority claims based on the rights, powers, and privileges of the FHFA, in its statutory capacity as the Conservator of Freddie Mac under HERA, and all rights of FHFA are fully preserved in that regard.  In addition, FHFA asserts that nothing herein or in the Plan or the order confirming the Plan can affect, limit, enjoin or otherwise prejudice FHFA's rights, powers, and privileges under HERA as conservator of Freddie Mac.  Moreover, the Plan Proponents reserve all of their respective rights and defenses with respect to the FHFA's assertions regarding HERA.<br><br>Based on the inclusion of the foregoing disclosure, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | (b)  The Disclosure Statement lacks adequate disclosure concerning:<br><br>i.  the allocation of the Ally Contribution as between released estate causes of action and released third-party claims;<br><br>ii.  the allocation of the Ally Contribution among the Debtor Groups; and<br><br>iii.  the timing or procedure by | The Plan Proponents do not intend to allocate the Ally Contribution as between released estate causes of action and released third-party claims.  Such allocation is not necessary or appropriate given that the Global Settlement was reached after months of negotiations among divergent creditor interests.  In addition, the allocation of the Ally Contribution among the Debtor Groups is set forth in Article II.M of the Disclosure Statement.<br><br>With respect to the FHFA's argument that the Disclosure Statement lacks adequate information because it fails to explain the timing or procedure by which the Plan Proponents propose to seek subordination of the FHFA's claims, the Plan provides that a list of claims to be subordinated will be filed with the Plan Supplement.  *See* Plan at Art. III.E.  Further, the Plan Proponents have amended the Disclosure Statement to make clear that they will either include the FHFA on the list in the Plan Supplement or seek to subordinate the FHFA's claim by separate adversary proceeding: | Unresolved |

| OBJECTING PARTY | BASIS FOR OBJECTION | | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| | | which the Plan Proponents propose to seek subordination of the FHFA's claims. | To the extent the Plan Proponents determine to seek subordination of the FHFA's Claims, the Plan Proponents shall either include the FHFA on the list of Claims to be submitted with the Plan Supplement, or may seek to subordinate the FHFA's Claim by separate adversary proceeding. *See* Disclosure Statement at Art. I.D, n.11. Based on the inclusion of the foregoing disclosure, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | *The Plan is Unconfirmable because the FHFA is Not Entitled to Vote on the Plan* | | | |
| | (c) | The Plan is unconfirmable because the FHFA is not entitled to vote on the Plan under section 1126(g) of the Bankruptcy Code even though they are receiving a recovery under the Plan. | The Plan and Disclosure Statement have been modified to clarify the treatment of the FHFA's claims and the FHFA is now entitled to vote on the Plan, subject to the Court's determination whether the FHFA Claim should be subordinated under section 510(b) of the Bankruptcy Code. *See* Disclosure Statement at Art. I.D; Plan at Art. III.C., D. | **Addressed** |
| 10. **Paul N. Papas II** [Docket No. 4588][2] | (a) | Objection | Mr. Papas has failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Mr. Papas should be overruled by the Court. | **Inapplicable** |
| 11. **RESPA Plaintiffs** [Docket No. 4589] | (a) | The Disclosure Statement lacks information regarding the treatment and procedures to be set forth in the Borrower Claims Trust Agreement. | The Disclosure Statement has been modified to provide additional disclosures regarding the funding of the Borrower Claims Trust. *See* Disclosure Statement, Article II.H; Plan Proponents' Response to Objection of Wendy Alison Nora (above). Moreover, the Plan and Disclosure Statement provide that the Plan Proponents will file and serve a copy of the Borrower Claims Trust Agreement as part of the Plan Supplement no later than 10 days prior to the Voting Deadline. *See* | **Addressed** |

---

[2] The Plan Proponents believe that the remainder of the objection is inapplicable to the approval of the Disclosure Statement. In his objection, Mr. Papas also asserts that the Disclosure Statement contains several other deficiencies in its disclosure. The Plan Proponents dispute Mr. Papas's contentions, will not address them herein, and have not made additional modifications to the Disclosure Statement and Plan, as applicable, on account of such unfounded allegations.

