MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Todd M. Goren
Jennifer L. Marines

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
)
In re:                                            )       Case No. 12-12020 (MG)
                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,                 )       Chapter 11
                                                  )
                         Debtors.                 )       Jointly Administered
                                                  )
---------------------------------------------------------------

**NOTICE OF FILING OF ADDITIONAL DISCLOSURES IN CONNECTION
WITH ORDER IN AID OF MEDIATION AND SETTLEMENT**

**PLEASE TAKE NOTICE** that on July 26, 2013, the Court entered an Order in Aid of Mediation and Settlement [Docket No. 4379] ("Order in Aid of Mediation")[1];

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Order in Aid of Mediation and certain Confidentiality Agreements, the Debtors hereby submit as Exhibit 1 certain disclosures related the Junior Secured Noteholders' alleged collateral value (the "Disclosure");

**PLEASE TAKE FURTHER NOTICE** that the Debtors caution parties in interest not to place undue reliance upon the information contained in the Disclosure, which was not prepared for the purpose of providing the basis for an investment decision relating to any of the securities

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Order in Aid of Mediation

ny-1104241

of the Debtors.   The Disclosure was prepared solely for the purpose of a Mediation Conference and was presented for illustrative purposes only.  The Disclosure is not audited, does not purport to represent the financial information of the Debtors in accordance with generally accepted accounting principles, and does not purport to present the market value of the Debtors' assets and liabilities or the recoverability of the Debtors' assets.  The values indicated in the Disclosure are subject to future adjustment and reconciliation. There can be no assurance that, from the perspective of a creditor or investor, the Disclosure is complete.  The Debtors reserve all rights to amend the values represented in the Disclosure. This disclaimer applies to all information contained therein.

Dated:  August 16, 2013
        New York, New York

/s/ Todd M. Goren
Gary S. Lee
Todd M. Goren
Jennifer L. Marines
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

# Exhibit 1

~ Settlement Communication Subject to FRE 408 and Mediation Order ~
~ Subject to Substantial Revision ~
~ Prepared at the Request of Counsel ~

CENTERVIEW PARTNERS

# ResCap

## Illustrative JSN Recovery Value

July 2013

*Settlement Communication Subject to FRE 408 and Mediation Order*
*~ Subject to Substantial Revision ~*
*~ Prepared at the Request of Counsel ~*

# Junior Secured Notes - Best Case Recovery Value

*The analysis below was prepared for purposes of the mediation and is presented for illustrative purposes only. The analysis does not represent the views of the Debtors, the Committee or their advisors as to the value of the Collateral as of the Petition Date for Adequate Protection purposes. In fact, for the reasons discussed on the next two slides, among others, <u>the parties believe that the such value would be substantially less than the amounts set forth below</u>:*

| Collateral | Petition Date Best Case Recovery Value[1] | Disclosure Statement Estimated Recovery Value[2] | Petition Date Recovery Notes |
|---|---|---|---|
| Cash and Equity[3] | $392 | $1,976 | Includes $104mm of proceeds from hedge unwind in early May 2012 |
| Held-for-Sale | 763 | 17 | Blended recovery based on Ally APA and assumes 15% document deficiency % |
| Servicing Advances | 1,419 | 242 | Blended recovery based on Nationstar APA and assumes no adjustment per section 3.1(a) (PSA Amendments). Master advances assumed to be sold at 95% of par value, which is equal to stalking horse bid on primary servicing advances |
| FHA/VA Loans | 479 | 317 | |
| Other[4] | 454 | 64 | |
| **Total** | **$3,506** | **$2,616** | |
| (Less): Ally Revolver Balance | (747) | (747) | |
| (Less): GSAP, BMMZ Repo Balance and RAHI Liabilities[5] | (961) | – | Recovery based on bid received for a subset of FHA loans in February 2013 |
| (Less): PSA Amendments (not obtained) | (104) | – | Per the Nationstar APA, purchase price reduced from 95% to 70% on ~37% of Non-Agency primary advances |
| (Less): Document Defects (not cured) | (28) | – | |
| (Less): Consumer Relief Modifications[6] | (3) | – | |
| (Less): Projected Expenses | TBD | (180) | |
| **Net Collateral Value** | **$1,663** | **$1,689**[7] | Per the Ally APA, the purchase price multiplier was reduced for higher document deficiencies as of the petition date |
| Less: Other Adjustments[8] | TBD | – | |
| **Adjusted Net Collateral Value** | **TBD** | **TBD** | HFS loans subject to DOJ/AG solicitation experienced ~$28mm in UPB reductions after the Petition Date, which would have resulted in a negative purchase price adjustment |

