**Hearing Date and Time:  September 11, 2013 at 10:00 a.m. (ET)**
**Objection Deadline:  August 29, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Alexandra Steinberg Barrage
Jonathan Petts

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| --------------------------------------------------------- ) | |
| In re:                                                    ) | Case No. 12-12020 (MG) |
|                                                           ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                  ) | Chapter 11 |
|                                                           ) | |
|                                         Debtors.          ) | Jointly Administered |
|                                                           ) | |
| --------------------------------------------------------- ) | |

**NOTICE OF DEBTORS' MOTION UNDER SECTION 365 OF**
**THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING**
**RELATED AGREEMENTS WITH IMPAC FUNDING**
<u>**CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.**</u>

     **PLEASE TAKE NOTICE** that the undersigned have filed the attached *Motion*

*Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing Related*

*Agreements with Impac Funding Corporation and Impac Mortgage Holdings, Inc.* (the

"<u>Motion</u>").

     **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will take

place on **September 11, 2013 at 10:00 a.m. (prevailing Eastern Time)** before the

Honorable Martin Glenn, at the United States Bankruptcy Court for the Southern District

of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New

York 10004-1408, Room 501.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic

case filing system, and be served, so as to be received no later than **August 29, 2013 at**

**4:00 p.m. (Prevailing Eastern Time)**, upon (a) counsel to the Debtors, Morrison &

Foerster LLP, 1290 Avenue of the Americas, New York, NY 10104 (Attention: Norman

S. Rosenbaum, Alexandra Steinberg Barrage and Jonathan M. Petts); (b) counsel to

Impac Funding Corporation and Impac Mortgage Holdings, Inc., McKenna Long &

Aldridge LLP, 230 Park Avenue, New York, NY 10169 (Attention Christopher F.

Graham and Alan F. Kaufman) and 303 Peachtree Street, Suite 5300, Atlanta, GA 30308

(Attention:  David E. Gordon); (c) the Office of the United States Trustee for the

Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite

1006, New York, NY 10014 (Attention: Tracy Hope Davis, Linda A. Riffkin, and Brian

S. Masumoto); (d) the Office of the United States Attorney General, U.S. Department of

Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530-0001 (Attention: US

Attorney General, Eric H. Holder, Jr.); (e)  Office of the New York State Attorney

General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and Enid N.

Stuart, Esq.); (f) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (g)

counsel for Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022 (Attention: Richard M. Cieri and Ray Schrock); (h) counsel for the committee of unsecured creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention: Kenneth Eckstein and Douglas Mannal); (i) counsel for Ocwen Loan Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019 (Attention: Jennifer C. DeMarco and Adam Lesman); (j) counsel for Berkshire Hathaway Inc., Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention: Thomas Walper and Seth Goldman); (k) Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia, PA 19104-5016); and (m) Securities and Exchange Commission, New York Regional Office, 3 World Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos, Regional Director).

**PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written objection to the relief requested in the Motion, the Bankruptcy Court may deem any opposition waived, treat the Motion as conceded, and enter an order granting the relief requested in the Motion without further notice or hearing.

Dated:  August 19, 2013
       New York, New York

Respectfully submitted,

/s/ Norman S. Rosenbaum

Gary S. Lee
Norman S. Rosenbaum
Alexandra Steinberg Barrage
Jonathan Petts
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and
Debtors in Possession*

**Hearing Date: September 11, 2013 at 10:00 a.m. (ET)**
**Objection Deadline: August 29, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900

Gary S. Lee
Norman S. Rosenbaum
Alexandra Steinberg Barrage
Jonathan M. Petts

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **)** Chapter 11 |
| | **)** |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | **)** Case No. 12-12020 (MG) |
| | **)** |
| Debtors. | **)** Jointly Administered |
| | **)** |

**DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO
ASSUME AND ASSIGN SERVICING RELATED AGREEMENTS WITH IMPAC
FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

         The debtors and debtors in possession in the above-captioned cases (collectively, the

"<u>Debtors</u>") file this motion (the "<u>Motion</u>") for entry of an order, substantially in the form

attached as <u>Exhibit 5</u> (the "<u>Proposed Order</u>"), authorizing the assumption and assignment of

certain servicing related agreements between the Debtors, and Impac Funding Corporation

and/or Impac Mortgage Holdings, Inc. (collectively, "<u>Impac</u>"), pursuant to section 365 of title

