**Exhibit 9**

**RMBS Trusts: Methodology For Calculation Of Recognized Claims**

1. **CALCULATION OF RECOGNIZED RMBS R+W CLAIMS**

**Step 1:** Calculate Total Collateral Losses

The calculation of each trust's[1] Recognized R+W Claim begins with estimating each trust's Total Collateral Losses, which is the sum of the trust's (i) Realized Collateral Losses and (ii) Projected Collateral Losses. Realized Collateral Losses were obtained from the Debtors' VISION platform for Debtor-sponsored RMBS Trusts, and through databases from Intex and Bloomberg for non-Debtor-sponsored RMBS Trusts. Projected Collateral Losses were estimated by Duff & Phelps ("**Duff**")—the RMBS Trustees' expert—using a proprietary loss model.

**Step 2:** Calculate Net Total Collateral Losses after PMI

Net Total Collateral Losses of a trust is the sum of the trust's (i) Realized Collateral Losses and (ii) Projected Collateral Losses, less (iii) any Insurance Benefit. Insurance Benefit is calculated for any trust that has a monoline insurance policy, as the sum of (i) any Net Unreimbursed Insurance Payments, (ii) and Accrued & Unpaid losses, and (iii) any and all estimated future policy payments. For any monoline insurer that, as of the Effective Date, has not made all outstanding policy payments to the insured trust, the Insurance Benefit is reduced to take into account the partial payments. These Insurers are Ambac and FGIC.

For Ambac Duff estimates a partial payment benefit of 92.5%, because, under Ambac current rehabilitation plan, Ambac is required to make 25% of policy payments in cash and pay the remaining 75% of the policy payment in the form of a surplus note. The surplus note is currently quoted at approximately 90 cents on the dollar. Thus, the weighted average of 100% * 25 in cash + 75% * 90 = 92.5%.[2]

For FGIC, Duff calculates the Insurance Benefit as the sum of FGIC's Net Unreimbursed payments plus the trust's allocable portion of the Commutation Payment, on the assumption that the FGIC Settlement Agreement will be approved, as is contemplated by the Plan. Any Pool Mortgage Insurance ("**PMI**") benefit is calculated per the terms of the pool policy and already reflected in the Total Collateral Losses.

---

[11]    To the extent that the collateral in any RMBS Trust is divided by the governing agreements into Loan Groups each Loan Group shall be deemed to be separate trusts for purposes of the methodology set forth herein, and the Claim of any such RMBS Trust shall be the sum of the claim of all of its constituent Loan Groups. Duff utilized Intex (a third party RMBS cash flow data source) for Loan Group classifications. Accordingly, in this Exhibit, the terms "trust" or "RMBS trust" refers to an RMBS Trust or Loan Group in such RMBS Trust, as applicable.

[2]    The 92.5% estimate is Duff's estimate alone. Ambac played no part in the formulation of the estimate, and Ambac has not expressed a view on this issue to Duff, the Debtors, the Creditors' Committee, or any other party.

**Step 3:  Calculate Debtor's Attributable Portion of Net Collateral Losses**

The Net Total Collateral Loss for each trust is then multiplied by the percentage of atrust's loans sold into that trust by a Debtor (the "**Seller Percentage**").  This result is the Debtor's Attributable Portion of Net Collateral Losses.

For (i) Original Settling RMBS Trusts and (ii) Debtor sponsored Additional Settling RMBS Trusts, the Debtor's Seller Percentage is assumed to be 100%.

For third party sponsored Additional Settling RMBS Trusts, the Seller Percentage is obtained, in the first instance, from the trust's Prospectus. Where the Seller Percentage is not available from a trust's prospectus, the Seller Percentage is obtained from a third-party data source (*e.g*., Intex). If the Seller Percentage is neither available from the trust's prospectus, nor from a third party data source, the percentage of loans serviced by a Debtor entity (the "**Servicer Percentage**") is employed as a proxy for the Seller Percentage.  The Servicer Percentage is capped at 100% less the sum of the non-Debtor entity Seller Percentage(s) listed in the trust's prospectus, provided, however, that if neither the Seller Percentage nor Servicer Percentage is available, then the Seller Percentage is set at 5% for vintages 2006 and later, and at 9% for vintages prior to 2006. Further, if the Debtor entity associated with the assumed Seller Percentage cannot be identified, the assumed Seller Percentage is divided evenly between RFC and GMACM.

