MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Jonathan M. Petts

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------ ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------------------ ) | | |

**DEBTORS' OBJECTION TO *MOTION TO LIFT THE STAY*
FILED BY RAMON QUIROZ [DOCKET NO. 3978]**

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this objection (the "**Objection**") to the *Motion to Lift the Stay,* filed by *pro se* party Ramon Quiroz (the "**Movant**"), as of June 10, 2013 [Docket No. 3978] (the "**Motion**"). In support of the Objection, the Debtors submit the Declaration of Lauren Graham Delehey, dated August 21, 2013 (the "**Delehey Decl.**"), attached hereto as Exhibit 1, and respectfully represent:

### PRELIMINARY STATEMENT

1.      Although the relief requested by the Movant is, on its face, difficult to ascertain, based on certain of the attachments to the Motion, the Movant was apparently motivated to file the Motion in response to an April 25, 2013 order of the Court of Appeals for the Second Circuit (the "**Second Circuit**"). As such, while the Debtors submit it is incumbent upon the Movant to clearly articulate the relief requested, for purposes of this Objection, the Debtors will address the Motion as requesting relief from the automatic stay to proceed with prepetition litigation against Debtors GMAC Mortgage, LLC ("**GMACM**") and Homecomings Financial, LLC ("**Homecomings**") in an action dismissed by a decision of the United States District Court for the Eastern District of New York (the "**District Court**"). The matter is currently on appeal to the Second Circuit, in which it is stayed. The Motion should be denied because the Movant has not satisfied his burden of establishing sufficient cause as to why his case should be permitted to proceed notwithstanding the imposition of the automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      The Movant has not analyzed any of the relevant Sonnax factors in support of his request for relief from the stay, and has failed to satisfy his requisite burden of proof. For the above reasons, and as more fully set forth below, the Debtors respectfully request that this Court deny the Motion.

ny-1104000

## BACKGROUND

**A.    General Chapter 11 Case Background**

3.    On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  No trustee has been appointed in the Chapter 11 cases.

4.    On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

5.    To date, over 6,870 proofs of claim have been filed in these Chapter 11 cases as reflected on the Debtors' claims register.  At least 29 of those proofs of claim relate to appeals of judgments in the Debtors' favor in state and federal courts, which are currently stayed pursuant to section 362(a) of the Bankruptcy Code.  (Delehey Decl. ¶ 3.)

6.    On July 3, 2013, the Debtors and the Creditors' Committee (the "**Plan Proponents**") filed the *Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "**Plan**") [Docket No. 4153] and the *Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors* (the "**Disclosure Statement**") [Docket No. 4157], which was subsequently revised on August 20, 2013 [Docket No. 4770].  The hearing to consider approval of the Disclosure Statement is scheduled for August 21, 2013.

ny-1104000

### B.    The State Court Actions[1]

7.    In 2004, Helen Quiroz, the Movant's then-wife,[2] and Jessica Angel

Quiroz[3] (the "**Borrowers**," and together with the Movant, the "**Quiroz Family**") purchased a

home at 89–37 Metropolitan Avenue in Rego Park, New York (the "**Property**").  Quiroz, 2011

WL 3471497, *2, citing Compl. at apps. G, J.  The Borrowers refinanced the property in July

2005, obtaining a mortgage of $522,000 from Homecomings (the "**Mortgage**").[4] Id., citing

Compl. at 10–11.

8.    On October 8, 2007, after the Borrowers defaulted on their mortgage

payments, U.S. Bank, as Trustee, commenced an action to foreclose on the Mortgage in New

York State Supreme Court, Queens County ("**Quiroz I**").  Id.  Neither Homecomings nor

GMACM was a party to Quiroz I.  Finding that service of the summons and complaint was

proper, and that no defendant filed an answer or requested an extension of time in which to file

an answer, the Honorable Lawrence V. Cullen ordered that the Property be foreclosed upon and

sold.  Id. (citation omitted).  The Borrowers contested this decision, and their opposition

ultimately reached the New York Court of Appeals, which, on May 6, 2010, declined review of

the matter.  Id., citing Compl. at apps. 1, C, E, I. (other citations omitted).

9.    On February 2, 2009, while their opposition to the foreclosure order was

pending, the Borrowers initiated an action in New York State Supreme Court, Queens County,

---

[1] The following procedural history is taken from the District Court's decision described below, Quiroz v. U.S. Bank
Nat. Ass'n, et al., 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011), a copy of which is attached hereto as Exhibit 2.

[2] According to the Motion, Helen Quiroz passed away on February 20, 2012.  Motion at 2.

[3] It is unclear from the record what familial relationship Jessica Angel Quiroz has to the Movant or his late wife, but
the District Court's decision refers to Jessica Angel Quiroz as part of the "Quiroz family."  See Quiroz, 2011 WL
3471497, at *2-3.

[4] Homecomings serviced the Mortgage until July 1, 2009, when Homecomings' servicing business was transferred
to GMACM.  GMACM subsequently serviced the Mortgage until its transfer to Ocwen Loan Servicing, LLC on
February 15, 2013.

against U.S. Bank ("**Quiroz II**," and together with Quiroz I, the "**State Court Actions**"). Id. at *3 (citation omitted). Neither Homecomings nor GMACM was a party to Quiroz II. In Quiroz II, the Borrowers alleged violations of the Truth in Lending Act ("**TILA**"), various related Federal Reserve regulations, and state-law fraud and contract claims. Id. (citation omitted). The Borrowers requested that the court award rescission of the Mortgage agreement, damages corresponding to the loan amounts, statutory damages, punitive damages, and a declaratory judgment to quiet title to the Property in their favor. Id. (citation omitted). The court dismissed the Quiroz II action on *res judicata* grounds by order dated July 1, 2009, concluding that Quiroz I was a final adjudication of all claims arising from the Mortgage transaction. Id. (citation omitted).

