EXHIBIT 2





Wednesday,
April 28, 2010

Part II

# Environmental Protection Agency

40 CFR Part 87
Advance Notice of Proposed Rulemaking on Lead Emissions From Piston-Engine Aircraft Using Leaded Aviation Gasoline; Proposed Rule

# ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Part 87**

[EPA–HQ–OAR–2007–0294; FRL–9141–7]

**RIN 2060–AP79**

**Advance Notice of Proposed Rulemaking on Lead Emissions From Piston-Engine Aircraft Using Leaded Aviation Gasoline**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Advance notice of proposed rulemaking.

---

**SUMMARY:** EPA is issuing this Advance Notice of Proposed Rulemaking (ANPR) to describe information currently available and information being collected that will be used by the Administrator to issue a subsequent proposal regarding whether, in the Administrator's judgment, aircraft lead emissions from aircraft using leaded aviation gasoline (avgas) cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare. In this ANPR we describe and request comment on the data available for evaluating lead emissions, ambient concentrations and potential exposure to lead from the continued use of leaded avgas in piston-engine powered aircraft. We also describe and request comment on additional information being collected that will inform any future action.

This ANPR is being issued to further respond to a petition submitted by Friends of the Earth (FOE) in 2006. Emissions of lead from piston-engine aircraft using leaded avgas comprise approximately half of the national inventory of lead emitted to air. There are almost 20,000 airport facilities in the U.S. at which leaded avgas may be used. EPA has long-standing concerns regarding exposure to lead, particularly during childhood. The most recent review and revision of the National Ambient Air Quality Standard (NAAQS) for lead, promulgated in 2008, found that serious health effects occur at much lower levels of lead in blood than previously identified and did not identify a safe level of lead exposure.

**DATES:** Comments must be received on or before June 28, 2010.

**ADDRESSES:** Submit your comments, identified by Docket ID No. EPA–HQ–OAR–2007–0294, by one of the following methods:

• *http://www.regulations.gov:* Follow the on-line instructions for submitting comments.
• *E-mail: a-and-r-docket@epa.gov.*
• *Fax:* (202) 566–9744.
• *Mail:* Environmental Protection Agency, Mail Code: 6102T, 1200 Pennsylvania Ave., NW., Washington, DC 20460. Please include two copies.
• *Hand Delivery:* EPA Docket Center (Air Docket), U.S. Environmental Protection Agency, EPA West Building, 1301 Constitution Avenue, NW., Room: 3334 Mail Code: 2822T, Washington, DC. Such deliveries are only accepted during the Docket's normal hours of operation, and special arrangements should be made for deliveries of boxed information.

*Instructions:* Direct your comments to Docket ID No. EPA–HQ–OAR–2007–0294. EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *http://www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information that you consider to be CBI or otherwise protected through *http://www.regulations.gov* or e-mail. The *http://www.regulations.gov* Web site is an "anonymous access" system, which means EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an e-mail comment directly to EPA without going through *http://www.regulations.gov* your e-mail address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the Internet. If you submit an electronic comment, EPA recommends that you include your name and other contact information in the body of your comment and with any disk or CD-ROM you submit. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, EPA may not be able to consider your comment. Electronic files should avoid the use of special characters, any form of encryption, and be free of any defects or viruses. For additional information about EPA's public docket visit the EPA Docket Center homepage at *http://www.epa.gov/epahome/dockets.htm.*

*Docket:* All documents in the docket are listed in the *http://www.regulations.gov* index. Although listed in the index, some information is not publicly available, *e.g.,* CBI or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, will be publicly available only in hard copy. Publicly available docket materials are available either electronically in *http://www.regulations.gov* or in hard copy at the EPA Docket Center, EPA/DC, EPA West, Room 3334, 1301 Constitution Avenue, NW., Washington, DC. The Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the Air Docket is (202) 566–1742.

