**JONES DAY**
Richard L. Wynne
Howard F. Sidman
222 East 41st Street
New York, NY 10017.6702
Telephone:    212-326-3939
Facsimile:    212-755-7306

*Attorneys for Creditor*
*Financial Guaranty Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Case No. 12-12020 (MG) |
| **RESIDENTIAL CAPITAL, LLC,** *et al.,* | ) |
| | ) Chapter 11 |
| Debtors. | ) Jointly Administered |

**FINANCIAL GUARANTY INSURANCE COMPANY'S**
**REBUTTAL DESIGNATIONS OF DEPOSITION TESTIMONY**

Pursuant to Rule 32 of the Federal Rules of Civil Procedure, as made applicable by Rule 7032 of the Federal Rules of Bankruptcy Procedure, Financial Guaranty Insurance Company ("FGIC"), by and through its undersigned counsel, submits designations of rebuttal deposition testimony to be used at the evidentiary hearing on *Debtors' Motion Pursuant to Fed. R. Bankr. P. 9019 for Approval of the Settlement Agreement Among the Debtors, FGIC, the FGIC Trustees, and Certain Institutional Investors* [Dkt. No. 3929], which was held on August 16 and 19, 2013 (the "Rebuttal Deposition Designations").

The Rebuttal Deposition Designations are submitted in response to evidence elicited at trial, including the cross-examinations by the Junior Secured Noteholders and the Investor Objectors.[1]  The Monarch Investors object to the Rebuttal Deposition Designations on the ground that "nothing in any of the scheduling orders or in any of Judge Glenn's subsequent comments regarding submissions in connection with trial permitted 'rebuttal' designations."

---

[1]    The Investor Objectors include CQS ABS Master Fund Limited, CQS ABS Alpha Master Fund Limited, Bayview Fund Management LLC, Monarch Alternative Capital LP ("Monarch"), Stonehill Capital Management LLC (collectively, the "Monarch Investors"), and Federal Home Loan Mortgage Corporation ("Freddie Mac").

1

Freddie Mac has joined in the objection. The JSNs have not objected to the Rebuttal Deposition Designations.

The applicable scheduling orders do not prohibit the designation of rebuttal testimony; in fact, they do not specifically address the issue at all. See Dkt. Nos. 4168 and 4363. During trial, the Court affirmatively ruled that the introduction of rebuttal testimony was permissible to respond to evidence elicited by the objectors on cross examination. See e.g., Aug. 19, 2013 Hr'g Tr. 297:2-19, 466:16-467:19 (overruling the Monarch Investors' objection to rebuttal testimony concerning extensive negotiations over the terms of the FGIC-ResCap settlement agreement because they "opened the door to this"); see also Fed. R. Evid. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; [and] (2) avoid wasting time.").

**FGIC's Rebuttal Deposition Designations**

>   **WITNESS: Robert Major (Deposition pursuant to Rule 30(b)(6), dated July 17, 2013)**
>   Page 154, Line 22 through Page 155, Line 9.
>   ----------------------
>   **WITNESS: John Dubel (Deposition pursuant to Rule 30(b)(1), dated July 10, 2013)**
>   Page 89, Line 23 through Page 90, Line 10.
>   ----------------------
>   **WITNESS: Lewis Kruger (Deposition pursuant to Rule 30(b)(1), dated July 11, 2013)**
>   Page 69, Line 6 through Page 70, Line 21.

Dated: New York, New York
August 21, 2013

                **JONES DAY**

                By:      /s/ Richard L. Wynne
                Richard L. Wynne
                Howard F. Sidman
                222 East 41st Street
                New York, NY 10017.6702
                Telephone:  212-326-3939
                Facsimile:   212-755-7306

                *Attorneys for Creditor*
                *Financial Guaranty Insurance Company*

Page 1

```
 1
 2    UNITED STATES BANKRUPTCY COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    -------------------------)
      IN RE:                   )    Case No. 12-12020
 4                             )         (MG)
      RESIDENTIAL CAPITAL,     )
 5    LLC, et al.,             )    Chapter 11
              Debtors.         )    Adminstered Jointly
 6    -------------------------)
 7
 8                    July 17, 2013
 9                    9:08 a.m.
10
11          DEPOSITION of ROBERT MAJOR,
12    30(b)(6) witness on behalf of Bank of New York
13    Mellon, pursuant to Notice, held at the offices
14    of Wilkie Farr & Gallagher, LLP, 787 Seventh
15    Avenue, New York, New York, before Eileen
16    Mulvenna, CSR/RMR/CRR, Certified Shorthand
17    Reporter, Registered Merit Reporter, Certified
18    Realtime Reporter and Notary Public of the State
19    of New York.
20
21
22
23
24
25
```

