Paul N. Papas II, *pro se*
4727 E Bell Rd.
Ste 45-350
Phoenix, AZ 85032
602-493-2016
Paul_Papas@MyLegalHelpUSA.com



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RESIDENTIAL CAPITAL, LLC<br>a/k/a RESIDENTIAL CAPITAL CORPORATION<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Debtor | Chapter 11<br>Case No. 12-12020-mg<br>Joint Administration |

## CLAIMANT/CREDITOR MEMORANDUM IN SUPPORT OF OBJECTION AND OPPOSITION TO DISCLOSURE STATEMENT AND RENEWED OBJECTION AND OPPOSITION TO ANY ASSET TRANSFERS

Claimant/Creditor Paul N. Papas II, *pro se*, presents his Memorandum In Support of his Objection and Opposition To the Disclosure Statement AND Renewed Objection and Opposition to ANY Asset Transfers, which is dated August 6, 2013 and docketed at **4588** as follows:

1. There are several issues with supporting documents on file in this matter which have not been refuted by Debtor ResCap/GMAC. The Claimant/Creditor incorporates by reference several key documents which support his position:

(a) **Claimant/Creditor Reply to Debtor ResCap/GMAC – Docket 1731** which has a long list of Admissions of the Debtor ResCap/GMAC which include Bankruptcy Fraud, their violations of the Uniform Fraudulent Transfer Act, and 18 USC 1961, *et seq*.

(b) **MERS Corporate Resolution** dated March 7, 2002 recorded in the Massachusetts Middlesex South Registry of Deed at Book 34988, Page 025 – a copy of this was provided in Discovery by Debtor ResCap/GMAC and is again attached and incorporated by reference as an Exhibit.

2. The Claimant/Creditor presented an Offer of Proof to offer the Court the sworn testimony of William Hultman who signed the Corporate Resolution which appears to appoint Atty. Andrew S. Harmon to act on behalf of MERS. *Atty. Andrew S. Harmon who represented GMAC and purportedly was an officer of MERS at the same time, signed the assignment of the Mortgage from MERS to GMAC.* GMAC proceeded to collect payments on properties in which the Claimant/Creditor has an interest, then at some point decided the mortgage was in default and proceeded to foreclose upon the property. Neither Harmon nor GMAC have produced an accounting of the payments, calling it irrelevant. Harmon filed a false affidavit, on behalf of GMAC, in Land Court to begin the foreclosure process.

4. The facts and evidence show there was NO assignment from MERS to GMAC and GMAC did not have the legal right to foreclose against the Plaintiff, as stated in the Affidavit of William Hutlman and the Admissions of GMAC.

5. MERS never held the Note and GMAC never held the Note, as evidenced in the GMAC Admissions. MERS was established to only transfer mortgages, not Notes. The Supreme Court of the United States decided in *Carpenter v. Longan*, 83 U.S. 16 Wall. 271 271 (1872) that the foreclosing party needed to hold the Note and Mortgage in order to foreclose. The Admissions of GMAC verify that GMAC never held the Note and MERS does not handle Notes.

6. As has been stated several times in this matter: *On December 2, 2010 a Hearing was held in United States House of Representatives in which sworn testimony and evidence was taken and accepted from William Hultman of MERS. His sworn testimony is crucial in that he is the person that signed what appears to be a form of a Corporate Resolution for and on behalf of MERS that has been recorded in various places appearing to make appointments and grant authority to many Assistant Secretaries and Assistant Vice Presidents of MERS. William Hultman admitted under oath that he did not have the authority to make those appointments or grant any authority for and on behalf of MERS when he signed what appears to be MERS Corporate Resolutions. Therefore each person who signed documents for and on behalf of MERS, whose authority or appointment which purports to come from William Hultman, never had the authority to sign for and on behalf of MERS which make those documents void. Since those documents are void the assignments from MERS are also void, as are any actions that are taken by those who think that they hold the Mortgage on the property, after the Mortgage was assigned to MERS. Mortgages, not Notes, can be assigned to MERS. However during the above relevant times to this matter, MERS could not make an assignment of Mortgages out of MERS.*

**7. The Deposition of William Hultman says in part:**

Does MERS have any salaried employees?

