1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 12-12020-mg

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  RESIDENTIAL CAPITAL, LLC, et al.,

9

10            Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            August 21, 2013

19            10:03 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2   (CC: Doc no. 4152, 4153, 4157) Plan Proponents' Motion for an

3   Order (I) Approving Disclosure Statement, (II) Establishing

4   Procedures for Solicitation and Tabulation of Votes to Accept

5   or Reject the Plan Proponents' Joint Chapter 11 Plan, (III)

6   Approving the Form of Ballots, (IV) Scheduling a Hearing on

7   Confirmation of the Plan, (V) Approving Procedures for Notice

8   of the Confirmation Hearing and for Filing Objections to

9   Confirmation of the Plan, and (VI) Granting Related Relief.

10

11  (CC: Doc# 4451) Joint Motion Pursuant to 11 U.S.C. 105 and Fed.

12  R. Bankr. P. 7023 and 9019 for an Order (1) Granting Class

13  Certification for Purposes of Settlement Only, (2) Appointment

14  Class Representative and Class Counsel for Purposes of

15  Settlement Only, (3) Preliminarily Approving the Settlement

16  Agreement Between Plaintiffs, On Their Own Behalf and On Behalf

17  of the Class of Similarly Situated Persons, and the Debtors,

18  (4) Approving the Form and Manner of Notice to the Class, (5)

19  Scheduling a Fairness Hearing to Consider Approval of the

20  Settlement on a Final Basis and Related Relief and (6)

21  Approving the Settlement Agreement on a Final Basis and

22  Granting Related Relief.

23

24

25

3

1

2   Doc# 4555 Motion to Extend Exclusivity Period for Filing a

3   Chapter 11 Plan and Disclosure Statement / Debtors' Motion for

4   the Entry of an Order Further Extending Their Exclusive Periods

5   to File a Chapter 11 Plan and Solicit Acceptances Thereof

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

4

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   TODD M. GOREN, ESQ.

9        LORENZO MARINUZZI, ESQ.

10        NORMAN S. ROSENBAUM, ESQ.

11

12

13  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

14        Conflicts Counsel to Debtors

15        101 Park Avenue

16        New York, NY 10178

17

18  BY:   THERESA A. FOUDY, ESQ.

19        JONATHAN J. WALSH, ESQ.

20        MARYANN GALLAGHER, ESQ.

21

22

23

24

25

5

1

2    UNITED STATES DEPARTMENT OF JUSTICE

3          Office of the United States Trustee

4          201 Varick Street

5          Suite 1006

6          New York, NY 10014

7

8    BY:    SUSAN GOLDEN, ESQ.

9          BRIAN S. MASUMOTO, ESQ.

10

11

12   UNITED STATES DEPARTMENT OF JUSTICE

13          U.S. Attorney's Office

14          86 Chambers Street

15          3rd Floor

16          New York, NY 10007

17

18   BY:    JOSEPH N. CORDARO, ESQ.

19

20

21

22

23

24

25

6

```
 1
 2   KRAMER LEVIN NAFTALIS & FRANKEL LLP
 3        Attorneys for Official Creditors' Committee
 4        1177 Avenue of the Americas
 5        New York, NY 10036
 6
 7   BY:   KENNETH H. ECKSTEIN, ESQ.
 8         DOUGLAS MANNAL, ESQ.
 9         ELISE FREJKA, ESQ.
10         STEPHEN D. ZIDE, ESQ.
11
12
13   SILVERMANACAMPORA LLP
14        Special Counsel to Creditors' Committee
15        100 Jericho Quadrangle
16        Suite 300
17        Jericho, NY 11753
18
19   BY:   JUSTIN S. KRELL, ESQ.
20         RONALD J. FRIEDMAN, ESQ.
21
22
23
24
25
```

7

1

2    WILMER CUTLER PICKERING HALE AND DORR LLP

3           Special Counsel to the Creditors' Committee

4           7 World Trade Center

5           New York, NY 10007

6

7    BY:   WILLIAM J. PERLSTEIN, ESQ.

8

9

10   KIRKLAND & ELLIS LLP

11          Attorneys for Ally Bank and Ally Financial, Inc.

12          601 Lexington Avenue

13          New York, NY 10022

14

15   BY:   RAY C. SCHROCK, ESQ.

16

17

18   JONES DAY

19          Attorneys for FGIC

20          901 Lakeside Avenue

21          Cleveland, OH 44114

22

23   BY:   CARL E BLACK, ESQ.

24

25

8

1

2 CLEARY GOTTLIEB STEEN & HAMILTON LLP

3        Attorneys for Wilmington Trust

4        One Liberty Plaza

5        New York, NY 10006

6

7 BY:   JEREMY R. OPOLSKY, ESQ.

8

9

10 SEWARD & KISSEL LLP

11        Attorneys for US Bank as RMBS Trustee

12        One Battery Park Plaza

13        New York, NY 10004

14

15 BY:   MARK D. KOTWICK, ESQ.

16        ARLENE R. ALVES, ESQ.

17

18

19 MCKOOL SMITH, P.C.

20        Attorneys for Freddie Mac

21        One Bryant Park

22        47th Floor

23        New York, NY 10036

24

25 BY:   MICHAEL R. CARNEY, ESQ.

9

1

2    ROPES & GRAY

3           Attorneys for Steering Committee of RMBS Investors

4           800 Boylston Street

5           Boston, MA 02199

6

7    BY:   D. ROSS MARTIN, ESQ.

8           ANDREW G. DEVORE, ESQ.

9

10

11   MUNGER, TOLLES & OLSON LLP

12          Attorneys for Berkshire Hathaway, Inc.

13          355 South Grand Avenue

14          35th Floor

15          Los Angeles, CA 90071

16

17   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

18

19

20   LOEB & LOEB

21          Attorneys for Wilmington Trust, N.A. at Trustee

22          345 Park Avenue

23          New York, NY 10154

24

25   BY:   WALTER H. CURCHACK, ESQ.

10

1

2  MILBANK, TWEED, HADLEY & MCCLOY LLP

3       Attorneys for Ad Hoc Group of Junior Secured Noteholders

4       One Chase Manhattan Plaza

5       New York, NY 10005

6

7  BY:   GERARD UZZI, ESQ.

8        JONATHAN OSTRZEGA, ESQ.

9

10

11 AKIN GUMP STRAUSS HAUER & FELD LLP

12       Attorneys for UMB

13       One Bryant Park

14       New York, NY 10036

15

16 BY:   DANIEL H. GOLDEN, ESQ.

17

18

19 KIRBY MCINERNEY, LLP

20       Attorneys for Landon Rothstein Plaintiff

21       825 Third Avenue

22       New York, NY 10022

23

24 BY:   THOMAS W. ELROD, ESQ.

25

11

1

2  MORGAN, LEWIS & BOCKIUS LLP

3       Attorneys for Deutsche Bank

4       101 Park Avenue

5       New York, NY 10178

6

7  BY:   JAMES L. GARRITY, JR., ESQ.

8

9

10  LOWENSTEIN SANDLER LLP

11       RESPA Plaintiffs and Certain Securities Plaintiffs

12       65 Livingston Avenue

13       Roseland, NJ 07068

14

15  BY:   MICHAEL S. ETKIN, ESQ.

16

17

18  QUINN EMANUEL URQUHART & SULLIVAN, LLP

19       Attorneys for AIG, Allstate, Prudential, Mass Mutual

20       51 Madison Avenue

21       22nd Floor

22       New York, NY 10010

23

24  BY:   SCOTT C. SHELLEY, ESQ.

25

12

 1

 2  WALTERS BENDER STROHBEHN VAUGHAN, P.C.

 3       Attorneys for Kessler Class

 4       100 Main

 5       Kansas City, MO 64196

 6

 7  BY:   DAVID M. SKEENS, ESQ.

 8       R. FREDERICK WALTERS, ESQ.

 9

10

11  POLSINELLI SHUGHART

12       Attorneys For Kessler Class

13       900 Third Avenue

14       Suite 2100

15       New York, NY 10022

16

17  BY:   DAN FLANIGAN, ESQ.

18

19

20  SIMPSON THACHER & BARTLETT LLP

21       Attorneys for Deutsche Bank

22       425 Lexington Avenue

23       New York, NY 10017

24

25  BY:   SANDY QUSBA, ESQ.

13

1

2   MCKENNA LONG & ALDRIDGE LLP

3        Attorneys for Impac

4        230 Park Avenue

5        Suite 1700

6        New York, NY 10169

7

8   BY:   ALAN F. KAUFMAN, ESQ.

9

10

11  PROSKAUER ROSE LLP

12       Attorneys for Assured Guarantee

13       Eleven Times Square

14       New York, NY 10036

15

16  BY:   IRENA M. GOLDSTEIN, ESQ.

17

18

19  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

20       Attorneys for FHFA

21       1633 Broadway

22       New York, NY 10019

23

24  BY:   DANIEL A. FLIMAN, ESQ.

25

14

1

2  PATTERSON BELKNAP WEBB & TYLER LLP

3          Attorneys for Ambac Assurance Corporation

4          1133 Avenue of the Americas

5          New York, NY 10036

6

7  BY:   BRIAN P. GUINEY, ESQ.

8

9

10 GIBSON DUNN & CRUTCHER LLP

11         Attorneys for Amherst Advisory & Management

12         200 Park Avenue

13         New York, NY 10166

14

15 BY:   JOSHUA WEISSER, ESQ.

16

17

18 BRYAN CAVE LLP

19         Attorneys for Residential Capital, LLC, et al.

20         211 North Broadway

21         Suite 3600

22         St. Louis, MO 63102

23

24 BY:   MICHAEL G. BIGGERS, ESQ.

25

15

1

2  ALLEN & OVERY LLP

3         Attorneys for HSBC

4         1221 Avenue of the Americas

5         New York, NY 10020

6

7  BY:   JOHN KIBLER, ESQ.

8

9

10  CARLSON LYNCH LTD.

11         Attorneys for Lead Plaintiffs Putative Class

12         115 Federal Street

13         Suite 201

14         Pittsburgh, PA 15212

15

16  BY:   RONALD B. CARLSON, ESQ.

17

18

19  BALLARD SPAHR LLP

20         Attorneys for PNC Bank, N.A.

21         1735 Market Street

22         51st Floor

23         Philadelphia, PA 19103

24

25  BY:   SARAH SCHINDLER-WILLIAMS, ESQ. (TELEPHONICALLY)

16

1

2  ROMERO LAW FIRM

3        Attorneys for County of San Bernardino

4        BMR Professional Building

5        Whittier, CA 90601

6

7  BY:   MARTHA E. ROMERO, ESQ. (TELEPHONICALLY)

8

9

10  ACCESS LEGAL SERVICES

11        Attorneys for Ms. Nora and others similarly situated

12        210 Second Street NE

13        Minneapolis, MN 55413

14

15  BY:   WENDY ALISON NORA, ESQ. (TELEPHONICALLY)

16

17

18  PENSION BENEFIT GUARANTY CORPORATION

19        Office of the Chief Counsel

20        1200 K Street, N.W.

21        Washington, D.C. 20005

22

23  BY:   VICENTE MATIAS MURRELL, ESQ.

24

25

**RESIDENTIAL CAPITAL, LLC, ET AL.**

17

1              P R O C E E D I N G S

2            THE COURT:  Please be seated.  We're here in

3    Residential Capital, number 12-12020.  Mr. Marinuzzi?

4            MR. MARINUZZI:  Good morning, Your Honor.  For the

5    record, Lorenzo Marinuzzi, Morrison & Foerster, on behalf of

6    the debtors.  Your Honor, the agenda for today's hearing is

7    fairly short and largely uncontested -- the agenda.  Not the

8    papers, the agenda.

9            The first matter on the agenda on page 1 is the motion

10   for approval of the settlement between the debtors and the

11   Kessler class plaintiffs.  And for that I'm going to cede the

12   podium to my partner Norman Rosenbaum.

13           THE COURT:  Okay.

14           MR. ROSENBAUM:  Good morning, Your Honor.

15           THE COURT:  Good morning, Mr. Rosenbaum.

16           MR. ROSENBAUM:  Norm Rosenbaum, Morrison & Foerster

17   for the debtors.

18           Your Honor, this is the joint motion of the debtors

19   and the representatives of the Kessler settlement class, for

20   preliminary and final approval of the settlement reached with

21   the putative class --

22           THE COURT:  Preliminary.

23           MR. ROSENBAUM:  -- under Section 105 of the Bankruptcy

24   Code, Bankruptcy Rule --

25           THE COURT:  It's the preliminary approval, isn't it?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

18

1      Preliminary approval?

2                  MR. ROSENBAUM:  Sorry, Your Honor?

3                  THE COURT:  Preliminary approval, not final?

4                  MR. ROSENBAUM:  This morning it's preliminary

5      approval.

6                  THE COURT:  Yes.  You said preliminary and final.

7                  MR. ROSENBAUM:  That's correct, Your Honor.  The

8      motion is for preliminary and then subsequently final approval.

9                  THE COURT:  Okay.

10                 MR. ROSENBAUM:  Assuming we obtain preliminary

11     approval this morning.

12                 THE COURT:  Let me get right to the point, Mr.

13     Rosenbaum.  I know you're presenting this as uncontested, and I

14     know that PNC filed a limited objection reserving their

15     objection for a final hearing.  But I think you're inviting

16     error on my part, and you're going to need to respond to it,

17     probably in a brief, but -- and it's the following.

18                 Denney v. Deutsche Bank is controlling Second Circuit

19     law, 443 F.3d 253, on the issue of whether the methodology for

20     judgment reduction can be left to "applicable law", and

21     specifically says it can't.  Now, they identify two problems

22     with leaving it to applicable law.  One is potential prejudice

23     to the nonsettling defendants.  PNC can take care of itself.

24     If they wish to put the issue off until the final hearing, I

25     probably wouldn't have a problem with that.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

19

1        But in Denney v. Deutsche Bank, at pages 274 and 275,

2    the Second Circuit, in adopting the Fourth Circuit Rule in In

3    re Jiffy Lube 927 F.2d 155, identifies two problems with not

4    identifying the methodology.  And it quotes from Jiffy Lube,

5    but it starts by saying, "We are persuaded by the reasoning of

6    the Fourth Circuit in Jiffy Lube."  And Jiffy Lube indicates

7    that, in addition to prejudice to nonsettling defendants, it

8    "may deprive the plaintiff class members of information

9    affecting their ability to assess fairly the merits of the

10   settlement."

11       Then it goes on with a longer quote:  "As to

12   plaintiffs" -- this is a quote -- "As to plaintiffs, it is

13   clear that the method of setoff chosen affects the desirability

14   of a proposed partial settlement.  For example, plaintiffs bear

15   the risk of a 'bad' settlement under the 'proportionate' rule,

16   while under the 'pro tanto' rule the risk passes to the non-

17   settling defendants and plaintiffs gain more certainty from the

18   earlier resolution of the setoff figure.  Moreover, the

19   'proportionate' method entails a delay in ascertaining the

20   final amount of setoff which makes it difficult to frame a

21   notice to the class that fairly presents the merits of the

22   proposed settlement.  If the 'proportionate' method is used,

23   the notice to plaintiffs should inform them of this

24   shortcoming."

25       None of that is there.  You're inviting error on my

**RESIDENTIAL CAPITAL, LLC, ET AL.**

20

1  part in preliminarily approving a settlement and approving

2  class action notice to a settlement that provides for judgment

3  reduction to be subject to applicable law.  Do you have a

4  response to that?

5          MR. ROSENBAUM:  Your Honor, I don't have a response to

6  that for the reasons that we --

7          THE COURT:  I don't like people inviting error.

8          MR. ROSENBAUM:  I understand, Your Honor.  I don't

9  have a response to it.  Curtis Mallet, our conflicts counsel,

10 is handling that issue with PNC Bank.  Based on Your Honor's

11 comments, I think that we would need, as a group, to reconvene

12 and consider that in terms of what the notice should provide.

13 And the --

14         THE COURT:  Well, it's more than what the notice

15 should provide, because what the Second Circuit in Denney

16 said -- they reversed Judge Scheindlin, who had approved a

17 class action settlement that had had the "applicable law"

18 provision.  They said no, you have to specify what the

19 methodology is.  So it wasn't at the preliminary approval, but

20 its discussion in quotation from Jiffy Lube about notice to the

21 class to evaluate, people are going to decide whether to opt

22 out of a settlement.

23         So we'll put this off.  You're going to have to go

24 back to the drawing board.  If you want to -- if you plan to

25 adhere to the settlement as drafted, then you're going to have

**RESIDENTIAL CAPITAL, LLC, ET AL.**

21

1    to submit a brief to persuade me why it's appropriate to send

2    notice to the class that believes this issue that the Second

3    Circuit should be -- says needs to be resolved in the

4    settlement, why it should be put off.  Okay?

5            So the motion is -- I'll adjourn it, I won't deny it

6    at this stage.  But you know what my reaction to it is.

7            MR. ROSENBAUM:  Your Honor, could we adjourn it to one

8    of the hearings for next week?

9            THE COURT:  Well, you're going to need -- you need to

10   advise me how you're going to deal with it before I'll reset it

11   on the calendar.  If you plan to proceed with the settlement as

12   drafted and the notice as drafted, I need briefs to support a

13   preliminary approval of a settlement with a methdology -- well,

14   leaving the methodology undefined, as the Second Circuit says

15   you can't do, in Denney v. Deutsche Bank.

16           So I'm not going to set it for a hearing until I hear

17   back from the parties as to how they wish to proceed.

18           MR. ROSENBAUM:  Thank you, Your Honor.  Your Honor --

19           THE COURT:  What's next on the agenda?

20           MR. ROSENBAUM:  The next matter on the agenda is the

21   motion for extension of exclusivity --

22           THE COURT:  Okay.

23           MR. ROSENBAUM:  -- and Mr. Goren will be handling

24   that.

25           THE COURT:  Mr. Goren?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

22

1          Let me just -- before you go on, Mr. Goren.  That's

2    the only issue I had with giving preliminary approval of the

3    Kessler class settlement.  I want to make it clear.  But it's a

4    big issue.

5          MR. ECKSTEIN:  Your Honor, if I may just -- I don't

6    know -- Kenneth Eckstein on behalf of the creditors' committee.

7          I don't know whether it will be possible or not, but

8    it might be useful to at least adjourn this to the end of the

9    calendar to see whether or not this is a discrete issue, if

10   there's a way to address it to Your Honor's satisfaction this

11   morning, at least for purposes of preliminary approval.  We

12   can --

13         THE COURT:  We can put it to the end of the calendar.

14         MR. ECKSTEIN:  I think that would be useful, Your

15   Honor.

16         THE COURT:  I don't know that you're going to --

17         MR. ECKSTEIN:  If not, we'll just adjourn it.

18         THE COURT:  Anything other than a settlement agreement

19   that includes -- that defines the methodology is going to

20   satisfy me, but --

21         MR. ECKSTEIN:  Understood.

22         THE COURT:  -- we'll put it at the end of the

23   calendar.

24         Go ahead, Mr. Goren.

25         MR. GOREN:  Thank you, Your Honor.  Todd Goren,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

23

1   Morrison & Foerster.  We filed our motion to extend

2   exclusivity.  This, if granted, would be our final motion.  It

3   would extend exclusivity to -- plan exclusivity to November

4   14th and solicitation exclusivity until January 14th, the

5   maximum extensions permitted by the Code.

6          THE COURT:  Anybody wish to be heard?

7          Granted.

8          MR. GOREN:  Thank you, Your Honor.

9          MR. MARINUZZI:  Your Honor, the next item on the

10  agenda is on page 4.  I apologize.  And this is the series of

11  motions dealing with the professionals involved in the

12  foreclosure review.

13         THE COURT:  Yes.

14         MR. MARINUZZI:  We're just going to continue it on a

15  further interim basis to the 24th of September.  I believe that

16  forms of the order were submitted to chambers already.

17         THE COURT:  That's fine, Mr. Marinuzzi.

18         MR. MARINUZZI:  Okay, thank you.

19         THE COURT:  Thank you.

20         MR. MARINUZZI:  Your Honor, that I believe brings us

21  to item number 4 on page 9, and that's the motion of the plan

22  proponents seeking entry of an order approving the disclosure

23  statement, approving procedures for the solicitation and

24  tabulation of votes to accept or reject the plan, approving the

25  form of ballots, scheduling a confirmation hearing, approving

**RESIDENTIAL CAPITAL, LLC, ET AL.**

24

1    confirmation notice, and related relief.

2           The motion was filed along with the Chapter 11 --

3    joint Chapter 11 plan and disclosure statement on July 3rd.

4    The filing of those documents followed the Court's approval on

5    June 26th of the debtors' entry into a plan support agreement

6    with the creditors' committee, AFI, and some -- a number of

7    important consenting creditors.

8           The plan support agreement, in turn, was the product

9    of months of negotiations that Mr. Eckstein, I know, would like

10   to speak to the Court about shortly.  The process began in

11   earnest at the end of last year when a mediator was appointed,

12   and under Judge Peck's guidance, it led to the filing of the

13   plan and disclosure statement, and what we hope will be

14   confirmation of a plan in November -- November of 2013.

15          The framework for the plan is the global settlement.

16   As I said, Mr. Eckstein's going to address the global

17   settlement with the Court shortly.

18          As of the objection deadline for the disclosure

19   statement motion, and actually for a couple of days thereafter,

20   we received a total of twenty objections, and six or seven --

21   seven actually, are reservations of rights.  And we'll flip

22   through, hopefully, if Your Honor permits, the objection chart

23   that we prepared.  But Your Honor probably noted already that

24   we've been able to resolve ten of the objections.  And of the

25   ten that remain, I think at least half of them are objections

**RESIDENTIAL CAPITAL, LLC, ET AL.**

25

1    that we don't really consider to be objections to the

2    disclosure statement.  And even for the remaining ones, we've

3    been able to resolve some discrete issues within the objections

4    themselves.

5         I'd like to provide the Court with a general overview

6    of the plan.  The plan sets up three debtor groups for

7    distribution purposes.  You've got the ResCap debtors, which is

8    the parent and the two immediate subs.  You've got the GMACM

9    debtors, which consist of GMACM and twenty sub-debtors under

10   the GMACM arm of the corporate chart.  And then you have the

11   RFC debtors, which is Residential Funding and twenty-six

12   debtors underneath Residential Funding, or sub-classes, as we

13   refer to them in the plan.  And the idea was to capture within

14   those three entities the debtors that naturally rolled up into

15   the main debtor entities in this case.

16        As required under Section 1129, the plan provides for

17   payment in full of administrative claims and priority claims

18   and full payment of what we term "other secured claims".  We'll

19   talk to the JSNs in a minute.

20        Your Honor, in the disclosure statement -- and there

21   are going to be page references, Your Honor, in my narrative,

22   and also within the chart to pages of the disclosure statement.

23   And those would be page references to the marked disclosure

24   statement that was filed last night.  Hopefully, Your Honor has

25   a binder like the one I'm holding up.  And if Your Hon --

1   great.

2          And so this is the marked version of the plan.  And

3   Your Honor, on pages 9 through 15 of the marked plan, it sets

4   out the expected recoveries or projected recoveries in the

5   disclosure statement; and the recoveries for unsecured

6   creditors will vary depending upon whether their claims are

7   against the ResCap debtors, where the estimate is 31.5 to 41.9

8   percent; the GMACM debtors, where it's currently 26 to 34.7

9   percent; and the RFC debtors, where we're at 7.8 to 10.3

10  percent.

11         The plan will establish various trusts to effectuate

12  the distribution.  So we've got the main liquidating trust that

13  will liquidated the debtors' remaining assets, make

14  distributions to creditors in the form of trust units which

15  will be followed up by cash distributions to the units.  And

16  the liquidating trust makes those distributions to creditors

17  other than borrowers, the New Jersey Carpenters claims class,

18  and in some fashion to the members of the private securities

19  claims class.

20         And so the borrowers will have distributions in the

21  form of an actual cash distribution into a borrower trust,

22  which initially will be funded with an amount up to 57.6

23  million dollars.  And there's a true-up concept with respect to

24  that trust, that as we get closer to the effective date of the

25  plan, and we file our plan supplement, we'll have a better

**RESIDENTIAL CAPITAL, LLC, ET AL.**

27

1   handle on the overall claims within GMACM within RFC, and the

2   idea is to provide to the borrowers of GMACM and the respective

3   RFC, a recovery that's comparable to what other unsecured

4   creditors are getting at those respective debtor entities.

5          THE COURT:  Did you just add another -- ETS, is

6   that --

7          MR. MARINUZZI:  Yes, Your Honor.  And I'm going to

8   talk about the changes -- the major changes that we made.  But

9   on ETS, what we've done -- and this is a change from the

10  originally filed disclosure statement -- shortly -- we didn't

11  want to have an issue with best interests with respect to any

12  unsecured creditor of ETS.  And so when we looked at ETS -- and

13  it's not a big driver of value recovery -- the projected assets

14  at ETS are something like twelve million dollars.  And the

15  expected claims at ETS are five million dollars.

16         So naturally, in a liquidation, it becomes an issue.

17  So what we don't want anybody to complain about with respect to

18  our plan is that somehow the way we've grouped the three debtor

19  groups together is impacting their recovery.  So for ETS, we've

20  given them a separate class --

21         THE COURT:  You've carved ETS out?

22         MR. MARINUZZI:  Correct.  They've got their own class.

23  Right.

24         The other trust that's been established is a trust for

25  the beneficiaries of the New Jersey Carpenters class, or the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

28

1    creditors within that class.  And that's 100 million dollars in

2    cash less the costs of noticing out the settlement in the

3    district court.  And then we have a third trust which is the

4    private securities claimants trust.  That trust is not going to

5    receive cash.  That trust will get 235 million-dollars'-worth

6    of distributable units from the liquidating trust.

7         Now, through this combination of trusts, the plan

8    proponents intend to make distributions of value to creditors.

9    Where is that value coming from?  It's coming from cash on

10   hand.  It's coming from cash realized from the monetization of

11   the remaining assets, primarily the FHAVA loans.  And it's

12   coming principally from the AFI contribution, which really is

13   the centerpiece of the global settlement that Mr. Eckstein will

14   talk about in a minute.

15        So Your Honor, I think what I'd like to do is I'd cede

16   the podium to Mr. Eckstein for his opening remarks.  He'll

17   describe the consensus that was achieved through the global

18   settlement.  Then, when he's done, I'd like to describe for the

19   Court the other changes that were made to the plan as it exists

20   today.  And we already touched on one of them.  Then I'd like

21   to generally describe the requirements for approval of the

22   disclosure statement, and then flip the chart and try and do it

23   in a manner that's not painful to indicate what's been

24   resolved, what hasn't been resolved, and to the extent it's

25   been resolved, how it's been resolved.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

29

1    With that, I'll turn it over to Mr. Eckstein.

2    MR. ECKSTEIN:  Your Honor, good morning.  Kenneth

3  Eckstein of Kramer Levin on behalf of the official creditors'

4  committee.

5    As Mr. Marinuzzi has stated, we are very pleased to be

6  able to present to the Court a largely consensual disclosure

7  statement hearing.  We certainly haven't resolved all of the

8  objections.  And I anticipate that there are going to be

9  significant issues that Your Honor may raise that are relevant

10  both to disclosure and to the plan structure generally.  But

11  the fact of the matter is that we stand here today with a great

12  deal of consensus in this case generally and in terms of moving

13  through this significant milestone in the plan process.

14    I think the consensus that we see today really is

15  attributed to the fact that the global settlement really had an

16  unprecedented level of breadth that encompassed a wide array of

17  diverse creditors who only a few months ago were poised to

18  embark upon what Your Honor knows was unfettered litigation

19  that would have plunged this case into years of delay, many,

20  many tens of millions of dollars of additional expense, with no

21  clear path toward a resolution.

22    I'm actually mindful, Your Honor, of an admonition

23  that Mr. Shore and Mr. Uzzi's firms made to the Court and to

24  the parties as recently as the end of April, where they warned

25  all of us that in the absence of a global negotiated resolution

**RESIDENTIAL CAPITAL, LLC, ET AL.**

30

1  of this case, we were going to be plunged into administrative

2  insolvency.  And they warned that a negotiated resolution to

3  this case was necessary in order to avoid an unacceptable

4  alternative for this case.  And I think that that is a

5  noteworthy observation which we certainly endorse, and this is

6  certainly a point where we are completely in line with the

7  views that were expressed by the JSNs that a negotiated

8  resolution --

9          THE COURT:  It may be the only time.

10         MR. ECKSTEIN:  Excuse me?

11         THE COURT:  It may be the only time you're completely

12  in agreement.

13         MR. ECKSTEIN:  It may be.  But I think it's important

14  to note at this stage of the case that a negotiated resolution

15  of the case is the right path.  And I think it is important not

16  to lose sight of that.

17         Before walking through the specific objections, which

18  Mr. Marinuzzi will do, I think it's useful to take a moment to

19  just put the plan and disclosure statement in context.  Your

20  Honor recalls it was less than eighteen months ago when this

21  case was commenced with what was described as essentially a

22  pre-packaged plan, although it had limited consensus among the

23  major creditor groups.  The majority of creditors in this case

24  were not supportive of the 750-million-dollar AFI settlement

25  that was proposed.  The majority of creditors were not

**RESIDENTIAL CAPITAL, LLC, ET AL.**

31

1    supportive of the proposed RMBS settlement.   There was nothing

2    in the plan to resolve four billion dollars of monoline claims.

3    There was no proposed resolution of billions of dollars of

4    securities claims, over two and a half billion of private

5    securities claims, and thirteen billion dollars of class action

6    securities claims.

7         The plan didn't have the support of the more than

8    billion dollars of senior unsecured notes.   And the proposed

9    plan did not address hundreds of millions of dollars of

10   individual and class action borrower claims.

11        The plan structure as originally contemplated would

12   have provided de minimis recovery to unsecured creditors, and

13   that could have only been realized after years of difficult

14   intercreditor and interdebtor litigation, with significant

15   expense and delay.

16        Ultimately, the case moved in a different direction

17   from the initial plan, and the debtor focused on pursuing and

18   closing two significant major asset sales that brought in

19   approximately four and a half billion dollars of proceeds in an

20   unprecedented sale of the mortgage business in the midst of a

21   Chapter 11 case.

22        There were then four major developments in this case

23   that realigned the direction of the case.   First, Your Honor

24   appointed Judge Peck as a mediator to attempt to resolve both

25   estate and third-party claims against Ally, as well as

**RESIDENTIAL CAPITAL, LLC, ET AL.**

32

1   intercreditor disputes.  And we all owe a great deal of

2   gratitude to Judge Peck for the tireless efforts he continues

3   to devote to the case.

4        Second, the debtors appointed Lewis Kruger as their

5   CRO to help facilitate negotiations between the parties.

6   Third, the committee, having investigated claims and causes of

7   action on a parallel path with the examiner's investigation,

8   the committee presented a detailed litigation analysis to Ally

9   that became the framework for extensive negotiations with Ally

10  over a potential resolution of extensive estate and third-party

11  claims that existed and that basically hung over this case.

12  Fourth, the debtors ultimately terminated their pre-petition

13  plan support agreement and focused instead on achieving a

14  global settlement that was in the best interests of and had the

15  support of all of the estates' creditors.

16       Only after many months of lengthy negotiations and

17  numerous mediation sessions among all parties-in-interest in

18  the case, the debtors, the committee, Ally, and the consenting

19  claimants, reached an agreement on the global compromise and

20  settlement that is embodied in the current plan.

21       I know the Court is well aware of the details of the

22  global settlement, so I'm going to only recount it briefly.

23  The centerpiece of the global settlement is a greatly enhanced

24  contribution from Ally, representing 2.1 billion dollars,

25  approximately three times as much as was agreed to at the

1   beginning of these cases, that is being offered in exchange for

2   broad estate and third-party releases that will resolve not

3   only potential claims that reside in the estate, but litigation

4   that has been pending in both state and federal courts around

5   this country for many years and are being asserted by a wide

6   array of different types of creditors against Ally and its

7   subsidiaries.

8          In addition, the settlement consensually resolves a

9   myriad of different claims.  The RMBS claims, the settlement

10  resolves the allowance, priority and allocation of the RMBS

11  claims without the need for a trial in this court.  Unlike the

12  original RMBS settlement, the global settlement resolves

13  allocation issues, resolves the treatment of cure claims, and

14  allocates over 800 million dollars of projected recoveries in a

15  manner that has the support of the RMBS trustees and the RMBS

16  investors.

17         As Your Honor knows, the committee, from the outset of

18  this case, urged that a resolution of these claims, if

19  possible, should be pursued in the context of a global

20  settlement, and that has been accomplished.

21         Monoline claims.  The settlement resolves the

22  allowance, priority and allocation of the monoline claims,

23  eliminating the intercreditor disputes among the monolines and

24  the RMBS trustees, and resolving disputes concerning

25  subordination of monoline claims, the amount of monoline

**RESIDENTIAL CAPITAL, LLC, ET AL.**

34

1   claims, and it also resolves longstanding litigation asserted

2   by the various monolines against AFI, pending, as I said,

3   outside of the bankruptcy court.

4          Both the RMBS claims and the monoline claims

5   represented unprecedented litigation with little for the Court

6   to look to as a basis to resolve the claims.  And absent a

7   global settlement, we believe it is unquestionable that these

8   cases would have entailed difficult resolutions in this court

9   and almost certainly appeals throughout the appellate system,

10  taking many years and uncertainty to resolve.

11         Securities claims.  The plan resolves billions of

12  dollars in securities claims against the debtors and Ally and

13  its subsidiaries, including the New Jersey Carpenters class

14  action that was recently certified in the district court.

15  These are billions of dollars of securities claims.  Again,

16  absent a global settlement, very difficult, lengthy resolutions

17  would have been required.

18         Borrower claims.  Your Honor, we recognized early on

19  that borrowers have very substantial claims in this case.

20  These were generally held by individuals.  And it was going to

21  be important in connection with any resolution of this case to

22  ensure that the plan properly and adequately addressed the

23  needs and the interests of borrowers.

24         Your Honor just a moment ago heard a preliminary

25  proposed settlement of a major borrower class action.  The plan

**RESIDENTIAL CAPITAL, LLC, ET AL.**

35

1    resolves, through a separate trust that provides cash for

2    borrowers, rather than payments over time -- the plan provides

3    for a cash distribution to borrowers, in addition to allowing

4    borrowers to receive their share of 230 million dollars,

5    recently paid by the debtor under the Federal Reserve Board

6    consent decree.  The collection of those two distributions, we

7    believe, provides a very robust resolution of borrower claims

8    in the context of this Chapter 11 case.

9          Senior unsecured notes.  The settlement resolves the

10   claims of the senior unsecured notes; calls for a stay of

11   prosecution of Wilmington Trust's pending motion for it to

12   individually pursue claims that Wilmington Trust has, and on

13   behalf of the ResCap Holding Company, against Ally.

14         The junior secured notes.  Although the JSNs, as we

15   know, do not support the settlement, the settlement

16   substantially improves upon the treatment that was originally

17   provided to the JSNs in the plan that was contemplated at the

18   outset of the case, calls for the payment of the JSN claims in

19   full, and provides the JSNs, if we cannot resolve whatever

20   remaining issues are open, with the opportunity to receive

21   post-petition interest, if the Court determines that the JSNs,

22   in fact, are oversecured.

23         Finally, intercreditor and interdebtor disputes.  The

24   settlement resolves numerous complex intercreditor and

25   interdebtor issues in this case, including the threat of

1    substantive consolidation, the allocation of administrative

2    expenses, interdebtor subrogation and contribution claims, and

3    the treatment of intercompany claims, including over fifteen

4    billion dollars of intercompany claims that were released by

5    the debtors during the years leading up to the filing of this

6    Chapter 11 case.  Again, all of these issues, absent a global

7    settlement, would have required painstaking litigation and

8    resolution by this Court and by appellate courts.

9         Your Honor, I think it's fair to say that no party in

10   this case is fully satisfied with the global settlement.  No

11   party is getting everything that they wanted.  And every party

12   is forgoing substantial recoveries or litigation rights that

13   they believe could have been achieved as an alternative.  And

14   that includes Ally, that has agreed to make a very substantial

15   contribution as an alternative to years of litigation.  That is

16   the essential ingredient of a global settlement.

17        However, the signatories to the plan support agreement

18   and the other parties that have agreed to support the plan

19   since it was entered into, believe that the global settlement

20   reflects a fair and prudent resolution of numerous, complex and

21   uncertain disputes achieved in fewer than eighteen months since

22   the beginning of this case.

23        A few parties have raised narrow and discrete issues

24   regarding their plan treatment.  Only two parties, we believe,

25   have previewed serious or fundamental disagreement with their

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  treatment under the plan:  that being the JSNs and the FHFA.

2  Ironically, in the case of the JSNs, the plan seeks to pay them

3  in full, and the FHFA has really the unique treatment in this

4  case of really being the only constituency not being subject to

5  the proposed third-party release.

