# **EXHIBIT 11**

1  Marc Jason Aniel (SBN: 282466)
   LAW OFFICES OF MARC JASON ANIEL
2  205 De Anza Blvd. #144
   San Mateo, CA 94402
3  Phone: 650-814-9478
   Fax:    650-571-5829
4  Email: mj_aniel@me.com

5
6  Attorney for Plaintiffs, Fermin Solis Aniel and Erlinda Abibas Aniel
   Plaintiff, Marc Jason Aniel, in Pro Per

ORIGINAL FILED

AUG -- 2012

DMR

7

8                UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  ERLINDA ABIBAS ANIEL, an individual;      )  Case No.:
    FERMIN SOLIS ANIEL, an individual;        )
11  MARC JASON ANIEL, an individual           )  COMPLAINT FOR
                                    CV         )  12 4801
12                Plaintiffs,                  )
                                              )
13       v.                                    )
                                              )  (1) WRONGFUL FORECLOSURE
14  GMAC MORTGAGE, LLC; EXECUTIVE              )      (VIOLATION OF CIVIL CODE §
    TRUSTEE SERVICES, LLC., DBA ETS           )      2923.5 2924 ET. SEQ.)
15  SERVICES, LLC; AND DOES 1 THROUGH         )  (2) VIOLATION OF 15 U.S.C. § 1692,
    50.                                        )      ET SEQ.
16                                            )  (3) VIOLATION OF 12 U.S.C. § 2605
                                              )  (4) SET ASIDE AND CANCEL
17                Defendants                   )      TRUSTEE'S SALE
                                              )  (5) DECLARATORY RELIEF
18                                            )  (6) QUIET TITLE
                                              )  (7) FRAUDULENT CONCEALMENT
19                                            )  (8) VIOLATION OF CALIFORNIA
                                              )      ROSENTHAL ACT
20                                            )  (9) VIOLATION OF THE UNFAIR
                                              )      COMPETITION LAW (CAL. BUS.
21                                            )      & PROF. CODE §§ 17200 ET. SEQ.)
                                              )
22                                            )  DEMAND FOR JURY TRIAL
                                              )
23                                            )
                                              )
24                                            )

25  I.   **COMPLAINT**

26       COMES NOW Plaintiffs, Erlinda Abibas Aniel and Fermin Solis Aniel, by way of their

27  Attorney, and Plaintiff, Marc Jason Aniel, in Pro Per, complain of the above-named

28

Defendants, demand a jury trial, and allege that the following allegations and other factual contentions have evidentiary support or, where specifically identified as being pled "on information and belief" are likely have evidentiary support after a reasonable opportunity for further investigation or discovery as follows:

## II.    STATEMENT OF THE CASE

1.    This lawsuit arises from: (i) Defendants' attempt to wrongfully foreclose the property through fraudulent documentations containing false and contradictory information; (ii) Defendants' continued attempt to collect debt that the Plaintiffs do not owe; (iii) Defendants' concealment of relevant information regarding Plaintiffs' loan; (iv) Defendants' violations of Federal and State law; and (v) Defendant's continuing tortuous conduct intent to deprive Plaintiffs of their rights, described below.

2.    This action seeks remedies for the foregoing improper activities, including the wrongful foreclosure of the Plaintiffs' property, fraudulent concealment of important information and actions involving the Plaintiffs' property, which resulted in devastating losses and damages by Plaintiffs, which includes, but is not limited to, lost of their property, lost value in their property, lost income, and lost equity in the property.

4.    It has become all too clear now that millions of homes that were foreclosed since the Mortgage crisis in 2008 were in violation of California Law and were done through fraudulent documentation. Robo-signing, false pleadings, false recorded documents, and debt collectors did many other unlawful business practices in order to take advantage of the non-judicial foreclosure laws of California.

5.    As a result, more and more debt collectors involved in wrongful foreclosures have paid for their actions. In 2008, Bear Stearns Companies, LLC, and its subsidiary EMC Mortgage Corporation agreed on a settlement to pay $28 million to settle with Federal Trade Commission for unlawful Mortgage Servicing and Debt Collection Practices. See FTC File No. 0623031. Attorney Generals for Forty-Nine States and the District of Columbia in the United States reached a $26 Billion settlement with Bank of America, JPMorgan Chase, Wells Fargo, Citigroup and Ally Financial. The U.S. District Court for the District of Columbia

Complaint                                    2

approved the settlement over foreclosure process abuses. The settlement arises from multiple abuse of servicing of loans and the foreclosure process. Since most loan were sold in the secondary market, servicer and debt collectors covered up their acts by routinely forging, back-dating fabricated documents at county recorder officers and state and federal courts across the country. Furthermore, the debt collectors employed "robo-signers," who signed hundred of thousands (if not millions) of documents and affidavits without any knowledge of the underlying mortgages. (See CNNMoney Article, "Court approves $26 billion foreclosure settlement," available at: http://money.cnn.com/2012/04/06/real_estate/mortgage-settlement/index.htm).

6. Despite their admission and attempts to settle based on their wrongful conduct, debt collectors continue to this day using fraudulent documents recorded in the County Recorder's office in order to wrongfully foreclose properties.

7. In 2007, Defendant, GMAC Mortgage, LLC (hereinafter "GMAC"), attempted, but failed to assign or transfer Plaintiffs' Promissory Note to HSBC Bank, USA, National Association as Trustee for DALT2007-OA5. As such, GMAC has no authority to collect on the Note and enforce the Deed of Trust. Despite this fact, Defendant, GMAC, and its agents, attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so. In addition to violating the Fair Debt Collection Practices Act and the Real Estate Settlement Procedures Act, Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the San Mateo County Recorder's Office. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of the California Penal Code section 532(f)(a)(4) (which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office, which that person knows to contain a deliberate misstatement.) Through this action, Plaintiffs seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and the Deed of Trust. Simply put, Defendants have no legal, equitable, or pecuniary interest in the Note and the Deed of Trust.

Complaint                                         3

8. In the alternative, if the Court finds that GMAC does have an enforceable security interest in the Note and the Deed of Trust, Defendants did not follow proper non-judicial foreclosure process in California. Defendants did not engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC was required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs. Defendants were in violation of California Civil Procedure §§ 2923.5 and 2936a(b). Also, if the Court determines that the HSBC Bank did have a valid interest in the loan, that it was fully satisfied by the government bailouts and insurance payments. Defendant, GMAC, is attempting to double dip on the debt of the loan by attempting to foreclose the property.

## III.   JURISDICTION AND VENUE

9. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 15 U.S.C. § 1692, and 12 U.S.C. § 2605 which confer original jurisdiction on the federal district courts in suits to address the Defendants' violation of federal law.

10. This Court also has supplemental jurisdiction over the pendant state law claims because they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

11. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. 1332, which confers original jurisdiction on federal district court in suits between complete diverse citizens that involve an amount in controversy in excess of $75,000.00.

12. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Northern District of California and involved real property that is located in the Northern District of California. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

## IV.   PARTIES

13. Plaintiff, ERLINDA ABIBAS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly

Complaint                                          4

known as 75 Tobin Clark Drive, Hillsborough, CA 94010. She signed the Promissory Note and the Deed of Trust.

14. Plaintiff, FERMIN SOLIS ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He only signed the Deed of Trust.

15. Plaintiffs, MARC JASON ANIEL, is now and at all times mentioned herein, an individual residing in the State of California, who owns and lives in the real property commonly known as 75 Tobin Clark Drive, Hillsborough, CA 94010. He did not sign the Promissory Note and is only named in the Deed of Trust as a Joint Tenant.

16. Defendant GMAC MORTGAGE, LLC, is incorporated in Delaware and is based in Pennsylvania and does business in the State of California. At all material times hereto, GMAC was at one point, a sub-servicer, servicer, and beneficiary of the Deed of Trust through a fraudulent Assignment of the Deed of Trust.

17. Defendant EXECUTIVE TRUSTEE SERVICES, LLC., DBA ETS SERVICES, LLC (herein "ETS"), is incorporated in Delaware and is an affiliate of GMAC. ETS is also known as Executive Trust Services dba: ETS Services, LLC with a business address of 2255 North Ontario Street, Suite 400, Burbank California 91504-3120.

18. Plaintiffs are ignorant of the true identity and capacity of Defendants designated as Does 1-50, but will amend the Complaint when their identities have been ascertained according to proof within the time permitted. However, Plaintiffs allege on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of other Defendants, and were, and are, responsible for the injuries, damages, and harm incurred by Plaintiffs.

19. At all times material hereto, the business of Defendants was operated through a common plan and scheme designed to conceal from Plaintiffs the material facts set forth below. Such facts were also concealed from the public and the regulators, either directly or as successors-in-interest to the business acquired from others. The concealment was completed, ratified and/or confirmed by each Defendant herein directly or as a successor-in-interest as the

Complaint                                    5

acquirer of an entire business, and each Defendant performed or has sought to benefit from the tortious acts set further herein for its own monetary gain and as a party of a common plan developed and carried with the other Defendants or as successor-in-interest to the business that did the foregoing.

20.  Plaintiffs allege that each of the wrongful acts or omissions described below was performed either by each Defendant herein, named or unnamed, or ratified and adopted by each Defendant after its occurrence.

21.  Further, those Defendants that did not actively perform the acts or omissions described in this Complaint did affirmatively aid and abet the other Defendants in the performance of such acts of omissions, before, during or after the fact.

22.  Finally, each Defendant herein, named or unnamed, did knowingly derive some form of profit or benefit from the acts and omissions described herein.

23.  Any allegation about acts of any corporate or other business Defendants means the corporation or other business did the acts alleged through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

24.  All Defendants agreed to work together in the conspiracy and/or joint enterprise described in this Complaint based upon an express agreement among all Defendants to wrongfully foreclose the subject property, collect the debt through a Trustee Sale, and profit on the eventual sale of the foreclosed property described herein.  Accordingly, each Defendant, named or unnamed, should be held liable for the acts and omissions of all other Defendants with respect to the causes of action set forth below.

25.  Each of the Defendants herein, named or unnamed, was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth below.  Thus, each such Defendant is responsible for the acts, events, and concealment of every other such Defendant as set forth below.

## FACTUAL ALLEGATIONS

26. On or around June 4, 2007, Erlinda Abibas Aniel executed a Promissory Note (herein "Note") in favor of MortgageIT, Inc. for the refinance of the subject property.

27. On or around June 4, 2007, Erlinda Abibas Aniel, Fermin Solis Aniel, and Marc Jason Aniel executed a Deed of Trust in favor of MortgageIT, Inc., to secure the Promissory Note that was executed on the same day by Erlinda Abibas Aniel. In the Deed of Trust, MortgageIT, Inc. was disclosed as the Lender. Mortgage Electronic Registration Systems, Inc. was disclosed as the beneficiary, solely in its capacity as a nominee for the Lender. Fidelity National Title was disclosed as the Trustee. See Exhibit "A".

28. On information and belief, Plaintiffs allege that prior to them signing the Note and Deed, MortgageIT had already agreed to sell her loan to another entity or entities. And that shortly after the origination of her Loan, MortgageIT did in fact sell her loan to another entity or entities.

29. Securitization is the process whereby mortgage loans were made and then turned into negotiable securities sold to Wall Street. Loans were funded, packaged together and sold to Wall Street, or at least that was the way it was explained. The reality is much different. Wall Street (Wall Street Investment Banks) decided that loan securitization was a new methodology whereby they could lure investors into buying subprime and other loans as new investment vehicle. This would provide the investor with a good Rate of Return on investments, while providing Wall Street with a new methodology of generating commissions. It has generally been assumed that theses funds consisted of Wall Street's own funds, but that is far from the truth. The methodology for Securitization is:

a. Wall Street promoted the Investment Vehicles and received AAA ratings on them. They went to investors, and sold them on the idea. The investors then put up the money for the loans.

b. Wall Street created pooling agreements where they defined in the agreements the loans that they would accept for each investment vehicle. They executed

agreements with the lenders and then immediately issued warehouse lines of credit to the lenders.

c.   Lenders then let brokers know the loan parameters to meet the pooling agreement guidelines and the brokers went out and found the borrowers.

d.   Wall Street took all the loans, packaged them up and sold them as bonds and other security instruments to other investors, i.e. Pension Funds, and paid off original investors or reissued new lines of credit, and earned commissions on both ends.

e.   The process was repeated time and time again

f.   The reality is that the reported lender on the Deed of Trust was NOT the actual lender.   The actual lender who lent the money was the Wall Street investment Bank.   They simply rented the license of the lender, so that they would not run afoul of banking regulations and/or avoid liability and tax issues.

30.   Plaintiffs allege that these unknown entities and Defendants were involved in an attempt to securitize their Note into the HSBC Bank, USA, National Association as Trustee for DALT2007-OA5 trust ("HSBC").   In order for the Plaintiffs' Note to be a part of the HBSC trust, the entities involved were required to follow various agreements and established laws, including the Trust Agreement that govern the creation of the Trust.   Plaintiffs allege the entities involved in the attempted securitization of the Plaintiffs' Note failed to adhere to the requirements of the Trust.   As a result, Plaintiffs' Note was not part of the DALT-2007-AO5 asset/res.   This became more apparent when on or around September of 2009, Erlinda Abibas Aniel called HSBC Bank, the trustee of the Trust, to confirm that her Note was in fact in the alleged Trust.   A representative of HSBC Bank, named "Marianne", informed Erlinda Abibas Aniel that her subject property, loan number, her name, and the property address was no where to be found in their database, and that HSBC did not have that subject property in their records.

