1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case No. 12-12020-mg

5 - - - - - - - - - - - - - - - - - - - - -x

6 In the Matter of:

7

8 RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12 - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              August 22, 2013

19              1:33 PM

20

21 B E F O R E:

22 HON. MARTIN GLENN

23 U.S. BANKRUPTCY JUDGE

24

25

1

2   (CC: Doc# 4451) Adjourned Hearing RE: Joint Motion (1) Granting

3   Class Certification for Purposes of Settlement Only,

4   (2) Appointment Class Representative and Class Counsel for

5   Purposes of Settlement Only, (3) Preliminarily Approving the

6   Settlement Agreement Between Plaintiffs, On Their Own Behalf

7   and On Behalf of the Class of Similarly Situated Persons, and

8   the Debtors, (4) Approving the Form and Manner of Notice to the

9   Class, (5) Scheduling a Fairness Hearing to Consider Approval

10  of the Settlement on a Final Basis and Related Relief and

11  (6) Approving the Settlement Agreement on a Final Basis and

12  Granting Related Relief.

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2   A P P E A R A N C E S :

3   MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8   BY:   NORMAN S. ROSENBAUM, ESQ.

9        STEFAN W. ENGELHARDT, ESQ.

10

11

12   BRYAN CAVE LLP

13        Attorneys for Residential Capital et al.

14        One Metropolitan Square

15        211 North Broadway

16        Suite 3600

17        St. Louis, MO 63102

18

19   BY:   MICHAEL G. BIGGERS, ESQ.

20

21

22

23

24

25

4

1

2  CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

3      Conflicts Counsel to Debtors

4      101 Park Avenue

5      New York, NY 10178

6

7  BY:   MARYANN GALLAGHER, ESQ.

8        JONATHAN J. WALSH, ESQ.

9

10

11  KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP

12      Attorneys for Official Creditors' Committee

13      1177 Avenue of the Americas

14      New York, NY 10036

15

16  BY:   ELISE S. FREJKA, ESQ.

17        GREGORY A. HOROWITZ, ESQ.

18

19

20

21

22

23

24

25

1

2  WHITE & CASE LLP

3         Attorneys for Ad Hoc Group of Junior Secured Notes

4         1155 Avenue of the Americas

5         New York, NY 10036

6

7  BY:   J. CHRISTOPHER SHORE, ESQ.

8         DOUGLAS P. BAUMSTEIN, ESQ.

9

10

11  SILVERMAN ACAMPORA LLP

12         Special counsel to committee for borrower issues

13         100 Jericho Quadrangle

14         Suite 300

15         Jericho, NY 11753

16

17  BY:   RONALD J. FRIEDMAN, ESQ.

18

19

20  MILBANK, TWEED, HADLEY & MCCLOY LLP

21         Attorneys for Ad Hoc Group of Junior Secured Notes

22         One Chase Manhattan Plaza

23         New York, NY 10005

24

25  BY:   GERARD UZZI, ESQ.

1

2   KIRKLAND & ELLIS LLP

3          Attorneys for Ally Financial, Inc. and Ally Bank

4          601 Lexington Avenue

5          New York, NY 10022

6

7   BY:   PETER TSAO, ESQ.

8

9

10   MUNGER, TOLLES & OLSON LLP

11          Attorneys for Berskshire Hathaway

12          355 South Grand Avenue

13          35th Floor

14          Los Angeles, CA 90071

15

16   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

17

18

19   BALLARD SPAHR LLP

20          Attorneys for PNC Bank

21          1735 Market Street

22          51st Floor

23          Philadelphia, PA 19103

24

25   BY:   SARAH SCHINDLER-WILLIAMS, ESQ.

1

2  POLSINELLI PC

3      Attorneys for Kessler class

4      900 Third Avenue

5      Suite 2100

6      New York, NY 10022

7

8  BY: DAN FLANIGAN, ESQ.

9

10

11  WALTERS BENDER STROHBEHN & VAUGHAN, P.C.

12      Attorneys for Kessler class

13      2500 City Center Square

14      1100 Main

15      Kansas City, MO 64105

16

17  BY: DAVID M. SKEENS, ESQ.

18      R. FREDERICK WALTERS, ESQ.

19

20

21

22

23

24

25

 1                    P R O C E E D I N G S

 2          THE COURT:  All right, please be seated.  We're here

 3   in Residential Capital, number 12-12020.  Mr. Rosenbaum?

 4          MR. ROSENBAUM:  Good afternoon, Your Honor.  Norm

 5   Rosenbaum, Morrison & Foerster, for the debtors.  Your Honor,

 6   first of all, thank you very much for accommodating us today,

 7   in light of what we know is -- well aware is a very busy

 8   schedule.

 9          Obviously this is the renewed motion -- renewed

10   hearing --

11          THE COURT:  Let me get all --

12          MR. ROSENBAUM:  -- on our motion

13          THE COURT:  -- Let me get all --

14          MR. ROSENBAUM:  -- for interim approval --

15          THE COURT:  Before you go on, let me get all of the

16   appearances.

17          MR. ROSENBAUM:  Sure.  With me today, for the debtors,

18   is Michael Biggers of Bryan Cave, our defense counsel; John

19   Walsh and Maryann Gallagher, Curtis, Mallett.  That's from the

20   debtors' side.

21          THE COURT:  All right.  Who's on -- we'll let the

22   others make their own appearance.

23          MR. WALTERS:  Fred Walters and David Skeens from

24   Walters Bender, class counsel.  And of course the Court knows

25   Mr. Flanigan, Your Honor.

1          THE COURT:  Thank you.  Anybody else in the courtroom?

2          MR. FRIEDMAN:  Ronald Friedman from Silverman

3     Acampora, special counsel to the committee with respect to the

4     borrower issues.  Good afternoon, Your Honor.

