# **Exhibit B**

*THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION UNDER BANKRUPTCY CODE SECTION 1125(b) FOR USE IN THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE CHAPTER 11 PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS DISCLOSURE STATEMENT ARE NOT INTENDED TO BE, AND SHOULD NOT IN ANY WAY BE CONSTRUED AS, A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT BE RELIED ON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION. THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE HEARING TO CONSIDER THIS DISCLOSURE STATEMENT.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, et al. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

| | |
|---|---|
| MORRISON & FOERSTER LLP | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
| Gary S. Lee | |
| Lorenzo Marinuzzi | Kenneth H. Eckstein |
| Todd M. Goren | Douglas H. Mannal |
| Jennifer L. Marines | Stephen D. Zide |
| Samantha Martin | Rachael L. Ringer |
| 1290 Avenue of the Americas | 1177 Avenue of the Americas |
| New York, New York 10104 | New York, New York 10036 |
| Telephone: (212) 468-8000 | Telephone: (212) 715-9100 |
| | |
| Alexandra Steinberg Barrage | *Counsel for the Official Committee of Unsecured Creditors* |
| 2000 Pennsylvania Avenue, NW | |
| Washington, DC 20006-1888 | |
| Telephone: (202) 887-1500 | |

*Counsel for the Debtors and Debtors in Possession*

Dated:   August 20,23, 2013
            New York, New York

> **IMPORTANT INFORMATION FOR YOU TO READ**
>
> **THE DEADLINE TO VOTE ON THE PLAN IS OCTOBER 21, 2013, AT 7:00 P.M. EASTERN TIME.**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE NOTICE AND CLAIMS AGENT BEFORE THE VOTING DEADLINE AS DESCRIBED HEREIN.**

~~**PLEASE BE ADVISED THAT**~~ **ARTICLE ~~V~~IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS~~. YOU SHOULD~~, AND ARTICLE IX.D CONTAINS A THIRD PARTY RELEASE.**

**IF YOU ARE ENTITLED TO VOTE ON THE PLAN AND RECEIVE A BALLOT: (1) YOUR VOTE TO ACCEPT THE PLAN, OR (2) YOUR FAILURE TO TIMELY AND/OR PROPERLY SUBMIT A BALLOT, WILL BE DEEMED YOUR CONSENT TO THE THIRD PARTY RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN, THE EXCULPATION PROVISION CONTAINED IN ARTICLE IX.G OF THE PLAN, AND THE INJUNCTION PROVISION CONTAINED IN ARTICLE IX.H OF THE PLAN, EACH AS DESCRIBED IN FURTHER DETAIL IN ARTICLE ~~V.~~X. OF THIS DISCLOSURE STATEMENT.**

**REGARDLESS AS TO HOW OR WHETHER YOU VOTED ON THE PLAN, IF THE PLAN IS CONFIRMED, THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS CONTAINED IN ARTICLE IX OF THE PLAN WILL BE BINDING UPON YOU. THUS, YOU ARE ADVISED TO** REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS ~~**MAY**~~**MIGHT** BE AFFECTED THEREUNDER.

The Plan Proponents are providing the information in this Disclosure Statement to holders of Claims and Equity Interests entitled to vote on the Plan for the purpose of soliciting votes to accept the Plan. **Nothing in this Disclosure Statement may be relied upon or used by any entity for any other purpose.**

This Disclosure Statement may not be deemed as providing any legal, financial, securities, tax, or business advice. The Plan Proponents urge any holder of a Claim or Equity Interest to consult with its own advisors with respect to any such legal, financial, securities, tax, or business advice in reviewing this Disclosure Statement, the Plan, and each of the proposed transactions contemplated thereby. The Bankruptcy Court's approval of the adequacy of disclosures contained in this Disclosure Statement does not constitute the Bankruptcy Court's approval of the merits of the Plan or a guarantee of the accuracy or completeness of the information contained herein. The Plan Proponents have not authorized any entity to give any information about or concerning the Plan other than that which is contained in this Disclosure Statement. The Debtors have not authorized any representations concerning the value of their property other than as set forth in this Disclosure Statement. Any information, representations, or inducements made to obtain

**TABLE OF CONTENTS**

Page

ARTICLE I. INTRODUCTION AND PLAN SUMMARY ................................................................1
  A. Introduction and Overview ................................................................1
  B. General Information ................................................................4
  C. Overview of Chapter 11 ................................................................5
  D. Summary of Classification and Voting Rights of Allowed Claims and Equity Interests ................................................................6
  E. Summary of Solicitation Package and Voting Instructions ................................................................15
  F. Summary of Treatment of Allowed Claims and Equity Interests ................................................................16
  G. Confirming and Consummating the Plan ................................................................21

