**MOSS & KALISH, PLLC**
David B. Gelfarb
122 East 42nd Street, Suite 2100
New York, New York 10168
Telephone: 212-867-4488
Facsimile: 212-983-5276
Email: gelfarb@mosskalish.com

*Attorneys for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---------------------------------------------------------------------------------

**JOINDER OF FEDERAL HOME LOAN MORTGAGE
CORPORATION PROPOSED POST-TRIAL FINDINGS OF FACT AND
CONCLUSIONS OF LAW OF MONARCH ALTERNATIVE CAPITAL LP,
STONEHILL CAPITAL MANAGEMENT LLC, BAYVIEW FUND MANAGEMENT
LLC, CQS ABS MASTER FUND LIMITED AND CQS ABS ALPHA MASTER FUND
LIMITED WITH ADDITIONAL SUPPLEMENTAL FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON BEHALF OF FEDERAL HOME LOAN MORTGAGE
CORPORATION**

Federal Home Loan Mortgage Corporation in conservatorship ("Freddie Mac"),[1] by and through its undersigned counsel, hereby joins (the "Joinder") the *Proposed Findings of Fact and Conclusions of Law of Monarch Alternative Capital, LP, Stonehill Capital Management LLC, Bayview Fund Management LLC, CQS ABS Master Fund Limited and CQS ABS Alpha Master*

---

[1] On September 6, 2008, the Director of the Federal Housing Finance Agency (the "FHFA" or the "Conservator") placed Freddie Mac into conservatorship, pursuant to express authority granted under the Housing and Economic Recovery Act of 2008, to preserve and conserve Freddie Mac's assets and property. As Conservator, FHFA immediately succeeded to "all rights, titles, powers and privileges" of Freddie Mac. *See* 12 U.S.C. § 4617(b)(2)(A)(i). This Joinder does not constitute submission to this Court's jurisdiction by the FHFA.

*Fund Limited* (the "Investors' Proposed Findings of Fact and Conclusions of Law") and asserts the following additional findings of fact and conclusions of law:

### JOINDER

1. Freddie Mac is a major holder of various tranches of residential mortgage-backed securities held in nine ResCap securitization trusts. The payment of principal and interest on the securities held in the trusts is insured under approximately sixty insurance policies issued by Financial Guaranty Insurance Company.

2. Freddie Mac hereby joins with, and adopts the findings of fact and conclusions of law in advanced in, the Investors Findings of Fact and Conclusions of Law, with the following additions thereto:

**A.    Additional Findings of Fact (The FGIC Rehabilitation):**

1. Freddie Mac's current face amount of holdings is $522,522,110 in the FGIC Wrapped Trusts.  (Healy Dir. ¶ 5.)

2. Beginning in 2010, a steering committee of long- and short-dated policyholders (the "Steering Committee") commenced negotiations with a then-insolvent FGIC concerning a plan of rehabilitation. (Healy Dir. ¶ 7.)  The Steering committee was comprised of major Holders such as Freddie Mac. (Healy Dir. ¶ 7; Dubel Tr. 59:9-22.)

3. The negotiations culminated in January of 2011 in a term sheet specifying the terms and conditions of FGIC's Rehabilitation Plan.  (Healy Dir. ¶ 10.)  Any discussions concerning commutation focused solely on commuting the claims collateralized-debt security ("CDS") holders and reinsurance commutation/termination or novation. (Healy Dir. ¶ 10.)

4.      John Dubel, FGIC's Chief Executive Officer, participated in all of these negotiations and was very much concerned that long- and short-dated policyholders' claims be treated equally. (Healy Dir. ¶ 8.)

5.      After the Rehabilitation Plan was initially filed in September of 2012, Freddie Mac and other Steering Committee members sought to facilitate discussions between the Trustees and Freddie Mac. (Healy Dir. ¶ 11.) In order to participate in these discussions, certain of the Trustees requested that Freddie Mac provide them with information concerning Freddie Mac's holdings, which it did in mid-January of 2013. (Healy Dir. ¶ 11.) Freddie Mac signed a confidentiality agreement with BNY and the Rehabilitator. (TX-AO.)

