## Exhibit 1-A

**Proof of Claim No. 1360**

Claim #1360    Date Filed: 10/16/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: *GMAC MORTGAGE, LLC*    Case Number: *12-12032*

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Robert Sweeting

Name and address where notices should be sent:    NameID: 10855079

Robert Sweeting
ROBERT SWEETING VS JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER,
INTERNATIONAL MRTG INC, CAITLIN CHEN, FREMONT INVEST ET AL
7071 Warner Ave, Suite F81
Huntington Beach, CA 92647

Telephone number: *562 3748218*    email: *POWERBRAKEBOB@MSN*

☐ Check this box if this claim amends a previously filed claim.

**Court Claim**
Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number: _____    email: _____

1. **Amount of Claim as of Date Case Filed:** $ *79,170,000.00    CASE # ORANGE CITY*
   *30-2008-00104237*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** *WRONGFUL FORECLOSURE / COURT ACTION*
   (See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** *1331*

   **3a. Debtor may have scheduled account as:**
   _____
   (See instruction #3a)

   **3b. Uniform Claim Identifier (optional):**
   _____
   (See instruction #3b)

4. **Secured Claim** (See instruction #4)
   Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

   **Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
   **Describe:**

   Value of Property: $_____    Annual Interest Rate_____%  ☐Fixed ☐Variable
   (when case was filed)

   Amount of arrearage and other charges, as of the time case was filed, included in secured claim,

   if any: $_____    Basis for perfection: _____

   Amount of Secured Claim: $_____    Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

   **Amount entitled to priority:**

   $_____

   * *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Claim Pursuant to 11 U.S.C. § 503(b)(9):**
   Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
   $_____    (See instruction #6)

7. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #8, and the definition of "redacted".)

   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

   If the documents are not available, please explain:

9. **Signature:** (See instruction #9) Check the appropriate box.
   ☒ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

   I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

   Print Name: *Robert Sweeting*
   Title: _____
   Company: _____    *(Signature) Robert Sweeting 9/24/12 (Date)*
   Address and telephone number (if different from notice address above): _____

   Telephone number: _____    Email: _____

**RECEIVED**

OCT 1 6 2012

KURTZMAN CARSON CONSULTANTS

COURT USE ONLY

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

001KC0002 51765-4 domestic 20/028213/169274

**CIV-050**

*- DO NOT FILE WITH THE COURT-*
*-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| ROBERT SWEETING, PRO PER<br>7071 WARNER AVE.<br>BOX F 81<br>HUNTINGTON BEACH, CA. 92647 | 562-394-8218 | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ORANGE<br>CENTRAL JUSTICE CENTER<br><br>AUG 23 2012<br><br>ALAN CARLSON, Clerk of the Court |

ATTORNEY FOR *(name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 CIVIC CENTER DRIVE, WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA 92702
BRANCH NAME: CENTRAL

PLAINTIFF: ROBERT SWEETING
DEFENDANT: JASON KISHABA, ET AL

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>30-2008-00104237 |
|---|---|

To *(name of one defendant only):* GMAC MORTGAGE, LLC.
Plaintiff *(name of one plaintiff only):* ROBERT SWEETING
seeks damages in the above-entitled action, as follows:

**AMOUNT**

1. **General damages**
   a. [✓] Pain, suffering, and inconvenience ............................................... $ 2,000,000.00
   b. [✓] Emotional distress. ......................................................................... $ 2,000,000.00
   c. [✓] Loss of consortium ......................................................................... $ 500,000.00
   d. [ ] Loss of sociey and companionship *(wrongful death actions only)* .......... $
   e. [✓] Other *(specify)*  LOSS OF CREDIT RATING ................................... $ 1,500,000.00
   f. [✓] Other *(specify)*  LOSS OF BOSCH CONTRACT ............................... $ 3,000,000.00
   g. [ ] Continued on Attachment 1.g.

2. **Special damages**
   a. [ ] Medical expenses *(to date)* ........................................................... $
   b. [ ] Future medical expenses *(present value)* ...................................... $
   c. [✓] Loss of earnings *(to date)* ............................................................ $ 750,000.00
   d. [✓] Loss of future earning capacity *(present value)* ........................... $ 2,500,000.00
   e. [✓] Property damage ............................................................................ $ 3,584,000.00
   f. [ ] Funeral expenses *(wrongful death actions only)* ............................. $
   g. [ ] Future contributions *(present value) (wrongful death actions only)* ...... $
   h. [ ] Value of personal service, advice, or training *(wrongful death actions only)* ...... $
   i. [ ] Other *(specify)* ............................................................................. $
   j. [ ] Other *(specify)* ............................................................................. $
   k. [ ] Continued on Attachment 2.k.

3. [✓] **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ 79,170,000.00
   when pursuing a judgment in the suit filed against you.

Date: AUGUST 1, 2012

ROBERT SWEETING

(TYPE OR PRINT NAME)                                            *Robert Sweeting*
                                                                (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

CIV-050

| PLAINTIFF: ROBERT SWEETING | CASE NUMBER: |
|---|---|
| DEFENDANT: JASON KISHABA, ET AL | 30-2008-00104237 |

## PROOF OF SERVICE
*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. [✓] Statement of Damages   [ ] Other *(specify):*

   b. on *(name):* GMAC MORTGAGE, LLC.

   c. by serving [✓] defendant   [ ] other *(name and title or relationship to person served):*

   d. [✓] by delivery   [ ] at home   [ ] at business
      (1) date:
      (2) time:
      (3) address: 19100 VON KARMAN AVE. STE 700, IRVINE, CA.

   e. [ ] by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box):*
   a. [ ] **Personal service.** By personally delivering copies. (CCP § 415.10)
   b. [✓] **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. [ ] **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. [ ] **Mail and acknowledgment service.** By mailing (by first- class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**
   e. [ ] **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. [ ] Other *(specify code section):*
      [ ] additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $ ()
5. Person serving:
   a. [ ] California sheriff, marshal, or constable
   b. [ ] Registered California process server
   c. [ ] Employee or independent contractor of a registered California process server
   d. [✓] Not a registered California process server
   e. [ ] Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: JULY 27, 2012

▶ _____
(SIGNATURE)

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date: _____

▶ _____
(SIGNATURE)

**PROOF OF SERVICE**
**(Statement of Damages)**

1   Robert Sweeting, Pro Per
   16077 Crete Lane.
2   Huntington Beach, Ca. 92649
   Ph. 562-394-8218
3   Fax 714-846-8522

4

5   Plaintiff Robert Sweeting

6

7

8

9             SUPERIOR COURT OF THE STATE OF CALIFORNIA

10      FOR THE COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

| | |
|---|---|
| ROBERT SWEETING, | CASE No.: 30-2008-104237 |
| *Plaintiff,* | VERIFIED SECOND AMENDED COMPLAINT FOR: |
| vs. | |
| JASON KISHABA, an individual; SANDRA JAQUEZ, an individual, PETER SAUERACKER, an individual; INTERNATIONAL MORTGATGE, Inc.' CAITLIN CHEN, an individual; FREEMONT INVESTMENT AND LOAN, INC.; GMAC MORTGAGE LLC.; all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto and DOES 1 through 25, inclusive, | 1.  FOR NEGLIGENCE<br>2.  COMMON COUNTS<br>3.  BREACH OF FIDUCIARY DUTY<br>4.  MISREPRESENTATION<br>5.  FOR REFORMATION OF CONTRACT<br>6.  BREACH OF CONTRACT<br>7.  BREACH OF CONTRACT<br>8.  DECEIT<br>9.  CANCELLATION OF WRITTEN INSTRUMENT<br>10. WRONGFUL FORECLOSURE<br>11. QUIET TITLE<br>12. BUSINESS AND PROFESSIONS CODE §17200<br>13. VIOLATION OF TRUTH AND LENDING ACT, 15 U.S.C. § 1601 ET SEQ., AND FEDERAL RESERVE REGULATION Z 12 C.F.R. § 226 ET SEQ. |
| *Defendants.* | 14. DEFAMATION AND TORTIOUS INTERFERENCE WITH CREDIT<br>15. ACCOUNTING<br><br>Assigned for All Purposes to DEPT.: C25, the Hon Randell Wilkenson presiding |

SECOND AMENDED COMPLAINT                          Page 1

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.    Defendant, JASON KISHABA, (hereinafter alternatively "Defendant /KISHABA") is an individual residing in Orange County, California.

2.    Defendant, SANDRA JAQUEZ, (hereinafter alternatively "Defendant/JAQUEZ") is an individual residing in Orange County,

3.    Defendant, PETER SAUERACKER, (hereinafter alternatively "Defendant/SAUERACKER") is an individual residing in Orange County, California.

4.    Defendant, INTERNATIONAL MORTGAGE, INC. (hereinafter alternatively "Defendant/INTERNATIONAL") is a business entity, form unknown, conducting business within the County of Orange, State of California.

5.    Defendant INTERNATIONAL ESCROW is a business entity, form unknown, conducting business within the County of Orange, State of California.

6.    Defendant ANTHONY HAWORTH, is sued individually and as owner and/or principal of International Escrow and International Mortgage. His principal place of business is in the County of Orange.

7.    Defendant, CAITLIN CHEN, (hereinafter alternatively "Defendant/CHEN") is an individual residing in Orange County, California.

8.    Defendant, FREMONT INVESTMENT AND LOAN, INC. (hereinafter alternatively "Defendant/FREMONT") is a business entity, form unknown, conducting business within the County of Orange, State of California.

9.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS") at all times relevant was a Delaware Corporation. Based on information and belief, MERS is currently a suspended from doing business in California. MERS transacts business in California and at all relevant times promoted, distributed, and/or purchased mortgage loans, an example of which is the subject of this Complaint throughout the United States, including Huntington Beach, California. The Note provides in part,

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and

SECOND AMENDED COMPLAINT                                                                        Page 2

1    Lender's successors and assigns.  MERS is the beneficiary under this

2    Security Instrument."

3    The use of MERS obfuscates the chain of title, securitizing loans and hiding the true

4    owner of said notes.  Plaintiff contends that MERS is unlawful and deprives the County

5    of tax revenue and is used for the purpose of facilitating foreclosures by hiding the

6    ownership of property from the chain of title.

7  10.  Defendant, GMAC MORTGAGE LLC, (hereinafter alternatively "Defendant/GMAC") is

8    a business entity, form unknown, conducting business within the County of Orange, State

9    of California.

10 11.  Defendant TCIF REO GCM California, LLC (hereinafter referred to as "Truman

11   Capital" or "Truman") is a Delaware Corporation with its principal place of business in

12   Armonk, NY.

13 12.  Defendant Island Source II LLC is a Delaware Limited Liability

14   Company with its principal place of business unknown.

15 13.  Defendant CHICAGO TITLE INSURANCE COMPANY is a California corporation with

16   its principal place of business in Santa Ana, County of Orange, State of California.

17 14.  Defendant G and Z Appraisers is a business entity of unknown form which

18   conducts business in the County of Orange, State of California.

19 15.  Nazeh Muayadazem is a licensed real estate broker whose principal place of business is

20   in the County of Orange, State of California.  He was a real estate appraiser and owner of

21   G & Z Realty and G & Z Appraisers.

22 16.  Plaintiff is informed, believes, and thereon alleges that INTERNATIONAL consisted of a

23   mortgage brokerage and an escrow company that unlawfully secured the plaintiff's

24   refinance loan and escrow related to the loan.

25 17.  Plaintiff is informed and believes, and thereon alleges that SAUERACKER was an

26   employee of INTERNATIONAL who was responsible for plaintiff's refinance loan.

27 18.  Plaintiff is informed, believes, and thereon alleges that FREMONT was the lender on his

28   refinance loan transaction.

---

SECOND AMENDED COMPLAINT                                          Page 3

19.     Plaintiff is informed, believes, and thereon alleges that JAQUEZ was an employee of INTERNATIONAL who was responsible for plaintiff's escrow.

20.     Plaintiff is informed, believes, and thereon alleges that CHEN was the broker of record for INTERNATIONAL during the pendency of plaintiff's refinance loan and escrow.

21.     Plaintiff is informed, believes, and thereon alleges, that at all times relevant hereto, defendants, and each of them, were agents, servants, and employees of each of the remaining co-defendants, and in doing the things herein alleged, were acting within the purpose and scope of such agency, service and employment, with the permission, consent, and knowledge of each of the remaining co-defendants.

22.     The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff.s title, or any cloud on plaintiff's title thereto" (hereinafter "UNKNOWN DEFENDANTS") are unknown to plaintiff. These UNKNOWN DEFENDANTS, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to plaintiff's title and their claims, and each of them, constitute a cloud on plaintiff's title to that property.

23.     Plaintiff is ignorant of the true names and capacity of defendants sued in this complaint as DOES 1 through 25, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff will amend this complaint once the true names and capacities are ascertained. The Plaintiff is informed, believes, and' thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that the plaintiff's damages as herein alleged were proximately caused by their conduct. Plaintiff is informed, believes, and thereon alleges that each of these fictitiously named defendants claim some right, title, estate, lien or interest in the hereinafter-described property adverse to plaintiff's title, and their claims, and each of them, constitute a cloud on plaintiff's title to that property.

