# DOCUMENT INDEX

Donald Sweeting
v.
Jason Kishaba, et al.
**First Action: (OCSC Case No. 30-2008-104237)**

Donald Sweeting
v.
GMAC Mortgage, LLC
**Second Action: (OCSC Case No. 30-2010-00410079)**

Appeals/Related Appeals:
G043281
G043924
G045198

| NO. | DESCRPTION |
|---|---|
| A1 | Verified First Amended Complaint |
| A2 | Verified Second Amended Complaint |
| B | December 3, 2009 Dismissal Judgment |
| C | June 28, 2010 Appeal Dismissal Order |
| D | Remittitur issued by the California Appellate Court on July 20, 2010 |
| E | August 27, 2010 California Appellate Court Denial of Claimant's Motion to Recall the Remittitur |
| F | GMAC Mortgage's Demurrer to the Second Amended Complaint |
| G | GMAC Mortgage's Motion to Strike the Second Amended Complaint |
| H | September 15, 2010 Court Order Granting GMAC Mortgage's Motion to Strike Without Leave to Amend |
| I | 2010 Complaint in *Sweeting v. GMAC Mortgage, LLC* – Case No. 30-2010-00410079 |
| J | February 7, 2011, GMAC Mortgage's Demurrer to the 2010 Complaint |
| K | Order Sustaining GMAC Mortgage's Demurrer to the 2010 Complaint Without Leave to Amend |
| L | Court Order Dismissing the Second Sweeting Action with Prejudice/Minute Order |
| M | Briefing on Second Appeal |

# EXHIBIT "A1"

```
Paul J. Carter, Esq. (SBN #189780)
Richard J. Cowles, Esq. (SBN #236785)
BERGKVIST, BERGKVIST & CARTER, LLP
400 Oceangate, Suite 800
Long Beach, California 90802
Telephone: (562) 435-1426
Facsimile: (562) 495-4255

Attorneys for Plaintiff
ROBERT SWEETING
```

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAR 24 2008

ALAN SLATER, Clerk of the Cour
BY_____A. HERRO_____, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| ROBERT SWEETING,<br><br>          Plaintiff,<br><br>     v.<br><br>JASON KISHABA, an individual; SANDRA JAQUEZ, an individual, PETER SAUERACKER, an individual, INTERNATIONAL MORTGAGE, INC.; CAITLIN CHEN, an individual; FREMONT INVESTMENT AND LOAN, INC.; GMAC MORTGAGE LLC.; all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto and DOES 1 through 25, inclusive,<br><br>          Defendants. | Case No. 30-2008-104237<br><br>VERIFIED FIRST AMENDED COMPLAINT FOR:<br><br>1. NEGLIGENCE;<br>2. NEGLIGENT MISREPRESENTATION;<br>3. FRAUD/INTENTIONAL MISREPRESENTATION;<br>4. CONSPIRACY TO COMMIT FRAUD;<br>5. CANCELLATION OF WRITTEN INSTRUMENT;<br>6. TEMPORARY RESTRAINING ORDER/PRELIMINARY AND PERMANENT INJUNCTION;<br>7. BREACH OF FIDUCIARY DUTY;<br>8. QUIET TITLE;<br>9. BREACH OF CONTRACT;<br>10. VIOLATION OF BUSINESS & PROFESSIONS CODE §17200;<br>11. BREACH OF GOODFAITH AND FAIR DEALING;<br>12. VIOLATION OF TRUTH AND LENDING ACT; and<br>13. CONVERSION. |

Plaintiff, ROBERT SWEETING, (hereinafter alternatively "Plaintiff/SWEETING") alleges as follows:

VERIFIED FIRST AMENDED COMPLAINT - 1



## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1. Defendant, JASON KISHABA, (hereinafter alternatively "Defendant/KISHABA") is an individual residing in Orange County, California.

2. Defendant, SANDRA JAQUEZ, (hereinafter alternatively "Defendant/JAQUEZ") is an individual residing in Orange County, California.

3. Defendant, PETER SAUERACKER, (hereinafter alternatively "Defendant/SAUERACKER") is an individual residing in Orange County, California.

4. Defendant, INTERNATIONAL MORTGAGE, INC. (hereinafter alternatively "Defendant/INTERNATIONAL") is a business entity, form unknown, conducting business within the County of Orange, State of California.

5. Defendant, CAITLIN CHEN, (hereinafter alternatively "Defendant/CHEN") is an individual residing in Orange County, California.

6. Defendant, FREMONT INVESTMENT AND LOAN, INC. (hereinafter alternatively "Defendant/FREMONT") is a business entity, form unknown, conducting business within the County of Orange, State of California.

