Fax Server [illegible]/2007 2:27:40 PM PAGE 3 Fax Server

TO:Robert Sweeting COMPANY:

Loan # [illegible]

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 5,197.00 | $ [illegible] |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 100.00 |
| Dividends/Interest | | | | Real Estate Taxes | | [illegible] |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | [illegible] | | [illegible] | Homeowner Assn. Dues | | 210.00 |
| | | | | Other: | | |
| Total | $ [illegible] | $ | $ [illegible] | Total | $ [illegible] | $ [illegible] |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by: | $ |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union: BANK OF THE WEST | |
| Acct. no. | $ [illegible] |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Name and address of Bank, S&L, or Credit Union | |
| Acct. no. | $ |
| Stocks & Bonds (Company name/number & description) | $ |
| Life insurance net cash value | $ |
| Face amount: $ | |
| Subtotal Liquid Assets | $ [illegible] |
| Real estate owned (enter market value from schedule of real estate owned) | $ [illegible] |
| Vested interest in retirement fund | $ |
| Net worth of business(es) owned (attach financial statement) | $ |
| Automobiles owned (make and year) | $ |
| Other Assets (itemize): FURNITURE | $ [illegible] |
| Total Assets a. | $ [illegible] |

Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company: Mortgage * [illegible]; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Revolving * [illegible]; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Revolving * [illegible]; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Installment * [illegible] LEASING; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Revolving * [illegible]; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Open End * [illegible] CALIFORNIA [illegible]; Acct. no. [illegible] | $ Payment/Months ** [illegible] | $ ** [illegible] |
| Name and address of Company: Revolving [illegible]; Acct. no. [illegible] | $ Payment/Months [illegible] | $ [illegible] |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Job-Related Expense (child care, union dues, etc.) | $ 0.00 | |
| Total Monthly Payments | $ [illegible] | |
| Net Worth (a minus b) $ [illegible] | Total Liabilities b. | $ [illegible] |

Borrower's Signature: X [signature] Date

Co-Borrower's Signature: X Date

* Payoff Is Required. ** Not Included in Total.

Fax Server /2007 1:22:35 PM PAGE 4 Fax Server

TO:Robert Sweeting COMPANY:

Loan # [illegible]

## VI. ASSETS AND LIABILITIES (cont'd)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 16077 [illegible] LANE Huntington Beach, CA 92649-0000 | | | $ 957,000.00 | $ 640,164.00 | $ 0.00 | $ 5,187.00 | $ 671.00 | $ 0.00 |
| | | Totals | $ 957,000.00 | $ 640,164.00 | $ 0.00 | $ 5,187.00 | $ 671.00 | $ 0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name | Creditor Name | Account Number

## VII. DETAILS OF TRANSACTION

| Item | Amount |
|---|---|
| a. Purchase price | $ 0.00 |
| b. Alterations, improvements, repairs | 0.00 |
| c. Land (if acquired separately) | 0.00 |
| d. Refinance (incl. debts to be paid off) | 681,310.11 |
| e. Estimated prepaid items | 6,578.61 |
| f. Estimated closing costs | 19,638.00 |
| g. PMI, MIP, Funding Fee | 0.00 |
| h. Discount (if Borrower will pay) | 0.00 |
| i. Total costs (add items a through h) | 707,626.61 |
| j. Subordinate financing | 0.00 |
| k. Borrower's closing costs paid by Seller | 0.00 |
| l. Other Credits (explain) | 0.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 771,100.00 |
| n. PMI, MIP, Funding Fee financed | 0.00 |
| o. Loan amount (add m & n) | 771,100.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (63,473.39) |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. [illegible] | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? [illegible] | | X | | |
| [illegible] | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

[illegible]

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X [signature] | 12/8/06 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

[illegible]

| | BORROWER | CO-BORROWER |
|---|---|---|
| | ☐ I do not wish to furnish this information | ☐ I do not wish to furnish this information |
| Ethnicity: | ☐ Hispanic or Latino ☒ Not Hispanic or Latino | ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White | ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: | ☐ Female ☒ Male | ☐ Female ☐ Male |

| To be Completed by Interviewer | | |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☒ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) [handwritten, illegible]<br>Interviewer's Signature [signature] Date<br>Interviewer's Phone Number (incl. area code) 818-956-[illegible] | Name and Address of Interviewer's Employer<br>INTERNATIONAL MORTGAGE COMPANY [illegible]<br>[illegible] N. BRAND BLVD #[illegible]<br>GLENDALE, CA 91203<br>Application date: 11/22/2006 |

Freddie Mac Form 65 Rev. 01/04 Fannie Mae Form 1003 Rev. 01/04

Loan # [illegible]

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: ROBERT SWEETING | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: [illegible]17479 |

Under California Civil Code 1812.30(j) "Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account."

