Documents provi... DataTree LLC via its proprietary imaging and delivery system. Copyrigh... All reserved.

**GOVERNMENT CODE 27361.7**

I certify under penalty of perjury that the Notary Seal on the document to which this Statement is attached reads as follows:

NAME OF THE NOTARY: Levi Gorin

DATE COMMISSION EXPIRES: 4-30-2009

COUNTY WHERE BOND IS FILED: Los Angeles

COMMISSION NUMBER: 1574751 VENDOR#: ANG1

I certify under penalty of perjury and the laws of the State of California that the illegible portion of this document to which this statement is attached reads as follows:

* Personally know to me (or proved to me on the basis of satisfactory evidence) to be the person(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s)acted, executed the instrument.

PLACE OF EXECUTION: LOS ANGELES DATE: 12-20-08

SIGNATURE: [signature]

Documents provi... DataTree LLC via its proprietary imaging and delivery system. Copyright ... rights reserved.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 08th day of December, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Fremont Investment & Loan

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 16077 CRETE LANE, Huntington Beach, CA 92649

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common are Covenants. Conditions. and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as LAS FUENTES

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

Document from DataTree LLC via its proprietary imaging and delivery system. Copyright ... rights reserved.



**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: RS

Documents provi[illegible] DataTrac LLC via its proprietary imaging and delivery system. Copyright [illegible] rights reserved.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

Robert Sweeting (Seal)
ROBERT SWEETING -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower



Documents provid... DataTree LLC via its proprietary imaging and delivery system. Copyright 200... rights reserved

# ADJUSTABLE RATE AND BALLOON PAYMENT RIDER

## (LIBOR Six-Month Index (As Published in The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE AND BALLOON PAYMENT RIDER (the "Security Instrument Rider") is made this 08th day of December, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Fremont Investment & Loan ("Lender") of the same date and covering the property described in the Security Instrument and located at:

16077 CRETE LANE, Huntington Beach, CA 92649
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY. THE NOTE IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE NOTE, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE NOTE AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER NAMED IN THE NOTE, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THE NOTE AT MATURITY, BORROWER MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN ARE PAID ON THE NOTE. FURTHER, IF BORROWER REFINANCES, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

Section 2 of the Note provides for an initial interest rate of 10.350 % and states that the interest rate of the Note will change in accordance with Section 4 of the Note. Borrower has executed a Balloon Payment Rider to Note (the "Note Rider") dated the same date as this Security Instrument Rider. Among other things, the Note Rider modifies, amends, and supplements Sections 3 and 4 of the Note to read, in their entirety, as follows:

Documents provi... DataTree LLC via its proprietary imaging and delivery system. Copyright ... rights reserved

"3. **PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on 02/01/2007 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On January 01, 2037 (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 6,781.35 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of January, 2009 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 990/1000 percentage point(s) ( 6.990 %) (the "Margin")to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on 1/1/2047 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Documents prov[illegible] y DataTree LLC via its proprietary imaging and delivery system. Copyright 20[illegible] rights reserved

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 13.350 % or less than 10.350 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 1.500 percentage point(s) ( One and 500/1000 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 16.350 % and will never be less than 10.350 %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. EFFECT OF NOTE RIDER**
The Note Rider contains the following provisions:

"This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect."

**C. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. **Until Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument shall be in effect as follows:**

"**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

2. **After Borrower's initial interest rate changes under the terms described in Section A above, Uniform Covenant 18 of the Security Instrument described in Section C.1. above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall then be modified, amended and supplemented to read, in its entirety, as follows:**




Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright ... rights reserved

"**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate And Balloon Payment Rider.

| | |
|---|---|
| Robert Sweeting (Seal)<br>ROBERT SWEETING - Borrower | _______________ (Seal)<br>- Borrower |
| _______________ (Seal)<br>- Borrower | _______________ (Seal)<br>- Borrower |
| _______________ (Seal)<br>- Borrower | _______________ (Seal)<br>- Borrower |
| _______________ (Seal)<br>- Borrower | _______________ (Seal)<br>- Borrower |



EXHIBIT "A"

**LEGAL DESCRIPTION**

PARCEL 1:

LOT 30 OF TRACT NO. 9924, IN THE CITY OF HUNTINGTON BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 431 PAGES 22 AND 23 OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

AN EASEMENT FOR USE AND ENJOYMENT OF THE COMMON AREA, BEING LOT 46 OF SAID TRACT NO. 9924, REFERRED TO IN PARCEL 1 ABOVE, AS SET FORTH IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED IN BOOK 12914 PAGE 929, ET SEQ., OF OFFICIAL RECORDS OF ORANGE COUNTY, CALIFORNIA.

Fax Server 2007 1:32:49 PM PAGE 18/0 Fax Server

TO:Robert Sweeting COMPANY:

01/04/2007 11:04 FAX INC INC. ESCROW DIVISION 001

714) 4[illegible]-7124

A. SETTLEMENT STATEMENT U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

FINAL

| B. Type of Loan | | | OMB No. 2502-0265 |
|---|---|---|---|
| 1. FHA 2. FmHA 3. Conv. Unins. 4. VA 5. Conv. Ins. | 6. File Number 004879 | 7. Loan Number 2000000857459 | Mortgage Insurance Number |

C. Note: THIS NOTE IS FURNISHED TO GIVE YOU A STATEMENT OF THE ACTUAL SETTLEMENT COSTS. AMOUNTS PAID TO AND BY THE SETTLEMENT AGENT ARE SHOWN. ITEMS MARKED "(P.O.C.)" WERE PAID OUTSIDE OF THE CLOSING. THEY ARE SHOWN HERE FOR INFORMATION PURPOSES AND ARE NOT INCLUDED IN THE TOTALS.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Robert Sweeting | | Fremont Investment and Loans<br>1965 N. Pacific Center Drive<br>Anaheim, CA 92806 |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 1[illegible]077 Crale Lane<br>Huntington Beach, CA 92649 | International Mortgage Company, Inc. Escrow Division | |
| | Place of Settlement<br>450 North Brand Blvd., Suite 180<br>Glendale, CA 91203 | Settlement Date<br>December 30, 2005 |

| J. SUMMARY OF BORROWER'S TRANSACTIONS | | K. SUMMARY OF SELLER'S TRANSACTIONS | |
|---|---|---|---|
| 101. Contract Sales Price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal property | |
| 103. Sett. Chrgs. to Borrower (line 1400) | 52,016.25 | 403. | |
| 104. HomEq Servicing | 652,1[illegible].90 | 404. | |
| 105. The Judge Law Firm | 1,450.00 | 405. | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 705,593.15 | 420. Gross Amount Due to Seller | |
| 201. Deposit or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. New 1st Trust Deed | 773,500.00 | 502. Sett. chrgs. to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 773,500.00 | 520. Total Reductions in Amount Due Seller | |
| 301. Gross Amounts due from Borrower (line 120) | 705,593.15 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for Borrower (line 220) | 773,500.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. CASH TO BORROWER | 67,906.85 | 603. CASH FROM SELLER | |

I hereby certify that this is a true and correct copy of the original International Mortgage Company Escrow Division

By: [signature]

EXHIBIT H

Fax Server 1/4/2007 1:32:49 PM PAGE 11 Fax Server

TO:Robert Sweeting COMPANY:

01/04/2007 11:03 FAX [illegible] INC. ESCROW DIVISION [illegible]

L. SETTLEMENT STATEMENT

| [illegible] | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| Based on price $ @ % | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| [illegible] | | |
| 801. Loan Origination Fee to International Mortgage Company, Inc. | [illegible].00 | |
| 802. Loan Discount Fee to Fremont Investment and Loan | 1,016.00 | |
| 803. Appraisal Fee to International Mortgage Company, Inc. | 475.00 | |
| 804. Credit report | | |
| 805. Lender's inspection fee | | |
| 806. Mortgage insurance application fee | | |
| 807. Brokerage Fee POC $7,[illegible].00 to International Mortgage Company, Inc. | | |
| 808. Processing Fee to International Mortgage Company, Inc. | [illegible].00 | |
| 809. Administration Fee to International Mortgage Company, Inc. | [illegible].00 | |
| 810. Tax Service Fee to Landsafe | 46.00 | |
| 811. Add'l. Items See Page [illegible] | [illegible] | |
| [illegible] | | |
| 901. Interest at $[illegible]/day from [illegible] to 01/01/2007 to Fremont Investment and Loan | [illegible] | |
| 902. Mortgage insurance | | |
| 903. International Mortgage Company Escrow Division for: Notary Fee | [illegible] | |
| 904. Amex [illegible] | [illegible] | |
| 905. | | |
| [illegible] | | |
| 1001. Hazard insurance | | |
| 1002. Mortgage insurance | | |
| 1003. City property taxes | | |
| 1004. County property taxes | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Reserves | | |
| 1009. | | |
| [illegible] | | |
| 1101. Escrow Fee to International Mortgage Company, Inc. Escrow Division | [illegible] | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title insurance binder | | |
| 1105. Document preparation | | |
| 1106. Notary fees | | |
| 1107. Attorney's fees | | |
| 1108. Title insurance to Chicago Title Company | [illegible] | |
| 1109. Lender's coverage $1,[illegible].00 | | |
| 1110. Owner's coverage $ | | |
| 1111. Messenger Fee UPS to Chicago Title Company | [illegible] | |
| 1112. Loan Tie-In Fee to International Mortgage Company, Inc. Escrow Division | 250.00 | |
| 1113. Add'l. Items See Page [illegible] | [illegible] | |
| [illegible] | | |
| 1201. Recording fees: Deed $; Mortgage $[illegible]; Release $ to Chicago Title Company | [illegible] | |
| 1202. City/County tax stamps | | |
| 1203. State tax/stamps | | |
| 1204. | | |
| 1205. [illegible] 01/02/07 to Chicago Title Company | [illegible] | |
| [illegible] | | |
| 1301. Survey | | |
| 1302. International Mortgage Company for Messenger Fee | [illegible] | |
| 1303. Verizon California [illegible] | [illegible] | |
| 1304. [illegible] | [illegible] | |
| 1305. HSBC [illegible] | [illegible] | |
| 1306. HSBC [illegible] | [illegible] | |
| 1307. [illegible] HOA [illegible] | [illegible] | |
| [illegible] | [illegible] | |

[illegible] Escrow Division

By: [signature]




Residential Real Estate Servicing
3110 Guasti Road Suite 500
Ontario, CA 91764
Tel 800 776 7511
Fax 714 685 7051




July 30, 2007

ROBERT SWEETING
16077 CRETE LANE
HUNTINGTON BEACH, CA 92649

Regarding: ROBERT SWEETING
Property Address: 16077 CRETE LANE
HUNTINGTON BEACH, CA 92649
Our Loan #: 3000857459
Policy Number:

Dear Customer,
Please be advised that as of **July 30, 2007**, Fremont Investment & Loan has assigned, sold, or transferred their ***First mortgage loan*** on the above referenced property to GMAC Mortgage, LLC.

Please issue a loss payable endorsement as follows:

GMAC Mortgage, LLC.
Its successors and/or assigns
P.O. Box 4025
Coraopolis, PA 15108-6942
**800-766-4622**

Should you have any questions, please feel free to contact your new Loan Service Center at (800) 766-4622

Sincerely,
Fremont Investment & Loan

Serving
Our Customers
Since 1937
Member FDIC





RECORDING REQUESTED BY

FIRST AMERICAN TITLE INSURANCE

WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

THE FOLLOWING COPY OF "NOTICE", THE ORIGINAL OF WHICH WAS FILED FOR RECORD ON 10/25/2007 IN THE OFFICE OF THE RECORDER OF Orange COUNTY, CALIFORNIA IS SENT TO YOU INASMUCH AS AN EXAMINATION IN OF THE TITLE TO SAID TRUST PROPERTY SHOWS YOU MAY HAVE AN INTEREST THE TRUSTEE'S SALE PROCEEDINGS

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-120181-C
Loan No.: 0833009962

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$60,235.26** as of **10/23/2007**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.
C/O EXECUTIVE TRUSTEE SERVICES, LLC
15455 SAN FERNANDO MISSION BLVD., SUITE 208
MISSION HILLS, CALIFORNIA 91345
(818) 260-1600

ELIZA 11/13/



EXHIBIT J





**TS NO.: GM-120181-C**
**LOAN NO.: 0833008862**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **EXECUTIVE TRUSTEE SERVICES, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **12/8/2006**, executed by **ROBERT SWEETING, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, as beneficiary, recorded **12/20/2006**, as Instrument No. **2006000850787**, in Book , Page , of Official Records in the Office of the Recorder of **Orange County, California** describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$773,500.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 4/1/2007 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 10/23/2007**

**EXECUTIVE TRUSTEE SERVICES, LLC AS AGENT FOR BENEFICIARY**

**BY:** ______________________

**Myron Ravelo**
**TRUSTEE SALE OFFICER**



Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

(818) 260-1600

Date: 11/2/2007

T.S. Number: GM-120181-C
Loan Number: 0833009962

# DEBT VALIDATION NOTICE

1. The enclosed document relates to a debt owed to the current creditor:

   MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.

   You may send us a written request for the name and address of the original creditor, if different from the current creditor, and we will obtain and mail the information to you.

2. As of 10/23/2007 the total delinquency owed was $50,235.26, but this amount will increase until the delinquency has been fully cured.

3. As of 11/2/2007, the amount required to pay the entire debt in full was $825,047.32 , but this amount will increase daily until the debt has been fully paid.

4. You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice. Otherwise, we will assume that the debt is valid.

5. If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE**




RECORDING REQUESTED BY
Executive Trustee Services, LLC

AND WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-120181-C
Loan No. 0833009962

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/8/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:**ROBERT SWEETING, AN UNMARRIED MAN**
Recorded **12/20/2006** as Instrument No. **2006000850787** in Book , page of Official Records in the office of the Recorder of Orange County, California,
Date of Sale:**3/26/2008 at 2:00 PM**
Place of Sale: **At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, California**
Property Address is purported to be: **16077 CRETE LANE HUNTINGTON BEACH, CA 92649**
APN #: **178-741-30**

The total amount secured by said instrument as of the time of initial publication of this notice is **$860,629.72**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: 2/26/2008

**EXECUTIVE TRUSTEE SERVICES, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**Sale Line: 714-259-7850**

**Beatrix Osorio, TRUSTEE SALE OFFICER**

**EXHIBIT K**