42. Also on or about December 8, 2006, KISHABA had plaintiff sign a Form 1003 Uniform Residential Loan Application. (Form 1003 Application Dated December 8, 2006 is attached hereto as "Exhibit D" and incorporated by reference.)

43. Plaintiff also signed the Deed of Trust securing the loan with the SUBJECT PROPERTY on December 8, 2006, which necessarily precluded the required loan disclosures by defendants.

44. On or about December 8, 2006, KISHABA promised plaintiff that the February mortgage payment would be paid by INTERNATIONAL from the loan proceeds. (See Amended Escrow Instructions dated December 20, 2006 attached hereto as "Exhibit E" and incorporated by reference.)

45. Due to his reliance on KISHABA'S promise of a loan closing "any day" beginning in June 2006, plaintiff accumulated significant penalties, late fees, and suffered substantial damage to his credit.

46. Because of the financial condition that KISHABA placed plaintiff in, plaintiff signed the loan documents on December 8, 2006, but did not see or sign any document indicating that a two-year prepayment penalty would apply.

47. Each time that plaintiff signed documents KISHABA failed to give a copy to plaintiff despite plaintiff's request for copies, but promised that plaintiff would receive copies by mail.

48. At no time during any of the document signings did plaintiff receive any documents regarding the loan. Further, plaintiff received no proper documentation regarding the mandatory disclosures required by the Federal Truth and Lending law including a three-day right to rescind this transaction.

49. Plaintiff eventually received blank notices of right to cancel; however, there was no date indicating when the right to cancel accrued of the time within which to rescind.

50. Plaintiff is informed, believes, and thereon alleges that KISHABA used document's from all three document signings to complete the final loan submission package.

51. KISHABA mislead, lied, and lead a campaign of confusion and ever altered annual

SECOND AMENDED COMPLAINT                                                Page 8

|   |   |
|---|---|
| 1 | percentage rates, broker points, fees, and prepayment penalties. |
| 2   52. | On or about December 20, 2006, JAQUEZ on behalf of INTERNATIONAL, sent |
| 3 | plaintiff a document indicating that the escrow was closed as of December 20, 2006, and |
| 4 | that also indicates plaintiff would be receiving a wire transfer in the amount of |
| 5 | $25,128.44. (See Letter dated December 20, 2006 attached hereto as "Exhibit F" and |
| 6 | incorporated by reference.) |
| 7   53. | On or about December 20, 2006, FREMONT recorded a Deed of Trust dated December |
| 8 | 8, 2006 securing a loan against the SUBJECT PROPERTY in the amount of $773,500. |
| 9 | (See Deed of Trust recorded December 20, 2006 attached hereto as "Exhibit G" and |
| 10 | incorporated by reference.) |
| 11   54. | On or about January 1, 2007, INTERNATIONAL faxed a HUD-1 Statement indicating |
| 12 | that plaintiff's cash out would be $67,906.85. (See HUD-1 faxed January 4, 2007 attached |
| 13 | hereto as "Exhibit H" and incorporated by reference.) |
| 14   55. | Despite the multiple promises and various amounts of cash out listed, plaintiff never |
| 15 | received any documentation or information that he would receive less than $65,605.36 |
| 16 | cash from the refinance transaction. |
| 17   56. | However, INTERNATIONAL sent only one wire to plaintiff in the amount of |
| 18 | $25,128.44. Plaintiff did not receive any other payment from INTERNATIONAL or |
| 19 | anyone in relation to the refinance. |
| 20   57. | Thus, plaintiff's cash had gone down from the original $105,000 promised by KISHABA |
| 21 | to $65,605.36 listed in loan and HUD-1 statements to actually receiving $25,128.44. |
| 22   58. | Plaintiff called INTERNATIONAL to determine when he was going to receive the |
| 23 | remaining $40,476.92. INTERNATIONAL employees refused to tell plaintiff what |
| 24 | happened to the remaining funds or how they had applied those funds. |
| 25 | INTERNATIONAL further refused to provide plaintiff with any further documents, |
| 26 | deeds, notes, loan disclosures, escrow documents, or HUD-1 Statements. |
| 27   59. | KISHABA was not properly licensed in relation to the loan transaction. KISHABA is not |
| 28 | licensed as a real estate agent. INTERNATIONAL MORTGAGE and its sister company, |

SECOND AMENDED COMPLAINT                                                                                  Page 9

1   INTERNATIONAL ESCROW, were both suspended a month before the loan funded.
2   On or before November 20, 2006, before consummation of the loan, International
3   Mortgage's and International Escrow's licenses were suspended because they failed to
4   maintain the required surety bond. At Paragraph 11 of Order Revoking Escrow Agent's
5   License, it indicates that on October 12, 2007, the State of California Department of
6   Corporations revoked International Mortgage Company's finance lender's license
7   pursuant to Fin. C. § 22107 effective November 6, 2007. International had "commingled
8   trust funds ... or otherwise made unauthorized disbursements of trust funds ... had a trust
9   account shortage ... and had failed to maintain and/or provide books and records to the
10  Commission..."

11  60. Kishaba, International Mortgage and International Escrow then proceeded to rip off
12      Plaintiff for points up front and loan proceeds on the back side.

13  61. Plaintiff is informed and believes, and thereon alleges, that INTERNATIONAL,
14      JAQUEZ, SAUERACKER, CHEN, KISHABA, and HAWORTH acted as an unlicensed
15      mortgage broker.

16  62. In or about March 2007, FREMONT contacted plaintiff to inform him that the February
17      2007 payment was not paid, which KISHABA had promised that INTERNATIONAL
18      would pay from loan proceeds. (See Exhibit E.)

19  63. According to FREMONT, no payment was made for the loan payment due on February 1,
20      2007.

21  64. Plaintiff requested that FREMONT assist in discovering the status of the missing
22      $40,476.92 and the missing February 1, 2007 payment. Fremont made no effort to assist.

23  65. INTERNATIONAL, KISHABA, CHEN, JAQUEZ, and SAUERACKER refused to
24      communicate with plaintiff or offer any explanations or solutions as to the missing
25      payment or funds.

26  66. Plaintiff made payments of over $17,000 to FREMONT; however, FREMONT failed to
27      properly apply and credit the payments.

28  67. On July 30, 2007, FREMONT sold and/or transferred its interest in receiving the benefits

SECOND AMENDED COMPLAINT                                              Page 10

of the Note secured by the property. Because MERS is the nominal title holder, Plaintiff is unaware of the entity which was entitled to receive the benefits of the Note. Based on information and belief, Fremont sold the right to receive the benefits of the subject Note to GMAC or TCIF. (See letter from FREMONT dated July 30, 2007 attached hereto as "Exhibit I" and incorporated by reference.)

68. Plaintiff expected that he would receive a payment booklet from GMAC and waited to begin making the payments until he received the payment booklet.

69. Due to the actions of defendants in relation to the funds that were never given to plaintiff and FREMONT'S misapplication of plaintiff's payments, plaintiff was substantially behind in payments by August 2008.

70. Plaintiff attempted on several occasions to have GMAC investigate the missing funds, misapplied payments, and to work out forbearance plans.

71. GMAC failed to properly account for and apply funds plaintiff paid to FREMONT.

72. GMAC failed to properly account for and apply funds plaintiff paid to GMAC.

73. On or about October 23, 2007, GMAC sent plaintiff a Notice of Default and caused the same to be recorded with the Orange County Recorder's Office. (See Notice of Default dated October 23, 2007 attached hereto as "Exhibit J" and incorporated by reference.)

74. GMAC accepted over $3,500.00 in relation to one forbearance plan, but then rejected the forbearance agreement.

75. In two other instances, GMAC returned payments by the plaintiff in the approximate amounts of $3,000 and $7,500.

76. On or about February 26, 2008, GMAC sent plaintiff Notice of Trustee's Sale with the sale to take place on March 26, 2008. (See Notice of Trustee's Sale Dated February 26, 2008 attached hereto as "Exhibit K" and incorporated by reference.)

77. On or about September 22, 2008, GMAC caused the property to be sold at a foreclosure sale. Title was placed in GMAC's name. After the property was sold at foreclosure auction, GMAC was the legal title holder. GMAC twice brought unlawful detainer actions against Plaintiff claiming to be the owner of the property.

SECOND AMENDED COMPLAINT                                                                                     Page 11

78. GMAC failed to properly calculate sums due by plaintiff in relation to the foreclosure of the Trust Deed, by failing to properly apply payments plaintiff made to FREMONT and to GMAC.

79. Plaintiff contends that Defendant Fremont made the subject loan with the intent to foreclose and steal Plaintiff's equity. On March 8, 2007, the FDIC ordered Fremont to cease and desist its sub-prime lending.

80. On or about March 20, 2009, GMAC transferred title to the property to Truman Capital.

81. On May 15, 2009, Truman Capital transferred title to to Island Source II via a grant deed.

### FIRST CAUSE OF ACTION
### FOR NEGLIGENCE
### AS AGAINST FREMONT and CHICAGO TITLE

82. Plaintiff reallegs and incorporates paragraphs 1 through 81 as though fully set forth.

83. Plaintiff alleges this first separate and distinct cause of action for negligence as against Fremont, Chicago Title and Does 1 to 25.

84. Defendants Fremont, Chicago Title and Does 1 to 25 had a duty to deliver the proceeds of the subject Note secured by Deed of Trust to Plaintiff. This required that the Note/loan proceeds be delivered to a licensed escrow company.

85. Fremont and Chicago Title breached their duty to Plaintiff by failing to ascertain that International Escrow, International Mortgage and their employees were not licensed.

86. As set forth below, the INTERNATIONAL defendants stole a substantial portion of the proceeds of the Note and failed to transfer to Fremont the first month's payment which was held in escrow. Because International and its employees were not licensed, they were not entitled to any commissions, points, premiums or other proceeds from the subject Note.

87. As a direct and proximate result of the breach of duty by Defendants Fremont and Chicago Title, Plaintiff only a small portion of the anticipated cash out of the loan and the prior loan on the property was paid off with a higher interest rate note, as well as the loss of use of said cash out to "prime the pump" of his business which was in need of capital

SECOND AMENDED COMPLAINT                                    Page 12

1   and to make needed repairs to his home.

### SECOND CAUSE OF ACTION
### FOR COMMON COUNTS
### AS AGAINST FREMONT, CHICAGO TITLE, KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, HAWORTH, and CHEN

88. Plaintiff reallegs and incorporates paragraphs 1 through 87 as though fully set forth.

89. Plaintiff alleges this first separate and distinct cause of action for negligence as against Fremont, Chicago Title, KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL MORTGAGE, INC, INTERNATIONAL ESCROW, HAWORTH, and CHEN and Does 1 to 25.

90. Plaintiff alleges that Defendants Fremont, Chicago Title, KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, HAWORTH, and CHEN, and each of them, became indebted to Plaintiff for money had and received by Defendants, and each of them, for the benefit of Plaintiff in the amount of $773,500.

91. The reasonable value due and unpaid to Plaintiff is estimated to be $173,500 plus prejudgment interest in an amount subject to proof.

92. ~~Plaintiff requests attorneys fees pursuant to contract.~~

### THIRD CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Against JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER, INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, ANTHONY HAWORTH, CAITLIN CHEN)

93. Plaintiff repeats and realleges the allegations of paragraphs 1 through 92, above, as though fully set forth herein at length.

94. Defendants owed a duty to plaintiff to act in accordance with statutory procedures for GMAC had a further duty to follow legal process for Notice of a Trustee's Sale.

95. Defendants KISHABA, JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL further breached their duties to plaintiff in failing to give plaintiff required disclosures

SECOND AMENDED COMPLAINT                                      Page 13

and failing to properly advise the plaintiff as to the terms and conditions of the loan transaction.

96. Defendant's JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL had a duty to plaintiff to ensure that all persons dealing with plaintiffs loan were properly licensed, which they breached.

97. Defendants JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL breached its duty to plaintiff as his Escrow Agent by accepting, depositing, and retaining over $40,000 in funds belonging to the plaintiff without written instructions signed by the plaintiff.

98. Defendants JAQUEZ, SAUERACKER, CHEN, AND INTERNATIONAL breached its duty to plaintiff as by failing and refusing to account for funds, communicate with., plaintiff, and provide documents as requested.

99. As a direct and proximate result of defendants' breach of duties, plaintiff has suffered damages in amounts exceeding the jurisdictional limits of this court and, which will be proven at the time of trial.

### FOURTH CAUSE OF ACTION
### MISREPRESENTATION
(Against JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER, INTERNATIONAL MORTGAGE, INC. INTERNATIONAL ESCROW, ANTHONY HAWORTH, CAITLIN CHEN, G AND Z APPRAISERS, NAZEH MUAYADAZEM)

100. Plaintiff repeats and realleges the allegations of paragraphs 1 through 99, above, as though fully set forth herein at length.

101. Beginning in June 2006 KISHABA misrepresented the terms and conditions on the plaintiff's loan, as more fully alleged above. KISHABA further misrepresented his employment status and ability to legally act as a mortgage broker with INTERNATIONAL through CHEN'S license.

102. INTERNATIONAL, JAQUEZ, SAUERACKER, and KISHABA further misrepresented on multiple occasions, the amount of cash that plaintiff would receive from the refinance. They further misrepresented that the increased fees and points were required by Fremont rather than to line their own pockets.

103. Further, INTERNATIONAL MORTGAGE, CHEN, KISHABA, HAWORTH, JAQUEZ

SECOND AMENDED COMPLAINT                                                                 Page 14

and SAUERACKER misrepresented that they were licensed to arrange the loan when their license had in fact been suspended.

104. On or about September 2006, G AND Z APPRAISERS, NAZEH MUAYADAZEM performed an appraisal of the subject real property and knowingly overstated the value of the subject property so as to induce Plaintiff to enter into the Note secured by Deed of Trust. The value stated in the appraisal was $965,000, while the true value was $800,000. Defendants INTERNATIONAL MORTGAGE, CHEN, KISHABA, HAWORTH, JAQUEZ and SAUERACKER induced G & Z and Muayadazen to misrepresent the value of the property, and approved and ratified such misrepresentation knowing the falsity thereof so as to induce Plaintiff to enter into the Note secured by Deed of Trust. Based on information and belief, Fremont knew the value of the property was overstated, knew it was going to be shut-down by the federal government, and made the loan with the intent to defraud Plaintiff.

105. Plaintiff is informed believes and based thereon alleges that when defendants made the representation as alleged herein, defendants had no reasonable ground for believing them to be true. Defendants made these representations with the intention of inducing plaintiff to act in reliance on these representations in the manner alleged, or with the exception that plaintiff would so act.

106. Plaintiff, at the time these representations were made by defendants and at the time the plaintiff took the actions herein alleged, was ignorant of the falsity of defendants' representations and believed them to be true.

107. In reliance on the above-alleged false representations, plaintiff was induced to continue with the refinance, forgo other refinance options, and incur substantial penalties and fees on his existing mortgage.

108. Plaintiff would not have refinanced the SUBJECT PROPERTY with defendants if not for the above-alleged false representations by defendants.

109. Plaintiff's reliance on defendants' representations were justified because defendants were mortgage, escrow, and real estate professionals.

SECOND AMENDED COMPLAINT                                               Page 15

110. As a proximate result of defendants' negligence as herein alleged, plaintiff has been damaged in an amount to be determined at trial.

111. In doing the acts herein alleged above, defendants acted with oppression, fraud and malice, and plaintiffs are entitled to exemplary and punitive damages.

112. Plaintiff seeks compensation for costs of suit herein incurred, including but not limited to attorney's fees.

### FIFTH CAUSE OF ACTION
### FOR REFORMATION OF CONTRACT
### (AS AGAINST FREMONT and MERS, GMAC, TCIF, ISLAND SOURCE as SUCCESSORS IN INTEREST TO FREMONT)

113. Plaintiff repeats and realleges the allegations of paragraphs 1 through 110 as though fully set forth herein at length.

114. Plaintiff contends that INTERNATIONAL MORTGAGE, INTERNATIONAL ESCROW, and their agents and employees were unlicensed to act as mortgage brokers at all times relevant.

115. Plaintiff contends that the loan is usurious in that it exceeds the maximum interest rate that may be charged on loans in writing for use primarily for personal, family, or household purposes. Because International, which arranged the Note secured by Deed of Trust, was not licensed to do so, said Note secured by Deed of Trust was not exempted from the interest rate limitations on loans, made, or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property.

116. As such, the interest rate, which is illegal, should be stricken from the Note secured by Deed of Trust, and the Note secured by Deed of Trust should be rewritten so that all payments made should go directly towards the principal of the loan.

117. Further, because at all times relevant, International Escrow was not a licensed California Escrow company and International Mortgage was not a licensed Mortgage Broker at any time relevant to the within action, all monies delivered to them and neither delivered to Plaintiff nor expended to pay Plaintiff's prior home loan should be considered payments

SECOND AMENDED COMPLAINT                                                                 Page 16

1       towards the principal on the Note Secured by Deed of Trust.

## SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT
(Against Defendants FREMONT, MERS, GMAC, TCIF, ISLAND SOURCE and DOES 1-25)

118. Plaintiff repeats and realleges the allegations of paragraphs 1 through 115, above, as though fully set forth herein at length.

119. Plaintiff pleads this third separate and distinct cause of action as against FREMONT, MERS, GMAC, TCIF, ISLAND SOURCE and DOES 1 - 25.

120. Plaintiff and FREMONT entered into written contracts, namely the a promissory Note, and Deed of Trust, regarding refinancing the SUBJECT PROPERTY. (See Exhibit G.)

121. As part of the eventual contract, FREMONT was to loan to plaintiff the sum of $773,500 with at least $65,605.36 in cash directly to the plaintiff. Because INTERNATIONAL and its employees and agents were unlicensed, all of the proceeds of the loan, less monies used to pay off the prior loan secured by the property, should have been delivered to Plaintiff.

122. FREMONT caused only $25,128.44 to be delivered to Plaintiff and breached the contract by failing to deliver over $40,476.92 in funds to the plaintiff, INSTEAD delivering the funds to INTERNATIONAL MORTGAGE and INTERNATIONAL ESCROW, both of which were unlicensed. INTERNATIONAL stole the proceeds and took substantial points and fees to which it was not entitled. As such, there has been no effective delivery of some or all of the proceeds of the Note to Plaintiff.

123. FREMONT further breached the contract by attempting to collect payments on the $40,476.92 that was never delivered to the plaintiff.

124. An additional $85,000 was unlawfully delivered to INTERNATIONAL, which funds it was not entitled to and which funds were not delivered to Plaintiff.

125. As FREMONT'S successors in interest or nominal trustees of the Note secured by Deed of Trust, MERS, GMAC, TCIF, and ISLAND SOURCE, stand in FREMONT'S shoes and are responsible for all past misdeeds of FREMONT and/or are subject to any defenses Plaintiff may have to enforcement of the subject Note secured by Deed of Trust.

SECOND AMENDED COMPLAINT              Page 17

126. GMAC, TCIF, MERS and ISLAND SOURCE, through the purchase of the Note and Deed of Trust secured by the SUBJECT PROPERTY, are also are parties to those contracts with plaintiff.

127. FREMONT and GMAC breached the written contract by failing to properly account for funds due to plaintiff, attempting to collect on debts secured by fraud, failing to properly post payments by plaintiff to both FREMONT and GMAC, and by wrongfully foreclosing on the Trust Deed.

### SEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT
(Against Defendants KISHABA, JAQUEZ, SAUERACKER, INTERNATIONAL MORTGAGE, INC., INTERNATIONAL ESCROW, ANTHONY HAWORTH, and CAITLIN CHEN)

128. Plaintiff repeats and realleges the allegations of paragraphs 1 through 125, above, as though fully set forth herein at length.

129. INTERNATIONAL also had mortgage broker and a written escrow contract with plaintiff.

130. INTERNATIONAL breached the mortgage broker contract through misrepresentations, bait and switch, and failing to complete the refinance on the promised term. INTERNATIONAL also breached the mortgage broker contract by being prohibited from acting as a mortgage broker and escrow agent at all times relevant.

131. For example, INTERNATIONAL through its agent KISHABA initially promised to charge only one half broker point, which would have culminated in a broker fee of $3,867.50. INTERNATIONAL ended up charging over 3.128 points culminating in a $24,195.08 broker fee. On top of that, INTERNATIONAL ended up getting a substantial Yield Spread Premium, which it failed to properly disclose to plaintiff. Further, the INTERNATIONAL defendants stole and failed to deliver to Plaintiff approximately $110,000 in proceeds of the Note secured by Deed of Trust, through unearned fees, points, yield spread premiums and theft.

132. Plaintiff has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the contract or his performance

SECOND AMENDED COMPLAINT                                                         Page 18

1    is excused by the material breaches of defendants.

133. On or about March 2007 and thereafter, Plaintiff discovered that defendants were not performing their obligations pursuant to the written contracts.

134. Plaintiff has suffered damages in an amount to be proven at trial.

135. Plaintiff seeks compensation for costs of suit herein incurred, including but not limited to attorneys fees.

### EIGHTH CAUSE OF ACTION
### DECEIT
(Against INTERNATIONAL ESCROW, INTERNATIONAL MORTGAGE, JASON KISHABA, SANDRA JAQUEZ, PETER SAUERACKER, CAITLIN CHEN, ANTHONY HAWORTH)

136. Plaintiff repeats and realleges the allegations of paragraphs 1 through 134, above, as though fully set forth herein at length.

137. Plaintiff is informed, believes, and thereon alleges that KISHABA took documents from the three different document signings to create one fraudulent loan documentation package.

138. Plaintiff is informed, believes, and thereon alleges that KISHABA'S creation of one loan documentation package with documents signed on three different occasions with different terms amounts to forgery.

139. At the time defendants made the above alleged statements, defendants, and each of them, knew that the representations and documents were false.

140. Defendants have unlawfully used the falsified documents and fraudulent conduct in attempting to conduct a trustee's sale and obtain a non-judicial foreclosure and unlawful detainer action.

141. As a direct and proximate result of the reliance upon the truth of defendants' representations, Plaintiff has suffered damages in an amount unknown at this time but within the jurisdiction of this court. In addition to the funds already paid, plaintiff will be required to expend substantial additional funds to set aside the events derivative of defendants' conduct. Plaintiff does not know the full extent of such expenditures and other consequential damages at the present time, but will seek leave of court to amend

SECOND AMENDED COMPLAINT                                                                Page 19

this pleading when that amount has been ascertained.

142. Defendants' conduct in making these intentional misrepresentations was done with oppression, fraud or malice, in that defendants willfully, consciously and despicably disregarded Plaintiffs' rights. Plaintiff is therefore entitled to punitive damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### CANCELLATION OF WRITTEN INSTRUMENT
(Against Fremont, GMAC, TCIF, Island Source)

143. Plaintiff repeats and realleges the allegations of paragraphs 1 through 141, above, as though fully set forth herein at length.

144. This ninth separate and distinct cause of action for cancellation of written instrument is pleaded as against Fremont, and GMAC, TCIF and Island Source as successors in interest or assigns of the Note secured by Deed of Trust entered into between Plaintiff and Defendant Fremont. It is pleaded as an alternative to the fifth cause of action for reformation of contract, and is in no way intended to vitiate the allegations therein. Plaintiff will choose his remedy at time of trial.

145. There is an existence a certain written instrument dated December 20, 2006, which is the disputed trust deed (Exhibit "G") between plaintiff and defendant FREMONT.

146. The Trust Deed (Exhibit "G") was procured through defendants' fraud, misrepresentations, and fraudulent compilation of documents, as described hereinabove. If the disputed trust deed is left outstanding, Plaintiff will be subjected to serious and substantial injury in that the fraudulently procured document eliminating all of plaintiff's interest in the subject property.

147. Plaintiff offers by this Complaint to return any property delivered to him from the proceeds of this action.

148. The fraudulent conduct of defendants herein was oppressive and despicable and subjected Plaintiff to cruel and unjust hardships in conscious disregard of Plaintiff's rights, and therefore Plaintiff seeks exemplary and punitive damages.

### TENTH CAUSE OF ACTION