estoppel, the doctrine of res judicata prevents "'a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.'" (Alpha Mechancial Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America (2005) 133 Cal.App.4th 1319, 1327.) The doctrine promotes judicial economy because it "'precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief.'" (Id. at 1326, *quoting* Mycogen at 897.)

In determining whether an action is barred by claim preclusion or res judicata, the courts examine whether the two proceedings involve the same cause of action. (Id. at 1327.) California courts follow the "primary rights" theory to determine whether the two separate actions involve a single cause of action. (Id.) Under this theory, a cause of action consists of a "primary right" of the plaintiff to be free from the particular injury suffered, a "corresponding primary duty" of the defendant, and "a wrongful act by the defendant constituting the breach of duty." (Id.) There is a separate cause of action for each "primary right." Each type of interest invaded is a separate primary right. (Craig v. County of Los Angeles (1990) 221 Cal.App.3d 1294, 1301, *citing* Takahashi v. Board of Education (1988) 202 Cal.App.3d 1464, 1474.) Examples of primary rights include the right to be free from personal injury, the right to possession of real property, and the right to performance of a contractual obligation. (Olsen v. Breeze, Inc. (1996) 48 Cal.App.4th 608, 625.)

In Crowley v. Katleman (1994) 8 Cal.4th 666, 681, the California Supreme Court explained that the primary right must be distinguished from the legal theory upon which liability is premised and from the remedy sought. In determining the primary right, "the significant factor is the harm suffered." *Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim of relief.* (Slater v. Blackwood (1975)15Cal.3d 791, 795; Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Insurance Company (1993) 5 Cal.4th 854, 860; Emphasis added.) The most salient characteristic of a primary right is that it is *indivisible*, i.e., that violation of a single primary right gives rise to but a single cause of action. A pleading stating two "causes of action" involving the same primary right contravenes the rule against "splitting" a cause of action. (Crowley v. Katleman, *supra*, 8 Cal.4th at 681-682.) "'The violation of one primary right

4
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.'" (Id. at 682.) Significantly, "[w]hether a complaint in fact asserts one or more causes of action for pleading purposes depends on whether it alleges invasion of one or more primary rights." (Hindin v. Rust (2004) 118 Cal.App.4th 1247, 1257.) Further, the manner in which a plaintiff designates his or claim does not determine the number of causes of action. "'If a plaintiff states several purported causes of action which allege an invasion of the same primary right he has actually stated only one cause of action.'" (Id., quoting Skrbina v. Fleming Companies (1996) 45 Cal.App.4th 1353, 1364.)

In Alpha Mechancial Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America, supra, 133 Cal.App.4th at 1332, the appellate court determined that RAS sought to relitigate the same claims. RAS dismissed its cross-complaint against Alpha after reaching a settlement. The court noted that in its cross-complaint, RAS sought relief under theories of breach of contract and negligence for Alpha's defective performance, which allegedly caused the property damage and damage to the work of other trades. In its answer to the complaint, RAS asserted affirmative defenses that sought to hold Alpha liable for the wrongful and negligent contract performance. The court determined that RAS' primarily right was its right to competent performance of the contract by Alpha; Alpha's primary duty was it competent performance under the contract; and Alpha's wrong was its negligent and wrongful performance of the contract. Although Travelers attempted to distinguish the primary rights as sounding in tort and contract, the court ruled that "'if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery.'" (Id., quoting Tensor Group v. City of Glendale (1993) 14 Cal.App.4th 154, 160.) Notably, the court observed that if RAS was permitted to renew these claims, "there would be no meaning to the phrase 'with prejudice.'" (Id. at 1334.)

///

///

Similarly, in the present action, Plaintiff attempts to relitigate the same causes of action that were asserted in the prior complaint. In the First Amended Complaint, Plaintiff asserts the following causes of action against GMACM for breach of fiduciary duty, breach of contract, cancellation of written instrument, quiet title, and violation of Business and Professions Code § 17200.[9] In the Second Amended Complaint, Plaintiff asserts the same exact causes of action for breach of fiduciary duty, breach of contract, cancellation of written instrument, quiet title, and violation of Business and Professions Code § 17200 against GMACM.[10] In both complaints, the allegations supporting these causes of actions are almost identical.

In the breach of fiduciary cause of action in the First Amended Complaint, Plaintiff alleged that GMACM owed a duty to Plaintiff as his lender and servicer.[11] In the Second Amended Complaint, Plaintiff merely adds that GMACM owed a duty "to act in accordance with statutory procedures" and "to follow legal process for Notice of Trustee's Sale."[12]

In the breach of contract cause of action in the First Amended Complaint, Plaintiff alleged Fremont breached the contract by failing to deliver over $40,476.92 in loan proceeds to him and that it breached the contract by trying to collect payments from Plaintiff on the $40,476.92, which was never delivered to Plaintiff. Plaintiff alleged that GMACM, as Fremont's successor in interest, is liable for all of Fremont's past misdeeds. Plaintiff alleged that GMACM also breached the contract by failing to properly account for funds due to Plaintiff, attempting to collect on debts secured by fraud, failing to properly post payments made by Plaintiff to Fremont and GMACM, and by wrongfully foreclosing on the trust deed.[13] In the Second Amended Complaint, Plaintiff again alleges that GMACM is liable for Fremont's failure to deliver the loan proceeds to him and that

---

[9] See FAC, ¶¶ 113, 120-126, 101-103, 117-118, and 137-142.

[10] See SAC, ¶¶ 94, 119-127, 144-148, 154-156, and 158-164.

[11] See FAC, ¶ 113.

[12] See SAC, ¶ 94.

[13] See FAC, ¶¶ 120-126.

6
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

GMACM allegedly failed to account for the missing loan proceeds, Plaintiff's payments and "wrongfully" foreclosed on the trust deed.[14]

In the cancellation of written instrument cause of action in the First Amended Complaint, Plaintiff sought to cancel the trust deed between Fremont and Plaintiff. Plaintiff alleged that the trust deed was procured through Defendants' fraud, misrepresentation, and fraudulent compilation of documents.[15] Plaintiff makes the same exact allegations in the Second Amended Complaint.[16]

In the quiet title cause of action in the First Amended Complaint, Plaintiff sought to quiet title against all adverse claims and alleges that Defendants have no right, title, estate, lien, or interest in the subject property.[17] These same exact allegations are made in the Second Amended Complaint.[18]

In the violation of Business and Professions Code § 17200 cause of action in the First Amended Complaint, Plaintiff alleges GMACM's conduct constituted unfair business practices because it allegedly made loans based on falsified information; used bait and switch tactics; made loans without verifying borrower's information; made loans without providing borrower with sufficient, accurate, or understandable information regarding the terms of the loan or the financial risk assumed by the borrower; made loans without regard to the borrower's ability to pay. Plaintiff alleges that GMACM engaged in predatory lending practices; failed to provide notices and disclosures required by TILA; and falsified loan documents.[19] Notably, Plaintiff makes the same exact allegations in the Second Amended Complaint.[20]

---

[14] See SAC, ¶¶ 122-127.
[15] See FAC, ¶¶ 101-102.
[16] See SAC, ¶ 145-146.
[17] See FAC, ¶ 118.
[18] See SAC, ¶ 156.
[19] See FAC, ¶¶ 137-138.
[20] See SAC, ¶¶ 158-159.

7
DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

In the Second Amended Complaint, Plaintiff also adds four additional causes of action for reformation of contract, wrongful foreclosure, defamation and tortious interference with credit, and accounting. Although disguised as different causes of action, these causes of action involve the same causes of action that were adjudicated in the prior complaint because they involve the same primary right, i.e., the right to performance of the contract.

### B. Plaintiff Is Barred from Asserting Claims that Could Have Been Raised Previously

In Torrey Pines Bank v. Superior Court (2003) 216 Cal.App.4th 813, 822, the appellate court recognized that "'a final judgment on the merits in a prior action is conclusive between the same parties in a subsequent action involving the same matter.'" (Id., quoting Hamilton v. Carpenter (1940) 15 Cal.2d 130, 133.) Importantly, the court observed that "Res judicata bars 'not only the reopening of the original controversy, but also subsequent litigation of all issues which were or could have been raised in the original suit.'" (Id., quoting Gates v. Superior Court (1986) 178 Cal.App.3d 301, 311.) The court ruled that "'a litigate may not split his cause of action, advancing a portion at a time to the harassment of his adversary.'" (Id. at 822.) In Craig v. County of Los Angeles, supra, 221 Cal.App.3d at 1299, the appellate court also determined that "This bar includes 'matters which were relevant and within the scope of the first action, which thus *could* have been raised in the first suit.'" (Id., quoting Duffy v. City of Loan Beach (1988) 201 Cal.App.3d 1352, 1358.)

In Mycogen Corp. v. Monsanto Co., supra, 28 Cal.4th at 897, the California Supreme Court observed that under the doctrine of res judicata, "'all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date.'" The court recognized that "It is well established that a judgment in an action for breach of contract bars a subsequent action for additional relief based on the same breach. (Id. at 905.) The court noted that "a party may not obtain both specific performance and damages for the same breach of contract, either in single or multiple actions." (Id.) The court determined that "[a] plaintiff is 'bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another.'" (Id. at 906, quoting Abott v. The 76 Land and Water Co. (1911) 161 Cal. 42, 47.)

///

In Burdette v. Carrier Corp. (2008) 158 Cal.App.4th 1668, 1673, the plaintiff brought a defamation action against his former employer for slanderous statements made by employees regarding the plaintiff's resignation. Prior to this action, the employer brought a federal action against the plaintiff to recover money it claimed that he owed. The plaintiff brought a cross-complaint against the employer for slander. The federal court granted the employer's motion for summary judgment and dismissed the cross-complaint. (Id.) On appeal, the court examined the preclusive effect of the federal summary judgment in state court. (Id. at 1674.) The court determined that "Res judicata bars the relitigation not only of claims that were conclusively determined in the first action, but also matters that was within the scope of the action, related to the subject matter and relevant to the issues so that it could have been raised." (Id. at 1675.) The court found that "[a] party cannot by negligence or design withhold issues and litigate them in consecutive actions" because res judicata bars the relitigation of matters that were raised or could have been raised in the prior action. (Id.) As such, the court ruled that claim preclusion barred the plaintiff's complaint because the statements by the other employees were raised or could have been raised in the federal action. (Id.)

In the present action, Plaintiff is also barred from bringing the causes of action for reformation of contract, wrongful foreclosure, defamation and tortious interference with credit, and accounting in the Second Amended Complaint because he could have previously asserted them in the First Amended Complaint. Indeed, these same issues were litigated in the prior complaint.

## IV. THE COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL

The second aspect of res judicata is issue preclusion or collateral estoppel. "[A] party is collaterally estopped from relitigating an issue if: '(1) the issue decided in a prior action is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.'" (Id. at 1688.) Significantly, "[t]he doctrine of collateral estoppel applies to issues litigated even though some factual matters or legal arguments which could have been raised were not.'" (Id., quoting Lucas v. County of Los Angeles (1996) 47 Cal.App.4th 277, 286.) In

///

---

9

DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

determining whether both actions involve the same issue, California courts consider the following factors:

> "Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding? Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? How closely related are the claims involved in the two proceedings?" (Id. at 1689, *quoting* Rest.2d Judgments, § 27, com. c, pg. 252.)

In the present action, Plaintiff is barred from asserting the causes of action for breach of fiduciary duty, breach of contract, cancellation of written instrument, quiet title, and violation of Business and Professions Code § 17200 because these causes of action were dismissed by this Court via demurrer and summary judgment.[21] Further, Plaintiff is barred from asserting causes of action for reformation of contract, wrongful foreclosure, defamation and tortious interference with credit, and accounting because these issues were litigated in the prior complaint involving the same parties and there was a final judgment on the merits.

In the reformation of contract cause of action, Plaintiff alleges that the loan should be reformed because it contains a usurious interest rate and because International Mortgage, Inc. was not licensed to arrange loans.[22] In the First Amended Complaint, Plaintiff alleged that he was promised a new loan with a fixed annual percentage rate of 7.5% with a one-half point broker fee, a one-year prepayment penalty and $105,000.00 cash out.[23] After the Court granted GMACM's motion for summary judgment, Plaintiff filed a motion for reconsideration of the Court's order. In the motion, Plaintiff also argued that the loan should be re-written because it was usurious:

///

///

---

[21] *See* Exhibits 2, 3, 4 and 5.

[22] *See* SAC, ¶¶ 115-116.

[23] *See* FAC, ¶ 22.

10
**DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

> GMAC, for purposes of this loan and property received a usurious loan. The original transaction as conducted by persons who did not have any license to conduct a loan transaction. GMAC therefore has purchased "as-is" a usurious loan, the terms of which would be subject to rewriting or a write down of interest.[24]

In the wrongful foreclosure cause of action, Plaintiff alleges that GMACM wrongfully foreclosed on the subject property. Plaintiff alleges that he was current on his payments based on Defendants' alleged fraud, Fremont's alleged failure to deliver the missing loan proceeds, the alleged improper accounting by Fremont and GMACM, and the usurious interest rate. Plaintiff also alleges that the forbearance agreement between Plaintiff and GMACM was without consideration.[25] Notably, these issues were adjudicated on summary judgment. In the First Amended Complaint, Plaintiff also alleges that GMACM wrongfully foreclosed on the trust deed.[26] In granting summary judgment in GMACM's favor, the Court found that the notice of default was proper because Plaintiff failed to make his mortgage payments when due.[27] Indeed, the Court determined that "Since Plaintiff only made two mortgage payments, he has been in default as of April 1, 2007 and has not made sufficient payments to reinstate the loan prior to the foreclosure sale.[28]

In the defamation and tortious interference with credit, Plaintiff alleges that GMACM published false reports to various credit agencies that Plaintiff owed over $16 million as a result of the foreclosure.[29] However, this issue was also previously litigated in the prior complaint. During discovery, Plaintiff alleged that he suffered damages to his credit in part because of the $16 million balloon payment on his credit report:

---

[24] See Plaintiff's Motion for Reconsideration of Ruling on Summary Judgment by GMAC, which is attached to GMACM's Request for Judicial Notice as **Exhibit 7**, pg. 3:28-4:3.
[25] See SAC, ¶ 150.
[26] See FAC, ¶ 126.
[27] See Exhibit 3.
[28] See Exhibit 4, pg. 3:16-19; pg. 4:10-15; pg. 5:12-14; pg. 6:6-11; pg. 7:20-22; pg. 8:14-19; pg. 9:28-10:2; pg. 10:22-27.
[29] See FAC, ¶ 178.

---

11
**DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

> The harm done to the plaintiff's credit report now includes TWO UNLAWFUL DETAINERS, a FORECLOSURE, with a $16 MILLION dollar BALLOON payment due, 120 days mortgage lates, and TWO other JUDGMENTS, along with collection agencies actions.[30]

Significantly, in opposing GMACM's motion for summary judgment, Plaintiff raised this very same issue. In his opposition, Plaintiff argued that GMACM added a $16 million balloon payment to the loan and "has misreported to credit reporting agencies a non-existent balloon payment of $16 million."[31] As this issue was decided in the prior complaint, Plaintiff is collaterally estopped from raising it again in the Second Amended Complaint. Moreover, the credit report from Experian shows that there was a $0 balance as of September 2008. As such, Plaintiff cannot show how he has been damaged by this.[32]

In the accounting causes of action, Plaintiff requests a complete accounting of all transactions relating to the loan.[33] This cause of action was litigated in the prior complaint wherein Plaintiff alleges that GMACM failed to investigate the missing $40,476.92 in loan proceeds, misapplied his payments, and failed to properly account for and apply payments that Plaintiff made to Fremont and GMACM.[34] Significantly, in granting summary judgment in GMACM's favor, the Court ruled that the notice of default was proper because Plaintiff failed to make mortgage payments due. The

---

[30] *See* Plaintiff's Responses to Fremont's Special Interrogatories, Set One, pg. 14:5-8; *also see* Plaintiff's Responses to Fremont's Special Interrogatories, Set Two, pg. 5:6-7 ["Now, I see there is a 'BALLOON PAYMENT' due added to my credit report for $16 MILLION..."]. Plaintiff's responses to discovery are attached to Defendant's Request for Judicial Notice as **Exhibits 8 and 9**.

[31] *See* Plaintiff's Opposition to GMACM's Motion for Summary Judgment filed on September 28, 2009, pg. 5:7-8; pg. 10:8-9, which is attached to GMACM's Request for Judicial Notice as **Exhibit 10**.

[32] *See* Declaration of Robert Sweeting in Opposition to the Motion for Summary Judgment filed by GMAC, pg. 7:23-25; *also see* Credit Report from Experian, which is attached to Sweeting Decl. as Exhibit I. Sweeting's Declaration and Exhibit I are attached to GMACM's Request for Judicial Notice as **Exhibit 11**.

[33] *See* SAC, ¶ 184.

[34] *See* FAC, ¶¶ 60-62.

---

12

**DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Court's order also details Plaintiff's payment history and found that Plaintiff only made two mortgage payments to Fremont and GMACM prior to the foreclosure.[35]

In short, these issues were litigated in the prior complaint involving the same parties and GMACM obtained a final judgment on the merits. Hence, Plaintiff is collaterally estopped from relitigating these issues in the Second Amended Complaint.

## V. CONCLUSION

In conclusion, GMACM respectfully requests that the Court sustain its demurrer to Plaintiff's Second Amended Complaint *without* leave to amend because the same causes of action and same issues were litigated in the prior complaint, which was adjudicated in GMACM's favor via summary judgment. As such, the doctrine of res judicata and collateral estoppel bar Plaintiff from relitigating the same causes of action and issues in the Second Amended Complaint.

DATED: February 9, 2010

WOLFE & WYMAN LLP

By: /s/ Samantha Lamm
STUART B. WOLFE
SAMANTHA N. LAMM
Attorneys for Defendant
**GMAC MORTGAGE, LLC**

---

[35] *See* Exhibits 3 and 4, pg. 3:1-4:15, pg. 4:25-6:11, pg. 7:5-

13
**DEMURRER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**