present lawsuit and filed a demurrer on those grounds. The Court
granted the demurrer.

## II. STATEMENT OF APPEALABILITY

This Appeal is from a Final Summary Judgement of the Orange
County Superior Court, dated April 29, 2011, and is Authorized by
the Code of Civil Procedure, section 904.1 subsection (a)(1) to be
heard in the Court of Appeals, Fourth District, Division III

## III. STATEMENT OF FACTS

This is the fourth case between the parties. It arises from the
false reporting by GMAC to credit reporting agencies of a $16
million debt which GMAC claims they were owed by Appellant. As
a result of the false report(s), your Appellant has been prevented from
leasing a new business premises and has been required to pay 25%
interest on a car loan. (See Complaint at Clerk Transcript
Supplemental ("CTS") pages 1 - 5). Plaintiff filed a complaint with
three causes of action based on common law defamation. These
include: 1) Defamation/tortious Interference with Credit; 2)
Accounting; and 3) Declaratory and Injunctive Relief.

The prior action concerned the theft of proceeds from a home
loan which was arranged by an unlicensed mortgage broker and had a

usurious interest rate. GMAC reported to credit reporting agencies that Plaintiff/Appellant owed them a debt of about $400,000 in regard to that loan.

The trial court granted GMAC's demurrer without leave to amend based on the doctrine of res judicata and collateral estoppel because of rulings in the first action.

GMAC filed a demurrer in the present action claiming it was barred by the doctrines of res judicata and collateral estoppel. (CTS: 19 - 30.) This claim is based on the fact it was granted summary judgment in the first action, and later the court granted a Motion to Strike the Second Amended Complaint which was filed after your appellant filed an appeal from the grant of summary judgment. The Second Amended Complaint incorporated many of the allegations against GMAC as are contained in the present action. These claims were not incorporated in earlier pleadings in the first action.

Because the grant of the demurrer in the present action was based on the judgment in the first action, Appellant sets forth in some detail the facts concerning that action as follows:

THE FIRST ACTION: The first action between the parties was filed on March 20, 2008, Orange County Superior Court Case No. 30-

)                                                    )

2008-0104237. CTS: 33 - 114. It initially involved an attempt at

rescission of a bad home loan made by Fremont Investment and Loan

("Fremont") and sought the return of funds stolen by the unlicensed

escrow company to which the funds were sent. The loan was a

variable interest rate loan with minimum interest of over 10%. (CTS:

102) The loan was made in December 2006, just before Fremont was

put out of business by the federal government for misdeeds in the

mortgage marketplace. The loan was arranged by an entity known as

International Mortgage and the funds were sent to its sister company,

International Escrow. These entities had their real estate licenses

suspended prior to the making of the underlying loan and

subsequently were entirely stripped of their licenses became of the

theft of loan proceeds from prior victims. (CTS: 210 - 269; Request

for Judicial Notice Exhibit "A.")

The interest rate on the loan was usurious as it was over 10%

and not arranged by a licensed real estate broker. CTS: 102. In

addition, most of the cash-out from the loan, which was needed to re-

finance Plaintiff's 60 year old business, was stolen by International.

(See Second Amended Complaint in first action at CTS: 210-269)

In or about March or April 2007, the loan was sold. Plaintiff believed it had been sold to GMAC.

In or about June 2008, Plaintiff was abandoned by his counsel and the First Action was dismissed for lack of prosecution. While the case was "dismissed," GMAC foreclosed on your Appellant's home and took title in its name.

On November 11, 2008, GMAC filed an Unlawful Detainer action ("UD") as against Plaintiff in West Orange County Superior Court, Case No. 30-2008-00221178. (Plaintiff requests the Court take judicial notice of Complaint attached to Request for Judicial Notice as Exhibit "B.")

As soon as Appellant discovered the dismissal, he prepared a Motion to Set Aside the Dismissal. On or about December 24, 2008, Plaintiff, now in pro per, filed his Motion to Set Aside Dismissal of the first Action. The Motion was filed on December 24, 2008 and heard on January 28, 2009. (CTS: 280. Request for Judicial Notice Exhibit "C.")

GMAC served its Summary Judgment motion in the Unlawful Detainer action on or about December 31, 2008 so that Plaintiff/Appellant was unable to retain counsel to defend the action.

Instead of filing an Opposition, Plaintiff attempted to file a Motion to

Stay, Dismiss or in the alternative, to consolidate the UD with this

First case.  It was rejected as not timely filed, although the facts set

forth therein would constitute a defense to the Summary Judgment

Motion.

On January 9, 2009, Summary Judgment was granted in the UD

while your Plaintiff/Appellant's 473 to Vacate and Set Aside the

Dismissal was still to be heard in the First Action.

In early February 2009, the First Action was reinstated.

On or about March 15, 2009, GMAC transferred by Grant

Deed, title to the subject property to TCIF REO GCM California,

LLC.

Despite a total lack of title, the pendency of the first action, the

fact that title, when in GMAC's name, was gained through fraud, that

GMAC refused to apply payments which had been properly made to

and stolen by Fremont, GMAC's predecessor in interest, despite

Plaintiff's heroic attempts to cure the non-existent default in loan

payments, multiple felonies, embezzlement, fraud in the inducement

of the loan, all committed by the UNLICENSED mortgage broker,

escrow company, Fremont, GMAC and just about everyone else

)                                              )

involved, on July 1, 2009, GMAC again filed another Unlawful

Detainer against your appellant.  OCSC Case No.  30-2009-

00280569.  GMAC eventually dismissed that case for lack of title.

(See Complaint in OCSC Case No. 30-2009-00280569 attached to

Request for Judicial Notice as Exhibit "D.")

On July 17, 2009, GMAC served its Motion for Summary

Judgment on attorney Steven Hertz, who was assisting Plaintiff with

the deposition scheduled by Fremont.  (He was not Plaintiff's attorney

of record, did not file a responsive pleading, and did not give the

Motion to Plaintiff.)  (CTS: 280.  See Motion for Extension of Time

attached to Request for Judicial Notice as Exhibit "E.")

On or about September 9, 2009, Plaintiff filed numerous Doe

Amendments, naming GMAC's successors in title along with MERS

and several others.  These entities demurred on the grounds there

were no causes of action alleged against them.  (CTS: 280.  See

Notices of Doe Amendments attached to Request for Judicial Notice

as Exhibit "F.")

Despite a finding that service of the Summary Judgment

Motion was inadequate, on or about **October 28, 2009**, the Court

granted GMAC's summary judgment motion.  GMAC's principal

)                                                  )

defense on Summary Judgment was that it was merely the loan
processor for some unnamed entity despite the fact is was filing
unlawful detainers in its own name and claiming it owned the
Plaintiff's home as a result of the aforesaid foreclosure. (CTS: 280,
See Order granting Summary Judgment attached to Request for
Judicial Notice as Exhibit "G."). *In other words, GMAC asserted and
"proved" in the first action that your appellant did not owe GMAC
any money on the debt associated with the first action.*

On December 15, 2009, your Appellant filed his Verified
Second Amended Complaint in the first action. The Second
Amended Complaint for the first time addressed the false credit
report. (CTS: 210 - 269)

On December 17, 2009, the trial court denied Appellant's
Motion for Reconsideration of the grant to GMAC of summary
judgment. (CTS 318 - 319)

On or about January 5, 2010, your appellant filed a Notice of
Appeal resulting in Court of Appeal Case No.: G043281. (See Notice
of Appeal attached to Request for Judicial Notice as Exhibit H.")

Despite the fact that the first action was being appealed as to
the grant of summary judgment to GMAC, on January 7, 2010,

)                                                    )

GMAC filed a Demurrer the Second Amended Complaint based on claims of res judicata and collateral estoppel. (See Request for Judicial Notice Exhibit "I.") Appellant opposed the Motion on the grounds the matter was on appeal. (See Request for Judicial Notice Exhibit "J.") The Demurrer was granted on or about March 11, 2011 on the grounds of res judicata and collateral estoppel. (CTS: 292 - 293). The trial court subsequently denied a Motion for Reconsideration. (CTS: 281)

THE PRESENT ACTION: The present appeal concerns the fourth litigation. It involves the false report to various credit reporting agencies by Defendant GMAC that Plaintiff owes GMAC a debt of over $16 million. As aforesaid, it was determined in the first action that Plaintiff owed GMAC nothing in regard to the home loan which is the subject of that action. Despite the fact that Plaintiff and Appellant Robert Sweeting requested an investigation by the credit reporting bureaus, GMAC re-reported to those agencies that Sweeting owed this debt. GMAC demurred on the grounds of res judicata and collateral estoppel. The Court granted the motion.

Your appellant timely filed his notice of appeal.

)                                          )

## IV.  INTRODUCTION

Respondent GMAC relies on the doctrine of res judicata in its
malicious attempt to continue to defame Appellant's credit in
violation of the FCRA and California Civ. Code § 1785.25(a).  The
trial court in the first action is that Plaintiff/Appellant does not owe
any debt to GMAC.  Yet, despite multiple attempts to have credit
reporting agencies investigate and correct the report that Plainntiff
owes GMAC over $16,000,000 has been met with an affirmation
from GMAC that its report is correct.  Each request by Appellant to
credit reporting agencies to investigate and correct GMAC's is a new
violation of the FCRA and should give rise to a new cause of action.
Yet, the trial court, once without jurisdiction, and now in this action,
has refused to act.  Plaintiff was not required to amend his first action
against GMAC to allege these causes of action because the cause of
action did not accrue until over a year after the first action was filed.
Nor does Appellant seek to relitigate the same causes of action as in
the first case, to wit:  usury, theft of proceeds of a home loan by an
unlicensed and unbonded escrow company, fraud in the execution of
the loan, improper handling of payments, bureaucratic misfeasance by

GMAC in servicing the fraudulent loan on behalf of its principal, and

wrongful foreclosure.

As set forth below, Plaintiff concurs that the FCRA preempts

may state court causes of action, but that the trial court abused its

discretion in denying leave to amend the Complaint.  The doctrine of

res judicata does not apply.

### V. THE ORDER OF THE TRIAL COURT GRANTING GMAC'S DEMURRER TO THE SECOND AMENDED COMPLAINT IN THE FIRST ACTION WAS VOID BECAUSE THE TRIAL COURT LACKED JURISDICTION OVER GMAC

The term 'jurisdiction,' is "used continuously in a variety of

situations, has so many different meanings that no single statement

can be entirely satisfactory as a definition." *Abelleira v. District*

*Court of Appeal*, 17 Cal.2d 280, 287 (1941).  "Lack of jurisdiction in

its most fundamental or strict sense means an entire absence of power

to hear or determine the case, an absence of authority over the subject

matter or the parties.  [Citing situations providing examples.] . . .

[para. ] But in its ordinary usage the phrase 'lack of jurisdiction' is not

limited to these fundamental situations . . . . [It] may be applied to a

case where, though the court has jurisdiction over the subject matter

and the parties in the fundamental sense, it has no 'jurisdiction' (or

power) to act except in a particular manner, or to give certain kinds of
relief, or to act without the occurrence of certain procedural
prerequisites." *Abelleira v. District Court of Appeal*, 17 Cal.2d 280,
288 (1941). When a court lacks jurisdiction in a fundamental sense,
an ensuing judgment is void, and 'thus vulnerable to direct or
collateral attack at any time.' *Barquis v. Merchants Collection Assn.*,
7 Cal.3d 94, 119 (1972).

The general rule as to all causes, whether criminal or civil, is
the valid filing of appeal vests jurisdiction of a cause in the appellate
court until determination of the appeal and issuance of the remittitur.
*People v. Sonoqui*, 1 Cal.2d 364 (1934); *People v. Getty*, 50
Cal.App.3d 101, 107 (1975). Ordinarily in that case " 'the trial court
loses jurisdiction during that period to do anything in connection with
the cause which may affect the judgment.' [Citations.]" *People v.
Getty*, 50 Cal.App.3d 101, 107 (1975).

Here, the Second Amended Complaint in the first action (which
is the first complaint to contain causes of action similar to the ones in
the present action) was filed two days before the trial court denied
Appellant's Motion for Reconsideration of the grant of summary
judgment to GMAC. The Notice of Appeal was filed two days before

GMAC filed its Demurrer to the Second Amended Complaint. Since

jurisdiction was vested in the Court of Appeal, the trial court had no

jurisdiction over GMAC to either grant or deny the Demurrer as to

the new causes of action in Second Amended Complaint. Because

the trial court lost jurisdiction while the case was on appeal to do

anything in connection with the cause which might affect the

judgment, it was required to abstain from making any ruling as it

would modify the appealed judgment. Your appellant lacked any

mandatory appeal process to determine the validity of the ruling on

the demurrer and would be required to file a discretionary Writ.

Given a lack of jurisdiction in the trial court, the ruling should

have no effect on the present litigation.

## VI.  THE DOCTRINE OF RES JUDICATA DOES NOT BAR THE PRESENT ACTION BECAUSE THE CAUSE OF ACTION FOR INTERFERENCE WITH CREDIT BECAUSE IT WAS NOT LITIGATED OR REQUIRED TO BE LITIGATED IN THE PRIOR ACTION

In *Rice v. Crow*, 81 Cal. App. 4th 725 (Cal. App. 2d Dist.

2000), the Court discussed the doctrine of res judicata as follows:

> The doctrine of res judicata consists of two
> different aspects. (Vezina v. Continental Cas. Co. (1977)
> 66 Cal. App. 3d 665, 669 [136 Cal. Rptr. 198].)  First, " '
> "it 'precludes parties or their privies from relitigating a
> cause of action that has been finally determined by a

court of competent jurisdiction.' " ' " (Ibid., italics added.) This aspect of res judicata has traditionally been referred to as "res judicata" or "claim preclusion." Second, " ' " 'Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit as to the parties on a different cause of action.' " [Citations.]' " (Id. at pp. 669-670.) This latter aspect of res judicata is known as "collateral estoppel" (ibid.) or "issue preclusion." (Vandenberg v. Superior Court (1999) 21 Cal. 4th 815, 824 [88 Cal. Rptr. 2d 366, 982 P.2d 229]; Kelly v. Vons Companies, Inc. (1998) 67 Cal. App. 4th 1329, 1335 [79 Cal. Rptr. 2d 763].)

"Res judicata is applicable only to the same causes of action between the same parties or their privies. As stated in Branson v. Sun-Diamond Growers (1994) 24 Cal. App. 4th 327, 340 [29 Cal. Rptr. 2d 314]: " 'In its primary aspect, res judicata operates as a bar to the maintenance of a second suit between the same parties or parties in privity with them on the same cause of action.' " (Italics added.) (See also Krier v. Krier (1946) 28 Cal. 2d 841, 843 [172 P.2d 681] ["It is settled, however, that a judgment in a prior action between the same parties on the identical cause of action is res judicata, and a bar to a second suit thereon . . . ." (Italics added.)]; Goddard v. Security Title Ins. & Guar. Co. (1939) 14 Cal. 2d 47, 51 [92 P.2d 804] [" 'First, a final judgment, rendered upon the merits by a court having jurisdiction of the cause, is conclusive of the rights of the parties and those in privity with them, and is a complete bar to a new suit between them on the same cause of action. This is the general doctrine of res judicata' " (Italics omitted.)].)

In determining the validity of a plea of **res judicata** three

questions are pertinent: (1) Was the issue decided in the prior

adjudication identical with the one presented in the action in

)                                        )

question? (2) Was there a final judgment on the merits? (3) Was the

party against whom the plea is asserted a party or in privity with a

party to the prior adjudication? *Bernhard v. Bank of America*, 19

Cal.2d 807 (1942)

In determining whether an issue was decided in a prior action,

California relies on the primary right theory. This is a theory of code

pleading which provides that a "cause of action" is comprised of a

"primary right" of the plaintiff, a corresponding "primary duty" of the

defendant, and a wrongful act by the defendant constituting a breach

of that duty. *McKee v. Doud*, 152 Cal. 637, 641 (1908). The most

salient characteristic of a primary right is that it is indivisible: the

violation of a single primary right gives rise to but a single cause of

action. *Slater v. Blackwood*, 15 Cal.3d 791, 795 (1975). A pleading

that states the violation of one primary right in two causes of action

contravenes the rule against "splitting" a cause of action. *Wulfjen v.

Dolton*, 24 Cal.2d 891, 894-895 (1944).

As far as its content is concerned, the primary right is simply

the plaintiff's right to be free from the particular injury suffered.

*Slater v. Blackwood*, supra, 15 Cal.3d 791, 795. It must therefore be

distinguished from the legal theory on which liability for that injury is

)                                                    )

premised: "Even where there are multiple legal theories upon which

recovery might be predicated, one injury gives rise to only one claim

for relief." (Ibid.) The primary right must also be distinguished from

the remedy sought: "The violation of one primary right constitutes a

single cause of action, though it may entitle the injured party to many

forms of relief, and the relief is not to be confounded with the cause

of action, one not being determinative of the other." *Wulfjen v.*

*Dolton*, supra, 24 Cal.2d 891, 895-896.

The primary right theory has a fairly narrow field of

application. It is invoked most often when a plaintiff attempts to

divide a primary right and enforce it in two suits. The theory prevents

this result by either of two means: (1) if the first suit is still pending

when the second is filed, the defendant in the second suit may plead

that fact in abatement. Code Civ. Proc., § 430.10, subd. (c); *Wulfjen*

*v. Dolton*, supra, 24 Cal.2d 891, 894-895; or (2) if the first suit has

terminated in a judgment on the merits adverse to the plaintiff, the

defendant in the second suit may set up that judgment as a bar under

the principles of res judicata. *Panos v. Great Western Packing Co.*,

21 Cal.2d 636, 638-640 (1943). The latter application of the primary

right theory appears to be most common: numerous cases hold that