## Exhibit 1-A

**Proof of Claim No. 2582**

B 10 Modified (Official Form 10) (12/11)

Claim #2582  Date Filed: 11/8/2012

| UNITED STATES BANKRUPTCY **COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor and Case Number: **Residential Capital, LLC, Case No. 12-12020** | ▼ |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):
**Shane M. Haffey**

Name and address where notices should be sent:
**Heather Boone McKeever**
**MCKEEVER LAW OFFICES PLLC**
**P.O. Box 1181 Isle of Palms, SC 29451**

Telephone number: **843-323-1174**         email: **foreclosurefraud@insightbb**

Name and address where payment should be sent (if different from above):
**foreclosurefraud@insightbb.com**

Telephone number:            email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:_____**
*(If known)*

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ **5,000,000.00+**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** **Document Fraud, forgery, fraud on the court**
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** __ __ __ __ | **3a. Debtor may have scheduled account as:** **Haffey v GMAC 08-459** (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** **Consolidated Cases** (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate ☐Motor Vehicle ☐Other
**Describe:**

**Value of Property:** $_____  **Annual Interest Rate_____%** ☐Fixed ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $_____           **Basis for perfection:** _____

**Amount of Secured Claim:** $_____      **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
                    $_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.
☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or   ☐ I am a guarantor, surety,
(Attach copy of power of attorney, if any.)   their authorized agent.   indorser, or other codebtor.
              (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Heather McKeever 11/7/12**
Title: **/s/Heather McKeever**
Company: _____      Signature _(signed)_ **11-7-12**
                    (Signature)      (Date)
Address and telephone number (if different from notice address above):
_____
_____

Telephone number:            Email:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

NOV 0 8 2012

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



1212020121108000000000096

Docket #1227  Date Filed: 8/17/2012



RECEIVED
AUG 17 2012
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

**MCKEEVER LAW OFFICES PLLC**
Heather Boone McKeever, Esq.
P.O. Box 1181
Isle of Palms, South Carolina 29451
Telephone:  843-323-1174
Facsimile:   859-327-3277

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | **Case No. 12-12020 (MG)** |
| | ) | |
| **RESIDENTIAL CAPITAL, LLC, et al.,** | ) | **Chapter 11** |
| | ) | |
| Debtors. | ) | **Jointly Administered** |
| | ) | |

---

### SCHEDULED CREDITOR'S MOTION FOR THE CLARIFICATION/ENFORCEMENT OF THE AUTOMATIC STAY AGAINST THE DEBTORS, CO-CREDITOR DEUTSCHE BANK AMERICAS AND COUNSEL

Comes the Scheduled Creditor, Shane M. Haffey, a family farmer, by counsel, and hereby files his Motion for the Enforcement of Automatic Stay against the Debtors and Enforcement of the Stay and Injunctive Relief Against Co-Creditor Deutsche Bank Americas and its Counsel of Record.   The Declaration of the Movant and that of undersigned counsel are attached hereto and incorporated herewith as Exhibits "A" and "B," respectfully.   Although there are claims against multiple Debtors, unless otherwise specified, the term "Debtor(s)" refers to Debtor GMAC Mortgage LLC.

The Motion is based on the following Memorandum:

1212020120821000000000002

## MEMORANDUM FOR CLARIFICATION/ENFORCEMENT OF THE AUTOMATIC STAY

### INTRODUCTION

On August 8, 2012, the Court entered its MEMORANDUM OPINION AND ORDER DENYING AURORA BANK'S MOTION TO MODIFY THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d.) (ECF Doc. # 1021.)

Although the opinion in regards to the Automatic Stay was detailed in its factual and legal analysis as to both bankruptcy law and the application of the Final Supplemental Order of July 13, 2012, the heart and soul of the decision rested in the Court's affirmation that "the Court will not permit the automatic stay to be used as both a sword and a shield." *Id.* at 2.

The Motion before the Court involves the application of the "sword and shield" principal in the inverse, to a series of homeowner creditor claims against the Debtors, ("the cases,") which are pending before the 6th Circuit Court of Appeals and the United States District Court for the Eastern District of Kentucky Lexington Division and the Kentucky Fayette Circuit Court.[1]   The Motion also pertains to directly related potential claims against the Debtors, individual employees of the Debtors and two of the Debtor's outside litigation law firms as Co-Defendants.

The cases have been listed by the Debtors on its schedules as unsecured claims.

---

[1] One of cases is "potentially" before the Kentucky Fayette Circuit Court as it is a Kentucky state filed slander of title, quiet title, and forgery claim against a "robo signed" Assignment of Mortgage drafted, executed and notarized by GMAC Mortgage LLC employees.  One of the issues in the case is the attempted removal to Federal Court by GMAC's attorneys, Bradley, Arant Boult, and Cummings.  (BABC,) and the subsequent Motion to Remand filed by the farm owner/creditor.

The cases have direct monetary claims against debtors GMAC Mortgage LLC, Rescap, RALI, RFC, and individual employees of GMAC Mortgage LLC.

The claims are in excess of the fair market value of the Lexington, Kentucky family farm which is at the crux of the cases.

The cases contain direct monetary claims against employees, such as GMAC robo signer, Patricia Kelleher and unnamed employees who played a part in fraudulent document drafting, execution and recording of both the Note, endorsements to the Note and Assignments of Mortgage.

The cases contain pending and potential claims against the agents of the Debtors, including individual attorneys and the Debtors' retained law firms of Bradley Arant Boult Cummings (BABC) and Cincinnati foreclosure mill, Dinsmore & Shohl.

The cases contain claims against at least one "entity," Deutsche Bank as Trustee, for which the Debtors could be contractually obligated for damages under a SEC registered Pooling and Servicing Agreement. (PSA.)[2]    Under a PSA, the Debtor/Defendants will be responsible for damages awarded against Co-Defendant Deutsche Bank as Trustee, especially punitive jury awards for overt acts of negligence and for the alleged fraud committed by the Debtors' employees and agents.

GMAC Bank, is the specific endorsee to a copy of Note allegedly used by Deutsche Bank in a foreclosure.

---

[2]   Deutsche is referred to as an "entity" due to the fact that the Deutsche MBS Trust Corpus named by GMAC Mortgage LLC, as the Plaintiff in the lien enforcement case, does not exist in the records of the SEC or IRS.   Additionally, The GMAC robo signed Assignment of Mortgage, from MERS to Deutsche Bank as Trustee has no Trust Corpus listed.   The Assignment of Mortgage has been deemed fraudulent and a forgery by expert witness, Hon. Lynn Syzmoniak.

The direct claims in the cases against the Debtor/Defendants and Deutsche Bank put the Debtor/Defendants and Deutsche as Trustee in direct conflict. Regardless of this conflict of interest, the law firm BABC, represents both Deutsche Bank and the Debtor/Defendants simultaneously.

Although Mortgage Electric Registration Systems, Inc. ("MERS",) is a party to all the cases and is represented by it own Louisville, Kentucky counsel, the firm BABC also represents robo signer, Patricia Kelleher as a Defendant who is sued for fraud and forgery in her capacity as a MERS employee.

## UNDISPUTED FACTUAL BACKGROUND

On October 15, 2008, pursuant to Regulation Z of the Truth in Lending Act, the owners of a family farm rescinded a mortgage executed on May 18, 2007. The lien was not removed. Regardless, and pursuant to the TILA, the owners made a written "tender offer" for the value of the property and were fully prepared to follow the conditions of the TILA in regards to the rescission.

On the date of the rescission, the owners had never made a late payment in relation to the mortgage lien.

Prior to the rescission, payments were being made to Debtor, GMAC Mortgage LLC.

On the date of the rescission and up and until October 2009, the mortgage in question was recorded in the name of Mortgage Electronic Registration Systems, Inc. ("MERS.")

The Mortgage has never been recorded in the name of GMAC Mortgage LLC or GMAC Bank.

MERS had recorded the mortgage via an Assignment of Mortgage from the original Mortgagee, Bank of the Bluegrass and Trust Company.

4

The Assignment of Mortgage to MERS was dated, May 14, 2007, four days prior to the execution of the original mortgage.

The Assignment of Mortgage to MERS listed MERS as the "grantee" in its own right, not as a "nominee" of another entity.

MERS has never been a party in the chain of title to any Note for which the Mortgage would have been attached.

As a result of GMAC and MERS ignoring the TILA rescission, for which a written tender offer was made, and due solely to the continued refusal of counsel for GMAC Mortgage LLC, to engage in any form of settlement or mediation, the owner/creditors have been put through four years of costly federal litigation, with legal fees equating to up to 40% of the net present value of the farm.[3]

One year after the homeowners filed three separate monetary claims against the Debtors and the original lender and while a Declaratory Judgment on the TILA rescission and the direct monetary claims were pending, attorneys for the Debtors filed a lien enforcement (foreclosure) claim in equity in Federal Court.

The foreclosure claim was filed by the Debtor, GMAC Mortgage LLC's law firm.

The named Plaintiff used by the Debtors' law firm for the foreclosure claim was Deutsche Bank Americas as Trustee for 2007 QS-10 Trust.

---

[3]    The owner/creditor recently obtained the attorneys fees charged by BABC to GMAC Mortgage, LLC.    ($119,000.00+.)    Although the law firm BABC has represented Debtors GMAC Mortgage LLC, RALI, and RFC, simultaneously therewith, Deutsche Bank, MERS, and individual "employees" of MERS, the attorneys fees have been exclusively charged to debtor GMAC Mortgage LLC.
    Pursuant to the formula mandated and utilized by Fannie Mae, the attorneys fees charged to the Debtors, equate to nearly 40% of the "net present value" of the farm.

The foreclosure Complaint filed by GMAC's law firm in the name of Deutsche Bank contained a Note specifically endorsed to GMAC Bank.

In the Chapter 11 at hand, there are two cases at issue, listed on the schedules of the Debtors. The cases involve allegations of fraud, forgery and fraud on the Court against the Debtor's and the Debtor's law firms.

## PROCEDURAL BACKGROUND TO THE CREDITOR'S CASES

1. **Residential Capital LLC c/o KCC PRF: HAFFEY-DEUTSCHE BANK & TRUST COMPANY OF THE AMERICAS V. HAFFEY 08-cv-459**

   The scheduled claims against the Debtor are contained in four pending consolidated cases, noted by lead case, 08-cv-459, and are in listed in chronological order:

**(MERS SLANDER OF TITLE)** [4]
08-cv-456  *Haffey v. MERS*. Pending 6th Circuit Court of Appeals, case no. 10-5999. Currently held in abeyance.

   The Assignment of Mortgage from Bank of the Bluegrass to MERS us attached hereto as Exhibit "C."

a.) Kentucky State Statutory Slander and Quiet Title against MERS and any and all Interested Parties to a May 14, 2007, Assignment of Mortgage to MERS.
   - MERS held the May 14, 2007, Assignment of Mortgage in its own name, rather than as a "nominee."
   - The original Mortgage was not executed by the owners until May 18, 2007.
   - The original Mortgage can not be produced.
   - GMAC Mortgage LLC and GMAC Bank had Notice of the case and chose not to participate.

---

[4] The outcome of the cases in relation to MERS ability to record and/or transfer mortgages filed in its own name, and the identity of parties who have standing to participate in Declaratory Judgments to TILA Regulation Z Rescissions; are two of a half a dozen issues which will be of first impression in relation to Kentucky law. The decisions not only effect every MERS recorded mortgage in Kentucky, but will have broad and far reaching effect on MERS mortgages in other judicial foreclosure states as well.

- The case challenges for the first time, the validity of every Mortgage and Assignment of Mortgage ever recorded in the state of Kentucky in the name of MERS in its own right.

## (DECLARATORY JUDGMENT ON THE RESCISSION) [5]
08-cv-459  *GMAC Mortgage LLC v. Haffey.* Pending 6th Circuit Court of Appeals.

a.)  Federal Declaratory Judgment in relation to the owners' October 15, 2008, TILA rescission of a MERS Mortgage lien.
  - Filed by GMAC Mortgage LLC.
  - GMAC Mortgage LLC or GMAC Bank have never been a Mortgagee.
  - MERS, is the Mortgagee, in its own right, not as a "nominee."
  - There is no Note or Mortgage entered into evidence with the Declaratory Complaint.
  -  In 2009, Debtor's attorneys substitute a third party, Deutsche Bank as the GMAC Mortgage LLC Plaintiff and begin their simultaneous representation of Debtors and Co-Creditor, Deutsche Bank Americas.
  - March 2, 2010, recorded Notice is given to the Debtors and their law firm that there is an FDIC investigation in regards to the robo signed Assignment of Mortgage.   (The investigation became part of the Department of Justice's fraud prosecution in the *Szymoniak,* Qui Tam case.)

## (TILA AND FRAUD CLAIMS FOR DAMAGES)
08-cv-510, *Haffey v. GMAC Mortgage LLC and MERS.*  Pending 6th Circuit Court of Appeals, case no. 10-5999.  Currently held in abeyance.

a.)  Damage claim based in TILA and Kentucky Conspiracy law against GMAC Mortgage LLC and the Mortgagee, MERS.
b.)  Treble and punitive damage claims in excess of 5 million dollars, ($5,000,000.00.)

## (LIEN ENFORCEMENT IN PERSONAM AND IN EQUITY WITH MONETARY COUNTERCLAIMS UNRELATED TO SET OFF)
09-cv-362, *Deutsche v. Haffey.*    Pending 6th Circuit Court of Appeals. Held in abeyance.

The Note endorsed to GMAC Bank is attached as Exhibit "D."
The 2009 Assignment of Mortgage from MERS is attached as Exhibit "E."
The Expert Witness Affidavit of Hon. Lynn Szymoniak is attached as Exhibit "F."

---

[5] Although GMAC Mortgage LLC filed a Declaratory Judgment in relation to the TILA Rescission, while a  Slander/Quiet Title against lien recorder, MERS, was pending, GMAC never participated as a party claiming an interest to the property, in the Slander/Quiet Title, 08-cv-456.

a.)  A lien enforcement claim (foreclosure) in equity by Deutsche Bank of Americas as a Trustee for an unregistered 2007 REMIC MBS Bond Fund/Trust.  BABC (Debtors' law firm) are current attorneys of record for Deutsche.

-    Note attached to the Complaint is specifically endorsed to GMAC MORTGAGE LLC.

-    There is a 2009 Post-foreclosure Mortgage Assignment from MERS in its own right to Deutsche Bank executed by GMAC Employee, posing as an employee of MERS.

-    Affidavits executed by GMAC Mortgage LLC employees in relation to ownership of the Note, alleged to be based in fraud and a Fraud on the Court.

-    Rule 11 raised against GMAC Mortgage LLC's attorneys, BABC as well as Fraud on the Court.

-    Assignment of Mortgage deemed a fraud and forgery by Expert Witness, Lynn Szymoniak.

-The Affidavit and the case itself are contained in the evidentiary file of the Department of Justice's prosecution of the Debtors,

-    Debtors law firm BABC have unique first hand knowledge that the Szymoniak Affidavit is part of the files of the Department of Justice.

-  No discovery has ever been taken.

-    Damage issues regarding BABC's violations of Rule 26 in regards to BABC's refusal to provide initial Court ordered discovery.

-    Potential damage claims for Debtors' violation of the FDIC April 13, 2011 Consent Judgment. The foreclosure case was filed during the period covered by the Consent Judgment in regards to the Cease and Desist Order, mandatory litigation mitigation and financial remuneration for  the filing of the fraudulent foreclosure.

-  Two scheduled Mediations for the settlement of all four cases, unilaterally cancelled by BABC attorney, Christopher Thorsen, counsel of record for both Deutsche  and the Debtors.

- Kentucky law requires an *in personam* claim and Judgment against all parties to the underlying debt, "the Note," as well as all parties to the Mortgage.

-    Direct Counterclaim damages in excess of 5 million dollars ($5,000,000.00.)

**2.    (SLANDER OF TITLE, FORGERY AND FRAUD, AGAINST DEUTSCHE AND GMAC ROBO SIGNER PATRICIA KELLEHER)** [6]

---

[6] The term "robo signer" is the official term used by the Justice Department in relation to the multi-billion dollar mortgage document fraud Complaint and 2012 Consent Judgment, filed by the Federal Government and all 50 Attorney Generals, to describe GMAC's use of its own employees to fabricate, execute and notarize false Affidavits in relation to  ownership and interest in mortgage loans, including the GMAC employees statements under oath on Assignments of Mortgages that they are "Vice Presidents" or

**Residential Capital LLC c/o KCC PRF:  HAFFEY, ON BEHALF OF HIMSELF & AS A RELATOR QUI TAM ON BEHALF OF FAYETTE COUNTY CLERK VS GENTRY MECHANICAL SYS ET AL 11-cv-188.**

a.)  *Qui Tam* Slander of Title against Deutsche and GMAC Mortgage LLC employee, Patricia Kelleher.

b.)  Quiet Title as to robo signed Assignment of Mortgage to Deutsch generically with no MBS reference.

c.)  Fraud and forgery under common law and Kentucky's recording and forgery statutes in the drafting, execution, notary and recording of a 2009 post-foreclosure Assignment of Mortgage from MERS to Deutsche Bank as Trustee. (There is no Trust Corpus or MBS listed on the Assignment of Mortgage.)

d.)  Fraud on the Court by GMAC Mortgage LLC and counsel of record BABC.

e.)  The case challenges for the first time, the legality of every Assignment of Mortgage ever recorded in the State of Kentucky wherein a GMAC Mortgage LLC employee has executed such posing as a MERS employee.

f.)  Treble and punitive damages requested in excess of five million dollars ($5,000,000.00.)

   -   The Assignment of Mortgage has been deemed a fraud and forgery by the Expert Witness Affidavit, of Hon. Lynn Szymoniak.

   -   The Assignment of Mortgage is in the possession of the Department of Justice and is in the evidentiary file in relation to the Federal *Qui Tam* case,

   -   GMAC Mortgage LLC employee, Patricia Kelleher is a named Defendant in her individual capacity and as an employee of MERS.

   -   Counsel for GMAC Mortgage LLC, BABC is simultaneously representing Deutsche Bank as the recorded lien holder, Patricia Kelleher as a GMAC employee and MERS.

   -   Liability  for all damages will be the sole responsibility of the Debtors.

## POTENTIAL CLAIMS

In addition to the pending cases, the owner/creditor will be filing  direct monetary claims against the Debtors and their law firm, BABC.

The first claim is based on the Debtors and BABC's knowledge of the cases as part of an investigation by the Department of Justice, which includes the Affidavit of Expert Witness, Hon. Lynn Szymoniak and the specific Note and Mortgage documents at the center of the current cases.

---

other executives of MERS.    *See*. http://www.justice.gov/opa/pr/2012/March/12-asg-306.html, http://www.justice.gov/opa/documents/residential-consent-judgement.pdf

In April 2012, at the request of the Department of Justice, undersigned counsel met with and was interviewed by, United States Attorney, Hon. Fran Trapp, at the Department of Justice in Charleston, South Carolina.

United States Attorney Fran Trapp is the prosecutor in charge of the *Qui Tam* foreclosure fraud prosecution, *United States ex. Rel. Szymoniak v. GMAC/RESCAP, et al.,* which led to the 95 million dollar settlement with four of the five Defendants. *See Ms. Trapp's Press Release.*

http://www.justice.gov/usao/sc/LivePressReleases/3.12.12%20Szymoniak.pdf. The press release is attached for the convenience of the Court as Exhibit "G."

The Szymoniak Settlement is part of the National Mortgage Settlement ("the Consent Judgment") reached with both the Federal Government and the 50 Attorney Generals in regards to robo signing and other accusations of mortgage fraud. *United States of America v. Bank of America, et al.,* 2012-cv-361, United States District Court for the District of Columbia.

The Debtors are parties to and are currently bound by the Federal multi-billion dollar, Consent Judgment.

The second claim pertains to the Debtors and BABC's partnership in regards to the deliberate violations of the Debtors April 13, 2011, Consent Judgment between the Debtors and Board of Governors of the Federal Reserve and the FDIC.

The Judgment specifically targets the foreclosure actions of the Debtors between January 1, 2009 through December 31, 2010.   The foreclosure in the cases at hand was filed in October 2009.

As part of the April 13, 2011, Judgment, the Debtors admitted:

10

"in connection with the process leading to certain foreclosures involving the Servicing Portfolio . . .

(a) Filed or caused to be filed in state courts and in connection with bankruptcy proceedings in federal courts numerous affidavits executed by employees of the Mortgage Servicing Companies or employees of third-party providers making various assertions, such as the ownership of the mortgage note and mortgage, the amount of principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such knowledge or review;

(b) Filed or caused to be filed in courts in various states and in connection with bankruptcy proceedings in federal courts or in the local land record offices, numerous affidavits and other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

(c) Litigated foreclosure and bankruptcy proceedings and initiated non-judicial foreclosures without always confirming that documentation of ownership was in order at the appropriate time, including confirming that the promissory note and mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party;

(d) Failed to respond in a sufficient and timely manner to the increased level of foreclosures by increasing financial, staffing, and managerial resources to ensure that the Mortgage Servicing Companies adequately handled the foreclosure process; and failed to respond in a sufficient and timely manner to the increased level of Loss Mitigation Activities to ensure timely, effective and efficient communication with borrowers with respect to Loss Mitigation Activities and foreclosure activities; and

(e) Failed to have adequate internal controls, policies and procedures, compliance risk management, internal audit, training, and oversight of the foreclosure process, including sufficient oversight of outside counsel and other third-party providers handling foreclosure-related services with respect to the Servicing Portfolio.

*In the Matter of ALLY FINANCIAL INC., ALLY BANK, RESIDENTIAL CAPITAL, LLC GMAC MORTGAGE, LLC FRB* Docket No. 11-020-B-HC, 11-020-B-DEO, FDIC-11-123b, at 3.

There are three employees of the Debtors, who took personal responsibility in regard to the implementation and strict adherence to the Consent Judgment, in as far as the immediate "Cease and Desist" of the prosecution of illegal foreclosures and the payment

of damages to homeowners.

> WHEREAS, the boards of directors of Ally Financial, ResCap, and GMAC Mortgage, at duly constituted meetings, adopted resolutions authorizing and directing Michael A. Carpenter, Thomas Marano, and Steven M. Abreu to enter into this Consent Order to Cease and Desist (the "Order") on behalf of Ally Financial, ResCap, and GMAC Mortgage, respectively, and consenting to compliance with each and every applicable provision of this Order by Ally Financial, ResCap, and GMAC Mortgage, and their institution-affiliated parties, . . .

*Id.* at 6.

The Debtors as represented by the three individual employees, and in partnership with the Debtors' law firm, BABC, have violated the Consent Judgment in regards to both the defense of the Creditor's 2008 monetary claims and the 2009 attempted foreclosure of the family farm.

The Creditor is third party contractual beneficiaries of the April 13, 2011 Consent Judgment and the 2012 Universal Consent Judgment executed by the Debtors.

There are outstanding claims against the Debtors, the Debtors' law firm BABC and Mr. Carpenter, Mr. Marano and Mr. Abreu for the violations of the Consent Order.

The direct monetary damages are directly connected to the pending creditor's cases at hand.

## DISCUSSION

## I.

## THE INJUNCTION PROVIDED BY THE AUTOMATIC STAY SHOULD BE ENFORCED IN REGARDS TO THE SCHEDULED CLAIMS (THE CASES)

The automatic stay affords "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. New Jersey Dep't of Evntl. Protection*, 474 U.S. 494, 503 (1986). It maintains the status quo and protects the debtor's ability to formulate a plan for the sale or other disposition of property of the estate. COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. rev. 2012).

The automatic stay is intended to "allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (internal quotation omitted). In this regard, the automatic stay "promot[es] equal creditor treatment and giv[es] the debtor a breathing spell." *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). The stay is not meant, however, to be used by a debtor to pursue its creditors, as "more litigation is hardly consistent with the concept of a 'breathing spell' for the debtor." *Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009).

Instead, "[t]he stay is a shield, not a sword" that should "help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike." Id.

*MEMORANDUM OPINION AND ORDER DENYING AURORA BANK'S MOTION TO MODIFY THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)*, August 8, 2012, at 5.

As with the Aurora case, there are direct monetary claims against the Debtors and/or their agents in 08-cv-456, 08-510 and 11-188 and direct monetary Counterclaims in 09-362.

At the same time, the Debtors are the real party in interest and financially liable for damages resulting from the Declaratory Judgment in consolidated case 08-cv-459:

At the same time the Debtors may not pursue their claim for declaratory relief against [Haffey.] *Sternberg v. Johnston*, 582 F.3d 1114, 1123-24 (9th Cir. 2009) ("[W]e have explained that the stay gives the debtor time to put finances back in order, offers the debtor an opportunity to reorganize so that creditors can be satisfied to the greatest extent possible, and prevents creditors from racing to devour the debtor's estate . . . . We have never said the stay should aid the debtor in pursuing his creditors . . . . The stay is a shield, not a sword." (internal quotation marks and citations omitted)).

*Id.* at 8.

## II.
## THE NOTE IN CONTROVERSY IS "ON PAPER" AN ASSET OF THE DEBTORS ESTATE AND HAS BEEN ILLEGALLY UTILIZED TO ATTEMPT A LIEN ENFORCEMENT IN THE NAME OF DEUTSCHE BANK

13

While three claims were pending against the Debtors in relation to the TILA rescission, Document fraud, and Slander of Title, the Debtors attorneys filed a foreclosure in equity in the name of Deutsche Bank Americas as Trustee of the 2007 Qs-10 Trust.  Case no.  09-362.

No such MBS entity is registered with the SEC or the IRS.

The proceeds of the lien enforcement were for the sole benefit of the Debtors.

All legal fees in regard to the lien enforcement have been invoiced to the Debtors.

The copy of a Note attached to the foreclosure is specifically endorsed to GMAC Bank.

The Debtors bankruptcy schedules shows that Deutsche Bank Americas is one of the largest creditors of the Debtors.

However, Deutsche Bank is represented by Debtors law firm, BABC.

Although the legitimacy of both GMAC and Deutsche Bank as a creditor, has always been in question, (beginning with the October 15, 2008 TILA rescission and Slander and Quiet Title Complaint,) for purposes of this Motion, the owner/creditor asserts that the copy of the Note, as presented as evidence, is an asset of the Debtors' bankruptcy estate.

As such, Deutsche Bank and Debtor's law firm, BABC, should be enjoined from further participating in any and all litigation regarding the property and should be sanctioned accordingly.

Upon information and belief, neither the original of the Note or the Mortgage exist.

The Movant/creditor,  is not a signatory to the Note and denies the authenticity of his signature to the Mortgage.

The Movant/creditor does not have any financial obligation under the terms of the

14

Note presented.

Mr. Haffey owns the family farm under Kentucky law in a tenancy by its entirety.

Under Kentucky law, if the Mortgage in question were ever produced and deemed authentic and if the original Note were produced by the real owner and successfully used to foreclose the lien, the liquidation of the property could not take place as with the wedding vows, "the two have become one." The property of the tenancy by the entirety can not be divided (liquidated) by the creditors of one of the tenants (spouses.)

### III.
### THE DEBTORS BANKRUPTCY ATTORNEYS (OR SPECIAL COUNSEL) SHOULD EXCLUSIVELY REPRESENT THE DEBTORS IN LITIGATION IN REGARDS TO THE CASES AND ALL FUTURE POTENTIAL CLAIMS AGAINST THE DEBTORS

As previously discussed, the Debtors outside litigation firm, BABC is potentially a Third Party Defendant in the cases at hand and a Co-Defendant in new direct monetary claims against the Debtors in regard to their unique knowledge of these cases as part of the Department of Justice's evidentiary file of the *Szymoniak, supra., Qui Tam* case and BABC's role in the Debtor's violations of the April 13, 2011, Consent Judgment.[7]

There is a conflict of interest between the Debtors and BABC. The continued involvement of BABC in the cases puts the interests of both the Debtors and its Creditors at stake.

The record in the cases and the Declaration of undersigned counsel, in regards to

---

[7] There has been no discovery in any of the pending Consolidated Cases. Rule 11 and Fraud on the Court have been raised against BABC. Undersigned counsel has, to date, refrained from naming BABC as a Third Party Defendant, pending receipt of information from the Department of Justice as to the extent of BABC's knowledge that the property in question and the "loan" documents proffered by BABC to the United States District Court are included in the evidentiary file of the DOJ's prosecution of the Debtors in the *Szymoniak* Qui Tam case.

15

BABC's handling of the cases, at the very least gives the Appearance of Impropriety and could, with the taking of discovery along with the records of the Department of Justice, show that BABC was a Co-Conspirator with the Debtors in regard to the fraud issues raised in the cases.

No less significant is the fact that the record in the cases and the Declaration of undersigned counsel show that BABC has been working against the Debtor's best interest in the cases.[8]

The potential new direct monetary claims will be filed within the bankruptcy, pursuant to the Automatic Stay.   The claims directly stem from the actions of the Debtors and its law firm BABC, in the cases *sub judice* and BABC' dealings with Federal Regulators, the FDIC, the OCC and the Department of Justice as counsel for the Debtors.

The cases should be contained within the bankruptcy estate and brought to their logical conclusion by Debtor's bankruptcy counsel, or Court appointed special counsel. The law firm BABC should be barred from further participation in any current or future claims regarding the owner/creditor's property and the creditor's direct monetary claims against the Debtors.

---

[8] The legal fees paid to BABC are funded by the US taxpayers, who currently own a 74% majority share of the Debtors.   In an ironic twist, the owners of the property in question are part of the pool of taxpayers who are the majority shareholders of the Debtors; much like the Bond Holders to an MBS.   The owner/creditors to these cases, and the rest of the tax paying public have, involuntarily and unwittingly funded the law firms who have participated in the Debtors' illegal foreclosure practices and have funded the improper taking of thousands of American homes.   As the majority shareholder, the tax paying public are arguably the only real parties in interest with a majority in relation to the Debtors Bankruptcy and all other affairs of the Debtors and its parent company, Ally Bank.

## CONCLUSION

WHERFORE, the Movant/creditor respectfully requests that the Motion be heard by

the Court at its earliest convenience and the Automatic Stay enforced and an Order issued

accordingly.

Dated: August 16, 2012                              Respectfully submitted,

/s/ Heather Boone McKeever
MCKEEVER LAW OFFICES PLLC
P.O. Box 1181
Isle of Palms, SC 29451
Tel. 843-323-1174
Fax. 859-327-3277
COUNSEL FOR CREDITOR
SHANE M. HAFFEY

17



RECEIVED
AUG 1 7 2012
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

CIVIL ACTION  5:08-459-JBC

GMAC MORTGAGE LLC                                      Plaintiff

v.                          <u>**DECLARATION OF SHANE HAFFEY**</u>

HEATHER BOONE MCKEEVER, *et al.*                 Defendants

* * * * * * * * * * *

 I, Shane Haffey, pursuant to 28 U.S.C. § 1746, in opposition to the substituted

Plaintiff Deutsche Bank's Motion for Summary Judgment and in support of my own

Motion for Summary Judgment declare and state:

1. Unless otherwise stated herein, I have personal knowledge of the facts stated in
this declaration and when called upon by a court of law to do so, I  will testify
competently to them.

2. Since 2003, I have been the owner as a tenant by the entirety of the family
farm which is the subject matter of these actions.   The farm has been at all
times relevant hereto, my principle residence where my family resides.

3. My sole source of income is through the farm.

4. On the afternoon of May 18, 2007, I executed a Mortgage lien relating to the
farm to complete the construction of my farm house, barn and paddocks.

5. The Mortgage I signed replaced a  February 21, 2007 renewal Note which
was  set to renew on February 21, 2008.  Exhibit (1.)

6. I did not execute a Promissory Note in relation to the Mortgage.

EXHIBIT  A

7. When I arrived to sign the Mortgage on May 18, 2007, the document was turned to the signature page with a post-it arrow pointing to the signature line.   I was alone when I executed the mortgage.   There was no witness.

8. I did not see any dates on the Mortgage.

9.  I did not review the Mortgage document prior to signing it.

10. I believed that the Mortgage was a re-financing with the Bank of the Bluegrass for a private in-house loan.  I had executed several Mortgages over the years with the Bank of the Bluegrass prior to this Mortgage.   All prior loans were private and held in-house.

11. The loan and Mortgage I signed was not really with the Bank of the Bluegrass, but was in turn, a Mortgage relating to a loan made to my wife by GMAC Bank.  Bank of the Bluegrass had nothing to do with the loan and acted merely as an agent for GMAC.

12. GMAC Bank reported to me that the insurance policy put in place at the loan's inception was for the benefit of GMAC not the Bank of the Bluegrass. The Insurance Declaration page as provided to me by GMAC Bank is attached as Exhibit (2.)

13. The fact that the loan was funded through a wire transfer from GMAC Bank was confirmed to me through the Bank of the Bluegrass's President, Mr. Bill Allen.

14. The February 21, 2007, loan was stamped paid in full on May 24, 2007 with funds sent by GMAC Bank, not the Bank of the Bluegrass.

15. The true identity for the lender relating to the Mortgage I signed was concealed and unknown to me.

16. If I had known the true identity of the lender for the loan was not the Bank of the Bluegrass, I would have never signed the Mortgage.

17. There were no other documents presented to me with the Mortgage nor were there any other pieces of paper or documents with the Mortgage.  In other words, there were no other documents, including but not limited to the Promissory Note, any Truth in Lending documents or a Notice to Right to Cancel on the table with the Mortgage.

18. I was not given any documentation upon my departure.  I did not receive a copy of the Mortgage upon departure.

19. The date typed "May 14, 2007," on the signature page did not exist when I executed the Mortgage.  The date is a lie.

20. Any statement in the record of this case asserting that this Mortgage was signed on May 14, 2007, is a lie.

21. I have never signed any documents in relation to the loan except the Mortgage.

22. The Notice of Right to Cancel, dated May 14, 2007, presented to the Court as Exhibit to the Motion for Summary Judgment is a lie and based in fraud.

23. The fraudulently presented Notice to Right to Cancel was executed by me in relation to a Mortgage Loan which never took place; the loan having been rejected by my wife and myself at approximately 5:30pm on May 14, 2007.

24. The terms and interest rate for the May 14, 2007 rejected loan were completely different to the Promissory Note given to my wife to sign on May 18, 2007 in relation to the Mortgage I executed on May 18, 2007.

25. The fraudulently presented May 14, 2007, Notice to Right to Cancel was presented and executed in relation to the May 14, 2007, unconsummated loan closing.

26. It was my understanding upon departing from the May 14, 2007 unconsummated loan closing that all documents relating to the unconsummated loan would be shredded.

27. The Clerk's records for my farm indicate that a Mortgage was Assigned to Mortgage Electronic Registration Systems from the Bank of the Bluegrass on May 14, 2007.

28. The Assignment of Mortgage is dated four (4) days before I signed the Mortgage on the afternoon of May 18, 2007.

29. The May 14, 2007, Assignment of Mortgage relates to a Mortgage which never existed.

30. On October 15, 2008, the May 18, 2007, Mortgage I executed was rescinded by me under TILA Regulation Z.    Notice was sent to the Bank of the Bluegrass, GMAC Bank and Mortgage Electronic Registration Systems as it was unclear as to which entity would claim a valid recorded Mortgage.

31. Although the Mortgage was not released by either the Bank of the Bluegrass GMAC or Mortgage Electronic Registration Systems, a written tender offer of

the "value" of the property was made in November 2008.   The tender offer was not accepted.

32. Since the tender offer was made in November 2008, my wife and I have attempted to  work in good faith the settle these matters by a tender offer of the value of the property to the real owner of the underlying debt and through consistent offers to attend  mediation.

33. Attempts at settlement or mediation have continually been rejected by the lawyers for GMAC on behalf of the Plaintiff, Deutsche Bank.

34.  In spite of the fact that I have been trying to settle this matter since 2008, I have never been contacted by any party connected to the Mortgage loan in relation to a loan modification, or any other Government sponsored loan program or as ordered and dictated by the Office of the Comptroller or F.D.I.C.

35. It is my understanding that GMAC Bank, although the original lender, is no longer making a claim in the underlying debt attached to the Mortgage I signed.   According to the records of the Fayette County Clerk, GMAC Bank has never filed a lien on my farm.  An Assignment of Mortgage was signed from Bank of the Bluegrass to Mortgage Electronic Registration Systems four days before I ever signed the Mortgage.

36. It is my understanding that GMAC Bank and its Servicer, GMAC Mortgage LLC are entities whose majority shareholder is the United States Treasury.   GMAC is the sole entity funding the attempted foreclosure of my family farm, and is the sole entity controlling the attorneys prosecuting the foreclosure.

37. Although GMAC is not owed any money by my wife or ever held a mortgage in my farm, it is my understanding that GMAC intends to keep any and all proceeds of the foreclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that all of the forgoing is true and correct.

Executed this 12th day of December 2011

Shane Haffey

| LEXINGTON, KY 40515 | LEXINGTON, KY 40507 | Date 02-21-2007 |
| | BANK OF | Maturity Date 02-21-2008 |
| | | Loan Amount $ 935,000.00 |
| | | Renewal Of 30-15 |
| **BORROWER'S NAME AND ADDRESS** | **LENDER'S NAME AND ADDRESS** | |
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of **NINE HUNDRED THIRTY FIVE THOUSAND AND NO/100** Dollars $ 935,000.00

☐ **Single Advance:** I will receive all of this principal sum on _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On 02-21-2007 _____ I will receive the amount of $492,930.20 _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☒ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 02-21-2007 at the rate of 8.250 % per year until 02-22-2007.

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be EQUAL TO the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE. THE RESULT OF THIS CALCULATION WILL BE ROUNDED TO THE NEAREST 0.125

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 02-22-2007
A change in the interest rate will take effect ON THE SAME DAY

☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than 24.000% or less than 0.000 %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.      ☒ The amount of the final payment will change.
☐

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/365 basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% OF THE PAYMENT AMOUNT WITH A MAX OF $25.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN MONTHLY PAYMENTS OF ACCRUED INTEREST CALCULATED ON THE AMOUNT OF CREDIT OUTSTANDING BEGINNING ON 03-01-2007 AND PRINCIPAL DUE ON 02-21-2008. THIS IS A VARIABLE RATE LOAN AND THE PAYMENT AMOUNTS MAY CHANGE. THE FINAL PAYMENT MAY ALSO CHANGE.

**ADDITIONAL TERMS:**

EXHIBIT 1

| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date): | **PURPOSE:** The purpose of this loan is CONSUMER: COMPLETE RENOVATION AND INCREASE LINE OF CREDIT PURS TO KRS CH.290 |
| 1ST RE MTG. 3250 DELONG RD, LEXINGTON, DATED 02211007 | **SIGNATURES:** I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date. |
| (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | |

Signature for Lender

BILL ALLEN, PRESIDENT

SHANE HOFFEY

HEATHER HOFFEY



EXHIBIT 2

GMAC 0221



05/16/2007 08:55 FAX 8500710205                                    ☐003

**PREMIUM NOTICE**
**STATE FARM INSURANCE COMPANIES**
**AGENT ISSUED DECLARATIONS**

| POLICY NUMBER | BILLING PERIOD | AGENT CODE |
|---|---|---|
| ██████766.-4 | FROM 09/29/2006 | TO 09/29/2007 | 2158 |

LOCATION
3250 DELONG RD
LEXINGTON, KY 40515-8531

INSURED                              PREMIUM $ 3,119.91
HAFFEY, HEATHER & SHANE
3250 DELONG RD                       AMOUNT PAID        SFPP
LEXINGTON, KY 40515-8531
                                     AMOUNT DUE         SFPP

                                     DATE DUE

MORTGAGEE                            AGENT NAME & ADDRESS
GMAC BANK WHOLESALE                  MCCARTY, C. DWIGHT
MORTGAGE LENDING                     3620 WALDEN DRIVE
ITS SUCCESSORS AND/OR ASSIGNS        SUITE 211
PO BOX 4025                          LEXINGTON, KY
CORAOPOLIS, PA 15108-6942            40517-2066  (859)971-0266
Loan Number: ██████5572

This is the only notice you will receive.  Please make check payable
to **STATE FARM** and return it with this notice to the address shown below.
Your canceled check is your receipt.  Thanks for letting us serve you.

       STATE FARM INSURANCE COMPANIES
       2500 MEMORIAL BOULEVARD
       MURFREESBORO TN  37131

GMAC  0220

**MCKEEVER LAW OFFICES PLLC**
Heather Boone McKeever, Esq.
P.O. Box 1181
Isle of Palms, South Carolina 29451
Telephone:  843-323-1174
Facsimile:   859-327-3277

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

## DECLARATION OF CREDITOR'S COUNSEL
## HEATHER BOONE MCKEEVER, ESQ.

Under penalty of perjury the undersigned states the following:

1.    I represent the Creditor farm owner, Shane M. Haffey  and am a joint tenant by entirety in the family farm in question.

2.    Prior to 2006, I practiced in the area of corporate and insurance defense. Since 2006, I have devoted my practice exclusively to consumer and commercial mortgage and banking fraud litigation.

3.    I have been a regular practicing attorney in the state of Kentucky since 1990. I am admitted and have practiced before the United States District Court for the Eastern and Western Districts of Kentucky, the 6th Circuit Court of Appeals and the United States Supreme Court.

4.    I will be serving as counsel of record in at least six Proofs of Claim for my Kentucky and South Carolina clients against the Debtors; two of which are Class

1

EXHIBIT B

Actions.

5.    In relation to my other clients, I have previously filed a RICO class action against the Debtors, MERS and the Debtors attorneys, *Foster v. MERS, GMAC Mortgage LLC, et al.* 3:10-cv-611, United States District Court Western District of Kentucky Louisville Division, (filed September 28, 2010.)

6.    I am counsel for record for two cases currently listed on the schedules of the Debtors Chapter 11 as unsecured claims.

7.    The cases are consolidated in both the District Court and the 6th Circuit Court of Appeals and involve five separate cases.

8.    One of the five cases, 09-362, (a lien enforcement,) names as the Plaintiff, Deutsche Bank Americas Trustee for an alleged Mortgage Security REMIC, 2007 QS-10.

9.    2007 QS-10 is not registered with the SEC or the IRS as a Mortgage Backed Security or a IRS REMIC.

10.    The alleged Promissory Note at the center of the lien enforcement case was never purchased by the named Deutsche MBS Plaintiff.

11.    The Note is not on the collateral list of the named 2007 Deutsche MBS Plaintiff.

12.    The copy of the Note attached to the lien enforcement Complaint is specifically endorsed to GMAC Bank.

13.    Upon information and belief, the Debtor's law firm, Bradley Arant Boult Cummings, ("BABC,) while counsel of record for GMAC Mortgage LLC, has prosecuted a lien enforcement on behalf of a 2007 Deutsche MBS Trust without

2

authority or a retainer agreement from the named Deutsche Bank Trust.

14.    Upon information and belief, BABC, has invoiced GMAC Mortgage LLC for its legal fees in its representation of Deutsche Bank.

15.    The records of the Fayette County Clerk reveals the recording of a May 14, 2007, Mortgage to the Bank of the Bluegrass and Trust and a May 14, 2007, Assignment of Mortgage from the Bank of the Bluegrass to Mortgage Electronic Registration Systems, Inc. (MERS.)

16.    The authenticity of the May 14, 2007, Note, the recorded Mortgage, and the May 14, 2007 Assignment of Mortgage to MERS, and the signatures thereto, have been challenged; the Note and Mortgage having been executed on May 18, 2007, four days subsequent to the dates affixed to the Note and Mortgage. *See also. Haffey Dec.*

17.    MERS was the grantee of the Assignment of Mortgage in its own right, not as a nominee of any lender.

18.    The Assignment of Mortgage to MERS was executed four days before any legitimate mortgage ever existed, a Mortgage having been executed on May 18, 2007.

19.    The Note was never assigned to MERS and MERS has admitted that it has never made a pecuniary claim to the Note.

20.    The owners' signatures to both the Note and the Mortgage were not witnessed or notarized in relation to the Note and Mortgage executed between the farm owners and the bank of the Bluegrass and Trust Company on May 18, 2007.  *See also. Haffey Dec.*

21.    Upon information and belief, the original of both the Note and Mortgage do not exist.

22.    In 2009, the public record shows that an employee of GMAC Mortgage LLC,

3

Patricia Kelleher, executed an Assignment of Mortgage posing as an employee of MERS.

23.    The Assignment was made two years after the named Deutsche 2007 MBS REMIC Plaintiff was allegedly formed and closed as an IRS REMIC for the purposes of purchasing mortgage loans.

24.    The 2009 Assignment from MERS was executed and recorded while a Slander/ Quiet Title against MERS was pending.

25.    There is no named grantee to the Assignment of Mortgage from MERS is Deutsche Bank Americas as Trustee.   There is no Trust Corpus listed.

26.    Under Kentucky law, a Trustee must be registered with the Kentucky Secretary of State and may not record deeds or mortgages in its own name without a Trust corpus specifically referenced.

27.    The Assignment of Mortgage from MERS to Deutsche Bank, executed by an employee of GMAC Mortgage LLC, has been deemed a forgery by expert witness Hon. Lynn Szymoniak.

28.    The Creditor's Expert Witness, Hon. Lynn Szymoniak is a Relator and Expert Witness for the Department of Justice in regards to the Quit Tam mortgage document fraud, case, which is incorporated into the 2012  Federal and Attorney General multi-billion dollar settlement with the Debtors.

29.    Based on the Department of Justice's web site, the DOJ has deemed the acts of drafting and executing of fraudulent and forged Assignments of Mortgage, mortgage fraud, calling forgeries "robo signing," and the forgers, "robo signers."

30.    In April 2012, at the request of the Department of Justice, undersigned counsel

4

met with and was interviewed by, United States Attorney, Hon. Fran Trapp, at the Department of Justice in Charleston, South Carolina.

31.    United States Attorney Fran Trapp is the prosecutor in charge of the *Qui Tam* foreclosure fraud prosecution, *United States ex. Rel. Szymoniak v. GMAC/RESCAP, et al.*, which led to the 95 million dollar settlement with four of the five Defendants.  *See Ms. Trapp's Press Release.*

http://www.justice.gov/usao/sc/LivePressReleases/3.12.12%20Szymoniak.pdf.

32.    The Szymoniak Settlement is part of the universal Consent Judgment reached with both the Federal Government and the 50 Attorney Generals in regards to robo signing and other accusations of mortgage fraud.

33.    The GMAC debtors are parties to and are currently bound by the Federal multi-billion dollar, Universal Settlement.

34.    At the time of undersigned counsel's interview with the Department of Justice, and upon information and belief, the GMAC debtors, had not settled with the Department of Justice in the Szymoniak case and the prosecution against the GMAC debtors was moving forward.

35.    Upon information and belief, the Expert witness Affidavit of Hon. Lynn Szymoniak and the GMAC robo signed Assignment of Mortgage from MERS to Deutsche Bank, in the Creditor's cases are in the possession of the Department of Justice and are part of the evidentiary record to be used in the prosecution of GMAC Mortgage LLC and the other debtors by the Department of Justice.

36.    Upon information and belief, the Department of Justice Settlement only concerns the payment of funds to the US and State Treasuries, and in no way

5

compensates or precludes claims by the individual taxpayers and their families who actually suffered the damages. The potential damages for homeowners exceed 95 million.

37.    Upon information and belief, and relying on information given directly by the Department of Justice, the Debtors' Settlement with the DOJ does not include claims against the law firms retained by the Debtors in regards to both their role as co-conspirators with the Debtors and the remittance and payment of improper legal fees by the Debtors to the Debtor's individual litigation firms, such as BABC.   This includes both private pay invoices to Mortgage Servicers and files invoiced to and/or ultimately paid by the GSE, Fannie Mae.

38.    Upon information and belief, Debtors' law firms, such as BABC, and the individual files for which the firms are counsel of record are currently being investigated and audited by the Department of Justice.

39.    Upon information and belief, as special counsel to the Debtors in the Federal and Attorney General prosecutions and Consent Judgment, attorneys for BABC, had unique and specific knowledge as to the specific loan files flagged for fraud and those for which Expert Witness Lynn Szymoniak had audited for the Department of Justice; as well as those for which she had previously testified as an expert witness. (Such as the Creditor's cases at hand.)

40.    The law firm, BABC is a potential Third party Defendant to the cases, and a potential Class Action Co-Defendant in the Proofs of Claim in this Bankruptcy.

41.    BABC has had Notice of such claims from the onset, while serving as simultaneous counsel of record for Co-Creditor, Deutsche Bank of Americas and the

6

GMAC entities.

42.    Upon information and belief, BABC has litigated these cases in bad faith and for its own benefit; in order to a.)  artificially inflate legal fees paid exclusively by the Debtors on behalf of the Debtors and for third parties (Deutsche an MERS) and b.) protect itself from the multi-million dollar potential liability the firm is exposed to for its unique role as an active player and willing partner in the Debtors' systemic mortgage fraud.

43.    In January 2011, in relation to the Creditor's cases, undersigned counsel and Hon. Christopher Thorsen of BABC, agreed to attend Mediation in order to obtain a universal settlement of the claims contained in all five lawsuits.

44.    The Mediation was scheduled for April 2011, in Christopher Thorsen's home base of Nashville, Tennessee, with the Mediator of his choice.

45.    The parties agreed to suspend discovery pending mediation.

46.    Less than 2 weeks before the scheduled Mediation, Mr. Thorsen informed undersigned counsel that he had made the unilateral decision that the Mediation would not take place.

47.    A second Mediation was scheduled and a contract signed with a Mediator in Lexington, Kentucky.

48.    Less than 2 weeks before the second scheduled Mediation, Mr. Thorsen, for the second time, informed undersigned counsel that he had made the unilateral decision that the Mediation would not take place.

49.    It was at this point that undersigned counsel confirmed what she had already suspected; that she had been the victim of Mr. Thorsen's "dirty pool" and that she had been fraudulently induced into delaying discovery.

50.    No documents, including the originals of the Note and Mortgage, were produced by Mr. Thorsen, pursuant to the initial Rule 26 Discovery Order.

51.    Upon information and belief, Mr. Thorsen never intended to attend mediation or attempt to settle the matter.

52.    Upon information and belief, Mr. Thorsen and BABC are not working in the best interest of the Debtors, but in the best interest of "the firm" in milking files for the sole financial gain of the firm and to protect the firm from multi-million dollar liability as a Co-Defendant and/or Co-Conspirator of the Debtors.

53.    The legal fees invoiced to the Debtors in this case are in excess of $119,000.00; which equates to nearly 40% of the net present value of the farm.

54.    The legal fees of BABC in relation to the best case scenario recovery for the Debtors, and the usually required cost vs. benefit analysis, shocks the conscious and is unprecedented in undersigned counsel's experience as a large corporate defense litigator.

55.    Upon information and belief, there is no check whatsoever on BABC's litigation fees in this or any other cases for which BABC is counsel of record for the Debtors.

56.    Upon information and belief, there are no repercussions for BABC's unabated actions, due to the fact that the Debtors are 74% owned by the citizens of the United States; the Debtors having been "bought out" by the United States Treasury.

57.    Unlike all other of the major private investment Banks, such as Bank of America and JP Morgan Chase, who answer to private shareholders, it has become apparent that since the tax payers fund BABC's fees, there is no limit to the fees.

58.    Quite simply, the foxes are watching the legal fee hen house.

59.    Since 2007, I have dealt with over two dozen different law firms, both regional and national counsel, for different mortgage "creditors" in regards to my consumer practice; including attorneys for Bank of America, JP Morgan Chase, Aurora, US Bank, Citi, American Home Mortgage, Wells Fargo, Regions, Nationstar, MERS and IndyMac.

60.    Although, many of the firms were guilty of sins of both omission and commission, under Rule 11 due to ignorance of the law, Mr. Thorsen and BABC's are uniquely educated as to the fraud involved in the individual cases they currently litigate for the debtors.    BABC's level of arrogance and dishonesty is unprecedented in my twenty years as a litigator.

61.    Upon information and belief, the US taxpayers also fund individual BABC attorneys salaries as registered Lobbyists for the Debtors.

62.    Under the Kentucky Revised Statutes, the acts of GMAC employee Patricia Kelleher in regards to both the execution and recording of the Assignment of Mortgage and based on the expert witness Affidavit could be charged by the Fayette County Attorney as criminal felonies.

63.    Under the Kentucky Revised Statutes, those who have knowledge and conspire with forgers, can be charged with the crime of conspiracy and in some cases be charged with both criminal and civil RICO claims simultaneously.

Further, the Declarant sayeth not.

Dated: August 16, 2012

Respectfully submitted,

/s/ Heather Boone McKeever
MCKEEVER LAW OFFICES PLLC
P.O. Box 1181
Isle of Palms, SC 29451
Tel. 843-323-1174
Fax. 859-327-3277
COUNSEL FOR CREDITOR
SHANE M. HAFFEY

10

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that Bank of the Bluegrass & Trust Company, a Kentucky corporation, whose address is 101 E. High Street, Lexington, Kentucky 40507, hereby grants, for good and valuable consideration, the receipt of which is hereby acknowledged, does hereby sell, transfer, assign, set over and deliver unto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., P.O. Box 2026, Flint, Michigan 48501-2026 (Assignee), its successors and assigns forever, that certain mortgage from Heather M. Haffey and Shane M. Haffey, wife and husband, to Bank of the Bluegrass & Trust Company, 101 E. High Street, Lexington, Kentucky 40507, dated May 14, 2007, of record in Mortgage Book _____, Page _____, in the Fayette County Clerk's Office, on 3250 Delong Road, Lexington, Fayette County, Kentucky 40515 and the Promissory Note described in and secured by the Mortgage.

TO HAVE AND TO HOLD the same unto said Assignee, its successors and assigns forever.

IN WITNESS THEREOF said Bank of the Bluegrass & Trust Company has executed this Assignment of Note and Mortgage, by its duly authorized officer, this May 14, 2007.

MERS #:      ███████5727

PHONE #:    1 (888) 679-6377

BANK OF THE BLUEGRASS & TRUST COMPANY

By: _____

Its: _____
        VP

STATE OF KENTUCKY)
                            )
COUNTY OF FAYETTE)

The foregoing Assignment of Mortgage was acknowledged, subscribed and sworn to before me this 14th day of May, 2007, by Robert B. Jones, as Vice President of BANK OF THE BLUEGRASS & TRUST COMPANY, a Kentucky corporation, on behalf of the corporation.

My Commission Expires: 11-24-09

Notary Public, Kentucky, State-at-Large

This instrument prepared by

Joseph E. Mamous, Jr. of
Mamous & Grant
201 West Vine Street
Lexington, KY 40507
(859) 231-8004

# EXHIBIT C

BOTB 041

# INTEREST-ONLY PERIOD FIXED RATE NOTE

MAY 14, 2007                                                    LEXINGTON                    , KENTUCKY
[Date]                                                            [City]                         [State]

3250 DELONG ROAD, LEXINGTON, KENTUCKY 40515
[Property Address]

**BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $1,000,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is BANK OF THE BLUEGRASS AND TRUST COMPANY. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**PAYMENTS**

()  Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1ST day of each month beginning on JULY 1, 2007. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on JUNE 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 101 EAST HIGH STREET, LEXINGTON, KENTUCKY 40507 or at a different place if required by the Note Holder.

()  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $5,729.17 for the first 120 months of this Note, and thereafter will be in the amount of U.S. $7,678.14. The Note Holder will notify me prior to the date of change in monthly payment.

**BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

**LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT          Form 3271  1/01 (rev. 9/06)
(page 1 of 3)



EXHIBIT
A

BOTB 024

**BORROWER'S FAILURE TO PAY AS REQUIRED**

() **Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

() **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

() **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

() **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

() **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3271   1/01 (rev. 9/06)
(page 2 of 3)

BOTB 025

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X Heather M. Haffey                                        (Seal)
HEATHER M. HAFFEY                                   - Borrower

_____   (Seal)
                                                   - Borrower

_____   (Seal)
                                                   - Borrower

*[Sign Original Only]*

WITHOUT RECOURSE, PAY TO THE ORDER OF:

GMAC BANK

BANK OF THE BLUEGRASS & TRUST COMPANY

BY: _____
ITS:

     Jennifer V. Frye, Assistant Vice President

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3271   1/01 (rev. 9/06)
                                                                                                   (page 3 of 3)

BOTB 026

**RECORD AND RETURN TO:**
**GMAC MORTGAGE LLC**
**ATTN HELEN KAYLE**
**RECORD SERVICES**
**3451 HAMMOND AVE**
**WATERLOO IA 50702**

GMAC # 0601745572/HAFFEY
MERS #███████5727
MERS PHONE 1-888-679-6377

_This Space Reserved for Recording Information_

## ASSIGNMENT OF MORTGAGE

For value received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.** at 1595 SPRING HILL RD STE 310, VIENNA VA 22182, hereby sells, assigns, and transfers to **DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE,** 1761 EAST ST. ANDREW PLACE, SANTA ANA CA, its successors and assigns all its right, title and interest to a certain Mortgage described as follows:

| | |
|---|---|
| **EXECUTION DATE:** | 5/14/2007 |
| **ORIGINAL BORROWER:** | HEATHER M. HAFFEY AND SHANE M. HAFFEY, WIFE AND HUSBAND |
| **ORIGINAL LENDER:** | BANK OF THE BLUEGRASS AND TRUST COMPANY |
| **COUNTY:** | FAYETTE |
| **STATE:** | KENTUCKY |
| **RECORDING DATE:** | 5/25/2007 |
| **DOC/INST NUMBER:** | ███████0199 |
| **BOOK:** | 6084 |
| **PAGE:** | 140 |
| **PROPERTY ADDRESS:** | 3250 DELONG ROAD, LEXINGTON KY 40515 |

September 25, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.

_Patricia Kelleher_
PATRICIA KELLEHER, LIMITED SIGNING OFFICER

State of Iowa
County of Black Hawk

On this September 25, 2009, before me, a Notary Public in and for the above county and state, personally appeared PATRICIA KELLEHER, who being by me known to be the LIMITED SIGNING OFFICER of said company that the seal affixed to the said instrument is the seal of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

_Sally Nelson_
SALLY NELSON
Notary in and for said County and State
My Commission expires: 4/20/2011

SALLY NELSON
Notarial Seal - Iowa
Commission # 222056
My Commission Expires 4-20-11

Prepared by: HELEN KAYLE _Helen Kayle_
GMAC MORTGAGE LLC, 3451 HAMMOND AVE, WATERLOO IA 50702


EXHIBIT
E

Return to
D & S

MISCELLANEOUS BOOK   479   PAGE 24

I, Donald W Blevins Jr, County Court Clerk
of Fayette County, Kentucky, hereby
certify that the foregoing instrument
has been duly recorded in my office.

By:          **DOUG BRADLEY**

█████0077

October 7, 2009            10:26:48    AM

Fees        $13.00    Tax            $.00

Total Paid            $13.00

**THIS IS THE LAST PAGE OF THE DOCUMENT**

2    Pages

23    -    24

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION - LEXINGTON

LEAD CIVIL ACTION NO. 5:08-cv-459-JBC
(To be Filed in all related and Consolidated Cases
  5:08-cv-456, 5:08-cv-510, 5:09-cv-255, and 5:09-cv-362)

HEATHER McKEEVER and
SHANE HAFFEY,

                    PLAINTIFFS


v.


MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, et al.

          DEFENDANTS

## AFFIDAVIT OF LYNN E. SZYMONIAK, ESQ.,

## AS PLAINTIFFS' EXPERT


STATE OF FLORIDA

COUNTY OF PALM BEACH


LYNN E. SZYMONIAK, Esq., having been duly sworn, does state the following:


1. I am an adult citizen of the United States, and have resided in Palm Beach
County, Florida since 1979.


EX. F

2. I am an attorney and was admitted to the Florida Bar in 1980.

3. For the past twenty years, my practice has primarily in cases involving white-collar crime allegations, particularly, in representing major insurance companies in claims that they have been defrauded by large policyholders.

4. In the last ten years, I have also served as an expert witness in civil and criminal cases. In criminal cases, I have served as an expert witness for the United States of America and the State of California. I have testified at trial in two federal court cases in Jacksonville, Florida, where the allegations involved false and fabricated documents including fabricated insurance policies and certificates of insurance. The two cases were United States v. Thomas King, Case No. 3:05-cr-52-J-99MMH, Middle District of Florida, Jacksonville Division and United States v. Donald Touchet, et al., Case No. 3:2007cr00090, Middle District of Florida, Jacksonville Division. I also submitted an expert opinion for the government in a New York Northern District federal case that ended in a guilty plea: United States v. James Kernan, Case No. 5:2008cr00061. I have also submitted an expert opinion in a criminal case currently pending in the Middle District of Florida and in a state case currently pending in California, both involving fraudulent insurance documents.

5. I was formerly a Certified Fraud Examiner, and have had nine hours training by the National Association of Certified Fraud Examiners in identifying forged and fabricated documents, in a course taught by retired agents of the FBI.

6. I have examined a copy of the Assignment of Mortgage in the foreclosure action presently before this Court, a copy of which is attached hereto. In the upper left-hand corner of this document, the following statement appears:
Record and Return To:
GMAC Mortgage, LLC

2

Record Services
3451 Hammond Avenue
Waterloo, IA 50702

7. I have examined over 2,000 other Mortgage Assignments, including at least 200 from GMAC Mortgage.

8. On at least 1,000 of these Assignments, the information is false and/or inaccurate and outright fraudulent. The fraudulent assignments occur most frequently when the grantee is a mortgage-backed securitized trust as in the present case.

9. In the vast majority of securitized trusts, the transfer from the original lender to the trust occurs within 10 days of the original loan. If done properly, the loan is transferred from the original lender, to a depositor (the entity that gathers a group of loans), to the securities company to the trust. (This process is described in a recent bankruptcy case involving fraudulent assignments, *In re Silvia Nuer,* Case No. 08-17106 (REG), in a Memorandum of Law of the United States Trustee in Support of Sanctions against J.P.Morgan Chase Bank National Association, filed January 4, 2010.)

10. Each such trust is governed by a Pooling & Servicing Agreement and each such Agreement includes a closing date, the date by which the transfer of the properties to the trust must be completed. This closing date is usually within the first six weeks of the origination of the trust.

11. Each trust also includes a provision that specifies that the mortgages, notes, and ASSIGNMENTS IN RECORDABLE FORM, be delivered to the trustee. The Assignments are not actually recorded, but remain with the documents custodian of the trust in the event they are needed for a foreclosure if the borrower defaults.

3

12. In the rush to create securitized trusts, many trusts were created without conforming to the Trust Agreement. In these trusts, the Mortgage Assignments were never obtained. Years later, when a borrower with a property in such trust defaults, the trust cannot produce the Assignment needed to establish standing to foreclose. In such cases, instead of admitting to the court and the borrower that the Assignments are missing, or obtaining a replacement assignment from the original lender, a fraudulent replacement assignment is often created.

13. These replacement assignments often are prepared in the name of MERS even though MERS never had an ownership interest in the properties and is not correctly named as wither a grantor or grantee in an assignment. Most recently, Fannie Mae had issued a rule change (copy attached) stating that MERS shall not be named in Assignments and that foreclosures should not be brought in the name of MERS.

14. In the present case, the following are indicators that this Assignment may be fraudulent:
• the assignment was prepared by GMAC Mortgage, LLC, but signed by an officer of MERS and only MERS is identified as the grantor, with no indication of whether MERS is acting as nominee for the original lender or for an intervening assignee;
• on other Assignments, this same individual, Patricia Kelleher, signs as an officer of GMAC mortgage (see attached example), but if Kelleher signed as a GMAC officer, there would be an obvious problem with the chain-of-title as no documents has been filed showing GMAC as grantee;
• the grantee is "Deutsche Bank Trust Company Americas as Trustee" but the name of the actual trust is not set forth in the Assignment – this is critical information as Deutsche Bank Trust Company Americas acts as Trustee for many different securitized trusts;

4

RECORD AND RETURN TO:
GMAC MORTGAGE LLC
ATTN HELEN KAYLE
RECORD SERVICES
3451 HAMMOND AVE
WATERLOO IA 50702

GMAC # ▮▮▮▮▮6572/HAFFEY
MERS # ▮▮▮▮▮▮▮▮5727
MERS PHONE 1-888-679-6377

This Space Reserved for Recording Information

## ASSIGNMENT OF MORTGAGE

For value received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. at 1595 SPRING HILL RD STE 310, VIENNA VA 22182, hereby sells, assigns, and transfers to DEUTSCHE BANK TRUST COMPANY AMERICAS AS TRUSTEE, 1761 EAST ST. ANDREW PLACE, SANTA ANA CA, its successors and assigns all its right, title and interest to a certain Mortgage described as follows:

EXECUTION DATE:            5/14/2007
ORIGINAL BORROWER:         HEATHER M. HAFFEY AND SHANE M. HAFFEY, WIFE AND HUSBAND
ORIGINAL LENDER:           BANK OF THE BLUEGRASS AND TRUST COMPANY
COUNTY:                    FAYETTE
STATE:                     KENTUCKY
RECORDING DATE:            5/25/2007
DOC/INST NUMBER:           ▮▮▮▮▮▮0199
BOOK:                      6084
PAGE:                      140
PROPERTY ADDRESS:          3250 DELONG ROAD, LEXINGTON KY 40515

September 25, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.

*Patricia Kelleher*

PATRICIA KELLEHER, LIMITED SIGNING OFFICER

State of Iowa
County of Black Hawk

On this September 25, 2009, before me, a Notary Public in and for the above county and state, personally appeared PATRICIA KELLEHER, who being by me known to be the LIMITED SIGNING OFFICER of said company that the seal affixed to the said instrument is the seal of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

*Sally Nelson*

SALLY NELSON
Notary in and for said County and State
My Commission expires:    4/20/2011

SALLY NELSON
Notarial Seal - Iowa
Commission # 222056
My Commission Expires 4-20-11

Prepared by: HELEN KAYLE *Helen Kayle*
GMAC MORTGAGE LLC, 3451 HAMMOND AVE, WATERLOO IA 50702

EXHIBIT
C

Return to
D & S





Bk: 29698 Pg: 177    Page: 1 of 1
Recorded: 11/24/2009 02:08 PM

GMAC#  ██████7279/SEMETER
MIN  ██████2796
MERS 888-679-6377

## STATUTORY ASSIGNMENT OF MORTGAGE

For value received, **CORNERSTONE MORTGAGE CORPORATION**, 75 CRESCENT ST, WALTHAM MA  02453, hereby sells, assigns, and transfers to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.**, at 1595 SPRING HILL RD, STE 310, VIENNA VA  22182, its successors and assigns all its right, title and interest to a certain Mortgage described as follows:

| | |
|---|---|
| EXECUTION DATE: | 9/17/2003 |
| ORIGINAL BORROWER: | PATRICIA A. SEMETER, JOINTLY WITH SPOUSE AND |
| | THOMAS J. SEMETER, JOINTLY WITH SPOUSE |
| ORIGINAL LENDER: | CORNERSTONE MORTGAGE CORPORATION |
| COUNTY: | MIDDLESEX |
| STATE: | MASSACHUSETTS |
| RECORDING DATE: | 9/25/2003 |
| DOC/INST NUMBER: | ██████369 |
| BOOK: | 16269 |
| PAGE: | 208 |
| PROPERTY ADDRESS: | 2 PRIMROSE LANE, WESTFORD, MA |

Signed November 9, 2009

CORNERSTONE MORTGAGE CORPORATION

*[signature]*

CAROL CHAPMAN, ASSISTANT SECRETARY
State of Iowa
County of Black Hawk

*U01006575*
5655    11/16/2009    76977503/1

    On this November 9, 2009, before me, a Notary Public in and for the above county and state, personally appeared CAROL CHAPMAN, who being by me known to be the ASSISTANT SECRETARY of said company that the seal affixed to the said instrument is the seal of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

*[signature]* Sally Nelson

SALLY NELSON
Notary in and for said County and State
My Commission Expires:  4/20/2011

SALLY NELSON
Notarial Seal - Iowa
Commission # 222056
My Commission Expires  4-20-11

Prepared by:  PAT KELLEHER, GMAC MORTGAGE LLC

Recordings Requested by &
When Recorded Return To:
    US Recordings, Inc.
    2925 Country Drive Ste 201
    St. Paul, MN 55117

PLAINTIFF'S EXHIBIT C

Bk: 44666 Pg: 80    Doc: AFF
Page: 1 of 1    08/19/2009 07:01 AM

Francis M. Roache
Register of Deeds

## (MORTGAGEE'S AFFIDAVIT DESIGNATING MORTGAGE IDENTIFICATION NUMBER MIN)

State of IOWA
County of BLACK HAWK

RECORD & RETURN TO:
GMAC MORTGAGE LLC
ATTN HELEN KAYLE CRT DEPT
3451 HAMMOND AVE
WATERLOO IA 50704

GMAC # ███████3352/BERMAN

The undersigned, PATRICIA KELLEHER, does hereby depose and say as follow:

1. That I am an authorized officer of the mortgagee, Mortgage Electronic Registration Systems, Inc.

2. That this affidavit refers to the Mortgage (or assignment), from ANDREA R. BERMAN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. as nominee for RELIANT MORTGAGE COMPANY LLC, in relation to property located at 287 RICE AVE, REVERE MA 02151, and recorded in SUFFOLK, County Recorder's office in BOOK 33857 PAGE 121, MORTGAGE DATED 2/25/2004 IN THE AMOUNT OF $217,000.00.

3. That the mortgagee has designated a Mortgage Identification Number (MIN), which will act as the permanent reference number with respect to the mortgage (or assignment) identified in Paragraph 2.

4. That any MIN previously referenced with respect to the mortgage (or assignment) identified in Paragraph 2 is invalid.

5. That the correct MIN for the mortgage (or assignment) identified in Paragraph 2 is MIN ███████5427 and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Signed MARCH 10, 2009

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

*Patricia Kelleher*

PATRICIA KELLEHER, LIMITED SIGNING OFFICER

On this MARCH 10, 2009, before me, a Notary Public in and for the above said county and state, personally appeared PATRICIA KELLEHER, who being by me know to be the LIMITED SIGNING OFFICER of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

*Sally Nelson*

SALLY NELSON, Notary
My Commission Expires:  4/20/2011
Prepared By:
HELEN KAYLE
GMAC MORTGAGE LLC, 3451 HAMMOND AVE, WATERLOO IA 50702

SALLY NELSON
Notarial Seal - Iowa
Commission # 222354
My Commission Expires 4-20-11









- 0364

## SATISFACTION OF SECURITY INSTRUMENT

GMAC MORTGAGE, LLC – CONSUMER LENDING "DAVID C PLAUE"  Lender # _____  Orange, North Carolina P/F:
12/13/2007
MERS #: _____-139  VRU #: 1-888-679-6377

THE UNDERSIGNED corporation certifies that it is the owner of the indebtedness secured by the hereinafter described Deed of Trust and that the debt or other obligation in the original amount of $95,000.00 secured by the Deed of Trust executed by DAVID C PLAUE GINA M. PLAUE, Grantors, to RANDY WARLICK AND AMY E. JOHNSON, Trustee, for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS"), Beneficiary, and Recorded in Orange County, State of North Carolina on 12/14/2004 in Book/Reel/Liber: RB3031 Page/Folio: 299 as Instrument No.: _____1976, was satisfied on 12/13/2007.

Property Address: 109 COMMONS WAY, CHAPEL HILL, NC 27516

This undersigned corporation requests that this certificate of satisfaction be recorded and the above-referenced security instrument be cancelled of record.

Mortgage Electronic Registration Systems, Inc. ("MERS")
On December 24th, 2007

By: _____
PATRICIA KELLEHER, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On December 24th, 2007, before me, N DAHLGREN, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared PATRICIA KELLEHER, Assistant Secretary being by me duly sworn and duly executed of Mortgage Electronic Registration Systems, Inc. ("MERS"), personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal on December 24th, 2007

_____
H DAHLGREN
Notary Expires: 08/23/2010 #746557

N. DAHLGREN
NOTARIAL SEAL – STATE OF IOWA
COMMISSION NUMBER 746557
MY COMMISSION EXPIRES AUG. 23, 2010

(This area for notarial seal)

Prepared By: _____, GMAC MORTGAGE, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA  50704-0780
1-888-668-4829
Recording Requested By: GMAC MORTGAGE, LLC
When Recorded Return To: DAVID C PLAUE, 109 COMMONS WAY, CHAPEL HILL, NC 27516







2834

### SATISFACTION OF SECURITY INSTRUMENT

GMAC MORTGAGE, LLC # _____ "BOZYMSKI" Lender ID:48939593790939  Orange, North Carolina PIF: 02/19/2008
MERS #: 10002350000750039  MIN #: 1-888-679-6377

THE UNDERSIGNED corporation certifies that it is the owner of the indebtedness secured by the hereinafter described Deed of Trust and that the debt or other obligation in the original amount of $403,500.00 secured by the Deed of Trust executed by DAVID S BOZYMSKI NATA K. BOZYMSKI, Grantors, to KENNETH R EMBREE, Trustee, for BRADFORD MORTGAGE COMPANY LLC, Beneficiary, and Recorded in Orange County, State of North Carolina on 06/03/2003  in Book/Reel/Liber: 3079 Page/Folio: 394 as Instrument No.: NA, was satisfied on 02/19/2008 .

Property Address:  122 PORTER PLACE, CHAPEL HILL, NC  27514

The undersigned corporation requests that this certificate of satisfaction be recorded and the above-referenced security instrument be cancelled of record.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
On February 29th, 2008

By: _____

PATRICIA KELLEHER, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On February 29th, 2008, before me, H DAHLGREN, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared PATRICIA KELLEHER, Assistant Secretary being by me duly sworn and duly executed of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal on February 29th, 2008

_____

H DAHLGREN
Notary Expires: 08/29/2009 #748557

```
H DAHLGREN
NOTARIAL SEAL - STATE OF IOWA
COMMISSION NUMBER 748557
MY COMMISSION EXPIRES AUG. 29, 2009
```

(This area for notarial seal)

Prepared By:  Buffi,  GMAC MORTGAGE, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA  50704-0780
1-888-766-4622
Recording Requested By: GMAC MORTGAGE, LLC
When Recorded Return To:  DAVID S BOZYMSKI, 122 PORTER PLACE, CHAPEL HILL, NC  27514







## (MORTGAGEE'S AFFIDAVIT DESIGNATING MORTGAGE IDENTIFICATION NUMBER MIN)

State of IOWA
County of BLACK HAWK

RECORD & RETURN TO:
GMAC MORTGAGE LLC
ATTN HELEN KAYLE/CRT DEPT
3451 HAMMOND AVE , P.o. Box 780
WATERLOO IA 50704

GMAC #_____767/MERRITT

The undersigned, PATRICIA KELLEHER, does hereby depose and say as follow:

1. That I am an authorized officer of the mortgagee, Mortgage Electronic Registration Systems, Inc.

2. That this affidavit refers to the Mortgage (or assignment), from MICHAEL H. MERRITT to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC. AS NOMINEE FOR FIRST FINANCIAL SERVICES INC, in relation to property located at 118 SHADOW RIDGE PLACE, CHAPEL HILL NC 27514, and recorded in ORANGE County Recorder's office in the State of NORTH CAROLINA, recorded on 5/28/2009 as BOOK  RB4747 PAGE 457/DOC NO 2009028909126094, Mortgage dated 5/27/2009 in the amount of $204,000.00.

PARCEL: 9880-01-3263

3. That the mortgagee has designated a Mortgage Identification Number (MIN), which will act as the permanent reference number with respect to the mortgage (or assignment) identified in Paragraph 2.

4. That any MIN previously referenced with respect to the mortgage (or assignment) identified in Paragraph 2 is invalid.

5. That the correct MIN for the mortgage (or assignment) identified in Paragraph 2 is MIN 100225340012217472, and that the MERS telephone number to call for information when using this MIN is (888) 679-6377.

Signed MAY 12, 2010

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

_____
PATRICIA KELLEHER, ASST. SECRETARY

On this MAY 12, 2010, before me, a Notary Public in and for the above said county and state, personally appeared PATRICIA KELLEHER, who being by me know to be the ASST. SECRETARY of said company by authority of its board of directors, and they acknowledged the execution of said instrument to be the voluntary act and deed of said company, by it voluntarily executed.

_____
KATSY GOULDEN, Notary
My Commission Expires:  4/17/2011
Commission #752348
Prepared By: HELEN KAYLE
GMAC MORTGAGE LLC, 3451 HAMMOND AVE, WATERLOO IA 50702

KATHY GOULDEN
Iowa Notarial Seal
Commission Number: 752348
My Commission Expires: 04/17/2011



# PRESS NOTICE



## BILL NETTLES
## UNITED STATES ATTORNEY
## DISTRICT OF SOUTH CAROLINA
*1441 Main Street, Suite 500 * Columbia, SC 29201 * (803) 929-3000*

---

### March 9, 2012

**FOR IMMEDIATE RELEASE**
**CONTACT PERSON:**    Fran Trapp
                       (803) 929-3000
                       Fran.Trapp@usdoj.gov

### $95 MILLION SETTLEMENT WITH THE NATION'S
### FIVE LARGEST MORTGAGE SERVICERS PARTIALLY RESOLVES
### SOUTH CAROLINA FALSE CLAIMS ACT LAWSUIT

COLUMBIA, South Carolina —— A $95 million settlement with the nation's four largest mortgage servicers was announced today by United States Attorney Bill Nettles. Bank of America Corporation, J.P. Morgan Chase & Co., Wells Fargo & Company, and Citigroup Inc. agreed to the settlement to address allegations that  the defendants participated in a nationwide practice of failing to obtain required mortgage assignments which resulted in servicing misconduct, and using false assignments to submit Federal Housing Administration mortgage insurance claims, all in violation of the federal False Claims Act, 31 U.S.C. § 3729.  This is the largest False Claims Act settlement ever obtained by the District of South Carolina.  The settlement was reached as part of the $25 billion dollar global resolution between the same defendants, the United States of America, the state attorneys general, and others.

EXHIBIT G

The United States and the state attorneys general filed today in the U.S. District Court in the District of Columbia proposed consent judgments with Bank of America Corporation, J.P. Morgan Chase & Co., Wells Fargo & Company, Citigroup Inc. and Ally Financial Inc., to resolve violations of state and federal law.   Included in the proposed settlement agreements, is the partial settlement for four of the defendants of allegations that the United States Attorney's Office for the District of South Carolina began investigating in the Spring of 2010.  In particular, the government investigated allegations that the defendants participated in a pervasive nationwide scheme involving the wholesale fabrication of mortgage assignments and other servicing abuses.

The False Claims Act allows the government to bring civil actions against entities that knowingly use or cause the use of false documents to obtain money from the government or to conceal an obligation to pay money to the government.  The lawsuit in this case was initially filed by Lynn Szymoniak under the qui tam or whistleblower provision of the False Claims Act.   This provision entitles a private person to bring a lawsuit on behalf of the United States, where the private person has information that the named defendant has knowingly violated the False Claims Act.  Under the False Claims Act, the private person, also known as a "whistleblower," is entitled to a share of the government's recovery.  In this matter, the whistleblower will receive $18 million from the proceeds of the settlement.

"Whistleblowers play an important role in protecting taxpayer funds from fraud and abuse," said U.S. Attorney Nettles.  "Settlements like this one help maintain the integrity of the federal mortgage servicing process."

"By this agreement we are making an important first step to hold mortgage servicers accountable for fraudulent and abusive practices not only in South Carolina but nationwide. I am proud of the tireless work of this office to investigate this case across the country," said U.S. Attorney Nettles.

"We see this historic settlement as one of national importance as our success in this case marks a precedent setting application of the False Claims Act to complex financial fraud," said U.S. Attorney Nettles. "It also demonstrates the role that whistleblowers can play in working with the government to return dollars to the federal treasury and to expose wrongdoing."

"We are very pleased by this settlement but at the same time our investigation is ongoing as we continue to ascertain the full magnitude of wrong doing and to seek redress for the United States Government," said U.S. Attorney Nettles.

This settlement was the result of a coordinated effort by Assistant United States Attorneys Fran Trapp and Jennifer Aldrich of the U.S. Attorney's Office for the District of South Carolina along with the Commercial Litigation Branch of the Justice Department's Civil Division, the U.S. Attorney's Office for the Western District of North Carolina and the Offices of Inspector General and legal counsel departments for HUD, the Treasury and the Federal Reserve in investigating the allegations.

Lynn Szymoniak, the whistleblower, was represented by South Carolina attorney Richard Harpootlian along with the firm of Grant & Eisenhofer (G&E) including firm partner Reuben Guttman, of the Washington, DC office, who heads the G&E False Claims Litigation Group and firm partner James Sabella of the New York office, who is a senior member of the G&E Securities Fraud Litigation Group. Kenneth Suggs and

Howard Janet of Janet, Jenner, & Suggs in Maryland and South Carolina also represented Ms. Szymoniak.

The allegations contained in the complaint against the Defendants are merely accusations and do not constitute a determination of liability.

### ###