1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No.: **12--**12020 MG

In re:

GMAC MORTGAGE, LLC

Shelley von Brincken
P.O. Box 2362
Grass Valley, California [95945]
Debtor
        Plaintiff

  v.

**GMAC MORTGAGE, LLC** or assignee,
ETS SERVICES, LLC, OCWEN LOAN
SERVICING, LLC and DOES 1-20

        Defendants

_____/

**Title 42 Section 1983 Civil Action**

**Pursuant to Public Law at 42 Stat 13-15 as Original Intent of Congress**

**prima facie code title 42, <u>United States Code (U.S.C.)</u> section 1983**

1. 42 Stat 13-15 states as follows: "<u>Every person who under color of any statute,
ordinance, regulation, custom, or usage, of any State</u> or Territory or the District of
Columbia, <u>subjects, or causes to be subjected,</u> any citizen of the United States or other

Complaint for Violation of Civil Rights PAGE 1

person within the jurisdiction thereof <u>to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress,</u> except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia".

2. **Issues and Statement of the Case:** Defendant and Claimant participated in contract and commercial activity in respect to a Negotiable Instrument Note, which is attached to a bond, which is expressly governed by Federal law and the Uniform Commercial Code which are uniform statutory laws of all of the United States of America including the District of Columbia and all fifty states. Plaintiff makes the claim that the instrument/obligation became voidable when the Defendant participated in fraudulent and illegal activity, violating the rules of the laws under which the note/instrument bond is expressly governed and also violated their duty as officers sworn statutorily to act within the parameters of Uniform Commercial Code, the National Bank Act and other applicable statutes. I, Shelley von Brincken, the claimant, rely upon <u>Haines v. Kerner</u>, 404 US 519 (1972), and do hereby and herein assert that this adversary proceeding is filed to make more definite and certain my Proof of Claim; Claim number <u>441.</u>

*Applicable Laws and Statutes*

3. **Pursuant to Public Law at 42 Stat 13-15 as Original Intent of Congress, title 42, United States Code (U.S.C.) section 1983, "Chapter XXII- an Act to enforce the**

Complaint for Violation of Civil Rights PAGE 2

**Provisions of the Fourteenth Amendment to the Constitution of the United States, and for Other purposes" Civil Rights Protections**

➢ **62 Stat 932, title 28, U.S.C. section 1343, (positive law) Civil Rights Violations**

➢ **62 Stat 934, title 28, U.S.C. section 1352, (positive law) Bonds Executed under Federal Law**

### Short Plain Statement of the Claim

4. The above claim is filed based upon a fraudulent and unlawful non-judicial foreclosure that was commenced on the property at 14738 Wolf Road, Grass Valley, California by GMAC MORTGAGE, LLC on September 3, 2010.

5. The Substitution of Trustee was signed by an alleged MERS employee, at a time when MERS, Inc. was not registered with the Secretary of State and was, consequently, not authorized to do business in California by the California Secretary of State, see **Exhibit A**. Consequently, MERS, Inc.'s act of signing and recording the Substitution of Trustee is an act that violates California Corporation Code, Sections 2258 and 2259, and makes the act of signing and recording the Substitution of Trustee document ultra vires and void, see Carter v. DEUTSCHE BANK, NATIONAL TRUST COMPANY, AS TRUSTEE, C09-3033 BZ (USDC, N. DIST. OF CALIF.). As a result MERS, Inc. acted without authority in signing and recording the Substitution of Trustee, and said document is void. MERS, Inc. did not issue a resolution from the Board of Directors making the signer of the Substitution of Trustee, Donna Fitton, a signer authorized to act on behalf of MERS, Inc. Normally a resolution of the Board of Directors must be issued authorizing the appointed person to act in an official capacity as a MERS, Inc. executive, otherwise third parties and courts cannot know if the documents they sign are a valid exercise of

corporate authority. The signer of the Substitution of Trustee, Donna Fitton, signed her

name in Los Angeles County, in Southern California, which is the headquarters office of

ETS Services, LLC, but MERS, Inc. has their headquarters office in Reston, Virginia, so

it appears that the signature is by an ETS Services, LLC employee and not a MERS, Inc.

executive. Additionally, the original lender, MORTGAGECLOSE.COM has never been a

member of MERS, INC. MERS membership is the contractual agreement that authorizes

MERS, Inc. to act on behalf of the original lender, in this case

MORTGAGECLOSE.COM, INC. as a nominee or beneficiary. MERS, Inc cannot act as

a nominee or beneficiary of a lender that is not a member of MERS, and thus MERS is

not a beneficiary nor are they a nominee for this particular Deed of Trust. ETS

SERVICES, LLC is named as a Defendant because of their role in outright fraud in the

execution of various pre-foreclosure and foreclosure documents that are unlawful to file

in the County Recorder's Office and fraudulent, including, but not limited to the

Substitution of Trustee, the Notice of Default and the Trustees Deed Upon Sale.


6. Without the MERS, Inc. membership agreement, MERS, Inc. has no standing and

capacity to sign pre-foreclosure documents for MORTGAGECLOSE.COM, INC. MERS,

Inc. does not have any standing whatsoever to sign their name as a nominee when the

original lender did not authorize their status as a nominee by way of a standard

membership agreement, which is signed by all of their members. MERS, Inc. cannot act

as a nominee for MORTGAGECLOSE.COM, INC without a formal written agency

agreement.

7. Based upon the above analysis of the MERS, Inc. use of a Substitution of Trustee, without the proper agency status as a signer of the Substitution of Trustee, the subsequent documents signed by the allegedly substituted trustee, the Notice of Default, the Notice of Trustees Sale, and the Trustees Deed Upon Sale, see **Exhibit B**, were all void and defective documents and have no force and effect in law, having been signed by a party who does not have standing to sign as a trustee for reasons already discussed. The act of signing and recording the Substitution of Trustee, a Notice of Default, and a Trustees Deed Upon Sale without standing is a violation of my procedural and substantive due process rights as guaranteed under the due process clauses of the Fifth and Fourteenth Amendments to the US Constitution, because the signer had no standing to act as an agent of the original lender.

8. In addition, GMAC MORTGAGE, LLC presented an indorsement of the note that was typed and signed on a separate piece of paper called an allonge, see **Exhibit C**. Under California law, an allonge must be signed directly on the note, unless there are so many indorsements on the note itself that a separate allonge must be filed and attached to the note, see Pribus v. Bush, 118 Cal.App.3d 1003; 173 Cal. Rptr. 747(1981). The appellate court in Pribus, supra, states: "The trial court ruled that the Williams' signature on the paper attached to the promissory note did not qualify as an indorsement because there was adequate space for the indorsement on the note itself. We affirm the judgment." The court in Pribus v. Bush, supra, went on to say that the possibility for fraud is greatly reduced when the above rule is applied, which is the rationale for the requirement to place the indorsement on the note itself, unless there is no space for an additional indorsement. Thus, GMAC MORTGAGE, LLC does not have an indorsed note, and does not have the

status of a note holder, and cannot assign the mortgage to a third party, see UCC 3-203. A creditor must have an indorsed note in their possession as a condition precedent to enforce the note.

9. There is also no Assignment of Deed of Trust on file at the County Recorder's Office in Nevada County assigning the Deed of Trust to GMAC MORTGAGE, LLC or FEDERAL NATIONAL MORTGAGE ASSOCIATION as required under California Civil Code Section 2932.5. There is a common law requirement for the alleged creditor to have possession of the security device, otherwise there is no admissible evidence that the alleged creditor is entitled to enforce the note and Deed of Trust. If the indorsement of the note does not meet the requirements under state law for foreclosure, then the creditor does not have standing to foreclose, in violation of my procedural and substantive due process rights, as guaranteed under the Fifth and Fourteenth Amendments to the US Constitution.

10. The foreclosure sale was based upon a series of flawed and defective documents and unlawful acts by GMAC MORTGAGE, LLC and their agents, especially ETS Services, LLC employees, who executed the Substitution of Trustee document as a MERS executive, that they have no right to execute because the original lender, MORTGAGECLOSE.COM, is not a MERS member and for other reasons already stated. This act of signing and recording the Substitution of Trustee was unlawful, ultra vires and void and makes all of the other pre-foreclosure documents and foreclosure documents void for lack of standing and capacity. My home was foreclosed on in violation of the UCC Section 3-301 and in violation of the other state and Federal laws, and in violation

of the due process clauses of the Fifth and Fourteenth Amendments to the US Constitution.

11. I was forced to answer a civil action for Unlawful Detainer filed by a party without standing and filed with the intent to use fraudulent inducement to make me believe that GMAC MORTGAGE, LLC had the right to foreclose with a flawed and defective Substitution of Trustee. Every other document subsequently recorded was signed by an improperly substituted trustee was without force and effect in law having been recorded by ETS Services, LLC, who was not properly appointed as a trustee for all of the reasons given above. I lost my home due to violations of my rights under state and federal law, as discussed. Although GMAC MORTGAGE, LLC is not a state actor, they engaged the services of the County Recorder's Office, through their agent, ETS Services, LLC, thereby violating my civil rights by use of the County Recorder and taking actions that lead to my home being taken away from me in violation of the above-cited law, causing me to lose my home in violation of my procedural and substantive due process rights. As a result, GMAC MORTGAGE, LLC is subject to the federal civil rights statutes by way of their use of the County Recorder, who is a state actor, to commit overt acts of deception and fraud. My home is worth more than the amount of the claim at this point in time.

12. **The Defendant has previously failed to state a creditor claim as for which relief can be granted.** The Defendant, GMAC MORTGAGE, LLC never had standing to foreclose because they have not supplied any material evidence that they are in possession of the note and deed of trust and they have a note indorsed on an along in violation of

California law and the UCC. Thus they have violated the hearsay rule. I cited legal

authorities making it clear and plain that they must be in possession of the note with a

proper indoresement. I have cited <u>Matter of Staff Mortg. & Inv. Co.</u>, 550 F. 2d, 1228

(Ninth Circuit, 1977) in this regard. The Ninth Circuit has affirmed this ruling on seven

separate occasions and <u>Matter of Staff Mortg. & Inv. Co.</u>, supra has been cited as an

authority by the Sixth and Eighth Circuits, and is, therefore, established Ninth Circuit law

and the law in several other Judicial Circuits. The Fifth Circuit has issued a similar ruling.

If the Defendant cannot demonstrate that they are the holder of the note, then they are not

a party to the transaction and then they cannot foreclose and they cannot file an unlawful

detainer case against me because of a lack of standing. Rule 17a of the Federal Rules of

Civil Procedure requires ratification of commencement by the Plaintiff, so that the

Plaintiff is required to demonstrate that they are the real-party-in-interest and the actual

note holder. In addition to being in possession of the note, the foreclosing party in a

foreclosure has to have a note endorsed to meet the requirements under Uniform

Commercial Code, and, as discussed the allonge can only be used when there is no room

on the note itself. It appears that the note is probably in possession of a REMIC, since

virtually 100 percent of all mortgages during this period of time were securitized. The

servicing agent may have standing if acting as an agent for the holder, assuming that the

agent can both show agency status and that the principle is the holder.  In re Vargas, 396

B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

…"Only the Holder of the Note is the "Real Party in Interest.".…The right to enforce the

mortgage on behalf of the note holder does not, however, render the note holder's agent

into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an

agent solely for the purpose of bringing suit is viewed as a nominal rather than a real

Complaint for Violation of Civil Rights PAGE 8

party in interest and will be required to litigate in the name of his principal rather than in his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553.

13. "Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the note holder, who is the real party in interest. Fed.R.Civ.P. 17(a) (1)". In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. Sept. 2008). The alleged note holder has not met the requirements under the Federal Rules of Civil Procedure Rule 17(a) to establish that they are the real party-in-interest, and therefore, has no standing.

## Factual Allegations

14. The Defendant GMAC MORTGAGE, LLC has failed and refused to produce the note with an indorsement, that complies with the decision in Pribus v. Bush, supra, showing who is in possession of the note and revealing who is the holder-in-due-course of the note.

15. The Defendant GMAC MORTGAGE, LLC is required to produce the note with proper indorsements under Uniform Commercial Code Sections 3-501, 3-205, 3-301, 3-305, 3-309, 1-201(b)(21)(A), 9-304, 9-305.

16. The Defendants have not even produced hearsay evidence that they or their principals or agents are holding the note with a proper indorsement, as discussed, and

Complaint for Violation of Civil Rights PAGE 9

have failed to produce any admissible evidence regarding who the note was subsequently assigned to and who is the assignee of the Deed of Trust, in violation of California Civil Code Section 2932.5.

17. The sale of the Note and Deed of Trust to a mortgage backed security has not been revealed but has most likely been accomplished because of the participation of FEDERAL NATIONAL MORTGAGE ASSOCIATION in the Foreclosure process, see **Exhibit B**, the Trustees Deed upon sale.

18. FEDERAL NATIONAL MORTGAGE ASSOCIATION was one of the first organizations to securitize loans and their participation in the foreclosure signals an undisclosed assignment of the note or the Deed of Trust to a REMIC. FEDERAL NATIONAL MORTGAGE ASSOCIATION is exempt from requirements to submit records to the SEC when they form a REMIC, AKA Real Estate Mortgage Investment Conduit.

19. The Defendant GMAC MORTGAGE, LLC had no standing to foreclose or enforce the debt because they are not the creditor as discussed above.

20. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage or a deed of trust.

21. The Sponsor is supposed to arrange for title to the mortgage loans to be

Complaint for Violation of Civil Rights PAGE 10

transferred to an entity known as the depositor, which then was supposed to transfer title to the loans to the trust.

22. As mentioned, the assignment of the mortgages never properly occurred and this is the subject of countless lawsuits by the borrowers such as Plaintiff.

23. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected.

24. The trust is a mere conduit that has no power to do anything, and has no real trustee.

25. In addition, there were usually "credit enhancements" which could take several forms including such things as Credit Default Swaps, "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. The well-known problems with the AIG insurance bailout was part of this "credit enhancement process. Plaintiff alleges that once a proper accounting is done and proper credits applied, Plaintiffs will owe nothing on their loans making the unlawful detainer actions simply a part of the ongoing fraud.

26. The Defendant GMAC MORTGAGE, LLC is functioning as a loan servicer and is thereby subject to the Fifth and Fourteenth Amendments, and is no longer the holder of the note.

27. Even before the loans were made, the "Securitizers" had planned and arranged to securitize the loans. In the course of securitizing the loans, Plaintiffs are informed and believe that the Securitizers had a practice of taking more money from the Investors than was loaned to the home owners, and that they concealed this practice from both the home owners (including Plaintiffs and those similarly situated) and the Investors. In addition, there were usually "credit enhancements" which could take several forms including such things as "excess spreads", over collateralization, reserve accounts, surety bonds, wrapped securities, letters of credit, and cash collateral accounts. (See, http://en.wikipedia.org/wiki/Credit_enhancement for a more detailed description). On information and belief, I, the Plaintiff, allege that the well known problems with American International Group (AIG), relate to credit enhancements. Both the Plaintiff and the Investors have claims to the credit enhancement funds as well as undisclosed fees taken by the Originators and Securitizers and possible credits and offsets for other items. As to Plaintiff, such funds should be credited against my loan. Based upon information and belief, Plaintiff alleges that once a proper accounting is done and proper credits applied, Plaintiffs will owe nothing on their loans making the foreclosure actions simply a part of the ongoing fraud.

## II. SECURITIZATION OF MORTGAGE LOANS INCLUDING PLAINTIFFS

28. Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in a complaint. As set

Complaint for Violation of Civil Rights PAGE 12

forth in the Investor Cases, the securities that the Securitizers sold are so called

asset-backed securities, or ABS, created in a process known as securitization. More

specifically, they involved a complex financial instrument product known generically in

the securities industry as collaterized debt obligations ("CDOs"). "Synthetic" CDOs are

even more complex instruments that are "derivates" based only indirectly on the CDOs

(i.e., Credit Default Swaps).

29. Securitization begins with the sale of bonds to Investors (usually they are sold

"forward" meaning they are sold to the investors before the Investors' funds are given to

mortgage borrowers such as the Plaintiffs.) Only some of the funds were then used to

fund loans such as Plaintiffs'. Investors were led to believe all of their funds except for

reasonable fees were forwarded, but this was false.

30. The entities involved in making the loans are known as the Originators. The

process by which the Originators decide whether or not to make particular loans is known

as the underwriting of loans. Plaintiff is informed and believes that during the loan

underwriting process, representations were made to the Investors that the originators

would apply various criteria to try to ensure that the loan will be repaid. However, they

did not do so and instead, the way the securitization scheme was structured, it was

actually in the best interests of the "Securitizers" (including Originators) for the loans to

fail. They were clearly not acting with the interests of Plaintiffs or the Investors in mind.

31. Until the loans are securitized, the borrowers on the loans sometimes make

their loan payments to an Originator, but this may never occur or only be for a very short

time. Collectively, the payments on the loans are known as the cash flow from the loans.

32. A large number of loans, usually of a similar type, are grouped into a collateral pool. The Originator of those loans claims it sells them (and, with them, the right to receive the cash flow from them) to a special purpose vehicle called a trust by the Securitizers. The trust is supposed to pay the Originator cash for the loans. As mentioned, the trust raises the cash to pay for the loans by selling bonds, in the form of certificates, to Investors. Each certificate purportedly entitles its holder to an agreed part of the cash flow from the loans in the collateral pool.

33. There are tranches of investment bonds sold. Typically, "Tranche A" is a veneer of conventional mortgages where the borrowers appear creditworthy. ("Tranche" is a French word for "slice". A tranche is a piece, portion, or slice of a deal or structured financing. Different tranches have different risks, rewards, and/or maturities.) Other tranches had much less credit worthy borrowers. Using the creditworthy borrowers, the Securitizers obtained ratings on the bonds that were inaccurate at best. It has now become public knowledge that Securitizers conspired with the rating agencies to mislead investors. Thus, schematically, these are some of the steps in a securitization in no specific order:

a. Investments are created for Investors usually in the form of Bonds.

b. Credit Enhancements are obtained.

c. Rating agencies are provided misleading information and paid to rate the Bonds as "safe" and provide misleading information.

d. Investors pay money to the trust.

Complaint for Violation of Civil Rights PAGE 14

e. The trust issues certificates to the Investors.

f. The trust pays money to the parties up the chain toward the

borrower/property owner through the Originators.

g. Only part of the funds are used to fund mortgage loans such as the one

made to plaintiff.

h. The rest of the money is kept by the Originators and Securitizers in the

scheme. In other words, by way of example, the Investors might think

they are funding a loan for $1 million, however, only $500,000 is actually

loaned to borrowers such as the plaintiff, and the Securitizers keep the

rest through a complex series of transactions.

i. The Originator and Securitizers plan in advance for the loans to default.

j. Loans made to persons like Plaintiff are placed into one or more pools.

k. The Originator was supposed to assign to the trust the loans which were

placed into a collateral pool, including the right to receive the cash flow

from those loans, but a proper assignment/transfer was never done.

l. The trust is supposed to collect cash flow from payments on the loans in the collateral

pool; however it has no legal right to do so even under the lengthy, complex documents

used in securitization.

m. When the mortgage loans go into default, the Securitizers demand that payment be

made to the Investors by the "credit enhancements."

n. In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not

pay off (as was planned), in order to cover the difference between what was loaned to

borrowers such as Plaintiff and what was funded by the Investors and make another

hidden profit for the Securitizers. According to some published reports, these

Complaint for Violation of Civil Rights PAGE 15

unregistered securities were frequently more than 30 times the principal on the

mortgage loans (such as Plaintiffs'.) Thus, if the borrowers such as Plaintiffs did not

perform on the loans, the Securitizers would make more money than if they did.

o. After default, even though the mortgage loan is technically paid in full if a proper

accounting were done, the Securitizers pretend the loan is still owed by the borrowers

such as Plaintiffs to the original named "beneficiary" on the deed of trust, and try to

foreclose on the mortgage and steal the mortgaged real property from borrowers such as

the Plaintiffs.

p. Securitizers hire law firms such as Defendants who know or should know collection of

loans such as the Subject Loan is improper and routinely conceal information concerning

such to the courts. (See, *In Re Nosek*, 406 B.R. 434.)


34. Recently, the U.S. Supreme Court has found that these law firms may be held

liable in class actions under the Fair Debt Collection Practices Act. (See, *Jerman v.*

*Carlisle, McNellie, Rini, Kramer & Ulrich Lpa, et al.*, 130 S. Ct. 1605; April 21, 2010).


35. At the risk of being redundant, but also more specific and adding that the

taxpayers are paying for this, the order of things is usually as follows:


• The first transactions that occurred were the sale of securities to

unsuspecting investors.


• The second transaction that occurred was that the investor money was put

into an account at an investment banking firm.

Complaint for Violation of Civil Rights PAGE 16

• The third transaction was that the investment banker divided the money between fees for itself and then distributing the funds to aggregators or a Depository Institution.

• The fourth transaction was the closing with the borrower. The loan was funded with the money from the investor after deducting large undisclosed fees and also because of the disparity between the interest payable to the investor and the interest payable by the borrower, a yield spread was created, adding huge sums to what the investment banker took without disclosure to the investors or the borrowers.

• The fifth was the assignment and acceptance of the loan generally into between 1 and 3 asset pools, each bearing distinctive language describing the pool such that they appeared to be different assets than already presumed to exist in the first pool.

• The sixth was the receipt of insurance or counter-party payments on behalf of the pool pursuant to the documents creating the securitization structure.

• The seventh was the resecuritization of the pooled assets between one and three times.

• The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

• The ninth are the foreclosures by parties who never provided any money which is often the original named beneficiary on the trust deed.

• In the alternative fraudulent and forged assignments allegedly represent investors which practice is currently the subject of a criminal investigation.

• Lastly, attorneys are hired to evict the home owners such as plaintiffs.

Complaint for Violation of Civil Rights PAGE 17

• After eviction, the house is sold and no one knows at this point where the proceeds from the sales go.

• It is unlikely it goes back to the government which has at least indirectly funded all this through "bail outs".

36. Securitization involves many documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master Service Agreements [if separate]. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

37. Each securitization has a Sponsor, a prime mover of the securitization. Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored securitizations, the collateral pool usually contains loans made by the Investors. Sometimes, the Sponsor may be an investment bank.

38. The two important documents in the mortgage loan made to the home owner/borrower are the promissory note and the mortgage (usually a deed of trust as in Plaintiffs' loans in California).

39. The Sponsor is supposed to arrange for title to the mortgage loans to be transferred to an entity known as the depositor, which then was supposed to transfer title to the loans to the trust.

40. As mentioned, the assignment of the mortgages never properly occurred and this is the subject of countless lawsuits by the borrowers such as Plaintiffs. The obligor of the certificates in a securitization is supposed to be the trust that purchases the loans in the collateral pool. However, this cannot be true because title to the mortgage loans was never perfected. The trust is a mere conduit that has no power to do anything, and has no real trustee.

41. The Pooling and Service Agreements provide certain time deadlines by which transfers were to be made, and these were not met.

42. When a trust has no assets it cannot satisfy the liabilities of an issuer of securities (the certificates). According to the Investor Cases, the law therefore treats the depositor as the issuer of an asset-backed certificate.

43. According to the Investor Cases, securities dealers, represented that they would underwrite the sale of the certificates. Most important, securities underwriters provided to potential investors the information that they need to decide whether to purchase certificates.

44. Because the cash flow from the loans in the collateral pool of a securitization is purportedly the source of funds to pay the holders of the certificates issued by the trust, the credit quality of those certificates, if this were true, would be dependent upon the credit quality of the loans in the collateral pool. According to the Investor Cases, the most

important information about the credit quality of those loans is contained in the files that the Originator develops while making the loans, the so-called loan files. For residential mortgage loans, each loan file normally contains the information in such important documents as the borrower's application for the loan, credit reports on the borrower, and an appraisal of the property that will secure the loan.

45. This is the point where the Mortgage Electronic Registration System ("MERS") became a part of the scheme, which is itself subject to countless lawsuits including class actions. Recently, Fannie Mae issued new rules stating the MERS has no authority concerning its loans.

46. Collateral pools usually include thousands of loans. Instead of potential investors individually reviewing thousands of loan files, the securities firms that would underwrite the sale of the certificates in a securitization were supposedly responsible for gathering, verifying, and presenting to potential investors the information about the credit quality of the loans that will be deposited into the trust.

47. As was alleged in the Investor Cases, the Securitizers sold to the Investors certificates in securitizations the information that was presented to Investors contained many false statements that were material to the mortgage/loan transactions.

48. I, Shelley von Brincken, the claimant, rely upon Haines v. Kerner, 404 US 519 (1972), and do hereby and herein assert that this adversary proceeding is filed to make more definite and certain my Proof of Claim; Claim number 441.

### FIRST CAUSE OF ACTION

### [FRAUD, AND VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS (Against Defendants, and Other Loan Servicers Acting As Debt Collectors to Be Alleged By Amendment)

49. Plaintiffs repeats and re-alleges each and every allegation contained above.

50. Defendants have concealed the roles of the parties and Plaintiffs are unsure who the other "debt collectors" of the loans are. Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

51. Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

52. In foreclosing on Plaintiff's home, and prosecuting the subsequent unlawful detainers, the debt collector Defendants:

a. made false, deceptive and misleading representation concerning their standing to sue the plaintiffs and the interest in the debt;

b. falsely represented the status of the debt, in particular, that it was due and owing by defendants to plaintiffs at the time an eviction suit was filed;

c. falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, such assignment had not been

Complaint for Violation of Civil Rights PAGE 21

accomplished;

d. threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them, and

e. threatened to obtain access to state courts to evict Plaintiff, under false pretenses, namely, that Defendants were duly authorized to engage in such activities when in fact they were not, and

f. In the case of Purchasers Law Firms, knew or should have known they did not acquire proper title and proceeded with eviction proceedings against Plaintiff home owner anyway.

53. Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiff at this time as it would violate the "Pooling and Service Agreements" used in securitization.

54. Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiffs residences contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies.

55. In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

56. The foregoing acts and omissions of Defendants constitute violations of the Due process clauses of the Fifth and Fourteenth Amendments to the US Constitution, by taking actions to foreclose and seize property without standing and capacity. Also, the is a Planned Unit Development Rider that is attached to and made part of the note in this matter. The assignment of the note is unlawful because the Planned Unit Development Rider, hereinafter PUD, see **Exhibit D**, changed the note from an unconditional promise to pay to a conditional promise to pay, because it contains a clause at the beginning which creates a condition within the note, making it a conditional promise to pay. Under UCC Sections 3-104 and 3-106, when a note is a conditional promise to pay it is non-negotiable. The PUD, discussed above, stated, in relevant part, as follows: "This Planned Unit Development Rider is made this 14th day of January, 2009, and is incorporated into and shall be deemed to amend and supplement the mortgage, deed of trust or security deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure borrowers note to MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION (the "Lender")............".

57. Plaintiff is entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

58. The defendants do not have a security interest in my property because of the lack of standing and capacity. They claim that The Mortgage Backed Security or an

undisclosed Third Party Note Buyer's purchase of the note from the original lender forms

the foundation of their authority to take my property by a foreclosure action. There is no

right of subrogation for the Mortgage Backed Security or any other party, because, on

information and belief, they have purchased the original note as a stranger to the

transaction and as someone who is a mere volunteer and not secondarily liable. If all

Defendants deny that they are the holder of the note, without revealing who the note

holder is, or fail to bring forward the original promissory note, then they still are

representing a party who does not have standing. Additionally, there is no valuable

consideration, since only Federal Reserve Notes were received, which are not backed by

any hard asset of the bank or anything which has any redemption value. I do not

remember ever signing over a security interest, based upon valuable consideration to the

defendants or anyone else.

59.   The Mortgage backed Security or an undisclosed third party note buyer is

acting through an agent, the Defendant, GMAC MORTGAGE, LLC since they allegedly

purchased the original note for an undisclosed amount, and they do not have the Deed of

Trust in their possession. As a result of the original lender having sold the original note,

and as a result of the fact that the note buyer does not have the Deed of Trust in their

possession, the Mortgage Backed Security or an undisclosed Note Buyer, is a stranger to

the transaction and has no right, title, estate or interest to my land and home.

60. *ANY FORECLOSURE ACTION BY THE DEFENDANTS is unenforceable*

*and void ab intio, from the beginning.* **The Defendants, have a duty, as an alleged**

**creditor to prove that they have a right of enforcement if either they or their principal,**

Complaint for Violation of Civil Rights PAGE 24

*an Undisclosed Third Party Note Buyer, prior to taking steps to foreclose on our property, the land and home, which is the subject of this civil action.* The Defendants, GMAC MORTGAGE, LLC, did not do this, and by their failure to prove that either the above named Defendant or their undisclosed Third Party Note Buyer is entitled to enforce the note, they have failed to perform a duty, which they are required to perform under California law. My Mortgage was signed in January 14, 2009 and is part of an investment fund sponsored by FEDERAL NATIONAL MORTGAGE ASSOCIATION, which cannot be found on the SEC website called "EDGAR", as discussed. Also, as discussed, the Defendant does not have the right to enforce the note, because they do not have the Deed of Trust in their possession and there is no properly executed Assignment of Deed of Trust in the possession. Additionally, the fraudulently executed Substitution of Trustee, see **Exhibit B**, is defective and void because of the lack of agency status of MERS who signed the Assignment of Deed of Trust without a MERS Membership agreement, thereby lacking any status as a nominee or agent. It appears that the note was assigned to a REMIC, without the Deed of Trust being assigned, thereby making the property interest in the note incomplete and void. Thus the note for my property was part of a pooling and servicing agreement whereby investors purchased the note from the original lender, placing the note into a trust with thousands of other notes. The Defendants are liable under Title 42, Section 1983, 1985 and 1986 because they used government agencies, such as the Nevada County Recorder and the courts, using state actors to accomplish their unlawful foreclosure and seizure of the subject property.

61. Attorneys have an auxiliary role to play in this matter, assisting GMAC MORTGAGE, LLC and their principals and agents in their unlawful activities, by

Complaint for Violation of Civil Rights PAGE 25

sending out demands for payment and preparing to file an eviction lawsuit in California

courts knowing that they do not have the right of subrogation as a stranger to the

transaction. The undisclosed Third Party Note Buyer has never had any right, title or

interest in the subject property as a stranger to the transaction, as discussed. The note and

Deed of Trust have been irreparably split, because no one can account for its whereabouts

and there has been no recording of the Assignment of Deed of Trust as required under

California Civil Code, Section 2932.5, and Title 15 US Code, Section 1641.


62. The Defendants and their agents and principals violated my right to due

process of law, as guaranteed under the Fifth and Fourteenth Amendments to the US

Constitution by presenting themselves as a party who has a right to enforce the original

note, although their Undisclosed Third Party Note Buyer clearly is not now, nor have they

ever been entitled to enforce the original note. Because the undisclosed Third Party Note

Buyer has no right of enforcement of the note for reasons previously discussed, they have

no right to enforce the note, and thereby no right to foreclose or to claim any right, title or

interest in the subject property. I have a right to expect that anyone who is attempting to

foreclose on the property has the right to do so as someone who has standing. Based upon

information and belief, the Defendant clearly has never had standing to foreclose, and

based upon the above analysis and facts. Federal courts are bound by the US Constitution

and laws passed in pursuance thereof, including the FIFTH AND FOURTEENTH

AMENDMENTS TO THE US CONSTITUTION.


63. When there is fraud involved, then any action that flows from that fraud is null

and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* out of

**fraud no action arises.** Additionally, if this is true the Defendants are liable for fraud,

fraudulent conversion and attempted theft of private property. This claim of ownership of

my home and land without a judicial trial by the jury, and without due process of law,

access to an appeals process, a final judgment by a court, represents a taking of property

without due process of the law in violation of the Fifth and Fourteenth Amendments to

our Federal constitution. The fraud has occurred numerous times by way of

correspondence and phone calls from the Defendants and their agents over the last two

years, during the year 2011-12, where they attempted to mislead me into believing that I

owed them money and they had a lawful claim to enforce the note, even though they did

not because GMAC MORTGAGE, LLC or their undisclosed note buyer, the Mortgage

Backed Security (or Undisclosed Third Party Note Buyer) does not have the right of

enforcement as a stranger to the transaction. Please see **Exhibit B**, attached, and

incorporated by reference, a copy of a Notice of Default, which states on page one at

Paragraph one, that the Defendants and the agents and principals have the power to

foreclose and that we have to pay the past due amounts, even though they have not

complied with all of the requirements under the Seventh Amendment to litigate title,

whenever the value in controversy exceeds twenty dollars, requiring that the lender obtain

a court order from a court of record prior to selling or transferring the subject property in

a foreclosure sale pursuant to the Seventh Amendment to the US Constitution, and even

though they do not have possession of the note, and their principal, the undisclosed third

party note buyer, does not have standing to sue for foreclosure as a stranger to the

transaction. Also, the Notice of Default is fraudulent because it asks for a payment, even

though the full amount of the debt was paid when the original lender rubber stamped the

words "pay to the order of" and deposited the promissory notes into a checking account in

Complaint for Violation of Civil Rights PAGE 27

our name without full disclosure, see **Exhibit E**, page Six, right hand paragraph #2, and Page Seven, Modern Money Mechanics, a publication issued by the Federal Reserve Bank of Chicago. In addition, the Notice of Default is fraudulent because it derives powers as a trustee from the Substitution of Trustee which is also fraudulent, since the signer of the Substitution of Trustee purports to exercise powers as an alleged MERS executive, when MERS was ultra-vires, and when MORTGAGECLOSE,COM, INC. was not a MERS member, making any alleged nominee status or agency status void. The Substitution of the Trustee, therefore makes the entire foreclosure process void ab-initio.

64. The most intense and deliberate acts of fraud occurred in the months of January through July of 2010 by way of written and telephonic communications, threatening to foreclose, when the Defendant was preparing to sell my home on the courthouse steps, even though the Defendants and all of them lack standing as strangers to the transaction. One notice, the Notice of Default, was sent in 2010, attached as **Exhibit B**, which states, in the first and second paragraph on page 1 that my property is in foreclosure and the subject property may be sold without any court action. The entire document is filled with false and misleading statements but the last paragraph is designed to mislead me into believing that I owe money to the alleged beneficiary or trustee and that my only option is to pay the debt and that the alleged beneficiary is empowered and has the standing to foreclose. The Defendants and their agents, through the above described document, are engaged in a willful and deliberate act of making false and misleading statements designed to mislead me and make me rely on their statements to my detriment, so I will be influenced by their written communications to take actions that are detrimental to me, whereby I either pay money for payment of the note and deed of

1    trust to someone who does not have the right of enforcement as a stranger to the

2    transaction and someone who does not have the original note in their possession, and

3    thereby lacks standing, or else I abandon the subject property to a party who has no right

4    of enforcement of the note and mortgage and has no standing.

5

6        65. These are false choices. The other statement made by the Defendants agent in

7    paragraphs 1 and 2 is that they have the right to foreclose without a judicial process. This

8    statement is false and misleading and designed to induce and mislead me and make me

9    take actions to my detriment, such as abandoning the subject property, because the

10   alleged creditor is required to obtain a judgment from a court of record prior to selling the

11   subject property pursuant to the Fifth Amendment to the US Constitution as previously

12   discussed.

13

14

15

16       66. To understand fraud we must take into account the case of <u>McNally v. U.S.</u>,

17   483 U.S. 350, 371-372, Quoting U.S. v Holzer, 816 F.2d. 304, at 307. Fraud in its

18   elementary common law sense of deceit includes the deliberate concealment of material

19   information in a setting of fiduciary obligation. A public official is a fiduciary toward the

20   public, and if he deliberately conceals material information from them he is guilty of

21   fraud. "Silence activates estoppel" Carmine v. Bowen, 64 A. 932.

22

23       67. "Silence can only be equated with fraud where there is a legal or moral duty to

24   speak, or where an inquiry left unanswered would be intentionally misleading." <u>U.S. v.
</u>
25   <u>Tweel</u>, 550 F.2d 297. "Fraud vitiates even the most solemn promise to pay", see U.S. vs.

26   Throckmorton, 98 U.S. 61, 65.

27

28

Complaint for Violation of Civil Rights PAGE 29

1

68. The Fifth Amendment to our Federal Constitution of 1787, and similar

provisions of the California Constitution, guarantees <u>that no person shall be deprived of</u>

<u>life, liberty or property without due process of law.</u> I, Shelley von Brincken, The Plaintiff,

do not recall ever having been given a summons or subpoena or other lawful notice

requiring my presence in court in a Quiet Title Action. I do not recall a trial by the jury,

final judgment, or having seen a court order regarding a determination of Title in an

action to Quiet Title. Article Three of the Constitution for the United States of America

and Constitution of the United States provides for jurisdiction under the rules of the

common law, see <u>Callan v. Wilson,</u> 127 US 540. The Seventh Amendment to our federal

constitution and Article Two of the Northwest Ordinance of 1787 guarantees jurisdiction

under the course of the common law. The defendants actions are not the result of a

common law ruling and due process in a court of law, "The 7th Amendment to the

Constitution preserves the right of trial by jury in suits at common law involving more

than $20, and provides that no fact tried by a jury, shall be reviewed otherwise than

according to the rules of the common law.", <u>see 443 Cans of Frozen Egg Product v.</u>

<u>United States of America;</u> 226 US 172.


69. The defendants have failed to prove or show a court order authorizing private

property to be liened, levied or seized based upon a determination of title in an Action to

Quiet Title as required under the rules of the common law, and the due process clauses in

the Fifth and Fourteenth Amendments, and pursuant to the Seventh Amendment to the

US Constitution, as discussed previously, mandating a court order be obtained prior to a

foreclosure sale. The Defendants have used the organs and institutions of government to

seek to obtain fraudulent title to the subject property and are poised to hold a foreclosure

sale without due process of law, and without a trial by the jury under the rules of the

common law. The common law right of due process is found in the Fifth, Seventh and

Fourteenth Amendments to our Federal Constitution.


70. The actions taken by the defendants, attempt to deprive me of my liberty and

property without due process of law. Article Three of the original constitution for the

united States of America calls for either law courts, see <u>Callan v. Wilson</u>, 127 U.S. 540,

(1888) <u>"And as the guaranty of a trial by jury, in the third article, implied a trial in that</u>

<u>mode, **and according to the settled rules of common law**"</u>. See also Commentaries on

the Constitution by Joseph Story, Volume III, Pages 506-507. Actions by the Defendants

to claim to have a security interest in our private land and home and personal property

and claim authority to hold a foreclosure sale is an action beyond the scope of their

authority as strangers to the transaction, and as parties who have not brought a suit against

us under common law to litigate title. This is described by the United States Supreme

Court as tyranny in; <u>United States v. Lee</u>; 106 US 196, 1S. Ct. 240 (1882) where the

United States claimed ownership of property via a tax sale some years earlier, the court

made the statements found below.


71. "No man in this country is so high that he is above the law. No officer of the

law may set that law at defiance with impunity. All the officers of the government, from

the highest to the lowest are creatures of the law and are bound to obey it. It is the only

supreme power of our system of government, and every man who by accepting office

participates in its functions is only the more strongly bound to submit to that supremacy,

and to observe the limitations which it imposes upon the exercise of the authority which it

gives...... Shall it be said ... that the courts cannot give remedy when the citizen has been

deprived of his liberty by force, his estate seized and converted to the use of the

government without any lawful authority, without any process of law, and without any

compensation, because the president has ordered it and his officers are in possession? If

such be the law of this country, it sanctions a tyranny which has no existence in the

monarchies of Europe, nor in any other government which has a just claim to well-

regulated liberty and the protection of personal rights." In US v. Lee, supra, the

government can be considered as similar and applying in like manner as the defendants in

the above captioned case. If government agencies cannot take private property without

due process of law, how can a bank or mortgage company do so?


72. The Supreme Court also reaffirmed the right to enjoy private property and not be

deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US

538 (1972);


"Such difficulties indicate that the dichotomy between personal liberties and

property rights is a false one. The right to enjoy property without unlawful deprivation, no

less than the right to speak or the right to travel, is in truth a "personal" right whether the

"property" in question be a welfare check, a home, or a savings account. In fact a

fundamental interdependence exists between the personal right to liberty and the personal

right in property. Neither could have meaning without the other. That rights in property

are basic civil rights has long been recognized. J. Locke Of Civil Government 82-

85(1924); J. Adams A Defense of the Constitutions of Government of the United States

Complaint for Violation of Civil Rights PAGE 32

of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W.

Blackstone, Commentaries 138-140."


73. The taking of private property without due process is clearly a violation of

civil liberties as well as personal rights. One of the settled principles of our Constitution

is that these Amendments are to protect only against invasion of civil liberties by the

government whose conduct they alone limit. Burdeau v. McDowell ; 256 US 465, 41 S.

Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); Weeks v. United States; 232 US 383, 34 S.

Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v.

United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot

be used to participate and assist in the unlawful plunder of my private allodial property.


**The Defendants cannot foreclose without a Judicial Determination of The**

**Status of The Defendants as The Owner in a Court of Common Law and by Way of**

**A Quiet Title Action.**


74. The Defendants, by their action are attempting to force me out of the subject

property without due process of law. Pursuant to the rules of the common law, the

Defendants do not have the right to foreclose. The Defendants clearly violated California

law when they threatened foreclosure proceedings. Pursuant to the Fifth Article of

Amendment to our Federal Constitution, the Defendants cannot seek to obtain non-

judicial remedies to obtain title, thereby claiming to have a 'perfected title', and thereby

circumventing the due process requirements as guaranteed under the Fifth Amendment,

by way of the Fourteenth Amendment. A quiet title action must be adjudicated prior to

Complaint for Violation of Civil Rights PAGE 33

any foreclosure action taken or being tried in court, pursuant to the Seventh Amendment to the US Constitution.

75. The unlawful action taken by the Defendants was not preceded by a final judgment in an Action to Quiet Title, rendering a final determination regarding title, and is therefore violative of my due process rights, see the Seventh Amendment to the US Constitution. The US Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972). This case is similar and analogous to the Lynch case, referenced above, because property is going to be seized without judicial due process. **The Defendant is proceeding as if rights were waived. I have never waived any rights in this matter, knowingly, intelligently or voluntarily, including my right to judicial due process.** Please see Brady v US; 397 US 742 at 748 for confirmation that rights must be waived knowingly, intelligently and voluntarily.

76. The outcome of this case will determine the ownership of the subject property and the validity of the claims of the parties. The foreclosure action taken by the Defendants lacks personal and subject matter jurisdiction because of; 1.) the misrepresentation of material facts by the Defendants *that they have the right to foreclose* 2.) the failure and refusal by the Defendant, GMAC MORTGAGE, LLC to produce the original note, 3.) the fact that the attempted seizure of the private property in question is not lawful because it violates the doctrine of due process established by California Common Law and by the US Supreme Court in Lynch v Household Finance, supra, by skipping and circumventing the requirement to file an Action to Quiet Title under

common law to determine with certainty who has title to the property, as required under the Seventh Amendment to the US Constitution and 4.) it violates my due process rights as Plaintiff in the Quiet Title Action.

77. The original lender deposited the said loan amount in that account as an asset to fund the loan, without full disclosure.  This act violated generally Accepted Accounting Principles (GAAP), since that system of bookkeeping is used by all of the banks, and requires that every asset be balanced and offset by a liability.

78. Title 12 US Code, Section 248 and 347, require the 2046 balance sheet as it relates to the ledgering of the original loan account and will show extinguishment of the loan, and this must be filed pursuant to Title 12 USC, Sections 248 and 347. Form S 3, is a registration statement filed with the SEC and must be filed whenever the original note is sold. The SEC also requires the filing of a Form 424 B-5 Prospectus, and 425 B, which also shows the bundling of notes for delivery into a REMIC (Real Estate Mortgage Investment Conduit). See also IRS Publication 938. The Financial Accounting Standards Board has established standards for accounting regarding notes, including FAS 125, 133, 140, 5 and 95, which will show the liability side of the bank's books and will create a trail of exactly where the money came from and where it went and will confirm, in discovery, the legal theory advanced in this action to quiet title. Title 12, USC Section 1813 (L)(1) states that when the bank deposits a promissory note it becomes a cash item to the bank and is ledgered as an asset on their books, and the bank was supposed to provide a receipt for it, which was not done. The banks bundle, securitize and sell the notes to a REMIC, often without disclosure to the borrower.

Complaint for Violation of Civil Rights PAGE 35

79. When the original lender processed the original notes they countersigned the notes with a stamp that says "pay to the order of" and 'without recourse', Please see **Exhibit B**. This act of countersigning the notes with an endorsement changed the terms of the loan, without full disclosure, and altered the note, with an endorsement, which is a violation of Federal Law; the National Banking Act of 1864, Section 27, which states as follows:

> "And be it further enacted, that it shall be unlawful for any officer acting under the provisions of this act to countersign or deliver to any Association, or to any other company or person, any circulating notes contemplated by this act, except as hereinbefore provided, and in accordance with the intent and meaning of this act. And any officer who shall violate the provisions of this section, shall be deemed guilty of a high misdemeanor, and on conviction thereof shall be punished by fine not exceeding double the amount so countersigned and delivered, and imprisonment not less than one years year and not greater than fifteen years, at the discretion of the court at which he shall be tried."

80. The Defendant GMAC MORTGAGE, LLC sold the subject property to FANNIE MAE on August 31, 2010 in a non-judicial foreclosure and forced me out of my home as a result of the foreclosure in violation of *multiple sections of federal and state law discussed above.*

**81. The Defendants Cannot Validate the Debt, Therefore the obligation is extinguished, and any claim to the land is void.** The Defendants agents and debt collectors failed to validate and verify the debt in accordance with the Fair Debt Collection Practices Act Title 15 USC, § 1692(g) and numerous sections of the Uniform Commercial Code, all of which are a reflection of the rules of the common law.

**82. Eighth.** The Defendants in this matter have not responded to my request to validate the debt as required in the Qualified Written Request, therefore the obligation is extinguished, **See Exhibit F.** Please note the Defendants claim that they have the right to foreclose, however, the right of subrogation does not exist for the Defendants, and all of them, as a stranger to the transaction, pursuant to the case law below; see 73 Am Jur Second, Section 90 which states that a right of subrogation does not exist for a mere volunteer, or someone who has not paid the entire mortgage debt in full. Please review the following for affirmation that the right of subrogation does not exist for the Defendants; Henningsen v. United States Fidelity & G. Co; Supra; Prairie State National Bank v. United States; Supra ; Aetna L. Ins. Co. v. v. Middleport; Supra; McBride v. McBride; Supra. *AS A RESULT OF THE FOREGOING US SUPREME COURT RULINGS, THE DEFENDANTS DO NOT HAVE THE AUTHORITY TO FORECLOSE BECAUSE THEIR UNDISCLOSED THIRD PARTY NOTE BUYER DOES NOT HAVE THE RIGHT OF SUBROGATION. AS A RESULT, THEY CANNOT VALIDATE THE DEBT BECAUSE THEY ARE NOT THE HOLDER OF THE NOTE AND CANNOT ENFORCE THE NOTE THAT THEY CLAIM TO HAVE PURCHASED FROM THE ORIGINAL LENDER.*

Complaint for Violation of Civil Rights PAGE 37

83. In addition, the Defendants never proved that the full amount of the mortgage was paid by the note buyer, further amplifying the fact that a right of subrogation does not exist. In most cases the mortgage companies and banks sell the notes to each other for pennies on the dollar, meaning that they do not pay the entire mortgage debt in full, thereby providing another reason why they do not have the right of subrogation.

**84. The Uniform Commercial Code also reflects these principals of common law that once a debtor makes a good faith offer of performance and it is not accepted, the obligation is extinguished, pursuant to UCC 3-603.**

85. *The Qualified Written Request, see **Exhibit F** is a request for debt validation, which has not been fully answered showing a chain of title to FANNIE MAE, with an endorsement of the note to FANNIE MAE, making the debt unenforceable under the Fair Debt Collection Practices Act, Title 15, Section 1692 et seq. They did, however, state that FANNIE MAE holds the note without any documentation of that assertion. As stated above, the endorsement is invalid, since the endorsement cannot be on an allonge when there is room on the actual note for the endorsement.*

86. The lender never produced a verified claim demonstrating that something of value or substance was loaned in the transaction.

87. Therefore, the Defendants have no right to pursue this matter in court under Title 15 USC, Sections 1692 (g) and(e).

Complaint for Violation of Civil Rights PAGE 38

88. Therefore, the Defendants have no right to demand payment. Also, my good faith Offer of Performance was not accepted and therefore the obligation is extinguished.

89. Although the defendants forced me out of the property through foreclosure, See **Exhibit B**, they never produced evidence that they are the holder-in-due-course of the note.

90. **Eleventh. The rule of decision in Bankruptcy courts is common law.** Under the Seventh Amendment to the Constitution for the united States of America, we are entitled to a common law trial by the jury, 443 Cans of Frozen Egg Product v. United States of America 226 US 172, 50 at 52 Morris v United States 8 Wall. 507, 19 L. ed. 481 The Sarah 8 Wheat. 391, 5 L. Ed. 644 50 at 51 United States v. La Vengence (reported in 3 Dall. 297, 1 L. Ed. 610) United States v The Sally (in 2 Cranch 406, 2 L. Ed 320 and United States v The Betsy (in 4 Cranch 443, 2 Led. 673). "An unconstitutional act is not law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed." -- Norton vs. Shelby County; 118, US 425 p. 442. See also, Miranda v. California; 384 U.S. 436 (1966) **"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them"** emphasis mine.

91. On dry land, any action must be adjudicated under common law pursuant to the Seventh Amendment. According to the US Supreme Court, in 443 Cans of Frozen Egg Product v. United States of America; Supra, the US Supreme Court stated as follows; "The 7th Amendment to the Constitution preserves the right of trial by jury in suits at

common law involving more than $20, and provides that no fact tried by a jury, shall be reviewed otherwise than according to the rules of the common law."

**92. The Fifth and Fourteenth Amendments to the US Constitution must be adhered to in California, as in all other jurisdictions in the United States and the United States of America.**

**93. A party alleging to be creditor must prove standing. The Defendants have failed or refused to produce the actual note, which the Defendants allege that we owe.** Where the foreclosing party cannot prove the existence of the note, then there is no note. As a result, the Defendants, and each of them, lack standing to enforce the bank loan, which was entered into by me with MORTGAGECLOSE.COM, INC., for the purchase of the subject land and buildings, the subject property. To recover on a promissory note, the Defendant must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the Defendant is the owner or holder of the note; and (4) that a certain balance is due and owing on the note.  See In Re: SMS Financial LLC. v. Abco Homes, Inc. . No.98-50117  February 18, 1999 (5th Circuit Court of Appeals.) Volume 29 of the New Jersey Practice Series, Chapter 10 Section 123, page 566, emphatically states, " ...; and no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon.

94. It would seem that the mortgagor would normally have a Common law right to demand production or surrender of the bond or note and mortgage, as the case may be.

Complaint for Violation of Civil Rights PAGE 40

See Restatement, Contracts S 170(3), (4) (1932); C.J.S. Mortgages S 469.  In Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div 1992), the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302 "Since no one is able to produce the "instrument"  there is no competent evidence before the Court  that any party is the holder of the alleged note or the true holder in due course. New Jersey common law dictates that the plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that a certain balance is due and owing on any alleged note."  Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security.

95. The landmark case stating this doctrine is Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th  Cir. 1977),  "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." The above Ninth Circuit ruling was affirmed six times by the Ninth Circuit Court of Appeals and similar rulings were handed down in the Eighth and Sixth Circuits. Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession." The reason for requiring the lender to bring forward the original note and supply evidence of their lawful standing to foreclose is to prevent fraud and to prevent

Complaint for Violation of Civil Rights PAGE 41

multiple creditors from demanding payment. OCWEN LOAN SERVICING, LLC is

currently demanding payment from us many months after the foreclosure and eviction,

see **Exhibit G.** This is an act of outright fraud given the foreclosure has already been

completed by a different party also claiming to be a lender. OCWEN LOAN

SERVICING, LLC is named in this civil action because of their acts of outright fraud by

sending demand for payment long after the loan was foreclosed.

96. **In order to prove damages in foreclosure of a debt, a party must enter the
account and general ledger statement into the record through a competent fact
witness.** To prove up a claim of damages, the foreclosing party must enter evidence

incorporating records such as a general ledger and accounting of an alleged unpaid

promissory note, the person responsible for preparing and maintaining the account

general ledger must provide a complete accounting which must be sworn to and dated by

the person who maintained the ledger. See  Pacific Concrete F.C.U. V. Kauanoe,  62

Haw.334, 614 P.2d 936 (1980), GE Capital Hawaii, Inc. v. Yonenaka 25 P.3d 807,96

Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority; 28 Conn.L. Rptr.

371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc.;

513 A.2d 1218, 201  (1986). See also Solon v. Godbole;163 Ill. App. 3d 845, 114 Il.

97. **The Defendant, GMAC MORTGAGE, LLC, has not incurred a financial
loss in the lending of Federal Reserve Notes.** The Defendant GMAC MORTGAGE,

LLC has received payment in the form of credit enhancements, discussed above, as part

of the foreclosure process, so that once an accounting of the mortgage general ledger has

been completed, it will be obvious that the Defendant GMAC MORTGAGE, LLC has

been paid by credit default swaps and insurance, and nothing else is owed in this matter. Thus the Defendant, GMAC MORTGAGE, LLC, cannot allege that they incurred a financial loss, and they have no standing to assert a financial loss or foundation to allege that they incurred a financial loss, based upon the above statement issued by the House Banking and Currency Committee.

98. I, the Plaintiff am aware and allege that the Defendant successor-in-interests believe that they have an exclusive right, title and interest in the subject property, which is adverse to my interest, as Plaintiff, and that they do not have said right, title and interest, based upon the elements of fraud and failure of consideration, lack of the right of subrogation, and the unlawful collateral attack on patented land discussed above. The claims of the Defendants and each of them are without any rights whatsoever, and the Defendants have absolutely no legal or equitable estate, right, title or interest in the subject land and buildings that is the subject of this complaint.

## SECOND CAUSE OF ACTION

(Fraudulent inducement)

99. **First.** *I, Shelley von Brincken, hereby allege and re-allege all of the foregoing Paragraphs as part of this Cause of Action with the same force and effect as if fully set forth herein.* Based upon the foregoing the Defendants are slandering title to the subject property, and are attempting an act of fraudulent conversion. The Defendants have a duty to refrain from attempting to foreclose when they lack standing. I ask the court to provide declaratory relief to order the defendants to cease and desist and declare null and void the

foreclosure notices, abate, curtail, cease and desist any collection activities by the

defendants for lack of due process lack of a claim filed against the original land patent,

and breach of contract. *The Defendants, and each of them, including* GMAC

MORTGAGE, LLC's principal, The Mortgage backed Security (or their undisclosed third

party note holder), *have not produced any evidence whatsoever that they are holding the*

*original notes and have not produced evidence that they are a co-signer on the original*

*promissory notes. The Defendants, and each of them, including* GMAC MORTGAGE,

LLC and any of their principals or agents, *have, therefore, no standing to foreclose and*

*no right to foreclose on the subject property.* Therefore, the act, whereby, the Defendants

arranged to file a Notice of Default, is an act of slander of title, whereby they claim, under

the color of law and under the official trappings of official looking documents, ownership

of our private property.


100. *The Defendants Undisclosed Third Party Note Buyer has never produced any*

*evidence that they have paid the entire mortgage debt in full, thereby failing to prove a*

*second element that is required of someone who is claiming to have a right of subrogation,*

*as discussed above. The Defendant's Third Party Note Buyer and each of them, therefore,*

*has no right of subrogation as a stranger to the original transaction and as someone who*

*has not paid the entire mortgage debt in full.* See Aetna L. Ins. Co. v. Middleport, 124 US

534. In an action to annul a promissory note and deed of trust which were then in the hands

of an assignee, evidence supported findings that foreclosure during litigation would

produce great or irreparable injury to the plaintiffs and therefore issuance of an order of

cease and desist restraining assignees from disposing of a note and deed or from foreclosing

was not an abuse of discretion, see; Daniels v. Williams; 270 P. 2d 556, 125 C.A. 2d 310.

1   In this case I am asking for financial compensation for damages from the Defendant GMAC

2   MORTGAGE, LLC. I am asking for Damages from ETS Services, LLC

3   in an amount to be determined at the time of trial.

4

5   101. **Second.** The Defendants have never produced the following; A.) evidence of a lien,

6   a security interest or some kind of right, title or interest in the property or any sort of

7   claim that is superior to our own, based upon a right of subrogation and upon valuable

8   consideration, and possession of the note and being a party to the loan and a judgment by

9   a common law court, WHICH IS REQUIRED UNDER CALIFORNIA LAW

10  PURSUANT TO THE FIFTH, SEVENTH AND FOURTEENTH AMENDMENTS TO

11  THE US CONSTITUTION  PRIOR TO ANY ATTEMPT TO SELL THE PROPERTY;

12

13

14  102. This is also required by the rules of the common law, pursuant to the Seventh

15  Amendment, see _443 Cans of Frozen Egg Product v United States of America_; supra and

16  the Northwest Ordinance of 1787; and B.) to identify the valuable consideration or lawful

17  money that gives them power to enforce the original note and deed of trust.

18

19

20      103. Therefore, under the doctrine of laches the Defendant's Principal, the

21  Undisclosed Third Party Note Buyer is barred from now claiming to have *a right of*

22  *subrogation and thereby any* right, title or interest in the property or a lien or a security

23  interest over me,  Shelley von Brincken, the Plaintiff, or the subject property. Under the

24  principal of estoppel by silence, the Defendants remain silent and still do not respond to

25  the constructive notice or issues of law raised in the constructive notice/ Qualified

26  Written Request.

27

28
            Complaint for Violation of Civil Rights PAGE 45

1

2 **Relief Requested**

3    104.    In this case, the Assignments were prepared to conceal that no valid or

4 proper assignments of the promissory notes or trust deeds ever occurred.  The foregoing

5 acts and omissions of OCWEN LOAN SERVICING, LLC, constitute violations of the

6 FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

7

8    105.    Plaintiff is entitled to recover equitable relief, statutory damages, actual

9 damages, reasonable attorney's fees, and costs.

10    WHEREFORE Plaintiff prays for Judgment in his favor and against the

11    Defendants and each of them as follows:

12    106.    For an award of compensatory damages in an amount to be proven at time

13 of trial in favor of the Plaintiff and against the Defendants, including GMAC

14 MORTGAGE, LLC, its Assignee whose name is unknown to the Plaintiff, the loan

15 servicer of the Plaintiff's home loan, MERS and the trustee in an amount to be proven at

16 time of trial, but in any event in an amount above the arbitration limits of the court;

17

18    107.    For punitive damages in an amount to be proven at time of trial;

19

20

21    108.    For the Declaratory relief and an order of cease and desist prayed for in the

22 General Allegations of Plaintiff's Complaint;

23

24    109.    For Plaintiff's costs of suit incurred herein;

25

26    110.    For an award of Plaintiff's reasonable attorney's fees pursuant to UCC and

27    For a trial by jury; and

28

Complaint for Violation of Civil Rights PAGE 46

111.   For prejudgment and post-judgment interest on any damage award at the maximum rate allowed by law; and

112.   For such other and further relief as the Court may deem just and proper in the premises.

## ADDITIONAL RELIEF REQUESTED

113.   **One.** For abatement of any all past, current and future claims of any right, title or interest in the property, abatement of demands for mortgage payments, current past and future, discharge of any current or past demands for payment and I ask that the Defendants be ordered to remove the subject property from any list of assets on their books, and remove any records of this fraudulent debt with credit reporting agencies. I further ask that the ACTIONS taken by the defendants to place the property for sale to the public in an unlawful foreclosure proceeding or trustee sale, in violation of the due process provisions of the Fifth and Fourteenth Amendments to the US Constitution, and California common law be abated and reversed and that they cease and desist their actions and activities in pursuance thereof. I also ask for a court order compelling the Defendants to give up any current attempt to take possession and occupancy of the subject property and that the Defendant GMAC MORTGAGE, LLC be compelled to reconvey title and issue a document stating that the debt is satisfied.

114.   **Two.** For a declaratory judgment that because the above described property is held in alloidum by me, the Defendants and each of them took unlawful actions to record a Substitution of Trustee document, which they lacked standing and capacity to record, recorded a Notice of Default document, and a Trustees Deed Upon

1    Sale, which they lack standing and capacity to record, for reasons already stated, and

2    conducted a foreclosure, which led to my eviction from the subject property, which is

3    unlawful for reasons previously stated, and must be found to be have unlawfully seized

4    lawful private property from me with full knowledge and intent to engage in an act of

5    foreclosure, which they know is unlawful and contrary to lawful due process as

6    guaranteed under the Fifth and Fourteenth Amendment.

7

8        115.    **Three.** For an order of Cease and Desist, ordering the Defendants and

9    their agents, including any unregistered foreign agents, to cease and desist any further

10   actions to obtain money and property from me, as they are continuing to do so even after

11   the foreclosure and eviction has occurred.

12

13       116.    I, Shelley von Brincken, the Plaintiff in this matter, demand punitive

14   damages FOR ENGAGING IN WILLFUL ACTS OF OPPRESSION, FRAUD AND

15   MALICE from the defendant GMAC MORTGAGE, LLC in the amount of $ 80,000.00,

16   SILVER SPECIE sum certain payable in silver one ounce coins minted by the United

17   States Treasury or the equivalent in modern circulating currency from OCWEN LOAN

18   SERVICING, LLC. I, Shelley von Brincken, the Plaintiff in this matter, demand punitive

19   damages FOR ENGAGING IN WILLFUL ACTS OF OPPRESSION, FRAUD AND

20   MALICE from the defendant ETS SERVICES, LLC in the amount of $ 80,000.00,

21   SILVER SPECIE sum certain payable in silver one ounce coins minted by the United

22   States Treasury or the equivalent in modern circulating currency.

23

24

25       117.    I, Shelley von Brincken, the Plaintiffs in this matter, and the aggrieved,

26   injured party demand cost for this suit, if the suit is contested.

27

28

Complaint for Violation of Civil Rights PAGE 48

118.    Leave to amend the complaint pursuant to Federal Rules of Civil Procedure § 15(a) once discovery is completed and the defendants have raised the usual FRCP 12(b)(6) objections and the usual avalanche of procedural gimmicks.

119.    An order from the court explaining where the complaint is deficient and how to correct it.

120.    Such other relief as the court deems just, proper and equitable.

Respectfully Submitted,

Date: 8-19-13

Shelley von Brincken

**VERIFICATION**

I have read the **PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF** and know the contents thereof to be true; and the same is true of my own knowledge, except to the matters, which are therein stated on my information and belief, and as to those matters, I believe them to be true. The foregoing is true, correct, complete and not misleading.

Sealed by the voluntary act of my own hand on this Nineteenth day of the eighth month, in the Year of our Lord, two thousand and thirteen.



Shelley von Brincken

**EXHIBITS LIST**

EXHIBIT A        DOCUMENTS FROM THE CALIFORNIA SECREATARY OF
                 STATE SHOWING THAT MERS WAS NOT REGISTERED AS
                 A CORPORATION UNTIL JULY, 2010

EXHIBIT B        SUBSTITUTION OF TRUSTEE, NOTICE OF DEFAULT,
                 NOTICE OF DEFAULT, TRUSTEES DEED UPON SALE

EXHIBIT C        ALLONGE ATTACHED TO NOTE

EXHIBIT D        PLANNED UNIT DEVELOPMENT RIDER

EXHIBIT E        MODERN MONEY MECHANICS, The First Seven Pages

EXHIBIT F        QUALIFIED WRITTEN REQUEST

EXHIBIT G        OCWEN DEMANDS FOR PAYMENT

EXHIBIT  A

DOCUMENTS FROM THE CALIFORNIA SECREATARY OF STATE

SHOWING THAT MERS WAS NOT REGISTERED AS A CORPORATION UNTIL

JULY, 2010

**DEBRA BOWEN** | SECRETARY OF STATE | STATE OF CALIFORNIA
BUSINESS PROGRAMS | BUSINESS ENTITIES
1500 11th Street | Sacramento, CA 95814 | Tel (916) 657-5448 | www.sos.ca.gov

July 24, 2013

SHELLEY VON BRINCKEN
PO BOX 2362
GRASS VALLEY CA  95945

RE: MERS, INC. – C3344482
     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. – C3306164
     MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.  (MERS) – C2416221
     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. – C3109037

Dear Ms. von Brincken:

Thank you for contacting the California Secretary of State's office with regard to the above-referenced corporations.

The records of this office reflect four corporations with the same/similar name as in your request.  The following may assist you in determining which corporation is the one you are interested in:

### MERS, INC. – C3344482

This Nevada corporation registered to transact intrastate business in California on December 2, 2010 and surrendered their registration on June 8, 2012.

### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. – C3306164

This Delaware corporation registered to transact intrastate business in California on July 21, 2010.  The status of this corporation is active as of the date of this letter.

### MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.  (MERS) – C2416221

This California corporation incorporated on May 21, 2002 and was suspended by the Secretary of State's office November 9, 2004 and by the Franchise Tax Board on December 1, 2005.

### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. – C3109037

This California corporation incorporated on June 1, 2009 and changed their name to XZVT, INC. on March 1, 2010.  The corporation was suspended by the Franchise Tax Board on January 3, 2012.

Complaint for Violation of Civil Rights PAGE 53

July 24, 2013
Page 2

The business entity records required to be filed with this office are public records and are available for inspection free of charge in our Sacramento office during regular business hours Monday through Friday, excluding holidays, at 1500 11th Street, 3rd Floor.  Copies of records, including certified copies of the records, can be obtained for a fee in person, or by mail through our Information Retrieval/Certification Unit.

Requests for copies of business entity documents filed with the Secretary of State and various types of certificates can be mailed or delivered in person to the Secretary of State's Sacramento office. Copies can be certified, upon request, for an additional fee. Fees and instructions for requesting copies and/or certificates are included on the Business Entities Records Order Form available on our website at www.sos.ca.gov/business/be/information-requests.htm.

The Secretary of State makes available on its website through a link called the California Business Search (http://kepler.ss.ca.gov/list.html) abstracts of certain information relating to corporations, limited liability companies and limited partnerships based on the most current filings that are of record in this office.

I hope this information is helpful to you.  If you have any questions, or if I can assist you on another matter related to the Secretary of State's office, please do not hesitate to contact me.


*Randi Stewart*

Randi Stewart
Corporation Documents Examiner
(916) 653-7333

Complaint for Violation of Civil Rights PAGE 54

3306164

## STATEMENT AND DESIGNATION
## BY FOREIGN CORPORATION

**FILED**
In the Office of the Secretary of State
of the State of California

JUL 2 1 2010

Mortgage Electronic Registration Systems, Inc.
_____
(Name of Corporation)

_____, a corporation organized and existing under the

laws of _____Delaware_____, makes the following statements and designation:
(State or Place of Incorporation)

1. The address of its principal executive office is 1818 Library Street, Suite 300,

Reston, VA 20190 _____

2. The address of its principal office in the State of California is _____
(If none, leave Item 2 blank.)

_____

### DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
(Complete either Item 3 or Item 4.)

3. (Use this paragraph if the process **agent is a natural person.**)

_____, a natural person residing in the State of

California, whose complete street address is _____

_____, is designated as agent upon whom process directed to
this corporation may be served within the State of California, in the manner provided by law.

4. (Use this paragraph if the process **agent is another corporation.**)

_____Corp2000_____,
a corporation organized and existing under the laws of _____California_____,
is designated as agent upon whom process directed to this corporation may be served within the State
of California, in the manner provided by law.

5. It irrevocably consents to service of process directed to it upon the agent designated above, and to
service of process on the Secretary of State of the State of California if the agent so designated or the
agent's successor is no longer authorized to act or cannot be found at the address given.

_____          William Hultman, Corporate Secretary
(Signature of Corporate Officer)              (Typed Name and Title of Officer Signing)

*If an individual is designated as the agent for service of process, include the agent's business or residential street address in California (a P.O. Box
address is not acceptable). If another corporation is designated as the agent for service of process, do not include the address of the designated
corporation. Note: Corporate agents must have complied with California Corporations Code section 1505 prior to designation, and a
corporation cannot act as its own agent.*

Secretary of State Form
S&DC-STOCK/NONPROFIT (REV 09/2009)

**Complaint for Violation of Civil Rights PAGE 55**

# Delaware

PAGE   1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC." IS DULY INCORPORATED UNDER THE LAWS OF THE STATE
OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE
EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE
NINTH DAY OF JULY, A.D. 2010.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL REPORTS HAVE
BEEN FILED TO DATE.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES
HAVE BEEN PAID TO DATE.

2990193   8300

100722789

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 8104185

DATE: 07-09-10

Complaint for Violation of Civil Rights PAGE 56

# Business Entity Detail

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, July 12, 2013. Please refer to                  for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. |
| Entity Number: | C3306164 |
| Date Filed: | 07/21/2010 |
| Status: | ACTIVE |
| Jurisdiction: | DELAWARE |
| Entity Address: | 1818 LIBRARY STREET, STE 300 |
| Entity City, State, Zip: | RESTON VA 20190 |
| Agent for Service of Process: | GENPACT REGISTERED AGENT, INC. |
| Agent Address: | 15420 LAGUNA CANYON RD STE 100 |
| Agent City, State, Zip: | IRVINE CA 92618 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code          for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to                        .
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to                  .
- For descriptions of the various fields and status types, refer to

Copyright © 2013    California Secretary of State

Complaint for Violation of Civil Rights PAGE 57

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  B

SUBSTITUTION OF TRUSTEE, NOTICE OF DEFAULT,

TRUSTEES DEED UPON SALE

**RECORDING REQUESTED BY:**
Recording Requested by
Title Court Service

**Old Republic Default Management Services**
when Recorded mail To:

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

Nevada County Recorder
Gregory J. Diaz
Document#: 20100009776
Wednesday April 28 2010, at 12:08:00 PM
Rec Fee:$14.00
Paid: $14.00
Recorded By:JR
Title Court Services

TS NO : GM-242742-C
LOAN NO : 0602227759

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

WHEREAS, SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, CALIFORNIA LAND TITLE COMPANY OF NV COUNTY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION was the original Beneficiary under that certain Deed of Trust dated 1/14/2009 and recorded on 1/23/2009 as Instrument No. 2009-0001231-00, in Book , Page  of Official Records of Nevada County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : 4/27/2010**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

DONNA FITTON, ASSISTANT SECRETARY

State of California} ss.
County of Los Angeles }

On 4/27/2010 before me, Dee C. Ortega Notary Public, personally appeared Donna Fitton who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
Dee C. Ortega

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

**RECORDING REQUESTED BY:**

Old Republic Default Management Services

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

This is to certify that the attached is a true
and correct copy of the original recorded 4·28·10
as instrument No. 2010-9777
Official Records of __Nevada__ County.

_____ _____
_____ Default Management Services 17.00

TS No.: GM-242742-C    Loan No.: 0602227759        SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$5,958.63** as of **4/27/2010,** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone



Complaint for Violation of Civil Rights PAGE 60
7113 8257 1474 2169 5959

TS NO.: GM-242742-C                    LOAN NO.: 0602227759

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.
Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is
concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That  Executive Trustee Services, LLC dba ETS Services, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated   1/14/2009 , executed by  SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION, as beneficiary, recorded 1/23/2009, as Instrument No. 2009-0001231-00, in Book , Page ,  of Official Records in the Office of the Recorder of  Nevada County, California describing land therein as:

## AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of  $220,000.00 ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 1/1/2010 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 4/27/2010

ETS Services, LLC as Agent for Beneficiary

BY:_____

Maricela Miseroy
TRUSTEE SALE OFFICER

Complaint for Violation of Civil Rights PAGE 61

**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600**

Date: 5/5/2010

T.S. Number:   GM-242742-C
Loan Number:  0602227759

## DEBT VALIDATION NOTICE

1.  The enclosed document relates to a debt owed to the current creditor:

    **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

    You may send us a written request for the name and address of the original creditor, if different from the
    current creditor, and we will obtain and mail the information to you.

2.  As of 4/27/2010 the total delinquency owed was $5,958.63, but this amount will increase until the delinquency has been fully cured.

3.  As of 5/5/2010, the amount required to pay the entire debt in full was $223,386.69, but this amount will increase daily until the debt has been fully paid.

4.  You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice.  Otherwise, we will assume that the debt is valid.

5.  If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.

---

**WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
WE OBTAIN WILL BE USED FOR THAT PURPOSE**

---



Complaint for Violation of Civil Rights PAGE 62

PO Box 9032
Temecula, CA 92589-9032



7113 8257 1474 2169 5959

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

Send Correspondence to:
ETS
2255 N. Ontario Street
Suite 400
Burbank, CA 91504

SHELLEY VON BRINCKEN
14738 WOLF RD
GRASS VALLEY CA 95949-8134

20100506-56
CA10DAY_Certified



Complaint for Violation of Civil Rights PAGE 63

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC dba ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**GMAC MORTGAGE, LLC  FKA**
**GMAC MORTGAGE CORPORATION**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON, PA 19034**

Forward Tax Statements to
the address given above

Nevada County Recorder
Gregory J. Diaz
Document#: 201 00021600
Friday September 10 2010, at 01:35:13 PM
Rec Fee:$20.00
Paid: $20.00
Recorded By:KP

---

TS # GM-242742-C
LOAN # 0602227759
TITLE ORDER # 33-80132897

SPACE ABOVE LINE FOR RECORDER'S USE

INVESTOR #: 0000000000000

# TRUSTEE'S DEED UPON SALE

APN 55-060-68-000          TRANSFER TAX: $00.00
"THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE, SECTION 480.3"
The Grantee Herein Was The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $235,204.06
The Amount Paid By The Grantee Was $186,940.72
Said Property Is In The City Of **GRASS VALLEY**, County of Nevada

**Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder
more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to

## FEDERAL NATIONAL MORTGAGE ASSOCIATION

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of Nevada, State of
California, described as follows:

See exhibit "A" attached hereto and made a part hereof

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **SHELLEY VON
BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** as Trustor, dated **1/14/2009** of the
Official Records in the office of the Recorder of Nevada, California under the authority and powers vested in the Trustee
designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust
pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on **1/23/2009** , instrument number
**2009-0001231-00** (or Book , Page )
of Official records. Trustee having complied with all applicable statutory requirements of the State of California and
performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days
after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to
each person entitled to notice in compliance with California Civil Code 2924b.

**[Page 1 of 2]**

Complaint for Violation of Civil Rights PAGE 64

EXHIBIT "A"

GM-242742-C

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF
NEVADA, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

LOT 1, AS SHOWN UPON THE FINAL MAP NO. 00-002, "THE WOLF", AS FILED IN THE
OFFICE OF THE RECORDER OF THE COUNTY OF NEVADA ON MAY 6, 2008, IN BOOK 8 OF
SUBDIVISION MAPS, AT PAGE 178.

## TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# GM-242742-C
Loan # 0602227769
Title Order # 33-80132897

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies
of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting
of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of
Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction
on 8/31/2010. Grantee, being the highest bidder at said sale became the purchaser of said property
for the amount bid, being  **$186,940.72**  in lawful money of the United States, in pro per, receipt there
of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof,  **Executive Trustee Services, LLC dba ETS Services, LLC,**  as Trustee, has this day, caused its
name
to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: 9/3/2010

LLC                                               **Executive Trustee Services, LLC dba ETS Services,**

                                                  By: _Kathleen Gowen_
                                                  Kathleen Gowen, Limited Signing Officer

State of California        } S.S.
County of Los Angeles  }
On 9/3/2010  before me, **Sally Beltran**  Notary Public, personally appeared Kathleen Gowen who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Sally Beltran_                                            (Seal)
         Sally Beltran

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

[Page 2 of 2]

Complaint for Violation of Civil Rights PAGE 66

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT C**

**ALLONGE ATTACHED TO NOTE**

*060222 7759*

MIN: 1002310-0000810219-5

# NOTE

Loan Number: 0810219

JANUARY 14, 2009
[Date]

ORANGE
[City]

CALIFORNIA
[State]

14738 WOLF ROAD, GRASS VALLEY, CALIFORNIA 95949
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 220,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on MARCH 1 2009  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  FEBRUARY 1, 2039   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  1855 WEST KATELLA AVENUE, SUITE 200, ORANGE, CALIFORNIA 92867

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,266.44

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 68

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of       15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Complaint for Violation of Civil Rights PAGE 69

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
SHELLEY  VON  BRINCKEN          -Borrower                                              -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                              -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                              -Borrower


*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                              Page 3 of 3          DocMagic *℮Ⓕⓞⓡⓜⓢ* 800-649-1362
                                                                 www.docmagic.com

Complaint for Violation of Civil Rights PAGE 70

# Allonge to Note

Loan Number:                    0810219

Note Date:                      January 14, 2009

In Favor of:

**MORTGAGECLOSE.COM, INC.**

And Executed by

Borrower:          SHELLEY VON BRINCKEN

Property:          14738 WOLF RD

                   GRASS VALLEY, CA 95949

Loan Amount:       $220,000.00

Pay to the Order of

**GMAC Bank**

Without Recourse

MORTGAGECLOSE.COM, INC.

Authorized Signature:

Chau Lam - President of MortgageClose.com, Inc.

Complaint for Violation of Civil Rights PAGE 71

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT  D

PLANNED UNIT DEVELOPMENT RIDER

Loan Number: 0810219

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    14th    day of JANUARY, 2009    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to    MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

14738 WOLF ROAD, GRASS VALLEY, CALIFORNIA 95949
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

THE WOLF

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

---

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 1 of 3

DocMagic *eFormns* 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 73

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                    Page 2 of 3

DocMagic *EFarms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
SHELLEY VON BRINCKEN        -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Complaint for Violation of Civil Rights PAGE 75

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

1
2
3          EXHIBIT  E
4      MODERN MONEY MECHANICS, The First Seven Pages
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# *Modern Money Mechanics*

**A Workbook on Bank Reserves and Deposit Expansion**

**Federal Reserve Bank of Chicago**

# *Modern Money Mechanics*

*The purpose of this booklet is to describe the basic process of money creation in a "fractional reserve" banking system. The approach taken illustrates the changes in bank balance sheets that occur when deposits in banks change as a result of monetary action by the Federal Reserve System — the central bank of the United States. The relationships shown are based on simplifying assumptions. For the sake of simplicity, the relationships are shown as if they were mechanical, but they are not, as is described later in the booklet. Thus, they should not be interpreted to imply a close and predictable relationship between a specific central bank transaction and the quantity of money.*

*The introductory pages contain a brief general description of the characteristics of money and how the U.S. money system works. The illustrations in the following two sections describe two processes: first, how bank deposits expand or contract in response to changes in the amount of reserves supplied by the central bank; and second, how those reserves are affected by both Federal Reserve actions and other factors. A final section deals with some of the elements that modify, at least in the short run, the simple mechanical relationship between bank reserves and deposit money.*

Money is such a routine part of everyday living that its existence and acceptance ordinarily are taken for granted. A user may sense that money must come into being either automatically as a result of economic activity or as an outgrowth of some government operation. But just *how* this happens all too often remains a mystery.

## What Is Money?

If money is viewed simply as a tool used to facilitate transactions, only those media that are readily accepted in exchange for goods, services, and other assets need to be considered. Many things — from stones to baseball cards — have served this monetary function through the ages. Today, in the United States, money used in transactions is mainly of three kinds — currency (paper money and coins in the pockets and purses of the public); demand deposits (non-interest-bearing checking accounts in banks); and other checkable deposits, such as negotiable order of withdrawal (NOW) accounts, at all depository institutions, including commercial and savings banks, savings and loan associations, and credit unions. Travelers checks also are included in the definition of transactions money. Since $1 in currency and $1 in checkable deposits are freely convertible into each other and both can be used directly for expenditures, they are money in equal degree. However, only the cash and balances held by the nonbank public are counted in the money supply. Deposits of the U.S. Treasury, depository institutions, foreign banks and official institutions, as well as vault cash in depository institutions are excluded.

This transactions concept of money is the one designated as M1 in the Federal Reserve's money stock statistics. Broader concepts of money (M2 and M3) include M1 as well as certain other financial assets (such as savings and time deposits at depository institutions and shares in money market mutual funds) which are relatively liquid but believed to represent principally investments to their holders rather than media of exchange. While funds can be shifted fairly easily between transaction balances and these other liquid assets, the money-creation process takes place principally through transaction accounts. In the remainder of this booklet, "money" means M1.

The distribution between the currency and deposit components of money depends largely on the preferences of the public. When a depositor cashes a check or makes a cash withdrawal through an automatic teller machine, he or she reduces the amount of deposits and increases the amount of currency held by the public. Conversely, when people have more currency than is needed, some is returned to banks in exchange for deposits.

While currency is used for a great variety of small transactions, most of the dollar amount of money payments in our economy are made by check or by electronic

transfer between deposit accounts. Moreover, currency is a relatively small part of the money stock. About 69 percent, or $623 billion, of the $898 billion total money stock in December 1991, was in the form of transaction deposits, of which $290 billion were demand and $333 billion were other checkable deposits.

## What Makes Money Valuable?

In the United States neither paper currency nor deposits have value as commodities. Intrinsically, a dollar bill is just a piece of paper, deposits merely book entries. Coins do have some intrinsic value as metal, but generally far less than their face value.

What, then, makes these instruments — checks, paper money, and coins — acceptable at face value in payment of all debts and for other monetary uses? Mainly, it is the confidence people have that they will be able to exchange such money for other financial assets and for real goods and services whenever they choose to do so.

Money, like anything else, derives its value from its *scarcity* in relation to its usefulness. Commodities or services are more or less valuable because there are more or less of them relative to the amounts people want. Money's usefulness is its unique ability to command other goods and services and to permit a holder to be constantly ready to do so. How much money is demanded depends on several factors, such as the total volume of transactions in the economy at any given time, the payments habits of the society, the amount of money that individuals and businesses want to keep on hand to take care of unexpected transactions, and the foregone earnings of holding financial assets in the form of money rather than some other asset.

Control of the *quantity* of money is essential if its value is to be kept stable. Money's real value can be measured only in terms of what it will buy. Therefore, its value varies inversely with the general level of prices. Assuming a constant rate of use, if the volume of money grows more rapidly than the rate at which the output of real goods and services increases, prices will rise. This will happen because there will be more money than there will be goods and services to spend it on at prevailing prices. But if, on the other hand, growth in the supply of money does not keep pace with the economy's current production, then prices will fall, the nation's labor force, factories, and other production facilities will not be fully employed, or both.

Just how large the stock of money needs to be in order to handle the transactions of the economy without exerting undue influence on the price level depends on how intensively money is being used. Every transaction deposit balance and every dollar bill is a part of somebody's spendable funds at any given time, ready to move to other owners as transactions take place. Some holders spend money quickly after they get it, making these funds available for other uses. Others, however, hold money for longer periods. Obviously, when some money remains idle, a larger total is needed to accomplish any given volume of transactions.

## Who Creates Money?

Changes in the quantity of money may originate with actions of the Federal Reserve System (the central bank), depository institutions (principally commercial banks), or the public. The major control, however, rests with the central bank.

The actual process of money creation takes place primarily in banks.[1] As noted earlier, checkable liabilities of banks are money. These liabilities are customers' accounts. They increase when customers deposit currency and checks and when the proceeds of loans made by the banks are credited to borrowers' accounts.

In the absence of legal reserve requirements, banks can build up deposits by increasing loans and investments so long as they keep enough currency on hand to redeem whatever amounts the holders of deposits want to convert into currency. This unique attribute of the banking business was discovered many centuries ago.

It started with goldsmiths. As early bankers, they initially provided safekeeping services, making a profit from vault storage fees for gold and coins deposited with them. People would redeem their "deposit receipts" whenever they needed gold or coins to purchase something, and physically take the gold or coins to the seller who, in turn, would deposit them for safekeeping, often with the same banker. Everyone soon found that it was a lot easier simply to use the deposit receipts directly as a means of payment. These receipts, which became known as notes, were acceptable as money since whoever held them could go to the banker and exchange them for metallic money.

Then, bankers discovered that they could make loans merely by giving their promises to pay, or bank notes, to borrowers. In this way, banks began to create money. More notes could be issued than the gold and coin on hand because only a portion of the notes outstanding would be presented for payment at any one time. Enough metallic money had to be kept on hand, of course, to redeem whatever volume of notes was presented for payment.

Transaction deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries crediting deposits of borrowers, which the borrowers in turn could "spend" by writing checks, thereby "printing" their own money.

---

[1] In order to describe the money-creation process as simply as possible, the term "bank" used in this booklet should be understood to encompass all depository institutions. Since the Depository Institutions Deregulation and Monetary Control Act of 1980, all depository institutions have been permitted to offer interest-bearing transaction accounts to certain customers. Transaction deposits (interest-bearing as well as demand deposits on which payment of interest is still legally prohibited) at all depository institutions are subject to the reserve requirements set by the Federal Reserve. Thus all such institutions, not just commercial banks, have the potential for creating money.

Complaint for Violation of Civil Rights PAGE 79

## What Limits the Amount of Money Banks Can Create?

If deposit money can be created so easily, what is to prevent banks from making too much — more than sufficient to keep the nation's productive resources fully employed without price inflation? Like its predecessor, the modern bank must keep available, to make payment on demand, a considerable amount of currency and funds on deposit with the central bank. The bank must be prepared to convert deposit money into currency for those depositors who request currency. It must make remittance on checks written by depositors and presented for payment by other banks (settle adverse clearings). Finally, it must maintain legally required reserves, in the form of vault cash and/or balances at its Federal Reserve Bank, equal to a prescribed percentage of its deposits.

The public's demand for currency varies greatly, but generally follows a seasonal pattern that is quite predictable. The effects on bank funds of these variations in the amount of currency held by the public usually are offset by the central bank, which replaces the reserves absorbed by currency withdrawals from banks. (Just how this is done will be explained later.) For all banks taken together, there is no net drain of funds through clearings. A check drawn on one bank normally will be deposited to the credit of another account, if not in the same bank, then in some other bank.

These operating needs influence the minimum amount of reserves an individual bank will hold voluntarily. However, as long as this minimum amount is less than what is legally required, operating needs are of relatively minor importance as a restraint on aggregate deposit expansion in the banking system. Such expansion cannot continue beyond the point where the amount of reserves that all banks have is just sufficient to satisfy legal requirements under our "fractional reserve" system. For example, if reserves of 20 percent were required, deposits could expand only until they were five times as large as reserves. Reserves of $10 million could support deposits of $50 million. The lower the percentage required, the greater the deposit expansion that can be supported by each additional reserve dollar. Thus, the legal reserve ratio together with the dollar amount of bank reserves are the factors that set the upper limit to money creation.

## What Are Bank Reserves?

Currency held in bank vaults may be counted as legal reserves as well as deposits (reserve balances) at the Federal Reserve Banks. Both are equally acceptable in satisfaction of reserve requirements. A bank can always obtain reserve balances by sending currency to its Reserve Bank and can obtain currency by drawing on its reserve balance. Because either can be used to support a much larger volume of deposit liabilities of banks, currency in circulation and reserve balances together are often referred to as "high-powered money" or the "monetary base." Reserve balances and vault cash in banks, however, are not counted as part of the money stock held by the public.

For individual banks, reserve accounts also serve as working balances.[2] Banks may increase the balances in their reserve accounts by depositing checks and proceeds from electronic funds transfers as well as currency. Or they may draw down these balances by writing checks on them or by authorizing a debit to them in payment for currency, customers' checks, or other funds transfers.

Although reserve accounts are used as working balances, each bank must maintain, on the average for the relevant reserve maintenance period, reserve balances at the Reserve Bank and vault cash which together are equal to its required reserves, as determined by the amount of its deposits in the reserve computation period.

## Where Do Bank Reserves Come From?

Increases or decreases in bank reserves can result from a number of factors discussed later in this booklet. From the standpoint of money creation, however, the essential point is that the reserves of banks are, for the most part, liabilities of the Federal Reserve Banks, and net changes in them are largely determined by actions of the Federal Reserve System. Thus, the Federal Reserve, through its ability to vary both the total volume of reserves and the required ratio of reserves to deposit liabilities, influences banks' decisions with respect to their assets and deposits. One of the major responsibilities of the Federal Reserve System is to provide the total amount of reserves consistent with the monetary needs of the economy at reasonably stable prices. Such actions take into consideration, of course, any changes in the pace at which money is being used and changes in the public's demands for cash balances.

The reader should be mindful that deposits and reserves tend to expand simultaneously and that the Federal Reserve's control often is exerted through the marketplace as individual banks find it either cheaper or more expensive to obtain their required reserves, depending on the willingness of the Fed to support the current rate of credit and deposit expansion.

While an individual bank can obtain reserves by bidding them away from other banks, this cannot be done by the banking system as a whole. Except for reserves borrowed temporarily from the Federal Reserve's discount window, as is shown later, the supply of reserves in the banking system is controlled by the Federal Reserve.

Moreover, a given increase in bank reserves is not necessarily accompanied by an expansion in money equal to the theoretical potential based on the required ratio of reserves to deposits. What happens to the quantity of

---

[2] Part of an individual bank's reserve account may represent its reserve balance used to meet its reserve requirements while another part may be its required clearing balance on which earnings credits are generated to pay for Federal Reserve Bank services.

Complaint for Violation of Civil Rights PAGE 80

money will vary, depending upon the reactions of the banks and the public. A number of slippages may occur. What amount of reserves will be drained into the public's currency holdings? To what extent will the increase in total reserves remain unused as excess reserves? How much will be absorbed by deposits or other liabilities not defined as money but against which banks might also have to hold reserves? How sensitive are the banks to policy actions of the central bank? The significance of these questions will be discussed later in this booklet. The answers indicate why changes in the money supply may be different than expected or may respond to policy action only after considerable time has elapsed.

In the succeeding pages, the effects of various transactions on the quantity of money are described and illustrated. The basic working tool is the "T" account, which provides a simple means of tracing, step by step, the effects of these transactions on both the asset and liability sides of bank balance sheets. Changes in asset items are entered on the left half of the "T" and changes in liabilities on the right half. For any one transaction, of course, there must be at least two entries in order to maintain the equality of assets and liabilities.

Complaint for Violation of Civil Rights PAGE 81

# *Bank Deposits—How They Expand or Contract*

Let us assume that expansion in the money stock is desired by the Federal Reserve to achieve its policy objectives. One way the central bank can initiate such an expansion is through purchases of securities in the open market. Payment for the securities adds to bank reserves. Such purchases (and sales) are called "open market operations."

How do open market purchases add to bank reserves and deposits? Suppose the Federal Reserve System, through its trading desk at the Federal Reserve Bank of New York, buys $10,000 of Treasury bills from a dealer in U.S. government securities.[3] In today's world of computerized financial transactions, the Federal Reserve Bank pays for the securities with an "electronic" check drawn on itself.[4] Via its "Fedwire" transfer network, the Federal Reserve notifies the dealer's designated bank (Bank A) that payment for the securities should be credited to (deposited in) the dealer's account at Bank A. At the same time, Bank A's reserve account at the Federal Reserve is credited for the amount of the securities purchase. The Federal Reserve System has added $10,000 of securities to its assets, which it has paid for, in effect, by *creating* a liability on itself in the form of bank reserve balances. These reserves on Bank A's books are matched by $10,000 of the dealer's deposits that did not exist before. *See illustration 1.*

## How the Multiple Expansion Process Works

If the process ended here, there would be no "multiple" expansion, i.e., deposits and bank reserves would have changed by the same amount. However, banks are required to maintain reserves equal to only a fraction of their deposits. Reserves in excess of this amount may be used to increase earning assets — loans and investments. Unused or excess reserves earn no interest. Under current regulations, the reserve requirement against most transaction accounts is 10 percent.[5] Assuming, for simplicity, a uniform 10 percent reserve requirement against all transaction deposits, and further assuming that all banks attempt to remain fully invested, we can now trace the process of expansion in deposits which can take place on the basis of the *additional* reserves provided by the Federal Reserve System's purchase of U.S. government securities.

The expansion process may or may not begin with Bank A, depending on what the dealer does with the money received from the sale of securities. If the dealer immediately writes checks for $10,000 and all of them are deposited in other banks, Bank A loses both deposits and reserves and shows no net change as a result of the System's open market purchase. However, other banks have received them. Most likely, a part of the initial deposit will remain with Bank A, and a part will be shifted to other banks as the dealer's checks clear.

It does not really matter where this money is at any given time. The important fact is that *these deposits do not disappear.* They are in some deposit accounts at all times. All banks together have $10,000 of deposits and reserves that they did not have before. However, they are not required to keep $10,000 of reserves against the $10,000 of deposits. All they need to retain, under a 10 percent reserve requirement, is $1,000. The remaining $9,000 is "excess reserves." This amount can be loaned or invested. *See illustration 2.*

If business is active, the banks with excess reserves probably will have opportunities to loan the $9,000. Of course, they do not really pay out loans from the money they receive as deposits. If they did this, no additional money would be created. What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts. Loans (assets) and deposits (liabilities) both rise by $9,000. Reserves are unchanged by the loan transactions. But the deposit credits constitute new additions to the total deposits of the banking system. *See illustration 3.*

---

[3] Dollar amounts used in the various illustrations do not necessarily bear any resemblance to actual transactions. For example, open market operations typically are conducted with many dealers and in amounts totaling several billion dollars.

[4] Indeed, many transactions today are accomplished through an electronic transfer of funds between accounts rather than through issuance of a paper check. Apart from the timing of posting, the accounting entries are the same whether a transfer is made with a paper check or electronically. The term "check," therefore, is used for both types of transfers.

[5] For each bank, the reserve requirement is 3 percent on a specified base amount of transaction accounts and 10 percent on the amount above this base. Initially, the Monetary Control Act set this base amount — called the "low reserve tranche" — at $25 million, and provided for it to change annually in line with the growth in transaction deposits nationally. The low reserve tranche was $41.1 million in 1991 and $42.2 million in 1992. The Garn-St Germain Act of 1982 further modified these requirements by exempting the first $2 million of reservable liabilities from reserve requirements. Like the low reserve tranche, the exempt level is adjusted each year to reflect growth in reservable liabilities. The exempt level was $3.4 million in 1991 and $3.6 million in 1992.

## ■ *Deposit Expansion*

---

**1** | When the Federal Reserve Bank purchases government securities, bank reserves increase. This happens because the seller of the securities receives payment through a credit to a designated deposit account at a bank (Bank A) which the Federal Reserve effects by crediting the reserve account of Bank A.

| FEDERAL RESERVE BANK | | BANK A | |
|---|---|---|---|
| **Assets** | **Liabilities** | **Assets** | **Liabilities** |
| U.S. government securities     + 10,000 | Reserve accounts: Bank A     + 10,000 ◄— | Reserves with —► F.R. Banks     + 10,000 | Customer deposit     + 10,000 |

*The customer deposit at Bank A likely will be transferred, in part, to other banks and quickly loses its identity amid the huge interbank flow of deposits.*

---

**2** | As a result, all banks taken together now have "excess" reserves on which deposit expansion can take place.

| | |
|---|---|
| Total reserves gained from new deposits ..................... | 10,000 |
| less: Required against new deposits (at 10 percent) ......................................... | 1,000 |
| equals: Excess reserves .............................................. | 9,000 |

---

### *Expansion—Stage 1*

---

**3** | Expansion takes place only if the banks that hold these excess reserves (Stage 1 banks) increase their loans or investments. Loans are made by crediting the borrower's deposit account, i.e., by creating additional deposit money.

| STAGE 1 BANKS | |
|---|---|
| **Assets** | **Liabilities** |
| Loans     + 9,000 | Borrower deposits     + 9,000 |

---

Complaint for Violation of Civil Rights PAGE 83

1

2

3

4

EXHIBIT  F

5

QUALIFIED WRITTEN REQUEST

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# RESPA QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER, TILA REQUEST

This letter is a "Qualified Written Request" in compliance with and under the Real Estate Settlement Procedures act 12 U.S.C Section 2605(e) and Regulation X at 24 C.F.R. 3500, and the Gramm Leach Bliley Act.

**To:** GMAC Mortgage LLC
3451 Hammond Ave.
Waterloo, Iowa 50704-0780

**On behalf of:** SHELLEY VON BRINCKEN
**Property location:** 14738 Wolf Rd., Grass Valley, Ca 95949
**Account Number:** 0602227759

**To whom it may concern,**

I am writing to you to complain about the accounting and servicing of this mortgage and of my need for understanding and clarification of various sale, transfer, funding source, transactions, legal and beneficial ownership, actions, payments, analyses, debits, credits, reversals, and records related to the servicing of said loan from its inception to the present date.

I am disputing the validity of the current debt you I owe, under the FDCPA. To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of said mortgage loan from its inception until the present date. Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you respond to my "requests."

I hereby demand absolute 1st hand evidence from you of the original uncertified or certified security regarding account number **060227759**. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one. I also hereby demand that a chain of transfer from you to wherever the security is now, be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege the client owes. By debt I am referring to the principal balance you claim said client owes; the calculated monthly payment, calculated escrow payment, and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

I also request that you conduct your own investigation and audit of the account since its inception to "validate" the debt you claim said client owes you, is accurate to the penny. Please do not rely on previous servicers or originators assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally brought forth some or all of the below listed:

**Increased the amounts of monthly payments;**
**Increased the principal balance allegedly owed;**
**Increased escrow payments;**
**Increased the amounts applied and attributed toward interest on this account;**
**Decreased the proper amounts applied and attributed toward principal on this account; and/or**
**Assessed, charged, and/or collected fees, expenses and misc. charges said client is NOT legally obligated**
**to pay under this mortgage, note, and/or Deed of Trust.**

I want to insure that I have not been the victim of such predatory practices. To insure this, said client has authorized a thorough review, examination, accounting and audit of this mortgage by predatory lending experts. This exam and audit will review said mortgage loan file from the date of its initial contact, application and the origination of said loan to the present date written above.

Again this is a "Qualified Written Request" under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605 (e)(1)(B) and reg. X section 3500.21(f)2 of the United States Code. As well as a request under Truth In Lending Act [TILA] 15 U.S.C. section 1601, et seq. RESPA provides substantial penalties and fines for non-compliance or answers to my questions provided in this letter within sixty [60] days of its receipt.

In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information regarding said loan. The documents requested and answers to questions are needed by my counsel and the predatory lending experts' retained to insure that this loan:

- Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection act, HOEPA and other laws;

- That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

- That the claimed holder in due course of the monetary instrument/Deed of Trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of the clients payments;

- That all appropriate, good faith, and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to said client;

- That each servicer and sub-servicer of this mortgage has serviced said mortgage in accordance with the terms of said mortgage, promissory note and/or deed of trust;

- That each servicer and sub-servicer of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

- That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

- That interest and principal have been properly calculated and applied to this loan;

- That the principal balance has been properly calculated, amortized and accounted for;

- That no charges, fees or expenses, not obligated by client in any agreement, have been charged or assessed to or collected on this account;

In order to validate alleged debt and audit this account, I need copies of all pertinent documents to be provided and answers, certified, in writing, to various servicing questions to be sent to:

**Shelley von Brincken**
**14738 Wolf Road**
**Grass Valley, CA. [95949]**
**Phone: (530)-268-8777**

For each record kept on computer or in any other electronic file or format, please provide a paper copy of "all" information in each field or record in each computer system, program or database used by you that contains any information on this account or said client.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please provide me copies of:

1. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to GMAC's CPI system, any system by GMAC or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of this mortgage account from the inception of said loan to the current date.

2. Any and all "Pool Agreement(s)" including this account

3. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review said mortgage account may properly conduct their work.

4. All purchase and sale of mortgage agreements, sale or transfer of servicing rights or other similar agreement related to any assignment, purchase or sale of this mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to this mortgage, promissory note and deed of trust from the inception of said loan to the present date.

5. All prospectus' related to the sale or transfer of this note, deed of trust, mortgage and servicing rights or other similar agreement related to any assignment, purchase or sale of this mortgage loan or servicing rights by you, any broker, affiliate company, parent company, servicers, bank, government sponsored enterprise, sub-servicers, mortgage broker, mortgage banker or any holder of any right related to this mortgage, promissory note and deed of trust from the inception of said loan to the present date.

6. All assignments, transfers, alonges, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, promissory note or other document that secures payment by said client to their obligation in this account from the inception of said loan to the present date.

7. All deeds in lieu, modifications to this mortgage, promissory note or deed of trust from the inception of said loan to the present date.

8. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

9. All escrow analyses conducted on this account from the inception of said loan until up to present date;

10. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on clients disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

11. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by said client or by others on this account.

12. All letters, statements and documents sent to client by your company;

13. All letters, statements and documents sent to client by agents, attorneys or representatives of your company;

14. All letters, statements and documents sent to client by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney or other representative of your company.

15. All letters, statements and documents contained in said loan file or imaged by you, any servicer or sub-servicers of this mortgage from the inception of said loan to present date.

16. All electronic transfers, assignments, sales of this note, mortgage, deed of trust or other security instrument.

17. All copies of property inspection reports, appraisals, BPOs and reports done on said property.

18. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of said loan to the present date.

19. All checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of said loan to the present date.

20. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of said loan to the present date.

21. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of this loan from the inception of said loan until present date?

22. All loan servicing "transaction" records, ledgers, registers and similar items detailing how this loan has been serviced from the from the inception of said loan until present date?

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, we need the following answers to questions concerning the servicing and accounting of this mortgage account from

its inception to the present date.  Accordingly, please provide me, <u>certified,</u> in writing, the answers to the questions listed below.

## LOAN ACCOUNTING & SERVICING SYSTEMS

1) Please identify for me each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of said loan to the present date?

2) For each loan accounting and servicing system identified by you and any sub-servicer or previous servicer from the inception of said loan to the present date, please provide the name and address of the company or party that designed and sold the system?

3) For each loan accounting and servicing system used by you and any sub-servicer or previous servicer from the inception of said loan to the present date, please provide the complete transaction code list for each system.

## DEBITS & CREDITS

1) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to my account as well as the date any credit was received.

2) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date such credit was posted to this account as well as the date any debit was received.

3) For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize?

4) For each transaction code, please provide me with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

1) Has each sale, transfer or assignment of this mortgage or promissory note or any other instrument executed by said client to secure alleged debt been recorded in the county property records in the county and state in which this property is located from the inception of said loan to the present date? Yes or No?

2) If no, why?

3) Have any sales, transfers or assignments of this mortgage or promissory note or any other instrument executed to secure alleged debt been recorded in any electronic fashion such as MERS or other internal or external system from the inception of said loan to the present date? Yes or No?

4) If yes, please detail for us the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed, or security instrument executed securing the obligation on this account that was not recorded in the county records where this property is located.

## ATTORNEY FEES

1) For purposes of the questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" to be one in the same.

2) Have attorney fees ever been assessed to this account from the inception of said loan to the present date?

3) If yes, please detail each separate assessment of attorney fees to this account from the inception of said loan to the present date and the date of such assessment to this account?

4) Have attorney fees ever been charged to this account from the inception of said loan to the present date?

5) If yes, please detail each separate charge of attorney fees to this account from the inception of said loan to the present date and the date of such charge to this account?

6) Have attorney fees ever been collected from this account from the inception of said loan to the present date?

7) If yes, please detail each separate collection of attorney fees from this account from the inception of said loan to the present date and the date of such collection from this account?

8) Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of said loan to the present date?

9) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement the client signed, or authorized the assessment or collection of attorney fees?

10) Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of said loan to present date.

11) Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of said loan to present date.

12) Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

13) Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

14) Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

16) How much in total attorney fees have been assessed to this account from the inception of said loan until present date?  $_____

17) How much in total attorney fees have been collected on this account from the inception of said loan until present date?  $_____

## SUSPENSE/UNAPPLIED ACCOUNTS

1) For purposes of this section, please treat the term "suspense account" and "unapplied account" as one in the same.

2) Has there been any suspense or unapplied account transactions on this account from the inception of said loan until present date?

3) If yes, why? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

4) In a spreadsheet or in letterform in a columnar format, please detail for me each and every transaction, both debits and credits that has occurred on this account from the inception of said loan until present date?

## LATE FEES

1) For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

2) Have you reported the collection of late fees on this account as interest in any statement to client or to the IRS? Yes or No?

3) Has any previous servicer or sub-servicer of this mortgage reported the collection of late fees on this account as interest in any statement to client or to the IRS? Yes or No?

4) Do you consider the payment of late fees as liquidated damages to you for not receiving clients' payment on time? Yes or No?

5) Are late fees considered interest? Yes or No?

6) Please detail for me in writing what expenses and damages you incurred for any payment client may have made that was late.

7) Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

8) If yes, please describe what expenses or charges were charged or assessed to this account?

9) Please describe for me in writing what expenses you or others undertook due to any payment client made which was late?

10) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement client signed or authorized the assessment or collection of late fees?

11) Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of said loan to present date.

12) Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of said loan to present date.

13) Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

14) Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15) Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

16) Have any late charges been assessed to this account?  Yes or No?

17) If yes, how much in total late charges have been assessed to this account from the inception of said loan until present date?  $_____

18) Please provide me with the exact months or payment dates you or other previous servicers of this account claim the client has been late with a payment from the inception of said loan to the present date.

19) Have late charges been collected on this account from the inception of said loan until present date?  Yes or No?

20) If yes, how much in total late charges have been collected on this account from the inception of said loan until present date?  $_____

## PROPERTY INSPECTIONS

1) For purposes of this section "property inspection" and "inspection fee" refer to any inspection of this property by any source and any related fee or expense charged for such inspection.

2) Have any property inspections been conducted on this property from the inception of said loan until the present date?

3) If your answer is no, you can skip the rest of these questions in this section concerning property inspections?

4) If yes, please tell me the date of each property inspection conducted on this property that is the secured interest for this mortgage, deed or note?

5) Please tell me the price charged for each property inspection?

6) Please tell me the date of each property inspection?

7) Please tell me the name and address of each company and person who conducted each property inspection on this property?

8) Please tell me why property inspections were conducted on this property?

9) Please tell me how property inspections are beneficial to the client.

10) Please tell me how property inspections are protective of this property.

11) Please explain to me your policy on property inspections.

12) Do you consider the payment of inspection fees as a cost of collection? Yes or No?

13) If yes, why?

14) Do you use property inspections to collect debts? Yes or No?

15) Have you used any portion of the property inspection process on this property to collect a debt or inform the client of a debt, payment or obligation he/she owes?

16) If yes, please answer when and why?

17) Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement signed or authorized the assessment or collection of property inspection fees?

18) Have you labeled in any record or document sent to client a property inspection as a misc. advance? Yes or No?

19) If yes, why?

20) Have you labeled in any record or document sent to client a property inspection as a legal fee or attorney fee? Yes or No?

21) If yes, why?

22) Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of said loan to present date.

23) Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of said loan to present date.

24) Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

25) Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

26) Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

27) If yes, when and how much was charged?

28) Is interest allowed to be assessed or charged on inspection fees charged or assessed to this account? Yes or No?

29) How much in total inspection fees have been assessed to this account from the inception of said loan until present date?  $_____

30) How much in total inspection fees have been collected on this account from the inception of said loan until present date?  $_____

## BPO FEES

1) Have any BPOs [Broker's Price Opinions] been conducted on this property?

2) If yes, please tell me the date of each BPO conducted on this property that is the secured interest for the clients mortgage, deed or note?

3) Please tell me the price of each BPO?

4) Please tell me who conducted each BPO?

5) Please tell me why BPOs were conducted on this property

6) Please tell me how BPOs are beneficial to the client.

7) Please tell me how BPOs are protective of this property.

8) Please explain to me your policy on BPOs.

9) Have any BPO fees been assessed to this account?  Yes or No?

10) If yes, how much in total BPO fees have been assessed to this account?  $_____

11) Have any BPO fees been charged to this account?  Yes or No?

12) If yes, how much in total BPO fees have been charged to this account?  $_____

13) Please tell me specifically what clause, paragraph and sentence in said note, mortgage or deed of trust or any agreement client has executed allows you to assess, charge or collect a BPO fee from client.

## SERVICING RELATED QUESTIONS

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question:

In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date.  Accordingly, can you please provide me, certified, in writing, the answers to the questions listed below:

1) Did the originator of this loan have any financing agreements or contracts with your company?

2) Did the originator of this loan have a warehouse loan agreement or contract with your company?

3) Did the originator of this loan receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this loan by your company or any affiliate.

4) Please identify for me where the originals of the entire loan file are currently located and how they are being stored, kept and protected?

5) Where is the "original" promissory note, or mortgage signed by the client located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6) Where is the "original" deed of trust signed by the client located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7) Since the inception of this loan, has there been any assignment of client's promissory note or mortgage to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?

8) Since the inception of this loan, has there been any assignment of this deed of trust to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment?

9) Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage loan to any other party? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale?

10) Since the inception of this loan, has any sub-servicer serviced any portion of this mortgage loan? If the answer is yes, would you kindly identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage loan.

11) Has this mortgage loan been made a part of any mortgage pool since the inception of said loan? If yes, please identify for us each and every loan mortgage pool that this mortgage has been a part of from the inception of said loan to the present date.

12) Has each and every assignment of this mortgage or promissory note been recorded in the county land records where the property associated with this mortgage loan is located?

13) Has there been any "electronic" assignment of this mortgage with MERS or any other computer mortgage registry service or computer program? If yes, please identify the name and address of each and every individual.

14) Have there been any "investors" who have participated in any mortgage backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage loan has ever been a part of from the inception of this mortgage to the present date? If yes, please identify the name and address of each and every individual, entity, organization or

15) Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to said loan from its inception to the current date written above.

16) Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this loan from its inception to the current date written above.

Documents:

1. Provide validity and proof of debt and the name of the original creditor.
2. Provide the loan sale and/or Servicing Agreement for this transaction.
3. Provide the underwriting guidelines used to determine loan program affordability.
4. Provide all signed closing and disclosure documents in your possession including the residential loan applications signed by the borrower(s) for this transaction.
5. Provide the final HUD-1 Settlement Statement.
6. Provide a signed and executes copy of the mortgage and note.
7. Provide the completed appraisal used for this transaction.
8. Provide a copy of Borrowers' credit report or certification of credit report date.
9. Provide proof of mailing for all disclosures on this transaction.
10. Provide the Lender closing instructions to the settlement agent.
11. Provide the income documentation used for this transaction.
12. Provide a breakdown of all payments received to date from lender since the inception of this mortgage loan, detaining amounts applied to principal and/or interest.
13. Provide an accounting detailing all late fees. Negative amortization and any/all costs associated with this transaction.
14. Provide a copy of the Broker/Lender Agreement for this transaction.
15. Provide a complete detailed breakdown regarding escrows.
16. Provide a copy of all disbursements (to include all 3rd party invoices) at settlement.
17. Provide a copy of Lenders Private Mortgage Insurance policy, if used for this transaction.

DECEPTIVE LENDING PRACTICES STATED HEREIN- violations of the TRUTH IN LENDING ACT-
THE REAL ESTATE SETTLEMENT PROCEDURES ACT- FDIC- UNFAIR or DECEPTIVE TRADE
PRACTICES FDIC 15 U.S.C. 45(A) (FTC Act Section 5)

Complainant SHELLEY VON BRINCKEN entered into a mortgage transaction with GMAC MORTGAGE
LLC. on or about January 14, 2009 and said client's current mortgagee is GMAC MORTGAGE LLC.

The borrower has authorized our group to file complaints with the appropriate regulatory groups including, but
not limited to, the office of Thrift Supervision, Federal Trade Commission (FTC), Federal Reserve Board,
Office of Consumer and Regulatory Affairs, Office of the Comptroller of the Currency. Office of Thrift
Supervision and State Banking Department(s). (CA) California Department of Financial Institutions, California
Dept. Of Justice-Office of the Attorney General and California Office of Administrative law. Dept. of Financial
Institutions. The borrowers were advised to allow the lenders the established time by RESPA to review and
investigate the facts contained herein and any reasonable time (requested) as necessary prior to filing
complaints regarding the Deceptive Lending Practices. Predatory Loan Practices stated herein to the regulatory
agencies listed within this Qualified Written Request. The borrowers were also advised to continue making
monthly loan payments during this process.

Please provide us with the documents we have requested and a detailed answer to each of our questions within
the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be
conducted that may lead to a further document request and answers to questions under an additional QWR
letter.

Copies of this Qualified Written Request, Validation of Debt, request for accounting and legal records, Dispute
of Debt letter is being sent to HUD, all relevant state and federal regulators; local predatory lending task forces;
other consumer advocates; my congressman and various class action law firms and lawyers referred to us.

**Please note we are well aware of the laws and of our rights under them.**

3-17-10

Shelley von Brincken

cc; Office of Thrift Supervision
    1700 "G" Street
    Washington D.C. 20552

cc; California Dept. of Financial Institutions
    45 Fremont Street Suite#1700
    San Francisco, Ca. 94105-2219

cc; Federal Trade Commission
    Consumer Response Center
    600 Pennsylvania Ave. NW
    Washington, D.C. 20580

cc; California Attorney General
    Attn: Edmund G. Brown Jr.
    P. O. Box 944255
    Sacramento, Ca 94244-2550.

cc; Dept. of Consumer & Regulatory Affairs
    941 North Capitol Street NE
    Washington, D.C. 20002

cc; Office of the Comptroller of the Currency
    1301 McKinney Street Suite#3450
    Houston, TX. 77010-9050

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _NEVADA_ }

On _MARCH 17, 20_ before me, _R. HILL, NOTARY PUBLIC_
　　　Date　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _SHELLEY VONBRINCKEN_
　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _R. Hill_
　　　　　　　Signature of Notary Public

**R. HILL**
**Commission # 1847753**
**Notary Public - California**
**Nevada County**
**My Comm. Expires Jun 3, 2013**

Place Notary Seal Above

—————— OPTIONAL ——————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _RESPA REQUEST_

Document Date: _MARCH 17, 2010_　　　　　　　Number of Pages: _13_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
- ☒ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
- ☐ Individual
- ☐ Corporate Officer — Title(s): _____
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney in Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

Complaint for Violation of Civil Rights PAGE 98

# COPY CERTIFICATION BY DOCUMENT CUSTODIAN

I, _Shelley von Brincken_, of legal age, being first duly sworn, hereby
<span style="font-size:small">Name of document custodian</span>

Swear (or affirm) that the attached reproduction of

_RESPA   Q   W   R_
<span style="font-size:small">Description of documents</span>

Is a true and exact copy of the correct and complete original document.

<span style="font-size:small">Signature of document custodian (affiant)</span>

State of California

County of _NEVADA_

Subscribed and sworn to (or affirmed) before me on this _17_ day of _MARCH_,

20 _10_ by _ROXANA HILL, NOTARY PUBLIC_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public Signature



R. HILL
Commission # 1847753
Notary Public - California
Nevada County
My Comm. Expires Jun 3, 2013

(Notary Seal)

CC v12_10_05  www.notaryclasses.com 800-873-9865

# COPY CERTIFICATION BY DOCUMENT CUSTODIAN

I, _Shelley von Brincken_, of legal age, being first duly sworn, hereby
<sub>Name of document custodian</sub>

Swear (or affirm) that the attached reproduction of

_RESPA  Q  W  R_
<sub>Description of documents</sub>

Is a true and exact copy of the correct and complete original document.

_(signature)_
<sub>Signature of document custodian (affiant)</sub>

State of California

County of _NEVADA_

Subscribed and sworn to (or affirmed) before me on this _17_ day of _MARCH_ ,

20 _10_ by _ROXANA HILL, NOTARY PUBLIC_

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_(signature)_

Notary Public Signature

**R. HILL
Commission # 1847753
Notary Public - California
Nevada County
My Comm. Expires Jun 3, 2013**

(Notary Seal)

CC v12_10_05  www.notaryclasses.com 800-873-9865

# GMAC Mortgage

March 30, 2010

Shelley Von Brincken
14738 Wolf Road
Grass Valley CA  95949

RE:      Account Number         0602227759
         Property Address       14738 Wolf Road
                                Grass Valley CA  95949

Dear Shelley Von Brincken:

Please be advised that this letter serves as our response to your Qualified Written Request ("QWR") for information regarding the above-referenced GMAC Mortgage account dated March 17, 2010 and received in our office on March 22, 2010.  In your correspondence, you request detailed information and documentation regarding nearly every aspect of the mortgage loan transaction, beginning with its origination.

In response to your inquiry, GMAC Mortgage has enclosed a copy of the account's payment history as required by the Real Estate Settlement Procedures Act ("RESPA").

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage to identify any specific concern(s) you have regarding the servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage has in its records are enclosed.

- Note
- Deed of Trust/Mortgage
- HUD-I Settlement Statement

The current Master Servicer is:  Fannie Mae.  The Loan is currently owned by: Fannie Mae, 3900 Wisconsin Avenue NW, Washington, DC 20016-2892, phone number 1-800-732-6643.  However, the Loan is currently being subserviced by GMAC Mortgage, LLC and all legal inquiries should be directed to the subservicer.

# GMAC Mortgage

March 30, 2010
Account Number 0602227759
Page 2

If after reviewing this information, you have any specific questions or concerns regarding the mortgage loan servicing of this account, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

If you have any other questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

DV

GMAC Mortgage, LLC
PO Box 780

PAGE      1
DATE 03/30/10

Waterloo          IA 50704-0780

HISTORY FOR ACCOUNT  602227759

-------- MAIL -------------------- -------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                    14738 WOLF ROAD

GRASS VALLEY          CA 95949     GRASS VALLEY          CA 95949

```
------ DATES ------   ---- CURRENT BALANCES -----   ------- UNCOLLECTED -------
PAID TO   12/01/09  PRINCIPAL      217597.87  LATE CHARGES      -126.73
NEXT DUE  01/01/10  ESCROW              0.00  OPTIONAL INS          0.00
LAST PMT  01/29/10  UNAPPLIED FUND      67.00  INTEREST              0.00
AUDIT DT  01/29/09  UNAPPLIED CODES    U        FEES               -74.50
                    BUYDOWN  FUND       0.00  ------ YEAR TO DATE -------
  LAST ACTIVITY     BUYDOWN  CODE          .   INTEREST           1021.14
     03/29/10                                TAXES                 0.00
```

```
POST   TRN  DUE    TRANSACTION      PRINCIPAL       INTEREST        ESCROW
DATE   CDE  DATE     AMOUNT          PAID            PAID            PAID
-----  ---  -----  ------------   -----------    ------------    -----------
012909 SR  020109      412.50 CLOSING INTEREST
             BAL AFTER     220000.00                             00.00
T:09990     U/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL  -126.73
021209 ITR 020109  OLD INV 50210 10003 P-BAL  220000.00 INT        .00
             NEW INV 10128  1771  PERCENT OWNED    .0000  ACTION CD 000
             BAL AFTER     220000.00                             00.00
                 OPTIONAL INS BAL      00.00  LATE CHARGE BAL  -126.73


030209 GRU 000000 000000 GRACE UNAP AMT:       .00
  REF NUMBER     SG0QBM94SHF8 DESC
030209 AP  030109     1266.44     235.19      1031.25            .00
  LC DATE   022809  BAL AFTER     219764.81                    00.00
T:00602     E/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   00.00
040409 GRU 000000 000000 GRACE UNAP AMT:      .00
             SG0QJVQ7VAPR
040409 AP  040109     1266.44     236.29      1030.15            .00
  LC DATE   040309  BAL AFTER     219528.52                    00.00
T:00602     E/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   00.00
042409 GRU 000000 000000 GRACE UNAP AMT:      .00
  REF NUMBER     SG0QP5PCJB27 DESC
042409 AP  050109     1266.44     237.40      1029.04            .00
             BAL AFTER     219291.12                    00.00
T:00602     E/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   00.00
061509 GRU 000000 000000 GRACE UNAP AMT:      .00
             SG0R686I1PCD
061509 AP  060109     1266.44     238.51      1027.93            .00
             BAL AFTER     219052.61                    00.00
T:00602     E/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL   00.00
```

INQ23694

Complaint for Violation of Civil Rights PAGE 103

HISTORY FOR ACCOUNT   602227759

PAGE     2
DATE 03/30/10

-------- MAIL -------------------- --------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                    14738 WOLF ROAD

GRASS VALLEY        CA 95949    GRASS VALLEY        CA 95949

------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|------|------|------|------|------|------|------|
| 071009 | GRU | 000000 000000 | GRACE UNAP AMT: | .00 | | |
| | | REF NUMBER | SG0RCG0TD8QJ DESC | | | |
| 071009 | AP | 070109 | 1266.44 | 239.63 | 1026.81 | .00 |
| | | | BAL AFTER | 218812.98 | | 00.00 |
| T:00602 | | E/B:001 | OPTIONAL INS BAL | 00.00 | LATE CHARGE BAL | 00.00 |
| 080509 | GRU | 000000 000000 | GRACE UNAP AMT: | .00 | | |
| | | | SG0RJ17OIC6F | | | |
| 080509 | AP | 080109 | 1266.44 | 240.75 | 1025.69 | .00 |
| | | | BAL AFTER | 218572.23 | | 00.00 |
| T:00602 | | E/B:001 | OPTIONAL INS BAL | 00.00 | LATE CHARGE BAL | 00.00 |
| 080609 | FB | 080109 | 1123.00 163 CORP ADV 2 ESCROW | | | |
| | | REF NUMBER | SG0RJ5JAA27G DESC | | | |
| T:05006 | | /B:000 | | | | |
| 080709 | SR0 | 080109 | -1123.00 | .00 | .00 | -1123.00 |
| | | | 163 CLEANUP | | | |
| | | | BAL AFTER | 218572.23 | | -1123.00 |
| T:02180 | | I/B:003 | | 00.00 | | 00.00 |

| | | | | | | |
|------|------|------|------|------|------|------|
| 080709 | FE | 080109 | 1123.00 163 CORP ADV 2 ESCROW | | | |
| | | REF NUMBER | 163 CLEANUP  DESC | | | |
| T:02180 | | /B:003 | | | | |
| 092809 | UI | 090109 | .00 | .00 | .00 | .00 |
| | | REF NUMBER | SG0S0L3916E1 DESC | | | |
| | | | BAL AFTER | 218572.23 | | -1123.00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | -63.32* |
| T:00602 | | E/B:001 | OPTIONAL INS BAL | 00.00 | LATE CHARGE BAL | -63.32 |
| 092809 | GRU | 000000 000000 | GRACE UNAP AMT: | .00 | | |
| 092809 | AP | 090109 | 1266.44 | 241.88 | 1024.56 | .00 |
| | | | BAL AFTER | 218330.35 | | -1123.00 |
| T:00602 | | E/B:001 | OPTIONAL INS BAL | 00.00 | LATE CHARGE BAL | -63.32 |
| 092809 | UI | 090109 | .00 | .00 | .00 | .00 |
| | | REF NUMBER | SG0S0L3916E1 DESC | | | |
| | | | BAL AFTER | 218330.35 | | -1123.00 |
| | | | OPT PREMIUMS | .00 | LATE CHARGE PYMT | 63.32* |
| T:00602 | | E/B:001 | OPTIONAL INS BAL | 00.00 | LATE CHARGE BAL | 00.00 |

INQ23694

Complaint for Violation of Civil Rights PAGE 104

HISTORY FOR ACCOUNT   602227759

PAGE   3
DATE 03/30/10

--------- MAIL -------------------- --------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                    14738 WOLF ROAD

GRASS VALLEY        CA 95949     GRASS VALLEY        CA 95949

----------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|-----------|---------|----------|--------------------|----------------|---------------|-------------|
| 092809 | SRA | 090109 | 63.32 | .00 | .00 | .00 |

BAL AFTER        218330.35                          -1123.00
OPT PREMIUMS            .00         LATE CHARGE PYMT    63.32
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    00.00
102209 R20 090109     1123.00             .00             .00       1123.00
  REF NUMBER     SG0S6JHMGGMG DESC
              BAL AFTER        218330.35                         00.00
T:28725     I/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL    00.00

102609 UI  100109       .00             .00             .00          .00
  REF NUMBER     SG0S7MD8BGUP DESC
              BAL AFTER        218330.35                         00.00
OPT PREMIUMS            .00  LATE CHARGE PYMT   -63.32*
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -63.32
102609 GRU 000000 000000 GRACE UNAP AMT:    .00
102609 AP  100109     1266.44      243.02      1023.42          .00
              BAL AFTER        218087.33                         00.00
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -63.32
102609 UI  100109       .00             .00             .00          .00
  REF NUMBER     SG0S7MD8BGUP DESC
              BAL AFTER        218087.33                         00.00
OPT PREMIUMS            .00  LATE CHARGE PYMT    63.23*
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -00.09
102609 SRA 100109      63.23             .00             .00          .00
              BAL AFTER        218087.33                         00.00
OPT PREMIUMS            .00  LATE CHARGE PYMT    63.23
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -00.09
113009 UI  110109       .00             .00             .00          .00
  REF NUMBER     SG0SGG1K3L8V DESC
              BAL AFTER        218087.33                         00.00
OPT PREMIUMS            .00  LATE CHARGE PYMT   -63.32*
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -63.41
113009 GRU 000000 000000 GRACE UNAP AMT:    .00
113009 AP  110109     1266.44      244.16      1022.28          .00
              BAL AFTER        217843.17                         00.00
T:00602     E/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL   -63.41

  INQ23694

HISTORY FOR ACCOUNT    602227759

PAGE        4
DATE 03/30/10

--------- MAIL --------------------- -------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                        14738 WOLF ROAD

GRASS VALLEY        CA 95949        GRASS VALLEY        CA 95949

--------------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|-----------|---------|----------|--------------------|----------------|---------------|-------------|

113009 UFU 110109    UNAPPLIED FUNDS (1)                        67.00  BALANCE        67.00
   REF NUMBER    SG0SGG1K3L8V DESC
                       BAL AFTER        217843.17                        00.00
T:00602    /B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -63.41
113009 SRA 110109        67.00        .00            .00            .00
                       BAL AFTER        217843.17                        00.00
T:00602    E/B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -63.41


011810 UI  120109        .00            .00            .00            .00
   REF NUMBER    SG0SSGU9E54S DESC
                       BAL AFTER        217843.17                        00.00
                       OPT PREMIUMS            .00  LATE CHARGE PYMT        -63.32*
T:00602    E/B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -126.73
011810 GRU 000000 000000 GRACE UNAP AMT:        .00
011810 UFU 120109    UNAPPLIED FUNDS (1)                        -67.00  BALANCE        0.00
                       BAL AFTER        217843.17                        00.00
T:00602    /B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -126.73
011810 AP  120109        1199.44        245.30        1021.14        .00
   LC DATE  011610  BAL AFTER        217597.87                        00.00
T:00602    E/B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -126.73
011810 GRU 000000 000000 GRACE UNAP AMT:        .00
   REF NUMBER    SG0SSGU9E54S DESC
011810 UFU 120109    UNAPPLIED FUNDS (1)                        67.00  BALANCE        67.00
                       BAL AFTER        217597.87                        00.00
T:00602    /B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -126.73

011810 SWA 120109        67.00        .00            .00            .00
   LC DATE  011610  BAL AFTER        217597.87                        00.00
T:00602    E/B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -126.73
011810 UI  120109        .00            .00            .00            .00
   REF NUMBER    SG0SSGU9E54S DESC
                       BAL AFTER        217597.87                        00.00
                       OPT PREMIUMS            .00  LATE CHARGE PYMT        63.41*
T:00602    E/B:001  OPTIONAL INS BAL        00.00  LATE CHARGE BAL        -63.32


   INQ23694

Complaint for Violation of Civil Rights PAGE 106

HISTORY FOR ACCOUNT    602227759

PAGE    5
DATE 03/30/10

--------- MAIL -------------------- --------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                    14738 WOLF ROAD

GRASS VALLEY        CA 95949        GRASS VALLEY        CA 95949

```
POST   TRN  DUE      TRANSACTION       PRINCIPAL        INTEREST         ESCROW
DATE   CDE  DATE      AMOUNT            PAID             PAID             PAID
------ ---  -----  ---------------  --------------  --------------  --------------
011810 SRA 120109           63.41           .00            .00             .00
   LC DATE  011610  BAL AFTER        217597.87                          00.00
                    OPT PREMIUMS                .00  LATE CHARGE PYMT     63.41
T:00602      E/B:001  OPTIONAL INS BAL      00.00  LATE CHARGE BAL     -63.32
012610 FB  120109          18.25  11 PROP INSPECTION FEE
T:32506      /B:001
012910 UI  120109            .00           .00            .00             .00
   REF NUMBER     EBPP1 01-28  DESC
                    BAL AFTER        217597.87                          00.00
                    OPT PREMIUMS                .00  LATE CHARGE PYMT    -63.41*
T:19342      Y/B:005                       00.00                       -126.73
012910 SR0 120109          -63.41           .00            .00             .00
                    BAL AFTER        217597.87                          00.00
                    OPT PREMIUMS                .00  LATE CHARGE PYMT    -63.41
T:19342      Y/B:005                       00.00                       -126.73
012910 UFU 120109   UNAPPLIED FUNDS (1)            -67.00  BALANCE        0.00
   REF NUMBER     SG0SSGU9E54S DESC
                    BAL AFTER        217597.87                          00.00
T:19342      /B:005                        00.00                       -126.73

012910 SR1 120109          -67.00           .00            .00             .00
   LC DATE  011610  BAL AFTER        217597.87                          00.00
T:19342      Y/B:005                       00.00                       -126.73
012910 UI  110109            .00           .00            .00             .00
   REF NUMBER     SG0SSGU9E54S DESC
                    BAL AFTER        217597.87                          00.00
                    OPT PREMIUMS                .00  LATE CHARGE PYMT     63.32*
T:19342      Y/B:005                       00.00                        -63.41

012910 UFU 110109   UNAPPLIED FUNDS (1)             67.00  BALANCE       67.00
                    BAL AFTER        217597.87                          00.00
T:19342      /B:005                        00.00                        -63.41
012910 PR1 110109        -1199.44        -245.30      -1021.14            .00
REV EFF DT 011610  BAL AFTER        217843.17                          00.00
T:19342      Y/B:005                       00.00                        -63.41
012910 FB  110109          25.00   3 NSF FEE
   REF NUMBER     SG0SVOSN2CSO DESC
T:19342      /B:000
```

INQ23694

Complaint for Violation of Civil Rights PAGE 107

HISTORY FOR ACCOUNT    602227759

PAGE    6
DATE 03/30/10

```
--------- MAIL -------------------- --------- PROPERTY ----------------
```

SHELLEY VON BRINCKEN

14738 WOLF ROAD                         14738 WOLF ROAD

GRASS VALLEY          CA 95949      GRASS VALLEY          CA 95949

```
--------------------------------------------------------------------
```

| POST<br>DATE | TRN<br>CDE | DUE<br>DATE | TRANSACTION<br>AMOUNT | PRINCIPAL<br>PAID | INTEREST<br>PAID | ESCROW<br>PAID |
|---|---|---|---|---|---|---|

```
012910 UI  120109          .00           .00          .00          .00
   REF NUMBER    SG0SVQSUECEF DESC
                   BAL AFTER      217843.17                      00.00
                   OPT PREMIUMS      .00  LATE CHARGE PYMT      -126.64*
T:00602    E/B:001              00.00                            -190.05
012910 GRU 000000 000000 GRACE UNAP AMT:      .00
012910 UFU 120109    UNAPPLIED FUNDS (1)      -67.00  BALANCE      0.00
                   BAL AFTER      217843.17                      00.00
T:00602    /B:001              00.00                            -190.05
012910 AP  120109        1199.44        245.30      1021.14        .00
                   BAL AFTER      217597.87                      00.00
T:00602    E/B:001              00.00                            -190.05
012910 GRU 000000 000000 GRACE UNAP AMT:      .00
   REF NUMBER    SG0SVQSUECEF DESC
012910 UFU 120109    UNAPPLIED FUNDS (1)       67.00  BALANCE     67.00
                   BAL AFTER      217597.87                      00.00
T:00602    /B:001              00.00                            -190.05

012910 SWA 120109          67.00         .00          .00          .00
                   BAL AFTER      217597.87                      00.00
T:00602    E/B:001              00.00                            -190.05
012910 UI  120109          .00           .00          .00          .00
   REF NUMBER    SG0SVQSUECEF DESC
                   BAL AFTER      217597.87                      00.00
                   OPT PREMIUMS      .00  LATE CHARGE PYMT       63.32*
T:00602    E/B:001              00.00                            -126.73

012910 SRA 120109          63.32         .00          .00          .00
                   BAL AFTER      217597.87                      00.00
                   OPT PREMIUMS      .00  LATE CHARGE PYMT       63.32
T:00602    E/B:001              00.00                            -126.73
022310 FB  120109          16.50  11 PROP INSPECTION FEE
T:32506    /B:001
032910 FB  120109          14.75  11 PROP INSPECTION FEE
T:32506    /B:001
```

   INQ23694

HISTORY FOR ACCOUNT    602227759

PAGE    7
DATE 03/30/10

--------- MAIL -------------------- --------- PROPERTY ----------------

SHELLEY VON BRINCKEN

14738 WOLF ROAD                      14738 WOLF ROAD

GRASS VALLEY          CA 95949       GRASS VALLEY        CA 95949

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|---|---|---|---|---|---|---|

END OF HISTORY

INQ23694

## Payment History Code Key

| Payment Codes | Payment TRN Description |
|---|---|
| AA | Administrative Adjustment (late charge waiver· fee adjustments etc) |
| AP | Payment Application |
| ADR | Advance Reversal |
| ADV | For Home Equity Line of Credit loans, this transaction type represents the reversal of an advance on the line |
| ADV | Advance. For Home Equity Line of Credit loans, this transaction type represents an advance that the borrower takes on the line |
| ASP | Autopost Short Payment |
| ATP | Autopost Total Payment |
| APP | Acceptable Partial Payment |
| AND | Funding Advance on Home Equity Line of Credit |
| AAP | Automated Acceptable Payment |
| AMC | Adjustable Rate, P & I Subsidy, Term Changes |
| CT | Curtailment/ Additional Principal |
| CTA | Curtailment/Additional Principal Reversal |
| FB | Fee Billed |
| FE, FEA OR FWA | Fee Paid |
| GP | Government Payment |
| PA | Payment posted manually |
| POST | Post petition payment |
| PP | Partial Payment |
| PRE | Petition payment |
| PRN | Payment reversal ("N" = reason code) |
| PT | Reapplication of payment due to an investor transfer |
| RP | Regular payment |
| RT | Payment reversal due to an investor transfer |
| SHP | Short Payment |
| SR | Single item receipt commonly applied to escrow, uncollected late charges, closing interest, buydown funds, uncollected credit insurance, or unapplied funds |
| SRA | Single receipt posted |
| SRN | Reversal |
| UFN | Unapplied funds transaction ("N" = unapplied funds code after the transaction) |
| UI | Uncollected items including interest, credit insurance, and late charges |
| UIE | Uncollected late charges collected from the escrow overage during analysis |

| Subject Type | Explanation |
|---|---|
| Column Headings | Reading from left to right:<br>• Post Date = the date the transaction was completed.<br>• TRN Code= transaction codes (see table)<br>• Due Date= the date interest is due from as of that posting<br>• Transaction Amount = the dollar amount for that particular posting<br>• Principal Paid= the amount of funds affecting the principal balance.<br>• Interest Paid= the amount of funds affecting the interest payment<br>• Escrow Paid= the amount of funds affecting the escrow balance |
| Escrow Codes | • M90 or E90= county tax payment<br>• M91 or E91= City tax payment<br>Note: any escrow transaction starting with a 9 is a tax related disbursement.<br>• EI= interest on escrow<br>• M20 or E20= hazard insurance payment<br>• M21 or E21= flood insurance payment<br>Note: any escrow transaction starting with a 2 is an insurance related disbursement.<br>• R20= Insurance Refund<br>• R90/R91= Tax Refund<br>• E01/ M01 or M60/E00= escrow refund to customer<br>Note: any transaction starting with a 4 is for Private Mortgage Insurance |

060222 7759

MIN: 1002310-0000810219-5

# NOTE

Loan Number: 0810219

JANUARY 14, 2009
[Date]

ORANGE
[City]

CALIFORNIA
[State]

14738 WOLF ROAD, GRASS VALLEY, CALIFORNIA 95949
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received. I promise to pay U.S. $ 220,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on MARCH 1 2009   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2039   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1855 WEST KATELLA AVENUE, SUITE 200, ORANGE, CALIFORNIA 92867   or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,266.44

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01

Page 1 of 3

DocMagic 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 111

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Complaint for Violation of Civil Rights PAGE 112

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
SHELLEY VON BRINCKEN      -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                         -Borrower                                                      -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                          Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 113

# Allonge to Note

Loan Number:          0810219

Note Date:            January 14, 2009

In Favor of:

**MORTGAGECLOSE.COM, INC.**

And Executed by

| | |
|---|---|
| Borrower: | SHELLEY VON BRINCKEN |
| Property: | 14738 WOLF RD |
| | GRASS VALLEY, CA 95949 |
| Loan Amount: | $220,000.00 |

Pay to the Order of

**GMAC Bank**

Without Recourse

MORTGAGECLOSE.COM, INC.

Authorized Signature:

Chau Lam - President of MortgageClose.com, Inc.

Complaint for Violation of Civil Rights PAGE 114

A. Settlement Statement

U.S. Department of Housing and Urban Development
OMB No. 2502-0265



# OLD REPUBLIC TITLE COMPANY

**B. TYPE OF LOAN**

| | | |
|---|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☒ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins. | 6. File Number 2123006694-SE | 7. Loan Number 0810219  8. Mortgage Insurance Case Number |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Shelley von Brincken 14738 Wolf Road Grass Valley, CA 95945 | Wolf Creek Associates, LLC P o Box 2120 Loomis, CA 95965 | Mortgageaclose.com, Inc. 1855 West Katella Avenue Suite 200 Orange, CA 92867 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 14738 Wolf Road Grass Valley, CA 95945 | Old Republic Title Company | |
| **FINAL** | Place of Settlement 11865 Edgewood Road Auburn, CA 95603 | I. Settlement Date 1/23/2009 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 275,000.00 | 401. Contract sales price | 275,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 8,304.25 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes      to | | 406. City/town taxes      to | |
| 107. County taxes         to | | 407. County taxes         to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 283,304.25 | **420. GROSS AMOUNT DUE TO SELLER** | 275,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money (see attached) | 45,600.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan 1st | 220,000.00 | 502. Settlement charges to seller (line 1400) | 949.00 |
| | | 503. Existing loan(s) taken subject to | |
| | | 504. Payoff 1st Community 1st Bank | 255,947.82 |
| | | 505. | |
| | | 506. UNSECURED LIEN | 0.00 |
| | | 507. R.E. Tax Payment (55-060-68) (POC) | |
| | | 508. | |
| | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes      to | | 510. City/town taxes      to | |
| 211. County taxes         to | | 511. County taxes         to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. Seller Credit to Buyer for 1/2 Title/Escrow Fees | 1,195.00 | 513. Seller Credit to Buyer for 1/2 Title/Escrow Fees | 1,195.00 |
| 214. Deposit/Down Paid Outside of Escrow per lease | 15,908.18 | 514. Deposit/Down Paid Outside of Escrow per lease | 16,908.18 |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 283,703.18 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 275,000.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 283,304.25 | 601. Gross amount due to seller (line 420) | 275,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | (283,703.18) | 602. Less reductions in amount due seller (line 520) | (275,000.00) |
| **303. CASH ☐ FROM ☒ TO BORROWER** | 398.93 | **603. CASH ☐ TO ☒ FROM SELLER** | 0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: ● HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; ● Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; ● Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality

HUD-1 (3-86)
RESPA, HB 4305.2

SE/se

Complaint for Violation of Civil Rights PAGE 115

Escrow No.: 2123006684-SE

| L. SETTLEMENT CHARGES | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total sales/broker's commission based on price $275,000.00 @0.00%=0.00 | | |
| Division of commission (line 700) as follows: | | |
| 701. | | |
| 702. | | |
| 703. Commission disbursed at settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount  to Mortgageclose.com, Inc. | 3,850.00 | |
| 803. Appraisal Fee  Patrick Simpson & Assoc. $150.00 (poc) | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808.  Underwriting Fee to Mortgageclose.com, Inc. | 1,095.00 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest, 01/22/09 to 02/01/09, 10 days @ $34.38 | 343.75 | |
| 903. Hazard Insurance premium for 12 mos. to Van Doren-Hamlow Insurance | 838.00 | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee to Old Republic Title Company | 705.00 | |
| 1106. Notary Fees to Kim Dean, Kim Dean | 100.00 | 40.00 |
| | | |
| | | |
| 1108. Title Insurance to   California Land Title Company of Nevada County | 951.50 | 572.50 |
| (Includes above items numbers)  1102, 1103, 1108, Endorsements and Additional Title Fees, if any | | |
| 1109. Lender's Coverage Liability Amount $220,000.00  Premium $929.00 | | |
| 1110. Owner's Coverage Liability Amount $275,000.00  Premium $1,045.00 | | |
| 1111. Environmental Protection Lien | 25.00 | |
| 1112. Upkeep assessment subordinate | 25.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording fees: Deed $  22.00          Mortgage $ 59.00          Releases $ | 81.00 | |
| 1202. City/county tax/stamps:     Deed $  302.50          Mortgage $ | | 302.50 |
| 1203. State tax/stamps:          Deed $          Mortgage $ | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. | | |
| 1302. | | |
| 1303. LLC-1 | | 14.00 |
| 1304. Overnight Service Fee to Old Republic Title Company | 40.00 | |
| 1305. Additional Processing Fee - Loan Tie In Fee to Old Republic Title Company | 250.00 | |
| 1306. Overnight Service Fee to Old Republic Title Company | | 20.00 |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | 8,304.25 | 949.00 |

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of the transaction.

_____          _____
Escrow Officer                              Date

**Complaint for Violation of Civil Rights PAGE 116**

SE/se

Escrow No.:  2123006684-SE
Loan No.:  0810219

Attachment to HUD Statement

===== Continuation from Page1 =====

BUYER ADJUSTMENTS                              SELLER ADJUSTMENTS

AMOUNTS PAID BY/IN BEHALF OF BORROWER

DEPOSIT OR EARNEST MONEY -- LINE 201
Shelley von Brincken                      45,600.00

PRINCIPAL AMOUNT OF NEW LOAN(S) -- LINE 202

Mortgageclose.com, Inc.
1855 West Katella Avenue Suite 200
Orange, CA 92867
Loan No.: 0810219
Position: 1
Principal amount                         220,000.00



Complaint for Violation of Civil Rights PAGE 117



## OLD REPUBLIC TITLE COMPANY
11885 Edgewood Road • Auburn CA • 95603 • (530) 885-7770 • FAX (530) 302-9012

|  |  |
|---|---|
| Date: | January 26, 2009 |
| Escrow No.: | 2123006684-SE |
| Escrow Officer: | Shawna Edgell |
| Closing Date: | 1/23/2009 |

Property:    14738 Wolf Road
Grass Valley, CA 95945

### Additional Charges Attachment

| Item | Amount |
|---|---|
| SELLER | |
| Other Title Fees | |
| Inspection Fees | 50.00 |
| Other Title Fees Total | 50.00 |

FINAL

SE/se

Complaint for Violation of Civil Rights PAGE 118

Von Brincken #0810218   gmac # 02227759

18

RECORDING REQUESTED BY:
CALIFORNIA LAND TITLE COMPANY OF
NEVADA COUNTY

AND WHEN RECORDED MAIL TO:
MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVE., SUITE 200
ORANGE, CA  92867

ORDER NO.: 105038-TO

Nevada County Recorder
Gregory J. Diaz
DOC- 2009-0001231-00
Acct 1-California Land Title Co.
Friday, JAN 23, 2009 08:00:00
REC  $22.00:SBS   $17.00:SSR   $1.00
MIC   $1.00:AUT   $18.00
Ttl Pd   $59.00     Nbr-0009576689
                    ENM/EM/1-18

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

DOCUMENT TITLE

SEPARATE PAGE - PURSUANT TO GOVERNMENT CODE 27361.6

titlepg

Recording Requested By:
MORTGAGECLOSE.COM, INC.


And After Recording Return To:
MORTGAGECLOSE.COM, INC.
1855 WEST KATELLA AVENUE, SUITE 200
ORANGE, CALIFORNIA 92867
Loan Number: 0810219

RECORDING REQUESTED
BY: OLD REPUBLIC TITLE
2123006684-SE

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

**MIN:** 1002310-0000810219-5

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated                JANUARY 14, 2009          , together with all Riders to this document.
(B) "Borrower" is  SHELLEY VON BRINCKEN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY



Borrower is the trustor under this Security Instrument.
(C) "Lender" is MORTGAGECLOSE.COM, INC.

Lender is a   NEVADA CORPORATION                                            organized
and existing under the laws of   NEVADA
Lender's address is    1855 WEST KATELLA AVENUE, SUITE 200, ORANGE, CALIFORNIA 92867

(D) "Trustee" is   CALIFORNIA LAND TITLE COMPANY OF NV COUNTY
464 BRUNSWICK RD, GRASS VALLEY, CALIFORNIA 95945

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  JANUARY 14, 2009
The Note states that Borrower owes Lender   TWO HUNDRED TWENTY THOUSAND AND 00/100
Dollars (U.S. $  220,000.00          ) plus interest.

————————————————————————————————————————————————————————
CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 1 of 14                    *DocMagic* *eRorms* 800-649-1362
                                                                            www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
FEBRUARY 1, 2039

(G)    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)    "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider        ☒ Planned Unit Development Rider
- ☐ Balloon Rider                ☐ Biweekly Payment Rider
- ☐ 1-4 Family Rider             ☐ Second Home Rider
- ☐ Condominium Rider            ☐ Other(s) [specify]

(J)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)    "Escrow Items" means those items that are described in Section 3.

(N)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)    "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)    "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                               Page 2 of 14                    DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

Complaint for Violation of Civil Rights PAGE 121

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of NEVADA

[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]

LOT 1, AS SHOWN ON FINAL MAP NO.00-002 OF THE WOLF, FILED IN THE OFFICE OF THE COUNTY RECORDER, COUNTY OF NEVADA, STATE OF CALIFORNIA, ON MAY 6, 2008, IN BOOK 8 OF SUBDIVISIONS, AT PAGE 178.
A.P.N.: 55-00-34

which currently has the address of  14738 WOLF ROAD

[Street]

GRASS VALLEY                , California    95949    ("Property Address"):

[City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 4 of 14                DocMagic *eFerms* 800-649-1362
                                                                               www.docmagic.com

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.   To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.   If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.   Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                     Page 5 of 14          DocMagic *eForms* 800-649-1362
                                                                                          www.docmagic.com

Complaint for Violation of Civil Rights PAGE 124

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 6 of 14                      DocMagic eForms 800-649-1362
                                                                                    www.docmagic.com

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                Page 7 of 14                    DocMagic EForms 800-649-1362
                                                                               www.docmagic.com

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

Complaint for Violation of Civil Rights PAGE 127

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument:  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;  (b) words in the singular shall mean and include the plural and vice versa;  and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

   **18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of:  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower:  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                        Page 10 of 14                            DocMagic *eRorms* 800-649-1362
                                                                                              www.docmagic.com

Complaint for Violation of Civil Rights PAGE 129

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

Complaint for Violation of Civil Rights PAGE 130

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Complaint for Violation of Civil Rights PAGE 131

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SHELLEY VON BRINCKEN        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                          Witness:

_____    _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 13 of 14        DocMagic eForms 800-649-1362
                                                       www.docmagic.com

Complaint for Violation of Civil Rights PAGE 132

─────────────── [Space Below This Line For Acknowledgment] ───────────────

State of California                    )
County of _Placer_                     ) ss.
                                       )
On _1-15-09_ before me, _K. Dean Notary public_

personally appeared _SHELLEY VON BRINCKEN_

_____

_____

─────────────────────────────────────────────────

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
K. DEAN
Commission # 1628882
Notary Public - California
Placer County
My Comm. Expires Dec 11, 2009
```

_KD_
NOTARY SIGNATURE

_K. Dean_
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                         Page 14 of 14                    DocMagic eForms 800-649-1362
                                                                         www.docmagic.com

Complaint for Violation of Civil Rights PAGE 133

Loan Number: 0810219

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **14th** day of **JANUARY, 2009**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **MORTGAGECLOSE.COM, INC., A NEVADA CORPORATION**
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**14738 WOLF ROAD, GRASS VALLEY, CALIFORNIA 95949**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD**

(the "Declaration"). The Property is a part of a planned unit development known as

**THE WOLF**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                        Page 1 of 3

DocMagic *€Rooms* 800-649-1362
www.docmagic.com

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 2 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 135

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
SHELLEY VON BRINCKEN        -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

MULTISTATE PUD RIDER–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Complaint for Violation of Civil Rights PAGE 136

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT  G

OCWEN DEMAND FOR PAYMENT

Complaint for Violation of Civil Rights PAGE 137



**OCWEN**

*Ocwen Loan Servicing, LLC*
*PO Box 780*
*Waterloo IA 50704-0780*
HELPING HOMEOWNERS IS WHAT WE DO!™
OCWEN.MORTGAGEBANKSITE.COM

07/26/13

Certified Number: 7012 2210 0000 5343 4442
SHELLEY VON BRINCKEN

PO BOX 2362

GRASS VALLEY        CA 95949

RE:  Account Number    0602227759
     Property Address   14738 WOLF ROAD

            GRASS VALLEY        CA 95949

Dear    SHELLEY VON BRINCKEN

The purpose of this letter is to advise you that your account is now seriously past due for $76,492.78. As we have made a number of attempts to make arrangements with you without success, you are hereby notified that you have 30 days from the date of this letter to contact us and resolve your delinquency. If you fail to resolve the delinquency within that period of time, we are permitted under the laws of the State of California to foreclose on your property.

If you wish to prevent the foreclosure, there is still time but it is imperative that you contact us immediately. We have a number of options and programs for which you may be eligible. However, you must take the first step by contacting us so that we can assess your financial situation, discuss the various options and programs that may be available to you, and determine the best way to help you.

Please call 1-800-850-4622 between the hours of 8:00 a.m. and 11:00 p.m. Central Time, Monday through Friday, and from 8:00 a.m. and 12:00 p.m. on Saturday.  You can also obtain information about possible loss mitigation options by visiting our website at ocwen.mortgagebanksite.com.

For additional assistance, you may also contact a HUD Housing Counseling Agent at 1-800-569-4287. Toll free TDD number for the HUD Counseling Agency is 1-800-877-8339.

Collection Department
Loan Servicing

5:79

Notice:  Federal law requires that we advise you that this notice is from a debt collector attempting to collect a debt and any information obtained, will be used for that purpose.

If you are currently involved in a bankruptcy proceeding or have been discharged of your personal liability for the repayment of this debt, this notice is being provided for informational purposes only, it is not an attempt to hold you personally responsible for the debt and applies only to the lien on your property and not to you personally.

                    Complaint for Violation of Civil Rights PAGE 138

OCWEN

Ocwen Loan Servicing, LLC
3451 Hammond Ave
P.O. Box 780
Waterloo, IA 50704-0780

CERTIFIED MAIL

7012 2210 0000 5343 4442