Hearing Date:  September 3, 2013 at 11:00 a.m. (Eastern Time)

| | |
|---|---|
| MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP<br>1 Chase Manhattan Plaza<br>New York, New York 10005<br>Telephone:  (212) 530-5000<br>Facsimile:  (212) 530-5219<br>Gerard Uzzi<br>Dennis C. O'Donnell<br>Atara Miller<br>Daniel M. Perry | AKIN GUMP STRAUSS HAUER & FELD LLP<br>One Bryant Park<br>Bank of America Tower<br>New York, New York<br>Telephone: (212) 872-1000<br>Fascimile: (212) 872-1002<br>Daniel H. Golden<br>David Zensky<br>Deborah J. Newman |
| - and - | *Attorneys for UMB Bank, N.A.* |
| WHITE & CASE LLP<br>1155 Avenue of the Americas<br>New York, New York 10036-2787<br>Telephone:  (212) 819-8200<br>Facsimile:  (212) 354-8113<br>J. Christopher Shore<br>Harrison L. Denman | |

*Attorneys for Ad Hoc Group and UMB Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) ) ) | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | Case No. 12-12020 (MG) |
| Debtors. | ) ) ) ) | Jointly Administered<br><br>Re: Docket No. 4765 |

**JOINT LIMITED OBJECTION OF THE AD HOC GROUP OF JUNIOR
SECURED NOTEHOLDERS AND THE NOTES TRUSTEE TO DEBTORS' MOTION
PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026 OF
THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION
TO ESTABLISHI AND IMPLEMENT PROCEDURES IN CONNECTION
<u>WITH DISCOVERY RELATED TO PLAN CONFIRMATION</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Junior Secured Noteholders (the "Ad Hoc Group"),[1] and UMB Bank, N.A, as successor Indenture Trustee (the "Notes Trustee" and together with the Ad Hoc Group, the "JSN Parties"), by and through undersigned counsel, hereby submit this joint limited objection (the "Limited Objection") to the Debtors' Motion (the "Motion") Pursuant to Section 105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure for Authorization to Establish and Implement Procedures in Connection with Discovery Related to Plan Confirmation (the "Proposed Protocol"), dated August 20, 2013 [Docket No. 4765]. The JSN Parties respectfully state as follows:

## LIMITED OBJECTION

### A. Preliminary Statement

1. The JSN Parties submit this Limited Objection to the Proposed Protocol submitted by the Debtors because it unnecessarily prejudices the rights of the JSN Parties to seek full and fair discovery of issues relating to the claims for payment of post-petition interest to which they are contractually entitled. Recognizing that the disputed issues relating to the payment of post-petition interest to the JSNs are substantial, the Court has already established procedures for a "Phase I" trial in the adversary proceeding and has indicated that "Phase II" will follow pursuant to a separate schedule and set of procedures. In that regard, the JSN Parties have previously suggested a Phase II post-confirmation litigation that would streamline the Plan confirmation process and foster compromise among the affected constituencies. The Debtors

---

[1] The Ad Hoc Group is comprised of certain entities (the "Junior Secured Noteholders" or the "JSNs") that hold or manage holders of 9.625% Junior Secured Guaranteed Notes due 2015 issued under that certain Indenture dated as of June 6, 2008. Following the Debtors' $800 million paydown and $300 million paydown, the outstanding amount of principal and pre-petition interest on the Junior Secured Noteholders' claim now equals $1.122 billion and the amount of post-petition interest accrued through August 27, 2013 equals approximately $297 million (collectively, the "JSN Claims"). The aggregate amount of outstanding continues to increase by virtue of the ongoing accrual of post-petition interest at the rate of approximately $153 million per year.

2

have rejected that approach and now seek to have some or all—they do not specify which—aspects of the Phase II disputes tried in connection with confirmation of their Plan.[2]  Instead, having successfully urged the Court to adjudicate (on a highly expedited schedule) some or all of the issues related to the Phase II disputes subject to a pending adversary proceeding as part of the Plan Confirmation process, the Debtors must now be prepared to participate in a full and fair discovery process related to those issues.  They have not done so.

2.    The Proposed Protocol is flawed because it would disallow further document discovery absent a showing of good cause.  This is materially different from both In re Enron Corp.[3] and In re Lehman Brothers Holdings, Inc.,[4] where the documents were identified and produced by the debtors after the affected constituencies had served their discovery demands.  There was no attempt in those cases to cut off entirely an objecting party's right to serve discovery requests.  Here, the Debtors have (i) pre-determined what they believe is relevant and (ii) have concluded that it has all been previously produced in connection with other matters and investigations.  Having made those determinations, the Debtors seek to then preclude interested parties from even serving document discovery absent an extraordinary showing of "good cause."  This is simply not how the discovery process ought to work.  Indeed, the court did not bless such a process in Enron or Lehman.

---

[2]   The JSN Parties object to that proposal.  The time allotted for discovery in Phase I is already too short, and a full trial of Phase II issues at confirmation is unworkable.  The Debtors' proposed remedy to that problem—effectively seeking a protective order against any Phase II discovery—is backwards.

[3]   In re Enron Corp. et al., Ch. 11 Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith [Docket No. 16233] ("Enron Order").

[4]   In re Lehman Bros. Holdings Inc., et al., Ch. 11 Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Apr. 14, 2011, Order Establishing Schedule and Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues [Docket No. 16003] ("Lehman Order").

3. Similarly, the proposed process for identification of witnesses who will testify at the hearing on confirmation of the Plan is flawed and unfair. The Proposed Protocol provides that within 14 days of its entry, both the Debtors and Plan Participants must identify the witnesses they intend to call to support their objection to the Plan.[5] The Proposed Protocol provides that the Repository will be populated 10 days after entry of the Proposed Protocol.[6] Thus, Plan Participants will be expected to identify all of their witnesses after having access to the Repository containing over 14 million pages of documents for four days, and without having had the benefit of serving their own discovery requests or evaluating any pre-hearing deposition testimony. The Proposed Protocol does not even provide a party with the ability to supplement its witness list after learning additional facts and identifying additional witnesses through the discovery process. Again, nothing approaching such a process was ordered in <u>Enron</u> or <u>Lehman</u>.

4. The JSN Parties conferred with the Debtors in advance of submitting this Limited Objection. The Debtors agreed only to certain limited changes in the expert discovery process. The Debtors were unwilling to modify the Proposed Protocol to allow for appropriate document discovery or to allow for a more orderly designation of anticipated witnesses. The Debtors even refused the JSN Parties' request to extend the motion return date by one week to the next omnibus hearing, or to extend the objection deadline two days, which would have allowed the JSN Parties to continue to confer with the Debtors, in an effort to arrive at a protocol agreeable to both parties.

---

[5]    Proposed Protocol at §§ 7-8.

[6]    <u>Id.</u> at § 3(b).

4

5. The JSN Parties are mindful of the Court's views on discovery disputes and stated preference that this pleading be brief.[7] For that reason, the JSN Parties have limited this pleading to high level issues and will address specific concerns in a mark-up of the proposed order to be submitted prior to the hearing to the extent issues remain after further conferring with the Debtors.[8]

### B. The Proposed Protocol Fails to Require the Debtors to Identify the Issues They Intend to Try as Part of the Plan Confirmation Process

6. As an initial matter, the Plan proponents have not identified sufficiently those Phase II (or other) issues they anticipate litigating in connection with confirmation. The Proposed Protocol should contain a specific statement of issues that the Plan proponents intend to put before the Court at confirmation and those, if any, that will be left for resolution outside of confirmation (e.g., a Phase II trial). While the JSN Parties can certainly anticipate some of the issues that will be the subject of dispute during the Plan confirmation process, other issues remain a moving target.[9] It is only after the Plan proponents have (with the assistance of the affected constituencies) sufficiently identified the issues to be tried at confirmation that the JSN Parties may fully evaluate the discovery necessary to present their case at confirmation. This is the process the parties to the Phase I adversary proceeding followed and it should be the process that governs here.

---

[7] Transcript of Hearing, In re Residential Capital, LLC, Case No. 12-12020 (MG), dated August 22, 2013, at 42:5-14.

[8] By way of example, among the issues the JSN Parties seek to additionally confer with the Debtors on are the need to produce prior information and discovery requests and the objections and correspondence relating thereto so that parties may understand the basis for documents either being provided to or withheld from the Repository as well as the need for parties to certify substantial completion so that the parties know when document discovery has been completed.

[9] For instance, the Debtors have stated that they will not seek valuation of the intercompany claims on the merits at confirmation. A determination of to what extent the holders of Junior Secured Notes are entitled to adequate protection as a consequence of the Debtors' settling intercompany claims pursuant to the Global Settlement will require discovery regarding the value of intercompany claims and the presentation of evidence to the Court.

5

7.  Further, any discovery protocol entered in these cases should govern discovery in connection only with those issues actually being presented or expected to be presented at the hearing on the confirmation of the Plan.  Discovery on any issues outstanding under pending adversary proceedings or future actions that are not being presented for resolution as part of the confirmation hearing, should not be governed by the terms of any confirmation discovery protocol entered by this Court.

**C.  The Parties Objecting to the Plan Must Be Allowed to Serve Document Requests**

8.  The Proposed Protocol seeks to have the Court bless an unprecedented document discovery process in which the Debtors would simply make available all prior document productions made in connection with these Cases and then prohibit any further document discovery absent a showing of "good cause."  The Debtors assert in the Motion at ¶ 2, that the Proposed Protocol is consistent with the discovery protocols entered in Enron and Lehman.  But the Proposed Protocol differs materially from the orders entered in those cases with respect to the protocol for dealing with document discovery, including the obligation to produce privilege logs, as well as in the process and timing for disclosing anticipated trial witnesses.  In both of those cases, the Debtors provided objecting parties with an opportunity to request documents relevant to the issues in dispute at confirmation and then created a document repository containing those documents.  The Debtors have sought to turn that process on its head in this Case.

9.  The Proposed Protocol provides that "Document production requests to the Debtors pursuant to Rule 7034 of the Federal Rules of Bankruptcy Procedure shall not be allowed without good cause shown by any Plan Participant seeking document discovery from the

6

Debtors in addition to those documents housed in the Repository."[10] The Repository will house "documents that have been produced in the various adversary proceedings, contested matters, and investigations in these Chapter 11 Cases."[11]

10.  The JSN Parties are not seeking anything unusual in objecting to this aspect of the Proposed Protocol. The JSN Parties simply seek the right to serve discovery as permitted under the Federal Rules of Bankruptcy Procedure that is (i) reasonably calculated to lead to discovery of admissible evidence and (ii) not duplicative of the requests previously served on and responded to by the Debtors. If the Debtors have already produced documents responsive to such additional requests in contested matters, adversary proceedings and the Examiner's investigation, then the additional discovery requests would impose no additional burden on the Debtors. The Debtors would simply respond that the requested materials are available in the Repository.[12]

11.  In fact, the materials relevant to Plan confirmation have not all been produced. The Debtors have repeatedly objected to the Ad Hoc Group's requests for documents in connection with the pending Adversary Proceeding that are not otherwise available within the Examiner's Database on the basis that the requests were not relevant to the "Phase I" issues. Many of those requests relate directly to matters that may be heard as part of this proceeding. Production of the requested materials should be required.

---

[10]  Proposed Protocol at § 3(e).

[11]  Motion at § 17.

[12]  Merely providing access to documents previously produced in these chapter 11 cases, including to the Examiner, is not a substitute for Plan discovery. For instance, the Examiner was not tasked with investigating all issues related to Plan confirmation generally, such as the Debtors' purported settlement of intercompany claims, and indeed completed his investigation prior to the filing of this Plan.

7

12. For example, the Debtors objected to forty-seven (47) of the Ad Hoc Group's document requests on the grounds that proposed discovery was beyond the scope of Phase I issues. In their responses and objections to those document requests, Debtors reserved their right to later object to the discovery, but did not assert that the requested discovery had been previously produced to the Examiner.

13. Many of these requests plainly relate to the confirmation proceedings. By way of illustration only, the Ad Hoc Group requested, and the Debtors objected to document requests seeking:

   a. All documents reviewed by the Debtors' Chief Restructuring Officer in determining to compromise intercompany claims and substantive consolidation issues. (Document Request No. 37.)

   b. All documents concerning any proposed, considered, or evaluated allocation of the $2.1 billion Ally contribution, including by Debtor estate and cause of action. (Document Request No. 74.)

14. The Proposed Protocol purports to preclude the discovery of all such materials unless the JSN Parties can make a showing of "good cause." Unlike a typical "good cause" showing, under which a party must demonstrate a genuine need for the materials sought,[13] the "good cause" showing under the Proposed Protocol would require a requesting party to provide:

> (a) description of the custodian(s) for whom the requesting Participant seeks additional document discovery;
>
> (b) the specific date ranges for such additional document discovery;
>
> (c) a list of reasonably crafted and specific search terms that are not duplicative of the search terms proposed in Debtors' Exhibit E

---

[13] In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991) (good cause demonstrated by "claim that the requested documents are necessary to establishment of the" cause of action).

8

for such additional discovery [such search terms are explicitly not inclusive of confirmation issues]; and

(d) a detailed explanation why the documents and data housed in the Repository do not constitute adequate document discovery of the Debtors for purposes of Plan confirmation.

15.     In addition to impermissibly shifting the burden to the requesting party, the proposed good cause showing requires a third party to provide information that it cannot reasonably be expected to know.  A Plan Participant cannot reasonably be expected to identify the relevant custodians or "specific" date range for each request.  Moreover, the fourth prong would effectively require a Plan Participant to prove in detail a negative, i.e. that the requested materials are not already contained in the 14 million pages of previously-produced materials in the Repository.  Requiring a party to meet such a high threshold before it is allowed to even serve discovery requests is unreasonable.

**D.    The Debtors Must Be Required to Produce Privilege Logs**

16.     The Proposed Protocol is also flawed insofar as it does not require the Debtors (or any other constituency producing documents) to produce privilege logs as required under the rules.  In contrast, the Enron[14] and Lehman[15] discovery protocols both required the production of privilege logs.  Moreover, this Court required the production of privilege logs in the Phase I adversary proceeding.[16]  The Ad Hoc Group is willing to agree to a reasonable process for the production of privilege logs, but allowing the Debtors to withhold documents without providing a privilege log is unreasonable and inconsistent with the Federal Rules of Bankruptcy Procedure.  This absence of a log of privileged documents is especially prejudicial

---

[14]    Enron Order at § 7.

[15]    Lehman Order at § 11.

[16]    The Debtors have thus far failed to complete their production of a privilege log regarding Phase I document productions.

9

with respect to issues related to the valuation of the intercompany claims, where there may very well be a substantial dispute about the applicability and extent of any privilege claimed.

### E. Plan Participants Must Be Afforded an Opportunity to Review the Debtors' Documents and Proposed Witness List Before Identifying Witnesses Who Will Testify at Confirmation

17. Sections 7 and 8 of the Proposed Protocol would require both the Debtors and Plan Participants to serve lists of the witnesses they intend to have testify at the confirmation hearing within seven days of the deadline for filing a Notice of Intent.[17] At that point, Plan Participants will have had access to the full 14 million documents in the Repository for only four days. As a result, Plan Participants would be required to identify all hearing witnesses, with no opportunity to supplement or amend their lists, before meaningfully reviewing the Debtor-documents and considering the issues and witnesses identified by the Debtors.

18. This structure is significantly different than the process established in Enron or Lehman. Indeed, in Enron, the discovery protocol required the debtors to identify their anticipated witnesses at the start of discovery, and allowed the list to be supplemented five weeks later.[18] Objecting parties were not required to serve a list of anticipated hearing witnesses until one month later.[19] In Lehman, both the debtors and participants were required to serve witness lists, but only seven days *after* the debtors certified that they had substantially completed their

---

[17] As submitted, the Proposed Protocol would actually require a Participant that files a Notice of Intent before the deadline to serve its witness list *before* the Debtors. We understand from conversations with the Debtors that they intend to revise the Proposed Protocol to require both Participants and the Debtors to submit their anticipated witness list within seven days of the Notice of Intent deadline, not actual filing.

[18] Enron Order at § 2.

[19] Id. at § 15.

10

document production.[20] And again, the Lehman order provided that the list could be "supplemented and amended as needed."[21]

19.   The JSN Parties cannot reasonably be expected to be able to identify the witnesses they intend to call before (1) identifying with specificity the issues to be tried as part of the Plan confirmation, (2) receiving and reviewing the Debtors' documents relevant to Plan confirmation, or (3) considering the fact witnesses being proposed as Plan confirmation witnesses by the Debtors. Moreover, it is unreasonable to establish a protocol that does not allow such lists to be amended or supplemented as additional facts are developed during the course of discovery.

### F. Compromises to Date on the Discovery Protocol

20.   As noted above, the JSN Parties have engaged in discussions (albeit abbreviated) with the Debtors. The JSN Parties and the Debtors have reached agreement on the following changes:

   a. All parties agree that expert witnesses will be identified when the expert reports are due, and rebuttal expert witnesses will be identified when rebuttal expert reports are due. The parties also agree that rebuttal reports may be submitted by expert witnesses who did not submit affirmative expert reports and were not previously identified as testifying witnesses.

   b. All parties agree that the expert reports must be submitted by October 18, 2013.

**WHEREFORE**, the JSN Parties respectfully request that the Bankruptcy Court deny the Proposed Protocol and direct the parties to meet and confer to develop a fair and balanced protocol in accordance with the objections set forth herein. The JSN Parties are

---

[20]   See Lehman Order at § 10(b).

[21]   Id.

11

continuing to confer with the Debtors on these issues and, if necessary, will submit an alternative proposed order in advance of the hearing.

Dated:   New York, New York
         August 27, 2013

                **MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

                /s/ Gerard Uzzi
                Gerard Uzzi
                Daniel M. Perry
                Atara Miller
                Dennis C. O'Donnell
                1 Chase Manhattan Plaza
                New York, New York 10005
                Telephone:  (212) 530-5000
                Facsimile:  (212) 530-5219
                guzzi@milbank.com
                amiller@milbank.com
                dperry@milbank.com
                dodonnell@milbank.com

                - and –

                **WHITE & CASE LLP**
                J. Christopher Shore
                Harrison L. Denman
                1155 Avenue of the Americas
                New York, New York 10036-2787
                Telephone:  (212) 819-8200
                Facsimile:  (212) 354-8113
                cshore@whitecase.com
                harrison.denman@whitecase.com

                *Attorneys for the Ad Hoc Group and UMB Bank, N.A.*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Daniel H. Golden
David Zensky
Deborah J. Newman
One Bryant Park
Bank of America Tower
New York, New York 10036-6745
Telephone: (212) 872-1000
Facsimile: (212)872-1002
dgolden@akingump.com
dzensky@akingump.com
djnewman@akingump.com

*Attorneys for UMB Bank, N.A.*