# Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------
                                                    )
In re:                                              )         Case No. 12-12020 (MG)
                                                    )
RESIDENTIAL CAPITAL, LLC, et al.,                   )         Chapter 11
                                                    )
                                    Debtors.         )         Jointly Administered
                                                    )
---------------------------------------------------------------------

### AMENDED PROPOSED ORDER ESTABLISHING A DISCOVERY PROTOCOL IN CONNECTION WITH DISCOVERY RELATING TO PLAN CONFIRMATION

WHEREAS, Residential Capital, LLC and its affiliated Debtors (collectively, the "Debtors") filed the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4153] (the "Plan"); and

WHEREAS, the Plan may present contested issues of fact and law (hereinafter, "Plan Issues"); and

WHEREAS, the Debtors have brought before this Court their Motion for Entry of an Order Establishing a Discovery Protocol in Connection with Discovery Related to Plan Confirmation; and

WHEREAS, the Debtors have provided extensive discovery to various parties-in-interest over the course of these Chapter 11 Cases, including the production of over 14 million pages of documents; and

WHERAS, the Court finds that it would be in the best interests of the Debtors and all interested parties that discovery in connection with Plan Issues arising out of objections to and/or

the prosecution of the Plan be conducted in an efficient, expeditious, and orderly manner; it is hereby ORDERED:

1.      <u>Scope of Order</u>.  Except as otherwise ordered by the Court, this Order shall control any and all discovery by any Debtor, the Official Committee of Unsecured Creditors (the "Committee"), the United States Trustee (the "UST"), and any creditor, party in interest, or group of creditors or parties in interest in connection with Plan Issues arising in connection with the prosecution of or objections to the Plan (hereinafter, "Plan Discovery").  This Order, however, shall not affect the rights of the Debtor, the Committee, the UST, any creditor or party-in-interest, or group of creditors or parties-in-interest to such discovery in connection with any other contested matters or adversary proceedings.

a)      All Plan Discovery sought must be sought in connection with Plan Issues only, and no discovery, or any information contained therein, may be used in connection with any other matter or proceeding.

b)      This Order shall not apply to the Consolidated Adversary Proceedings styled *Residential Capital, LLC et al. v. UMB Bank, N.A. et al.*, Adv. Proceeding No 13-01343 (MG); and *Official Committee of Unsecured Creditors v. UMB Bank, N.A. et al.*, Adv. Proceeding No. 13-01277 (MG) (collectively, the "JSN Adversary Proceedings").

2.      <u>Participation in Plan Discovery</u>.

a)      Any creditor, party-in-interest, or group of creditors or parties-in-interest seeking to participate in Plan Discovery (a "Proposed Participant") shall serve on the attorneys for the Debtors and the Committee a completed "Notice of Intent," the form of which is attached hereto as Exhibit A.  Each Notice of Intent must contain:  (i) the name and address of the creditor or

2

party-in-interest (or in the case of a group, the names and addresses of each of its members) and the name of the law firm(s) and individual attorneys representing such creditor(s), group(s) or party-in-interest; and (ii) a list of all proof(s) claim filed either individually or by the group. Any Notice of Intent must be filed no later than seven (7) days following the entry of this Order (the "Notice of Intent Deadline"), unless upon application to the Court good cause is shown that, notwithstanding reasonable best efforts to comply, additional time is needed to file a Notice of Intent. In the absence of an order of the Court sustaining an objection to a Notice of Intent, a Proposed Participant timely serving a Notice of Intent shall be deemed a "Participant." For purposes of Plan Discovery, "Participant" shall include the attorneys and any advisors for any Participant identified on a Participant's Notice of Intent, and the "Debtors" and the "Committee" shall include the attorneys and any advisors or other professionals for the Debtors and the Committee, respectively. The Debtors shall make available to counsel for all Participants copies of all Notices of Intent served upon them.

b)      The Debtors, Creditors Committee, Ally Financial, Inc. and each of its non-debtor affiliates and subsidiaries ("AFI") and the UST shall each be deemed a Participant in Plan Discovery without the need to serve a Notice of Intent.

c)      Any creditor, party-in-interest, or group of creditors or parties-in-interest that has filed or hereinafter files an objection to the Plan (each a "Plan Objector") shall be entitled to serve a Notice of Intent on or prior to the later of the Notice of Intent Deadline and the date of filing of such objection and, upon such filing of a Notice of Intent, shall be deemed a Participant as to the earlier date of the filing of such objection or the serving of such Notice of Intent.

ny-1100227

d)      The Debtors and the Committee shall have the right to object to a Notice of Intent on any and all grounds, including but not limited to those that are harassing, served by persons that are not parties-in-interest, do not comply with the terms of this Order, or do not demonstrate a legally cognizable interest in participating in Plan Discovery.  After service by the Debtors or the Committee of an objection to a Notice of Intent, the Proposed Participant may make an application to the Court seeking to overrule the objection.  Such application shall be made by letter brief not to exceed three pages single-spaced.  Any responses to such an application shall be made by letter brief not to exceed three pages single-spaced and must be served and filed with the Court within three (3) business days of service of the application.  No hearing on such an application will be held unless requested by the Court.

e)      Within three (3) business days following the Notice of Intent Deadline, the Debtors shall file with the Court a list of all Participants and their attorneys (including e-mail addresses), which will be the official service list for Plan Discovery.  The Debtors shall amend the Official Service List as necessary and will file such amended service lists with the Court. Service in connection with Plan Discovery shall be by electronic mail.

f)      Except as provided in Paragraph 2(a) and (b), any creditor, party-in-interest, or group of creditors or parties-in-interest that does not timely serve a Notice of Intent, or that serves a Notice of Intent to which the Debtors or the Committee successfully object, shall not be permitted to participate in Plan Discovery absent leave of the Court.  All Participants, including those who become Participants after the Notice of Intent Deadline has passed, must comply with all discovery deadlines set forth in this Order and shall not be allowed to reopen any discovery deadlines that have already passed.

4

g)    All Plan Discovery shall be subject to and shall be conducted in accordance with the terms of the Protective Order, attached hereto as Exhibit B, and approved by the Court in its entirety.  In order to be eligible to participate in Plan Discovery, each Participant and each Participant's attorneys and advisors must read and agree to be bound by and abide by the Protective Order.  Each Participant and a representative of each Participant's attorneys and advisors must sign the Agreement to Abide by the Protective order, attached hereto as Exhibit C, and serve such a copy upon the attorneys for the Debtors.  Such representative must provide the Protective Order to any person that it employs or engages who is given access to Plan Discovery.  Any Participant (or the attorneys or advisors for any Participant that are involved in the Chapter 11 Cases) that does not sign the Agreement to Abide by the Protective Order shall not be permitted to engage in Plan Discovery.

3.    <u>Document Discovery from the Debtors.</u>

a)    Document discovery shall be allowed of the Debtors through Participant access to a document repository (the "Repository").  The Repository shall house the following document productions that have been made over the course of these Chapter 11 Cases;

| Bates Prefix | Production |
| --- | --- |
| EXAM0 | Non-custodial production to Examiner |
| EXAM1 | Production to Examiner (primarily custodial emails) |
| EXAM2 | Supplemental production to Examiner (documents removed from privilege logs) |
| EXAM3 | Production to Examiner  (discovery Phase 3 custodians) |
| EXAM4 | Production to Examiner (custodial supplemental paper files) |
| RC0 | Production to Committee (productions later made to Examiner repository, to which the Committee had access) |

5

| Bates Prefix | Production |
|---|---|
| RC4 | Production to Committee (productions later made to Examiner repository, to which the Committee had access) |
| RC-9019 | Production in connection with RMBS 9019 motion |
| RCES | Production in connection with motion to extend stay |
| RC-FGIC | Production in connection with FGIC 9019 motion |
| RCUW | Production of underwriting guidelines |
| RESCAP-RMBS-INDDIR | Independent director production |
| RC1 | Custodian data previously produced in *New Jersey Carpenters Health Fund, et. al. v. Residential Capital, LLC, et. al.* |
| RC-144A | Private placement loan files |
| RC2 | Reproduction of *MBIA v. RFC* litigation production |
| RC3 | Reproduction of Allstate litigation production |
| RCCCCM | Production in connection with the cash collateral motion |
| RC-LOAN0 | Loan file productions to Trustee and Committee in RMBS 9019 motion |
| RC-LOAN1 | Loan file productions to Trustee and Committee in RMBS 9019 motion |
| RCS | Production in connection with Sale Discovery motion |
| RCUSB | Production in response to US Bank subpoena |
| RSSUN | Production to SUNs |

b)      The Debtors shall populate the Repository with these productions within ten (10) days of the date of entry of this Order, or at an earlier date if available.  When populated, the Repository shall contain documents and data from the custodians listed in Exhibit D attached hereto. The search terms used by the Debtors for its productions to the Examiner and for its production in the JSN Adversary Proceedings are set forth in Exhibit E attached hereto.

c)      The Debtors shall also add to the Repository all documents produced by the Debtors in the JSN Adversary Proceeding, with the exception of those produced from custodian FTI Consulting, Inc. with a "Professional Eyes Only" designation.

6

d)      The Debtors will include in the Repository all formal document demands and responses and objectors thereto that were served in these proceedings in connection with the production of documents that are being placed in the Repository.

e)      The Debtors will include in the Repository copies of all available privilege logs produced in connection with the productions of documents included in the Repository.

f)      The Repository shall be housed in a Relativity review database and shall be maintained in a searchable form.  The database review tool shall also provide basic functions and features such as tagging, printing, and downloading.  The Debtors shall be responsible for the costs of housing the Repository.  Each Participant shall be responsible for the cost of its respective seat license(s) and downloading from the Repository.

g)      Document production requests to the Debtors pursuant to Rule 7034 of the Federal Rules of Bankruptcy Procedure shall not be allowed without good cause shown by any Plan Participant seeking document discovery from the Debtors in addition to those documents housed in the Repository.  Such showing of good cause must include:  (a) a description of the custodian(s) for whom the requesting Participant seeks additional document discovery; (b) the specific date ranges for such additional document discovery; (c) a list of reasonably crafted and specific search terms that are not duplicative of the search terms set forth in Exhibit E for such additional document discovery; and (d) a detailed explanation why the documents and data housed in the Repository do not constitute adequate document discovery of the Debtors for purposes of Plan confirmation.  The Debtors and the Participant requesting additional document discovery from the Debtors shall meet and confer in good faith to resolve any disputes regarding the necessity for, and scope of, additional document discovery from the Debtors.  To the extent

ny-1100227

any disputes regarding any additional document discovery from Debtors cannot be resolved in the meet and confer process, the Participant may make an application to the Court seeking such additional document discovery. Such application must be made by September 23, 2013, and shall be made by letter brief not to exceed three pages single-spaced. Any objections to an application for additional document discovery from the Debtors shall be made by letter brief not to exceed three pages single-spaced and must be served and filed with the Court within three (3) business days of service of the application. No hearing on any application for additional document discovery from the Debtors will be held unless requested by the Court.

4.    Document Discovery From Participants Other Than the Committee and the U.S. Trustee.

a)    Within seven (7) days of the submission of a Participant's Initial Witness List (defined below), the Debtors or the Committee may serve on such Participant a document production request pursuant to Rule 7034 of the Federal Rules of Bankruptcy Procedure.

5.    Document Discovery from Non-Participants.

a)    Participants that seek to obtain documents from Non-Participants pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9014 and 9016, shall do so in a timely manner. In order to avoid the service upon Non-Participants of multiple and/or duplicative document requests and/or subpoenas (a "Non-Participant Request") and the attendant burdens of Non-Participants in responding to them, any Participant wishing to serve a Non-Participant Request shall make available to Participants within seven (7) days of the entry of this Order a preliminary suggested Non-Participant Request directed to each Non-Participant from which such Participant intends to seek document discovery, and a preliminary

8

suggested list of proposed search terms and strings that, in the reasonable examination of the Participant, is reasonably calculated to lead to the discovery of admissible evidence without being overly broad or unduly burdensome to the Non-Participant. Within seven (7) days after a Participant serves a preliminary suggested Non-Participant Request, all Participants seeking discovery from the Non-Participant shall reasonably and in good faith meet and confer to discuss whether to amend the preliminary Non-Participant Request. Nothing in this Paragraph, however, is intended to or shall limit any Participant's right to request, after good faith review of the Non-Participant Requests, non-duplicative documents relating to Plan issues from any Non-Participant. Any such non-duplicative document production request to a Non-Participant must be served before September 30, 2013. A copy of this Order and the Protective Order shall be provided to Non-Participants as part of any Non-Participant Request.

b)      No later than fourteen (14) days following service of any Non-Participant Request, the Non-Participant shall serve written responses and objections to the Non-Participant Request. In addition, the Non-Participant shall review the Non-Participant Request, along with the proposed search terms and strings, and will in good faith generate a responsive list of search terms and strings that are reasonably calculated to lead to the discovery of admissible evidence. The Non-Participant shall make the search terms and strings, along with a statement of the reason(s) for rejecting any proposed search terms and strings, available to Participants contemporaneously with its response and objections.

c)      If necessary, Non-Participants that have been served with a Non-Participant Request shall meet and confer with applicable Participants regarding any disputes concerning a Non-Participant Request and responses thereto within three (3) business days following the service of responses and objections. To the extent any disputes regarding a Non-Participant

Request cannot be resolved through the meet and confer process, the dispute shall be submitted to the Court for resolution by the simultaneous submission of letter briefs not to exceed three (3) single-spaced pages. No hearing on any dispute regarding a Non-Participant Request shall be held unless requested by the Court.

d)    Non-Participants shall begin searching for and producing documents as expeditiously as reasonably practicable after being served a Non-Participant Request. Such production shall be on a rolling basis and produced in electronic form. The Non-Participants making such production shall provide a copy of all documents produced pursuant to a Non-Participant Request to the Debtors for uploading to the Repository.

6.    <u>Document Discovery from Ally Financial, Inc. and/or the Committee</u>.

a)    Participants that seek to obtain documents from AFI pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9014 and 9016, or from the Committee, shall do so in a timely manner. In order to avoid the service upon AFI and/or the Committee of multiple and/or duplicative document requests and/or subpoenas (an "AFI or Committee Request") and the attendant burdens of AFI and/or the Committee in responding to them, any Participant wishing to serve an AFI or Committee Request shall make available to Participants within seven (7) days of the entry of this order a preliminary suggested AFI or Committee Request directed to AFI and/or the Committee, and a preliminary suggested list of proposed search terms and strings that, in the reasonable examination of the Participant, is reasonably calculated to lead to the discovery of admissible evidence without being overly broad or unduly burdensome to AFI and/or the Committee. Within seven (7) days after a Participant serves a preliminary suggested AFI or Committee Request, all Participants seeking discovery from AFI and/or the Committee shall reasonably and in good faith meet and confer to discuss

10

whether to amend the preliminary AFI or Committee Request. Nothing in this Paragraph, however, is intended to or shall limit any Participant's right to request, after good faith review of the AFI or Committee Request, non-duplicative documents relating to Plan issues from AFI and/or the Committee. Any such non-duplicative document production request to a AFI or the Committee must be served before September 30, 2013. The Debtors shall serve upon AFI a copy of this Order and the Protective Order upon its entry by the Court.

b)    No later than fourteen (14) days following service of an AFI or Committee Request, AFI and/or the Committee shall serve written responses and objections to the AFI or Committee Request. In addition, AFI and/or the Committee shall review the AFI or Committee Request, along with the proposed search terms and strings, and will in good faith generate a responsive list of search terms and strings that are reasonably calculated to lead to the discovery of admissible evidence. AFI and/or the Committee shall make the search terms and strings, along with a statement of the reason(s) for rejecting any proposed search terms and strings, available to Participants contemporaneously with its response and objections.

c)    If necessary, AFI and/or the Committee shall meet and confer with applicable Participants regarding any disputes concerning an AFI or Committee Request and responses thereto within three (3) business days following the service of responses and objections. To the extent any disputes regarding an AFI or Committee Request cannot be resolved through the meet and confer process, the dispute shall be submitted to the Court for resolution by the simultaneous submission of letter briefs not to exceed three (3) single-spaced pages. No hearing on any dispute regarding an AFI or Committee Request shall be held unless requested by the Court.

d)      AFI and/or the Committee shall begin searching for and producing documents as expeditiously as reasonably practicable after being served an AFI or Committee Request.  Such production shall be on a rolling basis and produced in electronic form.  AFI and/or the Committee shall provide a copy of all documents produced pursuant to an AFI or Committee Request to the Debtors for uploading to the Repository

7.      <u>Depositions of Debtor Witnesses.</u>

a)      Within seven (7) days of the Notice of Intent Deadline, the Debtors shall serve upon the Participants a list of those witnesses the Debtors intend to call as a fact witness at the Plan confirmation hearing (the "Debtors' Initial Witness List"), along with  a proposed schedule for the depositions of those witnesses.  Within three (3) days of receiving an Initial Witness List from a Participant, the Debtors may serve a revised list that adds additional fact witnesses to their Initial Witness List.  The Debtors and Participants shall meet and confer in good faith to resolve any scheduling issues with regard to the depositions of the Debtors' witnesses.

b)      Should a Participant or Participants seek to depose any Debtor witnesses in addition to those witnesses appearing on the Debtors' Initial Witness List, the Participant(s) shall meet and confer with the Debtors in an effort to reach agreement on the identity of additional Debtor deponents, if any.  To the extent that agreement cannot be reached regarding the identity of additional Debtor deponents, a Participant seeking to depose any Debtor witness(es) not listed on the Debtors' Initial Witness List may make an application to the Court seeking leave to depose additional Debtor witnesses.  Such application shall be before September 30, 2013, and shall be made by letter brief not exceeding three (3) single-spaced pages.  Any opposition to such an application shall be made within three (3) business days following the service of the

application, and such opposition shall be made by letter brief not exceeding three (3) single-spaced pages.  No hearing on any dispute regarding leave to depose additional Debtor witnesses shall be held unless requested by the Court.  In no event, however, shall the Debtors have any obligation to make available for deposition more than the 10 witnesses prescribed by the Federal Rules of Bankruptcy Procedure, including witnesses pursuant to Rule 30(b)(6) of the Federal Rules of Bankruptcy procedure.

c)      Depositions shall be conducted in accordance with the Federal Rules of Civil Procedure.  Examination of the witness shall be limited to seven (7) hours, including any depositions taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  All depositions of Debtor witnesses shall be conducted in New York City, New York.

8.      Participant Initial Witness List.

a)      Within seven (7) days of the Notice of Intent Deadline, a Participant other than the Debtors or the Committee shall serve upon the Debtors its initial list of witnesses (the "Initial Witness List") that such Participant intends to call as a fact witness at the Plan confirmation hearing.  Within three (3) days of receiving an Initial Witness List from the Debtors, a Participant may serve a revised list that adds additional fact witnesses to its Initial Witness List. A Participant serving an Initial Witness List shall meet and confer with the Debtors to establish a schedule for the depositions of any witnesses appearing on an Initial Witness List.

b)      Depositions of witnesses on an Initial Witness List shall be conducted in accordance with the Federal Rules of Civil Procedure.  Depositions of such witnesses shall be limited to seven (7) hours, including any depositions taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

ny-1100227

9.      <u>Expert Discovery</u>.

a)      The Debtors, the Committee, and all Participants intending to rely upon the testimony of an expert witness at the Plan confirmation hearing, shall identify all such proposed testifying experts and serve all disclosures required by Federal Rule of Civil Procedure 26(a)(2), including expert reports, by October 18, 2013.

b)      <u>Rebuttal Reports</u>.  The Debtors and the Committee, and any Plan Participant may serve and file rebuttal expert reports above within ten (10) days of the deadline for service of initial expert reports.

c)      <u>Expert Depositions</u>.  All expert depositions shall be completed no less than ten (10) days after service of rebuttal expert reports.  Only Participants may attend and participate in the depositions of experts.  Expert depositions shall be conducted pursuant to the Federal Rules of Civil Procedure and shall be limited to seven hours in length.  Participants shall reasonably and in good faith confer in advance of each expert deposition concerning the order of examination of the deponent and allocations of time for questioning the deponent.  All expert depositions shall be conducted in New York City, New York.

10.      <u>Interrogatories and Requests for Admission</u>.  Without leave of this Court upon a specific showing of good cause, interrogatories pursuant to Federal Rule of Civil Procedure 33, and Requests for Admissions pursuant to Federal Rules of Civil Procedure 32, shall not be allowed during Plan Discovery.

11.      <u>Non-Waiver of Privilege</u>.  The inadvertent production by any Participant or Non-Participant of any privileged document or information, or any other document or information otherwise precluded or protected from disclosure, in response to any discovery requests shall not

14

be deemed a waiver of any applicable privilege or immunity with respect to such document or

information (or the contents or subject matter thereof) or with respect to any other document or

discovery.  Any such produced privileged or protected document must immediately be destroyed

or returned (whether or not the receiving Participant disputes the claim of privilege or protection)

to the producing Participant or Non-Participant or its attorneys on request or upon discovery of

such inadvertent production by the receiving Participant, and the receiving Participant(s) shall

certify that all copies of such produced or privileged document have been destroyed or returned.

12.    Use of Materials Produced:  Participants and Non-Participants shall have the right

to object to any request for documents or information on the ground that such request appears to

be calculated to lead to discovery for use in matters or proceedings other than those related to

Plan Issues. In addition, absent further order of the Court, no discovery or information obtained

pursuant to this Order may be introduced in evidence or otherwise disclosed in any other matter

or proceeding unless properly obtained through discovery or otherwise in such other matter or

proceeding.

13,    General Dispute Resolution:  To the extent any dispute arises under this Order,

including but not limited to any relief regarding the provisions or deadlines set forth in this

Order, the parties to such dispute shall meet and confer in a good faith attempt to resolve such

dispute.  To the extent that agreement cannot be reached regarding the dispute, the Debtor, the

Committee or a Participant may make an application to the Court seeking a resolution of the

dispute.  Such application shall be made by letter brief not exceeding three (3) single-spaced

pages.  Any opposition to such an application shall be made within three (3) business days

following the service of the application, and such opposition shall be made by letter brief not

ny-1100227

exceeding three (3) single-spaced pages.  No hearing on any dispute regarding leave to depose

additional Debtor witnesses shall be held unless requested by the Court.

       14.    <u>Jurisdiction</u>.  The court shall retain jurisdiction over any matters that relates to or

arising from the implementation of this Order.

Dated:  September __, 2013
       New York, New York

                              _____
                              THE HONORABLE MARTIN GLENN
                              UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- )
                                                                            )
In re:                                                                      )    Case No. 12-12020 (MG)
                                                                            )
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>,                                    )    Chapter 11
                                                                            )
                                              Debtors.                      )    Jointly Administered
-------------------------------------------------------------------------- )

## NOTICE OF INTENT TO PARTICIPATE IN
## <u>DISCOVERY RELATED TO PLAN CONFIRMATION</u>

NOTICE IS HEREBY GIVEN that _____, represented by
_____, has filed Claim(s) Number(s) _____
against _____ in the amount of _____ and/or is a party of interest in the
confirmation of a plan in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") on the
basis that _____.

ACCORDINGLY, PLEASE TAKE FURTHER NOTICE that, subject to any objections by the
Debtors or the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Cases
and/or any limitations imposed by the Court, the above-named party in interest and its counsel
intends to participate as follows in Plan Discovery, as defined in the Order Establishing
Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues,
entered by the Court on _____ [Docket No. ___]:
_____.

Dated:  _____                              _____

**Contact Information for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Attorneys for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Advisors for Party in Interest (address, phone and email):**
_____
_____
_____
_____

1

_____

**Designation of Contact(s) to Receive Any Notice(s) Required Under the Order (address, phone and email):**

_____
_____
_____

**Group that Participant elects to join (pursuant to Paragraph 3(b) of the Order):**

_____

2

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

-----------------------------------------------------------------------

## <u>CONFIDENTIALITY ORDER</u>

The terms and conditions of this Confidentiality Order (the "<u>Order</u>") shall govern the disclosure, discovery, production, and use of documents and other information provided to the parties in connection with discovery ("<u>Plan Confirmation Discovery</u>") related to confirmation of a Chapter 11 plan ("<u>Plan Confirmation</u>") in those cases in the above-captioned Chapter 11 cases (the "<u>Chapter 11 Cases</u>").

1.      For purposes of this Order, the following terms shall have the following indicated meanings:

a.      "<u>Advisors</u>" shall include counsel, consultants, accountants, experts, auditors, examiners, financial advisors, appraisers, or other agents or professionals.

b.      "<u>Confidential Information</u>" means any and all proprietary and confidential nonpublic information (whether in writing or orally or in any other format) produced, provided, given or exchanged by a Disclosing Party that is marked or designated by such Disclosing Party as being "Confidential," including, without limitation, information concerning the Disclosing Party's assets, liabilities, business operations, business practices, business plans, financial projections, financial and business analyses, corporate governance, intellectual property, trade secrets and compilations and studies relating to the foregoing.

Confidential Information includes, but is not limited to, all analyses, compilations, forecasts, studies or other documents prepared by a Receiving Party in connection with its review of, or interest in, these Cases, which contain or reflect any such Confidential Information provided by the Disclosing Party, as well as any documents marked "Confidential" by a third party and delivered by such third party to the Disclosing Party pursuant to another confidentiality agreement or protective order.

The term Confidential Information will **not** include information that:

1.    is or becomes publicly available other than as a result of a disclosure by any Receiving Party or any of its Representatives or Advisors in breach of this Order,

2.    a Receiving Party or its Representatives or Advisors obtains independently, not pursuant to this Order,

3.    is or becomes available to the Receiving Party or any of its Representatives or Advisors on a non-confidential basis from a source (other than a Disclosing Party), which source is not known to the Receiving Party (who shall have no duty of investigation in this regard) to be subject to any prohibition from disclosing such information to the Receiving Party,

4.    is independently developed by such Receiving Party or any of its Representatives or Advisors without violating its obligations hereunder and without using any Confidential Information,

5.      is disclosed or is required to be disclosed by law, rule, regulation or legal process, subject to the requirements of paragraph 11 below, or

6.      is determined by a court of competent jurisdiction not to be Confidential Information.

c.      "<u>Disclosing Party</u>" means any person or entity producing Discovery Material, including any Protected Third Party, as defined in paragraph 9 below.

d.      "<u>Discovery Material</u>" refers to all discovery documents, deposition testimony, interrogatory answers, and other information produced, given, provided or exchanged in connection with Plan Confirmation Discovery, including these documents and data uploaded by the Debtors to the Debtors' Repository.

e.      "<u>or</u>" shall not be construed as exclusive.

f.      <u>Professional Vendors</u>:  Persons or entities that provide litigation support services (<u>e.g.</u>, photocopying, videotaping, translating, preparing exhibits or demonstratives, organizing, storing, hosting or retrieving data in any form or medium, etc.) and their employees and subcontractors.

g.      "<u>Receiving Party</u>" means any party receiving Discovery Material and any party receiving or that may be granted access to Discovery Material.

h.      "<u>Representatives</u>" shall include affiliates, directors, officers, partners, members, and employees.

2.      This Order shall govern the disclosure, discovery, production and use of all Discovery Material provided to a Receiving Party.  A Receiving Party's obligations with

3

respect to Discovery Material shall not be understood or construed to extend beyond the express terms of this Order.

        3.      Each Receiving Party hereby agrees that it will:

        a.      keep the Confidential Information confidential and will not (except as required by applicable law, rule, regulation or legal process, and only after compliance with paragraph 11 below), without the Disclosing Party's prior written consent, disclose any Confidential Information to any other person or entity, except as provided for in this Order;

        b.      not use or allow any Confidential Information to be used for any purpose other than in connection with Plan Confirmation Discovery and Plan Confirmation; and

        c.      use reasonable efforts to safeguard the Confidential Information and to protect the Confidential Information against disclosure, misuse, espionage, loss, and theft by any entity or individual.

        4.      Notwithstanding the limitations in paragraph 3, Confidential Information, except for Confidential Information designated as "Professionals' Eyes Only" as defined below, may be disclosed by the Receiving Party (i) to its Representatives and Advisors; (ii) any other Receiving Party; (iii) the Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party in connection with Plan Confirmation Discovery and Plan Confirmation; (iv) during interviews by counsel or in preparation for testimony in connection with Plan Confirmation Discovery and Plan Confirmation, persons reasonably expected to testify as witnesses at a deposition or hearing in connection with Plan Confirmation Discovery and Plan Confirmation provided that such persons have agreed in writing to be bound by this Order; (iv) during a deposition or hearing in connection with Plan Confirmation Discovery and Plan Confirmation, if the attorney providing

4

such Confidential Information to such witness has a good-faith belief that such witness has specific knowledge about such information; or (v) Professional Vendors to whom disclosure is reasonably necessary, provided they are informed that the material is Confidential Information and a representative of each Professional Vendor confirms in writing that the Professional Vendor will abide by the confidentiality terms of this Order as if such Professional Vendor were a party hereto, with such writing to be retained by the Party retaining such Professional Vendor; and

5.    The Receiving Party represents that each of its Representatives and Advisors who receives Confidential Information pursuant to this Order will be advised (i) of the confidentiality and use restrictions of this Order, (ii) that upon receipt of any Confidential Information such party shall be deemed bound by the terms of this Order, and (iii) of such party's obligations concerning the confidentiality of all such Confidential Information and the proper use thereof. The Disclosing Party may, in its sole discretion, agree in writing to greater or lesser restrictions on the use of certain Confidential Information.

6.    The Disclosing Party shall be permitted to designate certain items of Confidential Information as "Professionals' Eyes Only" only if the Disclosing Party in good faith reasonably believes (i) that the items contain proprietary information related to the Disclosing Party's previous, existing or ongoing business operations for which restricted access is necessary to prevent a risk of competitive harm to the Disclosing Party or the Debtors in the ongoing operation of their respective businesses; or (ii) the items contain attorney work product or privileged information; or (iii) that the items contain non-privileged internal analyses regarding the treatment and/or valuation of existing or potential claims in connection with the sale of mortgages or mortgage backed securities; or (iv) that the items contain personal borrower

5

information, including but not limited to names, addresses, social security numbers, and loan identification numbers.

7.      The Receiving Party agrees that information designated as Professionals' Eyes Only may not be disclosed to any Representatives of the Receiving Party and may be reviewed only by the following persons:

a.      Advisors who represent or work for the Receiving Party in matters related to Plan Confirmation Discovery and Plan Confirmation, as well as clerical, paralegal, other staff, agents, and vendors of those Advisors whose functions require access to Professionals' Eyes Only information;

b.      A Committee member's legal or financial advisor if that advisor is not (a) currently assisting and will not later assist the member or any party in any mortgage related litigation against the Debtors, Ally Financial Inc., or their affiliates, and (b) is not itself a party nor does it intend to be a party in any mortgage related litigation against the Debtors, Ally Financial Inc. or their affiliates; provided, however, that the legal or financial advisor will not share the Professionals' Eyes Only information with the Committee member;

c.      Any person  indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

d.      The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party in connection with these Chapter 11 Cases; and

e.      Any other person, only upon order of the Court or agreement of the Disclosing Party.

f.      During a deposition or hearing in connection with Plan

ny-1100227

Confirmation Discovery and Plan Confirmation if the attorney providing such Professionals Eyes

Only information to such witness has a good-faith belief that such witness has specific

knowledge about such information; and

g.    Professional Vendors to whom disclosure is reasonably necessary,

provided they are informed that the material is for Professionals Eyes Only and a representative

of each Professional Vendor confirms in writing that the Professional Vendor will abide by

confidentiality terms of this Order as if such Professional Vendor were a party hereto, with such

writing to be retained by the Party retaining such Professional Vendor.

8.    The Disclosing Party may designate the specific testimony during a

deposition or proceeding as Confidential or Professionals' Eyes Only either on the record at the

deposition or other proceeding, or in writing no later than three (3) calendar days following the

date on which counsel for the Disclosing Party has received the final version of the transcript of

the deposition or other proceeding (the "Transcript Designation Period"); provided that all

testimony shall remain Confidential during the Transcript Designation Period.

9.    Notwithstanding the foregoing, should the Receiving Party disagree with

the Disclosing Party's designation of information as Confidential or Professionals' Eyes Only,

counsel for the Disclosing Party and the Receiving Party shall confer in good faith to resolve the

issue on an expedited basis.  Absent a consensual resolution, the Receiving Party may request,

upon written notice to the Disclosing Party and on an expedited basis, that the Bankruptcy Court

resolve the issue (subject to the Court's availability).  The material in question shall be treated as

it was initially designated by the Disclosing Party pending resolution of the issue.  If challenged

pursuant to this paragraph, the Disclosing Party shall bear the burden of establishing that any

such material challenged by the Receiving Party is entitled to the designation of Confidential or Professionals' Eyes Only assigned by the Disclosing Party.

          10.     If the Disclosing Party produces Discovery Materials that it received from a third party (a "Protected Third Party") pursuant to the Uniform Protective Order for Examiner Discovery entered on August 20, 2012 (the "Uniform Protective Order") or pursuant to any other confidentiality agreement entered into during the Chapter 11 cases in connection with any investigation or litigation among the parties to the Adversary Proceeding (the "Earlier Confidentiality Agreements"), then (a) any Discovery Materials that were designated by the Protected Third Party as Professionals Eyes Only pursuant to the Uniform Protective Order or Earlier Confidentiality Agreements will be treated as Professionals Eyes Only under this Order, (b) any Discovery Materials that were designated by the Protected Third Party as Confidential pursuant to the Uniform Protective Order or the Earlier Confidentiality Agreements will be treated as Confidential under this Order, and (c) the Protected Third Party shall be treated as a Disclosing Party pursuant to this terms of this Order with respect to such documents.  For the avoidance of doubt, the terms of this Order, and not the terms of any Earlier Confidentiality Agreement or the Uniform Protective Order for Examiner Discovery, shall govern the treatment of Discovery Materials produced in connection with Plan Confirmation Discovery and Plan Confirmation, including, but not limited to, the terms of Paragraph 8 of this Order.  Unless subsequently produced pursuant to this Order without such designation, or unless the producing party expressly agrees that the Discovery Materials should not be so designated, any Discovery Materials previously produced pursuant to an Earlier Confidentiality Agreement and designated as Professional Eyes Only shall be deemed Professional Eyes Only under this Order and any Discovery Materials produced pursuant to an Earlier Confidentiality Agreement as Confidential

8

will be treated as Confidential under this Order and may be used subject to the relevant restrictions set forth in this Order, provided, however, that upon request, the parties will re-examine in good faith if such designation is still appropriate.

11.    In the event that a Receiving Party intends to offer into evidence or otherwise use Discovery Material designated Confidential or Professionals' Eyes Only in connection with Plan Confirmation, then such Receiving Party shall (i) obtain the advance written consent of Disclosing Party (through the Disclosing Party's counsel) to such offer or use; or (ii) file under seal the Discovery Material in question or any excerpts or extracts therefrom; or (iii) obtain an order of the Bankruptcy Court permitting the disclosure after advance written notice and a reasonable opportunity for the Disclosing Party to be heard on such proposed relief. Before using any Discovery Material designated Confidential or Professionals' Eyes Only in open court, the Receiving Party who desires to use such Discovery Material shall afford other Parties a reasonable opportunity to object to the disclosure of such Discovery Material, and nothing herein shall be construed as a waiver of such right to object. To the extent that any Party wishes to use Discovery Material designated Confidential or Professionals' Eyes Only at a hearing in connection with Plan Confirmation, the Parties shall meet and confer in good faith to discuss ways to avoid disclosing such Discovery Material to any person not bound by this Order, including by redacting documents. If, within three (3) business days after such conference, the Parties have not reached an agreement regarding the use of the Discovery Material designated Confidential or Professionals' Eyes Only at a hearing, or if three (3) business days or fewer remain before such hearing is scheduled to occur, any Party may then move the Court to resolve the dispute over use of such Discovery Material, with the party asserting confidential protection bearing the burden of demonstrating the protected nature of such Discovery Material, provided

9

that such Party has given reasonable notice to other Parties. Any such request for relief from the

Bankruptcy Court may be heard on expedited notice, subject to the Bankruptcy Court's calendar.

12.    Notwithstanding anything to the contrary herein, if a Receiving Party or

any of the Receiving Party's Representatives is requested pursuant to, or becomes legally

compelled by, applicable law, rule, regulation, regulatory authority, or legal process to make any

disclosure that is otherwise prohibited or constrained by this Order, the Receiving Party or such

Representative, as the case may be, shall provide written notice of such legal proceedings or

compelled disclosure (unless such notice is prohibited by applicable law) to the Disclosing Party

and the Disclosing Party's counsel pursuant to the notice provisions set forth herein promptly

upon receiving such notice and, unless such required disclosure by its terms compels the

Receiving Party to disclose such Confidential Information in a shorter period, at least five (5)

business days prior to compliance by the Receiving Party with the request for disclosure of

Confidential Information, so that the Disclosing Party may seek an appropriate protective order

or other appropriate relief, or, in the Disclosing Party's sole discretion, waive compliance with

the terms of this Order.  In the absence of a protective order or the Receiving Party receiving

such a waiver from disclosure, the Receiving Party or its Representative shall be permitted (with

the Disclosing Party's cooperation) to disclose only that portion of the Confidential Information

that the Receiving Party or the Representative is advised by the Receiving Party's counsel is

legally required to be disclosed and shall inform (in writing) any person to whom any

Confidential Information is so disclosed of the confidential nature of such Confidential

Information.

13.    Each Receiving Party acknowledges that none of the Disclosing Parties

makes any express or implied representation or warranty as to the accuracy or completeness of

ny-1100227

the Confidential Information, and each Receiving Party agrees that no Disclosing Party shall have any liability arising from disclosure of the Confidential Information or for any errors therein or omissions therefrom.

14.    Upon the date that is the earliest of one year following (a) the effective date of a chapter 11 plan, or (b) the conversion of the chapter 11 cases to cases under chapter 7, and upon the written request of the Disclosing Party or  any of its Representatives, each Receiving Party shall either (at the Receiving Party's election) (i) promptly destroy all copies of the Confidential Information in its possession, or (ii) promptly deliver to the Disclosing Party all copies of the Confidential Information in its possession; provided, however, that the Receiving Parties may retain all analyses, compilations, forecasts, studies or other documents prepared by the Receiving Parties, including those reflecting Confidential Information, and such other information that such Receiving Party is required to retain by law or reasonable and customary internal document retention policies (including any internal document retention policies in effect as of the date of this Order) (collectively the "Retained Information"); provided, further, however, that the Receiving Party shall not be required to return or destroy any Confidential Information if the Disclosing Party agrees in writing that the Receiving Party may retain such Confidential Information or the Receiving Party obtains an order of the Bankruptcy Court authorizing it to retain such Confidential Information; provided, further, however, that the Receiving Party may retain all exhibits introduced at any hearing in connection with Plan Confirmation or submitted to the Court in connection with any motion or other pleading relating to Plan Confirmation; provided, further, however, that  backup copies of electronic communications containing Confidential Information which are automatically generated through Receiving Party's data backup and/or archiving systems and which are not readily accessible by

Receiving Party's business personnel (the "Electronic Copies") shall not be deemed to violate this Order, so long as such Electronic Copies are not disclosed or used in violation of the terms of this Order.   If requested by a Disclosing Party, a Receiving Party shall provide a certification as to the destruction of any materials in accordance with the foregoing.  Any Receiving Party that retains any Retained Information (including any Electronic Copies) or other Confidential Information pursuant to this paragraph will continue to be subject to the terms of this Order in respect of all such information.

15.    Each Receiving Party  acknowledges that remedies at law would be inadequate to protect the Disclosing Party against any breach of this Order and, without prejudice to any other rights and remedies otherwise available to the Disclosing Party, each of the Receiving Parties agrees that the Disclosing Party may seek injunctive relief restricting the further release of Confidential Information, or the specific performance of the terms of this Order restricting the further release of Confidential Information, for any breach of this Order by one or more of the Receiving Parties without proof of actual damages and without the requirement of obtaining any bond or giving any security in connection with the granting of any such relief.  In the absence of willful misconduct or bad faith, injunctive relief and specific performance of the terms of this Order, as provided for in this paragraph, will be the exclusive remedies available to Disclosing Parties for any alleged breach of this Order by the Receiving Parties and their Advisors.

16.    The Receiving Parties and the Disclosing Parties hereby (a) submit to the jurisdiction of the Bankruptcy Court with respect to all disputes, actions, suits and proceedings arising out of or relating to this Order, (b) agree that all claims with respect to any such dispute, action, suit or proceeding may be heard and determined in such court, (c) waive the defense of an

inconvenient forum, (d) agree that service of any process, summons, notice or document by United States registered mail, or as otherwise provided in this Order or the Federal Rules of Bankruptcy Procedure, shall be effective service of process for any action, suit or proceeding brought in any such court by either Party with respect to any such dispute, action, suit or proceeding, (e) agree that a final judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law and (f) waive a right to trial by jury of any dispute, action, suit or proceeding arising out of this Order.

17.    To the extent any party to this Order seeks to use non-party borrower information ("NPBI") pursuant to paragraph 10 of this Order, such party shall comply with applicable federal or state law, or other legal authority, governing the disclosure of NPBI.

18.    Each party agrees that no failure or delay by the other party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

19.    Subject to the Receiving Party's right to challenge any assertion of privilege or prohibition from disclosure, nothing in this Order shall require disclosure of information by a Disclosing Party that the Disclosing Party's Advisors contends is protected or prohibited from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege or other protection, including without limitation any applicable data privacy laws.  If information protected or prohibited from disclosure is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information or

ny-1100227

any other information that may be protected from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege or other protection. If a Disclosing Party inadvertently or mistakenly produces information that is protected or prohibited from disclosure, upon written request by the Disclosing Party after the discovery of such inadvertent or mistaken production, the Receiving Party shall use all commercially reasonable efforts to return or destroy the information for which a claim of inadvertent production is made and all copies of it, including any work product containing, identifying, or referencing such information, within five (5) business days of such request, and the Receiving Party shall not use such information for any purpose other than in connection with a motion to compel production of the information. For the avoidance of doubt, the right of a Disclosing Party to request the return or destruction of inadvertently or mistakenly produced information shall not be subject to the terms of the amendment to the Uniform Protective Order for Examiner Discovery. If the Receiving Party returns such information, it may then move the Court for an order compelling production of the information, but that motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the information.

Dated: September ___, 2013
       New York, New York

_____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

<u>**AGREEMENT TO ABIDE BY THE CONFIDENTIALITY ORDER**</u>

I hereby certify that I have read the Confidentiality Order[1] SO ORDERED by the Court in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") on [September __], 2013 [Docket No. ___].   I further certify that I understand the terms and provisions of the Confidentiality Order and agree to be fully bound by them, and hereby submit to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York for purposes of the Confidentiality Order's enforcement.   I understand and agree, in particular, that I may not use any Confidential or Attorneys' Eyes Only Information, or any copies, excerpts or summaries thereof, or materials containing Confidential or Attorneys' Eyes Only Information derived therefrom, as well as any knowledge or information derived from any of these items, for any purpose other than matters related to Plan Discovery, in accordance with the provisions of the Confidentiality Order, including, without limitation, any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Confidentiality Order may result in legal action against me, such as for contempt of court and liability for monetary damages.

Dated: _____          Agreed: _____

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Confidentiality Order.

ny-1100227

# EXHIBIT D

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| Abreu, Steve | ResCap | Executive |
| Anderson, Heather | RFC | Structured Finance (RALI/RAMP Deal Manager) |
| Appel, Bob | HFN | Servicing |
| Applegate, David | ResCap | |
| Bander, Dana | RFC | Master Servicing |
| Bartsch, Nancy | ResCap | Investor Relations |
| Benton, Hu | Ally Legal | General Counsel |
| Berman (Saliterman), Cathy | RFC | Home Equity Product Management |
| Bier, Barry | GMACM | EVP Chief Investment Officer |
| Bins, Shannon | RFC | Assetwise |
| Blair, Jenny | GMACM | Credit Risk/Policy |
| Blaschko, Jeffrey | RFC | SF Deal Manager (Seconds); GMACM – Investor Relations |
| Blitzer, Sandy | GMACM | Capital Markets Head Trader/Senior V.P. |
| Bluhm, Rory | RFC | Structured Finance |
| Bocresian, Sewit | | Legal Dept. |
| Bohlinger, Jessica | RFC | Trading Desk, Trading Analyst (Pricing)/Asset Specialist |
| Bonner, Michelle | | |
| Bornstein, Kim | GMACM | SF Due Diligence Manager |
| Bowser, Diane | GMACM | Servicing |
| Brennan, Tom | RFC | Home Equity Product Management |
| Bricker, David | ResCap | |
| Byrne, Matt | RFC | Trader |
| Byrne, Tom | GMACM | Quality Assurance |
| Cancellari, Jeff | | |
| Casiello, Peter | GMACM | Credit Policy |
| Chelius, Kyle | GMACM | Capital Markets, Senior Mortgage Analyst |
| Citron, Diane | | |

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| Crosson, Dennis | GRS | GRS (Broker/Dealer) |
| Dalke, Robert | RFC | Quality Audit |
| Dermshock, Jeff | GMACM | Servicing / Investor Relations |
| Denny, Randy | RFC | Trading Desk, Trading Analyst (Seconds) |
| Detwiler, Mathew | ResCap | |
| Dickson, Kate | RFC | Café 2.2/Operations |
| Dondzila, Cathy | ResCap | Controller and Chief Accounting Officer |
| Duncan, Ken | RFC | Acting CFO/Signatory to Registration Statement |
| Dwinell, Liz | RFC | Quality Audit, Auditor |
| Exceptions Mailboxes | GMACM | |
| Faber, Judy | RFC | Records |
| Farkas, Theresa | RFC | Quality Audit, Auditor |
| Felix, Thomas | GMACM | Asset Specialist (Pooling) |
| Flees, Ralph | RFC | Controller/Signatory to Registration Statements |
| Fletcher, Colleen | GMACM | Credit Policy |
| Friedline, Ann | RFC | Underwriting (Service Delivery Group) – Underwriter (Deal Diligence) |
| Gardino, Pat | HFN | Servicing |
| Gerome, Mike | GMACM | Associate Deal Manager |
| Gess, Lisa | GMACM | Credit Risk |
| Getchis, John | GRS | GRS (Broker/Dealer) |
| Giertz, James | | |
| Griffith, Scott | GMACM | Trading |
| Hagerty, Dennis | GMACM | Servicing |
| Hammond, Frank | RFC | Quality Auditor |
| Hamzehpour, Tammy | ResCap | General Counsel |
| Heitzmann, Brad | GMACM | Mortgage Credit Risk Analytics and Reporting |
| Hessel, Julie | RFC | Underwriting (Service Delivery Group) Credit Policy |

2

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| Hoffman-Landau, Lisa | GMACM | Credit Risk |
| Hopkins, Jon | RFC | Trader/Trading Analyst |
| Horst, Deanna | GMACM | Managing Director, Manufacturing Quality & Repurchase |
| Hreshko, Michele | GMACM | Repurchase |
| Hughes, William | GRS | GRS |
| Jaberi, Javid | HFN | Servicing |
| James, Don | GMAC Bank | Compliance |
| Jones, James | RFC | President/CEO |
| Joseph, Alan | RFC | Trading Desk, Head Trader (Seconds) to 9/07 |
| Jukoski, John | GMACM | SVP Capital Markets |
| Kalk, Jenny | RFC | Asset Specialist (RALI) |
| Kerssen, Anita | RFC | Quality Audit, Auditor |
| Knutson, Brian | RFC | Co-Deal Manager |
| Lamar, Travis | RFC | Assistant Trader |
| Larson, Julie | RFC | Alt-A/Jumbo Product Management |
| Leslie, Barbara | ResCap | Credit Risk |
| Lewis, Ken | RFC | Structured Finance (Pooling) |
| Lind, Michael | RFC | Café 2.2 / Operations |
| Logan, Deb | RFC | Home Equity Product Management |
| Lombardo, Jerry |  |  |
| Long, Kevin | GRS | GRS |
| Lundsten, Lisa | RFC | Structured Finance, Director of Securitization Mgmt. |
| Madden, Frank | GMACM | Primary Servicing, Servicer Risk |
| Magauran, Tim | GMACM | Servicing |
| Mainardi, Marianne | GMAC Bank | Underwriting |
| Mand, Michael | RFC | Head Trader |
| Marano, Tom | ResCap | Chairman and CEO (former) |
| Marrone, Janet | GMACM | SF Deal Manager |

3

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| McCumber, Sonya | RFC | Compliance Auditing |
| McGown, Karen | RFC | Product Mgmt. |
| Meyer, Darsi | RFC | Master Servicing |
| Meyerhofer, Jeff | RFC | Product Management |
| Miller, Helen | GMACM | Deal Manager |
| Milstein, Steve | GRS | GRS |
| Morfeld, Steve | GMACM | Consumer Lending |
| Muscovitch, Ed | GMAC Bank | Director of Credit Policy/Underwriting |
| Neary, Thomas | | |
| Nelson, David | RFC | Settlement Group |
| O'Connell, Maureen | GMACM | Corporate Finance |
| Olson, Davee | RFC | Director/Signatory to Registration Statement |
| Orning, Joe | RFC | Structured Finance, Asst. Deal Mgr. |
| Otey, Jameeka | GMACM | Asset Specialist |
| Paradis, Bruce | RFC | CEO/President |
| Pawlyshyn, Steve | RFC | Trading Desk, Director of Trading |
| Peeler, Leslie | RFC | Trading Desk, Head Trader (9/07 – 12/07), 2nds Trading Analyst |
| Pensabene, Joe | ResCap | |
| Persinger, Kevin | RFC | Trading Analyst |
| Pio, Nora | GMACM | Credit Risk |
| Polsfut, Dean | RFC | Assetwise |
| Pressman, Micki | GMACM | Operations Credit Risk, VP |
| Proechel, Lonnie | RFC | SF Asset Specialist |
| Quaresima, Bev | GMACM | Government Insuring |
| Redmond, James | | |
| Reichel, Laura | GMACM | Assetwise v. Engenious |
| Renzi, Anthony | | |
| Robinson, Sharon | GMACM | Voice of the Customer, Director |
| Roth, Jesse | RFC | Structured Finance, Asst. Deal Manager |

4

ny-1100227

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| Ruckdaschel, John | GMACM | Associate General Counsel |
| Ruhlin, Joe | | |
| Rupley, John | GMAC Bank | Sr. Trust officer |
| Russell, Don | RFC | Capital Markets National Client Manager |
| Scarseth, Michael | RFC | Structured Finance |
| Scholtz, Eric | RFC | Capital Markets Executive V.P. to 3/07 |
| Schrader, Ann | GMACM | Servicing |
| Schroer, Dan | RFC | Director/Capital Markets Transaction Manager |
| Scott, Debra | GMAC Bank | Bank Administration |
| Sullivan, Paul | GMACM | Mortgage Fraud Risk Operations |
| Sheedy, Jane | RFC | Product & Business Strategy Management Specialist in Charge of Client Guide Mgmt. |
| Siats, Ward | RFC | Head Trader |
| Simon, Jason | RFC | Settlement Group |
| Spindel, Kenneth | | |
| Steffes, Marguerite | RFC | SF, Assistant Deal Manager |
| Steinhagen, Julie | RFC | Capital Markets/ Investor Relations |
| Stenger, Thomas | | |
| Stewart, Damuel | GRS | GRS |
| Sweeny, Len | GMAC Bank | Business Credit Management |
| Taylor, Patty | GMACM | Structured Finance |
| Thompson, Will | RFC | Director of Quality Audit |
| Torborg, Randy | RFC | Assetwise |
| Trask, Donna | GMACM | CFP Business Program Manager |
| VanZyl, Pieter | RFC | Capital Markets/ Investor Relations |
| Wagner, Josie | RFG | QC Manager / Consumer Lending |
| Walker, David | ResCap | |
| West, Pam | ResCap | Director |
| Westman, Barbara | ResCap | |
| Whealdon, Dorian | RFC | Repurchase Mgmt., Investor Repurchases |

5

| Custodian | Entity | Role/Responsibility |
|---|---|---|
| White, Mark | RFC | SF (supervised asset specialists) |
| Whitlinger, Jim | ResCap | CFO (Former) |
| Wiebe, Marilyn | HFN | National Underwriting |
| Wiggins, Jennifer*[+] | RFC | Structured Finance (Pooling) |
| Williams, Cathy | GMACM | Quality Control /Lendscape |
| Winterberger, Barb | GMACM | Correspondent and Consumer Underswriting |
| Witten, Tim | RFC | Master Servicing |
| Wold, Diane[#] | RFC | Director of Structured Finance |
| Yang, Chun* | GMACM | Corporate Finance |
| Young, Jim[+] | RFC | CFO |
| Young, Sue | GMACM | Underwriting |

6

# EXHIBIT E

**Examiner Production Search Terms**

Acquisition
administrative services
Allocat*
(ally OR AFI) w/10 guarant*
arm's length
Bank and (holding or trans* or equity or sale or sell* or restructur*)
Bankruptcy w/25 (protection OR filing OR strategy OR plan)
Bond and (pay* or due or exchange)
Bond exchang*
(Broker-dealer or broker/dealer or GRS or RFS) and (sale or sell* or trans* or assign*)
Bullshit
call report
(Canadian or ResMor) and (sale or sell* or trans* or assign* or equity or purchase)
Centerview
Cerberus
Certificate w/10 (borrow* OR compliance OR covenant)
(Consent or Settlement) and (DOJ or Fannie or Freddie or Ginnie or GSE)
Credit w/10 facilit*
Debt*
Director and (quit or resig* or replac* or hire or compensat*)
Dividend w/10 (GMAC or operating agreement or tax)
earnings call
equitable subordination
equity purchase
("European mortgage" OR "mortgage platform") AND Fortress
Exchange Agreement
Factoring w/10 (agreement or arrangement or facility)
Fairness letter
Fairness opinion
fake
FDIC
Federal Deposit Insurance Corp*
(Foreign exchange or interest rate) and hedging and investment management
Fraud
Fraud*
Funding w/10 facilit*
Gemini
Gibbs w/3 Bruns
gibbsbruns
Global Restructuring
GMAC w/10 firewall
Greene
(Healthcare or health care) and (sale or sell* or trans* or assign* or purchase or GMAC)
Hedg*

1

IB
Ilany
Indemni* AND (servicing OR subservicing OR repurchase OR Fannie OR Freddie OR GSE)
Indemni* w/25 (officer or director)
Insolven*
Inter-company or intercompany
Inter-party or interparty
(investigatg* OR valuation OR reserve* OR allocate*) w/25 (robo* OR MERS OR MERSCORP
OR monocline OR MBS OR RMBS OR repurchase OR repo)
Kelley w/3 Drye
kelleydrye
Kirkland
Lazard
Leverag*
Liabilit*
Line of credit or LOC
Mack
Management Agreement
master mortgage w/5 purchase w/5 agreement
Melzer
Membership interest
Mitchell and (litigation bond or restricted cash or litigation)
MMLPSA
(Model home or lot option) and (sale or sell* or trans* or assign* or purchase or auction or
CMH)
Morgan Stanley
morganstanley
Morrison w/3 Cohen
Morrisoncohen
mortgage insurance and rescind
mortgage loan purchase and sale
("mortgage loan sell process" OR "mortgage loan sale process") w/10 agreement
MSR
National Motors Bank FSB
Net Funding
Noteholder w/10 (settlement or agreement)
Offering memorand!
O'Melveny
OMG
Open Market Repurchase or OMR
Operating Agreement
oshr
Otto
Pentalpha
Phony
Pipeline

Pledge w/2 Agreement
Pohl
Preference and void*
Preferred member
Price Waterhouse
Project Boardwalk
Project HMO
Project Sunshine
Puntus
Purchase and Assumption Agreement
PWC
Rating* w/10 (S&P OR standard poors OR moody or fitch)
R&W
Receivable*
recharacteri*
Regulation W
Rep* w/10 warrant*
ResCap and (sale or sell* or trans* or assign* or restructur* or note* or exchang*)
ResCap and assign*
ResCap and exchang*
ResCap and note*
ResCap and restructur*
ResCap and sale
ResCap and sell*
ResCap and trans*
Resort finance
Resort w/10 (sale or sell* or trans* or assign*)
Revolv* w/10 (loan or GMAC or RFC or Mortgage)
RFC Resort Funding
(RMBS or PLS) w/10 (trust or settlement)
Ropes w/3 Gray
ropesgray
Scam
Schulte
Scout
SEC and De-register
Section 23B
Secur* w/10 (agreement or lending or loan or credit or facility)
(sell OR sale OR transaction) and "Fortress Investment Group"
(Senior Secured or Junior Secured) and Note
Servicing Advance w/10 Fannie Mae
Servicing Agreement
Servicing rights
Sham
Shared Services
Solven* w/10 anal*

SSA
stalking horse
Subservicing Agreement
Swap
Swingline
Talcott
TARP and (government or reserve or FRB or Fed)
Tender offer
(Thomas or Tom) w/5 Jacob
thrift financial report
Total Net worth or TNW
Troubled Asset Relief
Undercapital*
WTF

**JSN Adversary Proceedings Search Terms**

1.     3d lien
2.     3rd lien
3.     Adequate protection
4.     AFI /s letter of credit
5.     AFI /s LOC
6.     Ally /s letter of credit
7.     Ally /s LOC
8.     Ally /s Revolver
9.     APA
10.    Asset Purchase Agreement
11.    Avoidance
12.    Berkshire
13.    Bilateral Facilit!
14.    Blanket
15.    BMMZ
16.    Cash Collateral
17.    CFDR
18.    Chapter 5
19.    Chapter Five
20.    Citi /s repo
21.    Citi /s repurchas!
22.    Collateral /p allocate!
23.    Collateral /p valu!
24.    Collateral tracking database
25.    Debt /s exchang!
26.    Default interest
27.    Default rate
28.    Diminution
29.    DIP Order
30.    Examiner

4

31. Exchange /s offer!
32. Exclud! /s collateral
33. General intangible
34. Goldman /s repo
35. Goldman /s repurchas!
36. Gonzalez
37. Goodwill
38. Improper /3 release
39. Insolv!
40. JSB
41. JSN
42. Junior Secured Note!
43. Junior! /s holder!
44. Legacy Sale
45. Maintain /3 collateral
46. Manage /3 collateral
47. Ocwen
48. OID
49. Original Issue Discount
50. Over! /2 secured
51. Peck
52. Platform Sale
53. Pledg! assets
54. Pledg! collateral
55. Pledg! mortgage!
56. Postpetition interest
57. Post-petition interest
58. PPI
59. Preference
60. Priority /s lien!
61. Proper! s/ releas!
62. Recharacteriz!
63. Releas! /s collateral
64. Releas! /s lien!
65. Releas! /s mortgage!
66. Repo /s loan!
67. Residual value
68. Secured bond
69. Secured note
70. Secured noteholder
71. Shared services /s Ally
72. Solven!
73. Stipulation!
74. Subcon
75. Substantive consolidation
76. Third lien

5

77.    Under! /2 secured
78.    Valu! /2 collateral
79.    Waive! /s lien!
80.    Walter

"bilateral facility"
"bilateral facilities"
DIP Order
stipulation!
release! /5 lien
release! /5 mortgage
BMMZ
"residual value"
Goldman /5 repo
Goldman /5 repurchase
Citi /5 repurchase
Citi /5 repo
priority /5 lien
preference
solven!
insolven!
"collateral tracking database"
"exchange offer"
OID
"original issue discount"
AFI /5 "letter of credit"
AFI /5 "LOC"
Ally /5 "letter of credit"
Ally /5 "LOC"
holder! /s junior
"JSN"
oversecured
undersecured
"secured note"
"secured bond"
"secured bondholder"
JSB
"third lien"
"3rd lien"
"3d lien"

ny-1100227