Hearing Date and Time:  September 11, 2013 at 10:00 a.m. (ET)
Objection Deadline:  August 29, 2013 at 4:00 p.m. (ET)

**McKENNA LONG & ALDRIDGE LLP**
230 Park Avenue, Suite 1700
New York, New York 10169
Telephone:  (212) 905-8300
Facsimile:  (212) 922-1819
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
cgraham@mckennalong.com
akaufman@mckennalong.com

303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198
David E. Gordon, Esq.
dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation
and Impac Mortgage Holdings, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF THE IMPAC COMPANIES TO DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING RELATED AGREEMENTS WITH IMPAC FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.**

Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "Impac"), by and through their undersigned counsel, hereby make and file this limited objection (the "Objection") to the Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing Related Agreements with Impac Funding Corporation and Impac Mortgage

Holdings, Inc., filed by Residential Capital, LLC et al. (the "Debtors") on August 19, 2013 [Docket No. 4744] (the "Motion"). In support of this Objection, Impac states as follows:

## PRELIMINARY STATEMENT

1. While Impac does not oppose the assumption and assignment to Ocwen Loan Servicing, LLC ("Ocwen") of the Excluded Agreements[1] *per se*, Impac objects to certain material terms and conditions under which Debtors propose to effect the assignment, and to the Debtors' proposed Cure Amount.

2. Impac objects to the terms and conditions under which Debtors propose to effect the assignment because Debtors: (1) seek to immediately enjoy the benefits of assumption without committing to also assume the burdens of assumption by either (i) paying the Cure Amount to Impac simultaneously with assumption or (ii) irrevocably escrowing the disputed Cure Amount pending resolution of the cure dispute; (2) purport to retain the right to decide to reject the Excluded Agreements after assumption and after confirmation of the Plan in violation of Section 365 of the Bankruptcy Code; and (3) propose to expunge Impac's $8 million unsecured claim.

3. Impac further objects to Debtors' proposed Cure Amount because it does not include: (1) at least $2,562,255.93 in damages for breaches of the Excluded Agreements by Debtors and by Ocwen; and, (2) Impac's attorneys' fees and expenses.

4. To the extent that the foregoing objectionable provisions are not remedied, Impac respectfully requests that the Motion be denied.

## BACKGROUND

5.     On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors continue to operate their business and manage their affairs as debtors and debtors-in-possession. On May 16, 2012, the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors (the "Committee").

6.     On July 3, 2012, the Debtors and Committee filed their Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors [Docket No. 4153] (as amended, the "Plan"). The Plan provides, among other things:

> The Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the Effective Date, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease no later than thirty days after a Final Order determining a Cure Claim greater than that proposed by the Debtors.

(Plan at 134 (emphasis added)). The Confirmation Hearing for the Plan is scheduled for November 19, 2013.

7.     Impac Funding Corporation is a creditor of debtor GMAC Mortgage, LLC ("GMAC") and holds a claim against GMAC in the amount of $8,000,000 [Claims Register, Claim No. 4086] (the "Impac Claim"). Impac is also a party to several executory contracts (the "Agreements") with GMAC relating to the servicing of certain residential mortgage loans (the "Loans"), pursuant to which Impac Funding Corporation acts as "Master Servicer" and GMAC acts as "Sub-Servicer" of the Loans.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

- 3 -

8. While certain of the Agreements have been assumed by the Debtors and assigned to Ocwen (the "Prior Assignment"), several of the Agreements were excluded from the Prior Assignment, which agreements the Debtors now seek to assume and assign to Ocwen via the Motion (the "Excluded Agreements"). In addition, there are two Agreements that were omitted from the Prior Assignment and are not included in the Agreements that Debtors propose to assign to Ocwen via the Motion (the "Omitted Agreements"). (Motion at 5-6, ¶ 12).

9. Despite the exclusion of the Excluded Agreements from the Prior Assignment, Ocwen has been sub-sub-servicing the Loans associated with the Excluded Agreements pursuant to a subservicing agreement by and among certain of the Debtors and Ocwen dated February 15, 2013 (the "Subservicing Agreement"). (Motion at 3, 6).

10. As set forth in the Declaration of David Upton attached hereto as "**Exhibit 1**", numerous defaults (the "Defaults") remain uncured in relation to the Excluded Agreements. Attached hereto as "**Exhibit 2**" is a chart (the "Default Calculation") demonstrating that the Defaults currently amount to no less than $2,562,255.93.[2]

11. In the Motion, the Debtors request entry of an order "authorizing the Debtors to assume and assign the Excluded Impac Agreements to Ocwen" and expunging the Impac Claim". (Motion at 7). The Debtors have set the Motion down for hearing on September 11, 2013. Notably, the Debtors have not agreed to pay any cure to Impac in connection with the relief that may be obtained at the September 11 hearing and instead "reserve their right to adjourn the

---

[2] Impac is still in the process of reviewing its files for documents and information relevant to the Default Calculation in order to ensure that the Default Calculation is up to date, complete, and accurate. Impac believes that the Debtors and Ocwen have documents and information in their possession, custody, or control that is relevant to the Default Calculation. Also, several defaults are ongoing and, therefore, damages are continuing to accrue. In addition, new defaults are continuing to occur. Impac reserves the right to update, modify, increase, and amend the Default Calculation to assert additional defaults and damages due and owing under the Excluded Agreements as such defaults and damages become known.

hearing on this Motion with respect to the Cure Amount and request . . . that the Court determine the Cure Amount at a subsequent hearing . . . ." (Id.). The Proposed Order attached to the Motion provides that "[t]his Order resolves all issues relating to assumption and assignment of the Excluded Impac Agreements other than the Actual Cure Amount." (Motion, Exhibit 5 at 2). Paradoxically, while requesting that the Court immediately approve the assumption and assignment of the Excluded Agreements but defer any issues relating the Cure Amount, in the Motion the Debtors reserve the right "to elect not to assume and assign the Excluded Impac Agreements" in the event that the Cure Amount proves to be unacceptable to the Debtors. (Id.).

## ARGUMENT

12.     The Motion seeks inappropriate and impermissible relief because Debtors: (1) seek to immediately enjoy the benefits of assumption without committing also to assume the burdens of assumption by either (i) paying the Cure Amount to Impac simultaneously with assumption or (ii) irrevocably escrowing the entire disputed Cure Amount pending resolution of the cure dispute; (2) purport to retain the right to decide to reject the Excluded Agreements after assumption and after confirmation of the Plan in violation of Section 365 of the Bankruptcy Code; and (3) propose to expunge Impac's $8 million unsecured claim.

13.     Further, the Debtors' proposed Cure Amount of $287,740.04 is inadequate because it fails to account for (1) the at least $2,562,255.93 in damages suffered for breaches of the Excluded Agreements, and (2) Impac's attorneys' fees and expenses.

### A.     The Motion Seeks Inappropriate and Impermissible Relief

14.     The Motion seeks inappropriate and impermissible relief because Debtors: (1) seek to enjoy immediately the benefits of assumption without committing also to assume the burdens of assumption by either (i) paying the Cure Amount to Impac simultaneously with

- 5 -

assumption or (ii) <u>irrevocably</u> escrowing the disputed Cure Amount pending resolution of the cure dispute; (2) purport to retain the right to decide to reject the Excluded Agreements after assumption and after confirmation of the Plan in violation of Section 365 of the Bankruptcy Code; and (3) propose to expunge Impac's $8 million unsecured claim.

    i.    <u>The Debtors Seek to Immediately Obtain the Benefits of Assumption and Assignment of the Excluded Agreements Without Committing to Also Satisfying Their Obligations Under the Excluded Agreements.</u>

15. In the Motion, the Debtors seek to assume and assign the Excluded Agreements to Ocwen on September 11, 2013, while reserving the right to adjourn to a later date the hearing on the Motion <u>solely</u> with respect to the Cure Amount. (Motion at 7).

16. The Debtors desire to assume and assign <u>immediately</u> the Excluded Agreements on September 11 because they claim to obtain an <u>immediate</u> financial benefit from doing so. The Debtors state that "it is no longer practical to delay the realization of the value to be derived from the assignment of the Excluded Impac Agreements, pending a consensus on a mutually agreeable cure amount." (Motion at 3). Further, the Declaration of Teresa Rae Farley, attached to the Motion as Exhibit 4 (the "<u>Farley Declaration</u>"), states that "[t]he transfer of the Excluded Impac Agreements to Ocwen pursuant to the APA is estimated to yield substantial value for the Debtors' estates". (Farley Declaration at 4).

17. While the Debtors claim to benefit immediately from the assumption and assignment of the Excluded Agreements, Impac's cure payment will be delayed indefinitely and potentially avoided completely. The Motion provides that 100% of the Cure Amount will remain unpaid until such time as either: (1) the Court resolves the dispute; or (2) the Debtors and Impac settle the dispute. (Motion at 7). During that time, the Debtors will have enjoyed the financial benefits of assumption of the Excluded Agreements and assignment of the same to

Ocwen, while being obligated for none of the concomitant cure obligations due to Impac. Moreover, the Debtors are reserving the right -- post-confirmation – to decide to <u>reject</u> the Excluded Agreements and ultimately pay <u>no</u> <u>cure</u> if they are unhappy with the Cure Amount adjudicated by the Court. Such patently one-sided treatment is inconsistent with Section 365 of the Bankruptcy Code.

18. The Bankruptcy Code requires that a debtor in possession assume an executory contract "*cum onere*," i.e., with all its burdens. <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 531-32 (1984). "'An executory contract cannot be rejected in part, and assumed in part. The debtor, or the trustee, is not free to retain the favorable features of the contract and reject only the unfavorable ones. Assumption carries with it all of the burdens as well as the benefits of the contract.'" <u>In re TSW Stores of Nanuet, Inc.</u>, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) (quoting 8 Collier on Bankruptcy ¶ 3.15[7] at 205-06 (J. Moore, 14th ed. 1978)). To the extent there are preexisting defaults under an executory contract, the debtor must cure such defaults, both prepetition and postpetition, in order to assume the contract.

19. The Debtors cannot obtain the benefits of assumption and assignment of the Excluded Agreements without also assuming the burdens – namely, their obligation to pay the full cure to which Impac is entitled as a result of the Defaults. Rather than deferring their cure obligations indefinitely while retaining the ability to decide later to reject the Excluded Agreements and pay no cure, the Debtors must either: (1) wait to assume the Excluded Agreements and assign them to Ocwen until such time as the Cure Amount is finally adjudicated and actually paid to Impac; or (2) <u>irrevocably</u> escrow the full disputed cure amounts, while immediately paying all undisputed amounts to Impac, and commit to payment of whatever Cure Amount the Court ultimately adjudicates without retaining the right to later "reject" the Excluded

Agreements and pay no cure. Any other treatment is patently unfair and allows the Debtors to obtain the benefits of assumption while avoiding the burdens in violation of Section 365 of the Bankruptcy Code.

20. The Motion is internally inconsistent and seeks to obfuscate the one-sided nature of the relief Debtors are requesting. In the Motion, Debtors insist that "[f]or the avoidance of doubt, the assignment of the Excluded Impac Agreements to Ocwen will not occur until the Cure Amount has been conclusively determined . . . ." (Motion at 7). While Impac agrees that the Excluded Agreements should not be assumed and assigned until the Cure Amount is actually paid to Impac, the Debtors seek to receive the immediate benefit of assumption and assignment without paying the Cure in the form of payments from Ocwen as soon as the Proposed Order is entered by the Court. Meanwhile, the Proposed Order attached to the Motion states that "[t]his Order resolves all issues relating to assumption and assignment of the Excluded Agreements other than the Actual Cure Amount." (Motion, Exhibit 5 at 2). If it is truly Debtors' intention that the assumption and assignment will not occur until such time as the Cure is paid, Impac respectfully states that no order on the Motion is necessary until such time as all issues with respect to assumption and assignment, including the Cure Amount, are finally adjudicated on the merits.

        ii.    <u>Section 365 of the Bankruptcy Code Prohibits Debtors from Retaining the Right to Reject the Excluded Agreements After Confirmation of the Plan.</u>

21. In addition to impermissibly seeking to obtain the benefits of assumption of the Excluded Agreements without committing to satisfaction of the burdens of such assumption, the Debtors impermissibly seek the right to decide to reject the Excluded Agreements post-confirmation. To the extent the Motion seeks to preserve the Debtors' rights to reject the

- 8 -

Excluded Agreements beyond confirmation of the Plan, the relief sought in the Motion is prohibited by Section 365 of the Bankruptcy Code.

22.     While the Motion requests that the Court grant the Debtors permission to assume and assign the Excluded Agreements to Ocwen on September 11, 2013, the Debtors seek to adjourn solely that portion of the Motion relating to payment of the Cure to Impac beyond that date and potentially beyond confirmation of the Plan. (Motion at 7).  Likewise, the Debtors' Plan provides: "If an objection to the proposed Cure Claim is sustained by the Bankruptcy Court, the Plan Proponents, prior to the Effective Date, or the Liquidating Trust, following the Effective Date, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it . . . ." (Plan at 134) (emphasis added). The Confirmation Hearing on the Plan is scheduled for November 19, 2013. Under the procedures set forth in the Plan and Motion, the Debtors could reject the Excluded Agreements after that date.

23.     Section 365 of the Bankruptcy Code, governing executory contracts and unexpired leases, provides that in a Chapter 11 case, unless the court orders the debtor to assume or reject earlier, the debtor must decide whether to assume or reject an executory contract "at any time before the confirmation of a plan". 11 U.S.C. § 365(d)(2) (emphasis added). In a Chapter 11 case "assumption or rejection must take place prior to confirmation of a plan, unless the court sets an earlier deadline." In re Resource Tech. Corp., 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000).

24.     The United States Supreme Court has twice held that this deadline is mandatory – confirmation of a plan is the final deadline for a Chapter 11 debtor to decide whether to assume or reject an executory contract. See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 45 (2008) ("We agree with Bildisco's commonsense observation that the decision whether to reject a contract or lease must be made before confirmation."); NLRB v. Bildisco &

Bildisco, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."). The U.S. Court of Appeals for the Second Circuit has also held that "[t]he plain language of the Code permits a chapter 11 trustee (and, by extension through § 1107, a debtor-in-possession) to assume or reject the executory contract 'at any time before the confirmation of a plan.'" In re Penn Traffic Co., 524 F.3d 373, 378-79 (2d Cir. 2008); accord In re Dana Corp., 350 B.R. 144, (Bankr. S.D.N.Y. 2006) ("'[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.'") (citations omitted).

25. To the extent the Motion permits the Debtors to make decisions on whether to assume or reject the Excluded Agreements <u>after</u> confirmation, the Motion and the Plan violate the plain language of Section 365(d)(2) of the Bankruptcy Code, which has been held under binding Supreme Court and Second Circuit precedent. The Debtors must commit <u>irrevocably</u> to curing and assuming the Excluded Agreements on or before the Confirmation Date as required by the Bankruptcy Code and to payment of whatever cure is adjudicated by the Court without retaining the ability later to decide to reject the Excluded Agreements and avoid paying the full Cure Amount. To the extent the Motion seeks to do otherwise, it should be denied.

        iii.     <u>Expungement of Impac's $8 Million Unsecured Claim in Not Warranted.</u>

26. The Proposed Order attached to Debtors' Motion provides that "[p]ayment of the cure amount . . . to Impac will be in full and final satisfaction of any and all of Impac's claims against the Debtors' estates, including those included in Impac's Proof of Claim. Upon payment

- 10 -

of the Actual Cure Amount, the Impac Proof of Claim shall be deemed expunged." (Motion, Exhibit 5 at 2).

27.  Expungement of the $8 million Impac Claim is not warranted. Impac is a party to several Agreements with GMAC relating to the servicing of residential mortgage loans. The Impac Claim relates to prepetition defaults by GMAC under <u>all</u> of these Agreements. The Motion, however, relates to only the Excluded Agreements. Resolution of the Motion will result only in a cure of Debtors' defaults under the Excluded Agreements and not any of the other Agreements.

28.  While certain of the other Agreements were assumed by the Debtors and assigned to Ocwen through the Prior Assignment, no cure was paid to Impac in connection with the Prior Assignment. Further, there are two Agreements, the Omitted Agreements, that were omitted from the Prior Assignment and are apparently not included in the Agreements that Debtors propose to assign to Ocwen via the Motion. (Motion at 5-6, ¶ 12). The Omitted Agreements have not been assumed and cured and may never be assumed and cured. The Debtors' defaults under the Omitted Agreements comprise part of the Impac Claim. Expungement of the Impac Claim in its entirety would impermissibly eliminate Impac's properly asserted claims for damages under the Omitted Agreements and is therefore not appropriate in connection with the Motion.

### B.  **Debtor's Proposed Cure Amount is Inadequate**

i.  <u>The Proposed Cure Amount Does Not Compensate for the Full Extent of the Breaches of the Excluded Agreements.</u>

29.  Debtors assert that the amount required to cure the breaches of the Excluded Agreements is "approximately" $287,740.04. (Motion at 7). To support their proposed cure

amount, Debtors rely upon the Farley Declaration, which explains Debtors' proposed cure amount in a single sentence: "Based on research performed by Ocwen and the Debtors on the loan records and related analysis, the Debtors have estimated the cure amount associated with the Excluded Impac Agreements to be approximately $287,740.04." (Farley Declaration at 4). The Farley Declaration contains no support for the Debtors' calculations and does not explain how the Debtors conducted their analysis, describe the defaults giving rise to the cure amount, set forth which loans are associated with the defaults, state when the defaults occurred, and the like.

30.   As set forth in the Upton Declaration, the defaults under the Excluded Agreements currently total no less than $2,562,255.93. Unlike the barebones Farley Declaration, the Upton Declaration and the Default Calculation set forth in detail the bases for Impac's asserted Cure Amount, including by itemizing the specific Defaults, the date of the Default, the nature of the Default, and the calculated amount of damages attributable to each such itemized Default. Unlike Debtors' estimated Cure Amount, the Cure Amount set forth in Upton Declaration is demonstrable, credible, complete, and supported by specific data and facts.

31.   Debtors cannot assume the Excluded Agreements without curing all Defaults by paying no less than $2,562,255.93, plus Impac's attorneys' fees and expenses as described below. Because Debtors' do not propose to do so, the Motion should be denied or the relief requested therein delayed.

      ii.    <u>The Proposed Cure Amount Also Does Not Compensate Impac for its Attorneys' Fees and Expenses as Required under the Excluded Agreements.</u>

32.   In addition to failing to cure the numerous Defaults under the Excluded Agreements, Debtors' proposed Cure Amount fails to compensate Impac for its attorneys' fees and expenses incurred in connection with the Defaults, which GMAC is required to pay pursuant

to a series of agreements between Impac and GMAC relating to the initial securitization of the Loans underlying the Excluded Agreements.

33. Impac's transactions with GMAC occurred in two stages. First, Impac transferred its entire interest in the Loans, including the servicing rights associated with the Loans, to GMAC pursuant to a series of Purchase Agreements (the "Purchase Agreements"). Roughly one month later and following the securitization of the Loans, GMAC transferred the Loans back to Impac but retained the servicing rights pursuant to a series of Re-Purchase Agreements (the "Re-Purchase Agreements") and Confirmations (the "Confirmations").

34. In the Purchase Agreements, the Loans were transferred from Impac to GMAC with Impac acting as interim servicer for the Loans. The Purchase Agreements then provide that after the Loans are securitized and transferred back to Impac, GMAC retained the servicing rights for the Loans and agreed to service the Loans pursuant to the terms and conditions set forth in the Impac Servicer Guide (the "Impac Guide").[3]

35. Under the Purchase Agreements, Re-Purchase Agreements, Confirmations, and Impac Guide, GMAC is required to indemnify Impac for its attorneys' fees and expenses incurred in connection with remedying GMAC's Defaults. Likewise, GMAC is also required to indemnify Impac for its attorneys' fees and expenses incurred in connection with Ocwen's Defaults.

36. All such fees and expenses must be paid to Impac by the Debtors as part of the Cure Amount for the Excluded Agreements, and the Debtors' failure to provide for these fees and expenses requires denial of the Motion.

---

[3] The Purchase Agreements, Re-Purchase Agreements, Confirmations, and Impac Guide are voluminous and in the Debtors' possession. As such, they are not attached to this Objection. Impac will provide copies to the Court upon request.

## **NOTICE**

37. Notice of this Objection shall be provided to the following parties: (a) counsel to the Debtors; (b) the Office of the United States Trustee for the Southern District of New York; (c) the Office of the United States Attorney General; (d) the Office of the New York State Attorney General; (e) the Office of the U.S. Attorney for the Southern District of New York; (f) counsel to Ally Financial, Inc.; (g) counsel for the committee of unsecured creditors; (h) counsel for Ocwen Loan Servicing, LLC; (i) counsel for Berkshire Hathaway Inc.; (j) the Internal Revenue Service; and (j) the Securities and Exchange Commission.

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, Impac respectfully requests that the Motion be denied unless the Debtors address the deficiencies identified in this Objection.

Dated:  New York, New York
       August 29, 2013.                   MCKENNA LONG & ALDRIDGE LLP

/s/ Alan F. Kaufman
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
230 Park Avenue, Suite 1700
New York, New York 10169
Telephone: (212) 905-8300
Facsimile: (212) 922-1819
Email: cgraham@mckennalong.com
       akaufman@mckennalong.com

and

David E. Gordon, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Email: dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation and Impac Mortgage Holdings, Inc.*