# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF DAVID A. UPTON IN SUPPORT OF LIMITED OBJECTION OF THE IMPAC COMPANIES TO DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING RELATED AGREEMENTS WITH IMPAC FUNDING CORPORATION AND IMPAC MORTGAGE HOLDINGS, INC.**

I, David A. Upton, hereby declare as follows:

1. I am the Manager, Liquidation Claims for the Impac companies. I have served in my present capacity since the latter part of 2011. In my capacity as Manager of Liquidation Claims, I am responsible for, among other things, monitoring the activities of the servicers and sub-servicers (the "Servicers") that service residential mortgage loans (the "Loans") and ensuring that such Servicers comply with their contractual obligations by servicing such loans in accordance with applicable servicing standards.

2. I am authorized to submit this declaration (the "Declaration") in support of the Limited Objection (the "Objection") of Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "Impac") to the Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing Related Agreements with Impac Funding Corporation and Impac Mortgage Holdings, Inc., filed by Residential Capital, LLC et al. (the "Debtors") on August 19, 2013 [Docket No. 4744] (the "Motion").[1]  Except as otherwise

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion and/or Objection.

indicated herein, all facts set forth in this Declaration are based on my personal knowledge of Impac's business and operations, information learned from my review of relevant information, and analysis that I have received from employees of Impac and members of Impac's management knowledgeable about Impac's business and operations. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

3. Impac is a party to several executory contracts with debtor GMAC Mortgage, LLC ("GMAC") relating to the servicing of certain residential mortgage loans (the "Agreements"). I understand that, while certain of the Agreements have been assumed by the Debtors and assigned to Ocwen Loan Servicing, LLC ("Ocwen") through the Prior Assignment, several of the Agreements were excluded from the Prior Assignment (the "Excluded Agreements"). My understanding is that, in the Motion, the Debtors seek to assume the Excluded Agreements and assign them to Ocwen.

4. For the loan pools at issue in relation to the Excluded Agreements, Impac Funding Corporation serves as Master Servicer, with GMAC acting as Sub-Servicer. I understand that, despite the exclusion of the Excluded Agreements from the Prior Assignment, since the Prior Assignment, Ocwen has been sub-sub-servicing the Loans associated with the Excluded Agreements pursuant to a subservicing agreement by and among certain of the Debtors and Ocwen dated February 15, 2013.

5. In connection with the Objection, I have performed an analysis of defaults and servicing errors relating to certain of the Loans associated with the Excluded Agreements (the "Defaults"). The results of this analysis are set forth in a spreadsheet attached to the Objection as "**Exhibit 2**" and referred to in the Objection as the "Default Calculation". As set forth in the Default Calculation, as of the filing of this Declaration, there are at least $2,562,255.93 in

damages as a result of known Defaults. The Defaults listed in the Default Calculation include those that: (1) occurred and were addressed solely during the period when GMAC sub-serviced the Loans; (2) occurred during the period when GMAC sub-serviced the Loans but were addressed during the period when Ocwen sub-sub-serviced the Loans; (3) occurred during the period when GMAC sub-serviced the Loans but remain unresolved; (4) occurred and were addressed during the period when Ocwen sub-sub-serviced the Loans; and, (5) occurred during the period when Ocwen sub-sub-serviced the Loans but remain unresolved.

6. Each row of the Default Calculation lists a Loan associated with one of the Excluded Agreements. Each column of the Default Calculation provides specific information relating to the Loan and Default. Columns "A" and "B" list the security associated with the Loan and the number used by Impac to track the Loan. The purpose of these columns is to allow the parties to identify the specific Loans that are the subject of the Default Calculation. To protect the borrowers' privacy, borrower names, loan numbers, and addresses have been abbreviated and/or redacted.

7. Columns "C" through "L" of the Default Calculation provide information regarding the Default and how damages relating to the Default were calculated. Typical Defaults include, for example, delays in consummating foreclosure sales beyond the period allowable under the applicable servicing standard, delays in recording deeds and other documents generated in connection with foreclosure sales, failure to remit borrower payments or foreclosure proceeds, failure to file required affidavits, improper bidding at foreclosure sales, and the like. It is standard in the residential mortgage industry to calculate the damage to the noteholder by using a *per diem* measure of damages, where appropriate.

8.      Column "C", entitled "Servicer Issue", provides basic information regarding the nature of the Default. Column "D" sets forth the unpaid principal balance of the Loan (or other applicable figure) as to which the Default occurred, while Column "E" sets forth the interest rate under the Loan. Column "F" sets forth the applicable *per diem* rate of interest for the Loan (rounded down to the nearest cent), which is measured by multiplying the principal balance (or other applicable figure) by the interest rate and dividing the product by 365 (the number of days in a year).

9.      Columns "G" through "I" quantify in days the time delay caused by the Default. Column "G" sets forth the last date upon which a sub-servicer action was required to be taken in order to avoid a default and damages.[2] Column "H" sets forth the date when the relevant action was actually taken (as addressed below, however, some Defaults have still not been rectified and remain ongoing), and Column "I" sets forth the number of days past due.[3] The number of days in Column "I" is then multiplied by the *per diem* rate for the Loan to arrive at the gross damages (plus any applicable damages), which are set forth in Column "J". Column "K" reflects prior recoveries and/or offsets. The currently calculated amount of outstanding net damages for each Loan is set forth in Column "L" – "Amount Due from Servicer".

---

[2] For several of the Loans, the number of days beyond the acceptable date for taking action is listed as "n/a". This designation indicates that the Default occurred as a result of a one-time event rather than a failure to take an action within an acceptable period of time. Examples of such defaults include bidding errors, failure to name parties in foreclosure actions, overpayments to third parties, and the like.

[3] Several of the Defaults are continuing. For those Defaults, Column "H" of the Default Calculation lists August 29, 2013, the date of the filing of this Declaration, as the remediation date for those Loans. This is in order to indicate that the relevant Default is ongoing as of the date of the filing of this Declaration and has not been rectified. In each instance where a default is ongoing, the entry contained in Column "H" of the Default Calculation is highlighted orange. Damages continue to accrue with respect to these Loans until such time as the Default is rectified. In addition, new Defaults are continuing to be reported and, therefore, the amounts due continues to grow.

- 4 -

10. By my calculations, the amount due for the Loans associated with the Excluded Agreements currently totals at least $2,562,255.93.

11. Impac is still in the process of reviewing its files for documents and information relevant to the Default Calculation in order to ensure that the Default Calculation is up to date, complete, and accurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 29, 2013.

/s/ David A. Upton\_\_
David A. Upton

Manager, Liquidation Claims
The Impac companies