**Hearing Date: September 11, 2013 at 10:00 a.m. (EST)**

Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Paul R. DeFilippo
Randall R. Rainer

*Attorneys for Syncora Guarantee Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No: 12-12020-MG |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**RESPONSE OF SYNCORA GUARANTEE INC. TO DEBTORS'**
**OBJECTION TO PROOF OF CLAIM # 2781 OF SYNCORA GUARANTEE INC.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ...................................................................................................... 4

    I.    The Relevant Agreements and Syncora's Original Proof of Claim. ....................... 4

    II.   Syncora Provides Additional Detail on its Claims in Opposition to the Debtors' Proposed Plan Support Agreement Objection and in Separate Correspondence. .. 7

    III.  The Debtors' Objection to Syncora's Proof of Claim ........................................... 10

    IV.  Syncora's Amended Proof of Claim ..................................................................... 10

ARGUMENT ............................................................................................................................. 11

    I.    Although the Issue Now Should Be Moot Given Syncora's Amended Proof of Claim, Syncora's Original Proof of Claim Was Valid and Proper. ...................... 11

    II.   Syncora's Amended Proof of Claim Sets Forth Greater Particularity Regarding The Obligations in the Transaction Documents and Duties that GMACM Breached ............................................................................................................... 14

    III.  The Debtors' Objection Should be Denied Because the Debtors Have Failed to Meet Their High Burden to Refute The Presumptive Validity of Syncora's Proof of Claim ................................................................................................................. 16

        A.   Syncora Has Stated Valid Claims Arising Out of STACS 2007-1. ......... 17

        B.   Syncora's Claims Arising Out of BSSLT 2007-SV1 And STACS 2007-1 Are Cognizable and Compelling. ........................................................... 18

    IV.  Syncora is Entitled to Obtain Discovery On Its Proof of Claim ........................... 25

CONCLUSION .......................................................................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*AMBAC Assur. Corp. v. First Franklin Fin. Corp.*,
40 Misc. 3d 1214(A) (N.Y. Sup. Ct. NY County July 18, 2013) .......... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Assured Guar. Corp. v. EMC Mortgage, LLC*,
39 Misc. 3d 1207(A) (N.Y. Sup. Ct. NY County Apr. 4, 2013) .......... 24

*Assured v. Flagstar*,
2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 8, 2011) .......... 25

*Assured Guar. Mun. Corp. v. Flagstar Bank*,
892 F. Supp. 2d 596, 607 (S.D.N.Y. 2012) .......... 16

*Bear Stearns Funding Trust v. EMC*,
2013 Del Ch LEXIS 9 (Del. Court of Chancery Jan. 15, 2013) .......... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006) .......... 11

*Bullmore v. Banc of Am. Sec. LLC*,
485 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2007) .......... 16

*Carlton v. Mystic Transp., Inc.*,
202 F.3d 129 (2d Cir. 2000) .......... 16

*Crossroads ABL, LLC v. Canaras Capital Mgmt., LLC*,
35 Misc. 3d 1238(A), 954 N.Y.S.2d 758 (Sup. Ct. 2012) .......... 21, 23

*Crossroads ABL, LLC v. Canaras Capital Mgmt., LLC*,
954 N.Y.S.2d 758, at *3 n.5 (N.Y. Sup. Ct. NY County 2012) .......... 22

*CSI Inv. Partners II, L.P. v. Cendant Corp.*,
507 F. Supp. 2d 384, 424 (S.D.N.Y. 2007) .......... 22

*DeGeorge Fin. Corp. v. Novak*,
2002 U.S. Dist. LEXIS 17621 (D. Conn. July 15, 2002) .......... 17

*Gens v. Resolution Trust Corp.*,
112 F.3d 569, 575 (1st Cir. 1997) .......... 11

*Hooper Associates, Ltd. v. AGS Computers, Inc.,*
74 N.Y.2d 487 (1989) .......... 21, 22, 23

*In re Allegheny Int'l, Inc.,*
954 F.2d 167, 173-74 (3d Cir. 1992) .......... 17

*In re AMR Corp.,*
2013 WL 1155434 (S.D.N.Y. 2013) .......... 25

*In re Cent. Rubber Products, Inc.,*
31 B.R. 865, 870 (Bankr. D. Conn. 1983) .......... 12

*In re Coates,*
292 B.R. 894, 902 (Bankr. C.D. Ill. 2003) .......... 25

*In re DJK Residential, LLC,*
359 B.R. 54 (Bankr. S.D.N.Y.) .......... 11, 12

*In re Great A. & P. Tea Co., Inc.,*
2011 WL 5546954 (S.D.N.Y. 2011) .......... 25

*In re Hemingway Transp., Inc.,*
993 F.2d 915 (1st Cir. 1993) .......... 17

*In re International Match Corporation,*
69 F.2d 73, 76 (2d Cir.1934) .......... 17

*In re Jorczak,*
314 B.R. 474, 481 (Bankr. D. Conn. 2004) .......... 17

*In re marchFirst,*
431 B.R. 436, 443 (Bankr. N.D. Ill. 2010) .......... 11

*In re O'Malley,*
252 B.R. 451, 456 (Bankr. N.D. Ill. 1999) .......... 11

*In re Sacko,*
394 B.R. 90, 99 (Bankr. E.D. Pa. 2008) .......... 25

*In re Today's Destiny,*
2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. Nov. 26, 2008) .......... 12

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,*
39 Misc. 3d 1220(A) (N.Y. Sup. Ct. NY County 2013) .......... 24

*Midland Cogeneration Venture Ltd. v. Enron Corp.,*

419 F.3d 115, 133 (2d Cir. 2005)............................................................................18

*Syncora Guarantee Inc. v. EMC Mortgage, LLC*,
39 Misc. 3d 1211(A), 969 N.Y.S.2d 806 (Sup. Ct. NY County Apr. 15, 2013) ..........23

*WestLB v. BAC Fla. Bank*,
912 F. Supp. 2d 86 (S.D.N.Y. 2012)........................................................................12

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 3001(a) ......................................................................................11

Fed. R. Bankr. P. 3001(f) .......................................................................................16

Fed. R. Bankr. P. 7008 ..........................................................................................11

Fed. R. Bankr. P. 9014(c) ......................................................................................11

Fed. R. Civ. P. 12(b)(6).........................................................................................12

iv

TO:    THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE:

Syncora Guarantee Inc. ("Syncora") submits this response to the Debtors' Objection To

Proof of Claim # 2781 of Syncora Guarantee, Inc. (the "Objection") [Dkt. No. 4632], along with

the supporting Declaration of Randall R. Rainer and the exhibits annexed thereto ("Rainer

Dec."). For its response, Syncora respectfully states as follows:

## PRELIMINARY STATEMENT

1.    Syncora's original proof of claim # 2781 (the "Proof of Claim"), filed prior to the

applicable deadline, asserts claims against Debtor GMAC Mortgage, LLC ("GMACM") relating

to certain RMBS trusts for which GMACM acted as the Servicer of the mortgage loans held in

each trust. Syncora, a "monoline" insurer, issued a financial guaranty insurance policy

("Policy") in respect of each trust insuring the trust's payment of principal and interest to the

holders of more than $800 million worth of mortgage-backed certificates issued by the trusts.

An important condition precedent for Syncora agreeing to insure such payments was GMACM's

covenant to Syncora that GMACM would comply with its obligations as Servicer under the

relevant servicing agreements, thereby helping to ensure and/or maximize monthly mortgage

loan payments by the underlying borrowers, upon which the payments of principal and interest to

certificate holders depended. Thus, GMACM agreed to perform its servicing obligations for the

direct benefit of the certificate holders and Syncora.

2.    However, based upon the shockingly poor performance of each RMBS

transaction and the information available to Syncora at this time (prior to discovery), GMACM

appears to have materially breached its servicing obligations. As a result, GMACM also appears

to have breached its covenants and duties to Syncora to perform such servicing obligations and

now owes Syncora damages and indemnification.

3.    Accordingly, Syncora's original Proof of Claim stated that Syncora may have claims against GMACM arising from the breach of certain obligations under specified transaction documents for each trust. Such agreements include GMACM's servicing obligations. Because Syncora filed its Proof of Claim relatively early in these bankruptcy proceedings, the Proof of Claim states Syncora's claims more generally, much like every other ResCap creditor possessing a contingent, unliquidated claim.

4.    In subsequent correspondence responding to the Debtors' request for more information about Syncora's underlying claims, Syncora reiterated that its claims are based upon breaches by GMACM of its obligations as Servicer under the transaction documents, and Syncora further specified certain provisions of the agreements that GMACM appears to have breached. Syncora also stated the dollar amount of its claims based upon insurance claims paid to certificateholders of certain trusts to date, projected future payouts, and the total amount of loss to the trusts that would have been avoided had GMACM not breached its servicing duties, including the cost of Syncora's reasonable attempt to hedge against the risk of harm that had resulted from GMACM's failure of performance. Syncora's filing and letters did not assert any new or different claim against GMACM, but merely clarified and provided additional specificity for the claims already asserted in Syncora's Proof of Claim.

5.    Notwithstanding the foregoing, any purported lack of particularity or other defect claimed by the Debtors has been remedied further by Syncora's formal amendment to its Proof of Claim, which is being filed concurrently herewith and is annexed to the Rainer Declaration as Exhibit A (the "Amended Proof of Claim"). The amended Proof of Claim plainly relates back to the Proof of Claim at issue and for the reasons discussed herein should equitably be allowed.

2

6.     Moreover, contrary to the Debtors' mischaracterization, Syncora's claims against GMACM based upon GMACM's breaches of certain servicing obligations are not "novel," and in fact assert the same theory of servicer liability that other creditors have asserted in their Proofs of Claims. Indeed, Syncora's servicing-related claims against GMACM are based upon GMACM's legal duties to Syncora as well as its express obligations under the relevant agreements, including GMACM's obligation to alert the Trustee to loans that GMACM's front-line servicing personnel discover breach the loan originator's or seller's representations and warranties regarding borrower creditworthiness and/or underwriting practices. Such claims are not so-called "back-door" repurchase claims (Objection at 12), but rather claims arising *directly* from the Servicer's separate, free-standing obligation to cause repurchase demands to be made. Despite the Debtors' attempt to obfuscate the issues, the Syncora Proof of Claim stands on its own, independent of any repurchase claims and/or litigation that Trustees themselves may be – or as in the case of certain of the subject transactions, may not be – asserting against loan sellers or originators.

7.     Moreover, the Debtors' contention that the alleged Servicer malfeasance lacks a causal link to missed put-back opportunities is confused. Notwithstanding that RMBS Trustees independently have the ability and incentive as a general matter to enforce repurchase remedies, the Trustees are dependent upon transaction parties bringing many such defective loans to their attention. Thus, if Servicers such as GMACM are delinquent in alerting their Trustees to violative mortgage loans, then the Trustees will likely never know of them and the repurchase opportunities are lost forever. Therefore, in the end, the Debtors' Objection fails to offer evidence of any kind in rebuttal to the substance of Syncora's claims, let alone evidence that is "equal in force" to the evidence presented by Syncora, as is required.

3

8.    Finally, Syncora is entitled to obtain discovery from the Debtors and third parties on its claims against GMACM.  Even though Syncora has requested that the Debtors consensually enter into a discovery schedule, the Debtors have denied such request.  On the other hand, Syncora has provided the Debtors with all information they requested.  Accordingly, pursuant to Bankruptcy Rule 9014, Syncora respectfully requests that the Court adjourn any final determination on Syncora's claims until after the parties have had an opportunity to conduct discovery on such claims in advance of an evidentiary hearing to determine whether GMACM breached the Syncora Related Servicing Agreements and the amount of loss suffered by Syncora as a result of those breaches.

## FACTUAL BACKGROUND

I.    **The Relevant Agreements and Syncora's Original Proof of Claim**

9.    Pursuant to certain Policies, Syncora insured the payment of principal and interest on more than $800 million of RMBS pass-through certificates issued by RMBS Trusts for which Debtor GMAC has acted as Servicer, including, Bear Stearns Second Lien Trust 2007-SV1 (the "BSSLT 2007-SV1" or "Bear Stearns" transaction) and SunTrust Acquisition Closed-End Seconds Trust, Series 2007-1 (the "STACS 2007-1" or "SunTrust" transaction) (collectively, the "Syncora Transactions").  Each of the Syncora Transactions has suffered severe defaults of the underlying loans for each of the trusts.  Syncora already has paid approximately $150 million of insurance claims to Certificateholders, and expects to continue paying claims.

10.    On November 7, 2012, Syncora timely filed its Proof of Claim.  The Proof of Claim stated that Syncora "insured payment of principal and interest for the benefit of the holders of certain securities issued by [certain] trusts (the 'Syncora-Related Trusts') that own loans serviced by GMAC."  Proof of Claim ¶ 2.  The "Syncora-Related Trusts" include the

4

BSSLT 2007-SV1 and STACS 2007-1 transactions. *Id.* n.1.[1] According to the Proof of Claim, Syncora's claim against GMACM arose from those rights Syncora held under certain "Trust Documents" that were listed on Exhibit A to the Proof of Claim. Exhibit A to the Proof of Claim listed, among other things, (a) six Trust Documents for BSSLT 2007-SV1, including the Servicing Agreement, dated as of May 1, 2001, as amended by Amendment No. 1, dated as of October 1, 2001, Amendment No. 2, dated as of July 31, 2002 and Amendment No. 3, dated as of December 20, 2005, between EMC Mortgage Corporation and GMACM (the "Bear Stearns Servicing Agreement"); and (b) nine Trust Documents for STACS 2007-1, including the Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp, as depositor, GMACM, as servicer, Wells Fargo Bank, National Association, as master servicer and securities administrator and HSBC Bank USA, as trustee (the "SunTrust Servicing Agreement").

11.     For each Syncora Transaction, the Trust Documents identified in the Proof of Claim also included an Insurance and Indemnity ("I&I") Agreement to which Syncora and GMACM were parties.[2] In each I&I Agreement, GMACM expressly represented, warranted and covenanted to Syncora that GMACM "will" service the subject mortgage loans "in compliance with" the terms of the applicable Servicing Agreement. *See* Bear Stearns I&I § 2.04(f); SunTrust I&I §§ 2.02(a) and (m). Each I&I Agreement also expressly stated that Syncora's issuance of the relevant Policy was "subject to" the condition precedent that GMACM's representation, warranty and covenant to fully perform such servicing obligations was "true and correct." *See*

_____

[1] Although the Greenpoint Mortgage Funding Trust 2006-HE1 ("GP 2006-HE1") transaction also was part of Syncora's Proof of Claim, Syncora is not asserting a claim with respect to GP 2006-HE1 at this time.

[2] *See* for BSSLT 2007-SV1, the Insurance and Indemnity Agreement, dated as of March 30, 2007, among XL Capital Assurance Inc., EMC Mortgage Corporation, SACO I Inc., GMACM and Citibank, N.A. (the "Bear Stearns I&I") and for STACS 2007-1, the Insurance and Indemnity Agreement, dated as of May 15, 2007, among XL Capital Assurance Inc., Suntrust Asset Funding, L.L.C, Suntrust Bank, ACE Securities Corp., GMACM and Wells Fargo Bank, (the "SunTrust I&I," and together with the Bear Stearns I&I, the "I&I Agreements").

Bear Stearns I&I § 3.01(c); SunTrust I&I § 3.01(c). Accordingly, from the outset of each of the Syncora Transactions, GMACM was fully aware that Syncora relied upon, would benefit from, and expected to benefit from GMACM's performance of its servicing obligations under the relevant Servicing Agreements. Otherwise, Syncora would not have issued each Policy.

12.     In addition to making itself liable for damages for any breaches of the I&I Agreements, including the breach of its promise to fully perform each Servicing Agreement, GMACM agreed to indemnify Syncora (*i.e.*, without the need for resort to litigation and a judgment) for "any and all claims, losses, liabilities, . . . costs or expenses . . . of any nature arising out of or relating to the breach by GMACM of" its representation and warranty in Section 2.04 of the I&I Agreement to perform under the Servicing Agreements that result from, *inter alia*, GMACM's negligence or bad faith. *See* Bear Stearns I&I § 3.04(b); SunTrust I&I § 3.04(a).

13.     Based upon the foregoing and other Trust Documents identified in its Proof of Claim, Syncora's Proof of Claim stated that its claims are based upon, inter alia,

Syncora's rights arising out of, arising under, related to, or associated with the Syncora-Related Trusts, including, without limitation, all rights arising out of or related to the Trust Documents, which includes, without limitation, rights of indemnification, reimbursement and subrogation and all other rights (including those arising out of common law) that Syncora has as a result of a breach of or in connection with any provision in the Trust Documents for which Syncora is a beneficiary, whether through the explicit terms of such provision, through Syncora's third-party beneficiary or subrogation rights or otherwise. For the avoidance of doubt, Syncora asserts a claim based on all of its rights associated with the Syncora-Related Trusts and the Trust Documents . . . including, without limitation . . . any and all rights against GMAC for liabilities incurred in connection with the origination, sale, or transfer of the loans ultimately sold or transferred into the Syncora-Related Trusts (including any repurchase obligations incurred in connection with such origination, sale or transfer) or in connection with the creation of the Syncora-Related Trusts and the issuance of the securities backed by such loans.

6

*Id.* ¶ 3 (emphasis added). Syncora also reserved the right to amend, supplement and revise its

original Proof of Claim, including after further investigation and discovery. *Id.* ¶¶ 10-13.

**II.    Syncora Provides Additional Detail on its Claims in Opposition to the Debtors'
Proposed Plan Support Agreement Objection and in Separate Correspondence**

14.    On June 19, 2013, Syncora filed its Objection to the Debtors' Motion for an Order

under Bankruptcy Code Sections 105(a) and 363(b) Authorizing the Debtors to Enter into and

Perform under a Plan Support Agreement with Ally Financial Inc., the Creditors' Committee and

Certain Consenting Claimants [Dkt. No. 4082] (the "PSA Objection"). In its PSA Objection,

Syncora explained by reference to specific provisions in the Servicing Agreements and I&I

Agreements that GMACM has separately covenanted with Syncora in each transaction to

perform its specified servicing obligations, thereby giving Syncora a direct claim for breach, and

that GMACM also agreed to indemnify Syncora directly for any losses caused by GMACM's

negligence or servicing failures that were not undertaken in good faith. Syncora also explained

that it is a third-party beneficiary of the Trustee's obligations under the Operative Documents in

each transaction. *See* PSA Objection at 2-4.

15.    Using the STACS 2007-1 transaction as the illustrative example, Syncora

identified the specific provisions of the SunTrust Servicing Agreement that impose upon

GMACM, as Servicer, express contractual obligations that benefit the certificate holders and

Syncora as insurer, as well as affirmative duties to act prudently to safeguard the mortgage loan

collateral and comply with the servicing criteria in federal Regulation AB (including

"safeguarding" the mortgage loan collateral). *Id.* at 2-3 (citing and quoting from §§ 3.01 and

3.18(a) of the SunTrust Servicing Agreement). Syncora further quoted and discussed

GMACM's indemnification obligation under Section 3.04(a) of the SunTrust I&I.

7

16.     Syncora's PSA Objection further stated that GMACM breached its above-described duties and obligations as Servicer by failing to act prudently to safeguard mortgage loan collateral and, where loans were delinquent or defaulted, failing to act timely or maximize recoveries. As a result, Syncora has paid insurance claims on three relevant transactions for which a Debtor was servicer, totaling nearly $225 million, including paying $148,914,678 in claims for STACS 2007-1. *Id.* at 4.[3]

17.     Having reviewed Syncora's PSA Objection, on June 26, 2013, the Debtors sent Syncora a letter requesting that Syncora "describe the nature and quantify the amount of its claims." Rainer Dec. Exh. B at 1. The Debtors specifically requested that Syncora provide information on the amount and nature of Syncora's claim concerning the RALI 2006-Q04 transaction, to which Syncora responded on July 3, 2013, describing its claims citing specific governing provisions of the relevant agreements, specific conduct giving rise to the claims and a detailed calculation of Syncora's resulting damages.

18.     By letter dated July 10, 2013, the Debtors requested that Syncora describe the nature and amount of its claims with respect to the remaining three transactions, notwithstanding Syncora's prior detailed description in its PSA Objection of its claims and claim amount with respect to STACS 2007-1. Rainer Dec. Exh. C.

19.     Syncora responded by letter dated July 15, 2013, describing in specific detail the amount and nature of Syncora's claims for the Bear Stearns and SunTrust transactions. *Id.* Exh. D. Similar to its July 3 letter, Syncora's July 15 letter to the Debtors again described the same

---

[3] The third relevant transaction is Residential Accredit Loans, Inc., Series 2006-Q04 ("RALI 2006-Q04"), for which GMACM's affiliate, Residential Funding Corp., was the Master Servicer with all servicing obligations, as previously described in the proof of claim filed by Deutsche Bank Trust Company Americas, the Trustee for the RALI 2006-Q04 transaction. Syncora's claims with respect to RALI 2006-Q04 are included in Syncora's Amended Proof of Claim but are not the subject of the Debtors' present objection.

nature of Syncora's claims on the referenced transactions, this time using the BSSLT 2007-SV1 transaction as the detailed example.  Syncora's July 15 letter:

- identified some of the specific provisions of the Bear Stearns Servicing Agreement that required GMACM to service the BSSLT 2007-SV1 mortgage loans by "exercis[ing] the same care that [GMACM] customarily employs for its own account" in accordance with prudence and regulatory guidelines, and "in such manner as will maximize the receipt of principal and interest," *id.* at 2;

- described how, although the best means of maximizing proceeds on the underlying loans was to notify the Trustee of loans that breached representations and warranties and should be "put back" for repurchase or substitution, GMACM personnel on the front-line with the loan files and delinquent borrowers apparently failed to exercise that highly prudent remedy, electing instead to charge off significantly delinquent loans, for example, *id.*;.

- identified some of the contractual grounds for Syncora's ability to recover for its losses from GMACM, *id.* at 3; and

- attached a calculation showing mathematically how missed repurchase opportunities caused losses in the BSSLT 2007-SV1 transaction that created risk of substantial insurance claim payments by Syncora, which Syncora invested substantially to remediate.

20.    With respect to the STACS 2007-1 transaction, Syncora's July 15 letter stated that the provisions in the governing documents for that transaction are "essentially the same as the provisions of the BSSLT 2007-SV1 agreements described above, and the mortgage loan default rates in the transaction are even more egregious."[4]  The letter provided a dollar amount for the damages Syncora has incurred resulting from GMACM's breaches with respect to the STACS 2007-1 Transaction:

> For the STACS 2007-1 transaction, Syncora has paid a total of $165,399,376 in insurance claims, forecasts paying future claims totaling $30,356,200, and has incurred substantial related expenses.

*Id.* at 4.

---

[4] As described *supra* at 7-8, in its PSA Objection filed on June 19, 2013, Syncora already had described for the Debtors some of the contractual provisions that imposed mortgage loan servicing duties and obligations upon GMACM which it appeared GMACM has breached.

## III.   The Debtors' Objection to Syncora's Proof of Claim

21.     The Debtors' Objection seeks to expunge Syncora's Proof of Claim principally on the ground that the Proof of Claim constitutes "a mere placeholder" that purportedly must, but fails to, satisfy the formal pleading requirements for a civil complaint under the Federal Rules of Civil Procedure.  However, effectively conceding that Syncora's subsequent July 15 letter answering the Debtors' inquiries was sufficiently detailed to meet the Debtors' own (incorrect) standard, and all but conceding that the clarification and supplementation provided in such correspondence may operate as an amendment of the Proof of Claim, the Debtors devote most of their objection to their erroneous assertions against the merits of Syncora's claims.

## IV.   Syncora's Amended Proof of Claim

22.     Concurrent with the filing of this response, Syncora is filing an Amended Proof of Claim.  *See* Rainer Dec. Exh. A (the "Amended Proof of Claim").  With respect to the BSSLT 2007-SV1 and STACS 2007-1 transactions, the Amended Proof of Claim describes with greater particularity Debtor GMACM's breaches of the Trust Documents that were identified in Syncora's original Proof of Claim as well as GMACM's breaches of the duty of care arising from the same transactions.  As discussed further below, Syncora's Amended Complaint should put to rest (and procedurally moot) the Debtors' objection to an alleged lack of clarity in Syncora's original Proof of Claim.[5]

_____

[5] Although not a subject of the present objection, the Amended Proof of Claim also includes Syncora's nearly identical servicing claims against Debtor Residential Funding Company, LLC, f/k/a Residential Funding Corp. ("RFC"), as well as the Trustee's loan repurchase claims now being abandoned for RALI 2006-QO4 under the terms of the proposed RMBS Trust Settlement and the Debtors' proposed Plan of Reorganization, because certain tranches of certificates issued by RALI 2006-QO4 have the benefit of a monoline insurance policy.  Now left to its own devices, Syncora now asserts these claims based upon the same pattern of conduct.

# ARGUMENT

I.    **Although the Issue Now Should Be Moot Given Syncora's Amended Proof of Claim, Syncora's Original Proof of Claim Was Valid and Proper**

23.    Federal Rule of Bankruptcy Procedure 3001(a) states what is required in a proof of claim: "a written statement setting forth [the] creditor's claim" that conforms to the Official Form. Fed. R. Bankr. P. 3001(a). Since the Bankruptcy Code provides no guidance concerning what a proof of claim must contain, Rule 3001 is the definitive authority concerning the required contents. 9 COLLIER ON BANKRUPTCY ¶ 3001.01[1], p. 3001-5 (16th ed.). As such, a proof of claim "need only 'provide adequate notice of the existence, nature and amount of the claim as well as the creditor's intent to hold the estate liable.'" *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999) (quoting *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997)).

24.    The Debtors wrongly contend that a proof of claim must go much farther and satisfy the pleading requirements of a civil complaint under Federal Rules of Civil Procedure 8 and the heightened civil pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2006), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Objection at 8. That is not the law, and contrary to the Debtors' mischaracterization, the District Court in *In re DJK Residential, LLC*, 359 B.R. 54 (Bankr. S.D.N.Y.) did not so "h[o]ld." *Id.* Although some courts have "looked to" the pleading rules for complaints under the Federal Rules of Civil Procedure for guidance by analogy, *e.g.*, *DJK Residential*, 416 B.R. at 106, courts also recognize that "the analogy is not perfect," *In re marchFirst*, 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010). In fact, in a contested matter before a bankruptcy court (which the Debtors' objection creates here), Fed. R. Bankr. P. 7008 is not even among the rules of procedure made applicable by Fed. R. Bankr. P. 9014(c). In short, the Debtors' attempt to impose the legal standard that applies to a challenge to a civil complaint

11

under Fed. R. Civ. P. 12(b)(6) tries to fit a square peg into a round hole. As the District Court

explained in *In re Today's Destiny*, 2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. Nov. 26, 2008):

> A proof of claim is not a complaint and is not supposed to be. Rule 3001 is
> specific in stating that a proof of claim should comply substantially with Official
> Form 10. Official Form 10 . . . requires the creditor to include only basic facts as
> to the identity of the claimant, and the amount, nature, and basis of the claim. The
> form and accompanying instruction evidence an intent for a single word, or, at
> most, a single sentence description of the claim. . . .

*Id.* at *22-23. *See also In re Cent. Rubber Products, Inc.*, 31 B.R. 865, 870 (Bankr. D. Conn.

1983) ("a proof of claim need not, of course, be as complete as a formal complaint") (quoting *In*

*re International Match Corporation*, 69 F.2d 73, 76 (2d Cir.1934)). Thus, contrary to the

Debtors' contention, Federal civil pleading standards do not strictly apply.[6]

    25.    The need for a proof of claim to merely provide adequate factual context for the

basis for the debtor's liability is commonly accepted and well-established, as evidenced by

merely looking at the proofs of claim against GMACM that were filed in this case by the

Trustees and Master Servicers for the BSSLT 2007-SV1, GP 2006-HE1 and STACS 2007-1

transactions. Each of HSBC Bank (Trustee for BSSLT 2007-SV1, GP 2006-HE1), Wells Fargo Bank (Master

Servicer for BSSLT 2007-SV1) and U.S. Bank (Trustee for GP 2006-HE1) filed proofs of claim

that also would not pass muster under the Debtors' fictitious standard.

    26.    HSBC Bank's proof of claim for the BSSLT 2007-SV1 trust (proof of claim

number 5254, filed on November 19, 2012 and annexed to the Rainer Declaration as Exhibit E

---

[6] In their Objection, the Debtors rely upon cases applying the federal civil pleading standard (Objection at 8) that are
inapposite here. In *WestLB v. BAC Fla. Bank*, 912 F. Supp. 2d 86 (S.D.N.Y. 2012), the Court considered the
sufficiency of allegations in an actual Amended Complaint, not a proof of claim, and in *In re Adelphia Comm.*
*Corp.*, 359 B.R. 54 (Bankr. S.D.N.Y. 2006), the Court considered the sufficiency of factual assertions made in a
motion to designate the votes of a certain class of creditor claims rather than a proof of claim. In *DJK Residential*,
the Court considered a proof of claim into which the creditor had directly imported the allegations from a complaint
previously filed against the debtor in a simultaneously pending, automatically stayed District Court action. Indeed,
in characterizing the proof of claim before it, the *DJK* Court stated, "The Claim is equivalent in all material respects
to the complaint in the District Court Action." *Id.* at 102. Accordingly, under the facts of the Debtors' authorities,
application of the Federal Rules of Civil Procedure may be appropriate in those cases, but there is nothing to suggest
the same here.

("HSBC Proof of Claim") contains only two substantive paragraphs. The first paragraph describes in very generic terms three general categories of obligations imposed upon a Servicer in a "pooling and servicing agreement or analogous document" (e.g., "the administration and service of the Loans in accordance with the provisions of the applicable Transaction Documents"). Rainer Dec. Exh. E at p.3.

27.    The second substantive paragraph in Trustee HSBC Bank's proof of claim briefly states as follows:

> Under the Transaction Documents and the Servicing Agreements for [the BSSLT 2007-SV1 trust] HSBC, on behalf of itself and the [trust], may have a number of claims against the Debtors in one or more capacities, including but not limited to:
>
> (i)    Claims arising from the relevant Debtor's failure to perform its servicing obligations under the Transaction Documents;
>
> * * *
>
> (iii)    Claims arising from the relevant Debtor's obligation to repurchase any of the Loans from any of the Trusts . . . as a result of a material document deficiency or the Debtor's breach of a representation, warranty, or obligation under the Transaction Documents . . . .

Id. at p. 4. Such proof of claim, which to Syncora's knowledge is not the subject of a motion to disallow or expunge, is incredibly similar to Syncora's original Proof or Claim and also does not contain the "who, what, when, where and how" (Objection at 9) that the Debtors contend must be included.

28.    By the same token, Wells Fargo's proof of claim for the BSSLT 2007-SV1 trust (proof of claim number 6654, filed on March 1, 2013 and annexed to the Rainer Declaration as Exhibit F ("Wells Fargo Proof of Claim")) and U.S. Bank's proof of claim for the GP 2006-HE1 trust (filed on March 1, 2013 and annexed to the Rainer Declaration as Exhibit G ("U.S. Bank Proof of Claim") state in more detail – but equally generically and without any "who, what,

13

when, where and how" – a list of "Servicing Obligations" that exist under "Claimant Transaction
Documents." Such obligations include "to enforce the terms and conditions of the mortgage
loans, which includes foreclosure"; "to give notice of and assert Buyback Claims and Other
Representations and Warranties Claims" and "to act in good faith and comply with the applicable
servicing standard of care as set forth in the Servicing Agreements." Rainer Dec. Exh. F at 9-10;
Exh. G at 13-14. The Wells Fargo and U.S. Bank proofs of claim then state that they are
"authorized to file this Proof of Claim against one or more of the Debtors for claims . . .
including Servicing Claims." Rainer Dec. Exh. F at 11; Exh. G at 16. In other words, these
proofs of claim – also not under attack by the Debtors – are mere boilerplate placeholders and
not more particularized than Syncora's original Proof of Claim.

**II.    Syncora's Amended Proof of Claim Sets Forth Greater Particularity Regarding
The Obligations in the Transaction Documents and Duties that GMACM Breached**

29.    In any event, in no instance are any of these Proofs of Claim nearly as
particularized as Syncora's Amended Proof of Claim. *First*, for each Syncora-Related
Transaction, the Amended Proof of Claim cites and describes the specific provisions of the
relevant Trust Documents that give rise to GMACM's relevant contractual obligations as
Servicer, much like Syncora did in its July 15, 2013 letter to the Debtors with respect to BSSLT
2007-SV1. *See* Rainer Dec. Exh. D. *Second*, for each transaction, the Amended Proof of Claim
additionally states that, as Servicer, GMACM owed Syncora a duty of care and to prudently
perform its obligations as Servicer, which included servicing loans for the benefit of Syncora,
whom GMACM knew was exposed to defective loans that breached representations and
warranties and thus dependent upon the Servicer's performance. *Third*, for each transaction, the
Amended Proof of Claim sets forth pre-discovery facts that indicate GMACM (and RFC)
breached its contractual obligations and violated its duties, and specifies the dollar amount of

14

losses Syncora has incurred (and will incur) for which GMACM is liable, under indemnities and otherwise. *See id.*

30.     At this stage prior to the benefit of discovery, Syncora's claim is centered upon GMACM's failure to exercise the same care that it customarily employs for its own account in maximizing proceeds and recoveries on underlying mortgage loans. Specifically, despite being surrounded by borrowers with default rates that were substantially higher than reasonably expected, even in a troubled economy, GMAC failed to exercise its simple ability to place the Trustee on formal notice of loans that materially breached representations and warranties, so as to cause the single best means of recovery on defective loans – cash, or a new, non-defective substitute loan with a creditworthy solvent borrower. Such mechanism was at GMACM's disposal in each transaction – indeed, such notification is required by certain of the transaction documents.

31.     Separate from its contractual obligations under the Trust Documents, GMACM owed Syncora a duty of care, but acted negligently toward Syncora (and its insured certificateholders). For each trust, GMACM was fully aware that Syncora had issued an insurance policy guaranteeing the payment of principal and interest in respect of certain tranches of certificates issued by the trust. GMACM also was fully aware that Syncora's risk of paying claims under its Policy would increase if cash flows from the underlying mortgage loans being serviced by GMACM substantially decreased. Furthermore, for the BSSLT 2007-1 and STACS 2007-1 transactions, GMACM was aware that Syncora would not have issued the Policy without GMACM's representation and promise that it would perform its servicing obligations, which would reduce the risk of Syncora paying claims. Accordingly, it was entirely foreseeable to GMACM that its failure to exercise due care with respect to servicing the BSSLT 2007-SV1 and

STACS 2007-1 mortgage loans would cause Syncora to pay claims, and/or to face a greatly enhanced risk of paying claims, under the Policy.[7]

32.    Syncora further alleges that, as a result of the Debtors breaches of contracts and duties of care it, has suffered damages. The amount of those damages can only be specifically quantified after the Debtors provide certain limited discovery to allow Syncora's experts to determine, similarly to the manner in which Duff & Phelps calculated the debtors obligations to the RMBS trusts for the Trustees, the amounts of those claims.

### III.    The Debtors' Objection Should Be Denied Because the Debtors Have Failed to Meet Their High Burden to Refute The Presumptive Validity of Syncora's Proof of Claim

33.    As a properly filed proof of claim, Syncora's Proof of Claim, now amended, constitutes *prima facie* evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f).    The party objecting to the claim then "has the burden of going forward and of introducing evidence sufficient to rebut the presumption of validity. Such evidence must be sufficient to demonstrate a true dispute *and must have probative force equal to the contents of the claim*." 9 Collier on Bankruptcy § 3001.09[2] (16th ed.) (emphasis added); *In re King*, 305 B.R. 152, 162 (Bankr. S.D.N.Y. 2004) ("it is well settled that the party objecting to a proof of claim has the burden of coming forward with *sufficient evidence* rebutting the validity of a properly filed proof of claim") (emphasis in original).    Moreover, the objector must produce

---

[7] "Conduct constituting a breach of contract nevertheless is actionable in tort if a legal duty independent of the contract itself has been violated." *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2007).    "In other words the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Id.* (citations omitted).    Here, the Servicer had a duty— independent of any duty imposed by contract with Syncora or other transaction parties – to exercise due care in their professional activities and properly and competently service and administer loans in accordance with customary servicing practices.    In light of its widespread failure to do so, GMACM is liable to Syncora for negligence (or even gross negligence).    *Cf. Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 892 F. Supp. 2d 596, 607 (S.D.N.Y. 2012) (finding that plaintiff, financial guaranty insurer of securities backed by home equity loans (HELOCS), presented enough evidence to survive summary judgment on claim that widespread failure to service and administer loans in accordance with customary servicing practices constituted gross negligence, misfeasance, or bad faith).

evidence "'equal in force'" to the *prima facie* case. *See, e.g., In re Alleghery Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992); *In re Jorczak*, 314 B.R. 474, 481 (Bankr. D. Conn. 2004).

34.     As the District Court stated in *DeGeorge Fin. Corp. v. Novak (In re DeGeorges Fin. Corp.)*, 2002 U.S. Dist. LEXIS 17621 (D. Conn. July 15, 2002), "The filing a proof of claim is prima facie evidence of that claim and thus the 'interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence.'" In *In re Hemingway Transp., Inc.*,993 F.2d 915 (1st Cir. 1993), the court stated, "When a party objects, he carries the burden of going forward with the evidence concerning the validity of the claim." *Id.* at 925 (citing *Alleghery Int'l*, 954 F.2d at 173).

35.     Stripped of its rhetoric, the Debtors' Objection fails to put forth any evidence rebutting Syncora's claims, much less evidence that is "equal in force" to Syncora's *prima facie* showing.

A. **Syncora Has Stated Valid Claims Arising Out of STACS 2007-1**

36.     As an initial matter, the Debtors' contention that neither the original Proof of Claim nor the July 15 letter provided any detail articulating Syncora's claims against GMACM in respect of STACS 2007-1 (Objection at 11) is now moot.  The Amended Proof of Claim describes such claims in great detail, with citation to relevant contractual provisions, a summary of facts supporting the claim and a calculation of damages.  Amended Proof of Claim ¶¶ 15-24.

37.     Moreover, the Amended Proof of Claim is a proper amendment.  First, the amendment describes with greater particularity Syncora's claims in respect of STACS 2007-1, citing principally to two of the same agreements identified in the original Proof of Claim as a basis of Syncora's claims. [8]  In addition, such particularity unquestionably cures the alleged

[8] *See* Pooling and Servicing Agreement, dated as of April 1, 2007, among ACE Securities Corp., as depositor, GMAC Mortgage, LLC, as servicer, Wells Fargo Bank, National Association, as master servicer and securities

17

vagueness defect in the original Proof of Claim asserted by the Debtors. Therefore, the Amended Proof of Claim plainly relates back to the original proof of claim. *See, e.g., Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005) ("relation back" requirement for an amendment is met when the amendment "describes the original claim with greater particularity" or "corrects a defect of form in the original claim").

38.    Furthermore, the balance of equities favors allowing the amendment with respect to STACS 2007-1. The Debtors will not suffer any prejudice from the Amended Proof of Claim, as the Debtors have been on notice for months from correspondence and filings from Syncora of the nature and amount of the claims. Nor will other creditors (*e.g.*, other monoline insurers) be prejudiced since they too are in the process of finalizing their allowed claims, and the Debtor's Plan is not scheduled for a confirmation hearing until late November at the earliest. Conversely, other monolines (FGIC, MBIA) had the benefit of advanced claim development through active litigation as of the Bar Date, whereas Syncora did not. Syncora developing and articulating its claims in perhaps less detail before now was a function of that, not bad faith or dilatory behavior (and there has been no showing of any).

**B.    Syncora's Claims Arising Out of BSSLT 2007-SV1 And STACS 2007-1 Are Cognizable and Compelling**

**1.    Syncora's Claims Are Not "Novel"**

39.    The Amended Proof of Claim does not exclude or rule out that discovery may yield evidence that GMACM failed or caused waste in performing its most basic servicer functions such as proper advancement of funds for the borrower or maintenance of the property, sufficient retention of employee personnel and other resources to actively engage with delinquent

administrator and HSBC Bank USA, National Association, as trustee; and Insurance and Indemnity Agreement, dated as of May 15, 2007, among XL Capital Assurance Inc., SunTrust Asset Funding, LLC, SunTrust Bank, ACE Securities Corp., GMAC Mortgage, LLC and Wells Fargo Bank, National Association.

18

borrowers and making economically reasonable decisions with respect to modifications, enforcement or charge-off of loans as though the loans were on GMACM's own books (*i.e.*, what it appears the Debtors would term "traditional" servicing claims). Indeed, the Trustees' financial advisor in connection with the Plan Support Agreement, Duff & Phelps, identified $1.1 Billion of potential liability of the Debtors as Servicers looking only at three discrete servicing practices among many. *See* Rainer Dec. Exh. H (Declaration of Brendan Myer of Deutsche Bank National Trust Company in support of Plan Support Agreement), ¶¶ 44-46.

40.    Instead, Syncora's Amended Proof of Claim emphasizes at this time the substantial value the Servicer was required to help procure for the trusts and their continued receipt of principal and interest to fund payment obligations to certificateholders, through giving the Trustee or Master Servicer notice of breached representations and warranties to act upon. Contrary to the Debtors' assertion, such basis for Servicer liability is not "novel." Rather, it is squarely among the types of Servicer claims set forth in several parties' proofs of claim. *See*, *e.g.*, Rainer Dec. Exh. F (Wells Fargo Proof of Claim) at 9 (servicer's obligation "to give notice of and assert Buyback Claims and Other Representations and Warranties Claims"); *id.* Exh. G (U.S. Bank Proof of Claim) at 13 (same).

2.    **Syncora's Claims Are Based Upon Servicers' Notice Obligations,
Not Their Alleged "Back-Door" Liability for Repurchase Claims**

41.    In an effort to conflate repurchase claims against sellers with notice obligations of servicers, the Debtor contend Syncora is trying to pin GMACM with mortgage loan put-back liabilities that belong to sellers and sponsors. The assertion is a ruse. One need look no farther than Section 2.02(d) of the Bear Stearns Servicing Agreement to see that Servicers have their own, independent obligation to notify Trustees of materially defective mortgage loans so that the

19

Trustee may exercise their contract remedies to enforce a sponsor's repurchase obligations. That is the obligation that Syncora's contract claims seek to enforce.

3. **Syncora Has Direct Claims for Breach of Contract and Negligence, Irrespective of The Scope of the GMACM's Indemnity Obligations**

42.    In both the Bear Stearns I&I and the STACS I&I, GMACM expressly covenanted to Syncora that it would comply with its obligations under the Bear Stearns and SunTrust Servicing Agreements, respectively. *See* Bear Stearns I&I § 2.4(f); SunTrust I&I § 2.4(m). On the grounds described herein and in Syncora's Amended Proof of Claim, Syncora has a direct claim against GMACM for having breached of those very obligations in the I&I Agreement.

Therefore, irrespective of the separate indemnification clause in Section 3.04(b) the I&I Agreements, Syncora has a direct remedy for damages, and the Debtors' argument that the indemnification clause covers only third-party claims (which is incorrect as discussed below) is not the silver bullet that the Debtors suggest.

4. **Contrary to the Trial Court Decisions Relied Upon by the Debtors, GMAC Has a Plain-Language Obligation to Indemnify Syncora Too**

43.    The Debtors do not dispute that Syncora has a direct indemnification claim against GMACM. They dispute the *scope* of the indemnity, contending it is limited to "losses or liabilities Syncora might incur in the event a third party were to assert claims against it."[9] *Id.* Tellingly, GMACM avoids any discussion of the actual language of the indemnity. Indeed, the provision contains no such limitation. Section 3.04(b) of each I&I states, in relevant part:

In addition to any and all of the Insurer's rights of reimbursement, indemnification, subrogation and to any other rights of the Insurer pursuant hereto or under law or in equity, *GMACM agrees to pay, and to protect, indemnify and save harmless, the Insurer . . . from and against any and all claims, losses,*

---
9      GMACM also states that it owes no indemnity for a Sponsor's alleged breaches of representations and warranties. Opp. ¶ 32. To be clear, Syncora is seeking indemnification from GMACM for losses Syncora incurred as a result of GMACM's breaches of *its own* representations, warranties and covenants.

20

*liabilities* (*including penalties*), *actions, suits, judgments, demands,* **damages,**
*costs or expenses* (*including, without limitation, reasonable fees and* **expenses of**
*attorneys, consultants and auditors and reasonable costs of investigation*) **of any**
**nature arising out of or relating to** **the breach by GMACM** *of any of the*
*representations or warranties contained in Section 2.04* **or** *arising out of or*
*relating to the transactions contemplated by the Operative Documents by reason*
*of [, inter alia]:* (i) *the misfeasance or malfeasance of, or negligence, bad faith,*
*willful misconduct or theft committed by, any director, officer, employee or agent*
*of GMACM in connection with any Transaction arising from or relating to the*
*Operative Documents; … or* (iii) **the breach by GMACM of any representation,**
**warranty or covenant** *under any of the* **Operative Documents**[10] *to which it is a*
*party or the occurrence, in respect of GMACM under any of the Operative*
*Documents of any "event of default"* . . . .

Bean Stearns I&I § 3.04(b); SunTrust I&I § 3.04(b).[11]  The indemnity is expansive.  It is not
limited to claims by third parties against Syncora.  The language is clear.  This should begin and
end the inquiry. *See, e.g., Crossroads ABL, LLC v. Canaras Capital Mgmt., LLC,* 35 Misc. 3d
1238(A), 954 N.Y.S.2d 758 (Sup. Ct. 2012) *aff'd,* 105 A.D.3d 645, 963 N.Y.S.2d 645 (2013)
("The parties chose to use highly inclusive language in their Indemnification Provision, which
they chose not to limit by listing the types of proceedings for which indemnification would be
required. There is therefore no basis by which I can conclude that intra-party actions were not
intended to be within the ambit of this provision.").

     Rather than address the specific contractual language that governs the parties' rights,
GMACM instead vaguely suggests that courts have routinely rejected the "misuse" of third-party
indemnification claims by Syncora and others.  Opp. ¶ 33 & n.8.  GMACM misleadingly cites
and grossly overstates the import of these decisions, none of which bars Syncora's claim under
the indemnity at issue here.  Each case cited by GMACM relies heavily on *Hooper Associates,*
*Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487 (1989), where the New York Court of Appeals held

---

10    "Operative Documents" include, *inter alia,* the Insurance and Indemnity Agreement and the GMACM
Servicing Agreement.

11    The parallel provisions of the Insurance and Indemnity Agreements applicable to the GP 2006-HEi and
STACS 2007-1 transactions are identical to the quoted language in all material respects.

21

that a court should not infer a party's intention to waive the benefit of the rule that parties are

responsible for their own attorney's fees, unless the intention to do so is unmistakably clear from

the language of the promise. *Id.* at 492. In *Hooper*, the narrow question before the Court was

whether the indemnity entitled plaintiff to counsel fees incurred in successfully prosecuting its

breach of contract action. *Id.* at 489. *Hooper* veered beyond that narrow issue and construed the

*entire* indemnity clause as pertaining only to third-party suits. *Id.* at 493. But, "the rule set forth

in *Hooper* and its progeny is *expressly designed to uphold the 'American rule'* that each side is

responsible for bearing its own costs in litigation, and that, absent agreement, statute or court

rule, the prevailing party may not collect attorney's fees from the losing one." *Crossroads ABL,*

*LLC v. Canaras Capital Mgmt., LLC*, 954 N.Y.S.2d 758, at *3 n.5 (N.Y. Sup. Ct. NY County

2012) (emphasis added), *aff'd*, 105 A.D.3d 645, 963 N.Y.S.2d 645 (2013). While there may

have been some heightened sensitivity in *Hooper* in order to respect the "American rule,"

indemnification provisions such as those at issue here are well-established risk allocation

mechanisms that are routinely utilized by contracting parties. There is no basis to employ such

skepticism where sophisticated parties have clearly expressed their preferred risk allocation in a

contract. Indeed, courts have recognized that *Hooper* is inapplicable where "[contractual]

language is unambiguous, clear and complete . . . ." *Id.*[12] In these instances, the language "is to

be enforced according to its own terms." *Crossroads*, at *3 n.5.

The other cases cited by GMACM are also distinguishable. In *Syncora Guarantee Inc. v.*

*EMC Mortgage, LLC*, 39 Misc. 3d 1211(A), 969 N.Y.S.2d 806 (Sup. Ct. NY County Apr. 15,

2013), the court relied on *Hooper* and concluded that Syncora's claim for repayment of

---

[12]   As discussed, Section 3.04(b) is clear in its expansiveness and in no way limited to third-party claims.
Moreover, the indemnity clearly encompasses reasonable attorney's fees. *See CSI Inv. Partners II, L.P. v. Cendant*
*Corp.*, 507 F. Supp. 2d 384, 424 (S.D.N.Y. 2007) ("Unlike the contract in *Hooper*, the SPA is specific in its
reference to attorneys' fees relating to a contracting party's breach'").

insurance claims payments made to the trustee were "beyond the contemplation of the indemnification provision." *Id.* at *5. However, Syncora had been characterizing the claims in that case as asserting a *first-party claim* against GMACM. In *AMBAC Assur. Corp. v. First Franklin Fin. Corp.*, 40 Misc. 3d 1214(A) (N.Y. Sup. Ct. NY County July 18, 2013), the parties actually *agreed* that the indemnity applied only to third-party claims, and Ambac was attempting to characterize the claims as such. Once again, that is not the issue here. In *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 39 Misc. 3d 1220(A) (N.Y. Sup. Ct. NY County 2013), while MBIA's claim was originally captioned as a claim for "indemnification," MBIA later asserted the claim under an entirely separate, reimbursement provision of the insurance agreement. The court relied on *Hooper* and barred the claim. However, this case is inapposite as it does not even deal with a claim under an indemnification provision. In *Assured Guar. Corp. v. EMC Mortgage, LLC*, 39 Misc. 3d 1207(A) (N.Y. Sup. Ct. NY County Apr. 4, 2013), the Court was heavily influenced by the fact that under the relevant agreements, Assured's remedy was limited to a repurchase protocol, and concluded that permitting Assured to seek repayment of insurance claim payments as a result of the alleged breaches would run afoul of that protocol. The same fact was determinative in *Bear Stearns Funding Trust v. EMC*, 2013 Del Ch LEXIS 9 (Del. Court of Chancery Jan. 15, 2013), and *Assured v. Flagstar*, 2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 8, 2011). Syncora's remedies against GMACM, the Servicer, are not similarly limited here. Accordingly, these cases offer GMACM no support.

In summary, Section 3.04(b) is expansive and, by its terms, applies to "any and all claims, losses [and] liabilities, [etc.] . . . of any nature," whether first-party or third-party. By contrast, Section 3.04(d) addresses the *separate and discrete* issue of indemnification in the

event the indemnifiable loss results from third-party "action[s] or proceeding[s] (including any

governmental investigation)" against an Indemnified Party. I&IA, § 3.04(d). Thus, by its terms,

Section 3.04(d) merely deals with a *subset* of indemnifiable events addressed in Section 3.04(b)

in order to ensure the indemnifying party is made aware of the third-party claim and has the

opportunity to assume its defense. Respectfully, contrary to the trial court findings cited by the

Debtors, Section 3.04(d) in no way limits or "clarifies" Section 3.04(b).

## 5. The Debtors' Causation Argument Misses the Point Entirely

44.    Finally, the Debtors' contention that GMACM's alleged Servicer malfeasance

cannot have caused Syncora damage (Opposition at 15-17) is entirely erroneous. Even though

RMBS Trustees independently have the ability and incentive as a general matter to enforce loan

repurchase remedies against seller, the Trustees can only enforce that remedy for defective loans

they know about. Indeed, RMBS Trustees are dependent upon transaction parties bringing

defective loans to their attention, and transaction documents impose notification obligations on

all parties who learn of loan with breached reps or warranties. Thus, if Servicers such as

GMACM are delinquent in alerting their Trustees to violative mortgage loans, then the Trustees

will likely never know of them and the repurchase opportunities are lost forever. As described in

the Amended Proof of Claim, it is that very failure to put back defective loans that allows

principal losses in the mortgage pool that lead to insurance payments by insurers like Syncora.[13]

---

[13] The Debtors also argue that, to the extent Syncora asserts that its July 15 letter to Debtors' counsel (describing in greater detail Syncora's claims relating to BSSLT 2007-SV1 and STACS 2007-1) operates as an amendment to Syncora's original proof of claim, such amendment is improper because it either constitutes a new claim, and thus does not "relate back" to Syncora's original Proof of Claim, or because accepting such an amendment would be inequitable. Objection at 9-11. First, in light of Syncora's actual amendment of its proof of claim (Rainer Dec. Exh. A), one need not consider the status of the July 15 letter. Any issue is moot. Second, on the merits, the Debtors failed to present any evidence showing why there is no relation back or why the balance of equities does not support such an amendment, nor could they. Because both the July 15 letter and Syncora's Amended Proof of Claim describe with greater particularity Syncora's claims in respect of BSSLT 2007-SV1 and STACS 2007-1and, given that such particularity would cure the (alleged) vagueness defect in the original Proof of Claim, the letter and

## IV.    Syncora Is Entitled to Obtain Discovery On Its Proof Of Claim

Objections to proofs of claim constitute "contested matters" subject to Bankruptcy Rule 9014. *In re AMR Corp.*, 2013 WL 1155434 (S.D.N.Y. 2013) ("a contested matter arises when the debtor objects to the proof of claim"). The creation of a contested matter entitles the parties to conduct discovery on their claims and defenses prior to any final adjudication by the Court:

> An objection to a proof of claim merely commences the litigation. It joins the issue and nothing more. The claims litigation then proceeds as a contested matter pursuant to F.R.B.P. 9014 which permits the entire range of discovery mechanisms under the Federal Rules of Civil Procedure to be utilized to ascertain the specifics of each party's position.

*See In re Coates*, 292 B.R. 894, 902 (Bankr. C.D. Ill. 2003). Syncora has a statutory right to discovery under Bankruptcy Rule 9014 before any ruling on the Debtors' claim objection.

Moreover, notions of due process arise in contested matters. *In re Great A. & P. Tea Co., Inc.*, 2011 WL 5546954 (S.D.N.Y. 2011) ("due process requirements apply in motion proceedings (i.e., contested proceedings) under Bankruptcy Rule 9014(b)"). Therefore, the Court should reject the Debtors' attempt to disallow Syncora's Proof of Claim on hyper-technical grounds that fail to address the substance of Syncora's claims. *In re Sacko*, 394 B.R. 90, 99 (Bankr. E.D. Pa. 2008) ("The fundamental purpose of the claims allowance process and the various rules for filing of proofs of claim and allocating burdens of proof is to *provide a fair and inexpensive procedure for the proper determination of claims on the merits* [which] do not envision the determination of claims based on procedural technicalities"). Notions of due process and equity prohibit the Court from dismissing Syncora's claims without giving Syncora an opportunity to obtain discovery on its claims from the Debtors.

---

Amended Proof of Claim obviously do relate back to the original. *See, e.g., Midland Cogeneration Venture Ltd. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005).

## CONCLUSION

WHEREFORE, Syncora respectfully requests that the Court deny the Objection, Order the Debtors to submit to discovery pursuant to Bankruptcy Rule 9014, and enter such other and further relief as is just and proper.

Date:    New York, New York
        September 3, 2013

WOLLMUTH MAHER & DEUTSCH LLP

By:    _____/s/ Randall R. Rainer_____
                Paul R. DeFilippo
                Randall R. Rainer

        500 Fifth Avenue
        New York, New York 10110
        (212) 382-3300

        *Attorneys for Syncora Guarantee Inc.*

26