## <u>EXHIBIT 1</u>

DOOR DELIVERY

RECEIVED

ORIGINAL

FTW LEGAL

MAR 1 9 2012

RECEIVED

For Clerk's Use Only

Name of Person Filing: Paul N. Papas II
Your Address: 4727 E Bell Rd #45 PmB30
Your City, State, Zip Code: Phoenix 85032
Your Telephone Number:
ATLAS Number (if applicable):
Attorney Bar Number (if applicable):
Representing: ☑ Self (Without an Attorney)  ☐ Petitioner  ☐ Respondent

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

Paul N. Papas II
Name of Petitioner

Case No.: CV2012-051622

**SUMMONS**

and

Peoples Mortgage Co & GMAC mortgage llc
Name of Respondent

---

**WARNING: This is an official document from the court that affects your rights. Read this carefully.**
**If you do not understand it, contact a lawyer for help.**

---

**FROM THE STATE OF ARIZONA TO:** Peoples Mortgage Co & GMAC mortgage llc
Name of Respondent

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this *"Summons"*.

2. If you do not want a judgment or order taken against you without your input, you must file an *"Answer"* or a *"Response"* in writing with the court, and pay the filing fee. If you do not file an *"Answer"* or *"Response"* the other party may be given the relief requested in his/her Petition or Complaint. To file your *"Answer"* or *"Response"* take, or send, the *"Answer"* or *"Response"* to the Office of the Clerk of the Superior Court, 201 West Jefferson Street, Phoenix, Arizona 85003-2205 or the Office of the Clerk of the Superior Court, 18380 North 40th Street, Phoenix, Arizona 85032 OR Office of the Clerk of Superior Court, 222 East Javelina Drive, Mesa, Arizona 85210-6201 or Office of the Clerk of Superior Court, 14264 West Tierra Buena Lane, Surprise, Arizona, 85374. Mail a copy of your *"Response"* or *"Answer"* to the other party at the address listed on the top of this Summons.

3. If this *"Summons"* and the other court papers were served on you by a registered process server or the Sheriff, within the State of Arizona, your *"Response"* or *"Answer"* must be filed within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this *"Summons"* and the other papers were served on you by a registered process server or the Sheriff outside the State of Arizona, your Response must be filed within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete thirty (30) days after the date of the first publication.

©Superior Court of Arizona in Maricopa County
June 27, 2007
ALL RIGHTS RESERVED
SUM

Page 1 of 2

DR11f
Use only most current version

Case No. *CV 2012-051622*

4. You can get a copy of the court papers filed in this case from the Petitioner at the address at the top of this paper, or from the Clerk of the Superior Court's Customer Service Center at 601 West Jackson, Phoenix, Arizona 85003 or at 222 East Javelina Drive, Mesa, Arizona 85210.

5. Requests for reasonable accommodation for persons with disabilities must be made to the office of the judge or commissioner assigned to the case, at least five (5) days before your scheduled court date.

SIGNED AND SEALED this date

MAR - 8 2012

By _____
Deputy Clerk

R. ROMERO
DEPUTY CLERK

MICHAEL JEANES, CLERK OF COURT

If you want free legal advice from a lawyer,
contact the Lawyer Referral Service at

602-257-4434
or
www.lawyerfinders.org.

Sponsored by the
Maricopa County Bar Association

©Superior Court of Arizona in Maricopa County
June 27, 2007
ALL RIGHTS RESERVED
SUM

Page 2 of 2

DR11f
Use only most current version



**COPY**

Paul N. Papas II

4727 E Bell Rd., #45 PMB 350
Phoenix, AZ 85032
602-493-2016

MAR 1 8 2012

MICHAEL K. JEANS, CLERK
S. PONISKI
DEPUTY CLERK

Superior Court of Arizona
in Maricopa County

Paul N. Papas II, *et al*                    CV 2012-051622

                                             **VERIFIED COMPLAINT**
                                             **(corrected)**

VS

Peoples Mortgage Company

and

GMAC Mortgage, LLC

## Verified Complaint, Declaratory Judgment, Injunction, Quiet Title and Fraudulent Transfer Act

Plaintiff Paul N. Papas II, *pro se*, and Plaintiff Kathrina H. Tobias, *pro se*, sue Defendants Peoples Mortgage Company, (hereinafter "Peoples"); GMAC Mortgage, LLC, (hereinafter "GMAC") and seeks declaratory relief setting aside, voiding and invalidating the non-judicial foreclosure sales, setting aside, voiding, and invalidating the fraudulent title transfers initiated pursuant to the Trustee's Notices of Sale (hereinafter "TNS") the latest being dated November 16, 2011 with the last auction date set for March 8, 2012.

Page 1 of **37**

Plaintiffs also seek injunctive relief enjoining any Trustee sale arising under the aforementioned Notice of Default (NOD) and TNS and to equitably redeem Plaintiffs ownership interest into the chain of title as the actual owner of the property described below and as grounds state herein:

A. Jurisdiction

1.      The residential real property that is the subject of this action (hereinafter referred to as the "Property") is located at 8025 East Krail Street, Scottsdale, Arizona, 85250 and is legally described as set forth on the TNS as Parcel 174-11-130-8 to be sold at auction.

2.      This action is properly before this Court because the Property is situated within Maricopa County of the State of Arizona and before the Court because the nature of the relief requested herein is pursuant to Arizona Revised Statutes and Arizona Rules of Civil Procedure.

B. Parties

3.      **Plaintiff Kathrina H. Tobias** is and was at all times material the wife of Derek Moss and is the owner of the Property. **Plaintiff Paul N. Papas II** is and was at all material times a Real Estate investor and the holder of a recorded Option To Purchase the Property owned by Kathrina H. Tobias.  The Notice of the Option was recorded March 3, 2012 Plaintiff and/or his assigns was granted the Option "the FIRST right to purchase the Seller's property and the Buyer or their representatives all of the necessary rights to immediately list for sale, market, negotiate and enter into a contract to lease or sell immediately to a third party for profit. All documentation in connection with the foregoing will be made available at the request of all Lenders, Sellers, and Buyers and/or assigns involved in the transaction."  The **Defendants are: Peoples Mortgage Company,** 3215 W. Ray Road , Chandler, AZ.  85226 and 2375 E. Camelback Rd. #5040, Phoenix, AZ.  85016 ; **GMAC Mortgage LLC,** 1100 Virginia Drive, Fort Washington, PA 19034.

4.      At all material times hereto, the Property was owned by Kathrina H. Tobias and/or her late husband Derek D. Moss.

5.      The Note, however, is solely between Derek Moss, Plaintiff Kathrina H.

Tobias' predecessor in interest, and the Lender.

### STATEMENT OF THE CASE

***Warranty Deed Establishing Right of Ownership***

6.      On November 23, 1999, Instrument #1999-1063309 was recorded in the office
of the Maricopa County, Arizona Recorder by and between Linda K. Hague, the Grantor,
and Derek D. Moss and Kathrina H. Tobias, the Grantees. The document appears to have
been properly executed on November 19, 1999 by the Grantor in Maricopa County and
the notarial execution and jurat appear to have been proper; and again executed by the
Grantees on November 22, 1999. This appears to have been done as part of paperwork
transacted by the Capital Title Agency, Inc. as part of a closing on the subject property,
whose legal description appears, to wit: Lot 125, HAYDEN ESTATES, according to Book 204
of Maps, Page 46, records of Maricopa County, Arizona. SUBJECT TO: Current taxes and
other assessment, reservations in patents and all easements, rights of way,
encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as
may appear of record.

7.      A deed of trust was executed and filed subsequent to the Warranty Deed to
secure payment plus interest in the sum of $198,000.00 to Pinnacle Acceptance, LLC in
order to secure this Warranty Deed. The Grantees were named as "Purported Current
Record Owner(s)" in the subsequent deed of release, issued on May 28, 1999 and
recorded in the land records on April 12, 2000 at 2:49 p.m. as Instrument #20000276665.
This recordation appears to have released the mortgage on the property previously held
by the Lender for the Grantor. At this juncture, MERS is not involved in the assessment.

***Assignment and Purported Foreclosure Action***

8.      Bank One, N.A., by and through its officer Melissa C. Mason, who claims to
be a "Mortgage Loan Officer" for said entity, assigned the property to **Mortgage**

**Electronic Registration Systems, Inc.** (hereinafter "MERS"; and its parent company **MERSCORP, Inc.**) and recorded evidence of such on February 13, 2001 at 10:35 a.m. bearing Instrument #20010107063 in the land records of Maricopa County.

9.     Part of the problem with this recordation is that it appears that there was no assignment from Pinnacle Acceptance, LLC (which the Plaintiffs now believe is bankrupt and out of business) to Bank One, N.A. to give Bank One, N.A. the authority to appoint a successor trustee, which it did following this assignment to MERS. Due to the respective authorities relied upon by the Plaintiffs, there could have been no "value" received because MERS is a bankruptcy-remote entity that could not have paid anything of value to Bank One, N.A. to effectuate the transfer; hence, the appearance of a cloud on title as early as this assignment and potential ultra vires behavior by the substitute trustee. The "Notice of Substitution of Trustee" appears to have been prepared by the law firm of Shapiro & Anderson, L.L.P. on December 14, 2001 by Robbie Weaver who claims to be BOTH an Assistant Secretary AND Vice President of MERS. This is problematic in and of itself because one can only have ONE title for MERS by choice, NOT TWO!

10.     The Plaintiffs suspect that Robbie Weaver is an employee for the law firm and not MERS. MERS cannot have employees because of its bankruptcy-remote status; thus the assignment appears to be potentially fraudulent in nature. This is evident based on the previous assignment to MERS, with a Flint, Michigan address; wherein this document, recorded in the land records of Maricopa County, Arizona, bearing Instrument #20011197932 on December 19, 2001, does NOT contain the Flint, Michigan address. It appears the substitute trustee appointed itself in that regard; thus, Rex C. Anderson could be potentially held liable for filing a fraudulent document under A.R.S. Chapter 33.

11.     It then appears that Mr. Anderson attempted to execute on his ultra vires behavior by recording a Notice of Trustee's Sale, filed for record in the land records of

Maricopa County, Arizona as Instrument #200111197933, in succession to the previous recordation. The same notary public, Carmen Montoya, who signed Robbie Weaver's MERS declaration in the previously-recorded document, also signed this Notice, giving the appearance that the entire proceeding was manufactured by the law firm and NOT by parties with any personal knowledge of the facts therein.

12.    Another recordation, dated April 3, 2002, filed for record in the Maricopa County Recorder's office as Instrument #20020343517, purports to "cancel" the Trustee's Sale. It is possible that a default was cured as part of this cancellation; however, which party got paid is currently unknown and would thus be subject to discovery. This document was executed on March 18, 2002 by the apparent ultra vires trustee and signed again by the SAME notary public, Carmen Montoya. The Plaintiffs surmise at this point, the title is clearly clouded because of these successive actions by an ultra vires trustee, who may be liable for damages therein.

**Subsequent Deed and Reconveyance**

13.    The new pattern of what appears to be slanderous activity then starts again on June 16, 2004 with the recordation of Instrument #20040632977 (Deed of Trust), agreed to by the Borrowers, Derek and Kathrina; which is then followed by an assignment, which again becomes an issue, to wit:

14.    The Deed of Release and Full Reconveyance was executed completely by a third party document manufacturer, Nationwide Title Clearing of Palm Harbor, Florida. Steve Rogers further attested under seal on this document with a MERS 1995 seal, which at the time, may have been invalid because MERS went through TWO dissolutions of corporation (in 1998) and thus the seal may invalidate this release. There were seals issued for the new 1999 corporation that should have been used, but weren't.

15.    Because MERS is involved, it is unknown as to WHO was paid in full upon execution of the new deed of trust to now-defunct Washington Mutual Bank FA.

Through Discovery the Plaintiffs will seek to determine who was paid. This document was executed on June 30, 2004 and recorded in Maricopa County on July 8, 2004 bearing Instrument #20040784363. Again, additional clouds on title become an issue at this juncture.

**Warranty Deed Refiling in 2005 and Execution of New Deed of Trust; Release**

16.     The missing document that the Plaintiffs refer to herein, is the Warranty Deed that was supposed to have been executed by both Borrowers to, in essence, quit claim sole interest to Borrower Derek D. Moss, is missing from the record at the Recorder's Office.

17.     A subsequent Deed of Trust was executed solely by Derek D. Moss as, "a married man as his sole and separate property" on the subject property, bearing Instrument #20051626246, recorded on October 27, 2005 at 4:25:39 p.m. in the Maricopa County land records in the sum of $275,000.00 (which may refer to the current appraised value during this part of the Phoenix area's housing bubble).

18.     A subsequent Warranty Deed was then reconveyed back into his wife (the Plaintiff-Homeowner herein) Kathrina H. Tobias' name as joint holders in fee simple. This document was recorded in the land records of the same county on October 31, 2005 at 11:29 a.m. as Instrument #20051640095.

19.     And again, subsequent to the execution of the new Deed of Trust, Nationwide Title Clearing, by and through a known robosignor named Crystal Moore, claiming to be a Vice President of the now-defunct Washington Mutual Bank FA, signed this document with no seal, as none was apparently adopted for use. This was attested to by a Notary Public in and for the State of Florida, namely, Maria Leonor Gerholdt, who may be subject to civil and criminal penalties under F.S.A. Chapter 117 (Notary Public) for false swearing. This document was recorded as Instrument #20051780551 on November 23, 2005; posing another cloud on the title.

20.    There are YouTube videos of Crystal Moore being circulated about; being deposed by Christopher Forrest of the Forrest Law Firm in Tampa, Florida, wherein she admits she is an employee of Nationwide Title Clearing, a third-party document manufacturing plant.

**Execution of Two MERS Deeds of Trust; Release; and Further Potential Clouds on Title**

21.    In 2005, Derek D. Moss, as a single man as his sole and separate property, again took out a note secured by a deed of trust, as a home equity line of credit (HELOC) in the amount of $73,000.00, plus interest, to the benefit of People's Mortgage Company, an Arizona Corporation, filed for record in the land records as Instrument #20051908325 on December 19, 2005. The fact that Peoples Mortgage Company is based in Arizona then the jurisdiction is solely in Maricopa County Superior Court because of the lack of diversity jurisdiction.

22.    In 2006, Derek D. Moss, as a single man as his sole and separate property, again took out a note secured by a deed of trust in the amount of $383,150.00, plus interest, to the benefit of People's Mortgage Company, an Arizona Corporation ; filed for record in the land records as Instrument #20060583502 on May 1, 2006.

23.    Subsequent to the issuances and recordations of these two deeds of trust, ABN AMRO MORTGAGE GROUP, INC. of Jacksonville, Florida, filed a Deed of Release and Reconveyance of the previous $275,000.00 note and deed of trust executed on October 27, 2005. There are issues with this document, recorded as Instrument #20060658402 on May 16, 2006 at 8:00 a.m., to wit:

24.    There is NO ASSIGNMENT from People's Mortgage Company of Arizona purporting to give ABN AMRO MORTGAGE GROUP, INC. of Jacksonville, Florida any interest in Mr. Moss's note. MERS can't convey the Note because it has no interest in it and certainly the missing assignment presents another cloud on the title.

25.    Also subsequent to the issuances and recordations of these two deeds of trust, MERS, as nominee for Peoples Mortgage Company, filed a Deed of Release for the previous $73,000.00 note and deed of trust (HELOC) executed on December 19, 2005. There are issues with this document, recorded as Instrument #20060715436 on May 26, 2006 at 9:38:58 a.m., to wit:

26.    Because of the fact MERS is involved, the payee is virtually unknown. Because the issuance of this document was in Allegheny County, Pennsylvania, PNC Bank may claim to have some sort of interest. Consequently, there are serious chain of title issues that appear herein. A MERS MIN Search of this property follows:



## 3 records matched your search:

This mortgage loan is registered on the MERS® System for informational purposes only. Mortgage Electronic Registration Systems, Inc. is not the mortgagee for this loan.

MIN: 1001886-0100011601-9 Note Date: 04/25/2006        MIN Status: Inactive

Servicer: **GMAC Mortgage, LLC**                Phone: (800) 766-4622

Waterloo, IA

If you are a borrower on this loan, you can click here to enter additional information and display the Investor name.

MIN: 1001886-0100010136-7 Note Date: 12/16/2005        MIN Status: Inactive

Servicer: **PNCCS, a division of PNC Bank, National Association** Phone: (412) 768-0418 Pittsburgh, PA

MIN: 1000355-0009285909-5 Note Date: 11/22/1999        MIN Status: Inactive

Servicer: **FDIC as Receiver for Washington Mutual Bank**        Phone: (800) 848-9136

Monroe, LA

If you are a borrower on this loan, you can click here to enter additional information
and display the Investor name.

For    more    information    about    MERS    please    go    to    www.mersinc.org
Copyright© 2012 by **MERSCORP Holdings, Inc.**

27.    IT SHOULD BE NOTED that from the above information, it appears there
is a new registered entity called MERSCORP Holdings, Inc. entering the picture. This is a
related company of MERSCORP. The assets have been moved from one corporation to
another in an attempt to thwart seizure from litigation.

28.    Further, the FDIC may also be involved as it became receiver for
Washington Mutual Bank FA; the location of Monroe, Louisiana indicates the vault
center for JPMorgan Chase Bank, NA.

29.    The MINs (MERS Identification Numbers are the property of MERSCORP,
Inc.; which may have also changed with the reporting of this new corporation) shown
above are related to the Deeds of Trust executed by the Borrower Derek D. Moss (in the
first two DOT's) and only the final MERS listing involves the current Plaintiff-
Homeowner.

30.    Thus, the assignment previously discussed herein appears to have been
manufactured by a third-party document manufacturing plant, namely, CLC Consumer
Services of Pittsburgh, Pennsylvania and signed off on by one of its employees.

31.    On June 13, 2008 at 3:26 p.m., Derek D. Moss conveyed the interest
back to himself and his wife, the Plaintiff-Homeowner herein Kathrina H. Tobias, via
Instrument #2008-0527187 from the previous scenarios, as recorded in the land records
of Maricopa County, Arizona. At this juncture Kathrina H. Tobias is the owner of record.

32.     In November of 2009, Derek D. Moss died suddenly, leaving his estate uninsured and creating a hardship for the current owner, Kathrina H. Tobias. Subsequent to his death, actions proceeded against the subject property, discussed herein as follows:

**Substitution of Trustee; Assignments; Potential Slanders of Title; Foreclosure Actions**

33.     The following eight (8) documents discussed in this section appear to have caused serious flaws and suspected clouds on the title, not to mention some serious ultra vires behavior on the part of substituted trustees. These are the last known recordations in the chain of title; some of which literally constitute abusive and egregious behavior by the parties therein.

34.     On January 8, 2010, a Substitution of Trustee occurred via a recordation in the Maricopa County, Arizona Land Records via Instrument number #20100016194. The substitution affects the subject property as belonging to Derek D. Moss (now deceased). The substitution of Executive Trustee Services, LLC appears to be self-effectuating. This is verified by the appearance of purported MERS Assistant Secretary Donna Fitton, who appears to be an employee for Executive Trustee Services, LLC, signed in Burbank, California, relating to the Deed of Trust recorded on May 1, 2006. This was signed under Penalty of Perjury under the Laws of the State of California by one Dee C. Ortega, in which it appears that Security Title Agency also played a part. Both of these entities may have potential negligence claims brought against them for their part in slandering the Plaintiff's title. A subsequent Notice of Trustee's Sale was then put forward and recorded in a successive Instrument #20100016195; which did not mention the Plaintiff Kathrina H. Tobias', name, who was listed in the public records as an owner of the subject property.

35.     Further, one Rosalie Solano, who purports to be a Limited Signing Officer (with no authority attached giving her rights to act), signed this document before the

SAME notary under penalty of perjury. BOTH documents were _executed_ on the SAME DATE and _recorded_ on the SAME DATE!

36.     Further, on June 15, 2010 at 4:16:28 p.m., an Assignment of Deed of Trust was recorded in the land records of Maricopa County, Arizona affecting the subject property, as Instrument #20100507688. There are significant issues with this recordation, to wit:

37.     The document may involve GMAC Mortgage LLC. This document was signed in Philadelphia, Pennsylvania by one Janine Yamoah, who purports to be an Assistant Secretary of MERS, when in fact she is likely to be an employee of GMAC Mortgage LLC.

38.     Further, the document was prepared by Pite Duncan, LLP, a known foreclosure mill in California. Peoples Mortgage Company is located in Arizona; thus, it gives the impression that GMAC self-effectuated the assignment under the direction of the law firm. First American Title Company requested the recording. First American may be negligent in aiding and abetting a fraudulent recordation and should have known better, but did it anyway; some attorneys may consider their actions as gross negligence.

39.     Pite Duncan may have some issues regarding the facilitation of this action as being in breach of its fiduciary duty, as it may have been foreclosing only for the servicer and NOT the note holder.

40.     Further, because MERS has no pecuniary interest in the Note, and by and through its own admission through its corporate officers, the deed may have been split from the Note; thus, there are  **_Carpenter v. Longan_** **issues (83 U.S. 271, 274; 1872).**

41.     As if this abuse and potential issue wasn't enough, PNC Bank, NA directed employees of Nationwide Title Clearing to record not one, but THREE subsequent "Corporate Assignments of Deed of Trust" in the land records of Maricopa County, Arizona, as follows (by Instrument Number, Date and Time):

| #1 Assignment | #20110626490; July28 | @ 9:05:59 a.m. |
| #2 Assignment | #20110626684;July 28 | @ 9:30:03 a.m. (not 30 minutes later) |
| #3 Assignment | #20110631320; July28 | @ 8:58 a.m. (less than 24 hours later) |

42.    There are commonalities with these recordations. They are identical. They are all signed and notarized by the same parties. The Plaintiffs believe that these are all one in the same identical documents. These documents appear to have been manufactured by Nationwide Title Clearing.

43.    Further, these documents **purport to convey** an interest from Peoples Mortgage Company, with MERS acting as the nominee (which in the last notes herein, potentially split the deed from the Note) to U.S. Bank N.A. as indenture trustee for Home Equity Mortgage Trust 2007-1 (whose information follows herein) on July 27, 2011, AFTER Peoples Mortgage Company had already conveyed its interest through MERS **(splitting under *Carpenter*)** to GMAC Mortgage LLC. It is obvious by this action that the left hand doesn't know what the right hand is doing, not to mention the obvious potential slander of title issues that these repeated assignments created.

44.    The seventh document in this chain purports to cancel the Trustee's Sale.  It is potentially plausible that the parties executing this sale realized the mess they had created and decided to literally get away from it. The document cancelling this sale was recorded as Instrument #20110956854 on November 18, 2011 at 2:21:26 p.m. by parties involved with Executive Trustee Services, LLC. Executive Trustee Services, LLC is a GMAC entity.

45.    The last document purports to effectuate another Notice of Trustee's Sale, recorded in the same land records on November 18, 2011 at 2:21:26 p.m. in almost rapid succession as Instrument #20110956856 (two numbers apart in sequence). This instrument purports to be selling the subject property on behalf of GMAC Mortgage LLC

of Fort Washington, Pennsylvania. MERS already has effectuated a split from the deed
and note and placed the property into a now-defunct trust, as will be illustrated below.
Further, the signor of this Instrument is the same notary that notarized the previous sale
documents (Dee Ortega); so it appears she doubles as a notary and alleged robosignor of
these documents. Again, on this Notice, there is no mention of the current owner of the
Property, Kathrina H. Tobias. This two-page document was apparently signed by one
Cecilia Estrada under Penalty of Perjury under the Laws of the State of California. Again,
the Plaintiffs seriously doubt the integrity of this notice, based on the deficiencies
previously noted above.

46.     On December 2, 2010 a Hearing was held in United States House
of Representatives in which sworn testimony and evidence was taken and accepted from
William Hultman of MERS. His sworn testimony is crucial in that he is the person that
signed what appears to be a form of a Corporate Resolution for and on behalf of MERS
that has been recorded in various places appearing to make appointments and grant
authority to many Assistant Secretaries and Assistant Vice Presidents of MERS. William
Hultman admitted under oath that he did not have the authority to make those
appointments or grant any authority for and on behalf of MERS when he signed what
appears to be MERS Corporate Resolutions. Therefore each person who signed
documents for and on behalf of MERS, whose authority or appointment which purports
to come from William Hultman, never had the authority to sign for and on behalf of
MERS which make those documents void.   Since those documents are void the
assignments from MERS are also void, as are any actions that are taken by those who
think that they hold the Mortgage on the property, after the Mortgage was assigned to
MERS. Mortgages, not Notes, can be assigned to MERS. However during the above
relevant times, MERS could not make an assignment of Mortgages out of MERS.

### As to the Standing of Home Equity Mortgage Trust 2007-1(HEMT)

47. From the searches revealed on the www.secinfo.com website, which pulls its source files from the SEC's Edgar search platform, the following information was revealed:

The initial filing for this Trust was March 1, 2007. Its last filing was March 31, 2008. The Indenture Trustee is U.S. Bank N.A.

The Depositor was Credit Suisse First Boston Mortgage Acceptance Corporation. The document Custodian was LaSalle Bank N.A.

The Cut-off Date for original placement of the mortgage loans into this trust was February 1, 2007. The Closing Date for this trust was March 9, 2007. The conveyance via assignment did not occur until July 28, 2011, over four years after the closing date of this trust. The Plaintiffs believe that this Note, despite the **_Carpenter_** **issues**, *supra,* did not make the trust pool; thus in violation of New York Trust Law.

48. The Trust filed an SEC Form 15-D(6) [Notice of Suspension of Duty to File Reports] under Rule 12h-3 (b) (1) (i) on January 30, 2008, showing a total of 9 certificate holders at the time of filing.

**Further verification of this trust may be found specifically at:** http://www.secinfo.com/ $/SEC/Registrant.asp?CIK=1391788

### As to Fannie Mae's Participation in this Chain of Title

49. The issues involving the foregoing entity arise from a document filed in the land records of Maricopa County, Arizona, bearing Instrument #2011407475, the last known sale known as a "Trustee's Deed Upon Sale". This was recorded on May 13, 2011 and precedes the assignments to the trust on behalf of GMAC Mortgage, LLC. Again, the issues involving Carpenter come into play here.

50.    Here is the information obtained from the "Loan Lookup" feature on Fannie
Mae's website:

**Match Found.**

Based on the property information entered, it appears Fannie Mae owns a loan at this address.

A "Match Found" status does not guarantee or imply that you will qualify for a Making Home Affordable
refinance or modification.

If you're interested in a refinance, please contact your mortgage lender or servicer (the organization to
whom you make your monthly mortgage payments) to confirm these results and ask about the Home
Affordable Refinance Plus program.

You can find more information at MakingHomeAffordable.gov. View Frequently Asked Questions for
this Loan Lookup tool. Thank you for contacting Fannie Mae For verification, please visit:
http://www.fanniemae.com/loanlookup/

51.    The problem herein is that there was a Cancellation of Trustee's Sale filed in
the land records of Maricopa County, Arizona on November 18, 2011, bearing
Instrument #20110956854 that appears to contradict the information contained in the
foregoing filing. The document clearly references the original Trustee's Sale Notice of
January 8, 2010. The Plaintiffs believe that this further convolutes the chain of title with
multiple issues including that Fannie Mae did not hold the Mortgage.

52.    If Fannie Mae did own the subject property, why then is it AGAIN, up for
Trustee's Sale? Again, it does not appear that the left hand knows what the right hand is
doing and Executive Trustee's Services, LLC appears to be at the center of this
controversy. Executive Trustee Services is a GMAC company.

53.    On February 16, 2012 an Option to Purchase was granted to Plaintiff Paul
Papas and/or his assigns the Option "the FIRST right to purchase the Seller's property and
the Buyer or their representatives all of the necessary rights to immediately list for sale,
market, negotiate and enter into a contract to lease or sell immediately to a third party

for profit. All documentation in connection with the foregoing will be made available at

the request of all Lenders, Sellers, and Buyers and/or assigns involved in the transaction."

from Plaintiff Kathrina H. Tobias, which was recorded March 3, 2012

**IN SUMMARY**

54.    From indications of the slander of title, because the trustees were not the

legitimate trustees (because of improper conveyances), the ***Trustees have been acting***

***outside of the legal capacity*** in instituting foreclosure actions on behalf of convoluted

chain of lenders who have convoluted the chain of title and unlawfully disseized the

Plaintiff-Homeowner of her estate.

55.    The Plaintiffs do not believe that any lender herein can mitigate their damages

based on their own negligence; thus, the Plaintiff-Homeowner currently holding fee

simple title as stated above, could not sell or convey her interests in the property either.

The only feasible way (it would appear) to cure all of these defects legally is through

judicial decree issued by the Superior Court of Maricopa County, Arizona as part of a

quiet title action.

56.    Despite the evidence of a Trustee's Deed, other entities and mesne assignees

may have a claim against the subject property however anyone who comes after MERS

does not.

57.    In addition to above title issues, neither the Mortgage holders NOR the Note

holders decided to participate in the Probate action of the Estate of Derek D. Moss

within the Maricopa County Superior Court. According to the filed Closing Statement

within that action the Estate was Insolvent. The Mortgage holders and Note Holders

waived their right to collect anything they may have perceived was due.

58.    At all material times hereto, **Defendants Peoples and GMAC** are actively engaged

in the business of conducting "Trustee's Sales" of residential property incident to non-judicial foreclosure actions in a number of states, including Arizona.  Defendant  GMAC represents that it is the Successor Trustee in this action and the executed  NTS in its purported capacity as Successor Trustee.

59.    MERS is a privately held corporation intended to operate as an electronic registry to track servicing rights and ownership of mortgage loans in the U.S amongst its members. It is owned solely by MERSCORP, Inc., a Delaware corporation, which was in turn formed by financial and insurance institutions associated with the origination, servicing, and insuring of loans securitized by real estate (*e.g.*, Wells Fargo & Company, Fannie Mae, Freddie Mac, Countrywide, GMAC, Bank of America, American Land Title, First American Title, *etc.*).

C.  Material Facts Common to All Counts

60.    At all material times hereto, Defendants Peoples and GMAC  are seeking to conduct a non-judicial foreclosure based on the power of sale contained in the DOT.

61.    Pursuant to the power of sale contained in the DOT, Defendants Peoples and GMAC seek to exercise the remedy of a non-judicial sale of the Property pursuant to the NTS.

62.    At all material times hereto, Defendants Peoples and GMAC have no power to conduct a non-judicial foreclosure because Defendants have failed to record all assignments of the Deed of Trust recorded on October 30, 2006 as required by law.

63.    At all material times hereto, Defendant GMAC's NOD is defective in that it grossly overstates the sums due and owing under obligation.

64.     Defendants' actions in pursuing a non-judicial foreclosure wrongfully invoke the

power of sale because Defendants have failed to comply with the preconditions necessary

to invoke the power of sale.  Defendants' ability to invoke the power of sale is expressly

conditioned upon Defendants' compliance with applicable law.

65.     Defendants' failures to abide by the non-judicial foreclosure statutes constitutes

a breach of the DOT contract because Defendants have sought a remedy under the DOT to

which they are not entitled and because Defendants have sought to foreclose non-judicially

without meeting the requirements set forth in the ARS.

66.     Defendants have wrongfully exercised a remedy that arises purely as a result of

contract.

67.     As Defendants exercise of said remedy is wrongful, Defendants' wrongful exercise

of the power of sale constitutes a breach of contract.

68.     Section 22 of the DOT specifically provides for attorney fees in the event that

Defendants prevail upon its exercise of the power of sale, Plaintiff is also entitled to its

attorney fees in the event Defendants' exercise of the power of sale is deemed wrongful

because the law specifically provides:

> In any action or suit in which a claim is made based on a contract that
> specifically provides that attorney fees and costs incurred to enforce the
> provisions of the contract shall be awarded to one of the parties, the
> party that prevails on the claim shall be entitled to reasonable attorney
> fees in addition to costs and disbursements, without regard to whether
> the prevailing party is the party specified in the contract and without
> regard to whether the prevailing party is a party to the contract.

69.     As Defendants' remedy is based purely on a contract, and as the contract at issue

specifically provides that attorney fees and costs incurred to enforce the provisions of the

contract, Plaintiff is entitled to an award of its fees if it prevails in voiding, invalidating, or setting aside the remedy chosen by Defendants – specifically, Defendants' election to invoke the power of sale contained in the DOT. In the event Defendants' invocation of the power of sale is deemed wrongful, Plaintiff's claim clearly falls within the law because Defendants' claim of the right to foreclose non-judicially arises squarely out of a contract that specifically provides for an award of attorney fees.

**FIRST CLAIM FOR RELIEF**

WRONGFUL FORECLOSURE –VIOLATION OF LAW – FAILURE TO RECORD ASSIGNMENTS OF THE

DEED OF TRUST

(All Defendants)

70.     Plaintiff re-alleges the paragraphs set forth above and incorporates them herein by reference.

71.     Arizona's trust deed law is a strict compliance statutory system. Because there is no judicial supervision and because the non-judicial process is essentially self-regulated by lenders, substantial compliance alone is insufficient. Failure to comply strictly with the statutory process is fatal to a non-judicial foreclosure action.

72.     Arizona Courts have specifically stated that invalidation of a sale is a valid remedy in the event that the preconditions of a Trustee's Sale are not followed.

73.     Arizona Law expressly states that "[t]he trustee may foreclose a trust deed by advertisement and sale in the manner provided in the ARS if [t]he trust deed, *any assignments of the trust deed by the trustee or the beneficiary* and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the

property described in the deed is situated". (Emphasis added).

74.     Arizona Law expressly conditions a trustee's ability to initiate a non-judicial foreclosure on the recordation of *any* assignments of the Deed of Trust.

75.     In the present case, there are multiple unrecorded assignments of the Deed of Trust, more specifically described as follows:

76.     The Trustee of the Trust  in which the Note is the hands of is governed by a strict set of regulations contained in 26 U.S.C. §§ 860(D)-860F.

77.     The Trust of which the Note is governed by the Trustee is also governed by a series of contractual agreements and addenda known collectively as the Pooling and Servicing Agreements.  Relevant portions of the Pooling and Servicing Agreement are attached hereto as Exhibit 9.

78.     The Trust is subject to strict statutory rules controlling such real estate mortgage investment conduits (REMIC), wherein so long as they comply fully with strict regulatory requirements (*inter alia*, 26 U.S.C. §§ 860D, 860F(a)(2) and 860G(a)(3)-(4)) designed to ensure its passive nature, they can be structured as a conduit trust that avoids taxation at the entity level. To qualify as a "passive pass-through" entity, only a fixed, identified and generally static pool of loans is permitted into the Trust upon its inception (known as the "Cut-off Date"), permitting tax liability on the trust's income to be incurred only upon its receipt by the upper-tier investors, while tax liability bypasses the REMIC entirely by virtue of its passive entity structure.  Without use of such a pass-through structure, asset-generated income would incur double taxation, first at the investment entity level and then at the upper-tier investor level.  In return for this preferential pass-through tax status, strict

compliance with Code requirements controlling timing of asset transfer to the trust, trustee maintenance of assets properly transferred to the trust, and ownership of trust assets by upper-tier investors is required. In its capacity as trustee for the present REMIC, GMAC powers are constrained and controlled not only by cited Internal Revenue Service code and rules, but also by the provisions of the REMIC's governing agreement, known as the Pooling and Servicing Agreement ("PSA"), dated as of November 14, 2006.

79.     The Pooling and Servicing Agreements set forth a very specific method for how the Trust obtains interests in mortgages. The series of steps required to admit a mortgage into the Trust is explicitly designed to ensure that the Trust remains as a passive investment entity so that it retains its preferential tax status.

80.     The Pooling and Servicing Agreement governing the Trust requires that any loans conveyed into the HEMT be conveyed as stated above in trust number 2007-1:

81.     It is clear from the record that there are at least two unrecorded assignments of the DOT.

82.     First, there is no recorded assignment to **Home Equity Mortgage Trust 2007-1**

83.     Second, there is no recorded assignment from **Home Equity Mortgage Trust 2007-1**

84.     In the event Defendants purport that these assignments are merely assignments of the Note and do not constitute assignments of the DOT, Defendants should recognize the simple fact that according to the United States Supreme Court  where  the assignment of a mortgage, *__independent of the debt which it is given to secure, is an unmeaning[ful]__*
*__ceremony" Carpenter v. Longan__* **issues (83 U.S. 271, 274; 1872)**, Restatement (Third) of

Property:  Mortgages § 5.4(a).

85.     There are, at an absolute minimum, two unrecorded assignments of the DOT
which must be recorded before the initiation of a non-judicial foreclosure.  Defendants'
failure to record these assignments is absolutely fatal to the non-judicial foreclosure and
render the non-judicial foreclosure void *ab initio*.

86.     Plaintiff asserts that the Code makes allowance for the REMIC to purchase certain
"qualified loans" four years after the trust closed is not possible and a violation of 26 U.S.C.
§ 860G(a)(3)(A)(ii). Provision is also made in the Code and in the PSA for replacement of
"defective" loans (which after the Closing Date are discovered not to meet the
requirements of the PSA) with qualified replacement mortgages. However, the *maximum*
time allowed for replacing a defective loan is two years from the Cutoff Date. 26 U.S.C. §
860G(a)(4)(B)(ii). Consequently, the subject loan could not have been added to the REMIC
after the trust closed under any circumstance and any attempt to do so would constitute a
"prohibited transaction" within the meaning of Section 860F, which also imposes a 100%
tax on each prohibited transaction.  To prevent this outcome, the PSA prohibits transactions
purporting to transfer interest into the REMIC after the drop dead date.

87.     Moreover, the laws of the state of New York govern the Trust as set forth in the
PSA. New York law provides, in relevant part, that "every sale, conveyance or other act of
the trustee in contravention of the trust, except as authorized by this article and by any
other provision of law, is void." NY Estates, Powers and Trusts Law § 7-2.4. Any attempt to
admit the subject loan into the pool after the trust closed would be in express
contravention of the PSA, which set up and controls the Trust, and thus would be void. As a

matter of law, the Trust could not acquire the subject loan after the trust closed and any
transfer after that date is void as a matter of law.

88.     Moreover, the fact that there are multiple unrecorded assignments of the Deed
of Trust render Defendants non-judicial foreclosure void *ab initio* according to law.

89.     As Defendants have failed to comply with the preconditions necessary to initiate
a non-judicial foreclosure, the subject non-judicial foreclosure is void as a matter of law.

### SECOND CLAIM FOR RELIEF

WRONGFUL FORECLOSURE – INVALID BENEFICIARY

90.     Plaintiff re-alleges the paragraphs set forth above and incorporates them herein
by reference.

91.     As a matter of law, the Trust could not acquire or have acquired the subject loan
after it closed and any transfer after that date is void as a matter of law.

92.     As such an assignment would contravene the express purpose of the trust, and
violates not only the PSA but also the § 7-2.4 of the NY Powers and Trusts Law, therefore
rendering any such assignment void as a matter of law.

93.     As such an assignment is void as a matter of law, the defunct trust has no power
to appoint a successor trustee in this non-judicial foreclosure and fails as a beneficiary as a
matter of law.

94.     As such the entire non-judicial foreclosure process initiated pursuant to  the
Note purported ownership is void *ab inito* and cannot serve as a valid basis on which to
conduct a non-judicial foreclosure.

**THIRD CLAIM FOR RELIEF**

WRONGFUL FORECLOSURE – INVALID BENEFICIARY AND FAILURE OF AGENCY

95.    Plaintiff re-alleges the foregoing paragraphs and incorporates them herein by reference.

96.    All defendants working together are conducting a wrongful foreclosure, as described in particular as follows: MERS could not act as nominee/agent for a principal to effect an assignment because the principal for whom MERS purported to act as "beneficiary" did not hold Plaintiff's loan on that date.  Consequently, DOT was severed from the Note at the time of the purported assignment and the ADOT was legally meaningless and could convey nothing.

97.    As a threshold matter, MERS fails to meet the definition of a beneficiary as set forth by law. Specifically, MERS fails to meet the definition of a beneficiary because the law defines a beneficiary as "the person named or otherwise designated as the person for whose benefit a trust deed is given."  Clearly, the prefatory clause "the person named or otherwise designated" is modified by the operative clause "as the person for whose benefit a trust deed is given."  MERS is manifestly NOT the person for whose benefit the trust deed is given and as such, fails to satisfy the statutory definition of a beneficiary.

98.    There is nothing in the DOT that confers on MERS the power to assign security interests of its own initiative. Such a power is outside the scope of a nominee, whose self-described role is to act as a limited agent on the Originating Lender's behalf. No provision found anywhere within the DOT provides any basis for asserting that MERS has the power

to assign security interests. To the contrary, the only reference within the DOT to any powers that MERS may have is through an explicitly *conditional* grant, which limits the exercise of such powers by the phrase, "if necessary to comply with law or custom." Plaintiff asserts that nothing in either Arizona law or custom makes it "necessary" for MERS to effect such assignments. Such transactions have occurred for many years in Arizona without incident and no law or custom has made or makes it necessary now to conduct them by means of an agent such as MERS.  Indeed, the only way MERS conditional grant of authority could possibly make it "necessary" for MERS to effect such assignments is if MERS *was* the Beneficiary, a scenario in which only MERS, but *not* the Lender would have the power to effect such an assignment. Given MERS' passive nature as a member-administered electronic database designed to enable its members to track loans, it is inconsistent with such a limited role to assume that its powers, without more, would include the assignment of security instruments associated with those loans.

99.     If MERS claims, however, that it is acting under apparent authority on behalf of the LENDER, such authority comes within the Statute of Frauds, and without a writing explicitly granting it such authority, it also must fail. ARS 44-101 statute of frauds applies to an agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing.

100.  Plaintiff notes that MERS' usage of "beneficiary" is entirely consistent with its own internal Rules of Membership, which consistently refer to *lenders* (whether members of not) as the parties that are the "beneficial owners" and who hold the "beneficial

ownership" of the loans that are registered on its system.[1] This usage in its Rules of Membership appears to be consistent with ARS, since only the beneficial owner can logically be the beneficiary. However, any attempt to claim that this usage in the DOT is synonymous with the statutory definition is manifestly inconsistent both with Arizona law and the nature and function of a trust deed.

101.   Indeed, were MERS the beneficiary, it would follow that the Lender was *not* the beneficiary which would necessitate the erroneous conclusion that the DOT is not given for the Lender's benefit which would have a number of absurd and inconsistent results such as the fact that:

a.   The Lender would be unsecured as to the loan;

b.   The Lender would be unable to assign the security instrument purportedly securing its interest.

c.   The Lender would have no right to enforce payment because the Lender would be unable to foreclose in the event of a default.

d.   MERS may have the right to collect payment.

e.   MERS would have no obligation to forward payments on to the Lender.

f.   MERS may not have the power to foreclose on its own initiative.

g.   MERS does NOT have the power to assign the DOT irrespective of who owns the Note.

h.   MERS would have the power to demand partition of the property.

---

1

The most current version of the MERS Rules of Membership are available to the general public at MERS' own website, at this URL: www.mersinc.org/files/filedownload.aspx?id=172&table=ProductFile.

i.  MERS would have acquired substantial powers under the DOT for which it paid
no consideration whatsoever.

j.  The DOT would be separated from the obligation it secures, rendering the Note
unsecure and the DOT a nullity.

102.    These results are wildly inconsistent with the other clear provisions found within
the four corners of the DOT. A consistent reading of the DOT leads necessarily to the
conclusion that MERS has appropriated a statutory term and modified it for its own
proprietary purposes. But in no case is there equivalence between "beneficiary" in ARS and
this usage. *See U.S. Bank National Association v. Flynn*, Civ. No. 11-8011, June 23, 2011 at
*2 (Columbia County Court 2011) (the beneficiary must be the person for whose benefit a
trust deed is given, so when borrower owes money to the lender, rather than to MERS,
"MERS does not become the beneficiary, irrespective of what is stated in the deed of
trust.") Thus, because MERS is not the beneficiary but solely the agent of the beneficiary,
its role and powers are limited to whatever it is authorized to do as an agent.

103.    **MERS powers as an agent cannot exceed those of the principal**, which is the
originating lender.  Despite the fact that MERS powers cannot exceed those of the principal,
MERS claims not only that it is an agent of the beneficiary at the same time MERS claims
that it is the beneficiary itself, but MERS also claims powers of agency that exceed the
powers of any beneficiary as contemplated under the Arizona Trust Deed statutes ARS
chapter 33 – specifically, MERS claims that its beneficial interest in the DOT transcends
whatever happens to the Note, that even when the principal who is the originating lender,
has assigned all rights, title and powers under the obligation to another party, that MERS

remains as the beneficiary of the DOT. This conception of agency and of the beneficial interest in a DOT is wholly unsupported by any recognized concept of agency and is wildly inconsistent with the Arizona Trust Deed statutes.

104.    MERS status as an agent of the beneficiary terminates the moment that the originating lender conveys its interest. As such, MERS lacked the authority to convey any interest in the DOT when it purported to assign it..

## FOURTH CLAIM FOR RELIEF

### WRONGFUL FORECLOSURE – FAILURE OF CONSIDERATION

105.    Plaintiff re-alleges the paragraphs set forth above and incorporates them herein by reference.

106.    In the addition to the foregoing, and in the alternative, MERS also fails as a proper beneficiary not only because MERS fails to meet the statutory definition of a beneficiary  and also because MERS fails as a party to the contract altogether because MERS supplied no consideration of any kind to receive the beneficial interest alleged.

107.    The DOT is a contractual agreement executed by both Plaintiffs' predecessor in interest and GMAC.

108.    As such, the DOT is governed by the rules of contract formation that specify that a contract lacking in consideration is void *ab initio*. Any contract lacking in consideration fails for lack of consideration.

109.    MERS supplied no consideration whatsoever to Plaintiff in the DOT.

110.    Since MERS supplied no consideration to Plaintiff in the DOT, MERS has no valid beneficial interest in the contract and the contract fails as to MERS and is void *ab initio* as

to any beneficial interest purportedly held by MERS.

## FIFTH CLAIM FOR RELIEF

## <u>WRONGFUL FORECLOSURE – INVALID SUCCESSOR TRUSTEE</u>

### GMAC

111.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

112.    The foreclosure process initiated by Defendant should be declared invalid because Defendant GMAC was never properly appointed as Successor Trustee as William Hultman did ***not*** have the authority to appoint persons to act for and on behalf of MERS and by reason of the following:

  a.  Only the beneficiary has the power to appoint a successor trustee.

  b.  Because the Trust could not have legally received the Loan on the date of the purported ADOT, it could not act as beneficiary to appoint a successor trustee.

  c.  Because MERS fails to qualify as a beneficiary under the DOT, MERS lacks the capacity to appoint any party as a Successor Trustee.

113.    As Defendant GMAC was never properly appointed as Successor Trustee, Defendant GMAC is unqualified to issue any Notice of Default and Election to Sell.

114.    As Defendant GMAC was never properly appointed as Successor Trustee any and all foreclosure activity initiated by Defendant GMAC pursuant to an invalid appointment of successor trustee is equally invalid and cannot serve as a legitimate basis for a non-judicial foreclosure.

## SIXTH CLAIM FOR RELIEF

### WRONGFUL FORECLOSURE – IMPROPER ACCOUNTING AND DEFECTIVE NOTICE OF DEFAULT

#### AND ELECTION TO SELL

#### (GMAC)

115.    Plaintiff re-alleges the preceding paragraphs set forth above and incorporates them herein by reference.

116.    At all material times hereto, all parties subsequent to the creation of the DOT are falsely claiming rights to enforcement of powers incident to either the Note or DOT because a broken chain of assignment exists.

117.    In addition to the invalidity of the NOD as set forth above, equally fatal to the present foreclosure action is Defendants' failure to properly account for the sums due and owing set forth in the most recent Notice of Default and Election to Sell.

118.    The NOD executed by Defendant GMAC grossly overstates the sum due and owing and as such materially misrepresents a critical piece of information that impacts Plaintiff's substantive rights.

119.    Assuming *arguendo* that GMAC had the authority to issue a Notice of Default in the first place, then GMAC had the authority to issue said Notice of Default.

120.    The Notice of Default and Election to Sell therefore overstates the sum allegedly due.

121.    Defendants' failure to correctly cite the correct sum due and owing, renders Defendants' Notice void ab initio and cannot serve as a valid basis on which to conduct a non-judicial foreclosure.

**SEVENTH CLAIM FOR RELIEF**

<u>INJUNCTIVE RELIEF</u>

(All Defendants)

122.    This is an action for temporary and permanent injunctive relief that is brought
pursuant to applicable law and Arizona Rules of Civil Procedure.

123.    The Rules expressly provide that a temporary restraining order or preliminary
injunction against the pending trustee's sale may be allowed when it appears that a party is
entitled to relief demanded in a pleading and such relief or any part thereof consists of a
restraining the commission or continuance of some act that the commission or
continuance of which during the litigation would produce injury to the party seeking relief,
or when it appears that the party against whom a judgment is sought is doing or threatens
or is about to do or is procuring or suffering to be done some act in violation of the rights
of a party seeking judgment concerning the subject matter of the action and tending to
render the judgment ineffectual.

124.    The Rule  expressly provides that a temporary restraining order may be granted
without written or oral notice to the adverse party when it appears from the specific facts
shown by affidavit that immediate and irreparable injury, loss, or damage will result to the
applicant before the adverse party or the adverse party's attorney can be heard in
opposition, and the applicant's attorney submits a declaration setting forth the efforts, if
any, which have been made to notify defendant or defendant's attorney of the application,
including attempts to provide notice by telephone, and the reasons supporting the claim
that notice should not be required.

125.    Plaintiff has set forth that the Defendants are planning to conduct an unlawful sale of Plaintiff's property by means of Defendant Peoples and GMAC, which are operating and have acted to defraud and wrongfully deprive Plaintiff of its property and possessory interests.

126.    Defendants' actions thus constitute actions in violation of the Plaintiff's legal rights, actions specifically intended to subvert the legislative purpose intended in creating non-judicial foreclosure as an alternative to requiring a judicial proceeding when foreclosing a security interest as a result of an alleged default by the debtor and, as a result, if the Defendants are not restrained by Order of this Court, Plaintiff will suffer immediate and irreparable injury, loss, and damage.

127.    Plaintiffs have a clear legal right to seek temporary and permanent injunctive relief as Plaintiff Kathrina H. Tobias owns the Property.   Defendants are seeking to non-judicially foreclose, without satisfying the necessary statutory requirements and without any evidence that they own the full and unencumbered interest in either the Note or the DOT. Defendants are not, therefore, entitled to take possession, custody or control of the Property.

128.    The specific facts set forth in this Complaint and supporting Affidavit demonstrate that unless an emergency temporary injunction stays the pending sale, Plaintiff will suffer irreparable injury, loss, and damage, and that said damage is of a unique form of damage personal to Plaintiff.

129.    As Defendants have failed to satisfy the statutory requirements to conduct a non-judicial foreclosure and have failed ownership interests in either the Note or the DOT, none

of the Defendants possess legal standing to lawfully foreclose on Plaintiff's Property.

130.   Furthermore, there is no harm to Defendants through the granting of the requested relief because the property has not been resold and all parties remain the same since initiation of the foreclosure action. Any claimed harm by Defendants is substantially outweighed by the irreparable harm to the Plaintiff if the requested relief is denied.

131.   There is substantial interest to the Court in protecting the Plaintiff's and also the public's interest by granting the requested relief, as not only Plaintiff, but the public in general will be harmed by the unlawful, deceptive, bad faith, and illegal conduct of the Defendants if the relief requested is not granted.

132.   The Defendants non-judicial foreclosure is being conducted in clear violation of the requirements of the law and the Defendants fail to meet the statutory definition of a beneficiary under  the law.  Plaintiffs can readily sustain their burden of proof in any temporary or permanent injunction hearing. The transfer of title away from the Plaintiffs is and would be a clear violation of ARS 44-1001, *et seq.* The property is the asset, the Defendants are the Debtors, and the Plaintiffs are the Creditors and have a claim pursuant to  ARS 44-1001, *et seq*

133.   Because Defendants do not have any demonstrable legal interest in either the Note or the DOT, and because any non-judicial foreclosure would be void *ab initio* and as a result no harm will occur to Defendants in granting the requested relief, and that restraint of Defendants should be limited to judicial remedies, Plaintiff should not be required to post bond or other security as a prerequisite to the granting of the relief requested herein pursuant to Arizona Rules of Civil Procedure.

WHEREFORE, Plaintiff respectfully asks the Court to take immediate jurisdiction of this matter and enter an Order granting temporary and permanent injunctive relief expressly precluding further attempts to transfer interests in the subject Property, Note, or DOT until such time as a show cause hearing may be heard and allow Plaintiff to present evidence of the claims Plaintiff has alleged in this Complaint.

WHEREFORE, Plaintiff asks the Court to permanently enjoin any further attempts by any of the Defendants or their agents from further initiating non-judicial foreclosure attempts but relegate Defendants to use of judicial foreclosure action to foreclose any alleged breach or payment default.

### EIGHTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

### (All Defendants)

134.     Plaintiff re-alleges the paragraphs as set forth above and incorporates them herein by reference.

135.     This is an action for declaratory relief which is being brought pursuant to  Arizona Revised Statutes  to declare that Defendants have no legal or equitable rights under the Note or the Deed of Trust to conduct a non-judicial foreclosure.

136.     This Court has the power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed, and that the declaration sought may be either affirmative or negative in form.

137.     Arizona Law expressly  provides that any person interested under a deed, will, written contract, or other writing constituting or whose rights, status, or other legal

relations are affected by a constitution, statute, municipal charter, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitution, statute, municipal charter, contract, or franchise and obtain a declaration of rights, status, or other legal relations there under. A contract may be construed either before or after there has been a breach thereof.

138.    The act is declared to be remedial and that its' purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered.

139.    Arizona Law does not limit or restrict the exercise of the general powers conferred in any proceedings where declaratory relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty.

140.    Plaintiff and Defendants are "persons" within the meaning and definition of "person".

141.    Plaintiff is a person who has an interest under a deed and written contracts and instruments and whose rights, status, or other legal relations are affected by the contracts and instruments and Defendants' actions in connection therewith, and Plaintiff may thus have determined any question of construction or validity arising under the instruments and contracts and obtain a declaration of rights, status, or other legal relations there under.

142.    In view of the fact that:

(a)    There are multiple unrecorded assignments of the DOT; and

(b)    Defendants have failed to record all assignments of the DOT as required by and

    (c)     GMAC does not qualify as a trust

    (d)     MERS does not meet the statutory definition of a beneficiary; and

    (e)     There is a failure of agency related to MERS; and

    (f)     The DOT fails as to MERS for lack of Consideration; and

    (g)     The powers of the original trustee were never properly vested in GMAC

    (h)     The NOD grossly overstates the sum due and owing on the obligation;

143.    The Plaintiff is in doubt and is uncertain as to its rights under the Note and DOT. Plaintiff is uncertain as to its legal rights and relations as the aforementioned contracts and contractual relations have been altered by the actions of the Defendants.

144.    Plaintiff is legally entitled, through this action for Declaratory Relief, to have such doubt and uncertainty removed.

145.    Plaintiff is entitled to further relief based on this action for a Declaratory Judgment, and Plaintiff has asserted such further relief in Count 7 of this Complaint for Temporary and Permanent Injunctive Relief, which has been asserted as necessary and proper to preserve the status quo during the pendency of and through the full disposition of the merits of this proceeding.

146.    As the disposition of this action on the merits will require the determination of multiple issues of fact, the trial of such issues of fact are, pursuant to the ARS, to be in the same manner as issues of fact are tried in determined in other actions at law, and Plaintiff thus demands trial by jury on all issues of fact.

WHEREFORE, Plaintiff may bring an action to Quiet Title at any time in order to determine if any parties have standing in which to assert right to payment of the underlying Note.

147.    Plaintiff also demands an award of costs pursuant as set forth above.

WHEREFORE, Plaintiff demands that the Court adjudge/order that:    .

A.    Defendants have no legal standing to maintain the non-judicial foreclosure;

B.    There is no legal conveyance of either the Note or the Deed of Trust from the

original lender to GMAC any party conducting the non-judicial foreclosure;

C.    There is no legal appointment of a successor trustee;

D.    That the attempt by Defendants to conduct the non-judicial foreclosure sale

of the Property is legally defective and void *ab initio* so as to preclude it from

enforcement; and

E.    The Plaintiff is entitled to judgment for Plaintiff's Court costs, expenditures,

reasonable attorney's fees pursuant to the contractual provisions of the DOT

prevailing party fee as provided by law as well;

F.    A trial by jury on all triable issues.

Dated this 7nd day of March 2012.

Paul N. Papas II, pro se
4727 E Bell Rd
Suite 45-350
Phoenix, AZ 85032
602-493-2016

Kathrina H. Tobias, pro se
8025 East Krail Street
Scottsdale, AZ 85250

Affidavit In Support

I, Paul N. Papas II state and depose the following based upon personal information, knowledge,
and belief. The facts and Exhibits stated above are true. Signed under the pains and penalties of
perjury.
March 7, 2012

Paul N. Papas II

**Page 37 of 37**