## **EXHIBIT 7**

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Tina Hays
Filing ID 1224482
3/23/2012 3:44:00 PM

1 **COLT B. DODRILL, ESQ.**
**Nevada Bar No. 23907**
2 **WOLFE & WYMAN LLP**
**11811 N. Tatum Blvd., Suite 3031**
3 **Phoenix, AZ 85028-1621**
**cbdodrill@wolfewyman.com**
4 **Tel:  (602) 953-0100**
**Fax: (602) 953-0101**
5

6 Attorneys for Defendant
GMAC MORTGAGE, LLC
7

8 **ARIZONA SUPERIOR COURT**

9 **MARICOPA COUNTY**

10

11 PAUL N. PAPAS II, et al.,

12                    Plaintiffs,

13       v.

14 PEOPLES MORTGAGE COMPANY; GMAC
MORTGAGE, LLC,

15

16                    Defendants.

District Court Case No. CV2012-051622
Dept.

**GMAC MORTGAGE, LLC'S MOTION TO
DISMISS**

The Honorable Michael R. McVey

17       Defendant, GMAC MORTGAGE, LLC (hereinafter "GMACM"), by and through its

18 attorneys, Wolfe & Wyman LLP, hereby moves this Court, pursuant to Ariz. R. Civ. P. 12(b)(6), to

19 dismiss the Complaint on the grounds that Plaintiffs' Complaint fails to state a claim upon which

20 relief may be granted.

21       This Motion is based on the attached Memorandum of Points and Authorities filed and

22 served concurrently, all pleadings and papers on file herein, and upon such oral and documentary

23 evidence as may be presented at a hearing on this Motion if necessary.

24                    MEMORANDUM OF POINTS AND AUTHORITIES

25 **I.      STATEMENT OF RELEVANT FACTS**

26       This is a foreclosure avoidance suit.  Decedent Derek D. Moss ("Moss") and his wife

27 Kathrina H. Tobias ("Tobias") owned the subject property (Compl. at ¶ 3) subject to numerous

28 Deeds of Trust securing loans taken out by Moss that are not germane to this litigation.  Tobias

executed a Quitclaim Deed as to her interest in the Subject Property; that Quitclaim Deed was

1028822.2

1    recorded on December 19, 2005.  A copy of that Quitclaim Deed is attached hereto as Exhibit A.

2    Moss refinanced his prior loans with a $383,150.00 loan ("Subject Loan") from Peoples that is the

3    subject of this litigation.  Compl. at ¶ 22; Exhibit B.  That loan was secured by a Deed of Trust

4    recorded May 1, 2006 encumbering the Subject Property.  Exhibit B.

5        On June 13, 2008, Moss recorded Warranty Deed purporting to convey the property to Moss

6    and Tobias as "Community Property with Right of Survivorship."  A copy of that Warranty Deed is

7    attached hereto as Exhibit C.  On or about November 7, 2009, Moss passed away.  <u>See</u>, Certificate of

8    Death, a copy of which is attached hereto as Exhibit D.  Pursuant to her right of survivorship, Tobias

9    became the sole owner of the Subject Property upon Moss' death.

10        Following Moss' death, the Subject Loan went into Default.  On January 7, 2010, MERS, as

11    the nominee for Peoples substituted Executive Trustee Services, LLC ("ETS") as the Trustee under

12    the Deed of Trust.  Exhibit E.  ETS recorded and served a Notice of Default.  Compl. at ¶ 63.  On

13    January 8, 2010, MERS recorded a Notice of Trustee's Sale.  Exhibit F.  On June 15, 2010, MERS

14    recorded an Assignment of Mortgage in favor of GMACM.  Exhibit G.  ETS recorded a second

15    Notice of Trustee's Sale on November 18, 2011.  Exhibit H.

16        Tobias recorded a document purporting to be a "Contract of Sale" on March 2, 2012 in favor

17    of Paul Papas ("Papas").  Exhibit I.  This suit followed.  For the following reasons, Plaintiffs'

18    Complaint should be dismissed.

19    **II.    <u>LEGAL STANDARD FOR MOTION TO DISMISS</u>**

20        When adjudicating a Rule 12(b)(6) motion to dismiss, Arizona courts look only to the

21    pleading itself and consider the well-pled factual allegations contained therein. See, e.g., <u>Dressler v.</u>

22    <u>Morrison,</u> 212 Ariz. 279, 281 ¶ 11, 130 P.3d 978, 980 (2006); <u>Long v. Ariz. Portland Cement Co.,</u>

23    89 Ariz. 366, 367-68, 362 P.2d 741, 742 (1961). Courts must also assume the truth of the well-pled

24    factual allegations and indulge all reasonable inferences therefrom.  <u>Doe ex rel. Doe v. State</u>, 200

25    Ariz. 174, 175 ¶ 2, 24 P.3d 1269, 1270 (2001); <u>Long</u>, 89 Ariz. at 367, 362 P.2d at 742. Because

26    Arizona courts evaluate a complaint's well-pled facts, mere conclusory statements are insufficient to

27    state a claim upon which relief can be granted. The inclusion of conclusory statements does not

28    invalidate a complaint, <u>Long</u>, 89 Ariz. at 369, 362 P.2d at 743, but a complaint that states only legal

1    conclusions, without any supporting factual allegations, does not satisfy Arizona's notice pleading

2    standard under Rule 8.

3         A motion to dismiss a complaint as failing to state claim on which relief can be granted

4    admits truth of facts alleged therein for purposes of motion.  Roberts v. Spray, 71 Ariz. 60, 223 P.2d

5    808 (1950); Davis v. Aandewiel,16 Ariz.App. 262, 492 P.2d 758 (1972).  On a motion to dismiss for

6    the failure to state a claim upon which relief may be granted, courts must also assume the truth of the

7    well-pled factual allegations and indulge all reasonable inferences therefrom.  Cullen v. Auto-

8    Owners Ins. Co., 218 Ariz. 417, 189 P.3d 344 (2008).

9    **III.    LEGAL ARGUMENT**

10         Plaintiffs cannot state a claim for relief against GMACM, because their claims run afoul of

11    black-letter property law and years of foreclosure jurisprudence.

12         **A.    Plaintiffs' Claims for Declaratory Relief Fail As a Matter of Law.**

13         Plaintiffs are not entitled to have the title quieted in their favor or for similar declaratory

14    relief, because there is no question that Tobias owns the property subject to the Deed of Trust

15    securing the Subject Loan.  It has long been established that "[a] purchaser who buys real property

16    subject to a mortgage pays the consideration required by the seller and takes the land subject to the

17    encumbrances without a personal obligation to pay the mortgage, but subjects himself to loss of the

18    property if the mortgage debt is not paid." Shepherd v. May, 115 U.S. 505, 6 S.Ct. 119, 29 L.Ed. 456

19    (1885) (cited in, Del Rio Land, Inc. v. Haumont, 110 Ariz. 7, 9, 514 P.2d 1003, 1005 (1973)).  Thus,

20    the marital community of Moss and Tobias, by way of the warranty deed (Exhibit C) took title

21    subject to the Deed of Trust securing the Subject Loan.  Exhibit B.  Thus, the Deed of Trust did not

22    expire upon Moss' death, although Tobias obtained the property in fee simple pursuant to the right

23    of survivorship.  Upon Moss' death, Tobias took the property by operation of law due to her right of

24    survivorship.  A.R.S. § 33-431.  However, because the marital community had taken the property

25    subject to the Deed of Trust, Tobias also took the property subject to the Deed of Trust.  Del Rio

26    Land, Inc. v. Haumont, 110 Ariz. 7, 9, 514 P.2d 1003, 1005 (1973).

27         Similarly, the title cannot be quieted in favor of Plaintiffs, because they do not allege the debt

28    has been extinguished.  "Most of the courts hold that the statutory action to quiet title cannot be

1    sustained as against a mortgage debt confessedly unpaid." <u>Provident Mut. Building-Loan Ass'n et</u>

2    <u>al. v. Schwertner</u>, 15 Ariz. 517, 519, 140 P. 495, 496 (1914), <u>see also</u>, <u>Aguilar v. Bocci</u>, 39

3    Cal.App.3d 475, 478, 114 Cal.Rptr. 91 (1974) ("A trustor cannot quiet title without discharging his

4    debt.  The cloud upon his title persists until the debt is paid.").  The debt has not been extinguished.

5    Plaintiffs do not allege the loan is current, thus their claims fail.  Accordingly, the trustee had

6    authority to conduct the sale under the deed of trust.  <u>Hogan v. Washington Mut. Bank, N.A.</u>, 227

7    Ariz. 561, 564, 261 P.3d 445, 448 (Az. App. 2011), review granted (Nov. 29, 2011).  Accordingly,

8    they cannot quiet the title in their favor.  Therefore, their claims for declaratory relief fail as a matter

9    of law and should be dismissed.

10    **B.    Plaintiffs' Claims for Wrongful Foreclosure Fail As a Matter of Law.**

11    Likewise, Plaintiffs' claims for wrongful foreclosure fail to state a claim for relief.

12    1.    <u>The Notices Were Proper.</u>

13    The publically recorded, judicially noticeably documents demonstrate compliance with

14    Arizona's non-judicial foreclosure statute with the recording of the Notice of Default (Breach) and

15    the Notice of Sale.  Under A.R.S. § 33-808, a trustee who, after default under a deed of trust, wishes

16    to exercise the power of sale granted by A.R.S. § 33-807, is required to record and post a notice of

17    trustee's sale.  Plaintiffs admit this is the case.  Compl. at ¶ 34; <u>see also</u>, Exhibits F and G.

18    In addition to the notice of sale required by A.R.S. § 33-809(B)(2), the trustee is also

19    compelled by subsection C to mail a statement of breach of the trust deed and election of sale.

20    Plaintiffs also admit this was done.  Compl. at ¶ 63.  Thus, the foreclosure was properly noticed such

21    that Plaintiffs fail to state a cause of action against GMACM.

22    2.    <u>The Assignment is Proper</u>.

23    Plaintiffs' attempt to avoid the sale based on the assignment is improper.  First, the recording

24    of the Assignment is immaterial.  A.R.S. § 33–808(A)(1)] expressly requires that a notice of

25    trustee's sale be recorded.  "The statute, however, **does not require that an assignment of a deed**

26    **of trust be recorded before recording the notice of trustee's sale.**" <u>In re Vasquez</u>, 228 Ariz. 357,

27    266 P.3d 1053, 1055 (2011) (emphasis added).  Thus, the recording, or lack thereof, of any

28    assignments does not prevent the sale.  Moreover, Plaintiffs cannot have been harmed by alleged

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

1    multiple recordings of the same document.  "Arizona courts consistently have required as a matter of

2    judicial restraint that a party possess standing to maintain an action."  Sears v. Hull, 192 Ariz. 65, 71,

3    961 P.2d 1013, 1019 (1998).  Accordingly, this claim is also without merit.

4         Second, the parties to the Deed of Trust necessarily and mutually assented to MERS' role as

5    nominee (i.e. agent) for the beneficiary.  This is explicitly stated in the Deed of Trust.  See, Deed of

6    Trust, a copy of which is attached hereto as Exhibit B.  Black letter agency principles give MERS

7    the authority to assign the Note and Deed of Trust.  See, Fontenot v. Wells Fargo Bank, N.A., 198

8    Cal.App.4th 256, 271, 129 Cal.Rptr.3d 467, 479–80 (2011) ("[T]he allegation that MERS was

9    merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid

10   assignment of the note on behalf of the original lender.").  Indeed, Courts hold that MERS, as the

11   nominee for the beneficiary, has the authority to assign both the Note and the Deed of Trust:

> Although MERS is not in fact the beneficiary, the attempt to name it as such
> coupled with the above-quoted language indicates an intent to give MERS the
> broadest possible agency on behalf of the owner of the beneficial interest in the
> underlying debt. Such agency would include the ability to sell the interest in the
> debt. The lender or its assigns (the true beneficiary) would of course have
> standing to challenge MERS' actions on its behalf—for example, if MERS
> absconded with the proceeds of such a sale—but no entity claiming to hold the
> underlying debt has made any such challenge here. Also, it is even more clear that
> MERS may directly transfer the interest in the deed of trust itself, and the interest
> in the note may follow the deed of trust as a matter of law.

17   Smith v. Cmty. Lending, Inc., 773 F. Supp. 2d 941, 944 (D. Nev. 2011) (Jones, J.) (citing, See

18   Restatement (Third) of Property (Mortgages) § 5.4(b)).  Moreover, the Ninth Circuit recently had

19   occasion to address the role of MERS in the foreclosure context and found no defect in foreclosures:

> MERS is not involved in originating the loan, does not have any right to payments on
> the loan, and does not service the loan. MERS relies on its members to have someone
> on their own staff become a MERS officer with the authority to sign documents on
> behalf of MERS.  As a result, most of the actions taken in MERS's own name are
> carried out by staff at the companies that sell and buy the beneficial interest in the
> loans.

24   Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039-40 (9th Cir. 2011) (citing Robert

25   E. Dordan, Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the

26   Chance for a Peaceful Existence, 12 Loy. J. Pub. Int. L. 177, 182 (2010)).  Thus, Plaintiffs' attempt

27   to avoid the foreclosure by raising a "MERS issue" is without merit.

28   ///

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

3.    The Substitution is Proper.

Moreover, Plaintiffs' complaint regarding the Substitution of Executive Trustee Services, LLC as the foreclosure trustee is without merit.  Arizona law provides that the trustee under a Deed of Trust may be substituted from time to time.  "The beneficiary may at any time remove a trustee for any reason or cause and appoint a successor trustee, and such appointment shall constitute a substitution of trustee."  Ariz. Rev. Stat. Ann. § 33-804(B).  Such was the case herein.  See, Substitution of Trustee, a copy of which is attached hereto as Exhibit E.  Again, MERS, as the nominee for the beneficiary, has the agency authority to make the substitution.  Fontenot, 198 Cal.App.4th at, 271.  Thus, the January 7, 2010 Substitution of Trustee is proper.  Plaintiffs' attempts to avoid the sale on that ground therefore fails.

4.    The Note Was Not "Split" From the Deed of Trust.

Similarly, Plaintiffs' tiresome "split the note" claim has been repeatedly rejected by numerous courts.  Indeed, the Ninth Circuit recently held, "the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders."  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1044 (9th Cir. 2011).  Here, as discussed in great length above, MERS was an agent of the Lender as indicated in the Deed of Trust and assented to by Peoples and Moss.  Exhibit B. Therefore, the note was never split from the Deed of Trust.  Accordingly, the foreclosure is not wrongful.  Therefore, Plaintiffs' wrongful foreclosure claims fail as a matter of law.

5.    GMACM Need Not Hold the Note.

Likewise, to the extent Plaintiff makes a "show me the note" argument, that argument fails as a matter of law.  "Arizona's non-judicial foreclosure statute does not require presentation of the original note before commencing foreclosure proceedings."  Hogan v. Washington Mut. Bank, N.A., 227 Ariz. 561, 564, 261 P.3d 445, 448 (Ct. App. 2011), review granted (Nov. 29, 2011) (citing Diessner v. Mortg. Elec. Reg. Sys., 618 F.Supp.2d 1184, 1187 (D.Ariz.2009) and Mansour v. Cal–W. Reconv. Corp., 618 F.Supp.2d 1178, 1181 (D.Ariz.2009) (rejecting plaintiff's 'show me the note' argument because "Arizona's judicial foreclosure statutes ... do not require presentation of the original note before commencing foreclosure proceedings")).  Thus, Plaintiffs' attempts to avoid the

1  non-judicial foreclosure of the Subject Property based on a "show me the note" argument are, like

2  the "splitting of the note" argument, without merit.  Therefore, the wrongful foreclosure claims

3  should be dismissed.

4      **C.**  **Plaintiffs' Injunction Claims Fail As a Matter of Law.**

5     Finally, Plaintiffs are not entitled to injunctive relief, because their claims fail on the merits.

6  <u>Shoen v. Shoen</u>, 167 Ariz. 58, 804 P.2d 787 (App.1990) (party seeking injunctive relief must show

7  strong likelihood of success at trial on merits, possibility of irreparable harm not remedied by

8  damages if injunction not granted, balance of hardships in party's favor, and public policy favoring

9  injunctive relief). Indeed, technically, injunctive relief is a remedy not a cause of action.  <u>See</u>, <u>e.g.</u>,

10  <u>I.C.C. v. Transcon Lines</u>, 115 S.Ct. 689, 694 (1995) (refers to injunctive relief as a remedy).

11  Nevertheless, because Plaintiffs' claims fail as a matter of law, they are not entitled to an injunction.

12  Therefore, this cause of action should also be dismissed.

13  **IV.**  <u>**CONCLUSION**</u>

14     For the foregoing reasons, GMAC Mortgage, LLC, respectfully requests that the Court

15  GRANT its Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief

16  can be granted and DISMISS Plaintiff's Complaint in its entirety WITH PREJUDICE and without

17  leave to amend.

18  DATED: March 23, 2012    WOLFE & WYMAN LLP

19

20

21          By: <u>/s/ **Colt B. Dodrill**</u>

22           COLT B. DODRILL, ESQ.
         Nevada Bar No. 23907

23           11811 N. Tatum Blvd., Suite 3031
         Phoenix, AZ 85028-1621

24           Attorneys for Defendant,

25           **GMAC MORTGAGE, LLC**

26

27

28

WOLFE & WYMAN LLP
ATTORNEYS & COUNSELORS AT LAW

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2012, service of the foregoing **MOTION TO DISMISS** was made on all parties as listed below by placing a true and correct copy thereof in a sealed envelope placed in the United States Mail at 980 Kelly Johnson Drive, Suite 140, Las Vegas, Nevada 89119, postage pre-paid and addressed as follows:

Paul N. Papas II
4727 E. Bell Rd.
Suite 45-350
Phoenix, AZ 85032
Plaintiff in Pro Per

Kathrina H. Tobias
8025 E. Krail Street
Scottsdale, AZ 85250
Plaintiff in Pro Per

By: _/s/ Katia Ioffe_____
    Katia Ioffe
    An employee of Wolfe & Wyman LLP

1028822.2

# EXHIBIT "A"

# EXHIBIT "A"

**CAPITAL TITLE AGENCY INC.**

Recorded at the request of *Capital Title Agency Inc.*
when recorded mail to
**DEREK D. MOSS**
**8025 E. KRAIL STREET**
SCOTTSDALE, AZ 85250

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20051626245   10/27/2005   04:25
ELECTRONIC RECORDING

1051082-2-2-1--
arellanor

# QUIT CLAIM DEED

Escrow No. **01051082**

For consideration of Ten Dollars, and other valuable considerations, I or we,

**KATHRINA H. TOBIAS** , hereby quit-claim to

**DEREK D. MOSS, her husband, as his sole and separate property**

This transfer is exempt from the affidavit of value pursuant to A.R.S. 11-1134 __B3__

all right, title or interest in the following real property situated in **Maricopa**, County, Arizona:

Lot 125, HAYDEN ESTATES, according to Book 204 of Maps, Page 46, records of Maricopa County, Arizona.

Dated this **October 18, 2005**

**KATHRINA H. TOBIAS**

# See Notary Acknowledgment Page Attached

Escrow No. **01051082**

# Notary Acknowledgment

STATE OF ARIZONA
COUNTY OF **MARICOPA** }SS:

This instrument was acknowledged before me this _____24_____ day of October, 2005 by:
KATHRINA H. TOBIAS

My Commission Expires: _May 26, 2006_



Notary Public

DERA J. LITTLES
Notary Public - Arizona
Maricopa County
My Commission Expires
May 26, 2006

Page 2 of 2

# EXHIBIT "B"

# EXHIBIT "B"

**#0401**
**CAPITAL TITLE AGENCY INC.**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20060583502   05/01/2006   02:39
ELECTRONIC RECORDING

Recording Requested By:
PEOPLES MORTGAGE COMPANY

1060213-14-1-1--
Jamesc

And After Recording Return To:
PEOPLES MORTGAGE COMPANY
4500 SOUTH LAKESHORE DRIVE, SUITE 150
TEMPE, ARIZONA 85282
Loan Number: 601535648

01060213 1/1 ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

**MIN:** 100188601000116019

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated APRIL 25, 2006 , together with all Riders to this document.
**(B)** "Borrower" is DEREK D. MOSS, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 8025 EAST KRAIL STREET, SCOTTSDALE, ARIZONA 85250

**(C)** "Lender" is PEOPLES MORTGAGE COMPANY

Lender is a ARIZONA CORPORATION                                             organized
and existing under the laws of ARIZONA
Lender's mailing address is 4500 SOUTH LAKESHORE DRIVE, SUITE 150, TEMPE, ARIZONA 85282

**(D)** "Trustee" is CAPITAL TITLE AGENCY

Trustee's mailing address is 2901 E CAMELBACK RD, PHOENIX, ARIZONA 85016

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 1 of 14

**DocMagic** *eFormss* 800-649-1362
*www.docmagic.com*

Ax3003.mzd



20060583502

(F)  "Note" means the promissory note signed by Borrower and dated  APRIL 25, 2006            .
The Note states that Borrower owes Lender  THREE HUNDRED EIGHTY-THREE THOUSAND
ONE HUNDRED FIFTY AND 00/100   Dollars (U.S. $ 383,150.00     ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MAY 1, 2036          .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider                ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider    ☐ Other(s) [specify]
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of              MARICOPA                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                 Page 2 of 14


DocMagic ⓔⓕⓜⓡⓜⓢ 800-649-1362
www.docmagic.com

LOT 125, HAYDEN ESTATES, ACCORDING TO BOOK 204 OF MAPS, PAGE 46,
RECORDS OF MARICOPA COUNTY, ARIZONA.
A.P.N.: 174-11-130 8

which currently has the address of   8025 EAST KRAIL STREET
[Street]

SCOTTSDALE                  , Arizona          85250         ("Property Address"):
[City]                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 3 of 14          DocMagic *eFerms* 800-649-1362
                                                                    www.docmagic.com

Az3003.mzd



under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                        Page 4 of 14

**DocMagic** *eFormsᵀᴹ* 800-649-1362
*www.docmagic.com*

Az3003.mzd



20060583502

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

---


Az3003.mzd

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may

---

Az3003.mzd



attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

---



20060583502

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

---

*DocMagic* ℰℱ𝑎𝑜𝑟𝑚𝑠 800-649-1362
*www.docmagic.com*

20060583502

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in

---


*DocMagic* *800-649-1362*
*www.docmagic.com*

this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Az3003.mzd



20060583502

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**



*DocMagic* *℮Ｆｏｒｍｓ* 800-649-1362
www.docmagic.com

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law.  After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale.  Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.  Trustee shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument.  Borrower shall pay any recordation costs.  Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee.  Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Time of Essence.  Time is of the essence in each covenant of this Security Instrument.

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                                    Page 12 of 14

*DocMagic* *CFarmas* 800-649-1362
www.docmagic.com

Ax3003.mzd



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DEREK D. MOSS                        -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

Witness:                              Witness:

_____    _____

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                Page 13 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Az3003.mzd



State of Arizona
County of MARICOPA

The foregoing instrument was acknowledged before me this *April 26, 2006*
by DEREK D. MOSS

_____
Signature of Person Taking Acknowledgment

*Notary*
_____
Title

_____
Serial Number, if any

DERA J. LITTLES
Notary Public - Arizona
Maricopa County
My Commission Expires
May 26, 2006

(Seal)

My commission expires: *May 26, 2006*

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02)                    Page 14 of 14

**DocMagic** *eFormz* 800-649-1362
www.docmagic.com

Az3003.mzd

# EXHIBIT "C"

# EXHIBIT "C"

**RECORDING REQUESTED BY**
**Transnation Title Insurance Company**
**AND WHEN RECORDED MAIL TO:**

**DEREK D. MOSS**
**8025 E. KRAIL ST.**
**SCOTTSDALE, AZ  85250**



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2008-0527187  06/13/08  03:26 PM
1 OF 1

GARCIAC

ESCROW NO.:  **01505388 - 243 - SS2**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Warranty Deed
### Community Property with Right of Survivorship

For the consideration of Ten Dollars, and other valuable considerations,

**Derek D. Moss, a married man**

do/does hereby convey to

**Derek D. Moss and Kathrina H. Tobias, husband and wife**

the following real property situated in the county of Maricopa, State of ARIZONA:

EXEMPT PER ARS 11-1134  B-3

**Lot 125, Hayden Estates, according to Book 204 of Maps, page 46, records of Maricopa County, Arizona.**

SUBJECT TO:  Current taxes and other assessments, reservations in patents and all easements, rights of way, encumbrances, liens, covenants, conditions, restrictions, obligations, and liabilities as may appear of record.

And I or we do warrant the title against all persons whomsoever, subject to the matters above set forth.

The Grantees by signing, the acceptance below or attached hereto evidence their intention to acquire said premises as community property with right of survivorship and not as tenants in common, nor as community property nor as joint tenancy with right of survivorship.

Dated: January 19, 2007

ACCEPTED AND APPROVED:

**Grantees:**                                          **Grantors:**

_____                    _____
Derek D. Moss                                         Derek D. Moss

_____                    _____
Kathrina H. Tobias

DERA J. LITTLES
Notary Public - Arizona
Maricopa County
My Commission Expires
May 26, 2010

2/5/2007

Escrow No.: °01505388 - 243 - SS2

State of Arizona _____

County of Maricopa _____   } SS:

On __January 25_____ , 20Ob before me personally appeared **Derek D. Moss and Kathrina H. Tobias** (name of signer),
whose identity was proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document
and who acknowledged that he/she signed the above/attached document in his or her authorized capacity (ies)

(Seal)



OFFICIAL SEAL
STEVEN M. SPEER JR.
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Comm. Expires Aug. 2, 2008

Notary Public

Commission Expires: _Aug 2, 2008_____

# EXHIBIT "D"

# EXHIBIT "D"

## CERTIFICATION OF VITAL RECORD

VERIFICATION BOX (HOLD BETWEEN THUMB AND FOREFINGER. OR BREATHE ON IT. COLOR WILL CHANGE TO BLUE AND THEN RETURN.)

# STATE OF ARIZONA

ORIGINAL
STATE
COPY

**STATE OF ARIZONA
DEPARTMENT OF HEALTH SERVICES - OFFICE OF VITAL RECORDS
CERTIFICATE OF DEATH**

DEATH NO.
102-2009-038040

| NAME OF DECEASED | A FIRST | B MIDDLE | C LAST | SEX | DATE OF DEATH | | |
|---|---|---|---|---|---|---|---|
| 1. | DEREK | DODGE | MOSS | MALE | 11-07-2009 | | |

| RACE | | WAS DECEDENT OF HISPANIC ORIGIN | | IF YES, INDICATE MEXICAN, SPANISH, PUERTO RICAN, CUBAN, ETC | | WAS DECEASED EVER IN U.S ARMED FORCES? |
|---|---|---|---|---|---|---|
| 2A. CAUCASIAN | | 2B. NO | | 2C. | | NO |

| PLACE OF DEATH | 6A COUNTY | 6B TOWN OR CITY | 6C. HOSPITAL OR INSTITUTION | (IF RESIDENCE, GIVE STREET ADDRESS) | 6D. |
|---|---|---|---|---|---|
| 5. MARICOPA | | SCOTTSDALE | SCOTTSDALE HEALTHCARE-OSBORN | | INPATIENT |

| DATE OF BIRTH | MONTH | DAY | YEAR | AGE (YEARS LAST BIRTHDAY) | IF UNDER 1 YEAR MOS DAYS | IF UNDER 1 DAY HRS MIN | MARRIED, NEVER MARRIED WIDOWED, DIVORCED (SPECIFY) | SPOUSE (IF WIFE, GIVE MAIDEN NAME) |
|---|---|---|---|---|---|---|---|---|
| 7. 02-06-1948 | | | | 8A. 61 | 8B. | 8C. | MARRIED | 10. KATHRINA HELENE TOBIAS |

| STATE AND CITY OF BIRTH | (If not in USA, name country) | CITIZEN OF WHAT COUNTRY? | SOCIAL SECURITY NO | USUAL OCCUPATION | KIND OF BUSINESS OR INDUSTRY |
|---|---|---|---|---|---|
| 11. SANTA MONICA, CALIFORNIA | | 12. INTENTIONALLY LEFT BLANK | 13. 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 | 14A. BROKER | 14B. REAL ESTATE |

| USUAL RESIDENCE | 15A. STATE | 15B COUNTY | 15C. TOWN OR CITY | 15D ZIP CODE | HOW LONG IN ARIZONA? | EDUCATION HIGHEST GRADE COMPLETED |
|---|---|---|---|---|---|---|
| 15. | ARIZONA | MARICOPA | SCOTTSDALE | 85250 | 16. 40 YEARS | 17. 4 YEARS OF COLLEGE |

| STREET ADDRESS OR R.F.D | INSIDE CITY LIMITS? | ON RESERVATIONS | PREVIOUS STATE OF RESIDENCE | | ELEMENTARY SECONDARY (0-12) | COLLEGE (1 4 5+) |
|---|---|---|---|---|---|---|
| 15F. 8025 E KRAIL ST, | 15G. YES | 15H. NO | 18. INTENTIONALLY LEFT BLANK | | 18A. | 18B. 4 |

| FATHER'S NAME | A FIRST | B MIDDLE | C LAST | MOTHER'S MAIDEN NAME | A FIRST | B MIDDLE | C LAST |
|---|---|---|---|---|---|---|---|
| 19. | WILLIAM | PORT | MOSS | 20. ELIZABETH | MARIE | ROTHRUM | |

| INFORMANT'S SIGNATURE | RELATIONSHIP TO DECEASED | ADDRESS | STREET NO | CITY AND STATE | ZIP CODE |
|---|---|---|---|---|---|
| 21. KATHRINA HELENE TOBIAS | 22 SPOUSE | 23. 8025 E KRAIL ST , SCOTTSDALE, ARIZONA 85250 | | | |

| BURIAL, CREMATION REMOVAL, OTHER (Specify) | DATE | CEMETERY OR CREMATORY - NAME/LOCATION | EMBALMER'S SIGNATURE | CERT. NO. |
|---|---|---|---|---|
| 25. CREMATION | 26. 11-10-2009 | PARADISE MEMORIAL CREMATORY, INC., 29 SCOTTSDALE, ARIZONA | 27A. INTENTIONALLY LEFT BLANK | 27B |

| FUNERAL HOME | NAME | STREET ADDRESS | CITY AND STATE | FUNERAL DIRECTOR or person acting as such (SIGNATURE) | CERT NO |
|---|---|---|---|---|---|
| 28 MORTUARY | MESSINGER INDIAN SCHOOL | 7601 E. INDIAN SCHOOL RD SCOTTSDALE, AZ | | BRIAN J MCBRIDE , FUNERAL 28A DIRECTOR | 28B 1-0782 |

ON THE BASIS OF EXAMINATION AND/OR INVESTIGATION, IN MY OPINION DEATH OCCURRED AT THE TIME, DATE AND PLACE DUE TO THE CAUSE(S) AND MANNER STATED)

| TO THE BEST OF MY KNOWLEDGE, DEATH OCCURRED AT THE TIME, DATE AND PLACE AND DUE TO THE CAUSE(S) STATED | 30 SIGNATURE AND TITLE KEYVAN KOOCHEK, M.D. | | 34. SIGNATURE AND TITLE |
|---|---|---|---|
| | DATE SIGNED (Mo., Day, Year) | HOUR OF DEATH | DATE SIGNED (Mo , Day, Year) |
| | 31. 11-09-2009 | 32. 1605 | 35. |
| | NAME OF ATTENDING PHYSICIAN IF OTHER THAN CERTIFIER | | PRONOUNCED DEAD (Mo., Day, Year) |
| | 33. | | 37. ON |

| NAME AND ADDRESS OF CERTIFIER, PHYSICIAN, MEDICAL EXAMINER OR TRIBAL LAW ENFORCEMENT AUTHORITY | AUTHORIZED FOR CREMATION | MEDICAL EXAMINER'S SIGNATURE |
|---|---|---|
| 39. KEYVAN KOOCHEK, M.D.    7400 E OSBORN SCOTTSDALE, AZ 85251 | 40. YES | 41. JOHN HU |

| DATE REGISTERED | REG. DIST NO. | REGISTRAR'S SIGNATURE | FINAL DISPOSITION | DATE RECD STATE OFFICE |
|---|---|---|---|---|
| 42. 11-10-2009 | 2009MC, 43. 040446 | 44. MICHELE CASTANEDA-MARTINEZ | 45. INTENTIONALLY LEFT BLANK | 46. INTENTIONALLY LEFT BLANK |

| SEQUENTIALLY LIST CONDITIONS, IF ANY, LEADING TO IMMEDIATE CAUSE. ENTER UNDERLYING CAUSE (DISEASE OR INJURY THAT INITIATED EVENTS RESULTING IN DEATH) LAST PART I | 47A. IMMEDIATE CAUSE (FINAL DISEASE OR CONDITION RESULTING IN DEATH) (ENTER ONLY ONE CAUSE ON EACH LINE) | | APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH |
|---|---|---|---|
| | SEPTIC SHOCK | UNKNOWN | |
| | 47B DUE TO OR AS A CONSEQUENCE OF VENTILATOR DEPENDENT RESPIRATORY FAILURE | UNKNOWN | |
| | 47C DUE TO OR AS A CONSEQUENCE OF INFLUENZA A AND PNEUMONIA | UNKNOWN | |

| PART II. | Other significant conditions contributing to death but not resulting in the underlying cause given in Part I | | AUTOPSY | WAS CASE REFERRED TO MEDICAL EXAMINER |
|---|---|---|---|---|
| 48. | | | 49. NO | 50 YES |

| MANNER OF DEATH | DATE OF INJURY | MO | DAY | YR | HOUR | INJURY AT WORK? | DESCRIBE HOW INJURY OCCURRED |
|---|---|---|---|---|---|---|---|
| 51. NATURAL DEATH | 52. | | 53. | | 54. | 55. |
| | PLACE OF INJURY SPECIFY | | | | WHERE LOCATED? | STREET ADDRESS | CITY OR TOWN | STATE |
| | 56. | | | | 57. | | | |

SUPPLEMENTARY ENTRIES

This copy not valid unless prepared on a form displaying the State Seal and impressed with the raised seal of the issuing agency.

ANY ALTERATION OR ERASURE VOIDS THIS DOCUMENT

Department of Health Services

# EXHIBIT "E"

# EXHIBIT "E"

Inst #: 201106090002544
Fees: $17.00 N/C Fee: $0.00
RPTT: $0.00 Ex: #003
06/09/2011 12:54:10 PM
Receipt #: 806176
Requestor:
TICOR TITLE OF NEVADA INC
Recorded By: SCA   Pgs: 5
DEBBIE CONWAY
CLARK COUNTY RECORDER

(4) -\

## APN# 191-04-610-044

RETURN TO:
NAME:              Ticor Title
ADDRESS:           3100 W. Sahara Ave., Ste. 115
CITY/STATE/ZIP: Las Vegas, NV 89102

**RE-RECORDED**

## Re-Record Trustee's Deed Upon Sale
### TYPE OF DOCUMENT

## Re-Record to Correct Buyers Name

## RECORDING REQUESTED BY:
### Ticor Title

Inst #: 201104060003640
Fees: $15.00 N/C Fee: $0.00
RPTT: $553.35 Ex: #
04/06/2011 01:36:52 PM
Receipt #: 731251
Requestor:
RONALDO LLC
Recorded By: BRT   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER



RECORDING REQUESTED BY:


AND WHEN RECORDED MAIL TO:
RONALDO, LLC
5594 S. FORT APACHE #100
LAS VEGAS, NV 89148
Forward Tax Statements to the address given above

APN: 191-04-610-044
TS # GM-241843-V    LOAN # 0602198880
INVESTOR #: 045456273568B
TITLE ORDER # 100198009-NV-GSI

SPACE ABOVE LINE FOR RECORDER'S USE

# TRUSTEE'S DEED UPON SALE

TRANSFER TAX:  553.35
The Grantee Herein **Was Not** The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was **$87,664.55**
The Amount Paid By The Grantee Was **$108,202.00**
Said Property Is In The City Of **LAS VEGAS**, County of **Clark**

**EXECUTIVE TRUSTEE SERVICES, INC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to: ~~RENALDO~~, **LLC**
                                         Ronaldo
(Herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Clark**, State of Nevada, described as follows:  **LOT 904 OF TERRACINA PHASE 7, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 113 OF PLATS, PAGE 1, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA AND AMENDED BY CERTIFICATE OF AMENDMENT RECORDED JANUARY 30, 2004 IN BOOK 20040130 AS DOCUMENT NO. 01220, OFFICIAL RECORDS.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **SHAWN D. HARTSELL, A SINGLE MAN** as Trustor, dated **12/16/2008** of the Official Records in the office of the Recorder of **Clark**, Nevada under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **12/26/2008**, as instrument number **20081226-0002260**, Book , Page , of Official records. Trustee having complied with all applicable statutory requirements of the State of Nevada and performed all duties required by the Deed of Trust including sending a Notice of Breach and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with Nevada Civil Code 107.050

**[Page 1 of 2]**

# TRUSTEE'S DEED UPON SALE

Trustee's Deed
T.S.# **GM-241843-V**
Loan # **0602198880**
Title Order # **100198009-NV-GSI**

All requirements per Nevada Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **03/25/2011**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$108,202.00**, in lawful money of the United States, in pro per, receipt there of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **EXECUTIVE TRUSTEE SERVICES, INC.**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date: **Mar 31, 2011**

**EXECUTIVE TRUSTEE SERVICES, INC.**

By: _____
     Derek Hudson, Authorized Officer

**State of California** } S.S.
**County of Los Angeles** }

On **Mar 31**, before me, **Sally Beltran** Notary Public, personally appeared **Derek Hudson** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

Signature _____ (Seal)
     **Sally Beltran**

[Page 2 of 2]

CERTIFIED COPY, THIS
DOCUMENT IS A TRUE AND
CORRECT COPY OF THE
RECORDED DOCUMENT MINUS
ANY REDACTED PORTIONS

JUN. 0 7. 2011

*Debbie Conway*
RECORDER

# STATE OF NEVADA
# DECLARATION OF VALUE

1. Assessor Parcel Number(s)
   a) 191-04-610-044
   b) _____
   c) _____
   d) _____

2. Type of Property:

   a) ☐ Vacant Land    b) ☒ Single Fam. Res.
   c) ☐ Condo/Twnhse   d) ☐ 2-4 Plex
   e) ☐ Apt. Bldg      f) ☐ Comm'l/Ind'l
   g) ☐ Agricultural    h) ☐ Mobile Home
       ☐ Other

   | FOR RECORDERS OPTIONAL USE ONLY |
   |---|
   | Document/Instrument #:_____ |
   | Book_____ Page:_____ |
   | Date of Recording: _____ |
   | Notes: |

   3 a. Total Value/Sales Price of Property   $ _____
      b. Deed in Lieu of Foreclosure Only (value of property) ( _____ )
      c. Transfer Tax Value:   $ _____
      d. Real Property Transfer Tax Due   $ **0.00**

## 4. If Exemption Claimed:

   a. Transfer Tax Exemption per NRS 375.090, Section___3_____
   b. Explain Reason for Exemption: Rerecord 20110406-03640 to correct Buyers Name

5. Partial Interest: Percentage being transferred __100.00__ %

     The undersigned Seller (Grantor)/Buyer (Grantee), declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed.

Signature/Grantor _____    Capacity: **Title Agent**

Signature/Grantee _____    Capacity:

| SELLER (GRANTOR) INFORMATION (REQUIRED) | BUYER (GRANTEE) INFORMATION (REQUIRED) |
|---|---|
| Print Name: Executive Trustee Services LLC | Print Name: Ronaldo, LLC |
| Address: 2255 North Ontario St. #400 | Address: 5594 S. Fort Apache # 100 |
| City: Burbank | City: Las Vegas |
| State: CA    91504 | State: NV    Zip: 89148 |

## COMPANY REQUESTING RECORDING

Print Name: Ticor Title      Escrow # TT11054688 LG
Address: 3100 W. Sahara Ave., Suite 115
City: Las Vegas    State: NV    Zip: 89102

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)

Unofficial
Document

SECURITY TITLE AGENCY
**RECORDING REQUESTED BY:**

**AND WHEN RECORDED MAIL TO :**
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600** 14-92052

TS No.: **AZ-235796-C**
Loan No.: **0601535648**

# SUBSTITUTION OF TRUSTEE

      **WHEREAS, Derek D. Moss, a married man as his sole and separate property** was the original Trustor, **Capital Title Agency** was the original Trustee, and **Mortgage Electronic Registration Systems, Inc. as Nominee for Peoples Mortgage Company** was the original Beneficiary under that certain Deed of Trust dated **4/25/2006** and recorded on **5/1/2006** as Instrument **2006-0583502**, in Book , Page , of Official Records of **Maricopa** County, Arizona; and described as follows:

**Lot 125, HAYDEN ESTATES, according to Book 204 of Maps, page 46, records of Maricopa County, Arizona.**

      **WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

      **WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust Provided,

      **NOW THEREFORE,** the undersigned hereby substitutes **EXECUTIVE TRUSTEE SERVICES, LLC,** as Trustee under said Deed of Trust.  The successor trustee appointed herein qualifies as trustee of the Trust Deed in the trustee's capacity as a licensed escrow agent as required by ARS Section 33-803, Subsection (A) (1).

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.
 **DATED: 1/7/2010**

                  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

                  _____

                  **DONNA FITTON, ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On **1/7/2010** before me, **Dee C. Ortega** Notary Public, personally appeared **Donna Fitton** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
    **Dee C. Ortega**

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

# EXHIBIT "F"

# EXHIBIT "F"

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100016195  01/08/2010  12:14
ELECTRONIC RECORDING

SECURITY TITLE AGENCY

When Recorded Return to:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

141092052-2-2-2--
chagollaj

**(818) 260-1600**

**0601535648  AZ-235796-C  14-92052**

# NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 4/25/2006 and recorded on 5/1/2006 as Instrument # **2006-0583502**, Book Page    in the office of the County Recorder of **Maricopa** County, Arizona, at public auction to the highest bidder at At the steps at the front entrance of the Superior Court Building, 201 West Jefferson, Phoenix, Arizona, on **4/15/2010** at **12:00 PM** of said day:

**Lot 125, HAYDEN ESTATES, according to Book 204 of Maps, page 46, records of Maricopa County, Arizona.**

ACCORDING TO THE DEED OF TRUST OR UPON INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. SECTION 33-808(C):

STREET ADDRESS OR IDENTIFIABLE LOCATION:    **8025 EAST KRAIL STREET**
**SCOTTSDALE, AZ 85250**

TAX PARCEL NUMBER: **174-11-130**

ORIGINAL PRINCIPAL BALANCE:  **$383,150.00**

NAME AND ADDRESS OF ORIGINAL TRUSTOR:
(as shown on the Deed of Trust)

**Derek D. Moss, a married man as his sole and separate property**
**8025 EAST KRAIL STREET**
**Scottsdale, AZ 85250**

NAME AND ADDRESS OF BENEFICIARY:
(as of recording of Notice of Sale)

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**1100 VIRGINIA DRIVE**
**FORT WASHINGTON,  PA 19034**

(Page 2 of 2)

AZ-235796-C   0601535648      14-92052

NAME, ADDRESS & TELEPHONE NUMBER OF TRUSTEE:
(as of recording of Notice of Sale)

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
**Sale Line:  714-730-2727**

DATED: **1/7/2010**

                                        **EXECUTIVE TRUSTEE SERVICES, LLC**

                        By: _____
                            **Rosalie Solano, Limited Signing Officer**

"Executive Trustee Services, LLC is a licensed escrow agent and therefore qualified
to act as a Trustee pursuant ARS Section 33-803(A)(1). Trustee's Regulator:
Arizona State Banking Department."

State of California} ss.
County of Los Angeles }

On **1/7/2010** before me, **Dee C. Ortega** Notary Public, personally appeared **Rosalie Solano,**  who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          **Dee C. Ortega**

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

# EXHIBIT "G"

# EXHIBIT "G"

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100507688   06/15/2010   04:16
ELECTRONIC RECORDING

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
Mortgage Electronic Registration Systems, Inc., solely
as nominee for Peoples Mortgage Company

KA4471266-1-4-4--
chagollaj

PREPARED BY AND WHEN
RECORDED MAIL TO:
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7700

4471266

APN: 174-11-130 8
MIN:

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to GMAC Mortgage, LLC all beneficial interest under that certain Deed of Trust dated April 25, 2006, executed by Derek D. Moss, a married man as his sole and separate property, to Capital Title Agency as trustee, for Mortgage Electronic Registration Systems, Inc., solely as nominee for Peoples Mortgage Company, as beneficiary, and recorded as Instrument No. 20060583502 on May 1, 2006, in the State of Arizona, Maricopa County Recorder's Office. Together with the money due and to become due thereon with interest, and all rights accrued or to accrue under the instrument secured by the Deed of Trust.

Dated: _5/25/10 ea_          **Mortgage Electronic Registration Systems, Inc., solely as nominee for Peoples Mortgage Company**
By: _Janine Yamoah_
Its: _Janine Yamoah_
**Assistant Secretary**

State of _Pennsylvania_ )
                                    ) ss.
County of _Philadelphia_ )
On _May 25th 2010_          before me, _Lisa Procopio_ , a Notary Public in and for said state, personally appeared _Janine Clamman_ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _PA_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Lisa Procopio_
Notary Public

(This Area for Official Notary Seal)

```
NOTARIAL SEAL
LISA PROCOPIO
Notary Public
PHILADELPHIA CITY, PHILADELPHIA CNTY
My Commission Expires Jul 31, 2013
```

000001-1122421200-M

# EXHIBIT "H"

# EXHIBIT "H"

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20110956856    11/18/2011    02:21
ELECTRONIC RECORDING

141192052-2-3-3--
ramirezp

When Recorded Return to:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, CA 91504-3120**
**800.665.3932**

0601535648  AZ-235796-C  14-92052

## NOTICE OF TRUSTEE'S SALE

The following legally described trust property will be sold, pursuant to the power of Sale under that certain Deed of Trust dated 04/25/2006 and recorded on 05/01/2006 as Instrument # **20060583502**, Book **XX** Page **XX** in the office of the County Recorder of **Maricopa** County, Arizona, at public auction to the highest bidder at At the steps at the front entrance of the Superior Court Building, 201 West Jefferson, Phoenix, Arizona, on **02/23/2012** at **12:00 P.M.** of said day:

**Lot 125, HAYDEN ESTATES, according to Book 204 of Maps, page 46, records of Maricopa County, Arizona.**

ACCORDING TO THE DEED OF TRUST OR UPON INFORMATION SUPPLIED BY THE BENEFICIARY, THE FOLLOWING INFORMATION IS PROVIDED PURSUANT TO A.R.S. SECTION 33-808(C):

STREET ADDRESS OR IDENTIFIABLE LOCATION:    **8025 EAST KRAIL STREET**
                                            **SCOTTSDALE, AZ 85250**

TAX PARCEL NUMBER: **174-11-130 8**

ORIGINAL PRINCIPAL BALANCE:  $**383,150.00**

NAME AND ADDRESS OF ORIGINAL TRUSTOR:
(as shown on the Deed of Trust)

**Derek D. Moss, a married man as his sole and separate property**
**8025 EAST KRAIL STREET**
**Scottsdale, AZ 85250**

NAME AND ADDRESS OF BENEFICIARY:
(as of recording of Notice of Sale)

**GMAC Mortgage, LLC**
1100 VIRGINIA DRIVE
FORT WASHINGTON, PA 19034

20110956856

(Page 2 of 2)

AZ-235796-C   0601535648       14-92052

NAME, ADDRESS & TELEPHONE NUMBER OF TRUSTEE:
(as of recording of Notice of Sale)

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, CA 91504-3120
**Sale Line: 714-730-2727**

DATED: **Nov 17, 2011**

                                    **Executive Trustee Services, LLC**

                    By: _____

                                    **Dee C. Ortega**
                                    **Authorized Officer**

"Executive Trustee Services, LLC is a licensed escrow agent and therefore
qualified to act as a Trustee pursuant ARS Section 33-803(A)(1). Trustee's
Regulator: Arizona State Banking Department."

State of California } ss.
County of Los Angeles }

On **Nov 17, 2011** before me, **Cecilia Estrada** Notary Public, personally appeared **Dee C. Ortega,** who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          **Cecilia Estrada**

CECILIA ESTRADA
Commission # 1820423
Notary Public - California
Los Angeles County
My Comm. Expires Oct 28, 2012

# EXHIBIT "I"

# EXHIBIT "I"



OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
2012-0178685 03/02/12 02:56 PM
1 OF 1

RAMIREZP

WHEN RECORDED RETURN TO:

    Paul Papas
    4727 E Bell Rd., #45 PMB 350
    Phoenix, AZ 85032
    602-493-2016

# NOTICE OF OPTION CONTRACT FOR SALE AND PURCHASE

This NOTICE OF OPTION CONTRACT FOR SALE AND PURCHASE (the "Notice") is made,

executed and delivered as of the 16th day of February, 2012, by and between Kathrina H. Tobias

("Seller") and Paul Papas and/or assigns ("Buyer").

The Seller grants to the Buyer and/or assigns an Option to purchase the real estate as described below

(the "Property"):

### 8025 E. Krail St, Scottsdale, AZ 85250 - APN 174-11-130-8

### Lot 125 Hayden Estates according to Book 204 of Maps, page 46, records of Maricopa County,

### Arizona

The term of this Option Contract is from the 16th day of February, 2012 and expires on the 15th day of

February, 2013.  The Buyer and/or assigns can execute the Option Contract at any time during the

Option Period.

**The Option Contract may be terminated and this Notice released and satisfied of record by
execution and recording of a Release of Option Contract signed only by the Buyer.**

The Option Contract for Sale and Purchase contains the following Representations and Warranties:

**"6. REPRESENTATIONS AND WARRANTIES:** To induce the BUYER and/or assigns to enter into
this Agreement, the SELLER makes the following representations, warranties, and covenants.

> E. SELLER understands that if this transaction becomes a short sale and is
contingent upon acceptance by Lien holders of discounts off outstanding balances, then the
Seller will receive NO funds upon closing of the short sale.

> F. **SELLER hereby grants the Buyer** and/or assigns **the FIRST right to
purchase the Seller's property and the Buyer or their representatives all of the
necessary rights to immediately list for sale, market, negotiate and enter into a
contract to lease or sell immediately to a third party for a profit. All documentation in
connection with the foregoing will be made available at the request of all Lenders,
Sellers, and Buyers** and/or assigns **involved in the transaction."**

## Legal Description

### 8025 E. Krail St, Scottsdale, AZ 85250 - APN 174-11-130

**Lot 125 Hayden Estates according to Book 204 of Maps, page 46, records of Maricopa County,**

**Arizona**

### AS TO SELLER:

In witness whereof, we hereunto set our hand and seal, at _Dee Ply_, in the County of _Maricopa_, State of Arizona, this _23rd_ day of February 2012.

_____      _____
Seller                                            Seller

State of Arizona
County of _Maricopa_                         ss:

Before me, a Notary Public in and for said County, personally appeared the above named
_Kathrina H. Tobias_ who acknowledged and declared that
he did sign and seal the foregoing instrument and that the same is his free act and deed.

In testimony whereof, I have hereunto set my hand and official seal, at _Dee Ply_, in the
County of _Maricopa_, State of Arizona, this _2nd_ day of February, 2012.

_Joan Paula Heff_
Notary Public

JOAN PAULA HEFF
Notary Public–Arizona
Maricopa County
Expires 04/20/2014      04/20/2014
Expires

### AS TO BUYER and/or assigns :

In witness whereof, we hereunto set our hand and seal, at _Glendale_, in the County of
_Maricopa_, State of Arizona, this _27th_ day of February 2012.

_____
Buyer  and/or assigns

State of _Arizona_
County of _Maricopa_                         ss:

Before me, a Notary Public in and for said County, personally appeared the above named
_Paul N. Papas II_ who acknowledged and declared that
he did sign and seal the foregoing instrument and that the same is his free act and deed.

In testimony whereof, I have hereunto set my hand and official seal, at _Glendale_, in the
County of _Maricopa_, State of Arizona, this _27_ day of February, 2012.

_____
Notary Public

This instrument prepared by: Grantor

CRISTINA MENDOZA
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
September 1, 2014