1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mg

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


RESIDENTIAL CAPITAL, LLC, et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            September 3, 2013

            11:02 AM


B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

2

1

2   (CC: Doc#4765) Debtors' Motion Pursuant to Section 105 of the

3   Bankruptcy Code and Rule 7026 of the Federal Rules of

4   Bankruptcy Procedure for Authorization to Establish and

5   Implement Procedures in Connection with Discovery Related to

6   Plan Confirmation.

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  David Rutt

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4       Attorneys for Debtors

5       1290 Avenue of the Americas

6       New York, NY 10104

7

8  BY:   CHARLES L. KERR, ESQ.

9       JAMIE A. LEVITT, ESQ.

10      JOSEPH ALEXANDER LAWRENCE, ESQ.

11      JENNIFER L. MARINES, ESQ. (TELEPHONICALLY)

12

13

14  KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP

15      Attorneys for Official Creditors' Committee

16      1177 Avenue of the Americas

17      New York, NY 10036

18

19  BY:   GREGORY A. HOROWITZ, ESQ.

20      STEPHEN D. ZIDE, ESQ.

21      NATHANIEL ALLARD, ESQ. (TELEPHONICALLY)

22

23

24

25

4

```
 1

 2   MILBANK, TWEED, HADLEY & MCCLOY LLP

 3        Attorneys for Ad Hoc Group of Junior Secured Notes

 4        One Chase Manhattan Plaza

 5        New York, NY 10005

 6

 7   BY:   GERARD UZZI, ESQ.

 8

 9

10   WHITE & CASE LLP

11        Attorneys for Ad Hoc Group of Junior Secured Notes

12        1155 Avenue of the Americas

13        New York, NY 10036

14

15   BY:   J. CHRISTOPHER SHORE, ESQ.

16        HARRISON DENMAN, ESQ.

17

18

19   BARNES & THORNBURG LLP

20        Attorneys for USAA

21        1000 N. West Street

22        Suite 1500

23        Wilmington, DE 19801

24

25   BY:   DAVID M. POWLEN, ESQ. (TELEPHONICALLY)
```

5

1

2   CARPENTER, LIPPS & LELAND, LLP

3          Attorneys for Debtors

4          280 North High Street

5          Suite 1300

6          Columbus, OH 43215

7

8   BY:   DAVID A. BECK, ESQ. (TELEPHONICALLY)

9

10

11   KIRKLAND & ELLIS LLP

12          Attorneys for Ally Financial, Inc. and Ally Bank

13          601 Lexington Avenue

14          New York, NY 10022

15

16   BY:   MICHAEL MELTZER, ESQ. (TELEPHONICALLY)

17

18

19   MORRISON COHEN, LLP

20          909 Third Avenue

21          New York, NY 10022

22

23   BY:   ROBERT K. DAKIS, ESQ. (TELEPHONICALLY)

24          JOSEPH T. MOLDOVAN, ESQ. (TELEPHONICALLY)

25

6

1

2   MUNGER, TOLLES & OLSON LLP

3         Attorneys for Berskshire Hathaway

4         355 South Grand Avenue

5         35th Floor

6         Los Angeles, CA 90071

7

8   BY:   SETH GOLDMAN, ESQ. (TELEPHONICALLY)

9         THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

10

11  PATTERSON BELKNAP WEBB & TYLER LLP

12        Attorneys for Anbac Insurance

13        1133 Avenue of the Americas

14        New York, NY 10036

15

16  BY:   BRIAN P. GUINEY, ESQ. (TELEPHONICALLY)

17

18  POLSINELLI PC

19        Attorneys for Representative Plaintiffs

20        900 Third Avenue

21        Suite 2100

22        New York, NY 10022

23

24  BY:   DANIEL J. FLANIGAN, ESQ. (TELEPHONICALLY)

25

7

1

2  REED SMITH LLP

3        Attorneys for Wells Fargo Bank

4        225 Fifth Avenue

5        Pittsburgh, PA 15222

6

7  BY:   ERIC A. SCHAFFER, ESQ. (TELEPHONICALLY)

8

9

10 ZUCKERMAN SPAEDER LLP

11        Attorneys for National Credit Union Administration Board

12        1800 M Street, NW

13        Suite 1000

14        Washington, DC 20036

15

16 BY:   NELSON C. COHEN, ESQ. (TELEPHONICALLY)

17

18

19 AURELIUS CAPITAL MANAGEMENT LP

20 BY:   DENNIS A. PRIETO (TELEPHONICALLY)

21        MATTHEW A. ZLOTO (TELEPHONICALLY)

22

23

24 BLOOMBERG LP

25 BY:   STEVEN H. CHURCH (TELEPHONICALLY)

1

2  HOULIHAN LOKEY

3          Financial Advisor for Ad Hoc Group of Junior Secured

4           Noteholders

5  BY:    REID SNELLENBARGER (TELEPHONICALLY)

6

7

8  REORG RESEARCH, INC.

9  BY:    KENT COLLIER (TELEPHONICALLY)

10

11

12  SOUTHPAW ASSET MANAGEMENT

13  BY:    ANDREW M. THAU (TELEPHONICALLY)

14

15

16

17

18

19

20

21

22

23

24

25

**RESIDENTIAL CAPITAL, LLC, et al.**

9

1                       P R O C E E D I N G S

2              THE COURT:  Please be seated.  We're here in

3     Residential Capital, number 12-12020.

4              Mr. Kerr?

5              MR. KERR:  Good morning, Your Honor.  Charles Kerr of

6     Morrison & Foerster, on behalf of the debtors.

7              We are here today on the debtors' motion to establish

8     procedures for discovery relating to plan confirmation.  We

9     filed our motion on August 20th as docket number 4765, and we

10    filed this motion after consulting with the creditors'

11    committee about what we can do to make sure that discovery in

12    the plan confirmation process is efficient, fair and run well.

13    And we made the motion pursuant to Section 105 of the Code and

14    Rule 7026, which we believe gives Your Honor authority to enter

15    this kind of order and control and manage discovery.

16              The purpose for why we're doing this, Your Honor, is

17    pretty straightforward.  The procedures we proposed are

18    designed to keep a plan confirmation discovery process

19    organized and efficient, and -- but it's also designed to

20    reflect the specific context of this case.  As Your Honor's

21    aware, the debtor has already gone through extensive discovery

22    and produced enormous amount of documentation.  And the key

23    element of what this plan does is we're going to take all of

24    that discovery, all that paper, and put it into a repository

25    and make it available to anybody who is a participant in the

**RESIDENTIAL CAPITAL, LLC, et al.**

10

1    plan confirmation discovery process; and we're doing that, Your

2    Honor, to avoid the duplication and excessive cost of having

3    repeated discovery requests coming in right and left on us.

4         THE COURT:  Let me ask you a question about it.  Am I

5    correct that all the documents that are going to be put in the

6    repository will be in electronic format, in a searchable

7    format?

8         MR. KERR:  That's correct, Your Honor.  What we're

9    putting them into is a -- it's called a relative e-database

10   (ph.); it'll be in searchable format.  You can go in and

11   download documents, you can review documents, you can tag

12   documents, you can manipulate the documents any way you wish,

13   as soon as you're a participant and you get a license from the

14   thing.  It'll be done at our cost, Your Honor.

15        THE COURT:  Okay.  And in the examiner's and

16   creditors' committee's investigation, what, there was about

17   nine million pages that were generated?  Do I have that right?

18        MR. KERR:  I'm not sure how many total.  What we're

19   intending --

20        THE COURT:  Because I know you're talking about

21   fourteen million-plus pages, and I was just trying to get an

22   understanding.  And I think it was about nine million pages as

23   a result of the investigations.

24        MR. KERR:  Well, let me clarify one thing, Your Honor.

25        THE COURT:  Okay.

**RESIDENTIAL CAPITAL, LLC, et al.**

1        MR. KERR:  What we're putting in the repository are

2   the documents the debtors produced in response to the examiner.

3   The examiner may have collected documents from many other

4   places.

5        THE COURT:  Okay.

6        MR. KERR:  They're not -- we're not putting those in

7   the repository.  What we're putting in are the documents that

8   we produced.  And I think in our order, Your Honor --

9        THE COURT:  Because in the motion you talked about

10  fourteen million-plus pages.

11       MR. KERR:  That's correct, Your Honor.  And in the --

12  paragraph 3(a) of the order, we list the document productions

13  that we have made before.  And I don't have the numbers of each

14  individual (sic), but it'll be what was produced to the

15  examiner by the debtor, what was produced to the RMBS --

16       THE COURT:  All right.

17       MR. KERR:  What we've been producing and will produce

18  in the adversary proceeding, that'll all be in the repository;

19  what we produced in FGIC; and then a bunch of other variety of

20  document productions that we've made over the course of this

21  case.

22       THE COURT:  Okay.

23       MR. KERR:  So, Your Honor, essentially what we're

24  trying to do is make available everything that we've made

25  available to everybody else.

**RESIDENTIAL CAPITAL, LLC, et al.**

12

1          These types of discovery protocols have been used in

2     other cases but fixed to reflect the unique nature of this

3     case.

4          THE COURT:  Well, the major -- I mean, the objection

5     filed by the ad hoc group essentially is that in the other

6     protocols that you have identified, you've shifted -- you

7     require a showing of good cause for additional discovery.  That

8     good-cause requirement was not included in the other protocols

9     that you've referred to.

10          MR. KERR:  I think that's correct, Your Honor, but I

11    think those other protocols come up in -- I keep knocking that;

12    I apologize, Your Honor -- in a different context.  We have --

13    I don't believe that -- in the Enron or the Lehman one, at that

14    point it was created, that amount of documents had already been

15    collected and were being put upfront by the debtors.

16          THE COURT:  Lehman I'm not sure about, I mean, because

17    it was an examiner's investigation in Lehman and it generated a

18    lot of paper.  But --

19          MR. KERR:  It --

20          THE COURT:  -- putting that aside.

21          MR. KERR:  Okay.

22          THE COURT:  I mean -- and I'm going to want to hear

23    from the objectors, but --

24          MR. KERR:  Your Honor, if I can deal directly with the

25    objectors' --

**RESIDENTIAL CAPITAL, LLC, et al.**

1          THE COURT:  Yeah, go ahead.

2          MR. KERR:  -- concern about this, because I think

3    their concern is misplaced, because this is what we're doing,

4    Your Honor:  You know -- and Ms. Levitt here can provide more

5    details -- in the adversary proceeding, the JSNs served over --

6    I think, over 170 document requests.  We objected -- we

7    responded to a bunch of them; we objected to a certain number

8    of them on the grounds that those requests really go to plan

9    confirmation issues.

10          Two things:  One, when we were collecting documents in

11    response to all of those requests, we collected and produced

12    e-mails to every single one of those requests.  So in fact, the

13    vast majority of documentation that would be called for, I

14    think, there has already been produced and we put in the

15    repository.  Second, Your Honor, we are going to take the

16    position that the additional requests that the JSNs made in the

17    adversary proceeding that we contend are phase II or

18    confirmation, we're not -- we're going to take them as given.

19    We're prepared to meet and confer with them to determine what,

20    if any, additional documentation needs to be produced.  They do

21    not have to demonstrate good cause to do that.

22          So therefore, Your Honor, the only potential impact on

23    the JSNs of that is if they now make new and additional

24    requests.  And I would suggest, Your Honor, given the breadth

25    of requests that they have made, given the approach that we

**RESIDENTIAL CAPITAL, LLC, et al.**

14

1   have taken and tried to produce documentation in response to

2   that, it's not unreasonable to put that burden on anybody who's

3   going to be making additional requests.

4           THE COURT:  Okay.  I understand your position.

5           MR. KERR:  Okay.  Well, Your Honor, again, I think the

6   plan is highlighted in our papers, and I can go through --

7           THE COURT:  So this -- the one thing -- I -- I'm all

8   in favor of parties seeking to work out or resolve issues

9   between them.  I don't appreciate when Friday night I get

10  something shot across the transom by the JSNs, which is their

11  own version of a proposed order, and then this morning I get a

12  further proposed amendment from the debtors.  So when a

13  motion's filed, there are deadlines for a reason; you know, one

14  of those reasons is that I can actually prepare and not have to

15  continue to look at documents that I guess I would describe as

16  unauthorized, like the Friday-night submission by the JSNs.

17  And then of course you felt compelled to go ahead and make a

18  further tweaking.

19          It's one thing when a motion's filed, objections are

20  made and the parties work constructively and reach an

21  accommodation, which is not what's happened here.

22          MR. KERR:  Well, Your Honor, what we attempted to

23  do -- you are correct; we filed a new version of the amended

24  order, but what we tried to do was, having gotten the JSNs'

25  filing Friday night, as we had done before, we looked at it; we

**RESIDENTIAL CAPITAL, LLC, et al.**

15

1    thought there was new stuff in there; if it made sense, we

2    would try to adjust the order to try to do that.

3            What we tried throughout this process, Your Honor,

4    is -- we made an order -- I got a call from the JSNs after we

5    filed it; they raised some questions and concerns.  I told them

6    that I would make -- we would make various adjustments.  They

7    then filed their limited objection on, I think, last Thursday,

8    which raised new issues; in light of that, we said we would

9    make further adjustments, and which we did in our reply.  And

10   then we got the order again, making new objections --

11            THE COURT:  Right.

12            MR. KERR:  -- on Friday night.

13            So, Your Honor, I apologize to the Court for --

14            THE COURT:  No --

15            MR. KERR:  -- filing stuff, but I'm trying to -- I'm

16   trying to reasonably take into account the issues they raise.

17   And if what they suggest makes sense and it makes sense for not

18   just us but for all parties, I'm more than willing to

19   incorporate that --

20            THE COURT:  All right, let me --

21            MR. KERR:  -- into the order.

22            THE COURT:  -- let me hear from other counsel.  Thank

23   you, Mr. Kerr.

24            MR. KERR:  Thank you.

25            THE COURT:  Does the committee want to be heard, or

**RESIDENTIAL CAPITAL, LLC, et al.**

16

1    you're just joining in?  Mr. Horowitz, you're just going to

2    join in with the debtor?

3            MR. HOROWITZ:  Yes, Your Honor, we are joining in.  I

4    just -- I guess, since I'm up here, I'll -- just want to make

5    clear, because I do think Mr. Kerr made it clear but I think

6    it's very important.  I was involved in Lehman.  In Lehman, the

7    process was that the debtor only felt -- wanted, for a matter

8    of efficiency, the debtor should only respond to a single set

9    of document requests.  The committee served as a gatekeeper,

10   produced a single set of document requests.  There were

11   meetings at Weil Gotshal with, like, sixty or seventy lawyers,

12   where everyone suggested, 'Well, you should add this; you

13   should add that.'  And the result was a single set of document

14   requests.

15           Here, historically we've had sort of the equivalent of

16   that; we've had a number of different proceedings where

17   there've been document requests, including from the examiner,

18   including the JSNs.  And it's worth emphasizing that that

19   original JSN document request was actually UMB and the ad hocs

20   together; there was a lot of duplication.  When you took out

21   the duplication, it was about 140 items.  That was before there

22   was a bifurcation.  So that was really a document request that

23   the JSNs propounded, for all of the issues, phase I and phase

24   II, that they saw out there.

25           And we convinced the debtors, and I think it's

**RESIDENTIAL CAPITAL, LLC, et al.**

17

1    important, that for purposes of this protocol, all of those

2    requests, even the ones that were put off, or at least

3    nominally put off, to phase II/confirmation, should be deemed

4    validly served; no need for a good-cause showing.

5         THE COURT:  I'm not sure what that's going to mean in

6    the real world, because you can sit down and you can have a

7    meet-and-confer and hopefully you'll be able to reach agreement

8    on most issues and then, when you don't, what's the standard

9    the Court's supposed to apply in determining whether -- how to

10   resolve the disputes about remaining requests as to which you

11   haven't agreed?

12        MR. HOROWITZ:  Well --

13        THE COURT:  The way you drafted the protocol, but for

14   this change you're now making, or at least as the -- I'm not

15   sure it's the change in the protocol so much as your agreement

16   that you would treat the request that the JSNs made as -- what

17   they made earlier, as not having satisfied good cause.  Does

18   that mean -- how --

19        MR. HOROWITZ:  I think -- maybe we should be very

20   clear about this.

21        THE COURT:  If there is a remaining dispute as to what

22   you're going to meet and confer on, what's the standard that

23   you believe the Court is supposed to apply in resolving the

24   dispute?

25        MR. HOROWITZ:  Well, I think then we're no different

**RESIDENTIAL CAPITAL, LLC, et al.**

1    off than we would be if we were just going through a standard

2    discovery process where they're allowed to propound new

3    discovery requests; the debtors and the committee can object.

4         There may be some additional disputes about what's the

5    appropriate scope of discovery with regard to some issues that

6    may come before the Court.  I actually think that, because we

7    made clear, and the debtors agreed, that when they reviewed

8    documents the first time around, they shouldn't, and did not,

9    withhold documents on the grounds that they were only

10   appropriate to confirmation.  The scope of that dispute is not

11   going to be particularly broad.

12        THE COURT:  Okay.  All right.  Let me hear --

13        MR. HOROWITZ:  But there may be those disputes and

14   they'll just be under the ordinary standards.

15        THE COURT:  All right.  Let me hear from the

16   objectors.

17        MR. SHORE:  Good morning, Your Honor.  Chris Shore

18   from White & Case.

19        THE COURT:  What was the authority or justification

20   for the Friday-night filing?

21        MR. SHORE:  Well, I apologize for the timing of it.

22   There was a medical emergency that day.  We were going to -- we

23   were going to file -- we had noticed in our objection that we

24   were going to file it after working with the debtors.  We had

25   hoped to get it to you either Thursday night or Friday morning,

**RESIDENTIAL CAPITAL, LLC, et al.**

19

1    and it just got pushed to Friday night, and, apologize for the

2    late time of that.

3            THE COURT:  I don't work on Saturday, so that meant

4    yesterday.

5            MR. SHORE:  Yeah.  We have one overarching objection

6    on this, and then I can address some of the specifics.  A

7    couple of -- was it a couple weeks ago?  Yeah, I think it was a

8    couple of weeks ago -- there was a concession made on the

9    record that Your Honor had pressed the debtors and the

10   committee to make, delinking the adversary from confirmation,

11   and we were hopeful that that would continue.  It's just

12   unclear, from the state of the protocol right now, what the

13   debtors' intentions are and what the committee's intentions

14   are, with respect to phase II and confirmation.  And they both

15   have been all over the law on that, with it falling generally

16   into two explanations:  'We're going to have certain phase II

17   issues tried at confirmation and certain issues won't be tried

18   at confirmation, or we're not going to try any phase II issues

19   at confirmation but that certain rulings at confirmation sought

20   in connection with confirmation will render phase II moot.'

21           We have two simple questions which we believe we need

22   answered to fully understand what's happening and how to

23   prepare:  Are we calling the adversary proceeding at

24   confirmation?  And if we are calling the adversary proceeding,

25   what phase II issues are going to be tried?  I've asked that

**RESIDENTIAL CAPITAL, LLC, et al.**

20

1    question; I've received conflicting answers from people.  We

2    need to know.

3          And so that's why, in our proposed order, we put in a

4    provision which said, 'Just let us know.'  They may say --

5          THE COURT:  Well, whether they -- whether the

6    discovery protocol includes it or not, as I did with respect to

7    the phase I issues, it's -- I fully intend to require the

8    parties to arrive at an agreed statement of issues to be tried

9    for phase I; it'll happen as part of -- still my intention at

10   this moment is to try it as part of confirmation, but wouldn't

11   call it the phase II issues raised in the adversary

12   proceedings.  All right?  I did it with respect to phase I.

13   While you initially had some disagreements, you were able to

14   work out an agreed statement of issues.  I mean, ordinarily --

15   frequently that would happen as part of a joint pre-trial

16   order, and the pre-trial order supersedes prior pleadings.  But

17   because of the scope of the issues, the expedited time frame,

18   I've required this joint -- because I wanted the certainty of

19   knowing what issues are going to be tried, and I'm going to

20   want that certainty again.  I don't know that that's going

21   to -- that that -- I don't view that as part of the discovery

22   protocol.

23          I haven't put you to the task yet of coming up with

24   that joint statement of issues.  We've got the trial of phase I

25   scheduled to begin October 15th.  It does seem to me that

**RESIDENTIAL CAPITAL, LLC, et al.**

21

1   because of the schedule for everything that's going on, that

2   sometime in -- you can start talking about it now, because

3   before the end of September I am going to want a statement of

4   issues for phase II.  So that -- I want certainty as much as

5   you seem to want the certainty about that.  I want everybody to

6   know, when we go forward with an evidentiary hearing, what are

7   the issues the Court's going to consider.  I think it's the

8   most orderly way to do it.

9           So I don't view that as part of the discovery

10  protocol; I view that as part of trial preparation for phase

11  II.  And essentially that statement of issues for phase I is

12  what would ordinarily be part of a joint pre-trial conference

13  order.  We did it slightly differently here.

14          Okay, so you're going to -- there is going to be a

15  statement of the issues for phase II.

16          MR. SHORE:  As it stands, though, the longer we delay

17  the provision of that list and get on the record the debtors'

18  and the committee's views with respect to whether we're doing

19  any of phase II or all of phase II at confirmation, then we

20  have discovery to take place --

21          THE COURT:  My --

22          MR. SHORE:  -- in connection --

23          THE COURT:  My view, which I have expressed before, is

24  it's all part of -- it's all happening at confirmation.  There

25  isn't going to be a third trial.  It's going to happen during

**RESIDENTIAL CAPITAL, LLC, et al.**

22

1    confirmation.  That's -- I've said it before.  And, yeah, if --

2    it may be that events will -- you haven't wanted that; you've

3    argued that this all ought to be after a confirmation trial.  I

4    haven't been persuaded in the past; I'm still not persuaded.

5    Two trials of this is enough for me.

6           MR. SHORE:  It is enough for us as well, Your Honor.

7    The problem is I'm getting the answer from some people that

8    what they want to do is try some phase II issues, argue that

9    the rest are moot and, if they are not moot --

10           THE COURT:  Well, if they're moot --

11           MR. SHORE:  -- then come --

12           THE COURT:  -- they're moot.  I mean, look, if --

13    we've had this discussion before, okay.  So that if -- it'll be

14    tried, but the decision may be that the issue has become moot.

15    It may or may not be; I don't know.  We'll see.

16           MR. SHORE:  Right.  And if it's not, what we don't

17    want -- and hearing Your Honor loud and clear on this point,

18    what we don't want is, 'All right, they're not moot.  We're

19    going to have to come back for a third trial.'

20           THE COURT:  No, you're not coming back for a third

21    trial.  You're going to put in the evidence at the time and

22    I'll make a decision one time.

23           Mr. Kerr, you have a different view of that?

24           MR. KERR:  I do not, Your Honor.  And again, I -- I do

25    not.

**RESIDENTIAL CAPITAL, LLC, et al.**

23

1             THE COURT:  Ms. Levitt?

2             MS. LEVITT:  Your Honor, I was just going to point out

3     that I think we made this very clear in the statement of issues

4     for phase I, in which we said that we believe that the

5     confirmation of the plan and the global settlement will render

6     these issues moot.  Nevertheless, we understand that they

7     disagree and that those issues may be tried at the time of plan

8     confirmation.

9             THE COURT:  Yeah.  Mr. Horowitz, you agree with that?

10            MR. HOROWITZ:  Exactly, Your Honor.

11            THE COURT:  Okay.  So you'll be prepared to try your

12    issues --

13            MR. SHORE:  Right, right.

14            THE COURT:  -- Mr. Shore.

15            MR. SHORE:  So we have now -- now we had the official

16    position on everybody's part --

17            THE COURT:  You had that official --

18            MR. SHORE:  -- that phase --

19            THE COURT:  -- position long before today.  But go

20    ahead.

21            MR. SHORE:  If phase II trial is going forward at

22    confirmation, we have an adversary proceeding, and the phase I

23    scheduling order says we're going to have a phase II scheduling

24    order.  We do not have a phase II scheduling order.  We asked

25    that we delink the plan protocol from the phase II scheduling

**RESIDENTIAL CAPITAL, LLC, et al.**

24

1    order, and we'll negotiate a phase II scheduling order, then.

2    And then our objections with respect to this confirmation

3    order, which seeks to blend phase II issues and confirmation

4    issues, largely falls away.  We have plan confirmation issues

5    that can get addressed in the context of this order; I've got

6    some specific comments on that.  And we need, then, a phase II

7    scheduling order, which would then also cover what are the

8    issues that the parties intend to be tried at confirmation as

9    part of phase II.

10          THE COURT:  Well, let me put it this way:  I -- the

11    discovery protocol will apply to both the phase II issues and

12    confirmation.  Okay.  The -- from my standpoint, Mr. Shore -- I

13    think -- I didn't go back to look at the transcript, but I

14    think I probably said it, and pretty close to these words, at

15    the time I denied your motion to disqualify the debtors'

16    counsel and disqualify the creditors' committee counsel:  I

17    think the ad hoc group and JSNs have essentially been engaged

18    in a no-holds-barred effort to derail or delay confirmation.

19    You've resolved most of the discovery issues along the way; you

20    probably have done better resolving it than if it had been left

21    in my hands.

22          I think that the good-cause requirement that the

23    debtors, with the committee's agreement, have put into the

24    proposed discovery protocol are quite appropriate under the

25    circumstances, because it has seemed to me that the approach

**RESIDENTIAL CAPITAL, LLC, et al.**

25

1    that the ad hoc group has adopted is a scorched-earth approach,

2    making it completely appropriate for the Court to impose the

3    good-cause requirement.

4           With that said, I fully expect that whenever a

5    discovery dispute arises, the parties will meet and confer and

6    resolve the issues; and to the extent they don't, as in the

7    past, they'll come before me and I'll resolve them.  But I

8    believe that even in the context of the adversary proceeding,

9    in light of the history of this litigation to date, the Court

10   has the authority to impose the good-cause requirement for

11   further discovery.

12          There've been fourteen million-plus pages of documents

13   produced.  If I'm not mistaken, Mr. Shore, you already have

14   access to the -- either all of them or certainly the

15   examiner's -- all the pages that were produced to the examiner.

16   It's all in electronic searchable format.  We've had

17   discussions about that before.  Where there's fourteen million-

18   plus pages already produced, I don't believe you can simply

19   serve a bunch of discovery requests and tell the debtors, 'You

20   figure out whether the documents are in the database.  The

21   database is completely searchable.'  You were headed toward the

22   October 15th phase I trial.  So I believe all that's

23   appropriate.

24          Now, I read -- on Sunday I read your additional

25   filings, and this morning I read what the debtors have -- the

**RESIDENTIAL CAPITAL, LLC, et al.**

26

1  changes they've further proposed, I think going a long way to

2  accommodating any legitimate issues that the JSNs raised.  But

3  the Court's ruling is as follows, and it will be a written

4  order entered today:  is to grant the debtors' motion, overrule

5  the ad hoc group and UMB objections.  I believe a separate

6  order in the form that's been submitted to me this morning will

7  be entered.  So I'm going to enter an order ruling on the

8  motion, but you'll have to submit the proposed order, and I

9  guess you've -- I didn't see -- I mean, I have a redline and a

10 clean copy of what you submitted today; I looked at it quickly.

11 I had another hearing at 10 o'clock, but I did look at it this

12 morning.

13        So the Court's ruling is to grant the motion, overrule

14 the objections, and I will issue a written order.

15        I expect, for the most part, while I think the ad hoc

16 group has badly overreached in many of the things that have

17 occurred in the adversary proceeding to date -- not only in the

18 adversary proceeding but in the bankruptcy case as well -- I

19 think that when you've actually sat down to meet and confer to

20 resolve issues, most have been resolved, and I expect that to

21 continue to happen.  And so the debtors and the committee

22 shouldn't think, just because I'm going to sign an order that

23 adds the good-cause requirement, that if in fact they can come

24 forward and say, 'We've searched and put forward competent

25 evidence.  They've searched the electronic database.  The

**RESIDENTIAL CAPITAL, LLC, et al.**

27

1    specific targeted additional discovery that they're seeking is

2    not encompassed within the fourteen million-plus pages that

3    have already been produced,' I will certainly be very open to

4    listen to those arguments.

5            But I guess what the result is, is that this shifts

6    the ordinary burden, rather than those seeking to block the

7    discovery might have the burden.  Here, I believe, now, going

8    forward, that it's the ad hoc group and the trustee that are

9    going to have to show good cause.  So that's going to be the

10   Court's ruling.

11           MR. SHORE:  Can I be heard on one issue, Your Honor?

12           THE COURT:  Quickly.

13           MR. SHORE:  Privilege logs.  The debtors proposed

14   language this morning that would not require them to even

15   search for whole categories of documents that they would claim

16   would be privileged.  It's language I saw on the way down to

17   court this morning; I think it is overbroad; it essentially

18   cuts out not only the requirement to search but any ability to

19   object to the documents.  I'm happy to sit down and talk with

20   them about narrowing the scope of that.

21           THE COURT:  Mr. Kerr?  Do you have the language?

22           UNIDENTIFIED SPEAKER:  Your Honor --

23           THE COURT:  So I didn't -- when I read this over this

24   morning, Mr. Shore, I didn't focus on that language.

25           UNIDENTIFIED SPEAKER:  Your Honor --

**RESIDENTIAL CAPITAL, LLC, et al.**

28

1              THE COURT:  I've got a clean and --

2              UNIDENTIFIED SPEAKER:  Your Honor, let me tell you

3    exactly --

4              THE COURT:  Hold on.  Hold on.

5              All right, Mr. Kerr, where is it?

6              MR. KERR:  I apologize, Your Honor.  I'll tell you

7    exactly where it is.  This morning we sent down as Exhibit 2 a

8    blackline.

9              THE COURT:  Yes.

10             MR. KERR:  And Exhibit 2, starting at the bottom of

11   page 12, paragraph 7 --

12             Do you have a blackline?

13             UNIDENTIFIED SPEAKER:  Um-hum.

14             MR. KERR:  And where -- what -- I will tell you

15   exactly where we came up with this language.

16             THE COURT:  Let me look at it again, okay?  Just --

17             MR. KERR:  Sure.

18             THE COURT:  Just give me a second, okay?

19        (Pause)

20             THE COURT:  Go ahead, Mr. Shore, and then I'll let

21   Mr. Kerr respond.

22             MR. SHORE:  The problem I have is the lead-in

23   language:  "not required to search, produce, identify, on any

24   log, documents," not even on category logs.  So they will not

25   be, for example, allowing us to preserve any objection that we

**RESIDENTIAL CAPITAL, LLC, et al.**

1    have to their assertion to privilege on joint defense at

2    certain periods of time, whether or not a document is

3    privileged.  The -- section vi would preclude any inquiry into

4    any of the FA's work, whether or not it would be deemed to be

5    attorney work product or anything else.

6         So I don't mind that they log it generally and they

7    search for it generally, but to just say that they have no

8    obligation under Rule 26 to even respond such that an objection

9    can be made to that seems overbroad, Your Honor.

10         THE COURT:  Mr. Kerr?

11         MR. KERR:  Your Honor, what we were attempting to do

12    was not -- was to try to avoid having -- and being forced to

13    log thousands and thousands of entries of documents that

14    would -- there's going to be, I don't think, any dispute that

15    they are either privileged or work product.

16         As part of our search protocol, Your Honor, we collect

17    everything based on what we do, and then we go through and try

18    to determine what falls within the privilege or not.  The

19    tremendous burden here, especially given the role of counsel

20    all through this process, as Your Honor is well aware, is then

21    having to log all of those things.  So what we've been trying

22    to do is carve some out, such as hard copies of in-house and

23    outside counsel -- clearly going to be privileged and work

24    product -- communications between a client and their outside

25    counsel.

**RESIDENTIAL CAPITAL, LLC, et al.**

30

1          THE COURT:  Well, not everything inside in-house

2     counsel's files are going to be -- is going to be privileged.

3          MR. KERR:  That's -- you're absolutely right, Your

4     Honor.  And if something is not privileged, we'll produce it.

5     The question is the question of logging it.  If it is --

6          THE COURT:  But how are they supposed to know whether

7     they're supposed to challenge, if you don't log it?

8          MR. KERR:  But it's -- well, Your Honor, I guess --

9     what we are prep -- this language comes from the Enron form of

10    order.

11          UNIDENTIFIED SPEAKER:  Lehman.

12          MR. KERR:  Oh, excuse me; the Lehman form of order,

13    Your Honor.  And I think it's trying to do a practical way of

14    determining how you legitimately go through masses of e-mail,

15    masses of documents, where your lawyers are all over it, and

16    trying to find the balance between not having to log it, and

17    log it.  And we're trying to do it by category; there's no

18    question about that, Your Honor.  I'm trying to come up with a

19    practical solution to doing this.

20          So we -- what we did, in light of Mr. -- in light of

21    the request we got on Friday night about putting a privilege

22    log in there, I told him before, we would be doing privilege

23    logs to the extent we have something like that, but we'd then

24    try to go through and think about it practically --

25          THE COURT:  Just let me ask you this.

**RESIDENTIAL CAPITAL, LLC, et al.**

31

1          MR. KERR:  -- how do we do this.

2          THE COURT:  Take that hard copy of in-house and

3     outside counsel.  I would assume that a lot of the paper in the

4     files of in-house and outside counsel was created by others,

5     that they were -- and they were copied on it.  So let's assume

6     that there's a memo that was prepared by businesspeople, and a

7     copy of it resides in in-house counsel's file.  What is it

8     you're going to do in that circumstance?  So are you -- does

9     this mean that the copy of the same document that was located

10    in a businessperson's file, if you're going to assert privilege

11    as to it, it doesn't get logged either?

12          I mean, it's one thing -- let's see if you can respond

13    to that --

14          MR. KERR:  Well --

15          THE COURT:  -- question.

16          MR. KERR:  -- I guess, Your Honor, under that

17    scenario, if we -- the way it's drafted, if we find a

18    businessperson's file and we felt it was privileged, we'd have

19    to log it, and -- but we would not do that if it was in-house

20    counsel's file.  And I recognize that that distinction may seem

21    arbitrary, but that --

22          THE COURT:  No, it doesn't seem --

23          MR. KERR:  -- would be the approach we --

24          THE COURT:  -- so arbitrary to me, frankly.  I mean --

25          MR. KERR:  But that'd be the approach we --

**RESIDENTIAL CAPITAL, LLC, et al.**

1          THE COURT:  -- it just --

2          MR. KERR:  -- we would take, in light of the way we've

3     drafted this.  And what -- in reality, I know what our files

4     look like.  Our files are largely communications we're having

5     with the client, we -- pulling off things all the time, which

6     reflects our work product; and the same thing with in-house

7     counsel.  But if we find a document that is not in in-house

8     counsel's files but in a businessperson's files and we say,

9     'Uh-oh, that is privileged,' we would then have to log it;

10    that'd be absolutely clear.

11         MR. SHORE:  But that's not what --

12         THE COURT:  Let me stop -- Mr. Shore, stop.

13         Mr. Kerr, take romanette iii:  internal documents and

14    communications, solely within -- well, never -- I think I

15    answered my own question.  Let me see.

16         MR. SHORE:  It's vi is the prob -- or v.

17         THE COURT:  Yeah, so what are you doing with romanette

18    v?  Okay, this is the point about if -- I'm sympathetic to the

19    problem about the lawyers' files, because they're voluminous at

20    this stage; okay?  But this comes back to my point about, if a

21    document is generated by a nonlawyer and sent to the lawyer, it

22    may or may not be entitled to privilege or work product; I

23    don't know.

24         If you -- if your position is 'We don't have to log

25    the copy that's in the lawyer's file' but if the same document

**RESIDENTIAL CAPITAL, LLC, et al.**

1    has been found or located in a businessperson's file -- a lot

2    of this is electronic, right?  So you -- you've already

3    searched e-mails of a lot of people, nonlawyers, right?  And so

4    if you find an e-mail in Mr. X's file -- nonlawyer -- a copy of

5    which was sent to a lawyer, do you log it or don't you log it?

6            MR. KERR:  You've asked one question --

7        (Counsel confer)

8            MR. KERR:  Your Honor, the reason I'm asking

9    Ms. Levitt --

10           THE COURT:  Yeah.

11           MR. KERR:  -- is I know there's been a lot of

12   discussion, in the adversary proceeding, on this.  And I

13   understand that they -- I don't know exactly how they're doing

14   that in the adversary.  I apologize, Your Honor, but we were

15   trying to -- for purposes of this, dealing both with the JSNs

16   and everybody else, trying to come up with a practical

17   solution.  I'm more than willing to go back and --

18           THE COURT:  I mostly have a question; I want to know

19   what -- I don't know what this --

20           MR. KERR:  And I guess, Your Honor --

21           THE COURT:  -- does.

22           MR. KERR:  -- the way I would answer that is -- the

23   way I would answer that is, if we're going through a

24   businessperson's file and it has a document in it that would

25   be -- under the language as written, if it is a communication

**RESIDENTIAL CAPITAL, LLC, et al.**

34

1  solely with counsel, under this we would not log it; that is

2  correct.

3  　　　　MS. LEVITT:  And that was the agreement, I believe --

4  　　　　THE COURT:  You have to speak into the microphone,

5  Ms. Levitt.

6  　　　　MS. LEVITT:  Sorry.

7  　　　　THE COURT:  Go ahead.

8  　　　　MS. LEVITT:  Your Honor, I believe -- and Mr. Shore

9  can correct me if not, but I believe that's the agreement we

10  reached in the context of the adversary, that if it's a

11  businessperson with their counsel, we weren't logging it.

12  　　　　THE COURT:  Mr. Shore?

13  　　　　MR. SHORE:  Right, but I -- now we're -- if we're

14  dealing with phase II issues -- so, for example, we had the

15  issue of whether or not an intercompany claim memo is

16  privileged.  They have written this in a manner such that it

17  would not have to be searched, logged; no way to object to it,

18  no way to bring the dispute before the Court, or anything else.

19  So phase I and phase II are different.  If this order is now

20  covering phase II, that's an issue that has to be resolved.

21  　　　　And I'm happy to sit and talk with the debtors about

22  how to fix this list, the way we got to it, on a protective

23  order and scheduling order with respect to phase I.

24  　　　　THE COURT:  But, Mr. Kerr, a lot of what you have

25  included here I don't have a problem with, in light of the

**RESIDENTIAL CAPITAL, LLC, et al.**

35

1   context of this case, where we are at this time.  Okay.  So,

2   meaning that communications that are only in the law-firm

3   files, in-house or outside-counsel files, that are between

4   lawyers, that are between the lawyers and the financial

5   advisors in connection with preparing for litigation, fine.

6   But what I -- where I am having a little bit of a problem is,

7   in light of the issues that have been raised, whether they're

8   phase I or phase II, they've been raised consistently, okay.

9   So Mr. Shore gives the example of intercompany claims; clearly

10   an issue we said that's going to be resolved as part of phase

11   II during confirmation.  Okay.

12        It may well be that if a businessperson generated a

13   memo and it was sent to -- copied to a lawyer, it may well be

14   privileged; I'm not disputing that, okay.  But I don't know.  I

15   think that -- so I think you need to tweak this a little bit,

16   okay.

17        I don't know how -- what volume of problems this is

18   going to create for you, but --

19        MR. KERR:  Your Honor, if I may.

20        THE COURT:  -- because it's very easy -- particularly

21   in the context of threatened or ongoing litigation, it's very

22   easy for businesspeople to just begin copying lawyers on

23   everything.  It doesn't make it privileged just because they

24   copied the lawyers on everything.

25        MR. KERR:  Your Honor, I would agree with that, and

**RESIDENTIAL CAPITAL, LLC, et al.**

36

1   you're right that we would -- we would, as we would at all

2   times, take a look at a document and understand both the

3   context and what it was and, if it was not privileged, we would

4   produce it.

5         THE COURT:  Yeah, but I don't want a doc -- I don't

6   want -- it can't all be left, at the end of the day, to your

7   judgment as to what is or isn't privileged.  I think -- I'm

8   prep -- in light of the circumstances and timing of this case,

9   I'm certainly prepared to sign an order that relieves you of

10  the obligation of logging everything in the lawyers' files, in-

11  house, outside-counsel files.  Where I'm having some problem

12  is, for those documents that are -- because if it's an e-mail,

13  it's captured, right?  And I think you should have to log when

14  the -- if it's found in the files of a nonlawyer, you should

15  have to log it.

16        MR. KERR:  Let me give you just one practical example,

17  Your Honor --

18        THE COURT:  Go ahead.

19        MR. KERR:  -- that we're wrestling with as well.

20  Again, since Mr. Kruger was appointed as CRO, we routinely

21  communicate with Mr. Kruger by e-mail.  If -- I have never

22  counted how many -- we've searched all of Mr. Kruger's e-mails,

23  but how many -- I think it's not -- it's a reasonable

24  assumption, and a reasonable assumption (sic), to assume that

25  the communications we're having with Mr. Kruger are privileged.

**RESIDENTIAL CAPITAL, LLC, et al.**

37

1    And to now have to log all of that seems to me to be an

2    unnecessary burden and expense that should not be done here.

3            THE COURT:  Mr. Shore?

4            MR. KERR:  There may be other --

5            THE COURT:  Mr. Shore --

6            MR. KERR:  -- folks that are different.

7            THE COURT:  -- what's your position on that?

8            MR. SHORE:  My position is -- I saw the list this

9    morning, of what they want to carve out; I've got some initial

10   reactions to a number of them; one of them, for example:  no

11   clients and lawyers need to be logged, or no FAs need to be

12   logged, or -- this is a new one -- communications between

13   Morrison & Foerster and the CRO.  I don't -- whether I have a

14   problem with that or not, my sense is there're going to be some

15   topics that are not going to be privileged.  If what's ending

16   up happening is they're just forwarding on materials for

17   Mr. Kruger to review, such that that's the only way we can see

18   what Mr. Kruger is reviewing, I can -- as I said, I can refine

19   this list with them.  I think it would be helpful for us to

20   have a discussion.

21           THE COURT:  Well, put it this way --

22           Mr. Kerr --

23           MR. SHORE:  Can I make --

24           THE COURT:  Wait, wait, just let me -- it goes back to

25   my comment earlier about I get theirs Friday night, which I

**RESIDENTIAL CAPITAL, LLC, et al.**

38

1    can't review till yesterday; I get yours this morning, which I

2    haven't -- you know, I looked at quickly, but -- okay.  It's --

3    it is unfair, because you did make changes; a lot of them are

4    very helpful, from what I've seen.  But you made changes.  In

5    fairness, the objectors are entitled to an opportunity to

6    review it, in more than -- not for very long, but they're

7    entitled to an opportunity to review it.

8            So what I'm going to do is this:  I'm granting your

9    motion.  Okay.  There'll be a written order entered to that.

10   You need to meet and confer promptly to see if you can resolve

11   issues that are reflected in the changes that you made and

12   provided this morning.  Okay.  And hopefully you'll be able to

13   resolve those.  You've gotten some guidance from me.  I'm

14   sensitive to this issue about communications with Mr. Kruger,

15   okay.  But I come back to -- I know your -- I don't know what

16   the volume of documents we're talking about at this stage.  I'm

17   sure the volume that have just -- that have gone between

18   Mr. Kruger -- because he's probably been copied on most

19   everything.  And I'm not going to use that as a way to sort of

20   open this door to put -- because I could see this burden is

21   enormous, okay, and I agree with that.  But if --

22           Well, I'm granting your motion.  I'm directing you --

23   I'm not signing the order yet.  You need to try and see if you

24   can resolve the remaining issues; to the extent you can't --

25   how much time do you want to do that, Mr. Shore?

**RESIDENTIAL CAPITAL, LLC, et al.**

39

1          MR. SHORE:  Can you guys talk at 5 today?

2          MR. KERR:  Yeah, we can -- I can -- we can work at 5

3    today.  Actually, I have another call at 5.  We'll work it out.

4          THE COURT:  Okay.  I'm just trying to think -- because

5    I want to get this resolved this week, and Mr. Shore --

6        (Counsel confer)

7          MR. KERR:  We'll speak tonight, Your Honor.

8          THE COURT:  Okay.  I mean, it's got to be able -- as

9    far as I'm concerned, it has to be resolved by tomorrow at

10   noon, because I just figure --

11         MR. KERR:  We'll work to meet that deadline, Your

12   Honor.

13         THE COURT:  Mr. Shore, Mr. Uzzi's coming -- running

14   forward here.

15         MR. KERR:  Thank you, Your Honor.

16         THE COURT:  He got very concerned all of a sudden

17   there.

18         MR. UZZI:  No, Your Honor, I'm just trying to balance

19   out --

20         THE COURT:  Just make your --

21         MR. UZZI:  -- the podium a little bit.

22         THE COURT:  -- make your appearance, yeah.

23         MR. UZZI:  Gerard Uzzi from Milbank Tweed, on behalf

24   of the ad hoc group.

25         Your Honor, just an admin point that I'd feel

**RESIDENTIAL CAPITAL, LLC, et al.**

40

1    necessary putting on the record, because at the disclosure-

2    statement hearing I informed you that with respect to the

3    mediation order, the parties had agreed to extend it through

4    August 30th.  It has not been extended again at this point.  So

5    we're keeping an open dialogue with Judge Peck.  We do have the

6    ability, we believe, to extend it, with the agreement of the

7    parties, in the future.  And so perhaps I'll be before you

8    again letting you know that we've gone back in, but right now I

9    just want to inform the Court that the mediation is, I

10   think, -- in Judge Peck's words -- suspended.

11             THE COURT:  Okay.

12             MR. UZZI:  Thank you, Your Honor.

13             THE COURT:  Anybody else have anything they want to

14   add?

15             All right, so, communicate with me as soon as you can.

16   And, I mean, I'm hopeful.  I'm not going to hold off on

17   entering an order with respect to the motion itself; I'll

18   reflect that the parties continue to discuss some specific

19   provisions in it, because then there'll have to be a separate

20   order entered on the discovery protocol itself.

21             And I just -- the last thing I would say is,

22   Mr. Shore, if you have a proposed statement of issues for phase

23   II, get it to the debtors as soon as you can, and start working

24   on it now.  I didn't say -- I've said I expect that to happen;

25   I didn't put a deadline on submitting it.  I'm sure I'm going

**RESIDENTIAL CAPITAL, LLC, et al.**

41

1    to be seeing you plenty in the meantime.  So --

2            MS. LEVITT:  Your Honor, could I just make --

3            THE COURT:  Go ahead.

4            MS. LEVITT:  -- one point of clarification?  In --

5            THE COURT:  Just identify yourself, for the record.

6            MS. LEVITT:  This is Jamie Levitt on behalf of the

7    debtors.

8            Your Honor, the statement of issues that the Court

9    entered actually includes phase I and phase II.  We tried to --

10           THE COURT:  Yeah, but it left some stuff open.  I

11   mean, I think -- I looked at it again.  I don't have it in

12   front of me today, but I did look at it again last week.

13           MS. LEVITT:  Okay.  We'll work with the --

14           THE COURT:  I want to be sure -- I mean, the main --

15   okay, I'll accept your word that it does.  My main focus, and I

16   assume everybody's main focus, is what issues are we trying

17   starting October 15th.  Okay.  And I want to know sooner rather

18   than later what are the issues we're trying as part of phase II

19   during the confirmation hearing.  Okay?

20           MS. LEVITT:  Understood.  Thank you, Your Honor.

21           THE COURT:  Thank you very much.  All right, we're

22   adjourned.

23       (Whereupon these proceedings were concluded at 11:49 a.m.)

24

25

42

1

2                                    I N D E X

3

4                                    RULINGS

5                                                        Page      Line

6  Debtor's Motion for Authorization to        26         4

7  Establish and Implement Procedures in

8  Connection with Discovery Related to Plan

9  Confirmation, granted, and objections of the

10 ad hoc group and UMB overruled.

11

12 The parties are to meet and confer to        38        10

13 resolve any discovery disputes.

14

15

16

17

18

19

20

21

22

23

24

25

43

1

2                        C E R T I F I C A T I O N

3

4   I, David Rutt, certify that the foregoing transcript is a true

5   and accurate record of the proceedings.

6

7

8

9   _____

10  DAVID RUTT

11  AAERT Certified Electronic Transcriber CET**D 635

12

13  eScribers

14  700 West 192nd Street, Suite #607

15  New York, NY 10040

16

17  Date:  September 3, 2013

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 3, 2013

**#**

**#607 (1)**
2:22

**A**

**ability (2)**
27:18;40:6
**able (4)**
17:7;20:13;38:12;
39:8
**absolutely (2)**
30:3;32:10
**accept (1)**
41:15
**access (1)**
25:14
**accommodating (1)**
26:2
**accommodation (1)**
14:21
**account (1)**
15:16
**across (1)**
14:10
**actually (6)**
14:14;16:19;18:6;
26:19;39:3;41:9
**Ad (11)**
4:3,11;8:3;12:5;
16:19;24:17;25:1;
26:5,15;27:8;39:24
**add (3)**
16:12,13;40:14
**additional (8)**
12:7;13:16,20,23;
14:3;18:4;25:24;27:1
**address (1)**
19:6
**addressed (1)**
24:5
**adds (1)**
26:23
**adjourned (1)**
41:22
**adjust (1)**
15:2
**adjustments (2)**
15:6,9
**admin (1)**
39:25
**Administration (1)**
7:11
**adopted (1)**
25:1
**adversary (14)**
11:18;13:5,17;
19:10,23,24;20:11;
23:22;25:8;26:17,18;
33:12,14;34:10
**Advisor (1)**

**8:3**

**advisors (1)**
35:5
**again (10)**
14:5;15:10;20:20;
22:24;28:16;36:20;
40:4,8;41:11,12
**ago (2)**
19:7,8
**agree (3)**
23:9;35:25;38:21
**agreed (5)**
17:11;18:7;20:8,
14;40:3
**agreement (6)**
17:7,15;24:23;
34:3,9;40:6
**ahead (7)**
13:1;14:17;23:20;
28:20;34:7;36:18;
41:3
**allowed (1)**
18:2
**allowing (1)**
28:25
**Ally (2)**
5:12,12
**along (1)**
24:19
**amended (1)**
14:23
**amendment (1)**
14:12
**Americas (2)**
4:12;6:13
**amount (2)**
9:22;12:14
**Anbac (1)**
6:12
**ANDREW (1)**
8:13
**Angeles (1)**
6:6
**answered (2)**
19:22;32:15
**apologize (6)**
12:12;15:13;18:21;
19:1;28:6;33:14
**appearance (1)**
39:22
**apply (3)**
17:9,23;24:11
**appointed (1)**
36:20
**appreciate (1)**
14:9
**approach (5)**
13:25;24:25;25:1;
31:23,25
**appropriate (5)**
18:5,10;24:24;
25:2,23
**arbitrary (2)**

**31:21,24**

**argue (1)**
22:8
**argued (1)**
22:3
**arguments (1)**
27:4
**arises (1)**
25:5
**around (1)**
18:8
**arrive (1)**
20:8
**aside (1)**
12:20
**assert (1)**
31:10
**assertion (1)**
29:1
**ASSET (1)**
8:12
**assume (4)**
31:3,5;36:24;41:16
**assumption (2)**
36:24,24
**attempted (1)**
14:22
**attempting (1)**
29:11
**attorney (1)**
29:5
**Attorneys (10)**
4:3,11,20;5:3,12;
6:3,12,19;7:3,11
**August (2)**
9:9;40:4
**AURELIUS (1)**
7:19
**authority (3)**
9:14;18:19;25:10
**Authorization (1)**
2:4
**available (3)**
9:25;11:24,25
**Avenue (7)**
4:12;5:13,20;6:4,
13,20;7:4
**avoid (2)**
10:2;29:12
**aware (2)**
9:21;29:20
**away (1)**
24:4

**B**

**back (8)**
22:19,20;24:13;
32:20;33:17;37:24;
38:15;40:8
**badly (1)**
26:16
**balance (2)**

**30:16;39:18**

**Bank (2)**
5:12;7:3
**Bankruptcy (3)**
2:3,4;26:18
**BARNES (1)**
4:19
**based (1)**
29:17
**BECK (1)**
5:8
**become (1)**
22:14
**begin (2)**
20:25;35:22
**behalf (3)**
9:6;39:23;41:6
**BELKNAP (1)**
6:11
**Berskshire (1)**
8:3
**better (1)**
24:20
**bifurcation (1)**
16:22
**bit (1)**
35:6,15;39:21
**blackline (2)**
28:8,12
**blend (1)**
24:3
**block (1)**
27:6
**BLOOMBERG (1)**
7:24
**Board (1)**
7:11
**both (4)**
19:14;24:11;33:15;
36:2
**bottom (1)**
28:10
**breadth (1)**
13:24
**BRIAN (1)**
6:16
**bring (1)**
34:18
**broad (1)**
18:11
**bunch (3)**
11:19;13:7;25:19
**burden (6)**
14:2;27:6,7;29:19;
37:2;38:20
**businesspeople (2)**
31:6;35:22
**businessperson (2)**
34:11;35:13
**businessperson's (5)**
31:10,18;32:8;
33:1,24

**C**

**CA (1)**
6:6
**call (3)**
15:4;20:11;39:3
**called (2)**
10:9;13:13
**calling (2)**
19:23,24
**came (1)**
28:15
**can (33)**
9:11;10:10,11,11,
12;12:24;13:4;14:6,
14;17:6,6;18:3;19:6;
21:2;24:5;25:18;
26:23;27:11;29:9;
31:12;34:9;37:17,18,
18,23;38:10,24;39:1,
2,2,2;40:15,23
**CAPITAL (2)**
7:19;9:3
**captured (1)**
36:13
**CARPENTER (1)**
5:2
**carve (2)**
29:22;37:9
**CASE (8)**
4:10;9:20;11:21;
12:3;18:18;26:18;
35:1;36:8
**cases (1)**
12:2
**categories (1)**
27:15
**category (2)**
28:24;30:17
**cause (4)**
12:7;13:21;17:17;
27:9
**CC (1)**
2:2
**certain (5)**
13:7;19:16,17,19;
29:2
**certainly (3)**
25:14;27:3;36:9
**certainty (4)**
20:18,20;21:4,5
**challenge (1)**
30:7
**change (2)**
17:14,15
**changes (4)**
26:1;38:3,4,11
**Charles (1)**
9:5
**Chase (1)**
4:4
**Chris (1)**

18:17
**CHRISTOPHER (1)**
4:15
**CHURCH (1)**
7:25
**circumstance (1)**
31:8
**circumstances (2)**
24:25;36:8
**claim (2)**
27:15;34:15
**claims (1)**
35:9
**clarification (1)**
41:4
**clarify (1)**
10:24
**clean (2)**
26:10;28:1
**clear (7)**
16:5,5;17:20;18:7;
22:17;23:3;32:10
**clearly (2)**
29:23;35:9
**client (2)**
29:24;32:5
**clients (1)**
37:11
**close (1)**
24:14
**Code (2)**
2:3;9:13
**COHEN (2)**
5:19;7:16
**collect (1)**
29:16
**collected (3)**
11:3;12:15;13:11
**collecting (1)**
13:10
**COLLIER (1)**
8:9
**Columbus (1)**
5:6
**coming (4)**
10:3;20:23;22:20;
39:13
**comment (1)**
37:25
**comments (1)**
24:6
**committee (7)**
9:11;15:25;16:9;
18:3;19:10;24:16;
26:21
**committee's (5)**
10:16;19:13;21:18;
24:23
**communicate (2)**
36:21;40:15
**communication (1)**
33:25
**communications (7)**

29:24;32:4,14;
35:2;36:25;37:12;
38:14
**compelled (1)**
14:17
**competent (1)**
26:24
**completely (2)**
25:2,21
**concern (2)**
13:2,3
**concerned (2)**
39:9,16
**concerns (1)**
15:5
**concession (1)**
19:8
**concluded (1)**
41:23
**confer (7)**
13:19;17:22;25:5;
26:19;33:7;38:10;
39:6
**conference (1)**
21:12
**Confirmation (32)**
2:6;9:8,12,18;10:1;
13:9,18;18:10;19:10,
14,17,18,19,19,20,24;
20:10;21:19,24;22:1,
3;23:5,8,22;24:2,3,4,
8,12,18;35:11;41:19
**conflicting (1)**
20:1
**Connection (4)**
2:5;19:20;21:22;
35:5
**consider (1)**
21:7
**consistently (1)**
35:8
**constructively (1)**
14:20
**consulting (1)**
9:10
**contend (1)**
13:17
**context (8)**
9:20;12:12;24:5;
25:8;34:10;35:1,21;
36:3
**continue (4)**
14:15;19:11;26:21;
40:18
**control (1)**
9:15
**convinced (1)**
16:25
**copied (4)**
31:5;35:13,24;
38:18
**copies (1)**
29:22

**copy (6)**
26:10;31:2,7,9;
32:25;33:4
**copying (1)**
35:22
**cost (2)**
10:2,14
**counsel (13)**
15:22;24:16,16;
29:19,23,25;31:3,4;
32:7;33:7;34:1,11;
39:6
**counsel's (4)**
30:2;31:7,20;32:8
**counted (1)**
36:22
**couple (3)**
19:7,7,8
**course (2)**
11:20;14:17
**COURT (98)**
9:2;10:4,15,20,25;
11:5,9,16,22;12:4,16,
20,22;13:1;14:4,7;
15:11,13,14,20,22,
25;17:5,13,21,23;
18:6,12,15,19;19:3;
20:5;21:21,23;22:10,
12,20;23:1,9,11,14,
17,19;24:10;25:2,9;
27:12,17,21,23;28:1,
4,9,16,18,20;29:10;
30:1,6,25;31:2,15,22,
24;32:1,1,17;33:10,
18,21;34:4,7,12,18,
24;35:20;36:5,18;
37:3,5,7,21,24;39:4,
8,13,16,20,22;40:9,
11,13;41:3,5,8,10,14,
21
**Court's (5)**
17:9;21:7;26:3,13;
27:10
**cover (1)**
24:7
**covering (1)**
34:20
**create (1)**
35:18
**created (2)**
12:14;31:4
**Credit (1)**
7:11
**creditors' (3)**
9:10;10:16;24:16
**CRO (2)**
36:20;37:13
**cuts (1)**
27:18

**D**

**DAKIS (1)**

5:23
**DANIEL (1)**
6:24
**database (3)**
25:20,21;26:25
**date (2)**
25:9;26:17
**David (3)**
2:20;4:25;5:8
**day (2)**
18:22;36:6
**DC (1)**
7:14
**DE (1)**
4:23
**deadline (2)**
39:11;40:25
**deadlines (1)**
14:13
**deal (1)**
12:24
**dealing (2)**
33:15;34:14
**debtor (5)**
9:21;11:15;16:2,7,
8
**Debtors (18)**
5:3;9:6;11:2;
12:15;14:12;16:25;
18:3,7,24;19:9;
24:23;25:19,25;
26:21;27:13;34:21;
40:23;41:7
**Debtors' (6)**
2:2;9:7;19:13;
21:17;24:15;26:4
**decision (2)**
22:14,22
**deemed (2)**
17:3;29:4
**defense (1)**
29:1
**delay (2)**
21:16;24:18
**delink (1)**
23:25
**delinking (1)**
19:10
**demonstrate (1)**
13:21
**denied (1)**
24:15
**DENMAN (1)**
4:16
**DENNIS (1)**
7:20
**derail (1)**
24:18
**describe (1)**
14:15
**designed (2)**
9:18,19
**details (1)**

13:5
**determine (2)**
13:19;29:18
**determining (2)**
17:9;30:14
**dialogue (1)**
40:5
**different (6)**
12:12;16:16;17:25;
22:23;34:19;37:6
**differently (1)**
21:13
**directing (1)**
38:22
**directly (1)**
12:24
**disagree (1)**
23:7
**disagreements (1)**
20:13
**disclosure- (1)**
40:1
**Discovery (27)**
2:5;9:8,11,15,18,
21,24;10:1,3;12:1,7;
18:2,3,5;20:6,21;
21:9,20;24:11,19,24;
25:5,11,19;27:1,7;
40:20
**discuss (1)**
40:18
**discussion (3)**
22:13;33:12;37:20
**discussions (1)**
25:17
**dispute (6)**
17:21,24;18:10;
25:5;29:14;34:18
**disputes (3)**
17:10;18:4,13
**disputing (1)**
35:14
**disqualify (2)**
24:15,16
**distinction (1)**
31:20
**doc (1)**
36:5
**Doc#4765 (1)**
2:2
**docket (1)**
9:9
**document (16)**
11:12,20;13:6;
16:9,10,13,17,19,22;
29:2;31:9;32:7,21,
25;33:24;36:2
**documentation (4)**
9:22;13:13,20;14:1
**documents (23)**
10:5,11,11,12,12;
11:2,3,7;12:14;
13:10;14:15;18:8,9;

12-12020-mg Doc 4963 Filed 09/03/13 Entered 09/06/13 10:51:55 Main Document
Pg 46 of 52

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 3, 2013

25:12,20;27:15,19;
28:24;29:13;30:15;
32:13;36:12;38:16
**done (4)**
10:14;14:25;24:20;
37:2
**door (1)**
38:20
**down (5)**
17:6;26:19;27:16,
19;28:7
**download (1)**
10:11
**drafted (3)**
17:13;31:17;32:3
**duplication (3)**
10:2;16:20,21
**during (3)**
21:25;35:11;41:19

**E**

**earlier (2)**
17:17;37:25
**easy (2)**
35:20,22
**e-database (1)**
10:9
**efficiency (1)**
16:8
**efficient (2)**
9:12,19
**effort (1)**
24:18
**either (4)**
18:25;25:14;29:15;
31:11
**electronic (4)**
10:6;25:16;26:25;
33:2
**element (1)**
9:23
**ELLIS (1)**
5:11
**else (5)**
11:25;29:5;33:16;
34:18;40:13
**e-mail (4)**
30:14;33:4;36:12,
21
**e-mails (3)**
13:12;33:3;36:22
**emergency (1)**
18:22
**emphasizing (1)**
16:18
**encompassed (1)**
27:2
**end (2)**
21:3;36:6
**ending (1)**
37:15
**engaged (1)**

24:17
**enormous (2)**
9:22;38:21
**enough (2)**
22:5,6
**Enron (2)**
12:13;30:9
**enter (2)**
9:14;26:7
**entered (5)**
26:4,7;38:9;40:20;
41:9
**entering (1)**
40:17
**entitled (3)**
32:22;38:5,7
**entries (1)**
29:13
**equivalent (1)**
16:15
**ERIC (1)**
7:7
**eScribers (1)**
2:21
**especially (1)**
29:19
**ESQ (14)**
4:7,15,16,25;5:8,
16,23,24;6:8,9,16,24;
7:7,16
**essentially (5)**
11:23;12:5;21:11;
24:17;27:17
**Establish (2)**
2:4;9:7
**even (5)**
17:2;25:8;27:14;
28:24;29:8
**events (1)**
22:2
**everybody (3)**
11:25;21:5;33:16
**everybody's (2)**
23:16;41:16
**everyone (1)**
16:12
**evidence (2)**
22:21;26:25
**evidentiary (1)**
21:6
**Exactly (5)**
23:10;28:3,7,15;
33:13
**examiner (5)**
11:2,3,15;16:17;
25:15
**examiner's (3)**
10:15;12:17;25:15
**example (5)**
28:25;34:14;35:9;
36:16;37:10
**excessive (1)**
10:2

**excuse (1)**
30:12
**Exhibit (2)**
28:7,10
**expect (4)**
25:4;26:15,20;
40:24
**expedited (1)**
20:17
**expense (1)**
37:2
**explanations (1)**
19:16
**expressed (1)**
21:23
**extend (2)**
40:3,6
**extended (1)**
40:4
**extensive (1)**
9:21
**extent (3)**
25:6;30:23;38:24

**F**

**fact (2)**
13:12;26:23
**fair (1)**
9:12
**fairness (1)**
38:5
**falling (1)**
19:15
**falls (2)**
24:4;29:18
**far (1)**
39:9
**Fargo (1)**
7:3
**FAs (1)**
37:11
**FA's (1)**
29:4
**favor (1)**
14:8
**Federal (1)**
2:3
**feel (1)**
39:25
**felt (3)**
14:17;16:7;31:18
**FGIC (1)**
11:19
**Fifth (1)**
7:4
**figure (2)**
25:20;39:10
**file (9)**
18:23,24;31:7,10,
18,20;33:1,4,24
**file' (1)**
32:25

**filed (8)**
9:9,10;12:5;14:13,
19,23;15:5,7
**files (12)**
30:2;31:4;32:3,4,8,
8,19;35:3,3;36:10,11,
14
**filing (3)**
14:25;15:15;18:20
**filings (1)**
25:25
**Financial (3)**
5:12;8:3;35:4
**find (4)**
30:16;31:17;32:7;
33:4
**fine (1)**
35:5
**first (1)**
18:8
**fix (1)**
34:22
**fixed (1)**
12:2
**FLANIGAN (1)**
6:24
**Floor (1)**
6:5
**focus (3)**
27:24;41:15,16
**Foerster (2)**
9:6;37:13
**folks (1)**
37:6
**follows (1)**
26:3
**forced (1)**
29:12
**form (3)**
26:6;30:9,12
**format (4)**
10:6,7,10;25:16
**forward (6)**
21:6;23:21;26:24,
24;27:8;39:14
**forwarding (1)**
37:16
**found (2)**
33:1;36:14
**fourteen (5)**
10:21;11:10;25:12,
17;27:2
**frame (1)**
20:17
**frankly (1)**
31:24
**frequently (1)**
20:15
**Friday (7)**
14:9,25;15:12;
18:25;19:1;30:21;
37:25
**Friday-night (2)**

14:16;18:20
**front (1)**
41:12
**fully (3)**
19:22;20:7;25:4
**further (5)**
14:12,18;15:9;
25:11;26:1
**future (1)**
40:7

**G**

**gatekeeper (1)**
16:9
**generally (3)**
19:15;29:6,7
**generated (4)**
10:17;12:17;32:21;
35:12
**GERARD (2)**
4:7;39:23
**given (4)**
13:18,24,25;29:19
**gives (2)**
9:14;35:9
**global (1)**
23:5
**goes (1)**
37:24
**GOLDMAN (1)**
6:8
**Good (6)**
9:5;12:7;13:21;
17:17;18:17;27:9
**good-cause (6)**
12:8;17:4;24:22;
25:3,10;26:23
**Gotshal (1)**
16:11
**Grand (1)**
6:4
**grant (2)**
26:4,13
**granting (2)**
38:8,22
**grounds (2)**
13:8;18:9
**Group (10)**
4:3,11;8:3;12:5;
24:17;25:1;26:5,16;
27:8;39:24
**guess (7)**
14:15;16:4;26:9;
27:5;30:8;31:16;
33:20
**guidance (1)**
38:13
**GUINEY (1)**
6:16
**guys (1)**
39:1

12-12020-mg    Doc 4963    Filed 09/03/13    Entered 09/06/13 10:51:55    Main Document
Pg 47 of 52
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 3, 2013

# H

**HADLEY (1)**
4:2
**hands (1)**
24:21
**happen (5)**
20:9,15;21:25;
26:21;40:24
**happened (1)**
14:21
**happening (3)**
19:22;21:24;37:16
**happy (2)**
27:19;34:21
**hard (2)**
29:22;31:2
**HARRISON (1)**
4:16
**Hathaway (1)**
6:3
**headed (1)**
25:21
**hear (4)**
12:22;15:22;18:12,
15
**heard (2)**
15:25;27:11
**hearing (5)**
21:6;22:17;26:11;
40:2;41:19
**helpful (2)**
37:19;38:4
**High (1)**
5:4
**highlighted (1)**
14:6
**historically (1)**
16:15
**history (1)**
25:9
**Hoc (10)**
4:3,11;8:3;12:5;
24:17;25:1;26:5,15;
27:8;39:24
**hocs (1)**
16:19
**Hold (3)**
28:4,4;40:16
**Honor (59)**
9:5,14,16;10:2,8,
14,24;11:8,11,23;
12:10,12,24;13:4,15,
22,24;14:5,22;15:3,
13;16:3;18:17;19:9;
22:6,17,24;23:2,10;
27:11,22,25;28:2,6;
29:9,11,16,20;30:4,8,
13,18;31:16;33:8,14,
20;34:8;35:19,25;
36:17;39:7,12,15,18,
25;40:12;41:2,8,20

**Honor's (1)**
9:20
**hoped (1)**
18:25
**hopeful (2)**
19:11;40:16
**hopefully (2)**
17:7;38:12
**Horowitz (8)**
16:1,3;17:12,19,
25;18:13;23:9,10
**HOULIHAN (1)**
8:2
**house (1)**
36:11

# I

**identified (1)**
12:6
**identify (2)**
28:23;41:5
**II (31)**
13:17;16:24;19:14,
16,18,20,25;20:11;
21:4,11,15,19,19;
22:8;23:21,23,24,25;
24:1,3,6,9,11;34:14,
19,20;35:8,11;40:23;
41:9,18
**II/confirmation (1)**
17:3
**iii (1)**
32:13
**impact (1)**
13:22
**Implement (1)**
2:5
**important (2)**
16:6;17:1
**impose (2)**
25:2,10
**in- (1)**
36:10
**Inc (2)**
5:12;8:8
**included (2)**
12:8;34:25
**includes (2)**
20:6;41:9
**including (2)**
16:17,18
**incorporate (1)**
15:19
**individual (1)**
11:14
**inform (1)**
40:9
**informed (1)**
40:2
**in-house (9)**
29:22;30:1;31:2,4,
7,19;32:6,7;35:3

**initial (1)**
37:9
**initially (1)**
20:13
**inquiry (1)**
29:3
**inside (1)**
30:1
**Insurance (1)**
6:12
**intend (2)**
20:7;24:8
**intending (1)**
10:19
**intention (1)**
20:9
**intentions (2)**
19:13,13
**intercompany (2)**
34:15;35:9
**internal (1)**
32:13
**into (8)**
9:24;10:9;15:16,
21;19:16;24:23;29:3;
34:4
**investigation (2)**
10:16;12:17
**investigations (1)**
10:23
**involved (1)**
16:6
**issue (7)**
22:14;26:14;27:11;
34:15,20;35:10;
38:14
**issues (44)**
13:9;14:8;15:8,16;
16:23;17:8;18:5;
19:17,17,18,25;20:7,
8,11,14,17,19,24;
21:4,7,11,15;22:8;
23:3,6,7,12;24:3,4,4,
8,11,19;25:6;26:2,20;
34:14;35:7;38:11,24;
40:22;41:8,16,18
**items (1)**
16:21

# J

**Jamie (1)**
41:6
**join (1)**
16:2
**joining (2)**
16:1,3
**joint (5)**
20:15,18,24;21:12;
29:1
**JOSEPH (1)**
5:24
**JSN (1)**

16:19
**JSNs (12)**
13:5,16,23;14:10,
16;15:4;16:18,23;
17:16;24:17;26:2;
33:15
**JSNs' (1)**
14:24
**Judge (2)**
40:5,10
**judgment (1)**
36:7
**Junior (3)**
4:3,11;8:3
**justification (1)**
18:19

# K

**keep (2)**
9:18;12:11
**keeping (1)**
40:5
**KENT (1)**
8:9
**Kerr (62)**
9:4,5,5;10:8,18,24;
11:1,6,11,17,23;
12:10,19,21,24;13:2;
14:5,22;15:12,15,21,
23,24;16:5;22:23,24;
27:21;28:5,6,10,14,
17,21;29:10,11;30:3,
8,12;31:1,14,16,23,
25;32:2,13;33:6,8,11,
20,22;34:24;35:19,
25;36:16,19;37:4,6,
22;39:2,7,11,15

**key (1)**
9:22
**kind (1)**
9:15
**KIRKLAND (1)**
5:11
**knocking (1)**
12:11
**know' (1)**
20:4
**knowing (1)**
20:19
**Kruger (7)**
36:20,21,25;37:17,
18;38:14,18
**Kruger's (1)**
36:22

# L

**language (8)**
27:14,16,21,24;
28:15,23;30:9;33:25
**largely (2)**
24:4;32:4

16:19
**last (3)**
15:7;40:21;41:12
**late (1)**
19:2
**later (1)**
41:18
**law (1)**
19:15
**law-firm (1)**
35:2
**lawyer (3)**
32:21;33:5;35:13
**lawyers (7)**
16:11;30:15;35:4,
4,22,24;37:11
**lawyers' (2)**
32:19;36:10
**lawyer's (1)**
32:25
**lead-in (1)**
28:22
**least (2)**
17:2,14
**left (4)**
10:3;24:20;36:6;
41:10
**legitimate (1)**
26:2
**legitimately (1)**
30:14
**Lehman (7)**
12:13,16,17;16:6,
6;30:11,12
**LELAND (1)**
5:2
**letting (1)**
40:8
**Levitt (14)**
13:4;23:1,2;33:9;
34:3,5,6,8;41:2,4,6,6,
13,20
**Lexington (1)**
5:13
**license (1)**
10:13
**light (8)**
15:8;25:9;30:20,
20;32:2;34:25;35:7;
36:8
**limited (1)**
15:7
**LIPPS (1)**
5:2
**list (5)**
11:12;21:17;34:22;
37:8,19
**listen (1)**
27:4
**litigation (3)**
25:9;35:5,21
**little (3)**
35:6,15;39:21
**LLC (1)**

2:21
**LLP (10)**
4:2,10,19;5:2,11,
19;6:2,11;7:2,10
**located (2)**
31:9;33:1
**log (17)**
28:24;29:6,13,21;
30:7,16,17,22;31:19;
32:9,24;33:5,5;34:1;
36:13,15;37:1
**logged (4)**
31:11;34:17;37:11,
12
**logging (3)**
30:5;34:11;36:10
**logs (3)**
27:13;28:24;30:23
**LOKEY (1)**
8:2
**long (3)**
23:19;26:1;38:6
**longer (1)**
21:16
**look (8)**
14:15;22:12;24:13;
26:11;28:16;32:4;
36:2;41:12
**looked (4)**
14:25;26:10;38:2;
41:11
**Los (1)**
6:6
**lot (8)**
12:18;16:20;31:3;
33:1,3,11;34:24;38:3
**loud (1)**
22:17
**LP (2)**
7:19,24

**M**

**main (3)**
41:14,15,16
**major (1)**
12:4
**majority (1)**
13:13
**makes (2)**
15:17,17
**making (4)**
14:3;15:10;17:14;
25:2
**manage (1)**
9:15
**MANAGEMENT (2)**
7:19;8:12
**Manhattan (1)**
4:4
**manipulate (1)**
10:12
**manner (1)**

34:16
**many (5)**
10:18;11:3;26:16;
36:22,23
**masses (2)**
30:14,15
**materials (1)**
37:16
**matter (1)**
16:7
**MATTHEW (1)**
7:21
**may (17)**
11:3;18:4,6,13;
20:4;22:2,14,15,15;
23:7;31:20;32:22,22;
35:12,13,19;37:4
**maybe (1)**
17:19
**MCCLOY (1)**
4:2
**mean (15)**
12:4,16,22;17:5,
18;20:14;22:12;26:9;
31:9,12,24;39:8;
40:16;41:11,14
**meaning (1)**
35:2
**meant (1)**
19:3
**meantime (1)**
41:1
**mediation (2)**
40:3,9
**medical (1)**
18:22
**meet (6)**
13:19;17:22;25:5;
26:19;38:10;39:11
**meet-and-confer (1)**
17:7
**meetings (1)**
16:11
**MELTZER (1)**
5:16
**memo (3)**
31:6;34:15;35:13
**MICHAEL (1)**
5:16
**microphone (1)**
34:4
**might (1)**
27:7
**MILBANK (2)**
4:2;39:23
**million (2)**
10:17,22
**million- (1)**
25:17
**million-plus (4)**
10:21;11:10;25:12;
27:2
**mind (1)**

29:6
**misplaced (1)**
13:3
**mistaken (1)**
25:13
**MOLDOVAN (1)**
5:24
**moment (1)**
20:10
**moot (7)**
22:9,9,10,12,14,18;
23:6
**moot' (1)**
19:20
**more (4)**
13:4;15:18;33:17;
38:6
**morning (14)**
9:5;14:11;18:17,
25;25:25;26:6,12;
27:14,17,24;28:7;
37:9;38:1,12
**MORRISON (3)**
5:19;9:6;37:13
**most (6)**
17:8;21:8;24:19;
26:15,20;38:18
**mostly (1)**
33:18
**Motion (13)**
2:2;9:7,9,10,13;
11:9;24:15;26:4,8,
13;38:9,22;40:17
**motion's (2)**
14:13,19
**much (4)**
17:15;21:4;38:25;
41:21
**MUNGER (1)**
6:2

**N**

**narrowing (1)**
27:20
**National (1)**
7:11
**nature (1)**
12:2
**necessary (1)**
40:1
**need (9)**
17:4;19:21;20:2;
24:6;35:15;37:11,11;
38:10,23
**needs (1)**
13:20
**negotiate (1)**
24:1
**NELSON (1)**
7:16
**Nevertheless (1)**
23:6

**New (14)**
2:23;4:5,13;5:14,
21;6:14,22;13:23;
14:23;15:1,8,10;
18:2;37:12
**night (7)**
14:9,25;15:12;
18:25;19:1;30:21;
37:25
**nine (2)**
10:17,22
**no-holds-barred (1)**
24:18
**nominally (1)**
17:3
**nonlawyer (3)**
32:21;33:4;36:14
**nonlawyers (1)**
33:3
**noon (1)**
39:10
**North (1)**
5:4
**Noteholders (1)**
8:4
**Notes (2)**
4:3,11
**noticed (1)**
18:23
**number (5)**
9:3,9;13:7;16:16;
37:10
**numbers (1)**
11:13
**NW (1)**
7:12
**NY (7)**
2:23;4:5,13;5:14,
21;6:14,22

**O**

**object (3)**
18:3;27:19;34:17
**objected (2)**
13:6,7
**objection (6)**
12:4;15:7;18:23;
19:5;28:25;29:8
**objections (5)**
14:19;15:10;24:2;
26:5,14
**objectors (3)**
12:23;18:16;38:5
**objectors' (1)**
12:25
**obligation (2)**
29:8;36:10
**occurred (1)**
26:17
**o'clock (1)**
26:11
**October (3)**

20:25;25:22;41:17
**off (5)**
17:2,3;18:1;32:5;
40:16
**official (2)**
23:15,17
**OLSON (1)**
6:2
**One (17)**
4:4;10:24;12:13;
13:10,12;14:7,13,19;
19:5;22:22;27:11;
31:12;33:6;36:16;
37:10,12;41:4
**ones (1)**
17:2
**ongoing (1)**
35:21
**only (8)**
13:22;16:7,8;18:9;
26:17;27:18;35:2;
37:17
**open (8)**
27:3;38:20;40:5;
41:10
**operations@escribersnet (1)**
2:25
**opportunity (2)**
38:5,7
**order (38)**
9:15;11:8,12;
14:11,24;15:2,4,10,
21;20:3,16,16;21:13;
23:23,24,24;24:1,1,3,
5,7;26:4,6,7,8,14,22;
30:10,12;34:19,23,
23;36:9;38:9,23;
40:3,17,20
**orderly (1)**
21:8
**ordinarily (2)**
20:14;21:12
**ordinary (2)**
18:14;27:6
**organized (1)**
9:19
**original (1)**
16:19
**others (1)**
31:4
**ought (1)**
22:3
**out (11)**
14:8;16:20,24;
20:14;23:2;25:20;
27:18;29:22;37:9;
39:3,19
**outside (4)**
29:23,24;31:3,4
**outside-counsel (2)**
35:3;36:11
**over (6)**
11:20;13:5,6;

12-12020-mg    Doc 4963    Filed 09/03/13    Entered 09/06/13 10:51:55    Main Document
Pg 49 of 52
RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 3, 2013

19:15;27:23;30:15
**overarching (1)**
19:5
**overbroad (2)**
27:17;29:9
**overreached (1)**
26:16
**overrule (2)**
26:4,13
**own (2)**
14:11;32:15

**P**

**PA (1)**
7:5
**page (1)**
28:11
**pages (8)**
10:17,21,22;11:10;
25:12,15,18;27:2
**paper (3)**
9:24;12:18;31:3
**papers (1)**
14:6
**paragraph (2)**
11:12;28:11
**part (14)**
20:9,10,15,21;21:9,
10,12,24;23:16;24:9;
26:15;29:16;35:10;
41:18
**participant (2)**
9:25;10:13
**particularly (2)**
18:11;35:20
**parties (9)**
14:8,20;15:18;
20:8;24:8;25:5;40:3,
7,18
**past (2)**
22:4;25:7
**PATTERSON (1)**
6:11
**Pause (1)**
28:19
**PC (1)**
6:18
**Peck (1)**
40:5
**Peck's (1)**
40:10
**people (3)**
20:1;22:7;33:3
**perhaps (1)**
40:7
**periods (1)**
29:2
**persuaded (2)**
22:4,4
**ph (1)**
10:10
**phase (46)**

13:17;16:23,23;
17:3;19:14,16,18,20,
25;20:7,9,11,12,24;
21:4,10,11,15,19,19;
22:8;23:4,18,21,22,
23,24,25;24:1,3,6,9,
11;25:22;34:14,19,
19,20,23;35:8,8,10;
40:22;41:9,9,18
**Pittsburgh (1)**
7:5
**place (1)**
21:20
**places (1)**
11:4
**Plaintiffs (1)**
6:19
**Plan (12)**
2:6;9:8,12,18,23;
10:1;13:8;14:6;23:5,
7,25;24:4
**Plaza (1)**
4:4
**pleadings (1)**
20:16
**Please (1)**
9:2
**plenty (1)**
41:1
**plus (1)**
25:18
**podium (1)**
39:21
**point (8)**
12:14;22:17;23:2;
32:18,20;39:25;40:4;
41:4
**POLSINELLI (1)**
6:18
**position (7)**
13:16;14:4;23:16,
19;32:24;37:7,8
**potential (1)**
13:22
**POWLEN (1)**
4:25
**practical (4)**
30:13,19;33:16;
36:16
**practically (1)**
30:24
**preclude (1)**
29:3
**prep (2)**
30:9;36:8
**preparation (1)**
21:10
**prepare (2)**
14:14;19:23
**prepared (4)**
13:19;23:11;31:6;
36:9
**preparing (1)**

35:5
**preserve (1)**
28:25
**pressed (1)**
19:9
**pre-trial (3)**
20:15,16;21:12
**pretty (2)**
9:17;24:14
**PRIETO (1)**
7:20
**prior (1)**
20:16
**Privilege (7)**
27:13;29:1,18;
30:21,22;31:10;
32:22
**privileged (14)**
27:16;29:3,15,23;
30:2,4;31:18;34:16;
35:14,23;36:3,7,25;
37:15
**privileged' (1)**
32:9
**prob (1)**
32:16
**probably (3)**
24:14,20;38:18
**problem (7)**
22:7;28:22;32:19;
34:25;35:6;36:11;
37:14
**problems (1)**
35:17
**Procedure (1)**
2:4
**Procedures (3)**
2:5;9:8,17
**proceeding (10)**
11:18;13:5,17;
19:23,24;23:22;25:8;
26:17,18;33:12
**proceedings (3)**
16:16;20:12;41:23
**process (7)**
9:12,18;10:1;15:3;
16:7;18:2;29:20
**produce (5)**
11:17;14:1;28:23;
30:4;36:4
**produced (13)**
9:22;11:2,8,14,15,
19;13:11,14,20;
16:10;25:13,15,18
**produced' (1)**
27:3
**producing (1)**
11:17
**product (5)**
29:5,15,24;32:6,22
**productions (2)**
11:12,20
**promptly (1)**

38:10
**proposed (9)**
9:17;14:11,12;
20:3;24:24;26:1,8;
27:13;40:22
**propound (1)**
18:2
**propounded (1)**
16:23
**protective (1)**
34:22
**protocol (12)**
17:1,13,15;19:12;
20:6,22;21:10;23:25;
24:11,24;29:16;
40:20
**protocols (4)**
12:1,6,8,11
**provide (1)**
13:4
**provided (1)**
38:12
**provision (2)**
20:4;21:17
**provisions (1)**
40:19
**pulling (1)**
32:5
**purpose (1)**
9:16
**purposes (2)**
17:1;33:15
**Pursuant (2)**
2:2;9:13
**pushed (1)**
19:1
**put (16)**
9:24;10:5;12:15;
13:14;14:2;17:2,3;
20:3,23;22:21;24:10,
23;26:24;37:21;
38:20;40:25
**putting (7)**
10:9;11:1,6,7;
12:20;30:21;40:1

**Q**

**quickly (3)**
26:10;27:12;38:2
**quite (1)**
24:24

**R**

**raise (1)**
15:16
**raised (6)**
15:5,8;20:11;26:2;
35:7,8
**rather (2)**
27:6;41:17
**reach (2)**

14:20;17:7
**reached (1)**
34:10
**reactions (1)**
37:10
**read (4)**
25:24,24,25;27:23
**real (1)**
17:6
**reality (1)**
32:3
**really (2)**
13:8;16:22
**reason (2)**
14:13;33:8
**reasonable (2)**
36:23,24
**reasonably (1)**
15:16
**reasons (1)**
14:14
**received (1)**
20:1
**recognize (1)**
31:20
**record (7)**
19:9;21:17;40:1;
41:5
**redline (1)**
26:9
**REED (1)**
7:2
**referred (1)**
12:9
**refine (1)**
37:18
**reflect (3)**
9:20;12:2;40:18
**reflected (1)**
38:11
**reflects (1)**
32:6
**regard (1)**
18:5
**REID (1)**
8:5
**Related (1)**
2:5
**relating (1)**
9:8
**relative (1)**
10:9
**relieves (1)**
36:9
**remaining (3)**
17:10,21;38:24
**render (2)**
19:20;23:5
**REORG (1)**
8:8
**repeated (1)**
10:3
**reply (1)**

15:9

**repository (6)**
9:24;10:6;11:1,7,
18;13:15

**Representative (1)**
6:19

**request (4)**
16:19,22;17:16;
30:21

**requests (17)**
10:3;13:6,8,11,12,
16,24,25;14:3;16:9,
10,14,17;17:2,10;
18:3;25:19

**require (3)**
12:7;20:7;27:14

**required (2)**
20:18;28:23

**requirement (6)**
12:8;24:22;25:3,
10;26:23;27:18

**RESEARCH (1)**
8:8

**Residential (1)**
9:3

**resides (1)**
31:7

**resolve (8)**
14:8;17:10;25:6,7;
26:20;38:10,13,24

**resolved (6)**
24:19;26:20;34:20;
35:10;39:5,9

**resolving (2)**
17:23;24:20

**respect (8)**
19:14;20:6,12;
21:18;24:2;34:23;
40:2,17

**respond (4)**
16:8;28:21;29:8;
31:12

**responded (1)**
13:7

**response (3)**
11:2;13:11;14:1

**rest (1)**
22:9

**result (3)**
10:23;16:13;27:5

**review (5)**
10:11;37:17;38:1,
6,7

**reviewed (1)**
18:7

**reviewing (1)**
37:18

**right (23)**
10:3,17;11:16;
15:11,20;18:12,15;
19:12;20:12;22:16,
18;23:13,13;28:5;
30:3;33:2,3;34:13;

36:1,13;40:8,15;
41:21

**RMBS (1)**
11:15

**ROBERT (1)**
5:23

**role (1)**
29:19

**romanette (2)**
32:13,17

**routinely (1)**
36:20

**Rule (3)**
2:3;9:14;29:8

**Rules (1)**
2:3

**ruling (4)**
26:3,7,13;27:10

**rulings (1)**
19:19

**run (1)**
9:12

**running (1)**
39:13

**Rutt (1)**
2:20

## S

**same (3)**
31:9;32:6,25

**sat (1)**
26:19

**satisfied (1)**
17:17

**Saturday (1)**
19:3

**saw (3)**
16:24;27:16;37:8

**scenario (1)**
31:17

**SCHAFFER (1)**
7:7

**schedule (1)**
21:1

**scheduled (1)**
20:25

**scheduling (7)**
23:23,23,24,25;
24:1,7;34:23

**scope (4)**
18:5,10;20:17;
27:20

**scorched-earth (1)**
25:1

**search (5)**
27:15,18;28:23;
29:7,16

**searchable (3)**
10:6,10;25:16

**searchable' (1)**
25:21

**searched (5)**

26:24,25;33:3;
34:17;36:22

**seated (1)**
9:2

**Second (2)**
13:15;28:18

**Section (3)**
2:2;9:13;29:3

**Secured (3)**
4:3,11;8:3

**seeing (1)**
41:1

**seeking (3)**
14:8;27:1,6

**seeks (1)**
24:3

**seem (4)**
20:25;21:5;31:20,
22

**seemed (1)**
24:25

**seems (2)**
29:9;37:1

**sense (4)**
15:1,17,17;37:14

**sensitive (1)**
38:14

**sent (4)**
28:7;32:21;33:5;
35:13

**separate (2)**
26:5;40:19

**September (1)**
21:3

**serve (1)**
25:19

**served (3)**
13:5;16:9;17:4

**set (3)**
16:8,10,13

**SETH (1)**
6:8

**settlement (1)**
23:5

**seventy (1)**
16:11

**shifted (1)**
12:6

**shifts (1)**
27:5

**SHORE (38)**
4:15;18:17,17,21;
19:5;21:16,22;22:6,
11,16;23:13,14,15,
18,21;24:12;25:13;
27:11,13,24;28:20,
22;32:11,12,16;34:8,
12,13;35:9;37:3,5,8,
23;38:25;39:1,5,13;
40:22

**shot (1)**
14:10

**show (1)**

27:9

**showing (2)**
12:7;17:4

**sic (2)**
11:14;36:24

**sign (2)**
26:22;36:9

**signing (1)**
38:23

**simple (1)**
19:21

**simply (1)**
25:18

**single (4)**
13:12;16:8,10,13

**sit (3)**
17:6;27:19;34:21

**sixty (1)**
16:11

**slightly (1)**
21:13

**SMITH (1)**
7:2

**SNELLENBARGER (1)**
8:5

**solely (2)**
32:14;34:1

**solution (2)**
30:19;33:17

**sometime (1)**
21:2

**soon (3)**
10:13;40:15,23

**sooner (1)**
41:17

**Sorry (1)**
34:6

**sort (2)**
16:15;38:19

**sought (1)**
19:19

**South (1)**
6:4

**SOUTHPAW (1)**
8:12

**SPAEDER (1)**
7:10

**speak (2)**
34:4;39:7

**SPEAKER (5)**
27:22,25;28:2,13;
30:11

**specific (4)**
9:20;24:6;27:1;
40:18

**specifics (1)**
19:6

**stage (2)**
32:20;38:16

**standard (3)**
17:8,22;18:1

**standards (1)**
18:14

**standpoint (1)**
24:12

**stands (1)**
21:16

**start (2)**
21:2;40:23

**starting (2)**
28:10;41:17

**state (1)**
19:12

**statement (10)**
20:8,14,24;21:3,11,
15;23:3;40:2,22;41:8

**STEVEN (1)**
7:25

**still (2)**
20:9;22:4

**stop (2)**
32:12,12

**straightforward (1)**
9:17

**Street (4)**
2:22;4:21;5:4;7:12

**stuff (2)**
15:1,15;41:10

**submission (1)**
14:16

**submit (1)**
26:8

**submitted (2)**
26:6,10

**submitting (1)**
40:25

**sudden (1)**
39:16

**suggest (2)**
13:24;15:17

**suggested (1)**
16:12

**Suite (5)**
2:22;4:22;5:5;
6:21;7:13

**Sunday (1)**
25:24

**supersedes (1)**
20:16

**supposed (4)**
17:9,23;30:6,7

**sure (5)**
9:11;10:18;12:16;
17:5,15;28:17;38:17;
40:25;41:14

**suspended (1)**
40:10

**sympathetic (1)**
32:18

## T

**tag (1)**
10:11

**talk (3)**
27:19;34:21;39:1

talked (1)
    11:9
talking (3)
    10:20;21:2;38:16
targeted (1)
    27:1
task (1)
    20:23
TELEPHONICALLY (17)
    4:25;5:8,16,23,24;
    6:8,9,16,24;7:7,16,
    20,21,25;8:5,9,13
that' (1)
    16:13
that'd (2)
    31:25;32:10
that'll (1)
    11:18
THAU (1)
    8:13
theirs (1)
    37:25
therefore (1)
    13:22
There'll (2)
    38:9;40:19
there're (1)
    37:14
there've (2)
    16:17;25:12
Third (5)
    5:20;6:20;21:25;
    22:19,20
THOMAS (1)
    6:9
THORNBURG (1)
    4:19
though (1)
    21:16
thought (1)
    15:1
thousands (2)
    29:13,13
threatened (1)
    35:21
throughout (1)
    15:3
Thursday (2)
    15:7;18:25
till (1)
    38:1
times (1)
    36:2
timing (2)
    18:21;36:8
today (7)
    9:7;23:19;26:4,10;
    39:1,3;41:12
together (1)
    16:20
told (2)
    15:5;30:22
TOLLES (1)

6:2
tomorrow (1)
    39:9
tonight (1)
    39:7
took (1)
    16:20
topics (1)
    37:15
total (1)
    10:18
toward (1)
    25:21
Transcribed (1)
    2:20
transcript (1)
    24:13
transom (1)
    14:10
treat (1)
    17:16
tremendous (1)
    29:19
trial (7)
    20:24;21:10,25;
    22:3,21;23:21;25:22
trial' (1)
    22:19
trials (1)
    22:5
tried (12)
    14:1,24;15:3;
    19:17,17,25;20:8,19;
    22:14;23:7;24:8;41:9
trustee (1)
    27:8
try (10)
    15:2,2;19:18;
    20:10;22:8;23:11;
    29:12,17;30:24;
    38:23
trying (15)
    10:21;11:24;15:15,
    16;29:21;30:13,16,
    17,18;33:15,16;39:4,
    18;41:16,18
tweak (1)
    35:15
tweaking (1)
    14:18
TWEED (2)
    4:2;39:23
Two (4)
    13:10;19:16,21;
    22:5
TYLER (1)
    6:11
types (1)
    12:1

U

Uh-oh (1)

32:9
UMB (2)
    16:19;26:5
Um-hum (1)
    28:13
unauthorized (1)
    14:16
unclear (1)
    19:12
under (6)
    18:14;24:24;29:8;
    31:16;33:25;34:1
Understood (1)
    41:20
unfair (1)
    38:3
UNIDENTIFIED (5)
    27:22,25;28:2,13;
    30:11
Union (1)
    7:11
unique (1)
    12:2
unnecessary (1)
    37:2
unreasonable (1)
    14:2
up (7)
    12:11;16:4;20:23;
    28:15;30:18;33:16;
    37:16
upfront (1)
    12:15
USAA (1)
    4:20
use (1)
    38:19
used (1)
    12:1
UZZI (6)
    4:7;39:18,21,23,
    23;40:12
Uzzi's (1)
    39:13

V

validly (1)
    17:4
variety (1)
    11:19
various (1)
    15:6
vast (1)
    13:13
version (2)
    14:11,23
vi (2)
    29:3;32:16
view (5)
    20:21;21:9,10,23;
    22:23
views (1)

21:18
volume (3)
    35:17;38:16,17
voluminous (1)
    32:19

W

Wait (2)
    37:24,24
WALPER (1)
    6:9
Washington (1)
    7:14
way (18)
    10:12;17:13;21:8;
    24:10,19;26:1;27:16;
    30:13;31:17;32:2;
    33:22,23;34:17,18,
    22;37:17,21;38:19
WEBB (1)
    6:11
week (2)
    39:5;41:12
weeks (2)
    19:7,8
Weil (1)
    16:11
Wells (1)
    7:3
weren't (1)
    34:11
West (2)
    2:22;4:21
what's (7)
    14:21;17:8,22;
    18:4;19:22;37:7,15
whenever (1)
    25:4
Whereupon (1)
    41:23
WHITE (2)
    4:10;18:18
whole (1)
    27:15
who's (1)
    14:2
willing (2)
    15:18;33:17
Wilmington (1)
    4:23
wish (1)
    10:12
withhold (1)
    18:9
within (3)
    27:2;29:18;32:14
word (1)
    41:15
words (2)
    24:14;40:10
work (14)
    14:8,20;19:3;

20:14;29:4,5,15,23;
    32:6,22;39:2,3,11;
    41:13
working (2)
    18:24;40:23
world (1)
    17:6
worth (1)
    16:18
wrestling (1)
    36:19
written (5)
    26:3,14;33:25;
    34:16;38:9

X

X's (1)
    33:4

Y

yesterday (2)
    19:4;38:1
York (7)
    2:23;4:5,13;5:14,
    21;6:14,22

Z

ZLOTO (1)
    7:21
ZUCKERMAN (1)
    7:10

1

10 (1)
    26:11
1000 (2)
    4:21;7:13
10005 (1)
    4:5
10022 (3)
    5:14,21;6:22
10036 (2)
    4:13;6:14
10040 (1)
    2:23
105 (2)
    2:2;9:13
11:49 (1)
    41:23
1133 (1)
    6:13
1155 (1)
    4:12
12 (1)
    28:11
12-12020 (1)
    9:3
1300 (1)
    5:5

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 3, 2013

**140 (1)**
16:21
**1500 (1)**
4:22
**15222 (1)**
7:5
**15th (3)**
20:25;25:22;41:17
**170 (1)**
13:6
**1800 (1)**
7:12
**192nd (1)**
2:22
**19801 (1)**
4:23

---

**2**

**2 (2)**
28:7,10
**20036 (1)**
7:14
**20th (1)**
9:9
**2100 (1)**
6:21
**225 (1)**
7:4
**26 (1)**
29:8
**280 (1)**
5:4

---

**3**

**30th (1)**
40:4
**355 (1)**
6:4
**35th (1)**
6:5
**3a (1)**
11:12

---

**4**

**43215 (1)**
5:6
**4765 (1)**
9:9

---

**5**

**5 (3)**
39:1,2,3

---

**6**

**601 (1)**
5:13

---

**7**

**7 (1)**
28:11
**700 (1)**
2:22
**7026 (2)**
2:3;9:14

---

**9**

**900 (1)**
6:20
**90071 (1)**
6:6
**909 (1)**
5:20
**973406-2250 (1)**
2:24