**Hearing Date: September 11, 2013 at 10:00 a.m. (ET)**
**Reply Deadline: September 9, 2013 at 12:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Alexandra Steinberg Barrage

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**DEBTORS' REPLY TO OBJECTION OF SYNCORA GUARANTEE INC. TO DEBTORS' MOTION UNDER SECTION 365 OF THE BANKRUPTCY CODE TO ASSUME AND ASSIGN SERVICING-RELATED AGREEMENTS FOR TRUSTS INSURED BY SYNCORA GUARANTEE INC. TO OCWEN LOAN SERVICING, LLC**

dc-730787

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") submit this reply to the *Objection of Syncora Guarantee Inc. to Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing-Related Agreements for Trusts Insured by Syncora Guarantee Inc. to Ocwen Loan Servicing, LLC* [Dkt. No. 4870] (the "Objection"). In further support of the Debtors' Assignment Motion [Dkt. No. 4718],[1] the Debtors state as follows:

**PRELIMINARY STATEMENT**

1. Since this Court's approval of the Sale Order on November 21, 2012, the Debtors have resolved virtually all of the issues raised by parties who filed timely objections to the proposed assumption and assignment of executory contracts in connection with the Debtors' sale of its servicing platform. Pursuant to the Sale Procedures Order,[2] the Debtors, in consultation with counsel for the Creditors' Committee and Ocwen, have successfully negotiated numerous stipulations with contract counterparties—including other monoline insurers such as FGIC and MBIA—none of which required significant (if any) judicial intervention or formal discovery. These negotiations have provided a significant benefit to the Debtors' estates and to creditors, resulting in the Debtors' receipt of over $70 million in proceeds since the closing of the Debtors' sale of its servicing platform to Ocwen on February 15, 2013 (the "Closing Date").

2. With the exception of Ambac Assurance Corporation—with whom the Debtors are engaged in productive negotiations that they believe will be completed shortly—Syncora is the last monoline insurer with a remaining objection to the Sale Order and to Ocwen's

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Objection or the Assumption Motion, as applicable.

[2] *Sale Procedures Order*, [Dkt. No. 538.]

performance as successor servicer (collectively, the "Sale Issues"). Syncora is the only party in these cases that has requested entry of a bespoke sale order. (Obj. at ¶ 3). Syncora seeks to link the potential assumption and assignment of the Syncora Agreements to plan feasibility. (Obj. at ¶ 5). And while Syncora claims to have "deep apprehensions" regarding Ocwen's ability to perform (Obj. at ¶ 2), Syncora has yet to identify *any* instance of non-compliance or non-performance by Ocwen since the inception of Ocwen's subservicing of the Syncora Agreements on the Closing Date. The Debtors are unaware that any exists. Ocwen has demonstrated, and continues to demonstrate, adequate assurance of future performance.

3. Syncora and the Debtors have, since the Sale Hearing, attempted to resolve the Sale Issues. These discussions did not yield a workable resolution prior to the filing of the Assumption Motion. Nonetheless, since the filing of the Assumption Motion, the Debtors understand that Syncora and Ocwen have conferred on several occasions in the hopes of narrowing areas of disagreement, and that Syncora may request discovery of Ocwen in connection with those discussions. The Debtors are encouraged by these developments and supportive of continuing discussions between Ocwen and Syncora as a means of potentially resolving the Sale Issues. To that end, the parties are deferring litigation of the Sale Issues and the Debtors have separately proposed a joint scheduling order setting forth various discovery and briefing deadlines related to the Sale Issues, which stipulation remains subject to review by Syncora, Ocwen, and the Creditors' Committee.

4. Notwithstanding the adjournment and potential resolution of the Sale Issues, one issue requires prompt resolution by this Court: the Debtors' objection to Syncora's cure claim on the ground that Syncora filed no such claim until *after* the September 28, 2012 cure objection deadline (the "Cure Deadline") set by this Court. The Debtors reject any argument that Syncora

2

dc-730787

was not subject to the same Cure Deadline that applied to thousands of contract counterparties in these cases, including FGIC[3] and MBIA,[4] who each filed timely cure objections by a mutually agreed one-week extension of the Cure Deadline. Because of Syncora's failure to comply with this deadline, its cure claim should be limited to damages for breaches (if any) of the Syncora Agreements that occurred *after* the Cure Deadline.

5. Syncora was fully aware of the Cure Deadline, having received Notice of the Debtors' Intent to Assume and Assign the Syncora Agreements *and* having filed a detailed objection to the Debtors' Sale Motion on September 28, 2012, which notably omitted *any* objection to the Debtors' proposed Cure Amount.[5] Syncora's argument distorts the clear language of the Sale Procedures Order and accompanying Notice of Assumption and Assignment, which provided that "[i]f no objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and served . . . the Cure Amount set forth in the Assumption and Assignment Notice shall be binding upon all non-debtor parties . . ."[6]

6. Syncora's argument also ignores adherence to the Cure Deadline by the same monoline insurers it cites in its Objection. That the Debtors, several months after the Cure Deadline, decided not to assume and assign the Syncora Agreements as part of the Sale is irrelevant. Indeed, the Debtors' contracts with MBIA were similarly situated with Syncora's;

---

[3] *See Limited Objection of Financial Guaranty Insurance Company to the Debtors' Sale Motion and Assumption Notice* [Dkt. No. 1746] (noting mutual extension of cure objection deadline to October 5, 2012 and specifying alleged cure amount).

[4] *See Objection of MBIA Insurance Corporation to First Amended and Restated Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Dkt. No. 1736] (noting mutual extension of cure objection deadline to October 5, 2012 and specifying alleged cure amount).

[5] *See Syncora Guarantee Inc.'s Limited Objection to Debtors' Sale Motion* [Dkt. No. 1657].

[6] *See Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts and (II) Cure Amounts Related Thereto*, [Dkt. No. 924] at ¶ 10.

they too were removed from assumption and assignment prior to the Sale,[7] but were subsequently assumed and assigned to Ocwen via joint stipulation under the Ocwen APA. MBIA and FGIC complied with the Cure Deadline, as did many other contract counterparties in these cases. Syncora had the same obligation.

7. Syncora's failure to comply with the Cure Deadline is no mere formality. The Debtors engaged in months of good faith discussions with Syncora following the Closing Date, in an attempt to achieve a negotiated resolution of the disputed Sale Issues. Then, on September 3, 2013, over one year after Syncora received notice that the Debtors intended to assume and assign the Syncora Agreements, Syncora purported to amend its proof of claim, under which amendment it alleges it is owed approximately $216.6 million in claims relating to two of the transactions subject of the Syncora Agreements that the Debtors seek to assume and assign to Ocwen.[8] Had the Debtors been furnished with timely notice of Syncora's alleged $216.6 million cure claim in compliance with the Sale Procedures Order, the Debtors' attempts to resolve Syncora's Sale Issues over many months would have taken a different course. There would have been little point in working towards a resolution of the Sale Issues if the Debtors believed they would potentially be saddled with hundreds of millions in cure claims.

8. For these reasons, the Debtors seek to adjourn the Sale Issues until such time as (i) this Court has ruled on whether Syncora's pre-Cure Deadline claims are barred; and (ii) Syncora, Ocwen, and the Debtors have had a further opportunity to attempt to resolve the

---

[7] *See Debtors' Omnibus Reply to Objections to Debtors' Sale Motion* [Dkt. No. 2135] (noting MBIA agreements would be removed from final schedule).

[8] *See Addendum to Syncora Guarantee Inc.'s Amended Proof of Claim* and accompanying *Declaration of Randall R. Rainer in Support of Response of Syncora Guarantee Inc. to Debtors' Objection to Proof of Claim #2781 of Syncora Guarantee Inc.* [Dkt. No. 4926]. Approximately $17.4 million in alleged damages relate to the BSSLT 2007-SV1 transaction, and approximately $199 million in alleged damages relate to the STACS 2007-1 transaction. No damages have been alleged in connection with the GreenPoint Mortgage Funding Trust 2006-HE1. *See id.*, n. 1 ("Syncora is not asserting a claim against any Debtors with respect to GreenPoint Mortgage Funding Trust 2006-HE1 at this time.").

4

Sale Issues. In the interim, the Debtors request that this Court rule that Syncora's cure claim is limited to damages for breaches, if any, of the Syncora Agreements that occurred *after* September 28, 2012 that are either agreed to by the Debtors or determined by this Court.

## REPLY

**TO THE EXTENT SYNCORA HAS ANY CLAIM UNDER THE SYNCORA AGREEMENTS, IT IS LIMITED TO PROVEN DAMAGES STEMMING FROM ANY BREACHES OCCURRING AFTER THE CURE DEADLINE.**

9.   Syncora's failure to comply with the Cure Deadline renders any claim that may exist under the Syncora Agreements limited to proven damages stemming from breaches occurring after the Cure Deadline. Any cure claims accruing from alleged breaches occurring prior to the Cure Deadline are barred and untimely, consistent with the clear language of the Sale Procedures Order and related Assumption and Assignment Notice.

   **1.   The Cure Deadline Clearly Applied to All Executory Contracts the Debtors Sought to Assume and Assign, Including the Syncora Agreements.**

10.  The Sale Procedures Order, and the deadlines set forth therein, applied to thousands of counterparties to executory contracts, and Syncora was no exception. This order, among other things, established procedures for assuming and assigning *all* executory contracts and unexpired leases (as defined in the underlying sale procedures motion, the "Assumed Contracts"), including procedures for fixing cure amounts to be paid under section 365 of the Bankruptcy Code, and determining whether alleged defaults (if any) exist.[9] Annexed to the Sale Procedures Order was a copy of the Assumption and Assignment Notice, which this Court found to be "reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and assignment of their respective executory contracts or

---

[9] *See Sale Procedures Order*, [Dkt. No. 538], at 2.

Leases, any Cure amounts relating thereto, and the Assumption and Assignment Procedures."[10] The Assumption and Assignment Notice was "sufficient to provide effective notice of the assumption and assignment of the Assumed Contracts and Cure Amounts to all non-debtor parties to the Assumed Contracts."[11]

11.     There were two applicable deadlines that applied to Syncora under the Sale Procedures Order: the Cure Deadline, and the deadline for filing an Assignment Objection, the latter of which Syncora complied with.  Paragraph 25 of the Sale Procedures Order stated: "The deadline for objecting to approval of any Cure Amounts (a "Cure Objection") shall be September 28, 2012, at 5:00 p.m. (Eastern Time)."  Objections to assumption of an Assumed Contract (an "Assignment Objection") were also required to be filed by September 28, 2012.[12]  If timely objections were raised, the Sale Procedures Order provided that the "Necessary Parties," including the Debtors and the Creditors' Committee, could "meet and confer in good faith to attempt to resolve any such objection without Court intervention . . . [including entry] into a written stipulation, which stipulation is not required to be filed with or approved by the court . . ."[13]  "If no objection to the Cure Amount or the proposed assumption and assignment of an Assumed Contract is timely filed and served . . . the Cure Amount set forth in the Assumption and Assignment Notice shall be binding upon all non-debtor parties . . ."[14]

---

[10] *Id.* at ¶ P.

[11] *Id.* at ¶ 19; *see also* Assumption and Assignment Notice at ¶ 8.

[12] *Id.*

[13] *Id.* at ¶ 27; *see also* Assumption and Assignment Notice at ¶ 9.

[14] *See Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts and (II) Cure Amounts Related Thereto*, [Dkt. No. 924] at ¶ 10.

12.     These deadlines applied to thousands of contract counterparties, including FGIC[15] and MBIA,[16] who each filed timely cure objections by a mutually agreed one-week extension of the Cure Deadline. Nevertheless, Syncora maintains that "because the Syncora-Related Servicing Agreements were . . . not "Assumed Contracts" . . . the deadline in the sale procedures order does not apply to them." (Obj. at ¶ 24.) This argument fails because Syncora, having missed the Cure Deadline, should not be permitted to retroactively argue that such deadline never applied, especially when Syncora filed a timely Assignment Objection, in accordance with the deadline set forth in the Sale Procedures Order and Assumption and Assignment Notice. In addition, MBIA complied with the Cure Deadline, and its agreements were also, contemporaneous with the removal of Syncora's agreements, removed from assumption and assignment prior to the Sale.[17]

13.     Under the relevant asset purchase agreement, the Purchaser of the Debtors' servicing platform maintained the ability to remove "any Assumed Contract from the relevant Schedule until two business days prior to the Closing Date, in which case the contract or lease shall cease to be an Assumed Contract."[18] On November 12, 2012, over one month *after* the Cure Deadline, the Debtors notified Syncora that the Syncora Agreements would be removed from the list of Assumed Contracts.[19] While at this point in time, the Syncora Agreements

---

[15] *See Limited Objection of Financial Guaranty Insurance Company to the Debtors' Sale Motion and Assumption Notice* [Dkt. No. 1746] (noting mutual extension of cure objection deadline to October 5, 2012 and specifying alleged cure amount).

[16] *See Objection of MBIA Insurance Corporation to First Amended and Restated Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Dkt. No. 1736] (noting mutual extension of cure objection deadline to October 5, 2012 and specifying alleged cure amount).

[17] *See Debtors' Omnibus Reply to Objections to Debtors' Sale Motion* [Dkt. No. 2135] (noting MBIA agreements would be removed from final schedule).

[18] *Id.* ¶ 22.

[19] *See Debtors' Omnibus Reply to Objections to Debtors' Sale Motion* [Dkt. No. 2135] (noting Syncora Agreements would be removed from final schedule).

temporarily ceased to be Assumed Contracts, Syncora was not somehow excepted from adhering to the Cure Deadline after the fact, nor did the Debtors waive the right to try and resolve the Sale Issues, or treat the Syncora Agreements as Assumed Contracts under the Sale Procedures Order and Ocwen APA.  By Syncora's strained logic, the Assignment Objection would, retroactively, be similarly inapplicable, yet Syncora complied with the Assignment Objection deadline through the filing of its twenty-two page limited objection, which notably omitted *any* objection to the Debtors' proposed Cure Amount.[20]  Syncora cannot have it both ways.  Both deadlines contained in the Sale Procedures Order applied to the Syncora Agreements, regardless of whether the Syncora Agreements, over a month after the deadline, temporarily ceased to be Assumed Contracts.

14.    Syncora makes much of the Debtors' subsequent filing of the Assumption Motion and the omission of Syncora's earlier-filed objection from various hearing agendas (Obj. at ¶ 40). These omissions, however, in no respect represented the Debtors' "abandon[ment]" of the their request to assume and assign the Syncora Agreements under the Sale Motion, particularly where, as Syncora confirms, "[a]fter the Sale hearing, Syncora worked with the Debtors to help them find a way to assign the Syncora-Related Servicing Agreements . . ." (Obj. at ¶ 11).  The Debtors have never waived the potential application of the Sale Order to the Syncora Agreements.  Furthermore, Syncora was aware of Amendment 3 to the Ocwen APA, dated January 31, 2013 ("Amendment 3"), which recognized that the complete resolution of the assignment of servicing agreements subject to a sale objection (such as the Syncora Agreements) was unlikely to occur by the Closing Date.  Amendment 3 provided that such agreements would be temporarily excluded from the Sale and would be assigned to Ocwen under the terms of the

---

[20] *See Syncora Guarantee Inc.'s Limited Objection to Debtors' Sale Motion* [Dkt. No. 1657].

Ocwen APA upon the resolution of the applicable sale objection, with Ocwen subservicing any underlying loans in the interim.

15. It has always been the Debtors' intention to resolve Syncora's Sale Issues and maximize value for the Debtors' estates and creditors. Syncora's claim that the Debtors abandoned their efforts to assume and assign the Syncora Agreements under the Sale Motion is entirely unfounded.

### 2. After Months of Good Faith Negotiations, Syncora Should Not Be Permitted to Assert Hundreds of Millions in Cure Claims.

16. On July 26, 2012, the Debtors noticed the proposed assumption and assignment of the Syncora Agreements through the filing of their *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* [Dkt. No. 924], which was amended and restated on September 18, 2012 [Dkt. No. 1484]. Over one year later, after being served with the *Debtors' Objection to Proof of Claim #2781 of Syncora Guarantee Inc*. [Dkt. No. 4632] (the "Claim Objection"), Syncora last week purported to amend its proof of claim, asserting new claims under which allegedly it is owed *approximately $300 million* by the Debtors.[21] Syncora's September 3, 2013 amended proof of claim asserts approximately $216.6 million in claims relating to two of the three transactions subject of the Syncora Agreements that the Debtors seek to assume and assign to Ocwen, as well as an additional approximate $83.4 million in claims unrelated to the Syncora Agreements.[22]

---

[21] *See Addendum to Syncora Guarantee Inc.'s Amended Proof of Claim* and accompanying *Declaration of Randall R. Rainer in Support of Response of Syncora Guarantee Inc. to Debtors' Objection to Proof of Claim #2781 of Syncora Guarantee Inc.* [Dkt. No. 4926], at 6, 10.

[22] *Id*. Approximately $17.4 million in alleged damages relate to the BSSLT 2007-SV1 transaction, and approximately $199 million in alleged damages relate to the STACS 2007-1 transaction. No damages have been

9

dc-730787

17. The Debtors object to Syncora's amended proofs of claim on a host of procedural and substantive grounds, which will be set forth in their reply due September 19, 2013. For purposes of the Assumption Motion, however, the key point is that this Court need not, and should not, reach the merits of the $216.6 million of new claims that arise out of the Syncora Agreements, except to the limited extent, if any, that Syncora can prove to this Court that such claims arose after the Cure Deadline. Syncora's failure to comply with the Cure Deadline bars it from asserting any claims that arose prior to that deadline.

18. Enforcement of the Cure Deadline is particularly appropriate in light of the significant efforts expended by the Debtors in seeking to resolve Syncora's Sale Issues during the many months since that deadline. Had the Debtors been furnished with timely notice of Syncora's alleged $216.6 million cure claim in compliance with the Sale Procedures Order, the Debtors attempts to resolve Syncora's Sale Issues would have taken a different course. It would have been futile to work towards a resolution of the Sale Issues if the Debtors believed they would potentially be exposed to hundreds of millions in cure claims.

19. For all these reasons, this Court should strictly enforce the Cure Deadline.

---

alleged in connection with the GreenPoint Mortgage Funding Trust 2006-HE1. *See id.*, n. 1 ("Syncora is not asserting a claim against any Debtors with respect to GreenPoint Mortgage Funding Trust 2006-HE1 at this time.").

dc-730787

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order: (a) limiting Syncora's cure claim to damages for breaches, if any, of the Syncora Agreements that occurred *after* the Cure Deadline, and ruling that only damages arising from any such breaches would need to be cured by the Debtors prior to any assumption and assignment of the Syncora Agreements, and (b) granting the Debtors such other and further relief as this Court may deem proper.

Dated: September 9, 2013  
       New York, New York

/s/ Gary S. Lee  
Gary S. Lee  
Norman S. Rosenbaum

MORRISON & FOERSTER LLP  
1290 Avenue of the Americas  
New York, New York 10104  
Telephone: (212) 468-8000  
Facsimile: (212) 468-7900

Alexandra Steinberg Barrage  
2000 Pennsylvania Avenue, NW  
Washington, D.C. 20006  
Telephone: (202) 887-1552  
Facsimile: (202) 785-7525

*Counsel for the Debtors and Debtors in Possession*

11

dc-730787