**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
900 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 752-8000
Fax: (646) 563-7923
John H. Drucker, Esq.

Hearing Date: September 11, 2013 at 10:00 a.m.
Related Pleadings: Dkt. Nos.:4326;4542 and 4869

*Counsel for FTI Consulting, Inc.,*
*Financial Advisor for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------
In re:                                          )   Case No. 12-12020 (MG)
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )   Chapter 11
                                                )
                    Debtors.                    )   Jointly Administered
                                                )
------------------------------------------------

**DECLARATION OF WILLIAM J. NOLAN ON BEHALF OF FTI
CONSULTING, INC IN REPLY TO OMNIBUS OBJECTION OF
THE UNITED STATES TRUSTEE REGARDING FEE APPLICATIONS FOR
THIRD INTERIM AWARDS OF COMPENSATION AND REIMBURSEMENT
OF OUT-OF-POCKET EXPENSES AND IN SUPPORT OF THIRD
INTERIM FEE APPLICATION OF FTI CONSULTING, INC.**

**I, William J. Nolan, being duly sworn, hereby depose and say:**

I am a Senior Managing Director with FTI Consulting, Inc ("FTI"), the financial advisor to the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"). I am submitting this declaration on behalf of FTI in reply (the "Reply") to the *Omnibus Objection Of The United States Trustee* (the "UST") *Regarding Fee Applications For Third Interim Awards Of Compensation And Reimbursement Of Out-Of-Pocket Expenses*, dated August 28, 2013 [Docket No. 4869] (the "UST Objection"), and in further support of the *Third Interim Application Of FTI Consulting, Inc. As Financial Advisors For The Debtors For Compensation And Reimbursement Of Expenses Incurred For The Period January 1, 2012*

40000/0527-9831124v6

*Through April 30, 2013* [Docket No. 4542] (the "Application")[1], and respectfully state as follows. Except as otherwise noted, I have personal knowledge of the matters set forth herein[2]:

1. In the UST Objection, the UST identifies six issues with respect to FTI:

(i) <u>transitory timekeeper time</u> ( FTI timekeepers billing fewer than 5 hours of time during the Application Period)- $8,738.50;

(ii) <u>fee application preparation</u> (time estimated and alleged by the UST to have been expended in connection with the review and revision of time records)- $121,826.25;

(iii) <u>redacted time entries</u> (inability of UST to be able to review certain time records filed in redacted form as requested by counsel for the Debtors)-47.9 hours, totaling $36,444.50;

(iv) <u>travel and lodging expenses</u> (expenses asserted by the UST to be without adequate explanation of business purpose or justification)- for travel and airfare -$67,882.13, and $94,453.89 for lodging;

(v) <u>duplicate expense</u>-$322.66

(vi) <u>travel expenses from the prior fee period</u>--$19,033.26

2. FTI has been in discussions with the UST to address its concerns and FTI is hopeful that it will be able to resolve those concerns prior to the hearing on the interim fee applications. To the extent not resolved, FTI respectfully submits that the UST Objection should be overruled for the reasons discussed below:

3. <u>Transitory Timekeepers.</u>   The UST objected to $8,738.50 in fees with respect to time incurred by nine FTI professionals who billed less than 5 hours each during the Application

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Objection or the Application, as applicable.
[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

40000/0527-9831124v6

Period. FTI respectfully submits that, with one possible exception, the time for such individuals should be compensable and not treated as " transitory." Such professionals billed in prior fee application periods, or were otherwise involved in value-adding roles to the Debtors in the form of specialized knowledge of various matters (i.e. tax, forensic email searches, etc.), or possess specific knowledge of the Debtor and/or the industry that made it more efficient and beneficial to utilize their services rather than another FTI professional who might otherwise be providing services on a more regular basis but may not have the specific knowledge, experience or skill sets as the person who provided such services and was able to do so in less than 5 hours.

Proposed resolution: Except for one individual who arguably may not fit the criteria set forth above, for the reasons set forth above the fees incurred by the remaining eight time keepers should be compensable and not treated as being "transitory". Although the time expended by such individual was necessary and of benefit to the Debtors and their estates, FTI agrees to eliminate such persons time charges, which would reduce the amount sought with respect to this category to $8,072.50. A summary of the subject individuals and of the explanation of why such individuals' services should not be considered as being "transitory" and should be compensable, is attached hereto as Exhibit A.

4.   Review and Revision of Time Records. With respect to time expended with regard to the fee application process, the UST objects to time expended in connection with reviewing, revising and verifying time and expense records and entries. For this objection the UST proposes a $121,826.25 reduction. FTI has several observations about this portion of the UST Objection:

a)   The $121,826.25 reduction proposed by the UST is an arbitrary estimation by the UST and constitutes a 50% reduction for this task code category 24- fee application preparation, and

does not appear to have taken into consideration that the amounts sought by FTI in this category has already been reduced by $43,000.

b)      FTI's fees requested for fee application preparation are 3.5%[3] of total fees for the period, which is in the range that FTI understands to be generally acceptable in this district for fee application preparation. This a large and complex case and FTI's role has been as varied as it has been substantial. FTI takes its responsibilities with respect to the preparation of its fee application seriously and has devoted the time and resources that it believes were necessary and appropriate to prepare and file its application.

c)      As financial advisors, FTI does not generally provide detailed time description invoices for non-bankruptcy matters and FTI does not have an automated time entry and recording process. For bankruptcy matters, on a monthly basis, time and expense detail from each FTI professional is compiled, reviewed and summarized to conform to standard guidelines for fee applications. Such detail must be reviewed each month for consistency and conformity with UST guidelines, and must undergo additional review by FTI's senior management to ensure team leadership is familiar with fees requested before the fee statement or fee application is signed.

Proposed Resolution: As set forth above, prior to the submission of its application, and taking into account the Court and the UST's previous guidance with respect to time expended in connection with the review and revisions of time and expense records, FTI reduced the time charges for this category by approximately $43,000. In addition, upon receipt of the UST Objection, FTI further reviewed the time records supporting this category and determined that fees related specifically to reviewing and editing detailed time description is in the range of $25,000 to $30,000, in addition to other entries that could be considered more administrative,

---

[3] The UST incorrectly calculated the percentage for this category as being 4.4%. It is respectfully submitted that the correct calculation is 3.5%, being $240,652.50 (fee application fees, less $43,000 reduction) as a percentage of $6,879,821.25 of total fees requested per page 67 of the application (Exhibit C).

4

which is how FTI arrived at the voluntary reduction of $43,000. After further review, additional time descriptions could be interpreted as having been expended in reviewing and revising detailed time, in the range of an additional $20,000 to $30,000. To resolve this portion of the UST Objection, FTI proposes an additional reduction of $32,000 for a total reduction for this task code of $75,000 which would bring the percentage of time for this task code down from 3.5% to 3%.

5.  Redacted Time Entries. With respect to redacted time entries, the UST has requested unredacted detail regarding 47.9 hours, totaling $36,444.50 billed by FTI for which, at the request of the Debtors' counsel, the time records for these entries were redacted for purposes of a public filing.

Proposed Resolution - the unredacted time entries have been provided to the US Trustee and to the Court. It is respectfully submitted that there should be no reduction for such time.

6.  Travel Without Explanation of Business Purpose. With respect to expenses incurred relating to traveling, the UST objected to $67,882.13 for travel and airfare and $94,453.89 for lodging on the basis that the expense descriptions in the FTI Application and timekeeper entries failed to explain the reason or justification for the travel. In response, FTI notes as follows:

(a) FTI believes that these expenses are reasonable and necessary, and fall into two general categories:

i)   Travel between FTI professionals' home site offices and client sites in Fort Washington, PA or Minneapolis, MN. As part of FTI's role as the Debtors' financial advisors, FTI professionals routinely travel to the Debtors' offices in order to coordinate work streams, work directly with Debtor personnel and meet with management. FTI believes this is a standard

practice for a financial advisor and is an integral part of FTI's retention, and as such, should be allowed; and

ii)    Travel between FTI senior professionals' home site offices and FTI's New York offices. This category generally includes expense entries from William Nolan (Senior Managing Director), Mark Renzi (Senior Managing Director), and Mike Talarico (Managing Director). These professionals have significant institutional knowledge and the undersigned and Mr. Renzi and have years of experience in the financial industry. These professionals have been involved with the Debtors since either well before filing, in the case of the undersigned since 2008, or immediately following the filing date. In view of the critical nature of the issues facing the Debtors on numerous issues both before and after the chapter 11 filing dates, it would not have been appropriate or in the best interest of the Debtors or their estates to change the FTI leadership assignments for these cases merely because the chapter 11 cases were filed in New York. Based upon their expertise, and particular experience with the Debtors obtained prior to the filing dates, they were and remain in a unique position to understand, evaluate and to participate in the process in connection with many of the financial issues that had to be addressed in the chapter 11 cases and leading up to the Debtors' ongoing Plan negotiations. Their travel to New York was to participate in meetings, including meeting with the mediator appointed in this case, the examiner appointed in this case, the unsecured creditors' committee and the Debtors management that is based in New York, and meetings with counsel; to attend Court hearings; and to directly manage the FTI engagement team. The undersigned and Mr. Renzi are the senior members of FTI who have the most subject matter expertise with respect to financial institution restructuring and as such are uniquely equipped to deal with the specific issues facing the Debtors. Likewise, Mr. Talarico has been directly involved in the oversight of the Debtors'

40000/0527-9831124v6

claims reconciliation process from the outset, and as such has attended claims-focused Court hearings and in-person meetings with the Creditors' Committee and their advisors. The undersigned respectfully submits that it is ordinary practice for financial advisors in non bankruptcy engagements to travel from their home base locations to the main site in which a client's affairs are being administered, and to charge for and to be compensated for those services and related travel and lodging expenses. see, *In re Drexel Burnham Lambert Group Inc.*, 133 B.R. 13, 19 (Bankr. S.D.N.Y. 1991) ("... the policy behind, and intention of § 330(a) is incontrovertible. The practice of Bankruptcy Courts setting 'appropriate' rates, or reducing rates otherwise accepted by the market for comparable services because of a notion of 'economy of the estate,' has been specifically rejected by Congress and abandoned in the statutory scheme.") A summary of airfare and lodging expenditures by destination city is broken out below for reference:

| All FTI Professionals | Airfare | Lodging | Total |
|---|---|---|---|
| Fort Washington, PA |  | $55,664.46 | $55,664.46 |
| Philadelphia, PA | $9,947.93 | $2,193.74 | $12,141.67 |
| New York City, NY | $26,595.10 | $26,893.23 | $53,488.33 |
| Minneapolis, MN | $29,125.68 | $9,504.96 | $38,630.64 |
| Other | $2,213.42 | $197.50 | $2,410.92 |
| **Total** | **$67,882.13** | **$94,453.89** | **$162,336.02** |

(b) With respect to the business purposes for the travel in question, FTI respectfully submits that said justification was provided in the form of detailed time entries for each respective period in which the expense was incurred.

Proposed Resolution: FTI has provided the UST with additional information and detail

7

to support the basis and justification for the travel and lodging expenses questioned by the UST, including the information attached hereto as Exhibit "B". It is FTI's understanding that other than as follows, the UST Objection with respect to the foregoing has been resolved by the information provided to the UST. FTI understands that the remaining objection by the UST for this category is with respect to the travel and lodging expenses associated with services rendered by FTI personnel, including the undersigned, for the purpose of traveling to and from New York from their home base locations outside of New York (and associated lodging). Based upon a detailed review of its records with respect to this portion of the UST Objection (travel to and from New York from home bases outside of New York, and associated lodging), FTI believes the total amount remaining at issue to be $53,488.33 (26,595.10 for airfare and $26,893.23 for lodging). The undersigned respectfully submits that the amount at issue is relatively *di minimis* in comparison to the overall fees and expenses incurred in theses cases generally, and as a percentage of the fees and expenses incurred specifically by FTI. Accordingly, it is further respectfully submitted that the benefits of the Debtors being able to utilize those FTI personnel best suited for the services provided, notwithstanding that they were based outside of the local in which the chapter 11 cases were filed, outweighs the relatively small amount of additional expenses charged to the Debtors for the out of pocket travel and lodging expenses incurred.

For the reasons set forth above, FTI respectfully submits that this portion of the UST Objection should be overruled.

7.   <u>Duplicate Expenses</u>.  With respect to duplicate expenses, the UST objected to $322.26 in expenses.

<u>Proposed Resolution:</u>   FTI agrees to the reduction for this expense item of $322.26.

8.   <u>Expenses for Travel Prior to Fee Period.</u>  With respect to $19,033.26 in travel

8

expenses incurred prior to the fee period, the UST has requested explanation of why the expenses were not billed during the period in which they were incurred. Significant effort is made to ensure timely billing of expenses, however, there are certain exceptions which can cause expenses to be submitted for prior time periods including, expenses for a professional being held by FTI's expense system until all proper documentation related to all expenses is submitted, research into the reason for certain travel expenses to ensure they were in compliance with all applicable rules and guidelines, requests for additional details for certain expenses to asses applicability of expenses, and timing of submission of expenses by professionals. As such, FTI believes the approval of such expenses is reasonable.

Proposed Resolution:   FTI has provided additional information requested by the UST and intends to provide additional supporting information. FTI respectfully submits that such expenses were properly and reasonably incurred in the furtherance of the services that were also reasonably and properly performed by FTI, that it has provided an appropriate explanation why such expense items were not reflected in prior applications, and as such should be approved. Nevertheless, FTI agrees to a voluntary $500 reduction for this category.

## SUMMARY OF PROPOSED COMPROMISE

(i) transitory timekeeper time – reduction in fee amounts sought by $666

(ii) fee application preparation- In addition to prior $43,000 voluntary reduction reflected in fee application, additional reduction in fee amounts sought by $32,000, for atotal of $75,000.

(iii) redacted time entries ( 47.9 hours)- unredacted time records provided to UST and to the Court;

(iv) travel and lodging expenses---No reduction except that $53,488.33 ($26,595.10 for airfare and $26,893.23 for lodging) associated with travel to and from New York and

9

associated lodging expenses, remains in dispute.

(v) <u>duplicate expense</u>-reduction for this expense charge of $322.66

(vi) <u>travel expenses from the prior fee periods</u>.  Additional information requested by UST provided.  Reduction for this expense charge of $500.00

## CONCLUSION

9. FTI believes that its requested compensation and expenses, as adjusted in accordance with the foregoing and discussions with the UST, are reasonable and appropriate. The compromises proposed or agreed to by FTI are in an effort to obviate the expense and delay that would necessarily be attendant to the dispute regarding the fees and expenses that are the subject of the UST Objection.

10. As discussed above, FTI proposes aggregate reductions in fees of $32,000 (in addition to the prior voluntary reduction of $43,000) from the total amount sought of $5,501,118.50 plus $1,614,064.75 in Rollover Amount, and aggregate reductions in expenses of $822.66 from the total expense reimbursement amount sought of $227,254.30 (with such voluntary reductions of fees and expenses hereinafter referred to as the "Voluntary Reduction Amounts"). The Voluntary Reduction Amounts as concerns fees (and any other amounts as concerns fees as the Court may determine should not be approved) should be applied against and deducted solely from the Rollover Amount applicable to the Application Period, with any reduction in expenses to be applied against and deducted solely from the non Walter Project Services expenses reimbursement amount sought.

11. Accordingly, except for the Voluntary Reduction Amounts, it is respectfully submitted that to the extent there are any outstanding UST Objections, they should be overruled for the reasons set forth herein or as may otherwise be addressed at the hearing on the interim applications.

40000/0527-9831124v6

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of September 2013.

_____
William J. Nolan