Hearing Date: September 11, 2013 at 10:00 a.m.
Related Pleadings: 4326, 4562, and 4869

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| RESIDENTIAL CAPITAL, LLC, *et al.* | Case No. 12-12020 (MG) |
| Debtors. | Jointly Administered |

**DECLARATION OF MELISSA KIBLER KNOLL ON BEHALF
OF MESIROW FINANCIAL CONSULTING IN RESPONSE TO THE
OMNIBUS OBJECTION OF THE UNITED STATES TRUSTEE
REGARDING FEE APPLICATIONS FOR
THIRD INTERIM AWARDS OF COMPENSATION AND
REIMBURSEMENT OF OUT-OF-POCKET EXPENSES**

**I, Melissa Kibler Knoll, being duly sworn, hereby depose and say:**

1.      I am a Senior Managing Director of Mesirow Financial Consulting, LLC ("MFC" or "Mesirow"), the financial advisor to Arthur J. Gonzalez, the duly appointed examiner in the above-captioned cases (the "Examiner"). On August 7, 2013, MFC filed its *Third Interim Fee Application of Mesirow Financial Consulting, LLC for Compensation and Reimbursement of Expenses as Financial Advisor to the Examiner for the Period January 1, 2013 Through April 30, 2013* [D.E. 4562](the "Third Interim Fee Application") seeking allowance of fees in the amount of $23,510,325 and reimbursement of out-of-pocket expenses in the amount of $299,682 for the period January 1, 2013 through April 30, 2013 (the "Third Interim Fee Period"). The United States Trustee ("UST") filed its *Omnibus Objection of the United States Trustee Regarding Fee Applications for Third Interim Awards of Compensation and Reimbursement of Out-of-Pocket Expenses* on August 28, 2013 [D.E. 4869](the "UST Objection"), and objected to

1

the allowance of $101,968.50 in fees and $298,057 in expenses requested by MFC.[1] I am submitting this declaration in further support of the Third Interim Fee Application and in response to the UST Objection. Except as otherwise noted, I have personal knowledge of the matters set forth herein.[2]

2. MFC has been in contact with the UST through her trial counsel and is hopeful that this matter can be resolved prior to the hearing on the Third Interim Fee Application. In the event that such resolution is not reached, MFC respectfully submits that the UST Objection should be overruled, except as provided herein, as it applies to MFC for the reasons set forth below:

## I. FEES

**A. Review and Editing of Billing Invoices**

*Mesirow seeks compensation of $15,756[3] under the project category "Fee/Retention Application." Of this amount, the United States Trustee objects to $101,977.00 because the time records indicate that such work was expended relating to reviewing, revising and/or editing the billing records during the interim period. A copy of the time entries annotated with an "R" are attached as Exhibit O (the exhibit has not been filed online because certain of the time entries may have been redacted, but copies have been provided to the Court and Mesirow). As discussed above, these services are overheard [sic] and thus are not compensable by the estate. See CCT, 2010 WL 3386947, at \*9 (reviewing and editing time records is not compensable). Therefore, the United States Trustee requests that the Court reduce Mesirow's compensation in this project category by $101,968.50.[4]*

3. MFC submits that the amount billed in connection with the preparation of fee statements and fee applications is well within a reasonable range of fees in light of the facts and circumstances of this case. MFC's fees for this category are 0.86% of its total fees for the Third

---

[1] UST Objection at 53.
[2] Certain of the matters discussed herein relate to analysis and personal knowledge of other professionals at MFC. I have relied on the information these professionals provided to me.
[3] This amount was referenced in the UST Objection. However, MFC's fee application for the Third Interim Fee Period includes $198,775 for Fee/Retention Application-related fees.
[4] UST Objection at 53. MFC notes that the amount of the UST's recommended reduction ($101,968.50) differs from the amount of the UST's objection ($101,977.00).

2

Interim Fee Period, well below the 3% to 5% range referenced in <u>In re Mesa Air Group, Inc</u>., 449 B.R. 441 (Bankr. S.D.N.Y. 2011).

4.    Further, the UST cites <u>In re Computer Learning Centers, Inc.</u>, 285 B.R. 191, 219-20 (Bankr. E.D. Va. 2002)(citations omitted) to support the premise that time spent under this project category on the review and editing of time records should not be compensable. However, the assertions in that case are distinguishable from MFC's billing practices and procedures. MFC does not regularly prepare detailed time records for non-bankruptcy clients; thus, additional effort is required to complete, compile, reconcile and review the time detail for a bankruptcy client. As a general matter, MFC does charge its bankruptcy and non-bankruptcy clients for preparing bills, particularly where maintenance of detailed time records is required. As such, these tasks are not appropriately considered part of MFC's overhead.

5.    Additionally, MFC voluntarily excluded fees incurred in connection with responding to the objection filed by the UST to MFC's Second Interim Fee Application from its Third Interim Fee Application.

**B.    Identical Entries for Calls and Meetings**
*Across several project categories, it appears that Mesirow personnel use a single identical description and time duration for each participant of a call or meeting. These identical descriptions raise the following questions: (i) whether each timekeeper personally enters the identical time entry description and duration or whether staff personnel expand upon the original time entry with appropriate changes; and (ii) if the identical entry is not personally entered by the timekeeper, what procedure exists to verify whether a participant has not stayed for the entire duration of a call or a meeting? By way of example, the chart [included in the UST Objection] depicts a typical duplicate entry. The United States Trustee requests explanation of the manner in which time entries for calls and meetings attended by multiple timekeepers are recorded and reserves the right to request changes to the procedure or adjustments if appropriate.[5]*

6.    MFC provided explanations to the UST of the manner in which time entries for calls and meetings attended by multiple timekeepers are recorded, as well as examples of the

---

[5] UST Objection at 54.

recording of partial attendance at calls and meetings. In summary, all MFC professionals enter original, contemporaneous time descriptions. Billing paraprofessionals subsequently reconcile and expand descriptions of calls or meetings to provide consistent, comprehensive descriptions of the participants and topics addressed. Professionals are instructed as a general practice to specify in their time descriptions if attending only part of a meeting or call. If a meaningful differential in the time recorded by call or meeting participants is identified, the billing paraprofessional inquires with the timekeepers to assist in reconciling. Based on the original time descriptions and timekeeper feedback, billing paraprofessionals may reallocate time between entries but may not change the total time billed.[6]

## II.    EXPENSES

**A.    Meal and Ground Transportation Expenses – Documentation**
*Mesirow seeks expense reimbursement for meals in the amount of $24,170.00 and for ground transportation in the amount of $42,940.00. Mesirow has not complied with the requirements of General Order M-447(F)(3)(ii) with respect to meal expenses and established that the charges were for meals incurred after 8:00 p.m. or before 8:00 p.m. and followed by one and one half hours of work. Mesirow has also not complied with General Order M-447(F)(3) regarding overtime ground transportation by establishing that the charges were incurred after 8:00 p.m.[7]*

7.    MFC communicated the requirements of General Order M-447 to all staff when assigned to this matter. To address the UST's concerns, MFC undertook a process to substantiate compliance with these requirements, the documentation and results of which have been provided to the UST.

8.    MFC separated expenses into categories including the following: overtime weekday; overtime weekend/holiday; out-of-town; and other. MFC reviewed all overtime weekday meal and transportation receipts and recorded the time noted thereon. For overtime weekday meals, MFC requested that its professionals verify that they were working on the

---

[6] For example, time may be reallocated from an "attend meeting" entry to a "prepare for meeting" entry.
[7] UST Objection at 55-56.

4

ResCap matter after 8:00 p.m. and, if dining before 8:00 p.m., that they worked in the office for at least 1.5 hours after dining. If this information could not be verified, MFC reduced the expense from its fee application as noted herein. For overtime transportation, if no time was listed on the receipt to verify that the expense was incurred after 8:00 p.m., MFC requested that each professional confirm the time he or she left the office. In any instance where MFC could not verify that the overtime transportation expense was incurred after 8:00 p.m., MFC reduced that expense from its fee application as noted herein. MFC also voluntarily reduced overtime weekday meal and transportation expenses for certain individuals where the above information could not be verified because the individuals are currently on leave or no longer employed by MFC. MFC separately identified overtime weekend/holiday transportation and meals as being outside of normal business hours. These procedures, in conjunction with those described in section B below, resulted in reductions to overtime meal expenses of $4,254 and reductions to overtime ground transportation expenses of $4,024.

B. **Meal and Ground Transportation Expenses – Less than Four Hours Billed and Commuting from Home to Office**
*The United States Trustee have reviewed each expense request for meals and ground transportation for eight of the timekeepers. As set forth in the attached Exhibit O (the exhibit has not been filed online because it may include non-redacted time entries), the United States Trustee objects to the request for reimbursement of expenses for meals and ground transportation where the timekeeper has billed less than 4 hours per day (including circumstances where the meals were for individuals who did not bill any services on the day the meal expense was charged) and where the timekeeper seeks transportation costs from commuting from home to the office. Exhibit O identifies each request for reimbursement of meal expenses on behalf of individuals who billed less than four hours on the day the reimbursement was requested, including 13 instances where the individuals (Blake, Crisman, Boyer, Fish, Fulson (not a timekeeper), Han, Jones, Martin, Pititto (not a timekeeper)) did not record any time entries on that day. A reduction of $20.00 for each unjustified request for meal expense reimbursement would result in a reduction of $739.00. Exhibit O also identifies one instance where the timekeeper recorded no time entries and incurred a transportation expense of $8.00, one instance where the timekeeper billed 3.3 hours and incurred a transportation expense of $9.00, and four instances where*

*the timekeeper sought reimbursement for travel from home to the office. The unjustified request for transportation reimbursement results in a reduction of $108.00. As noted above, the United States Trustee was only able to conduct an examination of a sample of the timekeepers and managed to review the expenses of eight of the timekeepers. Based on the examination of the sampling of meal expenses conducted, assuming that Mesirow establishes compliance with the General Order M-447(F)(3) 8:00 p.m. restrictions, the United States Trustee recommends that the meal expense be reduced by 25% (a reduction of $6,042.50) or the actual reduction based on the examination of each of the requests for reimbursement of meal expenses. Once again assuming compliance with the 8:00 p.m. restriction pursuant to General Order M-447(F)(3), the United States Trustee recommends that the Ground Transportation expenses be reduced by 5% (a reduction of $2,147.00) or the actual reduction based on the examination of each of requests for reimbursement of transportation expenses.[8]*

9. MFC performed an examination of all overtime expenses, the documentation and results of which have been provided to the UST. In addition to the procedures outlined above, MFC identified the total daily hours worked by the professional associated with each overtime weekday or weekend/holiday expenses. While not required by the Guidelines applicable to this matter, MFC voluntarily reduced any overtime expenses charged by a professional who billed less than 4.0 hours per day. MFC also investigated the specific instances cited in the UST Objection.[9]

10. MFC verified that expenses for transportation between home and office were incurred on a weekend or holiday, and thus were in excess of normally expected commuting expenses. While MFC believes such expenses should be compensable, MFC voluntarily reduced these items from its fee application as noted herein.

---

[8] UST Objection at 55-56.

[9] Mr. Pititto was a transitory timekeeper whose hours and related fees had been removed from the fee application; MFC voluntarily reduced his meal expense from its fee application as noted herein. Ms. Fulson was an administrative assistant working on the ResCap matter for whom no meal expense was charged, though her name was inadvertently included in the meal description. Certain group overtime meals erroneously included professionals assigned to ResCap who were instead working on other matters; MFC reduced all such meal expenses as noted herein. The instance where a timekeeper appeared to record no time entries and incurred a transportation expense was the result of a typographical error, which has been corrected, in the date on which the expense was incurred.

11. Based on the procedures outlined above, MFC proposes to reduce its overtime meal expenses by $4,254 and its overtime ground transportation expenses by $4,024 to address the UST's concerns.

C. **Air and Lodging Expenses**
*Mesirow requests reimbursement of expenses for "Air" travel in the amount of $98,365.00 and "Lodging" in the amount of $132,582.00. A significant portion of the expenses are for travel and lodging by Mesirow personnel located in cities such as Chicago, Miami, Ft. Lauderdale, Boston, Atlanta, Dallas, Washington, D.C., Los Angeles, and Las Vegas. Mesirow's use of personnel in other cities is within the discretion of the firm and should not be borne by the estate absent a satisfactory explanation. Exhibit O includes a list of the travel expenses accompanied by the corresponding time entries for the traveler. While Mesirow's attendance at witness interviews might be justified, the time entries should establish the need for the related travel. In many cases, the time entries do not support the necessity of the travel expenses. The United States Trustee objects to the reimbursement of Air travel and Lodging expenses without further justification.[10]*

12. MFC performed a review of the time detail and related expenses associated with all out-of-town travel, and provided to the UST information highlighting the primary purpose of travel to supplement the data in Exhibit O. MFC believes that the travel for which reimbursement is requested was reasonable and necessary.

13. MFC identified one instance of airfare for $583 that was billed in error for a trip that was canceled. MFC voluntarily reduced this expense from its fee application as noted herein.

14. The circumstances of this case required certain MFC professionals resident outside of the New York area to be in New York frequently to attend meetings with the Examiner, the Examiner's counsel, Chadbourne & Parke, LLP, and other parties-in-interest. MFC's professionals also traveled for the purpose of attending extended on-site meetings with the Debtors and their professionals. MFC's professionals with knowledge relevant to the

---

[10] UST Objection at 57.

7

Examiner's investigation were required to attend interviews in New York and various locations throughout the United States.  Further, it was necessary for MFC professionals to attend certain hearings in New York. Attendance at such meetings, interviews and hearings was assigned based on specific areas of case responsibility and technical expertise.

15.     Additionally, as the Examiner and his professionals were reaching final conclusions and documenting those determinations in the Examiner's report, frequent in-person meetings and coordination between team members (internal and external to MFC) were required, given the size, scope and complexity of the issues being addressed and the relevant time constraints (*i.e.*, the Examiner's original report deadline was early April, then was extended until May 10, 2013). Efforts were made to assign team members within the same offices where possible and to use conference calls to minimize travel.  However, the efficient conduct of the investigation, including the preparation of complex financial analytics, and the expeditious development of a report comprising over 2,200 pages, with over 9,500 footnotes, 180 exhibits and 58 appendices, required that members of the various transaction, functional and engagement leadership teams interact on a regular and proximate basis.

### III.    CONCLUSION

16.     In summary, MFC proposes a reduction of expenses requested in the amount of $8,278 related to overtime meals and ground transportation and $583 related to airfare, for a total of $8,861. MFC submits that the information provided in the Third Interim Fee Application as supplemented by this response provides sufficient support for compensation and reimbursement of the other fees and expenses identified by the UST.  Therefore, with the exception of the voluntary reductions stated herein, MFC submits that the Third Interim Fee Application should be approved and the UST Objection as it applies to MFC should be overruled.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: Chicago, IL
September 10, 2013

By: /s/ Melissa Kibler Knoll
Melissa Kibler Knoll
Senior Managing Director
Mesirow Financial Consulting, LLC
353 North Clark Street
Chicago, Illinois 60654