Mary Lynn Weber
84 Chapman Heights Street
Las Vegas, Nevada 89138
(702) 810-2110
*Creditor pro se*



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTIRCT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. **12-12020 (MG)** |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter **11** |
| Debtors. | Jointly Administered |

## OPPOSITION TO DEBTORS' TWENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (BORROWER CLAIMS WITH INSUFFICIENT DOCUMENTATION)

Creditor Mary Lynn Weber (hereinafter "Creditor"), appearing *pro se*, hereby opposes the Debtors' Twenty-Sixth Omnibus Objection to her claim as follows:

### BACKGROUND

1.  Creditor is a mortgagor of owner-occupied residential property at 84 Chapman Heights Street, Las Vegas, Nevada 89138 (the "subject property"), and at all times relevant herein, was and is the person who holds the title of record for the subject property.

2.  Creditor is the borrower of a mortgage loan which was originated by Ohio Savings Bank in January of 2007 and subsequently securitized.

3.  Shortly following origination, Debtor GMAC Mortgage ("GMAC"), an affiliated debtor in the instant bankruptcy, began servicing the subject loan.

4.  Beginning in October of 2009, various instruments were recorded in Clark County, Nevada, pertaining to the subject loan, including, but not limited to (a) one or more Notices of Breach/Default; (b) one or more Substitutions of Trustee; and (c) one or more

1

Assignments of Deed of Trust. These instruments purport to transfer ownership, title and/or authority in regard to the subject mortgage loan and associated real property. However, as will be shown, none of these instruments names any entity involved in the securitization of the Creditor's loan, and as such, constitute an attempt to bypass and/or omit the actual transaction and the parties thereto.

5. In 2011, Creditor submitted to GMAC several inquiries, including a Qualified Written Request ("QWR") under the RESPA statutes found at 12 USC § 2601 et seq., requesting, among other things, (a) the identity of the owner of the subject loan and/or the party entitled to enforce it; (b) the full chain of transfers of both the Promissory Note and Deed of Trust; and (c) an accurate accounting for her mortgage payments. The responses from GMAC essentially produced only copies of documents she already possessed, and largely denied all other requests for information, claiming they were "outside the scope" of a QWR.

6. Believing there to be a genuine controversy over the central issues of the ownership of her loan and the authority to enforce it, Creditor opted into the Nevada Foreclosure Mediation Program ("FMP"), a non-judicial program which utilizes independent mediators intended to provide alternatives to foreclosure, as well as ensure the foreclosing parties actually possess the authority to foreclose under Nevada law.

7. In accordance with FMP rules, Laurel I. Handley of Pite Duncan, LLP, attorneys for GMAC and Residential Funding, LLC (an affiliate of Debtor Residential Capital, LLC) ("Residential") submitted, to both the mediator and Creditor, signed statements / certifications attesting to their clients' possession of the original Promissory Note and original Deed of Trust. The said certifications also indicated that Residential was the "owner" of the Note while GMAC was the "beneficiary" of the Deed of Trust. The Statement and Certification Under Oath relating to possession of the Note is attached hereto as Exhibit "1" and the Statement and Certification relating to the Deed of Trust is attached as Exhibit "2."

8. The initial FMP meeting took place on December 14, 2011, where the mediator found that the foreclosure appeared to be proceeding properly, and submitted his statement accordingly.

9. Still not convinced that the truth about her loan had been revealed, or that GMAC and Residential fully complied with the law regulating foreclosures and the foreclosure mediation process, Creditor petitioned the Clark County District Court for judicial review of the mediator's findings (Case No. A-12-654620-J). At the hearing on her Petition, the judge agreed with Creditor and ordered the parties back to mediation a second time to resolve the controversy.

10. During the period following the first mediation, in order to determine what actually happened to her loan and her payments, Creditor employed the services of a forensic expert analyst, one William McCaffrey, who researched the securitization of the subject loan from its origination to the present time. In May of 2012, Mr. McCaffrey provided Creditor with a signed affidavit that testified to the fact that the true owner of the subject mortgage loan was actually "RFM SI Series 2007-SA2 Trust," an entity which, up to that point, was never named or identified by GMAC in any recorded instrument, response to Creditor's correspondence, or other documentation. The Affidavit of William McCaffrey is attached hereto as Exhibit "3."

11. Based on the findings of Mr. McCaffrey, there was and is a discrepancy regarding legal ownership of the subject loan, and what appear to be fraudulent transfers of the loan instruments, false assignment of interests such as "beneficiary" and "trustee," and unlawful foreclosure proceedings commencing with one or more false "Notice(s) of Breach and Default" performed by the Debtors herein and other parties who worked with or alongside said Debtors.

12. The second mediation took place on April 30, 2012. At that meeting, Creditor supplied an electronic "draft" copy of Mr. McCaffrey's Affidavit, as she was still waiting for the original wet-ink document in the mail.

13. The mediator did take notice of the glaring inconsistency of the forensic expert's findings in comparison to the purported "transfers" provided by GMAC / Residential Funding, LLC and their attorneys. Specifically, the copy of the Promissory Note provided by GMAC's attorneys contains two undated endorsements – the first, on the printed side of the last page, from "Ohio Savings Bank" to "GMAC Bank" signed by "Amy Hull" as "Authorized Agent;" and the second, on the back side of the last page, stating "PAY TO THE ORDER OF

3

WITHOUT RECOURSE Residential Funding Company, LLC" signed by "Judy Faber, Vice President." The same copy of the note also contains an undated allonge stating "PAY TO THE ORDER OF: RESIDENTIAL FUNDING COMPANY LLC FKA RESIDENTIAL FUNDING CORPORATION WITHOUT RECOURSE ALLY BANK FKA GMAC BANK" and signed by one "Kathy Kuhrt" as "Assistant Secretary." A copy of this version of the Note with both endorsements and the allonge page is included as part of Exhibit "1."

14. The results at the second mediation were exactly the opposite from the first, in that the mediator <u>did not</u> authorize the foreclosure, but instead, recommended sanctions against GMAC and Residential, including cancellation of the entire foreclosure process by these entities. GMAC and Residential had thirty days to petition for judicial review of the mediator's decision, but elected not to.

15. It was Creditor's intention to file a lawsuit against GMAC and Residential Funding, LLC (and their co-conspirators) for wrongful foreclosure, civil conspiracy, unjust enrichment, and other claims, but the instant bankruptcy filing was commenced, precluding such action pending its resolution.

## LEGAL ARGUMENT

### A. <u>The Creditor's Payments were Unlawfully Retained</u>

16. Creditor asserts that GMAC and Residential both have falsely represented themselves as "owners" of the subject Promissory Note which legally belonged to a different entity entirely. This separate entity, the "RFM SI Series 2007-SA2 Trust," was the intended recipient of the mortgage payments on behalf of undisclosed investors, and was therefore the only entity which had a claim to the subject loan obligation. The "RFM SI Series 2007-SA2 Trust" is also the only entity which has a legal right to possession of the loan instruments. This entity was deprived of its rightful ownership through the fraud of other parties, including the Debtors GMAC and Residential Funding, LLC. Therefore, the logical conclusion is that Creditor's mortgage payments were improperly applied in that they were never paid to the true mortgage creditor, but instead, were unlawfully retained by the above-named Debtors, each purporting to be "endorsees" of the Note.

17. Whether GMAC and/or Residential "possesses" the original loan Note and Deed of Trust is irrelevant as pertaining to enforcement and foreclosure. What matters is **how** GMAC and Residential acquired its claimed "interest" in the instruments. The Uniform Commercial Code ("UCC"), codified in Nevada at NRS 104, requires a party to **account** for its ownership and claim of authority. In addition, NRS 104.3203(2) states that a party which possesses a negotiable instrument by way of fraud does not have the right to enforce it which, ordinarily, a "holder in due course" would have.

18. As is now proven by the forensic research of William McCaffrey, GMAC and Residential have, by way of fabricated endorsements, attempted to bypass the full chain of transfers of the subject Note to omit the true creditor and falsely claim their purported "ownership" interests in the Creditor's loan/Note, when in fact, GMAC was never anything but a debt collector in the subject transaction.

19. Because GMAC and Residential have each falsely held themselves out as the "endorsees" of the subject Note, it would appear obvious that all of Creditor's payments paid to GMAC were unlawfully withheld by one or both of these entities.

20. It is undisputed that neither GMAC nor Residential loaned the money for the subject loan. And since neither GMAC nor Residential has ever shown proof of a lawful acquisition of the subject loan instruments as per the UCC/NRS 104, there was no possible way a legitimate claim could be made that the Creditor was "in default" to either of them.

21. Based on the fact that "RFM SI Series 2007-SA2 Trust" was the true mortgage creditor, and also the fact that this entity does not appear on either loan instrument or any of the "endorsements" of the Note (nor any of the foreclosure-related instruments recorded in Clark County, Nevada by the Debtors herein), Creditor asserts that <u>at no time did GMAC or Residential possess the authority to deliver to her a legal and binding "satisfaction of mortgage" if she had paid the subject loan in full.</u> In other words, as long as GMAC and Residential continued to misrepresent ownership of the subject loan, Creditor's payments could never have resulted in a true sale of the property, because they were never properly applied toward "principal" and "interest" as represented in the loan instruments.

5

22. Creditor further asserts that <u>at no time could GMAC or Residential provide a clear, unencumbered conveyance of title to the subject property</u> to Creditor had she paid the loan in full. In fact, the acts of the Debtors herein have created a ***defect*** in the subject title.

23. Creditor therefore claims that each and every mortgage payment she paid was improperly applied and/or withheld by false, rogue, and/or unauthorized parties holding themselves out as "owners" of the loan simply because they possessed the subject loan instruments by way of fraud. The fraud by the Debtors herein is evident in that the true creditor, RFM SI Series 2007-SA2 Trust, was not only deprived of possession of the loan instruments, it was also deprived of its authority to accept and properly credit/apply mortgage payments as represented in the loan documents.

24. The Creditor already submitted copies of statements showing her monthly mortgage payments with her Proof of Claim dated November 5, 2012, but as a convenience, considering Debtors' Objection is based on "borrower claims with insufficient documentation," they are submitted again, attached hereto as Exhibit "4."

25. Based on the foregoing facts, Creditor has a legitimate, and now sufficiently documented, claim against Debtors GMAC and Residential, who, at one time or another, have each falsely and unlawfully represented themselves as "owners" of the subject loan. Creditor should therefore be reimbursed the full amount of all mortgage payments she paid during the life of the subject loan, as these funds were unlawfully retained by the Debtors.

26. Furthermore, the preceding constitutes sufficient basis upon which the Debtors' Twenty-Sixth Omnibus Objection should be denied as to this Creditor.

**B.    <u>The Foreclosure Proceedings were Unlawful and Unauthorized</u>**

27. It is actually no surprise that unauthorized financial parties such as the Debtors herein would possess the original loan instruments in securitized mortgage loans, as reports[1] and deposition testimony[2] have both proven that in nearly 100% of mortgage loans scheduled to be

---

[1] See, for example, Albany Law School's well-researched "Uneasy Intersections: The Right to Foreclose and the UCC" by Elizabeth Renuart (2013).
[2] See, for example, Deposition of Linda DeMartini in *Kemp v. Countrywide*, 440 B.R. 624 (Bankr. D. N.J. 2010), where Ms. DeMartini stated, "the original note never left the possession of Countrywide" and testified further that "it was customary for Countrywide to maintain possession of the original note and related loan documents" for all of its many securitized mortgage loans.

6

pooled into securities, the Notes and Mortgages (or Deeds of Trust) were <u>never physically transferred</u> to the entities which, by law, were required to possess them. In fact, those entities (usually trusts) were required to possess the original instruments, properly endorsed, transferred and/or assigned, by a definite cutoff or closing date which was never more than 90 days from the origination of the loan. Therefore, the last possible date wherein the RFM SI Series 2007-SA2 Trust was to acquire possession of the Creditor's loan instruments would have been in or around April of 2007, and most likely sooner.

28. Securitization of a mortgage loan was designed to consist of at least four transfers of the loan instruments, with each separate transfer, naturally, required to be properly and completely performed before the next transfer. However, the securitization process was riddled with "shortcuts" intended as an evasion of payment of real property transfer taxes which would be required by the state or county at every transfer. This was the primary reason Mortgage Electronic Registration Systems, Inc. ("MERS") was created.

29. MERS purported to act as "beneficiary" on the Deed of Trust in the subject mortgage loan. However, the prevailing legal opinion is that MERS does not have the authority to "assign" any interest in any Deed of Trust, substitute a trustee, or record a Notice of Default, as it is never a true "beneficiary" in a mortgage loan agreement.[3] Indeed, the deed of trust clearly states that MERS is merely a "nominee" for the actual beneficiary. MERS is never the lender, never the creditor, never the note holder, and has no interest in the property "secured" by the mortgage or deed of trust. Additionally, MERS is never owed the loan obligation and cannot enforce it. It is therefore quite obvious that MERS is never a party "for whose benefit" a Deed of Trust is made.

30. Aside from the fact that the very presence of MERS acting as "nominee" creates a controversy regarding the split of the Note from the Deed of Trust, all loan- and foreclosure-related instruments fabricated and/or recorded concerning the subject mortgage loan completely omit the true creditor (RFM SI Series 2007-SA2 Trust) and all other parties in the chain of transfers in the securitization of the loan.

---

[3] See *Bain v. Metropolitan Mortg. Group, Inc.*, _ P.3d _, 2012 WL 3517326 (Wash. 2012); *Niday v. GMAC Mortgage*, _ P.3d _, 2012 WL 2915520 (Or. Ct. App. 2012); and many others.

31. The securitization process was intended to provide "bankruptcy remote" protection through a series of transfers, beginning with a transfer of both loan instruments from the "originator" (Ohio Savings Bank) to an as-yet unidentified entity known as the "sponsor" or "seller;" then from the "seller" to the "depositor" (also unidentified at this time); and finally, from the "depositor" to the securitization trust, known as the "issuing entity" because it issues the "certificates" which are sold to secondary-market investors.

32. While failure to transfer the loan instruments is clearly a violation of the securitization agreements, any attempt to enforce the same non-transferred loan instruments by a rogue party with no legal claim to the obligation they secure is also unlawful. This becomes particularly disturbing when viewed in the light that such unlawful enforcement is always accompanied by false endorsements on the Note (including signatures which, if in place to facilitate a fraudulent proceeding, are legal forgeries); false and/or fraudulent instruments fabricated solely to facilitate an unlawful foreclosure and which attempt to convey and/or transfer title, ownership and/or authority in regard to the subject loan and the associated real property (which instruments, if false and/or fraudulent, constitute additional violations upon being recorded in the county records where the property resides); and numerous violations of debt collection laws both at the state and federal levels.

33. Further, several courts have now held that failure to properly transfer the loan instruments to the securitization trust as required by the securitization agreements renders any and all "assignments" of the mortgage/deed of trust and "transfers" of the Note void – in other words, *they never happened.* As the Court stated in *Wells Fargo Bank, N.A. v. Erobobo* (2013 NY Slip Op 50675(U)):

> In Article II, section 2.01 Conveyance of Mortgage Loans, the PSA requires that the Depositor deliver and deposit with the Trustee the original note, the original mortgage and an original assignment. The Trustee is then obligated to provide to the Depositor an acknowledgment of receipt of the assets before the closing date. PSA, Article II, Section 2.01.
>
> The rationale behind this requirement is to provide at least two intermediate levels of transfer to ensure the assets are protected from the possible bankruptcy by the originator which permits the security to be provided with the

8

rating required for the securitization to be saleable. Deconstructing the Black Magic of Securitized Trusts, Roy D. Oppenheim Jacquelyn K. Trask-Rahn 41 Stetson L. Rev. 745 Stetson Law Review (Spring 2012).

Here the note and mortgage were purportedly assigned from Option One to the Plaintiff, without having been transferred to, and then from, the Depositor. The assignment of the note and mortgage from Option One rather than from the Depositor ABFC violates section 2.01 of the PSA which requires that the Depositor deliver to and deposit the original note, mortgage and assignments to the Trustee.

**The assignment of the Defendant's note and mortgage, having not been assigned from the Depositor to the Trust, is therefore void as in being in contravention of the PSA.** The evidence submitted by Defendant that the note was acquired after the closing date and that assignment was not made by the Depositor, is sufficient to raise questions of fact as to whether the Plaintiff owns the note and mortgage, and precludes granting Plaintiff summary judgment.

*[emphasis added.]*

Additionally, the United States District Court from the Southern District of California recently made a similar finding and ruled accordingly. In <u>Naranjo vs. SBMC Mortgage</u>, Case No. 11-cv-2229-L(WVG), the Court found:

The vital allegation in this case is **the assignment of the loan into the WAMU Trust was not completed by May 30, 2006 as required by the Trust Agreement. This allegation gives rise to a plausible inference that the subsequent assignment, substitution, and notice of default and election to sell may also be improper.** Defendants wholly fail to address that issue. (See Defs.' Mot. 3:16-6:2; Defs.' Reply 2:13-4:4.) **This reason alone is sufficient to deny Defendants' motion with respect to this issue.**           *[emphasis added.]*

34.     In support of Creditor's allegations that the foreclosure was unlawful and the "endorsements" which appear on the subject Note are fraudulent, Creditor again points to the findings of William McCaffrey, which indicate that because the RFM SI Series 2007-SA2 Trust was the <u>true creditor</u> through the securitization of the loan, then any lawful "transfers" or "endorsements" of the subject Promissory Note to either GMAC or Residential Funding, LLC must <u>first</u> ensue *from that creditor*. Instead, GMAC / Residential assert that Ohio Savings Bank first "transferred" the Note to GMAC Bank, and then GMAC Bank "transferred" it to Residential Funding, LLC. Of course, we have no proof of <u>**how**</u> GMAC acquired the right to

9

enforce the subject Note (other than creating a false endorsement), nor what **"value"** was paid to acquire it. Additionally, both "endorsements" appearing on the Note are undated, so we also do not know **when** GMAC or Residential purportedly "received" the instrument. This information was requested by the Creditor at the second mediation, but the attorneys for GMAC and Residential Funding, LLC flatly refused to provide it.

35. There were sufficient discrepancies in the subject foreclosure process conducted by GMAC and Residential Funding, LLC, including failure to comply with Nevada's Foreclosure Mediation Program Rules, to convince the Nevada state-appointed mediator in the most recent (second) foreclosure mediation to cancel the foreclosure and recommend sanctions against those entities. Certainly, these discrepancies are also sufficient to deny Debtors' Objection pending closer examination of the facts and the evidence presented.

C. **Numerous Foreclosure-Related Instruments, All Containing False Information, were Fabricated to Unlawfully Create the Appearance of Authority**

36. As aforementioned, Debtors herein have created and recorded several foreclosure- and title-related instruments in Clark County, Nevada, solely for the purpose of facilitating a foreclosure upon the Creditor. However, the parties named on said instruments are all lacking in the authority and/or capacity in which they are listed. A few of these instruments are described in detail below and attached as exhibits hereto:

(a) On October 14, 2009, MERS, purporting to act as the "beneficiary" of the subject deed of trust, recorded a "Substitution of Trustee" (Exhibit "5") purportedly substituting Executive Trustee Services, LLC as the new trustee. However, MERS was only named as a "nominee" of the party named as the "lender" on the original loan instruments, which was Ohio Savings Bank. In this capacity, MERS' authority to perform every act that the true "beneficiary" may perform has been consistently disputed all over the country, with several states having issued rulings stating concisely that MERS cannot be, or act as, a beneficiary as was intended by those states' legislatures.

(b) On April 29, 2011, MERS, again purporting to act as "beneficiary," recorded an "Assignment of Deed of Trust" (Exhibit "6"), purportedly "assigning" the

beneficial interest of the subject Deed of Trust to GMAC Mortgage, LLC "together with the Promissory Note secured by said Deed of Trust...." This is problematic for multiple reasons. First, here again, MERS was only a "nominee" of the true beneficiary, not an "agent," and therefore lacked any agency arrangement whereby it was authorized to perform any and all acts that the true beneficiary could. Second, before the recordation of this instrument, MERS' principal, Ohio Savings Bank, had ceased operations, having been seized by the FDIC when it failed on December 4, 2009. Therefore, even if MERS had been a properly authorized agent of this entity, the entity itself no longer existed, and its powers had likewise vanished. MERS never, at any time, had the authority to "do whatever it wanted" in the subject transaction, as it was always subservient to the commands of its principal. But when that principal ceased to exist in December of 2009, MERS' authority to do *anything* regarding the subject Deed of Trust, no matter how minor, likewise ceased. Third, the language of the Assignment states that MERS assigned the beneficial interest of the Deed of Trust "together with the Promissory Note" when, in fact, MERS never, at any time, had any interest whatsoever in the subject Promissory Note. For GMAC to rely upon such a flawed title-related instrument containing such an obvious falsehood – *recorded in the county records no less* – as the flagship of its claim of "authority" and having been "assigned" the beneficial interest of the subject Deed of Trust is legally and patently absurd. Moreover, the true holder in due course of the Promissory Note would certainly have something to say about MERS' attempt to assign something that was owned by someone else. But fourth, and possibly most importantly, the subject loan was securitized and the true creditor and intended owner/holder of the loan instruments was an entity which was never even named on the Assignment, nor any other recorded instrument. The Assignment, just like the Notice(s) of Breach/Default and the Substitution(s) of Trustee, is merely an attempt to bypass and omit the true parties to the transaction and replace those names with rogue interlopers, all of whom are acting without any authority whatsoever, and have continued to pursue a foreclosure upon the Creditor herein that is fraudulent in every aspect.

(c) On May 24, 2011, Executive Trustee Services, apparently forgetting that a document had already been recorded which stated that it had been "substituted" as the new trustee, recorded a second "Substitution of Trustee" (Exhibit "7"), this time at the behest of the newly-"assigned" beneficiary, GMAC. However, if the instant Court agrees with the *Erobobo* ruling cited herein, it becomes evident that MERS had no authority to assign the Deed of Trust to GMAC or anyone else. Consequently, GMAC was assigned nothing by way of the "Assignment of Deed of Trust" recorded and executed by MERS, and this Substitution is a legal nullity for this reason alone.

(d) On May 24, 2011, the same day as the above "Substitution" was recorded, Executive Trustee Services recorded a "Notice of Breach and Default and Election to Cause Sell of Real Property Under Deed of Trust" (Exhibit "8"), which falsely states that the borrower (Mary Lynn Weber, the Creditor herein) was in "default" to MERS as "nominee" for then-defunct Ohio Savings Bank. For the same reasons stated above in paragraph 36(b), this Notice is false. Neither MERS, nor GMAC, ever loaned any money to Creditor, nor were they owed any money from Creditor. Furthermore, neither GMAC nor Residential Funding, LLC stood to lose anything by the non-payment of the Creditor. These parties have attempted to enforce an obligation to which they have no legal right, by simply "stepping into the shoes" of the authorized party, which party had been deprived of its lawful possession of the original loan instruments by the fraudulent acts of others. Such fraudulent acts, however, do not convey standing upon the violating parties.

37. Clearly, the behavior exhibited by the Debtor GMAC and its affiliate Residential Funding, LLC with regard to the Creditor, her mortgage loan, and the associated foreclosure proceedings, can only be described as reprehensible. If the borrower were to attempt the very same things, the punishment would be severe and swift. The Court should not only deny the instant Objection, but should consider sanctions, as both the Debtors and their attorneys have seen fit to continue to misrepresent the evidence as well as the truth in this matter.

## CONCLUSION

38.     Based on the foregoing facts, and on the submission of Creditor's evidence attached hereto, the burden of proof now rests squarely upon the Debtors to disprove Creditor's claim. Creditor asserts, however, that disproving her claim ultimately will be deemed impossible, given the fact that there is now proof of the existence of the true mortgage creditor, and that this true creditor was intentionally omitted in all documentation created, recorded and/or submitted by the Debtors, including signed pleadings filed in the instant matter.

39.     Therefore, Creditor respectfully requests that the Court deny the Debtors' Objection as to this Creditor and allow her claim to proceed. Creditor further requests sanctions against the Debtors should the Court deem that the extent of their misrepresentations and other dubious deeds rise to that level.

DATED this 10th day of September, 2013.

Mary Lynn Weber
84 Chapman Heights Street
Las Vegas, Nevada 89138
(702) 810-2110
*Creditor pro se*

## **VERIFICATION**

I, Mary Lynn Weber, am the Creditor in the above-entitled action. I have read the foregoing document and am competent to testify that the contents are true of my own knowledge, except for those matters stated therein on information and belief, and as to those matters, I believe them to be true.

DATED this 10th day of September, 2013.

_____
Mary Lynn Weber

"I declare under penalty of perjury that the foregoing is true and correct."

Executed on September 10, 2013.

_____
Mary Lynn Weber

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **OPPOSITION TO DEBTORS' TWENTY-SIXTH OMNIBUS OBJECTION TO CLAIMS (BORROWER CLAIMS WITH INSUFFICIENT DOCUMENTATION)** was made on the 10th day of September, 2012, by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, and addressed as follows:

Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, New York 89101
*Attorneys for Debtors and Debtors in Possession*

_____
Mary Lynn Weber
84 Chapman Heights Street
Las Vegas, Nevada 89138
(702) 810-2110
*Creditor pro se*

15