**THIS IS A NOTICE REGARDING YOUR CLAIM. YOU MUST READ IT
AND TAKE ACTION IF YOU DISAGREE WITH THE OBJECTION.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF HEARING ON TWENTY-SEVENTH
OMNIBUS OBJECTION TO CLAIMS
(BORROWER CLAIMS WITH INSUFFICIENT DOCUMENTATION)**

**Joanne Goolsby**

| Proposed Claim(s) to be Disallowed and Expunged | | | | Reason for Disallowance |
|---|---|---|---|---|
| Claim No(s); Date Filed | Debtor | Classification | Amount | |
| 1349<br>10/19/12 | Residential Capital, LLC | Administrative Priority | N/A | Claimant does not include sufficient supporting documents |
| | | Administrative Secured | N/A | |
| | | Secured | N/A | |
| | | Priority | N/A | |
| | | General Unsecured | $13,608.00 | |

PLEASE TAKE NOTICE that, on August 16, 2013, Residential Capital, LLC and certain of its affiliates (collectively, the "**Debtors**") filed their *Twenty-Seventh Omnibus Objection to Claims (Borrower Claims with Insufficient Documentation)* (the "**Objection**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").[1] The category of claim objection applicable to you is identified in the table above in the column entitled "**Reason for Disallowance**".

The Objection requests that the Bankruptcy Court expunge, and/or disallow one or more of your claims listed above under PROPOSED CLAIM(S) TO BE DISALLOWED AND EXPUNGED on the ground that the claim(s) does not contain sufficient documentation to substantiate the claim. **Any claim that the Bankruptcy Court expunges and disallows will be**

---

[1] A list of the Debtors, along with the last four digits of each Debtor's federal tax identification number, is available on the Debtors' website at http://www.kccllc.net/rescap.

*Copies Attached* [handwritten annotation]

Mail Billing and Other Inquiries
and Report Lost Checks to:
Ocwen Loan Servicing, LLC
PO Box 780
Waterloo IA 50704-0780

Customer Care Inquiries: 800-766-4622
Telephoning Does Not Protect Your Rights.

OCWEN

01:16:10:11:00.3_JXXM77_20130021HMGA10/HELOC-DC_1.02.DOM1HMGA1/0007_150G/1_GM

JOANNE GOOLSBY
17641 WILTSHIRE BLVD
LATHRUP VILLAGE MI 48076-2742

| ACCOUNT NUMBER | 8307044544 |
|---|---|
| CREDIT LIMIT | $41,000.00 |
| CREDIT AVAILABLE | $0.00 |
| STATEMENT CLOSING DATE | 07/31/13 |
| DAYS IN CYCLE | 31 |

| BEGINNING BALANCE | $44,909.02 |
|---|---|
| TOTAL PAYMENTS RECEIVED | $382.10 |
| – TOTAL ADVANCES | $0.00 |
| +/– TOTAL ADJUSTMENTS/CREDITS | $0.00 |
| + CURRENT FEES/SPECIAL CHARGES | $52.19 |
| + TOTAL FINANCE CHARGE | $186.46 |
| = NEW BALANCE | $44,765.57 |

### SPECIAL MESSAGES

Our records indicate that you have filed for bankruptcy protection. This statement applies to our lien on your property and is being provided for informational purposes only. If you choose to continue to remit payments, please include the coupon below with any payments you send. If you do not want us to send you mortgage account statements in the future, please contact us at the number listed above.

| POSTING DATE | TRAN DATE | TRANSACTION DESCRIPTION | ADVANCE DESCRIPTION | CHECK # | TRAN AMOUNT | PRINCIPAL | FINANCE CHARGE | OTHER | OUTSTANDING BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| 07/09/13 | 07/09/13 | Receipt | | | $382.10 | $0.00 | $0.00 | $382.10 | $40,201.45 |
| 07/12/13 | 07/09/13 | Receipt | | | $382.10- | $0.00 | $0.00 | $382.10- | $40,201.45 |
| 07/12/13 | 07/09/13 | Principal Curt | | | $382.10 | $382.10 | $0.00 | $0.00 | $39,819.35 |
| | 07/31/13 | Late Charge Assessed | | | $52.19 | | | $52.19 | |

### See Reverse Side And Additional Pages For Important Information And State Specific Disclosures

#### FINANCE CHARGE CALCULATION / RATE HISTORY

| FROM | TO | CORRESPONDING ANNUAL PERCENTAGE RATE | DAILY RATE | NO. OF DAYS DAILY RATE IN EFFECT | DAILY EARNING BAL OUTSTANDING (BAL SUBJECT TO FINANCE CHARGE) | FINANCE CHARGE |
|---|---|---|---|---|---|---|
| 07/01/13 | 07/09/13 | 5.50000 | 0.01507 | 8 | $40,201.45 | $48.46 |
| 07/09/13 | 08/01/13 | 5.50000 | 0.01507 | 23 | $39,819.35 | $138.00 |

| TOTAL FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|
| $186.46 | 5.500 |

### Method P. Payment Disclosure:

During the Draw Period, the Minimum Payment due will include (a) late charges and any other charges authorized by your Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; (b) accrued but unpaid interest for prior Billing Cycles;(c) premiums for any optional credit lift insurance you may decide to obtain through us; and (d) an amount equal to the amount by which your Loan Account Balance exceeds your Credit Limit. During the Draw Period the Minimum Payment will not reduce the principal outstanding on your Line of Credit. During the Repayment Period, the Minimum Payment will be an amount equal to the accrued and unpaid finance charges, late charges and other charges authorized by you Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, plus 0.83333% of the Loan Account Balance outstanding at the end of the Draw Period. During the Repayment Period, payment of the Minimum Payment only may not fully repay your Loan Account Balance. If paying the Minimum Payment will neither reduce nor fully repay your Loan Account Balance, you will then be required to pay the entire balance in a single balloon payment on the Maturity Date.

### Finance Charge Disclosure: The Daily Rate may vary, if this is a variable rate account.

The FINANCE CHARGE begins to accrue on the day that your Account has been debited for each advance, and continues to so accrue until the day the outstanding Loan Account Balance is paid in full. To determine the FINANCE CHARGE for a Billing Cycle, we apply a daily periodic rate if FINANCE CHARGE to the balance of your Loan Account Balance each day ("Daily Balance") during the Billing Cycle. To determine the daily periodic rate, we divide the ANNUAL PERCENTAGE RATE (corresponding to a daily periodic rate) in effect for the Billing Cycle by 365. To obtain the Daily Balance, we take the unpaid balance of your Account at the beginning of each day, add any new advances and other debits, except late charges, credit insurance premiums and returned check fees, and subtract payment or credits and CHARGE for each day by multiplying the Daily Balance for such day by the daily periodic rate. These daily finance are added together to obtain the total periodic FINANCE CHARGE for the period covered by the Billing Cycle.

---

Ocwen Loan Servicing, LLC retains a security interest in the borrower's real property.

**Mortgage Payment Coupon**

| ACCOUNT NUMBER | PAYMENT DATE | PAYMENT AMOUNT | UNPAID AMOUNT | UNPAID FEES/ TOTAL UNPAID |
|---|---|---|---|---|

*[handwritten notes across coupon area, including signatures and date "8-23-13"]*

Mail Billing and Other Inquiries
and Report Lost Checks to:

GMAC Mortgage
PO Box 4622
Waterloo IA 50704-4622

Customer Care Inquiries: 800-766-4622
Telephoning Does Not Protect Your Rights.

JOANNE GOOLSBY
17641 WILTSHIRE BLVD
LATHRUP VILLAGE MI 48076-2742

# EquityLine
by GMAC Mortgage

| ACCOUNT NUMBER | BEGINNING BALANCE |
|---|---|
| 8307044544 | $44,644.37 |

| | TOTAL PAYMENTS RECEIVED |
|---|---|
| | $132.00- |

| CREDIT LIMIT | TOTAL ADVANCES |
|---|---|
| $41,000.00 | $0.00 |

| CREDIT AVAILABLE | TOTAL ADJUSTMENTS/CREDITS |
|---|---|
| $0.00 | $0.00 |

| STATEMENT CLOSING DATE | DAYS IN CYCLE | CURRENT FEES/SPECIAL CHARGES |
|---|---|---|
| 01/31/13 | 31 | $0.00 |

| | TOTAL FINANCE CHARGE |
|---|---|
| | $188.67 |

| | NEW BALANCE |
|---|---|
| | $44,965.04 |

## SPECIAL MESSAGES

Our records indicate that you filed for bankruptcy protection. This statement is being provided for your convenience. If you choose to continue to remit payments, please include the coupon below with any payment you send. If you do not want us to send you mortgage account statements in the future, please contact us at the number listed above.

| POSTING DATE | TRAN. DATE | TRANSACTION DESCRIPTION | ADVANCE DESCRIPTION | CHECK # | TRAN AMOUNT | PRINCIPAL | FINANCE CHARGE | OTHER | OUTSTANDING BALANCE |
|---|---|---|---|---|---|---|---|---|---|
| 01/03/13 | 01/02/13 | Pd Conventional Curt Fee | | | $70.00- | $0.00 | $0.00 | $70.00- | $40,390.12 |
| 01/08/13 | 01/08/13 | Pd Inv Recov Fee | | | $62.00- | $0.00 | $0.00 | $62.00- | $40,390.12 |

### See Reverse Side For Important Information And State Specific Disclosures

## FINANCE CHARGE CALCULATION / RATE HISTORY

| DATE FROM | TO | CORRESPONDING ANNUAL PERCENTAGE RATE | DAILY RATE | | NO. OF DAYS DAILY RATE IN EFFECT | | DAILY EARNING BAL OUTSTANDING (BAL SUBJECT TO FINANCE CHARGE) | | FINANCE CHARGE | TOTAL FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/01/13 | 02/01/13 | 5.50000 | 0.01507 | x | 31 | x | $40,390.12 | = | $188.67 | $188.67 | 5.500 |

**Method P. Payment Disclosure:**

During the Draw Period, the Minimum Payment due will include (a) late charges and any other charges authorized by your Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; (b) accrued but unpaid interest for prior Billing Cycles; (c) premiums for any optional credit life insurance you may decide to obtain through us; and (d) an amount equal to the amount by which your Loan Account Balance exceeds your Credit Limit. During the Draw Period the Minimum Payment will not reduce the principal outstanding on your Line of Credit. During the Repayment Period, the Minimum Payment will be an amount equal to the accrued and unpaid finance charges, late charges and other charges authorized by you Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, plus 0.83333% of the Loan Account Balance outstanding at the end of the Draw Period. During the Repayment Period, payment of the Minimum Payment only may not fully repay your Loan Account Balance. If paying the Minimum Payment will neither reduce nor fully repay your Loan Account Balance, you will then be required to pay the entire balance in a single balloon payment on the Maturity Date.

**Finance Charge Disclosure: The Daily Rate may vary, if this is a variable rate account.**

The FINANCE CHARGE begins to accrue on the day that your Account has been debited for each advance, and continues to so accrue until the day the outstanding Loan Account Balance is paid in full. To determine the FINANCE CHARGE for a Billing Cycle, we apply a daily periodic rate if FINANCE CHARGE to the balance of your Loan Account Balance each day ("Daily Balance") during the Billing Cycle. To determine the daily periodic rate, we divide the ANNUAL PERCENTAGE RATE (corresponding to a daily periodic rate) in effect for the Billing Cycle by 365. To obtain the Daily Balance, we take the unpaid balance of your Account at the beginning of each day, add any new advances and other debits, except late charges, credit insurance premiums and returned check fees, and subtract payment or credits and CHARGE for each day by multiplying the Daily Balance for such day by the daily periodic rate. These daily finance are added together to obtain the total periodic FINANCE CHARGE for the period covered by the Billing Cycle.

---

GMAC Mortgage retains a security interest in the borrower's real property.

## Mortgage Payment Coupon

[Handwritten notes on statement: "Recovery Dpt 800-850-Word Opts 1 my sub", "Stop 11105", "my sub Rep Dep of Probat", etc.]

# HOME EQUITY LINE OF CREDIT AGREEMENT AND PROMISSORY NOTE
## (SECONDARY LIEN)

Borrower's Name and Address:
Joanne Goolsby
25419 Florence, Detroit, MI 48219

Property Serving as Security (the "Property"):
17641 Wiltshire Boulevard, Lathrup Village, MI 48076

Lender's Name and Address:
GreenPoint Mortgage Funding, Inc.
100 Wood Hollow Drive, Novato, CA 94945

| | |
|---|---|
| No.: 0089255046 | Initial Advance: $ 41,000.00 | Maturity Date: April 15, 2021 |
| Date: March 27, 2006 | Minimum Advance: $ 100.00 | Billing Cycle: Monthly |
| Line of Credit: $ 41,000.00 | Draw Period: 60 months | Payment Date: Monthly |
| | Repayment Period: 120 months | |

1. **GENERAL TERMS AND DEFINITIONS.** This is the Agreement establishing your Home Equity Line of Credit.

In this Agreement, many of the terms we use have special meanings:

(a) "You," "your" and "yours" means each and all Borrowers who sign this Agreement and any persons who use the Line of Credit, jointly and severally.
(b) "We," "us" and "our" means Lender, and its successors and assigns.
(c) "Account" means the Line of Credit Account established by this Agreement.
(d) "Billing Cycle" means the period of time normally covered by periodic billing statements and includes such period of time even when a statement is not sent because there is otherwise no balance in your Account for that period.
(e) "Credit Limit" means the maximum amount of principal shown above that we will ordinarily allow you to owe us at any time under this Agreement.
(f) "Credit Line Checks" means the checks used to access the Line of Credit funds during the Draw Period.
(g) "Draw Period" means the period of time shown above during which you can receive advances under this Agreement.
(h) "Initial Advance" means the amount of money we will require you to accept as an advance to open the Account.
(i) "Line of Credit" means the home equity line of credit offered to Borrower by Lender pursuant to the terms of this Agreement.
(j) "Loan Account Balance" means the sum of the unpaid principal of advances made under your Line of Credit, plus unpaid but earned finance charges, plus any costs, expenses, and fees that are due.
(k) "Maturity Date" for Line of Credit is **April 15, 2021**. On this date, you promise to pay any remaining Loan Account Balance.
(l) "Minimum Advance" means the smallest amount of money we will advance to you under this Agreement.
(m) "Minimum Payment" means the minimum payment you must make on the Line of Credit, as reflected on each periodic billing statement Lender will deliver to you for each Billing Cycle.
(n) "Plan" refers to this Home Equity Line of Credit collectively.

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding                                   Page 1 of 10

GPMWD0089255046140                                            79333MI (06/02) (Rev. 04/03)

(o) "Repayment Period" means the period of time shown above during which you must repay the outstanding balance of your Account, with accrued interest, but may not request further advances. The Repayment Period begins at the end of the Draw Period, and ends on the earlier of the Maturity Date or the date when final payment of the Loan Account Balance has actually been made.

This is a personal line of credit which we are making available to you to obtain loans up to the Credit Limit on the terms and conditions contained in this Agreement. You will be able to obtain such loans from time to time, and in such amounts that we may advance and re-advance to you up to the Credit Limit, subject to the terms of this Agreement.

2. **PROMISE TO PAY; CREDIT LIMIT.** You promise to pay to Lender, or order, the total of all funds which are advanced and re-advanced to you from time to time under this Agreement, plus interest thereon, as set forth below. You also promise to pay Lender, or order, all other amounts, fees, costs and charges you are responsible for under this Agreement and that are permitted or not prohibited by applicable law. You must repay the entire outstanding Loan Account Balance, plus all accrued interest and any fees and charges due and payable on the Account, on or before the Maturity Date shown above. In the event all such sums are not paid on or before the Maturity Date, then interest shall continue to accrue on the Loan Account Balance using the same method of calculating your interest rate as set forth below.

Your Credit Limit is set forth at the beginning of this Agreement. You agree not to allow the principal amount that you owe on the Account to exceed the Credit Limit. If you do exceed the Credit Limit, you will repay the excess immediately.

3. **SECURITY.** All amounts due under the Account are secured by a mortgage, deed of trust, or security deed (the "Security Instrument") on the Property. You agree to pay all amounts due from you, and otherwise perform all covenants and obligations required of you, under the Security Instrument. If it becomes necessary for us to advance funds to you beyond the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument. The Security Instrument and this Agreement are related documents and a default under one document will be treated as a default under the other document. To the extent permitted by applicable law, the lien of the Security Instrument will continue and will have the same priority of claim if, with your consent, we renew, extend, amend, modify or substitute this Agreement. In the event of such renewal, extension, modification or substitution, you agree to execute any additional documents necessary to accomplish the action being taken.

Property securing any other loans that you have with us may also secure this Agreement.

4. **LOAN ADVANCES.** We are not obligated to advance any funds to you under this Agreement until: (a) the Security Instrument: (i) has been reviewed by us for accuracy and completeness, (ii) has been recorded in the appropriate land records of the jurisdiction in which the Property is located, and (iii) constitutes a valid lien on the Property, with no other encumbrances on the Property except for any prior mortgage or deed of trust and declarations, easements or restrictions of record listed in a schedule of exceptions to coverage in the title insurance policy insuring Lender's interest in the Property and to which Lender has agreed; and (b) any applicable right of rescission has expired without exercise of that right.

After these conditions have been satisfied, you may obtain advances on your Account by using the Credit Line Checks. You may only write Credit Line Checks during the Draw Period, and only for amounts equal to or greater than the Minimum Advance amount shown above, subject to your Credit Limit. If your request is for less than the Minimum Advance, we may, at our option, grant the request. However, granting the request does not mean we will be required to grant requests for less than the Minimum Advance in the future. We always have the option to deny any such request. During the Draw Period, you may draw upon your Account, within the Credit Limit, until it is terminated or unless additional advances are otherwise prohibited, as provided below. We will not honor Credit

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding
Page 2 of 10

GPMWD00892550046140

79333MI (06/02) (Rev. 04/03)

5. Line Checks received by us following the expiration of the Draw Period, regardless of whether you issue such Credit Line Checks during the Draw Period. We are not required to honor any request for any transfer or draw that would cause your outstanding indebtedness to exceed your Credit Limit. If we do make the advance, it does not mean that your Line of Credit has been increased. We may require you to repay the amount over your Line of Credit at once.

5. **VARIABLE RATE.** The interest rate is variable, and the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) and the periodic payment may change. The **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) includes interest only and not other costs.

6. **INITIAL INTEREST RATE.** Until 1 month(s) after the funding date (the "Initial Rate Period"), the daily periodic rate of **FINANCE CHARGE** is **0.0267 %**, which corresponds to an **ANNUAL PERCENTAGE RATE** of **9.750 %**. The periodic rate and corresponding **ANNUAL PERCENTAGE RATE** described above are the initial rates assessed under this Agreement, and are not based on the Index and Margin (defined below) used for later rate adjustments. Had these rates been based on the current Index and Margin, the daily periodic rate of finance charge and **ANNUAL PERCENTAGE RATE** would have been higher. Ask us for the current Index value, Margin, discount, and **ANNUAL PERCENTAGE RATE**. After you open this Line of Credit, rate information will be provided on periodic billing statements that we send you.

7. **SUBSEQUENT INTEREST RATE.** After the Initial Rate Period and until the Final Maturity Date, the method of calculating your **ANNUAL PERCENTAGE RATE** will change and your interest rate and Minimum Payment may increase. Beginning **after the initial rate period, the ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) will equal the value of an "Index", as of the last publication date of the Index preceding the start of the Billing Cycle plus a "Margin" of **Two and 250/1000ths** percentage points (**2.250 %**), rounded to the nearest one-eighth of one percentage point (0.125%). The "Index" is the rate published in The Wall Street Journal under the designation "Money Rates" and shown as "prime rate" or "base rate on corporate loans posted by at least 75% of the nation's 30 largest banks," or substantially similar words.

The **ANNUAL PERCENTAGE RATE** may change on the first day of every month during the term of this Agreement ("Change Date") and the rate will be effective until the ensuing Change Date. The **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) will not change more than once each Billing Cycle. An increase in the Index will result in an increase in the **FINANCE CHARGE** and corresponding **ANNUAL PERCENTAGE RATE**, which may have the effect of increasing your Minimum Payment. A decrease in the Index will have the opposite effect of an increase. If the Index changes more frequently than the **ANNUAL PERCENTAGE RATE** is scheduled to change, we will always use the Index in effect on the day we adjust the **ANNUAL PERCENTAGE RATE** to determine the new **ANNUAL PERCENTAGE RATE**. In such a case, we will ignore any changes in the Index that occur between **ANNUAL PERCENTAGE RATE** adjustments.

Your maximum **ANNUAL PERCENTAGE RATE** will be 18%. Except for this 18% "cap," there is no limit on the amounts by which the **ANNUAL PERCENTAGE RATE** may increase or decrease on any Change Date or over the life of the Line of Credit.

If the Index becomes unavailable, we will select a new index (and, if necessary, a new Margin) that will result in an **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) that is substantially similar to the rate in effect at the time the original Index became unavailable.

8. **CALCULATION OF FINANCE CHARGES.** You agree to pay a periodic **FINANCE CHARGE** (which we will refer to as "interest") on your Account based on the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) derived in accordance with Sections 6 and 7. The **FINANCE CHARGE** begins to accrue on the day that your Account has been debited for each advance, and continues to so accrue until the day the outstanding Loan Account Balance is paid in full.

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding                                    Page 3 of 10

GPMWD00892550461 40                            79333MI (06/02) (Rev. 04/03)

To determine the **FINANCE CHARGE** for a Billing Cycle, we apply a daily periodic rate of **FINANCE CHARGE** to the balance of your Loan Account Balance each day ("Daily Balance") during the Billing Cycle. To determine the daily periodic rate, we divide the **ANNUAL PERCENTAGE RATE** (corresponding to a daily periodic rate) in effect for the Billing Cycle by 365. To obtain the Daily Balance, we take the unpaid balance of your Account at the beginning of each day, add any new advances and other debits, except late charges, credit insurance premiums and returned check fees, and subtract payments or credits and unpaid finance charges. This results in your daily principal balance for each day in the Billing Cycle. We then determine the **FINANCE CHARGE** for each day by multiplying the Daily Balance for such day by the daily periodic rate. These daily finance charges are added together to obtain the total periodic **FINANCE CHARGE** for the period covered by the Billing Cycle.

9. **ADDITIONAL FINANCE CHARGES:** You agree to pay us the following additional **FINANCE CHARGES:**

   - See Fee Schedule

10. **MONTHLY PAYMENTS.**

    **(A.) DRAW PERIOD.** Each month, we will send you a periodic statement applicable to your Account. You must pay us at least the Minimum Payment indicated on the periodic statement by the date indicated on the statement. If, however, the unpaid balance in your Account is less than the Minimum Payment, your Minimum Payment will be equal to the balance in your Account. The Minimum Payment will include (a) late charges and any other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument; (b) accrued but unpaid interest for prior Billing Cycles; (c) premiums for any optional credit life insurance you may decide to obtain through us; and (d) an amount equal to the amount by which your Loan Account Balance exceeds your Credit Limit.

    You can pay off all or any part of what you owe at any time. However, so long as you owe any amount, you must continue to make the Minimum Payment. During the Draw Period the Minimum Payment will not reduce the principal outstanding on your Line of Credit.

    **(B.) REPAYMENT PERIOD.** During the Repayment Period, the Minimum Payment will be an amount equal to the accrued and unpaid finance charges, late charges and other charges authorized by this Agreement, including, without limitation, any expenses or advances incurred by us under the Security Instrument, plus 0.8333% of the Loan Account Balance outstanding at the end of the Draw Period. During the Repayment Period, payment of the Minimum Payment only may not fully repay your Loan Account Balance. If paying the Minimum Payment will neither reduce nor fully repay your Loan Account Balance, you will then be required to pay the entire balance in a single balloon payment on the Maturity Date shown above. We are not obligated to refinance any portion of that indebtedness, but will consider your request to do so. You must be prepared to repay the full amount due upon the expiration of this Agreement. If you refinance this Account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

11. **APPLICATION OF PAYMENTS.** We will apply all payments which we receive from you in the following order: to pay (a) amounts due under the Security Instrument to secure the amounts advanced under your Account and to protect our security; (b) any escrow payments, if we require such payments under the Security Instrument; (c) any late charges; (d) any other fees and charges other than finance charges; (e) accrued and unpaid finance charges; and (f) any unpaid principal balance.

12. **PREPAYMENT.** You may repay all or any part of your outstanding Loan Account Balance, at any time, without penalty. During the Draw Period, any amounts that you repay will subsequently be available to you for advances, subject to your Credit Limit and other limitations in this Agreement. However, so long as you owe any amount you must continue to make your periodic Minimum Payment. Even if the entire outstanding Loan Account Balance has been repaid, the Account will remain open for future advances during the Draw Period, until you or your agent

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding
Page 4 of 10

GPMWD0089255046140

79333MI (06/02) (Rev. 04/03)

instructs us in writing to close the Account. The Security Instrument will remain in effect for all such future advances under your Account.

13. **ADDITIONAL REPAYMENT TERMS.** If you fail to make a payment, we may, but are not required to, advance money to you to make the payment. All of the terms of this Agreement would apply to such an advance.

You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic Minimum Payment. Even if you pay more than the Minimum Payment, this does not affect your obligation to pay at least the Minimum Payment on subsequent payment due dates.

14. **SET-OFF.** You agree that we may set-off any amount due and payable under the terms of this Agreement against your right to receive money from us, unless prohibited by applicable law. For example, our right of set-off does not apply to an Individual Retirement Account; other tax-deferred retirement accounts; or federal benefit, wage, salary and retirement payments held in an electronic transfer account (ETA). In addition, our right of set-off does not apply to an account or other obligation if your rights arise only in a representative capacity or if you can obtain credit under this Agreement by using a credit card.

Your right to receive money from us includes any deposit or share account balance you have with us; any money owed to you on an item presented to us or in our possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Agreement" means the total amount which we are entitled to demand payment of under the terms of this Agreement at the time we set-off.

15. **CHANGING THE TERMS OF THIS AGREEMENT.** Generally, we may not change any term of this Agreement. However, we may change a term in the following circumstances: (a) we may prohibit additional extensions of credit or reduce your credit limit during the period that the maximum **ANNUAL PERCENTAGE RATE** is reached; (b) we may make specified changes that you have specifically agreed to in writing; (c) we may make changes that unequivocally benefit you throughout the remainder of the Plan; (d) we may make insignificant changes to the terms of this Agreement; or (e) if this is a variable rate plan, we may change the Index and Margin if the original Index described in this Agreement is no longer available. Any new index will have a historical movement similar to the original Index, and, together with a new margin, will result in an interest rate substantially similar to the rate in effect at the time the original Index became unavailable.

If we are required to send notice of a change in terms, we will send the notice to your address listed in this Agreement.

16. **ADDITIONAL CHARGES.** You agree to pay the following additional charges pursuant to your Line of Credit:

- Late Fee. A late charge on any payment not paid within 15 days of the payment due date of 5% of the payment or U.S. $5.00, whichever is greater;

- Annual Membership Fee. A non-refundable annual fee of $ **0.00** for the privilege of receiving credit under this Plan. This fee will be added to your Loan Account Balance on a yearly basis;

- Termination Fee   $ **0.00**;

- (Other) See Fee Schedule

17. **INSURANCE.** You must maintain on the Property a homeowner's policy of casualty and liability insurance and flood insurance, if applicable, in such amount(s) and for such period(s) of time as we may require. To open your Account, you must provide us with written proof, such as a current certificate of insurance, showing the required

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding
Page 5 of 10

GPMWD00892550 46140

79333MI (06/02) (Rev. 04/03)

insurance coverage on the Property, as well as an endorsement of such policy in favor of us. In addition, the policy must require that your insurance company provide us with at least fifteen (15) days written notice of any change in insurance coverage or of cancellation of your policy. We may refuse to honor checks or to make other advances or transfers of funds under the Account until we receive satisfactory evidence with respect to these items. You may purchase insurance from anyone you want who is acceptable to us. The Security Instrument more fully describes your insurance obligations.

18. **TERMINATION AND ACCELERATION.** You will be in default of this Agreement, and we can terminate your Account and require immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges if any of the following occur: (a) you engage in fraud or material misrepresentation in connection with any phase of this Line of Credit, (b) you fail to meet the repayment terms of this Agreement for any outstanding balance; or (c) your action or inaction adversely affects the Property, our security interest or any other right that we have in the Property, including, but not limited to: (i) failure to maintain required insurance on the Property; (ii) the sale, transfer, conveyance, or encumbrance of the Property in violation of the Security Instrument; (iii) failure to maintain the Property or use of the Property in a destructive or illegal manner; (iv) commission of waste; (v) failure to pay taxes on the Property or otherwise act or fail to act and thereby cause a lien to be filed against the Property that is senior to the lien of the Security Instrument; (vi) your death, if you are solely obligated under this Agreement, or if the death of one of several Borrowers under this Agreement causes our security to be adversely affected; (vii) the Property is taken through eminent domain; (viii) a judgment is filed against you and subjects you and the Property to action that adversely affects our interest; (ix) a prior lienholder forecloses on the Property and as a result, our interest is adversely affected; or (x) you move out of the dwelling and our security interest is thereby adversely affected.

The Security Instrument also describes how and under what conditions you may be required to make immediate payment of the entire outstanding Loan Account Balance, plus accrued interest and other charges you owe under this Agreement. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **REMEDIES.** We may terminate your Line of Credit, require you to pay the entire outstanding Loan Account Balance in one payment, charge you a termination fee (if provided for in this Agreement), and charge you any other fees related to the collection of the amount owing if you are in default in any manner described above. Furthermore, in that instance we may also take any other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance. If you fail to pay the Loan Account Balance after notice and demand thereof, and as required by applicable law, we may foreclose the Security Instrument and sell the Property. We can elect to exercise or delay enforcement of any of our rights under this Agreement and/or the

20. Security Instrument without losing any such rights. If we elect not to exercise or enforce any of our rights, such election shall not be deemed a waiver of any of those rights. If we elect to terminate this Plan and accelerate the amounts owing on your Account, we may use our right to set-off, unless prohibited by applicable law.

20. **SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT.** We may temporarily prohibit you from obtaining additional advances or reduce your Credit Limit during any period in which: (a) the value of the dwelling that secures this Line of Credit declines significantly below the dwelling's appraised value for purposes of this Plan; (b) we reasonably believe you will not be able to fulfill the repayment obligations because of a material change in your financial circumstances; (c) you are in default of any material obligation of this Agreement, or any agreement securing this Agreement; (d) a government action prevents us from imposing the Annual Percentage Rate provided for in this Agreement; (e) the priority of our security interest is adversely affected by a government action to the extent that the value of the security interest is less than 120% of the Line of Credit; (f) the Annual Percentage Rate corresponding to the daily periodic rate reaches the maximum rate allowed under this Agreement; or (g) we have been notified by a regulatory agency that continued advances constitute an unsafe and unsound business practice.

In the event that we suspend your right to additional advances or reduce your Line of Credit, we will send you notice of our decision to do so at the address listed in this Agreement. If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this Plan and you believe that your situation has changed, you must request that we re-evaluate your situation in order to reinstate your privileges.

21. **FINANCIAL AND CREDIT INFORMATION.** You will promptly provide us with personal financial information, including a financial statement, if we should request it for the purpose of reviewing your Account or updating your credit file. We may request such information from time to time, whether or not we have reason to believe that there are any problems with your Account or with your creditworthiness. Any advances or transfers made under the Account are made in reliance upon the information that you provide us, which you represent and warrant to us is true and accurate as of the date such information is given. You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the person or agencies to whom we make these inquiries to supply us with the information we request.

22. **ATTORNEYS' FEES.** If you default on this Agreement, you agree to pay all of our expenditures and expenses which may reasonably be incurred in collecting and enforcing this debt, including reasonable attorneys' fees.

23. **GOVERNING LAW AND ENFORCEABILITY.** Federal law applies to certain aspects of this Agreement. This Agreement will be governed by the laws of the jurisdiction in which the Property is located, except to the extent federal law applies. If any part of this Agreement is determined to be invalid, then we may enforce the remainder of this Agreement as if the invalid provision did not exist.

24. **TERMINATION OF AGREEMENT.** Your Account will automatically terminate on the earlier of the Maturity Date shown above or on the date we give you notice of the termination as the result of an occurrence of a default (as described in Section 18). Upon termination of the Account, the entire Loan Account Balance then outstanding, with accrued interest and any fees and charges owing on the Account, will be due and payable in full on that date. You can terminate this Agreement by written notice of termination of this Agreement and a request for a discharge of the Security Instrument mailed or delivered to us at any time. Your notice of termination will be effective on the first business day after we receive it and the entire principal balance outstanding on your Account, plus interest accrued thereon, together with fees and charges owing on the Account, will be due and payable in full on that date.

25. **JOINT AND SEVERAL LIABILITY; TERMINATION OF ACCOUNT.** If this Account is jointly held, each of you authorizes any other Borrower, on his or her request alone and without the consent or knowledge of the other(s), to cancel the Line of Credit, to request and receive advances of principal under your Line of Credit Account, to take any action or to give or receive any notice under this Agreement, and to take all other actions in connection with this

Home Equity Line of Credit Agreement and Promissory Note – Michigan (Secondary Lien)
GreenPoint Mortgage Funding
Page 7 of 10

79333MI (06/02) (Rev. 04/03)

