Robert Sweeting, Pro Per
7071 Warner Ave., Unit F-81
Huntington Beach, CA 92647
Ph. 562-394-8218

Claimant Robert Sweeting in Pro Per
UNITED STATES BANKRUPTCY CO8URT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RESIDENTIAL CAPITAL, LLC., et al.,<br><br>*Debtors*. | Case No.: 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>OPPOSITION TO DEBTOR GMAC MORTGAGE, LLC'S OBJECTION TO PROOFS OF CLAIM FILED BY ROBERT SWEETING (CLAIMS NOS. 1360 and 1361); DECLARATION OF ROBERT SWEETING; OBJECTIONS TO DECLARATION OF LAUREN GRAHAM DELEHEY. |

Claimant Robert Sweeting hereby opposes the Notice of Debtors' Objection to Proofs of Claim as follows.

## I. STATEMENT OF FACTS

Claimant filed two claims as against the bankruptcy estate of GMAC Mortgage. There have been four lawsuits between the Claimant and GMAC.

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)  Page 1



1. On March 20, 2008, Claimant instituted Orange County Superior Court Case No. 30-2008-00104237, entitled Sweeting v. Kishaba, hereinafter referred to as the wrongful foreclosure action. (Exhibit 1.)

2. On November 11, 2008, GMAC filed an Unlawful Detainer action as against Claimant in Orange County Superior Court, Case No. 30-2008-00221178. (Exhibit 2.)

3. On July 1, 2009, GMAC brought another Unlawful Detainer. Orange County Superior Court Case No. 30-2009-00280569 (Exhibit "3.") It dismissed the action.

4. On September 21, 2010, Claimant filed an action against GMAC for defamation arising out of a false credit report which it refused to remove or amend. Orange County Superior Court Case No. 30-2010-00410079-CU-DF-CJC. This case is on appeal to the California Court of Appeal, Fourth District Court of Appeal, Division Three, Docket No. G045198. The Opening Brief was filed on November 29, 2011. It is fully briefed, argued and awaiting the lift of the bankruptcy stay. (See GMAC Mortgaget's Exhibit M.) From the questions posed by the appellate panel, Claimant anticipates reversal.

The first three cases relate to Claim 1360 (Wrongful Foreclosure, Wrongful Eviction.) The last action relates to Claim 1361 – false credit report. The first action involves a wrongful foreclosure and eviction of your Claimant by fraud upon the Orange County Superior Court. The second involves the wrongful reporting by GMAC Mortgage of a $16.7 million debt on Claimant's credit report and refusal to remove same where Claimant does not owe GMAC any money. In part because of this bankruptcy, it has been sitting on Claimant's credit report since 2009.

FACTS RELATED TO CLAIM 1360

At ¶4 of the Declaration in Support of the "Claimant was a borrower under a loan (the "**Loan**") evidenced by a note (the "**Note**") in the principal amount of $773,500.00 executed on December 8, 2006 in favor of Fremont Investment & Loan ("**Fremont**") which was secured by a

Pg 3 of 17

Deed of Trust (the "**Deed of Trust**") on Claimant's home located at 16077 Crete Lane, Huntington Beach, California (the "**Property**").

**The True Facts**: Claimant's signature was forged on documents required to acquire the alleged loan. Further, the loan package was made up of documents from multiple attempts to get Claimant to agree to the alleged loan. In other words, the alleged Loan was a forgery.

Further, even if the loan was enforceable, the terms of the loan set forth in the Note are unlawful. Under California law the loan is usurious. *Cal. Const. art. XV, § 1*, provides that the maximum interest rate that may be charged on loans in writing for use primarily for personal, family, or household purposes is 10 percent per annum. Exempted from the interest rate limitation are any loans, made, or arranged by any person licensed as a real estate broker by the State of California and secured in whole or in part by liens on real property. Here, the loan was arranged by an unlicensed loan broker, International Mortgage, which was not entitled to act as a mortgage broker, having been suspended and "defroked" by the State of California prior to doing any work on the subject loan. (It had no bond, was found to have commingling and stolen of client funds prior to undertaking to make the subject loan.) (Order suspending License attached as Exhibit 4.)   The interest rate on the Loan was over 10%. Thus, the loan was usurious. Under California law, when a loan is usurious, the creditor is entitled to repayment of the principal sum only. He is entitled to no interest whatsoever. *Winnett v. Roberts*, 179 Cal. App. 3d 909 (1986). Since the term of the loan was for 480 months, once the interest rate is adjusted to 0%, the monthly payments should be $1,611 per month. Claimant made at least $30,000 in payments on the loan between February 2007 and August 2007 for a total of 18 months of payments - through August 2008. (Exhibit "5.") Fremont was ordered out of business in February 2007 and failed to post payments.

In addition, there was a major breach of contract by the lender, Fremont Investment and Loan, in failing to deliver to Claimant the proceeds of the loan. Claimant should have received

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                              Page 3

approximately $175,000 above and beyond the payoff of Claimant's old home loan. from the proceeds of the subject Loan.[1] (Estimate attached as Exhibit 6.) These funds were needed to support Claimant's profitable 60 year old business. Instead, Claimant received $25,000. (Exhibit 7.) The rest of the funds were stolen by the unlicensed escrow company including the first mortgage payment, was to be made from escrow. (Exhibit 8)

Typically, under California law, the escrow company is the agent of homeowner. However, Cal Fin Code § 17200 provides, "It shall be unlawful for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." It is Claimant's contention that the delivery of the funds to and the theft of those funds is either so major a breach that there was no right to foreclose or that the undelivered funds should have been counted towards payments.

Subsequently, Claimant made over $20,000 in payments to Fremont which were improperly posted to a "suspense account" and Claimant made one payment to GMAC and attempted to make a second payment which was returned to Claimant at which point Claimant filed the underlying lawsuit. (See payments attached as Exhibit 5.)

If the loan is found to be valid and enforceable under California law, then Claimant should be found to have made over $200,000 in payments, or about 9 years worth at the time of the wrongful foreclosure sale, less than 2 years after the loan, if any, was made.

In addition, because of the theft of the funds, Claimant was unable to keep his business in operation, which was the source of repayment of the loan.

Finally, the underlying lawsuit on Claim 1360 continues in the Orange County Superior Court. The same issues are still being litigated as against Mortgage Electronic Registration

---

[1] This includes all proceeds of the loan in excess of the money Claimant owed on his old mortgage plus a $35,000 yield spread premium earned by International Mortgage/Escrow. International was not entitled to any fees or points under California law because they were unlicensed.

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                                Page 4

System ("**MERS**"), which has an indemnification agreement with GMAC, and Chicago Title Insurance Company, which forwarded the funds to the unlicensed International Escrow.

At Paragraph 6 of the Declaration in support of this Objection to Claims 1360 and 1361, the Declarant states,

> "On or about September 22, 2008, as a result of Claimant's continuing default under the Loan, GMAC Mortgage caused the Property to be sold at a trustee's sale, at which GMAC Mortgage was the winning bidder. The Property was later sold by GMAC Mortgage to a third party purchaser.

**The True Facts:** This paragraph contains two facts, that the foreclosure was the result of Claimant's "continuing default" under the Loan. Above, Claimant details the reasons he was not in default on the Loan.

The second claim is that "GMAC was the winning bidder." GMAC committed FRAUD either in obtaining judgment in the underlying wrongful foreclosure action or in two unlawful detainer actions and in this bankruptcy court. Specifically, GMAC claims in the above paragraph and in the two unlawful detainer actions that it was the title holder and purchased the property at the Trustee's Sale. This is different than the facts it claimed in its Summary Judgment Motion in the Wrongful Foreclosure action which is the one primarily related to Claim 1360. In the declaration of Scott Zeitz in support of GMAC's Summary Judgment Motion, Mr. Zeitz, as custodian of record for GMAC, states that GMAC was only the loan servicer for Truman Capital Investment Fund and that the deed giving it title was erroneous. See Declaration of Scott Zeitz in Support of GMAC's Summary Judgment Motion at ¶ 5 and ¶ 24. (Exhibit 9.) There, GMAC claimed it never had legal title, but only gained title by accident, and that Truman Capital was the true owner after the foreclosure sale. GMAC claimed it owed no duty to the borrower, your Claimant, but only to Truman Capital on whose behalf it was allegedly acting as the "loan processor."

12-12020-mg    Doc 5090    Filed 09/17/13    Entered 09/18/13 10:12:13    Main Document
Pg 6 of 17

After winning the Summary Judgment Motion based on a claim it was only the loan servicer for Truman Capital, GMAC allowed a successor title holder, Island Source II Ltd., to use GMAC's Judgment in the first Unlawful Detainer to evict Claimant from his home. This is another basis for Claim 1360.

Claimant was notified in early August 2007 that GMAC took over the processing of the Loan. GMAC immediately sent to Claimant a Notice of Default. Within days of being notified by GMAC that it was the assignee of the loan, Claimant wrote GMAC and gave it a chance to correct any legal deficiencies, as outlined and required by the Office of the Comptroller of the Currencies and the FDIC. (See letter attached as Exhibit 16.) GMAC refused. As a result, GMAC is liable for all of the actions of the companies involved in this loan.

On or about September 10, 2008, the Court dismissed the underlying Quiet Title action underlying, based on lack of prosecution because claimant's attorney had abandoned him.

On or about October 18, 2008, GMAC allegedly perfected its foreclosure of the subject property based on a Trustee's Deed upon Sale. (Exhibit "10.")

Less than one month later, on November 11, 2008, GMAC filed an Unlawful Detainer action as against Claimant in West Orange County Superior Court, Case No. 30-2008-00221178. (Exhibit "2.") In that UD, GMAC claimed to be the owner of the subject Property.

On or about December 24, 2008, Claimant filed a Motion to Set Aside Dismissal of this Quiet Title Action. The Motion was scheduled to be heard on January 28, 2009.

GMAC served its Summary Judgment motion in the Unlawful Detainer ("**UD**") action on or about December 31st, so that Claimant was unable to retain counsel to defend the action. Instead of filing an Opposition, Claimant attempted to file a Motion to Stay, Dismiss or in the alternative, to consolidate the UD with the Quiet Title action. It was rejected as not timely filed, although the facts set forth therein would constitute a defense to the Summary Judgment Motion.

On January 9, 2009, Summary Judgment was granted in the UD.

In early February 2009, the action underlying Claim 1360 was reinstated.

1   On or about February 5, 2009, GMAC executed a Grant Deed transferring title to the
2   subject Property to TCIF REO GCM California, LLC. (Exhibit "11.") This was done
3   immediately after this case underlying Claim 1360 was reinstated.
4   Despite a total lack of title, the pendency of this action, the fact that title, when in
5   GMAC's name, was gained through fraud, the fact that GMAC refused to apply payments which
6   had been properly made to and stolen by Fremont, GMAC's predecessor in interest, despite
7   Claimant's heroic attempts to cure the non-existent default, multiple felonies committed in
8   making the loan, embezzlement, fraud in the inducement of the loan, all committed by the
9   mortgage broker, escrow company, Fremont, GMAC and just about everyone else involved, on
10  July 1, 2009, GMAC again brought another Unlawful Detainer. OCSC Case No. 30-2009-
11  00280569 (Exhibit "3.") GMAC again swore under penalty of perjury that it was the owner of
12  the property.
13  On or about July 6, 2009, GMAC's attorney sent to Claimant an e-mail in this matter
14  admitted that when it started the new UD, it did not have title. (Exhibit "12.") It subsequently
15  dismissed the case.
16  On March 18, 2011, Claimant was evicted from his home based on an assignment of the
17  first UD Judgment to Island Source II, the title holder on that date. (Exhibit "13.")
18
19  FACTS CONCERNING CLAIM 1361.
20  This claim arises from a report by GMAC to the credit reporting entity Experian that
21  Claimant owed it $16.7. (Exhibit "14.") For the reasons discussed below, Claimant did not owe
22  GMAC any money. Claimant discovered the report in or about 2008. He spoke with GMAC's
23  attorney, Samantha Lamm, and asked her if she could do anything to get GMAC to remove the
24  report. She laughed at Claimant. Claimant then made several requests to Experian to investigate
25  and remove the report. GMAC refused. These claims did not become ripe for prosecution until
26
27
28  Opposition to Debtor GMAC's Objection to Proofs of Claim
    filed by Robert Sweeting (Claims 1360 and 1361)                                      Page 7

after GMAC was granted summary judgment in the wrongful foreclosure action because the requests to Experian were not made until after the grant of summary judgment.

## REASONS TO ALLOW CLAIM 1360 TO PROCEED

GMAC objects to Claim 1360 on the grounds of res judicata because of judgment entered in its favor in Claimant's quiet title/wrongful foreclosure action entitled Sweeting v. Kishaba. Claimant has three grounds for not dismissing the claim: 1) the underlying judgment was procured by fraud and that court action is still being prosecuted which may allow claims against GMAC to be reasserted on the grounds of contempt of court; 2) GMAC abused the process of the Orange County Superior Court in order to allow a successor in title, Island Source II, to evict Claimant by allowing it to use its fraudulent judgment in the first Unlawful Detainer; and 3) Claimant recently discovered that GMAC owns Executive Trustee Service, the company which performed the physical foreclosure, when a review of the GMAC file would indicate there were substantial problems with the Loan; and 4) MERS, which is still a defendant in the wrongful foreclosure action, has an indemnity agreement with GMAC.

A.   **The Underlying Judgment was Procured by Fraud:**

A bankruptcy court is also a court of equity and may exercise equity powers in bankruptcy proceedings to set aside fraudulent claims, including a fraudulent judgment where the issue of fraud has not been previously adjudicated. *Heiser v. Woodruff*, 327 U.S. 726 (U.S. 1946). Since the Bankruptcy Act authorizes a proof of claim based on a judgment, such a proof may be assailed in the bankruptcy court on the ground that the purported judgment is not a judgment because of want of jurisdiction of the court which rendered it over the persons of the parties or the subject matter of the suit, or because it was procured by fraud of a party. *Heiser v. Woodruff*, 327 U.S. 726 (U.S. 1946). This equity power includes the ability to revisit claims

under the doctrine of unclean hands. Cf. *Valencia v. Rodriguez (In re Rodriguez)*, 235 Fed. Appx. 383 (9th Cir. Cal. 2007).

GMAC objects to Claim 1360 on the grounds of res judicata because of judgment entered in its favor in Claimant's quiet title/wrongful foreclosure action entitled Sweeting v. Kishaba. Judgment was based in part on a claim by GMAC that it never owned the Loan and was merely the loan processor; that it never held valid title to the subject property and was only on title as the result of a mistake in the foreclosure process that Truman Capital actually acquired the property at that time. As discussed above, this judgment was the result of a fraud on the Court.

About eight (8) months before filing its summary judgment motion, GMAC obtained a judgment in an unlawful detainer action in January 2009 based on a declaration that it was the legal title holder by a purchase at the foreclosure sale. After title was transferred to Truman Capital, it again brought an unlawful detainer action declaring under penalty of perjury that it owned the property. Finally, Declarant Lauren Delehey declares in support of the present motion that GMAC was the winning bidder at the trustee's sale. Your Claimant can neither prove nor disprove these claims because he has never seen the foreclosure file. The foreclosure company is Executive Trustee Services. It was (and may still be) owned by GMAC and has refused to produce the foreclosure file in that it part of the Residential Capital, LLC bankruptcy. On October 26, 2012, Claimant was threatened by the attorney for GMAC and MERS in the underlying wrongful foreclosure action with contempt should he pursue the foreclosure file. (Exhibit 15.)

The underlying action has not been fully litigated. Two entities remain, MERS (Mortgage Electronic Registration System) and Chicago Title. Judge Wilkenson retired and is replaced by Judge Colaw who has a better understanding of the legal principals of the case. Based in part upon the assertion by Ms. Delehey, in the moving papers that GMAC really did purchase the property at the foreclosure sale, Claimant may attempt to set aside GMAC's judgment as based on contempt and fraud on the Court.

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                               Page 9

B.  **Abuse of Process by GMAC:**

Should the Court agree that GMAC *did not* have legal title to the Claimant's home, then it abused the process of the Orange County Superior Court to evict Claimant. "[T]he essence of the tort [of abuse of process is] ... misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." (Meadows v. Bakersfield S. & L. Assn. (1967) 250 Cal. App. 2d 749, 753 [59 Cal. Rptr. 34].) To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings. (Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc. (1986) 42 Cal.3d 1157, 1168 [232 Cal. Rptr. 567, 728 P.2d 1202] (Oren Royal Oaks Venture).) *Rusheen v. Cohen*, 37 Cal. 4th 1048 (Cal. 2006).

The underlying wrongful foreclosure action was temporarily dismissed because Claimant had been abandoned by his retained counsel. While the underlying action was dismissed and with a Motion to Set Aside the Dismissal (Code of Civ. Pro. § 473), GMAC rushed the Claimant's home into foreclosure. It then brought its first unlawful detainer action. It filed a summary judgment motion and served it on December 31, 2008. In California, summary judgment motions in unlawful detainer actions may be heard on 5 days notice. (Cal. Code of Civ. Pro § 1170.7.) The motion was heard on January 9, 2009. Claimant was unable to retain counsel due to the holidays.

In December 2010, GMAC assigned to Island Source II its rights under the now two year old judgment which was based on a fraudulent representation that GMAC had title. Claimant was subsequently evicted. Claimant contends that GMAC abused the process of the Orange County Superior Court in order to allow a successor in title, Island Source II, to evict Claimant by allowing it to use its fraudulent judgment in the first Unlawful Detainer to evict Claimant.

1  C.  <u>Claimant recently discovered that GMAC owns Executive Trustee Service, the company</u>
2  <u>which performed the physical foreclosure, when a review of the GMAC file would</u>
3  <u>indicate there were substantial problems with the Loan</u>:
4  This is a loan which involved MERS. "MERS' primary function is to act as a
5  document custodian. Major players in the mortgage lending industry created MERS to
6  simplify the process of transferring mortgages by avoiding the need to re-record liens –
7  and pay county recorder filing fees – each time a loan is assigned. "Instead, servicers
8  record loans only once and MERS' electronic system monitors transfers and facilitates the
9  trading of notes …" Currently over half of all new residential mortgage loans in the
10 United States are registered with MERS and recorded in county recording offices in
11 MERS' name. This has reduced transparency in the mortgage market in two ways. First,
12 consumers and their counsel can no longer turn to the public recording systems to learn
13 the identity of the holder of their note. Today, county recording systems are increasingly
14 full of one meaningless name, MERS, repeated over and over again. But more
15 importantly, all across the country, MERS now brings foreclosure proceedings in its own
16 name – even though it is not the financial party in interest.
17 MERS Inc. is a Delaware corporation and its actions are governed by its bylaws
18 and the Delaware General Corporation Law (DGCL). Under the DGCL, there is no
19 requirement that an officer of a corporation be an employee of that corporation. See *Haft*
20 *v. Dart Group Corp.*, 841 F. Supp. 549, 572 (D.Del. 1993). In addition, under the DGCL,
21 there is no requirement that individuals serving as officers of a corporation be employed
22 or compensated by that corporation.
23 Under Delaware law, a corporation may by board resolution appoint officers to
24 carry out the corporation's business. Del. Code. Ann. Title 8, Sections 122 and 142. In
25 addition, Section 142(a) of the DGCL provides that "any number of offices may be held
26 by the same person unless the certificate of incorporation or bylaws otherwise provide."
27
28 Opposition to Debtor GMAC's Objection to Proofs of Claim
   filed by Robert Sweeting (Claims 1360 and 1361)                                    Page 11

Since MERS Inc. has no employees, a majority of the actions taken by MERS Inc. in its capacity as mortgagee under mortgages and/or deeds of trust are taken by designated officers commonly referred to as "certifying or signing officers." ***The signing officers are generally officers of MERS' members that are responsible for carrying out servicing functions on behalf of such MERS members.***

The MERS Inc. signing officers are appointed pursuant to a corporate resolution, duly adopted pursuant to authority granted by the Board of Directors of MERS Inc. Pursuant to the corporate resolution, these signing officers are appointed as assistant secretaries, assistant vice presidents and vice presidents of MERS Inc. and their authority is limited to: (1) executing lien releases, (2) executing mortgage assignments, (3) executing foreclosure documents, (4) executing proofs of claims and other bankruptcy related documents (e.g., motions for relief of the automatic stay), (5) executing modification and subordination agreements needed for refinancing activities, (6) endorsing over checks made payable to MERS Inc. (in error) by borrowers, (7) taking such other actions and executing documents necessary to fulfill the MERS member's servicing duties, and (8) taking such ministerial actions and, in such ministerial capacity, executing and delivering all such instruments and documents as the officer(s) of MERS Inc. deem necessary or appropriate in order to effectuate fully the purpose of each and all of the foregoing powers, in each case only with respect to the loan owned by the related member.[2] In order to be eligible for appointment as a signing officer of MERS Inc., a person must demonstrate a basic knowledge of the MERS® System and pass an annual certifying examination administered by MERSCORP Holdings.

---

[2] Exercise of authority granted under clauses (3) and (4) is subject to rule changes effective July 22, 2011, limiting the member's ability to initiate foreclosures and make filings in bankruptcy proceedings in the name of MERS Inc.

---

Under California law, the named beneficiary under the loan, in this case MERS, must authorize the foreclosure. Here, that "officer" was employed either by GMAC or Executive Trustee Services and merely robo-signed the authorization to foreclose on Claimant's home without adequate review of GMAC's file. Had there been a proper review, the MERS signing officer would have uncovered the letter from Claimant to GMAC attached as Exhibit 16 and been aware that there were problems with the loan which made the foreclosure unlawful.

D. **MERS, Which Is Still a Defendant in the Wrongful Foreclosure Action, Has an Indemnity Agreement with GMAC**:

MERS has an indemnity agreement with all of its members. (Exhibit 17.) This includes GMAC Mortgage, which is one of the 15 stockholders in MERS. Your Claimant is a foreseeable and intended beneficiary of that indemnification agreement. As such, he continues to have a claim against GMAC.

## REASONS TO ALLOW CLAIM 1361 TO PROCEED

This is a claim for specific performance and monetary relief arising from a report by GMAC to credit reporting agencies that your Claimant owes it $16.7 million. GMAC continues to report this debt, and if Claimant requests again of Experian or another credit reporting agency that GMAC removes this false report, it will have committed a new tort which is not within the pervue of this Court. Since this claim and the underlying lawsuit involves specific performance from GMAC in ordering it to remove this false report under the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and the California equivalent at Civ. Code § 1785.25(a), it should be allowed to proceed. The debtor asserts the issues are res judicata; however, an appeal is pending before the California Fourth District Court of Appeal, Division 3. A decision is ready to issue, but has not due to the stay issued by this Court. The underlying appeal involves issues of California law which are unique to California (specifically, California's Primary Rights Theory

of liability is used by no other state), and should be allowed to continue in the California court system. Your Claimant requests the stay be lifted and the matter be allowed to proceed in the California courts forthwith.

This section of the brief will review the law concerning non-dischargability of malicious and willful injury and the fact that Claimant does not owe any debt to GMAC as it has reported and re-reported to Experian and other credit reporting agencies.

A. The Debt is Not Dischargable:

11 U.S.C.S. § 523(a)(6) excepts from discharge debts for willful and malicious injury by the debtor to another entity or to the property of another entity. *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282 (Bankr. C.D. Cal. 2006). Under 11 U.S.C.S. § 523(a)(6), the willfulness element requires that the debtor intended the consequences of his action, and not just the action itself. An injury is willful when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to result from his conduct. The injury inflicted by the debtor must also be "malicious," which requires that the debtor intentionally perform a wrongful act which necessarily causes injury and which is done without cause or excuse. Although malice may be inferred from the act, it must first be established that the injury was caused "willful[ly]." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282 (Bankr. C.D. Cal. 2006)

Non-bankruptcy law determines the validity of a creditor's claim. See, e.g., Grogan v. Garner, 498 U.S. 279, 283-84, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu), 410 F.3d 591, 595 (9th Cir. 2005).

Here, GMAC has been reporting to credit reporting agencies for years that Claimant owes it $16.7 million. In response to repeated requests to Experian in late 2008 and 2009 to expunge the false report, GMAC reported the debt to be correct. In August 2009, your Claimant requested of GMAC's attorney Samantha Lamm that she have GMAC remove the report because it was

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                      Page 14

false. Ms. Lamm laughed at Claimant. These facts show malice and willfulness. Thus, this claim for damages is not dischargable.

B.     Claimant does not owe any money to GMAC under any Legal Theory.

Under one theory asserted in the GMAC's Summary Judgment Motion in *Sweeting v. Kishaba*, Appellant owes nothing to GMAC. The primary thrust of GMAC's Summary Judgment motion in the *Kishaba* matter was that it never had legal title to your *Appellant's* now foreclosed upon home. In its summary judgment motion, GMAC also asserted it was merely the loan processor. Since it did not, and never did, own the property or the loan, your appellant owed no money to GMAC. Thus the report to credit agencies of the debt being owed to GMAC in the amount of $16.7 million is false.

Under a second theory, GMAC actually owned the Loan.

1.     The Single Action Rule Prevents Multiplicity of Actions Against Defaulting Mortgagors (Cal. Code Civ. Pro. §726(a))

Cal. Code of Civ. Pro. ("CCP") 726(a) states: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter. In the action the court may, by its judgment, direct the sale of the encumbered real property or estate ... , and the application of the proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due Claimant, including, where the mortgage provides for the payment of attorney's fees, the sum for attorney's fees as the court shall find reasonable, not exceeding the amount named in the mortgage."

CCP § 725a makes § 726(a) applicable to deeds of trust as well as mortgages. "The beneficiary or trustee named in a deed of trust or mortgagee named in a mortgage with power of sale upon real property or any interest therein to secure a debt or other obligation, or if there be a successor or successors in interest of such beneficiary, trustee or mortgagee, then such successor or successors in interest, shall have the right to bring suit to foreclose the same in the manner and

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                                    Page 15

subject to the provisions, rights and remedies relating to the foreclosure of a mortgage upon such property."

Because the main purpose of Section 726(a) is to protect a debtor against multiplicity of actions, the lender (beneficiary) is forced to elect either a judicial foreclosure or a trustee sale. See *Bank of Italy Nat'l Trust & Sav. Ass'n v Bentley* (1933) 217 Cal 644. (Mortgages, Deeds of Trust, and Foreclosure Litigation, Fourth Ed., CEB, section 4.5.)

2. CCP § 580d Bars Deficiency Judgments after Nonjudicial Foreclosures (Trustee Sales)

CCP § 580d significantly states: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."

Thus, under the theory that GMAC actually owned the Loan at some point, its reliance on the non-judicial foreclosure process extinguishes the debt.

There may be a third theory, that this is a report of the entire debt, including interest, owed by Claimant to someone. The initial debt was for $773,500. Even adding in all of the interest owed on the loan for 30 years, if the loan rate was not usurious, the total debt would only be about $2.5 million.

## CONCLUSION

Claim 1360 should not be dismissed because it is the result of a fraud upon the Orange County Superior Court or because the declarant in this Court is committing a fraud. GMAC either owned the Loan or it did not. Yet it changes its declarations to suit whatever best fits its needs at the moment.

Claim 1361 should not be dismissed because it involves a willful and malicious violation of both California and Federal Law resulting in ongoing damage to Claimant's credit. Further, the Bankruptcy Court stay should be lifted so that the California Court of Appeal can render its opinion and allow the matter to proceed to judgment in the California Court system.

Respectfully submitted:

Dated: September 16, 2013

*/s/ Robert Sweeting*

Robert Sweeting, Claimant in Pro Per

[C:\document\Hertz, Steven\Sweeting, Robert\GMAC BK\Opposition to Notice of Objection to Claims.wpd]

---

Opposition to Debtor GMAC's Objection to Proofs of Claim
filed by Robert Sweeting (Claims 1360 and 1361)                                                                                    Page 17