```
1  Robert Sweeting, Pro Per
   7071 Warner Ave., Unit F-81
2  Huntington Beach, CA 92647
   Ph. 562-394-8218
3
4
5  Plaintiff Robert Sweeting in Pro Per
6
7
8                    UNITED STATES BANKRUPTCY CO8URT
9                      SOUTHERN DISTRICT OF NEW YORK
10
```

| In re:<br><br>RESIDENTIAL CAPITAL, LLC., et al.,<br><br>*Debtors.* | Case No.: 12-12020 (MG)<br><br>Chapter 11<br><br>Jointly Administered<br><br>DECLARATION OF ROBERT SWEETING in OPPOSITION TO DEBTOR GMAC MORTGAGE, LLC'S OBJECTION TO PROOFS OF CLAIM FILED BY ROBERT SWEETING (CLAIMS NOS. 1360 and 1361) |
|---|---|

### DECLARATION OF ROBERT SWEETING

I, Robert Sweeting, declare as follows:

1. I am the claimant in regard to Claims 1360 and 1361 filed in these court proceedings. I have personal knowledge of the facts set forth herein and the documents attached hereto are true and correct copies of the originals.

2. There have been four lawsuits between me and GMAC.

   a. On March 20, 2008, I instituted Orange County Superior Court Case No. 30-2008-00104237, entitled Sweeting v. Kishaba, hereinafter referred to as the wrongful foreclosure action. (Exhibit 1.)

---

Opposition to Debtor GMAC's Objection to Proofs of Claim filed by Robert Sweeting (Claims 1360 and 1361)

Page 18

    b.    On November 11, 2008, GMAC filed an Unlawful Detainer action as against me in Orange County Superior Court, Case No. 30-2008-00221178. (Exhibit 2.)

    c.    On July 1, 2009, GMAC brought another Unlawful Detainer against me. Orange County Superior Court Case No. 30-2009-00280569 (Exhibit "3.") It dismissed the action.

    d.    On September 21, 2010, I filed an action against GMAC for defamation arising out of a false credit report which it refused to remove or amend. Orange County Superior Court Case No. 30-2010-00410079-CU-DF-CJC. This case is on appeal to the California Court of Appeal, Fourth District Court of Appeal, Division Three. The Opening Brief was filed on November 29, 2011. It is fully briefed, argued and awaiting the lift of the bankruptcy stay. (See GMAC Mortgaget's Exhibit M.) From the questions posed by the appellate panel, Claimant anticipates reversal.

3.    The first three cases relate to Claim 1360 (Wrongful Foreclosure, Wrongful Eviction.) The last action relates to Claim 1361 – false credit report. The first action involves a wrongful foreclosure on my home and my wrongful eviction by fraud upon the Orange County Superior Court. The second involves the wrongful reporting by GMAC Mortgage of a $16.7 million debt on my credit report and refusal to remove same where Claimant does not owe GMAC any money. In part because of this bankruptcy, it has been sitting on Claimant's credit report since 2009.

FACTS RELATED TO CLAIM 1360

4.    My signature was forged on documents required to acquire the alleged loan. In addition, the loan package was made up of documents from multiple attempts to get me to agree to the alleged loan. In other words, the alleged Loan was a forgery.

5.    Further, even if the loan was enforceable, the terms of the loan set forth in the Note are unlawful. Under California law the loan is usurious. *Cal. Const. art. XV, § 1*, provides

|    |    |
|----|----|
| 1  | that the maximum interest rate that may be charged on loans in writing for use primarily |
| 2  | for personal, family, or household purposes is 10 percent per annum. Exempted from the |
| 3  | interest rate limitation are any loans, made, or arranged by any person licensed as a real |
| 4  | estate broker by the State of California and secured in whole or in part by liens on real |
| 5  | property. Here, the loan was arranged by an unlicensed loan broker, International |
| 6  | Mortgage, which was not entitled to act as a mortgage broker, having been suspended and |
| 7  | "defroked" by the State of California prior to doing any work on the subject loan. (It had |
| 8  | no bond, was found to have commingling and stolen of client funds prior to undertaking |
| 9  | to make the subject loan.) (Order suspending License attached as Exhibit 4.) The |
| 10 | interest rate on the Loan was over 10%. Thus, the loan was usurious. Under California |
| 11 | law, the when a loan is usurious, the creditor is entitled to repayment of the principal sum |
| 12 | only. He is entitled to no interest whatsoever. *Winnett v. Roberts*, 179 Cal. App. 3d 909 |
| 13 | (1986). Since the term of the loan was for 360 months, once the interest rate is adjusted |
| 14 | to 0%, the monthly payments should be $2,148 per month. |
| 15 | 6. I made at least $30,000 in payments on the loan between February 2007 and August 2007 |
| 16 | for a total of 14 months of payments - through April 2008. (Exhibit 5.) |
| 17 | 7. In addition, there was a major breach of contract by the lender, Fremont Investment and |
| 18 | Loan, in failing to deliver to me the proceeds of the loan. I should have received |
| 19 | approximately $175,000 from the proceeds of the subject Loan. (This includes all |
| 20 | proceeds of the loan in excess of the money Claimant owed on his old mortgage plus a |
| 21 | $35,000 yield spread premium earned by International Mortgage/Escrow. International |
| 22 | was not entitled to any fees or points under California law because they were unlicensed.) |
| 23 | (Estimate attached as Exhibit 6.) These funds were needed to support my profitable 60 |
| 24 | year old business. Instead, I received $25,000. (Exhibit 7.) The rest of the funds were |
| 25 | stolen by the unlicensed escrow company including the first mortgage payment, was to be |
| 26 | made from escrow. (Exhibit 8) |

8. Typically, under California law, the escrow company is the agent of homeowner. However, Cal Fin Code § 17200 provides, "It shall be unlawful for any person to engage in business as an escrow agent within this state except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent." It is my contention that the delivery of the funds to and the theft of those funds is either so major a breach that there was no right to foreclose or that the undelivered funds should have been counted towards payments.

9. Subsequently, I made over $20,000 in payments to Fremont which were improperly posted to a "suspense account" and I made one payment to GMAC and attempted to make a second payment which was returned to me at which point I filed the underlying lawsuit. (See payments attached as Exhibit 5.)

10. If the loan is found to be valid and enforceable under California law, then I should be found to have made over $200,000 in payments, or about 9 years worth, at the time of the wrongful foreclosure sale, less than 2 years after the loan, if any, was made.

11. Finally, the underlying lawsuit on Claim 1360 continues in the Orange County Superior Court. The same issues are still being litigated as against Mortgage Electronic Registration System ("**MERS**"), which has an indemnification agreement with GMAC, (Exhibit 17) and Chicago Title Insurance Company, which forwarded the funds to the unlicensed International Escrow.

12. GMAC claims in its moving papers that "GMAC was the winning bidder." GMAC committed FRAUD either in obtaining judgment in the underlying wrongful foreclosure action or in two unlawful detainer actions and in this bankruptcy court. Specifically, GMAC claims in the above paragraph and in the two unlawful detainer actions that it was the title holder and purchased the property at the Trustee's Sale. This is different than the facts it claimed in its Summary Judgment Motion in the Wrongful Foreclosure action which is the one primarily related to Claim 1360. In the declaration of Scott Zeitz in

1. support of GMAC's Summary Judgment Motion, Mr. Zeitz, as custodian of record for GMAC, states that GMAC was only the loan servicer for Truman Capital Investment Fund and that the deed giving it title was erroneous. See Declaration of Scott Zeitz in Support of GMAC's Summary Judgment Motion at ¶ 5 and ¶ 24. (Exhibit 9.) There, GMAC claimed it never had legal title, but only gained title by accident, and that Truman Capital was the true owner after the foreclosure sale. GMAC claimed it owed no duty to the borrower, your Claimant, but only to Truman Capital on whose behalf it was allegedly acting as the "loan processor."

13. After winning the Summary Judgment Motion based on a claim it was only the loan servicer for Truman Capital, GMAC allowed a successor title holder, Island Source II Ltd., to use GMAC's Judgment in the first Unlawful Detainer to evict me from my home. This is another basis for Claim 1360.

14. I was notified in early August that GMAC took over the loan processing. GMAC immediately sent to Claimant a Notice of Default. Within days of being notified by GMAC that it was the handling the loan, I wrote GMAC and gave it a chance to correct any legal deficiencies, as outlined and required by the Office of the Comptroller of the Currencies and the FDIC. GMAC refused. As a result, GMAC should be liable for all of the actions of the companies involved in this loan.

15. On or about September 10, 2008, the Court dismissed my underlying Quiet Title action underlying, based on lack of prosecution because my attorney had abandoned me.

16. On or about October 18, 2008, GMAC allegedly perfected its foreclosure of the subject property based on a Trustee's Deed upon Sale. (Exhibit "10.")

17. Less than one month later, on November 11, 2008, GMAC filed an Unlawful Detainer action as against me in West Orange County Superior Court, Case No. 30-2008-00221178. (Exhibit "2.") In that UD, GMAC claimed to be the owner of the subject Property.

18. On or about December 24, 2008, I filed a Motion to Set Aside Dismissal of this Quiet Title Action. The Motion was scheduled to be heard on January 28, 2009.

19. GMAC served its Summary Judgment motion in the Unlawful Detainer ("**UD**") action on or about December 31st, so that I was unable to retain counsel to defend the action. Instead of filing an Opposition, I attempted to file a Motion to Stay, Dismiss or in the alternative, to consolidate the UD with the Quiet Title action. It was rejected as not timely filed, although the facts set forth therein would constitute a defense to the Summary Judgment Motion.

20. On January 9, 2009, Summary Judgment was granted in the UD.

21. In early February 2009, the action underlying Claim 1360 was reinstated.

22. On or about February 5, 2009, GMAC executed a Grant Deed transferring title to the subject Property to TCIF REO GCM California, LLC. (Exhibit "11.") This was done immediately after this case underlying Claim 1360 was reinstated.

23. Despite a total lack of title, the pendency of this action, the fact that title, when in GMAC's name, was gained through fraud, the fact that GMAC refused to apply payments which had been properly made to and stolen by Fremont, GMAC's predecessor in interest, despite my heroic attempts to cure the non-existent default, multiple felonies committed in making the loan, embezzlement, fraud in the inducement of the loan, all committed by the mortgage broker, escrow company, Fremont, GMAC and just about everyone else involved, on July 1, 2009, GMAC again brought another Unlawful Detainer. OCSC Case No. 30-2009-00280569 (Exhibit "3.") GMAC again swore under penalty of perjury that it was the owner of the property.

24. On or about July 6, 2009, GMAC's attorney sent to me an e-mail in this matter admitted that when it started the new UD, it did not have title. (Exhibit "12.") It subsequently dismissed the case.

---

25. On March 18, 2011, I was evicted from my home based on an assignment of the first UD Judgment to Island Source II, the title holder on that date. (Exhibit 13.)

FACTS CONCERNING CLAIM 1361.

26. This claim arises from a report by GMAC to the credit reporting entity Experian that I owed it $16.7. (Exhibit "14.") I did not owe GMAC any money. I discovered the report in or about 2008. I spoke with GMAC's attorney, Samantha Lamm, and asked her if she could do anything to get GMAC to remove the report. She laughed at me. I then made several requests to Experian to investigate and remove the report. GMAC refused. These claims did not become ripe for prosecution until after GMAC was granted summary judgment in the wrongful foreclosure action because the requests to Experian were not made until after the grant of summary judgment.

27. I have never seen the foreclosure file. The foreclosure company is Executive Trustee Services. It was (and may still be) owned by GMAC and has refused to produce the foreclosure file in that it part of the Residential Capital, LLC bankruptcy. On October 26, 2012, I was threatened by the attorney for GMAC and MERS in the underlying wrongful foreclosure action with contempt should he pursue the foreclosure file. (Exhibit 15.)

28. At the time GMAC took over the loan processing, I sent to them a letter attached as Exhibit 16 which detailed the problems with the loan which made the foreclosure unlawful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2013 at Huntington Beach, California

Robert Sweeting