Exhibit "17"



# MERS® System Rules of Membership

Effective date: March 18, 2013

# MERS® SYSTEM RULES OF MEMBERSHIP

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **INTRODUCTION** | | Page ii |
| **RULE 1** | MEMBERSHIP | Page 1 |
| **RULE 2** | REGISTRATION ON THE MERS® SYSTEM | Page 6 |
| **RULE 3** | OBLIGATIONS OF MERS ENTITIES | Page 10 |
| **RULE 4** | RULE CHANGES | Page 11 |
| **RULE 5** | FEES | Page 14 |
| **RULE 6** | PROCEDURES AND GUIDELINES | Page 19 |
| **RULE 7** | DISCIPLINARY ACTIONS | Page 21 |
| **RULE 8** | FORECLOSURE & BANKRUPTCY | Page 29 |
| **RULE 9** | USE AND OWNERSHIP OF INFORMATION | Page 32 |
| **RULE 10** | GENERAL CORPORATE REQUIREMENTS | Page 38 |
| **RULE 11** | SERVICES | Page 41 |
| **RULE 12** | WARRANTIES | Page 43 |
| **RULE 13** | INDEMNIFICATION | Page 47 |
| **RULE 14** | NOTIFICATION TO MERSCORP HOLDINGS OF LAWSUITS AND ADDITIONAL INDEMNIFICATION PROVISIONS | Page 52 |
| **GLOSSARY** | | Page 60 |

# INTRODUCTION

The Governing Documents contain the terms and conditions that govern the relationship between a Member, the MERS® System and the Companies. These MERS® System Rules of Membership (the "Rules") replace and supersede, in their entirety, any and all previously published Rules of Membership in place up to the effective date of March 18, 2013.

The Member shall be bound by any amendment to any of the Governing Documents in accordance with the Rules herein, providing that any additional obligations and liabilities of the Member shall begin upon the effective date of such amendment(s). In the event of any conflict between these Rules and any other document comprising the Governing Documents, the provisions of these Rules shall control.

## MERS as Mortgagee of Record

Mortgage Electronic Registration Systems, Inc. ("MERS") is a wholly owned subsidiary of MERSCORP Holdings, Inc. ("MERSCORP Holdings") created for the purpose of serving as the Mortgagee of Record in the applicable public land records solely as Nominee for the Note Owner and the Note Owner's successors and assigns, including the Note Holder. MERS shall have no rights whatsoever to retain any payments made on account of a MERS Loan, to any servicing rights related to MERS Loans, or to retain any mortgaged properties securing MERS Loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to MERS Loans or mortgaged properties.

## Capitalized Terms

Capitalized terms used within these Rules are defined in the Glossary section, which by this reference are incorporated into and made a part of these Rules.

# RULE 1

## MEMBERSHIP

Section 1.   MERSCORP Holdings and MERS shall make the services of the MERS® System available to any Member. MERSCORP Holdings and MERS are each referred to as a MERS Entity.

Section 2. (a) Each Member acknowledges and agrees that the Member's Organization Identification Number (Org ID) and each Mortgage Identification Number (MIN) associated with that Org ID are the property of MERSCORP Holdings and the use of such Org IDs and MINs are subject to the terms and conditions of the Governing Documents.

(b) Each Member shall designate one individual within its organization as the Executive Sponsor who will act as the liaison between the Member and the MERS Entities, with full authority to act on behalf of the Member in connection with the Member's dealings with the MERS® System, MERSCORP Holdings or MERS. The Member is responsible for maintaining current information in the organization's Member Profile on the MERS® System, and, subject to applicable federal or state law, regulatory requirements, or other agreements, is responsible for notifying MERSCORP Holdings in writing in the event of (i) such Member's merger or combination with, or acquisition of or by, another Member, (ii) such Member's merger or combination with or acquisition of or by a non-Member entity, provided that such notice shall not be required if the non-Member entity is not in the business of investing in, originating, servicing or subservicing mortgage loans, or (iii) any change in Member's company name, in accordance with the Procedures. The Member is required to periodically review and confirm

1

designated contacts maintained in the MERS® System per the schedules provided in the Procedures.

*Section 3.* Any Member may resign its membership from the MERS® System by giving written notice of Resignation to the President or Secretary of MERSCORP Holdings. Such Resignation shall require completion of any obligation of such Member to (1) pay fees or assessments, as provided in Rule 5, assessed prior to withdrawal, to the extent such obligation has not been fulfilled, (2) meet any conditions that MERSCORP Holdings may establish for the Deactivation of registered mortgage loans from the MERS® System, including sending for recordation within sixty (60) days all applicable MERS assignments of Security Instruments in the applicable public land records and providing an attestation that such assignments have been sent for recordation in accordance with the Procedures, and (3) provide notice in writing to MERSCORP Holdings that the Resignation of Membership requirements have been completed (collectively, the "Resignation of Membership" requirements). Upon completion of the Resignation of Membership requirements, MERSCORP Holdings will then transfer the Member's membership to Resigned Member status. The Member is required to notify MERSCORP Holdings when all assignments from MERS have been recorded in the applicable public land records. Notwithstanding the foregoing, the Member undergoing Resignation shall remain liable and obligated under the terms of Rule 13. The Member requirements set forth in this Section 3 are subject to a Member's ability to undertake such actions under applicable federal or state law, regulatory requirements, or other agreements and, if the Member determines it is unable to fulfill its Section 3 obligations, the Member shall notify MERSCORP Holdings in writing and provide its basis in as much detail as the Member deems permissible.

(a) Any Member that sells, transfers, or otherwise disposes of all or substantially all of its assets to any entity that is not a Member of the MERS® System, shall, subject to applicable federal or state law, regulatory requirements, or other agreements, provide written notice of such transaction(s) to MERSCORP Holdings no less than ninety (90) days prior to the effective time of such disposition of assets to such non-Member entity. The Member shall complete the Resignation of Membership prior to the completion of the disposition of assets to such non-Member entity. Notwithstanding the foregoing, the resigning Member shall not be required to comply with this sub-section if the acquiring entity submits a MERS® System Membership Application (the "Membership Application") no less than thirty (30) days prior to the sale or disposition of assets and subsequently becomes a Member bound by the Governing Documents.

(b) Any Member that plans to merge, acquire or be acquired by, or otherwise combine with any other entity and such other entity is the surviving entity and is a non-Member of the MERS® System, shall, subject to applicable federal or state law, regulatory requirements, or other agreements, provide written notice of such transaction(s) to MERSCORP Holdings no less than ninety (90) days prior to the effective date of such merger or combination with such non-Member entity, subject to Section 2(b). The Member shall complete Resignation of Membership prior to the completion of the merger or combination with such non-Member entity. Notwithstanding the foregoing, the resigning Member shall not be required to comply with this sub-section if the surviving non-Member entity submits a Membership Application no less than thirty (30) days prior to the merger or combination and, as such, shall become a Member bound by the Governing Documents.

3

*Section 4.* MERSCORP Holdings may terminate a Member's membership after providing such Member with immediate notice and following the expedited dispute resolution process set forth in Rule 7, Section 5, if MERSCORP Holdings reasonably determines that any of the following apply to such organization:

(a) MERSCORP Holdings has reasonable grounds to believe that the Member, or any principal associated with the Member, has been or is responsible for (i) fraud, fraudulent acts or breach of fiduciary duty, (ii) making a misstatement of a material fact or omitting to state a material fact to MERSCORP Holdings in connection with its application to become a Member, or (iii) the material violation of any statutes, rules and regulations applicable to the Member that is relevant to the provision of services of the MERS® System or the MERS Entities, which, in each case (whether (i), (ii), or (iii) above), would cause such Member's continued participation in the MERS® System to result in material detriment to the operational functions, reputation, or business of the MERS® System or the MERS Entities, respectively; or

(b) the Member, or any principal associated with the Member, has been convicted prior to the filing of its application to become a Member, or at any time thereafter while a Member, of any felony which involves the purchase, sale or pledge of a mortgage loan or any interest therein, or arose out of conduct of the business of funding, acquiring, lending on the security of, or servicing mortgage loans (or any business ancillary or related to any of the foregoing, which is relevant to the provision of services of the MERS® System or the MERS Entities), or involves robbery, larceny, embezzlement, fraudulent conversion, forgery or misappropriation of funds or other property, or other dishonest acts which, in each case specified in this Section 4(b), would cause such Member's continued participation in the

4

MERS® System, to result in material detriment to the operational functions, reputation or business of the MERS® System or the MERS Entities, respectively; or

(c) the Member has been, or while a Member is permanently banned from doing business as a result of wrongful or otherwise prohibited actions by the Member with one or more of the following: (A) Fannie Mae, (B) Freddie Mac, (C) Ginnie Mae, (D) the U.S. Department of Housing and Urban Development, or (E) the U.S. Department of Veterans Affairs, and MERSCORP Holdings deems such termination reasonably necessary to prevent material detriment to the operational functions, reputation, or business of the MERS® System or the MERS Entities, respectively.

For purposes of Rule 1, Sections 4 (a) and (b), the term "principal associated with" when applied to any person or entity shall mean (i) any partner, senior officer, director or controlling person of such person or entity or (ii) any officer or employee of such person or entity who has, or shall have, access to update the MERS® System.

(d) Should MERSCORP Holdings elect to terminate the Member's membership, the Member shall be responsible for reimbursement to MERSCORP Holdings for costs incurred as a result of Termination, including fees incurred by a MERS Entity to record MERS assignments of Security Instruments in the applicable public land records and payment of fees for the Deactivation of MERS Loans in accordance with the Termination of Membership requirements stated in Rule 7, Section 1(e) and the Procedures.

Section 5. The Companies and each Member may not assign or transfer any rights or obligations as a Member under the Governing Documents to a non-Member unless expressly authorized herein.

5

## RULE 2

## REGISTRATION ON THE MERS® SYSTEM

*Section 1.*     MERSCORP Holdings, in its sole discretion, shall determine the type of membership and level of access to the MERS® System permitted to each Member and the types of transactions that such Member may register on the MERS® System.  No Member may register or attempt to register any transaction not authorized under the Governing Documents or permitted by MERSCORP Holdings.

*Section 2.*     Subject to Rule 2, Section 1, each Member shall register a MERS Loan and may register any other mortgage loan on the MERS® System as an iRegistration.  Any mortgage loan or MERS Loan registered on the MERS® System shall reflect any and all applicable transactions with respect to such loans to which such Member is a party, in accordance with the Procedures.

*Section 3.* For a MERS Loan to remain active in the MERS® System, the designated Servicer must be a Member.  The transfer of contractual servicing rights to a non-Member with respect to a mortgage loan registered on the MERS® System shall require the Deactivation of such mortgage loan from the MERS® System in accordance with the Governing Documents.

*Section 4.*  For a MERS Loan, each Member, at its own expense, shall cause "Mortgage Electronic Registration Systems, Inc." to appear in the applicable public land records as the Mortgagee of Record as Nominee for the Note Owner and its successors and/or assigns with respect to each mortgage loan that the Member registers on the MERS® System.  At the time

that a MERS Loan is registered on the MERS® System, the Member shall use commercially reasonable efforts to verify that it has complied with the preceding sentence, which shall be satisfied by verifying that the information in the applicable public land records and on the MERS® System, as specified in the Procedures, is consistent. Each Member shall maintain an adequate quality assurance program to ensure that the foregoing verification procedures are effective. Upon a Member becoming aware of any discrepancy between the information shown on the MERS® System and the information in the applicable public land records, the Member shall promptly correct the discrepancy. Loans designated as iRegistration on the MERS® System shall be excluded from the requirements of this section.

Section 5. MERS shall act as the Nominee of the Note Owner and the Note Owner's successors and/or assigns, including the Note Holder with respect to each MERS Loan that a Member registers on the MERS® System. In the absence of contrary instructions from the Note Owner, MERSCORP Holdings and MERS may rely on instructions from the Servicer or Subservicer shown on the MERS® System in accordance with these Rules and the Procedures with respect to transfers of legal title of the Note or mortgage, transfers of contractual servicing rights, and releases of any security interests applicable to such mortgage loan. The Note Owner may give instructions that are contrary to those provided by the Servicer and/or the Subservicer that shall supersede all previous instructions by any other Member; provided, however, the Note Owner must deliver such contrary instructions to MERSCORP Holdings in writing (or electronically in an email at an e-mail address specified by MERSCORP Holdings) and the MERS Entities may each rely on such instructions until receipt of further written instructions from the Note Owner.

If the Note Owner or Investor is involved in a dispute with their Servicer, Subservicer or Warehouse Lender, the Members involved shall engage in a good faith effort to resolve the dispute between the parties. If unable to do so, the Note Owner/Investor may notify MERSCORP Holdings in writing regarding activity on the disputed MIN(s), and upon providing proof of ownership, may request that MERSCORP Holdings (i) process a transfer transaction, or (ii) correct the registration for the disputed MIN(s).

*Section 6.* When circumstances warrant that a lien should be released (e.g., payment in full, charge-off, etc.), the Member servicing the mortgage loan shall be responsible, at its own expense, to take, or cause to be taken, action in compliance with the Procedures to execute a release of the Security Instrument (a "Lien Release"). If MERSCORP Holdings is notified that a Lien Release has not been executed in compliance with the Procedures and, after giving written notice of such failure (i) to the Members shown on the MERS® System as the Servicer or Subservicer, if any, in order to provide the Member(s) with an opportunity to promptly cure any such failures or deficiencies (unless such Member(s) are no longer in business or cannot otherwise be located or contacted, in which case notice shall not be required), and (ii) to the Investor, if the Servicer or Subservicer is unavailable or non-responsive, and the Member(s) fail to take such action or give MERSCORP Holdings written notice that the MERS Loan should not be released, then the Companies, upon evidence that the lien should be released, reserve the right to release such lien. Such Member(s), upon demand, shall reimburse the Companies for out-of-pocket costs in connection with the Lien Release, including any penalties incurred by the MERS Entities for failure to release the lien or take other action in a timely manner, and shall

pay an administrative fee as shown in the MERS® System Pricing Schedule (as defined in Rule 5, Section 1(a)).

*Section 7.* The Companies and the Member agree that: (i) the MERS® System is not a mechanism for creating or transferring liens or interests in mortgage loans, and (ii) MERS® System membership or a Member's use of the MERS® System shall not modify or supersede any agreement between or among the Members and/or any other parties having liens or interests in mortgage loans registered on the MERS® System.

## RULE 3

## OBLIGATIONS OF MERS ENTITIES

*Section 1.*  MERSCORP Holdings shall make reasonable efforts to properly identify Urgent Mail and shall forward such mail to the designated Servicer or Subservicer Member or Members, as reflected on the MERS® System, within two (2) business days of receipt at the MERSCORP Holdings mail processing center, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified Urgent Mail received by MERSCORP Holdings or MERS with respect to MERS Loans registered on the MERS® System.

*Section 2.*  MERSCORP Holdings shall provide Members with access to certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERSCORP Holdings may determine from time to time.

*Section 3.*  Upon request from the Member, MERS shall furnish to the Member, in accordance with the Procedures, a duly authorized MERS Corporate Resolution appointing one or more officers of such Member (or for Members that do not have officers in their organizational structure, then employees that would be considered the equivalent of officers who possess a level of authority ordinarily reserved for officers), selected by such Member, as a MERS Signing Officer to permit such MERS Signing Officer(s) to take action(s) on behalf of MERS as specified in the MERS Corporate Resolution (within the scope of the authority conferred therein). MERS shall respond to such request within three (3) business days of receipt.

# RULE 4

## RULE CHANGES

*Section 1.* (a)  MERSCORP Holdings shall notify in writing all Members of any proposed changes to these Rules, and shall provide a copy of such proposed changes as well as the proposed timeline for implementation to all Members no fewer than ninety (90) days prior to the proposed adoption date of such changes (the "full comment period"), and shall provide for an appropriate transition, implementation and compliance period prior to the effective date of such changes as determined by the nature of the change(s) to the Rules.  No Member shall be required to comply with such changes prior to the expiration of such implementation period or be subject to any sanction as a result of noncompliance during such period.

(b)  Members may submit to MERSCORP Holdings for its consideration their comments with respect to any such proposed changes to the Rules including the proposed timeline for implementation no later than sixty (60) days from the date of the written notice provided by MERSCORP Holdings (the "initial comment period"). Such comments shall be reviewed by MERSCORP Holdings, and a summary of the comments received made available to Members.  No less than fifteen (15) days after the end of the initial comment period, MERSCORP Holdings shall provide all Members a second notice of the proposed changes including the proposed timeline for implementation to these Rules, which may incorporate comments provided by Member(s) during the initial comment period, and which identifies the incorporation of any such comments.  During the remainder of the full comment period, Members may submit to MERSCORP Holdings for its consideration their comments with

respect to the second notice of proposed changes (including the proposed timeline for implementation) and such comments shall be reviewed by MERSCORP Holdings. Notwithstanding the receipt of any such comments during the initial or full comment period, the Board of Directors of MERSCORP Holdings, in its sole discretion, shall have the right to amend, add to or repeal any Rule of Membership or part thereof previously submitted for comment after the expiration of the full comment period, so long as such amendment, addition or repeal is not contrary to the Certificate of Incorporation of MERSCORP Holdings, and provided that such changes do not impose additional obligations or liabilities on Members or limit the obligations or liabilities of MERSCORP Holdings beyond those circulated for comment.

(c) Members may submit to MERSCORP Holdings for its consideration any proposals for amendment(s) to the Rules at any time and MERSCORP Holdings shall acknowledge receipt and review such proposal within 30 days. If the President of MERSCORP Holdings approves such Member proposal(s) for comment, MERSCORP Holdings shall notify all Members in writing of the proposed amendment(s) for their review during the full comment period and transition compliance period as described in the immediately preceding section. Notwithstanding the foregoing, MERSCORP Holdings is under no obligation to accept or implement such Member proposed amendment(s).

*Section 2.* If MERSCORP Holdings determines in its reasonable judgment, and as approved by its Board of Directors, that an immediate change to the Rules is required due to urgent legal, regulatory or operational issues, it may implement this change concurrently with notice in writing to all Members, which shall set forth the reason for such change, providing for

appropriate transition, implementation and compliance period(s) prior to the effective date of such changes as determined by the nature of the change(s).

*Section 3.* Each Member shall be bound by any amendment to the Rules with respect to any action or inaction by the Member occurring subsequent to the time such amendment takes effect as fully as though such amendment were now a part of the Rules; provided, however, that no such amendment shall affect the Member's right to resign from the MERS® System in accordance with the procedures set forth in these Rules before such amendment or change becomes effective.

## RULE 5

## FEES

*Section 1.* (a) <u>Transaction Fees</u>. Each Member shall pay such fees, charges and assessments to MERSCORP Holdings for membership, registrations, transfers, and other transactions on the MERS® System and other services rendered by MERSCORP Holdings as shall be determined from time to time by MERSCORP Holdings in its sole discretion, and specified in a fee schedule promulgated by MERSCORP Holdings which may change from time to time (the "<u>MERS® System Pricing Schedule</u>").

(b) <u>Pricing Schedule</u>. MERSCORP Holdings shall provide all Members with at least thirty (30) days advance written notice of changes to the MERS® System Pricing Schedule with the effective date of the new fees.

(c) <u>Transfer Fees</u>. If a Member sells or otherwise transfers the contractual rights to service a loan registered on the MERS® System to another Member, then the transferring Member shall reflect such transfer on the MERS® System in accordance with these Rules and Procedures and a <u>Seasoned Servicing Transfer Fee</u> in the amount specified in the MERS® System Pricing Schedule in effect at the time the transfer is effective shall be due to MERSCORP Holdings for each loan transferred, provided that the transfer date is more than two hundred and seventy (270) days from the <u>Note Date</u> for that loan. If (i) a Member initiates a servicing transfer transaction on the MERS® System between two Org IDs issued to that Member or (ii) a Member initiates a servicing transfer transaction on the MERS® System to another Member who is affiliated with that Member, then such transfer transaction shall be subject to an

14