to such controls and procedures will also be designed to meet the objectives specified in the Safeguards Rule. Each Member shall inform MERSCORP Holdings in writing whenever the Member reasonably believes that the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System fail to meet the objectives specified in the Safeguards Rule. MERSCORP Holdings agrees the Member (or a mutually agreeable third party representative) will be given access to monitor that MERSCORP Holdings has satisfied the provisions of this paragraph, including access to MERSCORP Holdings-generated summaries of audits, test results or other equivalent evaluations of the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System. MERSCORP Holdings will report to the Member any actual or suspected breach of the confidentiality or security of the Member's confidential information furnished by, or concerning such Member contained on the MERS® System within forty-eight (48) hours of having identified the actual or suspected breach.

(c)  As part of the controls and procedures described in paragraph (b) of this section, MERSCORP Holdings maintains, and will continue to maintain, a business recovery plan as required in Rule 12, Section 9.

(d)  The MERS Entities acknowledge that Members are or may be required to comply with various information security standards and other legal requirements. The MERS Entities shall use commercially reasonable efforts to comply with the rules and policies of the Members related to protecting confidential information.

*Section 3.*    MERSCORP Holdings shall maintain records related to the provision of Services for a period of seven (7) years or as required by law, if longer.  Such records shall include, but not be limited to, those relating to processes, procedures and controls for quality assurance, quality control, document retention, personnel training, handling of complaints and compliance with law.  MERSCORP Holdings shall use reasonable best efforts to prevent the loss, destruction or alteration of Member records and information, including by maintaining appropriate back-up files and off-site copies of such records and information.

*Section 4.*  The obligations of the MERS Entities and the Member under this Rule 9 shall survive termination of a <u>Membership Agreement</u>.

## RULE 10

## GENERAL CORPORATE REQUIREMENTS

*Section 1.*  Insurance.  The Companies, at their own expenses, shall maintain a fidelity bond and an errors and omissions insurance policy on all officers, employees or other persons acting for MERS in any capacity requiring such persons to handle funds, money, documents or papers relating to mortgage loans registered on the MERS® System; provided however, that the Companies shall not be required to maintain coverage for persons who may be appointed at the request of the Member as MERS Signing Officers.  A  M e m b e r ,  at its own expense, shall also maintain a fidelity bond and an errors and omissions insurance policy on any such persons that MERS may appoint at the Member's request as a MERS Signing Officer for the purpose of executing documents in the name of MERS.  Upon request, the Companies or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.  Notwithstanding the foregoing, Members with assets of at least $1 billion may elect to self-insure rather than obtain coverage with third-party carriers.

*Section 2.*  Notices.  Any notice or other communication which is required or permitted to be given or made to the Companies pursuant to any provision of the Governing Documents shall be given or made in writing, and shall be sent either (i) via facsimile to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), (ii) via email to generalcounsel@mersinc.org (which is confirmed by delivery report or equivalent thereof), (iii) via registered or certified mail (return receipt requested and postage prepaid) to Chief Legal

Officer, 1818 Library Street, Suite 300, Reston, VA 20190, (iv) via a nationally recognized overnight courier (prepaid and providing proof of delivery), or (v) via any other method approved by MERSCORP Holdings.

Section 3.  Governing Law.  The Governing Documents and the relationship between the Companies and a Member with respect to the MERS® System shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

Section 4.  Disputes.  Notwithstanding the Indemnification provisions of Rule 13, neither the Member nor the Companies shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to the Governing Documents, or the breach, termination or invalidity thereof (a "Dispute"), before such party has first sought to resolve the Dispute through good faith negotiations with the other party conducted as contemplated in Rule 7, Sections 2 and 3.

Section 5.  Independent Contractor.  It is understood and agreed that all of the Services performed hereunder or pursuant to the Governing Documents shall be performed by the MERS Entities as independent contractors, or, in the case of MERS acting as nominee with respect to a MERS Loan, as Nominee.

Section 6.  Third Party Rights.  The Governing Documents shall not confer any benefits upon, or create any rights, benefits, remedies, obligations or liabilities under the Governing Documents in favor of any third parties, including any other Member.  As between Members, the Governing Documents shall not confer any rights, benefits, remedies, obligations or

39

liabilities upon, or create any rights in favor of, one Member in relation to another Member, and shall not be deemed incorporated in, or made part of, any contract entered into between Members.

Section 7. (a) Vendor Management. The MERS Entities recognize that various Members are subject to regulation by, among others, the Office of the Comptroller of the Currency (OCC) and the Consumer Finance Protection Bureau (CFPB), which requires such Members to comply with certain vendor management policies, including with respect to the relationship of each of those Members with MERS. The MERS Entities agree to use commercially reasonable efforts to comply with such vendor management requirements, and shall take all appropriate actions to ensure that its relationships with subcontractors and service providers are subject to and conducted in compliance with vendor management standards and procedures.

(b) The MERS Entities shall use commercially reasonable efforts to assist a Member in order to enable the Member to comply with any specific request or directive made to or imposed on it by any federal or state agency having jurisdiction over the Member, including providing the Member with access to the records, procedures and facilities relating to the provision of Services to such Member, and/or providing the Member with summary or actual results of audits and performance reports, in each case during normal business hours and upon reasonable request to MERSCORP Holdings and subject to limitations relating to confidentiality obligations and commercial reasonableness. The MERS Entities shall take appropriate actions to ensure that its subcontractors and service providers are aware of and comply with such requirements.

## RULE 11

## SERVICES

Section 1.     MERSCORP Holdings shall provide, either directly or through a third party, the Services for MERS and the MERS® System in compliance with reasonable performance standards.

Section 2.     In the event that MERSCORP Holdings ceases to be the service provider to MERS with respect to the operation of the MERS® System due to, or pursuant to, (i) a bankruptcy proceeding filed against or by, or concerning, MERSCORP Holdings, (ii) MERSCORP Holdings being adjudicated as bankrupt or insolvent, (iii) MERSCORP Holdings making an assignment to the benefit of creditors, (iv) MERSCORP Holdings entering into an arrangement pursuant to any bankruptcy or any similar law in any country, (v) discontinuing or dissolving its business, or (vi) a receiver being appointed for MERSCORP Holdings or its business and such receiver is not discharged within thirty (30) days, (each of the foregoing, a "Service Provider Replacement Event"), then MERS shall, with the approval of its Board of Directors, promptly (and in any event within two (2) business days of such Service Provider Replacement Event) notify the Members in writing and designate one or more qualified third parties (each, a "Replacement Service Provider") to provide such Services to MERS and the MERS® System.

In connection with any such Service Provider Replacement Event and appointment of a Replacement Service Provider, MERSCORP Holdings shall reasonably cooperate at the request of MERS in connection with the transition to such Replacement Service Provider in order to facilitate a timely and efficient transition.

41

Notwithstanding anything contained in these Rules to the contrary, if a Service Provider Replacement Event occurs (i) MERSCORP Holdings shall be deemed to no longer be a party to or subject to these Rules (except that the rights to, and obligations of, MERSCORP Holdings regarding indemnification and confidentiality shall survive), (ii) MERSCORP Holdings shall no longer be entitled to any Member fees, charges and assessments, and all Member fees, charges and assessments shall be payable directly by Members to MERS or the Replacement Service Provider(s) as directed by MERS, and (iii) the Replacement Service Provider(s) shall be deemed substituted for MERSCORP Holdings for purposes of these Rules, with such amendments as MERS may make as deemed necessary or appropriate in accordance with the provisions of these Rules applicable to amendments.

## RULE 12

## WARRANTIES

*Section 1.* <u>Work Standards</u>.  MERSCORP Holdings represents and warrants that the Services shall be rendered with promptness and diligence in accordance with the practices and high professional standards used in well-managed operations performing services similar to the Services and shall be performed in a workmanlike and cost effective manner.  MERSCORP Holdings represents and warrants that it shall use, and shall require all third-party vendors to use, adequate numbers of qualified personnel with suitable training, education, experience, and skill to perform the Services and satisfy the performance standards.

*Section 2.* <u>Maintenance</u>.  MERSCORP Holdings represents and warrants that the equipment and software used in the performance of the Services shall be maintained so that they operate in accordance with the performance standards, including (i) maintaining such equipment in good operating condition, subject to normal wear and tear, (ii) undertaking prudent repairs and preventive maintenance on such equipment, and (iii) performing prudent software maintenance, including timely updating software used in the performance of the Services, including the MERS® System, to meet any applicable legal or regulatory changes.

*Section 3.* <u>Technology.</u> MERSCORP Holdings represents and warrants that the Services shall be provided using proven technology, which shall take advantage of technological advancements in the industry.

*Section 4.* <u>Non-Infringement.</u>  MERSCORP Holdings represents and warrants that it shall, and shall require its third party vendors to, perform its responsibilities in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, copyright, trademark, trade secret or other propriety rights of any third party. MERSCORP Holdings is responsible for supervision of third party vendors hired by the Companies.

*Section 5.* <u>Software Ownership or Use.</u>  MERSCORP Holdings represents and warrants that, with respect to the software used in the performance of the Services, it owns, and is authorized to provide access to Members for their use of, MERS$^{\circ}$ system(s).

*Section 6.* <u>Authorization.</u>  MERSCORP Holdings represents and warrants that it has the requisite corporate power and authority to carry out its responsibilities.

*Section 7.* <u>Malicious Programs.</u>  MERSCORP Holdings represents and warrants that it shall take reasonable business precautions to ensure that it and any third party vendors providing the Services shall not code or introduce any <u>Malicious Programs</u> into the MERS$^{\circ}$ System and any other systems and software used to provide the Services, and to monitor, filter and remove any such Malicious Programs that may be introduced into the MERS$^{\circ}$ System.

*Section 8.* <u>Licensing and Qualification.</u>  MERSCORP Holdings and MERS represent and warrant that each has obtained all state licenses and has qualified to conduct business in all fifty states and the District of Columbia where such licensing and/or qualification is required by law for the Companies to provide the Services or for an entity to serve as Mortgagee of Record, solely as Nominee for the Note Owner and its successors and assigns.

*Section 9.*  <u>Business Recovery Plan.</u>  MERSCORP Holdings represents and warrants to the Member that it has in place and will continue to maintain a fully effective business recovery plan and will make the plan available for viewing by Member upon written request. MERSCORP Holdings will routinely (no less often than once per year) test its business recovery plan to ensure its continued effectiveness and capability of protecting its Members in the event of a disaster.  Such testing will be designed to ensure that the MERS° System can be restored within 48 hours after the determination of a disaster under the plan.  MERSCORP Holdings will provide a summary of the results of such test to the Member in writing upon request.

*Section 10.*  <u>Member Recordation.</u>  For a MERS Loan, the Member hereby represents and warrants to the Companies that a Security Instrument, or an assignment of a Security Instrument, as may be required under applicable state law, naming MERS as mortgagee, has been or, as soon as practicable, shall be properly prepared, executed, and delivered to the applicable public land records recording office for recording in compliance with the Governing Documents.

*Section 11.*  <u>Assignments from MERS.</u>  For a MERS Loan, when the MERS Loan has been sold or transferred to a non-Member or whenever an assignment from MERS is otherwise required under the Governing Documents, the Member hereby represents and warrants to the Companies that an appropriate assignment of Security Instrument as may be required under applicable state law, identifying MERS as the assignor, has been or, as soon as practicable (in compliance with Rule 8), shall be properly prepared, executed, and delivered to the applicable

public land records recording office by the Member or Member's designee for recording in compliance with the Governing Documents.

*Section 12*.    <u>Reimbursement for Termination of Membership Costs</u>.    The Member hereby represents and warrants to the MERS Entities that such Member shall remain liable and obligated for the costs incurred by the MERS Entities in completing the activities for Termination of Membership described in Rule 7, Section 1(e).    The Member shall pay and reimburse the MERS Entities' costs for Termination of Membership upon notice from the MERS Entities.

## RULE 13

## INDEMNIFICATION

*Section 1.*  The Companies agree to indemnify the Member and the Member agrees to indemnify the Companies in accordance with the following provisions:

(a) The Companies shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member (a "Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Governing Documents, or reckless or willful misconduct of the Companies or of any employee, director, officer, agent or affiliate of the Companies (a "Company Indemnified Claim").  Notwithstanding the foregoing, the Companies shall not be liable or responsible under the terms of this Paragraph for any losses or claims resulting from the actions or omissions of a MERS Signing Officer.

(b) The Member shall indemnify and hold harmless the Companies, and any employee, director, officer or agent of the Companies (each, a "MERS Party"), for any Indemnified Payments which do not result from a Company Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Governing Documents, or willful misconduct of a Member Party, (ii) as a result of any actions taken by the Member with respect to a transaction on the MERS® System, or (iii) as a result of compliance by the Companies with instructions given by the Member, or its

47

designee, as Note Owner, Servicer, Subservicer, <u>Interim Funder</u> or other secured party shown on the MERS® System (a "Member Indemnified Claim"), or (iv) as a result of action(s) taken by the Member with respect to a mortgage, deed of trust, or security deed for which MERS is or was the mortgagee, beneficiary or grantee of record.

(c)  The Member shall indemnify and hold harmless the Companies with respect to any liability which may arise as a result of the failure of such Member to (i) take, or cause to be taken, appropriate action to extinguish the lien corresponding to a mortgage loan in accordance with Rule 2, Section 6 or (ii) give MERSCORP Holdings notice that such mortgage loan should not be released in a timely and accurate manner. Without limiting the generality of the foregoing, such indemnification shall extend to circumstances in which a lien is released by MERS in accordance with Rule 2, Section 6, but the MERS Loan should not have been released, or in which such Member wrongfully refuses to authorize MERS to release a Security Instrument after the Member receives notice that the relevant loan should be released.

(d)  In instances where MERS designates an officer of a Member as a MERS Signing Officer for the limited purposes described in the MERS Corporate Resolution, such Member shall indemnify each of MERSCORP Holdings and MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such MERS Signing Officer.

(e)  In the event of any loss of principal or interest on a MERS Loan or any Indemnified Payments for which reimbursement is received by MERS or MERSCORP Holdings from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the

48

proceeds from any such bond or insurance shall be held in trust for and be promptly (and in any event, within two (2) business days of receipt of such proceeds) paid to the Member who is shown as the Servicer on the MERS® System on behalf of the Note Owner unless otherwise instructed by the Note Owner.

(f)  If the Member designates a third party to register loans (the "<u>Registrar</u>") on the MERS® System on behalf of the Member, the Registrar shall not be deemed a vendor or service provider or agent of MERS or of MERSCORP Holdings.  The Registrar shall be solely a service provider or vendor for the Member, and the Companies consent to Member use of a Registrar only to enter information on the MERS® System on behalf of the Member.  The Member agrees that the Companies are not liable to the Member for the following actions taken by the Registrar or any employee, director, officer, agent or affiliate of the Registrar in performing its services for the Member: errors and omissions, negligence, breach of confidentiality, breach of the Rules and/or applicable Procedures, or willful misconduct.

(g)  So long as there are no contrary instructions, when the Note Owner is a non-Member, MERSCORP Holdings and MERS shall at all times comply with the instructions of the Member shown on the MERS® System as the Servicer or Subservicer, if any, of such MERS Loan with respect to transactions relating to such MERS Loan.  Such Member shall indemnify and hold harmless MERSCORP Holdings and MERS, and any employee, director, officer or affiliate of MERSCORP Holdings or MERS, for any and all liability incurred as a result of compliance by MERSCORP Holdings or MERS with instructions given by such Member, as the Servicer or Subservicer acting on behalf of the non-Member Note Owner.

49

(h)    MERSCORP Holdings shall promptly notify the Member if a claim for Indemnified Payments is made by a third party against either the Companies or the Member with respect to any MERS Loan in which the Member is shown on the MERS® System as Note Owner, Servicer, or secured party in accordance with the Governing Documents. The Member shall promptly notify MERSCORP Holdings if a claim for Indemnified Payments is made against the Member that may be subject to the indemnification provisions of this Section.

Section 2.    In the event that a claim (covered by Section 1 of this Rule) is made against a Member Party or the Companies, the following provisions shall apply:

(a)    The indemnified party may but shall not be obligated to participate in the defense of the claim or in a subpoena/court order response at its own expense and use counsel of its own choosing; provided, however, that the indemnifying party has the right to control the defense of the claim or method of response to the subpoena/court order. Notwithstanding the foregoing, the indemnified party may upon written notice to the indemnifying party assume control of the indemnified party's defense if in its reasonable discretion the indemnified party concludes at any time that the indemnifying party's provision of defense is inadequate. The indemnified party may seek to recover all expenses paid by the indemnified party from the indemnifying party, pursuant to Rule 7, Section 2 of these Rules.

(b)    The indemnified party shall cooperate and provide assistance as the indemnifying party reasonably requests and shall be entitled to recover reasonable costs of providing assistance.

50

(c) The indemnifying party shall keep the indemnified party informed on status of claim and litigation or response to subpoena/court order.

(d) The indemnifying party shall not, without indemnified party's written consent, compromise or settle the claim if such compromise or settlement would impose an injunction or other equitable relief upon indemnified party or such compromise or settlement does not include the third party's release of the indemnified party.

(e) If the indemnifying party fails to timely defend, contest or otherwise protect against the claim and fails to contest in writing the indemnified party's right to indemnification, the indemnified party may, but shall not be obligated to, defend and make any compromise or settlement and recover the costs thereof from the indemnifying party.

(f) If the indemnifying party contests in writing the indemnified party's right to indemnification, then the indemnified party shall defend the claim and may seek to recover all expenses paid by the indemnified party from the indemnifying party, and if successful, shall also be indemnified for the fees and expenses of initiating such recovery pursuant to the Governing Documents.

*Section 3.* The obligations of the Companies and the Member under this Rule 13, including all confidentiality provisions, shall survive the termination of the Member's use of the MERS® System and the Member's MERS® System membership.

## RULE 14

## NOTIFICATION TO MERSCORP HOLDINGS OF LAWSUITS

## AND ADDITIONAL INDEMNIFICATION PROVISIONS

*Section 1.* The provisions set forth in this Rule 14 are in addition to those provisions set forth in Rule 13 of the Rules. To the extent that any provision of this Rule 14 conflicts with any provision of Rule 13 of the Rules, the provisions of this Rule 14 shall control.

*Section 2.* Whenever a Member receives notice of a Legal Filing, service of process on a lawsuit naming a MERS Entity as a defendant, or a code violation notice, that is forwarded to the Member by a MERS Entity with relation to a property where MERS holds or held a Security Instrument in place of or on behalf of such Member, the Member has an affirmative duty to the MERS Entities to review the document and respond accordingly and timely. This includes retaining counsel (which counsel may be internal counsel to the Member or outside counsel) to defend the MERS Entities in such Legal Filings or code violation proceeding regardless of whether the Legal Filing or code violation proceeding seeks a monetary judgment against either of the MERS Entities or seeks another type of judgment against the MERS Entities' interests (e.g., the right or capacity of MERS to hold, assign, or foreclose interests in Security Instruments).

*Section 3.* (a) Without regard to responsibility under Rule 13 of the Rules:

(i) After receipt of service of process (whether attempted or valid) of a lawsuit involving a mortgage loan registered to a Member that names MERS and/or MERSCORP Holdings as a defendant, the MERSCORP Holdings mail center will forward the lawsuit to the

Member(s) named on the MERS® System as the Servicer or Subservicer for such mortgage.

Within twenty-eight (28) days after a Member's receipt of the lawsuit from the MERSCORP

Holdings mail center, the Member shall acknowledge its receipt and either (1) provide contact

information for the internal contact and outside counsel (if retained) to MERSCORP Holdings

or (2) inform MERS of its determination not to contest the foreclosure or answer the lawsuit.

If the Member fails to provide such information, and MERSCORP Holdings reasonably believes

that the Member should defend the lawsuit as a Member Indemnified Claim, then MERSCORP

Holdings and/or MERS (as applicable), may, after making a second attempt to obtain contact

information for the Member's internal contact and outside counsel, retain counsel to

undertake the defense, settlement, and/or compromise of such lawsuit on behalf of, and at

the sole expense of, the Member, and shall promptly notify the Member in writing of such

undertaking.  Subsequent to MERSCORP Holdings and/or MERS undertaking such defense,

settlement, and/or compromise, upon written notice to MERSCORP Holdings from the

Member, the Member may assume the defense, settlement and/or compromise of such

lawsuit with the consent of MERSCORP Holdings (which consent shall not be unreasonably

withheld).  MERSCORP Holdings and/or MERS (as applicable) shall provide further written

notice to the Member of its own intent to settle any such lawsuit where it has retained its

own counsel and the Member has not assumed the defense.

(ii)  The Member is not authorized and shall not accept service of process on

behalf of MERS and/or MERSCORP Holdings without express written authorization from

MERSCORP Holdings.

53

(iii) The Member, or its retained counsel, shall review all <u>Legal Filings</u> it receives upon service of legal process that are related to a mortgage, deed of trust, or security deed for which MERS is or was the Mortgagee of Record (as applicable), and that both does not name MERSCORP Holdings and/or MERS as a defendant and which includes one or more of the following categories:

(1) a challenge to the authority or ability of MERS to hold, assign, and/or foreclose on mortgage liens;

(2) a challenge to the legality of the operation of MERSCORP Holdings, the MERS° System, or the <u>MERS° eRegistry</u>;

(3) a challenge to or examination of the actions, in his or her official capacity, of a person who is identified in the Legal Filing to be an officer or employee of MERSCORP Holdings and/or MERS (including MERS Signing Officers), in a Legal Filing;

(4) a challenge to the Nominee relationship between MERS and its Members or any other entity;

(5) a challenge to the sufficiency or validity of an assignment by MERS on grounds that the assignment has not been recorded in the applicable public land records recording office; and/or

(6) a dispute over whether MERS is entitled to notice of another lien-holder's foreclosure proceedings or other debt collection action.

The Member or its retained counsel shall make a good faith determination based on all information reasonably available to the Member as to whether any Legal Filing that falls into one or more of the enumerated categories listed above has a reasonable likelihood of prevailing. If a Legal Filing has a reasonable likelihood of prevailing, then notice of the Legal Filing must be provided by the Member to MERSCORP Holdings, within twenty-eight (28) days of receipt of service of process of the Legal Filing on the Member. The Member shall establish written procedures, or supplement existing procedures governing case management and reporting, for use in making the good faith determination required by this Section.

(iv) The Member, or its retained counsel, shall notify MERSCORP Holdings within fourteen (14) days of receipt of notice of the appeal of a court order or judgment by any party to a Legal Filing where such appeal involves one of the categories set forth in Section 3(a)(iii).

(b) In accordance with the procedures set forth in Section 3(a)(iii), the Member, or its retained counsel, shall notify MERSCORP Holdings within thirty (30) days of receipt of any Legal Filing that is filed in response to a proceeding initiated by such Member (either in its own name or in the name of MERSCORP Holdings, and/or MERS, notwithstanding Rule 8).

(c) (i) If a Member has transferred or otherwise terminated its rights and interests in a mortgage loan, and receives notice of a Legal Filing from the MERSCORP Holdings mail center under Section 3(a)(i), the Member shall, within fourteen (14) days of receipt of such Legal Filing, notify MERSCORP Holdings of the transfer or termination of the Member's rights and interests in the subject mortgage loan, and provide

MERSCORP Holdings with the name of the party to which those rights and interests were transferred.

(ii) The Member shall provide notice to MERSCORP Holdings within thirty (30) days after receipt of service of legal process of a lawsuit that involves a mortgage loan in which the Member no longer holds an interest, if the lawsuit involves a mortgage loan where MERS is the Mortgagee of Record, MERS' recorded interest is readily determinable by the Member, and neither MERSCORP Holdings nor MERS are named as a party to the lawsuit.

(d) If a Member determines that it will file a lawsuit or similar action (notwithstanding Rule 8) in the name of MERS, it shall provide MERSCORP Holdings with fourteen (14) days advance notice of the filing unless the action involves an emergency measure which requires the Member to immediately file the lawsuit or similar action to protect the lien interest held by MERS, in which case the Member shall notify MERSCORP Holdings within five (5) days of the filing.

(e) Notwithstanding any of the foregoing, a Member who is also a named Investor appearing on the MERS° System shall be relieved of any obligation to provide the notifications required under Sections 3(a)(i), 3(a)(iii), 3(a)(iv), 3(b), 3(c) and 3(d) when the Investor's retained counsel or the Investor's Servicer or Subservicer, as shown on the MERS° System, is managing the Legal Filing and the Investor has required the outside counsel, Servicer or Subservicer to provide the notifications which would otherwise be required of the Investor under this Rule.

*Section 4.* (a)  All notifications and/or acknowledgments required by this Rule 14 shall include the following (as applicable), unless certain information has previously been provided:

(i)  the name, phone number, and email address of the contact person of the Member with respect to the subject Legal Filing or action (which may be Member's in-house counsel);

(ii)  the name, telephone number, and email address of the attorney and law firm, if any, retained by the Member with respect to the subject Legal Filing; and

(iii)  either a copy of the Legal Filing with the date of service upon the Member; or: 1) the name of the Legal Filing; 2) the county, state and court in which the Legal Filing was filed; 3) the Mortgage Identification Number ("MIN") of the mortgage loan involved; and 4) the date the Legal Filing was filed with the date of service upon the Member and the date an answer or response is due.

(b)  All notices and/or acknowledgments required by this Rule 14 shall be sent to the attention of the General Counsel of MERSCORP Holdings either (i) via facsimile to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), (ii) via e-mail to Rule14@mersinc.org (which is confirmed by delivery report or equivalent thereof), (iii) via registered or certified mail (return receipt requested and postage prepaid) to 1818 Library Street, Suite 300, Reston, VA  20190, (iv) via a nationally recognized overnight courier (prepaid and providing proof of delivery), or (v) via any other method approved by MERSCORP Holdings.

(c)  MERSCORP Holdings will treat all information contained in notifications and/or acknowledgments provided under this Rule 14 as confidential.

*Section 5.*  With respect to a Member Indemnified Claim as defined in Rule 13, it is the responsibility of the Member to inform its retained counsel of the Member's indemnification obligations under the Rules (including, without limitation, this Rule 14).  With respect to a Member Indemnified Claim, the Member and/or its retained counsel shall take all necessary and appropriate actions to assert promptly valid defenses available to MERSCORP Holdings, and/or MERS, (as applicable), even if such defenses are unavailable to the Member, including, without limitation, the defense that the claim against MERSCORP Holdings, and/or MERS (as applicable) should be dismissed because MERSCORP Holdings, and/or MERS is neither the Servicer nor Note Owner of the subject mortgage loan.

(a)  Regardless of whether a Member, MERSCORP Holdings, and/or MERS defended a Member Indemnified Claim or none of these entities defended such claim, and regardless of whether MERSCORP Holdings, and/or MERS had notice of the Member Indemnified Claim (provided that if MERSCORP Holdings, and/or MERS received service of legal process of the claim, notice was provided to a Member pursuant to Rule 3 of these Rules), if a judgment is entered against MERSCORP Holdings, and/or MERS, for such claim, the Member shall either pay the full amount of the judgment, or promptly post a Surety Bond, Letter of Credit, or the equivalent that is acceptable to the court, for the amount of the judgment pending: (i) any motions to set aside or vacate the judgment; (ii) appeal of the judgment; or (iii) any challenges made by either the Member or MERSCORP Holdings, and/or MERS, to the

judgment.  It is the Member's responsibility to pay the amount of the judgment and any other related Indemnified Payments on behalf of MERSCORP Holdings, and/or MERS (as applicable), and if MERSCORP Holdings, and/or MERS defends against the enforcement of a judgment (which MERSCORP Holdings, and/or MERS shall have the right to do in its discretion after notice to the Member), the Member shall promptly reimburse MERSCORP Holdings, and/or MERS (as applicable) for the amount of the Indemnified Payments related to such defense.

(b)  With respect to a Member Indemnified Claim, upon request, the Member shall provide MERSCORP Holdings, with: (i) copies of all pleadings accessible to the public the Member receives from third parties (and notice of protected pleadings (e.g., pleadings filed under seal) it receives from third parties); (ii) copies of all public pleadings the Member files on its own behalf; and (iii) copies of all pleadings the Member files on behalf of MERSCORP Holdings, and/or MERS.

(c)  A Member shall in no way be relieved of its obligations under Rule 13 Indemnification by (i) the failure of the Member to receive proper notification from a third party with respect to a lawsuit, or (ii) the proper notification, pursuant to this Rule 14, of a lawsuit, from the Member to MERSCORP Holdings.

*Section 6.*  The obligations of the Member under this Rule 14 shall survive the Member's Resignation or Termination of Membership.  Notwithstanding the foregoing, if a Member is in Resigned Member status, the former Member shall be relieved of its notification obligations under Sections 3(a)(iii) and 3(b)(ii) two years after the effective date of the completed Resignation or Termination.

## GLOSSARY

***Companies*** mean collectively, MERSCORP Holdings and MERS.
INTRODUCTION; Page ii

***Company*** means either MERSCORP Holdings Inc. or Mortgage Electronic Registration Systems, Inc.

***Corporate Resolution Management System (CRMS)***, a web platform (operated by MERSCORP Holdings) wherein Members submit requests to MERS for a new/updated MERS Corporate Resolution, and manage the list of MERS Signing Officer candidates included in each request.

***Days*** mean calendar days except as noted (e.g., business days).

***Deactivation*** means the designation of a loan as inactive on the MERS® System for a variety of reasons (e.g., Paid in Full, transfer to non-MERS status, foreclosure complete, etc.), including in conjunction with the Resignation or Termination of Membership.
RULE 1; Section 3 (Page 2)

***Executive Sponsor*** means the senior executive within the Member organization under whose management the MERS® System operation falls.
RULE 1; Section 2 (b) (Page 1)

***Governing Documents*** mean the MERS® System Rules of Membership, the Membership Application, and the Procedures, collectively, which together constitute the Membership Agreement between the Member, the Companies, and the MERS® System.
INTRODUCTION; Page ii

***Guidelines*** mean, without limitation, the user manuals, announcements, advisory and policy bulletins, and other instructions published to address technical updates, meet production deadlines and/or legal or regulatory requirements or for reasons as otherwise deemed necessary to support Member use of the MERS® System and the execution of transactions on the MERS® System.
RULE 6; Section 1 (a) (Page 19)

***Interim Funder*** means an organization with an interim financial interest on a loan prior to the sale of the loan to the permanent Investor, who has chosen to have their secured interest in each loan represented in a way that only they can release on the MERS® System.
RULE 13; Section 1 (b) (Page 48)

***Intracompany Transfer Fee*** means a fee levied for a servicing transfer transaction on the MERS® System between two Org IDs issued to the same Member or a transfer from one

Member to another Member on the MERS® System that is affiliated with that Member in accordance with a Parent/Child Agreement.
RULE 5; Section 1 (c) (Page 15)

*Investor* means the Note Owner, or the Note Owner's designee.
RULE 2; Section 5 (Page 8)

*iRegistration* means a loan registered on the MERS® System for information purposes only, where MERS is not the Mortgagee of Record.
RULE 2; Section 4 (Page 7)

*Legal Filings* (or *Legal Filing*) mean lawsuits, subpoenas, discovery requests, or similar documents, including but not limited to an objection to proof of claim, counterclaim, cross-claim, third party claim, or objection to motion for relief from stay.
RULE 14 Section 3 (a) (iii). (Page 54)

*Lockout* means a process whereby, and status with which, a Member's access to the MERS® System is temporarily denied, including, but not limited to, preventing any new registrations and documenting transfers of ownership or servicing rights within the MERS® System.*
Lockout does not revoke the signing authority of the MERS Signing Officer(s) appointed with respect to the Member's existing MERS Loans.
* These are not legal transfers of ownership and servicing rights.
RULE 7; Section 1 (c) (Page 23)

*Malicious Programs* mean the generic term used to include any program (e.g., viruses, worms, Trojan Horses, malware, etc.) or set of instructions intentionally constructed with the ability or intent to damage, or interfere with programs or data, or that may collect data without the user's knowledge or otherwise adversely affect operation, disable, or shut down all or any portion of the MERS® System or services.
RULE 12; Section 7. (Page 44)

*Member* means a legal entity that has signed and submitted a Membership Application to MERSCORP Holdings Inc., received an Organization Identification Number(s), and has been approved for Integration, and who has not completed Resignation. A Third Party Originator (TPO) Member is not required to enter into Integration.
INTRODUCTION; Page ii

*Member Profile* means the information about a Member that is required at the time of initial setup on the MERS® System. The Member Profile indicates the Member's MERS® System process preferences, billing, and other relevant information.
RULE 1; Section 2(b) (Page 1)

***Membership Agreement*** means the contract between the Member, Companies and the MERS® System to abide by the terms and conditions of the Governing Documents.  If a MERS® System Member elects to become a Member of the MERS® eRegistry, that entity is also bound by the terms of the MERS® eRegistry Addendum.
RULE 9; Section 4 (Page 37)

***Membership Application*** means the document used to apply for membership to the MERS® System as a Residential, Lite or Patron Member, or as a Third Party Originator (TPO) Member.
RULE 1; Section 3 (a). (Page 3)

***MERS*** means Mortgage Electronic Registration Systems, Inc., a Delaware corporation wholly-owned by MERSCORP Holdings.
INTRODUCTION; Page ii

***MERS Corporate Resolution*** means a resolution adopted by the board of directors of Mortgage Electronic Registration Systems, Inc. granting specifically identified persons the limited authority to take certain actions as enumerated in the resolution and on behalf of MERS.
RULE 3; Section 3 (Page 10)

***MERS Entity*** (plural, ***MERS Entities)*** means MERSCORP Holdings or MERS.
RULE 1; Section 1 (Page 1)

***MERS Loan*** means a loan for which MERS is the mortgagee, beneficiary, or grantee.
INTRODUCTION: Page ii

***MERS Signing Officer*** means an individual appointed by MERS (via a MERS Corporate Resolution) and granted limited authority to take certain actions as enumerated in the MERS Corporate Resolution on behalf of MERS. MERS Signing Officers were formerly known as MERS "Certifying Officers".
RULE 3; Section 3 (Page 10)

***MERS®*** means the trade name used by MERSCORP Holdings and MERS regarding products and/or like services relating to MERS' role as mortgagee.

***MERS® eRegistry*** means a legal system of record that identifies the owner (Controller) and custodian (Location) of the authoritative copy for registered eNotes.
RULE 14; Section 3 (a) (iii) 2. (Page 54)

***MERS® OnLine*** means the browser-based interface used by a Member to access and update the MERS® System regarding mortgage loans.

***MERS® System*** means the electronic registry owned and operated by MERSCORP Holdings that tracks changes in loan servicing and note ownership rights for registered mortgage loans.
INTRODUCTION; Page ii

***MERS® System Integration Handbook (Volumes I and II)*** means the publication describing the controls and procedures that are in place to meet the 'Safeguards Rule'.
RULE 9 Section 2 (b). (Page 35)

***MERS® System Penalty Schedule*** means the schedule for certain penalties related to violations of provisions within the Governing Documents or for errors, delays or other conduct materially detrimental to the operation of MERSCORP Holdings, MERS, the MERS® System or other Members, or improper use of the MERS® System.
RULE 7; Section 1 (Page 21)

***MERS® System Pricing Schedule*** means the schedule of Pricing for the MERS® System.
RULE 5: Section 1 (a) (Page 14)

***MERSCORP Holdings*** means MERSCORP Holdings, Inc., (formerly known as MERSCORP, Inc.), the Delaware corporation that wholly owns and operates the MERS® System, MERS® eRegistry, and the Corporate Resolution Management System (CRMS). MERSCORP Holdings is the parent company and the service provider to MERS.
INTRODUCTION; Page ii

***Mortgage*** means an interest in or a lien against property created by written instrument providing security for the repayment of a debt and/or the performance of a duty . References herein shall include deed(s) of trust, mortgages and security deeds, and any other form of Security Instrument under applicable state law.  See ***Security Instrument***.

***Mortgage Identification Number (MIN)*** means a unique 18-digit number composed of the 7-digit Organization Identification Number (Org ID), the 10-digit sequence number, and the check digit.
RULE 1; Section 2 (a) (Page 1)

***Mortgagee of Record*** means the party which takes, holds, or receives a pledge of an interest in or lien against property as security for the payment of debt; the pledge is evidenced by a Mortgage and recorded in the applicable public land records.  References herein to "Mortgagee of Record" shall include the named beneficiary under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law.
INTRODUCTION; Page ii

***Nominee*** means one designated to act for another as his representative in a limited sense; the agency relationship specifically expressed in the terms of the Fannie Mae / Freddie Mac Uniform Security Instruments identifying MERS as the Original Mortgagee (MOM).
INTRODUCTION; Page ii

***Note*** —means the paper or electronic evidence of indebtedness in a mortgage loan.
RULE 2; Section 5 (Page 7)

***Note Date*** means the date on the Note. In some states, the date the borrower signs the Note, or the date the Note is drawn, may or may not be the actual date on which the interest begins to accrue.
RULE 5; Section 1 (c) (Page 14)

***Note Holder*** means the person or entity: (i) who is entitled to enforce the Note under Article 3 of the Uniform Commercial Code, as enacted by the applicable jurisdiction, including the person or entity who controls an electronic Note under the federal Electronic Signatures in Global and National Commerce Act and/or Uniform Electronic Transactions Act, as enacted by the applicable jurisdiction and (ii) who is authorized to enforce the Note by the Note Owner if the Note Holder is not the Note Owner.
INTRODUCTION; Page ii

***Note Owner*** means the person or entity with legal title to the Note (or electronic Note).
INTRODUCTION; (Page ii)

***Organization Identification Number (Org ID)*** means a 7-digit number uniquely identifying a Member Profile on the MERS® System.
RULE 1; Section 2 (a) (Page 1)

***Primary/Secondary Relationship Agreement*** means a relationship reflected on the MERS® System for Members who execute a Primary/Secondary Relationship Agreement (formerly known as a Parent/Child Agreement). Only the Primary Org ID is billed membership fees, and seasoned servicing transfer transactions between the included Org IDs are billed the Intracompany Transfer Fee rather than the Seasoned Servicing Transfer Fee.
RULE 5; Section 1 (c) (Page 15)

***Procedures*** mean the procedures that the Member is bound to adhere to, as prescribed in the Procedures Manual.
RULE 1 Section 2 (b) (Page1)

***Registrar*** means a third party to whom a Member has contracted certain business activities such that the Registrar would be the initiator of the business activity that gives rise to a transaction on the MERS® System on behalf of the Member.
RULE 13 Section 1 (f) (Page 49)

***Resignation*** means the process by which a Member withdraws its membership from the MERS® System(s), deactivates their MERS Loans, and otherwise completes the Rule 1 Resignation of Membership requirements.
RULE 1; Section 3 (Page 2)

***Resigned Member*** – a Member that has completed its resignation of membership as required under the Procedures Manual but remains eligible to resume its membership and Org ID, with approval from MERSCORP Holdings, at some future date.
RULE 1; Section 3 (Page 2)

***Seasoned Servicing Transfer Fee*** means the fee charged to the Member who initiates a seasoned servicing transfer transaction to another Member.  A "Seasoned Loan" is defined as a loan with a registration date on the MERS® System more than two hundred and seventy (270) days from the Note Date.
RULE 5; Section 1 (c) (Page 14)

***Security Instrument*** means a legal document creating an interest in or lien against property as collateral to protect or secure against non-payment of a debt, a mortgage, deed of trust, security deed, or any such other instrument.  See ***Mortgage***.
RULE 1; Section 3 (Page 2)

***Servicer*** means the entity that possesses the contractual right to collect payments from a debtor and otherwise service a loan for an Investor.  In some cases the Servicer may contract with a Subservicer. However, the Servicer continues to be responsible for compliance with the Procedures with respect to the loans serviced.
RULE 2; Section 3 (Page 6)

***Services*** mean all services, resources, software, equipment and facilities provided by MERSCORP Holdings, either directly or through a third party.
RULE 11; Section 1 (Page 41)

***Subservicer*** means the entity with whom the Servicer has contracted to perform certain servicing functions on behalf of the Servicer.  The Subservicer is not the legal owner of servicing rights.
RULE 2; Section 5 (Page 7)

***Termination*** means a Member's membership has been revoked by MERSCORP Holdings through the Termination of Membership process described in Rule 7. A terminated membership may not be reinstated under an existing Org ID. In response to Member inquiries regarding "good standing", the response shall be that the terminated Member in question is no longer a Member of MERSCORP Holdings.
RULE 1; Section 4 (d) (Page 5)

***Urgent Mail*** means the postal or electronic mail received at the MERSCORP Holdings mail processing center with sufficient information to identify the MIN(s) registered on the MERS® System, that is required to be forwarded to Member(s) within 2 business days. Mail that falls into the category of "Urgent" includes:

- Adversary
- City/County Code Violation
- Foreclosure
- Funds
- Government Correspondence
- Lawsuits
- Request for Discharge of Mortgage
- Subpoenas

Non-Urgent mail, such as Bills and Invoices (includes homeowners' association dues and condominium assessments), Notices and Requests, Recordable Documents, Title Policy, etc., shall be forwarded to the Member within 5 days.

RULE 3: Section 1 (Page 10)