MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis
Naomi Moss

*Counsel to the Debtors and*
*Debtors in Possession*

BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35202
Telephone:   (205) 521-8810
Facsimile:   (205) 488-6810
Blake B. Goodsell (Admission Pending)
Jon H. Patterson (Admission Pending)

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------- ) | | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ------------------------------------------------- ) | | |

**DEBTORS' OBJECTION TO PROOF OF CLAIM**
**FILED BY CORLA JACKSON (CLAIM NO. 4443)**

# TABLE OF CONTENTS

**Page**

JURISDICTION, VENUE AND STATUTORY PREDICATE .................................................. 1

PRELIMINARY STATEMENT ........................................................................................... 2

BACKGROUND ................................................................................................................ 3

      A.     The Chapter 11 Cases .......................................................................... 3

      B.     Loan History & Prepetition Litigation ................................................. 4

      C.     Ms. Jackson and These Chapter 11 Cases ........................................ 10

RELIEF REQUESTED ..................................................................................................... 12

OBJECTION ................................................................................................................... 12

II.      THE LAWSUIT IS BARRED BY THE DOCTRINE OF JUDICIAL ESTOPPEL ....... 13

III.     The COMPLAINT FAILS TO SATISFY BASIC PLEADING STANDARDS ............. 17

      A.     The Complaint Fails to Satisfy Rule 8(a) .......................................... 18

      B.     The Fraud Claim Fails to Satisfy Rule 9(b) ...................................... 21

NOTICE ......................................................................................................................... 22

CONCLUSION ............................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page**

CASES

Ascroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................................18

Barger v. City of Cartersville, GA.,
    348 F.3d 1289 (11th Cir. 2003) ....................................................................................14

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................................18

Burnes v. Pemco Aeroplex, Inc.,
    291 F.3d 1282 (11th Cir. 2002) ...............................................................................14, 15

Chandler v. Samford Univ.,
    35 F.Supp.2d 861 (N.D. Ala. 1999) ..............................................................................15

Fernandez v. Supreme Ct. of Ill.,
    No. 02C3405, 2002 WL 1008468 (N.D. Ill. May 17, 2002) ..................................19

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.),
    398 B.R. 736 (Bankr. S.D.N.Y. 2008) .........................................................................17

Forman v. Salazano (In re Norvergence, Inc.),
    405 B.R. 709 (Bankr. D.N.J. 2009) ...............................................................................18

GJR Inv., Inc. v. Cnty. of Escambia, Fla.,
    132 F.3d 1359 (11th Cir. 1998) .....................................................................................19

Gonzalez v. Asset Acceptance, LLC,
    308 F. App'x 429 (11th Cir. 2009) ................................................................................19

In the Matter of Huggins,
    305 B.R. 63 (Bankr. N.D. Ala. 2004) ...........................................................................14

In re DJK Residential LLC,
    416 B.R. 100 (Bankr. S.D.N.Y. 2009) .........................................................................17

In re Hess,
    404 B.R. 747 (Bankr. S.D.N.Y. 2009) .........................................................................13

In re Lehman Brothers Holdings Inc.,
    No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147 (Bankr. S.D.N.Y. Nov. 10, 2010) ...............21

## TABLE OF AUTHORITIES
(continued)

**Page**

In re MF Global Holdings, Ltd.,
Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847 (Bankr. S.D.N.Y.
Nov. 13, 2012) ...........................................................................................................12, 13

In re Nortel Networks, Inc.,
469 B.R. 478 (Bankr. D. Del. 2012) ......................................................................17

In re Oneida Ltd.,
400 B.R. 384 (Bankr. S.D.N.Y. 2009) ....................................................................12

In re Rockefeller Ctr. Props.,
272 B.R. 524 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr.
Props. (In re Rockefeller Ctr. Props.), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 F.
App'x 40 (2d Cir. 2002)............................................................................................17

In re Sharpe,
391 B.R. 117 (Bankr. N.D. Ala. 2008) ..................................................................20

In re Smith,
No. 12-10142, 2013 WL 665991 (Bankr. D. Vt. Feb. 22, 2013)..............................12

In re W.R. Grace & Co.,
346 B.R. 672 (Bankr. D. Del. 2006) ......................................................................13

Jackson v. Farmers Ins. Group/Fire Ins. Exch.,
No. 09-00114,  2009 WL 3381003 (S.D. Ala. Oct. 19, 2009), aff'd, 391 F. App'x 854
(11th Cir. 2010); cert. denied, 131 S.Ct. 1807 (2011) ...............................................9

Jackson v. Farmers Ins. Group/Fire Ins. Exh.,
26 So. 2d 1276 (Ala. Civ. App. 2008); cert denied, 41 So. 2d 843 (Ala. 2008).......................9

Jones v. Pollard-Buckingham,
348 F.3d 1072 (8th Cir. 2003) ................................................................................18

Labes v. Ocwen Loan Serv'g., Inc.,
No. CV F 09-1172, 2009 WL 3748291 (E.D. Cal. Nov. 5, 2009)...........................19

McMahon v. Hunter,
No. 06 cv 00179-34, 2007 WL 1952906 (M.D. Fla. July 2, 2007) .........................19

Mott v. Fuhrman,
No. 10 CV 00146, 2010 WL 3385338 (N.D. Fla. Aug. 23, 2010) ..........................19

New Hampshire v. Maine,
532 U.S. 742 (2001)..............................................................................................3, 14

iii

**TABLE OF AUTHORITIES**

(continued)

Page

Peck v. Merletti,
  64 F. Supp. 2d 599 (E.D. Va. 1999) ...................................................................................19

Regis Techs., Inc. v. Oien (In re Oien),
  404 B.R. 311 (Bankr. N.D. Ill. 2009) ................................................................................18

Robinson v. Tyson Foods, Inc.,
  595 F.3d 1269 (11th Cir. 2010) ...........................................................................14, 15, 16

Ziemba v. Cascade Intern. Inc.,
  256 F.3d 1194 (11th Cir. 2001) ...................................................................................21, 22

**STATUTES & RULES**

11 U.S.C.
  § 362(a) .................................................................................................................................6
  § 502(a) ...............................................................................................................................12
  § 502(b) .............................................................................................................1, 2, 12, 13
  § 541(a) ...............................................................................................................................16
  § 1107(a) ...............................................................................................................................3
  § 1108 .....................................................................................................................................3
  § 1322(b) ...............................................................................................................................6
  § 1326(a)(1) ...........................................................................................................................7
  § 1328(a) ...............................................................................................................................6

28 U.S.C.
  § 157(b) .................................................................................................................................1
  § 1334 .....................................................................................................................................1
  § 1408 .....................................................................................................................................1
  § 1409 .....................................................................................................................................1

FED. R. BANKR. P.
  Rule 9(b) ...............................................................................................................17, 21, 22
  Rule 1015(b) .........................................................................................................................3
  Rule 3001(f) ........................................................................................................................12
  Rule 3007(a) ...................................................................................................................1, 12
  Rule 9014 .............................................................................................................................17

FED. R. CIV. P.
  Rule 8(a) ...............................................................................................................18, 19, 21

**OTHER AUTHORITIES**

4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012) ....................................................12

ALA. CODE 6-5-251 (1993.).........................................................................................................9

iv

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and its affiliated debtors in the above-captioned Chapter 11 cases (the "Chapter 11 Cases"),[1] as debtors and debtors in possession (collectively, the "Debtors"), hereby file this objection (the "Objection") seeking to disallow and expunge proof of claim number 4443 (the "Claim") filed against the Debtors[2] by Corla Jackson ("Ms. Jackson"), pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the grounds that the Claim is without merit and does not include colorable claims against any of the Debtors.[3]  Accordingly, the Debtors seek entry of an order substantially in the form annexed hereto as Exhibit 1 (the "Proposed Order") granting the requested relief.  In support of the Objection, the Debtors submit the Declaration of Lauren Graham Delehey (annexed hereto as Exhibit 2, the "Delehey Declaration") and respectfully represent as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATE**

1.    This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicate for the relief requested herein is section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

---

[1] The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 6].

[2] The face of the claim lists both "Residential Capital Corp LLC" and "GMAC Mortgage LLC."  The analysis in this Objection would apply equally to all of the Debtors.  A copy of the Claim is attached to the Delehey Declaration as Exhibit M.

[3] The Debtors reserve all their rights to amend or supplement this Objection.

1

## PRELIMINARY STATEMENT

3.     Ms. Jackson asserts a secured and general unsecured claim for $100 million believed by the Debtors to be predicated on a lawsuit (the "District Court Action")[4] pending in the United States District Court for the Southern District of Alabama (the "Alabama District Court") against Debtor GMAC Mortgage, LLC ("GMACM") for which no final judgment has been entered.  As discussed below, Ms. Jackson previously filed numerous pleadings in these Chapter 11 Cases seeking to lift the automatic stay to allow the District Court Action to proceed in the Alabama District Court.  In denying Ms. Jackson's requests, the Court "…made clear that [Ms.] Jackson can file a proof of claim in this case-'Damages claims against the Debtors, as in the Jackson Litigation, are the usual grist for the bankruptcy claims allowance process….'"  See Order Denying Corla Jackson Motion in Reference to Stay Order Violation and Fraud by GMAC at 2 [Docket No. 1720].  On November 9, 2012, Ms. Jackson filed the Claim, stating as the basis for the Claim, "They stole my identity [and] everything I owned causing major damages from 2005-2012 to date."   In support of the Claim, Ms. Jackson attached a confusing collection of documents such as account statements, news articles, medical records, invoices, pleadings filed in the Chapter 11 Cases and pleadings filed in Ms. Jackson's personal bankruptcy cases.  The Debtors have used their best efforts to distill the bases for the Claim from these materials.

4.     For the reasons set forth below, even giving Ms. Jackson wide latitude because she is *pro se*, the Claim should be disallowed and expunged pursuant to Bankruptcy Code section 502(b) on, among others, the grounds that (i) the District Court Action is barred by the doctrine of judicial estoppel, (ii) the District Court Action is predicated on a deficient pleading that

---

[4] Civil Action No. 1:12-CV-00111-KD-B.

though lengthy lacks sufficient specificity and fails to put the Debtors on notice of what they are charged with having done, and (iii) the Claim is wholly lacking in merit.

## BACKGROUND

### A.    The Chapter 11 Cases

5.    On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.    On May 16, 2012, the United States Trustee for the Southern District of New York appointed a nine-member official committee of unsecured creditors [Docket No. 102].

7.    On July 17, 2012, the Court entered an order [Docket No. 798] appointing Kurtzman Carson Consultants LLC ("KCC") as the notice and claims agent in these Chapter 11 Cases.  Among other things, KCC is authorized to (a) receive, maintain, and record and otherwise administer the proofs of claim filed in these Chapter 11 Cases and (b) maintain an official claims register for the Debtors.

8.    On August 29, 2012, this Court entered an order approving the Debtors' motion to establish procedures for filing proofs of claim in the Chapter 11 Cases [Docket No. 1309] (the "Bar Date Order").[5]

---

[5] The Bar Date Order established, among other things, (i) November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline to file proofs of claim by virtually all creditors against the Debtors (the "General Bar Date") and prescribing the form and manner for filing proofs of claim; and (ii) November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time) as the deadline for governmental units to file proofs of claim (the "Governmental Bar Date").  (Bar Date Order ¶¶ 2, 3).  On November 7, 2012, the Court entered an order extending the General Bar Date to November 16, 2012 at 5:00 p.m. (Prevailing Eastern Time) [Docket No. 2093].  The Governmental Bar Date was **not** extended. To date, approximately 7,160 proofs of claim have been filed in these Chapter 11 Cases as reflected on the Debtors' claims register.

ny-1103562

9.      On March 21, 2013, the Court entered an order approving procedures for the filing of objections to proofs of claim filed in these Chapter 11 Cases [Docket No. 3294] (the "Procedures Order"), which approved certain procedures to be applied in connection with objections to claims filed by current or former borrowers (collectively, the "Borrower Claims," and the procedures relating thereto, the "Borrower Claim Procedures"). Based on substantial input from the Creditors' Committee and Special Counsel to the Creditors' Committee for Borrower Issues ("Special Counsel"), the Procedures Order includes specific protections for borrowers and sets forth a process for the Debtors to follow before objecting to certain categories of Borrower Claims. For example, the Borrower Claim Procedures require that, prior to objecting to certain categories of Borrower Claims, the Debtors must furnish the individual borrower with a letter, with notice to Special Counsel, requesting additional documentation in support of the purported claim (the "Request Letter"). See Procedures Order at 4.

10.      The Debtors, in consultation with Special Counsel, determined not to send a Request Letter to Ms. Jackson in light of her involvement in these Chapter 11 Cases, which is discussed further below.

### B.      Loan History & Prepetition Litigation[6]

11.      On May 26, 2004, Ms. Jackson obtained a home mortgage loan (the "Loan") from Option One Mortgage Corporation ("Option One") and executed a note (the "Note") in the amount of $240,000.00.  GMACM was the servicer on the Loan.  Option One later assigned (the "Assignment") the Note to GMACM.[7]

---

[6] The Court previously addressed the details of the Claimant's prepetition litigation with the Debtors.  See Order Denying Corla Jackson Motion in Reference to Stay Order Violations and Fraud by GMAC [Docket No. 1720].

[7] In June 2008, Option One assigned the Loan to GMACM.  True and correct copies of the Note and the Assignment are attached to the Delehey Declaration as Exhibits A and B, respectively.

4

12.    The Note was secured by a mortgage on property located at 13230 Tom Gaston

Road, Mobile, Alabama 36695-8658 (the "Property").

13.    In June 2005, Ms. Jackson filed the first of three successive Chapter 13

bankruptcy cases[8] (the "First Jackson Bankruptcy") in the United States Bankruptcy Court for

the Southern District of Alabama (the "Alabama Bankruptcy Court").

14.    On June 14, 2005, GMACM filed a proof of claim in the First Jackson

Bankruptcy in the amount of $238,946.35 for the amount of the Loan, plus interest ("Claim No.

1").[9]    On October 25, 2005, the Alabama Bankruptcy Court entered an order confirming the

Claimant's Chapter 13 plan (the "Chapter 13 Plan"), pursuant to which the Claimant was

directed to make payments on unpaid arrearages owed (the "Arrearages") and to continue to

make timely current post-petition payments on account of the Loan.[10]

15.    On January 20, 2006, GMACM moved for relief from the automatic stay in the

First Jackson Bankruptcy on the basis that GMACM did not receive post-petition regular

monthly mortgage payments and the Loan had been in default since July 2005.[11]    The Alabama

Bankruptcy Court entered an order conditionally denying GMACM's request for relief (the

"First GMACM Stay Relief Order") subject to the following terms: (i) Ms. Jackson would pay

the new arrearages (the "Supplemental Arrearages"); (ii) GMACM was granted leave to file a

proof of claim in the amount of the Supplemental Arrearages; (iii) Ms. Jackson was directed to

---

[8] In re Corla R. Jackson, No. 05-13142 (Bankr. S.D. Ala., filed June 1, 2005).  A copy of the docket maintained in the First Jackson Bankruptcy is attached to the Delehey Declaration as Exhibit C.

[9] See Proof of Claim of GMACM, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. Jun. 15, 2005).

[10] See Chapter 13 Plan, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. June 1, 2005) [Docket No. 3] (providing that "A holder of a secured claim shall retain the lien securing the claim, unless otherwise provided herein."); see also Order Confirming Plan and Payment Order, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. Oct. 25, 2005) [Docket No. 21].

[11] See Motion for Relief from Automatic Stay Filed by GMAC Mortgage Corporation, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. Jan. 20, 2006) [Docket No. 23].

ny-1103562

make timely current monthly post-petition payments to GMACM on account of the Loan in accordance with the Chapter 13 Plan; and (iv) should Ms. Jackson fail to cure any payment default within ten days of receipt of a notice of default (a "Notice of Default"), the automatic stay imposed pursuant to Bankruptcy Code section 362(a) would automatically terminate to permit GMACM to exercise remedies against its collateral without further order of the Alabama Bankruptcy Court.[12]

16.    In accordance with the First GMACM Stay Relief Order, on March 6, 2006, GMACM filed a second proof of claim against the Claimant with respect to the amount of the Supplemental Arrearages ("Claim No. 7").[13]

17.    On June 8, 2006, and again on August 29, 2006, GMACM sent Ms. Jackson Notices of Default for missed mortgage payments, which were never cured.[14] See Delehey Declaration ¶ 6. In accordance with the First GMACM Stay Relief Order, the automatic stay imposed by Bankruptcy Code section 362(a) terminated with respect to the Property. As a result of that relief, and because GMACM was entitled to begin foreclosure proceedings against the Property, GMACM did not oppose the Chapter 13 trustee's objections to Claim Nos. 1 and 7, and the claims were disallowed. The First Jackson Bankruptcy was closed on January 20, 2010. However, by operation of the Chapter 13 Plan, the Confirmation Order, Bankruptcy Code sections 1322(b)(2), (b)(5), and 1328(a),[15] and the relief granted pursuant to the First GMACM Stay Relief Order, Ms. Jackson was not discharged of her obligations under the Loan, including payment of Arrearages, Supplemental Arrearages and postpetition monthly payments.

---

[12] See First Conditional GMACM Stay Relief Order, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. March 1, 2006) [Docket No. 30].

[13] See Proof of Claim of GMACM, In re Corla R. Jackson, Case No. 05-13142 (Bankr. S.D. Ala. Mar. 6, 2005).

[14] See Notices of Default, dated June 8 and August 29, 2006, which are attached as Exhibit D to the Delehey Declaration.

[15] See 11 U.S.C. §§ 1322(b)(2) and (b)(5) and 11 U.S.C. § 1328(a).

6

18.     On October 15, 2010, Ms. Jackson filed a second voluntary petition for relief in the Alabama Bankruptcy Court under Chapter 13 of the Bankruptcy Code (the "Second Jackson Bankruptcy").[16]  On December 20, 2010, less than two months later, the Alabama Bankruptcy Court dismissed the Second Jackson Bankruptcy for "failure to pay [preconfirmation] Chapter 13 plan payments" as required by Bankruptcy Code section 1326(a)(1).[17]

19.     On April 18, 2011, Ms. Jackson filed a third voluntary petition for Chapter 13 relief in the Alabama Bankruptcy Court (the "Third Jackson Bankruptcy").[18]  She was represented by counsel in the case.

20.     Ms. Jackson did not list any potential claims or causes of action against GMACM or Option One in her Schedules and Statement of Financial Affairs (together, the "SSFA") filed in the Third Jackson Bankruptcy or in any amendments to them.  See Delehey Declaration ¶ 10.  Ms. Jackson did, however, list an unliquidated claim against Farmers Insurance Company ("Farmers Insurance") in Item 20 of her Statement of Financial Affairs valued at $1.

21.     On July 25, 2011, GMACM filed a motion for relief from the automatic stay in the Third Jackson Bankruptcy on the basis that the Loan was in default.[19]  On August 29, 2011, the Alabama Bankruptcy Court entered an order conditionally denying such request, subject to Ms. Jackson's compliance with continued payment terms substantially similar to those set forth

---

[16] See Chapter 13 Voluntary Petition, In re Corla R. Jackson, Case No. 10-04820 (Bankr. S.D. Ala. Oct. 15, 2010) [Docket No. 1].  A copy of the docket maintained in the Second Jackson Bankruptcy is attached to the Delehey Declaration as Exhibit E.

[17] See Order Dismissing Chapter 13 Case, In re Corla R. Jackson, Case No. 10-04820 (Bankr. S.D. Ala. Dec. 20, 2010) [Docket No. 13].

[18] See Chapter 13 Voluntary Petition, In re Corla R. Jackson, Case No. 11-01545 (Bankr. S.D. Ala. Apr. 18, 2011) [Docket No. 1].  A copy of the docket maintained in the Third Jackson Bankruptcy is attached to the Delehey Declaration as Exhibit F.

[19] See Motion for Relief From Automatic Stay Filed by GMAC Mortgage, LLC, In re Corla R. Jackson, Case No. 11-01545 (Bankr. S.D. Ala. Jul. 25, 2011) [Docket No. 42].

in the First GMACM Stay Relief Order (the "Second GMACM Stay Relief Order").[20]    On

October 11, 2011, GMACM filed a notice of the termination of the automatic stay because Ms.

Jackson had defaulted under the terms of the Second GMACM Stay Relief Order.[21]    On

December 8, 2011, the Alabama Bankruptcy Court denied Ms. Jackson's motion to re-impose

the automatic stay.[22] See Delehey Declaration ¶ 11.

22.    On October 5, 2011, Ms. Jackson filed a nebulous Summary of Amendments to

her Chapter 13 Plan in the Third Jackson Bankruptcy.  This document amended question seven

concerning curing defaults and maintaining direct payment to reflect that the GMAC Mortgage

"monthly note [was] contested and protected."  [Docket No. 65].  Ms. Jackson did not otherwise

elaborate on this statement.   She did not disclose any alleged affirmative claims against

GMACM.  See Delehey Declaration ¶ 12.[23]

23.    Yet just a few months later, on January 18, 2012, Ms. Jackson commenced a

lawsuit against GMACM in Alabama state court, asserting numerous claims against the Debtors,

including fraud (the "State Court Action").   This was well *before* GMACM even began

foreclosure proceedings.[24]  Among the allegations made in the State Court Action is an assertion

that GMACM did not own the Note.  Additionally, Ms. Jackson alleges that GMACM violated a

pooling and servicing agreement to which Ms. Jackson purportedly is a third-party beneficiary.

Ms. Jackson also sought damages as a result of GMACM's and/or Farmers Insurance's alleged

---

[20] See Second Order Conditionally Denying Motion to Reinstate the Stay as to GMAC Mortgage, LLC, In re Corla R. Jackson, Case No. 11-01545 (Bankr. S.D. Ala. Aug. 29, 2011) [Docket No. 59].

[21] See Notice of Termination of the Automatic Stay by GMAC Mortgage, LLC, In re Corla R. Jackson, Case No. 11-01545 (Bankr. S.D. Ala. Oct. 11, 2011) [Docket No. 70].

[22] See Order on Debtor's Motion to Reinstate the Stay as to GMAC Mortgage, LLC, In re Corla R. Jackson, Case No. 11-01545 (Bankr. S.D. Ala. Dec. 8, 2011) [Docket No. 89].

[23] On March 7, 2012, Ms. Jackson filed another Summary of Amendments and deleted her previous amendment regarding contesting her mortgage. See Delehey Declaration ¶ 13.

[24] As discussed below, GMACM foreclosed on the Property in June 2012.

8

failure to repair the Property after it suffered hurricane damage.  These claims relate to periods *preceding* the Third Jackson Bankruptcy.[25]  GMACM removed the State Court Action to the Alabama District Court, where it became the District Court Action.[26]

24.    On March 8, 2012, GMACM filed a Motion to Dismiss Ms. Jackson's claims in the District Court Action based on judicial estoppel, and failure to comply with minimum pleading standards.  That motion remains pending because it was not decided before the Debtors filed these Chapter 11 Cases in May of 2012.

25.    Moreover, on June 1, 2012, GMACM finally foreclosed upon the Property and purchased it at the non-judicial foreclosure sale.[27]  See Delehey Declaration ¶ 15.  At the time of the foreclosure, GMACM was both the servicer and the owner of the Note.  In June 2012, GMACM sent a notice of demand for possession of the Property in accordance with Alabama state law.  Because Ms. Jackson has not vacated the Property and remains in possession,[28] her right of redemption of the foreclosure has been waived pursuant to Alabama state law.  ALA. CODE 6-5-251 (1993.)

---

[25] Ms. Jackson has an extensive prior litigation history involving the Property, including extensive litigation concerning a casualty insurance dispute. See Jackson v. Farmers Ins. Group/Fire Ins. Exch., 26 So. 2d 1276 (Ala. Civ. App. 2008); cert denied, 41 So. 2d 843 (Ala. 2008); Jackson v. Farmers Ins. Group/Fire Ins. Exch., No. 09-00114, 2009 WL 3381003 (S.D. Ala. Oct. 19, 2009), aff'd, 391 F. App'x 854 (11th Cir. 2010); cert. denied, 131 S.Ct. 1807 (2011) (all related to an alleged failure to properly repair the subject property following hurricanes Katrina and Ivan and alleging collusion between GMACM and the insurance company and all dismissed/affirmed.). These actions did not explicitly name GMACM as a defendant.  As reviewed below, infra Section C, Ms. Jackson's litigiousness has continued in the Chapter 11 Cases.

[26] Jackson v. GMAC Mortgage Corp, Case No. 12-cv-00111-KD-B (S.D. Ala. Feb. 23, 2012) [Docket No. 1].  A copy of the complaint filed by Ms. Jackson is attached to the Delehey Declaration as Exhibit J.

[27] See Notice of Acceleration of Promissory Note and Mortgage, which is attached to the Delehey Declaration as Exhibit K.

[28] The Debtors commenced an eviction proceeding in the District Court of Mobile County, case number 12-cv-001111-KD-B, which was dismissed for procedural technicalities on July 1, 2013.

26.     The Debtors filed a Notice of Bankruptcy in the District Court Action on May 25, 2012 and the Alabama District Court issued a May 31, 2012 Order placing the case on its administrative docket.  See Delehey Declaration ¶ 18.

C.     **Ms. Jackson and These Chapter 11 Cases**

27.     As noted above, *supra* n. 26, Ms. Jackson has been active in the Chapter 11 Cases.  On June 8, 2012, Ms. Jackson filed her Motion for Relief of Stay (the "First Stay Relief Motion") seeking to continue the District Court Action against GMACM [Docket No. 264].  On July 19, 2012, she filed an amended motion to lift the automatic stay [Docket No. 856] (the "Amended Stay Relief Motion," and together with the First Stay Relief Motion, the "Stay Relief Motions").

28.     On July 3, 2012, the Debtors filed the Debtors' Omnibus Objection to Motions for Relief from the Automatic Stay Scheduled for Hearing on July 10, 2012 [Docket No. 682], which included an objection to the Stay Relief Motions.

29.     On August 16, 2012, the Court issued its Memorandum Opinion and Order Denying the Jackson Motion to Lift the Automatic Stay (the "First Order Denying Stay Relief") [Docket No. 1184], which denied the relief sought in the Stay Relief Motions.  Essentially, the Court concluded that it was an adequate and appropriate forum in which to liquidate Ms. Jackson's alleged claims.[29]

30.     On August 14, 2012, Ms. Jackson filed her Motion in Reference to Stay Order Violations by GMAC-GMAC Mortgage Violated Stay Order Violation re: GMAC Mortgage

---

[29]   See First Order Denying Stay Relief ("Damages claims against the Debtors, as in the Jackson Litigation, are the usual grist for the bankruptcy claims allowance process; absent unusual circumstances the bankruptcy court remains the appropriate forum to resolve such claims.").

10

Fabricated Documents and Sold Jackson Home Illegally [Docket No. 1229] (the "Stay Violation Motion").

31.    On September 20, 2012, the Debtors filed the Debtors' Objection to Motion of Corla Jackson [Docket No. 1499] in response to the Stay Violation Motion.  The Debtors' Objection to Motion of Corla Jackson sets forth, in detail, the procedural history of Ms. Jackson's three previous Chapter 13 cases.

32.    On October 4, 2012, the Court issued its Order Denying Corla Jackson Motion in Reference to Stay Order Violations and Fraud by GMAC (the "Order Denying Stay Violation Motion" and together with the First Order Denying Stay Relief, the "Orders Denying Stay Relief") [Docket No. 1720].

33.    On September 27, 2012, Ms. Jackson filed the First Reconsideration Motion.[30]

34.    On November 19, 2012, Ms. Jackson filed the Second Reconsideration Motion, which is styled as a motion for "1) Emergency Stay Order, 2) Fraud of the Court Under Rule 60(b) and 59(b), 3) Tort, 4) Violation of Federal Stay Order in the United States District Court for the Southern District of Alabama, 5) Violation of Previous Court Orders, 6) Motion to Re-Consider Relief of Stay, 7) Emergency Injunction ("Defendant[] was not granted a proof of claim under Judge Mohaney aft[e]r March 2006 on Fake Arrearages") [Docket No. 2248].

35.    On January 28, 2013, the Court denied both the First Reconsideration Motion and the Second Reconsideration Motion [Docket Nos. 2724 & 2725].

---

[30]The First Reconsideration Motion restates verbatim a portion of her previous Stay Relief Motions, with the addition of what appears to be an excerpt of a news article regarding lawsuits filed by the Financial Guaranty Insurance Company against Ally Financial Inc., the Debtors' non-Debtor indirect parent and Residential Funding Company LLC, a Debtor, but provides no explanation as to how this excerpt relates to the relief Ms. Jackson is seeking [Docket No. 1604] (the "First Reconsideration Motion").

11

36.    On November 9, 2012, Ms. Jackson filed the Claim against the Debtors, asserting a claim in the amount of **$100 million.**

## RELIEF REQUESTED

37.    The Debtors file this Objection pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a), seeking to disallow and expunge the Claim in its entirety.

## OBJECTION

38.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  A properly completed proof of claim is *prima facie* evidence of the validity and amount of a claim.  See FED. R. BANKR. P. 3001(f).  A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded.  See 4 COLLIER ON BANKRUPTCY ¶ 502.02[2] (16th ed. rev. 2012).

39.    Although Bankruptcy Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof "[r]ests on different parties at different times."  In re Smith, No. 12-10142, 2013 WL 665991, at *6 (Bankr. D. Vt. Feb. 22, 2013) (citation omitted).  The party objecting to the proof of claim "bears the initial burden of providing evidence to show that the proof of claim should not be allowed."  In re MF Global Holdings, Ltd., Nos. 11-15059 (MG), 11-02790 (MG) (SIPA), 2012 WL 5499847, at * 3 (Bankr. S.D.N.Y. Nov. 13, 2012).  If the objecting party satisfies its initial burden and "the presumption of *prima facie* validity is overcome—*e.g.*, the objecting party establishes that the proof of claim lacks a sound legal basis—the burden shifts to the claimant to support its proof of claim unless the claimant would not bear that burden outside of bankruptcy."  Id. (citing In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion.  The burden then shifts to the

12

claimant if the objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.")).  Once the burden is shifted back to the claimant, "it must prove its claim by a preponderance of the evidence." Id. (citations omitted).

40.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  Whether a claim is allowable is "generally is determined by applicable nonbankruptcy law." In re W.R. Grace & Co., 346 B.R. 672, 674 (Bankr. D. Del. 2006).  "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." In re Hess, 404 B.R. 747, 749 (Bankr. S.D.N.Y. 2009) (quoting Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946)).

## II.    THE LAWSUIT IS BARRED BY THE DOCTRINE OF JUDICIAL ESTOPPEL

41.    The Claim references the (stayed) District Court Action.  The Claim should be disallowed and expunged because the District Court Action is barred by the equitable doctrine of judicial estoppel.[31]

42.    As the Eleventh Circuit has explained,

> The purpose of **judicial estoppel** is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001). Specifically, **judicial estoppel** is designed to "prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding." 18 Moore's Federal Practice § 134.30 (3d ed. 2008). In

---

[31] The Debtors made this argument in their pending motion in the now-stayed District Court Action.

> New Hampshire v. Maine, the Supreme Court recognized that
> while the circumstances under which a court might invoke **judicial
> estoppel** will vary, three factors typically inform the decision: (1)
> whether the present position is clearly inconsistent with the earlier
> position; (2) whether the party succeeded in persuading a court to
> accept the earlier position, so that judicial acceptance of the
> inconsistent position in a later proceeding would create the
> perception that either the first or second court was mislead and; (3)
> whether the party advancing the inconsistent position would derive
> an unfair advantage. Id. at 750-51, 121 S.Ct. at 1815-16.

Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010) (emphasis added) (Chapter 13 debtor judicially estopped from pursuing claims she filed in another forum postpetition that she did not include in her original schedules or any amendment to them or to her plan).[32]

43.     The two primary factors in the application of judicial estoppel are (i) whether the subject took the allegedly inconsistent positions under oath, and (ii) whether the inconsistencies are shown to have been calculated to make a mockery of the judicial system.  Id. at 1273 (citing Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).  Practically, judicial estoppel is applicable where a party asserts a position in a proceeding, but thereafter assumes a contrary position, and such inconsistencies create the inference that the court has been misled. New Hampshire v. Maine., 532 U.S. 742, 749 (2001); Barger v. City of Cartersville, GA., 348 F.3d 1289, 1293-94 (11th Cir. 2003); In the Matter of Huggins, 305 B.R. 63 (Bankr. N.D. Ala. 2004).

44.     A debtor's assertion of existing claims against third parties that the debtor did not disclose as assets of the bankruptcy estate in the debtor's earlier bankruptcy proceeding constitutes an assumption of inconsistent positions, thereby satisfying the first prong of judicial estoppel.  Robinson, 595 F.3d at 1274-75.  The duty to disclose extends to prepetition claims

---

[32] Because the goal of the doctrine of judicial estoppel is protecting the integrity of the judicial system itself, the nondisclosure of claims that would be assets of the bankruptcy estate need not have harmed any party to the bankruptcy.  See Robinson, 595 F.3d at 1275.

asserted after the debtor filed the bankruptcy case: in such circumstances, the debtor should amend her bankruptcy filings accordingly.  Id.  With respect to the second prong of the judicial estoppel analysis, courts have found that the combination of a party's knowledge of the claim and motive for concealment where there is an affirmative duty to disclose the claim provides sufficient evidence of intent to manipulate the judicial system.  Id. at 1275; Chandler v. Samford Univ., 35 F.Supp.2d 861, 864 (N.D. Ala. 1999).  The Eleventh Circuit has held that a debtor's failure to disclose claims is construed as unintentional only when "the debtor [   ] lacks knowledge of the undisclosed claims or has no motive for their concealment."  Robinson, 595 F.3d at 1275; Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).

45.    Ms. Jackson's failure to disclose her claims against GMACM in the Third Jackson Bankruptcy constitutes an assumption of inconsistent positions and satisfies the first requirement for judicial estoppel.  As noted above, Ms. Jackson filed the Third Jackson Bankruptcy on April 18, 2011.  On June 21, 2011, Ms. Jackson filed her SSFA.  Ms. Jackson did not list any claims against GMACM on the SSFA.  During the pendency of the bankruptcy, Ms. Jackson amended her Chapter 13 plan to include a reference that the Note was contested, but did not disclose the existence of affirmative claims against GMACM.  Nor can Ms. Jackson claim that she did not know that she had claims when she prepared her SSFA.  Her prior litigation against others shows that she knows what it is to have claims and the Claim clearly relates to events that occurred prior to the Third Jackson Bankruptcy.  Item 21 of Schedule B asks for "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each."  This incontestably called for her to disclose her alleged claims against GMACM regardless of whether she had sued already.  Indeed, Ms. Jackson listed the unliquidated claim against Farmers Insurance with

15

respect to hurricane damage in her Schedule B (in item 20 rather than 21). Plainly, between her own bankruptcy experience and guidance from her counsel in the Third Jackson Bankruptcy, Ms. Jackson knew that existing claims, whether or not the subject of a lawsuit, are estate assets that must be disclosed on the SSFA. And even if she did not know that she had claims when she filed the SSFA, she clearly knew she did when she filed the State Court Action (later the District Court Action) in January of 2012, but she did not thereupon amend the SSFA. Indeed, the facts of this case in this regard are virtually identical to those in <u>Robinson</u>.

46.     The second prong in the judicial estoppel analysis is also satisfied. Ms. Jackson obviously had knowledge of her claims against GMACM during the Third Jackson Bankruptcy since they arose from alleged prepetition conduct and events to which she was a party. In any case, she filed the District Court Action while the Third Jackson Bankruptcy was still pending. Considering Ms. Jackson's bankruptcy experience (a three-time filer), having been represented by counsel in the Third Jackson Bankruptcy, having filed lawsuits before, and having listed a claim against Farmers Insurance, Ms. Jackson was well aware that she had the alleged claims against GMACM and that she had an affirmative duty to disclose and continue to disclose all interests in property that she had prepetition or acquires postpetition. 11 U.S.C. §§ 541(a)(1) & (7).

47.     Moreover, Ms. Jackson had motive to conceal her potential claims against GMACM from the Alabama Bankruptcy Court to allow her to recover funds that may have otherwise been paid to her creditors. <u>See</u> <u>Robinson</u>, 595 F.3d at 1275-76 (intent to conceal inferred even though debtor proposed full payment plan). Here, Ms. Jackson's motive to conceal is even greater than it was in <u>Robinson</u> because her plan did not contemplate paying creditors in full; thus, she would have had to share what she clearly contemplated were the considerable

proceeds of the District Court Action with her creditors. By contrast, valuing it at only $1, she

readily scheduled her alleged claim against Farmers Insurance.

48.     Therefore, the Claim should be disallowed and expunged based upon application

of the doctrine of judicial estoppel.

## III.    THE COMPLAINT FAILS TO SATISFY BASIC PLEADING STANDARDS

49.     Several courts, including those in this district, have applied the federal pleadings

standards when assessing the validity of a proof of claim. See In re DJK Residential LLC, 416

B.R. 100, 106 (Bankr. S.D.N.Y. 2009) ("In determining whether a party has met their burden in

connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set

forth in the Federal Rules of Civil Procedure.") (citing In re Rockefeller Ctr. Props., 272 B.R.

524, 542 n.17 (Bankr. S.D.N.Y. 2000), aff'd sub nom., NBC v. Rockefeller Ctr. Props. (In re

Rockefeller Ctr. Props.), 226 B.R. 52 (S.D.N.Y. 2001), aff'd, 46 F. App'x 40 (2d Cir. 2002);

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.), 398 B.R. 736, 748 (Bankr.

S.D.N.Y. 2008) ("The documents attached to the proofs of claim should be treated, for purposes

of a motion to disallow claims, like documents that are attached to or relied upon in a complaint

are treated on a Rule 12(b)(6) motion to dismiss. . .") (citation omitted); In re Nortel Networks,

Inc., 469 B.R. 478, 479 (Bankr. D. Del. 2012) (applying the standards of Rule 9(b) to a review of

amended claims that asserted claims for, inter alia, breach of fiduciary duty, aiding and abetting

breach of fiduciary duty, civil conspiracy, unjust enrichment, and subrogation). Indeed, since a

claim objection is a contested matter under Fed. R. Bankr. P. 9014(a), Rule 9(b) applies per Fed.

R. Bankr. P. 9014(c).

50.     As discussed herein, for a proof of claim to be allowed, the allegations in the

claim must meet the pleadings requirements of the Federal Rules of Civil Procedure (the

"Rules"). The Claim should be disallowed and expunged from the Debtors' claims register in its

entirety because the District Court Action is predicated on a complaint that both is deficient in detail and intelligibility and fails to state a single valid colorable claim against any of the Debtors.

### A.    The Complaint Fails to Satisfy Rule 8(a)

51.    Pursuant to Federal Rule of Civil Procedure 8(a)(2), a "pleading that states a claim for relief must contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief."). Fed. R. Civ. P. 8(a)(2) (emphasis added). Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ascroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). It is insufficient for a complaint to simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561 (2007). Rather, a complaint must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). The purpose of Rule 8(a)(2) is to ensure that the complaint "give[s] enough [coherent] detail to illuminate the nature of the claims *and allow defendants to respond.*" Regis Techs., Inc. v. Oien (In re Oien), 404 B.R. 311, 317 (Bankr. N.D. Ill. 2009) (emphasis added) (citations and internal quotation marks omitted). In other words, each defendant must know what he is charged with. See, e.g., Jones v. Pollard-Buckingham, 348 F.3d 1072, 1073 (8th Cir. 2003) (though inartful, *pro se* complaint satisfied Rule 8(a)(2) because "[it] clearly identified how each defendant was involved in the conduct about which . . . [the plaintiff] complains."); Forman v. Salazano (In re Norvergence, Inc.), 405 B.R. 709, 736-37 (Bankr. D.N.J. 2009) (complaint's setoff allegations inadequate because, among other things, it did not identify specific defendants with specific transactions).

18

52.    While *pro se* pleadings are construed more liberally, "the court is not permitted to serve as a '*de facto* counsel' and 'rewrite an otherwise deficient pleading in order to sustain an action.'"  Gonzalez v. Asset Acceptance, LLC, 308 F. App'x 429, 430 (11th Cir. 2009) (citing GJR Inv., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)).  Even *pro se* plaintiffs are "required to follow the minimum pleading standards set forth in the Federal Rules of Civil Procedure."  McMahon v. Hunter, No. 06 cv 00179-34, 2007 WL 1952906, at *6 (M.D. Fla. July 2, 2007) (citations omitted).  See also Mott v. Fuhrman, No. 10 CV 00146, 2010 WL 3385338, at *1 (N.D. Fla. Aug. 23, 2010) ("It cannot be assumed that a [*pro se*] Plaintiff will prove facts which have not been alleged.") (citations omitted).

53.    Furthermore, a complaint is improperly plead "where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  Labes v. Ocwen Loan Serv'g., Inc., No. CV F 09-1172, 2009 WL 3748291, at *1 (E.D. Cal. Nov. 5, 2009) (citing cases); Peck v. Merletti, 64 F. Supp. 2d 599, 602 (E.D. Va. 1999) (dismissing a *pro se* complaint that contained "hundreds of pages" of  "gibberish or nonsensical rambling"); Fernandez v. Supreme Ct. of Ill., No. 02C3405, 2002 WL 1008468, at *1 (N.D. Ill. May 17, 2002) (dismissing complaint that was "unnecessarily lengthy, redundant, and confusing, making it difficult to determine which alleged wrongdoings, if any, constitute the claimed violations of federal and state law").  Per Rule 8(a), a complaint must also provide a plain, simple and coherent statement of facts giving rise to the plaintiff's right to relief.

54.    The Claim, and the Complaint upon which it is based, fail to satisfy these basic pleading standards in a number of ways.

55.     *First*, the Claim and the Complaint are unintelligible.   Even with a *pro se* claimant, the Debtors should not have to comb the mass of paper making up the Claim to try to construct a comprehensible story.

56.     *Second*, to the extent that the Claim and Complaint do contain intelligible allegations, those allegations fail to provide the necessary detail to put each of the Debtors on notice of what they are specifically alleged to have done and how that has harmed Ms. Jackson.

57.     Thus, for example, upon review of the Claim and of the Complaint, the Debtors (and, the Debtors believe, the Court) cannot find facts underlying Ms. Jackson's allegation that they or anyone else, for that matter, stole Ms. Jackson's identity.

58.     Moreover, on the merits, the long-winded recitation of purported "facts" is devoid of facts that, if proved, would entitle Ms. Jackson to relief under federal or state law.   For example, it appears that Ms. Jackson is alleging wrongful foreclosure under Alabama law.   This cause of action is "an equitable one typically brought against a mortgagee who goes outside the boundaries of a mortgage to foreclose for reasons not allowed by the mortgage." In re Sharpe, 391 B.R. 117, 152-53 (Bankr. N.D. Ala. 2008) (quoting Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n., 607 So. 2d 180, 182 (Ala. 1992)).  It follows that a sale may be set aside where the mortgagor offers to pay all that is due, where the debt is not actually due, where the sale is not properly advertised or notice given, or where the price is grossly inadequate.  See First Nat'l. Bank v. Wise, 177 So. 636 (Ala. 1937).  Yet Ms. Jackson makes no such allegations.   A claim for wrongful foreclosure, if Ms. Jackson means to assert one, is therefore deficient on its face.

59.     Finally, the Claim is insufficient because Ms. Jackson provides neither any explanation as to why she is entitled to a $100 million claim, nor any calculation of the $100

20

million claim amount.  For these reasons, the Claim is not prima facie valid.  See In re Lehman

Brothers Holdings Inc., No. 08-13555 (JMP), 2010 Bankr. LEXIS 4147, at *8 (Bankr. S.D.N.Y.

Nov. 10, 2010) (determining that the claims were "so lacking in supporting evidence and logical

linkage to the Debtors' cases, they are not entitled to any presumption that they are *prima facie*

valid, and the burden of proof has shifted to [claimant]," and further disallowing such claims,

noting that they were "founded on pure speculation") Id. at 13.  Unless the Claim is disallowed

and expunged, Ms. Jackson—who does not hold a valid claim against the Debtors—would be

entitled to recover from the Debtors' estates unjustifiably to the extreme detriment of other

creditors in these Chapter 11 Cases.

### B.    The Fraud Claim Fails to Satisfy Rule 9(b)

60.    Additionally, Ms. Jackson's fraud claim should be dismissed because it fails to

satisfy the general pleading requirements of Rule 8(a), much less the heightened pleading

requirements of Rule 9(b). Under Rule 9(b), for allegations involving fraud, "a party must state

with particularity the circumstances constituting the fraud or mistake." In Ziemba v. Cascade

Intern. Inc., the Eleventh Circuit reiterated that in order to satisfy the heightened pleading

requirements of Rule 9(b), a cause of action for fraud must set forth the following:

- precisely what statements were made in what documents or oral representations or what omissions were made; and
- the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
- the content of such statements and the manner in which they misled the plaintiff, and
- what the defendant obtained as a consequence of the fraud.

See Ziemba v. Cascade Intern. Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). (citation omitted)

61.    "The particularity rule serves an important purpose in fraud actions by alerting

defendants to the 'precise misconduct with which they are charged' and protecting defendants

'against spurious charges of immoral and fraudulent behavior.'" Id. (internal citations omitted).

Ms. Jackson's Complaint fails to set forth *any* of the particularized information required under

either rule 9(b), and as such should be dismissed.

## **NOTICE**

62.     The Debtors have provided notice of this Objection in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141] and

the Procedures Order, approved by this Court on March 21, 2013 [Docket No. 3294].

ny-1103562

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem

proper.

Dated: September 18, 2013

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Adam A. Lewis
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors and
Debtors in Possession*

-and-

BRADLEY ARANT BOULT
CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35202
Telephone:   (205) 521-8810
Facsimile:    (205) 488-6810
Blake B. Goodsell (Admission Pending)
Jon H. Patterson (Admission Pending)

*Counsel for the Debtors and
Debtors in Possession*