# Exhibit A

Shipment:    092012 PH LEGAL 01 - 09/20/2012 09:51    Print Date : 9/20/2012 9:53:21 AM

# GMAC Mortgage File Header



## *HEDRF+HEDR+85430118*

GMAC Loan Number **0835002124**

Package Type Code **BLM_LEGAL**

| | | | | |
|---|---|---|---|---|
| Object ID | **85430118** | Lien Priority | **First Lien** |
| Borrower Name | **JACKSON C** | Investor Name | |
| Property Address | **13230 TOM GASTON RD** | RFC Asset ID | |
| ACS Loan ID | **6528526** | DTS Loan ID | **7527856** |
| Box ID | **85430117** | Mortgage Type | **C** |
| SLA Due | **09/21/2012 12:00 AM** | Branch Code | **3819** |
| Shipment Date | | Loan Amount | **240000** |

### Prepper Barcode (MUST be placed within this area)

**ALERTS!**

*0835002124*
GMAC Loan Numb

*+85430118*
Object ID

| Total Number of Documents |
|---|
| (Including Header Sheet) |

Scanner Batch

Documents in Batch        Pages in Batch        Scanner ID

*Adhoc Scan/Index*

Due

MAY-26-2004  12:29      OPTION ONE HOUSE                    678 419 0852    P.05

Loan Number: 651003367        Servicing Number: 001347464-8        Date: 05/26/04

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

13230   TOM GASTON RD,   MOBILE, AL 36695-8658

[Property Address]

1.    **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S.    $240,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
        Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of    7.650%        . The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.    **PAYMENTS**
    (A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    August 01    , 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
        July 01    , 2034    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    OPTION ONE MORTGAGE CORPORATION
        P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
    (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S.    $1,702.83        . This amount may change.
    (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
    (D) Application of Payments
Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    (A) Change Dates
The interest rate I will pay may change on the first day of    July 01    , 2006    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
    (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
    FIVE  AND  7/10        percentage point(s) (  5.700%    ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**ALABAMA ADJUSTABLE RATE NOTE-LIBOR INDEX - Single Family**
Page 1 of 3

ALNT0021.wp (04-12-02)

MAY-26-2004  12:29        OPTION ONE HOUSE                    678 419 0852    P.06

Loan Number: 651003367        Servicing Number: 001347464-8        Date: 05/26/04

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.650%    or less than 7.650%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    13.650%    or less than    7.650%    .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within 12 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases, a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. In no event will such a charge be made unless it is authorized by state or federal law. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MAY-26-2004  12:30    OPTION ONE HOUSE                    678 419 0852    P.07

Loan Number: 651003367        Servicing Number:  001347464-8        Date: 05/26/04

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Corla Jackson_  5/26/04  (Seal)          _____ (Seal)
CORLA   JACKSON              -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                    -Borrower

[Sign Original Only]

ALNT0023.wp (04-12-02)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: CORLA  JACKSON
Loan #: 651003367
Property Address: 13230  TOM GASTON RD,    MOBILE, AL 36695-8658
Loan Amount: $240,000.00

Note Date: 05/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

                                    Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
        Jeanette Perrenoud

        Assistant Secretary

Page 1 of 1                                                              USD3050.wp (03-14-03)

2004042906  Book-5605  Page-1910
Total Number of Pages: 11

**WHEN RECORDED MAIL TO:**
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

28.50
360.00
388.50
10.00
398.50
2.00
400.50

**ORIGINAL**

HERITAGE Title, LLC    $240,000.00

Loan Number: 651003367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

# MORTGAGE

   THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004          . The grantor is
CORLA JACKSON, A  SINGLE WOMAN


("Borrower"). This Security Instrument is given to
         Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                               , and whose
address is
                       3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
           . . . AND NO/100THs          Dollars (U.S.  $240,000.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debts, if not paid earlier, due and payable on July 01, 2034
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                                         Mobile                          County, Alabama:
02-35-06-23-0-000-002.010
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

State of Alabama - Mobile County
I certify this instrument was filed on:

Thu, Jun-10-2004 @ 2:13:56PM

| | |
|---|---|
| RECORDING FEE | 28.50 |
| SURCHARGE | 10.00 |
| S. R. FEE | 2.00 |
| MORTGAGE TAX | 360.00 |
| TOTAL AMOUNT | $400.50 |

2004042906
Don Davis, Judge of Probate

which has the address of 13230  TOM GASTON RD, MOBILE

                                                              [Street, City],
Alabama      36695-8658         ("Property Address");
          [Zip Code]

   TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**ALABAMA - Single Family**
Page 1 of 7

C. J.

ALD10011.wp (11-30-01)

Loan Number: 651003367             Servicing Number: 001347464-8        Date: 05/26/04

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender. Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in thee manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

ALD10012.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower;s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with

ALD10013.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, of mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking or any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph

17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the

Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

ALD10014.wp (11-30-01)

Loan Number: 651003367             Servicing Number: 001347464-8        Date: 05/26/04

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent. Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** if Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days for such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration has occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more change of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will also contain any other information required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

Mobile                                        County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**25. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**26. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**27. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**28. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender, including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**29. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**31. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.



Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

[Check applicable boxes]

☒ Adjustable Rate Rider                ☐ Condominium Rider                    ☐ 1-4 Family Rider
☐ No Prepayment Penalty Option Rider   ☐ Planned Unit Development Rider        ☐ Occupancy Rider
☐ Other(s) (specify)                   ☐

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower

_Carla Jackson_ 5/24/04 (Seal)                   _____ (Seal)
CORLA   JACKSON               -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                         -Borrower


STATE OF ALABAMA,                        Mobile        County ss:
      On this    26th   day of   May                        , 2004    , I,
                                  , a Notary Public in and for said county and in said state,
hereby certify that   Corla Jackson

foregoing conveyance, and who   is              , whose name(s)   is   signed to the
of the contents of the conveyance,   s he       known to me, acknowledged before me that, being informed
      she   act on the day the same bears date.  executed the same voluntarily and as
      Given under my hand and seal of office this   26th   day of  May      , 2004  .

My Commission Expires: 5/8/2005         _Esther Batume_
                                        Notary Public

This instrument was prepared by

## Stewart Title Guaranty Company
## COMMITMENT

Order No.:  999010283                              Commitment No.:  999010283

# EXHIBIT "A"

## *Lot 1, Copeland Island Estates as recorded in Map Book 81, Page 94 in the Office of the Judge of Probate, Mobile County, Alabama.*

Which has the property address of:
13230 Tom Gaston Rd. Mobile, Al. 3669545

MAY-26-2004  12:30        OPTION ONE HOUSE                        678 419 0852      P.08

Loan Number:  651003367        Servicing Number:  001347464-8      Date:  05/26/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  May 26, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
        Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

        13230   TOM GASTON RD,   MOBILE, AL 36695-8658

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of            7.650%            . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        **(A) Change Dates**
        The interest rate I will pay may change on the first day of   July 01        2006
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
        **(B) The Index**
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
        **(C) Calculation of Changes**
        Before each Change Date, the Note Holder will calculate my new interest rate by adding
        FIVE AND 70/100                        percentage point(s) ( 5.700%   )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family**
Page 1 of 3                                                      USRI0021 (02-23-99)

MAT-26-2004  12:50         OPTION ONE HOUSE                    678 419 0852       P.09

Loan Number:  651003367    Servicing Number:  001347464-8    Date:  05/26/04

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.650% or less than 7.650% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 13.650% or less than 7.650%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 2 of 3                                                                USRI0022 (02-23-99)

MAY-26-2004  12:30        OPTION ONE HOUSE                        678 419 0852    P.10

Loan Number:  651003367    Servicing Number:  001347464-8    Date:  05/26/04

     **BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
CORLA   JACKSON

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3                                      USRID0023 (02-23-99)

0835002124



**WHEN RECORDED MAIL TO:**
Option One Mortgage Corporation
3 Ada, Irvine, CA  92618
ATTN: QUALITY CONTROL

Loan Number :651003367

Servicing Number :0013474648          [Space Above This Line For Recording Data]

STATE of ALABAMA    **ASSIGNMENT OF MORTGAGE**

WITNESSETH: For a VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
          OPTION ONE MORTGAGE CORPORATION,  A CALIFORNIA CORPORATION          hereby sells,
assigns, transfers, and sets over a certain mortgage, relating to the property legally described as
          **DESCRIBED ON MORTGAGE REFERRED TO HEREIN**
from  CORLA JACKSON, A  SINGLE WOMAN


APN#    02-35-06-23-0-000-002.010                    dated
, of record in Mortgage Fiche                              , Frame
in the Office of the Probate Judge of    Mobile                      County, Alabama, to



                                        (hereafter referred to as "Assignee")
together with all its right, title, and interest in and to the land described in said mortgage, with recourse, it
bein understood that the note secured by said mortgage has been assigned and transferred to said Assignee,
this            7th    day of  June,  2004.

                          OPTION ONE MORTGAGE CORPORATION,
                          a California Corporation


Prepared By: _____    _____
          Andrew Bailey        Jeramy Brown    , Collateral Specialist

Title: Quality Control

     3 Ada, Irvine, CA  92618

━━━━━━━━━━━━━[Space Below This Line For Acknowledgment]━━━━━━━━━━━

State of California, County of_____Orange_____}SS:

On___June 7, 2004_____ before me, the undersigned, a Notary Public

in and for said State, personally appeared_____Jeramy Brown_____, Collateral Specialist

Option One Mortgage Corporation, A California Corporation_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument
Witness my hand and official seal.

(Reserved for official seal)

STEVE EMBRY
Commission # 1378891
Notary Public - California
Orange County
My Comm. Expires Oct 7, 2006

Signature_____
Steve Embry
Name (typed or printed)
My commision expires:___October 07, 2006____

Alabama Assignment of Mortgage          Page 1 of 1          Ship 4/25/96    ALMS0031 (04-29-94)

083S002124



**WHEN RECORDED MAIL TO:**
Option One Mortgage Corporation
3 Ada, Irvine, CA  92618
ATTN: QUALITY CONTROL

Loan Number :651003367

Servicing Number :0013474648     [Space Above This Line For Recording Data]

STATE of ALABAMA    **ASSIGNMENT OF MORTGAGE**

WITNESSETH: For a VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
    OPTION ONE MORTGAGE CORPORATION,  A CALIFORNIA CORPORATION    hereby sells,
assigns, transfers, and sets over a certain mortgage, relating to the property legally described as
    **DESCRIBED ON MORTGAGE REFERRED TO HEREIN**
from  CORLA JACKSON, A  SINGLE WOMAN

APN#    02-35-06-23-0-000-002.010            dated
, of record in Mortgage Fiche                        , Frame
in the Office of the Probate Judge of    Mobile                        County, Alabama, to

                                (hereafter referred to as "Assignee")
together with all its right, title, and interest in and to the land described in said mortgage, with recourse, it
bein understood that the note secured by said mortgage has been assigned and transferred to said Assignee,
this        7th    day of  June,  2004.

                            OPTION ONE MORTGAGE CORPORATION,
                            a California Corporation

Prepared By: _____    Jeramy Brown        , Collateral Specialist
        Andrew Bailey
Title: Quality Control _____
        3 Ada, Irvine, CA  92618

─────────[Space Below This Line For Acknowledgment]─────────

State of California, County of _____ Orange _____ }SS:

On___ June 7, 2004 _____ before me, the undersigned, a Notary Public

in and for said State, personally appeared_____ Jeramy Brown _____, Collateral Specialist

Option One Mortgage Corporation, A California Corporation _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument
Witness my hand and official seal.
    (Reserved for official seal)

STEVE EMBRY
Commission # 1378891
Notary Public - California
Orange County
My Comm. Expires Oct 7, 2006

Signature _____
Steve Embry
Name (typed or printed)
My commision expires:____ October 07, 2006 ___

Alabama Assignment of Mortgage        Page 1 of 1        Ship 4/25/96    ALMS0031 (04-29-94)

### SHORT FORM RESIDENTIAL
### LOAN POLICY--ONE-TO-FOUR FAMILY
**Issued by Stewart Title Guaranty Company**

**ORIGINAL**

SUBJECT TO THE EXCEPTIONS FROM COVERAGE IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, STEWART TITLE GUARANTY COMPANY, A TEXAS CORPORATION, HEREIN CALLED THE "COMPANY", HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, EXCLUSIONS, CONDITIONS AND STIPULATIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92), ALL OF WHICH ARE INCORPORATED HEREIN. ALL REFERENCES TO SCHEDULES A&B SHALL REFER TO SCHEDULES A&B OF THIS POLICY.

### SCHEDULE B

### EXCEPTIONS FROM COVERAGE AND
### AFFIRMATIVE ASSURANCES

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of the matters set forth below, except to the extent that the Company does insure in accordance with and subject to its terms against loss or damage which the insured shall sustain by reason of any inaccuracies in the affirmative assurances set forth below, except as limited in any addendum attached hereto:

1.  Those taxes and special assessments which become due and payable subsequent to Date of Policy.

2.  Covenants, conditions and restrictions, if any, appearing in the public records. This policy insures that the same have not been violated, except that such affirmative assurance does not extend to covenants, conditions and restrictions relating to environmental protection unless a notice of violation thereof has been recorded or filed in the public records and is not referenced in an addendum attached hereto. Further, this policy insures that any future violation of any covenants, conditions and restrictions appearing in the public records, including any relating to environmental protection, will not result in a forfeiture or reversion of title and that there are not provisions therein under which the lien of the insured mortgage can be extinguished, subordinated or impaired.

3.  Any easements or servitudes appearing in the public records. This policy insures that none of the improvements encroach upon the easements and that any use of the easements for the purposes granted or reserved will not interfere with or damage the improvements, including lawns, shrubbery and trees.

4.  Any lease, grant, exception or reservation of minerals or minerals rights appearing in the public records. This policy insures that the use of the land for residential one-to-four family dwelling purposes is not, and will not be, affected or impaired by reason of any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records and this policy insures against damage to existing improvements, including lawns, shrubbery and trees, resulting from the future exercise of any right to use the surface of the land for the extraction or development of the minerals or mineral rights so leased, granted, excepted or reserved. Nothing herein shall insure against loss or damage resulting from subsidence.

5.  This policy insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance affecting the title that would have been disclosed by an accurate survey. The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

**stewart**
→ title guaranty company

*Stewart Morris Jr.*
Chairman of the Board

*Malcolm S. Morris*
President

Countersigned:

*Paige Jones*
Authorized Countersignature

**Heritage Title, LLC**
Company 2521 Hillcrest Rd. Suite C

Mobile, Alabama 36695
City, State

(STEWART TITLE GUARANTY CO. INCORPORATED 1908 TEXAS)

Policy Number **U-9931-** 1179831

## SHORT FORM RESIDENTIAL
## LOAN POLICY -- ONE-TO-FOUR FAMILY
### Issued by Stewart Title Guaranty Company
### SCHEDULE A

| | | | |
|---|---|---|---|
| Amount of Insurance: | $240,000.00 | Premium: | $175.00 |
| Mortgage Amount: | $240,000.00 | Policy Number: | U-9931-1179831 |
| File Number: | 401562 | Date of Policy: | 06/10/04 |
| Loan Number: | 651003367 | (or the date of recording of the insured | |
| Mortgage Date: | 05/26/04 | mortgage, whichever is later.) | |
| Name of Insured: | Option One Mortgage Corporation, ISAOA | | |
| Recorded Date: | 06/10/04 | | |
| Book: | 5605 | | |
| Page: | 1910 | | |
| Name of Borrower(s): | Corla Jackson | | |

Property address:        13230 Tom Gaston Rd.

City and State:          Mobile, Al.36695

County:                  Mobile

The estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage is fee simple and is at Date of Policy vested in the borrower(s) shown in the insured mortgage and named above.

The land referred to in this policy is described as set forth in the insured mortgage and is identified as the property address shown above.

This policy consists of two pages, including Schedule B attached hereto, unless an addendum is attached and indicated below:

☐ Addendum attached
☑ No addendum attached

The ALTA endorsements indicated below are incorporated herein:

☐ ENDORSEMENT 4 (Condominium)
☐ ENDORSEMENT 4.1
☐ ENDORSEMENT 5 (Planned Unit Development)
☐ ENDORSEMENT 5.1
☐ ENDORSEMENT 6 (Variable Rate)
☐ ENDORSEMENT 6.2 (Variable Rate - Negative Amortization)
☐ ENDORSEMENT 7 (Manufactured Housing)
☑ ENDORSEMENT 8.1 (Environmental Protection Lien)
   referring to the following state statute(s): None

POLICY NO.: U-9931-1179831

## SHORT FORM RESIDENTIAL
## LOAN-POLICY--ONE-TO-FOUR FAMILY **ORIGINAL**
### Issued by Stewart Title Guaranty Company

SUBJECT TO THE EXCEPTIONS FROM COVERAGE IN SCHEDULE B BELOW, AND ANY ADDENDUM ATTACHED HERETO, STEWART TITLE GUARANTY COMPANY, A TEXAS CORPORATION, HEREIN CALLED THE "COMPANY", HEREBY INSURES THE INSURED IN ACCORDANCE WITH AND SUBJECT TO THE TERMS, EXCLUSIONS, CONDITIONS AND STIPULATIONS SET FORTH IN THE AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (10-17-92), ALL OF WHICH ARE INCORPORATED HEREIN. ALL REFERENCES TO SCHEDULES A&B SHALL REFER TO SCHEDULES A&B OF THIS POLICY.

### SCHEDULE B

### EXCEPTIONS FROM COVERAGE AND
### AFFIRMATIVE ASSURANCES

This policy does not insure against loss or damage (and the Company will not pay costs, attorney's fees or expenses) which arise by reason of the matters set forth below, except to the extent that the Company does insure in accordance with and subject to its terms against loss or damage which the insured shall sustain by reason of any inaccuracies in the affirmative assurances set forth below, except as limited in any addendum attached hereto:

1. Those taxes and special assessments which become due and payable subsequent to Date of Policy.

2. Covenants, conditions and restrictions, if any, appearing in the public records. This policy insures that the same have not been violated, except that such affirmative assurance does not extend to covenants, conditions and restrictions relating to environmental protection unless a notice of violation thereof has been recorded or filed in the public records and is not referenced in an addendum attached hereto. Further, this policy insures that any future violation of any covenants, conditions and restrictions appearing in the public records, including any relating to environmental protection, will not result in a forfeiture or reversion of title and that there are not provisions therein under which the lien of the insured mortgage can be extinguished, subordinated or impaired.

3. Any easements or servitudes appearing in the public records. This policy insures that none of the improvements encroach upon the easements and that any use of the easements for the purposes granted or reserved will not interfere with or damage the improvements, including lawns, shrubbery and trees.

4. Any lease, grant, exception or reservation of minerals or minerals rights appearing in the public records. This policy insures that the use of the land for residential one-to-four family dwelling purposes is not, and will not be, affected or impaired by reason of any lease, grant, exception or reservation of minerals or mineral rights appearing in the public records and this policy insures against damage to existing improvements, including lawns, shrubbery and trees, resulting from the future exercise of any right to use the surface of the land for the extraction or development of the minerals or mineral rights so leased, granted, excepted or reserved. Nothing herein shall insure against loss or damage resulting from subsidence.

5. This policy insures against loss or damage by reason of any violation, variation, encroachment or adverse circumstance affecting the title that would have been disclosed by an accurate survey. The term "encroachment" includes encroachments of existing improvements located on the land onto adjoining land, and encroachments onto the land of existing improvements located on adjoining land.

**stewart**
title guaranty company

Chairman of the Board

President

Countersigned:

Authorized Countersignature

**Heritage Title, LLC**

Company  2521 Hillcrest Rd. Suite C

Mobile, Alabama 36695

City, State

| Policy Number | **U-9931-** 1179831 |
|---|---|

ALTA Short Form Residential Loan Policy (Rev. 10/17/92)

## SHORT FORM RESIDENTIAL
## LOAN POLICY — ONE-TO-FOUR FAMILY
### Issued by Stewart Title Guaranty Company
### SCHEDULE A

| | | |
|---|---|---|
| Amount of Insurance: | $240,000.00 | Premium: $175.00 |
| Mortgage Amount: | $240,000.00 | Policy Number: U-9931-1179831 |
| File Number: | 401562 | Date of Policy: 06/10/04 |
| Loan Number: | 651003367 | (or the date of recording of the insured |
| Mortgage Date: | 05/26/04 | mortgage, whichever is later.) |
| Name of Insured: | Option One Mortgage Corporation, ISAOA | |
| Recorded Date: | 06/10/04 | |
| Book: 5605 | | |
| Page: 1910 | | |
| Name of Borrower(s): | Corla Jackson | |
| Property address: | 13230 Tom Gaston Rd. | |
| City and State: | Mobile, Al.36695 | |
| County: | Mobile | |

The estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage is fee simple and is at Date of Policy vested in the borrower(s) shown in the insured mortgage and named above.

The land referred to in this policy is described as set forth in the insured mortgage and is identified as the property address shown above.

This policy consists of two pages, including Schedule B attached hereto, unless an addendum is attached and indicated below:

☐ Addendum attached
☒ No addendum attached

The ALTA endorsements indicated below are incorporated herein:

☐ ENDORSEMENT 4 (Condominium)
☐ ENDORSEMENT 4.1
☐ ENDORSEMENT 5 (Planned Unit Development)
☐ ENDORSEMENT 5.1
☐ ENDORSEMENT 6 (Variable Rate)
☐ ENDORSEMENT 6.2 (Variable Rate - Negative Amortization)
☐ ENDORSEMENT 7 (Manufactured Housing)
☒ ENDORSEMENT 8.1 (Environmental Protection Lien)
 referring to the following state statute(s): None

POLICY NO.: U-9931-1179831

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT



Loan Number: 651003367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  May 26, 2004           . The grantor is
CORLA JACKSON, A  SINGLE WOMAN

("Borrower"). This Security Instrument is given to

        Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                    , and whose
address is
              3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
        . . . AND NO/100THs      Dollars (U.S.  $240,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debts, if not paid earlier, due and payable on  July 01, 2034       .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                          Mobile                    County, Alabama:
02-35-06-23-0-000-002.010
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of  13230   TOM GASTON RD, MOBILE
                                           [Street, City],
Alabama       36695-8658        · ("Property Address");
           [Zip Code]

      TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**ALABAMA - Single Family**
Page 1 of 7

*C. J.*

ALD10011.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8        Date: 05/26/04

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender. Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in thee manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower; (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

ALD10012.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower;s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, of mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking or any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph
17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the
Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

*C. J.*                    ALD10014.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent. Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** if Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days for such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration has occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration has occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more change of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will also contain any other information required by applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

ALD10015.wp (11-30-01)

Loan Number: 651003367          Servicing Number: 001347464-8        Date: 05/26/04

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in
          Mobile                                    County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release**. Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waivers**. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Misrepresentation and Nondisclosure**. Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence**. Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations**. The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification**. This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. **Reimbursement**. To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender, including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error**. In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents**. In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents**. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument**. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.



Loan Number: 651003367          Servicing Number: 001347464-8          Date: 05/26/04

[Check applicable boxes]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider          [ ] Planned Unit Development Rider          [ ] Occupancy Rider
[ ] Other(s) (specify)          [ ]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                                              -Borrower

_____          _____ (Seal)
                                                                              -Borrower

_Corla Jackson_ 5/24/04 (Seal)          _____ (Seal)
CORLA JACKSON          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                        -Borrower

STATE OF ALABAMA,                              Mobile          County ss:

      On this      26th      day of      May                              , 2004      , I,
_____ , a Notary Public in and for said county and in said state,
hereby certify that      Corla Jackson
_____ , whose name(s)      is      signed to the
foregoing conveyance, and who      is      known to me, acknowledged before me that, being informed
of the contents of the conveyance,      s he      executed the same voluntarily and as
      she      act on the day the same bears date.
      Given under my hand and seal of office this      26th      day of, May          2004      .

My Commission Expires: 5/8/2005          _Esther Patines_
                                          Notary Public

This instrument was prepared by

Page 7 of 7                                                    ALD10017.wp (11-30-01)

**Stewart Title Guaranty Company**
**COMMITMENT**

Order No.:  999010283                                   Commitment No.:  999010283

# EXHIBIT "A"

## *Lot 1, Copeland Island Estates as recorded in Map Book 81, Page 94 in the Office of the Judge of Probate, Mobile County, Alabama.*

Which has the property address of:
13230 Tom Gaston Rd. Mobile, Al. 3669545

MHT-26-2004  12:30        OPTION ONE HOUSE                    678 419 8852      P.08

Loan Number: 651003367      Servicing Number: 001347464-B      Date:  05/26/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)



THIS ADJUSTABLE RATE RIDER is made  May 26, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

13230  TOM GASTON RD,   MOBILE, AL 36695-8658
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of            7.650%            . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the first day of    July 01        2006
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
   FIVE AND 70/100                            percentage point(s) ( 5.700%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family**
Page 1 of 3                                                            USRI0021 (02-23-99)

MAY-26-2004  12:30       OPTION ONE HOUSE                    678 419 0852    P.09

**Loan Number:** 651003367    **Servicing Number:** 001347464-8    **Date:** 05/26/04

be my new interest rate until the next Change Date.

    The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

    **(D) Limits on Interest Rate Changes**

    The interest rate I am required to pay at the first Change Date will not be greater than 10.650% or less than 7.650% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than 13.650% or less than 7.650%

    **(E) Effective Date of Changes**

    My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

    **(F) Notice of Changes**

    The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

    To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

    If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 2 of 3                                                    USRI0022 (02-23-99)

MAY-26-2004  12:56       L   ON ONE HOUSE                         678 419 0852    P.10

Loan Number: 651003367       Servicing Number: 001347464-8       Date:  05/26/04

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Adjustable Rate Rider.

_____ (Seal)        5/26/04        _____ (Seal)
CORLA    JACKSON

_____ (Seal)                       _____ (Seal)

_____ (Seal)                       _____ (Seal)

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 3 of 3                                                   USRI0023 (02-23-99)

TOTAL P.10

# Stewart Title Guaranty Company
## COMMITMENT

Order No.: 999010283                    Commitment No.: 999010283

### SCHEDULE B – Section I
### Requirements

The following requirements must be met and completed to the satisfaction of the Company before its policy of title insurance will be issued:

1. Show that restrictions or restrictive covenants have not been violated.

2. Payment to or for the account of the grantors or mortgagor of the full consideration for the estate or interest mortgage or lien to be issued.

3. Furnish proof of payment of all bills for labor and material furnished or to be furnished in connection with improvements erected or to be erected.

4. Pay all general and special taxes now due and payable including the following:

5. Record instrument conveying or encumbering the estate or interest to be insured, briefly described:  see schedule "A:

6. Execution and recordation without intervening rights of a security instrument by the purchasers securing an indebtedness in the sum shown on Schedule "A".

7. Payment or cancellation of that certain Vendor's Lien Deed from Corla Jackson to Phillip A. Smith and Cynthia G. Neese F/K/A Cynthia G. Smith, dated November 7, 2003 in the amount of $234,834.29 recorded in Book 5490 Page 1847 in the Office of Judge of Probate, Mobile County, Alabama.

8. Payment or cancellation of that certain Mortgage from Philip A. Smith and Cynthia G. Smith to Southtrust Bank, in the Amount of $25,000.00, recorded in Book 4857, Page 723, dated June 2, 2000, in the Office of the Judge of Probate, Mobile County, Alabama. Modified in the amount of $44,500.00 dated December 10, 2001 as recorded in Book 5106, Page 1570 to $44,500.00, in the Office of Judge of Probate, Mobile County, Alabama.

10. Payment or cancellation of that certain Mortgage from Phillip A. Smith and Cynthia G. Smith to Coats & Co. in the amount of $185,000.00, as recorded in Book 4987 Page 1661, dated June 4, 2001, in the Office of the Judge of Probate, Mobile County, Alabama. Assignment in Book 4987, Page 1669 to Hibernia National Bank.

*released?.*
*to be paid @*
*closing w/ proceed*
*from #7*

### SCHEDULE B – Section II

Page 2 of 4

## Stewart Title Guaranty Company
## COMMITMENT

Order No.: 999010283                                Commitment No.: 999010283

### Exceptions

Schedule B of the Policy or Policies to be issued contain exceptions to the following matters unless they are disposed of to the satisfaction of the Company.

1. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquires for value of record the estate or interest or mortgage thereon covered by this Commitment.

2. Standard exceptions:
(a) Rights or claims of parties in possession not shown by the public records.

(b) Easements or claims of easements, not shown by the public records.

(c) Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey and inspection of the premises.

(d) Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

(e) Homestead or other marital rights of the spouse, if any, of any individual insured.

(f) Any titles or rights asserted by anyone including but not limited to persons, corporations, governments or other entities, to tide lands, or lands comprising the shores or bottoms of navigable rivers, lakes, bays, ocean or gulf, or lands beyond the line of the harbor or bulkhead lines as established or changed by the United States Government or water rights, if any.

(g) Any prior reservation or conveyance, together with release of damages, or materials of every kind and character, including, but not limited to oil, gas, sand and gravel in, on or under the subject property.

(h) Taxes or special assessments which are not shown as existing liens by the public records.

3. Special Exceptions:
(a) Taxes. Ad Valorem taxes for the year 2003 have been paid in the amount of $879.80 were paid on November 14, 2003.
(b) Parcel ID: 023506230000002.010 Key No. 2921583

Stewart Title Guaranty Company
COMMITMENT

Orde r No.:  999010283                                    Commitment No.:  999010283

# EXHIBIT "A"

## *Lot 1, Copeland Island Estates as recorded in Map Book 81, Page 94 in the Office of the Judge of Probate, Mobile County, Alabama.*

Which has the property address of:
13230 Tom Gaston Rd. Mobile, AL 3669545



**LEGALREC**



**651003367**



**0013474648**



**426259711**



**JACKSON**



**CORLA**

UBSW
OPTION ONE
I



**LEGALREC**



**651003367**



**0013474648**

17



**426259711**



**JACKSON**



**CORLA**

