# Exhibit M

*GMAC Mortgage LLC 64, 71*

*Claim #4443  Date Filed: 11/9/2012*

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor:
**Residential Capital Corp LLC**

Case Number: **12-12020**

NOTE: This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Pro Se - Corla Jackson**

Name and address where notices should be sent:  NameID: 10854966
Pro Se - Corla Jackson
**CORLA JACKSON, PLAINTINFF V. GMAC MORTGAGE CORPORATION.**
**13230 TOM GASTON RD**
**Mobile, AL 36695**

*Corla Reeves Jackson @ AOl.COM
@ Gmail.com*

Telephone number: **(251) 554-1785**  RECEIVED  email: *MissCRJ@centurylink.net*

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

RECEIVED
NOV 1 5 2012
**KURTZMAN CARSON CONSULTANTS**

Telephone number:

**1. Amount of Claim as of Date Case Filed:** $ **One Hundred Million Dollars**
*From 2004 - 2012 - To Date Major Damages*
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *They Stole My Identity + Everything I owned*
(See instruction #2) *Causing Major Damages from 2005 - 2012 To Date*

**3. Last four digits of any number by which creditor identifies debtor:** **2124**

3a. Debtor may have scheduled account as: _____ (See instruction #3a)

3b. Uniform Claim Identifier (optional): _____ (See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☑Real Estate ☐Motor Vehicle ☑Other
Describe: *They Totaled Home Identity Theft of Equity Land 5 Acres Estate*

Value of Property: $ **340,000** *Totaled Loss* Annual Interest Rate ____% ☐Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: $ _____ Basis for perfection: *Toxic Mold + Equity Land + Medical Bill still coming in*

Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfecting of a security interest are attached. (See instruction #8, and the definition of "redacted".)
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain: *Reported Illegal Claims Foreclosure - Sold Home Coming Injurys Tied up Equity + Credit Ins Claims + Additional Land Loss of Businesses (Wages) Contracts*

**9. Signature:** (See instruction #9) Check the appropriate box.
☑ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: **Corla Reeves Jackson**
Title: **Owner**
Company: _____
(Signature) *Corla Reeves Jackson* 11/8/2012 (Date)
Address and telephone number (if different from notice address above):
**(251) 554-1785**
Email: *Corla Reeves Jackson @ Gmail.com*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).
☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:
$ _____

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



Residential Capital, LLC
c/o KCC
2335 Alaska Ave                        013559
El Segundo, CA 90245

PRF #51765                          PackID: 193559
Case No.: 12-12020                  NameID: 10854966
Svc: 1

Pro Se - Corla Jackson
CORLA JACKSON, PLAINTINFF V. GMAC MORTGAGE
CORPORATION.
13230 TOM GASTON RD
Mobile, AL 36695

---

**If you have any questions related to this notice, please call (888) 251-2914**

# IN THE UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

**CORLA JACKSON**
**Plaintiff,**

**V.**                                                    NO. 12-12020 (MG)

**GMAC MORTGAGE**
**CORPORATION, ET AL**
**Defendants.**


# <u>MOTION FOR PROOF OF CLAIM</u>


**TO THE HONORABLE JUDGE**:
MARTIN GLENN
United States Bankruptcy Judge

Corla Jackson, as Plaintiff or Plaintiff-In- Intervention in declaratory relief and slander of title,
clouded title, illegal sale of home, and major property damages to date as well identity theft
actions and personal injury's stemming from (GMAC Mortgage, LLC's) (formerly known as
GMAC Mortgage Corporation) wrongful reconveyance of several security instruments securing
loans against real estates property in Alabama (Corla Jackson) vs. GMAC Mortgage Corporation
et, al. brings this motion to section  (11 U.S.C. 362 (d).

This Title Of 11, 11 U.S.C. §§101 et seq the (Bankruptcy Code) , Rule 4001 of the
Federal Rules Of Bankruptcy Procedure (the Bankruptcy Rules) and Local Bankruptcy
Rules for an order modifying the automatic stay to allow (Jackson) the Plaintiff Action
and the Joint Action against (GMAC) and its agent, Executive Trustee Service, Inc.  (now
known as Executive Trustee" For Violation Of United States District Courts Stay Order
and Orders Dated Back To (March 1, 2006) filed ECF.  See Violation Of Stay Order
Motion Attached And Filed With The Federal Courts.  They Did Not Dismiss The
Creditor Stay Order" Neither Was Her Home Filed Through Bankruptcy" They Used
Deceptive Practices And Stole The Home Outside Bankrupcy" Violating A Previous
Judges Order Disallowing Their Claims" All Of Them Dated March 1, 2006) See Details.

GMAC MORTGAGE LLC (RESIDENTIAL CAPITAL CORPORATION LLC)
SERVICING COMPANY used (ALLEY BANK LICENSE) to defraud (UNITED
STATES GOVERNMENT" THE COURTS" AND THE SEC) by using a fictitious and
fraudulent identity" to apply for mortgage loans" and back notes by security's using
deceptive practices" stealing the (Creditor Pro-Se Jackson) assets blocking her from
using her assets tying up her property since" (May 2004) fabricating an illegal
foreclosure since (April 2005)" which forced the (Creditor Pro-Corla Jackson) into an

1

illegal foreclosure" in (2005) causing her major and multiple damages to date in
Alabama" which include major property damages" the home has to be rebuilt over"
EXPOSING HER TO TOXIC MOLD AS WELL AS ALL HER PERSONAL
PROPERTY TO DATE. IN ADDITON TO THE ABOVE" the (DEBTOR"S) is
responsible for personal injury's blocking home repairs and home to be replaced claiming
the home was theirs" versus the (CREDITOR) while waiting on legal justice to date the
home caught fire and the inside was destroyed on top of the toxic mold" the
(DEBTOR'S) caused to date. Also the (CREDITOR) received personal injury's which
requires medical treatment for life. The (DEBTOR'S) slander of title to steal the
(CREDITOR'S) home under false pretense" causing major damages and loss of use and
equity" in addition to major punitive damages" mental anguish" travel expense" court
cost" filing fees" previous attorney fees.

In Addition To The **Above The (DEBITORS) OWE BACK ALL THE
FUNDS THEY EMBEZZELED FROM (CREDITOR) to date with
interest"** including all the major damages to date" in the AMOUNT OF (**ONE
HUNDRED MILLION DOLLARS)** TO BE SET ASSIDE WHILE CASE PROCEED
TO TRIAL' FOR MULTIBLE DAMAGES TO DATE. **THE (DEBITOR'S)
COMMITTED FRAUD" TORT" CORRUPTION" CONSPIRACY"
IDENTITY THEFT" EQUITY THEFT" AS WELL AS ALL THE
OTHER DAMAGES COURTS SEE FIT.**

**This Is Bad Faith" Unclean Hands" Tort "Punitive Multiple" Damages.
IN ADDITON TO ROBBERY OF EQUITY AND IDENTITY THEFT
AND THEY NEW THIS.**

IT IS VERY HARD TO DETERMAN WHAT A JURY WILL AWARD THE
CREDITOR" AND IT IS RECOMMENDED FOR THIS CASE TO PROCEED TO
TRIAL IN VIOLATION OF STAY ORDERS AND FRAUD OR IT WILL FALL
UNDER FRAUD OF THE COURT" FOR ALLOWING THIS TO HAPPEN WHEN
THE DEFENDANTS HAS CLEARLY DEFRAUDED THE COURTS AND
VIOLATED PREVIOUS COURT ORDERS FROM THE INITIAL DISCHARGE
DATED (JANUARY 20, 2010) COMING BACK FABRICATING DOCUMENTS
STEALING THE HOME OUTSIDE OF BANKRUPTCY DEFRAUIDNG THE
UNITED STATES DISTRICT COURTS AS WELL AS THE BANKRUPTCY COURT
FOR THE SOUTHERN DIVISION OF NEW YORK" GETTING AN AUTOMATIC
STAY LIFTED UNDER FALSE PRETESE.

WHO ALLOWED THIS TO HAPPEN WHEN EVERYTHING WAS FILED ECF"
AND A FEDERAL STAY ORDER WAS STAYED ON THIS CASE UNTIL NEW
YORK" GRANTED THE STAY ORDER TO PROCEED TO TRIAL ON VIOLATION
OF COURT ORDERS PRIOR TO THE ILLEGAL COURT ORDER THEY CAME
BACK AND DEFRAUDED THE COURTS ON USING DECEPTIVE PRACTICES
WITH THE INTENT TO ROB THE VICTIMS CAUSING MAJOR AND MULTIPLE
DAMAGES TO DATE.

2

**THE COURTS ALLOW CASES TO HONOR THIS CLAIM UNDER RULE 60 (b)
and 59 (b) or Rules of The Courts As They See Fit" When a (DEBITOR) commit
BANKRUPTCY FRUAD UNDER FALSE PRETENSE CASUING A CRIEDITOR
MAJOR DAMAGES SUCH AS THIS.**

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may
correct a clerical mistake or a mistake arising from oversight or omission whenever one is
found in a judgment, order, or other part of the record. The court may do so on motion or
on its own, with or without notice. But after an appeal has been docketed in the appellate
court and while it is pending, such a mistake may be corrected only with the appellate
court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just
terms, the court may relieve a party or its legal representative from a final judgment,
order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier
judgment that has been reversed or vacated; or applying it prospectively is no longer
equitable; or

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for
reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or
the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its
operation.

(3) set aside a judgment for fraud on the court.

They (DEBITOR'S) filed bankruptcy in New York to prevent from paying claims on
damages they caused" saying they were not in jurisdiction" when they clearly had

3

jurisdiction when they stole the homes according to the records they fabricated to the courts to date.  GMAC MORTGAGE CORPORATION/ GMAC MORTGAGE LLC" KNOWN AS (RESIDENTIAL CAPITAL CORPORATION LLC) Robbed The Plaintiff Of Her Identity and Equity Under False Pretense" claiming fake arrearages in (2005) when they did not own the note" or an assignment in (2005).

The loan number they provided to the (BANKRUPCY COURTS FOR THE SOUTHERN DIVISION OF ALABAMA) before (JUDGE MAHONEY) was CONDITIONALLY DENIED.

GMAC MORTGAGE CORPORATION/ GMAC MORTGAGE LLC" KNOWN AS (RESIDENTIAL CAPITAL CORPORATION LLC) and their Attorney was issued an order" to provide a proof of claim" and agreement between the Creditor Pro-Se Jackson" in Accordance with the Conditionally denied in a order dated (March 1, 2006) was never answered" or approved by (JUDGE MAHONEY) after (March 1, 2006)" allowing their proof of claim" and it was stated in all (JUDGE MAHONEY'S) ORDERS ISSUED AFTER MARCH 1, 2006" that she did not approve a Proof Of Claim or Verify An Agreement Contract Between The Debtor (GMAC MORTGAGE LLC) and the (CREDITOR PRO-SE CORLA JACKSON).

The ORDER ALL THE ORDERS by (JUDGE MAHONEY) stated in black and white" their was (NO RESPONSE) from the (DEBITOR'S IN ACCORDANCE WITH THE ORDER DATED MARCH 1, 2006)" that was conditionally denied" which left her no choice by to GRANT the (CREDITOR PRO-SE CORLA JACKSON) " a legal discharge from all the fake arrearages and stop all additional payments going to the (DEBITOR)" refunding the (CREDITOR PRO-SE CORLA JACKSON) back funds that the courts was holding for them" waiting on them to respond to the Conditionally Denied Order Dated" March 1, 2006) in which their was not response from the (DEBITOR)" because they did not own the note or the assignment.

The Loan Numbers did not match the (CREDITOR'S LOAN NUMBER) or any of her original loan documents" and the (DEBITOR) knew this. Everything was filed (ECF) to allow the courts and the (DEBITOR'S) to see their was not a response to the Order Issued (March 1, 2006) because they did not own the note or the assignment" and it was impossible for them to collect fake arrearages on a note or assignment they did not own prior to (March 1. 2006) and prior to the Discharge being issued to the (CREDITOR PRO-SE CORLA JACKSON)" on January 20, 2010.  The Defendants Committed Fraud Prior To The (CREDITOR PRO-SE CORLA JACKSON) owing a note or an assignment is using the (CREDITOR PRO-SE CORLA JACKSON) assets at her expense.

**Courts require eidence of the entire chain of custody of the mortgage and note. The claimant must prove initially "that it is the creditor to whom the debt is owed or,**

**alternatively, that it is the authorized agent of the creditor." Parrish , 326 B.R. at 719**

**Sturdivant v. BAC Home Loans, LP, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App. 2011). In Sturdivant, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been assigned to BAC.**

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion Is A core proceeding pursuant to 28 U.S.C. § 157 (b) 2 (G).

The Court Should Order lifting or modifying the automatic stay pursuant **to section 362 (d) of the Bankruptcy Code allowing Alabama Litigation to proceed to judgment against the Debtors along with the non-debtor defendants** for a number of reasons.

In Nothern Pipeline Constr.Co. v. Marathon Pipe Line Co. (1982) 458 U.S. 50, the Supreme court considered constitutional restraints on bankruptcy court jurisdiction. The plurality distinguished those issues at the core of the federal bankruptcy power from the adjudication of state-created private rights" Id. At 71. The Bankruptcy court can exercise jurisdiction over the former, but cannot exercise jurisdiction over state law claim that arose pre-petition. Such claim can be adjudicated only in an Article III court. The Action In The Jackson Action and the Joint Action involved In Alabama Real Property Law , and should be adjudicated by Alabama Court .

**Section 362 (d) of the Bankruptcy Code provides that the automatic stay shall be modified for cause" 11 U.S.C. § 362 (d) (1).**

In Sonnax Standard, it will often be more appropriate to permit proceeding to continue in their place in origin, when no great prejudice to the bankruptcy estate would result, in a order to leave parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere" Matter of Holtkamp (7th Cir.1982) 669 R.2d505, (citing S. Rep. No. 989, 95[th] Cong., 2d Sess. 50 reprinted in 1978 U.S.C.C.A.N.5787, 5836 (affirming decision to lift stay to allow personal injury case to proceed because civil action did not jeopardize estate where the insurer assumed full financial responsibility for defending the litigation).

See" New York Med. Group, P.C. (Bankr, S.D.N.Y.2001) 265 B.R. 408, 413 (modifying the automatic stay to allow medical malpractice suit to proceed against liquidation debtor). The Plaintiff Jackson Got Injured In A Home Due To What The Defendants Did To Her. The House Caught Fire Due To Them Fabricating And Processing A Claim And They Ran Off With The Funds Leaving The Home Not Being completed And Signing Off On A Home And Note That Did Not Belong To Them Knowing The Home Could Not Pass Inspection Backing It By Security's For Full Value When They Knew The Condition Of The Home Was Never Completed And It Caught Fire From All The Water Damages And Note Being Restored Back To Its Original Position Blocking The Plaintiff

5

From Taking A Loan Against Her Own Assets They Stole And Stalled Processing The
Claims And After They Processed The Claims The Cased In The Policy's And Kept The
Funds For Themselves Using Deceptive Practices.

**When a bankruptcy court cannot adjudicate pre-petition claims, the stay should be
modified to permit the action to continue to the original court.  See In re Cooke,
2007 WL 2102687 at \*3.  Also See" Fraud Under Rule 60(b) and (59 (b).**

See In re, <u>Jones v. Wells Fargo Home Mortgage</u>, Adv. No. 06-01093 (Bankr.
E.D. La. August 29, 2007.  The Court found Wells Fargo guilty of violating the
automatic stay by improperly assessing post-petition charges in a Chapter 13
case, and diverting payments made by the Chapter 13 trustee to satisfy claims
not authorized by the Chapter 13 plan or the Court.  Further, the Court found that
*this conduct was the normal court of business for Wells Fargo in perhaps
thousands of consumer cases*.  The Court awarded attorneys fees and
expenses of $67,202.45 and considered a multi-million dollar punitive damages
award due to the apparent widespread misconduct.  However, Wells Fargo
proposed changes (noted below, after the jump) in the way it does business in
lieu of sanctions.

Further, Wells Fargo agreed to memorialize its proposal into an order of the
Court, "*enforceable in any case pending or subsequently filed before any
court in the country*." The Court agreed that this was an appropriate result and
would enter an order setting forth this agreement, such that the Court could
continue oversight over Wells Fargo's implementation of the agreement.  <u>**Jones
v. Wells Fargo Home Mortgage Inc. (In re Jones), 2012 WL 1155715 (Banker.
E.D.  La. 4/5/12.**</u>

**The United States District Court For The Southern Division Of Alabama
Stayed Jackson Case, After The Defendants Said They Were Filing
Bankruptcy.  An Order Was Attached, For Them To Report Back To The
Courts.  What The Defendants Did To Rob The Government On Assets They
Backed By Security's That Did Not Belong To Them Was Sale The Plaintiff
Home With Her In It, The Plaintiff Was Contacted That They Cashed In
Policy's And Sold Her Home <u>Prior To Being Approved By The New York
Administered Bankruptcy Court, To Proceed In Servicing Loans Under
Alley Financial See June 13, 2012 Hearing And Date The Sale Of The House
Took Place Without The New York Courts Being Notified.</u>**

**What They Did Was Go Around The Courts The Judges And The
Administrators Over The Bankruptcy And Their Actions. This Is Why They
Told Jackson Not To Come To New York And She Did Anyway To See What
They Were Doing Next….They Deceived The Courts To Continue Robbing
Victims Is What They Did On January 13, 2012 Not Telling The Judge What
They Had Done As Well As The United States Government Which Owns**

6

**Them On Their Notes Backed By Security On Stolen Property Using Deceptive Practices. <u>That Is What They Are Trying To Hide; They Were Cashing In Policy And Selling Homes Without Their Permission Or Their Knowledge Of What Profits They Made Illegally.</u>**

<u>Motion To Pursuant To Section 362 (d) Of The Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1 Modifying The Automatic Stay To Allow Continuation Of Pre-Petition Litigation</u>

Corla Jackson, as Plaintiff or Plaintiff-In- Intervention in declaratory relief and slander of title, clouded title, illegal sale of home, and major property damages to date as well identity theft actions and personal injury's stemming from (GMAC Mortgage, LLC's) (formerly known as GMAC Mortgage Corporation) wrongful reconveyance of several security instruments securing loans against real estates property in Alabama (Corla Jackson) vs. GMAC Mortgage Corporation et, al. brings this motion to section (11 U.S.C. 362 (d).

This Title Of 11, 11 U.S.C. §§101 et seq the (Bankruptcy Code) , Rule 4001 of the Federal Rules Of Bankruptcy Procedure (the Bankruptcy Rules) and Local Bankruptcy Rules for an order modifying the automatic stay to allow (Jackson) the Plaintiff Action and the Joint Action against (GMAC) and its agent, Executive Trustee Service, Inc. (now known as Executive Trustee Services LLC, Executive Trustee"), as defendants, to continue (In the United States District Court For The Southern District Of Alabama Case Number (12-111).

Section 362 (d) of the Bankruptcy Code provides that the automatic stay shall be modified for cause" 11 U.S.C. § 362 (d) (1).

In Sonnax Standard, it will often be more appropriate to permit proceeding to continue in their place in origin, when no great prejudice to the bankruptcy estate would result, in a order to leave parties in their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere" Matter of Holtkamp (7th Cir.1982) 669 R.2d505, (citing S. Rep. No. 989, 95[th] Cong., 2d Sess. 50 reprinted in 1978 U.S.C.C.A.N.5787, 5836 (affirming decision to lift stay to allow personal injury case to proceed because civil action did not jeopardize estate where the insurer assumed full financial responsibility for defending the litigation).

**VIOLATION OF STAY ORDER UNDER FRAUD RULE 60 (b) and 59 (b) or Fruad Of The Court" The Defendants Has Violated Federal Bankruptcy Laws Here" as well as previous order prior to them defrauding the courts on a fabricated foreclosure when they did own the note or the assignment March 1, 2012, and all their claims was disallowed" they came back a fabricated an illegal order from their Judge under false pretense" which violates bankruptcy laws that protected the (CREDITOR-PRO SE- JACKSON) . THEY COVERERED THIS UP IN CORRUPTION AND A CONSPIRACY" WHICH SOME HOW GOT THEM AN**

7

**ILLEGAL ORDER IN THE BANKRUPTCY COURT IN THE SOUTHERN DISTRICT OF NEW YORK VIOLATING FEDERAL STAY ODERS AFTER THEY CAUSED ALL THESE DAMAGES THEY COVERED UP TO DATE.**

**When a bankruptcy court cannot adjudicate pre-petition claims, the stay should be modified to permit the action to continue to the original court. See In re Cooke, 2007 WL 2102687 at \*3. Also See" Fraud Under Rule 60(b) and (59 (b).**

ALL THE MOTIONS THE DEBITOR FILED WAS IGNORED" EVEN THE EXTENTION OF TIME TO GET TO NEW YORK FOR TRIAL AFTER THEY DID NOT SEND HER DOCUMENTS PERTAINING TO THEM GETTING AN ILLEGAL ORDER LIFTING THE AUTOMATIC STAY VIA FRAUD OF THE COURT. THE ORDER DOES NOT MATCH THE FACTS" BACKED BY THE EVIDENCE.

THIS IS WHY JACKSON REQUESTED" A **MOTION TO PROCEED TO TRIAL / RELEIF OF AUTOMATIC STAY " INJUNCTION " MOTION TO PRODUCE ORIGINAL NOTE/ ALLONGE/ASSIGNMENT/ALL LOAN DOCUMENTS/ ALL ORIGINAL POLICYS / AND ORIGINAL APPRAISALS BY OPTION ONE MORTGAGE. ALL OF THIS WAS IGNORED AND GMAC MORTGAGE HAD SOMEONE HELP THEM DEFRAUD THE COURRTS LIFTING AN STAY VIOLATING FEDERAL AND BANKRUPTCY LAWS THAT PROTECT VICTIMS AND CREDITORS.** THEY SENT JACKSON MOTIONS ON OTHER PEOPLES CASES NOT HER CASE" TO MAKE THINGS APPEAR AS IF THEY SENT THE MOTIONS WHEN THEY DID NOT AND THEY KNOW THEY DID NOT. THEY ARE IN VIOLATION OF FEDERAL STAY ORDERS THAT WAS NOT DISMISSED" AND THEY STOLE THE HOME OUTSIDE OF BANKRUPTCY VIOLATING PREVIOUS JUDGES ORDERS DATED MARCH 1, 2006" THEY DID NOT OWN THE NOTE OR THE ASSIGNMENT MARCH OF 2006" THEIR CASE WAS" REDUSCED AND DISALLOWED. JACKSON WAS DISCHARGED.

SEE COPY OF MOTION FIED IN VIOLATION OF STAY ORDER FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DIVISION OF ALABAMA" SOMEONE FOOLED THE JUDGES IN NEW YORK AND COMMITED FRAUD TO GET AN ILLEGAL STAY ORDER AND VIOLATE FEDERAL STAY ORDER IN ALABAMA FILED ECF AND THROUGH THE BANKRUCPCY COURTS" THIS IS WHY THIS CASE MUST PROCEED TO TRIAL NOW…THE CASE IS TORT" AND OR IS FRAUD OF THE COURT. THIS IS CORRUPTION AND A CONSPIRACY THAT WAS COVERED UP…THIS IS WHY JACKSON ASK THE COURTS FOR EXTENTION OF TIME TO BE THEIR AND ASK FOR ALL THE OTHER MOTIONS BE ANSWERED" AND THEY WERE ALL IGNORED!

NOW LOOK WHAT THEY DID' THE VIOLTED FEDERAL STAY ORDERS AND PREVIOUS COURT ORDERS DATINING BACK TO MARCH 1, 2006" TO KEEP FROM GETTING BUSTED FOR ROBBING THE CREDITOR PRO-SE-JACKSON" THEY HAD SOME HELP" AND THE COURTS NEED TO FIND OUT WHO

8

HELPED THEM DO THIS" AND PROCEED TO TRIAL BECAUSE BANKRUPTCY
LAWS HAS BEEN VIOLATED HERE" AS WELL AS FEDEREAL STAY ORDERS
THAT PROTECTED THE CRIDITOR.

<u>Motion To Pursuant To Section 362 (d) Of The Bankruptcy Code, Bankruptcy Rule
4001 and Local Bankruptcy Rule 4001-1 Modifying The Automatic Stay To Allow
Continuation Of Pre-Petition Litigation</u>

**When a bankruptcy court cannot adjudicate pre-petition claims,
the stay should be modified to permit the action to continue to the
original court.  See In re Cooke, 2007 WL 2102687 at \*3.  Also See"
Fraud Under Rule 60(b) and (59 (b).**

**<u>RULE 60 (b):</u>** Allows The Bankruptcy courts to fix this matter as follows:

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just
terms, the court may relieve a party or its legal representative from a final judgment,
order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been
discovered in time to move for a new trial under <u>Rule 59(b)</u>;

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
misconduct by an opposing party;

(4) the judgment is void; **<u>THIS CASE IS (TORT) CORRUPTED IN A CONSPIRACY</u>**

_Corla Jackson_ 11/8/2012
Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: (251) 554-1785

_Corla Reems Jackson_
11/8/2012

9

# CERTIFICATE OF SERVICE

I certify that on **November 8, 2012**, a true copy of this motion was served to:


MORRISION & FOSTER LLP
1290 Avenue Of The Americas
New York, New York.  10104
Phone (212) 468-8000
Facesmile: (212) 468-7900

*Corla Jackson* 11/8/2012
Corla Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: (251) 554-1785

*Corla Jackson*
11/8/2012

10

By Copies of Debitors Note
This Is (Civil Fraud) Debiton Counsel
They Did Not Own The Assignment
In (2004 or 2005 or March 2006) To Date

Debiton Store

Plantiff Assets

Fabricated A
Whole New Loan
In Her Name + Refuse
To Produce the Original
Note, Allonge, Chain of Title
Insurance Policy Originals

They Made Copies
Of Creditor Note
(Whiting Out) Her
Loan Number That Was
Paid IN Full To Her Previous
Lender option one Mortgage

Debitor Stole

Note:

(1) Committed Identity Theft

(2) Fraud

(3) They Took out A New Loan
In Creditor's Name
Robbing Her Causing Multiple
Damages + Injury's To Date
Using Debitor Credit + Assets
On A Loan She Never Took
Which Did Not Match Her Not

(4) They Fabricated A New Allonge +
A Fake Assignment



**CUSTOMER INFORMATION**

| | |
|---|---|
| Name: | CORLA JACKSON |
| Account Number: | 2124 |
| Home Phone #: | (251)648-5180 |

**PROPERTY ADDRESS**

13238 TOM GASTON RD
MOBILE    AL 36695

# GMAC Mortgage

Visit us at www.gmacmortgage.com for account information or to apply on-line.

#BWNHJPY
#KW0958AJ64453#



CORLA  JACKSON
13230 TOM GASTON RD
MOBILE AL 36695-8658

| Customer Care Inquiries: | 1-800-766-4622 |
|---|---|
| Home Financing Needs: | 1-800-753-4622 |

Please verify your mailing address, borrower and co-borrower information. Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.
**If you do not want GMAC Mortgage to send you mortgage account statements in the future, please contact us at 800-850-4622.**

## Account Information

| | |
|---|---|
| Account Number | 2124 |
| Current Statement Date | December 19, 2005 |
| Maturity Date | July 01, 2034 |
| Interest Rate | 7.65000 |
| Current Principal Balance* | $238,946.35 |
| Current Escrow Balance | $936.35- |
| Interest Paid Year-to-Date | $1,524.42 |
| Taxes Paid Year-to-Date | $913.75 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $1,702.83 |
| Subsidy/Buydown | $0.00 |
| Escrow | $217.81 |
| **Unpaid Amount | $21,127.04 |
| **Late Charges | $431.44 |
| **Other | $1,815.00 |
| **Total Unpaid Amount | $25,294.12 |
| Payment Date | February 01, 2005 |

## Account Activity Since Last Statement

| Description | Due Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

**GMAC Mortgage understands that you have filed a bankruptcy and that any payments and amounts not paid prior to the filing of your bankruptcy petition may be paid through, and in accordance with a Bankruptcy Plan or other order of the Court. Some information in this statement may have been omitted or may not reflect the terms of your Plan or order of the Court and should be disregarded to the extent there is any conflict. In order to obtain this information relating specifically to your bankruptcy, please contact a representative of GMAC's bankruptcy department at 800-850-4622. If you are a Chapter 13 debtor whose Plan requires you to make regular post petition mortgage payments directly to a Chapter 13 Trustee, please be certain to remit any payments to the Trustee and not directly to GMAC Mortgage.

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important Information

This statement is being furnished for informational purposes only.

### See Reverse Side For Important Information

## Mail This Portion With Your Payment

| Account Number | Post Petition Payment Date | Mortgage Payment | Post Petition Late Fee | Amount With Late Fee | Unpaid Amount | Total Unpaid Amount | |
|---|---|---|---|---|---|---|---|
| 2124 | 07/01/05 | $1,920.64 | ** | ** | ** | ** | GMAC Mortgage |
| CORLA JACKSON | | | | | | | |

This statement is being furnished for informational purposes only.

| Check below if you need information on: | Please assist GMAC Mortgage in applying your payment | | |
|---|---|---|---|
| New Home Purchases | Full Payment(s) | $ | |
| Refinance | ADDITIONAL Principal | $ | |
| Home Equity | ADDITIONAL Escrow | $ | |
| NewConstr./Rehab | Late Charge | $ | |
| Please # | Other Fees (please specify) | $ | |
| Best time to call: | Total Amount Enclosed | $ | |
| For immediate assistance: 1-800-753-4622 | | | |

Sign here to enroll in monthly ACH.
See back for details.

GMAC MORTGAGE CORPORATION
PO BOX 9001719
LOUISVILLE KY 40290-1719

02   0705   2124   00192064   00000   22222   3

19

Mobile County Probate Records Search

Indexed Thru: 3/11/2012

1 Records Found, Click Here For New Search

| Receipt # | Date | Grantor | Grantee | Document Type | Book | Page | UCC# | Legal Description |
|-----------|------|---------|---------|---------------|------|------|------|-------------------|
| 2008050095 PDF TIFF | 07/11/2008 | OPTION ONE MORTGAGE CORPORATIO | GMAC MORTGAGE LLC | ASSIGNMENT OF MORTGAGE/COLLATERAL ASSIGNMENT AND TRANSFER OF NOTE | 6409 | 1483 | | MORTGAGE BOOK 5605 PAGE 1910 |

New Search

3.50
2.00
5.50

2008050095    Book-6409    Page-1483
Total Number of Pages: 1

**LOAN NUMBER:**    ██████2124

**STATE OF ALABAMA**            )

**COUNTY OF MOBILE**            )

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned OPTION ONE MORTGAGE CORPORATION (the "Assignor"), does hereby transfer, assign, set over and convey unto GMAC MORTGAGE, LLC (the "Assignee"), its successors, transferees, and assigns forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by CORLA JACKSON, A SINGLE WOMAN, to OPTION ONE MORTGAGE CORPORATION dated the 26th day of May, 2004, and filed for record in Book 5605, Page 1910, in the Probate Office of Mobile County, Alabama, covering property described in said Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned in and to the property described in said Mortgage.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, said Assignor has hereunto set its signature this 19th day of June , 2008.

OPTION ONE MORTGAGE CORPORATION

By: _____

Its:    **Brian D. McConnell**
       **Assistant Secretary**

STATE OF CALIFORNIA)

COUNTY OF ORANGE )

I, R.A. Salazar, a Notary Public in and for the said County and State, do hereby certify

that Brian D. McConnell, whose name as Assistant Secretary of OPTION ONE MORTGAGE CORPORATION, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of this instrument, he/she, as such officer, and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 19th day of June, 2008.

_____
Notary Public

**My Commission Expires:08/02/2011**

R. A. SALAZAR
Commission # 1789905
Notary Public - California
Orange County
My Comm Expires Aug 2, 2011

This instrument prepared by:
Colleen McCullough
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255

State of Alabama-Mobile County
I certify this instrument was filed on:
    July 11, 2008 @    2:23:13 PM
S.R. FEE                    $2.00
RECORDING FEES              $3.50
TOTAL AMOUNT               $5.50
2008050095
Don Davis, Judge of Probate

CERTIFIED TRUE COPY
Probate Court of Mobile Co., AL
Don Davis, Judge

Signature _____
Joe McEachern Jr., Chief Clerk

Date  15  March 2012
(Not valid unless in red ink with raised seal of court)

## ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: CORLA JACKSON
Loan #:
Property Address: 13230 TOM GASTON RD, MOBILE, AL 36695-8658
Loan Amount: 5240,000.00

Note Date: 04/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
    Jeanette Parvenoud

    Assistant Secretary

Page 1 of 1

USD 1050.wp (03-14-03)



2008050095 Book-6459 Page-1483
Total Number of Pages: 1

LOAN NUMBER:

STATE OF ALABAMA                    )

COUNTY OF MOBILE                    )

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned OPTION ONE MORTGAGE CORPORATION (the "Assignor"), does hereby transfer, assign, set over and convey unto GMAC MORTGAGE, LLC (the "Assignee"), its successors, transferees, and assigns forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by CORLA JACKSON, A SINGLE WOMAN, to OPTION ONE MORTGAGE CORPORATION dated the 26th day of May, 2004, and filed for record in Book 5605, Page 1910, in the Probate Office of Mobile County, Alabama, covering property described in said Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned in and to the property described in said Mortgage.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, said Assignor has hereunto set its signature this 19th day of June, 2008.

OPTION ONE MORTGAGE CORPORATION

By: _____

Its:   Brian D. McConnell
       Assistant Secretary


STATE OF CALIFORNIA)

COUNTY OF ORANGE )

I, R.A Salazar, a Notary Public in and for the said County and State, do hereby certify that Brian D. McConnell, whose name as Assistant Secretary of OPTION ONE MORTGAGE CORPORATION, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of this instrument, he/she, as such officer, and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this 19th day of June, 2008.

_____
Notary Public

My Commission Expires:08/02/2011

R. A. SALAZAR
Commission # 1769905
Notary Public - California
Orange County
My Comm Expires Aug 2, 2011


This instrument prepared by:
Colleen McCullough
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL  35255

State of Alabama Mobile County
I certify this instrument was filed on
July 11, 2008 1 7 13:13 PM
D.B. FEE                    $2.00
RECORDING FEES              $2.00
TOTAL AMOUNT               $3.50
                           $5.50
2008050095
Don Davis, Judge of Probate

**Experian™**
A world of insight

**Report date**
September 23, 2010
www.experian.com/disputes        **Page 3 of 14**
PO BOX 9701, Allen, TX 75013

**Prepared for**
CORLA JACKSON
**Report number**
1614-2525-51

## Potentially negative items or items for further review continued

---

### AT&T CREDIT MANAGEMENT CENTER
PO BOX 80701
CHARLESTON SC 29416
No phone number available
**Partial account number**
53240761 4....

| | | |
|---|---|---|
| *Date opened* Mar 2004 | *Date of status* Jan 2005 | *Type* Revolving |
| *Reported since* Jan 2005 | *Last reported* Jan 2005 | *Terms* 1 Months |
| | | *Monthly payment* NA |

*Responsibility* Individual

*Credit limit or original amount* NA
*High balance* $359

*Recent balance* $359 as of Jan 2005

Status: Account charged off. $359 written off. $359 past due as of Jan 2005.

Account history:
Charge Off as of Jan 2005

This account is scheduled to continue on record until Dec 2010.

Address identification number:
379406707

---

### FIRST PREMIER BANK
601 S MINNESOTA AVE
SIOUX FALLS SD 57104
(800) 987-5521
**Partial account number**
517760731404....

| | | |
|---|---|---|
| *Date opened* Oct 2005 | *Date of status* Jan 2007 | *Type* Revolving |
| *Reported since* Nov 2005 | *Last reported* Feb 2009 | *Terms* NA |
| | | *Monthly payment* NA |

*Responsibility* Individual

*Credit limit or original amount* $200
*High balance* $685

*Recent balance* $0 as of Feb 2009

Status: Account charged off. $196 written off.

Account history:
Charge Off as of Jan 2007 to Feb 2009
120 days past due as of Dec 2006
90 days past due as of Nov 2006
60 days past due as of Oct 2006, Feb 2006
30 days past due as of Sep 2006, Jan 2006

This account is scheduled to continue on record until Jun 2013.

Address identification number:
379406707

**Sold to: ARROW FINANCIAL SERVICES**

---

### GMAC MORTGAGE
PO BOX 4622
WATERLOO IA 50704
(800) 766-4622
**Partial account number**
83500....

| | | |
|---|---|---|
| *Date opened* May 2004 | *Date of status* May 2005 | *Type* Mortgage |
| *Reported since* Mar 2005 | *Last reported* Jul 2010 | *Terms* 30 Years |
| | | *Monthly payment* $1,942 |

*Responsibility* Individual

*Credit limit or original amount* $240,000
*High balance* NA

*Recent balance* $330,056 as of Jul 2010

Status: Petition for Chapter 13 Bankruptcy. $126,224 past due as of Jul 2010.

Account history:
Foreclosure as of Apr 2005
60 days past due as of Mar 2005
Filed Chapter 13 Bankruptcy on May 31, 2005

This account is scheduled to continue on record until Jan 2012.

Address identification number:
379406707





**Potential Health Effects Associated with Inhalation Exposure to Molds and Mycotoxins**

- Allergic Reactions (e.g., rhinitis and dermatitis or skin rash)
- Asthma
- Hypersensitivity Pneumonitis
- Other Immunologic Effects

Research on mold and health effects is ongoing. This list is not intended to be all-inclusive.

The health effects listed above are well documented in humans. Evidence for other health effects in humans is less substantial and is primarily based on case reports or occupational studies.

All molds have the potential to cause health effects. Molds produce allergens, irritants, and in some cases, toxins that may cause reactions in humans. The types and severity of symptoms depend, in part, on the types of mold present, the extent of an individual's exposure, the ages of the individuals, and their existing sensitivities or allergies. Specific reactions to mold growth can include the following:

**Allergic Reactions:** Inhaling or touching mold or mold spores may cause allergic reactions in sensitive individuals. Allergic reactions to mold are common – these reactions can be immediate or delayed. Allergic responses include hay fever-type symptoms, such as sneezing, runny nose, red eyes, and skin rash (dermatitis). Mold spores and fragments can produce allergic reactions in sensitive individuals regardless of whether the mold is dead or alive. Repeated or single exposure to mold or mold spores may cause previously non-sensitive individuals to become sensitive. Repeated exposure has the potential to increase sensitivity.

**Asthma:** Molds can trigger asthma attacks in persons who are allergic (sensitized) to molds. The irritants produced by molds may also worsen asthma in non-allergic (non-sensitized) people.

**Hypersensitivity Pneumonitis:** Hypersensitivity pneumonitis may develop following either short-term (acute) or long-term (chronic) exposure to molds. The disease resembles bacterial pneumonia and is uncommon.

**Irritant Effects:** Mold exposure can cause irritation of the eyes, skin, nose, throat, and lungs, and sometimes can create a burning sensation in these areas.

**Opportunistic Infections:** People with weakened immune systems (i.e., immune-compromised or immune-suppressed individuals) may be more vulnerable to infections by molds (as well as more vulnerable than healthy persons to mold toxins). *Aspergillus fumigatus*, for example, has been known to infect the lungs of immune-compromised individuals. These individuals inhale the mold spores which then start growing in their lungs. *Trichoderma* has also been known to infect immune-compromised children.

Healthy individuals are usually not vulnerable to opportunistic infections from airborne mold exposure. However, molds can cause common skin diseases, such as athlete's foot, as well as other infections such as yeast infections.

**Mold Toxins (Mycotoxins)**

Molds can produce toxic substances called mycotoxins. Some mycotoxins cling to the surface of mold spores; others may be found within spores. More than 200 mycotoxins have been identified from common molds, and many more remain to be identified. Some of the molds that are known to produce mycotoxins are commonly found in moisture-damaged buildings. Exposure pathways for mycotoxins can include inhalation, ingestion, or skin contact. Although some mycotoxins are well known to affect humans and have been shown to be responsible for human health effects, for many mycotoxins, little information is available.

Aflatoxin $B_1$ is perhaps the most well known and studied mycotoxin. It can be produced by the molds *Aspergillus flavus* and *Aspergillus parasiticus* and is one of the most potent carcinogens known. Ingestion of aflatoxin $B_1$ can cause liver cancer. There is also some evidence that inhalation of aflatoxin $B_1$ can cause lung cancer. Aflatoxin $B_1$ has been found on contaminated grains, peanuts, and other human and animal foodstuffs. However, *Aspergillus flavus* and *Aspergillus parasiticus* are *not* commonly found on building materials or in indoor environments.

251 625 4298   p.1

## PRO-LAB/SSPTM INC.

1675 North Commerce Parkway
Weston, Florida 33328
Toll Free: 800-427-0550

**Test Address:**
JACKSON-TOM GASTON #2, ,

**Client:**

PIONEER PARTNERS L L C - DAPHNE
PO BOX 1261
DAPHNE, AL 36526

Phone: (251) 533-5858
Fax: (251) 625-4295
Email: rich@certifiedmoldtreatment.com

| | | | |
|---|---|---|---|
| Report Number: | 092106-0416 | Collection Location: | NO INFO |
| Date Collected: | | Sample Submitted: | BULK |
| Analyst ID: | 20 | | |

### Mold Analysis Report
**Direct Microscopic Examination**
Analysis Method 3SPTM SOP 6210

| | |
|---|---|
| Report Number: | 092106-0416 |
| Received Date: | 9/21/2006 |
| Analysis Date: | 9/21/2006 |
| Report Date: | 9/21/2006 |

John D. Shane Ph.D., QA Manager

**Comments:**
Algae present

The following fungal descriptions are pertinent to samples collected. General characterization of mold is made with respect to their most common impact to human health. Many genera of molds have species with varying characteristics.

| Spore Name | Description |
|---|---|
| PENICILLIUM/ASPERGILLUS | THIS SPECIES IS CONSIDERED COMMON TO INDOOR ENVIRONMENTS. IT IS WIDESPREAD IN THE SOIL AND ON PLANTS AND IS ALSO CONSIDERED A COMMON CONTAMINANT OF FOOD. IT HAS A MUSTY ODOR. IT IS COMMONLY BEING IMPLICATED IN PULMONARY DISEASE IN IMMUNOCOMPROMISED HOSTS. IT HAS ALSO BEEN REPORTED TO CAUSE SKIN INFECTIONS. MANY SPECIES PRODUCE MYCOTOXINS, WHICH MAY BE ASSOCIATED WITH DISEASE IN HUMANS AND OTHER ANIMALS. TOXIN PRODUCTION IS DEPENDENT ON THE STRAIN, OR ON THE FOOD SOURCE ON WHICH IT GROWS. SOME OF THESE TOXINS HAVE BEEN FOUND TO BE CARCINOGENIC IN ANIMAL SPECIES. SEVERAL TOXINS ARE CONSIDERED POTENTIAL HUMAN CARCINOGENS. |

rev 1.0

**PRO-LAB/SSPTM INC.**
1875 North Commerce Parkway
Weston, Florida 33326
Toll Free: 800-427-0550

**Test Address:**
JACKSON-TOM GASTON #2, ,

**Client:**

PIONEER PARTNERS L L C - DAPHNE
PO BOX 1261
DAPHNE, AL 36526

**Phone:** (251) 533-5858
**Fax:** (251) 625-4295
**Email:** rich@certifiedmoldtreatment.com

| Report Number: | 092106-0416 | Collection Location: | NO INFO |
| Date Collected: | | Sample Submitted: | BULK |
| Analyst ID: | 29 | | |

**Mold Analysis Report**
Direct Microscopic Examination
Analysis Method SSPTM SOP 6210

| Report Number: | 092106-0416 |
| Received Date: | 9/21/2006 |
| Analysis Date: | 9/22/2006 |
| Report Date: | 9/22/2006 |

John D. Shane Ph.D., QA Manager

**Comments:**
Algae present

---

**Report Summary:**    Pro-Lab Number: 092106-0416    Sample Submitted: BULK
Unusual Mold Condition(s) Exists: Yes

This sample in this report indicates the presence of mold spores for this specific location only. The Environmental Protection Agency (EPA) recommends that any indoor mold growth be addressed and that all water or moisture sources be eliminated.

The mold identified in this report is often associated with excess moisture and can be a problem in indoor environments at high levels. Since mold requires water to grow, it is important to prevent moisture problems in buildings. The presence of mold, water damage or musty odors should be addressed immediately. In all instances, any source(s) of water must be stopped and the extent of water damage determined. Mold can grow on virtually any organic surface, as long as moisture and oxygen are present. When excessive moisture accumulates in buildings or on building materials, mold growth will often occur, particularly if the moisture problem remains undiscovered or unaddressed. Building materials, such as drywall are made of cellulose and are highly absorbent, perfect surfaces for mold growth when wet. Moisture problems may include roof leaks, plumbing leaks, landscaping or gutters that direct water into or under the building, and unvented combustion appliances such as gas stoves. Water damaged building materials supporting mold growth should be discarded or replaced as quickly as possible in order to ensure a healthy environment. Specific methods of assessing and remediating mold contamination should be based on the extent of visible contamination and the cause of damage.

The most common symptoms of mold exposure are runny nose, eye irritation, cough, congestion, and aggravation of asthma. Individuals with persistent health problems that appear to be related to mold or other types of air quality contaminant exposure should see their physicians for a referral to professionals who are trained in occupational/environmental medicine or related specialties and are known. Specific about these types of exposures. Decisions about removing individuals from an affected area must be based on the results of such medical evaluation. Since mold is naturally present in outdoor environments and we share the same air between the indoors and the outdoors, it is impossible to eliminate all mold and their spores from the indoor environment.

The detection limit of fungal analysis using optical microscopy is one fungal spore or one fungal structure. The quantitation limits vary from analysis to analysis and from processing procedure to processing procedure. Contact us to determine your quantitation limits.

**FOR MORE INFORMATION, PLEASE CALL PRO-LAB™ AT 1-800-427-0550**    **END OF REPORT**

Currently there are no Federal regulations for evaluating potential health effects of fungal contamination and remediation. This information is subject to change as more information regarding fungal contaminants becomes available. For more information visit: http://www.epa.gov/appti/molds/index.html or www.epa.gov/iaq/molds/moldresources. This document was designed to follow currently known industry guidelines for the interpretation of microbial sampling, analysis, and remediation. Since interpretation of mold analysis reports is a volatile work in progress, it may as such be changed at any time without notice. The client is solely responsible for the use or interpretation. PRO-LAB/SSPTM Inc. makes no express or implied warranties as to health of a property from only the samples sent to their laboratory for analysis. The Client is hereby made that due to the subjective nature of fungal analysis and the mold growth process, laboratory samples can and do change over time relative to the originally sampled material. PRO-LAB/SSPTM Inc. reserves the right to properly dispose of all samples after the testing of such samples are sufficiently completed at after 4 7 day period, whichever is greater. PRO-LAB/SSPTM Inc. participates in the AIHA EMPAT program. LAB ID #163230

rev 1.0    Page    2

Multiple Injuries      #50      E.D. Physician Record

53176690  396009
JACKSON ,CORLA
06/25/1961  46 B F 03/13/08
018996     BENJAMIN, REGINA M.  MD
E/R



Burns
cleaned
and
dressed-

5 cm
Deep
Laceration

4 cm
deep
lac

Burns

1° Burns    1° Burns

**Diagnostic Considerations:** *circle potential diagnoses*

Smoke inhalation  Ft Burns  contusic

**X-ray:** (Read by ____ Read)
1 — □ CXR ____ nl    2 — □ Hyp lt cur ld ____ nl
3 — □ (L) FA ____ nl    4 — □ pelvis ____ nl
5 — □ (R) FA ____ nl    6 — □ ____ nl

*Reviewed / discussed with Radiologist:*

**Treatment / Course:**

| Medications / Orders | Response |
|---|---|
| __ O2 ____ In nebulizer | Morphine IV |
| __ Tetanus __ TT / dT / TIG | 2° Gtt IV |
| __ Pain meds: | |
| __ immobilization: static  dynamic | |
| Applied by: ___ E.P. ___ other | ABA neb q 2 |
| __ compression dressing ___ crutches | |
| __ NPO | |
| other procedures / meds: | Reassess Neb: Still wheeze |
| IVNS 1000 mL | ABA repeated |
|  | S8 lume did D5m IV |

**Procedure:**
( __ see addendum )
Course: same / better / worse
Critical Care: ___ minutes / hour(s)

**Clinical Impression:**

① Smoke inhalation      ④ contusion
② 5 cm laceration ® forearm      Buttock
③ 4 cm laceration (L) forearm      ⑤ 1° Burns
                                    B LE

**Consultation:**
Consulted Dr. _____ (time) _____
Suggests: admit. / discharge / will see: ___ / Transfer to ___
Case discussed with: patient / family / other:

**Disposition:**
__ Transfer to: ____ Accepting Physician: ____ EMTALA form completed
__ Admit: ___ IP / ___ OP  ICU / Tele / Med-Surg
   Admitting physician ____    Covering Physician: ____
   Orders written in ED ____
__ Discharged. Condition: __ improved ___ unchanged
Instructions given: __ written—refer to: __ WMH form __ RTW form __ school excuse
   ( __ off work / school  or __ lmtd work / school / gym thru ____ )
Discharge Rx: __ albuterol  5d pred  lortab
Certified Emergency? □ Yes  □ No

Sig: _____ date 3/13/08  Attend / Resid. / PA / NP
     _____ date 3/13/08  Attend. / Resid. / PA / NP
See: ___ Addendum ___ Attending note
Copies to:
□ dictated
□ chart completed

Repeat exam at: N30: twi  Findings: improve R

**Medical Decis. Making:** L1: straightforward; L2, 3: low/complex; L4: mod; L5: hi
Slash box if ordered ☑, check normals ✓, *circle* and note abnormals

**Lab:**
| | |
|---|---|
| □ CBC: ___ nl ___ nl except: | □ Other data reviewed: |
| Hct ___ Hgb ___ Plts ___ | □ ETOH □ Drug screen |
| WBC ___ | □ PT, PTT, INR ___ □ T & G x ___ units RBC |
| Neut % ___ Lymph % ___ | |
| Monos % ___ Eos % ___ | |
| Baso% ___ | |
| □ BMP: ___ nl ___ nl except: | □ ABG: on ___ RA / O2 ___ % / L |
| □ CMP: ___ nl ___ nl except: | pH: ___ PO2 ___ |
| NA ___ K ___ Glu ___ Cl ___ | PCO2 ___ HCO3 ___ |
| CO2 ___ Anion gap ___ BUN ___ | |
| Creat. ___ B/C Ratio ___ Calcium ___ | □ P. Ox ___ %: on ___ RA / O2 ___ % / L |
| Alk Ptase ___ SGPT (ALT) ___ | ___ nl / hypoxic |
| SGOT (AST) ___ T. Bili ___ T. Prot ___ | |
| Albumin ___ Globulin ___ A/G Ratio ___ | □ EKG ___ Nl study |
| □ U/A: ___ dip neg ___ dip neg except: | ___ NSR ___ nl intervals |
| Micro neg ___ neg except ___ | ___ nl QRS ___ nl ST-T waves |
| □ Qual hCG: □ Blood □ Urine  Neg / Pos | Compared to: ___ |
| ___ send quantitative | ___ unchanged / changed |
| | Read by: ___ E.P. |
| | □ Cardiac monitor: ___ NSR |

**Wound Repair:**

| Location | Length / Depth | Repair |
|---|---|---|
| ® F.A.  5 cm  superfic / SQ / M | SHCL running sutures | Dermabond / staples  # of __5__  -0 Vicryl |
| ℗ L FA  4 cm  superfic / SQ / M | Skin Simple interrupted | Dermabond / staples  # of __3__  -0 nylon  # of __-O |

**Comments:**
__ tendon intact  __ bone intact  ® L FA  SHCL Simple running
Level of contamination: __ clean / min / mod / severe  Skin sutures
Anesthesia: local / digital block ___ mL of __lidocaine__  □ epi / HCO3
__ prep     Suture removal instruct: __10__ days      Closure single
__ Explored: __ no F.B. __ tendon inj. / F.B. identified / tendon injury  interrupted
__ irrigat. __ débrided __ undermined __ revised  __ F.B. removed
(for above:  min = 1, mod = 2, extensive = 3)

Copyright © 2008, EvolveMed, ERG    Photocopying without permission is prohibited    AAEM Templates

03106690  396009
JACKSON, CORLA
06/25/1961  46 B F  03/13/08
018996    BENJAMIN, REGINA M.  MD
E/R

## Multiple Injuries

**PROVIDENCE HOSPITAL EMERGENCY DEPARTMENT, MOBILE, AL (334) 633-1000**

*Check (✓) for normals, circle positives, slash negatives, note findings*

Date: 3/13/08   E.P. time: ___   Age: ___   Wt ___   Sex M / F
P: 111   BP: 106/70   RR: 18   Temp: 99.1

**Chief Complaint:** Multiple Injuries   House Fire –
fell

Referred by: *self / clinic / PMD / family / EMS*    Arrived by: *EMS / walk-in / wheelchair*
Historian: *patient / family / friend / EMS*    Hx limited by: *Altered LOC / acuity / intoxication*

### HPI: L 1-3: 3 elements; L 4-5: 4+ elements

**Onset:** ___ undetermined
**Occurred:** 0830 time ___ date
___ mins / hrs / days PTA

**Modifying factors:** ___ none
witnessed / unwitnessed
Ambulatory at scene: yes / no
Contributory factors: ETOH / drugs /
seizure / syncope / suicide attempt
Other:

**Location:**
(home) work
Other:

**Activity during injury:** ___ unknown
Putting fire out
fell 8 ft off ladder

**Mechanism of injury:** ___ unknown
fell

**Location (anatomic):**
Burns legs, smoke inhalation, locs

**Injury description (quality):**
deformity / dislocation / sprain / strain /
contusion / laceration / puncture / stab / abrasion /
GSW / F. B. / burn
**Pain:** ___ none / at rest / c̄ wt bearing / c̄ use
**Pain quality:** sharp / dull / aching / throbbing

Pt was trying to put
fire out – she
has smoke inhalation
burns to legs – loc's
to arms, injury to hip

Last ate:

**Assoc. sxs:** ___ none
no complaints / "just stiff and sore"
wounds / bony deformity / swelling
**Pain:** head / face / neck / chest / abd /
back / pelvis / RUE / LUE / RLE / LLE
**LOC:** unknown / dazed / + LOC
Duration: ___ sec / mins / hrs
Remembers: incident / coming to hospital
GCS: 15 / 15
**Prior Rx:** ___ none
EMS: spinal immobilization
Other:

### Past Family, Social History: L 1-4: 1 area L 5: 2 of 3 areas
Reviewed ___ RN note ___ Old Records ___ NH records ___ EMS note

**PMHx:** ___ none ___ unknown  HTN
peptic ulcer / GI bleed
arthritis / CAD / IDDM / NIDDM
thrombophlebitis / clotting probs
osh hm

**Meds:** ___ none ___ reviewed RN note
ASA / NSAIDs / Coumadin / Plavix
insulin / steroids
antihistamines / narcotics / sedatives

**Allergies:** ___ reviewed RN note
Diphtheria tetanus current ___ no
___ yes, year ___

**Surgical Hx:** (none) ___ unk
Prior trauma:
Other:

**Family Hx:** (none) ___ unknown
DM / CAD
clotting probs

**Social Hx:** ___ unknown
Tobacco: current ___ / ___
quit ___ years ago; hx of ___ pack
ETOH: sxs drinks / wk
Recent?
Drugs:
Occupation:
Home situation: ☐ lives alone / w/s
☐ w/family ☐ N.H.  ☐ CB

### Physical Exam: L 1-3: 2-4 organ/areas; L 4: 5-7 organ/areas; L 5: 8+ organ/area
___ Exam limited by: urgency of condition / pt. uncooperative
**Gen:** Anxious: ___ no / mild / mod / severe  Distress: ___ no / mild / mod / sev
✓ VS nl    Orthostat. VS: O – : ___
Nutritional status: ___ nl / obese    Hydration: ___ nl / dehydrated
Longboard / cervical immob. / ED / EMS / IV / intubation / splint
___ nl color, tone
___ awake, alert, appropriate
___ diaphoretic
___ cyanotic

**Skin / Nail:**
___ nl appearance s̄ cyanosis
___ brisk, nl capillary refill
___ hydrated, warm & dry   soot
no

**Head / Neck (MSK):**
✓ head s̄ trauma, skin nl
___ neck s̄ tend, ROM full

**Eyes:**
___ nl, conj. nl
✓ PERRL, EOM's full
cornea, chambers, discs nl

**Neuro:**
___ alert & oriented x 3
___ motor, sensory nl
___ reflexes intact, symmetrical
___ nl gait, cerebellar function
___ cranial nerves intact

**ENT:**
___ nose nl
___ ext. ears, canals, TM's nl
___ mouth, teeth, oropharynx nl

**Psych:**
___ affect, mood nl
___ judgment, memory nl

**CV:**
___ nl rate, rhythm
___ heart sounds nl
___ pulses = neck & all 4 ext.

**(R) / (L) upper ext.**
(mark nl as R, L or B):
___ appearance nl, nontender...
___ ROM full s̄ pain: ___
___ stable: ___
___ strength and tone nl: ___

**Resp, Chest:**
___ no resp distress
___ breath sounds nl, clear, equal
___ chest inspect., palpat. nl

Laceration

**(R) / (L) lower ext.**
(mark nl as R, L or B):
___ appearance nl, nontender
___ ROM full s̄ pain:
___ stable:
___ strength and tone nl:

**Spine / pelvis / ribs (MSK):**
___ thorac., lumbar inspect., palpat. nl
___ pelvis stable, inspect., palpat. nl

**GI / Abdomen / Flank:**
___ abd nl appearance, BS nl
___ soft, nontender
___ flank nl appearance, nontender
___ rectal nl, heme neg.

**MSK:**
___ gait nl
___ toes, nails nl

**Glasgow Coma Score  15**
**Eyes open:** 4-spontaneous  3-to comma
2-to pain  1-none
**Verbal:** 5-nl  4-confused  3-inappropriate
2-incoherent sounds  1-none
**Motor:** 6-normal  5-localizes pain
4-withdraws  3-decorticate (flex.)
2-decerebrate (ext.)  1-none

### All systems reviewed: ___ negative ___ negative except as marked
___ **Constit:** weak / faint / fever / chills / diaphoresis
___ **Eyes:** F.B. sensat. / vision probs
___ **ENT:** ear, nose or throat c/o's / hearing probs / hoarseness
___ **C/V:** chest discomfort / palpitations
___ **Resp:** SOB / breathing probs / cough / wheezing
___ **GI:** N/V
___ **GU:** urinary probs / kidney probs / genitalia pain   LMP: ___ nl / abnl
___ **MS:** other painful areas: ni ρ
___ **Skin:** skin probs
___ **Neuro:** numbness / tingling / focal deficits / paralysis / dizzy / change in behavior /
incontinence / seizures
___ **Psych:** psych probs / anxiety / depression
___ **Hemat / Lymph:** bruising / bleeding
___ **Endo:** polyuria / polydipsia
___ **Immun / Allerg:** HIV / AIDS / splenectomy

(L) hip / buttock tender – large
to buttocks

# KARL FRANKLIN
# FRANKLIN ELECTRIC
78 Valeria Street
MOBILE, ALABAMA 36607

**OFFICE: (251) 478-0592**
**CELL:   (251) 402-3541**

# ELECTRICAL
## Work Order/Invoice

226

TO: *Ms CorLa Jackson*

| | |
|---|---|
| DATE OF ORDER | *3-13-08* |
| RENEWAL DATE | |
| ORDER TAKEN BY | |
| STARTING DATE | |
| JOB EXPIRATION DATE | |
| ☐ DAY WORK  ☐ CONTRACT ☐ | |
| JOB NAME / NO. | *Ms CorLa Jackson* |
| JOB LOCATION | *13230  Tom Gaston Ra* |
| WORK ORDER # | *Fire Damage* |
| JOB TEL | |

**CHECKMARKS DENOTE:**
☐ WORK TO BE DONE
☐ WORK PERFORMED

**DESCRIPTION OF WORK**

*Repaired damage wires that, was burned in utility Room cause by faul wires over gas hotwater heater, wh cause hotwater heater to ignite.*

| | INSTALL | REPAIR | REMOVE | INSPECT | TROUBLE SHOOT | ROUGH WIRE |
|---|---|---|---|---|---|---|
| TEMPORARY SERVICE | | | | | | |
| LIGHT FIXTURE(S) | | ✓ | | | | |
| SWITCH(ES) | | ✓ | ✓ | | ✓ | |
| RECEPTACLE(S) | | | | | | |
| RECEPTACLE(ES) GFCI | | | | | | |
| SERVICE PANEL | | | | | | |
| SUB-PANEL | | | | | | |
| CIRCUIT BREAKER(S) | | | | | | |
| FUSE(S) | | | | | | |
| TRANSFORMER | | | | | | |
| CABLE T.V. WIRE | | | | | | |
| TELEPHONE WIRE | | | | | | |
| SMOKE DETECTOR(S) | | | | | | |
| DOOR CHIME(S) | | | | | | |
| CEILING FAN(S) | | | | | | |
| BATHROOM FAN / LIGHT | | | | | | |
| EMERGENCY LIGHT | | | | | | |
| GENERATOR CON. | | | | | | |
| ATTIC WIRES | | ✓ | ✓ | | ✓ | |
| RANGE CIR. | | | | | | |
| RANGE HOOD CIR. | | | | | | |
| DISHWASHER CIR. | | | | | | |
| DISPOSAL CIR. | | | | | | |
| WASHER CIR. | | | | | | |
| DRYER CIR. | | | | | | |
| WATER HEATER CIR. | ✓ | | | | | |
| ELECTRIC MOTOR | | | | | | |
| FEEDER CABLE | | | | | | |
| BEDROOMS | | | | | | |
| UNDER GR. FEED | | | | | | |
| AIR CONDITIONER(S) CIR. | | | | | | |
| BOILER / FURNACE CIR. | | | | | | |
| HEAT PUMP | | | | | | |
| GARAGE | | | | | | |
| KITCHEN | | | | | | |
| OTHER ROOM | | | | | | |

TERMS:

**LABOR**

| | HRS | | AMOUNT |
|---|---|---|---|
| | | | |

**TOTAL LABOR**

| QTY | MATERIAL | | AMOUNT |
|---|---|---|---|
| | | | |

WORK ORDERED BY *Karl Franll*

I hereby acknowledge the satisfactory completion of the above
SIGNATURE

# Thank You!

| TOTAL MATERIALS | |
|---|---|
| TOTAL | |
| TAX | |
| TOTAL | 2750 |



**KARL FRANKLIN**
**FRANKLIN ELECTRIC**
78 Valeria Street
MOBILE, ALABAMA 36607

**OFFICE: (251) 478-0592**
**CELL:   (251) 402-3541**

# ELECTRICAL
## Work Order/Invoice

2262

TO:

Ms. Carla Jackson

| DATE OF ORDER 3-13-08 | RENEWAL DATE |
| ORDER TAKEN BY | JOB EXPIRATION DATE |
| STARTING DATE | ☐ DAY WORK   ☐ CONTRACT   ☐ EX |
| JOB NAME / NO. Ms. Carla Jackson | |
| JOB LOCATION 13230 - Tom Gaston | |
| WORK ORDER # | JOB TEL. |

**CHECKMARKS DENOTE:**
☐ WORK TO BE DONE
☐ WORK PERFORMED

TERMS:

**DESCRIPTION OF WORK**

Replace damage wires + Ceiling Fixtur
from previouse hurricane storms, wh
had gone with out Repaires. There free
house should be completely Rewired.
Guarantee no Future Electrical Fir

| | INSTALL | REPAIR | REPLACE | INSPECT | ROUGH WIRE | FINISH WIRE |
|---|---|---|---|---|---|---|
| TEMPORARY SERVICE | | | | | | |
| LIGHT FIXTURE(S) | | | ✓ | ✓ | | |
| SWITCH(ES) | | | ✓ | ✓ | | |
| RECEPTACLE(S) | | | ✓ | ✓ | | |
| RECEPTACLE(S) GFCI | | | ✓ | | | |
| SERVICE PANEL | | | | OK | | |
| SUB-PANEL | | | | OK | | |
| CIRCUIT BREAKER(S) | | | ✓ | ✓ | | |
| FUSE(S) | | | | | | |
| TRANSFORMER | | | | | | |
| CABLE T.V. WIRE | | | | | | |
| TELEPHONE WIRE | | | | | | |
| SMOKE DETECTOR(S) | | | ✓ | ✓ | ✓ | |
| DOOR CHIME(S) | | | | ✓ | | |
| CEILING FAN(S) | | | ✓ | ✓ | | |
| BATHROOM FAN / LIGHT | | | | ✓ | | |
| EMERGENCY LIGHT | | | | | | |
| GENERATOR CON. | | | | | | |
| ATTIC WIRES | | | ✓ | ✓ | ✓ | |
| RANGE CIR. | | | ✓ | | | |
| RANGE HOOD CIR. | | | ✓ | | | |
| DISHWASHER CIR. | | | ✓ | | | |
| DISPOSAL CIR. | | | ✓ | | | |
| WASHER CIR. | | | ✓ | | | |
| DRYER CIR. | | | | | | |
| WATER HEATER CIR. | ✓ | | | | | |
| ELECTRIC MOTOR | | | | | | |
| FEEDER CABLE | | | | OK | | |
| BEDROOMS | | | ✓ | ✓ | | |
| UNDER GR. FEED | | | | | | |
| AIR CONDITIONER(S) CIR. | | | ✓ | ✓ | ✓ | |
| BOILER / FURNACE CIR. | | | | | | |
| HEAT PUMP | | | | | | |
| GARAGE | | | | | | |
| KITCHEN | | | ✓ | ✓ | ✓ | |
| LIVING ROOM | | | ✓ | ✓ | ✓ | |
| STORAGE BUILDING | | | ✓ | ✓ | ✓ | |
| DWELLING | | | | | | |
| | | | | | | |
| EXIT LIGHT | | | | | | |
| BULBS | | | | | | |
| RELAY/CONTACT | | | | | | |
| POLE LIGHT | | | | | | |

| | HRS. | @ | AMOUNT |
|---|---|---|---|
| **LABOR** | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTAL LABOR** | | | |

| QTY | MATERIAL | | AMOUNT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

WORK ORDERED BY
Karl Franklin

I hereby acknowledge the satisfactory completion of the above
_____ SIGNATURE

## Thank You!

| TOTAL MATERIALS | |
| TOTAL LABOR | |
| TAX | |
| **TOTAL** | 9750 |



AOL | Mail | Toolbar    Location: Mobile, AL 36695 | Search History | Advanced Search | Settings

Web    Images | Videos | Maps | News | Shopping | more »

**What does it mean when a Hurricanes leave sags and dips**    Search

Web Results 1 - 10 of about 2,660

### [PDF] SAFE REHABILITATION OF HURRICANE-DAMAGED HOMES

Roofs that sag in the middle or at the ends due to load-bearing walls that have shifted. ... a dip in the roof and sill beam, ribbon board, cracked floor joist .... However if there is a lot of water damage, and/or mold growth ... In adults, lead poisoning may cause high blood pressure, fertility ...
hud.gov/offices/lead/library/misc/HUD_CSS_Booklet.pdf - Similar

### [PDF] Response to Floods and Water Damage for Libraries, ...

Jun 14, 2008 .... Go onto the roof if rising water makes it necessary as long as no thunderstorm is in progress. ... highway dips, where water may pool and pose threats. ... Emergency Drying Procedures for Water Damaged Collections. ... Pools of cool standing water (which can cause hypothermia if the water is less ...
www.loc.gov/preserv/emergprep/floodcomp.pdf - Similar

### Roofing: How dry does the deck need to be?, asphalt shingles, ...

Apr 30, 2009 ... Anything that might soak up water, like insulation must be ripped out as it can ... Several interior rooms beneath the damaged roof show obvious signs of warped ... one could SEE an extreme bow or sag, but are there degrees of tolerance in what ... Look for isolated humps or dips between rafters. ...
en.allexperts.com/q/Roofing-1598/2009/4/dry-deck-need... - Similar

### Hurricane Survival Tips - Hurricane Mitigation & Survival

The two huge masses of water do leave the land in much the same way, .... When water kills or does damage, the wind put it up to it. .... and with major hurricanes, it ain't over until the National Guard arrives. .... Invest in a hurricane roof as the main hole you want to avoid is a big one with a view of Heaven. ...
www.hurricane-man.com/survival-tips.html - Similar

### General information | RAGBRAI

This may cause your group to be ineligible for the lottery. .... RAGBRAI is a major economic boost to every church, Boy Scout or Girl .... Your wristband also will give you priority to sag wagons, bicycle shop repairs and many other services. ... If you race ahead, lag behind or leave the official bicycle route, ...
ragbrai.com/index.php/about/general-information/ - Similar

### Antigua - Local Reports (Caribbean Hurricane Network)

that it does not necessarily mean that the case brought by ABITPC against govern - .... It was badly damaged by the 1990s hurricanes that kept visiting Antigua.. . ...... Whatever will cause this dip could occur earlier? I certainly hope not! ..... WHAT a way to start a week... with a 140 mph major hurricane on your ...
stormcarib.com/reports/2003/antigua.shtml - Similar

### Using Technology to Reduce Risk and Improve Worker Safety | ...

The root cause of this unwanted connection is often a result of insulation breakdown. ... equipment damage and present a fire and explosion risk to personnel (see photo 1). .... 5) To reduce the momentary line-voltage dip occasioned by the occurrence and ..... Utility Deregulation, What Does It Mean to inspectors? ...
www.iaei.org/magazine/?p=2449 - Similar

### Pain in Maine, but they can measure rain « Climate Audit

But all the data sufficient to predict hurricanes is OK? ..... (Heck, if it's like my house, the whole electrical system voltage sags whenever a big ..... that $CO_2$ is not a major factor in causing the earth to warm: You are a denier. ...... Does this mean that it's OK to shade the truth about AGW so that someone, ...
www.climateaudit.org/?p=1816 - Similar

*Kevin Cook*
**Paradise Sub-Contracting, Inc.**
**15055 County Road 83**                                             **April 21, 2008**
**Elberta, Al. 36530**
**251-747-9557**

**Corla Jackson**
**13230 Tom Gaston Rd.**
**Mobile, Al. 36695**

**Ms. Jackson,**

   **I have reviewed the paperwork you provided me and your home has been unlivable since August 8, 2005 as stated in the document from L A Research and Engineering, Inc. Your insurance carrier should have provided funds for you to relocate temporarily or to pay mortgagee's payment for home and she will pay for temporary housing so that repairs could be preformed. Mobile County will not allow a home that has not received a Certificate of Occupancy to be occupied. The home now has fire damage also and you will need to find temporary housing and storage for your contents and after review of your policy all of this should be provide as coverage under the Loss of Use Clause.**

**Thank You,**

**Kevin Cook**

FROM : KEVIN+COOK    FAX NO. : 2519687239    Apr. 14 2008 07:41PM P10

## BUDGET WORKSHEET
### FOR:Corla Jackson
### 13230 Tom Gaston Rd.

| Item | Budget | Bid #1 | Bid #2 | Bid #3 | Cost |
|------|--------|--------|--------|--------|------|
| Termite protection | 1500 | | | | |
| Permit | 1850 | | | | |
| Demolition | 48720 | | | | |
| Foundation | | | | | |
| Slab | | | | | |
| Plumbing | 6800 | | | | |
| Framing Package | 38328 | | | | |
| Framing labor | 11800 | | | | |
| Roof | 11730 | | | | |
| Electrical | 14800 | | | | |
| HVAC | 15475 | | | | |
| Insulation | 5400 | | | | |
| Drywall | 12360 | | | | |
| Utilities | 350 | | | | |
| Cabinets | 22378 | | | | |
| Trim Material | 12500 | | | | |
| Trim labor | 5250 | | | | |
| Flooring | 20828 | | | | |
| Siding | | | | | |
| Brick | | | | | |
| Painting | 11450 | | | | |
| Diveway & sidewalk | | | | | |
| Dumpster | 2000 | | | | |
| Cleaning | 2500 | | | | |
| Appliances | 12500 | | | | |
| Plumbing Fixtures | 13500 | | | | |
| Garage Doors | 1250 | | | | |
| Electrical Fixtures | 3200 | | | | |
| Counter Tops | 10000 | | | | |
| Fireplace | | | | | |
| Screen Room | | | | | |
| Windows & Doors | 18000 | | | | |
| Builders Risk Insurance | 3500 | | | | |
| Trusses | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Sub-Total | 305963 | | | | |
| Overhead (10%) | 30596.3 | 0 | | | |
| Profit (10%) | 30596.3 | 0 | | | |
| Total | 367155.6 | 0 | | | |

# KEVIN COOK HOMEBUILDERS
## A P.S.C., INC. COMPANY

# GE Money
# Home Loans
PO BOX 25142
Santa Ana, CA 92799-9905

February 8, 2006

**Address**

RE: Account No.          : ████2124
    Property Address   : 13230 Tom Gaston Rd  Mobile, AL 36695-0000
    File No.           : CRTN
    Date of Loss       : LDT

Dear Corla Jackson

We realize how difficult a loss to your home can be, and we want to process your claim as quickly and efficiently as possible. To assist in the claim- handling process, please submit the following items to our office:

1. The insurance claim check(s) (SIGNED/ENDORSED BY ALL PARTIES LISTED ON THE CHECKS)».
2. The enclosed *Homeowner's Statement* completed and signed by you.
3. A copy of the insurance adjuster's detailed report or your contractor's detailed damage estimate for repairs.
4. A copy of the signed contract between you and your contractor doing the repairs.
5. The enclosed *Contractor Affidavit/Statement* needs to be completed and returned to our office once ALL REPAIRS HAVE BEEN COMPLETED.

Upon receipt of the fully endorsed insurance claim check and above required information, we will release a portion of the claim funds within 4-5 business days after receipt.  If all required items are not received, we are unable to proceed with a  disbursement of the claim funds until the missing items are submitted.

Due to the amount of loss, partial funds will be released at various stages. After the first release of insurance funds, periodic property inspections will be needed to confirm repair progress. Please contact our office seven to ten business days prior to needing additional funds to allow time for the property inspection.

If I may be of additional assistance, please call me at 1-866-354-7281.

Sincerely,

Insurance Claims Center
FAX:  (866)336-3811

GE TPA 13
HAZ6-NWCLMDP
Enclosures
BRE

BIG                          2/8/2006 3:18 PM   PAGE   2/3    RightFax

## HOMEOWNER'S STATEMENT

Homeowner:  Carla Jackson     Property Address:  13230 Tom Gaston Rd  Mobile, AL 36695-0000

Account No: ____2124    File No: CRTN_1    Date of Loss: LDT_2

We, the undersigned mortgagors, hereby state the fire and/or extended damage to our property, located at the above address, has been or will be repaired in a good and workmanlike manner. The loss was as follows: (PLEASE COMPLETE THE FOLLOWING)

Type of Loss: _Hurric and Katr_ Date of Loss: _8/29/05_ Total Amount of Loss/Damages: _$586787.00_

Amount Insurance Company Paid or will Pay: _125% Replacement_   Amount of Insurance Deductible: _5,000_
Policy covers up to
Cost with No Deduction or Depreciation / Nothing
should be
Depreciated
Amount of Recoverable OR Non-Recoverable Depreciation: _N/A_   on this policy

Name of Insurance Company: _FARMERS Insurance Group_  Policy Number: _986495620_

Name of Insurance Adjuster: _James Jenkins_  Phone Number: _(888) 344-4343_

(Please check one box below):

(X) I have done or will be doing the repairs myself  -OR- I will be acting as _my own GENERAL CONTRACTOR_
(X) I have hired or will hire a  GENERAL contractor to do the repairs (only I contractor will be hired) More Than (1)
Depending on whats Required or
* GMAC Mortgage does not guarantee the quality of workmanship of any contractor or guarantee the work will be  Needed.
accomplished within any specific time frame. It is understood the contractor is hired by You and they work for you.
Date of Completion or Estimated Completion Date:
In consideration for, and in reliance on the aforesaid assurances to GMAC Mortgage Corporation by the undersigned mortgagors, GMAC Mortgage Corporation hereby agrees to release in portions of insurance funds to the mortgagors for the sole express purpose of completing repairs to the mortgaged property. Mortgagors promise and expressly warrant all repairs as set forth in the attached adjuster's report/contractor's estimate will be completed in a reasonable time and in a manner satisfactory to GMAC Mortgage Corporation, and all contractor invoices for labor and materials will likewise be timely paid in full. Mortgagors agree and understand they are personally liable for any debts, dues, fees, costs, liens, judgments, etc. ("claims"), which might be filed by any contractor or subcontractor
whose legitimate work is not properly compensated, and they will defend and indemnify GMAC Mortgage Corporation against any and all loss or damages arising out of any such claims.

x _Carla Jackson_     2/08/06        x _____
Homeowner's Signature        'Date        Homeowner's Signature        Date

Home Phone Number: (251)554-1785        Work Phone Number:
Fax Number:

**CONTRACTOR'S AFFIDAVIT-STATEMENT**

▆▆▆2124    File No: CRTN_4

**Borrower: Corla Jackson**

**Property Address: 13230 Tom Gaston Rd  Mobile, AL 36695-0000**

I, *OWNER Builder* as general contractor or sub contractor, was (contractor) employed by the above homeowners for the
repairs to the referenced property. These damages were the result of and occurred on day of *Ivan* I hereby state the
said repair and work of improvement were or will be fully completed on day of _____ . That the undersigned is not the
owner of said land, either legal or equitable, and his only interest therein is that of general contractor or subcontractor in
connection with said work of repair or improvement. That I, upon payment of $ *58,678* will release and forever quitclaim
unto the homeowners, heirs, and assigns, all manner of liens, claims, and demands whatsoever which I now have or
might have on or against said building and premises located at the above premises for work and labor done, or for
supplies, materials, and fixtures for erecting, constructing, and repairing the said building upon said premises.

Date Form Completed: *Never HAS House Been Completed* Signed: _____    Business Phone #: *(251) 554-1785  865-0735*

Fax Phone Number: *(251) 865-0735* Title: *Owner Builder*  Business Federal ID #: _____

Name of Company: *CORLA INTL / Sub-Contract out All work to Licensed Builder*

Address: *13230 TOM GASTON Rd, Mobile, AL. 36695*

*.... Total Loss Claim From Hurricane Ivan, Katrina To Date*

State of *Alabama* _____

County of *Mobile* _____

On *Feb 8th* , 20 *06* , before me the undersigned, a notary public for said County and State,

personally appeared known to me to be the *Corla Jackson* of the Company.

_____
Notary Signature

My Notary Public Expires
on 12-17-08

CREDiTOR'S
Note

Indexed Thru: 4/11/2012

7 Records Found, Click Here For New Search

| Receipt # | Date | Grantor | Grantee | Document Type | Book | Page | UCC# | Legal Description |
|---|---|---|---|---|---|---|---|---|
| 2003100227 PDF TIFF | 11/07/2003 | NEESE CYNTHIA G SMITH PHILIP A | JACKSON CORLA | VENDORS LIEN DEED | 5490 | 1847 | | L 1 COPELAND ISLAND ESTS |
| 2004042905 PDF TIFF | 06/10/2004 | NEESE CYNTHIA G SMITH CYNTHIA G SMITH PHILLIP A | JACKSON CORLA | CANCELLATION OF VENDORS LIEN DEED | 5605 | 1909 | | L 1 COPELAND ISL ESTS |
| 2004042906 PDF TIFF | 06/10/2004 | JACKSON CORLA | OPTION ONE MTG CORP | MORTGAGE | 5605 | 1910 | | L 1 COPELAND ISL ESTS |
| 2007034520 PDF TIFF | 05/08/2007 | TOWN & COUNTRY ROOFING CONTR L | CORLA INTL JACKSON CORLA | LIEN: HOSPITAL, JUDGMENT, MECHANIC, SEWER, TAX | 6179 | 686 | | |
| 2007035071 PDF TIFF | 05/09/2007 | CORLA INTL JACKSON CORLA | NAME OMITTED | LIEN: HOSPITAL, JUDGMENT, MECHANIC, SEWER, TAX | 6180 | 911 | | M/LIEN L 1 COPELAND ISL ESTS |
| 2010008851 PDF TIFF | 02/23/2010 | JACKSON CORLA | FLORIDA GAS TRANSMISSION COMPA | EASEMENT, RIGHT OF WAY DEED | 6628 | 734 | | LOT 1 COPELAND ISLAND ESTATES AS RECORDED IN MAP BOOK 81 PAGE 94 |
| 2010024702 PDF TIFF | 05/10/2010 | JACKSON CORLA | FLORIDA GAS TRANSMISSION COMPA | EASEMENT, RIGHT OF WAY DEED | 6653 | 1980 | | SECTION 23 TOWNSHIP 5 SOUTH RANGE 4 WEST (BOOK 6628 PAGE 734) |

New Search



**OPTION ONE**
M O R T G A G E
an H&R Block company



018416/FL-RE-PI-

CORLA JACKSON
13230 TOM GASTON RD
MOBILE AL 36695-8658

| | |
|---|---|
| Statement Date | 06/11/04 |
| Payment Due Date | 08/01/04 |
| Current Payment | $ 1,920.64 |
| Past Due Payment(s) | $ .00 |
| Unpaid Late Charges | $ .00 |
| Other Charges | $ .00 |
| Total Amount Due | $ 1,920.64 |
| After 08/18/04 Add Late Charge Of | $ 102.17 |
| Total Payment After 08/18/04 | $ 2,022.81 |

### Account Information

| Item Description | Amount |
|---|---|
| **Balances** | |
| Principal Balance | $ 240,000.00 |
| Escrow Balance | $ 871.14 |
| Unpaid Late Charges | $ .00 |
| **Payment Factors** | |
| Int Rate - First Mtg | 7.650% |
| Principal & Interest | $ 1,702.83 |
| Escrow Payment | $ 217.81 |
| Other | $ .00 |
| Total Payment Amount | $ 1,920.64 |
| **Year to Date** | |
| Interest | $ 1,428.00 |
| Taxes | $ .00 |

| | |
|---|---|
| **Loan Number** | 4648 |
| Property Address | 13230 TOM GASTON RD |
| | MOBILE AL 36695 |
| Home Phone | 251-865-4440 |
| Work Phone | 702-524-3135 |

## Activity Since Last Statement

| Date | Description | Principal | Interest | Escrow | Misc. | Late/Other Charges | Total |
|---|---|---|---|---|---|---|---|
| 06/03 | NEW LOAN SET UP | $240,000.00- | | | | | |
| 06/03 | PREDIST PMT | | $1,428.00 | $871.14 | | | $2,299.14 |

Payments received after the statement date may not appear on this statement.



# WELCOME TO OPTION ONE

Option One Mortgage Corporation is pleased to welcome you as a customer. We are happy to have helped facilitate the financing of your home loan. For your convenience, we will send you a billing statement every month which includes a payment stub and an envelope that you can use to mail in your payments.

Please verify the information on the billing statement, particularly your property and mailing addresses. You can use the back of the payment stub to indicate any corrections or changes needed.

To access your account information online, you must first register as a new user. During the registration process, you will be asked to choose a user name and password. You will then use the user name and password you created to log in.

New Loan Verification Line: 888.323.4390
Online account access: www.optiononeonline.com



- - - - - - - - - - - - - - - - - - DETACH AND SEND LOWER PORTION WITH PAYMENT - - - - - - - - - - - - - - - -

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

28.50
360.50
388.50
10.00
398.50
2.0
400.50

2004042906 Book-5605 Page-1910
Total Number of Pages: 11

Heritage Title, LLC          $240,000.00

Loan Number: ████3367
Servicing Number: 001347464-8

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  MAY 26, 2004          . The grantor is
CORLA JACKSON, A  SINGLE WOMAN

("Borrower"). This Security Instrument is given to

Option One Mortgage Corporation, a California Corporation

which is organized and existing under the laws of CALIFORNIA                    , and whose
address is
                      3 Ada, Irvine, CA  92618
("Lender"). Borrower owes Lender the principal sum of
TWO HUNDRED FORTY THOUSAND
                . . . AND NO/100THs        Dollars (U.S. $240,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debts, if not paid earlier, due and payable on  July 01, 2034
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following
described property located in
                                        Mobile                    County, Alabama:
02-35-06-23-0-000-002.010
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

State of Alabama - Mobile County
I certify this instrument was filed on:

Thu, Jun-10-2004 @ 2:13:56PM

| | |
|---|---|
| RECORDING FEE | 28.50 |
| SURCHARGE | 10.00 |
| S. R. FEE | 2.00 |
| MORTGAGE TAX | 360.00 |
| TOTAL AMOUNT | $400.50 |

2004042906
Don Davis, Judge of Probate

which has the address of  13230  TOM GASTON RD, MOBILE

Alabama      36695-8658          ("Property Address");                [Street, City],
          [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever,
together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

**ALABAMA - Single Family**
Page 1 of 7

C. J.

ALD10011.wp (11-30-01)

Loan Number: ███3367          Servicing Number: 001347464-8          Date: 05/26/04

# INSTRUCTIONS TO CLOSING AGENT

BORROWER: CORLA  JACKSON

DOCUMENT DATE:  05/26/04

DISBURSEMENT DATE: 06/01/04

BRANCH: Atlanta House

PROPERTY ADDRESS: 13230  TOM GASTON RD
 MOBILE, AL  36695-8658

COUNTY: Mobile

MONTHLY PAYMENT:

| | |
|---|---|
| P & I: | $1,702.83 |
| TAX: | $73.32 |
| INS.: | $144.49 |
| FLOOD: | $0.00 |
| MISC: | $0.00 |
| TOTAL: | $1,920.64 |

TO:  HERITAGE TITLE
     2521 HILLCREST RD STE C
     MOBILE, AL 36695
     CLOSING AGENT
     Phone: (251) 776-1661
     Fax:    (251) 662-3336
     E-Mail:paigetitle@yahoo.com

TITLE CO:  STEWART TITLE COMPANY
           5760 I-55 NORTH SUITE 200
           JACKSON, MS 39211
           CLOSING AGENT
           Phone: (601) 977-9776
           Fax:    (601) 977-9790

CLOSING AGENT NO./: JACKSON          TITLE ORDER NO.: ███0283

SALES PRICE:          INTEREST RATE: 7.650%     FIRST PAYMENT DATE: August 01, 2004

LOAN AMOUNT: $240,000.00     LOAN TERM: 360     LAST PAYMENT DATE: July 01, 2034

## TITLE INSURANCE REQUIREMENTS

ALTA POLICY** must contain endorsements: 6.1, 8.1 (OR EQUIV)    CLTA 116 (OR EQUIV)

EAGLE TITLE POLICY **All Inclusive/Comprehensive (If Applicable)
  with liability in the amount of $ 240,000.00      on property described herein.

**Date and Time of Title Policy must be exactly as reflected on the Deed of Trust/Mortgage/Security Deed.**

** *Please issue ALTA Short Form Policy when available.  For Second Mortgage Loans, Lender will accept CLTA or
standard ALTA Policy in lieu of an Extended Coverage ALTA Policy.*

LIABILITY SUBJECT ONLY TO: (Gen. & Spec. taxes) Fiscal Year; COUNTY/PARISH: All 2003 Paid

CITY:                                   SCHOOL:

CITY/SCHOOL:                            SPECIAL DISTRICT:

TOWN/TOWNSHIP/BOROUGH/PLANTATION:

VILLAGE:                                SURFACE WATER MANAGEMENT:

Funds may be used for account of the vestees or mortgagors, and you will record all instruments when you comply with the
following:

1. Issue said form of Policy showing name of insured to read
        Option One Mortgage Corporation, a California Corporation, Its
                      Successors and/or Assigns

2. Issue said form of Policy showing title vested as shown below.
   Title must be vested in individuals only.
        CORLA JACKSON, A  SINGLE WOMAN

3. Issue said form of Policy free from encumbrances except items
        NONE

   of Preliminary Title Report or Title Commitment dated  05/03/04

4. Survey exception, if applicable, MUST be removed from the title policy.  If survey is required to remove the survey exception
   and issue the title policy as requested, contact the Lender prior to disbursement of funds.

5. VERIFICATION that vesting on Grant/Warranty Deed matches Deed of Trust/Mortgage/Security Deed.

6. All liens, judgements, delinquent or outstanding personal and/or property taxes must be paid in full and released or a partial
   reconveyance issued releasing our subject property.  INDEMNIFICATIONS are NOT ACCEPTABLE.  - PROOF OF PAYOFF
   IS REQUIRED.

7. This loan MUST record in     ☒ First Lien Position.     ☐ Second Lien Position.

8. Forward original title policy in duplicate directly to lender within 90 days of closing (see page 5)

## ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrower: CORLA JACKSON
Loan #: ███ 1367
Property Address: 13230  TOM GASTON RD,  MOBILE, AL 36595-8658
Loan Amount: $240,000.00

Note Date: 05/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

Without Recourse

Option One Mortgage Corporation
A California Corporation

Jeanette Fparanoud

Assistant Secretary

USA05/50.40/03-14-00)

04/20/2005 _09:10    19497972610         WELLS                    PAGE  60/62

Loan Number: ███3367      Servicing Number: 001347464-8      Date: 05/26/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrower: CORLA  JACKSON
Loan #: ███3367
Property Address: 13230  TOM GASTON RD,   MOBILE, AL 36695-8658
Loan Amount: $240,000.00

Note Date: 05/26/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

                              Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
    Jeanette Parienoud

Assistant Secretary

USD3X50.wb (03-14-03)

Loan Number: ███3367          Servicing Number: 001347464-8          Date: 05/26/04

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates or expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in thee manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If the Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the hold of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any

ALD10012.wp (11-30-01)



Loan Number: ████3367          Servicing Number: 001347464-8          Date: 05/26/04

such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower;s right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument: (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with

ALD10013.wp (11-30-01)



Loan Number: ████ 3367          Servicing Number: 001347464-8          Date: 05/26/04

interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments no longer be required, at the option of Lender, of mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirements for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking or any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not exceed or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph
17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the
Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charge, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

C. J.                              ALD10014.wp (11-30-01)

Loan Number: ■■■■3367          Servicing Number: 001347464-8          Date: 05/26/04

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent. Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** if Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days for such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration has occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more change of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or, private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**ADDITIONAL COVENANTS.** Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.



Loan Number: ▮▮▮▮3367          Servicing Number: 001347464-8          Date: 05/26/04

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in

                    Mobile                              County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

24. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender, including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

32. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

C. P.                              ALD10016.wp (11-30-01)

Loan Number: ███3367          Servicing Number: 001347464-8          Date: 05/26/04

[Check applicable boxes]

[X] Adjustable Rate Rider          [ ] Condominium Rider          [ ] 1-4 Family Rider
[ ] No Prepayment Penalty Option Rider   [ ] Planned Unit Development Rider   [ ] Occupancy Rider
[ ] Other(s) (specify)                                                        [ ]

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____          _____(Seal)
                                                                    -Borrower

_____          _____(Seal)
                                                                    -Borrower

_Carla Jackson_ 5/26/04 (Seal)           _____(Seal)
CORLA    JACKSON    -Borrower                                        -Borrower

_____(Seal)    _____(Seal)
                       -Borrower                                    -Borrower


STATE OF ALABAMA,                         Mobile County ss:

   On this    26th    day of    May              . 2004    , I,

, a Notary Public in and for said county and in said state,

hereby certify that    Corla Jackson

whose name(s)    is    signed to the
foregoing conveyance, and who    is    known to me, acknowledged before me that, being informed
of the contents of the conveyance,    s he    executed the same voluntarily and as
    She    act on the day the same bears date.
    Given under my hand and seal of office this    26th    day of May              . 2004  .

My Commission Expires: 5/8/2005          _____Esther Patterson_____
                                          Notary Public

This instrument was prepared by

MAY-26-2004  12:30       OPTION ONE HOUSE                   678 419 0852      P.08

Loan Number: ███3367    Servicing Number: 001347464-8    Date: 05/26/04

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made May 26, 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

       Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

       13230  TOM GASTON RD,  MOBILE, AL 36695-8658

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

The Note provides for an initial interest rate of    7.650%    . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of    July 01    2006    .
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
    FIVE AND 70/100                    percentage point(s) ( 5.700%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3                                                    USRI0021 (02-23-99)

MAY-25-2004   12:58          OPTION ONE HOUSE                              678 419 0852      P.09

Loan Number: ████3367      Servicing Number: 001347464-8      Date: 05/26/04

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than
    10.650%  or less than   7.650%                . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than     13.650%         or less than   7.650%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

FILED MAY 15 '12 PM 3:45 USDCALS

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family
Page 2 of 3                                                                 USRI0022 (02-23-99)

MAY-26-2004  12:56      OPTION ONE HOUSE                                    678 419 0652      P.10

Loan Number: ████3367     Servicing Number: 001347464-8     Date: 05/26/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ 5/26/04 _____ (Seal)
CORLA  JACKSON                    (Seal)

_____ (Seal) _____ (Seal)

_____ (Seal) _____ (Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
**Page 3 of 3**                                            USRID023 (02-23-99)

TOTAL P.10

---

CERTIFIED TRUE COPY
Probate Court of Mobile Co., AL
Don Davis, Judge

Signature _____

Joe McEarchern Jr., Chief Clerk

Date _15 March 2012_
(Not valid unless in red ink with raised seal of court)

**Stewart Title Guaranty Company**
**COMMITMENT**

Order No.: 999010283                                    Commitment No.: 999010283

# EXHIBIT "A"

## *Lot 1, Copeland Island Estates as recorded in Map Book 81, Page 94 in the Office of the Judge of Probate, Mobile County, Alabama.*

Which has the property address of:
13230 Tom Gaston Rd. Mobile, Al. 3669545



# OPTION ONE
## M O R T G A G E
*an H&R BLOCK company*

018416/FL-RE-PI-

CORLA JACKSON
13230 TOM GASTON RD
MOBILE   AL   36695-8658

| | |
|---|---|
| Payment Due Date | 08/01/04 |
| Current Payment | $ 1,920.64 |
| Past Due Payment(s) | $ .00 |
| Unpaid Late Charges | $ .00 |
| Other Charges | $ .00 |
| Total Amount Due | $ 1,920.64 |
| After 08/16/04 Add Late Charge Of | $ 102.17 |
| Total Payment After 08/16/04 | $ 2,022.81 |

## Account Information

| Item Description | Amount |
|---|---|
| **Balances** | |
| Principal Balance | $ 240,000.00 |
| Escrow Balance | $ 871.14 |
| Unpaid Late Charges | $ .00 |
| **Payment Factors** | |
| Int Rate - First Mtg | 7.650% |
| Principal & Interest | $ 1,702.83 |
| Escrow Payment | $ 217.81 |
| Other | $ .00 |
| Total Payment Amount | $ 1,920.64 |
| **Year to Date** | |
| Interest | $ 1,428.00 |
| Taxes | $ .00 |

| | |
|---|---|
| **Loan Number** | ████4648 |
| Property Address | 13230 TOM GASTON RD |
| | MOBILE   AL   36695 |
| Home Phone | 251-865-4440 |
| Work Phone | 702-524-3135 |

# Activity Since Last Statement

| Date | Description | Principal | Interest | Escrow | Misc. | Late/Other Charges | Total |
|---|---|---|---|---|---|---|---|
| 06/03 | NEW LOAN SET UP | $240,000.00- | | | | | |
| 06/03 | PREDIST PMT | | $1,428.00 | $871.14 | | | $2,299.14 |

Payments received after the statement date may not appear on this statement.



# WELCOME TO OPTION ONE

Option One Mortgage Corporation is pleased to welcome you as a customer. We are happy to have helped facilitate the financing of your home loan. For your convenience, we will send you a billing statement every month which includes a payment stub and an envelope that you can use to mail in your payments.

Please verify the information on the billing statement, particularly your property and mailing addresses. You can use the back of the payment stub to indicate any corrections or changes needed.

To access your account information online, you must first register as a new user. During the registration process, you will be asked to choose a user name and password. You will then use the user name and password you created to log in.

New Loan Verification Line: 888.323.4390
Online account access: www.optiononeonline.com



DETACH AND SEND LOWER PORTION WITH PAYMENT

WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

Loan Number: ▆▆▆▆▆33▆7
Servicing Number: 001343464-8

[Space Above This Line For Recording Data]

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **May 26, 2004**          . T
**CORLA JACKSON, A SINGLE WOMAN**

("Borrower"). This Security Instrument is given to

**Option One Mortgage Corporation, a California Corporation**

which is organized and existing under the laws of **CALIFORNIA**
address is

**3 Ada, Irvine, CA  92618**

("Lender"). Borrower owes Lender the principal sum of
**TWO HUNDRED FORTY THOUSAND**

. . . **AND NO/100THs**          Dollars (U.S.   **$240,000.0**
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), w
for monthly payments, with the full debt, if not paid earlier, due and payable on **July 01, 20**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, wit
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with inte
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrow
mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale,
described property located in

**Mobile**.          Cou

**02-35-06-23-0-000-002:010**
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.**

which has the address of  **13230   TOM GASTON RD, MOBILE**

**Alabama**          **36695-8658**          ("Property Address");
          **[Zip Code]**

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and a
together with all the improvements now or hereafter erected on the property, and all easements, app
fixtures now or hereafter a part of the property. All replacements and additions shall also be a
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Propert

**ALABAMA - Single Family**

| A. U.S. Department of Housing and Urban Development | B. Type of Loan | | |
|---|---|---|---|
| | 1. [ ] FHA    2. [ ] FmHA | 3. [ ] Conv. Unins. | |
| | 4. [ ] VA    5. [ ] Conv. Ins. | [X] Other. | |
| | 6. File Number    401582 | 7. Loan Number    03367 | |
| | 8. Mortgage Ins. Case No. | | |

## Settlement Statement

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| | |
|---|---|
| D. Name of Borrower: | Carla Jackson |
| E. Name of Seller: | |
| F. Name of Lender: | Option One Mortgage Corporation, 1600 Parkwood Circle SE, Atlanta, GA 30339-2147 |
| G. Property Location: | 13230 Tom Gaston Rd, Mobile, AL 36695-8658 |
| H. Settlement Agent: | Heritage Title, LLC (228) 868-7152    TIN:    63-1283722 |
| Place of Settlement: | |
| I. Settlement Date: | 5/26/2004    Proration Date:    6/1/2004 |

| 100. | Gross amount due from borrower: | | 400. | Gross amount due to seller: | |
|---|---|---|---|---|---|
| 101. | Contract sales price | | 401. | Contract sales price | |
| 102. | Personal property | | 402. | Personal property | |
| 103. | Settlement charges to borrower (line 1400) | 234,766.18 | 403. | | |
| 104. | Payoff of Vendors Lien | 5,000.00 | 404. | | |
| 105. | Payoff Vendors Lien | 5,000.00 | 405. | | |
| 106. | City/town taxes | | 406. | City/town taxes | |
| 107. | County taxes | | 407. | County taxes | |
| 108. | Assessments | | 408. | Assessments | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 120. | Gross amount due from borrower: | 244,766.18 | 420. | Gross amount due to seller: | 0.00 |
| 201. | Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| 202. | Principal amount of new loan(s) | 240,000.00 | 502. | Settlement charges to seller (line 1400) | 0.00 |
| 203. | Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| 204. | | | 504. | Payoff of first mortgage loan | |
| 205. | | | 505. | Payoff of second mortgage loan | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | Lender Credit to Borrower | 4,800.00 | 508. | | |
| 209. | | | 509. | | |
| 210. | City/town taxes | | 510. | City/town taxes | |
| 211. | County taxes | | 511. | County taxes | |
| 212. | Assessments | | 512. | Assessments | |
| 213. | | | 513. | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. | Total paid by/for borrower: | 244,800.00 | 520. | Total reduction in amount due seller: | 0.00 |
| 301. | Gross amount due from borrower (line 120) | 244,766.18 | 601. | Gross amount due to seller (line 420) | 0.00 |
| 302. | Less amount paid by/for borrower (line 220) | 244,800.00 | 602. | Less total reduction in amount due seller (line 520) | 0.00 |
| 303. | CASH (X)FROM ( )TO BORROWER | 33.82 | 603. | CASH ( )FROM ( )TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - If this real estate was your principle residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number.

If you do not provide Heritage Title, LLC (228) 868-7152 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

| | | | | | | Borrower's Funds at Settlement | Seller's Funds at Settlement |
|---|---|---|---|---|---|---|---|
| 700. | Total sales/broker's commission | | | | | | |
| | Division of commission (line 700) as follows: | | | | | | |
| 701. | $ | | | | | | |
| 702. | $ | | | | | | |
| 703. | Commission paid at settlement | | | | | | |
| 704. | | | | | | | |
| **800.** | **Items payable in connection with loan** | | | | | | |
| 801. | Loan origination fee | | | | | | |
| 802. | Loan discount | | | | | | |
| 803. | Appraisal fee | to | Colorado Federal Savings Bank | | POCB 300.00 | | |
| 804. | Credit report | | | | | | |
| 805. | Lender's inspection fee | | | | | | |
| 806. | Mortgage insurance application fee | | | | | | |
| 807. | Assumption fee | | | | | | |
| 808. | Processing Fee | to | Colorado Federal Savings Bank | | | 375.00 | |
| 809. | Application fee | | | | | | |
| 810. | Administration Fee | | | | | | |
| 811. | Tax Service Fee | to | Fidelity National Tax Service | | | 70.00 | |
| 812. | Flood Certification Fee | to | First American Flood Data Services | | | 12.00 | |
| 813. | Broker Fee | to | Colorado Federal Savings Bank | | | 3,120.00 | |
| 814. | Funding Fee | to | Option One Mortgage Corporation | | | 50.00 | |
| 815. | Underwriting Fee | to | Option One Mortgage Corporation | | | 595.00 | |
| **900.** | **Items required by lender to be paid in advance** | | | | | | |
| 901. | Interest from | 6/1/2004 | to | 7/1/2004 | at $51.0000/day for 30 days. | 1,530.00 | |
| 902. | Mortgage insurance premium for | | | | | | |
| 903. | Hazard Insurance premium for | 1 yrs. | | to | Farmers Insurance | POCB 1733.82 | |
| 904. | | | | | | | |
| 905. | | | | | | | |
| **1000.** | **Reserves deposited with lender** | | | | | | |
| 1001. | Hazard Insurance | | 4 mo.@ $144.4900 per mo. | | | 577.96 | |
| 1002. | Mortgage insurance | | | | | | |
| 1003. | City property taxes | | | | | | |
| 1004. | County property taxes | | 11 mo.@ $73.3200 per mo. | | | 806.52 | |
| 1005. | Annual assessments (maint.) | | | | | | |
| 1006. | | | | | | | |
| 1007. | | | | | | | |
| 1008. | | | | | | | |
| 1009. | Aggregate Accounting Adjustment | to | Corla Jackson | | | (513.34) | |
| **1100.** | **Title charges** | | | | | | |
| 1101. | Settlement or closing fee | to | Heritage Title, LLC | | | 350.00 | |
| 1102. | Abstract or title search | to | Heritage Title, LLC | | | 100.00 | |
| 1103. | Title examination | | | | | | |
| 1104. | Title insurance binder | | | | | | |
| 1105. | Document preparation | | | | | | |
| 1106. | Notary fees | | | | | | |
| 1107. | Attorney's fees to | | | | | | |
| | includes above items no.: | | | | | | |
| 1108. | Title Insurance | to | Heritage Title, LLC | | | 705.00 | |
| | includes above items no.: | | | | | | |
| 1109. | Lender's coverage | $240,000.00 | | $175.00 | | | |
| 1110. | Owner's coverage | $240,000.00 | | $530.00 | | | |
| 1111. | | | | | | | |
| 1112. | Endorsement Fee | | | | | | |
| 1113. | Courier Fee | to | Heritage Title, LLC | | | 30.00 | |
| **1200.** | **Government recording and transfer charges** | | | | | | |
| 1201. | Recording fees: | | Mortgage $434.00 | | | 434.00 | |
| 1202. | City/county tax/stamps: | | | | | | |
| 1203. | State tax/stamps: | | | | | | |
| 1204. | | | | | | | |
| 1205. | | | | | | | |
| 1206. | | | | | | | |
| **1300.** | **Additional settlement charges** | | | | | | |
| 1301. | Survey | | | | | | |
| 1302. | Pest inspection | | | | | | |
| 1303. | Pay off Mortage | to | Southtrust Bank | | | 44,834.89 | |
| 1304. | Payoff Mortgage | to | Hibernia Bank | | | 181,398.15 | |
| 1305. | Pay on Account | to | NCO Financial | | | 291.00 | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | | | | 234,766.18 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Corla Jackson    5/26/04

Corla Jackson

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Exhibit M

Paid In Full



Superintendent of Public Works
**Theodore H. Lawson**

Assistant Superintendent of Public Works
**Richard H. Crist, P.L.S.**

Equipment Services Manager
**Robert J. Gordon**

Superintendent of Building Maintenance
**George E. Oaks**

Director of Inspection Services
**Ted Montgomery**

Director, Public Safety Communications
**Eric M. Linsley**

# MOBILE COUNTY PUBLIC WORKS

Director of Public Works / County Engineer
**Joe W. Ruffer, P.E.**

February 27, 2007

**SUBJECT: 13230 Tom Gaston Rd.**

**To Whom It May Concern:**

An inspection cannot be completed on the above mentioned location until all structural damage has been repaired.

*Thomas W. Neal*
**Thomas W. Neal**
**Chief Building Inspector**
**Mobile County Inspection**
**1110 Schillinger Rd. N.**
**Suite 100**
**Mobile, AL 36608**
**251-574-3507, fax 251-574-3509**

c:  File
    Ted Montgomery

# NexTier Bank

1301 Grandview Avenue, Suite 120
Pittsburgh, PA 15211
Phone: 877-533-2784 Fax: 412-390-3535

To whom it may concern,

Based on the credit information supplied to me, Corla Jackson would qualify for a mortgage if all negative information regarding her mortgage were taking off the three credit bureaus. **(Trans Union, Equifax and Experian)** Then her credit scores would need to go back up in the 700 Range.

Once her credit scores are increased and the negative reporting of her current mortgage company is removed she would be able to apply for a new mortgage.

This property is uninhabitable to live in, it cannot be borrowed against, or used as a secured instrument to be sold as a primary residents for anyone to live in until it is brought up to zoning coded, and all the structural damages are completed, for its intended use.

Based on our knowledge of all (Structural Damages) it must also comply, with high wind zoning laws first, which exceeds the limit of the mortgage of **($240,000)**, and the limit of insurance of **($312,000)**. We cannot put a mortgage against a property that cannot be lived in safely, or as permanent primary residents, to occupy per our appraisers guidelines.

This letter basically says (Ms. Jackson) would qualify for a mortgage, if she did not carry the liability on an insured uninhabitable home, which cannot legal be occupied, until it can be signed off on by (Mobile County Chief Building Inspector.

When we closed on Ms. Jackson's current property the lender required the homeowner to obtain homeowners insurance that would cover any damages whether from fire, flooding, hurricane or any other storm related damages to this property. This insurance covers, the entire replacement cost.

If you have any questions or concerns regarding this matter, please do not hesitate to call or e-mail me.

Sincerely,

*(signature)*

**Steve Arthur**
**412-390-3530 Ext. 108**
**412-298-2748 Cell Phone   *(Evenings and Weekends)***
arthur.fedmc.com
••••••••••••••••••••••••••••••••••••••••••••••••••••••••
Federated Mortgage Corp. or any subsidiaries of Federated Mortgage Corp. shall not be liable for the contents contained in this electronic data. The views contained in this electronic document are the views of the individual sending this document.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••

5/25/04 3:41 PM

OMB No. 2502-0265

| A. U.S. Department of Housing and Urban Development | B. Type of Loan | | |
|---|---|---|---|
| | 1. [ ] FHA | 2. [ ] FMHA | 3. [ ] Conv. Unins. |
| | 4. [ ] VA | 5. [ ] Conv. Ins. | [X] Other. |
| | 6. File Number | | 7. Loan Number |
| | 401582 | | 3367 |
| **Settlement Statement** | 8. Mortgage Ins. Case No. | | |

C: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| | |
|---|---|
| Name of Borrower: | Corla Jackson |
| Name of Seller: | |
| Name of Lender: | Option One Mortgage Corporation, 1600 Parkwood Circle SE, Atlanta, GA 30339-2147 |
| Property Location: | 13230 Tom Gaston Rd, Mobile, AL 36695-8958 |
| Settlement Agent: | Heritage Title, LLC (228) 865-7152        TIN: 63-1283722 |
| Place of Settlement: | |
| Settlement Date: | 5/28/2004        Proration Date: 6/1/2004 |

| Gross amount due from borrower: | | 400. | Gross amount due to seller: | |
|---|---|---|---|---|
| Contract sales price | | 401. | Contract sales price | |
| Personal property | | 402. | Personal property | |
| Settlement charges to borrower (line 1400) | 234,766.18 | 403. | | |
| Pay off of Vendors Lien | 5,000.00 | 404. | | |
| Pay off Vendors Lien | 5,000.00 | 405. | | |
| City/town taxes | | 406. | City/town taxes | |
| County taxes | | 407. | County taxes | |
| Assessments | | 408. | Assessments | |
| | | 409. | | |
| | | 410. | | |
| | | 411. | | |
| | | 412. | | |
| **Gross amount due from borrower:** | **244,766.18** | **420.** | **Gross amount due to seller:** | **0.00** |
| Deposit or earnest money | | 501. | Excess deposit (see instructions) | |
| Principal amount of new loan(s) | 240,000.00 | 502. | Settlement charges to seller (line 1400) | 0.00 |
| Existing loan(s) taken subject to | | 503. | Existing loan(s) taken subject to | |
| | | 504. | Payoff of first mortgage loan | |
| | | 505. | Payoff of second mortgage loan | |
| | | 506. | | |
| | | 507. | | |
| Lender Credit to Borrower | 4,800.00 | 508. | | |
| | | 509. | | |
| City/town taxes | | 510. | City/town taxes | |
| County taxes | | 511. | County taxes | |
| Assessments | | 512. | Assessments | |
| | | 513. | | |
| | | 514. | | |
| | | 515. | | |
| | | 516. | | |
| | | 517. | | |
| | | 518. | | |
| | | 519. | | |
| **Total paid by/for borrower:** | **244,800.00** | **520.** | **Total reduction in amount due seller:** | **0.00** |
| Gross amount due from borrower (line 120) | 244,766.18 | 601. | Gross amount due to seller (line 420) | 0.00 |
| Less amount paid by/for borrower (line 220) | 244,800.00 | 602. | Less total reduction in amount due seller (line 520) | 0.00 |
| **CASH ( )FROM (X)TO BORROWER** | **33.82** | **603.** | **CASH ( )FROM ( )TO SELLER** | **0.00** |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

| 700. | Total sales/broker commission | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| | Division of commission (line 700) as follows: | | | |
| 701. | $ | | | |
| 702. | $ | | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| 800. | **Items Payable in Connection with Loan** | | | |
| 801. | Loan origination fee | | | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee | to   Colorado Federal Savings Bank        POCB 300.00 | | |
| 804. | Credit report | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee | | | |
| 807. | Assumption fee | | | |
| 808. | Processing fee | to   Colorado Federal Savings Bank | 375.00 | |
| 809. | Application Fee | | | |
| 810. | Administration Fee | | | |
| 811. | Tax Service Fee | to   Fidelity National Tax Service | 70.00 | |
| 812. | Flood Certification Fee | to   First American Flood Data Services | 12.00 | |
| 813. | Broker Fee | to   Colorado Federal Savings Bank | 3,120.00 | |
| 814. | Funding Fee | to   Option One Mortgage Corporation | 50.00 | |
| 815. | Underwriting Fee | to   Option One Mortgage Corporation | 595.00 | |
| 900. | **Items Required by Lender to be Paid in Advance** | | | |
| 901. | Interest from   6/1/2004 to 7/1/2004     at $51.0000/day for 30 days. | | 1,530.00 | |
| 902. | Mortgage insurance premium for | | | |
| 903. | Hazard insurance premium for        1 yrs.          to Farmers Insurance     POCB 1733.82 | | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | **Reserves Deposited with Lender** | | | |
| 1001. | Hazard insurance | 4 mo.@ $144.4900 per mo. | 577.96 | |
| 1002. | Mortgage insurance | | | |
| 1003. | City property taxes | | | |
| 1004. | County property taxes | 11 mo.@ $73.3200 per mo. | 806.52 | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. | | | | |
| 1009. | Aggregate Accounting Adjustment  to  Corla Jackson | | (513.34) | |
| 1100. | **Title Charges** | | | |
| 1101. | Settlement or closing fee | to   Heritage Title, LLC | 350.00 | |
| 1102. | Abstract or title search | to   Heritage Title, LLC | 100.00 | |
| 1103. | Title examination | | | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation | | | |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to | | | |
| | includes above items no.: | | | |
| 1108. | Title insurance | to   Heritage Title, LLC | 705.00 | |
| | includes above items no.: | | | |
| 1109. | Lender's coverage | $240,000.00        $175.00 | | |
| 1110. | Owner's coverage | $240,000.00        $530.00 | | |
| 1111. | | | | |
| 1112. | Endorsement Fee | | | |
| 1113. | Courier Fee | to   Heritage Title, LLC | 30.00 | |
| 1200. | **Government Recording and Transfer Charges** | | | |
| 1201. | Recording fees: | Mortgage $434.00 | 434.00 | |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps: | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1206. | | | | |
| 1300. | **Additional Settlement Charges** | | | |
| 1301. | Survey | | | |
| 1302. | Pest inspection | | | |
| 1303. | Pay off Mortgage | to   Southtrust Bank | 44,834.89 | |
| 1304. | Payoff Mortgage | to   Hibernia Bank | 181,398.15 | |
| 1305. | Pay on Account | to   NCO Financial | 291.00 | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | 234,766.18 | |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Corla Jackson     5/26/04

Corla Jackson

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

CJ000205







# FARMERS
### 75 YEARS SERVING AMERICA

## PROTECTOR PLUS POLICY

**Name:** Corla Jackson

**Policy Number:** 926495620

*Additional Coverage*

| | | | |
|---|---|---|---|
| Dwelling Coverage: | $250,000 | Extended Replacement: | $312,500 |
| Contents Coverage: | $187,500 | | |

*Debris was Included on this policy + Hazard Pollutants & Diseases*

| | |
|---|---|
| Cash, coins, etc. | $100 |
| Property Away | $18,750 |
| Securities | $500 |
| Watercraft (Motor & Trailer) | $1,000 |
| THEFT of Jewelry | $1,000/item   $2,500 total limit |
| THEFT of Silverware | $2,500 |
| THEFT of Firearms | $1,000 |
| THEFT of Imported Rugs | $2,500 |
| Business Property | $200 |
| Sportcards | $250 |
| Computers | $5,000 |

**Deductible:** $1000   2%H

| | | | | |
|---|---|---|---|---|
| Separate Structures: | $25,000 | Tree Debris Removal | $15 | Y (N) |
| Liability: | $300,000 | Identity Fraud Expense | $25 | (Y) N |
| Medical Payments: | $1,000 | Home Warranty | $456 | (Y) N |
| Loss of Use | $125,000 | Umbrella | $154 | (Y) N |

*Flood / Rising Water Insurance:*

Premium:   $295      ( Accept / Reject Initial CJ )

**Discounts:**
- Non-Smoker
- Age 50+
- New Home / Renovation
- Auto / Home
- Auto / Home / Life

X-Dates/Follow Up Dates: _____

*Other Products and Services:*
Roth IRA / 401K / Tax Deferred Savings
Mutual Funds / Life Insurance of all types
Follow Up Dates: _____

*Boats / Recreation Vehicles / Motorcycles / ATV's*
Follow Up Dates: _____

**Claims Procedures:** Covered

**Client Signature:** *Corla Jackson*          **Date:** 5/11/04



# AMERICAN HOME MORTGA



| | |
|---|---|
| **Company/Account Name:** | AMERICAN HOME MORTGA |
| **Company Address/Phone:** | PO Box 631730<br>Irving, TX 750630002<br>(877) 304-3100 |
| **Account Number:** | 647001347XXXX |
| **Date Opened:** | 06/2004 |
| **Last Activity:** | 12/2004 |
| **First Delinquency:** | N/A |
| **Type:** | Mortgage |
| **Rate/Status:** | PAYS AS AGREED |
| **High Credit:** | $240,000 |
| **Terms:** | N/A |
| **Balance:** | $0 |
| **Past Due:** | n/a |
| **Most Recent Date Reported:** | 01/2005 |
| **Comments on Account:** | |

3/20/2012 6:56 PM

# Experian
A world of insight

Prepared for: **CORLA REEVES JACKSON**
Date: **April 17, 2012**
Report number: **1259-9264-63**

Page 3 of 4

*Personal statements you've asked us to include* You've given us the following statement to include every time a company asks us for your credit report:

"FILE FROZEN DUE TO STATE LEGISLATION."

## Your accounts in good standing

These items may stay on your credit report for as long as they are open. Once an account is closed or paid off it may continue to appear on your report for up to ten years.

### Payment history legend

| | | | |
|---|---|---|---|
| **OK** | Current/Terms of agreement met | **VS** | Voluntarily surrendered |
| **30** | Account 30 days past due | **R** | Repossession |
| **60** | Account 60 days past due | **PBC** | Paid by creditor |
| **90** | Account 90 days past due | **IC** | Insurance claim |
| **120** | Account 120 days past due | **G** | Claim filed with government |
| **150** | Account 150 days past due | **D** | Defaulted on contract |
| **180** | Account 180 days past due | **C** | Collection |
| **CRD** | Creditor received deed | **CO** | Charge off |
| **FS** | Foreclosure proceedings started | **CLS** | Closed |
| **F** | Foreclosed | **ND** | No data for this time period |

## Credit items

**OPTION ONE MORTGAGE**
11104 MENAUL BLVD NE
ALBUQUERQUE NM 87112
**No phone number available**
**Partial account number**
647001347....
**Address identification number**
06666707

**Payment history**
2005 2004
JAN DEC NOV OCT SEP AUG
CLS OK ND ND OK

**Date opened**
Jun 2004
**First reported**
Aug 2004
**Date of status**
Jan 2005

**Type**
Mortgage
**Terms**
30 Years
**Monthly payment**
Not reported

**Credit limit or original amount**
$240,000
**High balance**
Not reported

**Recent balance**
Not reported

**Responsibility**
Individual
**Status**
Paid,Closed/Never late.
This account is scheduled to continue on record until Jan 2015.
This item was updated from our processing of your dispute in Apr 2012.



4025

B18W (Form 18W) (08/07)

# United States Bankruptcy Court

## Southern District of Alabama
### Case No. 05–13142
### Chapter 13

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
    Corla Reeves Jackson
    13230 Tom Gaston Road
    Mobile, AL 36695

Social Security / Individual Taxpayer ID No.:
    xxx–xx–9711

Employer Tax ID / Other nos.:

# DISCHARGE OF DEBTOR AFTER COMPLETION
# OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 1/20/10

MARGARET A. MAHONEY
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

# Taking our Country Back - Tim Turner wins Alabama Case

This is HUGE news! The $50Billion maritime lien filed against the Houston District Court Corporation has been sustained and is now in collection phase. These 3 judges are now broke, wiped out professionally, and now all their assets have been seized and will be sold to help satisfy this lien. Additionally the Sheriff also a named party to the action and the District Attorney will be shortly following these 3 out the door, also personally and professionally bankrupted and contributing their assets to settling the lien. The case that was their nadir is: Commercial Bank of Enterprise Alabama v Josie Park Broadcasting Inc. The bulk of the seized assets to satisfy the $50B lien will come from the casino money which has been proven to illegally conspired to steal the WJRM Ch *67 broadcasting company. Additionally, this huge victory in de facto court firmly establishes the de facto courtroom bona fides of one litigator, Tim Turner (NON-ESQUIRE.) Turner is not only one of the winning litigators, but also a part-owner of Josie Park Broadcasting, Inc. Last but not least, litigator Turner is also Commander of the legitimate, re-inhabited De jure 100 member Alabama Militia, and one of the two de jure appointed Alabama senators under the re-established De jure Alabama republic. Last but not least, Turner is one of the 4 Guardian Elders of the Restore America Plan, which received some MSM press coverage (March 27, 2010 Wolf Blitzer on CNN, Christian Science Monitor, USA Today, etc.) The portion of the article above which states the state is trying to save money is simply spin. A bankrupt de facto court is out of business, period. Their corporated bond has been arrested. The STATE OF ALABAMA judiciary is reeling. Details are just beginning to emerge

To better understand the issue watch the Tim Turner video http://www.ronpaulforums.com/showthread.php?t=231468

# Judge Steensland announces retirement; little notice given

Judge Steensland announces retirement; little notice

District Judge John Steensland
Longtime Houston County District Judge John Steensland retired abruptly on Friday, leaving Houston County with three judge vacancies. Steensland declined comment to the Dothan Eagle, but presiding Circuit Judge Brad Mendheim confirmed Steensland informed him of his retirement.
"He told me he was retiring (Friday) and that he does have a court schedule next week we will be able to cover," Mendheim said. "We are working very hard to try to get everything covered."
Steensland is the third judge to leave the bench recently. Circuit judges Lawson Little and Ed Jackson have retired. The governor can appoint a successor to fill Steensland's term. However, Alabama Supreme Court Justice Sue Bell Cobb recently asked Gov. Bob Riley to hold off on filling Houston County's vacancies to save money.
Steensland assumed the office of Houston County District Judge in 1989. He holds a civil engineering degree from the University of Alabama and a law degree from Jones School of Law in Montgomery.

Watch brand new videos on the cause of cancer and natural cancer cures www.drleonardcoldwell.com

Drink it.   Feel it.   Share it.

Company Overview    http://drhohn.mymonavie.com/

It takes a high level of confidence in your product to use the slogan above, but it is true. Because so many people report



# Certificate of Occupancy

## Mobile County Inspection Department

This certificate issued pursuant to the requirements of the Standard Building Code certifying that at the time of issuance this structure was in compliance with the various ordinances of the Jurisdiction regulating building construction or use. For the following:

Date __March 10, 2000__

Number __5063__

Address __13230 Tom Gaston Rd.__

Bldg. Permit # __108830__    Elec. Permit # __110654__

Mech Permit # __110307__    Type of Construction __VI__

Occupancy Group __R-3, S/Family Residence__

_James E. Coleman Building Inspector I_
Building Official



# HAZARD INSURANCE REQUIREMENTS & AUTHORIZATION

Your Security Deed/Deed of Trust/Mortgage requires that you maintain a collectable fire insurance policy that meets with our standards. To assist you in understanding our minimum fire insurance requirements, the following information is provided.

1. **POLICY** - The original policy is required: Certified or Duplicate Copies are not acceptable, except as noted. For condominiums or customers covered under a master or blanket policy, a certified copy of the entire policy is acceptable, providing the certification has an original signature of an authorized agent. Each loan in a condominium must have an original certificate of insurance on that unit. On second mortgage loans, an original endorsement to show as second lienholder is required and a copy of the existing policy.

2. **COMPANY RATING** - All companies must be licensed to do business in the state in which the property is located and have a rating of B+ /Class III or better as listed by A. M. Best or have a rating of A or better as listed by Demotech.

3. **REINSURANCE** - Reinsurance endorsements must state that any change of carrier during the life of the policy is subject to written notification and approval of lender.

4. **NAME AND ADDRESS** - Name(s) of insured or additional insured shall be the same as on the loan records. Property address or legal description must be complete.

5. **AMOUNT OF COVERAGE** - Coverage should be equal to the loan amount, (First Mortgage Loans), combined loan amount (Second Mortgage Loans) or full replacement value of the improvements as stated on the Real Estate Appraisal, whichever is less.

6. **TYPE OF COVERAGE** - One to four residential units must have fire, extended coverage, and Special Form. The policy cannot limit or exclude from coverage (in whole or in part) windstorm, hurricane, hail damages, or any other perils that are normally included under an extended coverage endorsement. If these limitations are included, a separate policy or endorsement from another insurer that provides adequate coverage must be obtained to cover the limitations or exclusions.

7. **LENDERS LOSS PAYABLE ENDORSEMENT (438BFU) MUST BE INCLUDED IN FAVOR OF:**

        Option One Mortgage Corporation, Its Successors and/or Assigns
            P. O. BOX 949, ORANGE, CALIFORNIA  92856

8. **DEDUCTIBLE** - Maximum deductible clause should be the lesser of $1,000 or 1% of the policy face amount. When a policy provides for a separate wind loss deductible, that deductible may be the higher of $2,000 or 2% of the face amount of the policy.

9. **TERM OF POLICY:**
   - **MUST BE A MINIMUM OF ONE YEAR ON PURCHASES.**
   - **ALL ONE YEAR POLICIES MUST BE PREPAID EVEN IF A BINDER IS SUBMITTED.**
   - **ALL REFINANCE LOANS REQUIRE 60 DAYS REMAINING FROM DATE OF DISBURSEMENT OR A NEW ONE YEAR POLICY IS REQUIRED.**

10. **EFFECTIVE DATE** of policy must be the same as or prior to the date of disbursement of funds for a new loan, or the expiration date of the existing policy for an existing loan.

11. **SUBSTITUTION FEE** of $5.00 is required if a new or renewal policy is submitted less than 30 days prior to the expiration date of the existing policy, if our Corporation holds the policy.

12. **SIGNED AGENT AUTHORIZATION** is required on policies for all new loans. A policy submitted on an existing loan only needs an authorization if there is a change of agents.

13. **FLOOD INSURANCE** - If the subject property is located in an area identified by the Federal Emergency Management Agency (FEMA) as a Special Flood Hazard Area (SFHA), an original flood insurance policy must be provided and maintained in force in the form and amount as required by the regulation. Coverage should be equal to the loan amount (First Mortgage Loans), combined loan amount (Second Mortgage Loans), full replacement value of the improvements as stated on the Real Estate Appraisal or a maximum of $250,000 ($35,000 maximum in an emergency status community), whichever is less. Allowable deductible is $1,000.00. A receipted invoice will be required for the initial premium of that policy.

14. **FAILURE TO PROVIDE COVERAGE** - If a policy does not meet all of our written requirements or if a notice of cancellation is received, it will be necessary for lender to immediately secure coverage to protect our interest, at the borrower's expense.
**LENDER WILL NOT RELEASE FUNDS ON ANY LOAN UNTIL WE ARE IN RECEIPT OF A POLICY/BINDER WHICH MEETS OUR REQUIREMENTS.**

15. **POSSESSION OF POLICY:** Original insurance policy to be held by lender. We require an original insurance policy. On second mortgage loans, an original endorsement to show

        Option One Mortgage Corporation, Its Successors and/or Assigns

lienholder is required and a copy of the existing policy.                                    as second

16. **BINDERS** - Lender will accept a Binder provided it meets the above requirements; term is not less than 30 days and not more than 90 days; and a full years insurance premium is paid through Loan Closing/Escrow.

All insurance policies must be in our Branch office (for Funding states), or in the closing agent's office (for closing states) prior to disbursement of loan funds.

It is understood that in order to comply with new laws and regulations, the Corporation may solely elect to change or add to the above requirements from time to time without prior written notification.

You may, of course, obtain a policy from almost any insurance agent or broker. In this event, please be sure that the policy and insurance company meet with our requirements. We shall immediately return any policy which does not meet with our requirements or is not from the agency you have designated below (unless accompanied by new authorization signed by you).

You hereby voluntarily choose the following insurance agency:

_____

(Name of Insurance Agency)

and authorize Lender to accept a fire insurance policy from them for this loan. You understand that the choice of this insurance agency was not made a condition precedent to, and in no way affects, the granting of this loan.

Your signature hereto indicates your understanding and acceptance, and that you have received a copy of these requirements. Executed this _____ day of _____, 20_____.

| | |
|---|---|
| _Carla Jackson_  5/26/04 | _____ |
| CORLA   JACKSON            Date | Date |
| | |
| _____ | _____ |
| Date | Date |

**FARMERS**
**INSURANCE GROUP**

**F A R M E R S**
75 YEARS SERVING AMERICA

## PROTECTOR PLUS POLICY

Name: _____ Corla Jackson _____

Policy Number: _____ ███5620 _____

Dwelling Coverage: _____$250,000_____  Extended Replacement: _____$312,500_____

Contents Coverage: _____$187,500_____

| | | |
|---|---|---|
| Cash, coins, etc. | $100 | |
| Property Away | $18,750 | |
| Securities | $500 | |
| Watercraft (Motor & Trailer) | $1,000 | |
| THEFT of Jewelry | $1,000/item | $2,500 total limit |
| THEFT of Silverware | $2,500 | |
| THEFT of Firearms | $1,000 | |
| THEFT of Imported Rugs | $2,500 | |
| Business Property | $200 | |
| Sportcards | $250 | |
| Computers | $5,000 | |

Deductible: _____$1000   2%H_____

Separate Structures: _____$25,000_____     Tree Debris Removal    _$15_    Y/Ⓝ

Liability: _____$300,000_____     Identity Fraud Expense    _$25_    Ⓨ/N

Medical Payments: _____$1,000_____     Home Warranty    _$456_    Ⓨ/N

Loss of Use _____$125,000_____     Umbrella    _$154_    Ⓨ/N

*Flood / Rising Water Insurance:*

Premium: _____$295_____     ( Accept / Reject Initial Ⓒ )

*Discounts:*     Non-Smoker     *Other Products and Services:*
                 Age 50+           Roth IRA / 401K / Tax Deferred Savings
                 New Home / Renovation     Mutual Funds / Life Insurance of all types
                 Auto / Home     Follow Up Dates: _____
                 Auto / Home / Life

X-Dates/Follow Up Dates: _____     *Boats / Recreation Vehicles / Motorcycles / ATV's*
                                          Follow Up Dates: _____

Claims Procedures: Covered

Client Signature: _____Corla Jackson_____     Date: _5/11/04_

# Mold Reporter

**Home**

**About**

## News, Vol. 1, No. 3

Prev | Next | Volume 1, Number 3

### The Final Solution: Mold-Contaminated House Burned to Ground

Search

In February of this year, the Associated Press reported a Eugene, Oregon, couple's plan to burn their house to the ground, letting the fire department u it for a training exercise. It became contaminated while Mark and Mary Jan O'Hara were having it remodeled. They and their children were made sick a result (headaches, respiratory problems, rapid weight loss, swollen and pain joints, chronic fatigue, profuse nosebleeds and severely inflamed sinuses). After the house is demolished, they plan to rebuild on the same 8-acre plot c land.

The O'Haras are seeking $3.5 million in damages in a lawsuit that will probably be brought to trial this summer. They allege that their architect (Michael Cockram of Eugene) failed to control the quality of work by the general contractor, Stangland Construction, which failed to keep the inside c the house dry during remodeling. These issues are being contested.

The family tried to decontaminate their personal belongings, but had to disca many of them.

### Melinda Ballard & Family win Large Settlement against Farmers Insurance

It was a lawsuit that made legal history. The Dripping Springs, Texas, family whose house was lost to mold last year was awarded $32 million by a jury in the first part of June, 2001. Farmers Insurance Exchange, they found, failed t adequately and swiftly cover repairs for a water leak. As a result, the mold Stachybotrys overran their 22-room house and severely damaged the parents' health and that of their child.

The award was broken down as follows:

- $6.2 million in actual damages. The house will have to be decontaminated, leveled, and rebuilt.
- $12 million in punitive damages.
- $5 million for mental anguish
- $8.9 million in lawyers' fees.

The award may be reduced by Judge John Dietz when he officially enters the judgment on June 25. Also: Farmers may appeal. And political pressure may ultimately release insurers from the necessity of covering conditions that may

## IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF ALABAMA

In Re:

**Corla Reeves Jackson,**                                    Case No. 05-13142 **MAM**

Debtor.                                                      Chapter 13

### ORDER REINSTATING CASE

Upon hearing the Court finds that the Debtor's Motion to Reinstate Case is due to be

GRANTED.

It is hereby ORDERED that the Debtor's Chapter 13 case is reinstated.

Dated:   June 27, 2007

*Margaret A. Mahoney*

MARGARET A. MAHONEY
U.S.  BANKRUPTCY JUDGE

## Case Overview

Case No. 05-13142-MAM-13          CORLA REEVES JACKSON

CLOSED

Friday, February 24, 2012

2:47 pm

User: lfp

DISBURSEMENT HISTORY

| DATE | CODE | DESCRIPTION | | CREDITOR # | CHECK NO. | AMOUNT |
|---|---|---|---|---|---|---|
| GMAC MORTGAGE CORPORATION | | | Claim Number 7 | | | |
| Jan 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0788798 | $440.33 |
| Feb 12, 2008 | CRP | CREDITOR REFUND/PRINCIPAL CREDITOR ONLY | | 196515 | | $-440.33 |
| Jul 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0814560 | $1,427.16 |
| Aug 07, 2008 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 196515 | 0814560 | $-1,427.16 |
| TOTAL FOR GMAC MORTGAGE CORPORATION | | | | | | $0.00 |
| MERCHANT'S ADJUSTMENT SERVICES | | | Claim Number 8 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0670749 | $31.21 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0682323 | $96.48 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0753386 | $294.04 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0766680 | $46.38 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0784836 | $172.26 |
| TOTAL FOR MERCHANT'S ADJUSTMENT SERVICES | | | | | | $640.37 |
| SPRINGHILL MEMORIAL HOSPITAL | | | Claim Number 10 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0671532 | $45.81 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0683221 | $141.62 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0754309 | $431.57 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0767573 | $68.07 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0785772 | $252.84 |
| TOTAL FOR SPRINGHILL MEMORIAL HOSPITAL | | | | | | $939.91 |
| SPRINGHILL MEMORIAL HOSPITAL | | | Claim Number 11 | | | |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0683221 | $6.18 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0754309 | $14.24 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0785772 | $10.58 |
| TOTAL FOR SPRINGHILL MEMORIAL HOSPITAL | | | | | | $31.00 |
| GMAC MORTGAGE CORPORATION | | | Claim Number 12 | | | |
| May 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0694135 | $31.25 |
| Jun 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0698082 | $446.25 |
| Aug 17, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0706404 | $422.50 |
| Jan 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0788798 | $734.93 |
| Feb 12, 2008 | CRP | CREDITOR REFUND/PRINCIPAL CREDITOR ONLY | | 196515 | | $-734.93 |
| Jul 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0814560 | $2,381.98 |
| Aug 07, 2008 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 196515 | 0814560 | $-2,381.98 |
| TOTAL FOR GMAC MORTGAGE CORPORATION | | | | | | $900.00 |

DISBURSEMENT TOTAL          $17,582.00

FILED MAY 15, 12 PM 3:49 USDCOR LS

Criditor's

Violated Stay Order

United States District Court
For The Southern District of Alabama

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ALABAMA

**CORLA JACKSON**
**Plaintiff,**

**V.**                                             **NO. 12-111**

**GMAC MORTGAGE**
**CORPORATION, ET AL**
**Defendants.**

## MOTION FOR VIOLATION OF AUTOMATIC STAY ORDER
## MOTION FOR FRAUD UNDER RULE 60 (b) and 59 (b)

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiff, CORLA JACKSON, by record of files this Motion

for Relief from judgment Under Rule 60 (b) and Rule 59 (b) of the Alabama Rules of

Civil Procedure, and as grounds therefore, shows as follows:

> aggravating circumstances may be considered sufficient to allow the trial
>
> court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule
>
> 60(b)(6). *Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984);
>
> Giles v. Giles, 404 So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d
>
> 529 (Ala. Civ. App. 1985)."

Sturdivant v. BAC Home Loans, LP, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App.
2011). In Sturdivant, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on
the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been
assigned to BAC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ALABAMA

**CORLA JACKSON**
**Plaintiff,**

**V.**                                                    **NO. 12-111**

**GMAC MORTGAGE**
**CORPORATION, ET AL**
**Defendants.**


## MOTION FOR VIOLATION OF AUTOMATIC STAY ORDER
## MOTION FOR FRAUD UNDER RULE 60 (b) and 59 (b)


**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** the Plaintiff, CORLA JACKSON, by record of files this Motion

for Relief from judgment Under Rule 60 (b) and Rule 59 (b) of the Alabama Rules of

Civil Procedure, and as grounds therefore, shows as follows:

> aggravating circumstances may be considered sufficient to allow the trial
>
> court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule
>
> 60(b)(6). *Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984);
>
> Giles v. Giles, 404 So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d
>
> 529 (Ala. Civ. App. 1985)."

Sturdivant v. BAC Home Loans, LP, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App.
2011). In Sturdivant, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on
the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been
assigned to BAC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ALABAMA

**CORLA JACKSON**
**Plaintiff,**

**V.**                                             **NO. 12-111**

**GMAC MORTGAGE**
**CORPORATION, ET AL**
**Defendants.**

# <u>MOTION VIOLATION OF AUTOMATIC STAY ORDER</u>
# RULE 60 (b) and 59 (b)

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** the Plaintiff, CORLA JACKSON, by record files this Motion for

Relief from judgment Under Rule 60 (b), of the Alabama Rules of Civil Procedure, and

as grounds therefore, shows as follows:

1.      aggravating circumstances may be considered sufficient to allow the trial

court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule 60(b)(6).

*Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984); Giles v. Giles, 404

So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d 529 (Ala. Civ. App. 1985)."

<u>Sturdivant v. BAC Home Loans, LP</u>, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App.
2011). In <u>Sturdivant</u>, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on
the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been
assigned to BAC.

# 2. Rule 60(b) provides, in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: **(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken.**"

3.    Our supreme court has stated:

"'[T]he decision whether to grant or deny [a Rule 60(b)] motion is within the sound discretion of the trial judge, and the appellate standard of review is whether the trial court abused its discretion. *Pierson v. Pierson*, 347 So. 2d 985 (Ala. 1977). In reviewing a ruling of a trial court on a Rule 60(b)(6) motion, the trial court's decision will not be disturbed unless it is determined "that there is an absence of reasonable cause, that rights of others subsequently arising would be adversely affected, or that it is unjust." *Textron, Inc. v. Whitfield*, 380 So. 2d 259 (Ala. 1979), quoting *Nunn v. Stone*, 356 So. 2d

1212 (Ala. Civ. App. 1978).' "Ex parte Dowling, 477 So. 2d 400, 402 (Ala. 1985)."

*Osborn v. Roche*, 813 So. 2d 811, 815 (Ala. 2001).


    4.    Our supreme court has further recognized that in certain cases "aggravating- circumstances may allow a trial court to treat what would otherwise be a Rule 60(b)(1) motion [or 60(b)(3) motion] as a Rule 60(b)(6) motion." *Ex parte Wal-Mart Stores, Inc.*, 725 So. 2d 279, 284 (Ala. 1998). The supreme court has stated that the aggravating- circumstances exception "applies to an extraordinary circumstance not contemplated by Rule 60(b)(1) [or 60(b)(3)], for the purpose of protecting the public, vindicating the judicial process, and promoting the public's confidence in the legal system." *R.E. Grills, Inc. v. Davison*, 641 So. 2d 225, 230 (Ala. 1994).


    **5.**    **"The `catch all' provision of clause (6) of Rule 60(b) allows a trial court to grant relief from a judgment for `any other reason justifying relief.' *Barnett v. Ivey*, 559 So. 2d 1082, 1084 (Ala. 1990).**


    6.    "Although grounds for relief under Rule 60(b)(1) generally cannot be valid grounds under Rule 60(b)(6), this Court has recognized an exception when, in the interest of justice, aggravating circumstances may be considered sufficient to allow the trial court to treat what would otherwise be a Rule 60(b)(1) motion as within Rule 60(b)(6). *Chambers County Comm'rs v. Walker*, 459 So. 2d 861 (Ala. 1984); Giles v. Giles, 404 So. 2d 649 (Ala. 1981); Rebel Oil Co. v. Pike, 473 So. 2d 529 (Ala. Civ. App. 1985)."

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

(c) Timing and Effect of the Motion.

(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(3) **set aside a judgment for fraud on the court.**

## A defendant can be charged with conspiracy based on statutes within the criminal code

- Conspiracy against the rights of citizens. *See* 18 USC 241. This offense has a sentence of 10 years in prison.
-
- Conspiring in bribery of sporting contests. *See* 18 USC 224.

Under 18 USC 371, a person can be charged with conspiracy based on two elements

1. An agreement to commit a criminal offense.
2. An overt act that furthers the conspiracy.

The US Attorney does not have to prove that the agreement was in writing. It can be verbal and still subject the parties to criminal liability.

FILED NOV 5 '12 PM 1:26 USDCALS

<u>Sturdivant v. BAC Home Loans, LP</u>, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App.
2011). In <u>Sturdivant</u>, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on
the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been
assigned to BAC.

**THIS MOTION SHOULD BE GRANTED OR PROCEED TO TRIAL"
ON THE BASIC OF CIVIL FRAUD CORRUPTION AND
CONSPIRACY"** REFERENCING THE (STATUS REPORT) FILED BY JACKSON"
ON THE NOTICE BRINGING THE COURTS UP TO DATE OF THE SAID MATTER"
ON THE STAY VIOLATIONS UNDER RULE 60 (b) AND 59 (b)".  THIS IS A
VERY SERIOUS MATTER.

See In re, <u>Jones v. Wells Fargo Home Mortgage</u>, Adv. No. 06-01093 (Bankr. E.D. La.
August 29, 2007.  The Court found Wells Fargo guilty of violating the automatic stay by
improperly assessing post-petition charges in a Chapter 13 case, and diverting payments
made by the Chapter 13 trustee to satisfy claims not authorized by the Chapter 13 plan or
the Court.  Further, the Court found that *this conduct was the normal court of business
for Wells Fargo in perhaps thousands of consumer cases*.  The Court awarded attorneys
fees and expenses of $67,202.45 and considered a multi-million dollar punitive damages
award due to the apparent widespread misconduct.  However, Wells Fargo proposed
changes (noted below, after the jump) in the way it does business in lieu of sanctions.

Further, Wells Fargo agreed to memorialize its proposal into an order of the Court,
"*enforceable in any case pending or subsequently filed before any court in the
country.*" The Court agreed that this was an appropriate result and would enter an order
setting forth this agreement, such that the Court could continue oversight over Wells
Fargo's implementation of the agreement.  <u>Jones v. Wells Fargo Home Mortgage Inc.
(In re Jones), 2012 WL 1155715 (Banker. E.D.  La. 4/5/12.</u>

**When a bankruptcy court cannot adjudicate pre-petition claims, the
stay should be modified to permit the action to continue to the original
court.  See In re Cooke, 2007 WL 2102687 at \*3.  Also See" Fraud
Under Rule 60(b) and (59 (b).**

**SEE EXHIBIT (1)**

**SEE (NEW DISCOVERY STATUS REPORT ON FILE)**

# EXHIBIT (1)



*[Handwritten annotation in box at top:]* GMAC Mortgage/Snake & Permit Never Filed A Proof Of Claim Approved by Judge Mahoney Anything & They Know Its

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA REEVES JACKSON,                    Case No.: 05-13142-MAM-13

Debtor(s).

**ORDER**

This matter came before the Court on the motion of GMAC Mortgage Corporation ("GMAC") for relief from the automatic stay as it pertains to certain real property commonly known as 13230 Tom Gaston Road, Mobile, AL 36695 ("Real Property"). Appearances were as noted in the record. Based upon the evidence presented:

It is ORDERED that GMAC's Motion for Relief from Stay is CONDITIONALLY DENIED upon the following terms and conditions:

1.    The sum of $16,730.24 ($16,080.24 post petition arrearage (07/05–02/06 @ $1,920.64 = $15,365.12; 07/05–01/06 late charges @ 102.16 = $715.12), $500.00 attorney's fees, and $150.00 court costs) having been repaid in open court in one lump sum of $1,920.64; the remaining balance of $14,809.60 shall be repaid through the Debtor's Chapter 13 plan.

2.    GMAC is granted leave to file a proof of claim in the amount of $14,809.60.

3.    Beginning with the March, 2006 payment, Debtor shall continue to make timely monthly direct payments to GMAC in accordance with the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

4.    The Debtor shall otherwise comply with all terms and provisions of the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

5.    If the Debtor fails to comply with the conditions stated herein, GMAC shall notify the debtor by sending the Debtor a notice of default. Should the Debtor fail to cure the default within ten days from the date of the letter, the automatic stay of 11 U.S.C. §362 shall automatically TERMINATE as it pertains to the Real Property and GMAC shall be free to enforce any and all of its right, title, and interest in and to the Real Property in accordance with loan documentation between the parties and applicable law. GMAC shall send said notice and Debtor may cure said default on two (2) separate occasions only. Upon the third default of the Debtor to timely remit the regular or arrearage payments referenced above, then the automatic stay 11 U.S.C. §362 , shall automatically TERMINATE and GMAC is authorized to immediately exercise all its rights under its mortgage without further order of this court. Debtor shall be responsible for attorney fees incurred for noncompliance with this Order including any fee for notices required pursuant to any order of this Court.

Dated:    March 1, 2006

*Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

027891

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA REEVES JACKSON,                    Case No.: 05-13142-MAM-13

      Debtor(s).

## ORDER

This matter came before the Court on the motion of GMAC Mortgage Corporation

("GMAC") for relief from the automatic stay as it pertains to certain real property commonly known

as 13230 Tom Gaston Road, Mobile, AL 36695 ("Real Property"). Appearances were as noted in

the record. Based upon the evidence presented:

It is ORDERED that GMAC's Motion for Relief from Stay is CONDITIONALLY DENIED

upon the following terms and conditions:

1.    The sum of $16,730.24 ($16,080.24 post petition arrearage (07/05-02/06 @ $1,920.64 = $15,365.12; 07/05-01/06 late charges @ 102.16 = $715.12), $500.00 attorney's fees, and $150.00 court costs) having been repaid in open court in one lump sum of $1,920.64; the remaining balance of $14,809.60 shall be repaid through the Debtor's Chapter 13 plan.

2.    GMAC is granted leave to file a proof of claim in the amount of $14,809.60.

3.    Beginning with the March, 2006 payment, Debtor shall continue to make timely monthly direct payments to GMAC in accordance with the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

4.    The Debtor shall otherwise comply with all terms and provisions of the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

5.    If the Debtor fails to comply with the conditions stated herein, GMAC shall notify the debtor by sending the Debtor a notice of default. Should the Debtor fail to cure the default within ten days from the date of the letter, the automatic stay of 11 U.S.C. §362 shall automatically TERMINATE as it pertains to the Real Property and GMAC shall be free to enforce any and all of its right, title, and interest in and to the Real Property in accordance with loan documentation between the parties and applicable law. GMAC shall send said notice and Debtor may cure said default on two (2) separate occasions only. Upon the third default of the Debtor to timely remit the regular or arrearage payments referenced above, then the automatic stay 11 U.S.C. §362 , shall automatically TERMINATE and GMAC is authorized to immediately exercise all its rights under its mortgage without further order of this court. Debtor shall be responsible for attorney fees incurred for noncompliance with this Order including any fee for notices required pursuant to any order of this Court.

Dated:   March 1, 2006

                              *Margaret A. Mahoney*
                             MARGARET A. MAHONEY
027691                             U.S. BANKRUPTCY JUDGE

THEY TRIED TO HAVE THE CASE DISMISSED KNOWING THEY HAD VIOLATED JUDGE MAHONEY COURT ORDER NO RESPONSE" THEY ROBBED JACKSON VIOLATING FEDERAL COURT ORDERS FILED ECF....!

Form ntcdsm

# UNITED STATES BANKRUPTCY COURT
## Southern District of Alabama

Case No.: 05-13142
Chapter: 13

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
    Corla Reeves Jackson
    13230 Tom Gaston Road
    Mobile, AL 36695

Social Security No.:
    xxx-xx-9711

Employer's Tax I.D. No.:

## NOTICE OF DISMISSAL

You are hereby notified that an Order Dismissing the above case was entered on 5/8/07.

Dated: 5/8/07

Geraldine S. Lester
Clerk, U.S. Bankruptcy Court

**THE CASE HAD TO BE RE-INSTATED BECAUSE THEY TRIED TO BE SLICK AND GOT CAUGHT TRYING TO STEAL JACKSON HOME OUTSIDE OF FEDERAL LAWS THAT PROTECTED HER AND HER ASSETS AND LUTHER STRANGE KNEW THIS' HE LIED!**

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In Re:

**Corla Reeves Jackson,**                                  Case No. 05-13142 **MAM**

Debtor.                                                              Chapter 13

ORDER REINSTATING CASE

Upon hearing the Court finds that the Debtor's Motion to Reinstate Case is due to be

GRANTED.

It is hereby ORDERED that the Debtor's Chapter 13 case is reinstated.

Dated:    June 27, 2007

*Margaret a. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

Case 05-13142   Doc 60   Filed 06/27/07   Entered 06/27/07 14:35:25   Desc Main
Document    Page 1 of 1

THE CASE HAD TO BE RE-INSTATED BECAUSE THEY TRIED TO BE SLICK AND GOT CAUGHT TRYING TO STEAL JACKSON HOME KNOWING THEY DID NOT FILE A PROOF OF CLAIM IN ACCORDANCE WITH JUDGE MAHONEY COURT ORDERS WITH THE AGREEMENT BETWEEN JACKSON AND GMAC MORTGAGE" IT WAS IMPOSSIBLE THEY DID NOT EVEN OWN THE ASSIGNMENT AND THE LOANS NUMBERS DID NOT MATCH" THEY FABRICATED A LOAN IN JACKSON NAME WITH THE INTENT TO ROB HER UNDER FALSE PRETENSE" ALL THE EVIDENCE SPEAK FOR ITSELF TO DATE… **GMAC MORTGAGE NEVER FILED AN (RESPONSE) TO IN ACCORDANCE WITH JUDGE MAHONEY COURT ORDER DATED MARCH 1, 2006" BECAUSE THEY DID NOT OWN THE NOTE OR THE ASSIGNMENT" MARCH 1, 2006.  THEY NEVER PRODUCED THE ORIGINAL LOAN DOCUMENTS ON THE**

**LOAN NUMBER THEY FABRICATED WHICH DID NOT MATCH JACKSON LOAN NUMBER OR HER ORIGINAL LOAN DOCUMENTS" JACKSON LOAN WAS WITH OPTION ONE MORTGAGE IN 2004 AND IT WAS PAID IN FULL AND SATISFIED BACKED BY SECURITY'S SECURED BY POLICY'S UNDER OPTION ONE MORTGAGE AND NOTE GMAC MORTGAGE" THEY DID NOT EVEN OWN THE ASSINGMENT" IN MARCH 2006.  THEY FABRICATED DOCUMENTS AND CAME BACK AND COMMITED FRAUD ON DOCUMENTS PREPARED BY (SIROTE & PERMUTT" BRADLEY ARANT BOULT CUMMINGS" THE LAWYERS FOR THE DEFENDANTS IS THE ONE FABRICATED AND PREPARED THE DOCUMENTS" OPTION ONE MORTGAGE WAS CLOSED AT THAT TIME" AND HAD NOT BEEN SOLD.  THEIR LOANS COULD NOT BE SOLD ON MORTGAGE BACKED BY SECURITY ON WALL STREET ANYWAY" TAKING LOANS FROM POOLS OF LOANS THAT DID NOT BELONG TO THEM" USING JACKSON ASSETS AT HER EXPENSE FOR PROFITS" AND THEY KNEW THIS.**

THEIR FALSE ARREARAGES WAS REDUCED AND DISALLOWED AND THEY KNEW" ALL CHECKS AND PAYMENTS WAS STOPPED BY THE COURTS AFTER NO RESPONSE WAS FILLED IN ACCOUDANCE WITH THE JUDGES ORDER DATED MARCH 1, 2006.  THE COURTS STOPED ALL CHECKS AND PAYMENTS GOING TO GMAC MORTGAGE REVERSISNG ALL FUNDS BACK TO JACKSON

(SEE AUGUST 2006).  JACKSON CIVIL" HUMAN AND CONSTITUTIONAL RIGHTS AND MUTIPLE DAMAGES HAS OCCURDED HERE.

**THE DISALLOWED CLAIMS WAS SUSTAINED AND REDUCED TO THE AMOUNT PAID ABOVE BECAUSE THEY COULD NOT GIVE JACKSON BACK ALL THE FUNDS THEY ISSUED PRIOR TO THE COURT ORDER AND PRIOR TO FINDING OUT GMAC MORTGAGE HAD COMMITTED CIVIL FRAUD AND MORE" THE EVIDENCE ABOVE WITH THE COURT ORDERS LISTED BELOW SPEAKS FOR ITSELF" THEY DID ROB JACKSON AND COVERED IT UP IN A CONSPIRACY AND CORRUPTED HER CASES SO THEY WOULD NOT GO TO JAIL" AND BE FINED BY THE UNITED STATES ATTORNEY GENERAL AND MORE.**

**SEE CASE OVERVIEW LISTED BELOW"** THE JUDGES ORDERS FILED ECF (NO RESPONSE) IN ACCORDANCE WITH HER ORDER WAS NEVER FILED" IN THE ORDERS DO NOT MATCH THE ACTIONS OF THE DEFENDANTS HAS DEFRAUDED THE COURTS ON" THEY DID NOT OWN THE ASSIGNMENT OR THE NOTE ON MARCH 1, 2006" AND THEY KNEW THIS PRIOR TO FILING ALL THOSE FAKE CLAIMS SLANDERING THE TITLE TO JACKSON PROPERTY WITH THE INTENT TO ROB HER AT HER EXPENSE" USING DECEPTIVE PRACTICES" TO DATE DEFRAUDING THE COURTS" THINKING THEY WOULD NOT GET CAUGHT" OR THEY COULD GET AWAY WITH VIOLTING FEDERAL LAWS THAT PROTECTED JACKSON REGARDLESS OF RACE OR ANY SITUATION" IT DID NOT GIVE THEM THE RIGHT TO USE HER ASSETS AND HER NAME FOR PROFITS.

**Case Overview**
Case No. 05-13142-MAM-13          CORLA REEVES JACKSON
CLOSED

Friday, February 24, 2012
2:47 pm
User: lfp

### DISBURSEMENT HISTORY

| DATE | CODE | DESCRIPTION | | CREDITOR # | CHECK NO. | AMOUNT |
|------|------|-------------|---|-----------|-----------|--------|
| GMAC MORTGAGE CORPORATION | | | Claim Number 7 | | | |
| Jan 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0788798 | $440.33 |
| Feb 12, 2008 | CRP | CREDITOR REFUND/PRINCIPAL CREDITOR ONLY | | 196515 | | $-440.33 |
| Jul 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0814560 | $1,427.16 |
| Aug 07, 2008 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 196515 | 0814560 | $-1,427.16 |
| TOTAL FOR GMAC MORTGAGE CORPORATION | | | | | | $0.00 |
| MERCHANT'S ADJUSTMENT SERVICES | | | Claim Number 8 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0670749 | $31.21 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0682323 | $96.48 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0753386 | $294.04 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0766680 | $46.38 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 192899 | 0784836 | $172.26 |
| TOTAL FOR MERCHANT'S ADJUSTMENT SERVICES | | | | | | $640.37 |
| SPRINGHILL MEMORIAL HOSPITAL | | | Claim Number 10 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0571532 | $45.81 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0683221 | $141.62 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0754309 | $431.57 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0767573 | $68.07 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0785772 | $252.84 |
| TOTAL FOR SPRINGHILL MEMORIAL HOSPITAL | | | | | | $939.91 |
| SPRINGHILL MEMORIAL HOSPITAL | | | Claim Number 11 | | | |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0683221 | $6.18 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0754309 | $14.24 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 687919 | 0785772 | $10.58 |
| TOTAL FOR SPRINGHILL MEMORIAL HOSPITAL | | | | | | $31.00 |
| GMAC MORTGAGE CORPORATION | | | Claim Number 12 | | | |
| May 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0694135 | $31.25 |
| Jun 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0698082 | $446.25 |
| Aug 17, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0706404 | $422.50 |
| Jan 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0788798 | $734.93 |
| Feb 12, 2008 | CRP | CREDITOR REFUND/PRINCIPAL CREDITOR ONLY | | 196515 | | $-734.93 |
| Jul 17, 2008 | CR | AMOUNTS DISBURSED TO CREDITOR | | 196515 | 0814560 | $2,381.98 |
| Aug 07, 2008 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 196515 | 0814560 | $-2,381.98 |
| TOTAL FOR GMAC MORTGAGE CORPORATION | | | | | | $900.00 |

| | | | | DISBURSEMENT TOTAL | | $17,582.00 |
|--|--|--|--|--|--|--|

FILED MAY 15 '12 PM 3:49 USDCDBALS

FILED NOV 5 '12 PM 1 :27 USDCALS

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:
CORLA R JACKSON                                    CASE NUMBER: 05-13142
        Debtors

### OBJECTION TO CLAIM
### NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

THE COURT WILL CONSIDER THIS MOTION, OBJECTION, OR OTHER MATTER WITHOUT FURTHER
NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES A WRITTEN OBJECTION WITHIN 30 DAYS
FROM THE DATE OF SERVICE OF THIS PAPER.  IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS
PAPER, YOU MUST FILE YOUR WRITTEN OBJECTION STATING THE SPECIFIC GROUND OR GROUNDS
ON WHICH YOUR OBJECTIONS IS BASED WITH THE CLERK OF THE COURT AT 201 ST LOUIS STREET,
MOBILE, ALABAMA 36602, AND SERVE A COPY ON THE MOVANT'S ATTORNEY, BARRY A FRIEDMAN,
ATTORNEY AT LAW, POST OFFICE BOX 2394, MOBILE, ALABAMA 36652.

IF YOU FILE AND SERVE A WRITTEN OBJECTION STATING THE SPECIFIC GROUND OR GROUNDS ON
WHICH YOUR OBJECTION IS BASED WITHIN THE TIME PERMITTED, THE COURT WILL SCHEDULE A
HEARING AND YOU WILL BE NOTIFIED.  IF YOU DO NOT FILE A PROPER WRITTEN OBJECTION
WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE
GRANTING OF THE RELIEF REQUESTED IN THE PAPER, AND WILL PROCEED TO CONSIDER THE PAPER
WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.

Comes now the Debtor(s), CORLA R JACKSON, by and through her attorney of record, Barry A Friedman,
and make this motion, and shows the Court as follows:

Said Debtor(s) object to ECF Claim Number 1 heretofore filed by GMAC MORTGAGE CORPORATION in the
amount of $238,946.35 on the following grounds:

1.    ARREARS NO LONGER OWED

WHEREFORE, Debtors pray that said claim be disallowed; and for such other relief as is just in the premises.

\S\ BARRY A FRIEDMAN
BARRY A FRIEDMAN
Attorney for Debtors
257 St Anthony Street
Post Office Box 2394
Mobile, Alabama  36652
Telephone: 251-439-7400

### CERTIFICATE OF SERVICE

I, the undersigned authority, hereby certify that I have on this ___15TH__ day of July,  2009,  served a copy of
the foregoing on Trustee, J C McAleer, III, Post Office Box 1884, Mobile,  Alabama 36633; and on GMAC Mortgage
Corporation, c/o John M Hunter, Post Office Drawer 2025, Mobile, Alabama 36652,  by depositing same in the United
States mail, properly addressed and postage prepaid and/or electronically.

\s\ BARRY A FRIEDMAN
BARRY A FRIEDMAN

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA R JACKSON                                    CASE NUMBER: 05-13142

        Debtors

## ORDER DISALLOWING CLAIM

This matter came before the Court on the Debtor's Objection to ECF Claim #1 filed by

GMAC MORTGAGE CORPORATION. Notice of the Motion was given pursuant to Local

Order. No responses were filed. Based upon the statements made in the Motion and upon the

lack of objections, it appears to the Court that the objection is due to be granted..

It is **ORDERED** that the Debtor's Objection to ECF Claim #1 filed by GMAC

MORTGAGE CORPORATION is **SUSTAINED** and the claim is **DISALLOWED** in its

entirety

Dated:    September 18, 2009

_Margaret A. Mahoney_
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

FILED MAY 15 '12 PM 3:49 USBC ALS

018789                          36207018807017

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA R JACKSON                              CASE NUMBER: 05-13142

   Debtors

### AMENDED ORDER DISALLOWING CLAIM

   This Order amends that Order dated September 18, 2009 in order to correct that certain
paragraph that states It is **ORDERED** that the Debtor's Objection to ECF Claim #1 filed by
GMAC MORTGAGE CORPORATION is **SUSTAINED** and the claim is **DISALLOWED** in
its entirety to It is **ORDERED** that the Debtor's Objection to ECF Claim #1 filed by GMAC
MORTGAGE CORPORATION is  is **SUSTAINED** and the claim is **REDUCED** and
**ALLOWED** to the amount paid. and in all other respects the Order stands as originally entered

   This matter came before the Court on the Debtor's  Objection to ECF Claim #1 filed by

GMAC MORTGAGE CORPORATION.  Notice of the Motion was given pursuant to Local

Order.  No responses were filed.  Based upon the statements made in the Motion and upon the

lack of objections, it appears to the Court that the objection is due to be granted..

   It is **ORDERED** that the Debtor's Objection to ECF Claim #1 filed by GMAC

MORTGAGE CORPORATION is **SUSTAINED** and the claim is **REDUCED** and **ALLOWED**

to the amount paid.

Dated:   October 1, 2009


                            _Margaret A. Mahoney_
                            MARGARET A. MAHONEY
                            U.S. BANKRUPTCY JUDGE


0237-48                          37512023771020

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:
CORLA R JACKSON                                    CASE NUMBER: 05-13142
       Debtors

## OBJECTION TO CLAIM
## NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

THE COURT WILL CONSIDER THIS MOTION, OBJECTION, OR OTHER MATTER WITHOUT FURTHER NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES A WRITTEN OBJECTION WITHIN 30 DAYS FROM THE DATE OF SERVICE OF THIS PAPER. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PAPER, YOU MUST FILE YOUR WRITTEN OBJECTION STATING THE SPECIFIC GROUND OR GROUNDS ON WHICH YOUR OBJECTIONS IS BASED WITH THE CLERK OF THE COURT AT 201 ST LOUIS STREET, MOBILE, ALABAMA 36602, AND SERVE A COPY ON THE MOVANT'S ATTORNEY, BARRY A FRIEDMAN, ATTORNEY AT LAW, POST OFFICE BOX 2394, MOBILE, ALABAMA 36652.

IF YOU FILE AND SERVE A WRITTEN OBJECTION STATING THE SPECIFIC GROUND OR GROUNDS ON WHICH YOUR OBJECTION IS BASED WITHIN THE TIME PERMITTED, THE COURT WILL SCHEDULE A HEARING AND YOU WILL BE NOTIFIED. IF YOU DO NOT FILE A PROPER WRITTEN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE GRANTING OF THE RELIEF REQUESTED IN THE PAPER, AND WILL PROCEED TO CONSIDER THE PAPER WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.

Comes now the Debtor(s), CORLA R JACKSON, by and through her attorney of record, Barry A Friedman, and make this motion, and shows the Court as follows:

Said Debtor(s) object to ECF Claim Number 7 heretofore filed by GMAC MORTGAGE CORPORATION in the amount of $14,809.60 on the following grounds:

2.       ARREARS NO LONGER OWED

WHEREFORE, Debtors pray that said claim be disallowed; and for such other relief as is just in the premises.

\s\ BARRY A FRIEDMAN
BARRY A FRIEDMAN
Attorney for Debtors
257 St Anthony Street
Post Office Box 2394
Mobile, Alabama  36652
Telephone: 251-439-7400

## CERTIFICATE OF SERVICE

I, the undersigned authority, hereby certify that I have on this __15TH__ day of July, 2009, served a copy of the foregoing on Trustee, J C McAleer, III, Post Office Box 1884, Mobile, Alabama 36633; and on GMAC Mortgage Corporation, c/o John M Hunter, Post Office Drawer 2025, Mobile, Alabama 36652, by depositing same in the United States mail, properly addressed and postage prepaid and/or electronically.

\s\ BARRY A FRIEDMAN
BARRY A FRIEDMAN

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA R JACKSON                                    CASE NUMBER: 05-13142

Debtors

## ORDER DISALLOWING CLAIM

This matter came before the Court on the Debtor's Objection to ECF Claim #7 filed by

GMAC MORTGAGE CORPORATION. Notice of the Motion was given pursuant to Local

Order. No responses were filed. Based upon the statements made in the Motion and upon the

lack of objections, it appears to the Court that the objection is due to be granted..

It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC

MORTGAGE CORPORATION is **SUSTAINED** and the claim is **DISALLOWED** in its

entirety

Dated:    September 18, 2009

MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

018789                              36207018807026

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA R JACKSON                                    CASE NUMBER: 05-13142

Debtors

## AMENDED ORDER DISALLOWING CLAIM

This Order amends that Order dated September 18, 2009 in order to correct that certain paragraph that states It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC MORTGAGE CORPORATION is **SUSTAINED** and the claim is **DISALLOWED** in its entirety to It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC MORTGAGE CORPORATION is is **SUSTAINED** and the claim is **REDUCED and ALLOWED** to the amount paid. and in all other respects the Order stands as originally entered

This matter came before the Court on the Debtor's Objection to ECF Claim #7 filed by

GMAC MORTGAGE CORPORATION. Notice of the Motion was given pursuant to Local

Order. No responses were filed. Based upon the statements made in the Motion and upon the

lack of objections, it appears to the Court that the objection is due to be granted..

It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC

MORTGAGE CORPORATION is **SUSTAINED** and the claim is **REDUCED and ALLOWED**

to the amount paid

Dated:   October 1, 2009

_Margaret A. Mahoney_
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

023748                          37512023771011

**Case Overview**

Case No. 05-13142-MAM-13     CORLA REEVES JACKSON     CLOSED

Friday, February 24, 2012
2:47 pm
User: lfp

DISBURSEMENT HISTORY

| DATE | CODE | DESCRIPTION | | CREDITOR # | CHECK NO. | AMOUNT |
|------|------|-------------|---|-----------|-----------|--------|
| **CORLA REEVES JACKSON** | | | | | | |
| Oct 15, 2009 | DEB | REFUND TO DEBTOR/CASE CLOSED | | 0513142D1 | 0875121 | $7,700.28 |
| TOTAL FOR CORLA REEVES JACKSON | | | | | | $7,700.28 |
| **HERMAN D. PADGETT** | | | | | | |
| Nov 17, 2005 | ATF | ATTORNEY'S FEE | | 000222 | 0671050 | $900.00 |
| Dec 09, 2005 | ATF | ATTORNEY'S FEE | | 000222 | 0674586 | $1.46 |
| Feb 16, 2006 | ATF | ATTORNEY'S FEE | | 000222 | 0682684 | $538.54 |
| May 15, 2006 | ATF | ATTORNEY'S FEE | | 000222 | 0695069 | $360.00 |
| TOTAL FOR HERMAN D. PADGETT | | | | | | $1,800.00 |
| **JOHN C. MCALEER III, TRUSTEE** | | | | | | |
| Nov 17, 2005 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0669297 | $94.42 |
| Dec 09, 2005 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0572952 | $0.12 |
| Feb 16, 2006 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0680742 | $181.25 |
| May 15, 2006 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0693299 | $33.75 |
| Jun 15, 2006 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0697173 | $28.75 |
| Aug 17, 2006 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0705471 | $27.50 |
| Jul 19, 2007 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0751925 | $137.50 |
| Aug 01, 2007 | TRRF | TRUSTEE'S FEE REVERSAL | | 100000 | | $-13.10 |
| Aug 01, 2007 | TRRF | TRUSTEE'S FEE REVERSAL | | 100000 | | $-4.54 |
| Aug 16, 2007 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0765269 | $19.89 |
| Dec 20, 2007 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0783303 | $65.13 |
| Jan 17, 2008 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0787895 | $75.02 |
| Feb 20, 2008 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | | $-75.02 |
| Jul 17, 2008 | TE | TRUSTEE SALARY & EXPENSE | | 100000 | 0813724 | $243.14 |
| Aug 07, 2008 | TRRF | TRUSTEE'S FEE REVERSAL | | 100000 | | $-91.10 |
| Aug 07, 2008 | TRRF | TRUSTEE'S FEE REVERSAL | | 100000 | | $-152.04 |
| TOTAL FOR JOHN C. MCALEER III, TRUSTEE | | | | | | $570.67 |
| **MONEY NOW TITLE LOANS** | | | Claim Number 2 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0670847 | $125.00 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0682435 | $75.00 |
| May 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0694824 | $75.00 |
| Jun 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0698771 | $25.00 |
| Aug 17, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0707083 | $50.00 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0753487 | $225.00 |
| Aug 01, 2007 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 358749 | 0753487 | $-225.00 |
| TOTAL FOR MONEY NOW TITLE LOANS | | | | | | $350.00 |
| **MONEY NOW TITLE LOANS** | | | Claim Number 2 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0670847 | $8.29 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0682435 | $25.60 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 358749 | 0753487 | $78.06 |
| Aug 01, 2007 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | | 358749 | 0753487 | $-78.06 |
| TOTAL FOR MONEY NOW TITLE LOANS | | | | | | $33.89 |
| **AT&T/CINGULAR WIRELESS** | | | Claim Number 3 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 083556 | 0666822 | $86.35 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 083556 | 0680231 | $266.93 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 083556 | 0751460 | $813.48 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 083556 | 0764290 | $128.30 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 083556 | 0782826 | $476.58 |
| TOTAL FOR AT&T/CINGULAR WIRELESS | | | | | | $1,771.64 |
| **MCFADDEN, LYON & ROUSE, LLC** | | | Claim Number 6 | | | |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 166820 | 0753379 | $506.11 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 166820 | 0766672 | $55.66 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | | 166820 | 0784819 | $206.73 |
| TOTAL FOR MCFADDEN, LYON & ROUSE, LLC | | | | | | $768.50 |
| **\*GMAC MORTGAGE COMPANY** | | | Claim Number 7 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | | 087371 | 0670221 | $507.34 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | | 087371 | 0681723 | $1,568.40 |
| TOTAL FOR \*GMAC MORTGAGE COMPANY | | | | | | $2,075.74 |
| **GMAC MORTGAGE CORPORATION** | | | Claim Number 7 | | | |

FILED JAN 15 '12 PM 3:49 USBKOS

BSS Case Overview (Rev. 01/26/2010)      Page 4 of 8

FILED NOV 5 '12 PM 1:28 USDCALS

## THE COURTS REFUNDED JACKSON BACK SOME OF HER MONEY



**Case Overview**
Case No. 05-13142-MAM-13        CORLA REEVES JACKSON
CLOSED

Friday, February 24, 2012
2:47 pm
User: llp

**DISBURSEMENT HISTORY**

| DATE | CODE | DESCRIPTION | CREDITOR # | CHECK NO. | AMOUNT |
|------|------|-------------|-----------|-----------|--------|
| CORLA REEVES JACKSON | | | | | |
| Oct 15, 2009 | DEB | REFUND TO DEBTOR/CASE CLOSED | 0513142D1 | 0878121 | $7,760.28 |
| TOTAL FOR CORLA REEVES JACKSON | | | | | $7,760.28 |

John C. McAleer III, Trustee
U.S. Bankruptcy Court
Post Office Box 1884
Mobile, Alabama 36633

CORLA REEVES JACKSON
13230 TOM GASTON RD
MOBILE, AL 36695

36695+865A R015



B18W (Form 18W) (08/07)

# United States Bankruptcy Court

## Southern District of Alabama

Case No. <u>05–13142</u>

Chapter 13

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, AL 36695

Social Security / Individual Taxpayer ID No.:
xxx–xx–9711

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR AFTER COMPLETION OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: <u>1/20/10</u>

<u>MARGARET A. MAHONEY</u>
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

025690

5018

THEY VIOLATED THIS FEDERAL COURT ORDER AND SOLD JACKSON HOME
OUTSIDE (BANKRUPTCY) VIOLATING A FEDERAL COURT ORDER DISALLOWNG
THEIR ORIGINAL CLAIM" THEY CAME BACK AND COMMITTED CIVIL FRUAD
USING DECEPTIVE PRACTICES VIOLATING THIS COURT STAY ORDER" WHEN ALL
THEIR CLAIMS WAS DISALLOWED AND THE CASE WAS DISMISSED BY FEDERAL
LAWS FILED ECF (JANUARY 20, 201) AND THEY ALL KNEW THIS"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CORLA JACKSON,                    )
    Plaintiff,                   )
v.                               )            CIVIL ACTION NO. 12-00111-KD-B
                                 )
GMAC MORTGAGE, LLC,              )
    Defendant.                   )

ORDER

This matter is before the Court on Defendant GMAC Mortgage, LLC's[1] Suggestion of
Bankruptcy (Doc. 22), which indicates that said entity has filed a Chapter 11 bankruptcy in the
Southern District of New York.

The Court's review of the docket of the U.S. Bankruptcy Court for the Southern District of
New York indicates that Defendant GMAC Mortgage, LLC filed a Chapter 11 Voluntary Petition for
Bankruptcy on May 14, 2012 (Case #12-12032), which was then consolidated (to be jointly
administered) with bankruptcy case #12-12020 filed by Residential Capital, LLC. Pursuant to 11
U.S.C. § 362, this filing operates as an automatic stay of this action against Defendant GMAC
Mortgage, LLC. Accordingly, it is **ORDERED** that all proceedings in this action against Defendant
Mortgage, LLC are hereby STAYED pending further Order of this Court. It is further **ORDERED**
that the parties shall jointly file a Status Report, to advise the Court as to the status of the bankruptcy
proceedings and this litigation, on or before **November 30, 2012.**

DONE and ORDERED this the 31st day of May 2012.

                /s/ Kristi K. DuBose
                **KRISTI K. DuBOSE**
                **UNITED STATES DISTRICT JUDGE**

---

1 *Pro se* Plaintiff incorrectly named the Defendant as "GMAC Mortgage Corporation" in her pleadings.

1

# CONSUMER BANKRUPTCY NEWS

## CRITICAL ISSUES AND WINNING STRATEGIES FOR BANKRUPTCY PROFESSIONALS

MAY 8, 2012 | VOLUME 22 | ISSUE 12

## $3.1 MILLION PENALTY FOR STAY VIOLATION

Wells Fargo Home Mortgage Inc. has been ordered to pay $3,171,154 in punitive damages for violating the automatic stay. Judge Elizabeth W. Magner said the lender's actions "were not only highly reprehensible, but its subsequent reaction on their exposure has been less than satisfactory." (*Jones v. Wells Fargo Home Mortgage Inc. (In re Jones)*, 2012 WL 1155715 (Bankr. E.D. La. 4/5/12).)

The initial ruling in this case came in April 2007, when Judge Magner concluded that Wells Fargo willfully violated the automatic stay. The court found that Wells Fargo charged the Chapter 13 debtor unreasonable fees and costs, failed to notify the debtor that these postpetition charges were added to his account, failed to seek the court's approval of the charges, and applied payments received from the trustee to these charges. The court awarded the debtor $24,441.65 in damages.

A separate hearing was held in May 2007 to consider punitive damages. At that time, Wells Fargo offered to correct systemic problems with its accounting of home mortgage loans in bankruptcy. After negotiations with the court as to the nature and structure of those changes, the agreed upon new accounting procedures were embodied in a supplemental judgment and administrative order. The amended judgment also awarded the debtor $67,202.45 for attorney's fees and costs.

Wells Fargo then appealed the judgment, and withdrew its consent to the nonmonetary relief. The district court affirmed the bankruptcy court, increased the compensatory award to $170,824.96, and remanded for consideration of punitive damages.

In October 2009, the bankruptcy court imposed the changes to Wells Fargo's accounting procedures *in lieu* of punitive damages. In August 2010, the district court affirmed. This time the debtor appealed the denial of punitive relief to the 5th U.S. Circuit Court of Appeals.

Back in August 2007, another Chapter 13 debtor, Dorothy Stewart, objected to Wells Fargo's proof of claim alleging the same misconduct as Jones had asserted. Because Wells Fargo's conduct was in violation

IN THIS ISSUE:

**$3.1 Million Penalty For Stay Violation**

Reprehensible Conduct ................... 2

**Stay Violation**

Handwritten Notes Cause For
Punitive Damages ........................... 3

**Filings**

Filings Down 12% To Start 2012 ...... 4

Bankruptcy Filings To Drop
This Year............................................. 4

**Leases**

Leases Get Assumed, Not
Reaffirmed ......................................... 4

**Agency Action**

Court Bans Mortgage Relief
Business ............................................. 5

**Fraud**

Former Attorney Indicted In
Fraud Schemes................................... 5

Illinois Debtor Pleads Guilty To
Fraud................................................... 5

Leader Of $66 Million Fraud
Scheme Pleads Guilty ...................... 6

**Case Notes**................................................. 6

**WEST®**

of its original agreement, the bankruptcy court ordered the lender to audit every borrower with a case pending in the district for compliance with the new accounting procedures. The *Stewart* judgment was affirmed by the district court, but the 5th Circuit found that the bankruptcy court exceeded its authority by ordering Wells Fargo to conduct the audits.

The appeal in *Jones v. Wells Fargo* was heard by the 5th Circuit after it ruled in *Wells Fargo Bank N.A. v. Stewart (In re Stewart)*, 647 F.3d 553 (5th Cir. 2011). In light of *Stewart*, the 5th Circuit remanded the case for consideration of punitive damages.

## IMPOSITION OF PUNITIVE DAMAGES

Given the *Stewart* ruling, the bankruptcy court could not order Wells Fargo to audit all the lenders' files in the district to make certain that it was complying with proper accounting procedures. Because the relief previously awarded in this case, which was *in lieu* of punitive damages, Judge Magner concluded that the mandate on remand was to consider monetary relief.

"Punitive damages are warranted when the conduct in question is willful and egregious, or when the defendant acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. There is no question that Wells Fargo's conduct was willful. As previously decided, Wells Fargo clearly knew of Debtor's pending bankruptcy and was represented by bankruptcy counsel in this case. Wells

---

CONSUMER BANKRUPTCY NEWS

**David J. Light, Esq.**
Principal Attorney Editor

© 2012 Thomson Reuters. All rights reserved.

CONSUMER BANKRUPTCY NEWS (USPS  012-103) (ISSN 1058-3963) is published bi-weekly, 21 times a year, except one issue is omitted in January, May, July, November, and December. Published and copyrighted by Thomson Reuters, 610 Opperman Drive, P.O. Box 64526, St. Paul, MN 55164-0526. Periodical postage paid at St. Paul, MN. Please address correspondence to David.Light@thomsonreuters.com. Customer Service: (800) 328-4880. POSTMASTER: Send address changes to Consumer Bankruptcy News, 610 Opperman Drive, P.O. Box 64526, St. Paul, MN 55164-0526.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400, fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651) 687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

Fargo is a sophisticated lender with thousands of claims in bankruptcy cases pending throughout the country and is familiar with the provisions of the Bankruptcy Code, particularly those regarding the automatic stay," Judge Magner said.

The imposition of postpetition charges was not egregious, but Wells Fargo's conduct afterward was. "Despite assessing postpetition charges, Wells Fargo withheld this fact from its borrower and diverted payments made by the trustee and Debtor to satisfy claims not authorized by the plan or Court. Wells Fargo admitted that these actions were part of its normal course of conduct, practiced in perhaps thousands of cases. As a result of the evidence presented, the Court also found Wells Fargo's actions to be egregious. There is also no question that Wells Fargo exhibited reckless disregard for the stay it violated."

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Supreme Court identified three factors for determining the propriety of a punitive damage award. The first factor is the degree of reprehensible conduct.

## REPREHENSIBLE CONDUCT

When the debtor filed for Chapter 13 relief, Wells Fargo did not adjust its account to show the debtor's loan as being current. The lender then added unapproved and undisclosed charges in excess of $24,000 to the debtor's account. When questioned about these charges by the debtor, Wells Fargo refused to explain its calculations or provide an amortization schedule. Even after the debtor sued, Wells Fargo failed to properly explain its calculations. After the bankruptcy court ruled against it, Wells Fargo fought the compensatory portion of the award despite never challenging the calculations of the overpayment, the court recounted.

"While every litigant has a right to pursue appeal, Wells Fargo's style of litigation was particularly vexing. After agreeing at trial to the initial injunctive relief in order to escape a punitive damage award, Wells Fargo changed its position and appealed," the court said.

The cost to the debtor was five years of litigation and hundreds of thousands of dollars in legal fees. It's a cost that Wells Fargo believes every Chapter 13 debtor should pay, as evidenced by its refusal to audit its pleadings or proofs of claim for errors, and its refusal to voluntarily correct any errors that come to light except through threat of litigation, the court said.

"Although its own representatives have admitted that it routinely misapplied payments on loans and improperly charged fees, they have refused to correct past errors. They stubbornly insist on limiting any change in their conduct prospectively, even as they seek to collect on loans in other cases for amounts owed in error."

© 2012 Thomson Reuters

FILED NOV 5 '12 PM 1 :29 USDCALS

CONSUMER BANKRUPTCY NEWS                    MAY 8, 2012 | VOLUME 22 | ISSUE 12

Judge Magner said Wells Fargo's conduct was clandestine. When questioned by the debtor about the charges on his account, Wells Fargo clammed up. Only by suing the lender was the debtor and the court able to discover what Wells Fargo was doing. And then, they learned that the lender was doing it in other cases.

Litigation with Wells Fargo can be a lengthy and expensive process, as was demonstrated in this case. With 80 percent of Chapter 13 debtors in the district earning less than $40,000 per year, Judge Magner said the cost of suing Wells Fargo is a burden many debtors can't bear.

"Wells Fargo has taken advantage of borrowers who rely on it to accurately apply payments and calculate the amounts owed. But perhaps more disturbing is Wells Fargo's refusal to voluntarily correct its errors. It prefers to rely on the ignorance of borrowers or their inability to fund a challenge to its demands, rather than voluntarily relinquish gains obtained through improper accounting methods. Wells Fargo's conduct was a breach of its contractual obligations to its borrowers. More importantly, when exposed, it revealed its true corporate character by denying any obligation to correct its past transgressions and mounting a legal assault to ensure it never had to. Society requires that those in business conduct themselves with honestly and fair dealing. Thus, there is a strong societal interest in deterring such future conduct through the imposition of punitive relief."

Given that it had already cost the debtor $292,673.84 to litigate his claim, the court found that punitive damages of $3,171,154 were warranted to deter Wells Fargo from engaging in similar conduct in the future. The court concluded that this award satisfied the final two *Gore* factors of bearing a reasonable relationship to the harm caused, and being within the range of penalties that a sophisticated lender would expect to face for its misconduct.

## STAY VIOLATION

### HANDWRITTEN NOTES CAUSE FOR PUNITIVE DAMAGES

Sending billing statements to the debtor was a willful violation of the automatic stay. Adding handwritten notes that were increasingly angry and malicious called for the imposition of punitive damages. (*In re Coopersmith*, 2012 WL 1143801 (Bankr. E.D.N.C. 4/4/12).)

The debtors owned and operated IPS Construction Inc., a company that provided general construction contracting services. IPS purchased some of its building supplies from M.G. Brown, a division of Foreman's Inc., on

credit. The debtor-husband personally guaranteed payment on the M.G. Brown account.

After IPS defaulted on the account, M.G. Brown obtained a state court judgment for $4,951.16. The debtor-husband attended the hearing, and asked for an accounting of the amount owed. M.G. Brown did not provide that accounting, and the debtor appealed.

The matter was referred to arbitration. The debtor did not attend the arbitration hearing, so the arbitrator entered judgment in M.G. Brown's favor in the amount of $4,951.16 plus a $50 arbitration fee.

When the debtors filed for Chapter 13 relief on June 1, 2011, they listed M.G. Brown as a creditor. On June 30, M.G. Brown, through Clay B. Foreman Sr., president of Foreman's Inc., mailed an account statement to IPS. Foreman handwrote on the invoice: "Added the $50.00 Arbitration fee to your total as stated by judge @ court hearing you have paid attorneys to delay paying your M.G. Brown bill! Your choice as I'm certain attorneys appreciate it!"

The debtors contacted their lawyer, who sent a letter to M.G. Brown explaining that the debtors filed for bankruptcy so they were protected from attempts to collect prepetition claims. M.G. Brown said it did not receive the letter.

In August 2011, M.G. Brown sent a second invoice to IPS. This time it was for $5,053.37. Again, Foreman included a handwritten note. "'Promised to make monthly payments!' but Spent MONEY ON ATTORNEY Spent MONEY ON COURT SYSTEM Result = Expect you will pay attorney—up front—to help you file bankruptcy! Clay Foreman"

In September 2011, M.G. Brown mailed a third invoice to IPS. This time it was for $5,105.35. Foreman added: "You have paid attorneys—UP FRONT—instead of paying portion monthly! Your statement at Small Claim Court of son, ... accepting your offer of paying a little MORE when you could rings hollow as I suspected! Judgment recorded PRIOR to your filing bankruptcy."

The debtors said the invoices caused them to experience anxiety and sleepless nights. The debtors sued M.G. Brown alleging that the company willfully violated the automatic stay. M.G. Brown responded that any violation of the stay was inadvertent, and that the bills were not sent to the debtors but were sent to their company, which the debtors operated from their home.

At the hearing, Foreman testified that neither M.G. Brown nor Foreman's Inc. had a procedure for handling bankrupt accounts. Foreman said he was unaware of the debtors' bankruptcy when he wrote the notes on the invoices. His references to paying attorneys were based on his assumption that this was what the debtors were doing.

© 2012 Thomson Reuters

**JURISDICTION AND VENUE**

1.   The subject matter in controversy is within the jurisdictional limits of this court under the

Code of Alabama Section 6-3-7 (a) (1). Procedurally, jurisdiction over an out-of-state defendant

is obtained pursuant to the "long-arm" rule, Ala. R. Civ. P. 4.2(b), as amended August 1, 2004. A

person or entity is subject to jurisdiction under Rule 4.2(b) when that "person or entity has such

contacts with this state that the prosecution of the action against the person or entity in this state is

not inconsistent with the constitution of this state or the Constitution of the United States ...."

Rule 4.2(b) now embodies the "catchall" clause that was found in subparagraph (I) of Rule 4.2

before it was amended. "The structure of former 4.2 included a 'laundry list' of types of conduct

that would subject an out-of-state defendant to personal jurisdiction in Alabama, as well as the

'catchall' clause now contained in new 4.2(b)." Committee Comments to Amendment to Rule 4.2

Effective August 1, 2004. "[S]ubparagraph (I) [was] but a restatement of the current definition of

the federal constitutional standard." Committee Comments on 1977 Complete Revision to Rule

4.2.

2.   That standard "'is the minimum-contacts standard elucidated in *International Shoe [Co. v.*

*Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)],'" and its progeny. *Bearden v.*

*Byerly*, 494 So. 2d 59, 61 (Ala. 1986) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 207, 97 S. Ct.

2569, 53 L. Ed. 2d 683 (1977)). Under that standard, "[a] physical presence in Alabama is not a

prerequisite to personal jurisdiction over a nonresident." *Sieber v. Campbell*, 810 So. 2d 641, 644

(Ala. 2001). What [*8] is required, however, is that the defendant have such contacts with

Alabama that it "'should reasonably anticipate being haled into court [here].'" *Dillon Equities v.*

*Palmer & Cay, Inc.*, 501 So. 2d 459, 462 (Ala. 1986) (quoting *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

3.   The standard is met where "the defendant [has] 'purposefully availed' itself of conducting

activity in the forum state, by directly targeting its [activities at] the state." *Toys "R" Us, Inc. v.*

*Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). "'This purposeful-availment requirement

assures that a defendant will not be haled into a jurisdiction as a result of "'the unilateral activity

of another person or a third person.'"'" *Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C.*,

866 So. 2d 519, 525-26 (Ala. 2003) (quoting *Elliott v. Van Kleef*, 830 So. 2d 726, 731 (Ala.

2002), quoting in turn *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.

Ed. 2d 528 (1985).


# FACTS

4.  Defendants conduct regular business in the State of Alabama, GMAC by Mortgaging

properties in the State Alabama.


## CIVIL CONSPIRACY

5.  Plaintiff would show that Defendants engaged in certain false, misleading and deceptive

acts, practices and/or omissions actionable under the Alabama Deceptive Trade Practices -

Consumer Protection Act (Alabama Code, Title 8, et seq.), as alleged hereinbelow.  "Alabama

recognizes [civil conspiracy] as a substantive tort." Purcell Co. v. Spriggs Enters., Inc., 431 So.

2d 515, 522 (Ala. 1983). "In essence, civil conspiracy is a combination of two or more persons to

do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful means." Id. See

also Eidson v. Olin Corp., 527 So. 2d 1283, 1285 (Ala. 1988). "In a conspiracy, the acts of

coconspirators are attributable to each other." Williams v. Aetna Fin. Co., 83 Ohio St. 3d 464,

476, 1998 Ohio 294, 700 N.E.2d859,868 1998)


## DECEPTIVE TRADE PRACTICES

6.  Plaintiff would show that Defendants engaged in certain false, misleading and deceptive

acts, practices and/or omissions actionable under the Alabama Deceptive Trade Practices -

Consumer Protection Act (Alabama Code, Title 8, et seq.), as alleged hereinbelow.

7.  <u>Unconscionable Action or Course of Action</u>.  Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 8-19-2 of the Alabama Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

8.  <u>Breach of Warranties</u>.  Plaintiff would show that the following warranties were breached and therefore actionable under Section 8, et seq. of the Alabama Code:

    a.    the implied warranty of merchantability;

    b.    the implied warranty of title

9.  <u>Unfair Claim Settlement Practices</u>.  Defendants engaged in unfair claim settlement practices prohibited by the Alabama Insurance Code, to wit:

    a.    misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

    b.    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;

    c.    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim under one portion of a policy with respect to which the insurer's liability has become reasonably clear to influence the claimant to settle another claim under another portion of the coverage unless payment under one portion of the coverage constitutes evidence of liability under another portion;

    d.    failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

    e.    failing within a reasonable time to:

    f.    affirm or deny coverage of a claim to a policyholder; or

    g.    submit a reservation of rights to a policyholder; and

h.     refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

10. <u>Misrepresentation of Insurance Policy</u>. Defendants misrepresented an insurance policy as prohibited by the Alabama Insurance Code, to wit:

a.     making an untrue statement of material fact;

b.     failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c.     making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact;

d.     making a material misstatement of law; and

e.     failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of the Alabama Insurance Code.

## COMMON LAW FRAUD

11. Plaintiff further shows that Defendants made material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff, and that Plaintiff relied on these representations to her detriment.

12. Plaintiff would further show that Defendants concealed or failed to disclose material facts within the knowledge of Defendants, that Defendants knew that Plaintiff did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose.

13. As a proximate result of such fraud, Plaintiff sustained the damages described more fully

hereinbelow.

## FRAUD IN A REAL ESTATE TRANSACTION

14. Plaintiff would further show that the false representations and/or promises of Defendants constitute fraud in a real estate transaction as defined by Alabama Code.

15. Plaintiff is therefore entitled to recover from Defendants actual damages described more fully hereinbelow, reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court as provided by the Alabama Code.

## NEGLIGENCE

16. In the course of the transactions between Plaintiff and Defendants, Defendants owed Plaintiff a duty of good faith and fair dealing.

17. Plaintiff would show that Defendants failed to exercise ordinary care in performing such duty. The acts and/or omissions of Defendants described hereinabove by which Defendants breached such duty constitute a proximate cause of the damages of Plaintiff described more fully hereinbelow, for which Defendants are liable to Plaintiff.

## NEGLIGENT MISREPRESENTATION

18. Plaintiff would show that Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest, and that such information was supplied by Defendants for the guidance of Plaintiff in the transactions described hereinabove. Defendants failed to exercise reasonable care or competence in obtaining or communicating such information. Plaintiff avers that Plaintiff suffered pecuniary loss, described more fully hereinbelow, which was proximately caused by Plaintiff's justifiable reliance on such information.

19. Plaintiff therefore asserts a cause of action for negligent misrepresentation against

Defendants, as provided by Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439 (Tex. 1991).

## BAD FAITH

20. Plaintiff would further show that the actions and/or omissions of Defendants described hereinabove constitute bad faith, which proximately caused the direct and consequential damages of Plaintiff described hereinbelow, and for which Plaintiff hereby sues.

## EMINENT DOMAIN

21. Plaintiff would further show that the actions and/or omissions of Defendants described hereinabove constitute a violation of the "Alabama Eminent Domain Code," which proximately caused the direct and consequential damages of Plaintiff described hereinbelow, and for which Plaintiff hereby sues.

## ECONOMIC AND ACTUAL DAMAGES

22. Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove:

23. Out-of-pocket expenses, including but not limited to the costs of the actions against Defendants, including the inability to live in her home.

24. Loss of use.

25. Lost profits.

26. Cost of replacement.

27. Loss of credit and damage to credit reputation.

### OTHER DAMAGES

28. Plaintiff would further show that acts and/or omissions of Defendants complained of herein were a producing cause and a proximate cause of the following damages sustained by Plaintiff:

### DAMAGES FOR MENTAL ANGUISH

29. Plaintiff would further show that the false, misleading and deceptive acts, practices and/or omissions described hereinabove were committed "knowingly," as provided by Title 6, Chapter 11, et. seq., of the Alabama Code, in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

30. As a result of such acts, practices and/or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Title 6, Chapter 11, et. seq.,of the Alabama Code, and for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

### MULTIPLE DAMAGES

31. As alleged hereinabove, Plaintiff would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

32. Plaintiff further avers that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

33. Therefore, Plaintiff is entitled to recover multiple damages as provided by Title 6, Chapter 11, et. seq., of the Alabama Code.

FILED NOV 5 '12 PM 1:30 USDCALS

## EXEMPLARY DAMAGES

34. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Title 6, Chapter 11, et. seq., of the Alabama Code.

## ATTORNEY'S FEES

35. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Alabama, as the Court deems equitable and just.

**See all exhibits and the DISCOVERY** to date, and the Exhibits, that Proves The Defendants hand written in a account number that does not match Plaintiff Original Note, and They Were Not The Servicer.

The Defendants Did Not And Could Not Produce Proof Of Claim Or Arrearages In Addition To Their So Call Original Note They Put On Jackson credit report. Neither could the Defendants ever to date **Produce The Original Documents Because They Knew They Did Not Own This Mortgage Or The Note** Or The Assignment Prior To Make All The Fake Claims That Caused The Plaintiff Major Damages To Date. That is why they committed fraud and fabricated all the documents they provided to the United States District Courts Leaving All The Other Information Out The Plaintiff, had to go and get copies from the courts and her lawyers to date, to back her evidence ...

**Refer To Motions Filed To Date With This Motion Violating A Federal Court Order
Using Deceptive Practices" To Prevent A Relief From Being Granted Under Rule
60(b) And 59 (b) And All Other Rules That Pretain To Protecting Victims From
Being Robbed By The Defendants Under False Pretense.**

**The Defendants Has Defrauded The Courts** With The Intent To Rob The Plaintiff
Jackson" Thinking They Could Get Away With Using Deceptive Practices Violating
Previous Judges (DISALLOWING THEIR CLAIM) FILED NO RESPONSE IN EVER
ORDER ISSUED BY JUDGE MAHONEY PRIOR TO DISCHARING PLAINTIFF
(JACKSON) .

A VIOLATION OF THIS COURTS ORDER HAS BEEN VIOLATED" Deceiving
Higher Courts In New York" If This Motion Is Not Granted Making Them Issuing
Orders Under (Fraud Of The Courts) Because The Defendants Committed Fraud" To
Deceive The Courts Making False Statements That Lead To The Order Issued Which
Never Should Have Happened. This Case Is Corrupted And A Conspiracy Of Un-Clean
Hands" Is Involved Here" Which Leads The Courts To Believe" That The Defendants Is
Desperate" And Continues To Defraud The Courts To Get Illegal Motions Granted"
Which Could Lead To (Fraud Of The Courts) Because All The Motions Filed In New
York By The Defendants Was Fraud Under Rule 60 (b) And 59 (b) And More" And The
Defendants Knew This.

## EXEMPLARY DAMAGES

Plaintiff would further show that the acts and omissions of Defendants complained of herein were

committed knowingly, willfully, intentionally, with actual awareness, and with the specific and

predetermined intention of enriching said Defendants at the expense of Plaintiff.  In order to

punish said Defendants for such unconscionable overreaching and to deter such actions and/or

omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as

provided by Title 6, Chapter 11, et. seq., of the Alabama Code.

## MULTIPLE DAMAGES

As alleged hereinabove, Plaintiff would show that the false, misleading and deceptive acts,

practices and/or omissions complained of herein were committed "knowingly" in that Defendants

had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or

omissions. Plaintiff further avers that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

Therefore, Plaintiff is entitled to recover multiple damages as provided by Title 6, Chapter 11, et. seq., of the Alabama Code.

IN ADDITION TO THE ABOVE STAY ORDERS ON PREVIOUS JUDGES ORDER HAS BEEN VIOLATED HERE" THE HOME WAS SOLD OUTSIDE THE LAWS THAT PROTECTED JACKSON UNDER FRAUD OF THE COURTS UNDER RULE 60 (b) AND 59 (b) And All Other Rules That Apply To This Case To Date" In Proceeding To Trial" Which Is A Violation Of The Plaintiff's Civil" Human" Constitutional And Human Rights" defrauding the courts and having cases dismissed prior to process of order corrupting the cases with the intent to rob the victim Jackson and they knowingly knew that they previous court orders Disallowed their claims" and they came back and stole this home outside of the bankruptcy" based upon the disallowed claims" under false pretense" and they knew this!

## MULTIPLE DAMAGES

As alleged hereinabove, Plaintiff would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions. Plaintiff further avers that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

Therefore, Plaintiff is entitled to recover multiple damages as provided by Title 6, Chapter 11, et. seq., of the Alabama Code.

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 117 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 1 of 36

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF ALABAMA

**CORLA JACKSON**
**Plaintiff,**

**V.**                                    **NO. 12-00111-KD-B**

**GMAC MORTGAGE**
**CORPORATION, ET AL**
**Defendants.**

## NEW DISCOVERY AND STATUS REPORT TO DATE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiff, CORLA JACKSON, files an STATUS REPORT
EARLY" THE DEFENDANTS COMMITTD CIVIL FRUAD" SAYING THE COURTS
DISMISSED HER CASE TO GET AN ILLEGAL RELEIF OF STAY" WHEN THAT
WAS NOT TRUE. THIS CASE IS VERY SERIOUS NOW" THE DEFENDANTS
ARE NOW IN VIOLATION FRO COMMITING CIVIL FRAUD AS WELL AS
FEDERAL STAY ORDERS.  SEE ATTACHMENTS.

10/31/2012

Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: 251.554.1785
corlajacksonvsgmacmortgage.info

FILED NOV 5 '12 PM 1:31 USDCALS

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 119 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 2 of 36

Residential Capital, LLC
c/o KCC
2335 Alaska Ave                    013559
El Segundo, CA 90245

PRF #51765                         PackID: 193559
Case No.: 12-12020                 NameID: 10854966
Svc: 1

Pro Se - Corla Jackson
CORLA JACKSON, PLAINTIFF V. GMAC MORTGAGE
CORPORATION.
13230 TOM GASTON RD
Mobile, AL 36695

**If you have any questions related to this notice, please call (888) 251-2914**

001KC0002_51765-L_domestic_200013559/081349

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 120 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 3 of 36

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:   (212) 468-8000
Facsimile:   (212) 468-7900
Gary S. Lee
Lorenzo Marinuzzi

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | ) ) ) | Chapter 11 |
| Debtors. | ) ) | Jointly Administered |

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM**

TO ALL PERSONS AND ENTITIES WITH CLAIMS AGAINST RESIDENTIAL CAPITAL, LLC OR ITS AFFILIATED ENTITIES THAT
ARE ALSO DEBTORS AND DEBTORS IN POSSESSION:

On August 29, 2012, the United States Bankruptcy Court for the Southern District of New York (the U.S. Bankruptcy Court") entered an order (the "Bar Date Order") establishing **November 9, 2012 at 5:00 p.m. (Prevailing Eastern Time)** (the "General Bar Date") as the last date and time for each person or entity (including individuals, partnerships, corporations, joint ventures, corporations, estates, trusts, and governmental units) to file a proof of claim against Residential Capital, LLC its affiliates that are also debtors and debtors in possession in those proceedings (collectively, the "Debtors"). Solely as to governmental units the Bar Date Order established **November 30, 2012 at 5:00 p.m. (Prevailing Eastern Time)** as the last date and time for each such governmental unit to file a proof of claim against the Debtors (the "Governmental Bar Date," and, together with the General Bar Date, the "Bar Dates").

The Bar Dates and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before May 14, 2012, the date on which the Debtors commenced cases under Chapter 11 of the United States Bankruptcy Code (the "Petition Date"), except for those holders of the claims listed in section 4 below that are specifically excluded from the General Bar Date filing requirement.

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 121 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 4 of 36



# CONSUMER BANKRUPTCY NEWS

## CRITICAL ISSUES AND WINNING STRATEGIES FOR BANKRUPTCY PROFESSIONALS

MAY 8, 2012 | VOLUME 22 | ISSUE 12

## $3.1 MILLION PENALTY FOR STAY VIOLATION

Wells Fargo Home Mortgage Inc. has been ordered to pay $3,171,154 in punitive damages for violating the automatic stay. Judge Elizabeth W. Magner said the lender's actions "were not only highly reprehensible, but its subsequent reaction on their exposure has been less than satisfactory." (*Jones v. Wells Fargo Home Mortgage Inc.* (In re Jones), 2012 WL 1155715 (Bankr. E.D. La. 4/5/12).)

The initial ruling in this case came in April 2007, when Judge Magner concluded that Wells Fargo willfully violated the automatic stay. The court found that Wells Fargo charged the Chapter 13 debtor unreasonable fees and costs, failed to notify the debtor that these post-petition charges were added to his account, failed to seek the court's approval of the charges, and applied payments received from the trustee to those charges. The court awarded the debtor $24,441.65 in damages.

A separate hearing was held in May 2007 to consider punitive damages. At that time, Wells Fargo offered to correct systemic problems with its accounting of home mortgage loans in bankruptcy. After negotiations with the court as to the nature and structure of those changes, the agreed upon new accounting procedures were embodied in a supplemental judgment and administrative order. The amended judgment also awarded the debtor $67,202.45 for attorney's fees and costs.

Wells Fargo then appealed the judgment, and withdrew its consent to the nonmonetary relief. The district court affirmed the bankruptcy court, increased the compensatory award to $170,824.96, and remanded for consideration of punitive damages.

In October 2009, the bankruptcy court imposed the changes to Wells Fargo's accounting procedures *in lieu* of punitive damages. In August 2010, the district court affirmed. This time the debtor appealed the denial of punitive relief to the 5th U.S. Circuit Court of Appeals.

Back in August 2007, another Chapter 13 debtor, Dorothy Stewart, objected to Wells Fargo's proof of claim alleging the same misconduct as Jones had asserted. Because Wells Fargo's conduct was in violation

4123943

IN THIS ISSUE:

$3.1 Million Penalty For Stay Violation:
  Reprehensible Conduct ........................ 2

Stay Violation
  Handwritten Notes Cause For Punitive Damages .................. 3

Filings
  Filings Down 12% To Start 2012 ...... 4
  Bankruptcy Filings To Drop This Year ........................................ 4

Leases
  Leases Get Assumed, No: Reaffirmed ................................ 4

Agency Action
  Court Bans Mortgage Relief Business ................................ 5

Fraud
  Former Attorney Indicted In Fraud Schemes ........................ 5
  Illinois Debtor Pleads Guilty To Fraud ................................ 5
  Leader Of $65 Million Fraud Scheme Pleads Guilty ............ 6

Case Notes .................................... 6

WEST

FILED NOV 5 '12 PM 1 :32 USDC ALS

MAY 8, 2012 , VOLUME 22 | ISSUE 12

CONSUMER BANKRUPTCY NEWS

of its original agreement, the bankruptcy court ordered the lender to audit every borrower with a case pending in the district for compliance with the new accounting procedures. The *Stewart* judgment was affirmed by the district court, but the 5th Circuit found that the bankruptcy court exceeded its authority by ordering Wells Fargo to conduct the audits.

The appeal in *Jones v. Wells Fargo* was heard by the 5th Circuit after it ruled in *Wells Fargo Bank N.A. v. Stewart (In re Stewart)*, 647 F.3d 553 (5th Cir. 2011). In light of *Stewart*, the 5th Circuit remanded the case for consideration of punitive damages.

## IMPOSITION OF PUNITIVE DAMAGES

Given the *Stewart* ruling, the bankruptcy court could not order Wells Fargo to audit all the lenders' files in the district to make certain that it was complying with proper accounting procedures. Because the relief previously awarded in this case, which was *in lieu* of punitive damages, Judge Magner concluded that the mandate on remand was to consider monetary relief.

"Punitive damages are warranted when the conduct in question is willful and egregious, or when the defendant acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. There is no question that Wells Fargo's conduct was willful. As previously decided, Wells Fargo clearly knew of Debtor's pending bankruptcy and was represented by bankruptcy counsel in this case. Wells

CONSUMER BANKRUPTCY NEWS

**David J. Light, Esq.**
Principal Attorney Editor

© 2012 Thomson Reuters. All rights reserved.

CONSUMER BANKRUPTCY NEWS (USPS  012-103) (ISSN 1058-3963) is published bi-weekly, 21 times a year, except one issue is omitted in January, May, July, November, and December. Published and copyrighted by Thomson Reuters, 610 Opperman Drive, P.O. Box 64526, St. Paul, MN 55164-0526. Periodical postage paid at St. Paul, MN. Please address correspondence to: David.Light@thomsonreuters.com. Customer Service: (800) 328-4880. POSTMASTER: Send address changes to Consumer Bankruptcy News, 610 Opperman Drive, P.O. Box 64526, St. Paul, MN 55164-0526.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

For authorization to photocopy, please contact the Copyright Clearance Center at 222 Rosewood Drive, Danvers, MA 01923, USA (978) 750-8400, fax (978) 646-8600 or West's Copyright Services at 610 Opperman Drive, Eagan, MN 55123, fax (651)687-7551. Please outline the specific material involved, the number of copies you wish to distribute and the purpose or format of the use.

Fargo is a [sophisticate]d lender with thousands of claims in bank[ruptcies] pending throughout the country and is famili[ar with the] provisions of the Bankruptcy Code, particular[ly] regarding the automatic stay," Judge Magner sa[id].

The imp[osition] of postpetition charges was not egregious, but Well[s Far]go's conduct afterward was. "Despite assessing postpetition charges, Wells Fargo withheld this fact from its borrower and diverted payments made by the trustee and Debtor to satisfy claims not authorized by the plan or Court. Wells Fargo admitted that these actions were part of its normal course of conduct, practiced in perhaps thousands of cases. As a result of the evidence presented, the Court also found Wells Fargo's actions to be egregious. There is also no question that Wells Fargo exhibited reckless disregard for the stay it violated."

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Supreme Court identified three factors for determining the propriety of a punitive damage award. The first factor is the degree of reprehensible conduct.

## REPREHENSIBLE CONDUCT

When the debtor filed for Chapter 13 relief, Wells Fargo did not adjust its account to show the debtor's loan as being current. The lender then added unapproved and undisclosed charges in excess of $24,000 to the debtor's account. When questioned about these charges by the debtor, Wells Fargo refused to explain its calculations or provide an amortization schedule. Even after the debtor sued, Wells Fargo failed to properly explain its calculations. After the bankruptcy court ruled against it, Wells Fargo fought the compensatory portion of the award despite never challenging the calculations of the overpayment, the court recounted.

"While every litigant has a right to pursue appeal, Wells Fargo's style of litigation was particularly vexing. After agreeing at trial to the initial injunctive relief in order to escape a punitive damage award, Wells Fargo changed its position and appealed," the court said.

The cost to the debtor was five years of litigation and hundreds of thousands of dollars in legal fees. It's a cost that Wells Fargo believes every Chapter 13 debtor should pay, as evidenced by its refusal to audit its pleadings or proofs of claim for errors, and its refusal to voluntarily correct any errors that come to light except through threat of litigation, the court said.

"Although its own representatives have admitted that it routinely misapplied payments on loans and improperly charged fees, they have refused to correct past errors. They stubbornly insist on limiting any change in their conduct prospectively, even as they seek to collect on loans in other cases for amounts owed in error."

© 2012 Thomson Reuters

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 124 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 6 of 36

CONSUMER BANKRUPTCY NEWS

MAY 8, 2012 | VOLUME 22 | ISSUE 12

Judge Magner said Wells Fargo's conduct was clandestine. When questioned by the debtor about the charges on his account, Wells Fargo clammed up. Only by suing the lender was the debtor and the court able to discover what Wells Fargo was doing. And then, they learned that the lender was doing it in other cases.

Litigation with Wells Fargo can be a lengthy and expensive process, as was demonstrated in this case. With 80 percent of Chapter 13 debtors in the district earning less than $40,000 per year, Judge Magner said the cost a struggling Wells Fargo is a burden many debtors can't bear.

"Wells Fargo has taken advantage of borrowers who rely on it to accurately apply payments and calculate the amounts owed. But perhaps more disturbing is Wells Fargo's refusal to voluntarily correct its errors. It prefers to rely on the ignorance of borrowers or their inability to fund a challenge to its demands, rather than voluntarily relinquish gains obtained through improper accounting methods. Wells Fargo's conduct was a breach of its contractual obligations to its borrowers. More importantly, when exposed, it revealed its true corporate character by denying any obligation to correct its past transgressions and mounting a legal assault to ensure it never had to. Society requires that those in business conduct themselves with honesty and fair dealing. Thus, there is a strong societal interest in deterring such future conduct through the imposition of punitive relief."

Given that it had already cost the debtor $292,673.84 to litigate his claim, the court found that punitive damages of $3,171,154 were warranted to deter Wells Fargo from engaging in similar conduct in the future. The court concluded that this award satisfied the final two *Gore* factors of bearing a reasonable relationship to the harm caused, and being within the range of penalties that a sophisticated lender would expect to face for its misconduct.

## STAY VIOLATION

## HANDWRITTEN NOTES CAUSE FOR PUNITIVE DAMAGES

Sending billing statements to the debtor was a willful violation of the automatic stay. Adding handwritten notes that were increasingly angry and malicious called for the imposition of punitive damages. (*In re Coopersmith*, 2012 WL 1143801 (Bankr. E.D.N.C. 4/4/12).)

The debtors owned and operated IPS Construction Inc., a company that provided general construction contracting services. IPS purchased some of its building supplies from M.G. Brown, a division of Foreman's Inc., on

credit. The debtor-husband personally guaranteed payment on the M.G. Brown account.

After IPS defaulted on the account, M.G. Brown obtained a state court judgment for $4,951.16. The debtor-husband attended the hearing, and asked for an accounting of the amount owed. M.G. Brown did not provide that accounting, and the debtor appealed.

The matter was referred to arbitration. The debtor did not attend the arbitration hearing, so the arbitrator entered judgment in M.G. Brown's favor in the amount of $4,951.16 plus a $50 arbitration fee.

When the debtors filed for Chapter 13 relief on June 1, 2011, they listed M.G. Brown as a creditor. On June 30, M.G. Brown, through Clay B. Foreman Sr., president of Foreman's Inc., mailed an account statement to IPS. Foreman handwrote on the invoice: "Added the $50.00 Arbitration fee to your total as stated by judge @ court hearing you have paid attorneys to delay paying your M.G. Brown bill! Your choice as I'm certain attorneys appreciate it!"

The debtors contacted their lawyer, who sent a letter to M.G. Brown explaining that the debtors filed for bankruptcy so they were protected from attempts to collect prepetition claims. M.G. Brown said it did not receive the letter.

In August 2011, M.G. Brown sent a second invoice to IPS. This time it was for $5,053.37. Again, Foreman included a handwritten note. "'Promised to make monthly payments!' but Spent MONEY ON ATTORNEY Spent MONEY ON COURT SYSTEM Result = Expect you will pay attorney—up front—to help you file bankruptcy! Clay Foreman"

In September 2011, M.G. Brown mailed a third invoice to IPS. This time it was for $5,105.35. Foreman added: "You have paid attorneys—UP FRONT—instead of paying portion monthly! Your statement at Small Claim Court of sort, ... accepting your offer of paying a little MORE when you could rings hollow as I suspected! Judgment recorded PRIOR to your filing bankruptcy."

The debtors said the invoices caused them to experience anxiety and sleepless nights. The debtors sued M.G. Brown alleging that the company willfully violated the automatic stay. M.G. Brown responded that any violation of the stay was inadvertent, and that the bills were not sent to the debtors but were sent to their company, which the debtors operated from their home.

At the hearing, Foreman testified that neither M.G. Brown nor Foreman's Inc. had a procedure for handling bankrupt accounts. Foreman said he was unaware of the debtors' bankruptcy when he wrote the notes on the invoices. His references to paying attorneys were based on his assumption that this was what the debtors were doing.

3

© 2012 Thomson Reuters

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 125 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 7 of 36

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CORLA JACKSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 12-00111-KD-B |
| | ) | |
| GMAC MORTGAGE, LLC, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant GMAC Mortgage, LLC's[1] Suggestion of
Bankruptcy (Doc. 22), which indicates that said entity has filed a Chapter 11 bankruptcy in the
Southern District of New York.

The Court's review of the docket of the U.S. Bankruptcy Court for the Southern District of
New York indicates that Defendant GMAC Mortgage, LLC filed a Chapter 11 Voluntary Petition for
Bankruptcy on May 14, 2012 (Case #12-12032), which was then consolidated (to be jointly
administered) with bankruptcy case #12-12020 filed by Residential Capital, LLC.  Pursuant to 11
U.S.C. § 362, this filing operates as an automatic stay of this action against Defendant GMAC
Mortgage, LLC. Accordingly, it is **ORDERED** that all proceedings in this action against Defendant
Mortgage, LLC are hereby **STAYED** pending further Order of this Court. It is further **ORDERED**
that the parties shall jointly file a Status Report, to advise the Court as to the status of the bankruptcy
proceedings and this litigation, on or before **November 30, 2012.**

**DONE** and **ORDERED** this the 31st day of **May 2012.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

1  *Pro se* Plaintiff incorrectly named the Defendant as "GMAC Mortgage Corporation" in her pleadings.

1

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 8 of 36
to Declaration   Pg 126 of 164



**AlaFile E-Notice**

02-DV-2012-902844.00

To:  CORLA JACKSON
13230 TOM GASTON ROAD
MOBILE, AL 36695

# NOTICE OF ELECTRONIC FILING

IN THE DISTRICT COURT OF MOBILE COUNTY, ALABAMA

GMAC MORTGAGE, LLC V. CORLA JACKSON
02-DV-2012-902844.00

The following complaint was FILED on 10/3/2012 4:41:55 PM

Notice Date:     10/3/2012 4:41:55 PM

JOJO SCHWARZAUER
CIRCUIT COURT CLERK
MOBILE COUNTY, ALABAMA
205 GOVERNMENT STREET
MOBILE, AL 36644

251-574-8525
jo.schwarzauer@alacourt.gov

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 127 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 9 of 36

# EXHIBIT A



Help us improve our site. **Tell us what you think!**

**CenturyLink** Business

Corla Jackson
1.1 GB of unlimited

Search        ☑ Email ▾    Search    Save Search    Advanced Search        ⓦ Help    ⏻ Log Out

📁 **Folders**
- 📥 **Inbox (757)**
- 📧 Sent
- 📝 **Drafts (27)**
- 🗑 Spam
- 🗑 Trash
- 📁 2012 Jan-Feb
- 📁 February 2012
- 📁 Good Mail Mkt
- 📁 PRESIDENT
- 📁 WILD APRICOT

**Searches**

**Tags**

**WebApp**

October 2012

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 30 | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |

📬 Mail    👤 Address Book    📅 Calendar    📋 Tasks    ☐ Preferences    ✉ FW: 12-12020-mg

🖅 New    ↻ Get Mail    🗑 Delete    ↩ Reply    ↪ Reply to All    ➡ Forward    🚫 Spam

⊗ Close | **FW: 12-12020-mg Order Re: Motion to Allow**                        October 4, 2012 4:58 PM

▾ From: 👤 "Aaron M. Klein" <AKlein@mofo.com>

To: "misscrj@centurylink.net" <misscrj@centurylink.net>

Cc: "James A. Newton" <JNewton@mofo.com>; "Stefan W. Engelhardt" <sengelhardt@mofo.com>;
"Norman S. Rosenbaum" <NRosenbaum@mofo.com>

📎 1720 - Corla Jackson Order.pdf (23 KB) Download | Remove

🛈 Objects are not highlighted due to message size. Highlight objects.

Ms. Jackson,

Please see the attached order entered by the Bankruptcy Court regarding your motion in the Residential Capital, LLC
bankruptcy cases.

Regards,

Aaron

**From:** Guido, Laura
**Sent:** Thursday, October 04, 2012 5:51 PM
**To:** Klein, Aaron M.; Kline, John T.
**Subject:** RE: 12-12020-mg Order Re: Motion to Allow

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 129 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 11 of 36
12-12020-mg   Doc 1720   Filed 10/04/12   Entered 10/04/12 15:12:57   Main Document
Pg 1 of 4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | |
| | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.* | |
| | |
| Debtors. | Jointly Administered |

## ORDER DENYING CORLA JACKSON MOTION IN REFERENCE TO STAY ORDER VIOLATIONS AND FRAUD BY GMAC

On August 14, 2012, Corla Jackson ("Jackson") filed a motion in this Court appearing to allege that the Debtors violated the automatic stay in Jackson's chapter 13 case that was pending but is now dismissed in the United States Bankruptcy Court for the Southern District of Alabama. (*Motion in Reference to Stay Order Violations by GMAC - GMAC Mortgage Violated/Stay Order Violation Re: GMAC Mortgage Fabricated Documents and Sold Jackson Home Illegally*, ECF Doc. # 1229). Jackson alleges that the debtor GMAC Mortgage Corp. ("GMAC Mortgage") illegally foreclosed on her house in Alabama through non-judicial foreclosure.

It is not clear what relief Jackson now seeks from this Court. Debtors opposed Jackson's motion. (ECF Doc. # 1499). The motion was set for hearing on the Court's calendar for September 27, 2012. On September 18, 2012, Jackson filed a motion seeking to adjourn *all* of the numerous hearings scheduled in *Residential Capital* for September 27, 2012. (ECF Doc. # 1517). That motion was denied. (ECF Doc. # 1549). The hearing on Jackson's motion went forward on September 27, 2012, but Jackson did not appear in person or by telephone. For the reasons explained below, Jackson's current motion (ECF Doc. # 1229) is **DENIED**.

FILED NOV 5 '12 PM 1 :33 USDC ALS

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 131 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 12 of 36
12-12020-mg    Doc 1720    Filed 10/04/12    Entered 10/04/12 15:12:57    Main Document
Pg 2 of 4

## I.    BACKGROUND

Jackson had previously filed a motion seeking to lift the automatic stay to permit her to proceed with a damages action she filed against GMAC Mortgage in Alabama state court. (ECF Doc. # 856). That motion was denied on August 16, 2012 in a written Memorandum Opinion and Order Denying the Jackson Motion to Lift the Automatic Stay. ("Jackson Opinion," ECF Doc. # 1184). In the Jackson Opinion, the Court stated that "Jackson's allegations about misconduct by GMAC Mortgage are serious, and the Court's decision that the stay remains in place reflects no judgment that her claims lack merit. Like many others asserting claims against the Debtors, Jackson cannot jump to the head of the line to pursue her damages claims in another forum." *Id.* at 2. Because Jackson remains in possession of the house, the Debtors acknowledged that unless Jackson voluntarily relinquishes possession of the property, a judicial proceeding in Alabama would need to be brought to evict her. "Jackson can assert any *defenses* to eviction permitted by state law if and when anyone seeks to recover possession of the Property." *Id.* at 2 n.2. Additionally, the Court made clear that Jackson can file a proof of claim in this case—"Damages claims against the Debtors, as in the Jackson Litigation, are the usual grist for the bankruptcy claims allowance process . . . ." *Id.* at 9.

In her current motion, Jackson makes two allegations against Debtor GMAC Mortgage. First, Jackson alleges that GMAC Mortgage violated the automatic stay in her chapter 13 case in the Southern District of Alabama when GMAC Mortgage foreclosed on her house (the "Property"). (ECF Doc. # 1229). Second, Jackson alleges that GMAC Mortgage used fraudulent documentation and illegal means to foreclose on the Property. *Id.*

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 132 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 13 of 36
12-12020-mg   Doc 1720   Filed 10/04/12   Entered 10/04/12 15:12:57   Main Document
Pg 3 of 4

## II.   DISCUSSION

As Jackson is a *pro se* litigant, the Court generally applies a less rigorous standard in reviewing pleadings to determine whether there is any basis for relief, even if a request for relief is not clearly spelled out in the motion. Having reviewed not only Jackson's pleadings filed in this case, but also the files and records of Jackson's three previous chapter 13 cases—now all dismissed—filed in the Southern District of Alabama, the Court concludes that Jackson's current motion must be denied. The circumstances remain as they were after the Court denied Jackson's lift stay motion. If Jackson believes she has a claim for damages against GMAC Mortgage, she can file a proof of claim in this bankruptcy case. If an action is filed against her in state court in Alabama to recover possession of the Property, she can defend the action on any basis permitted by Alabama law, including a defense of wrongful foreclosure. If Jackson had any claim for violation of the automatic stay in her chapter 13 case, the issue should have been pursued in the Alabama bankruptcy court before the chapter case was dismissed.

Because of the serious nature of the allegations made by Jackson, the Court has nevertheless reviewed the docket in her most recent chapter 13 case to determine whether there appears to be *any* basis for relief in this case. The Court has also considered information provided to this Court by Debtors' counsel. The docket in Jackson's chapter 13 case strongly suggests that no stay violations occurred.[1] If Jackson believes she has been damaged by GMAC

---

[1]     On April 4, 2011, Corla Jackson filed her third chapter 13 bankruptcy petition in the Southern District of Alabama. *In re Carla R. Jackson*, Case No. 11-01545 (Bankr. S.D. Ala. Apr. 18, 2011) (ECF Doc. # 1). On July 25, 2011, GMAC Mortgage moved for an order granting relief from the stay. (ECF Doc. # 42.) On August 8, 2011, the court conditionally denied the relief. (ECF Doc. # 59.) On October 11, 2011, the stay was lifted when Jackson failed to make mortgage payments pursuant to the conditional denial order. (ECF Doc. # 70.) On October 14, 2011, Jackson moved to reinstate the stay. (ECF Doc. # 72.) On December 8, 2011, the court conditionally denied the relief, but the stay was reinstated until GMAC Mortgage satisfied two conditions. (ECF Doc. # 89.) First, GMAC had to ensure that "[a] copy of the pre-petition pay history [was] provided to Counsel for the Debtor." *Id.* Second, "[c]ounsel for [GMAC] confirm[ed] what interest [GMAC] ha[d] in the loan." *Id.* Counsel for Debtors has represented to the Court that on December 5, 2011, GMAC Mortgage sent an email to Jackson's counsel with information satisfying the first condition. On December 13, 2011, GMAC Mortgage filed an affidavit satisfying the

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 133 of 164
Case 1:12-cv-00111-RD-B    Document 90    Filed 10/31/12    Page 14 of 36
12-12020-mg    Doc 1720    Filed 10/04/12    Entered 10/04/12 15:12:57    Main Document
Pg 4 of 4

Mortgage's conduct, she may file a Proof of Claim in this case prior to the November 9, 2012

Bar Date and pursue her claim through the claims allowance process.

## CONCLUSION

Based on the foregoing, the *Motion in Reference to Stay Order Violations by GMAC -*

*GMAC Mortgage Violated/Stay Order Violation Re: GMAC Mortgage Fabricated Documents*

*and Sold Jackson Home Illegally* (ECF Doc. # 1229) is **DENIED**.

**IT IS SO ORDERED.**

Dated:    October 4, 2012
          New York, New York

*Martin Glenn*

MARTIN GLENN
United States Bankruptcy Judge

---

second condition. (ECF Doc. # 91, 92.) On September 27, 2012, an order dismissing Jackson's chapter 13 case was
entered for "failure to comply with a consent order." (ECF Doc. # 116.)

4

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 134 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 15 of 36

| State of Alabama<br>Unified Judicial System<br><br>Form C-34  Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>02-DV-2012-902844.00 |
|---|---|---|

IN THE CIVIL COURT OF MOBILE, ALABAMA
GMAC MORTGAGE, LLC V. CORLA JACKSON

CORLA JACKSON, 13230 TOM GASTON ROAD, MOBILE, AL 36695

NOTICE TO _____

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY N. JOHN RUDD, JR.

WHOSE ADDRESS IS 1587 N.E. EXPRESSWAY, ATLANTA, GA 30329 _____

THE ANSWER MUST BE MAILED WITHIN 14 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.
TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☑ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☐ Service by certified mail of this summons is initiated upon the written request of _____
   pursuant to the Alabama Rules of the Civil Procedure

10/3/2012 4:41:55 PM _____        /s JOJO SCHWARZAUER _____

Date                                     Clerk/Register                                     By

☐ Certified mail is hereby requested     _____
                                         Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____        _____

Date                                     Server's Signature

State of Alabama
Unified Judicial System
12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
Case 1:12-cv-0~~COVER SHEET~~ument Pg 135 of 164 1 31/12

Form ARCiv-93   Rev.6/99

Case Number:
02-DV-2012-

ELECTRONICALLY FILED
10/3/2012 4:41 PM
DV-2012-902844.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

**COVER SHEET**
**DISTRICT COURT - CIVIL CASE**
(Not For Domestic Relations Cases)

Date of Filing:
10/03/2012

## GENERAL INFORMATION

IN THE DISTRICT OF MOBILE COUNTY, ALABAMA
GMAC MORTGAGE, LLC v. CORLA JACKSON

**First Plaintiff:** ☑ Business ☐ Individual    **First Defendant:** ☐ Business ☑ Individual
☐ Government ☐ Other    ☐ Government ☐ Other

**NATURE OF SUIT:**

☐ CTEM-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ AUTO-Autodamages/Subrogation/Promissory Note
☐ DISP-Non-Account Dispute: Roomate/Neighbor/Animal
☑ EVIC-Eviction
☐ GDAM-General Damages
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ RECP-Recover Property
☐ DVXX-Miscellaneous District Civil Case

☐ TOXX - Other: _____

**ORIGIN:**    F ☑ INITIAL FILING    O ☐ OTHER

R ☐ REMANDED    _____

**RELIEF REQUESTED:**    ☐ MONETARY AWARD REQUESTED    ☑ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**    RUD003    10/3/2012 4:41:12 PM    /s/ N. JOHN RUDD, JR.

**MEDIATION REQUESTED:**    ☐ Yes    ☑ No    ☐ Undecided

ELECTRONICALLY FILED
10/3/2012 4:41 PM
DV-2012-902844.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

State of Alabama
Unified Judicial System

Form C-59    Rev. 08/10
(Front)

## STATEMENT OF CLAIM
### Eviction/Unlawful Detainer

Sections 35-9A-101, et seq., and 6-6-310, et seq., *Ala. Code 1975*

Case Number

IN THE ___DISTRICT___ COURT OF ___MOBILE___ COUNTY, ALABAMA

GMAC Mortgage, LLC                          v.        Corla Jackson

**PLAINTIFF(S)**                                              **DEFENDANT(S)**

ADDRESS: 1587 Northeast Expressway             ADDRESS: 13230 Tom Gaston Road

Atlanta, GA 30329                                      Mobile, AL 36695

PLAINTIFF'S ATTORNEY (If applicable): N. John Rudd, Jr.

ADDRESS: 1587 Northeast Expressway, Atlanta, GA 30329

## COMPLAINT

1.  Plaintiff(s) demands the right to possession from the defendant(s) of the following described residential, commercial or other real property located at: 13230 Tom Gaston Road, Mobile, AL 36695

2.  Defendant(s) no longer has the right to possession because: Defendant entered the property peaceably on or about 05/26/2004 but has unlawfully kept property from Plaintiff after demand.

3.  Defendant(s) right of possession has been lawfully terminated by written notice.
4.  Plaintiff(s) also claims the sum of $ 0.00 ___ plus court costs from the Defendant(s) consisting of: unpaid rent and late charges, plus attorney's fees (if applicable) and other charges.
5.  Plaintiff(s) also claims future rent and late charges, plus attorney's fees (If applicable) and other charges accruing through the date Plaintiff(s) obtains possession of the above described property.

Clerk                                          Plaintiff or Attorney Signature

Address: _____              Phone Number: ( 404 ) 417-3252

                                               Attorney Code: RUD003

### NOTICE TO DEFENDANT(S) - READ CAREFULLY

This eviction or unlawful detainer complaint must be answered by you within seven (7) days after these papers were either served or posted at the leased premises as provided by law. Your answer must be received by the Court Clerk at the above address within the above seven (7) days. A copy of the answer must be sent to the Plaintiff(s) or Plaintiff(s)' Attorney at the above address. If you file an answer, a notice of trial will be mailed to you; otherwise, a judgment may be entered against you. If you were personally served and fail to file an answer within fourteen (14) days from the date of service, a money judgment may be entered against you.

Court Record (Original)            Plaintiff (Copy)            Defendant (Copy)

| Form C-59 (Back) Rev. 08/10 | STATEMENT OF CLAIM Eviction/Unlawful Detainer |
|---|---|

## SUMMONS

To any Sheriff or any person authorized by Rule 4 (I) (1) (A) or (B) of the Alabama Rules of Civil Procedure to effect Service in the State of Alabama: You are hereby commanded to serve the Summons and Complaint in this action upon the defendant named in the style of the Complaint and make proper return to this court.

Date _____                    _____

Date Received _____           _____

                                                 Clerk

---

**PERSONAL SERVICE:** served on the defendant(s) named _____

DATE SERVED _____                     Server must complete:

SHERIFF/CONSTABLE _____                _____
                                                 Print Name

PROCESS SERVER _____                   _____
                                                 Address

                                                 _____

                                                 Phone Number

---

**SERVICE BY DELIVERY TO PERSON SUI JURIS RESIDING ON THE PREMISES:** served the defendant(s) named
_____ by delivering a copy of the Summons and
Complaint on a person who is sui juris residing on the premises described in the Complaint.

DATE SERVED _____

_____ served for _____ is sui juris and is a resident of the
    (Person Served)                      (Defendant(s))
premises described in the Complaint.

                                                 Server must complete:
SHERIFF/CONSTABLE _____                _____
                                                 Print Name

PROCESS SERVER _____                   _____
                                                 Address

                                                 _____

                                                 Phone Number

---

**POSTING OF SUMMONS AND COMPLAINT:** served on the defendant(s) named _____
_____ by posting a copy of the Summons and Complaint on the door of the
premises described in the Complaint, and A COPY OF THE SUMMONS AND COMPLAINT WAS MAILED BY FIRST CLASS
MAIL ON THE FOLLOWING DATE _____ that is not later than the close of the next business day following
the aforesaid posting. This complaint was posted after first having attempted to personally serve the defendant and having tried
to serve someone else residing on the premises who is Sui Juris.

DATE SERVED _____                     Server must complete:

SHERIFF/CONSTABLE _____                _____
                                                 Print Name

PROCESS SERVER _____                   _____
                                                 Address

                                                 _____

                                                 Phone Number

---

**SERVICE BY CERTIFIED MAIL:** This service by certified mail of the summons and complaint is initiated upon the request of
Plaintiff pursuant to Rule 4 (I) (2) of the Alabama Rules of Civil Procedure.

Date Requested _____                  Date Mailed _____

Return Receipt Date _____             _____

                                                 Clerk

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 138 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 19 of 36

## IN THE CIRCUIT COURT OF MOBILE COUNTY ALABAMA

**CORLA JACKSON**         §
**Plaintiff,**            §
                          §
**V.**                    §         **NO. 02-DV-2012-902844.00**
                          §
**GMAC MORTGAGE**         §
**CORPORATION, ET AL**    §
                          §
**Defendants.**           §


## <u>ANSWER TO EVICTION /UNLAWFUL DETAINER</u>


### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Plaintiff, CORLA JACKSON, THIS CASE IS STAYED IN

THE UNTIED STATES DISTRICT COURTS FOR THE SOUTHERN DIVISION OF

ALABAMA AND PROOF OF CLAIM HAS NOT BEEN APPRVED YET" WITH

DETAIL LISTED BELOW.   Factual Background On This Case.


For many years Corla Jackson (hereinafter referred to as "Ms. Jackson,") has been

fighting for legal justice against, GMAC Mortgage Corporation also known as GMAC

MORTGAGE LLC" who robbed her under false pretense" defrauding the courts" with

the intent to rob her of her home, lands and money under on a fabricated notes they made

up" knowing they did not own an assignment or the original note on Jackson property.

The loan numbers the Plaintiff Fabricated did not match the Defendants Original note'

and they knew this" and continued to defraud the courts with the intent to rob the

plaintiff.  Plaintiff is in violation of FEDERAL STAY ORDERS' committing civil fraud

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 139 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 21 of 36

On November 30, 2011, Financial Guaranty Insurance Co. (FGIC) filed three lawsuits in New York State court against Ally Financial Inc.'s mortgage units. The complaints allege that the defendants committed fraud in order to obtain bond insurance, and committed other breaches of their insurance contracts, related to the sale of $3.8 billion in mortgage-backed securities....

The Defendants note was secured and backed by her policy's from a disaster and further damages were caused by the Plaintiff which totaled her home" when this home is" backed by Security's in a pool of loans" by defendants original mortgage company (Option One Mortgage)" that was satisfied" paid in full and never late.

The Defendant" Jackson Only had one mortgage and it was with (Option One Mortgage) which marked her note as paid in full and never late" secured by her policy's and the lenders policy's and the Plaintiff knew this and wanted the Defendants assets to back notes by security's for profits using the Defendants assets and they got caught" and is pending trial" and the Defendants cases is STAYED' and the PLAINTIFF' committed fraud in New York to get an illegal court order denying Defendant Relief of Stay Under False Pretense" telling the courts that her case was dismissed in the United States District Courts For The Southern Division Of Alabama In A Motion" When It Was Not. They Did Not Forward The Defendant A Copy Of That Motion When They Defrauded The Courts In New York" Getting An Illegal Judgment based Upon Fraud!

1.    The Courts Started Defendants Case Over Again As Well As All The Other Victims Giving Them Time To File New Proofs Of Claims" Because The Plaintiff's Had Committed Fraud and their could be other victims in the same situation"

FILED NOV 5 '12 PM 1 :34 USDCALS

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 141 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 22 of 36

and they cases need to be recalled" to allow the courts" Under Rule 59(a), made

applicable to bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 9023, a

court has discretion to reopen a judgment if one has been entered, take additional

testimony, amend findings of fact and conclusions of law, or make new findings and

conclusions [citations omitted]. Giving the Victims and others time to submit proof of

claims by a deadline dated November 9, 2012. Jackson is under court order to provide a

proof of claim against the Plaintiff's by November 9, 2012" and they knew this.


2.    This is why they are in this court to go around that order giving Jackson

time to submit her proof of claim by court order by November 9, 2012" on the grounds

the Plaintiffs committed fraud" violation of previous court orders disallowing their

claim" and violation of federal court orders that stayed Jackson case" until after her proof

of claim is submitted and approved by the courts addressing all the issues including"

fraud the Plaintiff's committed saying that the Defendant" Jackson cases was dismissed

in Alabama by the United States District Court For The Southern Division Of Alabama"

in order to get a Relief of Stay Granted Under False Pretense" and they got caught.


The Plaintiff's knew the Defendant Jackson note was satisfied" and she was forced to

purchase all those policy's prior to close of escrow in event something like this happened

to her she was secured" and they wanted her assets at her expense for profits" trying to be


The Defendant Jackson note was secured by lenders and home owners policy's and

more" and the Plaintiff's robbed the Defendant" and this is what they are hiding" refusing

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 142 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 23 of 36

to produce the original note" the original loan documents the original assignment" the original loan documents period that showed the Defendants original signature on their fabricated note they made up with the intent to rob her. What they did and has provided the courts copies of Jackson note and fabricated documents" because they did not own a note" or an assignment they are using copy's of Jackson note' attached to their fabricated note" to defraud the courts" and they know this. They did not even own the assignment when they caused Jackson all the damages they caused her" knowing their fake arrearages was disallowed and reduced to the amount paid in a bankruptcy that was discharged on January 20, 2010" and the Judges order even state in black and white" they never responded to her orders" prior to March 1, 2006" with her verifying a mortgage agreement between the Plaintiff and the Defendant.

The Plaintiff has committed fraud" and now they are in violation of Federal Stay Order" In the United States District Courts and in New York On Proof of Claim that has not yet been filed" as of today's date. The Courts gave Jackson until" November 9, 2012 to file her proof of claim" and approve orders" after the Plaintiff's has committed fraud again" and did not give the Defendant" a copy of the motion they defrauded the courts with" in order to get a Relief of Stay Granted" by FRAD. This is a very serious matter" this is why they are in this court trying to avoid the Federal Courts now" and they know it.

The Plaintiff is now know for committing fraud" and defrauding the Federal Courts to get a Relief of Stay Granted is a criminal offense and more" and they know this.

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 143 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 25 of 36

*Alabama Rules of Civil Procedure*, showing as follows

Rule 60(b) (2) (3) (4) (5) (6) provides in pertinent part:

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."

The Court is committed to the proposition that . a [trial] court is not without jurisdiction to exercise its inherent power to set aside and vacate a judgment because of **supervening invalidity based on fraud practiced on the court by a party in the procurement of a judgment**," Brice v. Brice, 340 So.2d 792, 795 (Ala.1976), **a trial court is without power to so act once it has lost jurisdiction over the case.**

**Federal courts** also have **jurisdiction over matter. A court must have** jurisdiction **to enter a valid, enforceable"** this case is stayed by the United States

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 144 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 20 of 36

to get an order granted under relief of stay" which is a federal offense" under UNITED

STATES FEDERAL LAWS.

See In re, Jones v. Wells Fargo Home Mortgage, Adv. No. 06-01093 (Bankr. E.D. La. August 29, 2007. The Court found Wells Fargo guilty of violating the automatic stay by improperly assessing post-petition charges in a Chapter 13 case, and diverting payments made by the Chapter 13 trustee to satisfy claims not authorized by the Chapter 13 plan or the Court. Further, the Court found that *this conduct was the normal court of business for Wells Fargo in perhaps thousands of consumer cases*. The Court awarded attorneys fees and expenses of $67,202.45 and considered a multi-million dollar punitive damages award due to the apparent widespread misconduct. However, Wells Fargo proposed changes (noted below, after the jump) in the way it does business in lieu of sanctions.

Further, Wells Fargo agreed to memorialize its proposal into an order of the Court, "*enforceable in any case pending or subsequently filed before any court in the country.*" The Court agreed that this was an appropriate result and would enter an order setting forth this agreement, such that the Court could continue oversight over Wells Fargo's implementation of the agreement. **Jones v. Wells Fargo Home Mortgage Inc. (In re Jones), 2012 WL 1155715 (Banker. E.D. La. 4/5/12.**

**The United States District Court For The Southern Division Of Alabama Stayed Jackson Case. When a bankruptcy court cannot adjudicate pre-petition claims, the stay should be modified to permit the action to continue to the original court. See In re Cooke, 2007 WL 2102687 at *3. Also See" Fraud Under Rule 60(b) and (59 (b).**

# Courts require eidence of the entire chain of custody of the mortgage and note. The claimant must prove initially "that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor." Parrish , 326 B.R. at 719

## ASSIGNMENT & TITLE FRAUD/ SLANDER OF TITLE,

On March 8, 2012, Financial Guaranty Insurance Co. (FGIC) sued Ally Financial (Ally) and two subsidiaries, including Residential Funding Company LLC, alleging that the defendants fraudulently induced FGIC to insure $693 million in residential mortgage-backed securities. FGIC alleges that Ally misrepresented the quality of the loans backing the RMBS, the manner in which the loans

On November 30, 2011, Financial Guaranty Insurance Co. (FGIC) filed three lawsuits in New York State court against Ally Financial Inc.'s mortgage units. The complaints allege that the defendants committed fraud in order to obtain bond insurance, and committed other breaches of their insurance contracts, related to the sale of $3.8 billion in mortgage-backed securities....

The Defendants note was secured and backed by her policy's from a disaster and further damages were caused by the Plaintiff which totaled her home" when this home is" backed by Security's in a pool of loans" by defendants original mortgage company (Option One Mortgage)" that was satisfied" paid in full and never late.

The Defendant" Jackson Only had one mortgage and it was with (Option One Mortgage) which marked her note as paid in full and never late" secured by her policy's and the lenders policy's and the Plaintiff knew this and wanted the Defendants assets to back notes by security's for profits using the Defendants assets and they got caught" and is pending trial" and the Defendants cases is STAYED' and the PLAINTIFF' committed fraud in New York to get an illegal court order denying Defendant Relief of Stay Under False Pretense" telling the courts that her case was dismissed in the United States District Courts For The Southern Division Of Alabama In A Motion" When It Was Not. They Did Not Forward The Defendant A Copy Of That Motion When They Defrauded The Courts In New York" Getting An Illegal Judgment based Upon Fraud!

1.      The Courts Started Defendants Case Over Again As Well As All The Other Victims Giving Them Time To File New Proofs Of Claims" Because The Plaintiff's Had Committed Fraud and their could be other victims in the same situation"

12-12020-mg  Doc 5100-16  Filed 09/18/13  Entered 09/18/13 14:29:59  Exhibit M
to Declaration  Pg 146 of 164
Case 1:12-cv-00111-KD-B  Document 30  Filed 10/31/12  Page 22 of 36

and they cases need to be recalled" to allow the courts" Under Rule 59(a), made

applicable to bankruptcy proceedings by Federal Rules of Bankruptcy Procedure 9023, a

court has discretion to reopen a judgment if one has been entered, take additional

testimony, amend findings of fact and conclusions of law, or make new findings and

conclusions [citations omitted]. Giving the Victims and others time to submit proof of

claims by a deadline dated November 9, 2012. Jackson is under court order to provide a

proof of claim against the Plaintiff's by November 9, 2012" and they knew this.


2.      This is why they are in this court to go around that order giving Jackson

time to submit her proof of claim by court order by November 9, 2012" on the grounds

the Plaintiffs committed fraud" violation of previous court orders disallowing their

claim" and violation of federal court orders that stayed Jackson case" until after her proof

of claim is submitted and approved by the courts addressing all the issues including"

fraud the Plaintiff's committed saying that the Defendant" Jackson cases was dismissed

in Alabama by the United States District Court For The Southern Division Of Alabama"

in order to get a Relief of Stay Granted Under False Pretense" and they got caught.


The Plaintiff's knew the Defendant Jackson note was satisfied" and she was forced to

purchase all those policy's prior to close of escrow in event something like this happened

to her she was secured" and they wanted her assets at her expense for profits" trying to be


The Defendant Jackson note was secured by lenders and home owners policy's and

more" and the Plaintiff's robbed the Defendant" and this is what they are hiding" refusing

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 147 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 23 of 36

to produce the original note" the original loan documents the original assignment" the
original loan documents period that showed the Defendants original signature on their
fabricated note they made up with the intent to rob her. What they did and has provided
the courts copies of Jackson note and fabricated documents" because they did not own a
note" or an assignment they are using copy's of Jackson note' attached to their fabricated
note" to defraud the courts" and they know this. They did not even own the assignment
when they caused Jackson all the damages they caused her" knowing their fake
arrearages was disallowed and reduced to the amount paid in a bankruptcy that was
discharged on January 20, 2010" and the Judges order even state in black and white" they
never responded to her orders" prior to March 1, 2006" with her verifying a mortgage
agreement between the Plaintiff and the Defendant.

The Plaintiff has committed fraud" and now they are in violation of Federal Stay Order"
In the United States District Courts and in New York On Proof of Claim that has not yet
been filed" as of today's date. The Courts gave Jackson until" November 9, 2012 to file
her proof of claim" and approve orders" after the Plaintiff's has committed fraud again"
and did not give the Defendant" a copy of the motion they defrauded the courts with" in
order to get a Relief of Stay Granted" by FRAD. This is a very serious matter" this is
why they are in this court trying to avoid the Federal Courts now" and they know it.

The Plaintiff is now know for committing fraud" and defrauding the Federal Courts to get
a Relief of Stay Granted is a criminal offense and more" and they know this.

FILED NOV 5 '12 PM 1:35 USDCALS

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 149 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 24 of 36

*Alabama Rules of Civil Procedure*, showing as follows: 59 (b) and (60) (b)

    3. Rule 60(b) provides, in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or a party's

legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence

which by due diligence could not have been discovered in time to move for a new trial

under Rule 59(b);

    4.      Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or

extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is

void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment

upon which it is based has been reversed or otherwise vacated, or it is no longer equitable

that the judgment should have prospective application; or (6) any other reason justifying

relief from the operation of the judgment. The motion shall be made within a reasonable

time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment,

order, or proceeding was entered or taken."

    5.      This Court is committed to the proposition that . a [trial] court is not

without jurisdiction to exercise its inherent power to set aside and vacate a judgment

because of supervening invalidity based on fraud practiced on the court by a party in the

procurement of a judgment," Brice v. Brice, 340 So.2d 792, 795 (Ala.1976), a trial court

is without power to so act once it has lost jurisdiction over the case. [1]

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 150 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 25 of 36

*Alabama Rules of Civil Procedure*, **showing as follows**

**Rule 60(b) (2) (3) (4) (5) (6) provides in pertinent part:**


(2) newly discovered evidence which by due diligence could not have been

discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic),

misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment

upon which it is based has been reversed or otherwise vacated, or it is no longer equitable

that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment. The

motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more

than four (4) months after the judgment, order, or proceeding was entered or taken."


The Court is committed to the proposition that . a [trial] court is not without

jurisdiction to exercise its inherent power to set aside and vacate a judgment because of

. **supervening invalidity based on fraud practiced on the court by a party in the**

**procurement of a judgment**," Brice v. Brice, 340 So.2d 792, 795 (Ala.1976), **a trial**

**court is without power to so act once it has lost jurisdiction over the case.**


**Federal courts also have jurisdiction over matter.** A court **must have**

jurisdiction **to enter a valid, enforceable"** this case is stayed by the United States

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 151 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 26 of 36

District Courts For The Southern Division Of Alabama" A Proof Of Claim on

Subject matter under new court order was issued after the" defendants defrauded

the courts saying the United States District Courts For The Southern Division Of

Alabama" had dismissed the plaintiff case to get an relief of stay under false

pretense/FRAUD.  The Plaintiff's has committed fraud under rule 59 (b) and 60 (b)

and more.

**Sturdivant v. BAC Home Loans, LP,** [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala.
Civ. App. 2011). In **Sturdivant,** BAC Home Loans, LP ("BAC"), initiated
foreclosure proceedings on the mortgage encumbering Bessie T. Sturdivant's house
before the mortgage had been assigned to BAC.

**This Court is committed to the proposition that . a [trial] court is not
without jurisdiction to exercise its inherent power to set aside and
vacate a judgment because of supervening invalidity based on fraud
practiced on the court by a party in the procurement of a judgment,"
Brice v. Brice, 340 So.2d 792, 795 (Ala.1976), <u>a trial court is
without power to so act once it has lost
jurisdiction over the case.</u>**

WHEREFORE, premises considered, the Defendant requests that this Court

would enter an order granting the motion in her favor" by Federal Laws that Stayed

Plaintiff Case" a copy of the orders and proof of claim deadline is attached.

**Exhibit (A)**

Respectfully submitted,

By: _Corla Jackson   10/31/2013_
Corla Jackson
Tel. (251) 554-1785
Fax. (251) 865-0735

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 152 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 27 of 36

# CERTIFICATE OF SERVICE

I certify that on **October 31, 2012** a true and correct copy of this motion was served to each person listed below.

**GMAC MORTGAGE LLC, ET AL**

**1587 Northeast Expressway**
**Atlanta. GA. 30320**

LAWYER FOR THE PLAINTIFF ABOVE ON AN EVICTION  (N.  JOHN RUDD, JR)


**C.C. COPIES TO:**

**UNITED STATES BANKRUPCY COURTS FOR THE SOUTHER DIVIDION OF NEW YORK:**  ATTENTION  (JUDGE MARTIN GLEN)

**UNITED STATES DISTRICT COURTS FOR THE SOUTHERN DIVISION OF ALABAMA:** ATTENTION (JUDGE DUBOS)


**RESIDENTIAL CAPITAL CORPORATION LLC**

MORRISON & FOSTER LLP
1290 Avenue Of The Americas
New York, New York. 10104
Telephone: (212) 468-8000
Facesmile: (212) 468-7900

Attorneys

Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

_Corla Reeves Jackson_ 10/31/2012
Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: 251.554.1785
corlajacksonvsgmacmortgage.info

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 153 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 28 of 36



GMAC Mortgage (Sander & Bennett) Never Filed A Proof of Claim Approved by Jacks Amy thing & Shown

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA REEVES JACKSON,                    Case No. _____-MAM-13

Debtor(s).

ORDER

This matter came before the Court on the motion of GMAC Mortgage Corporation ("GMAC") for relief from the automatic stay as it pertains to certain real property commonly known as 13230 Tom Gaston Road, Mobile, AL 36695 ("Real Property"). Appearances were as noted in the record. Based upon the evidence presented:

It is ORDERED that GMAC's Motion for Relief from Stay is CONDITIONALLY DENIED upon the following terms and conditions:

1.     The sum of $16,730.24 ($16,080.24 post petition arrearage (07/05-02/06 @ $1,920.64 = $15,365.12; 07/05-01/06 late charges @ $102.16 = $715.12), $500.00 attorney's fees, and $150.00 court costs) having been repaid in open court in one lump sum of $1,920.64; the remaining balance of $14,809.60 shall be repaid through the Debtor's Chapter 13 plan.

2.     GMAC is granted leave to file a proof of claim in the amount of $14,809.60.

3.     Beginning with the March, 2006 payment, Debtor shall continue to make timely monthly direct payments to GMAC in accordance with the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

4.     The Debtor shall otherwise comply with all terms and provisions of the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

5.     If the Debtor fails to comply with the conditions stated herein, GMAC shall notify the debtor by sending the Debtor a notice of default. Should the Debtor fail to cure the default within ten days from the date of the letter, the automatic stay of 11 U.S.C. §362 shall automatically TERMINATE as it pertains to the Real Property and GMAC shall be free to enforce any and all of its right, title, and interest in and to the Real Property in accordance with loan documentation between the parties and applicable law. GMAC shall send said notice and Debtor may cure said default on two (2) separate occasions only. Upon the third default of the Debtor to timely remit the regular or arrearage payments referenced above, then the automatic stay 11 U.S.C. §362, shall automatically TERMINATE and GMAC is authorized to immediately exercise all its rights under its mortgage without further order of this court. Debtor shall be responsible for attorney fees incurred for noncompliance with this Order including any fee for notices required pursuant to any order of this Court.

Dated:   March 1, 2006

Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

027891

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 154 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 29 of 36

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA REEVES JACKSON,                                    Case No. 05-13142-MAM-13

    Debtor(s).

## ORDER

This matter came before the Court on the motion of GMAC Mortgage Corporation ("GMAC") for relief from the automatic stay as it pertains to certain real property commonly known as 13230 Tom Gaston Road, Mobile, AL 36695 ("Real Property"). Appearances were as noted in the record. Based upon the evidence presented:

It is ORDERED that GMAC's Motion for Relief from Stay is CONDITIONALLY DENIED upon the following terms and conditions:

1.    The sum of $16,730.24 ($16,080.24 post petition arrearage (07/05-02/06 @ $1,920.64 = $15,365.12; 07/05-01/06 late charges @ 102.16 = $715.12), $500.00 attorney's fees, and $150.00 court costs) having been repaid in open court in one lump sum of $1,920.64; the remaining balance of $14,809.60 shall be repaid through the Debtor's Chapter 13 plan.

2.    GMAC is granted leave to file a proof of claim in the amount of $14,809.60.

3.    Beginning with the March, 2006 payment, Debtor shall continue to make timely monthly direct payments to GMAC in accordance with the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

4.    The Debtor shall otherwise comply with all terms and provisions of the Court's order confirming the Debtor's Chapter 13 Plan and the agreements between the Debtor and GMAC.

5.    If the Debtor fails to comply with the conditions stated herein, GMAC shall notify the debtor by sending the Debtor a notice of default. Should the Debtor fail to cure the default within ten days from the date of the letter, the automatic stay of 11 U.S.C. §362 shall automatically TERMINATE as it pertains to the Real Property and GMAC shall be free to enforce any and all of its right, title, and interest in and to the Real Property in accordance with loan documentation between the parties and applicable law. GMAC shall send said notice and Debtor may cure said default on two (2) separate occasions only. Upon the third default of the Debtor to timely remit the regular or arrearage payments referenced above, then the automatic stay 11 U.S.C. §362 , shall automatically TERMINATE and GMAC is authorized to immediately exercise all its rights under its mortgage without further order of this court. Debtor shall be responsible for attorney fees incurred for noncompliance with this Order including any fee for notices required pursuant to any order of this Court.

Dated:  March 1, 2006

                               *Margaret A. Mahoney*
                               MARGARET A. MAHONEY
027891                             U.S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:

CORLA R JACKSON                                    CASE NUMBER: 05-13142

        Debtors

### AMENDED ORDER DISALLOWING CLAIM

This Order amends that Order dated September 18, 2009 in order to correct that certain
paragraph that states It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by
GMAC MORTGAGE CORPORATION is **SUSTAINED** and the claim is **DISALLOWED** in
its entirety to It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC
MORTGAGE CORPORATION is is **SUSTAINED** and the claim is **REDUCED** and
**ALLOWED** to the amount paid. and in all other respects the Order stands as originally entered

This matter came before the Court on the Debtor's Objection to ECF Claim #7 filed by

GMAC MORTGAGE CORPORATION. Notice of the Motion was given pursuant to Local

Order. No responses were filed. Based upon the statements made in the Motion and upon the

lack of objections, it appears to the Court that the objection is due to be granted..

It is **ORDERED** that the Debtor's Objection to ECF Claim #7 filed by GMAC

MORTGAGE CORPORATION is **SUSTAINED** and the claim is **REDUCED** and **ALLOWED**

to the amount paid

Dated:   October 1, 2009


                                   *Margaret A. Mahoney*
                                   MARGARET A. MAHONEY
                                   U.S. BANKRUPTCY JUDGE

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 156 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 32 of 36

## Case Overview

| Case No. 06-13142-MAM-13 | CORLA REEVES JACKSON | Friday, February 24, 2012 |
|---|---|---|
| CLOSED | | 2:47 pm |
| | | User: lfp |

**DISBURSEMENT HISTORY**

| DATE | CODE | DESCRIPTION | CREDITOR # | CHECK NO. | AMOUNT |
|---|---|---|---|---|---|
| **CORLA REEVES JACKSON** | | | | | |
| Oct 15, 2009 | DEB | REFUND TO DEBTOR/CASE CLOSED | 42D1 | 0875121 | $7,700.28 |
| **TOTAL FOR CORLA REEVES JACKSON** | | | | | **$7,700.28** |
| **HERMAN D. PADGETT** | | | | | |
| Nov 17, 2005 | ATF | ATTORNEY'S FEE | 0222 | 0671060 | $900.00 |
| Dec 09, 2005 | ATF | ATTORNEY'S FEE | 0222 | 0674586 | $1.46 |
| Feb 16, 2006 | ATF | ATTORNEY'S FEE | 0222 | 0682684 | $538.54 |
| May 15, 2006 | ATF | ATTORNEY'S FEE | 0222 | 0695069 | $360.00 |
| **TOTAL FOR HERMAN D. PADGETT** | | | | | **$1,800.00** |
| **JOHN C. McALEER III, TRUSTEE** | | | | | |
| Nov 17, 2005 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0669297 | $94.42 |
| Dec 09, 2005 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0672952 | $0.12 |
| Feb 16, 2006 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0680742 | $181.25 |
| May 15, 2006 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0693209 | $33.75 |
| Jun 15, 2006 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0697173 | $28.75 |
| Aug 17, 2006 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0705471 | $27.50 |
| Jul 19, 2007 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0751625 | $137.50 |
| Aug 01, 2007 | TRRF | TRUSTEE'S FEE REVERSAL | 0000 | | $-13.10 |
| Aug 01, 2007 | TRRF | TRUSTEE'S FEE REVERSAL | 0000 | | $-4.54 |
| Aug 16, 2007 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0765269 | $19.89 |
| Dec 20, 2007 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0783303 | $65.13 |
| Jan 17, 2008 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0787895 | $75.02 |
| Feb 20, 2008 | TE | TRUSTEE SALARY & EXPENSE | 0000 | | $-75.02 |
| Jul 17, 2008 | TE | TRUSTEE SALARY & EXPENSE | 0000 | 0813724 | $243.14 |
| Aug 07, 2008 | TRRF | TRUSTEE'S FEE REVERSAL | 0000 | | $-91.10 |
| Aug 07, 2008 | TRRF | TRUSTEE'S FEE REVERSAL | 0000 | | $-152.04 |
| **TOTAL FOR JOHN C. McALEER III, TRUSTEE** | | | | | **$570.67** |
| **MONEY NOW TITLE LOANS** | | Claim Number 2 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0670847 | $125.00 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0682435 | $75.00 |
| May 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0694824 | $75.00 |
| Jun 15, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0698771 | $25.00 |
| Aug 17, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0707083 | $50.00 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0753487 | $225.00 |
| Aug 01, 2007 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | 8749 | 0753487 | $-225.00 |
| **TOTAL FOR MONEY NOW TITLE LOANS** | | | | | **$350.00** |
| **MONEY NOW TITLE LOANS** | | Claim Number 2 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0670847 | $8.29 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0682435 | $25.60 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 8749 | 0753487 | $78.06 |
| Aug 01, 2007 | CANP | CANCELLED CHECK/TO PRINCIPAL CREDITOR ONLY | 8749 | 0753487 | $-78.06 |
| **TOTAL FOR MONEY NOW TITLE LOANS** | | | | | **$33.89** |
| **AT&T/CINGULAR WIRELESS** | | Claim Number 3 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | 3556 | 0668822 | $86.35 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 3556 | 0680231 | $266.93 |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 3556 | 0751480 | $813.46 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 3556 | 0764290 | $128.30 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 3556 | 0782826 | $476.58 |
| **TOTAL FOR AT&T/CINGULAR WIRELESS** | | | | | **$1,771.64** |
| **MCFADDEN, LYON & ROUSE, LLC** | | Claim Number 6 | | | |
| Jul 19, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 6820 | 0753379 | $506.11 |
| Aug 16, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 6820 | 0766672 | $55.66 |
| Dec 20, 2007 | CR | AMOUNTS DISBURSED TO CREDITOR | 6820 | 0784819 | $206.73 |
| **TOTAL FOR MCFADDEN, LYON & ROUSE, LLC** | | | | | **$768.50** |
| **°GMAC MORTGAGE COMPANY** | | Claim Number 7 | | | |
| Nov 17, 2005 | CR | AMOUNTS DISBURSED TO CREDITOR | 7371 | 0670221 | $507.34 |
| Feb 16, 2006 | CR | AMOUNTS DISBURSED TO CREDITOR | 7371 | 0681723 | $1,568.40 |
| **TOTAL FOR °GMAC MORTGAGE COMPANY** | | | | | **$2,075.74** |
| **GMAC MORTGAGE CORPORATION** | | Claim Number 7 | | | |

FILED MAY 15 '12 PM 3 49 USDCLS

BSS Case Overview (Rev. 01/25/2010)                                    Page 4 of 8

FILED NOV 5 '12 PM 1 :36 USDC ALS

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 158 of 164
Case 1:12-cv-00111-KD-B    Document 30    Filed 10/31/12    Page 33 of 36



**Case Overview**

Case No. 05-13142-MAM-13    CORLA REEVES JACKSON    Friday, February 24, 2012
CLOSED    2:47 pm
User: lfp

DISBURSEMENT HISTORY

| DATE | CODE | DESCRIPTION | CREDITOR # | CHECK NO. | AMOUNT |
|------|------|-------------|------------|-----------|--------|
| CORLA REEVES JACKSON | | | | | |
| Oct 15, 2009 | DEB | REFUND TO DEBTOR/CASE CLOSED | 0513142D1 | 0875121 | $7,700.28 |
| TOTAL FOR CORLA REEVES JACKSON | | | | | $7,700.28 |

John C. McAleer III, Trustee
U.S. Bankruptcy Court
Post Office Box 1884
Mobile, AL 36633

CORLA REEVES JACKSON
13230 TOM GASTON RD
MOBILE, AL 36695

36695+8658 R019

12-12020-mg    Doc 5100-16    Filed 09/18/13    Entered 09/18/13 14:29:59    Exhibit M
to Declaration    Pg 159 of 164
Case 1:12-cv-00111-RD-B    Document 90    Filed 10/31/12    Page 34 of 36



12-12020-mg  Doc 5100-16  Filed 09/18/13  Entered 09/18/13 14:29:59  Exhibit M
to Declaration  Pg 160 of 164
Case 1:12-cv-00111-KD-B  Document 30  Filed 10/31/12  Page 35 of 36

B18W (Form 18W) (08/07)

# United States Bankruptcy Court

Southern District of Alabama

Case No. 05-13142

Chapter 13

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, AL 36695

Social Security / Individual Taxpayer ID No.:
xxx-xx-9711

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR AFTER COMPLETION
## OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 1/20/10

MARGARET A. MAHONEY
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

023690

12107025715018

12-12020-mg   Doc 5100-16   Filed 09/18/13   Entered 09/18/13 14:29:59   Exhibit M
to Declaration   Pg 161 of 164
Case 1:12-cv-00111-KD-B   Document 30   Filed 10/31/12   Page 36 of 36

**GMAC MORTGAGE**
PO BOX 4622
WATERLOO IA 50704
(800) 766-4622
*Partial account number*
83500....

| | |
|---|---|
| *Date opened* May 2004 | *Date of status* May 2005 |
| *Reported since* Mar 2005 | *Last reported* Jul 2010 |

*Type* Mortgage
*Terms* 30 Years
*Monthly payment* $1,942

*Responsibility* Individual

*Credit limit or original amount* $240,000
*High balance* NA

*Recent balance* $330,056 as of Jul 2010

Status: Petition for Chapter 13 Bankruptcy. $126,224 past due as of Jul 2010.
Account history:
Foreclosure as of Apr 2005
60 days past due as of Mar 2005
Filed Chapter 13 Bankruptcy on May 31, 2005
This account is scheduled to continue on record until Jan 2012.
Address identification number:
........6707

0156014025  1-272-01267-0207000

---

**JOHN C. MCALEER, TRUSTEE**
**CHAPTER 13 CASE #........13**
**ANNUAL STAT.....**

Debtor 1:  Corla Reeves Jackson                                              SSN XXX-XX-9711

This is a summary of your case as of 09/27/2012.  It is not a request for paym..... ....ovided for your information only.  Our records indicate the following:

| | | | |
|---|---|---|---|
| TOTAL PAID IN: | $3,320.00 | LAST RECEIPT..... | 07/24/2012 |
| TOTAL DISBURSED: | $3,316.28 | CURRENT MO..... ...PMT: | $259.00 |

**CLAIMS INFORMATION:** (Does.... ....aims not filed)

| CREDITOR | CLAIM # | TYPE | CLAIM AMT | PRIN..... | ...LOWED | % ALLOWED | NOTES |
|---|---|---|---|---|---|---|---|
| TRUSTEE FEE | 0000 | | | | | | |
| BARRY A. FRIEDMAN | 0000 | PRIORITY | 3,000.00 | 3.0..... | 0.00 | 100.00 | |
| Corla Reeves Jackson | 0000 | PRIORITY | 0.00 | | 0.00 | 0.00 | |
| ALABAMA TITLE LOANS INC | 0001 | SECURED | 1,266.31 | 1,0..... | 1,150.61 | 100.00 | |
| GMAC MORTGAGE, LLC | 0002 | SECURED | 376,395.80 | 0..... | 0.00 | 0.00 | Paid outside |
| SIROTE & PERMUTT | 0003 | NOTICE ONLY | 0.00 | 0..... | 0.00 | 0.00 | |
| PROVIDENCE HOSPITAL | 0005 | UNSECURED | 8,922.76 | 0..... | 3,926.01 | 44.00 | |
| GMAC MORTGAGE, LLC | 0006 | SECURED | 146,691.72 | 0.00 | 0.00 | 0.00 | Stop Disburse |
| ATHLETIC & FAMILY CHIROPRAC | 0007 | UNSECURED | 12,001.00 | 0.00 | 5,280.44 | 44.00 | |

If you object to any of the claims that have been filed, contact your attorney.

Chapter 13 Trustee Office

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, CORLA JACKSON,

respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final

hearing of the cause, judgment be entered for the Plaintiff against Defendants, jointly and

severally, for the economic and actual damages requested hereinabove in an amount in excess of

the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment

interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and

further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

**Sturdivant v. BAC Home Loans, LP, [Ms. 2100245, Dec. 16, 2011] _ So. 3d _ (Ala. Civ. App. 2011). In Sturdivant, BAC Home Loans, LP ("BAC"), initiated foreclosure proceedings on the mortgage encumbering Bessie T. Sturdivant's house before the mortgage had been assigned to BAC.**

**SEE EXHIBIT (1)**

**SEE (NEW DISCOVERY STATUS REPORT ON FILE)**

Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: 251.554.1785
corlajacksonvsgmacmortgage.info

# CERTIFICATE OF SERVICE

I certify that on <u>October 5, 2012</u> a true and correct copy of this motion was served to each person listed below.

**GMAC MORTGAGE CORPORATION, ET AL**

**BRADLEY ARANT**
**BOULT COMMINGS**
ONE FEDERAL PLACE
1819 FIFTH AVENUE NORTH
BIRMINGHAM, ALABAMA. 35203-2119

MORRISON & FOSTER LLP
1290 Avenue Of The Americas
New York, New York. 10104
Telephone: (212) 468-8000
Facesmile: (212) 468-7900

Attorneys

Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

Corla Reeves Jackson
13230 Tom Gaston Road
Mobile, Alabama. 36695
Phone: 251.554.1785
corlajacksonvsgmacmortgage.info
Facesmile: corla@corlajacksonvsgmacmortgage.info

FILED NOV 5 '12 PM 1 :37 USDCRLS