## EXHIBIT 3

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Norman Rosenbaum
Jordan A. Wishnew

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――― )
                                                                  )
In re:                                                            )    Case No. 12-12020 (MG)
                                                                  )
RESIDENTIAL CAPITAL, LLC, et al.,      )    Chapter 11
                                                                  )
                                        Debtors.        )    Jointly Administered
―――――――――――――――――――――――――――――― )

**DECLARATION OF LAUREN GRAHAM DELEHEY,
IN-HOUSE LITIGATION COUNSEL AT RESIDENTIAL CAPITAL,
LLC, IN SUPPORT OF DEBTORS' OBJECTION TO
PROOF OF CLAIM NO. 3835 FILED BY BECKY SPENCE**

I, Lauren Graham Delehey, declare as follows:

**A.        Background and Qualifications**

1.        I serve as In-House Litigation Counsel in the legal department at

Residential Capital, LLC ("ResCap"), a limited liability company organized under the laws of

the state of Delaware and the parent of the other debtors and debtors in possession in the above-

captioned chapter 11 cases (collectively, the "Debtors").  I have held this position since I joined

ResCap on August 1, 2011.

2.        In my role as In-House Litigation Counsel at ResCap, I am responsible for

the management of residential mortgage-related litigation, including class actions, mass actions

and multi-district litigation.  Additionally, as a result ResCap's Chapter 11 filing, my role has

significantly expanded to include assisting the Debtors and their professional advisors in

connection with the administration of the Chapter 11 Cases.  I am authorized to submit this

declaration (the "Declaration") in support of the *Debtors' Objection to Proof of Claim No. 3835

Filed by Becky Spence* (the "Objection").[1]

3.      In my capacity as In-House Litigation Counsel, I am generally familiar

with the Debtors' litigation matters, including the State Court Action involving Ms. Spence.

Except as otherwise indicated, all statements in this Declaration are based upon my personal

knowledge; information supplied or verified by personnel in departments within the Debtors'

various business units; my review of the Debtors' litigation case files, books and records, as well

as other relevant documents; my discussions with other members of the Debtors' legal

department; information supplied by the Debtors' consultants and counsel; or my opinion based

upon my experience, expertise, and knowledge of the Debtors' litigation matters, financial

condition and history.  In making these statements based on my review of the Debtors' litigation

case files, books and records, relevant documents, and other information prepared or collected by

the Debtors' employees, consultants or counsel, I have relied upon these employees, consultants,

and counsel accurately recording, preparing, collecting, or verifying any such documentation and

other information.  If I were called to testify as a witness in this matter, I would testify

competently to the facts set forth herein.

B.      **Spence's Relationship to the Debtors**

4.      Between June 11, 2008 and July 25, 2008, Homecomings, as servicer of

loans owned by Deutsche Bank, foreclosed on Loans secured by seven Properties owned by

---

[1]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the
Objection.

Claimant.  Each of the Properties is located in Springfield, Missouri.  Each of the foreclosures on the Properties was a non-judicial foreclosure conducted under applicable law.

5.      Based upon my review of the Debtors' files and after discussions with ResCap personnel familiar with the State Court Action, it is my belief that on the dates of foreclosure of each of the Loans, Deutsche Bank was the owner and holder of the Notes and the deeds of trust on the Properties and Homecomings had actual possession of the Notes on the Properties.  A copy of each of the promissory notes relating to the Properties is annexed hereto as Exhibit A.

6.      On April 11, 2011, almost three years after the foreclosures in issue, Claimant filed an action against Homecomings styled Becky Spence v. Homecomings Financial, L.L.C., Case No. 1131-CV-05115 in The 31st Judicial Circuit Court, Greene County, Missouri. Claimant sought damages from Homecomings in the amount of approximately $411,800 arising from Homecomings' alleged "wrongful foreclosure" on the Properties.  A copy of the Petition For Wrongful Foreclosure is attached hereto as Exhibit B.

7.      Claimant's sole allegation against Homecomings is that the foreclosure on the Properties was wrongful because Homecomings was not in possession of the original promissory notes at the time of the foreclosure.

8.      On November 23, 2011, Homecomings sought summary judgment in the State Court Action on the grounds that it was: (i) in possession of the original promissory notes at the time of the foreclosure, and (ii) authorized to foreclose on Deutsche Bank's behalf (the "Summary Judgment Motion").  On January 2, 2012, Ms. Spence responded to the Summary Judgment Motion.  Homecomings did not file a reply prior to the commencement of these Chapter 11 Cases.  To date, the State Court Action remains pending.

B.      **Relationship Between Deutsche Bank, RFC and Homecomings**

9.      By contract dated as of March 1, 2006, Residential Funding Corporation

("RFC") became the servicer and authorized agent of Deutsche Bank for purposes of servicing

the loans on the Properties.  A copy of relevant excerpts from the *Standard Terms of Pooling and

Servicing Agreement* (the "Servicing Contract") as between RFC and Deutsche Bank are

attached hereto as Exhibit C.

10.      Pursuant to section 3.01 of the Servicing Contract, RFC had the authority

to foreclose on the Properties.  See Servicing Contract § 3.01 ("[RFC] shall service and

administer the Mortgage Loans in accordance with the terms of this Agreement and the

respective Mortgage Loans and shall have full power and authority . . . to do any and all things

which it may deem necessary or desirable in connection with such servicing and

administration.").  Section 3.02 of the Servicing Contract also permits RFC to appoint

Homecomings as subservicer to administer all or some of the mortgage loans covered by the

Servicing Contract.  See Servicing Contract § 3.02.

11.      Pursuant to a *Seller/Servicer Contract* dated September 15, 1999 among

Residential Funding Corporation ("RFC") and Homecomings, RFC authorized Homecomings to

service loans on RFC's behalf.  A copy of this agreement is attached hereto as Exhibit D.

C.      **The Debtors' Review of the Claim**

12.      Based on my review of the Claim, I believe that it fails to attach adequate

supporting documentation to demonstrate the validity of the claim against the Debtors.  Ms.

Spence fails to provide any explanation why such documentation is unavailable.  The Debtors

have made every effort to evaluate the Claim to determine whether the Debtors could discern any

cognizable claim against the Debtors for "wrongful foreclosure."  In accordance with the

Procedures Order, the Debtors, in consultation with Special Borrowers' Counsel sent Ms. Spence

a Request Letter and an Extension Letter (copies of which are annexed to the Objection) requesting that Ms. Spence provide additional support for her claim but, as of the date hereof, no response has been provided and the deadline for doing so has expired.

13.    The Debtors, after reviewing the supporting documentation and their books and records, have determined that they have no liability for the Claim asserted by Ms. Spence.  Homecomings held the Notes at the time of the foreclosures and, pursuant to the Servicing Contract, Homecomings, as subservicer of the Loans, was authorized to foreclose on the Properties on behalf of Deutsche Bank as Trustee.  See Servicing Contract §§ 3.01, 3.02. The Debtors' books and records do not reflect any liability to Claimant.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 18, 2013

/s/ Lauren Graham Delehey
Lauren Graham Delehey
In-House Litigation Counsel for
Residential Capital, LLC

## **Exhibit A to Declaration**

# NOTE

APRIL 13TH, 2006            SPRINGFIELD            MISSOURI
[Date]                     [City]                    [State]

3877 SOUTH HOMEWOOD AVENUE, SPRINGFIELD, MO 65808

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    116,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   JUNE 1ST, 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1ST, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      861.30  .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N (0207)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: X

Form 3200 1/01

MFCD6054 - (10/2004) / 042-820258-2



Exhibit C

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
BECKY ANN SPENCE                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation
BY _____
Judy Faber  Vice President

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
_____
NANCY FRY
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC
A DELAWARE CORPORATION

*[Sign Original Only]*

# NOTE

APRIL 13TH, 2006                    SPRINGFIELD                         MISSOURI
    [Date]                            [City]                            [State]

3864 SOUTH COTTAGE AVENUE, SPRINGFIELD, MO 65808
                            [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   116,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    FIRST    day of each month beginning on    JUNE 1ST, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    MAY 1ST, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254                                                  or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    861.30   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207)                    Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                      Initials:                   MFCD6054 - (10/2004) / 042-820193-3

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.00                % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

VMP®-5N (0207)

MFCD6054 - (10/2004) / 042-820193-3

Form 3200  1/01

Initials: _____

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BECKY ANN SPENCE                -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                       -Borrower

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber  Vice President

_____ (Seal)          _____ (Seal)
                                -Borrower                                       -Borrower

Without Recourse
Pay To The Order Of
RESIDENTIAL FUNDING CORPORATION

_____
Linda Metcalfe, Assistant Secretary
Homecomings Financial Network, Inc.
A Delaware Corporation

*[Sign Original Only]*

# NOTE

APRIL 13TH, 2006                SPRINGFIELD                            MISSOURI
    [Date]                                   [City]                                   [State]

3870 SOUTH COTTAGE AVENUE, SPRINGFIELD, MO 65808
                                   [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    116,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    FIRST    day of each month beginning on    JUNE 1ST, 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    MAY 1ST, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    861.30    .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-5N (0207)            Form 3200 1/01
    VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                Initials: _____    MFCD6054 - (10/2004) / 042-820093-5



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BECKY ANN SPENCE                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION

_____ (Seal)          _____ (Seal)
ERIC O. SHERMAN                 -Borrower                                        -Borrower
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC.
A DELAWARE CORPORATION

PAY TO THE ORDER OF _____ (Seal)               _____ (Seal)
Deutsche Bank Trust Company Americas as Trustee  -Borrower                        -Borrower
        WITHOUT RECOURSE
Residential Funding Corporation

BY _____              *[Sign Original Only]*
Judy Faber  Vice President

# NOTE

APRIL 13TH, 2006                      SPRINGFIELD                      MISSOURI
       [Date]                              [City]                         [State]

3871 SOUTH COTTAGE AVENUE, SPRINGFIELD, MO 65808
                                 [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    116,250.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    8.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    FIRST    day of each month beginning on    JUNE 1ST, 2006    . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on    MAY 1ST, 2036    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at    14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254
                                               or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    863.15 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

---

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP®-5N (0207)                  **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                        Initials: 

MFCD6054 - (10/2004) / 042-820297-2

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15            calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00           % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



VMP-5N (0207)
MFCD6054 - (10/2004) / 042-820297-2

Page 2 of 3

Form 3200 1/01
Initials: X _____

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
BECKY ANN SPENCE              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION

IKRAM-UL-HUQ
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC.
A DELAWARE CORPORATION

_____ (Seal)
                              -Borrower

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY Judy Faber
Judy Faber, Vice President

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

# NOTE

APRIL 13TH, 2006   SPRINGFIELD    MISSOURI
[Date]        [City]       [State]

2770 WEST LASALLE STREET, SPRINGFIELD, MO 65808

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   126,400.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   8.1250   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   JUNE 1ST, 2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 1ST, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   938.52   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP-5N (0207)    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials: X _____   MFCD6054 - [10/2004] / 042-805909-1



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00           % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials: 

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
BECKY ANN SPENCE              -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                         -Borrower

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber, Vice President

_____ (Seal)          _____ (Seal)
                                     -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                     -Borrower                                         -Borrower

WITHOUT RECOURSE
PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION

NANCY RIGY
ASSISTANT SECRETARY
HOMECOMINGS FINANCIAL NETWORK, INC.
A DELAWARE CORPORATION

[Sign Original Only]

VMP-5N (0207)                          Page 3 of 3                          Form 3200 1/01
MFCD6054 - (10/2004) / 042-805909-1

# InterestFirst℠ NOTE

| NOVEMBER 1ST, 2006 | SPRINGFIELD | MISSOURI |
|---|---|---|
| [Date] | [City] | [State] |

1061 EAST GASLIGHT DRIVE, SPRINGFIELD, MO 65810
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    285,500.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS
FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    7.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first    120    months, and then will
consist of principal and interest.

I will make my monthly payment on the    FIRST    day of each month beginning on    DECEMBER 1ST, 2006 . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both
principal and interest it will be applied to interest before Principal. If, on    NOVEMBER 1ST, 2036    , I still owe amounts
under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    1,695.16    for the first    120    months of this Note,
and thereafter will be in the amount of U.S. $    2,234.95    . The Note Holder will notify me prior to the date of
change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

**MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT**

VMP®-836N (0210)         Form 3271 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                Initials: _____
MFCD6187 (08/2006) / 047-121445-2

unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.0000         % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
BECKY ANN SPENCE          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Without Recourse
Pay to the Order of

RESIDENTIAL FUNDING COMPANY, LLC

Greg Swift
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC /Sign Original Only/

BY _____
Judy Faber, Vice President

# NOTE

APRIL 13TH, 2006                    SPRINGFIELD                    MISSOURI
     [Date]                              [City]                         [State]

1413 WEST GLENWOOD STREET, SPRINGFIELD, MO 65807
                             [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   72,800.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is    HOMECOMINGS FINANCIAL NETWORK INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    8.1250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   JUNE 1ST, 2006   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 1ST, 2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   14850 QUORUM DRIVE, SUITE 500, DALLAS, TX 75254
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    540.54  .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

(VMP)-5N (0207)                    Form 3200 1/01

VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:             MFCD6054 - (10/2004) / 042-820153-7

Exhibit I

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.00       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
BECKY ANN SPENCE                          -Borrower                                                    -Borrower

_____ (Seal)        _____ (Seal)
                                                       -Borrower                                                    -Borrower

_____ (Seal)        _____ (Seal)
RESIDENTIAL FUNDING CORPORATION   -Borrower                                                    -Borrower

_____ (Seal)        _____ (Seal)
                                                       -Borrower                                                    -Borrower

PAY TO THE ORDER OF                                                           *[Sign Original Only]*
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Corporation

BY _____
Judy Faber  Vice President

## Exhibit B to Declaration



# IN THE 31ST JUDICIAL CIRCUIT COURT, GREENE COUNTY, MISSOURI

| Judge or Division:<br>MICHAEL J CORDONNIER | Case Number: 1131-CV05115 |
|---|---|
| Plaintiff/Petitioner:<br>BECKY SPENCE<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOSHUA K ROBERTS<br>2202 W. Chesterfield Blvd<br>SPRINGFIELD, MO 65807 |
| Defendant/Respondent:<br>HOMECOMINGS FINANCIAL LLC | Court Address:<br>JUDICIAL COURTS FACILITY<br>1010 N BOONVILLE AVE<br>SPRINGFIELD, MO 65802 |
| Nature of Suit:<br>CC Other Real Estate Actions | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  HOMECOMINGS FINANCIAL LLC
Alias:
R/A CSC LAWYERS INCORPORATING SERVICE
221 BOLIVAR
JEFFERSON CITY, MO 65101

**COURT SEAL OF**

GREENE COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_4.12.11_
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____
_____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____
Date

_____
Notary Public

---

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

## IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

BECKY SPENCE,                              )
                                          )
      **Plaintiff,**                         )
                                          )
vs.                                       )    **Case No.**
                                          )
HOMECOMINGS FINANCIAL, L.L.C.,            )
                                          )
**Serve Registered Agent At:**            )
**CSC Lawyers Incorporating Service**     )
**221 Bolivar**                           )
**Jefferson City, MO  65101**             )
                                          )
      **Defendant.**                         )

F I L E D

APR 1 1 2011

L.D.  M A I L
CIRCUIT CLERK
GREENE COUNTY

### PETITION FOR WRONGFUL FORECLOSURE

COMES NOW Plaintiff, by and through her attorney of record, and for her cause of action, states to the Court as follows:

1. That Plaintiff is an individual residing in Missouri.

2. That the Defendant is a foreign corporation that is doing business in Missouri.

3. That the real properties ("Properties") at issue in this matter are located in Greene County, Missouri, and therefore, jurisdiction and venue is proper therein.

4. That Defendant caused, or purports to be the assignee of an entity that caused to be recorded various security interests through deeds of trust that were held for the repayment of alleged promissory notes ("Liens").

5. That the Defendant has foreclosed on various Properties owned by the Plaintiff in this matter pursuant to said Liens.

6. That the street address of each piece of Property at issue and the legal description of the same is attached hereto as Exhibit A.

1

7.  That in order for the Lien to be valid at the time of the foreclosure, that Defendant

    must have been the holder of the original promissory note.

8.  That at the time of the foreclosure sale, Defendant did not possess the original

    promissory note as required by law regarding the Properties.

9.  That the Defendant was therefore not the holder of the original note regarding the

    Properties.

10. That since the Defendant was not the holder of the original promissory note, it did not

    have the right to foreclose against the Properties.

11. That the Defendant's foreclosure was without the merit of legal validity.

12. That Plaintiff was thereby damaged in the amount of equity she lost in each Property,

    which totals approximately $411,800.00.

WHEREFORE, Plaintiff requests that the Court enter judgment against the Defendant,

for her costs, and any other relief the court deems just and proper.


Respectfully submitted,

HAZELRIGG, ROBERTS & EASLEY, P.C.



Joshua K. Roberts
Missouri Bar No. 47823
2202 West Chesterfield Blvd.
Springfield, Missouri 65807
417-881-0800
417-881-6776 Fax
ATTORNEY FOR PLAINTIFF


2

STATE OF MISSOURI     )
                     ) ss.
COUNTY OF GREENE     )

      Becky Spence, being first duly sworn upon her oath, states that the foregoing facts contained in the petition are true to the best of her knowledge and belief.

                                BECKY SPENCE

      Subscribed and sworn to before me, a notary public, on this 6th day of April, 2011.

                                Notary Public

My commission expires:



COUNTY MISSOURI,ACCORDING TO THE RECORDED PLOT THEREOF

| Address | City | State | Zip | Legal Description |
|---|---|---|---|---|
| 3871 S. Cottage | Springfield | MO | 65807 | ALL OF LOT THIRTY-ONE (31), FIRST ADDITION TO SCENIC HEIGHTS, GREENE COUNTY MISSOURI ACCORDING TO THE RECORDED PLOT THEREOF |
| 1061 E. Gaslight | Springfield | MO | 65810 | ALL OF LOT TWENTY (20), FIRST ADDITION TO CHEROKEE HILLS GREENE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF |
| 1413 W. Glenwood | Springfield | MO | 65807 | ALL OF LOT THIRTY-FOUR (34), SOUTHSIDE DEVELOPMENT UNIT ONE (1), GREENE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF |
| 3877 S. Homewood | Springfield | MO | 65807 | ALL OF LOT FOURTY FOUR (44) FIRST ADDITIONS TO SCENIC HEIGHTS, GREENE COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLOT THEREOF |
| 2770 W. Lasalle | Springfield | MO | 65807 | ALL OF LOT SIXTEEN (16), FIRST ADDITION TO SCENIC HEIGHTS, GREENE COUNTY MISSOURI ACCORDING TO THE RECORDED PLOT THEREOF |
| 3864 S. Cottage | Springfield | MO | 65807 | ALL OF LOT TWENTY FIVE (25), FIRST ADDITION TO SCENIC HEIGHTS, GREENE COUNTY MISSOURI ACCORDING TO THE RECORDED PLOT THEREOF |
| 3870 S. Cottage | Springfield | MO | 65807 | ALL OF LOT TWENTY-FOUR(24), FIRST ADDITION TO SCENIC HEIGHTS, GREENE |

| Mortgage | Loan Number | Forclosed Properties | Forclosure Date | Market Value | Mortg. Amount | Equity |
|---|---|---|---|---|---|---|
| Homecomings | 742 820 2592 | 3877 South Homewood | 6/11/2008 | 167,500 | 116,000 | 51,500 |
| Homecomings | 742 820 1933 | 3864 South Cottage | 6/11/2008 | 162,000 | 116,000 | 46,000 |
| Homecomings | 742 820 0935 | 3870 South Cottage | 6/11/2008 | 162,000 | 116,000 | 46,000 |
| Homecomings | 742 820 2972 | 3871 South Cottage | 6/11/2008 | 167,500 | 116,000 | 51,500 |
| Homecomings | 742 805 9091 | 2770 West LaSalle | 6/11/2008 | 189,900 | 126,000 | 63,900 |
| Homecomings | 081 003 3739 | 1061 East Gaslight | 7/25/2008 | 439,900 | 334,000 | 105,900 |
| Homecomings | 742 820 1537 | 1413 South Glenwood | 7/25/2008 | 119,900 | 72,000 | 47,900 |

## Exhibit C to Declaration

*Execution Copy*

**RESIDENTIAL ACCREDIT LOANS, INC.,**

Company,

**RESIDENTIAL FUNDING CORPORATION,**

Master Servicer,

and

**DEUTSCHE BANK TRUST COMPANY AMERICAS,**

Trustee

**SERIES SUPPLEMENT,**

**Dated as of June 1, 2006,**

**TO**

**STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT**
dated as of March 1, 2006

Mortgage Asset-Backed Pass-Through Certificates

Series 2006-QS6

# ARTICLE III

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

**(See Article III of the Standard Terms)**

# STANDARD TERMS OF
# POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2006

Residential Accredit Loans, Inc.
Mortgage Asset-Backed Pass-Through Certificates

Section 2.06.    <u>Conveyance of Uncertificated REMIC I and REMIC II Regular Interests; Acceptance by the Trustee.</u>

As provided in Section 2.06 of the Series Supplement.

Section 2.07.    <u>Issuance of Certificates Evidencing Interests in REMIC II.</u>

As provided in Section 2.07 of the Series Supplement.

Section 2.08.    <u>Purposes and Powers of the Trust.</u>

The purpose of the trust, as created hereunder, is to engage in the following activities:

(a)    to sell the Certificates to the Company in exchange for the Mortgage Loans;

(b)    to enter into and perform its obligations under this Agreement;

(c)    to engage in those activities that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

(d)    subject to compliance with this Agreement, to engage in such other activities as may be required in connection with conservation of the Trust Fund and the making of distributions to the Certificateholders.

The trust is hereby authorized to engage in the foregoing activities. Notwithstanding the provisions of Section 11.01, the trust shall not engage in any activity other than in connection with the foregoing or other than as required or authorized by the terms of this Agreement while any Certificate is outstanding, and this Section 2.08 may not be amended, without the consent of the Certificateholders evidencing a majority of the aggregate Voting Rights of the Certificates.

## ARTICLE III

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01.    <u>Master Servicer to Act as Servicer.</u>

(a)    The Master Servicer shall service and administer the Mortgage Loans in accordance with the terms of this Agreement and the respective Mortgage Loans and shall have full power and authority, acting alone or through Subservicers as provided in Section 3.02, to do any and all things which it may deem necessary or desirable in connection with such servicing and administration. Without limiting the generality of the foregoing, the Master Servicer in its own name or in the name of a Subservicer is hereby authorized and empowered by the Trustee when the Master Servicer or the Subservicer, as the case may be, believes it appropriate in its best judgment, to execute and deliver, on behalf of the Certificateholders and the Trustee or any of them, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, or of consent to assumption or modification in connection with a proposed

46

conveyance, or of assignment of any Mortgage and Mortgage Note in connection with the repurchase of a Mortgage Loan and all other comparable instruments, or with respect to the modification or re-recording of a Mortgage for the purpose of correcting the Mortgage, the subordination of the lien of the Mortgage in favor of a public utility company or government agency or unit with powers of eminent domain, the taking of a deed in lieu of foreclosure, the commencement, prosecution or completion of judicial or non-judicial foreclosure, the conveyance of a Mortgaged Property to the related Insurer, the acquisition of any property acquired by foreclosure or deed in lieu of foreclosure, or the management, marketing and conveyance of any property acquired by foreclosure or deed in lieu of foreclosure with respect to the Mortgage Loans and with respect to the Mortgaged Properties. The Master Servicer further is authorized and empowered by the Trustee, on behalf of the Certificateholders and the Trustee, in its own name or in the name of the Subservicer, when the Master Servicer or the Subservicer, as the case may be, believes it appropriate in its best judgment to register any Mortgage Loan on the MERS® System, or cause the removal from the registration of any Mortgage Loan on the MERS® System, to execute and deliver, on behalf of the Trustee and the Certificateholders or any of them, any and all instruments of assignment and other comparable instruments with respect to such assignment or re-recording of a Mortgage in the name of MERS, solely as nominee for the Trustee and its successors and assigns. Any expenses incurred in connection with the actions described in the preceding sentence shall be borne by the Master Servicer in accordance with Section 3.16(c), with no right of reimbursement; provided, that if, as a result of MERS discontinuing or becoming unable to continue operations in connection with the MERS System, it becomes necessary to remove any Mortgage Loan from registration on the MERS System and to arrange for the assignment of the related Mortgages to the Trustee, then any related expenses shall be reimbursable to the Master Servicer. Notwithstanding the foregoing, subject to Section 3.07(a), the Master Servicer shall not permit any modification with respect to any Mortgage Loan that would both constitute a sale or exchange of such Mortgage Loan within the meaning of Section 1001 of the Code and any proposed, temporary or final regulations promulgated thereunder (other than in connection with a proposed conveyance or assumption of such Mortgage Loan that is treated as a Principal Prepayment in Full pursuant to Section 3.13(d) hereof) and cause any REMIC formed under the Series Supplement to fail to qualify as a REMIC under the Code. The Trustee shall furnish the Master Servicer with any powers of attorney and other documents necessary or appropriate to enable the Master Servicer to service and administer the Mortgage Loans. The Trustee shall not be liable for any action taken by the Master Servicer or any Subservicer pursuant to such powers of attorney. In servicing and administering any Nonsubserviced Mortgage Loan, the Master Servicer shall, to the extent not inconsistent with this Agreement, comply with the Program Guide as if it were the originator of such Mortgage Loan and had retained the servicing rights and obligations in respect thereof. In connection with servicing and administering the Mortgage Loans, the Master Servicer and any Affiliate of the Master Servicer (i) may perform services such as appraisals and brokerage services that are not customarily provided by servicers of mortgage loans, and shall be entitled to reasonable compensation therefor in accordance with Section 3.10 and (ii) may, at its own discretion and on behalf of the Trustee, obtain credit information in the form of a "credit score" from a credit repository.

(b)      All costs incurred by the Master Servicer or by Subservicers in effecting the timely payment of taxes and assessments on the properties subject to the Mortgage Loans shall not, for the purpose of calculating monthly distributions to the Certificateholders, be added to the

amount owing under the related Mortgage Loans, notwithstanding that the terms of such
Mortgage Loan so permit, and such costs shall be recoverable to the extent permitted by Section
3.10(a)(ii).

    (c)    The Master Servicer may enter into one or more agreements in connection with
the offering of pass-through certificates evidencing interests in one or more of the Certificates
providing for the payment by the Master Servicer of amounts received by the Master Servicer as
servicing compensation hereunder and required to cover certain Prepayment Interest Shortfalls
on the Mortgage Loans, which payment obligation will thereafter be an obligation of the Master
Servicer hereunder.

Section 3.02.   Subservicing Agreements Between Master Servicer and Subservicers;
Enforcement of Subservicers' and Sellers' Obligations.

    (a)    The Master Servicer may continue in effect Subservicing Agreements entered into
by Residential Funding and Subservicers prior to the execution and delivery of this Agreement,
and may enter into new Subservicing Agreements with Subservicers, for the servicing and
administration of all or some of the Mortgage Loans. Each Subservicer of a Mortgage Loan
shall be entitled to receive and retain, as provided in the related Subservicing Agreement and in
Section 3.07, the related Subservicing Fee from payments of interest received on such Mortgage
Loan after payment of all amounts required to be remitted to the Master Servicer in respect of
such Mortgage Loan. For any Mortgage Loan that is a Nonsubserviced Mortgage Loan, the
Master Servicer shall be entitled to receive and retain an amount equal to the Subservicing Fee
from payments of interest. Unless the context otherwise requires, references in this Agreement
to actions taken or to be taken by the Master Servicer in servicing the Mortgage Loans include
actions taken or to be taken by a Subservicer on behalf of the Master Servicer. Each
Subservicing Agreement will be upon such terms and conditions as are generally required or
permitted by the Program Guide and are not inconsistent with this Agreement and as the Master
Servicer and the Subservicer have agreed. A representative form of Subservicing Agreement is
attached hereto as Exhibit E. With the approval of the Master Servicer, a Subservicer may
delegate its servicing obligations to third-party servicers, but such Subservicer will remain
obligated under the related Subservicing Agreement. The Master Servicer and a Subservicer
may enter into amendments thereto or a different form of Subservicing Agreement, and the form
referred to or included in the Program Guide is merely provided for information and shall not be
deemed to limit in any respect the discretion of the Master Servicer to modify or enter into
different Subservicing Agreements; provided, however, that any such amendments or different
forms shall be consistent with and not violate the provisions of either this Agreement or the
Program Guide in a manner which would materially and adversely affect the interests of the
Certificateholders. The Program Guide and any other Subservicing Agreement entered into
between the Master Servicer and any Subservicer shall require the Subservicer to accurately and
fully report its borrower credit files to each of the Credit Repositories in a timely manner.

    (b)    As part of its servicing activities hereunder, the Master Servicer, for the benefit of
the Trustee and the Certificateholders, shall use its best reasonable efforts to enforce the
obligations of each Subservicer under the related Subservicing Agreement and of each Seller
under the related Seller's Agreement insofar as the Company's rights with respect to Seller's
obligation has been assigned to the Trustee hereunder, to the extent that the non-performance of

48

any such Seller's obligation would have a material and adverse effect on a Mortgage Loan, including, without limitation, the obligation to purchase a Mortgage Loan on account of defective documentation, as described in Section 2.02, or on account of a breach of a representation or warranty, as described in Section 2.04. Such enforcement, including, without limitation, the legal prosecution of claims, termination of Subservicing Agreements or Seller's Agreements, as appropriate, and the pursuit of other appropriate remedies, shall be in such form and carried out to such an extent and at such time as the Master Servicer would employ in its good faith business judgment and which are normal and usual in its general mortgage servicing activities. The Master Servicer shall pay the costs of such enforcement at its own expense, and shall be reimbursed therefor only (i) from a general recovery resulting from such enforcement to the extent, if any, that such recovery exceeds all amounts due in respect of the related Mortgage Loan or (ii) from a specific recovery of costs, expenses or attorneys fees against the party against whom such enforcement is directed. For purposes of clarification only, the parties agree that the foregoing is not intended to, and does not, limit the ability of the Master Servicer to be reimbursed for expenses that are incurred in connection with the enforcement of a Seller's obligations (insofar as the Company's rights with respect to such Seller's obligations have been assigned to the Trustee hereunder) and are reimbursable pursuant to Section 3.10(a)(viii).

Section 3.03.  Successor Subservicers.

The Master Servicer shall be entitled to terminate any Subservicing Agreement that may exist in accordance with the terms and conditions of such Subservicing Agreement and without any limitation by virtue of this Agreement; provided, however, that in the event of termination of any Subservicing Agreement by the Master Servicer or the Subservicer, the Master Servicer shall either act as servicer of the related Mortgage Loan or enter into a Subservicing Agreement with a successor Subservicer which will be bound by the terms of the related Subservicing Agreement. If the Master Servicer or any Affiliate of Residential Funding acts as servicer, it will not assume liability for the representations and warranties of the Subservicer which it replaces. If the Master Servicer enters into a Subservicing Agreement with a successor Subservicer, the Master Servicer shall use reasonable efforts to have the successor Subservicer assume liability for the representations and warranties made by the terminated Subservicer in respect of the related Mortgage Loans and, in the event of any such assumption by the successor Subservicer, the Master Servicer may, in the exercise of its business judgment, release the terminated Subservicer from liability for such representations and warranties.

Section 3.04.  Liability of the Master Servicer.

Notwithstanding any Subservicing Agreement, any of the provisions of this Agreement relating to agreements or arrangements between the Master Servicer or a Subservicer or reference to actions taken through a Subservicer or otherwise, the Master Servicer shall remain obligated and liable to the Trustee and the Certificateholders for the servicing and administering of the Mortgage Loans in accordance with the provisions of Section 3.01 without diminution of such obligation or liability by virtue of such Subservicing Agreements or arrangements or by virtue of indemnification from the Subservicer or the Company and to the same extent and under the same terms and conditions as if the Master Servicer alone were servicing and administering the Mortgage Loans. The Master Servicer shall be entitled to enter into any agreement with a

49

*Execution Copy*

**RESIDENTIAL ACCREDIT LOANS, INC.,**

Company,

**RESIDENTIAL FUNDING CORPORATION,**

Master Servicer,

and

**DEUTSCHE BANK TRUST COMPANY AMERICAS,**

Trustee

**SERIES SUPPLEMENT,**

**Dated as of May 1, 2006,**

**TO**

**STANDARD TERMS OF
POOLING AND SERVICING AGREEMENT**
dated as of March 1, 2006

Mortgage Asset-Backed Pass-Through Certificates

Series 2006-QS5

# ARTICLE III

## ADMINISTRATION AND SERVICING
## OF MORTGAGE LOANS

**(See Article III of the Standard Terms)**

## **Exhibit D to Declaration**

# Seller/Servicer Contract

This Seller/Servicer Contract (as may be amended, supplemented or otherwise modified from time to time, this "Contract") is made this 15th day of September, 1999, by and between Residential Funding Corporation ("RFC"), its successors and assigns ("RFC"), and HomeComings Financial Network, Inc. ("HFN"), (The "Servicer", and, together with RFC, the "parties and each, individually, a "party").

WHEREAS, the Servicer desires to service Loans for RFC and RFC desires to have the Servicer service Loans for RFC pursuant to the terms of this Contract and the Guides (as that term is defined below).

NOW, THEREFORE, in consideration of the premises, and the terms, conditions and agreements set forth below, the parties agree as follows:

1.  **Incorporation of Guides by Reference.**

RFC has approved the Servicer to service Loans for, RFC under the Guide(s) checked below. Each Guide that is checked below (as each may be amended, supplemented or otherwise modified from time to time, together, the "Guides"), is hereby incorporated into this Contract by reference and for all purposes made a part hereof.

. The Servicer has been approved by RFC to sell Loans to and/or service Loans for RFC, as indicated below, under the following Guide(s):

|  STATUS | APPLICABLE GUIDES |
|---------|-------------------|
| ☐ Seller Only | XX Seller Guide |
| ☐ Servicer Only | XX Servicer Guide |
| XX Seller and Servicer | |

If a box next to a Guide shown above has not been checked, the Servicer has not been approved by RFC to sell Loans to, or, as appropriate, service Loans for, RFC, under that Guide(s) at this time; but, RFC may in the exercise of its sole discretion approve the Servicer to sell Loans for RFC if and for so long as it shall have been authorized to do so by RFC in writing. The Servicer will be authorized to do so upon the execution and delivery by both RFC and the Servicer of an addendum to this Contract in a form provided to the Servicer by RFC containing that approval and incorporating that Guide(s) into this Contract by reference.

The Servicer acknowledges that it has received and read the Guides. All provisions of the Guides are incorporated by reference into and made a part of this Contract, and shall be binding upon the parties; *provided, however*, that the Servicer shall be entitled to service Loans for RFC only if and for so long as it shall have been authorized to do so by RFC in writing. Specific references in this Contract to particular provisions of the Guides and not to other provisions does not mean that those provisions of the Guides not specifically cited in this Contract are not applicable. All terms used herein shall have the same meanings as such terms have in the Guides, unless the context clearly requires otherwise.

2.  **Amendments**

This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by their terms, the Guides may be amended, modified or supplemented by RFC, from time to time. Any such amendment(s) to the Guides shall be binding upon the parties hereto.

3.  **Representations and Warranties.**

a.  *Reciprocal Representations and Warranties.*

The Servicer and RFC each represents and warrants to the other that as of the date of this Contract:

(1). Each party is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, is qualified, if necessary, to do business and in good standing in each jurisdiction in which it is required to be so qualified,

and has the requisite power and authority to enter into this Contract and all other agreements which are contemplated by this Contract and to carry out its obligations hereunder and under the Guides and under such other agreements.

(2). This Contract has been duly authorized, executed and delivered by each party and constitutes a valid and legally binding agreement of each party enforceable in accordance with its terms.

(3). There is no action proceeding or investigation pending or threatened, and no basis therefor is known to either party, that could affect the validity or prospective validity of this Contract.

(4). Insofar as its capacity to carry out any obligation under this Contract is concerned, neither party is in violation of any charter, articles of incorporation, bylaws, mortgage, indenture, indebtedness, agreement, instrument, judgment, decree, order, statute, rule or regulation and none of the foregoing adversely affects its capacity to fulfill any of its obligations under this Contract. Its execution of, and performance pursuant to, this Contract will not result in a violation of any of the foregoing.

*(b) Servicer's Representations, Warranties and Covenants.*

In addition to the representations, warranties and covenants made by the Servicer pursuant to subparagraph (a) of this paragraph 3, the Servicer makes the representations, warranties and covenants set forth in the Guides and agrees to deliver to RFC the certified Resolution of Board of Directors which authorizes the execution and delivery of this Contract.

**4.   Remedies of RFC.**

If an event of Seller/Servicer default shall occur, RFC may, at its options, exercise one or more of the remedies set forth in the Guides.

**5.   Servicer's Status as Independent Contractor.**

At no time shall the Servicer represent that it is acting as an agent of RFC. The Servicer shall, at all times, act as an independent contractor.

**6.   Prior Agreements Superseded.**

This contract re-states, amends and supersedes any and all prior Seller and/or Servicer Contracts between the parties except that any subservicing agreement executed by the Servicer in connection with any loan-security exchange transaction shall not be affected.

**7.   Assignment.**

This Contract may not be assigned or transferred, in whole or in part, by the Servicer without the prior written consent of RFC. RFC may sell, assign, convey, hypothecate, pledge or in any other way transfer, in whole or in part, without restriction, its rights under this Contract and the Guides with respect to any Commitment or Loan.

**8.   Notices.**

All notices, requests, demands or other communications that are to be given under this Contract shall in writing, addressed to the appropriate parties and sent by telefacsimile, by overnight courier or by first class United States mail, postage prepaid, to the addresses and telefacsimile numbers specified below. However, another name, address and/or telefacsimile number may be substituted by the Servicer pursuant to the requirements of this paragraph 8, or by RFC pursuant to an amendment to the Guides.

If to RFC, notices must be sent to:

> RESIDENTIAL FUNDING CORPORATION
> Master Servicing
> 10 Universal City Plaza, Suite 2100
> Universal City, CA.  91608
> Attention: Director Servicer Management
> Telephone/Fax  818 753-4457  /  818 753 4410

If to the Servicer, notices must be sent to:

HomeComings Financial Network, Inc.
2711 N. Haskell Ave.  Suite ~~1000~~  *900*
Dallas, Texas 75204
Attention: Managing Director - Servicing Operations
Telephone/Fax  214 874 2323   / 214 874 2457

**9.  Jurisdiction and Venue.**

Each of the parties irrevocably submits to the jurisdiction of any state or federal court located in Hennepin County, Minnesota, over any action, suit or proceeding to enforce or defend any right under this Contract or otherwise arising from any loan sale or servicing relationship existing in connection with this Contract, and each of the parties irrevocably agrees that all claims in respect of any such action or proceeding may be heard or determined in such state or federal court. Each of the parties irrevocably waives the defense of an inconvenient forum to the maintenance of any such action or proceeding and any other substantive or procedural rights or remedies it may have with respect to the maintenance of any such action or proceeding in any such forum. Each of the parties agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law. Each of the parties further agrees not to institute any legal actions or proceedings against the other party or any director, officer, employee, attorney, agent or property of the other party, arising out of or relating to this Contract in any court other than as hereinabove specified in this paragraph 9.

**10.  Miscellaneous.**

This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All paragraph headings contained herein are for convenience only and shall not be construed as part of this Contract. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affective the validity or enforceability of such provision in any other jurisdiction, and, to this end, the provisions hereof are severable. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of Minnesota.

This Contract shall be no force and effect unless and until it has been executed by both parties.

IN WITNESS WHEREOF, the duly authorized officers of the Servicer and RFC have executed this Contract as of the date first above written.

[Corporate Seal]                                          SERVICER

(if none, 50 state)                                       **HomeComings Financial Network, Inc.**

                                                          (Name of Servicer)

ATTEST:

By: _Robert Meachum_ (Signature)          By: _Chris T. Gilson_ (Signature)

Name: Robert Meachum                      Name: Chris T. Gilson
          (Typed or Printed)                         (Typed or Printed)

Title: SR. VICE PRESIDENT                 Title: PRESIDENT

ATTEST:

By: _____
                (Signature)

Name:    Robert L. Horn
              (Typed or Printed)

Title:    Director, Servicer Management


RFC

By: _____
                (Signature)

Name:    Carolyn Philmon
              (Typed or Printed)

Title:    Managing Director

## EXHIBIT A

### To The Seller/Servicer Contract Dated

### September 15, 1999

### Servicer Guide Amendments
### HomeComings Financial Network, Inc.

This RFC Servicer Guide Addendum sets forth certain modifications and additions to the RFC Servicer Guide (as amended from time to time), primarily with respect to the servicing of mortgage loans on behalf of Residential Funding by Servicer. This addendum, is intended to be read in conjunction with the RFC Servicer Guide.  Except as modified by this addendum, the RFC Servicer Guide shall continue in full force and effect in accordance with its terms.

## DEFINITIONS

All capitalized terms not otherwise defined herein have the respective meanings set forth in the RFC Servicer Guide.

## MODIFICATIONS TO THE RFC SERVICER GUIDE

I.    **Section 431 — Partial Release, Easements, and Eminent Domain**

The first sentence of Section 431(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> **Residential Funding's Servicer Management in Los Angeles must be notified in written/electronic format by the Servicer within two (2) Business Days after the Servicer's approval of any applications for partial release of the lien on the Mortgaged Premises, easements, consent to substantial alterations, removal, demolition, taking or dividing the Mortgaged Premises, and other matters relating to changes affecting the Loan or the Mortgaged Premises; provided, none of the above may cause the value of the collateral for the Loan to be adversely affected or result in a substantial replacement of the collateral for the Loan, without Residential Funding's prior approval.**

II.    **Section 440 — Insurance**

The fourth sentence in the second paragraph of Section 440(d) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> **If the Borrower refuses to reimburse the Servicer, the Servicer may cause acceleration for the Borrower's default under the terms of the Security Instrument.**

In addition, the third paragraph of Section 440(d) of the RFC Servicer Guide shall be deemed deleted.

III.    **Section 454 — Adverse Matters:  Abandonment**

The fourth sentence of Section 454 of the RFC Servicer Guide shall be deemed deleted.

IV.    **Section 455 — Property Seizures**

The last sentence in the second paragraph of Section 455(f)(3) of the RFC Servicer Guide shall be deemed deleted.

V.    **Section 456 ---- Notice of Liens, Vacancy, Waste, Etc.**

The last sentence in the first paragraph of Section 456 of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> **The Servicer must exercise diligence to prevent any losses and must immediately take the appropriate action on notification or discovery of any of the following conditions:**

VI.    **Section 463 — Special Forbearance Relief Agreement**

The second sentence of Section 463(7) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> **If an inspection, required before the execution of the forbearance agreement, reveals that the Mortgaged Premises have been abandoned or are in poor physical condition, the Servicer may enter into a forbearance agreement without Residential Funding's prior approval, provided that the Servicer secures the Mortgaged Premises and takes all necessary action to protect the value of, and to prevent any deterioration of, the Mortgaged Premises; and provided further that no forbearance should impair coverage by any Mortgage Insurer, materially adversely affect the lien of the mortgage, result in principal and interest advances that would be nonrecoverable or be materially adverse to the interests of investors in the Loan.**

VII.    **Section 465 — Loss Mitigation Workouts**

The second paragraph of Section 465 of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

> **All loan workout options, which involve loan modifications which are in a Pool that has not been identified as being eligible for a loan modification, shall be subject to Residential Funding approval.**

In addition, the third paragraph of Section 465 of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

> **If a foreclosure action is in progress, the proceedings must continue concurrently with the analysis of workout options. The Servicer may postpone the foreclosure sale if necessary to avoid delay in finalizing a workout.**

In addition, the second paragraph of Section 465(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

> **"Servicer must obtain prior approval from Mortgage Insurer or Pool Insurer when applicable."**

In addition, the second sentence in the first paragraph of Section 465(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

> **To expedite the transaction, HFN need not contact Residential Funding's Investor Services in Los Angeles for approval if such expenses exceed the allowable guidelines as defined in Exhibit 2471. HFN will be required to support, with written documentation, any expenses that exceed RFC guidelines and understand that they will be held to the same expectations that are in effect for all other Servicers that service loans for the benefit of RFC and or it's investors.**

In addition, the heading of Section 465(c)(2) of the RFC Servicer Guide shall be deemed deleted and replaced with the following heading: "Procedures." In addition, the first sentence in the first paragraph of Section 465(c)(2) shall be deemed deleted. In addition, the first paragraph of Section 465(d) shall be deemed deleted and replaced with the following paragraph:

> **Details of the Servicers comparative loss analysis must be reported to Residential Funding Servicer Management in Los Angeles, in written/electronic format within one (1) Business Day after the close of escrow. In the case of a loan modification, copies of the business plan with a copy of the executed (not recorded) Modification Agreement along with any detail notification that will be needed by the accounting area in changing the RFC system (capitalization breakdown, etc.) will be forwarded within 24 hours of the original (Modification Agreement) being sent for deed recordation, but in all cases prior to the effective date of the modified terms.**

VIII.    Section 466 — Deed-In-Lieu of Foreclosure

The first sentence in the first paragraph of Section 466(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence: "The Servicer is authorized to accept a deed-in-lieu of foreclosure." In addition, Section 466(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following paragraph:

Details of the Servicers comparative loss analysis must be reported to Residential Funding Servicer Management in Los Angeles, in written/electronic format within one (1) Business Day of the acceptance of the executed Deed-in-Lieu.

In addition, the first sentence of Section 466(c) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

"The Servicer or its counsel must prepare any documents necessary to process the deed-in-lieu of foreclosure."

IX.    Section 471 — Institution of Foreclosure

The first sentence in the third paragraph of Section 471(h) of the RFC Servicer Guide shall be deemed deleted. In addition, the third sentence in the third paragraph of Section 471(h) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

HFN need not contact Residential Funding's Investor Services in Los Angeles for approval of additional funds in excess of the allowable amount for judicial foreclosure referenced in the Expense Reimbursement Guidelines (RFC Form 2471). HFN will be required to support, with written documentation, any expenses that exceed RFC guidelines and understand that they will be held to the same expectations that are in effect for all other Servicers that service loans for the benefit of RFC and or it's investors.

X.    Section 473 — Offer of Payment During Foreclosure

The second and third sentences of Section 473(b) of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentences:

Prior to accepting such an offer from the Borrower, the Servicer must prepare a written agreement which permits the institution or continuation of foreclosure proceedings in the event of any default under the terms of that agreement. The Servicer's workout analysis must include the Servicer's justification for the suspension or dismissal of the foreclosure action, and specify the method by which the remaining delinquency will be cured.

XL.    **Section 474 — Foreclosure Sale Bidding Instructions**

The first sentence in the second paragraph of Section 474(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following language:

**For home mortgages that are not insured by a Mortgage Insurer, the Servicer may enter a bid on behalf of the record owner of the Loan equal to the lesser of no less than 85% of the fair market value of the property, or the total indebtedness, as allowable under State law.**

In addition, the first sentence in the third paragraph of Section 474(a) of the RFC Servicer Guide shall be deemed deleted and replaced with the following language:

**The fair market value must be supported by a Brokers Price Opinion (BPO), reviewed and agreed to (as to estimated value), by the Servicer and obtained no more than ninety (90) days prior to a scheduled foreclosure sale.**

XII.    **Section 494 — Request for Loan Service Approval**

The second sentence and all bullet points in the first paragraph of Section 494 of the RFC Servicer Guide shall be deemed deleted and replaced with the following sentence:

**The Servicer must use a Request for Loan Service Approval to obtain Residential Funding's approval for the following actions:**

- Acceptance of a Loan (note) modification;
- Modification of a Security Instrument; and/or
- Any other action which requires Residential Funding's approval in accordance with the terms of this Servicer Guide.

A.    **Section 495 — Document Release Transmittal**

The first sentence of Section 495 of the RFC Servicer Guide shall be deemed deleted.

**EXCEPTIONS to delegated authorities:** There are a number of RFC securitized loans that are subject to "special handling" investor requirements. RFC will provide to you, on a monthly basis, in MS Excel format, a list of those loans in Pools that have special handling. HFN –San Diego has been provided connectivity to Rules Viewer, a software application that identifies the specific special handling requirements that a loan is subject to. HFN – San Diego will be required to comply with the requirements indicated on Rules Viewer. Where investor approval is indicated HFN – San Diego will forward a file (put together with the information outlined in the RFC Servicer Guide for that particular situation) to the assigned RFC Asset Manager for submission of the file to the appropriate investor for investor approval.

## EXHIBIT B

### To The Seller/Servicer Contract Dated

### September 15, 1999

### SUBSERVICING FEE, SET UP FEE, PRIMARY SERVICING FEE

1.  **Set Up Fees:** HFN shall be entitled to an initial fee (the "Set Up Fee") for the set up of each loan. Fees currently in existence for each Platform remain in effect until renegotiated.

    *   Bulk transfers at break points of 250, 500, and 1000 loans shall be entitled to a negotiated "discounted set up fee

2.  **Subservicing Fees:** In addition to the Set Up Fee, HFN shall be entitled each month during the term of this Agreement, on flow business, to the following Subservicing Fees:

    (A) **Jumbo & Expanded Criteria Loans:** Fees in existence for each Platform remain in effect until renegotiated.

    (B) **B/C/D Loans:** Fees in existence for each Platform remain in effect until renegotiated.

    **Phoenix Loans** Fees in existence for each Platform remain in effect until renegotiated.

    **All Other Loans** Fees in existence for each Platform remain in effect until renegotiated.

3.  **Primary Servicing Fees:**

    (A) **Jumbo & Expanded Criteria Loans** Fees in existence for each Platform remain in effect until renegotiated.

    (B) **B/C/D Loans:** Fees in existence for each Platform remain in effect until renegotiated.

    **Phoenix Loans** Fees in existence for each Platform remain in effect until renegotiated.

    **All Other Loans** Fees in existence for each Platform remain in effect until renegotiated.

3.  **Special Servicing Set Up Fees:** On occasion Residential Funding will transfer loans to HFN from other Servicer(s) where the loan(s) is/are a non-performing loan. HFN shall provide default management services for

such mortgage loans, and provide management and disposition services for said loans, being compensated for said services as follows:

Set Up Fees: An initial fee (the "Set-Up Fee") of (Fees in existence for each Platform remain in effect until renegotiated) per loan, such fee to be paid on the first Distribution Date following the set-up of the loan.

**PRIMARY SERVICING FEES**. The primary Servicing fee shall be payable to Residential Funding monthly in arrears on the fifteenth (15th) day of each calendar month commencing on the first month after the month in which HFN commences subservicing of any Subject Loan. The Primary Servicing Fee for each month shall be calculated and payable only for Subject Loans with respect to which HFN received during the immediately preceding month: (i) the full principle and interest payment for that month; or (ii) the full past due principle and interest payment(s) for any prior month (s) . The amount of the Primary Servicing fee payable each month shall be net of the amount of the subservicing fee payable that month. The net amount of the Primary Servicing Fee following such netting procedures shall be wire transferred to Residential Funding in accordance with the following wire transfer instructions: Bank One, National Association, Chicago, Illinois, ABA #071000013; further, credit to Residential Funding Corporation, Account No. 53-15476, Reference Net Primary Servicing Fees.

**REPORTING.** Prior to 5 p.m., Minnesota time, on the tenth (10th) Business day of each calendar month during the Subservicing Period, HFN shall have delivered the following to Residential Funding: (a) A cash collection report by HFN control number or Residential Funding Servicer number showing all collections, all accrued servicing fees and all full payoffs made during the immediately preceding month with respect to the Subject Loans then being subserviced by HFN, both on an aggregate basis and on a loan by loan basis ( in Residential Funding Loan number order) , in substantially the form of , and having the content shown on Exhibit B, attached hereto and made a part hereof; provided that the portion of this report that is in the loan by loan detail must be provided on magnetic tape or other medium and format that is expressly authorized by Residential Funding, and (b) A statement by HFN control number showing on an aggregate basis for the immediately preceding month the total subservicing Fee accrued under this agreement for that month the total Subservicing Fee and set up fees owed to HFN and all interest and other fees accrued under this agreement for that month, in substantially the form of , and having the content shown on Exhibit C, attached hereto and made a part hereof.

## EXHIBIT C

### To The Seller/Servicer Contract Dated

### September 15, 1999

### RESIDENTIAL FUNDING CORPORATION
Month Ending:

Servicing Summary

Gross Primary Servicing Fees Due RFC Control No.    XXX

Totals from collections report:                                         XX,XXX.XX

Miscellaneous                                                                  XXX.XX

Gross Primary Servicing Fees Due RFC Control No.    XXX

Totals from collections report:                                         XX,XXX.XX

Miscellaneous                                                                  XXX.XX

Gross Primary Servicing Fees Due RFC Control No.    XXX

Totals from collections report:                                         XX,XXX.XX

Miscellaneous                                                                  XXX.XX

LESS:  Subservicing Fee due HFN

| Control No.  XXX | $XXX.XX |
| Control No.  XXX | XXX.XX |
| Control No.  XXX | XXX.XX |

                                                                                 X,XXX.XX

NET SERVICE FEE DUE RFC                                        XX,XXX.XX

**EXHIBIT D**

**To The Seller/Servicer Contract Dated**

**September 15, 1999**

**SERVICER COMPENSATION.**

a) **Ancillary Income.** Anything in the Servicer Guide to the contrary not withstanding, HFN shall not be entitled to retain any prepayment fees collected from the Borrowers with respect to the Subject Loans, But HFN shall be entitled to retain other ancillary fees, as allowed by law or contract, collected with respect to the Subject Loan (such assumption fees, modification fees, interest rate conversion fees, late fees, and returned check fees) as well as all interest earned on escrow accounts maintained with respect to the Subject Loans in excess of any interest required by the Servicing Document, contract or applicable law to be paid to the Borrowers for whom such escrow accounts are maintained.

b) **Set up Fee.** On or before the fifteenth (15th) day of each month, Residential Funding shall pay to HFN, a setup fee as set forth in Exhibit B with respect to each Subject Loan for which the Effective Date of Subservicing occurred during the immediately preceding month.

c) **Subservicing Fee.** The subservicing fees (collectively, the "subservicing fee") to be paid by Residential Funding to HFN and the terms of the Subservicing fee shall be as set forth on Exhibit B. As provided on Exhibit B, the Subservicing Fee shall be payable monthly in arrears on the fifteenth (15th) day of each calendar month commencing on the first (1st) month after the month in which HFN commences subservicing of any Subject Loan. Additional Loan product types may be added from time to time by amending and attaching Exhibit B, provided that each such amended Exhibit B is dated and executed by officers of HFN and Residential Funding. Each amended Exhibit B shall be effective as of the date of such amended Exhibit A.