| | |
|---|---|
| **Docket No.    FST-CV-09-5011591** | **: SUPERIOR COURT** |
| | **:** |
| **RESIDENTIAL FUNDING CO. LLC.** | **: J.D. OF STAMFORD/NORWALK** |
| | **:** |
| **v.** | **: AT STAMFORD** |
| | **:** |
| **THOMAS J. LA CASSE** | **: April 17, 2012** |

**<u>NOTICE OF FILING OF EXHIBITS</u>**

Now comes the defendant Thomas J. La Cases by his attorney and files the following exhibits, <u>due to the length of certain documents a copy will be provided in hand to counsel and the court on 4/18/2012</u>:

2.  Qualified Written Request and Response of the Plaintiff.

     Exhibit G:   Qualified Written Request

     Exhibit H:   Response to Qualified Written Request by GMAC Mortgage

     Exhibit I:   Exhibits Provided by GMAC Mortgage

Exhibit designations are subject to change as they are offered into evidence and the designation given by the court shall prevail.

                        THE DEFENDANT,
                        THOMAS J. LA CASSE,
                        BY HIS ATTORENY,


                        _____
                        Donald M. Brown, Esq.
                        Juris No. 421865

LAW OFFICES OF DONALD M. BROWN
19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771 & (800)636-2701 FAX

## <u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing and within Notice of Filing of Exhibits was delivered electronically to all counsel of record having an appearing on 4/17/2012 at the following addresses:

Dowley & Associates
116 Washington Street
PO Box 1235
Middletown, CT, 06457
dowleylaw@snet.net

PHV Calandrelli, Joseph
Prince Lobel Tye LLP
100 Cambridge Street
Boston, MA, 02114
c/o Thomas Elcock
tmelcock@princelobel.com

_____
Donald M. Brown, Esq.

LAW OFFICES OF DONALD M. BROWN
19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771 & (800)636-2701 FAX

LAW OFFICES OF DONALD M. BROWN
19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771 & (800)636-2701 FAX

# EXHIBIT G

## LAW OFFICES OF DONALD M. BROWN

19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771, FAX (800)636-2701

February 14, 2012

**Certified First Class U.S. Mail # 7009 1680 0000 4642 6298**

Correspondence Address for Qualified Written Requests:

GMAC Mortgage
Attn: Customer Care
P.O. Box 1330
Waterloo, IA, 50704-1330

In the Matter of:        Thomas La Casse

Property Address:        153 Valley Forge Road
                         Weston, CT, 06883

Loan Number:        10419663

### R.E.S.P.A. QUALIFIED WRITTEN REQUEST

Dear Sir or Madam:

Please treat this letter as a "qualified written request" under the *Federal Servicer Act*, which is a part of the *Real Estate Settlement Procedures Act*, 12 U.S.C. 2605(e).

Specifically, we are in dispute as to the identity of the true owner of this debt (if any), and your authority and capacity (if any) to collect on behalf of the same.  We are also in dispute about the proper application of payments from the debtors to interest, principal, escrow advances and expenses (in that order of priority as provided for in the loan instruments); about your use of automatically triggered property inspections and broker price opinion charges and fees based on undisclosed accounting for purported arrears; and about legal fees and expenses that have been attached to this account but that have not been otherwise explained or established to the borrower.  Specifically, we are requesting the following information:

1.      A complete and itemized statement of the loan history from the date of the loan to the date of our response to this letter including.

2.      A complete and itemized statement of all advances or charges against this loan.

3.      A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of your response to this letter.

4.      Have you purchased and charged to the account any Force-Placed Insurance?

5.      A complete and itemized statement from the date of the loan to the date of your response to this letter of the amounts charged for any forced-placed insurance, the date of the charge, the name of the insurance company, the relation of the insurance company to you or a related company, the amount of commission you received for each force-placed insurance event, and an itemized statement of any other expenses related thereto.

# LAW OFFICES OF DONALD M. BROWN

19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771, FAX (800)636-2701

6.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any suspense account entries and/or any corporate advance entries related in any way to this loan.

7.      A complete and itemized statement from the date of the loan to the date of your reply to this letter of any property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees, winterization related fees, maintenance contractors, or other similar fees or expenses related in any way to this loan.

8.      Identify the provision under the Mortgage and/or note that authorizes charging each and every such fee against the loan of the debtor.

9.      Please attach copies of all property inspection reports and appraisals, broker price opinions of value, bills and invoices, and checks or wire transfers in payment thereof.

10.     A complete copy of any key loan transaction report or reports and any reports indicating any charges for any "add on products" sold to the debtors in connection with this loan from the date of the loan to the date of your reply to this letter.

11.     A complete and itemized statement of any late charges added to this loan from the date of this loan to the date of your reply to this letter.

12.     A complete and itemized statement from the date of the loan to the date of your reply to this letter of any fees incurred to modify, extend, or amend the loan or to defer any payment or payments due under the terms of the loan.

13.     An itemized statement of the current amount needed to pay-off the loan in full.

14.     The name of any Trust that the loan may be located in.

15.     The full name, address and telephone number of the current holder and owner of the original mortgage note including the name, address and phone number of any trustee or other fiduciary. This request is being made pursuant to Section 1641(f)(2) of the *Truth In Lending Act*, which requires the servicer to identify the holder of the debt.

16.     The name, address and telephone number of any master servicers, servicers, sub-servicers, contingency servicers, back-up servicers, special servicers, trustees, or custodians for this mortgage loan and/or note, including such persons, entities, nominees, assigns and designees, or other entities.

17.     Is this a MERS Designated Mortgage Loan? If the answer is yes, then identify the electronic MERS number assigned to this loan.

18.     A full , double sided, certified true copy of the original loan documents including the Mortgage, Note and all subsequent assignments, to include all alonges and assignments, as well as all related documents including but not limited to the truth in lending statement, good faith estimate and the loan application documents.

## LAW OFFICES OF DONALD M. BROWN

19 HETTIEFRED ROAD GREENWICH CT 06831

(203)359-3771, FAX (800)636-2701

19.    Please provide verification of any notification provided to me of a change in servicer.

You should be advised that with FIVE (5) DAYS you must send us a letter stating that you received this letter.  After that time you have THIRTY (30) DAYS to fully respond as per the time frame mandated by Congress, in "Subtitle 'E' Mortgage Servicing" of the ''*Dodd-Frank Wall Street Reform and Consumer Protection Act* and pursuant to 12 U.S.C. Section 2605(e)(1)(A) and *Reg. X* Section 3500.21(e)(1).

### <u>TRUTH – IN-LENDING ACT § 131(f)(2)</u>

Pursuant to 15 U.S.C. § 1641 (f):

1.    Please provide the name, address and telephone number of the owner of the mortgage or the master servicer of the mortgage.

You should be advised that Violations of this Section provide for statutory damages of up to $4,000 and reasonable legal fees. The amendments also clearly provide that the new notice rules are enforceable by private right of action. *See* 15 U.S.C. 1641

THE BORROWER,
THOMAS LA CASSE,
BY HIS ATTORNEY,

_____

Donald M. Brown, Esq.
19 Hettiefred Road
Greenwich, CT, 06831
(203)359-3771
(800)636-2701 FAX
Juris No. 421865

English          Customer Service        USPS Mobile                                       Register / Sign In

## USPS.COM

Search USPS.com or Track Packages

Quick Tools                          Ship a Package       Send Mail        Manage Your Mail        Shop          Business Solutions

# Track & Confirm

GET EMAIL UPDATES      PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70091680000046426298 | First-Class Mail® | Delivered | February 17, 2012, 7:18 am | WATERLOO, IA 50704 | |

## Check on Another Item

What's your label (or receipt) number?

Find

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2012 USPS. All Rights Reserved.

LAW OFFICES OF DONALD M. BROWN
19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771 & (800)636-2701 FAX

# EXHIBIT H

# GMAC Mortgage

March 30, 2012

Thomas Lacasse
114 Emerson Rd Apt D201
Longmeadow MA 01106-1877

RE:     Account Number         7425910742
        Property Address       153 Valley Forge Road
                               Weston CT 06883

Dear Thomas Lacasse:

This is in response to the Qualified Written Request (QWR) dated February 14, 2012, received March 1, 2012, from the Law Office of Donald M Brown ("Law Office"), regarding the above-referenced account. The request did not include proper authorization to release information to the Law Office; therefore, we are providing the response directly to you.  Please share this information with the Law Office as you deem appropriate.

Because your letter appears to be questioning nearly every aspect of the loan transaction, it is difficult for GMAC Mortgage, LLC to identify any specific concern(s) you have regarding the servicing of the account.  Nevertheless, in an effort to be responsive to your request, copies of pertinent documentation GMAC Mortgage, LLC has in its records are enclosed.
- Note
- Mortgage/Deed of Trust
- HUD-I Settlement Statement

The following responses are in the same order as the inquiries:

1. See enclosed payment history and transaction code list.
2. See response to item#1.
3. Enclosed are copies of three most recent analyses.
4. The following are the lender placed policies paid and copies of the policies are enclosed:
   a. Lender placed fire policy number B7735128 effective December 25, 2008 to December 25, 2009, with a premium of $4,875.00.  The policy was issued with a dwelling coverage of $649,974.00, with the property listed as occupied.
   b. Lender placed fire policy number B7870459 effective December 25, 2009 to December 25, 20010, with a premium of $20,799.00.  The policy was issued with a dwelling coverage of $649,974.00, with the property listed as vacant.  This policy was partially canceled effective January 25, 2010, with a refund of $19,033.00 issued back to the escrow account.  There remains a lapse in coverage from December 25, 2009 to January 25, 2010, with an earned premium of $1,766.00.
   c. Lender placed fire policy number B7949802 effective April 20, 2010 to April 20, 2011, with a premium of $13,974.00.  The policy was issued with a dwelling coverage of $649,974.00, with the property listed as vacant.

       d.  Lender placed fire policy number B2570517 effective April 20, 2011 to April 20, 2012, with a premium of $4,037.00. The policy was issued with a dwelling coverage of $649,974.00, with the property listed as tenant occupied.

5.  See response to item #4.
6.  See response to item #1.
7.  See response to item #1.
8.  See enclosed Mortgage.
9.  Subject to business and trade practices which are proprietary and confidential.
10. See response to item #1.
11. See response to item #1.
12. Not applicable.
13. Under separate cover, the payoff statement is being sent to you. If you are looking for a reinstatement quote to bring the account current, the foreclosure attorney is Hunt Leibert and can be reached at 1-860-240-9127.
14. The current Master Servicer is: Residential Funding Company, LLC fka Residential Funding Corporation, phone number 1-866-582-5438. The loan is currently owned by: HSBC Bank USA, N.A., as Trustee, 452 Fifth Avenue, New York, NY 10018, phone number 1-212-525-2418. However, the loan is currently being subserviced by GMAC Mortgage, LLLC and all legal inquiries should directed to the subservicer.
15. The current Master Servicer is: Residential Funding Company, LLC fka Residential Funding Corporation, phone number 1-866-582-5438. The loan is currently owned by: HSBC Bank USA, N.A., as Trustee, 452 Fifth Avenue, New York, NY 10018, phone number 1-212-525-2418. However, the loan is currently being subserviced by GMAC Mortgage, LLLC and all legal inquiries should directed to the subservicer.
16. See response to item #15.
17. This is not a MERS loan.
18. See enclosed Note, Mortgage and HUD-1. ( I printed HUD-1).
19. Homecomings Financial, LLC now known as GMAC Mortgage, LLC has been the only servicer of the account.

Truth-in-Lending Act
1.  See response to item #15 above.

We believe the foregoing to be responsive to your inquiries. If you have any further questions, please contact Customer Care at 1-800-766-4622 between the hours of 6:00 am to 10:00 pm CT Monday through Friday and 9:00 am to 1:00 pm CT on Saturday.

Customer Care
Loan Servicing

Enclosures

LAW OFFICES OF DONALD M. BROWN
19 HETTIEFRED ROAD GREENWICH CT 06831
(203)359-3771 & (800)636-2701 FAX

# EXHIBIT I

# Payment History Code Key

| Subject Type | Explanation |
|---|---|
| Column Headings | Reading from left to right: |
| | • Post Date = the date the transaction was completed. |
| | • TRN Code= transaction codes (see table below) |
| | • Due Date= the date interest is due from as of that posting |
| | • Transaction Amount = the dollar amount for that particular posting |
| | • Principal Paid= the amount of funds affecting the principal balance |
| | • Interest Paid= the amount of funds affecting the interest payment |
| | • Escrow Paid= the amount of funds affecting the escrow balance |
| Line Transactions | The account balances are provided on the line below the actual payment application or reversal. |
| Payment TRN codes | See below for complete listing |
| Escrow Codes | • N90 or E90= county tax payment |
| | • M91 or E91= City tax payment |
| | Note: any escrow tax starting with a 9 is a tax refund disbursement. |
| | • E1= interest on escrow |
| | • N20 or E20= hazard insurance payment |
| | • M21 or E21= flood insurance payment |
| | Note: any escrow tax starting with a 2 is an insurance related disbursement. |
| | • R20= Insurance Refund |
| | • R90/R91= Tax Refund |
| | • E01/ M01 or M00/E00= escrow refund to customer |
| | See complete listing on the right side |

| Escrow Codes | Escrow Description |
|---|---|
| **Hazard** | |
| 20 | Fire |
| 21 | Flood |
| 22 | Earthquake |
| 23 | REO fire |
| 24 | REO flood |
| 25 | Corporate paid flood |
| 26 | Land |
| 27 | Wind |
| 28 | Contents |
| **Optional** | |
| 30 | Mortgage life |
| 31 | Accidental death |
| 32 | Complimentary A/D |
| 33 | Disability |
| 34 | Accidental disability |
| 35 | Miscellaneous insurance |
| 36 | Unemployment insurance |
| 37 | DMP |
| 38 | DMP endorsement |
| 39 | Open |
| **PMI** | |
| 40 | Regular PMI |
| 45 | Corporate paid |
| 46 | Corporate paid - FDIC |
| 47 | Corporate paid - Wells |
| 49 | Supplemental PMI |
| **FHA** | |
| 50 | FHA |
| 51 | Corporate paid FHA |
| 56 | FHA risk-based |
| 59 | FHA upfront |
| **Optional** | |
| 60 | Home Warranty |
| 61 | Roadside |
| 62 | Health/dental |
| 63 | Memberships |
| **Loss Drafts** | |
| 72 | Loss d afts |
| **Tax** | |
| 80 | Ground rent |
| **Tax** | |
| 90 | Country, water conservation irrigation district (used for mobile home tax); Sub-agency |
| 91 | City/town/township |
| 92 | Incorporated village |
| 93 | City/school/junior college district |
| 94 | Irrigation district |
| 95 | Utility/local improvement district/municipal utility district |
| 96 | Bond/water/sewer/drainage |
| 97 | Borough |
| 98 | Central Appraisal Agency/Central Collection Agency |

| Payment Codes | Payment TRN Description |
|---|---|
| AA | Administrative Adjustment (late charge waiver- fee adjustments etc) |
| AP | Autopost payment |
| CT | Curtailment |
| CTA | Curtailment posted using Autopost |
| CTR | Curtailment reversal posted using the Post/Allocate or Post Curtailment screens |
| GP | Government payment |
| PA | Payment posted on Post/Allocate screen |
| POST | Post petition payment |
| PRE | Petition payment |
| PRN | Payment reversal ("N" = reason code) |
| RP | Regular payment posted on Post/Level or Post/Regular |
| SR | Single item receipt made to escrow, unapplied, uncollected late charges, closing interest, buydown funds, uncollected credit insurance |
| SRA | Single item receipt posted using Autopost |
| SRN | Reversal using the Post/Single screen ("N" = reversal reason code) |
| UFN | Unapplied funds transaction ("N" = unapplied funds code after the transaction) |
| UI | Uncollected items including interest, credit insurance, and late charges |
| UIE | Uncollected late charges collected from the escrow overage during analysis |
| ITR | Investor transfer |
| PT | Reapplication of payment due to an investor transfer |
| RT | Payment reversal due to an investor transfer |
| AA | Administrative adjustment |

```
TRN497CR-02                                                                                    5/21/07 14:19:39
MPRICE                                      FOR INTERNAL USE ONLY; NOT a Transaction History    JOB DT:  5/01/07
                                            DETAIL TRANSACTION HISTORY                          PAGE:     1
--------------------------------------------------------------------------------------------------------------
LOAN#  425910742      INV# 413      POOL# 0200603  INV LN# 0010419663 NEXT DUE  5/01/07   INTEREST RATE  6.500    PRIN.BAL   649,982.92
BORR1  Thomas Lacasse                TYPE: 05-00 CONVENTION   STATUS R TOT.DELQ      .00   SUSP-235B       .00    ESC.BAL      1,773.64
BORR2                                MSGS:        #PMT D00000      P&I        .00   SUSP-SUBS       .00    ESC.ADV         .00
PROP: 153 Valley Forge Road          MAIL: 153 Valley Forge Road                          SUSP-HAZ        .00    TOT.PMT     4,301.39
                                                                    SRVFEES .02500   SUSP-FOR        .00    P&I         3,520.74
       Weston     CT 06883           Weston          CT 06883       YDIFF  .00000   SUSP-MIS        .00    ESC.PMT       780.65
                                                            INT PD TO  4/01/07   P&I SHORT       .00    CORP AD         .00
--------------------------------------------------------------------------------------------------------------
---TRANSACTION----                       NEXT -AFTER TRANS.BALANCES-    TOTAL   ----------------APPLIED-----------------  MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE  PRINCIPAL    ESCROW     AMOUNT  PRINCIPAL INTEREST    ESCROW SUSPENSE/CD &SRV.FEES
 10  2/02/06 8102 LOAN TRANSFER          3/06  650000.00       .00   650000.00- 650000.00-     .00     .00      .00
              S/F     REF#
 11  2/02/06 2592 PREPAID INTEREST       3/06  650000.00       .00     231.51       .00   231.51     .00      .00
              S/F     REF#
 12  2/03/06 3199 OLD INV 940/0200603    3/06        .00       .00   650000.00  650000.00      .00     .00      .00
              S/F     REF#                      Eff Dt: 02/03/2006   Batch: EODXFER
 13  2/03/06 8199 NEW INV 943/0200603    3/06  650000.00       .00   650000.00- 650000.00-     .00     .00      .00
              S/F     REF#
 14  2/06/06 1530 ESCROW DEPOSIT         3/06  650000.00   1830.60    1830.60       .00      .00 1830.60      .00
              S/F CK  REF#
 15  2/28/06 2643 ESCROW ADJ             3/06  650000.00       .00    1830.60-      .00      .00 1830.60-     .00
              S/F TR  REF#
 16  2/28/06 3199 OLD INV 943/0200603    3/06        .00       .00   650000.00  650000.00      .00     .00      .00
Days since last Paymt on: 02/03/2006      25        Eff Dt: 02/28/2006   Batch: MASSXFER
 17  2/28/06 8199 NEW INV 413/0200603    3/06  650000.00       .00   650000.00- 650000.00-     .00     .00      .00
              S/F TR  REF#
 18  2/28/06 2543 ESCROW ADJ             3/06  650000.00   1830.60    1830.60       .00      .00 1830.60      .00
              S/F TR  REF#
 19  3/09/06 1499 Speed Draft Fee        3/06  650000.00   1830.60       8.99       .00      .00     .00      .00         8.99 07
              S/F     REF#
 20  3/09/06 02   PAYMENT                4/06  650000.00   2440.80    4131.03       .00 3520.83  610.20      .00       135.42 11
Days since last Paymt on: 02/28/2006       9        Eff Dt: 03/09/2006   Batch: 0309ACHS   IPT Dt:  3/01/06
 21  3/09/06 1407 Speed Draft Fee        4/06  650000.00   2440.80       8.99       .00      .00     .00      .00         8.99 07
              S/F C   REF#
 22  3/31/06 10   PMT-INT ON ESCROW      4/06  650000.00   2443.65       2.85       .00      .00    2.85      .00
              S/F     REF#
 23  4/11/06 1499 Speed Draft Fee        4/06  650000.00   2443.65       8.99       .00      .00     .00      .00         8.99 07
              S/F     REF#
 24  4/11/06 02   PAYMENT                5/06  650000.00   3053.85    4131.03       .00 3520.83  610.20      .00       135.42 11
Days since last Paymt on: 03/09/2006      33        Eff Dt: 04/11/2006   Batch: 0411ACHS   IPT Dt:  4/01/06
 25  4/11/06 1407 Speed Draft Fee        5/06  650000.00   3053.85       8.99       .00      .00     .00      .00         8.99 07
              S/F C   REF#
 26  4/28/06 10   PMT-INT ON ESCROW      5/06  650000.00   3057.41       3.56       .00      .00    3.56      .00
              S/F LB  REF#
 27  5/10/06 1499 Speed Draft Fee        5/06  650000.00   3057.41       8.99       .00      .00     .00      .00         8.99 07
              S/F     REF#
 28  5/10/06 02   PAYMENT                6/06  650000.00   3667.61    4131.03       .00 3520.83  610.20      .00       135.42 11
```

```
TRN497CR-02                          FOR INTERNAL USE ONLY - NOT A TRANSACTION HISTORY              5/21/07 14:19:39
MPRICE                                         DETAIL TRANSACTION HISTORY                           JOB DT:  5/01/07
                                                                                                         PAGE:      2
---TRANSACTION----                  NEXT  -AFTER TRANS.BALANCES-      TOTAL  ----------------APPLIED----------------- MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE   PRINCIPAL   ESCROW    AMOUNT  PRINCIPAL INTEREST   ESCROW SUSPENSE/CD &SRV.FEES
LOAN#  425910742              CONTINUED
      Days since last Paymt on: 04/11/2006  29      Eff Dt: 05/10/2006    Batch: 0510ACHS    IPT Dt:  5/01/06
      S/F BA   REF#
29  5/10/06 1407 Speed Draft Fee       6/06  650000.00  3667.61       8.99      .00      .00      .00      .00      8.99 07
      S/F C    REF#
30  5/18/06 1931 HAZARD INS   ADVANCE   6/06  650000.00  5928.00    2260.39      .00      .00  2260.39      .00
      S/F SC   REF#
31  5/18/06 6031 HAZARD INS   DISBURSED  6/06  650000.00    .00     5928.00-     .00      .00  5928.00-     .00
      PAYEE 3116832 #0005910083 DUE  3/13/06
      S/F SC   REF# 0005910083
32  5/31/06 10   PMT-INT ON ESCROW      6/06  650000.00     2.37       2.37      .00      .00     2.37      .00
      S/F LB   REF#
33  5/31/06 1919 RECOVER ESCROW ADVANCE  6/06  650000.00    .00        2.37-     .00      .00     2.37-     .00
      S/F LB   REF#
34  6/13/06 1499 Speed Draft Fee        6/06  650000.00     .00        8.99      .00      .00      .00      .00      8.99 07
      S/F     REF#
35  6/13/06 02   PAYMENT                7/06  650000.00  610.20     4131.03      .00  3520.83  610.20      .00    135.42 11
      Days since last Paymt on: 05/10/2006  34      Eff Dt: 06/13/2006    Batch: 0613ACHS    IPT Dt:  6/01/06
      S/F BA   REF#
36  6/13/06 1919 RECOVER ESCROW ADVANCE  7/06  650000.00    .00      610.20-     .00      .00   610.20-     .00
      S/F C    REF#
37  6/13/06 1407 Speed Draft Fee        7/06  650000.00    .00        8.99      .00      .00      .00      .00      8.99 07
      S/F C    REF#
38  7/06/06 1529 ESCROW DEPOSIT         7/06  650000.00  3669.00    3669.00      .00      .00  3669.00      .00
      S/F CK   REF#
39  7/06/06 1919 RECOVER ESCROW ADVANCE  7/06  650000.00  2021.18   1647.82-     .00      .00  1647.82-     .00
      S/F CK   REF#
40  7/14/06 1499 Speed Draft Fee        7/06  650000.00  2021.18      8.99      .00      .00      .00      .00      8.99 07
      S/F     REF#
41  7/14/06 02   PAYMENT                8/06  650000.00  2631.38    4131.03      .00  3520.83  610.20      .00    135.42 11
      Days since last Paymt on: 06/13/2006  31      Eff Dt: 07/14/2006    Batch: 0714ACHS    IPT Dt:  7/01/06
      S/F BA   REF#
42  7/14/06 1407 Speed Draft Fee        8/06  650000.00  2631.38      8.99      .00      .00      .00      .00      8.99 07
      S/F C    REF#
43  7/20/06 1942 TOWN TAX    ADVANCE    8/06  650000.00  3777.41    1146.03      .00      .00  1146.03      .00
      S/F SC   REF#
44  7/20/06 6042 TOWN TAX    DISBURSED  8/06  650000.00    .00      3777.41-     .00      .00  3777.41-     .00
      PAYEE 4240816 #0005998872 DUE  2/01/06
      S/F SC   REF# 0005998872
45  7/31/06 10   PMT-INT ON ESCROW      8/06  650000.00     1.33       1.33      .00      .00     1.33      .00
      S/F LB   REF#
46  7/31/06 1919 RECOVER ESCROW ADVANCE  8/06  650000.00    .00        1.33-     .00      .00     1.33-     .00
      S/F LB   REF#
47  8/09/06 1499 Speed Draft Fee        8/06  650000.00    .00        8.99      .00      .00      .00      .00      8.99 07
      S/F     REF#
48  8/09/06 02   PAYMENT                9/06  650000.00  610.20     4131.03      .00  3520.83  610.20      .00    135.42 11
      Days since last Paymt on: 07/14/2006  26      Eff Dt: 08/09/2006    Batch: 0809ACHS    IPT Dt:  8/01/06
      S/F BA   REF#
49  8/09/06 1919 RECOVER ESCROW ADVANCE  9/06  650000.00    .00      610.20-     .00      .00   610.20-     .00
      S/F BA   REF#
```

```
TRN497CR-02                                                                         5/21/07 14:19:39
MPRICE                          FOR INTERNAL USE ONLY - NOT A TRANSACTION HISTORY   JOB DT:  5/01/07
                                           DETAIL TRANSACTION HISTORY                       PAGE:    3
```

| NBR | DATE | CODE | DESCRIPTION CONTINUED | NEXT DUE | AFTER TRANS. BALANCES PRINCIPAL | ESCROW | TOTAL AMOUNT | APPLIED PRINCIPAL | INTEREST | ESCROW | SUSPENSE/CD | MISC.PMTS &SRV.FEES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOAN# | 425910742 | | | | | | | | | | | |
| 50 | 9/09/06 | 1407 | Speed Draft Fee | 9/06 | 650000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C   REF# | | | | | | | | | |
| 51 | 9/12/06 | 1499 | Speed Draft Fee | 9/06 | 650000.00 | .00 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F   REF# | | | | | | | | | |
| 52 | 9/12/06 | 02 | PAYMENT | 10/06 | 650000.00 | 610.20 | 4131.03 | .00 | 3520.83 | 610.20 | .00 | 135.42 11 |
| | Days since last Paymt on: 08/09/2006 | 34 | Eff Dt: 09/12/2006 | | | | Batch: 0912ACHS | IPT Dt: 9/01/06 | | | | |
| | | | S/F BA   REF# | | | | | | | | | |
| 53 | 9/12/06 | 1919 | RECOVER ESCROW ADVANCE | 10/06 | 650000.00 | 75.70 | 534.50- | .00 | .00 | 534.50- | .00 | |
| | | | S/F BA   REF# | | | | | | | | | |
| 54 | 9/12/06 | 1407 | Speed Draft Fee | 10/06 | 650000.00 | 75.70 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C   REF# | | | | | | | | | |
| 55 | 9/29/06 | 10 | PMT-INT ON ESCROW | 10/06 | 650000.00 | 75.76 | .06 | .00 | .00 | .06 | .00 | |
| | | | S/F LB   REF# | | | | | | | | | |
| 56 | 10/09/06 | 1499 | Speed Draft Fee | 10/06 | 650000.00 | 75.76 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F   REF# | | | | | | | | | |
| 57 | 10/09/06 | 02 | PAYMENT | 11/06 | 650000.00 | 856.41 | 4301.48 | .00 | 3520.83 | 780.65 | .00 | 135.42 11 |
| | Days since last Paymt on: 09/12/2006 | 25 | Eff Dt: 10/07/2006 | | | | Batch: 1009ACHS | IPT Dt: 10/01/06 | | | | |
| | | | S/F BA   REF# | | | | | | | | | |
| 58 | 10/09/06 | 1407 | Speed Draft Fee | 11/06 | 650000.00 | 856.41 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | Effective date: 10/07/06 | | | | | | | | | | | |
| | | | S/F C   REF# | | | | | | | | | |
| 59 | 10/31/06 | 10 | PMT-INT ON ESCROW | 11/06 | 650000.00 | 857.23 | .82 | .00 | .00 | .82 | .00 | |
| | | | S/F LB   REF# | | | | | | | | | |
| 60 | 11/09/06 | 1499 | Speed Draft Fee | 11/06 | 650000.00 | 857.23 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F   REF# | | | | | | | | | |
| 61 | 11/09/06 | 02 | PAYMENT | 12/06 | 650000.00 | 1637.88 | 4301.48 | .00 | 3520.83 | 780.65 | .00 | 135.42 11 |
| | Days since last Paymt on: 10/07/2006 | 33 | Eff Dt: 11/09/2006 | | | | Batch: 1109ACHS | IPT Dt: 11/01/06 | | | | |
| | | | S/F BA   REF# | | | | | | | | | |
| 62 | 11/09/06 | 1407 | Speed Draft Fee | 12/06 | 650000.00 | 1637.88 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C   REF# | | | | | | | | | |
| 63 | 11/30/06 | 10 | PMT-INT ON ESCROW | 12/06 | 650000.00 | 1639.67 | 1.79 | .00 | .00 | 1.79 | .00 | |
| | | | S/F LB   REF# | | | | | | | | | |
| 64 | 12/14/06 | 1499 | Speed Draft Fee | 12/06 | 650000.00 | 1639.67 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F   REF# | | | | | | | | | |
| 65 | 12/14/06 | 02 | PAYMENT | 1/07 | 650000.00 | 2420.32 | 4301.48 | .00 | 3520.83 | 780.65 | .00 | 135.42 11 |
| | Days since last Paymt on: 11/09/2006 | 35 | Eff Dt: 12/14/2006 | | | | Batch: 1214ACHS | IPT Dt: 12/01/06 | | | | |
| | | | S/F BA   REF# | | | | | | | | | |
| 66 | 12/14/06 | 1407 | Speed Draft Fee | 1/07 | 650000.00 | 2420.32 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C   REF# | | | | | | | | | |
| 67 | 12/29/06 | 10 | PMT-INT ON ESCROW | 1/07 | 650000.00 | 2422.92 | 2.60 | .00 | .00 | 2.60 | .00 | |
| | | | S/F LB   REF# | | | | | | | | | |
| 68 | 1/11/07 | 1499 | Speed Draft Fee | 2/07 | 650000.00 | 2422.92 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F   REF# | | | | | | | | | |
| 69 | 1/11/07 | 02 | PAYMENT | 2/07 | 650000.00 | 3203.57 | 4301.48 | .00 | 3520.83 | 780.65 | .00 | 135.42 11 |
| | Days since last Paymt on: 12/14/2006 | 28 | Eff Dt: 01/11/2007 | | | | Batch: 0111ACHS | IPT Dt: 1/01/07 | | | | |
| | | | S/F BA   REF# | | | | | | | | | |
| 70 | 1/11/07 | 1407 | Speed Draft Fee | 2/07 | 650000.00 | 3203.57 | 8.99 | .00 | .00 | .00 | .00 | 8.99 07 |
| | | | S/F C   REF# | | | | | | | | | |
| 71 | 1/25/07 | 1942 | TOWN TAX   ADVANCE | 2/07 | 650000.00 | 3777.41 | 573.84 | .00 | .00 | 573.84 | .00 | |

THOMAS LACASSE
153 VALLEY FORGE ROAD
WESTON                    CT 06883

LOAN TYPE 1-8   CONVENTIONAL
ACCOUNT NUM 7425910742

### 2007 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 4301.48 | 01/07 | 01/11 | | 3520.83 | 780.65 | | | 650,000.00 | 3,203.57 | |
| FEE PAID | 8.99 | 01/07 | 01/11 | | | | | 8.99 | 650,000.00 | 3,203.57 | |
| TAX DISB | | 01/07 | 01/25 | | | -3777.41 | | | 650,000.00 | -573.84 | |
| INT ON ESC | 2.88 | 01/07 | 01/31 | | | 2.88 | | | 650,000.00 | -570.96 | |
| PAYMENT | 4301.48 | 02/07 | 02/15 | | 3520.83 | 780.65 | | | 650,000.00 | 209.69 | |
| ADDL PRIN | 8.52 | 02/07 | 02/15 | 8.52 | | | | | 649,991.48 | 209.69 | |
| INT ON ESC | .14 | 02/07 | 02/28 | | | .14 | | | 649,991.48 | 209.83 | |
| PAYMENT | 4301.44 | 03/07 | 03/15 | | 3520.79 | 780.65 | | | 649,991.48 | 990.48 | |
| ADDL PRIN | 8.56 | 03/07 | 03/15 | 8.56 | | | | | 649,982.92 | 990.48 | |
| INT ON ESC | .78 | 03/07 | 03/30 | | | .78 | | | 649,982.92 | 991.26 | |
| PAYMENT | 4301.39 | 04/07 | 04/16 | | 3520.74 | 780.65 | | | 649,982.92 | 1,771.91 | |
| FEE PAID | 8.99 | 04/07 | 04/16 | | | | | 8.99 | 649,982.92 | 1,771.91 | |
| INT ON ESC | 1.73 | 04/07 | 04/30 | | | 1.73 | | | 649,982.92 | 1,773.64 | |
| PAYMENT | 4301.39 | 05/07 | 05/11 | | 3520.74 | 780.65 | | | 649,982.92 | 2,554.29 | |
| ADDL PRIN | 8.61 | 05/07 | 05/11 | 8.61 | | | | | 649,974.31 | 2,554.29 | |
| PAYMENT | 4301.34 | 06/07 | 06/29 | | 3520.69 | 780.65 | | | 649,974.31 | 3,334.94 | |
| TAX DISB | | 06/07 | 07/09 | | | -3883.68 | | | 649,974.31 | -548.74 | |
| PAYMENT | 4301.34 | 07/07 | 07/13 | | 3520.69 | 780.65 | | | 649,974.31 | 231.91 | |
| PAYMENT | 4302.00 | 08/07 | 08/10 | | 3520.69 | 780.65 | | .66 | 649,974.31 | 1,012.56 | |
| PAYMENT | 4192.00 | 09/07 | 09/14 | | 3520.69 | 671.31 | | | 649,974.31 | 1,683.87 | |
| PAYMENT | 4302.00 | 10/07 | 10/12 | | 3520.69 | 781.31 | | | 649,974.31 | 2,465.18 | |
| PAYMENT | 4302.00 | 11/07 | 11/14 | | 3520.69 | 757.23 | | 24.08 | 649,974.31 | 3,222.41 | |
| PAYMENT | 4169.24 | 12/07 | 12/14 | | 3520.69 | 648.55 | | | 649,974.31 | 3,870.96 | |
| INT ON ESC | 22.98 | 12/07 | 12/31 | | | 22.98 | | | 649,974.31 | 3,893.94 | |

```
PRINCIPAL  BALANCE  START OF PERIOD                    ESCROW  PAYMENT           648.55
PRINCIPAL  BALANCE  PAID DURING PERIOD         25.69
PRINCIPAL  BALANCE  END OF PERIOD          649,974.31

ESCROW        BALANCE START OF PERIOD      2,422.92    TOTAL  PAYMENT         4,169.24
ESCROW        PAID DURING PERIOD           9,132.11    ACCUM  LATE CHRG         151.29
ESCROW        DISBURSEMENTS               -7,661.09
ESCROW        BALANCE END OF PERIOD        3,893.94    ESCROW  INT EARNED        28.51

REFUND        OF OVERPAID INTEREST             0.00
INTEREST      REPORTABLE   DURING PERIOD   42248.76
PROPERTY      TAXES PAID DURING PERIOD     7,661.09
POINTS PAID                                    0.00
```

Entity060Org00000

```
TRN497CR-02                                   FOR TESTING USE ONLY:  Not a Transaction History                    5/21/07 14:19:39
MPRICE                                                       DETAIL TRANSACTION HISTORY                           JOB DT:   5/01/07
                                                                                                                 PAGE:        4
---TRANSACTION----                      NEXT -AFTER TRANS.BALANCES-    TOTAL    ----------------APPLIED----------------  MISC.PMTS
NBR   DATE   CODE -----DESCRIPTION------  DUE   PRINCIPAL     ESCROW   AMOUNT   PRINCIPAL  INTEREST    ESCROW  SUSPENSE/CD  &SRV.FEES
LOAN#  425910742            CONTINUED
             S/F SC  REF#
 72  1/25/07 6042 TOWN TAX       DISBURSED  2/07  650000.00      .00   3777.41-      .00       .00   3777.41-      .00
             PAYEE 4240816 #0006330792 DUE  8/01/06
             S/F SC  REF# 0006330792
 73  1/31/07 10    PMT-INT ON ESCROW        2/07  650000.00     2.88      2.88       .00       .00      2.88       .00
             S/F LB  REF#
 74  1/31/07 1919 RECOVER ESCROW ADVANCE    2/07  650000.00      .00      2.88-      .00       .00      2.88-      .00
 75  2/15/07 02    PAYMENT                  3/07  650000.00   780.65   4301.48       .00   3520.83    780.65       .00        135.42 11
Days since last Paymt on: 01/11/2007         35        Eff Dt: 02/15/2007    Batch: 0215LB01    IPT Dt:  2/01/07
             S/F LB  REF#
 76  2/15/07 1919 RECOVER ESCROW ADVANCE    3/07  650000.00   209.69    570.96-      .00       .00    570.96-      .00
             S/F LB  REF#
 77  2/15/07 11    PRINCIPAL PAYMENT        3/07  649991.48   209.69      8.52      8.52       .00       .00       .00
             S/F LB  REF#
 78  2/28/07 10    PMT-INT ON ESCROW        3/07  649991.48   209.83       .14       .00       .00       .14       .00
             S/F LB  REF#
 79  3/15/07 02    PAYMENT                  4/07  649991.48   780.65   4301.44       .00   3520.79    780.65       .00        135.42 11
Days since last Paymt on: 02/15/2007         28        Eff Dt: 03/15/2007    Batch: 0315LB01    IPT Dt:  3/01/07
             S/F LB  REF#
 80  3/15/07 11    PRINCIPAL PAYMENT        4/07  649982.92   990.48      8.56      8.56       .00       .00       .00
             S/F LB  REF#
 81  3/30/07 10    PMT-INT ON ESCROW        4/07  649982.92   991.26       .78       .00       .00       .78       .00
             S/F LB  REF#
 82  4/16/07 1499 Speed Draft Fee           4/07  649982.92   991.26      8.99       .00       .00       .00       .00          8.99 07
 83  4/16/07 02    PAYMENT                  5/07  649982.92  1771.91   4301.39       .00   3520.74    780.65       .00        135.41 11
Days since last Paymt on: 03/15/2007         30        Eff Dt: 04/14/2007    Batch: 0416ACHS    IPT Dt:  4/01/07
             S/F BA  REF#
 84  4/16/07 1407 Speed Draft Fee           5/07  649982.92  1771.91      8.99       .00       .00       .00       .00          8.99 07
     Effective date:  4/14/07
             S/F C   REF#
 85  4/30/07 10    PMT-INT ON ESCROW        5/07  649982.92  1773.64      1.73       .00       .00      1.73       .00
             S/F LB  REF#
             * * * * TOTALS * * * *                                   649982.92-49523.00
```

GMAC MORTGAGE
PO BOX 780
WATERLOO, IA 50704-0780

THOMAS LACASSE
153 VALLEY FORGE ROAD
WESTON          CT 06883

LOAN TYPE 1-8  CONVENTIONAL
ACCOUNT NUM 7425910742

### 2009 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAX DISB | | 12/08 | 01/22 | | | -11736.30 | | | 649,974.31 | -7,867.76 | |
| PROP INSPECT | 11.25 | 12/08 | 02/20 | | | | | 11.25 | 649,974.31 | -7,867.76 | |
| EXPENSE ADVA | 520.00 | 12/08 | 03/09 | | | | | 520.00 | 649,974.31 | -7,867.76 | |
| CORP ADV 3 D | 83.00 | 12/08 | 03/12 | | | | | 83.00 | 649,974.31 | -7,867.76 | |
| EXPENSE ADVA | 60.00 | 12/08 | 03/13 | | | | | 60.00 | 649,974.31 | -7,867.76 | |
| EXPENSE ADVA | 38.00 | 12/08 | 03/24 | | | | | 38.00 | 649,974.31 | -7,867.76 | |
| EXPENSE ADVA | 825.00 | 12/08 | 03/24 | | | | | 825.00 | 649,974.31 | -7,867.76 | |
| CORP ADV 2 E | 4875.00 | 12/08 | 03/30 | | | | | 4875.00 | 649,974.31 | -7,867.76 | |
| REVERSAL | -4875.00 | 12/08 | 03/31 | | | -4875.00 | | | 649,974.31 | -12,742.76 | |
| CORP ADV 2 E | 4875.00 | 12/08 | 03/31 | | | | | 4875.00 | 649,974.31 | -12,742.76 | |
| PROP INSPECT | 11.25 | 12/08 | 04/09 | | | | | 11.25 | 649,974.31 | -12,742.76 | |
| EXPENSE ADVA | 29.00 | 12/08 | 04/30 | | | | | 29.00 | 649,974.31 | -12,742.76 | |
| PROP INSPECT | 11.25 | 12/08 | 05/12 | | | | | 11.25 | 649,974.31 | -12,742.76 | |
| EXPENSE ADVA | 37.50 | 12/08 | 06/16 | | | | | 37.50 | 649,974.31 | -12,742.76 | |
| PROP INSPECT | 11.25 | 12/08 | 06/19 | | | | | 11.25 | 649,974.31 | -12,742.76 | |
| TAX DISB | | 12/08 | 07/13 | | | -5888.34 | | | 649,974.31 | -18,631.10 | |
| PROP INSPECT | 11.25 | 12/08 | 07/17 | | | | | 11.25 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 27.00 | 12/08 | 07/21 | | | | | 27.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 681.00 | 12/08 | 07/22 | | | | | 681.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 335.00 | 12/08 | 07/28 | | | | | 335.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 83.00 | 12/08 | 07/28 | | | | | 83.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 225.00 | 12/08 | 07/28 | | | | | 225.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 379.70 | 12/08 | 07/28 | | | | | 379.70 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 5.00 | 12/08 | 07/28 | | | | | 5.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 225.00 | 12/08 | 07/28 | | | | | 225.00 | 649,974.31 | -18,631.10 | |
| PROP INSPECT | 11.25 | 12/08 | 08/18 | | | | | 11.25 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 20.00 | 12/08 | 08/19 | | | | | 20.00 | 649,974.31 | -18,631.10 | |
| CORP ADV 3 D | 83.00 | 12/08 | 09/08 | | | | | 83.00 | 649,974.31 | -18,631.10 | |
| PROP INSPECT | 11.25 | 12/08 | 09/10 | | | | | 11.25 | 649,974.31 | -18,631.10 | |
| PROP INSPECT | 11.25 | 12/08 | 10/15 | | | | | 11.25 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 1125.00 | 12/08 | 11/03 | | | | | 1125.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 53.00 | 12/08 | 11/03 | | | | | 53.00 | 649,974.31 | -18,631.10 | |
| EXPENSE ADVA | 81.00 | 12/08 | 11/03 | | | | | 81.00 | 649,974.31 | -18,631.10 | |
| PROP INSPECT | 11.25 | 12/08 | 12/21 | | | | | 11.25 | 649,974.31 | -18,631.10 | |

2009 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|

SUMMARY TOTALS                              7425910742

PRINCIPAL BALANCE START OF PERIOD    649,974.31      P & I PAYMENT      3,520.69
PRINCIPAL PAID DURING PERIOD               0.00      ESCROW PAYMENT       666.67
PRINCIPAL BALANCE END OF PERIOD      649,974.31

ESCROW    BALANCE START OF PERIOD      3,868.54      TOTAL PAYMENT      4,187.36
ESCROW    PAID DURING PERIOD               0.00      ACCUM LATE CHRG    1,250.74
ESCROW    DISBURSEMENTS               -22,499.64
ESCROW    BALANCE END OF PERIOD      -18,631.10

REFUND    OF OVERPAID INTEREST            0.00
INTEREST  REPORTABLE  DURING PERIOD        0.00
PROPERTY  TAXES PAID DURING PERIOD    17,624.64
POINTS PAID                                0.00

Entity0600rg00000

2008 HOMECOMINGS FINANCIAL OF TRANSACTION ACCOUNT
HOMECOMINGS FINANCIAL
PO BOX 205
WATERLOO, IA 50704-0205

THOMAS LACASSE
153 VALLEY FORGE ROAD
WESTON                    CT 06883

LOAN TYPE 1-8  CONVENTIONAL
ACCOUNT NUM 7425910742

## 2008 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAX DISB | | 12/07 | 01/14 | | -3883.68 | | | 649,974.31 | | 10.26 | |
| PAYMENT | 4169.24 | 01/08 | 01/15 | | 3520.69 | 648.55 | | | 649,974.31 | 658.81 | |
| PAYMENT | 4302.00 | 02/08 | 02/04 | | 3520.69 | 648.55 | | 132.76 | 649,974.31 | 1,307.36 | |
| PAYMENT | 4169.24 | 03/08 | 03/17 | | 3520.69 | 648.55 | | | 649,974.31 | 1,955.91 | |
| PAYMENT | 4169.24 | 04/08 | 04/28 | | 3520.69 | 648.55 | | | 649,974.31 | 2,604.46 | |
| PAYMENT | 4169.24 | 05/08 | 05/30 | | 3520.69 | 648.55 | | | 649,974.31 | 3,253.01 | |
| PAYMENT | 4169.24 | 06/08 | 06/30 | | 3520.69 | 648.55 | | | 649,974.31 | 3,901.56 | |
| TAX DISB | | 06/08 | 07/17 | | -3993.26 | | | 649,974.31 | | -91.70 | |
| PAYMENT | 4169.24 | 07/08 | 07/30 | | 3520.69 | 648.55 | | | 649,974.31 | 556.85 | |
| PAYMENT | 4169.24 | 08/08 | 08/29 | | 3520.69 | 648.55 | | | 649,974.31 | 1,205.40 | |
| PAYMENT | 4169.24 | 09/08 | 09/30 | | 3520.69 | 648.55 | | | 649,974.31 | 1,853.95 | |
| PAYMENT | 4169.24 | 10/08 | 10/16 | | 3520.69 | 648.55 | | | 649,974.31 | 2,502.50 | |
| PAYMENT | 4187.36 | 11/08 | 12/01 | | 3520.69 | 666.67 | | | 649,974.31 | 3,169.17 | |
| SPEEDPAY FEE | 7.50 | 11/08 | 12/01 | | | | | 7.50 | 649,974.31 | 3,169.17 | |
| SPEEDPAY FEE | 7.50 | 11/08 | 12/01 | | | | | 7.50 | 649,974.31 | 3,169.17 | |
| PAYMENT | 4187.36 | 12/08 | 12/15 | | 3520.69 | 666.67 | | | 649,974.31 | 3,835.84 | |
| INT ON ESC | 32.70 | 12/08 | 12/31 | | | 32.70 | | | 649,974.31 | 3,868.54 | |

```
PRINCIPAL  BALANCE START OF PERIOD                      ESCROW  PAYMENT           666.67
PRINCIPAL  PAID DURING PERIOD             0.00
PRINCIPAL  BALANCE END OF PERIOD     649,974.31

ESCROW     BALANCE START OF PERIOD     3,893.94         TOTAL  PAYMENT          4,187.36
ESCROW     PAID DURING PERIOD          7,851.54         ACCUM  LATE CHRG        1,250.74
ESCROW     DISBURSEMENTS              -7,876.94
ESCROW     BALANCE END OF PERIOD       3,868.54         ESCROW  INT EARNED         32.70

REFUND     OF OVERPAID INTEREST           0.00
INTEREST   REPORTABLE   DURING PERIOD  42248.28
PROPERTY   TAXES PAID DURING PERIOD    7,876.94
POINTS PAID                               0.00
```

Entity060Org00000

```
GMAC Mortgage, LLC                                    PAGE      1
PO Box 780                                            DATE 03/29/12
3451 Hammond Avenue
Waterloo        IA 50704-0780
                                         HISTORY FOR ACCOUNT 7425910742


    --------- MAIL -------------------- --------- PROPERTY ----------------


    THOMAS LACASSE

    114 EMERSON RD APT D201          153 VALLEY FORGE ROAD

    LONGMEADOW      MA 01106-1877 WESTON              CT 06883

 ------ DATES ------ ---- CURRENT BALANCES ----- ------- UNCOLLECTED -------
PAID TO    12/01/08  PRINCIPAL       649974.31 LATE CHARGES      -1250.74
NEXT DUE   01/01/09  ESCROW          -68139.10 OPTIONAL INS          0.00
LAST PMT   12/15/08  UNAPPLIED FUND       0.00 INTEREST             0.00
AUDIT DT   02/02/06  UNAPPLIED CODES           FEES             -9018.70
                     BUYDOWN   FUND      0.00 ------ YEAR TO DATE -------
    LAST ACTIVITY    BUYDOWN   CODE           INTEREST             0.00
       02/21/12                              TAXES             5970.64
---------------------------------------------------------------------------

POST  TRN  DUE    TRANSACTION      PRINCIPAL    INTEREST        ESCROW
DATE  CDE  DATE    AMOUNT           PAID         PAID           PAID
------ --- ------ --------------- ------------- ------------- -------------
030909 FB  120108     520.00  40 EXPENSE ADVANCES
T:32551      /B:000
031209 FB  120108      83.00 164 CORP ADV 3 DRM
  REF NUMBER    SG0QEAD5NET8 DESC
T:21386      /B:000
031309 FB  120108      60.00  40 EXPENSE ADVANCES
T:32551      /B:000


032409 FB  120108      38.00  40 EXPENSE ADVANCES
T:32551      /B:000
032409 FB  120108     825.00  40 EXPENSE ADVANCES
T:32551      /B:000
033009 FB  120108    4875.00 163 CORP ADV 2 ESCROW
  REF NUMBER    SG0QINPF8SV0 DESC
T:05006      /B:000


033109 SR0 120108    -4875.00          .00        .00     -4875.00
  REF NUMBER    163 CLEANUP  DESC
               BAL AFTER      649974.31             -12742.76
T:01755    I/B:004                   00.00         -1250.74
033109 FE  120108    4875.00 163 CORP ADV 2 ESCROW
               163 CLEANUP
T:01755      /B:004



    INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                          PAGE      2
                                                         DATE 03/29/12


        --------- MAIL -------------------- --------- PROPERTY ---------------


        THOMAS LACASSE

        114 EMERSON RD APT D201            153 VALLEY FORGE ROAD

        LONGMEADOW          MA 01106-1877 WESTON          CT 06883

-----------------------------------------------------------------------------
    POST  TRN  DUE    TRANSACTION     PRINCIPAL    INTEREST       ESCROW
    DATE  CDE  DATE   AMOUNT          PAID         PAID           PAID
    ----- ---  ------ --------------- ------------ ------------- -------------
040909 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506       /B:001
043009 FB  120108        29.00  40 EXPENSE ADVANCES
T:32551       /B:000
051209 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506       /B:001
061609 FB  120108        37.50  40 EXPENSE ADVANCES
T:32551       /B:000

061909 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506       /B:001
071309 E91 120108     -5888.34  PAYEE = 0001.00021     .00      -5888.34
                      BAL AFTER       649974.31                -18631.10
T:32687       /B:001                          00.00            -1250.74
071709 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506       /B:001


072109 FB  120108        27.00  40 EXPENSE ADVANCES
T:32551       /B:000
072209 FB  120108       681.00  40 EXPENSE ADVANCES
T:32551       /B:000
072809 FB  120108       335.00  40 EXPENSE ADVANCES
T:32551       /B:000
072809 FB  120108        83.00  40 EXPENSE ADVANCES
T:32551       /B:000

072809 FB  120108       225.00  40 EXPENSE ADVANCES
T:32551       /B:000
072809 FB  120108       379.70  40 EXPENSE ADVANCES
T:32551       /B:000
072809 FB  120108         5.00  40 EXPENSE ADVANCES
T:32551       /B:000
072809 FB  120108       225.00  40 EXPENSE ADVANCES
T:32551       /B:000


        INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                        PAGE     3
                                                       DATE 03/29/12


     --------- MAIL -------------------- --------- PROPERTY ----------------

     THOMAS LACASSE

     114 EMERSON RD APT D201              153 VALLEY FORGE ROAD

     LONGMEADOW          MA 01106-1877 WESTON            CT 06883

--------------------------------------------------------------------------
 POST  TRN  DUE    TRANSACTION     PRINCIPAL     INTEREST        ESCROW
 DATE  CDE  DATE     AMOUNT          PAID          PAID           PAID
------ --- ------ --------------- ------------- ------------- -------------
081809 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506      /B:001
081909 FB  120108        20.00  40 EXPENSE ADVANCES
T:32551      /B:000
090809 FB  120108        83.00 164 CORP ADV 3 DRM
   REF NUMBER    SG0RRGFIOUT0 DESC
T:02726      /B:000


091009 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506      /B:001
101509 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506      /B:001
110309 UI  120108          .00          .00          .00          .00
                 BAL AFTER        649974.31              -18631.10
                 OPT PREMIUMS           .00 LATE CHARGE PYMT -1327.02*
T:02185      /B:000 OPTIONAL INS BAL    00.00 LATE CHARGE BAL  -2577.76

110309 AA  120108          .00          .00          .00          .00
                 BAL AFTER        649974.31              -18631.10
                 OPT PREMIUMS           .00 LATE CHARGE PYMT -1327.02*
T:02185      /B:000 OPTIONAL INS BAL    00.00 LATE CHARGE BAL  -2577.76
110309 FB  120108      1125.00  40 EXPENSE ADVANCES
T:32551      /B:000
110309 FB  120108        53.00  40 EXPENSE ADVANCES
T:32551      /B:000

110309 FB  120108        81.00  40 EXPENSE ADVANCES
T:32551      /B:000
120909 UI  120108          .00          .00          .00          .00
                 BAL AFTER        649974.31              -18631.10
                 OPT PREMIUMS           .00 LATE CHARGE PYMT  1327.02*
T:31574      /B:000 OPTIONAL INS BAL    00.00 LATE CHARGE BAL  -1250.74
120909 AA  120108          .00          .00          .00          .00
                 BAL AFTER        649974.31              -18631.10
                 OPT PREMIUMS           .00 LATE CHARGE PYMT  1327.02*
T:31574      /B:000 OPTIONAL INS BAL    00.00 LATE CHARGE BAL  -1250.74

    INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                          PAGE     4
                                                         DATE 03/29/12


       --------- MAIL -------------------- --------- PROPERTY ----------------

       THOMAS LACASSE

       114 EMERSON RD APT D201          153 VALLEY FORGE ROAD

       LONGMEADOW          MA 01106-1877 WESTON           CT 06883

--------------------------------------------------------------------------------
    POST  TRN  DUE    TRANSACTION     PRINCIPAL    INTEREST       ESCROW
    DATE  CDE  DATE    AMOUNT           PAID         PAID          PAID
    ------ --- ------ --------------- ------------- ------------- -------------
122109 FB  120108        11.25  11 PROP INSPECTION FEE
T:32506      /B:001
010410 FB  120108     20799.00 163 CORP ADV 2 ESCROW
  REF NUMBER    SG0SPD1TB6JO DESC
T:05006      /B:000
010510 SR0 120108    -20799.00        .00           .00      -20799.00
                  163 CLEANUP
                       BAL AFTER      649974.31
                                                               -39430.10
T:01755     I/B:005                     00.00                  -1250.74
010510 FE  120108     20799.00 163 CORP ADV 2 ESCROW
  REF NUMBER    163 CLEANUP  DESC
T:01755      /B:005
010710 E91 120108     -5888.34  PAYEE = 0001.00021    .00      -5888.34
                       BAL AFTER      649974.31
                                                               -45318.44
T:32687      /B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -1250.74
012210 UI  120108         .00           .00           .00          .00
                       BAL AFTER      649974.31              -45318.44
                       OPT PREMIUMS        .00  LATE CHARGE PYMT  -1692.63*
T:02195      /B:000  OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -2943.37
012210 AA  120108         .00           .00           .00          .00
                       BAL AFTER      649974.31              -45318.44
                       OPT PREMIUMS        .00  LATE CHARGE PYMT  -1692.63*
T:02195      /B:000  OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -2943.37
020210 FB  120108       335.00  40 EXPENSE ADVANCES
T:32551      /B:000
020210 FB  120108       350.00  40 EXPENSE ADVANCES
T:32551      /B:000

020910 WFB 120108       -53.00  40 EXPENSE ADVANCES
  REF NUMBER    SG0T2G59Q63O DESC
T:01883      /B:000
022510 R20 120108     19033.00        .00           .00      19033.00
  REF NUMBER    SG0T6HB0S4T0 DESC
                       BAL AFTER      649974.31
                                                               -26285.44
T:28725     I/B:001  OPTIONAL INS BAL     00.00  LATE CHARGE BAL  -2943.37



     INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                          PAGE      5
                                                         DATE 03/29/12


         --------- MAIL -------------------- --------- PROPERTY ----------------

         THOMAS LACASSE

         114 EMERSON RD APT D201              153 VALLEY FORGE ROAD

         LONGMEADOW          MA 01106-1877 WESTON              CT 06883

--------------------------------------------------------------------------------
POST  TRN  DUE    TRANSACTION    PRINCIPAL     INTEREST      ESCROW
DATE  CDE  DATE    AMOUNT          PAID          PAID        PAID
------ --- ------ --------------- ------------- ------------- -------------
032210 FB  120108     300.00  40 EXPENSE ADVANCES
T:32551     /B:000
062310 UI  120108        .00           .00          .00          .00
                    BAL AFTER        649974.31                -26285.44
                OPT PREMIUMS             .00  LATE CHARGE PYMT  1692.63*
T:20280     /B:000  OPTIONAL INS BAL    00.00  LATE CHARGE BAL  -1250.74
062310 AA  120108        .00           .00          .00          .00
                    BAL AFTER        649974.31                -26285.44
                OPT PREMIUMS             .00  LATE CHARGE PYMT  1692.63*
T:20280     /B:000  OPTIONAL INS BAL    00.00  LATE CHARGE BAL  -1250.74
071210 E91 120108    -5950.69  PAYEE = 0001.00021     .00     -5950.69
                    BAL AFTER        649974.31                -32236.13
T:32687     /B:001  OPTIONAL INS BAL    00.00  LATE CHARGE BAL  -1250.74
072110 FB  120108      83.00 164 CORP ADV 3 DRM
   REF NUMBER     SG0UB9ABET4O DESC
T:26663     /B:000
072210 FB  120108   13974.00 163 CORP ADV 2 ESCROW
   REF NUMBER     SG0UBF67N100 DESC
T:05006     /B:000
072310 SR0 120108   -13974.00          .00          .00     -13974.00
   REF NUMBER     163 CLEANUP  DESC
                    BAL AFTER        649974.31                -46210.13
T:22623     I/B:006                   00.00                   -1250.74
072310 FE  120108   13974.00 163 CORP ADV 2 ESCROW
                   163 CLEANUP
T:22623     /B:006


111010 FB  120108     150.00  40 EXPENSE ADVANCES
T:32551     /B:000
111010 FB  120108     550.00  40 EXPENSE ADVANCES
T:32551     /B:000
111110 FB  120108     150.00  40 EXPENSE ADVANCES
T:32551     /B:000
112410 FB  120108      23.50  11 PROP INSPECTION FEE
T:32506     /B:001


     INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                              PAGE      6
                                                             DATE 03/29/12


        --------- MAIL -------------------- --------- PROPERTY ----------------

        THOMAS LACASSE

        114 EMERSON RD APT D201              153 VALLEY FORGE ROAD

        LONGMEADOW           MA 01106-1877 WESTON              CT 06883

--------------------------------------------------------------------------------
  POST TRN DUE   TRANSACTION     PRINCIPAL      INTEREST       ESCROW
  DATE CDE DATE   AMOUNT           PAID           PAID          PAID
------ --- ------ --------------- ------------- ------------- -------------
120810 FB  120108       60.00  40 EXPENSE ADVANCES
T:32551      /B:000
122210 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001
010311 E91 120108   -5950.69  PAYEE = 0001.00021       .00    -5950.69
                    BAL AFTER          649974.31            -52160.82
T:32687      /B:001 OPTIONAL INS BAL        00.00 LATE CHARGE BAL  -1250.74


020111 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001
030211 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001
032911 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001
042111 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001


042811 FB  120108     4037.00 163 CORP ADV 2 ESCROW
  REF NUMBER    SG10I2PKD2H0 DESC
T:05006      /B:000
042911 SR0 120108     -4037.00          .00         .00    -4037.00
                      163 CLEANUP
                      BAL AFTER          649974.31            -56197.82
T:01755      I/B:004                          00.00            -1250.74


042911 FE  120108     4037.00 163 CORP ADV 2 ESCROW
  REF NUMBER    163 CLEANUP  DESC
T:01755      /B:004
052411 FB  120108       11.25  11 PROP INSPECTION FEE
T:32506      /B:001
070511 E91 120108   -5970.64  PAYEE = 0001.00021       .00    -5970.64
                    BAL AFTER          649974.31            -62168.46
T:32687      /B:001 OPTIONAL INS BAL        00.00 LATE CHARGE BAL  -1250.74


    INQ 1220
```

```
HISTORY FOR ACCOUNT  7425910742                          PAGE        7
                                                         DATE 03/29/12


        --------- MAIL -------------------- --------- PROPERTY ----------------


        THOMAS LACASSE


        114 EMERSON RD APT D201              153 VALLEY FORGE ROAD


        LONGMEADOW        MA 01106-1877 WESTON           CT 06883

-------------------------------------------------------------------------
POST  TRN  DUE     TRANSACTION    PRINCIPAL     INTEREST      ESCROW
DATE  CDE  DATE    AMOUNT         PAID          PAID          PAID
-----  ---  ------ --------------- ------------- ------------- -------------
070611 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001
071911 FB  120108      60.00  40 EXPENSE ADVANCES
T:32551       /B:000
081011 FB  120108      35.00  40 EXPENSE ADVANCES
T:32551       /B:000
081511 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001

092011 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001
092711 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001
101911 FB  120108      20.00  40 EXPENSE ADVANCES
T:32551       /B:000
110111 FB  120108     150.00  40 EXPENSE ADVANCES
T:32551       /B:000

110911 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001
112811 FB  120108      11.25  11 PROP INSPECTION FEE
T:32506       /B:001
121911 FB  120108     600.00  40 EXPENSE ADVANCES
T:32551       /B:000
121911 FB  120108    1005.00  40 EXPENSE ADVANCES
T:32551       /B:000

122211 FB  120108      28.75  11 PROP INSPECTION FEE
T:32506       /B:001
010312 E91 120108   -5970.64  PAYEE = 0001.00021      .00      -5970.64
                    BAL AFTER       649974.31                 -68139.10
T:32687       /B:001                          00.00            -1250.74
012012 FB  120108      20.00  11 PROP INSPECTION FEE
T:32506       /B:001



     INQ 1220
```

HISTORY FOR ACCOUNT  7425910742

PAGE      8
DATE 03/29/12

--------- MAIL -------------------- --------- PROPERTY ----------------

THOMAS LACASSE

114 EMERSON RD APT D201          153 VALLEY FORGE ROAD

LONGMEADOW          MA 01106-1877 WESTON          CT 06883

```
--------------------------------------------------------------------------
POST  TRN  DUE     TRANSACTION     PRINCIPAL     INTEREST      ESCROW
DATE  CDE  DATE    AMOUNT          PAID          PAID          PAID
----- --- ------ --------------- ------------- ------------- -------------
021712 FB  120108        53.00  40 EXPENSE ADVANCES
T:32551       /B:000
022112 FP  120108       -53.00  96 INV RECOV FEE
  REF NUMBER      REO LIST     DESC
T:01665       /B:002
022112 FE  120108        53.00  40 EXPENSE ADVANCES
                  REO LIST
T:01665       /B:002
```

END OF HISTORY

     INQ 1220

**A. Settlement Statement**

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

### B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv Unins | 6. File Number T205005391 | 7. Loan Number 042-591074-2 | 8. Mortgage Ins Case Number |
| 4. ☐ VA | 5. ☐ Conv Ins. | 6. ☐ Seller Finance | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Thomas LaCasse 153 Valley Forge Road Weston, CT 06883 | Joseph LaCasse 153 Valley Forge Road Weston, CT 06883 | Homecomings Financial Network, Inc. 800 Corporate Drive, Suite 424 FT. Lauderdale, FL 33334 |

| G. Property Location | H. Settlement Agent Name |  |
|---|---|---|
| 153 Valley Forge Road Weston, CT 06883 | Liberty Title & Escrow Co. 157S South County Trail East Greenwich, RI 02818  Tax ID: 06-1486668 | |
| | Place of Settlement Liberty Title & Escrow Co. - Notary Service 157S South County Trail East Greenwich, RI 02818 | I. Settlement Date 1/30/2006 Fund: 1/30/2006 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract Sales Price | $1,200,000.00 | 401. Contract Sales Price | $1,200,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $11,865.10 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City property taxes | | 406. City property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. Assessment Taxes | | 408. Assessment Taxes | |
| 109. School property taxes | | 409. School property taxes | |
| 110. Other taxes | | 410. Other taxes | |
| 111. Other taxes | | 411. Other taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| **120. Gross Amount Due From Borrower** | $1,211,865.10 | **420. Gross Amount Due to Seller** | $1,200,000.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | $650,000.00 | 502. Settlement Charges to Seller (line 1400) | $9,096.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan | $585,349.40 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. January Taxes | $3,661.18 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Gift of Equity | $550,000.00 | 509. Gifty of Equity | $550,000.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City property taxes   01/01/06 thru 01/30/06 | $606.83 | 510. City property taxes   01/01/06 thru 01/30/06 | $606.83 |
| 211. County property taxes | | 511. County property taxes | |
| 212. Assessment Taxes | | 512. Assessment Taxes | |
| 213. School property taxes | | 513. School property taxes | |
| 214. Other taxes | | 514. Other taxes | |
| 215. Other taxes | | 515. Other taxes | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | $1,200,606.83 | **520. Total Reduction Amount Due Seller** | $1,148,713.41 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross Amount due from borrower (line 120) | $1,211,865.10 | 601. Gross Amount due to seller (line 420) | $1,200,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | $1,200,606.83 | 602. Less reductions in amt. due seller (line 520) | $1,148,713.41 |
| **303. Cash From Borrower** | $11,258.27 | **603. Cash To Seller** | $51,286.59 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.
The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.
This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
The information requested does not lend itself to confidentiality.

Previous Editions are Obsolete

Page 1

form HUD-1 (3/86)
Handbook 4305.2

**L. Settlement Charges**

| 700. Total Sales/Broker's Commission based on price $1,200,000.00 @ % = $0.00 | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | | |
| 703. Commission Paid at Settlement | | $0.00 | $0.00 |
| **800. Items Payable In Connection with Loan** | | | |
| 801. Loan Origination Fee    0.5%    to  Northeast Funding Corporation | | $3,250.00 | |
| 802. Loan Discount    %    to | | | |
| 803. Broker Fee From HFN    to  Northeast Funding Corporation    POC (L) $8,125.00 | | | |
| 804. Appraisal Fee    to  Lincoln Appraisal | | $500.00 | |
| 805. Credit Report Fee    to  Northeast Funding Corporation | | $16.00 | |
| 806. Underwriting Fee    to  Homecomings Financial Network, Inc. | | $300.00 | |
| 807. Tax Service Fee    to  Homecomings Financial Network, Inc. | | $108.00 | |
| 808. Flood Cert. Fee    to  Homecomings Financial Network, Inc. | | $6.00 | |
| 809. Lender Funding/Review Fee    to  Homecomings Financial Network, Inc. | | $250.00 | |
| 810. Processing Fee    to  Northeast Funding Corporation | | $450.00 | |
| **900. Items Required by Lender To Be Paid in Advance** | | | |
| 901. Interest from  1/30/2006  to  2/1/2006 @ $115.7534/day | | $231.51 | |
| 902. Mortgage Insurance Premium for months    to | | | |
| 903. Hazard Insurance Premium for years    to | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Hazard insurance    months @    per month | | | |
| 1002. Mortgage insurance    months @    per month | | | |
| 1003. City property taxes    3    months @    $610.20    per month | | $1,830.59 | |
| 1004. County property taxes    months @    per month | | | |
| 1005. Assessment Taxes    months @    per month | | | |
| 1006. School property taxes    months @    per month | | | |
| 1007. Other taxes    months @    per month | | | |
| 1008. Other taxes    months @    per month | | | |
| 1011. Aggregate Adjustment | | | |
| **1100. Title Charges** | | | |
| 1101. Settlement or closing fee    to  Liberty Title and Escrow Company - Hud | | $595.00 | |
| 1102. Abstract or title search    to  Liberty Title and Escrow Company - Hud | | $295.00 | |
| 1103. Title examination    to  Liberty Title and Escrow Company - Hud | | | |
| 1104. Title insurance binder    to | | | |
| 1105. Document preparation    to  Liberty Title and Escrow Company - Hud | | | |
| 1106. Notary fees    to | | | |
| 1107. Attorney's fees    to | | | |
| (includes above items numbers:                                            ) | | | |
| 1108. Title insurance    to  Liberty Title and Escrow Company - Hud | | $3,740.00 | |
| (includes above items numbers:                                            ) | | | |
| 1109. Lender's coverage    $650,000.00/$0.00 | | | |
| 1110. Owner's coverage    $1,200,000.00/$3,740.00 | | | |
| 1111. Escrow fee    to | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Recording Fees    Deed $50.00 ; Mortgage $138.00 ; Rel $96.00    to Liberty Title & Escrow Co. - Recording | | $188.00 | $96.00 |
| 1202. City/county tax/stamps    Deed $3,000.00 ; Mortgage    to Liberty Title & Escrow Co. - Recording | | | $3,000.00 |
| 1203. State tax/stamps    Deed $6,000.00 ; Mortgage    to Liberty Title & Escrow Co. - Recording | | | $6,000.00 |
| 1204. Tax certificates    to  Liberty Title and Escrow Company - Hud | | | |
| 1205. Courier/Messenger Fee    to  Liberty Title and Escrow Company - Hud | | $30.00 | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey    to  Liberty Title and Escrow Company - Hud | | $75.00 | |
| 1302. Pest Inspection    to | | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | $11,865.10 | $9,096.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

Thomas LaCasse                                        Joseph LaCasse

Lee Kennedy Tierman
Commissioner of Superior Court
State of Connecticut

**SETTLEMENT AGENT CERTIFICATION**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Settlement Agent                                Date    11/8/06

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous Editions are Obsolete                    Page 2                    form HUD-1 (3/86)
                                                                        Handbook 4305.2

# ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30TH    day of   JANUARY, 2006    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
HOMECOMINGS FINANCIAL NETWORK, INC.

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:
153 VALLEY FORGE ROAD
WESTON, CT 06883

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of   6.5000       %. The Note provides
for changes in the interest rate and the monthly payments as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of    FEBRUARY, 2009      ,
and on that day every 12th month thereafter. Each date on which my interest rate could
change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae
UNIFORM INSTRUMENT
-166R (0401)  Form 3189 6/01   MFCD6131-(08/2004) / 042-591074-2
Page 1 of 4     Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND ONE FOURTH                                                           percentage points
(   2.2500                    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than
8.5000               % or less than 4.5000                    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    12.5000                    %.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _____

⬤-166R (0401)                          Page 2 of 4                                              Form 3189 6/01
MFCD6131 - (08/2004) / 042-591074-2

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest In Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

VMP-166R (0401)                    Page 3 of 4          Initials: _____          Form 3189 6/01
MFCD6131 - (08/2004) / 042-591074-2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
THOMAS LACASSE              -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                              -Borrower


VMP-166R (0401)                 Page 4 of 4                  Form 3189 6/01
MFCD6131 - (08/2004) / 042-591074-2

## Name Affidavit

THOMAS LACASSE
Borrower

JANUARY 30, 2006
Date

153 VALLEY FORGE ROAD

WESTON, CT 06883
Property Address

042-591074-2
Loan Number

BEFORE ME, the undersigned authority, a Notary Public, in and for said jurisdiction, on this day personally appeared THOMAS LACASSE
who after being by me first duly sworn, upon his/her oath does depose and say that:

ALIAS 1 THOMAS J LACASSE
ALIAS 3 _____
ALIAS 5 _____
ALIAS 7 _____
ALIAS 9 _____
ALIAS 11 _____

ALIAS 2 THOMAS JAMES LACASSE
ALIAS 4 _____
ALIAS 6 _____
ALIAS 8 _____
ALIAS 10 _____
ALIAS 12 _____

as the name(s) signed in connection with the purchase of property known as:
153 VALLEY FORGE ROAD, WESTON, CT 06883
is/are one and the same person as THOMAS LACASSE

THOMAS LACASSE                                           hereby certifies that the signature below is
his/her true and correct signature.

Borrower THOMAS LACASSE

Subscribed and sworn to before me this _____ day of _____
_____, in the County of _____ State of _____

Notary Public

Lee Kennedy Tiernan
Commissioner of Superior Court
State of Connecticut

My Commission expires _____

MFCD8319-01/2000

042-591074-2

# GMAC Mortgage

1 800 766 4622/Follow the Prompts

Important Note: In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: 7425910742

PROPERTY ADDRESS:
153 VALLEY FORGE ROAD
WESTON CT 06883

ANALYSIS DATE: SEPTEMBER 09, 2010

46299-0012819-006
THOMAS LACASSE
114 EMERSON RD APT D201
LONGMEADOW MA  01106-1877

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | FEBRUARY 2011 | 5,888.34 | 5,888.34 |
| CITY/TOWNSHIP | AUGUST 2011 | 5,950.69 | 5,888.34 |
| | TOTAL ANNUAL DISBURSEMENTS: | 11,839.03 | 11,776.68 |
| | TOTAL ESCROW PAYMENT: | 986.58 | 981.39 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $32,186.93, your new total payment will automatically be adjusted to $2,746.93 effective with your NOVEMBER 01, 2010 payment. If you do not pay the shortage, your total payment effective NOVEMBER 01, 2010 will be $5,429.17.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 986.58 | 981.39 |
| Surplus/Shortage | 2,682.24 | 0.00 |
| Escrow Shortage Spread 12 Months | | |
| | | |
| Total | 3,668.82 | 981.39 |
| Principal/Interest | 1,760.35 | 1,760.35 |
| Total Payment | 5,429.17 | 2,741.74 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.**

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT

# GMAC Mortgage

### THIS IS NOT A CHECK
NOTE   you must use this address when remitting your escrow shortage payment

THOMAS LACASSE

| Account Number | Shortage Amount |
|---|---|
| 7425910742 | 32,186.93 |

| Total Amount Enclosed  $ |
|---|

If you pay the escrow shortage amount of $32,186.93, your new payment will be automatically adjusted to $2,746.93 effective with your NOVEMBER 01, 2010 payment.

GMAC MORTGAGE
PO BOX 79162
PHOENIX AZ  85062 9162

By sending your check, please be aware that you are authorizing us to use information on your check to make a one time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

C16388

ANALYSIS TYPE: 1/6 AGGREGATE                                    ACCOUNT NUMBER: 7425910742
PROJECTED ESCROW BALANCE AS OF: OCTOBER 31, 2010          -28,240.54 *

*   Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
    disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|------------------------|----------------------|----------------------|
| PROJECTED BALANCE | | | 28,240.54- | |
| 11/01/10 | 986.58 | .00 | 27,253.96- | 3,946.39 |
| 12/01/10 | 986.58 | .00 | 26,267.38- | 4,932.97 |
| 01/01/11 | 986.58 | .00 | 25,280.80- | 5,919.55 |
| 02/01/11 | 986.58 | 5,888.34- | 30,182.56- | 6,906.13 |
| 03/01/11 | 986.58 | .00 | 29,195.98- | 2,004.37 |
| 04/01/11 | 986.58 | .00 | 28,209.40- | 2,990.95 |
| 05/01/11 | 986.58 | .00 | 27,222.82- | 3,977.53 |
| 06/01/11 | 986.58 | .00 | 26,236.24- | 4,964.11 |
| 07/01/11 | 986.58 | .00 | 25,249.66- | 5,950.69 |
| 08/01/11 | 986.58 | 5,950.69- | 30,213.77- | 6,937.27 |
| 09/01/11 | 986.58 | .00 | 29,227.19- | 1,973.16 L |
| 10/01/11 | 986.58 | .00 | 28,240.61- | 2,959.74 |
| | | | | 3,946.32 |

```
Current Escrow Balance: 46,210.13-

Esc Rcpts to Eff Dt        Esc Disb Prior to Eff Dt

Due Dt    Due Amt          Disb Date   Disb Amt
01/09     666.67
02/09     666.67
03/09     16,636.25 *


*Indicates Sum of Remaining Escrow Payments
&/or Escrow Disbursements to Effective Date.
```

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
         -30,213.77

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
         1,973.16

Section 3:  ➡  | SHORTAGE | 32,186.93 |

ESCROW ACCOUNT ACTIVITY (MAY 01, 2010 - OCTOBER 31, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| 02/01/10 | PAYMENT | 981.39 | 1,962.78 | PAYMENT | 19,033.00 | 26,285.44- |
| 02/01/10 | CITY/TOWNSHIP | 5,888.34- | 1,962.78 | | .00 | 26,285.44- |
| 03/01/10 | PAYMENT | 981.39 | 2,944.17 | | .00 | 26,285.44- |
| 04/01/10 | PAYMENT | 981.39 | 3,925.56 | | .00 | 26,285.44- |
| BEGINNING BALANCE | | | 3,925.56 | | | 26,285.44- |
| 05/01/10 | PAYMENT | 981.39 | 4,906.95 | | .00 | 26,285.44- |
| 06/01/10 | PAYMENT | 981.39 | 5,888.34 | | .00 | 26,285.44- |
| 07/01/10 | PAYMENT | 981.39 | 6,869.73 | PAYMENT | 13,974.00- | 46,210.13- |
| 07/01/10 | | .00 | 6,869.73 | CITY/TOWNSHIP | 5,950.69- | 46,210.13- |
| 08/01/10 | PAYMENT | 981.39 | 1,962.78 | | .00 | 46,210.13- |
| 08/01/10 | CITY/TOWNSHIP | 5,888.34- | 1,962.78 | | .00 | 46,210.13- |
| 09/01/10 | PAYMENT | 981.39 | 2,944.17 | | .00 | 46,210.13- |
| 10/01/10 | PAYMENT | 981.39 | 3,925.56 | | .00 | 46,210.13- |

# GMAC
## Mortgage

1 800 766 4622/Follow the Prompts

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

**ESCROW ANALYSIS STATEMENT**

ACCOUNT NUMBER: 7425910742

PROPERTY ADDRESS:
153 VALLEY FORGE ROAD
WESTON CT 06883

ANALYSIS DATE: MARCH 05, 2010

45831-0001396-001
THOMAS LACASSE
153 VALLEY FORGE RD
WESTON CT   06883-2025

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | AUGUST 2010 | 5,888.34 | 5,888.34 |
| CITY/TOWNSHIP | FEBRUARY 2011 | 5,888.34 | 5,888.34 |
| | TOTAL ANNUAL DISBURSEMENTS: | 11,776.68 | 11,776.68 |
| | TOTAL ESCROW PAYMENT: | 981.39 | 981.39 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

| | | |
|---|---|---|
| New Payment Amount: | | 2,741.74 |
| New Payment Effective: | | MAY 01, 2010 |
| Next Scheduled Analysis: | | MAY 01, 2011 |

Payment change:

| | New | Prior Analysis |
|---|---|---|
| Escrow | 981.39 | 981.39 |
| | | |
| Total | 981.39 | 981.39 |
| Principal/Interest | 1,760.35 | 2,437.40 |
| Total Payment | 2,741.74 | 3,418.79 |

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: **1-800-256-9962.**

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

UNRELEASED SURPLUS NOTICE

# GMAC
## Mortgage

**THIS IS NOT A CHECK**

| Account Number | Surplus Amount |
|---|---|
| 7425910742 | 21,486.50 |

THOMAS LACASSE

C16387

INTERNET REPRINT

ANALYSIS TYPE: 1/6 AGGREGATE                                    ACCOUNT NUMBER: 7425910742
PROJECTED ESCROW BALANCE AS OF: APRIL 30, 2010                  65,028.31  *

* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|------------------------|-----------------------|------------------------|
| PROJECTED BALANCE | | | 25,412.06 | |
| POC SHTG | 39,616.25 | | 65,028.31 | 3,925.56 |
| 05/01/10 | 981.39 | .00 | 66,009.70 | 4,906.95 |
| 06/01/10 | 981.39 | .00 | 66,991.09 | 5,888.34 |
| 07/01/10 | 981.39 | .00 | 67,972.48 | 6,869.73 |
| 08/01/10 | 981.39 | 5,888.34- | 63,065.53 | 1,962.78 L |
| 09/01/10 | 981.39 | .00 | 64,046.92 | 2,944.17 |
| 10/01/10 | 981.39 | .00 | 65,028.31 | 3,925.56 |
| 11/01/10 | 981.39 | .00 | 66,009.70 | 4,906.95 |
| 12/01/10 | 981.39 | .00 | 66,991.09 | 5,888.34 |
| 01/01/11 | 981.39 | .00 | 67,972.48 | 6,869.73 |
| 02/01/11 | 981.39 | 5,888.34- | 63,065.53 | 1,962.78 |
| 03/01/11 | 981.39 | .00 | 64,046.92 | 2,944.17 |
| 04/01/11 | 981.39 | .00 | 65,028.31 | 3,925.56 |

```
Current Escrow Balance: 26,285.44-

Esc Rcpts to Eff Dt        Esc Disb Prior to Eff Dt

Due Dt   Due Amt           Disb Date   Disb Amt
01/09    666.67
02/09    666.67
03/09    10,747.91 *

*Indicates Sum of Remaining Escrow Payments
&/or Escrow Disbursements to Effective Date.
```

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
63,065.53

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
1,962.78

Section 3: ➡    | SURPLUS | 21,486.50 |

ESCROW ACCOUNT ACTIVITY (FEBRUARY 01, 2010 - APRIL 30, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|------------------|-------------------|-----|---------------|----------------|
| 11/01/09 | PAYMENT | 823.46 | 4,117.38 | | .00 | 18,631.10- |
| 12/01/09 | PAYMENT | 823.46 | 4,940.84 | | .00 | 18,631.10- |
| 01/01/10 | PAYMENT | 823.46 | 5,764.30 | PAYMENT | 20,799.00- | 45,318.44- |
| 01/01/10 | | .00 | 5,764.30 | CITY/TOWNSHIP | 5,888.34- | 45,318.44- |
| BEGINNING BALANCE | | | 6,869.73 | | | |
| 02/01/10 | PAYMENT | 981.39 | 1,962.78 | PAYMENT | 19,033.00 | 26,285.44- |
| 02/01/10 | CITY/TOWNSHIP | 5,888.34- | 1,962.78 | | .00 | 26,285.44- |
| 03/01/10 | PAYMENT | 981.39 | 2,944.17 | | .00 | 26,285.44- |
| 04/01/10 | PAYMENT | 981.39 | 3,925.56 | | .00 | 26,285.44- |

**GMAC**
**Mortgage**

Waterloo, IA 5702
1 800 766 4622/Follow the Prompts

Important Note: In accordance with RESPA
requirements, this notice is being sent as a
result of the review completed on your escrow
account.

### ESCROW ANALYSIS STATEMENT

ACCOUNT NUMBER: 7425910742

PROPERTY ADDRESS:
153 VALLEY FORGE ROAD
WESTON CT 06883

ANALYSIS DATE: JANUARY 25, 2010

45731-0010646-005
THOMAS LACASSE
153 VALLEY FORGE RD
WESTON CT  06883-2025

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| CITY/TOWNSHIP | FEBRUARY 2010 | 5,888.34 | 3,993.26 |
| CITY/TOWNSHIP | AUGUST 2010 | 5,888.34 | 5,888.34 |
| | TOTAL ANNUAL DISBURSEMENTS: | 11,776.68 | 9,881.60 |
| | TOTAL ESCROW PAYMENT: | 981.39 | 823.46 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

New Payment Amount:                                      3,418.79
New Payment Effective:                          FEBRUARY 01, 2010
Next Scheduled Analysis:                        FEBRUARY 01, 2011

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 981.39 | 823.46 |
| | | |
| Total | 981.39 | 823.46 |
| Principal/Interest | 2,437.40 | 2,437.40 |
| Total Payment | 3,418.79 | 3,260.86 |

For details about the difference between the old and new payment amounts, please reference the ESTIMATED
AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

**Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.**

If you are utilizing a military allotment, or third-party company to make payments on your behalf,
please notify your service of any payment changes.

**GMAC**
**Mortgage**

You will receive the escrow analysis surplus check in
the amount of    $2,453.50 under separate cover.

C19006

ANALYSIS TYPE: 1/6 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: JANUARY 31, 2010      ACCOUNT NUMBER: 7425910742

48,939.48 *

   * Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and
    disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|-------------------------|------------------------|------------------------|
| PROJECTED BALANCE | | | 9,323.23 | 6,869.73 |
| POC SHTG | 39,616.25 | | 48,939.48 | |
| 02/01/10 | 981.39 | 5,888.34- | 44,032.53 | 1,962.78 L |
| 03/01/10 | 981.39 | .00 | 45,013.92 | 2,944.17 |
| 04/01/10 | 981.39 | .00 | 45,995.31 | 3,925.56 |
| 05/01/10 | 981.39 | .00 | 46,976.70 | 4,906.95 |
| 06/01/10 | 981.39 | .00 | 47,958.09 | 5,888.34 |
| 07/01/10 | 981.39 | .00 | 48,939.48 | 6,869.73 |
| 08/01/10 | 981.39 | 5,888.34- | 44,032.53 | 1,962.78 |
| 09/01/10 | 981.39 | .00 | 45,013.92 | 2,944.17 |
| 10/01/10 | 981.39 | .00 | 45,995.31 | 3,925.56 |
| 11/01/10 | 981.39 | .00 | 46,976.70 | 4,906.95 |
| 12/01/10 | 981.39 | .00 | 47,958.09 | 5,888.34 |
| 01/01/11 | 981.39 | .00 | 48,939.48 | 6,869.73 |

```
Current Escrow Balance: 45,318.44-

Esc Rcpts to Eff Dt        Esc Disb Prior to Eff Dt

Due Dt    Due Amt          Disb Date   Disb Amt
01/09     666.67
02/09     666.67
03/09     7,803.74 *

*Indicates Sum of Remaining Escrow Payments
 &/or Escrow Disbursements to Effective Date.
```

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
    44,032.53

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
    1,962.78

Section 3:  ➡  | SURPLUS | 2,453.50 |

ESCROW ACCOUNT ACTIVITY (NOVEMBER 01, 2009 - JANUARY 31, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|-------------------|--------------------|-----|----------------|-----------------|
| 08/01/09 | PAYMENT | 656.41 | 1,312.82 | | .00 | 18,631.10- |
| 08/01/09 | CITY/TOWNSHIP | 3,993.26- | 1,312.82 | | .00 | 18,631.10- |
| 09/01/09 | PAYMENT | 656.41 | 1,969.23 | | .00 | 18,631.10- |
| 10/01/09 | PAYMENT | 656.41 | 2,625.64 | | .00 | 18,631.10- |
| BEGINNING BALANCE | | | 3,293.92 | | | 18,631.10- |
| 11/01/09 | PAYMENT | 823.46 | 4,117.38 | | .00 | 18,631.10- |
| 12/01/09 | PAYMENT | 823.46 | 4,940.84 | | .00 | 18,631.10- |
| 01/01/10 | PAYMENT | 823.46 | 5,764.30 | PAYMENT | 20,799.00- | 45,318.44- |
| 01/01/10 | | .00 | 5,764.30 | CITY/TOWNSHIP | 5,888.34- | 45,318.44- |

5922
7425910742

# Homecomings Financial

*A GMAC Company*
INSURANCE SERVICE CENTER
P.O. BOX 4075
CORAOPOLIS, PA  15108-6946

Notification Date:  04/01/2009

**NOTICE OF PLACEMENT**

001485 - 010451
THOMAS LACASSE
153 VALLEY FORGE RD
WESTON, CT 06883-2025

RE:  **REFERENCE NUMBER: 5922**
Loan Number: 5922-0000-7425910742
Hazard Insurance Uninsured Date: 12/25/2008
Property Location:   153 VALLEY FORGE ROAD
WESTON CT  06883

Certificate Number:    B-7735128
Effective Date:        12/25/2008                    Expiration Date:  12/25/2009
Dwelling Limit:        $649,974.00                   Annual Charge:  $4,875.00
THIS COVERAGE WILL NOT PROTECT YOUR INTEREST IN THE PROPERTY.

Deductibles: All perils except Windstorm/Hail
Residential Occupied:    $250.00
Residential Vacant:      $500.00
Commercial Occupied:     $500 (except CA, GU - Deductible $1,000)
Commercial Vacant:       $1,000 or 2% of the insured amount, whichever is greater
                         Vandalism and Malicious Mischief:  $5,000 or 2% of the insured amount, whichever is greater
(Deductibles may change if occupancy changes.)

For Residential properties in the state of FL
Windstorm/Hail Deductible Applies:  Greater of $2,000 or 2% of dwelling limit

Dear Customer:

We have obtained lender-placed insurance coverage with BALBOA INSURANCE COMPANY to provide the necessary insurance protection under the terms of your mortgage. We have notified you during the past 90 days that this insurance would be placed if we did not receive a copy of a valid hazard insurance policy.

The cost of the insurance in the amount of $4,875.00 was advanced for the period 12/25/2008 to 12/25/2009. The coverage amount placed is based on the lesser of the replacement value, which we believe is the last known amount of coverage you purchased, and your current principal balance. Lender-placed insurance does not provide guaranteed replacement cost coverage. Appropriate changes to your monthly payment will be made as indicated in our previous letter.

This insurance will remain in force unless we receive evidence of a hazard insurance policy with an effective date on or before 12/25/2008. Evidence of a valid policy in effect at a later date will result in cancellation of the coverage. Any insurance charges not used will be credited to your account.

RE:  THOMAS LACASSE
    Loan Number:  5922-0000-7425910742

## IMPORTANT NOTICE TO CUSTOMER

The insurance we obtained to protect our interest in your property applies only to the dwelling at the coverage amount indicated. Coverage does not extend to contents or personal property and may not be adequate to protect the equity in the property. If the limit is only sufficient to insure the principal balance of your loan then the lender-placed policy may not be adequate to protect the value of your property that exceeds the amount of your mortgage. Also, there is no coverage for liability protection with this insurance. This insurance may be more expensive than coverage you could arrange on your own. We recommend you place full insurance coverage that adequately protects both your and the lender's interest with a company of your choice.

When you furnish acceptable proof of other insurance, the lender will cancel the insurance coverage and you will be entitled to a refund of any insurance charges not used. HOMECOMINGS FINANCIAL, LLC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance.

Should you have any questions regarding this matter, please do not hesitate to contact our office at  (800) 237-6787 from 4 a.m. to 8 p.m. PST, Monday through Friday. If you would like to submit a claim, please call (800) 323-7466. Your call may be monitored for quality assurance.


Thank you,

Insurance Department
Homecomings Financial

**REMINDER...**
**MAIL POLICY TO:**
HOMECOMINGS FINANCIAL, LLC
ITS SUCCESSOR AND/OR ASSIGNS
P.O. BOX 4075
CORAOPOLIS, PA 15108-6946

Or Fax to: (866) 528-5112

5922
7425910742

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  01/06/2010

003339 - 007729
THOMAS LACASSE
153 VALLEY FORGE RD
WESTON, CT 06883-2025

**NOTICE OF PLACEMENT**

RE:  **REFERENCE NUMBER: 5922**
   Loan Number: 5922-0000-7425910742
   Hazard Insurance Uninsured Date: 12/25/2009
   Property Location:   153 VALLEY FORGE ROAD
               WESTON CT  06883

Certificate Number:    B-7870459
Effective Date:        12/25/2009        Expiration Date:  12/25/2010
Dwelling Limit:        $649,974.00       Annual Charge:  $20,799.00
THIS COVERAGE WILL NOT PROTECT YOUR INTEREST IN THE PROPERTY.

Deductible: $1000.00

Dear Customer:

We have obtained lender-placed insurance coverage with BALBOA INSURANCE COMPANY to provide the necessary insurance protection under the terms of your mortgage. We have notified you during the past 60 days that this insurance would be placed for an additional one year term if we did not receive a copy of a valid hazard insurance policy.

The cost of the insurance in the amount of $20,799.00 was advanced for the period 12/25/2009 to 12/25/2010. This amount is based on our records which show that the occupancy status of the location above is Vacant and the dwelling is a 51+ year old home. If this information is incorrect, please contact us at 1-866-317-5830. The coverage amount placed is based on the lesser of the replacement value, which we believe is the last known amount of coverage you purchased, and the total unpaid principal balances of all mortgages held by GMAC Mortgage, LLC for the above referenced property. Lender-placed insurance does not provide guaranteed replacement cost coverage. Appropriate changes to your monthly payment will be made as indicated in our previous letter.

This insurance will remain in force unless we receive evidence of a hazard insurance policy with an effective date on or before 12/25/2009. Evidence of a valid policy in effect at a later date will result in cancellation of the coverage. Any insurance charges not used will be credited to your account.

### IMPORTANT NOTICE TO CUSTOMER

The insurance we obtained to protect our interest in your property applies only to the dwelling at the coverage amount indicated. Coverage does not extend to contents or personal property and may not be adequate to protect the equity in the property. If the limit is only sufficient to insure the principal balance of your loan then the lender-placed policy may not be adequate to protect the value of your property that exceeds the amount of your mortgage. Also, there is no coverage for liability protection with this insurance. This insurance may be more expensive than coverage you could arrange on your own. We recommend you place full insurance coverage that adequately protects both your and the

RE:  THOMAS LACASSE
       Loan Number:  5922-0000-7425910742

lender's interest with a company of your choice. In the event of a claim, all amounts due under the policy will be paid to GMAC Mortgage, LLC, except amounts which are in excess of GMAC Mortgage, LLC's interest which will be forwarded to you.

When you furnish acceptable proof of other insurance, the lender will cancel the insurance coverage and you will be entitled to a refund of any insurance charges not used. GMAC MORTGAGE, LLC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance.

Should you have any questions regarding this matter, please do not hesitate to contact our office at 1-866-317-5830 from 4 a.m. to 8 p.m. PST, Monday through Friday. If you would like to submit a claim, please call (800) 323-7466. Your call may be monitored for quality assurance.

Thank you,

Insurance Department
GMAC Mortgage, LLC

**REMINDER...**
**MAIL POLICY TO:**
GMAC MORTGAGE, LLC
ITS SUCCESSOR AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

Or Fax to: (866) 336-9021

### NOTICE OF LENDER-PLACED INSURANCE

Residential Property Fire Insurance
Risk Based Protection

## BALBOA INSURANCE COMPANY

(a stock company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

Date: 01/06/2010

Control Number: B7870459
Policy Number: 6043-0002
Loan Number: 5922-0000-7425910742

| NAMED INSURED: | BORROWER: |
|---|---|
| GMAC MORTGAGE, LLC | THOMAS LACASSE |
| INSURANCE SERVICE CENTER | 153 VALLEY FORGE RD |
| P.O. BOX 4025 | WESTON, CT  06883-2025 |
| CORAOPOLIS, PA  15108-6942 | |

Coverage Period:  From: 12/25/2009 Until: 12/25/2010, beginning and ending at 12:01 am Standard time at the DESCRIBED LOCATION.

DESCRIBED LOCATION:                     LIMIT OF LIABILITY FOR RESIDENTIAL PROPERTY:
153 VALLEY FORGE ROAD
WESTON CT 06883                          $649,974.00

DEDUCTIBLES:                             $1,000.00      Occupied
                                         $1,000.00      Vacant

PREMIUM:    Insurance premium:           $20,799.00
            Total Premium:               $20,799.00

The NAMED INSURED has purchased insurance on the DESCRIBED LOCATION for the amount and premium indicated above.

The contract of insurance is only between the NAMED INSURED and Balboa Insurance Company. There is no contract of insurance between the BORROWER and Balboa Insurance Company. The insurance purchased is intended for the benefit and protection of the NAMED INSURED, insures against LOSS only to the dwelling and OTHER STRUCTURES on the DESCRIBED LOCATION, and may not sufficiently protect the BORROWER'S interest in the property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability. NO COVERAGE IS PROVIDED FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form. The NAMED INSURED may cancel the insurance coverage at any time.

This NOTICE is for information purposes only. It does not amend, extend, or alter the insurance contained in the Residential Property Fire Insurance Form. Any coverage provided is subject to the terms, conditions, limitations and exclusions contained in the Residential Property Fire Insurance Form.

**This insurance covers the NAMED INSURED/Lenders' interest only and does not protect the BORROWER's interest in real property, contents or the BORROWER's legal liability for damage to others.**

To report a claim, call:  (800) 323-7466
For other inquiries, call:        (800) 256-9962

01A09-06NT0007-E0205                              1

5922
7425910742

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

**CANCELLATION NOTICE**

Notification Date:          02/16/2010

000984 - 002267
THOMAS LACASSE
153 VALLEY FORGE RD
WESTON, CT 06883-2025

RE:  Loan Number:              5922-0000-7425910742
     Property Location:         153 VALLEY FORGE ROAD
                                WESTON CT  06883
     Master Policy Number:      6043-0002
     Certificate Number:        B-7870459
     Cancellation Reason:       DUPLICATE COVERAGE

Dear Customer:

The lender-placed insurance we obtained on your property was cancelled on 01/25/2010 for the reason stated above. The effective date of your homeowner's insurance policy is later than the effective date of the lender-placed coverage so you will receive only a partial credit of the insurance costs we previously charged to you which will be applied to your escrow account.

To receive a credit for the remaining portion of the costs for the lender-placed insurance, please send us documentation, preferably a copy of your homeowner's policy, that shows you had insurance in effect for the period 12/25/2009 through 01/25/2010.

If you have any questions, please call, toll-free, (800) 256-9962, Monday through Friday, 4 a.m. to 8 p.m. PST. Calls to our Insurance Department may be monitored for quality assurance.

Thank you,

Insurance Department
GMAC Mortgage, LLC

5922
7425910742

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  07/25/2010

002773 - 006781
THOMAS LACASSE
114 EMERSON RD
APT D201
LONGMEADOW, MA 01106-1877

**NOTICE OF PLACEMENT**

RE:  **REFERENCE NUMBER: 5922**
Loan Number: 5922-0000-7425910742
Hazard Insurance Uninsured Date: 04/20/2010
Property Location:   153 VALLEY FORGE ROAD
WESTON CT  06883

Certificate Number:   B-7949802
Effective Date:           04/20/2010               Expiration Date:  04/20/2011
Dwelling Limit:           $649,974.00              Annual Charge:   $13,974.00
THIS COVERAGE WILL NOT PROTECT YOUR INTEREST IN THE PROPERTY.

Deductible: $1,000.00

Dear Customer:

As we have not received a copy of a valid hazard insurance policy on your property, we have obtained lender-placed hazard insurance coverage with BALBOA INSURANCE COMPANY to provide the necessary insurance protection under the terms of your mortgage / deed of trust. We have notified you during the past 90 days that this insurance would be placed if we did not receive a copy of a valid hazard insurance policy.

The cost of the insurance, in the amount of $13,974.00, was advanced for the period 04/20/2010 to 04/20/2011.  This amount is based on our records which show that the occupancy status of the location above is Vacant and the dwelling is a 51+ year old home.  If this information is incorrect, please contact us at (800) 256-9962.  The coverage amount placed is based on the replacement value, which we believe is the last known amount of coverage you purchased. If, however, we do not have that information, the coverage amount is based on the unpaid principal balance of all mortgage liens against the property that are serviced by us.  Lender-placed hazard insurance does not provide guaranteed replacement cost coverage.

As indicated in our previous notices and pursuant to your loan documents, the cost of this insurance coverage is your responsibility and will be included in any statements that you may receive going forward.  If you obtain your own insurance coverage and there is a lapse between the effective date of your policy and the lender-placed hazard insurance coverage, you will be responsible for the insurance charges for that period.

This lender-placed hazard insurance will remain in force unless we receive evidence of a hazard insurance policy with an effective date on or before 04/20/2010.  However, if you provide such evidence with a later effective date, the lender-placed hazard insurance coverage will be canceled and a credit will be provided for unused insurance charges. GMAC Mortgage, LLC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance.

RE:  THOMAS LACASSE
      Loan Number:  5922-0000-7425910742

## IMPORTANT NOTICE TO CUSTOMER

The insurance we obtained to protect our interest in your property applies only to the dwelling at the coverage amount indicated.  Coverage does not extend to contents or personal property and may not be adequate to protect your equity in your property.  If the limit is only sufficient to insure the principal balance of your loan, then the lender-placed hazard insurance coverage may not be adequate to protect the value of your property that exceeds the amount of your mortgage.  Also, there is no coverage for liability protection with this insurance. This insurance may be more expensive than coverage you could arrange on your own.  We recommend you obtain full insurance coverage that adequately protects your and the lender's interest with a company of your choice.  In the event of a claim, all amounts due under the insurance coverage will be paid to GMAC Mortgage, LLC except amounts which are in excess of our interest which will be forwarded to you.

Should you have any questions regarding this matter, please do not hesitate to contact our office at (800) 256-9962 from 4 a.m. to 8 p.m. PST, Monday through Friday. If you would like to submit a claim, please call (800) 323-7466.  Your call may be monitored for quality assurance.

**Notice Regarding Bankruptcy:**  If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt.  Any action taken by GMAC Mortgage, LLC is for the sole purpose of protecting our lien interest in your property and not to recover any amounts from you personally.  If you have surrendered your property during your bankruptcy case and you are no longer occupying the property, you may disregard this notice.  **If you are represented by an attorney in a bankruptcy proceeding, you should review this notice and discuss any questions you may have regarding this notice with your attorney.**

Thank you,

Insurance Department
GMAC Mortgage, LLC

**REMINDER...**
**MAIL POLICY TO:**
GMAC MORTGAGE, LLC
ITS SUCCESSOR AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

Or Fax to: (866) 336-9021

### NOTICE OF LENDER-PLACED INSURANCE

Residential Property Fire Insurance
Risk Based Protection

## BALBOA INSURANCE COMPANY

(a stock company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

Date:  07/25/2010

Control Number: B7949802
Policy Number: 6043-0002
Loan Number: 5922-0000-7425910742

NAMED INSURED:                                    BORROWER:

GMAC MORTGAGE, LLC                               THOMAS LACASSE
INSURANCE SERVICE CENTER                         114 EMERSON RD
P.O. BOX 4025                                    LONGMEADOW, MA  01106-1877
CORAOPOLIS, PA  15108-6942

Coverage  Period:  From: 04/20/2010 Until: 04/20/2011, beginning and ending at 12:01 am Standard time at the DESCRIBED LOCATION.

DESCRIBED LOCATION:                          LIMIT OF LIABILITY FOR RESIDENTIAL PROPERTY:
153 VALLEY FORGE ROAD
WESTON CT 06883                              $649,974.00

DEDUCTIBLES:                                 $1,000.00      Occupied
                                            $1,000.00      Vacant

PREMIUM:    Insurance premium:              $13,974.00
            Total Premium:                  $13,974.00

The NAMED INSURED has purchased insurance on the DESCRIBED LOCATION for the amount and premium indicated above.

The contract of insurance is only between the NAMED INSURED and Balboa Insurance Company. There is no contract of insurance between the BORROWER and Balboa Insurance Company. The insurance purchased is intended for the benefit and protection of the NAMED INSURED, insures against LOSS only to the dwelling and OTHER STRUCTURES on the DESCRIBED LOCATION, and may not sufficiently protect the BORROWER'S interest in the property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability. NO COVERAGE IS PROVIDED FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form. The NAMED INSURED may cancel the insurance coverage at any time.

This NOTICE is for information purposes only. It does not amend, extend, or alter the insurance contained in the Residential Property Fire Insurance Form. Any coverage provided is subject to the terms, conditions, limitations and exclusions contained in the Residential Property Fire Insurance Form.

**This insurance covers the NAMED INSURED/Lenders' interest only and does not protect the BORROWER's interest in real property, contents or the BORROWER's legal liability for damage to others.**

To report a claim, call:  (800) 323-7466
For other inquiries, call:       (800) 256-9962

01A09-06NT0007-E0205                               1

5922
7425910742

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

Notification Date:  05/01/2011

002545 - 005925
THOMAS LACASSE
114 EMERSON RD
APT D201
LONGMEADOW, MA 01106-1877

## NOTICE OF PLACEMENT RENEWAL NOTIFICATION CERTIFICATE

RE:  **REFERENCE NUMBER: 5922**
   Loan Number: 5922-0000-7425910742
   Hazard Insurance Uninsured Date: 04/20/2011
   Property Location:   153 VALLEY FORGE ROAD
                WESTON CT  06883

Certificate Number:    B-2570517
Effective Date:       04/20/2011          Expiration Date:  04/20/2012
Dwelling Limit:       $649,974.00         Annual Charge:  $4,037.00
THIS COVERAGE WILL NOT PROTECT YOUR INTEREST IN THE PROPERTY.

Deductible: $1,000.00

Dear Customer:

During the past 60 days, we notified you that the lender-placed hazard insurance we previously obtained on your property would be renewed for an additional term of one year, if we did not receive a copy of a valid hazard insurance policy.

This letter is to notify you that, as we have not received the required evidence of coverage, we have renewed your lender-placed hazard insurance coverage with BALBOA INSURANCE COMPANY to provide the necessary insurance protection on your property as required under the terms of your mortgage / deed of trust.

The cost of the insurance in the amount of $4,037.00 was advanced for the period 04/20/2011 to 04/20/2012.  This amount is based, in part, on our records which indicate the occupancy status of the location above is Tenant Occupied, the dwelling is a 85+ year old home, and other rating factors.  If this information is incorrect, please contact us at (800) 256-9962.  The coverage amount placed is based on the replacement value, which we believe is the last known amount of coverage you purchased. If, however, we do not have that information, the coverage amount is based on the unpaid principal balance of all mortgage liens against the property that are serviced by us.  Lender-placed hazard insurance does not provide guaranteed replacement cost coverage.

This insurance will remain in force unless we received evidence of a hazard insurance policy with an effective date on or before 04/20/2011.  As set forth in our previous notices, pursuant to your mortgage / deed of trust, the cost of this coverage is your responsibility and will be included in any statements that you may receive going forward.  The charges for this insurance, and any state imposed fees, would be paid from your escrow/impound account.  If you do not have an escrow/impound account, one may be established.  If coverage on your own and there is a lapse between the effective date of your policy and the lender-placed hazard insurance coverage, you will be responsible for the insurance charges for that period. Any insurance charges not used will be credited to your account.

RE:  THOMAS LACASSE
    Loan Number:  5922-0000-7425910742

## IMPORTANT NOTICE TO CUSTOMER

The insurance we obtained is to protect our interest in your property applies only to the dwelling at the coverage amount indicated.  Coverage does not extend to contents or personal property and may not be adequate to protect your equity in the property.  If the limit is only sufficient to insure the principal balance of your loan then the lender-placed hazard insurance coverage may not be adequate to protect the value of your property that exceeds the amount of your mortgage.  Also, there is no coverage for liability protection with this insurance.  This insurance may be more expensive than coverage you could arrange for on your own.  We recommend you place full insurance coverage that adequately protects both your interest as well as ours with a company of your choice.  In the event of a claim, all amounts due under the policy will be paid to GMAC Mortgage, LLC, except amounts which are in excess of our interest which will be forwarded to you.

When you furnish acceptable proof of other insurance, the lender will cancel the insurance coverage and you will be entitled to a refund of any insurance charges not used.  GMAC MORTGAGE, LLC and/or an affiliate of our company may receive compensation as a result of the placing of this insurance.

If you have any questions in this matter, please do not hesitate to contact our office at (800) 256-9962 from 4 a.m. to 8 p.m. PST, Monday through Friday.  If you would like to submit a claim, please call (800) 323-7466.  Your call may be monitored for quality assurance.

**Notice Regarding Bankruptcy:**  If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt.  Any action taken by GMAC Mortgage, LLC is for the sole purpose of protecting our lien interest in your property and not to recover any amounts from you personally.  If you have surrendered your property during your bankruptcy case and you are no longer occupying the property, you may disregard this notice.  **If you are represented by an attorney in a bankruptcy proceeding, you should review this notice and discuss any questions you may have regarding this notice with your attorney.**

Thank you,

Insurance Department
GMAC Mortgage, LLC

**REMINDER...**
**MAIL POLICY TO:**
GMAC MORTGAGE, LLC
ITS SUCCESSOR AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

Or Fax to: (866) 336-9021

## NOTICE OF LENDER-PLACED INSURANCE

Residential Property Fire Insurance
Risk Based Protection

### BALBOA INSURANCE COMPANY

(a stock company)
Home Office
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

Date: 05/01/2011

Control Number: B2570517
Policy Number: 6043-0002
Loan Number: 5922-0000-7425910742

NAMED INSURED:

GMAC MORTGAGE, LLC
INSURANCE SERVICE CENTER
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

BORROWER:

THOMAS LACASSE
114 EMERSON RD
LONGMEADOW, MA 01106-1877

Coverage Period: From: 04/20/2011 Until: 04/20/2012, beginning and ending at 12:01 am Standard time at the DESCRIBED LOCATION.

DESCRIBED LOCATION:
153 VALLEY FORGE ROAD
WESTON CT 06883

LIMIT OF LIABILITY FOR RESIDENTIAL PROPERTY:

$649,974.00

DEDUCTIBLES:

| | | |
|---|---|---|
| | $1,000.00 | Occupied |
| | $1,000.00 | Vacant |

PREMIUM:    Insurance premium:        $4,037.00
            Total Premium:            $4,037.00

The NAMED INSURED has purchased insurance on the DESCRIBED LOCATION for the amount and premium indicated above.

The contract of insurance is only between the NAMED INSURED and Balboa Insurance Company. There is no contract of insurance between the BORROWER and Balboa Insurance Company. The insurance purchased is intended for the benefit and protection of the NAMED INSURED, insures against LOSS only to the dwelling and OTHER STRUCTURES on the DESCRIBED LOCATION, and may not sufficiently protect the BORROWER'S interest in the property. No coverage is provided for contents, personal effects, additional living expense, fair rental value or liability. NO COVERAGE IS PROVIDED FOR LOSS CAUSED BY EARTHQUAKE OR FLOOD or any other cause of loss that is excluded by the Residential Property Fire Insurance Form. The NAMED INSURED may cancel the insurance coverage at any time.

This NOTICE is for information purposes only. It does not amend, extend, or alter the insurance contained in the Residential Property Fire Insurance Form. Any coverage provided is subject to the terms, conditions, limitations and exclusions contained in the Residential Property Fire Insurance Form.

**This insurance covers the NAMED INSURED/Lenders' interest only and does not protect the BORROWER's interest in real property, contents or the BORROWER's legal liability for damage to others.**

To report a claim, call:  (800) 323-7466
For other inquiries, call:        (800) 256-9962

01A09-06NT0007-E0205                    1

5922
7425910742

# **GMAC** Mortgage

PO Box 4025
Coraopolis, PA 15108-6942

**INSURANCE RENEWAL NOTICE**

Notification Date:    03/28/2012

0001594-0004539 ?0FF  001 1    9P3073

001594 - 004539
THOMAS LACASSE
114 EMERSON RD
APT D201
LONGMEADOW, MA 01106-1877

RE:  **REFERENCE NUMBER: 5922**
Loan Number: 5922-0000-7425910742
Property Location:   153 VALLEY FORGE ROAD
WESTON CT  06883

IMPORTANT INSURANCE NOTIFICATION

Dear Customer:

We previously notified you that we had no evidence of a hazard insurance policy in effect for the above referenced property as required by the terms of your mortgage / deed of trust. The lender-placed hazard insurance coverage that we previously placed on your property will expire on 04/20/2012. As of this date, we still have not received evidence of hazard insurance. If we do not receive a copy of a valid hazard insurance policy within 30 days of the date of this letter, lender-placed hazard insurance coverage will be placed on your property for an additional one year term.

As you know and according to your loan documents, you are required to maintain adequate hazard insurance coverage on your property. If you do not maintain hazard insurance on your property and we obtain insurance coverage, the cost of this coverage will be your responsibility and will be included in any statements that you may receive going forward.

We would like to remind you that this lender-placed hazard coverage has three disadvantages. First, the coverage we purchase is usually substantially more expensive than a policy supplied through your own personal agent. Second, the amount of coverage we may place, if you do not provide an acceptable replacement policy, may not be adequate to rebuild the property in the event of a significant loss. And third, it will cover physical damage to the structure only. There is no coverage for loss or damage to personal property, additional living expense or loss from theft or injury to persons or property for which you may be liable. No coverage for loss due to earthquake or flood is provided. Lender-placed hazard insurance does not provide guaranteed replacement cost coverage.

In order to protect our interest, if we do not receive evidence of hazard insurance by the time the current lender-placed hazard insurance coverage expires, it will be replaced with new lender-placed hazard insurance coverage. To provide evidence of hazard insurance, please contact your agent today and request an acceptable replacement policy be mailed to us at the address referenced above. If you prefer, you or your agent may fax a copy of the requested policy to us at (866) 336-9021. You may also provide us immediately with your insurance information through our user-friendly web site at www.ihaveinsurance.com. You will need to enter the reference number 080567658, your personal access code 5922HZ and zip code 01106. Please have your agent follow up with hard copy evidence of your insurance within 60 days to avoid additional requests for evidence of insurance.

RE:  THOMAS LACASSE
Loan Number:  5922-0000-7425910742

The policy you provide must be written through an insurance company whose rating is at least a "B-6" according to the Best Key Rating Guide or a Demotech rating of "A" or better. The mortgagee clause must read exactly as follows:

GMAC MORTGAGE, LLC
ITS SUCCESSORS AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942
Loan Number: 5922-0000-7425910742

If you do not have insurance or do not provide us with evidence of adequate insurance within 30 days of this notice, lender-placed hazard insurance will be placed through BALBOA INSURANCE COMPANY for an additional one year term. The coverage amount placed is based on the lesser of the replacement value, which we believe is the last known amount of coverage you purchased, and the total unpaid principal balances of all mortgages held by GMAC Mortgage, LLC for the above referenced property.  In the event of a claim, all amounts due under the insurance coverage will be paid to GMAC Mortgage, LLC, except amounts which are in excess of our interest, which will be forwarded to you. Please note that the deductible on this insurance coverage may be different from the deductible on the coverage about to expire.  The deductible for the new term, if placed, will be $1,000.

The annual cost of this coverage will be based on a coverage amount of $649,974.00.  The approximate cost of the lender-placed hazard insurance will be $9,316.00, if purchased.  This estimate is based, in part, upon our knowledge that the occupancy status of the location above is Vacant, the dwelling is a 85+ year old home, and other rating factors.  If this information is incorrect, please contact us at (800) 256-9962. Additionally, if the occupancy of your property changes the premium charged may differ from the amount stated in this letter. The charges for this insurance, and any state imposed fees, would be paid from your escrow/impound account. If you do not have an escrow/impound account, one may be established.

**Please note, your premium may be different than the premium paid last year as a result of a change in our Lender-Placed hazard Insurance that now considers various risk factors in the rate.**

If you have any questions, please call, toll-free, (800) 256-9962 Monday through Friday, 4 a.m. to 8 p.m. PST.  Calls to our Insurance Department may be monitored for quality assurance.

**Notice Regarding Bankruptcy:**  If you have filed for bankruptcy and your case is still active or if you have received an order of discharge, please be advised that this is not an attempt to collect a pre-petition or discharged debt.  Any action taken by GMAC Mortgage, LLC is for the sole purpose of protecting our lien interest in your property and is not to recover any amounts from you personally.  If you have surrendered your property during your bankruptcy case and you are no longer occupying the property, you may disregard this notice.  **If you are represented by an attorney in a bankruptcy proceeding, you should review this notice and discuss any questions you may have regarding this notice with your attorney.**

Thank you,

Insurance Department
GMAC Mortgage, LLC

REMINDER...
**MAIL POLICY TO:**
GMAC MORTGAGE, LLC
ITS SUCCESSOR AND/OR ASSIGNS
P.O. BOX 4025
CORAOPOLIS, PA 15108-6942

Or Fax to: (866) 336-9021

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC.
One Meridian Crossing, Ste. 100
Minneapolis MN 55423
Loan Number: 042-591074-2

Prepared By:    HomeComings Financial Network
800 Corporate Drive, Suite 424
Fort Lauderdale, FL  33334



——————————————[Space Above This Line For Recording Data]——————————————

# OPEN-END MORTGAGE DEED

MIN 100062604259107425

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JANUARY 30TH, 2006                    ,
together with all Riders to this document.
(B) "Borrower" is
THOMAS LACASSE, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

CONNECTICUT-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3007  1/01
MFCT7770 (06/2004) / 042-591074-2
℗-6A(CT) (0006)
Page 1 of 14                    Initials:
VMP MORTGAGE FORMS - (800)521-7291

(D) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a  CORPORATION
organized and existing under the laws of  DELAWARE
Lender's address is  800 CORPORATE DRIVE, SUITE 424
FT LAUDERDALE, FL 33334
(E) "Note" means the promissory note signed by Borrower and dated JANUARY 30TH, 2006
The Note states that Borrower owes Lender  SIX HUNDRED FIFTY THOUSAND AND NO/100

                                                                        Dollars
(U.S. $  650,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than FEBRUARY 1ST, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                              Page 2 of 14          Initials: _____          Form 3007  1/01

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower in consideration of this debt does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the CITY/TOWN LAND RECORDS        of FAIRFIELD COUNTY                    :
                [Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  17/3/17                          which currently has the address of
153 VALLEY FORGE ROAD                                                         [Street]
WESTON                                    [City] , Connecticut    06883    [Zip Code]
("Property Address"):
     TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                    Page 3 of 14          Initials: _____          Form 3007  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

MFCT7770 (06/2004)  /  042-591074-2
-6A(CT) (0005)          Page 4 of 14          Initials: ___          Form 3007  1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument; (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

MFCT7770 (06/2004) / 042-591074-2
-6A(CT) (0005)                    Page 8 of 14        Initials: _____        Form 3007   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

MFCT7770 (06/2004) / 042-591074-2
VMP®-6A(CT) (0005)                    Page 9 of 14                    Initials: ___    Form 3007    1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and foreclosure or sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in court the non-existence of a default or any other defense of Borrower to acceleration and foreclosure or sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any of the remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment and discharge of all sums secured by this Security Instrument, this Security Instrument shall become null and void and Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

**25. Future Advances.** Lender is specifically permitted, at its option and in its discretion, to make additional loans and future advances under this Security Instrument as contemplated by Section 49-2(c) of the Connecticut General Statutes, and shall have all rights, powers and protections allowed thereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

WITNESS — Joseph LaCasse

_____ (Seal)
THOMAS LACASSE                    -Borrower

Amanda Wiener

_____ (Seal)
                                 -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                               -Borrower

_____ (Seal)          _____ (Seal)
                 -Borrower                               -Borrower


STATE OF CONNECTICUT,   Fairfield                County ss: Westport
     The foregoing instrument was acknowledged before me this 30th of January, 2006
by
THOMAS LACASSE, AN UNMARRIED MAN


My Commission Expires:

_____
Notary Public   Amanda M. Florian,
                Commissioner of the Superior Court
                State of Connecticut

MFCT7770 (06/2004)  /  042-591074-2
-6A(CT) (0005)

Page 14 of 14                          Form 3007  1/01

# InterestFirst<sup>SM</sup> ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JANUARY 30TH, 2006                    EAST GREENWICH                    RHODE ISLAND
[Date]                                [City]                                [State]

153 VALLEY FORGE ROAD, WESTON, CT 06883
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $   650,000.00             (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  HOMECOMINGS FINANCIAL NETWORK, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.5000         %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on  MARCH 1ST, 2006             . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on  FEBRUARY 1ST, 2036        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   800 CORPORATE DRIVE, SUITE 424, FT LAUDERDALE, FL 33334
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $       3,520.83         before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE -ONE-YEAR LIBOR INDEX
7754073 (0307)          MFCD6237 (06/2005) / 042-591074-2
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 6                    Initials:

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  FEBRUARY, 2009                    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE FOURTH percentage points (    2.2500          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than      8.5000          % or less than  4.5000          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    12.5000        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be on that date which is the      10th                    anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period

when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000        % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
THOMAS LACASSE              -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


                                          WITHOUT RECOURSE
                                          PAY TO THE ORDER OF

_____ (Seal)          _____ (Seal)
                           -Borrower         Raynette Buerke          -Borrower
                                          RAYNETTE BUERKE
                                          ASSISTANT SECRETARY
                                          HOMECOMINGS FINANCIAL NETWORK, INC.
                                          A DELAWARE CORPORATION

_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


                                                    [Sign Original Only]


7754073 (0307)
MFCD6237 (06/2005) / 042-591074-2                 Page 5 of 5