NO: FST-CV10-6007676S

| | | |
|---|---|---|
| LA CASSE, THOMAS | : | JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| V. | : | AT STAMFORD, CONNECTICUT |
| AURORA LOAN SERVICES, LLC, ET AL | : | SEPTEMBER, 17, 2012 |

BEFORE THE HONORABLE ROBERT GENAURIO, JUDGE

A P P E A R A N C E S:

   Representing the Plaintiff:

      ATTORNEY DONALD M. BROWN
      19 Hettiefred Rd.
      Greenwich, CT 06831

   Representing the Defendants:

      ATTORNEY MICHEL LEE
      565 Taxter Road - Suite 590
      Elmsford, NY 10523

                      Recorded By:
                      Lisa Franchina

                      Transcribed By:
                      Lisa Franchina
                      123 Hoyt Street - 3rd Floor
                      Stamford, CT 06905

1        THE COURT:  Okay, that would be number 93,

2    La Casse versus Aurora.

3        ATTY. LEE:  Yes, Your Honor.

4        THE COURT:  Motion for summary judgment.  Give

5    me one minute, please.

6        If counsel would identify themselves for the

7    record, please.

8        ATTY. BROWN:  Attorney Donald Brown for Mr.

9    La Casse.

10       ATTY. LEE:  Attorney Mike Lee for the

11   Defendants, Aurora Loan Services and MERS.  This is

12   our motion.

13       THE COURT:  All right.  You may proceed.

14       ATTY. LEE:  Yes, Your Honor, this matter stems

15   from a foreclosure which occurred in Massachusetts

16   involving Mr. La Casse and a property of his.  The

17   Plaintiff makes numerous allegations in their

18   complaint.  However, most of them center around the

19   claims that the foreclosure -- the underlying

20   foreclosure in Massachusetts was somehow improper.

21       We hold that it was not improper and that there

22   are no genuine issues of fact involving the matter

23   and have set froth so in our papers, which include an

24   affidavit from a representative of Aurora Loan

25   Services who was the authorized servicer at the time

26   of the foreclosure.

27       Pursuant to Massachusetts law, which is a non-

1    Judicial foreclosure state, Aurora Loan Services did

2    meet all the requirements, which included, and these

3    are all within our papers, a notice of publication

4    requirement, as well as being holder of the mortgage

5    as servicer at the time.

6        THE COURT:  Let's back up for a minute.

7        ATTY. LEE:  Certainly.

8        THE COURT:  What's the nature of the action?

9        ATTY. BROWN:  Your Honor, the nature of the

10   action in this case is that, in a nutshell, Aurora

11   improperly, on their own initiative, foreclosed the

12   property of my clients in Longmeadow, Massachusetts.

13       I took this case over from Attorney Nakian a few

14   months ago when he was discharged by the La Casses on

15   several other matters.  I have reviewed this briefly,

16   and actually, in doing so, and in receiving counsel's

17   motion for summary judgment and having to -- having

18   started to overturn some of the stones in this case,

19   it appears that this complaint is actually going to

20   have to be amended to include fraud and possibly 93A

21   claims under Massachusetts State law.

22       THE COURT:  Well, let me ask -- here's what I'm

23   a little confused about --

24       ATTY. BROWN:  And the other --

25       THE COURT:  -- and maybe --

26       ATTY. BROWN:  And just so you know how we got

27   here.  This -- this complaint was originally filed

1    and the Massachusetts -- there was a summary process,

2    essentially the Massachusetts analogue to a summary

3    process case, filed by the Plaintiff in

4    Massachusetts, after having reviewed some of the

5    information that was provided.

6        The Massachusetts Court deferred to this Court

7    until this matter is concluded.  And counsel had

8    raised an objection prior to the appropriateness of

9    this action in Connecticut; and Judge Mintz had ruled

10   that it was beyond the time period to make such

11   objections and that the Court would entertain this.

12       The plaintiff -- or the -- or excuse me, I'm

13   sorry.  I'm used to being on the other side, so I

14   apologize.  The --

15       THE COURT:  Well, here -- and I understand the

16   motion to dismiss --

17       ATTY. BROWN:  Yeah.

18       THE COURT:  -- was denied as a --

19       ATTY. BROWN:  It was.

20       THE COURT:  -- result of timeframe issues.

21       ATTY, BROWN:  Yeah.

22       THE COURT:  I'm just -- educate me, why --

23       ATTY. BROWN:  My clients --

24       THE COURT:  -- would there be an action in

25   Connecticut to --

26       ATTY. BROWN:  Because at the time, my clients --

27       THE COURT:  -- set -- effectively set aside a

1        Massachusetts foreclosure?

2            ATTY. BROWN:  Because my clients have several

3        cases.  And specifically, this isn't necessarily to

4        set aside a foreclosure.  This is, essentially, I

5        think, in all fairness, the original complaint was

6        poorly drafted.  But, it does allege predatory

7        lending, breach of contract, you know, fraud --

8            THE COURT:  So you're saying this is an action

9        for --

10           ATTY. BROWN:  -- unfair debt collection.

11           THE COURT:  -- money damages for --

12           ATTY. BROWN:  Yes, Your Honor, this is --

13           THE COURT:  -- a variety of torts.

14           ATTY. BROWN:  -- an action for money -- we

15       haven't -- we haven't brought a declaratory judgment

16       action, if that's what you're getting at.

17           THE COURT:  All right.  And -- and --

18           ATTY. BROWN:  -- to attack the judgment.

19           THE COURT:  That helps me.

20           ATTY. BROWN:  Okay.

21           THE COURT:  This is essentially an action that

22       sounds in tort for damages --

23           ATTY. BROWN:  Right.

24           THE COURT:  -- as a result of conduct of --

25           ATTY. BROWN:  But, in response to what counsel

26       was saying, before Your Honor started inquiring, my

27       concern in this case, is that we have an expert on

1    retainer in a foreclosure defense matter for a

2    Connecticut property.

3        And after discussing with the expert, the nature

4    of this -- the documents that are all public records,

5    for the most part, that are attached to my objection;

6    we've determined that the actual owner of the loan is

7    this Lehman Brothers Trust.  It's not Aurora, at

8    least that's our assertion.

9        Moreover, we've also discovered that documents

10    were submitted to this Court attached to counsel's

11    motion for summary judgment, specifically the note,

12    which are, as I raise in my objection, are vastly

13    different than the documents that were submitted with

14    the proof of claim under Rule 11 to the Massachusetts

15    Bankruptcy Court at Springfield.

16        I realize that this is a giant, you know, both

17    of us have filed, for lack of a better way to put it,

18    enormous documentary exhibits.  However -- but if,

19    there's no objection, you know, I can just cut to the

20    chase and --

21        ATTY. LEE:  Now, Defendant's argument is that

22    the status of the notes pursuant to Massachusetts

23    law, are basically irrelevant.  Massachusetts law,

24    prior to a recent decision by their Supreme Court,

25    required that the foreclosing party, using the power

26    of sale under a non-Judicial foreclosure, needed to

27    show that they were assigned the -- the assignee of

1    the mortgage, i.e. mortgage holder.

2    That did not require them to be the owner of the

3    underlying obligation; but merely to have the

4    authority to actually have the sale in Massachusetts

5    versus commence an action which you would do in

6    Connecticut.

7    They -- to my knowledge, Plaintiffs have not

8    made any -- have not asserted that they were not

9    servicer.  They did not have permission to act as

10   servicer, which would permit them to do so.

11   Additionally, an assignment of mortgage was recorded

12   with the Hampton County Register of Deeds, prior to

13   the sale.  That's what would be required under a very

14   famous case, Habanez.

15   Later, a recent decision, Eaton, Supreme Court,

16   again, Massachusetts, clarified what was required in

17   terms of the note.  Their decision was prospective.

18   It did say that the parties had to be, either, holder

19   of the note, which we do argue that we were, although

20   they're -- we will acknowledge, that there was some

21   issues with the Exhibits showing the note.

22   Or, that they had permission from the holder of

23   the note.  That would mean that they were servicer,

24   thus, even under a more recent case, they would have

25   had permission to foreclose.  But, under the prior

26   case law, they still have permission to foreclose as

27   being the assignee of the mortgage.

1          The irregular --

2          THE COURT:  Is it possible that the Defendant

3     had the right to foreclose, but still has committed

4     tortious conduct?

5          ATTY. LEE:  We don't believe so.

6          ATTY. BROWN:  Your Honor, I -- I -- to be honest

7     with you --

8          THE COURT:  I asked him, let me see --

9          ATTY. BROWN:  In honest deference to your

10    question --

11         THE COURT:  But I asked him the question.

12         ATTY. BROWN:  Oh, I'm sorry, Your Honor.  I --

13         THE COURT:  So let him answer --

14         ATTY. BROWN:  I apologize.  I thought you asked

15    me the question.

16         THE COURT:  No.

17         ATTY. LEE:  My understanding is that Mr. La

18    Casse defaulted at some point, I believe, let me just

19    check my notes, in 2009.  He raised no objection to

20    that as required.  In Massachusetts, he would be

21    required to actually file a lawsuit against Aurora.

22         So, he did not contest to that.  We did have

23    some notice to admit where they didn't answer our

24    notice to admit; which is an admission that included

25    the note and the mortgage, that he signed them.

26         THE COURT:  So, you're saying that in

27    Massachusetts, the essential procedure for

1  foreclosure is the holder of the mortgage gives some

2  sort of notice to --

3   ATTY. LEE:  Correct.

4   THE COURT:  -- to the holder of the equity.  And

5  once they've given that notice, they can proceed to

6  sell, unless the owner of the equity brings an action

7  to stop it.

8   ATTY. LEE:  Correct, and the notice requires an

9  actual mailing of a notice by certified mail.  We've

10  included those in our Exhibit, as well as

11  publication, which requires publication of that sale,

12  three consecutive weeks, I believe twenty days,

13  before the actual sale occurs.

14   And those all -- we provided all of that with

15  our Exhibits.

16   THE COURT:  But, my question is, can the

17  foreclosing party in Massachusetts have done that?

18  Have complied with all of the, for lack of a better

19  word, I'll say technical requirements of a

20  foreclosure; yet still have committed tortious

21  conduct for which it may be liable to the Plaintiff?

22   ATTY. LEE:  Based on the material and the

23  evidence that I have reviewed, I don't see any

24  tortious conduct.  I don't see that they have raised

25  it in their complaint, that there was specific

26  conduct.

27   Most of their complaint involves MERS, and

1   assignments, and vague references to some other

2   statutes.  But, there is nothing of specificity that

3   indicates that -- I'm personally not even clear what

4   that tortious conduct would be, other than the

5   improper foreclosure of the -- the underlying

6   foreclosure.

7        And that appears to the -- the bulk of both the

8   -- the objection to our motion, as well as the

9   initial complaint.  I haven't seen a change there in

10  terms of raising --

11       THE COURT:  Well --

12       ATTY. LEE:  -- a particular --

13       THE COURT:  -- let's hear -- let me hear from

14  Attorney Brown?

15       ATTY. LEE:  Sure.

16       THE COURT:  If you want to address that issue

17  plus other issues?

18       ATTY. BROWN:  I'll address that issue in one

19  moment, Your Honor.  I just want to reflect with

20  counsel.

21       Your Honor, can I approach?

22       THE COURT:  You may.

23       ATTY. BROWN:  Part of the crux of the original

24  complaint was that this matter involved a significant

25  amount of fraud.  I'm just going to get it straight.

26  This here is from the Bankruptcy Court.

27       THE COURT:  Yes.

1     ATTY. BROWN:  My clients were in Chapter 11,

2     technically still are.

3         THE COURT:  During the foreclosure?

4         ATTY. BROWN:  Uh, yeah, I believe they filed and

5     then they were out, and then they went back in and

6     they've been discharged, but the bankruptcy is still

7     open.

8         This was filed in the Massachusetts Bankruptcy.

9     Allegedly is original note.  And this is the one that

10    was attached to counsel's papers, which I just

11    discussed.  And as you can see, there is an alonge.

12    There's a very different endorsement on this.  And

13    then --

14        THE COURT:  Are these documents a part of your

15    objection?

16        ATTY. BROWN:  Yes, Your Honor, they were

17    attached as Exhibits.

18        THE COURT:  Oh, then --

19        ATTY. BROWN:  Okay, I -- I apologize, it's just

20    that I left my 576 page filing at home this morning,

21    so I --

22        THE COURT:  Yes.

23        ATTY. BROWN:  -- had to do the microprint

24    version.

25        THE COURT:  Okay.

26        ATTY. BROWN:  Essentially, we believe that there

27    is a considerable amount of tortious conduct here.

1      The problem is, is that the evidence required to

2      establish this, is not exactly part and parcel, easy

3      to come by.  If I hadn't had the, you know,

4      opportunity to be familiar with bankruptcy and review

5      pacer, and discuss this matter -- and my clients also

6      have an expert on retainer, that we haven't decided

7      what, you know, if any her role will be in this case.

8          However, as I indicated in my objection, there

9      are -- Massachusetts, unlike Connecticut, requires

10     that, in order to foreclose a mortgage, the procedure

11     that is followed is, essentially, an order to show

12     cause with a military affidavit is basically filed

13     with the appropriate Land Court.

14         Your opportunity to actually defend an action in

15     Massachusetts is through the bringing of an action.

16     Very similar to what we discussed before, a

17     declaratory judgment to establish that it's not

18     actually correct.

19         In this particular case, my clients chose to

20     pursue bankruptcy at that time, from a financial

21     reality point of view.  They own several properties,

22     in several states.  And on and off were residents of

23     the State of Connecticut.

24         And the long and short of it is, we've basically

25     -- and I would say, in the last, maybe, since like,

26     the end of August, discovered that there appears to

27     be some, perhaps, inappropriate alteration of

1    instruments by various parties.

2        Now, mind you, all these documents are submitted

3    under oath, under penalty of perjury by counsel.  I

4    find it very disturbing that there, you know, that

5    there's no explanation for any of this offered, you

6    know, a legitimate explanation, as to why you'd be in

7    possession of bearer paper, that's now not bearer

8    paper contemporaneous to these matters being dealt

9    with.

10        And quite frankly, we've also discovered that

11    this was a securitized asset.  Aurora was not the

12    owner of this loan.  In order to be a securitized

13    asset, it would have had to have been put in the

14    trust by a cutoff date; which is what's referred to

15    in my objection.

16        Therefore, we are pursuing an amendment to this

17    complaint, that will be filed shortly, alleging a 93A

18    claim under Massachusetts law.  Which is essentially,

19    an equivalent of our CUTPA, but a little bit -- has a

20    little more teeth to it.

21        And, you know, we may very well, based upon

22    further discovery to be conducted.  I mean, I'm going

23    to have to depose, probably, a CFO or a document

24    custodian. It's been my experience that the banks

25    generally produce witnesses that are not really

26    officers of the company.

27        So, I intend to pursue this matter fully.  And,

1  you know, you know, there's just a -- a reality

2  involving a time factor.  I mean, it's -- there's

3  just me and, you know --

4      THE COURT:  Okay.

5      ATTY. BROWN:  I'm not -- you know, I mean, my

6  point is, I don't think this is appropriate for

7  summary judgment at this point, given the fact that

8  fraud has been pled, predatory lending has been pled

9  --

10     THE COURT:  Yes, but -- but you have to do more

11 than plead it.  You've got to --

12     ATTY. BROWN:  Well, and I don't -- I understand

13 that.  But now we have, in possession, alter

14 instruments that are a record in two Courts.

15     ATTY. LEE:  We -- we address in a footnote what

16 most likely happened in terms of that particular

17 Exhibit.  And that is an older copy was used.  They

18 make imaging of these documents throughout their

19 lifespan.

20     In this case, most likely, an erroneous copy was

21 made.  The one that was in the Bankruptcy Court does

22 appear to jibe.  I would have to take a look again at

23 it.

24     However, the argument that we make in our -- our

25 motion, and what I'm still missing, is that the --

26 the state of that note, actually would not play any

27 fact -- I mean, in other words, it may be there -- if

12-12020-mg   Doc 5106-12   Filed 09/18/13   Entered 09/18/13 18:18:12   Exhibit 8
FST-CV10-6007676S   Transcript   9/17/2012   Pg 15 of 21

15

1    ATTY. BROWN:  Yes.  So, my point is --

2    THE COURT:  And your claim is the motion for

3    relief from stay was supported by documents --

4    ATTY. BROWN:  That's where those documents came

5    from, Your Honor.

6    THE COURT:  -- were inappropriate.  And therein

7    lies the tortious conduct.

8    ATTY. BROWN:  Yes.  So, my point is, in a

9    nutshell --

10   ATTY. LEE:  But, mine would be that they didn't

11   lie --

12   THE COURT:  You're saying it's not material --

13   ATTY. LEE:  They did not lie.

14   THE COURT:  -- because even if they had provided

15   the right documents --

16   ATTY. LEE:  Well, I'm not suggesting they are

17   the wrong documents.  I don't -- I can't speak to the

18   Bankruptcy case.

19   THE COURT:  Okay.

20   ATTY. LEE:  But I can speak to the condition of

21   the -- of the foreclosure.  And my understanding, and

22   we say in our moving papers --

23   THE COURT:  Well, the foreclosure couldn't have

24   proceeded without the relief from stay.

25   ATTY. LEE:  No, correct, and that that relief

26   from stay would be based on the same principles that

27   were used in the foreclosure in terms of the sale.

1          ATTY. BROWN:  The problem we have is that the

2     foreclosure in this particular matter was far in the

3     past, okay.  My clients were financially damaged by

4     this conduct --

5          THE COURT:  When was the foreclosure?

6          ATTY. BROWN:  Um --

7          ATTY. LEE:  The sale --

8          ATTY. BROWN:  It was -- well, the --

9          ATTY. LEE:  2010, I believe the sale was.

10          ATTY. BROWN:  Yeah, it was November -- well,

11     actually, let me rephrase that.  November -- the

12     actual order to show cause was November 15th, the

13     complaint to foreclose mortgage with the soldiers and

14     sailors affidavit.

15          THE COURT:  November 15, 2010.

16          ATTY. BROWN:  Yes, so my point is, is that

17     counsel is trying to somehow claim that because my

18     client may have owed someone money, who, quite

19     frankly, at this point in time, based on these

20     documents, it's -- it's questionable who that really

21     is.

22          That at some point in time, they owed somebody

23     money.  Well, there's, you know, nobody -- you know -

24     -

25          THE COURT:  Which debt was secured by a

26     mortgage.

27          ATTY. BROWN:  Exactly, and that mortgage, based

1       on what our expert is telling us, and based upon the

2       -- the alonge that happened to be attached to one of

3       those documents, is a pooled asset.  We've used

4       Bloomberg to determine that it's being tracked as an

5       REO by US Bank, who is also a sub-servicer of some

6       sort here; as an asset of this trust.

7            It was an asset in January of -- January 1, 2007

8       was the cutoff date for this trust.  So, it had to

9       have been placed before that date.  This is later

10      brought in name of a servicer, not in the name of a

11      trust, as is commonly seen now in Courts to these --

12      to avoid these exact scenarios.

13           I --

14           ATTY. LEE:  That itself is not improper under

15      Massachusetts law.

16           ATTY. BROWN:  Well, I -- I believe its deceptive

17      conduct --

18           ATTY. LEE:  Well, but, I mean that --

19           ATTY. BROWN:  That's been pled here, originally.

20           ATTY. LEE:  You -- you -- we -- you --

21           THE COURT:  All right.

22           ATTY. LEE:  We have a letter that indicated

23      there was a change in servicer that was sent --

24           ATTY. BROWN:  I mean, the problem we have here -

25      -

26           ATTY. LEE:  -- in 2008 to Mr. La Casse.

27           THE COURT:  One -- one at a time, please.

1          ATTY. BROWN:  We have to rely --

2          THE COURT:  Attorney Brown --

3          ATTY. BROWN:  -- on the Court record, Your

4     Honor.  I mean --

5          ATTY. LEE:  This is --

6          ATTY. BROWN:  -- Federal Rule of civil procedure

7     is crystal clear.  If you submit it to the Bankruptcy

8     Court, it must be true.  That's under penalty of

9     perjury.  It's the same thing when counsel submits

10    documents here.

11         There better be a legitimate explanation from an

12    officer entitled to sign these documents as to how we

13    have multiple copies of endorsements floating around.

14    The -- the only holder of this note was a trust.

15    Unless he has other documentation to so that that

16    there's a legitimate chain of title that went from an

17    originator to a trust and back to Aurora to

18    accomplish their goals.

19         So, there's definitely tortious conduct in this

20    case.  And it's definitely actionable under

21    Massachusetts law.

22         THE COURT:  All right.

23         ATTY. LEE:  And we would respectfully disagree

24    that that's the case.  They -- the notion that

25    different copies of the note -- this is -- they're

26    not conflicting.  They're -- they're temporally

27    different.  Some were made images at certain times.

1     ATTY. BROWN:  The endorsements --

2     ATTY. LEE:  That's what they're saying.

3     ATTY. BROWN:  -- are different.

4     ATTY. LEE:  There's nothing that looks --

5     there's no endorsement that's disappearing in terms

6     of --

7     ATTY. BROWN:  That's not -- it's been expounded

8     upon.

9     ATTY. LEE:  But again, we would again come back

10    to the fact that Mr. La Casse was made aware, it's

11    within our Exhibits, I think its Exhibit C, that

12    there was a notice of an assignment that was sent to

13    him indicating that Aurora was now the servicer.

14    So, he did know who Aurora was.  He was fully

15    aware of it.  We only mention -- I only mention the

16    notion that he owed money, didn't pay it, in a sense

17    that that was the precipitating set of facts which

18    led to the foreclosure in Massachusetts.

19    Was that he signed a note and mortgage, which he

20    doesn't deny.  That he defaulted on those

21    obligations.  And the foreclosure ensued.

22    ATTY. BROWN:  That's irrelevant, Your Honor.

23    This is an action --

24    ATTY. LEE:  I'm just addressing an issue of

25    tortious --

26    ATTY. BROWN:  I'm just saying, this is -- that's

27    not a defense to a tort.

1    THE COURT:  I think I have a -- I don't want to

2    say I have a good handle yet --

3    ATTY. BROWN:  Yeah.

4    THE COURT:  But I think I have an understanding

5    as to the scope of the issues.  I'll look over the

6    documents that each of you have filed.

7    ATTY. BROWN:  Thanks.

8    ATTY. LEE:  I appreciate that.

9    THE COURT:  I'll take the papers on the matter

10    and I'll issue a decision.

11    ATTY. BROWN:  Thank you, Your Honor.

12    ATTY. LEE:  Thank you, Your Honor,

13    THE COURT:  Thank you very much.

14                    XXXXXXXXX

15

16

17

NO: FST-CV10-6007676S

LA CASSE, THOMAS              :   JUDICIAL DISTRICT
                                 OF STAMFORD/NORWALK

V.                           :   AT STAMFORD, CONNECTICUT

AURORA LOAN SERVICES, LLC, ET AL  :   SEPTEMBER, 17, 2012


C E R T I F I C A T I O N


        I hereby certify the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District of
Stamford/Norwalk, Connecticut, before the Honorable Robert
Genuario, Judge, on the 17th day of September, 2012.


        Dated this 28th day of September, 2012, in Stamford,
Connecticut.

                              _____
                              Lisa Franchina
                              Court Recording Monitor