# ADJUSTABLE RATE NOTE
## Payment Option

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

NOVEMBER 15TH, 2006            SPRINGFIELD            MASSACHUSETTS
[Date]                         [City]                 [State]

270 PARK DRIVE, LONGMEADOW, MA 01106
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 600,000.00 (this is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided in this Note. Lender is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 2.0000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of JANUARY, 2007, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than 9.9500 %.

(D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE NOTE 10/05

(0005).02                                   MFCD6261 (04/2008) / 047-166317-9
VMP Mortgage Solutions, Inc.
Page 1 of 8        Initials:

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND FORTY FIVE HUNDREDTHS percentage point(s) ( 3.4500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on   JANUARY 1ST, 2007   .
I will make these payments every month until I have paid all the Principal and interest and any other charges that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1ST, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   800 CORPORATE DRIVE, SUITE 424, FT. LAUDERDALE, FL 33334                                                                                                                                       or
at a different place if required by the Note Holder.

(B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $   2,217.72   ,
until a new Minimum Payment is required as provided below.

(C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of JANUARY, 2008, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment that will be effective on a Payment Change Date will be in the amount of the Full Payment, except that my new Minimum Payment will be limited to an amount that will not be more than 7.5% greater than the amount of my last Minimum Payment due before the Payment Change Date (this limitation is called the "Payment Change Cap"). The Payment Change Cap applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument (as defined in Section 11 of this Note, below).

(E) Additions to My Unpaid Principal

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month, regardless of the Payment Change Cap. This amount will be my new Minimum Payment. This means that my Minimum Payment may change more frequently than annually. This new Minimum Payment amount will remain in effect until at least the next regular Payment Change Date, unless another recalculation of my Minimum Payment is required by this Section prior to such Payment Change Date.

(G) Required Full Payment

Regardless of the Payment Change Cap, on the FIFTH Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying at least the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options

After the first Interest Rate Change Date, each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(ii) Fully Amortized Payment: the amount necessary to pay the loan off (including all Principal and interest) at the Maturity Date in substantially equal installments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

Payment Options will only be available if they are greater than the Minimum Payment.

(I) Failure to Make Adjustments

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

4. NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.


(0005).02
MFCD8281 (04/2006) / 047-188317-9

Page 3 of 6

Initials: 

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received at least the full amount of any Minimum Payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    3.0000    % of my overdue Minimum Payment. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay at least the full amount of each Minimum Payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.



### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions read as follows:

> Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
THOMAS J LACASSE            -Borrower                           -Borrower

_____ (Seal)  _____ (Seal)
                            -Borrower                           -Borrower

_____ (Seal)  _____ (Seal)
                            -Borrower                           -Borrower

_____ (Seal)  _____ (Seal)
                            -Borrower                           -Borrower

*[Sign Original Only]*

Without Recourse
Pay to the Order of

_____
Matilda Okai-Johnson
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation

(0005).02
MFCD8261 (04/2008) / 047-188317-9

Page 6 of 6

---

### ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

---

**POOL:** 905    **LOAN ID:** ▆▆▆▆  

**NOTE DATE:** 11/15/2006    **LOAN AMOUNT:** $600000.00

**BORROWER NAME:** THOMAS LACASSE

**PROPERTY ADDRESS:** 270 PARK DRIVE, LONGMEADOW, MA 01106

---

PAY TO THE ORDER OF


WITHOUT RECOURSE

Residential Funding Company, LLC

*[signature: Amy Nelson]*

By: _____
Amy Nelson, Vice President
Residential Funding Company, LLC

# PREPAYMENT ADDENDUM TO NOTE

NOVEMBER 15, 2006             SPRINGFIELD                    MASSACHUSETTS
[Date]                        [City]                         [State]

270 PARK DRIVE, LONGMEADOW, MA 01106
                          [Property Address]

FOR VALUE RECEIVED, the undersigned ("Borrower") agree(s) that the following provisions shall be incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed of even date herewith (the "Security Instrument") executed by Borrower, as trustor, in favor of HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)              ("Lender"), as beneficiary, and also into that certain promissory note (the "Note") of even date herewith executed by Borrower in favor of Lender. To the extent that the provisions of this Prepayment Addendum to Note (the "Addendum") are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of the Addendum shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note.

The Note is amended to read as follows:

### "BORROWER'S RIGHT TO PREPAY

I have the right to make prepayments of Principal at a time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all of the monthly payments due under the Note.

Except as provided below, I may make full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If a full Prepayment is made within twelve (12) months from the date of the Note, I will pay a prepayment charge in an amount equal to the balance of the first year's interest or three (3) months' interest whichever is less; except, that if a full Prepayment is made within thirty-six  ( 36 ) months from the date of the Note for the purpose of refinancing such loan in another financial institution, an additional payment not in excess of three (3) months' interest may be required.

NOTICE TO THE BORROWER

Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement."

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
Borrower - THOMAS J LACASSE                     Borrower -


_____ (Seal)        _____ (Seal)
Borrower -                                      Borrower -


_____ (Seal)        _____ (Seal)
Borrower -                                      Borrower -

MA PREPAYMENT ADDENDUM TO NOTE                  Page 1 of 1
MFMA6187 (03/2006) /