**Affidavit of Thomas James La Casse**

Regarding Proof of Claim #3856

(Loan on 270 Park Drive, Longmeadow, Massachusetts )

NOW COMES Thomas James La Casse, Creditor in the case 12-12020-MG, *In re Residential Capital, LLC, et al*, who avers and testifies to the following

1. I am over the age of 18 years, understand that I am obliged to be truthful in this Affidavit and make my oath that I am doing so.

2. I am owner of the property at 270 Park Drive Longmeadow MA 01106. A foreclosure deed is recorded regarding the mortgage on this property but I dispute the validity of the deed.

3. The litigation with Aurora Loan Services, LLC, involved two different courts. In my Bankruptcy case, No. 10-30088-HJB (District of Massachusetts), a copy of the Note was filed showing indorsement to "Residential Funding Company, LLC" with no allonge. In the Stamford (Connectictut) Superior Court, case FST-CV10-6007676-S, however, a copy of the Note was filed with no "Residential Funding Company, LLC" on the Note beneath my signature, and an allonge page stating that the same Residential Funding Company, LLC had indorsed the Note in blank.

4. Each different counsel in the two cases insisted that they were presenting a true copy, but of course one or both of the copies has been altered, particularly since the later copy is missing a mark bearing the name of the indorsee. They only way to ensure what the Note is actually indorsed to is to inspect the original, but this has not yet been made available.

5. I have put my direct damages at $900,000 (nine hundred thousand dollars). This brick center hall colonial is one of the cornerstones of Colony Hills, arguably, the most desirable neighborhood in the affluent town of Longmeadow, which in turn is the most affluent town in the western half of the Commonwealth of Massachusetts. This 3500 sq. ft. house has five bedrooms, three and a half bathrooms and a slate roof, all surrounded by beautifully landscaped grounds. It is, or was, richly appointed with formal architectural details such as crown mouldings, paneled walls, arched doorways and a sweeping spiral staircase. Similar properties in

this neighborhood have sold for $900,000 to $1,200,000. Due to the lending law violations, loan fraud, and now the illegal foreclosure, I have suffered losses both due to the inability to sell the property at a market value and the condition of the property itself.

6. Either Homecomings or Residential Funding Company are possible owners of the obligation, and as such are responsible for the acts of their agents. It remains for the actual note to be produced and the state court to determine the actual responsible party, or if they are jointly liable or due for contribution.

7. I think that punitive damages of $900,000 (nine hundred thousand dollars) are also appropriate. These damages are based on the fact that the foreclosure was illegal and that GMAC, in whatever corporate guise they have adopted, knew this to be true from the start. GMAC purposefully fabricated false documents in order to illegally foreclose. There are two different mortgage notes, each presented as the one and only original note in separate courts of law. A servicing company can never be the real mortgagee, as they only act on behalf of the actual owner of the obligation.

8. My damages for emotional distress certainly exceed $500,000 (five hundred thousand dollars). Foreclosure notices were advertised in several local newspapers and a foreclosure auction took place in the front yard of the property in front of relatives, friends, neighbors and the real estate community. A lawsuit was filed by Thomas La Casse in Stamford Superior Court on or about November 19, 2010, several days before the auction claiming an illegal foreclosure. The docket date of the Complaint is the date of return of service, December 8, 2010. An eviction notice was delivered by the sheriff after the auction took place, and a Summary Process case filed, but the Western Massachusetts Housing Court stayed the case pending final judgment in the Connecticut action.

9. The public loss of the property and the humiliation caused severe emotional damage and distress. These incidents together with an ongoing series of stress-inducing incidents such as having the locks changed no less than six times despite court orders against such self-help eviction, having the house broken into and vandalized and ransacked together with police visits

-2-

to the property only served to maximize the emotional stress. The distress was so great that after the sixth or seventh break-in, I stopped trying to regain entry to the property.

10. Despite the court orders, the police, relying on the recorded foreclosure deed, threatened me with arrest if I entered the property. This matched the devastating experience I was also experiencing at the hands of GMAC at my house in Connecticut. However, the Housing Court issued orders which let me reestablish the status quo.

11. I am claiming closing damages of $75,000 (seventy-five thousand dollars). In the original mortgage loan commitment letter the loan amount was 90%. At the closing table the amount was illegally changed to 80%. I had no recourse but to increase my down payment. I was threatened with cancellation of the loan and the loss of my $10,000.00 down payment as liquidated damages to the seller. At the time of the closing the selling realtor informed him that because this was such a desirable property a backup closing with another buyer had been arranged. I was also told that no more time would be extended so if he did not close he would lose the house and his down payment. This item, naturally, is one that goes to the original lender, Homecomings, in the absence of a proved conspiracy to defraud.

12. My consequential damages are set at $350.000 (three hundred and fifty thousand dollars. The locks were changed no less than six times by the mortgage company and their agents. At one point I was denied use of the property for almost a year. The doors were broken on several occasions, until the front door could not be closed, or even repaired to any level of acceptable appearance. The original brass door hardware was destroyed in the process. Great damage was done to the property as a result of it being left open to the elements. The attempt to winterize the property was a similar disaster. The pipes froze and burst Several plumbing fixtures were destroyed and the resulting water leaks caused extensive damage not just to the contents but also to the floors, ceilings, walls, cabinetry, woodwork. By the time we regained possession, hazardous black mold, mildew, and fungus infestation had set in.

13. Additionally and the doors themselves were greatly damaged. Similar to the damage at my house in Weston, Connecticut, but not as severe, several windows were broken and acts of

vandalism took place due to GMAC not securing and protecting the property. Looting, theft and destruction of contents and furniture also took place. It was as if the loan servicer and their property manager were concertedly turning the home into a place that was unfit for human habitation, so as to chase the mortgagor away.

14. My damages for lost revenue come to $500,000 (five hundred thousand dollars). This property had the potential to be improved upon to the point where a profit of $500,000 would be realized. This was due to the house's location, construction and potential for expansion. Market conditions, which were depressed in 2010 but have improved, also enter into this equation.

15. I have suffered a loss of reputation to the tune of $2,000,000 (two million dollars). I own two other properties in the same community that were for sale or in the process of being renovated. When the public notices and auction took place, my reputation and credibility was completely ruined. Numerous interested parties would seek to buy these properties at a distressed price, insufficient to generate a profit or even cash flow. This loss has further inhibited future sales of properties, future purchases and caused buyers, realtors and contractors not to do business with me.

16. The sum of the above losses is $5,225,000 (five million, two hundred twenty-five thousand dollars).

Signed and sealed under pains and penalties of perjury this 18th day of September, 2013.

Thomas James La Casse

Commonwealth of Massachusetts
Hampden, SS}

Then personally appeared Thomas James La Casse, known to me (personally) (by means of presentation of suitable means of identification, which was ____CTDL____) and acknowledged that the above document was his free act and deed.

Notary Public
(print name) Lindsay Malmborg
My Commission Expires: 2-20-2015

Lindsay A. Malmborg
Notary Public
My Commission Expires February 20, 2015
Commonwealth of Massachusetts

-4-