## Exhibit 1

**Horst Declaration**

ny-1107854

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- )
| | ) | |
In re: | ) | Case No. 12-12020 (MG)
| | ) | |
RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | ) | Chapter 11
| | ) | |
Debtors. | ) | Jointly Administered
| | ) | |
---------------------------------------------------------------- )

### DECLARATION OF DEANNA HORST IN SUPPORT OF DEBTORS' THIRTY-FOURTH OMNIBUS OBJECTION TO CLAIMS <u>(NO LIABILITY – EMPLOYEE CLAIMS)</u>

I, Deanna Horst, hereby declare as follows:

1.      I am the Senior Director of Claims Management for Residential Capital,
LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the
state of Delaware and the parent of the other debtors and debtors in possession in the above-
captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").[1]  I have been employed by affiliates of
ResCap since August of 2001, and in my current position since June of 2012.  I began my
association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with
managing the Debtors' responsible lending on-site due diligence program.  In 2002, I became the
Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and
Compliance—a position I held until 2006, at which time I became the Vice President of the
Credit Risk Group, managing Correspondent and Broker approval and monitoring.  In 2011, I
became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC
and Ally Bank in this role.  In my current position, I am responsible for Claims Management and
Reconciliation and Client Recovery.   I   am   authorized   to   submit   this   declaration   (the

---

[1]     The names of the Debtors in these cases and their respective tax identification numbers are identified on
<u>Exhibit 1</u> to the *Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support
of Chapter 11 Petitions and First Day Pleadings* [Docket No. 6], dated May 14, 2012.

ny-1107857

"Declaration") in support of the *Debtors' Thirty-Fourth Omnibus Objection to Claims (No Liability – Employee Claims)* (the "Objection").[2]

2.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information I have received through my discussions with other members of the Debtors' management or other employees of the Debtors, the Debtors' professionals and consultants, and/or Kurtzman Carson Consultants LLC ("KCC"), the Debtors' notice and claims agent.  If I were called upon to testify, I could and would testify competently to the facts set forth in the Objection on that basis.

3.    In my capacity as Senior Director of Claims Management, I am intimately familiar with the Debtors' claims reconciliation process.  Except as otherwise indicated, all statements in this Declaration are based upon my familiarity with the Debtors' books and records (the "Books and Records"), the Debtors' schedules of assets and liabilities and statements of financial affairs filed in these Chapter 11 Cases (collectively, the "Schedules"), my review and reconciliation of claims, and/or my review of relevant documents.  I or my designee at my direction have reviewed and analyzed the proof of claim forms and supporting documentation, if any, filed by the Employee Claimants listed on Exhibit A annexed to the Proposed Order.  In connection with such review and analysis, where applicable, the Debtors have reviewed (i) information supplied or verified by personnel in departments within the Debtors' various business units, (ii) the Books and Records, (iii) the Schedules, (iv) other filed proofs of claim, and/or (v) the official claims register maintained in the Debtors' Chapter 11 Cases.

---

[2]    Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Objection.

ny-1107857

4.      Under my supervision, considerable resources and time have been expended to ensure a high level of diligence in reviewing and reconciling the proofs of claim filed in these Chapter 11 Cases.  Based on a thorough review of the proofs of claim at issue, the Debtors determined that they are not liable for any of the Employee Claims listed on <u>Exhibit A</u> annexed to the Proposed Order.  Specifically, nearly all of the Employee Claims are based on claims for pension benefits under the Retirement Plan,[3] which was not sponsored by a Debtor entity as of the Petition Date, and currently is not sponsored by a Debtor entity.[4]

5.      In addition, for the reasons set forth on <u>Exhibit A</u> to the Proposed Order, based on a review of the Debtors' Books and Records, the Debtors are not liable to certain of the other Employee Claimants.  If the Employee Claims are not disallowed and expunged, the Employee Claimants may potentially receive a wholly improper recovery to the detriment of other creditors.

6.      Accordingly, based upon this review, and for the reasons set forth in the Objection, I have determined that each Employee Claim that is the subject of the Objection should be accorded the proposed treatment described in the Objection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 19, 2013

<u>/s/ Deanna Horst</u>
Deanna Horst
Senior Director of Claims Management for
Residential Capital, LLC

---

[3] Copies of the Retirement Plan and Amendment are attached hereto as <u>Exhibit A</u>.
[4] GMAC Mortgage Group LLC was the plan sponsor on the Petition Date.  On July 1, 2013, AFI Financial Inc. replaced GMAC Mortgage Group LLC as plan sponsor.

ny-1107857

**<u>Exhibit A to Horst Declaration</u>**

**EMPLOYEES' RETIREMENT PLAN**

**For**

**GMAC MORTGAGE GROUP LLC**

**(Amended and Restated Effective January 1, 2012)**

**EMPLOYEES' RETIREMENT PLAN**
for
**GMAC MORTGAGE GROUP LLC**


**PREAMBLE**


Plan:  GMAC Mortgage Group LLC (the "Company") has adopted the Employees' Retirement Plan for GMAC Mortgage Group LLC (the "Plan") for the benefit of its employees.  The Plan was last restated as effective January 1, 2007, and this most recent amendment and restatement is effective January 1, 2012.

History:  GMAC Mortgage Group LLC, formerly known as GMAC Mortgage Group, Inc. and GMAC Mortgage Corporation, acquired all of the outstanding stock of Colonial Mortgage Service Company, which corporation was subsequently renamed GMAC Mortgage Corporation of PA. (the "Mortgage Corporation").  The Mortgage Corporation sponsored the Employees' Retirement Plan for Colonial Mortgage Service Company which was a defined benefit pension plan (the "Retirement Plan").  Employees of the Mortgage Corporation and certain of its affiliates participated in the Retirement Plan.

The Company adopted the Mortgage Corporation's Retirement Plan and amended, completely restated and renamed the same as the Employees' Retirement Plan for GMAC Mortgage Corporation effective January 1, 1986.  The Plan was subsequently amended or amended and restated and renamed from time to time, notably, effective January 1, 2001, except as expressly provided to the contrary therein, to incorporate Amendment Nos. 1-16 thereto.  Amendment No. 13 thereto provided for a complete termination of benefit accrual effective December 31, 2006 and Amendment No. 14 thereto renamed the Plan as the Employees' Retirement Plan for GMAC Mortgage Group LLC.

Merger:  As part of the divestiture of the personal lines business, the GMAC Insurance Personal Lines – Pension Plan (referred to hereinafter as "PL Sub-Plan") was merged with and into the Plan, effective as of December 31, 2009 and, thereafter, and provisions of the PL Sub-Plan were incorporated into the Plan to preserve the accrued benefits of its participants.

The Plan has been further amended and restated effective January 1, 2012 to consolidate the specific and formerly separate provisions of PL Sub-Plan into this document as Appendix B along with the specific and formerly separate provisions of the Plan (referred to hereinafter as "MG Sub-Plan") as Appendix A.

Purpose:  The Plan and its related trust, which is intended to form a part of the Plan, have been adopted by the Company as sponsor of the Plan for its employees and, as such, are intended to meet the requirements of Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as well as the requirements of the Employee Retirement Income Security Act of 1974, as either may be amended from

time to time.

       The Plan is hereby amended and restated in its entirety as follows, with no interruption in time, effective as of January 1, 2012; provided, however, individual provisions shall be effective in accordance with their amendment effective date or as otherwise required by law.

**EMPLOYEES' RETIREMENT PLAN FOR**
**GMAC MORTGAGE GROUP LLC**
**(Amended and Restated Effective January 1, 2012)**

## TABLE OF CONTENTS

| Section | | | Page |
|---|---|---|---|
| **1** | | **DEFINITIONS** | **1** |
| | (a) | Accrued Benefit | 1 |
| | (b) | Actuarially Equivalent Amount | 1 |
| | (c) | Actuary | 1 |
| | (d) | Administrator or Plan Administrator | 1 |
| | (e) | Annuity Starting Date | 2 |
| | (f) | Average Annual Compensation | 2 |
| | (g) | Benefit Accrual Freeze Date | 2 |
| | (h) | Board of Directors | 2 |
| | (i) | Break in Service | 2 |
| | (j) | Code | 2 |
| | (k) | Committee or Pension Committee | 2 |
| | (l) | Company | 2 |
| | (m) | Compensation | 2 |
| | (n) | Disability | 3 |
| | (o) | Disability Leave | 3 |
| | (p) | Early Retirement Date | 3 |
| | (q) | Employee | 3 |
| | (r) | Entry Date | 4 |
| | (s) | ERISA | 4 |
| | (t) | Fiduciary | 4 |
| | (u) | Fund | 4 |
| | (v) | Hour of Service | 4 |
| | (w) | Investment Manager | 5 |
| | (x) | Late Retirement Date | 5 |
| | (y) | Limitation Year | 5 |
| | (z) | Member | 5 |
| | (aa) | Named Fiduciary | 6 |
| | (ab) | Normal Retirement Date | 6 |
| | (ac) | Participating Company | 6 |
| | (ad) | Period of Service | 6 |
| | (ae) | Period of Severance | 6 |
| | (af) | Plan | 6 |
| | (ag) | Plan Year | 6 |
| | (ah) | Prior Plan | 6 |
| | (ai) | Qualified Joint and Survivor Annuity | 6 |
| | (aj) | Related Entity | 6 |
| | (ak) | Restatement Effective Date | 7 |
| | (al) | Service | 7 |
| | (am) | Severance Date | 7 |
| | (an) | Social Security Covered Compensation | 7 |
| | (ao) | Social Security Retirement Age | 7 |
| | (ap) | Trust Agreement | 7 |
| | (aq) | Trustee | 7 |

(i)

**EMPLOYEES' RETIREMENT PLAN FOR**
**GMAC MORTGAGE GROUP LLC**
**(Amended and Restated Effective January 1, 2012)**

## TABLE OF CONTENTS

| Section | | | Page |
|---|---|---|---|
| **2** | | **PLAN ADMINISTRATION** | **9** |
| | (a) | Article Controls | 9 |
| | (b) | Board of Directors | 9 |
| | (c) | Plan Administrator | 9 |
| | (d) | Committee | 9 |
| | (e) | Fiduciaries | 10 |
| | (f) | Delegation and Allocation | 12 |
| | (g) | Indemnification | 12 |
| | (h) | Advisors Not Fiduciaries | 12 |
| | (i) | Plan Expenses | 12 |
| | (j) | Claims | 12 |
| **3** | | **PARTICIPATION IN THE PLAN** | **14** |
| **4** | | **NORMAL RETIREMENT** | **15** |
| | (a) | Eligibility | 15 |
| | (b) | Calculation of Accrued Benefit | 15 |
| | (c) | Crediting Service for Benefit Accrual | 15 |
| | (d) | Minimum Benefit | 15 |
| | (e) | Benefits Payable From Other Plans | 15 |
| | (f) | Re-employment After Retirement | 15 |
| | (g) | Social Security Changes | 15 |
| **5** | | **BENEFIT DISTRIBUTION** | **16** |
| | (a) | Retirement Income | 16 |
| | (b) | Method of Election | 16 |
| | (c) | Election Period | 16 |
| | (d) | Latest Benefit Commencement Date | 17 |
| | (e) | Compliance with Code Requirements | 18 |
| | (f) | Commencement of Benefit | 22 |
| | (g) | Automatic Cashout | 22 |
| **6** | | **MAXIMUM BENEFITS AND CONTRIBUTIONS** | **23** |
| **7** | | **LATE RETIREMENT** | **38** |
| | (a) | Benefit Amount | 38 |
| | (b) | Payment | 38 |

(ii)

**EMPLOYEES' RETIREMENT PLAN FOR
GMAC MORTGAGE GROUP LLC
(Amended and Restated Effective January 1, 2012)**

## TABLE OF CONTENTS

| Section | | | Page |
|---|---|---|---|
| **8** | | **EARLY RETIREMENT** | **39** |
| | (a) | Eligibility | 39 |
| | (b) | Payment | 39 |
| **9** | | **DISABILITY LEAVE** | **40** |
| | (a) | Determination of Disability | 40 |
| | (b) | Status | 40 |
| | (c) | Average Annual Compensation | 40 |
| **10** | | **TERMINATION OF EMPLOYMENT BENEFIT** | **41** |
| | (a) | Eligibility | 41 |
| | (b) | Calculating Years of Service for Vesting | 41 |
| | (c) | Calculation of Accrued Benefit | 41 |
| | (d) | Commencement of Benefit and Cashouts | 41 |
| | (e) | Determination of Present Value | 44 |
| | (f) | Rollover Election | 44 |
| **11** | | **DEATH BENEFITS** | **46** |
| | (a) | Pre-Retirement Survivor Annuity | 46 |
| | (b) | Retirement Death Benefit | 46 |
| | (c) | Beneficiary Designation | 46 |
| | (d) | Beneficiary List | 47 |
| | (e) | Manner and Form of Payment | 47 |
| | (f) | Qualified Domestic Relations Order Exception | 48 |
| **12** | | **FUNDING AND FUND ADMINISTRATION** | **49** |
| | (a) | Participating Company Contributions | 49 |
| | (b) | Deductibility | 49 |
| | (c) | Actuarial Certification | 49 |
| | (d) | Valuation | 49 |
| | (e) | Exclusive Source of Benefits | 49 |
| | (f) | Forfeitures | 49 |
| | (g) | Member Contributions | 49 |
| **13** | | **TITLE TO ASSETS** | **50** |
| **14** | | **AMENDMENT AND TERMINATION** | **51** |
| | (a) | Amendment | 51 |
| | (b) | Termination | 51 |
| | (c) | Conduct on Termination | 51 |
| | (d) | Allocation of Fund Upon Termination | 51 |
| | (e) | Missing Member at Plan Termination | 52 |
| | (f) | Limitation on Benefits | 52 |
| | (g) | Funding-Based Limitations | 52 |

(iii)

**EMPLOYEES' RETIREMENT PLAN FOR
GMAC MORTGAGE GROUP LLC
(Amended and Restated Effective January 1, 2012)**

**TABLE OF CONTENTS**

| Section | | | Page |
|---|---|---|---|
| **15** | | **LIMITATION OF RIGHTS** | **62** |
| | (a) | Alienation | 62 |
| | (b) | Qualified Domestic Relations Order Exception | 62 |
| | (c) | Employment | 62 |
| **16** | | **MERGERS, CONSOLIDATIONS OR TRANSFERS OF PLAN ASSETS** | **63** |
| | (a) | General Rule | 63 |
| | (b) | Protected Benefits | 63 |
| **17** | | **PARTICIPATION BY RELATED ENTITIES** | **64** |
| | (a) | Commencement | 64 |
| | (b) | Termination | 64 |
| | (c) | Single Plan | 64 |
| | (d) | Delegation of Authority | 64 |
| **18** | | **TOP-HEAVY REQUIREMENTS** | **65** |
| | (a) | General Rule | 65 |
| | (b) | Definitions | 65 |
| | (c) | Vesting | 67 |
| | (d) | Minimum Benefit | 67 |
| **19** | | **MISCELLANEOUS** | **68** |
| | (a) | Incapacity | 68 |
| | (b) | Reversions | 68 |
| | (c) | Employee Data | 68 |
| | (d) | In Writing Requirement | 68 |
| | (e) | Doubt as to Right to Payment | 69 |
| | (f) | Inability to Locate Distributee | 69 |
| | (g) | Estoppel of Members and Their Beneficiaries | 69 |
| | (h) | Law Governing | 69 |
| | (i) | Pronouns | 70 |
| | (j) | Interpretation | 70 |
| **20** | | **EXECUTION** | **71** |
| **Appendix A** | | **MG Sub-Plan** | **73** |
| **Appendix B** | | **PL Sub-Plan** | **95** |

1.        <u>DEFINITIONS</u>

(a)        "<u>Accrued Benefit</u>" shall mean, subject to Sections A-1(a) and B-1(a),  a monthly pension payable for the Member's life, commencing on the first day of the month following the Member's Normal Retirement Date. The Accrued Benefit has been frozen for all Members.  The freeze date of the Accrued Benefit may vary depending on the related Sub-Plan provision, but in no event shall a Member's Accrued Benefit increase after December 31, 2006.    A Member's "<u>Accrued Benefit</u>" shall not include the value of the surviving spouse's benefit provided under the Plan.

(b)        "<u>Actuarially Equivalent Amount</u>" shall mean, when converting from one form of annuity to another or to a single lump sum, or when changing from one Annuity Starting Date to another, an amount equal in value under the assumptions set forth herein.

See Sections A-1(b) and B-1(b) for the assumptions used for purposes of converting from one form of an annuity to another for each Sub-Plan.

For purposes of satisfying the minimum present value requirements of section 417(e) of the Code, the following assumptions shall apply:

(i)        For periods prior to January 1, 2008, the applicable mortality table used is the table prescribed in Revenue Ruling 2001-62 or any successor thereto and the interest rate assumption must not be less than the greater of the applicable interest rate, as defined in section 417(e) of the Code or the rate specified in this Section, except that for distributions with an Annuity Starting Date in 2004 or 2005, 5.5% shall be substituted for the applicable interest rate.

(ii)        For periods on and after January 1, 2008,   the applicable mortality table used is the table set forth under section 417(e) of the Code, as in effect from time to time, as prescribed by Revenue Ruling 2007-67 and any further guidance issued by the Internal Revenue Service or Department of Treasury, and an interest rate as determined and published by the Internal Revenue Service for the purpose of determining the minimum present value of a Member's benefit under section 417(e)(3) of the Code for the December preceding the Plan Year that contains the distribution date.

Notwithstanding the foregoing, or any Plan provision to the contrary, the applicable mortality table used for purposes of adjusting any benefit or limitation under section 415 of the Code as incorporated by reference in Section 6.

(c)        "<u>Actuary</u>" shall mean a person who is enrolled by the Joint Board for the Enrollment of Actuaries established under Title III, Subtitle C of ERISA to perform actuarial services with respect to pension plans subject to ERISA.

(d)        "<u>Administrator</u>" or "<u>Plan Administrator</u>" shall mean the Company, which

1

shall designate an individual or group of individuals pursuant to Section 2(a) to discharge the statutory responsibilities of a plan administrator under ERISA

(e)        "<u>Annuity Starting Date</u>" shall mean the first day of the first period for which an amount is payable as an annuity.

(f)        "<u>Average Annual Compensation</u>" is defined in Sections A-1(f) and B-1(f) .

(g)        "Benefit Accrual Freeze Date" is defined in Sections A-1(g) and B-1(g).

(h)        "<u>Board of Directors</u>" shall mean the Board of Directors of Ally Financial Inc.

(i)        "<u>Break in Service</u>" is defined in Sections A-1(i) and B-1(i). Notwithstanding the provisions of such sections, an individual reemployed under chapter 43 of title 38, United States Code, shall not be treated as having a Break in Service by reason of such individual's period of qualified military service, as such term is defined in Section 1(v).

(j)        "<u>Claims Fiduciary</u>" shall mean the Ally ERISA Appeals Committee.

(k)        "<u>Code</u>" shall mean the Internal Revenue Code of 1986, as amended, and the same as may be further amended from time to time.

(l)        "<u>Committee</u>" or "<u>Pension Committee</u>" shall mean Ally Financial Inc. Employee Benefits Committee.

(m)        "<u>Company</u>" shall mean GMAC Mortgage Group LLC, a Delaware limited liability company, and any successor thereto, which is wholly-owned by Ally Financial Inc.  For purposes of the PL Sub-Plan in Appendix B, however, "<u>Company</u>" shall mean GMAC Insurance Personal Lines for periods prior to February 28, 2010.

(n)        "<u>Compensation</u>" for a Plan Year as used to define a Member's Accrued Benefit is defined in Sections A-1(n) and B-1(n).  Notwithstanding the foregoing, an Employee who is in qualified military service shall be treated as receiving Compensation from the Company during such period of qualified military service equal to:

(i)        the Compensation the Employee would have received during such period if the Employee were not in qualified military service, determined based on the rate of pay the Employee would have received from the Company but for absence during the period of qualified military leave; or

(ii)        if the Compensation the Employee would have received during such period was not reasonably certain, the Employee's average compensation from the Company during the 12-month period immediately preceding the qualified military service (or, if shorter, the period of employment immediately preceding the qualified military service).

"Compensation" with respect to any Member for any Plan Year that began on or after January 1, 2002 for purposes of determining benefit accrual in that Plan Year shall be limited $200,000, as adjusted for that Plan Year in accordance with cost-of-living increases pursuant to section 401(a)(17)(B) of the Code.

(o)    "Disability" shall mean a medically determinable physical or mental impairment which would qualify a Member for benefits under the Company's long-term disability benefit plan, without regard to whether the Member participates in such plan.

(p)    "Disability Leave" is defined in Section A-1(p)

(q)    "Early Retirement Date" shall mean the date on which a Member has both attained the age and Service requirement necessary, as set forth in Section A-1(q) or B-1(q), as applicable, for benefit commencement prior to  the Member's Normal Retirement Date.

(r)    "Employee" shall mean, except as further defined in Section B-1(r), each and every person who is an employee of a Participating Company or a Related Entity.  The term "Employee" shall also include a person who is a "leased employee" with respect to a Participating Company or a Related Entity.  The term "leased employee" means any person who is not an employee of a Participating Company and who provides services to a Participating Company if:

(i)    such services are provided pursuant to an agreement between a Participating Company and any other person,

(ii)    the person has performed such services for a Participating Company (or a Participating Company and Related Entities) on a substantially full-time basis for a period of at least one year, and

(iii)     such services are performed under the primary direction or control of a Participating Company or other Related Entity.

Notwithstanding the foregoing, the term "leased employee" shall not include an individual who is covered by a plan that is maintained by the leasing organization that provides the minimum benefits required by section 414(n)(5)(B) of the Code, provided such individuals do not constitute more than 20% of the Participating Companies' work force of Employees who are not Highly Compensated Employees within the meaning of section 414(q) of the Code.

No person who is a "leased employee" or who a Participating Company determines is not its employee for purposes of wage withholding required under section 3401, et. seq. of the Code (regardless of whether an administrative agency or court rules that such person is a Participating Company's employee for any purpose) shall be eligible to participate in this Plan or be deemed an "Employee" for purposes of eligibility to participate in this Plan.

3

Employee shall not include (i) independent contractors, (ii) consultants, (iii) contract employees, (iv) members of the Board or any other governing bodies, and (v) any individual who performs services for the Company whose remuneration for services is not initially reported by the Company on IRS Form W-2 and any temporary individual whose services are contracted from or through an entity which is not an affiliate, regardless of any later classification or reclassification of any such individual as a common-law employee of the Company. The purpose of this provision is to exclude from participation in the Plan all persons who may actually be common-law employees of the Company, but who are not paid as though they were Employees, regardless of whether that exclusion is correct.

(s)        "Entry Date" shall mean the date set forth in Section A-3 or Section B-3 on which an Employee became a Member of the Plan. No "Entry Date "shall occur on or after the Benefit Accrual Freeze Date.

(t)        "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the same as may be further amended from time to time.

(u)        "Fiduciary" shall mean a person who, with respect to the Plan, (i) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control with respect to management or disposition of the Plan's assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of the Plan, and shall include the Claims Fiduciary to administer the claims process described in Article 2.

(v)        "Fund" shall mean the assets of the Plan.

(w)        "Hour of Service"

(i)        General Rule. "Hour of Service" shall mean each hour

(A)        for which an Employee is directly or indirectly paid or entitled to payment by a Participating Company or other Related Entity for the performance of duties, or

(B)        for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by a Participating Company or other Related Entity.

These hours shall be credited to the Employee for the period or periods in which the duties were performed or to which the award or agreement pertains irrespective of when payment is made. The same hours shall not be credited under both (A) and (B) above.

(ii)        Paid Absences. An Employee shall also be credited with one "Hour of Service" for each hour for which the Employee is directly or indirectly paid, or entitled to payment, by a Participating Company or other Related Entity for reasons other than the performance of

4

duties or absence due to vacation, holiday, illness, incapacity, disability, layoff, jury duty or authorized leave of absence for a period not exceeding one year for any reason in accordance with a uniform policy established by the Committee, provided, however, not more than 501 "Hours of Service" shall be credited to an Employee under this Section 1(v)(ii) on account of any single, continuous period during which the Employee performs no duties and provided, further, that no credit shall be given if payment (A) is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws or (B) is made solely to reimburse an Employee for medical or medically related expenses incurred by the Employee.

(iii)    Military.  An Employee shall also be credited with one "Hour of Service" for vesting for each hour during which the Employee is in qualified military service.  For purposes of this Plan, the term "qualified military service" means any service in the uniformed services (as defined in chapter 43 of title 38, United States Code) by any individual if such individual is entitled to reemployment rights under such chapter with respect to such service.  Notwithstanding the foregoing or any provision of this Plan to the contrary, Hours of Service credit with respect to qualified military service will be provided in accordance with section 414(u) of the Code if that provides greater credit.

(iv)    Miscellaneous.  For purposes of this Section 1(v), the regulations issued by the Secretary of Labor at 29 CFR §2530.200b - 2(b) and (c) are incorporated by reference. Nothing herein shall be construed as denying an Employee credit for an "Hour of Service" if credit is required by federal law.

(x)    "Investment Manager" shall mean a person who is a Fiduciary with respect to the Plan, other than a Trustee, (i) who has the power to manage, acquire, or dispose of any asset of the Plan; (ii) who is registered as an investment adviser under the Investment Advisers Act of 1940 or who is a bank as defined in that Act or who is an insurance company qualified to manage, acquire or dispose of assets of retirement plans under the laws of more than one state; and (iii) who has acknowledged in writing that he or it is a Fiduciary with respect to the Plan.  The term "Investment Manager" shall include any person or entity that qualifies as such under section 3(38) of ERISA.

(y)    "Late Retirement Date" shall mean the date on which a Member actually retires after his Normal Retirement Date.

(z)    "Limitation Year" shall mean the consecutive twelve-month period commencing on January 1st and ending on December 31st.

(aa)    "Member" shall mean each Employee of a Participating Company who became a Member under the terms of the Plan prior to the Benefit Accrual Freeze Date and each other person who has an Accrued Benefit held under the Plan.

5

(ab)    "<u>Named Fiduciary</u>" shall mean the Committee.

(ac)    "<u>Normal Retirement Date</u>" shall mean the first day of the month coincident with or immediately following attainment of Normal Retirement Age, which is defined in Section 4(a).

(ad)    "<u>Participating Company</u>" shall mean each Related Entity with respect to the Company which adopts or is deemed to adopt this Plan pursuant to Section 17.  The term shall also include the Company, unless the context otherwise requires.

(ae)    "<u>Period of Service</u>" is defined in Section A-1(ae).

(af)    "<u>Period of Severance</u>" is defined in Section A-1(af).

(ag)    "<u>Plan</u>" shall mean the Employees' Retirement Plan for GMAC Mortgage Group LLC as amended and restated as set forth herein effective January 1, 2012, and the same as may be amended from time to time.  As applicable "<u>Plan</u>" shall also be deemed to include the provisions of the "<u>MG Sub-Plan</u>" set forth in Appendix A to the Plan and the "<u>PL Sub-Plan</u>" set forth in Appendix B to the Plan, as such Sub-Plans are defined in the Preamble of the Plan.

(ah)    "<u>Plan Year</u>" shall mean the consecutive twelve-month period commencing on January 1st and ending on December 31st.

(ai)    "<u>Prior Plan</u>" is defined in Sections A-1(ai) and B-1(ai).

(aj)    "<u>Qualified Joint and Survivor Annuity</u>" shall mean an annuity for the life of the Member with a survivor annuity for the life of the Member's spouse which is equal to 50% of the amount of the annuity payable during the joint lives of the Member and his spouse.  However, if a Member is not married, "<u>Qualified Joint and Survivor Annuity</u>" shall mean a straight life annuity for the Member's life.  The "<u>Qualified Joint and Survivor Annuity</u>" for a married Member shall be the Actuarially Equivalent Amount, determined as defined under each Sub-Plan, of the Member's straight life annuity.

(ak)    "<u>Related Entity</u>" shall mean (i) all corporations which are members with a Participating Company in a controlled group of corporations within the meaning of section 1563(a) of the Code, determined without regard to sections 1563(a)(4) and (e)(3)(C) of the Code, (ii) all trades or businesses (whether or not incorporated) which are under common control with a Participating Company as determined by regulations promulgated under section 414(c) of the Code, (iii) all trades or businesses which are members of an affiliated service group with a Participating Company within the meaning of section 414(m) of the Code and (iv) any entity required to be aggregated with a Participating Company under regulations prescribed under section 414(o) of the Code (to the extent required by such regulations); provided, however, for purposes of Section 6, the definition shall be modified to substitute the phrase "more than 50%" for the phrase "at least 80%" each place it appears in section 1563(a)(1) of the Code. Furthermore, for purposes of crediting Hours of Service for eligibility to participate and Service for

purposes of vesting, employment as a "leased employee," within the meaning of section 414(n) of the Code, of a Participating Company or other Related Entity shall be treated as employment for a Participating Company or other Related Entity.  For purposes of Section 10(b) governing Service credited for purposes of vesting, each of the entities listed on Schedule A (and entities included within a controlled group of corporations within which any of them was included or a predecessor to any of them) shall be deemed a "Related Entity" for periods prior to the date set forth opposite its name on Column 1 of Schedule A effective as of the date set forth opposite its name on Column 2 of Schedule A.  In any other case, an entity is a "Related Entity" only during those periods in which it is included in a category described in this Section.  If a Participating Company acquired the stock or business of an entity, such entity shall not be a "Related Entity" with respect to periods prior to the acquisition unless and until specified herein.

    (al)       "Restatement Effective Date" is defined in Section A-1(al).

    (am)      "Service" is defined in Sections A-1(am) and B-1(am).

    (an)      "Severance Date" is defined in Section A-1(an).

    (ao)      "Social Security Covered Compensation" shall mean, with respect to a Member and except as otherwise provided in Section A-1(ao) or Section B-1(ao), the average of the contribution and benefit bases in effect under Section 230 of the Social Security Act for each year in the 35-year period ending with the year in which the Member attains his Social Security Retirement Age; however, the Committee, according to a uniform rule consistently applied, may determine Social Security Covered Compensation by using tables prescribed by the Commissioner of Internal Revenue that round the actual amounts for different years of birth.  The determination for any year preceding the year in which the Member attains his Social Security Retirement Age shall be made by assuming that there is no increase in the contribution and benefit bases in effect under Section 230 of the Social Security Act after the determination year and before the Member attains his Social Security Retirement Age.

    (ap)      "Social Security Retirement Age" is defined in Appendix A-1(ap) and Appendix B-1(ap).

    (aq)      "Trust Agreement" shall mean each agreement under which all or any portion of the Fund is held.  The term shall also include, but shall not be limited to, one or more group trust arrangements providing for the commingled investment of assets of certain retirement plans that satisfy the requirements of section 401(a) of the Code, in which case the governing instrument of the group trust arrangement shall be incorporated by reference in the Plan's governing instruments.

    (ar)      "Trustee" shall mean such person, persons or corporate fiduciary designated pursuant to Section 12(a) to hold and/or to manage and control all or any portion of the Fund pursuant to

7

the terms of the Plan and a Trust Agreement.

2.        PLAN ADMINISTRATION

(a)        Article Controls. This Article shall control over any contrary, inconsistent or ambiguous provisions contained elsewhere in the Plan.

(b)        Board of Directors. The Board of Directors is responsible for appointing and removing the Committee, for amending or terminating the Plan and each Trust Agreement, and for transferring the responsibility for any function from or to a particular Fiduciary. The Board of Directors may delegate any power or duty it has under the Plan or Trust Agreement, including, but not limited to, amending the Plan or Trust Agreement, appointing fiduciaries, and designating or removing a Trustee, to a committee of the Board of Directors or to the Committee, in which case such delegate, and not the Board of Directors, shall be responsible for exercise of the delegated power or duty.

(c)        Plan Administrator. For purposes of this Plan, the Company is the Plan Administrator and is responsible for discharging the statutory duties of a plan administrator under ERISA and the Code, including filing all reports and distributing to Members and beneficiaries reports and other information required under ERISA or the Code and performing any such duties as are necessary for administration of the Plan.

(d)        Committee. The Company, as Plan Administrator and acting through the Board of Directors, has designated the Committee as the Named Fiduciary with the authority to control and manage the operation and administration of the Plan and the Fund. The Committee may delegate all or a portion of the responsibilities of controlling and managing the operation and administration of the Plan to one or more persons, in which case such delegeedelegate, and not the Committee, shall be responsible for the exercise of the delegated power or duty. The Committee also may appoint agents, consult with Investment Advisers, counsel or other representatives to render advice with regard to any of its responsibilities under the Plan. The Board of Directors may remove, with or without cause, the Committee or any Committee member. The Committee may remove, with or without cause, any delegate or adviser designated by it.

The Committee shall have full power and discretionary authority to administer the Plan, interpret its provisions, and make factual and legal determinations concerning claims for benefits or the review of breach of fiduciary duty claims against the Plan fiduciaries and other matters relating to the administration of the Plan. The Committee has delegated its authority in this regard to the Claims Fiduciary.

The responsibility to control and manage the operation and administration of

9

the Plan shall include, but shall not be limited to, the performance of the following acts:

    (i)    The filing of all reports required of the Plan, other than those which are the responsibility of the Administrator;

    (v)    The distribution to Members and beneficiaries of all reports and other information required of the Plan, other than reports and information required to be distributed by the Administrator;

    (iii)    The keeping of complete records of the administration of the Plan;

    (iv)    The promulgation of rules and regulations for administration of the Plan consistent with the terms and provisions of the Plan and the Trust Agreement;

    (vi)    The interpretation of the Plan, including the determination of any questions of fact arising under the Plan and the making of all decisions required by the Plan;

    (vi)    Exercising any power delegated to it by the Board of Directors, including, but not limited to, amending the Plan and the Trust Agreement;

    (vii)    Determining whether to retain one or more Investment Managers and, if retained, entering into appropriate investment management agreements with respect to the Fund;

    (viii)    Adopting an investment policy consistent with the Plan's needs and the requirements of Title I of ERISA; and

    (ix)    Determining the Plan's short and long term financial needs and minimum funding requirements under ERISA and the Code and communicating its finding to the Participating Companies and the Trustee and/or Investment Manager, as appropriate

    The Committee's interpretation of the Plan and any actions and decisions taken in good faith by the Committee based on its interpretation shall be final and conclusive.  The Committee may correct any defect, or supply any omission, or reconcile any inconsistency in the Plan in such manner and to such extent as shall be expedient to carry the Plan into effect and shall be the sole judge of such expediency.

    (e)    <u>Fiduciaries</u>.

    (i)    <u>Named Fiduciary</u>.  The Committee is the Named Fiduciary (within the meaning of section 402(a) of ERISA) for the Plan and has the responsibilities and duties set forth herein; provided, however, the Committee shall not have any responsibility for the investment of any portion of the Fund over which investment control is placed in a Trustee or Investment Manager.

    (ii)    <u>General</u>.  Each Fiduciary with respect to the Plan shall have only those specific powers, duties, responsibilities and obligations as are specifically given him under the Plan and the Trust Agreement. It is intended under the Plan that each Fiduciary shall be responsible for the

proper exercise of his own powers, duties, responsibilities and obligations hereunder and shall not be responsible for any act or failure to act of another Fiduciary except to the extent provided by law or as specifically provided herein.

(iii)    <u>Fiduciary Duty</u>

(A)    Each Fiduciary under the Plan, including but not limited to, the Committee, the Trustee and any Investment Manager, shall discharge his fiduciary duties and responsibilities with respect to the Plan:

(I)    solely in the interest of the Participants, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and defraying reasonable expenses of administering the Plan;

(II)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(III)    by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is prudent not to do so; and

(IV)    in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with applicable law.

(B)    No Fiduciary shall cause the Plan or Fund to enter into a "prohibited transaction" as provided in section 4975 of the Code.

(C)    No Fiduciary shall permit a "prohibited payment" (as defined in section 206(e)(2) of ERISA) to be made from the Plan or the Fund during a period in which the Plan has a "liquidity shortfall" (as defined in section 302(e)(5) of ERISA).

(iv)    <u>Fiduciary Compensation</u>.  The Plan Administrator or a Committee member, delegate, or adviser who already receives full-time pay from a Participating Company or other Related Entity shall serve without compensation from the Plan for his services as such, but he shall be reimbursed pursuant to Section 2(i) for any reasonable expenses incurred by him in the administration of the Plan. The Plan Administrator or a Committee member, delegate, or adviser who is not already receiving full-time pay from a Participating Company or other Related Entity may be paid such reasonable compensation from the Plan as shall be agreed upon.

(v)    <u>Fiduciary Insurance</u>.  If the Committee so directs, the Plan shall purchase insurance to cover the Plan from liability or loss occurring by reason of the act or omission of a Fiduciary provided such insurance permits recourse by the insurer against the Fiduciary in the case of a

breach of a fiduciary obligation by such Fiduciary.

(f)  <u>Delegation and Allocation</u>.  The Committee may appoint subcommittees, individuals, or any other agents as it deems advisable and may delegate to any of such appointees any or all of the powers and fiduciary duties of the Committee. Such appointment and delegation must be in writing, specifying the powers or duties being delegated, and must be accepted in writing by the delegate. Upon such appointment, delegation and acceptance, the delegating Committee members shall have no liability for the acts or omissions of any such delegate, as long as the delegating Committee members do not violate their fiduciary responsibility in making or continuing such delegation.

(g)  <u>Indemnification</u>.  The Company shall indemnify and hold harmless to the maximum extent permitted by law each member of the Committee and any other person who is an Employee or director of a Participating Company or other Related Entity against and with respect to all damages, losses, obligations, liabilities, liens, deficiencies, costs and expenses, including without limitation, reasonable attorney's fees and other costs incident to any suit, action, investigation, claim or proceeding to which he may be a party by reason of his performance of functions and duties under the Plan, except in relation to matters as to which he shall be held liable for an act of willful misconduct in the performance of his duties.  The foregoing right to indemnification shall be in addition to such other rights as the Committee member or other person may enjoy as a matter of law or by reason of insurance coverage of any kind.  Rights granted under this Section shall be in addition to, and not in lieu of, any rights to indemnification to which a Committee member or other person may be entitled pursuant to the by-laws or governing instruments of the Company, any Participating Company or any other Related Entity.

(h)  <u>Advisors Not Fiduciaries</u>.  The Company and the Committee and other Plan Fiduciaries may solicit the advice of attorneys, actuaries, accountants, and other professionals and may rely upon their advice in the performance of duties under the Plan.  No such advisor shall be considered a Fiduciary by virtue of having advised a Fiduciary but shall be a Fiduciary only to the extent he expressly accepts that role.

(i)  <u>Plan Expenses</u>.  All expenses of administration of the Plan shall be paid out of the Fund unless paid by a Participating Company.

(j)  <u>Claims</u>.  A claim for benefits shall be filed with the Administrator.   If, pursuant to the rules, regulations or other interpretations of the Plan, the Administrator denies the claim of a Member or beneficiary for benefits under the Plan, the Administrator shall provide written notice, within 90 days after receipt of the claim (45 days if relating to a disability), setting forth in a manner calculated to be understood by the claimant:

(i)  the specific reasons for such denial;

12

        (ii)        the specific reference to the Plan provisions on which the denial is based;

        (iii)        a description of any additional material or information necessary to perfect the claim and an explanation of why such material or information is needed;

        (iv)        an explanation of the Plan's claim review procedure and the time limitations of this Section applicable thereto; and

        (v)        a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse determination on review.

        A Member or beneficiary whose claim for benefits has been denied may request review by the Claims Fiduciary of the denied claim by notifying the Claims Fiduciary in writing within 60 days after receipt of the notification of claim denial (180 days if the appeal relates to a disability). For purposes of this paragraph (j), the Claims Fiduciary shall be the Ally Financial Inc. ERISA Appeals Committee, which members shall be appointed and removed by the Committee. As part of said review procedure, the claimant or his authorized representative may review pertinent documents and submit issues and comments to the Claims Fiduciary in writing. The Claims Fiduciary shall render its decision to the claimant not later than 60 days after receipt of the request for review (45 days if the appeal relates to a disability), unless special circumstances require an extension of time, in which case decision shall be rendered as soon after the 60-day (or 45-day) period as possible, but not later than 120 days after receipt of the request for review. The decision on review shall state (i) the specific reasons for the decision and the specific Plan references on which it is based, (ii) a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of documents, records and other information relevant to the claim, (iii) a statement of the claimant's right to bring a civil action under section 502(a) of ERISA and (iv) such other matters as may be required by Department of Labor regulations. The Claims Fiduciary's decision on review shall be final and binding on all parties. If the Member or beneficiary does not receive a written response within the timeframe described above, the appeal will be deemed denied.

3.              <u>PARTICIPATION IN THE PLAN</u>

Each Member on the day before the Benefit Accrual Freeze Date shall remain a Member until his Accrued Benefit is entirely distributed or forfeited.

No other person shall become a Member. Membership is frozen as of the day before the Benefit Accrual Freeze Date.

See Sections A-3 and B-3 for participation provisions in effect before the Benefit Accrual Freeze Date.

4.        <u>NORMAL RETIREMENT</u>

(a)        <u>Eligibility</u>.  Each Member who has attained Normal Retirement Age shall be eligible to retire on his Normal Retirement Date and shall be entitled to receive a monthly income calculated under this Section, payable as provided for in Section 5 but subject to the limitations and provisions of Section 6.  Normal Retirement Age is defined in Sections A-4(a) and B-4(a).

(b)        <u>Calculation of Accrued Benefit</u>.  See Sections A-4(b) and B-4(b)

(c)        <u>Crediting Service for Benefit Accrual</u>.  See Sections A-4(c) and B-4(c).

(d)        <u>Minimum Benefit</u>. See Sections A-4(d).

(e)        <u>Benefits Payable From Other Plans.</u>  See Sections A-4(e) and B-4(e).

(f)        <u>Re-employment After Retirement</u>.   See Sections A-4(f) and B-4(f).

(g)        <u>Social Security Changes</u>. In no event shall an increase in the social security wage base or benefit level (i) reduce the amount of any benefit being received hereunder by a Member or beneficiary prior to such increase or (ii) reduce the value of the non-forfeitable benefit payable to a Member who has severance from employment covered by the Plan with respect to Service prior to his severance, regardless of whether the Member returns to employment covered by the Plan.

5.          BENEFIT DISTRIBUTION

(a)          Retirement Income.  Except as otherwise expressly provided in this Plan, all retirement income and payments to beneficiaries shall be paid in monthly installments of one-twelfth (1/12) of the annual amount.  Retirement benefits shall commence as provided at Section 5(f) below, subject to earlier commencement under Section 5(d).  The last payment shall be the one paid for the month in which death occurs.  Subject to the other provisions of this Section, a Member may elect to have the distribution of his annual retirement income made in any of the following optional forms; provided, however, that the normal form of benefit payment shall, unless the Member otherwise elects, take the form of Option A in the case of a Member who is not married on the Annuity Starting Date and take the form of Option B in the case of a Member who is married on the Annuity Starting Date.  Furthermore, a married Member may not elect benefits under Option A or C without the written consent of his spouse granted and evidenced in accordance with rules established by the Committee.

(i)          Option A (Straight Life Annuity):  A Member shall be entitled to receive an annual retirement income payable monthly for life.

(ii)          Option B (Qualified Joint and 50% Survivor Annuity):  A Member may elect to receive a reduced rate of annual retirement income, payable monthly, with income equal to 50% of that reduced rate continuing to his spouse.  Such reduced rate of retirement income for the joint lives of the Member and his spouse will be the Actuarial Equivalent Amount of the Member's Accrued Benefit.

(iii)          Option C (Other Forms of Payment): See Sections A-5(a)(iii) and B-5(a)(iii).

(b)          Method of Election.  The election or change of election of a method and time of distribution of benefits shall be in writing on forms prescribed by the Committee.  A Member may change his election at any time during the election period set forth below.

(c)          Election Period.

(i)          The Committee shall furnish to the Member a written explanation of the benefit options, including the Qualified Joint and Survivor Annuity, no less than 30 days and no more than 180 days before the Annuity Starting Date.  The notification, in the case of a married Member, shall explain the terms and conditions of the Qualified Joint and Survivor Annuity and the effect of electing not to take such annuity and such other information as may be required under applicable governmental regulations.  The written explanation of benefit options shall explain the terms and conditions of each option, and in particular, the Member's right to make, and the effect of, a waiver of the

16

automatic option, the right of the Member's spouse to consent or not to consent to such waiver, the right to make, and the effect of, a revocation of a previous waiver or elections, the relative financial values of the various optional forms, and the right of a Member to defer receipt of distribution and an explanation of the consequences of failing to defer.

(ii)        A married Member may, within a period of 180 days ending on the later of his Annuity Starting Date (which may not be later than the date specified in the last paragraph of Section 5(d)) or 180 days after notification is received, elect in writing, with the written consent of his spouse witnessed by a notary public or a member of the Committee in a manner prescribed by the Committee, not to take a Qualified Joint and Survivor Annuity and to take a form of benefit permitted under Option A or C in lieu thereof.  The consent of the Member and his spouse must be obtained not more than 180 days from the date distribution commences.  An unmarried Member may, within the election period, elect in writing the form of benefit he desires; however, if an unmarried Member fails to make an election, his benefit shall be paid in the form of Option A.  The Member may revoke an election not to take the Qualified Joint and Survivor Annuity or choose again to take such annuity at any time and any number of times within the applicable election period.  If a Member requests additional information within 60 days after receipt of the notification of election, the election period shall be extended an additional 60 days following his receipt of such additional information.  A Member may change his election at any time prior to the expiration of the election period described above.

(iii)        A Member's election shall not be effective until at least 30 days after the Member receives the written explanation described in Sections 5(c)(i) and (ii) unless the Member and his spouse, if any, make an informed written waiver of this requirement and distribution does not begin less than eight days after receipt of the written explanation.

(d)        <u>Latest Benefit Commencement Date</u>.  Notwithstanding any other provision of the Plan, in no event, unless the Member elects to the contrary designating the form of benefit he desires and the commencement date thereof or the election period set forth in Section 5(c) has not expired, shall the payment of benefits commence later than the sixtieth day after the last day of the Plan Year in which the latest of the following occurs:

(i)        the Member's Normal Retirement Date;

(ii)        the Member's separation from service with all Participating Companies and Related Entities; or

(iii)        the tenth anniversary of the year in which the Member commenced participation in the Plan.

Distribution of benefits must commence to a Member on or before the April 1st of the calendar year following the calendar year in which the Member attains age 70-1/2, retroactive to the January 1st of such year.  If distribution begins under this Section prior to a Member's retirement, the amount of benefit initially shall be determined as of the last day of the calendar year preceding the calendar year in which benefit payments commence payable in the form of a straight life annuity and shall be adjusted annually effective as of each January 1st following the commencement of benefit payments to reflect the additional benefit accrued for the preceding year, but not beyond the Member's Benefit Accrual Freeze Date.  A Member whose benefit begins to be paid under this Section 5(d) shall elect a form of distribution effective as of his Late Retirement Date pursuant to Sections 5(a), (b) and (c) in accordance with Section 7.

(e)  Compliance with Code Requirements.

(i)  General. The provisions of this Section will take precedence over and supersede any inconsistent provisions of the Plan. This Section shall be construed in a manner necessary to satisfy the minimum distribution rules of section 401(a)(9) of the Code and the regulations thereunder.  Except for superseding inconsistent provisions and addressing any matter related to minimum required distributions not otherwise addressed in the Plan, the general distribution provisions of the Plan shall control.  In no event shall this Section be construed as making available any form of benefit distribution not otherwise made available to a Member or beneficiary under the Plan. Further, the forms of distribution the Plan permits determined without regard to this Section shall remain the only forms of benefit distribution available under the Plan. All distributions required under this Section will be determined and made in accordance with the regulations under section 401(a)(9) of the Code.

(ii)  Time and Manner of Distribution

(A)  Required Beginning Date.  The Member's entire interest will be distributed, or begin to be distributed, to the Member no later than the Member's required beginning date, as defined in this Section.

(B)  Death of Member Before Distributions Begin.  If the Member dies before distributions begin, the Member's entire interest will be distributed, or begin to be distributed, no later than as follows:

(I)  If the Member's surviving spouse is the his sole designated beneficiary, then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Member died, or by December 31 of the calendar year in which the Member would have attained age 70 ½, if later.

(II)  If the Member's surviving spouse is not the

18

Member's sole designated beneficiary, then distributions to the designated beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Member died.

(III)    If there is no designated beneficiary as of September 30 of the year following the year of the Member's death, the Member's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Member's death.

(IV)    If the Member's surviving spouse is the Member's sole designated beneficiary and the surviving spouse dies after the Member but before distributions to the surviving spouse begin, this Section  (5)(e)(ii)(B), other than Section 5(e)(ii)(B)(I), will apply as if the surviving spouse were the Member.

For purposes of this Section 5(e)(ii)(B) and Section 5(e)(v), distributions are considered to begin on the Member's required beginning date or if Section 5(e)(ii)(B)(IV) applies, on the date distributions are required to begin to the surviving spouse under Section 5 (e)(ii)(B)(I).  If annuity payments irrevocably commence to be paid to the Member before the Member's required beginning date (or to the Member's surviving spouse before the date distributions are required to begin to the surviving spouse under this Section 5(e)(ii)), the date distributions are considered to begin is the date distributions actually commence.

(C)    <u>Forms of Distributions</u>.  Unless the Member's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first calendar year distributions will be made in accordance with Section 5(e)(iii)-(v).  If the Member's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirement of section 401(a)(9) of the Code and the regulations thereunder.  Any part of the Member's interest which is in the form of an individual account described in section 414(k) of the Code will be distributed in a manner satisfying the requirements of section 401(a)(9) of the Code and the regulations thereunder that apply to individual accounts.

(iii)    <u>Determination of Amount to be Distributed Each Year</u>.

(A)    <u>General Annuity Requirement</u>. If the Member's interest is paid in the form of annuity distributions under the Plan, payments under the annuity will satisfy the following requirement: (1) the annuity distributions will be made at intervals not longer than one year; (2) the distribution period will over a life (or lives) or over a period certain not longer than the period described in Section 5(e)(iv) or (v); (3) once payments have begun over a period certain, the period certain will not be changed even if the period certain is shorter than the maximum permissible and (4) payments will either be nonincreasing or increase only as follows:  by an annual percentage increase that does not

19

exceed the annual percentage increase in a cost-of-living index that is based on prices of all items and issued by the Bureau of Labor Statistics; or to the extent of the reduction in the amount of the Member's payments to provide for a survivor benefit upon death, but only if the beneficiary whose life was being used to determine the distribution period described in Section 5(e)(iv) dies or is no longer the Member's beneficiary pursuant to a qualified domestic relations order within the meaning of section 414(p) of the Code; or to provide cash refunds of employee contributions upon the Members death; or to pay increased benefits that result from a Plan amendment.

(B)    Amount Required to be Distributed by Required Beginning Date. The amount that must be distributed on or before the Member's required beginning date (or, if the Member dies before distributions begin, the date distributions are required to begin under Section 5(e)(ii)(A) or (B), ) is the payment that is required for one payment interval.  The second payment need not be made until the end of the next payment interval even if that payment interval ends in the next calendar year.  Payment intervals are the periods for which payments are received, e.g. bi-monthly, monthly, semi-annually or annually.  All of the Member's benefit accruals as of last day of the first distribution calendar year will be included in the calculation of the amount of the annuity payments for payment intervals ending on or after the Member's required beginning date.

(C)    Additional Accruals After First Distribution Calendar Year.  Any additional benefits accruing to the Member in a calendar year after the first distribution calendar year will be distributed beginning with the first payment interval ending in the calendar year immediately following the calendar year in which such amount accrues.

(iv)    Requirements For Annuity Distributions That Commence During Member's Lifetime.

(A)    Joint Life Annuities Where the Beneficiary is Not the Member's Spouse. If the Member's interest is being distributed in the form of a joint and survivor annuity for the joint lives of the Member and a nonspouse beneficiary, annuity payments to be made on or after the Member's required beginning date to the designated beneficiary after the Member's death must not at any time exceed the applicable percentage of the annuity payment for such period that would have been payable to the Member using the table set forth in Q&A-2 of section 1.409(a)(9)-6T of the Treasury regulations.  If the form of distribution combines a joint and survivor annuity for the joint lives of the Member and a nonspouse beneficiary and a period certain annuity, the requirement in the preceding sentence will apply to annuity payments to be made to the designated beneficiary after the expiration of the period certain.

(B)    Period Certain Annuities.  Unless the Member's spouse is

20

the sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain for an annuity distribution commencing during the Member's lifetime may not exceed the applicable distribution period for the Member under the Uniform Lifetime Table set forth in section 1.401(a)(9)-9 of the Treasury regulations for the calendar year that contains the annuity starting date.  If the annuity starting date precedes the year in which the Member reaches age 70, the applicable distribution period for the Member is the distribution period for age 70 under the Uniform Lifetime Table set forth in section 1.401(a)(9)-9 of the Treasury regulations plus the excess of 70 over the age of the Member as of the Member's birthday in the year that contains the annuity starting date. If the Member's spouse is the Member's sole designated beneficiary and the form of distribution is a period certain and no life annuity, the period certain may not exceed the longer of the Member's applicable distribution  period, as determined hereunder, or the joint life and last survivor expectancy of the Member and the Member's spouse as determined under the Joint and last Survivor Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Member's and spouse's birthdays in the calendar year that contains the annuity starting date.

(v)        Requirements For Minimum Distributions Where Member Dies Before Date Distributions Begin.

(A)        Member Survived by Designated Beneficiary.  If the Member dies before the date distribution of his interest begins and there is a designated beneficiary, the Member's entire interest will be distributed, beginning no later than the time described in Section 5(e)(ii)(A) or (B), over the life of the designated beneficiary or over a period certain not exceeding: (1) unless the annuity starting date is before the first distribution calendar year, the life expectancy  of the designated beneficiary determined using the beneficiary's age as of the beneficiary's birthday in the calendar year immediately following the calendar year of the Member's death; or (2) if the annuity starting date is before the first distribution calendar year, the life expectancy of the designated beneficiary using the beneficiary's age as of the beneficiary's birthday in the calendar year that contains the annuity starting date.

(B)        No Designated Beneficiary.  If the Member dies before the date distributions begin and there is no designated beneficiary as of September 30 of the year following the year of the Member's death, distribution of the Member's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Member's death.

(C)        Death of Surviving Spouse Before Distributions to Surviving Spouse Begin.  If the Member dies before the date distributions of his interest begins, the Member's surviving spouse is the Member's sole designated beneficiary, and the surviving spouse dies before distributions to the surviving spouse begin, this Section 5(e) will apply as if the surviving spouse

21

were the Member, except that the time by which distributions must begin will be determined without regard to Section 5(e)(ii)(B)(I).

(vi)    <u>Definitions</u>. Notwithstanding the general definition provisions of the Plan, the following terms, when used in the Section 5(f), shall have the meaning set forth below:

(A)    "Designated beneficiary" means the individual who is designated as the beneficiary under the general provisions of the Plan and is the designated beneficiary under section 401(a)(9) of the Code and section 1.401(a)(9)- 1, Q&A-4 of the Treasury regulations.

(B)    "Distribution calendar year" means a calendar year for which a minimum distribution is required. For distributions beginning before the Member's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Member's required beginning date. For distributions beginning after the Member's death, the first distribution calendar year is the calendar year in which distributions are required to begin under Section 5(e)(ii)(B).

(C)    "Life expectancy" means life expectancy as computed by use of the Single Life Table in section 1.401(a)(9)-9 of the Treasury regulations.

(D)    "Required beginning date" means the April 1st of the calendar year following the calendar year in which the Member attains age 70-1/2 or terminates employment with all Participating Companies and Related Entities, whichever is later; provided, however, if a Member was a 5% owner (as defined in section 416 of the Code) with respect to the Plan at any time during the Plan Year ending in the calendar year in which he attained age 70-1/2, then distribution of benefits must commence no later than April 1st .

(f)    <u>Commencement of Benefit</u>.  A Member's retirement benefit shall commence with the latest of:

(i)    the month following the month in which the Member receives notification of the written election provided for in Section 5(c)(i),

(ii)    the month determined pursuant to Section 5(c)(iii,) or

(iii)    the month following the month in which the Member terminates employment with all Participating Companies and Related Entities.

In addition to the foregoing, see Sections A-5(f) and B-5(f).

(g)    <u>Automatic Cashouts</u>.  Notwithstanding the preceding provisions of this Section 5, if the present value of a Member's Accrued Benefit is not more than $5,000, the Actuarially Equivalent Amount of such benefit shall be paid in a single lump sum pursuant to Section 10(d).

6.        <u>MAXIMUM BENEFITS</u>

The amount and payment of retirement income determined under the Plan shall be subject to the following provisions of this Section 6.

(a)        The limitations of this Section 6 shall apply to Limitation Years beginning on and after July 1, 2007, except as otherwise provided herein.

(b)        The Annual Benefit otherwise payable to a Member under the Plan at any time shall not exceed the Maximum Permissible Benefit, as defined in Section 6(f)(i).  If the benefit the Member would otherwise accrue in a Limitation Year would produce an Annual Benefit in excess of the Maximum Permissible Benefit, the benefit shall be limited (or the rate of accrual reduced) to a benefit that does not exceed the Maximum Permissible Benefit.

(c)        If the Member is, or has ever been, a Member in another qualified defined benefit plan (without regard to whether the plan has been terminated) maintained by the employer or a predecessor employer, the sum of the Member's Annual Benefits from all such plans may not exceed the Maximum Permissible Benefit.  Where the Member's employer-provided benefits under all such defined benefit plans (determined as of the same age) would exceed the Maximum Permissible Benefit applicable at that age, the maximum monthly retirement income applicable to all such defined benefit plans of the employer shall be determined and allocated on a pro rata basis in proportion to the actuarially equivalent amount of retirement income otherwise accrued under each such defined benefit plan so that the Maximum Permissible Benefit is not exceeded.

(d)        The application of the provisions of this section shall not cause the Maximum Permissible Benefit for any Member to be less than the Member's accrued benefit under all the defined benefit plans of the employer or a predecessor employer as of the end of the last Limitation Year beginning before July 1, 2007 under provisions of the plans that were both adopted and in effect before April 5, 2007. The preceding sentence applies only if the provisions of such defined benefit plans that were both adopted and in effect before April 5, 2007 satisfied the applicable requirements of statutory provisions, regulations, and other published guidance relating to section 415 of the Code in effect as of the end of the last Limitation Year beginning before July 1, 2007, as described in section 1.415(a)-1(g)(4) of the Treasury regulations.

(e)        The limitations of this Section 6 shall be determined and applied taking into account the rules in Section 6(b).  As used in this Section 6, the "Plan Interest Rate" and the "Plan Mortality Table" shall be as defined in Sections A-1(b) or B-1(b), as applicable, the "Applicable Interest Rate" and the "Applicable Mortality Table" shall be as defined in the Section 1(b).

23

    (f)        Definitions.

        (i)        "Annual Benefit" shall mean a benefit that is payable annually in the form of a straight life annuity.  Except as provided below, where a benefit is payable in a form other than a straight life annuity, the benefit shall be adjusted to an actuarially equivalent straight life annuity that begins at the same time as such other form of benefit and is payable on the first day of each month, before applying the limitations of this Section 6.  For a Member who has or will have distributions commencing at more than one annuity starting date, the Annual Benefit shall be determined as of each such annuity starting date (and shall satisfy the limitations of this Section 6 as of each such date), actuarially adjusting for past and future distributions of benefits commencing at the other annuity starting dates.  For this purpose, the determination of whether a new starting date has occurred shall be made without regard to section 1.401(a)-20, Q&A 10(d), and with regard to section 1.415(b)-1(b)(1)(iii)(B) and (C) of the Treasury regulations.

        No actuarial adjustment to the benefit shall be made for (1) survivor benefits payable to a surviving spouse under a qualified joint and survivor annuity to the extent such benefits would not be payable if the Member's benefit were paid in another form; (2) benefits that are not directly related to retirement benefits (such as a qualified disability benefit, preretirement incidental death benefits, and postretirement medical benefits); or (3) the inclusion in the form of benefit of an automatic benefit increase feature, provided the form of benefit is not subject to section 417(e)(3) of the Code and would otherwise satisfy the limitations of this Section 6, and the Plan provides that the amount payable under the form of benefit in any Limitation Year shall not exceed the limits of this Section 6 applicable at the annuity starting date, as increased in subsequent years pursuant to section 415(d) of the Code.  For this purpose, an automatic benefit increase feature is included in a form of benefit if the form of benefit provides for automatic, periodic increases to the benefits paid in that form.

        The determination of the Annual Benefit shall take into account Social Security supplements described in section 411(a)(9) of the Code and benefits transferred from another defined benefit plan, other than transfers of distributable benefits pursuant to Section 1.411(d)-4, Q&A-3(c), of the Treasury regulations, but shall disregard benefits attributable to employee contributions or rollover contributions.

        Effective for distributions in Plan Years beginning after December 31, 2003, the determination of actuarial equivalence of forms of benefit other than a straight life annuity shall be made in accordance with subsection (A) or (B) below.

        (A)        Benefit Forms Not Subject to Section 417(e)(3) of the Code: The straight life annuity that is actuarially equivalent to the Member's form of benefit shall be

24

determined under this subsection (A) if the form of the Member's benefit is either (01) a nondecreasing annuity (other than a straight life annuity) payable for a period of not less than the life of the Member (or, in the case of a qualified pre-retirement survivor annuity, the life of the surviving spouse), or (02) an annuity that decreases during the life of the Member merely because of (011) the death of the survivor annuitant (but only if the reduction is not below 50% of the benefit payable before the death of the survivor annuitant), or (012) the cessation or reduction of Social Security supplements or qualified disability payments (as defined in section 401(a)(11) of the Code).

      (I)  Limitation Years beginning before July 1, 2007. For Limitation Years beginning before July 1, 2007, the actuarially equivalent straight life annuity is equal to the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit computed using whichever of the following produces the greater annual amount: (a) the Plan Interest Rate and the Plan Mortality Table for adjusting benefits in the same form; and (b) a 5 percent interest rate assumption and the Applicable Mortality Table for that annuity starting date.

      (II)  Limitation Years beginning on or after July 1, 2007. For Limitation Years beginning on or after July 1, 2007, the actuarially equivalent straight life annuity is equal to the greater of (a) the annual amount of the straight life annuity (if any) payable to the Member under the Plan commencing at the same annuity starting date as the Member's form of benefit; and (b) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using a 5 percent interest rate assumption and the Applicable Mortality Table for that annuity starting date.

     (B)  Benefit Forms Subject to Section 417(e)(3) of the Code: The straight life annuity that is actuarially equivalent to the Member's form of benefit shall be determined under this paragraph if the form of the Member's benefit is other than a benefit form described in subsection (A) above. In this case, the actuarially equivalent straight life annuity shall be determined as follows:

      (I)  Annuity Starting Date in Plan Years Beginning After 2005. If the annuity starting date of the Member's form of benefit is in a Plan Year beginning after 2005, the actuarially equivalent straight life annuity is equal to the greatest of (a) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using the Plan Interest Rate and the Plan Mortality Table for

adjusting benefits in the same form; (b) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using a 5.5 percent interest rate assumption and the Applicable Mortality Table; and (c) the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using the Applicable Interest Rate and the Applicable Mortality Table, divided by 1.05.

(II)    Annuity Starting Date in Plan Years Beginning in 2004 or 2005.  If the annuity starting date of the Member's form of benefit is in a Plan Year beginning in 2004 or 2005, the actuarially equivalent straight life annuity is equal to the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using whichever of the following produces the greater annual amount: (a) the Plan Interest Rate and the Plan Mortality Table; and (b) a 5.5 percent interest rate assumption and the Applicable Mortality Table.

If the annuity starting date of the Member's benefit is on or after the first day of the first Plan Year beginning in 2004 and before December 31, 2004, the application of this subsection (B) shall not cause the amount payable under the Member's form of benefit to be less than the benefit calculated under the Plan, taking into account the limitations of this Section 6, except that the actuarially equivalent straight life annuity is equal to the annual amount of the straight life annuity commencing at the same annuity starting date that has the same actuarial present value as the Member's form of benefit, computed using whichever of the following produces the greatest annual amount:

(01)    the Plan Interest Rate and the Plan Mortality Table for adjusting benefits in the same form;

(02)    the Applicable Interest Rate and the Applicable Mortality Table; or

(03)    the Applicable Interest Rate (as in effect on the last day of the last Plan Year beginning before January 1, 2004, under provisions of the Plan then adopted and in effect) and the Applicable Mortality Table.

(ii)    "IRC 415 Compensation" shall mean wages, salaries, and fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Company maintaining the Plan to the extent that the amounts are includible in gross income (including, but not limited to, commissions paid salespersons, compensation for services on the basis of a percentage of profits,

26

commissions on insurance premiums, tips, bonuses, fringe benefits, and reimbursements, or other expense allowances under a nonaccountable plan [as described in section 1.62-2(c) of the Treasury regulations]), and excluding the following:

(A)  Company contributions (other than elective contributions described in sections 402(e)(3), 408(k)(6), 408(p)(2)(A)(i), or 457(b) of the Code) to a plan of deferred compensation (including a simplified employee pension described in Section 408(k) or a simple retirement account described in Section 408(p) of the Code, and whether or not qualified) to the extent such contributions are not includible in the Employee's gross income for the taxable year in which contributed, and any distributions (whether or not includible in gross income when distributed) from a plan of deferred compensation (whether or not qualified), other than, amounts received during the year by an Employee pursuant to a nonqualified unfunded deferred compensation plan to the extent includible in gross income;

(B)  amounts realized from the exercise of a nonstatutory stock option (that is, an option other than a statutory stock option as defined in section 1.421-1(b) of the Treasury regulations), or when restricted stock (or property) held by the Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(C)  amounts realized from the sale, exchange or other disposition of stock acquired under a statutory stock option;

(D)  other amounts that receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the gross income of the Employee and are not salary reduction amounts that are described in Section 125 of the Code); and

(E)  other items of remuneration that are similar to any of the items listed in (A) through (E).

For any self-employed individual, IRC 415 Compensation shall mean earned income.

Except as provided herein, for Limitation Years beginning after December 31, 1991, IRC 415 Compensation for a Limitation Year is the IRC 415 Compensation actually paid or made available during such Limitation Year.  IRC 415 Compensation for a Limitation Year shall include amounts earned but not paid during the Limitation Year solely because of the timing of pay periods and pay dates, provided the amounts are paid during the first few weeks of the next Limitation Year, the amounts are included on a uniform and consistent basis with respect to all similarly situated employees, and no compensation is included in more than one Limitation Year.

For Limitation Years beginning on or after July 1, 2007, IRC 415

Compensation for a Limitation Year shall also include compensation paid by the later of 2 ½ months after an Employee's severance from employment with the employer maintaining the Plan or the end of the Limitation Year that includes the date of the Employee's severance from employment with the employer maintaining the Plan, if:

(01)    the payment is regular compensation for services during the Employee's regular working hours, or compensation for services outside the Employee's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, and, absent a severance from employment, the payments would have been paid to the Employee while the Employee continued in employment with the Company;

(02)    the payment is for unused accrued bona fide sick, vacation or other leave that the Employee would have been able to use if employment had continued; or

(03)    the payment is received by the Employee pursuant to a nonqualified unfunded deferred compensation plan and would have been paid at the same time if employment had continued, but only to the extent includible in gross income.

Any payments not described above shall not be considered IRC 415 Compensation if paid after severance from employment, even if they are paid by the later of 2½ months after the date of severance from employment or the end of the Limitation Year that includes the date of severance from employment, except, (011) payments to an individual who does not currently perform services for the employer by reason of qualified military service (within the meaning of Section 414(u)(1) of the Code) to the extent these payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the employer rather than entering qualified military service, or (012) compensation paid to a Member who is permanently and totally disabled, as defined in section 22(e)(3) of the Code, provided that salary continuation applies to all Members who are permanently and totally disabled for a fixed or determinable period, or the Member was not a Highly Compensated Employee immediately before becoming disabled.

Back pay, within the meaning of section 1.415(c)-2(g)(8) of the Treasury regulations, shall be treated as IRC 415 Compensation for the Limitation Year to which the back pay relates to the extent the back pay represents wages and compensation that would otherwise be included under this definition.

For Limitation Years beginning after December 31, 1997, IRC 415 Compensation paid or made available during such Limitation Year shall include amounts that would otherwise be included in IRC 415 Compensation but for an election under section 125(a), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b) of the Code.

28

For Limitation Years beginning after December 31, 2000, IRC 415 Compensation shall also include any elective amounts that are not includible in the gross income of the Employee by reason of section 132(f)(4) of the Code.

For Limitation Years beginning after December 31, 2001, IRC 415 Compensation shall also include deemed section 125 compensation.  Deemed section 125 compensation is an amount that is excludable under Section 106 of the Code that is not available to a Member in cash in lieu of group health coverage under a section 125 arrangement solely because the Member is unable to certify that he or she has other health coverage. Amounts are deemed section 125 compensation only if the employer does not request or otherwise collect information regarding the Member's other health coverage as part of the enrollment process for the health plan.

For Limitation Years beginning after December 31, 2009, IRC 415 Compensation for a Limitation Year also shall include different wage payments as defined in section 3401(h)(2) of the Code that are paid by the Company during a period of qualified military service as defined in section 414(u) of the Code.

IRC 415 Compensation shall not include amounts paid as compensation to a nonresident alien, as defined in section 7701(b)(1)(B) of the Code, who is not a Member in the Plan to the extent the compensation is excludable from gross income and is not effectively connected with the conduct of a trade or business within the United States.

(iii)    "Defined Benefit Compensation Limitation" shall mean 100 percent of a Member's High Three-Year Average Compensation, payable in the form of a straight life annuity.

In the case of a Member who has had a severance from employment with the employer, the Defined Benefit Compensation Limitation applicable to the Member in any Limitation Year beginning after the date of severance shall be automatically adjusted by multiplying the limitation applicable to the Member in the prior Limitation Year by the annual adjustment factor under Section 415(d) of the Code; provided, however, if the Company maintains a plan for the purpose of restoring benefits that certain Members may not receive under the Plan due to the limitations on contributions and benefits imposed by section 415 of the Code and/or due to the limitations imposed on compensation under section 401(a)(17) of said Code, and if the Member or his Beneficiary receives or has received a benefit or benefits under such restoration plan and a portion of such benefit or benefits would be duplicated by the cost-of-living adjustment provided under this paragraph, then such cost-of-living adjustment that would represent a duplication of benefits shall not apply to the Member or Beneficiary unless the value of the benefit payable from the restoration plan that would cause such duplication of

benefits under the Plan is returned to the Company by the Member or Beneficiary within 60 days of the effective date of such cost-of-living adjustment or the date that such cost-of-living adjustment is announced by the Internal Revenue Service, whichever date is later; and provided further, however, that such 60-day period may be extended by the Committee if, in its opinion, reasonable cause exists for such an extension.  The adjusted compensation limit shall apply to Limitation Years ending with or within the calendar year of the date of the adjustment, but a Member's benefits shall not reflect the adjusted limit prior to January 1 of that calendar year.

In the case of a Member who is rehired after a severance from employment, the Defined Benefit Compensation Limitation is the greater of 100 percent of the Member's High Three-Year Average Compensation, as determined prior to the severance from employment, as adjusted pursuant to the preceding paragraph, if applicable; or 100 percent of the Member's High Three-Year Average Compensation, as determined after the severance from employment under subsection (vii) below.

(iv)        "Defined Benefit Dollar Limitation" shall mean, effective for Limitation Years ending after December 31, 2001, $160,000, automatically adjusted under section 415(d) of the Code effective January 1 of each year, and payable in the form of a straight life annuity.  The new limitation shall apply to Limitation Years ending with or within the calendar year of the date of the adjustment, but a Member's benefits shall not reflect the adjusted limit prior to January 1 of that calendar year.  The automatic annual adjustment of the Defined Benefit Dollar Limitation shall apply to Members who have had a separation from employment.

(v)        "employer" shall mean the employer that adopts this Plan, and all members of a controlled group of corporations, as defined in section 414(b) of the Code, as modified by section 415(h), all commonly controlled trades or businesses (as defined in section 414(c) of the Code, as modified, except in the case of a brother-sister group of trades or businesses under common control, by section 415(h)), or affiliated service groups (as defined in Section 414(m)) of which the adopting employer is a part, and any other entity required to be aggregated with the employer pursuant to Section 414(o) of the Code.

(vi)        "Formerly Affiliated Plan of the Company " shall mean a plan that, immediately prior to the cessation of affiliation, was actually maintained by the employer and, immediately after the cessation of affiliation, is not actually maintained by the employer.  For this purpose, cessation of affiliation means the event that causes an entity to no longer be considered the employer, such as the sale of a member of the controlled group of corporations, as defined in section 414(b) of the Code, as modified by section 415(h), to an unrelated corporation, or that causes a plan to not actually be maintained by the employer, such as transfer of plan sponsorship outside a controlled group.

(vii)    "High Three-Year Average Compensation" shall mean the average compensation for the three consecutive years of service (or, if the Member has less than three consecutive years of service, the Member's longest consecutive period of service, including fractions of years, but not less than one year) with the employer that produces the highest average.  A year of service with the employer is the 12-consecutive month period that begins on January 1 of each calendar year.  In the case of a Member who is rehired by the employer after a severance from employment, the Member's high three-year average compensation shall be calculated by excluding all years for which the Member performs no services for and receives no compensation from the employer (the break period) and by treating the years immediately preceding and following the break period as consecutive.  A Member's compensation for a year of service shall not include compensation in excess of the limitation under Section 401(a)(17) of the Code that is in effect for the calendar year in which such year of service begins.

(viii)    "Limitation Year" shall mean the calendar year unless a different 12-month period has been elected by the employer in accordance with regulations or rulings issued by the Internal Revenue Service.  All qualified plans maintained by the employer must use the same Limitation Year.  If the Limitation Year is amended to a different 12-consecutive month period, the new Limitation Year must begin on a date within the Limitation Year in which the amendment is made.

(ix)    "Maximum Permissible Benefit" shall mean the lesser of the Defined Benefit Dollar Limitation or the Defined Benefit Compensation Limitation (both adjusted where required as provided below).

(A)    Adjustment for Less Than 10 Years of Participation or Service:  If the Member has less than 10 Years of Participation in the Plan, the Defined Benefit Dollar Limitation shall be multiplied by a fraction, the numerator of which is the number of Years (or part thereof, but not less than one year) of Participation in the Plan, and the denominator of which is 10. In the case of a Member who has less than 10 Years of Service with the employer, the Defined Benefit Compensation Limitation shall be multiplied by a fraction, the numerator of which is the number of Years (or part thereof, but not less than 1 year) of Service with the employer, and the denominator of which is 10.

(B)    Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement Before Age 62 or after Age 65:  Effective for benefits commencing in Limitation Years ending after December 31, 2001, the Defined Benefit Dollar Limitation shall be adjusted if the annuity starting date of the Member's benefit is before age 62 or after age 65. If the annuity starting date is before age 62, the Defined Benefit Dollar Limitation shall be adjusted under subsection (I) below, as modified by subsection (III) below in this subsection (B).  If the annuity starting date is after age 65, the Defined Benefit Dollar Limitation shall be adjusted under subsection (II) below, as modified by subsection

31

(iii) below in this subsection (B).

(I)        Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement Before Age 62:

(a)        Limitation Years Beginning Before July 1, 2007.  If the annuity starting date for the Member's benefit is prior to age 62 and occurs in a Limitation Year beginning before July 1, 2007, the Defined Benefit Dollar Limitation for the Member's annuity starting date is the annual amount of a benefit payable in the form of a straight life annuity commencing at the Member's annuity starting date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required) with actuarial equivalence computed using whichever of the following produces the smaller annual amount: (1) the Plan Interest Rate and the Plan Mortality Table; or (2) a 5 percent interest rate assumption and the Applicable Mortality Table.

(b)        Limitation Years Beginning on or After July 1, 2007.

(1)        Plan Does Not Have Immediately Commencing Straight Life Annuity Payable at Both Age 62 and the Age of Benefit Commencement.  If the annuity starting date for the Member's benefit is prior to age 62 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan does not have an immediately commencing straight life annuity payable at both age 62 and the age of benefit commencement, the Defined Benefit Dollar Limitation for the Member's annuity starting date is the annual amount of a benefit payable in the form of a straight life annuity commencing at the Member's annuity starting date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required) with actuarial equivalence computed using a 5 percent interest rate assumption and the Applicable Mortality Table (and expressing the Member's age based on completed calendar months as of the annuity starting date).

(2)        Plan Has Immediately Commencing Straight Life Annuity Payable at Both Age 62 and the Age of Benefit Commencement. If the annuity starting date for the Member's benefit is prior to age 62 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan has an immediately commencing straight life annuity payable at both age 62 and the age of benefit commencement, the Defined Benefit Dollar Limitation for the Member's annuity starting date is the lesser of the limitation determined under subsection (a) immediately above and the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required) multiplied by the ratio of the annual amount of the immediately commencing straight life annuity under the Plan at the Member's annuity starting date to the annual amount of the immediately commencing straight

32

life annuity under the Plan at age 62, both determined without applying the limitations of this Section 6.

(II)    Adjustment of Defined Benefit Dollar Limitation for Benefit Commencement After Age 65:

(a)    Limitation Years Beginning Before July 1, 2007.  If the annuity starting date for the Member's benefit is after age 65 and occurs in a Limitation Year beginning before July 1, 2007, the Defined Benefit Dollar Limitation for the Member's annuity starting date is the annual amount of a benefit payable in the form of a straight life annuity commencing at the Member's annuity starting date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required) with actuarial equivalence computed using whichever of the following produces the smaller annual amount: (1) the Plan Interest Rate and the Plan Mortality Table; or (2) a 5 percent interest rate assumption and the Applicable Mortality Table.

(b)    Limitation Years Beginning After July 1, 2007.

(1)    Plan Does Not Have Immediately Commencing Straight Life Annuity Payable at Both Age 65 and the Age of Benefit Commencement.  If the annuity starting date for the Member's benefit is after age 65 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan does not have an immediately commencing straight life annuity payable at both age 65 and the age of benefit commencement, the Defined Benefit Dollar Limitation at the Member's annuity starting date is the annual amount of a benefit payable in the form of a straight life annuity commencing at the Member's annuity starting date that is the actuarial equivalent of the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required), with actuarial equivalence computed using a 5 percent interest rate assumption and the Applicable Mortality Table for that annuity starting date (and expressing the Member's age based on completed calendar months as of the annuity starting date).

(2)    Plan Has Immediately Commencing Straight Life Annuity Payable at Both Age 65 and the Age of Benefit Commencement.  If the annuity starting date for the Member's benefit is after age 65 and occurs in a Limitation Year beginning on or after July 1, 2007, and the Plan has an immediately commencing straight life annuity payable at both age 65 and the age of benefit commencement, the Defined Benefit Dollar Limitation at the Member's annuity starting date is the lesser of the limitation determined under subsection (1) immediately above and the Defined Benefit Dollar Limitation (adjusted for Years of Participation less than 10, if required) multiplied by the ratio of the annual amount of the adjusted immediately commencing straight life annuity under the Plan at the Member's annuity starting date to the annual amount of the adjusted immediately

33

commencing straight life annuity under the Plan at age 65, both determined without applying the limitations of this Section 6.  For this purpose, the adjusted immediately commencing straight life annuity under the Plan at the Member's annuity starting date is the annual amount of such annuity payable to the Member, computed disregarding the Member's accruals after age 65 but including actuarial adjustments even if those actuarial adjustments are used to offset accruals; and the adjusted immediately commencing straight life annuity under the Plan at age 65 is the annual amount of such annuity that would be payable under the Plan to a hypothetical Member who is age 65 and has the same accrued benefit as the Member.

(III)    Notwithstanding the other requirements of this subsection (iii), no adjustment shall be made to the Defined Benefit Dollar Limitation to reflect the probability of a Member's death between the annuity starting date and age 62, or between age 65 and the annuity starting date, as applicable, except as provided in paragraphs (I)(b)(2) and (II)(b)(2) of this Section 6(a)(ix)(B), if benefits are not forfeited upon the death of the Member prior to the annuity starting date.  To the extent benefits are forfeited upon death before the annuity starting date, such an adjustment shall be made.  For this purpose, no forfeiture shall be treated as occurring upon the Member's death if the Plan does not charge Members for providing a qualified preretirement survivor annuity, as defined in section 417(c) of the Code, upon the Member's death.

(C)    Minimum Benefit Permitted:  Notwithstanding anything else in this section to the contrary, the benefit otherwise accrued or payable to a Member under this Plan shall be deemed not to exceed the Maximum Permissible Benefit if:

(I)    the retirement benefits payable for a Limitation Year under any form of benefit with respect to such Member under this Plan and under all other defined benefit plans (without regard to whether a Plan has been terminated) ever maintained by the employer do not exceed $10,000 multiplied by a fraction, the numerator of which is the Member's number of Years (or part thereof, but not less than one year) of Service (not to exceed 10) with the employer, and the denominator of which is 10; and

(II)    the employer (or a predecessor employer) has not at any time maintained a defined contribution plan in which the Member participated (for this purpose, mandatory employee contributions under a defined benefit plan, individual medical accounts under section 401(h) of the Code, and accounts for postretirement medical benefits established under section 419A(d)(1) of the Code are not considered a separate defined contribution plan).

(x)    "Predecessor Employer" shall mean, if the employer maintains a plan that provides a benefit which the Member accrued while performing services for a former employer, the former employer with respect to the Member in the plan.  A former entity that antedates the employer is

also a predecessor employer with respect to a Member if, under the facts and circumstances, the employer constitutes a continuation of all or a portion of the trade or business of the former entity.

(xi)    "Severance from Employment" shall mean the Employee ceases to be an employee of the employer maintaining the Plan.  An Employee does not have a severance from employment if, in connection with a change of employment, the Employee's new employer maintains the Plan with respect to the Employee.

(xii)    "Year of Participation."  The Member shall be credited with a Year of Participation (computed to fractional parts of a year) for each accrual computation period for which the following conditions are met: (A) the Member is credited with at least the number of hours of service (or period of service if the elapsed time method is used) for benefit accrual purposes, required under the terms of the Plan in order to accrue a benefit for the accrual computation period, and (B) the Member is included as a Member under the eligibility provisions of the Plan for at least one day of the accrual computation period. If these two conditions are met, the portion of a Year of Participation credited to the Member shall equal the amount of benefit accrual service credited to the Member for such accrual computation period. A Member who is permanently and totally disabled within the meaning of section 415(c)(3)(C)(i) of the Code for an accrual computation period shall receive a Year of Participation with respect to that period.  In addition, for a Member to receive a Year of Participation (or part thereof) for an accrual computation period, the Plan must be established no later than the last day of such accrual computation period.  In no event shall more than one Year of Participation be credited for any 12-month period.

(xiii)    "Year of Service."  For purposes of section 6(f)(vii), the Member shall be credited with a Year of Service (computed to fractional parts of a year) for each accrual computation period for which the Member is credited with at least the number of hours of service (or period of service if the elapsed time method is used) for benefit accrual purposes, required under the terms of the Plan in order to accrue a benefit for the accrual computation period, taking into account only service with the employer or a predecessor employer.

(g)    Other Rules.

(i)    Benefits Under Terminated Plans.  If a defined benefit plan maintained by the employer has terminated with sufficient assets for the payment of benefit liabilities of all plan Members and a Member in the Plan has not yet commenced benefits under the Plan, the benefits provided pursuant to the annuities purchased to provide the Member's benefits under the terminated plan at each possible annuity starting date shall be taken into account in applying the limitations of this Section 6. If there are not sufficient assets for the payment of all Members' benefit liabilities, the benefits taken into account shall be the benefits that are actually provided to the Member under the terminated plan.

(ii)      Benefits Transferred From the Plan.  If a Member's benefits under a defined benefit plan maintained by the employer are transferred to another defined benefit plan maintained by the employer and the transfer is not a transfer of distributable benefits pursuant to section 1.411(d)-4, Q&A-3(c), of the Treasury regulations, the transferred benefits are not treated as being provided under the transferor plan (but are taken into account as benefits provided under the transferee plan).  If a Member's benefits under a defined benefit plan maintained by the employer are transferred to another defined benefit plan that is not maintained by the employer and the transfer is not a transfer of distributable benefits pursuant to section 1.411(d)-4, Q&A-3(c), of the Treasury regulations, the transferred benefits are treated by the employer's plan as if such benefits were provided under annuities purchased to provide benefits under a plan maintained by the employer that terminated immediately prior to the transfer with sufficient assets to pay all Members' benefit liabilities under the plan.  If a Member's benefits under a defined benefit plan maintained by the employer are transferred to another defined benefit plan in a transfer of distributable benefits pursuant to section 1.411(d)-4, Q&A-3(c), of the Treasury regulations, the amount transferred is treated as a benefit paid from the transferor plan.

(iii)      Formerly Affiliated Plans of the Company.  A Formerly Affiliated Plan of the Company shall be treated as a plan maintained by the employer, but the Formerly Affiliated Plan of the Company shall be treated as if it had terminated immediately prior to the cessation of affiliation with sufficient assets to pay Members' benefit liabilities under the plan and had purchased annuities to provide benefits.

(iv)      Plans of a Predecessor Employer.  If the employer maintains a defined benefit plan that provides benefits accrued by a Member while performing services for a predecessor employer, the Member's benefits under a plan maintained by the predecessor employer shall be treated as provided under a plan maintained by the employer. However, for this purpose, the plan of the predecessor employer shall be treated as if it had terminated immediately prior to the event giving rise to the predecessor employer relationship with sufficient assets to pay Members' benefit liabilities under the plan, and had purchased annuities to provide benefits; the employer and the predecessor employer shall be treated as if they were a single employer immediately prior to such event and as unrelated employers immediately after the event; and if the event giving rise to the predecessor relationship is a benefit transfer, the transferred benefits shall be excluded in determining the benefits provided under the plan of the predecessor employer.

(v)      Special Rules.  The limitations of this Section 6 shall be determined and applied taking into account the rules in section 1.415(f)-1(d), (e) and (h) of the Treasury regulations.

(vi)        Aggregation with Multiemployer Plans.

(A)        If the employer maintains a multiemployer plan, as defined in section 414(f) of the Code, and the multiemployer plan so provides, only the benefits under the multiemployer plan that are provided by the employer shall be treated as benefits provided under a plan maintained by the employer for purposes of this Section 6.

(B)        Effective for Limitation Years ending after December 31, 2001, a multiemployer plan shall be disregarded for purposes of applying the compensation limitation of Sections 6(vi)(C) and 6.4(vi)(I) to a plan which is not a multiemployer plan.

(h)        The foregoing provisions of this Section 6 are intended to implement and comply with the applicable requirements of section 415 of the Code, which are incorporated herein by this reference, and in the event that any provision herein fails to comply with an applicable requirement of section 415 of the Code, such provision shall be construed so as to comply at all times with the applicable requirement of section 415 of the Code.

7.        <u>LATE RETIREMENT</u>

(a)        <u>Benefit Amount</u>.  Each Member who retires on a Late Retirement Date shall
be eligible to receive a monthly pension commencing with the month determined pursuant to the first
sentence of Section 5(f).  If that month is later than the month following the month in which the Member
terminates employment with all Participating Companies and Related Entities, the benefit shall be adjusted
as provided in Section 5(f) to reflect that the Member's benefits commenced later than the month following
the month in which his Late Retirement Date occurred.

(b)        <u>Payment</u>.  Late retirement benefits shall be payable as provided for in Section
5 and shall be subject to the limitations and provisions of Section 6.

8.        <u>EARLY RETIREMENT</u>

        (a)        <u>Eligibility</u>. See Sections A-8(a) and B-8(a).

        (b)        <u>Payment</u>.  Early Retirement benefits shall be payable as provided for in Section 5 and shall be subject to the limitations and provisions of Section 6.

9.    <u>DISABILITY LEAVE</u>

    (a)    <u>Determination of Disability</u>.  See Sections A-9(a) and B-9(a).

    (b)    <u>Status</u>.  See Sections A-9(b) and B-9(b).

    (c)    <u>Average Annual Compensation</u>.  See Section A-9(c).

10.      <u>TERMINATION OF EMPLOYMENT BENEFIT</u>

(a)      <u>Eligibility</u>.  See Section A-10(a) and B-10(a).

(b)      <u>Calculating Years of Service for Vesting</u>.  See Sections A-10(b) and B-10(b).

(c)      <u>Calculation of Accrued Benefit</u>.  A Member's Accrued Benefit at any time of determination prior to his Normal Retirement Date shall be one-twelfth of the annual amount determined under Section 4 as if the date of determination were the Member's Normal Retirement Date.

(d)      <u>Commencement of Benefit and Cashouts</u>.

(i)      <u>Normal Retirement</u>.  A Member who terminates employment with all Participating Companies and Related Entities shall be eligible to receive his nonforfeitable Accrued Benefit on his Normal Retirement Date in the form provided under Section 5, subject to the limitations and provisions of Section 6.

(ii)      <u>Early Retirement</u>.  See Sections A-10(d)(ii) and B-10(d)(ii).

(iii)      <u>Immediate Benefit Commencement</u>.

(A)      Eligibility -

(I)      A Member eligible for a deferred vested benefit under Section 10(a) may elect in writing to receive an immediate lump sum payment or commence an immediate annuity, provided that the Member incurs a Severance Date prior to September 1, 2012 and has not commenced benefit payment as of such date.

(II)      A Member's surviving spouse eligible for a Pre-Retirement Survivor Annuity under Section 11(a) may elect in writing to receive an immediate lump sum payment or commence an immediate annuity, provided that the Member's death occurred prior to September 1, 2012 and such eligible surviving spouse has not commenced benefit payment as of such date.

(III)      An alternate payee eligible for a Qualified Domestic Relations Order under Section 15(b) may elect in writing to receive an immediate lump sum payment or commence an immediate annuity, provided that the alternate payee's right to such benefit is effective as of September 1, 2012 and such alternate payee had not commenced benefit payment as of such date.

(IV)      A Member eligible for a Normal Retirement Benefit under Section 4(a) or an Early Retirement Benefit under Section 8(a) may elect in writing to receive an immediate lump sum payment in lieu of the immediate annuity options currently available to such Member, provided that the Member incurs a Severance Date prior to September 1, 2012 and has not commenced benefit payment as of such date

41

Further, eligibility for immediate benefit commencement is subject to the remaining provisions of this Section 10(d)(iii).

(B)     Immediate Annuity – See Section A-10(d)(iii)(B) and Section B-10(d)(iii)(B).

(C)     Immediate Lump Sum - A Member, surviving spouse or alternate payee eligible to receive immediate benefits hereunder may elect pursuant to Section 10(d)(iii)(D) to receive benefits in a single lump sum in cash or request a rollover as provided under Section 10(f). The present value of the Accrued Benefit payable shall be determined in accordance with Section 10(e) as of December 1, 2012.

(D)     Election – An election to receive benefits under this Section 10(d)(iii) must satisfy the following requirements:

(I)     The election shall be made in writing on a form and in a manner provided by the Plan Administrator.

(II)     Notwithstanding the election period set forth in Section 5(c), the election period shall open on October 8, 2012 and shall close on November 22, 2012.

(III)     The election shall be made in a manner consistent with the provisions of Section 5, provided, however, that the spousal consent requirements of Section 5 shall not apply to an eligible surviving spouse or an alternate payee.

(E)     Death Prior to Immediate Benefit Commencement – If a Member, an eligible surviving spouse or an alternate payee timely and properly elected to receive a benefit under this Section 10(d)(iii) but did not commence such benefit as of the date of death of such Member, eligible surviving spouse or alternate payee, benefits shall be paid in accordance with the following:

(I)     Lump Sum Election – If a Member elected an immediate lump sum payment, such benefit shall be paid to the Member's spouse, if such Member is married, or to the Member's estate, if such Member is not married.

If an eligible surviving spouse elected an immediate lump sum payment, such benefit shall be paid to the eligible surviving spouse's estate.

If an alternate payee elected an immediate lump sum payment, such benefit shall be paid to the alternate payee's estate.

(II)     Annuity Election – If a Member elected an immediate annuity, such benefit shall be paid under the terms of the annuity elected pursuant to Section 5.

If an eligible surviving spouse elected a Single Life Annuity, no benefit shall be paid or due from the Plan.

42

If an alternate payee elected a Single Life Annuity, no benefit shall be paid or due from the Plan.

(F)     Benefit Payment Conditions – Notwithstanding the preceding provisions of this Section 10(d)(iii):

(I)     Immediate benefit commencement shall be available to Members, eligible surviving spouses and alternate payees as stated herein provided that the restrictions of sections 436(c) and (d) of the Code do not apply on October 8, 2012; and

(II)     The benefit payable hereunder to a Member, eligible surviving spouse or alternate payee must be definitely determinable based on the data available to the Plan Administrator in order to paid in accordance with the provisions of this Section 10(d)(iii).

(iv)     <u>Involuntary Lump Sum Cashout</u>.  Notwithstanding the preceding provisions of this Section 10(d), the Committee shall direct that any Member who incurs a severance from employment and whose  nonforfeitable Accrued Benefit has a present value of $1,000 or less  receive the Actuarially Equivalent Amount thereof in a single lump sum in cash except as provided under the "rollover election rules" of Section 10(f). If the lump sum present value of the nonforfeitable Accrued Benefit of a Member  who has a severance from employment  is more than $1,000 but not more than $5,000, the Member may elect to receive a single lump sum in cash or request a rollover as provided under the "rollover election rules" of Section 10(f); provided, however, if the Member does not make an election, then the lump sum present value of the Member's Accrued Benefit shall be paid in a direct rollover to an individual retirement plan that the Committee designates in accordance with the automatic rollover requirements of section 401(a)(31)(B) of the Code.  Except as provided in Section 10(d)(iii), if a lump sum present value of the nonforfeitable Accrued Benefit is more than $5,000, the Member's Accrued Benefit shall be retained in the Plan.  For purposes of this Section, the present value of the Member's nonforfeitable Accrued Benefit shall be determined as of any distribution date in accordance with Section 10(e).

(v)     <u>Deemed Distribution</u>.  A Member who has no nonforfeitable Accrued Benefit shall be deemed to have received a distribution of his nonforfeitable Accrued Benefit on his severance from employment and shall forfeit the forfeitable portion of his Accrued Benefit on such Severance Date, subject to the right to restoration under Section 10(d)(vi).

(vi)     <u>Restored Forfeitures</u>.  If a Member who suffers a forfeiture under Section 10(d)(v) returns to Service prior to incurring a Break in Service, then the Accrued Benefit he forfeited under Section 10(d)(v) shall be restored and his Accrued Benefit thereafter shall be based on all of his Service credited under Section 4(c).

(e)    <u>Determination of Present Value</u>.  For purposes of determining whether the present value of a Member's nonforfeitable Accrued Benefit or a deceased Member's death benefit exceeds the cashout limits set forth in this Section 10(d), present value shall be calculated by using the "applicable interest rate" and the "applicable mortality table" as those terms are prescribed in Section 1(b) of the Plan.

(f)    <u>Rollover Election</u>.  Notwithstanding any provision of the Plan to the contrary that would otherwise limit a "distributee's" election under this Section, a "distributee" may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an "eligible rollover distribution" paid directly to an "eligible retirement plan" specified by the "distributee" in a "direct rollover".  For purposes of this Section, the definitions specified below shall apply

(i)    <u>Eligible Rollover Distribution</u>.  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under section 401(a)(9) of the Code; any hardship distribution described in section 401(k)(2)(B)(i)(IV) of the Code made after December 31, 1999; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)    <u>Eligible Retirement Plan</u>.  An eligible retirement plan is an individual retirement account described in section 408(a) of the Code or an individual retirement annuity described in section 408(b) of the Code ("IRA"), a Roth IRA described in Code Section 408A (however, not an "IRA" as defined above), an annuity plan described in section 403(a) of the Code, an annuity contract or other arrangement described in section 403(b) of the Code, an eligible deferred compensation plan described in section 457(b) of the Code that is maintained by an employer described in section 457(e)(1)(A) of the Code and that separately accounts for the rollover or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.  The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving Spouse, or to a Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in Code Section 414(p).  As regards a distributee who is a non-spouse beneficiary, an eligible retirement plan shall include only an IRA as defined above in this Section 10(f)(ii).

(iii)    <u>Distributee</u>.  A distributee includes an Employee or former Employee  or non-spouse beneficiary who is a designated beneficiary as defined under section

401(a)(9)(E) of the Code.  In addition, the Employee's or former Employee's surviving spouse and the Employee's or former Employee's spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

    (iv)  <u>Direct Rollover</u>.  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

    (v)  <u>Non-Spouse Beneficiary</u>.  For distributions after December 31, 2009, a non-spouse beneficiary, by a direct trustee-to-trustee transfer ("direct rollover"), may roll over all or any portion of his or her distribution to an IRA the beneficiary establishes for purposes of receiving the distribution. In order to be able to roll over the distribution, the distribution otherwise must satisfy the definition of an 'eligible rollover distribution' under section 401(a)(31) of the Code.  If a non-spouse beneficiary receives a distribution from the Plan, the distribution is not eligible for a 60-day (non-direct) rollover. If the Member's named beneficiary is a trust, the Plan may make a direct rollover to an IRA on behalf of the trust, provided the trust satisfies the requirements to be a designated beneficiary within the meaning of section 401(a)(9)(E) of the Code.  A non-spouse beneficiary may not roll over an amount that is a required minimum distribution, as determined under applicable Treasury Regulations and other Internal Revenue Service guidance. If the Member dies before his or her required beginning date and the non-spouse beneficiary rolls over to an IRA the maximum amount eligible for rollover, the beneficiary may elect to use either the 5-year rule or the life expectancy rule, pursuant to Treas. Reg. Section 1.401(a)(9)-3, A-4(c), in determining the required minimum distributions from the IRA that receives the non-spouse beneficiary's distribution

    (vi)  <u>Timing</u>.  No distribution of an eligible rollover distribution (as defined in Section 10(f)(i)) shall commence less than 30 days after the Member receives the notice required under the provisions of section 1.411(a)-11(c) of the regulations under section 411(a)(11) of the Code unless the Member receives written notice that he has a right to a period of at least 30 days after receipt of the notice to consider whether he wants to exercise the rollover election described in Section 10(f) instead of receiving a distribution and the distribution is made not less than eight days after receipt of the notice.

11.    <u>DEATH BENEFITS</u>

(a)    <u>Pre-Retirement Survivor Annuity</u>.  If a Member dies after earning a nonforfeitable right to his Accrued Benefit but prior to his Annuity Starting Date, his spouse shall be entitled to receive the survivor portion of the benefit described under Option B of Section 5(a)(ii) determined as if the Member had retired on the day before his death and had elected to receive a Qualified Joint and Survivor Annuity commencing as of the later of:

(i)    the first day of the month next following the Member's date of death,  or

(ii)    the first day of the month next following the date on which the Member would have attained age 55.

However, the benefit paid hereunder is subject to the provisions of Section A-11(a).

A surviving spouse entitled to receive a benefit under this Section shall have the right to elect to defer commencement of benefit payments from the earliest date  payments could have commenced to the first day of any month up to an including the first day of month next following the date that would have been the Member's Normal Retirement Date, in which case the amount of the survivor portion of the benefit shall be the Actuarially Equivalent Amount of the benefit the spouse would have received if the spouse elected to receive benefits on the earliest day payments could have commenced. No other pre-retirement death benefit shall be payable under the Plan.

The preceding provisions of this Section 11(a) shall not apply in the event a Member timely and properly makes an election under Section 10(d)(iii) and such Member's death occurs prior to the date payment is made or commences.

Further, a Member who is absent from employment due to qualified military service and who fails to return to active employment with the Company as a result of his death occurring on or after January 1, 2007 during such service shall be treated as if he or she had resumed employment (within the period required under the law pertaining to veterans' reemployment rights) on the day preceding death and then terminated employment on the actual date of death.

Further, see Section B-11(a).

(b)    <u>Retirement Death Benefit</u>.  In the event of the death of a Member after his Annuity Starting Date, his beneficiary (as determined pursuant to Sections 11(c) and 11(d)) shall be entitled to any amount which may be payable under the form of benefit in effect.

(c)    <u>Beneficiary Designation</u>.  Each Member shall have the right to designate one

46

of more beneficiaries and contingent beneficiaries (but only one contingent annuitant) to receive any benefit payable under Section 11(b) by filing a written designation with the Committee on the form prescribed by the Committee.  If the Member has elected an annuity with a contingent annuitant option, the election of the contingent annuitant shall be irrevocable as of the Annuity Starting Date.  If the Member has elected an annuity with a guaranteed number of monthly payments, such Member may thereafter designate a different beneficiary to receive the guaranteed monthly payments at any time by filing a new written designation with the Committee.  Notwithstanding the foregoing, if a married Member designates a contingent annuitant or beneficiary other than his spouse and his spouse does not consent to such designation in writing witnessed by a notary public or member of the Committee in a manner prescribed by the Committee, then the Member's spouse shall be the Member's sole beneficiary.  A spouse's consent to the Member's beneficiary designation given in accordance with the Committee's rules shall be irrevocable by the spouse with respect to the beneficiary then designated by the Member unless the Member makes a new beneficiary designation.  Any written designation shall become effective only upon its receipt by the Committee.  If the beneficiary designated pursuant to this Section should die on or before distribution of benefits and the Member fails to make a new designation, then his beneficiary shall be determined pursuant to Section 11(d).  The beneficiary of guaranteed monthly payments shall select the form of distribution in accordance with Section 11(e).

(d)    Beneficiary List.  If

(i)    A Member omits or fails to designate a beneficiary,

(ii)    No designated beneficiary survives the Member, or

(iii)    The Committee determines that the Member's beneficiary designation is invalid for any reason,

then any guaranteed monthly payments payable after the death of the Member shall be paid to the Member's surviving spouse, or if the Member is not survived by his spouse, then to the Member's estate.  If the Member's designated beneficiary dies after the Member, but before distribution of all guaranteed monthly payments, then the balance of the payments shall be paid to the beneficiary's estate.

(e)    Manner and Form of Payment.

(i)    Death benefits under Section 11(b) shall be distributed at least as rapidly as under the method of distribution in effect on the Member's date of death. The projected distribution period shall not exceed the life expectancy of the Member's designated beneficiary.  If a death benefit is payable and the Member does not have a designated beneficiary, then the entire death benefit shall be distributed by the December 31st of the calendar year immediately following the calendar year in which the Member died.

47

(ii)        If the present value of the benefit payable under Section 11(a) or 11(b) does not exceed $5,000 on the date the Member dies, the Committee shall direct that it be distributed in one lump sum payment.  For purposes of applying the $5,000 limitation of this Section, the present value of the death benefit shall be determined in accordance with Section 10(e)).

(iii) See Section B – 11(e)(iii).

(f)        <u>Qualified Domestic Relations Order Exception</u>.  Notwithstanding the foregoing provisions of this Section, to the extent provided in a qualified domestic relations order (within the meaning of section 414(p) of the Code) the former spouse of the Member shall be treated as the spouse of the Member for purposes of this Section and the Member's spouse shall not be treated as the Member's spouse for such purposes.

12.    <u>FUNDING AND FUND ADMINISTRATION</u>

(a)    <u>Participating Company Contributions</u>.  The Participating Companies shall make annual contributions to the Fund in amounts at least sufficient to satisfy the minimum funding standards under the Code, unless a waiver has been received with respect thereto.

(b)    <u>Deductibility</u>. All Participating Company contributions are conditioned upon deductibility under applicable provisions of the Code.

(c)    <u>Actuarial Certification</u>.  The Actuary to the Plan shall certify from time to time, not less often than legally required, to the Participating Companies the amount necessary to meet the minimum funding standards under the Code.

(d)    <u>Valuation</u>.  The Fund shall be valued at fair market values annually as of the close of business on the last day of each Plan Year, and at such other times as the Committee may direct.

(e)    <u>Exclusive Source of Benefits</u>.  The Fund shall be the exclusive source of the benefits hereunder and neither the Participating Companies nor any other person shall have liability to provide the benefits hereunder.

(f)    <u>Forfeitures</u>.  The value of forfeited Accrued Benefits shall reduce Participating Company contributions.

(g)    <u>Member Contributions</u>.  No Member contributions shall be made to the Fund.

13.        <u>TITLE TO ASSETS</u>

        No person or entity shall have any legal or equitable right or interest in the contributions made by any Participating Company, or otherwise received into the Fund, or in any assets of the Fund, except as expressly provided in the Plan.

14.        <u>AMENDMENT AND TERMINATION</u>

(a)        <u>Amendment</u>.  The provisions of this Plan may be amended by the Board of Directors or its delegate from time to time and at any time in whole or in part, provided that no amendment shall be effective unless the Plan as so amended shall be for the exclusive benefit of the Members and their beneficiaries, and that no amendment shall operate to deprive any Member of any rights or benefits accrued to him under the Plan prior to such amendment.

(b)        <u>Termination</u>.  The Company expressly reserves the right by action of the Board of Directors or its delegate to terminate the Plan in whole or in part.  Any such termination or partial termination shall be effected only upon condition that such action is taken as shall render it impossible for any part of the corpus or income of the Fund to be used for, or diverted to, purposes other than the exclusive benefit of the Members and their beneficiaries, except as permitted by the Code and ERISA and expressly provided for herein or in the Trust Agreements.

(c)        <u>Conduct on Termination</u>.  Upon termination or partial termination each Member affected thereby shall become fully vested in his Accrued Benefit, to the extent funded, which shall not thereafter be subject to forfeiture in whole or in part.

(d)        <u>Allocation of Fund Upon Termination</u>.  Upon termination of the Plan, the Administrator shall allocate the assets of the Fund for the purposes set forth below and in the order set forth below, to the extent the assets are available to provide benefits to Members and their beneficiaries:

(i)        First, in the case of benefits payable as an annuity

(A)        In the case of the benefit of a Member or beneficiary which was in pay status as of the beginning of the three-year period ending on the termination date of the Plan, to each such benefit, based on the provisions of the Plan (as in effect during the five-year period ending on such date) under which such benefit would be the least.

(B)        In the case of a Member's or beneficiary's benefit (other than a benefit described in (A) above) which would have been in pay status as of the beginning of such three-year period if the Member had retired prior to the beginning of the three-year period and if his benefits had commenced (in the normal form of annuity under the Plan), as of the beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the five-year period ending on such date) under which such benefit would be the least.

For purposes of (A) above, the lowest benefit in pay status during a three-year period shall be considered the benefit in pay status for such period.

(ii)        Second, to all other benefits (if any) of Members which are

guaranteed under the termination insurance provisions of ERISA.

(iii)    Third, to all other nonforfeitable benefits under the Plan.

(iv)    Fourth, to all other benefits under the Plan.

(v)    If the assets available for allocation under any priority category are insufficient to satisfy in full the benefits of all Members, the assets shall be allocated pro rata among such individuals on the basis of the present value (as of the termination date) of their respective benefits.

(vi)    Any residual assets of the Plan remaining after distribution in accordance with Section 14(d)(iv) as aforesaid shall be distributed to the Participating Companies provided.

(A)    all liabilities of the Plan to Members and their beneficiaries have been satisfied, and

(B)    the distribution does not contravene any provision of law.

(e)    <u>Missing Member at Plan Termination</u>.  If the Plan is terminated, the benefit of any Member or beneficiary thereof entitled to benefits at termination who cannot be located shall be treated in accordance with section 4050 of ERISA.

(f)    <u>Limitation on Benefits</u>.  If the Plan is terminated, the benefit of any "highly compensated active or former employee" (within the meaning of section 414(q) of the Code) is limited to a benefit that is nondiscriminatory under section 401(a)(4) of the Code.  Accordingly, benefits distributed to any of the twenty-five most "highly compensated active or former employees" (as defined above) are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of such person under a straight life annuity that is the Actuarial Equivalent Amount of the person's Accrued Benefit under the Plan.  The preceding limitation shall not apply if (i) after payment of the benefit to a person affected by the limit, the value of Plan's assets equals or exceeds 110% of the value of its current liabilities, as defined in section 412(l)(7) of the Code, (ii) the value of the benefits for a person affected by the limit is less than 1% of the value of current liabilities, or (iii) the lump sum value of the benefits to be paid to a person affected by the limits is less than $5,000.  For purposes hereof, benefits include loans in excess of the amount set forth in section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living person, and any death benefits not provided for by insurance on the person's life.  The limitations of all or any portion of this Section shall cease to apply upon the publication of a final regulation or ruling by the Internal Revenue Service that they are not necessary to maintain the tax qualified status of the Plan under the Code.

(g)    <u>Funding-Based Limitations</u>.  Notwithstanding any provision of the Plan to the contrary, effective January 1, 2008, the Plan shall apply the following funding-based limitations. Such

limitations shall be based on the Plan's adjusted funding target attainment percentage as certified by the Plan's enrolled actuary except to the extent the presumptions under section 430(h) of the Code shall apply.

    (i)  <u>Shutdown and Other Unpredictable Contingent Events</u>.

      (A)  If a Member is entitled to an unpredictable contingent event benefit payable with respect to any event occurring during any Plan Year, the Plan shall provide that such benefit may not be provided if the adjusted funding target attainment percentage (as defined in section 430(d)(2) of the Code) for such Plan Year:

        (I)  Is less than 60 percent, or

        (II)  Would be less than 60 percent taking into account such occurrence.

      (B)  The limitation in (A) shall cease to apply with respect to any Plan Year, effective as of the first day of the Plan Year, upon payment by the Company of a contribution (in addition to any minimum required contribution under section 430 of the Code) equal to:

        (I)  In the case of subparagraph (A)(I), the amount of the increase in the funding target of the Plan (under section 430 of the Code) for the Plan Year attributable to the occurrence referred to in paragraph (A), and

        (II)  In the case of subparagraph (A)(II), the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

      (C)  Unpredictable Contingent Event Benefit.  For purposes of this Section, the term "unpredictable contingent event benefit" means any benefit payable solely by reason of:

        (I)  A plant shutdown (or similar event, as determined by the Secretary), or

        (II)  An event other than the attainment of any age, performance of any service, receipt or derivation of any compensation, or occurrence of death or disability.

    (ii)  <u>Limitations On Plan Amendments Increasing Liability For Benefits</u>.

      (A)  No amendment which has the effect of increasing liabilities of the Plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become nonforfeitable may take effect during any Plan Year if the adjusted funding target attainment percentage for such Plan Year is:

        (I)  Less than 80 percent, or

        (II)  Would be less than 80 percent taking into

account such amendment.

(B)    Except for any amendment that provides otherwise for tis provisions, paragraph (A) shall cease to apply with respect to any Plan Year, effective as of the first day of the Plan Year (or if later, the effective date of the amendment), upon payment by the Company of a contribution (in addition to any minimum required contribution under section 430 of the Code) equal to:

(I)    In the case of subparagraph (A)(I), the amount of the increase in the funding target of the Plan (under section 430 of the Code) for the Plan Year attributable to the amendment, and

(II)    In the case of subparagraph (A)(II), the amount sufficient to result in an adjusted funding target attainment percentage of 80 percent, taking into account the amendment.

(C)    Exception For Certain Benefit Increases.  Paragraph (A) shall not apply to any amendment which provides for an increase in benefits under a formula which is not based on a Member's Compensation, but only if the rate of such increase is not in excess of the contemporaneous rate of increase in average wages of Members covered by the amendment.

(D)    Exception for Required Changes to Vesting Schedule. Paragraph (A) above shall not apply to any amendment which provides for a mandatory acceleration of the vesting of benefits to the extent necessary to enable the Plan to continue to satisfy the requirements for qualified plans under the Code and ERISA.

(E)    Treatment of Plan Amendments That Do Not Take Effect.  If a plan amendment does not take effect as of the effective date of the amendment because of the limitations of section 436(c) of the Code and section 1.436-1(c) of the Treasury Regulations, as provided in Section 14(g) (ii)(A), but the amendment provides that it will take effect later in the plan year as a result of additional contributions under Plan Sections 14(g)(ii)(B) or 14(g)(v) using the methods found in section 1.436-1(f)(2) of the Treasury Regulations or pursuant to the enrolled actuary's certification of the adjusted funding target attainment percentage for the plan year that meets the requirements of section 1.436-1(g)(5)(ii)(C) of the Treasury Regulations, then the plan amendment must automatically take effect as of the first day of the plan year (or, if later, the original effective date of the amendment). If the plan amendment cannot take effect during the plan year, as provided in Section 14(g)(ii)(A), and it does not provide that it will take effect if restrictions no longer apply for the plan year, then it must be treated as if it were never adopted.

(iii)    Limitations On Accelerated Benefit Distributions.

(A)    Funding Percentage Less Than 60 Percent.  In any case in

which the Plan's adjusted funding target attainment percentage for a Plan Year is less than 60 percent, the Plan may not pay any prohibited payment after the valuation date for the Plan Year.

(B)    Bankruptcy.  During any period in which the Plan sponsor is a debtor in a case under title 11, United States Code, or similar Federal or State law, the Plan may not pay any prohibited payment. The preceding sentence shall not apply on or after the date on which the enrolled actuary of the Plan certifies that the adjusted funding target attainment percentage of the Plan is not less than 100 percent.

(C)    Limited Payment If Percentage At Least 60 Percent But Less Than 80 Percent.

(I)    In any case in which the Plan's adjusted funding target attainment percentage for a Plan Year is 60 percent or greater but less than 80 percent, the Plan may not pay any prohibited payment after the valuation date for the Plan Year to the extent the amount of the payment exceeds the lesser of:

(a)    50 percent of the amount of the payment which could be made without regard to this section, or

(b)    The present value (determined under guidance prescribed by the Pension Benefit Guaranty Corporation, using the interest and mortality assumptions under section 417(e) of the Code) of the maximum guarantee with respect to the Member under section 4022 of ERISA.

(II)    One-Time Application.

(a)    In General.  Only one prohibited payment meeting the requirements of subparagraph (I) may be made with respect to any Member during any period of consecutive Plan Years to which the limitations under either paragraph (A) or (Bi) or this paragraph (C) applies.

(b)    Aggregation.  For purposes of this subparagraph (iii)(C)(II), a Member and any beneficiary on his behalf (including an alternate payee, as defined in section 414(p)(8) of the Code) shall be treated as one Member.  If the accrued benefit of a Member is allocated to such an alternate payee and one or more other persons, the amount under subparagraph (iii)(C)(I) shall be allocated among such persons in the same manner as the accrued benefit is allocated unless the qualified domestic relations order (as defined in section 414(p)(1)(A) of the Code) provides otherwise.

(D)    Prohibited Payment.  For purpose of this Section, the term "prohibited payment" means:

(I)        Any payment, in excess of the monthly amount paid under a single life annuity (plus any social security supplements described in the last sentence of section 411(a)(9) of the Code), to a Member or beneficiary whose annuity starting date (as defined in section 417(f)(2) of the Code) occurs during any period a limitation under paragraph (A) or (B) is in effect,

(II)        Any payment for the purchase of an irrevocable commitment from an insurer to pay benefits, and

(III)        Any other payment specified by Income Tax Regulations issued by the Secretary of the Treasury.

The term "prohibited payment" shall not include the payment of a benefit which under section 411(a)(11) of the Code may be immediately distributed without the consent of the Member. In the case of a Beneficiary that is not an individual, the amount that is a prohibited payment is determined by substituting for the amount in subparagraph (E)(I) above the monthly amount payable in installments over 240 months that is actuarially equivalent to the benefit payable to the Beneficiary.

(E)        Bifurcation If Option Unavailable. If an optional form of payment is unavailable due to the limitation under this Section 14(g)(iii), then the Member shall have the option        to elect to:

(I)        Defer both the election of form of payment and the  any payment of benefits (subject to the usual qualification requirements applicable to the timing of benefit payments under the Plan, including, but not limited to, those under sections 411(a)(11) and 401(a)(9) of the Code),

(II)        Commence payment of the entire portion of the benefit in any optional form of payment under the Plan that is not a prohibited payment, or

(III)        For purposes of the limitation under Section 14(g)(iii)(C), bifurcate the payment and receive the restricted portion of the benefit under any form of payment available under the Plan in a form that is not a prohibited payment and the unrestricted portion of the benefit in the form of payment which is prohibited.

(iv)        <u>Limitation On Benefit Accruals For Plans With Severe Funding Shortfalls.</u>

(A)        In General.  In any case in which the Plan's adjusted funding target attainment percentage for a Plan Year is less than 60 percent, benefit accruals under the Plan shall cease as of the valuation date for the Plan Year.

Effective for a Plan Year beginning during the period

beginning on October 1, 2008 and ending on September 30, 2009, this paragraph (A) shall be applied by substituting the adjusted funding target attainment percentage for the preceding Plan Year for such percentage for such Plan Year but only if the adjusted funding target attainment percentage for the preceding Plan Year is greater.

(B)    Exemption.  Paragraph (A) shall cease to apply with respect to any Plan Year, effective as of the first day of the Plan Year, upon payment by the Plan sponsor of a contribution (in addition to any minimum required contribution under section 430 of the Code) equal to the amount sufficient to result in an adjusted funding target attainment percentage of 60 percent.

(v)    Contributions To Avoid Benefit Limitations.  In addition to the contributions made under paragraphs (i)(B), (ii)(B) and (iv)(Bi), to the extent permitted under section 436(f) of the Code, contributions may be made or security may be provided to avoid the limitations described in this Section 14(g).

(vi)    Treatment of Plan as of Close of Prohibited or Cessation Period. The following provisions apply for purposes of applying this Section 14(g).

(A)    Operation of the Plan after Period.  Payments and accruals will not resume effective as of the day following the close of the period for which any required limitation of payment or accrual of benefits under this Section 14(g) applies unless the Plan is amended to provide for such resumption.  In addition, accruals for the period during which the limitations under this Section 14(g) applied shall not be restored absent a Plan amendment providing for such restoration.  Any payments which commenced before or while the limitations under this Section 14(g) applied will be continued to be administered in accordance with the benefit forms elected for those payments, without change, and any benefits with an election made before the restricted period, with an annuity starting date within the restricted period, but with a commencement date that is deferred because of the limitations under this Section 14(g), will commence as of the day following the close of the period for which those limitations apply in the benefit forms previously elected, without change.

(B)    Treatment of Affected Benefits.  Nothing in this Section shall be construed as affecting the Plan's treatment of benefits which would have been paid or accrued except as provided under this Section 14(g).

(vii)    Definitions.  The following words shall have the following meanings for purposes of this Section 14(g).

(A)    The term "funding target attainment percentage" has the same meaning given such term by section 430(d)(2) of the Code.

(B)    The term "adjusted funding target attainment percentage"

57

means the funding target attainment percentage which is determined under paragraph (A) by increasing each of the amounts under subparagraphs (A) and (B) of section 430(d)(2) of the Code by the aggregate amount of purchases of annuities for Members other than highly compensated Members (as defined in section 414(q) of the Code) which were made by the Plan during the preceding 2 Plan Years.

(C)    Application To Plans Which Are Fully Funded Without Regard To Reductions For Funding Balances.

(I)    In General.  In the case of a Plan for any Plan Year, if the funding target attainment percentage is 100 percent or more (determined without regard to the reduction in the value of assets under section 430(f)(4) of the Code), the funding target attainment percentage for purposes of Plan Sections 14(g)(vii)(A) and (B) shall be determined without regard to such reduction.

(II)    Transition Rule. Subparagraph (I) shall be applied to Plan Years beginning after 2007 and before 2011 by substituting for '100 percent' the applicable percentage determined in accordance with the following table:

| Plan Year | Applicable Percentage |
|-----------|----------------------|
| 2008 | 92% |
| 2009 | 94% |
| 2010 | 96% |

(III)    Limitation.  Subparagraph (II) shall not apply with respect to any Plan Year beginning after 2008 unless the funding target attainment percentage (determined without regard to the reduction in the value of assets under section 430(f)(4) of the Code) of the Plan for each preceding Plan Year after 2007 was not less than the applicable percentage with respect to such preceding Plan Year determined under subparagraph (II).

(D)    Special Rule For 2008.  For purposes of this section, in the case of Plan Years beginning in 2008, the funding target attainment percentage and the adjusted funding target attainment percentage for the preceding Plan Year may be determined using such methods of estimation as the Secretary may provide.  To the extent the Plan's enrolled actuary has not certified timely the adjusted funding target attainment percentage using such methods, the benefit restrictions described in Sections 14(g)(i) and (ii) shall be applicable as of January 1, 2008 and the benefit restrictions described in Sections 14(g)(iii) and (iv) shall be applicable as of April 1, 2008.

(viii)     <u>Special Rules</u>.

(A)     Rules of Operation for Periods Prior to and After Certification of Plan's Adjusted Funding Target Attainment Percentage.

(I)     In General. Section 436(h) of the Internal Revenue Code and Section 1.436-1(h) of the Treasury Regulations set forth a series of presumptions that apply (01) before the Plan's enrolled actuary issues a certification of the Plan's adjusted funding target attainment percentage for the Plan Year and (02) if the Plan's enrolled actuary does not issue a certification of the Plan's adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary issues a range certification for the Plan Year pursuant to Section 1.436-1(h)(4)(ii) of the Treasury Regulations but does not issue a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the Plan Year). For any period during which a presumption under Section 436(h) of the Internal Revenue Code and Section 1.436-1(h) of the Treasury Regulations applies to the Plan, the limitations under Sections 14(g)(i)(A), (ii)(A), or (iii) are applied to the Plan as if the adjusted funding target attainment percentage for the Plan Year were the presumed adjusted funding target attainment percentage determined under the rules of Section 436(h) of the Internal Revenue Code and Section 1.436-1(h)(1), (2), or (3) of the Treasury Regulations. These presumptions are set forth in Section 14(g)(viii)(A)(II), (III) and (IV).

(II)     Presumption of Continued Underfunding Beginning First Day of Plan Year. If a limitation under Section 14(g)(i)(A), (ii)(A), (iii)(A), (B), or (C) applied to the Plan on the last day of the preceding Plan Year, then, commencing on the first day of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current Plan Year, or, if earlier, the date Section 14(g)(viii)(A)(III) or (viii)(A)(IV) applies to the Plan:

(01)     The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the adjusted funding target attainment percentage in effect on the last day of the preceding Plan Year; and

(02)     The first day of the current Plan Year is a Section 436 measurement date.

(III)     Presumption of Underfunding Beginning First Day of 4th Month. If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 4th month of the Plan Year and the Plan's adjusted funding target attainment percentage for the preceding Plan Year was either at least 60

percent but less than 70 percent or at least 80 percent but less than 90 percent, or is described in Section 1.436-1(h)(2)(ii) of the Treasury Regulations, then, commencing on the first day of the 4th month of the current Plan Year and continuing until the Plan's enrolled actuary issues a certification of the adjusted funding target attainment percentage for the Plan for the current Plan Year, or, if earlier, the date Section 14(g)(viii)(A)(IV) applies to the Plan:

(01)    The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be the Plan's adjusted funding target attainment percentage for the preceding Plan Year reduced by 10 percentage points; and

(02)    The first day of the 4th month of the current Plan Year is a Section 436 measurement date.

(IV)    Presumption of Underfunding On and After First Day of 10th Month. If the Plan's enrolled actuary has not issued a certification of the adjusted funding target attainment percentage for the Plan Year before the first day of the 10th month of the Plan Year (or if the Plan's enrolled actuary has issued a range certification for the Plan Year pursuant to section 1.436-1(h)(4)(ii) of the Treasury Regulations but has not issued a certification of the specific adjusted funding target attainment percentage for the Plan by the last day of the Plan Year), then, commencing on the first day of the 10th month of the current Plan Year and continuing through the end of the Plan Year:

(01)    The adjusted funding target attainment percentage of the Plan for the current Plan Year is presumed to be less than 60 percent; and

(02)    The first day of the 10th month of the current Plan Year is a section 436 measurement date.

(B)    New Plans, Plan Termination, Certain Frozen Plans, and Other Special Rules.

(I)    First 5 Plan Years. The limitations in Section 14(g)(i), (ii)(A), and (iv)(A) do not apply to a new plan for the first 5 plan years of the plan, determined under the rules of Section 436(i) of the Internal Revenue Code and Section 1.436-1(a)(3)(i) of the Treasury Regulations.

(II)    Plan Termination. The limitations on prohibited payments in Section 14(g)(iii) do not apply to prohibited payments that are made to carry out the termination of the Plan in accordance with applicable law. Any other limitations under this section of the Plan do not cease to apply as a result of termination of the Plan.

(III)    Exception for Certain Frozen Plans.  Section 14(g)(iii) shall not apply to any Plan for any Plan Year if the terms of such Plan (as in effect for the period

beginning on September 1, 2005, and ending with such Plan Year) provide for no benefit accruals with respect to any Participant during such period.  This Section 14(g)(viii)(B)(III) shall cease to apply as of the date any benefits accrue under the Plan or the date on which a Plan amendment that increases benefits takes effect.

(IV)    Special Rules Relating to Unpredictable Contingent Event Benefits and Plan Amendments Increasing Benefit Liability. During any period in which none of the presumptions under Section 14(g)(viii)(A) apply to the Plan and the Plan's enrolled actuary has not yet issued a certification of the Plan's adjusted funding target attainment percentage for the Plan Year, the limitations under Section 14(g)(i) and (ii)(A) shall be based on the inclusive presumed adjusted funding target attainment percentage for the Plan, calculated in accordance with the rules of Section 1.436-1(g)(2)(iii) of the Treasury Regulations.

(C)    Special Rules Under PRA 2010.

(I)    Payments Under Social Security Leveling Options. For purposes of determining whether the limitations under Section 14(g)(iii)(A) or (C) apply to payments under a social security leveling option, within the meaning of Section 436(j)(3)(C)(i) of the Internal Revenue Code, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under Section 436(j)(3) of the Internal Revenue Code and any Treasury Regulations or other published guidance thereunder issued by the Internal Revenue Service.

(II)    Limitation on Benefit Accruals. For purposes of determining whether the accrual limitation under Section 14(g)(iv)(A) applies to the Plan, the adjusted funding target attainment percentage for a Plan Year shall be determined in accordance with the "Special Rule for Certain Years" under Section 436(j)(3) of the Internal Revenue Code (except as provided under Section 203(b) of the Preservation of Access to Care for Medicare Beneficiaries and Pension Relief Act of 2010, if applicable).

(ix)    Notice Requirement. If applicable, in accordance with Section 101(j) of ERISA, the Plan Administrator shall provide a written notice to Participants and Beneficiaries within 30 days after certain specified dates if the Plan has become subject to a limitation described in Section 14(g)(iii).

(x)    Compliance with Section 436 of the Code.  This Section 14(g) is intended to comply with Section 436 of the Code and shall, to the extent practicable, be construed in accordance therewith and, effective January 1, 2010, shall be interpreted in a manner that is consistent with Treasury Regulation section 1.436-1, the terms of which are incorporated herein by reference.

61

15.        <u>LIMITATION OF RIGHTS</u>

(a)        <u>Alienation</u>.  None of the payments, benefits or rights of any Member shall be subject to any claim of any creditor of such Member and, in particular, to the fullest extent permitted by law, shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Member.  No Member shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under this Plan, except the right to designate a beneficiary or beneficiaries as provided in Section 11.  This Section shall not apply to the enforcement of a federal tax levy made pursuant to the Code, the collection by the United States on a judgment resulting from an unpaid tax assessment or any other exception set forth in the regulations under section 401(a)(13) of the Code.

(b)        <u>Qualified Domestic Relations Order Exception</u>.  Section 15(a) shall not apply to the creation, assignment or recognition of a right to any benefit payable with respect to a Member under a qualified domestic relations order within the meaning of section 414(p) of the Code.  In accordance with Section 2(e), the Committee shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such orders that it determines are qualified.

Effective April 6, 2007, a domestic relations order that otherwise satisfies the requirements for a qualified domestic relations order under Code Section 414(p) will not fail to be a qualified domestic relations order:  (i) solely because the order is issued after, or revises, another domestic relations order or qualified domestic relations order; or (ii) solely because of the time at which the order is issued, including issuance after the annuity starting date or after the Member's death.  Also, a domestic relations order described in the preceding sentence will be subject to the same requirements and protections that apply to other types of qualified domestic relations orders.

(c)        <u>Employment</u>.  Neither the establishment of the Plan, nor any modification thereof, nor the creation of any fund, trust or account, nor the payment of any benefit shall be construed as giving any Member or Employee, or any person whomsoever, any legal or equitable right against any Participating Company, the Trustee, or the Committee, unless such right shall be specifically provided for in the Trust Agreement or the Plan or conferred by affirmative action of the Committee or the Company in accordance with the terms and provisions of the Plan or as giving any Member or Employee the right to be retained in the employ of any Participating Company.  All Members and other Employees shall remain subject to discharge to the same extent as if the Plan had never been adopted.

16.        <u>MERGERS, CONSOLIDATIONS OR TRANSFERS OF PLAN ASSETS</u>

(a)        <u>General Rule</u>.  In the case of any Plan merger or Plan consolidation with, or transfer of assets or liabilities of the Plan to, any other plan, each Member in the Plan must be entitled to receive a benefit immediately after the merger, consolidation, or transfer (if the Plan were then to terminate) which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan had been terminated).

(b)        <u>Protected Benefits</u>.  Each Member who had an accrued benefit (the "Transferred Benefit") (i) in a plan which merges with and into this Plan or (ii) a plan which transfers assets and liabilities into this Plan without providing the Member the option to receive a distribution, shall have all of the benefits, rights or features provided by the transferor plan which are protected under section 411(d)(6) of the Code with respect to the Transferred Benefit.  The Administrator shall provide for separate recordkeeping for a Member's Transferred Benefit and such additional subaccounts as may be necessary to comply with the requirements of this Section.  Except to the extent necessary to comply with the requirements of this Section or as otherwise provided in the Plan, all Transferred Benefits shall be subject to the general provisions of the Plan.

17.        <u>PARTICIPATION BY RELATED ENTITIES</u>

(a)        <u>Commencement</u>.  Participation in the Plan shall be limited to Related Entities
that were Participating Companies on the day before the Restatement Effective Date and their successors.

(b)        <u>Termination</u>.  The Company may, by action of the Board of Directors or
Pension Committee, determine at any time that any such Participating Company shall withdraw and
establish a separate plan and fund.  The withdrawal shall be effected by a duly executed instrument
delivered to the Trustee instructing the Trustee to segregate the assets of the Fund allocable to the
Employees of such Participating Company and pay them over to the separate fund. Any such transfer shall
be made in accordance with Section 16. On the date a Participating Company ceases to be a Related Entity,
its participation in the Plan shall terminate and Members in its employ shall be treated as having separated
from employment (with that date serving as the Severance Date); however, no affected Member shall be
eligible for distribution of his Accrued Benefit unless the Administrator determines that distribution will
not adversely affect the Plan's qualified status under the Code.  Alternatively, the Board of Directors or
Committee may, but is not required to, provide for a transfer in accordance with Section 16 of the Accrued
Benefits of affected Members to a separate plan which the former Related Entity adopts.

(c)        <u>Single Plan</u>.  The Plan shall at all times be administered and interpreted as a
single plan for the benefit of the Employees of all Participating Companies.

(d)        <u>Delegation of Authority</u>.  Each Participating Company, by adopting the Plan,
acknowledges that the Company has all the rights and duties thereof under the Plan and the Trust
Agreement, including the right to amend the same.

18.      <u>TOP-HEAVY REQUIREMENTS</u>

(a)      <u>General Rule</u>.  For any Plan Year in which the Plan is a top-heavy plan or included in a top-heavy group, as determined under this Section, the special requirements of this Section shall apply.  The Plan shall be a top-heavy plan (if it is not included in an "aggregation group") or a plan included in a top-heavy group (if it is included in an "aggregation group") with respect to any Plan Year if the sum as of the "determination date" of the "cumulative accounts" of "key employees" for the Plan Year exceeds 60% of a similar sum determined for all "employees," excluding "employees" who were "key employees" in prior Plan Years only.

(b)      <u>Definitions</u>.  For purposes of this Section 18, the following definitions shall apply to be interpreted in accordance with the provisions of section 416 of the Code and the regulations thereunder.

(i)      "<u>Aggregation Group</u>" shall mean the plans of a Participating Company or other Related Entity included below within the following categories:

(A)      each such plan in which a "key employee" is a participant including a terminated plan in which a "key employee" was a participant;

(B)      each other such plan which enables any plan in Section (A) above to meet the requirements of section 401(a)(4) or 410 of the Code; and

(C)      each other plan not required to be included in the "aggregation group" which the Company elects to include in the "aggregation group" in accordance with the "permissive aggregation group" rules of the Code if such group would continue to meet the requirements of sections 401(a)(4) and 410 of the Code with such plan being taken into account.

(ii)      "<u>Cumulative Account</u>" for any "employee" shall mean the sum of the amount of his accounts under all defined contribution plans included in the "aggregation group" (if any) as of the most recent valuation date for each such plan within a twelve-month period ending on the "determination date," increased by any contributions due after such valuation date and before the "determination date" plus the present value of his accrued benefit under this Plan plus all defined benefit pension plans included in the "aggregation group" (if any) as of the "determination date," determined under the factors contained in Section 1(b).  The present value of the accrued benefits as of any particular determination date shall be the amount calculated as of the most recent valuation date for the defined benefit plan which is within a 12-month period ending on the determination date.  For this purpose, the valuation date shall be the date for computing the defined benefit plan costs for purposes of determining the minimum funding requirement under section 412 of the Code.  "Cumulative accounts" of "employees"

that have not performed services for a Participating Company or other Related Entity for the one-year period ending on the "determination date" shall be disregarded.  An "employee's" "cumulative account" shall be increased by the aggregate distributions (A) during the one-year period ending on the "determination date" made with respect to him under any plan in the "aggregation group, including a terminated plan, which had it not been terminated would have been aggregated with the Plan under section 416(g)(2)(A)(i)  of the Code and (B) during the five-year period ending on the "determination date" made for reasons other than severance from employment, death or disability. Rollovers and direct plan-to-plan transfers to this Plan or to a plan in the "aggregation group" shall be included in an "employee's" "cumulative account" unless the transfer is initiated by the "employee" and made from a plan maintained by an employer which is not a Participating Company or other Related Entity.

(iii)    "Determination Date" shall mean with respect to any Plan Year the last day of the preceding Plan Year.

(iv)    "Employee" shall mean any person (including a beneficiary thereof) who has or had an accrued benefit held under this Plan or a plan in the "aggregation group" including this Plan at any time during the current or preceding Plan Year.  Any "employee" other than a "key employee" described in Section 18(b)(v) shall be considered a "non-key employee" for purposes of this Section 18.

(v)    "Key Employee" shall mean any "employee" or former "employee" (including a beneficiary thereof) who is, at any time during the Plan Year that includes the "determination date" any one or more of the following:

(A)    an officer of a Participating Company or other Related Entity whose compensation (as defined in under applicable Code regulations) exceeds $145,000 (or an increased amount resulting from a cost of living adjustment under the Code) unless 50 other such officers (or, if lesser, a number of such officers equal to the greater of three or 10% of the "employees") have higher annual compensation;

(B)    any person owning (or considered as owning within the meaning of section 318 of the Code) more than 5% of the outstanding stock of a Participating Company or a Related Entity or stock possessing more than 5% of the total combined voting power of such stock;

(C)    a person who would be described in Section (B) above if 1% were substituted for 5% each place the same appears in Section (B) above, and who has annual compensation of more than $150,000.

For purposes of determining ownership under this Section, section 318(a)(2)(C) of the Code shall be applied by substituting 5% for 50%.

(c)    Vesting.  A Member shall have a nonforfeitable right to a percentage of his Accrued Benefit in accordance with the schedule set forth below to the extent the schedule provides a larger nonforfeitable benefit than Section 10(a).

| Years of Service | Nonforfeitable Percentage |
|---|---|
| Less than 3 years | 0% |
| 3 years or more | 100% |

The schedule above shall apply to all benefits accrued as of the date the schedule becomes effective and all benefits accrued for Plan Years thereafter to which this Section applies. If the Plan ceases to be top-heavy, no benefit which became nonforfeitable under the schedule above shall become forfeitable.  For Members with three Years of Service or more, the schedule shall continue to apply to future accruals if it provides a larger nonforfeitable benefit.

(d)    Minimum Benefit.  With respect to any Member who is not a Key Employee, the Member's Accrued Benefit shall be adjusted so that it is not less than the "applicable percentage" of the Member's compensation for "years in the testing period."  For this purpose, "compensation" for any Plan Year means the Member's compensation within the meaning of section 415 of the Code, and the term "applicable percentage" means the lesser of (i) 2% multiplied by the Member's Years of Service, excluding Years of Service (A) for which the Plan was not a top-heavy plan for the Plan Year ending coincident with or within such Year of Service, (B) completed in a Plan Year beginning before January 1, 1984, (C) beginning after December 31, 2006 or any other Plan Year when the Plan benefits (within the meaning of section 410(b) of the Code) no "key employee" or "former key employee", or (ii) 20%.  The term "years in the testing period" means the five consecutive Plan Years in which the Member completed a Year of Service during which the Member had the greatest aggregate compensation, excluding such periods (i) ending in a Plan Year beginning before January 1, 1984 or (ii) beginning after the close of the last Plan Year in which the Plan was a top-heavy plan.  The computation period for purposes of determining a Year of Service under this Section shall be the Plan Year.  Each "non-key employee" of a Participating Company who has completed 1,000 Hours of Service during the Plan Year and who has satisfied the Plan's eligibility requirements shall receive the minimum benefit regardless of (i) whether the "non-key employee" is employed on the last day of the Plan Year or (ii) the "non-key employee's" earnings level for the Plan Year.

19.        <u>MISCELLANEOUS</u>

(a)        <u>Incapacity</u>.  If the Committee determines that a person entitled to receive any benefit payment is under a legal disability or is incapacitated in any way so as to be unable to manage his financial affairs, the Committee may make payments to such person for his benefit, or apply the payments for the benefit of such person in such manner as the Committee considers advisable.  Any payment of a benefit in accordance with the provisions of this Section shall be a complete discharge of any liability to make such payment.

(b)        <u>Reversions</u>.  In no event, except as provided herein, shall the Trustee return to a Participating Company any amount contributed by it to the Plan.

(i)        <u>Mistake of Fact</u>.  In the case of a contribution made by a good faith mistake of fact, the Trustee shall return the erroneous portion of the contribution, without increase for investment earnings, but with decrease for investment losses, if any, within one year after payment of the contribution to the Fund.

(ii)        <u>Deductibility</u>.  All Participating Company contributions are expressly conditioned on deductibility under section 404 of the Code.  To the extent deduction of any contribution determined by the Company to be deductible is disallowed, the Trustee shall return that portion of the contribution, without increase for investment earnings but with decrease for investment losses, if any, for which deduction has been disallowed within one year after the disallowance of the deduction.

(iii)        <u>Termination</u>.  If the Plan terminates, residual assets shall be returned to the Participating Companies to the extent permitted by Section 14(d).

(iv)        <u>Limitation</u>.  No return of contribution shall be made under this Section which adversely affects the Plan's qualified status under regulations, rulings or other published positions of the Internal Revenue Service or reduces a Member's Accrued Benefit below the amount it would have been had such contributions not been made.

(c)        <u>Employee Data</u>.  The Committee may require that each Employee provide such data as it deems necessary upon his becoming a Member in the Plan.  Each Employee, upon becoming a Member, shall be deemed to have approved of and to have acquiesced in each and every provision of the Plan for himself, his personal representatives, distributees, legatees, assigns, and beneficiaries.

(d)        <u>In Writing Requirement</u>.  Unless otherwise required by law, a requirement

68

that a transaction or consent under the Plan be "in writing" may, at the discretion of the Plan Administrator, be effected through an interactive telephone system or by other types of electronic communication.

(e) <u>Doubt as to Right to Payment</u>. If at any time any doubt exists as to the right of any person to any payment under the Plan or the amount or time of such payment (including, without limitation, any case of doubt as to identity, or any case in which any notice has been received from any other person claiming any interest in amounts payable hereunder, or any case in which a claim from other persons may exist by reason of community property or similar laws), the Administrator may direct the Trustee to hold such sum as a segregated amount in trust until such right or amount or time is determined or until order of a court of competent jurisdiction, or to pay such sum into court in accordance with appropriate rules of law or to make payment only upon receipt of a bond or similar indemnification (in such amount and in such form as is satisfactory to the Administrator).

(f) <u>Inability to Locate Distributee</u>. Notwithstanding any other provision of the Plan, if the Administrator cannot locate any person to whom a payment is due under this Plan, the benefit in respect of which such payment is to be made shall be forfeited at such time as the Administrator shall determine in its sole discretion (but in all events prior to the time such benefit would otherwise escheat under any applicable state law); provided, that such benefit shall be reinstated if such person subsequently makes a valid claim for such benefit.

(g) <u>Estoppel of Members and Their Beneficiaries</u>. The Participating Companies, Committee, Administrator and Trustee may rely upon any certificate, statement or other representation made to them by an Employee, Member or beneficiary with respect to age, length of service, leave of absence, date of cessation of employment, marital status, or other fact required to be determined under any other provisions of this Plan, and shall not be liable on account of the payment of any moneys or the doing of any act in reliance upon any such certificate, statement or other representation. Any such certificate, statement or other representation made by an Employee or Member shall be conclusively binding upon such Employee or Member and his beneficiary, and such Employee, Member or beneficiary shall thereafter and forever be estopped from disputing the truth and correctness of such certificate, statement or other representation. Any such certificate, statement or other representation made by a Member's beneficiary shall thereafter and forever be estopped from disputing the truth and correctness of such certificate, statement or other representation.

(h) <u>Law Governing</u>. This Plan shall be construed, administered and applied in a manner consistent with the laws of the Commonwealth of Pennsylvania where those laws are not superseded by federal law.

        (i)      <u>Pronouns</u>.  The use of the masculine pronoun shall be extended to include the feminine gender wherever appropriate.

        (j)      <u>Interpretation</u>.  The Plan is a defined benefit pension plan including a qualified, tax exempt trust under sections 401(a) and 501(a) of the Code.  The Plan shall be interpreted in a manner consistent with its satisfaction of all requirements of the Code applicable to such a plan.

20.        <u>EXECUTION</u>

Executed this _____ day of _____, 2012.

GMAC MORTGAGE GROUP LLC.

Witness:

_____        By:_____

## **SCHEDULES**

See Appendix A, Schedules A and B


See Appendix B, Schedule A

**APPENDIX A**

**PLAN PROVISIONS SPECIFIC TO THE MG SUB-PLAN**
**(Formerly the separate Employees' Retirement Plan for GMAC Mortgage Group LLC)**

**PREAMBLE**

Effective January 1, 2012, the Plan has been amended and restated to consolidate the formerly separate provisions of the PL Sub-Plan and MG Sub-Plan.  Accordingly, the provisions of the Plan specific to the MG Sub-Plan are hereby incorporated into this restated Plan as this Appendix A.

A-1.    <u>DEFINITIONS</u>

Except as otherwise set forth in this Appendix A, defined terms will have the meaning set forth in Section 1 of the Plan.  In the event of any conflict between the Plan and this Appendix A, Appendix A will govern.

(a)    "<u>Accrued Benefit</u>" shall mean, pursuant to Section 1(a), the benefit earned by the Member as of the earlier of the Member's Severance Date or the Benefit Accrual Freeze Date.

(b)    "<u>Actuarially Equivalent Amount</u>" shall mean, pursuant to Section 1(b), for purposes of converting from one form of annuity to another or when changing from one Annuity Starting Date to another an amount equal in value under the assumptions that

(i)    money increases at the rate of 8.0% per year, compounded annually, and

(ii)    mortality will occur in accordance with the 1971 TPF&C Forecast Mortality Table, with age set back three years for both Members and beneficiaries.

(f)    "<u>Average Annual Compensation</u>" shall mean the average of a Member's Compensation for the five consecutive Plan Years for which the Member has Compensation ended on or before the determination date that yields the highest average.  The determination date shall be the earlier of the Member's Severance Date or the Member's Benefit Accrual Freeze Date as determined under Section 4(c)(ii). If a Member has Compensation for less than five consecutive Plan Years at the date of determination, "<u>Average Annual Compensation</u>" shall mean the average of his Compensation for his consecutive Plan Years with Compensation.  If a Member has a Severance Date and receives a distribution under Section 10(d)(ii), then Compensation for Plan Years up to and including the Severance Date shall be disregarded.  Otherwise, Plan Years included in a Period of Severance and pre-Severance Date Compensation shall be considered in determining the consecutive Plan Years which yield the highest average.  In no event shall a Member's "<u>Average Annual Compensation</u>" be less than it was under the terms of the Plan as effective December 31, 2006.

(g)        "Benefit Accrual Freeze Date" shall mean the date on which the Member

ceased to accrue benefits by reason of an amendment to the Plan as effective before the Restatement

Effective Date that provided for cessation of benefit accrual for Employees of the Participating Company

that employed him, as set forth in Section A-4(c).

(i)        "Break in Service" shall mean a Period of Severance of at least five years.

(n)        "Compensation" for a Plan Year shall mean, subject to Section 1(m), the

annualized base rate of pay paid to an Employee by a Participating Company as of the last business day of

the Plan Year; provided, however; if an Employee receives pay for less than six months in a Plan Year, the

Employee shall be treated as having no "Compensation" for that Plan Year for purposes of Section 1(g)

and if an Employee receives pay for at least six months in a Plan Year but has a Severance Date before the

last business day of the Plan Year, then "Compensation" shall be determined as of the Employee's

Severance Date.  For an Employee paid on an hourly basis, "Compensation" shall be determined by

multiplying the Employee's base hourly rate of pay as of the last day of the Plan Year by the Employee's

regularly scheduled compensated hours in a Plan Year, except that for Employees who are scheduled to

work less than 40 hours per week, Compensation shall be the hourly rate of pay as of the last day of the

Plan Year multiplied by the greater of the actual number of straight time hours paid in the Plan Year and

the regularly scheduled work hours in the Plan Year.  For an Employee paid on a salary basis,

"Compensation" shall be determined by multiplying the Employee's base salary rate by the number of pay

periods in the ordinary Plan Year.  Base rate of pay shall not include any bonus, hourly premium, incentive

compensation, fringe benefit payable in cash or kind, family allowance, bonus or other form of

remuneration whatsoever. For salespersons compensated by commission only, "Compensation" shall mean

commissions paid in a Plan Year and shall be limited to a maximum of $50,000 per Plan Year.  For

persons compensated in part by commission and part by salary, "Compensation" (i) for a Class K

Employee shall be the Employee's annualized base rate of pay without regard to commissions or, if

annualized base rate of pay is less than $50,000, then commissions paid shall be credited until the sum of

base rate of pay and commissions paid equals $50,000 and (ii) for a Class G Employee shall be the

Employee's annualized base rate of pay plus commissions up to an aggregate of $50,000.  For Plan Years

prior to 1993, "$20,000" shall be substituted for $50,000 in the preceding sentences.  For Plan Years prior

to 1998 and after 1992, "$30,000" shall be substituted for "$50,000" in the preceding sentences.

"Compensation" for purposes of determining Average Annual Compensation for a Member with a Benefit

Accrual Freeze Date under Section 4(c)(ii) of September 30, 2002 shall be determined as if September 30,

2002 were the last day of the 2002 Plan Year.  "Compensation" for purposes of determining Average

75

Annual Compensation for a Member with a Benefit Accrual Freeze Date under Section 4(c)(ii) of March 23, 2006 shall be determined without regard to 2006.  "Compensation" for any Plan Year that begins on or after the Restatement Effective Date shall not be considered.

      (p)        "Disability Leave" shall mean a Member's absence from work prior to his Normal Retirement Date due to Disability, subject to the requirements of Section 9.

      (q)        "Early Retirement Date" shall mean the date on which a Member has both attained age 55 and completed five years of Service.

      (ae)        "Period of Service" shall mean the period of time commencing on the date on which an Employee first is credited with an Hour of Service or, if applicable, on the date following a Period of Severance of one year or more on which an Employee first is credited with an Hour of Service provided and ending on the next following Severance Date; provided, however, the period beginning on the anniversary of the date of an Employee's absence due to maternity or paternity and ending on the second anniversary thereof shall not be included in a Period of Service.  A Period of Severance of less than one year shall be included in a Period of Service for all purposes other than crediting service for purposes of benefit accrual under Section 4(c).

      (af)        "Period of Severance" shall mean the period of time commencing on an Employee's Severance Date and ending on the date on which the Employee first again is credited with an Hour of Service exclusive of periods during which an Employee is on an unpaid leave pursuant to the Family and Medical Leave Act of 1993.

      (ai)        "Prior Plan" shall mean the Plan as effective prior to the Restatement Effective Date.  For periods prior to June 1, 1985, the Norwest Corporation Pension Plan as effective on June 30, 1985, and for periods prior to July 1, 1983, the National Central Bank Pension Plan, respectively, shall be a "Prior Plan" with respect to Members who had accrued benefits under them that were transferred to the Prior Plan.

      (al)        "Restatement Effective Date" shall mean January 1, 2007.

      (am)        "Service" shall mean the sum of an Employee's Periods of Service.  Service is measured in completed years and days, where 365 days of Service equal one completed year of Service.

      (an)        "Severance Date" shall mean the earlier of (i) the date an Employee quits, is discharged (or severed, if later), retires or dies or (ii) the first anniversary of the date an Employee is absent from the employ of all Participating Companies and all Related Entities for any reason other than a Disability Leave or an approved leave of absence granted in writing by the Company according to a uniform rule applied without discrimination or in accordance with applicable law provided the Employee

returns to the employ of a Participating Company or a Related Entity upon completion of the leave. However, if the Employee was on any period of unpaid leave taken pursuant to the Family and Medical Leave Act of 1993, he shall not incur a Severance Date for purposes of Section 1(i) until the leave expires, or, if applicable, the date determined under the last sentence of this Section.  Further, an Employee who terminates Service to enter the military service of the United States shall not suffer a Severance Date as of such date provided (i) such Employee's rights are protected by The Uniform Services Employment and Reemployment Rights Act of 1994 or other federal law and (ii) such Employee returns to employment with a Participating Company or a Related Entity within the period required by law for preservation of his rights.  Under such circumstances, an Employee shall receive credit for Service for his entire period of absence.  If an Employee on an approved leave of absence or qualified military service does not return to the employ of a Participating Company or other Related Entity upon completion of the leave or expiration of the period provided by law in the case of qualified military service, his Severance Date generally shall be the last day for which he received his regular pay.  In addition, for purposes of Section 1(i), an Employee shall not suffer a Severance Date until the second anniversary of the date on which such Employee is absent from work (i) by reason of the Employee's pregnancy, (ii) by reason of the birth of the Employee's child, (iii) by reason of the placement of a child with such Employee in connection with an adoption of such child by the Employee or (iv) for purposes of caring for a child for a period beginning immediately following birth or placement.

(ao)    "Social Security Covered Compensation" shall mean, with respect to a Member, the Social Security Covered Compensation determined as of the earlier of

(i)    his Severance Date, or

(ii)    his Benefit Accrual Freeze Date.

(ap)    "Social Security Retirement Age" shall mean the retirement age applicable to the Member under section 216(l) of the Social Security Act, except that such section shall be applied without regard to the age increase factor, and as if the early retirement age under section 216(1)(2) of such Act were 62.

A-3.        PARTICIPATION IN THE PLAN

(a)        General Eligibility.  Pursuant to Section 3, participation in the Plan is frozen as of the Benefit Accrual Freeze Date.  Prior to the Benefit Accrual Freeze Date, Employees became Members of the Plan on the Entry Date coincident with or next following the date the Employee met the participation requirements, as outlined below:

(i)        The attainment of age 21.

(ii)        The completion of one year of service for eligibility, which was a consecutive 12-month period in which an employee is paid for 1,000 Hours of Service.

The Entry Dates were January 1 and July 1.  The last Entry Date on which an Employee became a Member of the Plan was July 1, 2006.

(b)        Residential Employees.    Employees of GMAC Residential Holding Company. LLC and its Subsidiaries (together "Residential") who began work with Residential before April 1, 2002 and had satisfied the eligibility requirements in paragraph (a)(i) and (ii) were deemed Plan Members.  Notwithstanding the foregoing, if a Residential employee's employment terminated, either before or after April 1, 2002, and such employee was reemployed by Residential on or after April 1, 2002, such employee was not considered an active member in the Plan with respect to employment on and after April 1, 2002. Such employee ceased to earn any benefit under the Plan as of the date he or she terminated employment.

(c)        Residential Transfers.  Residential employees who were transferred to employment with non-Residential subsidiaries of the Company during 2006 were not eligible to participate during such post-transfer employment unless such employee was an active Member of the Plan on the date of transfer. Company Employees who were transferred to employment with Residential during 2006 remained eligible to participate in the Plan through December 31, 2006.

A-4.        NORMAL RETIREMENT

      (a)        Eligibility.  A Member is eligible for a benefit upon attainment of Normal Retirement Age, which is the date on which the Member attains age 65.

      (b)        Calculation of Accrued Benefit.

      (i)        General Rule.  Benefits under the Plan cease to accrue after the Benefit Accrual Freeze Date.  Except as provided in Section A-4(b)(ii) below or in Section A-4(d), the Accrued Benefit of a Member earned as of the Benefit Accrual Freeze Date who retires under Section A-4(a), expressed as an annual amount, shall be the sum of:

      (A)        1.1% of his Average Annual Compensation, multiplied by the number of his years of Service credited under Section A-4(c) to and including 20 years thereof; and

      (B)        1.3% of his Average Annual Compensation, multiplied by the number of his years of Service credited under Section A-4(c) over 20 and to and including 30 years thereof; and

      (C)        1.0% of his Average Annual Compensation, multiplied by the number of his years of Service credited under Section A-4(c) in excess of 30 years thereof; and

      (D)        0.35% of his Average Annual Compensation in excess of his Social Security Covered Compensation, multiplied by the number of his years of Service credited under Section A- 4(c) up to and including 30 years thereof.

      (ii)        Special Rule.  If a Member's Accrued Benefit as of any date on or after January 1, 1994 is based on Compensation for a Plan Year beginning prior to January 1, 1994 that exceeded $150,000 (the "Affected Member"), then the Member's Accrued Benefit shall be the greater of the amount determined under Section A-4(b)(i) applied to all Service credited under Section A-4(c) and the sum of (A) and (B) below, where (A) and (B) are determined as follows:

      (A)        is the Affected Member's adjusted Accrued Benefit for Service credited under Section A-4(c) as of December 31, 1993.  The amount shall be determined (1) as if such Affected Member terminated employment as of December 31, 1993 and (2) without regard to any amendment to the Plan adopted after December 31, 1993, other than amendments recognized as retroactively effective under section 401(b) of the Code or Reg. Section 1.401(a)(4)-11(g).  The amount determined above shall be multiplied by a fraction, not less than one, the numerator of which is the Affected Member's Average Annual Compensation for the Plan Year in which the determination is being made (but not later than 1994) under the terms of the Plan as effective December 31, 1993 but applying the

79

dollar limitation of Section A-1(m) for the Plan Year of the determination and the denominator of which is the Affected Member's Average Annual Compensation under the terms of the Plan as effective December 31, 1993 (including the dollar limitation in effect on December 31, 1993).

(B)    is the Affected Member's Accrued Benefit for Service after December 31, 1993 credited under Section A-4(c).  The amount of the Accrued Benefit for such Service is determined under the provisions of Section A-4(b) applied to such Service.  The percentage factors under Section A-4(b)(i)(A)-(D) shall be applied as Service is credited under Section A-4(c) so that, for example, the amount of Accrued Benefit under (B) for a Member with 20 years of Service credited under Section A-4(c) as of December 31, 1993 shall be determined under Sections  A-4(b)(i)(B)-(D), as applicable.

(iii)    <u>Savings Clause</u>.  In no event shall a Member's Accrued Benefit on the Restatement Effective Date be less than it was under the terms of the Prior Plan on the day before such date.

(c)    <u>Crediting Service for Benefit Accrual</u>.

(i)    A Member shall receive credit for Service for purposes of benefit accrual for all Periods of Service in the employ of a Participating Company, including qualified military service as provided for in section 414(u) of the Code, to the earlier of his Severance Date and his Benefit Accrual Freeze Date as set forth in Section A-4(c)(ii) below except as provided in any of Sections A-4(c)(iii)-(vii).

(ii)    A Member's Benefit Accrual Freeze Date shall be determined from the listing below:

(A)    For Members employed on September 30, 2002 by any of GMAC Home Services Inc., Argonaut Relocation Services, Inc., GMAC Real Estate, LLC, GMAC Global Relocation Services, Inc. Eastern Massachusetts Real Estate, Inc., Fort Dearborn Land Title Company, GHS Metro NY, Inc., Koenig & Strey, Inc., Koenig & Strey Insurance Agency, Inc. or Pacific Union Real Estate Group, Ltd, the Benefit Accrual Freeze Date is September 30, 2002.

(B)    For Members employed by GMAC Commercial Holding Corp. or a Participating Company that was a subsidiary of GMAC Commercial Holding Corp., the Benefit Accrual Freeze Date is March 23, 2006.

(C)    For Members not covered by the foregoing Sections, the Benefit Accrual Freeze Date is December 31, 2006.

(iii)    A Member hired after December 31, 1984 shall not receive credit for Service for purposes of benefit accrual for Periods of Service completed prior to his 21st birthday.

(iv)        A Member shall not receive credit for Service for purposes of benefit accrual for Periods of Service during which he is (A) a member of a collective bargaining unit not eligible to participate in this Plan or (B) in a job classification not eligible to participate in the Plan as then effective.

(v)        A Member shall not receive credit for Service for purposes of benefit accrual for any Period of Severance.

(vi)        If a Member forfeits his Accrued Benefit under Section A-10(d)(iii), then he shall also lose credit for purposes of benefit accrual for years of Service earned prior to the Severance Date resulting in the forfeiture unless such Accrued Benefit is restored under Section A-10(d)(iv).

(vii)        A Member shall not receive credit for Service for purposes of benefit accrual for periods of employment with an entity prior to the date a Participating Company or other Related Entity acquired such entity or its business assets, except a Member who accrued benefits under the Norwest Corporation Pension Plan or the National Central Bank Pension Plan shall receive credit for Service for benefit accrual for periods prior to July 1, 1985 or July 1, 1983, respectively, equal to the amount of service counted for benefit accrual under such Prior Plans as of those dates.

(d)        Minimum Benefit. A Member's Accrued Benefit shall be the amount determined under all of the provisions of this Section if either (i) the Accrued Benefit under this Section exceeds the value of the Accrued Benefit determined under the Plan or (ii) the Member elects to receive his Accrued Benefit under the provisions of this Section.

(i)        Formula.  The amount of the Member's Accrued Benefit shall be his Accrued Benefit on December 31, 1994 under the terms of the Prior Plan plus the product of (A) 1.0%, (B) his Average Annual Compensation and (C) his years of Service credited under Section A-4(c) after December 31, 1994.

(ii)        Early Retirement.  Section A-8(a) shall apply by substituting "age 60" for "age 62" therein.

(iii)        Spouse's Benefit.  If a Member whose benefit is determined under this Section (A) is married on the date of his benefit election, (B) does not elect in accordance with Section A-5(a) to have his retirement income paid in a form of benefit other than a Qualified Joint and Survivor Annuity and (C) predeceases his spouse (determined on the date of his benefit election), then such spouse shall be entitled to receive an income, subject to reduction under Section A-4(d)(iv) below, equal to 50% of that payable to the Member under this Section A-4(d).  The spouse's benefit shall commence with the

month following the month in which the Member dies and end with the month in which such spouse dies. If a Member dies at a time when benefits would be payable under Section A-11(a), the spouse shall receive the survivor portion of the benefit determined under this Section if the benefit is greater than that determined under Section A-11(a).

(iv)    <u>Limits on Spouse's Benefits</u>.  If the spouse of a Member is more than ten years younger than such Member, the amount otherwise payable to such spouse under Section A-4(d)(iii) shall be reduced to its Actuarial Equivalent Amount, as of the date benefit payment to the Member commences, based on such spouse's increased life expectancy beyond the life expectancy such spouse would have had if such spouse were ten years younger than the Member; provided, however, the amount periodically payable to such spouse shall not be less than the amount such spouse would have received if the Member had elected to receive his benefits in the form of a Qualified Joint and Survivor Annuity with such Qualified Joint and Survivor Annuity the Actuarial Equivalent Amount of such Member's Accrued Benefit.

(e)    <u>Benefits Payable From Other Plans</u>

(i)    <u>Benefit Offset</u>.  Anything in this Plan to the contrary notwithstanding, the value of any benefit to which a Member is entitled hereunder shall be reduced by the value of any pension or other benefit payable under any "defined benefit plan" (as that term is defined in the Code) other than this Plan which is subject to section 415(b) of the Code, to which a Participating Company contributes or has contributed, directly or indirectly, to the extent such benefit is provided by the contributions of a Participating Company and is for the same period of employment and/or earnings for which the Member accrues benefits under this Plan.

(ii)    <u>Hartzler Mortgage Company</u>.  The annual benefit payable in the form of a straight life annuity commencing on or after Normal Retirement Date to any Member who accrued benefits under the National Central Bank Pension Plan as adopted by Hartzler Mortgage Company, which benefits were transferred into this Plan, shall not be less than the amount of the accrued benefit transferred to this Plan.  For purposes of determining benefits commencing on other than the Member's Normal Retirement Date, the transferred benefit amount shall be adjusted in the same manner as a benefit accrued under this Plan.

(iii)    <u>Norwest Corporation</u>.  The annual benefit payable in the form of a straight life annuity commencing on or after Normal Retirement Date to any Member who accrued benefits under the Norwest Corporation Pension Plan, which benefits were transferred to this Plan, shall not be less than the amount of the accrued benefit transferred to this Plan.  For purposes of determining benefits

82

commencing on other than the Member's Normal Retirement Date, the transferred benefit amount shall be adjusted as provided under factors used by the Norwest Corporation Pension Plan on June 30, 1985.

        (f)      <u>Re-employment After Retirement</u>.  If a Member who began receiving benefits is subsequently re-employed by a Participating Company or an employer which was a Related Entity as of both the date the Member's benefit payments commenced and the date the Member was re-employed, the Member's benefit payments will be suspended for all calendar months which begin during his re-employment period during which he is paid or entitled to payment for the performance of services for 80 or more Hours of Service.

        Upon later termination such Member shall be entitled to an amount of benefit equal to the sum of (i) his benefit in pay status prior to suspension and (ii) any additional amount of Accrued Benefit earned from and after his reemployment based on both his Average Annual Compensation and Service credited under Section 4 for his period of reemployment. Notwithstanding the foregoing, if the Member is not eligible to earn additional Average Annual Compensation and Service credited for benefit accrual purposes after re-employment and the Member's benefit in pay status prior to his re-employment was reduced in accordance with the early retirement reductions factors under Section 8(a), then upon the Member's Severance Date after re-employment, the benefit shall be (i) increased to reflect the early retirement reduction factor, if any, applicable at his second benefit commencement date and (ii) reduced to reflect the Actuarially Equivalent Amount of the benefit payments that the Member received prior to his re-employment.

        A Member whose benefit was suspended shall make a new benefit distribution option election in accordance with Section 5; provided, however, if the Member's benefit in pay status prior to suspension was in the form of a Qualified Joint and Survivor Annuity with his spouse as survivor annuitant and that spouse is surviving on the second Annuity Starting Date, the Member's election shall be subject to the spousal consent rules of Section 5.  Further, if the Member did not have a spouse on the original Annuity Starting Sate or the spouse on that date is no longer surviving, the Member's election shall be subject to the spousal consent rules if the Member has a spouse on the second Annuity Starting Date.

A-5.        <u>BENEFIT DISTRIBUTION</u>

(a)        <u>Retirement Income:</u>  See Section 5(a)

(i)        <u>Option A (Straight Life Annuity)</u>:  See Section 5(a)(i)

(ii)        <u>Option B (Qualified Joint and 50% Survivor Annuity)</u>:  See Section 5(a)(ii)

(iii)        <u>Option C (Other Forms of Payment)</u>:  A Member may elect to receive an optional form of payment described below.  The amount payable under this Option C shall be the Actuarially Equivalent Amount of the amount payable under Option A.

(A)        <u>Joint and Survivor Annuity</u>.  A reduced rate of annual retirement income, payable monthly, with income equal to 50%,  75% or 100%, whichever the Member elects, of that reduced rate continuing to a designated contingent annuitant including the Member's spouse.  If a contingent annuitant is other than the Member's spouse, the reduction in the Member's retirement income shall not exceed 50%.  No contingent annuitant may receive a greater rate of retirement income than the Member.  If the contingent annuitant dies before the Member, but after the retirement of such Member, the reduced retirement income shall continue to be paid in accordance with Option C.

(B)        <u>Life and Period Certain</u>.  A reduced rate of annual retirement income, payable monthly, with 120 monthly payments guaranteed, provided, however, that the guaranteed payment period shall not be over a period longer than the Member's life expectancy.  A Member shall designate a beneficiary to receive any benefit payable under this option after the Member's death.  Such designation shall be made and applied pursuant to the provisions of Section 11(c) and (d).

(C)        <u>Level Income Basis</u>.  A Member who retires prior to the age at which he first is eligible to receive reduced social security payments may elect, under Options A, B, or C, to receive the Actuarial Equivalent Amount of his annual retirement income on a "level income basis" under which the annual retirement income will be increased for the period of time from his retirement until the Member becomes eligible to receive reduced social security payments at which time the annual retirement income will be decreased.  The amount of the increase and the decrease will be such that the Member's annual retirement income prior to eligibility to receive reduced social security payments will be approximately equal to the Member's combined annual retirement income and the amount of social security payments which he is then eligible to receive.  Notwithstanding the foregoing, the "level income basis" shall not be available to a Member whose Accrued Benefit is not sufficient to allow for an Actuarial

84

Equivalent Amount of benefits under such basis.

(f)    <u>Commencement of Benefit</u>. Subject to the provisions of Section 5(f), if the month that payment begins is later than the month following the month in which the Member's Normal Retirement Date occurs and is not determined under Section 5(f)(iii), the Member's Accrued Benefit at Normal Retirement Date shall be adjusted to reflect that benefits commenced later than the month following the month in which the Member's Normal Retirement Date occurred by applying an interest rate assumption of six percent per annum and the mortality assumption under Section 1(b).

A-8.    <u>EARLY RETIREMENT</u>

(a)    <u>Eligibility</u>.  Each Member who terminates employment with all Participating Companies and other Related Entities on or after his Early Retirement Date but prior to his Normal Retirement Date shall be eligible to receive a pension commencing with any month following the month in which his termination of employment occurs, determined as follows:

(i)    <u>Unreduced Benefit</u>.

(A)    A Member who has completed 20 or more years of Service under Section 10(b) and who is at least age 62 prior to his Severance Date may retire and shall be entitled to receive an annual retirement income commencing with the month following his Severance Date in an amount equal to the amount calculated under Section 4 as of the earlier of his Benefit Accrual Freeze Date and his Severance Date.

(B)    A Member who has completed 20 or more years of Service under Section 10(b), who is less than age 62 at his Severance Date and who postpones commencing to receive his annual retirement income until the month following the month in which his 62nd birthday occurs shall be entitled to receive an annual retirement income in an amount equal to the amount calculated under Section 4 as of the earlier of his Benefit Accrual Freeze Date and his Severance Date.

(ii)    <u>Reduced Benefit</u>.

(A)    A Member who has completed five or more years of Service but has not completed 20 years of Service under Section 10(b) and who is at least age 60 prior to his Severance Date may retire and shall be entitled to receive an annual retirement income commencing with the month following his Severance Date in an amount equal to the amount calculated under Section 4 as of his Severance Date, reduced by 1/4 of 1% of such amount for each month remaining between the Member's Annuity Starting Date and his Normal Retirement Date.

(B)    A Member who has completed five or more years of Service but has not completed 20 years of Service under Section 10(b) and who is at least age 55 but has not attained at least age 60 prior to his Severance Date may retire and shall be entitled to receive an annual retirement income commencing with the month following his Severance Date in an amount equal to the amount calculated under Section 4 as of the earlier of his Benefit Accrual Freeze Date and his Severance Date, reduced by the sum of (<u>1</u>) 1/2 of 1% of such amount for each month remaining between the Member's Annuity Starting Date and the first day of the month following the month in which his 60th

birthday occurs, plus (2) 1/4 of 1% of such amount for each month remaining between the month in which the Member's 60th birthday occurs and the month in which his 65th birthday occurs (to a maximum of 15% of such amount if the Annuity Starting Date is prior to the first day of the month in which the Member's 60th birthday occurs).

(C)    A Member who has completed 20 or more years of Service under Section 10(b) but who is not at least age 62 prior to his Severance Date or who elects to receive his annual retirement income commencing before the month following the month in which his 62nd birthday occurs shall receive an annual income commencing with any such month in an amount determined under Section 8(a)(ii)(B).

(iii)    <u>Minimum Benefit</u>.  If a Member's Accrued Benefit is determined under Section 4(d), then this Section shall be modified as provided in Section 4(d)(ii).

(iv)    <u>Benefit Commencement</u>.  Notwithstanding the foregoing, benefits shall commence with the latest of:

(A)    the month following the month in which the Member's Severance Date occurs,

(B)    the month following the month in which the Member receives the written election provided for in Section 5(c)(i), and

(C)    the month in which the Member returns his election of form of benefit.

The early commencement reduction, if any, in the amount of the benefit shall be determined as of the month in which benefit payments commence.

87

A-9.    <u>DISABILITY LEAVE</u>

(a)    <u>Determination of Disability</u>.  A Member who is a participant in the Company's long-term disability plan shall be deemed to have a Disability for purposes of this Plan if the entity making claims determinations under the Company's long-term disability plan determines that the Member qualifies for benefits under the long-term disability plan.  In all other cases, the Committee, in its absolute discretion after considering such medical evidence as the Committee deems necessary or desirable, shall determine whether a Member would qualify for benefits under the Company's long-term disability plan if he were covered by such plan.

(b)    <u>Status</u>.  A Member on Disability Leave shall be deemed an active Employee during his Disability Leave for purposes of this Plan.  A Member's Disability Leave shall terminate upon the first to occur of the following:

(i)    A determination that the Member no longer qualifies (or would qualify) for benefits under the Company's long-term disability plan.

(ii)    The date a Member receives a lump sum settlement of his benefit entitlements under the Company's long-term disability plan.

(iii)    The Member's failure to submit to periodic physical examinations scheduled for the Member by the Committee for the purpose of determining whether Disability continues.

(iv)    The later of the Member's Normal Retirement Date and the date long-term disability benefits cease due to expiration of the maximum term for which such benefits are payable.

(c)    <u>Average Annual Compensation</u>.  The Average Annual Compensation of a Member on Disability Leave shall be the amount determined on the earlier of the date his Disability Leave began or the Benefit Accrual Freeze Date.

88

A-10.    <u>TERMINATION OF EMPLOYMENT BENEFIT</u>

(a)    <u>Eligibility</u>

(i)    A Member shall have a nonforfeitable right to his Accrued Benefit upon the first to occur of:

(A)    his Normal Retirement Date, or

(B)    his completion of five years of Service.

(ii)    Notwithstanding the foregoing, a Member whose Accrued Benefit had become nonforfeitable under the terms of the Prior Plan or who had a greater nonforfeitable percentage under the terms of the Prior Plan shall have his nonforfeitable rights determined under the Prior Plan to the extent that continues to provide a greater nonforfeitable Accrued Benefit.

(b)    <u>Calculating Years of Service for Vesting</u>.

(i)    An Employee shall receive credit for all his years of Service except as provided in Section 10(b)(ii).

(ii)    If a Member has a Break in Service at a time when he does not have a nonforfeitable right to any portion of his Accrued Benefit, then he shall lose credit for his years of Service prior to such Break in Service.

(d)    <u>Commencement of Benefit and Cashouts</u>.

(i)    <u>Normal Retirement</u>.  See Section 10(d)(i)

(ii)    <u>Early Retirement</u>.  Upon attainment of his 55th birthday, a Member who terminates employment prior thereto may elect effective as of any month prior to his Normal Retirement Date that reduced benefits commence under Section 8(a)(ii).  Further, a Member who has completed 20 or more years of Service may elect unreduced benefits under Section 8(a)(i) provided he postpones commencement of benefits until the month following the month in which he attains age 62.  Benefit payments shall be made in the form provided under Section 5, subject to the limitations and provisions of Section 6.  In addition to the foregoing, a Member who meets the eligibility requirements set forth in Section 10(d)(iii)(A) shall  be eligible to elect the form of payment described under Section 10(d)(iii)(C).

(iii)    <u>Immediate Benefit Commencement</u>.

(B)    Immediate Annuity – If the Member is not married, the Member may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(i), Option A (Straight Life Annuity).  If the Member is married, the Member may elect to receive immediate

89

payment under either Section 5(a)(ii), Option B (Joint and 50% Survivor Annuity) or Section 5(a)(iii)(A), Option C (75% contingent annuitant option) (with the Member's spouse as the joint annuitant under either option).

An eligible surviving spouse may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(a)(i), Option A (Straight Life Annuity).

An alternate payee may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(a)(i), Option A (Straight Life Annuity).

The monthly benefit payable hereunder shall be determined under Section 4 as of December 1, 2012, adjusted pursuant to the annuity option elected under Section 5 and reduced pursuant to Schedule B for payment prior to the Member's Normal Retirement Date.

A-11.    DEATH BENEFITS

(a)    <u>Pre-Retirement Survivor Annuity</u>. The benefit provided under Section 11(a)
to a surviving spouse's shall not be less than the amount determined under Sections A-4(d)(iii) and (iv).

SCHEDULE A

Page 1

| ACQUIRED BUSINESS | (1)<br>RELATED<br>ENTITY DATE | (2)<br>PARTICIPATION<br>EFFECTIVE DATE |
|---|---|---|
| Hartzler Mortgage Company | 07/01/83 | 07/01/84 |
| CoreStates Financial Corp. | 06/01/85 | 06/01/86 |
| Norwest Corporation | 07/01/85 | 07/01/86 |
| Residential Funding Corporation | 03/01/90 | 03/01/91 |
| GMAC Capital Corporation | 09/01/90 | 09/01/91 |
| Warehouse Lending Corp. | 03/01/91 | 03/01/92 |
| Republic Realty Mortgage Corporation | 02/01/95 | 02/01/96 |
| Republic Realty Multifamily Corp. | 02/01/95 | 02/01/96 |
| Residential Money Centers, Inc. | 02/06/95 | 02/06/96 |
| Mortgage Service of America (MSA) | 10/01/95 | 10/01/96 |
| American Custody Corporations | 04/22/96 | 04/22/97 |
| Hanford/Healy Asset Management Company | 09/10/96 | 09/10/97 |
| Healy Holdings, L.P. HHC II | 09/10/96 | 09/10/97 |
| Residential Alliance | 09/22/97 | 09/22/98 |
| Mortgage Analytics, Inc. | 03/02/98 | 03/02/99 |
| Wells Fargo Company | 06/01/98 | 06/01/99 |
| McCracken Financial Software, Inc. | 04/10/98 | 04/10/99 |
| Main America Capital Company | 06/05/98 | 06/05/99 |
| Newman and Associates, Inc. | 07/01/98 | 07/01/99 |
| Newman Financial Services, Inc. | 07/01/98 | 07/01/99 |
| Silverstate Financial Corporation | 07/01/98 | 07/01/99 |
| Newman Mortgage Acceptance Corp. | 07/01/98 | 07/01/99 |
| Better Homes & Gardens Real Estate<br>   Services Company | 07/27/98 | 07/27/99 |
| Argonaut Relocation Services Company | 09/30/98 | 09/30/99 |
| EMRE, Inc. – Carlson Real Estate | 12/03/98 | 12/03/99 |
| EMRE of New Hampshire Corp – Norwood | 12/03/98 | 12/03/99 |
| EMRE of Western MA, Inc. –<br>   Landry, Lyons, Whyte | 12/03/98 | 12/03/99 |
| Morell & Associates, Inc. | 12/14/98 | 12/14/99 |
| Stearns & Yerrall | 02/05/99 | 02/05/00 |
| Capstead, Inc. | 01/01/99 | 01/01/00 |
| Bristol Realty Counselors | 01/08/99 | 01/08/00 |
| DiTech Funding Corporation | 04/01/99 | 04/01/00 |
| Quantum Financial Corporation | 04/30/99 | 04/30/00 |
| Bay Village Realty, Inc. | 05/31/99 | 05/31/00 |
| Kinlin Grover Real Estate, Inc. | 05/26/99 | 05/26/00 |
| The Relocation Assistance Cooperative,<br>   Inc. (T.R.A.C.) | 06/15/99 | 06/15/00 |

## SCHEDULE A

Page 2

| ACQUIRED BUSINESS | (1) RELATED ENTITY DATE | (2) PARTICIPATION EFFECTIVE DATE |
|---|---|---|
| Windham Consulting International, Inc. | 06/15/99 | 06/15/00 |
| Corporate Homes of America Relocation Management, Inc.  (CHA) | 07/02/99 | 07/02/00 |
| Dynes (VA) | 11/10/99 | 11/10/00 |
| Dallamora | 07/29/99 | 07/29/00 |
| Allan D. Dannatt & Company | 08/09/99 | 08/09/00 |
| Koenig & Strey Mortgage Services, Inc. | 08/09/99 | 08/09/00 |
| Pacific Union Real Estate | 03/01/00 | 03/01/01 |
| Hammond Residential Real Estate | 03/13/00 | 03/13/01 |
| ULG (CA) | 04/01/00 | 04/01/01 |
| Gloria Nilsen Realtors | 04/17/00 | 04/17/01 |
| Johnson & Johnson Realty | 07/17/00 | 07/17/01 |
| Solomon, Wilmington & Associates | 09/15/00 | 09/15/01 |
| Siery & Kiem | 10/24/00 | 10/24/01 |
| CSC Cypress Financial, Inc. | 12/01/00 | 12/01/01 |
| Univest Financial Services | 01/09/01 | 01/09/02 |
| Keystone Mortgage Partners | 02/02/01 | 02/02/02 |
| Paramount Financial Group | 03/12/01 | 03/12/02 |
| FASRE Field Services, Inc. | 04/06/01 | 04/06/02 |
| Carey Kramer Company | 08/09/01 | 08/09/02 |

Related Entity Date:     The acquired business shall be treated as a Related Entity for periods prior to and including the date shown below.

Effective Date:     The acquired business shall not be treated as a Related Entity for periods prior to and including to the date shown in Column (1) until the date shown in Column (2).  In the case of an asset acquisition, the grant of pre-acquisition credit shall only be effective for Employees on and after the date shown in Column (2) who became Employees not later than 30 days after the date shown in Column (1).

**SCHEDULE B**

**Reduction Factors Applicable
Under Subsection 10(d)(iii)**

| -- GMAC Mortgage Group LLC -- | | | | |
|---|---|---|---|---|
| **Age** | **Factor** | | **Age** | **Factor** |
| 65 | 1.00000 | | 42 | 0.10918 |
| 64 | 0.89276 | | 41 | 0.10030 |
| 63 | 0.79894 | | 40 | 0.09220 |
| 62 | 0.71658 | | 39 | 0.08479 |
| 61 | 0.64403 | | 38 | 0.07801 |
| 60 | 0.57994 | | 37 | 0.07181 |
| 59 | 0.52315 | | 36 | 0.06612 |
| 58 | 0.47270 | | 35 | 0.06091 |
| 57 | 0.42776 | | 34 | 0.05612 |
| 56 | 0.38765 | | 33 | 0.05173 |
| 55 | 0.35178 | | 32 | 0.04769 |
| 54 | 0.31963 | | 31 | 0.04399 |
| 53 | 0.29076 | | 30 | 0.04058 |
| 52 | 0.26480 | | 29 | 0.03744 |
| 51 | 0.24141 | | 28 | 0.03455 |
| 50 | 0.22031 | | 27 | 0.03190 |
| 49 | 0.20124 | | 26 | 0.02945 |
| 48 | 0.18398 | | 25 | 0.02719 |
| 47 | 0.16835 | | 24 | 0.02511 |
| 46 | 0.15417 | | 23 | 0.02320 |
| 45 | 0.14128 | | 22 | 0.02143 |
| 44 | 0.12957 | | 21 | 0.01980 |
| 43 | 0.11890 | | | |

Reduction factors shown above are for whole ages.  Actual reduction will be based on age using completed full months as of the Annuity Starting Date

94

**APPENDIX B**

**PLAN PROVISIONS SPECIFIC TO THE PL SUB-PLAN**
**(Formerly the separate GMAC Insurance Personal Lines – Pension Plan)**

**PREAMBLE**

Effective January 1, 2012, the Plan has been amended and restated to consolidate the formerly separate provisions of the PL Sub-Plan and MG Sub-Plan.  Accordingly, the provisions of the Plan specific to the PL Sub-Plan are hereby incorporated into this restated Plan as this Appendix B.

B-1.    <u>DEFINITIONS</u>

Except as otherwise set forth in this Appendix B, defined terms will have the meaning set forth in Section 1 of the Plan.  In the event of any conflict between the Plan and this Appendix B, Appendix B will govern.

(a)    "<u>Accrued Benefit</u>" shall mean, pursuant to Section 1(a), the benefit earned by the Member as of the earlier of the Member's Break in Service or the Benefit Accrual Freeze Date.

(b)    "<u>Actuarially Equivalent Amount</u>" shall mean, pursuant to Section 1(b), for purposes of converting from one form of annuity to another or when changing from one Annuity Starting Date to another amount equal in value, using the 1971 Group Annuity Mortality Table, set back 3 years for males and females; pre-retirement rate: 7% and post-retirement rate: 7%.

(f)    "<u>Average Annual Compensation</u>" shall mean the annual Compensation of a Member averaged over the 60 consecutive calendar months in the last 120 calendar months of Service with a Participating Company (as determined for benefit accrual purposes) prior to the earlier of termination of Service with a Participating Company (or during the total number of calendar months of Service prior to termination of Service with a Participating Company if less than 60 months) or the Benefit Accrual Freeze Date which gives the Member the highest annual average. All months in which the Member performs no services for the Participating Company shall be disregarded in determining both the 60-month and 120-month periods

(g)    "<u>Benefit Accrual Freeze Date</u>" shall mean December 31, 2006, the date on which the Member ceased to accrue benefits by reason of an amendment to the Plan, as set forth in Section B-4(c).

(i)    "<u>Break in Service</u>" shall occur on the date an Employee terminates employment, provided the Employee does not resume employment prior to the expiration of 12 consecutive months beginning on the date of termination.  Notwithstanding the foregoing:

(i)    The Service of any Employee, the continuity of whose Service has been interrupted and resumed prior to the expiration of 12 consecutive months, shall include Service prior to such interruption and in such case the period of interruption shall be included as Service.

(ii)    The Service of an Employee, the continuity of whose Service has been interrupted for at least 12 consecutive months and resumed prior to the expiration of 60 consecutive

months, shall include Service prior to such interruption; provided, however, that the period of such interruption shall not count as Service.

(iii)    The Service of an Employee, the continuity of whose Service has been interrupted and resumed after the expiration of 60 consecutive months, shall include Service prior to such interruption if (a) the Employee's period of Service, whether or not consecutive, completed before the interruption exceeds the period of interruption, or (b) the Employee had a non-forfeitable right to an accrued benefit under Article 8 at the time of his interruption of Service; provided, however, that the period of such interruption shall not count as Service.

(iv)    If an interruption in an Employee's Service is because of the pregnancy of the Employee, the birth of a child of the Employee, or the placement of a child with the Employee in connection with the adoption of such child by the Employee, or for purposes for caring for such child for a period beginning immediately following such birth or placement, the Employee shall be entitled to credit for Service for the period of such interruption if the Employee resumes employment on or before the second anniversary of such interruption. If in such case the Employee does not resume employment on or before the second anniversary of such interruption, then the Employee shall be entitled to credit for Service only from the date of the interruption of employment until the first anniversary of such date. The period between the first and second anniversaries of the interruption shall be neither a period of Service nor period of interrupted Service, and the period of interruption shall be deemed to begin on the second anniversary of the date such interruption began.

(n)    "Compensation" for a Plan Year shall mean, subject to Section 1(m), compensation from the Participating Company (taxable wages within the meaning of Code Section 3401(a)) for services rendered, excluding shift differentials, commissions and bonuses, overtime pay or special pay. "Compensation" shall also include amounts excluded from such compensation under Code Sections 125, 132(f)(4), 402(a)(8), 402(h), or 403(b), and contributed by the Participating Company, at the Employee's election to a Code Section 401(k) arrangement, a Simplified Employee Pension Plan, a cafeteria plan or a tax-sheltered annuity.

Effective for benefits accruing in Plan Years beginning after December 31, 1988, the annual Compensation of each Member taken into account under the Plan for any year shall not exceed $200,000. Effective for benefits accruing in Plan Years beginning after December 31, 1993, the annual Compensation of each Member taken into account under the Plan for any year shall not exceed $150,000. Any adjustment by the Secretary of the Treasury to the $200,000 amount or $150,000 amount consistent with the provisions of Section 415(d) of the Code shall apply to the limitations set forth in this

Section 15.8.  Notwithstanding any other provision in the Plan, each "Section 401(a)(17) Employee's" accrued benefit under this Plan will be the sum of:

(i)        the Employee's accrued benefit as of the last day of the last Plan Year beginning before January 1, 1994, frozen in accordance with Section 1.401(a)(4)-13 of the regulations, and

(ii)        the Employee's accrued benefit determined under the benefit formula applicable for the Plan Year beginning on or after January 1, 1994, as applied to the Employee's Years of Service credited to the Employee for Plan Years beginning on or after January 1, 1994, or purposes of benefit accruals.

A "Section 401(a)(17) Employee" means an Employee whose current accrued benefit as of a date on or after the first Plan Year beginning on or after January 1, 1994, is based on Compensation for a year beginning prior to the first day of the first Plan Year beginning on or after January 1, 1994, that exceeded $150,000.

For Plan Years prior to January 1, 1989, the $200,000 limit on "Compensation" as described in Section 1(m), shall apply only for those Plan Years in which the Plan is deemed to be a Top-Heavy Plan.

"Compensation" as used herein shall only include those amounts received prior to the earlier of termination of Service with a Participating Company or the Benefit Accrual Freeze Date.

(q)        "Early Retirement Date" shall mean the date on which a Member has both attained age 55 and completed ten years of Service.

(r)        "Employee" shall not include any non-United States citizen employed outside the United States, nor shall the term include any individuals included in a unit of employees covered by a collective bargaining agreement unless such agreement expressly requires that the individuals be treated as Employees for the purposes of the Plan.

(ai)        "Prior Plan" shall mean the GMAC Insurance Personal Lines – Pension Plan as in effect prior to January 1, 2010 and the NAVCO Corp. Pension Plan as in effect prior to January 1, 2001.

(am)        "Service" shall mean Service as determined under Section B-3 for eligibility, Section B-4(c) for benefit accrual purposes and Section B-10(b) for vesting purposes.  The determination that any period of time shall be included as Service shall be separately made for

(i)        eligibility to participate,

98

(ii)  benefit accrual, and

(iii)  vesting.

Any such determination may differ with respect to each. If any period of Service prior to an interruption of employment is not taken into account as Service upon the resumption of employment, such period shall not be taken into account for any purpose at the end of any subsequent interruption of employment.

(ao)  "<u>Social Security Covered Compensation</u>" shall mean, with respect to a Member, the Social Security Covered Compensation determined as of the earlier of

(i)  his termination of Service, or

(ii)  the Benefit Accrual Freeze Date.

(ap)  "<u>Social Security Retirement Age</u>" shall mean the retirement age of a Member under Section 216(1) of the Social Security Act, except that such Section shall be applied without regard to the age increase factor, and as if the early retirement age of Section 216(1 )(2) of such Act were age 62. For purposes of this Plan, the Social Security Retirement Age of any Plan Member is (i) age 65 for Members born prior to 1938; (ii) age 66 for Members born between 1938 and 1954; and (iii) age 67 for Members born after 1954.  Further, an earlier date might be used subject to appropriate modification of the terms of the option.

B-3.        <u>PARTICIPATION IN THE PLAN</u>

(a)        <u>General Eligibility.</u>  Pursuant to Section 3, participation in the Plan is frozen as of the Benefit Accrual Freeze Date.  Prior to the Benefit Accrual Freeze Date, Employees became Members of the Plan on the Entry Date coincident with or next following the date the Employee met the participation requirements, as outlined below:

(i)        The attainment of age 21.

(ii)        The completion of one year of service for eligibility, which was a consecutive 12-month period measured from the date of employment, in which an Employee was paid for 1,000 Hours of Service.  However, if less than 1,000 Hours of Service were worked during that period, the service requirement was measured in the Plan Year next following the Employee's date of employment.

The Entry Dates were the first day of each calendar month.  The last Entry Date on which an Employee became a Member of the Plan was December 1, 2006.

(b)        <u>Status Change.</u>  In the event an Employee not eligible to participate in the Plan subsequently became eligible, such Employee became a Member immediately, provided the requirements of paragraph (a) had been met.

(c)        <u>Integon Corporation.</u>  Notwithstanding the foregoing, no employee of Integon Corporation was eligible to become a Member of the Plan prior to January 1, 2001.

B-4.        NORMAL RETIREMENT

(a)        Eligibility.  A Member is eligible for a benefit upon attainment of Normal

Retirement Age, which is the date on which the Member attains age 65, provided that if an Employee first

becomes a Member after his 60th birthday, he shall attain Normal Retirement Age on the date which is five

(5) years subsequent to the date he first becomes a Member.

(b)        Calculation of Accrued Benefit.

(i)        General Rule.  Benefits under the Plan cease to accrue after the

Benefit Accrual Freeze Date.  The Accrued Benefit of a Member earned as of the earlier of the date the

Member terminates Service or the Benefit Accrual Freeze Date who retires under Section A-4(a),

expressed as an annual amount, is equal to the product of (A) and (B), but not less than (C), below:

(A)        1.2% of his Final Average Compensation less 0.3% of

Final Average Compensation up to Social Security Covered Compensation

(B)        Years of Service (including all Service under the Prior

Plan) up to a maximum of 35 years.

(C)        His total benefit accrued under the Prior Plan.

If a Member has, as of the end of any Plan Year, attained Normal

Retirement Age, and if distribution of a benefit has commenced to the Member as of the end of such Plan

Year, any benefit accrual for such Plan Year required under this Section shall be reduced (but not below

zero) by the Actuarial Equivalent of the total benefit distributions made to the Member by the close of the

Plan Year, in accordance with regulations prescribed by the Secretary of the Treasury.

(ii)        Final Average Compensation.  For purposes of this Section B-4,

Final Average Compensation shall mean the Average Annual Compensation of an Employee during the 60

consecutive calendar months of Service in the last 120 calendar months of Service with a Participating

Company immediately preceding his retirement (or during the total number of calendar months of Service

with the Participating Company if less than 60 months) affording the highest Average Annual

Compensation.

(c)        Crediting Service for Benefit Accrual.

(i)        An Employee's period of Service begins on his Employment

Commencement Date and shall end on the earlier of his termination of Service with a Participating

Company and the Benefit Accrual Freeze Date. Years of Service for benefit accrual purposes prior to such time shall be determined based on the basis of completed whole and fractional (to two decimal places) years of Service (thus, six years and 250 days of service will be treated as 6.68 years of Service for benefit accrual purposes).

(ii)    If a Member has a Break in Service at a time when he does not have a nonforfeitable right to any portion of his Accrued Benefit, then he shall lose credit for his years of Service prior to such Break in Service.  Credit for Service subsequent to a Break in Service or that otherwise has been interrupted shall be made pursuant to the provisions of Section B-1(i)

(iii)    A period of authorized leave of absence (not including medical leave of absence) not in excess of 24 months granted by the Participating Company on a uniform and nondiscriminatory basis, shall be counted as accrual service if the Employee resumes his Service as an Employee at the end of such leave of absence.

(iv)    A period of authorized medical leave of absence approved by the Participating Company for a period not in excess of 30 months shall be counted as accrual service.

(v)    Service shall not include any period of employment with Integon Corporation prior to January 1, 2001 (provided, that notwithstanding any other provision of the Plan, for the purpose of determining Average Annual Compensation, Compensation from Integon Corporation shall be recognized, but only for the seven year period prior to January 1, 2001). Thus, for the purpose of determining whether Service with Integon Corporation on or after January 1, 2001, shall be taken into account as Service for benefit accrual purposes, any Service with Integon Corporation prior to January 1, 2001, shall be disregarded.

(vi)    Service shall also include employment as an employee of a corporation or other business entity, all the assets or capital stock of which have been acquired by the Company prior to January 1, 1991, or, with a corporation or business entity, the underwriting management of which has been assumed by the Company prior to such date, provided the employee entered the employ of a Participating Company as an Employee at or about the time of acquisition of such assets or capital stock or the assumption by the Company of such underwriting management and has continued as an Employee.

(vii)    Service shall not include any period of employment with a Related Entity participating in the Plan (other than GMAC Insurance Management Corporation, formerly named NAVCO Corp.) prior to the time such Related Entity began participation in the Plan except to the extent: (i) determined from time to time by the Board of Directors of the Company; or (ii) required by applicable

102

law; or (iii) provided under the Prior Plan; or (iv) expressly provided for under this Plan.

(viii)    If the Employee has fewer than 1000 Hours of Service during his initial measuring period for determining Years of Eligibility Service, his Service for benefit accrual purposes shall not include any Service before the first day of the first measuring period during which he has 1000 Hours of Service.

(ix)    Service shall include all service recognized by the Prior Plan for benefit accrual.  Under the Prior Plan, service with GMAC Insurance Management Corporation (then named NAVCO Corp.), National General Marketing, Inc. and National General Insurance Company began to be recognized effective January 4, 1984, for benefit accrual purposes. Therefore, no Member is entitled to credit for service for benefit accrual purposes prior to January 4, 1984, based on Prior Plan benefit accrual service, unless such service was credited under the Prior Plan based on service with an employer other than GMAC Insurance Management Corporation (then named NAVCO Corp.), National General Marketing, Inc. or National General Insurance Company.

(e)    Benefits Payable From Other Plans.  It is recognized that this Plan received assets transferred from the Prior Plan. Accordingly, notwithstanding anything contained herein to the contrary, a Member's benefit hereunder shall be no less than the benefit the Member would have received under the Prior Plan had the Prior Plan terminated immediately prior to the transfer of such assets.

(f)    Re-employment After Retirement.    If any retired Member returns to employment with a Participating Company after his Early Retirement Benefit has commenced, but prior to his Normal Retirement Date, payment of his monthly benefit shall cease and any election of a Qualified Joint and Survivor Annuity or an Optional Form of Benefit shall become void to the extent permitted by the Code. Any Service to which he was entitled when he retired shall be restored to him and, upon subsequent retirement, his monthly benefit shall be based on his Compensation and Service before and after the period of prior retirement, but reduced by an amount which is the Actuarial Equivalent of the monthly benefit payments received by such Member during the period of prior retirement; provided, however, that if such Member received a Disability Retirement Benefit during the period of prior retirement, no such reduction shall be made. Notwithstanding the foregoing, the portion of a Member's monthly benefit upon subsequent retirement payable with respect to Service rendered before the period of prior retirement shall not be less than the Member's monthly benefit for the period of prior retirement adjusted for any Qualified Joint and Survivor Annuity or Optional Form of Benefit in effect on his subsequent retirement.

If any retired Member returns to employment with a Participating Company

and is paid or entitled to payment for the performance of services for 40 or more Hours of Service on or after his Normal Retirement Date, the Member's monthly benefit shall be discontinued until his actual later retirement date.

5.        <u>BENEFIT DISTRIBUTION</u>

    (a)        <u>Retirement Income:</u>  See Section 5(a)

        (i)        <u>Option A (Straight Life Annuity)</u>:  See Section 5(a)(i)

        (ii)        <u>Option B (Qualified Joint and 50% Survivor Annuity)</u>:  See Section 5(a)(ii)

        (iii)        <u>Option C (Other Forms of Payment)</u>:  A Member may elect to receive an optional form of payment described below.  The amount payable under this Option C shall be the Actuarially Equivalent Amount of the amount payable under Option A.

        (A)        <u>Joint and Survivor Annuity</u>.  A reduced rate of annual retirement income, payable monthly, with income equal to 50%, 66 2/3%, 75% or 100%, whichever the Member elects, of that reduced rate continuing to a designated contingent annuitant including the Member's spouse.  If a contingent annuitant is other than the Member's spouse, the reduction in the Member's retirement income shall not exceed 50%.  No contingent annuitant may receive a greater rate of retirement income than the Member.  If the contingent annuitant dies before the Member, but after the retirement of such Member, the reduced retirement income shall continue to be paid in accordance with Option C.

        (B)        <u>Life and Period Certain</u>.  A reduced rate of annual retirement income, payable monthly, with 60 or 120 monthly payments, whichever the Member elects, guaranteed, provided, however, that no guaranteed payment period shall be over a period longer than the Member's life expectancy.  A Member shall designate a beneficiary to receive any benefit payable under this option after the Member's death.  Such designation shall be made and applied pursuant to the provisions of Section 11(c) and (d).

        (C)        <u>Level Income Basis</u>.  A Member who retires prior to the age at which he first is eligible to receive reduced social security payments may elect, under Options A, B, or C, to receive the Actuarial Equivalent Amount of his annual retirement income on a "level income basis" under which the annual retirement income will be increased for the period of time from his retirement until the Member becomes eligible to receive reduced social security payments at which time the annual retirement income will be decreased.  The amount of the increase and the decrease will be such that the Member's annual retirement income prior to eligibility to receive reduced social security payments will be approximately equal to the Member's combined annual retirement income and the amount of social security payments which he is then eligible to receive.

The date Social Security benefits are expected to commence is the first day of the month next following the Member's attainment of Social Security Retirement Age.  The option must be elected by the Member prior to his Early Retirement Date and becomes effective on his Early Retirement Date.

Payments under this option consist of two parts, (i) a life annuity with payments commencing on the Member's Early Retirement Date and continuing for his lifetime, and (ii) a temporary annuity with payments commencing on his Early Retirement Date and continuing until the earlier of the date Social Security Benefits are expected to commence or until his death. The yearly amount of the life annuity is equal to the excess of the monthly benefit which would be payable to the Member if no option were in effect over the product of the Member's expected yearly Primary Social Security Insurance Benefit and the applicable Social Security Factor. The yearly amount of the temporary annuity shall be equal to the amount of the Member's expected yearly Primary Social Security Insurance Benefit.

In the event the Member is married and does not elect through a qualified election to waive the Qualified Joint and Survivor Annuity on his Early Retirement Date, the yearly amount of the monthly benefit payable to the Member in the form of a temporary annuity is as described above, and the yearly amount payable in the form of the life annuity is equal to the excess of the amount payable to the Member during his life under Qualified Joint and Survivor Annuity over the product of the Member's expected yearly Primary Social Security Insurance Benefit and the applicable Social Security Factor. The monthly amount payable to the Member's spouse following the Member's death will be determined as if the Level Income Basis option were not in effect.

If the amount of the life annuity determined in accordance with the procedure described above is zero, then only the temporary annuity will be payable to the Member. Notwithstanding the forgoing, the amount of the temporary annuity shall be Actuarially Equivalent to the Straight Life Annuity payable to the Member, or, if the Qualified Joint and Survivor Annuity is not waived, the amount of the temporary annuity will be reduced so that actuarial value of the sum of the temporary annuity and the spouse's annuity (which is equal to the monthly benefit payable to the Member's spouse following the Member's death under the Qualified Joint and Survivor Annuity) is equal to the actuarial value of the Qualified Joint and Survivor Annuity.

(f)      Commencement of Benefit. Subject to the provisions of Section 5(f), if the amount of the payment required to commence under the Plan cannot be ascertained by such date, or if it is not possible to make such payment on such date because the Committee has been unable to

locate the Member after making reasonable efforts to do so, a payment retroactive to a "retroactive annuity starting date" shall be made in accordance with this Section no later than 60 days after the earliest date on which the amount of such payment can be ascertained under the Plan or the date on which the Member is located, whichever is applicable.

For purposes of this Section, a "retroactive annuity starting date" is an annuity starting date affirmatively elected by a Member that occurs on or before the date the written explanation required by section 417(a)(3) of the Code is provided to the Member. If a Member elects a retroactive annuity starting date, future periodic payments with respect to the Member electing the retroactive annuity starting date shall be the same as the future periodic payments, if any, that would have been paid with respect to the Member had payments actually commenced on the retroactive annuity starting date. The Member shall receive a make-up payment to reflect any missed payment or payments for the period from the retroactive annuity starting date to the date of the actual make-up payment with an adjustment for interest from the date the missed payment or payments would have been made to the date of the actual make-up payment (for such purpose the interest rate shall be the interest rate that would be used under Section 1(b) to determine the amount of a single sum payment payable as of the retroactive annuity starting date). Thus, the benefit determined as of the retroactive annuity starting date must satisfy the requirements of Section 417(e)(3) of the Code, if applicable, and Section 415 Code, as reflected in the Plan with the applicable interest rate and applicable mortality table determined as of that date. A Member may not elect a retroactive annuity starting date that precedes the date upon which the Member could have otherwise started receiving benefits under the terms of the plan in effect as of the retroactive annuity starting date. If the Member's spouse as of the retroactive annuity starting date would not be the Member's spouse determined as if the date distributions commence was the Member's annuity starting date, consent of such former spouse is not needed to waive the Qualified Joint and Survivor Annuity with respect to the retroactive annuity starting date, unless otherwise provided under a qualified domestic relations order, as defined in Section 414(p) of the Code ("QDRO").

Notwithstanding the foregoing, the failure of a Member (and spouse, if applicable) to consent to a distribution under Section 5(c) shall be deemed to be an election to defer commencement of payment of any benefit sufficient to satisfy this Section B-5(f).

B-8.      EARLY RETIREMENT

(a)      Eligibility.  Each Member who terminates employment with all Participating Companies and Related Entities on or after his Early Retirement Date but prior to his Normal Retirement Date shall be eligible to receive a pension commencing with any month following the month in which his termination of employment occurs, determined as follows:

(i)      Unreduced Benefit.  If a member elects to defer commencement of payment of his benefit to Normal Retirement Date there will be no reduction in the amount of his annual benefit.

(ii)      Reduced Benefit.   A Member who elects to commence payment prior to Normal Retirement Date shall be entitled to receive an annual retirement income in an amount equal to the amount calculated under Section 4 as of the earlier of his termination of Service or the Benefit Accrual Freeze Date, reduced by, and subject to a maximum reduction 50%, the sum of:

(A)      1/2 of 1% of such amount for each of the first 60 months the Member's Annuity Starting Date precedes the Member's Normal Retirement Date, plus

(B)      1/3 of 1% of such amount for each of the next 60 months the Member's Annuity Starting Date precedes the Member's Normal Retirement Date.

(iii)      Minimum Benefit.  The benefit payable hereunder to a Member on an Early Retirement Date shall in no event be less than the amount which would have been payable to such Member if he retired on any prior date on which he was eligible to retire in accordance with the Plan.

(iv)      Benefit Commencement.  Notwithstanding the foregoing, benefits shall commence with the latest of:

(A)      the month following the month in which the Member's termination of employment occurs,

(B)      the month following the month in which the Member receives the written election provided for in Section 5(c)(i), and

(C)      the month in which the Member returns his election of form of benefit.

The early commencement reduction, if any, in the amount of the benefit shall be determined as of the month in which benefit payments commence.

B-9.        <u>DISABILITY LEAVE</u>

(a)        <u>Determination of Disability</u>.  A Member who has not reached Normal Retirement Age but who has completed at least 10 years of Service (as determined for vesting purposes) shall, in the event of his Total Disability, be eligible to receive a Disability Benefit commencing on his Disability Date. A Member's Disability Date shall be the first day of the calendar month next following receipt by the Committee of written application therefor made by the Member.  For purposes of this Plan, the term "Total Disability" shall mean that the Member is qualified to receive benefits for total disability under the Company's insured, long-term disability welfare benefit plan.

(b)        <u>Status</u>.  The Disability Benefit payable to a Member is a life annuity in the form of a monthly payment commencing on his Disability Date and continuing to the earliest of:

(i)        his date of death,

(ii)        his Early Retirement Date (if the Member elects Early Retirement),

(iii)        his Normal Retirement Date, or

(iv)        the first day of the month following a determination by the Administrator that the Member has recovered from his Disability.

The amount of monthly Disability Benefit shall be equal to the benefit (unreduced) which has accrued for a Member based on Compensation and Service as of the earlier of his Disability Date or the Benefit Accrual Freeze Date, and shall be paid in the form as provided under Section 5(a)(i) (without the right to elect an Optional Form of Benefit and without the application of Section 5).

If the Member is still living and still receiving monthly Disability Benefit payments, his retirement  shall occur on his Normal Retirement Date (or, if the Member so elects, on his Early Retirement Date) and the benefit commencing on his Normal Retirement Date shall be the benefit based on Compensation and Service as of the earlier of his Disability Date or the Benefit Accrual Freeze Date (or, if the Member elects Early Retirement, based on such Compensation and Service, and reduced as provided in Section 8(b)). Such benefit payable at Normal Retirement Date or Early Retirement Date shall be subject to the payment provisions of Section 5.1.

In the event of the death of a disabled Member on or after his Disability Date but prior to his Normal Retirement Date (and prior to an Early Retirement Date elected by the Member), the disabled Member's spouse shall be entitled to a survivor annuity under the provisions of Section 11, based on the Member's Compensation and Service as of the earlier of his Disability Date or the Benefit Accrual Freeze Date.

B-10.    <u>TERMINATION OF EMPLOYMENT BENEFIT</u>

(a)    <u>Eligibility</u>

(i)    A Member shall have a nonforfeitable right to his Accrued Benefit upon the first to occur of:

(A)    his Normal Retirement Date, or

(B)    his completion of five years of Service.

(ii)    Notwithstanding the foregoing, effective with the divestiture of the GMAC Personal Line business on March 1, 2010, all active Members of the Plan on such date who remain employed with the Personal Lines business follow the divestiture are 100% vested in their Accrued Benefit under the Plan.

(b)    <u>Calculating Years of Service for Vesting</u>.

(i)    An Employee shall receive credit for all his years of Service except as provided herein. An Employee's period of Service begins on his Employment Commencement Date and shall end on his termination of Service with the Company, except as provided herein. Years of Service for vesting purposes prior to such time shall be determined based on the basis of completed whole years of Service (thus, four years and 250 days of service will be treated as four years of Service for vesting purposes).

(ii)    If a Member has a Break in Service at a time when he does not have a nonforfeitable right to any portion of his Accrued Benefit, then he shall lose credit for his years of Service prior to such Break in Service.  Credit for Service subsequent to a Break in Service or that otherwise has been interrupted shall be made pursuant to the provisions of Section B-1(i)

(iii)    A period of authorized leave of absence (not including medical leave of absence) not in excess of 24 months granted by the Participating Company on a uniform and nondiscriminatory basis shall be counted as vesting service if the Employee resumes his Service as an Employee at the end of such leave of absence.

(iv)    A period of authorized medical leave of absence approved by the Participating Company for a period not in excess of 30 months shall be counted as vesting service.

(v)    Service for vesting purposes shall also include Service with Integon Corporation prior to January 1, 2001. Paragraphs (b) through (e) of this Section 10.1 provide for credit for Service during periods of interruption of Service, or credit for prior Service, under certain circumstances, if the Employee has prior Service.

110

(vi)    For the purpose of determining the Employee's Service for vesting purposes, Service shall also include employment with any corporation, which together with a Participating Company, would be deemed to be a member of a controlled group of corporations within the meaning of Section 1563(a) (determined without regard to Sections 1563(a)(4) and (e)(3)(C)) of the Code, commencing with the date on which such corporation would be deemed to be a member of such controlled group, provided such Service would have counted as Service had such person been an Employee of the Company during such period. As required by regulations under Section 414(c) of the Code, Service for vesting purposes (but not for accrual purposes) shall also include similar employment with unincorporated trades or business under common control with a Participating Company.

(vii)    Service shall also include employment as an employee of a corporation or other business entity, all the assets or capital stock of which have been acquired by the Company prior to January 1, 1991, or, with a corporation or business entity, the underwriting management of which has been assumed by the Company prior to such date, provided the employee entered the employ of a Participating Company as an Employee at or about the time of acquisition of such assets or capital stock or the assumption by the Company of such underwriting management and has continued as an Employee.

(viii)    Service shall not include any period of employment with a Related Entity participating in the Plan (other than GMAC Insurance Management Corporation, formerly named NAVCO Corp.) prior to the time such Related Entity began participation in the Plan except to the extent: (i) determined from time to time by the Board of Directors of the Company; or (ii) required by applicable law; or (iii) provided under the Prior Plan; or (iv) expressly provided for under this Plan.

(viii)    Service shall not include any period of employment with a Related Entity participating in the Plan (other than GMAC Insurance Management Corporation, formerly named NAVCO Corp.) prior to the time such Related Entity began participation in the Plan except to the extent: (A) determined from time to time by the Board of Directors of the Company; or (B) required by applicable law; or (C) provided under the Prior Plan; or (D) expressly provided for under this Plan.

(ix)    If an Employee becomes a Member on or after January 1, 1976, for the purposes of the Vested Benefit Percentage, "Years of Service" shall include any years of employment prior to the effective date of the Plan which would have been credited to him as a "Year of Service" assuming the Plan had always been in effect and the Employee had become a Member on the date he first would have satisfied the Eligibility Requirements. "Years of Service" for vesting purposes shall also include all years subsequent to the later of the date the Member was hired and the date the Member

111

attained age eighteen (18).

    (d)    <u>Commencement of Benefit and Cashouts</u>.

    (i)    <u>Normal Retirement</u>.  See Section 10(d)(i)

    (ii)    <u>Early Retirement</u>.  A Member who terminates Service after completion of ten (10) years of Service as determined for vesting purposes but prior to attainment of age fifty-five (55) may elect that his benefit shall commence upon his Early Retirement Date (at or after attainment of age fifty-five (55)) as provided in Section 8(a).

    The amount of the benefit payable to a Member who elects to receive his benefit on a date prior to his Normal Retirement Date shall be reduced as provided in Section 8(b) of the Plan.

    The amount of the benefit payable hereunder to a Member on any retirement date shall in no event be less than the amount which would have been payable to him if his retirement date had occurred on any prior date on which he was eligible to retire in accordance with the Plan.

    A benefit commencing on or after a Member's Early Retirement Date shall be payable in the same form as described under Section 5, including the right to elect an Optional Form of benefit, and subject to the remaining provisions of Section 5.

    In addition to the foregoing, a Member who meets the eligibility requirements set forth in Section 10(d)(iii)(A)  shall be eligible to elect the form of payment described under Section 10(d)(iii)(C).

    (iii)    <u>Immediate Benefit Commencement</u>.

    (B)    Immediate Annuity – If the Member is not married, the Member may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(i), Option A (Straight Life Annuity).  If the Member is married, the Member may elect to receive immediate payment under either Section 5(a)(ii), Option B (Joint and 50% Survivor Annuity) or Section 5(a)(iii)(A), Option C (75% contingent annuitant option) (with the Member's spouse as the joint annuitant under either option).

    An eligible surviving spouse may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(a)(i), Option A (Straight Life Annuity).

    An alternate payee may elect pursuant to Section 10(d)(iii)(D) to receive immediate payment under Section 5(a)(i), Option A (Straight Life Annuity).

The monthly benefit payable hereunder shall be determined under Section 4 as of December 1, 2012, adjusted pursuant to the annuity option elected under Section 5 and reduced pursuant to Schedule A for payment prior to the Member's Normal Retirement Date.

113

B-11.    DEATH BENEFITS

      (a)    <u>Pre-Retirement Survivor Annuity</u>. The benefit provided under Section 11(a) to a surviving spouse's shall only be provided if such Member and his spouse have been married for at least one year as of the Member's date of death.

      (e)    <u>Manner and Form of Payment</u>.

         (iii)    If a beneficiary who becomes entitled to payment following the death of a Member so requests, or if the beneficiary is an estate, trustee or institution, the Plan shall pay the commuted value of such payments in one lump sum to such beneficiary in lieu of any remaining annuity payments.

114

**SCHEDULE A**

**Reduction Factors Applicable
Under Subsection 10(d)(iii)**

| -- GMAC Insurance - Personal Lines -- | | | | |
|---|---|---|---|---|
| **Age** | **Factor** | | **Age** | **Factor** |
| 65 | 1.00000 | | 42 | 0.13119 |
| 64 | 0.89959 | | 41 | 0.12154 |
| 63 | 0.81122 | | 40 | 0.11266 |
| 62 | 0.73318 | | 39 | 0.10448 |
| 61 | 0.66405 | | 38 | 0.09694 |
| 60 | 0.60261 | | 37 | 0.08998 |
| 59 | 0.54785 | | 36 | 0.08356 |
| 58 | 0.49890 | | 35 | 0.07763 |
| 57 | 0.45505 | | 34 | 0.07214 |
| 56 | 0.41566 | | 33 | 0.06706 |
| 55 | 0.38021 | | 32 | 0.06237 |
| 54 | 0.34823 | | 31 | 0.05801 |
| 53 | 0.31933 | | 30 | 0.05398 |
| 52 | 0.29317 | | 29 | 0.05024 |
| 51 | 0.26944 | | 28 | 0.04677 |
| 50 | 0.24789 | | 27 | 0.04355 |
| 49 | 0.22829 | | 26 | 0.04056 |
| 48 | 0.21042 | | 25 | 0.03778 |
| 47 | 0.19413 | | 24 | 0.03520 |
| 46 | 0.17924 | | 23 | 0.03280 |
| 45 | 0.16561 | | 22 | 0.03057 |
| 44 | 0.15314 | | 21 | 0.02850 |
| 43 | 0.14170 | | | |

Reduction factors shown above are for whole ages.  Actual reduction will be based on age using completed
full months as of the annuity starting date.

115

### EMPLOYEES' RETIREMENT PLAN FOR GMAC MORTGAGE GROUP LLC

### (Amended and Restated Effective January 1, 2012)

### Amendment No. 1

The Ally Employee Benefits Committee adopted the Employees' Retirement Plan for GMAC Mortgage Group LLC as amended and restated effective January 1, 2012 (the "MG Plan") on December 10, 2012.

GMAC Mortgage Group LLC, a wholly-owned subsidiary of Ally Financial Inc. and formerly known as GMAC Mortgage Group, Inc. and GMAC Mortgage Corporation, is the sponsor of the MG Plan and has served in that capacity since January 1, 1986, when it acquired all of the outstanding stock of the original MG Plan sponsor, Colonial Mortgage Service Company a/k/a GMAC Mortgage Corporation of PA.

GMAC Mortgage Group LLC remained the MG Plan sponsor even after its December 31, 2009 merger of the GMAC Insurance Personal Lines – Pension Plan and sale of the Personal Lines business on March 1, 2010.

However, subsequent to the sales and liquidation of the various businesses comprising the mortgage operations of Ally, GMAC Mortgage Group LLC will hold no entities.

Consequently, by action dated June 21, 2013, the EBC amended the MG Plan as follows effective July 1, 2013:

Section 1(m), which previously identified the "Company" as GMAC Mortgage Group LLC will now read:

"Company" shall mean Ally Financial Inc., a Delaware corporation, and any successor thereto. For purposes of the MG Sub-Plan in Appendix A, however, "Company" shall mean GMAC Mortgage Group LLC for periods prior to July 1, 2013 and for purposes of the PL Sub-Plan in Appendix B "Company" shall mean GMAC Insurance Personal Lines for periods prior to February 28, 2010.

With this change, Ally Financial Inc., rather than GMAC Mortgage Group LLC, will serve as sponsor of the MG Plan for all purposes effective July 1, 2013.

Executed this 24 day of June, 2013 as authorized by the EBC on June 21, 2013.

Suzanne Seitz
Ally Senior Director, Global Benefits and
International Total Rewards