Hearing Date: November 7, 2013 at 2:00 p.m. (ET)
Response Deadline: October 15, 2013 at 4:00 p.m. (ET)

MORRISON & FOERSTER LLP

1290 Avenue of the Americas

New York, New York 10104

Telephone: (212) 468-8000

Facsimile: (212) 468-7900

Gary S. Lee

J. Alexander Lawrence

Kayvan B. Sadeghi

Alexandra Steinberg Barrage

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' OBJECTION TO SECOND AMENDED**
**PROOF OF CLAIM # 7170 AMENDING PROOF**
**OF CLAIM # 2781 OF SYNCORA GUARANTEE INC.**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................2

JURISDICTION, VENUE, AND STATUTORY PREDICATE ..................................................5

BACKGROUND ........................................................................................................................5

    A.    The Cure Claim Deadline ............................................................................5

    B.    Syncora's Original Proof of Claim ..............................................................6

    C.    Syncora's PSA Objection and Correspondence with the Debtors ..........................7

    D.    The Debtors' Objection to Syncora's Original Proof of Claim and Syncora's
        Second Amended Proof of Claim .................................................................8

RELIEF REQUESTED ...........................................................................................................11

OBJECTION ...........................................................................................................................11

I.    SYNCORA'S SECOND AMENDED PROOF OF CLAIM SHOULD BE
    DISALLOWED BECAUSE IT IS TIME-BARRED. .......................................................11

    A.    Syncora's Second Amended Proof of Claim Asserts New Claims that Do Not
        Relate Back to Its Original Proof of Claim.....................................................13

        1.    The RALI 2006-QO4 Claim Is a New Claim that Has No Relationship to
            the Non-Debtor Sponsored Trusts Referenced in the Original Proof of
            Claim. ..........................................................................................14

        2.    The STACS 2007-1 Claim and BSSLT 2007-SV1 Claim Are New
            Claims Because the Original Proof of Claim Failed to Provide Adequate
            Notice of the Claims Now Asserted .......................................................16

    B.    The Equitable Factors Weigh Against Allowing the Second Amended Proof of
        Claim to Proceed...................................................................................20

II.    SYNCORA'S AMENDED CLAIMS AGAINST GMACM LACK MERIT ON THEIR
    FACE. ......................................................................................................23

    A.    Syncora Was Not Harmed as a Matter of Law. ...............................................23

    B.    The Governing Agreements for STACS 2007-1 and BSSLT 2007-SV1 Provide
        No Basis to Hold GMACM, as Servicer, Liable for Losses Arising out of
        Origination-Related Breaches by the Third-Party Sponsors...............................27

        1.    The Transaction Documents Provide Syncora an Express Remedy Only
            Against Other Parties for Loan Breaches and Impose No Liability on
            GMACM on the Basis of Any Notice Obligation. ....................................27

        2.    Syncora Cannot Pursue Its Contractual Indemnification Claims. .............29

    C.    Syncora Cannot Assert Common Law Negligence Claims. .................................31

NOTICE.................................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambac Assur. Corp. v. First Franklin Fin. Corp.*,
No. 651217/2012, 2013 N.Y. Misc. LEXIS 3092 (N.Y. Sup. Ct. July 18, 2013) ..................30

*Assured Guar. Corp. v. EMC Mortg., LLC*,
No. 650805/2012, 2013 N.Y. Misc. LEXIS 1371 (N.Y. Sup. Ct. Apr. 4, 2013)....................30

*Assured Guar. Mun. Corp. v. Flagstar Bank*,
No. 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 7, 2011).........29, 30

*Bear Stearns Funding Trust 2007-AR2 v. EMC Mortg. LLC*,
No. 6861-CS, 2013 Del. Ch. LEXIS 9 (Del. Ch. Jan. 15, 2013) .............................................30

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
778 F. Supp. 2d 375 (S.D.N.Y. 2011)......................................................................................29

*Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*,
No. 5140-CS, 2012 Del. Ch. LEXIS 171 (Del. Ch. Aug. 7, 2012)..........................................22

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987) ...............................................................................................................31

*First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.)*,
937 F.2d 833 (2d Cir. 1991)............................................................................................. passim

*Gate Five, LLC v. Knowles-Carter*,
100 A.D.3d 416, 953 N.Y.S.2d 193 (1st Dep't 2012) .............................................................30

*Gotham Partners L.P. v. High River L.P.*,
76 A.D.3d 203 (1st Dep't 2010) ..............................................................................................29

*Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest
Products Corp.)*, 89 B.R. 358 (Bankr. S.D.N.Y. 1988)...........................................................11

*Haynes v. Kleinewefers*,
921 F.2d 453 (2d Cir. 1990).....................................................................................................29

*Hernandez v. Bank of Nova Scotia*,
908 N.Y.S.2d 45 (1st Dep't 2010) ...........................................................................................22

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*,
74 N.Y.2d 487 (1989) ...............................................................................................................29

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005).......................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

*In re Alexander's Inc.*,
176 B.R. 715 (Bankr. S.D.N.Y. 1995) ..............................................................12, 20

*In re Andover Togs, Inc.*,
231 B.R. 521 (Bankr. S.D.N.Y. 1999) ..............................................................12, 13

*In re Barquet Group, Inc.*,
477 B.R. 454 (Bankr. S.D.N.Y. 2012) ..............................................................12, 14

*In re Calpine Corp.*,
No. 07 Civ. 8493 (JGK), 2007 U.S. Dist. LEXIS 86514
(S.D.N.Y. Nov. 21, 2007) ................................................................16, 17, 19, 20

*In re Drexel Burnham Lambert Group Inc.*,
151 B.R. 684 (Bankr. S.D.N.Y. 1993) ..............................................................12

*In re Enron Corp.*,
298 B.R. 513 (Bankr. S.D.N.Y. 2003) ................................................13, 14, 20, 21

*In re Enron Corp.*,
328 B.R. 75 (Bankr. S.D.N.Y. 2005) ..............................................................11

*In re Macmillan*,
186 B.R. 35 (Bankr. S.D.N.Y. 1995) ..............................................................11

*In re McLean Indus., Inc.*,
121 B.R. 704 (Bankr. S.D.N.Y. 1990) ..............................................................12

*In re Stone & Webster, Inc. Sec. Litig.*,
No. 00-10874-RWZ, 2006 U.S. Dist. LEXIS 4206 (D. Mass. June 23, 2006) ................17, 18

*In re Uvino*,
No. 09-15225 (BRL), 2012 Bankr. LEXIS 1089 (Bankr. S.D.N.Y. Mar. 14, 2012) ..............16

*In re W.T. Grant Co.*,
53 B.R. 417 (Bankr. S.D.N.Y. 1985) ..............................................................12

*Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.)*,
157 B.R. 66 (S.D.N.Y. 1993) ..............................................................12, 13

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*,
793 F. Supp. 2d 1189 (W.D. Wash. 2011) ..............................................................22

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
No. 602825/2008, 2013 N.Y. Misc. LEXIS 1818 (N.Y. Sup. Ct. Apr. 29, 2013) ................30

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*,
  419 F.3d 115 (2d Cir. 2005)..................................................................12, 13

*Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 v. Nomura Credit &
  Capital, Inc.*, No. 652341/2011 2013 N.Y. Misc. LEXIS 2001
   (Sup. Ct., N.Y. Cty. May 10, 2013) .....................................................22

*Schiavone v. Fortune*,
  477 U.S. 21 (1986)...............................................................................16

*Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*,
  No. 02 Civ. 3232 (SHS), 2003 U.S. Dist. LEXIS 2677 (S.D.N.Y. Feb. 25, 2003) .................22

*Syncora Guar., Inc. v. EMC Mortg. LLC*,
  No. 653519/2012, 2013 N.Y. Misc. LEXIS 3848 (N.Y. Sup. Ct. Aug. 21, 2013) .................30

*Syncora Guar. Inc. v. EMC Mortg., LLC*,
  No. 650420/2012, 2013 N.Y. Misc. LEXIS 1519 (N.Y. Sup. Ct. Apr. 15, 2013)..................31

*United States v. Baylor Univ. Med. Ctr.*,
  469 F.3d 263 (2d Cir. 2006).................................................................16

*Wilson v. Fairchild Republic Co.*,
  143 F.3d 733 (2d Cir. 1998).................................................................16

## STATUTES

11 U.S.C. § 105..................................................................................7, 19

11 U.S.C. § 363..................................................................................7, 19

11 U.S.C. § 365..................................................................................5

11 U.S.C. § 502..................................................................................1, 5, 11

28 U.S.C. § 157..................................................................................1, 5

28 U.S.C. § 1334.................................................................................1, 5

28 U.S.C. § 1408.................................................................................1, 5

28 U.S.C. § 1409.................................................................................1, 5

## OTHER AUTHORITIES

CPLR § 213(2)....................................................................................22, 25

17 C.F.R. 229.1122(d) ...........................................................................28

iv

## TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Bankr. P. 3007.............................................................................................1, 5

Fed. R. Bankr. P. 9006....................................................................................................13


EXHIBITS

Exhibit 1 – Proposed Order

Exhibit 2 – Proof of Claim No. 2781 [Dkt. No. 4632-2]

Exhibit 3 – Proof of Claim No. 7164, amending Proof of Claim No. 2781 [Dkt. No. 4926-1]

Exhibit 4 – Proof of Claim No. 7170, further amending Proof of Claim No. 2781.

Exhibit 5 – Blackline Between Proof of Claim No. 7170 and Proof of Claim No. 2781

Exhibit 6 – Letter from J. Alexander Lawrence to Randall R. Rainer, dated June 26, 2013 [Dkt. Nos. 4632-3, 4926-2]

Exhibit 7 – Letter from Randall R. Rainer to J. Alexander Lawrence, dated July 3, 2013

Exhibit 8 – Letter from J. Alexander Lawrence to Randall R. Rainer, dated July 10, 2013 [Dkt. Nos. 4632-4, 4926-3]

Exhibit 9 – Letter from Randall R. Rainer to J. Alexander Lawrence, dated July 15, 2013 [Dkt. Nos. 4632-5, 4926-4]

Exhibit 10 – Letter from J. Alexander Lawrence to Randall R. Rainer, dated July 16, 2013

Exhibit 11 – Complaint, *Suntrust Acquisition Closed-End Seconds Trust, Series 2001-1, by HSBC Bank USA, N.A., in its capacity as Trustee v. Suntrust Robinson Humphrey Funding, LLC*, No. 1:13-cv-01635 (TWT) (N.D. Ga. May 14, 2013) [Dkt. No. 4632-10]

Exhibit 12 – Complaint, *Allstate Bank, et al. v. J.P. Morgan Chase, N.A., et al.*, No. 650398/2011 (N.Y. Sup. Ct. Feb. 15, 2011).

Exhibit 13 – Exhibit P to Amended Complaint, *Allstate Bank, et al. v. J.P. Morgan Chase, N.A., et al.*, No. 11-cv-01869 (DAB) (S.D.N.Y. May 10, 2012).

Exhibit 14 – First Amended Proof of Claim of Deutsche Bank Nat'l Trust Co. No. 6706, dated March 1, 2013

## TABLE OF AUTHORITIES

**Page(s)**

Exhibit 15 – Syncora Press Release, dated July 15, 2009

Exhibit 16 – Complaint, *Syncora Guar. Inc. v. Countrywide Home Loans Inc.*, No. 650042/2009 (N.Y. Sup. Ct. Jan. 28, 2009)

Exhibit 17 – Complaint, *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 09-cv-03106 (PAC) (S.D.N.Y. March 31, 2009)

Exhibit 18 – Complaint, *Syncora Guar. Inc. v. EMC Mortg. LLC*, No. 650420/2012 (N.Y. Sup. Ct. Feb. 14, 2012)

Exhibit 19 – Complaint, *Syncora Guar. Inc. v. EMC Mortg. LLC*, No. 653519/2012 (N.Y. Sup. Ct. Oct. 5, 2012)

Exhibit 20 – Complaint, *Syncora Guar. Inc. v. J.P. Morgan Securities LLC*, No. 651566/2011 (N.Y. Sup. Ct. June 6, 2011)

Exhibit 21 – BSSLT 2007-SV1 Insurance and Indemnity Agreement, dated March 30, 2007 [Dkt. No. 4632-11]

Exhibit 22 – BSSLT 2007-SV1 Pooling and Servicing Agreement, dated March 1, 2007

Exhibit 23 – BSSLT 2007-SV1 Servicing Agreement, dated May 1, 2001, as amended October 1, 2001; July 31, 2002; and December 20, 2005

Exhibit 24 – STACS 2007-1 Insurance and Indemnity Agreement, dated May 15, 2007 [Dkt. Nos. 4030-4, 4632-12]

Exhibit 25 – STACS 2007-1 Pooling and Servicing Agreement, dated April 1, 2007 [Dkt. Nos. 4030-1, 4030-2, 4030-3, 4632-14]

Exhibit 26 –Hearing Transcript Excerpt, *In re Residential Capital, LLC*, No. 12-12020-mg, dated September 11, 2013

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and its affiliated debtors in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), as debtors and debtors-in-possession (collectively, the

"Debtors"), hereby file this objection seeking to disallow and expunge pursuant to section 502(b)

of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007(a) of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") the Second Amended Proof of Claim

Number 7170 (the "Second Amended Proof of Claim") filed by Syncora Guarantee Inc. f/k/a XL

Capital Assurance Inc. ("Syncora") against GMAC Mortgage, LLC ("GMACM") and

Residential Funding Company ("RFC") with respect to (1) Bear Stearns Second Lien Trust

2007-SV1 ("BSSLT 2007-SV1"); (2) Suntrust Acquisition Closed-End Second Trust, Series

2007-1 ("STACS 2007-1"); and (3) RALI Series 2006-QO4 Trust ("RALI 2006-QO4").  The

Debtors move to disallow and expunge the Second Amended Proof of Claim because (i) it is an

untimely amendment, and (ii) even if amendment is permitted, the Second Amended Proof of

Claim lacks merit on its face.[1]

The Debtors seek entry of an order, substantially in the form attached hereto as Exhibit 1

(the "Proposed Order"), and in support of the Objection, the Debtors respectfully represent as

follows:

---

[1] The Debtors reserve all their rights to object on any other basis to Syncora's Second Amended Proof of Claim.
Here, the Debtors limit this Objection to certain issues that require disallowance as a threshold matter, prior to
discovery.

## PRELIMINARY STATEMENT

1.       Syncora is a sophisticated monoline financial guaranty insurance company that has been represented by highly competent bankruptcy counsel in these proceedings.[2]  When Syncora believes it has claims to assert, it knows how to assert and pursue them.

2.       In fact, Syncora has actively pursued litigation against numerous issuers of RMBS that Syncora insured.[3]  While Syncora has sued to recoup its losses arising from breaches of representations and warranties regarding loan quality from third parties, Syncora never filed suit against GMACM, or any other Debtor.  Syncora's course of conduct in this case leads to the inescapable conclusion that Syncora does not truly believe that it has meritorious or substantial claims against the Debtors.

3.       First, well aware of the Court-ordered deadline to assert any cure claim by September 28, 2012, Syncora did not file a cure claim.  On that deadline, Syncora conceded that it had notice that the Debtors intended to assume and assign certain mortgage servicing and related agreements, related to three trusts for which GMACM acted as the servicer.[4]  Nonetheless, Syncora filed no cure claim.  At the September 11, 2013 hearing, this Court asked

---

[2] On September 26, 2012, Gary T. Holtzer of Weil, Gotshal & Manges LLP entered an appearance in these proceedings on behalf of Syncora.  [Dkt. No. 1593].  By June 19, 2013, Syncora was also being represented by Wollmuth Maher & Deutsch LLP.  [Dkt. No. 4028].

[3] See e.g., First Am. Compl., *U.S. Bank Nat'l Ass'n, Syncora Guar. Inc., CIFG Assur. N.A., Inc. v. Greenpoint Mortg. Funding*, 600352/2009 (N.Y. Sup. Ct. Apr. 14, 2012) [Dkt. No. 4632-6]; Claim No. 13909, *In re Lehman Brothers Holdings, Inc. et al.*, 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 16, 2009) [Dkt. No. 4632-7]; Claim No. 66099, *In re Lehman Brothers Holdings, Inc. et al.*, 08-13555 (JMP) (Bankr. S.D.N.Y. Jan. 13, 2010) [Dkt. No. 4632-8]; Complaint, *Syncora Guar. Inc. v. Countrywide Home Loans Inc.*, 650042/2009 (N.Y. Sup. Ct. Jan. 28, 2009), Ex. 16; Complaint, *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 09-cv-03106 (PAC) (S.D.N.Y. March 31, 2009), Ex. 17; Complaint, *Syncora Guar. Inc. v. EMC Mortg. LLC*, 650420/2012 (N.Y. Sup. Ct. Feb. 14, 2012), Ex. 18; Complaint, *Syncora Guar. Inc. v. EMC Mortg. LLC*, 653519/2012 (N.Y. Sup. Ct. Oct. 5, 2012), Ex. 19; Complaint, *Syncora Guar. Inc. v. J.P. Morgan Sec. LLC*, 651566/2011 (N.Y. Sup. Ct. June 6, 2011), Ex. 20.

[4] See *Syncora Guarantee Inc.'s Limited Objection to Debtors' Sale Motion*, dated September 28, 2013, at 1, 5 [Dkt. No. 1657] ("Limited Sale Objection")  Those three trusts include (1) the BSSLT 2007-SV1 Trust, (2) the STACS 2007-1 Trust, both of which are at issue in this Objection, and (3) the Greenpoint Mortgage Funding Trust 2006-HE1 ("GMFT 2006-HE1"), for which Syncora has stated in its Second Amended Proof of Claim that it "is not asserting a claim against any Debtors . . . at this time." (2d Am. POC ¶ 2, n.1, Ex. 4) (emphasis added.)

Syncora's counsel a simple and direct question . . . "Why didn't you file a cure claim by the bar

date?" (Sept. 11, 2013 Hr'g Tr. at 105:12-13, Ex. 26.) Syncora had no answer to that question.

4.      <u>Second</u>, Syncora elected not to file a proof of claim that provided any notice of

the nature or amount of its claim before the November 16, 2012 Bar Date. Ten months ago,

Syncora filed proof of claim number 2781 against GMACM (the "<u>Original Proof of Claim</u>").

Rather than set forth the nature and amount of its claim, the Original Proof of Claim was a mere

placeholder, purporting to reserve rights under agreements related to the three trusts at issue in

Syncora's Limited Sale Objection. These are transactions insured by Syncora and sponsored by

non-Debtor third parties. GMACM did not sponsor these trusts. It acted only as the servicer.

The Original Proof of Claim did not quantify Syncora's claim or allege that GMACM breached

any of its servicing obligations, much less that Syncora suffered losses as a result of any such

breaches. The Original Proof of Claim also stated "Syncora is unaware of claims against the

Debtors in these cases other than GMAC." (Orig. POC ¶ 10, Ex. 2.)

5.      Now—ten months after the Bar Date, and with the confirmation hearing fast

approaching—Syncora has filed an amended proof of claim asserting hundreds of millions of

dollars in entirely new claims. Despite the express statement in the Original Proof of Claim that

Syncora was unaware of having claims against any Debtor other than GMACM, the amended

proof of claim asserts more than $80 million of new claims against RFC. In addition, despite

having previously filed a placeholder claim against GMACM containing no allegations of any

contractual breaches or resulting losses, Syncora now asserts more than $200 million of claims

against GMACM resting on a novel and previously unarticulated theory: that a servicer can be

held liable for the full extent of the losses arising from the *sponsor*'s breaches of loan

representations and warranties, if the servicer does not provide notice to the trustee of those breaches.

6.      Syncora's Second Amended Proof of Claim has many flaws, but with this Objection, the Debtors focus on several threshold issues that require disallowance.

7.      <u>First</u>, the amendment is clearly time-barred.  It asserts new claims that do not relate back to the original (timely) claim, because the Original Proof of Claim (1) provided no notice whatsoever of any claims against RFC; and (2) failed to provide adequate notice of the novel theory now asserted against GMACM, by which Syncora seeks to impose repurchase liability on GMACM in the guise of a servicing claim.  (*See* Section I.)

8.      <u>Second</u>, even if the Court were to permit Syncora to amend its proof of claim to assert its belated and novel theory against GMACM, that new claim should be dismissed because it lacks merit on its face.  The claim rests entirely on a transparently false premise:  that Syncora and the Trustees were unaware of the sponsors' breaches of representations and warranties in loans that GMACM serviced (but did not originate), that the Trustees therefore failed to demand that the sponsors repurchase the loans, and that as a result the Trustees have lost their ability to seek repurchase from the sponsors.  In fact, however, both Syncora and the Trustees were well aware of the sponsors' breaches and the resulting representation and warranty claims.  Indeed, the Trustee for the STACS 2007-1 Trust, which accounts for 90% of Syncora's alleged damages against GMACM, has already filed suit against the sponsor within the limitations period, and that suit alleges that the Trustee, at Syncora's request, had been making repurchase demands since 2008.  Syncora's amended claims fail—and should be disallowed at the outset—for this reason alone, even if Syncora's untimely amendment were to be permitted.  (*See* Section II.)

ny-1108078

9.      Syncora has no justification for its delay, or for asserting a theory that depends on demonstrably false assumptions about Syncora's and the Trustees' supposed ignorance of representation and warranty breaches.  Moreover, allowing an amendment asserting hundreds of millions of dollars in new claims two months before the confirmation hearing—and in the wake of a global plan settlement negotiated based on the known universe of timely-filed claims— would significantly prejudice the Debtors.  Syncora's Second Amended Proof of Claim should be disallowed.[5]

## **JURISDICTION, VENUE, AND STATUTORY PREDICATE**

10.     This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

11.     The statutory predicate for the relief requested herein is section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007(a).

## **BACKGROUND**

### A.      **The Cure Claim Deadline**

12.     On July 26, 2012, the Debtors filed a *Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired*

---

[5] Last month, the Debtors filed a motion to assume and assign the servicing-related agreements pertaining to the three trusts identified in the Original Proof of Claim (*i.e.*, BSSLT 2007-SV1, GMFT 2006-HE1, and STACS 2007-1).  (*See Debtors' Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing-Related Agreements for Trusts Insured by Syncora Guarantee Inc. to Ocwen Loan Servicing, LLC*, dated August 15, 2013 ("Assignment Motion"), [Dkt. No. 4718]; *see also Debtors' Reply to Objection of Syncora Guarantee Inc. to Debtors' Assignment Motion*, dated September 9, 2013 [Dkt. No. 4976].)  As explained in the Assignment Motion, Syncora is not entitled to any cure payment in connection with the proposed assignment and assumption, including any servicing-related claims, because such claims are time-barred pursuant to prior orders of this Court entered in connection with the Debtors' sale of the servicing platform.  The Court has set the Assignment Motion to be decided together with this Objection.  If the Court grants the Assignment Motion and fixes Syncora's cure claim at zero, and if the Debtors then assume and assign the Syncora-related agreements, any pre-September 28, 2012 claims that Syncora may have arising out of these assumed and assigned contracts—including the claims against GMACM asserted in the Second Amended Proof of Claim—will be eliminated.

*Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto* (the

"<u>Assumption Notice</u>") [Dkt. No. 924], which was amended and restated on September 18, 2012

[Dkt. No. 1484], and which, in accordance with the Sale Procedures Order [Dkt. No. 538],

established September 28, 2012 as the deadline for filing cure claims.  Syncora did not file any

cure claim by that date.  Instead, on the September 28, 2012 deadline, Syncora filed the Limited

Sale Objection, which made no mention of any cure claim.

### B.     Syncora's Original Proof of Claim

13.     On November 7, 2012, Syncora filed a single proof of claim against GMACM

seeking an unliquidated amount based on GMACM's role as servicer to three RMBS trusts that

issued bonds insured by Syncora—BSSLT 2007-SV1, GMFT 2006-HE1, and STACS 2007-1.

(Orig. POC, Ex. 2.)  Those trusts were structured, marketed, and sold by non-debtor third parties

(Bear Stearns, Lehman Brothers, and SunTrust, respectively).  GMACM did not sponsor these

trusts.  Notably, these are the same GMACM serviced trusts at issue in the Limited Sale

Objection.  In its Original Proof of Claim, Syncora did not assert that GMACM or anyone else

committed any breach or other violation with respect to any of the trusts, much less that it had

suffered any losses as a result.  Instead, Syncora merely asserted, without explanation or any

supporting detail, "a claim based on all of its rights associated with the Syncora-Related Trusts

and the Trust Documents."  (*Id.* ¶ 3.)  The Original Proof of Claim stated that "at this time,

Syncora is unaware of claims against the Debtors in these cases other than GMAC."  (*Id.* ¶ 10.)

6

### C.     Syncora's PSA Objection and Correspondence with the Debtors

14.     On June 19, 2013—over seven months after filing its Original Proof of Claim—

Syncora filed an objection to the Plan Support Agreement.[6]  There, Syncora presented a laundry-

list of servicing duties and stated that "it appears GMACM has breached its above-described

duties and obligations as Servicer by failing to act prudently to safeguard mortgage loan

collateral and, where loans were delinquent or defaulted, failing to act timely to maximize

recovery."  (PSA Objection at 4.)  On that basis, Syncora argued that it had claims against

GMACM for all amounts it had paid in insurance claims with respect to an unspecified number

of trusts.  (PSA Objection at 4, 12 n.5.)  Syncora noted that those trusts included the RALI 2006-

QO4 Trust (*id.* at 4), as to which Syncora had never before asserted any claim against the

Debtors, formally or otherwise.

15.     On June 26, 2013, counsel for the Debtors wrote to counsel for Syncora regarding

its assertions in its PSA Objection.  (June 26, 2013 Letter, Ex. 6.)  The Debtors noted that for

months they had been asking Syncora to describe the nature and to quantify the amounts of its

claims, but the Debtors had received no response.  (*Id.*)  Noting the first-time reference to the

RALI 2006-QO4 Trust, the Debtors again asked that Syncora provide, among other things, the

amount of each claim asserted against the Debtors and the basis for such claims.  (*Id.*)

16.     Syncora responded by letter on July 3, 2013, solely with respect to the RALI

2006-QO4 Trust.  (July 3, 2013 Letter, Ex. 7.)  Syncora admitted that, "[d]ue to an internal error,

Syncora did not include a reference to RALI 2006-QO4 in its initial proof of claim, an error that

only recently came to the attention of Syncora and its counsel."  (*Id.* at 2 n.1.)  "Nevertheless,"

---

[6] *Objection of Syncora Guaranty Inc. to the Debtors' Motion for an Order Under Bankruptcy Code Section 105(a) and 363(b) Authorizing the Debtors to Enter into and Perform Under a Plan Support Agreement with Ally Financial, Inc. the Creditors' Committee and Certain Consenting Claimants*, dated June 19, 2013 [Dkt. No. 4028] ("PSA Objection").

Syncora continued, "the claims described herein related to RALI 2006-QO4 are of the same nature described in the proof of claim for the three referenced securitizations." (*Id.*)[7]

17.    The Debtors responded on July 10, 2013, noting that Syncora still had not explained the nature of its alleged claims regarding the other trusts, and again asked that Syncora provide sufficient information "so that the Debtors can finally understand the nature and amount of the claims Syncora asserts . . . ." (July 10, 2013 Letter, Ex. 8.)

18.    On July 15, 2013, Syncora set forth a theory of recovery from GMACM with respect to the BSSLT 2007-SV1 Trust, one of the three transactions in its Original Proof of Claim. (July 15, 2013 Letter, Ex. 9.) In this letter, Syncora, for the first time, indicated that it sought to hold GMACM liable for losses arising out of purported breaches of mortgage loan representations and warranties by the non-debtor sponsors, on the attenuated theory that the losses could have been avoided if GMACM had given notice of those breaches to the master servicer, who in turn would have notified the trustee, who would have made repurchase demands to the sponsor, who would have then repurchased the loans. (*Id.*)

> **D.    The Debtors' Objection to Syncora's Original Proof of Claim and Syncora's Second Amended Proof of Claim**

19.    The Debtors filed their Objection to Syncora's Proof of Claim on August 13, 2013.[8] As the Debtors explained in their Original Objection, Syncora's attempt to impose liability on GMACM, as sub-servicer, for breaches of loan representations and warranties by the sponsor, was novel and meritless. (Orig. Obj. at 11-17.) The Debtors argued that Syncora's Proof of Claim failed to set forth sufficient facts to support a cognizable claim and Syncora's

---

[7] By letter dated July 16, 2013, the Debtors responded that Syncora had no claim based on the RALI 2006-QO4 Trust. (July 16, 2013 Letter, Ex. 10.) Syncora did not respond to that letter.

[8] *Debtors' Objection to Proof of Claim # 2781 of Syncora Guarantee Inc.*, dated August 13, 2013 ("Original Objection") [Dkt. No. 4632].

newly asserted theory—even if the Court considered it, which it should not have because the belated letters did not constitute a viable amended claim—was untenable.  (*Id.*)

20.     Instead of defending its Original Proof of Claim, on September 3, 2013, Syncora filed a response to the Original Objection and attached an amended proof of claim, purporting to amend and supersede its Original Proof of Claim and moot the Original Objection.[9]  On September 5, 2013, Syncora filed its First Amended Proof of Claim with the ResCap Claims Processing Center.[10]  On September 16, 2013, apparently seeking to correct certain errors in its First Amended Proof of Claim, Syncora filed its Second Amended Proof of Claim with the ResCap Claims Processing Center.[11]

21.     Syncora's Second Amended Proof of Claim has little resemblance to the Original Proof of Claim.[12]

22.     <u>First</u>, Syncora's Second Amended Proof of Claim asserts claims against RFC, whereas the Original Proof of Claim did not mention RFC and stated that "at this time, Syncora is unaware of claims against the Debtors in these cases other than GMAC."  (Orig. POC ¶ 10, Ex. 2.)  Syncora now asserts claims arising from the RALI 2006-QO4 Trust, which was not mentioned in the Original Proof of Claim, seeking damages against RFC for alleged breaches of its representations and warranties regarding the quality of loans in that trust.  (2d Am. POC ¶¶ 25-40. Ex 4.)  Unlike the Original Proof of Claim that related only to GMACM as servicer for non-debtor sponsored trusts, Syncora based this new claim on RFC's roles as master servicer and

---

[9] *Response of Syncora Guaranty Inc. to Debtors' Objection to Proof of Claim # 2781*, dated September 3, 2013 ("<u>Response to Original Objection</u>") [Dkt. No. 4925].

[10] *See Proof of Claim No. 7164, amending Proof of Claim No. 2781*, Ex. 3.

[11] *See Proof of Claim No. 7170, further amending Proof of Claim No. 2781*, Ex. 4.

[12] For the Court's reference, attached as Exhibit 5 is a blackline showing the differences between the Addendum to the Original Proof of Claim and the Addendum to the Second Amended Proof of Claim.

sponsor.  Prior to the petition date, Syncora had never taken any action to assert or preserve any claims against the Debtors with respect to the RALI 2006-QO4 Trust.

23.    <u>Second</u>, while Syncora continues to assert "servicing" claims with respect to the STACS 2007-1 and BSSLT 2007-SV1 Trusts, those claims no longer resemble the conventional servicing claims that the Debtors and other parties-in-interest evaluated while negotiating the global settlement.  Instead, Syncora's Second Amended Proof of Claim is based on the novel notice theory first outlined in its July 2013 letters, seeking to hold GMACM, as servicer, liable for the entire losses arising out of breaches of representations and warranties by the non-debtor, third-party sponsor of the transactions.

24.    <u>Third</u>, Syncora also adds new negligence claims, claiming that GMACM and RFC are independently liable for negligence.  (*See* 2d Am POC at ¶¶ 14, 24, 40 ("GMAC [or RFC] is independently liable to Syncora for its negligence . . . .").)  No such non-contractual claims were mentioned in the Original Proof of Claim.

25.    <u>Fourth</u>, Syncora no longer asserts claims with respect to one of the three trusts referenced in the Original Proof of Claim:  the GMFT 2006-HE1 Trust.  Apparently not wanting to foreclose the possibility of filing a Third Amended Proof of Claim, however, Syncora states that it "is not asserting a claim against any Debtors with respect to GreenPoint Mortgage Funding Trust 2006-HE1 <u>at this time</u>."  (2d Am. POC ¶ 2, n.1, Ex. 4 (emphasis added).)

26.    In total, the Second Amended Proof of Claim—asserted almost one year after the cure claim deadline, over ten months after the Bar Date, weeks after the disclosure statement was approved, and two months before the plan confirmation hearing—asserts over $300 million in claims, none of which had been identified in the timely-filed Original Proof of Claim.

|  | BSSLT 2007-SV1 | STACS 2007-1 | RALI 2006-QO4 |
|---|---|---|---|
| Tender Offer and Related Fees | $15,682,080 | $19,962,638 | $8,623,129 |
| Claim Payments (Actual) | $0 | $148,914,678 | $74,816,151 |
| Future Claim Payments (Est.) | $1,737,173 | $30,356,200 | $0 |
| **Total** | **$17,419,253** | **$199,233,516** | **$83,439,280** |

(2d Am. POC ¶¶ 12, 13, 14, 21, 22, 23, 24, 37, 38, 40, Ex. 4.)

## RELIEF REQUESTED

27.     The Debtors file this Objection under section 502(b) of the Bankruptcy Code,

seeking to disallow and expunge the Second Amended Proof of Claim in its entirety.

## OBJECTION

### I.     SYNCORA'S SECOND AMENDED PROOF OF CLAIM SHOULD BE DISALLOWED BECAUSE IT IS TIME-BARRED.

28.     Syncora's Second Amended Proof of Claim should be disallowed because claim

amendments cannot be used to circumvent the Bar Date, and that is precisely what Syncora is

attempting to do here.  "Congress intended the bar date in a Chapter 11 case to be a mechanism

[for] providing the debtor and its creditors with finality."  *Gulf States Exploration Co. v.*

*Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 89 B.R. 358, 374 (Bankr.

S.D.N.Y. 1988), *aff'd* 99 B.R. 543 (S.D.N.Y. 1989), *aff'd*, 896 F.2d 1384 (2d Cir. 1990).  The

bar order does not function as a "mere procedural gauntlet," but as an integral part of the

reorganization process.  *First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*,

937 F.2d 833, 840 (2d Cir. 1991).  "[B]ar dates are likened to statutes of limitations which must

be strictly observed."  *In re Macmillan*, 186 B.R. 35, 42 (Bankr. S.D.N.Y. 1995); *see also In re*

*Enron Corp.*, 328 B.R. 75, 86 (Bankr. S.D.N.Y. 2005) (same), *aff'd sub nom. Oscar's Photo Lab*

*v. Enron Corp.*, No. 05-cv-9981, 2006 U.S. Dist. LEXIS 66681 (S.D.N.Y. Apr. 27, 2006).

29.     While proofs of claim may be amended after the bar date, bankruptcy courts must

take care to ensure that amendments are not used merely to circumvent the bar date; amendments

therefore must be carefully scrutinized to ensure that they are truly amending the timely filed claim and not asserting an entirely new claim. *In re Drexel Burnham Lambert Grp. Inc.*, 151 B.R. 684, 694 (Bankr. S.D.N.Y. 1993); *see also In re Alexander's Inc.*, 176 B.R. 715, 723 (Bankr. S.D.N.Y. 1995) (expunging claims that "do not arise from identical facts").

30.      When deciding whether to permit an amendment to a proof of claim, bankruptcy courts are guided by a two-prong test. *See Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005); *Integrated Res., Inc. v. Ameritrust Co. N.A. (In re Integrated Res., Inc.)*, 157 B.R. 66, 70 (S.D.N.Y. 1993); *see also In re Barquet Grp., Inc.*, 477 B.R. 454, 464 (Bankr. S.D.N.Y. 2012) (Glenn, J.), *aff'd*, 486 B.R. 68 (S.D.N.Y. 2012). First, the court must determine whether there was a timely "'assertion of a similar claim or demand evidencing an intention to hold the estate liable.'" *In re Enron*, 419 F.3d at 133 (quoting *In re Integrated Resources, Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993)). Specifically, a claim relates back to a timely filed claim if it: "1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *Id.* at 133; *see also In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr. S.D.N.Y. 1985); *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990).

31.      Syncora's Second Amended Proof of Claim does none of these things because its Original Proof of Claim fails to set forth *any* facts or allege any breach of the agreements it references, thus providing no factual circumstances or legal theory to which the Second Amended Proof of Claim could relate back. The Court's analysis need go no further. The amendment should be denied without any need to consider the second prong. *See In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999) ("Amendments are disallowed when their purpose is to create a new claim.").

32.    <u>Second</u>, even if the "relation back" inquiry were satisfied—which it is not here—

courts then examine whether it would be equitable to allow the amendment.  *In re Enron*, 419

F.3d at 133; *In re Integrated*, 157 B.R. at 70-71.  Courts consider the following five equitable

factors in determining whether to allow an amendment:

> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of
> the claimant; (3) whether other creditors would receive a windfall were the
> amendment not allowed; (4) whether other claimants might be harmed or
> prejudiced; and (5) the justification for the inability to file the amended claim at
> the time the original claim was filed.

*In re Enron Corp.,* 298 B.R. 513, 521 (Bankr. S.D.N.Y. 2003), aff'd 419 F.3d 115 (2d Cir.

2005).  These factors weigh heavily against permitting an amendment here, as discussed below.[13]

### A.    Syncora's Second Amended Proof of Claim Asserts New Claims that Do Not Relate Back to Its Original Proof of Claim.

33.    The Court set a bar date precluding the assertion of any new claims against the

Debtors after November 16, 2012 (*Order Extending Deadline for Filing Proofs of Claim*, dated

November 7, 2012 [Dkt. No. 2093]), so the amendment recently proposed by Syncora would be

timely only if it related back to a timely-filed claim.

34.    The Second Amended Proof of Claim asserts claims with respect to three

securitizations insured by Syncora, all of which fail to meet the relation-back test.  This failure is

most egregious with respect to Syncora's new claims against RFC with respect to the RALI

2006-QO4 Trust, because Syncora had never before asserted any claim against RFC, nor did it

ever mention the RALI 2006-QO4 Trust until long after the Bar Date.  (*See* Section I.A.1, *infra*.)

Syncora's claims with respect to the BSSLT 2007-SV1 and STACS 2007-1 Trusts are also new

---

[13] As a last resort, a claimant may attempt to demonstrate that its failure to assert a timely claim was the result of "excusable neglect," in which case the court has discretion to allow the claim under Bankruptcy Rule 9006(b)(1) if the claimant meets its burden of establishing excusable neglect.  *See In re Andover Togs, Inc.,* 231 B.R., at 549 (burden is on claimant to show excusable neglect).  Syncora has not claimed that its failure to file was the result of excusable neglect, and any attempt to do so would almost certainly fail.

and do not relate back to the Original Proof of Claim.  Although it mentioned these two trusts in

its Original Proof of Claim, Syncora did not articulate any factual or legal basis for a claim and

therefore failed to provide adequate notice of the unprecedented and meritless legal theory that it

now advances in its Second Amended Proof of Claim.  (*See* Section I.A.2, *infra*.)  As a result, the

Second Amended Proof of Claim is time-barred in its entirety.

> **1.     The RALI 2006-QO4 Claim Is a New Claim that Has No Relationship
> to the Non-Debtor Sponsored Trusts Referenced in the Original Proof
> of Claim.**

35.     The RALI 2006-QO4 Trust was sponsored and serviced by RFC and has no

relationship to the three non-debtor sponsored and GMACM-serviced transactions referenced in

the Original Proof of Claim, nor does it have any governing agreements in common with any of

the GMACM serviced trusts.  A proposed amendment to a proof of claim that seeks to recover

based on a separate agreement not referenced in the original proof of claim is a new claim.  *In re

Barquet Grp., Inc.*, 477 B.R. at 465 (finding proposed amendment not similar to the earlier-filed

claim because "it is based on a different agreement"); *see also In re Enron*, 298 B.R. at 523

(finding "the Guaranty claim does not arise out of the same transaction or occurrence set forth in

the original Proof of Claim, that is, the Guaranty claim is related to the Purchase Agreement").

36.     The different Debtor at issue in the RALI 2006-QO4 claim—RFC, as opposed to

GMACM—also precludes relation back because this is not a case of mistaken identity of the

proper defendant.  *See In re Enron Corp.*, 298 B.R. at 524 ("To establish 'mistake' under Rule

15(c)(3), a plaintiff must show either factual mistake (for example, he or she misnamed a party

or misidentified the party it wished to sue) or legal mistake (for example, he or she

misunderstood the legal requirements of his or her cause of action).").  Although Syncora

correctly identified GMACM as the putative defendant for each of the three transactions

14

identified in its Original Proof of Claim, Syncora now wants to assert new claims against a different Debtor based on a different deal.

37.     Moreover, Syncora's new claim against RFC relies on RFC's role as both Sponsor and Master Servicer for the RALI 2006-QO4 transaction, thus presenting a different factual and legal basis for this claim compared to Syncora's claims regarding the non-debtor sponsored transactions, where GMACM only functioned as a servicer—not as a sponsor or originator.  And, Syncora failed to provide any notice of this claim prior to the Bar Date.  It was not until June 19, 2013, when Syncora filed its PSA Objection, that it first mentioned the RALI 2006-QO4 Trust and thus hinted that it might assert a claim with respect to this transaction. Prior to that, Syncora had:

- Never asserted any repurchase demands concerning the RALI 2006-QO4 Trust;

- Never asserted that RFC failed to properly service any loans;

- Never sought to terminate RFC as a servicer for cause;

- Never filed suit against RFC (or any other Debtor); and

- Never submitted a proof of claim against RFC for anything.

38.     Syncora's only argument that the RALI 2006-QO4 Trust claim relates back to the Original Proof of Claim is buried in a footnote of its Response to the Original Objection, in which Syncora argues that it is asserting "nearly identical servicing claims."  (Orig. Obj. Resp. at 10 n. 5.)  That argument fails because the "nearly identical" servicing claims that it refers to are its new claims on the GMACM transactions that are also set out for the first time in Syncora's amended proofs of claim.  There is nothing "nearly identical" to the RALI 2006-QO4 Trust claim in the Original Proof of Claim, which does little more than list agreements related to three GMACM-serviced trusts and purport to reserve all rights under them.

39.      If Syncora's Original Proof of Claim were deemed sufficient to support relation

back of its Second Amended Proof of Claim, a proof of claim referencing any single RMBS trust

(without identifying any loss, breach, or claim related thereto) would preserve the assertion of

any claim arising under any agreement for any RMBS transaction as to which any debtor

performed any role.  That, of course, is not the law.

> **2.**      **The STACS 2007-1 Claim and BSSLT 2007-SV1 Claim Are New Claims Because the Original Proof of Claim Failed to Provide Adequate Notice of the Claims Now Asserted.**

40.      Syncora's claims with respect to the STACS 2007-1 and BSSLT 2001-SV1 Trusts

are also time-barred new claims.  The mere reference to those transactions and their governing

agreements in the Original Proof of Claim is insufficient to establish relation-back.

41.      The central inquiry in determining whether an amendment relates back to an

earlier pleading is "'whether <u>adequate notice</u> of the matters raised in the amended pleading has

been given to the opposing party within the statute of limitations by the general fact situation

alleged in the original pleading.'" *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 528 (S.D.N.Y.

2005) (quoting *Stevelman* v. *Alias Research, Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) (emphasis

added); *In re Calpine Corp.*, No. 07 Civ. 8493 (JGK), 2007 U.S. Dist. LEXIS 86514, at *14-16

 (S.D.N.Y. Dec. 4, 2007) (affirming disallowance of amended proof of claim where original

proof of claim failed to provide adequate notice); *In re Uvino*, No. 09-15225 (BRL), 2012 Bankr.

LEXIS 1089 (Bankr. S.D.N.Y. Mar. 14, 2012) (same).[14]

42.      Therefore, an attempted amendment to a proof of claim does not "relate back" to

an original proof of claim—even if it asserts claims arising from the same contract(s)—where

---

[14] *See also Schiavone* v. *Fortune*, 477 U.S. 21, 31 (1986) ("The linchpin is notice . . . within the limitations period."); *United States v. Baylor Univ. Med. Ctr*, 469 F.3d 263, 270 (2d Cir. 2006) (it "is well-settled" that "the touchstone for relation back . . . is notice"); *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir. 1998) ("The pertinent inquiry . . . is whether the . . . complaint gave the defendant fair notice of the newly alleged claims."), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006).

(i) the original claim merely relies on catch-all language and (ii) the amendment presents a novel claim such that the catch-all language would not have provided the debtors reasonable notice of the claim asserted. *See In re Calpine Corp.*, 2007 U.S. Dist. LEXIS 86514, at *14-16; *cf. In re Stone & Webster, Inc. Sec. Litig.*, No. 00-10874-RWZ, 2006 U.S. Dist. LEXIS 42061, at *9 (D. Mass. June 23, 2006) (allegations in amended complaint did not relate back where "new allegations concern[ed] the [same] deal raised in the original complaint, but there the similarity end[ed]").

43.      *In re Calpine* is directly on point.  The district court affirmed disallowance of an amended proof of claim where, as here, the original proof of claim was little more than a placeholder asserting "any and all other amounts due or to become due under [an] Indenture." *Id.* at *4-5.  The claimant later sought to amend asserting claims for "conversion rights" under the same underlying contracts, a theory for which the claimants could not identify any precedent. *Id.* at *9-10.  The bankruptcy court concluded, and the district court agreed, that given the novel legal theory of the amended claim, the catch-all language of the original proof of claim would not have provided the debtors reasonable notice that the claimant was asserting a breach of the sort alleged in the amendment. *Id.* at *10.  As a result, the purported amendment was time-barred.  "Bar dates would be rendered meaningless if creditors were granted leave to amend to assert new novel claims based on broad language in a timely-filed Proof of Claim and an attached Indenture." *Id.* at *15.

44.      Judge Lifland's recent opinion in *In re Uvino* is also instructive.  There, the court disallowed an amended third proof of claim filed twenty months after expiration of the bar date. 2012 Bankr. LEXIS 1089, at *4.  The court first concluded that nothing in the earlier second proof of claim for $204,309.74 for "services performed" provided notice of the claim asserted in

ny-1108078

the third proof of claim for interest and fees of $767,679.29, and thus the third claim did not relate back to the second claim. *Id.* at *4-5. The court then concluded that the amended claim was "nothing more than a backdoor attempt to escape the Bar Date," *id.* at *14, and noted that allowing the claim "would eviscerate the essential function" of the bar date. *Id.* at *12. The court also found the amendment to be untenable given the fact that the claim was not asserted "until after there was substantial movement towards confirmation." *Id.* at *14.

45.     Here too, as Syncora concedes, its Original Proof of Claim was nothing more than a placeholder. (*See* Orig. Obj. Resp. ¶ 28 (attempting to justify its Original Proof of Claim by comparison to other claimants' "boilerplate placeholders" that were not more particularized).) Syncora's Original Proof of Claim did not allege that GMACM breached any of its obligations under the governing agreements, and it failed to provide any hint as to what GMACM allegedly did or failed to do in its role as servicer that might give rise to any claim. (Orig. POC ¶ 3, Ex. 2.)

46.     The placeholder failed to provide notice of Syncora's new "servicing" claims because the theory Syncora now asserts is unprecedented (and as discussed in Section II, is meritless). These new "servicing" claims are entirely different from conventional servicing claims, which deal with collection of payments from borrowers, loan modifications, foreclosures, and the like. (*See* RMBS Trusts: Methodology for Calculation of Recognized Claims, filed August 16, 2013 [Dkt. No. 4770-10] (recognizing that "Estimated Servicing Losses are related to 1) misapplied and miscalculated payments, 2) wrongful foreclosure and improper loss mitigation practices, and 3) extended foreclosure timing issues caused by improper affidavits, documentation and collection practices").)[15]

---

[15] The claims asserted by FGIC in its objection to the Debtors' Sale Motion are typical examples of conventional servicing claims. FGIC was similarly situated to Syncora as a monoline insurer of transactions serviced by the Debtors, with every incentive to assert the full value of any potentially meritorious servicing claims against the (Cont.'d)

18

47.     Conventional servicing claims are also well understood to be worth only a fraction of the repurchase claims arising out of breaches of loan representations and warranties. As set forth in the schedules to the Plan, prepared by Duff & Phelps, individual Servicing Claims are typically in the thousands of dollars, not the millions of dollars that Syncora seeks.[16]  For instance, Duff & Phelps has determined, as part of its calculation of trust claims in connection with the RMBS Settlement incorporated into the Plan of Reorganization, that the servicing claims of these three trusts' insurers are *de minimis*—specifically, $7,610 for the BSSLT 2007-SV1 transaction, and $272 for the STACS 2007-1 transaction.[17]

48.     Even if GMACM assumed Syncora was asserting some form of servicing breach, nothing about typical servicing claims, and nothing in the Original Proof of Claim, suggests that Syncora would be seeking hundreds of millions of dollars in losses arising from third-party breaches of loan representations and warranties akin to an origination claim.  The Second Amended Proof of Claim is therefore time-barred.  *See In re Calpine Corp.*, 2007 U.S. Dist.

_____

Debtors.  As a result, FGIC asserted a wide range of servicing claims, including claims for due and unpaid premiums, reimbursement of expenses, improper loan modifications, improper advances, and so on.  In addition, FGIC referenced eleven separate complaints it had filed asserting breaches of servicing obligations.  *See Limited Objection of Financial Guaranty Insurance Company to the Debtors' Sale Motion and Assumption Notice*, dated October 5, 2012, at ¶ 31 ("FGIC Objection") [Dkt. No. 1746], and complaints cited therein. Those complaints allege improper calling center staffing and borrower outreach, loan modifications, and other such servicing practices, with no suggestion that a servicer might be liable for the full loss arising out of breaches of origination-related representations and warranties based on a failure to provide notice to the Trustee.

[16] *See* Schedule 4-G to Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al., and the Official Committee of Unsecured Creditors, filed August 23, 2013 [Dkt. No. 4819-2].

[17] Under the Plan, if approved, "[t]he amount of cash and other consideration allocable to the Repurchase Claims will be the Distribution Amount of $672.3 million, less (i) fees payable to counsel to the Institutional Investors in a total amount that is estimated to be approximately $38.32 million; and (ii) the $96 million paid to the RMBS Trusts on account of their Servicing Claims, or approximately $537.98 million."  *See Joinder of Certain RMBS Trustees to The Debtors' Motion for an Order Under Bankruptcy Code Sections 105(a) And 363(b) Authorizing the Debtors to Enter Into and Perform Under a Plan Support Agreement With Ally Financial Inc., the Creditors' Committee, and Certain Consenting Claimants*, dated June 10, 2013, at 22 [Dkt. No. 3940].  Thus, although the trusts with Servicing Claims far outnumber the trusts with Repurchase Claims, the Trustees valued the Servicing Claims at far less than the Repurchase Claims.

LEXIS 86514, at *14-16; *In re Alexander's Inc.*, 176 B.R. at 723 (rejecting amendment as a

"new claim" where the prior claim and the amendment "do not arise from identical facts").

### B.    The Equitable Factors Weigh Against Allowing the Second Amended Proof of Claim to Proceed.

49.    Even if the Second Amended Proof of Claim could be characterized as related to

Syncora's Original Proof of Claim in whole or in part—which it cannot—Syncora cannot satisfy

the equitable factors required to permit the amendment.  In deciding whether to permit proper

amendments rather than new claims, bankruptcy courts look to the following factors: "(1) undue

prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant;

(3) whether other creditors would receive a windfall were the amendment not allowed;

(4) whether other claimants might be harmed or prejudiced; and (5) the justification for the

inability to file the amended claim at the time the original claim was filed."  *In re Enron Corp.,*

298 B.R. at 517.  All of the factors favor disallowance of the Second Amended Proof of Claim.

50.    With respect to the first factor, the undue prejudice is apparent from the context in

which Syncora has asserted its amended claim.  Syncora first mentioned this potential claim in

its PSA Objection, seeking to disrupt the Plan Support Agreement that had been negotiated

between the Debtors and numerous other creditors including the other monoline insurers that had

timely submitted their claims with respect to debtor-sponsored RMBS.  *See, e.g.*, *In re Calpine*,

2007 U.S. Dist. LEXIS 86514, at *18 ("The timing of the filing of the New Claims, well into the

negotiations between the Debtors and the creditors and more than six months after the Bar Date

further supports a finding of prejudice.").  Moreover, permitting the filing of large new claims

two months before the plan confirmation hearing has the potential to require the setting of

inflated disputed claims reserves, causing significant prejudice to creditors.  Finally, allowing

these late claims would invite other late filed claims by a wide range of parties, including those

who might see a servicing claim as a back door that remains open to assert repurchase liability against the Debtors even where the Debtors did not sponsor the deal and have no repurchase obligations under the governing agreements. *See In re Enron*, 298 B.R. at 525 (finding "the Debtors would be unduly prejudiced by possibly opening the floodgates for similar late-filed guaranty claims").

51.    With respect to the second and fifth factors, there is no justification for Syncora's delay. Syncora does not even attempt to—and could not—justify its failure to assert its new and novel "servicer notice" claims against GMACM in its Original Proof of Claim. As for its new claim against RFC, Syncora argues that it is asserting that claim for the first time now—ten months after the Bar Date—because the Trustee's loan repurchase claims with respect to that trust are "now being abandoned." (Orig. Obj. Resp. at 10 n.5 ("Now left to its own devices, Syncora now asserts these claims based upon the same pattern of conduct.").) This justification cannot withstand even brief scrutiny:

- <u>First</u>, Syncora's own conduct makes clear that it was fully aware of the need to file claims of its own regardless of any claims that the Trustees might file. Syncora's Original Proof of Claim purported to assert claims (albeit in mere "placeholder" fashion) against GMACM with respect to three trusts. Clearly, had Syncora believed it had claims against RFC for the RALI 2006-QO4 Trust, it would have referenced it in the Original Proof of Claim.

- <u>Second</u>, the Trustee for the RALI 2006-QO4 Trust did not file a proof of claim until three and a half months after the Bar Date that applied to Syncora. (*See* First Amended Proof of Claim of Deutsche Bank Nat'l Trust Co. No. 6706, dated March 1,

2013, Ex. 14 (asserting claims regarding RALI 2006-QO4).)[18]  When Syncora

decided not to mention the RALI 2006-QO4 Trust in its Original Proof of Claim,

Syncora could not have been relying on a yet-to-be filed trustee proof of claim that, in

the event of a settlement of the trustee's claims, might never have been filed.

- <u>Third</u>, Syncora's purported justification for its failure to file a claim is inconsistent

  with what it has previously represented to the Debtors.  Syncora previously

  represented that its failure to assert a claim with respect to the RALI 2006-QO4 Trust

  was an "internal error" that came to its attention "recently."  (July 3, 2013 Letter, at 2

  n.1, Ex. 7.)

While Syncora's excuse for not asserting a claim regarding the RALI 2006-QO4 Trust remains a

moving target, the most reasonable conclusion is that Syncora, as a sophisticated party, did not

assert a claim before the Bar Date with respect to this trust because it did not believe it had a

claim.[19]

---

[18] The Court approved a stipulation between the Debtors and certain RMBS Trustees allowing those trustees to file proofs of claim beyond the Bar Date and no later than March 1, 2013 (*Stipulation and Order Permitting Certain Parties to File Proofs of Claim After the Bar Date*, dated November 6, 2012 [Dkt. No. 2095]), thus the Trustee proofs of claim filed after Syncora's Original Proof of Claim were not time-barred.

[19] One possible reason that Syncora did not assert a claim for the RALI 2006-QO4 Trust before the Bar Date is its reasonable assessment that any such claim would be time-barred.  The statute of limitations for contract claims in New York is six years.  N.Y. C.P.L.R. § 213(2); *Hernandez v. Bank of Nova Scotia,* 908 N.Y.S.2d 45, 46 (1st Dep't 2010).  The Debtors commenced these chapter 11 proceedings on May 14, 2012.  Therefore, a party experienced in RMBS litigation like Syncora would have presumably made the assessment that claims premised on breaches of representations and warranties in securitizations issued more than six years before the start of these proceedings— *i.e.* prior to May 14, 2006—are time-barred.  *See, e.g., Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, 02 Civ. 3232 (SHS), 2003 U.S. Dist. LEXIS 2677, at *5 (S.D.N.Y. Feb. 25, 2003) (breach occurs at the moment of sale because "the facts warranted in the . . . Agreement were not true when made"); *Nomura Asset Acceptance Corp. Alt. Loan Trust, Series 2005-S4 v. Nomura Credit & Capital, Inc.*, No. 652341/2011, 2013 N.Y. Misc. LEXIS 2001 (N.Y. Sup. Ct. May 10, 2013); *see also Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.,* 793 F. Supp. 2d 1189, 1194 (W.D. Wash. 2011); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 Del. Ch. LEXIS 171, at *56 (Del. Ch. Aug. 7, 2012).  The RALI 2006-QO4 agreements were executed on April 27, 2006.  (*See* 2d Am POC Ex. A.)  Thus, at the time it filed its Original Proof of Claim, Syncora may have made the assessment that the six year statute of limitations for breach of representation and warranty claims with respect to the RALI 2006-QO4 Trust had run by April 27, 2012, prior to the Petition Date.

ny-1108078

52.    Finally, with respect to the third and fourth factors, other creditors would not receive a windfall if the Court disallowed the claim; in fact they would be prejudiced by the amendment.  The vast majority of other creditors have been involved in the careful negotiation of the global settlement.  With respect to the timely filing of claims, these other claimants have played by the rules set by this Court.  They have submitted timely and detailed claims and are not seeking improper amendments to improve their positions.  Of course, there is no way to know how many creditors could have asserted additional untimely claims had they not chosen to play by the rules, and who would thus be prejudiced if Syncora were now permitted a "do over." (Sept. 11, 2013 Hr'g Tr. at 113:11-17, Ex. 26.)

## II.    SYNCORA'S AMENDED CLAIMS AGAINST GMACM LACK MERIT ON THEIR FACE.

53.    If they are not disallowed as time-barred, the claims that Syncora now asserts against GMACM should be disallowed on the merits.

### A.    Syncora Was Not Harmed as a Matter of Law.

54.    The Second Amended Proof of Claim does not allege that GMACM committed servicing breaches of any conventional sort, such as in dealing with borrowers or properties. Instead, Syncora attempts to hold GMACM liable for losses caused by the *sponsor*'s alleged breaches of representations and warranties, by asserting that GMACM failed in its alleged duty to provide notice of such breaches to the Trustees.  Syncora argues that GMACM was aware of high borrower default rates, that it "would have encountered" loan files, that it "would or should have been aware of" breaches of "origination-related representations and warranties" on a pervasive basis, and that it therefore should have notified the Trustees of such breaches.  (2d Am. POC ¶¶ 16, 19, Ex. 4.)  Although the governing agreements contain no explicit requirement that

GMACM provide such notice, Syncora argues that GMACM nevertheless had such an obligation as part of its general duties to service loans prudently and maximize recovery.

55.     With this theory, Syncora posits that if GMACM provided notice to the Trustee, and *if* the Trustee was not already on notice of the allegedly pervasive breaches based on the same high default rate that supposedly made the breaches obvious to GMACM, *then* the notice from GMACM would have triggered the Trustee's obligation to enforce repurchase demands that it otherwise would not have known to enforce.  From there, if the Trustee did in fact pursue breaches it became aware of only from GMACM, the losses would have been avoided *if* the Sponsor responded to the repurchase requests by furnishing payment in full.[20]

56.     Syncora's novel theory fails on the final assumption alone—that is, the notion that if GMACM had provided notice to the trustee to seek repurchase remedies from the sponsor, the sponsor would have acceded to those repurchase demands.  Even with evidence of defects, neither GMACM nor the trustee could "cause" the sponsor to repurchase a loan.  It is the sponsor's decision whether or not to comply with its obligations to repurchase a defective loan.

57.     In any event, Syncora's causation theory holds up only if Syncora and the Trustees were in the dark about the alleged breaches of representations and warranties in the loans, and did not know they had rights to assert.  But the fallacy of that assumption is apparent from the face of its Second Amended Proof of Claim.  For each of the transactions at issue, Syncora alleges that it noticed "distress in the transaction."  (2d Am. POC ¶¶ 12, 22, 38, Ex. 4.) Syncora claims that its "financial advisors projected principal losses" in the millions of dollars. (*Id.* ¶ 12.)  In response to this "distress in the transaction," Syncora alleges that it invested in a

---

[20] These assumptions are laid bare in Exhibits B through D to the Second Amended Proof of Claim, each of which purports to calculate the principal and interest losses to the trusts based on the number of defective loans that "the servicer should have caused to be put back" (*see* 2d Am POC Exs. B-D), even though the servicer has no power to directly cause loans to be put back.

tender offer for such certificates, paying tens of millions of dollars in consent fees to

consummate the remediation.  (*Id.* ¶¶ 12, 22, 38.)  Although Syncora does not specify when these

events occurred, public records show that Syncora consummated this tender offer in 2009.  (*See*

July 15, 2009 Press Release, Ex. 15.)

58.     Moreover, as a matter of public record, claims of defects in the loans in the

STACS 2007-1 and BSSLT 2007-SV1 Trusts—and in RMBS trusts generally—have been well

known for years.  Litigation regarding the BSSLT 2007-SV1 Trust was initiated years ago.  (*See*

Complaint, *Allstate Bank, et al. v. J.P. Morgan Chase, N.A., et al.*, No. 650398/2011 (Sup. Ct.

N.Y. County Feb. 15, 2011), Ex. 12; *see also Exhibit P to Amended Complaint, Allstate Bank, et

al. v. J.P. Morgan Chase, N.A., et al.*, No. 11-cv-01869 (DAB) (S.D.N.Y. May 10, 2012), Ex. 13

(outlining misstatements regarding the quality of the loans in the offering materials).)  The

BSSLT 2007-SV1 agreements upon which Syncora relies were executed on March 30, 2007 (*see*

2d Am POC Ex. A), so the statute of limitations for that deal did not expire until, at the earliest,

March 30, 2013.  Syncora has no basis to suggest that the Trustee lacked notice to assert its

rights before that date.[21]

59.     The defects of Syncora's theory are, if anything, even clearer with respect to the

STACS 2007-1.  The STACS 2007-1 agreements upon which Syncora relies were executed on

May 15, 2007 (*see* 2d Am POC Ex. A; STACS 2007-1 I&I, Ex. 24), meaning that the six year

statute of limitations for repurchase claims did not expire until, at the earliest, May 15, 2013.

N.Y. CPLR § 213(2).  Within the limitations period, the trustee for the STACS 2007-1 Trust

filed suit alleging exactly the pervasive breaches of representations and warranties about which

---

[21] To the contrary, Syncora itself has previously stated that it "believes that the RMBS Trustees for its transactions
may have . . . [f]ailed to provide notices of defaults under the transaction documents, even though *they were on
notice or had knowledge of rampant breaches of representations and warranties with respect to underwriting of
defective loans.*"  (PSA Objection at 16 (emphasis added).)

Syncora claims GMACM failed to provide notice.  (*See* Complaint, *Suntrust Acquisition Closed-End Seconds Trust, Series 2007-1, by HSBC Bank USA, N.A., in its capacity as Trustee v. Suntrust Robinson Humphrey Funding, LLC*, No. 1:13-cv-01635 (TWT) (N.D. Ga. May 14, 2013), Ex. 11.)[22]  The Trustee alleges that it issued repurchase demands as early as February 2008 (approximately 9 months after the deal closed) and made additional demands in 2011 and 2013, but that the Sponsor "failed and continues to fail to cure or repurchase."  (*Id.* ¶ 3.)  Moreover, none of this should come as a surprise to Syncora, given that the Trustee alleges that it issued each of the three repurchase demands promptly in response to being "separately informed" of breaches by certificateholders *and by Syncora*.  (*Id.* ¶ 33.)

60.     The Trustee's federal complaint conclusively demonstrates that the Trustee was in fact on notice (even without a notification from GMACM) and did not lose its claims forever. That complaint further confirms that the issuance of earlier repurchase demands to the sponsor failed to secure payment and avoid any loss, thus refuting another necessary link in the chain of assumptions that Syncora needed to attribute liability to GMACM's supposed notice failure.

61.     Syncora thus cannot demonstrate that GMACM's purported notice failure caused any harm, because the publicly filed complaint by the Trustee establishes that these breaches were known by the Trustee years ago, that repurchase demands were rebuffed such that notice would not have secured any recovery, and that resulting breach claims were timely asserted.

---

[22] The STACS 2007-1 PSA provides that New York law applies (STACS 2007-1 PSA § 12.04, Ex. 25), and the federal court complaint was filed less than 6 years after the May 15, 2007 closing date.

**B.    The Governing Agreements for STACS 2007-1 and BSSLT 2007-SV1 Provide No Basis to Hold GMACM, as Servicer, Liable for Losses Arising out of Origination-Related Breaches by the Third Party Sponsors.**

62.    Syncora's causation failures aside, Syncora's assertion that GMACM and RFC breached their servicing obligations by failing to pursue breaches of representations and warranties by the third-party sponsor, and on that basis should be held co-liable for the full losses arising from those breaches, finds no support in the governing agreements.

**1.    The Transaction Documents Provide Syncora an Express Remedy Only Against Other Parties for Loan Breaches and Impose No Liability on GMACM on the Basis of Any Notice Obligation.**

63.    First, the STACS 2007-1 Insurance and Indemnity Agreement provides that Syncora's express remedy for alleged breaches of representations and warranties regarding mortgage loans is to request that the *sponsor* cure or repurchase defective loans or, in the event the issuer fails to cure or repurchase, demand reimbursement from the *sponsor* for any insurance payments Syncora makes as a result.  (*See* STACS 2007-1 I&I Agr. § 3.03(b), Ex. 24 (providing for reimbursement to Syncora from the sponsor in the event of failure to repurchase as provided in PSA section 2.03).)  There is no mention of reimbursement payments by the servicer or sub-servicer, under any circumstances.  (*Id.*)

64.    Moreover, the STACS 2007-1 Pooling and Servicing Agreement imposes on GMACM no specific notice obligation, nor the right or ability to instruct or cause the non-debtor sponsor to repurchase any loans.  Those obligations and powers fall to the Trustee who,

> shall promptly notify the Sponsor, the Class A Certificate Insurer and the Servicer of such . . . breach and request that the Sponsor . . . cure such defect or breach . . . , and if the Sponsor does not . . . cure such defect or breach in all material respects during such period, the Trustee shall enforce the obligations of the Sponsor under the Mortgage Loan Purchase Agreement to repurchase . . . .

(STACS 2007-1 PSA § 2.03(a), Ex. 25.)  Thus, Syncora has it backward, and it is the Trustee who is obligated to give notice to GMACM of breaches of representations and warranties.

27

65.    Syncora cites to Section 3.01 of the STACS 2007-1 PSA (2d Am. POC ¶ 16, Ex. 4), but that section simply outlines general servicing principles, allowing GMACM to service and administer the mortgage loans "as determined by the Servicer in its reasonable judgment," and otherwise sets forth the conditions under which GMACM can waive prepayment charges. Syncora also points to GMACM's certification requirements under Item 1122 of SEC Regulation AB.  (*Id.*)  But that requirement relates to compliance with servicing criteria like cash collection, investor remittance, and pool administration and record practices.  17 C.F.R. 229.1122(d).  To the extent Item 1122 says anything about "safeguarding" loans, it only requires safeguarding "as required by the transaction agreements," which, again, impose no notice obligation that could lead to liability for the sponsor's breaches.  *Id.*

66.    The same is true of the BSSLT 2007-SV1 Trust, with respect to which Syncora may only obtain reimbursement *from the sponsor* and *not the servicer* where the sponsor fails to repurchase breaching loans.  (*See* BSSLT 2007-SV1 I&I Agr. § 3.03(b), Ex. 21.)  In fact, for the BSSLT 2007-SV1 Trust, the only contractual provision Syncora claims places any obligation on parties to give notice of loan breaches—Section 2.02(d) of the PSA—has nothing to do with notice of anything.  (2d Am. POC ¶ 10, Ex. 4 (citing PSA § 2.02(d), Ex. 22.)[23]  But even more puzzling is the fact that Syncora bothers to cite the Pooling and Servicing Agreement at all *when GMACM is not even a party to it*.  Where Syncora does manage to cite a BSSLT 2007-SV1 servicing agreement to which GMACM is a party, it still points to no provisions imposing any particular notice obligation on GMACM.  (*See* 2d Am. POC ¶ 6, Ex. 4 (citing Servicing Agreement § 4.03, Ex. 23 (requiring GMACM to "use reasonable efforts" to "maximize the receipt of principal and interest by [the Owner] EMC [Mortgage Corporation, *not* Syncora]").)

---

[23] Section 2.02 of the BSSLT 2007-SV1 PSA pertains to "Acceptance of the Mortgage Loans" by the Trustee.

2.      **Syncora Cannot Pursue Its Contractual Indemnification Claims.**

67.    Syncora also points to the indemnity provisions of its Insurance and Indemnity

Agreements, claiming those give Syncora recourse against GMACM as servicer for the

sponsor's underlying breaches.  (2d Am. POC ¶¶ 7, 14, 17, 24, Ex. 4.)  That argument, too, fails

as a matter of law.

68.    First, Syncora's indemnity claim fails because the transactions' indemnity

provisions provide Syncora no basis to seek indemnity for any first-party litigation between

Syncora and GMACM.[24]  Syncora itself recognizes that, in New York, an indemnity provision

will not apply to claims between the indemnitor and indemnitee unless the parties' intent to shift

costs is "unmistakably clear" in the language of the provision.  (Orig. Obj. Resp. at 21-22 (citing

*Hooper Assocs. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487 (1989).)  Syncora offers no

explanation of why such intent was "unmistakably clear" here, instead characterizing the

indemnity as "expansive."  (*Id.* at 23.)  The provisions contain no unequivocal statement that

they apply to the kinds of first-party claims Syncora seeks, and therefore they do not apply.

69.    In fact, the Supreme Court of New York recently rejected exactly this argument

by Syncora on an indistinguishable insurance and indemnity agreement.  *See Syncora Guar., Inc.*

*v. EMC Mortg. LLC*, No. 653519/2012, 2013 N.Y. Misc. LEXIS 3848 (N.Y. Sup. Ct. Aug. 21,

2013) ("[I]t is clear that the I&I Agreement contemplates indemnity rights for losses that relate

solely to third party claims. In contrast, Syncora is actually seeking indemnity for its own losses,

which are not cover[ed] by the indemnification provision.") (citing *Assured Guar. Mun. Corp. v.*

---

[24] *Haynes v. Kleinewefers*, 921 F.2d 453, 456 (2d Cir. 1990); *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74
N.Y.2d 487, 491 (1989) (reversing grant of summary judgment awarding interparty indemnification); *Gotham
Partners L.P. v. High River L.P.*, 76 A.D.3d 203, 206 (1st Dep't 2010) (same); *BNP Paribas Mortg. Corp. v. Bank
of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) ("Unless the indemnification clause refers 'exclusively or
unequivocally' to claims between the indemnitor and indemnitee, the court 'must find the agreement to be lacking
evidence of the required intent' to cover such claims.") (citation omitted).

*Flagstar Bank*, No. 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722 (S.D.N.Y. Sept. 7, 2011)

and *Gate Five, LLC v. Knowles-Carter*, 100 A.D.3d 416, 953 N.Y.S.2d 193 (1st Dep't 2012)).

That is not the first time that the courts have rejected Syncora's attempt to misuse contractual

indemnification clauses.  *See Syncora Guar. Inc. v. EMC Mortg., LLC*, No. 650420/12, 2013

N.Y. Misc. LEXIS 1519, at *12-13 (N.Y. Sup. Ct. Apr. 15, 2013) ("Such claims are classic first

party claims and beyond the contemplation of the indemnification provision, which is subject to

a strict interpretation.") [25]  The same result should obtain here.

70.    Second, the STACS 2007-1 Insurance and Indemnity Agreement provides that the

servicer and the sponsor will indemnify Syncora "severally but not jointly" for claims that might

arise as a result of their breaches, demonstrating that the servicer was not taking on any

indemnification obligation with respect to the sponsor's representations and warranties.  (STACS

2007-1 I&I Agr. § 3.04(a), Ex. 24).  Similarly, the BSSLT 2007-SV1 Insurance and Indemnity

Agreement lays out GMACM's indemnification obligation in a separate section from the

sponsor's obligations and makes clear that GMACM's obligations are triggered only through

breaches of its own representations and warranties outlined in Section 2.04, not other parties'

representations and warranties.  (BSSLT 2007-SV1 I&I Agr. § 3.04(b), Ex. 21; *see also id.* at §

2.04 ("Representations and Warranties of GMACM").)

---

[25] *See also Ambac Assur. Corp. v. First Franklin Fin. Corp.*, No. 651217/2012, 2013 N.Y. Misc. LEXIS 3092 (N.Y. Sup. Ct. July 18, 2013) ("Ambac fails to allege a third-party claim within the scope of Section 3.04, as the Trustee is a party to the I & I and its demand that Ambac make payment under the Policy is not a third-party claim as is required for indemnification under Section 3.04(d)."); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2013 N.Y. Misc. LEXIS 1818, at *43 (N.Y. Sup. Ct. Apr. 29, 2013) (granting summary judgment on indemnification claim and holding "[t]he language of the reimbursement provision at issue fails to meet *Hooper's* strict standard, as it is does not 'exclusively or unequivocally' refer to claims brought between the parties themselves"); *Assured Guar. Corp. v. EMC Mortg., LLC*, 650805/12, 2013 N.Y. Misc. LEXIS 1371 (N.Y. Sup. Ct. Apr. 4, 2013) ("Such claims are classic first party claims and beyond the contemplation of the indemnification provision, which is subject to strict interpretation."); *Bear Stearns Funding Trust 2007-AR2 v. EMC Mortg. LLC*, No. 6861-CS, 2013 Del. Ch. LEXIS 9, at *10 (Del. Ch. Jan. 15, 2013) ("The indemnification provisions in the Agreements cannot be read to cover first-party claims between EMC and the Trustee . . . ."); *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 11 Civ. 2375 (JSR), 2011 U.S. Dist. LEXIS 102722, at *18 (S.D.N.Y. Sept. 8, 2011) ("AGM's claims seeking indemnification and reimbursement must be dismissed. . . .").

71.     The servicing agreements likewise clarify GMACM's liability.  For example, the STACS 2007-1 Pooling and Servicing Agreement states that GMACM, as servicer, "shall be liable in accordance herewith only to the extent of the obligations specifically imposed by this Agreement upon [it] in [its] capacity[y] as . . . Servicer."  (STACS 2007-1 PSA § 7.01, Ex. 25.)

### C.     Syncora Cannot Assert Common Law Negligence Claims.

72.     With its Second Amended Proof of Claim, Syncora also attempts to add negligence claims for each of the transactions, alleging that GMACM and RFC are each "independently liable to Syncora for its negligence."  (2d Am POC ¶¶ 14, 24, 40.)

73.     Under New York's economic-loss doctrine, a breach of contract does not give rise to a tort claim unless a legal duty independent of the contract itself has been violated.  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).  Where the basis of a claim is an alleged breach of solely contractual obligations, like GMACM's agreement to service loans in accordance with customary practice, the negligence claim must be precluded as duplicative.  *Id.*

74.     In its Response to the Original Objection, Syncora argues that the economic loss doctrine does not apply in this case because GMACM owed Syncora a duty independent of the contract.  (Orig. Obj. Resp. ¶ 31, n.7.)  Syncora provides no explanation for what gives rise to this independent legal duty.  There is none.  If any such legal duty exists, it would be found in the agreements.  (*See, e.g.*, STACS 2007-1 PSA § 3.01, Ex. 25 ("[T]he Servicer shall service and administer the Mortgage Loans . . . giving due consideration to customary and usual standards of practice of prudent mortgage lenders and loan servicers administering similar mortgage loans . . . .").)  In any event, if these alleged duties were "independent of any duty imposed by contract," as Syncora claims, they also would be independent of any claim Syncora alleged in its Original Proof of Claim (which suggested only contractual rights arising out of the listed agreements) and

31

therefore would be new claims in contravention of the Bar Date.  Either way, Syncora's

negligence claims must be dismissed.

## NOTICE

75.     The Debtors have provided notice of this Objection in accordance with the Case

Management Procedures Order, approved by this Court on May 23, 2012 [Dkt. No. 141].

## CONCLUSION

76.     WHEREFORE, the Debtors respectfully request entry of the Proposed Order

disallowing and expunging the Original Proof of Claim, the First Amended Proof of Claim, and

the Second Amended Proof of Claim.


Dated: September 19, 2013                        /s/ Gary S. Lee
                                                Gary S. Lee
                                                J. Alexander Lawrence
                                                Kayvan B. Sadeghi

                                                MORRISON & FOERSTER LLP
                                                1290 Avenue of the Americas
                                                New York, New York 10104
                                                Telephone:  (212) 468-8000
                                                Facsimile:  (212) 468-7900

                                                Alexandra Steinberg Barrage
                                                2000 Pennsylvania Avenue, NW
                                                Washington, D.C.  20006
                                                Telephone: (202) 887-1552
                                                Facsimile: (202) 785-7525

                                                *Counsel for the Debtors and
                                                Debtors in Possession*