Exhibit 26

**In Re:**

*RESIDENTIAL CAPITAL, LLC, et al.*

*Case No. 12-12020-mg*

---

*September 11, 2013*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us.*



**Min-U-Script® with Word Index**

1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 12-12020-mg

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   RESIDENTIAL CAPITAL, LLC, et al.,

9

10                Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                September 11, 2013

19                10:05 AM

20

21   B E F O R E:

22   HON. MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1

2  (CC: Doc# 4603) Motion for Objection to Claim(s) Number: 4760

3  (Proof of Claim of PNC Bank, N.A.) (Claim No. 4760)

4  See Agenda for update

5

6  (CC: Doc# 4718) Debtors Motion Under Section 365 of the

7  Bankruptcy Code to Assume and Assign Servicing-Related

8  Agreements for Trusts Insured by Syncora Guarantee Inc. to

9  Ocwen Loan Servicing, LLC.

10  See Agenda for Status.

11

12  (CC: Doc No 4420) Third Interim Application of Dorsey & Whitney

13  LLP as Special Securitization and Investigatory Counsel for the

14  Debtors for Compensation and Reimbursement of Expenses Incurred

15  for the Period January 1, 2013 through April 30, 2013 for

16  Dorsey and Whitney LLP, Special Counsel.

17

18  (CC: Doc# 4455) Third Interim Application of Towers Watson

19  Delaware Inc. as Human Resources Consultant for the Debtors for

20  Compensation and Reimbursement of Expenses Incurred for the

21  Period January 1, 2013 through April 30, 2013 for Towers Watson

22  Delaware Inc., Consultant, period: 1/1/2013 to 4/30/2013,

23  fee:$7,308.10, expenses: $0.00.

24

25

1    (CC: Doc no. 4458, 4514) Third Application for Interim

2    Professional Compensation for Severson & Werson, PC, Debtor's

3    Attorney, period: 1/1/2013 to 4/30/2013, fee:$513,814.80,

4    expenses: $44,994.41.

5

6    (CC: Doc no. 4507) Third Application for Interim Professional

7    Compensation for Locke Lord LLP, Special Counsel, period:

8    1/1/2013 to 4/30/2013, fee:$259725.40, expenses: $2788.67.

9

10    (CC: Doc# 4511) Third Interim Fee Application of Deloitte &

11    Touche LLP for Compensation for Services Rendered and

12    Reimbursement of Expenses as Independent Auditor and Attest

13    Service Provider to the Debtors for the Period from January 1,

14    2013 through April 30, 2013 for Deloitte & Touche LLP, Auditor,

15    period: 1/1/2013 to 4/30/2013, fee:$2,984,455.50, expenses:

16    $0.00.

17

18    (CC: Doc# 4512) Third Fee Application of KPMG LLP, as Tax

19    Compliance Professionals and Information Technology Advisors to

20    the Debtors and Debtors in Possession, for Interim Allowance

21    and Compensation for Professional Services Rendered and

22    Reimbursement of Actual and Necessary Expenses Incurred from

23    January 1, 2013 through April 30, 2013 for KPMG LLP, Other

24    Professional, period: 1/1/2013 to 4/30/2013, fee:$290,753.90,

25    expenses: $60.00.

4

1

2    (CC: Doc# 4513) Third Interim Application of Bradley Arant

3    Boult Cummings LLP as Special Litigation and Compliance Counsel

4    for the Debtors for Compensation and Reimbursement of Expenses

5    Incurred for the Period from January 1, 2013 through April 30,

6    2013 for Bradley Arant Boult Cummings LLP, Special Counsel,

7    period: 1/1/2013 to 4/30/2013, fee:$2,416,978.11, expenses:

8    $144,016.28.

9

10   (CC: Doc no. 4521) Second Interim Application of Pepper

11   Hamilton LLP as Special Foreclosure Review Counsel for

12   Bankruptcy Issues for the Debtors for Compensation and

13   Reimbursement of Expenses Incurred for the Period January 1,

14   2013 Through April 30, 2013 for Pepper Hamilton LLP, Special

15   Counsel.

16

17   (CC: Doc# 4523) Third Interim Application of Rubenstein

18   Associates, Inc. as Corporate Communications Consultant for the

19   Debtors for Compensation and Reimbursement of Expenses Incurred

20   for the Period January 1, 2013 through April 30, 2013 for

21   Rubenstein Associates, Inc., Consultant, period: 1/1/2013 to

22   4/30/2013, fee:$2,317.50, expenses: $2,749.75.

23

24   (CC: Doc no. 4526) First Application for Interim Professional

25   Compensation for Ernst & Young LLP, Accountant.

5

1

2   (CC: Doc# 4527) Third Interim Application of Morrison Cohen LLP

3   for Allowance of Interim Compensation for Professional Services

4   Rendered and Expenses Incurred During the Period January 1,

5   2013 through April 30, 2013 for Morrison Cohen LLP, Other

6   Professional, period: 1/1/2013 to 4/30/2013, fee:$1,318,943.00,

7   expenses: $42,792.26.

8

9   (CC: Doc# 4528) Third Interim Application of Centerview

10  Partners LLC as Investment Banker for the Debtors for

11  Compensation and Reimbursement of Expenses Incurred for the

12  Period January 1, 2013 through April 30, 2013 for Centerview

13  Partners LLC, Other Professional, period: 1/1/2013 to

14  4/30/2013, fee:$1,200,000.00, expenses: $12,630.14.

15

16  (cc: Doc no. 4529) Third Application for Interim Professional

17  Compensation for Orrick, Herrington & Sutcliffe LLP, Special

18  Counsel

19

20

21

22

23

24

25

6

(CC: Doc# 4532) Third Application for Interim Professional Compensation /Third Interim Application of Curtis, Mallet-Prevost, Colt & Mosle LLP, as Conflicts Counsel to the Debtors and Debtors in Possession, for Allowance and Payment of Compensation for Professional Services Rendered and for Reimbursement of Actual and Necessary Expenses Incurred from January 1, 2013 Through and Including April 30, 2013 for Curtis, Mallet-Prevost, Colt & Mosle LLP, Debtor's Attorney, period: 1/1/2013 to 4/30/2013, fee:$1,480,650, expenses: $3,085.90.

(cc: Doc# 4533) First Interim Application of Perkins Coie LLP as Special Insurance Coverage Counsel to the Debtors for Compensation and Reimbursement of Expenses Incurred for the Period March 20, 2013 through April 30, 2013 for Perkins Coie LLP, Special Counsel, period: 3/20/2013 to 4/30/2013, fee:$441,806.00, expenses: $795.62.

(CC: Doc# 4542) Third Interim Application of FTI Consulting, Inc., as Financial Advisor for the Debtors for Compensation and Reimbursement of Expenses Incurred for the Period January 1, 2013 through April 30, 2013 for FTI Consulting, Inc., Other Professional, period: 1/1/2013 to 4/30/2013, fee:$5,501,118.50, expenses: $227,254.30.

1   (CC: Doc# 4547) Third Application for Interim Professional

2   Compensation for Troutman Sanders LLP, Other Professional,

3   period: 1/1/2013 to 4/30/2013, fee:$333,753.00, expenses:

4   $4,115.63.

5

6   (CC: Doc# 4551) Third Interim Application of Morrison &

7   Foerster LLP as Bankruptcy Counsel for the Debtors for

8   Compensation and Reimbursement of Expenses Incurred for the

9   Period January 1, 2013 through April 30, 2013 for Morrison &

10  Foerster LLP, Debtor's Attorney, period: 1/1/2013 to 4/30/2013,

11  fee:$22,790,342.6, expenses: $350,910.44.

12

13  (cc: Doc# 4557) Third Application for Interim Professional

14  Compensation for Carpenter Lipps & Leland LLP, Special Counsel,

15  period: 1/1/2013 to 4/30/2013, fee:$1,659,806.00, expenses:

16  $977,371.77.

17

18  (CC: Doc# 4558) Third Application for Interim Professional

19  Compensation for Mercer (US) Inc., Other Professional, period:

20  1/1/2013 to 4/30/2013, fee:$135661.17, expenses: $14,951.86.

21

22  (CC: Doc# 4534) Second Application for Interim Professional

23  Compensation for Pachulski Stang Ziehl & Jones LLP, Creditor

24  Comm. Aty, period: 1/1/2013 to 4/30/2013, fee:$349099.50,

25  expenses: $13706.60.(related document(s)3162)

8

1

2  (CC: Doc# 4537) First Application for Interim Professional

3  Compensation /First Interim Fee Application of Wilmer Cutler

4  Pickering Hale and Dorr LLP, as Special Counsel for Certain

5  Regulatory Matters to the Official Committee of Unsecured

6  Creditors of Residential Capital, LLC, et al. for Interim

7  Allowance of Compensation and for the Reimbursement of Expenses

8  for Services Rendered During the Period From December 12, 2012

9  Through April 30, 2013 for Wilmer Cutler Pickering Hale and

10  Dorr LLP, Creditor Comm. Aty, period: 12/12/2012 to 4/30/2013,

11  fee:$504,670.50, expenses: $2,231.33.

12

13  (CC: Doc# 4538) Second Interim Application of SilvermanAcampora

14  LLP, Special Counsel to Official Committee of Unsecured

15  Creditors, for Interim Allowance of Compensation for

16  Professional Services Rendered and for Reimbursement of Actual

17  and Necessary Expenses Incurred from January 1, 2013 through

18  April 30, 2013 for SilvermanAcampora LLP, Special Counsel,

19  period: 1/1/2013 to 4/30/2013, fee:$315,950.00, expenses:

20  $1,613.51.

21

22

23

24

25

1

2   (CC: Doc# 4561) Second Interim Application of Epiq Bankruptcy

3   Solutions, LLC, as Information Agent for the Official Committee

4   of Unsecured Creditors, for Allowance and Payment of

5   Compensation for Professional Services Rendered and for

6   Reimbursement of Actual and Necessary Expenses Incurred From

7   January 1, 2013 Through April 30, 2013 for Epiq Bankruptcy

8   Solutions, LLC, Other Professional, period: 1/1/2013 to

9   4/30/2013, fee:$39,644.20, expenses: $15,647.79.

10

11  (CC: Doc# 4563) Third Interim Application of AlixPartners, LLP,

12  Financial Advisor to the Official Committee of Unsecured

13  Creditors, for Compensation and Reimbursement of Expenses for

14  the Period January 1, 2013 Through April 30, 2013 for

15  AlixPartners, LLP, Other Professional, period: 1/1/2013 to

16  4/1/2013, fee:$4,379,636.25, expenses: $22,586.38.

17

18  (CC: Doc# 4564) Third Interim Application of Moelis & Company

19  LLC for Compensation for Professional Services Rendered and

20  Reimbursement of Actual and Necessary Expenses Incurred as

21  Investment Banker to the Official Committee of Unsecured

22  Creditors for the Period From January 1, 2013 Through April 30,

23  2013 for Moelis & Company LLC, Other Professional, period:

24  1/1/2013 to 4/1/2013, fee:$2,100,000.0, expenses: $15,805.11.

25

10

1

2  (CC: Doc# 4569) Second Application J F. Morrow, Consultant to

3  the Official Committee of Unsecured Creditors, for Interim

4  Allowance of Compensation for Professional Services Rendered

5  and for Reimbursement of Actual and Necessary Expenses Incurred

6  From January 1, 2013 Through April 30, 2013 for J.F. Morrow,

7  Consultant, period: 1/1/2013 to 4/1/2013, fee:$107,400.00,

8  expenses: $0.00.

9

10  (CC: Doc# 4570) Second Interim Application of Coherent

11  Economics, LLC as Consultant to the Official Committee of

12  Unsecured Creditors for Compensation and Reimbursement of

13  Expenses Incurred for the Period January 1, 2013 Through April

14  30, 2013 for Coherent Economics LLC, Consultant, period:

15  1/1/2013 to 4/30/2013, fee:$133,247.00, expenses: $3,601.98.

16

17  (CC: Doc no. 4571) Second Application of Analytic Focus, LLC,

18  Consultant to the Official Committee of Unsecured Creditors,

19  for Interim Allowance of Compensation for Professional Services

20  Rendered and for Reimbursement of Actual and Necessary Expenses

21  Incurred From January 1, 2013 Through April 30, 2013 for

22  Analytic Focus, LLC, Consultant.

23

24

25

11

1

2   (CC: Doc #4572) Second Interim Application of San Marino

3   Business Partners LLC as Consultant to the Official Committee

4   of Unsecured Creditors for Compensation and Reimbursement of

5   Expenses Incurred for the Period January 1, 2013 Through April

6   30, 2013 for San Marino Business Partners LLC, Consultant.

7

8   (cc: Doc no. 4573) Third Application of Kramer Levin Naftalis &

9   Frankel LLP, Counsel for the Official Committee of Unsecured

10  Creditors, for Interim Allowance of Compensation for

11  Professional Services Rendered and for Reimbursement of Actual

12  and Necessary Expenses Incurred From January 1, 2013 Through

13  April 30, 2013 for Kenneth H. Eckstein, Creditor's Attorney.

14

15  (CC: Doc# 4559) Application for Interim Professional

16  Compensation First Interim Application of Leonard, Street and

17  Deinard Professional Association, Special Minnesota Counsel to

18  the Examiner, for Allowance of Compensation and Reimbursement

19  of Expenses for the Period from April 15, 2013 Through and

20  Including April 30, 2013 for Leonard, Street and Deinard

21  Professional Association, Other Professional, period: 4/15/2013

22  to 4/30/2013, fee:$88,103.00, expenses: $2,345.00.

23

24

25

1

2  (CC: Doc# 4560) Second Application for Interim Professional

3  Compensation Second Interim Fee Application of Wolf Haldenstein

4  Adler Freeman & Herz LLP, Conflicts Counsel to the Examiner,

5  for Allowance of Compensation and Reimbursement of Expenses for

6  the Period from January 1, 2013 Through and Including April 30,

7  2013 for Wolf Haldenstein Adler Freeman & Herz LLP, Other

8  Professional, period: 1/1/2013 to 4/30/2013, fee:$77,787.00,

9  expenses: $1,623.06.

10

11  (CC: Doc# 4562) Third Application for Interim Professional

12  Compensation Third Interim Fee Application of Mesirow Financial

13  Consulting, LLC for Compensation and Reimbursement of Expenses

14  as Financial Advisor to the Examiner for the Period January 1,

15  2013 Through April 30, 2013 for Mesirow Financial Consulting,

16  LLC, Other Professional, period: 1/1/2013 to 4/30/2013,

17  fee:$23,210,644, expenses: $299,682.

18

19  (CC: Doc# 4565) Third Application for Interim Professional

20  Compensation Third Interim Fee Application of Chadbourne &

21  Parke LLP, Counsel to the Examiner, for Allowance of

22  Compensation and Reimbursement of Expenses for the Period

23  January 1, 2013 Through and Including April 30, 2013 for

24  Chadbourne & Parke LLP, Other Professional, period: 1/1/2013 to

25  4/30/2013, fee:$23771407.75, expenses: $1528915.11.

1

2  (CC: Doc# 4566) Third Application for Interim Professional

3  Compensation Third Interim Fee Application of Arthur J.

4  Gonzalez, as Chapter 11 Examiner, for Allowance of Compensation

5  and Reimbursement of Expenses for the Period January 1, 2013

6  Through and Including April 30, 2013 for Arthur J. Gonzalez,

7  Examiner, Other Professional, period: 1/1/2013 to 4/30/2013,

8  fee:$321,975.00, expenses: $0.00.

9

10  (CC: Doc# 4147) Adj. Hrg. Re: Motion for Omnibus Objection to

11  Claim(s) /Debtors Thirteenth Omnibus Objection to Claims (No

12  Liability - Books and Records Tax Claims).

13  The hearing as it relates to (i) Rose Plympton, Treasurer in

14  and for the County of Elmore, Idaho, and (ii) the Butte County

15  Tax Collector has been adjourned to October 23, 2013 at 10:00

16  am.

17

18  (CC: Doc# 4151) Adj. Hearing RE: Motion for Omnibus Objection

19  to Claim(s) /Debtors Seventeenth Omnibus Objection to Claims

20  (Misclassified Borrower Claims).

21  The hearing on this matter as it relates to Michelle R.

22  Strickland, Perry Goerner and Anthony Davide will be going

23  forward. The response of James D. Derouin has been withdrawn.

24

25

14

1

2   (CC: Doc# 4154) Adj. Hearing RE: Motion for Omnibus Objection

3   to Claim(s) /Debtors Eighteenth Omnibus Objection to Claims

4   (Borrower Claims with Insufficient Documentation).

5   The hearing on this matter as it relates to Brian Edmond Bath

6   and Ailette Cornelius will be going forward.

7

8   (CC: Doc# 4155) Adj. Hearing RE: Motion for Omnibus Objection

9   to Claim(s) /Debtors Nineteenth Omnibus Objection to Claims

10  (Borrower Claims with Insufficient Documentation)

11  The hearing on this matter as it relates to Gary T. Harper and

12  Julie L. Franklin-Harper and Joan Johnson will be going

13  forward. The hearing on this matter as it relates to Julian

14  Ortiz and Frances Soto-Ortiz has been adjourned to September

15  24, 2013.

16

17  (CC: Doc# 4156) Motion for Omnibus Objection to Claim(s)

18  /Debtors Twentieth Omnibus Objection to Claims (Borrower Claims

19  with Insufficient Documentation).

20  Hearing on this matter as it relates to Patricio Sulit, Ariel

21  Barel and Lucious Hughes will be going forward. The hearing on

22  this matter as it relates to Mark Ragonese is adjourned to

23  September 24, 2013.

24

25

1

2    (CC: Doc# 4158) Adj. Hearing RE: Motion for Omnibus Objection

3    to Claim(s) /Debtors Twenty-First Omnibus Objection to Claims

4    (Borrower Claims with Insufficient Documentation).

5    Hearing on this matter as it relates to Tom Franklin, the

6    Harleston Law Firm and Sonya Anthony Curry will be going

7    forward.

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:   Penina Wolicki

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

16

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:    LORENZO MARINUZZI, ESQ.

9        NORMAN S. ROSENBAUM, ESQ.

10        JORDAN A. WISHNEW, ESQ.

11        MERYL L. ROTHCHILD, ESQ.

12

13

14  MORRISON & FOERSTER LLP

15        Attorneys for Debtors

16        200 Pennsylvania Avenue, NW

17        Suite 5500

18        Washington, DC 20006

19

20  BY:    ALEXANDRA STEINBERG-BARRAGE, ESQ.

21

22

23

24

25

```
 1

 2    CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

 3          Conflicts Counsel to Debtors

 4          101 Park Avenue

 5          New York, NY 10178

 6

 7    BY:   MARYANN GALLAGHER, ESQ.

 8          JONATHAN WALSH, ESQ.

 9          MICHAEL A. COHEN, ESQ.

10

11

12    BRYAN CAVE LLP

13          Special Counsel to Debtors

14          560 Mission Street

15          25th Floor

16          San Francisco, CA 94105

17

18    BY:   LEE MARSHALL, ESQ.

19

20

21

22

23

24

25
```

18

1   PERKINS COIE LLP

2          Insurance Counsel to Debtors

3          700 Thirteenth Street, N.W.

4          Suite 600

5          Washington, DC 20005

6

7   BY:   SELENA J. LINDE, ESQ.

8

9

10  PERKINS COIE LLP

11         Insurance Counsel to Debtors

12         30 Rockefeller Plaza

13         25th Floor

14         New York, NY 10112

15

16  BY:   SCHUYLER G. CARROLL, ESQ.

17

18

19  SEVERSON & WERSON, P.C.

20         Special CA Counsel to Debtors

21         One Embarcadero Center

22         26th Floor

23         San Francisco, CA 94111

24

25  BY:   DONALD H. CRAMM, III, ESQ.

1

2    CARPENTER LIPPS & LELAND LLP

3         Special Counsel to Debtors

4         280 North High Street

5         Suite 1300

6         Columbus, OH 43215

7

8    BY:   DAVID A. BECK, ESQ.

9

10

11   LOCKE LORD LLP

12        Litigation Counsel to Debtors

13        111 South Wacker Drive

14        Chicago, IL 60606

15

16   BY:   BRIAN A. RAYNOR, ESQ.

17

18

19   DORSEY & WHITNEY LLP

20        Special Counsel for the Debtors

21        51 West 52nd Street

22        New York, NY 10019

23

24   BY:   JESSICA MIKHAILEVICH, ESQ.

25

20

1

2  UNITED STATES DEPARTMENT OF JUSTICE

3      Office of the United States Trustee

4      201 Varick Street

5      Suite 1006

6      New York, NY 10014

7

8  BY:   BRIAN S. MASUMOTO, ESQ.

9

10

11  KRAMER LEVIN NAFTALIS & FRANKEL LLP

12      Attorneys for Official Creditors' Committee

13      1177 Avenue of the Americas

14      New York, NY 10036

15

16  BY:   KENNETH H. ECKSTEIN, ESQ.

17      PHILIP BENTLEY, ESQ.

18      RACHAEL RINGER, ESQ.

19

20

21

22

23

24

25

21

1

2  WILMER CUTLER PICKERING HALE AND DORR LLP

3        Special Counsel to the Creditors' Committee

4        7 World Trade Center

5        250 Greenwich Street

6        New York, NY 10007

7

8  BY:    WILLIAM J. PERLSTEIN, ESQ.

9

10

11  SILVERMANACAMPORA LLP

12        Special Counsel to the Creditors' Committee

13        100 Jericho Quadrangle

14        Suite 300

15        Jericho, NY 11753

16

17  BY:    ROBERT D. NOSEK, ESQ.

18        RONALD J. FRIEDMAN, ESQ.

19

20

21

22

23

24

25

22

1

2   POLSINELLI SHUGHART

3        Attorneys for Kessler Class

4        900 Third Avenue

5        Suite 2100

6        New York, NY 10022

7

8   BY:   DAN FLANIGAN, ESQ.

9

10

11   ALSTON & BIRD LLP

12        Attorneys for Wells Fargo Bank

13        90 Park Avenue

14        New York, NY 10016

15

16   BY:   MICHAEL E. JOHNSON, ESQ.

17

18

19   COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

20        Attorneys for FTI Consulting Inc.

21        900 Third Avenue

22        16th Floor

23        New York, NY 10022

24

25   BY:   JOHN H. DRUCKER, ESQ.

23

1

2  SEWARD & KISSEL LLP

3       Attorneys for U.S. Bank, N.A. as Trustee for Greenpoint

4       One Battery Park Plaza

5       New York, NY 10004

6

7  BY:   ARLENE R. ALVES, ESQ.

8        MARK D. KOTWICK, ESQ.

9

10

11  CLEARY GOTTLIEB STEEN & HAMILTON LLP

12       Attorneys for Wilmington Trust

13       One Liberty Plaza

14       New York, NY 10006

15

16  BY:   MARK A. LIGHTNER, ESQ.

17

18

19  WEIL, GOTSHAL & MANGES LLP

20       Attorneys for Syncora Guarantee Inc.

21       767 Fifth Avenue

22       New York, NY 10153

23

24  BY:   SARA COELHO, ESQ.

25        RONIT J. BERKOVICH, ESQ.

24

```
 1
 2   CHADBOURNE & PARKE LLP
 3        Attorneys for the Examiner
 4        30 Rockefeller Plaza
 5        New York, NY 10112
 6
 7   BY:   HOWARD SEIFE, ESQ.
 8         DOUGLAS E. DEUTSCH, ESQ.
 9
10
11   LEONARD, STREET AND DEINARD
12        Attorneys for the Examiner
13        150 South 5th Street
14        Suite 2300
15        Minneapolis, MN 55402
16
17   BY:   ROBERT T. KUGLER, ESQ. (TELEPHONICALLY)
18
19
20   MORRISON COHEN LLP
21        Attorneys for Independent Directors
22        909 Third Avenue
23        New York, NY 10022
24
25   BY:   JOSEPH T. MOLDOVAN, ESQ.
```

1

2    DELOITTE LLP

3           30 Rockefeller Plaza

4           New York, NY 10112

5

6    BY:    ROLAND S. YOUNG, ESQ.

7

8

9    LATHAM & WATKINS LLP

10          Attorneys for Moelis & Co. LLC

11          885 Third Avenue

12          New York, NY 10022

13

14   BY:    MICHAEL RIELA, ESQ.

15

16

17   CLIFFORD CHANCE US LLP

18          Attorneys for Ocwen Loan Servicing

19          31 West 52nd Street

20          New York, NY 10023

21

22   BY:    JENNIFER DEMARCO, ESQ.

23

24

25

```
                                                                26

 1

 2   MUNGER TOLLES & OLSON LLP

 3        Attorneys for Berkshire Hathaway Inc.

 4        355 South Grand Ave.

 5        35th Floor

 6        Los Angeles, CA 90071

 7

 8   BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

 9

10

11   BRADLEY ARANT BOULT CUMMINGS LLP

12        Attorneys for Residential Capital

13        1819 Fifth Avenue North

14        Birmingham, AL 35203

15

16   BY:   JAY R. BENDER, ESQ. (TELEPHONICALLY)

17

18

19   FREEBORN & PETERS LLP

20        Attorneys for Mercer

21        311 South Wacker Drive

22        Suite 300

23        Chicago, IL 60606

24

25   BY:   DEVON J. EGGERT, ESQ. (TELEPHONICALLY)
```

27

```
 1
 2    PACHULSKI STANG ZIEHL & JONES
 3         Conflicts Counsel to Creditors' Committee
 4         780 Third Avenue
 5         36th Floor
 6         New York, NY 10017
 7
 8    BY:   ROBERT FEINSTEIN, ESQ. (TELEPHONICALLY)
 9
10
11    ORRICK, HERRINGTON & SUTCLIFFE LLP
12         Attorneys for Residential Capital
13         1152 15th Street, N.W.
14         Washington, DC 20005
15
16    BY:   DEBRA FELDER, ESQ. (TELEPHONICALLY)
17
18
19    PEPPER HAMILTON, LLP
20         Attorneys for Residential Capital
21         4000 Town Center
22         Suite 1800
23         Southfield, MI 48075
24
25    BY:   DEBORAH KOVSKY-APAP, ESQ. (TELEPHONICALLY)
```

28

1

2  FOLEY & LARDNER, LLP

3        Attorneys for Ernst & Young

4        150 East Gilman Street

5        Madison, WI 53703

6

7  BY:   MATTHEW D. LEE, ESQ. (TELEPHONICALLY)

8

9

10  TROUTMAN SANDERS LLP

11        222 Central Park Avenue

12        Suite 2000

13        Virginia Beach, VA 23462

14

15  BY:   JASON MANNING, ESQ. (TELEPHONICALLY)

16

17

18  JONES DAY

19        Attorneys for FGIC

20        555 South Flower Street

21        50th Floor

22        Los Angeles, CA 90071

23

24  BY:   RICHARD L. WYNNE, ESQ. (TELEPHONICALLY)

25

29

```
 1
 2    BALLARD SPAHR, LLP
 3         Attorneys for PNC
 4         1735 Market Street
 5         51st Floor
 6         Philadelphia, PA 19103
 7
 8    BY:   VINCENT J. MARRIOTT, III, ESQ.
 9         SARAH SCHINDLER-WILLIAMS, ESQ.
10
11
12
13    ALSO PRESENT: (TELEPHONICALLY)
14         ANTHONY L. DAVIDE, Pro Se
15         LAURA J. EISELE, AlixPartners
16         ALAN FRANKEL, Coherent Economics
17         PERRY E. GOERNER, Pro Se
18         LUCIOUS L. HUGHES, Pro Se
19         J.F. MORROW, Pro Se
20         JACOB THOMSON, Towers Watson
21         TODD WUERTZ, Epiq Bankruptcy Solutions, LLC
22
23
24
25
```

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    of the hearing, when I said no, I'm not approving on a

2    preliminary basis, to come back and say, oh, we've worked this

3    out, Your Honor.  And sure, but I made a point of saying then,

4    that isn't necessarily what's going to be binding on me, for

5    example, if there would have been a proof of claim, which there

6    have been, and you can come back and assert it later.

7         I have a contract now and it says this is the

8    following judgment reduction provision.  Okay?  And that may

9    be -- there may be no right to contribution; we'll see.  And

10   I'm not sure whether it's me or the judge in Pittsburg who is

11   ultimately going to decide it, but for today the ruling is I

12   sustain the debtors' objection to the claim solely on the basis

13   of 502(e)(1), period, full stop.

14        MR. MARRIOTT:  Thank you, Your Honor.

15        THE COURT:  Okay?  Next matter.  And debtors' counsel

16   should submit an order to that effect.

17        MR. MARINUZZI:  Your Honor, that brings us --

18        UNIDENTIFIED SPEAKER:  May I be excused, Your Honor?

19        THE COURT:  You're excused, absolutely.

20        UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

21        THE COURT:  Thank you.

22        MR. MARINUZZI:  Your Honor, that brings us to item

23   number 2 on page 5, which is the debtors' motion under Section

24   365 to assume and assign servicing related agreements for

25   trusts ensured by Syncora Guarantee, Inc. to Ocwen Loan

**RESIDENTIAL CAPITAL, LLC, ET AL.**

90

1    Servicing, LLC.

2         Your Honor, my colleague, Alexandra Barrage, will

3    present the debtors' objection -- the debtors' motion; I'm

4    sorry.  I would like to --

5         THE COURT:  I'm completely confused by this matter,

6    I've got to tell you.

7         MR. MARINUZZI:  Okay, but it's an important matter,

8    Your Honor, and I'd like to spend a minute just setting an

9    overview, try to set the stage for the motion and why it's so

10   important to the debtors and to their constituents in the case.

11        Your Honor is well aware there is a plan on file,

12   proposed by the debtors and proposed by the creditors'

13   committee, and we hope to have a confirmation hearing begin in

14   approximately two months.  And to say that the plan settles a

15   whole host of complicated intra-debtor, intra-creditor and

16   third party claims is really an understatement.  What was

17   achieved over the months of mediation, to resolve that many

18   disputes, still, frankly, when I think about where this case

19   was a year ago, I'm still amazed.  We've got to get to

20   confirmation; we know that.  We know we're going to have some

21   issues, and we think we've done a pretty good job, with Your

22   Honor's help, of identifying the key issues.  And we

23   anticipated, as part of the mediation process under Judge Peck,

24   that ran for months, what challenges we thought we would face.

25   And we weren't able to resolve everything, and so we know, and

**RESIDENTIAL CAPITAL, LLC, ET AL.**

91

1    everybody understood and accepted that we have issues for

2    confirmation with respect to the JSNs and with respect to the

3    FHFA.   No secret.

4            But by and large, the mediation process was driven by

5    some fundamental assumptions.   One of the fundamental

6    assumptions is that people comply with the Court's orders.   And

7    so in reliance on this, there were a number of assumptions

8    carefully vetted by the participants in the mediation regarding

9    assets, claims, negotiations regarding AFI's possible liability

10   on certain claims.   I mean, people really were well informed,

11   and people drilled down on these estimates and assumptions.

12   And I think parties relied, as they participated in these

13   mediation sessions, that they had a pretty good grasp, albeit

14   conservative, of what the universe of claims were in this case.

15   And again, it was fundamentally formed by the claims bar date

16   having passed, the cure bar date having passed, negotiations

17   with creditors, creditors who said we believe our claim is X;

18   at least you can negotiate when somebody tells you their claim

19   is X.

20           THE COURT:   Did you build into that, though, when you

21   initially have a schedule for assumption of contracts, and you

22   have Syncora on it, and then you withdraw it from the schedule,

23   and only later, now try to assume the contract?

24           I mean, that's -- when I say I'm really confused with

25   this, I understand you say, oh, it was a month after the bar

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    date when we did this, but you remove -- are you assuming it or

2    are you not assuming it?  How many times can you change your

3    mind?  What are the consequences of doing that?

4          I don't see any -- I mean, why don't I take it as of

5    the time you withdrew it from the schedule on assumption?  I

6    guess Ocwen decided they really do want it.

7          Okay.  It raises the whole issue about cure claim, and

8    why doesn't the time for filing a cure claim run from when you

9    really say we want to assume it, which is the second time, not

10   the first time?  I really am confused by this.

11         MR. MARINUZZI:  Your Honor -- and I think I would be

12   doing a disservice if I tried to explain the Court's confusion

13   as well as Ms. Barrage will explain it --

14         THE COURT:  Well, then she'll explain it to me.

15         MR. MARINUZZI:  -- and the history.  But I think --

16         THE COURT:  It isn't that --

17         MR. MARINUZZI:  -- the key --

18         THE COURT:  I'm sorry Mr. Marinuzzi.  The history of

19   the case doesn't solve this problem for me.  Okay.  I live the

20   history of this case every day.  All right.  I understand the

21   history of the case.  I understand the importance of everything

22   that goes on in the case.

23         Let's -- let me deal with the specific issue I have to

24   deal with.

25         MR. MARINUZZI:  That's fine, Your Honor.  Cede the

12-12020-mg   Doc 5115-26   Filed 09/19/13   Entered 09/19/13 15:39:29   Exhibit 26
Pg 36 of 59
**RESIDENTIAL CAPITAL, LLC, ET AL.**

93

1  podium to Ms. Barrage.  Thank you.

2         MS. BARRAGE:  Thank you, Your Honor.  Alexandra

3  Barrage of Morrison & Foerster, on behalf of the debtors.  Your

4  Honor, I want to erect -- excuse me, I want to address your

5  direct question on the confusion on the issue.  And I think

6  Your Honor is really touching on the point that Syncora makes

7  in its papers about subsequent to the cure deadline being taken

8  off the assumed contract list.

9         Your Honor, when Ocwen and the debtors convened prior

10  to the sale hearing, it was determined that the Syncora deals

11  be taken off the list in full adherence to this Court's sale

12  procedures order and to the asset purchase agreement.  The

13  sales procedures order was very clear that the debtors always

14  had the ability, in consultation with our purchaser, who at the

15  time was Ocwen, to take agreements off the list.

16         However, those agreements were temporarily taken off

17  the list, Your Honor.  And that was made very clear to Syncora,

18  and if I may --

19         THE COURT:  Is there something in the order that talks

20  about temporarily taking things off the list?

21         MS. BARRAGE:  Your Honor, there is something in the

22  transcript that I'd like to read into the record --

23         THE COURT:  Go ahead.

24         MS. BARRAGE:  -- if I may; I have copies of the

25  transcript.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

94

1          THE COURT:  Thank you.

2          MS. BARRAGE:  Your Honor, for the record, I've just

3  handed up a copy of the November 19th, 2012 hearing transcript,

4  which came from the first day sale hearing.

5          Your Honor, if you please would take a look at, first,

6  page 75 of the transcript.

7          THE COURT:  Okay.

8          MS. BARRAGE:  It starts at line 5.  There's a colloquy

9  between Your Honor and Mr. Coelho for Syncora.  This touches on

10  the point of the temporary aspect I just raised, if I may.

11          "Your Honor, I'm Sara Coelho from Weil.  We're counsel

12  for Syncora Guarantee.  Let me start by saying that if we are

13  indeed removed from the sale permanently, then our objection is

14  resolved.

15          "However, what the debtors have told us is not that.

16  What the debtors have told us is that they may seek to assume

17  and assign the contracts at a later date, pursuant to a

18  separate but similar order and on the same terms as under the

19  Ocwen APA."

20          Your Honor, there was no mystery here.  We never

21  waived our ability to try and get these deals and resolve our

22  issues --

23          THE COURT:  Yeah, but the issue for me --

24          MS. BARRAGE:  -- with Syncora --

25          THE COURT:  -- is -- that's all well and good.  They

1    knew you might try and later assume the contract.  The issue

2    for me is when you take them off, does the original bar date

3    for cure claims apply once you take it off?  Or once you

4    decide -- you took it off and you decide later, no, Ocwen wants

5    it; we're going to make a motion to assume it.

6              So the issue is then, what's the bar date for cure

7    claims when you put it back?  That's what I don't see

8    adequately addressed.

9              MS. BARRAGE:  Your Honor, two responses.  The first is

10   your sale procedures order was very clear.  It said there was a

11   cure deadline of September 28th.

12             There was also on the same date a deadline to object

13   to the sale; Syncora objected to the sale on that date.  That

14   objection said nothing about cure amounts or the fact that they

15   had any issue with us scheduling them at zero.  We assumed, and

16   until last week assumed, that there was not a cure issue here.

17             Secondly, Your Honor, we think there's really no need

18   to look beyond your sale order.  And we think that parties in

19   similar procedural postures like FGIC and MBIA, they complied

20   with that deadline.  And the reason that we're here today,

21   having --

22             THE COURT:  Did FGIC and MBIA, did you put them on a

23   list and take them off a list?

24             MS. BARRAGE:  Only with respect to MBIA, Your Honor,

25   we did.  They were taken off a list; that was referenced

**RESIDENTIAL CAPITAL, LLC, ET AL.**

96

1   directly in our reply.  And subsequently, we resolved our

2   issues with MBIA as we did with FGIC.

3           THE COURT:  Well, when you --

4           MS. BARRAGE:  And that was our hope --

5           THE COURT:  -- when you resolve an issue, that's not

6   precedent for -- that doesn't determine the outcome where you

7   don't resolve the issue.

8           MS. BARRAGE:  Understood.  I think the bigger point

9   here, Your Honor, is we've always tried to resolve our issues

10  with Syncora.  We think the cure deadline was clear.  We think

11  there was no mystery about how we were proceeding in our

12  negotiations.  We were proceeding in our negotiations to get

13  them comfortable on adequate assurance.  We were not dealing

14  with potential 212 million dollars of servicing breach claims.

15  That wasn't the tenor of our discussions.

16          So in large part, it's really not just follow the

17  deadline, it's also tell us.  If you really thought you had a

18  cure claim back in September --

19          THE COURT:  All right.  You're telling me that never

20  once, in words or in substance, did Syncora tell you they think

21  they had a cure claim.

22          MS. BARRAGE:  No, I'm not saying that, Your Honor.  I

23  think our position is this.  We're taking a reasonable approach

24  here.  We're saying to the extent --

25          THE COURT:  Let me stop you.  Did anybody from

**RESIDENTIAL CAPITAL, LLC, ET AL.**

97

1    Syncora, in words or in substance, tell you that they believed

2    they had a cure claim?

3            MS. BARRAGE:  As part of our discussions to try and

4    raise these issues, no.  As part of their subsequent filings

5    and footnotes, they raised the specter of potential hundreds of

6    millions of dollars of claims.  We never got any detail on that

7    until last week.

8            So I think our approach is reasonable here, Your

9    Honor.  We're not saying no cure claims.  We're saying, after

10   that deadline, tell us what you think those cure claims are and

11   we'll look at them.  So we're asking your Court to simply draw

12   a line in the sand.

13           Apart from this motion, there is a claims objection

14   pending.  That -- those issues and the alleged -- no, the --

15   excuse me --

16           THE COURT:  Why --

17           MS. BARRAGE:  -- the amended --

18           THE COURT:  Yeah.  And one question I have is --

19           MS. BARRAGE:  Sure.

20           THE COURT:  -- is why I should hear this outside of

21   the context of that claim objection; let me --

22           MS. BARRAGE:  Because --

23           THE COURT:  -- hear the whole thing as one ball of

24   wax, and decide?

25           MS. BARRAGE:  Your Honor, those -- the issues in the

1  claims objection are directly linked to this cure claim

2  deadline.

3          THE COURT:  That's why I ought to hear it together.

4          MS. BARRAGE:  And we're asking Your Honor to draw a

5  line in the sand and tell us --

6          THE COURT:  When is that scheduled for?

7          MS. BARRAGE:  I believe it's scheduled -- our reply is

8  due the 19th, Your Honor.  But the parties are in discussions

9  about scheduling a future hearing on the merits and the

10  procedural issues with respect to that objection.

11          But Your Honor's -- to the extent Your Honor is

12  inclined to decide this cure claim issue, I think it's going to

13  directly affect potential and burdensome discovery on our claim

14  objection.  Because if we go down the discovery road, we could

15  potentially be opening ourselves up to discovery preceding the

16  September 20th, 2012 --

17          THE COURT:  Okay.  Let me ask you this.

18          MS. BARRAGE:  -- deadline.

19          THE COURT:  Do you have any cases that directly deal

20  with the issue of the deadline for cure claims where a debtor

21  has removed contracts from an assumption schedule and later

22  puts it back on?

23          MS. BARRAGE:  Your Honor, we do not.  I think the

24  closest analogue in the cases are really the line of cases

25  beginning with Drexel on bar date type -- strictly adhering to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1   bar dates.  I don't think that this is exactly that.  We

2   don't --

3          THE COURT:  It's not exactly that.  I understand --

4   I -- the Second Circuit law on bar dates is, I think, quite

5   clear.  Okay.  But this has thrown a real -- when I say I'm

6   confused by the whole thing, this has thrown a real monkey

7   wrench into it.

8          If you hadn't removed them from the schedule, I think

9   the answer would be clear.  There was a bar date deadline.

10  They were listed on the schedule for assumption.  They didn't

11  file a cure claim within the time provided.  Too late, to bad.

12  Okay.

13         But there's the twist here.  The twist is the debtor

14  removed them from the schedule.  You essentially -- hang on.

15  The transcript you point to, Ms. Coelho's statement about, "Let

16  me start by saying that if we are indeed removed from the sale

17  permanently, then our objection is resolved."  Okay.

18         Well, it doesn't say that remove us now, put us back

19  later, the objection isn't there.  What I don't have is clear

20  case authority to support your position that having once

21  removed them, now seeking to assume that you can stand on the

22  bar date that applied previously.

23         I understand there is this -- it was a month after the

24  bar date ran.  I mean, did -- let me ask you this.  What

25  will -- what do you anticipate the facts would show at any

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  contested hearing as to whether you told Syncora's counsel that

2  you were going to remove them from the schedule of assumed

3  contracts?  Were they told that before the bar date and it just

4  took until a month after before it actually happened?

5         MS. BARRAGE:  No, Your Honor.  We did not tell them

6  that before the bar date.  We told them that several days

7  before the sale hearing.  I have a cite, if Your Honor will

8  give me just a minute.

9         And the notice to Syncora on that point was as part of

10  our omnibus response to the sale objections.  It's cited in our

11  reply, and I'm sorry; I'm just -- okay.

12         So if Your Honor turns to our reply --

13         THE COURT:  I have too much paper up here; you're

14  going to have to --

15         MS. BARRAGE:  Sorry, Your Honor.

16         THE COURT:  -- read it to me.

17         MS. BARRAGE:  Paragraph 6, footnote 7, in our omnibus

18  reply to objections to the debtors' sale motion at docket

19  number 2135, we noted that both MBIA and Syncora's agreements

20  would be removed from the schedule.  So this was approximately

21  a month after the cure deadline.

22         THE COURT:  And you never told them before that that

23  you were going to remove them from the schedules?

24         MS. BARRAGE:  No, Your Honor, we did not.

25         THE COURT:  Like I say, I'm confused.  I don't know.

1    Mr. Eckstein?

2           MR. ECKSTEIN:  Your Honor, I'm not sure I can

3    significantly -- I can't respond to the case question, but I

4    think it's important to have a little context here.

5           The -- as of September there's no -- there's no

6    debate.  There were -- there are handful of important monolines

7    in this case.  They all were very, very well aware of the case.

8    They're all experienced in these types of situations, well

9    represented.  They all did two things.  They expressed whether

10   or not they did or didn't have objections to the sale.  And

11   they expressed whether they had pre-petition cure claims.  And

12   everybody did that.

13          Syncora did not assert any cure claims, because if

14   they had cure claims, they would have asserted cure claims.

15   They didn't assert a cure claim.

16          We, therefore, had the following facts on the ground.

17   We had -- in the case of Syncora, they had significant

18   objection to the sale and they had no cure claims.  The

19   judgment was, at that -- at the time, the estate was deciding

20   whether or not taking Syncora out was, from a business

21   standpoint, sensible.  Because it might have turned out that

22   the Syncora transactions were so small relative to the

23   transaction that it wasn't it worth the candle.  But we worked

24   with the assumption that we had no cure claims.

25          Now, at the time, we decided to take them out, because

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1  we were debating whether or not it made sense as a business

2  matter.  It was not to reconsider whether there were pre-

3  petition cure claims.  It was to make a business decision with

4  Ocwen and with Syncora whether or not there were servicing

5  adjustments that would get made.  But it was all based upon a

6  playing field.

7          Now, for better or for worse, for reasons that,

8  frankly, I can't even speak to, it hasn't gotten resolved.  But

9  the fact of the matter is we're prepared to go forward and let

10 Ocwen take over the transactions and deal with the objections

11 to the sale that Syncora raises.  And we're not asking for the

12 Court today to overrule those objections.

13         The problem we're having right now is that all of a

14 sudden, frankly, nine months after all of that happened, or

15 even almost a year after that happened, instead of we had zero

16 pre-petition cure claims, all of a sudden, several hundred

17 million of pre-petition cure claims.  That's not a de minimis

18 problem given the fact that we have a disclosure statement out.

19 And that's the reason why this is important.

20         THE COURT:  Well --

21         MR. ECKSTEIN:  There's no reason why they all of a

22 sudden should have do over on a pre-petition cure claim.  They

23 knew exactly what they had to do then.

24         THE COURT:  What's the proof of claim they filed?  Ms.

25 Barrage, what's it for?

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          MS. BARRAGE:  Pardon me, Your Honor.  What is it?

2          THE COURT:  Yes.

3          MS. BARRAGE:  Well, the first proof of claim that was

4     filed was a proof of claim against GMACM in an unliquidated

5     amount for servicing-related breaches.

6          THE COURT:  Are the -- what's your argument to expunge

7     the claim?  Is it -- was it timely filed?

8          MS. BARRAGE:  The argument on the original proof of

9     claim -- we don't take any issue that it was not timely filed.

10    There are a number both procedural and substantive issues, and

11    I might cede the podium to my colleague, or --

12          MR. ECKSTEIN:  Syncora filed claims against GMACM.

13    They didn't file claims against RFC based upon transactions.

14    The debtor didn't issue the Syncora transaction.  So it's a --

15    it was sort of a --

16          THE COURT:  You're saying they filed against the wrong

17    entity.

18          MR. ECKSTEIN:  They now want to assert a claim against

19    other debtors.  That's, per se, not appropriate at this

20    stage --

21          THE COURT:  Well --

22          MR. ECKSTEIN:  -- of the case.

23          THE COURT:  -- it may get knocked out.

24          MR. ECKSTEIN:  They knew they were on multiple

25    debtors.  They could have filed them against multiple debtors;

**RESIDENTIAL CAPITAL, LLC, ET AL.**

104

1    they didn't.  It's not complicated with markets.

2              THE COURT:  Let me hear from Syncora's counsel.

3              MS. BARRAGE:  Okay.

4              MS. COELHO:  Good afternoon, Your Honor.  I'm Sara

5    Coelho from Weil.  We represent Syncora Guarantee, Inc.  Before

6    I address my own arguments, I'd like to respond to some of the

7    things that the debtors and the committee have -- had said.

8              First of all, they have framed this up as some kind of

9    plan or confirmation issue.  This is not a confirmation issue.

10   This is an issue of whether or not Syncora can assert a cure

11   claim with respect to a -- what in this case is a very small

12   sale.  And if Syncora prevails in asserting a large cure claim,

13   one of two things will happen.  Either Syncora will have to

14   agree to compromise that claim, or the debtors will end up

15   walking away from the sale.

16             So first of all, what is being decided here today will

17   have --

18             THE COURT:  Well, they can decide --

19             MS. COELHO:  Well, and Syncora would have to prove out

20   the cure claim.

21             THE COURT:  They can simply just reject the

22   contract --

23             MS. COELHO:  That's right.

24             THE COURT:  -- they'll just reject the contract.

25             MS. COELHO:  That's right.  And they will have to

**RESIDENTIAL CAPITAL, LLC, ET AL.**

105

1  consider, if they reject the contract, whether there are

2  rejection damages; I expect there will be substantial ones.

3         THE COURT:  Your unsecured rejection damage claim is

4  going to get paid at a fraction of what you could negotiate a

5  cure claim.  Okay.  But that's your problem.

6         MS. COELHO:  That's right.  And we understand all of

7  that.  And all of those issues are for another day.  But I

8  think it's important to keep the --

9         THE COURT:  So why didn't you file --

10        MS. COELHO:  -- to keep the record clear what the

11 focus is today.

12        THE COURT:  Why didn't you file a cure claim by the

13 bar date?

14        MS. COELHO:  We -- when we looked at the sale -- at

15 the sale that was proposed last summer, it was a very defective

16 sale with a severe severance of contracts that proceeded in a

17 way that was very novel and unusual.  And we made an assessment

18 of how to proceed in objecting.  And we decided at that time --

19        THE COURT:  Everybody files a protective claim.

20        MS. COELHO:  -- to object.

21        THE COURT:   I mean, any --

22        MS. COELHO:  We decided at that time to file an

23 objection.  We vigorously file -- we vigorously objected.  We

24 did, in the second objection deadline, assert a cure claim, and

25 the debtors --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

106

1          THE COURT:  It's not a proof of claim.

2          MS. COELHO:  -- responded.  And I --

3          THE COURT:  It's not a claim.

4          MS. COELHO:  The debtors responded by --

5          THE COURT:  Putting a footnote --

6          MS. COELHO:  -- removing us.

7          THE COURT:  -- in a brief is not a claim.

8          MS. COELHO:  The debtors were well aware of that claim

9   and they respond -- instead of objecting to that claim, and

10  instead of objecting --

11         THE COURT:  You didn't file a claim.  They didn't have

12  to object to a claim.  You put a footnote in a brief; you

13  didn't file a claim.

14         Do you have any authority that says after a contract

15  is removed from a schedule for assumption and rejection, and

16  the debtor later decided to file a motion to assume, that a

17  different bar date applies?  Do you have any case -- I want --

18  I don't -- I didn't find anything.

19         I asked Ms. Barrage and she doesn't have any.  I'm

20  asking you specifically.  I want a direct answer to this

21  question.  Do you have any authority that says that a different

22  bar date would apply when a contract is later sought to be

23  assumed?

24         MS. COELHO:  The authority for bar -- bar dates have

25  to be set very clearly --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

107

```
 1              THE COURT:  Could you answer my question?  Do you have
 2   any --
 3              MS. COELHO:  I --
 4              THE COURT:  -- case --
 5              MS. COELHO:  I --
 6              THE COURT:  -- authority dealing with this situation?
 7              MS. COELHO:  I --
 8              THE COURT:  Yes or no?  Yes or no?
 9              MS. COELHO:  This particular --
10              THE COURT:  Yes.
11              MS. COELHO:  -- fact pattern --
12              THE COURT:  Yes.
13              MS. COELHO:  I have not found a case --
14              THE COURT:  Okay.
15              MS. COELHO:  -- on this particular --
16              THE COURT:  All right.
17              MS. COELHO:  -- fact pattern.
18              THE COURT:  Thank you for answering my question.
19              MS. COELHO:  I don't --
20              THE COURT:  Stop.
21              MS. COELHO:  -- say that there --
22              THE COURT:  Stop.  When I ask a direct question, I
23   expect a direct answer.  Once I get the answer, I will allow
24   counsel to continue to argue.  I will continue to interrupt you
25   until you answer a direct question that I ask.  Do you
```

**RESIDENTIAL CAPITAL, LLC, ET AL.**

108

1   understand that?

2           MS. COELHO:  I do.

3           THE COURT:  Do you have any authority directly on

4   point?

5           MS. COELHO:  Directly --

6           THE COURT:  Yes or no?

7           MS. COELHO:  -- on this fact pattern --

8           THE COURT:  Yes.

9           MS. COELHO:  -- no.

10          THE COURT:  Okay.  Go ahead and give us your argument.

11          MS. COELHO:  So it is very clear today that what we

12  are arguing over is simply whether Syncora can assert a cure

13  claim.

14          THE COURT:  Simple?

15          MS. COELHO:  We're not arguing over -- we are not

16  arguing over what assumptions people made in a mediation that

17  we were not a part of.  I would just say that --

18          THE COURT:  This has got nothing to do with --

19          MS. COELHO:  -- there was a proof a claim --

20          THE COURT:  -- mediation.

21          MS. COELHO:  -- there were schedules --

22          THE COURT:  This has --

23          MS. COELHO:  -- per Duff & Phelps.

24          THE COURT:  Mr. Coelho --

25          MS. COELHO:  Okay.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1         THE COURT:  Stop.  This has nothing to do with

2    mediation.  I don't want to hear about mediation.

3         MS. COELHO:  Okay.  I agree.  Thank you.

4         I want to clarify some of the facts on what happened

5    at the sale last year.  Because what happened at the sale was

6    not that the debtors reserved their rights to continue the

7    Syncora -- litigating over the Syncora objections as though it

8    was an adjourned objection.

9         What the debtors did at the sale was withdrew their

10   motion as to the Syncora contracts entirely.  And I think the

11   record is very clear on that point.  The transcript that Ms.

12   Barrage gave Your Honor is very clear on that point.  Both the

13   debtors and the committee said that if they were to assume the

14   contracts later, it would be by separate motion.

15        I have written confirmation from Ms. Barrage that they

16   were initially removing the contracts from the sale entirely

17   and that they would not be sold to Ocwen.  They did, then,

18   later add the contracts back into the sale and then removed

19   them again, because they didn't want our objection to be heard

20   at the sale hearing.

21        So I think that we have a lot of evidence on the

22   record that both the debtors and the committee and, certainly,

23   Syncora all thought that these contracts were not being -- the

24   dispute with respect to these contracts was not being

25   adjourned; it was being -- the con -- the motion was being

**RESIDENTIAL CAPITAL, LLC, ET AL.**

110

1   withdrawn with respect to these contracts.

2          The sale procedures order is very clear that it sets a

3   deadline only with respect to assumed contracts.  And it

4   defines assumed contracts.  And it uses -- and it says at

5   paragraph 22 that assumed con -- that contracts fail to be

6   assumed --

7          THE COURT:  So stop for a second.  What Ms. Barrage

8   has argued in her papers is that this contract was on a

9   schedule for assumption until the bar date had come and gone --

10  the bar date for cure claims had come and gone.  It's only a

11  month after that that they removed it.  Do you agree with that?

12         MS. COELHO:  Yes, I do agree with that.

13         THE COURT:  Okay.

14         MS. COELHO:  They removed it after --

15         THE COURT:  So the consequence -- what's the

16  consequence?  The issue is, it was -- this contract was listed

17  on the schedule for assumption.  There was a bar date set for

18  filing cure claims.  No claim was filed by the bar date.  It

19  was only after that that this contract was removed.  So what's

20  the consequence of that?

21         MS. COELHO:  Pursuant to the terms of that order,

22  setting that bar date, once the contract is removed, that bar

23  date does not apply.

24         THE COURT:  Where is that in the order?

25         MS. COELHO:  That is -- if you read paragraph 22(d) --

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1          THE COURT:  What does it day?

2          MS. COELHO:  Excuse me; 21(d) has the definitions for

3     cure amounts in assumed contracts.  I have copy of the order.

4     Would you like me to bring it --

5          THE COURT:  No; why don't you just --

6          MS. COELHO:  -- the bench?

7          THE COURT:  -- read me that paragraph?

8          MS. COELHO:  Okay.  22(d) says, "On or before" -- this

9     is where the definitions are located. -- "On or before July

10    25th, the debtor shall file a schedule (the schedule) of

11    contracts that Nationstar has designated to be assumed and

12    assigned" -- defined as the Assumed Contracts -- "including the

13    cure amounts related to such assumed contracts" -- defined the

14    Cure Amounts.  And then it goes on to talk about service of

15    that schedule.

16         The next paragraph, paragraph 22 says, "Subject to

17    certain exceptions expressly provided for in the Nationstar

18    APA, Nationstar shall be entitled to remove any assumed

19    contract from the relevant schedule until two business days

20    prior to the closing date, in which case, the contract release

21    shall cease to be an Assumed Contract."  And there it uses --

22    it capitalizes the A, it capitalizes the C, and uses the

23    defined the defined term for assumed contract used throughout

24    the order.

25         Paragraph 28 establishes the consequences for failure

1  to file a cure claim by the deadline.  It says, "Any Contract

2  Objection" -- capital C, capital O -- "that challenges a Cure

3  Amount" -- as -- using the defined term; capital C, capital

4  A -- "or otherwise asserts that there exist outstanding

5  defaults under an Assumed Contract" -- again, the defined

6  term -- "must set forth with specificity the Cure Amount" -- as

7  defined using the defined term -- "being claimed by the

8  objecting party, or the nature of the asserted default, as

9  applicable.  It must include appropriate documentation in

10  support thereof, satisfactory to the debtors and Nationstar or

11  BH, as applicable.

12        "If no objection to the cure amount or the proposed

13  assumption and assignment of an Assumed Contract" -- using the

14  defined term -- "is timely filed and served, the pertinent

15  debtor may assume and assign the assumed contract to Nationstar

16  or BH, or, alternatively, to the successful bidder for the

17  applicable purchased assets, and the Cure Amount" -- defined

18  term, again -- "set forth in the assumption and assignment

19  notice, shall be binding on all non-debtor parties to the

20  Assumed Contracts" -- defined term, again -- "any known third-

21  party beneficiaries to such Assumed Contracts" -- defined term

22  again -- "all trustees, certificate holders, investors, rating

23  agencies, mortgage insurers, and any parties to any pooling and

24  servicing agreements, assignment, assumption, and recognition

25  agreements, servicing agreements, sub-servicing agreements, or

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1    similar agreements, collectively the Assumption Notice Parties,

2    for all purposes in such debtors' Chapter 11 case.

3           "The respective Assumption Notice Parties shall be

4    forever barred from (1) objecting to the assumption and

5    assignment of the relevant Assumed Contract" -- using the

6    defined term -- "and or Cure Amount" -- using the defined

7    term -- "and (2) asserting at any time, any condition to

8    assignment default claims, obligations, or breach, or any

9    additional cure damage or other amount with respect to the

10   respective Assumed Contracts" -- using the defined term --

11          THE COURT:  So I don't see anything in what you've --

12   I don't hear anything in what you've read me that gives you a

13   do over if your contract is listed on a schedule; the bar

14   date -- you clearly got notice of the bar date for cure claims;

15   you didn't file one.  I don't -- nothing that you've read to

16   me -- and I'm going to back and see it -- says you get a do

17   over, which is what you're asking for.

18          MS. COELHO:  What I am saying is that this order does

19   not establish a bar date with respect to contracts that are not

20   ultimately assumed and assigned.

21          THE COURT:  I don't read it that -- I don't --

22          MS. COELHO:  It's not a --

23          THE COURT:  I don't --

24          MS. COELHO:  -- do over.

25          THE COURT:  I don't understand it that way at all.

1    But here's what -- stop.

2              MS. COELHO:  It's a new motion.

3              THE COURT:  Stop.  I'm adjourning this matter until I

4    hear the objection to the claim.  At that time, I'll decide how

5    to proceed.  Whether it's a contested matter -- I mean,

6    because, Ms. Barrage, you're -- you've objected to the claim

7    and are seeking to have it expunged because you believe there

8    is no pre-petition cure claim, right?

9              MS. BARRAGE:  That's correct, Your Honor.  We -- may I

10   just say, we have a reply due, because last week Syncora filed

11   amendments to its original proof of claim.  And so those

12   arguments will be baked into our reply.

13             THE COURT:  Okay.  All right.  I'm going to hear this

14   all together.  I mean, it seems to me -- they're interesting

15   arguments.  I don't find Weil's position particularly

16   sympathetic, frankly.  The cure -- the bar date for cure claims

17   was quite clear.  Lots of other parties did exactly that.  And

18   as is typical, a decision whether to assume or reject a

19   contract, ultimately, is frequently based on what do they say

20   the cure claim is?

21             Maybe you sit down and you negotiate and decide

22   whether it's not with the candle; we're not going to assume

23   that contract; the buyer's not going to assume it.

24             And what do they do?  How do they decide that?  They

25   decide it by looking at the cure claims, in part, that are

**RESIDENTIAL CAPITAL, LLC, ET AL.**

115

1  filed.  All right.  Because that sort of lays -- that puts the

2  landscape down for here, for Ocwen to decide, ah, this is nuts;

3  it's going to cost too much to try and resolve this; I'm not

4  going to do it.  So they say, hey, there is no cure claim

5  that's been timely filed.

6        So I don't -- from a policy standpoint, I have a lot

7  of problems with your arguments, Ms. Coelho.  But I'm not

8  deciding any of it today.  I want to hear this all together.  I

9  want to look at -- if you filed a proof of claim against the

10 wrong debtor, I don't know why Ocwen wants to even bother with

11 this one at this point.  It may just be simpler for them to

12 say, not worth doing this.  Okay.

13       I would suggest you spend your time seeing if you can

14 negotiate this out.  You stand on your rights, and you may wind

15 up with no rights at the end of the day.  Okay.

16       So I'm adjourning this matter.  What I would like

17 is -- I want to know when this is back on the calendar.  And it

18 is --

19       MS. BARRAGE:  Your Hon --

20       THE COURT:  -- because we got a really crowded

21 calendar.

22       MS. BARRAGE:  Understood, Your Honor.

23       THE COURT:  This is an important enough matter that I

24 don't want it coming on when I got thirty other matters on the

25 calendar.

**RESIDENTIAL CAPITAL, LLC, ET AL.**

1           MS. BARRAGE:  Understood.  Does Your Honor have a

2   preference for a particular date?

3           THE COURT:  I don't --

4           MS. BARRAGE:  We'll work --

5           THE COURT:  -- at this point.

6           MS. BARRAGE:  -- around your schedule.

7           THE COURT:  Get some dates from Deanna and I -- before

8   it's finally set, I want to know.  Because this is not a run of

9   the mill dispute.

10          MS. BARRAGE:  Understood.

11          THE COURT:  I want to be able to spend sufficient time

12  on it.

13          MS. BARRAGE:  Okay.

14          THE COURT:  Okay.

15          MS. BARRAGE:  Thank you, Your Honor.

16          THE COURT:  Thank you very much.

17          MS. COELHO:  Thank you.

18          MR. MARINUZZI:  Your Honor, thank you.  I believe that

19  brings us to the omnibus claims objections --

20          THE COURT:  Yeah.

21          MR. MARINUZZI:  -- which begin on page 20 of the

22  agenda.

23          THE COURT:  All right.

24          MR. MARINUZZI:  And Jordan Wishnew from my office will

25  be handing those matters.