**Hearing Date: November 7, 2013 at 2:00 p.m. (ET)**
**Response Deadline: October 10, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:      (212) 468-8000
Facsimile:      (212) 468-7900
Gary S. Lee
Joel C. Haims
James J. Beha II

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al.</u>, | Chapter 11 |
| Debtors. | Jointly Administered |

**NOTICE OF DEBTORS' OBJECTION TO**
**THE WEST VIRGINIA INVESTMENT MANAGEMENT BOARD'S**
<u>**PROOF OF CLAIM (CLAIM NO. 3818)**</u>

**PLEASE TAKE NOTICE** that the undersigned have filed the attached Objection to the

West Virginia Investment Management Board's Proof of Claim (Claim No. 3818).

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Debtors' Objection to the

West Virginia Investment Management Board's Proof of Claim (Claim No. 3818) will take place

on **November 7, 2013 at 2:00 p.m.  (Prevailing Eastern Time)** before the Honorable Martin

Glenn, at the United States Bankruptcy Court for the Southern District of New York, Alexander

Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Room 501.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Debtors' Objection

to the West Virginia Investment Management Board's Proof of Claim (Claim No. 3818) must be

made in writing, conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy

Rules for the Southern District of New York, and the Notice, Case Management, and

Administrative Procedures approved by the Bankruptcy Court [Docket No. 141], be filed

electronically by registered users of the Bankruptcy Court's electronic case filing system, and be

served, so as to be received no later than **October 10, 2013 at 4:00 p.m. (Prevailing Eastern**

**Time)**, upon:  (a) counsel to the Debtors, Morrison & Foerster LLP, 1290 Avenue of the

Americas, New York NY 10104 (Attention:  Gary S. Lee, Joel C. Haims, and James J. Beha II);

(b) the Office of the United States Trustee for the Southern District of New York, 201 Varick

Street, Suite 1006, New York, NY 10014 (Attention:  Tracy Hope Davis, Linda A. Riffkin, and

Brian S. Masumoto); (c) counsel for the committee of unsecured creditors, Kramer Levin

Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036 (Attention:

Kenneth Eckstein and Douglas Mannal); and (d) special counsel to the Committee, Silverman

Acampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, NY 11753 (Attention:  Ronald J.

Friedman).

      **PLEASE TAKE FURTHER NOTICE** that if you do not timely file and serve a written

response to the relief requested in the Debtors' Objection to the West Virginia Investment

Management Board's Proof of Claim (Claim No. 3818), the Bankruptcy Court may deem any

opposition waived, treat the Debtors' Objection to the West Virginia Investment Management

Board's Proof of Claim (Claim No. 3818) as conceded, and enter an order granting the relief

requested in the Debtors' Objection to the West Virginia Investment Management Board's Proof

of Claim (Claim No. 3818) without further notice or hearing.


Dated: September 19, 2013                   Respectfully submitted,
        New York, New York

                                            /s/ Gary S. Lee
                                            Gary S. Lee
                                            Joel C. Haims
                                            James J. Beha II
                                            MORRISON & FOERSTER LLP
                                            1290 Avenue of the Americas
                                            New York, New York 10104
                                            Telephone:  (212) 468-8000
                                            Facsimile:  (212) 468-7900

                                            *Counsel for the Debtors and
                                            Debtors in Possession*

**Hearing Date: November 7, 2013 at 2:00 p.m. (ET)**
**Response Deadline: October 10, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:     (212) 468-8000
Facsimile:      (212) 468-7900
Gary S. Lee
Joel C. Haims
James J. Beha II

*Counsel for the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------
                                                     )
In re:                                               )        Case No. 12-12020 (MG)
                                                     )
RESIDENTIAL CAPITAL, LLC, et al.,                    )        Chapter 11
                                                     )
                                    Debtors.          )        Jointly Administered
                                                     )
--------------------------------------------------------------------

**DEBTORS' OBJECTION TO**
**THE WEST VIRGINIA INVESTMENT MANAGEMENT BOARD'S**
**PROOF OF CLAIM (CLAIM NO. 3818)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

JURISDICTION, VENUE AND STATUTORY PREDICATE ...................................... 3

BACKGROUND ................................................................................................................. 3

    A.    In Late 2005, the Debtors Issued the RALI 2005-QA13 Certificates
        Accompanied by Extensive, Detailed Risk Disclosures ........................................ 3

    B.    As the Mortgage Market Began its Historic Decline, WVIMB
        Made a "Pure Bet" that Economic Calamity Would Not Occur ........................... 5

    C.    WVIMB's Ill-Timed Bet Went Sour and It Sued the Debtors .............................. 7

    D.    These Chapter 11 Cases ...................................................................................... 7

RELIEF REQUESTED ....................................................................................................... 8

OBJECTION ....................................................................................................................... 8

I.      THE LEGAL STANDARD GOVERNING THIS OBJECTION ...................................... 8

II.    WVIMB CANNOT PROVE ANY MATERIAL MISSTATEMENT .............................. 9

    A.    WVIMB Cannot Prove Any Misstatement of Fact ............................................... 9

    B.    Any Purported Misstatement Was Immaterial ..................................................... 10

III.   WVIMB DID NOT REASONABLY RELY ON ANY ALLEGED
      MISSTATEMENT ........................................................................................................... 11

IV.   WVIMB CANNOT PROVE FRAUDULENT INTENT ............................................... 11

V.    WVIMB DID NOT HAVE A RELATIONSHIP APPROACHING
      PRIVITY WITH THE DEBTORS SUPPORTING A NEGLIGENT
      MISREPRESENTATION CLAIM ................................................................................... 12

VI.   WVIMB'S RMBS LOSSES WERE NOT CAUSED BY ANY ALLEGED
      MISSTATEMENT ........................................................................................................... 14

NOTICE ............................................................................................................................. 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anschutz v. Merrill Lynch & Co, Inc.*,
    690 F.3d 98, 114 (2d Cir. 2012)...................................................................................13

*Bd. of Managers of Crest Condo. v. City View Gardens Phase II, LLC*,
    951 N.Y.S. 2d 85 (Sup. Ct. N.Y. Cty. 2012) ...........................................................12

*Beall Plumbing & Heating Co. v. First Nat'l Bank of Keystone*,
    847 F. Supp. 1307 (S.D. W.Va. 1994) ...........................................................2, 9, 13

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)........................................................................................10

*Fait v. Regions Fin. Corp*,
    655 F.3d 105 (2d Cir. 2011).......................................................................................10

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000).......................................................................................11

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*,
    669 F. Supp. 2d 344 (S.D.N.Y. 2009)......................................................................14

*In re Arcade Publ'g, Inc.*,
    455 B.R. 373 (Bankr. S.D.N.Y. 2011).......................................................................8

*In re Lehman Bros. Sec. and ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010).......................................................................10

*In re Time Warner Inc. Secs. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ..........................................................................................12

*Lentell v. Merrill Lynch & Co., Inc.*
    396 F. 3d 161 (2d Cir. 2005)......................................................................................14

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) .................................................................................................11

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) ........................................................10

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., LLC*,
    700 F.3d 829 (6th Cir. 2012) .....................................................................................13

*Psenicska v. Twentieth Century Fox Film Corp.*,
    409 F. App'x 368 (2d Cir. 2009) ...........................................................................11

*Residential Capital, LLC v. Allstate Ins. Co.*,
    No. 13-ap-01262-mg, ECF No. 23 .......................................................................3, 4

*Ross v. Louise Wise Servs., Inc.*,
    8 N.Y. 3d 478 (2007) ...........................................................................................11

*Sec. Investor Prot. Corp. v. BDO Seidman, LLP*,
    222 F.3d 63 (2d Cir. 2000) ...................................................................................12

**STATUTES & RULES**

11 U.S.C.
    § 327(a) (2013) ......................................................................................................7
    § 502(b) (2013) ...............................................................................................1, 3, 8
    § 502(b)(1) (2013) .................................................................................................8
    § 510 (2013) ...........................................................................................................1
    § 558 (2013) ...........................................................................................................8
    § 1107(a) (2013) ....................................................................................................7
    § 1108 (2013) .........................................................................................................7

28 U.S.C.
    § 157(b) (2013) ......................................................................................................3
    § 1334 (2013) .........................................................................................................3
    § 1408 ....................................................................................................................3
    § 1409 ....................................................................................................................3

W. Va. Code
    § 12-6-1a(a) ...........................................................................................................5
    § 12-6-1a(b) ...........................................................................................................5
    § 12-6-3(b)(2) .........................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Bankr. P.
    Rule 1015(b) ...........................................................................................................7
    Rule 2014 ................................................................................................................7
    Rule 3007(a) .......................................................................................................1, 3

**TO THE HONORABLE MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE:**

Residential Capital, LLC and its affiliated debtors in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), as debtors and debtors in possession (collectively, the

"Debtors"), hereby file this objection (the "Objection"), seeking to disallow and expunge claim

number 3818 filed by the West Virginia Investment Management Board (the "WVIMB"),

pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") on the

ground that the WVIMB's claim is not enforceable against the Debtors because it is without

merit.[1]  The Debtors seek entry of an order, substantially in the form attached hereto as Exhibit 1

(the "Proposed Order"), disallowing and expunging claim number 3818 filed by the WVIMB.  In

support of the Objection, the Debtors submit the Declaration of James J. Beha II dated

September 19, 2013 (the "Beha Decl."), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.     In late 2007, the housing market weakened, delinquencies and defaults on

subprime mortgages rose, and market participants anticipated a calamity in the mortgage market.

Faced with "worldwide" headlines about "turmoil" in the mortgage market, WVIMB's financial

advisor issued reports pushing its clients to "attempt to achieve above-market returns *simply by*

*making the 'macro' bet that calamity does not occur.*"  WVIMB made that bet and bought

millions of dollars of Debtor-issued RMBS certificates in the secondary market.

2.     When the widely-expected calamity did, in fact, occur, WVIMB suffered

severe losses on its "'macro' bet."  And, predictably, WVIMB sued.  But WVIMB did not sue its

---

[1] The Debtors reserve all their rights to object on any other basis to WVIMB's claim.  Without limitation, the
Debtors expressly reserve their rights with respect to seek a declaration that WVIMB's claim should be subordinated
under Section 510 of the Bankruptcy Code.

board members or its financial advisor, the fiduciaries who made this reckless and ill-timed gamble.  Instead, it sued the Debtors who had issued the securities almost two years earlier asserting claims for fraud and negligent misrepresentation based on alleged misstatements made almost two years before WVIMB bought its securities.  And now WVIMB seeks to recover in these Chapter 11 Cases for the claims it asserted in that action.  But the law does not allow an investor who knowingly made such a risky, contrarian "bet" to shift its losses through a fraud suit, and WVIMB's attempt to do so should be rejected.  WVIMB's claims fail for five reasons.

3.      *First*, WVIMB cannot prove that the Debtors' Offering Materials contained any material misstatements.  In fact, those Materials warned of the very risks that WVIMB claims were concealed.  And WVIMB—fully aware of those risks—gambled that those risks would not materialize.  As a result, any misstatement would not have been material given the total mix of information available to the public at the time WVIMB purchased the securities.  *See infra* ¶¶ 28-33.

4.      *Second*, WVIMB cannot prove that it reasonably relied on the Debtors' Offering Materials.  Indeed, WVIMB does not even allege that it ever received or reviewed those materials.  And even if it had relied upon them, such reliance on almost two-year-old Offering Materials in the midst of historic market turmoil would have been unreasonable.  *See infra* ¶¶ 34.

5.      *Third*, WVIMB cannot prove that the Debtors' made any misstatement with fraudulent intent, as it must to prevail on its fraud claim.  The Debtors warned that their "underwriting reviews," if any, "generally [would] not be conducted with respect to any individual mortgage pool related to a series of certificates."  Thus, even if the mortgages differed materially from the descriptions in the Offering Materials, the Debtors would not have known that at the time the statements were made.  *See infra* ¶¶ 35-36.

6.      *Fourth*, to prevail on its negligent misrepresentation claims under either New York or West Virginia law, WVIMB must prove that the Debtors owed it a duty arising from their relationship.  It cannot.  Indeed, WVIMB—a purchaser in the secondary market almost two years after the Debtors issued the securities—did not have *any* relationship or contact with the Debtors at all.  *See infra* ¶¶ 37-39.

7.      *Finally*, WVIMB cannot prove that the Debtors' purported misconduct caused its losses.  Rather, the very market calamity its investment advisor foretold caused any investments losses WVIMB suffered.  *See infra* ¶¶ 40.

8.      Because WVIMB cannot prove the Debtors committed fraud or negligent misrepresentation, its claim is not enforceable and should be disallowed and expunged.

## JURISDICTION, VENUE AND STATUTORY PREDICATE

9.      This Court has jurisdiction over this Objection under 28 U.S.C. § 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

10.      The statutory predicate for the relief requested herein is Bankruptcy Code section 502(b) and Bankruptcy Rule 3007(a).

## BACKGROUND

### A.      In Late 2005, the Debtors Issued the RALI 2005-QA13 Certificates Accompanied by Extensive, Detailed Risk Disclosures

11.      From 2001 to 2007, the Debtors issued RMBS certificates with an aggregate original principal balance of more approximately $330 billion.  (Local Rule 7056-1 Statement of Stipulated Undisputed Facts and Agreed-To Exhibits  ¶ 1, *Residential Capital, LLC v. Allstate Ins. Co.,* No. 13-ap-01262-mg, ECF No. 23.)  In these securitizations, the Debtors pooled together mortgage loans and conveyed them to trusts in exchange for certificates

3

that were sold to sophisticated investors, like the claimants here.  (*Id.* ¶ 2.)  The RMBS

certificates entitle their holders to receive principle and interest collected on the issuing trusts'

mortgage loans.  (*Id.* ¶ 3.)

        12.     For each securitization, certain certificates bore a greater risk of loss than

others and the certificates were assigned to "tranches" depending on their credit risks.  (Claim

(Compl. ¶¶ 41-45.)  The riskier certificates, which paid higher returns, would be the first to

suffer losses if the mortgage pool's proceeds were lower than expected.  The less risky

certificates, then, had greater protection from losses, known as "credit enhancement."  (*Id.*)

        13.     In the securitization WVIMB allegedly purchased, called RALI 2005-

QA13, debtor Residential Funding Company, LLC ("RFC") purchased mortgages from other

mortgage lenders and then sold them to debtor Residential Accredit Loans, Inc. ("RALI").

(Compl. ¶¶ 16, 84.)  RALI, in turn, deposited them into a trust in exchange for RMBS

certificates.  (*Id.* ¶ 3.)  RALI then issued those certificates to the market pursuant to an August

25, 2005 Prospectus and a December 27, 2005 Prospectus Supplement (the "Offering

Materials").  (*Id.* ¶¶ 125-149.)  WVIMB did not purchase its securities in that initial offering.

        14.     The RALI 2005-QA13 Offering Materials contained extensive disclosures.

Among other things, the Offering Materials disclosed that (a) the Debtors would conduct limited,

if any, review of the underlying mortgages (*see, e.g.,* Ex. A at 14)[2]; (b) the mortgage pool was

based on less stringent criteria than other mortgage origination programs (*see, e.g.,* Ex. B at S-

14, S-36); (c) some of the mortgages included in the pool might not meet even those less

stringent criteria (*see, e.g.,* Ex. A at 14, 16-17); (d) the underlying mortgages were higher-risk

"Alt-A" loans subject to higher rates of foreclosure and loss (*see, e.g.,* Ex. B at S-37, S-59, S-

---

[2] References to "Ex. __" refer to the Exhibits to the Beha Declaration.

60); (e) the certificates might suffer losses and credit downgrades (*see, e.g.,* Ex. A at 43, Ex. B at

S-16-17), and (d) any such losses or downgrades might negatively impact the certificates' market

value (*see, e.g.,* Ex. B at S-18, S-84).    The Offering Materials also noted that while the Offering

Materials would not be updated, detailed data about the performance of the underlying loans

would be updated monthly and available on the internet.  (Ex. B. at S-77.)

**B.    As the Mortgage Market Began its Historic Decline, WVIMB Made a "Pure Bet" that Economic Calamity Would Not Occur**

15.    WVIMB is an "independent board with its own full-time staff of financial

professionals" created to provide "a stable and continuous source of professional financial

management."  W. Va. Code §§ 12-6-1a(a) & (b).  It includes professionals with experience in

"pension management, institutional management or financial markets," including a certified

public accountant and an attorney "experienced in finance and investment matters[.]"  W. Va.

Code § 12-6-3(b)(2).  WVIMB is a highly sophisticated investor, managing over $10 billion in

assets as of 2007.

16.    WVIMB gave full authority over its investment decisions to third-party

investment advisor Western Asset Management Company ("Western"), one of the largest and

most sophisticated money managers in the world.  (*See* Beha Dec. Ex. C, Appendix D at p. 102

of 178.)  Notably, WVIMB granted Western complete discretion to make even highly-risk

investments: WVIMB required only 50% of the portfolio Western managed to be investment

grade.  (*Id.* at p. 104 of 178.)

17.    In March 2007, Western began to warn its clients about increasing

troubles in the RMBS markets.  It told its clients that "[t]he combination of more aggressive

lending and a weaker housing market is leading to higher delinquencies and default rates on

subprime mortgages."  (Ex. D at 5.)  These problems were "making headlines worldwide."  (*Id.*

at 1.)  And "the fear of a subprime crisis [was] spread[ing]."  (*Id.* at 2.)  Indeed, Western reported

that it had been "concerned about the deteriorating underwriting standards over the past few

years."  (*Id.* at 1.)  By July 2007, the market turmoil "continue[d] to make headlines worldwide"

and Western warned that delinquencies and default rates continued to "steadily rise."  (Ex. E at

1.)

        18.     In the face of this market deterioration and the negative market sentiment,

however, Western had a contrarian view:  it thought RMBS, such as those issued by the Debtors,

were a good investment because of the overwhelming negative view of them in the market.  And

it advised its clients to make a "macro bet" that mainstream market sentiment was mistaken.

(Ex. F at 1.)  Western told its clients that "periods of financial market distress have also generally

periods of attractive investment opportunities."  (*Id.*)  According to Western, "[a]s long as the

incidence of U.S. mortgage defaults holds at something less than calamitous levels . . . we

anticipate that these issues would fulfill their promises of principal and interest payment."  (*Id.*)

As a result, Western advised, "*one could attempt to achieve above-market returns simply by

making the 'macro' bet that calamity does not occur.*"  (*Id.*)  And to Western, RMBS securities

like RALI 2005-QA13 were "*a pure example of such a bet.*"  (*Id.*)  Of course, Western

acknowledged, "[w]e could be wrong.  Calamity may in fact strike, or mortgage performance

even under a non-calamity may be less favorable than we have concluded."  (*Id.*)

        19.     In the midst of this "financial market distress," WVIMB made the "pure

bet" its advisor was pushing and bought millions of dollars of RALI 2005-QA13 securities in the

secondary market.  (Compl. ¶ 11.)  WVIMB bought those securities from sellers completely

unrelated to the Debtors.  (*Id.*)

#### C.    WVIMB's Ill-Timed Bet Went Sour and It Sued the Debtors

20.    After WVIMB knowingly gambled that market-wide pessimism about the
future of the mortgage market was wrong, the mortgage market continued to decline.  As the
Offering Materials (and Western) warned might happen, WVIMB alleges that the certificates it
purchased ultimately lost 50% of their market value and were downgraded by the credit rating
agencies.  (Compl. ¶ 13.)

21.    Despite Western's warning that the bet would fail if Western's contrarian
outlook proved wrong, WVIMB attempted to recover its losses by suing RFC, RALI, and the
unrelated institutions who sold the certificates.  On March 4, 2010, WVIMB filed a complaint in
West Virginia state court asserting fraud and negligent misrepresentation claims against the
Debtors.  (*See* Compl. ¶¶ 163-178.)  That action was stayed against the Debtors when they filed
their chapter 11 petitions.  On November 11, 2012, WVIMB filed a proof of claim in these
Chapter 11 Cases seeking to recover on the claims it asserted against the Debtors in its state
court complaint.

#### D.    These Chapter 11 Cases

22.    On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary
chapter 11 petitions in this Court.  The Debtors are managing and operating their businesses as
debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  These Chapter 11
Cases are being jointly administered under Bankruptcy Rule 1015(b).

23.    The Court appointed Kurtzman Carson Consultants LLC ("KCC") as
notice and claims agent, authorizing it to (a) receive, maintain, record, and otherwise administer
the proofs of claim filed in these Chapter 11 Cases; and (b) maintain each Debtor's official
claims register.  (Order Pursuant to 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 Authorizing

the Employment and Retention of Kurtzman Carson Consultants LLC as Administrative Agent,

*Nunc Pro Tunc* to the Petition Date, ECF No. 798.)

24.     Approximately 7,160 proofs of claim have been filed in these Chapter 11

Cases as reflected on the Debtors' claims registers.  WVIMB filed a proof of claim asserting a

claim for no less than $7.5 million based on the fraud and negligent misrepresentation claims it

asserted against the Debtors in its complaint.

### RELIEF REQUESTED

25.     The Debtors file this Objection under section Bankruptcy Code Section

502(b), seeking to disallow and expunge WVIMB's claim in its entirety.

### OBJECTION

## I.    THE LEGAL STANDARD GOVERNING THIS OBJECTION

26.     "[C]reditors' entitlements in bankruptcy arise in the first instance from the

underlying substantive law creating the debtor's obligations."  *In re Arcade Publ'g, Inc.*, 455

B.R. 373, 378 (Bankr. S.D.N.Y. 2011) (Glenn, J.) (internal quotation marks omitted) (quoting

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007)).  And a

debtor's estate has "the benefit of any defense available to the debtor as against any entity other

than the estate."  11 U.S.C. § 558 (2013).  Accordingly, a claim must be disallowed if it is

"unenforceable against the debtor and property of the debtor, under any agreement or applicable

law."  11 U.S.C. § 502(b)(1) (2013).

27.     For the reasons set forth below, WVIMB's claim is not enforceable

against any of the Debtors under applicable law and should be disallowed and expunged in its

entirety.

## II.    WVIMB CANNOT PROVE ANY MATERIAL MISSTATEMENT

28.    WVIMB will be unable to prevail on its claims because even if it could prove that it relied on the Debtors' Offering Materials in making its investment, it cannot prove that the Debtors made any materials misstatements in their Offering Materials, as it must to recover on its claim.

### A.    WVIMB Cannot Prove Any Misstatement of Fact

29.    To prevail on either its fraud or negligent misrepresentation claims, WVIMB must prove that the Debtors made materials misstatements in connection with the sale of the Certificates.  According to WVIMB's complaint, the Offering Materials "contained misrepresentations and omissions concerning mortgage loan underwriting guidelines, the credit enhancement supporting the Certificates, and the credit ratings assigned to the Certificates." (Compl.  ¶ 125.)  But WVIMB cannot prove the Offering Materials contained materials misstatements about any of those topics.

30.    *First*, WVIMB alleges that Offering Materials falsely stated that the mortgage loans complied with the applicable underwriting guidelines.  (Compl. ¶ 73.)  But the Offering Materials accurately disclosed the originators' underwriting guidelines, that originators had discretion to deviate from those guidelines, and that some loans in the loan pools might not comply with the stated guidelines.  (*See, e.g.,* Ex. A at 14, 16; Ex. B at S-16, S-37-39.)

31.    *Second*, WVIMB alleges that the Offering Materials falsely "failed to reveal that the credit enhancement for the Certificates was inadequate."  (Compl. ¶ 149.)  But Offering Materials accurately disclosed that the credit enhancements might not cover losses on the certificates.  (*See* Ex. A at 43, Ex. B at S-16.)

32.    *Third*, WVIMB alleges that the credit ratings the ratings agencies assigned to the Certificates were false because they were later downgraded.  (Compl. ¶¶ 145, 147.)  But

the Offering Materials warned that a "rating is not a recommendation to buy, sell, or hold

securities and may be subject to revision or withdrawal at any time by the assigning rating

organization."  (Ex. B at S-85.)  Moreover, the law is clear that credit ratings represent

statements of the rating agencies' opinion.  *See N.J. Carpenters Health Fund v. Residential

Capital, LLC*, 2010 WL 1257528, at *6 (S.D.N.Y. Mar. 31, 2010) ("credit ratings . . . are clearly

opinion statements because they predict future value and reliability").  Thus, as logic dictates,

they cannot be said to be "false" unless "the speaker did not truly have the opinion at the time."

*In re Lehman Bros. Sec. and ERISA Litig.*, 684 F. Supp. 2d 485, 494 (S.D.N.Y. 2010)

(dismissing claims based on allegedly false credit ratings); *see also Fait v. Regions Fin. Corp*,

655 F.3d 105, 112 (2d Cir. 2011) ("Requiring plaintiffs to allege a speaker's disbelief in, and the

falsity of, the opinions or beliefs expressed ensures that their allegations concern the factual

components of those statements.").  WVIMB cannot prove that the certificates' credit ratings

were false because it cannot prove the rating agencies did not believe them at the time they were

issued.

       **B.**    **Any Purported Misstatement Was Immaterial**

       33.    Nor can WVIMB prove that any purported misstatements in the Offering

Materials were material to a highly-sophisticated RMBS investor with a highly-sophisticated

investment advisor in August 2007, after the mortgage market had begun its steep—and highly

publicized—decline.  For a misstatement or omission to be material, there must be a "substantial

likelihood" that the misstatement or omission "significantly altered the total mix of information"

available to the investor.  *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 180 (2d Cir.

2001) (internal quotation marks and citation omitted).  In this case, given the extensive

disclosures in the Offering Materials, "worldwide" press coverage of deteriorating mortgages

underwriting practices, and Western's reports to WVIMB about these topics, WVIMB cannot

prove that any alleged misstatement "significantly altered the total mix of information" available in making its investment decision. In short, by the time it made its bet, WVIMB knew the "truth" it claims was concealed from it and any alleged misstatement was immaterial. *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000) ("a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market").

## III.    WVIMB DID NOT REASONABLY RELY ON ANY ALLEGED MISSTATEMENT

34.    In its complaint, WVIMB conspicuously failed to allege that it actually relied on (or even looked at) the Debtors' Offering Materials when it made its August 2007 bet. But to prevail on a fraud or negligent misrepresentation claim, WVIMB must prove that it reasonably relied on the alleged misstatement. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) ("a claim for negligent misrepresentation requires the plaintiff to demonstrate . . . reasonable reliance"); *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009) ("reasonable reliance is an essential element of fraudulent inducement"). And even if WVIMB could prove that it actually relied on statements in the Offering Documents, it could not prove that reliance on eighteen-month-old Offering Materials was reasonable given the extreme market changes in the interim. Any purported reliance on this outdated material would have been particularly unreasonable because WVIMB (and Western) could see the loans' actual performance in the eighteen months since the offering. (*See* Ex. B at S-77.)

## IV.    WVIMB CANNOT PROVE FRAUDULENT INTENT

35.    To prevail on its fraud claim, WVIMB must prove that the Debtors "intended to deceive" WVIMB. *Ross v. Louise Wise Servs., Inc.*, 8 N.Y. 3d 478, 488 (2007). Essentially, WVIMB claims that the Offering Materials misstated the quality of the loans

underlying the Certificates.  But the Debtors disclosed that they conducted only very limited review of the loans, if any.  (Ex. A at 14.)  Accordingly, even if WVIMB could prove that the Debtors misstated the quality of the underlying loans, it could not prove that the Debtors did so knowingly and with fraudulent intent.

36.    And even if the WVIMB could prove that the Debtors made intentional misstatements in their Offering Materials—and it cannot—it must prove that the Debtors made a "knowing misrepresentation of material fact, which [was] intended to deceive [the WVIMB] and to induce [the WVIMB] to act upon it."  *Bd. of Managers of Crest Condo. v. City View Gardens Phase II, LLC*, 951 N.Y.S. 2d 85 (Sup. Ct. N.Y. Cty. 2012).  The WVIMB certainly cannot prove that the Debtors made knowing misstatements intended to deceive investors years later and induce them to induce them to purchase securities from third-parties.

## V.    WVIMB DID NOT HAVE A RELATIONSHIP APPROACHING PRIVITY WITH THE DEBTORS SUPPORTING A NEGLIGENT MISREPRESENTATION CLAIM

37.    The WVIMB's negligent misrepresentation claim fails because it cannot prove the requisite relationship between it and the Debtors required to support such a claim under either New York or West Virginia law.

38.    New York law "strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'"  *In re Time Warner Inc. Secs. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (citation omitted).  WVIMB does not claim—and does not have—any contractual relationship with the Debtors.  And to establish a relationship approaching privity, "a plaintiff generally must show some form of direct contact between the [defendant] and the plaintiff, such as a face-to-face conversation, the sharing of documents, or other 'substantive communication' between the parties."  *Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 75 (2d Cir. 2000)

(citation omitted).  For this reason, in *Anschutz v. Merrill Lynch & Co, Inc.*, the Second Circuit affirmed the dismissal of an investor's negligent misrepresentation claim based on alleged misstatements in offering materials despite the fact that the investor bought securities in the offering for private placement  because the investor had "no relationship or contact" with the defendants.  690 F.3d 98, 114 (2d Cir. 2012).  As a purchaser in the secondary market almost *two years* after the offering, WVIMB did not have any relationship or contact at all with the Debtors, certainly not the "direct contact" necessary to establish "a relationship so close as to approach that of privity."  *Id.*  Because it cannot prove such a relationship, WVIMB cannot recover on its negligent misrepresentation claim.

39.    While West Virginia defines the duty element of a negligent misrepresentation slightly differently than New York, the result is the same under West Virginia law.  West Virginia follows the definition of negligent misrepresentation in Section 552 of the Restatement (Second) of Torts, requiring the plaintiff to prove it was "one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information." *Beall Plumbing & Heating Co. v. First Nat'l Bank of Keystone*, 847 F. Supp. 1307, 1315 (S.D. W.Va. 1994) (quoting the Restatement (Second) Torts § 552).  Courts applying this definition have repeatedly held that the speakers "do not owe a duty of care to the 'extensive, faceless, and indeterminable investing public-at-large.'"  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs.*, *LLC,* 700 F.3d 829, 841 (6th Cir. 2012) (citation omitted).  Accordingly, speakers are not liable to initial purchasers for negligent misrepresentations in RMBS offering materials.  *Id.*  The Debtors certainly did not owe a duty of care under the Restatement to market participants years after the offering.

13

## VI.    WVIMB'S RMBS LOSSES WERE NOT CAUSED BY ANY ALLEGED MISSTATEMENT

40.    Finally, WVIMB's claim should be disallowed and expunged because any of its losses were not caused by the revelation of any alleged misstatement.  "[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by [an alleged misstatement] decreases" and the plaintiff may only recover if "its loss was caused by the alleged misstatement as opposed to intervening events."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F. 3d 161, 174 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Healthcare Fin. Group, Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 349-50 (S.D.N.Y. 2009) (dismissing claim for lack of loss causation when entire Auction Rate Securities market collapsed).  WVIMB cannot recover here because the marketwide financial crisis caused its losses.

\*                        \*                        \*

41.    In the midst of historic market turmoil, WVIMB bet millions of dollars that the markets would stabilize.  It bet wrong.  It cannot blame its bad bet on statements in Offering Materials issued almost two years earlier.  WVIMB's claim should be disallowed and expunged because WVIMB cannot prove (a) that the Debtors' Offering Materials contained any material misstatement; (b) that it reasonably relied on any statements in the Offering Materials; (c) that the Debtors acted with fraudulent intent; (d) that it had a relationship approaching privity with the Debtors; or (e) that the revelation of any alleged misstatement caused its losses.  As a result, its claim should be disallowed and expunged.

## NOTICE

42.    The Debtors have provided notice of this Objection in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

14

## **CONCLUSION**

43.    WHEREFORE, the Debtors respectfully request entry of the Proposed

Order disallowing and expunging WVIMB's claim.


Dated: September 19, 2013                     /s/ Gary S. Lee
                                              Gary S. Lee
                                              Joel C. Haims
                                              James J. Beha II
                                              MORRISON & FOERSTER LLP
                                              1290 Avenue of the Americas
                                              New York, New York 10104
                                              Telephone:  (212) 468-8000
                                              Facsimile:  (212) 468-7900

                                              *Counsel for the Debtors and*
                                              *Debtors in Possession*

## **Exhibit 1**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| In re: | ) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et</u> <u>al</u>., | ) |
| | ) |
| Debtors. | ) |
| | ) |

_____

| |
|---|
| Case No. 12-12020 (MG) |
| |
| Chapter11 |
| |
| Jointly Administered |

### ORDER GRANTING DEBTORS' OBJECTION TO
### THE WEST VIRGINIA INVESTMENT MANAGEMENT BOARD'S
### <u>PROOF OF CLAIM (CLAIM NO. 3818)</u>

Upon the Objection to the West Virginia Investment Management Board ("WVIMB")'s

Proof of Claim (Claim No. 3818), dated September 19, 2013, of Residential Capital, LLC, and

its affiliated debtors in the above-referenced Chapter 11 Cases, as debtors and debtors in

possession (collectively, the "Debtors"), seeking entry of an order, pursuant to Section 502(b) of

title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 3007(d) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") disallowing and expunging claim number 3818

filed by the WVIMB on the ground that the WVIMB's claim is not enforceable against the

Debtors because it is without merit; and it appearing that this Court has jurisdiction to consider

Debtors' Objection to the WVIMB's Claim pursuant to 28 U.S.C. §157 and § 1334; and

consideration of the Debtors' Objection and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §

1408 and § 1409; and due and proper notice of the Debtors' Objection having been provided, and

it appearing that no other or further notice need be provided; upon consideration of Debtors'

Objection to the WVIMB's Proof of Claim (Claim No. 3818), and the *Declaration of James J. Beha II in Support of Debtors' Objection to the West Virginia Investment Management Board's Proof of Claim (Claim No. 3818)*, annexed to Debtors' Objection to the WVIMB's Proof of Claim (Claim No. 3818), and the Court having found and determined that the relief sought in Debtors' Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in Debtors' Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in Debtors' Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to Section 502(b) of the Bankruptcy Code, claim no. 3818 is disallowed and expunged; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.


Dated: _____, 2013
       New York, New York                    _____
                                             THE HONORABLE MARTIN GLENN
                                             UNITED STATES BANKRUPTCY JUDGE