Hearing Date: September 24, 2013 at 10:00 a.m. (Prevailing Eastern Time)

| | |
|---|---|
| MORRISON & FOERSTER LLP | BRADLEY ARANT BOULT |
| 1290 Avenue of the Americas | CUMMINGS LLP |
| New York, New York 10104 | Bank of America Corporate Center |
| Telephone: (212) 468-8000 | 100 N. Tryon Street, Suite 2690 |
| Facsimile: (212) 468-7900 | Charlotte, NC 28202 |
| Gary S. Lee | Telephone: (704) 338-6005 |
| Norman S. Rosenbaum | Facsimile: (704) 338-6089 |
| Jordan A. Wishnew | Christian W. Hancock |
| | |
| *Counsel for the Debtors and* | *Special Litigation and Compliance Counsel* |
| *Debtors in Possession* | *for the Debtors and Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' REPLY IN SUPPORT OF THE OBJECTION**
**TO PROOFS OF CLAIM FILED BY**
**<u>REX AND DANIELA GILBERT AND KATHERINE PARKER-LOWE</u>**

Residential Capital, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases hereby submit this reply (the "Reply") to the response (the "Response") submitted by Rex and Daniela Gilbert and Katherine Parker-Lowe (collectively, "Claimants") to the Debtors' Objection to Proofs of Claim Filed by Claimants [Docket No. 4767] (the "Objection"), and in further support of the Objection. In support of the Objection and this Reply, the Debtors rely upon the previously submitted Declaration of Lauren Graham Delehey (the "Delehey Declaration") and the Declaration of Christian W. Hancock (the "Hancock Declaration"), annexed hereto as Exhibit 1. The Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.      Claimants Rex and Daniela Gilbert (together, the "Gilberts") seek recovery of nearly $6,000,000 from Debtor GMAC Mortgage, LLC ("GMACM") through Proof of Claim No. 1991. Prior to Claimants' Response, it appeared that the Gilberts sought this sum from GMACM based on claims asserted in a lawsuit filed primarily to enjoin the foreclosure sale of the Gilberts' home and seek rescission of their underlying loan. The Response, however, includes an itemized damages list ("the Damages Summary"),[1] which shows that $5,250,000 of Claim No. 1991 is based on additional putative claims that the Gilberts *would* assert were the lawsuit not stayed by GMACM's bankruptcy. As discussed in both the Objection and this Reply, the causes of action in the Gilberts' pending lawsuit and the newly-identified putative claims lack any factual or legal merit and fail to state a valid claim against the Debtors. Therefore, the Debtors have rebutted the prima facie validity of the Claim through the Objection and this Reply, and, because the Claimants have not proven the validity of the Claim by a preponderance of the evidence, Claim No. 1991 should be substantially disallowed.

---

[1] To the extent the Gilberts file the amended claim attached to the Response, the Debtors reserve the right to object to such claim on timeliness grounds.

ny-1108886 v1

2. Similarly, Claimant Katherine Parker-Lowe ("Parker-Lowe"), the Gilberts' attorney, provides only a cursory defense of her claim, Proof of Claim No. 1984, which seeks recovery of attorneys' fees for work performed on the Gilberts' behalf. For the reasons detailed herein, Claim No. 1984 should also be expunged in its entirety.

## LEGAL ARGUMENT

**A. The Gilberts' Claims Should Be Disallowed Because They Are Based On Causes Of Action Against GMACM That Either Do Not Exist Or Fail As A Matter Of Law.**

**1. Loan Servicers Are Not Liable For Money Damages Under TILA.[2]**

3. Claimants acknowledge that GMACM was the servicer of the Gilberts' mortgage loan. Resp. ¶ 4.[3] Loan servicers, however, are not liable for money damages under TILA.[4] Because GMACM, as a servicer, is not subject to money damages under TILA, Claimants try to re-characterize GMACM as the "functional holder" of the Gilberts' mortgage note, rather than a servicer. Resp. ¶ 3. The Gilberts' assertion that GMACM somehow, through the servicing of the Gilberts' loan, became something other than a servicer is not supported either by factual evidence or relevant legal authority and is therefore entirely without merit. As a result, given that it is undisputed that GMACM was the servicer of the Gilberts' loan, Claimants' TILA-based claims – $89,780.49 of the Gilberts' claim and that portion of Parker-Lowe's claim tied to her prosecution of the TILA claim – should be disallowed.

---

[2] Truth in Lending Act, 15 U.S.C. §§ 1601-1667(f).

[3] Claimants purport to attack the evidentiary basis on which GMACM claims it was the servicer of the Gilberts' loan. Resp. ¶ 26. The attack is moot given Claimants' admission that GMACM was the servicer: "the Gilberts' claims against GMACM are based upon GMACM's legal duties to the Gilberts as . . . servicer . . . ."

[4] Keiran v. Home Capital, Inc., Nos. 11-3878, 120153, 2013 WL 3481366, at *6 n.5 (8th Cir. July 12, 2013); 15 U.S.C. § 1641(c) (expressly stating that "[a]ny consumer who has the right to rescind a transaction ... may rescind the transaction as against any **assignee of the obligation**")) (emphasis added).

2

### 2. The Gilberts Cannot Maintain A Usury Claim Under North Carolina Law Because Their Loan Is Expressly Exempt From The Statute.

4. The Gilberts' $525,000 loan is an "exempt loan" under N.C. Gen. Stat. § 24-9, which defines an "exempt loan" as any loan with an original principal balance in excess of $300,000. Under N.C. Gen. Stat. § 24-9(b), no usury claim can be maintained in relation to an exempt loan: "[a] claim or defense of usury is prohibited in an exempt loan transaction." The Gilberts therefore cannot maintain a usury claim in relation to their half-million dollar home loan, just as the U.S. Court of Appeals for the Fourth Circuit indicated.[5]

5. To the extent the Gilberts' usury claim is alternatively styled as a breach of contract claim, it likewise fails. GMACM was not a party to any contract with the Gilberts upon which such a breach claim could be based. Therefore, as the Gilberts are unable to make out either a usury or contract claim against GMACM, the portion of their claim tied to such causes of action (i.e., $74,153.84) should be disallowed.

### 3. Over $5,000,000 Of The Gilberts' Claim Is Based On Causes Of Action Not Recognized Under North Carolina Law.

6. The next category of damages listed in the Damages Summary relates to putative claims for "Attempted Wrongful Foreclosure and Conspiracy to Commit Wrongful Foreclosure." Under North Carolina law, however, there can be no cause of action for an **attempted** wrongful foreclosure, as the claim itself requires actual completion of a foreclosure sale and conveyance of the mortgaged property to a third-party.[6] The few North Carolina cases that even address a claim

---

[5] While the Fourth Circuit found that the Gilberts adequately plead a usury claim, the court directed the trial court to consider whether N.C. Gen. Stat. § 24-9(b) prevented the Gilberts from maintaining the claim. Gilbert v. Residential Funding LLC, 678 F.3d 271, 280 (4th Cir. 2012). Given the size of the Gilberts' loan, N.C. Gen. Stat. § 24-9(b) acts to bar their usury claim.

[6] Patterson v. DAC Corp. of North Carolina, 66 N.C. App. 110, 310 S.E.2d 783, 785 (N.C. App. 1984) (citing Davis v. Doggett, 212 N.C. 589, 594, 194 S.E. 288, 291 (1937)).

3

of wrongful foreclosure all involve completed foreclosures.[7] Here, the Gilberts' home was never foreclosed or sold, and they reside in it to this very day. Resp. ¶ 10.

7.  Even if the foreclosure had been completed, the Gilbert's damages claim of "$525,000 x 10 = $5,250,000" has no basis in fact or law.[8] Under North Carolina law, when a deed of trust is wrongfully foreclosed, the injured mortgagor may "(1) treat the sale as a nullity and sue to set it aside, or (2) permit the sale to stand and sue the mortgagee to recover damages suffered as a result of the wrongful foreclosure."[9] A mortgagor electing the latter remedy "may sue the mortgagee for the wrong done in making such a sale, and hold it liable for the true worth of the property."[10] Here, the Gilberts have not lost their home, and they have not identified the actual fair market value of the home as a basis for their damages. Instead, the value of their claim is based on the amount of money **they borrowed** in 2006—an amount they are currently unable/unwilling to repay. Therefore, the Gilberts have not provided a valid basis for their damages claim, and their demand of $5.25 Million is entirely baseless.

8.  Even if the Gilberts' purported claim is taken as a claim for civil conspiracy, it still fails. The conspiracy claim, which is by definition dependant on the underlying claim of attempted wrongful foreclosure,[11] is without merit because North Carolina law does not recognize a cause of action for attempted wrongful foreclosure. "It is well established that there is not a separate civil action for civil conspiracy in North Carolina."[12]

---

[7] See generally 21 N.C. INDEX 4TH MORTGAGES AND DEEDS OF TRUST § 142.

[8] Doc. 5004, Damages Summary, ¶ 3.

[9] Chandler v. Cleveland Sav. and Loan Ass'n, 211 S.E.2d 484, 487 (N.C. App. 1975); Robinson v. Deutsche Bank Nat. Trust Co., No. 5:12-CV-590-F, 2013 WL 2037133 (E.D.N.C. May 14, 2013).

[10] Smith v. Greensboro Joint Stock Land Bank, 213 N.C. 343, 196 S.E. 481, 482 (N.C. 1938)).

[11] Strickland v. Hedrick, 669 S.E.2d 61, 73 (N.C. Ct. App. 2008) (holding conspiracy claim to be ancillary and dependent on underlying claim) (internal punctuation omitted).

[12] Id.

9. The stated basis for the Gilberts' conspiracy claim is GMACM's purported participation in a conspiracy "to commit wrongful foreclosure through the introduction of fraudulent affidavits of employee, Jeffrey Stephan, in the Foreclosure Suit." In North Carolina, however, "a civil action may not be maintained for a conspiracy to give false testimony."[13] As a result, the Gilberts' conspiracy claim fails, and the $5.25 Million demand made in relation to the claim should be disallowed.

### 4. The Gilberts Cannot Maintain Claims Against GMACM For Improper Debt Collection.

10. The next category of damages outlined in the Damages Summary is based on a litany of alleged "debt collection violations," which the complaint appended to the Gilberts' original proof of claim shows is based on the North Carolina Debt Collection Act ("NCDCA"). Specifically, N.C. Gen. Stat. § 75-54(4) is violated where a debt collector "[f]alsely represent[s] the character, extent, or amount of a debt against a consumer or of its status in [a] legal proceeding . . . ." The Gilberts specifically claim violations of the NCDCA based on the "filing of affidavits in a legal proceeding"; allegedly fraudulent representations by representatives of GMACM in letters from counsel; and the placement of a foreclosure notice on a courthouse bulletin board. Doc. 5004, Damages Summary, ¶ 4 (a)-(d).

11. GMACM was not a party to the foreclosure proceeding against the Gilberts, as the foreclosure was brought on behalf of Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6 ("Deutsche"). Further, although GMACM employees signed the supporting affidavits in the foreclosure, there has been no adjudication that those specific affidavits were robo-signed or fraudulent. Rather, the state court of appeals merely

---

[13] Hawkins v. Webster, 337 S.E.2d 682, 684 (N.C. Ct. App. 1985); see also Brewer v. Carolina Coach, 253 N.C. 257, 260, 116 S.E.2d 725, 727 (1960) ("[A] civil action in tort cannot be maintained upon the ground that a defendant gave false testimony or procured other persons to give false or perjured testimony."); Strickland 669 S.E.2d at 73 (upholding dismissal of conspiracy to provide false testimony claim).

5

found they were not "competent evidence to support the trial court's finding that Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Series 2006-QA6 is the owner and holder of Mr. Gilbert's note."[14]

12. Further, the August 22, 2011, and March 22, 2013, letters from counsel for GMACM and Deutsche are not actionable. The August 22, 2011, letter continued discussions between opposing counsel, including settlement discussions. Defense counsel's statements regarding the ownership of the loan are not "fraudulent" simply because the Gilberts disagree with the position. The March 2013 letter followed the sale of GMACM's servicing assets to Ocwen Loan Servicing, LLC ("Ocwen") and was sent on behalf of Ocwen, not GMACM. Hancock Decl., ¶ 4. Finally, the Gilberts have not established that communications sent to their counsel, rather than to them, are even actionable under North Carolina law. See Sadler v. Scott Lowery Law Office, P.C., 737 S.E.2d 191 (N.C. App. 2013) (discussing the parallel FDCPA[15] and finding that plaintiff could not claim that a letter to his counsel was actionable).[16]

13. Accordingly, because GMACM did not engage in the conduct forming the alleged debt collection violations, the portion of the Gilberts' claim based on the damages described in Paras. 4.a., 4.b., and 4.c. of the Damages Summary should all be disallowed.

14. The Gilberts' final "debt collection violation" claim is based on six phone calls GMACM allegedly made directly to the Gilberts in 2009. The claim is presumably made pursuant to N.C. Gen. Stat. § 75-55, which provides that "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means. Such means include, but are not

---

[14] In re David A. Simpson, P.C., 711 S.E.2d 165, 175 (N.C. App. 2011).

[15] North Carolina courts have found that the FDCPA is "particularly instructive, though not binding," on issues regarding the state's NCDCA. Reid v. Ayers, 138 N.C. App. 261, 263 (2000).

[16] The Sadler court considered two theories to reach the same conclusion: (1) that the attorney was capable of protecting the plaintiff from the allegedly false representation and, (2) that the allegedly unfair and misleading communication was not likely to mislead a competent attorney. The same conclusions can be reached here.

6

limited to . . . "[c]ommunicating with a consumer . . . whenever the debt collector has been notified by the consumer's attorney that he represents said consumer." Id. at (3).

15.    In the Response, the Gilberts for the first time specifically identify calls from four years ago that allegedly violate N.C. Gen. Stat. § 75-55(3) and seek actual damages and statutory damages in the amount of $2,000 for each call. GMACM does not concede this claim but needs a further opportunity to investigate the veracity of these statements. Accordingly, all but $12,000 of the "debt collection violations" portion of the Gilberts' claim should be disallowed, and GMACM should be given additional time to investigate the six phone calls associated with the remaining $12,000 in damages.

### 5.    The Gilberts' UDTPA Claims Fail Because The Conduct Underlying The Claims Cannot Be Shown To Be Deceptive Or "Unscrupulous."

16.    The next category of damages claimed by the Gilberts is based on the alleged violations by GMACM of the North Carolina UDTPA.[17] As a threshold matter, the United States Court of Appeals for the Fourth Circuit already rejected the damages claim made in Para. 5.d. of the Damages Summary, ruling that the Gilberts' UDTPA claim was properly dismissed to the extent it was based on the loan originator's alleged failure to make TILA disclosures.[18]

17.    As discussed above, the Gilberts are unable to maintain claims against GMACM for violation of TILA, usurious conduct, and breach of contract – all of which the Gilberts cite as bases for their UDTPA claims. Given that the Gilberts cannot show, as a threshold matter, that GMACM engaged in an act or practice underlying a UDTPA claim, they cannot show that such act or practice was deceptive or "unscrupulous" to the point that it gives rise to a UDTPA claim.

---

[17] North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.
[18] Gilbert v. Residential Funding LLC, 678 F.3d 271, 280 (4th Cir. 2012).

7

"Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive trade practice."[19]

18. Similarly, the Gilberts cannot maintain a claim based on GMACM's employees' execution of allegedly "fraudulent" affidavits in support of the foreclosure. Insofar as the alleged act or practice underlying the UDTPA claim is the provision of false testimony, the basis for the claim is civil perjury, "a cause of action North Carolina has expressly declined to recognize."[20]

19. The Gilberts also claim GMACM somehow violated the UDTPA by further endorsing the note and then making "threats to reinstitute foreclosure using said false indorsement." The claim is groundless, as GMACM was properly acting as the servicer, and it was within the power of Deutsche Bank, as owner of the Gilberts' note, to change the endorsement. The Gilberts do not and cannot point to any provision of the North Carolina Commercial Code that prohibits an authorized holder from making additional endorsements to its own note.[21] Moreover, a second foreclosure action has not been initiated, despite the continuation of the Gilberts' default.

**B.  Claimants Erroneously Contend That The Debtors Are Barred By Res Judicata And Collateral Estoppel From Arguing Against The Merit Of Claimants' Claims.**

20. Instead of substantiating the merit of their claims, the Gilberts wrongly argue that "most if not all of Debtors' arguments are barred by res judicata and collateral estoppel." Resp. ¶ 13. The Gilberts' argument fails because no court has entered a final order deciding the claims on their merits.

---

[19] SunTrust Bank v. Bryant/Sutphin Props., LLC, 732 S.E.2d 594, 598 (N.C. Ct. App. 2012).
[20] Hawkins, 337 S.E.2d at 684.
[21] See N.C.G.S.A. §§ 25-3-204, 25-3-205, & 25-3-110(c)(2)(i).

8

21. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[22] Similarly, "[u]nder collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[23] "Finality of the judgment upon which a contention of res judicata rests is, of course, essential to its application."[24] The ultimate denial of GMACM's motion to dismiss was "not a final order because it does not 'end the litigation on the merits and leave nothing for the court to do but execute the judgment.'"[25] In Humphrey v. Prudential Sec. Inc., the Fourth Circuit held, "[T]he denial of [a motion to dismiss] merely represented a decision to forego resolution of the case on the merits at that stage. . . . [and] in no way established a final judgment from which the preclusive effects of res judicata should emanate."[26]

22. None of the defendants sued by the Gilberts has so much as filed an answer to their complaint, and there certainly has not been a final ruling on the merit of any of the Gilberts' claims. As a result, the Gilberts cannot claim that GMACM is barred by res judicata or collateral estoppel from attacking the merits of their claims.

C. **The Delehey Declaration In Support Of Debtors' Objections Is Sufficient Under Federal Law.**

23. According to the Gilberts' Response, the Delehey Declaration's identification of GMACM as the servicer and not the owner of the Gilberts' loan is a legal conclusion to be

---

[22] Montana v. United. States., 440 U.S. 147, 153 (1979).

[23] Id.; see also Combs v. Richardson, 838 F.2d 112, 114-15 (4th Cir. 1988) (reviewing the principles of collateral estoppel in the context of bankruptcy proceedings).

[24] Mellon Bank, N.A. v. Ternisky, 999 F.2d 791, 795 (4th Cir. 1993).

[25] Rux v. Republic of Sudan, 461 F.3d 461, 474 (4th Cir. 2006) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).

[26] 4 F.3d 313, 314 n.1 (4th Cir. 1993) (explaining that defendants' assertions that a denial of a motion to dismiss precluded a subsequent decision to dismiss a case "misapprehend[ed] the scope of the res judicata doctrine").

9

determined by a court of law.[27] Resp. ¶ 26. In support of this argument, the Gilberts point to a North Carolina appellate decision, not to any federal cases.

24.    Applicable federal law does not support the Gilberts' claim. In <u>In re Leslie</u>, the United States Bankruptcy Court for the District of Connecticut held that a debtor had failed to refute GMACM's possession of the original note when GMACM filed a certified copy of the note and an affidavit by an employee of GMACM stating that "GMAC remains the owner, holder, and servicer of the Note and is entitled to enforce all rights and remedies thereunder."[28] Further, GMACM's role as servicer is a contractual relationship and therefore a statement of fact, not a legal conclusion.[29]

WHEREFORE, the Debtors respectfully submit that the relief sought in the Objection should be granted and any other relief that the Court finds reasonable and justified.

---

[27] The Gilberts also allege that the Declaration fails to meet the business records exception to the hearsay rule by identifying a variety of factors not required under the exception. Resp. ¶ 24. The Delehey Declaration, however, based upon Delehey's personal knowledge and examination of the Gilberts' case file, meets the requirements of Fed. R. Evid. 803(6). <u>United States v. Jones</u>, 554 F.2d 251, 252 (5th Cir. 1977) ("It is not essential that the offering witness be the recorder or even be certain of who recorded the item."); see <u>Tucker v. New York City</u>, 376 F. App'x 100, 103 n.4 (2d Cir. 2010); <u>In re Sia</u>, No. 10-41873, 2013 WL 4547312, at *4-7 (Bankr. D.N.J. Aug. 27, 2013).

[28] No. 05-24110, 2007 WL 80806, at *3 (Bankr. D. Conn. Jan. 5, 2007); see also <u>In re Conde-Dedonato</u>, 391 B.R. 247, 251 (Bankr. E.D.N.Y. 2008); <u>In re Escobar</u>, 457 B.R. 229, 235 (Bankr. E.D.N.Y. 2011).

[29] See <u>Keyes v. Deutsche Bank Nat. Trust Co.</u>, 921 F. Supp. 2d 749, 755 (E.D. Mich. 2013) ("As this Court has held previously, the plaintiffs' allegation that Bank of America was their servicer is a factual allegation."); see also <u>Henry v. Chase Home Fin., LLC</u>, No. CIV.A. H-11-0668, 2012 WL 5868594, at *3-5 (S.D. Tex. Nov. 19, 2012).

Dated: September 20, 2013
New York, New York

/s/ Norman S. Rosenbaum
Gary S. Lee
Norman S. Rosenbaum
Jordan A. Wishnew
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Debtors and
Debtors in Possession*

- and -

Christian W. Hancock
BRADLEY ARANT BOULT
CUMMINGS LLP
Bank of America Corporate Center
100 N. Tryon Street, Suite 2690
Charlotte, NC 28202
Telephone: (704) 338-6005
Facsimile: (704) 338-6089

*Special Litigation and Compliance Counsel
for the Debtors and Debtors in Possession*