Wendy Alison Nora                          Hearing Date: October 9, 2013
ACCESS LEGAL SERVICES                      Response Date: September 23, 2013
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------
In re

Residential Capital, LLC *et al.,*                    Chapter 11
                                                       Case No. 12-12020 (MG)

                          Debtors.                     Administratively Consolidated

-----------------------------------------------------------------

### RESPONSE TO OBJECTION TO CLAIM #242 IN THE RECORD OF KURTZMAN CARLSON CONSULTANTS, LLC (KCC, LLC)  OF PAUL N. PAPAS II AND DEMAND FOR CONTESTED PROCEEDINGS UNDER BANKRUPTCY RULES 3007 AND 9014 UPON PROPER OBJECTION, IF ANY

_____

        NOW COMES Paul N. Papas II,  by his attorney Wendy Alison Nora, and responds to the

Debtors' Objection to his Proof of Claim #242 and shows the Court:

        1.    On September 4, 2013, Debtors filed their Objection to Claim #242 contained in the

records of Kurtzman Carlson Consultants, LLC (KCC, LLC) and submitted by Paul N. Papas II

on July 2, 2012 and asserted that it should be disallowed for a variety of reasons.

        2.    On September 10, 2013, Paul N. Papas II amended Claim #242 in the records of KCC,

LLC by filing an Amended Proof of Claim in these proceedings as Claim #17 in this Court's

Claims Registry.

        3.    Mr. Papas takes the position that, notwithstanding the appointment of KCC, LLC as

1

Debtors' private claims agent, the filing of his Amended Claim in this Court is wholly effective

as an amendment of the Proof of Claim, previously submitted to the privately-operated KCC,

LLC records.

4.   There is no mechanism for electronically filing amended claims with KCC, LLC,

which operates a private data base, and Mr. Papas is constitutionally entitled to procedural and

substantive due process under the Fifth Amendment to the <u>Constitution of the United States</u> by

accessing the Court's electronic filing system, which is the public record of these proceedings.

5.   By filing his Amended Proof of Claim as Claim #17 in these proceedings, his

previously filed claim in the private claims registry has been amended and KCC, LLC's recorded

Claim #242 has been replaced and is no longer before the Court.

6.   Debtors have not objected to Amended Proof of Claim #17 in these proceedings and

their objection to KCC, LLC Claim #242 is moot.

7.   Paul N. Papas II holds an interest in 115 properties by contracts for sale, offers to

purchase and lis pendens, which have titles clouded by claims of these Debtors, who have

utilized the private data base known as Mortgage Electronic Registrations Systems,

Inc.[MERS®] to conceal the identities of the parties entitled to enforce debt obligations

purportedly secured by mortgages throughout the nation.  In most states, the party entitled to

enforce a mortgage is the holder of the note and the mortgage is security for payment of the note

and acknowledge that the mortgage follows the note by equitable assignment.[1]  In a minority of

jurisdictions, the party seeking to enforce a debt secured by a mortgage may be the agent for the

---

[1]  <u>Carpenter v. Longran</u>, 83 U.S. 271 (1873) <u>In re Veal</u>, 450 B.R. 897(Ninth Circuit Bankruptcy
Appellate Panel, Arizona, 2011)

party to whom the mortgage was given (only Minnesota is such a state, which enacted a specific "MERS statute," held to be consistent with Minnesota case law in Jackson v. MERS,  770 N.W.2d 487 (Minn. 2009) or may only be the named mortgagee of record (cf. Washington, [2] Massachusetts,[3] Texas[4] and Rhode Island.[5])   Only Minnesota law continues to allows MERS®, a computer data base with no employees, to purport to foreclose on real estate located in Minnesota and no further discussion will ensue about the Minnesota anomaly, which is based upon the Minnesota Supreme Court's interpretation of its own case law and a specific Minnesota statute which has no force or application outside the boundaries of Minnesota.  Mr. Papas claims no interest in any real estate located in the State of Minnesota.  He has real estate interests in Washington, Massachusetts, Texas and Rhode Island and the law of those each of those states will be applied at the eventual contested hearing on Amended Claim 17.

8.  MERS®,  which exists only as a computer data base, is owned and operated by MERSCORP Holding, Inc., a Delaware corporation, of which Mortgage Electronic Registration Systems, Inc. (MERS), a Delaware corporation, is purportedly a subsidiary.  MERS, the subsidiary of MERSCORP Holdings, Inc., has no employees, but claims an interest as "nominee of the 'Lender'" in approximately 60% of the recorded mortgages in the United States of America, having never loaned any money, having serviced no loans, and having failed to register as a foreign corporation (outside the State of Delaware) doing business in most states.

---

[2]  Bain v. Metropolitan Mortgage, et al.  175 Wash.2d 83, 285 P.3d 34 (Wash., 2012)

[3]  U.S. Bank, N.A. v. Ibanez,  458 Mass. 637,  941 N.E.2d 40 (Mass. 2011)

[4]  Salvidar v. JPMorgan Chase, 2013 WL 2452699 (Bky. S.D. Texas, June 5, 2013)

[5]  Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282 (1st Cir., 2013)

3

9.    MERS, as the nominee of the "Lender" appears on mortgage instruments for two reasons.  First, the advertised and promoted reason: to avoid the payment of recording fees to local deed registries;[6] and, for the second reason not advertised or promoted: to facilitate the process of mortgage securitization, which involves multiple sales of the notes purportedly secured by mortgages in which MERS is the "nominee of the 'Lender'."

10.    The securitization process involves the purported bundling of mortgage loans into pools and the designation of tranches which are purportedly designed to assign risk factors , and then purportedly issues securities to investors.    Mortgage insurance was the first line defense of the investors in the securitization scheme and mortgage insurance claims effectively bankrupted the monoline insurance companies when the securitization scheme began to unravel because promises made to homeowners by mortgage brokers to refinance loans with adjustable interest rates were not fulfilled and millions of mortgages were rendered unpayable by the deliberate manipulation of the London Interbank Overnight Rate (LIBOR) on which the adjustable interest rates were based.  Credit default swaps between counterparties derived from the underlying collateral consisting of the notes and mortgages yielded huge profits to insiders who knew that the mortgages had been designed to fail and that interest rates were manipulated to cause the loans to fail.  The engineered collapse of the residential mortgage market in the United States resulted in the creation of the Troubled Asset Relief Program (TARP) at 12 USC sec. 5212, et seq., by which the counterparties to the bad bets that the homeowners would not default (those

---

[6]  Mr. Papas will introduce the MERS Manual from 2001 at the evidentiary hearing which promotes MERS for avoiding deed registry taxes and fees.

who were not in on the scheme to cause the defaults or chose to take the wrong side of some bets

for purposes of deceiving innocent investors) were "bailed out."

11.    Ally Financial, Inc. (AFI), Debtors' parent company, withdrew its financial support

to the Debtors in order to retain 12 billion dollars in TARP funds and to attempt to force the

homeowners and the investors in (empty) Real Estate Mortgage Investment Conduits (REMIC)

Trusts, also known as securitization trusts, to take pennies on the dollar for their losses in the

securitization scheme.   Those who the Debtors define as "Borrowers" were never informed that

their mortgage loans were intended to be collateral for unregulated securities to be sold to

undisclosed third party investors and the third party investors are just beginning to discover that

the fraud committed upon them was not just that the loans which were the basis for the collateral

for the securities they purchased were not properly originated or underwritten, but had never been

conveyed to the trusts in which they had invested.  (See Exhibit A: Phoenix Light SF Limited, et

al V. JPMorgan Chase & Co., et al., filed on August 20, 2013 in the Supreme Court of New York

for the County of New York attached hereto.) In the most amazing fraud ever attempted to be

perpetrated in the bankruptcy courts of the United States, AFI seeks a third party release as

nondebtor parent of RESCAP and the subsidiaries it has intentionally bankrupted, so that it can

retain 12 billion dollars of a total of 17 billion dollars in TARP funds, which it obtained from

Congress under false pretenses of bailing out its automobile manufacturing subsidiary, General

Motors Corporation.  General Motors Corporation, which received only 5 billion dollars of the

TARP funds, by holding the nation hostage to the threat of loss of thousands of jobs in the

automotive sector, while 12 billion dollars was taken to stabilize the residential lending sector of

the company, the majority of which funds AFI seeks to retain by obtaining a third party release in these proceedings in exchange for the contribution of 2.1 billion dollars to Debtors' estate purportedly for claims which the Debtors have against AFI.   Debtors' Disclosure Statement, filed on July 4, 2013 and the Amended Disclosure Statement, filed on August 16, 2013,  without adequate notice to the objectors so that they could object to the Amended Disclosure Statement in advance of the hearing precipitously held thereon on August 21, 2013,[7] and  the Chapter 11 Plan filed on July 3, 2013 provides no discussion of the Debtors' business operation or treatment of claims such arising from the origination, securitization, foreclosure, or liquidation of illegally foreclosed  real estate interests as to real estate owners themselves.  The Disclosure Statement and its amendment and the Chapter 11 Plan does not mention of third party contracts and other interests which have been damaged,  such as those represented by Mr. Papas, or how such claims are to be treated.   Debtors have been aware of Mr. Papas' claim since July 2, 2012, but have wholly ignored the entire category of third party interests deriving from the homeowners' property rights and the damages they have caused to that category of interested parties by their

---

[7]  The Amended Disclosure Statement was filed without adequate notice to the parties objecting to its approval and the hearing held on August 21, 2013, resulted in the approval of the Amended Disclosure Statement, without notice and opportunity being given to the objecting parties was purportedly approved on August 23, 2013 [Doc. 4809].  Furthermore, Mr. Papas was given approximately one second to make his telephonic appearance known and the court skipped to the next objecting party, allowing another approximately one second to state his or her telephonic appearance and so on.  The only objecting party seeking to appear by telephone to be given more than one second to state his or her appearance was current counsel for Mr. Papas, who was unable to be heard when called because somehow she had been placed on "mute" on a live call.  She called back into the Court twice and once was told not to speak (unless spoken to)  and finally intruded and asked if she could then speak and was told that her objection had already been overruled on the basis of the Court's review of the "papers." This is, again, a violation of the First and Fifth Amendment rights of objecting parties.   Objections to Disclosure Statements are contested matters under BR 9014 and cannot be decided on review of "papers" where evidentiary issues were raised, as they were by both Mr. Papas and Ms. Nora in her own right and on behalf of others similarly situated.

fraudulent securitization scheme, concealed by MERS.

12. The securitization process was used to create various forms of derivatives from the collateral fraudulently taken by loan originations and sold to purported depositors and resold to the trusts, without ever delivering the collateral. Derivatives which purportedly hedge against loss in the event of nonpayment of the mortgage debts ranged from credit default swaps to synthetic derivatives and expanded the credit risk exponentially, but created an enormous opportunity for profit in the process of sale and re-sale of mortgage loans. Debtors have not returned a single note to its maker and are believed to have conspired with the purported trustees of the empty REMIC Trusts to sell and resell the notes as a form of counterfeit currency in overseas market. The record shows that the REMIC Trusts operated under the call letters RASC, RALI, RAAC, RFMSI, RFCS, SASC, SACO, etc. had, as Trustees, many of the same financial institutions which sit on the Committee of Unsecured Creditors and/or have claims against the Debtors. The records also show that the Debtors are the servicers of some of the Maiden Lane Trusts, which were created using the collateral taken in exchange for TARP funds. None of the collateral in any of the trusts was ever identified in these proceedings. Debtors have not identified the properties that they have confiscated, liquidated and are still seeking to liquidate as originators, servicers, sellers or depositors in the securitization process and never identified which loans they actually owned in these proceedings.

13. In the securitization process, face value of the mortgage loan is multiplied least 15 times the face value and Mr. Papas has chosen to use the factor of to calculate the loss to the homeowners with whom Mr. Papas has contracts, which is the lowest factor of multiplication for

which the expert witness will testify.

14.    Mr. Papas stands in privity of contract with the owners of the 115 properties in which he has an interest as the contractual purchaser of the properties and all claims associated therewith belonging to the owners of the subject real estate.

15.    Mr. Papas has appeared throughout these proceedings on his own behalf as an interested party and attempted to appear at proceedings on July 10, 2013 through the undersigned counsel limited to the proceedings had on that day.   He has appealed from this Court's Order denying his Motion to Convert these Proceedings to Chapter 7, which appeal has been perfected in the United States Court of Appeals for the Second Circuit.   In an abundance of disrespect, Debtors make the irrelevant claim that the appeal to the United States Court of Appeals for the Second Circuit was dismissed for failure to pay filing fee and then reinstated.  Debtors claim that the appeal was dismissed for failure to pay the filing fee is not completely true and they know or should know that it is not completely true.  Mr. Papas paid the filing fee when he initiated the appeal on paper and there was a court error in the recording of the filing fee as not paid when it was.   It has become painfully obvious that these Debtors attempt to depict their opponents in a negative light, using every falsehood or half truth in characterizing the status of proceedings, the conduct of their opponents, and the merits of their opponents positions in order to gain a litigation advantage.   According to the Debtors, their most zealous opponents are vexatious litigants and Debtors claim they are entitled to summary proceedings disallowing homeowners' claims for billions of dollars in injuries caused by the Debtors and their affiliates, without

affording the homeowners their rights under the First[8] and Fifth[9] Amendments to the <u>United</u>

<u>States Constitution</u> to contested proceedings required by Bankruptcy Rules (BR) 3007 and  9014.

The Committee Notes to BR 9014 provide:

> Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, ***the filing of an objection to a proof of claim***, to a claim of exemption, ***or to a disclosure statement creates a dispute which is a contested matter***. . .  (Emphasis added.)

16.   Thousands of homeowner claims have been disallowed and are pending disallowance

under summary proceedings which are not in compliance with BR 9014( c), (d) and (e), which

provide:

> (c) Application of Part VII Rules. Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. ***The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order***.
>
> (d) Testimony of Witnesses. ***Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.***
>
> (e) Attendance of Witnesses. ***The court shall provide procedures that enable***

---

[8]  Right to petition courts for redress of grievances

[9]  Right to procedural and substantive due process

9

*parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.*

17.    Mr. Papas and others who objected to the Disclosure Statement were denied the contested proceedings required before the Disclosure Statement could be approved and Mr. Papas and Ms. Nora, in her individual capacity, have appealed from the approval of the Disclosure Statement.   The Bankruptcy Court made no findings of fact, which it was required to do, but signed the Debtors' form order approving the Disclosure Statement.  The form order provided the wholly inadequate mixed finding of fact/conclusion of law, among other deficiencies:

### II. The Disclosure Statement
D. As to each of the Debtors, the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code, and no further information is necessary.

18.    Mr. Papas' Proof of Claim 242 was no where mentioned in the Disclosure Statement and is no where treated in the Debtors' Chapter 11 Plan.  The entire category of claims of which Mr. Papas is a claimant have been ignored by the Debtors.  His Proof of Claim 242 filed with KCC, LLC on July 2, 2013 gave notice to the Debtors of a category of persons injured by their wrongful foreclosures and confiscation of homes in which third parties have interests of record or private contracts.  He has filed his  Amended Claim Proof of Claim 17 for his individual damages alone and is not presently seeking to represent the class of persons who had contractual relationships with those who the Debtors have defined as "Borrowers."[10]

---

[10]    Debtors' definition of "borrower" appears on page 9 of the Chapter 11 Plan, which provides at definition 28:  "Borrower" means an individual whose current or former mortgage loan was originated, serviced, sold, consolidated, or owned by any of the Debtors.

19.   Debtors falsely claim that Mr. Papas is a "vexatious" litigant whose lack of respect for the bankruptcy process is evident in his Proof of Claim 242, which has now been amended after consultation with this counsel.   His Proof of Claim 242 in the amount of 10 billion dollars was intended to call the Debtors' attention to the damages they have caused throughout the nation by their illegal confiscation of homes by forging mortgage assignments purportedly assigning mortgages for which MERS is supposed nominee for the original "Lender," when MERS® is a computer database which loans no money, holds no mortgage notes, services no loans and acts as a nearly impenetrable veil to conceal the identity of the note holder to commit fraud on homeowners and their privies throughout the nation.   Debtors have entirely ignored the damages to third parties who have contracts or interests aligned with those they define as "Borrowers," despite Mr. Papas' Proof of Claim 242 and his diligent efforts to appear and be heard in these proceedings.

20.   Upon consultation with counsel, Mr. Papas has amended his Proof of Claim 242, filed with the private database operated by KCC, LLC and Proof of Claim 242 is no longer pending before the Court.  The purpose of Proof of Claim 242 was to inform the Debtors of the scope of the damages they were inflicting by their forgery and perjury scheme on third parties who have interests in real estate upon which MERS acts as the "nominee" of the "Lender." Amended Claim 17 states Mr. Papas' claim on his own behalf and the homeowners with whom he had and has contractual relationships who entered into contracts with him and no longer asserts the damages which are owed to the class of injured third parties, who Debtors have failed to identify as persons who have claims against them.

11

21.   Mr. Papas attached the list of properties in which he has an interest to his Amended

Claim 17.  That list has been on file with the  Arizona Superior Court and has been known to the

Debtor since 2010.  No objections were ever raised in any proceeding on any of the properties in

any action involving MERS and the Debtors.  Debtors cannot claim lack of knowledge of the Mr.

Papas' interest in the list of properties attached to Claim 17.  Additionally GMAC Mortgage,

LLC has been and still is in active litigation with the Claimant as to some of those properties, of

which but one item of litigation is attached to the Debtors' Objection to Proof of Claim 242 and

that litigation is on appeal.   Presumably, Debtors selected that single case because it purports to

show an award of attorneys' fees to the Debtors and is intended to support their attempted

character assassination of Mr. Papas, which is the Debtors' style of engagement with their

opponents.  A good offense is thought to be a good defense.  The award of attorneys' fees is on

appeal and it is noteworthy that the Debtors fail to note that it is their use of the automatic stay as

a sword, which derailed his rights in the Tobias proceedings,  and fail to address the fact that the

appeal is pending, except to pretend that the Tobias proceedings have already been adjudicated

without any analysis of the application of res judicata under Arizona law, particularly where a

party litigant is hiding behind an automatic stay, while actively continuing to litigate.   It is the

Debtors who are vexatious litigants by the very design of hiding behind the automatic stay and

going forward to confiscate homes on forged and perjured documents, using the stay as both a

sword and a shield.

22.  By participating in these proceedings and filing this Response, Mr. Papas does not

waive any of his arguments about the invalidity of transfers from MERS to any entity.

12

23.   Finally, the Debtors cannot proceed in a consolidated case under a single case number, conceal their various entities' participation in the securitization scheme and then pretend that any claimant has filed a claim against the "wrong Debtor."  In re Residential Capital, LLC is the consolidated case name, case number 12-12020 is the consolidated case number and all claims are properly brought and filed in the lead case.

24.   Proof of Claim 242 to which Debtors have objected has been amended, and is now moot.  Debtors have not objected to Proof of Claim 17.

**WHEREFORE**, the Debtors' Objection to Proof of Claim #242 recorded by KCC, LLC is moot and  Paul N. Papas II demands contested proceedings and reserves his rights to an evidentiary hearing on any Objection to Amended Proof of Claim 17 which may be filed in these proceedings.

Dated  at Madison, Wisconsin this 25th day of September, 2013.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
ACCESS LEGAL SERVICES
Counsel for Paul N. Papas II
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (608) 497-1026
accesslegalservices@gmail.com

### UNSWORN DECLARATION OF SERVICE

The above-captioned document filed by CM/ECF on September 25,  2013 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

*/s/ Wendy Alison Nora*
Wendy Alison Nora