Wendy Alison Nora                              Hearing Date: October 9, 2013
ACCESS LEGAL SERVICES                          Response Date: September 30, 2013
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone: (612) 333-4144
Facsimile: (608) 497-1026

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------
In re

Residential Capital, LLC *et al.,*                    Chapter 11
                                                      Case No. 12-12020 (MG)

              Debtors.                Administratively Consolidated

----------------------------------------------------------------

### RESPONSE TO OBJECTION TO CLAIM #4754 IN THE RECORD OF KURTZMAN CARLSON CONSULTANTS, LLC (KCC, LLC) OF CAREN WILSON AMENDED AS CLAIM 18 IN THESE PROCEEDINGS

_____

NOW COMES Caren Wilson,  by her attorney Wendy Alison Nora, and responds to the

Debtors' Objection to his Proof of Claim #4754 in the record of RESCP Claims maintained by

Kurtzman Carlson Consultants, LLC (KCC, LLC) and shows the Court:

1.  On August 29, 2013, Debtors filed their Thirtieth Objection to "Borrower" Proofs of

Claim (Doc. 4887) as to certain Proofs of Claim  filed in the records of Kurtzman Carlson

Consultants, LLC (KCC, LLC) and, among the Proofs of Claim Debtors seek to disallow is Proof

of Claim #4754 filed by Caren Wilson recorded on November 14, 2012.

2.   On September 4, 2013, Ms. Wilson received the attached Exhibit A which advised

her that her claim had already been disallowed and that she would not be permitted to vote to

accept or reject the Debtors' Chapter 11 Plan , which they filed on July 3, 2013.

1

3.   Ms. Wilson did not receive a copy of the form letter attached to the "Debtors'

Thirtieth Omnibus Objection to Claims (No Liability Borrower Claims – Books and Records)" as

Exhibit 4.

4.   She responds to the Debtors' Objection to her Proof of Claim and states that she had a

right to be heard as to the validity of her Proof of Claim #4754, which is prima facie evidence of

the validity thereof under Bankruptcy Rule 3001(f) and should never have been sought to be

disallowed by Objection without opportunity to be heard in contested proceedings.

5.   To the extent that her Proof of Claim #4754 embraced damages she suffered from the

Debtors attempts to illegally foreclosure of her home through forged and perjured documents, as

well as a claim for disgorgement of profits taken by the Debtors and their affiliated entities by the

theft of her identity consisting of her mortgage loan documents to be sold and re-sold in the

"securitization" process without her knowledge and consent, from which the Debtors and their

collaborators profited by a factor of at least 15 times, her claim would be properly classified as

unsecured.   The secured portion of her claim is the value of her home, which she sought to

secure by her claim in these proceedings against the Debtors' continuing illegal efforts to

confiscate her home on forged and perjured documents after the date of the Debtors' bankruptcy

filing.   She has a post-petition claim for violation of her civil rights under 42 USC sec. 1983 for

state action in the illegal confiscation of her home by foreclosure proceedings founded on forged,

perjured and fictitious documents as well as for illegal eviction, in which she was physically

injured by state action, directly related to the foreclosure initiated on forged documents,

continued on forged documents after the date of filing of the Debtors' bankruptcy proceedings

and which was ultimately completed after the date of the sale of the Debtors' servicing rights to

Ocwen Financial Corporation.

6.  Ms. Wilson's post-petition state and federal law claims, including, but not limited to,

violations of her First, Fourth, Fifth and Fourteenth Amendment rights under the United States

Constitution, actionable under 42 USC sec. 1983; Racketeer Influenced and Corrupt

Organizations (RICO) Act violations, actionable under 18 USC sec. 1964; state claims for abuse

of legal process and  conversion of her real estate title and seizure of her personal property,

including her files necessary to prove her claims against Debtors, their assignees, agents and

affiliates; common law fraud; negligent, reckless or willful and wanton personal injury;

intentional infliction of emotional harm;  and for punitive damages are not subject to the

automatic stay but may nonetheless be brought in these proceedings as an adversary proceeding

or in a court with jurisdiction over her post-petition claim, which will be commenced for civil

rights violations by these Debtors, their assignees, agents and affiliates.

7.  Once again, and in these proceedings, the Debtors have attempted to deprive her of her

First and Fifth Amendment rights under the United States Constitution to petition the

government for redress of grievances in judicial proceedings and to procedural and substantive

due process, which requires that she have notice and opportunity to be heard before she can be

deprived of her property, which consists of both the real estate illegally confiscated on forged and

perjured documents and her claims in these proceedings.

8.  In these proceedings, the Debtors are now seeking to defeat the claims of homeowners

whose real estate interests have been illegally confiscated upon forged and perjured documents,

depriving them of full and fair opportunity to be heard under the First and Fifth Amendments to

the United States Constitution so that they can cram claims for billions of dollars in damages into

3

a "Borrowers Trust" funded in the amount of approximately 57.6 millions dollars.   They waited

to commence their assault on "Borrower" Claims until the date they filed their Chapter 11 Plan,

July 3, 2013.[1]   That day they filed the Eleventh,[2] Twelfth,[3] Thirteenth,[4] Fourteenth,[5] Fifteenth,[6]

Sixteenth,[7] and Seventeenth Omnibus Objections to Claim.   The Seventh Omnibus Objection to

Claims [Doc. 4151] sought relief from "misclassified" claims of "Borrowers" and was filed on

the date the Chapter 11 Plan was filed.

9.    On July 4, 2013, Debtors continued their assault on Borrower Claims with their

Eighteenth (Doc. 4154), Nineteenth (Doc. 4155), Twentieth (Doc. 4156) and Twenty-First (Doc.

4148) Omnibus Objections to "Borrower" Claims, listing hundreds of claims as purportedly

flawed for "insufficient documentation.[8]"   Again, on July 10, 2013, in their Twenty-Second

---

[1]  Debtors' previous omnibus objections were facially routine, generally seeking relief from late-filed claims [First Objection (Doc. 3573)  and  Fourth Objection (Doc. 3923) dated May 1, 2013, and Fifth Objection (Doc. 3924)]; duplicate claims [Second Objection (Doc. 3574 and Sixth Objection (Doc. 3925) and Ninth Objection (Doc. 3926?)] dated June 7, 2013; amended and superceded claims [Third Objection (Doc. 3575) dated May 1, 2013 and Seventh Objection dated June 7, 2013]; redundant claims (Doc. 3927)] and, then, "insufficiently documented" claims as to tax claims (Doc. Unknown)].

[2]  Doc. 4145: "Misclassified" Claims

[3]  Doc. 4146: "No liability-Paid and Satisfied" Tax Claims

[4]  Doc. 4147: "No liability (on their) Books and Records"

[5]  Doc. 4148: "No liability (on their) Books and Records" Tax Claims

[6]  Doc. 4149: "Insufficient Documentation" Tax Claims

[7]  Doc. 4150: "Redundant" Claims

[8]  Bankruptcy Rule 3007(e) does not provide for an Omnibus Objection on the grounds that the documentation is insufficient.  The closest authority stated in Rule 3007(e) to that asserted by the Debtors is BR 3007(e)(6), which provides: (6) they [the claims] were presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity

Omnibus Objection (Doc. 4199), they sought to disallow "Borrower" Claims for "insufficient

documentation.  On July 25, 2013, Debtors filed their Twenty-Third Objection to "Borrower"

Claims asserting no liability for the claims, based on their "books and records.[9]"  On August 15,

2013, Debtors filed their Twenty-Fourth (Doc. 4714), Twenty-Fifth (Doc. 4715) to"Borrower"

Claims which have been "Amended and Superceded."  On August 16, 2013, Debtors filed their

Twenty-Sixth (Doc. 4734) and Twenty-Seventh (Doc. 4735) Omnibus Objections to "Borrower"

Claims for "insufficient documentation"[10] and on August 19, 2013, Debtors again seek to

violated the Bankruptcy Code and abuse the processes of this Court by asserting grounds to

disallow "Borrower" Claims on the grounds that there is no such liability reflected on their books

and records[11] in their Twenty-Eighth Omnibus Objection.   On August 23, 2013, Debtors filed

their Twenty-Ninth Objection to Late-Filed Claims (Doc. 4891) and then, once again, on August

29, 2013, Debtors violated Bankruptcy Rule 3007(e) and seek to abuse the processes of this

court, by filing another Omnibus Objection to "Borrower" Claims on grounds that they show <u>no</u>

<u>liability for the claims on their books and records</u>, without any lawful authority for such an

---

of the claim because of the noncompliance."  Debtors' Omnibus Objections fail to support their
contention as required by BR 3007(f) (3) which requires the Debtors state the grounds of the objection to
***each claim and provide a cross-reference to the pages in the omnibus objection pertinent to the stated
grounds***.  Ms. Wilson was not provided with the objection so the objection was not cross-referenced.

[9]  Bankruptcy Rule 3007(e) does not provide for an Omnibus Objection on the grounds that the
"Liability is Not Reflected in Debtors' Books and Records" and the Motion to Disallow Claims on that
basis is without lawful authority.

[10]  See footnote 8, above.

[11]  See footnote 9, above.

objection,[12] by filing Debtors' Thirtieth Omnibus Objection to Claims (No Liability Borrower

Claims – Books and Records.)

10.   Caren Wilson received the attached Exhibit A on September 4, 2013.  Among other

fraudulent assertions contained in Exhibit A is the Debtors' apparent assertion on page one of

Exhibit A by the Debtors that they are entitled to the relief requested.  They state, "The Objection

requests that the Bankruptcy Court expunge and/or disallow one or more of your claims listed

above under PROPOSED CLAIM(S) TO BE DISALLOWED AND EXPUNGED on the ground

that the claim(s) is a liability not reflected in the Debtors' books and records. Any claim that the

Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will

not be entitled to any distribution on account thereof."

11.   Furthermore, Exhibit A did not provide Ms. Wilson with a copy of the Debtors

Objection, along with Notice of Hearing thereon.   They provided merely the Notice of Hearing

with deadlines for the filing of any response, requiring the Claimant to serve herself with the

Objection, with this language on page 5 of Exhibit A:

> If you wish to view the complete Objection, you can do so on the Bankruptcy
> Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the
> internet at www.nysb.uscourts.gov (a PACER login and password are required
> and can be obtained through the PACER Service Center at
> www.pacer.psc.uscourts.gov), or for free at http://www.kccllc.net/rescap. If you
> have any questions about this notice or the Objection, or if you would like to
> request a complete copy of the Objection at the Debtors' expense, please contact
> the Debtors' approved claims agent Kurtzman Carson Consultants, LLC at (888)
> 926-3479. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE
> BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

12.  The Debtors have wholly failed to comply with Bankruptcy Rule 3007(a) which

---

[12]  See footnote 9, above.

provides:

>   (a) Objections to Claims. An objection to the allowance of a claim shall be in
>   writing and filed. ***A copy of the objection with notice of the hearing thereon
>   shall be mailed or otherwise delivered to the claimant***, the debtor or debtor in
>   possession, and the trustee ***at least 30 days prior to the hearing***.

13.   Among other fraudulent assertions in Exhibit A is the statement that Ms. Wilson's

claim is unimpaired (Exhibit A, page 5, paragraph 2.)  Comparing pages 1 through 3 of Exhibit A

to the assertion on page 6, and without providing Ms. Wilson with the required copy of the

Debtors' Thirtieth Omnibus Objection to Borrower Claims on the grounds that they have no

liability on their books and records (for which there is no lawful authority) the confusion created

is obvious.  According to the Debtors' mailing to her, Ms. Wilson is (a) subject to having her

claim disallowed because Debtors' liability for her claim is not reflected in their books and

records (for which there is no lawful basis) or (b) she is not entitled to vote on the Debtors'

Chapter 11 Plan because her claim is unimpaired.   In order to ascertain the meaning of the first

three pages of Exhibit A, Ms. Wilson is instructed to obtain a copy of the Debtors' Thirtieth

Omnibus Objection herself or to contact the Debtors' agent at telephone, which could delay the

delivery of the Objection beyond the date for the response which Debtors' purport to be

authorized by law to require.   Debtors have no legal authority to require a response to an

Objection to a Proof of Claim, the grounds for which are not allowed by law.

14.   The Debtors' Notice of Hearing on the Thirtieth Omnibus Objection to  Claims (No

Liability Borrower Claims – Books and Records) was mailed to Ms. Wilson and purports to have

been mailed to dozens of other persons, is a fraudulent document transmitted by mail with the

intent to defraud them into believing that there are grounds to disallow their Proof of Claims,

when no such grounds exist in violation of 18 USC sec. 1341.   The Thirtieth Omnibus Objection

is simply another example of the use of mail to defraud persons identified as "Borrowers" by the

Debtors, who loaned no money whatsoever, but took notes and mortgages as collateral to be used

for re-hypothecation by a factor of no less than 15.[13]   Wire fraud is implicated in the scheme by

which individuals' claims are falsely claimed to be subject to disallowance for grounds not

recognized by lawful authority, because the Debtors have posted the Thirtieth Omnibus

Objection (as well as the 13th , 22nd, 23rd, 26th and 27th Omnibus Objections) on the internet (wire

fraud, in violation of 18 USC sec. 1343.)

15.    Caren Wilson executed a note and mortgage, believing that she was obtaining a

conventional mortgage loan for $236,000.00 at 6.75% interest which she would be able to pay

over a term of 30 years on December 13, 2006.   She secured the purported loan with a deed of

trust in favor of Homecomings Financial, Inc.  She obtained a second mortgage the approximate

amount of $40,000.00 in order to improve the subject real estate located at 211 W. Chandler

Street in Culpeper, Virginia 22701.    She improved the property by installing landscaping,

including drainage, a second bathroom, a deck and other improvements, along with purchasing

appliances, which are  her personal property, but which were confiscated and sold with the

subject real estate.   The value of the subject real estate at the time she completed the

improvements was approximately $350,000.00.

16.  Homecomings Financial, Inc. purported to originate the "loan" but the closing the

_____

[13]   The re-hypothecation factor could be infinite if the transactions occurred in the City of
London or other jurisdictions not subject to 140% Rule applied to such transactions within the United
States.

8

"loan" was conducted for the purpose of taking Ms. Wilson's note and deed of trust in order to

immediately sell the collateral she provided for the purported loan in a process known as

securitization.    Her note was endorsed "in blank."

17.  At some point in the process, the note or a copy of the note was endorsed by Judy

Faber, claiming to be "Vice President" of Residential Funding Company, LLC (RFC, LLC), who

never had any duties beyond that of a "Records Services Manager."  See Exhibit B, pages 2 and 3

at  page 4, lines 16-20 and page 5, lines 4-15 of the condensed Deposition Transcript of Judy

Faber taken on August 14, 2009 and compare to Exhibit C, Doc. 64-13 in the United States

District Court for the Northern District of Illinois in U.S. Bank, N.A. v. Wendy Cook: Deposition

of Judy Faber, taken on June 2, 2008, pages 10, 11 and 12 of Doc. 64-13 (pages 6 and 7 if the

Deposition Transcript not properly reproduced in electronic format) in which she states:

> 25 Q. By whom are you employed?
> Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 10 of 53 PageID #:355
> [6]
> 1 A. Residential Funding Company, LLC.
> 2 Q. For how long have you been employed there?
> 3 A. Eleven years.
> 4 Q. And what's your position there?
> 5 A. Director of Records Management, the Minnesota
> 6 site.
> 7 Q. For how long have you held that position?
> 8 A. Eleven years.
> 9 Q. What are your duties and responsibilities in
> 10 that position?
> 11 A. I manage the records for the Residential
> 12 Funding Corporation. Basically, the physical
> 13 paper and the images that are created from
> 14 the physical paper, fulfilling requests for
> 15 those and then managing the physical
> 16 documents.
> 17 Q. Now, when you said you're the Director of

18 Records Management for the Minnesota office?
19 A. Uh-huh.
20 Q. Are there other offices of Residential
Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 11 of 53 PageID #:356
21 Funding that maintain records that you are
22 not responsible for?
23 A. There are records services sites in Iowa and
24 in Pennsylvania. Those deal mostly with the
25 GMAC mortgage assets.
Case: 1:07-cv-01544 Document #: 64-13 Filed: 11/18/08 Page 12 of 53 PageID #:357
[7]

18.  Ms. Faber's position had not changed between June 2, 2008 and August 14, 2009,

but as of the August 14, 2009 Deposition, Ms. Faber was calling herself a "Vice President and a

Director of Residential Funding Corporation or Residential Funding Comany, LLC and GMAC

Mortgage Company, LLC."   A reasonable inference arises that between the dates of her

Deposition on June 2, 2008 and August 14, 2013, Residential Funding Company, LLC and

GMAC Mortgage, LLC decided that she should identify herself in the fictitious capacity of a

Vice President because her position as "Director of Records Management" did not conform to

the capacity in which her signature had appeared.  It is well known that courts impute a level of

official authority to purported officers of corporations and might be more inclined to question the

capacity of a records manager to endorse notes value in the hundreds of thousands of dollars to

[whomever] and [at an unknown time and date.]

19.   The securitization process involves the purported bundling of mortgage loans into

pools and the designation of tranches which are purportedly designed to assign risk factors , and

then purportedly issues securities to investors.   Mortgage insurance was the first line defense of

the investors in the securitization scheme and mortgage insurance claims effectively bankrupted

the monoline insurance companies when the securitization scheme began to unravel because

10

promises made to homeowners by mortgage brokers to refinance loans with adjustable interest

rates were not fulfilled and millions of mortgages were rendered unpayable by the deliberate

manipulation of the London Interbank Overnight Rate (LIBOR) on which the adjustable interest

rates were based.  Credit default swaps between counterparties derived from the underlying

collateral consisting of the notes and mortgages yielded huge profits to insiders who knew that

the mortgages had been designed to fail and that interest rates were manipulated to cause the

loans to fail.  The engineered collapse of the residential mortgage market in the United States

resulted in the creation of the Troubled Asset Relief Program (TARP) at 12 USC sec. 5212, et

seq., by which the counterparties to the bad bets that the homeowners would not default (those

who were not in on the scheme to cause the defaults or chose to take the wrong side of some bets

for purposes of deceiving innocent investors) were "bailed out."

      20.    Ally Financial, Inc. (AFI), Debtors' parent company, withdrew its financial support

to the Debtors in order to retain 12 billion dollars in TARP funds and to attempt to force the

homeowners and the investors in (empty) Real Estate Mortgage Investment Conduits (REMIC)

Trusts, also known as securitization trusts, to take pennies on the dollar for their losses in the

securitization scheme.  Those who the Debtors define as "Borrowers" were never informed that

their mortgage loans were intended to be collateral for unregulated securities to be sold to

undisclosed third party investors and the third party investors are just beginning to discover that

the fraud committed upon them was not just that the loans which were the basis for the collateral

for the securities they purchased were not properly originated or underwritten, but had never been

conveyed to the trusts in which they had invested.  (See Exhibit D: Phoenix Light SF Limited, et

al V. JPMorgan Chase & Co., et al., filed on August 20, 2013 in the Supreme Court of New York

for the County of New York attached hereto.) In the most amazing fraud ever attempted to be

perpetrated in the bankruptcy courts of the United States, AFI seeks a third party release as

nondebtor parent of RESCAP and the subsidiaries it has intentionally bankrupted, so that it can

retain 12 billion dollars of a total of 17 billion dollars in TARP funds, which it obtained from

Congress under false pretenses of bailing out its automobile manufacturing subsidiary, General

Motors Corporation.  General Motors Corporation, which received only 5 billion dollars of the

TARP funds, by holding the nation hostage to the threat of loss of thousands of jobs in the

automotive sector, while 12 billion dollars was taken to stabilize the residential lending sector of

the company, the majority of which funds AFI seeks to retain by obtaining a third party release in

these proceedings in exchange for the contribution of 2.1 billion dollars to Debtors' estate

purportedly for claims which the Debtors have against AFI.   Debtors' Disclosure Statement,

filed on July 4, 2013 and the Amended Disclosure Statement, filed on August 16, 2013,  without

adequate notice to the objectors so that they could object to the Amended Disclosure Statement

in advance of the hearing precipitously held thereon on August 21, 2013, and  the Chapter 11

Plan filed on July 3, 2013 provides no discussion of the Debtors' business operation pre-petition

and post-petition or treatment of claims such arising from the origination, securitization,

foreclosure, or liquidation of illegally foreclosed  real estate interests and fails to identify the real

estate assets taken and sold pre-petition or taken post-petition on forged documents, under the

purported authority of this Court's Supplemental Servicing Order entered on July 13, 2013 [Doc.

774.]

21.   The securitization process was used to create various forms of derivatives from the collateral fraudulently taken by loan originations and sold to purported depositors and resold to the trusts, without ever delivering the collateral.   Derivatives which purportedly hedge against loss in the event of nonpayment of the mortgage debts ranged from credit default swaps to synthetic derivatives and expanded the credit risk exponentially, but created an enormous opportunity for profit in the process of sale and re-sale of mortgage loans.   Debtors have not returned a single note to its maker and are believed to have conspired with the purported trustees of the empty REMIC Trusts to sell and resell the notes as a form of counterfeit currency in overseas market.   The record shows that the REMIC Trusts operated under the call letters RASC, RALI,[14] RAAC, RFMSI, RFCS, SASC, SACO, etc. had, as Trustees, many of the same financial institutions which sit on the Committee of Unsecured Creditors and/or have claims against the Debtors.   The records also show that the Debtors are the servicers of some of the Maiden Lane Trusts, which were created using the collateral taken in exchange for TARP funds.   None of the collateral in any of the trusts was ever identified in these proceedings.   Debtors have not identified the properties that they have confiscated, liquidated and are still seeking to liquidate as originators, servicers, sellers or depositors in the securitization process and never identified which loans they actually owned in these proceedings.

---

[14]  Ms. Wilson's collateral was traced to a RALI Trust which reported Homecoming Financial, Inc. as the "loan originator," Residential Funding Company, LLC as the seller/sponsor of the securities offering, Residential Accredit Loans, Inc. was listed as the Depositor and Ms. Wilson will prove that her note and deed of trust were never delivered to the RALI Series 2007-QS1 Trust of which Deutsche Bank Trust Company Americas is the purported trustee. Deutshe Bank Trust Company Americas is  a wholly owned subsidiary of Taunus Corporation,  a wholly owned subsidiary of Deutsche Bank, AG (hereinafter "Deutsche Bank" as to all appellations.)

22.. In the securitization process, face value of the mortgage loan is multiplied least 15 times the face value and Ms. Wilson has chosen to use the factor of to calculate the loss of profits to the homeowners from the sale of their collateral which is the lowest factor of multiplication for which the expert witness will testify.

23. Debtors claim they are entitled to summary proceedings disallowing homeowners' claims for billions of dollars in injuries caused by the Debtors and their affiliates, without affording the homeowners their rights under the First[15] and Fifth[16] Amendments to the <u>United States Constitution</u> to contested proceedings required by Bankruptcy Rules (BR) 3007 and 9014. The Committee Notes to BR 9014 provide:

> Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. For example, ***the filing of an objection to a proof of claim***, to a claim of exemption, ***or to a disclosure statement creates a dispute which is a contested matter***. . . (Emphasis added.)

24. Thousands of homeowner claims have been disallowed and are pending disallowance under summary proceedings which are not in compliance with BR 9014( c), (d) and (e), which provide:

> (c) Application of Part VII Rules. Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before

---

[15] Right to petition courts for redress of grievances

[16] Right to procedural and substantive due process

scheduling conference/discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. ***The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order***.

(d) Testimony of Witnesses. ***Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.***

(e) Attendance of Witnesses. ***The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.***

23.   Upon consultation with counsel, Ms. Wilson has amended her Proof of Claim 4754, filed with the private database operated by KCC, LLC and Proof of Claim 4754 is no longer pending before the Court.  It has been replaced with Proof of Claim 18, which amends the previously filed claim, except that it incorporates the documentation attached to Proof of Claim 4574 by reference thereto.

24.  Proof of Claim 4574  to which Debtors have objected has been amended, and is now moot.  Debtors have not objected to Proof of Claim 18 filed with this Court.

**WHEREFORE**, the Debtors' Objection to Proof of Claim 4574 recorded by KCC, LLC is moot and Ms. Wilson demands the contest proceedings to which she is entitled and reserves her rights to an evidentiary hearing on any Objection to Amended Proof of Claim 18 which may be filed in these proceedings.

Dated  at Madison, Wisconsin this 26th day of September, 2013.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
ACCESS LEGAL SERVICES
Counsel for Caren Wilson
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
(612) 333-4144
FAX (608) 497-1026
accesslegalservices@gmail.com

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF ATTORNEY WENDY ALISON NORA

Wendy Alison Nora declares under penalty of perjury, pursuant to 28 USC sec. 1746, that the Exhibits attached hereto (Exhibits A, B, C, and D) are true and correct copies of the documents they purport to be; that the factual statements based on the record and documents in these proceedings are true and correct, according to the best of her knowledge information and belief and that she relied upon the factual statements made to her by Caren Wilson as to her investment in the subject real estate, along with her statements as to the receipt of Exhibit A and the statements of her expert witness, Mohammad Raja, pertaining to her Ms. Wilson's individual collateral transaction, and the documents prepared by Mr. Raja and Ms. Wilson.

*/s/ Wendy Alison Nora*
_____
Wendy Alison Nora

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY OF CAREN WILSON

Caren Wilson declares under penalty of perjury, pursuant to 28 USC sec. 1746, that the facts of which she has personal knowledge are true and correct as stated in the foregoing Response and that her Proof of Claim 4574 was prepared in reliance upon expert information received from her expert witness, Mohammad Raja, and her Amended Claim 18 was prepared after consultation between her counsel, Attorney Nora, and her expert witness, Mr. Raja.

*/s/ Caren Wilson*
_____
Caren Wilson

16

## UNSWORN DECLARATION OF SERVICE

The above-captioned document filed by CM/ECF on September XX,  2013 and was thereby served all parties and their counsel capable of service by CM/ECF in these proceedings.

*/s/ Wendy Alison Nora*
Wendy Alison Nora