MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
Erica J. Richards

Alexandra Steinberg Barrage
2000 Pennsylvania Avenue, NW
Washington, DC 20006-1888
Telephone: (202) 887-1500

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ——————————————————— ) | | |
| In re: ) | Case No. 12-12020 (MG) | |
| ) | | |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., ) | Chapter 11 | |
| ) | | |
| Debtors. ) | Jointly Administered | |
| ------------------------------------------------------------------------- ) | | |

**DEBTORS' OBJECTION TO MOTION OF
<u>SIMONA ROBINSON FOR RELIEF FROM STAY</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ....................................................................................................2

    A.    Chapter 11 Cases ...............................................................................2

    B.    Events Giving Rise To The Motion.....................................................3

    (i)    GMACM's Servicing Of Robinson's Loan........................................3

    (ii)    The Mortgage Litigation....................................................................5

OBJECTION ........................................................................................................8

    A.    Applicable Authority .........................................................................8

    B.    The Motion Should Be Denied...........................................................9

    (i)    The Bankruptcy Court Has Jurisdiction Over Robinson's Attempt To Assert Successor Liability Against Ocwen .........................................10

    (ii)    Robinson Failed To File A Proof Of Claim ......................................10

    (iii)    Ocwen Is Not Liable For GMACM's Pre-Sale Conduct Under The Asset Purchase Agreement .................................................................11

    (iv)    Bankruptcy Code Section 363(o) Does Not Impose Independent Successor Liability On Ocwen ...........................................................12

    (v)    Ocwen Is Not Liable For GMACM's Pre-Sale Conduct Under Applicable Non-Bankruptcy Law ........................................................15

    (vi)    The Proposed Relief Would Contravene Fundamental Bankruptcy Principles At The Expense Of Similarly Situated Creditors ...............15

CONCLUSION ....................................................................................................17

**TABLE OF CONTENTS**
**(continued)**

EXHIBITS:

Exhibit 1:  Delehey Declaration

     Exhibit A:  Foreclosure Action Docket Report
     Exhibit B:  Robinson Bankruptcy Case Docket Report
     Exhibit C:  Chapter 13 Plan
     Exhibit D:  Order Confirming Chapter 13 Plan
     Exhibit E:  Chapter 13 Discharge Order
     Exhibit F:  Complaint
     Exhibit G:  Amended Complaint
     Exhibit H:  Mortgage Litigation Docket Report
     Exhibit I:  Order Staying Claims Against GMACM
     Exhibit J:  July 25, 2012 Letter
     Exhibit K:  Order Staying Claims Against PHS
     Exhibit L:  Substitution Motion
     Exhibit M:  GMACM Notice Of Effect Of Automatic Stay
     Exhibit N:  PHS Opposition to Substitution Motion
     Exhibit O:  Reply In Support Of Substitution Motion
     Exhibit P:  Order Denying Substitution Motion
     Exhibit Q:  Motion For Reconsideration
     Exhibit R:  Order Denying Motion For Reconsideration

Exhibit 2:  Excerpts of Affidavit of Service

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Caminetti v. United States,
    242 U.S. 470 (1917) ................................................................................................ 13

Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow),
    126 F.3d 43 (2d Cir. 1997) ...................................................................................... 8

Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),
    536 F.2d 950 (1st Cir. 1976) .................................................................................. 16

Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.),
    394 B.R. 765 (Bankr. D. Del. 2008) ................................................................. 13, 16

In re Circuit City Stores, Inc.,
    447 B.R. 475 (Bankr. E.D. Va. 2009) .................................................................... 16

In re Leibowitz,
    147 B.R. 341 (Bankr. S.D.N.Y. 1992) ..................................................................... 9

In re Motors Liquidation Co.,
    No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010) ..................... 9

In re United Merchs. & Mfrs., Inc.,
    597 F.2d 348 (2d Cir. 1979) .................................................................................. 16

Joint Indus. Bd. of Elec. Indus. v. United States,
    391 U.S. 224 (1968) ............................................................................................... 16

Kuehner v. Irving Trust Co.,
    299 U.S. 445 (1937) ............................................................................................... 16

Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.,
    474 U.S. 494 (1986) ................................................................................................. 8

New York State Pesticide Coalition, Inc. v. Jorling,
    874 F.2d 115 (2d Cir. 1989) .................................................................................. 13

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) .................................................................................... 8

Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),
    907 F.2d 1280 (2d Cir. 1990) .................................................................................. 8

**TABLE OF AUTHORITIES**
(continued)

Page

Teachers Ins. & Annuity Ass'n of Am. v. Butler,
  803 F.2d 61 (2d Cir. 1986) ..................................................................................8

Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc.,
  789 F.2d 98 (2d Cir. 1986) ................................................................................16

United States v. Ron Pair Enters., Inc.,
  489 U.S. 235 (1989) ...........................................................................................13

STATUTES

11 U.S.C. § 362(a)(1) ...............................................................................................8

11 U.S.C. § 362(d)(1) ...............................................................................................8

11 U.S.C. § 363(o)...................................................................................................12

OTHER AUTHORITIES

John C. Anderson, Highlights of the Bankruptcy Abuse Prevention and Consumer
  Protection Act of 2005 - Part I - Consumer Cases, 33 S.U. L. REV. 1 (2005) ......................14

H.R. REP. NO. 109-31, pt. 1 (2005) ........................................................................13

Residential Capital, LLC ("**ResCap**") and its affiliated debtors and debtors in possession

in the above-captioned Chapter 11 cases (collectively, the "**Debtors**") hereby submit this

objection (the "**Objection**") to the *Motion of Simona Robinson for Relief From Stay,* filed on

September 4, 2013 [Docket No. 4948] (the "**Motion**").  In support hereof, the Debtors submit the

Declaration of Lauren Graham Delehey, dated October 2, 2013 (the "**Delehey Decl.**"), attached

hereto as **Exhibit 1**, and respectfully represent:

## PRELIMINARY STATEMENT

1.      Simona Robinson ("**Robinson**") is a plaintiff in an action that is currently

stayed in the United States District Court for the Eastern District of Pennsylvania (the "**District

Court**"), in which she seeks monetary damages from Debtor GMAC Mortgage, LLC

("**GMACM**") for alleged pre-petition servicing misconduct by GMACM.  The Motion requests

a determination that, notwithstanding the clear provisions of the Sale Order and Asset Purchase

Agreement to the contrary (each defined below), Robinson can instead assert those claims

against Ocwen Loan Servicing, LLC ("**Ocwen**"), as the successor servicer of her mortgage loan.

2.      Robinson and her counsel both had notice of the Bar Date (defined

below).  Months before the Bar Date, Robinson's counsel notified the District Court of her intent

to file a proof of claim on account of her claims against GMACM.  For her own strategic

reasons, Robinson failed to file any proof of claim.  By the Motion, she now seeks to remedy that

error by arguing that Bankruptcy Code section 363(o) imposes successor liability on Ocwen.

But no such successor liability exists under the Bankruptcy Code or applicable non-bankruptcy

law.  Otherwise, Robinson would be allowed to convert her pre-petition claims against

GMACM—which would have been entitled to general unsecured priority status to the extent

allowed—into post-petition administrative claims entitled to payment in full.

1

3.     The Motion skirts Robinson's decision not to file any proof of claim in this case, and is instead premised on a misinterpretation of section 363(o), which is inapplicable here.  It is also an inappropriate attempt to circumvent the claims process, in contravention of Bankruptcy Code principles requiring the equal treatment of similarly situated creditors. Accordingly, the Motion should be denied.

## **BACKGROUND**

### A.     **Chapter 11 Cases**

4.     On May 14, 2012, each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  No trustee has been appointed in these chapter 11 cases.

5.     On May 16, 2012, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed a nine member official committee of unsecured creditors (the "**Creditors' Committee**").

6.     On July 13, 2012, this Court entered the *Final Supplemental Order Under Bankruptcy Code Sections 105(a), 362, 363, 502, 1107(a), and 1108 and Bankruptcy Rule 9019 (I) Authorizing the Debtors to Continue Implementing Loss Mitigation Programs; (II) Approving Procedures for Compromise and Settlement of Certain Claims, Litigations and Causes of Action; (III) Granting Limited Stay Relief to Permit Foreclosure and Eviction Proceedings, Borrower Bankruptcy Cases, and Title Disputes to Proceed; and (IV) Authorizing and Directing the*

2

*Debtors to Pay Securitization Trustee Fees and Expenses* [Docket No. 774] (the "**Supplemental Servicing Order**").

7.     On August 29, 2012, this Court entered its *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1309] (the "**Bar Date Order**"), establishing November 9, 2012 as the general claims bar date (the "**Bar Date**").  This Court subsequently entered an *Order Extending Deadline for Filing Proof of Claim* [Docket No. 2093], extending the Bar Date to November 16, 2012.

8.     In accordance with the Bar Date Order, Robinson was served with the notice of the Bar Date, both individually and through her counsel.  See Excerpts of Affidavit of Service [Docket No. 1412], attached hereto **Exhibit 2**.

9.     A hearing on the Debtors' motion to approve the sale of the Debtors' mortgage loan servicing platform to Ocwen (the "**Ocwen Sale**") pursuant to the terms of that certain asset purchase agreement dated as of November 2, 2012 (the "**Asset Purchase Agreement**") was held on November 19, 2012 and November 20, 2012, and on November 21, 2012, this Court entered an order (the "**Sale Order**")[1] approving the Ocwen Sale.

10.    On February 15, 2013, the Ocwen Sale closed.

**B.     Events Giving Rise To The Motion**

      **(i)     GMACM's Servicing Of Robinson's Loan**

11.    On May 28, 1999, Robinson obtained a loan (the "**Loan**") from First Franklin Financial Corporation in the amount of $61,200.00 secured by a mortgage against the

---

[1]     See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "**Sale Order**").

property located at 3029 South 70th Street, Philadelphia, Pennsylvania 19151 (the "**Property**").

(Delehey Decl., ¶ 4).

12.     GMACM became the servicer for the Loan in 2003, and remained servicer

until February 15, 2013, when the servicing rights with respect to the Loan were transferred to

Ocwen upon the closing of the Ocwen Sale.  (Delehey Decl., ¶ 5).

13.     As a result of Robinson's continuing default under the Loan, on or about

December 31, 2003, GMACM commenced foreclosure proceedings against Robinson in the

Pennsylvania Court of Common Pleas for Philadelphia County (the "**Pennsylvania State**

**Court**"), Case No. 031204166 (the "**Foreclosure Action**").  (Delehey Decl., ¶ 6).

14.     On January 6, 2005, the Pennsylvania State Court entered a default

judgment against Robinson in the Foreclosure Action (the "**Default Judgment**").  (Delehey

Decl., ¶ 7).

15.     On September 2, 2005, Robinson filed a voluntary petition for relief under

Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern

District of Pennsylvania (the "**Pennsylvania Bankruptcy Court**"), Case No. 05-31800 (the

"**Robinson Bankruptcy Case**").  (Delehey Decl., ¶ 8).

16.     On November 9, 2005, the writ of execution on the Default Judgment was

returned with a notice of Robinson's bankruptcy filing.  (Delehey Decl., ¶ 9).  Execution on the

Default Judgment in the Foreclosure Action was stayed due to the commencement of the

Robinson Bankruptcy Case.  Id.

17.     On January 20, 2006, Robinson submitted her First Modified Plan and

Amended Plan Summary to the Bankruptcy Court.  (Delehey Decl., ¶ 10; Chapter 13 Plan,

annexed to Delehey Decl. as Exhibit C).

18.    On March 9, 2006, the Honorable Jean K. FitzSimon entered an order

confirming Robinson's Chapter 13 Plan (the "**Chapter 13 Plan**").  (Delehey Decl., ¶ 11).  The

Chapter 13 Plan noted arrears to GMACM in the amount of $11,721.54, and required Robinson

to make monthly Loan payments to GMACM.  See Chapter 13 Plan.

19.    On July 18, 2011, the Pennsylvania Bankruptcy Court entered an order

granting Robinson a discharge.  (Delehey Decl., ¶ 12).

20.    On February 16, 2012, the Default Judgment was vacated by the

Pennsylvania State Court and an order discontinuing the Foreclosure Action was entered.

(Delehey Decl., ¶ 13).

21.    Ocwen has informed the Debtors that it discontinued foreclosure

proceedings against Robinson, and, as of August 1, 2013, the last Loan payment Robinson

remitted was for August 2010.  (Delehey Decl., ¶ 14).

**(ii)    The Mortgage Litigation**

22.    On January 12, 2012, Robinson filed a Complaint (the "**Complaint**") in

the District Court commencing an action, Case No. 5:12-cv-00151 (the "**Mortgage Litigation**")

against GMACM and Phelen Hallinan & Schmeig, LLP ("**PHS**"), GMACM's counsel in the

Robinson Bankruptcy Case, arising out of GMACM's allegedly fraudulent collection efforts

following Robinson's bankruptcy discharge.  See Delehey Decl., ¶ 15; Complaint at ¶¶ 35-47,

annexed to Delehey Decl. as Exhibit F.  The Complaint asserted claims for: (I) violations of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, et seq. ("**FDCPA**"); (II) violations of the

Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, et seq. ("**RESPA**"); (III) abuse of

process; and (IV) an accounting of the Loan.  Complaint at ¶¶ 48-65.  In connection with those

claims, Robinson sought actual damages, statutory damages, punitive damages, and costs and

attorneys' fees.  Id. at p. 10-11.

23.     On February 22, 2012, Robinson filed a First Amended Complaint (the "**Amended Complaint**") in the Mortgage Litigation, asserting the same claims against GMACM and seeking the same relief as that set forth in the initial Complaint.  See Delehey Decl., ¶ 16; Amended Complaint, annexed to Delehey Decl. as Exhibit G.

24.     Both GMACM and PHS filed motions to dismiss the Mortgage Litigation, which were opposed by Robinson.  (Delehey Decl., ¶ 17).

25.     On May 22, 2012, GMACM filed a Notice of Bankruptcy and Effect of Automatic Stay with the District Court.  (Delehey Decl., ¶ 18).

26.     On June 27, 2012, the District Court entered an order staying the Mortgage Litigation as against GMACM pending resolution of the Debtors' Chapter 11 Cases or until the stay is otherwise lifted as to Robinson's claims by this Court.  (Delehey Decl., ¶ 19).

27.     On July 25, 2012, GMACM filed an Amended Notice of Bankruptcy and Effect of Automatic Stay with the District Court, which attached a copy of the Supplemental Servicing Order.  (Delehey Decl., ¶ 20).

28.     On that same date, Robinson submitted a letter (the "**July 25, 2012 Letter**") to the District Court advising that she intended to file a motion for relief in GMACM's Chapter 11 Cases in order to determine a liquidated value of her claims in the Mortgage Litigation and file a Proof of Claim for that amount against the Debtors.  See Delehey Decl., ¶ 21; July 25, 2012 Letter, annexed to Delehey Decl. as Exhibit J.

29.     On August 9, 2012, the District Court entered an order (a) extending the stay of the Mortgage Litigation to Robinson's claims against PHS and (b) placing the matter on administrative suspense pending resolution of the Debtors' Chapter 11 Cases or until the stay is otherwise lifted as to Robinson's claims by this Court.  (Delehey Decl., ¶ 22).

30.    On January 10, 2013, Robinson filed a motion (the "**Substitution**

**Motion**") with the District Court seeking to lift the stay and substitute Ocwen as the defendant in

the litigation.  (Delehey Decl., ¶ 23.)  The Substitution Motion, <u>which was filed two months after</u>

<u>the Bar Date</u>, asserted:

> Rather than file a proof of claim for assets that could not nearly, if
> at all, satisfy her claims in this action, plaintiff now seeks by this
> motion to remove this matter from suspense for purposes of
> continuing to prosecute its claims against PHS and substituting and
> asserting its claims against the new owner of the servicing rights to
> plaintiff's mortgage, Ocwen Loan Servicing LLC.

<u>See</u> Substitution Motion, annexed to Delehey Decl. as Exhibit L.

31.    On February 20, 2013, GMACM filed a notice with the District Court

reminding the parties that the automatic stay remained in effect as to GMACM and, to the extent

the Substitution Motion required a response from GMACM, it violated the automatic stay.

(Delehey Decl., ¶ 24).

32.    On February 27, 2013, PHS filed an opposition to the Substitution Motion,

asserting that it should be denied because the issue of Ocwen's successor liability is a matter to

be decided by this Court.  (Delehey Decl., ¶ 25).

33.    On February 28, 2013, Robinson filed a reply in support of the

Substitution Motion. (Delehey Decl., ¶ 26).

34.    On February 28, 2013, the District Court entered an order denying the

Substitution Motion, upon a determination that this Court had not determined whether

Robinson's claims are properly asserted against Ocwen or whether GMACM has retained

liability.  (Delehey Decl., ¶ 27).

7

35.    On March 12, 2013, Robinson filed a motion for reconsideration of the order denying the Substitution Motion with the District Court, which was denied on March 27, 2013.  (Delehey Decl., ¶ 28).

36.    On September 4, 2013, Robinson filed the Motion in this Court.  [Docket No. 4948].

## OBJECTION

### A.    Applicable Authority

37.    The automatic stay imposed by section 362(a) of the Bankruptcy Code promotes the reorganization process by providing the debtor with "a breathing spell from [its] creditors."[2] Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 64-65 (2d Cir. 1986) (holding that the automatic stay applied to an appeal that otherwise would "distract . . . debtor's attention from its primary goal of reorganizing") (citation omitted).  It affords "one of the fundamental debtor protections provided by the bankruptcy laws."  Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (citation and internal quotation marks omitted). Likewise, it allows the debtor to manage and, where appropriate, centralize all creditor actions against property of the estate, "so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990).

---

[2]    Section 362(a)(1) of the Bankruptcy Code provides, in pertinent part, that the filing of a bankruptcy petition:

operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

ny-1108839

38.    Section 362(d)(1) of the Bankruptcy Code provides that a court may grant relief from the automatic stay for "cause."  See 11 U.S.C. § 362(d)(1).  The moving party bears the initial burden to demonstrate that good cause exists for lifting the stay.[3]  The movant's burden is especially heavy if it is an unsecured creditor.  "The general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."[4]

### B.    The Motion Should Be Denied

39.    Robinson is seeking a determination that, notwithstanding the imposition of the automatic stay, she may prosecute pre-petition monetary claims[5] arising from alleged pre-petition misconduct by GMACM in the District Court.  Robinson does not argue that cause exists to lift the stay so that she can continue the Mortgage Litigation—a standard she plainly cannot meet.  Instead, she asserts that Ocwen, to whom the automatic stay does not apply, is liable for those claims.  That assertion is contrary to the unambiguous terms of the Asset Purchase Agreement and Sale Order, and has no legal basis under the Bankruptcy Code or under applicable non-bankruptcy law.  Accordingly, the Motion should be denied.

---

[3]    See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1285  (2d Cir. 1990).  See also  Capital Commc'ns Fed. Credit Union v. Boodrow (In re Boodrow), 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.") (quotation omitted).

[4]    In re Leibowitz, 147 B.R. 341, 345 (Bankr. S.D.N.Y. 1992); see also In re Motors Liquidation Co., No. 10 Civ. 36 (RJH), 2010 WL 4966018 (S.D.N.Y. Nov. 17, 2010).

[5]    Pursuant to the Supplemental Servicing Order, this Court granted limited stay relief to permit borrowers to assert claims and counterclaims to the extent they constitute defenses to a pending foreclosure or eviction proceeding.  See Supplemental Servicing Order, ¶ 14.  A copy of the Supplemental Servicing Order was provided to Robinson and filed with the District Court as an attachment to the Amended Notice of Bankruptcy.  Thus, to the extent the Mortgage Litigation asserted claims as defenses to the foreclosure of Robinson's Loan, this Court already granted relief from the stay to allow such claims to go forward.  The claims set forth in the Mortgage Litigation are not asserted as defenses, and therefore do not fall within the scope of the Supplemental Servicing Order, and Robinson has never contended otherwise.

(i)    **The Bankruptcy Court Has Jurisdiction Over Robinson's Attempt To Assert Successor Liability Against Ocwen**

40.    Robinson contends that "any successor liability by Ocwen will not impact the Debtor's estate or these bankruptcy proceedings" and therefore, a determination regarding such liability is not within the jurisdiction of this Court.  Motion at ¶ 13.  The relief sought by Robinson requires an interpretation of the Sale Order and Asset Purchase Agreement, over which this Court retains jurisdiction.  See Sale Order at ¶ 25 ("This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, . . . including, but not limited to, retaining jurisdiction to . . . (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests against the Sellers or the Purchased Assets of any kind or nature whatsoever . . . .").  Accordingly, this Court has jurisdiction to determine whether the claims against GMACM in the Mortgage Litigation may instead be asserted against Ocwen.

(ii)    **Robinson Failed To File A Proof Of Claim**

41.    Robinson was timely served with notice of the Bar Date, and her counsel expressed an intention to file a proof of claim months before the expiration of the Bar Date.  See Excerpts of Affidavits of Service [Docket No. 1412], attached hereto **Exhibit 2**.  See also July 25, 2012 Letter:

> Plaintiff intends to file a motion for relief in GMAC's chapter 11 bankruptcy in order to determine a liquidated value of her claims in this litigation and then file a Proof of Claim for said amount in that bankruptcy.

Robinson failed to file a proof of claim, a failure that was apparently intentional and strategic. Robinson contends that she did not file a proof of claim against GMACM because "the Bankruptcy Code directs her instead to Ocwen" as the purchaser of the rights to service her mortgage.  See Motion at ¶ 13.  However, the deadline to file a proof of claim passed before the

hearing to approve the Ocwen Sale was even held and Sale Order was entered, and several

months before the Ocwen Sale closed.

42.    Having not filed a proof of claim prior to the claims bar date (or at all),

Robinson is "forever barred, estopped and enjoined" from asserting any prepetition claims

against the Debtors.  Bar Date Order, ¶ 11.  Accordingly, granting Robinson relief from the

automatic stay to pursue her claims against GMACM in the Mortgage Action would be futile,

because she would not be entitled to assert against the Debtors any money judgment arising from

the Mortgage Action.

### (iii)    Ocwen Is Not Liable For GMACM's Pre-Sale Conduct Under The Asset Purchase Agreement

43.    Robinson argues that she may assert claims against Ocwen for GMACM's

pre-sale conduct because Ocwen purchased the servicing rights relating to Robinson's mortgage

loan.  Robinson therefore seeks to avoid the consequences of her failure to file a proof of claim,

and to elevate what would have been, in the best case, a general unsecured claim (subject to pro

rata treatment), to one payable in full by Ocwen.  Under the express terms of the Asset Purchase

Agreement and the Sale Order, however, Ocwen did not assume such liability.  See Sale Order,

¶ 23 ("Neither the Purchaser, nor any of its successors or assigns, or any of their respective

affiliates shall have any liability for any Interest[6] that arose or occurred prior to the Closing, or

---

[6]    "**Interests**" is broadly defined to include, collectively, all Claims, Liens, encumbrances, or other interests (including without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code and any rights or claims based on any successor or transferee liability) other than the Assumed Liabilities and the Permitted Liens.  Sale Order at p. 2.  In turn, "**Claims**" is defined to mean "any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, known or unknown," and "**Liens**" is defined to mean "any lien, charge, claim, pledge, deed of trust, right of first refusal, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, option, proxy, hypothecation, voting trust agreement, transfer restriction, easement, servitude, encroachment, or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction)."  Id.

otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the

Closing."); Asset Purchase Agreement at Section 2.8 ("Sellers shall retain and be responsible for

all Retained Liabilities and Purchaser shall not have any obligation of any nature or kind with

respect thereto.").  Similarly, Section 1.1 of the Asset Purchase Agreement provides that

"Retained Liabilities" of the Debtors are "any and all Liabilities of . . . Seller . . . arising under,

in connection with or otherwise related to (a) any action, . . .  <u>including any Claim or defense that

is not discharged in the Bankruptcy Case, as a result of the operation of Section 363(o) of the

Bankruptcy Code</u> . . . ." (emphasis added).  Accordingly, Ocwen is not contractually liable for

Robinson's claims in the Mortgage Litigation.

> **(iv)    Bankruptcy Code Section 363(o) Does Not Impose Independent
> Successor Liability On Ocwen**

44.    Robinson argues that the clear language of the Sale Order and Asset

Purchase Agreement is unenforceable under Bankruptcy Code section 363(o).  Robinson

misinterprets the effect of that provision.

45.    Section 363(o), which was added to the Bankruptcy Code in 2005 as part

of the Bankruptcy Abuse Prevention And Consumer Protection Act ("**BAPCPA**"), provides:

> Notwithstanding subsection (f) [specifying circumstances in which
> estate property may be sold free and clear of third party interests],
> if a person purchases any interest in a consumer credit transaction
> that is subject to the Truth in Lending Act or any interest in a
> consumer credit contract (as defined in section 433.1 of title 16 of
> the Code of Federal Regulations (January 1, 2004), as amended
> from time to time), and if such interest is purchased through a sale
> under this section, then **<u>such person</u>** shall remain subject to all
> claims and defenses that are related to such consumer credit
> transaction or such consumer credit contract, <u>to the same extent as
> **such person** would be subject to such claims and defenses of the
> consumer had such interest been purchased at a sale not under this
> section.</u>

11 U.S.C. § 363(o) (emphasis added).  Stated differently, section 363(o) provides that Ocwen, as

the buyer of mortgage servicing rights, remains subject to all of the claims and defenses that the

consumer would have had against Ocwen if the interest had been purchased outside of

bankruptcy.  Nothing in this provision or elsewhere in the Bankruptcy Code imposes new or

additional liability on a purchaser of assets where none exists under non-bankruptcy law.  Nor

does this provision suggest that consumers who fail to file a proof of claim against a debtor get a

second bite at the apple by holding purchasers of estate assets liable for those claims.

      46.    The text of the statute is unambiguous and must be applied as written.

See, e.g., United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (where the meaning

of a statue is clear on its face, "the sole function of the courts is to enforce it according to its

terms." (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)); New York State

Pesticide Coalition, Inc. v. Jorling, 874 F.2d 115, 118 (2d Cir. 1989) (same).  Although this

Court does not need to turn to legislative history to interpret this provision (which, like the case

law regarding this provision, is sparse), Robinson's interpretation is also at odds with the

legislative intent underlying BAPCPA.  As its title suggests, the act has two key goals:  to protect

the integrity and fairness of the bankruptcy system while protecting consumers from perceived

abuses.  H.R. REP. NO. 109-31, pt. 1, at 2-3, 10-18 (2005).

      47.    Although the legislative record is silent regarding the purpose of section

363(o), at least one other court, faced with interpreting another BAPCPA amendment with

similar lack of Congressional guidance, has taken such silence to mean that the language at issue

should not be applied in a way that would significantly alter creditor rights as they existed prior

to the enactment of BAPCPA.  See Henderson v. Powermate Holding Corp. (In re Powermate

Holding Corp.), 394 B.R. 765, 777-78 (Bankr. D. Del. 2008) (interpreting Bankruptcy Code

13

section 503(b)(1)(A)(ii) and stating "if Congress intended for such a monumental shift in the administration of estates under bankruptcy law, there would be significant legislative history. Instead the record is nearly silent.  Such evidence of Congressional intent, or lack thereof, supports this Court's interpretation of the Amendment.").

48.      The rationale set forth in <u>Powermate</u> applies with equal force here, and suggests that Bankruptcy Code section 363(o) was intended to ensure that the protections against predatory lending practices available to consumers under the Truth In Lending Act would not be adversely impacted by a sale of rights related to their credit transaction simply because the sale was conducted in connection with a bankruptcy case.  <u>See</u> John C. Anderson, *Highlights of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 - Part I - Consumer Cases*, 33 S.U. L. REV. 1, 18 (2005) ("Section 363(o) is added to the Bankruptcy Code to prevent any defenses or claims held by a consumer debtor from being cutoff through the sale of a consumer credit contract.").  Section 363(o) was <u>not</u> intended to have the broader effect of making a purchaser of consumer credit transactions liable for claims properly asserted against the seller, where no such successor liability is required outside of bankruptcy.  Nor was it intended to subvert the bankruptcy claims process, by allowing consumers to hold third parties liable for estate obligations. The purpose of section 363(o) is to preserve consumer rights, not expand them.

49.      The policies underlying section 363(o) are not implicated here.  To the extent denying the Motion harms Robinson because it leaves her without a claim, that harm stems from her counsel's decision not to file a proof of claim against GMACM, the party against whom those claims lie, despite having notice of the Bar Date.  Robinson has not been harmed as a result of the Ocwen Sale, which is what section 363(o) is designed to prevent.

### (v)    Ocwen Is Not Liable For GMACM's Pre-Sale Conduct Under Applicable Non-Bankruptcy Law

50.    As set forth above, Bankruptcy Code section 363(o) preserves consumer claims and defenses against a purchaser of assets subject to that provision to the extent those claims and defenses exist under non-bankruptcy law.  No such claims or defenses are at issue in the Mortgage Litigation.

51.    As successor servicer, Ocwen is obligated to correct any ongoing servicing errors of which it becomes aware, whether or not those errors were initially committed by Ocwen or GMACM.  And to the extent any servicing errors by GMACM would constitute a defense to foreclosure proceedings initiated or continued by Ocwen, those defenses are preserved, notwithstanding the fact that Ocwen purchased the servicing rights under a section 363 sale.  Robinson's claims in the Mortgage Litigation do not seek to correct ongoing servicing errors, nor do they assert claims for actions taken by Ocwen.  The Mortgage Litigation only seeks monetary damages (or relief necessary to determine the amount of such damages) for actions allegedly taken by GMACM under the FDCPA, RESPA, and Pennsylvania common law. None of those legal regimes provides that a successor servicer can be held monetarily liable for the acts of a predecessor.

### (vi)    The Proposed Relief Would Contravene Fundamental Bankruptcy Principles At The Expense Of Similarly Situated Creditors

52.    Because the claims asserted by Robinson in the Mortgage Litigation are retained liabilities of the Debtors under the Asset Purchase Agreement, in the event the Mortgage Litigation is allowed to proceed against Ocwen, Ocwen would likely assert an administrative claim for indemnification against the Debtors with respect to any judgment issued against

Ocwen.[7]  The relief requested in the Motion would, in effect, transform Robinson's pre-petition

claims, which would, in the best case, have been payable on a pro rata basis as general unsecured

claims to the extent allowed, into a post-petition administrative claim payable in full.  This result

would contravene the fundamental policy underlying the Bankruptcy Code that similarly-situated

creditors should be treated equally, an outcome that has been rejected by other courts under

analogous circumstances.  See, e.g., Kuehner v. Irving Trust Co., 299 U.S. 445, 451 (1937)

("[T]he object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his

creditors . . . ."); Trs. of Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 100-01 (2d

Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources

will be equally distributed among his creditors, statutory priorities are narrowly construed."

(citing Joint Indus. Bd. of Elec. Indus. v. United States, 391 U.S. 224, 228 (1968); In re United

Merchs. & Mfrs., Inc., 597 F.2d 348, 349 (2d Cir. 1979); Cramer v. Mammoth Mart, Inc. (In re

Mammoth Mart, Inc.), 536 F.2d 950, 953 (1st Cir. 1976)); In re Powermate Holding Corp., 394

B.R. at 778 (rejecting proposed interpretation of Bankruptcy Code section 503(b)(1)(A)(ii) that

would give administrative claim status to claims that vested pre-petition); In re Circuit City

Stores, Inc., 447 B.R. 475, 511 (Bankr. E.D. Va. 2009) (rejecting proposed interpretation of

Bankruptcy Code sections 365(d)(3) and (d)(10) where the result would be to elevate an

administrative claim to superpriority status, which status was "neither required nor permitted

under the Bankruptcy Code").  The relief sought by Robinson would elevate her claims above

those of similarly situated creditors, and should not be countenanced by this Court.

---

[7]    The Debtors do not concede that Ocwen would be entitled to assert such claims and reserve all rights with
respect thereto.

## **CONCLUSION**

53.     WHEREFORE, for the foregoing reasons, the Debtors request that this

Court enter an Order denying the Motion.


New York, New York                      /s/ Norman S. Rosenbaum
Dated: October 2, 2013                  Gary S. Lee
                                        Norman S. Rosenbaum
                                        Erica J. Richards
                                        MORRISON & FOERSTER LLP
                                        1290 Avenue of the Americas
                                        New York, New York 10104
                                        Telephone: (212) 468-8000
                                        Facsimile: (212) 468-7900

                                        Alexandra Steinberg Barrage
                                        MORRISON & FOERSTER LLP
                                        2000 Pennsylvania Avenue, NW
                                        Washington, DC 20006-1888
                                        Telephone: (202) 887-1500

                                        *Counsel to the Debtors and*
                                        *Debtors in Possession*

ny-1108839