Hearing Date:  October 9, 2013 at 10:00 a.m. (ET)

CLIFFORD CHANCE US LLP
31 W. 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Adam Lesman

*Counsel for Ocwen Loan Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**OCWEN LOAN SERVICING, LLC'S OBJECTION**
**TO MOTION OF SIMONA ROBINSON FOR RELIEF FROM STAY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

OBJECTION .................................................................................................................................. 2

    A.    The Sale Order Insulates Ocwen from Liability for the Pre-Closing Acts and Omissions of the Debtors and Enjoins Robinson from Asserting Claims Against Ocwen ................................................................................................ 2

    B.    Section 363(o) of the Bankruptcy Code Does Not Obviate Robinson's Need to Comply with the Terms of the Sale Order ................................................. 4

    C.    Robinson is Prohibited from, and Has Failed to, Allege Successor Liability Against Ocwen ....................................................................................................... 7

JOINDER ....................................................................................................................................... 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.),
   394 B.R. 765 (Bankr. D. Del. 2008) ........................................................................................6

**STATUTES**

11 U.S.C. § 363(o) ........................................................................................................................4

**LEGISLATIVE HISTORY**

H.R. REP. NO. 109-31, pt. 1, (2005)..............................................................................................6

**OTHER AUTHORITIES**

John C. Anderson, Highlights of the Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005 – Part I – Consumer Cases, 33 S.U.L. Rev. 1 (2005) ...............6

Ocwen Loan Servicing, LLC ("**Ocwen**"), by its undersigned counsel, hereby submits this objection (the "**Objection**") to the *Motion of Simona Robinson for Relief From Stay,* filed on September 4, 2013 [Docket No. 4948] (the "**Motion**").

## PRELIMINARY STATEMENT

1. Through the Motion, Simona Robinson ("**Robinson**") has sought relief that is in clear contravention of, and plainly violates, this Court's order[1] approving the sale of Residential Capital, LLC and its affiliate debtors' (collectively, the "**Debtors**") mortgage loan servicing platform to Ocwen (the "**Ocwen Sale**") pursuant to the terms of that certain asset purchase agreement dated as of November 2, 2012 (the "**Asset Purchase Agreement**").

2. Robinson is a plaintiff in a currently stayed action before the United States District Court for the Eastern District of Pennsylvania (the "**Mortgage Litigation**") in which she seeks monetary damages from the Debtor GMAC Mortgage, LLC ("**GMACM**") for alleged pre-petition servicing misconduct (the "**GMACM Claims**") by GMACM.[2] Robinson, who elected neither to file a proof of claim against the Debtors nor to assert an objection to entry of the Sale Order, now seeks to assert claims against Ocwen as a defendant in the Mortgage Litigation. It is exactly these types of claims, for the pre-Closing acts or omissions of the Debtors, that the Sale Order expressly foreclosed, as discussed further below.

3. Notwithstanding the clear terms of the Sale Order, Robinson seeks to pervert the meaning of section 363(o) of the Bankruptcy Code and asserts that this section

---

[1] See *Order Under 11 U.S.C. §§ 105, 363, and 365 and Fed. Bankr. P. 2002, 6004, 6006, and 9014 (I) Approving (A) Sale of Debtors' Assets Pursuant to Asset Purchase Agreement with Ocwen Loan Servicing, LLC; (B) Sale of Purchased Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Thereto; (D) Related Agreements; and (II) Granting Related Relief* [Docket No. 2246] (the "**Sale Order**").

[2] For further factual context concerning both the history and nature of the disputes between Robinson and GMACM, Ocwen refers the Court to the *Debtors' Objection to Motion of Simona Robinson for Relief From Stay,* dated October 2, 2013 (the "**Debtors' Objection**").

provides a vehicle for affirmative relief and otherwise overrides and makes obsolete each and every other operative provision of the Sale Order that specifically prohibits the assertion of these claims against Ocwen. Robinson's understanding of both the operation of the Sale Order on her claims and the impact of section 363(o) is misguided. Section 363(o) was <u>not</u> intended to have the broader effect of making a purchaser of consumer credit transactions liable for claims properly asserted against the seller, where no such successor liability is required outside of bankruptcy. Nor was it intended to subvert the bankruptcy claims process, by allowing consumers to hold third parties liable for estate obligations. Accordingly, Robinson's Motion should be denied.

**OBJECTION**

**A.     The Sale Order Insulates Ocwen from Liability for
the Pre-Closing Acts and Omissions of the Debtors
and Enjoins Robinson from Asserting Claims Against Ocwen**

4.      The provisions of the Sale Order make very clear that Ocwen, as purchaser of the assets pursuant to the Asset Purchase Agreement (the "**Purchased Assets**"), did not assume, or succeed to, any liability on account of the Debtors' pre-Closing acts or omissions. Indeed, the Sale Order provides Ocwen with broad insulation and specific injunctive relief from the assertion of such claims.

5.      Specifically, the Sale Order provides that all persons "holding Interests (as defined in the Sale Order) in the Purchased Assets or against the Debtors in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Interests of any kind or nature whatsoever (including, without limitation, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to

2

the Closing Date[3]) against the Purchaser . . . or the Purchased Assets, as an alleged successor or on any other grounds . . . ." Sale Order at ¶ 5. Additionally, Paragraph 7 of the Sale Order provides that

> No Person shall assert and the Purchaser and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), Liabilities, Claims and Interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Debtors, or any obligation of any other party, under or with respect to, any Purchased Assets (including, without limitation, an Assumed Contract), with respect to any act or omission that occurred prior to the Closing or with respect to any Other Agreement or any obligation of Debtors that is not an Assumed Liability

Sale Order at ¶ 7.

6. These injunctive relief provisions (along with each and every provision of the Sale Order) are specifically binding on all known and unknown creditors of any Debtor. See Sale Order at ¶ 4 ("This Order and the [Asset Purchase Agreement] shall be binding in all respects upon all known and unknown creditors of . . . any Debtor, including any holders of Interests (including holders of rights or claims based on any successor or transferee liability) . . . ."). Robinson had notice of, and an opportunity to object to, the proposed entry of the Sale Order and did not file an objection to its terms.

7. The injunctive relief provisions of the Sale Order expressly prohibit Robinson from asserting the GMACM Claims against Ocwen as they indisputably are alleged to arise from the pre-Closing Date acts of Debtor, GMACM.

---

[3]  The Closing Date occurred on February 15, 2013.

3

**B.     Section 363(o) of the Bankruptcy Code Does Not Obviate
Robinson's Need to Comply with the Terms of the Sale Order**

8.     Robinson's sole argument in support of her assertion of these claims against Ocwen is that section 363(o) of the Bankruptcy Code permits Robinson to disregard the sweeping protections afforded Ocwen in the Sale Order against such claims.

9.     Section 363(o), which was added to the Bankruptcy Code in 2005 as part of the Bankruptcy Abuse Prevention And Consumer Protection Act ("**BAPCPA**"), provides:

> Notwithstanding subsection (f) [specifying circumstances in which estate property may be sold free and clear of third party interests], if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section.

11 U.S.C. § 363(o).

10.    The Sale Order, which makes reference to section 363(o), merely provides that the transfer of the Purchased Assets to Ocwen free and clear of claims and interests arising from the pre-Closing acts or omissions of the Debtors must take into account that section of the Bankruptcy Code.  Specifically, the Sale Order provides that:

> Except for the Assumed Liabilities or as otherwise provided by section 363(o) of the Bankruptcy Code, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser as required under the [Asset Purchase Agreement], and such transfer shall be free and clear of all Interests of any Person (including, without limitation, Claims or Liabilities relating to any act or omission of any originator, holder or servicer of Mortgage Loans prior to the Closing Date, and any indemnification Claims or Liabilities relating to any act or omission of the Sellers or any other Person prior to the Closing

4

> Date) and any and all rights and claims under any bulk transfer statutes and similar laws, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the date on which these Chapter 11 cases were commenced, whether known or unknown, occurring or arising prior to such transfer, with all such Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Claim or Interest claims or may claim a Claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Sellers may possess with respect thereto.

Sale Order at ¶ 9.[4]  Robinson, however, has taken the position that section 363(o) creates an across-the-board carve-out that permits her to disregard each of the protections afforded Ocwen in the Sale Order and simply substitute Ocwen as a successor-defendant in her Mortgage Litigation.  Robinson has a fundamental misunderstanding as to the effect of this provision.

11. The effect of section 363(o) is to ensure that assets purchased by Ocwen, as the buyer of mortgage servicing rights, are not stripped of claims and defenses that a consumer would have had by virtue of section 363 of the Bankruptcy Code (to the extent a purchaser would have successor liability).  Quite simply, it protects claims or defenses that Robinson would have been able to assert against GMACM in connection with the pursuit of a foreclosure or other mortgage-related action against her.  Nothing in section 363(o) or elsewhere in the Bankruptcy Code imposes new or additional liability on a purchaser of assets where none exists under non-bankruptcy law.[5]

12. Robinson's interpretation is also seemingly at odds with the legislative intent underlying BAPCPA.  Section 363(o) was added to the Bankruptcy Code through Section

---

[4] Paragraph 9 of the Sale order contains the sole reference to Bankruptcy Code section 363(o).
[5] The Motion is devoid of any assertion that Ocwen purchased a consumer credit transaction subject to the Truth in Lending Act or an interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and Ocwen reserves any and all rights and defenses with respect thereto.

5

204 of BAPCPA, entitled "*Preservation of Claims and Defenses Upon Sale of Predatory Loans.*" H.R. REP. NO. 109-31, pt. 1, at 58-59 (2005). Indeed, the statute portends a "preservation" of claims and defenses and provides absolutely no indication that the section was intended to create a new independent basis for affirmative successor liability. See Id. at 2–3, 10–18 (2005).

13. Additionally, while the legislative record is scant regarding the purpose of section 363(o), at least one other court, faced with interpreting another BAPCPA amendment with similar lack of Congressional guidance, has taken such silence to mean that the language at issue should not be applied in a way that would significantly alter creditor rights as they existed prior to the enactment of BAPCPA. See Henderson v. Powermate Holding Corp. (In re Powermate Holding Corp.), 394 B.R. 765, 777-778 (Bankr. D. Del. 2008) (interpreting Bankruptcy Code section 503(b)(1)(A)(ii) and stating "if Congress intended for such a monumental shift in the administration of estates under bankruptcy law, there would be significant legislative history. Instead the record is nearly silent. Such evidence of Congressional intent, or lack thereof, supports this Court's interpretation of the Amendment.").

14. The rationale set forth in Powermate applies with equal force here, and suggests that Bankruptcy Code section 363(o) was not intended to vitiate purchaser rights with respect to asset sales conducted pursuant to section 363, but instead to prevent certain claims and defenses being cutoff pursuant to section 363. See John C. Anderson, *Highlights Of The Bankruptcy Abuse Prevention And Consumer Protection Act Of 2005 - Part I - Consumer Cases*, 33 S.U. L. REV. 1, 18 (2005) ("Section 363(o) is added to the Bankruptcy Code to prevent any defenses or claims held by a consumer debtor from being cutoff through the sale of a consumer credit contract."). Section 363(o) was not intended to have the broader effect of making a purchaser of consumer credit transactions liable for claims properly asserted against the seller,

where no such successor liability is required outside of bankruptcy. Nor was it intended to subvert the bankruptcy claims process, by allowing consumers to hold third parties liable for estate obligations. The purpose of section 363(o) is to preserve certain consumer rights, not expand them.

15.     There is simply nothing in the Bankruptcy Code, legislative history of section 363(o) or case law that supports Robinson's sweeping interpretation of section 363(o), and enforcement of her interpretation would be a monumental shift to the fundamental policy underlying the Bankruptcy Code.

### C.    Robinson is Prohibited from, and has Failed to, Allege Successor Liability Against Ocwen

16.     The Sale Order explicitly bars any successor liability claims that may otherwise be asserted against Ocwen. See Sale Order at ¶ 23 (providing that Ocwen shall not "have any liability for any Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing.") Additionally, Ocwen

> shall not be deemed, as a result of any action taken in connection with the [Asset Purchase Agreement] or any of the transactions . . . in connection with the acquisition of the Purchased Assets, to: (i) be legal successors, or otherwise be deemed successors to the Debtors; (ii) have, de facto or otherwise, merged with or into the Debtors; or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors. Without limiting the foregoing, *the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Interests, including under any theory of successor or transferee liability*, *de facto merger or continuity*, . . . *liability, whether known or unknown as of the Closing*, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated.

Id. Although Robinson contends that "any successor liability by Ocwen will not impact the Debtor's estate or these bankruptcy proceedings" and therefore, a determination regarding such

7

liability is not within the jurisdiction of this Court, Motion at ¶ 13, the relief sought by Robinson squarely turns on an interpretation of the Sale Order, over which this Court retains jurisdiction. See Sale Order at ¶ 25 ("This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, . . . including, but not limited to, retaining jurisdiction to . . . (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser against any Interests against the Sellers or the Purchased Assets of any kind or nature whatsoever . . . ."). And, based on the foregoing, it is readily apparent that the Sale Order prohibits Robinson from asserting against Ocwen the claims in the Mortgage Litigation.

17.   Section 363(o) does not circumscribe the successor liability or injunctive relief provisions of the Sale Order which prohibit Robinson from asserting against Ocwen those affirmative claims interposed in the Mortgage Litigation. It is uncontroverted that the claims asserted in the Mortgage Litigation do not seek to correct ongoing servicing errors for which Ocwen arguably may be obligated to remedy, nor do they assert claims for actions taken by Ocwen. Rather, the Mortgage Litigation seeks monetary damages (or relief necessary to determine the amount of such damages) for actions allegedly taken by GMACM prior to the Closing Date.

18.   Additionally, and putting aside for the sake of argument that the assertion of the claims in the Mortgage Litigation runs afoul of the Sale Order, Robinson has not made any assertion that would or could support a claim of "successor liability" against Ocwen as a successor servicer for the acts of a prior servicer under relevant non-bankruptcy law.

## JOINDER

19.    Ocwen hereby joins in the arguments set forth in the Debtors' Objection to the extent not inconsistent with the arguments set forth herein.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Ocwen requests that the Court determine that Robinson's actions seeking to substitute Ocwen for GMACM in the Mortgage Litigation are violative of the Sale Order and enter an Order denying the Motion.

Dated:    New York, New York
         October 2, 2013

                         CLIFFORD CHANCE US LLP

                         By:    /s/ *Jennifer C. DeMarco*
                                Jennifer C. DeMarco
                                Adam Lesman
                                31 W. 52nd Street
                                New York, New York 10019
                                Telephone: (212) 878-8000
                                Facsimile: (212) 878-8375

                         *Counsel to Ocwen Loan Servicing, LLC*