1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matters of:

RESIDENTIAL CAPITAL, LLC, et al.,          Case No. 12-12020-mg

                Debtors.

- - - - - - - - - - - - - - - - - - - -x

LYTLE

                Plaintiff,                    Adv. No. 12-02069-mg

      - against -

GMAC MORTGAGE, LLC, et al.

                Defendants.

- - - - - - - - - - - - - - - - - - - -x

WILLIAMS,

                Plaintiff,                    Adv. No. 13-01309-mg

      - against -

GMAC MORTGAGE, LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - -x

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14                    United States Bankruptcy Court

15                    One Bowling Green

16                    New York, New York

17

18                    September 24, 2013

19                    10:02 AM

20

21  B E F O R E:

22  HON. MARTIN GLENN

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Status Conference RE: Debtors' Motion Under Section 365 of the

3    Bankruptcy Code to Assume and Assign Servicing Related

4    Agreements with Impac Funding Corporation and Impac Mortgage

5    Holdings, Inc. [Docket No. 4744]

6

7    (CC: Doc# 4812) Motion for Entry of Order Granting Discharge

8    from Duties, Immunity from Discovery, Approval of Disposition

9    of Investigative Materials, and Exculpation in Connection with

10   Duties

11

12   (CC: Doc# 4688) Motion for Objection to Claim(s) Number: 5677.

13

14   (CC: Doc# 4767) Motion for Objection to Claim(s) Number: 1984,

15   1991.

16

17   (CC: Doc #4714) Motion for Omnibus Objection to Claim(s) /

18   Debtors' Twenty-Fourth Omnibus Objection to Claims (Amended and

19   Superseded Claims) filed by Norman Scott Rosenbaum on behalf of

20   Residential Capital, LLC..

21

22   (cc: Doc #4715) Motion for Omnibus Objection to Claim(s) /

23   Debtors' Twenty-Fifth Omnibus Objection to Claims (Amended and

24   Superseded Borrower Claims) filed by Norman Scott Rosenbaum on

25   behalf of Residential Capital, LLC..

4

1

2   (CC: Doc# 4734) Motion for Omnibus Objection to Claim(s) /

3   Twenty-Sixth Omnibus Objection to Claims (Borrower Claims with

4   Insufficient Documentation)

5

6   (CC: Doc# 4735) Motion for Omnibus Objection to Claim(s) /

7   Debtors' Twenty-Seventh Omnibus Objection to Claims (Borrower

8   Claims with Insufficient Documentation)

9

10  (CC: Doc# 4748) Motion for Omnibus Objection to Claim(s) /

11  Debtors' Twenty-Eighth Omnibus Objection to Claims (No

12  Liability Claims - Books and Records)

13

14

15  Doc# 4821 Motion for Omnibus Objection to Claim(s) / Debtors'

16  Twenty-Ninth Omnibus Objection to Claims (Late-Filed Claims)

17

18  Adversary proceeding: 12-02069-mg Lytle v. GMAC Mortgage LLC

19  et al.

20  (CC: Doc# 20, 21, 22) Motion to Dismiss Adversary Proceeding

21  /Defendants' Motion to Dismiss Plaintiffs' Adversary Complaint

22

23

24

25

1

2    Adversary proceeding: 13-01309-mg    Williams v. GMAC Mortgage

3    LLC

4    (CC: Doc# 7, 8) Debtor Defendant's Motion to Dismiss Plaintiffs

5    Adversary Complaint.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Penina Wolicki

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4        Attorneys for Debtors

5        1290 Avenue of the Americas

6        New York, NY 10104

7

8  BY:   NORMAN S. ROSENBAUM, ESQ.

9        JORDAN A. WISHNEW, ESQ.

10

11

12  KRAMER LEVIN NAFTALIS & FRANKEL LLP

13        Attorneys for Official Creditors' Committee

14        1177 Avenue of the Americas

15        New York, NY 10036

16

17  BY:   ELISE S. FREJKA, ESQ.

18        NORMAN S. SIMON, ESQ.

19

20

21

22

23

24

25

1

2  BRADLEY ARANT BOULT CUMMINGS LLP

3         Attorneys for Residential Capital

4         100 North Tryon Street

5         Charlotte, NC 28202

6

7  BY:    CHRISTY W. HANCOCK, ESQ.

8

9

10  BRADLEY ARANT BOULT CUMMINGS LLP

11         Attorneys for Residential Capital

12         1819 Fifth Avenue North

13         Birmingham, AL 35203

14

15  BY:    CHRISTOPHER L. HAWKINS, ESQ. (TELEPHONICALLY)

16

17

18  SILVERMANACAMPORA LLP

19         Special Counsel to the Creditors' Committee

20         100 Jericho Quadrangle

21         Suite 300

22         Jericho, NY 11753

23

24  BY:    ROBERT D. NOSEK, ESQ.

25

8

1  CHADBOURNE & PARKE LLP

2        Attorneys for the Examiner

3        30 Rockefeller Plaza

4        New York, NY 10112

5

6  BY:   HOWARD SEIFE, ESQ.

7        DAVID M. LEMAY, ESQ.

8

9

10  MCKENNA LONG & ALDRIDGE LLP

11        Attorneys for Impac Funding Corp. et al.

12        230 Park Avenue

13        17th Floor

14        New York, NY 10169

15

16  BY:   CHRISTOPHER F. GRAHAM, ESQ. (TELEPHONICALLY)

17

18

19  MUNGER TOLLES & OLSON LLP

20        Attorneys for Berkshire Hathaway Inc.

21        355 South Grand Ave.

22        35th Floor

23        Los Angeles, CA 90071

24

25  BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

1

2    KATHERINE S. PARKER-LOWE ATTORNEY AT LAW

3        Attorney for Rex T. and Daniella Gilbert

4        35 Miss Elecia Lane

5        Suite 101

6        Ocracoke, NC 27960

7

8    BY:   KATHERINE S. PARKER-LOWE, ESQ. (TELEPHONICALLY)

9

10   ALSO PRESENT:

11       GALINA VALEEVA, Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

RESIDENTIAL CAPITAL, LLC, ET AL.                    10

1              P R O C E E D I N G S

2         THE COURT:  Please be seated.  We're here in

3    Residential Capital, number 12-12020.  Mr. Rosenbaum?

4         MR. ROSENBAUM:  Good morning, Your Honor.  Norm

5    Rosenbaum, Morrison & Foerster, for the debtors.  Your Honor,

6    the first matter on the agenda is at page 9, it's IV.  It's the

7    examiner's motion.

8         THE COURT:  Sure.

9         MR. ROSENBAUM:  And I will cede the podium to Mr.

10   Seife.

11        THE COURT:  Okay, Mr. Seife?

12        MR. SEIFE:  Good morning, Your Honor.  Howard Seife

13   from Chadbourne & Parke, appearing today for the examiner,

14   Arthur Gonzalez.

15        We're here today on the -- I guess the last act in the

16   appointment of the examiner, dating back to July 3rd when Your

17   Honor entered the order appointing Arthur Gonzalez.  July 27th

18   was another milestone date where the scope of the investigation

19   was approved by Your Honor.  And that set off the examiner's

20   professionals on a road which culminated in the filing of the

21   report on May 13th.

22        And Your Honor is well aware of the contents of the

23   report and the efforts that --

24        THE COURT:  All 2,235 pages of it.

25        MR. SEIFE:  To be exact.  And the efforts --

1          THE COURT:  But who's counting?

2          MR. SEIFE:  -- and the efforts that went into the

3    investigation and the writing of that report.

4          THE COURT:  And I don't mean to be flippant about it.

5    It was a very thorough and extensive report.

6          MR. SEIFE:  Thank you, Your Honor.

7          So the investigation and report, obviously, are now

8    completed.  The work is done.  And we're here today on the

9    motion of the examiner to seek a discharge for the examiner and

10   his professionals.  Those professionals include Chadbourne &

11   Parke; Mesirow, the financial advisors; and two other law firms

12   that assisted, Wolf Haldenstein and Leonard Street.

13         The relief we're seeking takes various forms.  It

14   includes the termination of the appointment, the discharge of

15   the examiner and the professionals from any further obligations

16   under the scope order or otherwise.  The examiner and the

17   professionals are relieved from any duties to respond to any

18   discovery requests with certain carve-outs which are set forth

19   in the order.

20         It provides that the document depository, which

21   contains over nine million pages of documents produced by the

22   parties to the examiner, will be transferred to the debtors and

23   preserved by the debtors.  And the examiner is relieved of any

24   further responsibilities pertaining to the depository.

25         The examiner will preserve for two years witness

1   interview transcripts and recordings, but will be under no

2   obligation to preserve any other work product-related

3   materials.  And the order provides for the exculpation of the

4   examiner and the professionals relating to the role of the

5   examiner and the investigation and the report within a -- with

6   a carve-out for willful misconduct, recklessness and/or gross

7   negligence.  And it permits the filing of a final fee

8   application by the examiner and the professionals.

9          There were various comments made by the U.S. Trustee's

10  Office and the U.S. Attorney's Office.  Those comments were

11  incorporated into certain changes with a black-line which was

12  filed earlier with the Court.  In addition, there were some

13  certain comments made by the debtors.  And we've submitted a

14  black-line yesterday which incorporates those changes and which

15  resolves the response filed by the debtors.

16         And we've provided a black-line to the Court.  If any

17  parties want to see a black-line in the dark, we can --

18         THE COURT:  Mr. Driscoll, I think you accidentally hit

19  the light switch that's behind you.

20         MR. DRISCOLL:  Oh, sorry, Your Honor.

21         THE COURT:  That's okay.  Thank you.

22         MR. SEIFE:  It was minor changes which made clear that

23  the transfer of the depository will be to the debtors who shall

24  preserve the depository from the date of the transfer until

25  further order of the Court.  So that's the only additional

1   change.

2          So with that -- and I'll take any questions from Your

3   Honor.

4          THE COURT:  Okay.  Let me see; does anybody else wish

5   to be heard with respect to the examiner's motion?

6          Just tell me, what did you do to resolve the debtors'

7   issues?  Because they originally objected to the turnover of

8   the database to them.

9          MR. SEIFE:  I think we wore them down, Your Honor.

10  And they read our response and were convinced that --

11         THE COURT:  Okay.

12         MR. SEIFE:  -- it would not be an overly burdensome

13  transfer, and they agreed to take it --

14         THE COURT:  Turning over the keys to the computer.

15         MR. SEIFE:  That's really all it entails.  And they

16  agreed to that --

17         THE COURT:  All right.

18         MR. SEIFE:  -- quite graciously.

19         THE COURT:  Anybody else wish to be heard?  All right.

20         The Court has -- I'm going to grant the motion.  But

21  the Court has reviewed the papers carefully, and there's

22  considerable authority supporting each of the specifically

23  requested forms of relief that the examiner has sought.

24         Courts have recognized that the examiner performs his

25  duties at the request of the court for the benefit of the

RESIDENTIAL CAPITAL, LLC, ET AL.                    14

1  debtor, its creditors and shareholders, and not to fuel

2  litigation fires of third-party litigants.  See In re New

3  Century TRS Holdings, Inc., 407 B.R. 558, 566 (Bankr. D. Del.

4  2009).  The examiner is a fiduciary to the court and amenable

5  to no other person or interested party.  See In re Hamiel &

6  Sons., 20 B.R. 830, 832 (Bankr. S.D. Ohio 1982).

7        Requiring production of confidential and/or privileged

8  materials obtained or created during the conduct of the

9  examiner examination or preparation of the examiner report,

10 would allow parties to exploit the examiner's fiduciary status

11 raising "grave concerns touching both the integrity of the

12 bankruptcy court's processes as well as the integrity of the

13 statutory position of the examiner."  See In re Baldwin United

14 Corp. 46 B.R. 314, 316 (Bankr. S.D. Ohio, 1985).

15       Accordingly, courts have prohibited third-party

16 discovery of examiners' records, absent extraordinary

17 circumstances.  See In re Apex Oil Co. 101 B.R. 92, 104 (Bankr.

18 E.D. Mo. 1989).  And there's other authority that supports that

19 same proposition that I won't cite now.

20       So the restrictions placed in the proposed order,

21 which no one has objected to, immunity from discovery, clearly

22 appropriate in light of existing precedent.

23       Likewise, the provisions in the order on exculpation

24 of the examiner and his professionals are likewise supported by

25 authority.  See Kovalesky v. Carpenter, 95 Civ. 3700(SAS) 1997

1  WL 630144 at *4 (S.D.N.Y. Oct. 9, 1997).  See also Baldwin

2  United, 46 B.R. 317.  So I'm going to grant the motion.  There

3  is substantial authority for all of the relief that's been

4  sought by the examiner.

5        And the Court wants to express great appreciation of

6  the Court to both the examiner and all the professionals that

7  assisted him in conducting the investigation and preparing the

8  report.  Thank you, Mr. Seife.

9        MR. SEIFE:  Thank you, Your Honor.  And with your

10  leave, we will --

11        THE COURT:  You're excused.

12        MR. SEIFE:  -- leave the courtroom.  Thank you.

13        MR. ROSENBAUM:  Your Honor, the next matter on the

14  calendar is at page 16.  It's item number 5.  This is the

15  debtors' objection to proof of claim number 5677.  And I will

16  turn the podium over to my colleague Jordan Wishnew and

17  Christian Hancock.

18        THE COURT:  I'm sorry, which page?

19        MR. ROSENBAUM:  I'm sorry, it's page 16 -- 17, excuse

20  me.

21        THE COURT:  17, okay.  Okay.

22        MR. WISHNEW:  Good morning, Your Honor.  Jordan

23  Wishnew, Morrison & Foerster, counsel for the debtors.

24        As Mr. Rosenbaum mentioned, the arguments on both

25  items 5 on page 17 as well as 6 on page 17, will be handled by

1    our colleague, Christy Hancock, from the Bradley Arant firm.

2              THE COURT:  All right.

3              MR. WISHNEW:  So she has been admitted pro hac vice.

4    I believe her order was entered yesterday.  I will cede the

5    podium to her.

6              THE COURT:  Thank you.

7              MS. HANCOCK:  Good morning, Your Honor.  Again, my

8    name is Christy Hancock.  I'm counsel for GMAC in a number of

9    its litigation matters that predated the bankruptcy filing.

10   That included the suit brought originally by GMAC against

11   Galina Valeeva and Evelina Okouneva, which was a Florida

12   foreclosure case.

13            The suits relates originally to a 2005 mortgage on a

14   second home down in Florida.  The original loan balance was

15   217,450 dollars.  The loan went into default, and the last

16   payment was received in 2009.  In late 2010 and then moving

17   through 2011, the borrowers began sending correspondence to

18   GMAC which we've generically described as debt elimination

19   theory pleadings.  They are somewhat hard to decipher.  Our

20   position is that they have no legal basis in law or fact.

21            Essentially, these documents will say that the

22   borrowers are accepting an unknown offer that was made

23   allegedly by GMAC to the borrowers.

24            THE COURT:  I reviewed the papers.

25            MS. HANCOCK:  Okay.  So I won't go into a lot of

1    detail there.  The arguments, we have taken the position, have

2    no basis in fact.  They were sent to GMAC both in just

3    correspondence to the company and they were also filed in the

4    foreclosure case, not always consistently.

5           The foreclosure case is still pending.  Mrs. Valeeva

6    did have counsel in the case.  He originally -- he's asked to

7    withdraw in January of 2012, but has not had that separate

8    hearing.  But she has been representing herself pro se and

9    essentially on behalf of her mother.

10          THE COURT:  What's the status of the foreclosure

11   proceeding?

12          MS. HANCOCK:  The foreclosure is still pending.  The

13   most recent process there was that Ms. Valeeva filed another

14   motion to dismiss.  It was set for hearing and ruled against

15   her in July of this year.  And it looks as if the case is ready

16   to go to trial.  My firm is no longer counsel of record in that

17   case, but we've been following the proceedings.

18          And so Ms. Valeeva, on behalf of herself and her

19   mother brought a proof of claim in the bankruptcy case.  It

20   asserts a secured claim of over 241,000 dollars, and an

21   unsecured claim of about 3.7 million.  It attached to that

22   proof of claim many of the same documents we had seen in the

23   foreclosure case, also some new interesting documents,

24   particularly indicating that she believes that GMAC owes her

25   the balance of her loan proceeds plus additional damages.

1       It includes UCC and tax-like documents; a one-million-

2   dollar check that appears to be made out to the U.S. Treasury;

3   other things that GMAC's been unable to determine the legal

4   basis for those documents.

5       THE COURT:  There's a letter to Secretary Geithner,

6   isn't there?

7       MS. HANCOCK:  Yes, Your Honor.  So we have filed an

8   objection to that proof of claim on the basis that the

9   borrowers have failed to articulate any basis under state or

10  federal law --

11      THE COURT:  You allege, am I correct, that some of the

12  papers that the claimants filed in this court are false or

13  fraudulent.  Is that correct?  Forged?

14      MS. HANCOCK:  I would not say that they are forged.

15  They appear to be signed by Ms. Valeeva.

16      THE COURT:  Okay.

17      MS. HANCOCK:  She appears to believe these documents

18  have some kind of legal effect, that they are legitimate UCC

19  filings or that they somehow create lien on GMAC's property.

20  We believe that they are just nullities.  But I don't believe

21  that they're a forgery.

22      THE COURT:  Okay.

23      MS. HANCOCK:  So we have filed our objection to proof

24  of claim, do not believe that Ms. Valeeva has established any

25  kind of damages against GMAC, and that we therefore shifted the

RESIDENTIAL CAPITAL, LLC, ET AL.                              19

1    burden to her to prove up her claim against GMAC.

2            Interestingly, in her response brief, it did seem to

3    me that she was saying that she would release the claim if she

4    could be -- it could be proven to her the whereabouts of her

5    original mortgage and note.  And I contacted Ms. Valeeva, also

6    sent her a letter indicate -- telling her that the original

7    note and mortgage were both on file in the Florida foreclosure

8    case that she was capable of going down there to review the

9    note from the Clerk of Courts, to see if that would satisfy her

10   concerns.  And --

11           THE COURT:  Why didn't you just send her a copy of the

12   documents from the court file in Florida?

13           MS. HANCOCK:  I did actually attach to the letter a

14   full and complete copy of the note as it was filed with the

15   court.

16           And in response, she sent a lengthy fax to my office

17   on Friday which, I think, was just more of the original kind of

18   arguments.  And I wasn't able to really determine what claim

19   she was making.

20           THE COURT:  Okay.  Ms. Valeeva or Ms. Okouneva, are

21   you here and wish to be -- come on up to the microphone.

22           Are you able to stand?

23           MS. VALEEVA:  Yeah.  I will.

24           THE COURT:  All right.  Pull the microphone down a

25   little closer to you.

1          MS. VALEEVA:  Okay.

2          THE COURT:  And identify yourself for the record,

3     okay?

4          MS. VALEEVA:  I am here on behalf of Valeeva and

5     Okouneva --

6          THE COURT:  You have to tell me your name.

7          MS. VALEEVA:  My name is Galina from Okouneva and

8     Valeeva family.

9          THE COURT:  Are you Galina Valeeva?

10         MS. VALEEVA:  Yes.

11         THE COURT:  Okay.  Go ahead.

12         MS. VALEEVA:  Your Honor, I'm here because I would

13    like to tell to everybody here that counsel is making claims in

14    support of interest not admitted into this case by evidence and

15    fact.  It's only a true party of interest which can bring forth

16    a claim making all other claims irrelevant and immaterial at

17    this time, until otherwise proven.  Is there any objection?

18         THE COURT:  Go ahead with your argument, Ms. Valeeva.

19         MS. VALEEVA:  Okay.  With respect even to this Court

20    and to the parties in attendance, there is sufficient evidence

21    the titles of the real property is clouded.  And being a matter

22    of public record, Residential has been involved in the process

23    of reverse engineering titles, and this being in fact and by

24    all law and statutes governing the sales, transferences and

25    conveyances of the real property.  Avoidable contract being the

1  condition creates not only bifurcation in some degree, but may

2  be considered and act of fraudulent conveyances.

3          And without the parties in attendance showing clear

4  and convincing evidence of clear title and proof of claim,

5  these proceedings may constitute a violation of my own rights

6  and interests having been formed upon the real property being

7  that I am the only party standing here within this courtroom,

8  with clear evidence of being an originating party to the

9  contract for the deed and note, and whereby these parties seek

10  to have these proceedings suspended upon these parties in

11  attendance stand and stipulates specifically to the nature of

12  ownership to the deed and note and produce those instrument in

13  their original state for material alterations and proffer

14  endorsements.

15          And if the parties cannot produce a clear and

16  convincing title then Galina Valeeva moves this Court to have

17  the parties dismissed from this case, being they have no

18  standing in this court.  Is there any objections?

19          THE COURT:  Ms. Valeeva, you filed a proof of claim,

20  and the debtor has filed an objection to the claim.  So you've

21  initiated this proceeding in this court by filing the claim.

22  The debtor has responded and seeks to expunge the claim.  So

23  they are properly a party.  The issue is, have you properly

24  supported a proof of claim?

25          What evidence have you submitted that you believe

1   supports a valid claim against the debtors in this case?

2          MS. VALEEVA:  I believe that I have created secured

3   interest during these years.

4          THE COURT:  Show me a document.  Show me a piece of

5   paper that you believe creates a security interest in your

6   favor against any of the debtors.

7          MS. VALEEVA:  I'm sorry.  At that time I don't have

8   copies for everybody who's parties are here.

9          THE COURT:  Do you have a copy for me?

10          MS. VALEEVA:  For you?

11          THE COURT:  Yes.  Do you have a copy you can show me

12   of something that creates a security interest in your favor

13   against one of the debtors?

14          MS. VALEEVA:  I have the statements that I paid by

15   checks.  I have the closing paperwork that shows that I

16   invested my down payment there.  And all these years from 2005

17   to 2009, I paid my dues until I failed.

18          THE COURT:  Okay.

19          MS. VALEEVA:  And I think --

20          THE COURT:  My question is very specific.

21          MS. VALEEVA:  Yeah.

22          THE COURT:  It is, do you have any documentation that

23   you believe supports your argument that you have a security

24   interest against the debtor or its property?

25          MS. VALEEVA:  I'm sorry, I didn't bring it with me.  I

1  wasn't ready for that.

2          THE COURT:  Nor did you attach it to any of the papers

3  that you submitted to the court.  That's why I'm asking you now

4  whether you have any.

5          MS. VALEEVA:  Your Honor, it was so quickly arranged

6  that --

7          THE COURT:  There's nothing very quick about what's

8  been happening either in the state foreclosure proceeding or in

9  this court.

10          MS. VALEEVA:  I didn't bring the documents with me.

11  I'm --

12          THE COURT:  What --

13          MS. VALEEVA:  -- sorry.

14          THE COURT:  -- document do you have that supports your

15  argument that you have a security interest against any of the

16  debtors?

17          MS. VALEEVA:  I have settlement papers.  I have

18  statements when I paid my monthly payments to the GMAC.  I have

19  everything at home.  But I'm just --

20          THE COURT:  Go ahead with your argument.

21          MS. VALEEVA:  I had a procedure lately and I'm --

22          THE COURT:  Go ahead with your argument.

23          MS. VALEEVA:  With my argument?

24          THE COURT:  Yes.

25          MS. VALEEVA:  I think that the documents that the

1  other party, their counsel presented, they have copies of the

2  notes and copies of the mortgage.  And I believe that there are

3  some robosigners signs signatures there.  I believe that some

4  documents where may be reconstructed again, because some

5  paperwork is not seems proper to me.  When I compared the

6  papers that I received as a copies, instead of my daughter's

7  signature of my daughter's names there, there is just something

8  inserted there.

9          It means that the document was some kind of changed.

10  That's why very many documents that I have at home doesn't

11  reflect the documents that I received lately.  And because of

12  my health condition maybe I'm just -- maybe I'm not prepared.

13  Maybe I would ask you for -- to have another hearing.

14          THE COURT:  No, no, no.  This is the hearing.  You

15  have to make your arguments now.  This is not going to be

16  adjourned.  I'm giving you a chance to make whatever argument

17  you wish to make now.

18          MS. VALEEVA:  I don't have party that represents --

19  true party of beneficial interest party here.  That's why this

20  case --

21          THE COURT:  So you're -- do I understand, you're

22  defending the mortgage foreclosure action --

23          MS. VALEEVA:  Yeah.

24          THE COURT:  -- that's pending in the state court in

25  Florida.  Is that correct?

1        MS. VALEEVA:  Yes.

2        THE COURT:  Okay.  And you've asserted these same

3  arguments as a defense to foreclosure in that state court

4  action.  Am I correct?

5        MS. VALEEVA:  This is the only thing that I have right

6  now.

7        THE COURT:  Okay.

8        MS. VALEEVA:  Objection, Your Honor.

9        THE COURT:  Yes.  But the arguments that you're making

10  here, you're making those same arguments in defense of the

11  foreclosure action in the state court in Florida.  Is that

12  correct?

13        MS. VALEEVA:  Besides that I have heard the counsel

14  telling about the claim that I filed.  I was --

15        THE COURT:  No, I'd like -- try and answer my

16  question.  The arguments that you've made now, you are making

17  those same arguments as a defense to the foreclosure action

18  pending in Florida state court, correct?

19        MS. VALEEVA:  Not exactly.  Because I'm talking about

20  my case here.  And my case actually came here to this court

21  because I claimed my beneficial interest.  And I'm the only one

22  person who might do that in front of you, Your Honor.

23        THE COURT:  All right.  What else do you have -- what

24  other arguments do you want to make?

25        MS. VALEEVA:  As counsel told right now that I have

1     filed a claim, on my part it was my understanding that I am

2     defending my secured and unsecured interest --

3            THE COURT:  But you keep saying your secured interest.

4     But you haven't come forward with any evidence to show that you

5     have a secured interest in this case.

6            MS. VALEEVA:  Objection, Your Honor.  I have all the

7     documents --

8            THE COURT:  Don't tell me "objection".  You haven't

9     filed -- you filed a lot of paper, including a couple days ago,

10    and untimely, but I've considered it.  And the debtors made

11    clear that you had not provided documents that supported your

12    claim.  You didn't provide it to them.  You haven't provided it

13    to the Court.

14           This is not something that you can provide next year.

15    Now is the time.  Do you have any papers that support your

16    argument that you have a secured interest against the property

17    of the debtors in this case?

18           MS. VALEEVA:  I would ask you for some time for me to

19    gather this paperwork.

20           THE COURT:  There's no -- now is the time.  This

21    hearing was properly noticed.  You had sufficient time.  You

22    have filed a lot of paper here.  It's incomprehensible, but you

23    have filed a lot of paper.  But you have not filed anything to

24    show that you have a claim against any of the debtors.

25           MS. VALEEVA:  Debtors have the records of my --

RESIDENTIAL CAPITAL, LLC, ET AL.                    27

1          THE COURT:  Okay.

2          MS. VALEEVA:  -- payments.

3          THE COURT:  All right.

4          MS. VALEEVA:  They have all of it.

5          THE COURT:  All right.  Thank you.

6          Do you wish to reply?

7          MS. HANCOCK:  Just very briefly, Your Honor.  My best

8  interpretation of Ms. Valeeva's claims is essentially a defense

9  to the foreclosure action.  That's the correct forum for her to

10 bring these arguments.  And the foreclosure case is still

11 continuing.

12         THE COURT:  Okay.  All right, I'm going to take the

13 matter under submission.  Next?

14         MS. HANCOCK:  Your Honor, this is the objection to the

15 proof of claim that was filed by Rex Gilbert and by his

16 counsel, Katherine Parker-Lowe.  This is a very different

17 matter.

18         THE COURT:  Is someone here for the Gilberts or on the

19 phone?

20         MS. HANCOCK:  I believe she's on the phone.

21         THE COURT:  All right.

22         MS. PARKER-LOWE:  I'm here, Judge.  Katherine Parker-

23 Lowe from the North Carolina Bar.

24         THE COURT:  Okay, thank you very much.

25         All right, go ahead.  Just make your appearance again

1  for this matter.

2          MS. HANCOCK:  I'm sorry.  Again, my name is Christy

3  Hancock, counsel for GMAC.  In a very brief recitation of what

4  has been a lengthy judicial process in several different

5  courts, this case has a long history; originally the Gilberts

6  took out a 2006 refinance loan on their home in Ocracoke

7  Island, North Carolina.  It's a 525,000-dollar loan.  They

8  defaulted in 2008.

9          In April of 2009, Ms. Parker-Lowe sent a letter to

10 GMAC which requested rescission of that loan under the Truth in

11 Lending Act or TILA.  GMAC declined to rescind, finding no

12 basis under the law for that.

13         A quasi-judicial foreclosure proceeding was instituted

14 in North Carolina in 2009, and the North Carolina court

15 originally found that the foreclosure requirements had been

16 met, and it ordered a foreclosure sale.  The Gil --

17         THE COURT:  It's fair to say that the defendants

18 either in the foreclosure action or the TILA action, haven't

19 fared particularly well when the matters have gone up on

20 appeal.

21         MS. HANCOCK:  Correct, Your Honor.

22         THE COURT:  You've lost both appeals.

23         MS. HANCOCK:  Correct.  So after an unsuccessful -- or

24 actually a successful appeal by the Gilberts, the foreclosure

25 order was overturned, no foreclosure ever occurred.  The

RESIDENTIAL CAPITAL, LLC, ET AL.                    29

1   Gilberts still have title to their property, and they still

2   remain in the home to this day.

3        Before that appellate order came down, however, they

4   filed a new action where they're the plaintiffs against

5   Deutsche Bank trustee, which we believe is the owner of their

6   loan, the substitute trustee, Residential Funding Corp., and

7   GMAC.  That was removed to the Eastern District of North

8   Carolina.  It asserts six causes of action, including TILA,

9   usury, unfair and deceptive trade practices, breach of

10  contract.

11       The defendants moved to dismiss and were originally

12  successful --

13       THE COURT:  And then the Fourth Circuit reversed.

14       MS. HANCOCK:  And the Fourth Circuit reversed --

15       THE COURT:  In part.

16       MS. HANCOCK:  -- nearly every count, but for some

17  origination claims.

18       At this point in time, the case is -- the Fourth

19  Circuit has issued a mandate as to the nondebtor defendants.

20  The Eastern District of North Carolina has elected not to pick

21  the case back up, essentially, I think, feeling it should wait

22  until GMA -- the mandate comes down for GMAC and RFC.  So the

23  cases have not proceeded since about mid-2012.

24       In the interim, the servicing rights --

25       THE COURT:  And I denied a motion to lift the stay.

RESIDENTIAL CAPITAL, LLC, ET AL.                          30

1          MS. HANCOCK:  Yes, Your Honor.

2          THE COURT:  I may regret that, but I denied the motion

3     to lift the stay.

4          MS. HANCOCK:  And in the interim, the only change in

5     the parties' circumstances is that the servicing rights to the

6     loan was transferred to Ocwen.  And so Ocwen Financial has

7     advised the Gilberts that it's the new servicer, and that none

8     of the litigation has moved forward.

9          So the Gilberts have filed a rather substantial proof

10    of claim, roughly six million dollars.  And their counsel has

11    also filed a proof of claim for her attorneys' fees, around

12    83,000 dollars.

13         The original proof of claim did not attach any

14    documentation, we believe, as to the validity or as to the

15    specific breakdown of the claim.  It attached the appellate

16    orders from the state court and the Fourth Circuit, and it

17    attached their complaint.

18         THE COURT:  You know, ordinarily attaching a state or

19    federal court complaint, particularly if that complaint has

20    withstood a motion to dismiss or the dismissal has been

21    reversed by an appellate court, is sufficient for purposes of

22    stating a claim in a bankruptcy case.

23         Let me just sort of cut through the -- see if we can

24    cut to the chase, because there's a lot of issues that are

25    raised here.

1          There's a combination of state law issues and federal

2    and state statutory issues.  As to the TILA claim, the

3    dismissal was reversed by the Fourth Circuit.  Why doesn't the

4    complaint, therefore, state a claim for relief, that unless the

5    automatic stay is lifted here, can be prosecuted in this court?

6    I mean, what -- I'm going to make a generalized comment, not

7    directed at you.

8          I'm getting these objections from the debtor that the

9    books and records don't support a liability.  Well, hello.  I

10   mean, I don't know what that is purporting to do where there

11   was a -- where there was pre-petition litigation that went on

12   and the debtors have not fared all that well so far.  Okay?  To

13   say books and records don't support a liability, really tells

14   me nothing.  And I'm getting that quite often as a response

15   to -- as claim objections.

16         Here, I mean, what I do want to hear from you about

17   specifically is the usury claim.  I do want to hear from both

18   sides about that.  Because your argument is that this is an

19   exempt -- this was an exempt transaction, because the loan

20   exceeded 300,000 dollars, and therefore under North Carolina

21   law, their usury -- it's an exempt loan transaction.  So it

22   seemed to me that there was arguably merit to your argument

23   that the usury claim should be dismissed.

24         MS. HANCOCK:  I believe Your Honor has essentially

25   correctly recited our argument that the North Carolina statute

1    is 29-4 (sic).  It only allows usury claims in the state for

2    loan balances of 300,000 dollars or less.  That's not an

3    argument that was raised in the original motion to dismiss.

4    And interestingly, the Fourth Circuit pointed out that that

5    argument had not been raised, but that it was a good one to

6    review.  And that's the one that we're presenting now.

7            THE COURT:  And there's no -- Ms. Lowe's papers in

8    response don't address that issue.

9            MS. HANCOCK:  Yes, Your Honor.

10           THE COURT:  So it did seem to me that there's been no

11   response filed to your argument that according to North

12   Carolina General Statute 24-9(b), this is an exempt loan

13   transaction, and therefore it's not subject to the state usury

14   law.  And so it would seem to me -- and I'm going to want to

15   hear Ms. Lowe about it -- why shouldn't that claim -- that

16   aspect of the claim be dismissed?

17           With respect to the attempted wrongful foreclosure and

18   civil conspiracy to commit wrongful foreclosure, there's been

19   no foreclosure.  I need a better understanding of what's the

20   claim and what are the damages that are being asserted for

21   that.  That was not evident to me.

22           With respect to the North Carolina Unfair and

23   Deceptive Trade Practices Act, the claimants have argued --

24   alleged that the debtors concealed the true identity of the

25   owner of the Gilberts' note.  Why doesn't that state a claim,

1    at least, that would withstand a motion to dismiss, which is

2    essentially the standard I would apply?  Just let me ask you

3    that.

4             MS. HANCOCK:  Specifically about concealment of the --

5             THE COURT:  Yes.

6             MS. HANCOCK:  -- identity?

7             THE COURT:  Yes.

8             MS. HANCOCK:  Our position would be that the

9    foreclosure case said quite clearly who the plaintiff was.  It

10   was Deutsche Bank as trustee for the Residential loan, and it

11   gave the particular trust name.  That name has been

12   consistently provided to the Gilberts as the owner of their

13   loan.

14            And the North Carolina appellate court did not find

15   that that wasn't the owner of their loan.  It specifically

16   found that the note was not endorsed to that specific name.  It

17   said only Deutsche Bank as trustee, which was common in the

18   industry at the time.  And it found that the evidence was not

19   sufficient to foreclose.

20            THE COURT:  So I regularly -- fairly regularly deny

21   motions to lift the stay when a loan servicer moves to lift the

22   stay and fails to demonstrate who owns the note.  So why isn't

23   that, at this stage, sufficient to state a claim under the

24   state Unfair and Deceptive Practices Act (sic)?  It doesn't

25   mean they prevail on it, but isn't that sufficient to state a

1  claim under the state statute?

2          MS. HANCOCK:  We would disagree, thinking that simply

3  because you can't establish standing to foreclose doesn't mean

4  that you have done anything that is unfair and deceptive.  But

5  I certainly see the Court's position.

6          THE COURT:  I just -- I'm not -- I want to make clear,

7  I'm not stating whether I think the claim -- that they'll

8  prevail on the claim.  The issue now, to me, is akin to a

9  motion to dismiss.  I mean, this was all litigated in state and

10 federal courts.

11         If you had prevailed in the state or federal court on

12 these issues, I certainly wouldn't think it would be

13 appropriate to arrive at a different result.  But where you

14 didn't prevail, either because the court didn't reach the issue

15 or did reach it and ruled against you -- I guess, in part, some

16 of this is surviving this hearing.  Okay?  The question is

17 what, and what's the next steps?

18         With respect to usury, I think I want to hear the

19 other side.  They didn't put in an opposition on it.  It seems

20 to me that you've got the better side of it.  Under the Unfair

21 and Deceptive Practices Act (sic), I have some doubts about the

22 claim, but on the other hand, it would seem I want to hear why

23 you think that claim should be dismissed.

24         Under the North Carolina Debt Collection Act, your

25 argument was that the purported false representation must occur

1    in a legal proceeding.  You say that's not the case here.  And

2    the claimants say that the alleged false representation of the

3    owner of the note was made in the foreclosure proceeding.  That

4    seems to create an issue of fact.  Why is that not so?

5              MS. HANCOCK:  Your Honor, the Unfair and Deceptive

6    Trade Practice claim does have about seven different

7    components.  That's one of them.  Several of the others were

8    based, just again, on the usury claim; basis on the TILA claim,

9    which we say cannot be brought against a loan servicer under

10   TILA's clear language.  It's based on representations made

11   directly to counsel, which we don't believe are recognized

12   under North Carolina law; statements between counsel don't fall

13   under that act.  So I believe that that one component that you

14   were looking at may survive a motion to dismiss.  But she has

15   specifically set out seven different types.

16             And if we are looking at the motion to dismiss

17   standard, I would like to review the attempted wrongful

18   foreclosure claim, because that was only brought up for the

19   first time in her response to the proof of claim objection.

20             THE COURT:  Yeah, I had problems with the attempted

21   wrongful foreclosure.

22             MS. HANCOCK:  Well, and it's 5.25 million of their

23   6-million-dollar claim.  So I would like to focus on that.

24   It's not a cause of action under --

25             THE COURT:  So they could have asked for --

1          MS. HANCOCK:  -- North Carolina law.

2          THE COURT:  -- 100 million.  I mean, it wouldn't -- if

3    the claim -- I mean, there's a difference.  Have they asserted

4    a claim that would withstand a motion to dismiss?  And then how

5    do we proceed from there?  I mean, they could ask for

6    whatever -- the moon and the sun, but that's not why -- I'm not

7    determining today the quantum.

8          First off, they haven't established they'll prevail on

9    it and if they prevail, what the damages would be.  So

10   ordinarily one doesn't strike an ad damnum clause because on

11   the face of it, it seems not possible.  But go ahead.

12         MS. HANCOCK:  I was just going to say, with regard to

13   that -- that claim, we do think it should be dismissed,

14   essentially, because they're -- it's not a valid cause of

15   action under North Carolina law.  North Carolina does recognize

16   wrongful foreclosure, but all of the cases discussing it focus

17   on the completion of the foreclosure.  In fact, that's the date

18   that the claim is triggered is the date your property is

19   conveyed away from you.

20         I've recited some case law discussing the amount of

21   damages.  They also look to either you can move to have the

22   sale set aside or you can move to recover the fair market value

23   of your property.  Neither of those would apply here, because

24   the sale never occurred.  And we've, of course, taken issue

25   with their damages amount, because it appears that they are

RESIDENTIAL CAPITAL, LLC, ET AL.                    37

1    taking the loan value and multiplying it by ten, as a basis of

2    damages, rather than the fair market value of the property that

3    they still live in.

4            THE COURT:  I mean, I'm going to want Ms. Lowe to

5    point out any authority under North Carolina law that would

6    support a cause of action for attempted wrongful forecl -- I

7    understand -- I've looked at the cases that are cited that

8    North Carolina recognizes a cause of action for wrongful

9    foreclosure, but there's been no foreclosure here.

10           MS. HANCOCK:  Correct.

11           THE COURT:  And so I do want to hear from the other

12   side about that.  And your argument and your papers were clear

13   about that.

14           MS. HANCOCK:  And in a related matter, it seems that

15   she is claiming conspiracy to commit wrongful foreclosure, and

16   we've set out the case law that there is no civil action or

17   civil conspiracy in North Carolina.

18           THE COURT:  Well, whether it's -- you know, state law

19   varies from state to state about civil conspiracy, and some

20   states recognize it as a separate cause of action, and some

21   states recognize conspiracy as a theory for vicarious

22   liability.  And is there any North Carolina law that would

23   support vicarious liability for conspiracy -- so wrongful

24   foreclosure, they do recognize a cause of action.

25           MS. HANCOCK:  Um-hum.

RESIDENTIAL CAPITAL, LLC, ET AL.                    38

1           THE COURT:  So if a party is either aiding and

2    abetting or conspires to commit wrongful foreclosure, is that

3    an accepted theory of vicarious liability under North Carolina

4    law, as opposed to a separate cause of action?

5           MS. HANCOCK:  Your Honor, I'm not as familiar with the

6    remainder of the law.  Based on the cases that I did read, I do

7    believe you could bring a civil conspiracy claim, if it is tied

8    to another claim that exists under North Carolina law.  But

9    here, you cannot have civil conspiracy for giving false

10   testimony, specifically, and there is no attempted foreclosure

11   claim --

12          THE COURT:  Right.  Okay.

13          MS. HANCOCK:  -- so we believe the civil conspiracy --

14          THE COURT:  So you say if the attempted foreclosure

15   claim falls, conspiracy --

16          MS. HANCOCK:  Falls.

17          THE COURT:  -- would fall with it.

18          MS. HANCOCK:  Correct.  And to the extent that she's

19   making a claim for civil conspiracy to give false testimony,

20   there is no such claim for that, specifically, under Hawkins v.

21   Webster.

22          THE COURT:  I guess the Fourth Circuit had some

23   questions about an affidavit that GMAC submitted, because the

24   person who submitted it was found to have submitted a false

25   declaration in another matter in Maine, correct?

RESIDENTIAL CAPITAL, LLC, ET AL.                    39

1          MS. HANCOCK:  Yes, Your Honor.

2          THE COURT:  Okay.

3          MS. HANCOCK:  And with regard to the TILA claim, I do

4    believe that's appropriate for the motion-to-dismiss standard

5    we're applying here, because the parties' positions have

6    changed.  GMAC is no longer even the loan servicer.  You cannot

7    sue a loan servicer for damages under TILA, which is not,

8    unfortunately, an argument that was made in the original motion

9    to dismiss.  And also, the Gilbert --

10         THE COURT:  So you think you can get out from under a

11   valid claim for relief by simply transferring the loan

12   servicing rights.  If you still have the loan servicing rights,

13   you would have to acknowledge, in light of the Fourth Circuit

14   opinion, that the complaint stated a valid claim for relief

15   against the debtor.

16         MS. HANCOCK:  No, Your Honor; I misspoke.  What I was

17   trying to say is that there is no claim against a loan

18   servicer, current or past, under TILA.  And what I was trying

19   to say with the servicing rights changing is that the Gilberts

20   still want to rescind their loan, and that that is a cause of

21   action that GMAC --

22         THE COURT:  That's a form of relief.

23         MS. HANCOCK:  -- cannot give them any relief for.

24         THE COURT:  They may not be able to get that relief

25   from GMAC.  But that doesn't -- I guess the question would

RESIDENTIAL CAPITAL, LLC, ET AL.                    40

1    remain, is there some other form of relief that they could

2    obtain?

3            MS. HANCOCK:  We don't believe that there is under

4    TILA.  Specifically, you have to go to the owner of your loan,

5    not the servicer of your loan for TILA damages.

6            THE COURT:  Let me see if I have any other questions.

7    So you had -- you've also -- the Gilberts asserted a breach of

8    contract claim, and --

9            MS. HANCOCK:  Yes, Your Honor.

10           THE COURT:  -- you argued that it fails because no

11   contractual -- the only contractual relationship was between

12   the Gilberts and First National Bank of Arizona and its

13   successors.  And you say GMAC was not a successor, and

14   therefore --

15           MS. HANCOCK:  It is not --

16           THE COURT:  -- could not have breached a contract.

17           MS. HANCOCK:  Correct, it is not a party to the

18   mortgage.  Its contractual relationship is with the investor,

19   which is Deutsche Bank.

20           THE COURT:  But at one point, RFC owned the note;

21   isn't that correct?

22           MS. HANCOCK:  I believe that RFC was only the master

23   servicer of the loan.

24           THE COURT:  No, I thought they had actually -- were

25   there warehouses?  I thought that RFC owned the note at one

RESIDENTIAL CAPITAL, LLC, ET AL.                    41

1   point in time.  Maybe only briefly, but it owned the note at

2   one point in time.

3            MS. HANCOCK:  I'm not sure, Your Honor.  I know that

4   they're

5            THE COURT:  Anybody --

6            MS. HANCOCK:  -- the master servicer.

7            THE COURT:  -- on the debtors' side that can shed some

8   light on that?

9            MS. HANCOCK:  There's a pooling and servicing

10  agreement that came into existence just a month or so after

11  this loan was taken out, and it was specifically between

12  Deutsche Bank, as trustee, and Residential Funding Corp., as

13  the master servicer.  And that was that --

14           THE COURT:  Who securitized this loan?

15           MS. HANCOCK:  It is with the Residential Accredited

16  Loans, Inc.

17           THE COURT:  That's a debtor; RALI is a debtor.  I

18  thought that one of the debtors securitized the Gilbert loan,

19  and to do that, they owned it for a brief period of time.  I

20  think it was Residential Funding, Corp. that owned the loan,

21  which puts RFC in the chain of ownership of the promissory

22  note.  And is that sufficient to support the breach of contract

23  claim?

24           MS. HANCOCK:  Your Honor, I don't believe that it is,

25  because the period of time in which RALI could have owned it

1    was between May of '06 and July of '06.  They did not -- they

2    say the breach is because the rescission request was denied.

3    That did not happen until three years later.  So there's been

4    no alleged wrongdoing in the two-month window of time in which

5    RALI could have owned the loan.

6            THE COURT:  All right.  Address the attorneys' fees

7    claim.

8            MS. HANCOCK:  The attorney's fees claim is premised on

9    two of the causes of action in the case, the first being TILA.

10   We think it's primarily -- even though it's not articulated

11   fully, TILA does allow for attorney's fees if the defendant has

12   been found to violate it.  And then also under North Carolina

13   law, the Unfair and Deceptive Trade Practices claim allows for

14   an award of attorney's fees.  And so we have piggy-backed the

15   argument that if GMAC cannot be liable under TILA for damages,

16   that it cannot be liable for the attorney's fees claim, and

17   similarly, with the debt collection practices claim.

18           We've also pointed out that Ms. Parker-Lowe has

19   submitted her invoices -- they're very detailed -- her invoices

20   for her entire representation of the Gilberts in this matter.

21   And because they're detailed, we can determine that at least

22   15,000 dollars of that was related to defense of the

23   foreclosure case.  The foreclosure case was brought by Deutsche

24   Bank.  It was the only party other than the Gilberts.  We do

25   not believe that defense of the Gilberts' foreclosure case can

1  be a cause of action under TILA.

2          THE COURT:  Let me ask you this, if the TILA claim

3  survives against the debtors -- if the TILA claim survives

4  against the debtors, and if Ms. Parker-Lowe, her client, the

5  Gilberts, prevail on the claim against the debtors with respect

6  to the TILA claim, under the statute, she'd be entitled to

7  attorney's fees, correct?

8          MS. HANCOCK:  Correct.

9          THE COURT:  So it's really a contingent claim for

10 attorney's fees.  Can I resolve the issue about whether or not

11 she's entitled to attorney's fees without -- I mean, that's

12 going to hinge on whether the Gilberts have stated a claim

13 against the debtors for violation of TILA.

14         MS. HANCOCK:  That's correct, Your Honor.

15         THE COURT:  Okay.  The amount -- so let's assume, for

16 a minute -- only assume -- assume that they've stated a claim

17 against the debtors, one of the debtors, for TILA.  I mean, she

18 put in a very detailed fee statement; only a portion of it

19 might be recoverable, but that's not today's issue.  I mean,

20 what is it you're asking me to do with respect to -- this is

21 not an evidentiary hearing.  The fact that she put in -- I

22 mean, we all know what the total amount of fees that she claims

23 that she incurred on behalf of -- or were incurred by the

24 Gilberts by Ms. Parker-Lowe.  Some of it may ultimately be

25 recoverable; some of it never.  Do you agree with that?

RESIDENTIAL CAPITAL, LLC, ET AL.                    44

1           MS. HANCOCK:  Yes, Your Honor.

2           THE COURT:  Okay.  All right.  Let me hear from Ms.

3   Parker-Lowe.  Thank you.  Go ahead, Ms. Parker-Lowe.

4           MS. PARKER-LOWE:  Good morning, Judge.  I'd like to

5   speak to the Truth in Lending claim, to begin with.

6           THE COURT:  Actually, address the usury claim first,

7   because you didn't respond to that in your papers, and it does

8   seem to me that -- Ms. Hancock, you can have a seat.  You

9   don't --

10          MS. HANCOCK:  Okay.

11          THE COURT:  Ignore Mr. Rosenbaum; you can have a seat

12  while -- I'm sorry, Ms. Parker-Lowe.  Address for me the usury

13  claim, because the debtor made an argument that seems correct

14  on its face.  You didn't respond to it.  Do you disagree that

15  this is an exempt loan under the North Carolina usury statute?

16          MS. PARKER-LOWE:  It does appear to be exempt.  That's

17  why we have the alternative breach of contract claim.

18          THE COURT:  Wait, say that again; I want to make

19  sure -- you think it is exempt or not?

20          MS. PARKER-LOWE:  It is exempt.

21          THE COURT:  Okay.  So --

22          MS. PARKER-LOWE:  That's why we --

23          THE COURT:  -- let me just --

24          MS. PARKER-LOWE:  -- pled the --

25          THE COURT:  Okay.  But let me just stop there, because

1  I want to deal with -- so you agree then that the proof of

2  claim fails to assert a proper claim against the debtors under

3  the North Carolina General Statute, Section 24.9, the usury

4  statute; am I correct?

5          MS. PARKER-LOWE:  Yes, we pled, in the alternative --

6          THE COURT:  Okay.

7          MS. PARKER-LOWE:  -- the breach of contract, which is

8  what happens in North Carolina if you fall, for some reason,

9  outside of -- if the loan is exempt under Chapter 24 or if you

10  fall beyond the very limited statute of limitations for the

11  statutory penalty, then the method is to sue for breach of

12  contract --

13          THE COURT:  Okay.  What's your argument --

14          MS. PARKER-LOWE:  -- for collection of usurious money

15  for money over the stated or agreed rate between the parties.

16          THE COURT:  Well --

17          MS. PARKER-LOWE:  Money that --

18          THE COURT:  -- let me ask you this.  It didn't appear

19  to me that you were arguing that they collected an amount of

20  interest above the stated rate in the promissory note.

21          MS. PARKER-LOWE:  Yes.

22          THE COURT:  Yes, you do claim they did?

23          MS. PARKER-LOWE:  Yes.  Yes.

24          THE COURT:  In what respect?  How did --

25          MS. PARKER-LOWE:  That --

RESIDENTIAL CAPITAL, LLC, ET AL.                    46

1          THE COURT:  What did they --

2          MS. PARKER-LOWE:  That's the argument.

3          THE COURT:  Yeah, well, but what do you have that

4     supports that argument that they collected interest above the

5     stated amount in the promissory note?

6          MS. PARKER-LOWE:  Well, we have more than 115,000

7     dollars buried in the transaction, and we are still at the

8     pleading stage of this, Judge, so we need documents from them

9     to further support that claim.  But --

10         THE COURT:  No, you need --

11         MS. PARKER-LOWE:  -- the affidavit of --

12         THE COURT:  You need some evidence here.  They've come

13    forward and said that they never collected anything beyond the

14    amount stated in the note.  Do you have anything, any evidence

15    at this stage?

16         MS. PARKER-LOWE:  We have our calculations which show

17    that there's more than 115,000 dollars buried in the repayment

18    schedule, which makes that usurious, or a collection of money

19    over the agreed rate.

20         THE COURT:  And how is it that you believe you can

21    state a breach of contract claim against any of the debtors?

22         MS. PARKER-LOWE:  Because they were collecting that

23    money.

24         THE COURT:  And there is -- but there's no privity

25    between -- there's no privity of contract between the debtors

RESIDENTIAL CAPITAL, LLC, ET AL.                    47

1    and the Gilberts.  The note is between the Gilberts and,

2    initially, the original mortgagee, and then the transferees.

3    So whoever holds the note, maybe you've got an argument.  But

4    what's your argument that you have a valid breach of contract

5    claim against the debtors, and which ones, which debtor?

6            MS. PARKER-LOWE:  The servicer, GMAC Mortgage, for

7    collecting money over the agreed rate.

8            THE COURT:  How does that give rise to a breach of

9    contract claim against GMAC Mortgage?

10           MS. PARKER-LOWE:  Because they're collecting money

11   over the agreed rate that the Gilberts agreed to pay.

12           THE COURT:  Well, you may have a contract claim

13   against whoever the counterparty to the contract is, but that's

14   not GMAC Mortgage, is it?

15           MS. PARKER-LOWE:  I think that's left to be

16   determined, and that has to do with the position occupied by

17   GMAC Mortgage and the actions that they took with respect to

18   the Gilberts.  The debtors, specifically GMAC Mortgage, like to

19   say that they were only the servicer and therefore are exempt

20   from Truth in Lending and anything else.  The debt -- the

21   Gilberts' Truth in Lending rescission letter was addressed to

22   the holder of loan number, whatever the Gilberts' number is,

23   care of then counsel.  What came back to the Gilberts on ResCap

24   letterhead from an associate counsel, on behalf of GMAC

25   Mortgage -- not from the noteholder, if there's another

RESIDENTIAL CAPITAL, LLC, ET AL.                    48

 1  noteholder -- was we will not rescind.  GMAC Mortgage acted as

 2  the functional holder of that note, and they're estopped from

 3  claiming the protections of just being a servicer.

 4              THE COURT:  Okay.  I understand --

 5              MS. PARKER-LOWE:  They refuse to honor the rescission.

 6              THE COURT:  Okay.  I understand your argument.

 7              MS. PARKER-LOWE:  And they didn't tell us anybody

 8  else -- we should be going to anybody else.

 9              THE COURT:  Okay.  I understand your argument on that

10  now.  Address for me the attempted wrongful foreclosure and

11  civil conspiracy to commit wrongful foreclosure, because it

12  did -- I guess both sides agree there is a cause of action

13  under North Carolina law for wrongful foreclosure, but no

14  foreclosure has occurred here.  Do you have any case authority

15  that supports a cause of action under state law for attempted

16  wrongful foreclosure?

17              MS. PARKER-LOWE:  There is a -- there are cases,

18  correct, for wrongful foreclosure.

19              THE COURT:  Right.

20              MS. PARKER-LOWE:  To date, I am not aware of any case

21  having been brought for attempted foreclosure; therefore, you

22  cannot say that you cannot state a claim for wrongful

23  foreclosure.

24              THE COURT:  Well, tell me what is the -- what case

25  authority do you believe supports your argument that there is a

RESIDENTIAL CAPITAL, LLC, ET AL.                    49

1   valid cause of action under North Carolina law for attempted

2   wrongful foreclosure?

3            MS. PARKER-LOWE:  Wrongful foreclosure is grounded --

4   is a tort grounded in fraud, and here we have parties

5   proceeding to foreclosure when they are not the parties

6   entitled to foreclose.  They represented that they were the

7   parties entitled to foreclose; that led to all of these events,

8   and that is the basis for that claim.

9            THE COURT:  And what damages or remedy do you believe

10  your clients are entitled to for attempted wrongful

11  foreclosure?  What's the relief you're seeking?

12           MS. PARKER-LOWE:  We are seeking money damages --

13           THE COURT:  And what --

14           MS. PARKER-LOWE:  -- based on the amount of the loan.

15           THE COURT:  Why based on the amount of the loan?

16           MS. PARKER-LOWE:  It may either be the amount of the

17  loan or the amount of the house; I think that they're both

18  about the same at this point.

19           THE COURT:  I mean, I can understand -- I'm not saying

20  I agree with it, but if what you were arguing is they attempted

21  to foreclose, we litigated for three years, they haven't been

22  successful in foreclosing, my clients have incurred X dollars

23  in legal fees and costs and --

24           MS. PARKER-LOWE:  Costs and --

25           THE COURT:  -- other -- just stop.

1          MS. PARKER-LOWE:  -- and emotional --

2          THE COURT:  Stop.

3          MS. PARKER-LOWE:  -- extent --

4          THE COURT:  Stop.

5          MS. PARKER-LOWE:  -- a loss of the use of their bond

6    monies that they put up and other --

7          THE COURT:  Ms. Parker-Lowe?  Ms. Parker-Lowe?

8          MS. PARKER-LOWE:  Yes?

9          THE COURT:  When I'm speaking, don't interrupt me.

10   The result will be the next time we have a hearing you will

11   have to be in my courtroom.  You clearly interrupted while I

12   was speaking.  I know you think that you know what my question

13   was, and you were going to go ahead and answer it before I

14   finished it, but the result will be that the next time you will

15   only appear in this courtroom and not by telephone.  I permit

16   people to appear by telephone when their office is out of

17   state, in order for them and their clients to save money.  But

18   that only works if you abide by the usual rules and not

19   interrupt the Court.  Do you understand?

20         MS. PARKER-LOWE:  Yes, sir.

21         THE COURT:  Tell me what your understanding of North

22   Carolina law is with respect to civil conspiracy.  Is there an

23   action for -- does North Carolina recognize civil conspiracy in

24   connection with wrongful fore -- a completed wrongful

25   foreclosure?

1        MS. PARKER-LOWE:  I'm not sure there is a completed

2   decision on that issue.

3        THE COURT:  Does -- tell me, does North Carolina

4   recognize an independent cause of action for civil conspiracy,

5   or is it a theory of vicarious liability?

6        MS. PARKER-LOWE:  It is vicarious liability.

7        THE COURT:  So your conspiracy claim, as a theory of

8   vicarious liability, would only be viable if you first

9   establish that there is a cause of action for attempted

10  wrongful foreclosure; do you agree with that?

11       MS. PARKER-LOWE:  Yes.

12       THE COURT:  Okay.  Could you respond to Ms. Hancock's

13  argument that there is no liability for a loan servicer with

14  respect to a TILA claim?  I think that was the way she framed

15  it.

16       MS. PARKER-LOWE:  I'm not entirely sure about the

17  argument.  The Fourth Circuit reinstated all of the claims, but

18  for the claim for money damages for the actual disclosure

19  violation, which I don't believe would be assertible against

20  any of the debtors.  As I said earlier, the question turns

21  about GMAC Mortgage's role in this, in terms of their taking it

22  upon themselves to act as the functional holder by responding

23  to the Gilberts' rescission letter, and then refusing -- there

24  had been a statement "we will not rescind" in that letter in

25  response, subjects them to liability under the Act for damages

1    and rescission.  That is a separate independent violation,

2    different from a particular disclosure violation.

3            THE COURT:  How can they -- if they don't own the

4    note, how could they be liable for rescission?  Put damages

5    aside for a minute.  What's the theory on which they can be

6    liable on a rescission claim if they do not own the note?

7            MS. PARKER-LOWE:  They held themselves out as the

8    holder by responding to the letter of rescission addressed to

9    the holder of the note.

10           THE COURT:  What do you -- let's assume that you

11   prevail on the TILA claim, how is someone who doesn't own the

12   note supposed to rescind the transaction?  It seems an

13   impossibility.  It's a separate issue from whether you'd be

14   entitled to damages relief against them, but how does -- I

15   don't -- it's a very practical question; I don't understand how

16   you can get against GMAC the remedy of rescission when they

17   don't have anything they can rescind.

18           MS. PARKER-LOWE:  Their obligation, upon receipt of a

19   rescission notice, if they are not the holder and don't have

20   the ability to unwind the transaction, is to forward that

21   notice to the party that is able to do that, or provide

22   information to the borrower about how to go about that.  That

23   did not happen in this case.

24           THE COURT:  But that would --

25           MS. PARKER-LOWE:  GMAC Mortgage said we will not

1    rescind.

2            THE COURT:  Okay.  Let me see if I have other

3    questions for you.

4            I want to ask you about your North Carolina Debt

5    Collection Act claim.  Is it your position that GMAC made a

6    false representation in a legal proceeding?

7            MS. PARKER-LOWE:  Yes.

8            THE COURT:  What proceeding and what false

9    representation?

10            MS. PARKER-LOWE:  Through its representative Jeffrey

11    Stephan's affidavit in the foreclosure.

12            THE COURT:  And what was the false representation?

13            MS. PARKER-LOWE:  That Deutsche Bank is the owner and

14    holder of the note, which is a legal conclusion which was

15    determined by the North Carolina Court of Appeals not to be so.

16            THE COURT:  Well, did they determine that it wasn't

17    so, or did they determine that the fact had not been

18    established in the trial court in support of foreclosure and

19    therefore it was reversed?  It didn't include a specific

20    finding that Deutsche Bank was not the owner.  It's the issue

21    that comes up in this court with some frequency, where you've

22    got a lift stay, where the moving party fails to come forward

23    with establishing, by a preponderance of the evidence, that

24    it's the loan servicer for the owner of the note.  What I

25    understood the North Carolina Court of Appeals to determine was

RESIDENTIAL CAPITAL, LLC, ET AL.                    54

1   reverse the trial court order permitting the foreclosure to go

2   forward because the record was insufficient to establish that

3   fact, so it goes back to the trial court and they try again.

4   Do you agree with that?

5           MS. PARKER-LOWE:  No, sir.

6           THE COURT:  I'm sorry, you do or you don't?

7           MS. PARKER-LOWE:  No.

8           THE COURT:  All right.  Why not?

9           MS. PARKER-LOWE:  It was reversed and dismissed.

10  The --

11          THE COURT:  Is it dismissed with prejudice, or may

12  they refile a new mortgage foreclosure proceeding and establish

13  that Deutsche Bank is the owner of the note?

14          MS. PARKER-LOWE:  What the court of appeals did was

15  analyze the endorsements on the loans to the note and

16  determined that at least one of those endorsements was

17  defective.  Those endorsements on the note are, as the Court

18  knows, done for the purposes of negotiating the note from one

19  party to another.  It has to be done with authority and in

20  anticipation of that transfer.  There are -- you don't -- and

21  it is a false statement to say that someone who didn't

22  correctly get the note by a correct endorsement has any

23  authority to endorse it or correct it or fix it by themselves.

24          THE COURT:  So what's the consequence?  Is it they own

25  a free house, that no one owns the note, no one can foreclose

1   for payment default?

2           MS. PARKER-LOWE:  No one can foreclose.

3           THE COURT:  Ever?  Is that -- where -- I didn't see

4   that in the opinion of the state court of appeal.  They

5   reversed a trial court decision which it found that they had

6   provided satisfactory proof.  And the court of appeals, I

7   didn't see where they made a specific factual finding to the

8   contrary.  They found that the record was insufficient.  Did

9   they -- where, in the opinion, do they say that we find, as a

10  fact, that Deutsche Bank didn't own the note?

11          MS. PARKER-LOWE:  They say that Deutsche Bank has

12  failed to establish its ownership.

13          THE COURT:  Okay.  That's -- the result, ordinarily --

14          MS. PARKER-LOWE:  That was --

15          THE COURT:  -- in that circumstance, is a remand.  And

16  if Deutsche Bank can come forward with evidence establishing

17  its ownership, is there -- I must have missed something in the

18  opinion, because I didn't see where it said that this finally

19  determines that under no circumstances may Deutsche Bank

20  foreclose on the property.  They found that the trial court

21  record was insufficient, that they hadn't established proper

22  ownership.  Where, in the opinion, am I wrong about?

23          MS. PARKER-LOWE:  You're not wrong.

24          THE COURT:  Okay.

25          MS. PARKER-LOWE:  It doesn't say that in black and

RESIDENTIAL CAPITAL, LLC, ET AL.                    56

1    white in that opinion.  But what the opinion does say is

2    that -- very carefully that the endorsement is not effective.

3    And going back to the method and means designed under the UCC

4    for the transfer and negotiation of notes, to hold to parties,

5    endorsements are supposed to take place in a chain of events,

6    going from party to party to party to party.  And if one is

7    defective, I mean --

8            THE COURT:  All right.  I understand your argument.

9            MS. PARKER-LOWE:  That's -- I mean --

10           THE COURT:  All right.  Anything else you want to add?

11           MS. PARKER-LOWE:  No, sir.

12           THE COURT:  Okay.  Ms. Hancock?

13           MS. HANCOCK:  Your Honor, I'm happy to answer any

14   questions you have, but --

15           THE COURT:  I want to know whether -- I mean, what's

16   happening?  Does Deutsche Bank believe that it owns the note?

17   It set a securitization trust for which they're the trustee,

18   that's correct?

19           MS. HANCOCK:  Yes, Your Honor.  And what's happened

20   since the court of appeals' opinion is the note has been fully

21   endorsed to the exact name of the trust.  And it is still in

22   the custody of the loan servicer, which is now Ocwen.

23           THE COURT:  And who endorsed it?  They went back and

24   they found existing parties who properly -- in your view,

25   properly endorsed the note, and so Deutsche Bank can move

1    forward with a new foreclosure proceeding in North Carolina

2    state court, establish that it's the proper owner of the note,

3    and therefore has standing to foreclose; is that your position?

4           MS. HANCOCK:  Your Honor, I think that's going to be

5    the intention of the owner of the note.  I don't know exactly

6    who endorsed it.  It was likely done by an employee of GMAC who

7    was authorized by Deutsche Bank to complete endorsements, but

8    that is an assumption.  But there is not current foreclosure

9    action against the Gilberts.

10          THE COURT:  All right.

11          MS. PARKER-LOWE:  May I speak to that?

12          THE COURT:  No, not yet.

13          So Ms. Parker-Lowe argues that GMAC's rejection of the

14   rescission notice makes it -- her term was -- the functional

15   holder.  Why is that not so?  What are the Gilberts supposed to

16   do when they send a rescission notice and GMAC sends back

17   saying we reject -- they don't do it because somebody else --

18   make your claim on somebody else?  They don't say who owns the

19   note.  They just say we reject.  On whose behalf did they

20   reject the rescission?

21          MS. HANCOCK:  Your Honor, GMAC was acting as the

22   authorized servicing agent of Deutsche Bank at that time.  The

23   servicer is often the entity who gets rescission requests,

24   reviews them for validity, and makes the determination on them.

25          GMAC has not taken the position that it wasn't

RESIDENTIAL CAPITAL, LLC, ET AL.                          58

1    authorized to determine whether to rescind the loan on behalf

2    of Deutsche Bank --

3            THE COURT:  So --

4            MS. HANCOCK:  -- the owner.

5            THE COURT:  -- GMAC -- excuse me.  I don't know.  I

6    guess one has to go to pooling and servicing agreement or

7    another document and see whether GMAC would have a claim for

8    indemnity against Deutsche Bank if it went ahead and rejected a

9    rescission demand.

10           Do you have any cases that say where a loan servicer

11   acting on behalf of the owner of the note rejects -- wrongfully

12   rejects a rescission notice, that the loan servicer can't be

13   liable in dam -- I still -- I don't understand how they could

14   be liable for rescission, but I certainly understand if

15   somebody could establish damages that that could be viable.

16           MS. HANCOCK:  Your Honor, I just have the case law

17   TILA that says very clearly that there can be no TILA damages

18   against a loan servicer.

19           THE COURT:  Do any of those cases involve a

20   circumstance where the loan servicer improperly rejected a

21   rescission demand?

22           MS. HANCOCK:  Your Honor, I don't know all of the

23   details off the top of my head.  I would like to point out one

24   thing, though, is that the letter that the Gilberts received

25   rejecting the  rescission request that came on GMAC letterhead

1    was on April 24th, 2009.  The foreclosure suit was filed about

2    ten days later on May 9th, and in the very first paragraph it

3    says Deutsche Bank, as trustee, is the holder of your loan --

4              THE COURT:  Okay.

5              MS. HANCOCK:  -- and is the plaintiff.  So we don't

6    believe that that was --

7              THE COURT:  But there have --

8              MS. HANCOCK:  -- misleading to them.

9              THE COURT:  I'm going to look further at the case law,

10   but I find it hard to believe that a loan servicer who receives

11   and responds to a rescission demand in its own name simply

12   can't be liable for damages if it improperly denied the

13   rescission demand.  I don't know.  I want to look at it

14   further.

15             All right.  Let me tell where things -- some of this

16   claim is surviving.  Okay.  I'm going to take in under

17   submission.  The usury claim is being dismissed.  They've

18   acknowledged -- Ms. Parker-Lowe acknowledged -- she argues that

19   the breach of contract claim was pleaded in the alternative for

20   this reason.  I'm going to go through and look claim by claim.

21   But some of this is surviving.

22             And the question is where do we go from here?

23   Essentially, this raises a contested matter.  There are plenty

24   of contested matters with claims asserted against the debtors;

25   it doesn't mean that this one jumps to the front of the line to

RESIDENTIAL CAPITAL, LLC, ET AL.                    60

1    be adjudicated, but you'd need to confer with Ms. Parker-Lowe

2    on a suggested procedure for trying to deal with the Gilberts'

3    claim.

4           Lots of theories asserted in the claim, so something

5    other than usury may get knocked out as well.  I've got to go

6    back and look carefully, but something is surviving here.

7    Okay.  And I don't know whether the debtors have contemplated

8    how they want to handle contested matters involving proofs of

9    claim.  I'm not dictating how this one should be done; it just

10   doesn't automatically jump to the front of the line because I

11   overrule objections, in part, to proofs of claim.

12          MR. WISHNEW:  Your Honor, Jordan Wishnew, Morrison &

13   Foerster, counsel for the debtors.  With regards to your

14   question, as Your Honor discussed with us two weeks ago at the

15   last omnibus hearing with regards to certain proofs of claim,

16   there was a procedure you suggested in terms of submitting

17   proofs to --

18          THE COURT:  Well, that was on loss mitigation; this is

19   different.  This is a different ball game.  This is not going

20   to get dealt with there.  This was a real litigation.

21          MR. WISHNEW:  Sure.

22          THE COURT:  It was going on pre-petition.  It's still

23   going on against non-debtor defendants, although the court

24   seems to not want to move forward with it against the non-

25   debtor defendants.

1         What I discussed about developing procedures to deal

2    with the loss mitigation claims was for dealing with loss

3    mitigation claims, not for dealing with things like this.

4              MR. WISHNEW:  Right.

5              THE COURT:  Okay.

6              MR. WISHNEW:  We're certainly willing to -- we can --

7    we'll speak with -- not only with Ms. Parker-Lowe, but with

8    borrower's counsel about thinking about more omnibus type

9    proce -- or more general procedures for contested matters that

10   we could potentially build into our claims procedures order so

11   that parties know if we have contested matters like this that,

12   as opposed to having a full out argument the first time, we can

13   set scheduling orders to move forward and try and process them.

14             THE COURT:  Well, I'm not -- that may work, may not.

15   Right now I'm dealing with one specific claim from the

16   Gilberts.  And you need to confer -- you or your colleagues

17   need to confer with Ms. Parker-Lowe and see if you can agree

18   upon a manner for proceeding.  There may need to be discovery

19   with respect to this.

20        It's going to take me a little because of the number

21   of other ResCap things on my plate.  Don't expect to get a

22   decision -- written decision in the next couple of days.  Okay.

23             MR. WISHNEW:  Of course, Your Honor.

24             THE COURT:  But it's clear to me that in light of the

25   Fourth Circuit decision, the TILA claim is surviving.  I

1  understand you have other arguments about why you think it

2  should ultimately not prevail, but in light of the Fourth

3  Circuit decision, it's surviving.  In some of the other claims,

4  likewise, you lost in the court of appeals in North Carolina;

5  there's claims that are surviving.  Usury is going.  Some of

6  the others, I've got to pay some more attention to.

7          But okay.  So talk with Ms. Parker-Lowe and see

8  whether you can come to an agreement about how to proceed with

9  respect to the Gilberts' claim.

10          MR. WISHNEW:  Will do, Your Honor.

11          THE COURT:  It wouldn't bother me terribly if the way

12  you decide to proceed with the Gilberts' claim is to rethink

13  your position with respect to lifting the stay to permit -- the

14  problem is that it's both state court and -- well there is no

15  state court litigation pending; it's been dismissed -- to

16  permit the federal court to proceed with the claims that were

17  removed from state court but involved other non-debtor

18  defendants.

19          So I'm not telling you that -- it doesn't make a lot

20  of sense to me to have two courts proceeding on essentially the

21  same claims, yes, against different parties, but -- so in

22  figuring out what to do, it wouldn't -- this would not be the

23  first matter in which parties simply agreed to lift the stay

24  and allow a proceeding to go forward in another court.

25          I don't know whether there are any insurance claims; I

RESIDENTIAL CAPITAL, LLC, ET AL.                    63

1    don't know whether GMAC has indemnity claims against Deutsche

2    Bank under a pooling and servicing agreement for any of the

3    liability that's asserted here.

4              So those are all things that the debtor ought to look

5    at in deciding how it wants to proceed with this specific

6    claim.

7              MR. WISHNEW:  Okay.

8              THE COURT:  Okay.  Thank you, Ms. Parker-Lowe.

9              MS. PARKER-LOWE:  Thank you.

10             THE COURT:  Okay.  Next.

11             MR. WISHNEW:  Your Honor, next on the agenda is the

12   matters under V, beginning on page 18 of today's agenda.

13   Matters 1 through 5 have all been adjourned to future hearing

14   dates.

15             With regards -- there are then, moving to matter

16   number 6, those are the matters scheduled for hearing today.

17             THE COURT:  What page?

18             MR. WISHNEW:  I'm sorry.  22, Your Honor, beginning

19   the debtors' twenty-fourth omnibus objection.

20             THE COURT:  Okay.

21             MR. WISHNEW:  If I could, Your Honor, I'll address the

22   uncontested matters and then move on to the contested matters.

23             THE COURT:  Sure.

24             MR. WISHNEW:  Thank you.  First, with regards to item

25   6, the twenty-fourth omnibus objection, that matter is

RESIDENTIAL CAPITAL, LLC, ET AL.                    64

1   uncontested.  We submitted an order to chambers yesterday

2   afternoon for Your Honor's consideration.

3           THE COURT:  All right.  Just give me a second.  All

4   right.  Court has reviewed the twenty-fourth omnibus objection

5   seeking to disallow and expunge all claims listed on Exhibit A

6   because the claims have reportedly been amended or superseded

7   by at least one subsequently filed corresponding claim filed by

8   or on behalf of the same creditor.  The objection is supported

9   by the declaration of Deanna Horst, the senior director of

10  claims management for ResCap.  It's attached to the omnibus

11  objection as Exhibit 1, granting the requested relief but still

12  leave the claimants with surviving subsequently filed claims.

13          The objection is uncontested and it does not include

14  any borrower claims.

15          The Court sustains the twenty-fourth omnibus

16  objection.

17          MR. WISHNEW:  Thank you, Your Honor.  That moves us to

18  the next matter, the twenty-fifth omnibus objection.  A similar

19  objection but this time dealing with borrower claims, also

20  amended and superseded.  This matter is also uncontested at

21  this point in time.

22          THE COURT:  All right.  Court has reviewed the twenty-

23  fourth (sic) omnibus objection.  The debtors seek disallow and

24  expunge all claims listed on Exhibit A because they've

25  reportedly been amended or superseded by at least one

1    subsequently filed corresponding claim filed by or on behalf of

2    the same creditor.  The objection is supported by the

3    declaration of Deanna Horst that's attached as Exhibit 1,

4    granting the requested relief but still leave the claimants

5    with surviving subsequently filed claims.

6            The objection is uncontested and it only includes

7    borrower claims.

8            Since no borrowers filed responses to the objections

9    and the surviving claims will be left intact, the Court

10   sustains the twenty-fourth (sic) omnibus objection.

11           MR. WISHNEW:  Sorry, Your Honor.  Just for the record,

12   I think that was twenty-fifth omnibus.

13           THE COURT:  I'm sorry, twenty-fifth.  You're right.

14           MR. WISHNEW:  Okay.  Thank you, Your Honor.  Just

15   skipping ahead to item 10 on the agenda, this is on page 25,

16   the twenty-eighth omnibus objection to claims.  This deals with

17   non-borrowers, simply books and records, and the assertion of

18   no liability.  I believe the Exhibit A to the order sets forth

19   the reasons for those --

20           THE COURT:  Right.

21           MR. WISHNEW:  -- for those proposed expungements and

22   disallowances.

23           THE COURT:  Right.

24           MR. WISHNEW:  This matter is also not contested.

25           THE COURT:  In the twenty-eighth omnibus objection,

1    the debtors seek to disallow and expunge all claims listed on

2    Exhibit A because the debtors' books and records do not reflect

3    any liability for the claims.  The debtors assert that they

4    diligently analyzed the claims and compared the claim to their

5    books and records.  The objection is supported by the

6    declaration of Deanna Horst, which is attached to the objection

7    as Exhibit 1.

8            Exhibit A provides the reasons for the disallowance of

9    each claim.  For example, one claim involves a contract dispute

10   with nondebtor, Ally Financial.  Another claim states that the

11   debtor did not comply with a confirmed plan of reorganization.

12   That should only have happened; there is no confirmed plan of

13   reorganization at this point.

14           Most of the claims listed on Exhibit A seek payment of

15   taxes but the debtors respond that after Ally Financial became

16   a bank holding company, Ally and subsidiaries, including the

17   debtors, were not subject to the disputed taxes.

18           The objection is uncontested and does not involve any

19   borrower claims.

20           The Court sustains the twenty-eighth omnibus

21   objection.

22           MR. WISHNEW:  Thank you very much, Your Honor.  Next

23   matter would be item 11 on page 25 of the agenda, the twenty-

24   ninth omnibus objection.  This deals with seven late-filed

25   claims, claims filed weeks if not months after the bar date of

RESIDENTIAL CAPITAL, LLC, ET AL.                    67

1  November, 2012.  This matter is -- also deals with nonborrowers

2  and, like the others, it is not contested.

3          THE COURT:  All right.  The twenty-ninth omnibus

4  objection, the debtor seeks to disallow and expunge all claims

5  listed on Exhibit A because they were filed after the bar date.

6  The objection is supported by the declaration of Deanna Horst

7  is attached to the objection as Exhibit 1.  The bar date for

8  most creditors to file proofs of claim was November 16th, 2012,

9  and the bar date for government entities was November 30th,

10 2012.

11         Of the claims listed on Exhibit A, one individual

12 filed a claim on November 30, which was past the bar date for

13 individual creditors.  The remaining claims were filed in 2013.

14         The objection is uncontested.  It does not include any

15 borrower claims.

16         The debtors' twenty-fourth -- twenty-ninth omnibus

17 objection is sustained.

18         MR. WISHNEW:  Thank you very much, Your Honor.  That

19 brings us back to the two contested omnibus matters on the

20 calendar for today.  I'm referencing item 8 on page 23 of the

21 agenda, the twenty-sixth omnibus objection, borrower claims

22 with insufficient documentation.

23         There are -- there were three responses rece -- I'm

24 sorry -- four responses received.  Only one of those is going

25 forward today, that the claim of Merlyn Webster.  The other

RESIDENTIAL CAPITAL, LLC, ET AL.                    68

1   matters, Ms. Marry Lynn Weber, Fannie Kendrick Dietrich, and

2   Juana Cerna have been adjourned to future hearing dates.

3           With regards to Mr. Webster's claim, Mr. Webster's

4   claim is basically a 12,000-dollar unsecured claim for alleged

5   overpayments related to his payoff of his loan back in 2005.

6   In response to the claimant's allegations, the debtors put in a

7   supplemental declaration of Ms. Horst in which we go through

8   the payoff statement that was given to Mr. Webster in 2005 and

9   paid off less than two weeks later.

10          He alleged that we changed terms.  The only item we

11  believe that he might be referring to is an escrow balance that

12  was charged to him in excess of 7,000 dollars.  And the reason

13  for that is in 2003 and 2004, taxes -- county and state taxes

14  were not paid.  So in order to protect the property, the

15  debtors made those payments for Mr. Webster and charged him for

16  it when the loan was paid off.

17          All other fees, as itemized in Ms. Horst's

18  supplemental declaration are fair, reasonable, appropriate, and

19  consistent with general practice.  And we believe, moreover,

20  since Mr. Webster has not quantified the 12,000 dollars of

21  damages, and we can only identify what is 7- or 8,000 dollars

22  greater than the principal outstanding balance at the time of

23  the payoff, we believe that the payoff was appropriate; there

24  was no overpayment; no monies are owing to Mr. Webster, and

25  would believe that the objection is appropriate.

RESIDENTIAL CAPITAL, LLC, ET AL.                    69

1          (Pause)

2               THE COURT:  Where do I find -- you refer to the

3     declaration that goes through the payment history.  That's what

4     I'm not finding.  I want to see that.

5               MR. WISHNEW:  Sure.  May I approach, Your Honor?

6               THE COURT:  Yeah, please.

7          (Pause)

8               THE COURT:  So let me ask, did the borrowers --

9     special borrowers' counsel have any communications with -- I

10    don't know whether it's Mr. or Mrs. Webster.

11              MR. WISHNEW:  I've made the assumption, Your Honor,

12    but it could be either.

13              THE COURT:  It could -- Merlyn Webster, I just don't

14    know.  Mr. Nosek?

15              MR. NOSEK:  Your Honor, Good morning.  Robert Nosek,

16    SilvermanAcampora, special borrowers' counsel to the creditors'

17    committee.  After exchanging some e-mails trying to ascertain

18    the proper phone number, our office did speak with Mr. Webster

19    on September 20th.

20              THE COURT:  It is a mister?

21              MR. NOSEK:  That's who our --

22              THE COURT:  Okay.

23              MR. NOSEK:  -- office spoke with --

24              THE COURT:  All right.

25              MR. NOSEK:  -- was Mr. Webster.   I would -- just to

RESIDENTIAL CAPITAL, LLC, ET AL.                    70

1  talk about his objection to -- or his response to the

2  objection.  He indicated to us that he wanted the Court to

3  decide.  He wanted to move forward with his objection.  We were

4  not able to reach a resolution with him --

5              THE COURT:  Did --

6              MR. NOSEK:  -- on the phone.

7              THE COURT:  Did you have the reply that goes through

8  the explanation for the payoff amounts and the shortfall and

9  the escrow at that time?

10             MR. NOSEK:  Your Honor, I do not know.  I can call my

11 office and ask the person that actually conducted the phone

12 call.  I don't --

13             THE COURT:  Well --

14             MR. NOSEK:  -- have that information --

15             THE COURT:  -- all right.

16             MR. NOSEK:  -- with me right now.

17             THE COURT:  Okay.  So the Court has reviewed the

18 debtors' omnibus reply in support of the twenty-sixth -- it's

19 in support of the twenty-sixth and twenty-seventh omnibus

20 objection.

21             But specifically with respect to the objection of the

22 claim of Merlyn H. Webster in the twenty-sixth omnibus

23 objection, the response that Mr. Webster filed to the objection

24 to the claim asserts that -- he alleges that "shady

25 manipulation of mortgage practices" -- he's complaining that he

1  wasn't credited with -- in the payoff, he wasn't credited with

2  the proper amounts.

3       The reply -- the omnibus reply, which attaches a

4  declaration of Deanna Horst, dated September 20th, 2013 -- it

5  appears as ECF docket number 5130-3 -- in paragraph 4 has a

6  detailed review of the payoff statement and related records.

7  And I won't read the whole thing, but it -- and it itemizes it

8  and shows that the claimant had to pay $56,897.80 to pay his --

9  to satisfy the amount of this loan in full, and alleges that

10  there was a shortfall of $7,227.26 cents in the escrow account,

11  and it -- which was the result of two reasons -- this is in

12  paragraph 5 of that declaration, that the claimant was past due

13  on his 2003/2004 county taxes, and that GMAC paid the taxes in

14  the amount of $7,008.60 on February 25th, 2005, in order to

15  prevent a tax lien from being recorded on the property.

16       And second, G -- this is also in that same paragraph

17  5 -- that GMAC obtained lender placed insurance and paid

18  premiums of $718.66 on February 3, 2005.

19       Based on -- I won't read the rest of it.  But based on

20  that Horst declaration, the Court is satisfied that it is --

21  that the debtor has overcome with competent evidence the

22  presumption that would arise from the proof of claim itself and

23  that Mr. Webster has not provided sufficient evidentiary

24  support to overcome the showing that the debtors made.

25       So the twenty-sixth omnibus objection with respect to

1  the Webster claim is sustained.

2          MR. WISHNEW:  Thank you, Your Honor.  We will,

3  after --

4          THE COURT:  Okay.

5          MR. WISHNEW:  -- the hearing concludes today, submit

6  an order with regards to the entirety of the twenty-sixth --

7          THE COURT:  Okay.

8          MR. WISHNEW:  -- omnibus.

9          THE COURT:  And I'll return this to you after you're

10  done.

11          MR. WISHNEW:  Thank you, Your Honor.

12          THE COURT:  All right.

13          MR. WISHNEW:  That moves us to the final matter under

14  the omnibus claims objections, item number 9 on page 24, the

15  twenty-seventh omnibus objection to claims.  Borrow -- again,

16  borrower claims with insufficient documentation.

17          We received six responses to this.  Four of them are

18  going forward.  The other matters have been adjourned to future

19  dates.  The first matter -- the first claim -- claims going

20  forward deal with Mr. and Mrs. Zenaida and Ronaldo (sic)

21  Valencia, claim numbers 2869, 2872, and 2874.

22          The proofs of claim submitted by these parties appear

23  to be essentially a claim in the amount of their outstanding

24  mortgage.  They attach either account statements, or notes, or

25  similar documentation to -- in which the number in the backup

RESIDENTIAL CAPITAL, LLC, ET AL.                         73

1    corresponds to the number in the mortgage.

2            Just as a general matter, the debtors are not seeking

3    to invalidate the mortgages in these proceedings or by seeking

4    to disallow and expunge the claims.  All the debtors are

5    asserting at this point is that they do not have a liability to

6    these parties on account of the outstanding mortgage.

7            The claimants have not asserted any specific

8    allegations of wrongdoing or damages otherwise due and owing by

9    the debtors to the borrowers.  And so we would assert that the

10   claim -- or that the objection should be sustained.  And I

11   would just add that a copy of a letter sent yesterday by fax to

12   our -- yesterday evening to our office by fax, which I believe

13   our office sent to chambers earlier this morning, confirms that

14   the one claim, claim 2874, where originally the claimants had

15   asserted a discrepancy in the interest rate whether it was --

16           THE COURT:  Yeah.

17           MR. WISHNEW:  -- five percent --

18           THE COURT:  They've -- I saw it.  They acknowledge

19   that the interest rate was correct.

20           MR. WISHNEW:  Correct, Your Honor.

21           THE COURT:  And they apologized for having raised it;

22   they didn't realize it.  I read their reply.

23           MR. WISHNEW:  Thank you, Your Honor.  So I think at

24   this point, there really is no dispute or alleged damages that

25   exist by these claimants against the debtors.  And so the

RESIDENTIAL CAPITAL, LLC, ET AL.                    74

1    objection as to these claims, we assert, should be permitted

2    and allowed.

3            THE COURT:  Let me just back up for one second.  I

4    didn't ask this when I dealt with the Webster claim, but is

5    anybody appearing on behalf of Mr. Webster?  I -- looking at

6    the sign-in sheet for telephone appearance, there is no

7    appearance, but I just want to confirm that.  I didn't

8    specifically ask at the time.  Is anybody appearing for

9    Webster?

10           All right.  Is anybody appearing for the Valencias?

11           All right.  The Court has reviewed -- this is in the

12   twenty-seventh omnibus objection.  And the Court has reviewed

13   the papers with respect to the twenty-seventh omnibus

14   objection.  And I think the only question was with respect to

15   claim 2874 as to whether the debtors had collected interest at

16   a different rate than stated in the note, and as Mr. Wishnew

17   indicated and as the Court saw in the most recent filing by the

18   Valencias, they acknowledged that they were in error about it,

19   that it was the correct rate.

20           So the objection to the Valencias' claim is sustained;

21   it's claim 2874.

22           MR. WISHNEW:  Thank you, Your Honor.  That brings us

23   to the next matter, which is the claims of Norma and William

24   Wootton, claim numbers 2617, 2618, 2619, and 2620.  These

25   claims are similar in character to those of the Valencias',

RESIDENTIAL CAPITAL, LLC, ET AL.                    75

1   simply a claim in the amount of the outstanding mortgage

2   balance.  Documentation in support of the claim includes a note

3   or a current account statement.

4          Otherwise there are no assertion of damages against

5   the debtors.  And we believe that the -- any response that was

6   submitted by the Woottons in support of their objection or

7   their response to the claims objection doesn't define such

8   damages.  So as with the Valencia's claims, we would ask that

9   these claims similarly be expunged from the claims register.

10          THE COURT:  All right.  Is anyone is appearing for

11  Norma and William Wootton?

12          All right.  No appearance having been made, the

13  Woottons filed four proofs of claims, each relating to mortgage

14  notes on separate properties.  Each proof of claim lists the

15  stated basis as "mortgage note".  The Woottons' response to the

16  debtors' objection attached loan-related documents, states that

17  GMAC originated and serviced the Woottons' loans.  The response

18  also states that the Woottons refinanced one of the loans

19  through Navy Federal Credit Union, and GMACM was paid

20  $267,580.50.

21          Nowhere in the proofs of claim or in the responses do

22  the Woottons articulate the basis for their assertion that the

23  debtors owe them anything.  Since the Woottons have failed to

24  state a basis for their claims, other then "mortgage note", the

25  Court sustains the debtors' twenty-seventh omnibus objection

RESIDENTIAL CAPITAL, LLC, ET AL.                    76

1   with respect to the Wootton claims.

2          MR. WISHNEW:  Thank you, Your Honor.  The second to

3   last matter is the claim of Joanne Goolsby, claim number 1349.

4   This deals with a line a credit.  Again, the line of credit

5   statement is attached to the claim.  The debtors, at this

6   point, based on their search of books and records, have not

7   found any outstanding liability due and owing to this borrower.

8   The line of credit is currently being serviced by Ocwen.

9          And at this point, we would submit that the evidence

10  offered by the claimants in support of the claim is simply they

11  have an outstanding line of credit, but there's no specific

12  allegation of damages against the debtors.

13         THE COURT:  All right.  Is anybody appearing for

14  Joanna Goolsby?

15         Mr. Nosek?

16         MR. NOSEK:  Your Honor, on behalf of the committee,

17  not appearing for Mrs. --

18         THE COURT:  Yes.

19         MR. NOSEK:  -- Goolsby, but I did want to let the

20  Court know that we did speak with her on September 20th, and

21  during that phone call, she indicated to us that she was okay

22  with the expungement of her claim, but she didn't have -- I

23  believe she didn't have a computer, so she wasn't able to

24  return a withdrawal of response.

25         THE COURT:  Okay, all right, thank you.

RESIDENTIAL CAPITAL, LLC, ET AL.                    77

1         MR. NOSEK:  And we told her that we would represent

2    that to the Court, and we even called back yesterday to

3    reconfirm, and we didn't receive a call back from her.

4         THE COURT:  All right.  Thank you very much, Mr.

5    Nosek.

6         All right, the Court has reviewed the debtors'

7    objection to the claim, and I appreciate Mr. Nosek's reporting

8    on his conversation with Ms. Goolsby.

9         I'm going to go ahead and sustain the objection, since

10   no formal withdrawal of the objection has been filed, but

11   because there is no basis for the assertion of the claim that's

12   been provided in connection with the claim.  So the debtors'

13   objection in the twenty-seventh omnibus objection to the

14   Goolsby claim is sustained.

15        MR. WISHNEW:  Thank you very much, Your Honor.  Lastly

16   is the claim of Marcus Harris, claim number 1091.  Again, this

17   is a proof of claim where the backup corresponds to the

18   outstanding mortgage balance on the note.  And the response --

19   interestingly, wasn't filed by the claimant, it was filed by a

20   party who appears to assert a secured interest against the

21   claimant.

22        THE COURT:  Phi Rah Hotep-El.

23        MR. WISHNEW:  I applaud Your Honor, for I couldn't

24   pronounce it myself.  So I think at this point the response

25   does not go to the merits of the objection.  Whatever rights

RESIDENTIAL CAPITAL, LLC, ET AL.                    78

1   Mr. Hotep-El might have against Mr. Harris are unaffected by

2   the debtors' objection, and we would ask that the objection be

3   sustained.

4          THE COURT:  Anybody appearing for Mr. Harris?  Is

5   anybody appearing for Hotep-El?  El is E-L.  Hotep --

6   H-O-T-E-P, hyphen, E-L.

7          The Court has reviewed the debtors' objection to the

8   Harris claim, has reviewed the response by Phi, which is P-H-I,

9   Rah, R-A-H, Hotep-El, claiming to be a secured party, asserts

10  that there were UCCs filed, et cetera.  Sustaining the

11  objection doesn't alter, what if any, rights Mr. Hotep-El may

12  have, so that's not being decided, but the objection to the

13  claim is sustained.

14         MR. WISHNEW:  Thank you very much, Your Honor.  As

15  with the twenty-sixth omnibus objection, counsel will submit an

16  order on the twenty-seventh omnibus objection to chambers after

17  the hearing.

18         THE COURT:  Okay, thank you.

19         MR. WISHNEW:  I think that concludes all of the items

20  under V, the omnibus claims objections.  I believe that that

21  only leaves adversary proceeding matters in VI.  And I'll turn

22  the podium over to my colleague, Mr. Rosenbaum.

23         THE COURT:  Thank you.

24         MR. ROSENBAUM:  Your Honor, Norm Rosenbaum, Morrison &

25  Foerster, for the debtors.  Your Honor, these are two almost

1   identical motions to dismiss pending adversary proceedings.

2          The first is in Lytle v. GMAC Mortgage, LLC.  That's

3   adversary proceeding 12-02069.  Your Honor, we filed a motion

4   specifically under the adversary procedures order that was

5   approved by the Court.  That's docket number 3293.  As provided

6   for in the motion, as well as in the declarations in support,

7   the plaintiff here has failed to comply with any of the

8   procedures set forth in the order.  They've been provided

9   substantial notice and an opportunity to engage, and they

10  failed to do so.  On that basis, and as provided for in the

11  supplemental adversary procedures order, we move to dismiss.

12         THE COURT:  All right.  The Lytle -- anybody from

13  Lytle appearing?

14         The Lytle adversary is 12-02069.  On February 27th,

15  2013, the Court entered an order, which is at ECF docket number

16  12, denying the plaintiff's motion to proceed in forma

17  pauperis, and directing that the plaintiff pay the adversary

18  proceeding filing fee in full in fourteen days.  The order

19  stated in all caps, "IF THE PLAINTIFF FAILS TO TIMELY PAY THE

20  FILING FEES IN FULL, THE COURT MAY DISMISS THE PLAINTIFF'S

21  ADVERSARY PROCEEDING."

22         In addition, as Mr. Rosenbaum indicated, this

23  adversary proceeding is subject to the applicability -- is

24  subject and applicable to the supplemental adversary proceeding

25  procedures, which is at E -- the notice of the procedures is at

1    ECF docket number 16.  On May 28th, 2013, the defendant filed a

2    progress report, which is at ECF docket number 18, and that

3    which was required by the supplemental adversary proceedings

4    rule -- procedures.  And Lytle has failed to comply with any of

5    it.  The motion to dismiss the complaint is granted.

6            MR. ROSENBAUM:  Thank you, Your Honor.  The next

7    matter is Williams -- the next adversary proceeding is Williams

8    v. GMAC Mortgage, LLC.  That's adversary proceeding number 13-

9    01309.  This is substantially, if not almost identical, to the

10   Lytle matter, Your Honor.  Mr. -- the plaintiff, Mr. Williams

11   here, has failed to comply with the adversary procedures.  He's

12   been provided substantial notice.

13           We move to dismiss on that basis, as well as failure

14   to properly serve the summons and complaint.  I would note that

15   this was, I believe, Mr. Williams' second adversary proceeding,

16   and the first was dismissed, I believe, with prejudice, Your

17   Honor.  So, we would ask that the -- this be dismissed as well.

18           THE COURT:  All right.  So, this is Williams v. GMAC

19   Mortgage, LLC, 13-01309.  I -- quite honestly, I'm not sure why

20   you didn't move to dismiss with prejudice on res judicata

21   grounds.

22           Williams had commenced a previous adversary

23   proceeding, case number 12-01896.  That was a complaint filed

24   on September 26th, 2012.  That complaint was substantially the

25   same as this one.  And by order dated February 5, 2013, the

 1  Court dismissed the adversary proceeding with prejudice,

 2  pursuant to Rule 12(b)(5) for insufficient service, and

 3  12(b)(6) for failure to state a claim upon which relief may be

 4  granted.

 5          That argument is not raised in the debtors' motion to

 6  dismiss.  So I'm going to go ahead on the grounds that have

 7  been asserted.  He didn't -- Williams didn't comply with the

 8  adversary proceeding rules, and I'm going to dismiss, but I'm

 9  not sure that's -- if he comes back again, will somebody argue

10  res judicata, so we can put this to rest?  I --

11          MR. ROSENBAUM:  Absolutely, Your Honor.

12          THE COURT:  Dismissing for lack of following the

13  procedures is not going to be a dismissal with prejudice, if he

14  comes back and does this a third time.

15          MR. ROSENBAUM:  We would do so, Your Honor.

16          THE COURT:  Okay.

17          MR. ROSENBAUM:  Your Honor, I believe that concludes

18  the agenda for this morning.  Thank you very much.

19          THE COURT:  Okay, anybody have anything else they want

20  to raise?

21          We're adjourned.  Thank you very much.

22          MR. ROSENBAUM:  Thanks, Your Honor.

23          IN UNISON:  Thank you, Your Honor.

24      (Whereupon these proceedings were concluded at 11:55 AM)

25

```
 1
 2                        I N D E X
 3                        RULINGS
 4                                         Page    Line
 5  Examiner's Motion for Discharge from Duties    13      21
 6  etc., Granted.
 7  Gilbert usury claim is dismissed.             59      17
 8  Twenty-fourth omnibus objection is sustained  64      15
 9  Twenty-fifth omnibus objection is sustained.  65      13
10  Twenty-eighth omnibus objection is sustained. 66      20
11  Twenty-ninth omnibus objection is sustained.  67      17
12  Twenty-sixth omnibus objection with respect   71      25
13  to Webster claim is sustained.
14  Twenty-seventh omnibus objection with respect 74      20
15  to claim 2874 is sustained.
16  Debtors' twenty-seventh omnibus objection     75      25
17  sustained with respect to the Wootton claims
18  Debtors' twenty-seventh omnibus objection     77      13
19  sustained with respect to the Goolsby claim
20  Debtors' twenty-seventh omnibus objection     78      12
21  sustained with respect to the Harris claim
22  Debtors' motion to dismiss adversary complaint 80      5
23  of Lytle v. GMAC Mortgage is granted
24  Debtors' motion to dismiss adversary complaint 81      8
25  of Williams v. GMAC Mortgage is granted
```

1

2                           C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   PENINA WOLICKI

12   AAERT Certified Electronic Transcriber CET**D 569

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  September 25, 2013

19

20

21

22

23

24

25

# #

**#4714 (1)**
3:17
**#4715 (1)**
3:22
**#607 (1)**
5:22

# $

**$267,580.50 (1)**
75:20
**$56,897.80 (1)**
71:8
**$7,008.60 (1)**
71:14
**$7,227.26 (1)**
71:10
**$718.66 (1)**
71:18

# *

**\*4 (1)**
15:1

# /

**/Defendants' (1)**
4:21

# [

**[Docket (1)**
3:5

# A

**abetting (1)**
38:2
**abide (1)**
50:18
**ability (1)**
52:20
**able (6)**
19:18,22;39:24;
52:21;70:4;76:23
**above (2)**
45:20;46:4
**absent (1)**
14:16
**Absolutely (1)**
81:11
**accepted (1)**
38:3
**accepting (1)**
16:22
**accidentally (1)**
12:18
**according (1)**
32:11

**Accordingly (1)**
14:15
**account (4)**
71:10;72:24;73:6;
75:3
**Accredited (1)**
41:15
**acknowledge (2)**
39:13;73:18
**acknowledged (3)**
59:18,18;74:18
**act (11)**
10:15;21:2;28:11;
32:23;33:24;34:21,
24;35:13;51:22,25;
53:5
**acted (1)**
48:1
**acting (2)**
57:21;58:11
**action (27)**
24:22;25:4,11,17;
27:9;28:18,18;29:4,
8;35:24;36:15;37:6,
8,16,20,24;38:4;
39:21;42:9;43:1;
48:12,15;49:1;
50:23;51:4,9;57:9
**actions (1)**
47:17
**actual (1)**
51:18
**actually (6)**
19:13;25:20;
28:24;40:24;44:6;
70:11
**ad (1)**
36:10
**add (2)**
56:10;73:11
**addition (1)**
12:12;79:22
**additional (2)**
12:25;17:25
**address (6)**
32:8;42:6;44:6,12;
48:10;63:21
**addressed (2)**
47:21;52:8
**adjourned (5)**
24:16;63:13;68:2;
72:18;81:21
**adjudicated (1)**
60:1
**admitted (2)**
16:3;20:14
**Adversary (23)**
4:18,20,21;5:2,5;
78:21;79:1,3,4,11,
14,17,21,23,24;80:3,
7,8,11,15,22;81:1,8
**advised (1)**
30:7

**advisors (1)**
11:11
**affidavit (3)**
38:23;46:11;53:11
**afternoon (1)**
64:2
**Again (11)**
16:7;24:4;27:25;
28:2;35:8;44:18;
54:3;72:15;76:4;
77:16;81:9
**against (42)**
16:10;17:14;
18:25;19:1;22:1,6,
13,24;23:15;26:16,
24;29:4;34:15;35:9;
39:15,17;43:3,4,5,
13,17;45:2;46:21;
47:5,9,13;51:19;
52:14,16;57:9;58:8,
18;59:24;60:23,24;
62:21;63:1;73:25;
75:4;76:12;77:20;
78:1
**agenda (7)**
10:6;63:11,12;
65:15;66:23;67:21;
81:18
**agent (1)**
57:22
**ago (2)**
26:9;60:14
**agree (7)**
43:25;45:1;48:12;
49:20;51:10;54:4;
61:17
**agreed (8)**
13:13,16;45:15;
46:19;47:7,11,11;
62:23
**agreement (4)**
41:10;58:6;62:8;
63:2
**Agreements (1)**
3:4
**ahead (12)**
20:11,18;23:20,
22;27:25;36:11;
44:3;50:13;58:8;
65:15;77:9;81:6
**aiding (1)**
38:1
**akin (1)**
34:8
**al (3)**
4:19;7:13;8:11
**ALDRIDGE (1)**
8:10
**allegation (1)**
76:12
**allegations (2)**
68:6;73:8
**allege (1)**

**18:11**
**alleged (6)**
32:24;35:2;42:4;
68:4,10;73:24
**allegedly (1)**
16:23
**alleges (2)**
70:24;71:9
**allow (3)**
14:10;42:11;62:24
**allowed (1)**
74:2
**allows (2)**
32:1;42:13
**Ally (3)**
66:10,15,16
**almost (2)**
78:25;80:9
**alter (1)**
78:11
**alterations (1)**
21:13
**alternative (1)**
44:17;45:5;59:19
**although (1)**
60:23
**always (1)**
17:4
**amenable (1)**
14:4
**Amended (5)**
3:18,23;64:6,20,25
**amount (15)**
36:20,25;43:15,
22;45:19;46:5,14;
49:14,15,16,17;71:9,
14;72:23;75:1
**amounts (2)**
70:8;71:2
**analyze (1)**
54:15
**analyzed (1)**
66:4
**and/or (2)**
12:6;14:7
**Angeles (1)**
8:23
**anticipation (1)**
54:20
**Apex (1)**
14:17
**apologized (1)**
73:21
**appeal (3)**
28:20;24;55:4
**appeals (6)**
28:22;53:15,25;
54:14;55:6;62:4
**appeals' (1)**
56:20
**appear (6)**
18:15;44:16;
45:18;50:15,16;

**72:22**
**appearance (4)**
27:25;74:6,7;
75:12
**appearing (10)**
10:13;74:5,8,10;
75:10;76:13,17;78:4,
5;79:13
**appears (5)**
18:2;17;36:25;
71:5;77:20
**appellate (4)**
29:3;30:15,21;
33:14
**applaud (1)**
77:23
**applicability (1)**
79:23
**applicable (1)**
79:24
**application (1)**
12:8
**apply (2)**
33:2;36:23
**applying (1)**
39:5
**appointing (1)**
10:17
**appointment (2)**
10:16;11:14
**appreciate (1)**
77:7
**appreciation (1)**
15:5
**approach (1)**
69:5
**appropriate (6)**
14:22;34:13;39:4;
68:18,23,25
**Approval (1)**
3:8
**approved (2)**
10:19;79:5
**April (2)**
28:9;59:1
**ARANT (3)**
7:2,10;16:1
**arguably (1)**
31:22
**argue (1)**
81:9
**argued (2)**
32:23;40:10
**argues (2)**
57:13;59:18
**arguing (2)**
45:19;49:20
**argument (32)**
20:18;22:23;
23:15,20,22,23;
24:16;26:16;31:18,
22,25;32:3,5,11;
34:25;37:12;39:8;

42:15;44:13;45:13;
46:2,4;47:3,4;48:6,9,
25;51:13,17;56:8;
61:12;81:5
**arguments (12)**
15:24;17:1;19:18;
24:15;25:3,9,10,16,
17,24;27:10;62:1
**arise (1)**
71:22
**Arizona (1)**
40:12
**around (1)**
30:11
**arranged (1)**
23:5
**arrive (1)**
34:13
**Arthur (2)**
10:14,17
**articulate (2)**
18:9;75:22
**articulated (1)**
42:10
**ascertain (1)**
69:17
**aside (2)**
36:22;52:5
**aspect (1)**
32:16
**assert (5)**
45:2;66:3;73:9;
74:1;77:20
**asserted (10)**
25:2;32:20;36:3;
40:7;59:24;60:4;
63:3;73:7,15;81:7
**assertible (1)**
51:19
**asserting (1)**
73:5
**assertion (4)**
65:17;75:4,22;
77:11
**asserts (4)**
17:20;29:8;70:24;
78:9
**Assign (1)**
3:3
**assisted (2)**
11:12;15:7
**associate (1)**
47:24
**Assume (5)**
3:3;43:15,16,16;
52:10
**assumption (2)**
57:8;69:11
**attach (4)**
19:13;23:2;30:13;
72:24
**attached (9)**
17:21;30:15,17;

64:10;65:3;66:6;
67:7;75:16;76:5
**attaches (1)**
71:3
**attaching (1)**
30:18
**attempted (13)**
32:17;35:17,20;
37:6;38:10,14;48:10,
15,21;49:1,10,20;
51:9
**attendance (3)**
20:20;21:3,11
**attention (1)**
62:6
**ATTORNEY (2)**
9:2,3
**Attorneys (5)**
7:3,11;8:2,11,20
**attorneys' (2)**
30:11;42:6
**Attorney's (8)**
12:10;42:8,11,14,
16;43:7,10,11
**authority (9)**
13:22;14:18,25;
15:3;37:5;48:14,25;
54:19,23
**authorized (3)**
57:7,22;58:1
**automatic (1)**
31:5
**automatically (1)**
60:10
**Ave (1)**
8:21
**Avenue (2)**
7:12;8:12
**Avoidable (1)**
20:25
**award (1)**
42:14
**aware (2)**
10:22;48:20
**away (1)**
36:19

**B**

**back (15)**
10:16;29:21;
47:23;54:3;56:3,23;
57:16;60:6;67:19;
68:5;74:3;77:2,3;
81:9,14
**backup (2)**
72:25;77:17
**balance (6)**
16:14;17:25;
68:11,22;75:2;77:18
**balances (1)**
32:2
**Baldwin (2)**

14:13;15:1
**ball (1)**
60:19
**Bank (23)**
29:5;33:10,17;
40:12,19;41:12;
42:24;53:13,20;
54:13;55:10,11,16,
19;56:16,25;57:7,22;
58:2,8;59:3;63:2;
66:16
**Bankr (4)**
14:3,6,14,17
**Bankruptcy (7)**
2:14,23;3:3;14:12;
16:9;17:19;30:22
**Bar (6)**
27:23;66:25;67:5,
7,9,12
**based (8)**
35:8,10;38:6;
49:14,15;71:19,19;
76:6
**basically (1)**
68:4
**basis (15)**
16:20;17:2;18:4,8,
9;28:12;35:8;37:1;
49:8;75:15,22,24;
77:11;79:10;80:13
**became (1)**
66:15
**began (1)**
16:17
**begin (1)**
44:5
**beginning (2)**
63:12,18
**behalf (14)**
3:19,25;17:9,18;
20:4;43:23;47:24;
57:19;58:1,11;64:8;
65:1;74:5;76:16
**behind (1)**
12:19
**believes (1)**
17:24
**beneficial (2)**
24:19;25:21
**benefit (1)**
13:25
**Berkshire (1)**
8:20
**Besides (1)**
25:13
**best (1)**
27:7
**better (2)**
32:19;34:20
**beyond (2)**
45:10;46:13
**bifurcation (1)**
21:1

**Birmingham (1)**
7:13
**black (1)**
55:25
**black-line (4)**
12:11,14,16,17
**bond (1)**
50:5
**Books (7)**
4:12;31:9,13;
65:17;66:2,5;76:6
**Borrow (1)**
72:15
**Borrower (12)**
3:24;4:3,7;52:22;
64:14,19;65:7;
66:19;67:15,21;
72:16;76:7
**borrowers (7)**
16:17,22,23;18:9;
65:8;69:8;73:9
**borrowers' (2)**
69:9,16
**borrower's (1)**
61:8
**both (10)**
14:11;15:6,24;
17:2;19:7;28:22;
31:17;48:12;49:17;
62:14
**bother (1)**
62:11
**BOULT (2)**
7:2,10
**Bowling (1)**
2:15
**BR (5)**
14:3,6,14,17;15:2
**BRADLEY (3)**
7:2,10;16:1
**breach (11)**
29:9;40:7;41:22;
42:2;44:17;45:7,11;
46:21;47:4,8;59:19
**breached (1)**
40:16
**breakdown (1)**
30:15
**brief (3)**
19:2;28:3;41:19
**briefly (2)**
27:7;41:1
**bring (5)**
20:15;22:25;
23:10;27:10;38:7
**brings (2)**
67:19;74:22
**brought (6)**
16:10;17:19;35:9,
18;42:23;48:21
**build (1)**
61:10
**burden (1)**

19:1
**burdensome (1)**
13:12
**buried (2)**
46:7,17

**C**

**CA (1)**
8:23
**calculations (1)**
46:16
**calendar (2)**
15:14;67:20
**call (4)**
70:10,12;76:21;
77:3
**called (1)**
77:2
**came (5)**
25:20;29:3;41:10;
47:23;58:25
**can (33)**
12:17;20:15;
22:11;26:14;30:23;
31:5;36:21,22;
39:10;41:7;42:21,
25;43:10;44:8,11;
46:20;49:19;52:3,5,
16,17;54:25;55:2,16;
56:25;58:17;61:6,12,
17;62:8;68:21;
70:10;81:10
**capable (1)**
19:8
**Capital (5)**
3:20,25;7:3,11;
10:3
**caps (1)**
79:19
**care (1)**
47:23
**carefully (3)**
13:21;56:2;60:6
**Carolina (36)**
27:23;28:7,14,14;
29:8,20;31:20,25;
32:12,22;33:14;
34:24;35:12;36:1,15,
15;37:5,8,17,22;
38:3,8;42:12;44:15;
45:3,8;48:13;49:1;
50:22,23;51:3;53:4,
15,25;57:1;62:4
**Carpenter (1)**
14:25
**carve-out (1)**
12:6
**carve-outs (1)**
11:18
**case (37)**
16:12;17:4,5,6,15,
17,19,23;19:8;20:14;

21:17;22:1;24:20;
25:20,20;26:5,17;
27:10;28:5;29:18,
21;30:22;33:9;35:1;
36:20;37:16;42:9,23,
23,25;48:14,20,24;
52:23;58:16;59:9;
80:23
**cases (7)**
29:23;36:16;37:7;
38:6;48:17;58:10,19
**cause (14)**
35:24;36:14;37:6,
8,20,24;38:4;39:20;
43:1;48:12,15;49:1;
51:4,9
**causes (2)**
29:8;42:9
**CC (10)**
3:7,12,14,17,22;
4:2,6,10,20;5:4
**cede (2)**
10:9;16:4
**cents (1)**
71:10
**Century (1)**
14:3
**Cerna (1)**
68:2
**certain (4)**
11:18;12:11,13;
60:15
**certainly (4)**
34:5,12;58:14;
61:6
**cetera (1)**
78:10
**CHADBOURNE (3)**
8:1;10:13;11:10
**chain (2)**
41:21;56:5
**chambers (3)**
64:1;73:13;78:16
**chance (1)**
24:16
**change (2)**
13:1;30:4
**changed (3)**
24:9;39:6;68:10
**changes (3)**
12:11,14,22
**changing (1)**
39:19
**Chapter (1)**
45:9
**character (1)**
74:25
**charged (2)**
68:12,15
**Charlotte (1)**
7:5
**chase (1)**
30:24

**check (1)**
18:2
**checks (1)**
22:15
**Christian (1)**
15:17
**CHRISTOPHER (2)**
7:15;8:16
**CHRISTY (4)**
7:7;16:1,8;28:2
**Circuit (11)**
29:13,14,19;
30:16;31:3;32:4;
38:22;39:13;51:17;
61:25;62:3
**circumstance (2)**
55:15;58:20
**circumstances (3)**
14:17;30:5;55:19
**cite (1)**
14:19
**cited (1)**
37:7
**Civ (1)**
14:25
**civil (12)**
32:18;37:16,17,
19;38:7,9,13,19;
48:11;50:22,23;51:4
**claim (161)**
15:15;17:19,20,21,
22;18:8,24;19:1,3,
18;20:16;21:4,19,20,
21,22,24;22:1;25:14;
26:1,12,24;27:15;
30:10,11,13,15,22;
31:2,4,15,17,23;
32:15,16,20,25;
33:23;34:1,7,8,22,
23;35:6,8,8,18,19,
23;36:3,4,13,18;
38:7,8,11,15,19,20;
39:3,11,14,17;40:8;
41:23;42:7,8,13,16,
17;43:2,3,5,6,9,12,
16;44:5,6,13,17;
45:2,2,22;46:9,21;
47:5,9,12;48:22;
49:8;51:7,14,18;
52:6,11;53:5;57:18;
58:7;59:16,17,19,20,
20;60:3,4,9,11,15;
61:15,25;62:9,12;
63:6;64:7;65:1;66:4,
9,9,10;67:8,12,25;
68:3,4,4;70:22,24;
71:22;72:1,19,21,22,
23;73:10,14,14;74:4,
15,20,21,24;75:1,2,
14,21;76:3,3,5,10,
22;77:7,11,12,14,16,
16,17;78:8,13;81:3
**claimant (4)**

71:8,12;77:19,21
**claimants (9)**
18:12;32:23;35:2;
64:12;65:4;73:7,14,
25;76:10
**claimant's (1)**
68:6
**claimed (1)**
25:21
**claiming (3)**
37:15;48:3;78:9
**Claims (76)**
3:12,14,17,18,19,
22,23,24;4:2,3,3,6,7,
8,10,11,12,15,16,16;
20:13,16;27:8;
29:17;32:1;43:22;
51:17;59:24;61:2,3,
10;62:3,5,16,21,25;
63:1;64:5,6,10,12,
14,19,24;65:5,7,9,
16;66:1,3,4,14,19,25,
25;67:4,11,13,15,21;
72:14,15,16,19;73:4;
74:1,23,25;75:7,8,9,
9,13,24;76:1;78:20
**clause (1)**
36:10
**clear (10)**
12:22;21:3,4,8,15;
26:11;34:6;35:10;
37:12;61:24
**clearly (4)**
14:21;33:9;50:11;
58:17
**Clerk (1)**
19:9
**client (1)**
43:4
**clients (3)**
49:10,22;50:17
**closer (1)**
19:25
**closing (1)**
22:15
**clouded (1)**
20:21
**Co (1)**
14:17
**Code (1)**
3:3
**colleague (3)**
15:16;16:1;78:22
**colleagues (1)**
61:16
**collected (4)**
45:19;46:4,13;
74:15
**collecting (3)**
46:22;47:7,10
**Collection (5)**
34:24;42:17;
45:14;46:18;53:5

**combination (1)**
31:1
**commenced (1)**
80:22
**comment (1)**
31:6
**comments (3)**
12:9,10,13
**commit (4)**
32:18;37:15;38:2;
48:11
**Committee (3)**
7:19;69:17;76:16
**common (1)**
33:17
**communications (1)**
69:9
**company (2)**
17:3;66:16
**compared (2)**
24:5;66:4
**competent (1)**
71:21
**complaining (1)**
70:25
**Complaint (11)**
4:21;5:5;30:17,19,
19;31:4;39:14;80:5,
14,23,24
**complete (2)**
19:14;57:7
**completed (3)**
11:8;50:24;51:1
**completion (1)**
36:17
**comply (5)**
66:11;79:7;80:4,
11;81:7
**component (1)**
35:13
**components (1)**
35:7
**computer (2)**
13:14;76:23
**concealed (1)**
32:24
**concealment (1)**
33:4
**concerns (2)**
14:11;19:10
**concluded (1)**
81:24
**concludes (3)**
72:5;78:19;81:17
**conclusion (1)**
53:14
**condition (2)**
21:1;24:12
**conduct (1)**
14:8
**conducted (1)**
70:11
**conducting (1)**

15:7
**confer (3)**
60:1;61:16,17
**Conference (1)**
3:2
**confidential (1)**
14:7
**confirm (1)**
74:7
**confirmed (2)**
66:11,12
**confirms (1)**
73:13
**Connection (3)**
3:9;50:24;77:12
**consequence (1)**
54:24
**considerable (1)**
13:22
**consideration (1)**
64:2
**considered (2)**
21:2;26:10
**consistent (1)**
68:19
**consistently (2)**
17:4;33:12
**conspiracy (16)**
32:18;37:15,17,19,
21,23;38:7,9,13,15,
19;48:11;50:22,23;
51:4,7
**conspires (1)**
38:2
**constitute (1)**
21:5
**contacted (1)**
19:5
**contains (1)**
11:21
**contemplated (1)**
60:7
**contents (1)**
10:22
**contested (9)**
59:23,24;60:8;
61:9,11;63:22;
65:24;67:2,19
**contingent (1)**
43:9
**continuing (1)**
27:11
**contract (17)**
20:25;21:9;29:10;
40:8,16;41:22;
44:17;45:7,12;46:21,
25;47:4,9,12,13;
59:19;66:9
**contractual (3)**
40:11,11,18
**contrary (1)**
55:8
**conversation (1)**

77:8

**conveyances (2)**
20:25;21:2

**conveyed (1)**
36:19

**convinced (1)**
13:10

**convincing (2)**
21:4,16

**copies (4)**
22:8;24:1,2,6

**copy (5)**
19:11,14;22:9,11;
73:11

**Corp (5)**
8:11;14:14;29:6;
41:12,20

**Corporation (1)**
3:4

**correctly (2)**
31:25;54:22

**correspondence (2)**
16:17;17:3

**corresponding (2)**
64:7;65:1

**corresponds (2)**
73:1;77:17

**costs (2)**
49:23,24

**Counsel (21)**
7:19;15:23;16:8;
17:6,16;20:13;24:1;
25:13,25;27:16;
28:3;30:10;35:11,
12;47:23,24;60:13;
61:8;69:9,16;78:15

**count (1)**
29:16

**counterparty (1)**
47:13

**counting (1)**
11:1

**county (2)**
68:13;71:13

**couple (2)**
26:9;61:22

**course (2)**
36:24;61:23

**Court (299)**
2:14;10:2,8,11,24;
11:1,4;12:12,16,18,
21,25;13:4,11,14,17,
19,20,21,25;14:4;
15:5,6,11,18,21;
16:2,6,24;17:10;
18:5,11,12,16,22;
19:11,12,15,20,24;
20:2,6,9,11,18,19;
21:16,18,19,21;22:4,
9,11,18,20,22;23:2,3,
7,9,12,14,20,22,24;
24:14,21,24,24;25:2,
3,7,9,11,15,18,20,23;

26:3,8,13,20;27:1,3,
5,12,18,21,24;28:14,
17,22;29:13,15,25;
30:2,16,18,19,21;
31:5;32:7,10;33:5,7,
14,20;34:6,11,14;
35:20,25;36:2;37:4,
11,18;38:1,12,14,17,
22;39:2,10,22,24;
40:6,10,16,20,24;
41:5,7,14,17;42:6;
43:2,9,15;44:2,6,11,
18,21,23,25;45:6,13,
16,18,22,24;46:1,3,
10,12,20,24;47:8,12;
48:4,6,9,19,24;49:9,
13,15,19,25;50:2,4,7,
9,19,21;51:3,7,12;
52:3,10,24;53:2,8,
12,15,16,18,21,25;
54:1,3,6,8,11,14,17,
24;55:3,4,5,6,13,15,
20,24;56:8,10,12,15,
20,23;57:2,10,12;
58:3,5,19;59:4,7,9;
60:18,22,23;61:5,14,
24;62:4,11,14,15,16,
17,24;63:8,10,17,20,
23;64:3,4,15,22,22;
65:9,13,20,23,25;
66:20;67:3;69:2,6,8,
13,20,22,24;70:2,5,7,
13,15,17,17;71:20;
72:4,7,9,12;73:16,
18,21;74:3,11,12,17;
75:10,25;76:13,18,
20,25;77:2,4,6,22;
78:4,7,18,23;79:5,
12,15,20;80:18;81:1,
12,16,19

**courtroom (4)**
15:12;21:7;50:11,
15

**Courts (6)**
13:24;14:15;19:9;
28:5;34:10;62:20

**court's (2)**
14:12;34:5

**create (2)**
18:19;35:4

**created (2)**
14:8;22:2

**creates (3)**
21:1;22:5,12

**Credit (5)**
75:19;76:4,4,8,11

**credited (2)**
71:1,1

**creditor (2)**
64:8;65:2

**creditors (3)**
14:1;67:8,13

**Creditors' (2)**

7:19;69:16

**culminated (1)**
10:20

**CUMMINGS (2)**
7:2,10

**current (3)**
39:18;57:8;75:3

**currently (1)**
76:8

**custody (1)**
56:22

**cut (2)**
30:23,24

## D

**dam (1)**
58:13

**damages (25)**
17:25;18:25;
32:20;36:9,21,25;
37:2;39:7;40:5;
42:15;49:9,12;51:18,
25;52:4,14;58:15,17;
59:12;68:21;73:8,
24;75:4,8;76:12

**damnum (1)**
36:10

**Daniella (1)**
9:3

**dark (1)**
12:17

**database (1)**
13:8

**date (10)**
10:18;12:24;
36:17,18;48:20;
66:25;67:5,7,9,12

**dated (2)**
71:4;80:25

**dates (3)**
63:14;68:2;72:19

**dating (1)**
10:16

**daughter's (2)**
24:6,7

**DAVID (1)**
8:7

**day (1)**
29:2

**days (4)**
26:9;59:2;61:22;
79:18

**deal (4)**
45:1;60:2;61:1;
72:20

**dealing (4)**
61:2,3,15;64:19

**deals (4)**
65:16;66:24;67:1;
76:4

**dealt (2)**
60:20;74:4

**Deanna (5)**
64:9;65:3;66:6;
67:6;71:4

**debt (5)**
16:18;34:24;
42:17;47:20;53:4

**Debtor (16)**
5:4;14:1;21:20,22;
22:24;31:8;39:15;
41:17,17;44:13;
47:5;60:25;63:4;
66:11;67:4;71:21

**debtors (51)**
10:5;11:22,23;
12:13,15,23;15:23;
22:1,6,13;23:16;
26:10,17,24,25;
31:12;32:24;41:18;
43:3,4,5,13,17,17;
45:2;46:21,25;47:5,
18;51:20;59:24;
60:7,13;64:23;66:1,
3,15,17;68:6,15;
71:24;73:2,4,9,25;
74:15;75:5,23;76:5,
12;78:25

**Debtors' (20)**
3:2,18,23;4:7,11,
15;13:6;15:15;41:7;
63:19;66:2;67:16;
70:18;75:16,25;77:6,
12;78:2,7;81:5

**deceptive (7)**
29:9;32:23;33:24;
34:4,21;35:5;42:13

**decide (2)**
62:12;70:3

**decided (1)**
78:12

**deciding (1)**
63:5

**decipher (1)**
16:19

**decision (6)**
51:2;55:5;61:22,
22,25;62:3

**declaration (11)**
38:25;64:9;65:3;
66:6;67:6;68:7,18;
69:3;71:4,12,20

**declarations (1)**
79:6

**declined (1)**
28:11

**deed (2)**
21:9,12

**default (2)**
16:15;55:1

**defaulted (1)**
28:8

**defective (2)**
54:17;56:7

**defendant (2)**

42:11;80:1

**defendants (6)**
28:17;29:11,19;
60:23,25;62:18

**Defendant's (1)**
5:4

**defending (2)**
24:22;26:2

**defense (6)**
25:3,10,17;27:8;
42:22,25

**define (1)**
75:7

**degree (1)**
21:1

**Del (1)**
14:3

**demand (2)**
58:9,21;59:11,13

**demonstrate (1)**
33:22

**denied (4)**
29:25;30:2;42:2;
59:12

**deny (1)**
33:20

**denying (1)**
79:16

**depository (4)**
11:20,24;12:23,24

**described (1)**
16:18

**designed (1)**
56:3

**detail (1)**
17:1

**detailed (4)**
42:19,21;43:18;
71:6

**details (1)**
58:23

**determination (1)**
57:24

**determine (7)**
18:3;19:18;42:21;
53:16,17,25;58:1

**determined (3)**
47:16;53:15;54:16

**determines (1)**
55:19

**determining (1)**
36:7

**Deutsche (21)**
29:5;33:10,17;
40:19;41:12;42:23;
53:13,20;54:13;
55:10,11,16,19;
56:16,25;57:7,22;
58:2,8;59:3;63:1

**developing (1)**
61:1

**dictating (1)**
60:9

**Dietrich (1)**
  68:1
**difference (1)**
  36:3
**different (10)**
  27:16;28:4;34:13;
  35:6,15;52:2;60:19,
  19;62:21;74:16
**diligently (1)**
  66:4
**directed (1)**
  31:7
**directing (1)**
  79:17
**directly (1)**
  35:11
**director (1)**
  64:9
**disagree (2)**
  34:2;44:14
**disallow (5)**
  64:5,23;66:1;67:4;
  73:4
**disallowance (1)**
  66:8
**disallowances (1)**
  65:22
**Discharge (3)**
  3:7;11:9,14
**disclosure (2)**
  51:18;52:2
**Discovery (5)**
  3:8;11:18;14:16,
  21;61:18
**discrepancy (1)**
  73:15
**discussed (2)**
  60:14;61:1
**discussing (2)**
  36:16,20
**Dismiss (21)**
  4:20,21;5:4;17:14;
  29:11;30:20;32:3;
  33:1;34:9;35:14,16;
  36:4;39:9;79:1,11,
  20;80:5,13,20;81:6,8
**dismissal (3)**
  30:20;31:3;81:13
**dismissed (12)**
  21:17;31:23;
  32:16;34:23;36:13;
  54:9,11;59:17;
  62:15;80:16,17;81:1
**Dismissing (1)**
  81:12
**Disposition (1)**
  3:8
**dispute (2)**
  66:9;73:24
**disputed (1)**
  66:17
**District (2)**
  29:7,20

**Doc (2)**
  3:17,22
**Doc# (9)**
  3:7,12,14;4:2,6,10,
  15,20;5:4
**docket (5)**
  71:5;79:5,15;80:1,
  2
**document (5)**
  11:20;22:4;23:14;
  24:9;58:7
**Documentation (8)**
  4:4,8;22:22;30:14;
  67:22;72:16,25;75:2
**documents (17)**
  11:21;16:21;
  17:22,23;18:1,4,17;
  19:12;23:10,25;24:4,
  10,11;26:7,11;46:8;
  75:16
**dollar (1)**
  18:2
**dollars (13)**
  16:15;17:20;
  30:10,12;31:20;
  32:2;42:22;46:7,17;
  49:22;68:12,20,21
**done (7)**
  11:8;34:4;54:18,
  19;57:6;60:9;72:10
**doubts (1)**
  34:21
**down (7)**
  13:9;16:14;19:8,
  24;22:16;29:3,22
**Driscoll (2)**
  12:18,20
**due (3)**
  71:12;73:8;76:7
**dues (1)**
  22:17
**during (3)**
  14:8;22:3;76:21
**Duties (4)**
  3:8,10;11:17;
  13:25

**E**

**earlier (3)**
  12:12;51:20;73:13
**Eastern (2)**
  29:7,20
**ECF (4)**
  71:5;79:15;80:1,2
**ED (1)**
  14:18
**effect (1)**
  18:18
**effective (1)**
  56:2
**efforts (3)**
  10:23,25;11:2

**either (8)**
  23:8;28:18;34:14;
  36:21;38:1;49:16;
  69:12;72:24
**El (1)**
  78:5
**E-L (2)**
  78:5,6
**Elecia (1)**
  9:4
**elected (1)**
  29:20
**elimination (1)**
  16:18
**else (10)**
  13:4,19;25:23;
  47:20;48:8,8;56:10;
  57:17,18;81:19
**e-mails (1)**
  69:17
**emotional (1)**
  50:1
**employee (1)**
  57:6
**endorse (1)**
  54:23
**endorsed (5)**
  33:16;56:21,23,
  25;57:6
**endorsement (2)**
  54:22;56:2
**endorsements (6)**
  21:14;54:15,16,
  17;56:5;57:7
**engage (1)**
  79:9
**engineering (1)**
  20:23
**entails (1)**
  13:15
**entered (3)**
  10:17;16:4;79:15
**entire (1)**
  42:20
**entirely (1)**
  51:16
**entirety (1)**
  72:6
**entities (1)**
  67:9
**entitled (6)**
  43:6,11;49:6,7,10;
  52:14
**entity (1)**
  57:23
**Entry (1)**
  3:7
**error (1)**
  74:18
**eScribers (1)**
  5:21
**escrow (3)**
  68:11;70:9;71:10

**ESQ (8)**
  7:7,15,24;8:6,7,16,
  25;9:8
**Essentially (10)**
  16:21;17:9;27:8;
  29:21;31:24;33:2;
  36:14;59:23;62:20;
  72:23
**establish (7)**
  34:3;51:9;54:2,12;
  55:12;57:2;58:15
**established (4)**
  18:24;36:8;53:18;
  55:21
**establishing (2)**
  53:23;55:16
**estopped (1)**
  48:2
**et (3)**
  4:19;8:11;78:10
**Evelina (1)**
  16:11
**even (4)**
  20:19;39:6;42:10;
  77:2
**evening (1)**
  73:12
**events (2)**
  49:7;56:5
**everybody (2)**
  20:13;22:8
**evidence (13)**
  20:14,20;21:4,8,
  25;26:4;33:18;
  46:12,14;53:23;
  55:16;71:21;76:9
**evident (1)**
  32:11
**evidentiary (2)**
  43:21;71:23
**exact (2)**
  10:25;56:21
**exactly (2)**
  25:19;57:5
**examination (1)**
  14:9
**Examiner (22)**
  8:2;10:13,16;11:9,
  9,15,16,22,23,25;
  12:4,5,8;13:23,24;
  14:4,9,9,13,24;15:4,
  6
**examiners' (1)**
  14:16
**examiner's (4)**
  10:7;19;13:5;
  14:10
**example (1)**
  66:9
**exceeded (1)**
  31:20
**excess (1)**
  68:12

**exchanging (1)**
  69:17
**Exculpation (3)**
  3:9;12:3;14:23
**excuse (2)**
  15:19;58:5
**excused (1)**
  15:11
**exempt (10)**
  31:19,19,21;
  32:12;44:15,16,19,
  20;45:9;47:19
**Exhibit (12)**
  64:5,11,24;65:3,
  18;66:2,7,8,14;67:5,
  7,11
**exist (1)**
  73:25
**existence (1)**
  41:10
**existing (2)**
  14:22;56:24
**exists (1)**
  38:8
**expect (1)**
  61:21
**explanation (1)**
  70:8
**exploit (1)**
  14:10
**express (1)**
  15:5
**expunge (6)**
  21:22;64:5,24;
  66:1;67:4;73:4
**expunged (1)**
  75:9
**expungement (1)**
  76:22
**expungements (1)**
  65:21
**extensive (1)**
  11:5
**extent (2)**
  38:18;50:3
**extraordinary (1)**
  14:16

**F**

**face (2)**
  36:11;44:14
**fact (10)**
  16:20;17:2;20:15,
  23;35:4;36:17;
  43:21;53:17;54:3;
  55:10
**factual (1)**
  55:7
**failed (8)**
  18:9;22:17;55:12;
  75:23;79:7,10;80:4,
  11

**fails (5)**
33:22;40:10;45:2;
53:22;79:19
**failure (2)**
80:13;81:3
**fair (4)**
28:17;36:22;37:2;
68:18
**fairly (1)**
33:20
**fall (4)**
35:12;38:17;45:8,
10
**falls (2)**
38:15,16
**false (10)**
18:12;34:25;35:2;
38:9,19,24;53:6,8,
12;54:21
**familiar (1)**
38:5
**family (1)**
20:8
**Fannie (1)**
68:1
**far (1)**
31:12
**fared (2)**
28:19;31:12
**favor (2)**
22:6,12
**fax (3)**
19:16;73:11,12
**February (4)**
71:14,18;79:14;
80:25
**federal (7)**
18:10;30:19;31:1;
34:10,11;62:16;
75:19
**fee (3)**
12:7;43:18;79:18
**feeling (1)**
29:21
**fees (13)**
30:11;42:6,8,11,
14,16;43:7,10,11,22;
49:23;68:17;79:20
**fiduciary (2)**
14:4,10
**Fifth (1)**
7:12
**figuring (1)**
62:22
**file (3)**
19:7,12;67:8
**filed (45)**
3:19,24;12:12,15;
17:3,13;18:7,12,23;
19:14;21:19,20;
25:14;26:1,9,9,22,
23,23;27:15;29:4;
30:9,11;32:11;59:1;

64:7,7,12;65:1,1,5,8;
66:25;67:5,12,13;
70:23;75:13;77:10,
19,19;78:10;79:3;
80:1,23
**filing (7)**
10:20;12:7;16:9;
21:21;74:17;79:18,
20
**filings (1)**
18:19
**final (2)**
12:7;72:13
**finally (1)**
55:18
**financial (4)**
11:11;30:6;66:10,
15
**find (4)**
33:14;55:9;59:10;
69:2
**finding (4)**
28:11;53:20;55:7;
69:4
**finished (1)**
50:14
**fires (1)**
14:2
**firm (2)**
16:1;17:16
**firms (1)**
11:11
**first (15)**
10:6;35:19;36:8;
40:12;42:9;44:6;
51:8;59:2;61:12;
62:23;63:24;72:19,
19;79:2;80:16
**five (1)**
73:17
**fix (1)**
54:23
**flippant (1)**
11:4
**Floor (2)**
8:13,22
**Florida (7)**
16:11,14;19:7,12;
24:25;25:11,18
**focus (2)**
35:23;36:16
**Foerster (4)**
10:5;15:23;60:13;
78:25
**following (2)**
17:17;81:12
**fore (1)**
50:24
**forecl (1)**
37:6
**foreclose (9)**
33:19;34:3;49:6,7,
21;54:25;55:2,20;

57:3
**foreclosing (1)**
49:22
**foreclosure (60)**
16:12;17:4,5,10,
12,23;19:7;23:8;
24:22;25:3,11,17;
27:9,10;28:13,15,16,
18,24,25;32:17,18,
19;33:9;35:3,18,21;
36:16,17;37:9,9,15,
24;38:2,10,14;42:23,
23,25;48:10,11,13,
14,16,18,21,23;49:2,
3,5,11;50:25;51:10;
57:1,8;59:1
**Forged (2)**
18:13,14
**forgery (1)**
18:21
**form (2)**
39:22;40:1
**forma (1)**
79:16
**formal (1)**
77:10
**formed (1)**
21:6
**forms (2)**
11:13;13:23
**forth (4)**
11:18;20:15;
65:18;79:8
**forum (1)**
27:9
**forward (15)**
26:4;30:8;46:13;
52:20;53:22;54:2;
55:16;57:1;60:24;
61:13;62:24;67:25;
70:3;72:18,20
**found (10)**
28:15;33:16,18;
38:24;42:12;55:5,8,
20;56:24;76:7
**four (3)**
67:24;72:17;75:13
**fourteen (1)**
79:18
**Fourth (12)**
29:13,14,18;
30:16;31:3;32:4;
38:22;39:13;51:17;
61:25;62:2;64:23
**framed (1)**
51:14
**fraud (1)**
49:4
**fraudulent (2)**
18:13;21:2
**free (1)**
54:25

**frequency (1)**
53:21
**Friday (1)**
19:17
**front (3)**
25:22;59:25;60:10
**fuel (1)**
14:1
**full (5)**
19:14;61:12;71:9;
79:18,20
**fully (2)**
42:11;56:20
**functional (3)**
48:2;51:22;57:14
**Funding (5)**
3:4;8:11;29:6;
41:12,20
**further (6)**
11:15,24;12:25;
46:9;59:9,14
**future (3)**
63:13;68:2;72:18

## G

**GALINA (5)**
9:11;16:11;20:7,9;
21:16
**game (1)**
60:19
**gather (1)**
26:19
**gave (1)**
33:11
**Geithner (1)**
18:5
**General (5)**
32:12;45:3;61:9;
68:19;73:2
**generalized (1)**
31:6
**generically (1)**
16:18
**gets (1)**
57:23
**Gil (1)**
28:16
**Gilbert (4)**
9:3;27:15;39:9;
41:18
**Gilberts (24)**
27:18;28:5,24;
29:1;30:7,9;33:12;
39:19;40:7,12;42:20,
24;43:5,12,24;47:1,
1,11,18,23;57:9,15;
58:24;61:16
**Gilberts' (8)**
32:25;42:25;
47:21,22;51:23;
60:2;62:9,12
**given (1)**

68:8
**giving (2)**
24:16;38:9
**GLENN (1)**
2:22
**GMA (1)**
29:22
**GMAC (47)**
4:18;5:2;16:8,10,
18,23;17:2,24;18:25;
19:1;23:18;28:3,10,
11;29:7,22;38:23;
39:6,21,25;40:13;
42:15;47:6,9,14,17,
18,24;48:1;51:21;
52:16,25;53:5;57:6,
16,21,25;58:5,7,25;
63:1;71:13,17;
75:17;79:2;80:8,18
**GMACM (1)**
75:19
**GMAC's (3)**
18:3,19;57:13
**goes (3)**
54:3;69:3;70:7
**Gonzalez (2)**
10:14,17
**Good (7)**
10:4,12;15:22;
16:7;32:5;44:4;
69:15
**Goolsby (5)**
76:3,14,19;77:8,14
**governing (1)**
20:24
**government (1)**
67:9
**graciously (1)**
13:18
**GRAHAM (1)**
8:16
**Grand (1)**
8:21
**grant (2)**
13:20;15:2
**granted (2)**
80:5;81:4
**Granting (3)**
3:7;64:11;65:4
**grave (1)**
14:11
**great (1)**
15:5
**greater (1)**
68:22
**Green (1)**
2:15
**gross (1)**
12:6
**grounded (2)**
49:3,4
**grounds (2)**
80:21;81:6

**guess (6)**
10:15;34:15;
38:22;39:25;48:12;
58:6

## H

**hac (1)**
16:3
**Haldenstein (1)**
11:12
**Hamiel (1)**
14:5
**HANCOCK (70)**
7:7;15:17;16:1,7,
8,25;17:12;18:7,14,
17,23;19:13;27:7,14,
20;28:2,3,21,23;
29:14,16;30:1,4;
31:24;32:9;33:4,6,8;
34:2;35:5,22;36:1,
12;37:10,14,25;38:5,
13,16,18;39:1,3,16,
23;40:3,9,15,17,22;
41:3,6,9,15,24;42:8;
43:8,14;44:1,8,10;
56:12,13,19;57:4,21;
58:4,16,22;59:5,8
**Hancock's (1)**
51:12
**hand (1)**
34:22
**handle (1)**
60:8
**handled (1)**
15:25
**happen (2)**
42:3;52:23
**happened (2)**
56:19;66:12
**happening (2)**
23:8;56:16
**happens (1)**
45:8
**happy (1)**
56:13
**hard (2)**
16:19;59:10
**Harris (4)**
77:16;78:1,4,8
**Hathaway (1)**
8:20
**HAWKINS (2)**
7:15;38:20
**head (1)**
58:23
**health (1)**
24:12
**hear (7)**
31:16,17;32:15;
34:18,22;37:11;44:2
**heard (3)**
13:5,19;25:13

**hearing (14)**
17:8,14;24:13,14;
26:21;34:16;43:21;
50:10;60:15;63:13,
16;68:2;72:5;78:17
**held (1)**
52:7
**hello (1)**
31:9
**herself (2)**
17:8,18
**hinge (1)**
43:12
**history (2)**
28:5;69:3
**hit (1)**
12:18
**hold (1)**
56:4
**holder (9)**
47:22;48:2;51:22;
52:8,9,19;53:14;
57:15;59:3
**holding (1)**
66:16
**Holdings (2)**
3:5;14:3
**holds (1)**
47:3
**home (5)**
16:14;23:19;
24:10;28:6;29:2
**HON (1)**
2:22
**honestly (1)**
80:19
**Honor (79)**
10:4,5,12,17,19,
22;11:6;12:20;13:3,
9;15:9,13,22;16:7;
18:7;20:12;23:5;
25:8,22;26:6;27:7,
14;28:21;30:1;
31:24;32:9;35:5;
38:5;39:1,16;40:9;
41:3,24;43:14;44:1;
48:5;56:13,19;57:4,
21;58:16,22;60:12,
14;61:23;62:10;
63:11,18,21;64:17;
65:11,14;66:22;
67:18;69:5,11,15;
70:10;72:2,11;73:20,
23;74:22;76:2,16;
77:15,23;78:14,24,
25;79:3;80:6,10,17;
81:11,15,17,22,23
**Honor's (1)**
64:2
**Horst (7)**
64:9;65:3;66:6;
67:6;68:7;71:4,20
**Horst's (1)**

68:17
**Hotep (1)**
78:5
**H-O-T-E-P (1)**
78:6
**Hotep-El (5)**
77:22;78:1,5,9,11
**house (2)**
49:17;54:25
**HOWARD (2)**
8:6;10:12
**hyphen (1)**
78:6

## I

**identical (2)**
79:1;80:9
**identify (2)**
20:2;68:21
**identity (2)**
32:24;33:6
**Ignore (1)**
44:11
**immaterial (1)**
20:16
**Immunity (2)**
3:8;14:21
**Impac (3)**
3:4,4;8:11
**impossibility (1)**
52:13
**improperly (2)**
58:20;59:12
**Inc (4)**
3:5;8:20;14:3;
41:16
**include (4)**
11:10;53:19;
64:13;67:14
**included (1)**
16:10
**includes (4)**
11:14;18:1;65:6;
75:2
**including (3)**
26:9;29:8;66:16
**incomprehensible (1)**
26:22
**incorporated (1)**
12:11
**incorporates (1)**
12:14
**incurred (3)**
43:23,23;49:22
**indemnity (2)**
58:8;63:1
**independent (2)**
51:4;52:1
**indicate (1)**
19:6
**indicated (4)**
70:2;74:17;76:21;

79:22
**indicating (1)**
17:24
**individual (2)**
67:11,13
**industry (1)**
33:18
**information (2)**
52:22;70:14
**initially (1)**
47:2
**initiated (1)**
21:21
**inserted (1)**
24:8
**instead (1)**
24:6
**instituted (1)**
28:13
**instrument (1)**
21:12
**Insufficient (8)**
4:4,8;54:2;55:8,
21;67:22;72:16;81:2
**insurance (2)**
62:25;71:17
**intact (1)**
65:9
**integrity (2)**
14:11,12
**intention (1)**
57:5
**interest (19)**
20:14,15;22:3,5,
12,24;23:15;24:19;
25:21;26:2,3,5,16;
45:20;46:4;73:15,
19;74:15;77:20
**interested (1)**
14:5
**interesting (1)**
17:23
**Interestingly (3)**
19:2;32:4;77:19
**interests (1)**
21:6
**interim (2)**
29:24;30:4
**interpretation (1)**
27:8
**interrupt (2)**
50:9,19
**interrupted (1)**
50:11
**interview (1)**
12:1
**into (7)**
11:2;12:11;16:15,
25;20:14;41:10;
61:10
**invalidate (1)**
73:3
**invested (1)**

22:16
**investigation (5)**
10:18;11:3,7;12:5;
15:7
**Investigative (1)**
3:9
**investor (1)**
40:18
**invoices (2)**
42:19,19
**involve (2)**
58:19;66:18
**involved (2)**
20:22;62:17
**involves (1)**
66:9
**involving (1)**
60:8
**irrelevant (1)**
20:16
**Island (1)**
28:7
**issue (11)**
21:23;32:8;34:8,
14;35:4;36:24;
43:10,19;51:2;
52:13;53:20
**issued (1)**
29:19
**issues (5)**
13:7;30:24;31:1,2;
34:12
**item (7)**
15:14;63:24;
65:15;66:23;67:20;
68:10;72:14
**itemized (1)**
68:17
**itemizes (1)**
71:7
**items (2)**
15:25;78:19
**IV (1)**
10:6

## J

**January (1)**
17:7
**Jeffrey (1)**
53:10
**Jericho (2)**
7:20,22
**Joanna (1)**
76:14
**Joanne (1)**
76:3
**Jordan (3)**
15:16,22;60:12
**Juana (1)**
68:2
**JUDGE (4)**
2:23;27:22;44:4;

12-12020-mg    Doc 5266    Filed 09/25/13    Entered 10/03/13 10:10:03    Main Document

RESIDENTIAL CAPITAL, LLC, et al.    Pg 91 of 99

Case No. 12-12020-mg                                                    September 24, 2013

46:8
**judicata (2)**
80:20;81:10
**judicial (1)**
28:4
**July (4)**
10:16,17;17:15;
42:1
**jump (1)**
60:10
**jumps (1)**
59:25

## K

**KATHERINE (4)**
9:2,8;27:16,22
**keep (1)**
26:3
**Kendrick (1)**
68:1
**keys (1)**
13:14
**kind (4)**
18:18,25;19:17;
24:9
**knocked (1)**
60:5
**knows (1)**
54:18
**Kovalesky (1)**
14:25

## L

**lack (1)**
81:12
**Lane (1)**
9:4
**language (1)**
35:10
**last (4)**
10:15;16:15;
60:15;76:3
**Lastly (1)**
77:15
**late (1)**
16:16
**Late-Filed (2)**
4:16;66:24
**lately (2)**
23:21;24:11
**later (3)**
42:3;59:2;68:9
**LAW (27)**
9:2;11:11;16:20;
18:10;20:24;28:12;
31:1,21;32:14;
35:12;36:1,15,20;
37:5,16,18,22;38:4,
6,8;42:13;48:13,15;
49:1;50:22;58:16;
59:9

least (5)
33:1;42:21;54:16;
64:7,25
**leave (4)**
15:10,12;64:12;
65:4
**leaves (1)**
78:21
**led (1)**
49:7
**left (2)**
47:15;65:9
**legal (7)**
16:20;18:3,18;
35:1;49:23;53:6,14
**legitimate (1)**
18:18
**LEMAY (1)**
8:7
**lender (1)**
71:17
**Lending (4)**
28:11;44:5;47:20,
21
**lengthy (2)**
19:16;28:4
**Leonard (1)**
11:12
**less (2)**
32:2;68:9
**letter (10)**
18:5;19:6,13;28:9;
47:21;51:23,24;
52:8;58:24;73:11
**letterhead (2)**
47:24;58:25
**Liability (16)**
4:12;31:9,13;
37:22,23;38:3;51:5,
6,8,13,25;63:3;
65:18;66:3;73:5;
76:7
**liable (7)**
42:15,16;52:4,6;
58:13,14;59:12
**lien (2)**
18:19;71:15
**lift (6)**
29:25;30:3;33:21,
21;53:22;62:23
**lifted (1)**
31:5
**lifting (1)**
62:13
**light (6)**
12:19;14:22;
39:13;41:8;61:24;
62:2
**likely (1)**
57:6
**Likewise (3)**
14:23,24;62:4
**limitations (1)**

45:10
**limited (1)**
45:10
**line (6)**
59:25;60:10;76:4,
4,8,11
**listed (6)**
64:5,24;66:1,14;
67:5,11
**lists (1)**
75:14
**litigants (1)**
14:2
**litigated (2)**
34:9;49:21
**litigation (6)**
14:2;16:9;30:8;
31:11;60:20;62:15
**little (1)**
19:25;61:20
**live (1)**
37:3
**LLC (8)**
3:20,25;4:18;5:3,
21;79:2;80:8,19
**LLP (6)**
7:2,10,18;8:1,10,
19
**loan (51)**
16:14,15;17:25;
28:6,7,10;29:6;30:6;
31:19,21;32:2,12;
33:10,13,15,21;35:9;
37:1;39:6,7,11,12,
17,20;40:4,5,23;
41:11,14,18,20;42:5;
44:15;45:9;47:22;
49:14,15,17;51:13;
53:24;56:22;58:1,10,
12,18,20;59:3,10;
68:5,16;71:9
**loan-related (1)**
75:16
**Loans (4)**
41:16;54:15;
75:17,18
**LONG (2)**
8:10;28:5
**longer (2)**
17:16;39:6
**look (6)**
36:21;59:9,13,20;
60:6;63:4
**looked (1)**
37:7
**looking (3)**
35:14,16;74:5
**looks (1)**
17:15
**Los (1)**
8:23
**loss (4)**
50:5;60:18;61:2,2

lost (2)
28:22;62:4
**lot (5)**
16:25;26:9,22,23;
30:24;62:19
**Lots (1)**
60:4
**Lowe (3)**
27:23;32:15;37:4
**Lowe's (1)**
32:7
**Lynn (1)**
68:1
**Lytle (7)**
4:18;79:2,12,13,
14;80:4,10

## M

**Maine (1)**
38:25
**makes (3)**
46:18;57:14,24
**making (7)**
19:19;20:13,16;
25:9,10,16;38:19
**management (1)**
64:10
**mandate (2)**
29:19,22
**manipulation (1)**
70:25
**manner (1)**
61:18
**many (2)**
17:22;24:10
**Marcus (1)**
77:16
**market (2)**
36:22;37:2
**Marry (1)**
68:1
**MARTIN (1)**
2:22
**master (3)**
40:22;41:6,13
**material (1)**
21:13
**Materials (3)**
3:9;12:3;14:8
**matter (25)**
10:6;15:13;20:21;
27:13,17;28:1;
37:14;38:25;42:20;
59:23;62:23;63:15,
25;64:18,20;65:24;
66:23;67:1;72:13,
19;73:2;74:23;76:3;
80:7,10
**matters (15)**
16:9;28:19;59:24;
60:8;61:9,11;63:12,
13,16,22,22;67:19;

68:1;72:18;78:21
**May (24)**
10:21;21:1,5;24:4;
30:2;35:14;39:24;
42:1;43:24;47:12;
49:16;54:11;55:19;
57:11;59:2;60:5;
61:14,14,18;69:5;
78:11;79:20;80:1;
81:3
**maybe (5)**
24:12,12,13;41:1;
47:3
**MCKENNA (1)**
8:10
**mean (20)**
11:4;31:6,10,16;
33:25;34:3,9;36:2,3,
5;37:4;43:11,17,19,
22;49:19;56:7,9,15;
59:25
**means (2)**
24:9;56:3
**mentioned (1)**
15:24
**merit (1)**
31:22
**merits (1)**
77:25
**Merlyn (3)**
67:25;69:13;70:22
**Mesirow (1)**
11:11
**met (1)**
28:16
**method (2)**
45:11;56:3
**microphone (2)**
19:21,24
**mid-2012 (1)**
29:23
**might (4)**
25:22;43:19;
68:11;78:1
**milestone (1)**
10:18
**million (5)**
11:21;17:21;
30:10;35:22;36:2
**minor (1)**
12:22
**minute (2)**
43:16;52:5
**misconduct (1)**
12:6
**misleading (1)**
59:8
**Miss (1)**
9:4
**missed (1)**
55:17
**misspoke (1)**
39:16

12-12020-mg    Doc 5266    Filed 09/25/13    Entered 10/03/13 10:10:03    Main Document
Pg 92 of 99

RESIDENTIAL CAPITAL, LLC, et al.
Case No. 12-12020-mg

September 24, 2013

**mister (1)**
69:20

**mitigation (3)**
60:18;61:2,3

**Mo (1)**
14:18

**money (10)**
45:14,15,17;46:18,
23;47:7,10;49:12;
50:17;51:18

**monies (2)**
50:6;68:24

**month (1)**
41:10

**monthly (1)**
23:18

**months (1)**
66:25

**moon (1)**
36:6

**more (6)**
19:17;46:6,17;
61:8,9;62:6

**moreover (1)**
68:19

**morning (8)**
10:4,12;15:22;
16:7;44:4;69:15;
73:13;81:18

**Morrison (4)**
10:5;15:23;60:12;
78:24

**Mortgage (30)**
3:4;4:18;5:2;
16:13;19:5,7;24:2,
22;40:18;47:6,9,14,
17,18,25;48:1;52:25;
54:12;70:25;72:24;
73:1,6;75:1,13,15,
24;77:18;79:2;80:8,
19

**mortgagee (1)**
47:2

**mortgages (1)**
73:3

**Mortgage's (1)**
51:21

**most (4)**
17:13;66:14;67:8;
74:17

**mother (2)**
17:9,19

**Motion (34)**
3:2,7,12,14,17,22;
4:2,6,10,15,20,21;
5:4;10:7;11:9;13:5,
20;15:2;17:14;
29:25;30:2,20;32:3;
33:1;34:9;35:14,16;
36:4;39:8;79:3,6,16;
80:5;81:5

**motions (2)**
33:21;79:1

**motion-to-dismiss (1)**
39:4

**move (9)**
36:21,22;56:25;
60:24;61:13;63:22;
70:3;79:11;80:13,20

**moved (2)**
29:11;30:8

**moves (4)**
21:16;33:21;
64:17;72:13

**moving (3)**
16:16;53:22;63:15

**Mrs (4)**
17:5;69:10;72:20;
76:17

**much (8)**
27:24;66:22;
67:18;77:4,15;
78:14;81:18,21

**multiplying (1)**
37:1

**MUNGER (1)**
8:19

**must (2)**
34:25;55:17

**myself (1)**
77:24

## N

**name (9)**
16:8;20:6,7;28:2;
33:11,11,16;56:21;
59:11

**names (1)**
24:7

**National (1)**
40:12

**nature (1)**
21:11

**Navy (1)**
75:19

**NC (2)**
7:5;9:6

**nearly (1)**
29:16

**need (8)**
32:19;46:8,10,12;
60:1;61:16,17,18

**negligence (1)**
12:7

**negotiating (1)**
54:18

**negotiation (1)**
56:4

**Neither (1)**
36:23

**New (11)**
2:16,16;5:23;8:4,
14;14:2;17:23;29:4;
30:7;54:12;57:1

**next (14)**

15:13;26:14;
27:13;34:17;50:10,
14;61:22;63:10,11;
64:18;66:22;74:23;
80:6,7

**nine (1)**
11:21

**ninth (1)**
66:24

**non- (1)**
60:24

**nonborrowers (1)**
67:1

**non-borrowers (1)**
65:17

**nondebtor (2)**
29:19;66:10

**non-debtor (2)**
60:23;62:17

**none (1)**
30:7

**Nor (1)**
23:2

**Norm (2)**
10:4;78:24

**Norma (2)**
74:23;75:11

**Norman (2)**
3:19,24

**North (38)**
7:4,12;27:23;28:7,
14,14;29:7,20;31:20,
25;32:11,22;33:14;
34:24;35:12;36:1,15,
15;37:5,8,17,22;
38:3,8;42:12;44:15;
45:3,8;48:13;49:1;
50:21,23;51:3;53:4,
15,25;57:1;62:4

**NOSEK (16)**
7:24;69:14,15,15,
21,23,25;70:6,10,14,
16;76:15,16,19;77:1,
5

**Nosek's (1)**
77:7

**note (46)**
19:5,7,9,14;21:9,
12;32:25;33:16,22;
35:3;40:20,25;41:1,
22;45:20;46:5,14;
47:1,3;48:2;52:4,6,9,
12;53:14,24;54:13,
15,17,18,22,25;
55:10;56:16,20,25;
57:2,5,19;58:11;
74:16;75:2,15,24;
77:18;80:14

**noteholder (2)**
47:25;48:1

**notes (4)**
24:2;56:4;72:24;
75:14

**notice (8)**
52:19,21;57:14,
16;58:12;79:9,25;
80:12

**noticed (1)**
26:21

**November (4)**
67:1,8,9,12

**Nowhere (1)**
75:21

**nullities (1)**
18:20

**Number (23)**
3:12,14;10:3;
15:14,15;16:8;47:22,
22;61:20;63:16;
69:18;71:5;72:14,
25;73:1;76:3;77:16;
79:5,15;80:1,2,8,23

**numbers (2)**
72:21;74:24

**NY (4)**
5:23;7:22;8:4,14

## O

**objected (2)**
13:7;14:21

**Objection (82)**
3:12,14,17,18,22,
23;4:2,3,6,7,10,11,
15,16;15:15;18:8,23;
20:17;21:20;25:8;
26:6,8;27:14;35:19;
63:19,25;64:4,8,11,
13,16,18,19,23;65:2,
6,10,16,25;66:5,6,18,
21,24;67:4,6,7,14,17,
21;68:25;70:1,2,3,
20,21,23,23;71:25;
72:15;73:10;74:1,12,
14,20;75:6,7,16,25;
77:7,9,10,13,13,25;
78:2,2,7,11,12,15,16

**objections (7)**
21:18;31:8,15;
60:11;65:8;72:14;
78:20

**obligation (2)**
12:2;52:18

**obligations (1)**
11:15

**obtain (1)**
40:2

**obtained (2)**
14:8;71:17

**obviously (1)**
11:7

**occupied (1)**
47:16

**occur (1)**
34:25

**occurred (3)**

28:25;36:24;48:14

**Ocracoke (2)**
9:6;28:6

**Oct (1)**
15:1

**Ocwen (4)**
30:6,6;56:22;76:8

**off (5)**
10:19;36:8;58:23;
68:9,16

**offer (1)**
16:22

**offered (1)**
76:10

**Office (9)**
12:10,10;19:16;
50:16;69:18,23;
70:11;73:12,13

**often (2)**
31:14;57:23

**Ohio (2)**
14:6,14

**Oil (1)**
14:17

**Okouneva (4)**
16:11;19:20;20:5,
7

**OLSON (1)**
8:19

**Omnibus (46)**
3:17,18,22,23;4:2,
3,6,7,10,11,15,16;
60:15;61:8;63:19,
25;64:4,10,15,18,23;
65:10,12,16,25;
66:20,24;67:3,16,19,
21;70:18,19,22;71:3,
25;72:8,14,15;74:12,
13;75:25;77:13;
78:15,16,20

**One (34)**
2:15;14:21;22:13;
25:21;32:5,6;35:7,
13;36:10;40:20,25;
41:2,18;43:17;54:16,
18,25,25;55:2;56:6;
58:6,23;59:25;60:9;
61:15;64:7,25;66:9;
67:11,24;73:14;
74:3;75:18;80:25

**one-million- (1)**
18:1

**ones (1)**
47:5

**only (28)**
12:25;20:15;21:1,
7;25:5,21;30:4;32:1;
33:17;35:18;40:11,
22;41:1;42:24;
43:16,18;47:19;
50:15,18;51:8;61:7;
65:6;66:12;67:24;
68:10,21;74:14;

12-12020-mg  Doc 5266  Filed 09/25/13  Entered 10/03/13 10:10:03  Main Document

RESIDENTIAL CAPITAL, LLC, et al.  Pg 93 of 99

Case No. 12-12020-mg  September 24, 2013

78:21

operations@escribersnet (1)
5:25

opinion (8)
39:14;55:4,9,18,
22;56:1,1,20

opportunity (1)
79:9

opposed (2)
38:4;61:12

opposition (1)
34:19

Order (26)
3:7;10:17;11:16,
19;12:3,25;14:20,23;
16:4;28:25;29:3;
50:17;54:1;61:10;
64:1;65:18;68:14;
71:14;72:6;78:16;
79:4,8,11,15,18;
80:25

ordered (1)
28:16

orders (2)
30:16;61:13

ordinarily (3)
30:18;36:10;55:13

original (9)
16:14;19:5,6,17;
21:13;30:13;32:3;
39:8;47:2

originally (8)
13:7;16:10,13;
17:6;28:5,15;29:11;
73:14

originated (1)
75:17

originating (1)
21:8

origination (1)
29:17

others (3)
35:7;62:6;67:2

otherwise (4)
11:16;20:17;73:8;
75:4

ought (1)
63:4

out (15)
18:2;28:6;32:4;
35:15;37:5,16;
39:10;41:11;42:18;
50:16;52:7;58:23;
60:5;61:12;62:22

outside (1)
45:9

outstanding (7)
68:22;72:23;73:6;
75:1;76:7,11;77:18

over (9)
11:21;13:14;
15:16;17:20;45:15;
46:19;47:7,11;78:22

overcome (2)
71:21,24

overly (1)
13:12

overpayment (1)
68:24

overpayments (1)
68:5

overrule (1)
60:11

overturned (1)
28:25

owe (1)
75:23

owes (1)
17:24

owing (3)
68:24;73:8;76:7

own (7)
21:5;52:3,6,11;
54:24;55:10;59:11

owned (7)
40:20,25;41:1,19,
20,25;42:5

owner (14)
29:5;32:25;33:12,
15;35:3;40:4;53:13,
20,24;54:13;57:2,5;
58:4,11

ownership (5)
21:12;41:21;
55:12,17,22

owns (4)
33:22;54:25;
56:16;57:18

P

page (12)
10:6;15:14,18,19,
25,25;63:12,17;
65:15;66:23;67:20;
72:14

pages (2)
10:24;11:21

paid (9)
22:14,17;23:18;
68:9,14,16;71:13,17;
75:19

paper (4)
22:5;26:9,22,23

papers (11)
13:21;16:24;
18:12;23:2,17;24:6;
26:15;32:7;37:12;
44:7;74:13

paperwork (3)
22:15;24:5;26:19

paragraph (4)
59:2;71:5,12,16

Park (1)
8:12

PARKE (3)

8:1;10:13;11:11

Parker- (1)
27:22

PARKER-LOWE (77)
9:2,8;27:16,22;
28:9;42:18;43:4,24;
44:3,3,4,12,16,20,22,
24;45:5,7,14,17,21,
23,25;46:2,6,11,16,
22;47:6,10,15;48:5,
7,17,20;49:3,12,14,
16,24;50:1,3,5,7,7,8,
20;51:1,6,11,16;
52:7,18,25;53:7,10,
13;54:5,7,9,14;55:2,
11,14,23,25;56:9,11;
57:11,13;59:18;
60:1;61:7,17;62:7;
63:8,9

part (4)
26:1;29:15;34:15;
60:11

particular (2)
33:11;52:2

particularly (3)
17:24;28:19;30:19

parties (21)
11:22;12:17;
14:10;20:20;21:3,9,
10,15,17;22:8;45:15;
49:4,5,7;56:4,24;
61:11;62:21,23;
72:22;73:6

parties' (2)
30:5;39:5

party (21)
14:5;20:15;21:7,8,
23;24:1,18,19,19;
38:1;40:17;42:24;
52:21;53:22;54:19;
56:6,6,6,6;77:20;
78:9

past (3)
39:18;67:12;71:12

pauperis (1)
79:17

Pause (2)
69:1,7

pay (6)
47:11;62:6;71:8,8;
79:17,19

payment (5)
16:16;22:16;55:1;
66:14;69:3

payments (3)
23:18;27:2;68:15

payoff (7)
68:5,8,23,23;70:8;
71:1,6

penalty (1)
45:11

pending (6)
17:5,12;24:24;

25:18;62:15;79:1

Penina (1)
5:20

people (1)
50:16

percent (1)
73:17

performs (1)
13:24

period (2)
41:19,25

permit (3)
50:15;62:13,16

permits (1)
12:7

permitted (1)
74:1

permitting (1)
54:1

person (4)
14:5;25:22;38:24;
70:11

pertaining (1)
11:24

Phi (2)
77:22;78:8

P-H-I (1)
78:8

phone (6)
27:19,20;69:18;
70:6,11;76:21

pick (1)
29:20

piece (1)
22:4

piggy-backed (1)
42:14

place (1)
56:5

placed (1)
14:20;71:17

plaintiff (6)
33:9;59:5;79:7,17,
19;80:10

Plaintiffs (2)
5:4;29:4

Plaintiffs' (1)
4:21

plaintiff's (2)
79:16,20

plan (2)
66:11,12

plate (1)
61:21

Plaza (1)
8:3

pleaded (1)
59:19

pleading (1)
46:8

pleadings (1)
16:19

Please (2)

10:2;69:6

pled (2)
44:24;45:5

plenty (1)
59:23

plus (1)
17:25

podium (4)
10:9;15:16;16:5;
78:22

point (14)
29:18;37:5;40:20;
41:1,2;49:18;58:23;
64:21;66:13;73:5,
24;76:6,9;77:24

pointed (1)
32:4;42:18

pooling (3)
41:9;58:6;63:2

portion (1)
43:18

position (10)
14:13;16:20;17:1;
33:8;34:5;47:16;
53:5;57:3,25;62:13

positions (1)
39:5

possible (1)
36:11

potentially (1)
61:10

practical (1)
52:15

Practice (2)
35:6;68:19

practices (7)
29:9;32:23;33:24;
34:21;42:13,17;
70:25

precedent (1)
14:22

predated (1)
16:9

prejudice (5)
54:11;80:16,20;
81:1,13

premised (1)
42:8

premiums (1)
71:18

preparation (1)
14:9

prepared (1)
24:12

preparing (1)
15:7

pre-petition (2)
31:11;60:22

preponderance (1)
53:23

PRESENT (1)
9:10

presented (1)

24:1
**presenting (1)**
  32:6
**preserve (3)**
  11:25;12:2,24
**preserved (1)**
  11:23
**presumption (1)**
  71:22
**prevail (8)**
  33:25;34:8,14;
  36:8,9;43:5;52:11;
  62:2
**prevailed (1)**
  34:11
**prevent (1)**
  71:15
**previous (1)**
  80:22
**primarily (1)**
  42:10
**principal (1)**
  68:22
**privileged (1)**
  14:7
**privity (2)**
  46:24,25
**Pro (3)**
  9:11;16:3;17:8
**problem (1)**
  62:14
**problems (1)**
  35:20
**proce (1)**
  61:9
**procedure (3)**
  23:21;60:2,16
**procedures (11)**
  61:1,9,10;79:4,8,
  11,25,25;80:4,11;
  81:13
**proceed (6)**
  36:5;62:8,12,16;
  63:5;79:16
**proceeded (1)**
  29:23
**proceeding (29)**
  4:18,20;5:2;17:11;
  21:21;23:8;28:13;
  35:1,3;49:5;53:6,8;
  54:12;57:1;61:18;
  62:20,24;78:21;79:3,
  18,21,23,24;80:7,8,
  15,23;81:1,8
**proceedings (7)**
  17:17;21:5,10;
  73:3;79:1;80:3;
  81:24
**proceeds (1)**
  17:25
**process (4)**
  17:13;20:22;28:4;
  61:13

**processes (1)**
  14:12
**produce (2)**
  21:12,15
**produced (1)**
  11:21
**production (1)**
  14:7
**product-related (1)**
  12:2
**professionals (9)**
  10:20;11:10,10,15,
  17;12:4,8;14:24;
  15:6
**proffer (1)**
  21:13
**progress (1)**
  80:2
**prohibited (1)**
  14:15
**promissory (3)**
  41:21;45:20;46:5
**pronounce (1)**
  77:24
**proof (18)**
  15:15;17:19,22;
  18:8,23;21:4,19,24;
  27:15;30:9,11,13;
  35:19;45:1;55:6;
  71:22;75:14;77:17
**proofs (8)**
  60:8,11,15,17;
  67:8;72:22;75:13,21
**proper (6)**
  24:5;45:2;55:21;
  57:2;69:18;71:2
**properly (6)**
  21:23,23;26:21;
  56:24,25;80:14
**properties (1)**
  75:14
**property (13)**
  18:19;20:21,25;
  21:6;22:24;26:16;
  29:1;36:18,23;37:2;
  55:20;68:14;71:15
**proposed (2)**
  14:20;65:21
**proposition (1)**
  14:19
**prosecuted (1)**
  31:5
**protect (1)**
  68:14
**protections (1)**
  48:3
**prove (1)**
  19:1
**proven (2)**
  19:4;20:17
**provide (3)**
  26:12,14;52:21
**provided (11)**

12:16;26:11,12;
33:12;55:6;71:23;
77:12;79:5,8,10;
80:12
**provides (3)**
  11:20;12:3;66:8
**provisions (1)**
  14:23
**public (1)**
  20:22
**Pull (1)**
  19:24
**purported (1)**
  34:25
**purporting (1)**
  31:10
**purposes (2)**
  30:21;54:18
**pursuant (1)**
  81:2
**put (7)**
  34:19;43:18,21;
  50:6;52:4;68:6;
  81:10
**puts (1)**
  41:21

## Q

**Quadrangle (1)**
  7:20
**quantified (1)**
  68:20
**quantum (1)**
  36:7
**quasi-judicial (1)**
  28:13
**quick (1)**
  23:7
**quickly (1)**
  23:5
**quite (4)**
  13:18;31:14;33:9;
  80:19

## R

**Rah (2)**
  77:22;78:9
**R-A-H (1)**
  78:9
**raise (1)**
  81:20
**raised (5)**
  30:25;32:3,5;
  73:21;81:5
**raises (1)**
  59:23
**raising (1)**
  14:11
**RALI (3)**
  41:17,25;42:5
**rate (9)**

45:15,20;46:19;
47:7,11;73:15,19;
74:16,19
**rather (2)**
  30:9;37:2
**RE (5)**
  3:2;14:2,5,13,17
**reach (3)**
  34:14,15;70:4
**read (5)**
  13:10;38:6;71:7,
  19;73:22
**ready (2)**
  17:15;23:1
**real (4)**
  20:21,25;21:6;
  60:20
**realize (1)**
  73:22
**really (5)**
  13:15;19:18;
  31:13;43:9;73:24
**reason (3)**
  45:8;59:20;68:12
**reasonable (1)**
  68:18
**reasons (3)**
  65:19;66:8;71:11
**rece (1)**
  67:23
**receipt (1)**
  52:18
**receive (3)**
  77:3
**received (6)**
  16:16;24:6,11;
  58:24;67:24;72:17
**receives (1)**
  59:10
**recent (2)**
  17:13;74:17
**recitation (1)**
  28:3
**recited (2)**
  31:25;36:20
**recklessness (1)**
  12:6
**recognize (6)**
  36:15;37:20,21,
  24;50:23;51:4
**recognized (2)**
  13:24;35:11
**recognizes (1)**
  37:8
**reconfirm (1)**
  77:3
**reconstructed (1)**
  24:4
**record (7)**
  17:16;20:2,22;
  54:2;55:8;21;65:11
**recorded (1)**
  71:15

**recordings (1)**
  12:1
**Records (10)**
  4:12;14:16;26:25;
  31:9,13;65:17;66:2,
  5;71:6;76:6
**recover (1)**
  36:22
**recoverable (2)**
  43:19,25
**refer (1)**
  69:2
**referencing (1)**
  67:20
**referring (1)**
  68:11
**refile (1)**
  54:12
**refinance (1)**
  28:6
**refinanced (1)**
  75:18
**reflect (2)**
  24:11;66:2
**refuse (1)**
  48:5
**refusing (1)**
  51:23
**regard (2)**
  36:12;39:3
**regards (5)**
  60:13,15;63:15,
  24;68:3;72:6
**register (1)**
  75:9
**regret (1)**
  30:2
**regularly (2)**
  33:20,20
**reinstated (1)**
  51:17
**reject (3)**
  57:17,19,20
**rejected (2)**
  58:8,20
**rejecting (1)**
  58:25
**rejection (1)**
  57:13
**rejects (2)**
  58:11,12
**Related (5)**
  3:3;37:14;42:22;
  68:5;71:6
**relates (1)**
  16:13
**relating (2)**
  12:4;75:13
**relationship (2)**
  40:11,18
**release (1)**
  19:3
**relief (15)**

11:13;13:23;15:3;
31:4;39:11,14,22,23,
24;40:1;49:11;
52:14;64:11;65:4;
81:3
**relieved (2)**
11:17,23
**remain (2)**
29:2;40:1
**remainder (1)**
38:6
**remaining (1)**
67:13
**remand (1)**
55:15
**remedy (2)**
49:9;52:16
**removed (2)**
29:7;62:17
**reorganization (2)**
66:11,13
**repayment (1)**
46:17
**reply (6)**
27:6;70:7,18;71:3,
3;73:22
**report (9)**
10:21,23;11:3,5,7;
12:5;14:9;15:8;80:2
**reportedly (2)**
64:6,25
**reporting (1)**
77:7
**represent (1)**
77:1
**representation (6)**
34:25;35:2;42:20;
53:6,9,12
**representations (1)**
35:10
**representative (1)**
53:10
**represented (1)**
49:6
**representing (1)**
17:8
**represents (1)**
24:18
**request (3)**
13:25;42:2;58:25
**requested (4)**
13:23;28:10;
64:11;65:4
**requests (2)**
11:18;57:23
**required (1)**
80:3
**requirements (1)**
28:15
**Requiring (1)**
14:7
**res (2)**
80:20;81:10

**ResCap (3)**
47:23;61:21;64:10
**rescind (8)**
28:11;39:20;48:1;
51:24;52:12,17;
53:1;58:1
**rescission (22)**
28:10;42:2;47:21;
48:5;51:23;52:1,4,6,
8,16,19;57:14,16,20,
23;58:9,12,14,21,25;
59:11,13
**Residential (11)**
3:20,25;7:3,11;
10:3;20:22;29:6;
33:10;41:12,15,20
**resolution (1)**
70:4
**resolve (2)**
13:6;43:10
**resolves (1)**
12:15
**respect (19)**
13:5;20:19;32:17,
22;34:18;43:5,20;
45:24;47:17;50:22;
51:14;61:19;62:9,
13;70:21;71:25;
74:13,14;76:1
**respond (5)**
11:17;44:7,14;
51:12;66:15
**responded (1)**
21:22
**responding (2)**
51:22;52:8
**responds (1)**
59:11
**response (20)**
12:15;13:10;19:2,
16;31:14;32:8,11;
35:19;51:25;68:6;
70:1,23;75:5,7,15,
17;76:24;77:18,24;
78:8
**responses (5)**
65:8;67:23,24;
72:17;75:21
**responsibilities (1)**
11:24
**rest (2)**
71:19;81:10
**restrictions (1)**
14:20
**result (5)**
34:13;50:10,14;
55:13;71:11
**rethink (1)**
62:12
**return (2)**
72:9;76:24
**reverse (2)**
20:23;54:1

**reversed (7)**
29:13,14;30:21;
31:3;53:19;54:9;
55:5
**review (4)**
19:8;32:6;35:17;
71:6
**reviewed (10)**
13:21;16:24;64:4,
22;70:17;74:11,12;
77:6;78:7,8
**reviews (1)**
57:24
**Rex (2)**
9:3;27:15
**RFC (5)**
29:22;40:20,22,
25;41:21
**right (44)**
13:17,19;16:2;
19:24;25:5,23,25;
27:3,5,12,21,25;
38:12;42:6;44:2;
48:19;54:8;56:8,10;
57:10;59:15;61:4,
15;64:3,4,22;65:13,
20,23;67:3;69:24;
70:15,16;72:12;
74:10,11;75:10,12;
76:13,25;77:4,6;
79:12;80:18
**rights (8)**
21:5;29:24;30:5;
39:12,12,19;77:25;
78:11
**rise (1)**
47:8
**road (1)**
10:20
**ROBERT (2)**
7:24;69:15
**robosigners (1)**
24:3
**Rockefeller (1)**
8:3
**role (2)**
12:4;51:21
**Ronaldo (1)**
72:20
**Rosenbaum (19)**
3:19,24;10:3,4,5,9;
15:13,19,24;44:11;
78:22,24,24;79:22;
80:6;81:11,15,17,22
**roughly (1)**
30:10
**rule (2)**
80:4;81:2
**ruled (2)**
17:14;34:15
**rules (2)**
50:18;81:8

---

# S

**sale (3)**
28:16;36:22,24
**sales (1)**
20:24
**same (11)**
14:19;17:22;25:2,
10,17;49:18;62:21;
64:8;65:2;71:16;
80:25
**satisfactory (1)**
55:6
**satisfied (1)**
71:20
**satisfy (2)**
19:9;71:9
**save (1)**
50:17
**saw (2)**
73:18;74:17
**saying (4)**
19:3;26:3;49:19;
57:17
**schedule (1)**
46:18
**scheduled (1)**
63:16
**scheduling (1)**
61:13
**scope (2)**
10:18;11:16
**Scott (2)**
3:19,24
**SD (2)**
14:6,14
**SDNY (1)**
15:1
**Se (2)**
9:11;17:8
**search (1)**
76:6
**seat (2)**
44:8,11
**seated (1)**
10:2
**second (6)**
16:14;64:3;71:16;
74:3;76:2;80:15
**Secretary (1)**
18:5
**Section (2)**
3:2;45:3
**secured (8)**
17:20;22:2;26:2,3,
5,16;77:20;78:9
**securitization (1)**
56:17
**securitized (2)**
41:14,18
**security (4)**
22:5,12,23;23:15

**seek (5)**
11:9;21:9;64:23;
66:1,14
**seeking (6)**
11:13;49:11,12;
64:5;73:2,3
**seeks (2)**
21:22;67:4
**seem (5)**
19:2;32:10,14;
34:22;44:8
**seemed (1)**
31:22
**seems (8)**
24:5;34:19;35:4;
36:11;37:14;44:13;
52:12;60:24
**SEIFE (16)**
8:6;10:10,11,12,
12,25;11:2,6;12:22;
13:9,12,15,18;15:8,
9,12
**send (2)**
19:11;57:16
**sending (1)**
16:17
**sends (1)**
57:16
**senior (1)**
64:9
**sense (1)**
62:20
**sent (6)**
17:2;19:6,16;28:9;
73:11,13
**separate (6)**
17:7;37:20;38:4;
52:1,13;75:14
**September (5)**
2:18;69:19;71:4;
76:20;80:24
**serve (1)**
80:14
**service (1)**
81:2
**serviced (2)**
75:17;76:8
**servicer (22)**
30:7;33:21;35:9;
39:6,7,18;40:5,23;
41:6,13;47:6,19;
48:3;51:13;53:24;
56:22;57:23;58:10,
12,18,20;59:10
**Servicing (10)**
3:3;29:24;30:5;
39:12,12,19;41:9;
57:22;58:6;63:2
**set (9)**
10:19;11:18;
17:14;35:15;36:22;
37:16;56:17;61:13;
79:8

**sets (1)**
65:18
**settlement (1)**
23:17
**seven (3)**
35:6,15;66:24
**several (2)**
28:4;35:7
**shady (1)**
70:24
**shall (1)**
12:23
**shareholders (1)**
14:1
**shed (1)**
41:7
**sheet (1)**
74:6
**shifted (1)**
18:25
**shortfall (2)**
70:8;71:10
**Show (6)**
22:4,4,11;26:4,24;
46:16
**showing (2)**
21:3;71:24
**shows (2)**
22:15;71:8
**sic (6)**
32:1;33:24;34:21;
64:23;65:10;72:20
**side (4)**
34:19,20;37:12;
41:7
**sides (2)**
31:18;48:12
**signature (1)**
24:7
**signatures (1)**
24:3
**signed (1)**
18:15
**sign-in (1)**
74:6
**signs (1)**
24:3
**SILVERMANACAMPORA (2)**
7:18;69:16
**similar (3)**
64:18;72:25;74:25
**similarly (2)**
42:17;75:9
**simply (7)**
34:2;39:11;59:11;
62:23;65:17;75:1;
76:10
**six (3)**
29:8;30:10;72:17
**skipping (1)**
65:15
**somebody (4)**
57:17,18;58:15;

81:9
**somehow (1)**
18:19
**someone (3)**
27:18;52:11;54:21
**somewhat (1)**
16:19
**Sons (1)**
14:6
**sorry (13)**
12:20;15:18,19;
22:7,25;23:13;28:2;
44:12;54:6;63:18;
65:11,13;67:24
**sort (1)**
30:23
**sought (2)**
13:23;15:4
**South (1)**
8:21
**speak (5)**
44:5;57:11;61:7;
69:18;76:20
**speaking (2)**
50:9,12
**Special (3)**
7:19;69:9,16
**specific (9)**
22:20;30:15;
33:16;53:19;55:7;
61:15;63:5;73:7;
76:11
**specifically (14)**
13:22;21:11;
31:17;33:4,15;
35:15;38:10,20;
40:4;41:11;47:18;
70:21;74:8;79:4
**spoke (1)**
69:23
**stage (3)**
33:23;46:8,15
**stand (2)**
19:22;21:11
**standard (3)**
33:2;35:17;39:4
**standing (4)**
21:7,18;34:3;57:3
**state (36)**
18:9;21:13;23:8;
24:24;25:3,11,18;
30:16,18;31:1,2,4;
32:1,13,25;33:23,24,
25;34:1,9,11;37:18,
19,19;46:21;48:15,
22;50:17;55:4;57:2;
62:14,15,17;68:13;
75:24;81:3
**stated (10)**
39:14;43:12,16;
45:15,20;46:5,14;
74:16;75:15;79:19
**statement (7)**

43:18;51:24;
54:21;68:8;71:6;
75:3;76:5
**statements (4)**
22:14;23:18;
35:12;72:24
**States (6)**
2:14;37:20,21;
66:10;75:16,18
**stating (2)**
30:22;34:7
**Status (3)**
3:2;14:10;17:10
**statute (8)**
31:25;32:12;34:1;
43:6;44:15;45:3,4,10
**statutes (1)**
20:24
**statutory (3)**
14:13;31:2;45:11
**stay (8)**
29:25;30:3;31:5;
33:21,22;53:22;
62:13,23
**Stephan's (1)**
53:11
**steps (1)**
34:17
**still (14)**
17:5,12;27:10;
29:1,1;37:3;39:12,
20;46:7;56:21;
58:13;60:22;64:11;
65:4
**stipulates (1)**
21:11
**stop (4)**
44:25;49:25;50:2,
4
**Street (3)**
5:22;7:4;11:12
**strike (1)**
36:10
**subject (4)**
32:13;66:17;
79:23,24
**subjects (1)**
51:25
**submission (2)**
27:13;59:17
**submit (3)**
72:5;76:9;78:15
**submitted (10)**
12:13;21:25;23:3;
38:23,24,24;42:19;
64:1;72:22;75:6
**submitting (1)**
60:16
**subsequently (4)**
64:7,12;65:1,5
**subsidiaries (1)**
66:16
**substantial (4)**

15:3;30:9;79:9;
80:12
**substantially (2)**
80:9,24
**substitute (1)**
29:6
**successful (3)**
28:24;29:12;49:22
**successor (1)**
40:13
**successors (1)**
40:13
**sue (2)**
39:7;45:11
**sufficient (8)**
20:20;26:21;
30:21;33:19,23,25;
41:22;71:23
**suggested (2)**
60:2,16
**suit (2)**
16:10;59:1
**Suite (3)**
5:22;7:21;9:5
**suits (1)**
16:13
**summons (1)**
80:14
**sun (1)**
36:6
**Superseded (5)**
3:19,24;64:6,20,25
**supplemental (5)**
68:7,18;79:11,24;
80:3
**support (16)**
20:14;26:15;31:9,
13;37:6,23;41:22;
46:9;53:18;70:18,
19;71:24;75:2,6;
76:10;79:6
**supported (7)**
14:24;21:24;
26:11;64:8;65:2;
66:5;67:6
**supporting (1)**
13:22
**supports (7)**
14:18;22:1,23;
23:14;46:4;48:15,25
**supposed (3)**
52:12;56:5;57:15
**Sure (10)**
10:8;41:3;44:19;
51:1,16;60:21;
63:23;69:5;80:19;
81:9
**survive (1)**
35:14
**survives (2)**
43:3,3
**surviving (10)**
34:16;59:16,21;

60:6;61:25;62:3,5;
64:12;65:5,9
**suspended (1)**
21:10
**sustain (1)**
77:9
**sustained (7)**
67:17;72:1;73:10;
74:20;77:14;78:3,13
**Sustaining (1)**
78:10
**sustains (4)**
64:15;65:10;
66:20;75:25
**switch (1)**
12:19

**T**

**talk (2)**
62:7;70:1
**talking (1)**
25:19
**tax (1)**
71:15
**taxes (6)**
66:15,17;68:13,
13;71:13,13
**tax-like (1)**
18:1
**telephone (3)**
50:15,16;74:6
**TELEPHONICALLY (4)**
7:15;8:16,25;9:8
**telling (3)**
19:6;25:14;62:19
**tells (1)**
31:13
**ten (2)**
37:1;59:2
**term (1)**
57:14
**termination (1)**
11:14
**terms (3)**
51:21;60:16;68:10
**terribly (1)**
62:11
**testimony (2)**
38:10,19
**Thanks (1)**
81:22
**theories (1)**
60:4
**theory (6)**
16:19;37:21;38:3;
51:5,7;52:5
**therefore (9)**
18:25;31:4,20;
32:13;40:14;47:19;
48:21;53:19;57:3
**thinking (2)**
34:2;61:8

**third (1)**
81:14
**third-party (2)**
14:2,15
**THOMAS (1)**
8:25
**thorough (1)**
11:5
**though (2)**
42:10;58:24
**thought (3)**
40:24,25;41:18
**three (3)**
42:3;49:21;67:23
**tied (1)**
38:7
**TILA (24)**
28:11,18;29:8;
31:2;35:8;39:3,7,18;
40:4,5;42:9,11,15;
43:1,2,3,6,13,17;
51:14;52:11;58:17,
17;61:25
**TILA's (1)**
35:10
**TIMELY (1)**
79:19
**title (3)**
21:4,16;29:1
**titles (2)**
20:21,23
**today (8)**
10:13,15;11:8;
36:7;63:16;67:20,
25;72:5
**today's (2)**
43:19;63:12
**told (2)**
25:25;77:1
**TOLLES (1)**
8:19
**took (2)**
28:6;47:17
**top (1)**
58:23
**tort (1)**
49:4
**total (1)**
43:22
**touching (1)**
14:11
**trade (4)**
29:9;32:23;35:6;
42:13
**transaction (6)**
31:19,21;32:13;
46:7;52:12,20
**Transcribed (1)**
5:20
**transcripts (1)**
12:1
**transfer (5)**
12:23,24;13:13;

54:20;56:4
**transferees (1)**
47:2
**transferences (1)**
20:24
**transferred (2)**
11:22;30:6
**transferring (1)**
39:11
**Treasury (1)**
18:2
**trial (6)**
17:16;53:18;54:1,
3;55:5,20
**triggered (1)**
36:18
**TRS (1)**
14:3
**true (3)**
20:15;24:19;32:24
**trust (3)**
33:11;56:17,21
**trustee (7)**
29:5,6;33:10,17;
41:12;56:17;59:3
**Trustee's (1)**
12:9
**Truth (4)**
28:10;44:5;47:20,
21
**try (3)**
25:15;54:3;61:13
**trying (4)**
39:17,18;60:2;
69:17
**Tryon (1)**
7:4
**turn (2)**
15:16;78:21
**Turning (1)**
13:14
**turnover (1)**
13:7
**turns (1)**
51:20
**twenty- (2)**
64:22;66:23
**Twenty-Eighth (4)**
4:11;65:16,25;
66:20
**Twenty-Fifth (4)**
3:23;64:18;65:12,
13
**Twenty-Fourth (7)**
3:18;63:19,25;
64:4,15;65:10;67:16
**Twenty-Ninth (3)**
4:16;67:3,16
**Twenty-Seventh (8)**
4:7;70:19;72:15;
74:12,13;75:25;
77:13;78:16
**Twenty-Sixth (8)**

4:3;67:21;70:18,
19,22;71:25;72:6;
78:15
**two (9)**
11:11,25;42:9;
60:14;62:20;67:19;
68:9;71:11;78:25
**two-month (1)**
42:4
**type (1)**
61:8
**types (1)**
35:15

**U**

**UCC (3)**
18:1,18;56:3
**UCCs (1)**
78:10
**ultimately (2)**
43:24;62:2
**Um-hum (1)**
37:25
**unable (1)**
18:3
**unaffected (1)**
78:1
**uncontested (7)**
63:22;64:1,13,20;
65:6;66:18;67:14
**Under (44)**
3:2;11:16;12:1;
18:9;27:13;28:10,
12;31:20;33:23;
34:1,20,24;35:9,12,
13,24;36:15;37:5;
38:3,8,20;39:7,10,
18;40:3;42:12,15;
43:1,6;44:15;45:2,9;
48:13,15;49:1;
51:25;55:19;56:3;
59:16;63:2,12;
72:13;78:20;79:4
**understood (1)**
53:25
**unfair (7)**
29:9;32:22;33:24;
34:4,20;35:5;42:13
**unfortunately (1)**
39:8
**Union (1)**
75:19
**UNISON (1)**
81:23
**United (3)**
2:14;14:13;15:2
**unknown (1)**
16:22
**unless (1)**
31:4
**unsecured (3)**
17:21;26:2;68:4

**unsuccessful (1)**
28:23
**untimely (1)**
26:10
**unwind (1)**
52:20
**up (8)**
19:1,21;28:19;
29:21;35:18;50:6;
53:21;74:3
**upon (6)**
21:6,10;51:22;
52:18;61:18;81:3
**use (1)**
50:5
**usual (1)**
50:18
**usurious (2)**
45:14;46:18
**usury (15)**
29:9;31:17,21,23;
32:1,13;34:18;35:8;
44:6,12,15;45:3;
59:17;60:5;62:5

**V**

**VALEEVA (49)**
9:11;16:11;17:5,
13,18;18:15,24;19:5,
20,23;20:1,4,4,7,8,9,
10,12,18,19;21:16,
19;22:2,7,10,14,19,
21,25;23:5,10,13,17,
21,23,25;24:18,23;
25:1,5,8,13,19,25;
26:6,18,25;27:2,4
**Valeeva's (1)**
27:8
**Valencia (1)**
72:21
**Valencias (2)**
74:10,18
**Valencias' (2)**
74:20,25
**Valencia's (1)**
75:8
**valid (6)**
22:1;36:14;39:11,
14;47:4;49:1
**validity (2)**
30:14;57:24
**value (3)**
36:22;37:1,2
**varies (1)**
37:19
**various (2)**
11:13;12:9
**VI (1)**
78:21
**viable (2)**
51:8;58:15
**vicarious (6)**

37:21,23;38:3;
51:5,6,8
**vice (1)**
16:3
**view (1)**
56:24
**violate (1)**
42:12
**violation (5)**
21:5;43:13;51:19;
52:1,2

**W**

**wait (2)**
29:21;44:18
**WALPER (1)**
8:25
**wants (2)**
15:5;63:5
**warehouses (1)**
40:25
**way (2)**
51:14;62:11
**Weber (1)**
68:1
**Webster (17)**
38:21;67:25;68:8,
15,20,24;69:10,13,
18,25;70:22,23;
71:23;72:1;74:4,5,9
**Webster's (2)**
68:3,3
**weeks (3)**
60:14;66:25;68:9
**West (1)**
5:22
**What's (11)**
17:10;23:7;32:19;
34:17;45:13;47:4;
49:11;52:5;54:24;
56:15,19
**whereabouts (1)**
19:4
**whereby (1)**
21:9
**Whereupon (1)**
81:24
**white (1)**
56:1
**whole (1)**
71:7
**who's (2)**
11:1;22:8
**whose (1)**
57:19
**willful (1)**
12:6
**William (2)**
74:23;75:11
**Williams (7)**
5:2;80:7,7,10,18,
22;81:7

RESIDENTIAL CAPITAL, LLC, et al.

Case No. 12-12020-mg

September 24, 2013

**Williams' (1)**
80:15
**willing (1)**
61:6
**window (1)**
42:4
**wish (5)**
13:4,19;19:21;
24:17;27:6
**Wishnew (40)**
15:16,22,23;16:3;
60:12,12,21;61:4,6,
23;62:10;63:7,11,18,
21,24;64:17;65:11,
14,21,24;66:22;
67:18;69:5,11;72:2,
5,8,11,13;73:17,20,
23;74:16,22;76:2;
77:15,23;78:14,19
**withdraw (1)**
17:7
**withdrawal (2)**
76:24;77:10
**within (2)**
12:5;21:7
**without (2)**
21:3;43:11
**withstand (2)**
33:1;36:4
**withstood (1)**
30:20
**witness (1)**
11:25
**WL (1)**
15:1
**Wolf (1)**
11:12
**Wolicki (1)**
5:20
**Wootton (3)**
74:24;75:11;76:1
**Woottons (5)**
75:6,13,18,22,23
**Woottons' (2)**
75:15,17
**wore (1)**
13:9
**work (3)**
11:8;12:2;61:14
**works (1)**
50:18
**writing (1)**
11:3
**written (1)**
61:22
**wrong (2)**
55:22,23
**wrongdoing (2)**
42:4;73:8
**wrongful (22)**
32:17,18;35:17,
21;36:16;37:6,8,15,
23;38:2;48:10,11,13,

16,18,22;49:2,3,10;
50:24,24;51:10
**wrongfully (1)**
58:11

**Y**

**year (2)**
17:15;26:14
**years (5)**
11:25;22:3,16;
42:3;49:21
**yesterday (6)**
12:14;16:4;64:1;
73:11,12;77:2
**York (5)**
2:16,16;5:23;8:4,
14

**Z**

**Zenaida (1)**
72:20

**0**

**01309 (1)**
80:9
**06 (2)**
42:1,1

**1**

**1 (5)**
63:13;64:11;65:3;
66:7;67:7
**10 (1)**
65:15
**10:02 (1)**
2:19
**100 (3)**
7:4,20;36:2
**10040 (1)**
5:23
**101 (2)**
9:5;14:17
**10112 (1)**
8:4
**10169 (1)**
8:14
**104 (1)**
14:17
**1091 (1)**
77:16
**11 (1)**
66:23
**11:55 (1)**
81:24
**115,000 (2)**
46:6,17
**11753 (1)**
7:22
**12 (1)**

79:16
**12,000 (1)**
68:20
**12,000-dollar (1)**
68:4
**12-01896 (1)**
80:23
**12-02069 (2)**
79:3,14
**12-02069-mg (1)**
4:18
**12-12020 (1)**
10:3
**12b5 (1)**
81:2
**12b6 (1)**
81:3
**13- (1)**
80:8
**13-01309 (1)**
80:19
**13-01309-mg (1)**
5:2
**1349 (1)**
76:3
**13th (1)**
10:21
**15,000 (1)**
42:22
**16 (3)**
15:14,19;80:1
**16th (1)**
67:8
**17 (4)**
15:19,21,25,25
**17th (1)**
8:13
**18 (2)**
63:12;80:2
**1819 (1)**
7:12
**192nd (1)**
5:22
**1982 (1)**
14:6
**1984 (1)**
3:14
**1985 (1)**
14:14
**1989 (1)**
14:18
**1991 (1)**
3:15
**1997 (2)**
14:25;15:1

**2**

**2,235 (1)**
10:24
**20 (2)**
4:20;14:6
**2003 (1)**

68:13
**2003/2004 (1)**
71:13
**2004 (1)**
68:13
**2005 (6)**
16:13;22:16;68:5,
8;71:14,18
**2006 (1)**
28:6
**2008 (1)**
28:8
**2009 (6)**
14:4;16:16;22:17;
28:9;14;59:1
**2010 (1)**
16:16
**2011 (1)**
16:17
**2012 (5)**
17:7;67:1,8,10;
80:24
**2013 (6)**
2:18;67:13;71:4;
79:15;80:1,25
**20th (3)**
69:19;71:4;76:20
**21 (1)**
4:20
**217,450 (1)**
16:15
**22 (2)**
4:20;63:18
**23 (1)**
67:20
**230 (1)**
8:12
**24 (3)**
2:18;45:9;72:14
**24.9 (1)**
45:3
**241,000 (1)**
17:20
**24-9b (1)**
32:12
**24th (1)**
59:1
**25 (2)**
65:15;66:23
**25th (1)**
71:14
**2617 (1)**
74:24
**2618 (1)**
74:24
**2619 (1)**
74:24
**2620 (1)**
74:24
**26th (1)**
80:24
**27960 (1)**
9:6

**27th (2)**
10:17;79:14
**28202 (1)**
7:5
**2869 (1)**
72:21
**2872 (1)**
72:21
**2874 (4)**
72:21;73:14;
74:15,21
**28th (1)**
80:1
**29-4 (1)**
32:1

**3**

**3 (1)**
71:18
**3.7 (1)**
17:21
**30 (2)**
8:3;67:12
**300 (1)**
7:21
**300,000 (2)**
31:20;32:2
**30th (1)**
67:9
**314 (1)**
14:14
**316 (1)**
14:14
**317 (1)**
15:2
**3293 (1)**
79:5
**35 (1)**
9:4
**35203 (1)**
7:13
**355 (1)**
8:21
**35th (1)**
8:22
**365 (1)**
3:2
**3700SAS (1)**
14:25
**3rd (1)**
10:16

**4**

**4 (1)**
71:5
**407 (1)**
14:3
**46 (2)**
14:14;15:2
**4688 (1)**
3:12

**RESIDENTIAL CAPITAL, LLC, et al.**
Case No. 12-12020-mg

September 24, 2013

**4734 (1)**
  4:2
**4735 (1)**
  4:6
**4744] (1)**
  3:5
**4748 (1)**
  4:10
**4767 (1)**
  3:14
**4812 (1)**
  3:7
**4821 (1)**
  4:15

**5**

**5 (6)**
  15:14,25;63:13;
  71:12,17;80:25
**5.25 (1)**
  35:22
**5130-3 (1)**
  71:5
**525,000-dollar (1)**
  28:7
**558 (1)**
  14:3
**566 (1)**
  14:3
**5677 (2)**
  3:12;15:15

**6**

**6 (3)**
  15:25;63:16,25
**630144 (1)**
  15:1
**6-million-dollar (1)**
  35:23

**7**

**7 (1)**
  5:4
**7- (1)**
  68:21
**7,000 (1)**
  68:12
**700 (1)**
  5:22

**8**

**8 (2)**
  5:4;67:20
**8,000 (1)**
  68:21
**83,000 (1)**
  30:12
**830 (1)**
  14:6

**832 (1)**
  14:6

**9**

**9 (3)**
  10:6;15:1;72:14
**90071 (1)**
  8:23
**92 (1)**
  14:17
**95 (1)**
  14:25
**973406-2250 (1)**
  5:24
**9th (1)**
  59:2