## Exhibit 3

**Supplemental Horst Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | |
|---|---|
| | ) |
| In re: | )     Case No. 12-12020 (MG) |
| | ) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | )     Chapter 11 |
| | ) |
| Debtors. | )     Jointly Administered |
| | ) |

------------------------------------------------------------

**SUPPLEMENTAL DECLARATION OF DEANNA HORST IN SUPPORT OF
DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS' TWENTIETH, TWENTY-
FIRST, TWENTY-SECOND, TWENTY-SIXTH, AND TWENTY-SEVENTH
OMNIBUS CLAIM OBJECTIONS (BORROWER CLAIMS WITH INSUFFICIENT
<u>DOCUMENTATION</u>)**

Deanna Horst, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury:

1.       I am the Senior Director of Claims Management for Residential Capital,

LLC and its affiliates ("<u>ResCap</u>"), a limited liability company organized under the laws of the

state of Delaware and the parent of the other debtors and debtors in possession in the above-

captioned Chapter 11 Cases (collectively, the "<u>Debtors</u>").  I have been employed by affiliates of

ResCap since August of 2001 and have held my current position since June of 2012.  I began my

association with ResCap in 2001 as the Director, Responsible Lending Manager, charged with

managing the Debtors' responsible lending on-site due diligence program.  In 2002, I became the

Director of Quality Asset Management, managing Client Repurchase, Quality Assurance and

Compliance—a position I held until 2006, at which time I became the Vice President of the

Credit Risk Group, managing Correspondent and Broker approval and monitoring.  In 2011, I

became the Vice President, Business Risk and Controls, and supported GMAC Mortgage, LLC

and Ally Bank in this role.  In my current position, I am responsible for Claims Management and

Reconciliation and Client Recovery.

2.       I am authorized to submit this supplemental declaration (the

"Supplemental Declaration") in support of the *Debtors' Omnibus Reply in Support of Debtors'*

*Twentieth, Twenty-First, Twenty-Second, Twenty-Sixth, and Twenty-Seventh Omnibus Claim*

*Objections (Borrower Claims with Insufficient Documentation)* (the "Reply").[1]

3.       Except as otherwise indicated, all facts set forth in this Supplemental

Declaration are based upon my familiarity with the Debtors' books and records, information

learned from my review of relevant documents, and information I have received through my

discussions with other members of the Debtors' management or other employees of the Debtors,

and/or the Debtors' professionals and consultants.  If I were called upon to testify, I could and

would testify competently to the facts set forth in the Reply on that basis.

4.       A substantial portion of the claims addressed in the Reply are claims

relating to loan modifications either obtained from or denied by the Debtors.  To address the

allegations made in these claims and in the respective Responses, I, or other employees of the

Debtors under my supervision, examined the Debtors' books and records to verify that the

Debtors took the appropriate steps in considering each loan modification application and in

communicating to the Claimant the applicable reason for denying an application.  These

examinations included a review of the Claimant's payment history and the Debtors' internal

servicing notes for the Claimant's loan.  In addition, where applicable, my team reviewed the

Claimant's loan modification applications, loan modification approval letters, loan modification

denial letters, compliance with loan modifications (trial and/or permanent), and the Claimant's

compliance with any other payment plans (forbearance and repayment).  In addition, the Debtors

reviewed the relevant investor guidelines and/or directions relating to loan modification requests.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Reply.

The Debtors' books and records do not show any liability due and owing to the Claimants at
issue in the Reply.

## I.  **CLAIM OF MARK RAGONESE**

5.      Proof of claim no. 4496 of Mark Ragonese (the "Ragonese Claim") asserts
a $90,000 secured claim against ResCap, the stated basis for which is "Mortgage Note."  No
supporting documentation or further explanation is provided.  The Claimant's Response states
that the Ragonese Claim seeks redress for GMACM's purportedly improper denial of the
Claimant's application under the Home Affordable Refinance Program ("HARP"), resulting in
Claimant having to pay mortgage payments at least $12,544.48 more than he should have paid
prior to the transfer of his mortgage to Green Tree.  The Response states that the Claimant
obtained a loan refinancing under HARP from Green Tree in August 2013, shortly after the
Mortgage was transferred to Green Tree.  The Claimant does not explain the source of the
remainder of the $90,000 damages sought in the Ragonese Claim.

6.      According to a review of the Debtors' books and records, in April 2009,
the Claimant applied for a *loan modification* under the Home Affordable Modification Program
("HAMP"), not a *loan refinancing* under HARP.  In June 2009, the Claimant was denied a
HAMP modification because the Claimant's stated income in his HAMP application ($███[2] a
month in ███████████████████) was too low to support the mortgage.  In order to
reduce the Claimant's $█████ monthly mortgage payment to satisfy HAMP's requirement that
a modified mortgage payment be no greater than 31% of the Claimant's total income, GMACM
would have had to reduce the Claimant's monthly mortgage payment by approximately ██% to
$████ a month, which would have been an extraordinary modification that GMACM declined

---

[2] The Debtors have redacted certain sensitive information in this Supplemental Declaration.  An unredacted copy has
been furnished to the Court and the applicable Claimants.

to offer.  A GMACM employee contacted the Claimant by telephone on June 16, 2009 to inform him of the reason for the denial of his HAMP application.  The requirements for a HAMP loan modification differ markedly from the requirements for a HARP loan refinancing, which the Claimant was ultimately awarded by Green Tree.  Indeed, in September 2011, GMACM actually advised the Claimant that he should apply for a HARP loan refinancing, but the Claimant never followed up with GMACM.  *See* Ragonese Emails, attached hereto as <u>Exhibit A</u>.

## II.    CLAIM OF SONYA ANTHONY CURRY

7.    Proof of claim no. 5288 of Sonya Anthony Curry (the "<u>Curry Claim</u>") asserts a $50,435.32 secured claim against ResCap, the stated basis of which is "Mortgage Note."  The Curry Claim did not contain any supporting documentation.

8.    The Claimant's Response asserts that GMACM made an error in the Claimant's loan modification agreement dated January 19, 2010 (the "<u>Loan Modification Agreement</u>," a true and complete copy of which is attached hereto as <u>Exhibit B</u>), by which GMACM erroneously added an additional $50,435.32 to the Claimant's mortgage balance.

9.    The Loan Modification Agreement provides, in pertinent part, that:

> The new Principal balance of my Note will be [$]180,414.86 (the "<u>New Principal Balance</u>").… $50,435.31 of the New Principal Balance shall be deferred (the "<u>Deferred Principal Balance</u>") and I will not pay interest or make monthly payments on this amount.  The [New] Principal Balance less the Deferred Principal Balance shall be referred to as the "<u>Interest Bearing Principal Balance</u>" and this amount is $180,414.86.

Loan Mod. Agr. at ¶¶ 3.B - 3.D (emphasis added).

10.    The Loan Modification Agreement contains a drafting error: both the New Principal Balance and the Interest Bearing Principal Balance are listed as $180,414.86.  The New Principal Balance should have been listed as $230,850.18, the total unpaid principal balance of

4

the Claimant's mortgage as of December 18, 2009 (*see* Curry Loan Service History, attached

hereto as <u>Exhibit C</u>), <u>not</u> $180,414.86.

11.     The Claimant argues that the Interest Bearing Principal Balance should be

$129,979.55 ($180,414.86 less $50,435.32), rather than $180,414.86.  Adopting the Claimant's

position would mean that GMACM agreed to forgive $50,435.31 of the Claimant's principal

balance in the Loan Modification Agreement.

12.     GMACM's intention in entering into the Loan Modification Agreement

was to reduce the Claimant's monthly mortgage payments by making $50,435.31 of the

outstanding principal balance ($230,850.18) on her mortgage non-interest bearing.  GMACM

never agreed to forgive the Deferred Principal Balance.  Nothing in the Debtors' books and

records supports the Claimant's interpretation of the drafting error, nor would the Claimant's

interpretation be consistent with the Debtors' customary business practices.

13.     That the Loan Modification Agreement was not intended as a mechanism

for principal forgiveness is further supported by the "disclosure" page in the Claimant's loan

modification package, which was signed by the Claimant and which states that:

> your modified loan will now be a balloon mortgage. . . . Your new monthly
> payment of principal and interest will be calculated based on an extended
> amortization period of 480 months, and your loan will have a term of 289 months.
> Although your new payment will substantially pay down your loan balance, a
> 'Balloon Payment' for *the entire amount of your remaining unpaid principal
> balance will be due when the Term of your loan expires*, (the Maturity Date) or
> when you pay off the modified loan . . .

Loan Modification Agreement, at page 7 of 8 (emphasis added).

14.     Finally, had GMACM agreed to forgive $50,435.31 in debt to the

Claimant, GMACM would have, pursuant to its duties under federal law, issued the Claimant a

5

1099 Tax Form documenting cancellation of indebtedness income to the Claimant.  However,

GMACM never issued a 1099 Tax Form to the Claimant.

## III.    CLAIM OF GEORGE DAVIS

15.    As stated in the Reply, proof of claim no. 3443 of George Davis (the

"Davis Claim") asserts a $357,546.89 secured claim against GMACM, the stated basis of which

is "Mortgage Note.  would not [ac]cept any payments we sent to try to catch up our mortgage."

No supporting documentation is attached.

16.    The Response states that the Claimant attempted to pay a portion of his

mortgage arrears to GMACM on numerous occasions without success.  The Response also states

that the Claimant was denied a loan modification from various parties.

17.    The supporting documentation included in the Response only contains

evidence that partial mortgage payments were returned to the Claimant by the successor servicer

Green Tree, not by GMACM.  The Debtors' books and records reveal a single instance in which

the Claimant attempted to send a partial mortgage payment that GMACM refused because the

loan was in foreclosure.  On February 8, 2012, GMACM refused to accept one payment from the

Claimant in the amount of $4,000 on the ground that such amount was not sufficient to reinstate

the mortgage.

18.    With respect to loan modification applications, GMACM mailed nine

workout packages to the Claimant at his or his wife's request between June 5, 2009 and August

13, 2012.  The Claimant submitted six of these applications by mail between April 7, 2011 and

November 23, 2011, as well as submitting a seventh application online on March 9, 2012.  The

Claimant's second application was approved for a trial modification on June 27, 2011, but was

cancelled on September 2, 2011 due to the Claimant's failure to make the first trial payment.

The Claimant's sixth application was denied on December 28, 2011 because GMACM could not

reduce the Claimant's monthly mortgage payment enough to satisfy HAMP's requirement that

the modified mortgage payment be no greater than 31% of total income.  The Claimant's other

five applications for a loan modification were denied because the Claimant provided an

application with incomplete documentation and subsequently failed to provide the additional

documents requested.

## IV.    CLAIM OF WILLIAM AND KEIRAN WALKER

19.    As stated in the Reply, proof of claim no. 5529 of William C. Walker and

Keiran J. Walker (the "William Walker Claim") asserts a $402,433.20 unsecured claim against

ResCap, the stated basis of which is "Mortgage Loan."  No supporting documentation or further

explanation is provided.

20.    The Response alleges (without supporting documentation) that GMACM

promised the Claimants a loan modification with a 2% interest rate and modified payments that

would include their insurance and taxes, and the Claimants ultimately received a loan

modification with a 4% interest rate, with modified payments not including insurance and taxes.

The Response also alleges that GMACM wrongfully refused to use Mr. Walker's future

projected earnings or Mrs. Walker's future social security income to calculate their loan

modification.  In addition, the Response states that GMACM made false promises that there

would be other government programs that the Claimants could qualify for in the near future,

which the Claimants alleged caused them to sell "most of our personal property to stay in our

home [in] hopes of [a] new plan as promised by GMAC." Response at 2.  The Response revises

the proof of claim's damage total to $330,012.15.  All but $37,000 of this sum reflects the value

of personal property that the Claimants sold and credit card debt that they incurred to make their

mortgage payments.  *See id.* at 3. The stated basis for the remaining $37,000 of damages ("Lose

in Modification") is unclear.  *See id.*

21.      The Response's allegations are unfounded.  After completing a trial

period, the Claimants were approved for a permanent HAMP modification on September 13,

2010, reducing their interest rate from ███% to █% (with an interest rate ceiling of ███%)

and reducing their monthly payments from $██████ to $██████.  The Debtors' records do not

contain any evidence that the Claimants were ever told that their interest rate would be reduced

to 2% at any point.  In addition, the Claimants' mortgaged property is located in California,

where state law does not allow a borrower's taxes and insurance to be paid by a mortgage

company absent a borrower's request for the mortgage company to do so.  GMACM has no

record of the Claimants asking for this to occur.  GMACM was not allowed to use the Claimants'

projected future income in calculating the modification, as only current income that is able to be

proven can be used for purposes of a HAMP modification.

22.      The Claimants applied for additional HAMP loan modifications on May

16, 2011, and August 22, 2011.  The Claimants were denied modifications because the Claimants

had already received HAMP modifications.  On both occasions, the Claimants received a letter

regarding the modification denial and also spoke with a GMACM employee regarding the denial.

*See* Walker Letters, attached hereto as <u>Exhibit D</u>.

## V.      CLAIM OF JUANA CERNA

23.      As stated in the Reply, proof of claim no. 3816 of Juana Cerna (the "<u>Cerna</u>

<u>Claim</u>") asserts a $25,606 secured claim against GMACM and RFC, the stated basis for which is

"Settlement for second loan/ Account . . . overpayment."

24.      In the Response, the Claimant alleges that after she executed a loan

modification with GMACM in January 2010, GMACM requested $12,803 from the Claimant,

8

which amount the Claimant paid on February 26, 2010.  The Claimant alleges that GMACM was

not entitled to receive this $12,803 amount.[3]

       25.     This allegation is inconsistent with the sequence of events between the

parties.  The Claimant had two mortgage loans that were secured by her property at 14455 San

Ardo, La Mirada, CA 90638 and serviced by GMACM: a first lien mortgage (Loan No.

████████) and a second lien mortgage (Loan No. ████████).  The Claimant's loan

modification of January 2010 solely addressed the Claimant's first lien mortgage (modifying its

interest rate and deferring $████████ of the principal balance to make the interest bearing

principal $████████).  Thus, on February 7, 2010, the Claimant wrote a letter to GMACM

proposing to settle the second lien mortgage's outstanding principal balance of $85,348.03 for a

payment of $12,803.  *See* Cerna Letters, attached hereto as <u>Exhibit E</u>.  GMACM accepted the

settlement proposal on February 26, 2010, wrote off the balance remaining on the second lien

loan, and recorded a lien release of the second lien mortgage on or about March 2, 2010.  *See*

<u>Exhibit E</u>.  Thus, the $12,803 that the Claimant paid to GMACM was not an overpayment with

respect to her loan modification, but rather was consideration for GMACM's release of the

Claimant's second lien mortgage.

## VI.    <u>CLAIM OF FANNIE KENDRICK DIETRICH</u>

       26.     As stated in the Reply, proof of claim no. 1385 of Fannie Kendrick

Dietrich (the "<u>Dietrich Claim</u>") seeks an unspecified amount against GMACM.  The stated basis

for the claim is "Expected refinancing completed online . . .  reduced monthly payment."

       27.     In her Response, the Claimant alleges that "I was taken through the entire

loan modification . . . application process.  At no time after supplying this information was I

---

[3] The Claimant does not appear to explain the source of the remainder of her $25,606 in damages from the Debtors.

ny-1111851

contacted as to the outcome." Response at 1. The Response alleges that GMACM never responded to several of the Claimant's phone calls and emails and states that "restitution of over 2 years with no refinance is what I want addressed." *Id.* at 3.

28.     The Claimant's allegation that she was not contacted by GMACM is not accurate. The Claimant applied for a loan modification on November 2, 2011. The application was denied November 17, 2011 and a letter was sent to the Claimant stating "Based on the status of your loan and income provided, we are unable to reduce your interest rate, extend the loan term, or defer principle enough to reach an affordable payment under the HAMP criteria." *See* Dietrich Letters, attached hereto as <u>Exhibit F</u>. In addition, a GMACM employee spoke with the Claimant over the telephone on November 21, 2011 and explained that the Claimant had included a large one-time expense in her application that severely increased her expenses relative to her income, which may have contributed to the denial of her application. Accordingly, the Claimant re-applied for a loan modification on December 14, 2011. The application was denied on January 17, 2012, however, and a letter was sent to the Claimant stating that "we service your loan on behalf of an investor or group of investors that has not given us authority to modify your loan." *See* <u>Exhibit F</u>. This denial was due to the fact that the Claimant, who at the time was current on her mortgage payments, did not meet imminent default requirements (death, divorce, and/or disability) for modification of her Freddie Mac loan in the view of the investor group. A GMACM employee also called the Claimant on January 17, 2012 and informed her of the reason for the denial of her loan modification application.

29.     The Dietrich Claim also attaches a portion of a purported application for a loan modification from GMACM in May and June 2012. GMACM never received this

purported application and nothing in the Claimant's documentation establishes that these
application materials were ever actually submitted to GMACM.

## VII.    CLAIMS OF PHENON WALKER

30.    Phenon Walker has filed two proofs of claim at issue in the Reply, Claim
No. 5429 and Claim No. 4942 (collectively, the "Phenon Walker Claims").

31.    Claim No. 5429 asserts a $143,931.01 unsecured claim against ResCap,
the stated basis of which is "surplus check for 2011-money loan."  The proof of claim attaches an
escrow account statement from GMACM dated November 30, 2011.  No other explanation or
documentation is provided, nor has any response to the Objection been filed by the Claimant.  A
review of the Debtors' books and records reveals that there is currently a $▮▮▮▮▮ deficiency
in the Claimant's escrow account based on her failure to pay property taxes and insurance on the
mortgaged property since 2004.  Thus, there is no escrow surplus (or any other amount) currently
owing to the Claimant.

32.    Claim No. 4942 asserts a $1,096,291.07 unsecured claim against ResCap,
the stated basis of which is "monetary relief-foreclosure GMAC-MERS."  No other explanation
or documentation is provided, nor has any response to the Objection been filed by the Claimant.
A review of the Debtors' books and records reveals that foreclosure proceedings began on the
Claimant's mortgage on April 29, 2013.  However, the Debtors are not involved in any active
litigation initiated by the Claimant.

## VIII.    CLAIM OF BETTIE JEAN YELDER

33.    As stated in the Reply, proof of claim no. 2002 of Bettie Jean Yelder (the
"Yelder Claim") asserts a $100,000 secured claim against ResCap, the stated basis for which is
"Mortgage Note."

ny-1111851

34.     The Claimant's first Response states that "my claim should not be

disallowed, because of the mental hardship and financial hardship cause[d] by" the Debtors.  The

first Response provides no supporting documentation apart from a letter from GMACM dated

March 7, 2012, stating that a late fee was charged to Claimant's account for failure to timely pay

her monthly mortgage payment.  The second Response reiterates that the Claimant was caused

"mental, physical, and financial hardship" by ResCap and attaches various medical records of the

Claimant.  Nowhere in the proof of claim, the first Response, or the second Response does the

Claimant explain how specific actions by the Debtors harmed the Claimant.

35.     A review of the Debtors' books and records reveals that there is no active

litigation associated with this Claimant and the account is not currently in foreclosure.  The

Debtors' books and records reflect no liability due and owing to the Claimant.

## IX.    CLAIM OF FREDDIE M. SCOTT

36.     As stated in the Reply, proof of claim no. 3751 of Freddie M. Scott (the

"Scott Claim") asserts a $208,250 unsecured claim against ResCap.  The Scott Claim has no

stated basis, but attaches various loan-related documents.

37.     The Response alleges that representatives of GMACM and RFC (1)

overstated the income of the Claimant and her husband in their mortgage application (apparently

causing them to obtain a mortgage that they would not otherwise have qualified for), and (2)

misrepresented to Claimant and her husband that their mortgage would have a fixed rate, when it

actually had an adjustable rate, which subsequently caused the Claimant's interest payments to

balloon.

38.     A review of the note establishes that the Debtors played no role in the

origination of the Claimant's mortgage.  The Claimant's mortgage was originated October 26,

2001 by Stonecreek Funding Corporation ("Stonecreek").  Shortly after origination, Residential

12

Funding Company purchased the loan from Stonecreek, and securitized the loan into RAMP

Series 2007-RP1 (Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-

Through Certificates, Series 2007-RP1).  Homecomings began servicing the loan on November

21, 2001.

## X.   <u>CONCLUSION</u>

39.    Accordingly, based upon this review of Debtors' books and records, and

for the reasons set forth in the Reply, the Ragonese Claim, the Curry Claim, the Davis Claim, the

William Walker Claim, the Cerna Claim, the Dietrich Claim, the Phenon Walker Claims, the

Yelder Claim, and the Scott Claim should be disallowed and expunged.

Dated:  October 7, 2013

/s/ Deanna Horst
Deanna Horst
Senior Director of Claims Management for
Residential Capital, LLC