# **EXHIBIT 1**

| | |
|---|---|
| DOCKET NO. CV-09-5011591-S | : SUPERIOR COURT |
| RESIDENTIAL FUNDING COMPANY, LLC | : JUDICIAL DISTRICT OF STAMFORD/NORWALK |
| v. | : AT STAMFORD |
| THOMAS J. LA CASSE | : SEPTEMBER 13, 2012 |

## RESIDENTIAL FUNDING COMPANY, LLC'S SUPPLEMENTAL OBJECTION TO DEFENDANT'S MOTION TO VACATE JUDGMENT AND DISMISS WITH PREJUDICE

### INTRODUCTION

The plaintiff, Residential Funding Company, LLC ("RFC"), hereby submits this supplemental memorandum and objection to the Motion to Vacate Judgment and Dismiss with Prejudice (the "Motion") filed by the defendant, Thomas J. La Casse ("La Casse").

La Casse seeks to vacate a judgment of strict foreclosure entered against him nearly two and a half years ago after he failed to plead or otherwise defend RFC's attempt to foreclose on property located at 153 Valley Forge Road, Weston, Connecticut (the "Property"). La Casse claims that RFC committed "fraud" on this Court when it alleged in its Complaint that it was the current holder of La Casse's promissory note or mortgage. He claims that RFC did not hold the note at the time the foreclosure action was commenced. The uncontested evidence at the hearing will establish that RFC was the holder of La Casse's note before it commenced foreclosure proceedings and remains so to this day. Accordingly, his Motion should be denied.

1

## FACTUAL BACKGROUND

On January 30, 2006, the Plaintiff, Thomas La Casse ("La Casse") obtained a loan in the principal amount of $650,000 from Homecomings Financial Network, Inc. ("Homecomings") to assist him in the purchase of the $1.2 million Property. In connection with the loan, La Casse executed an InterestFirst Adjustable Rate Note (the "Note") (RFC Hearing Exhibit 2) by which he agreed to make certain monthly payments to repay the principal balance with interest over a period of thirty years. The Note was secured by an Open-End Mortgage Deed (the "Mortgage") (RFC Hearing Exhibit 3) naming MERS as the mortgagee, in its capacity as nominee for Homecomings and Homecomings' successors and assigns. By executing the Mortgage, La Casse specifically agreed to "grant and convey to MERS (solely as nominee for [Homecomings] and [Homecomings'] successors and assigns) and to the successors and *assigns* of MERS" the Property.

In February 2006, Homecomings sold the Note and specifically indorsed it to Residential Funding Corporation, which later changed its name to Residential Funding Company, LLC. The Note was indorsed in blank and held by Wells Fargo on behalf of RFC under a custodial agreement.

On March 30, 2006, RFC entered into a Standard Terms and Provisions of Sale and Servicing Agreement. (RFC Hearing Exhibit 4 -- Standard Terms and Provisions of Sale and Servicing Agreement.) This is an agreement between RFC as seller of adjustable rate mortgages and Luminent Mortgage Capital, Inc., Mercury Mortgage Finance Statutory Trust and MAIA

2

Mortgage Finance Statutory Trust as Initial Owner. Pursuant to this agreement, the La Casse Mortgage was sold by RFC to the initial owners on a "servicing retained basis…" (Exhibit 4, page 3, Preliminary Statement.) The Agreement further provided that RFC would continue to service and administer the loans, including the La Casse loan, as set forth in Article III of that Agreement.

Article III of the Agreement is titled: "Administration and Servicing of Mortgage Loans." (Exhibit 3, page 30.) Section 3.01 is titled "Company To Act As Servicer." (*Id.*) It states that RFC "shall act as master servicer" and "shall administer and service the mortgage loans per the terms of this agreement…" (Id.) Section 3.01 further provides

> The Company [i.e. RFC] shall have full power and authority to the extent provided herein, acting alone or through a subservicer as provided in section 3.02, to do or cause to be **done any and all things** which it may deem necessary or prudent in connection with such servicing and administration.

(*Id.*, emphasis added.)

Section 3.02 is titled "Agreements Between Company and Subservicer" and it authorizes RFC, as agent of the owners, to register loans with MERS or cause the removal from the MERS system any Mortgage Loans. Specifically, it provides:

> The Company [i.e. RFC] is authorized and empowered by the owners, in its own name or the name of the subservicer to register loans with MERS or cause the removal from Registration of any Mortgage Loans from the MERS system. Further to execute and deliver any and all instruments and assignments in the name of MERS as nominee of Owners.

(*Id.* at 31.)

3

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

Section 3.03 is titled "Collection of Certain Mortgage Loan Payments and Liquidation of Mortgage Loans." (Id. at 31.) This section provides that RFC shall cause all payments called for under the terms of the mortgage loans to be collected. (*Id.*) It gives RFC discretion to waive late payments, extend due dates for payments and waive prepayment penalties. (Id.)

Section 3.12 is the "Realization Upon Defaulted Mortgage Loans" clause. It specifically authorizes RFC to foreclose on defaulting loans on behalf of the owners. Specifically, it provides that RFC "**shall foreclose upon** or otherwise comparably convert the ownership of properties securing such mortgage loans as come into and continue in default..." (*Id.* at 37.)

Thereafter, additional agreements were executed including a Pooling And Serving Agreement between Structured Asset Mortgage II Inc., Depositor, Luminent Mortgage Capital Inc., sponsor, Wells Fargo Bank, N.A. as Master Servicer and securities administrator, and HSBC Bank USA, National Association as Trustee. (RFC Hearing Exhibit 5) This agreement concerned the mortgage loans sold by FRC pursuant to Exhibit 4 -- Standard Terms and Provisions of Sale and Servicing Agreement. This Pooling And Servicing Agreement defines Wells Fargo as Custodian and Master Servicer and RFC as Servicer. (*Id.* at 20, 29 and 47.) The mortgage loans subject to this agreement were the loans purchased by Luminent pursuant to the Exhibit 5, the Sale and Servicing Agreement. (*Id.* at 47-48.) The Agreement provides that Wells Fargo, as Master Servicer, "shall oversee the obligations of the related servicer [i.e. RFC] to service and administer the mortgage loans, including the La Casse loan. (*Id.* at 78.) In addition,

4

this Pooling and Servicing Agreement gives full powers, including the power to foreclose on defaulted mortgage loans, to Wells Fargo. (*Id.* at 81.)

Also executed was an Assignment Assumption and Recognition Agreement (RFC Hearing Exhibit 6) and a Servicing and Subservice Agreement. (RFC Hearing Exhibit 7) which additionally conferred and clarified RFC and GMAC as subservicer to collect mortgage loans and to foreclose on defaulted loans.

By 2009, La Casse had defaulted under the terms of the Note and Mortgage. After the La Casse went into default, on April 26, 2009, RFC acquired possession of the original Note and transferred it to its counsel to conduct the foreclosure. RFC retains physical possession of the Note indorsed in blank to this day.

On May 18, 2009, RFC filed the Complaint in this Court alleging that it was the holder of the Note, that La Casse had defaulted under the Note, and that RFC had elected to accelerate the balance due on the Note and foreclose the Mortgage. On August 13, 2009, an Assignment of Mortgage was recorded in Volume 489, Page 786 of the Weston Land Records, evidencing that the Mortgage had been assigned from MERS to RFC.

## ARGUMENT

### I.    As the Holder of the Original Note, RFC Was Entitled to Foreclose.

Section 49-17 of the Connecticut General Statues ("Section 49-17") codifies the long-standing common law rule that "the mortgage follows the note, pursuant to which only the

rightful owner of the note has the right to enforce the mortgage." *RMS Residential Properties, LLC v. Miller*, 303 Conn. 224, 230 (2011). Section 49-17 states in its entirety:

> When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies.

Conn. Gen. Stat. § 49-17.

The statute does not define "the person entitled to receive the money secured thereby." Connecticut's adoption of the Uniform Commercial Code is instructive. Section 42a-3-301 provides:

> Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Conn. Gen. Stat. § 42a-3-301(emphasis added).

Section 42a-3-109 defines bearer paper as an instrument that is payable to the bearer if endorsed in blank. Conn. Gen. Stat. § 42a-3-109. Further, Section 42a-3-205(b) provides,

> If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a 'blank endorsement'. When

6

> endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

Conn. Gen. Stat. § 42a-3-205(b).

Further, Section 42a-3-201 states in part, "[i]f an instrument is payable to bearer, it may be negotiated by transfer of possession alone." Conn. Gen. Stat. § 42a-3-201. While Section 42a-3-203 provides, in pertinent part, "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course..." Conn. Gen. Stat. § 42a-3-203. Additionally, a "Holder" means "the person in possession of a negotiable instrument that is payable... to bearer." Conn. Gen. Stat. § 42a-1-201(b)(21)(A). Thus, the entity in possession of a note endorsed in blank is a holder entitled to enforce the note. *See RMS Residential Properties, LLC v. Miller*, 303 Conn. at 231.

In *Miller*, the Supreme Court stated that the "legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." *RMS Residential Properties, LLC v. Miller*, 303 Conn. 224, 230 (2011). In *Chase Home Finance, LLC v. Fequiere*, the foreclosing entity possessed a copy of the promissory that was endorsed in blank by the original lender. *Chase Home Finance, LLC v. Fequiere*, 119 Conn. App. at 577. The defendant, who was appealing the trial court's denial of her motion to dismiss, failed to present evidence "demonstrating that the foreclosing entity was not in possession of the promissory note or contradicting its status as a bona fide

holder of the note." *Id.* at 578. Thus, the court held that the production of the note established prima facie proof of the entity's entitlement to foreclose, which the defendant had failed to rebut. *Id.* See also *RMS Residential Properties, LLC v. Miller*, 303 Conn. at 234-35 (affirming grant of summary judgment to foreclosing entity, who was holder of note endorsed in blank, because defendant failed to demonstrate that the foreclosing entity was not rightful owner of the note); *HSBC Bank, N.A. v. Navin*, 129 Conn. App. 707, 712 (2011) (affirming order of summary judgment for foreclosing entity where defendant offered no evidence to counter the plaintiff's sworn statement that it was in possession of note endorsed in blank at the time it commenced the foreclosure action). *Fleet Nat'l Bank v. Nazareth*, 75 Conn.App. 791, 794 (2003)("It is undisputed that Fleet Mortgage is the holder of the note, while the plaintiff is the holder of the mortgage.") and *Bankers Trust v. Vaneck*, 95 Conn.App. 390 ("General Statutes §49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him.")

Here, in this case, it is undisputed that RFC held the Note at the time it began foreclosure proceedings. Indeed, RFC continues to hold the Note and the original will be offered into evidence at the hearing. Thus RFC has the right to foreclose under Section 49-17.

## II. The Testimony Of Borrower's Expert Consists of Incorrect Legal Conclusions That Do Not Rebut That RFC Has the Right to Foreclose.

It is established that expert testimony is not admissible if the testimony would not be helpful to the court or jury in considering the issue. *See Sullivan v. Metro-North Commuter R.*

8

*Co.*, 292 Conn. 150 (2009). *See also* Conn. Code Evid. § 7-2. Additionally, "an expert's testimony on issues of law is inadmissible." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). The proffered testimony of the La Casse's expert, Marie McDonnell ("McDonnell") is inadmissible because it does not assist the court in determining if RFC is entitled to foreclose under Section 49-17. *See Chamberland v. LaBonte*, 99 Conn. App. 464, 471 n.3 (2007) (trial court properly rejected expert testimony as an "improper [effort] to proffer legal conclusions that invaded the province of the court and did not create issues of fact ... The trial court did not abuse its discretion in so ruling despite the expert witness' representation that his views were based on his personal knowledge and expertise").

McDonnell incorrectly asserts that "[t]he Assignment of Mortgage was ineffective to transfer the La Casse Mortgage to RFC; and even if RFC can demonstrate that it is currently 'holding' La Casse's original note, it is not the owner of the Note entitled to receive payment on the Note." *See* Deposition of Marie McDonnell ("McDonnell Dep."), Exhibit 2 at 5, 19. As the above mentioned authorities make clear, this assertion is an incorrect legal conclusion. Indeed, McDonnell's report states La Casse's Promissory Note "contains an endorsement 'in blank'... which effectively converted the Note to bearer paper." *Id.* at 6. McDonnell admitted in her deposition that La Casse's promissory note is indorsed in blank and is bearer paper payable to the person having possession of such paper. *See* McDonnell Dep. at 120-121.

Even if the Court accepts as true McDonnell's allegation that the assignment of La Casse's mortgage was invalid, *see* McDonnell Dep., Exhibit 2 at page 19, ¶ 45, La Casse still

9

does not rebut the presumption that RFC is entitled to foreclose as holder of the Note. The Connecticut Legislature, by adopting § 49-17, "created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him." *RMS Residential Properties, LLC v. Miller*, 303 Conn. at 230. As the Appeals Court stated in *Chase Home Finance*:

> Even if we were to assume arguendo that the assignment of the mortgage from MERS to the plaintiff was invalid, the defendant's claim fails. General Statutes § 49-17 permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him… Our legislature, by adopting § 49-17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him.

*Chase Home Finance, LLC v. Fequiere*, 119 Conn. App. at 576-77 (citations and internal quotation marks omitted). Thus, under Connecticut law, the validity of the assignment of La Casse's mortgage is irrelevant to determining RFC's status as the person entitled to receive money secured by the mortgage. *See id.*; Conn. Gen. Stat. § 49-17.

McDonnell also asserts that "HSBC Bank USA, National Association as Trustee for the Certificate holders of the Luminent Mortgage Trust 2006-3 is the real party in interest entitled to receive payment on the subject Note, and therefore, enforce the mortgage." McDonnell Dep., Exhibit 2, page 19, ¶ 48. The Connecticut Supreme Court has found that the real party interest can be virtually any party. "The real party in interest may be an assignee of the mortgagee or [someone] subrogated to his rights under the mortgage, or even a third person not answering

10

either of descriptions." *RMS Residential Properties, LLC v. Miller*, 303 Conn. at 237. In this case, RFC is the real party in interest because it has the contractual right to collect the funds, is contractually obligated to prosecute the foreclosure and liquidate the property, and is the holder of the Note. *See Kennedy Funding, Inc. v. Greenwich Landing, LLC*, 135 Conn. App. 58, 43 A.3d 664 (2012) (The holder of a negotiable promissory note secured by a mortgage has standing to bring a foreclosure action against the maker of the note, even before assignment of the mortgage to the holder and, even if the holder is described in the promissory note as an agent for a number of identified principals.)

In short, there is no other entity that can prosecute this foreclosure because no other entity holds the Note or currently has the right to collect funds. Accordingly, McDonnell's assertion that HSBC Bank is the real party in interest is an incorrect legal conclusion.

Therefore, nothing in McDonnell's report refutes the presumption that RFC has acquired La Casse's promissory note "in good faith for value and in the course of business, before maturity and without notice of any circumstances impeaching its validity." *See RMS Residential Properties, LLC v. Miller*, 303 Conn. at 232. Additionally, nothing in her report establishes that RFC is not the party in interest. Therefore, McDonnell's report will not assist the trier of fact in determining if RFC is entitled to foreclose on the property pursuant to Section 49-17.

## CONCLUSION

For all of the foregoing reasons, and those reasons contained in RFC's Objection to La Casse's Motion to Vacate the Judgment dated January 23, 2012, the Court should deny La Casse's Motion to Vacate the Judgment of Foreclosure.

THE PLAINTIFF,

RESIDENTIAL FUNDING COMPANY, LLC

By its attorneys,

_____
Thomas M. Elcock (Juris No. 433238)
PRINCE LOBEL TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: 617-456-8000

_____
Jennifer G. Farrell (Juris No. 103023)
Dowley & Associates
116 Washington Street
Middletown, CT 06457
Tel: 860-347-9987

MICHAEL F. DOWLEY, ATTORNEY AT LAW · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023
116 WASHINGTON STREET

## ORDER

The foregoing Motion, having been heard by the court is hereby ordered:

SUSTAINED / OVERRULED

_____        _____
Date                                              Judge/Clerk

MICHAEL F. DOWLEY, ATTORNEY AT LAW
116 WASHINGTON STREET · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023

13

## CERTIFICATION OF SERVICE

On September 13, 2012 I hereby certify that a true and correct copy of this Supplemental Memorandum were sent via first-class mail, postage prepaid, facsimile and electronic mail to the following counsel of record:

Donald M. Brown, Esq.
Law Offices of Donald M. Brown
19 Hettiefred Road
Greenwich, CT 06831
Fax: 800-636-2701

_____
Jennifer G. Farrell
Commissioner of the Superior Court

MICHAEL F. DOWLEY, ATTORNEY AT LAW · 116 WASHINGTON STREET · P.O. BOX 1235, MIDDLETOWN, CONNECTICUT 06457 · (860) 347-9987 · FAX (860) 347-3597 · JURIS NO. 103023