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | Disclosure Statement, Art. II.H, V.CC.; Plan at Art.I.A.37, 202. | |
| | *The Disclosure Statement Fails to Provide Adequate Information to Enable a Reasonable Creditor to Cast an Informed Vote* | | |
| 12. | Ad Hoc Group of Junior Secured Noteholders (the "JSNs") [Docket No. 4590] | (a) **Impact of JSN Adversary Proceeding.** The Disclosure Statement lacks sufficient information regarding the impact of a finding that the JSNs are entitled to post-petition interest on a ground that is inconsistent with the terms of the Global Settlement. | The Disclosure Statement was carefully drafted to provide an informative summary of the status of the pending JSN Adversary Proceeding, as well as the impact that rulings on outstanding disputes with the JSNs will have on the Plan and projected recoveries thereunder. In response to the JSNs' objection, however, the Disclosure Statement has been revised to clarify that the Plan is confirmable if the JSNs are determined to be oversecured and entitled to postpetition interest, whether such a determination is made in connection with any of the issues to be determined at Phase I of the trial or at confirmation. *See* Disclosure Statement at Art. II.I.<br><br>In its Objection, the JSNs posed a series of questions regarding whether the Plan is confirmable if the Bankruptcy Court makes certain findings favorable to the JSNs in the JSN Adversary Proceeding, the answers to which they argued should be disclosed in the Disclosure Statement, including any necessary explanations for such answers. Though the Plan Proponents believe that the JSNs are not likely to prevail on their challenges to the settlement of the Intercompany Balances and allocation of the Ally Contribution, the Plan Proponents have included the following clarifications in Article II regarding the impacts of any such findings on Plan confirmation:<br><br>    The compromise of the Intercompany Balances is an integral part of the Global Settlement, and the Plan will not be confirmable (absent modification) if the compromise is not approved. However, if the Court determines that, as a result of the compromise of such balances, the JSNs' aggregate collateral has suffered a diminution in value from the Petition Date, the JSNs will be entitled to an adequate protection claim in the amount of the decline.<br><br>    The allocation of the Ally Contribution among the Debtor estates is an integral part of the Plan, and the Plan will not be confirmable (absent modification) if the Court determines that the contribution must be reallocated. However, if the Court determines that the JSNs have a lien on all or a portion of the Ally Contribution or that, as a result of the Plan's allocation of the Ally Contribution, the JSNs' aggregate collateral has suffered a diminution in value from the Petition Date, the JSNs will be entitled to such value without impacting the confirmability of the Plan. | Addressed |

13

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | Article II.I, n.41 of the Disclosure Statement has, however, also been added to clarify that:<br><br>[T]he Debtors and the Creditors' Committee do not believe that the Court should entertain the JSNs' effort to obtain an adequate protection claim arising from the compromise of the Intercompany Balances, because, among other things: (a) the JSNs have never had any protectable property interest in the Intercompany Balances, as under the controlling documents the Debtors have at all times had the right to compromise, forgive, or otherwise dispose of Intercompany Balances, and did so consistently during the years leading up to the Petition Date; (b) as the JSNs' counsel has noted, in the absence of the Global Settlement, the Intercompany Balances have little or no value, and certainly not enough to have rendered the JSNs' oversecured; (c) the value of the JSNs' collateral (including Intercompany Balances) at the Petition Date was substantially less than what they are receiving under the Plan, such that there is no basis for a finding of diminution in value; and (d) litigation over such a putative adequate protection claim would improperly subvert much of the benefit of the compromise, by requiring precisely the same time-consuming and costly litigation the settlement was intended to avoid. The Plan Proponents expressly preserve and intend to advance these arguments, but in the event the Court disagrees and finds that the JSNs are entitled to an adequate protection claim on this issue, such a finding would not be inconsistent with the Plan and Global Settlement.<br><br>Based on the inclusion of the foregoing disclosure, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| (b) | **Description of the Parties' Position in the JSN Adversary Proceeding.** The Disclosure Statement should include a more balanced and accurate account of the litigation relating to the validity and extent of the JSNs' liens. | Article IV.20.f of the Disclosure Statement contains an extensive discussion of the currently pending consolidated adversary proceeding commenced by the Debtors and the Creditors' Committee against the JSNs. The JSNs requested the inclusion of additional disclosures that advocate their individual views on certain aspects of the litigation, Plan, and Global Settlement. The language originally proposed by the JSNs, however, was misleading, contained material misstatements of the facts, and reflected a degree of advocacy not appropriate for inclusion in the Disclosure Statement.<br><br>Nevertheless, to address the JSNs objection following discussions with the JSNs, the Disclosure | Addressed |

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | As currently drafted, the Disclosure Statement only reflects the Plan Proponents' belief that the JSNs are undersecured by an insurmountable deficiency and does not reflect that the JSNs may be oversecured if they are successful on only some issues in the litigation. | Statement has been revised to include a more neutral and accurate statement regarding the outstanding disputes with the JSNs. *See* Disclosure Statement at Art. IV.20.f.<br><br>Based on the inclusion of the foregoing disclosure, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | (c) **Global Settlement.** The Disclosure Statement fails to provide a rationale for the allocation of value and the allowance of claims in connection with the Global Settlement, including:<br><br>i.   the allowance of the RMBS Trust Claims in the amount proposed in the Plan;<br><br>ii.   the allowance of the FGIC and MBIA claims at Debtor ResCap; and<br><br>iii.   the allocation of value to the Senior Unsecured Noteholders. | The Disclosure Statement provides a full explanation of the terms of the Global Settlement embodied in the Plan and the process by which the Global Settlement was achieved, and Article II of the Disclosure Statement, specifically, provides clear and concise descriptions of and bases for each of the claims settlements comprising the Global Settlement as well as the agreed-upon allocation of the Ally Contribution as part of the settlements. The Disclosure Statement strikes a needed balance between brevity and an accurate explanation of the terms of the Global Settlement. The JSNs aspersions relating to the parties' positions prior to entry into the Global Settlement are irrelevant and inaccurate, and should be disregarded.<br><br>In response to the JSNs objection, however, the Plan Proponents have included the following statement as a footnote to the discussion of the Global Settlement in the Disclosure Statement contained in Article II.A, n.30:<br><br>    The Junior Secured Noteholders contend that elements of the Global Settlement are inconsistent with certain positions previously taken in these cases by the Plan Proponents, as well as with conclusions that can be drawn from the Examiner's Report.<br><br>In addition, the Plan Proponents have added further disclosure to Article II.C of the Disclosure Statement, entitled "The Plan Includes a Settlement of RMBS Trust Claims":<br><br>    The Committee had previously objected to the grant of an allowed claim of $8.7 billion to the RMBS Trusts pursuant to the Original RMBS Settlement Agreements, arguing, among other things, that the claims of the RMBS Trusts should be resolved in the context of a global settlement rather than in a pre-plan settlement motion. The Plan, with its Global Settlement, constitutes a realization of the Committee's goal in that regard. Moreover, while the Committee | Addressed |

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | contended that a variety of defenses to the RMBS Trusts' claims could reduce them to less than $8.7 billion, the RMBS Trusts and Institutional Investors strongly disagreed with the Committee's assertions, and the possibility always existed that the claims could be allowed in an aggregate amount far greater than $8.7 billion.  In the months preceding the Global Settlement, the case law pertaining to certain of the Committee's legal positions continued to evolve; several courts rejected arguments advanced by the Committee in opposition to the Original RMBS Settlement Agreements, thus confirming the highly uncertain nature of the law governing RMBS put-back litigation.  For these and other reasons, the Committee agreed to the Global Settlement, including its treatment of the RMBS Trusts, and believes that it is very much in the interest of the Debtors' estates and creditors.<br><br>The Plan Proponents also added the following language to Article II.D of the Disclosure Statement, entitled "The Plan Settles the Claims of Certain Monoline Insurers":<br><br>The settlement of these claims eliminates the need for complex and uncertain litigation concerning the scope and nature of the claims and their potential subordination.  These issues would have engendered an additional round of lengthy and costly litigation even after the claims of the RMBS Trusts had been resolved.<br><br>Based on the inclusion of the foregoing disclosure, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | (d)  **Ally Settlement.**  The Disclosure Statement should provide a more robust discussion of the Ally settlement, including:<br><br>i.    material from the Examiner's Report and other sources; and<br><br>ii.   the tax benefits for Ally | Articles IV.A.8 and 10 of the Disclosure Statement contains a robust discussion of the Creditors' Committee's investigation, the Examiner's investigation, and the findings and conclusions in the Examiner Report.<br><br>With respect to the Examiner's Report, Article IV.A.10 of the Disclosure Statement provides a concise overview of the lengthy and complicated Report, including neutral and balanced summaries of the potential estate claims and causes of action identified by the Examiner.  The JSNs, however, seek the inclusion of a rider to the Disclosure Statement that is inaccurate, misleading, and self-serving.  To address the JSNs, objections, however, the Plan Proponents have agreed to include an Exhibit to the Disclosure Statement setting forth the JSNs' and AFI's | **Addressed** |

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | under the Tax Allocation Agreement on account of the Ally Contribution. | respective positions with respect to the Examiner Report. *See* Disclosure Statement Exhibit 10.<br><br>Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the Disclosure Statement. | |
| | (e)  **Ally Settlement.**  The Disclosure Statement should provide a more robust discussion of the Ally settlement, including:<br><br>i.   the justification for the Debtor Releases and the Third Party Releases; and<br><br>ii.  the allocation of the Ally Contribution as between the Debtor Releases and the Third Party Releases. | Article II.B of the Disclosure Statement provides a detailed overview of the Debtor and Third Party Releases embodied in the Plan, as well as a full discussion of the justification for the inclusion of such releases (including the applicability of the appropriate legal standards and the Bankruptcy Court's jurisdiction to grant such releases).<br><br>Article I.A of the Disclosure Statement provides a description of the mechanism by which the Ally Settlement was allocated and implemented through the Global Settlement.  In light of the complex nature of the potential claims that could be asserted against Ally as well as the numerous settlements comprising the Global Settlement and embodied in the Plan, the Plan Proponents do not believe it is possible (or even necessary) to "allocate" the Ally Contribution as the JSNs suggest among potential estate or third party claims.  The Plan Proponents believe there is sufficient justification for the Debtor Release and the Third Party Release, and the validity and appropriateness of these releases will be determined at the Confirmation Hearing.<br><br>To address the JSNs' objection that the Disclosure Statement fails to inform creditors of the risk of the Global Settlement not being approved as part of the Plan, the Plan Proponents have amended Article IX.E.2 of the Disclosure Statement, entitled "The Plan Releases and Global Settlement May Not Be Approved" as follows:<br><br>There can be no assurance that the Plan Releases and Global Settlement will be approved by the Bankruptcy Court.  If the Plan Releases and Global Settlement are not approved, there will be no Ally Contribution, and it would be  highly unlikely that the Plan would be consummated.  In the absence of any Ally Contribution, the proposed Distributions in the Plan could not be effectuated, and holders of Claims and Equity Interests would receive significantly reduced recoveries in any alternative plan scenario.  In addition, the litigation surrounding each of the claims and intercreditor issues resolved pursuant to the Plan would likely recommence, as would the litigation between the Debtors and/or the Creditors' Committee and Ally, resulting in potentially significant additional costs to the Estates and substantial delays in distributions to creditors.<br><br>Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the | **Addressed** |

17

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | Disclosure Statement. | |
| | (f) **Treatment of JSN Claims.** The Disclosure Statement and Plan lack sufficient disclosure regarding the period of time over which any post-petition interest would be paid to the JSNs or the rate of interest relating thereto | The Disclosure Statement provides a succinct overview of the treatment of the JSNs Claims under the Plan.  The JSNs are being paid in full pursuant to the Plan, and in accordance with section 1129(b)(2)(A) of the Bankruptcy Code, the Plan and Disclosure Statement provide that, to the extent the Bankruptcy Court determines that the JSNs are entitled to postpetition interest on account of their claims, the Plan Proponents reserve the right to pay the JSNs' postpetition interest over time at the appropriate market rate.  The Plan Proponents need not make such an election at this juncture, and the Disclosure Statement has been amended to provide that the Plan Proponents will set forth the timing for payment of any postpetition interest to the JSNs and the appropriate market rate will be set forth in the Plan Supplement.  Whether the proposed treatment of the JSNs under the Plan satisfies the requirements of the Bankruptcy Code is an issue that will be addressed at the Confirmation Hearing.<br><br>The Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | **Addressed** |
| *The Tabulation Procedures Must be Clarified* | | | |
| | (g) **Tabulation Procedures.** The Tabulation Procedures should be modified to provide that a class where no party has timely submitted a vote cannot be "deemed" to have accepted the Plan in accordance with section 1129(a)(10) of the Bankruptcy Code and applicable law. | Article I.D, n.12 of the Disclosure Statement has been amended to provide:<br><br>Certain parties have argued that this presumption is impermissible. The Plan Proponents disagree, as this approach has been approved by the Bankruptcy Court in prior cases, as well as other cases in the Southern District of New York and elsewhere.  Courts have concluded that such a provision is consistent with the Bankruptcy Code and thus valid and enforceable.  If necessary, the Plan Proponents will demonstrate in connection with confirmation of the Plan that this provision is appropriate.<br><br>In addition, the following language has been added to the proposed order approving the Disclosure Statement, Tabulation Procedures, and Solicitation Procedures:<br><br>Notwithstanding subsection (c) of paragraph 45 above, the rights of all parties to argue that the "deemed acceptance" of votes contemplated therein is not permissible under applicable law are preserved for confirmation. | **Addressed** |

18

ny-1102215

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | Accordingly, the Plan Proponents submit that the JSNs objection has been resolved by the inclusion of the additional disclosures in the Disclosure Statement and language in the proposed order approving the Disclosure Statement. | |
| 13. Amherst Advisory & Management, LLC ("Amherst") [Docket No. 4591] | (a) The Plan inappropriately seeks to eliminate the right of Amherst to "opt out of the RMBS Settlement." | The terms of the RMBS Settlement are set forth in detail in Articles II.C and IV.A.17 of the Disclosure Statement. Amherst's objection rests on a basic misunderstanding of the nature of the RMBS Settlement, which applies to all RMBS Trusts regardless of whether they are signatories to the Plan Support Agreement. Those limited RMBS Trusts that have opted out may choose to vote against the Plan and/or object to confirmation on any available ground, but if the Plan is confirmed, the RMBS Settlement is controlling and they are not exempt from the Plan's terms by virtue of opting-out of the Plan Support Agreement. To the extent not already provided, the Disclosure Statement clarifies the Plan's treatment of the Claims of the RMBS Trusts, including those that have opted out of supporting the Plan Support Agreement. *See* Disclosure Statement at Art. II.C.<br><br>To the extent Amherst is raising an objection to the proposed treatment of RMBS Trust Claims under the Plan, and has standing to raise such an objection, this does not relate to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan.<br><br>Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the Disclosure Statement. | **Confirmation Issue** |
| | (b) The Disclosure Statement lacks sufficient information regarding the "Allowed Fee Claims" relating to the RMBS Settlement, including the need for, or propriety of, the Allowed Fee Claims under the Bankruptcy Code. | In response to Amherst's objection, the Plan Proponents have added the following footnote to Article IV.A.17 of the Disclosure Statement, entitled "The RMBS Settlement Embodied in the Plan":<br><br>The RMBS Settlement also provides that 5.7% of the aggregate Allowed RMBS Trust Claims will be transferred to counsel for the Institutional Investors, by direct allocation under the Plan and without conveyance to the RMBS Trustees (the "Allowed Fee Claim"), who shall hold RMBS Trust Claims against the relevant entities for each respective Trust pursuant to the Plan and the RMBS Trust Allocation Protocol, which amounts shall reduce the total amount of Allowed RMBS Trust Claims. The Allowed Fee Claim shall be apportioned among counsel for the Steering Committee Consenting Claimants, on the one hand, and counsel for the Talcott Franklin Consenting Claimants, on the other, in | **Addressed** |

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | conformity with the Original Settlement Agreements. The portion of the Allowed Fee Claim allocated to counsel for the Steering Committee Consenting Claimants shall be paid 4.75% to Gibbs & Bruns LLP and 0.95% to Ropes & Gray LLP. The portion of the Allowed Fee Claim allocated to counsel for the Talcott Franklin Consenting Claimants shall be paid 5.7% to be shared among Talcott Franklin P.C., Miller, Johnson, Snell & Cummiskey, P.L.C., and Carter Ledyard & Milburn LLP based on lodestar as calculated per agreement between co-counsel. Each share of the Allowed Fee Claim (and distributions thereon, including Trust Units) shall be documented in separate claims stipulations and shall be independently transferable.<br><br>To the extent Amherst is raising an objection to the payment of the Allowed Fee Claim under the Plan, this is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents believe that such payments are permissible through the Plan and/or through a 9019 settlement, and reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan. | |
| | (c) The Disclosure Statement Motion should be modified to provide a ballot to (i) AAM to vote on the Plan on behalf of RALI 2006-QO7, and (ii) the RALI 2006-Q07 Trustee. | For the reasons discussed above, the Trust, not Amherst, is the proper party to vote on the Plan. The Trustee declined Amherst's direction that it withdraw from the PSA, so the Trust remains contractually bound to vote in favor of the Plan. | **Confirmation Issue** |

| | OBJECTING PARTY | | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|---|
| 14. | UMB Bank, N.A. ("UMB") [Docket No. 4592] | (a) | The Disclosure Statement fails to provide adequate information regarding: (i) the preservation of UMB's charging lien under the indenture, (ii) the preservation of the indenture to effectuate UMB's duties thereunder, and (iii) the distribution mechanisms required under the indenture and the payment of fees and expenses incurred by UMB in making distributions. | The Disclosure Statement has been modified to reflect these matters. *See* Disclosure Statement at Article V.D, E, M; *see also* Plan at Art. IVK , VII.G.I, VII.G.3, VII.M. | **Addressed** |
| | | (b) | The Plan should be revised to: (i) preserve the charging lien, (ii) carve out the indenture to provide for its survival, (iii) accurately reflect the distribution mechanisms required under the indenture and provide for the payment of fees and expenses incurred by UMB in making distributions. | This is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan. Notwithstanding, the Plan and Disclosure Statement have been modified to reflect these revisions. *See* Disclosure Statement at Article V.D, E, M; *see also* Plan at Art. IVK , VII.G.I, VII.G.3, VII.M. | **Addressed** |
| | | (c) | The ballots should be revised to provide that the Debtors will pay all reasonable, documented fees and expenses incurred by Voting Nominees in connection with the solicitation process. | The Ballots have been revised to reflect that the Debtors will pay the reasonable, documented costs and expenses of the brokers or nominees associated with the distribution of copies of ballots to beneficial holders. *See* Exhibits A-1 through A-9 annexed to the Proposed Order. | **Addressed** |
| | | (d) | The Disclosure Statement should be revised to clarify whether the Plan Proponents | This is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan. Notwithstanding, the Plan has | **Addressed** |

21

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | are attempting to preserve the right to challenge the reasonableness of adequate protection payments made under the Final Cash Collateral Order. | been modified to reflect these revisions. *See* Plan at Article XII(o). | |
| 15. United States Trustee ("U.S. Trustee") [Docket No. 4596] | *The Disclosure Statement Should be Amended to Provide Additional Information to Include "Adequate Information" of a Nature Sufficient to Meet the Requirements of section 1125 of the Bankruptcy Code* | | |
| | (a) The Disclosure Statement should be amended to include one complete and comprehensive list of (a) those entities and individuals receiving payment of fees pursuant to the Plan, (b) the amounts proposed to be paid, (c) whether or not prior Court approval after notice and a hearing will be sought, (d) the applicable facts and legal standards supporting payment, and (e) whether the payments have already been made. | Although the Plan Proponents believe that the Disclosure Statement provides sufficient information regarding the payment of professionals' fees and expenses, in response to the U.S. Trustee's objection, the Plan Proponents have prepared a detailed and comprehensive list of the professionals to be paid and the statutory authority for making such payments. *See* Disclosure Statement, Ex. 11.<br><br>To the extent the U.S. Trustee seeks facts and legal standards supporting payments to professionals at this time, this is not an issue that can be addressed in the Disclosure Statement, but rather should be raised and addressed at the Confirmation Hearing or at the applicable hearing on the professionals' fee applications. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan. | |
| | (b) The Disclosure Statement should be amended to include information demonstrating that the proposed partial substantive consolidation for Plan purposes meets the standards for substantive consolidation in the Second Circuit. | As set forth in Article I.D of the Disclosure Statement, the Global Settlement embodied in the Plan resolves issues relating to substantive consolidation, and the Disclosure Statement provides an explanation for the determination to group the Debtors into three Debtor Groups for purposes of making distributions under the Plan, including the fact that the proposed partial consolidation does not harm any creditors. *See also* Plan at Art. II.K.<br><br>In response to the U.S. Trustee's objection, and following further analysis by the Plan Proponents, the Plan Proponents determined to separately classify and treat the ETS Unsecured Claims (a Debtor-subsidiary of GMACM). The Plan and Disclosure Statement now provide that with respect | **Confirmation Objection** |

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | to ETS, all ETS Unsecured Claims will receive their pro rata share of cash equal to the value of assets available at the ETS Estate after payment of all allowed claims senior in priority.<br><br>The Plan and Disclosure Statement also provide that, to the extent the Plan of a particular Debtor does not meet the "best interest of creditors" test, distributions under the Plan will be modified, as needed, to satisfy this test, with the consent of the Consenting Claimants.<br><br>Based on the inclusion of the foregoing disclosures, the Plan Proponents submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan. | |
| | (c) The Disclosure Statement should be amended to include additional information on how the exculpation and release provisions in the Plan, including the Third Party Release, are consistent with the Second Circuit's decisions in *Manville* and *Metromedia*. | The Disclosure Statement contains substantial disclosures regarding the justification for the Debtor Release and the Third Party Release, and the bases for jurisdiction and their approval on the merits under Second Circuit case law.  With respect to the Exculpation Provisions, Article II.B.5 of the Disclosure Statement has been amended to provide an explanation and justification for the proposed exculpation of the Released Parties, including certain non-fiduciaries, as follows:<br><br>The Plan also provides that the Debtors, the Consenting Claimants, Ally, the Creditors' Committee and its members, and each of the foregoing entities' successors, assigns, members, subsidiaries, officers, directors, partners, principals, employees and Representatives (collectively, the "Exculpated Parties") will be exculpated from liability in connection with the negotiation and documentation of any prepetition plan support agreements, the Plan Support Agreement, the Plan, Disclosure Statement, FGIC Settlement Agreement, RMBS Settlement, and any other documents entered into in connection with the Plan, other than for gross negligence or willful misconduct.  Each of the Exculpated Parties played a key role in the mediation process and in the negotiation and implementation of the Global Settlement and Plan.  Thus, each of the Exculpated Parties—including certain non-estate fiduciaries—made a substantial contribution to the Debtors' liquidation efforts and played an integral role in working towards an expeditious resolution of these chapter 11 cases.  The proposed Exculpation Provision, which carves out gross negligence and willful misconduct, is entirely consistent with established practice in this jurisdiction and Second Circuit case law.<br><br>*See also* Plan, Art. XIII.C.  Based on the inclusion of the foregoing disclosure, the Plan Proponents | **Addressed** |

| OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|
| | | submit that the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code because it provides adequate information to voting creditors to make an informed decision to vote to accept or reject the Plan.<br><br>To the extent the U.S. Trustee's objection can be construed as a disguised confirmation objection to the validity of the Debtor Release, the Third Party Release, or the Exculpation Provision, the validity of these provisions is an issue that will be addressed at the confirmation hearing, and the Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan. | |
| | *The Plan is not Confirmable As a Matter of Law* | | |
| | (d) The Plan violates section 503(b)(3)(F) and (b)(4) of the Bankruptcy Code by providing for the payment of at least one member of the Creditors' Committee (Wilmington Trust), and providing payment of the Allowed Fee Claim of the Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants. | Exhibit 11 annexed to the Disclosure Statement provides that the Senior Notes Indenture Trustee Fee Claim will be paid solely from monies collected by Wilmington Trust on account of Senior Unsecured Notes Claims distributions, and all such monies remain subject to the Senior Unsecured Notes Indenture Trustee Charging Lien before those funds are distributed to Senior Unsecured Noteholders. Thus, contrary to the U.S. Trustee's contentions, amounts paid to Wilmington Trust on account of its fee claim will have no impact on the recoveries of creditors other than the Senior Unsecured Noteholders.<br><br>Similarly, the amounts paid to counsel for the Steering Committee Consenting Claimants and the Talcott Franklin Consenting Claimants will likewise have no impact on the recoveries of creditors other than the RMBS Trusts, and was agreed upon by the RMBS Trusts as part of the RMBS Settlement, as incorporated into the Global Settlement. Additional disclosure with respect to the Allowed Fee Claim has been incorporated into the Disclosure Statement, as set forth above. In addition, Second Circuit case law provides that the payment of professional fees and expenses through a plan does not need to satisfy section 503(b) of the Bankruptcy Code for confirmation of a Plan.<br><br>The U.S. Trustee's objections on the grounds that the Allowed Fee Claim violates section 1129(a)(4) is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan.<br><br>Accordingly, the Plan Proponents respectfully request that the Court overrule this objection to the Disclosure Statement. | **Confirmation Objection** |

ny-1102215

| | OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| | | (e) The Plan should be revised to clarify that each Debtor (a) has the obligation to pay UST fees, (b) should separately report its disbursements when required, and (c) should include an estimate of what these fees will be for each Debtor on the Effective Date. | This is not an objection to the adequacy of information provided by the Disclosure Statement, but rather is an issue properly reserved for confirmation. The Plan Proponents reserve all rights at the Confirmation Hearing with respect to confirmation of the Plan.<br><br>Nevertheless, the Plan and Disclosure Statement have been modified to provide:<br><br>On the Effective Date, and thereafter as may be required, each of the Debtors shall (i) pay all the respective fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code, until the earliest to occur of the entry of (a) a final decree closing such Debtor's Chapter 11 Case, (b) a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) a Final Order dismissing such Debtor's Chapter 11 Case, and (ii) be responsible for the filing of consolidated post-confirmation quarterly status reports with the Bankruptcy Court in accordance with Rule 3021-1 of the Southern District of New York Local Bankruptcy Rules, which status reports shall include reports on the disbursements made by each of the Debtors.<br><br>*See* Disclosure Statement at Art. V.BB.3; Plan at Art XIII.C. | **Addressed** |
| 16. | **Michelle Lawson**<br><br>**[Docket No. 4618]** | (a) Borrower Objection | Ms. Lawson has failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Ms. Lawson should be overruled by the Court. | **Inapplicable** |
| 17.. | **Anne Nelson**<br><br>**[Docket No. 4619]** | (a) Borrower Objection | Ms. Nelson has failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Ms. Nelson should be overruled by the Court. | **Inapplicable** |
| 18. | **Mary McDonald**<br><br>**[Docket No. 4650]** | (a) Borrower Objection | Ms. McDonald has failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Ms. MacDonald should be overruled by the Court. | **Withdrawn** |

25

| | OBJECTING PARTY | BASIS FOR OBJECTION | PLAN PROPONENTS' RESPONSE | STATUS |
|---|---|---|---|---|
| 19. | **Basic Life Resources and Pamela Z. Hill** [Docket No. 4654] | (a) Borrower Objection | Basic Life Resources and Ms. Hill have failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Basic Life Resources and Ms. Hill should be overruled by the Court. | **Inapplicable** |
| 20. | **Paul A. Corrado** [Docket No. 4660] | (a) Borrower Objection | Mr. Corrado has failed to adequately articulate an objection to the Disclosure Statement and the Plan Proponents believe that any objection to the Disclosure Statement contained in the document filed by Mr. Corrado should be overruled by the Court. | **Inapplicable** |

26

| | RESERVATIONS OF RIGHTS | |
|---|---|---|
| 1. | **Ambac Assurance Corp. ("Ambac")**<br><br>**[Docket No. 4535]** | Ambac filed a Reservations of Rights with respect to the Plan as described in the Disclosure Statement while the Plan Proponents and Ambac engage in discussions to resolve the issues among the parties. The Plan Proponents are hopeful that the disputes with Ambac can be resolved in short order. |
| 2. | **Rothstein Plaintiffs**<br><br>**[Docket No. 4578]** | The Rothstein Plaintiffs filed a Reservation of Rights noting that their intent to object to the Plan because of improper third party releases. Nothing in the Disclosure Statement impacts the Rothstein Plaintiffs' ability to object to the Plan at the Confirmation Hearing. The appropriateness of releases contained in the Plan is a confirmation objection and should not be considered at the Disclosure Statement Hearing. |
| 3. | **Assured Guaranty Municipal Corp. ("Assured")**<br><br>**[Docket No. 4594]** | Assured filed a Reservations of Rights reserving its ability to object to the Disclosure Statement pending agreement on supplemental language in the Disclosure Statement. |
| 4. | **AIG Asset Management (U.S.), LLC, Allstate Insurance Company, Massachusetts Mutual Life Insurance Company, and Prudential Insurance Company of America (the "Investors")**<br><br>**[Docket No. 4602]** | The Investors filed a Reservation of Rights with respect to the "judgment reduction" provision contained in the Plan and Disclosure Statement. **This Reservation of Rights has been resolved with language in the Plan and Disclosure Statement satisfactory to the Investors.** |
| 5. | **New Jersey Carpenters Health Fund ("NJ Carpenters")**<br><br>**[Docket No. 4604]** | NJ Carpenters filed a Reservation of Rights with respect to the "judgment reduction" provision contained in the Plan and Disclosure Statement and any future "judgment reduction provision" contained in any subsequent plans and disclosure statements. |
| 6. | **Union Central Life Insurance Company, Ameritas Life Insurance Corp., and Acacia Life Insurance Company (the "Union Central Parties")**<br><br>**[Docket No. 4605]** | The Union Central Parties filed a Reservation of Rights with respect to the "judgment reduction" provision contained in the Plan and Disclosure Statement and any future "judgment reduction provision" contained in any subsequent plans and disclosure statements. |
| 7. | **Cambridge Place Investment Management Inc. ("CPIM")**<br><br>**[Docket No. 4606]** | CPIM filed a Reservation of Rights with respect to the "judgment reduction" provision contained in the Plan and Disclosure Statement and any future "judgment reduction provision" contained in any subsequent plans and disclosure statements. |