Note: $ in millions.
(1) Reflects stalking horse purchase price percentages from Ally and Nationstar APAs as of the petition date, indicative bids received to date on FHA/VA loans and Debtors' assumptions on monetization of "Other" assets.
(2) Per Disclosure Statement filed on July 4, 2013.
(3) Includes Equity Pledge in RAHI/PATI/ETS.
(4) Consists of restricted cash ($333mm BV), AR-Other ($68mm BV), Other Assets ($57mm BV) and Trading Securities ($35mm BV).
(5) Includes estimate of RAHI Liabilities of $49.4mm as of the Petition Date.
(6) The Debtors and Centerview continue to evaluate the potential impact from consumer relief modifications.
(7) Excludes impact of Ocwen/Walter true-up, which is estimated to improve the JSN recovery value by $50mm-$75mm. Also excludes potential additional expense allocation of approximately $120mm.
(8) Adjustments to be determined by the Debtors and their advisors based on considerations referenced on slides 2 and 3, among others.



1

~ Settlement Communication Subject to FRE 408 and Mediation Order ~
~ Subject to Substantial Revision ~
~ Prepared at the Request of Counsel ~

# Adjusted Net Collateral Value

- The JSNs' have a second lien position, which per the Intercreditor Agreement means that Ally and Barclays would control the monetization of the subject collateral

    – Please note the following provisions of the Intercreditor Agreement dated as of June 6, 2008: 3.1(a)(i)(A), 3.1(b)(iii), 3.1(d)(iii), 3.2, 5.1(a), 5.1(c), 5.5(a), 7.3(b), 7.3(d) and 7.3(f)

- The analysis does not include the run-off of collateral during a commercially reasonable sale period nor the cost to monetize said collateral, which would include interest expense on the Ally Revolver (L+2.75%), GSAP facility (L+4.50%) and BMMZ repo (L+4.75%) as well as servicing costs, custodian costs, advisory fees and other miscellaneous expenses

- Without the DIP financing and the Debtors' post-petition sale process the JSNs would not benefit from:

    – Ability to sell assets from a going concern servicing and origination platform

    – Competitive dynamic of a comprehensive auction process (versus piecemeal asset sales)

    – Ability to sell assets "free and clear" pursuant to §363 of the Bankruptcy Code

- The JSNs would have to contend with meaningful legal risks, including:

    – Potential RMBS trustee setoff of R&W claims against servicing advances

    – Potential Government entities setoff of claims stemming from Consent Order and DOJ/AG Settlement against HUD insurance proceeds

    – Potential GNMA setoff of claims against restricted cash being held by GNMA

- Analysis excludes the potential impact of the UCC lien challenge, including argument for claim reduction as result of OID

CENTER|VIEW PARTNERS        2

12-12020-mg    Doc 4732    Filed 08/16/13    Entered 08/16/13 16:47:41    Main Document
Pg 7 of 16

~ Settlement Communication Subject to FRE 408 and Mediation Order ~
~ Subject to Substantial Revision ~
~ Prepared at the Request of Counsel ~

# Adjusted Net Collateral Value (cont'd)

- The recovery value would be discounted for the following reasons, among others:

  – The government would have likely required the purchaser of the assets to assume the Debtor's servicing and monitoring obligations under the Consent Order and DOJ/AG settlements

  – <u>Held-for-Sale Loans</u>
    - Would not benefit from months of work performed by the Debtors during the chapter 11 cases to clear collateral exceptions
    - Would not benefit from better-than-market terms (for Debtors) in Ally stalking horse APA
    - Unclear whether collateral agent (Wells) would be able to provide the reps and warranties required to sell loans pursuant to a market asset purchase agreement

  – <u>Non-Agency Servicing Advances</u>
    - Purchaser would be asked to purchase advances separate from corresponding MSR and, thus, would not control collection of advances
    - No benefit of PSA amendments obtained by the Debtors during the chapter 11 cases, which would constrain the availability of debt financing for a buyer
    - The stalking horse bidder was purchasing both MSR and advances with the intention of generating a return from the MSR; a buyer of only servicing advances would only be able to generate a return from purchasing said advances at a discount to par

  – <u>FHA/VA Loans</u>
    - Bid received in early 2013 was on pool of FHA loans that was intended to represent the "most attractive" loans in the portfolio; not necessarily reflective of value for the entire FHA/VA portfolio
    - Would not benefit from the Debtors' option to monetize over time (up to eight years) in post-chapter 11 liquidating trust
    - There has been limited interest in the VA loan portfolio

*Settlement Communication Subject to FRE 408 and Mediation Order*
*Subject to Substantial Revision*

For Discussion Purposes Only

DRAFT





## Mediation Presentation to Junior Secured Noteholders
July 30, 2013

**SUBJECT TO SUBSTANTIAL REVISION**

*Settlement Communication Subject to FRE 408 and Mediation Order*
*Subject to Substantial Revision*

# OID Will be Disallowed as Unmatured Interest

## Projected Recoveries:

### Senior Unsecured Notes

Holders who declined the June 2008 exchange offer retained a $1,000 unsecured claim and now stand to recover $360.



### Junior Secured Notes

Holders who participated in the June 2008 exchange offer received $800 of new secured notes (JSNs) with a market value of $491 and $309 of OID. At the Petition Date, $142 of OID remained. They now stand to recover $658.



*Settlement Communication Subject to FRE 408 and Mediation Order*
*Subject to Substantial Revision*

# OID Will be Disallowed as Unmatured Interest (con't)

| USD Millions | Under Secured | Fully Secured | |
|---|---|---|---|
| **OID[1] Treated as Unmatured Interest** | | | |
| $ Recovery:[2] | $1,846 | $2,360 | |
| *% of Par:* | *87%* | *111%* | |
| **OID Treated as Valid Prepetition Claim** | | | |
| $ Recovery:[2] | $2,223 | $2,524 | ▲ $137 |
| *% of Par:* | *105%* | *119%* | |

1. For purposes of this calculation, the first two paydowns are assumed to occur on 6/12/13 ($800M) and 7/31/13 ($300M) and the remaining balance is assumed to be repaid as of 11/30/13.
2. Assumes compound interest at contract rate through 11/30/13, and reflects the first two paydowns referenced in note 1.

3



# ResCap – Discussion Materials

**For Illustrative Purposes Only**
**July 29, 2013**

## Summary of Expenses | Costs Incurred– Consolidated [1]

| ($ millions) | 5/14/12 - 2/15/13 | 2/16/13 - 4/30/13 | Total |
|---|---:|---:|---:|
| **Costs Incurred to Date:** | | | |
| 1  Operating Expenses [2] | $ (591) | $ (117) | $ (708) |
| 2  Professional Fees [3] | (181) | (55) | (236) |
| 3  Interest & Fees | (132) | (5) | (138) |
| 4  Subservicing Fees | - | (7) | (7) |
| 5  Consent Order Compliance Costs | - | (12) | (12) |
| 6  Ally Bank Indemnification Payments | (40) | (23) | (63) |
| 7  Cure Costs | (304) | (3) | (307) |
| 8  Sale Related Payments [4] | (92) | - | (92) |
| 9  Other | - | (8) | (8) |
| 10  **Subtotal Costs Incurred to Date** | $ (1,340) | $ (231) | $ (1,570) |

| | Total |
|---|---:|
| **Potential Costs to be Incurred:** | |
| 11  Incurred Costs Through 4/30/13 | $ (1,570) |
| 12  Potential Costs Post 4/30/13 [5] | (1,086) |
| 13  **Total Potential Costs** | $ (2,657) |

(1)  Analysis excludes any cash outflows related to the funding of assets (e.g. funding of servicing advances and GNMA repurchases).
(2)  Includes general operating expenses and compensation and benefits costs.
(3)  Includes JSN professional fees.
(4)  Includes reductions to the purchase price for assumed liabilities and other sale related payments.
(5)  $336 million of costs were incurred from 5/1/13 through 6/30/13.

# Summary of Expenses | Cost Allocation JSN Summary – Combined Revolver and DIP [1]

| ($ millions) | | 5/14/12 - 2/15/13 | 2/16/13 - 4/30/13 | Total |
|---|---|---:|---:|---:|
| | **Allocations to Date: (2)** | | | |
| 1 | Operating Expenses (3) | $ (316) | $ (60) | $ (376) |
| 2 | Professional Fees (4) | (100) | (29) | (129) |
| 3 | Interest & Fees | (107) | (4) | (110) |
| 4 | Subservicing Fees | - | (4) | (4) |
| 5 | Consent Order Compliance Costs | - | (6) | (6) |
| 6 | Ally Bank Indemnification Payments | - | - | - |
| 7 | Cure Costs | (8) | (1) | (9) |
| 8 | Sale Related Payments (5) | (25) | - | (25) |
| 9 | Other | - | (5) | (5) |
| 10 | **Subtotal Allocation to Date** | **$ (556)** | **$ (109)** | **$ (665)** |

| | | Low Estimate | High Estimate |
|---|---|---:|---:|
| | **Potential Allocated Costs:** | | |
| 11 | Allocated Costs Through 4/30/13 | $ (665) | $ (665) |
| 12 | Potential Costs Post 4/30/13 (6,7) | (180) | (300) |
| 13 | **Total Potential Allocated Costs** | **$ (845)** | **$ (965)** |

(1) Analysis excludes any cash outflows related to funding of assets (e.g. funding of servicing advances and GNMA repurchases) and is presented based on when expenses were paid, not when cash was transferred from cash collateral.
(2) Costs prior to 4/30/13 are allocated using the legacy method based on asset balances excluding cash and restricted cash.
(3) Includes general operating expenses and compensation and benefits costs.
(4) Includes allocation of 100% of JSN professional fees.
(5) Includes reductions to the purchase price for assumed liabilities and other sale related payments.
(6) The disclosure statement filed on 7/3/13 reflects the low end of the potential allocated cost range.
(7) $21 million of costs were allocated from 5/1/13 through 6/30/13.

*PRIVILEGED AND CONFIDENTIAL*
*SUBJECT TO JOINT INTEREST PRIVILEGE AND MEDIATION ORDER*

3

# Summary of Expenses | Cost Allocation JSN Summary – Revolver[1]

| ($ millions) | 5/14/12 - 2/15/13 | 2/16/13 - 4/30/13 | Total |
|---|---:|---:|---:|
| **Allocations to Date: (2)** | | | |
| 1   Operating Expenses (3) | $ (187) | $ (55) | $ (242) |
| 2   Professional Fees (4) | (61) | (27) | (88) |
| 3   Interest & Fees | (17) | (4) | (21) |
| 4   Subservicing Fees | - | (3) | (3) |
| 5   Consent Order Compliance Costs | - | (6) | (6) |
| 6   Ally Bank Indemnification Payments | - | - | - |
| 7   Cure Costs | (8) | (1) | (9) |
| 8   Sale Related Payments (5) | (15) | - | (15) |
| 9   Other | - | (4) | (4) |
| 10  **Subtotal Allocation to Date** | **$ (289)** | **$ (100)** | **$ (388)** |

| | Low Estimate | High Estimate |
|---|---:|---:|
| **Potential Allocated Costs:** | | |
| 11  Allocated Costs Through 4/30/13 | $ (388) | $ (388) |
| 12  Potential Costs Post 4/30/13 (6,7) | (179) | (292) |
| 13  **Total Potential Allocated Costs** | **$ (568)** | **$ (680)** |

(1) Analysis excludes any cash outflows related to funding of assets (e.g. funding of servicing advances and GNMA repurchases) and is presented based on when expenses were paid, not when cash was transferred from cash collateral.
(2) Costs prior to 4/30/13 are allocated using the legacy method based on asset balances excluding cash and restricted cash.
(3) Includes general operating expenses and compensation and benefits costs.
(4) Includes allocation of 100% of JSN professional fees.
(5) Includes reductions to the purchase price for assumed liabilities and other sale related payments.
(6) The disclosure statement filed on 7/3/13 reflects the low end of the potential allocated cost range.
(7) $20 million of costs were allocated from 5/1/13 through 6/30/13.

*PRIVILEGED AND CONFIDENTIAL*
*SUBJECT TO JOINT INTEREST PRIVILEGE AND MEDIATION ORDER*

4

## Summary of Expenses | Cost Allocation JSN Summary – DIP [1]

| ($ millions) | 5/14/12 - 2/15/13 | 2/16/13 - 4/30/13 | Total |
|---|---:|---:|---:|
| **Allocations to Date:** [2] | | | |
| 1  Operating Expenses [3] | $ (129) | $ (4) | $ (134) |
| 2  Professional Fees [4] | (38) | (2) | (40) |
| 3  Interest & Fees | (90) | - | (90) |
| 4  Subservicing Fees | - | (0) | (0) |
| 5  Consent Order Compliance Costs | - | (0) | (0) |
| 6  Ally Bank Indemnification Payments | - | - | - |
| 7  Cure Costs | - | (0) | (0) |
| 8  Sale Related Payments [5] | (10) | - | (10) |
| 9  Other | - | (2) | (2) |
| 10  **Subtotal Allocation to Date** | **$ (267)** | **$ (9)** | **$ (276)** |

| | Low Estimate | High Estimate |
|---|---:|---:|
| **Potential Allocated Costs:** | | |
| 11  Allocated Costs Through 4/30/13 | $ (276) | $ (276) |
| 12  Potential Costs Post 4/30/13 [6,7] | (1) | (8) |
| 13  **Total Potential Allocated Costs** | **$ (277)** | **$ (285)** |

(1) Analysis excludes any cash outflows related to funding of assets (e.g. funding of servicing advances and GNMA repurchases) and is presented based on when expenses were paid, not when cash was transferred from cash collateral.
(2) Costs prior to 4/30/13 are allocated using the legacy method based on asset balances excluding cash and restricted cash.
(3) Includes general operating expenses and compensation and benefits costs.
(4) The DIP island was not allocated any JSN professional fees
(5) Includes reductions to the purchase price for assumed liabilities and other sale related payments.
(6) The disclosure statement filed on 7/3/13 reflects the low end of the potential allocated cost range.
(7) $1 million of costs were allocated from 5/1/13 through 6/30/13.

**Purchase Price Calculation - Based on December 31, 2012 Asset Balances**

| | | Closing Purchase Price | | Stalking Horse Purchase Price[1] | | | |
| | | | | No Amendments[2] | | All Amendments[3] | |
| $ in millions | Carry Value (12/31/12) | % | Purchase Price | % | Purchase Price | % | Purchase Price |
| --- | --- | --- | --- | --- | --- | --- | --- |
| MSR/Subservicing | $809 | 118% | $957 | 62% | $505 | 72% | $585 |
| Advances | 1,937 | 99% | 1,918 | 91% | 1,772 | 97% | 1,871 |
| Total | $2,746 | | $2,875 | | $2,277 | | $2,456 |
| **Implied Purchase Price Increase** | | | | | $598 | | $419 |

| | |
| --- | --- |
| *Implied Purchase Price Increase Attributable to Servicing Advances* | $147 |
| *Estimated Portion of Servicing Advance Purchase Price Increase Attributable to JSN Collateral* [4] | $107 |

Note: Both valuations include allocation of $125mm incremental value, per methodology set forth by the bidders pursuant to their APAs. Analysis assumes cure objection deals were acquired at their respective APA purchase price.
(1) Includes purchase of Master Servicing Advances at 95% for comparability with Final Valuation although stalking horse bid did not include Master Servicing Advances.
(2) Assumes advance financeability amendments are not achieved on non-GSAP deals. Eligible/ineligible split of UPB for MSR purchase price determination purposes determined ratably based on analysis as of 8/31/12 balance sheet values. Service fee for eligible deals assumed to equal weighted average service fee for all non-agency deals.
(3) Assumes advance financeability amendments are achieved on all non-GSAP deals.
(4) Amount has been estimated by Houlihan and does not express the view of the Debtors. Houlihan uses this amount and proxy methodology to estimate, only for illustrative purposes, the going concern value at $491mm ($598mm - $107mm). The Debtors disagree with both the methodology and any implication that such value is attributable to going concern.

Confidential