11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 6006 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6006-1 of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Teresa Rae Farley (the "Farley Declaration") annexed hereto as Exhibit 4. In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      On November 21, 2012, the Court entered the Sale Order (defined below) approving the sale of the Debtors' servicing platform (the "Sale") to Ocwen Loan Servicing, LLC ("Ocwen") pursuant to that certain Asset Purchase Agreement dated November 2, 2012 between the Debtors and Ocwen (as amended or supplemented  the "APA").  In order to provide for an expeditious approval of the Sale and subsequent closing under the APA, the Debtors and Ocwen entered into that certain Amendment No. 3 to the APA.  Generally, Amendment No. 3 permits the Debtors, in consultation with the Creditors' Committee, to resolve certain sale objections after the closing and, upon and pursuant to such resolutions, assume and assign the agreements to Ocwen under the terms of the APA and Sale Order.

2.      Impac and the Debtors are parties to certain servicing related agreements, eight of which were assumed and assigned to Ocwen as of the Sale's closing date.  Although Impac failed to file an objection to the Sale, in connection with the sale process, it became apparent to the parties that there were certain mortgage servicing agreements with Impac that were not noticed as part of the Sale (as listed on Exhibit 3 annexed hereto, the "Excluded Impac Agreements").  Accordingly, the Debtors, Ocwen, and Impac agreed to exclude the Excluded Impac Agreements from the Sale, with the understanding that the parties would work in good faith to identify each of the Excluded

2

Impac Agreements, determine an appropriate cure amount, if any, and facilitate the transfer of the agreements to Ocwen pursuant to the APA, which sum is expected to yield substantial value for the Debtors' estates.

3.     In the months that followed entry of the Sale Order, the parties worked to identify each of the Excluded Impac Agreements and reach a consensual understanding as to the appropriate cure amount.  Although the Excluded Impac Agreements were identified, to date the Debtors and Impac have been unable to reach agreement regarding an appropriate cure amount.  Despite continued efforts to reach a consensus, the Debtors have determined that it is no longer practical to delay the realization of the value to be derived from the assignment of the Excluded Impac Agreements, pending any consensus on a mutually agreeable cure amount.  Therefore, by this Motion the Debtors seek to assume and assign the Excluded Impact deals to Ocwen pursuant to the APA.

4.     Furthermore, since the closing of the Sale pursuant to the terms and conditions of the Subservicing Agreement by and among certain of the Debtors and Ocwen, as subservicer, effective as of February 15, 2013 (the "Subservicing Agreement"), Ocwen has acted as subservicer for the loans underlying the Excluded Impac Agreements.  The Debtors are unaware of any servicing-related issues as result of Ocwen subservicing the loans.   In addition, Ocwen's demonstrated industry experience, financial credibility, and ample working capital together constitute sufficient adequate assurance of future performance for the purposes of section 365(b)(1)(C) of the Bankruptcy Code.

5.     Accordingly, the Debtors respectfully request that the assumption and assignment of the Excluded Impac Agreements be approved as set forth herein.

3

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider the Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 365 of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Rule 6006-1.

## BACKGROUND

### A.  General Background

7.      On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  On the Petition Date, the Bankruptcy Court entered an order jointly administering the Chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  Since the Petition Date, the Debtors have operated and managed their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these Chapter 11 cases.  On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T. Gonzalez, former Chief Judge of the Bankruptcy Court, as Examiner.

8.      On May 14, 2012, the Debtors filed their *Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m), 365 and 1123, and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 For Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other*

4

*Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (Docket No. 61; "Sale Motion").

9.     On July 26, 2012, the Debtors filed a *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* (Docket No. 924), which was amended and restated on September 18, 2012 (Docket No. 1484; as amended and restated, the "Assignment Notice").

10.    On October 23, 2012 and October 24, 2012, the Debtors successfully conducted an auction for the sale of the servicing platform assets to Ocwen for approximately $3 billion.  At a hearing held on November 19, 2012, this Court approved the Sale Motion on the record.  On November 21, 2012, the Court entered orders approving the sale to Ocwen (the "Sale Order", Docket No. 2246).

11.    On January 31, 2013, the Debtors and Ocwen entered into Amendment No. 3 to the APA.  Amendment No. 3 provides, in recognition that the complete resolution of the assignment of the servicing agreements subject to a sale objection (the "Excluded Agreements") were unlikely to occur by the Closing Date, that such deals would be temporarily excluded from the Sale and would be assigned to Ocwen under the terms of the APA upon the resolution of the applicable sale objection, with Ocwen subservicing any underlying loans in the interim.

**B.  The IMPAC Agreements and Proof of Claim**

12.    Impac and the Debtors are parties to ten servicing related agreements, which were listed on the Assignment Notice (collectively, the "Noticed Agreements," listed

on Exhibit 1), eight of which were assumed and assigned to Ocwen as of the Closing Date
(collectively, the "Previously Assigned Agreements," listed on Exhibit 2).    Impac filed no
cure or sale objections in respect of the Noticed Agreements.

13.    Subsequent to the filing of the Assignment Notice, the Debtors were
made aware of the Excluded Impac Agreements that were not previously listed on the
Assignment Notice.    Since the Closing Date, the Excluded Impac Agreements have been
subserviced by Ocwen pursuant to the Subservicing Agreement.

14.    On November 19, 2012, Impac Mortgage Holdings, Inc. filed a proof of
claim, designated as Claim No. 4086 in the face amount of $8,000,000 alleging loan servicing
defects against GMACM (the "Impac Proof of Claim").

15.    Impac's supporting documentation for its Proof of Claim includes
alleged loan servicing defects associated with certain of the Previously Assigned Agreements,
which were transferred to Ocwen on the Closing Date and for which the Debtors owe no cure
obligations.    However, the same supporting documentation also contains alleged loan
servicing defects associated with the Excluded Impac Agreements that the Debtors now seek
to assume and assign to Ocwen, and which the Debtors have reviewed in connection with this
Motion.

16.    The Debtors have determined that assuming and assigning the
Excluded Impac Agreements is in the best interests of the Debtors, their estates, the Debtors'
creditors, and other parties-in-interest.

17.    Based on research performed by Ocwen and the Debtors on the
applicable loan records and related analysis the Debtors have conducted to date, the Debtors
have estimated the cure amount associated with the Excluded Impac Agreements to be

6

approximately $287,740.04 (the "Cure Amount"). The Debtors are continuing their analysis and reserve the right to amend the proposed Cure Amount as a consequence of further diligence.

18.    The Debtors are prepared to pay the Cure Amount to Impac in full and final satisfaction of any and all of Impac's claims regarding the Excluded Impac Agreements. Upon payment of the Cure Amount, the Debtors' estates will have no further obligations to Impac, including with respect to the Proof of Claim.

19.    The Debtors reserve their right to adjourn the hearing on this Motion with respect to the Cure Amount and respectfully request, in the event of such adjournment, that the Court determine the Cure Amount at a subsequent hearing to the extent that such amount cannot be resolved by the parties consensually. For the avoidance of doubt, the assignment of the Excluded Impac Agreements to Ocwen will not occur until the Cure Amount has been conclusively determined, and the Debtors reserve the right to elect not to assume and assign the Excluded Impac Agreements.

## RELIEF REQUESTED

20.    By this Motion, the Debtors seek entry of the Proposed Order (a) authorizing the Debtors to assume and assign the Excluded Impac Agreements to Ocwen (b) deeming Impac's Proof of Claim expunged upon payment of the Cure Amount; and (c) such other relief as this Court deems just and proper. Further, to the extent that Impac files a timely objection to this Motion challenging the Cure Amount and the parties are unable to reach a resolution regarding the Cure Amount prior to the hearing on this Motion (the "Scheduled Hearing Date"), the Debtors anticipate proceeding with a hearing on the assumption and assignment of the Excluded Impac Agreements at the Scheduled Hearing Date, with the issue of the Cure Amount to be heard at the next regularly scheduled omnibus

7

hearing or on such other hearing date as is mutually agreed upon by the parties or directed by the Bankruptcy Court.

## BASIS FOR RELIEF

21.     Section 365 of the Bankruptcy Code allows a debtor to maximize the value of its estate by assuming executory contracts or unexpired leases that benefit the estate and by rejecting those that do not.  11 U.S.C. § 365(a); *see COR Route 5 Co., LLC v. The Penn Traffic Co. (In re The Penn Traffic Co.)*, 524 F.3d 373, 382 (2d Cir. 2008).  Courts defer to a debtor's business judgment in assuming an executory contract or unexpired lease, and upon finding that a debtor has exercised sound business judgment, approve assumption or rejection under section 365(a) of the Bankruptcy Code.  *In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (stating that a debtor may assume or reject an unexpired lease under section 365(a) in the exercise of its "business judgment"); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts under section 365 is that of "business judgment").  Courts generally will not second guess a debtor's business judgment concerning the assumption of an executory contract.  *See In re Paolo Gucci*, 193 B.R. 411, 414-15 (S.D.N.Y. 1996); *see also In re Sharon Steel Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

22.     Further, section 365 of the Bankruptcy Code authorizes the assumption and assignment of contracts, provided that the defaults under such contracts are cured and adequate assurance of future performance is provided.  *See* 11 U.S.C. §§ 365(b)(1), 365(f)(2).  The words "adequate assurance of future performance" must be given a practical, pragmatic construction in light of the proposed assumption.  *In re Fleming Cos.*, 499 F.3d 300, 307 (3d Cir. 2007); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute insurance).  Among other things,

8

adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee has financial resources and devotes sufficient funding to support success).

23.     The Debtors' decision to assume and assign the Excluded Impac Agreements satisfies the requirements of the Bankruptcy Code and is supported by the Debtors' reasonable business judgment.  Assignment of the Excluded Impac Agreements to Ocwen will bring valuable consideration into the estate, and thus assuming and assigning the Excluded Impac Agreements maximizes the value of the Debtors' estates and is a sound exercise of the Debtors' business judgment.

24.     Moreover, the Debtors are prepared to cure any and all defaults with respect to the Excluded Impac Agreements to the extent required by sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code and Impac can be assured of future adequate assurance of future performance by Ocwen.[1]  Ocwen has the industry experience, financial credibility, and sufficient working capital to service the Excluded Impac Agreements.  *See* Declaration of Ronald M. Faris of Ocwen Loan Servicing, LLC in Support of the Debtors' Sale Motion at ¶¶ 4-14 (Dkt No. 2141); Sale Order at ¶ T (finding Ocwen's promise to perform constituted adequate assurance of future performance with respect to servicing agreements assigned on the Closing Date).  Indeed, Ocwen has evidenced both its intent and ability to satisfy all obligations required under the Excluded Impac Agreements by effectively subservicing the Excluded Impac Agreements after the Closing Date pursuant to the Subservicing Agreement,

9

as well as servicing the Previously Assigned Agreements as the new master servicer for such agreements.  Thus, Ocwen's promise to perform the obligations under the Excluded Impac Agreements constitutes adequate assurance of its future performance under section 365(f)(2) of the Bankruptcy Code.  Accordingly, the Debtors respectfully request that the assumption and assignment of the Excluded Impac Agreements be approved as set forth herein.

## <u>NOTICE</u>

25.    Notice of this Motion has been served in accordance with the *Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures* (Docket No. 141).  Because of the nature of the relief requested, the Debtors submit that such notice is sufficient and that no further notice of the relief requested in the Motion need be provided.

10

## <u>CONCLUSION</u>

26.    WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Order, granting the relief requested in the Motion, and granting such other and further relief to the Debtors as this Court may deem just and proper.

Dated:  August 19, 2013
      New York, New York

**MORRISON & FOERSTER LLP**

By: /s/  Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Alexandra Steinberg Barrage
Jonathan M. Petts
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 468-8000
Fax: (212) 468- 7900

*Counsel for Residential Capital, LLC, et
al., Debtors and Debtors in Possession*

11

## EXHIBIT 1

**Noticed Agreements (Docket Nos. 924, 1484)**

|    | Servicing Rights Document |
|----|---------------------------|
| 1  | ICMB Series 2003-9F |
| 2  | ICMB Series 2004-11 |
| 3  | ICMB Series 2005-6 |
| 4  | ICMB Series 2007-A |
| 5  | ISAC  Series 2004-4 |
| 6  | ISAC  Series 2005-1 |
| 7  | ISAC  Series 2006-3 |
| 8  | ISAC  Series 2006-4 |
| 9  | GMACM/IMPAC Mortgage Loan Purchase Interim Agreement January 1, 2001 |
| 10 | Homecomings Financial Network, Inc./IMPAC Funding Corporation/Homecomings Financial Network, Inc., Seller/Servicer Contract for servicing and purchase of loans |

## EXHIBIT 2

### The Previously Assigned Agreements

|   | Servicing Rights Document |
|---|---|
| 1 | ICMB Series 2003-9F |
| 2 | ICMB Series 2004-11 |
| 3 | ICMB Series 2007-A |
| 4 | ISAC  Series 2004-4 |
| 5 | ISAC  Series 2005-1 |
| 6 | ISAC  Series 2006-4 |
| 7 | GMACM/IMPAC Mortgage Loan Purchase Interim Agreement January 1, 2001 |
| 8 | Homecomings Financial Network, Inc./IMPAC Funding Corporation/Homecomings Financial Network, Inc., Seller/Servicer Contract for servicing and purchase of loans |

2

## EXHIBIT 3

### The Excluded Impac Agreements

|   |   |
|---|---|
| 1 | ICMB Series 2002-9F |
| 2 | ICMB Series 2003-2F |
| 3 | ICMB Series 2003-4 |
| 4 | ICMB Series 2004-10 |
| 5 | ICMB Series 2004-4 |
| 6 | ICMB Series 2004-5 |
| 7 | ICMB Series 2004-6 |
| 8 | ICMB Series 2004-7 |
| 9 | ICMB Series 2004-8 |
| 10 | ICMB Series 2004-9 |
| 11 | ICMB Series 2005-1 |
| 12 | ICMB Series 2005-2 |
| 13 | ICMB Series 2005-4 |
| 14 | ICMB Series 2005-5 |
| 15 | ICMB Series 2005-6 |
| 16 | ICMB Series 2005-7 |
| 17 | ICMB Series 2005-8 |
| 18 | ISAC  Series 2002-2 |
| 19 | ISAC  Series 2002-3 |
| 20 | ISAC  Series 2003-1 |
| 21 | ISAC  Series 2003-3 |
| 22 | ISAC  Series 2004-1 |
| 23 | ISAC  Series 2004-2 |
| 24 | ISAC  Series 2005-2 |
| 25 | ISAC  Series 2006-1 |
| 26 | ISAC  Series 2006-2 |
| 27 | ISAC  Series 2006-3 |
| 28 | ISAC  Series 2006-5 |
| 29 | ISAC  Series 2007-3 |
| 30 | PFCA HM EQTY INVMT TR 2002-IFC1 |
| 31 | PFCA HM EQTY INVMT TR 2002-IFC2 |
| 32 | PFCA HM EQTY INVMT TR 2003-IFC3 |
| 33 | PFCA HM EQTY INVMT TR 2003-IFC4 |
| 34 | PFCA HM EQTY INVMT TR 2003-IFC5 |
| 35 | PFCA HM EQTY INVMT TR 2003-IFC6 |

3

## EXHIBIT 4

**Farley Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Case No. 12-12020 (MG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DECLARATION OF TERESA RAE FARLEY IN SUPPORT OF DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING RELATED AGREEMENTS WITH IMPAC FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.

I, Teresa Rae Farley, hereby declare as follows:

1.    I am the Senior Director of Asset Disposition and am employed by GMAC Mortgage, LLC, an indirect wholly owned subsidiary of Residential Capital, LLC ("<u>ResCap</u>"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").[1]  I have served in my present capacity since November 2012 and have served as a consultant to the Debtors since May 2008.  Prior that time, I was employed by Merrill Lynch where I developed an asset-based warehouse lending business.  In my current position, I am responsible for, among other matters, asset dispositions, including the management and liquidation of certain non-debtor entities.    I am authorized to submit this declaration (the "<u>Declaration</u>") in support of the *Debtors' Motion under Section 365 of the Bankruptcy Code to Assume and*

---

[1]    The names of the Debtors in these cases and their respective tax identification numbers are identified on <u>Exhibit 1</u> to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6], dated May 14, 2012.

2

*Assign Servicing Related Agreements with Impac Funding Corporation and Impac Mortgage Holdings, Inc.* (the "Motion").[2]

2.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant information and analysis I have received through my discussions with employees of Ocwen knowledgeable about the mortgage servicing business, members of the Debtors' management or other employees of the Debtors, and/or the Debtors' professionals and consultants.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Motion on that basis.

3.      Impac and the Debtors are parties to ten servicing related agreements, which were listed on the Assignment Notice (collectively, the "Noticed Agreements," listed on Exhibit 1 to the Motion), eight of which were assumed and assigned to Ocwen as of the Closing Date (collectively, the "Previously Assigned Agreements," listed on Exhibit 2 to the Motion).  Impac filed no cure or sale objections in respect of the Noticed Agreements.

4.      Although Impac failed to file an objection to the Sale, as part of the process, it became apparent to the parties that there were certain mortgage servicing agreements with Impac that were not noticed as part of the Sale (as listed on Exhibit 3 to the Motion, the "Excluded Impac Agreements").  Accordingly, the Debtors, Ocwen, and Impac agreed to exclude the Excluded Impac Agreements from the Sale, with the

---

[2]     Defined terms used but not defined herein shall have the meanings ascribed to such terms as set forth in the Motion.

ny-1093653

understanding that the parties would work in good faith to identify each of the Excluded Impac Agreements, determine an appropriate cure amount, if any, and facilitate the transfer of the agreements to Ocwen pursuant to the APA and the Sale Order.

5.      Since the closing of the Sale pursuant to the terms and conditions of the Subservicing Agreement by and among certain of the Debtors and Ocwen, as subservicer, effective as of February 15, 2013 (the "Subservicing Agreement"), Ocwen has acted as subservicer for the loans underlying the Excluded Impac Agreements.  I am unaware of any servicing-related issues as result of Ocwen subservicing the loans.

6.      Based on research performed by Ocwen and the Debtors on the loan records and related analysis, the Debtors have estimated the cure amount associated with the Excluded Impac Agreements to be approximately $287,740.04 (the "Cure Amount").[3]  The transfer of the Excluded Impac Agreements to Ocwen pursuant to the APA is estimated to yield substantial value for the Debtors' estates.

7.      Thus, I have determined that assuming and assigning the Excluded Impac Agreements to Ocwen is in the best interests of the Debtors, their estates, the Debtors' creditors, and other parties-in-interest.

---

[3]      The Debtors reserve the right to amend the Cure Amount based on any additional diligence.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  August 19, 2013

/s/  Teresa Rae Farley
Teresa Rae Farley

Senior Director of Asset Disposition

5

# **EXHIBIT 5**

**Proposed Order**

6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------
                                              )
In re:                                        )
                                              )       Case No. 12-12020 (MG)
RESIDENTIAL CAPITAL, LLC, et al.,             )
                                              )       Chapter 11
                              Debtors.        )
                                              )       Jointly Administered
                                              )
                                              )
--------------------------------------------------------------  )

**ORDER GRANTING DEBTORS' MOTION UNDER SECTION 365 OF THE
BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING RELATED
AGREEMENTS WITH IMPAC FUNDING CORPORATION AND IMPAC
<u>MORTGAGE HOLDINGS, INC.</u>**

Upon the motion (the "<u>Motion</u>")[1] of the above-captioned debtors and debtors in

possession for entry of an order (the "<u>Order</u>"), pursuant to section 365 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rule 6006 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6006-1 of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of

New York (the "<u>Local Rules</u>"), authorizing the assumption and assignment of the

contracts identified on <u>Exhibit A</u> annexed hereto (the "<u>Excluded Impac Agreements</u>") as

more fully described in the Motion; and the Court having jurisdiction to consider the

Motion and grant the requested relief in accordance with 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and

venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

Court having determined that the relief requested in the Motion is in the best interests of

the Debtors, their estates, their creditors, and all parties in interest; and it appearing that

proper and adequate notice of the Motion has been given and that no other or further

notice is necessary; and the legal and factual bases set forth in the Motion establish just

and sufficient cause to grant the requested relief herein; and upon the record herein; and

after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, AND ORDERED THAT:

The Motion is GRANTED.

1.      Pursuant to section 365 of the Bankruptcy Code, Bankruptcy Rule 6006,

and Local Rule 6006-1, the Debtors' assumption and assignment of the Excluded Impac

Agreements, identified on Exhibit A annexed hereto, to Ocwen Loan Servicing, LLC

("Ocwen") pursuant to the terms of the APA and the Sale Order is approved, subject to

the limitations described below.

2.      This Order resolves all issues relating to assumption and assignment of the

Excluded Impac Agreements *other than* the Actual Cure Amount (defined below).  The

Court will determine the Actual Cure Amount at a subsequent hearing to the extent that

such amount cannot be resolved by the parties consensually.

3.      Payment of the cure amount, as subsequently determined by this Court or

otherwise agreed to by the Debtors, Impac, and the Creditors' Committee (the "Actual

Cure Amount"), to Impac will be in full and final satisfaction of any and all of Impac's

claims against the Debtors' estates, including those included in Impac's Proof of Claim.

Upon payment of the Actual Cure Amount, the Impac Proof of Claim shall be deemed

expunged.

2

4.      To the extent the Debtors, Impac, and the Creditors' Committee agree on an Actual Cure Amount, the Debtors are hereby authorized to pay such amount without further order of the Court.

5.      For the avoidance of doubt, the assignment of the Excluded Impac Agreements to Ocwen will not occur until the Actual Cure Amount has been conclusively determined by the parties or the Court; and notwithstanding the entry of this Order, the Debtors shall retain the discretion not to assume and assign the Excluded Impac Agreements.

6.      The assumption and assignment of the Excluded Impac Agreements shall be subject to and governed by the terms of the *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC;(B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246].

7.      The Debtors are hereby authorized to execute and deliver all instruments and documents, and take all other actions, as may be necessary or appropriate to implement and effectuate the relief granted in this Order.

8.      Entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Debtors' executory contracts and unexpired leases pursuant to, among other things, section 365 of the Bankruptcy Code, including with respect to the Excluded Impac

3

Agreements.  Notwithstanding the relief granted herein and any actions taken hereunder,

nothing in the Motion or this Order shall constitute, nor is it intended to constitute: (i) an

admission as to the validity or priority of any claim against the Debtors; or (ii) a waiver

of the Debtors' rights to dispute any claim.

9.    This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.


Dated:  September ___, 2013
        New York, New York

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

4

### EXHIBIT A

**The Excluded Impac Agreements**

| | Servicing Rights Documents |
|---|---|
| 1 | ICMB Series 2002-9F |
| 2 | ICMB Series 2003-2F |
| 3 | ICMB Series 2003-4 |
| 4 | ICMB Series 2004-10 |
| 5 | ICMB Series 2004-4 |
| 6 | ICMB Series 2004-5 |
| 7 | ICMB Series 2004-6 |
| 8 | ICMB Series 2004-7 |
| 9 | ICMB Series 2004-8 |
| 10 | ICMB Series 2004-9 |
| 11 | ICMB Series 2005-1 |
| 12 | ICMB Series 2005-2 |
| 13 | ICMB Series 2005-4 |
| 14 | ICMB Series 2005-5 |
| 15 | ICMB Series 2005-6 |
| 16 | ICMB Series 2005-7 |
| 17 | ICMB Series 2005-8 |
| 18 | ISAC  Series 2002-2 |
| 19 | ISAC  Series 2002-3 |
| 20 | ISAC  Series 2003-1 |
| 21 | ISAC  Series 2003-3 |
| 22 | ISAC  Series 2004-1 |
| 23 | ISAC  Series 2004-2 |
| 24 | ISAC  Series 2005-2 |
| 25 | ISAC  Series 2006-1 |
| 26 | ISAC  Series 2006-2 |
| 27 | ISAC  Series 2006-3 |
| 28 | ISAC  Series 2006-5 |
| 29 | ISAC  Series 2007-3 |
| 30 | PFCA HM EQTY INVMT TR 2002-IFC1 |
| 31 | PFCA HM EQTY INVMT TR 2002-IFC2 |
| 32 | PFCA HM EQTY INVMT TR 2003-IFC3 |
| 33 | PFCA HM EQTY INVMT TR 2003-IFC4 |
| 34 | PFCA HM EQTY INVMT TR 2003-IFC5 |
| 35 | PFCA HM EQTY INVMT TR 2003-IFC6 |

5