**Step 4:  Calculate Recognized RMBS R&W Claim**

Each trust's  Recognized R&W Claim is equal to the Claim, unless the trust is an Insured RMBS Trust that has made policy claims against its monoline insurer and as of the Effective Date has received full payment of such claims, in which case the Recognized Claim of such Insured RMBS Trust will set to zero, unless (a) such Insured RMBS Trust is one for which the sum of the net unreimbursed insurance payments, the accrued and unpaid losses, and projected future policy payments is zero or close to zero, (b) such Insured RMBS Trust contains one or more unwrapped tranches of securities that rank senior or equal in priority to tranches insured by a Monoline, in which case the portion of such Insured RMBS Trust's Claims allocable to such unwrapped tranches shall not be set to zero and any distribution on such unwrapped tranches shall be allocable only to such unwrapped tranches, or (c) the RMBS Trustees, with the advice of Duff, reasonably determine that, based on a particular Insured RMBS Trust's structure it would be unfair or inequitable to set the Recognized Claim to zero (each of (a), (b) or (c), an "**Insured Exception**"), in each case as determined by Duff.

 2.    **CALCULATION OF SERVICING CURE CLAIM AND SERVICING DAMAGE CLAIM**

Each trust's Servicing Damage Claim is equal to the total servicing claim amount (*i.e*., $96 million) multiplied by that trust's Servicing Claim Share.

Each trust's Servicing Claim Share is equal to: the product of that trust's Estimated Servicing Losses divided by the sum of each and every trust's Estimated Servicing Losses, as determined by Duff.

Estimated Servicing Losses are related to 1) misapplied and miscalculated payments, 2) wrongful foreclosure and improper loss mitigation practices, and 3) extended foreclosure timing issues caused by improper affidavits, documentation and collection practices.  Information employed to calculate Estimated Servicing Losses was obtained from a review of 146 non-Debtor servicing related litigations and approximately 1,500 Debtor servicing litigations, a review of complaints filed with the Debtor on Debtor-serviced loans, and a review of a sample of Debtor-serviced loans.

Each trust's Estimated Servicing Losses is adjusted by the Servicer Percentage to reflect liability only for those loans serviced by Debtor entities.  The Servicer Percentage is obtained from the applicable governing documents, the RMBS Trusts' prospectus where such information in the prospectus, and, if not available, from third-party sources (*e.g.*, Intex).  In those cases where the Servicer Percentage was unavailable from the governing documents, the prospectus or other third-party sources, the Servicer Percentage was assumed to be the trust shelf's average Servicer Percentage. If it is not possible to calculate a shelf average, the Servicer Percentage is assumed to be the Stratum average.  For some RMBS Trusts, Duff determined that GMACM serviced 100% of the loans; for others, Duff determined that RFC serviced 100% of the loans; and for the rest, Duff determined that both GMACM and RFC serviced a portion of the loans, and the claims are listed against GMACM or RFC or both in accordance with those determinations.

The Servicing Damages Claims of the trusts are divided into two groups: If the Servicing Agreement of a trust was assumed by the applicable Debtor by July 1, 2013, the Servicing Damage Claim is a cure claim; if it was not assumed by that date, the Servicing Damage Claim is an unsecured claim.  Since a Servicing Agreement that had not been assumed by July 1, 2013 may be assumed as late as the Effective Date, the two groups may have to be updated after the filing of the Plan, which will impact many of the calculations contained in the RMBS Trust Claim Schedules.

Each trust's Recognized Cure Claim is equal to the Servicing Damage Claim, unless the trust is an Insured RMBS Trust that has made policy claims against its monoline insurer and as of the Effective Date has received full payment of such claims, in which case the Recognized Claim of such Insured RMBS Trust will set to zero unless one of Insured Exceptions applies, in each case as determined by Duff.