### C.    The District Court Action

10.    On June 1, 2010, the Quiroz Family filed a complaint in the District Court (the "**Complaint**" and the "**District Court Action**"), *pro se*, against Debtors Homecomings and GMACM and non-debtors U.S. Bank and New Century Mortgage Corporation (collectively, the "**Institutional Defendants**"), as well as Steven J. Baum, P.C. (the "**Baum Firm**"), which represented U.S. Bank as Trustee in Quiroz I. See Complaint [Case No. 10–cv–2485, Docket No. 1]. The Complaint, liberally construed, alleges: (1) violations of the Quiroz Family's Fifth and Fourteenth Amendment Due Process rights; (2) fraud claims related to defendants' misrepresentations in the state court proceedings; (3) violations of the Fair Debt Collection Practices Act (the "**FDCPA**"); (4) violations of TILA; (5) breach of contract; (6) fraud claims relating to the inducement and assignment of the Mortgage agreement; (7) a private cause of action under the Racketeer Influenced Corrupt Organizations Act ("**RICO**"); and (8) an allegation that the Institutional Defendants' efforts to enforce the Mortgage agreement resulted in psychological harm to the Movant. Quiroz, 2011 WL 3471497, at *1. The Complaint requests

the following relief: (1) a declaratory judgment to quiet title to the Property in the Quiroz

Family's favor; (2) $73,534.34 in damages for the aggregated amounts of secondary loans (with

interest) that the Quiroz Family obtained to pay the allegedly inflated interest rates on the

Mortgage; (3) $500,000 in damages for unjust enrichment; (4) $50,000,000 in punitive damages

in connection with the Movant's psychological condition; (5) that the court "withhold" several

rulings by the New York State courts, and compel the Institutional Defendants to produce

discovery not provided in previous state court proceedings; and (6) that the court compel the

United States Attorney's Office to bring criminal charges against all defendants under RICO.

Quiroz, 2011 WL 3471497, at *1, citing Complaint at 5-6, 14.

11.     Homecomings, GMACM, and the other defendants moved to dismiss the

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the District

Court referred the motions to a Magistrate Judge.  Id.  On May 16, 2011, the Magistrate Judge

issued a Report and Recommendation recommending that the defendants' motions be granted

and that the Complaint be dismissed on the grounds that, *inter alia*, its claims were barred by the

Rooker Feldman Doctrine and *res judicata*.  The report further recommended that the District

Court decline to exercise supplemental jurisdiction over the Complaint's negligence claims.  Id.

at *1, *3-5.  By decision dated August 5, 2011 (the "**Decision**"), the District Court adopted the

Report and Recommendation in its entirety and dismissed the Complaint on the grounds

recommended by the Magistrate Judge.  Id. at *1.

### D.    The Second Circuit Appeal

12.     By notice of appeal dated September 6, 2011 [Case No. 11-3663, Docket

No. 1], the Quiroz Family appealed the Decision to the Second Circuit (the "**Appeal**").  The

Appeal has been briefed by the Quiroz Family [Docket No. 83], the Institutional Defendants

[Docket Nos. 57] and the Baum Firm [Docket No. 58], though no reply brief has been filed by

the Quiroz Family.  Oral argument has also been requested by the Quiroz Family [Docket No.

69], but none has been scheduled.

13.     On May 24, 2012, the Second Circuit stayed the Appeal with respect to

GMACM, Homecomings, and U.S. Bank pursuant to section 362(a)(1) of the Bankruptcy Code

[Docket No. 81].

14.     Approximately ten months later, on March 18, 2013, the Movant, *pro se*,

moved for "summary judgment" on the Appeal and for relief from the automatic stay [Docket

No. 125].

15.     By order dated April 25, 2013, the Second Circuit held that:

the Appellants' motion for 'summary judgment' is CONSTRUED as a motion for
summary reversal of the district court's August 9, 2011 judgment dismissing the
Appellants' complaint; (2) as so construed, decision on the motion is DEFERRED
pending the lifting or termination of the automatic stay; and (3) the Appellants'
motion to lift the automatic stay is DENIED[.]"

Order at 1-2, Ex. 1 to Quiroz Proof of Claim (internal citations omitted).   The Second Circuit

stated that "[a]ny future motion to lift the automatic stay should be filed in the bankruptcy

court." Id. at 2 (citation omitted).[5]

E.     **The Motion for Stay Relief**

16.     On June 10, 2013, the Movant filed the Motion.  As stated above, for

purposes of this Objection the Debtors will address the Motion as seeking relief from the

automatic stay to proceed with the Appeal and the District Court Action.  See Motion at 2.  As

Exhibit 5 to the Motion, the Movant attaches a proof of claim filed by the Movant, on behalf of

Jessica Angel Quiroz, against Homecomings and GMACM in the face amount of $522,000

---

[5] The Second Circuit also ordered the Movant to file, within 30 days of the date that Homecomings and GMACM
notify the Second Circuit that the automatic stay has been lifted or terminated, affidavits or affirmations stating: "(1)
whether [the late] Appellant Helen Quiroz has a personal representative suitable for substitution pursuant to Federal
Rule of Appellate Procedure 43(a); and (2) the age of Appellant Jessica Angel Quiroz at the time that the September
8, 2011 notice of appeal was filed," to determine whether she is a proper party to the Appeal.  Order at 2.

(Claim No. 4413, the "**Quiroz Proof of Claim**").  The Quiroz Proof of Claim does not state any basis for the claim, though it attaches supporting documentation relating to the Mortgage.  See Quiroz Proof of Claim, Exhibits 1-5.

## OBJECTION

### A.    Applicable Authority

17.    The automatic stay imposed by section 362(a) of the Bankruptcy Code is a core provision of bankruptcy law that promotes the reorganization process by providing the debtor with "a breathing spell from [its] creditors."[6]  Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract . . . debtor's attention from its primary goal of reorganizing").  It affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted).  Likewise, it allows the debtor to manage and, where appropriate, centralize all creditor actions against property of the estate, "so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990).

---

[6]  Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

ny-1104000

18.     Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause."  See 11 U.S.C. § 362(d)(1).  In the context of stayed prepetition litigation, the Second Circuit has outlined the following 12-factor test to determine whether good cause exists to lift the stay to allow the litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending the action; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990); see also Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999) (vacating a district court order granting stay relief where the bankruptcy court had not applied the Sonnax Factors, made only sparse factual findings and ultimately did not provide the appellate court "with sufficient information to determine what facts and circumstances specific to the present case the court believed made relief from the automatic stay appropriate….").  In a given case, however, not all of the factors will be relevant, and the court may disregard irrelevant factors. See Mazzeo, 167 F.3d at 143.

8

19.     The moving party bears the initial burden to demonstrate, using the relevant Sonnax factors, that good cause exists for lifting the stay.[7]  The movant's burden is especially heavy if it is an unsecured creditor.  "The general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[8]

**B.     Analysis of the Relevant Sonnax Factors**

20.     Here, the Movant has not performed any analysis of the Sonnax factors, and has failed to satisfy his burden of proof.  However, analysis of the relevant Sonnax factors[9] demonstrates that the stay should not be lifted.

21.     The first Sonnax factor (complete resolution of the issues) does not support stay relief.  Although denial of the Appeal would be dispositive of the District Court Action, the Quiroz Proof of Claim, which does not reference the Appeal or clearly articulate any other stated basis and which the Debtors dispute, would still have to been adjudicated by this Court.  In addition, in the unlikely event that the Quiroz Family was to prevail on the Appeal after receiving stay relief, the case would likely be remanded to the District Court.  There is no dispute that the District Court Action is in its infancy.  Thus, lifting the stay could effectively result in the Debtors having to adjudicate the Movant's claims in at least two forums and would not achieve a complete resolution of the Quiroz Family's claims against the Debtors.

---

[7] See Sonnax, 907 F.2d at 1285.  See Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

[8] In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., Case. No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

[9] Sonnax factors 3 and 9 are not applicable to the facts here.  The Debtors do not address Sonnax factors 7 and 8 in the Objection, but reserve all right with regard thereto.

22.     The second <u>Sonnax</u> factor (interference with the bankruptcy case) weighs in favor of denying the Motion.  To achieve a successful resolution of these Chapter 11 cases, it is imperative that the Debtors devote their efforts to, among other critical tasks, advancing and completing the claims reconciliation process.  As part of the claims reconciliation process, the Debtors expect that they will be filing objections to several substantial claims where a state or federal court judgment in the Debtors' favor is pending appeal.  (Delehey Decl. ¶ 3.)  Granting stay relief to defer to the appellate courts in any of these cases could delay, with respect to such claims, the Debtors' claims reconciliation process for an undetermined amount of time, likely measured in years in light of the delay often attendant to the appellate process.  Likewise, the Debtors' estates would be faced with the additional expense of defending these appeals.

23.     The fourth <u>Sonnax</u> factor (creation of a specialized tribunal) does not support relief from the stay because no specialized tribunal has been created to hear the claims brought in the District Court Action.  The Bankruptcy Code specifically contemplates resolving prepetition claims against the Debtors via a centralized claims resolution process shepherded by the bankruptcy courts.  Although the Quiroz Proof of Claim is not, on its face, based on the Complaint, to the extent the Court were to address any objection to the Quiroz Proof of Claim in light of the Complaint, the Court is well equipped to do so.[10]  Half of the claims in the Complaint are based on federal law (TILA, RICO, FDCPA and the Fifth and Fourteenth Amendments to the U.S. Constitution) and the state law claims (breach of contract, fraud, and infliction of psychological harm) can easily be determined by this Court as part of the claims resolution process to the extent necessary.[11]  The Debtors, of course, believe that this Court will never need

---

[10] The Debtors expressly reserve the right to object to the Quiroz Proof of Claim on all available bases.

[11] <u>See</u>, <u>e.g.</u>, <u>In re Bally Total Fitness of Greater N.Y., Inc.</u>, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009) ("[T]his Court has significant experience in applying state law….").

to reach the merits of the Complaint in adjudicating the Quiroz Proof of Claim, given the District

Court's dismissal of the Complaint on *res judicata* and Rooker Feldman grounds.

24.    The fifth <u>Sonnax</u> factor (assumption of defense by insurer) does not

support relief because the Debtors pay their legal defense fees and costs out-of-pocket for this

action (and many others).  As a result, requiring the Debtors to argue the Appeal, if argument is

scheduled, and to defend the District Court Action (in the unlikely event the Appeal requires

remand to the District Court) will result in increased out-of-pocket defense costs for outside

counsel fees and expenses alone.  (Delehey Decl. ¶ 5.)

25.    The sixth <u>Sonnax</u> factor (whether the action primarily involves third

parties) does not support granting stay relief.  The Debtors see no reason why, to the extent

necessary, this Court could not grant stay relief to permit the Appeal to go forward as to the

defendants U.S. Bank, New Century Mortgage Corp., and the Baum Firm.

26.    The tenth and eleventh <u>Sonnax</u> factors (judicial economy and readiness for

trial, respectively) both weigh in favor of denying relief from the stay.  As set forth above, this

matter is not ready for trial and if the Movant was to prevail on the Appeal (unlikely as that may

be), it would result in remand to the District Court to begin adjudication of the Complaint from

scratch.  Although briefing before the Second Circuit is largely complete (except for a reply brief

to the extent permitted), the Appeal may involve oral argument and it could easily take nine

months, if not longer, before a decision is rendered by the Second Circuit.  In contrast, an

objection to the Quiroz Proof of Claim can be promptly adjudicated by this Court.

27.    The twelfth <u>Sonnax</u> factor (balance of harms) weighs in favor of denying

the Motion.  The Movant has not demonstrated how the continued suspension of the Appeal

results in any material prejudice to the Movant, particularly if the stay is modified to allow

the Movant to proceed against the non-debtor parties.  Moreover, the Movant has waited over a year from the Petition Date to file the Motion.  In addition to being fully immersed in the Plan confirmation process, the Debtors are fully engaged in reconciling and, where appropriate, objecting to the thousands of claims filed against their estates.  To date, the Debtors have filed over 25 omnibus objections to hundreds of proofs of claims and several individual claim objections.  Over the next few weeks and months, the Debtors will be filing additional objections to claims, including those for which pending appeals may be in issue.  The Movant has filed the Quiroz Proof of Claim and such claim should be addressed in a similar manner as those of the thousands of other parties who have filed proofs of claims against the Debtors' estates.  Thus, the balance of the harms clearly weighs in favor of denying relief from the stay.

## CONCLUSION

28.    Based on the weight of settled authority and its application to the Motion as described above, the Debtors respectfully submit that the Movant has failed to meet his burden.  Substantially all of the applicable <u>Sonnax</u> factors weigh heavily in favor of maintaining the automatic stay.  As such, the Court should deny the Motion.

12

WHEREFORE, for the foregoing reasons, the Debtors request that the Court enter an

Order denying the Motion and granting such other relief as the Court deems proper.


New York, New York              /s/ Norman S. Rosenbaum
Dated: August 21, 2013          Gary S. Lee
                                Norman S. Rosenbaum
                                Jonathan M. Petts
                                MORRISON & FOERSTER LLP
                                1290 Avenue of the Americas
                                New York, New York 10104
                                Telephone: (212) 468-8000
                                Facsimile: (212) 468-7900

                                *Counsel to the Debtors and
                                Debtors in Possession*

13

**<u>Exhibit 1</u>**

**Delehey Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

)

In re:                                                )      Case No. 12-12020 (MG)

)

RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,            )      Chapter 11

)

Debtors.            )      Jointly Administered

---------------------------------------------------------------

)

**DECLARATION OF LAUREN GRAHAM DELEHEY,**
**IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL, LLC,**
**IN SUPPORT OF DEBTORS' OBJECTION TO MOTION TO LIFT THE STAY**
**FILED BY RAMON QUIROZ [DOCKET NO. 3978]**

I, Lauren Graham Delehey, declare as follows:

## I.     Background and Qualifications

1.     I serve as In-House Litigation Counsel in the legal department (the "**Legal Department**") at Residential Capital, LLC ("**ResCap**"), a limited liability company organized under the laws of the state of Delaware and the parent of the other debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "**Debtors**"). I have held this position since I joined ResCap on August 1, 2011. In my role as In-House Litigation Counsel at ResCap, I am responsible for the management of residential mortgage-related litigation. I am authorized to submit this declaration (the "**Declaration**") in support of the *Debtors' Objection to Motion to Lift the Stay Filed by Ramon Quiroz* [Docket No. 3978] (the "**Objection**").[12]

2.     In my capacity as In-House Litigation Counsel, I am generally familiar with the Debtors' litigation matters, including the State Court Actions, the District Court Action, and the Appeal relating to the Quiroz Family. Except as otherwise indicated, all statements in

---

[12] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Objection.

this Declaration are based upon my personal knowledge; information supplied or verified by

personnel in departments within the Debtors' various business units; my review of the Debtors'

litigation case files, books and records as well as other relevant documents; my discussions with

other members of the Legal Department; information supplied by the Debtors' consultants; or

my opinion based upon experience, expertise, and knowledge of the Debtors' litigation matters,

financial condition and history.  In making my statements based on my review of the Debtors'

litigation case files, books and records, relevant documents, and other information prepared or

collected by the Debtors' employees or consultants, I have relied upon these employees and

consultants accurately recording, preparing, collecting, or verifying any such documentation and

other information.  If I were called to testify as a witness in this matter, I would testify

competently to the facts set forth herein.

## II.    Appeals Pending Against the Debtors

3.    As of August 21, 2013, over 6,870 proofs of claim have been filed in these

Chapter 11 cases as reflected on the Debtors' claims register.  At least 29 of those proofs of

claim relate to appeals of judgments in the Debtors' favor in state and federal courts, which are

currently stayed pursuant to section 362(a) of the Bankruptcy Code.  As part of the claims

reconciliation process, the Debtors anticipate that they will be filing objections to such claims,

notwithstanding the pendency of the appeals.

4.    In my experience, the appellate process for mortgage-related litigation

can, and frequently does, take several years in both state and federal jurisdictions.

## III.    Legal Defense Fees

5.    In the vast majority of cases, including the Appeal and the District Court

Action, the Debtors pay their legal defense fees and costs out-of-pocket.  As a result, requiring

the Debtors to argue the Appeal, if argument is scheduled, and to defend the District Court

ny-1104000

Action (in the unlikely event the Appeal requires remand to the District Court) will result in

increased out-of-pocket defense costs for outside counsel fees and expenses alone.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Dated:  August 21, 2013

  /s/ Lauren Graham Delehey  
Lauren Graham Delehey
In-House Litigation Counsel for
Residential Capital, LLC

## Exhibit 2

**The District Court's Decision**

ny-1104000

Westlaw

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)
**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

H

Only the Westlaw citation is currently available.NOT FOR PUBLICATION

United States District Court,
E.D. New York.
Ramon QUIROZ, Helen Quiroz, and Jessica Angel
Quiroz, Plaintiffs,
v.
U.S. BANK NATIONAL ASSOCIATION as Trustee, New Century Mortgage Corp., Homecomings
Financial a/k/a Homecomings Financial GMAC
Mortgages, Steven J. Baum, P.C., and GMAC
Mortgages, Defendants.

No. 10–cv–2485(KAM)(JMA).
Aug. 5, 2011.

Ramon Quiroz, Rego Park, NY, pro se.

Helen Quiroz, Rego Park, NY, pro se.

Jessica Angel Quiroz, Rego Park, NY, pro se.

Robert Guttmann, Zeichner Ellman & Krause LLP,
New York, NY, Amy E. Polowy, Natalie Ann
Grigg, Steven J. Baum, P.C., Buffalo, NY, for Defendants.

***ORDER ADOPTING REPORT & RECOMMENDATION***

MATSUMOTO, District Judge.
**\*1** Plaintiffs Ramon Quiroz, Helen Quiroz, and
Jessica Angel Quiroz (collectively, the "plaintiffs"),
proceeding *pro se,* commenced this action on June
1, 2010 against U.S. Bank National Association
("U.S.Bank"), New Century Mortgage Corporation,
Homecomings Financial a/k/a Homecomings Financial GMAC Mortgages ("Homecomings"), and
GMAC Mortgages ("GMAC"), (collectively, the
"Bank Defendants"), as well as Steven J. Baum,
P.C. ("Baum Firm") (collectively, the
"defendants"). (*See* ECF No. 1, Complaint

("Compl.").) In light of plaintiffs' *pro se* status,
their complaint is read liberally [FN1] to allege the
following: (1) violations of plaintiffs' Fifth and
Fourteenth Amendment Due Process rights; (2)
fraud claims related to defendants' misrepresentations in the state court proceedings; [FN2] (3) violations of the Fair Debt Collection Practices Act
("FDCPA"); (4) violations of the Truth in Lending
Act ("TILA"); (5) breach of contract; (6) fraud
claims relating to the inducement and assignment of
the mortgage agreement; (7) a private cause of action under the Racketeer Influenced Corrupt Organizations Act ("RICO"); [FN3] and (8) an allegation
that the Bank Defendants' efforts to enforce the
mortgage agreement resulted in psychological harm
to plaintiff Ramon Quiroz.

> FN1. *See Triestman v. Fed. Bureau of
> Prisons,* 470 F.3d 471, 474 (2d Cir.2006)
> (noting that *pro se* submissions are
> "construed liberally and interpreted 'to
> raise the strongest arguments that they suggest' " (quoting *Pabon v. Wright,* 459 F.3d
> 241, 248 (2d Cir.2006))).

> FN2. Plaintiffs clearly state in their objections to Judge Azrack's Report & Recommendation that the fraud claims are asserted against all defendants, including the
> Baum Firm. (*See* ECF No. 52, Plaintiffs'
> Objections to R & R dated 5/23/2011 at 2.)

> FN3. Plaintiffs also state in their objections that they intended to assert a civil
> RICO claim against the defendants. (*Id.* at
> 4–5.)

Plaintiffs request the following relief: (1) a declaratory judgment to quiet title to the property in
their favor; (2) $73,534.34 in damages for the aggregated amounts of secondary loans with interest;
(3) $500,000 in damages for unjust enrichment; (4)
$50,000,000 in punitive damages in connection
with Ramon Quiroz's psychological condition; (5)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)
**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

that the court "withhold" several rulings by the New York State courts, and compel the Bank Defendants to produce discovery not provided in previous state court proceedings; and (6) that the court compel the United States Attorney's Office to bring criminal charges against all defendants under RICO. (Compl. at 5–6, 14.)

Defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* ECF No. 34, Notice of Motion to Dismiss by Baum Firm ("Baum Firm Mot."); ECF No. 40, Motion to Dismiss by Bank Defendants ("Bank Defs. Mot.").) The court referred the motions to Magistrate Judge Joan M. Azrack, who has issued a Report and Recommendation ("Report & Recommendation" or "R & R") recommending that defendants' motions to dismiss be granted. (ECF No. 50, Report & Recommendation dated 5/16/2011.) Plaintiffs have timely objected to the R & R. (*See* ECF No. 52, Plaintiffs' Objections to R & R dated 5/23/2011 ("Obj.").) The Bank Defendants filed an untimely [FN4] opposition to plaintiffs' objections to the R & R. (*See* ECF No. 54, Bank Defendants' Reply in Opposition to Plaintiffs' Objections to R & R dated 6/10/2011 ("Obj.Reply").) Plaintiffs filed a reply to the Bank Defendants' opposition. (*See* ECF No. 58, Plaintiffs' Reply Memorandum in Opposition dated 6/30/2011 ("Reply").) The court is not required to consider the Bank Defendants' untimely opposition or plaintiffs' reply, which is not provided for in Federal Rule of Civil Procedure 72. For purposes of having a complete record, however, the court will consider these submissions. Having undertaken a *de novo* review of the record in light of the plaintiffs' timely objections pursuant to 28 U.S.C. § 636(b)(1), the court incorporates the thorough and well-reasoned R & R by reference and adopts it in its entirety.

FN4. Defendants were served with a copy of plaintiffs' objections to the R & R via the court's electronic case filing system on May 26, 2011. (*See* Notice of Electronic Filing dated 5/25/2011.) Pursuant to Feder-

al Rule of Civil Procedure 72(b)(2), defendants had 14 days after being served with the objections, or until June 9, 2011, to file any response. Fed.R.Civ.P. 72(b)(2). The Bank Defendants did not file their response until June 10, 2011. Therefore, their response to plaintiffs' objections is untimely.

### STANDARD OF REVIEW
**I. Review of Report & Recommendation**

**\*2** To the extent that a party makes specific and timely written objections to a magistrate judge's findings, the district court must apply a *de novo* standard of review. *See United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *see also* 28 U.S.C. § 636(b)(1). Upon such *de novo* review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**II. Underlying Dispute**

The relevant facts in this action are set out in detail in Judge Azrack's R & R. (R & R at 4–6.) Those facts are repeated here only to the extent necessary to support the court's conclusions.

**a. Facts**

In 2004, Helen Quiroz and Jessica Angel Quiroz purchased a home at 89–37 Metropolitan Avenue in Rego Park, New York ("the property"). (Compl. at apps. G, J.) They refinanced the property in July 2005, obtaining a mortgage of $522,000 from Homecomings. (Compl. at 10–11.) Plaintiffs allege that the Homecomings loan officer represented that the interest rate on the new mortgage would be fixed at 5.5 percent for the first five years, and that the monthly payments would be $2,392.50. (*Id.*) In reality, however, the loan agreement provided for an adjustable rate, rather than a fixed rate. (*Id.*)

From the beginning, plaintiffs were charged more than the amount represented to them by the Homecomings loan officer. (*Id.* at 10.) Moreover, in 2007, plaintiffs were notified that the interest

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)

**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

rate on their mortgage would be adjusted to seven percent. (*Id.*) In the fall of 2008, plaintiffs attempted to rescind the mortgage, but Homecomings refused. (*Id.* at app. H.) The interest rate on plaintiffs' mortgage increased again in early 2009, to more than eight percent. (*Id.* at 11.) Plaintiffs allege that, in order to keep up with the increasing mortgage payments, they obtained additional loans from Countrywide Financial and Bank of America totaling $60,000 (the "secondary loans"). (*Id.* at 12.)

**b. State Court Proceedings**

On October 8, 2007, after plaintiffs defaulted on their mortgage payments, U.S. Bank initiated an action in New York State Supreme Court, Queens County, against Jessica Angel Quiroz and Helen Quiroz, seeking an order of foreclosure and sale ("Quiroz I"). (*See generally* ECF No. 34–3, Baum Firm Mot., Ex. B, Quiroz I Complaint ("Quiroz I Compl.").) The Baum Firm represented U.S. Bank as Trustee in Quiroz I. (*Id.*) Finding that service of the summons and complaint was proper, and that no defendant filed an answer or requested an extension of time in which to file an answer, the Honorable Lawrence V. Cullen ruled in favor of U.S. Bank and ordered that the property be foreclosed upon and sold. (*See generally* ECF No. 34–4, Baum Firm Mot., Ex. C, Decision by Hon. Lawrence V. Cullen ("Quiroz I Decision").) The Quiroz family contested this decision, and their opposition ultimately reached the New York Court of Appeals, which, on May 6, 2010, declined review of the matter. (*See* ECF No. 34–5, Baum Firm Mot., Ex. D, Opposition to Foreclosure Order ("Quiroz I Opp'n"); Compl. at apps. 1, C, E, I.)

**\*3** On February 2, 2009, while their opposition to the foreclosure order was pending, Jessica Angel Quiroz and Helen Quiroz initiated an action in New York State Supreme Court, Queens County, against U.S. Bank ("Quiroz II"). (*See generally* ECF Nos. 34–6, 34–7, 34–8, Quiroz II Complaint ("Quiroz II Compl.").) In Quiroz II, the Quiroz family alleged violations of TILA, various related Federal Reserve regulations, and state-law fraud and contract

claims. (*Id.*) Although the Quiroz II complaint refers to the Baum Firm, the firm is not explicitly included in the caption. (*Id.*) The Quiroz family requested that the court award rescission of the mortgage agreement, damages corresponding to the loan amounts, statutory damages, punitive damages, and a declaratory judgment to quiet title to the property in their favor. (*See generally id.*) On July 1, 2009, the Honorable Bernice D. Siegal dismissed the Quiroz II complaint on *res judicata* grounds, concluding that Quiroz I was a final adjudication of all claims arising from the mortgage transaction. (*See* ECF No. 34–9, Baum Firm Mot., Ex. F, Decision by Hon. Bernice D. Siegal ("Quiroz II Dismissal").)

**III. Report & Recommendation**

Judge Azrack first recommended that the court dismiss plaintiffs' Fifth and Fourteenth Amendment Due Process claims, the FDCPA claim, and the fraud claims against the Bank Defendants under the *Rooker–Feldman* doctrine. (R & R at 8.) Judge Azrack correctly noted that "[t]he *Rooker–Feldman* doctrine designates the United States Supreme Court as the only federal court that may hear an appeal from a state-court judgment, and denies all other federal courts jurisdiction over claims that are inextricably intertwined with a prior determination issued by a state court." (*Id.* (internal quotations and citation omitted).) The doctrine, as explained in the R & R, is limited to cases " 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.' " (*Id.* at 8–9 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283–84, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).) In the Second Circuit, four requirements must be met for application of the *Rooker–Feldman* doctrine:

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)

**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

state-court judgment must have been rendered before the district court proceedings commenced.

(*Id.* at 9 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005)).)

Reviewing plaintiffs' complaint, Judge Azrack correctly concluded that the first and fourth "procedural requirements" outlined above "are satisfied in this case" because plaintiffs lost in the state court proceedings, Quiroz I and Quiroz II, and the instant federal action was commenced after the decisions in those cases. (*Id.*) Judge Azrack further correctly determined that the second and third "substantive requirements" for application of the *Rooker–Feldman* doctrine "are also met here," noting that "plaintiffs go so far as to explicitly state their dissatisfaction with the state court proceedings, and to petition this Court to review and modify, or to vacate entirely, those decisions." (*Id.* at 10.) The R & R concluded that "[t]o the extent plaintiffs explicitly ask for review and rejection of the state courts' orders, ... those claims are barred by [the] *Rooker–Feldman* doctrine." (*Id.* at 10–11.)

**\*4** Judge Azrack then went on to analyze the specific causes of actions raised by the plaintiffs, and determined that they "similarly fail to surpass the *Rooker–Feldman* bar." (*Id.* at 11.) Specifically, Judge Azrack found that plaintiffs' claim that they were denied due process when Judge Cullen declined to compel discovery from the Bank Defendants in Quiroz I "explicitly seeks the review and reversal of a particular decision made in state court" and is "inextricably intertwined with orders that have issued from a state court, and [is] thus barred by the *Rooker–Feldman* doctrine." (*Id.*) Similarly, because plaintiffs' fraud claims concerning the Bank Defendants' conduct in state court would require the court to " 'effectively declare the state court judgment fraudulently procured and thus void,' " the claims are "inextricably intertwined with the state court proceedings, ... [and] barred by [the] *Rooker–Feldman* doctrine." (*Id.* (quoting *Swiatkowski v. Citibank,* No. 10–CV–114, 2010 WL 3951212, at \*10 (E.D.N.Y. Oct. 7, 2010)).)

Judge Azrack also correctly found that plaintiffs' FDCPA claim was barred by the *Rooker–Feldman* doctrine. (*Id.* at 12.) The R & R explains that plaintiffs' only allegation regarding the collection is "their belief that the debt being collected was false," and thus "any FDCPA claim based on the falsity of the debt is barred by *Rooker–Feldman* because it would be inextricably intertwined with Quiroz I." (*Id.*) Finally, Judge Azrack notes that plaintiffs' request for "restoration of title" to the property and "rescission of the mortgage essentially asks this court to vacate Quiroz I in clear violation of *Rooker–Feldman."* (*Id.*)

In the R & R, Judge Azrack also found that most of plaintiffs' claims were barred by the doctrine of res judicata. (*Id.* at 14.) The R & R correctly noted that, in New York, the doctrine of res judicata will bar relitigation of issues in a subsequent litigation if three requirements are met: " '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.' " (*Id.* at 13 (quoting *Monahan v. New York City Dept. of Corrections,* 214 F.3d 275, 285 (alteration in original) (2d Cir.2000)).) Here, Judge Azrack found that the first requirement was satisfied because "Quiroz I is a final adjudication on the merits." (*Id.* at 14.) Second, Judge Azrack found that "the requirement of privity is similarly met." (*Id.*) Plaintiffs Helen Quiroz and Jessica Angel Quiroz "were [parties] in Quiroz I" and Quiroz II, and "Ramon Quiroz, though not a named party, was in privity with Helen and Jessica" because his "interests in both prior actions were identical to those of his wife and daughter" and he was "intimately involved with the prior state court proceedings." (*Id.*)

**\*5** Lastly, Judge Azrack found that "the majority of plaintiffs' present claims arise from the same factual grouping at the center of both prior state court proceedings—namely, issues surrounding

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)
**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

whether the lender misrepresented or failed to disclose material terms of the mortgage agreement, and whether [U.S. Bank] had a valid right to enforce that agreement," and thus are barred from relitigation. (*Id.* at 15.) Specifically, the R & R concludes that because the TILA claims "pertains to alleged improprieties during the formation and signing of the mortgage agreement," it is "precisely the type of issue that should have been raised in Quiroz I" and thus the claim is now barred by res judicata. (*Id.*) Similarly, because plaintiffs' breach of contract claim "concerns whose conception of the contract—plaintiffs' or defendants'—is valid" the claim "should have been raised during Quiroz I" and is thus also barred by res judicata. (*Id.* at 16.) Finally, the R & R concluded that because plaintiffs' various fraud claims in this action "pertain to the formation and validity of the contract, and whether various defendants possessed documentation," the claims "should have been raised in the initial foreclosure proceeding and are barred by res judicata." (*Id.*)

Although Judge Azrack concluded that "plaintiffs did not intend to raise a private cause of action under RICO" in their complaint (*see id.* at 3 n. 3.), the R & R concluded that "even if plaintiffs do attempt to bring a RICO claim, it would fail under Federal Rule of Civil Procedure 12(b)(6)" as the complaint is "bereft of any allegations of a RICO enterprise or a pattern of racketeering activity." (*Id.*) Further, Judge Azrack concluded that "there is no reason to grant plaintiffs leave to amend the complaint" as "there is no indication that a valid RICO claim could be stated." (*Id.*)

Judge Azrack recommended "that the Court decline to exercise supplemental jurisdiction over" plaintiffs' negligence claim for the alleged "serious Physical Impairment and Psychological Harm" suffered by Ramon Quiroz as a result of defendants' actions. (*Id.* at 17.) The R & R noted that the negligence claims "rely on no federal law" and that there is no diversity jurisdiction because plaintiffs and the Baum Firm are all citizens of New York. (*Id.*) Moreover, the R & R recommends that "even if this

Court were to exercise supplemental jurisdiction over the negligence claim, the allegations of liability for Ramon Quiroz's injuries are merely legal conclusions, insufficient to survive a motion to dismiss under Rule 12(b)(6)." (*Id.*) Finally, although the R & R concluded that "plaintiffs do no attempt to bring a fraud claim specifically against the Baum Firm," Judge Azrack recommended that "even if such a claim were pleaded, ... the Court [should] decline to exercise supplemental jurisdiction over [that] claim" as well. (*Id.* at 2 n. 2.)

### DISCUSSION

**\*6** In light of defendants' timely objections, the court has undertaken a *de novo* review of the full record, including the applicable law, the pleadings, the underlying record, the parties' submissions on the motions to dismiss, the R & R, the plaintiffs' objections to the R & R and reply, and the Bank Defendants' untimely reply in opposition to plaintiffs' objections to the R & R. *See* 28 U.S.C. § 636(b)(1).

In their objections, plaintiffs argue that "[t]he causes of action pleaded by plaintiffs demanded in the complaint are valid." (Obj. at 2.) Plaintiffs clarify that "[i]t is very clear plaintiffs asserted a fraud claim specifically against the 'Baum Firm' " and that "[i]t is now entirely clear plaintiffs demand[ ][a] cause of action under RICO." (*Id.* at 2 n. 2, 4.) Consequently, plaintiffs ask that the court allow them to "adequately plead a RICO claim." (*Id.* at 5.) Moreover, plaintiffs now argue that "U.S. Bank National Association as trustee is not the party in question and not involved in this matter." (*Id.* at 4.) In addition, plaintiffs "specifically ask this Court to reverse [the] rulings by New York State courts, ... to compel defendants to produce discovery material not provided in a previous state court proceeding," and "to compel the United States Attorney's Office to bring criminal charges against" the Baum Firm and GMAC. (*Id.* at 4 (internal quotations and footnote omitted); *see also id.* at 5.) Finally, plaintiffs provide the court with an excerpt from a discussion regarding "facts that caused the financial crash in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)
**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

the UNITED STATES OF AMERICA." (*Id.* at 8–25.)

The Bank Defendants oppose plaintiffs' objections, arguing that "plaintiffs again proffer disjointed and incomprehensible 'arguments.' " (Obj. Reply at 2.) Arguing that the R & R should be adopted in its entirety, the Bank Defendants argue that "the Report reviewed each discrete claim in plaintiffs' Complaint and determined that each and every one of them should be dismissed under one or more grounds." (*Id.* at 3.) Moreover, the Bank Defendants argue that the R & R correctly determined that "certain of the Complaint's claims were explicitly offered as claims in the State Court Actions, and thus should be dismissed under the doctrine of res judicata." (*Id.* at 5.) Finally, the Bank Defendants contend that "the Report correctly determined that, to the extent it is alleged at all ..., no viable claim for RICO is made in the Complaint." (*Id.* at 6.)

In their reply, plaintiffs argue that, under the Due Process Clause and the Constitution of the United States, "Magistrate Azrack can not [sic] recommend dismissing plaintiff['s'] complaint." (Reply at 8.) Plaintiffs argue that the Bank Defendants "are not the real party in interest" in this case, and thus their motion to dismiss should be denied. ( *Id.* at 5, 8–9.) Plaintiffs also "demand to appoint ... Eric Schneiderman" to prosecute claims against the defendants for their violations of the False Claims Act and RICO. (*Id.* at 5.) The plaintiffs "again admit that their action is an appeal from the State Court decisions" and "plead to discovery in this court." (*Id.* at 6, 8.) Moreover, plaintiffs argue that because of the disability suffered by Ramon Quiroz as a result of defendants' practices, they are entitled to the defense of laches. (*Id.* at 11.) Finally, plaintiffs incorporate into their reply what appears to be a Huffington Post article regarding federal audits of the nation's five largest mortgage lenders. (*Id.* at 12–18.)

**\*7** The court has considered the foregoing objections and undertaken a *de novo* review of the R

& R, the underlying pleadings and factual record upon which it is based, and the relevant legal authorities. Having conducted such review, and upon careful consideration of the plaintiffs' objections, the objections are overruled. This court, fully concurring with Judge Azrack's R & R in all material respects, hereby adopts, in its entirety, the rationale articulated in the detailed, thorough and well-reasoned R & R, which embodies a correctly grounded analysis of the factual record and legal authorities. Specifically, the court agrees with and fully adopts Judge Azrack's findings that: (1) the *Rooker–Feldman* doctrine bars review of plaintiffs' Fifth and Fourteenth Amendment Due Process claims, FDCPA claim, and fraud claims; (2) the doctrine of res judicata bars relitigation of plaintiffs' TILA and predatory lending claims, breach of contract claim, and fraud claims; (3) that plaintiffs have not alleged sufficient facts to plausibly state a RICO claim, that there is no indication that a RICO claim could be stated, and that thus plaintiffs are denied leave to amend their complaint; and (4) that the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state-law fraud and negligence claims. Consequently, defendants' motions to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) are granted.

### CONCLUSION

For the reasons set forth above, Judge Azrack's well-reasoned and thorough Report & Recommendation is incorporated by reference and adopted in its entirely as the opinion of the court, and plaintiffs' objections are overruled. The Bank Defendants' and the Baum Firm's motions to dismiss are granted in their entirety and plaintiffs' complaint is dismissed with prejudice.

The Bank Defendants shall serve a copy of this Order on plaintiffs and file a Certificate of Service on the electronic docket by no later than August 8, 2011. The Clerk of the Court is respectfully requested to enter judgment in accordance with this Order and to close this case.

**SO ORDERED.**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)

**(Cite as: 2011 WL 3471497 (E.D.N.Y.))**

E.D.N.Y.,2011.

Quiroz v. U.S. Bank Nat. Ass'n

Not Reported in F.Supp.2d, 2011 WL 3471497 (E.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.