**FOR FURTHER INFORMATION CONTACT:** Marion Hoyer, Assessment and Standards Division, Office of Transportation and Air Quality, 2000 Traverwood Drive, Ann Arbor, MI 48105; telephone number: (734) 214–4513; fax number: (734) 214–4821; e-mail address: *hoyer.marion@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. General Information

*A. What should I consider as I prepare my comments for EPA?*

1. *Submitting CBI.* Do not submit this information to EPA through *http://www.regulations.gov* or e-mail. Clearly mark the part or all of the information that you claim to be CBI. For CBI information in a disk or CD ROM that you mail to EPA, mark the outside of the disk or CD ROM as CBI and then identify electronically within the disk or CD ROM the specific information that is claimed as CBI. In addition to one complete version of the comment that includes information claimed as CBI, a copy of the comment that does not contain the information claimed as CBI must be submitted for inclusion in the public docket. Information so marked will not be disclosed except in accordance with procedures set forth in 40 CFR Part 2.

2. *Tips for Preparing Your Comments.* When submitting comments, remember to:

• Identify the rulemaking by docket number and other identifying information (subject heading, **Federal Register** date and page number).
• Follow directions—The agency may ask you to respond to specific questions or organize comments by referencing a Code of Federal Regulations (CFR) part or section number.
• Explain why you agree or disagree, suggest alternatives, and substitute language for your requested changes.
• Describe any assumptions and provide any technical information and/or data that you used.
• If you estimate potential costs or burdens, explain how you arrived at your estimate in sufficient detail to allow for it to be reproduced.

### B. Background Information Regarding General Aviation and Use of Piston-Engine Aircraft

In the U.S., general aviation aircraft fly over 27 million hours and carry 166 million passengers annually.[17] Approximately 66 percent of hours flown by general aviation are conducted by piston-engine aircraft.[18] Aircraft in the general aviation fleet are used for personal transportation (36 percent), instructional flying (19 percent), corporate uses (11 percent), business (11 percent), air taxi and air tours (8 percent) and the remainder include hours spent in other applications such as aerial observation and aerial application.[19] According to the 2008 General Aviation Statistical Databook & Industry Outlook report by the General Aviation Manufacturers Association (GAMA) there were 578,541 pilots in the United States in 2008.[20] According to GAMA, in 2008, the number of active single-engine piston-powered aircraft was 144,220 and the number of active twin-engine piston-powered aircraft was 18,385. In 2008, 1,791 new piston-engine aircraft were manufactured in the U.S.

FAA's Office of Air Traffic provides a complete listing of operational airport facilities in the National Airspace System Resources (NASR) database.[21] In 2008, there were 19,896 airport facilities in the U.S., the vast majority of which are expected to have activity by piston-engine aircraft that operate on leaded avgas. FAA's National Plan of Integrated Airport Systems identifies approximately 3,400 airports that are significant to national air transportation.

### C. Background on the Petition and EPA's Response

In a 2003 letter to the EPA, FOE initially raised the issue of the potential for endangerment caused or contributed to by lead emissions from the use of leaded avgas.[22] In 2006, FOE filed a petition with EPA requesting that the Administrator find endangerment or, if there was insufficient information to find endangerment, commence a study of lead emissions from piston-engine aircraft. In 2007, the EPA issued a **Federal Register** notice on the petition requesting comments and information related to a wide range of issues regarding the use of leaded avgas and potential public health and welfare exposure issues.[23] We sought comments regarding exposure to lead from avgas combustion, emissions of lead, fuel options, and piston-engine technology. The comments received to date are publicly available in the docket (EPA–HQ–OAR–2007–0294). The majority of comments received concerned the nature of the industry and fuel supply issues. The commenters did not supply information regarding health or exposure issues. In 2008, the EPA initiated a lead study which will improve the manner in which EPA models emissions from piston-engine aircraft. This study is described in further detail in Section VI of this document. At the time we received FOE's petition, the EPA was in the process of a full re-evaluation of the science supporting the lead NAAQS. Information from that re-evaluation and the relationship between the new lead standard and the emissions of lead from piston-engine aircraft are discussed in this ANPR.

### D. Statutory Authority

#### 1. Background

Section 231 of the CAA sets forth EPA's authority to regulate aircraft emissions of air pollution. As described further in Section I.D.2 of this ANPR, Section 231(a)(2)(A) requires EPA to, from time to time, issue proposed emission standards applicable to the emission of any air pollutant from any class or classes of aircraft engines which, in the Administrator's judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare. EPA has broad authority in exercising its judgment regarding whether emissions from certain sources cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare.[24] EPA has discussed its "endangerment finding" authority at length in recent notices for greenhouse gases published in the **Federal Register**, and we refer readers to those notices for detailed discussions of the analytical and legal framework.[25]

In 1976, EPA listed lead under CAA section 108, making it what is called a "criteria pollutant." As part of the listing decision, EPA determined that lead was an air pollutant which, in the Administrator's judgment, has an adverse effect on public health or welfare under then section 108(a). Once lead was listed, EPA issued primary and secondary NAAQS that the Administrator determined were requisite to protect public health with an adequate margin of safety and to protect public welfare from any known or anticipated adverse effects. Section 109(b)(1) and (2). As discussed elsewhere in this notice, EPA issued the first NAAQS for lead in 1978, and recently revised the lead NAAQS by reducing the level of the standard from 1.5 $\mu g/m^3$ to 0.15 $\mu g/m^3$, measured over a 3-month averaging period. These actions are part of the context for the issues before EPA under section 231(a).

The first part of the endangerment test concerns identification of air pollution which may reasonably be anticipated to endanger public health or welfare. The CAA defines both "air pollutant" and "welfare." Air pollutant is defined in CAA section 302(g) as: "Any air pollution agent or combination of such agents, including any physical, chemical, biological, radioactive (including source material, special nuclear material, and byproduct material) substance or matter which is emitted into or otherwise enters the ambient air. Such term includes any precursors to the formation of any air pollutant, to the extent the Administrator has identified such precursor or precursors for the particular purpose for which the term 'air pollutant' is used." Lead fits within

---

[17] General Aviation Manufacturers Association (2008) General Aviation Statistical Databook and Industry Outlook, p.30. Retrieved on August 17, 2009 from: http://www.gama.aero/files/2008_general_aviation_statistical_databook_indust_499b0dc37b.pdf.

[18] General Aviation Manufacturers Association (2008) General Aviation Statistical Databook and Industry Outlook, p.30. Retrieved on August 17, 2009 from: http://www.gama.aero/files/2008_general_aviation_statistical_databook__indust_499b0dc37b.pdf.

[19] General Accounting Office Report to Congressional Requesters (2001) General Aviation Status of the Industry, Related Infrastructure, and Safety Issues. GAO–01–916.

[20] General Aviation Manufacturers Association (2008) General Aviation Statistical Databook and Industry Outlook, pp.51–55. Retrieved on August 17, 2009 from: http://www.gama.aero/files/2008_general_aviation_statistical_databook_indust_499b0dc37b.pdf.

[21] An electronic report can be generated from the NASR database and is available for download from the Internet at the following Web site. http://www.faa.gov/airports_airtraffic/airports/airport_safety/airportdata_5010/. This database is updated every 56 days.

[22] FOE letter dated December 12, 2003 submitted to EPA Docket EPA–HQ–OAR–2002–0030.

[23] See "Petition Requesting Rulemaking To Limit Lead Emissions from General Aviation Aircraft; Request for Comments" 72 FR 64570 (Nov. 16, 2007).

[24] See, e.g., Ethyl Corp. v. EPA, 541 F.2d 1, 6 (DC Cir.), cert. denied 426 U.S. 941 (1976); see also Massachusetts v. EPA, 549 U.S. 497, 506, n.7 (2007).

[25] See, "Endangerment and Cause or Contribute Findings for Greenhouse Gases under Section 202(a) of the Clean Air Act; Final Rule," 74 FR 66496, 66505 (Dec. 15, 2009); see also, "Proposed Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act," 74 FR 18886, 18890–94 (April 24, 2009); see also "Regulating Greenhouse Gas Emissions Under the Clean Air Act; Advance Notice of Proposed Rulemaking," 73 FR 44354, 44421–23 (July 30, 2008).

# Presidential Documents

## Title 3—The President

### EXECUTIVE ORDER 11738

Providing for Administration of the Clean Air Act and the Federal Water Pollution Control Act With Respect to Federal Contracts, Grants, or Loans

By virtue of the authority vested in me by the provisions of the Clean Air Act, as amended (42 U.S.C. 1857 et seq.), particularly section 306 of that Act as added by the Clean Air Amendments of 1970 (Public Law 91-604), and the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), particularly section 508 of that Act as added by the Federal Water Pollution Control Act Amendments of 1972 (Public Law 92-500), it is hereby ordered as follows:

SECTION 1. *Policy*. It is the policy of the Federal Government to improve and enhance environmental quality. In furtherance of that policy, the program prescribed in this Order is instituted to assure that each Federal agency empowered to enter into contracts for the procurement of goods, materials, or services and each Federal agency empowered to extend Federal assistance by way of grant, loan, or contract shall undertake such procurement and assistance activities in a manner that will result in effective enforcement of the Clean Air Act (hereinafter referred to as "the Air Act") and the Federal Water Pollution Control Act (hereinafter referred to as "the Water Act").

SEC. 2. *Designation of Facilities*. (a) The Administrator of the Environmental Protection Agency (hereinafter referred to as "the Administrator") shall be responsible for the attainment of the purposes and objectives of this Order.

(b) In carrying out his responsibilities under this Order, the Administrator shall, in conformity with all applicable requirements of law, designate facilities which have given rise to a conviction for an offense under section 113(c)(1) of the Air Act or section 309(c) of the Water Act. The Administrator shall, from time to time, publish and circulate to all Federal agencies lists of those facilities, together with the names and addresses of the persons who have been convicted of such offenses. Whenever the Administrator determines that the condition which gave rise to a conviction has been corrected, he shall promptly remove the facility and the name and address of the person concerned from the list.

SEC. 3. *Contracts, Grants, or Loans*. (a) Except as provided in section 8 of this Order, no Federal agency shall enter into any contract for the procurement of goods, materials, or services which is to be performed in

whole or in part in a facility then designated by the Administrator pursuant to section 2.

(b) Except as provided in section 8 of this Order, no Federal agency authorized to extend Federal assistance by way of grant, loan, or contract shall extend such assistance in any case in which it is to be used to support any activity or program involving the use of a facility then designated by the Administrator pursuant to section 2.

SEC. 4. *Procurement, Grant, and Loan Regulations.* The Federal Procurement Regulations, the Armed Services Procurement Regulations, and, to the extent necessary, any supplemental or comparable regulations issued by any agency of the Executive Branch shall, following consultation with the Administrator, be amended to require, as a condition of entering into, renewing, or extending any contract for the procurement of goods, materials, or services or extending any assistance by way of grant, loan, or contract, inclusion of a provision requiring compliance with the Air Act, the Water Act, and standards issued pursuant thereto in the facilities in which the contract is to be performed, or which are involved in the activity or program to receive assistance.

SEC. 5. *Rules and Regulations.* The Administrator shall issue such rules, regulations, standards, and guidelines as he may deem necessary or appropriate to carry out the purposes of this Order.

SEC. 6. *Cooperation and Assistance.* The head of each Federal agency shall take such steps as may be necessary to insure that all officers and employees of his agency whose duties entail compliance or comparable functions with respect to contracts, grants, and loans are familiar with the provisions of this Order. In addition to any other appropriate action, such officers and employees shall report promptly any condition in a facility which may involve noncompliance with the Air Act or the Water Act or any rules, regulations, standards, or guidelines issued pursuant to this Order to the head of the agency, who shall transmit such reports to the Administrator.

SEC. 7. *Enforcement.* The Administrator may recommend to the Department of Justice or other appropriate agency that legal proceedings be brought or other appropriate action be taken whenever he becomes aware of a breach of any provision required, under the amendments issued pursuant to section 4 of this Order, to be included in a contract or other agreement.

SEC. 8. *Exemptions—Reports to Congress.* (a) Upon a determination that the paramount interest of the United States so requires—

(1) The head of a Federal agency may exempt any contract, grant, or loan, and, following consultation with the Administrator, any class of contracts, grants or loans from the provisions of this Order. In any such case, the head of the Federal agency granting such exemption shall (A) promptly notify the Administrator of such exemption and the justification therefor; (B) review the necessity for each such exemption annually; and (C) report to the Administrator annually all such exemptions in effect. Exemptions granted pursuant to this section shall be for a period not to exceed one year. Additional exemptions may be granted

for periods not to exceed one year upon the making of a new determination by the head of the Federal agency concerned.

(2) The Administrator may, by rule or regulation, exempt any or all Federal agencies from any or all of the provisions of this Order with respect to any class or classes of contracts, grants, or loans, which (A) involve less than specified dollar amounts, or (B) have a minimal potential impact upon the environment, or (C) involve persons who are not prime contractors or direct recipients of Federal assistance by way of contracts, grants, or loans.

(b) Federal agencies shall reconsider any exemption granted under subsection (a) whenever requested to do so by the Administrator.

(c) The Administrator shall annually notify the President and the Congress of all exemptions granted, or in effect, under this Order during the preceding year.

Sec. 9. *Related Actions.* The imposition of any sanction or penalty under or pursuant to this Order shall not relieve any person of any legal duty to comply with any provisions of the Air Act or the Water Act.

Sec. 10. *Applicability.* This Order shall not apply to contracts, grants, or loans involving the use of facilities located outside the United States.

Sec. 11. *Uniformity.* Rules, regulations, standards, and guidelines issued pursuant to this order and section 508 of the Water Act shall, to the maximum extent feasible, be uniform with regulations issued pursuant to this order, Executive Order No. 11602 of June 29, 1971, and section 306 of the Air Act.

Sec. 12. *Order Superseded.* Executive Order No. 11602 of June 29, 1971, is hereby superseded.

*Richard Nixon*

The White House,
    September 10, 1973.

[FR Doc.73-19498 Filed 9-10-73; 4:35 pm]

EXHIBIT 3



# FEDERAL REGISTER

Vol. 77

No. 117

Monday,

June 18, 2012

Part II

## Environmental Protection Agency

40 CFR Parts 87 and 1068
Control of Air Pollution From Aircraft and Aircraft Engines; Emission Standards and Test Procedures; Final Rule

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Parts 87 and 1068**

[EPA–HQ–OAR–2010–0687; FRL–9678–1]

**RIN 2060–AO70**

**Control of Air Pollution From Aircraft and Aircraft Engines; Emission Standards and Test Procedures**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** EPA is adopting several new aircraft engine emission standards for oxides of nitrogen ($NO_X$), compliance flexibilities, and other regulatory requirements for aircraft turbofan or turbojet engines with rated thrusts greater than 26.7 kilonewtons (kN). We also are adopting certain other requirements for gas turbine engines that are subject to exhaust emission standards as follows. First, we are clarifying when the emission characteristics of a new turbofan or turbojet engine model have become different enough from its existing parent engine design that it must conform to the most current emission standards. Second, we are establishing a new reporting requirement for manufacturers of gas turbine engines that are subject to any exhaust emission standard to provide us with timely and consistent emission-related information. Third, and finally, we are establishing amendments to aircraft engine test and emissions measurement procedures. EPA actively participated in the United Nations' International Civil Aviation Organization (ICAO) proceedings in which most of these requirements were first developed. These regulatory requirements have largely been adopted or are actively under consideration by its member states. By adopting such similar standards, therefore, the United States maintains consistency with these international efforts.

**DATES:** These final rules are effective on July 18, 2012. The incorporation by reference of certain publications listed in this regulation is approved by the Director of the Federal Register as of July 18, 2012.

**ADDRESSES:** EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2010–0687. All documents in the docket are listed on the *http://www.regulations.gov* Web site. Although listed in the index, some information is not publicly available, e.g., confidential business information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the Internet and will be publicly available only in hard copy form. Publicly available docket materials are available electronically through *http://www.regulations.gov* or in hard copy at the EPA Docket Center, EPA/DC, EPA West, Room 3334, 1301 Constitution Ave. NW., Washington, DC. The Public Reading Room is open from 8:30 a.m. to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the Air Docket is 202–566–1742.

**FOR FURTHER INFORMATION CONTACT:** Richard Wilcox, Office of Transportation and Air Quality, Office of Air and Radiation, Environmental Protection Agency, 2000 Traverwood Drive, Ann Arbor, MI 48105; telephone number: (734) 214–4390; fax number: (734) 214–4816; email address: *wilcox.rich@epa.gov*.

**SUPPLEMENTARY INFORMATION:**

**Does this action apply to me?**

Entities potentially regulated by this action are those that manufacture and sell aircraft engines and aircraft in the United States. Regulated categories include:

| Category | NAICS[a] Codes | SIC[b] Codes | Examples of potentially affected entities |
|---|---|---|---|
| Industry | 336412 | 3724 | Manufacturers of new aircraft engines. |
| Industry | 336411 | 3721 | Manufacturers of new aircraft. |

[a] North American Industry Classification System (NAICS).
[b] Standard Industrial Classification (SIC) system code.

This table lists the types of entities that EPA is now aware could potentially be regulated by this action. Other types of entities not listed in the table could also be regulated. To determine whether your activities are regulated by this action, you should carefully examine the applicability criteria in 40 CFR 87.1 (part 87). If you have any questions regarding the applicability of this action to a particular entity, consult the person listed in the preceding **FOR FURTHER INFORMATION CONTACT** section.

**Table of Contents**

I. Executive Summary
II. Overview and Background
　A. Contents of the Final Rule
　B. EPA's Authority and Responsibilities Under the Clean Air Act
　C. Interaction With the International Community
　D. Brief History of EPA's Regulation of Aircraft Engine Emissions
　E. Brief History of ICAO Regulation of Aircraft Engine Emissions
III. Why is EPA taking this action?
　A. Inventory Contribution
　B. Health, Environmental and Air Quality Impacts
　1. Background on Ozone, PM and $NO_X$
　　a. What is ozone?
　　b. What is particulate matter?
　　c. What is $NO_X$?
　2. Health Effects Associated With Exposure to Ozone, PM and $NO_X$
　　a. What are the health effects of ozone?
　　b. What are the health effects of PM?
　　c. What are the health effects of $NO_X$?
　3. Environmental Effects Associated With Exposure to Ozone, PM and $NO_X$
　　a. Deposition of Nitrogen
　　b. Visibility Effects
　　c. Plant and Ecosystem Effects of Ozone
　4. Impacts on Ambient Air Quality
IV. Details of the Final Rule
　A. $NO_X$ Standards for Newly-Certified Engines
　1. Tier 6 $NO_X$ Standards for Newly-Certified Engines
　　a. Numerical Emission Limits for Higher Thrust Engines
　　b. Numerical Emission Limits for Lower Thrust Engines
　2. Tier 8 $NO_X$ Standards for Newly-Certified Engines
　　a. Numerical Emission Limits for Higher Thrust Engines
　　b. Numerical Emission Limits for Lower Thrust Engines
　B. Application of $NO_X$ Standards for Newly-Manufactured Engines
　1. Phase-In of the Tier 6 $NO_X$ Standards for Newly-Manufactured Engines
　2. Carryover of Previously Generated Emission Data
　3. Exemptions and Exceptions From the Tier 6 Production Cutoff
　　a. New Provisions for Spare Engines
　　b. New Provisions for Engines Installed in New Aircraft
　　　i. Time-Frame and Scope
　　　ii. Production Limit
　　　iii. Exemption Requests
　　　iv. Coordination of Exemption Requests
　　　v. Low-Volume, Time-Limited Transitional Exception Program
　　c. Voluntary Emission Offsets
　4. Potential Phase-In of New Tier 8 $NO_X$ Standards for Newly-Manufactured Engines

E1672 - A4

COC-CV-46-A REV. 12/99

# HABERE FACIAS

05CV4555

The State of Ohio, Franklin County, ss.    To the Sheriff of Said County:

WHEREAS, at the __06-4__ _____ Term, A.D. 20__12__, of the Court of Common

Pleas of the County and State aforesaid, __GMAC MORTGAGE CORPORATION__

recovered against __YVONNE D LEWIS AKA YVONNE D WEBB-LEWIS__

1875 ALVASON AVE

COLUMBUS, OH 43219

the right to the possession of the real property as set forth in said order and decree, and which is described as follows:

BEING LOT NUMBER SEVENTEEN OF ARGYLE PARK SUBDIVISION, IN PLAT BOOK 36, PAGE 6 RECORDER'S OFFICE, FRANKLIN COUNTY, OHIO.

PARCEL NO. 010-136633-00

ADDRESS: 1875 ALVASON AVE., COLS, OH 43219

PACEL NO. 010-136633-00

2
001

E1672 — A5

YOU ARE THEREFORE COMMANDED, to deliver the possession of the real property aforesaid to the plaintiff GMAC MORTGAGE CORPORATION

and that the goods and chattels, and for want thereof, then of the lands and tenements of the Defendant YVONNE D LEWIS AKA YVONNE D WEBB-LEWIS

you cause to be made the sum of $_____ damages for withholding the possession, and $ 40.00 the cost herein _____

and that you make due return of this writ within sixty days, with your proceedings under the same duly endorsed thereon.

WITNESS my hand and the seal of said Court at Columbus, Ohio, this 16TH day of JULY 20 12

MARYELLEN O'SHAUGHNESSY    Clerk
By ALBERTA MCDOWELL    Deputy

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2012 SEP 10 AM 9: 05
CLERK OF COURTS

The State of Ohio, Franklin County, ss.    SHERIFF's RETURN

Received this writ July 18 A.D. 20 12, at 11:33 o'clock A M. and pursuant to its command On 7-20-12 notice was posted at address listed within to vacate by 8-10-12. On 8-15-12 Occ-Evr notice posted, On 8-24-12 Evic. Complete. Prop. restored to Plaintiff. Writ returned on 9-4-12

SHERIFF's FEES
Service ___
Mileage 3 X 8 — 85 —
Return ___
Total 85 —

Writ returned per Plaintiff's Atty
Zach Scott
Sheriff Of Franklin County, OH
By ___ Deputy

No. 05CV4555
Doc. ___
COMMON PLEAS COURT
FRANKLIN County, O.
Page ___

GMAC MORTGAGE CORPORATION    Plaintiff
vs.
YVONNE D LEWIS ET AL
1875 ALVASON AVE
COLUMBUS, OH 43219    et al., Defendants

HABERE FACIAS
Issued 07-17    20 12

7-20-12 POSTED TO VACATE BY 8-10-12
8-15-12 OCCUPIED, NEEDS SET-OUT
8-24-12 EVICTION COMPLETE
8-27-12 Jessica called to pick pls

ANDREW C CLARK 83519    Atty
PO BOX ___
5028 ___

002