### Page 2

```
 1
 2   A P P E A R A N C E S:
 3
 4   WILLKIE FARR & GALLAGHER, ESQS.
       Attorneys for Investors Monarch, Stonehill,
 5   Bayview and CQS
         787 Seventh Avenue
 6       New York, New York  10019
       BY:  JOSEPH BAIO, ESQ.
 7       jbaio@willkie.com
       PIA WILLIAMS, ESQ.
 8       pwilliams@willkie.com
       EMMA JAMES, ESQ.
 9       ejames@willkie.com
10
11   ALSTON & BIRD, LLP
       Attorneys for Wells Fargo as Trustee and the
12   Witness
         90 Park Avenue
13       New York, New York  10016
       BY:  WILLIAM HAO, ESQ.
14       william.hao@alston.com
15
16   DECHERT, LLP
       Attorneys for Bank of New York Mellon Trust
17   Company, N.A. as Trustee or Investor
     Trustee and the Witness
18       1095 Avenue of the Americas
         New York, New York  10036-6797
19     BY:  MAURICIO ESPAÑA, ESQ.
         mauricio.espana@dechert.com
20     GLENN E. SIEGEL, ESQ.
         glenn.siegel@dechert.com
21
22   SEWARD & KISSEL, LLP
       Attorneys for Law Debenture Trust Company of
23   New York
         One Battery Park Plaza
24       New York, New York  10004
       BY:  THOMAS ROSS HOOPER, ESQ.
25       hooper@sewkis.com
```

### Page 3

```
 1
 2   A P P E A R A N C E S (Continued):
 3
 4     SEWARD & KISSEL, LLP
         Attorneys for US Bank
 5         One Battery Park Plaza
           New York, New York  10004
 6       BY:  ARLENE R. ALVES, ESQ.
           alves@dewkis.com
 7
 8
 9     KRAMER LEVIN NAFTALIS & FRANKEL,LLP
         Attorneys for the Official Committee of the
10     Unsecured Creditors
           1177 Avenue of the Americas
11         New York, New York  10036
         BY:  PHILIP S. KAUFMAN, ESQ.
12         pkaufman@kramerlevin.com
13
14     JONES DAY
         Attorneys for Financial Guaranty Insurance
15     Company
           222 East 41st Street
16         New York, New York  10017-6702
         BY:  HOWARD SIDMAN, ESQ.
17         hsidman@jonesday.com
         RICHARD L. WYNNE, ESQ.
18         rlwynne@jones day.com
19
20     MORRISON & FOERSTER, LLP
         Attorneys on behalf of the debtors
21         1290 Avenue of the Americas
           New York, New York  10104
22       BY:  ROBERT BAEHR, ESQ.
           rbaher@mofo.com
23         (Present via telephone)
24
25
```

### Page 4

```
 1
 2   A P P E A R A N C E S (Continued):
 3
 4   ROPES & GRAY, LLP
       Attorneys on Behalf of the Steering
 5   Committee of RMBS Investors
         1211 Avenue of the Americas
 6       New York, New York  10036-8704
         (NOT PRESENT)
 7
 8
 9   THE LAW OFFICE OF THOMAS M. MULLANEY
       Attorneys for CQS parties
10       489 Fifth Avenue, Suite 1900
         New York, New York  10017
11     BY:  THOMAS M. MULLANEY, ESQ.
         tmm@mullaw.com
12
13
14   GIBBS & BRUNS, LLP
       Attorneys for the Steering Committee
15   of RMBS Investors
         1000 Louisiana, Suite 5300
16       Houston, Texas  77002
       BY:  DAVID SHEEREN, ESQ.
17       dsheeren@gibbsbruns.com
18
19   MCKOOL SMITH, P.C.
       Attorneys for Freddie Mac
20       One Bryant Park, 47th Floor
         New York, New York  10036
21     BY:  MICHAEL R. CARNEY, ESQ.
         mcarney@mckoolsmith.com
22
23
24
25
```

### Page 5

```
 1
 2          (Witness sworn)
 3          THE REPORTER:  Will everyone please
 4   state their appearance, firm and the party
 5   they represent.
 6          MR. ESPANA:  Mauricio España,
 7   Dechert LLP, on behalf of the Bank of New
 8   York Mellon entities.
 9          MR. SIEGEL:  Glenn Siegel,
10   Dechert LLP, on behalf of the Bank of New
11   York Mellon entities.
12          MS. ALVES:  Arlene Alves, Seward &
13   Kissel, on behalf of US Bank as trustee.
14          MR. SHEEREN:  David Sheeren, Gibbs &
15   Bruns, on behalf of the Steering Committee
16   of RMBS Investors.
17          MR. HOOPER:  Ross Hooper from Seward
18   & Kissel on behalf of Law Debenture Trust
19   Company of New York, a separate trustee.
20          MR. HAO:  William Hao of Alston &
21   Bird for Wells Fargo Bank.
22          MR. SIDMAN:  Howard Sidman, Jones
23   Day, for FGIC.
24          MR. KAUFMAN:  Philip Kaufman, Kramer
25   Levin, for the creditors committee.
```

2 (Pages 2 - 5)

Page 154

```
 1           Robert Major
 2   answered.
 3       MR. WYNNE:  I'm going to object
 4   based on the mediation privilege.
 5       MR. ESPANA:  Don't answer it.
 6       MR. BAIO:  You're saying he can't
 7   answer that because of the mediation
 8   privilege?
 9       MR. WYNNE:  I'm sorry, I missed
10   your -- I'm looking at the screen.  I
11   missed your "without going into the
12   substance" part, so I'll withdraw the
13   objection.
14       MR. BAIO:  I don't know whether
15   he --
16       MR. ESPANA:  You want to repeat the
17   question?
18       MR. BAIO:  Let me finish this
19   thought and then I'll get back to that.
20       (Discussion off the record.)
21   BY MR. BAIO:
22       Q.  Yes, the question is, without going
23   into the substance of what any settlement
24   proposals might have said, did you see any prior
25   settlement proposals by FGIC?
```

Page 155

```
 1           Robert Major
 2       MR. ESPANA:  You can answer.
 3       THE WITNESS:  Yes.
 4   BY MR. BAIO:
 5       Q.  You did?
 6       A.  (Witness nods head in the
 7   affirmative.)
 8       Q.  How many?
 9       A.  I don't recall.
10       Q.  When did you see the first one?
11       MR. ESPANA:  Objection.
12       I will instruct you not to answer.
13   BY MR. BAIO:
14       Q.  Do you believe that the negotiations
15   of the settlement agreement were at arm's length
16   and hard fought?
17       A.  Yes.
18       Q.  How so?
19       MR. ESPANA:  Again, I just caution
20   you not to disclose the substance of
21   communications just generally.
22       THE WITNESS:  It was a tri-party
23   agreement with disputes between the three
24   parties; ResCap, FGIC, and the trustees.
25   The claims against -- among the three
```

Page 156

```
 1           Robert Major
 2   parties were very complex.  And resolution
 3   was very important in the context of the
 4   mediation and also vis-a-vis between FGIC
 5   and the trustees.
 6   BY MR. BAIO:
 7       Q.  And do you intend to testify about
 8   the hard-fought negotiations at the hearing?
 9       A.  If I'm called to testify, yes.
10       Q.  Well, give me examples of some of
11   the hard-fought exchanges that you engaged in
12   that benefited the investors.
13       MR. ESPANA:  I'm instructing the
14   witness not to answer.  You can answer
15   generally in describing why you thought
16   there were hard-fought negotiations, but
17   don't go into the substance.
18       MR. BAIO:  Just so I'm clear, I'm
19   asking about the substance because it's the
20   only way that I can test whether it was
21   hard fought.
22       MR. ESPANA:  Then I'm instructing
23   you not to answer.
24       MR. BAIO:  Let's take a few minutes.
25       (Recess from the record.)
```

Page 157

```
 1           Robert Major
 2       MR. BAIO:  Let's go back on the
 3   record.
 4   BY MR. BAIO:
 5       Q.  Can you look at Exhibit -- put
 6   before you Exhibit 5 again.  And turn to page 3.
 7       The chart under "FGIC Settlement
 8   Proposal and FGIC Plan," do you see that darkened
 9   chart?
10       A.  Yes.
11       Q.  Who provided the information
12   contained in that upper box, "Considerations,
13   Benefits and Risks"?
14       A.  Duff & Phelps.
15       Q.  And did Duff & Phelps, during the
16   time that you met with them -- strike that.
17       Were you advised by Duff & Phelps of
18   any other benefits and risks to the investors
19   under the FGIC settlement proposal beyond what
20   appears here?
21       A.  Advised of any risks to the FGIC
22   settlement investors?
23       Q.  Yes -- not -- I said to the
24   investors -- I hope I did.  Did Duff -- were you
25   advised by Duff & Phelps of any other benefits or
```

40 (Pages 154 - 157)

```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK


IN RE:                           )
RESIDENTIAL CAPITAL, LLC,        )
Et al.,                          )
                                 )Civil Action No.
             Debtors,            )12-12020 (MG)
```

CONFIDENTIAL DEPOSITION OF JOHN S. DUBEL

New York, New York

Wednesday, July 10, 2013

Reported by:

JOMANNA DeROSA, CSR

JOB NO. 63468

Confidential

Page 2

July 10, 2013
1:43 p.m.

        Confidential Deposition of
JOHN S. DUBEL, held at the offices
of McKool Smith, One Bryant Park,
47th Floor, New York, New York,
before Jomanna DeRosa, a Certified
Shorthand Reporter and Notary Public
of the States of New York, New Jersey,
California and Arizona.

Page 3

APPEARANCES:

   MORRISON & FOERSTER
   Attorneys for Debtors
      1290 Avenue of the Americas
      New York, New York 10104
   BY:  J. ALEXANDER LAWRENCE, ESQ.

   MCKOOL SMITH
   Attorneys for Freddie Mac
      One Bryant Park
      New York, New York 10036
   BY:  PETER GOODMAN, ESQ.
        MICHAEL CARNEY, ESQ.

   JONES DAY
   Attorneys for FGIC
      222 East 41st Street
      New York, New York 10017
   BY:  HOWARD SIDMAN, ESQ.
        RICHARD WYNNE, ESQ.

        ///

Page 4

APPEARANCES:
   WILLKIE FARR & GALLAGHER
   Attorneys for Stonehill, Monarch, CQS,
   Bayview Fund Management,
      787 Seventh Avenue
      New York, New York 10019
   BY:  JOSEPH BAIO, ESQ.
        EMMA JAMES, ESQ.

   WEIL GOTSHAL & MANGES
   Attorneys for FGIC,
      767 Fifth Avenue
      New York, New York 10153
   BY:  RICHARD SLACK, ESQ.

   KRAMER LEVIN NAFTALIS & FRANKEL
   Attorneys for Official Committee of
   Unsecured Creditors,
      1117 Avenue of the Americas
      New York, New York 10036
   BY:  DANIEL EGGERMANN, ESQ.

        ///

Page 5

APPEARANCES:
   ROPES & GRAY
   Attorneys for Steering Committee of
   of RMBS Investors
      800 Boylston Street
      Boston, Massachusetts 02199
   BY:  ANDREW DEVORE, ESQ.

   DECHERT
   Attorneys for Bank of New York Mellon
      1095 Avenue of the Americas
      New York, New York 10036
   BY:  JAMES MOORE, ESQ.
        NEGISA BALLUKU, ESQ.

   THE LAW OFFICES OF THOMAS M. MULLANEY
   Attorneys for CQS
      489 Fifth Avenue
      New York, New York 10017
   BY:  THOMAS MULLANEY, ESQ.

        ///

2 (Pages 2 to 5)

### Page 6

```
 1
 2    APPEARANCES:
 3      SEWARD & KISSEL
 4      Attorneys for U.S. Bank,
 5        One Battery Park Plaza
 6        New York, New York 10004
 7      BY:  MARK KOTWICK, ESQ.
 8           DALE CHRISTENSEN, JR., ESQ.
 9
10      ALSTON & BIRD
11      Attorneys for Wells Fargo Bank,
12        90 Park Avenue
13        New York, New York 10016
14      BY:  MICHAEL JOHNSON, ESQ.
15
16      GIBBS & BRUNS
17      Attorneys for Steering Committee of
18      RMBS Investors
19        1100 Louisiana
20        Houston, Texas 77002
21      BY:  DAVID SHEEREN, ESQ.
22
23    ALSO PRESENT:
24    PHIL GLAUBERSON, Legal Video Specialist
25    SHAUNA AARON (Summer Associate at Weil)
```

### Page 7

```
 1           J. DUBEL - CONFIDENTIAL
 2           THE VIDEOGRAPHER:  This is Tape
 3    No. 1 of the videotaped deposition of John
 4    Dubel in re:  Residential Capital, LLC, et al.
 5    in the United States Bankruptcy Court,
 6    Southern District of New York, case number
 7    1212020MG.  This deposition is being held at
 8    McKool Smith, One Bryant Park, New York, New
 9    York, on July 10th, 2013, at approximately
10    1:43 p.m..  My name is Phil Glauberson from
11    the firm of TSG Reporting, and I am the legal
12    video specialist.  The court reporter is
13    Jomanna DeRosa with TSG Reporting.
14           Will counsel please introduce
15    themselves?
16           MR. GOODMAN:  My name is Peter
17    Goodman, and I'm with the firm of McKool
18    Smith, and we are counsel to Freddie Mac.
19           MR. BAIO:  Joseph Baio from Willkie
20    Farr & Gallagher.  I'm also here with Emma
21    James.  We represent Stonehill, Monarch, the
22    CQS and Bayview Fund Management.
23           MR. DEVORE:  Andrew Devore from
24    Ropes & Gray for the Steering Committee of
25    RMBS Investors.
```

### Page 8

```
 1           J. DUBEL - CONFIDENTIAL
 2           MR. SHEEREN:  David Sheeren, Gibbs
 3    Bruns, Steering Committee of RMBS Investors.
 4           MR. CHRISTENSEN:  Dale Christensen,
 5    Seward & Kissel for Law Debenture.
 6           MR. JOHNSON:  Michael Johnson from
 7    Alston & Bird for Wells Fargo Bank as trustee.
 8           MR. MULLANEY:  Tom Mullaney from
 9    the Law Offices of Thomas M. Mullaney for CQS.
10           MR. KOTWICK:  Mark Kotwick from
11    Seward & Kissel on behalf of U.S. Bank as
12    Trustee.
13           MR. EGGERMANN:  Daniel Eggermann
14    from Kramer Levin on behalf of the Official
15    Creditors.
16           MR. MOORE:  James Moore from
17    Dechert on behalf of Bank New York Mellon.
18           MR. LAWRENCE:  Alex Lawrence,
19    Morrison Foerster on behalf of the Debtors.
20           MR. SLACK:  Richard Slack from Weil
21    Gotshal & manges for FGIC and the FGIC
22    rehabilitator.  And with me today is Shauna
23    Aaron who is one of our summer associates.
24           MR. WYNNE:  Richard Wynne of Jones
25    Day for FGIC.
```

### Page 9

```
 1           J. DUBEL - CONFIDENTIAL
 2           MR. SIDMAN:  Howard Sidman, Jones
 3    Day for FGIC.
 4           THE VIDEOGRAPHER:  Will the court
 5    reporter please swear in the witness.
 6    J O H N  S.  D U B E L, called as a witness,
 7       having been duly sworn by a Notary
 8       Public, was examined and testified as
 9       follows:
10    EXAMINATION BY
11    MR. GOODMAN:
12        Q.   Good afternoon, Mr. Dubel.  We've
13    met before, but again I'm Peter Goodman from
14    McKool Smith for the purpose of the record.
15           Mr. Dubel, have you ever been
16    deposed before?
17        A.   I have.
18        Q.   How many times?
19        A.   Twenty or thirty times.  I'm not --
20    I don't have an exact count.
21        Q.   And so you know the ground rules in
22    terms of deposition, the court reporter needs you
23    to answer audibly.  The court reporter can't pick
24    up hand gestures or facial gestures or nods.  The
25    videographer obviously can, so -- and if you need
```

3 (Pages 6 to 9)

Page 86

```
1        J. DUBEL - CONFIDENTIAL
2      A.   Not my lawyers.
3      Q.   Okay.
4      A.   Not my lawyers.
5      Q.   Fair enough.  Fair enough.
6           Turn to paragraph --
7           MR. SLACK:  Maybe lawyers taking
8    depositions.
9           MR. GOODMAN:  It's a joke.
10     Q.   If you could, turn to Exhibit 2 for
11   a moment, Section 9.3.
12     A.   On page 27?  Is that what you're
13   referring to?
14     Q.   Uh-huh.  And we're talking about
15   how the Disclosure Statement -- I guess earlier
16   how the Disclosure Statement is subject to the
17   plan.  9.3 starts with the heading Modification.
18   Correct?
19     A.   I'm sorry.  I didn't understand
20   what you said before.  The Disclosure Statement
21   is --
22     Q.   Fair enough.  Strike that.
23          Let's just turn to Section 9.3,
24   page 27 of Exhibit 2.
25     A.   Yes.
```

Page 87

```
1        J. DUBEL - CONFIDENTIAL
2      Q.   And that's entitled To
3    Modification.
4      A.   It's entitled Modification.
5      Q.   Okay.  Correct.  And it states from
6    time -- from and after -- let me start over.
7           "From and after the effective date,
8    only the NYSDFS may modify the plan and only to
9    the extent it determines necessary for the fair
10   and equitable treatment of policyholders in
11   general provided, however, that the NYSDFS shall
12   obtain Court approval for material modification."
13   Correct?
14          MR. SIDMAN:  Objection to the form.
15     You missed a word, but that's okay.
16          MR. GOODMAN:  Okay.
17     Q.   Do you agree that that's what's
18   stated in Section 9.3 of the plan subject to your
19   client -- your attorney's --
20     A.   I'll agree that 9.3 states certain
21   stuff.  It is what it -- it says what it says.  If
22   you're asking me a question, I can respond to the
23   question.
24     Q.   Okay.  What's your understanding --
25     A.   But the wording -- the wording is
```

Page 88

```
1        J. DUBEL - CONFIDENTIAL
2    what it is.
3      Q.   Yeah.  And what's your
4    understanding of 9.3 of the plan?
5      A.   That from and after the effective
6    date, only the NYSDFS, as I referred to before as
7    the DFS, may modify the plan and only to the
8    extent that it determines it's necessary for the
9    fair and equitable treatment of policyholders in
10   general provided, however, that DFS shall obtain
11   prior Court approval for any material
12   modification.
13     Q.   Okay.  And you're familiar with the
14   proposed ResCap FGIC settlement with -- aren't
15   you?  Is that correct?
16          MR. SIDMAN:  Objection to form.
17     Q.   Fair enough.  Strike that.
18          Are you familiar with -- are you
19   familiar with the ResCap FGIC settlement --
20          MR. SIDMAN:  Object to the form.
21     Q.   -- that's at issue before the
22   Court?
23     A.   Are you referring to the settlement
24   agreement?
25     Q.   Yes, the settlement agreement.
```

Page 89

```
1        J. DUBEL - CONFIDENTIAL
2      A.   I am familiar with it, yes.
3      Q.   Were you involved in the
4    negotiations of that agreement?
5      A.   I was.
6      Q.   Did you have a significant
7    involvement in that settlement agreement?
8           MR. SIDMAN:  Objection to the form.
9       You can answer.
10     A.   Yes.
11     Q.   Spent a lot of hours negotiating on
12   it?
13          MR. SIDMAN:  Object to the form.
14     A.   Yes.
15     Q.   How many hours, would you say?
16     A.   I'm fortunately not required to
17   keep time records, like attorneys are.  But it
18   was a -- all of that which went into the
19   settlement agreement would have been over a period
20   of many months and many, many hours.  I don't have
21   a time record to know how many exact hours, but it
22   was a lot of time.
23     Q.   And when did the negotiations
24   begin?
25     A.   On the --
```

Page 90

1       J. DUBEL - CONFIDENTIAL
2       Q.   On the settlement --
3       A.   -- actual document -- the
4   settlement agreement, I don't recall.  But on the
5   concepts that were incorporated into the
6   settlement agreement --
7       Q.   Fair enough.
8       A.   -- it would have been sometime in
9   mid to the latter part of January of 2013.  It was
10  all part of the mediation process.
11           THE WITNESS:  Could I interrupt for
12      one second?  Could I ask one of you guys down
13      there to throw me a water, please?  Make that
14      two, please, for the court reporter, also?
15      Q.   Mr. Dubel, do you know whether the
16  settlement is a condition for the rehabilitation
17  plan to go effective?
18           MR. SIDMAN:  Object to the form.
19      A.   I'm not an attorney, so I can't
20  answer that question.
21      Q.   But you know the plan has not gone
22  effective yet.  Isn't that correct?
23      A.   That's correct.
24      Q.   And the plan of reorganization has
25  provisions regarding the conditions to the

Page 91

1       J. DUBEL - CONFIDENTIAL
2   effective date.  Are you familiar with those?
3           MR. SIDMAN:  Objection to the form.
4       A.   Which plan of reorganization are
5   you referring to?
6       Q.   I'm sorry, the Plan of
7   Rehabilitation.  Fair enough.  Exhibit No. 2.
8       A.   Okay.  I'm sorry.
9       Q.   Does Exhibit -- the Plan of
10  Rehabilitation, Exhibit No. 2 have, conditions --
11  list conditions before it will go effective?
12      A.   Give me a second.  Let me just
13  glance at it.
14      Q.   Okay.  Well, I'll refer you to
15  Section 6.1 of Exhibit 2.
16      A.   The sections refers to conditions
17  precedent to the effective date, yes.
18      Q.   And do you know whether the
19  settlement is a condition to the effective date of
20  the plan?
21      A.   Again, you're asking me for a legal
22  interpretation, and I'm not a -- I'm not the
23  attorney.  I didn't draft this document, so I
24  would not want to --
25      Q.   I'm asking -- I'm asking you for a

Page 92

1       J. DUBEL - CONFIDENTIAL
2   layman's understanding.
3           Was it your understanding that the
4   plan would ever be conditioned upon the ResCap
5   settlement?
6           MR. SIDMAN:  Objection to the form.
7       A.   Again, I'm not an attorney, so I
8   can't answer that question.
9       Q.   I'm not asking your legal view.
10  I'm just asking, was it ever your understanding
11  that the plan of reorganization would be
12  conditioned upon entering into a settlement --
13  entering into the ResCap settlement that we've
14  been discussing.
15          MR. SIDMAN:  Same objection.
16          MR. SLACK:  I'm going -- I'm going
17      to say, if he has an understanding that's
18      based -- he doesn't have an understanding, but
19      if he does, if it's based on communications
20      with counsel, I instruct you not to answer.
21          MR. SIDMAN:  Same instruction.
22      A.   And I'm assuming you're referring
23  to the Plan of Rehabilitation?
24      Q.   Yes.
25      A.   Because I think you had stated the

Page 93

1       J. DUBEL - CONFIDENTIAL
2   plan of reorganization, so --
3       Q.   If I did that again, I'm
4   apologizing.
5       A.   Again, I'm not an attorney.  Any
6   knowledge I have about these conditions and
7   whether or not that is something that has to do
8   with the settlement -- the settlement agreement is
9   tied into this effective date, I would have to
10  consult with counsel who drafted this plan.
11      Q.   Okay.  Well, put it this way, was
12  it ever your -- the settlement negotiations began
13  in earnest for the current settlement in January
14  2013.  Correct?
15          MR. SIDMAN:  Objection.
16      A.   Yeah -- well, they started it.
17  You're using the term "earnest."  I wouldn't, you
18  know.
19      Q.   Okay.  Use your term --
20      A.   They started.
21      Q.   -- they started in earnest.  Okay.
22      A.   No.
23          MR. SIDMAN:  You said in "earnest."
24      He said "started."
25          MR. GOODMAN:  Okay.  They started.

```
                                                          Page 1
 1                         L. Kruger
 2            UNITED STATES BANKRUPTCY COURT
 3             SOUTHERN DISTRICT OF NEW YORK
 4
 5      ------------------------------x
 6      In Re:                                   Case No.
                                               12-12020(MG)
 7      RESIDENTIAL CAPITAL, LLC,
        et al.,                          (Jointly Administered)
 8                                            (Bankr. S.D.N.Y.)
                     Debtors
 9
        ------------------------------x
10
11
12
13
14
15              DEPOSITION OF LEWIS KRUGER
16                   New York, New York
17                Thursday, July 11, 2013
18
19
20
21
22
23      Reported by:
24      THOMAS A. FERNICOLA, RPR
25      JOB NO. 63547
```

### Page 2

```
 1              L. Kruger
 2
 3
 4
 5
 6         July 11, 2013
 7         10:06 a.m.
 8
 9
10      Deposition of LEWIS KRUGER, held at the
11   Law Offices of White & Case, LLP, 1155 Avenue of
12   the Americas, New York, New York, before
13   Thomas A. Fernicola, a Registered Professional
14   Reporter and Notary Public of the State of New
15   York.
```

### Page 3

```
 1              L. Kruger
 2         A P P E A R A N C E S:
 3
 4         WHITE & CASE
 5         Attorneys for the Ad Hoc Group of
 6             Junior Secured Noteholders
 7             1155 Avenue of the Americas
 8             New York, New York  10036
 9         BY: J. CHRISTOPHER SHORE, ESQ.
10             VANESSA SODERBERG, ESQ.
11
12
13
14         MORRISON & FOERSTER
15         Attorneys for the Debtor and the Witness
16             1290 Avenue of the Americas
17             New York, New York 10104
18         BY:  CHARLES KERR, ESQ.
19             J. ALEXANDER LAWRENCE, ESQ.
```

### Page 4

```
 1              L. Kruger
 2         A P P E A R A N C E S (Continued):
 3
 4         KRAMER LEVIN NAFTALIS & FRANKEL
 5         Attorneys for the Official Committee
 6             of Unsecured Creditors
 7             1177 Avenue of the Americas
 8             New York, New York  10036
 9         BY:  PHILIP KAUFMAN, ESQ.
10             DANIEL EGGERMANN, ESQ.
11
12
13
14         WILLKIE FARR & GALLAGHER
15         Attorneys for Monarch, Stonehill,
16             Bayview and CQS
17             787 Seventh Avenue
18             New York, New York  10019
19         BY:  MARY EATON, ESQ.
20             EMMA JAMES, ESQ.
```

### Page 5

```
 1              L. Kruger
 2         A P P E A R A N C E S (Continued):
 3
 4         JONES DAY
 5         Attorneys for FGIC
 6             222 East 41st Street
 7             New York, New York  10017
 8         BY:  RICHARD WYNNE, ESQ.
 9
10
11         ALSTON & BIRD
12         Attorneys for Wells Fargo
13             90 Park Avenue
14             New York, New York  10016
15         BY:  WILLIAM HAO, ESQ.
16
17
18         McKOOL SMITH
19         Attorneys for Freddie Mac
20             One Bryant Park
21             New York, New York  10036
22         BY:  MICHAEL CARNEY, ESQ.
```

Page 6

1        L. Kruger
2   A P P E A R A N C E S (Continued):
3
4      DECHERT
5      Attorneys for Bank of New York Mellon
6         1095 Avenue of the Americas
7         New York, New York  10036
8         BY: JAMES MOORE, ESQ.
9
10
11     SEWARD & KISSEL
12     Attorneys for Law Debenture Trust
13        Company of New York
14        One Battery Park
15        New York, New York  10004
16        BY: MICHAEL WEITMAN, ESQ.

Page 7

1        L. Kruger
2   A P P E A R A N C E S (Continued):
3
4      ROPES & GRAY
5      Attorneys for Steering Committee of
6         RMBS Holders
7         800 Boylston Street
8         Boston, Massachusetts  02199
9         BY: ANDREW DEVORE, ESQ.

Page 8

1        L. Kruger
2   L E W I S   K R U G E R,
3       called as a witness, having been duly sworn
4       by a Notary Public, was examined and
5       testified as follows:
6   BY THE REPORTER:
7       Q.   Please state your full name and
8   address for the record.
9       A.   Lewis Kruger, 257 West 86th Street,
10  New York, New York.
11          (A Discussion was Held off the
12  Record.)
13         MS. EATON:  Mary Eaton, Willkie
14  Farr & Gallagher, on behalf of Monarch,
15  Stonehill, Bayview and CQS, together with
16  my colleague, Emma James.
17         MR. KERR:  Charles Kerr of Morrison
18  Foerster, on behalf of the debtor.  And
19  I'll be representing Mr. Kruger, and with
20  my colleague, Alex Lawrence.
21         MR. WYNNE:  Richard Wynne of Jones
22  Day on behalf of FGIC.
23         MR. HAO:  William Hao, on behalf of
24  Wells Fargo.
25         MR. KAUFMAN:  Phillip Kaufman from

Page 9

1        L. Kruger
2   Kramer Levin, on behalf of the committee.
3   And with me is Daniel Eggermann, also on
4   behalf of the committee.
5         MR. CARNEY:  Michael Carney from
6   McKool Smith, on behalf of Freddie Mac.
7         MR. MOORE:  James Moore from Dechert,
8   on behalf of Bank of New York Mellon.
9         MR. WEITMAN:  Mike Weitman from
10  Seward & Kissel, on behalf of Law
11  Debenture.
12         MS. SODERBERG:  Vanessa Soderberg
13  from White & Case, on behalf of Junior
14  Secured Noteholders.
15         MR. SHORE:  Chris Shore from White &
16  Case on behalf of Junior Secured
17  Noteholders.
18
19  EXAMINATION BY MS. EATON:
20      Q.   Good morning, Mr. Kruger.  I see
21  you've got a cup of coffee --
22      A.   I do.
23      Q.   -- and you're comfortable, I hope.
24      A.   I am.
25      Q.   If ever you need a --

3 (Pages 6 to 9)

Page 66

1           L. Kruger
2    page 1 of Exhibit 2.
3         Do you have that?
4    A.   Yes.
5    Q.   It says there, "I offer this
6    declaration to show that the debtor's decision
7    to enter into the plan support agreement was a
8    sound exercise of business judgment."
9         Do you see that?
10   A.   Yes, I do.
11   Q.   Is it the case that the
12   debtors -- well, let me back up.
13        Who exercised -- who at the debtor's
14   exercised the business judgment to enter into
15   the planned support agreement?
16        MR. KERR:  And I'm going to object at
17   this point.  The plan support agreement has
18   already been approved by the court.  You
19   know that.  That's not what this deposition
20   is about.
21        I don't know why you're asking
22   Mr. Kruger about a plan support agreement
23   that's already been approved.  I'll give
24   you some latitude here, but you're using up
25   your time asking him not about the FGIC

Page 67

1           L. Kruger
2    settlement but about a plan support
3    agreement that has already been vetted and
4    approved by the court, so --
5         MS. EATON:  I need to register my
6    objection to Mr. Kerr's speaking objection,
7    which he should know is completely
8    improper.
9    BY MS. EATON:
10   Q.   Could you please answer my question,
11   Mr. Kruger?
12   A.   My business judgment.
13   Q.   Not the board of directors?
14   A.   Both.  They --
15   Q.   So the board of directors exercised
16   their business --
17   A.   They exercised their judgment by
18   authorizing me to proceed with the FGIC
19   settlement.  I think I've said that before.
20   It's still true.
21   Q.   This is about the plan support
22   agreement, sir.  So let me just get -- let's
23   get a clean question and answer on the record.
24        I've drawn your attention to the
25   first sentence of paragraph 2 of your

Page 68

1           L. Kruger
2    declaration.  And the question is:  Did the --
3    who at the debtor's exercised their business
4    judgment in determining to enter into the plan
5    support agreement?
6    A.   I did.
7    Q.   And did you, likewise, exercise your
8    business judgment in determining on behalf of
9    the debtor's to enter into the FGIC Settlement
10   Agreement?
11   A.   Yes, I did.
12   Q.   What was the -- strike that.
13        Now, please turn to paragraph 14 of
14   your declaration.  Do you have that before you?
15   A.   Yes, I do.
16   Q.   That paragraph reads as follows.
17   Quote, "Each of the creditor groups was
18   required to participate in a give and take
19   process through the mediation.  In my opinion
20   the process of good-faith negotiations
21   undertaken by all participants resulted in an
22   agreement that is in the best interests not
23   only of the debtor's but also the other
24   mediation participants, including the RMBS
25   trustees and the investors in the RMBS trusts

Page 69

1           L. Kruger
2    and all other creditors of the debtor's
3    estates," period, close quote.
4         Do you see that?
5    A.   Yes, I do.
6    Q.   What was your basis for testifying
7    that the agreement was in the best interests of
8    the investors of the RMBS trusts?
9         MR. KERR:  And I'm going to, again,
10   object that your questioning relates to the
11   plan support agreement.  And I think it's
12   improper.  Mr. Kruger can answer, but I
13   think this is an improper inquiry in this
14   deposition.
15        MS. EATON:  I disagree.
16   BY MS. EATON:
17   Q.   Please answer the question,
18   Mr. Kruger.
19   A.   In my opinion, looking at it from the
20   perspective of as chief restructuring officer
21   of the debtor's estates, and taking into
22   consideration all the other interests of the
23   interested parties, I believe that the
24   combination of the work that had been done
25   during the mediation process under Judge Peck's

Page 70

1         L. Kruger
2    ==direction, together with the Ally contribution==
3    ==and -- resulted in an availability of funds for==
4    ==all parties far greater than would have been==
5    ==the case had there been no global plan==
6    ==settlement, no PSA, and the result would have==
7    ==been, had there not been, significant==
8    ==litigation among the creditors, among==
9    ==themselves, creditors and the debtor, no Ally==
10   ==contribution.==
11        ==And my personal opinion would be and==
12   ==my business judgment was that if we ended up in==
13   ==that situation, there was a very little==
14   ==likelihood of a distribution to creditors for==
15   ==years to come and that this estate would be==
16   ==diminished significantly by the cost of that==
17   ==litigation.==
18        ==So, for me, it was very easy to think==
19   ==this transaction was in the best interest, both==
20   ==of the -- of all of the creditors of the==
21   ==debtor's estates, as well as the investors.==
22        Q. And by "transaction" you mean all of
23   the transactions contemplated by what you've
24   defined in your declaration in paragraph 5 as
25   the agreement; right?

Page 71

1         L. Kruger
2         A. Yes.
3         Q. In other words, the plan support
4    agreement, the planned term sheet, and the
5    supplemental term sheet?
6         A. Correct.
7         Q. And you formed a business judgment,
8    if I understand your testimony correctly, that
9    that agreement, comprised of at least those
10   three elements, was in the best interests of
11   the investors in the RMBS trusts?
12        A. Correct.
13        Q. But you never did any analysis of the
14   impact of that agreement on those investors;
15   correct?
16            MR. KERR: Objection.
17   Mischaracterizes testimony. He testified
18   what he did.
19        A. Want to repeat the question.
20        Q. I'll ask a new question.
21            What analysis, if any, did you do of
22   the impact of the agreement defined in
23   paragraph 5 of your declaration on the
24   investors of the RMBS trusts?
25            MR. KERR: Objection. Asked and

Page 72

1         L. Kruger
2    answered.
3         A. I consulted both with my counsel, my
4    advisors, Unsecured Creditors' Committee
5    counsel, their advisors. I claim to the
6    conclusion which I just restated, which is that
7    I believe that the benefits for the
8    participants in the estates is far greater as a
9    result of the global settlement provided for in
10   paragraph 5, as you described it, than the
11   alternatives would have been for those same
12   creditors.
13        Q. But you did not consult with either
14   the investors in the RMBS trusts or anyone
15   representing the investors in the RMBS trusts;
16   correct?
17            MR. KERR: Objection.
18        A. As part of the global mediation
19   process, over the course of the months I had
20   presentations made to me by various of the
21   parties to the mediation and learned from those
22   presentations the views of the various
23   participating parties. That informed me and
24   helped my decision-making process.
25        Q. Who was representing the interests of

Page 73

1         L. Kruger
2    the investors in the RMBS trusts during those
3    discussions you just referenced?
4         A. I assumed the trusts do that.
5         Q. But you didn't know?
6         A. No.
7         Q. Did you actually speak with anyone
8    representing the trusts about the impact of the
9    agreement on the investors in the RMBS trusts?
10        A. No.
11        Q. You spoke, instead, with your
12   counsel, the debtor's advisors and advisors to
13   the creditors' committee?
14            MR. KERR: Objection.
15   Mischaracterizes testimony.
16   BY MS. EATON:
17        Q. Isn't that right?
18            MR. KERR: Objection.
19        A. Over the course of the months, I
20   spoke with any of the mediation participants.
21        Q. There was nobody representing the
22   investors in the RMBS trusts, the wrapped
23   trusts at the mediation; isn't that true?
24            MR. KERR: Objection.
25        A. I'm not sure I understand your