A **No.**

Q Does MERS have any employees?

A Did they ever have any? I couldn't hear you.

Q Does MERS have any employees currently?

A **No.**

Q In the last five years has MERS had any employees?

A **No.**

Q To whom do the officers of MERS report?

A The Board of Directors.

Q To your knowledge has Mr. Hallinan ever reported to the Board?

A He would have reported through me if there was something to report.

Q So if I understand your answer, at least the MERS officers reflected on Hultman Exhibit 4, if they had something to report would report to you even though you're not an employee of MERS, is that correct?

MR. BROCHIN: Object to the form of the question.

A That's correct.

Q And in what capacity would they report to you?

A **As a corporate officer. I'm the secretary.**

Q **As a corporate officer of what?**

A **Of MERS.**

Q **So you are the secretary of MERS, but are not an employee of MERS?**

A **That's correct. etc...**

Q How many assistant secretaries have you appointed pursuant to the April 9, 1998 resolution; how many assistant secretaries of MERS have you appointed?

A I don't know that number.

Q Approximately?

A I wouldn't even begin to be able to tell you right now.

Q Is it in the thousands?

A **Yes.**

Q Have you been doing this all around the country in every state in the country?

A **Yes.**

Q And all these officers I understand are unpaid officers of MERS?

A **Yes.**

Q And there's no live person who is an employee of MERS that they report to, is that correct, who is an employee?

MR. BROCHIN: Object to the form of the question.

A **There are no employees of MERS.**

---------------------------------------------

Q. In your experience has a member ever made a request that one if its employees be appointed a MERS officer; has MERS rejected the request?

A. I don't know

Q. Now, on the second page of the exhibit, Hultman Exhibit 28 towards the bottom your name appears in the phrase I, William C. Hultman. Do you see that?

A. Yes

Q. And it reflects that the foregoing is a true copy of a resolution duly adopted by the Board of Directors effective as of a date certain. Are you referring, when you say the foregoing is a true copy of a resolution, are you referring to that same April 9, 1998 resolution we discussed earlier today?

A. No, I 'm referring to the one that I'm signing as of that date.

Q. But it says the foregoing is a true copy of a resolution duly adopted by the Board of Directors. **What's duly adopted by the Board of Directors?**

A. **Again, I can go over it again because I have been delegated the authority, when I make the delegation and when I sign the resolution, that becomes a resolution of the Board as of that date.**

Q. **So if I went looking for the original of the resolution duly adopted by the Board, it would take me back to this document, is that correct?**

A. If you were to ask me for a copy of the resolution, I would give you the copy that was—on the day that I signed it.

Q. And if I were to ask you for the original of the resolution, what would you give me?

A. I don't understand what you mean by original resolution.

Q. Well, this is a true copy. You're certifying as to this is a true copy. That would imply there is an original some place. So if I asked you to give me the original, what would you produce?

A. I will not accept your characterization that way.

Q. Then what do you mean by true copy? True copy of what?

A. The resolution that I adopted at that date. I know what the resolution is. I don't have to look at a piece of paper. It's the same for everybody at that time frame.

Q. Let's try that with Hultman Exhibit 4, which is the Corporate Resolution relating to the Phelan, Hallinan & Schmieg firm. What you signed – I'm sorry, I will wait until you have it. You're certifying that what has your signature at the bottom, you're certifying that it is a true copy of a resolution duly adopted by the Board, that the foregoing is a true

copy. So I understand the word copy and that this document has your signature is a true copy. Do I understand that the original of this true copy is the same document but, with original ink or it would say the same thing?

A. The resolution is an intangible. I'm passing a resolution and I'm certifying that that's an accurate representation of the authority that has been delegated to these officers.

**Q. You say the resolution is intangible. Does that mean that there's not a piece of paper, there's not an original?**

A, It is an agreement that they have this authority between MERS and its officers.

Q. When you say the agreement, are you referring to the Agreement for Signing Authority, Hultman Exhibit 3?

A. No, I'm referring to the contract, the agreement between the parties, that's what the agreement is. They get to assign liens and they get to release liens and **I am attesting that that's an accurate representation of the authority that has been delegated to them by me pursuant to the authority of the Board of Directors.**

Q. I understand, and I'll try to stop it with this, but I understand you're saying that the foregoing is s true copy of a resolution, so what is said above is a copy of a resolution adopted by the Board. **If I asked you to take me, Mr Hultman, you've just said this is a true copy, take me to the original resolution, is there a piece of paper adopted by the Board, original resolution?**

A. No, I've told you this five times.

Q. Thank you


**The Deposition is part of the Congressional Hearing Record of December 2, 2010 in which William Hultman stated under oath that he never had in writing a signed Corporate Resolution from the MERS Board of Directors granting Mr Hutlman the authority to make appointments of Assistant Secretaries or Vice Presidents of MERS. The Admissions of William Hultman's lack of authority to make appointments renders any purported appointments VOID which in turn renders VOID any documents, including mortgage assignments, that may have been signed as a result of the invalid appointments by Mr Hultman.**

The Claimant/Creditor provides this link to the 170 page Deposition of William Hultman for all to read and/or download.

http://www.scribd.com/doc/36513502/MERS-Secretary-and-Treasurer-William-Hultman-Deposition-NJ

8. The bailout GMAC received from TARP paid GMAC for mortgages with the agreement that GMAC would NOT seek payment from the borrower. GMAC violated the TARP agreement when they continued to seek payment from the borrower. GMAC lost standing to collect, foreclose, and transfer the title of the mortgage when they sold the mortgage to TARP.

9. The Note was separated from the Mortgage, securitized, and then sold on Wall Street. This means that the Note holder was been paid many times for the Note. He has gained rather than lost by holding the Note and therefore has not been harmed by the borrower.

THEREFORE, for the above stated reasons this Claimant/Creditor states his Objection and Opposition to the Disclosure Statement and he renews his Objection and Opposition to asset transfers from Debtor ResCap/GMAC AND this should stay all proceedings in the Bankruptcy matter during the pendency of the appeal as the outcome of the appeal may be in favor of this Claimant/Creditor which would necessitate the reversal of all asset transfer from the Debtor ResCap/GMAC.

Dated August 20, 2013

_[signature]_
Paul N. Papas II




BK34988PG025

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

## CORPORATE RESOLUTION

Be it Resolved that Mark P. Harmon, Thomas J. Walsh, Andrew S. Harmon, Francis J. Nolan and Marcia A. Greeley as employees of **Harmon Law Offices, P.C.**, (the "Member"), a Member of Mortgage Electronic Registration Systems, Inc. ("MERS"), are made assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS® System, including but not limited to (a) assignments of mortgage or deeds of trust; (b) substitution of trustee on Deeds of Trust, (c) Foreclosure Deeds upon sale on behalf of MERS, (d) Affidavits of Non-military Status, (e) Affidavits, (f) Affidavits of Debt, (g) quitclaim deeds, (h) Affidavits regarding lost promissory notes, and (i) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process; and (j) such other documents as may be necessary and proper to carry into effect the powers granted herein;

(2) take any and all actions and execute all documents necessary to protect the interest of the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

(3) execute any and all quitclaim deeds of real estate purchased by MERS at foreclosure sale;

(4) and further to ratify any and all previously executed documents and previous actions taken pursuant to said purposes.

I, **William C. Hultman**, being the **Corporate Secretary** of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the 31st day of October, 2001, which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

William Hultman

(Corporate seal)

A true copy of Vote # 360P
filed with Norfolk Registry
District of the Land Court
Certify