6      THE COURT:  I have some questions about that, but I'll

7  wait until we get to their objection.

8      MR. ECKSTEIN:  Your Honor, we recognized that the plan

9  support agreement needed to deal with the parties that were not

10  on board with the settlement, and we think we have done so

11  fairly, and in fact, generously.

12      In connection with the JSNs, in addition to paying

13  their pre-petition claims in full and providing an opportunity

14  for them to litigate the entitlement to post-petition interest,

15  we have now made further clarifications at the request of the

16  JSNs, to confirm that the JSNs can, in fact, prosecute the

17  arguments that they want both with respect to their collateral

18  position, including their entitlement to assert a lien against

19  the AFI settlement, and including their argument that they're

20  entitled to adequate protection claims in connection with the

21  proposed resolution of intercompany claims.

22      We think this is an important clarification, because

23  we believe with these modifications that are being offered in

24  connection with the amended disclosure statement, we eliminate

25  once and for all the suggestion that the plan is being held

**RESIDENTIAL CAPITAL, LLC, ET AL.**

38

1    hostage to the litigation with the JSNs, and we're hopeful that

2    with these clarifications, once the JSNs have had an

3    opportunity to reflect upon the modifications to the disclosure

4    statement, they will reach the conclusion that they need not

5    object to the global settlement and the plan, and can simply

6    focus the remaining litigation on whether or not, or the extent

7    to which they may or may not be oversecured.

8         That may be aspirational, but we have made this change

9    in the hope of eliminating what we think was the last remaining

10   dispute concerning the structure of their treatment. And we

11   think it's an important modification that frankly has been made

12   without a negotiation at this point, without a settlement.

13        The FHFA, for its part, as we say, has been carved out

14   from the third-party release under the plan, and will be free

15   to pursue its claims, if any, against Ally.  The FHFA, early on

16   in this case, dropped the debtor from its litigation,

17   reflecting its focus on the fact that it was seeking to enforce

18   its claims against Ally, and that its claims against ResCap

19   certainly were not a priority of the FHFA during this Chapter

20   11.

21        THE COURT:  But they filed a proof of claim -- proof

22   of claims -- I don't know how many there are --

23        MR. ECKSTEIN:  They did file a proof of claim.  They

24   dropped their -- they dropped ResCap from the litigation.

25        THE COURT:  Well, let me ask it now.  And this may be

**RESIDENTIAL CAPITAL, LLC, ET AL.**

39

1    confirmation issue.  And let me ask -- the first question is:

2    am I correct that if at the time of confirmation the Court

3    concludes that the best interests test is not satisfied as to

4    any defined class of creditors, that the plan provides that the

5    distribution to that class can be increased?  Is that -- I

6    thought I read that in a lot of the paper I read about the

7    disclosure statement.

8            Here's the reason I'm asking the question.  Mr.

9    Marinuzzi raised -- he talked about the three, and now you've

10   added ETS as a separate bucket.  The plan and the disclosure

11   statement describes that the FHFA claim is included as a class

12   in the RFC bucket, and says that they'd get three percent.  The

13   plan projects -- Mr. Marinuzzi pointed to this in the black-

14   line at pages 14 and 15 -- the distribution to RFC of 7.8 to

15   unsecured creditors of RFC -- 7.8 to 10.3 percent.  The plan

16   provides for three percent to FHFA.

17           I don't know in a liquidation analysis what, if

18   anything -- and I know the plan reserves the right to argue

19   that their claim is subordinated -- but I guess somebody's got

20   to make me understand how FHFA -- and I understand they're not

21   signing on to the release of AFI -- how that in itself

22   justifies their getting the smaller distribution from the

23   debtors' estate.

24           MR. ECKSTEIN:  Your Honor, that -- it's an important

25   question.  It's one that we've given a fair amount of thought

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    to.  And you're right to point out that the separate treatment

2    of the FHFA, which in fact now, as Your Honor will hear, is two

3    percent rather than three percent -- but it's designed to match

4    what the FHFA would be entitled to in a liquidation.  And it

5    contemplates a liquidation would not include the AFI

6    settlement.  It would be a Chapter 7 liquidation.

7              THE COURT:  So does that mean, in fact, that you're

8    valuing the release to AFI at somewhere between five and eight

9    cents?

10             MR. ECKSTEIN:  The concept, Your Honor, is that the

11   proposed treatment to the FHFA would give them what would be

12   available to them as a creditor of RFC in the absence of a

13   settlement -- in the absence of the global settlement.  And

14   they would obviously retain their claims against AFI, which

15   they could pursue for whatever recovery they can obtain in

16   litigation or a settlement.

17             And the intent is to comply with the best interests

18   requirements in the Bankruptcy Code.  To the extent Your Honor

19   is not comfortable that it satisfies the best interests

20   standard, the plan can be modified to accommodate that.  But I

21   think the contemplation is that this is designed to be

22   consistent with the best interest test.

23             THE COURT:  It looks to me that you're valuing the

24   release to AFI at somewhere between six and nine cents.  We'll

25   come to -- because when we get to the third-party releases,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

41

1  that's one of the questions I have is what's the -- and I'm not

2  saying you have to for the disclosure statement ascribe a value

3  to the release.  But this was the closest that I came to seeing

4  something that actually put a value on it.  You're saying if --

5  I thought it was three percent, and now you're telling me it's

6  changed to two percent -- if FHFA doesn't sign on to the plan

7  and agree to release AFI, they get 2 cents, and if they do sign

8  on, they stand to get 7.8 to 10.3 cents.

9         MR. ECKSTEIN:  That's essentially right, Your Honor.

10        THE COURT:  And that seems to me to be putting a value

11  on the release.

12        MR. ECKSTEIN:  Your Honor, if you would compare what's

13  available to RFC creditors without the AFI settlement, I think

14  you would end up with a number like two cents.

15        THE COURT:  Well --

16        MR. ECKSTEIN:  We can walk through that.  But that's

17  essentially --

18        THE COURT:  I just want you to know, I've got

19  questions.  And this may not be a question for today.  This may

20  be -- but look -- and I know Mr. Marinuzzi or you wanted to

21  talk about the standards for a disclosure statement.  I'm

22  pretty quite familiar with the standards for a disclosure

23  statement.  And a lot of the responses were, oh, it's a

24  confirmation issue, it's a confirmation issue.

25        And that's all well and good, but if there are

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**42**

1    provisions that are patently unconfirmable, I have the

2    discretion to put a stop to it now.  I hate to go down the road

3    of solicitation, voting, only to find -- to get to the result

4    that I know this plan has things that can't be confirmed.  I'm

5    not saying it does.  Okay?  But that's -- I'm approaching it

6    with that question in mind.

7            There are a number of issues that we'll go through

8    that at least in my mind, raise this question.  Are the

9    provision -- unless altered, there are -- let me lay it out

10    now, because this will come up as we go through with some of

11    the objections.  The PSA conditioned the supporting claimants'

12    continued support on a plan consistent with the terms of the

13    PSA.  The coproponents or the committee and the debtor, but in

14    effect, you've locked yourself in by the provisions of the PSA.

15            And the PSA, I believe, provides that the confirmation

16    order has to be in form and substance satisfactory to the

17    supporting claimants, and which strikes me as you've got my

18    hands completely tied, because there may be things that we're

19    going to talk about today that are all well and good if you

20    want to put off to confirmation, but if I rule in a way that's

21    unfavorable to something you're seeking and then the supporting

22    claimants say, oh, we terminate, I'm really pretty -- this

23    happened -- I have to tell you Mr. Eckstein, and Mr. Marinuzzi,

24    you can talk to your partner Mr. Miller -- this came up in MF

25    Global, and I made clear at the disclosure statement hearing

**RESIDENTIAL CAPITAL, LLC, ET AL.**

43

1   that if the proponents -- the coproponents of the plan took the

2   position that nothing was going to be -- this is the plan, it

3   either gets approved or not, I made clear, then you're telling

4   me that I have to decide today whether a number of issues would

5   make this plan unconfirmable.

6          They backed off.  And ultimately it was provided that

7   the confirmation order would control in the event of any

8   inconsistency between the plan and the confirmation order; and

9   I wasn't restricted on these issues as to what I could do in

10  the confirmation order.

11         But it's a big issue for me, Mr. Eckstein.  I don't

12  want to go down -- I've got a trial I haven't scheduled yet for

13  early October.  We're going to have a confirmation trial and a

14  contested -- unless you're able to resolve -- contested

15  confirmation trial.  There are a whole bunch of significant

16  hurdles, and I don't want to get to the end of that and then I

17  decide that the U.S. Trustee is correct that 1129(a)(4)

18  prevents certain fees from being paid to certain parties, and

19  then I'm told, sorry, Judge, a condition of the PSA and of the

20  continuing support is that the confirmation order has to be in

21  form and in substance satisfactory to the supporting claimants,

22  and they don't support that.  So we hate to tell you, but we

23  don't have a plan.

24         I don't -- we're not going to get to that point, Mr.

25  Eckstein.  And I'm not -- I don't want to kind of leave it

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    hanging in the air and hope that people get reasonable at the

2    end when I reach a ruling on some of these contested issues.    I

3    understand that Ally is putting a difficult issue to the Court

4    over the third-party nondebtor releases.    I understand that is

5    central to the plan and it may rise or fall on what happens

6    with that.    Okay.    But there are a whole lot of other issues

7    along the way here that some of these objections have raised.

8    And if what I'm being told is it's that or nothing, it's that

9    or a supporting claimant can say we terminate, it's no go.

10             MR. ECKSTEIN:    Your Honor, I appreciate your

11    observations and you should appreciate that we anticipated

12    these.    And I hope Your Honor notices that there are only two

13    proponents of the plan, the debtor and the committee.

14             THE COURT:    I know.    But there -- tell me if I'm wrong

15    about this.    I read last night that -- and I thought I saw it

16    in the PSA, there's a provision that a confirmation order has

17    to be in form and substance satisfactory to the supporting

18    claimants.

19             MR. ECKSTEIN:    Your Honor, I'm --

20             THE COURT:    That's taking it out of my control and

21    putting it in the hands of the supporting claimants.

22             MR. ECKSTEIN:    Your Honor, I'd like to go back and

23    actually look again at exactly how the documents are structured

24    on that issue, because we were mindful of the fact that we

25    cannot have every party having an absolute veto on every issue,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

45

1    and that's not what is intended here.

2            THE COURT:  You'll find it.  Maybe I misread.

3            MR. ECKSTEIN:  The parties are not anticipating blue

4    penciling -- wholesale blue penciling.  But they recognize that

5    the Court needs discretion.  Your Honor correctly points out,

6    it's not just the consenting claimants.  Ally also has a very

7    significant stake in how the -- both the plan documents and the

8    order is structured.  And to that extent --

9            THE COURT:  Yes.  That same provision said that Ally

10   had -- it had to be in form and substance satisfactory to Ally.

11   It was a whole list of people that it had to be in form and

12   substance satisfactory to.

13           MR. ECKSTEIN:  But I think we have to read very --

14           THE COURT:  I was left off that, but --

15           MR. ECKSTEIN:  We do need to read very carefully where

16   the consent rights rise and fall, because not every party has

17   consent over every issue, and I don't want Your Honor to

18   believe --

19           THE COURT:  So at some point today, people better

20   point it out --

21           MR. ECKSTEIN:  Let us come back and address that.  But

22   I understand Your Honor's point.  And I think that the intent

23   of the parties is consistent with what Your Honor's goal is,

24   that there is -- there needs to be reasonable flexibility as we

25   go through issues, not to have light switch problems.  At the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

46

1  same time I don't want to --

2        THE COURT:  I don't want to put myself through an

3  ordeal, which it's going to be over the next couple of

4  months -- only to find out that because I've ruled a certain

5  way on some issues that --

6        MR. ECKSTEIN:  Look, Your Honor raised a moment ago --

7        THE COURT:  -- it's a do over, call it off.

8        MR. ECKSTEIN:  Your Honor raised an important issue a

9  moment ago, in connection with the Kessler settlement that

10 we're going to get to in connection with the plan, and that is

11 the judgment reduction provision.  We have judgment reduction

12 provision that is in the plan and is relevant to a variety of

13 settlements, both the private securities claims, the NCUAB

14 settlement.  There are other securities settlements where

15 judgment reduction provisions are important, where you have

16 interests of defendants and plaintiffs that are not necessarily

17 always in synch.  And there are -- I would --

18       THE COURT:  The Denney case that I talked about,

19 doesn't say which methodology has to be used, but you have to

20 say what the methodology is.

21       MR. ECKSTEIN:  The plan right now has a proposed

22 structure.  Generally, I would endorse the view that the

23 earlier we can get clarity on some of these issues, I think for

24 the sake of all parties, the better.  We've tried as best we

25 can to structure it that way.  I'll let Mr. Marinuzzi walk

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    through the points.  I think my --

2            THE COURT:  I didn't want to divert us, but I wanted

3    to make it clear right away, it's an overriding concern in my

4    mind as we go through this.  All well and good.  There -- yes,

5    there are a lot of confirmation issues that don't have to be

6    decided now.  But on some of these, okay, I'm mindful of the

7    fact that there are -- I'm going to raise another one right

8    now, okay?  The scope of the exculpation provision that has

9    been included.  Get it out right now.  Okay?

10            It first off, as drafted, covers pre-petition and

11   post-petition conduct.  And it extends to non-estate

12   fiduciaries.  I have an open mind about considering the law,

13   but it is not particularly favorable for exculpation of non-

14   estate fiduciaries.  And if what I'm going to be told is that

15   that's an absolute condition of a plan; nobody's going to leave

16   it to your -- if you decide against it, Judge, there's no plan,

17   I want to know that now.  Okay?  Because I'm not deciding the

18   issue.

19            I'm happy to put that issue off like a lot of other

20   issues, for confirmation.  But I don't want somebody holding a

21   gun to my head that says, Judge, you either approve that

22   provision or we go back to square one.  Okay?  That's -- there

23   are a whole host of issues like -- I pointed to a few of them,

24   that -- I'm not saying there aren't good arguments that can be

25   made for broad exculpation beyond just estate fiduciaries.  But

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**48**

1    there's a lot of case law -- or there's some case law -- the

2    Second Circuit hasn't ruled on it -- there's some case law from

3    other circuits that does not go your way.

4            And I think, yes, there could be good arguments.  And

5    it would be better decided on a full record, not today.  But do

6    I want to get to the -- where I know there's a serious issue in

7    a case, do I want to get through everything that has to happen

8    over the next couple of months, only to find out that I either

9    approve it or this all is for naught?  I don't want that.

10           MR. ECKSTEIN:  And we'll get to the exculpation

11   issues, which again, I think we're sensitive to.  We understand

12   the issue.  And to the extent --

13           THE COURT:  We'll come --

14           MR. ECKSTEIN:  -- it's worth --

15           THE COURT:  -- I've got a list of --

16           MR. ECKSTEIN:  -- speaking about more fully, I'm sure

17   we'll have an opportunity to do so.

18           THE COURT:  Okay.  All right.

19           MR. ECKSTEIN:  I'll let Mr. Marinuzzi --

20           THE COURT:  Okay, thank you.

21           MR. ECKSTEIN:  -- tackle it first.

22           MR. MARINUZZI:  Your Honor, all the issues the Court

23   highlighted, certainly I'm hoping everybody sitting behind me

24   was taking copious notes, understanding --

25           THE COURT:  I'm sure they were.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

49

1           MR. MARINUZZI:  -- that this is going to be an issue

2   for confirmation, and they need to recognize that it may not

3   all fall the way they want it to fall at the end of the day.  I

4   don't think anybody sitting up here wants the Court or the

5   Court's staff or certainly anybody here, to be working to try

6   to get confirmation of this plan in November, to find out that

7   there's a particular issue that somebody has a concern over

8   that they should have known today might actually not be

9   approved in the plan.

10          So I think it's our job to inform the parties to the

11  PSA that Your Honor raised issues, and people need to be

12  prepared for the outcome that might not be exactly as it's set

13  forth in the plan support agreement.  I think that's the

14  responsible thing for us to do, and we'll do that.

15          THE COURT:  Okay.

16          MR. MARINUZZI:  Your Honor, before I sat down --

17          THE COURT:  All right.  If you're on the phone, you

18  need to either put your -- you need to put your phone on mute.

19  We're hearing rustling of paper and things like that.  So --

20          All right.  Go ahead, Mr. Marinuzzi.

21          MR. MARINUZZI:  Before I sat down we talked about one

22  change to the plan, and that's a change from the version that

23  was filed on July 3rd, and that was the separate classification

24  for ETS.  Mr. Eckstein noted a couple of other ones, but let me

25  just go through them.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

50

1          Your Honor, AFI has agreed to carve out from the

2     third-party release, Fannie Mae with respect to a particular

3     agreement.  Apparently there was a pre-petition agreement with

4     Fannie Mae, and AFI has decided that they're not going to use

5     the carve-out to try to get away from whatever obligations they

6     have under that agreement.  And so that's found in the marked

7     plan on page 100.

8          The plan has also been modified to -- the judgment

9     reduction provision in the plan, it was there when we filed it,

10    but it's been modified.  We obviously have some homework to do

11    to see how the Second Circuit's decision would apply to the

12    judgment reduction provision in the plan, recognizing that the

13    plan provides -- or won't provide for third-party releases.

14    And there are codefendants and plaintiffs that are suing some

15    of the beneficiaries of the third-party releases in courts

16    other than this bankruptcy court.

17          And so a judgment reduction provision that might be

18    available to a nonsettling defendant in Minnesota, might not be

19    the same one that's set forth in New Jersey, for example.  And

20    what we tried to accomplish with the language was to say your

21    litigation in another court outside of bankruptcy, whatever

22    judgment reduction provisions are available to the judge who's

23    presiding over the litigation, they're fully reserved.  So

24    plaintiffs aren't prejudiced.  Defendants aren't prejudiced.

25          Whatever state you're in, that's what you're subject

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    to.  And that's what we tried to capture in the judgment

2    reduction provision in the plan.  We'll look at that case to

3    see how it applies.

4              THE COURT:  Yes.  I'm not sure that it's going to

5    be -- that Denney, which dealt with a specific class action, is

6    going to be controlling or even persuasive on a plan provision

7    on judgment reduction.  I mean, one of the -- but you'll look

8    at it.

9              MR. MARINUZZI:  I think that's right.  And to think --

10             THE COURT:  I don't mean to suggest --

11             MR. MARINUZZI:  -- there's a lot --

12             THE COURT:  -- that it does.

13             MR. MARINUZZI:  -- right.  Okay.

14             THE COURT:  It does as to the specific class action.

15             MR. MARINUZZI:  Right.  Right.

16             Your Honor, another change that's been made to the

17   plan is the -- sorry, Your Honor.  We already covered ETS.

18   We've also changed --

19             THE COURT:  Let me just say --

20             MR. MARINUZZI:  Sure.

21             THE COURT:  -- and I didn't go back to look.  If

22   you've made that change in the plan on judgment reductions, you

23   need to include language -- I think you should include language

24   in the disclosure statement that explains that in different

25   jurisdictions there may be different judgment reduction

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**52**

1  provisions that apply.  It may have a diff -- different

2  consequences that flow from it.  There are at least -- if

3  you've changed it along -- and I didn't -- I must say, I didn't

4  pick up that language change.  You probably need some

5  corresponding language for a disclosure statement, that at

6  least flags it.  And what the -- what that may mean.

7            MR. MARINUZZI:  Okay, Your Honor.  It's -- so it's --

8            THE COURT:  I'm not writing the language for you,

9  but --

10            MR. MARINUZZI:  No, no.

11            THE COURT:  -- since you've raised it as a plan

12  change.

13            MR. MARINUZZI:  We've modified the plan, we've

14  modified the disclosure statement and added additional

15  disclosure, and that disclosure is found on page 156 --

16            THE COURT:  This is of the blackline?

17            MR. MARINUZZI:  -- of the blackline of the disclosure

18  statement.

19            THE COURT:  Okay.  Let me read it.

20            MR. MARINUZZI:  Sure.

21            THE COURT:  Top of the page?

22            MR. MARINUZZI:  Top of the page.

23        (Pause)

24            THE COURT:  Okay.  I see what you -- yeah, and I'll

25  reflect on it, but that may be enough for this purpose, because

**RESIDENTIAL CAPITAL, LLC, ET AL.**

53

1    you're not -- this is not purporting to set the rules.

2              MR. MARINUZZI:  Correct.

3              THE COURT:  Those cases you'll have to --

4              MR. MARINUZZI:  Correct.

5              THE COURT:  -- do it.

6              MR. MARINUZZI:  Your Honor, as Mr. Eckstein noted, the

7    plan has modified the treatment of the FHFA from subordination

8    or three percent to subordination or two percent.  And we

9    recognize that's an issue that we have to think about, and I

10   think Mr. Eckstein's point is that we're looking not

11   necessarily at what other creditors are recovering, but whether

12   payment of two percent satisfies the best interests test.  And

13   the reason it dropped from three to two is because in the

14   revised liquidation analysis for RFC the liquidation recoveries

15   dropped, so we were trying to fall within that range.

16   Obviously we recognize we have a burden at confirmation to make

17   sure we satisfy the Court with the treatment of the FHFA on

18   best interests test, on fair discrimination.  But I wanted to

19   explain to the Court the reason for that drop from three

20   percent to two percent.

21             We've also agreed to modify the plan and disclosure

22   statement for the FHFA to state affirmatively that our

23   determination to subordinate the FHFA's claim will be

24   communicated either through a separate adversary proceeding or

25   by listing them in --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**54**

1          THE COURT:  I saw --

2          MR. MARINUZZI:  -- the claims.

3          THE COURT:  I did look at that last night.

4          MR. MARINUZZI:  Okay.  Another change to the plan,

5    Your Honor -- this is for the Monoline settlements.  We already

6    had settlements with MBIA and FGIC.  Now there are settlements

7    with Ambac and Assured that are getting allowed claims under

8    the plan against the GMAC debtors and the RFC debtors.

9          And finally, Your Honor, there's been a modification

10   to the borrower trust funding mechanic.  And when I said up to

11   57.6 million, the reason it's up to is because we are currently

12   in the process of trying to satisfy and expunge and settle

13   borrower claims that have been asserted against the debtors,

14   class action and individual borrower claims, and sometimes the

15   settlement that's negotiated is an outright cash payment that

16   satisfies, arguably, administrative and pre-petition claims.

17   And so we want to be encouraged to try to settle as many as we

18   can.  If it's the payment of cash, then the amount that's

19   funded into the trust should reflect the fact that some

20   borrower claims, that would otherwise be taking away from trust

21   assets, have been satisfied and the claims withdrawn.

22         THE COURT:  The -- Mr. Rosenbaum stepped out to deal

23   with what I raised earlier, but it raised the question in my

24   mind, the distributions to Kessler class members comes out of

25   the borrower trust; is that right?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

55

1          MR. MARINUZZI:  It does.  It does, Your Honor.

2          THE COURT:  And the settlement allows a claim of,

3    what, 330 million dollars?

4          MR. MARINUZZI:  Correct.

5          THE COURT:  What's the estimated total amount of

6    claims against the borrower trust?

7          MR. MARINUZZI:  Your Honor, I'll have to find it in

8    the disclosure statement, but we factored the amount that the

9    Kessler claim we anticipated would be the allowed amount of the

10   claim, or at least had it earmarked, and factored that into the

11   analysis, adding up the estimates for other borrower claims

12   that we anticipated we'd get to at the end of the day to make

13   sure the numbers fit.  I don't have the exact number, but it

14   wasn't -- the agreement with the Kessler plaintiffs doesn't

15   just change the math on where we started.

16          THE COURT:  And I guess one question I had, when I

17   thought about it, is you essentially -- other than getting

18   maybe some more votes, you've basically assured a vote of that

19   class  in favor by including -- does the 330 million dollar

20   agreed allowed claim of the Kessler class totally overwhelm all

21   other claims in the borrower class such that, assuming you get

22   the requisite number of votes, you're basically guaranteed of

23   getting a vote of the Kessler class in support of the plan?

24          MR. MARINUZZI:  Your Honor --

25          THE COURT:  If so, do I have any reason to think the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

56

1   330 million dollar allowed claim is reasonable?

2          MR. MARINUZZI:  Your Honor, as Mr. Goren points out,

3   there are billions of claims asserted from borrowers that would

4   get to vote, and under the process that's set forth in the

5   order approving the disclosure statement, unless we take the

6   affirmative action of objecting to those claims, as it stands

7   today, even with the 300-plus million dollar claim of the

8   Kessler claimants, they're not going to be enough to carry the

9   class.

10          THE COURT:  Okay.  All right.  That was just --

11          MR. MARINUZZI:  It's an appropriate observation.

12          THE COURT:  I mean, I read the settlement papers, and

13   I saw that you were allowing a 330 million dollar claim.  The

14   total amount distributable to everybody in that class of

15   creditors, not the class -- the Kessler class is the fifty-

16   seven -- well, that's the base amount.

17          MR. MARINUZZI:  The base amount plus a true-up.

18          THE COURT:  Right.  So --

19          MR. MARINUZZI:  Again, Your Honor, at confirmation

20   we're going to have to demonstrate to the Court that the

21   treatment of the borrowers paid to the borrower trust with the

22   funding that's the 57.6, plus or minus, plus the true-up,

23   satisfies the Court that the borrowers are not suffering unfair

24   discrimination.  That's our burden; we understand that.

25          THE COURT:  All right.  Go ahead.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

57

1          MR. MARINUZZI:  Your Honor, so those are the plan

2     changes.  On the disclosure statement, I know Your Honor's

3     familiar with the 1125 standard, reasonable information to

4     allow an investor to make an informed decision.  We think the

5     disclosure statement, as filed, and especially as amended,

6     provides more than adequate information, provides information

7     on the debtors' business operations, the events leading to the

8     Chapter 11 case, the asset sales, the debtors' post-petition

9     activities, the mediation process, the appointment of Mr.

10    Kruger, who is sitting to my right, the global settlement,

11    which Mr. Eckstein just spoke about, the components and

12    compromises -- the components of the compromises embodied in

13    the plan, the anticipated recoveries under the plan, tax

14    consequences of distributions under the plan, and the mechanics

15    for making the distributions.  And so we think there's adequate

16    information for a creditor to an informed judgment about

17    whether to support or reject the plan.

18          So Your Honor, what I'd like to do is flip through the

19    chart --

20          THE COURT:  Here's what I would like you to do.  I'd

21    like you to go through the chart, and then I'd like to hear --

22    you know, deal with an objection, if anybody else wants to be

23    heard on it.  I want to, sort of --

24          MR. MARINUZZI:  Understood.

25          THE COURT:  -- rather than hear you on all of them --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

58

1          MR. MARINUZZI:  No, no.

2          THE COURT:  -- I want to hear them, sort of, one by

3   one, let's hear, and I'll rule.

4          MR. MARINUZZI:  I'm just going to suggest --

5          THE COURT:  Okay?

6          MR. MARINUZZI:  -- that as I got through each

7   objection --

8          THE COURT:  Fine.

9          MR. MARINUZZI:  -- to give a party an opportunity to

10  respond.

11         THE COURT:  Okay.

12         MR. MARINUZZI:  So Your Honor, the first objection,

13  and we did this in order -- we broke it down objection,

14  reservation of rights --

15         THE COURT:  Yes.

16         MR. MARINUZZI:  -- is in the back, and it's done by

17  filing order, docket order.

18         And so the first one is the objection filed by the

19  Nassau County Treasurer.  We've resolved that.

20         MR. MARINUZZI:  Yeah, anybody else want to be heard

21  with respect to the Nassau County Treasurer?

22         All right.  I'm satisfied with your resolution.

23         MR. MARINUZZI:  Thank you.  Your Honor, the next one

24  is docket number 4388.  This is the objection of Wendy Alison

25  Nora.  We were unable to resolve her objection, but we did make

**RESIDENTIAL CAPITAL, LLC, ET AL.**

59

1    material inserts or modifications to the disclosure statement

2    to provide more detail on the borrower trust payments.

3            THE COURT:  I saw the changes.  Is Ms. Nora present or

4    on the phone?  Ms. Nora, are you on the telephone?

5            All right.  The Court has reviewed the objections to

6    the disclosure statement by Wendy Alison Nora.  It's ECF docket

7    4388.  The Court has also looked at the modification to the

8    disclosure statement that the debtors have made.  The

9    objection's overruled.

10           MR. MARINUZZI:  Thank you, Your Honor.  The next

11   objection is the objection of the San Bernardino taxing

12   authority.  We were unable to resolve that objection, but we

13   have provided more specificity and language regarding the

14   treatment of property tax claims and that tax liens remain.

15           THE COURT:  Is counsel for San Bernardino taxing

16   authority present in court or on telephone?

17           MS. ROMERO:  On telephone, Your Honor.  This is Ms.

18   Romero, Martha Romero, representing the San Bernardino County,

19   California, and it's really early out here.

20           THE COURT:  Thank you.  I'll hear your argument now.

21           MS. ROMERO:  Okay.  Well, Your Honor, we filed an

22   objection primarily because the only section that we could find

23   our claims to be addressed in was the priority claim section,

24   and we are not a priority claim.  And so we had numerous

25   conversations with counsel with regard that we're not a

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**60**

1    priority claim; we are a 506(b) claim.

2            And so then late yesterday they assured me too that we

3    would be covered under a class called "other secured claims".

4    But "other secured claims" doesn't mention at all any, really

5    specific treatment or unspecific treatment for tax claims.  And

6    so we provided some language with respect to the payment of tax

7    claims, and it was at a late hour so we haven't been able to

8    resolve that issue.

9            But if we were included in the "other secured claims"

10   section, I told them -- or I stated that the language was sort

11   of insufficient in that it doesn't mention that it also

12   includes tax claims.  But it doesn't also mention anything

13   about retaining our tax liens.  It doesn't mention the interest

14   rate.  It doesn't mention that the claim has to be paid with

15   all applicable costs, fees, and charges, as required under

16   506(b).

17           In addition to that, it doesn't mention any -- the

18   reply brief says that some of our properties will be dealt with

19   in the liquidating trust and may be liquidated and sold, and

20   there's no language that even addresses that at all, about how

21   they will be paid, if they are liquidated and sold.

22           And so that's why we filed our objection.  The "other

23   secured claims", the only place that I found it -- I only got

24   the blackline revision of the disclosure statement, and that's

25   on page 18.  But it's a pretty general paragraph about other

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    secured claims.

2         THE COURT:  Mr. Marinuzzi, do you want to respond?

3         MR. MARINUZZI:  Sure, Your Honor.

4         THE COURT:  I see counsel's point.  The language

5    you've added is dealing with 503, not 506.

6         MR. MARINUZZI:  Your Honor, the definition of "other

7    secured claims" is any -- it's very broad.

8         THE COURT:  Where is it?

9         MR. MARINUZZI:  It's --

10        THE COURT:  What page?

11        MR. MARINUZZI:  It's in the plan, page 22.  "Other

12   secured claim" means any secured claim, other than a junior

13   secured notes claim.

14        THE COURT:  But where in the disclosure statement do

15   you deal with this point?

16        MR. MARINUZZI:  Your Honor, there is additional

17   language on page 121 and 123 --

18        THE COURT:  Of the blackline?

19        MR. MARINUZZI:  -- of the blackline.  And the priority

20   tax session is on page 123.

21        THE COURT:  Right.

22        MR. MARINUZZI:  And what we've done is we've referred

23   to the statute requirements of 1129(a)(9)(C) and Section 511,

24   which sets forth the payment of interest.  And what we tried to

25   do, and also reinstate --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**62**

1     THE COURT:  But I think counsel's point is that this

2  is -- they say they have a 506 claim, not a 503 claim.  So on

3  page 123, you're dealing with priority tax claims, which isn't

4  necessarily the secured tax claims, that it wouldn't -- did you

5  get language from --

6     MR. MARINUZZI:  We did, Your Honor --

7     THE COURT:  -- counsel?

8     MR. MARINUZZI:  -- we got language last night, and the

9  way I read that language suggested that we are required to pay

10  the secured tax claims upon transfer to the trust, simply

11  because the way most tax lien statutes work is on January 1st

12  of the calendar year there exists, automatically, by statute, a

13  perfected secured claim for the value of the property or the

14  value of the taxes to be assessed for the entirety of the year.

15     THE COURT:  Yes.

16     MR. MARINUZZI:  And so if there's an issue that taxes

17  aren't paid, that's one issue, but if there's an issue that the

18  taxes are being paid and this is a real property that's going

19  to be assigned to the trust, the language, as we read it, said

20  we would have to cut a check to the taxing authorities for

21  taxes that weren't past due simply because they were secured

22  claims under state statutes.

23     THE COURT:  Let me see if I can separate this out.

24  I'm sensitive to the point about whether the disclosure

25  statement -- and it may be that there's a plan change that

**RESIDENTIAL CAPITAL, LLC, ET AL.**

63

1    needs to be made for it if it needs -- first off, in other

2    cases I've ruled that the interest rate does not have to be

3    included because you've got property all over the country,

4    there are different tax statute -- you know, different tax

5    rates, different interest rates that apply.  So identifying the

6    applicable interest rate for specific properties is not

7    required in a disclosure statement.  But I am sensitive to the

8    fact that you're dealing with priority tax claims, but this

9    could be a secured tax claim which doesn't fit within 503.  And

10   I think --

11        MR. MARINUZZI:  Okay, Your Honor, but I don't see

12   anything in the plan that doesn't maintain whatever rights the

13   taxing authority has under 506 to assert their claim and any

14   other charges that 506 allows them to claim.

15        THE COURT:  So where is the section in the disclosure

16   statement that deals with secured tax claims?

17        MR. MARINUZZI:  Your Honor, in the disclosure

18   statement on page 123, we've added a sentence that says, "To

19   the extent a holder of an allowed priority tax claim holds a

20   valid lien", which we've defined as a tax lien, "for

21   outstanding and unpaid real property taxes against property of

22   the debtors or the liquidating trust, as applicable, any liens

23   imposed on account of such claim shall remain unimpaired until

24   such allowed priority tax claim is paid in full."  The idea was

25   we don't want to affect their lien --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**64**

1          THE COURT:  Do you have a section of the disclosure

2     statement or the plan --

3          MR. MARINUZZI:  Yeah, it's in the --

4          THE COURT:  -- that deals with secured --

5          MR. MARINUZZI:  I'm reading from -- I'm sorry.

6          THE COURT:  -- that deals with secured tax claims.

7          MR. MARINUZZI:  Not a specific section that deals with

8     secured tax claims, unless Mr. Goren found something.

9          Okay.  So what I'm told is the definition of "priority

10    tax claim" under the plan itself is broad enough to encompass

11    the tax claim that we're discussing.

12         MS. ROMERO:  Your Honor, and that is just not specific

13    enough for us, because it just says "priority tax claim" files

14    under 507(a)(8) or 502(i); it doesn't mention 506.

15         And in addition to what I've previously said, there's

16    also no treatment for the tax claims under administrative

17    claims.  And I proffered them language with respect that

18    usually in big plans I have seen where they have added

19    language, so I offered some language that said that for the

20    administrative tax claims, which I find on 118 of the

21    blackline, is -- well, we just included a phrase that said this

22    also includes secured tax claims, because it doesn't -- again,

23    it's not specific; it just says any and all tax claims that

24    aren't professional fees.

25         And then they give a different way to pay them, three

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**65**

1    different ways to pay them.  But none of the language in the

2    administrative tax claims says that the ongoing taxes, which

3    would be for the 2000 -- at this point, we're only dealing with

4    the 2013-2014 year, which lien attached on January 1, will be

5    paid in the normal and ordinary course of business, you know,

6    timely.

7              And I'm not looking for a specific interest rate, Your

8    Honor, but I am asking that they at least refer to 511 of the

9    Bankruptcy Code, which was added in the reformat.  And they did

10    do some of that language in the priority tax claims, but again,

11    my whole objection has to do with there's not a specific

12    section that deals with secured claims or secured tax claims,

13    and the fact that the section that does deal with other secured

14    claims doesn't even reference any payment or any type of

15    language for a specific claim.

16              THE COURT:  I'm looking for something else, Mr.

17    Marinuzzi.  Bear with me.

18              MR. MARINUZZI:  Of course.

19              MS. ROMERO:  Oh, and one more thing, Your Honor, the

20    tax claim --

21              THE COURT:  Can you just stop for a second?  I'm

22    looking for something.

23              MS. ROMERO:  I'm sorry.

24              THE COURT:  Stop.

25              MS. ROMERO:  I'm sorry, Your Honor.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

66

1          (Pause)

2                    MS. ROMERO:  Hello?

3                    THE COURT:  Yes, I'm still looking for something.  If

4     you're going to be on the phone, you'll wait until I talk to

5     you, okay?

6                    MS. ROMERO:  Oh, Your Honor, I'm sorry.  I didn't know

7     I was talking to the Court.

8          (Pause)

9                    THE COURT:  Mr. Marinuzzi, where is the definition of

10    allowed priority tax claims?

11                   MR. MARINUZZI:  It's not -- it's the --

12                   THE COURT:  It's in the --

13                   MR. MARINUZZI:  -- paragraph -- I'm sorry, page 24,

14    paragraph 212 defines priority tax claim, and it says -- I'm

15    looking at the blackline.  It's page 30 of 121, if you're

16    reading at the top.

17                   THE COURT:  Hold on.  Are you looking at the plan or

18    the disclosure statement?

19                   MR. MARINUZZI:  I'm looking at the plan.  It's the

20    defined --

21                   THE COURT:  Hold on.

22                   MR. MARINUZZI:  -- "priority tax claim".

23                   THE COURT:  Let me find it in the plan.  That

24    definition, I'm looking at paragraph 212 on page 30 of 121,

25    priority tax claim; it doesn't include 506 claims.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MR. MARINUZZI:  It will now, Your Honor.  We'll add

2     506 --

3          THE COURT:  Well --

4          MR. MARINUZZI:  -- (a) or (b).  We'll address it.  We

5     don't have a problem adding that.

6          THE COURT:  I think what we're doing is we're mixing

7     admin and secured claims.  And the language that was proposed

8     yesterday, for example, was with respect to secured real

9     property tax claims included in this section, "It shall be

10    made in the ordinary course of business with all applicable

11    costs, fees, charges, and interest in accordance with 506(b)

12    and 511."

13         MR. MARINUZZI:  We're happy to provide, as part of the

14    priority tax claim definition, 506(a) and (b), which really

15    deals with secured tax claims, if that satisfies the taxing

16    authority.  As far as the definition of "other secured claims",

17    it's broad enough, and it's broad enough to encompass secured

18    tax claims.

19         And the paragraph that the taxing authority would have

20    us include, what it effectively does is it says, here's how you

21    pay secured claims, and then there are secured tax claims, and

22    you're going to pay them the same exact way, because the

23    treatment that they're describing is in fact the treatment that

24    is applicable to other secured claims.  So I'm not sure we're

25    adding anything by -- you know, other than comforting the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

68

1    taxing authority, by specifying that this treatment also

2    applies to secured tax claims.

3            THE COURT:  Are they impaired?

4            MR. MARINUZZI:  No, not -- on their secured claim, no.

5    They're going to get paid in full on their administrative

6    claim.

7            THE COURT:  On the effective date, they're going to be

8    paid in full?

9            MR. MARINUZZI:  On, or as soon as reasonably practical

10   thereafter, they'll get paid in full.

11           Now, on the secured claim, Your Honor, and this is the

12   issue that I raised earlier, the language that the taxing

13   authority was proposing says that if the real property is

14   subject to liquidation, then the claim "shall be paid in full,

15   including all applicable costs, fees, charges", et cetera,

16   under 506(b) and 511.  That's fine, but if we own a property

17   that's subject to foreclosure, we own the property Ocwen is

18   foreclosing, what does that mean?  Does that mean that on the

19   effective date, even though nothing's happened, we have to pay

20   the claim?

21           So rather than add more language that we thought was

22   just going to potentially lead us into problems that nobody is

23   envisioning, we thought the treatment -- and we'll add this

24   506(a) and (b) in the definition of priority tax claim --

25           THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1              MR. MARINUZZI:  -- gave the taxing authority --

2              THE COURT:  All right.  I've heard enough.

3              MR. MARINUZZI:  -- the comfort they needed.

4              THE COURT:  With the change that the co-proponents

5    have agreed to make, the objection is overruled.

6              MR. MARINUZZI:  Thank you, Your Honor.

7              MS. ROMERO:  Your Honor, may I make one more comment?

8              THE COURT:  No, I have ruled.  Once I rule, I don't

9    listen to any further argument.

10             Go ahead, Mr. Marinuzzi.

11             MR. MARINUZZI:  Your Honor, the next objection --

12             MS. ROMERO:  Your Honor, may I be excused and may I

13   get the --

14             THE COURT:  Absolutely.

15             MS. ROMERO:  -- changes for the language?

16             THE COURT:  You can be excused.  Thank you.

17             MS. ROMERO:  And may I get the changes for the

18   language?

19             THE COURT:  We'll send you an e-mail that tells you

20   what we've changed.

21             MS. ROMERO:  Okay.  Thank you.

22             THE COURT:  Thank you.

23             MR. MARINUZZI:  Your Honor, the next objection is the

24   objection filed by Sidney and Yvonne Lewis.  Our position on

25   this is that it's not really a disclosure statement objection.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

70

1          THE COURT:  All right.  Are either of the Lewises

2    present in court or on the telephone?

3          Objection is overruled.

4          MR. MARINUZZI:  Your Honor, the next objection is

5    filed by the NCUAB -- I'm sorry -- yes, the National Credit

6    Union Administration Board, that objection's been resolved.

7          THE COURT:  Let me just -- give me one second, okay?

8    I need to make a note here.  All right.  Let me just read my

9    notes with respect to -- all right, that's satisfactory.

10          MR. MARINUZZI:  Their objection is resolved?

11          THE COURT:  Yeah, I see that.

12          MR. MARINUZZI:  Okay.

13          THE COURT:  You resolved it with them, but I still

14    looked at it, so when I -- you'll go through them, I know

15    you've resolved most of them, and I don't know that I have

16    questions, but --

17          MR. MARINUZZI:  Your Honor, I'm happy to go into --

18          THE COURT:  Okay.  Go ahead, Mr. Marinuzzi.

19          MR. MARINUZZI:  -- as much detail or as little

20    detail --

21          THE COURT:  Go ahead.

22          MR. MARINUZZI:  So the NCUAB --

23          THE COURT:  I don't want to prolong this.  Let's go.

24          MR. MARINUZZI:  Okay.  So can I go on to the next

25    objection?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

71

1          THE COURT:  Yes.

2          MR. MARINUZZI:  Okay.  The next objection was filed by

3    Freddie Mac.  That's also been resolved.

4          THE COURT:  Does anybody from Freddie Mac want to be

5    heard?  Mr. Carney?

6          MR. CARNEY:  Yes, Your Honor.

7          THE COURT:  Come on up to the microphone so we get a

8    clear record.

9          MR. CARNEY:  Michael Carney from McKool Smith for

10   Freddie Mac.

11         Our objection to the disclosure statement has been

12   resolved, and we obviously reserve all of our rights to object

13   to the plan.

14         THE COURT:  All right.  That's satisfactory, Mr.

15   Marinuzzi.

16         MR. MARINUZZI:  Your Honor, the next objection is an

17   objection filed by Impac Funding Corporation and Impac Mortgage

18   Holding, Inc.  We were unable to resolve this objection.  Our

19   position on this is that, one, it's moot, because we filed on

20   Monday, and it's docket number --

21         THE COURT:  You filed a motion to assume --

22         MR. MARINUZZI:  To assume -- right.

23         THE COURT:  -- the contract.  Let me hear from counsel

24   for Impac.

25         MR. KAUFMAN:  Good morning, Your Honor.  Alan Kaufman,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    McKenna Long & Aldridge, on behalf of Impac.

2            We don't believe that the motion moots the objection

3    because, essentially, as long as debtors have the right to make

4    a decision about whether to assign and assume after the

5    confirmation date, we believe that it's contrary to the Code

6    and well established Supreme Court and Second Circuit

7    precedent.  And in --

8            THE COURT:  Have you noticed the motion, Mr.

9    Marinuzzi?  Have you set a hearing date?

10           MR. MARINUZZI:  It's noticed for September 11th, Your

11   Honor.

12           THE COURT:  Okay.

13           MR. KAUFMAN:  Yes, Your Honor.  But even in the motion

14   itself, they specifically say -- and I'm happy to quote, if you

15   like, Your Honor, but they specifically say they reserve the

16   right to reject the contract afterwards, if they don't like how

17   the cure proceeding comes out.  And we believe that that's just

18   not permissible, because that will likely occur after the

19   confirmation date.  And they have to make the decision about

20   whether to -- irrevocably make the decision of whether to --

21           THE COURT:  Well, you'll be able -- they filed a

22   motion to assume.  You will be able to file an objection, if

23   that's what you choose to do.  If you believe the terms on

24   which they propose to assume are not permissible, as a matter

25   of law, I will hear that on your motion -- you know, on the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

73

1    objection to the motion to assume.  So for the disclosure

2    statement purposes, the objection's overruled.

3            MR. KAUFMAN:  As long as we can reserve our rights

4    to --

5            THE COURT:  You can do what you want.  I mean, I --

6            MR. KAUFMAN:  Thank you, Your Honor.

7            THE COURT:  When I say you can do what you want, I'll

8    rule as appropriate, when it comes before me, but they've --

9    you complained that they hadn't -- they were waiting too long

10   to assume or reject.  They've filed the motion, it's scheduled

11   for a hearing; you'll have an opportunity to file an

12   opposition.  Try and first work it out with them, but I'll hear

13   it when the motion comes on.

14           MR. KAUFMAN:  Happy to, Your Honor.  I don't --

15           THE COURT:  Okay.  Next matter.

16           MR. MARINUZZI:  Your Honor, the next objection was

17   filed by the PBGC.  That's been resolved.

18           THE COURT:  All right.  Anybody from PBGC want to be

19   heard?

20           MR. MURRELL:  Good morning, Your Honor.  Vicente

21   Matias Murrell on behalf of the Pension Benefit Guaranty

22   Corporation.

23           Your Honor, the objection PBGC filed is resolved, and

24   debtors said the language will be in the disclosure statement

25   and we expect it to be in the confirmation order as well.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**74**

1    Thank you, Your Honor.

2          THE COURT:  Thank you very much.  All right, that's

3    satisfactory, Mr. Marinuzzi.  Go on.

4          MR. MARINUZZI:  Thank you, Your Honor.  The next

5    objection was filed by the FHFA, and I'm happy to report that

6    the disclosure statement objection has been resolved.

7          THE COURT:  All right.  Anybody from FHFA wish to be

8    heard?

9          Okay.

10         MR. MARINUZZI:  Your Honor, that brings us to --

11         THE COURT:  Well, hold on.  Let me --

12         MR. MARINUZZI:  I'm sorry.

13         THE COURT:  Let me just see.  I raised my questions

14   earlier with respect to FHFA.  I expect there's going to be a

15   confirmation issue.  I raised one question about best

16   interests.  Let me stop there.  It's satisfactory for the

17   disclosure statement.

18         MR. MARINUZZI:  Thank you, Your Honor.  That brings us

19   to Paul Papas.  We don't believe this is an objection to the

20   disclosure statement.

21         THE COURT:  Is Mr. Papas present in court or on the

22   telephone?

23         Overruled.

24         MR. MARINUZZI:  Your Honor, the next objection was

25   filed by RESPA plaintiffs.  We believe that's been resolved.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

75

1    Am I correct?

2          THE COURT:  Still showing as unresolved on my chart,

3    but --

4          MR. MARINUZZI:  Sorry.

5          THE COURT:  Mr. Etkin?

6          MR. ETKIN:  Yes, Your Honor, good morning.  Michael

7    Etkin, Lowenstein Sandler.

8          The disclosure objection has been resolved through the

9    additional disclosure.

10          I would note that we would probably like a little more

11    time than ten days prior to the voting deadline to receive the

12    borrower claimant's trust agreement, considering its

13    significance in the case, but I'll leave that to Your Honor.

14          THE COURT:  Mr. Marinuzzi?  I'm not sure what that

15    means, Mr. Etkin, but --

16          MR. ETKIN:  Oh --

17          THE COURT:  No, I understand what it means, but I --

18          MR. ETKIN:  Oh, I understand.  I understand your

19    point, Your Honor.  I want to just make the point, Your Honor,

20    but I don't want to hold up the hearing --

21          THE COURT:  Okay.

22          MR. ETKIN:  -- with respect to that issue.

23          THE COURT:  All right.

24          MR. ETKIN:  That's all.

25          THE COURT:  Mr. Marinuzzi?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1        MR. MARINUZZI:  Your Honor, we will, collectively, do

2   whatever we can to get copies of the draft --

3        THE COURT:  Mr. Etkin, before you go away, has Judge

4   Baer set a hearing?

5        MR. ETKIN:  Your Honor, we have a final hearing on

6   October 7th.  A preliminary approval order has been entered.

7        THE COURT:  That I saw.

8        MR. ETKIN:  Right.

9        THE COURT:  I saw that.  So October 7th is the final

10  hearing?

11       MR. ETKIN:  October 7th.

12       THE COURT:  Thank you very much, Mr. Etkin.

13       MR. ETKIN:  Thank you, Your Honor.

14       MR. MARINUZZI:  Your Honor, we'll do what we can to

15  share drafts of the documents with Mr. Etkin.

16       THE COURT:  Okay.

17       MR. MARINUZZI:  We want to make him comfortable before

18  we file them.

19       THE COURT:  That's fine.

20       MR. MARINUZZI:  That brings us, Your Honor, to the ad

21  hoc group of junior secured noteholders, and we've been able to

22  resolve all of the objections except with respect to one point,

23  and that point we tried to address by providing additional

24  disclosures.  What happens if Your Honor rules that they're

25  entitled to post-petition interests?  How does it blow up or

**RESIDENTIAL CAPITAL, LLC, ET AL.**

77

1  not blow up the plan?

2          And so the point we tried to make in the disclosure

3  statement, the point Mr. Eckstein made for the Court earlier,

4  is what we've done in the plan and what we've sought to clarify

5  in the plan is Your Honor could find they're entitled to post-

6  petition interests, that the value of their collateral -- they

7  have certain items that are part of their collateral that the

8  committee considers not to be part of their collateral -- and

9  Your Honor could find that there's a diminution in value of

10 their aggregate collateral position caused by, for example, the

11 intercompany settlement, which is what they're focused on.  To

12 the extent Your Honor does find so, that does not blow up the

13 plan.  And we tried to clarify, as best as we could, but I

14 understand it's not to the satisfaction of the JSNs, so --

15          THE COURT:  I see Mr. Uzzi there, so let me hear from

16 him.

17          MR. MARINUZZI:  Okay.

18          MR. UZZI:  Good morning, Your Honor.  Gerard Uzzi of

19 Milbank Tweed Hadley & McCloy on behalf of --

20          THE COURT:  Just pull the microphone a little closer.

21          MR. UZZI:  Oh, sorry.  Gerard Uzzi of Milbank Tweed

22 Hadley & McCloy on behalf of ad hoc group.

23          Your Honor, I can, I think, get through this fairly

24 briefly.  But before, Your Honor, I just think it's worth

25 mentioning, giving an update on the mediation.  It was set to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

78

1   expire, if you remember, last Friday.  Through an agreement of

2   the parties we've extended it at least through August 30th.  So

3   we're at least continuing to talk, Your Honor.

4            We are resolved, but some of the resolutions, we've

5   agreed, require a little bit of a discussion on the record,

6   Your Honor --

7            THE COURT:  Go ahead.

8            MR. UZZI:  -- with respect to the resolution.  As an

9   initial matter, Your Honor, I trust you've read our objections,

10  so I'll --

11           THE COURT:  I have.

12           MR. UZZI:  Okay.  I note that in there we've provided

13  some comprehensive riders as proposed additional disclosures.

14  While the debtors did not accept our riders, they did include

15  some disclosures, which we appreciate.  But they didn't go all

16  the way, so to speak, with respect to our disclosures.

17  Nonetheless, except with respect to the one issue relating to

18  what happens if the JSN's entitlement to post-petition interest

19  is decided on a ground that is inconsistent with the global

20  settlement --

21           THE COURT:  Can I ask you -- before you go on, are the

22  JSNs seeking default interest or --

23           MR. UZZI:  We are seeking --

24           THE COURT:  -- contract rate?

25           MR. UZZI:  -- everything we're entitled to under the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    contract, which would include default interest and fees, Your

2    Honor.

3            THE COURT:  Yeah, I think, Mr. Marinuzzi, none of

4    what -- I didn't see anything in the disclosure statement that

5    made that point clear, that they're seeking default interest.

6    I thought that was the case.  Maybe I missed it.

7            MR. MARINUZZI:  Your Honor, I recall it being in

8    there.  I can't point to the specific provision in the

9    disclosure statement, but there is a discussion --

10           THE COURT:  Okay.

11           MR. MARINUZZI:  -- about what they're asking for.

12           THE COURT:  As long as it's there.

13           I'm sorry, I didn't mean to -- it was something I --

14   go ahead, Mr. Uzzi.

15           MR. UZZI:  It's quite all right, Your Honor.  There's

16   the plan confirmability issue, which Your Honor touched on a

17   little bit, and I'm not sure with respect to our issues, but I

18   think it's related.  I'll address that separately.  With

19   respect to all the other disclosure issues, we're prepared not

20   to press them, provided that --

21           THE COURT:  But I did think it was interesting you

22   were complaining about the AFI 2.1 billion dollar contribution

23   and how it was arrived, how it would be allocated, but you

24   signed up for a pre-petition plan support agreement that had a

25   750 million dollar contribution.  So I thought you were -- it

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    was somewhat ironic that the JSNs were raising issues about the

2    2.1 billion dollar.  You didn't seem to be the party with the

3    most persuasive voice on the issue of the AFI contribution.

4    Let me just put it that way.

5          MR. UZZI:  Well, fair enough, Your Honor.  I mean, I

6    think that it's important to recognize that with respect to the

7    pre-petition agreement, it was signed by a minority of junior

8    secured noteholders.  The junior secured noteholders --

9          THE COURT:  We don't need to review that.

10         MR. UZZI:  All right, Your Honor.

11         THE COURT:  It was just something that when I read

12   your objections, and I thought back over the life of this

13   case -- but just, let's argue what we have before us.

14         MR. UZZI:  That's fair, Your Honor.  I mean, I do

15   think it's worth mentioning, although there's been this mantra

16   that they've improved our treatment, relative to the first PSA,

17   we take issue with it.  I'm not going to take Your Honor's

18   time, but I just want to make sure we take -- I do say we take

19   issue with that characterization.

20         And related to that, Your Honor, we're not going to

21   press our disclosure objections, but provided that, and with

22   the understanding that our failure to press our objections now

23   is not used against us in the ongoing and future litigation.

24   We have that agreement with the plan proponents with respect to

25   that understanding.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

81

1          Your Honor, with respect to the riders that we

2     submitted, even though we have not pressed our objection, to

3     the extent the Court hasn't reviewed them, I'd invite the Court

4     to do so.

5          THE COURT:  I read your papers.

6          MR. UZZI:  All right.  Okay, Your Honor.

7          And so let me return to what I refer to as the

8     confirmability issue, Your Honor.  And just I think that -- let

9     me say, I think this is resolved, actually.  And the statements

10    by Mr. Eckstein on the record earlier today, I think, hopefully

11    puts this to bed with respect to us.

12          With respect to your comments earlier, Your Honor --

13    I'm sorry.  With respect to -- you were asking about the

14    confirmation order -- oh, here it is.  I suspect what you were

15    looking at is Article 10 of the plan; that's the conditions to

16    confirmation.

17          And for instance, 10(A)(c) is, "The confirmation order

18    shall be reasonably acceptable to the plan proponents, Ally,

19    and each of the consenting claimants."  The fact that it's

20    "reasonably", I guess, is comforting, to some extent, but

21    that's really Your Honor's issue.

22          There's another provision, "No plan modifications have

23    altered distributions to be made under the plan shall have

24    occurred without the consent of the plan proponents, Ally, and

25    each of the consenting claimants."  That has no materiality

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    qualifier in it, so it goes up further than, I think, what the

2    Code would allow the plan proponents to do.

3            And the last one is G, Court approval of the third-

4    party releases, the debtor releases, and exculpation provisions

5    in the plan without any modification thereto.  So I think

6    that's probably what Your -- where Your Honor maybe got

7    concerned.

8            THE COURT:  Thank you, Mr. Uzzi.

9            MR. UZZI:  Now, Your Honor, with respect to us, as

10   Your Honor is probably painfully aware, I've been struggling

11   with this issue for months now.

12           THE COURT:  I agree with most of what you just said.

13           MR. UZZI:  Okay, Your Honor.

14           THE COURT:  The painful part.

15           MR. UZZI:  It's been painful for me, too, Your Honor,

16   to the extent that counts for anything.  Maybe I have not done

17   a good job in articulating this in the past, but the reason why

18   I think this is important to us and should be important to

19   everybody is that we need to know exactly what we're

20   litigating.  And it's our hope -- and maybe we don't get

21   there -- but it's our hope when we know exactly what we're

22   litigating maybe we can narrow the litigation a little bit.

23           THE COURT:  That's why I had for Phase I trial, had

24   the parties agree on a statement of the issues for the trial,

25   and we're going to do the same thing with respect to the issues

**RESIDENTIAL CAPITAL, LLC, ET AL.**

83

1    that affect the JSNs, with respect to Phase II assuming it's

2    done confirmation or separately.  I wanted the clarity of what

3    I was being asked to decide.  So you've agreed with respect to

4    the Phase I trial at this point, and remains to be done with

5    respect further on.

6         The one -- and I don't know whether this is something

7    that should have been clear to me before or not, when I read

8    the proposed additions to the disclosure statement -- and maybe

9    this is just an alternative argument, I don't know -- but what

10   it, maybe for the first time, drove home to me was, it had

11   seemed to me that your -- unless you were found to be

12   oversecured in Phase I, if it got to Phase II, confirmation,

13   and the issue became the global settlement of the intercompany

14   claims valuing them at zero, that I had to reject that

15   settlement to reach your argument whether you were oversecured

16   based on those.  But what the additional language drove home,

17   maybe it's just as an alternative argument, but your argument

18   is that if the settlement of the intercompany claims valuing it

19   zero is approved, your argument is that you're entitled to

20   adequate protection because of the diminution -- by the

21   diminution in value, you say that you have an interest in those

22   intercompany claims.  That maybe -- maybe that should have been

23   obvious to me before, but it wasn't.  But when I read the

24   additional language, that was sort of driven -- that was the

25   first time I had focused on that argument.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**84**

1         MR. UZZI:  Well, Your Honor, that is part of it.  I

2    would say even with the initial -- it has never been our

3    position that you need to reject the global settlement to

4    determine that we're oversecured.  And even with respect to the

5    intercompany claims, it has been our position, which until now,

6    and maybe even now may still be rejected by the plan

7    proponents, that if you determine that there were value -- I

8    want to do it kind of, let's say conceptually --

9         THE COURT:  Um-hum.

10        MR. UZZI:  -- rather than getting caught in the

11   legalese because that's the problem.  I'm concerned about a

12   constant footfall in front of me.  If you determine that there

13   were value in the intercompany claims, and that's what made us

14   oversecured, we would be entitled to the post-petition

15   interest, and the plan would still be confirmable.  We have

16   never gotten that representation from the plan proponents and

17   we still don't have that representation from the plan

18   proponents.  We've ---

19        THE COURT:  Well, I understand, because they say that

20   you have no property interests, collateral interests in the

21   intercompany claim per se.  And I think either you or Mr. Shore

22   acknowledged that.  You don't have any pledge of intercompany

23   debt, for example.

24        MR. UZZI:  No, Your Honor, we have a security interest

25   through a security agreement that gives us the intercompany

**RESIDENTIAL CAPITAL, LLC, ET AL.**

85

1   claims.  There's no note that has pledged us, a physical note.

2   But we have a security interest in -- either directly in

3   material intercompany claims or -- to be clear, we don't have a

4   security interest in every intercompany claim, but in certain

5   intercompany claims we do, and others we have a pledge of the

6   equity of the debtors that --

7         THE COURT:  That's what I understood you had.  You had

8   a pledge of the equity.  But maybe we should do this --

9         MR. UZZI:  We have both.

10        THE COURT:  Let's save this --

11        MR. UZZI:  Oh, okay, Your Honor.

12        THE COURT:  -- discussion --

13        MR. UZZI:  But --

14        THE COURT:  -- for when we talk some more about the

15  UMB case, but we'll focus now on the disclosure statement

16  issues.

17        MR. UZZI:  What we have struggled with, Your Honor, is

18  that why should it matter if you don't otherwise upset the

19  plan?  And for instance, if the Phase I trial, you were to

20  determine we're oversecured, and it moots everything else

21  out -- you were to determine we're oversecured because there's

22  even more value in the going concern than what we're saying,

23  the plan is confirmable, everybody gets what they get.  If you

24  were to determine we're oversecured, we don't get there in

25  Phase I, but you would determine because the intercompany

**RESIDENTIAL CAPITAL, LLC, ET AL.**

86

1   claims had value, and you gave us that value, through whatever

2   mechanism you gave us that value, I don't --

3          THE COURT:  You just want your money.

4          MR. UZZI:  I just want my money and I don't believe

5   that they should be able to then pull the plan or suggest it

6   Your Honor, sorry, exactly what you were saying early on, the

7   plan's not confirmable.

8          THE COURT:  I don't think they said that -- at least

9   what I've underst -- the approval of the global settlement,

10  including valuing of intercompany claims at zero is an integral

11  part of the plan.  I've understood that since I approved the

12  PSA.  Nothing -- they've never altered anything they've said

13  about that.  But it may be, just hypothetically, that you get

14  your money and they get the global settlement approved if, for

15  example, you get the benefit of the value that was there but

16  they've settled it at zero, so the global settlement gets

17  approved and you wind up oversecured.

18         MR. UZZI:  Your Honor, I've been asking for that --

19         THE COURT:  Wishful thinking, I'm --

20         MR. UZZI:  I've been asking for that for months.

21         THE COURT:  Well --

22         MR. UZZI:  And so -- but I think --

23         THE COURT:  But I'm the one who's got to be decide it.

24  I mean, you can ask them.  They can say no, they can say yes,

25  they can say we're not going to answer your question, but

**RESIDENTIAL CAPITAL, LLC, ET AL.**

87

1  ultimately that's an issue I'm going to have to decide.

2          MR. UZZI:  I'm not -- hopefully Your Honor will rule

3  in our favor.  I'm not asking Your Honor today to rule in our

4  favor.  I'm just trying to figure out what we're fighting

5  about, and more importantly --

6          THE COURT:  Well, put it this way.  I saw what you

7  proposed.

8          MR. UZZI:  Yeah.

9          THE COURT:  They didn't accept the language.  They

10  didn't accept -- they drafted some other language.  My reaction

11  is for disclosure statement purposes, this language is adequate

12  disclosure.  The world is on notice, Mr. Uzzi.  You only have

13  to come into this court two or three days a week to find out

14  all the issues that you're fighting about.  Nobody -- I mean,

15  there's plenty of language in the disclosure statement, and

16  just show up in this courtroom again tomorrow and everybody

17  will know what you're fighting about.

18          MR. UZZI:  And with respect to the disclosure over the

19  disputes I agree completely.  The reason why I felt the need to

20  have this further discussion with Your Honor is be -- is really

21  just for one reason.  And if you were to look at the disclosure

22  language that we proposed and compared it the disclosure

23  language that they proposed, and I have a blackline if it would

24  help --

25          THE COURT:  I don't --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

88

1      MR. UZZI:  I can do it without it.  We had said the

2  plan -- the proposed language was the plan provides that if the

3  bankruptcy court ultimately determines "for any reason that

4  we're oversecured" and then it goes on.  They struck the words

5  "for any reason".  We also gave a non --

6      THE COURT:  How does it change the substance though?

7  I mean, if I decide you're oversecured, you're oversecured.

8      MR. UZZI:  Well, Your Honor, I'm bound by the

9  mediation order.  I know what they have said.  There's a reason

10  why I'm up here making this point.  But I think I can get

11  there, Your Honor, just -- I read -- I'm not comforted by their

12  disclosure statement language.  However, I'm comforted by this

13  colloquy and I'm comforted by the statements of Mr. Eckstein on

14  the record earlier today.  But most importantly, I'm actually

15  comforted by their reply brief.  And I won't read the specific

16  language into record in there, but I think they now in their

17  reply brief, at least, have said if we are oversecured for any

18  reason -- if Your Honor determines we are oversecured for any

19  reason, the plan is still going to be confirmable.  And based

20  upon their reply brief I don't need --

21      THE COURT:  I read that in the omnibus reply as well.

22  I saw that.  I never -- maybe I was in the dark here, but I

23  never thought their position was to the contrary.  I raised

24  this point very early on at the time of the PSA approval, I

25  raised it with Mr. Eckstein, I believe.  I didn't want to get

**RESIDENTIAL CAPITAL, LLC, ET AL.**

89

1    in the position of approving a PSA that provided for plan

2    treatment for you pre-petition and principal but no post-

3    petition interest.  I raised this point very expressly, there's

4    got to be a transcript of it.  I didn't want to find that if we

5    get to the end of the day and you litigate this -- and the

6    issue is not resolved by settlement, we get to the end of the

7    day and I determine that you are oversecured and entitled to

8    post-petition interest, I didn't want to suddenly find that

9    this whole thing is blown up, I've gone through this empty

10   exercise.  Mr. Eckstein very clearly told me that I was -- that

11   that was correct and it's been clarified several times.  Mr.

12   Marinuzzi, I don't know, Mr. Lee, who is not here today, but

13   that's a point that's been clarified quite often.  We'll get to

14   the end of the day; if you don't settle it, I will decide it.

15   And if you're oversecured, they've said quite clearly, you'll

16   get your whatever you're entitled to.  Mr. Marinuzzi, you

17   disagree with that?

18           MR. MARINUZZI:  Your Honor, we don't disagree and

19   we've provided two scenarios:  they're either oversecured or

20   they've got an adequate protection --

21           THE COURT:  Well, I don't need more than that.  Do you

22   disagree, Mr. Eckstein?

23           MR. ECKSTEIN:  Your Honor, I think I have said

24   multiple times --

25           THE COURT:  Multiple times.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

**90**

1          MR. ECKSTEIN:  -- we do not disagree --

2          THE COURT:  Yeah, okay.

3          MR. ECKSTEIN:  -- and we've tried articulate --

4          THE COURT:  Okay.

5          MR. ECKSTEIN:  -- frankly, with a lot of precision --

6          THE COURT:  Yeah.

7          MR. ECKSTEIN:  -- the different --

8          THE COURT:  Okay.

9          MR. ECKSTEIN:  -- mechanisms --

10          THE COURT:  Enough.

11          MR. ECKSTEIN:  -- or scenarios and I think we keep

12   clarifying --

13          THE COURT:  Okay.  I --

14          MR. ECKSTEIN:  -- the mech -- but the fundamental

15   question Your Honor has raised early on stands.

16          THE COURT:  Yeah, okay.

17          MR. ECKSTEIN:  If the Court ultimately determines that

18   they're entitled to they're post-petition interest the plan

19   provides, they will get it.

20          THE COURT:  Okay.  So you've heard once again, Mr.

21   Uzzi, from the coproponents that if you're entitled to it,

22   you'll get it.

23          MR. UZZI:  Your Honor --

24          THE COURT:  The issue I have -- I guess I've got to

25   put a stop to this -- under 1125, does the disclosure statement

**RESIDENTIAL CAPITAL, LLC, ET AL.**

91

1   as proposed with the amendments they made, is it adequate

2   information.

3         MR. UZZI:  Your Honor, we have no further objection

4   from our standpoint, but we defer to the Court.

5         THE COURT:  Let me just -- so the record clear.

6   You're withdrawing your objections to the disclosure statement

7   as amended.  There was other language you wanted; you didn't

8   get it.  But do I understand correctly, you're just withdrawing

9   your objection -- you're reserving all of your rights --

10         MR. UZZI:  Yes.

11         THE COURT:  -- but you're just -- you're withdrawing

12   your objection to the disclosure statement.

13         MR. UZZI:  With the proviso that I read that the

14   withdrawal can't be used against us later.  Yes, Your Honor.

15         THE COURT:  I'm not going to hold it against you.

16         MR. UZZI:  No, I know, Your Honor, and I apologize, to

17   the extent the --

18         THE COURT:  Don't apologize.  Okay.

19         MR. UZZI:  And --

20         THE COURT:  The objection's been withdrawn, Mr.

21   Marinuzzi.  Let's -- Mr. Uzzi?

22         MR. UZZI:  I just wanted to thank Your Honor for

23   indulging me in getting through this.  This has been an

24   important issue for us.

25         THE COURT:  All right, thank you.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MR. MARINUZZI:  Your Honor, that brings us to the

2     objection filed by Amherst Advisory Management, which I

3     understand's been resolved.

4          THE COURT:  Right, that's satisfactory.  Go ahead.

5          MR. WEISSER:  Your Honor --

6          THE COURT:  Yup, go ahead.

7          MR. WEISSER:  May I speak?

8          THE COURT:  Yeah.  Come on up, please.

9          MR. WEISSER:  Thank you very much.

10         Good morning, sir.  Josh Weisser, from Gibson Dunn &

11    Crutcher on behalf of Amherst.  Mr. Marinuzzi's correct, the

12    status of our objection is withdrawn.  It's withdrawn.  We've

13    reserved all rights to continue our objection at confirmation.

14         Obviously my client clearly has some issues regarding

15    the RMBS settlement that's incorporated into the global

16    settlement and the fact that it is mandatory in the sense that

17    their trust is bound.  We maintain the position that the trust

18    should be permitted to opt out and we've taken steps to the

19    extent possible to do so.  We intend to continue prosecuting

20    that.  I believe -- only because I know that often people talk

21    about unfettered litigation, Mr. Eckstein brought it up, and I

22    know that that's a concern for the case -- I would like to

23    point out, Your Honor, I believe we are the only trust, to my

24    knowledge that -- or we're the only holder, I should say -- to

25    my knowledge, that has taken steps to both opt out of the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

93

1    support agreement and attempt to opt out of the settlement, so

2    I don't believe that that would apply to our trust if we're

3    allowed to opt out of the settlement.  And that's pretty much

4    all we have to say.

5            THE COURT:  I know what the position of the

6    coproponents is and I know what your position is, and it's

7    reserved for another day.

8            MR. WEISSER:  Thank you very much, sir.

9            THE COURT:  All right.  Mr. Marinuzzi?

10           MR. GARRITY:  Good morning, Your Honor.  Jim Garrity,

11   from Morgan Lewis on behalf of Deutsche Bank.  We agree all of

12   that is set in reserve with regard to Amherst to another day.

13   We want to make it clear, Your Honor, that with regard to the

14   direction and the indemnity, it's our view that it does not

15   give Amherst the right to act on behalf of the trust.  But

16   again, confirmation issue for a later date.  Thank you very

17   much.

18           THE COURT:  Thank you very much, Mr. Garrity.

19           Mr. Marinuzzi.

20           MR. MARINUZZI:  Your Honor, that brings us to the

21   objection filed by UMB Bank, which has been resolved.

22           THE COURT:  Anybody from UMB want to be heard?  Don't

23   need to be.  Okay.

24           MR. MARINUZZI:  Which -- that brings us to the

25   objection filed by the U.S. Trustee's office, which has also

**RESIDENTIAL CAPITAL, LLC, ET AL.**

94

1   been resolved.

2          THE COURT:  So, this -- and I know it's resolved for

3   confirmation, I raised this issue earlier.  The U.S. Trustee

4   raised the issue about exculpation.  It's an issue; it is

5   clearly an issue.  It's an issue on at least two fronts.  One

6   as drafted -- as re-drafted, because originally it only covered

7   post-petition conduct.  Now it's been pre-petition, as well.

8   So, it's an issue for that reason.

9          And secondly it's an issue with respect to exculpation

10  against nonstate fiduciaries, which includes the settling

11  claimants and Ally, I'm not sure does anything differently than

12  the third-party nondebtor release would do, so I'm not going to

13  dwell on it there.  But -- and I will -- I do want to hear from

14  the coproponents with -- I expressed this concern earlier, I

15  don't want to go all the way down the road and find out that we

16  have full briefing of this issue, I hear it and I decide it in

17  a way that your side doesn't like, that I'm told sorry, it was

18  a condition to the plan, and no plan.  That's unacceptable.

19         MR. MARINUZZI:  Your Honor, that's a fair point, and

20  we're mindful of decisions.  And we know this issue came up,

21  and I believe in MF Global, regarding post-petition exculpation

22  for nonstate professionals.  We were talking about pre-

23  petition as well.  We see it as an issue, and we recognize for

24  confirmation that, obviously, Your Honor will decide how Your

25  Honor decides, but we need to be prepared with the correct

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  legal basis and factual record to support those exculpation

2  requests.

3         I think when you look at -- simply focus on post-

4  petition for this second, there are a lot of folks that

5  participated in getting this deal done that really made a deal

6  in good faith.  Obviously it can be second-guessed ten ways

7  'til Sunday, did so without the benefit of the examiner's

8  report being public, and that turned out to be a good thing.

9  But it's very easy, especially for the number of independent

10  fiduciaries that participate in these discussions, for someone

11  who they serve in a fiduciary capacity for to say you did

12  something wrong.  And under those circumstances -- and I don't

13  want to argue confirmation; I think it's perfectly appropriate

14  for all of those parties that participated in getting this deal

15  done that allowed us to get here without burning every dollar

16  that we had in litigation -- to expect that they'll be

17  exculpated for their actions.

18         THE COURT:  Look, among -- there's no Second Circuit

19  binding authority on it, okay?  Judge Walrath in Washington

20  Mutual 442 B.R. 314 (Bankr. D. Del. 2011).  In RE: Quincy

21  Medical Center 2011 W.L. 5592907 (Bankr. D. Mass.), November

22  16th 2011.  In RE: Coram Healthcare Corp. 315 B.R. 321, 337

23  (Bankr. D. Del. 2001).  Somebody better come to me with

24  authority that -- look, I understand the argument why, and I'm

25  not saying it's inappropriate.  People worked very hard through

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    the mediation and the PSA and since and they don't want to turn

2    around and find themselves getting sued.  I fully appreciate

3    that, but it's an issue.  Okay, and I'll just come back to --

4    put it this way:  I'm not signing an order approving the

5    disclosure statement until I hear from the coproponents that

6    the confirmation order or any subsequent decision of the Court

7    will control the resolution of this decision.  I just -- I

8    don't want to go through several months of hell to find out

9    that because if I -- and I don't how I'm going to conclude.  I

10   just -- I know I've read these cases, okay?  But if I decide

11   against you on it, I don't want it, I don't want people pulling

12   the plug.  Tell me now, you know?

13           Mr. Eckstein?

14           MR. ECKSTEIN:  Your Honor, if I may?  Maybe this is an

15   appropriate time to address the issue.  If I may first, I think

16   it's important to distinguish between an observation I

17   understood Your Honor made at the outset, which was a concern

18   with the general breadth of the confirmation order provision in

19   the plan and then let's deal with exculpation.

20           I think in terms of the confirmation order, Article 10

21   and Article 11 are drafted in a way that I believe is something

22   that Your Honor is generally familiar with and finds

23   acceptable, which is that the confirmation order shall be

24   reasonably acceptable to the plan proponents and each of the

25   consenting claimants.  It does not provide an absolute standard

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    of acceptability.  So it has a reasonableness provision.

2    There's also the ability in Article 10 of the plan to make

3    modifications to the plan, and again they have to be reasonably

4    acceptable and it provides that it not -- that the consent of

5    the consenting claimants is required to the extent it directly

6    effects them, but again, it does not have an absolute standard

7    in there as a general matter.

8            That is qualified, however, and I think Your Honor has

9    picked this up, by the release in the exculpation provision.  I

10   think Your Honor has squarely focused on one of the provisions

11   where the least -- the plan support agreement contemplate that

12   notwithstanding the right to make modifications, there will not

13   be modifications to the release or the exculpation provisions.

14           So Your Honor is correct that in the event Your Honor

15   were to reject the exculpation provision with the way the plan

16   documents are drafted, that would, essentially, be inconsistent

17   with the plan documents.

18           So we had contemplated that the issue would be

19   briefed -- and I do want to also point out, and again I am

20   familiar with Coram; I am familiar with WaMu, specifically.  I

21   was involved in both of those cases, and I know exactly what

22   occurred in each of those cases before Judge Walrath.

23           THE COURT:  Well, the Fifth Circuit and Pacific

24   Lumber, I mean --

25           MR. ECKSTEIN:  Correct.  And again, it's a little bit

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    early, although maybe for all of our sakes we shouldn't sort of

2    sweep it under the rug.  The exculpation provision, Your Honor,

3    it's important to note, was drafted and provides that there's a

4    carve-out of gross negligence and willful misconduct --

5            THE COURT:  But that's absolutely required.  That's

6    not an issue.

7            MR. ECKSTEIN:  And so I just wanted to make the point,

8    Your Honor, that's in there.

9            THE COURT:  I know, I know it is.

10           MR. ECKSTEIN:  So it then leaves the question of, with

11   the carve-out of gross negligence and willful misconduct, is

12   the exculpation provision including for pre-petition conduct of

13   nonstate fiduciaries appropriate in the context of this case.

14           THE COURT:  Okay.  Let me ask you this:  do you want

15   me deciding that now without a record because it potentially

16   makes the plan unconfirmable, or do you want to get to

17   confirmation and have a full record and have the Court decide

18   in that context?  I'm just -- I'm not saying that the result

19   would be different, but all I'm saying is, I'm not -- I don't

20   want -- I don't mean to put ultimatums but I'm going to.  I did

21   this in MF Global; I'm doing the same thing here.  Okay.  I'm

22   not going to go through the next few months only to be told

23   that if I don't approve the exculpation clause there's no plan,

24   okay?  So if you need to go back to the consenting claimants,

25   and confer -- the consenting claimants and Ally and the debtors

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    to confirm to the Court that this issue will be left for the

2    decision by the Court at or about the time of confirmation, I'm

3    not going forward.  Let me make it crystal clear.

4         MR. ECKSTEIN:  And Your Honor, I appreciate your

5    raising it, and I think it's appropriate for the issue to be

6    raised.  I think as Your Honor can anticipate, given the

7    constituency that I represent plus other constituencies that I

8    don't represent --

9         THE COURT:  Your constituency gets covered; you're

10   estate fiduciary.

11        MR. ECKSTEIN:  But -- no I'm -- but given the parties

12   that are sort of within the universe of the consenting

13   claimants and the other parties to the plan support agreement,

14   I can't, standing here today --

15        THE COURT:  I know that.

16        MR. ECKSTEIN:  -- make any representations.

17        THE COURT:  I know that.

18        MR. ECKSTEIN:  Notwithstanding that, I do think it's

19   important, Your Honor, our view is that in this case, we

20   believe and we hope to persuade Your Honor that the exculpation

21   provision is appropriate and consistent with applicable law.

22        THE COURT:  And you may well do that.

23        MR. ECKSTEIN:  That said -- that said, I certainly am

24   not --

25        THE COURT:  If the cases weren't lined up against you,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

100

1    I wouldn't be making an issue out of this.

2            MR. ECKSTEIN:  Your Honor, this is a tough case from

3    start to finish, and I don't think it's going to change.  That

4    said, we'll certainly -- we're going to raise this with the

5    consenting claimants and I don't necessarily know what the

6    right answer is, but I think it's appropriate to raise it and

7    we're happy to come back to Your Honor as promptly as we can

8    with any feedback that we have.  But I understand Your Honor's

9    concern that you don't want to find out that at the end of this

10   entire process, that we don't have a plan that can go forward.

11   That said, I have parties who labored mightily on how this was

12   structured, and I think it's fair for them to rely upon a

13   structure that was put into place in good faith --

14           THE COURT:  Well, it may be.

15           MR. ECKSTEIN:  -- by everybody.

16           THE COURT:  But then again, the judge has said he

17   isn't going to approve the disclosure statement unless I find

18   out that -- look it's one of two things.  I mean, if your

19   people want to stand their ground, then I will ask for

20   additional briefing now.  I won't approve the disclosure

21   statement, we'll have full briefing of the issue and an

22   argument, and probably in October I'll decide whether it's at

23   least, assuming all the requirements are satisfied, exculpation

24   can extend that far.  I mean, that's kind of what you're

25   facing.  Okay?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MR. ECKSTEIN:  I understand the --

2          THE COURT:  All right.

3          MR. ECKSTEIN:  I understand the dynamic.

4          THE COURT:  Let me -- since you're up there, let me --

5    tell me, explain to me, with -- and this really is AFI's issue,

6    but I want to understand with the third-party nondebtor

7    release, does it cover claims unrelated to the business of the

8    debtors?  In other words, it seems to me, I understand the

9    argument, because I've heard it; it's come up before that AFI

10   has filed indemnification claims.  And many of the -- as I

11   understand it, much of the asserted liability against AFI is

12   aiding and abetting or some derivative -- it's not -- the

13   claims are not derivative, they don't belong to the debtor,

14   these claims specifically.  Does the release of AFI, if

15   approved, extend to matters that are unrelated to the business

16   of the debtors?  That's one question.

17         MR. ECKSTEIN:  Your Honor, I believe that we actually

18   address that specific issue --

19         THE COURT:  Yeah.

20         MR. ECKSTEIN:  -- in Article 9(e) of the plan, which

21   is the settlement release injunction and related provisions,

22   where the fourth line from the bottom, it says "otherwise

23   arising" --

24         THE COURT:  Maybe Mr. Marinuzzi can tell me in the

25   blackline where I -- what page I'm going to --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MR. MARINUZZI:  Page 99.

2          THE COURT:  Okay, hold on.

3          MR. ECKSTEIN:  Where it says "arising from or related

4     in any way to the debtors".

5          THE COURT:  Okay.

6          MR. ECKSTEIN:  I believe that was intended to be

7     responsive to the issue Your Honor raised.  I would defer to

8     Mr. Schrock to confirm that I'm not misstating what was

9     intended.

10         MR. SCHROCK:  Good morning, Your Honor -- or good

11    afternoon.  Ray Schrock with Kirkland & Ellis on behalf of AFI

12    and Ally Bank.  That's correct, the release is limited.  It has

13    to be, by the words, in any way related to the debtors'

14    businesses.

15         THE COURT:  So let me ask.  And I will confess, I

16    didn't go look at the solicitation procedures.  Had -- and the

17    plan, okay?  So for example, is there a provision that's being

18    put in the ballot so that anybody who votes in favor of the

19    plan consents to the releases provided in the plan?

20         MR. SCHROCK:  Yes.

21         THE COURT:  There is.

22         MR. SCHROCK:  Yes.

23         THE COURT:  Okay.  Because we're going to narrow --

24    what I'm trying to understand is, are we narrowing -- the PSA

25    includes the provision, so it seems to me that anybody who

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    signed the PSA is consenting -- assuming the plan as set forth

2    in the PSA is approved, that anybody who signed the PSA is

3    consenting to the release of Ally.  Okay.

4            If the ballot includes a provision to consent, then

5    anybody who votes in favor of the plan -- I'm not deciding the

6    issue today, but I have in other cases, and so have some of my

7    colleagues, determined that if the ballot states that if you

8    vote in favor of the plan you consent to the third-party

9    releases -- that ought to be in bold -- that that's sufficient

10    for consent.  So the issue is, to what extent are their

11    nonconsensual releases, okay?  And that, then, puts you in the

12    Manville Metromedia analysis.  Because they don't really -- if

13    it's consensual it's fine; if it's not consensual it's a bigger

14    problem.  So have you taken all the steps that should be

15    properly done to narrow the range of nonconsensual releases

16    that are going to be provided?

17            Mr. Marinuzzi?  Mr. Schrock?  Either one of you.

18            MR. MARINUZZI:  Your Honor, let me just be clear on

19    what the notices and the ballots say.  So what we've done on

20    the ballots is we've effectively cut and pasted into the ballot

21    the release provisions of the plan.

22            THE COURT:  Right.

23            MR. MARINUZZI:  What it says is if the plan's approved

24    then the following releases shall apply.  It does not say "if

25    you vote for the plan", but that's an easy -- we can add that.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          THE COURT:  I think you ought to -- you might look, I

2     don't know -- I think the Kodak plan that got confirmed

3     yesterday, the ballot had something.  It had a provision in it

4     that if you vote in -- the issue comes, and it wouldn't be the

5     first case where this has come up, is what happens if somebody

6     doesn't vote.  I mean, I think the Kodak plan's ballot

7     basically says if you don't vote it's deemed to be an

8     acceptance of the -- that was confirmed yesterday by Judge

9     Gropper.  You might look at that.  I don't know.

10          Ms. Golden, did you argue that yesterday?

11          MS. GOLDEN:  Mr. Masumoto.

12          THE COURT:  Mr. Masumoto.

13          MR. MASUMOTO:  Yes, Your Honor.

14          THE COURT:  You didn't object to that, as I

15     understand.

16          MR. MASUMOTO:  No, there was a voluntary vote on the

17     part of the -- on the ballot, either agreeing or disagreeing.

18          THE COURT:  But I thought that the ballot also

19     included that if you don't vote it's deemed to be an

20     acceptance.

21          MR. MASUMOTO:  Yes.  I mean that is a --

22          THE COURT:  And you didn't object to that, as I

23     understand it, yesterday.

24          MR. MASUMOTO:  No, Your Honor.  I didn't object.

25          THE COURT:  You might take that to heart.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

105

1        MR. MARINUZZI:  Your Honor, our ballots will say that.

2        Now, it leaves --

3        THE COURT:  They may change their mind.  I don't know.

4        MR. MASUMOTO:  We will revisit that.

5        THE COURT:  Word travels fast, you know.

6        MR. MARINUZZI:  It still leaves open, obviously, the

7    issue of what happens to third parties that are not creditors

8    of the debtors' estate and don't even get a ballot.

9        THE COURT:  Oh, I understand that.  But let's, at

10    least, narrow the universe of what we're talking about.

11        MR. MARINUZZI:  We'll do that.  That makes complete

12    sense, and we'll do that.

13        THE COURT:  And I don't know how I'm going to rule.

14    It's a difficult issue.  I've said it before.  AFI could decide

15    that the risk, if all they're talking about are the

16    nonconsenting creditors, maybe the risk isn't all that great.

17    I mean, that's something you have to evaluate.  I'm not -- just

18    an observation.

19        But what I want to -- I think you want to be sure that

20    you have, and I don't know whether you need to tinker with the

21    plan language to put this into effect, but certainly with the

22    ballot, that when a ballot goes out people understand -- you

23    got the PSA that's got a lot of people who've signed on

24    already, but when the ballot goes out, you vote in favor of the

25    plan, you're consenting to the releases and exculpation.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          Again, this goes to exculpation as well.  I mean, the

2     issue I'm raising is if it's not consensual, if everybody who

3     votes in favor of the plan understands that this is the

4     exculpation we're agreeing upon, that's -- I'm not ruling, but

5     that is a stronger argument.

6               MR. MARINUZZI:  That's fine, Your Honor.  We'll modify

7     the ballots to make sure that that point is made.

8               THE COURT:  But run it by Mr. Masumoto to make sure

9     you're not -- that I haven't created an objection that you're

10    going to get.

11              MR. MASUMOTO:  Thank you, Your Honor.  I appreciate

12    that.

13              MR. ECKSTEIN:  Your Honor, if I may?  Just to close

14    the circle on --

15              THE COURT:  Okay.

16              MR. ECKSTEIN:  -- the point we were addressing a

17    moment ago.  I think what I'm going to do, just in anticipation

18    of, I think, Your Honor's remarks is after this hearing's

19    concluded I would expect we'll schedule a call with the

20    consenting claimants.  We'll, basically, brief them on the

21    issue that Your Honor has raised with respect to concerns about

22    not having a plan that might blow up in the event ultimately

23    Your Honor is not prepared to endorse the exculpation as

24    written.

25              THE COURT:  Look, there could be some other little

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    things.  I don't know.  I'm picking that one, because it was --

2            MR. ECKSTEIN:  I believe the rest of the conditions

3    are, I think, appropriately dealt with through the language of

4    the document.  We'll go back and look again, but I think it

5    doesn't tie the Court's hands to make modification.  It

6    certainly doesn't give parties blowup rights, although the

7    exculpation, I think it does.  And so I would expect to have a

8    conversation with the consenting claimants, and we would come

9    back to Your Honor.  If we can do it today, we'll do it.

10           THE COURT:  Okay.

11           MR. ECKSTEIN:  But I think we can do it very quickly.

12   I imagine Ally has to weigh in, and the debtor has to weigh in

13   to make sure everybody understands what flexibility is being

14   created, and we absolutely, I think, would intend to present

15   the issue to Your Honor in connection with the confirmation

16   evidence and hopefully persuade Your Honor that in this case

17   the exculpation, as drafted, is appropriate.

18           THE COURT:  Yeah, look, and this last part I made, if

19   it's consensual it's a different issue, so --

20           Let me ask one other question.  With respect to the --

21   where is the section -- point me to the section in the

22   disclosure statement, Mr. Marinuzzi, that deals with the

23   explanation of the AFI release, the basis for the release.

24           MR. MARINUZZI:  Your Honor, it's believe it's page --

25   I think, because this was addressed in connection with the

**RESIDENTIAL CAPITAL, LLC, ET AL.**

108

1   objection filed by the JSNs.

2           THE COURT:  Yes, it is.

3           MR. MARINUZZI:  And I know we added additional

4   disclosures.

5           THE COURT:  Yeah.

6           MR. MARINUZZI:  Let me just try to find in my chart

7   where we've provided that disclosure.

8           So, Your Honor, yeah, on pages 81 through 86 of the

9   revised disclosure statement there's a discussion, which we

10  characterize as a robust discussion of the creditors'

11  committee's investigation, the examiner's investigation, and

12  the findings and conclusions in the examiner's report dealing

13  with the Ally settlement.

14          There's also, at various points, and I'll let Your

15  Honor look at pages 81 through 86 --

16          THE COURT:  Here, in your omnibus reply with respect

17  to the JSNs, they had discussion about what the examiner

18  identified as claims against AFI.  And in your omnibus reply

19  you said -- I don't remember what the number was -- 5.5

20  billion, and you said something like 3 billion of that is --

21          MR. MARINUZZI:  Of that amount; some is less likely,

22  Your Honor.

23          THE COURT:  -- characterized as weak or whatnot, not

24  probable.

25          I mean, what I didn't see, and maybe -- because

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    there's a lot in here, and I've read it a bunch of times, but

2    maybe you'll point me to it.  This comes back a little bit to

3    when I talked about the FHFA, how much value -- I don't see

4    anything in here that's attributing value to the release.  AFI,

5    yes, it's contributing 2.1 billion.  There's a discussion of

6    well, these claims have been identified.  The proponents may

7    disagree as to some of the things that the examiner identified.

8    Okay.  But I haven't seen anything that attempts to place a

9    value on the release that AFI will receive.

10              MR. MARINUZZI:  Your Honor, I think the point -- a

11   couple points.  One, there were some objections that asked us

12   to allocate as between --

13              THE COURT:  I agree you don't have to allocate.

14              MR. MARINUZZI:  We can't do that.

15              THE COURT:  That I agree with.

16              MR. MARINUZZI:  We can't do that.

17              THE COURT:  I agree.

18              MR. MARINUZZI:  And if you look at Exhibit 10 to the

19   disclosure statement --

20              THE COURT:  Yes.

21              MR. MARINUZZI:  -- what we've tried to do here is lay

22   out fairly the positions of the JSN and positions of AFI with

23   respect to the examiner's conclusion on the liability that AFI

24   would have otherwise had to the estate, basically, in the

25   absence of a settlement.  I think there's a fair amount of

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  detail in here.

2          Now, we want this plan to be confirmed, obviously, and

3  so we walked a fine line, because in the event the plan's not

4  confirmed we certainly don't want to be stuck with positions

5  with respect to claims that somebody might have to assert

6  against AFI --

7          THE COURT:  Right.

8          MR. MARINUZZI:  -- if this plan's not confirmed.  So

9  we've got the point-counterpoint that's part of the disclosure

10  statement about why the examiner's report says that the claims

11  against AFI are worth so much, and then we've got AFI's

12  position that says -- and our brief says this too -- I think

13  you're overstating --

14          THE COURT:  The examiner report doesn't say they're

15  worth so much.  It identifies a potential claim and a dollar

16  amount and then ascribes a certain probability.  That isn't

17  necessarily the value for settlement purposes, and it

18  doesn't -- properly so, doesn't elaborate on that.

19          Mr. Eckstein?

20          MR. ECKSTEIN:  Your Honor, if I may?  I don't mean to

21  interrupt the colloquy --

22          THE COURT:  Yes?

23          MR. ECKSTEIN:  -- but I think it's important.  If Your

24  Honor looks at page 25 of the black-line to the disclosure

25  statement, which is Article 2, which is really the discussion

**RESIDENTIAL CAPITAL, LLC, ET AL.**

111

1    that goes through in, I think, painstaking detail, the global

2    settlement and the implementation of the plan, and after

3    section A on page 26 talks about the global settlement, section

4    B begins with settlement of claims against Ally and plan

5    releases, and this is the section, which is quite early on in

6    the disclosure statement, that lays out in extensive detail the

7    nature of the claims against Ally, both estate and third party,

8    and the basis for the release.

9          THE COURT:  Yes.  So look, one of things -- and I'm

10   not saying you need to include this or not, but one of the --

11   when I thought through this last night -- actually, it was

12   after reading the JSN's -- rereading the JSN's objection and

13   then seeing the language that you propose to add.  Metromedia

14   talks about what are the factors that Metromedia looks at in

15   determining whether the third-party nondebtor release is

16   appropriate is they talk about channeling injunction.  Well,

17   you've, in effect, by setting up the securities litigation

18   trust, the borrower trust, various other specific pot -- you've

19   channeled -- and where there are claims that have been asserted

20   or potential claims that could be asserted against AFI, you

21   have channeled claims to specific funds.  And then people

22   aren't being repaid in full, but -- far from it, but you have,

23   in fact -- for Mr. Eckstein's clients, set aside -- they can

24   say that their claim is worth billions, but you're creating,

25   assuming it's confirmed, a very large pot of money to satisfy

**RESIDENTIAL CAPITAL, LLC, ET AL.**

112

1    those claims.  Well, that seems to me, in some ways, that

2    that's a factor that Metromedia identified as supporting -- and

3    maybe we'll get to that at the time of confirmation when you go

4    through it, but I didn't see any statement in here that, in

5    fact, you know, some of the claims against AFI that are being

6    released have been channeled into specific funds available for

7    distribution to creditors here.

8           MR. ECKSTEIN:  Your Honor, and I think, from a

9    disclosure standpoint I would submit we have ample

10   disclosure --

11          THE COURT:  Okay.

12          MR. ECKSTEIN:  -- and I actually would suggest that

13   given the significance of the third-party release issue and the

14   fact that this is, I would say, a somewhat extraordinary third-

15   party release structure as bankruptcy Chapter 11 cases go.  It

16   is.  It probably is appropriate to defer the full discussion of

17   it --

18          THE COURT:  That's fine.

19          MR. ECKSTEIN: -- until it's been briefed and we can

20   present it.

21          THE COURT:  That's fine.

22          MR. ECKSTEIN:  But the reality is we are not -- other

23   than the borrower claims and the private securities claims and

24   the Carpenter's claims -- we are not channeling any other

25   claims --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          THE COURT:  That's true.

2          MR. ECKSTEIN:  -- to specific trusts.

3          THE COURT:  Okay.  All right.  Let me leave it at

4    that.  You need to get back to me with -- so, let's put it this

5    way.  Subject to satisfying myself with the issue I've raised

6    today, which you'll advise me in due course, I'm prepared to

7    enter an order.  You had to make some tweaks based on --

8          MR. MARINUZZI:  To the ballots, Your Honor.

9          THE COURT:  -- Santa Barbara, and you're going to

10   change the ballot.

11         MR. MARINUZZI:  Correct.

12         THE COURT:  And you'll let us -- just send me the

13   black-line of those pages rather than -- send the whole thing,

14   but specifically identify those pages that have any changes.

15   So, okay.

16         MR. MARINUZZI:  Right.  There are a couple more

17   objections we're going to go through, Your Honor.

18         THE COURT:  Oh.  Okay.  I thought we had --

19         MR. MARINUZZI:  We're not done.  I wish we were.

20   We're not done.  I'm sorry.

21         THE COURT:  I wish we were done.  Okay.

22         MR. MARINUZZI:  Your Honor, we have a number of what

23   I'll call borrower objections.  The next one, I believe, on the

24   list is --

25         THE COURT:  Yes.  Lawson.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

114

1          MR. MARINUZZI:  -- Michelle Lawson's objection.

2          THE COURT:  Is Ms. Lawson on the phone or present in

3     court?  Overruled.

4          MR. MARINUZZI:  Then we get to Ms. Nelson.

5          THE COURT:  Is Ms. Nelson present in court or on the

6     phone?  Overruled.

7          THE COURT:  Yes.

8          MR. MARINUZZI:  Mary McDonald.  We resolved her

9     objection.

10          THE COURT:  Okay.

11          MR. MARINUZZI:  Basic Life Resources and Pamela Hill.

12     We were not able to resolve that.

13          THE COURT:  Is anyone for Basic Life Resources or

14     Pamela Hill in court or on the telephone?  Overruled.

15          MR. MARINUZZI:  And Paul Corrado, Your Honor.

16          THE COURT:  Is Mr. Corrado present in court or on the

17     telephone?  Overruled.

18          MR. MARINUZZI:  That's all of the objections, Your

19     Honor.  There are some reservations of rights.  I think we can

20     acknowledge people's rights are reserved.

21          THE COURT:  Right.  Okay.

22          MR. MARINUZZI:  Your Honor --

23          THE COURT:  So, basically, I'm conditionally agreeing

24     to approve the disclosure statement subject to seeing these

25     last changes and getting a response on the issue I raised with

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   the coproponent's counsel.

2           MR. MARINUZZI:  That's terrific, Your Honor.  We'll do

3   what we can to try to get that done this afternoon, if

4   possible.

5           MR. ECKSTEIN:  Your Honor, I don't want to preview

6   exactly when and what the outcome is, but can we come back to

7   Your Honor by calling chambers?

8           THE COURT:  You can.  I'm not here tomorrow.

9           MR. ECKSTEIN:  So, if possible, today is better.

10          THE COURT:  You can draw your own conclusion about

11  that.  I'm not here tomorrow, Mr. Eckstein.

12          MR. MARINUZZI:  Your Honor, not to prolong the hearing

13  any more than necessary, but to the extent the Court had any

14  questions on the order, the dates that were put in the order --

15          THE COURT:  Let me just say, Mr. Eckstein, I'll be in

16  contact with my chambers tomorrow.  Okay.

17          Hang on just one second.

18          Oh, I am here tomorrow.  Tomorrow I have MF Global.

19  It's Friday I'm not here.  MF Glo -- how could I forget?  I

20  left a day out of the week.  Okay.

21          MR. ECKSTEIN:  We'll reach chambers.

22          THE COURT:  Okay.  I will be here tomorrow.

23          MR. MARINUZZI:  Your Honor, to the extent the Court

24  wants to review the order we plugged dates in there for the

25  confirmation hearing on November 19th.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

116

1         THE COURT:  Well, let me -- I do want to raise -- bear

2 with me.  What did I do with it?

3         MR. MARINUZZI:  And Your Honor, the marked order is in

4 a small bound booklet on your desk.  Hopefully.

5         THE COURT:  Yes, but I made some notes on a copy.

6         MR. MARINUZZI:  Okay.

7     (Pause)

8         MR. MARINUZZI:  Your Honor, if it's helpful I could

9 provide you with copies.

10         THE COURT:  Sure.  Just of the timeline.  I had made

11 some notes on mine.

12         MR. MARINUZZI:  Your Honor, if it's specific to the

13 timeline I could just -- I've got a copy of our timeline broken

14 out.

15         THE COURT:  Yeah.  That's what I had made notes on.  I

16 had looked at that.

17         Ah, which -- I can't find my copy, but I remember the

18 questions I had.  There are several things that are of concern

19 to me in your timeline.  The deadline for objections,

20 responses -- well, it's the -- well.  This had to do with

21 temporary allowance of voting.  I didn't see when I was

22 supposed to have a hearing and what was going to have to -- you

23 had deadlines for their filing it and you responding to it, and

24 you have an October 23 deadline for entry of order granting

25 motion seeking temporary voting allowance, but there is going

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   to be a phase 1 trial with the JSNs, and the time, the amount

2   of time for that has not -- the start date has not been

3   specifically set.  I said early October.  And the length of

4   time for that trial hasn't been set.  And I'm likely to require

5   proposed findings of fact, conclusions of law.  I'm going to be

6   very occupied with the phase 1 trial with the JSNs.  And how

7   you think you're going to fit in hearings if there are

8   contested issues about temporary voting, boy, you're asking a

9   lot of me.  I've already been kicking myself that I agreed to

10  schedule this hearing today, when I spent a good part of my

11  vacation interrupted reading in limine motions, immediately

12  coming back deciding in limine motions, having a trial last

13  Friday and Monday of this week, and then having to be prepared

14  to deal with the disclosure statement today.

15          I accomplished all that.  But when I looked at this

16  schedule and I saw October, I don't see how it's going to

17  happen.  I'll live with -- you can put this, but I'll tell you

18  right now that the commencement of the confirmation for

19  November 19th, I don't know whether it's really going to happen

20  then or not.  I mean, some of it's going to depend on what's

21  going to happen.  You start having contested hearings about

22  temporary voting, I don't know what's going to be involved yet.

23          MR. MARINUZZI:  Your Honor, I think that's probably an

24  inspiration for people to agree on what the claim amount should

25  be for voting purposes rather than have to involve Your Honor,

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    obviously.  The November 19th date, which is just before

2    Thanksgiving, gives us --

3          THE COURT:  Thank you.  We'll all have a -- so I'll

4    have a very nice Thanksgiving.  We'll commence the hearing, and

5    how long it's going to take, I don't know.  It was going to

6    be -- that was going to include the phase 2 JSN trial if you

7    hadn't settled it.  You really think starting a hearing

8    November 19th, you think it's going to be a day or two hearing?

9          MR. MARINUZZI:  Your Honor, there's always hope.

10         THE COURT:  There is.  There is.

11         I don't mind.  Oh, I'll agree to this schedule, but

12    everybody be on notice this schedule may not hold.

13         MR. ZIDE:  Your Honor, Stephen Zide from Kramer, Levin

14    on behalf of the creditors' committee.  We had actually

15    contacted chambers prior to setting this --

16         THE COURT:  Didn't contact me.

17         MR. ZIDE:  Noted.  And we had thought that we had

18    reserved the days from November 19th to November 26th, which I

19    think are six days, for a trial and confirmation.

20         THE COURT:  Oh, happy Thanksgiving.  Yeah, that's --

21         MR. ZIDE:  It was prior to Thanksgiving weekend.

22         THE COURT:  Yes.  But did you build in that if I have

23    to have contested hearings about voting, temporary voting?

24         MR. ZIDE:  I think what we were contemplating there,

25    Your Honor, is that we would give those creditors a provisional

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    ballot, which I think is in the order and is in the motion, and

2    we'd be able to resolve that prior to confirmation.

3            THE COURT:  Look.  I have bent over backwards to move

4    this case forward, and I'm prepared to do that, but the last

5    month has not been pleasant, okay, and I don't want a repeat of

6    it.  And I'm looking at this schedule, and I see the repeat of

7    it right here, and with what -- I'm going to have a hearing

8    with a discovery dispute in the UMB case tomorrow.  What it is,

9    I don't know.  The number I do -- as you know, I do timed

10   trials.  How many days are going to be set for that trial, I

11   don't know.  I don't know how many witnesses people

12   contemplate.  So there's a lot to be done.

13           I'll approve an order with this schedule, but

14   everybody be on notice that these days may not hold, okay?

15           MR. ECKSTEIN:  Your Honor, I think, first of all, we

16   appreciate the imposition on the Court, and I think Your Honor

17   can appreciate the parties in the case empathize because we're,

18   obviously, experiencing a similar burden.  And we recognize

19   that even though this is not what I would call the fastest

20   track confirmation schedule, it is going to be very difficult

21   to get through everything within the timetables.  Right now --

22           THE COURT:  If we have to have a confirmation trial

23   that really deals with -- and I don't know yet -- with what

24   it's going to have to deal with, the settlement of intercompany

25   claims and other issues in the global settlement or that affect

**RESIDENTIAL CAPITAL, LLC, ET AL.**

120

1    the JSNs that our so-called phase 2, to be included in

2    confirmation, it's not going to be a short hearing.

3           MR. ECKSTEIN:  Your Honor, I think we're all doing

4    everything we can to comply with milestones.

5           THE COURT:  Okay.

6           MR. ECKSTEIN:  And we --

7           THE COURT:  I'm telling you -- I will --

8           MR. ECKSTEIN:  -- understand the Court is being very

9    accommodating and --

10          THE COURT:  I'll -- if you get an answer today you'll

11   get a disclosure statement approved today, but this schedule is

12   going to be subject -- it's not the only case I have, and I'll

13   deal with it.  Of course, so --

14          MR. ECKSTEIN:  I think --

15          THE COURT:  -- nobody be surprised if dates get

16   pushed.

17          MR. ECKSTEIN:  I think the best we can do today is to

18   try to resolve as many issues as we can, as we have tried to

19   do --

20          THE COURT:  Have lunch with Mr. Uzzi and maybe

21   you'll --

22          MR. ECKSTEIN:  I've had many lunches with Mr. Uzzi,

23   and I always enjoy them.

24          THE COURT:  He's sitting with Mr. Walper.  You can

25   have lunch with both of them.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

121

1            MR. ECKSTEIN:  And I probably will do something that

2       involves a meal.  But as Your Honor knows, it may or may not

3       affect the outcome of how these issues proceed, and I think

4       right now we hear Your Honor that there's only so much the

5       Court can do, no matter how hard one tries, and we recognize

6       that.  And I think we'll make everybody well aware of those

7       issues, and we'll have to proceed as best we can.

8            Right now we are dealing with milestones, and I think

9       Your Honor is familiar with the fact that we have an effective

10      date milestone of December 15th.  That --

11           THE COURT:  I know you do.

12           MR. ECKSTEIN:  -- is guiding --

13           THE COURT:  And we pushed you --

14           MR. ECKSTEIN:  -- what we're doing right now.

15           THE COURT:  -- the date for conclusion of the FGIC

16      matter has been pushed to September 16th.  There's a lot of

17      things that are stacked up here.

18           MR. ECKSTEIN:  There are.  The only observation

19      that -- without minimizing the burdens of the issues, we

20      fortunately do not have -- we do have a lot of consensus,

21      obviously, and I don't think we would be suggesting these dates

22      if there was not overwhelming consensus, which, as Your Honor

23      appreciates, is a tall order in and of itself.  And so I think

24      given that fact, we're going to try to do the best we can --

25           THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

122

1          MR. ECKSTEIN:  -- to accommodate, not overburdening

2     the Court and meeting the schedule as best we can, and we'll

3     hear Your Honor's caution that we may back up at some point and

4     parties will have to deal with that, I think, in the next

5     couple of weeks.

6          THE COURT:  All right.  The Kessler matter.  Mr.

7     Rosenbaum?

8          MS. NORA:  Your Honor, is this a moment that Wendy

9     Alison Nora could be heard?  I was on CourtCall the entire

10    time.

11         THE COURT:  No, Ms. Nora.  I called.  I asked for you

12    to speak.  You did not appear at the time.  We're well past

13    that matter, so no, it is not a time for you to speak.

14         Mr. Rosenbaum?  Go ahead.

15         MS. NORA:  Well, Your Honor, I was on the phone, and I

16    was unable to be heard because of a connection problem, and

17    then I'm instructed not to interrupt the Court.

18         THE COURT:  Ms. --

19         MS. NORA:  I did say hello.

20         THE COURT:  Ms. --

21         MS. NORA:  I heard you say that I was connected to the

22    Court.  Then I could not be heard.  It will take me two minutes

23    to state --

24         THE COURT:  Ms. Nora, I ruled on your objection.  I

25    overruled it.  I overruled it based on the papers.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          Mr. Rosenbaum, let's move on.

2          MS. NORA:  Thank you, Your Honor.

3          MR. ROSENBAUM:  Your Honor, Norm Rosenbaum, Morrison &

4   Foerster.  Your Honor, we have been discussing the issues Your

5   Honor raised.  I believe we have a solution.  If we could

6   indulge the Court?  If we could appear before Your Honor after

7   a break, if you want to do --

8          THE COURT:  I don't think so.

9          MR. ROSENBAUM:  Okay.  Then the other alternative

10  would be --

11         THE COURT:  Tell me what your solution is.

12         MR. ROSENBAUM:  The solution is to -- we have to make

13  changes to the settlement agreement to account for the method

14  in which the judgment reduction would be applied and

15  modifications to the class notice to put the class on notice

16  that this is how we're proposing the notification, as well as

17  the proposal of PNC, so the class is informed of what the

18  issues are.

19         THE COURT:  I have a couple of concerns.  First, can I

20  approve it without you filing it on ECF and giving -- I mean,

21  what I had was a motion to approve -- preliminarily approve a

22  settlement, terms of which were set out.  Okay.  I'm not trying

23  to slow you down, Mr. Rosenbaum.  I am concerned that -- well,

24  I'll tell you what.  I have a hearing set for 2 o'clock

25  tomorrow with respect to the UMB case, a discovery dispute.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

124

1   I'll hear you at 1:30.

2            MR. ROSENBAUM:  Thank you, Your Honor.

3            MR. FLANIGAN:  Thank you, Your Honor.

4            For the record, I'm Dan Flanigan appearing for the

5   Kessler class.

6            THE COURT:  Didn't want to make your life complicated,

7   Mr. Flanigan, but anyway, we'll deal with it tomorrow at 1:30.

8            MR. FLANIGAN:  We're solving it, Your Honor.

9            MR. MARINUZZI:  Your Honor, I'm trying to find my

10  agenda in the pile of papers here, but I think that concludes

11  the agenda for today.

12           THE COURT:  Let me just say.  I congratulate you all

13  for -- this is another big milestone.  We've got lots of steps

14  to do, but just to get to this point, I think no one should

15  misinterpret any of my comments along the way.  There's a lot

16  to be done, but you've accomplished an enormous amount.  That

17  doesn't mean you're going to get this plan confirmed.  We'll

18  see.  But you all -- and I know you've all worked tirelessly to

19  get to this point and the Court appreciates that.  And I don't

20  think it's an easy road.  I hope you resolve the remaining

21  disputes, and that this -- when we get to confirmation, this

22  will be as close to a consensual confirmation as is possible.

23           Having said that, we're adjourned.

24           MR. MARINUZZI:  Thank you, Your Honor.

25      (Whereupon these proceedings were concluded at 12:33 PM))

125

**I N D E X**

**RULINGS**

|  | Page | Line |
|---|---|---|
| Debtors' motion to extend exclusive periods, granted. | 23 | 8 |
| Disclosure statement conditionally approved | 114 | 23 |

126

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a

true and accurate record of the proceedings.


_____

PENINA WOLICKI

AAERT Certified Electronic Transcriber CET**D 569


eScribers

700 West 192nd Street, Suite #607

New York, NY 10040


Date:  August 22, 2013

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg
Pg 127 of 147

August 21, 2013

**#**

**#607 (1)**
3:22

**A**

**abetting (1)**
101:12
**ability (2)**
19:9;97:2
**able (11)**
24:24;25:3;29:6;
43:14;60:7;72:21,22;
76:21;86:5;114:12;
119:2
**absence (4)**
29:25;40:12,13;
109:25
**absent (3)**
34:6,16;36:6
**absolute (4)**
44:25;47:15;96:25;
97:6
**Absolutely (3)**
69:14;98:5;107:14
**Accept (5)**
2:4;23:24;78:14;
87:9,10
**acceptability (1)**
97:1
**acceptable (4)**
81:18;96:23,24;
97:4
**acceptance (2)**
104:8,20
**Acceptances (1)**
3:5
**ACCESS (1)**
16:10
**accommodate (2)**
40:20;122:1
**accommodating (1)**
120:9
**accomplish (1)**
50:20
**accomplished (3)**
33:20;117:15;
124:16
**accordance (1)**
67:11
**account (2)**
63:23;123:13
**achieved (3)**
28:17;36:13,21
**achieving (1)**
32:13
**acknowledge (1)**
114:20
**acknowledged (1)**
84:22
**act (1)**

**93:15**
**action (11)**
20:2,17;31:5,10;
32:7;34:14,25;51:5,
14;54:14;56:6
**actions (1)**
95:17
**activities (1)**
57:9
**actual (1)**
26:21
**actually (12)**
24:19,21;29:22;
41:4;44:23;49:8;81:9;
88:14;101:17;111:11;
112:12;118:14
**Ad (3)**
10:3;76:20;77:22
**add (6)**
27:5;67:1;68:21,23;
103:25;111:13
**added (7)**
39:10;52:14;61:5;
63:18;64:18;65:9;
108:3
**adding (3)**
55:11;67:5,25
**addition (6)**
19:7;33:8;35:3;
37:12;60:17;64:15
**additional (10)**
29:20;52:14;61:16;
75:9;76:23;78:13;
83:16,24;100:20;
108:3
**additions (1)**
83:8
**address (9)**
22:10;24:16;31:9;
45:21;67:4;76:23;
79:18;96:15;101:18
**addressed (3)**
34:22;59:23;107:25
**addresses (1)**
60:20
**addressing (1)**
106:16
**adequate (7)**
37:20;57:6,15;
83:20;87:11;89:20;
91:1
**adequately (1)**
34:22
**adhere (1)**
20:25
**adjourn (4)**
21:5,7;22:8,17
**adjourned (1)**
124:23
**admin (1)**
67:7
**Administration (1)**
70:6

**administrative (8)**
25:17;30:1;36:1;
54:16;64:16,20;65:2;
68:5
**admonition (1)**
29:22
**adopting (1)**
19:2
**adversary (1)**
53:24
**advise (2)**
21:10;113:6
**Advisory (2)**
14:11;92:2
**affect (4)**
63:25;83:1;119:25;
121:3
**affecting (1)**
19:9
**affects (1)**
19:13
**affirmative (1)**
56:6
**affirmatively (1)**
53:22
**AFI (31)**
24:6;28:12;30:24;
34:2;37:19;39:21;
40:5,8,14,24;41:7,13;
50:1,4;79:22;80:3;
101:9,11,14;102:11;
105:14;107:23;
108:18;109:4,9,22,23;
110:6,11;111:20;
112:5
**AFI's (2)**
101:5;110:11
**afternoon (2)**
102:11;115:3
**afterwards (1)**
72:16
**Again (17)**
34:15;36:6;44:23;
48:11;56:19;64:22;
65:10;87:16;90:20;
93:16;97:3,6,19,25;
100:16;106:1;107:4
**against (30)**
26:7;31:25;33:6;
34:2,12;35:13;37:18;
38:15,18,18;40:14;
47:16;54:8,13;55:6;
63:21;80:23;91:14,
15;94:10;96:11;
99:25;101:11;108:18;
110:6,11;111:4,7,20;
112:5
**agenda (9)**
17:6,7,8,9;21:19,
20;23:10;124:10,11
**aggregate (1)**
77:10
**ago (6)**

**29:17;30:20;34:24;**
**46:6,9;106:17**
**agree (10)**
41:7;82:12,24;
87:19;93:11;109:13,
15,17;117:24;118:11
**agreed (10)**
32:25;36:14,18;
50:1;53:21;55:20;
69:5;78:5;83:3;117:9
**agreeing (3)**
104:17;106:4;
114:23
**Agreement (25)**
2:16,21;22:18;24:5,
8;30:12;32:13,19;
36:17;37:9;49:13;
50:3,3,6;55:14;75:12;
78:1;79:24;80:7,24;
84:25;93:1;97:11;
99:13;123:13
**Ah (1)**
116:17
**ahead (11)**
22:24;49:20;56:25;
69:10;70:18,21;78:7;
79:14;92:4,6;122:14
**aiding (1)**
101:12
**AIG (1)**
11:19
**air (1)**
44:1
**AKIN (1)**
10:11
**al (1)**
14:19
**ALAN (2)**
13:8;71:25
**ALDRIDGE (2)**
13:2;72:1
**ALISON (4)**
16:15;58:24;59:6;
122:9
**ALLEN (1)**
15:2
**allocate (2)**
109:12,13
**allocated (1)**
79:23
**allocates (1)**
33:14
**allocation (4)**
33:10,13,22;36:1
**allow (2)**
57:4;82:2
**allowance (4)**
33:10,22;116:21,25
**allowed (9)**
54:7;55:9,20;56:1;
63:19,24;66:10;93:3;
95:15
**allowing (2)**

**35:3;56:13**
**allows (2)**
55:2;63:14
**Allstate (1)**
11:19
**Ally (27)**
7:11,11;31:25;32:8,
9,18,24;33:6;34:12;
35:13;36:14;38:15,
18;44:3;45:6,9,10;
81:18,24;94:11;
98:25;102:12;103:3;
107:12;108:13;111:4,
7
**almost (1)**
34:9
**along (4)**
24:2;44:7;52:3;
124:15
**altered (3)**
42:9;81:23;86:12
**alternative (6)**
30:4;36:13,15;83:9,
17;123:9
**although (5)**
30:22;35:14;80:15;
98:1;107:6
**ALVES (1)**
8:16
**always (3)**
46:17;118:9;120:23
**Ambac (2)**
14:3;54:7
**amended (3)**
37:24;57:5;91:7
**amendments (1)**
91:1
**Americas (3)**
6:4;14:4;15:4
**Amherst (5)**
14:11;92:2,11;
93:12,15
**among (4)**
30:22;32:17;33:23;
95:18
**amount (17)**
19:20;26:22;33:25;
39:25;54:18;55:5,8,9;
56:14,16,17;108:21;
109:25;110:16;117:1,
24;124:16
**ample (1)**
112:9
**analysis (5)**
32:8;39:17;53:14;
55:11;103:12
**ANDREW (1)**
9:8
**Angeles (1)**
9:15
**anticipate (2)**
29:8;99:6
**anticipated (4)**

44:11;55:9,12;
57:13
**anticipating (1)**
45:3
**anticipation (1)**
106:17
**apologize (3)**
23:10;91:16,18
**Apparently (1)**
50:3
**appeals (1)**
34:9
**appear (2)**
122:12;123:6
**appearing (1)**
124:4
**appellate (2)**
34:9;36:8
**applicable (11)**
18:20,22;20:3,17;
60:15;63:6,22;67:10,
24;68:15;99:21
**applied (1)**
123:14
**applies (2)**
51:3;68:2
**apply (5)**
50:11;52:1;63:5;
93:2;103:24
**appointed (3)**
24:11;31:24;32:4
**Appointment (2)**
2:13;57:9
**appreciate (8)**
44:10,11;78:15;
96:2;99:4;106:11;
119:16,17
**appreciates (2)**
121:23;124:19
**approaching (1)**
42:5
**appropriate (12)**
21:1;56:11;73:8;
95:13;96:15;98:13;
99:5,21;100:6;
107:17;111:16;
112:16
**appropriately (1)**
107:3
**Approval (19)**
2:19;17:10,20,25;
18:1,3,5,8,11;20:19;
21:13;22:2,11;24:4;
28:21;76:6;82:3;86:9;
88:24
**approve (10)**
47:21;48:9;98:23;
100:17,20;114:24;
119:13;123:20,21,21
**approved (11)**
20:16;43:3;49:9;
83:19;86:11,14,17;
101:15;103:2,23;

120:11
**Approving (15)**
2:3,6,7,15,18,21;
20:1,1;23:22,23,24,
25;56:5;89:1;96:4
**approximately (2)**
31:19;32:25
**April (1)**
29:24
**arguably (1)**
54:16
**argue (4)**
39:18;80:13;95:13;
104:10
**argument (13)**
37:19;59:20;69:9;
83:9,15,17,17,19,25;
95:24;100:22;101:9;
106:5
**arguments (3)**
37:17;47:24;48:4
**arising (2)**
101:23;102:3
**ARLENE (1)**
8:16
**arm (1)**
25:10
**around (2)**
33:4;96:2
**array (2)**
29:16;33:6
**arrived (1)**
79:23
**Article (6)**
81:15;96:20,21;
97:2;101:20;110:25
**articulate (1)**
90:3
**articulating (1)**
82:17
**ascertaining (1)**
19:19
**ascribe (1)**
41:2
**ascribes (1)**
110:16
**aside (1)**
111:23
**aspirational (1)**
38:8
**assert (3)**
37:18;63:13;110:5
**asserted (7)**
33:5;34:1;54:13;
56:3;101:11;111:19,
20
**assess (1)**
19:9
**assessed (1)**
62:14
**asset (2)**
31:18;57:8
**assets (4)**

26:13;27:13;28:11;
54:21
**assign (1)**
72:4
**assigned (1)**
62:19
**assume (7)**
71:21,22;72:4,22,
24;73:1,10
**Assuming (6)**
18:10;55:21;83:1;
100:23;103:1;111:25
**Assurance (1)**
14:3
**Assured (4)**
13:12;54:7;55:18;
60:2
**attached (1)**
65:4
**attempt (2)**
31:24;93:1
**attempts (1)**
109:8
**Attorneys (28)**
6:3;7:11,19;8:3,11,
20;9:3,12,21;10:3,12,
20;11:3,19;12:3,12,
21;13:3,12,20;14:3,
11,19;15:3,11,20;
16:3,11
**Attorney's (1)**
5:13
**attributed (1)**
29:15
**attributing (1)**
109:4
**August (1)**
78:2
**authorities (1)**
62:20
**authority (10)**
59:12,16;63:13;
67:16,19;68:1,13;
69:1;95:19,24
**automatically (1)**
62:12
**available (5)**
40:12;41:13;50:18,
22;112:6
**Avenue (15)**
6:4;7:12,20;9:13,
22;10:21;11:4,12,20;
12:13,22;13:4;14:4,
12;15:4
**avoid (1)**
30:3
**aware (3)**
32:21;82:10;121:6
**away (1)**
47:3;50:5;54:20;
76:3

26:13;27:13;28:11;

**B**

**back (18)**
20:24;21:17;44:22;
45:21;47:22;51:21;
58:16;80:12;96:3;
98:24;100:7;107:4,9;
109:2;113:4;115:6;
117:12;123:3
**backed (1)**
43:6
**backwards (1)**
119:3
**bad' (1)**
19:15
**Baer (1)**
76:4
**BALLARD (1)**
15:19
**ballot (14)**
102:18;103:4,7,20;
104:3,6,17,18;105:8,
22,22,24;113:10;
119:1
**Ballots (7)**
2:6;23:25;103:19,
20;105:1;106:7;113:8
**Bank (12)**
7:11;8:11;11:3;
12:21;15:20;18:18;
19:1;20:10;21:15;
93:11,21;102:12
**Bankr (4)**
2:12;95:20,21,23
**Bankruptcy (9)**
17:23,24;34:3;
40:18;50:16,21;65:9;
88:3;112:15
**Barbara (1)**
113:9
**BARTLETT (1)**
12:20
**base (2)**
56:16,17
**Based (5)**
20:10;83:16;88:19;
113:7;122:25
**Basic (2)**
114:11,13
**basically (7)**
32:11;55:18,22;
104:7;106:20;109:24;
114:23
**Basis (7)**
2:20,21;23:15;34:6;
95:1;107:23;111:8
**Battery (1)**
8:12
**bear (3)**
19:14;65:17;116:1
**became (2)**
32:9;83:13

**becomes (1)**
27:16
**bed (1)**
81:11
**began (1)**
24:10
**beginning (2)**
33:1;36:22
**begins (1)**
111:4
**Behalf (15)**
2:16,16;17:5;22:6;
29:3;35:13;72:1;
73:21;77:19,22;
92:11;93:11,15;
102:11;118:14
**behind (1)**
48:23
**believes (1)**
21:2
**BELKNAP (1)**
14:2
**belong (1)**
101:13
**BENDER (1)**
12:2
**beneficiaries (2)**
27:25;50:15
**BENEFIT (2)**
16:18;73:21;86:15;
95:7
**BENSON (1)**
13:19
**bent (1)**
119:3
**Berkshire (1)**
9:12
**Bernardino (4)**
16:3;59:11,15,18
**best (15)**
27:11;32:14;39:3;
40:17,19,22;46:24;
53:12,18;74:15;
77:13;120:17;121:7,
24;122:2
**better (6)**
26:25;45:19;46:24;
48:5;95:23;115:9
**beyond (1)**
47:25
**big (5)**
22:4;27:13;43:11;
64:18;124:13
**bigger (1)**
103:13
**BIGGERS (1)**
14:24
**billion (12)**
31:2,4,5,8,19;
32:24;36:4;79:22;
80:2;108:20,20;109:5
**billions (5)**
31:3;34:11,15;56:3;

111:24
**binder (1)**
  25:25
**binding (1)**
  95:19
**bit (5)**
  78:5;79:17;82:22;
  97:25;109:2
**BLACK (1)**
  7:23
**black- (1)**
  39:13
**blackline (9)**
  52:16,17;60:24;
  61:18,19;64:21;
  66:15;87:23;101:25
**black-line (2)**
  110:24;113:13
**blow (4)**
  76:25;77:1,12;
  106:22
**blown (1)**
  89:9
**blowup (1)**
  107:6
**blue (2)**
  45:3,4
**BMR (1)**
  16:4
**board (4)**
  20:24;35:5;37:10;
  70:6
**BOCKIUS (1)**
  11:2
**bold (1)**
  103:9
**booklet (1)**
  116:4
**borrower (19)**
  26:21;31:10;34:18,
  25;35:7;54:10,13,14,
  20,25;55:6,11,21;
  56:21;59:2;75:12;
  111:18;112:23;
  113:23
**borrowers (11)**
  26:17,20;27:2;
  34:19,23;35:2,3,4;
  56:3,21,23
**Boston (1)**
  9:5
**both (12)**
  29:10;31:24;33:4;
  34:4;37:17;45:7;
  46:13;85:9;92:25;
  97:21;111:7;120:25
**bottom (1)**
  101:22
**bound (3)**
  88:8;92:17;116:4
**boy (1)**
  117:8
**Boylston (1)**

9:4
**BR (2)**
  95:20,22
**breadth (2)**
  29:16;96:18
**break (1)**
  123:7
**BRIAN (2)**
  5:9;14:7
**brief (8)**
  18:17;21:1;60:18;
  88:15,17,20;106:20;
  110:12
**briefed (2)**
  97:19;112:19
**briefing (3)**
  94:16;100:20,21
**briefly (2)**
  32:22;77:24
**briefs (1)**
  21:12
**brings (7)**
  23:20;74:10,18;
  76:20;92:1;93:20,24
**broad (6)**
  33:2;47:25;61:7;
  64:10;67:17,17
**Broadway (2)**
  13:21;14:20
**broke (1)**
  58:13
**broken (1)**
  116:13
**brought (2)**
  31:18;92:21
**BRYAN (1)**
  14:18
**Bryant (2)**
  8:21;10:13
**bucket (2)**
  39:10,12
**build (1)**
  118:22
**Building (1)**
  16:4
**bunch (2)**
  43:15;109:1
**burden (3)**
  53:16;56:24;119:18
**burdens (1)**
  121:19
**burning (1)**
  95:15
**business (6)**
  31:20;57:7;65:5;
  67:10;101:7,15
**businesses (1)**
  102:14

---

**C**

**CA (2)**
  9:15;16:5

**calendar (5)**
  21:11;22:9,13,23;
  62:12
**California (1)**
  59:19
**call (4)**
  46:7;106:19;
  113:23;119:19
**called (2)**
  60:3;122:11
**calling (1)**
  115:7
**calls (2)**
  35:10,18
**came (3)**
  41:3;42:24;94:20
**can (61)**
  18:20,23;22:12,13;
  37:16;38:5;39:5;
  40:15,20;41:16;
  42:24;44:9;46:23,25;
  47:24;54:18;62:23;
  65:21;69:16;70:24;
  73:3,5,7;76:2,14;
  77:23;78:21;82:22;
  86:24,24,24,25;88:1,
  10;95:6;99:6;100:7,
  10,24;101:24;103:25;
  107:9,11;111:23;
  112:19;114:19;115:3,
  6,8,10;117:17;
  119:17;120:4,17,18,
  24;121:5,7,24;122:2;
  123:19
**capacity (1)**
  95:11
**Capital (2)**
  14:19;17:3
**capture (2)**
  25:13;51:1
**care (1)**
  18:23
**carefully (1)**
  45:15
**CARL (1)**
  7:23
**CARLSON (2)**
  15:10,16
**CARNEY (5)**
  8:25;71:5,6,9,9
**Carpenters (3)**
  26:17;27:25;34:13
**Carpenter's (1)**
  112:24
**carry (1)**
  56:8
**carve (1)**
  50:1
**carved (2)**
  27:21;38:13
**carve-out (3)**
  50:5;98:4,11
**case (51)**

25:15;29:12,19;
  30:1,3,4,14,15,21,23;
  31:16,21,22,23;32:3,
  11,18;33:18;34:19,
  21;35:8,18,25;36:6,
  10,22;37:2,4;38:16;
  46:18;48:1,1,2,7;
  51:2;57:8;75:13;79:6;
  80:13;85:15;92:22;
  98:13;99:19;100:2;
  104:5;107:16;119:4,
  8,17;120:12;123:25
**cases (10)**
  33:1;34:8;53:3;
  63:2;96:10;97:21,22;
  99:25;103:6;112:15
**cash (10)**
  26:15,21;28:2,5,9,
  10;35:1,3;54:15,18
**caught (1)**
  84:10
**caused (1)**
  77:10
**causes (1)**
  32:6
**caution (1)**
  122:3
**CAVE (1)**
  14:18
**CC (2)**
  2:2,11
**cede (2)**
  17:11;28:15
**Center (2)**
  7:4;95:21
**centerpiece (2)**
  28:13;32:23
**central (1)**
  44:5
**cents (5)**
  40:9,24;41:7,8,14
**Certain (7)**
  11:11;43:18,18;
  46:4;77:7;85:4;
  110:16
**certainly (12)**
  29:7;30:5,6;34:9;
  38:19;48:23;49:5;
  99:23;100:4;105:21;
  107:6;110:4
**certainty (1)**
  19:17
**Certification (1)**
  2:13
**certified (1)**
  34:14
**cetera (1)**
  68:15
**Chambers (6)**
  5:14;23:16;115:7,
  16,21;118:15
**change (16)**
  27:9;38:8;49:22,22;

51:16,22;52:4,12;
  54:4;55:15;62:25;
  69:4;88:6;100:3;
  105:3;113:10
**changed (4)**
  41:6;51:18;52:3;
  69:20
**changes (10)**
  27:8,8;28:19;57:2;
  59:3;69:15,17;
  113:14;114:25;
  123:13
**channeled (3)**
  111:19,21;112:6
**channeling (2)**
  111:16;112:24
**Chapter (12)**
  2:5;3:3,5;24:2,3;
  31:21;35:8;36:6;
  38:19;40:6;57:8;
  112:15
**characterization (1)**
  80:19
**characterize (1)**
  108:10
**characterized (1)**
  108:23
**charges (4)**
  60:15;63:14;67:11;
  68:15
**chart (8)**
  24:22;25:10,22;
  28:22;57:19,21;75:2;
  108:6
**Chase (1)**
  10:4
**check (1)**
  62:20
**Chief (1)**
  16:19
**choose (1)**
  72:23
**chosen (1)**
  19:13
**circle (1)**
  106:14
**Circuit (11)**
  18:18;19:2,2,6;
  20:15;21:13,14;48:2;
  72:6;95:18;97:23
**circuits (1)**
  48:3
**Circuit's (1)**
  50:11
**circumstances (1)**
  95:12
**City (1)**
  12:5
**claim (49)**
  38:21,23;39:11,19;
  53:23;55:2,9,10,20;
  56:1,7,13;59:23,24;
  60:1,1,14;61:12,12,

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg                          Pg 130 of 147

August 21, 2013

13;62:2,2,13;63:9,13,
14,19,23,24;64:10,11,
13;65:15,20;66:14,22,
25;67:14;68:4,6,11,
14,20,24;84:21;85:4;
110:15;111:24;
117:24
**claimant (1)**
44:9
**claimants (20)**
28:4;32:19;42:17,
22;43:21;44:18,21;
45:6;56:8;81:19,25;
94:11;96:25;97:5;
98:24,25;99:13;
100:5;106:20;107:8
**claimants' (1)**
42:11
**claimant's (1)**
75:12
**claims (132)**
25:17,17,18;26:6,
17,19;27:1,15;31:2,4,
5,6,10,25;32:6,11;
33:3,9,9,11,13,18,21,
22,25;34:1,4,4,6,11,
12,15,18,19;35:7,10,
12,18;36:2,3,4;37:13,
20,21;38:15,18,18,22;
40:14;46:13;54:2,7,
13,14,16,20,21;55:6,
11,21;56:3,6;59:14,
23;60:3,4,5,7,9,12,23;
61:1,7;62:3,4,10,22;
63:8,16;64:6,8,16,17,
20,22,23;65:2,10,12,
12,14;66:10,25;67:7,
9,15,16,18,21,21,24;
68:2;83:14,18,22;
84:5,13;85:1,3,5;86:1,
10;101:7,10,13,14;
108:18;109:6;110:5,
10;111:4,7,19,20,21;
112:1,5,23,23,24,25;
119:25
**clarification (1)**
37:22
**clarifications (2)**
37:15;38:2
**clarified (2)**
89:11,13
**clarify (2)**
77:4,13
**clarifying (1)**
90:12
**clarity (2)**
46:23;83:2
**Class (48)**
2:12,14,14,17,18;
12:3,12;15:11;17:11,
19,21;19:8,21;20:2,
17,21;21:2;22:3;
26:17,19;27:20,22,25;

28:1;31:5,10;34:13,
25;39:4,5,11;51:5,14;
54:14,24;55:19,20,21,
23;56:9,14,15,15;
60:3;123:15,15,17;
124:5
**classification (1)**
49:23
**clause (1)**
98:23
**clear (14)**
19:13;22:3;29:21;
42:25;43:3;47:3;71:8;
79:5;83:7;85:3;91:5;
93:13;99:3;103:18
**clearly (4)**
89:10,15;92:14;
94:5
**CLEARY (1)**
8:2
**Cleveland (1)**
7:21
**client (1)**
92:14
**clients (1)**
111:23
**close (2)**
106:13;124:22
**closer (2)**
26:24;77:20
**closest (1)**
41:3
**closing (1)**
31:18
**Code (6)**
17:24;23:5;40:18;
65:9;72:5;82:2
**codefendants (1)**
50:14
**collateral (6)**
37:17;77:6,7,8,10;
84:20
**colleagues (1)**
103:7
**collection (1)**
35:6
**collectively (1)**
76:1
**colloquy (2)**
88:13;110:21
**combination (1)**
28:7
**comfort (1)**
69:3
**comfortable (2)**
40:19;76:17
**comforted (4)**
88:11,12,13,15
**comforting (2)**
67:25;81:20
**coming (5)**
28:9,9,10,12;
117:12

**commence (1)**
118:4
**commenced (1)**
30:21
**commencement (1)**
117:18
**comment (1)**
69:7
**comments (3)**
20:11;81:12;124:15
**Committee (15)**
6:3,14;7:3;9:3;
22:6;24:6;29:4;32:6,
8,18;33:17;42:13;
44:13;77:8;118:14
**committee's (1)**
108:11
**communicated (1)**
53:24
**Company (1)**
35:13
**comparable (1)**
27:3
**compare (1)**
41:12
**compared (1)**
87:22
**complain (1)**
27:17
**complained (1)**
73:9
**complaining (1)**
79:22
**complete (1)**
105:11
**completely (4)**
30:6,11;42:18;
87:19
**complex (2)**
35:24;36:20
**complicated (1)**
124:6
**comply (2)**
40:17;120:4
**components (2)**
57:11,12
**comprehensive (1)**
78:13
**compromise (1)**
32:19
**compromises (2)**
57:12,12
**concept (2)**
26:23;40:10
**conceptually (1)**
84:8
**concern (8)**
47:3;49:7;85:22;
92:22;94:14;96:17;
100:9;116:18
**concerned (3)**
82:7;84:11;123:23
**concerning (2)**

33:24;38:10
**concerns (2)**
106:21;123:19
**conclude (1)**
96:9
**concluded (2)**
106:19;124:25
**concludes (2)**
39:3;124:10
**conclusion (4)**
38:4;109:23;
115:10;121:15
**conclusions (2)**
108:12;117:5
**condition (3)**
43:19;47:15;94:18
**conditionally (1)**
114:23
**conditioned (1)**
42:11
**conditions (2)**
81:15;107:2
**conduct (3)**
47:11;94:7;98:12
**confer (1)**
98:25
**confess (1)**
102:15
**confirm (3)**
37:16;99:1;102:8
**confirmability (2)**
79:16;81:8
**confirmable (4)**
84:15;85:23;86:7;
88:19
**Confirmation (56)**
2:7,8,9;23:25;24:1,
14;39:1,2;41:24,24;
42:15,20;43:7,8,10,
13,15,20;44:16;47:5,
20;49:2,6;53:16;
56:19;72:5,19;73:25;
74:15;81:14,16,17;
83:2,12;92:13;93:16;
94:3,24;95:13;96:6,
18,20,23;98:17;99:2;
107:15;112:3;115:25;
117:18;118:19;119:2,
20,22;120:2;124:21,
22
**confirmed (8)**
42:4;104:2,8;110:2,
4,8;111:25;124:17
**conflicts (1)**
20:9
**congratulate (1)**
124:12
**connected (1)**
122:21
**connection (9)**
34:21;37:12,20,24;
46:9,10;107:15,25;
122:16

**consensual (6)**
29:6;103:13,13;
106:2;107:19;124:22
**consensually (1)**
33:8
**consensus (6)**
28:17;29:12,14;
30:22;121:20,22
**consent (8)**
35:6;45:16,17;
81:24;97:4;103:4,8,
10
**consenting (16)**
24:7;32:18;45:6;
81:19,25;96:25;97:5;
98:24,25;99:12;
100:5;103:1,3;
105:25;106:20;107:8
**consents (1)**
102:19
**consequences (2)**
52:2;57:14
**Consider (3)**
2:19;20:12;25:1
**considering (2)**
47:12;75:12
**considers (1)**
77:8
**consist (1)**
25:9
**consistent (4)**
40:22;42:12;45:23;
99:21
**consolidation (1)**
36:1
**constant (1)**
84:12
**constituencies (1)**
99:7
**constituency (3)**
37:4;99:7,9
**contact (2)**
115:16;118:16
**contacted (1)**
118:15
**contemplate (2)**
97:11;119:12
**contemplated (3)**
31:11;35:17;97:18
**contemplates (1)**
40:5
**contemplating (1)**
118:24
**contemplation (1)**
40:21
**contested (6)**
43:14,14;44:2;
117:8,21;118:23
**context (5)**
30:19;33:19;35:8;
98:13,18
**continue (3)**
23:14;92:13,19

**continued (1)**
42:12
**continues (1)**
32:2
**continuing (2)**
43:20;78:3
**contract (4)**
71:23;72:16;78:24;
79:1
**contrary (2)**
72:5;88:23
**contributing (1)**
109:5
**contribution (7)**
28:12;32:24;36:2,
15;79:22,25;80:3
**control (3)**
43:7;44:20;96:7
**controlling (2)**
18:18;51:6
**conversation (1)**
107:8
**conversations (1)**
59:25
**copies (2)**
76:2;116:9
**copious (1)**
48:24
**coproponents (6)**
42:13;43:1;90:21;
93:6;94:14;96:5
**coproponent's (1)**
115:1
**co-proponents (1)**
69:4
**copy (3)**
116:5,13,17
**Coram (2)**
95:22;97:20
**CORDARO (1)**
5:18
**Corp (1)**
95:22
**corporate (1)**
25:10
**Corporation (4)**
14:3;16:18;71:17;
73:22
**Corrado (2)**
114:15,16
**correctly (2)**
45:5;91:8
**corresponding (1)**
52:5
**costs (4)**
28:2;60:15;67:11;
68:15
**Counsel (10)**
2:14;6:14;7:3;
16:19;20:9;59:15,25;
62:7;71:23;115:1
**counsel's (2)**
61:4;62:1

**country (2)**
33:5;63:3
**counts (1)**
82:16
**County (4)**
16:3;58:19,21;
59:18
**couple (8)**
24:19;46:3;48:8;
49:24;109:11;113:16;
122:5;123:19
**course (5)**
65:5,18;67:10;
113:6;120:13
**COURT (380)**
17:2,13,15,22,25;
18:3,6,9,12;20:7,14;
21:9,19,22,25;22:13,
16,18,22;23:6,13,17,
19;24:10,17;25:5;
27:5,21;28:3,19;29:6,
23;30:9,11;32:21;
33:11;34:3,5,8,14;
35:21;36:8;37:6;
38:21,25;39:2;40:7,
23;41:10,15,18;44:3,
14,20;45:2,5,9,14,19;
46:2,7,18;47:2;48:13,
15,18,20,22,25;49:4,
15,17;50:16,21;51:4,
10,12,14,19,21;52:8,
11,16,19,21,24;53:3,
5,17,19;54:1,3,22;
55:2,5,16,25;56:10,
12,18,20,23,25;57:20,
25;58:2,5,8,11,15;
59:3,5,7,15,16,20;
61:2,4,8,10,14,18,21;
62:1,7,15,23;63:15;
64:1,4,6;65:16,21,24;
66:3,7,9,12,17,21,23;
67:3,6;68:3,7,25;69:2,
4,8,14,16,19,22;70:1,
2,7,11,13,18,21,23;
71:1,4,7,14,21,23;
72:6,8,12,21;73:5,7,
15,18;74:2,7,11,13,
21,21;75:2,5,14,17,
21,23,25;76:3,7,9,12,
16,19;77:3,15,20;
78:7,11,21,24;79:3,
10,12,21;80:9,11;
81:3,3,5;82:3,8,12,14,
23;84:9,19;85:7,10,
12,14;86:3,8,19,21,
23;87:6,9,13,25;88:3,
6,21;89:21,25;90:2,4,
6,8,10,13,16,17,20,24;
91:4,5,11,15,18,20,
25;92:4,6,8;93:5,9,18,
22;94:2;95:18;96:6;
97:23;98:5,9,14,17;
99:1,2,9,15,17,22,25;

100:14,16;101:2,4,19,
24;102:2,5,15,21,23;
103:22;104:1,12,14,
18,22,25;105:3,5,9,
13;106:8,15,25;
107:10,18;108:2,5,16,
23;109:13,15,17,20;
110:7,14,22;111:9;
112:11,18,21;113:1,3,
9,12,18,21,25;114:2,
3,5,5,7,10,13,14,16,
16,21,23;115:8,10,13,
15,22,23;116:1,5,10,
15;118:3,10,16,20,22;
119:3,16,22;120:5,7,
8,10,15,20,24;121:5,
11,13,15,25;122:2,6,
11,17,18,20,22,24;
123:6,8,11,19;124:6,
12,19
**CourtCall (1)**
122:9
**courtroom (1)**
87:16
**courts (3)**
33:4;36:8;50:15
**Court's (3)**
24:4;49:5;107:5
**cover (1)**
101:7
**covered (4)**
51:17;60:3;94:6;
99:9
**covers (1)**
47:10
**created (2)**
106:9;107:14
**creating (1)**
111:24
**Credit (1)**
70:5
**creditor (4)**
27:12;30:23;40:12;
57:16
**creditors (22)**
24:7;26:6,14,16;
27:4;28:1,8;29:17;
30:23,25;31:12;
32:15;33:6;39:4,15;
41:13;53:11;56:15;
105:7,16;112:7;
118:25
**Creditors' (8)**
6:3,14;7:3;22:6;
24:6;29:3;108:10;
118:14
**CRO (1)**
32:5
**CRUTCHER (2)**
14:10;92:11
**crystal (1)**
99:3
**CURCHACK (1)**

9:25
**cure (2)**
33:13;72:17
**current (1)**
32:20
**currently (2)**
26:8;54:11
**Curtis (1)**
20:9
**cut (2)**
62:20;103:20
**CUTLER (1)**
7:2

**D**

**DAN (2)**
12:17;124:4
**DANIEL (2)**
10:16;13:24
**dark (1)**
88:22
**date (11)**
26:24;68:7,19;72:5,
9,19;93:16;117:2;
118:1;121:10,15
**dates (4)**
115:14,24;120:15;
121:21
**DAVID (1)**
12:7
**DAY (10)**
7:18;49:3;55:12;
89:5,7,14;93:7,12;
115:20;118:8
**days (7)**
24:19;75:11;87:13;
118:18,19;119:10,14
**DC (1)**
16:21
**de (1)**
31:12
**deadline (4)**
24:18;75:11;
116:19,24
**deadlines (1)**
116:23
**deal (17)**
21:10;29:12;32:1;
37:9;54:22;57:22;
61:15;65:13;95:5,5,
14;96:19;117:14;
119:24;120:13;122:4;
124:7
**dealing (7)**
23:11;61:5;62:3;
63:8;65:3;108:12;
121:8
**deals (8)**
63:16;64:4,6,7;
65:12;67:15;107:22;
119:23
**dealt (3)**

51:5;60:18;107:3
**debt (1)**
84:23
**debtor (12)**
25:6,15;27:4,18;
31:17;35:5;38:16;
42:13;44:13;82:4;
101:13;107:12
**Debtors (31)**
2:17;17:6,10,17,18;
25:7,9,11,12,14;26:7,
8,9;32:4,12,18;34:12;
36:5;54:8,8,13;59:8;
63:22;72:3;73:24;
78:14;85:6;98:25;
101:8,16;102:4
**Debtors' (8)**
3:3;24:5;26:13;
39:23;57:7,8;102:13;
105:8
**December (1)**
121:10
**decide (11)**
20:21;43:4,17;
47:16;83:3;86:23;
87:1;88:7;89:14;
94:16,24;96:10;
98:17;100:22;105:14
**decided (4)**
47:6;48:5;50:4;
78:19
**decides (1)**
94:25
**deciding (4)**
47:17;98:15;103:5;
117:12
**decision (8)**
50:11;57:4;72:4,19,
20;96:6,7;99:2
**decisions (1)**
94:20
**decree (1)**
35:6
**deemed (2)**
104:7,19
**default (3)**
78:22;79:1,5
**defendant (1)**
50:18
**defendants (5)**
18:23;19:7,17;
46:16;50:24
**defer (3)**
91:4;102:7;112:16
**defined (3)**
39:4;63:20;66:20
**defines (2)**
22:19;66:14
**definition (7)**
61:6;64:9;66:9,24;
67:14,16;68:24
**Del (2)**
95:20,23

**delay (3)**
19:19;29:19;31:15
**demonstrate (1)**
56:20
**Denney (6)**
18:18;19:1;20:15;
21:15;46:18;51:5
**deny (1)**
21:5
**DEPARTMENT (2)**
5:2,12
**depend (1)**
117:20
**depending (1)**
26:6
**deprive (1)**
19:8
**derivative (2)**
101:12,13
**describe (3)**
28:17,18,21
**described (1)**
30:21
**describes (1)**
39:11
**describing (1)**
67:23
**designed (2)**
40:3,21
**desirability (1)**
19:13
**desk (1)**
116:4
**detail (6)**
59:2;70:19,20;
110:1;111:1,6
**detailed (1)**
32:8
**details (1)**
32:21
**determination (1)**
53:23
**determine (8)**
84:4,7,12;85:20,21,
24,25;89:7
**determined (1)**
103:7
**determines (4)**
35:21;88:3,18;
90:17
**determining (1)**
111:15
**Deutsche (6)**
11:3;12:21;18:18;
19:1;21:15;93:11
**developments (1)**
31:22
**DEVORE (1)**
9:8
**devote (1)**
32:3
**diff (1)**
52:1

**different (14)**
31:16;33:6,9;51:24,
25;52:1;63:4,4,5;
64:25;65:1;90:7;
98:19;107:19
**differently (1)**
94:11
**difficult (7)**
19:20;31:13;34:8,
16;44:3;105:14;
119:20
**diminution (3)**
77:9;83:20,21
**direction (3)**
31:16,23;93:14
**directly (2)**
85:2;97:5
**disagree (5)**
89:17,18,22;90:1;
109:7
**disagreeing (1)**
104:17
**disagreement (1)**
36:25
**Disclosure (87)**
2:3;3:3;23:22;24:3,
13,18;25:2,20,22,23;
26:5;27:10;28:22;
29:6,10;30:19;37:24;
38:3;39:7,10;41:2,21,
22;42:25;51:24;52:5,
14,15,15,17;53:21;
55:8;56:5;57:2,5;
59:1,6,8;60:24;61:14;
62:24;63:7,15,17;
64:1;66:18;69:25;
71:11;73:1,24;74:6,
17,20;75:8,9;77:2;
79:4,9,19;80:21;83:8;
85:15;87:11,12,15,18,
21,22;88:12;90:25;
91:6,12;96:5;100:17,
20;107:22;108:7,9;
109:19;110:9,24;
111:6;112:9,10;
114:24;117:14;
120:11
**disclosures (5)**
76:24;78:13,15,16;
108:4
**discovery (2)**
119:8;123:25
**discrete (3)**
22:9;25:3;36:23
**discretion (2)**
42:2;45:5
**discrimination (2)**
53:18;56:24
**discussing (2)**
64:11;123:4
**discussion (11)**
20:20;78:5;79:9;
85:12;87:20;108:9,

10,17;109:5;110:25;
112:16
**discussions (1)**
95:10
**dispute (3)**
38:10;119:8;123:25
**disputes (7)**
32:1;33:23,24;
35:23;36:21;87:19;
124:21
**distinguish (1)**
96:16
**distributable (2)**
28:6;56:14
**distribution (8)**
25:7;26:12,21;35:3;
39:5,14,22;112:7
**distributions (10)**
26:14,15,16,20;
28:8;35:6;54:24;
57:14,15;81:23
**district (2)**
28:3;34:14
**diverse (1)**
29:17
**divert (1)**
47:2
**Doc (1)**
2:2
**Doc# (2)**
2:11;3:2
**docket (4)**
58:17,24;59:6;
71:20
**document (1)**
107:4
**documents (6)**
24:4;44:23;45:7;
76:15;97:16,17
**dollar (9)**
55:19;56:1,7,13;
79:22,25;80:2;95:15;
110:15
**dollars (18)**
26:23;27:14,15;
28:1;29:20;31:2,3,5,8,
9,19;32:24;33:14;
34:12,15;35:4;36:4;
55:3
**done (19)**
27:9;28:18;37:10;
58:16;61:22;77:4;
82:16;83:2,4;95:5,15;
103:15,19;113:19,20,
21;115:3;119:12;
124:16
**DORR (1)**
7:2
**DOUGLAS (1)**
6:8
**down (7)**
42:2;43:12;49:16,
21;58:13;94:15;

123:23
**draft (1)**
76:2
**drafted (10)**
20:25;21:12,12;
47:10;87:10;94:6;
96:21;97:16;98:3;
107:17
**drafts (1)**
76:15
**draw (1)**
115:10
**drawing (1)**
20:24
**driven (1)**
83:24
**driver (1)**
27:13
**drop (1)**
53:19
**dropped (5)**
38:16,24,24;53:13,
15
**drove (2)**
83:10,16
**due (2)**
62:21;113:6
**DUNN (1)**
14:10;92:10
**during (2)**
36:5;38:19
**dwell (1)**
94:13
**dynamic (1)**
101:3

**E**

**earlier (11)**
19:18;46:23;54:23;
68:12;74:14;77:3;
81:10,12;88:14;94:3,
14
**early (10)**
34:18;38:15;43:13;
59:19;86:6;88:24;
90:15;98:1;111:5;
117:3
**earmarked (1)**
55:10
**earnest (1)**
24:11
**easy (3)**
95:9;103:25;124:20
**ECF (2)**
59:6;123:20
**ECKSTEIN (105)**
6:7;22:5,6,14,17,
21;24:9;28:13,16;
29:1,2,3;30:10,13;
37:8;38:23;39:24;
40:10;41:9,12,16;
42:23;43:11,25;

44:10,19,22;45:3,13,
15,21;46:6,8,21;
48:10,14,16,19,21;
49:24;53:6;57:11;
77:3;81:10;88:13,25;
89:10,22,23;90:1,3,5,
7,9,11,14,17;92:21;
96:13,14;97:25;98:7,
10;99:4,11,16,18,23;
100:2,15;101:1,3,17,
20;102:3,6;106:13,
16;107:2,11;110:19,
20,23;112:8,12,19,22;
113:2;115:5,9,11,15,
21;119:15;120:3,6,8,
14,17,22;121:1,12,14,
18;122:1
**Eckstein's (3)**
24:16;53:10;111:23
**effect (3)**
42:14;105:21;
111:17
**effective (3)**
26:24;68:7,19;
121:9
**effectively (2)**
67:20;103:20
**effects (1)**
97:6
**effectuate (1)**
26:11
**efforts (1)**
32:2
**eight (1)**
40:8
**eighteen (2)**
30:20;36:21
**either (11)**
43:3;47:21;48:8;
49:18;53:24;70:1;
84:21;85:2;89:19;
103:17;104:17
**elaborate (1)**
110:18
**Eleven (1)**
13:13
**eliminate (1)**
37:24
**eliminating (2)**
33:23;38:9
**ELISE (1)**
6:9
**ELLIS (2)**
7:10;102:11
**ELROD (1)**
10:24
**else (4)**
57:22;58:20;65:16;
85:20
**e-mail (1)**
69:19
**EMANUEL (1)**
11:18

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg
Pg 133 of 147

August 21, 2013

**embark (1)**
29:18

**embodied (1)**
32:20;57:12

**empathize (1)**
119:17

**empty (1)**
89:9

**encompass (2)**
64:10;67:17

**encompassed (1)**
29:16

**encouraged (1)**
54:17

**end (14)**
22:8,13,22;24:11;
29:24;41:14;43:16;
44:2;49:3;55:12;89:5,
6,14;100:9

**endorse (3)**
30:5;46:22;106:23

**enforce (1)**
38:17

**enhanced (1)**
32:23

**enjoy (1)**
120:23

**enormous (1)**
124:16

**enough (9)**
52:25;56:8;64:10,
13;67:17,17;69:2;
80:5;90:10

**ensure (1)**
34:22

**entailed (1)**
34:8

**entails (1)**
19:19

**enter (1)**
113:7

**entered (2)**
36:19;76:6

**entire (2)**
100:10;122:9

**entirety (1)**
62:14

**entities (3)**
25:14,15;27:4

**entitled (11)**
37:20;40:4;76:25;
77:5;78:25;83:19;
84:14;89:7,16;90:18,
21

**entitlement (3)**
37:14,18;78:18

**Entry (4)**
3:4;23:22;24:5;
116:24

**envisioning (1)**
68:23

**equity (2)**
85:6,8

**error (3)**
18:16;19:25;20:7

**eScribers (1)**
3:21

**especially (2)**
57:5;95:9

**ESQ (43)**
5:8,9,18;6:7,8,9,10,
19,20;7:7,15,23;8:7,
15,16,25;9:7,8,17,25;
10:7,8,16,24;11:7,15,
24;12:7,8,17,25;13:8,
16,24;14:7,15,24;
15:7,16,25;16:7,15,23

**essential (1)**
36:16

**essentially (6)**
30:21;41:9,17;
55:17;72:3;97:16

**establish (1)**
26:11

**established (2)**
27:24;72:6

**Establishing (1)**
2:3

**estate (11)**
31:25;32:10;33:2,3;
39:23;47:14,25;
99:10;105:8;109:24;
111:7

**estates' (1)**
32:15

**estimate (1)**
26:7

**estimated (1)**
55:5

**estimates (1)**
55:11

**et (2)**
14:19;68:15

**ETKIN (16)**
11:15;75:5,6,7,15,
16,18,22,24;76:3,5,8,
11,12,13,15

**ETS (11)**
27:5,9,12,12,14,15,
19,21;39:10;49:24;
51:17

**evaluate (2)**
20:21;105:17

**even (14)**
25:2;51:6;56:7;
60:20;65:14;68:19;
72:13;81:2;84:2,4,6;
85:22;105:8;119:19

**event (4)**
43:7;97:14;106:22;
110:3

**events (1)**
57:7

**everybody (11)**
48:23;56:14;82:19;
85:23;87:16;100:15;

106:2;107:13;118:12;
119:14;121:6

**evidence (1)**
107:16

**exact (2)**
55:13;67:22

**exactly (7)**
44:23;49:12;82:19,
21;86:6;97:21;115:6

**examiner (3)**
108:17;109:7;
110:14

**examiner's (6)**
32:7;95:7;108:11,
12;109:23;110:10

**example (7)**
19:14;50:19;67:8;
77:10;84:23;86:15;
102:17

**except (2)**
76:22;78:17

**exchange (1)**
33:1

**Exclusive (1)**
3:4

**Exclusivity (6)**
3:2;21:21;23:2,3,3,
4

**exculpated (1)**
95:17

**exculpation (24)**
47:8,13,25;48:10;
82:4;94:4,9,21;95:1;
96:19;97:9,13,15;
98:2,12,23;99:20;
100:23;105:25;106:1,
4,23;107:7,17

**Excuse (1)**
30:10

**excused (2)**
69:12,16

**exercise (1)**
89:10

**Exhibit (1)**
109:18

**existed (1)**
32:11

**exists (2)**
28:19;62:12

**expect (5)**
73:25;74:14;95:16;
106:19;107:7

**expected (2)**
26:4;27:15

**expense (2)**
29:20;31:15

**expenses (1)**
36:2

**experiencing (1)**
119:18

**expire (1)**
78:1

**explain (2)**

106:2;107:13;118:12;
119:14;121:6

**explains (1)**
51:24

**explanation (1)**
107:23

**expressed (2)**
30:7;94:14

**expressly (1)**
89:3

**expunge (1)**
54:12

**Extend (5)**
3:2;23:1,3;100:24;
101:15

**extended (1)**
78:2

**Extending (1)**
3:4

**extends (1)**
47:11

**extension (1)**
21:21

**extensions (1)**
23:5

**extensive (3)**
32:9,10;111:6

**extent (16)**
28:24;38:6;40:18;
45:8;48:12;63:19;
77:12;81:3,20;82:16;
91:17;92:19;97:5;
103:10;115:13,23

**extraordinary (1)**
112:14

### F

**F2d (1)**
19:3

**F3d (1)**
18:19

**facilitate (1)**
32:5

**facing (1)**
100:25

**fact (22)**
29:11,15;35:22;
37:11,16;38:17;40:2,
7;44:24;47:7;54:19;
63:8;65:13;67:23;
81:19;92:16;111:23;
112:5,14;117:5;
121:9,24

**factor (1)**
112:2

**factored (2)**
55:8,10

**factors (1)**
111:14

**factual (1)**
95:1

**failure (1)**
80:22

**fair (9)**
36:9,20;39:25;
53:18;80:5,14;94:19;
100:12;109:25

**fairly (6)**
17:7;19:9,21;37:11;
77:23;109:22

**Fairness (1)**
2:19

**faith (2)**
95:6;100:13

**fall (5)**
44:5;45:16;49:3,3;
53:15

**familiar (6)**
41:22;57:3;96:22;
97:20,20;121:9

**Fannie (2)**
50:2,4

**far (3)**
67:16;100:24;
111:22

**fashion (1)**
26:18

**fast (1)**
105:5

**fastest (1)**
119:19

**favor (8)**
55:19;87:3,4;
102:18;103:5,8;
105:24;106:3

**favorable (1)**
47:13

**Fed (1)**
2:11

**Federal (3)**
15:12;33:4;35:5

**feedback (1)**
100:8

**fees (9)**
43:18;60:15;64:24;
67:11;68:15;79:1

**FELD (1)**
10:11

**felt (1)**
87:19

**few (4)**
29:17;36:23;47:23;
98:22

**fewer (1)**
36:21

**FGIC (3)**
7:19;54:6;121:15

**FHAVA (1)**
28:11

**FHFA (20)**
13:20;37:1,3;38:13,
15,19;39:11,16,20;
40:2,4,11;41:6;53:7,
17,22;74:5,7,14;109:3

**FHFA's (1)**
53:23

**fiduciaries (6)**
  47:12,14,25;94:10;
  95:10;98:13
**fiduciary (2)**
  95:11;99:10
**fifteen (1)**
  36:3
**Fifth (1)**
  97:23
**fifty- (1)**
  56:15
**fighting (3)**
  87:4,14,17
**figure (2)**
  19:18;87:4
**File (6)**
  3:5;26:25;38:23;
  72:22;73:11;76:18
**filed (29)**
  18:14;23:1;24:2;
  25:24;27:10;38:21;
  49:23;50:9;57:5;
  58:18;59:21;60:22;
  69:24;70:5;71:2,17,
  19,21;72:21;73:10,17,
  23;74:5,25;92:2;
  93:21,25;101:10;
  108:1
**files (1)**
  64:13
**Filing (8)**
  2:8;3:2;24:4,12;
  36:5;58:17;116:23;
  123:20
**Final (12)**
  2:20,21;17:20;18:3,
  6,8,15,24;19:20;23:2;
  76:5,9
**Finally (2)**
  35:23;54:9
**Financial (1)**
  7:11
**find (23)**
  42:3;45:2;46:4;
  48:8;49:6;55:7;59:22;
  64:20;66:23;77:5,9,
  12;87:13;89:4,8;
  94:15;96:2,8;100:9,
  17;108:6;116:17;
  124:9
**findings (2)**
  108:12;117:5
**finds (1)**
  96:22
**fine (9)**
  23:17;58:8;68:16;
  76:19;103:13;106:6;
  110:3;112:18,21
**finish (1)**
  100:3
**FIRM (1)**
  16:2
**firms (1)**

29:23
**first (16)**
  17:9;31:23;39:1;
  47:10;48:21;58:12,
  18;63:1;73:12;80:16;
  83:10,25;96:15;
  104:5;119:15;123:19
**fit (3)**
  55:13;63:9;117:7
**five (2)**
  27:15;40:8
**flags (1)**
  52:6
**FLANIGAN (5)**
  12:17;124:3,4,7,8
**flexibility (2)**
  45:24;107:13
**FLIMAN (1)**
  13:24
**flip (3)**
  24:21;28:22;57:18
**Floor (5)**
  5:15;8:22;9:14;
  11:21;15:22
**flow (1)**
  52:2
**focus (4)**
  38:6,17;85:15;95:3
**focused (5)**
  31:17;32:13;77:11;
  83:25;97:10
**Foerster (4)**
  17:5,16;23:1;123:4
**folks (1)**
  95:4
**followed (2)**
  24:4;26:15
**following (2)**
  18:17;103:24
**footfall (1)**
  84:12
**foreclosing (1)**
  68:18
**foreclosure (2)**
  23:12;68:17
**forget (1)**
  115:19
**forgoing (1)**
  36:12
**Form (10)**
  2:6,18;23:25;26:14,
  21;42:16;43:21;
  44:17;45:10,11
**forms (1)**
  23:16
**forth (5)**
  49:13;50:19;56:4;
  61:24;103:1
**fortunately (1)**
  121:20
**forward (3)**
  99:3;100:10;119:4
**found (5)**

50:6;52:15;60:23;
  64:8;83:11
**four (3)**
  31:2,19,22
**Fourth (4)**
  19:2,6;32:12;
  101:22
**frame (1)**
  19:20
**framework (2)**
  24:15;32:9
**FRANKEL (1)**
  6:2
**frankly (2)**
  38:11;90:5
**Freddie (4)**
  8:20;71:3,4,10
**FREDERICK (1)**
  12:8
**free (1)**
  38:14
**FREJKA (1)**
  6:9
**Friday (3)**
  78:1;115:19;117:13
**FRIEDMAN (2)**
  6:20;13:19
**front (1)**
  84:12
**fronts (1)**
  94:5
**full (16)**
  25:17,18;35:19;
  37:3,13;48:5;63:24;
  68:5,8,10,14;94:16;
  98:17;100:21;111:22;
  112:16
**fully (4)**
  36:10;48:16;50:23;
  96:2
**fundamental (2)**
  36:25;90:14
**funded (2)**
  26:22;54:19
**Funding (5)**
  25:11,12;54:10;
  56:22;71:17
**funds (2)**
  111:21;112:6
**Further (8)**
  3:4;23:15;37:15;
  69:9;82:1;83:5;87:20;
  91:3
**future (1)**
  80:23

**G**

**gain (1)**
  19:17
**GARRITY (4)**
  11:7;93:10,10,18
**gave (4)**

69:1;86:1,2;88:5
**general (4)**
  25:5;60:25;96:18;
  97:7
**generally (6)**
  28:21;29:10,12;
  34:20;46:22;96:22
**generously (1)**
  37:11
**GERARD (3)**
  10:7;77:18,21
**gets (4)**
  43:3;85:23;86:16;
  99:9
**GIBSON (2)**
  14:10;92:10
**given (6)**
  27:20;39:25;99:6,
  11;112:13;121:24
**gives (2)**
  84:25;118:2
**giving (3)**
  22:2;77:25;123:20
**Glo (1)**
  115:19
**global (35)**
  24:15,16;28:13,17;
  29:15,25;32:14,19,22,
  23;33:12,19;34:7,16;
  36:6,10,16,19;38:5;
  40:13;42:25;57:10;
  78:19;83:13;84:3;
  86:9,14,16;92:15;
  94:21;98:21;111:1,3;
  115:18;119:25
**GMAC (1)**
  54:8
**GMACM (6)**
  25:8,9,10;26:8;
  27:1,2
**goal (1)**
  45:23
**goes (7)**
  19:11;82:1;88:4;
  105:22,24;106:1;
  111:1
**GOLDEN (4)**
  5:8;10:16;104:10,
  11
**GOLDSTEIN (1)**
  13:16
**Good (22)**
  17:4,14,15;29:2;
  41:25;42:19;47:4,24;
  48:4;71:25;73:20;
  75:6;77:18;82:17;
  92:10;93:10;95:6,8;
  100:13;102:10,10;
  117:10
**Goren (9)**
  21:23,25;22:1,24,
  25,25;23:8;56:2;64:8
**GOTTLIEB (1)**

8:2
**Grand (1)**
  9:13
**granted (2)**
  23:2,7
**Granting (4)**
  2:9,12,22;116:24
**gratitude (1)**
  32:2
**GRAY (1)**
  9:2
**great (4)**
  26:1;29:11;32:1;
  105:16
**greatly (1)**
  32:23
**Gropper (1)**
  104:9
**gross (2)**
  98:4,11
**ground (2)**
  78:19;100:19
**Group (4)**
  10:3;20:11;76:21;
  77:22
**grouped (1)**
  27:18
**groups (3)**
  25:6;27:19;30:23
**Guarantee (1)**
  13:12
**guaranteed (1)**
  55:22
**GUARANTY (2)**
  16:18;73:21
**guess (4)**
  39:19;55:16;81:20;
  90:24
**guidance (1)**
  24:12
**guiding (1)**
  121:12
**GUINEY (1)**
  14:7
**GUMP (1)**
  10:11
**gun (1)**
  47:21

**H**

**HADLEY (3)**
  10:2;77:19,22
**HALE (1)**
  7:2
**half (3)**
  24:25;31:4,19
**HAMILTON (1)**
  8:2
**hand (1)**
  28:10
**handle (1)**
  27:1

**handling (2)**
20:10;21:23
**hands (3)**
42:18;44:21;107:5
**Hang (1)**
115:17
**hanging (1)**
44:1
**happen (4)**
48:7;117:17,19,21
**happened (2)**
42:23;68:19
**happens (5)**
44:5;76:24;78:18;
104:5;105:7
**happy (8)**
47:19;67:13;70:17;
72:14;73:14;74:5;
100:7;118:20
**hard (2)**
95:25;121:5
**hate (2)**
42:2;43:22
**Hathaway (1)**
9:12
**HAUER (1)**
10:11
**head (1)**
47:21
**Healthcare (1)**
95:22
**hear (17)**
21:16;40:2;57:21,
25;58:2,3;59:20;
71:23;72:25;73:12;
77:15;94:13,16;96:5;
121:4;122:3;124:1
**heard (15)**
23:6;34:24;57:23;
58:20;69:2;71:5;
73:19;74:8;90:20;
93:22;101:9;122:9,
16,21,22
**Hearing (27)**
2:6,8,19;17:6;
18:15,24;21:16;
23:25;29:7;42:25;
49:19;72:9;73:11;
75:20;76:4,5,10;
115:12,25;116:22;
117:10;118:4,7,8;
119:7;120:2;123:24
**hearings (4)**
21:8;117:7,21;
118:23
**hearing's (1)**
106:18
**heart (1)**
104:25
**held (2)**
34:20;37:25
**hell (1)**
96:8

**Hello (2)**
66:2;122:19
**help (2)**
32:5;87:24
**helpful (1)**
116:8
**Here's (3)**
39:8;57:20;67:20
**highlighted (1)**
48:23
**Hill (2)**
114:11,14
**Hoc (3)**
10:3;76:21;77:22
**Hold (8)**
66:17,21;74:11;
75:20;91:15;102:2;
118:12;119:14
**holder (2)**
63:19;92:24
**holding (4)**
25:25;35:13;47:20;
71:18
**holds (1)**
63:19
**home (2)**
83:10,16
**homework (1)**
50:10
**Hon (1)**
25:25
**Honor (249)**
17:4,6,14,18;18:2,
7;20:5,8;21:7,18,18;
22:5,15,25;23:8,9,20;
24:22,23;25:20,21,24;
26:3;27:7;28:15;29:2,
9,18,22;30:20;31:23;
33:17;34:18,24;36:9;
37:8;39:24;40:2,10,
18;41:9,12;44:10,12,
19,22;45:5,17;46:6,8;
48:22;49:11,16;50:1;
51:16,17;52:7;53:6;
54:5,9;55:1,7,24;56:2,
19;57:1,18;58:12,23;
59:10,17,21;61:3,6,
16;62:6,6;63:11,17;
64:12;65:8,19,25;
66:6;67:1;68:11;69:6,
7,11,12,23;70:4,17;
71:6,16,25;72:11,13,
15;73:6,14,16,20,23;
74:1,4,10,18,24;75:6,
13,19,19;76:1,5,13,
14,20,24;77:5,9,12,
18,23,24;78:3,6,9;
79:2,7,15,16;80:5,10,
14,20;81:1,6,8,12;
82:6,9,10,13,15;84:1,
24;85:11,17;86:6,18;
87:2,3,20;88:8,11,18;
89:18,23;90:15,23;

91:3,14,16,22;92:1,5,
23;93:10,13,20;94:19,
24,25;96:14,17,22;
97:8,10,14,14;98:2,8;
99:4,6,19,20;100:2,7;
101:17;102:7,10;
103:18;104:13,24;
105:1;106:6,11,13,21,
23;107:9,15,16,24;
108:8,15,22;109:10;
110:20,24;112:8;
113:8,17,22;114:15,
19,22;115:2,5,7,12,
23;116:3,8,12;117:23,
25;118:9,13,25;
119:15,16;120:3;
121:2,4,9,22;122:8,
15;123:2,3,4,5,6;
124:2,3,8,9,24
**Honor's (10)**
20:10;22:10;45:22,
23;57:2;80:17;81:21;
100:8;106:18;122:3
**hope (9)**
24:13;38:9;44:1,12;
82:20,21;99:20;
118:9;124:20
**hopeful (1)**
38:1
**hopefully (6)**
24:22;25:24;81:10;
87:2;107:16;116:4
**hoping (1)**
48:23
**host (1)**
47:23
**hostage (1)**
38:1
**hour (1)**
60:7
**HSBC (1)**
15:3
**hundreds (1)**
31:9
**hung (1)**
32:11
**hurdles (1)**
43:16
**hypothetically (1)**
86:13

**I**

**idea (3)**
25:13;27:2;63:24
**identified (4)**
108:18;109:6,7;
112:2
**identifies (2)**
19:3;110:15
**identify (2)**
18:21;113:14
**identifying (2)**

19:4;63:5
**II (3)**
2:3;83:1,12
**III (1)**
2:5
**imagine (1)**
107:12
**immediate (1)**
25:8
**immediately (1)**
117:11
**Impac (5)**
13:3;71:17,17,24;
72:1
**impacting (1)**
27:19
**impaired (1)**
68:3
**implementation (1)**
111:2
**important (17)**
24:7;30:13,15;
34:21;37:22;38:11;
39:24;46:8,15;80:6;
82:18,18;91:24;
96:16;98:3;99:19;
110:23
**importantly (2)**
87:5;88:14
**imposed (1)**
63:23
**imposition (1)**
119:16
**improved (1)**
80:16
**improves (1)**
35:16
**inappropriate (1)**
95:25
**Inc (3)**
7:11;9:12;71:18
**include (9)**
40:5;51:23,23;
66:25;67:20;78:14;
79:1;111:10;118:6
**included (8)**
39:11;47:9;60:9;
63:3;64:21;67:9;
104:19;120:1
**includes (7)**
22:19;36:14;60:12;
64:22;94:10;102:25;
103:4
**including (9)**
34:13;35:25;36:3;
37:18,19;55:19;
68:15;86:10;98:12
**inconsistency (1)**
43:8
**inconsistent (2)**
78:19;97:16
**incorporated (1)**
92:15

**increased (1)**
39:5
**indemnification (1)**
101:10
**indemnity (1)**
93:14
**independent (1)**
95:9
**indicate (1)**
28:23
**indicates (1)**
19:6
**individual (2)**
31:10;54:14
**individually (1)**
35:12
**individuals (1)**
34:20
**indulge (1)**
123:6
**indulging (1)**
91:23
**inform (2)**
19:23;49:10
**information (6)**
19:8;57:3,6,6,16;
91:2
**informed (3)**
57:4,16;123:17
**ingredient (1)**
36:16
**initial (3)**
31:17;78:9;84:2
**initially (1)**
26:22
**injunction (2)**
101:21;111:10
**inserts (1)**
59:1
**insolvency (1)**
30:2
**inspiration (1)**
117:24
**instance (2)**
81:17;85:19
**instead (1)**
32:13
**instructed (1)**
122:17
**insufficient (1)**
60:11
**integral (1)**
86:10
**intend (3)**
28:8;92:19;107:14
**intended (2)**
45:1;102:6,9
**intent (2)**
40:17;45:22
**intercompany (18)**
36:3,4;37:21;77:11;
83:13,18,22;84:5,13,
21,22,25;85:3,4,5,25;

86:10;119:24
**intercreditor (5)**
  31:14;32:1;33:23;
  35:23,24
**interdebtor (4)**
  31:14;35:23,25;
  36:2
**interest (22)**
  35:21;37:14;40:22;
  60:13;61:24;63:2,5,6;
  65:7;67:11;78:18,22;
  79:1,5;83:21;84:15,
  24;85:2,4;89:3,8;
  90:18
**interesting (1)**
  79:21
**interests (14)**
  27:11;32:14;34:23;
  39:3;40:17,19;46:16;
  53:12,18;74:16;
  76:25;77:6;84:20,20
**interim (1)**
  23:15
**interrupt (2)**
  110:21;122:17
**interrupted (1)**
  117:11
**into (17)**
  24:5;25:14;26:21;
  29:19;30:1;36:19;
  54:19;55:10;68:22;
  70:17;87:13;88:16;
  92:15;100:13;103:20;
  105:21;112:6
**investigated (1)**
  32:6
**investigation (3)**
  32:7;108:11,11
**investor (1)**
  57:4
**Investors (2)**
  9:3;33:16
**invite (1)**
  81:3
**inviting (3)**
  18:15;19:25;20:7
**involve (1)**
  117:25
**involved (3)**
  23:11;97:21;117:22
**involves (1)**
  121:2
**IRENA (1)**
  13:16
**ironic (1)**
  80:1
**Ironically (1)**
  37:2
**irrevocably (1)**
  72:20
**issue (79)**
  18:19,24;20:10;
  21:2;22:2,4,9;27:11,

16;39:1;41:24,24;
  43:11;44:3,24,25;
  45:17;46:8;47:18,19;
  48:6,12;49:1,7;53:9;
  60:8;62:16,17,17;
  68:12;74:15;75:22;
  78:17;79:16;80:3,17,
  19;81:8,21;82:11;
  83:13;87:1;89:6;
  90:24;91:24;93:16;
  94:3,4,4,5,5,8,9,16,20,
  23;96:3,15;97:18;
  98:6;99:1,5;100:1,21;
  101:5,18;102:7;
  103:6,10;104:4;
  105:7,14;106:2,21;
  107:15,19;112:13;
  113:5;114:25
**issues (37)**
  25:3;29:9;33:13;
  35:20,25;36:6,23;
  42:7;43:4,9;44:2,6;
  45:25;46:5,23;47:5,
  20,23;48:11,22;
  49:11;79:17,19;80:1;
  82:24,25;85:16;
  87:14;92:14;117:8;
  119:25;120:18;121:3,
  7,19;123:4,18
**item (2)**
  23:9,21
**items (1)**
  77:7
**IV (1)**
  2:6

## J

**JAMES (1)**
  11:7
**January (3)**
  23:4;62:11;65:4
**JEREMY (1)**
  8:7
**Jericho (2)**
  6:15,17
**Jersey (4)**
  26:17;27:25;34:13;
  50:19
**Jiffy (5)**
  19:3,4,6,6;20:20
**Jim (1)**
  93:10
**job (2)**
  49:10;82:17
**JOHN (1)**
  15:7
**Joint (4)**
  2:5,11;17:18;24:3
**JONATHAN (1)**
  10:8
**JONES (1)**
  7:18

**JOSEPH (1)**
  5:18
**Josh (1)**
  92:10
**JOSHUA (1)**
  14:15
**JR (1)**
  11:7
**JSN (3)**
  35:18;109:22;118:6
**JSNs (22)**
  25:19;30:7;35:14,
  17,19,21;37:1,2,12,
  16,16;38:1,2;77:14;
  78:22;80:1;83:1;
  108:1,17;117:1,6;
  120:1
**JSN's (3)**
  78:18;111:12,12
**Judge (13)**
  20:16;24:12;31:24;
  32:2;43:19;47:16,21;
  50:22;76:3;95:19;
  97:22;100:16;104:8
**judgment (15)**
  18:20;20:2;46:11,
  11,15;50:8,12,17,22;
  51:1,7,22,25;57:16;
  123:14
**July (2)**
  24:3;49:23
**June (1)**
  24:5
**Junior (6)**
  10:3;35:14;61:12;
  76:21;80:7,8
**jurisdictions (1)**
  51:25
**JUSTICE (2)**
  5:2,12
**justifies (1)**
  39:22
**JUSTIN (1)**
  6:19

## K

**Kansas (1)**
  12:5
**KASOWITZ (1)**
  13:19
**KAUFMAN (7)**
  13:8;71:25,25;
  72:13;73:3,6,14
**keep (1)**
  90:11
**KENNETH (3)**
  6:7;22:6;29:2
**Kessler (15)**
  12:3,12;17:11,19;
  22:3;46:9;54:24;55:9,
  14,20,23;56:8,15;
  122:6;124:5

**KIBLER (1)**
  15:7
**kicking (1)**
  117:9
**kind (3)**
  43:25;84:8;100:24
**KIRBY (1)**
  10:19
**KIRKLAND (2)**
  7:10;102:11
**KISSEL (1)**
  8:10
**knowledge (2)**
  92:24,25
**known (1)**
  49:8
**knows (3)**
  29:18;33:17;121:2
**Kodak (2)**
  104:2,6
**KOTWICK (1)**
  8:15
**KRAMER (3)**
  6:2;29:3;118:13
**KRELL (1)**
  6:19
**Kruger (2)**
  32:4;57:10

## L

**labored (1)**
  100:11
**Lakeside (1)**
  7:20
**Landon (1)**
  10:20
**language (43)**
  50:20;51:23,23;
  52:4,5,8;59:13;60:6,
  10,20;61:4,17;62:5,8,
  9,19;64:17,19,19;
  65:1,10,15;67:7;
  68:12,21;69:15,18;
  73:24;83:16,24;87:9,
  10,11,15,22,23;88:2,
  12,16;91:7;105:21;
  107:3;111:13
**large (1)**
  111:25
**largely (2)**
  17:7;29:6
**last (13)**
  24:11;25:24;38:9;
  44:15;54:3;62:8;78:1;
  82:3;107:18;111:11;
  114:25;117:12;119:4
**late (2)**
  60:2,7
**later (2)**
  91:14;93:16
**LAW (13)**
  16:2;18:19,20,22;

20:3,17;47:12;48:1,1,
  2;72:25;99:21;117:5
**Lawson (2)**
  113:25;114:2
**Lawson's (1)**
  114:1
**lay (2)**
  42:9;109:21
**lays (1)**
  111:6
**Lead (2)**
  15:11;68:22
**leading (2)**
  36:5;57:7
**least (16)**
  22:8,11;24:25;42:8;
  52:2,6;55:10;65:8;
  78:2,3;86:8;88:17;
  94:5;97:11;100:23;
  105:10
**leave (1)**
  43:25;47:15;75:13;
  113:3
**leaves (3)**
  98:10;105:2,6
**leaving (2)**
  18:22;21:14
**led (1)**
  24:12
**Lee (1)**
  89:12
**left (4)**
  18:20;45:14;99:1;
  115:20
**LEGAL (2)**
  16:10;95:1
**legalese (1)**
  84:11
**length (1)**
  117:3
**lengthy (2)**
  32:16;34:16
**less (3)**
  28:2;30:20;108:21
**level (1)**
  29:16
**LEVIN (3)**
  6:2;29:3;118:13
**LEWIS (4)**
  11:2;32:4;69:24;
  93:11
**Lewises (1)**
  70:1
**Lexington (2)**
  7:12;12:22
**liability (2)**
  101:11;109:23
**Liberty (1)**
  8:4
**lien (6)**
  37:18;62:11;63:20,
  20,25;64:4
**liens (3)**

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg
Pg 137 of 147

August 21, 2013

59:14;60:13;63:22

**life (4)**
80:12;114:11,13;
124:6
**light (1)**
45:25
**likely (3)**
72:18;108:21;117:4
**limine (2)**
117:11,12
**limited (3)**
18:14;30:22;102:12
**line (4)**
30:6;39:14;101:22;
110:3
**lined (1)**
99:25
**liquidated (3)**
26:13;60:19,21
**liquidating (5)**
26:12,16;28:6;
60:19;63:22
**liquidation (8)**
27:16;39:17;40:4,5,
6;53:14,14;68:14
**list (3)**
45:11;48:15;113:24
**listen (1)**
69:9
**listing (1)**
53:25
**litigate (2)**
37:14;89:5
**litigating (2)**
82:20,22
**litigation (21)**
29:18;31:14;32:8;
33:3;34:1,5;36:7,12,
15;38:1,6,16,24;
40:16;50:21,23;
80:23;82:22;92:21;
95:16;111:17
**little (10)**
34:5;70:19;75:10;
77:20;78:5;79:17;
82:22;97:25;106:25;
109:2
**live (1)**
117:17
**Livingston (1)**
11:12
**LLC (2)**
3:21;14:19
**LLP (22)**
6:2,13;7:2,10;8:2,
10;9:11;10:2,11,19;
11:2,10,18;12:20;
13:2,11,19;14:2,10,
18;15:2,19
**loans (1)**
28:11
**locked (1)**
42:14

**LOEB (2)**
9:20,20
**LONG (7)**
13:2;72:1,3;73:3,9;
79:12;118:5
**longer (1)**
19:11
**longstanding (1)**
34:1
**look (23)**
34:6;41:20;44:23;
46:6;51:2,7,21;54:3;
87:21;95:3,18,24;
100:18;102:16;104:1,
9;106:25;107:4,18;
108:15;109:18;111:9;
119:3
**looked (5)**
27:12;59:7;70:14;
116:16;117:15
**looking (11)**
53:10;65:7,16,22;
66:3,15,17,19,24;
81:15;119:6
**looks (3)**
40:23;110:24;
111:14
**Lorenzo (1)**
17:5
**Los (1)**
9:15
**lose (1)**
30:16
**lot (16)**
39:6;41:23;44:6;
47:5,19;48:1;51:11;
90:5;95:4;105:23;
109:1;117:9;119:12;
121:16,20;124:15
**lots (1)**
124:13
**Louis (1)**
14:22
**LOWENSTEIN (2)**
11:10;75:7
**LTD (1)**
15:10
**Lube (5)**
19:3,4,6,6;20:20
**Lumber (1)**
97:24
**lunch (2)**
120:20,25
**lunches (1)**
120:22
**LYNCH (1)**
15:10

## M

**MA (1)**
9:5
**Mac (4)**

8:20;71:3,4,10
**Madison (1)**
11:20
**Mae (2)**
50:2,4
**Main (3)**
12:4;25:15;26:12
**maintain (1)**
63:12;92:17
**major (5)**
27:8;30:23;31:18,
22;34:25
**majority (2)**
30:23,25
**makes (4)**
19:20;26:16;98:16;
105:11
**making (3)**
57:15;88:10;100:1
**Mallet (1)**
20:9
**Management (2)**
14:11;92:2
**mandatory (1)**
92:16
**Manhattan (1)**
10:4
**MANNAL (1)**
6:8
**Manner (3)**
2:18;28:23;33:15
**mantra (1)**
80:15
**Manville (1)**
103:12
**many (12)**
29:19,20;32:16;
33:5;34:10;38:22;
54:17;101:10;119:10,
11;120:18,22
**Marinuzzi (177)**
17:3,4,5;23:9,14,17,
18,20;27:7,22;29:5;
30:18;39:9,13;41:20;
42:23;46:25;48:19,
22;49:1,16,20,21;
51:9,11,13,15,20;
52:7,10,13,17,20,22;
53:2,4,6;54:2,4;55:1,
4,7,24;56:2,11,17,19;
57:1,24;58:1,4,6,9,12,
16,20,23;59:10;61:2,
3,6,9,11,16,19,22;
62:6,8,16;63:11,17;
64:3,5,7;65:17,18;
66:9,11,13,19,22;
67:1,4,13;68:4,9;69:1,
3,6,10,11,23;70:4,10,
12,17,18,19,22,24;
71:2,15,16,22;72:9,
10;73:16;74:3,4,10,
12,18,24;75:4,14,25;
76:1,14,17,20;77:17;

79:3,7,11;89:12,16,
18;91:21;92:1;93:9,
19,20,24;94:19;
101:24;102:1;103:17,
18,23;105:1,6,11;
106:6;107:22,24;
108:3,6,21;109:10,14,
16,18,21;110:8;113:8,
11,16,19,22;114:1,4,
8,11,15,18,22;115:2,
12,23;116:3,6,8,12;
117:23;118:9;124:9,
24
**Marinuzzi's (1)**
92:11
**MARK (1)**
8:15
**marked (5)**
25:23;26:2,3;50:6;
116:3
**Market (1)**
15:21
**MARTHA (2)**
16:7;59:18
**MARTIN (1)**
9:7
**Mary (1)**
114:8
**Mass (2)**
11:19;95:21
**MASUMOTO (10)**
5:9;104:11,12,13,
16,21,24;105:4;106:8,
11
**match (1)**
40:3
**material (2)**
59:1;85:3
**materiality (1)**
81:25
**math (1)**
55:15
**MATIAS (2)**
16:23;73:21
**matter (12)**
17:9;21:20;29:11;
72:24;73:15;78:9;
85:18;97:7;121:5,16;
122:6,13
**matters (1)**
101:15
**maximum (1)**
23:5
**may (41)**
19:8;22:5;29:9;
30:9,11,13;38:7,7,8,
25;41:19,19;42:18;
44:5;49:2;51:25;52:1,
6,25;60:19;62:25;
69:7,12,12,17;84:6;
86:13;92:7;96:14,15;
99:22;100:14;105:3;
106:13;109:6;110:20;

118:12;119:14;121:2,
2;122:3
**Maybe (23)**
45:2;55:18;79:6;
82:6,16,20,22;83:8,
10,17,22,22;84:6;
85:8;88:22;96:14;
98:1;101:24;105:16;
108:25;109:2;112:3;
120:20
**MBIA (1)**
54:6
**MCCLOY (3)**
10:2;77:19,22
**McDonald (1)**
114:8
**MCINERNEY (1)**
10:19
**MCKENNA (2)**
13:2;72:1
**MCKOOL (2)**
8:19;71:9
**meal (1)**
121:2
**mean (27)**
40:7;51:7,10;52:6;
56:12;68:18,18;73:5;
79:13;80:5,14;86:24;
87:14;88:7;97:24;
98:20;100:18,24;
104:6,21;105:17;
106:1;108:25;110:20;
117:20;123:20;
124:17
**means (3)**
61:12;75:15,17
**mech (1)**
90:14
**mechanic (1)**
54:10
**mechanics (1)**
57:14
**mechanism (1)**
86:2
**mechanisms (1)**
90:9
**mediation (5)**
32:17;57:9;77:25;
88:9;96:1
**mediator (2)**
24:11;31:24
**Medical (1)**
95:21
**meeting (1)**
122:2
**members (3)**
19:8;26:18;54:24
**mention (7)**
60:4,11,12,13,14,
17;64:14
**mentioning (2)**
77:25;80:15
**merits (2)**

19:9,21
**methodology (1)**
  21:13
**method (4)**
  19:13,19,22;123:13
**methodology (7)**
  18:19;19:4;20:19;
  21:14;22:19;46:19,20
**Metromedia (4)**
  103:12;111:13,14;
  112:2
**MF (5)**
  42:24;94:21;98:21;
  115:18,19
**MICHAEL (5)**
  8:25;11:15;14:24;
  71:9;75:6
**Michelle (1)**
  114:1
**microphone (2)**
  71:7;77:20
**midst (1)**
  31:20
**might (10)**
  22:8;49:8,12;50:17,
  18;104:1,9,25;
  106:22;110:5
**mightily (1)**
  100:11
**MILBANK (3)**
  10:2;77:19,21
**milestone (3)**
  29:13;121:10;
  124:13
**milestones (2)**
  120:4;121:8
**Miller (1)**
  42:24
**million (13)**
  26:23;27:14,15;
  28:1;33:14;35:4;
  54:11;55:3,19;56:1,7,
  13;79:25
**million-dollars'-worth (1)**
  28:5
**millions (2)**
  29:20;31:9
**mind (7)**
  42:6,8;47:4,12;
  54:24;105:3;118:11
**mindful (4)**
  29:22;44:24;47:6;
  94:20
**mine (1)**
  116:11
**minimis (1)**
  31:12
**minimizing (1)**
  121:19
**Minneapolis (1)**
  16:13
**Minnesota (1)**
  50:18

**minority (1)**
  80:7
**minus (1)**
  56:22
**minute (2)**
  25:19;28:14
**minutes (1)**
  122:22
**misconduct (2)**
  98:4,11
**misinterpret (1)**
  124:15
**misread (1)**
  45:2
**missed (1)**
  79:6
**misstating (1)**
  102:8
**mixing (1)**
  67:6
**MN (1)**
  16:13
**MO (2)**
  12:5;14:22
**modification (5)**
  38:11;54:9;59:7;
  82:5;107:5
**modifications (8)**
  37:23;38:3;59:1;
  81:22;97:3,12,13;
  123:15
**modified (6)**
  40:20;50:8,10;
  52:13,14;53:7
**modify (2)**
  53:21;106:6
**moment (6)**
  30:18;34:24;46:6,9;
  106:17;122:8
**Monday (2)**
  71:20;117:13
**monetization (1)**
  28:10
**money (4)**
  86:3,4,14;111:25
**monoline (7)**
  31:2;33:21,22,25,
  25;34:4;54:5
**monolines (2)**
  33:23;34:2
**month (1)**
  119:5
**months (11)**
  24:9;29:17;30:20;
  32:16;36:21;46:4;
  48:8;82:11;86:20;
  96:8;98:22
**moot (1)**
  71:19
**moots (2)**
  72:2;85:20
**more (18)**
  19:17;20:14;31:7;

48:16;55:18;57:6;
  59:2,13;65:19;68:21;
  69:7;75:10;85:14,22;
  87:5;89:21;113:16;
  115:13
**Moreover (1)**
  19:18
**MORGAN (2)**
  11:2;93:11
**morning (14)**
  17:4,14,15;18:4,11;
  22:11;29:2;71:25;
  73:20;75:6;77:18;
  92:10;93:10;102:10
**Morrison (4)**
  17:5,16;23:1;123:3
**mortgage (2)**
  31:20;71:17
**most (5)**
  62:11;70:15;80:3;
  82:12;88:14
**Motion (27)**
  2:2,11;3:2,3;17:9,
  18;18:8;21:5,21;23:1,
  2,21;24:2,19;35:11;
  71:21;72:2,8,13,22,
  25;73:1,10,13;
  116:25;119:1;123:21
**motions (3)**
  23:11;117:11,12
**move (2)**
  119:3;123:1
**moved (1)**
  31:16
**moving (1)**
  29:12
**much (14)**
  32:25;70:19;74:2;
  76:12;92:9;93:3,8,17,
  18;101:11;109:3;
  110:11,15;121:4
**multiple (2)**
  89:24,25
**MUNGER (1)**
  9:11
**MURRELL (3)**
  16:23;73:20,21
**must (1)**
  52:3
**mute (1)**
  49:18
**Mutual (2)**
  11:19;95:20
**myriad (1)**
  33:9
**myself (3)**
  46:2;113:5;117:9

**N**

**NA (2)**
  9:21;15:20
**NAFTALIS (1)**

6:2
**narrative (1)**
  25:21
**narrow (5)**
  36:23;82:22;
  102:23;103:15;
  105:10
**narrowing (1)**
  102:24
**Nassau (2)**
  58:19,21
**National (1)**
  70:5
**naturally (2)**
  25:14;27:16
**nature (1)**
  111:7
**naught (1)**
  48:9
**NCUAB (3)**
  46:13;70:5,22
**NE (1)**
  16:12
**necessarily (5)**
  46:16;53:11;62:4;
  100:5;110:17
**necessary (2)**
  30:3;115:13
**need (27)**
  18:16;20:11;21:9,9,
  12;33:11;38:4;45:15;
  49:2,11,18,18;51:23;
  52:4;70:8;80:9;82:19;
  84:3;87:19;88:20;
  89:21;93:23;94:25;
  98:24;105:20;111:10;
  113:4
**needed (2)**
  37:9;69:3
**needs (6)**
  21:3;34:23;45:5,24;
  63:1,1
**negligence (2)**
  98:4,11
**negotiated (5)**
  29:25;30:2,7,14;
  54:15
**negotiation (1)**
  38:12
**negotiations (4)**
  24:9;32:5,9,16
**Nelson (2)**
  114:4,5
**New (27)**
  3:23;5:6,16;6:5;7:5,
  13;8:5,13,23;9:23;
  10:5,14,22;11:5,22;
  12:15,23;13:6,14,22;
  14:5,13;15:5;26:17;
  27:25;34:13;50:19
**next (21)**
  21:8,19,20;23:9;
  46:3;48:8;58:23;

59:10;69:11,23;70:4,
  24;71:2,16;73:15,16;
  74:4,24;98:22;
  113:23;122:4
**nice (1)**
  118:4
**night (5)**
  25:24;44:15;54:3;
  62:8;111:11
**nine (1)**
  40:24
**NJ (1)**
  11:13
**nobody (3)**
  68:22;87:14;120:15
**nobody's (1)**
  47:15
**non (1)**
  88:5
**non- (2)**
  19:16;47:13
**nonconsensual (1)**
  103:11,15
**nonconsenting (1)**
  105:16
**nondebtor (4)**
  44:4;94:12;101:6;
  111:15
**None (3)**
  19:25;65:1;79:3
**nonestate (3)**
  94:10,22;98:13
**non-estate (1)**
  47:11
**Nonetheless (1)**
  78:17
**nonsettling (3)**
  18:23;19:7;50:18
**Nora (14)**
  16:11,15;58:25;
  59:3,4,6;122:8,9,11,
  15,19,21,24;123:2
**Norm (2)**
  17:16;123:3
**normal (1)**
  65:5
**Norman (1)**
  17:12
**North (1)**
  14:20
**note (7)**
  30:14;70:8;75:10;
  78:12;85:1,1;98:3
**noted (4)**
  24:23;49:24;53:6;
  118:17
**Noteholders (4)**
  10:3;76:21;80:8,8
**notes (10)**
  31:8;35:9,10,14;
  48:24;61:13;70:9;
  116:5,11,15
**noteworthy (1)**

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,    Pg 139 of 147
Case No. 12-12020-mg

August 21, 2013

30:5
**nothing's (1)**
68:19
**Notice (16)**
2:7,18;19:21,23;
20:2,12,14,20;21:2,
12;24:1;87:12;
118:12;119:14;
123:15,15
**noticed (2)**
72:8,10
**notices (2)**
44:12;103:19
**noticing (1)**
28:2
**notification (1)**
123:16
**notwithstanding (2)**
97:12;99:18
**November (11)**
23:3;24:14,14;49:6;
95:21;115:25;117:19;
118:1,8,18,18
**number (14)**
17:3;23:21;24:6;
41:14;42:7;43:4;
55:13,22;58:24;
71:20;95:9;108:19;
113:22;119:9
**numbers (1)**
55:13
**numerous (4)**
32:17;35:24;36:20;
59:24
**NW (1)**
16:20
**NY (24)**
3:23;5:6,16;6:5,17;
7:5,13;8:5,13,23;
9:23;10:5,14,22;11:5,
22;12:15,23;13:6,14,
22;14:5,13;15:5

**O**

**object (5)**
38:5;71:12;104:14,
22,24
**objecting (1)**
56:6
**objection (57)**
18:14,15;24:18,22;
37:7;57:22;58:7,12,
13,18,24,25;59:11,11,
12,22;60:22;65:11;
69:5,11,23,24,25;
70:3,4,10,25;71:2,11,
16,17,18;72:2,22;
73:1,16,23;74:5,6,19,
24;75:8;81:2;91:3,9,
12;92:2,12,13;93:21,
25;106:9;108:1;
111:12;114:1,9;

122:24
**Objections (22)**
2:8;24:20,24,25;
25:1,3;29:8;30:17;
42:11;44:7;59:5;
76:22;78:9;80:12,21,
22;91:6;109:11;
113:17,23;114:18;
116:19
**objection's (4)**
59:9;70:6;73:2;
91:20
**obligations (1)**
50:5
**observation (5)**
30:5;56:11;96:16;
105:18;121:18
**observations (1)**
44:11
**obtain (2)**
18:10;40:15
**obvious (1)**
83:23
**obviously (12)**
40:14;50:10;53:16;
71:12;92:14;94:24;
95:6;105:6;110:2;
118:1;119:18;121:21
**occupied (1)**
117:6
**occur (1)**
72:18
**occurred (2)**
81:24;97:22
**o'clock (1)**
123:24
**October (8)**
43:13;76:6,9,11;
100:22;116:24;117:3,
16
**Ocwen (1)**
68:17
**off (10)**
18:24;20:23;21:4;
42:20;43:6;45:14;
46:7;47:10,19;63:1
**offered (3)**
33:1;37:23;64:19
**Office (1)**
5:3,13;16:19;93:25
**Official (2)**
6:3;29:3
**often (2)**
89:13;92:20
**OLSON (1)**
9:11
**omnibus (3)**
88:21;108:16,18
**once (4)**
37:25;38:2;69:8;
90:20
**One (47)**
8:4,12,21;10:4,13;

18:22;21:7;25:25;
28:20;39:25;41:1;
47:7,22;49:21;50:19;
51:7;55:16;58:2,3,18,
23;62:17;65:19;69:7;
70:7;71:19;74:15;
76:22;78:17;82:3;
83:6;86:23;87:21;
94:5;97:10;100:18;
101:16;103:17;107:1,
20;109:11;111:9,10;
113:23;115:17;121:5;
124:14
**ones (2)**
25:2;49:24
**ongoing (2)**
65:2;80:23
**Only (29)**
2:13,15;22:2;29:17;
30:9,11;31:13;32:16,
22;33:3;36:24;37:4;
42:3;44:12;46:4;48:8;
59:22;60:23,23;65:3;
87:12;92:20,23,24;
94:6;98:22;120:12;
121:4,18
**open (3)**
35:20;47:12;105:6
**opening (1)**
28:16
**operations (1)**
57:7
operations@escribersnet (1)
3:25
**OPOLSKY (1)**
8:7
**opportunity (6)**
35:20;37:13;38:3;
48:17;58:9;73:11
**opposition (1)**
73:12
**opt (5)**
20:21;92:18,25;
93:1,3
**ordeal (1)**
46:3
**Order (36)**
2:3,12;3:4;23:16,
22;30:3;42:16;43:7,8,
10,20;44:16;45:8;
56:5;58:13,17,17;
73:25;76:6;81:14,17;
88:9;96:4,6,18,20,23;
113:7;115:14,14,24;
116:3,24;119:1,13;
121:23
**ordinary (2)**
65:5;67:10
**original (1)**
33:12
**originally (4)**
27:10;31:11;35:16;
94:6

**OSTRZEGA (1)**
10:8
**others (2)**
16:11;85:5
**otherwise (4)**
54:20;85:18;
101:22;109:24
**ought (2)**
103:9;104:1
**out (44)**
20:22;26:4;27:21;
28:2;38:13;40:1;42:9;
44:20;45:5,20;46:4;
47:9;48:8;49:6;50:1;
54:22,24;56:2;59:19;
62:23;72:17;73:12;
85:21;87:4,13;92:18,
23,25;93:1,3;94:15;
95:8;96:8;97:19;
100:1,9,18;105:22,24;
109:22;111:6;115:20;
116:14;123:22
**outcome (3)**
49:12;115:6;121:3
**outright (1)**
54:15
**outset (3)**
33:17;35:18;96:17
**outside (2)**
34:3;50:21
**outstanding (1)**
63:21
**over (18)**
29:1;31:4;32:10,11;
33:14;35:2;36:3;44:4;
45:17;46:3,7;48:8;
49:7;50:23;63:3;
80:12;87:18;119:3
**overall (1)**
27:1
**overburdening (1)**
122:1
**overriding (1)**
47:3
**overruled (11)**
59:9;69:5;70:3;
73:2;74:23;114:3,6,
14,17;122:25,25
**oversecured (18)**
35:22;38:7;83:12,
15;84:4,14;85:20,21,
24;86:17;88:4,7,7,17,
18;89:7,15,19
**overstating (1)**
110:13
**overview (1)**
25:5
**overwhelm (1)**
55:20
**overwhelming (1)**
121:22
**OVERY (1)**
15:2

**owe (1)**
32:1
**Own (5)**
2:16;27:22;68:16,
17;115:10

**P**

**PA (2)**
15:14,23
**Pacific (1)**
97:23
**page (24)**
17:9;23:10,21;
25:21,23;50:7;52:15,
21,22;60:25;61:10,11,
17,20;62:3;63:18;
66:13,15,24;101:25;
102:1;107:24;110:24;
111:3
**pages (8)**
19:1;25:22;26:3;
39:14;108:8,15;
113:13,14
**paid (13)**
35:5;43:18;56:21;
60:14,21;62:17,18;
63:24;65:5;68:5,8,10,
14
**painful (3)**
28:23;82:14,15
**painfully (1)**
82:10
**painstaking (2)**
36:7;111:1
**Pamela (2)**
114:11,14
**Papas (2)**
74:19,21
**paper (2)**
39:6;49:19
**papers (5)**
17:8;56:12;81:5;
122:25;124:10
**paragraph (5)**
60:25;66:13,14,24;
67:19
**parallel (1)**
32:7
**parent (1)**
25:8
**Park (7)**
8:12,21;9:22;10:13;
11:4;13:4;14:12
**part (13)**
18:16;20:1;38:13;
67:13;77:7,8;82:14;
84:1;86:11;104:17;
107:18;110:9;117:10
**partial (1)**
19:14
**participate (1)**
95:10

**participated (2)**
95:5,14
**particular (2)**
49:7;50:2
**particularly (1)**
47:13
**parties (22)**
21:17;29:24;32:5;
36:18,23,24;37:9;
43:18;45:3,23;46:24;
49:10;78:2;82:24;
95:14;99:11,13;
100:11;105:7;107:6;
119:17;122:4
**parties-in-interest (1)**
32:17
**partner (2)**
17:12;42:24
**party (10)**
36:9,11,11;44:25;
45:16;58:9;80:2;82:4;
111:7;112:15
**passes (1)**
19:16
**past (3)**
62:21;82:17;122:12
**pasted (1)**
103:20
**patently (1)**
42:1
**path (3)**
29:21;30:15;32:7
**PATTERSON (1)**
14:2
**Paul (2)**
74:19;114:15
**Pause (4)**
52:23;66:1,8;116:7
**pay (7)**
37:2;62:9;64:25;
65:1;67:21,22;68:19
**paying (1)**
37:12
**payment (9)**
25:17,18;35:18;
53:12;54:15,18;60:6;
61:24;65:14
**payments (2)**
35:2;59:2
**PBGC (3)**
73:17,18,23
**PC (2)**
8:19;12:2
**Peck (2)**
31:24;32:2
**Peck's (1)**
24:12
**penciling (2)**
45:4,4
**pending (3)**
33:4;34:2;35:11
**Penina (1)**
3:20

**PENSION (2)**
16:18;73:21
**people (15)**
20:7,21;44:1;45:11,
19;49:11;92:20;
95:25;96:11;100:19;
105:22,23;111:21;
117:24;119:11
**people's (1)**
114:20
**per (1)**
84:21
**percent (15)**
26:8,9,10;39:12,15,
16;40:3,3;41:5,6;
53:8,8,12,20,20
**perfected (1)**
62:13
**perfectly (1)**
95:13
**Period (1)**
3:2
**Periods (1)**
3:4
**PERLSTEIN (1)**
7:7
**permissible (2)**
72:18,24
**permits (1)**
24:22
**permitted (2)**
23:5;92:18
**Persons (1)**
2:17
**persuade (3)**
21:1;99:20;107:16
**persuaded (1)**
19:5
**persuasive (2)**
51:6;80:3
**petition (4)**
77:6;89:3;94:23;
95:4
**Phase (11)**
82:23;83:1,4,12,12;
85:19,25;117:1,6;
118:6;120:1
**Philadelphia (1)**
15:23
**phone (7)**
49:17,18;59:4;66:4;
114:2,6;122:15
**phrase (1)**
64:21
**physical (1)**
85:1
**pick (1)**
52:4
**picked (1)**
97:9
**PICKERING (1)**
7:2
**picking (1)**

107:1
**pile (1)**
124:10
**Pittsburgh (1)**
15:14
**place (3)**
60:23;100:13;109:8
**Plaintiff (2)**
10:20;19:8
**Plaintiffs (15)**
2:16;11:11,11;
15:11;17:11;19:12,
12,14,17,23;46:16;
50:14,24;55:14;74:25
**Plan (169)**
2:2,5,5,7,9;3:3,5;
20:24;21:11;23:3,21,
24;24:3,5,8,13,14,15;
25:6,6,13,16;26:2,3,
11,25,25;27:18;28:7,
19;29:10,13;30:19,
22;31:2,7,9,11,17;
32:13,20;34:11,22,25;
35:2,17;36:17,18,24;
37:1,2,8,25;38:5,14;
39:4,10,13,15,18;
40:20;41:6;42:4,12;
43:1,2,5,8,23;44:5,13;
45:7;46:10,12,21;
47:15,16;49:6,9,13,
22;50:7,8,9,12,13;
51:2,6,17,22;52:11,
13;53:7,21;54:4,8;
55:23;57:1,13,13,14,
17;61:11;62:25;
63:12;64:2,10;66:17,
19,23;71:13;77:1,4,5,
13;79:16,24;80:24;
81:15,18,22,23,24;
82:2,5;84:6,15,16,17;
85:19,23;86:5,11;
88:2,2,19;89:1;90:18;
94:18,18;96:19,24;
97:2,3,11,15,17;
98:16,23;99:13;
100:10;101:20;
102:17,19,19;103:1,5,
8,21,25;104:2;105:21,
25;106:3,22;110:2;
111:2,4;124:17
**plans (1)**
64:18
**plan's (5)**
86:7;103:23;104:6;
110:3,8
**Plaza (3)**
8:4,12;10:4
**pleasant (1)**
119:5
**Please (2)**
17:2;92:8
**pleased (1)**
29:5

**pledge (3)**
84:22;85:5,8
**pledged (1)**
85:1
**plenty (1)**
87:15
**plug (1)**
96:12
**plugged (1)**
115:24
**plunged (2)**
29:19;30:1
**plus (4)**
56:17,22,22;99:7
**PM (1)**
124:25
**PNC (5)**
15:20;18:14,23;
20:10;123:17
**podium (2)**
17:12;28:16
**point (39)**
18:12;30:6;38:12;
40:1;43:24;45:19,20,
22;53:10;61:4,15;
62:1,24;65:3;75:19,
19;76:22,23;77:2,3;
79:5,8;83:4;88:10,24;
89:3,13;92:23;94:19;
97:19;98:7;106:7,16;
107:21;109:2,10;
122:3;124:14,19
**point-counterpoint (1)**
110:9
**pointed (2)**
39:13;47:23
**points (5)**
45:5;47:1;56:2;
108:14;109:11
**poised (1)**
29:17
**POLSINELLI (1)**
12:11
**position (13)**
37:18;43:2;69:24;
71:19;77:10;84:3,5;
88:23;89:1;92:17;
93:5,6;110:12
**positions (3)**
109:22,22;110:4
**possible (6)**
22:7;33:19;92:19;
115:4,9;124:22
**post- (3)**
77:5;89:2;95:3
**post-petition (11)**
35:21;37:14;47:11;
57:8;76:25;78:18;
84:14;89:8;90:18;
94:7,21
**pot (2)**
111:18,25
**potential (5)**

18:22;32:10;33:3;
110:15;111:20
**potentially (2)**
68:22;98:15
**practical (1)**
68:9
**pre- (1)**
94:22
**precedent (1)**
72:7
**precision (1)**
90:5
**prejudice (2)**
18:22;19:7
**prejudiced (2)**
50:24,24
**Preliminarily (3)**
2:15;20:1;123:21
**preliminary (15)**
17:20,22,25;18:1,3,
4,6,8,10;20:19;21:13;
22:2,11;34:24;76:6
**pre-packaged (1)**
30:22
**prepared (8)**
24:23;49:12;79:19;
94:25;106:23;113:6;
117:13;119:4
**pre-petition (10)**
32:12;37:13;47:10;
50:3;54:16;79:24;
80:7;89:2;94:7;98:12
**present (10)**
29:6;59:3,16;70:2;
74:21;107:14;112:20;
114:2,5,16
**presented (1)**
32:8
**presenting (1)**
18:13
**presents (1)**
19:21
**presiding (1)**
50:23
**press (3)**
79:20;80:21,22
**pressed (1)**
81:2
**pretty (4)**
41:22;42:22;60:25;
93:3
**prevents (1)**
43:18
**preview (1)**
115:5
**previewed (1)**
36:25
**previously (1)**
64:15
**primarily (2)**
28:11;59:22
**principal (1)**
89:2

principally (1)
    28:12
prior (4)
    75:11;118:15,21;
    119:2
priority (21)
    25:17;33:10,22;
    38:19;59:23,24;60:1;
    61:19;62:3;63:8,19,
    24;64:9,13;65:10;
    66:10,14,22,25;67:14;
    68:24
private (5)
    26:18;28:4;31:4;
    46:13;112:23
pro (1)
    19:16
probability (1)
    110:16
probable (1)
    108:24
probably (11)
    18:17,25;24:23;
    52:4;75:10;82:6,10;
    100:22;112:16;
    117:23;121:1
problem (5)
    18:25;67:5;84:11;
    103:14;122:16
problems (4)
    18:21;19:3;45:25;
    68:22
Procedures (4)
    2:4,7;23:23;102:16
proceed (4)
    21:11,17;121:3,7
proceeding (2)
    53:24;72:17
proceedings (1)
    124:25
proceeds (1)
    31:19
process (6)
    24:10;29:13;54:12;
    56:4;57:9;100:10
product (1)
    24:8
Professional (2)
    16:4;64:24
professionals (2)
    23:11;94:22
proffered (1)
    64:17
projected (3)
    26:4;27:13;33:14
projects (1)
    39:13
prolong (2)
    70:23;115:12
promptly (1)
    100:7
proof (3)
    38:21,21,23

properly (3)
    34:22;103:15;
    110:18
properties (2)
    60:18;63:6
property (11)
    59:14;62:13,18;
    63:3,21,21;67:9;
    68:13,16,17;84:20
proponents (13)
    23:22;28:8;43:1;
    44:13;80:24;81:18,
    24;82:2;84:7,16,18;
    96:24;109:6
Proponents' (2)
    2:2,5
proportionate' (3)
    19:15,19,22
proposal (1)
    123:17
propose (2)
    72:24;111:13
proposed (20)
    19:14,22;30:25;
    31:1,3,8;34:25;37:5,
    21;40:11;46:21;67:7;
    78:13;83:8;87:7,22,
    23;88:2;91:1;117:5
proposing (2)
    68:13;123:16
prosecute (1)
    37:16
prosecuting (1)
    92:19
prosecution (1)
    35:11
PROSKAUER (1)
    13:11
protection (3)
    37:20;83:20;89:20
provide (9)
    20:12,15;25:5;27:2;
    50:13;59:2;67:13;
    96:25;116:9
provided (13)
    31:12;35:17;43:6;
    59:13;60:6;78:12;
    79:20;80:21;89:1,19;
    102:19;103:16;108:7
provides (16)
    20:2;25:16;35:1,2,
    7,19;39:4,16;42:15;
    50:13;57:6,6;88:2;
    90:19;97:4;98:3
providing (2)
    37:13;76:23
provision (26)
    20:18;42:9;44:16;
    45:9;46:11,12;47:8,
    22;50:9,12,17;51:2,6;
    79:8;81:22;96:18;
    97:1,9,15;98:2,12;
    99:21;102:17,25;

103:4;104:3
provisional (1)
    118:25
provisions (10)
    42:1,14;46:15;
    50:22;52:1;82:4;
    97:10,13;101:21;
    103:21
proviso (1)
    91:13
prudent (1)
    36:20
Prudential (1)
    11:19
PSA (17)
    42:11,13,14,15;
    43:19;44:16;49:11;
    80:16;86:12;88:24;
    89:1;96:1;102:24;
    103:1,2,2;105:23
public (1)
    95:8
pull (2)
    77:20;86:5
pulling (1)
    96:11
purporting (1)
    53:1
purpose (1)
    52:25
Purposes (8)
    2:13,14;22:11;25:7;
    73:2;87:11;110:17;
    117:25
Pursuant (1)
    2:11
pursue (3)
    35:12;38:15;40:15
pursued (1)
    33:19
pursuing (1)
    31:17
pushed (3)
    120:16;121:13,16
put (25)
    18:24;20:23;21:4;
    22:13,22;30:19;41:4;
    42:2,20;46:2;47:19;
    49:18,18;80:4;87:6;
    90:25;96:4;98:20;
    100:13;102:18;
    105:21;113:4;115:14;
    117:17;123:15
Putative (2)
    15:11;17:21
puts (2)
    81:11;103:11
putting (3)
    41:10;44:3,21

**Q**

Quadrangle (1)

6:15
qualified (1)
    97:8
qualifier (1)
    82:1
quickly (1)
    107:11
Quincy (1)
    95:20
QUINN (1)
    11:18
quite (5)
    41:22;79:15;89:13,
    15;111:5
quotation (1)
    20:20
quote (3)
    19:11,12;72:14
quotes (1)
    19:4
QUSBA (1)
    12:25

**R**

raise (6)
    29:9;42:8;47:7;
    100:4,6;116:1
raised (24)
    36:23;39:9;44:7;
    46:6,8;49:11;52:11;
    54:23,23;68:12;
    74:13,15;88:23,25;
    89:3;90:15;94:3,4;
    99:6;102:7;106:21;
    113:5;114:25;123:5
raising (3)
    80:1;99:5;106:2
range (2)
    53:15;103:15
rate (5)
    60:14;63:2,6;65:7;
    78:24
rates (2)
    63:5,5
rather (7)
    35:2;40:3;57:25;
    68:21;84:10;113:13;
    117:25
RAY (2)
    7:15;102:11
re (3)
    19:3;95:20,22
reach (4)
    38:4;44:2;83:15;
    115:21
reached (2)
    17:20;32:19
reaction (2)
    21:6;87:10
read (21)
    39:6,6,44:15;45:13,
    15;52:19;56:12;62:9,

19;70:8;78:9;80:11;
    81:5;83:7,23;88:11,
    15,21;91:13;96:10;
    109:1
reading (4)
    64:5;66:16;111:12;
    117:11
real (4)
    62:18;63:21;67:8;
    68:13
realigned (1)
    31:23
reality (1)
    112:22
realized (2)
    28:10;31:13
really (20)
    25:1;28:12;29:14,
    15;37:3,4;42:22;
    59:19;60:4;67:14;
    69:25;81:21;87:20;
    95:5;101:5;103:12;
    110:25;117:19;118:7;
    119:23
reason (14)
    39:8;53:13,19;
    54:11;55:25;82:17;
    87:19,21;88:3,5,9,18,
    19;94:8
reasonable (4)
    44:1;45:24;56:1;
    57:3
reasonableness (1)
    97:1
reasonably (5)
    68:9;81:18,20;
    96:24;97:3
reasoning (1)
    19:5
reasons (1)
    20:6
recall (1)
    79:7
recalls (1)
    30:20
receive (5)
    28:5;35:4,20;75:11;
    109:9
received (1)
    24:20
recently (3)
    29:24;34:14;35:5
recognize (8)
    45:4;49:2;53:9,16;
    80:6;94:23;119:18;
    121:5
recognized (2)
    34:18;37:8
recognizing (1)
    50:12
reconvene (1)
    20:11
record (12)

17:5;48:5;71:8;
78:5;81:10;88:14,16;
91:5;95:1;98:15,17;
124:4
**recount (1)**
32:22
**recoveries (7)**
26:4,4,5;33:14;
36:12;53:14;57:13
**recovering (1)**
53:11
**recovery (5)**
27:3,13,19;31:12;
40:15
**re-drafted (1)**
94:6
**reduction (13)**
18:20;20:3;46:11,
11,15;50:9,12,17,22;
51:2,7,25,123:14
**reductions (1)**
51:22
**refer (3)**
25:13;65:8;81:7
**reference (1)**
65:14
**references (2)**
25:21,23
**referred (1)**
61:22
**reflect (3)**
38:3;52:25;54:19
**reflecting (1)**
38:17
**reflects (1)**
36:20
**reformat (1)**
65:9
**regard (3)**
59:25;93:12,13
**regarding (4)**
36:24;59:13;92:14;
94:21
**reinstate (1)**
61:5
**Reject (8)**
2:5;23:24;57:17;
72:16;73:10;83:14;
84:3;97:15
**rejected (1)**
84:6
**Related (9)**
2:9,20,22;24:1;
79:18;80:20;101:21;
102:3,13
**relating (1)**
78:17
**relative (1)**
80:16
**release (26)**
37:5;38:14;39:21;
40:8,24;41:3,7,11;
50:2;94:12;97:9,13;

101:7,14,21;102:12;
103:3,21;107:23,23;
109:4,9;111:8,15;
112:13,15
**released (2)**
36:4;112:6
**releases (14)**
33:2;40:25;44:4;
50:13,15;82:4,4;
102:19;103:9,11,15,
24;105:25;111:5
**relevant (2)**
29:9;46:12
**Relief (4)**
2:9,20,22;24:1
**rely (1)**
100:12
**remain (3)**
24:25;59:14;63:23
**remaining (7)**
25:2;26:13;28:11;
35:20;38:6,9;124:20
**remains (1)**
83:4
**remarks (2)**
28:16;106:18
**remember (3)**
78:1;108:19;116:17
**repaid (1)**
111:22
**repeat (2)**
119:5,6
**reply (7)**
60:18;88:15,17,20,
21;108:16,18
**report (5)**
74:5;95:8;108:12;
110:10,14
**represent (2)**
99:7,8
**representation (2)**
84:16,17
**representations (1)**
99:16
**Representative (1)**
2:14
**representatives (1)**
17:19
**represented (1)**
34:5
**representing (2)**
32:24;59:18
**request (1)**
37:15
**requests (1)**
95:2
**require (2)**
78:5;117:4
**required (8)**
25:16;34:17;36:7;
60:15;62:9;63:7;97:5;
98:5
**requirements (4)**

28:21;40:18;61:23;
100:23
**requisite (1)**
55:22
**rereading (1)**
111:12
**ResCap (5)**
25:7;26:7;35:13;
38:18,24
**reservation (1)**
58:14
**reservations (2)**
24:21;114:19
**Reserve (5)**
35:5;71:12;72:15;
73:3;93:12
**reserved (5)**
50:23;92:13;93:7;
114:20;118:18
**reserves (1)**
39:18
**reserving (2)**
18:14;91:9
**reset (1)**
21:10
**reside (1)**
33:3
**Residential (4)**
14:19;17:3;25:11,
12
**resolution (17)**
19:18;29:21,25;
30:2,8,14;31:3;32:10;
33:18;34:21;35:7;
36:8,20;37:21;58:22;
78:8;96:7
**resolutions (3)**
34:8,16;78:4
**resolve (18)**
24:24;25:3;31:2,24;
33:2;34:6,10;35:19;
43:14;58:25;59:12;
60:8;71:18;76:22;
114:12;119:2;120:18;
124:20
**resolved (26)**
21:3;28:24,24,25,
25;29:7;58:19;70:6,
10,13,15;71:3,12;
73:17,23;74:6,25;
75:8;78:4;81:9;89:6;
92:3;93:21;94:1,2;
114:8
**resolves (10)**
33:8,10,12,13,21;
34:1,11;35:1,9,24
**resolving (1)**
33:24
**Resources (2)**
114:11,13
**RESPA (2)**
11:11;74:25
**respect (38)**

26:23;27:11,17;
37:17;50:2;58:21;
60:6;64:17;67:8;70:9;
74:14;75:22;76:22;
78:8,16,17;79:17,19;
80:6,24;81:1,11,12,
13;82:9,25;83:1,3,5;
84:4;87:18;94:9;
106:21;107:20;
108:16;109:23;110:5;
123:25
**respective (2)**
27:2,4
**respond (3)**
18:16;58:10;61:2
**responding (1)**
116:23
**response (4)**
20:4,5,9;114:25
**responses (2)**
41:23;116:20
**responsible (1)**
49:14
**responsive (1)**
102:7
**rest (1)**
107:2
**restricted (1)**
43:9
**result (2)**
42:3;98:18
**retain (1)**
40:14
**retaining (1)**
60:13
**return (1)**
81:7
**reversed (1)**
20:16
**review (3)**
23:12;80:9;115:24
**reviewed (2)**
59:5;81:3
**revised (2)**
53:14;108:9
**revision (1)**
60:24
**revisit (1)**
105:4
**RFC (11)**
25:11;26:9;27:1,3;
39:12,14,15;40:12;
41:13;53:14;54:8
**riders (3)**
78:13,14;81:1
**right (60)**
18:12;27:23;30:15;
39:18;40:1;41:9;
46:21;47:3,7,9;48:18;
49:17,20;51:9,13,15,
15;54:25;56:10,18,
25;57:10;58:22;59:5;
61:21;69:2;70:1,8,9;

71:14,22;72:3,16;
73:18;74:2,7;75:23;
76:8;79:15;80:10;
81:6;91:25;92:4;93:9,
15;97:12;100:6;
101:2;103:22;110:7;
113:3,16;114:21;
117:18;119:7,21;
121:4,8,14;122:6
**rights (12)**
24:21;36:12;45:16;
58:14;63:12;71:12;
73:3;91:9;92:13;
107:6;114:19,20
**rise (2)**
44:5;45:16
**risk (4)**
19:15,16;105:15,16
**RMBS (11)**
8:11;9:3;31:1;33:9,
10,12,15,15,24;34:4;
92:15
**road (3)**
42:2;94:15;124:20
**robust (2)**
35:7;108:10
**rolled (1)**
25:14
**ROMERO (17)**
16:2,7;59:17,18,18,
21;64:12;65:19,23,
25;66:2,6;69:7,12,15,
17,21
**RONALD (2)**
6:20;15:16
**ROPES (1)**
9:2
**ROSE (1)**
13:11
**Roseland (1)**
11:13
**Rosenbaum (27)**
17:12,14,15,16,16,
23;18:2,4,7,10,13;
20:5,8;21:7,18,20,23;
54:22;122:7,14;
123:1,3,3,9,12,23;
124:2
**ROSS (1)**
9:7
**Rothstein (1)**
10:20
**rug (1)**
98:2
**Rule (11)**
17:24;19:2,15,16;
42:20;58:3;69:8;73:8;
87:2,3;105:13
**ruled (5)**
46:4;48:2;63:2;
89;122:24
**rules (2)**
53:1;76:24

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg                          Pg 143 of 147

August 21, 2013

**ruling (2)**
44:2;106:4
**run (1)**
106:8
**rustling (1)**
49:19

## S

**sake (1)**
46:24
**sakes (1)**
98:1
**sale (1)**
31:20
**sales (2)**
31:18;57:8
**same (6)**
45:9;46:1;50:19;
67:22;82:25;98:21
**San (4)**
16:3;59:11,15,18
**SANDLER (2)**
11:10;75:7
**SANDY (1)**
12:25
**Santa (1)**
113:9
**SARAH (1)**
15:25
**sat (2)**
49:16,21
**satisfaction (2)**
22:10;77:14
**satisfactory (10)**
42:16;43:21;44:17;
45:10,12;70:9;71:14;
74:3,16;92:4
**satisfied (5)**
36:10;39:3;54:21;
58:22;100:23
**satisfies (5)**
40:19;53:12;54:16;
56:23;67:15
**satisfy (4)**
22:20;53:17;54:12;
111:25
**satisfying (1)**
113:5
**save (1)**
85:10
**saw (9)**
44:15;54:1;56:13;
59:3;76:7,9;87:6;
88:22;117:16
**saying (11)**
19:5;41:2,4;42:5;
47:24;85:22;86:6;
95:25;98:18,19;
111:10
**scenarios (2)**
89:19;90:11
**schedule (10)**

106:19;117:10,16;
118:11,12;119:6,13,
20;120:11;122:2
**scheduled (2)**
43:12;73:10
**Scheduling (3)**
2:6,19;23:25
**Scheindlin (1)**
20:16
**SCHINDLER-WILLIAMS (1)**
15:25
**SCHROCK (7)**
7:15;102:8,10,11,
20,22;103:17
**scope (1)**
47:8
**SCOTT (1)**
11:24
**se (1)**
84:21
**seated (1)**
17:2
**Second (15)**
16:12;18:18;19:2;
20:15;21:2,14;32:4;
48:2;50:11;65:21;
70:7;72:6;95:4,18;
115:17
**second-guessed (1)**
95:6
**secondly (1)**
94:9
**Section (17)**
17:23;25:16;59:22,
23;60:10;61:23;
63:15;64:1,7;65:12,
13;67:9;107:21,21;
111:3,3,5
**Secured (39)**
10:3;25:18;35:14;
60:3,4,9,23;61:1,7,12,
12,13;62:4,10,13,21;
63:9,16;64:4,6,8,22;
65:12,12,13;67:7,8,
15,16,17,21,21,24;
68:2,4,11;76:21;80:8,
8
**Securities (13)**
11:11;26:18;28:4;
31:4,5,6;34:11,12,15;
46:13,14;111:17;
112:23
**security (4)**
84:24,25;85:2,4
**seeing (3)**
41:3;111:13;114:24
**seeking (7)**
23:22;38:17;42:21;
78:22,23;79:5;116:25
**seeks (1)**
37:2
**seem (1)**
80:2

**seemed (1)**
83:11
**seems (4)**
41:10;101:8;
102:25;112:1
**send (4)**
21:1;69:19;113:12,
13
**senior (3)**
31:8;35:9,10
**sense (2)**
92:16;105:12
**sensitive (3)**
48:11;62:24;63:7
**sentence (1)**
63:18
**separate (7)**
27:20;35:1;39:10;
40:1;49:23;53:24;
62:23
**separately (2)**
79:18;83:2
**September (3)**
23:15;72:10;121:16
**series (1)**
23:10
**serious (2)**
36:25;48:6
**serve (1)**
95:11
**SERVICES (1)**
16:10
**session (1)**
61:20
**sessions (1)**
32:17
**set (16)**
21:16;49:12;50:19;
53:1;56:4;72:9;76:4;
77:25;93:12;103:1;
111:23;117:3,4;
119:10;123:22,24
**setoff (3)**
19:13,18,20
**sets (3)**
25:6;26:3;61:24
**setting (2)**
111:17;118:15
**settle (3)**
54:12,17;89:14
**settled (2)**
86:16;118:7
**Settlement (91)**
2:13,15,15,20,21;
17:10,19,20;19:10,14,
15,22;20:1,2,17,22,
25;21:4,11,13;22:3,
18;24:15,17;28:2,13,
18;29:15;30:24;31:1;
32:14,20,22,23;33:8,
9,12,12,20,21;34:7,
16,25;35:9,15,15,24;
36:7,10,16,19;37:10,

19;38:5,12;40:6,13,
13,16;41:13;46:9,14;
54:15;55:2;56:12;
57:10;77:11;78:20;
83:13,15,18;84:3;
86:9,14,16;89:6;
92:15,16;93:1,3;
101:21;108:13;
109:25;110:17;111:2,
3,4;119:24,25;123:13,
22
**settlements (5)**
46:13,14;54:5,6,6
**settling (2)**
19:17;94:10
**seven (3)**
24:20,21;56:16
**several (3)**
89:11;96:8;116:18
**SEWARD (1)**
8:10
**shall (7)**
63:23;67:9;68:14;
81:18,23;96:23;
103:24
**share (2)**
35:4;76:15
**SHELLEY (1)**
11:24
**Shore (2)**
29:23;84:21
**short (2)**
17:7;120:2
**shortcoming (1)**
19:24
**shortly (3)**
24:10,17;27:10
**show (1)**
87:16
**showing (1)**
75:2
**SHUGHART (1)**
12:11
**side (1)**
94:17
**Sidney (1)**
69:24
**sight (1)**
30:16
**sign (2)**
41:6,7
**signatories (1)**
36:17
**signed (5)**
79:24;80:7;103:1,2;
105:23
**significance (2)**
75:13;112:13
**significant (6)**
29:9,13;31:14,18;
43:15;45:7
**signing (2)**
39:21;96:4

**SILVERMANACAMPORA (1)**
6:13
**similar (1)**
119:18
**Similarly (2)**
2:17;16:11
**simply (4)**
38:5;62:10,21;95:3
**SIMPSON (1)**
12:20
**sitting (3)**
48:23;49:4;57:10;
120:24
**Situated (2)**
2:17;16:11
**six (3)**
24:20;40:24;118:19
**SKEENS (1)**
12:7
**slow (1)**
123:23
**small (1)**
116:4
**smaller (1)**
39:22
**SMITH (2)**
8:19;71:9
**so-called (1)**
120:1
**sold (2)**
60:19,21
**Solicit (1)**
3:5
**Solicitation (5)**
2:4;23:4,23;42:3;
102:16
**solution (3)**
123:5,11,12
**solving (1)**
124:8
**somebody (5)**
47:20;49:7;95:23;
104:5;110:5
**somebody's (1)**
39:19
**somehow (1)**
27:18
**someone (1)**
95:10
**sometimes (1)**
54:14
**somewhat (2)**
80:1;112:14
**somewhere (2)**
40:8,24
**soon (1)**
68:9
**Sorry (17)**
18:2;43:19;51:17;
64:5;65:23,25;66:6,
13;70:5;74:12;75:4;
77:21;79:13;81:13;
86:6;94:17;113:20

**sort (6)**
57:23;58:2;60:10;
83:24;98:1;99:12
**sought (1)**
77:4
**South (1)**
9:13
**SPAHR (1)**
15:19
**speak (5)**
24:10;78:16;92:7;
122:12,13
**speaking (1)**
48:16
**Special (2)**
6:14;7:3
**specific (19)**
30:17;51:5,14;60:5;
63:6;64:7,12,23;65:7,
11,15;79:8;88:15;
101:18;111:18,21;
112:6;113:2;116:12
**specifically (7)**
18:21;72:14,15;
97:20;101:14;113:14;
117:3
**specificity (1)**
59:13
**specify (1)**
20:18
**specifying (1)**
68:1
**spent (1)**
117:10
**spoke (1)**
57:11
**Square (2)**
13:13;47:22
**squarely (1)**
97:10
**St (1)**
14:22
**stacked (1)**
121:17
**staff (1)**
49:5
**stage (2)**
21:6;30:14
**stake (1)**
45:7
**stand (3)**
29:11;41:8;100:19
**standard (4)**
40:20;57:3;96:25;
97:6
**standards (2)**
41:21,22
**standing (1)**
99:14
**standpoint (2)**
91:4;112:9
**stands (2)**
56:6;90:15

**start (3)**
100:3;117:2,21
**started (1)**
55:15
**starting (1)**
118:7
**starts (1)**
19:5
**state (5)**
33:4;50:25;53:22;
62:22;122:23
**stated (2)**
29:5;60:10
**Statement (75)**
2:3;3:3;23:23;24:3,
13,19;25:2,20,22,24;
26:5;27:10;28:22;
29:7;30:19;37:24;
38:4;39:7,11;41:2,21,
23;42:25;51:24;52:5,
14,18;53:22;55:8;
56:5;57:2,5;59:1,6,8;
60:24;61:14;62:25;
63:7,16,18;64:2;
66:18;69:25;71:11;
73:2,24;74:6,17,20;
77:3;79:4,9;82:24;
83:8;85:15;87:11,15;
88:12;90:25;91:6,12;
96:5;100:17,21;
107:22;108:9;109:19;
110:10,25;111:6;
112:4;114:24;117:14;
120:11
**statements (2)**
81:9;88:13
**STATES (4)**
5:2,3,12;103:7
**status (1)**
92:12
**statute (3)**
61:23;62:12;63:4
**statutes (2)**
62:11,22
**stay (1)**
35:10
**STEEN (1)**
8:2
**Steering (1)**
9:3
**STEPHEN (2)**
6:10;118:13
**stepped (1)**
54:22
**steps (4)**
92:18,25;103:14;
124:13
**still (8)**
66:3;70:13;75:2;
84:6,15,17;88:19;
105:6
**stop (5)**
42:2;65:21,24;

74:16;90:25
**STRAUSS (1)**
10:11
**Street (8)**
3:22;5:4,14;9:4;
15:12,21;16:12,20
**strikes (1)**
42:17
**STROHBEHN (1)**
12:2
**stronger (1)**
106:5
**struck (1)**
88:4
**structure (7)**
29:10;31:11;38:10;
46:22,25;100:13;
112:15
**structured (3)**
44:23;45:8;100:12
**struggled (1)**
85:17
**struggling (1)**
82:10
**stuck (1)**
110:4
**sub-classes (1)**
25:12
**sub-debtors (1)**
25:9
**subject (8)**
20:3;37:4;50:25;
68:14,17;113:5;
114:24;120:12
**submit (2)**
21:1;112:9
**submitted (2)**
23:16;81:2
**subordinate (1)**
53:23
**subordinated (1)**
39:19
**subordination (3)**
33:25;53:7,8
**subrogation (1)**
36:2
**subs (1)**
25:8
**subsequent (1)**
96:6
**subsequently (1)**
18:8
**subsidiaries (2)**
33:7;34:13
**substance (6)**
42:16;43:21;44:17;
45:10,12;88:6
**substantial (3)**
34:19;36:12,14
**substantially (1)**
35:16
**substantive (1)**
36:1

**suddenly (1)**
89:8
**sued (1)**
96:2
**suffering (1)**
56:23
**sufficient (1)**
103:9
**suggest (4)**
51:10;58:4;86:5;
112:12
**suggested (1)**
62:9
**suggesting (1)**
121:21
**suggestion (1)**
37:25
**suing (1)**
50:14
**Suite (7)**
3:22;5:5;6:16;
12:14;13:5;14:21;
15:13
**SULLIVAN (1)**
11:18
**Sunday (1)**
95:7
**supplement (1)**
26:25
**support (22)**
21:12;24:5,8;31:7;
32:13,15;33:15;
35:15;36:17,18;37:9;
42:12;43:20,22;
49:13;55:23;57:17;
79:24;93:1;95:1;
97:11;99:13
**supporting (8)**
42:11,17,21;43:21;
44:9,17,21;112:2
**supportive (2)**
30:24;31:1
**supposed (1)**
116:22
**Supreme (1)**
72:6
**sure (18)**
48:16,25;51:4,20;
52:20;53:17;55:13;
61:3;67:24;75:14;
79:17;80:18;94:11;
105:19;106:7,8;
107:13;116:10
**surprised (1)**
120:15
**SUSAN (1)**
5:8
**suspect (1)**
81:14
**sweep (1)**
98:2
**switch (1)**
45:25

**synch (1)**
46:17
**system (1)**
34:9

---

**T**

---

**Tabulation (2)**
2:4;23:24
**tackle (1)**
48:21
**talk (11)**
25:19;27:8;28:14;
41:21;42:19,24;66:4;
78:3;85:14;92:20;
111:16
**talked (4)**
39:9;46:18;49:21;
109:3
**talking (4)**
66:7;94:22;105:10,
15
**talks (2)**
111:3,14
**tall (1)**
121:23
**tanto' (1)**
19:16
**tax (44)**
57:13;59:14,14;
60:5,6,12,13;61:20;
62:3,4,10,11;63:4,4,8,
9,16,19,20,24;64:6,8,
10,11,13,16,20,22,23;
65:2,10,12,20;66:10,
14,22,25;67:9,14,15,
18,21;68:2,24
**taxes (6)**
62:14,16,18,21;
63:21;65:2
**taxing (9)**
59:11,15;62:20;
63:13;67:15,19;68:1,
12;69:1
**telephone (7)**
59:4,16,17;70:2;
74:22;114:14,17
**TELEPHONICALLY (4)**
9:17;15:25;16:7,15
**telling (3)**
41:5;43:3;120:7
**tells (1)**
69:19
**temporary (5)**
116:21,25;117:8,
22;118:23
**ten (4)**
24:24,25;75:11;
95:6
**tens (1)**
29:20
**term (1)**
25:18

12-12020-mg    Doc 4815    Filed 08/22/13    Entered 08/23/13 14:21:11    Main Document
RESIDENTIAL CAPITAL, LLC, et al.,
Case No. 12-12020-mg
Pg 145 of 147

August 21, 2013

**terminate (2)**
42:22;44:9
**terminated (1)**
32:12
**terms (6)**
20:12;29:12;42:12;
72:23;96:20;123:22
**terrific (1)**
115:2
**test (4)**
39:3;40:22;53:12,
18
**THACHER (1)**
12:20
**Thanksgiving (4)**
118:2,4,20,21
**thereafter (2)**
24:19;68:10
**Thereof (1)**
3:5
**thereto (1)**
82:5
**thinking (1)**
86:19
**Third (6)**
10:21;12:13;28:3;
32:6;105:7;111:7
**third- (2)**
82:3;112:14
**third-party (15)**
31:25;32:10;33:2;
37:5;38:14;40:25;
44:4;50:2,13,15;
94:12;101:6;103:8;
111:15;112:13
**thirteen (1)**
31:5
**THOMAS (2)**
9:17;10:24
**though (4)**
68:19;81:2;88:6;
119:19
**thought (15)**
39:6,25;41:5;44:15;
55:17;68:21,23;79:6,
25;80:12;88:23;
104:18;111:11;
113:18;118:17
**threat (1)**
35:25
**three (14)**
25:6,14;27:18;
32:25;39:9,12,16;
40:3;41:5;53:8,13,19;
64:25;87:13
**throughout (1)**
34:9
**tie (1)**
107:5
**tied (1)**
42:18
**til (1)**
95:7

**timed (1)**
119:9
**timeline (4)**
116:10,13,13,19
**timely (1)**
65:6
**Times (6)**
13:13;32:25;89:11,
24,25;109:1
**timetables (1)**
119:21
**tinker (1)**
105:20
**tireless (1)**
32:2
**tirelessly (1)**
124:18
**today (25)**
28:20;29:11,14;
41:19;42:19;43:4;
45:19;48:5;49:8;56:7;
81:10;87:3;88:14;
89:12;99:14;103:6;
107:9;113:6;115:9;
117:10,14;120:10,11,
17;124:11
**today's (1)**
17:6
**Todd (1)**
22:25
**together (1)**
27:19
**told (8)**
43:19;44:8;47:14;
60:10;64:9;89:10;
94:17;98:22
**TOLLES (1)**
9:11
**tomorrow (10)**
87:16;115:8,11,16,
18,18,22;119:8;
123:25;124:7
**took (1)**
43:1
**Top (3)**
52:21,22;66:16
**TORRES (1)**
13:19
**total (3)**
24:20;55:5;56:14
**totally (1)**
55:20
**touched (2)**
28:20;79:16
**tough (1)**
100:2
**toward (1)**
29:21
**track (1)**
119:20
**Trade (1)**
7:4
**Transcribed (1)**

3:20
**transcript (1)**
89:4
**transfer (1)**
62:10
**travels (1)**
105:5
**Treasurer (2)**
58:19,21
**treatment (22)**
33:13;35:16;36:3,
24;37:1,3;38:10;40:1,
11;53:7,17;56:21;
59:14;60:5,5;64:16;
67:23,23;68:1,23;
80:16;89:2
**trial (16)**
33:11;43:12,13,15;
82:23,24;83:4;85:19;
117:1,4,6,12;118:6,
19;119:10,22
**trials (1)**
119:10
**tried (10)**
46:24;50:20;51:1;
61:24;76:23;77:2,13;
90:3;109:21;120:18
**tries (1)**
121:5
**true (1)**
113:1
**true-up (3)**
26:23;56:17,22
**Trust (36)**
8:3;9:21;26:12,14,
16,21,24;27:24,24;
28:3,4,4,5,6;35:1,12;
54:10,19,20,25;55:6;
56:21;59:2;60:19;
62:10,19;63:22;
75:12;78:9;92:17,17,
23;93:2,15;111:18,18
**Trustee (5)**
5:3;8:11;9:21;
43:17;94:3
**trustees (2)**
33:15,24
**Trustee's (1)**
93:25
**trusts (3)**
26:11;28:7;113:2
**Trust's (1)**
35:11
**try (9)**
28:22;49:5;50:5;
54:17;73:12;108:6;
115:3;120:18;121:24
**trying (6)**
53:15;54:12;87:4;
102:24;123:22;124:9
**turn (1)**
24:8;29:1;96:1
**turned (1)**

95:8
**tweaks (1)**
113:7
**TWEED (3)**
10:2;77:19,21
**twelve (1)**
27:14
**twenty (2)**
24:20;25:9
**twenty-six (1)**
25:11
**two (21)**
18:21;19:3;25:8;
31:4,18;35:6;36:24;
40:2;41:6,14;44:12;
53:8,12,13,20;87:13;
89:19;94:5;100:18;
118:8;122:22
**TYLER (1)**
14:2
**type (1)**
65:14
**types (1)**
33:6

**U**

**Ultimately (7)**
31:16;32:12;43:6;
87:1;88:3;90:17;
106:22
**ultimatums (1)**
98:20
**UMB (6)**
10:12;85:15;93:21,
22;119:8;123:25
**Um-hum (1)**
84:9
**unable (4)**
58:25;59:12;71:18;
122:16
**unacceptable (2)**
30:3;94:18
**uncertain (1)**
36:21
**uncertainty (1)**
34:10
**unconfirmable (3)**
42:1;43:5;98:16
**uncontested (2)**
17:7;18:13
**undefined (1)**
21:14
**under (27)**
17:23;19:15,16;
24:12;25:9,16;35:5;
37:1;38:14;50:6;54:7;
56:4;57:13,14;60:3,
15;62:22;63:13;
64:10,14,16;68:16;
78:25;81:23;90:25;
95:12;98:2
**underneath (1)**

25:12
**underst (1)**
86:9
**understands (2)**
106:3;107:13
**understand's (1)**
92:3
**Understood (5)**
22:21;57:24;85:7;
86:11;96:17
**unfair (1)**
56:23
**unfavorable (1)**
42:21
**unfettered (2)**
29:18;92:21
**unimpaired (1)**
63:23
**Union (1)**
70:6
**unique (1)**
37:3
**UNITED (3)**
5:2,3,12
**units (3)**
26:14,15;28:6
**universe (2)**
99:12;105:10
**unless (6)**
42:9;43:14;56:5;
64:8;83:11;100:17
**Unlike (1)**
33:11
**unpaid (1)**
63:21
**unprecedented (3)**
29:16;31:20;34:5
**unquestionable (1)**
34:7
**unrelated (2)**
101:7,15
**unresolved (1)**
75:2
**unsecured (8)**
26:5;27:3,12;31:8,
12;35:9,10;39:15
**unspecific (1)**
60:5
**up (37)**
25:6,14,25;26:15,
22;36:5;41:14;42:10,
24;49:4;52:4;54:10,
11;55:11;71:7;75:20;
76:25;77:1,12;79:24;
82:1;86:17;87:16;
88:10;89:9;92:8,21;
94:20;97:9;99:25;
101:4,9;104:5;
106:22;111:17;
121:17;122:3
**update (1)**
77:25
**upon (8)**

26:6;29:18;35:16;
38:3;62:10;88:20;
100:12;106:4
**upset (1)**
85:18
**urged (1)**
33:18
**URQUHART (1)**
11:18
**USC (1)**
2:11
**use (1)**
50:4
**used (4)**
19:22;46:19;80:23;
91:14
**useful (3)**
22:8,14;30:18
**usually (1)**
64:18
**UZZI (48)**
10:7;77:15,18,18,
21,21;78:8,12,23,25;
79:14,15;80:5,10,14;
81:6;82:8,9,13,15;
84:1,10,24;85:9,11,
13,17;86:4,18,20,22;
87:2,8,12,18;88:1,8;
90:21,23;91:3,10,13,
16,19,21,22;120:20,
22
**Uzzi's (1)**
29:23

## V

**vacation (1)**
117:11
**valid (1)**
63:20
**value (22)**
27:13;28:8,9;41:2,
4,10;62:13,14;77:6,9;
83:21;84:7,13;85:22;
86:1,1,2,15;109:3,4,9;
110:17
**valuing (5)**
40:8,23;83:14,18;
86:10
**Varick (1)**
5:4
**variety (1)**
46:12
**various (4)**
26:11;34:2;108:14;
111:18
**vary (1)**
26:6
**VAUGHAN (1)**
12:2
**version (2)**
26:2;49:22
**veto (1)**

44:25
**VI (1)**
2:9
**VICENTE (2)**
16:23;73:20
**view (3)**
46:22;93:14;99:19
**views (1)**
30:7
**voice (1)**
80:3
**voluntary (1)**
104:16
**vote (11)**
55:18,23;56:4;
103:8,25;104:4,6,7,
16,19;105:24
**Votes (7)**
2:4;23:24;55:18,22;
102:18;103:5;106:3
**voting (9)**
42:3;75:11;116:21,
25;117:8,22,25;
118:23,23

## W

**wait (2)**
37:7;66:4
**waiting (1)**
73:9
**walk (2)**
41:16;46:25
**walked (1)**
110:3
**walking (1)**
30:17
**WALPER (2)**
9:17;120:24
**Walrath (2)**
95:19;97:22
**WALTER (1)**
9:25
**WALTERS (2)**
12:2,8
**WaMu (1)**
97:20
**wants (3)**
49:4;57:22;115:24
**warned (2)**
29:24;30:2
**Washington (2)**
16:21;95:19
**way (24)**
22:10;27:18;42:20;
44:7;46:5,25;48:3;
49:3;62:9,11;64:25;
67:22;78:16;80:4;
87:6;94:15,17;96:4,
21;97:15;102:4,13;
113:5;124:15
**ways (3)**
65:1;95:6;112:1

**weak (1)**
108:23
**WEBB (1)**
14:2
**week (4)**
21:8;87:13;115:20;
117:13
**weekend (1)**
118:21
**weeks (1)**
122:5
**weigh (2)**
107:12,12
**WEISSER (6)**
14:15;92:5,7,9,10;
93:8
**WENDY (4)**
16:15;58:24;59:6;
122:8
**weren't (2)**
62:21;99:25
**West (1)**
3:22
**whatnot (1)**
108:23
**What's (7)**
21:19;28:23;41:1,
12;55:5;117:20,22
**Whereupon (1)**
124:25
**Whittier (1)**
16:5
**whole (7)**
43:15;44:6;45:11;
47:23;65:11;89:9;
113:13
**wholesale (1)**
45:4
**who's (2)**
50:22;86:23
**who've (1)**
105:23
**wide (2)**
29:16;33:5
**willful (2)**
98:4,11
**WILLIAM (1)**
7:7
**WILMER (1)**
7:2
**Wilmington (4)**
8:3;9:21;35:11,12
**wind (1)**
86:17
**wish (6)**
18:24;21:17;23:6;
74:7;113:19,21
**Wishful (1)**
86:19
**withdrawal (1)**
91:14
**withdrawing (3)**
91:6,8,11

**withdrawn (4)**
54:21;91:20;92:12,
12
**within (10)**
25:3,13,22;27:1,1;
28:1;53:15;63:9;
99:12;119:21
**without (12)**
33:11;38:12,12;
41:13;81:24;82:5;
88:1;95:7,15;98:15;
121:19;123:20
**witnesses (1)**
119:11
**WL (1)**
95:21
**Wolicki (1)**
3:20
**Word (1)**
105:5
**words (3)**
88:4;101:8;102:13
**work (2)**
62:11;73:12
**worked (2)**
95:25;124:18
**working (1)**
49:5
**World (2)**
7:4;87:12
**worth (6)**
48:14;77:24;80:15;
110:11,15;111:24
**writing (1)**
52:8
**written (1)**
106:24
**wrong (2)**
44:14;95:12

## Y

**year (4)**
24:11;62:12,14;
65:4
**years (4)**
29:19;31:13;33:5;
34:10;36:5,15
**yesterday (6)**
60:2;67:8;104:3,8,
10,23
**York (23)**
3:23;5:6,16;6:5;7:5,
13;8:5,13,23;9:23;
10:5,14,22;11:5,22;
12:15,23;13:6,14,22;
14:5,13;15:5
**Yup (1)**
92:6
**Yvonne (1)**
69:24

## Z

**zero (4)**
83:14,19;86:10,16
**ZIDE (6)**
6:10;118:13,13,17,
21,24

## 0

**02199 (1)**
9:5
**07068 (1)**
11:13

## 1

**1 (5)**
2:12;17:9;65:4;
117:1,6
**1:30 (2)**
124:1,7
**10 (4)**
81:15;96:20;97:2;
109:18
**10.3 (3)**
26:9;39:15;41:8
**100 (4)**
6:15;12:4;28:1;
50:7
**10004 (1)**
8:13
**10005 (1)**
10:5
**10006 (1)**
8:5
**10007 (2)**
5:16;7:5
**10010 (1)**
11:22
**10014 (1)**
5:6
**10017 (1)**
12:23
**10019 (1)**
13:22
**10020 (1)**
15:5
**10022 (3)**
7:13;10:22;12:15
**10036 (5)**
6:5;8:23;10:14;
13:14;14:5
**10040 (1)**
3:23
**1006 (1)**
5:5
**101 (1)**
11:4
**10154 (1)**
9:23
**10166 (1)**

14:13
**10169 (1)**
  13:6
**10178 (1)**
  11:5
**105 (2)**
  2:11;17:23
**10Ac (1)**
  81:17
**11 (13)**
  2:5,11;3:3,5;24:2,3;
  31:21;35:8;36:6;
  38:20;57:8;96:21;
  112:15
**1125 (2)**
  57:3;90:25
**1129 (1)**
  25:16
**1129a4 (1)**
  43:17
**1129a9C (1)**
  61:23
**1133 (1)**
  14:4
**115 (1)**
  15:12
**11753 (1)**
  6:17
**1177 (1)**
  6:4
**118 (1)**
  64:20
**11th (1)**
  72:10
**12:33 (1)**
  124:25
**1200 (1)**
  16:20
**121 (3)**
  61:17;66:15,24
**12-12020 (1)**
  17:3
**1221 (1)**
  15:4
**123 (4)**
  61:17,20;62:3;
  63:18
**14 (1)**
  39:14
**14th (2)**
  23:4,4
**15 (2)**
  26:3;39:14
**15212 (1)**
  15:14
**155 (1)**
  19:3
**156 (1)**
  52:15
**15th (1)**
  121:10
**1633 (1)**
  13:21

**16th (2)**
  95:22;121:16
**1700 (1)**
  13:5
**1735 (1)**
  15:21
**18 (1)**
  60:25
**19103 (1)**
  15:23
**192nd (1)**
  3:22
**19th (5)**
  115:25;117:19;
  118:1,8,18
**1st (1)**
  62:11

**2**

**2 (6)**
  2:13;41:7;110:25;
  118:6;120:1;123:24
**2.1 (4)**
  32:24;79:22;80:2;
  109:5
**200 (1)**
  14:12
**2000 (1)**
  65:3
**20005 (1)**
  16:21
**2001 (1)**
  95:23
**201 (2)**
  5:4;15:13
**2011 (3)**
  95:20,21,22
**2013 (1)**
  24:14
**2013-2014 (1)**
  65:4
**210 (1)**
  16:12
**2100 (1)**
  12:14
**211 (1)**
  14:20
**212 (2)**
  66:14,24
**22 (1)**
  61:11
**22nd (1)**
  11:21
**23 (1)**
  116:24
**230 (2)**
  13:4;35:4
**235 (1)**
  28:5
**24 (1)**
  66:13
**24th (1)**

23:15
**25 (1)**
  110:24
**253 (1)**
  18:19
**26 (2)**
  26:8;111:3
**26th (2)**
  24:5;118:18
**274 (1)**
  19:1
**275 (1)**
  19:1

**3**

**3 (2)**
  2:15;108:20
**30 (2)**
  66:15,24
**300 (1)**
  6:16
**300-plus (1)**
  56:7
**30th (1)**
  78:2
**31.5 (1)**
  26:7
**314 (1)**
  95:20
**315 (1)**
  95:22
**321 (1)**
  95:22
**330 (4)**
  55:3,19;56:1,13
**337 (1)**
  95:22
**34.7 (1)**
  26:8
**345 (1)**
  9:22
**355 (1)**
  9:13
**35th (1)**
  9:14
**3600 (1)**
  14:21
**3rd (3)**
  5:15;24:3;49:23

**4**

**4 (3)**
  2:18;23:10,21
**41.9 (1)**
  26:7
**4152 (1)**
  2:2
**4153 (1)**
  2:2
**4157 (1)**
  2:2

**425 (1)**
  12:22
**4388 (2)**
  58:24;59:7
**44114 (1)**
  7:21
**442 (1)**
  95:20
**443 (1)**
  18:19
**4451 (1)**
  2:11
**4555 (1)**
  3:2
**47th (1)**
  8:22

**5**

**5 (1)**
  2:18
**5.5 (1)**
  108:19
**502i (1)**
  64:14
**503 (3)**
  61:5;62:2;63:9
**506 (7)**
  61:5;62:2;63:13,14;
  64:14;66:25;67:2
**506a (2)**
  67:14;68:24
**506b (4)**
  60:1,16;67:11;
  68:16
**507a8 (1)**
  64:14
**51 (1)**
  11:20
**511 (4)**
  61:23;65:8;67:12;
  68:16
**51st (1)**
  15:22
**55413 (1)**
  16:13
**5592907 (1)**
  95:21
**57.6 (3)**
  26:22;54:11;56:22

**6**

**6 (1)**
  2:20
**601 (1)**
  7:12
**63102 (1)**
  14:22
**64196 (1)**
  12:5
**65 (1)**
  11:12

**7**

**7 (2)**
  7:4;40:6
**7.8 (4)**
  26:9;39:14,15;41:8
**700 (1)**
  3:22
**7023 (1)**
  2:12
**750 (1)**
  79:25
**750-million-dollar (1)**
  30:24
**7th (3)**
  76:6,9,11

**8**

**800 (2)**
  9:4;33:14
**81 (2)**
  108:8,15
**825 (1)**
  10:21
**86 (3)**
  5:14;108:8,15

**9**

**9 (2)**
  23:21;26:3
**900 (1)**
  12:13
**90071 (1)**
  9:15
**901 (1)**
  7:20
**9019 (1)**
  2:12
**90601 (1)**
  16:5
**927 (1)**
  19:3
**973406-2250 (1)**
  3:24
**99 (1)**
  102:1
**9e (1)**
  101:20