31.   This fatal defect renders Defendants third-party strangers to the underlying debt obligation without the power or right to demand payment, declare default, negotiate the loan,

and foreclose the subject property. Although Defendants were aware of this fact, they have and continue to act as if they have authority to demand payment, declare default, negotiate the loan, and foreclose on their property. Plaintiffs specifically dispute this fact.

32. Plaintiffs' information and belief is based on (1) a title report and analysis of the Property's County records; (2) An independent forensic loan audit mortgage compliance analysis report on the subject property; (3) direct written and oral communication with Defendants; (4) Plaintiffs' research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, other complaints, and publicly available securitization documents and practices; (5) HSBC's Pooling and Servicing Agreement ("PSA").

33. Based on the findings, Plaintiffs believe and thereon alleges that her Note was supposed to be properly securitized as a mortgage-backed security that is "pooled" together into the DALT-2007-OA5. The trust is regulated by New York Trust Laws. Plaintiffs allege that the Note was not securitized and that the DALT-2007-AO5 has no legal, equitable, or monetary interest in the Promissory Note such that it can demand payment from the Plaintiffs. Further, after reviewing the PSA, chain of title, recorded documents, and other documents, the Note and the Deed were not properly conveyed to the DALT-2007-AO5 because (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust and (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA.

34. Plaintiffs allege that the Note was endorsed after the closing date of the DALT-2007-AO5, which was on July 31, 2007. This date was established in the PSA and is the date by which all of the Notes had to be transferred into the DALT-2007-AO5 in order for the Note to be part of the trust res.

Complaint                                              9

35. The true investor or lender was subsequently bailed out by the U.S. Government or through insurance providers who fully satisfied the investor's investment in the loan or the Trust.

36. Conscious they lacked any beneficial interest in the Plaintiffs' loan, Defendants deceptive acts began on or around October 2008, when Plaintiffs sought a loan modification.

37. On or around October 2008, under the belief that there was debt on her property and that she still owed money to MortgageIT, Plaintiffs, with the help of a Law Office, sought a loan modification. Plaintiffs contacted GMAC, the servicer of the loan, and their agent "David" instructed Plaintiffs to submit an application with certain financial forms to the GMAC lost mitigation department. Plaintiffs submitted a loan modification application package at the request of GMAC. After Plaintiffs submitted its application, they were not contacted or informed of any decision.

38. On or around December 2008, Erlinda Abibas Aniel, on her own, spoke to a GMAC representative by the name of "Jacob". This agent informed Ms. Aniel that GMAC did receive the application, but that it was an application for a "Short Sale" and not a loan modification. "Jacob" promised to change the request from a "Short Sale" to a loan modification and promised that as long as Plaintiffs were in default of the mortgage, they would be approved of a loan modification.

39. Plaintiffs have never received any response in relation to their loan modification application from GMAC.

40. On September 25, 2008, ETS, claiming to be an agent for the beneficiary, executed a Notice of Default, and then recorded that Notice of Default on September 29, 2008. In that Notice of Default, ETS demanded $29,905.26 be paid to MERS in order to cure the default. There were several issues with this Notice of Default. See Exhibit "B". First, it disclosed that MERS was the beneficiary of the Deed and is entitled to payments of the default amount. While MERS was named as a beneficiary it was only authorized to act solely in its capacity as a nominee for the Lender, and not on its own powers. Also, MERS is merely a registration system and is not entitled to any payments on the mortgage or any default amount. Second,

ETS purposefully mislead the Plaintiffs to believe that they were the agent for the beneficiary (MERS). This was not true. ETS was a debt collector with the purpose of collecting a debt on this property. ETS could not be a Trustee and an agent for the beneficiary because that would be a violation of California's Civil Code §2934, where a Trustee must remain neutral. The truth is, and Plaintiffs allege this truth, ETS was not the Trustee or the agent of the beneficiary but rather a debt collecting company with no legal, equitable, or enforceable interest in the Deed.

41. On September 25, 2008, and on the same day the Notice of Default was executed, MERS executed another Substitution of Trustee. See Exhibit "C". Rosalie Solano, claiming to be an assistant secretary for MERS, in its own capacity without authorization from the Lender, executed a Substitution of Trustee in favor of ETS. Christine Gomez-Schwab, California a notary public, acknowledged the document. The document was recorded on September 29, 2008, which was the same day the Notice of Default was recorded.

42. On December 30, 2008, Christine Gomez-Schwab, a Trustee Sale Officer, executed a Notice of Trustee Sale on the subject property, which the sale was scheduled on January 26, 2009. See Exhibit "D". Ms. Gomez-Schwab is the same individual that notarized and acknowledged the September 25, 2008 Substitution of Trustee.

43. On February 25, 2009, Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel— filed for Bankruptcy under Chapter 11.

44. On or around August 08, 2009, "Janine Yamoah", a purported " Assistant Secretary" for MERS, executed a purported Assignment of the Deed of Trust. See Exhibit "E". The Assignment alleges that for "value received" MERS granted, assigned, and transferred to HSBC Bank USA, National Association as Trustee for DALT2007-OA5 all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Janine Yamoah" had no corporate authority to assign Plaintiffs' Note and Deed to HSBC and was not an employee of MERS, but is an employee of GMAC and a robo-signer.

Complaint                                          11

45. On or around September 09, 2009, Katherine L. Johnson, an attorney for GMAC, submitted a Proof of Claim to the U.S. Bankruptcy Court where they purported that HSBC was the Secured Creditor, and that the debt on the loan was $2,218,509.71, which was $218,509.71 more than the original loan amount of $2,000,000.00. Plaintiffs objected to the Proof of Claim.

46. On or around August 2, 2010, Plaintiffs' bankruptcy case was converted to a Chapter 7, on their own motion. On or around December 2, 2010, the Bankruptcy Court fully discharged the obligation to pay on the any debt on the subject property. On or around January 5, 2011, Plaintiffs'—Erlinda Abibas Aniel and Fermin Solis Aniel—credit report disclosed that no debt was owed on the subject property. On or around February 4, 2011, Plaintiffs' bankruptcy case was closed.

47. On or around February 01, 2011, "Mira Smoot", a purported "Authorized Officer" for HSBC, executed a purported Assignment of the Deed of Trust. See Exhibit "F". The Assignment alleges that for "value received" HSBC granted, assigned, and transferred to GMAC MORTGAGE, LLC FKA GMAC MORTGAGE CORPORATION all beneficial interest in the Deed, together with the Note "the money due and to become due thereon with interests, and all rights accrued or to accrue under said Deed of Trust." Plaintiffs allege that no such transfer ever occurred and that "Mira Smoot" had no corporate authority to assign Plaintiffs' Note and Deed to GMAC and was not an employee of HSBC, but is an employee of GMAC and a robo-signer. Also, the cut off date on this Trust was July 30, 2007. HSBC could not move or transfer asset in the Trust after the cut off date because it would be a violation of the PSA and be subject to taxation under REMIC. The Document was recorded on February 9, 2011.

48. Sometime after February 9, 2011, GMAC associated account number "0713288492" as the loan in relation to the subject property. This account number is different from the account number on Plaintiffs' Deed of Trust. Based on this information, Plaintiffs are unsure what loan GMAC was attempting to collect because the account number is different from the account number on the Plaintiffs' Deed.

Complaint                                    12

49. On or around June 27, 2011, Lizeth Chavez, a Trustee Sale Officer, purported a Notice of Recession of a Notice of Default. The document was recorded on July 1, 2011. See Exhibit "G".

50. In an attempt to clear the title defects on the property, on or around March 15, 2012, Plaintiff, Erlinda Abibas Aniel, mailed a letter requesting a Deed of Full Reconveyance on the subject property from MortgageIT, the originator of the loan. MortgageIT made no response to the request.

51. Based on information and belief, Plaintiffs thus allege that in retaliation for the request for a Deed of Full Reconveyance, on or around April 21, 2012, Dee Ortega, a Trustee Sale Officer for ETS, as an agent for the beneficiary and not the Trustee purported a Notice of Default on the subject property. See Exhibit "H". The Notice of Default purported that Plaintiffs owed $516,041.70 in a default amount. Plaintiffs allege that they do not owe any money on the property. The document was recorded on April 27, 2012.

52. The Notice of Default also purported that Dee Ortega declared that the "beneficiary or its authorized agent declared that they have complied with California Civil code Section 2923.5 by making contact with the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.5." Plaintiffs allege that no such contact was ever made by any of the Defendants, or their authorized agents, to the Plaintiffs in order to seek alternatives to a foreclosure. No contact was made because none of the Defendants have an enforceable interest in the property to offer such alternatives to a foreclosure. The declaration of compliance was not acknowledge or sworn under penalty of perjury cannot be deemed as a true statement.

53. Prior to the execution of a purported Notice of Default, on or around April 5, 2012, Marcell G. Pace, a purported "authorized officer" of GMAC, purported a substitution of trustee, where the new trustee would be ETS. See Exhibit "I". Plaintiffs allege that no substitution ever took place, and that the substitution has no legal effect because GMAC has no legal, equitable, or enforceable interest in the subject property to substitute ETS as the Trustee. The document was recorded on April 27, 2012, which was the same day the Notice of Default was recorded.

54.  In the alternative, even if the Substitution did take place, ETS was not properly substituted under California law.   Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default.   Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee.

55.  In the Notice of Default, ETS, as required by Federal and California law, sent Plaintiffs a "Debt Validation Notice" along with the Notice of Default. See Exhibit "J".  In that Notice, ETS represented to the Plaintiffs that $516,041.70 was owed to GMAC, the creditor of the loan, and that any dispute of the debt or the debt amount should be in writing and mailed to ETS within thirty (30) of receiving the Notice of Debt Validation or else ETS would assume that the debt was valid.        Upon receipt of a letter disputing the debt, ETS promised that they would obtain and mail to the Plaintiffs a verification of the debt.  On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to ETS, disputing the validity of the debt that was claimed to be owed to GMAC.  Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs. ETS never responded to the notice of Plaintiffs' dispute of the debt as they promised and were required to do under Federal and California law.

56.  On or around July 27, 2012, Ileanna Peterson, a Trustee Sale Officer of ETS, purported a Notice of Trustee Sale on the subject property.  See Exhibit "K".  In that Notice, ETS scheduled a Trustee's Sale on the lien of the subject property for August 27, 2012.  ETS

purported that the total debt on the property under the Deed was $2,856,811.25, which is $856,811.25 more than the original loan amount of $2,000,000.00. ETS also identified the subject property by the wrong Accessory's Parcel Number (APN). ETS purported that the APN number was 038-352-040-0. However, Plaintiffs allege that the APN number under the Deed is 038-352-040. The document was recorded on August 1, 2012.

57. Defendants' failure to provide any information regarding Plaintiffs' note at issue in this case supports Plaintiffs' allegations that their Note was not properly transferred to DALT2007-OA5, and as such, never transferred its interest to GMAC, such that Defendants can enforce Plaintiffs' obligation and/or collect Plaintiffs' mortgage payments.

58. Plaintiffs made payments based on the allegedly improper, inaccurate and fraudulent representations of the Plaintiffs' account.

59. Plaintiffs' credit and credit score were severely damaged.

60. The title to the Plaintiffs' home has been slandered, clouded, and its salability has been rendered unmarketable.

61. Defendants' wrongful acts include (but are not limited to) the following: (i) attempting to collect an unenforceable debt upon the Plaintiffs, (ii) falsely claiming money was due from the Plaintiffs, (iii) creating false reasons to charge Plaintiffs fees, (iv) instituting a foreclosure proceeding, (v) issuing wrongful Notices of Default to Plaintiffs, (vi) by refusing to respond, in any way, to Plaintiffs' communications or communications made for Plaintiffs by their private and public representatives, (vii) issuing wrongful Assignment of the Deed of Trust and Substitution of Trustee, (viii) issuing wrongful Notice of Trustee Sale, and (iv) violating California Civil Procedure Section 2924 et seq., 2923.5, and 2934a(b).

62. Based on information and belief, the holder of all legal rights to the Plaintiffs' loan is unknown by the Plaintiffs and, more importantly, by any of the Defendants. None of the Defendants are the Lender of the loan. None of the Defendants are the Beneficiaries of the loan. None of the Defendants are the Trustee of the loan. On or around May 14, 2012, both GMAC and ETS filed for Bankruptcy under Chapter 11. Based on information and belief,

Plaintiffs allege that neither GMAC nor ETS scheduled the Subject Property as part of their bankruptcy estate or as an asset of their estate.

### FIRST CAUSE OF ACTION
### Wrongful Foreclosure
### (Violation of Civil Code §§ 2923.5 2924 et. seq.)
### (AGAINST ALL DEFENDANTS)

63. Paragraphs 1 through 62 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

64. Plaintiffs allege that they do not owe any money to any of the Defendants. Plaintiffs further allege that they do not owe any money or debt to any Lender, owner, or beneficiary in relation to the Subject Property. Whoever was owed money from the loan transaction involving the Plaintiffs was paid off and fully satisfied long before any of the Defendants claimed ownership of the loan.

65. Defendants have scheduled the subject property to be foreclosed on August 27, 2012, in the County of San Mateo. Even if Defendants postpone the Trustee's Sale, Defendants fully intend to collect on the debt by foreclosing the property.

66. Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924. Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

67. Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

68. Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs. Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial



notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

69. Because Defendants are not the holders of the Note or the Deed and are not operating under a valid power of sale under the Deed, the Defendants do not have the right to proceed with the foreclosure.

70. The burden of proving an assignment or interest in the loan falls upon the party asserting the rights thereunder. In an action by an alleged assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and convincing to protect an obligor from any further claim by the primary oblige. Defendants failed to do so and improperly foreclosed by reason of lack of proof that they had the right to proceed.

71. In California, the assignment of a note generally carries with it an assignment of the mortgage (Cal. Civ. Code § 2936), it is still required in California that the holder of the Note or person operating with authority from that holder be the foreclosing party and that the mortgage not have been assigned away from the note.

72. HSBC did not perfect its interest in the property when Defendants attempted to securitize the loan. The Assignment of the Deed took place after the DALT-2007-AO5 Cut off date, and thus the Assignment did not take place because it would have been in violation of the Trust PSA. Indeed, Defendants do not have a legal, equitable, or enforceable interest in the Note, and the Assignment of the Deed is VOID.

73. As described above, the Defendants conspired to conceal information regarding the dischargability of the loan, and fraudulently executed and recorded documents in order to foreclose the property.

74. The foreclosure was wrongful for each of the following reasons, independent of any of the other following reasons: (1) the beneficial interest in the Plaintiffs' Note and Deed were not effectively assigned, granted, or transferred to the Sponsor or Depositor (who were

supposed to convey Plaintiffs' Note and Deed into the Trust) prior to the closing date of the Trust; (2) HSBC failed to perfect the title to the Note and Deed by not strictly following the requirements of the PSA and other law, regulations, and agreements that govern the DALT-2007-AO5. An assignment of beneficial interest in the Deed and endorsement of the Note after the closing date of the trust was a violation of the PSA; (3) Defendants used Robo-Signers to execute foreclosure documents; (4) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (5) GMAC's violation Cal. Civ. Pro. § 2923.5; and (6) ETS' violation of Cal. Civ. Pro § 2936a(b).

75. As a result of the foreclosure, Plaintiffs were dispossessed of their property and lost income related to the use of the property. Plaintiffs were further dispossessed of the value of their property and the potential appreciation thereof.

76. Defendants thereby acted outrageously and persistently with actual malice in performing the acts alleged in this cause of action. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this referenced, incorporated herein.

**SECOND CAUSE OF ACTION**
**Fair Debt Collection Practices Act**
**(Violation of 15 U.S.C. § 1692, et seq.)**
**(AGAINST ALL DEFENDANTS)**

77. Paragraphs 1 through 66 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

78. Defendant GMAC, and its agent Defendant, ETS, have attempted to collect Plaintiffs' debt obligation and thus is a debt collector pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

79. Federal law prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt...[including] the false representation

of...the character, amount, or legal status of any debt...or [t]he threat to take any action that cannot legally be taken..." 15 U.S.C. §1692(2)(A), (5).

80. Defendants attempt to collect on the Note under false pretenses, namely that HSBC was the creditor and subsequently GMAC was assigned the Plaintiffs' debt when in fact they were not.

81. GMAC, in its capacity as the Plaintiffs' servicer, acted in manner to mislead Plaintiffs that HSBC and eventually GMAC had authority to demand payment and authority to modify the loan.

82. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who GMAC purports to have been the assignee of HSBC's interest in the Note and Deed, seek to use their agent, ETS, to collect a paid-off mortgage payments, collect on the Trustee's Sale, and engage in other unlawful collection practices.

83. On information and belief, HSBC did not have a perfected security interest in the Plaintiffs' Note such that they can enforce Plaintiffs' obligation, collect on the debt, or transfer its interest to GMAC.

84. Plaintiffs allege that GMAC falsely represented the status of their debt and Defendants' ability to enforce the Plaintiffs' obligation on the debt, in which they have no pecuniary, equitable, or legal interest.

85. The conduct described above by GMAC, was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Mortgage. However, despite such knowledge, Defendants continued to demand and collect Plaintiffs' mortgage payments.

86. On information and belief, Plaintiffs allege that Defendants engaged and is engaging in a pattern and practice of defrauding Plaintiffs, in that during the entire life of the loan, Defendants failed to properly credit payments made, incorrectly calculate interest on the account, failed to accurately debit fees, and added unnecessary foreclosure fees and attorney fees, to the point that a purported $856,811.25 in additional fees and debt was added onto the original debt amount of $2,000,000.00.

87. On information and belief, at all times material, Defendants had, and have, actual knowledge that Plaintiffs' account had inaccurate statements, but that Plaintiffs would rely on those statements based on Defendants' inaccurate account.

88. The foregoing acts and omission of each and every Defendant and their agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to the Plaintiffs.

89. Plaintiffs could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e) because Defendant fraudulently concealed the fact that they were not entitled to enforce Plaintiffs' debt obligation and that they were falsely requesting to the Plaintiffs that they still owed a debt to GMAC.

90. As a result of each and every Defendants' violation of the FDCPA, Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); reasonable attorneys' fees and cost pursuant to 15 U.S.C. § 1692k(a)(3); and declaratory relief, from each an every Defendant herein.

91. Plaintiffs suffered damages as a result of Defendants' fraud in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### THIRD CAUSE OF ACTION
**Violation of RESPA**
**(Violation of 12 U.S.C. § 2605)**
**(AGAINST ALL DEFENDANTS)**

92. Paragraphs 1 through 91 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

93. Plaintiffs' loan is a federally regulated mortgage loan and is subject to the federal Real Estate Settlement Procedures Act and its implementing regulation, and the Dodd-Frank Act.

94. On or around May 10, 2012, which was less than 30 days after receiving the notice of debt validation, Plaintiff, Erlinda Abibas Aniel, sent a written dispute, by U.S. Post Certified mail, to the debt ETS claimed was owed to GMAC. Mrs. Aniel request a proper accounting of the debt and the standing for which GMAC can demand that amount from the Plaintiffs.

95. On information and belief, ETS received the Debt Validation letter on or around May 15, 2012.

96. The Debt Validation request contained information to enable ETS and GMAC to identify the Plaintiffs' loan including the borrower's name, loan number, and property address. Also, the debt validation request contained requests for information of the loan, specifically the identity and contact information of the creditor of the Plaintiffs' Note, a complete loan history, accumulated late fees and charges, and information about the validity of the debt purported to be owed to GMAC.

97. On information and belief, ETS and GMAC never acknowledged receipt of the Plaintiffs' Debt Validation letter within five (5) days of receipt of the letter, as required by section 1463(c) of the Dodd-Frank Act.

98. Because the loan is subject to RESPA and the Dodd-Frank Act, all Defendants were required to comply with section 1463 of the Dodd-Frank Act.

99. Defendants violated 12 U.S.C. § 2605 and are subject to statutory damages, civil liability, penalties, attorneys' fees, and actual damage. 12 U.S.C. § 2605.

100. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the

cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

101. As a direct and proximate result of the violations of RESPA and Dodd-Frank Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

102. As a result of Defendants' violation of 12 U.S.C. § 2605, RESPA, and the Dodd-Frank Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

**FOURTH CAUSE OF ACTION**
**Set Aside Trustee's and/or Cancel Trustee's Sale**
**(AGAINST ALL DEFENDANTS)**

103. Paragraphs 1 through 102 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

104. Plaintiffs allege that do not owe any money on this debt and property. Any money that was owed in the Deed was fully satisfied when the originator, MortgageIT, sold the loan to unknown entities, which are currently fully satisfied of any money they paid.

105. Plaintiffs allege that they do not owe any money to any of the Defendants because none of the Defendants have legal, equitable, or an enforceable right to collect payment from the Plaintiffs.

106. Plaintiffs are not required to Tender because a tender amount would constitute a reaffirmation of the debt, which Plaintiffs deny they have debt. A Tender is not required when

owner's action attacks the validity of the underlying debt because tender would constitute and affirmation of the debt. *Sacci v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 at \*16 (C.D. Cal June 24, 2011) citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

107. The Trustee Sale conducted by ETS is improper for several reasons. Defendants did not follow Cal. Civ. Code §2924. Under Cal Civ. Code § 2924(a)(1), only the trustee, mortgagee, or beneficiary, or any of their authorized agents must first filed a Notice of Default. The beneficiary, trustee, mortgagee, or any of their authorized agents did not file the Notice of Default that was recorded on April 27, 2012, in the County of San Mateo. Defendant, ETS, falsely claimed to be the authorized agent for the beneficiary, GMAC, who claimed ownership of the debt. In reality, GMAC had no interest in the loan because the Assignment from HSBC to GMAC was VOID. Therefore, because the Notice of Default was not in compliance with §2924(a)(1), the Trustee's Sale was also not in compliance with § 2924 et. seq., and must be canceled and set aside by the Court.

108. The Trustee's Sale is also unlawful and must be set aside and canceled because Defendant, ETS, does not have any legal right to be a Trustee.

109. Defendants' fraudulent acts in creating these foreclosure documents, using Robo-Signers to blindly execute and record the documents, are also reasons why the Trustee's Sale should never take place, be set aside, or canceled.

110. If none of the Defendants, who are attempting to foreclose the property, have any legal interest in the Note and Deed, then the Court is within its power to set aside and cancel the Trustee's Sale.

111. Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein

112. In the alternative, even if Defendants can foreclose the property, they did not follow proper procedure of California non-judicial law.

Complaint                                        23

113.  Plaintiffs allege that at times mentioned herein the Subject Property was their owner-occupied residence and that Plaintiff was a member of the class of persons protected under Civil Code §§ 2923.5 and 2924.  Plaintiff alleges further that at all times mentioned herein Defendants had a duty to comply with foreclosure avoidance and workout plan requirements of Civil Code §2923.5.

114.  Plaintiffs allege further that Civil Code § 2923.5 expressly required GMAC to engage in certain communications and contacts, or attempt to engage in such communications and contacts with Plaintiffs to help them avoid foreclosure on the Subject Property, and that GMAC and ETS were required to conduct these communications and contacts prior to filing the Notice of Default against the Plaintiffs.

115.  Defendants falsely claimed that they contacted or attempted to contact Plaintiffs in compliance with Civil Code § 2923.5 prior to filing the 2012 Notice of Default against the Plaintiffs.  Plaintiffs allege further that, at all times prior to the Defendants' filing of the initial notice of default on or about April 23, 2012, Plaintiffs were fully available to meet with GMAC or its authorized representative to assess Plaintiffs' financial condition and explore options for Plaintiffs to avoid foreclosure.

116. Second, ETS was not properly substituted under California law.  Plaintiffs allege that no notice of the substitution was ever sent to any of the original beneficiary or any entity that was entitled to receive notice of the Notice of Default.  Under California Civil Procedure Section 2934(a)(b):

> "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof, in the manner provided in Section 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

ETS never sent any such notice of the substitution of trustee and did not attached any affidavit of mailing in its recording of the Substitution of Trustee.  The Substitution was also in

Complaint                                          24

violation of the covenants under the Deed of Trust, where only the Lender may substituted the Trustee and not the beneficiary.  Under covenant 24 of the Deed of Trust, "[l]ender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder b an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the country in which the Property is located." In this case, the Lender did not substitute the Trustee.

117. The Court has a right to set aside or stay any Trustee's Sale that is in violation of Cal. Civ. Code §§ 2923.5 and 2936a(b).

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**
**(AS AGAINST ALL DEFENDANTS)**

118. Paragraphs 1 through 117 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

119. Section 2201(a) of Title 28 of the United States Code states, "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filling of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

120.  Plaintiffs allege that GMAC does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidence by the Deed of Trust and that is purported assignment has no value and is VOID since the Deed of Trust has been paid off fully.

121.  On February 2011, GMAC claimed they were assigned and transferred a secured enforceable interest in, and perfected lien against the Plaintiffs' Note and Deed.

122. Thus, the competing allegations made by the Plaintiffs and the Defendants, above, establish that a real and actual controversy exists as to the respective right of the parties to this matter, including ownership of the property.

Complaint                                              25

123. Plaintiffs request that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the subject Property which authorizes them, in fact or as matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

124. Plaintiffs request that the Court declare that none of the Defendants are the Beneficiary, Trustee, or Lender of the Plaintiffs' loan.

125. Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because Plaintiffs will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it.

126. Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligation of the parties and make a determination as to whether Defendants' claims against Plaintiffs are enforceable and whether they are secured or unsecured by any right title, or interest in Plaintiffs' Property.

127. Furthermore, the conduct of Defendants, and/or one or more of the Doe Defendants, and each of them, as herein descripted, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

### SIXTH CAUSE OF ACTION
### Quiet Title
### (AGAINST ALL DEFENDANTS)

128. Paragraphs 1 through 127 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

129. Plaintiffs, at all times relevant herein, were the owner and/or entitled to possession of the property. The subject property is further described as the following "Legal Description":

Complaint                                   26

"Lot 15, as shown on that certain Map entitled, "TOBIN CLARK ESTATES UNIT NO. TWO, SAN MATEO COUNTY, CALIFORNIA", filed in the Office of the Recorder of the County of San Mateo, State of California on June 25, 1976 in Book 91 of Maps at Pages 17 and 18. APN: 038-352-040"

130.  Plaintiffs' title to the property is Fee Simple.

131.  Plaintiffs are credibly informed and believe that these non-real parties in interest Defendants make some claim adverse to Plaintiffs.  Defendant, GMAC, currently possess an adverse interest in Plaintiffs' subject property through a fraudulent Assignment of the Deed. Defendant, ETS, currently possess an adverse interest in the subject property through a fraudulent Substitution of Trustee. Their claimed interests in the Title of the Property create a cloud on title in California.  Quiet Title is the remaining option.

132.  Plaintiffs seek a determination that Plaintiffs are the sole owners of the subject property free from any adverse interest held by the Defendants, or anyone unknown entity claiming an adverse interest in the subject property.

133.  WHEREFORE, Plaintiffs PRAY that the Court orders that all adverse claims against the subject property, commonly known as 75 Tobin Clark Drive, Hillsborough, California, 94010, are quieted.

## SEVENTH CAUSE OF ACTION
### Fraudulent Concealment
### (AGAINST ALL DEFENDANTS)

134.  Paragraphs 1 through 133 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

135.  Defendants had exclusive knowledge not accessible to the Plaintiffs of material facts pertaining to its foreclosure practices. Defendants are fully aware that they do not have a legal, equitable, or enforceable interest in the Note and Deed.  Yet, they continue to mislead the Plaintiffs about the status of their debt, attempt to collect the debt, and to foreclose the property.

Complaint                                    27

136. ETS, willfully, with intent, in concert with the other Defendants, refuse to disclose an accounting of the alleged debt that the Plaintiffs owe to GMAC. ETS refused to disclose the address and location of the current Lender and the validity of the debt. ETS knows that GMAC and HSBC do not and did not have a legal, equitable, and enforceable interest in the Note and Deed, but has yet still filed a Notice of Default and attempted to collect the debt.

137. GMAC, willfully, with intent, in concert with the other Defendants, refused to disclose that HSBC did not perfect its security interest in the Property. Instead, GMAC continues to purport that Plaintiffs owe money to GMAC, and that GMAC is a Beneficiary entitled to foreclose the property.

138. GMAC, willfully, with intent, in concert with the other Defendants, told the Plaintiffs that they would be approved for a loan modification as long as they stopped making payments on the mortgage because GMAC had authority to modify the loan, knowing that they did not have any authority to modify the loan and that HSBC had no legal, equitable, or enforceable interest in the Note and Deed.

139. Each and every Defendant knew that their actions were wrong and intended to mislead the Plaintiffs. As described herein, there deception was essential to their overall plan for unjust enrichment through the wrongful foreclosure of the property. Defendants stood to receive an unjust enrichment without having any interest in the property.

140. As a proximate and actual result of the foregoing concealment by Defendants, Plaintiffs are faced with an impending Trustee's Sale, and the potential lost of their property. Should the foreclosure take place, Plaintiffs will have suffered grave damages by depriving them use of their property, income from the property, depriving them access to equity lines of credit, value from the property, and harm to their credit reports.

141. Without limiting the damages as described elsewhere in this Complaint, Plaintiffs damages arise from this Cause of Action include loss of equity in their property, costs and expenses related to protecting their interest in the property, reduced credit score, as well as fees and costs, including, without limitation, attorney's fees and costs.

Complaint                                          28

142. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

143. As a direct and proximate result of the Defendants' Fraud, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

144. As a result of Defendants' Fraud, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs— Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

145. To this day, Defendants are under the false belief that they own the loan, which was sold to an unknown investor years ago. Defendants acted outrageously and persistently with actual malice in performing the acts alleged herein and continue to do so. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

## EIGHTH CAUSE OF ACTION
### Violation of California Rosenthal Act
### (As Against all Defendants)

146. Plaintiffs incorporate by reference paragraphs 1-145 each and every allegation set forth above and herein.

147. To establish a violation of the California Rosenthal Act:

(1) the plaintiffs are a natural person who is harmed by violations of the California Rosenthal Act. Cal Civ. Code § 1788.2(g).

(2) involves a "debt", which means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person. Cal Civ. Code § 1788.2(d). Here, the debt is a discharged mortgage loan.

(3) the defendant collecting the debt is a "debt collector", which is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal Civ. Code § 1788.2(c) because they are not in the lending business but rather in collecting on defaulted mortgage loans by demanding inflated amounts or creating fraudulent documents in order to collect a debt.

(4) the defendant has violated, by act or omission, a provision of the California Rosenthal Act.

148.   Based on information and belief, Plaintiffs allege that GMAC is a Debt Collector. GMAC is in the business of servicing the loan, which includes receiving payments and demanding payment from borrowers.

149.   Based on information and belief, Plaintiffs allege that Defendant, ETS, in its alleged role as an agent of the beneficiary, is a debt collector. Defendant, ETS is a debt collector because they warned the Plaintiffs that they were a debt collector in the Notice of Trustee's Sale. Defendant, ETS, is also a debt collector because their interest in the debt occurred after the debt was purported in default.

150. Defendants violated the Act when in attempting to collect the debt they:

a.      GMAC misrepresented to Plaintiffs the owner of the Note and the Deed when it claimed that HSBC was the owner of the loan and subsequently GMAC was the owner of the loan. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

Complaint                                            30

b.       ETS falsely claimed Plaintiffs owed $856,811.25 to GMAC. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

c.       Defendants submitted and recorded fraudulent, fabricated and bogus Notice of Default. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

d.       Defendants falsified the amount due, falsely claimed HSBC and later GMAC was the owner of the loan, and refused to explain or breakdown the charges on the account. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this action violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

e.       Defendant attempting to enforce an interest in the property when they had no legal, equitable, or enforceable interest in the property. See ¶ 39-46. This is a violation of Cal Civ. Code §§ 1788.13(i), (k) and (l). Because, for reasons stated above, this violates the FDCPA, this is also a violation of Cal Civ. Code § 1788.17;

f.       Making false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C § 1692e:

g.       Making false representations or using deceptive means to collect or attempt to collect on any debt, U.S.C. § 1692e(10); and

h.       Making unfair or using unconscionable means to collect or attempt to collect any debt, 15 U.S.C. § 1692f.

151. Pursuant to California Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover actual damages sustained as a result of Defendants for violations of the Rosenthal Act. Such damages include, without limitation, monetary losses and damages, and emotional distress suffered, which damages are in an amount to be proven at trial. In addition, pursuant to Cal. Civil Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover penalties of at least $1000.00 per violation as provided for in the act.

Complaint                                              31

152. Pursuant to Cal. Civ. Code §§ 1788.30 and 1788.17, Plaintiffs are entitled to recover all attorneys' fees, and cost incurred in the bringing of this action.

153. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the cost of repairing Plaintiffs credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their Property title and setting aside the trustee's sale, and attorneys'' fees and costs, in an amount to be proven at trial.

154. As a direct and proximate result of the violations of Rosenthal Act by ETS and GMAC, Plaintiffs have suffered actual pecuniary damages including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

155. As a result of Defendants' violation of the Rosenthal Act, Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### NINTH CAUSE OF ACTION
### Violation of the Unfair Competition Law
### (Cal. Bus. & Prof. Code §§ 17200 et. sq.)
### (AGAINST ALL DEFENDANTS)

156. Paragraphs 1 through 155 and the paragraphs following this cause of action are incorporated by reference as though fully set forth herein.

157. Defendants have engaged in unfair, unlawful, and fraudulent business practices in the State of California, as set forth above.

158. The California Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200 et. Seq., ("UCL") defines unfair competition to include any "unlawful" or "deceptive" business act or

Complaint                                          32

practice. The UCL authorizes this Court to issue whatever orders or judgment may be necessary to prevent unfair or unlawful practices, or to "restore to any person-in-interest any money or Property, real or personal, which may have been acquired by means of such unfair competition" *Id.*

159. GMAC's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. § 1692, et seq., Cal Civ. Code §§ 2924 et seq., and 2923.5.

160. ETS' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605, Cal Civ. Code §§ 2924 et seq., and 2934a(b).

161. Defendants are in direct violation of Cal. Penal Code § 532(f)(a)(4).

162. Defendants failed to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095.

163. Also, All of the Defendants' acts and practices alleged herein are unlawful business practices for the following reasons, independent of any of the other following reasons: (1) because Defendants do not have any legal, equitable, or enforceable interest the Note or the Deed, (2) because Defendants cannot surmount their burden of demonstrating they own the Note or have a power of attorney with respect thereto, (3) Defendants used Robo-Signers to execute purported foreclosure documents, (4) GMAC falsely claiming to be the owner of the Loan (5) failing to respond to Plaintiffs' debt validation request after receiving the Notice of Default; (6) accepting and demanding payments from debts that were non-existent; (7) acted as beneficiary without the legal authority to do so.

164. Defendants facilitated, aided, and abetted the illegal, deceptive, and unlawful enforcement of Plaintiffs' Note and Deed and engaged in other illegal debt collection activities.

165. GMAC, in its role as servicer, had been acting in a manner to mislead Plaintiffs into believe HSBC was the owner of the loan and subsequently GMAC was the owner of the loan.

166. As alleged herein, Plaintiffs' Note was not properly transferred to HSBC, who sought to foreclose the property, collect the debt, and later transferred its interest to GMAC, in order for GMAC to collect on the debt.

167. On information and belief, HSBC and GMAC did not and do not have a perfected security interest in the Plaintiffs' Note such they can enforce Plaintiffs' obligation and/or foreclose the property.

168. On information and belief, ETS refused to disclose what lien they are foreclosing the subject property. In the Notice of Sale, ETS warns potential bidders that they may or may not be bidding on a first or second lien and not the subject property, and that the winning bidder may suffer legal consequences in bidding on the lien.

169. Defendants willfully, with knowledge of the wrongdoing, maliciously executed and recorded foreclosure documents in order to wrongfully foreclose the property. Defendants are merely debt collectors attempting to collect a debt. Defendants, fully verse in California non-judicial laws, take advantage of the lack of proof required by non-judicial foreclosures by establishing these practices. This conduct was malicious because Defendants knew that they were not acting on behalf of the current beneficiary of the Note and Deed. However, despite such knowledge, Defendants continued to make demands for payment.

170. As more fully described above, Defendants' acts and practices are unlawful. This conduct is ongoing and continues to this date.

171. As a result, Plaintiffs, along with millions of homeowners, suffer the consequences of losing their homes to entities, who did not put a single dollar into the property. Plaintiffs' lose irreplaceable value in their property, and may have to relocate and lose their home as a result of these practices. Based on information and beliefs, Defendants' benefits in their wrongful conduct does not come close to outweighing the prejudice suffered by the Plaintiffs and consumers in California. This conduct is ongoing and continues to this date.

172. Accordingly, Plaintiffs are entitled to exemplary and punitive damages in a sum according to proof and to such other relief as is set forth below in the section captioned Prayer for Relief, which is by this reference incorporated herein.

173. Plaintiffs are entitled to restitution pursuant to UCL § 17203. Defendants violated several laws including UCL § 17200 et seq. and must be required to disgorge all profits related

to their unfair, unlawful, and deceptive business practices. Defendants have been unjustly enriched, by collecting payments that they are not entitle to, and should be required to make restitution to the Plaintiffs and other California consumers who have bee harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. Prof. Code §§ 17203 and 17204.

174. As a direct and proximate cause of the actions of the Defendants, and each of them, state above, Plaintiffs were injured in that a cloud has been placed upon the title to the Plaintiffs' Property and Defendants have failed to remove this from Plaintiffs' title.

175. Plaintiffs request the Court to issue an order compelling GMAC, ETS, and any other Defendant claiming an interest in and to the Subject Property to take any and all action necessary to remove the cloud they have placed upon this title and an order enjoining such Defendants from taking such action again in the future.

176. Pursuant to Code of Civil Procedure § 1021.5, Plaintiffs are entitled to recover their reasonable attorney's fees, cost, and expenses incurred in bringing this action.

177. As a result of Defendants' violations of Cal. Bus. and Prof. Code section 17200 et seq., Plaintiffs have been damaged in the following ways: (1) multiple parties may seek to enforce their debt obligation, if there is still one that exist; (2) title to their home has been clouded and its salability has been rendered unmarketable, as any buyer of the Plaintiffs' home will find themselves in legal limbo, unable to know whether they can safely buy Plaintiffs' home or get title insurance; (3) Plaintiffs paid the wrong party for an undetermined amount of time and overpaid in interest; (4) Plaintiffs are unable to determine if they sent their mortgage payments to the right party; (5) Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel—credit score have been damages; (6) they expect significant funds to cover the cost of attorneys' fees and related cost.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.    General, special, compensatory, and exemplary damages according to proof but no less than $6,000,000.00, against all Defendants

2.    Statutory relief according to proof.

3.    Restitution relief according to proof.

4.    Temporary, preliminary, and permanent injunctive relief restraining Defendants, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents, or employees from doing during the pendency of this matter.

5.    On all causes of action, for cost of suit herein;

6.    On all causes of action, for pre-judgment and post-judgment interest;

7.    On all causes of action for which attorney's fees may be awarded pursuant to statute, or otherwise, reasonable attorney's fees;

8.    For declaratory judgment finding that Defendant do not have any legally cognizable rights as to Plaintiffs, the Subject Property, the Note, the Deed, or any other matter based on contract or any of the documents prepared by Defendants, tenders to and executed by Plaintiffs;

9.    For an order compelling Defendants to remove any instrument, including the Assignment of the Deed, which does or could not be construed as constituting a cloud upon Plaintiffs' title to the property; and

10.    On all causes of action, for such other and further relied as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs—Fermin Solis Aniel, Erlinda Abibas Aniel, and Marc Jason Aniel—hereby demand a trial by jury on all claims.

Dated: August 8, 2012

Complaint                                36

LAW OFFICES OF MARC JASON ANIEL

MARC JASON ANIEL

Attorney for Plaintiffs—Fermin Solis Aniel and Erlinda Abibas Aniel

MARC JASON ANIEL

Plaintiff in Pro Per

Complaint                                    37

<u>Verification</u>

The undersigned, for herself declares:

I am one of the Plaintiffs in the above-entitled action. I have read the forgoing Complaint, and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as those matter which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct.

8-8-12

ERLINDA ABIBAS ANIEL

Complaint                                    38