5          MS. FREJKA:  Good afternoon.  Elise Frejka, Kramer

6     Levin, on behalf of the committee.

7          MS. SCHINDLER-WILLIAMS:  Good afternoon, Your Honor.

8     Sarah Schindler-Williams, Ballard Spahr, on behalf of PNC Bank.

9          THE COURT:  Go ahead.

10          MR. ROSENBAUM:  Your Honor, last night, after the

11     parties worked together, we did file amended exhibits to the

12     motion, which we hope addresses the concerns raised by Your

13     Honor.  That was an amendment to the settlement agreement, the

14     class notice, and a proposed form of final order.  If Your

15     Honor has specific questions, I am going to cede the podium to

16     Mr. Walsh to --

17          THE COURT:  Okay.

18          MR. ROSENBAUM:  -- to address those issues.

19          THE COURT:  Mr. Walsh?

20          MR. WALSH:  Good afternoon, Your Honor.  Jonathan

21     Walsh for the debtor.

22          As you can see, Your Honor, we revised the class

23     notice to address Your Honor's concern about providing notice

24     to the class regarding the judgment credit.  We believe this

25     provides notice, not only the parties' application to seek a

1  pro tanto judgment credit, but also fair notice of PNC's

2  position, and it should be the greater of the pro tanto

3  judgment or proportional liability.  I'm happy to answer any

4  questions.

5        THE COURT:  So let's assume that the amended

6  settlement is ultimately approved by this Court, the action

7  against other defendants is pending before Judge Schwab in

8  Pittsburg?

9        MR. WALSH:  That's correct, Your Honor.

10       THE COURT:  May Judge Schwab determine that a

11  different methodology for judgment reduction should apply, in

12  the event that the case is tried before him and he's faced with

13  the issue of judgment reduction as a result of partial

14  settlements?

15       MR. WALSH:  Well, Your Honor, the answer to that

16  question depends on a number of intervening events.  As you

17  know, we made an objection to PNC's claim regarding

18  contribution, and we believe that that objection will be

19  sustained.  In the event that is sustained --

20       THE COURT:  What's the basis for the objection?

21       MR. WALSH:  That there is no right to contribution,

22  under the statutes that are at play.

23       THE COURT:  Are these all federal claims that are

24  being pursued?

25       MR. WALSH:  Yes, Your Honor.

1          THE COURT:  There are no state law claims involved?

2          MR. WALSH:  That's correct, Your Honor.

3          THE COURT:  Okay.

4          MR. WALSH:  In that case, we would seek Your Honor's

5    approval for the final order to include a judgment credit in

6    pro tanto method, and also for --

7          THE COURT:  Well, the --

8          MR. WALSH:  -- the bar order.

9          THE COURT:  The issue -- let's assume that PNC's claim

10   for contribution is expunged; that's in the bankruptcy case.

11   That seems, to me, to be a different issue than a determination

12   by the district court as to whether any judgment against

13   nonsettling defendants should be reduced.  Do you agree with

14   that?

15         MR. WALSH:  I do, Your Honor, but I do believe that

16   the bar order and the judgment credit are somewhat related.

17   The reason that the nonsettling defendant gets the benefit of a

18   judgment credit is because he's been foreclosed, if there is a

19   bar order, from seeking contribution.

20         Your Honor, this may be pushed over to the judge in

21   the Pennsylvania action --

22         THE COURT:  But, I mean, I view -- this is --

23         MR. WALSH:  But for purposes --

24         THE COURT:  I understand the argument you're making,

25   but so if the claim is expunged, PNC cannot -- you know,

1  depending on the -- let's assume a judgment is ultimately

2  entered against it in the district court, if the claim is

3  expunged, they can't recover a contribution from any of the

4  debtors.  I think that's pretty clear.  That, to me, is a

5  different issue, or may be a different issue.  The question is,

6  is it for the district court judge to decide whether any

7  judgment entered against PNC gets reduced, and if so, by how

8  much.

9       And that's why my question focuses on whether Judge

10 Schwab -- I don't remember; it's an MDL he has before him?

11      MR. WALSH:  That's correct.

12      THE COURT:  I don't know how many cases, and I don't

13 know whether -- I don't remember now whether the statute got

14 amended, whether he gets to dispose of all -- I don't know how

15 many courts they came from, and whether he sends them back for

16 trial, ultimately, if it's not -- if there's no settlement, to

17 the original courts, or not.  But let's assume that he tries

18 the case, and let's assume.  How many defendants -- how many

19 nondebtor defendants are in the action?

20      MR. WALSH:  Perhaps I should cede the podium to

21 plaintiff's counsel who is more familiar --

22      THE COURT:  Okay.

23      MR. WALSH:  -- with that action.

24      THE COURT:  Yeah, come on up.

25      MR. WALTERS:  Your Honor, in the --

1       THE COURT:  You have to identify yourself first.

2       MR. WALTERS:  Oh, I'm sorry; I apologize.  Fred

3  Walters from the law firm Walters Bender, representing the

4  class -- Kessler class.  Also, Your Honor, we are co-counsel

5  against the remaining defendants in the MDL litigation.

6       To answer your question specifically, there were two

7  other defendants in the MDL, in addition to the debtor.  One is

8  PNC.  The other was Guaranty National Bank of Tallahassee, what

9  we refer to as GBNT (sic), who was taken over by the FDIC, so

10  the FDIC was subject to them.  The FDIC was dismissed, based on

11  jurisdictional grounds, by Judge Schwab.  Of course, that

12  hasn't been finally resolved by virtue of appeal or not, so you

13  could say they're still a remaining defendant on the GBNT (sic)

14  loans.  PNC is the only remaining defendant with respect to the

15  CBNV originated loans.  Does that answer Your Honor's

16  questions?

17       THE COURT:  I think so.  Let me ask, have there

18  been -- and this may be implied in what you've just said.  Have

19  there been any partial settlements that the Court's been asked

20  to approve in the MDL?

21       MR. WALTERS:  No.  This is -- that has not occurred.

22       THE COURT:  Okay.  And what is your view as to whether

23  Judge Schwab could determine the method and amount by which any

24  judgment against PNC should be reduced, in the event there's a

25  judgment against PNC?

RESIDENTIAL CAPITAL, LLC, ET AL.                          14

1           MR. WALTERS:  The question that you asked suggests or

2   inquires, I believe, who has jurisdiction to do that.  And my

3   answer to that would be, I believe that you have jurisdiction

4   to do that, given that PNC has now entered their -- if you

5   will, their face here before you.  And so you have jurisdiction

6   to do that, but I'm not so sure --

7           THE COURT:  I'm not so sure.  Why do I have

8   jurisdiction?  They filed -- and I'll hear from their

9   counsel -- they filed a limited objection, and they may have

10  more to say about it; I'm sure they're going to have more to

11  say about it.  But they filed a limited objection to approval

12  of a class claim settlement in this court.  Okay.  And they

13  wanted to reserve it for the final hearing.  I did what I did

14  yesterday, because I think, under binding Second Circuit

15  authority, the notice had to include a description of the

16  methodology, from the standpoint of the plaintiff class.

17          But I don't see -- they're not a party -- yes, they --

18  you know, they filed a limited objection and they undoubtedly

19  will have more to say here, but how does that give me

20  jurisdiction to determine what -- for shorthand I'll call it

21  the rule for judgment reduction that would apply -- how can I

22  bind the district court to a rule on judgment reduction?  I

23  mean, the Court can certainly consider the fact -- I mean,

24  essentially, what I have before me is a contract.  The

25  settlement is a contract.  And in the settlement, you, on

1  behalf of the class, agree to judgment reduc -- a judgment

2  reduction provision on the methodology specified in the amended

3  settlement.

4       But I don't know whether or why that would bind Judge

5  Schwab.  If he tries the case to judgment, there's a verdict

6  against PNC, PNC argues that we're entitled to have the

7  judgment against PNC reduced by whatever they argue.  I don't

8  see how I suddenly step in his shoes and bind Judge Schwab to a

9  rule.  I can approve a settlement.  Then that's a contract.

10  Fundamentally, it's a contract.  That binds you that you agree

11  that judgment reduction is at least what you've agreed by

12  contract to do.  But if Judge Schwab concluded that that's all

13  well and good but there's a federal rule of judgment reduction

14  applicable to the specific causes of action that are asserted

15  in the complaint, and it differs from what the contract

16  provides, therefore, any judgment -- any amount that plaintiffs

17  recover is reduced by what that federal rule is.  What's wrong

18  with that statement?

19       MR. WALTERS:  Well, Your Honor, I think there are two

20  aspects of that.  One is a collateral estoppel aspect that if

21  that is litigated, the methodology -- the exact amount, I

22  couldn't tell you now, depending upon which methodology might

23  be used, as you know.  But I think the methodology you can

24  determine.  Once that occurs, then we believe there's a

25  collateral estoppel argument or --

1        THE COURT:  The only thing I'm --

2        MR. WALTERS:  -- a judgment finality argument.

3        THE COURT:  The only thing I'm being asked to do is

4   approve a settlement of a contract --

5        MR. WALTERS:  Correct.

6        THE COURT:  -- that opts for one specific methodology

7   of judgment reduction.  And let's assume I approve it.  To do

8   that, I'm not sure whether I have to reach a decision as to

9   what -- whether there is only one method for these causes of

10  action, and it isn't the one that's in the settlement.  I'm

11  troubled by it, okay?  It's -- you know, the more I thought

12  about this yesterday, after the hearing, sort of the more

13  puzzled.

14       You know, in Denney v. Deutsche Bank, the Second

15  Circuit was faced with reviewing a partial settlement of an

16  action pending in the district court in the Southern District

17  of New York before Judge Scheindlin.  They reversed the

18  decision, for the reasons that the opinion specifies, but the

19  case goes back to her, and she does whatever she's going to do,

20  and if there's ultimately a trial as to nonsettling defendants,

21  you know -- whether there was -- I don't know what happened; I

22  don't know what the subsequent history was.  I don't know

23  whether the settlement was amended, whether she ultimately

24  approved it, whatever happened.  But that's far different.  She

25  had jurisdiction over all the parties, including the

1  nonsettling defendants.  And that's a very different

2  circumstance than what's before me.

3          And indeed, in the revised notice that you prepared,

4  you essentially reflect that, that if the judge in the district

5  court decides differently, well, you know, you may not -- the

6  amount of the offset may differ from what's in the settlement.

7          MR. WALTERS:  Actually, Judge, the notice does not say

8  who will make that decision.  That notice contemplates that you

9  might make that decision.  It does --

10         THE COURT:  And I might not.  I might --

11         MR. WALTERS:  I know.

12         THE COURT:  I might approve the settlement and

13  disclaim -- disclaim determining.  So one of the things I'm

14  going to tell all of you I'm going to do, I'm going to talk to

15  Judge Schwab, because I'm not -- to put it colloquially, I'm

16  not going to do anything to screw up his case with a ruling I

17  make, certainly not, at least, without his knowing the issue

18  has been presented to me.

19         MR. WALTERS:  Judge, that's absolutely fine with us.

20  And as you know, you don't need our consent anyway, so that's

21  fine with us.

22         THE COURT:  But I'm just -- I want you all to know

23  that.

24         MR. WALTERS:  That's fine.  Yes.  And I understand

25  your inquiry about who does that.  And as I say, when we sent

1  it to the notice, I just want Your Honor to understand that we

2  did not say who might do that.  We just said if a court does --

3       THE COURT:  Okay.

4       MR. WALTERS:  -- it could be different, which we

5  thought was fair notice to the class.  And we certainly didn't

6  want to adopt -- usurp either your jurisdiction or any other

7  court's jurisdiction to make that determination.  We just

8  wanted to advise them, as we thought was appropriate, that that

9  could be a different outcome, depending on how a court decided

10  it.

11       THE COURT:  Okay.

12       MR. WALTERS:  Does that make sense?

13       THE COURT:  It does -- well, whether it makes sense,

14  we'll hear -- I'll hear everybody out.

15       MR. WALTERS:  But I understand your position that you

16  may just disclaim from deciding that.

17       THE COURT:  Well, it isn't -- I'm not saying that's

18  what I'm going to do.  You know, look, in the context of a very

19  crowded calendar yesterday, when I read what was supposed to be

20  an uncontested motion, and I was familiar with the Denney case,

21  and I reread the Denney case, and I said, wait a second, what

22  was proposed, as originally drafted, is not consistent with

23  Denney.  Whether you agree or disagree, that's kind of water

24  under the bridge at this point.  Okay.

25       MR. WALTERS:  It is, and we did agree; we changed to

1    make sure --

2            THE COURT:  Yes, I know you did.

3            MR. WALTERS:  -- that the notice took care of the

4    Denney problem --

5            THE COURT:  Right.

6            MR. WALTERS:  -- with respect to notice to the class.

7            THE COURT:  Let me hear from other counsel.

8            MR. WALTERS:  Thank you.

9            THE COURT:  I'll give you another chance, if

10   necessary.

11           MR. WALTERS:  Thank you, Your Honor.

12           THE COURT:  Okay.

13           MR. WALSH:  Your Honor, Jonathan Walsh again, for the

14   debtor.

15           I just want to emphasize, Your Honor, that at this

16   point we're only asking for authorization to send the notice

17   out and for the Court to certify the class for settlement

18   purposes.

19           THE COURT:  Let me -- can I ask you this?  So you

20   answered one question I had, is whether all the claims in the

21   complaint are federal claims; there are no state law claims.

22   And it's a variety of claims, and I know RESPA, HOEPA, RICO --

23           MR. WALSH:  TILA.

24           THE COURT:  -- TILA.

25           MR. WALSH:  Those are the claims, Your Honor.  They're

1    all statutory claims.

2          THE COURT:  They are.

3          MR. WALSH:  And I don't believe any of them

4    specifically provide for one method of --

5          THE COURT:  That was --

6          MR. WALSH:  -- judgment credit.

7          THE COURT:  My next question is whether, like, you say

8    the statute -- and I'll accept your --

9          MR. WALSH:  Not explicitly.

10          THE COURT:  -- representation that -- I didn't go look

11    at any of the statutes -- they don't have a methodology, nor --

12    you know, the whole development of the law regarding judgment

13    reduction, I think, for the most part, was all judge-made law.

14    I remember years ago this used to come up in securities cases

15    all the time as to what the rule of partial settlements -- you

16    know, and the Ninth Circuit had the good faith standard, and

17    they adopted, as a judicial rule, how judgment reduction has

18    kind of evolved.

19          I mean, Denney specifically identifies there are at

20    least three different rules, maybe it was more than that, but

21    Denney acknowledges that there are at least three different

22    rules.  It doesn't say you have to adopt one of them; it just

23    says there are three different ones.  And it could make a

24    difference on the outcome.

25          But let me ask you, by judicial decision, have any

1  cases determined what the applicable rule for judgment

2  reduction, as a result of partial settlements with any of the

3  claims that are asserted in the complaint or the proof of

4  claim?

5          MR. WALSH:  We did that research last night, Your

6  Honor.  We didn't find any law on the TILA or the housing

7  claims.

8          THE COURT:  What about RICO?

9          MR. WALSH:  But at least with RICO, the majority of

10  the cases, as you say, it's judge-made law.  The judge looks at

11  a pro tanto judgment credit.  And that may also be informed

12  by --

13          THE COURT:  It's a dollar-for-dollar reduction, based

14  on the amount recovered --

15          MR. WALSH:  Right.

16          THE COURT:  -- by settlement.

17          MR. WALSH:  And as I said, I believe --

18          THE COURT:  That's the harshest of the rules.

19          MR. WALSH:  -- I think it's related to the fact that

20  RICO does not provide for contribution, and the other claims in

21  this case also do not provide for contribution, and that's why

22  we would advocate for pro tanto judgment credit.

23          THE COURT:  Yeah, but I mean --

24          MR. WALSH:  But again, I don't think --

25          THE COURT:  -- part of the --

1           MR. WALSH:  -- that could be made today.

2           THE COURT:  -- judicial --

3           MR. WALSH:  It could be --

4           THE COURT:  Part of the judicial genesis of judgment

5    reduction is it makes it very hard to have partial settlements

6    in a case if the settling defendants are faced with claims over

7    or things of that nature.  And so anyway, I --

8           MR. WALSH:  But Your Honor, I do want to emphasize,

9    again, we don't have to make the decision today.  We'll have a

10   final hearing on the order and the judgment --

11          THE COURT:  Yeah, I would be reluctant --

12          MR. WALSH:  -- credit.

13          THE COURT:  Put it this way, and I'm not determining

14   anything yet, but I would be reluctant, as I was yesterday -- I

15   was unwilling to approve, even on a preliminary basis, a

16   settlement or mail a notice that I thought was inconsistent

17   with what Denney v. Deutsche Bank required.  Okay.

18          I would be equally reluctant to approve --

19   preliminarily approve and order notice be sent for a settlement

20   that adopted pro tanto, if there was controlling case law that

21   said it had to be something different.  Okay.

22          MR. WALSH:  There isn't controlling case law on that

23   point.

24          THE COURT:  Well, that's your position.

25          MR. WALSH:  But also, the class members are not, at

1  this point, deciding on a pro tanto v. proportion, and

2  they're --

3          THE COURT:  Well, they're deciding whether --

4          MR. WALSH:  -- notified --

5          THE COURT:  They're deciding whether to --

6          MR. WALSH:  It could be --

7          THE COURT:  -- opt in or opt out of -- whether to opt

8  out of a settlement.  I mean, this is opt-out class, right?

9          MR. WALSH:  That's correct, but they're on notice that

10  the parties have pushed for pro tanto.

11          THE COURT:  Correct.  But I just get back to --

12          MR. WALSH:  But there's a risk that proportionate

13  maybe they'll --

14          THE COURT:  -- look, if you agreed on pro tanto --

15  which I do come back to, it is a contract, right?  And if case

16  law, for RICO, for example, was cap proportionate

17  liability --

18          MR. WALSH:  We haven't' seen that, Your Honor.

19          THE COURT:  I'm not saying it is; that's a

20  hypothetical.

21          MR. WALSH:  Right.

22          THE COURT:  Pick any of these causes of action; if on

23  any of them case law said, as a matter of case law, the Court

24  concludes the only appropriate method for judgment reduction is

25  cap proportionate liability, I wouldn't approve -- I wouldn't

1  give preliminary approval to a settlement and a notice that

2  went out and said it's something completely different.  Okay.

3  That's what I'm -- it may be an open issue.

4          Let me hear from PNC's counsel.

5          MS. SCHINDLER-WILLIAMS:  Good morning, Your Honor.

6  Sarah Schindler-Williams --

7          THE COURT:  It's the afternoon, but that's all right.

8          MS. SCHINDLER-WILLIAMS:  Well, I got on a train this

9  morning after I realized that this was going forward today, so

10  I'm still --

11          THE COURT:  Well, you know what, let me stop, because

12  I heard complaints about that.  You were on the phone

13  yesterday?

14          MS. SCHINDLER-WILLIAMS:  I was, and unfortunately I

15  dropped off when I heard progression to the next matter --

16          THE COURT:  Well, how about --

17          MS. SCHINDLER-WILLIAMS:  -- and apparently that was --

18          THE COURT:  -- you had to have heard, before I

19  progressed to the next matter, that I agreed I was going to

20  adjourn the hearing and set -- and put it at the end of the

21  calendar, and I did.  And I heard it at the end of the

22  calendar, and I adjourned the hearing till today.  So I don't

23  have a lot of sympathy for any argument that you didn't know

24  what was happening, okay?  You were on the call -- you had the

25  right to appear, you appeared by telephone, as I permit.  I'm

1   not faulting you for dropping off, but the result was I took it

2   again at the end of the calendar and I said, okay, 1:30

3   tomorrow.

4        MS. SCHINDLER-WILLIAMS:  You're right, and I

5   apologize, and I misheard --

6        THE COURT:  That's --

7        MS. SCHINDLER-WILLIAMS:  -- and misunderstood --

8        THE COURT:  Okay.

9        MS. SCHINDLER-WILLIAMS:  -- but understood it to be,

10  maybe, a denial and initially a request to be heard next week

11  and then it should be reviewed, so --

12       THE COURT:  Fine.

13       MS. SCHINDLER-WILLIAMS:  My own -- my own fault.

14       THE COURT:  So what's your position?

15       MS. SCHINDLER-WILLIAMS:  So I agree with most

16  everything you've said.  Our concern, obviously, here is to --

17       THE COURT:  I don't know I agree with what I said,

18  so -- but --

19       MS. SCHINDLER-WILLIAMS:  We want to, sort of, reassert

20  and reserve our objection that we have stated on the record,

21  that we don't believe that you can have the judgment credit

22  provision.  As proposed previously, it was, as you noted, left

23  to applicable law.  So we didn't really know what we were

24  getting.  Now it appears we're getting something that does not

25  appear to --

1          THE COURT:  Something you're pretty unhappy with.

2          MS. SCHINDLER-WILLIAMS:  I would -- yes, Your Honor --

3     that doesn't comport with the law of the Second Circuit.

4          THE COURT:  That's not true.  That's not true.  What

5     the Second Circuit -- and you know, in your limited objection,

6     you obviously talk about Denney, which I was familiar with.  I

7     hadn't read the Gerber case; I went back and read the Gerber

8     case.  The Gerber case, the parties agreed on the cap

9     proportionate liability method.  And the Second Circuit doesn't

10    review that issue.  It acknowledges that a lot of courts do

11    that, but it doesn't say it's the only one.  And in the later

12    case, Denney, the Court specifically acknowledges there are at

13    least three, and says you've got to tell -- it's unfair to the

14    nonsettling defendants not to know what's being proposed, and

15    it's -- the plaintiffs -- the class is entitled to know.

16         MS. SCHINDLER-WILLIAMS:  That's true.  There's a

17    variety of methods.  However, Denney was a RICO case as well

18    and involved a cap proportionate share method.  The majority of

19    circuits, including the third and the second, have been moving

20    towards a trend of, at a minimum, proportionate share, because

21    of the concerns that you noted earlier.  It's not simply about

22    is there a statutory right to a claim for contribution, but

23    also is there simply joint and several liability.  Is there

24    going to be collusion among the defendants -- the settling

25    defendants here, the debtors, and the plaintiffs, to try and

 1   increase, at trial, CBNV, now PNC's, level of fault at trial.

 2   It's a concern of trial strategy as well as notice to the

 3   class.  I think that --

 4          THE COURT:  Sure.  Of course the remarkable thing is

 5   ninety percent of the time the cases ultimately settle and

 6   there's never a trial, but you know --

 7          MS. SCHINDLER-WILLIAMS:  That's -- yes.

 8          THE COURT:  -- you can't count on that.

 9          MS. SCHINDLER-WILLIAMS:  Well, so, I mean, also, the

10   parties agreed last night to this.  We were not part of those

11   discussions, and obviously would have hoped to have had

12   slightly more favorable language that we've clearly articulated

13   in our brief.  I know that the Third Circuit has also adopted

14   the proportionate share method, not --

15          THE COURT:  Did they adopt it and say that's what you

16   have -- that's the only method that can be used?

17          MS. SCHINDLER-WILLIAMS:  That's the case of Eisenkraft

18   (ph.) and -- I believe; I may be misstating it.  But I think

19   they did set it as the rule of the circuit.  I know that In re

20   Tribune was recently faced with a similar judgment bar credit

21   for nonsettling defendants, and adopted, at a minimum, the

22   proportionate share.  The debtors -- I'm still struggling a

23   little with the standing of the debtors to argue against the

24   method that we're proposing --

25          THE COURT:  Well, wait --

1    MS. SCHINDLER-WILLIAMS:  -- when they don't have an

2  interest --

3    THE COURT:  -- you say --

4    MS. SCHINDLER-WILLIAMS:  -- in how much the

5  plaintiffs --

6    THE COURT:  Stop, stop, stop, stop, stop, stop.  Do

7  you agree that what I have before me is essentially a contract,

8  that the debtors and lead counsel for the class plaintiffs have

9  entered into a settlement, which is a contract that includes a

10  judgment reduction provision on the basis provided?  That's

11  what I -- and I'm being asked to approve it, first on a

12  preliminary basis, notice to go out, then a final hearing.

13  That's what's before me.

14    MS. SCHINDLER-WILLIAMS:  It is a contract, Your Honor,

15  but it does affect third-party rights.  And we're here in the

16  Second Circuit, and the Second Circuit law, we believe, is in

17  our favor on the issues that we're concerned with.

18    THE COURT:  Really?  What case do you have that says

19  that I would have -- let's assume the whole case was before me,

20  or assuming it was in the district court; what case do you have

21  that says that the judgment reduction methodology that this

22  settlement incorporates is impermissible?

23    MS. SCHINDLER-WILLIAMS:  Well, Denney says that the

24  proportionate share method and the cap proportionate share

25  method ensure that the harshness of the bar order -- ensure the

1   fairness, in light of the harshness of the bar order to

2   nonsettling defendants.  That's their -- ordinarily, this is

3   what we -- the standard we move from.  I think that that --

4   they're asking for approval here.  It affects our rights, to a

5   certain extent.  I think that if we're bound to the Second

6   Circuit law, it's sort of clear where the courts are going.

7        THE COURT:  The Second Circuit said that the

8   nonsettling defendants and the plaintiffs are entitled to know

9   in advance what methodology is being proposed.  The Second

10  Circuit identifies three different methods.  It doesn't say two

11  of the three are impermissible or that this circuit adopts, as

12  its law, that only one method can be used.  It says there are

13  at least three, and both the nonsettling defendants and the

14  plaintiffs for proposed partial settlement are entitled to know

15  what's being proposed.  Does it do any more than -- show me

16  where -- I got the case right here.  Show me where in that case

17  it -- you were pretty careful in your -- you know, you

18  advocated for the cap proportionate liability, but you never --

19  for good reason, you didn't come out and say that's the only

20  one that's permissible, because it's not.  But I'm willing to

21  listen to you. You can show me that Second Circuit law says

22  that's the only one.

23       MS. SCHINDLER-WILLIAMS:  You're right.  I don't think

24  there's a case that says exactly that.  However, given the

25  trend of the law and the proportionate share method at a

1  minimum being the floor, and then the one satisfaction rule as

2  adopted in the Second Circuit, we think that together that

3  results in the cap proportionate share and that's what needs to

4  be applied here.

5          I also heard Your Honor yesterday to be saying you

6  want to fix the notice, we want to let people know what they're

7  getting; and now the notice says we are proposing you get this

8  but it might also be this.

9          THE COURT:  Well, hold on.  Let me -- I have the

10  language; I'm looking at the language in the notes.

11      (Pause)

12          THE COURT:  Go ahead.  I'm looking at this -- this is

13  the paragraph that's on page A-6 in the black-line --

14          MS. SCHINDLER-WILLIAMS:  Okay.

15          THE COURT:  -- that they gave me.  It's the one

16  paragraph in the notice.  What's wrong with that language?  It

17  sets -- it says what your position is and it says what their

18  position is.

19          MS. SCHINDLER-WILLIAMS:  Well, I'm --

20          THE COURT:  I mean do you want a sentence added --

21  well, you've already said it really.  It says, "PNC Bank, a

22  nonsettling defendant and successor to CBNV argues that any

23  judgment obtained against it relating to CBNV loans," et

24  cetera.  It says you argued that's what the -- what it should

25  be.  They argue to the contrary.  The class is on notice what

1  they've adopted and what the arguments are, yours and theirs.

2  And at the time of a final hearing I'll do what you had

3  originally said; reserve it for final -- for a final hearing.

4  At least the class knows what the argument is and that your

5  suggested methodology results in a larger judgment reduction.

6          MS. SCHINDLER-WILLIAMS:  That is more or less -- yes,

7  you're right, I agree that it provides notice of both points of

8  view; and if that's how Your Honor wants to permit the class to

9  be aware of the two methods then I would agree.  Again, this is

10 partly reserving our objection, because on a certain level we

11 were hopeful that because the judgment reduction provision was

12 blank before there would be some discussion with us about how

13 we can maybe resolve our objection earlier rather than later.

14 I think that in some ways we would like to send out the final

15 judgment reduction provision what we believe should be the law

16 as applied in the circuit.

17         THE COURT:  But you disagree with them about what it

18 should be.  They -- look, let me ask you this specific

19 question.  With respect to each of the causes of action

20 asserted in either the claim here or the complaint in the MDL,

21 has the Third Circuit adopted a rule requiring a specific

22 methodology for judgment reduction with respect to each of --

23 each or any of the claims asserted in the complaint?

24         MS. SCHINDLER-WILLIAMS:  Again, I recall the case of,

25 I believe, it's Eisenkraft, which is cited in In re Tribune ,

1   I'd have to look at it.  I don't know if those

2   partic -- I doubt, actually, given any -- that those claims

3   were -- especially the RESPA, TILA, HOEPA claims involved here

4   whether it also involved RICO, I couldn't tell you off the top

5   of my head.

6           THE COURT:  That's why I'm asking if not all -- for

7   any of the claims asserted against PNC, has the Third Circuit

8   adopted a circuit rule on what methodology for judgment

9   reduction must be applied in approving partial settlements?

10          MS. SCHINDLER-WILLIAMS:  I can't -- I'm not prepared

11  to answer that today.  I would note that as in Denney -- the

12  Court in Denney said as with all multidistrict litigation, the

13  variety of laws at issue, circuits involved --

14          THE COURT:  Wait, stop.  What Denney deals with, I

15  think, were state law claims.

16          MS. SCHINDLER-WILLIAMS:  Yes, partly.  And also RICO.

17          THE COURT:  No, stop.  Don't -- okay.  Denney dealt

18  with state law claims.  That was why my first question was are

19  these all federal statutory claims.  You agree they are.

20          MS. SCHINDLER-WILLIAMS:  Yes, Your Honor.

21          THE COURT:  Okay.  So I don't think I have the same

22  issues.  If these were state law claims, then there'd be an

23  issue what's the state rule:  a decision that applies, does it

24  determine what the rule for judgment reduction should be.

25  That's why my question is is there a federal rule of judgment

1   reduction applicable to the specific claims asserted in the

2   complaint against PNC?

3           MS. SCHINDLER-WILLIAMS:  Not that I'm aware of.

4           THE COURT:  Okay.

5           MS. SCHINDLER-WILLIAMS:  The only other thing I would

6   note is that given the parties involved here -- and as you

7   correctly noted, this is sort of strange as it is a bankruptcy

8   context but also a class action settlement context, the --

9   again as I noted, I think that the debtors -- there may be a

10  conflict here.  I mean the debtors, in my mind, on some level,

11  don't have an interest in whether the plaintiffs' ultimate

12  judgment might be reduced --

13          THE COURT:  It's not a conflict.

14          MS. SCHINDLER-WILLIAMS:  -- by any method.

15          THE COURT:  They just -- they don't have a lot of skin

16  in the game on it, admittedly so.

17          MS. SCHINDLER-WILLIAMS:  Right.  And --

18          THE COURT:  That's usually the case with defendants

19  who reach a partial settlement.

20          MS. SCHINDLER-WILLIAMS:  Right.

21          THE COURT:  They'll leave it to the plaintiffs and the

22  nonsettling defendants to fight out.  That's why if -- put it

23  this way, if your claim for contribution gets expunged, if it

24  doesn't -- the debtors may exp -- the debtors may have some

25  skin in the game here because if they agree contractually on

1    the methodology and if it results in a smaller judgment

2    reduction for you, if there's an adverse judgment, than you

3    believe you'd be entitled to, maybe you'd have a good claim for

4    contribution -- I don't know -- for the difference in amount.

5    If you get stuck with a bigger judgment because the debtors

6    agree to a judgment reduction rule that was unfavorable to you,

7    I don't know.  I don't have the objection to the claim in front

8    of me.  So the debtors may have some skin in the game.

9             It may -- you asserted -- your client asserted a claim

10   in the debtors' bankruptcy.  Correct?

11            MS. SCHINDLER-WILLIAMS:  That is correct.

12            THE COURT:  All right.

13            MS. SCHINDLER-WILLIAMS:  Although -- well, we're not

14   here on the claim objections today.

15            THE COURT:  I understand that and I'm not deciding it

16   but -- so it may be wrong to say that the debtors don't care.

17   They -- maybe they should care.  Okay.

18            MS. SCHINDLER-WILLIAMS:  Well, the only other concern

19   would be the plaintiffs involved who are involved currently in

20   the class or in the bankruptcy, and are very active in the

21   bankruptcy are not actually CBNV borrowers.  So, for instance,

22   Ms. Drennen is a GNBT borrower.

23            So again, we're mindful -- we came here today to note

24   the reservation of our objection that potentially that this

25   judgment reduction provision isn't being negotiated with the

1    actual parties who have any skin in the game, and really it's

2    just us standing up here asking for a fair judgment reduction

3    that everyone involved in settling it --

4            THE COURT:  I -- do you --

5            MS. SCHINDLER-WILLIAMS:  -- so that --

6            THE COURT:  -- I would have thought if you were

7    opposing -- what I have before me is a motion for preliminary

8    approval of a class action settlement.  And I'm not ruling now

9    what issues you can -- I mean certainly you did not raise, in

10   your limited objection, any issue about the standing of the

11   plaintiffs -- of the lead plaintiffs, any of that.  The only

12   thing you raised was reserving -- essentially reserving your

13   rights with respect to judgment reduction because the original

14   settlement just talked about applicable law.

15           MS. SCHINDLER-WILLIAMS:  Well, did note in a footnote

16   that we were concerned that Ms. Drennen was not -- that the

17   only class members involved in the settlement were -- there are

18   approximately three left on the movants' motion.  So to the

19   extent that we're fighting over PNC's right to a fair judgment

20   reduction, I'm wondering who's left --

21           THE COURT:   Okay.

22           MS. SCHINDLER-WILLIAMS:  -- to debate that with us.

23           THE COURT:  All right.

24           MS. SCHINDLER-WILLIAMS:  But again, we reserve --

25           THE COURT:  So the only -- okay, let me stop you

RESIDENTIAL CAPITAL, LLC, ET AL.                    36

 1   there.

 2        One, I'm going to talk to Judge -- I'm not ruling

 3   today.  I'm going to talk to Judge Schwab.  I think -- one of

 4   the major questions I had, and I think you've both answered it,

 5   was whether there's -- there's two questions.  One, are these

 6   all federal statutory claims?  The answer, everybody agrees,

 7   is yes.  And whether there's any federal rule for judgment

 8   reduction applicable to the specific claims alleged in the

 9   proof of claim for which class treatment is sought.  And the

10   answer I got is there isn't, including in the Third Circuit.

11        You've argued that the trend is toward cap

12   proportionate liability.  A trend is not a rule.  I want to

13   make clear to the settling parties that you may ultimately get

14   approval of the settlement, and that order approving it may

15   make clear that I do not purport to withdraw the issue from

16   Judge Schwab as to what -- in the event -- because I see this

17   as different.

18        Yes, when it comes to an issue of an objection to

19   claim, I don't know what bases you're asserting to the

20   objection to claim.  I'll deal with it when that comes before

21   me.  But whether PNC gets a claim in the bankruptcy case or

22   not, in my view, is different from the issue of whether

23   judgment reduction will apply.  I mean Judge Schwab can look to

24   what was agreed and decide fine or he might decide no, it's a

25   different rule.

1        I think the language from the order that's -- from the

2   notice that's been drafted leaves that open but -- Mr.

3   Rosenbaum, do -- I'm not going to enter an order today.  I'm

4   going to -- this is not going to linger for a long time.  I do

5   want -- I am going to talk to Judge Schwab.  And I don't think

6   whatever -- if I go ahead and approve preliminary -- give

7   preliminary approval and approve the mailing of notice and we

8   move forward and you get a final hearing date, I'm making

9   crystal clear that certainly doesn't resolve the issue of which

10  court or -- and whether a different rule should apply.

11       If PNC convinces me at a final hearing, Judge, you

12  can't approve a settlement that includes judgment reduction on

13  the basis set forth, I'm going to listen to that argument.

14       MR. ROSENBAUM:  Understood, Your Honor.

15       THE COURT:  Okay, so do I have a proposed order with a

16  disk?

17       MR. ROSENBAUM:  Your Honor, we'll submit it to you.

18       THE COURT:  Okay.

19       MR. ROSENBAUM:  We filled in some dates and I know

20  we're running into the other time.  There's -- just briefly.

21  What we had proposed in the order was to have this hearing

22  with -- concurrently with confirmation so the hearing would be

23  for November 19th.  But if there's a prior date -- the only

24  problem is we are conscious of our need to notice the class.

25       THE COURT:  Sure.  I know that.  But this settlement

1    is conditioned on confirmation of a plan, because it provides

2    for an allowed 330-million-dollar claim amount.  Am I right in

3    that?

4              MR. ROSENBAUM:  That's correct, Your Honor.

5              THE COURT:  Okay.  So -- okay.  I'm mindful of that.

6              MR. ROSENBAUM:  If there's a date prior to the -- in

7    November prior to the 19th, I think that would still work for

8    our notice purposes.

9              THE COURT:  I got to look at my whole calendar; and

10   some of it may depend on what happens in the next matter I

11   hear.  Okay?

12             MR. ROSENBAUM:  But we do have an order that we can --

13             THE COURT:  Okay.  Thank you very much.

14             MR. ROSENBAUM:  I'm sorry, Your Honor.  So you will

15   get in contact with us after --

16             THE COURT:  Well, look, I may just enter the order,

17   but I'm not doing -- I'm not entering -- I'm telling you right

18   now.  I'm not entering an order --

19             MR. ROSENBAUM:  Right.

20             THE COURT:  -- till I talk to Judge Schwab.

21             MR. ROSENBAUM:  We will submit the order to chambers,

22   Your Honor.

23             THE COURT:  And -- that's fine.  And after I talk to

24   Judge Schwab, it may be -- if based on my conversation with

25   Judge Schwab I think I need to have another hearing with you

**RESIDENTIAL CAPITAL, LLC, ET AL.**                    39

1   all I'll let you know.  Otherwise, in all likelihood I'll just

2   enter an order.  Okay?

3          MR. ROSENBAUM:  Thank you, Your Honor.

4          THE COURT:  But I just -- I'm really mindful of -- I

5   don't know -- somebody can tell me is there a -- what's the

6   schedule in the district court?

7          MR. WALTERS:  Your Honor, we just have the class --

8   Fred Walters, Your Honor.

9          THE COURT:  Yes.  Go ahead.

10          MR. WALTERS:  We just had the class certified, I

11   think, two weeks ago.  We're in a process of getting -- going

12   through the notice procedure and getting that approved there;

13   the litigation class.  We have a status conference scheduled

14   for August 28 before Judge Schwab.  We will be there,

15   obviously, next week; and there are certain issues he's

16   going -- that are -- we've submitted to him that are going to

17   be discussed.  So that's as much as I can tell you about the

18   status of that thing.

19          There's a status conference and those issues will be

20   discussed in the --

21          THE COURT:  You contemplate one -- if it goes to

22   trial, one trial before Judge Schwab?

23          MR. WALTERS:  That would be the contemplation right

24   now, although it is an MDL and I suppose, as you note,

25   sometimes they go back to the originating district, and one of

1  these MDL's came from Alabama, a Hobson case, but that has

2  not -- that may be the subject of discussion but --

3          THE COURT:  Okay.  That's --

4          MR. WALTERS:  -- your suggestion about what we

5  contemplate right now is correct.

6          THE COURT:  Okay.  Thank you very much.  I appreciate

7  it.  All right.

8          MR. ROSENBAUM:  Thank you, Your Honor.

9          THE COURT:  Thank you.

10         (Whereupon these proceedings were concluded at 2:19 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    C E R T I F I C A T I O N
 3
 4  I, Sharona Shapiro, certify that the foregoing transcript is a
 5  true and accurate record of the proceedings.
 6
 7
 8
 9  _____
10  SHARONA SHAPIRO
11  AAERT Certified Electronic Transcriber CET**D-492
12
13  eScribers
14  700 West 192nd Street, Suite #607
15  New York, NY 10040
16
17  Date:  August 23, 2013
18
19
20
21
22
23
24
25
```