ARTICLE II. THE GLOBAL SETTLEMENT & IMPLEMENTATION OF THE PLAN ................................................................21
  A. The Global Settlement ................................................................22
  B. Settlement of Claims Against Ally and Plan Releases ................................................................22
  C. The Plan Includes a Settlement of RMBS Trust Claims ................................................................28
  D. The Plan Settles the Claims of Certain Monoline Insurers ................................................................30
  E. The Plan Resolves Certain Securities Claims Against the Debtors and Ally ................................................................34
  F. The Plan Resolves the Claims of NJ Carpenters ................................................................35
  G. The Plan Resolves the Claims in the Kessler Class Action ................................................................36
  H. The Plan Establishes a Trust to Allow for Payment in Cash to Holders of Borrower Claims ................................................................36
  I. The Plan Provides Junior Secured Noteholders with Payment in Full ................................................................38
  J. The Plan Resolves Claims of the Senior Unsecured Noteholders and the Senior Unsecured Notes Indenture Trustee ................................................................39
  K. The Plan Resolves Issues Relating to Substantive Consolidation of the Debtors' Estates ................................................................39
  L. The Plan Contains a Compromise of Intercompany Balances and Resolves Subrogation and Other Disputed Intercompany Issues ................................................................40
  M. The Plan Allocates the Estate Assets and Administrative Expenses among Debtor Groups and Creditor Constituencies ................................................................ ~~42~~43
  N. Implementation of the Plan ................................................................44

ARTICLE III. BACKGROUND ................................................................48

## TABLE OF CONTENTS
(continued)

Page

| | | |
|---|---|---:|
| T. | Allowed Unsecured Claims for Which More than One Debtor in a Debtor Group Is Jointly and/or Severally Liable | 140 |
| U. | Distributions Free and Clear | 140 |
| V. | Procedures for Resolving Disputed Claims | 140 |
| W. | Claims Estimation; Allowance | 141 |
| X. | Settlement, Release, Injunction, and Related Provisions | 143 |
| Y. | Conditions Precedent to Confirmation and Consummation of the Plan | 148 |
| Z. | Modification, Revocation, or Withdrawal of the Plan | ~~150~~151 |
| AA. | Retention of Jurisdiction | ~~151~~152 |
| BB. | Miscellaneous Plan Provisions | 152 |
| CC. | Plan Supplement | 156 |

ARTICLE VI. VOTING PROCEDURES ............................................................................ 156

| | | |
|---|---|---:|
| A. | Voting Deadline | ~~156~~157 |
| B. | Holders of Claims or Interests Entitled to Vote | 157 |
| D. | Vote Required for Acceptance by a Class | 159 |
| E. | Returning Your Ballot | 159 |

ARTICLE VII. RECOVERY ANALYSIS ............................................................................ 160

ARTICLE VIII. CONFIRMATION OF THE PLAN ............................................................ 161

| | | |
|---|---|---:|
| A. | Confirmation Hearing | 161 |
| B. | Deadline to Object to Confirmation | 162 |
| C. | Confirmation Standards | 162 |
| D. | Persons to Contact for More Information | 167 |
| E. | Disclaimer | 167 |

ARTICLE IX. PLAN-RELATED RISK FACTORS AND ALTERNATIVES TO CONFIRMING THE PLAN ............................................................................ 168

| | | |
|---|---|---:|
| A. | General | 168 |
| B. | Certain Bankruptcy Law Considerations | 168 |
| C. | Considerations Relating to the Units and Recoveries | 171 |

# EXHIBITS

1. Joint Chapter 11 Plan
2. List of Debtors
3. Organizational Chart
4. Illustrative Unit Issuance Structure
5. Consenting Claimants
6. List of Seven Largest Intercompany Balances
7. Recovery Analysis
8. Liquidation Analysis
9. RMBS ~~Trust Allocation Protocol~~Trusts: Methodology for Calculation of Recognized Claims
10. JSN's Position on Examiner's Report and Ally's Response
11. List of Payments to be Made Pursuant to the Plan
12. Schedule of Recoveries to the RMBS Trusts
13. Explanation of Calculation of Recoveries to the RMBS Trusts

# ARTICLE I.
# INTRODUCTION AND PLAN SUMMARY[1]

### A.     Introduction and Overview

The Debtors and the Creditors' Committee[2] (together, the "Plan Proponents") submit this disclosure statement (the "Disclosure Statement") pursuant to Section 1125 of the Bankruptcy Code to holders of Claims against and Equity Interests in the Debtors in connection with the solicitation of acceptances with respect to the *Joint Chapter 11 Plan of Residential Capital, LLC, et al.*, dated ~~July 3,~~ August 23, 2013.  A copy of the Plan is annexed hereto as Exhibit 1 and incorporated herein by reference.

The purpose of this Disclosure Statement, including the Exhibits annexed hereto, is to provide information of a kind, and in sufficient detail, to enable creditors of the Debtors that are entitled to vote on the Plan to make an informed decision on whether to vote to accept or reject the Plan.  This Disclosure Statement contains summaries of the Plan, certain statutory provisions, events in the Chapter 11 Cases and certain documents related to the Plan.[3]

Prior to the Petition Date, the Debtors were a leading originator of residential mortgage loans and, together with their non-Debtor affiliates, the fifth largest servicer of residential mortgage loans in the United States, servicing approximately $374 billion of domestic[4] residential mortgage loans and working with more than 2.4 million mortgage loans across the United States.  On May 14, 2012, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York.  **Neither Ally Financial Inc. (f/k/a GMAC Inc.) ("AFI", and together with its direct and indirect subsidiaries excluding the Debtors, "Ally"),[5] ResCap's indirect parent, nor Ally Bank (f/k/a GMAC Bank),[6] ResCap's affiliate, are Debtors in the Chapter 11 Cases.**

The Debtors and the Creditors' Committee, which represents the interests of all unsecured creditors, are co-proponents of the Plan and believe that the Plan is the best means to fairly and efficiently resolve the Debtors' Chapter 11 Cases.  Additional parties who support the

---

[1]  This introduction is qualified in its entirety by the more detailed information contained in the Plan and elsewhere in this Disclosure Statement.  Capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[2]  On May 16, 2012, the United States Trustee for the Southern District of New York appointed nine (9) creditors to represent all unsecured creditors in these Chapter 11 Cases on the Creditors' Committee [Docket No. 102].  The Creditors' Committee is comprised of the following creditors:  (1) Wilmington Trust, N.A.; (2) Deutsche Bank Trust Company Americas; (3) The Bank of New York Mellon Trust Company, N.A.; (4) MBIA Insurance Corporation; (5) Rowena L. Drennen; (6) AIG Asset Management (U.S.), LLC; (7) U.S. Bank National Association; (8) Allstate Life Insurance Company; and (9) Financial Guaranty Insurance Company.

[3]  Reference is made to the Plan and Plan Supplement for the complete terms of the Plan.

[4]  Unless otherwise specified, all information regarding the Debtors' mortgage loan operations refers only to domestic operations.

[5]  AFI, a bank-holding company regulated by the Board of Governors of the Federal Reserve System, is the parent company of GMAC Mortgage Group, LLC, the intermediate non-Debtor company that owns 100% of ResCap's equity.

[6]  Ally Bank is a commercial state chartered bank regulated by the Federal Deposit Insurance Corporation.

- 1 -

10  A waiver of any Subrogation Claims held by the GMACM Debtors and the RFC Debtors against the ResCap Debtors.

11  A compromise of all Intercompany Balances, potential subrogation claims, potential avoidance of historical debt forgiveness, claims relating to failure to charge Debtor entities with allocable expenses, and substantive consolidation.

Notably, as explained in more detail in Article IV.A.10 herein, the conclusions contained in the Report of the Examiner (as each defined below) supports the terms of the Global Settlement.

**THE DEBTORS, THE CREDITORS' COMMITTEE, ALLY, AND THE CONSENTING CLAIMANTS BELIEVE THAT IMPLEMENTATION OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND THEIR CREDITORS. FOR ALL OF THESE REASONS AND THOSE DESCRIBED IN THIS DISCLOSURE STATEMENT, THE PLAN PROPONENTS URGE YOU TO RETURN YOUR BALLOT ACCEPTING THE PLAN BY THE VOTING DEADLINE, (THE DATE BY WHICH YOUR BALLOT MUST BE ACTUALLY RECEIVED), WHICH IS OCTOBER 21, 2013 AT 7:00 P.M. (EASTERN TIME) (the "Voting Deadline").**

> **ARTICLE V OF THE DISCLOSURE STATEMENT AND ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**B.    ~~General Information~~**

### 1.    Important Information about this Disclosure Statement

On [•],August 23, 2013 2013, the Bankruptcy Court entered an order (the "Disclosure Statement Approval Order") approving this Disclosure Statement as containing "adequate information," *i.e.*, information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of the holders of Claims or Equity Interests to make an informed judgment about the Plan [Docket No. [•]4809]. This Disclosure Statement is submitted pursuant to Section 1125 of the Bankruptcy Code to holders of Claims against the Debtors in connection with (i) the solicitation of votes on the Plan, and (ii) the hearing scheduled for **November 19, 2013**, **at 10:00 a.m. (Eastern Time)** (the "Confirmation Hearing") to consider an order confirming the Plan (the "Confirmation Order").

The Disclosure Statement Approval Order sets forth, among other things, (i) the deadlines, procedures, and instructions for voting to accept or reject the Plan, and for filing objections to confirmation of the Plan, (ii) the record date for voting purposes, and (iii) the applicable standards for tabulating Ballots. A Ballot for acceptance or rejection of the Plan is enclosed with the copies of this Disclosure Statement submitted to the holders of Claims that are entitled to vote on the Plan. Detailed voting instructions accompany each Ballot. **The last day**

- 4 -

1. A copy of the Disclosure Statement Approval Order (without exhibits);

2. A paper copy of the notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>");

3. The Disclosure Statement, which shall include the Plan as an exhibit thereto and the ~~proposed~~ order ~~to approve~~<u>approving</u> the Disclosure Statement (without exhibits);

4. An appropriate form of Ballot in paper form, instructions on how to complete the Ballot, and a Ballot return envelope;

5. A paper copy of the applicable letters from the Plan Proponents recommending acceptance of the Plan;[33]

6. As appropriate, a postage pre-paid envelope; and

7. Such other materials as the Bankruptcy Court may direct.

The holders of Claims or Interests in Classes R-1, R-2, R-9, R-10, GS-1, GS-2, GS-8, GS-9, GS-10, RS-1, RS-2, RS-9, and RS-10 will receive a Confirmation Hearing Notice and a notice of non-voting status.

To reduce the administrative costs associated with printing and mailing such a voluminous document, the Plan Proponents may, but are not required to, elect to serve the Disclosure Statement and the Plan (including exhibits) via CD-ROM instead of in printed format. In addition to the service procedures outlined above: (a) the Plan, the Disclosure Statement and, once they are filed, all exhibits to both documents will be made available at no charge via the internet at http://www.kccllc.net/rescap; and (b) the Plan Proponents will provide parties in interest (at no charge) with hard copies of the Plan and/or Disclosure Statement upon (i) written request to Kurtzman Carson Consultants LLC ("<u>KCC</u>"), at ResCap Balloting Center, c/o KCC, 2335 Alaska Avenue, El Segundo, CA 90245, or (ii) calling (888) 251-2914.

2. **Voting Procedures, Ballots and Voting Deadline**

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan.

Please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan after carefully reviewing (1) the Plan, (2) the Disclosure Statement, (3) the Disclosure Statement Approval Order, and (4) the detailed instructions accompanying the Ballot.

---

[33] On August 16, 2013, the Creditors' Committee filed copies of (i) a letter from the Creditors' Committee to holders of General Unsecured Claims recommending that they vote in favor of the Plan, and (ii) a letter from the Creditors' Committee to holders of Borrower Claims recommending that they vote in favor of the Plan [Docket No. 4337], to be attached to the Disclosure Statement Order as Exhibit D, and included in the applicable Solicitation Packages.

- 15 -

ny-~~1105358~~ <u>1105669</u>

J.   **The Plan Resolves Claims of the Senior Unsecured Noteholders and the Senior Unsecured Notes Indenture Trustee**

The Plan provides for a good faith compromise and settlement of claims that the Senior Unsecured Notes Indenture Trustee, on behalf of the Senior Unsecured Noteholders, has against the Ally Released Parties and certain other Debtors. The claims related to, among other things, a breach of the Senior Unsecured Notes Indenture as well as claims held by the ResCap Estate against Ally relating to, among other things, the transfer of Ally Bank from ResCap to or for the benefit of Ally.

K.   **The Plan Resolves Issues Relating to Substantive Consolidation of the Debtors' Estates**

The Plan provides for a settlement and compromise of the issues relating to whether the liabilities and the assets of the Debtors should be substantively consolidated for purposes of distributions under the Plan. Specifically, the Plan provides for partial consolidation of the Debtors into three (3) Debtor Groups, as described above, solely for purposes of describing their treatment under the Plan, confirmation of the Plan, and making distributions under the Plan.[50]

The decision to partially consolidate the Debtors solely for the foregoing purposes was made after considering the various factors weighing both in favor of and against substantive consolidation. The Debtors concluded that complex, time-consuming, and uncertain litigation was likely if the issue of substantive consolidation was not earlier resolved, and that the cost of such litigation could pose a material risk to the Debtors' plan efforts and all Creditor recoveries. Moreover, the Debtors determined that the partial consolidation proposed in the Plan is consistent with applicable law because it does not harm any creditors.

The majority of the assets of the Debtors' Estates reside at ResCap, GMACM, and RFC, with the Debtor subsidiaries within each Debtor Group having little to no assets available for distribution to Creditors. In addition, the majority of Claims asserted against the Debtors are asserted against ResCap, GMACM, and RFC, with, in limited circumstances, *de minimis* Claims asserted against the other Debtor subsidiaries within a Debtor Group. In light of the location of Claims and assets, the partial consolidation proposed in the Plan confers the benefits of convenience and expediency without compromising Creditor recoveries at any Debtor. Under the Plan, each holder of an Allowed Claim will receive, on account of its Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. To the extent the Plan of a particular Debtor does not meet the "best interest of creditors" test, distributions under the Plan may be modified, as needed, to satisfy this test, with the consent of the Consenting Claimants, which consent shall not be unreasonably withheld. Accordingly, based upon the Plan Proponents' analysis, no creditors are harmed by the proposed grouping of the Debtors into the Debtor Groups for distribution purposes under the Plan.

---

[50] Exhibit 3 annexed hereto contains organizational charts detailing the Debtor entities. As set forth in the Plan Support Agreement, the grouping of Debtors set forth in the Plan remains subject to change with the reasonable consent of the Plan Proponents, Ally, and the Consenting Claimants.

- 39-

ny-~~1105358~~ 1105669

$7,091,200,000 against the RFC Debtors.[74] In exchange for these Allowed Claims, the RMBS Trusts shall be deemed to provide a full and complete discharge of the ResCap Debtors from any and all RMBS Trust Claims. On account of those Allowed Claims, the RMBS Claims Trust shall receive and hold, for the benefit of the RMBS Trusts, (i) the RMBS Trusts' Pro Rata Share of the GMACM Debtors Unit Distribution[75] (the "GMACM Pool") and (ii) the RMBS Trusts' Pro Rata Share of the RFC Debtors Unit Distribution[76] (the "RFC Pool"), net of the Allowed Fee Claim of 5.7%, which will be directly allocated to counsel for the Institutional Investors.[77]

Pursuant to the RMBS Trust Allocation Protocol, the Units initially distributed to the GMACM Pool and the RFC Pool will be re-allocated, based on the amount of the GMACM Recognized Cure Claims,[78] the RFC Recognized Cure Claims,[79] the GMACM Recognized

---

[74] The RMBS Settlement also provides that 5.7% of the aggregate Allowed RMBS Trust Claims will be transferred to counsel for the Institutional Investors, by direct allocation under the Plan and without conveyance to the RMBS Trustees (the "Allowed Fee Claim"), who shall hold RMBS Trust Claims against the relevant entities for each respective Trust pursuant to the Plan and the RMBS Trust Allocation Protocol, which amounts shall reduce the total amount of Allowed RMBS Trust Claims. The Allowed Fee Claim shall be apportioned among counsel for the Steering Committee Consenting Claimants, on the one hand, and counsel for the Talcott Franklin Consenting Claimants, on the other, in conformity with the Original RMBS Settlement Agreements. The portion of the Allowed Fee Claim allocated to counsel for the Steering Committee Consenting Claimants shall be paid 4.75% to Gibbs & Bruns LLP and 0.95% to Ropes & Gray LLP. The portion of the Allowed Fee Claim allocated to counsel for the Talcott Franklin Consenting Claimants shall be paid 5.7% to be shared among Talcott Franklin P.C., Miller, Johnson, Snell & Cummiskey, P.L.C., and Carter Ledyard & Milburn LLP based on lodestar as calculated per agreement between co-counsel. Each share of the Allowed Fee Claim (and distributions thereon, including Trust Units) shall be documented in separate claims stipulations and shall be independently transferable. Amherst Advisory & Management, LLC, acting in its capacity as investment manager for holders of certain trust certificates issued by the RALI Series 2006-QO7 Trust, has previously argued and continues to assert that the Allowed Fee Claim should not be deducted from all RMBS investors' recoveries or, alternatively, advisor fees for all RMBS investors should be paid by the Estates.

[75] Annexed hereto as Exhibit 13 is the Explanation of Calculation of Recoveries to the RMBS Trusts. All amounts set forth therein are estimated and subject to change. Based on Exhibits 4, 7, and 13 to this Disclosure Statement (which are subject to change), the Pro Rata Share would result in 2,564,600 Units being distributed into the GMACM Pool on Initial Unit Distribution Date.

[76] Based on Exhibits 4, 7, and 13 to this Disclosure Statement (which are subject to change), the Pro Rata Share would result in 25,812,769 Units being distributed into the RFC Pool on Initial Unit Distribution Date.

[77] Based on Exhibits 4, 7, and 13 to this Disclosure Statement (which are subject to change), 1,617,510 Units would be directly allocated to counsel for the Allowed Fee Claim.

[78] The GMACM Recognized Cure Claims are listed on Schedule 1-G to the Plan (which is subject to change). The claims represent claims of the RMBS ~~Trust~~Trusts listed on that schedule for damages arising out of or related to GMACM's servicing of mortgage loans held by an RMBS Trust where the Servicing Agreement for that trust was assumed by GMACM.

[79] The RFC Recognized Cure Claims are listed on Schedule 1-R to the Plan (which is subject to change). The claims represent claims of the RMBS ~~Trust~~Trusts listed on that schedule for damages arising out of or related to RFC's servicing of mortgage loans held by an RMBS Trust where the Servicing Agreement for that trust was assumed by RFC.

- 83-

Original R+W Claims,[80] the RFC Recognized Original R+W Claims,[81] the GMACM Recognized Additional R+W Claims,[82] the RFC Recognized Additional R+W Claims,[83] the GMACM Recognized Servicing Claims[84] and the RFC Recognized Servicing Claims.[85]  This re-allocation of Units settles (i) any disputed claims that RFC-sponsored RMBS Trusts have asserted or could assert against GMACM, (ii) disputes as to the proper allocation of Estate assets as between the GMACM Debtors and the RFC Debtors, and (iii) other potential disputes that the RMBS Trusts could have with respect to the terms of the Plan.  Based on calculations prepared by Duff & Phelps, LLC ("Duff") (taking into account the allocation of the Allowed Fee Claim), 2,949,494 Units (together with any cash distributions, if any, on such Units made prior to the reallocation of Units contemplated by this paragraph) shall be moved from the RFC Pool to the GMACM Pool.[86]  After this re-allocation, the GMACM Pool will hold 5,367,912 Units and the RFC Pool will hold 21,391,947 Units.[87]

All distributions from the RMBS Claims Trust from the GMACM Pool to RMBS Trusts with Recognized Claims against GMACM will be based on the percentage that such RMBS Trust's GMACM Weighted Claim has to the total of all of the GMACM Weighted Claims.  The GMACM Weighted Claim of each RMBS Trust will be determined as follows: if a trust has any of the following Recognized Claims (as shown on Schedules 1-G, 2-G, 3-G or 4-G), they will be valued as follows (i) a GMACM Recognized Cure Claim shall be valued at 100%, (ii) a GMACM Recognized Original R+W Claim, a GMACM Recognized Additional R+W Claims or

---

[80]  The GMACM Recognized Original R+W Claims are listed on Schedule 2-G to the Plan (which is subject to change).  These claims represent claims of the RMBS Trusts listed on that schedule for damages arising out of or related to breaches of representations and warranties made by GMACM with respect to the mortgage loans contributed or sold to such RMBS Trust.  Each of the RMBS Trusts listed on this Schedule is one of the Original Settling RMBS Trusts.

[81]  The RFC Recognized Original R+W Claims are listed on Schedule 2-R to the Plan (which is subject to change).  These claims represent claims of the RMBS Trusts listed on that schedule for damages arising out of or related to breaches of representations and warranties made by RFC with respect to the mortgage loans contributed or sold to such RMBS Trust.  Each of the RMBS Trusts listed on this Schedule is one of the Original Settling RMBS Trusts.

[82]  The GMACM Recognized Additional R+W Claims are listed on Schedule 3-G to the Plan (which is subject to change).  These claims represent claims of the RMBS Trusts listed on that schedule for damages arising out of or related to breaches of representations and warranties made by GMACM with respect to the mortgage loans contributed or sold to such RMBS Trust.  The RMBS Trusts listed on this Schedule were not one of the Original Settling RMBS Trusts.

[83]  The RFC Recognized Additional R+W Claims are listed on Schedule 3-R to the Plan (which is subject to change).  These claims represent claims of the RMBS Trusts listed on that schedule for damages arising out of or related to breaches of representations and warranties made by RFC with respect to the mortgage loans contributed or sold to such RMBS Trust.  The RMBS Trusts listed on this Schedule were not one of the Original Settling RMBS Trusts.

[84]  The GMACM Recognized Servicing Claims are listed on Schedule 4-G to the Plan (which is subject to change).  The claims represent agreed claims of the RMBS TrustTrusts listed on that schedule for damages arising out of or related to GMACM's servicing of mortgage loans held by an RMBS Trust where the Servicing Agreement for that trust was not assumed by GMACM.•

[85]  The RFC Recognized Unsecured Servicing Claims are listed on Schedule 4-R to the Plan (which is subject to change).  The claims represent agreed claims of the RMBS Trust listed on that schedule for damages arising out of or related to RFC's servicing of mortgage loans held by an RMBS Trust where the Servicing Agreement for that trust was not assumed by RFC.

[86]  This number will be recalculated after the Unit Issuance Percentages are adjusted.  See Article II.N. of this Disclosure Statement.

[87]  These numbers may change after the Unit Issuance Percentages are adjusted.  See Article II.N. of this Disclosure Statement.

- 84-

a GMACM Recognized Servicing Claims, as applicable, will be valued at 16.7%,[88] and (iii) the values so calculated will be summed for each such RMBS Trust (the "GMACM Weighted Claim").[89]

All distributions from the RMBS Claims Trust from the RFC Pool to RMBS Trusts with Recognized Claims against RFC will be based on the percentage that such RMBS Trust's RFC Weighted Claim has to the total of all of the RFC Weighted Claims. The RFC Weighted Claim of each RMBS Trust will be determined as follows: if a trust has any of the following Recognized Claims (as shown on Schedules 1-R, 2-R, 3-R or 4-R), they will be valued as follows (i) a RFC Recognized Cure Claim shall be valued at 100%, (ii) a RFC Recognized Original R+W Claim, a RFC Recognized Additional R+W Claims or a RFC Recognized Unsecured Servicing Claim, as applicable, will be valued at 5.34%, and (iii) the values so calculated will be summed for each such RMBS Trust (the "RFC Weighted Claim").

An ~~illustration~~explanation of the calculation of the weighted claims of several trusts is contained on Exhibit ~~12~~13 to this Disclosure Statement.

For each RMBS Trust having Recognized Claims against GMACM, Exhibit 12 to this Disclosure Statement shows (i) that RMBS Trust's GMACM Weighted Claim, (ii) the percentage that RMBS Trust's GMACM Weighted Claim has to the total of all of the GMACM Weighted Claims, and (iii) based on the estimated value of a Unit, the estimated cash distributions to such trust from the Units held by the RMBS Claims Trust.

For each RMBS Trust having Recognized Claims against RFC, Exhibit 12 to this Disclosure Statement shows (i) that RMBS Trust's RFC Weighted Claim, (ii) the percentage that RMBS Trust's RFC Weighted Claim has to the total of all of the RFC Weighted Claims, and (iii) based on the estimated value of a Unit (which is subject to change), the estimated cash distributions to such trust from the Units held by the RMBS Claims Trust.

All of the numbers in both ~~Table G~~Exhibits 12 and ~~Table R~~13 are subject to change, and each will be updated in the Plan Supplement.

Recognized RMBS Claims are any claims of RMBS Trusts that have timely filed Proofs of Claim, taking into account the impact of payments by monoline insurers, in the amounts determined by Duff. Duff's methodology for determining the Recognized Claims is annexed hereto as Exhibit 9. Duff's determination of each RMBS Trust's Recognized Claims is annexed to the Plan as the RMBS Trust Claims Schedules. A final version of the RMBS Trust Claims Schedules will be filed with the Plan Supplement.

In addition, each Insured RMBS Trust shall retain the ability to enforce its rights, in the Bankruptcy Court or otherwise, against any Monoline (other than FGIC) that does not, in the future, perform in accordance with an insurance policy for the benefit of that RMBS Trust. The

---

[88] This number may change after the Unit Issuance Percentages are adjusted. *See* Art. II.N. of this Disclosure Statement.

[89] The "Weighted" claim accounts for the fact that some of the Servicing Agreement were assumed by the Debtors, giving rise to administrative priority status, and distributions to RMBS Trusts having such claims are weighted accordingly for purposes of distribution to each RMBS Trust.

- 85-

ny-~~1105358~~ 1105669

### X.      Settlement, Release, Injunction, and Related Provisions

As discussed in detail in Article II above, the Plan contains the following settlements, Releases, ~~exculpations~~Exculpations, and injunctions:

#### 1.      Compromise and Settlement of Claims, Equity Interests, and Controversies

In accordance with section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests and is fair, equitable and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trust may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

#### 2.      Release of Liens

**Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of any Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall vest in the Liquidating Trust.**

#### 3.      Releases by the Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including with respect to the Ally Released Parties, the Ally Contribution provided to the Estates under the Plan and otherwise, on and as of the Effective Date of the Plan, the Debtor Released Parties are deemed released and discharged by the Debtors, the Estates and the Liquidating Trust from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, including those Causes of Action based on avoidance liability under federal or state laws, veil piercing or alter-ego theories of liability, a theory of debt recharacterization, or equitable subordination liability, arising from or related in any way to the Debtors, including those that any of the Debtors would have been legally entitled to assert against a Debtor Released Party in its**

-141-

ny-~~1105358~~ 1105669

5. **Third Party Release Carve-Out**

Notwithstanding anything to the contrary herein, the Third Party Release shall not apply to any claims held by: (i) the FDIC, in its capacity as a receiver, against Ally, (ii) the FHFA against Ally; and (iii) Fannie Mae against Ally Bank, including, without limitation, any claims of Fannie Mae against Ally Bank for continuing liabilities, obligations, and duties owed by Ally Bank to Fannie Mae under the Fannie Mae Contract, including the obligations and duties to honor all selling and servicing representations and warranties related to the portfolio of loans sold and/or serviced, or that were previously serviced, by Ally Bank.

For the avoidance of doubt, Released Claims in connection with this Article V.X.5. shall constitute any Claims, Equity Interests, Causes of Action or liabilities against the Debtors held by Ally or Fannie Mae.

Nothing in the Plan releases AFI or any other party from the obligations under the Employees Retirement Plan for GMAC Mortgage Group, LLC (the "**Pension Plan**") and ERISA. Notwithstanding the foregoing, upon the Effective Date, the Debtors and the Plan Trusts shall be released from all obligations under the Pension Plan and ERISA related thereto, except for any Claims for fiduciary breaches or prohibited transactions (as defined in ERISA) relating to the Pension Plan under applicable law.

6. **Ally Releases**

Except with respect to the Ally Contract Claims, on and as of the Effective Date of the Plan, the Ally Released Parties shall release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors, and Representatives, in their capacities as such, from any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise arising from or related to the Debtors' liquidation, including the negotiation, formulation, or preparation of the Plan Support Agreement, the Plan, the Disclosure Statement, and any other Plan Documents and related disclosures, as well as any counterclaims in commenced or tolled litigation with the Debtors or the Consenting Claimants.

7. **Exculpation**

The Exculpated Parties shall neither have, nor incur, any liability to any entity for any pre-petition or post-petition act or omission taken in connection with, or related to, formulating, negotiating, preparing, disseminating, soliciting, implementing, administering, confirming, or effecting the consummation of any prepetition plan support agreements, the Plan Support Agreement, the Plan, the Disclosure Statement, the FGIC Settlement Agreement, the Kessler Settlement Agreement, the RMBS Settlement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan provided, that the foregoing provisions of this ~~exculpation~~Exculpation shall have no effect on the liability of any entity that results from any such act that is determined

-143-

indemnity and the Third Party Release in the following jurisdictions: California, Illinois, Indiana, Kansas, Massachusetts, Minnesota, New York, New Jersey, and Ohio. In addition, Investor-related securities plaintiffs have tolled claims in actions that could be commenced in the following jurisdictions: Florida, Illinois, Iowa, New Jersey, New York, and Israel. Judgment reduction and contribution law in jurisdictions beyond the forum of any particular litigation, including Israel, Ireland and Germany, may apply depending on questions of choice of law.

Certain parties have raised issues with the Judgment Reduction Provision that the Plan Proponents hope to resolve prior to confirmation.

**Y.    Conditions Precedent to Confirmation and Consummation of the Plan**

    **1.    Conditions Precedent to Confirmation**

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

(a)    Court approval of the Disclosure Statement in a form and substance reasonably acceptable to the Plan Proponents, Ally, and the Consenting Claimants, as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

(b)    The Plan shall be reasonably acceptable to the Plan Proponents, Ally and each of the Consenting Claimants, in accordance with the terms of the Plan Support Agreement;

(c)    The Confirmation Order shall be reasonably acceptable to the Plan Proponents, Ally, and each of the Consenting Claimants;

(d)    The Plan Supplement and any related documentation shall be reasonably satisfactory to the Plan Proponents, Ally, and each of the Consenting Claimants;

(e)    Court approval of the RMBS Settlement pursuant to Bankruptcy Rule 9019; and

(f)    No Plan modifications that have altered distributions to be made under the Plan shall have occurred without the consent of the Plan Proponents, Ally, and each of the Consenting Claimants;

(g)    Court approval of the Third Party Releases, and Debtor Releases ~~and Exculpation provisions~~ in the Plan, without any modification thereto; and

(h)    Court approval of the Exculpation, in a form reasonably satisfactory to the Plan Proponents, Ally, and each of the Consenting Claimants.

    **2.    Conditions Precedent to Consummation**

It shall be a condition to the Plan Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.C of the Plan:

(a) the Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan, including all settlements therein, the Debtor Releases, the Third Party Releases, the injunctions, and ~~exculpation~~Exculpation of the Exculpated Parties;

(b) the Confirmation Order shall not have been stayed, modified, or vacated on appeal, and the time to appeal shall have passed;

(c) on or before September 16, 2013, the FGIC Rehabilitation Court shall have entered an order substantially in the form attached to the FGIC Settlement Agreement as Exhibit E (or such other form as agreed to by FGIC, the Debtors, and the RMBS Trustees) approving the Plan Support Agreement (as it relates to FGIC) and the FGIC Settlement Agreement, including the settlement and release of all present and future claims against FGIC under or relating to the FGIC Policies;

(d) the Bankruptcy Court shall have entered an order substantially in the form attached to the FGIC Settlement Agreement as Exhibit D (or such other form as agreed to by FGIC, the Debtors, and the RMBS Trustees and counsel for the Institutional Investors) approving the FGIC Settlement Agreement, including the settlement and release of all present and future claims against FGIC under or relating to the FGIC Policies and the allowance of FGIC's General Unsecured Claims against the Debtors, pursuant to a Bankruptcy Rule 9019 motion, which order shall include a finding that the transactions contemplated by the FGIC Settlement Agreement are in the best interests of the RMBS Trusts;

(e) Ally will have funded at least $1,950,000,000 of the Ally Contribution;

(f) the Liquidating Trust Agreement, the RMBS Claims Trust Agreement, the Private Securities Claims Trust Agreement and the Borrower Claims Trust Agreement shall have been executed;

(g) the Ally Contract Claims and any other Claims held by Ally Allowed under the Plan, will have been Allowed, deemed indefeasible, and approved by the Bankruptcy Court without subordination of any kind, and satisfied as set forth herein;

(h) subject to Article IV.C. of the Plan, the Available Assets shall have been transferred to the Liquidating Trust;

(i) the Professional Fee Escrow Account shall have been funded;

(j) all material governmental and third party approvals and consents, including Bankruptcy Court approval, and approvals Ally may be required to obtain, necessary in connection with the transactions contemplated by the Plan, shall have been obtained and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

(k) all other actions, documents, and agreements necessary to implement the Plan as of the Effective Date will have been delivered and all conditions precedent thereto will have been satisfied or waived.

Respectfully submitted,

        /s/ Lewis Kruger
        Residential Capital, LLC
        By: Lewis Kruger
        Title: Chief Restructuring Officer
        Dated: August ~~20,~~ 23, 2013

Prepared by:

| | |
|---|---|
| Gary S. Lee | Kenneth H. Eckstein |
| Lorenzo Marinuzzi | Doughlas H. Mannal |
| Todd M. Goren | Stephen D. Zide |
| Jennifer L. Marines | Rachael L. Ringer |
| Samantha Martin | KRAMER LEVIN NAFTALIS & |
| MORRISON & FOERSTER LLP | FRANKEL LLP |
| 1290 Avenue of the Americas | 1177 Avenue of the Americas |
| New York, New York 10104 | New York, New York 10036 |
| Telephone: (212) 468-8000 | Telephone: (212) 715-9100 |
| Facsimile: (212) 468-7900 | Facsimile: (212) 715-8000 |
| | |
| - and - | *Counsel for the Official Committee of Unsecured Creditors* |
| | |
| Alexandra Steinberg Barrage | |
| MORRISON & FOERSTER LLP | |
| 2000 Pennsylvania Avenue, NW | |
| Washington, DC 20006-1888 | |
| Telephone: (202) 887-1500 | |
| Facsimile: (202) 887-0763 | |

*Counsel for the Debtors and
Debtors in Possession*

-188-

ny- ~~1105358~~ 1105669