6.      The discussions between the Rehabilitator/FGIC, Freddie Mac, and the Steering Committee centered primarily upon (i) FGIC's attempt to control put-back rights and breach of representation and warranty claims held by the FGIC-Insured Trusts and (ii) the design and structure of certain deferred payment obligations. (Healy Dir. ¶ 9.)

7.      The negotiations did not include any discussions concerning commuting the FGIC Policies. (Healy Dir. ¶ 10.) This understanding was memorialized in the disclosed schedule the Rehabilitator filed in the Rehabilitation Proceeding. (Healy Dir. ¶ 12.)

8.      Mr. Dubel admitted on three occasions that he never discussed with the Steering Committee and Freddie Mac that he would seek to commute the FGIC Policies. (Trial Tr. 478:13-479:17; Dubel Tr. 58:16-59:6, 60:10-20.)

9.      The only commutations in the Rehabilitation Proceeding occurred with the consent of the parties and on notice to the Steering Committee. (Trial Tr. 472:19-473:6, 476:13-17, 480:19-21.) The only commutation of a policy covering RMBS was consensually done, with

no objection by the investors and no payment to FGIC, after the FGIC Settlement Agreement was proposed. (Trial Tr. 47:4-48:3, 472:13-474:2.)

10.     Freddie Mac was a key participant in these negotiations and was actively in discussions with both the Steering Committee and FGIC.  (Healy Dir. 8.)  Freddie Mac was at the negotiating table and was not aware of the discussion between FGIC and the Debtors to commute the FGIC Policies.  (Healy Dir. ¶ 10.)

11.     Freddie Mac would not have approved the Rehabilitation Plan had it known that the Policies would be commuted for a one-time lump sum payment resulting in an approximately 21.4% recovery.  (Healy Dir. ¶ 18; Healy Tr. at 51-53, 55.)  Freddie Mac understood that the Rehabilitation Plan was designed so that policyholders would participate in the overall economic recovery of the housing market.  (Healy Tr. 55-56.)

12.     The disclosure statement accompanying the Rehabilitation Plan did not reference specifically the commutation of the FGIC Policies but only refers to the commutation of CDS policies and novations of reinsurance contracts.  (Dubel Tr. Trial Tr. 46:4-47:3; 76:17-25, 77:2-5.)

**B.    Additional Findings of Fact (the Mediation):**

1.      On or about April 22, 2013, Christopher Johnson, a member of Kasowitz, Benson, Torres & Friedman LLP, counsel of record for the Federal Housing Finance Agency (the "FHFA"), in Federal Housing Finance Agency, as Conservator of the Federal Home Loan Mortgage Corp., v. Ally Financial, Inc, et al. (the "Ally Action"), attended a court-ordered mediation in the Ally Action at the SDNY before United States Magistrate Judge James C. Francis.  (TX-310 ¶ 2.)

2. Mr. Johnson was made aware at that meeting that a separate mediation was being simultaneously conducted in the In re Residential Capital LLC bankruptcy matter (the "ResCap Mediation") at the Kramer Levin Naftalis & Frankel LLP law firm. (TX-310 ¶ 2.)

3. Mr. Johnson's only purpose in attending the Mediation was to pursue settlement discussions directly with Ally Financial with respect to the Ally Action. (TX-310 ¶ 2.)

4. Mr. Johnson did not recall having been approached by anyone at the ResCap Mediation regarding Freddie Mac's claims against FGIC, and he did not recall ever having been told by anyone at the ResCap Mediation that Freddie Mac's claims against FGIC were even a subject of discussion there. (TX-310 ¶ 4.)

5. The Trustees were aware that Holders would have wanted to participate at the mediation or be informed about the possibility of the FGIC Commutation, which was first proposed in January of 2013, but stated that they were restricted from contacting Freddie Mac by this court's order. (Dubel Dir. Exh D; Trial Tr. 175:8-13; Major Tr. 187:19-188:2.)

6. No one mentioned to the FHFA that the parties were considering commuting the FGIC Policies. (Dubel Tr. 51:10-20.)

7. This Court's order appointing the Mediator did not restrict or prohibit parties to the mediation from reaching out of the mediation to see if a necessary party could participate. Such reaching out was possible, as evidenced by Mr. Johnson participation on behalf of the FHFA's in the mediation with Ally Bank.

8. The Trustees failed to take action to notify Freddie Mac of the commutation proposal. (Trial Tr. 175:8-13; Major Tr. 187:19-188:2.) The Trustee's knew the commutation proposal was directly contrary to Freddie Mac's distribution rights under the rehabilitation plan

and directly contrary to BNY's and other Trustees on going negotiations with Freddie Mac, the Steering Committee and FGIC. (See Pfeiffer Dir. at 14-25.)

**C.    Additional Findings of Fact (the Duff & Phelps Analysis):**

1.    Duff & Phelps accepted the 40% "haircut" in page 5 of the Duff & Phelps Report as reasonable without further review of the rationale used by FGIC to apply this 40% "haircut." (Declaration of Scott R. Gibson Dkt. No. 4693, dated July 31, 2013, filed August 15, 2013 [hereinafter "Gibson Decl."] ¶ 42.)

**D.    Additional Findings of Fact (the FGIC Settlement Agreement):**

2.    Per the applicable Governing Documents, on July 19, 2013, Freddie Mac sent letters to BNY and US Bank direction letters directing them not to enter into the FGIC Settlement Agreement without Freddie Mac's consent. (TX-IA-II [Pending].)

3.    Recoveries under the FGIC Settlement Agreement to Holders would not include recoveries in FGIC's lawsuits against the Debtors, other third parties, and other mortgage servicers/originators. (Gibson Decl. at ¶ 17.)

4.    If the FGIC Settlement Agreement is not approved, it is reasonable to assume FGIC would receive at least $206.5 million on account of its direct claims against the Debtors. (Gibson Decl. at ¶ 18; Trial Tr. at 368:10-23; *see* Kruger Tr. at 103:2-18, 208:7-22; Lipps Dir. at ¶¶ 127, 131, 150.)

5.    Under the Rehabilitation Plan, the Holders will receive an incremental increase to the payments received under the Rehabilitation Plan if losses to their respective tranches increase (holding all other FGIC policy claims constant). (Gibson Decl. ¶ 42.)

6.    If losses were to increase for the individual bonds, such holders would expect to receive an increasing amount of payments under the Rehabilitation Plan. (Gibson Decl. ¶ 42.)

7. The FGIC Settlement Agreement provides no incremental benefit to increasing losses beyond current loss expectations. (Gibson Decl. ¶ 44; Trial Tr. 55:16-56:5, 233:2-234:9; Dubel Tr. 134:18-25, 135:2-19, 136:8-25.)

8. The Findings the Trustees seek this Court to make are unusual. (Major Tr. 204:22-205:10.)

E. **Additional Findings of Fact (Analysis of Investors' Projected Recoveries under the Settlement Agreement):**

9. The purported $140 million reimbursements allegedly owed to FGIC are contingent claims depending on the waterfall structure of each of the Trusts. (Dubel 64:27-65:23.) Furthermore, the Proponents have not satisfied their burden to demonstrate that the Policies are actually property of the Trustees as opposed to property of the Trust estates.[2]

F. **Additional Conclusions of Law:**

1. Federal statutes and case law recognize that state statutes (such as New York's) granting jurisdiction over insurers' rehabilitation or liquidation proceedings reverse-preempt the exercise of jurisdiction by federal authorities or courts, including bankruptcy courts, because it would impede or supersede the state processes regulating the business of insurance. The McCarran-Ferguson Act, *codified as* 15 U.S.C. 1011-1015, exempts the business of insurance from most federal regulation, providing that "no Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . ." 15 U.S.C. § 1012(b); *see also, e.g.*, *In re Amwest Ins. Group, Inc.*, 285 B.R. 447, 451 (Bankr. C.D. Cal. 2002); *Munich Am. Reinsurance Co. v. Crawford,* 141 F.3d 585, 595

---

[2] It is understood that certain of the Proponents will provide the Policies at issue for the first time on August 26, 2013, pursuant to the agreement of the parties.

(5th Cir 1998); *Davister Corp. v. United Republic Life Ins. Co.,* 152 F.3d 1277, 1281 (10th Cir 1998); *Advanced Cellular Systems, Inc. v. Mayol,* 235 B.R. 713, 724-25 (Bankr. D.P.R. 1999).

2.  The McCarran-Ferguson Act provides states with preemptive authority over the regulation of "the business of insurance." The McCarran-Ferguson Act "'overturned the normal legal rules of preemption' by imposing a rule 'that state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless the federal statute specifically provides otherwise.'" *Am. Deposit Corp. v. Schacht*, 84 F.3d 834, 837-38 (7th Cir. 1996) (quoting *United States Dep't. of Treasury v. Fabe*, 508 U.S. 491, 507 (1993)). The McCarran-Ferguson Act reverses the normal supremacy of federal law over state law, so long as the activity in question falls under the heading of "the business of insurance." *Advanced Cellular*, 235 B.R. at 718. In effect, the McCarran-Ferguson Act reverses the ordinary rules of preemption, which holds that federal law preempts state law by virtue of the supremacy clause in Article VI of the U.S. Constitution. *Fabe*, 508 U.S. at 500.

3.  But for the Commutation, the Trustees would not be requesting the entry of the Proposed Findings. Thus, the FGIC Policies are directly implicated here. The Proposed Findings in connection with the FGIC Trustees' agreeing to the FGIC Commutation are unusual for an indenture trustee to request: this Court is not being asked to approve the FGIC Commutation, and the merits of the FGIC Commutation *per se* are not properly before this Court.

4.  The Trustees, FGIC, and other of the Proponents rely on *In re Delta Airlines, Inc.*, 370 B.R. 537 (Bankr. S.D.N.Y. 2007) for the proposition that that this Court has the authority to enter the Proposed Findings. But Delta is inapposite to the facts here and is readily distinguishable. In *Delta*, certain bondholders objected to a global settlement between the debtor

and other parties regarding the rejection of an airport lease that required the debtor to make payments on certain bonds issued under a trust indenture. *Id.* at 540. In that case, the Court determined that the objecting bondholders, as creditors of a creditor, had no standing to object to the settlement at issue. *Id.* at 541-42. Here, by contrast, the Proposed Findings directly implicate the Investors and Freddie Mac. Recognizing this, this Court has entered an order with respect to the Plan Support Agreement without prejudice to the Investors' and Freddie Mac's rights to contest the Proposed Findings.

5. Second, *Delta* (the debtor) was not the primary obligor under the lease providing for payments to the bondholders, and the bondholders' claims against the issuing trusts were non-recourse. *Id.* at 541. Here, by contrast, the Freddie Mac are not seeking to maintain claims against the Debtors for the principal and interest due on the FGIC-Wrapped ResCap securities Freddie Mac holds. Rather, such claims are asserted against the Trusts. Unlike in *Delta*, this Court has been asked to make findings that effectively release claims held by the FGIC Wrapped Trusts against a *non-debtor*, FGIC, which has the ability to pay between 27-30% present value on claims arising under the FGIC Policies. Also unlike in *Delta*, the rights of Holders to be compensated by FGIC under the FGIC Policies were established pursuant to the Rehabilitation Plan, which is not dependent upon a settlement with the Debtors. Indeed, FGIC's payment obligations to the FGIC Wrapped Trusts are not dependent upon the Debtors or a settlement with the Debtors. Additionally, the entry of the Proposed Findings will mark the first time in the Rehabilitation Proceeding that the real parties-in-interest (the Holders) did not consensually approve a commutation. (Trial Tr. 472:19-473:6, 476:13-17, 480:19-21.)

6.      The Trustees have not presented sufficient evidence that such unusual findings of fact are warranted in this matter and they have not demonstrated that they are entitled to such findings from this Court.

Dated:  August 26, 2013
        New York, New York

              Respectfully submitted,
            **MOSS & KALISH, PLLC**

            /s/ David B. Gelfarb
            David B. Gelfarb
            122 East 42nd Street, Suite 2100
            New York, New York 10168
            Telephone:  212-867-4488
            Facsimile:  212-983-5276
            Email: gelfarb@mosskalish.com

            *Attorneys for Federal Home Loan Mortgage Corporation*