24.     At all times relevant hereto, the defendants CHICAGO TITLE COMPANY, KISHABA, SANDRA JAQUEZ, PETER SAUERACKER, INTERNATIONAL MORTGAGE, INC.,

SECOND AMENDED COMPLAINT                               Page 4

1    INTERNATIONAL ESCROW, ANTHONY HAWORTH, CAITLIN CHEN, FREMONT

2    INVESTMENT AND LOAN, INC. GMAC MORTGAGE LLC, TCIF REO GCM

3    California, LLC, Island Source II LLC, Nazeh Muayadazem, and G and Z Appraisers and

4    Does 1 to 25 acting alone or as agents, or as employees, affiliates, or "nominees", or in

5    concert with one another or other defendants, in the ordinary course Of their business,

6    regularly extend or offered to extend consumer credit, for which a finance charge is

7    imposed or which, by written agreement, is payable in more than four installments and is

8    the person to whom the transaction which is the subject of this, action is initially payable,

9    making defendants a creditor within the meaning of TILA, 15 U.S.C. §1602(f) and

10    Regulation Z § 226.2(a)(17) or an assignee within the meaning of 15 U.S.C. §1641.

11    25.    The real property that is the subject matter of this litigation is plaintiff's home of over

12    twenty-two (22) years and is located at 16077 Crete Lane, Huntington Beach, California

13    92649 and legally described as follows:

14    PARCEL 1

15    LOT 30 OF TRACT NO. 9924, IN THE CITY OF HUNTINGTON BEACH, COUNTY

16    OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 431

17    PAGES 22 AND 23 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE

18    COUNTY RECORDER OF SAID COUNTY.

19    PARCEL 2

20    AN EASEMENT FOR USE AND ENJOYMENT OF THE COMMON AREA, BEING

21    LOT 46 OF SAID TRACT NO. 9924, REFERRED TO IN PARCEL 1 ABOVE, AS SET

22    FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND

23    RESTRICTIONS RECORDED IN BOOK 12914 PAGE 929, ET SEQ., OF OFFICIAL

24    RECORDS OF ORANGE COUNTY,' CALIFORNIA.

25    APN# 178-741-30

26    (hereinafter "SUBJECT PROPERTY").

27    26.    Defendant GMAC, as "nominee for the lender" or any other person or entity held and/or

28    holds a security interest in the plaintiff's home located at 16077 Crete Lane, Huntington

SECOND AMENDED COMPLAINT                                                                    Page 5

1      Beach, California 92649.

2    27.    On or about May 2006, plaintiff began discussing refinancing the SUBJECT PROPERTY

3           with one of his business clients, Mr. Robbie De Capua, who works for Ramsey Group

4           Financial Services.

5    28.    Mr. De Capua was unable to complete a refinance of the subject property, but brought in

6           plaintiff KISHABA as a partner who worked for M&M and Associates Mortgage Brokers

7           to complete the loan.

8    29.    Mr. De Capua and KISHABA promised plaintiff to refinance the SUBJECT PROPERTY

9           at a fixed annual percentage rate of 7.5%, with a one-half point broker fee, a one-year

10          prepayment penalty, and one hundred five thousand dollars ($105,000) cash out.

11   30.    Beginning approximately in June 2006, KISHABA would promise plaintiff that the

12          refinance of the SUBJECT PROPERTY was going to be completed that week, but he

13          would come up with an excuse for the failure to close and promise that it would close any

14          day.

15   31.    Based on KISHABA'S representations that the loan would close any day plaintiff stopped

16          making his regular mortgage payments.

17   32.    In or about November 2006, KISHABA. informed plaintiff that KISHABA had changed

18          employer and that he now worked for INTERNATIONAL.  KISHABA also informed

19          plaintiff that he would place the refinance of the SUBJECT PROPERTY with

20          INTERNATIONAL as the mortgage broker.

21   33.    Throughout the time that plaintiff dealt with KISHABA, regarding the refinance of the

22          SUBJECT PROPERTY, KISHABA continually provided plaintiff documents that

23          contradicted the terms promised by KISHABA.

24   34.    In fact, KISHABA had three separate loan document signings for plaintiff which occurred

25          on or about the beginning of November 2006, December 5, 2006, and December 8, 2006.

26   35.    In early November 2006, plaintiff was in Akron, Ohio. KISHABA sent a notary public to

27          plaintiff with loan documents to sign. At this point, plaintiff was placed in a severe

28          financial bind by KISHABA'S prior representations that the loan would close any day.

SECOND AMENDED COMPLAINT                                                      Page 6

1    When plaintiff looked over the documents that the notary brought, he noticed that the

2    terms were not what KISHABA had promised and that there was a two-year prepayment

3    penalty instead of the one-year prepayment penalty promised.

4    36.    Plaintiff called KISHABA who said to just sign the documents for the notary and that

5    KISHABA would fix the problems later. Plaintiff interlineated certain pages wherein he

6    thought the terms were not as promised and simply unacceptable. Plaintiff handed the

7    documents to the notary.

8    37.    On or about December 5 2006, KISHABA sent another notary to plaintiff's business.

9    Again, the documents included hidden terms that were contrary to KISHABA'S promised

10    terms including a two-year prepayment penalty.  Plaintiff refused to sign the page

11    containing a two-year prepayment penalty, but signed the remaining pages.

12    38.    On or about November 22, 2006, FREMONT sent plaintiff a letter and good faith

13    estimate indicating an interest rate of 9.8% and broker fees of $24,155. (First page

14    [Second page missing] of FREMONT Letter and Good Faith Estimate are attached hereto

15    as "Exhibit A" and incorporated by reference.)

16    39.    On or about November 30, 2006, INTERNATIONAL created a Borrower's Estimated

17    Closing Costs document that indicated plaintiff was to receive $69,192.29 cash out on the

18    refinance. (Borrower's Estimated Closing Costs drafted by INTERNATIONAL and dated

19    November 30, 2006 is attached hereto as "Exhibit B" and incorporated by reference.)

20    40.    On or about December 5, 2006, INTERNATIONAL created another Borrower's

21    Estimated Closing Costs document that indicated plaintiff was to receive $65,605.36 cash

22    out on the refinance.  (Borrower's Estimated Closing Costs drafted by

23    INTERNATIONAL and dated December 5, 2006 [First page shows letterhead that is cut

24    off of second page] is attached hereto as "Exhibit C" and incorporated by reference.)

25    41.    On or about December 8, 2006, KISHABA came to plaintiff's home with a notary to sign

26    documents.  At this point, KISHABA informed plaintiff that because of plaintiff's bad

27    credit, which was directly related to the extended loan process and KISHABA'S promises

28    that the loan was closing "any day," plaintiff would only receive $65,000 cash out.

SECOND AMENDED COMPLAINT                    Page 7

42. Also on or about December 8, 2006, KISHABA had plaintiff sign a Form 1003 Uniform Residential Loan Application. (Form 1003 Application Dated December 8, 2006 is attached hereto as "Exhibit D" and incorporated by reference.)

43. Plaintiff also signed the Deed of Trust securing the loan with the SUBJECT PROPERTY on December 8, 2006, which necessarily precluded the required loan disclosures by defendants.

44. On or about December 8, 2006, KISHABA promised plaintiff that the February mortgage payment would be paid by INTERNATIONAL from the loan proceeds. (See Amended Escrow Instructions dated December 20, 2006 attached hereto as "Exhibit E" and incorporated by reference.)

45. Due to his reliance on KISHABA'S promise of a loan closing "any day" beginning in June 2006, plaintiff accumulated significant penalties, late fees, and suffered substantial damage to his credit.

46. Because of the financial condition that KISHABA placed plaintiff in, plaintiff signed the loan documents on December 8, 2006, but did not see or sign any document indicating that a two-year prepayment penalty would apply.

47. Each time that plaintiff signed documents KISHABA failed to give a copy to plaintiff despite plaintiff's request for copies, but promised that plaintiff would receive copies by mail.

48. At no time during any of the document signings did plaintiff receive any documents regarding the loan. Further, plaintiff received no proper documentation regarding the mandatory disclosures required by the Federal Truth and Lending law including a three-day right to rescind this transaction.

49. Plaintiff eventually received blank notices of right to cancel; however, there was no date indicating when the right to cancel accrued of the time within which to rescind.

50. Plaintiff is informed, believes, and thereon alleges that KISHABA used document's from all three document signings to complete the final loan submission package.

51. KISHABA mislead, lied, and lead a campaign of confusion and ever altered annual

SECOND AMENDED COMPLAINT                                                                Page 8

1    percentage rates, broker points, fees, and prepayment penalties.

2    52.    On or about December 20, 2006, JAQUEZ on behalf of INTERNATIONAL, sent

3    plaintiff a document indicating that the escrow was closed as of December 20, 2006, and

4    that also indicates plaintiff would be receiving a wire transfer in the amount of

5    $25,128.44. (See Letter dated December 20, 2006 attached hereto as "Exhibit F" and

6    incorporated by reference.)

7    53.    On or about December 20, 2006, FREMONT recorded a Deed of Trust dated December

8    8, 2006 securing a loan against the SUBJECT PROPERTY in the amount of $773,500.

9    (See Deed of Trust recorded December 20, 2006 attached hereto as "Exhibit G" and

10    incorporated by reference.)

11    54.    On or about January 1, 2007, INTERNATIONAL faxed a HUD-1 Statement indicating

12    that plaintiff's cash out would be $67,906.85. (See HUD-1 faxed January 4, 2007 attached

13    hereto as "Exhibit H" and incorporated by reference.)

14    55.    Despite the multiple promises and various amounts of cash out listed, plaintiff never

15    received any documentation or information that he would receive less than $65,605.36

16    cash from the refinance transaction.

17    56.    However, INTERNATIONAL sent only one wire to plaintiff in the amount of

18    $25,128.44. Plaintiff did not receive any other payment from INTERNATIONAL or

19    anyone in relation to the refinance.

20    57.    Thus, plaintiff's cash had gone down from the original $105,000 promised by KISHABA

21    to $65,605.36 listed in loan and HUD-1 statements to actually receiving $25,128.44.

22    58.    Plaintiff called INTERNATIONAL to determine when he was going to receive the

23    remaining $40,476.92. INTERNATIONAL employees refused to tell plaintiff what

24    happened to the remaining funds or how they had applied those funds.

25    INTERNATIONAL further refused to provide plaintiff with any further documents,

26    deeds, notes, loan disclosures, escrow documents, or HUD-1 Statements.

27    59.    KISHABA was not properly licensed in relation to the loan transaction. KISHABA is not

28    licensed as a real estate agent. INTERNATIONAL MORTGAGE and its sister company,

SECOND AMENDED COMPLAINT                                                      Page 9

INTERNATIONAL ESCROW, were both suspended a month before the loan funded. On or before November 20, 2006, before consummation of the loan, International Mortgage's and International Escrow's licenses were suspended because they failed to maintain the required surety bond. At Paragraph 11 of Order Revoking Escrow Agent's License, it indicates that on October 12, 2007, the State of California Department of Corporations revoked International Mortgage Company's finance lender's license pursuant to Fin. C. § 22107 effective November 6, 2007. International had "commingled trust funds ... or otherwise made unauthorized disbursements of trust funds ... had a trust account shortage ... and had failed to maintain and/or provide books and records to the Commission..."

60.  Kishaba, International Mortgage and International Escrow then proceeded to rip off Plaintiff for points up front and loan proceeds on the back side.

61.  Plaintiff is informed and believes, and thereon alleges, that INTERNATIONAL, JAQUEZ, SAUERACKER, CHEN, KISHABA, and HAWORTH acted as an unlicensed mortgage broker.

62.  In or about March 2007, FREMONT contacted plaintiff to inform him that the February 2007 payment was not paid, which KISHABA had promised that INTERNATIONAL would pay from loan proceeds. (See Exhibit E.)

63.  According to FREMONT, no payment was made for the loan payment due on February 1, 2007.

64.  Plaintiff requested that FREMONT assist in discovering the status of the missing $40,476.92 and the missing February 1, 2007 payment. Fremont made no effort to assist.

65.  INTERNATIONAL, KISHABA, CHEN, JAQUEZ, and SAUERACKER refused to communicate with plaintiff or offer any explanations or solutions as to the missing payment or funds.

66.  Plaintiff made payments of over $17,000 to FREMONT; however, FREMONT failed to properly apply and credit the payments.

67.  On July 30, 2007, FREMONT sold and/or transferred its interest in receiving the benefits

SECOND AMENDED COMPLAINT                                                    Page 10

of the Note secured by the property. Because MERS is the nominal title holder, Plaintiff is unaware of the entity which was entitled to receive the benefits of the Note. Based on information and belief, Fremont sold the right to receive the benefits of the subject Note to GMAC or TCIF. (See letter from FREMONT dated July 30, 2007 attached hereto as "Exhibit I" and incorporated by reference.)

68. Plaintiff expected that he would receive a payment booklet from GMAC 'and waited to begin making the payments until he received the payment booklet.

69. Due to the actions of defendants in relation to the funds that were never given to plaintiff and FREMONT'S misapplication of plaintiff's payments, plaintiff was substantially behind in payments by August 2008.

70. Plaintiff attempted on several occasions to have GMAC investigate the missing funds, misapplied payments, and to work out forbearance plans.

71. GMAC failed to properly account for and apply funds plaintiff paid to FREMONT.

72. GMAC failed to properly account for and apply funds plaintiff paid to GMAC.

73. On or about October 23, 2007, GMAC sent plaintiff a Notice of Default and caused the same to be recorded with the Orange County Recorder's Office. (See Notice of Default dated October 23, 2007 attached hereto as "Exhibit J" and incorporated by reference.)

74. GMAC accepted over $3,500.00 in relation to one forbearance plan, but then rejected the forbearance agreement.

75. In two other instances, GMAC returned payments by the plaintiff in the approximate amounts of $3,000 and $7,500.

76. On or about February 26, 2008, GMAC sent plaintiff Notice of Trustee's Sale with the sale to take place on March 26, 2008. (See Notice of Trustee's Sale Dated February 26, 2008 attached hereto as "Exhibit K" and incorporated by reference.)

77. On or about September 22, 2008, GMAC caused the property to be sold at a foreclosure sale. Title was placed in GMAC's name. After the property was sold at foreclosure auction, GMAC was the legal title holder. GMAC twice brought unlawful detainer actions against Plaintiff claiming to be the owner of the property.

---

SECOND AMENDED COMPLAINT                                                              Page 11

78. GMAC failed to properly calculate sums due by plaintiff in relation to the foreclosure of the Trust Deed, by failing to properly apply payments plaintiff made to FREMONT and to GMAC.

79. Plaintiff contends that Defendant Fremont made the subject loan with the intent to foreclose and steal Plaintiff's equity. On March 8, 2007, the FDIC ordered Fremont to cease and desist its sub-prime lending.

80. On or about March 20, 2009, GMAC transferred title to the property to Truman Capital.

81. On May 15, 2009, Truman Capital transferred title to to Island Source II via a grant deed.

FIRST CAUSE OF ACTION
FOR NEGLIGENCE
AS AGAINST FREMONT and CHICAGO TITLE

82. Plaintiff reallegs and incorporates paragraphs 1 through 81 as though fully set forth.

83. Plaintiff alleges this first separate and distinct cause of action for negligence as against Fremont, Chicago Title and Does 1 to 25.

84. Defendants Fremont, Chicago Title and Does 1 to 25 had a duty to deliver the proceeds of the subject Note secured by Deed of Trust to Plaintiff. This required that the Note/loan proceeds be delivered to a licensed escrow company.

85. Fremont and Chicago Title breached their duty to Plaintiff by failing to ascertain that International Escrow, International Mortgage and their employees were not licensed.

86. As set forth below, the INTERNATIONAL defendants stole a substantial portion of the proceeds of the Note and failed to transfer to Fremont the first month's payment which was held in escrow. Because International and its employees were not licensed, they were not entitled to any commissions, points, premiums or other proceeds from the subject Note.

87. As a direct and proximate result of the breach of duty by Defendants Fremont and Chicago Title, Plaintiff only a small portion of the anticipated cash out of the loan and the prior loan on the property was paid off with a higher interest rate note, as well as the loss of use of said cash out to "prime the pump" of his business which was in need of capital

SECOND AMENDED COMPLAINT                                                    Page 12

1    and to make needed repairs to his home.

2

3                        SECOND CAUSE OF ACTION
                           FOR COMMON COUNTS
4    AS AGAINST FREMONT, CHICAGO TITLE, KISHABA, JAQUEZ, SAUERACKER,
         INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW,
5                          HAWORTH, and CHEN

6    88.   Plaintiff reallegs and incorporates paragraphs 1 through 87 as though fully set forth.

7    89.   Plaintiff alleges this first separate and distinct cause of action for negligence as against

8          Fremont, Chicago Title, KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL

9          MORTGAGE, INC. INTERNATIONAL ESCROW, HAWORTH, and CHEN and Does

10         1 to 25.

11   90.   Plaintiff alleges that Defendants Fremont, Chicago Title, KISHABA, JAQUEZ,

12         SAUERACKER, INTERNATIONAL MORTGAGE, INC. INTERNATIONAL

13         ESCROW, HAWORTH, and CHEN, and each of them, became indebted to Plaintiff for

14         money had and received by Defendants, and each of them, for the benefit of Plaintiff in

15         the amount of $773,500.

16   91.   The reasonable value due and unpaid to Plaintiff is estimated to be $173,500 plus

17         prejudgment interest in an amount subject to proof.

18   92.   Plaintiff is entitled to attorneys fees and costs pursuant to _____.

19                        THIRD CAUSE OF ACTION
                          BREACH OF FIDUCIARY DUTY
20      (Against JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER,
     INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, ANTHONY
21                     HAWORTH, CAITLIN CHEN)

22   93.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 92, above, as

23         though fully set forth herein at length.

24   94.   Defendants owed a duty to plaintiff to act in accordance with statutory procedures for .

25         GMAC had a further duty to follow legal process for Notice of a Trustee's Sale.

26   95.   Defendants KISHABA, JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL

27         further breached their duties to plaintiff in failing to give plaintiff required disclosures

28         and failing to properly advise the plaintiff as to the terms and conditions of the loan

SECOND AMENDED COMPLAINT                                                      Page 13

1    transaction.

2    96.    Defendant's JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL had a duty to

3    plaintiff to ensure that all persons dealing with plaintiffs loan were properly licensed,

4    which they breached.

5    97.    Defendants JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL breached its

6    duty to plaintiff as his Escrow Agent by accepting, depositing, and retaining over $40,000

7    in funds belonging to the plaintiff without written instructions signed by the plaintiff.

8    98.    Defendants JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL breached its

9    duty to plaintiff as by failing and refusing to account for funds, communicate with.,

10    plaintiff, and provide documents as requested.

11    99.    As a direct and proximate result of defendants' breach of duties, plaintiff has suffered

12    damages in amounts exceeding the jurisdictional limits of this court and, which will be

13    proven at the time of trial.

14                      FOURTH CAUSE OF ACTION
                         MISREPRESENTATION
15    (Against JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER,
     INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, ANTHONY
16    HAWORTH, CAITLIN CHEN, G AND Z APPRAISERS, NAZEH MUAYADAZEM)

17    100.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 99, above, as

18    though fully set forth herein at length.

19    101.    Beginning in June 2006 KISHABA misrepresented the terms and conditions on the

20    plaintiff's loan, as more fully alleged above.  KISHABA further misrepresented his

21    employment status and ability to legally act as a mortgage broker with

22    INTERNATIONAL through CHEN'S license.

23    102.    INTERNATIONAL, JAQUEZ, SAUERACKER, and KISHABA further misrepresented

24    on multiple occasions, the amount of cash that plaintiff would receive from the refinance.

25    They further misrepresented that the increased fees and points were required by Fremont

26    rather than to line their own pockets.

27    103.    Further, INTERNATIONAL MORTGAGE, CHEN, KISHABA, HAWORTH, JAQUEZ

28    and SAUERACKER misrepresented that they were licensed to arrange the loan when

SECOND AMENDED COMPLAINT                                    Page 14

1  their license had in fact been suspended.

2  104.  On September 23, 2006, G AND Z APPRAISERS, NAZEH MUAYADAZEM performed

3  an appraisal of the subject real property and knowingly overstated the value of the subject

4  property so as to induce Plaintiff to enter into the Note secured by Deed of Trust. The

5  value stated in the appraisal was $983,000.00, while the true value was $683,000.00.

6  Defendants INTERNATIONAL MORTGAGE, CHEN, KISHABA, HAWORTH,

7  JAQUEZ and SAUERACKER induced G & Z and Muayadazen to misrepresent the value

8  of the property, and approved and ratified such misrepresentation knowing the falsity

9  thereof so as to induce Plaintiff to enter into the Note secured by Deed of Trust.  Based on

10  information and belief, Fremont knew the value of the property was overstated, knew it

11  was going to be shut-down by the federal government, and made the loan with the intent

12  to defraud Plaintiff.

13  105.  Plaintiff is informed believes and based thereon alleges that when defendants made the

14  representation as alleged herein, defendants had no reasonable ground for believing them

15  to be true.  Defendants made these representations with the intention of inducing plaintiff

16  to act in reliance on these representations in the manner alleged,' or with the exception

17  that plaintiff would so act.

18  106.  Plaintiff, at the time these representations were made by defendants and at the time the

19  plaintiff took the actions herein alleged, was ignorant of the falsity of defendants'

20  representations and believed them to be true.

21  107.  In reliance on the above-alleged false representations, plaintiff was induced to continue

22  with the refinance, forgo other refinance options, and incur substantial penalties and fees

23  on his existing mortgage.

24  108.  Plaintiff would not have refinanced the SUBJECT PROPERTY with defendants if not for

25  the above-alleged false representations by defendants.

26  109.  Plaintiff's reliance on defendants' representations were justified because defendants were

27  mortgage, escrow, and real estate professionals.

28  110.  As a proximate result of defendants' negligence as herein alleged, plaintiff has been

SECOND AMENDED COMPLAINT                                                    Page 15

1    damaged in an amount to be determined at trial.

2    111.    In doing the' acts herein alleged above, defendants acted with oppression, fraud and

3    malice, and plaintiffs are entitled to exemplary and punitive damages.

4    112.    Plaintiff seeks compensation for costs of suit herein incurred, including but not limited to

5    attorney's fees.

6    FIFTH CAUSE OF ACTION
FOR REFORMATION OF CONTRACT
7    (AS AGAINST FREMONT and MERS, GMAC, TCIF, ISLAND SOURCE
as SUCCESSORS IN INTEREST TO FREMONT)

8
9    113.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 110 as though fully

10    set forth herein at length.

11    114.    Plaintiff contends that INTERNATIONAL MORTGAGE, INTERNATIONAL

12    ESCROW, and their agents and employees were unlicensed to act as mortgage brokers at

13    all times relevant.

14    115.    Plaintiff contends that the loan is usurious in that it exceeds the maximum interest rate

15    that may be charged on loans in writing for use primarily for personal, family, or

16    household purposes.  Because International, which arranged the Note secured by Deed of

17    Trust, was not licensed to do so, said Note secured by Deed of Trust was not exempted

18    from the interest rate limitations on loans, made, or arranged by any person licensed as a

19    real estate broker by the State of California and secured in whole or in part by liens on

20    real property.

21    116.    As such, the interest rate, which is illegal, should be stricken from the Note secured by

22    Deed of Trust, and the Note secured by Deed of Trust should be rewritten so that all

23    payments made should go directly towards the principal of the loan.

24    117.    Further, because at all times relevant, International Escrow was not a licensed California

25    Escrow company and International Mortgage was not a licensed Mortgage Broker at any

26    time relevant to the within action, all monies delivered to them and neither delivered to

27    Plaintiff nor expended to pay Plaintiff's prior home loan should be considered payments

28    towards the principal on the Note Secured by Deed of Trust.

SECOND AMENDED COMPLAINT    Page 16

SIXTH CAUSE OF ACTION
BREACH OF CONTRACT
(Against Defendants FREMONT, MERS, GMAC, TCIF, ISLAND SOURCE and DOES 1-25)

118.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 115, above, as though fully set forth herein at length.

119.  Plaintiff pleads this third separate and distinct cause of action as against FREMONT, MERS, GMAC, TCIF, ISLAND SOURCE and DOES 1 - 25.

120.  Plaintiff and FREMONT entered into written contracts, namely the a promissory Note, and Deed of Trust, regarding refinancing the SUBJECT PROPERTY. (See Exhibit G.)

121.  As part of the eventual contract, FREMONT was to loan to plaintiff the sum of $773,500 with at least $65,605.36 in cash directly to the plaintiff.  Because INTERNATIONAL and its employees and agents were unlicensed, all of the proceeds of the loan, less monies used to pay off the prior loan secured by the property, should have been delivered to Plaintiff.

122.  FREMONT caused only $25,128.44 to be delivered to Plaintiff and breached the contract by failing to deliver over $40,476.92 in funds to the plaintiff, INSTEAD delivering the funds to INTERNATIONAL MORTGAGE and INTERNATIONAL ESCROW, both of which were unlicensed.  INTERNATIONAL stole the proceeds and took substantial points and fees to which it was not entitled.  As such, there has been no effective delivery of some or all of the proceeds of the Note to Plaintiff.

123.  FREMONT further breached the contract by attempting to collect payments on the $40,476.92 that was never delivered to the plaintiff.

124.  An additional $85,000 was unlawfully delivered to INTERNATIONAL, which funds it was not entitled to and which funds were not delivered to Plaintiff.

125.  As FREMONT'S successors in interest or nominal trustees of the Note secured by Deed of Trust, MERS, GMAC, TCIF, and ISLAND SOURCE, stand in FREMONT'S shoes and are responsible for all past misdeeds of FREMONT and/or are subject to any defenses Plaintiff may have to enforcement of the subject Note secured by Deed of Trust.

126.  GMAC, TCIF, MERS and ISLAND SOURCE, through the purchase of the Note and

SECOND AMENDED COMPLAINT                                                    Page 17

1   Deed of Trust secured by the SUBJECT PROPERTY, are also are parties to those

2   contracts with plaintiff.

3   127.   FREMONT and GMAC breached the written contract by failing to properly account for

4   funds due to plaintiff, attempting to collect on debts secured by fraud, failing to properly

5   post payments by plaintiff to both FREMONT and GMAC, and by wrongfully foreclosing

6   on the Trust Deed.

7   <center>SEVENTH CAUSE OF ACTION<br>BREACH OF CONTRACT</center>

8   <center>(Against Defendants KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL<br>MORTGAGE, INC., INTERNATIONAL ESCROW, ANTHONY HAWORTH, and CAITLIN</center>

9   <center>CHEN)</center>

10   128.   Plaintiff repeats and realleges the allegations of paragraphs 1 through 125, above, as

11   though fully set forth herein at length.

12   129.   INTERNATIONAL also had mortgage broker and a written escrow contract with

13   plaintiff.

14   130.   INTERNATIONAL breached the mortgage broker contract through misrepresentations,

15   bait and switch, and failing to complete the refinance on the promised term.

16   INTERNATIONAL also breached the mortgage broker contract by being prohibited from

17   acting as a mortgage broker and escrow agent at all times relevant.

18   131.   For example, INTERNATIONAL through its agent KISHABA initially promised to

19   charge only one half broker point, which would have culminated in a broker fee of

20   $3,867.50. INTERNATIONAL ended up charging over 3.128 points culminating in a

21   $24,195.08 broker fee. On top of that, INTERNATIONAL ended up getting a substantial

22   Yield Spread Premium, which it failed to properly disclose to plaintiff.  Further, the

23   INTERNATIONAL defendants stole and failed to deliver to Plaintiff approximately

24   $110,000 in proceeds of the Note secured by Deed of Trust, through unearned fees,

25   points, yield spread premiums and theft.

26   132.   Plaintiff has performed all conditions, covenants and promises required on his part to be

27   performed in accordance with the terms and conditions of the contract or his performance

28   is excused by the material breaches of defendants.

133.  On or about March 2007 and thereafter, Plaintiff discovered that defendants were not performing their obligations pursuant to the written contracts.

134.  Plaintiff has suffered damages in an amount to be proven at trial.

135.  Plaintiff seeks compensation for costs of suit herein incurred, including but not limited to attorneys fees.

<div align="center">

EIGHTH CAUSE OF ACTION
DECEIT
(Against INTERNATIONAL ESCROW, INTERNATIONAL MORTGAGE, JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER, CAITLIN CHEN, ANTHONY HAWORTH)

</div>

136.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 134, above, as though fully set forth herein at length.

137.  Plaintiff is informed, believes, and thereon alleges that KISHABA took documents from the three different document signings to create one fraudulent loan documentation package.

138.  Plaintiff is informed, believes, and thereon alleges that KISHABA'S creation of one loan documentation package with documents signed on three different occasions with different terms amounts to forgery.

139.  At the time defendants made the above alleged statements, defendants, and each of them, knew that the representations and documents were false.

140.  Defendants have unlawfully used the falsified documents and fraudulent conduct in attempting to conduct a trustee's sale and obtain a non-judicial foreclosure and unlawful detainer action.

141.  As a direct and proximate result of the reliance upon the truth of defendants' representations, Plaintiff has suffered damages in an amount unknown at this time but within the jurisdiction of this court. In addition to the funds already paid, .plaintiff will be required to expend substantial additional funds to set aside the events derivative of defendants' conduct. Plaintiff does not know the full extent of such expenditures and other consequential damages at the present time, but will seek leave of court to amend this pleading when that amount has been ascertained.

---

SECOND AMENDED COMPLAINT                                              Page 19

142.  Defendants' conduct in making these intentional misrepresentations was done with oppression, fraud or malice, in that defendants willfully, consciously and despicably disregarded Plaintiffs' rights. Plaintiff is therefore entitled to punitive damages in an amount to. be determined at trial.

### NINTH CAUSE OF ACTION
### CANCELLATION OF WRITTEN INSTRUMENT
(Against Fremont, GMAC, TCIF, Island Source)

143.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 141, above, as though fully set forth herein at length.

144.  This ninth separate and distinct cause of action for cancellation of written instrument is pleaded as against Fremont, and GMAC, TCIF and Island Source as successors in interest or assigns of the Note secured by Deed of Trust entered into between Plaintiff and Defendant Fremont. It is pleaded as an alternative to the fifth cause of action for reformation of contract, and is in no way intended to vitiate the allegations therein. Plaintiff will choose his remedy at time of trial.

145.  There is an existence a certain written instrument dated December 20, 2006, which is the disputed trust deed (Exhibit "G") between plaintiff and defendant FREMONT.

146.  The Trust Deed (Exhibit "G") was procured through defendants' fraud, misrepresentations, and fraudulent compilation of documents, as described hereinabove. If the disputed trust deed is left outstanding, Plaintiff will be subjected to serious and substantial injury in that the fraudulently procured document eliminating all of plaintiff's interest in the subject property.

147.  Plaintiff offers by this Complaint to return any property delivered to him from the proceeds of this action.

148.  The fraudulent conduct of defendants herein was oppressive and despicable and subjected Plaintiff to cruel and unjust hardships in conscious disregard of Plaintiff's rights, and therefore Plaintiff seeks exemplary and punitive damages.

### TENTH CAUSE OF ACTION
### FOR WRONGFUL FORECLOSURE
(AS AGAINST FREMONT, GMAC, TCIF, ISLAND SOURCE and Does 1 to 25)

---

SECOND AMENDED COMPLAINT                                    Page 20

1    149.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 148 above as

2            though fully set forth herein at length.

3    150.    Based on the foregoing frauds, failure of Defendant Fremont to deliver monies under the

4            subject Note secured by Deed of Trust, improper accounting by Fremont and GMAC, and

5            illegal and usurious interest rate and unlawful/illegal fees and points, Plaintiff contends

6            that at the time of the foreclosure sale, he was current on payments.  He further contends

7            that the forbearance agreement between Plaintiff and GMAC was without consideration.

8            Plaintiff further contends that after striking the interest, he had paid nearly 8 years of

9            payments at the time of the wrongful foreclosure.

10    151.    Plaintiff contends that GMAC, TCIF and Island Source

11    152.    Plaintiff requests the foreclosure sale be set aside and that all subsequent transfers of title

12            be vacated.

13

14                            ELEVENTH CAUSE OF ACTION
                                    QUIET TITLE
15            (Against Defendants FREMONT, GMAC, TCIF, ISLAND SOURCE, and DOES 1-25)

16    153.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 152, above, as

17            though fully set forth herein at length.

18    154.    Plaintiff's title is based on the facts plead hereinabove, and incorporated by reference.

19    155.    Plaintiff is seeking to quiet title against all adverse claims of defendants (the adverse

20            claims) to wit:

21            a.    The claims of the fictitiously named defendants described in paragraphs 23;

22            b.    The claims of the unknown defendants described in paragraph 22, whether or not

23                  any such claim is known to plaintiff;

24            c.    The unknown, uncertain or contingent claims, if any, of any defendant;

25            d.    The claim of defendants, FREMONT, GMAC, TCIF and ISLAND SOURCE

26                  described hereinabove, as the adverse claims are without any right whatever.

27                  Defendants have no right, title, estate, lien or interests whatever in the property

28                  adverse to plaintiff's title.

---

SECOND AMENDED COMPLAINT                                          Page 21

e.      Plaintiff seeks to quiet title as of November 1, 2004.

TWELFTH CAUSE OF ACTION
VIOLATION OF BUSINESS AND PROFESSIONS CODE §17200
(Against Defendants INTERNATIONAL, FREMONT, GMAC, and DOES 1-25)

156.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 135, above, as though fully set forth herein at length.

157.    Defendants, and each of them, committed acts of unfair business practices, as defined by California Business & Professions Code §17200 et seq., by engaging in acts which include but are not limited to, making loans based on made up information which defendants, and each of them, falsified; using bait and switch tactics; making loans without confirming or verifying borrower information; making loans without providing the borrower with sufficient, accurate and understandable information regarding the terms and conditions of the loan; making loans without providing the borrower with sufficient, accurate and understandable information regarding the nature and extent of the financial risk being assumed by the borrower; and making loans without regard to the financial ability of the borrower to pay.

158.    These acts all as alleged above violate California Business & Professions Code §17200 et seq., in the manner alleged above and, based on information and belief in the following further respects:

a.      Engaging in predatory lending practices in dealing with plaintiff, including but not limited to, the use of high pressure sales tactics and the falsification of plaintiff's loan application information;

b.      Failing to provide notices and disclosures require by TILA;

c.      Engaging in falsifying loan documents; and

d.      Other acts that plaintiffs are presently unaware of.

159.    As a direct and proximate result of the aforementioned acts, defendants, and each of them, obtained unwarranted fees from plaintiff for brokering and servicing the loan. Predictably, plaintiff is now unable to refinance his loan to get out of the defendants'

SECOND AMENDED COMPLAINT                                                      Page 22

program and will incur even more damages to his equity and credit. Plaintiff has suffered injury as alleged herein.

160.  Plaintiff individually and on behalf of the public, seeks an order of this court enjoining defendants and prohibiting each of the said defendants from predatory loan practices of the nature and kind herein alleged, as the public and plaintiff will be irreparably harmed if such order is not granted.

161.  Defendants breached the implied covenant of good faith and fair dealing as alleged above.

162.  As a proximate result of the aforementioned acts and omissions by defendants, plaintiff has suffered loss of monies in a sum to be proven at the time of trial. It has also become reasonably, necessary for plaintiffs retain counsel to recover amounts due under the contract.

163.  The aforementioned acts were performed by defendants maliciously, fraudulently and oppressively entitling plaintiffs to punitive damages in an amount appropriate to punish the defendants.

<div align="center">

**THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF TRUTH AND LENDING ACT, 15 U.S.C. § 1601 ET SEQ., AND FEDERAL RESERVE REGULATION Z 12 C.F.R. § 226 ET SEQ.**
(Against FREMONT, Does 1 to 25)

</div>

164.  Plaintiff repeats and realleges the allegations of paragraphs I through 163, above, as though fully set forth herein at length.

165.  This consumer credit transaction is subject to the plaintiff's right of rescission as described by 15 U.S.C. §1635 and Regulation Z §226.23 (12 C.F.R. §226.23).

166.  Defendants failed to provide TILA disclosures that reflect the terms of the' legal obligation between the parties (as required by 15 U.S.C. §163(14) and Regulation Z 5226.17(c)(1).

167.  In the course of this consumer credit transaction, defendants violated 15 U.S.C. §1635(a) and Regulation Z §226.17(c)(1) by failing to deliver to plaintiff two copies of a Notice of the Right to Rescind which correctly identified the transaction and 'contained the appropriate "material disclosures" required to reflect the true and correct terms of the

---

1    legal obligation of the parties.

2    168.    In the course of this consumer credit transaction, defendant creditor failed to deliver all

3    "material disclosures" required by the Act and Regulation Z, including the following: a)

4    A true and correct TIL disclosure showing the true and correct terms and legal obligation

5    of the parties.

6    169.    In the course of this consumer credit transaction, defendants failed to respond properly to

7    the plaintiffs' consumer rescission notice as required by 15 U.S.C. §1635 and Regulation

8    Z §226.15 and §226.23(d) by failing to rescind its security interest in the plaintiff's home.

9    170.    Around March 17, 2008, the plaintiff rescinded the transaction by sending to each

10    defendant creditor and/or assignee a Notice of Rescission by facsimile.

11    171.    A true and correct copy of the Notice of Rescission is attached hereto as Exhibit "L" and

12    by this referenced is incorporated herein.

13    172.    Defendant creditors and assignees received copies of the plaintiff's Notice of Rescission

14    on or about March 17, 2008.

15    173.    Defendants have failed to take any action necessary or appropriate to reflect the

16    termination of any security interest created under the transaction, including the security

17    interest, as required by 15 U.S.C. §1635(b) and Regulation Z §226.23(d)(2).

18    174.    As a result of the aforesaid violations of the Act and Regulation Z, pursuant to 15 U.S.C.

19    §1635(a), §1640(a), and S1641(c), defendants are liable to plaintiffs for:

20    a.    Rescission of this transaction.

21    b.    Termination of any security interest in plaintiffs' property created under the

22    transaction.

23    c.    Return of any money or property given by t plaintiffs to anyone, including the

24    defendant, in connection with this transaction.

25    d.    Statutory damages of $2,000 for defendants' failure to respond properly to

26    plaintiffs' rescission notice.

27    e.    The forfeiture of return of loan proceeds,

28    f.    Actual damages in an amount to be determined at trial.

SECOND AMENDED COMPLAINT                                                    Page 24

1    g.    Reasonable attorneys fees.

2    h.    Any and all other remedies that may become applicable during discovery related

3          to this complaint.

4    175.  By the filing of this action, Plaintiff offers to return to Defendants all sums determined by

5          this Court to be due from the proceeds of this action.

6

7                          FOURTEENTH CAUSE OF ACTION
                  DEFAMATION AND TORTIOUS INTERFERENCE WITH CREDIT
8                          AS AGAINST GMAC, Does 1 to 25

9    176.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 175, above, as

10         though fully set forth herein lat length.

11   177.   Defendant GMAC has published false ports through various credit reporting agencies

12         that he owes over $16 million as a result of the present foreclosure action.

13   178.  Said publications are false.

14   179.  Plaintiff has demanded of Defendant GMAC's xcdvxxz

15   180.  Said publications were published with malice within the meaning of Civil Code § 3294.

16   181.  Said publications have damaged Plaintiff's business in that he is unable to lease property

17         to store his business and trade tools, inventory and perform automotive and break repair

18         services.  Further, he is unable to get a loan to purchase inventory.  Plaintiff's business

19         has been damaged in an amount subject to proof.

20

21                          FIFTEENTH CAUSE OF ACTION
                                 FOR AN ACCOUNTING
22                              (As Against All Defendants)

23   182.  Plaintiff repeats and realleges Paragraphs 1 through 187 as though fully set forth herein.

24   183.  Plaintiff requests a complete accounting for all transactions related to the subject Note

25         secured by Deed of Trust, including, without limitation, all disbursements, payments,

26         fees, points, additions to principal, penalties, interest, etc.

27         WHEREFORE, plaintiff prays for, judgment as against Defendants, and each of them, as

28   follows:

---

SECOND AMENDED COMPLAINT                                              Page 25

ON THE FIRST CAUSE OF ACTION FOR NEGLIGENCE

1.    For general damages according to proof;

2.    For special damages according to proof;

ON THE SECOND CAUSE OF ACTION FOR COMMON COUNTS

3.    For damages according to proof;

4.    For consequential damages according to proof;

ON THE THIRD CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

5.    For general damages according to proof;

6.    For special damages according to proof;

7.    For punitive and exemplary damages in an amount appropriate to punish the Defendants and deter other from engaging in similar conduct.

ON THE FOURTH CAUSE OF ACTION FOR MISREPRESENTATION

8.    For general damages according to proof;

9.    For special damages according to proof;

10.    For punitive and exemplary damages in an amount appropriate to punish the Defendants and deter other from engaging in similar conduct.

ON THE FIFTH CAUSE OF ACTION FOR REFORMATION OF CONTRACT

11.    For a Declaration that the interest rate on the subject Note secured by Deed of Trust is unlawful and/or usurious;

12.    For a Declaration that all fees, points and yield spread premiums paid to INTERNATIONAL are unlawful;

13.    For a Declaration that all fees, premiums and points retained by INTERNATIONAL were monies which were not paid to Plaintiff pursuant to the terms of the subject Note secured by Deed of Trust;

14.    Reformation of the Contract either striking the Note and Deed of Trust in their entirety based on the wilful and outrageous conduct of the Defendants and granting Plaintiff title free and clear of all encumbrances, or, in the alternative, for an order striking

ON THE SIXTH CAUSE OF ACTION BREACH OF CONTRACT

SECOND AMENDED COMPLAINT                                                                 Page 26

15.   For damages according to proof;

16.   For incidental and consequential damages according to proof;

ON THE SEVENTH CAUSE OF ACTION BREACH OF CONTRACT

17.   For damages according to proof;

18.   For incidental and consequential damages according to proof;

ON THE EIGHTH CAUSE OF ACTION FOR DECEIT

19.   For general damages according to proof;

20.   For special damages according to proof;

21.   For punitive and exemplary damages in an amount appropriate to punish the Defendants and deter other from engaging in similar conduct.

ON THE NINTH CAUSE OF ACTION FOR CANCELLATION OF WRITTEN INSTRUMENT

22.   That the court declare that (1) the Trust Deed (Exhibit G) is void and that it be surrendered to the clerk of the court for cancellation and destruction and (2) that defendants be ordered to pay plaintiffs the following sums:

23.   The consideration paid by plaintiffs with interest thereon at 10% per annum from the date of filing this complaint;

24.   Exemplary damages;

25.   For reasonable attorney fees and costs.

ON THE TENTH CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

26.   For damages according to proof;

27.   For consequential damages according to proof;

28.   For punitive and exemplary damages in an amount appropriate to punish Defendants and deter others from engaging in similar conduct;

ON THE ELEVENTH CAUSE OF ACTION FOR QUIET TITLE

29.   For a judicial-declaration setting aside and canceling the non-judicial foreclosure sale deed;

30.   For a declaration that Plaintiff Robert Sweeting is the true owner of the subject property;

---

SECOND AMENDED COMPLAINT

1  31.  For exemplary damages;

2  ON THE TWELFTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS AND

3  PROFESSIONS CODE §17200

4  32.  For general damages according to proof;

5  33.  For special damages according to proof;

6  34.  For punitive and exemplary damages in an amount appropriate to punish Defendants and

7  deter others from engaging in similar conduct;

8

9  ON THE THIRTEENTH CAUSE OF ACTION FOR VIOLATION OF TRUTH AND

10  LENDING ACT, 15 U.S.C. § 1601 ET SEQ., AND FEDERAL RESERVE

11  REGULATION Z 12 C.F.R. § 226 ET SEQ.

12  35.  Rescission of this transaction.

13  36.  Termination of any security interest in plaintiffs' property created under the transaction.

14  37.  Return of any money or property given by the plaintiffs to anyone, including the

15  defendant, in connection with this transaction.

16  38.  Statutory damages of $2,000 for defendants' failure to respond properly to plaintiffs'

17  rescission notice.

18  39.  The forfeiture of return of loan proceeds

19  40.  Actual damages in an amount to be determined at trial.

20  41.  Reasonable attorneys fees.

21  42.  Any and all other remedies that may become applicable during discovery related to this

22  complaint.

23  ON THE FOURTEENTH CAUSE OF ACTION DEFAMATION AND TORTIOUS

24  INTERFERENCE WITH CREDIT

25  43.  For general damages according to proof;

26  44.  For special and consequential damages according to proof;

27  45.  For punitive and exemplary damages in an amount appropriate to punish Defendants and

28  deter others from engaging in similar conduct;

SECOND AMENDED COMPLAINT                                    Page 28

1      ON THE FIFTEENTH CAUSE OF ACTION FOR ACCOUNTING

2      46.    For a complete accounting for all transactions related to the subject Note secured by Deed

3             of Trust, including, without limitation, all disbursements, payments, fees, points,

4             additions to principal, penalties, interest, etc.

5

6

7      ON THE FIRST CAUSE OF ACTION:

8      1.     For damages according to proof;

9      2.     For consequential damages according to proof;

10     ON THE SECOND CAUSE OF ACTION:

11     3.     For damages according to proof;

12     4.     For consequential damages according to proof;

13     5.     For punitive and exemplary damages in an amount appropriate to punish the Defendants

14            and deter other from engaging in similar conduct.

15     ON THE THIRD CAUSE OF ACTION:

16     6.     For actual damages according to proof;

17     7.     For consequential damages according to proof;

18     8.     For punitive and exemplary damages in an amount to be determined at trial;

19     ON THE FOURTH CAUSE OF ACTION:

20     9.     For actual damages according to proof;

21     10.    For consequential damages according to proof;

22     11.    For punitive and exemplary damages in an amount to be determined at trial;

23     ON THE FIFTH CAUSE OF ACTION:

24     12.    That the court declare that (1) the Trust Deed (Exhibit G) is void and that it be

25            surrendered to the clerk of the court for cancellation and destruction and (2) that

26            defendants be ordered to pay plaintiffs the following sums:

27     13.    The consideration paid by plaintiffs with interest thereon at 10% per annum from the date

28            of filing this complaint;

SECOND AMENDED COMPLAINT                                                    Page 29

14.    Exemplary damages;

15.    For reasonable attorney fees and costs.

ON THE SIXTH CAUSE OF ACTION:

16.    For a judicial-declaration setting aside and canceling the non-judicial foreclosure sale

deed;

17.    For a declaration that Plaintiff Robert Sweeting is the true owner of the subject property;

18.    For exemplary damages;

ON THE SEVENTH CAUSE OF ACTION

16. For special damages according to proof;

19.    For punitive damages;

ON THE EIGHTH CAUSE OF ACTION

20.    A declaration that plaintiff, is the owner of the subject property and that no defendant has

any interest in the subject property adverse to plaintiff.

ON THE NINTH CAUSE OF ACTION

21.    For compensatory damages;

22.    For punitive damages;

23.    For attorney's fees;

ON THE TENTH CAUSE OF ACTION

24.    For Restitution Damages;

25.    For Statutory Damages;

26.    For costs of suit incurred herein, including reasonable attorney's fees;

ON THE ELEVENTH CAUSE OF ACTION

27.    For General Damages

ON THE TWELFTH CAUSE OF ACTION

28.    Rescission of this transaction.

29.    Termination of any security interest in plaintiffs' property created under the transaction.

30.    Return of any money or property given by the plaintiffs to anyone, including the

defendant, in connection with this transaction.

SECOND AMENDED COMPLAINT                                                    Page 30

31. Statutory damages of $2,000 for defendants' failure to respond properly to plaintiffs' rescission notice.

32. The forfeiture of return of loan proceeds

33. Actual damages in an amount to be determined at trial.

34. Reasonable attorneys fees.

35. Any and all other remedies that may become applicable during discovery related to this complaint.

ON THE THIRTEENTH CAUSE OF ACTION

36. Compensatory;

37. Punitive damages;

ON ALL CAUSES OF ACTION:

38. For costs of suit incurred herein; and

39. For such other and further relief as the court deems just and proper.

Respectfully submitted,

Robert Sweeting

---

SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFICATION
[CCP §§ 446, 2015.5]

I, Robert Sweeting, declare as follows:

I am the Plaintiff in this action.

I have read and know the contents of the attached Second Amended Complaint and know the contents thereof. The facts set forth therein are true of my own personal knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 8, 2009 at Huntington Beach, California.

_____

Robert Sweeting

[C:\Users\POWERBRAKEBOB\AppData\Local\Microsoft\Windows\Temporary Internet

Files\Low\Content.IE5\ETLIY3BE\Second_Amended_Complaint_(Working)[1].wpd]

SECOND AMENDED COMPLAINT                                              Page 32

## <u>Exhibit 1-B</u>

**Proof of Claim No. 1361**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Claim #1361   Date Filed: 10/16/2012

Name of Debtor: RESIDENTIAL CAPITAL, LLC (GMAC)
**GMAC MORTGAGE, LLC**

Case Number: 12-12020 (MG)
**AND 12-12032**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
ROBERT SWEETING

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
**ROBERT SWEETING
7071 WARNER AVE. BOX F81
HUNTINGTON BEACH, CA. 92647**

Telephone number: **562 394 8218**    email: **POWERBRAKE-BOB@MSN.COM**

**Court Claim Number:**
*(If known)*

Filed on:

Name and address where payment should be sent (if different from above):

Telephone number:                              email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $~~49,000,000~~    **$79,170,000.00   ORANGE COUNTY**
If all or part of the claim is secured, complete item 4.    **CASE #**
If all or part of the claim is entitled to priority, complete item 5.    **30-2010-00410079**
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: **MORTGAGE NOTE / COURT ACTION / JUDGEMENT**
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:
**1331**

3a. Debtor may have scheduled account as:

(See instruction #3a)

3b. Uniform Claim Identifier (optional):

(See instruction #3b)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:
Value of Property: $_____   Annual Interest Rate _____% ☐ Fixed ☐ Variable
(when case was filed)
Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: $_____   Basis for perfection: _____
Amount of Secured Claim: $_____   Amount Unsecured: $_____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

6. Claim Pursuant to 11 U.S.C. § 503(b)(9):
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**Amount entitled to priority:**

$_____

7. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. Documents: Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted.")*
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

9. Signature: (See instruction #9) Check the appropriate box.
☑ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)
I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: **ROBERT SWEETING**
Title:
Company:
Address and telephone number (if different from notice address above):
**Robert Sweeting**   **9/29/12**
(Signature)                        (Date)

**RECEIVED
OCT 1 6 2012
KURTZMAN CARSON CONSULTANTS**

Telephone number:                              Email:

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18



1212032121016000000000003

CIV-050

**- DO NOT FILE WITH THE COURT-**
**-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| ROBERT SWEETING, PRO PER<br>7071 WARNER AVE.<br>BOX F 81<br>HUNTINGTON BEACH, CA. 92647<br>ATTORNEY FOR (name): | 562-394-8218 | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: 700 CIVIC CENTER DRIVE, WEST
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA ANA 92702
BRANCH NAME: CENTRAL

PLAINTIFF: ROBERT SWEETING
DEFENDANT: JASON KISHABA, ET AL

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>30-2010-00410079<br>G 0 45198 |
|---|---|

To (name of one defendant only): GMAC MORTGAGE, LLC.
Plaintiff (name of one plaintiff only): ROBERT SWEETING
seeks damages in the above-entitled action, as follows:

AMOUNT

**1. General damages**

a. ✓ Pain, suffering, and inconvenience ................................................ $ 2,000,000.00

b. ✓ Emotional distress. .......................................................... $ 2,000,000.00

c. ✓ Loss of consortium ........................................................... $ 500,000.00

d. ☐ Loss of sociey and companionship (wrongful death actions only) ....................... $

e. ✓ Other (specify)  LOSS OF CREDIT RATING .................... $ 1,500,000.00

f. ✓ Other (specify)  LOSS OF BOSCH CONTRACT ................ $ 3,000,000.00

g. ☐ Continued on Attachment 1.g.

**2. Special damages**

a. ☐ Medical expenses (to date) .................................................... $

b. ☐ Future medical expenses (present value) .......................................... $

c. ✓ Loss of earnings (to date) .................................................... $ 750,000.00

d. ✓ Loss of future earning capacity (present value) ...................................... $ 2,500,000.00

e. ✓ Property damage ............................................................ $ 3,584,000.00

f. ☐ Funeral expenses (wrongful death actions only) ...................................... $

g. ☐ Future contributions (present value) (wrongful death actions only) ...................... $

h. ☐ Value of personal service, advice, or training (wrongful death actions only) ............... $

i. ☐ Other (specify) ............................................................. $

j. ☐ Other (specify) ............................................................. $

k. ☐ Continued on Attachment 2.k.

**3.** ✓ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of (specify).. $ 79,170,000.00
when pursuing a judgment in the suit filed against you.

Date: AUGUST 1, 2012

ROBERT SWEETING
_____
(TYPE OR PRINT NAME)

▶ _Robert Sweeting_ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

STATEMENT OF DAMAGES
(Personal Injury or Wrongful Death)

Code of Civil Procedure, §§ 425.11, 425.115
www.courtinfo.ca.gov

CIV-050

| PLAINTIFF: ROBERT SWEETING | CASE NUMBER: |
|---|---|
| DEFENDANT: JASON KISHABA, ET AL | 30-2010-00410079 |

### PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. [✓] Statement of Damages [ ] Other *(specify)*:

   b. on *(name)*: GMAC MORTGAGE, LLC.

   c. by serving [✓] defendant [ ] other *(name and title or relationship to person served)*:

   d. [✓] by delivery [ ] at home [ ] at business
      (1) date:
      (2) time:
      (3) address: 19100 VON KARMAN AVE. STE 700, IRVINE, CA.

   e. [ ] by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box)*:
   a. [✓] **Personal service.** By personally delivering copies. (CCP § 415.10)
   b. [✓] **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. [ ] **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. [ ] **Mail and acknowledgment service.** By mailing (by first- class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**
   e. [ ] **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. [ ] Other *(specify code section)*:
      [ ] additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $ 0
5. Person serving:
   a. [ ] California sheriff, marshal, or constable
   b. [ ] Registered California process server
   c. [ ] Employee or independent contractor of a registered California process server
   d. [✓] Not a registered California process server
   e. [ ] Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: JULY 27, 2012

▶ _____
                    (SIGNATURE)

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

▶ _____
                    (SIGNATURE)

CIV-050 [Rev. January 1, 2007]

**PROOF OF SERVICE**
**(Statement of Damages)**

Code of Civil Procedure §§ 425.11, 425.115

REQUEST FOR JUDICIAL NOTICE
Court of Appeal Case No.: G045198
Superior Court Case No.: 30-2010-00410079

# COURT OF APPEAL

# STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION THREE

---

ROBERT SWEETING,

Plaintiff and Appellant,

vs.

GMAC MORTGAGE, LLC

Defendant and Respondent,

---

REQUEST FOR JUDICIAL NOTICE

---

Robert Sweeting, Pro Per
7071 Warner Ave., Unit F81
Huntington Beach, CA 92647
(562) 394-8218

Pursuant to Ev. C. § 452(d), Appellant requests the Court take judicial notice that Sweeting v. Fremont, Orange County Superior Court Case No. 30-2008-0104237, referred to herein as "the first action," and the underlying case , Sweeting v. GMAC, were both in Dept. C-25.  (Thus, the trial court had intimate knowledge of both cases.)

Appellant further requests that the Court take judicial notice of the following documents pursuant to Ev.C § 452(d):

| | |
|---|---|
| Order Suspending International's License | Exhibit "A" |
| First Unlawful Detainer Complaint - OCSC #30-2008-00221178 | Exhibit "B" |
| Motion to Set Aside Dismissal (First Action) | Exhibit "C" |
| Second Unlawful Detainer Complaint, OCSC #30-2009-00280569 | Exhibit "D" |
| Motion for Extension of Time (First Action) | Exhibit "E" |
| Doe Amendments (First Action) | Exhibit "F" |
| Order granting Summary Judgment | Exhibit "G" |
| Notice of Appeal (First Action) | Exhibit "H" |
| GMAC Demurrer to the Second Amended Complaint (First Action) | Exhibit "I" |
| Opposition to Demurrer to Second Amended Complaint (First Action) | Exhibit "J" |

Certified copies of all documents have been filed with the Court as part of the Clerks Transcript in Sweeting v. GMAC, Court of Appeal Case No.: G043281.  They will be lodged with the Court under separate cover.

Dated:  November 29, 2011

Robert Sweeting, In Pro Per

1    On November 29, 2011,  served the following entitled document(s):

2    **Request for Judicial Notice**

3    I served said documents on GMAC by placing a true copy thereof in a sealed envelope
addressed as set out below or as set out in the attached Service List incorporated herein by
4    reference.

5    Severson & Werson
19100 Von karman Ave., Suite 700
6    Irvine, CA 92612

7

**[ x ] BY MAIL (C.C.P. §§ 1012, 1013, (a), 1013a)**
8    [ ]    I deposited such sealed envelope(s) with postage thereon fully prepaid in the mail
at Huntington Beach, California.
9    [ ]    I placed the sealed envelope for collection and mailing following ordinary
business practices. I am readily familiar with the firm's business practice of
10    collection and processing of correspondence for mailing with the United States
Postal Service.  Under the ordinary course of business, it would be deposited with
11    the U.S. Postal Service on that same day with postage thereon fully prepaid at La
Habra, California.
12    **[ ] BY PERSONAL SERVICE (C.C.P. § 1011)**
[ ]    I caused to be personally delivered the above mentioned to the addresses set out
13    above on this date.
[ ]    By Special Messenger Service with specific instructions for same day delivery to
14    the addresses set out above on this date.

15    [X] (State)  I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
16    [ ] (Federal) I declare that I am employed in the office of a member of the bar of this Court at
whose direction the service was made.
17
Executed on November 29, 2011, in Huntington Beach, California
18

19

JASON P. GOLD
20

21

22

23

24

25

26

27

28

Court of Appeal Case No.:  G045198
Superior Court Case No.: 30-2010-00410079

# COURT OF APPEAL
# STATE OF CALIFORNIA
# FOURTH APPELLATE DISTRICT
# DIVISION THREE

---

ROBERT SWEETING,
Plaintiff and Appellant,

vs.

GMAC MORTGAGE, LLC
Defendant and Respondent,

---

OPENING BRIEF ON APPEAL
FROM AN ORDER OF THE ORANGE COUNTY SUPERIOR COURT,
THE HONORABLE STEVEN SIEFERT, JUDGE PRO TEM PRESIDING,
GRANTING DEMURRER TO COMPLAINT WITHOUT LEAVE TO AMEND

---

Robert Sweeting, Pro Per
7071 Warner Ave., Unit F81
Huntington Beach, CA 92647
(562) 394-8218

# TABLE OF CONTENTS

Section                                                                 Page #

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    THE FIRST ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    THE PRESENT ACTION: . . . . . . . . . . . . . . . . . . . . . . . . 9

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

THE ORDER OF THE TRIAL COURT GRANTING GMAC'S
        DEMURRER TO THE SECOND AMENDED COMPLAINT
        IN THE FIRST ACTION WAS VOID BECAUSE THE TRIAL
        COURT LACKED JURISDICTION OVER GMAC . . . . . . 11

THE DOCTRINE OF RES JUDICATA
        DOES NOT BAR THE PRESENT ACTION BECAUSE THE
        CAUSE OF ACTION FOR INTERFERENCE WITH CREDIT
        BECAUSE IT WAS NOT LITIGATED OR REQUIRED TO
        BE LITIGATED IN THE PRIOR ACTION . . . . . . . . . . . . 13

PLAINTIFF WAS NOT REQUIRED TO AMEND HIS
        COMPLAINT IN THE FIRST CASE TO ALLEGE A CAUSE
        OF ACTION WHICH AROSE AFTER THE COMPLAINT
        WAS FILED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PLAINTIFF CAN AMEND HIS COMPLAINT TO STATE CAUSES
        OF ACTION UNDER THE FAIR CREDIT REPORTING ACT
        AND UNDER CIVIL CODE § 1785.25, SUBDIVISION (a)
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        Plaintiff Can Allege Facts Sufficient to State a Cause of Action
            on Which Relief May Be Granted under the FCRA . . 22
        Civ. Code § 1785.25(a) is Not Subject to Preemption under the
            FCRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

CERTIFICATION OF WORD COUNT . . . . . . . . . . . . . . . . . . . . .  29

# TABLE OF AUTHORITIES

## Table of Cases

*Abelleira v. District Court of Appeal*, 17 Cal.2d 280 (1941) . . . . . 11

*Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94 (1972) . . . . . 12

*Bernhard v. Bank of America*, 19 Cal.2d 807 (1942) . . . . . . . . . . 14

*Busick v. Workmen's Comp Appeals. Bd.*, 7 Cal.3d 967 (1972) . . . 18

*Chatten v. Martell*, 166 Cal. App. 2d 545 (1958) . . . . . . . . . . . . . 20

*Desny v. Wilder*, 46 Cal.2d 715 (1956) . . . . . . . . . . . . . . . . . . . . . 21

*Goodman v Kennedy*, 18 C3d 335 (1976) . . . . . . . . . . . . . . . . . . . 20

*Johnson v. American Airlines, Inc.*, 157 Cal.App.3d 427 (1984) . . 16

*Kettelle v. Kettelle*, 110 Cal.App. 310 (1930) . . . . . . . . . . . . . . . . 19

*Lin v. Universal Card Services Corp.*, 238 F.Supp.2d 1147 (N.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*McKee v. Doud*, 152 Cal. 637 (1908) . . . . . . . . . . . . . . . . . . . . . . 15

*Morgan v. Superior Court of Los Angeles County*, 172 Cal.App.2d 527 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Panos v. Great Western Packing Co.*, 21 Cal.2d 636 (1943) . . . . . 16

*People v. Getty*, 50 Cal.App.3d 101 (1975) . . . . . . . . . . . . . . . . . . 12

*People v. Sonoqui*, 1 Cal.2d 364 (1934) . . . . . . . . . . . . . . . . . . . . 12

*Rice v. Crow*, 81 Cal. App. 4th 725 (Cal. App. 2d Dist. 2000) . . . 13

*Sainai v. Saltz*, 170 Cal. App. 4th 746 (2009) . . . . . . . . . . . . . . . . . 22

*Slater v. Blackwood*, 15 Cal.3d 791 (1975) . . . . . . . . . . . . . . . . . . 15

*Stafford v. Yerge*, 129 Cal.App.2d 165 (1954) . . . . . . . . . . . . . . . . 17

*Wulfjen v. Dolton*, 24 Cal.2d 891 (1944) . . . . . . . . . . . . . . . . 15, 16

## Table of Statutes

Civil Code § 1785.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

15 U.S.C. § 1681 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-26

Code of Civil Procedure § 430.10 . . . . . . . . . . . . . . . . . . . . . . . . 16

Code of Civil Procedure § 473 . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Code of Civil Procedure § 904.1 . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I. STATEMENT OF THE CASE

This is the fourth case between the parties. It arises from the false reporting by GMAC to credit reporting agencies of a $16 million debt which GMAC claims they were owed by Appellant. As a result of the false report(s), your Appellant has been prevented from leasing a new business premises and has been required to pay 25% interest on a car loan. (See Complaint at Clerk Transcript Supplemental ("CTS") pages 1 - 5). Plaintiff filed a complaint with three causes of action based on common law defamation. These include: 1) Defamation/tortious Interference with Credit; 2) Accounting; and 3) Declaratory and Injunctive Relief.

There were three prior actions between the parties. One concerned the theft of proceeds from a home loan made by Fremont Investment which was arranged by an unlicensed mortgage broker and had a usurious interest rate. Plaintiff believed GMAC purchased the loan from Fremont. GMAC reported to credit reporting agencies that Plaintiff/Appellant owed them a debt of about $400,000 in regard to that loan. GMAC won its Summary Judgment Motion in the first action, claiming was merely the loan processor. It claims the judgment in the prior action renders res judicata the claims in the

present lawsuit and filed a demurrer on those grounds. The Court

granted the demurrer.

## II. STATEMENT OF APPEALABILITY

This Appeal is from a Final Summary Judgement of the Orange

County Superior Court, dated April 29, 2011, and is Authorized by

the Code of Civil Procedure, section 904.1 subsection (a)(1) to be

heard in the Court of Appeals, Fourth District, Division III

## III. STATEMENT OF FACTS

This is the fourth case between the parties. It arises from the

false reporting by GMAC to credit reporting agencies of a $16

million debt which GMAC claims they were owed by Appellant. As

a result of the false report(s), your Appellant has been prevented from

leasing a new business premises and has been required to pay 25%

interest on a car loan. (See Complaint at Clerk Transcript

Supplemental ("CTS") pages 1 - 5). Plaintiff filed a complaint with

three causes of action based on common law defamation. These

include: 1) Defamation/tortious Interference with Credit; 2)

Accounting; and 3) Declaratory and Injunctive Relief.

The prior action concerned the theft of proceeds from a home

loan which was arranged by an unlicensed mortgage broker and had a

usurious interest rate.  GMAC reported to credit reporting agencies that Plaintiff/Appellant owed them a debt of about $400,000 in regard to that loan.

The trial court granted GMAC's demurrer without leave to amend based on the doctrine of res judicata and collateral estoppel because of rulings in the first action.

GMAC filed a demurrer in the present action claiming it was barred by the doctrines of res judicata and collateral estoppel.  (CTS: 19 - 30.)  This claim is based on the fact it was granted summary judgment in the first action, and later the court granted a Motion to Strike the Second Amended Complaint which was filed after your appellant filed an appeal from the grant of summary judgment.  The Second Amended Complaint incorporated many of the allegations against GMAC as are contained in the present action.  These claims were not incorporated in earlier pleadings in the first action.

Because the grant of the demurrer in the present action was based on the judgment in the first action, Appellant sets forth in some detail the facts concerning that action as follows:

THE FIRST ACTION:  The first action between the parties was filed on March 20, 2008, Orange County Superior Court Case No. 30-

2008-0104237.  CTS: 33 - 114.  It initially involved an attempt at rescission of a bad home loan made by Fremont Investment and Loan ("Fremont") and sought the return of funds stolen by the unlicensed escrow company to which the funds were sent.  The loan was a variable interest rate loan with minimum interest of over 10%.  (CTS: 102)  The loan was made in December 2006, just before Fremont was put out of business by the federal government for misdeeds in the mortgage marketplace.  The loan was arranged by an entity known as International Mortgage and the funds were sent to its sister company, International Escrow.  These entities had their real estate licenses suspended prior to the making of the underlying loan and subsequently were entirely stripped of their licenses became of the theft of loan proceeds from prior victims.  (CTS: 210 - 269; Request for Judicial Notice Exhibit "A.")

The interest rate on the loan was usurious as it was over 10% and not arranged by a licensed real estate broker.  CTS: 102.  In addition, most of the cash-out from the loan, which was needed to re-finance Plaintiff's 60 year old business, was stolen by International. (See Second Amended Complaint in first action at CTS: 210-269)

In or about March or April 2007, the loan was sold. Plaintiff
believed it had been sold to GMAC.

In or about June 2008, Plaintiff was abandoned by his counsel
and the First Action was dismissed for lack of prosecution. While the
case was "dismissed," GMAC foreclosed on your Appellant's home
and took title in its name.

On November 11, 2008, GMAC filed an Unlawful Detainer
action ("UD") as against Plaintiff in West Orange County Superior
Court, Case No. 30-2008-00221178. (Plaintiff requests the Court
take judicial notice of Complaint attached to Request for Judicial
Notice as Exhibit "B.")

As soon as Appellant discovered the dismissal, he prepared a
Motion to Set Aside the Dismissal. On or about December 24, 2008,
Plaintiff, now in pro per, filed his Motion to Set Aside Dismissal of
the first Action. The Motion was filed on December 24, 2008 and
heard on January 28, 2009. (CTS: 280. Request for Judicial Notice
Exhibit "C.")

GMAC served its Summary Judgment motion in the Unlawful
Detainer action on or about December 31, 2008 so that
Plaintiff/Appellant was unable to retain counsel to defend the action.

Instead of filing an Opposition, Plaintiff attempted to file a Motion to Stay, Dismiss or in the alternative, to consolidate the UD with this First case. It was rejected as not timely filed, although the facts set forth therein would constitute a defense to the Summary Judgment Motion.

On January 9, 2009, Summary Judgment was granted in the UD while your Plaintiff/Appellant's 473 to Vacate and Set Aside the Dismissal was still to be heard in the First Action.

In early February 2009, the First Action was reinstated.

On or about March 15, 2009, GMAC transferred by Grant Deed, title to the subject property to TCIF REO GCM California, LLC.

Despite a total lack of title, the pendency of the first action, the fact that title, when in GMAC's name, was gained through fraud, that GMAC refused to apply payments which had been properly made to and stolen by Fremont, GMAC's predecessor in interest, despite Plaintiff's heroic attempts to cure the non-existent default in loan payments, multiple felonies, embezzlement, fraud in the inducement of the loan, all committed by the UNLICENSED mortgage broker, escrow company, Fremont, GMAC and just about everyone else

involved, on July 1, 2009, GMAC again filed another Unlawful Detainer against your appellant. OCSC Case No. 30-2009-00280569. GMAC eventually dismissed that case for lack of title. (See Complaint in OCSC Case No. 30-2009-00280569 attached to Request for Judicial Notice as Exhibit "D.")

On July 17, 2009, GMAC served its Motion for Summary Judgment on attorney Steven Hertz, who was assisting Plaintiff with the deposition scheduled by Fremont. (He was not Plaintiff's attorney of record, did not file a responsive pleading, and did not give the Motion to Plaintiff.) (CTS: 280. See Motion for Extension of Time attached to Request for Judicial Notice as Exhibit "E.")

On or about September 9, 2009, Plaintiff filed numerous Doe Amendments, naming GMAC's successors in title along with MERS and several others. These entities demurred on the grounds there were no causes of action alleged against them. (CTS: 280. See Notices of Doe Amendments attached to Request for Judicial Notice as Exhibit "F.")

Despite a finding that service of the Summary Judgment Motion was inadequate, on or about **October 28, 2009**, the Court granted GMAC's summary judgment motion. GMAC's principal

<u>defense on Summary Judgment was that it was merely the loan
processor for some unnamed entity despite the fact is was filing
unlawful detainers in its own name and claiming it owned the
Plaintiff's home as a result of the aforesaid foreclosure.</u>  (CTS: 280,
See Order granting Summary Judgment attached to Request for
Judicial Notice as Exhibit "G.").  *In other words, GMAC asserted and
"proved" in the first action that your appellant did not owe GMAC
any money on the debt associated with the first action.*

On December 15, 2009, your Appellant filed his Verified
Second Amended Complaint in the first action.  The Second
Amended Complaint for the first time addressed the false credit
report.  (CTS: 210 - 269)

On December 17, 2009, the trial court denied Appellant's
Motion for Reconsideration of the grant to GMAC of summary
judgment.  (CTS 318 - 319)

On or about January 5, 2010, your appellant filed a Notice of
Appeal resulting in Court of Appeal Case No.: G043281.  (See Notice
of Appeal attached to Request for Judicial Notice as Exhibit H.")

Despite the fact that the first action was being appealed as to
the grant of summary judgment to GMAC, on January 7, 2010,

GMAC filed a Demurrer the Second Amended Complaint based on claims of res judicata and collateral estoppel. (See Request for Judicial Notice Exhibit "I.") Appellant opposed the Motion on the grounds the matter was on appeal. (See Request for Judicial Notice Exhibit "J.") The Demurrer was granted on or about March 11, 2011 on the grounds of res judicata and collateral estoppel. (CTS: 292 - 293). The trial court subsequently denied a Motion for Reconsideration. (CTS: 281)

THE PRESENT ACTION: The present appeal concerns the fourth litigation. It involves the false report to various credit reporting agencies by Defendant GMAC that Plaintiff owes GMAC a debt of over $16 million. As aforesaid, it was determined in the first action that Plaintiff owed GMAC nothing in regard to the home loan which is the subject of that action. Despite the fact that Plaintiff and Appellant Robert Sweeting requested an investigation by the credit reporting bureaus, GMAC re-reported to those agencies that Sweeting owed this debt. GMAC demurred on the grounds of res judicata and collateral estoppel. The Court granted the motion.

Your appellant timely filed his notice of appeal.

## IV. INTRODUCTION

Respondent GMAC relies on the doctrine of res judicata in its

malicious attempt to continue to defame Appellant's credit in

violation of the FCRA and California Civ. Code § 1785.25(a). The

trial court in the first action is that Plaintiff/Appellant does not owe

any debt to GMAC. Yet, despite multiple attempts to have credit

reporting agencies investigate and correct the report that Plainntiff

owes GMAC over $16,000,000 has been met with an affirmation

from GMAC that its report is correct. Each request by Appellant to

credit reporting agencies to investigate and correct GMAC's is a new

violation of the FCRA and should give rise to a new cause of action.

Yet, the trial court, once without jurisdiction, and now in this action,

has refused to act. Plaintiff was not required to amend his first action

against GMAC to allege these causes of action because the cause of

action did not accrue until over a year after the first action was filed.

Nor does Appellant seek to relitigate the same causes of action as in

the first case, to wit: usury, theft of proceeds of a home loan by an

unlicensed and unbonded escrow company, fraud in the execution of

the loan, improper handling of payments, bureaucratic misfeasance by

GMAC in servicing the fraudulent loan on behalf of its principal, and

wrongful foreclosure.

As set forth below, Plaintiff concurs that the FCRA preempts

may state court causes of action, but that the trial court abused its

discretion in denying leave to amend the Complaint. The doctrine of

res judicata does not apply.

### V. THE ORDER OF THE TRIAL COURT GRANTING GMAC'S DEMURRER TO THE SECOND AMENDED COMPLAINT IN THE FIRST ACTION WAS VOID BECAUSE THE TRIAL COURT LACKED JURISDICTION OVER GMAC

The term 'jurisdiction,' is "used continuously in a variety of

situations, has so many different meanings that no single statement

can be entirely satisfactory as a definition." *Abelleira v. District*

*Court of Appeal*, 17 Cal.2d 280, 287 (1941). "Lack of jurisdiction in

its most fundamental or strict sense means an entire absence of power

to hear or determine the case, an absence of authority over the subject

matter or the parties. [Citing situations providing examples.] . . .

[para. ] But in its ordinary usage the phrase 'lack of jurisdiction' is not

limited to these fundamental situations . . . . [It] may be applied to a

case where, though the court has jurisdiction over the subject matter

and the parties in the fundamental sense, it has no 'jurisdiction' (or

power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." *Abelleira v. District Court of Appeal*, 17 Cal.2d 280, 288 (1941). When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 119 (1972).

The general rule as to all causes, whether criminal or civil, is the valid filing of appeal vests jurisdiction of a cause in the appellate court until determination of the appeal and issuance of the remittitur. *People v. Sonoqui*, 1 Cal.2d 364 (1934); *People v. Getty*, 50 Cal.App.3d 101, 107 (1975). Ordinarily in that case " 'the trial court loses jurisdiction during that period to do anything in connection with the cause which may affect the judgment.' [Citations.]" *People v. Getty*, 50 Cal.App.3d 101, 107 (1975).

Here, the Second Amended Complaint in the first action (which is the first complaint to contain causes of action similar to the ones in the present action) was filed two days before the trial court denied Appellant's Motion for Reconsideration of the grant of summary judgment to GMAC. The Notice of Appeal was filed two days before

GMAC filed its Demurrer to the Second Amended Complaint.  Since

jurisdiction was vested in the Court of Appeal, the trial court had no

jurisdiction over GMAC to either grant or deny the Demurrer as to

the new causes of action in Second Amended Complaint.  Because

the trial court lost jurisdiction while the case was on appeal to do

anything in connection with the cause which might affect the

judgment, it was required to abstain from making any ruling as it

would modify the appealed judgment.  Your appellant lacked any

mandatory appeal process to determine the validity of the ruling on

the demurrer and would be required to file a discretionary Writ.

Given a lack of jurisdiction in the trial court, the ruling should

have no effect on the present litigation.

### VI.  THE DOCTRINE OF RES JUDICATA
### DOES NOT BAR THE PRESENT ACTION BECAUSE THE
### CAUSE OF ACTION FOR INTERFERENCE WITH CREDIT
### BECAUSE IT WAS NOT LITIGATED OR REQUIRED TO BE
### LITIGATED IN THE PRIOR ACTION

In *Rice v. Crow*, 81 Cal. App. 4th 725 (Cal. App. 2d Dist.

2000), the Court discussed the doctrine of res judicata as follows:

> The doctrine of res judicata consists of two
> different aspects. (Vezina v. Continental Cas. Co. (1977)
> 66 Cal. App. 3d 665, 669 [136 Cal. Rptr. 198].)  First, " '
> "it 'precludes parties or their privies from relitigating a
> cause of action that has been finally determined by a

court of competent jurisdiction.' " ' " (Ibid., italics added.)  This aspect of res judicata has traditionally been referred to as "res judicata" or "claim preclusion." Second, " ' " 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit as to the parties on a different cause of action.' " [Citations.]' " (Id. at pp. 669-670.) This latter aspect of res judicata is known as "collateral estoppel" (ibid.) or "issue preclusion." (Vandenberg v. Superior Court (1999) 21 Cal. 4th 815, 824 [88 Cal. Rptr. 2d 366, 982 P.2d 229]; Kelly v. Vons Companies, Inc. (1998) 67 Cal. App. 4th 1329, 1335 [79 Cal. Rptr. 2d 763].)

"Res judicata is applicable only to the same causes of action between the same parties or their privies. As stated in Branson v. Sun-Diamond Growers (1994) 24 Cal. App. 4th 327, 340 [29 Cal. Rptr. 2d 314]: " 'In its primary aspect, res judicata operates as a bar to the maintenance of a second suit between the same parties or parties in privity with them on the same cause of action.' " (Italics added.) (See also Krier v. Krier (1946) 28 Cal. 2d 841, 843 [172 P.2d 681] ["It is settled, however, that a judgment in a prior action between the same parties on the identical cause of action is res judicata, and a bar to a second suit thereon . . . ." (Italics added.)]; Goddard v. Security Title Ins. & Guar. Co. (1939) 14 Cal. 2d 47, 51 [92 P.2d 804] [" 'First, a final judgment, rendered upon the merits by a court having jurisdiction of the cause, is conclusive of the rights of the parties and those in privity with them, and is a complete bar to a new suit between them on the same cause of action. This is the general doctrine of res judicata' " (Italics omitted.)]].

In determining the validity of a plea of **res judicata** three questions are pertinent: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in

question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? *Bernhard v. Bank of America*, 19 Cal.2d 807 (1942)

In determining whether an issue was decided in a prior action, California relies on the primary right theory. This is a theory of code pleading which provides that a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. *McKee v. Doud*, 152 Cal. 637, 641 (1908). The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. *Slater v. Blackwood*, 15 Cal.3d 791, 795 (1975). A pleading that states the violation of one primary right in two causes of action contravenes the rule against "splitting" a cause of action. *Wulfjen v. Dolton*, 24 Cal.2d 891, 894-895 (1944).

As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. *Slater v. Blackwood*, supra, 15 Cal.3d 791, 795. It must therefore be distinguished from the legal theory on which liability for that injury is

premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." (Ibid.) The primary right must also be distinguished from the remedy sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." *Wulfjen v. Dolton*, supra, 24 Cal.2d 891, 895-896.

The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement. Code Civ. Proc., § 430.10, subd. (c); *Wulfjen v. Dolton*, supra, 24 Cal.2d 891, 894-895; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata. *Panos v. Great Western Packing Co.*, 21 Cal.2d 636, 638-640 (1943). The latter application of the primary right theory appears to be most common: numerous cases hold that

when there is only one primary right an adverse judgment in the first suit is a bar even though the second suit is based on a different legal theory (e.g., *Johnson v. American Airlines, Inc.*, 157 Cal.App.3d 427, 432 (1984)) or seeks a different remedy (e.g., *Stafford v. Yerge*, 129 Cal.App.2d 165, 171 (1954).

Here, the primary rights involved in the two lawsuit are different. The first case, OCSC Case No. 30-2008-104237, involved a contract for a loan entered allegedly into by Plaintiff and Fremont. It involved forged loan documents and theft of loan proceeds by an unlicensed escrow company and mortgage broker. This action arises from a false credit report complained of in the present action did not arise until well after the Complaint was filed and Plaintiff was still attempting to resolve the matter informally with Defendant's counsel when the trial court improperly granted GMAC's summary judgment motion in the first action.

The primary right which Plaintiff seeks to vindicate are different between the first action and the present action. The first case involves a fraudulent loan while the second involves a false credit report on a non-existent loan. While there is to some extent an overlap of facts, to wit, the false credit report may be (but is not

really) related to the underlying fraudulent loan, the causes of action

here are two distinct claims such that even if Plaintiff loses the first

case in its entirety, the present case would survive because GMAC

either did not own the underlying fraudulent loan (and was merely a

servicer or defrauded the Court into believing such) and the amounts

GMAC reported Plaintiff owes are approximately 22 times the

amount actually owed on the fraudulent loan and because the debt

was not owed to GMAC. These claims are completely severable. In

fact, GMAC won its summary judgment motion on the grounds

Plaintiff did not owe them any money because they were merely

servicing the loan.

## VII. PLAINTIFF WAS NOT REQUIRED TO AMEND HIS COMPLAINT IN THE FIRST CASE TO ALLEGE A CAUSE OF ACTION WHICH AROSE AFTER THE COMPLAINT WAS FILED

In its Demurrer, Defendant and Respondent GMAC asserts,

that the doctrine of res judicata bars plaintiff's latest complaint as the

asserted claims could have been litigated against GMAC in the prior

matter. Citing *Busick v. Workmen's Comp Appeals. Bd.*, 7 Cal.3d 967

(1972). CTS: 25 - 26. This is nonsense.

"Res judicata is not a bar to claims that arise after the initial complaint is filed. These rights may be asserted in a supplemental pleading, but if such a pleading is not filed a plaintiff is not foreclosed from asserting the rights in a subsequent action. (Yager v. Yager (1936) 7 Cal.2d 213, 217 [60 P.2d 422].) The general rule that a judgment is conclusive as to matters that could have been litigated "does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated [citations]." *Kettelle v. Kettelle*, 110 Cal.App. 310, 312 (1930).

If a building contractor breaches a contract to perform work on your home and you sue for damages, you are not required to amend your complaint to allege a battery when he comes over to your home and hits you in the nose for suing him. You can bring a second lawsuit. This case is no different. GMAC did all sorts of bad acts in regard to processing the loan on Plaintiff's home. In fact, GMAC must have lied to the Court when it declared in two unlawful detainer actions that they were the owners of Appellant's home, and then declaring in the first case that they were never the owners of the property, that the Trustee's Sale inadvertently put title in their name and it was all a mistake. Appellant contends, and the facts will show,

that the false credit report complained of in the present action did not

arise until well after the Complaint and First Amended Complaint

were filed in the first case.  In fact, Plaintiff was still attempting to

resolve the matter informally with Defendant's counsel when the trial

court improperly granted GMAC's unserved summary judgment

motion.

## VIII.  PLAINTIFF CAN AMEND HIS COMPLAINT TO STATE CAUSES OF ACTION UNDER THE FAIR CREDIT REPORTING ACT AND UNDER CIVIL CODE § 1785.25, SUBDIVISION (a)

It is an abuse of discretion for the court to deny leave to amend

where there is any reasonable possibility that Plaintiff can state a

good cause of action. *Goodman v Kennedy*, 18 C3d 335, 349 (1976).

Code of Civil Procedure § 473's provisions "giving the courts the

power to permit amendments in furtherance of justice has received a

very liberal interpretation by the courts of this state; and that this

position is clearly in accord with the modern theories of code

pleading, which would permit amendment in the discretion of the

court *unless an attempt is made to present an entirely different set of

facts by way of the amendment*." *Chatten v. Martell*, 166 Cal. App.

2d 545 (1958).  In *Morgan v. Superior Court of Los Angeles County*,

172 Cal.App.2d 527, 530 (1959), the Court stated:

> "While a motion to permit an amendment to a pleading
> to be filed is one addressed to the discretion of the court,
> the exercise of this discretion must be sound and
> reasonable and not arbitrary or capricious. *(Richter v.
> Adams,* 43 Cal.App.2d 184, 187 [110 P.2d 486]; *Eckert
> V. Graham,* 131 Cal.App. 718, 721 [22 P.2d 44].) And it
> is a rare case in which "a court will be justified in
> refusing a party leave to amend his pleadings so that he
> may properly present his case." *(Guidery v. Green,* 95
> Cal. 630, 633 [30 P. 786]; *Marr v. Rhodes,* 131 Cal. 267,
> 270 [63 P. 364].) If the motion to amend is timely made
> and the granting of the motion will not prejudice the
> opposing party, it is error to refuse permission to amend
> and where the refusal also results in a party being
> deprived of the right to assert a meritorious cause of
> action or a meritorious defense, it is not only error but an
> abuse of discretion. *(Nelson v. Superior Court,* 97
> Cal.App.2d 78 [217 P.2d 119]; Estate of *Herbst,* 26
> Cal.App.2d 249 [79 P.2d 139]; *Norton v. Bassett,* 158
> Cal. 425, 427 [111 p. 253].)

"Great liberality is indulged in matters of amendment to the end

that lawsuits may be determined upon their merits." *Desny v. Wilder,*

46 Cal.2d 715, 751 (1956).

GMAC contends that Plaintiff is unable to state a cause of

action because the FCRA preempts common law causes of action for

tortious interference with credit and related common law actions.

(CTS: 27 at fn. 4.)  They further claim that Plaintiff has no cause of

action under FCRA because it creates private right. Appellant

concurs that he failed to state a cause of action in the Complaint for

tortious interference with credit. However, as set forth below,

Plaintiff has private rights to sue under both federal and state causes

of action.

**A.    Plaintiff Can Allege Facts Sufficient to State a Cause of Action on Which Relief May Be Granted under the FCRA**

In *Sainai v. Saltz*, 170 Cal. App. 4th 746 (2009), the Court

discussed a private party's right to bring a private cause of action for

violation of the FCRA as follows:

> The FCRA (15 U.S.C. § 1681 et seq.) was adopted by Congress to ensure accuracy and fairness in credit reporting and to protect the rights of individual consumers. (See 15 U.S.C. § 1681(b); Jones v. Federated Financial Reserve Corp. (6th Cir. 1998) 144 F.3d 961, 965; Pinner v. Schmidt (5th Cir. 1986) 805 F.2d 1258, 1261.) With respect to furnishers of information to consumer credit reporting agencies, like UDR and First Advantage Corporation, section 623 of the FCRA imposes two general requirements: the duty to provide accurate information (15 U.S.C. § 1681s-2(a)) and the duty to investigate the accuracy of reported information upon receiving notice of a dispute (15 U.S.C. § 1681s-2(b)). To trigger the latter set of duties, however, notice to the furnisher of information must be given pursuant to section 611(a)(2) of the FCRA (15 U.S.C. § 1681i(a)(2)), which requires a consumer credit reporting agency to reinvestigate the current accuracy of information in its files after being notified by the consumer of a dispute and to notify the person who

furnished it with the information about the dispute. That
is, to activate the duties imposed by section 623(b) of the
FCRA, notice of the dispute must come to the furnisher
of the information (UDR) from the credit reporting
agency (Experian), not directly from the consumer (Mr.
Sanai) himself. (Young v. Equifax Credit Information
Services, Inc. (5th Cir. 2002) 294 F.3d 631, 639–640.)
"This means that a furnisher of credit information ... has
no responsibility to investigate a credit dispute until after
it receives notice from a consumer reporting agency.
Under the statutory language notification from a
consumer is not enough." (Stafford v. Cross Country
Bank (W.D.Ky. 2003) 262 F.Supp.2d 776, 784; accord,
Rollins v. Peoples Gas Light and Coke Co. (N.D.Ill.
2005) 379 F.Supp.2d 964, 967; Elmore v. North Fork
Bancorporation, Inc. (S.D.N.Y. 2004) 325 F.Supp.2d
336, 340.)

United States Code section 1681s-2(a)(3)
provides, "If the completeness or accuracy of any
information furnished by any person to any consumer
reporting agency is disputed to such person by a
consumer, the person may not furnish the information to
any consumer reporting agency without notice that such
information is disputed by the consumer."

United States Code section 1681s-2(b) provides,
"(1) In general. [¶] After receiving notice pursuant to
section 611(a)(2) of a dispute with regard to the
completeness or accuracy of any information provided
by a person to a consumer reporting agency, the person
shall—[¶] (A) conduct an investigation with respect to
the disputed information; [¶] (B) review all relevant
information provided by the consumer reporting agency
pursuant to section 611(a)(2); [¶] (C) report the results of
the investigation to the consumer reporting agency; [¶]
(D) if the investigation finds that the information is
incomplete or inaccurate, report those results to all other
consumer reporting agencies to which the person

furnished the information and that compile and maintain files on consumers on a nationwide basis; and [¶] (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—[¶] (i) modify that item of information; [¶] (ii) delete that item of information; or [¶] (iii) permanently block the reporting of that item of information. [¶] (2) Deadline. [¶] A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) within which the consumer reporting agency is required to complete actions required by that section regarding that information."

.....

Although violations of section 623(a) of the FCRA may not be privately enforced, a private cause of action for consumers is generally recognized under section 623(b) of the FCRA (15 U.S.C. § 1681s-2(b)) against furnishers of credit information who fail to comply with the requirements of that provision. (See, e.g., Nelson v. Chase Manhattan Mortgage Corp., supra, 282 F.3d at pp. 1059–1060; Nelson v. Equifax Information Services, LLC (C.D.Cal. 2007) 522 F.Supp.2d 1222, 1229–1230; Pirouzian v. SLM Corp. (S.D.Cal. 2005) 396 F.Supp.2d 1124, 1127; Gordon v. Greenpoint Credit (S.D.Iowa 2003) 266 F.Supp.2d 1007, 1011–1012;

......

The allegation of notice sufficient to state a private cause of action under 15 United States Code section 1681s-2(b) has two aspects. First, [plaintiff] must allege

he informed [the credit reporting company] Experian of
his dispute. ... Second, he must allege Experian contacted
[the entity making the false credit report], as required by
15 United States Code section 1681i(a)(2), and requested
[the reporting entity] reinvestigate the credit information
it had provided.

.......

Because Plaintiff requested Experian contact GMAC for a

correction of the false report and GMAC failed to correct it, Plaintiff

can state facts sufficient to state a cause of action under the FCRA.

**B.    Civ. Code § 1785.25(a) is Not Subject to Preemption under
the FCRA**

The FCRA contains two preemption sections affecting state

law claims that apply to persons who furnish information under the

FCRA. First, 15 United States Code section 1681t(a) provides only

state law claims inconsistent with the express provisions of the FCRA

are preempted. "Except as provided in subsections (b) and (c) of this

section, this subchapter does not annul, alter, affect, or exempt any

person subject to the provisions of this subchapter from complying

with the laws of any State with respect to the collection, distribution,

or use of any information on consumers, or for the prevention or

mitigation of identity theft, except to the extent that those laws are

inconsistent with any provision of this subchapter, and then only to

the extent of the inconsistency." (15 U.S.C. § 1681t(a).) Thus, there is no implied or field preemption: "Congress did not enact the FCRA with the goal of vitiating all state laws, but only those that are inconsistent with the federal law." *Lin v. Universal Card Services Corp.*, 238 F.Supp.2d 1147, 1151 (N.D.Cal. 2002)

Notwithstanding this general language preserving state laws that do not conflict with the FCRA, however, in 1996 Congress amended the FCRA to strictly limit the availability of consumer's state remedies against furnishers of credit information. As amended, 15 United States Code section 1681t(b) provides, "No requirement or prohibition may be imposed under the laws of any State—[¶] (1) with respect to any subject matter regulated under—[¶] ... [¶] (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—[¶] (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); [20] [¶] (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on the date of enactment (September 30, 1996) ... ."

Section 1785.25, subdivision (a), involves the obligations of the furnishers of credit information to provide accurate information to credit reporting agencies.

Again, the information provided by GMAC is false. It continues to provide false information to Experian and other Credit Reporting Agencies. Accordingly, Plaintiff can state a cause of action under the California Credit Reporting Agencies Act.

---

## IX. CONCLUSION

Respondent GMAC relies on the doctrine of res judicata in its malicious attempt to continue to defame Appellant's credit in violation of the FCRA and California Civ. Code § 1785.25(a). What was determined by the trial court in the first action is that Plaintiff/Appellant does not owe any debt to GMAC. This is res judicata and is based on GMAC's own summary judgment motion in the first action. Each request by Appellant to credit reporting agencies to investigate and correct GMAC's false publication that Appellant owes it $16 million and which GMAC refuses to correct is a new violation of the FCRA and should give rise to a new cause of action. Yet, the trial court, once without jurisdiction, and now in this

action, has refused to act.  Plaintiff was not required to amend his first action against GMAC to allege these causes of action because the did not accrue until over a year after the first action was filed.  Nor does Appellant seek to relitigate the same causes of action as in the first case, to wit:  usury, theft of proceeds of a home loan by an unlicensed and unbonded escrow company, fraud in the execution of the loan, improper handling of payments, bureaucratic misfeasance by GMAC in servicing the fraudulent loan on behalf of its principal, and wrongful foreclosure.  Accordingly, this Court should reverse and remand.

Dated:  November 28, 2011

ROBERT SWEETING,
in pro per

## CERTIFICATION OF WORD COUNT

Pursuant to California Rules of Court, rule 8.504(d), petitioner provides the instant certificate certifying that the number of words contained in this brief (not including cover pages, this certificate or tables) as indicated by counsel's word processor is 6,110 words.

ROBERT SWEETING

On November 29, 2011, served the following entitled document(s):

**Opening Brief on Appeal**

I served said documents on GMAC by placing a true copy thereof in a sealed envelope addressed as set out below or as set out in the attached Service List incorporated herein by reference.

Severson & Werson
19100 Von karman Ave., Suite 700
Irvine, CA 92612

**[ x ] BY MAIL (C.C.P. §§ 1012, 1013, (a), 1013a)**

[ ]   I deposited such sealed envelope(s) with postage thereon fully prepaid in the mail at Huntington Beach, California.

[ ]   I placed the sealed envelope for collection and mailing following ordinary business practices. I am readily familiar with the firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service. Under the ordinary course of business, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at La Habra, California.

**[ ] BY PERSONAL SERVICE (C.C.P. § 1011)**

[ ]   I caused to be personally delivered the above mentioned to the addresses set out above on this date.

[ ]   By Special Messenger Service with specific instructions for same day delivery to the addresses set out above on this date.

[X] (State)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[ ] (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 29, 2011, in Huntington Beach, California

JASON P. GOLD

# RE: Case G045198, Submitted 11-29-2011 01:35 PM

From: **Ho, Evelyn** (Evelyn.Ho@jud.ca.gov)
Sent: Tue 11/29/11 1:39 PM
To:    powerbrakebob@msn.com (powerbrakebob@msn.com)

The following brief has been received:

The following Appellate Brief has been submitted.

Case Number: G045198

Case Name: Sweeting v GMAC Mortgage, LLC

Related Case Information: G043356, G043281,

Name of Party: Robert Sweeting

Type of Brief: Appellant's Opening Brief

Name of Attorney or Self-Represented Party Who Prepared Brief: Robert Sweeting