7. Defendant, GMAC MORTGAGE LLC., (hereinafter alternatively "Defendant/GMAC") is a business entity, form unknown, conducting business within the County of Orange, State of California.

8.  Plaintiff is informed, believes, and thereon alleges that INTERNATIONAL consisted of a mortgage brokerage and escrow company that handled the plaintiff's refinance loan and escrow related to the loan.

9.  Plaintiff is informed, believes, and thereon alleges that SAUERACKER was an employee of INTERNATIONAL who was responsible for plaintiff's refinance loan.

10. Plaintiff is informed, believes, and thereon alleges that FREMONT was the lender on his refinance loan transaction.

11. Plaintiff is informed, believes, and thereon alleges that JAQUEZ was an employee of INTERNATIONAL who was responsible for plaintiff's escrow.

12. Plaintiff is informed, believes, and thereon alleges that CHEN was the broker of record for INTERNATIONAL during the pendency of plaintiff's refinance loan and escrow.

13. Plaintiff is unaware of the true names and capacities of defendants sued herein as Does 1 through 25, inclusive, and therefore sues such defendants under the provisions of Section 474 of the *California Code of Civil Procedure*.

14. Plaintiff is informed, believes, and thereon alleges, that at all times relevant hereto, defendants, and each of them, were agents, servants, and employees of each of the remaining co-defendants, and in doing the things herein alleged, were acting within the purpose and scope of such agency, service and

VERIFIED FIRST AMENDED COMPLAINT - 3

employment, with the permission, consent, and knowledge of each of the remaining co-defendants.

15. The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto" (hereinafter "UNKNOWN DEFENDANTS") are unknown to plaintiff. These UNKNOWN DEFENDANTS, and each of them, claim some right, title, estate, lien, or interest in the hereinafter-described property adverse to plaintiff's title and their claims, and each of them, constitute a cloud on plaintiff's title to that property.

16. Plaintiff is ignorant of the true names and capacity of defendants sued in this complaint as DOES 1 through 25, inclusive, and therefore sues these defendants by these fictitious names. Plaintiff will amend this complaint once the true names and capacities are ascertained. The Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that the plaintiff's damages as herein alleged were proximately caused by their conduct. Plaintiff is informed, believes, and thereon alleges that each of these fictitiously named defendants claim some right, title, estate, lien or interest in the hereinafter-described property

VERIFIED FIRST AMENDED COMPLAINT - 4

adverse to plaintiff's title, and their claims, and each of them, constitute a cloud on plaintiff's title to that property.

17. At all times relevant hereto, the defendants KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL, CHEN, FREMONT, GMAC, and Does 1 to 25 acting alone or as agents, or as employees, affiliates, or "nominees", or in concert with one another or other defendants, in the ordinary course of their business, regularly extend or offered to extend consumer credit, for which a finance charge is imposed or which, by written agreement, is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable, making defendants a creditor within the meaning of TILA, 15 U.S.C. §1602(f) and Regulation Z §226.2(a)(17) or an assignee within the meaning of 15 U.S.C. §1641.

18. Defendant GMAC, as "nominee for the lender" or any other person or entity holds a security interest in the plaintiff's home located at 16077 Crete Lane, Huntington Beach, California 92649.

19. The real property that is the subject matter of this litigation is plaintiff's home of twenty-two (22) years located at 16077 Crete Lane, Huntington Beach, California 92649 and legally described as follows:

PARCEL 1

LOT 30 OF TRACT NO. 9924, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF

CALIFORNIA, AS PER MAP RECORDED IN BOOK 431 PAGES 22 AND 23 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2

AN EASEMENT FOR USE AND ENJOYMENT OF THE COMMON AREA, BEING LOT 46 OF SAID TRACT NO. 9924, REFERRED TO IN PARCEL 1 ABOVE, AS SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED IN BOOK 12914 PAGE 929, ET SEQ., OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

APN# 178-741-30

(hereinafter "SUBJECT PROPERTY").

20. On or about May 2006, plaintiff began discussing refinancing the SUBJECT PROPERTY with one of his business clients, Mr. Robbie De Capua who works for Ramsey Group Financial Services.

21. Mr. De Capua was unable to complete a refinance of the subject property, but brought plaintiff KISHABA as a partner who worked for M&M and Associates Mortgage Brokers to complete the loan.

22. Mr. De Capua and KISHABA promised plaintiff to refinance the SUBJECT PROPERTY at a fixed annual percentage rate of 7.5%, with a one-half point broker fee, a one-year prepayment penalty, and one hundred five thousand dollars ($105,000) cash out.

23. Beginning approximately in June 2006, KISHABA would promise plaintiff that the refinance of the SUBJECT PROPERTY was going to be completed that week, but he would come up with an excuse for the failure to close and promise that it would close any day.

24. Based on KISHABA'S representations that the loan would close any day plaintiff stopped making his regular mortgage payments.

25. In or about November 2006, KISHABA informed plaintiff that KISHABA had changed employer and that he now worked for INTERNATIONAL. KISHABA also informed plaintiff that he would place the refinance of the SUBJECT PROPERTY with INTERNATIONAL as the mortgage broker.

26. Throughout the time that plaintiff dealt with KISHABA regarding the refinance of the SUBJECT PROPERTY, KISHABA continually provided plaintiff documents that contradicted the terms promised by KISHABA.

27. In fact, KISHABA had three separate loan document signings for plaintiff which occurred on or about the beginning of November 2006, December 5, 2006, and December 8, 2006.

28. In early November 2006, plaintiff was in Akron, Ohio. KISHABA sent a notary public to plaintiff with loan documents to sign. At this point, plaintiff was placed in a severe financial bind by KISHABA'S prior representations that the loan would close any day. When plaintiff looked over the documents that the notary

VERIFIED FIRST AMENDED COMPLAINT - 7

brought, he noticed that the terms were not what KISHABA had promised and that there was a two-year prepayment penalty instead of the one-year prepayment penalty promised.

29. Plaintiff called KISHABA who said to just sign the documents for the notary and that KISHABA would fix the problems later. Plaintiff interlineated certain pages wherein he thought the terms were not as promised and simply unacceptable. Plaintiff handed the documents to the notary.

30. On or about December 5 2006, KISHABA sent another notary to plaintiff's business. Again, the documents included hidden terms that were contrary to KISHABA'S promised terms including a two-year prepayment penalty. Plaintiff refused to sign the page containing a two-year prepayment penalty, but signed the remaining pages.

31. On or about November 22, 2006, FREMONT sent plaintiff a letter and good faith estimate indicating an interest rate of 9.8% and broker fees of $24,155. (First page [Second page missing] of FREMONT Letter and Good Faith Estimate are attached hereto as "Exhibit A" and incorporated by reference.)

32. On or about November 30, 2006, INTERNATIONAL created a Borrower's Estimated Closing Costs document that indicated plaintiff was to receive $69,192.29 cash out on the refinance. (Borrower's Estimated Closing Costs drafted by INTERNATIONAL and dated November 30, 2006 is attached hereto as "Exhibit B" and incorporated by reference.)

VERIFIED FIRST AMENDED COMPLAINT - 8



33. On or about December 5, 2006, INTERNATIONAL created another Borrower's Estimated Closing Costs document that indicated plaintiff was to receive $65,605.36 cash out on the refinance. (Borrower's Estimated Closing Costs drafted by INTERNATIONAL and dated December 5, 2006 [First page shows letterhead that is cut off of second page] is attached hereto as "Exhibit C" and incorporated by reference.)

34. On or about December 8, 2006, KISHABA came to plaintiff's home with a notary to sign documents. At this point, KISHABA informed plaintiff that because of plaintiff's bad credit, which was directly related to the extended loan process and KISHABA'S promises that the loan was closing "any day," plaintiff would only receive $65,000 cash out.

35. Also on or about December 8, 2006, KISHABA had plaintiff sign a Form 1003 Uniform Residential Loan Application. (1003 Application Dated December 8, 2006 is attached hereto as "Exhibit D" and incorporated by reference.)

36. Plaintiff also signed the Deed of Trust securing the loan with the SUBJECT PROPERTY on December 8, 2006, which necessarily precluded the required loan disclosures by defendants.

37. On or about December 8, 2006, KISHABA promised plaintiff that the February mortgage payment would be paid by INTERNATIONAL from the loan proceeds. (See Amended Escrow

VERIFIED FIRST AMENDED COMPLAINT - 9

Instructions dated December 20, 2006 attached hereto as "Exhibit E" and incorporated by reference.)

38. Due to his reliance on KISHABA'S promise of a loan closing "any day" beginning in June 2006, plaintiff accumulated significant penalties, late fees, and suffered substantial damage to his credit.

39. Because of the financial condition that KISHABA placed plaintiff in, plaintiff signed the loan documents on December 8, 2006, but did not see or sign any document indicating that a two-year prepayment penalty would apply.

40. Each time that plaintiff signed documents KISHABA failed to give a copy to plaintiff despite plaintiff's request for copies, but promised that plaintiff would receive copies by mail.

41. At no time during any of the document signings did plaintiff receive any documents regarding the loan. Further, plaintiff received no proper documentation regarding the mandatory disclosures required by the Federal Truth and Lending law including a three-day right to rescind this transaction.

42. Plaintiff eventually received blank notices of right to cancel; however, there was no date indicating when the right to cancel accrued of the time within which to rescind.

43. Plaintiff is informed, believes, and thereon alleges that KISHABA used documents from all three document signings to complete the final loan submission package.

VERIFIED FIRST AMENDED COMPLAINT - 10

44. KISHABA mislead, lied, and lead a campaign of confusion ever altering annual percentage rates, broker points, fees, and prepayment penalties.

45. On or about December 20, 2006, JAQUEZ on behalf of INTERNATIONAL sent plaintiff a document indicating that the escrow was closed as of December 20, 2006, and that also indicates plaintiff would be receiving a wire transfer in the amount of $25,128.44. (See Letter dated December 20, 2006 attached hereto as "Exhibit F" and incorporated by reference.)

46. On or about December 20, 2006, FREMONT recorded a Deed of Trust dated December 8, 2006 securing a loan against the SUBJECT PROPERTY in the amount of $773,500. (See Deed of Trust recorded December 20, 2006 attached hereto as "Exhibit G" and incorporated by reference.)

47. On or about January 1, 2007, INTERNATIONAL faxed a HUD-1 Statement indicating that plaintiff's cash out would be $67,906.85. (See HUD-1 faxed January 4, 2007 attached hereto as "Exhibit H" and incorporated by reference.)

48. Despite the multiple promises and various amounts of cash out listed, plaintiff never received any documentation or information that he would receive less than $65,605.36 cash from the refinance transaction.

49. However, INTERNATIONAL sent only one wire to plaintiff in the amount of $25,128.44. Plaintiff did not receive

VERIFIED FIRST AMENDED COMPLAINT - 11

1  any other payment from INTERNATIONAL or anyone in relation to the
2  refinance.
3      50. Thus, plaintiff's cash had gone down from the
4  original $105,000 promised by KISHABA to $65,605.36 listed in
5  loan and HUD-1 statements to actually receiving $25,128.44.
6      51. Plaintiff called INTERNATIONAL to determine when he
7  was going to receive the remaining $40,476.92. INTERNATIONAL
8  employees refused to tell plaintiff what happened to the
9  remaining funds or how they had applied those funds.
10 INTERNATIONAL further refused to provide plaintiff with any
11 further documents, deeds, notes, loan disclosures, escrow
12 documents, or HUD-1 Statements.
13     52. In or about March 2007, FREMONT contacted plaintiff
14 to inform him that the February 2007 payment was not paid, which
15 KISHABA had promised that INTERNATIONAL would pay from loan
16 proceeds. (See Exhibit E.)
17     53. According to FREMONT, no payment was made for the
18 loan payment due on February 1, 2007.
19     54. Plaintiff began trying to work with FREMONT to
20 discover the status of the missing $40,476.92 and the missing
21 February 1, 2007 payment.
22     55. INTERNATIONAL, KISHABA, CHEN, JAQUEZ, and SAUERACKER
23 refused to communicate with plaintiff or offer any explanations
24 or solutions as to the missing payment or funds.

VERIFIED FIRST AMENDED COMPLAINT - 12

56. Plaintiff paid over $17,000 to FREMONT; however, FREMONT failed to properly apply and credit the payments.

57. On July 30, 2007, FREMONT sold plaintiff's loan to GMAC. (See letter from FREMONT dated July 30, 2007 attached hereto as "Exhibit I" and incorporated by reference.)

58. Plaintiff expected that he would receive a payment booklet from GMAC and waited to begin making the payments until he received the payment booklet.

59. Due to the actions of defendants in relation to the funds that were never given to plaintiff and FREMONT'S misapplication of plaintiff's payments, plaintiff was substantially behind in payments by August 2008.

60. Plaintiff attempted on several occasions to have GMAC investigate the missing funds, misapplied payments, and to work out forbearance plans.

61. GMAC failed to properly account for and apply funds plaintiff paid to FREMONT.

62. GMAC failed to properly account for and apply funds plaintiff paid to GMAC.

63. On or about October 23, 2007, GMAC sent plaintiff a Notice of Default and caused the same to be recorded with the Orange County Recorder's Office. (See Notice of Default dated October 23, 2007 attached hereto as "Exhibit J" and incorporated by reference.)

VERIFIED FIRST AMENDED COMPLAINT - 13