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X Robert Sweeting | 12/8/06 | X | |

Freddie Mac Form 65/Rev. 7/05 Fannie Mae Form 1003/Rev. 7/05



INTERNATIONAL MORTGAGE COMPANY INC.

**ESCROW DIVISION**
450 North Brand Blvd., Suite 130 • Glendale, CA 91203
Tel: (818) 956-4600 • Facsimile: (818) 956-4631
California Department of Real Estate - Real Estate Broker
DRE# 01388848

Sandra Jaquez
Escrow Manager

Date: December 20, 2006
Escrow No.: 004679

AMENDED ESCROW INSTRUCTIONS

Property Address: 16077 Crete Lane Huntington Beach, CA 92649

THE ABOVE NUMBERED ESCROW IS HEREBY AMENDED AND/OR SUPPLEMENTED AS FOLLOWS:

1. I Robert Sweeting authorize International Mortgage Company Escrow Division Inc. to hold proceeds in the amount of $6,934.37 for the First Payment of my Mortgage this payment will be due on 02/01/07 and it need to be mailed to Fremont Investment & Loan, P.O. Box 19030, San Bernardino, CA. 92423-9030 with Loan NO: 30000000857459.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME.

______________________________
Robert Sweeting

850 4620

EXHIBIT E



INTERNATIONAL MORTGAGE COMPANY INC.

**ESCROW DIVISION**
450 North Brand Blvd., Suite 130 • Glendale, CA 91203
Tel: (818) 956-4600 • Facsimile: (818) 956-4631
California Department of Real Estate - Real Estate Broker
DRE# 01368848

Mr. Robert Sweeting
16077 Crete Lane
Huntington Beach, CA. 92649

Date: December 20, 2006
Escrow No. 004679
Re: 16077 Crete Lane
Huntington Beach, CA 92649

Dear Mr. Sweeting:

The above referenced escrow closed on December 20, 2006. In connection therewith, we are enclosing the following documents:

Wire in the amount of $25,128.44
Closing/Settlement Statement. PLEASE RETAIN FOR INCOME TAX PURPOSES.
Insurance Policy/Certificate
Check in the amount of $573.00 for Verizon Account
Check in the amount of $2,329.00 for AMEX
Check in the amount of $906.00 for HSBC
Check in the amount of $1,245.00 for HSBC

Your escrow will be held by our office for a period of five years from the close of escrow. It has been a pleasure to have handled your escrow, and we trust we may be of service to you in the future.

Sincerely,
International Mortgage Company, Inc. Escrow Division

Sandra Jaquez
Escrow Manager

EXHIBIT F




Documents provi · DataTree LLC via its proprietary imaging and delivery system. Copyright 20 ights reserved

**CHICAGO TITLE**

Recording Requested By:

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder
75.00
2006000850787 08:00am 12/20/06
103 92 D11 24
0.00 0.00 0.00 0.00 69.00 0.00 0.00 0.00

Return To:

Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA 92834-34078

Prepared By:
Barbara Licon

3000000857459

[Space Above This Line For Recording Data]

6064111096 A33

# DEED OF TRUST

MIN 1001944-3000857459-5

178-741-30

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated December 08, 2006, together with all Riders to this document.

**(B) "Borrower"** is ROBERT SWEETING, an unmarried man

Borrower's address is 16077 CRETE LANE Huntington Beach, CA 92649. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is Fremont Investment & Loan

Lender is a CORPORATION organized and existing under the laws of CALIFORNIA

**EXHIBIT G**


 
Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright ... All rights reserved.

Lender's address is 2727 East Imperial Highway, Brea, CA 92821

(D) "Trustee" is Fremont General Credit Corporation, A California Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated December 08, 2006. The Note states that Borrower owes Lender Seven Hundred Seventy-Three Thousand Five Hundred and 0/100ths Dollars (U.S. $773,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than January 01, 2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: RS



(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Orange [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF as Exhibit "A"

Parcel ID Number: which currently has the address of 16077 CRETE LANE [Street]
Huntington Beach [City], California 92649 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

Initials: RS

Documents prov DataTree LLC via it's proprietary imaging and delivery system. Copyright 200 ights reserved.

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: RS

 

Document provi... DataTree LLC via its proprietary imaging and delivery system. Copyright ... rights reserved.

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: