**The Fisher Claim**

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Claim #1972    Date Filed: 10/29/2012

**Name of Debtor and Case Number:** Residential Capital, LLC, Case No. 12-12020

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):

Anthony E. Fisher

**Name and address where notices should be sent:**

8523 Beresford Lane
Jacksonville, FL 32244

Telephone number: (904) 742-3732        email: troncast@mail.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** 11-CV-61526
*(if known)*

Filed on: August 12, 2011

**Name and address where payment should be sent** (if different from above):

Telephone number:        email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 286,223.93

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage Note
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 3182

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☒Real Estate ☐Motor Vehicle ☐Other
Describe:

**Value of Property:** $_____    **Annual Interest Rate** 2.0 % ☐Fixed ☒Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $ 38,835.00        **Basis for perfection:** _____

**Amount of Secured Claim:** $ 282,222.93    **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$ 38,835.00        (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.
☒ I am the creditor.    ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: ANTHONY E. FISHER
Title:
Company:        (Signature)        10/25/2012    (Date)
Address and telephone number (if different from notice address above):

Telephone number: (904) 742-3732    Email: troncast@mail.com

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED

OCT 2 9 2012

KURTZMAN CARSON CONSULTANTS

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U

1212020121029000000000025

Dear GMAC (RESCAP)                                              October 25, 2012

     This letter is in regards to my home loan modification and foreclosure preceding that was approved by Attorney David J. Sterns on 7/1/2008. Case Number 16-2008-CA-011351-XXXX-MA.

     I am struggling to make my house payments because I recently got divorced and have a court order to make alimony payments to ex-wife. This house is only worth $109,000.00 but my current loan is $282,223.00. I have request GMAC to re-modify this loan and take the deferred principal balance of ($38,835.20) off the remaining balance and this will greatly reduce my financial hardship. GMAC (RESCAP) has filed for bankruptcy and went to court in a battle of GMAC vs Attorney David J. Sterns. Attorney Sterns is the culprit of my foreclosed home in 2008 and this principal balance of $282,000.00. I am asking NACA to investigate these fraudulent actions and help me recover my home.

     I further advised GMAC that my loan has brought me great amounts of stress and I would like it modified. No response from GMAC as of October 25, 2012. Additionally, Attorney David J. Sterns placed my home in foreclosure status in 2008 and this put me further in debt. Attorney David J. Sterns and staff have now officially closed their office due to corrupt and illegal practices. The loan was re-modified under illegal transactions, thefore; I am requesting full investigation of my home loan.


       Sincerely,

       Anthony Fisher

# Independent Foreclosure Review

September 28, 2012



9 3 3 6 - S I P *

***** SINGLE PIECE
77419-00-V008-0002625-SIP-M3105
Anthony E Fisher
8523 Beresford Lane
Jacksonville FL 32244

---

**This letter is confirming your Request for Review has been received and is being reviewed.**

Reference Number: █████9336

Property Address:

8523 Beresford Ln
Jacksonville FL 32244

---

*Si usted habla español, tenemos representantes que pueden asistirle en su idioma.*

---

Dear Anthony E Fisher,

Many homeowners are concerned about the pace of the Independent Foreclosure Review. This letter is intended to let you know that the review you requested of your mortgage foreclosure as part of the Independent Foreclosure Review is in process.

**STATUS**  More than 220,000 people to date have asked for reviews. Each review has many steps and takes time—so it may be several more months before the results of your file review are available.

**PROCESS**  Independent consultants will carefully review your request and you will receive a letter about the findings when the review is finished. If the review shows an error by the servicer in your foreclosure that resulted in financial injury to you, the servicer will be required to compensate you for that financial injury, which may involve a payment or other remedy to you and any necessary correction of your record. General information about the review process is available by calling 1-888-952-9105.

**COMPENSATION**  The compensation or other remedy a homeowner may receive will depend on the type of error found in their file. You can find information about possible compensation at IndependentForeclosureReview.com/Remediation.aspx

**OTHER HELP**  If you need help with your mortgage now, you may talk to your loan servicer or contact a HUD-approved nonprofit organization that helps homeowners in distress. Information about HUD-approved nonprofit organizations that can provide free assistance is available at http://www.makinghomeaffordable.gov/get-started/housing-expert or by calling 1-888-995-HOPE (4673).

Your patience is appreciated as the independent consultants are working to review your request.

Sincerely,

Independent Review Administrator - Rust Consulting, Inc.

# GMAC Mortgage

Proudly Serving USAA Members

**CUSTOMER INFORMATION**

Name: Anthony E Fisher

Account Number: ████3182
Home Phone #: (904)742-3732

**PROPERTY ADDRESS**

8523 BERESFORD LN
JACKSONVILLE    FL 32244

ANTHONY E FISHER
8523 BERESFORD LANE
JACKSONVILLE FL  32244-7142



For information about your existing account,
please call: (877) 569-4632.

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | ████3182 |
| Statement Date | September 10, 2012 |
| Maturity Date | April 01, 2050 |
| Interest Rate | 2.00000 |
| Interest Paid Year-to-Date | $3,269.03 |
| Taxes Paid Year-to-Date | $0.00 |
| Escrow Balance | $1,442.36 |
| Principal Balance(PB)* | $282,223.93 |
| Deferred Prin. Bal.(inc. in PB) | $38,835.20 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $777.41 |
| Subsidy/Buydown | $0.00 |
| Escrow | $439.01 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $1,216.42 |
| Account Due Date | October 01, 2012 |

**For questions on the servicing of your account,
call 1-877-569-4632.**

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 09/01/12 | 09/10/12 | $1,216.42 | $371.14 | $406.27 | $439.01 | | | |
| Mortgage Ins Paid | 08/01/12 | 08/24/12 | $206.89 | | | $206.89 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the
Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

NOW AVAILABLE - Online access at www.usaa.com

You may now obtain your loan balance, payment amount, due date and much more by accessing
your account information online at www.usaa.com. You can even enroll in
our online payment program and make your payments over the web. Log on today and register!

**See Reverse Side And Additional Pages For Important Information And State Specific Disclosures**

**Mail This Portion With Your Payment**

Mortgage Payment Coupon

2007 HISTORY STATEMENT OF MORTGAGE ACCOUNT

USAA FEDERAL SAVINGS BANK
PO BOX 205
WATERLOO, IA 50704-0205

ANTHONY E FISHER
8523 BERESFORD LN
JACKSONVILLE          FL 32244

LOAN TYPE 8-0   PMI
ACCOUNT NUM ▮▮▮▮ 3182

2007 DETAIL BY TRANSACTION

| TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | LAST PAID | POST DATE | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID | CR LIFE/ DISAB | LT CHRG/ FEES | PRINCIPAL BAL AFTER TRAN | ESCROW BAL AFTER TRAN | UNAPP FUNDS AFTER TRAN |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PAYMENT | 2129.13 | 01/07 | 01/02 | 231.52 | 1454.84 | 442.77 | | | 258,406.28 | 1,381.59 | |
| ESC DISB | | 01/07 | 01/24 | | | -182.00 | | | 258,406.28 | 1,199.59 | |
| PAYMENT | 2129.13 | 02/07 | 02/05 | 232.82 | 1453.54 | 442.77 | | | 258,173.46 | 1,642.36 | |
| ESC DISB | | 02/07 | 02/23 | | | -182.00 | | | 258,173.46 | 1,460.36 | |
| PAYMENT | 2129.13 | 03/07 | 03/01 | 234.13 | 1452.23 | 442.77 | | | 257,939.33 | 1,903.13 | |
| ADDL PRIN | 84.31 | 03/07 | 03/01 | 84.31 | | | | | 257,855.02 | 1,903.13 | |
| ESC DISB | | 03/07 | 03/27 | | | -182.00 | | | 257,855.02 | 1,721.13 | |
| ESC DISB | | 03/07 | 03/27 | | | -247.83 | | | 257,855.02 | 1,473.30 | |
| PAYMENT | 2129.13 | 04/07 | 04/06 | 235.93 | 1450.43 | 442.77 | | | 257,619.09 | 1,916.07 | |
| ESC DISB | | 04/07 | 04/23 | | | -431.89 | | | 257,619.09 | 1,484.18 | |
| ESC DISB | | 04/07 | 04/24 | | | -182.00 | | | 257,619.09 | 1,302.18 | |
| PAYMENT | 2116.08 | 05/07 | 04/30 | 237.25 | 1449.11 | 429.72 | | | 257,381.84 | 1,731.90 | |
| ESC DISB | | 05/07 | 05/24 | | | -182.00 | | | 257,381.84 | 1,549.90 | |
| PAYMENT | 2116.08 | 06/07 | 06/01 | 238.59 | 1447.77 | 429.72 | | | 257,143.25 | 1,979.62 | |
| ESC DISB | | 06/07 | 06/22 | | | -182.00 | | | 257,143.25 | 1,797.62 | |
| PAYMENT | 2116.08 | 07/07 | 06/29 | 239.93 | 1446.43 | 429.72 | | | 256,903.32 | 2,227.34 | |
| ESC DISB | | 07/07 | 07/24 | | | -182.00 | | | 256,903.32 | 2,045.34 | |
| PAYMENT | 2116.08 | 08/07 | 08/23 | 241.28 | 1445.08 | 429.72 | | | 256,662.04 | 2,475.06 | |
| ESC DISB | | 08/07 | 08/24 | | | -182.00 | | | 256,662.04 | 2,293.06 | |
| PAYMENT | 2116.08 | 09/07 | 08/31 | 242.64 | 1443.72 | 429.72 | | | 256,419.40 | 2,722.78 | |
| ESC DISB | | 09/07 | 09/24 | | | -182.00 | | | 256,419.40 | 2,540.78 | |
| PAYMENT | 2116.08 | 10/07 | 10/04 | 244.00 | 1442.36 | 429.72 | | | 256,175.40 | 2,970.50 | |
| ESC DISB | | 10/07 | 10/24 | | | -182.00 | | | 256,175.40 | 2,788.50 | |
| PAYMENT | 2116.08 | 11/07 | 11/02 | 245.37 | 1440.99 | 429.72 | | | 255,930.03 | 3,218.22 | |
| TAX DISB | | 11/07 | 11/08 | | | -2725.65 | | | 255,930.03 | 492.57 | |
| ESC DISB | | 11/07 | 11/20 | | | -182.00 | | | 255,930.03 | 310.57 | |
| PAYMENT | 2116.08 | 12/07 | 12/17 | 246.75 | 1439.61 | 429.72 | | | 255,683.28 | 740.29 | |
| ESC DISB | | 12/07 | 12/20 | | | -182.00 | | | 255,683.28 | 558.29 | |

SUMMARY TOTALS

| | | |
|---|---|---|
| PRINCIPAL BALANCE START OF PERIOD | 258,637.80 | |
| PRINCIPAL PAID DURING PERIOD | 2,954.52 | |
| PRINCIPAL BALANCE END OF PERIOD | 255,683.28 | |
| | | |
| ESCROW BALANCE START OF PERIOD | 938.82 | |
| ESCROW PAID DURING PERIOD | 5,208.84 | |
| ESCROW DISBURSEMENTS | -5,589.37 | |
| ESCROW BALANCE END OF PERIOD | 558.29 | |
| | | |
| REFUND OF OVERPAID INTEREST | 0.00 | |
| INTEREST REPORTABLE DURING PERIOD | 17366.11 | |
| PROPERTY TAXES PAID DURING PERIOD | 2,725.65 | |
| POINTS PAID | 0.00 | |

P & I PAYMENT            1,686.36
ESCROW PAYMENT             465.66

TOTAL PAYMENT           2,152.02

Entity0130rg000000

```
USAA Federal Savings Bank                              PAGE      1
PO Box 205                                             DATE 10/27/08


Waterloo               IA 50704-0205
                                       HISTORY FOR ACCOUNT    ████3182


        --------- MAIL -------------------- --------- PROPERTY ----------------

    ANTHONY E FISHER

    8523 BERESFORD LN                  8523 BERESFORD LN

    JACKSONVILLE         FL 32244     JACKSONVILLE       FL 32244


    ------ DATES ------   ---- CURRENT BALANCES -----   ------- UNCOLLECTED -------
PAID TO    05/01/08      PRINCIPAL       254428.54    LATE CHARGES      -168.62
NEXT DUE   06/01/08      ESCROW             651.72    OPTIONAL INS         0.00
LAST PMT   05/17/08      UNAPPLIED FUND       0.00    INTEREST             0.00
AUDIT DT   06/05/06      UNAPPLIED CODES              FEES             -1640.75
                         BUYDOWN   FUND       0.00    ------ YEAR TO DATE -------
     LAST ACTIVITY       BUYDOWN   CODE         .     INTEREST          7177.06
        10/14/08                                      TAXES                0.00
    -------------------------------------------------------------------------
```

```
POST  TRN  DUE     TRANSACTION       PRINCIPAL       INTEREST          ESCROW
DATE  CDE  DATE    AMOUNT            PAID            PAID              PAID
------ --- ------  ---------------   --------------  --------------    --------------
060506 SR  060106         817.40 CLOSING INTEREST
060506 SR  060106        1943.97            .00            .00            1943.97
060706 RT  060106       -1943.97            .00            .00           -1943.97
060706 ITR 060106   OLD INV 50110 10003 P-BAL   260000.00 INT                .00
                    NEW INV 50310     52 PERCENT OWNED     .0000 ACTION CD 000
060706 PT  060106        1943.97            .00            .00            1943.97
070306 AP  070106        2129.13         223.86        1462.50            442.77
070706 RT  070106       -2386.74            .00            .00           -2386.74
070706 ITR 070106   OLD INV 50310     52 P-BAL   259776.14 INT                .00
                    NEW INV 10077    880 PERCENT OWNED     .0000 ACTION CD 000
070706 PT  070106        2386.74            .00            .00            2386.74
072506 E40 070106        -182.00 PAYEE = 1270.01015      .00            -182.00
080706 AP  080106        2129.13         225.12        1461.24            442.77
082406 E40 080106        -182.00 PAYEE = 1270.01015      .00            -182.00
090506 AP  090106        2129.13         226.39        1459.97            442.77
092206 E40 090106        -182.00 PAYEE = 1270.01015      .00            -182.00
100206 AP  100106        2129.13         227.66        1458.70            442.77
100206 FB  100106          16.00 171 SPEEDPAY FEE
100206 FEA 100106          16.00 171 SPEEDPAY FEE
102406 E40 100106        -182.00 PAYEE = 1270.01015      .00            -182.00
110206 AP  110106        2129.13         228.94        1457.42            442.77
110906 E90 110106       -2569.77 PAYEE = 0016.00000      .00            -2569.77
112106 E40 110106        -182.00 PAYEE = 1270.01015      .00            -182.00
120506 AP  120106        2129.13         230.23        1456.13            442.77
122106 E40 120106        -182.00 PAYEE = 1270.01015      .00            -182.00
010207 AP  010107        2129.13         231.52        1454.84            442.77
012407 E40 010107        -182.00 PAYEE = 1270.01015      .00            -182.00
020507 AP  020107        2129.13         232.82        1453.54            442.77
```

    INQ 1274

HISTORY FOR ACCOUNT      ████3182                    PAGE        2
                                                     DATE 10/27/08


         -------- MAIL -------------------- -------- PROPERTY ----------------

    ANTHONY E FISHER

    8523 BERESFORD LN              8523 BERESFORD LN

    JACKSONVILLE        FL 32244      JACKSONVILLE      FL 32244


    --------------------------------------------------------------------------

| POST DATE | TRN CDE | DUE DATE | TRANSACTION AMOUNT | PRINCIPAL PAID | INTEREST PAID | ESCROW PAID |
|---|---|---|---|---|---|---|
| 022307 | E40 | 020107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 030107 | AP | 030107 | 2129.13 | 234.13 | 1452.23 | 442.77 |
| 030107 | CWA | 030107 | 84.31 | 84.31 | .00 | .00 |
| 032707 | E40 | 030107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 032707 | E01 | 030107 | -247.83 | .00 | .00 | -247.83 |
| 040607 | AP | 040107 | 2129.13 | 235.93 | 1450.43 | 442.77 |
| 042307 | E20 | 040107 | -431.89  PAYEE = 1600.03073 | | .00 | -431.89 |
| 042407 | E40 | 040107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 043007 | AP | 050107 | 2116.08 | 237.25 | 1449.11 | 429.72 |
| 052407 | E40 | 050107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 060107 | AP | 060107 | 2116.08 | 238.59 | 1447.77 | 429.72 |
| 062207 | E40 | 060107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 062907 | AP | 070107 | 2116.08 | 239.93 | 1446.43 | 429.72 |
| 072407 | E40 | 070107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 080307 | AP | 080107 | 2116.08 | 241.28 | 1445.08 | 429.72 |
| 082407 | E40 | 080107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 083107 | AP | 090107 | 2116.08 | 242.64 | 1443.72 | 429.72 |
| 092407 | E40 | 090107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 100407 | AP | 100107 | 2116.08 | 244.00 | 1442.36 | 429.72 |
| 102407 | E40 | 100107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 110207 | AP | 110107 | 2116.08 | 245.37 | 1440.99 | 429.72 |
| 110807 | E90 | 110107 | -2725.65  PAYEE = 0016.00000 | | .00 | -2725.65 |
| 112007 | E40 | 110107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 121707 | AP | 120107 | 2116.08 | 246.75 | 1439.61 | 429.72 |
| 122007 | E40 | 120107 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 010708 | AP | 010108 | 2116.08 | 248.14 | 1438.22 | 429.72 |
| 012808 | E40 | 010108 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 022208 | E40 | 010108 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 031308 | UI | 020108 | .00 | .00 | .00 | .00 |
| | | OPT PREMIUMS | | .00 | LATE CHARGE PYMT | -84.31* |
| 031308 | AP | 020108 | 2152.02 | 249.54 | 1436.82 | 465.66 |
| 032408 | E40 | 020108 | -182.00  PAYEE = 1270.01015 | | .00 | -182.00 |
| 041108 | UI | 030108 | .00 | .00 | .00 | .00 |
| | | OPT PREMIUMS | | .00 | LATE CHARGE PYMT | -84.31* |
| 041108 | AP | 030108 | 2152.02 | 250.94 | 1435.42 | 465.66 |
| 041108 | UFU | 030108 | UNAPPLIED FUNDS (1) | | 1347.98  BALANCE | 1347.98 |

    INQ 1274

```
HISTORY FOR ACCOUNT    ████ 3182                      PAGE      3
                                                      DATE 10/27/08


          -------- MAIL -------------------- --------- PROPERTY ----------------


     ANTHONY E FISHER

     8523 BERESFORD LN              8523 BERESFORD LN

     JACKSONVILLE      FL 32244     JACKSONVILLE      FL 32244

------------------------------------------------------------------------------
  POST  TRN  DUE    TRANSACTION     PRINCIPAL        INTEREST        ESCROW
  DATE  CDE  DATE    AMOUNT          PAID             PAID            PAID
------ --- ----- --------------- -------------- --------------- ------------
041108 SWA 030108       1347.98        .00              .00            .00
042208 E20 030108       -378.93  PAYEE = 1600.03073     .00         -378.93
042508 E40 030108       -182.00  PAYEE = 1270.01015     .00         -182.00
051908 UI  040108           .00        .00              .00            .00
               OPT PREMIUMS           .00     LATE CHARGE PYMT    -84.31*
051908 UFU 040108    UNAPPLIED FUNDS (1)       -1347.98  BALANCE       0.00
051908 AP  040108        804.04     252.35          1434.01        465.66
051908 UI  050108           .00        .00              .00            .00
               OPT PREMIUMS           .00     LATE CHARGE PYMT     84.31*
051908 AP  050108       2320.64     253.77          1432.59        465.66
               OPT PREMIUMS           .00     LATE CHARGE PYMT    168.62
052208 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
062408 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
072308 FB  050108         11.25  11 PROP INSPECTION FEE
072408 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
082508 FB  050108         11.25  11 PROP INSPECTION FEE
082608 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
091508 FB  050108        363.50  40 EXPENSE ADVANCES
091508 FB  050108        900.00  40 EXPENSE ADVANCES
091508 FB  050108         18.50  40 EXPENSE ADVANCES
091508 FB  050108        150.00  40 EXPENSE ADVANCES
091508 FB  050108        175.00  40 EXPENSE ADVANCES
091808 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
100908 E40 050108       -182.00  PAYEE = 1270.01015     .00         -182.00
101408 FB  050108         11.25  11 PROP INSPECTION FEE


   END OF HISTORY

      INQ 1274
```

**USAA®**
PO Box 205
Waterloo, IA 50704-0205
1-877-569-4632

**Important Note:** In accordance with RESPA requirements, this notice is being sent as a result of the review completed on your escrow account.

### INITIAL ESCROW ACCOUNT
### DISCLOSURE STATEMENT

ACCOUNT NUMBER: ███3182

PROPERTY ADDRESS:
8523 BERESFORD LN
JACKSONVILLE FL 32244

ANALYSIS DATE: JUNE 03, 2010

████ 7-001
ANTHONY E FISHER
8523 BERESFORD LN
JACKSONVILLE FL  32244-7142

PLEASE KEEP THIS ESCROW ANALYSIS FOR COMPARISON TO NEXT YEAR'S STATEMENT.

Section 1:

| DESCRIPTION | NEXT DUE DATE | ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT | AMOUNT(S) USED IN PRIOR ANALYSIS |
|---|---|---|---|
| REGULAR PMI | MAY 2010 | 182.00 | 0.00 |
| REGULAR PMI | JUNE 2010 | 182.00 | 0.00 |
| FIRE | JULY 2010 | 1,434.58 | 0.00 |
| REGULAR PMI | JULY 2010 | 182.00 | 0.00 |
| REGULAR PMI | AUGUST 2010 | 182.00 | 0.00 |
| REGULAR PMI | SEPTEMBER 2010 | 182.00 | 0.00 |
| REGULAR PMI | OCTOBER 2010 | 182.00 | 0.00 |
| REGULAR PMI | NOVEMBER 2010 | 182.00 | 0.00 |
| COUNTY | NOVEMBER 2010 | 2,091.12 | 0.00 |
| REGULAR PMI | DECEMBER 2010 | 182.00 | 0.00 |
| REGULAR PMI | JANUARY 2011 | 182.00 | 0.00 |
| REGULAR PMI | FEBRUARY 2011 | 182.00 | 0.00 |
| REGULAR PMI | MARCH 2011 | 182.00 | 0.00 |
| REGULAR PMI | APRIL 2011 | 182.00 | 0.00 |
| | TOTAL ANNUAL DISBURSEMENTS: | 5,709.70 | 0.00 |
| | TOTAL ESCROW PAYMENT: | 475.80 | 465.66 |

The amounts above are based on either an estimate previously provided or the amount last disbursed.

**NOTE:** If you pay the escrow shortage amount of $2,704.36, your new total payment will automatically be adjusted to $1,253.21 effective with your MAY 01, 2010 payment. If you do not pay the shortage, your total payment effective MAY 01, 2010 will be $1,298.28.

| Payment change: | New | Prior Analysis |
|---|---|---|
| Escrow | 475.80 | 465.66 |
| Surplus/Shortage | 45.07 | 0.00 |
| Escrow Shortage Spread 60 Months | | |
| Total | 520.87 | 465.66 |
| Principal/Interest | 777.41 | 777.41 |
| Total Payment | 1,298.28 | 1,243.07 |

Depending on the timing of when your next billing notice is released, you may not see the payment change until the following billing notice.

For details about the difference between the old and new payment amounts, please reference the ESTIMATED AMOUNT(S) OF NEXT DISBURSEMENT and AMOUNT(S) USED IN PRIOR ANALYSIS columns listed above.

680-0682-1200F

Any questions regarding changes in the "Estimated Amount of Next Disbursement"
should be directed to your Tax Authority and/or Insurance Company.
To reach our insurance department call: 1-800-256-9962.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

If you are utilizing a military allotment, or third-party company to make payments on your behalf, please notify your service of any payment changes.

NOTE — you must use the below address when remitting your escrow shortage payment

### THIS COUPON MUST ACCOMPANY YOUR ESCROW SHORTAGE PAYMENT



### THIS IS NOT A CHECK
NOTE — you must use this address when remitting your escrow shortage payment

| Account Number | Shortage Amount |
|---|---|
| ███3182 | 2,704.36 |

**Total Amount Enclosed  $**

ANTHONY E FISHER

|ևՈՈ...ՈՈ...ՈՈ...ՈՈ...Ո|
USAA MORTGAGE
PO BOX 79162
PHOENIX AZ 85062-9162

If you pay the escrow shortage amount of $2,704.36, your new payment will be automatically adjusted to $1,253.21 effective with your MAY 01, 2010 payment.

By sending your check, please be aware that you are authorizing us to use information on your check to make a one-time electronic debit to your account at the financial institution indicated on the check. This electronic debit will be for the amount of your check.

111  8

2732729

ANALYSIS TYPE: 1/6 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: APRIL 30, 2010

ACCOUNT NUMBER: &#9608;3182
-647.66  *

\* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| Current Escrow Balance: 8,299.12- | |
|---|---|
| Esc Rcpts to Eff Dt | Esc Disb Prior to Eff Dt |
| Due Dt   Due Amt | Disb Date   Disb Amt |

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|---|---|---|---|---|
| PROJECTED BALANCE | | | 647.66- | 2,056.70 |
| 05/01/10 | 475.80 | 182.00- | 353.86- | 2,350.50 |
| 06/01/10 | 475.80 | 182.00- | 60.06- | 2,644.30 |
| 07/01/10 | 475.80 | 1,434.58- | 1,018.84- | 1,685.52 |
| 07/01/10 | .00 | 182.00- | 1,200.84- | 1,503.52 |
| 08/01/10 | 475.80 | 182.00- | 907.04- | 1,797.32 |
| 09/01/10 | 475.80 | 182.00- | 613.24- | 2,091.12 |
| 10/01/10 | 475.80 | 182.00- | 319.44- | 2,384.92 |
| 11/01/10 | 475.80 | 182.00- | 25.64- | 2,678.72 |
| 11/01/10 | .00 | 2,091.12- | 2,116.76- | 587.60 L |
| 12/01/10 | 475.80 | 182.00- | 1,822.96- | 881.40 |
| 01/01/11 | 475.80 | 182.00- | 1,529.16- | 1,175.20 |
| 02/01/11 | 475.80 | 182.00- | 1,235.36- | 1,469.00 |
| 03/01/11 | 475.80 | 182.00- | 941.56- | 1,762.80 |
| 04/01/11 | 475.80 | 182.00- | 647.76- | 2,056.60 |

\*Indicates Sum of Remaining Escrow Payments &/or Escrow Disbursements to Effective Date.

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
      -2,116.76

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
          587.60

Section 3:  ➡  | SHORTAGE | 2,704.36 |

ESCROW ACCOUNT ACTIVITY (MAY 01, 2009 - APRIL 30, 2010)

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|---|---|---|---|---|---|---|
| 02/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 2,309.98- |
| 03/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 2,491.98- |
| 04/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,055.08- |
| 04/01/09 | | .00 | .00 | FIRE | 381.10- | 3,055.08- |
| BEGINNING BALANCE | | | .00 | | | 3,055.08- |
| 05/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,237.08- |
| 06/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,419.08- |
| 07/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,601.08- |
| 08/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,783.08- |
| 09/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 3,965.08- |
| 10/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 4,147.08- |
| 10/01/09 | | .00 | .00 | FIRE | 1,434.58- | 5,581.66- |
| 11/01/09 | | .00 | .00 | TAX | 2,091.12- | 7,672.78- |
| 11/01/09 | | .00 | .00 | REGULAR PMI | 182.00- | 7,854.78- |
| 12/01/10 | | .00 | .00 | REGULAR PMI | 182.00- | 8,036.78- |
| 01/01/10 | | .00 | .00 | REGULAR PMI | 182.00- | 8,218.78- |
| 02/01/10 | | .00 | .00 | REGULAR PMI | 182.00- | 8,400.78- |
| 03/01/10 | | .00 | .00 | PAYMENT | 465.66 | 8,117.12- |
| 03/01/10 | | .00 | .00 | REGULAR PMI | 182.00- | 8,117.12- |
| 04/01/10 | | .00 | .00 | REGULAR PMI | 182.00- | 8,299.12- |

## The Eskanos Claim

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>RESIDENTIAL CAPITAL, LLC | Case Number:<br>12-12020 | **RECEIVED**<br>MAY 2 4 2012<br>KURTZMANCARSONCONSULTANTS |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Barry B. Eskanos and Ami B. Eskanos | COURT USE ONLY |
|---|---|

| Name and address where notices should be sent:<br>Barry B. Eskanos and Ami B. Eskanos<br>3122 Pine Tree Drive, Miami Beach, FL 33140<br><br>Telephone number: (305) 613-6894    email:  bbeskanos@aol.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**_____<br>*(If known)*<br><br>Filed on:_____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**    $                 264,500,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  Bank Fraud, Mail Fraud, Wire Fraud, FDCPA, Civil Conspiracy,
(See instruction #2) U.S Bankruptcy Court S.Dist. of Fl. 11-40292-AJC

| **3. Last four digits of any number by which creditor identifies debtor:**<br>4 0 5 0 | **3a. Debtor may have scheduled account as:**<br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>_____<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate  ☐Motor Vehicle ☐Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$_____

Basis for perfection: _____

Amount of Secured Claim:  $_____

Amount Unsecured:  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



1212020120524000000000000004

B 10 (Official Form 10) (12/11)                                                                                              2

---

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

MAY 2 4 2012

KURTZMANCARSONCONSULTANTS

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
                        (Attach copy of power of attorney, if any.)     or their authorized agent.                (See Bankruptcy Rule 3005.)
                                                                        (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Barry B. Eskanos
Title:  Plaintiff
Company:
Address and telephone number (if different from notice address above):
~~3122 Pine Tree Drive Miami Beach, FL 33140~~                    (Signature)                                    05/18/2012
~~305-613-6894~~  bbeskanos@aol.com                                                                              (Date)

Telephone number:                        email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## The Wilson Claim

B 10 Modified (Official Form 10) (12/11)

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | PROOF OF

Name of Debtor and Case Number: Residential Capital, LLC, Case No. 12-12020  *See Exhibit Att.*

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commen case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. §*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**CAREN WILSON**

☐ Check this box i amends a previ claim.

Name and address where notices should be sent:

**Caren ,beneficiary for the Estate of Caren (Karen) Wilson**
**211 West Chandler Street**
**Culpeper , Va 22701**

**Court Claim Number:** _____
*(if known)*

Filed on: _____

Telephone number: **540-522-0777**       email: **carenwilson1124@gmail.co**

Name and address where payment should be sent (if different from above):

**RECEIVED**
**NOV 1 4 2012**
**KURTZMAN CARSON CONSULTANTS**

☐ Check this box i that anyone else has of claim relating to Attach copy of state particulars.

Telephone number:       email:

1. **Amount of Claim as of Date Case Filed:** $ **5.05 Million**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

5. **Amount of Cla Priority under 11 §507(a). If any pa falls into one of th categories, check specifying the pr the amount.**

2. **Basis for Claim:** My note was sold as unregistered and unregulated
(See instruction #2)  *to an investor as abord*

3. **Last four digits of any number by which creditor identifies debtor:**  **0683**

3a. **Debtor may have scheduled account as:**
(See instruction #3a)

3b. **Uniform Claim Identifier (optional):**
(See instruction #3b)

☐ Domestic supp under 11 U.S.C §507(a)(1)(A) o

☐ Wages, salaries commissions (u earned within 1 the case was fil debtor's busine whichever is ea U.S.C. §507 (a)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ■Real Estate ☐Motor Vehicle ☐Other

**Describe:**
**Value of Property:** $ **236,000**   **Annual Interest Rate** _____ % ☐ Fixed ☐Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim.**

if any: $ _____   **Basis for perfection:** _____

**Amount of Secured Claim:** $ **5.05 Million**   **Amount Unsecured:** $ **0**

☐ Contributions to benefit plan – 11 (a)(5).

☐ Up to $2,600* toward purchas rental of proper for personal, fa household use – §507 (a)(7).

☐ Taxes or penalt governmental u §507 (a)(8).

☐ Other – Specify paragraph of 11 (a)(___).

**Amount entitle**

6. **Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting claim.
$ _____   (See instruction #6)

$ _____

7. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

8. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*  *Securitization Audit*
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

* *Amounts are su adjustment on 3 years thereaft to cases comme after the date o*

9. **Signature:** (See instruction #9) Check the appropriate box.
☐ I am the creditor.   ■ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: **Caren,beneficiary for the Estate**
Title: _____ *of Karen Wilson*       *(Signature)*   **10/21/201:**
Company: _____

1212020121114000000000011

# Marsh, Shirley

| | |
|---|---|
| **From:** | Marsh, Shirley |
| **Sent:** | Tuesday, November 06, 2012 11:25 AM |
| **To:** | ResCapInfo@kccllc.com |
| **Cc:** | Crespo, Melissa M.; Marinuzzi, Lorenzo |
| **Subject:** | ResCap Documents from L. Marinuzzi/M. Crespo |

**You have received 3 files.**
Use the secure links below to download.

A hard copy will be sent to you via first class mail.
Please contact me if you have any questions.
Thank you and regards,
Shirley Marsh
212-336-4203
smarsh@mofo.com

## Download Files

Available until: **06 December 2012**

Download File: 0522_001.pdf
   3,505.14 KB

Download File: 0523_001.pdf
   5,551.72 KB

Download File: 0524_001.pdf
   1,581.75 KB

MORRISON | FOERSTER

LORENZO MARINUZZI
PARTNER

MORRISON & FOERSTER LLP
1290 AVENUE OF THE AMERICAS, NEW YORK, NEW YORK 10104-0050
TELEPHONE:212.468.8045 FACSIMILE:212.468.7900
E-MAIL:LMARINUZZI@MOFO.COM WWW.MOFO.COM

You have received attachment link(s) within this email sent via Accellion Secure File Transfer. To retrieve the attachment(s), please click on the link(s). To learn how your company can benefit from Accellion Secure File Transfer, please visit http://www.accellion.com

*Secured by Accellion*™

**Exhibit A**
Debtor Names and Case Numbers

| Name of Debtor | Case Number |
|---|---|
| Residential Funding Company, LLC | 12-12019 (MG) |
| Residential Capital, LLC | 12-12020 (MG) |
| ditech, LLC | 12-12021 (MG) |
| DOA Holding Properties, LLC | 12-12022 (MG) |
| DOA Properties IX (Lots-Other), LLC | 12-12023 (MG) |
| EPRE LLC | 12-12024 (MG) |
| Equity Investment I, LLC | 12-12025 (MG) |
| ETS of Virginia, Inc. | 12-12026 (MG) |
| ETS of Washington, Inc. | 12-12027 (MG) |
| Executive Trustee Services, LLC | 12-12028 (MG) |
| GMAC-RFC Holding Company, LLC | 12-12029 (MG) |
| GMAC Model Home Finance I, LLC | 12-12030 (MG) |
| GMAC Mortgage USA Corporation | 12-12031 (MG) |
| GMAC Mortgage, LLC | 12-12032 (MG) |
| GMAC Residential Holding Company, LLC | 12-12033 (MG) |
| GMACRH Settlement Services, LLC | 12-12034 (MG) |
| GMACM Borrower LLC | 12-12035 (MG) |
| GMACM REO LLC | 12-12036 (MG) |
| GMACR Mortgage Products, LLC | 12-12037 (MG) |
| HFN REO Sub II, LLC | 12-12038 (MG) |
| Home Connects Lending Services, LLC | 12-12039 (MG) |
| Homecomings Financial Real Estate Holdings, LLC | 12-12040 (MG) |
| Homecomings Financial, LLC | 12-12042 (MG) |
| Ladue Associates, Inc. | 12-12043 (MG) |
| Passive Asset Transaction, LLC | 12-12044 (MG) |
| PATI A, LLC | 12-12045 (MG) |
| PATI B, LLC | 12-12046 (MG) |
| PATI Real Estate Holdings, LLC | 12-12047 (MG) |
| RAHI A, LLC | 12-12048 (MG) |
| RAHI B, LLC | 12-12049 (MG) |
| RAHI Real Estate Holdings, LLC | 12-12050 (MG) |
| RCSFJV2004, LLC | 12-12051 (MG) |
| Residential Accredit Loans, Inc. | 12-12052 (MG) |
| Residential Asset Mortgage Products, Inc. | 12-12053 (MG) |
| Residential Asset Securities Corporation | 12-12054 (MG) |
| Residential Consumer Services of Alabama, LLC | 12-12055 (MG) |
| Residential Consumer Services of Ohio, LLC | 12-12056 (MG) |
| Residential Consumer Services of Texas, LLC | 12-12057 (MG) |
| Residential Consumer Services, LLC | 12-12058 (MG) |
| Residential Funding Mortgage Exchange, LLC | 12-12059 (MG) |
| Residential Funding Mortgage Securities I, Inc. | 12-12060 (MG) |
| Residential Funding Mortgage Securities II, Inc. | 12-12061 (MG) |
| Residential Funding Real Estate Holdings, LLC | 12-12062 (MG) |
| Residential Mortgage Real Estate Holdings, LLC | 12-12063 (MG) |
| RFC-GSAP Servicer Advance, LLC | 12-12064 (MG) |
| RFC Asset Holdings II, LLC | 12-12065 (MG) |
| RFC Asset Management, LLC | 12-12066 (MG) |
| RFC Borrower LLC | 12-12068 (MG) |
| RFC Construction Funding, LLC | 12-12069 (MG) |
| RFC REO LLC | 12-12070 (MG) |
| RFC SFJV-2002, LLC | 12-12071 (MG) |

## CERTIFIED TRANSCRIPT OF BIRTH
# STATE OF NEW YORK
### DEPARTMENT OF HEALTH



*L 4235800*

FULL NAME OF CHILD:  Karen Jean Wilson

SEX:  Female

DATE OF BIRTH:  ███████, 1956

TIME OF BIRTH:  4:54 [ ] A.M. [x] P.M.

PLACE OF BIRTH:  Mercy Medical Center
Rockville Centre , NEW YORK

MAIDEN NAME OF MOTHER:  Madeline Pecoraro

NAME OF FATHER:  William Leon Wilson

DATE FILED:  November 29, 1956

LOCAL REGISTRATION NO.:  3440

This is to certify that the information concerning the birth of the above named person is a true and accurate transcription of the information recorded on the original local certificate of birth on file with the local registrar of ___Rockville Centre___, New York.
Name of Locality

_Erin B McLaughlin_
Signature of Local Registrar

Date    October 13, 2010

Do not accept this transcript unless the raised seal of the issuing locality is affixed thereon.
### Any Alteration Invalidates This Certificate
### See Reverse Side For A List of Security Features Used In This Form

DOH-2673 (9/2002)

## MORTGAGE FORENSIC SECURITIZATION ANALYSIS REPORT

**Name of the Borrower:**    Ms. Caren J. Wilson    *2011-L-304*

**Name on the Title:**    Ms. Caren J. Wilson

**Property Address:**    211 W. Chandler Street Culpeper Virginia 22701

## Current Servicer & Investor Information found on MERS

# LOAN-1

**MIN:**    ███████████7543

**Note Date:**    12/13/2006

**MIN Status:**    INACTIVE

**Servicer:**    GMAC Mortgage, LLC

            Phone: (800) 766-4622

**Investor:**    This investor has chosen not to display their information

# LOAN-2

**MIN:**    ███████████7709

**Note Date:**    12/13/2006

**MIN Status:**    ACTIVE

**Servicer:**    GMAC Mortgage, LLC

            Phone: (800) 766-4622

**Investor:**    This investor has chosen not to display their information

**Borrower's Attorney:**    N/A

A forensic analysis report should state as follows:

    **a.** The borrower is going through the hardship, when she lost her
employment and was placed in foreclosure. To save her primary
residence the borrower was forced to file Chapter-7 Bankruptcy on

1

06/10/2010 in Western District of Virginia per case # 10-61734 and received discharge on 09/08/2010.

**b.** Borrower Ms. Caren J. Wilson was working with the present servicer, "GMAC Mortgage LLC" for loan modification. "GMAC Mortgage LLC" received $ 1,518, 398, 139-00 on April 13, 2009 from Treasury for "MAKING HOME AFFORDABLE" (The Mortgage Loan Modification Plan) "Program under Emergency Economic Stabilization Act, The amount received by "GMAC Mortgage LLC" can be verified from **www.financialstability.gov.**

**c.** If irregularities in the modification /short sale/ foreclosure process reflect deeper failures to document properly changes of ownership as mortgage loans were securitized, then it is possible that Treasury is dealing with the wrong parties in the course of the Home Affordable Modification Program (HAMP). This could mean that borrowers either received or were denied modifications improperly.

**d.** Some servicers, "GMAC Mortgage LLC" in this case dealing with Treasury may have no legal right to initiate modification/short sale/ foreclosures, **which may call into question their ability to grant modifications or to demand payments from homeowners, whether they are part of a modification/ short sale/ foreclosure mitigation program or otherwise.**

### SUMMARY

THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIESCOMMISSIN OR HAS THE SECURITIES ANDEXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION, therefore the parties were selling the unregistered and unregulated securities.

### RELEVANT PARTIES

**a. Sub-servicers.................**Homecomings    Financial,    LLC,    a wholly-owned subsidiary of Residential Funding Company, LLC, will subservice approximately 56.6% by principal amount of the group I loans. GMAC Mortgage, LLC an affiliate of Residential Funding Company,    LLC,    will    subservice approximately 12.2% by principal amount of the group I loans. National City Mortgage    Company    will subservice approximately 16.5% by principal amount of the group I loans. Homecomings    Financial,    LLC,    a wholly-owned subsidiary of Residential Funding Company, LLC, will subservice approximately 53.1% by principal amount of the group II loans. GMAC Mortgage, LLC, an affiliate of Residential Funding Company,    LLC,    will    subservice approximately 9.7% by principal amount of the group II loans. National   City Mortgage    Company    will    subservice approximately

17.2% by principal amount of the group II loans. SunTrust Mortgage, Inc. will subservice approximately 10.0% by principal amount of the group II loans.

**b. Master servicer and sponsor**.......... Residential Funding Company, LLC.

**c. Originators**........................... Homecomings Financial, LLC f/k/a Home comings Financial net work Inc

**d. Depositor**............................ Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, **LLC.**

**e. Securities Underwriter** ....... In this case there are 03 Securities Underwriters are involved (collectively, the SECURITIES *"UNDERWRITERS"*) and named as under;
   1) Citigroup Global Markets Inc
   2) Morgan Stanley & Co
   3) Residential Funding Securities, LLC

**f. Issuing Entity**............ RALI Series 2007-QS1 Trust. The depositor will establish a trust with respect to the Series 2007-QS1Certificates under a series supplement, dated as of January 1, 2007, to the Standard terms of pooling and servicing agreement, dated as of December 1, 2006, among the depositor, the master servicer and the trustee. On the closing date ( 01/30/2007), the depositor will deposit the pool of mortgage loans

**g. Servicer**................. Present Servicer is "GMAC Mortgage, LLC

**h. Trustee**................. Deutsche Bank Trust Company America

**i. Yield Maintenance Agreements**
   Provider......................... Bear Stearns Financial Products Inc.

j. Mortgage pool....................5,293 fixed rate mortgage loans with an aggregate principal balance of approximately $1,297,367,277 as of the cut-off date, secured by first liens on one-to four-family residential properties or interests in shares issued by a cooperative apartment corporation and the related proprietary lease

   M. Nawaz Raja deposes and states sworn under penalty of perjury as follows:

1.    I am over the age of eighteen years and qualified to make this affidavit. I have no direct or indirect interest in the outcome of the case at bar for which I am offering my observations, analysis, opinions and testimony. I am a Mortgage Forensic Auditor. My resume is attached and incorporated herein.

2.    My area of expertise, based upon knowledge, training, and experience is in the field of securities, the securities industry, derivative securities, securities regulation, special purpose vehicles, structured investment vehicles, creation of trusts pooling agreements, issuance of asset backed securities and specifically mortgage backed securities by special purpose

3

vehicles in which an entity is named as trustee for the holders of certificates of mortgage backed securities. The Trustee Disclaims any economic interest in the mortgage loans the economics of securitized residential mortgages, securitization of mortgage loans, accounting in the context of said securitizations and REMIC vehicles and pooling and servicing of securitized loans.

3.    I have knowledge, training and experience of various precursor asset protection strategies, including minimization of tax liability, which also are constructed to be made bankruptcy remote in commercial and real estate settings.

4.    I have knowledge, training and experience in loan originations, underwriting and the assignment and assumption of securitized residential mortgage loans.

5.    I also have knowledge, training and experience, including the areas of securities, real property, Internal Revenue Code as applicable to REMICs and Uniform Commercial Code. I also have knowledge, training and experience in the practices prevalent during the period of 2001-2009 that enabled the accumulation and availability of an overwhelming abundance of investment dollars, made possible because the derivatives sold to investors were made to appear that they contained both exceptional growth and zero risk, back the history of mortgage success up to that point in time had been high, and because these instruments were in addition made to appear undeniably and excessively guaranteed by 3rd party sources.

6.    I also have knowledge, training and experience that this abundance of funding was one of the direct and inevitable causes of violations against homeowners and purchasers pertaining to funding of mortgage loans for purchase and refinancing, including predatory lending practices and Truth in Lending Act Violations.

7.    "All factual testimony made by me is true and correct to the best of my knowledge and belief. All opinion testimony made by me is beyond a reasonable degree of probability in my area of expertise, which is set forth in the above paragraph and in my resume.

8.    I have no direct or indirect interest in the outcome of the case at Bar for which I am offering observations, analysis, opinions and testimony.

9.    "I have been asked to render opinions pertaining to the above case, in which **Ms. Caren J. Wilson** is the Borrower, and the Mortgage Note ("Note"), **Ms. Caren J. Wilson** on title. "Mortgage/Deed of Trust" the propriety of foreclosure, and securitization issues, among others, are in question. The original nominal Lender according to said documents is "Home comings Financial LLC f/k/a Home Coming Financial net work Inc, 2101 REXFORD Suite # 250 W Charlotte NC 28211 ("Nominal Lender")

10.    I evaluated the materials listed below, among other materials, facts and data in basing my opinions and inferences. Each of these documents and other materials, facts and data are of the type that expertise in my field would customarily rely upon in forming opinions and inferences. The information sources, I reviewed were sufficient for me to testify as to the

4

facts and opinions that are included herein. Where additional information is required to make other factual statements and express opinions on further subject matter, I have so stated. The documents were presented to me by **Ms. Caren J. Wilson**, 211 W. Chandler Street Culpeper Virginia 22701, for the forensic review, analysis and opinion.

11.    I have reviewed the settlement papers, Securities Exchange Commission filings, and various land records of the Culpeper County of Virginia. I also performed independent searches as to Securitization Documents available to the public online at **http://www.sec.gov/.** Most of the testimony in this Declaration was plainly clear from review of the below listed materials, but to the extent that technical or specialized principles and methods were required, they have been reliably applied:

A. The closing loan documents relating to the loan transactions that are the subject of this lawsuit. Not attached, because too voluminous and others are already of record with the Court. Mortgage and Note are attached as **EXHIBIT-A&B**

B. The factual results of a forensic review and analysis performed by me which I have attached as a chart showing the path of borrower's note as **EXHIBIT-C**

C. In addition I also reviewed additional correspondence sent to, GMAC Mortgage LLC, and others, from the borrower **Ms. Caren J. Wilson,** requesting an accounting and other information pertaining to accounting of the borrower's mortgage account.

D. The following recorded documents: Mortgage; Note; (Note was not recorded in the county lands record) are attached as **EXHIBIT, A & B** above.

E. Various applicable Securitization Documents pertaining to Mortgage Trust Pool, 10 K, 8k, Pooling and Servicing Agreement, prospectus Supplement, entitled "**RALI Series 2007-QS1 Trust**", including but not limited to the Pooling and Servicing Agreement ("PSA") dated 12/01/2006; filed with SEC, file #RALI Series 2007-QS1 Trust · 8-K/A · For 2/15/07 as EX-10 Filed On 2/15/07 3:31pm ET, SEC File 333-131213-34   ·   Accession Number 1382368-7-12 and Prospectus Supplement 424B5, dated 12/06/2006 ("ProS") filed with the SEC, file # Filed On 01/29/2007 at 4:37pm ET , SEC File 333-131213, -34 Accession Number 891092-7-238

F.  The Securitization Documents are too voluminous to attach to this Declaration as they are perhaps more than 2000 pages. I have attached a few key pages from the PSA, Prospectus Supplement, 8K and 10K including a diagram of the transaction, with the identity of the various Participants typed thereon, and a few pages from the ProS, FWP showing

the borrower's loan Number, zip code, city name and principle amount of the note etc.

G. The investor on loan as per MERS record shows has been intentionally hidden and the investor in this case has chosen not to disclose its information, which is incorrect, misleading and fraud, in the present case. Deutsche Bank Trust Company Americas also is the trustee on the Trust, "**RALI Series 2007-QS1 Trust**". **Deutsche Bank Trust Company Americas <u>cannot be Trustee or investor or own the note, lest it becomes a partnership with the certificate holders.</u>** The information about the investor was intentionally withheld by the securitization partners which are violations of the Federal Reserve new amendment which is law now and TILA. Borrowers repeatedly requested this information and were not provided. This information will expose the foreclosing parties before the court who have acted and are acting ultra-virus.

H. Deutsche Bank Trust Company Americas is also acting under the various layers 424(b) (5) Prospectus, Pooling & Servicing Agreement (PSA) filed with the SEC.of Trustees, without any specific description, where One Trustee ends and other Trustee Begins. It is classic obfuscation and musical chairs. Note that **Deutsche Bank Trust Company Americas is identified "as trustee" but the usual language of "under the terms of that certain trust dated….etc" is absent.** This is because there usually is **NO TRUST AGREEMENT designated as such and NO TRUST.** In fact, as stated here **it is merely an agreement between the co-issuers and Deutsche Bank Trust Company Americas, which it means that far from being a trust it is more like the operating agreement of an LLC**

I. The Nominal Lender on the Mortgage/Deed of Trust is "Home comings Financial LLC", which rented its name and charter to some undisclosed lender for the payment of hidden fees for standing in between for undisclosed lender, which is a violation. As the undisclosed lender was not disclosed to the borrower as of today in spite of repeated requests of borrowers.

J. Promissory Note has no endorsements, whereas the note should have at least nine (09) or more endorsements; which are missing on the note, reasons best known to the entities involved;

    1) Home Coming Financial LLC→ **Residential Funding Company, LLC→** Residential  Accredit Loans, Inc. (an affiliate of Residential Funding Company, **LLC.**)→ Citigroup Global Markets Inc→Morgan Stanley & Co →Residential  Funding Securities, LLC→ Dealers→

Agents→ Investors(Prospectus Supplement 424B5, dated
12/06/2006 ("ProS") <u>RALI Series 2007-QS1 Trust</u>, et al.  424B5
filed On 1/29/07 4:37pm ET    SEC Files <u>333-131213</u>, <u>-34</u>
Accession Number 891092-7-238

2) The name of all of the above parties was not there on the note and
no endorsement was done. The note never made to the Trust and
there was no endorsement in the name of Trustee, "Deutsche Bank
Trust Company Americas" therefore the assets were never became
the assets of the Trust, "<u>RALI Series 2007-QS1 Trust</u>" and
"Deutsche Bank Trust Company Americas" has acted and still
acting ultra-virus.

3) The Chain of transfer is not perfect and raises many legal
questions, which Honorable court can look in providing the justice
whoever deserves.

4) Concerns about securitization chain of title also go to the standing
question; if the mortgages were not properly transferred and
recorded in the Culpeper County Lands Records, in the
securitization process, then the party bringing the foreclosure does
not in fact own the mortgage and therefore lacks standing to
foreclose.

5) The mortgage lenders and securitization servicers including
"GMAC Mortgage LLC" should not undertake to foreclose on any
homeowner unless they are able to do so in full compliance with
applicable laws and their contractual agreements with the
homeowner.

6) In the present case, the nominal lender "Home Coming Financial
LLC" sold the borrower's loan for cash to "**<u>Residential Funding
Company, LLC</u>**, who further sold it for cash to Residential
Accredit Loans, Inc., which further sold it to Citigroup Global
Markets Inc, Morgan Stanley & Co, and to Residential Funding
Securities.  Citigroup Global Markets Inc, Morgan Stanley & Co,
and Residential Funding Securities further sold for cash to
Investors through the Dealers and Agents. On each stage the cash
was received for the loan of **Ms. Caren J. Wilson**, which was not
disclosed to the Borrower, **Ms. Caren J. Wilson** at closing or after
the closing till this date.

7) It is obvious from the securitization documents that the loan of **Ms. Caren J. Wilson** was sold prior[1] to her settlement on 12/13/2006 as Asset Backed Security.

8) Chain of Transfer of Note is broken and not perfect.

9) The securitization process is complicated, requires several properly executed transfers and then recorded in the County Lands Records. **If at any point the required legal steps are not followed to the letter, then the ownership of the mortgage loan could fall into question.**

10) The Borrower, **Ms. Caren J. Wilson** signed a Promissory Note and the investor received a "BOND", both are not the same, having the different terms, and Borrower, **Ms. Caren J. Wilson** was not the party in the "Bond" deal. Borrower's identity, personal information was used without the borrower's knowledge, consent and permission.

11) The problems in the mortgage market are highly technical, but they are extremely serious. **At best they present problems of fraud on the court, fraud on borrowers and clouded title to property.**

12) These issues are no more technicalities than the borrower's signature on a mortgage. Cutting corners may improve securitization's economic efficiency, but it undermines its legal viability.

13) Deutsche Bank Trust Company Americas was hired to manage the Trust by the Depositor which is "Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.", and the duties of the Trustee are just the administrative as per section 8.01 of the "PSA" dated 12/01/2006. The "PSA" is one of the Exhibit 10 of the current report 8K filed before the SEC as per file # 333-131213-34, and Accession # 1382368-7-12, filed on 02/15/2007 at 3:31 pm ET, by the securitization partners, who have admitted that the borrowers loan was sold to various parties for cash. According to the "PSA" section 8.01 Deutsche Bank Trust Company Americas has acted and is still acting ultra-virus.

14) The True Sale is from Depositor (Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.) to the Securities underwriters, which are Citigroup Global Markets Inc,

---

[1] S-3 Registration Form filed by Residential Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates, RALI Series 2007-QS1

Morgan Stanley & Co and Residential Funding Securities, LLC, in this case, and not to the Trustee, "Deutsche Bank Trust Company Americas" in this case.

**15)**     The event of Credit Default Swaps, AIG Bail out and insurance proceeds caused the Trust, "<u>RALI Series 2007-QS1 Trust</u>" to dissolve and "Deutsche Bank Trust Company Americas" is no more a trustee of the Trust, <u>RALI Series 2007-QS1 Trust</u>, in this case, and therefore "Deutsche Bank Trust Company Americas" acted without any authority and committing the civil theft on the Borrower, **Ms. Caren J. Wilson**

16)     If irregularities in the foreclosure process reflect deeper failures to document properly changes of ownership as mortgage loans were securitized, then it is possible that Treasury is dealing with the wrong parties in the course of the Home Affordable Modification Program (HAMP). This could mean that borrowers either received or were denied modifications improperly. Borrower **Ms. Caren J. Wilson** requested GMAC Mortgage LLC for help in modification but was not helped.

12.     I use the following definition of "Creditor" taken from research in cases, the Bankruptcy Code and the Uniform Commercial Code. A "Creditor" is a legal entity that has advanced funds, goods or services in consideration of the right to payment, or has purchased the right to be paid. A "Creditor" is an entity that had a Claim against Debtor before the case was filed. 11 U.S.C § 101(10).  A "Claim" is a right to payment. § 101(5). Only a Creditor may file a Proof of Claim. § 501(a). The "Official Form 10 reflects this requirement by describing the 'Name of Creditor' as 'the person or other entity to whom the debtor owes money or property."

13.     In the context of securitized residential mortgages (including the one in the instant case), a "Creditor" is a legal entity or group of entities or persons under the law who have advanced money for the funding of mortgage loans and who are owed money from those mortgage loans.

14. The creditor in the case at bar can be generically described as an Investor, (which remained undisclosed to the borrowers in spite of repeated requests), as  defined under the rules and regulations of the Securities and Exchange Commission, who has paid money to an intermediary in a chain of securitization that resulted in the funding of one or most residential loan transactions; **the promise to pay is from an entity usually referred to as a Special Purpose Vehicle (SPV) which is the frequently erroneously referred to as a "Trust" with a "Trustee,"** that in the applicable Pool in this case as a **"Deutsche Bank Trust Company Americas ".**  The investor in

9

this case, was intentionally misstated or has chosen not to display their information and the borrower, **Ms. Caren J. Wilson** tried her level best to get the information but it was intentionally not disclosed to the borrower, **Ms. Caren J. Wilson**, and Honorable court can determine this violation.

15. The creditor/Investor receives an instrument which is generically referred to as a Mortgage Backed Asset Certificate/Bond ("Certificate/ Bond"). The Certificate/Bond incorporates terms by which the promise to pay interest and principal is made by the issuing SPV and the manager for this is **"Deutsche Bank Trust Company Americas "** in the present case.

16. Meanwhile the lender/investor gets a **mortgage bond NOT SIGNED BY THE BORROWER**. (borrower signed a note but the lender received a bond from a party not involved in the borrower's closing). **There is no nexus between borrower and lender without recognizing the obvious — there were parties, documents, agreements and corresponding duties and obligations existing in the UNDISCLOSED MIDDLE,** which the Honorable court need to ask the foreclosing entities in doing justice, whoever deserves.

17. The promise to pay is conditioned upon several terms, including but now limited to the performance of pool of loans, the obligations of third parties, and impliedly the receipt of insurance proceeds triggered by partial non-performance of the pool of assets allocated to the SPV.

18. In turn the SPV pool is carved out of other pools created by Aggregators employed by investment banking firms. **The Aggregators are parties to Pooling and Service Agreements and Assignment and Assumption Agreements, which are Securitization documents that predate [2]the funding of the loans in any of the Pools.** The Certificate/Bond issued to the Investor conveys a percentage interest in the Pool of assets that is allocated to the SPV. I was asked to render an opinion as to the factual basis pertinent to the issue of Standing. As relates to Constitutional Standing, my opinion is premised on the following definition:

> "Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the other party's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision".

19. My presumption, in the context of the question posed to me, **is that standing requires that a party will suffer financial loss** derived from non-

---

[2] Borrower's loan was sold forward almost 11 months before her loan closing. S-3 Registration Form filed by Residential Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates, RALI Series 2007-QS1

performance (i.e., non-payment) of the subject contract, which in this case is the obligation that arose when the subject loan was funded on behalf of the borrower as homeowner. <u>Since the funding occurred out of a pool of money received by the investment banker from the investors, the investors are creditors, which in the present case were not disclosed to the borrower,</u> **Ms. Caren J. Wilson**. By the way indenture (usually incorporation a prospectus) the investors agreed to an operating plan that defined the functions of the conduit which was used to funnel funds to the investor from the pool. **This operating plan is loosely and erroneously referred to as a trust** ("RALI Series 2007-QS1 Trust" in this case), <u>**with the manager referred to as a Trustee**</u> (<u>"Deutsche Bank Trust Company Americas" in this case</u>). However, since now assets remain in the conduit which is defined under the Internal Revenue Code as REMIC (Real Estate Mortgage Investment Conduit). The REMIC is referred to in the world of finance as an SPV (Special Purpose Vehicle). I presume the words "conduit" and "vehicle" convey the fact that no actual business events of taxable or monetary significance takes place in the REMIC. **I conclude that this corroborates my opinion that the investors, which have not been disclosed to the borrower Ms. Caren J. Wilson, are the creditors, having been the only parties to advance funds from which the subject loan was funded.**

20.    <u>The note signed by said borrowers and the mortgage-backed bond[3] accepted by the investor who purchased said security are both evidence of the obligation.</u> The Mortgage/Deed of Trust is intended to be incident to the note and possibly incident to the "BOND", **if the chain of title was perfected, which is not perfected in this case, as mentioned above.**

21.**The Payee on the note and the payee on the bond are different parties**. The bonds were issued with three principal indentures:

  (1) Repayment of principal non-recourse based upon the payments by obligors under the terms of notes and mortgages in the pool
  (2) Payment of interest under the same conditions and
  (3) The conveyance of a percentage ownership in the pool of loans, <u>which means that collectively 100% of the investors own 100% of the entire pool of loans.</u> **This means that the "Trust" does NOT own the pool or the loans in the pool** (This was admitted [4]of

---

[3] The borrower signed a *note* and the lender received a *bond*. Those are two different things. If someone let them continue with this fraud, then someone is giving houses to brokers who never put up a dime for the funding of the loan.

[4] Please see their admission under the "METHOD OF DISTRIBUTION" of Prospectus Supplement 424 (b) 5

Prospectus Supplement 424 (b)5 dated 12/06/2006 of "RALI Series 2007-QS1 Trust, et al.  424B5 · On 1/29/07 Filed on 1/29/07 4:37pm ET · SEC Files 333-131213, -34   Accession Number 891092-7-238

It means that the **"Trust" is merely an operating agreement through which the investors may act collectively under certain conditions**. Accordingly, it is my opinion that the parties with standing in relation to a securitized loan are the debtor/borrowers and the creditor/investors **(which remained undisclosed in the present case Please see MERS record EXHIBIT D & E)**. This would be further corroborated if, as a matter of fact, the investment banker followed industry standing of selling the mortgage backed security FORWARD. **"Selling forward" means that the security was sold and the money was collected before the first loan was funded on behalf of the borrowers.** However, even if the investment banker had not closed the sale of securities with investors before accepting applications for loans, it would have been on the basis of expectation of said funding. **Ultimately, in all securitized loans there is really only one transaction ("ONE TRANSACTION THEORY") --- a loan from the investors to the homeowner.** Without an investor there would be no loan; conversely without a borrower there would be no investor or investment.

22.    It is accordingly my opinion that **none of the following parties are or ever were creditors and that they therefore lack standing as defined above**: Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential  Accredit Loans, Inc, , for cash), Residential Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential  Funding Securities,  LLC ( who as  "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust**, just converted these loans into certificates/ bonds and sent them back to the Depositor, in a series of securitization transactions, pursuant to Pooling and Servicing Agreement, *nor* Dealers/Agents who are part of securities underwriter, as Securities Underwriter ,had at any time relevant to the subject matter before this Court, to the present, suffered any actual or threatened injury as a result of the Borrower's  non-payment of monthly payments pursuant to the

original terms of the Note, nor because of alleged default thereon, nor can any actual or threatened injury be traced to any other proceedings in any other court, any action involving Proof of Claim, or otherwise, and therefore there never was any legitimate redress available to any of these parties by a favorable decision.

23. Specifically, pursuant to the materials I have reviewed, which I have been asked to assume includes all evidence presented to the Court, along with my knowledge and experience involving securitized mortgages, and my training and knowledge and experience involving securitized mortgages, and my training and experience, it is certain that none of the parties mentioned in para "22" above, had at any time relevant to the subject matter before this Court, were the:

   A) Holder of the Note;

   B) Owner of the Note; or

   C) Party with the right to enforce the Note.

   D) Nor held any interest at all in the Property, Note nor Mortgage/
Deed of Trust at the time the action was initiated, or any time thereafter.

24. As it relates to the issue of the Real Party in interest, the factual criteria and the question I have presupposed is: "Whether any of said Creditors own financial interest was at stake in the outcome of the litigation before the Court." "My opinion is offered based on all evidence before the Court to date is as follows."

A) "Deutsche Bank Trust Company Americas" as trustee for "**RALI Series 2007-QS1 Trust**", in a series of securitization transactions, pursuant to Pooling and Servicing Agreement dated 12/01/2006, filed with SEC as EX-10 Filed on 02/15/2007 at 3:31pm ET as per SEC file # 333-131213-34 and Accession # 1382368-7-12, did not have any of its own funds at risk in the outcome of the litigation.

B) "Deutsche Bank Trust Company Americas" as trustee for "**RALI Series 2007-QS1 Trust**" as Trustee in my opinion was not, fully and completely authorized to appear as the named party on behalf of the Real Party in Interest, in a representative capacity for the investors in the securities for the above described and named Mortgage Trust Pool.

C) Also, the proof in the record is inadequate to establish that the ownership of the Note, holder ship of the Note, or right to enforce the Note was properly pooled to the above described Mortgage Trust Pool.

D) Accordingly, as the record stands the evidence does not establish "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust** as being the Real Party in Interest, because the Trustee's duties were terminated, Trust was dissolved, due to the major trigger event of AIG Bailout, when the Toxic Assets were purchased by the Maiden Lane LLC as per "Asset Purchase Agreement" dated 12/12/2008.

E) Due to major trigger event, AIG Bailout and insurance proceeds from "MBIA", "Ambac" and many other insurance companies, the trust has been dissolved and the "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust** is acting ultra-virus and committing civil theft.

F) Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential  Accredit Loans, Inc, , for cash), Residential  Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential  Funding  Securities, LLC ( who as "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust,** just converted these loans into certificates/ bonds and sent them back to the Depositor, in a series of securitization transactions, pursuant to Pooling and Servicing Agreement, *nor* Dealers/Agents who are part of securities underwriter, as Securities Underwriter  and MERS,  are the parties whose own funds were at risk in the outcome of the litigation, and therefore none of them were a Real Party in Interest.

G) In terms of the real estate portion of the transaction, the homeowner was the Borrower and the Investor was the actual Creditor (which are still undisclosed to the borrower, **Ms. Caren J. Wilson** in this case).

H) The investor is still the Creditor **if the investor has not sold, transferred or alienated the hybrid mortgage backed security and if the investor has not been directly or indirectly paid through credit default swaps, with or without subrogation, or paid through a federal program with or without subrogation.** Since no such instruments appear on record, any right of subrogation would appear to be equitable.

I) Thus for purposes of this declaration, the unknown and undisclosed Investors constitutes the only Creditor presumed to Exist until the undersigned is presented with contrary evidence of the type that an expert

in my field of expertise would normally take into account in forming opinions and conclusions.

J) Therefore I conclude that if there remain any Creditors, pursuant to the Note signed by **Ms. Caren J. Wilson**, they are the unidentified investors and **all other parties are intermediary or representative or disinterested.**

K) The borrower has made unsuccessful attempts to obtain from these entities and others, the identity of the lender, the documentation authenticating the identity of the lender, and an accounting from the lender as to all money paid or received in connection with the subject obligation.

L) Neither Affiant, nor Defendants, nor the court will be able to determine amount of the borrower's equity in the property **until a complete accounting of all debits and credits including but not limited to the third party payments referred above.** Until such time as requests for said information have been answered, I will be unable to identify with certainty the exact identity of the current creditor, meaning the true owner of the alleged obligation, **other than to say that it is not,** Home Coming Financial LLC, ("Nominal Lender on the Deed of Trust and Note"), **Residential Funding Company, LLC** (Seller, Sponsor, who sold this loan to Residential Accredit Loans, Inc, , for cash), Residential  Accredit Loans, Inc ( which is Depositor, who sold this loan for cash to Citigroup Global Markets Inc, Morgan Stanley & Co, Residential  Funding  Securities, LLC ( who as "securities underwriters" bought the loans for cash from Depositor and further sold these loans as certificate and bonds to Dealers/Agents for cash), The dealers/agents who in turn sold these certificates and bonds to investors for cash. "Deutsche Bank Trust Company Americas" as trustee for **RALI Series 2007-QS1 Trust,** nor Dealers/Agents who are part of securities underwriter, as Securities Underwriter  and MERS *as computer data base company,* or any participant in securitization chain are the parties whose own funds were at risk in the outcome of the litigation, **and therefore none of them were a Real Party in Interest**.

M) The only parties that can claim to be a Holder in Due Course of the note are those that paid value for the note, without knowledge that there were any pending challenges to its validity and who fulfill the other requirement for Holder In Due Course status. This HDC and third party sources are the only ones that could conceivable suffer a monetary or pecuniary loss resulting from the non-payment of the obligation.

N) The investor could lose if because they advanced the actual funds from which the financial product "LOAN" was funded, assuming these investors that purchased Asset Backed Securities were those  in which ownership of the loans were described with sufficient specificity as to , at least express

the intent to convey ownership of the obligation as evidenced by the promissory note and an interest in real property consisting of security interest held by an entity that was described as beneficiary of the trust created by an instrument entitled, "Mortgage"/ "Deed of Trust".

O) These **Investors were not named, the practice has been intentional**, in my opinion, based on overwhelming commonality of this obvious reoccurring, obvious failure, and other overwhelming evidence. The THIRD PARTY SOURCES that could conceivably lose because they would have paid value prior to default or notice of default, and fall within one or more of the following classifications:

1) Insurers that paid some party on behalf of said investor;
2) Counterparties on Credit Default Swap;
3) Conveyance or constructive trusts arising by operation of law through cross collateralization and over collateralization within the aggregate asset pools or later within the Special Purpose Vehicle tranches; (Tranches is an industry term of art referring to the types of division within a Special Purpose Vehicle)
4) The US Treasury Department through the Troubled Assets Relief Program in which approximately $ 600 Billion of $ 700 Billion has been authorized and paid to purchase or pay the obligation on "TROUBLED" (non performing) assets of the loans are part of the class of assets targeted by "TARP"
5) The US Federal Reserve, which has extended credit on said troubled assets and has exercised options to purchase said troubled assets, through the Maiden Lane LLC as per "Assets Purchase Agreement" dated 12/12/2008;
6) Any other party that has traded in Mortgage Backed Securities ("MBS") from the aggregated pools or securitized tranches containing interests in the notes

25.    I concur with the allegations that challenge the validity of endorsements and/ or transfers as they have been presented in the court to obtain relief, and I believe that there is good cause, **based on the totality of circumstances to challenge that the note was endorsed or otherwise properly transferred to the Mortgage Trust "RALI Series 2007-QS1 Trust" for which Deutsche Bank Trust Company Americas, was the Trustee.**

26.    In my opinion, it is unlikely that any Holder in Due Course ("HDC") exists, because of the way the securitization was universally practiced with in the Investment Banking Community during 2001-2009. Hence the loan product sold to the subject homeowner included a promissory note that was

evidence of real obligation that arose when the transaction was funded but **lost its negotiability in the securitization process, which thus bars anyone from successfully claiming "HDC" status,** such as by:

i)      The negotiability of the note was negatively affected by;

(1) The splitting of the note and Deed of Trust as described herein;

(2) by the addition of terms, conditions, third party obligors and undisclosed profits, fees, kickbacks all contrary to existing federal and state applicable statues and common law; and Naming "MERS" as beneficiary on the Deed of Trust, when "MERS" was not a creditor and there was no name of the MERS on the Promissory Note signed by the borrower, **Ms. Caren J. Wilson;**

(3) Knowledge of title and chain of title defects in the ownership of the note,

(4) Beneficial interest in encumbrance, and position as obligee on the obligation originally undertaken by the subject homeowner.

ii)     None of the known participants in the subject securitization chain, including but not limited to entities mentioned above herein, has suffered any financial loss relating to the loan, nor are they threatened with any future loss even if foreclosure never occurs.

iii)    None of the known securitization participants has ever been the real party in interest as a lender or financial institution underwriting a loan while funding the same with respect to the loan.

iv)    None of the known securitization participants will suffer any monetary loss through nonperformance of the loan.

v)     All of the known securitization participants received fees and profits relating to the loans.

vi)    The existence and identity of the real parties in interest was withheld from the borrowers in the closing and servicing of the loan, and since.

vii)   All of the known securitization participants fail to meet one or more of the following two tests required for Holder in Due Course ("HDC") status:

1) Without actual knowledge of defects; and/or

2) In good faith, meaning a legitimate belief that the loan was sold, based upon the information they had at the time of purchase of the Note.

27.    In the case at bar, it is my opinion based upon a reasonable degree of financial analytical certainty, that the total fees and profits generated were actually in excess of the principal stated on the note which is to say that investors unknowingly placed money at risk the amount of which vastly exceeding the funding on the loan to the borrower.

28.    The only way this could be accomplished was by preventing both the borrower, **Ms. Caren J. Wilson** in this case and the investor (still undisclosed to **Ms. Caren J. Wilson**) from accessing the true information, which is why the industry practice of the nominees and beneficiary( like MERS) was created, when MERS was not creditor. Even where MERS is not specifically named in the originating documents presented to the borrower at the "closing", it was industry practice from 2001-2009 to utilize MERS "Services", or to implement practices similar to those utilized by MERS.

**29.**    Therefore it is possible and even probable that the data from the closing was entered into the MERS electronic registry and that an assignment was executed to MERS purportedly giving MERS same power over the obligation, the Note and/ or the encumbrance. As a general rule in securitized transactions and especially where MERS is named as nominee, documents of transfer (assignment, endorsement, etc) are created and executed contemporaneously with the notice of default, **thus selecting a participant in or outside the securitization chain to be the party who initiates collection and foreclosures.**

30.    The Loan made to the borrower, **Ms. Caren J. Wilson** was part of a two way transaction in which the two parties at each end thereof each purchased a "FINANCIAL PRODUCT". On one end, the home buyer or the refinancer was "Sold" a residential home loan. On the other end, the Mortgage Bond was sold to an investor. In my opinion, both financial products were securities **(Unregistered and unregulated Security)**. As mentioned in the Prospectus 424(b) 5, "THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION", therefore the parties were selling the unregistered and unregulated securities.

31.    **Neither set of securities were properly registered or regulated**, and the information that would reveal the identity of the "LENDER" is in the sole care, custody and control of the loan servicer or another intermediary conduit in the securitization chain, including but not limited to the trustee or depositor for the special purpose vehicle ("SPV") that re-issued the

homeowner's note and encumbrance as a "DERIVATIVE HYBRID DEBT INSTRUMENT " ("BOND") and equity instrument (Ownership of percentage share of pool assets, of which the subject loan was one such asset in said pool.

32.    Said Security, the Bond, **that was sold to an investor was done by use of borrower's identity and obligation without permission.** In my opinion, it is equally probable that the investors were kept unaware that a maximum of only 2/3 of their investment was actually going to fund Debtor /Borrower's loan and other similarly situated, with the excess being used to create instant income for participants.

33.    Borrower, **Ms. Caren J. Wilson** was, unaware that such large profits or premiums were being generated by virtue of her identity and signature on the purported loan documents.

34.    According to information's from the borrower, **Ms. Caren J. Wilson**, in this case, has made unsuccessful attempts to obtain from these parties and others the identity of the investor/creditor and possession documentation authenticating this identity. Neither Affiant, nor the court will be able to determine the identity of the creditor, if any still remains, until requests for information and documentation have been complied with.

35.    It is also my opinion, that there is a very high probability that all or part of the Borrower's Note was paid in whole or in part by the third parties, based upon the industry practice, my personal review of  hundreds of similar transactions including the one at bar, and the published reports. Until such time the identity of the creditor, the document trail, and precise money pertaining to payments by third party sources is disclosed, neither Affiant, nor the court will be able to determine the amounts of borrower's equity in the property.

36.    Borrower's "OBLIGATION" is the amount of the money owed to the creditor, which are none of the entities involved in this case. **The obligation originated with the advance of capital by the investor who purchased mortgage backed securities and ended with the promise to pay by the homeowner who is borrower in the transaction**. The securitization chain obscures the fact that the investor was the creditor to the homeowner/ borrower.

37.    Further, based upon repeated interactions with servicers across the country and specific documents reviewed in this case, it is highly unlikely that any of the current parties in litigation have or desire to have any knowledge of third party debits or credit transaction in the securitization chain of the transaction originated from the subject of this action.

38.    Hence, based upon the industry practice, it is my opinion that it is far more likely than not they would be ignorant of the true status of the amount of principal or interest due, if any on the subject obligation.

39.    Whether the Borrower's note is or ever was in default, a fact that can only be known by the real creditor, the investment bank that is the party in charge of the securitization management decisions. Based upon experience with the parties claiming an interest in the financial product sold to the homeowner in this case and their behavior and method of operating as demonstrated in other case, it is my opinion that none of the participants, with whom the borrower had contact, individually or collectively, has knowledge, or has done due diligence to determine the existence of a default as to the creditor, nor whether as a factual matter, the Note, Mortgage/Deed of Trust or obligation has been extinguished or paid in whole or in part by co-obligors, insurers, Federal bailouts and / or etcetera.

**40.**    The reason "as a factual matter" is emphasized is that Investment Bank in charge of the entire security, **never intended to credit any borrowers accounts for payments by these third parties sources.** Considering the fact that Affiant is aware of many dozens of times in which there is a pending action to enforce a mortgage and to foreclose upon the home in which information providing the identity of the creditor and the fact that third Party payments have been made on behalf of borrower's obligation, **it is my opinion that this behavior is intentional and designed to obscure the facts long enough for the court to presume that the action taken to collect on the debt or foreclose on the home was reasonable and proper.**

41.    It is in my opinion that many different parties in the securitization chain came to express title or claim right to enforce the Mortgage/ Deed of Trust and Note and that **there was an intention to split the Note from the Deed of Trust,** while heretofore unusual in the market place was common place in securitization of residential loans.

42.    The recorded **encumbrance was never effectively or constructively transferred because it was never executed in recordable form nor was an effort made to create such document by the parties to the instant case until they decided to pursue foreclosure.** All transfer or purported transfers because the Mortgage/Deed of Trust interest as recorded remained in the name of the originator, or that party defined as "NOMINAL LENDER" in the Note and Deed of Trust. Virginia Mortgage statues require that every change of beneficiary interest in Mortgage to real property to be recorded.

43.    Virginia recording statues require that every change of beneficiary interest in a Mortgage to real property to be recorded to be enforceable

against a bonafide purchaser for value without notice of a competing claim. Hence, in my opinion, that the holder of the Note, either Singular or plural, were not the same parties as those who purportedly held the Mortgage at any time pertinent to this case and that was the result that was intended by the mortgage originator (nominal lender) and the participants in the securitization chain, since it was a typical practice in the investment banking industry in their process of securitizing loans throughout the period of 2001-2009.

44.     In my opinion, with high degree of certainty, **the Borrower's title was and is subject to a cloud on title,** a claim of unmarketable title and possibility **a title defect that cannot be cured without the court order as a result of the manner in which borrower's loan was securitized.** In all cases reviewed by me, which include more than 50 securitization chains, the prospectus and other published documents clearly express that a securitized mortgage is treated sometimes as being secured by the real estate, and sometimes as not being secured by the real estate, depending on the context and purpose of the accounting.

45.     The naming of the party[5] other than the investor as Beneficiary under the Mortgage as distinct from a third party named as Payee on the Promissory Note and the same or other third party named as Beneficiary under the policy of the title insurance **demonstrates an intent or presumption or reasonable conclusion that there was intent by some or all of the parties at various times in the steps of the securitization process to separate the Note from the Mortgage/Deed of Trust,** thus creating the cloud on the title for both the owner of the property and any party seeking to express or claim an interest in the real property by virtue of the encumbrance.

46.     I have also reviewed, for the past many years, published financial accounting standards obviously intended for auditors involved in auditing and rendering opinions on the financial statements of entities involved in securitization, Securities issuance and securities sale and trading. **If the known parties in securitization scheme followed the rule, they did not post the instant transaction as a loan receivable[6].** The transaction most likely was posted on their ledgers as fee income or profit which was later reported on their income statement in combination with all other such transactions. These rules explain how and why the transaction was posted on or off the books of the ledger originating entity. **These entries adopted**

---

[5] MERS when MERS is not creditor and there is no name of MERS on the Promissory Note
[6] The Trust is for the current receivables and when the loan is in default it is thrown out of the trust.

**by said companies constitute admissions that the transaction was not considered a loan receivable on its balance sheet, or on the ledgers used to prepare the balance sheet, but rather shown on the income statement as fee for service as a conduit.** These admissions in my opinion are fatal to any assertion by any such party currently seeking to enforce mortgages in their own names on their own behalf, including but not limited to the securitization participants in this case.

47.    It also appears that the standard industry practice of creating a yield spread premiums between the creditor and originator was extended in the case of securitization chain such that in this case, in my opinion, it is highly probable, for beyond 50% probability that the borrower's loan was sold or presold to the investors at a gross profit to the participants in the securitization chain of at least 35% of the total principal balance of the note. It is also my opinion that this was done without full disclosure to the investors and that is tantamount to fraud upon the investors.

48.    In my opinion the investors were and remain completely unaware that much, and in many cases most of the money they supplied was used to fund fees for the participants in the securitization chain, with the rest used to fund bloated mortgage loans based upon inflated appraisals by companies that had a less than an arm length relationship with the originator and others involved in obtaining approval for the loan. These yield spread premiums far exceed those ever paid prior to the securitization of the residential mortgages. With yield spread premiums such as these, there was no way that there could ever be a legitimate profit made by any investor under ordinary circumstances, with the exception of those in upper tranches, whose profit was insured from the start, no matter how lacking in viability were these investment vehicles on the whole, because of the way payments to the investors were prearranged.

49.    It is also opinion that **the overall security was planned by the aggregator and other participants to fail from the start.** The reason for the intended failure of the overall pool in my opinion was to better insure that the fraud perpetrated on the investors would be less likely to be discovered and to make it so that additional unearned profit could be made by the aggregator and the other participants, based on the third party payments discussed above that were payable only when there was a declaration of default by the pool, often called a "trigger event". **[This trigger event caused the trust, "RALI Series 2007-QS1 Trust" to dissolve, thus terminating the duties of Trustee, "Deutsche Bank Trust Company Americas"]**

50.    In my opinion, the allegations regarding the fraud and conversion, as well as intentional aiding and abetting or conspiracy are well known. The theory that each participant, including the very first party in the securitization chain, the lender on the Mortgage/Deed of Trust, is complicit in acts and series of acts with the knowledge that these actions will harm the borrowers, including fraud and conversion, and/ or are part of a scheme to commit fraud in the form of not crediting borrowers account by the third parties source payments, thereby converting ownership of the property from the borrower, the plaintiff in this case, is well respected among those that study transactions of this sort.

51.    The following are types of wrong performed upon borrowers, at least some of which occurred with the Borrower, **Ms. Caren J. Wilson**, in this case, by loan brokers and originator " Home Coming Financial LLC" in the original Mortgage/Deed of Trust), which were acts in furtherance of an overall fraud and conversion scheme that were necessary to its success, because without a large number of loans doomed to fail from the start the main planner and major participants could not be certain that the mortgage pools as whole would fail.

    a) The fact that the Borrowers paid as much as double what the homes were actually worth, due to a real estate market that was artificially inflated because of the wealth of investment dollars looking for a home following the bursting of the dot.com bubble, followed by what amount to an economic depression for the working poor.

    b) Borrowers cannot afford the payments and they are losing their homes, and the unbelievable abundance of foreclosures shows the extent to which any defect in character they may have in common to large numbers of persons.

    c) Appraisal values were often over-inflated even above the artificially high values provided by the market and appraisers were advised they would not receive further business unless they cooperated.

    d) Borrower was misled as to what the monthly payments would be a few years into the loans.

    e) In more extreme cases, borrowers were often offered teaser rates that they qualified for, but which greatly increased within a very short period of time.

    f) There was so much investment money looking for someone to borrow it that could sign a note during this time, that loans were pushed at people with persuasive and high pressure tactics;

    g) Borrowers were advised that they could afford much more home then they really could. It appears hard to resist a home that is much nicer

than one thought they could afford, when someone that appears to be reputable professional assures them they can afford. Optimism and wishful thinking overpower reason.

h) Loan brokers were pushed to offer loans that were on worse terms than the borrowers could qualify for. Sometimes they received higher commissions, often in secret (Yield Spread Premiums "YSP"), for getting people to take out loans on terms that were less beneficial than a loan that borrowers would have qualified for. And sometimes the only loan products that loan brokers had available to them were those containing unfavorable terms.

i) Borrowers were advised that they did not have to worry about the payments being unaffordable in the future, because they would be definitely be able to refinance again at that point, because was so solid.

j) Underwriters were pushed by their supervisors to pass through bad loans, many of which were obviously doomed to fail from the start.

52.    These undisclosed yield spread premiums ("YSP Tier-I, II and III") are a liability of the participants in the securitization chain, including the loan originator and all participants owed to Homeowner /Borrower. **In my opinion, this disclosure does not appear on any of the Homeowner's documents identifying the parties participating in fee – splitting or yield spread premiums nor the amounts involved as required and other Federal and State laws.** Further, no information appears in debtor's closing documents that would have caused him to inquire about such a premium.

53.    Questions as to statute of limitation would not be applicable on a number of theories, including, but not limited to: fraud tolls the statute of limitations; until the name of the true creditors, lender, and beneficiary is made known to the borrower, the statute of limitations time frame does not begin to run.

54.    A MBS Pool Trust, "**RALI Series 2007-QS1 Trust**" is not really a "TRUST". The Trustee, "Deutsche Bank Trust Company Americas" thereof has been involved in a joint enterprise with the other participants in the creation of "Financial Product" for sale to the investors, the purchasers of "Mortgage Bonds". The so called pool "Trustee" is more like an administrator (In the present case admitted in Pooling and Servicing Agreement dated 12/01/2006 filed as Exhibit 10 with the 8K report, filed on 02/15/2007 at 3:31pm ET as per Securities and Exchange File # 333-131213-34 and Accession # 1-382368-7-12.

55.    The first loyalty of the pool trustee, "Deutsche Bank Trust Company Americas is not to the investors, but to the parties (Residential   Accredit

Loans, Inc., as depositor, **Residential Funding Company, LLC**, as a seller &
Sponsor, Residential Funding Company, LLC, as master servicer (the
*"Master Servicer"*), Citigroup Global Markets Inc, Morgan Stanley & Co,
Residential Funding Securities, LLC (Securities Underwriters) to which it
entered into contract with, the participants. Based on its actions as can be
seen over and over again, it seems it is more interested finding ways not to
reimburse the investors than find ways to do so.

56.    In securitization of the loans, the rights of various named mortgagees,
assignees and/ or trustees has each been superseded by succeeding
conduits including the alleged trustee or officer of the Special Purpose
Vehicle (SPV) that issued bonds to the investors who at least at some point
in time material to the subject transaction with the homeowner in subject
transaction was holder of Mortgage Backed Security (MBS).

57.    The power of said officer or Trustee, "Deutsche Bank Trust Company
Americas", is limited to only what the certificate holders authorize. These
have also admitted in pooling and Servicing Agreement, dated 12/01/2006
under the "Duties of Trustee" (filed as Exhibit 10 with the 8K report, Filed
On 2/15/07 3:31pm ET  SEC File 333-131213-34
Accession Number 1382368-7-12

58.    It cannot be overemphasized that the investors were not signatories to
the securitization documents. Only the participants were. The transaction
with the investor in which they advanced "LOAN" money for the subject
homeowner's product, was consumed most likely before the transaction
with the homeowners or **was subject to binding agreement between
various participants in securitization scheme that pre-dated the
transaction with the homeowner.**

59.    Therefore the actual undisclosed Creditor was the investor who advanced
the cash and who was known by the securitization participants. And
therefore was the only party entitled to claim first lien either legally or under
equitable subrogation.

60.    Accordingly, the only potential party to a foreclosure wherein the
purported creditor alleges financial injury and therefore a right to collect the
obligation, enforce the note or Mortgage/Deed of Trust is either a party who
has actually advanced cash and stands to lose money or an authorized
representative who can disclose the principal, provide proof of service or
notice and show such express, unequivocal and complete authority to
perform all acts and make all decisions without condition.

61.    In my opinion, any condition placed upon the trustee to act for the MBS
Pool Certificate Holders, including the power to enter into any compromise,
makes the Trustee, "Deutsche Bank Trust Company Americas" something

less than a Real Party in interest on behalf of the certificate Holders.(Now the Trusts have been dissolved)

62.    Also, a party must be present that is answerable to the claims, affirmative defenses and counter claims of the homeowners for such causes of action or defenses as might be applicable or they would be blocked potentially by collateral estoppel if the court determined that the foreclosing party was acting within the scope of its agency for principal, the certificate holders.

63.    In my opinion, as above, and with a reasonable degree of factual and certainty, the disclosed principals in the securitization chain, up to and including the pool trustee (Deutsche Bank Trust Company Americas), are neither creditors nor are they authorized agents for the creditors, without proof that they have been granted this authority pursuant to the terms of the securitization documents.

64.    Otherwise, **the participants, including servicers and pool trustees, in my opinion, are interlopers or imposters whose design is to take title to the property they have no right to claim, and to enforce a note which is evidence of an obligation that is not owed to them but rather to another.** The details of this information , whether the Special Purpose Vehicle still exists, whether the investor has been paid in full through "THIRD PARTY PAYMENTS" are known only to these securitization participants and therefore undisclosed investors. And the participants have demonstrated time and time again that they are not credible.

65.    In my opinion the attorneys for the known securitizations participants do not have any authority to represent the creditor, and could not represent them due to the obvious conflict of interest, to wit: the investor upon learning that a substantial amount of their advance of cash was pocketed by the intermediaries and now is left with  the mortgage whose nominal value is far below what was paid, and whose fair market value is far below the nominal value, would have potential substantial claims against the securitization participants for fraud, conversion, breach of contract, and other claims.

66.    Fraud upon investors in relevant to borrowers because it is additional evidence  of an overall fraud and conversion scheme against  borrowers, because it tends to show  motive and intent in the fraud and conversion claims by the borrowers.

67.   Dismantling of "QSPE" [7] / "TRUST" (**RALI Series 2007-QS1 Trust**) and consolidation of Bank's Balance sheets demonstrate the falsity of foreclosures. Assignments to a Trust is now gone. Mezzaine Tranches are locked out long before their time, market collapsed due to the trigger events topped, when cumulative losses on the mortgage are higher than the certain level and delinquency event occurred and as a result of credit default swaps payments[8] were executed, senior tranches were paid and nothing remained for the Mezzaine Tranches, who were already getting nothing as these were locked out, the trust was dissolved;

   a)   No payments are owed to any certificate holders (Tranches) or synthetic security holders (derivatives)

   b)   How can a fabricated document are formalized to trust after dissolution of TRUST.

   c)   Fabricated documents to a Trust that no longer function and for which "TRUSTEE[9]'S DUTIES" have been TERMINATED

   d)   Currently no distribution to certificate holders, even for the "CURRENTLY PAYING MORTGAGES".

   e)   Payments are not being directed to the original designated trust, "**RALI Series 2007-QS1 Trust**" in Plaintiff's case, because the trigger event and payments of credit default swaps, insurance proceeds, caused its demise.

   f)   Since Trust has been dissolved and Deutsche Bank Trust Company Americas, is no more Trustee, has acted wrongly in regard to the issue at hand and now acting without any standing, "those seeking equity must do equity"

   g)   The True Sale is from Depositor (Residential   Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.) to the Securities underwriters, which are Citigroup Global Markets Inc, Morgan Stanley & Co and Residential Funding Securities, LLC, and not to the Trustee which is Deutsche Bank Trust Company Americas in the present case.

---

[7] Maiden Lane Transactions, Maiden Lane LLC, Maiden Lane II LLC, Maiden Lane III LLC, Federal Reserve Statistical Release". Federal Reserve-Bank of New York August 10, 2010. http://www.federalreserve.gov/releases/h41/Current/, "SIGTARP Report 10-003 - Factors Affecting Efforts to Limit Payments

[8] Maiden Lane III LLC (a Special Purpose Vehicle consolidated by the Federal Reserve Bank of New York) (the "LLC") is a Delaware limited liability company that was formed on October 14, 2008 to acquire Asset-Backed Security Collateralized Debt Obligations ("ABS CDOs") from certain third-party counterparties(Banks) of AIG Financial Products Corp. ("AIGFP"). In connection with the acquisitions, the third-party counter parties (Banks) agreed to terminate their related credit derivative contracts with AIGFP.

[9] Deutsche Bank Trust Company Americas  et al

68. Borrower's obligation, from prior to its inception;

   a. Was destined for a transition to a Mortgage Backed Security. This was never disclosed, to borrower.

   b. It was never conveyed that the obligation was going to be converted to bond and forever separated from the security (Title) that borrower; **Ms. Caren J. Wilson** gave as collateral.

   c. It was never disclosed that future assignments and sales would not be recorded in the Culpeper County Lands Record.

   d. It was never disclosed that the lending institution (Home Coming Financial LLC) had been involved in this practice for several years prior to borrower's signing of the note and that all the actors were already in place. Prospectus Supplement filed with the SEC as per, dated 12/06/2006 ("ProS") filed with the SEC, file # Filed On 01/29/2007 at 4:37pm ET, SEC File 333-131213-34 , Accession Number 891092-7-238) and borrower **Ms. Caren J. Wilson** signed the settlement papers on 12/13/2006.

   e. It is quite possible, given the number and frequency of the MBS offerings by Home Coming Financial LLC, that this loan was a "table funded loan", where the nominal lender, Home Coming Financial LLC, in this case never even put up any funds and the loan was prefunded by the bond offering. **(Money was aggregated first)** This "prefunding" being something that is addressed in the Prospectus issued by Depositor, Residential   Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC.

69. Based on the fact that the obligation was sold, on 01/23/2006 (11 months before) into the **RALI Series 2007-QS1 Trust**, according to SEC filings, and prior to Plantiff's first scheduled loan payment due on 02/01/2007 (S-3 Registration Form filed by Residential  Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of  Mortgage  Asset-Backed Pass-Through Certificates, RALI  Series 2007-QS1)

   a. It is easy to surmise the intent was in-place prior to closing of the obligation.

   b. Given the sequence with which borrower, **Ms. Caren J. Wilson's** obligation was transferred, by the various actors involved in the bond offering of the, "**RALI Series 2007-QS1 Trust**", it is easy to apply the Step-transaction doctrine to see that this was the intent from the very beginning and should have been disclosed, to **Ms. Caren J. Wilson** when she signed the documents at closing;

   c. Step-transaction doctrine is a principle applicable to Taxation laws. According to this principle effect should be given to the substance, rather than the form, of a transaction, by ignoring for tax purposes steps of an integrated transaction that when taken separately are without substance. In short, the tax

28

liability should be determined by viewing the transaction as a whole, disregarding one or more non substantive, intervening transactions taken to achieve the final result.

d. This doctrine expresses the familiar principle that in applying the income tax laws, the substance rather than the form of the transaction is controlling. The U.S. Supreme Court has expressly sanctioned the step transaction doctrine in many cases, noting that interrelated yet formally distinct steps in an integrated transaction may not be considered independently of the overall transaction.

e. Courts generally enunciate three basic tests that define the criteria upon which application of the step transaction doctrine applies;

    a) The interdependence test,

    b) The end result test and the binding commitment test.

    c) The interdependence test requires an inquiry as to whether the steps were so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series. The end result test examines whether it appears that separate transactions were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result. The binding commitment test examines whether there was a binding commitment to undertake the later step in a series of transactions. [Falconwood Corp. v. United States, 422 F.3d 1339 (Fed. Cir. 2005)]

70.    Because of the IRS rules, regulations and Taxation laws relating to REMIC's it is a necessity on the part of the various actors in the securitization process that there must be a de-recognition of the assets (obligation) and thus a TRUE sale of the obligation. This is also a requirement of General Acceptable Accounting Practices (GAAP) as well as FASB Statement No.140.

**71.**    The questions that beg to be asked are; 1) Since the loan with the earliest payment to the trust was months prior to borrower **Ms. Caren J. Wilson's** Mortgage, why wasn't it revealed to borrower on 12/13/2006,  at closing that the obligation was intended to be put in a MBS? **Was there fraud committed at the closing by this failure to disclose?**

    i. That fraud was perpetrated from the very beginning.

    ii. There was NO disclosure as to the intent of Home Coming Financial LLC and **Residential Funding Company, LLC** (seller and sponsor) to sell the loan and assign the Mortgage to Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC. (A bankruptcy remote shell company), sold the loan and assigned the Mortgage to Deutsche Bank Trust Company Americas (trustee). The trustee then repackaged several thousand loans together and sold them as a BOND offering to

Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC (Securities Underwriters).

iii. **When this was done the obligation (note) was separated from the security (Mortgage/Deed) and thus unperfected.**

iv. Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC (Securities Underwriters), then made the offering of sale of the "NO RECOURSE" bond available to the market place.

v. The bonds are exchanged with an underwriter (Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, and LLC) for cash. The underwriter then sells the securities to investors, through the Dealers and Agents for cash."

vi. Only the subordinate tranches were sold first — while the "Underwriter" — kept most of the senior pass through securities.

vii. The "holding" of the note — STOPS — with the Depositor (Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC)

viii. Only a "pool" of cash rights is "sold" in the securitization process. At the very least, the "Holder" theory would be with the TRANCHE owners — which are, primarily, the security underwriter (Citigroup Global Markets In, Morgan Stanley & Co, Residential Funding Securities, LLC)

ix. At that point it was sold to several entities which Residential Accredit Loans, Inc., an affiliate of Residential Funding Company, LLC, was required to disclose to the SEC (Securities and Exchange Commission). These investors, by all rights of logic, would now be the "Holder in Due Course" of the obligation minus of course the security due to the separation committed by the actors in the PSA.

x. Harm has been committed on the Title to Plaintiffs property in that it has been **"clouded"** by the actions of these actors, they have **failed to maintain a "PERFECTED LIEN"**, and by the very fact of the methodology of the PSA they knew from prior to the inception that they were going to bifurcate (separate) the note from the obligation and were going to hide this fact behind a wall of secrecy.

72.    First the act of closing a loan wherein the lender is not revealed invalidates or destroys the note even though acceptance of the money creates an obligation. **The question is to whom that obligation is owed.** Second by **"securitizing the receivable according to terms far different than the note ever recited, the description contained in the note becomes increasingly remote from a proper description of the obligation**, which **keeps changing as the receivable, not the note, moves up the securitization chain.** Thus the receivable — the actual obligation that the note purported to describe — keeps changing while the note remains the same and **the original note never moves physically by delivery, transfer documents (endorsement, assignment etc.)**

73.    Thus the point is that the note is destroyed by operation of law.

74.    The formation of the Maiden Lane LLCs in 2008 occurred during a time of severe economic distress in the United States. The sharp deterioration in

the U.S. housing market in 2007, led to a loss of confidence in the value of mortgage-related products and in the financial institutions with exposures to these products. The ensuing funding pressures on a range of financial institutions and strained liquidity conditions across the financial system led the Federal Reserve to take a series of unprecedented policy actions to contain the broader risks the financial crisis posed to the economy. Among these actions, the Federal Reserve Board authorized the Federal Reserve Bank of New York (New York Fed) to form three limited liability companies under **Section 13(3) of the Federal Reserve Act** to facilitate lending in support of specific institutions.

75.   **Maiden Lane I LLC**: **Purpose:** ML LLC was created to facilitate the merger of JP Morgan Chase & Co. (JPMC) and Bear Stearns Companies, Inc. (Bear Stearns) by purchasing approximately $30 billion in assets from the mortgage desk at Bear Stearns. The New York Fed lent ML LLC approximately $28.82 billion.

**76.**   **Maiden Lane II, LLC: Purpose:** ML II LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from its securities lending program by purchasing $20.5 billion in residential mortgage-backed securities (RMBS) from several of AIG's U.S. insurance subsidiaries. The New York Fed lent ML II LLC approximately $19.5 billion

77.   **Maiden Lane III, LLC: Purpose:** ML III LLC was created to alleviate capital and liquidity pressures on American International Group Inc. (AIG) stemming from credit default swap contracts by purchasing $29.3 billion in multi-sector collateralized debt obligations from certain counterparties of AIG Financial Products Corp. (AIGFP), enabling AIGFP to terminate the associated CDS. The New York Fed lent ML III LLC approximately $24.3 billion.

78.   The U.S. Treasury is reported to own $4.6 TRILLION in mortgage bonds, which would make it the creditor in millions of homes that; (a) have already been "foreclosed"

(b) Are in "foreclosure" or

(c) Going to be foreclosed. Yet not once in any court action is the U.S. Treasury named as the creditor or having any interest in any mortgage. They paid 100 cents on the dollar to save the big powers, Deutsche Bank et al and many more on Wall Street (ignoring the smaller players who had played fair and square) and now they are going to test the market by starting to sell these mortgage bonds back into the marketplace.

79.    Why the government's programs have been so anemic in confronting the fraudulent, illicit and immoral behavior of Deutsche Bank et al and many more on Wall Street and the pretender lenders out there foreclosing on homes they never financed, you don't have to look any further than the $4.6 TRILLION that the government says it is holding in mortgage-backed bonds that are backed by fatally defective and fraudulent mortgages and notes.

80.    If the government were to tell the truth the way should be done, then the government would have to admit that

(a) Under the best case scenario they spent 100 cents when the speculative value was only 2-3 cents and

(b) There is something fundamentally wrong with the mortgage backed bonds and the underlying fatally defective, fraudulent mortgages and notes. THAT WOULD AMOUNT TO ADMISSION THAT THE TAXPAYERS GIFTED $4.6 TRILLION TO WALL STREET.

81.    To put this into perspective: 7 million homes have been fraudulently sold at auction on credit bids submitted by non-creditors. Not one penny was paid at these auctions or any money before that because the bidder never lent any money nor did they purchase the receivable. The bidder was paid as a stand-in for the undisclosed and potentially unknowable creditor just like the "loan originator" was paid to stand in as the lender.

82.    Applying the $4.6 TRILLION from the U.S. Treasury to cover losses to investors and homeowners caused by fraudulent appraisals, fraudulent ratings, and deceptive lending practices, (instead of giving the money to Deutsche Bank Trust Company Americas et al and many more on Wall Street) would have allowed an average of $657,142 to be applied on each so-called mortgage transaction providing more than enough to provide substantial relief to investors, and correcting the bogus loans to fair market value levels, thus leaving the investors where they intended to be and the homeowners where they intended to be. Oops!

83.    U.S. Treasury maintains the illusion of authenticity of the mortgage bonds and the mortgages, obscures the identity of creditors in foreclosures, and continues to indirectly prop up balance sheets of mega institutions on Wall Street. The true value of the group is not as reported but more like a negative figure. Let it fall, and do what is right for investors and homeowners and the economy is largely fixed. Continue with current policy and our credibility in world markets will continue to erode. I'm not the only one who figured this out. Central Bankers and world economists understand this perfectly well.

84.    Further affiant saith not

This concludes this Sworn, Declaration made under penalty of perjury" on this day _01ST_____, of _JULY_____2011:





M. Nawaz Raja

Mortgage Forensic Auditor

42907 Parkbrooke Court

Broadlands Virginia 20148

(540) 687-0004

therajafamily@gmail.com

State of _VIRGINIA_

County of _LOUDOUN_

Acknowledged, subscribed and sworn to before me this _01_ day of _July_ 2011

Notary Registration Number: _7042295_    Notary Public: _____

My Commission Expires: _1/31/2014_

SEAL

```
┌─────────────────────────────────────┐
│      JOSEPH LINDSEY STARK            │
│          Notary Public              │
│    Commonwealth of Virginia         │
│            7042295                  │
│  My Commission Expires Jan 31, 2014 │
└─────────────────────────────────────┘
```

33

1 of 2

**070001263**

Return To:   Homecomings Financial
One Meridian Crossing, Ste. 100
Minneapolis, MN 55423
Loan Number: ████475-4

Tax Map Reference #:

RPC/Parcel ID #:
████4-B-7

After Recording Please Return To:
KG Title, Inc.
10308B Baltimore National Pike
Ellicott City, MD 21042
(410) 465-9200

Prepared By:   Homecomings Financial
2101 Rexford, Suite 250W
Charlotte, NC 28211

PAGE 244

————————— [Space Above This Line For Recording Data] —————————

# DEED OF TRUST

MIN ████████7543

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by
CAREN J WILSON

Borrower (trustor), to  Samuel I. White, PC, a Corp. Chartered in the Commonwealth
of VA                                                                            , as

Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc. as beneficiary.                         , as

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
MFVA7770 (09/2005) / 047-175475-4                                                                 Form 3047  1/01
████-6A(VA) (0507)
Page 1 of 15

VMP Mortgage S...

DATE: 06/30/10 TIME: 16:2...
CASHIER: AGR   REG: DP78
ACCT OF: WILSON, CAREN
CASH:                    $10.50
DESCRIPTION 1: 21 COPIES
CODE DESCRIPTION
313 FEES - COPIES
236 DOCUMENT REPRODUCTI

— EXHIBIT A —

**(A) "Security Instrument"** means this document, which is dated DECEMBER 13TH, 2006 together with all Riders to this document.

**(B) "Borrower"** is
CAREN J WILSON

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
Lender is a  LIMITED LIABILITY COMPANY
organized and existing under the laws of DELAWARE
Lender's address is  2101 REXFORD, SUITE 250W
CHARLOTTE, NC 28211

**(D) "Trustee"** is  Samuel I. White, PC, a Corp. Chartered in the Commonwealth of VA
Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is 209 Business Park Drive, Virginia Beach    , VA  23462
"Trustee" is

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated DECEMBER 13TH, 2006
The Note states that Borrower owes Lender  TWO HUNDRED THIRTY SIX THOUSAND AND NO/100
                                                                                          Dollars
(U.S. $  236,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JANUARY 1ST, 2037      . The interest rate stated in the Note is SIX AND THREE FOURTHS
                                                  percent (  6.7500       %).
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in accordance with the attached Adjustable Rate Rider.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0807)                          Page 2 of 15                    Form 3047  1/01

**PAGE 246**

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)
Page 3 of 18
Initials 
Form 3047  1/01

**PAGE 247**

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   COUNTY                                [Type of Recording Jurisdiction]
of  CULPEPER                                      [Name of Recording Jurisdiction]:
Legal description attached hereto and made a part hereof

which currently has the address of
211 W CHANDLER ST                                                                                    [Street]
~~CULPEPER~~ Culpeper                          [City/County] , Virginia        22701       [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MFVA7770 (09/2006) / 047-175475-4

-6A(VA) (0507)                                    Page 4 of 15                    Initials                    Form 3047   1/01

PAGE 257

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
CAREN J WILSON                        -Borrower

_____

_____ (Seal)
                                      -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                              -Borrower

_____ (Seal)       _____ (Seal)
                        -Borrower                                              -Borrower

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)                        Page 14 of 15                        Form 3047  1/01

**PAGE 247**

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    COUNTY                                    [Type of Recording Jurisdiction]
of  CULPEPER                                    [Name of Recording Jurisdiction]:
Legal description attached hereto and made a part hereof

which currently has the address of
211 W CHANDLER ST
~~CULPEPER~~  Culpeper                   [City/County], Virginia       22701          [Street]
("Property Address"):                                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MFVA7770 (09/2006) / 047-175475-4
-6A(VA) (0507)                    Page 4 of 15          Initials          Form 3047  1/01

**PAGE 257**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____              _____(Seal)
                                        CAREN J. WILSON                  -Borrower

_____              _____(Seal)
                                                                         -Borrower

_____(Seal)        _____(Seal)
                       -Borrower                                         -Borrower

_____(Seal)        _____(Seal)
                       -Borrower                                         -Borrower

_____(Seal)        _____(Seal)
                       -Borrower                                         -Borrower

MFVA7770 (09/2006)  /  047-175475-4
-6A(VA) (0807)                          Page 14 of 15                Form 3047   1/01

**STATE OF VIRGINIA,**                                         County, ss: *Culpeper*

The foregoing instrument was acknowledged before me this *13th Day of December* 2006 by
CAREN J WILSON

My Commission Expires: *2/28/2010*   _____
                                                         Notary Public

PAGE 258

MFVA7770 (09/2006) / 047-175475-4

-6A(VA) (0507)                    Page 15 of 15                         Form 3047  1/01

PAGE 259

All that certain lot or parcel of land situate in the County of Culpeper, Commonwealth of Virginia, and being more particularly described as follows:

All that certain lot and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magisterial District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east and McElfersh on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia.

The property being known as 211 W. Chandler Street, Culpeper, VA 22701.

TAX ID # 41A1-4-E-7

INSTRUMENT #070001263
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 12, 2007 AT 03:10PM
JANICE J. CORBIN, CLERK

RECORDED BY: JLW

### Subject Interior Photo Page

| | |
|---|---|
| Borrower/Client | CAREN WILSON |
| Property Address | 211 W Chandler St |
| City | CULPEPER |
| County | CULPEPER |
| State | VA |
| Zip Code | 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. |



**Subject Interior**

211 W Chandler St

| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,872 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | AVERAGE |
| View | TYPICAL OF NEIGH. |
| Site | 6,098 SF |
| Quality | SIDING/GD |
| Age | 62 YEARS |



**Subject Interior**



**Subject Interior**

File No. MTR-1179l Page #8

## Subject Photo Page

| Borrower/Client | CAREN WILSON | | | | |
|---|---|---|---|---|---|
| Property Address | 211 W Chandler St | | | | |
| City | CULPEPER | County | CULPEPER | State VA | Zip Code 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. | | | | |



**Subject Front**

211 W Chandler St
| | |
|---|---|
| Sales Price | N/A |
| Gross Living Area | 1,872 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 1.5 |
| Location | AVERAGE |
| View | TYPICAL OF NEIGH. |
| Site | 6,098 SF |
| Quality | SIDING/GD |
| Age | 62 YEARS |



**Subject Rear**



**Subject Street**

File No. MTR-1179 Page #13

### Location Map

| Borrower/Client | CAREN WILSON | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 211 W Chandler St | | | | | |
| City | CULPEPER | County | CULPEPER | State | VA | Zip Code 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. | | | | | |



Madison Taylor Real Estate, Inc.

File No. MTR-1179 | Page #11

| Borrower/Client | CAREN WILSON | | | | File No. MTR-1179 |
|---|---|---|---|---|---|
| Property Address | 211 W Chandler St | | | | |
| City | CULPEPER | County CULPEPER | | State VA | Zip Code 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

**This Appraisal Report is one of the following types:**

☐ Self Contained (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☒ Summary (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted Use (A written report prepared under Standards Rule 2-2(c) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

· The statements of fact contained in this report are true and correct.

· The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

· I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

· I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

· My engagement in this assignment was not contingent upon developing or reporting predetermined results.

· My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

· My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

· I have (or have not) made a personal inspection of the property that is the subject of this report.

· No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report.)

### Comments on Appraisal and Report Identification

Note any USPAP related issues requiring disclosure and any State mandated requirements:

THIS REPORT IS SIGNED USING A DIGITAL SIGNATURE. THIS METHOD OF SIGNING REPORTS HAS BEEN APPROVED BY USPAP SMT-8.

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: MATTHEW SHUE | Name: APRIL TAYLOR |
| Date Signed: November 05, 2006 | Date Signed: November 05, 2006 |
| State Certification #: | State Certification #: |
| or State License #: 4001009670 | or State License #: 4001011046 |
| State: VA | State: VA |
| Expiration Date of Certification or License: 7/31/2008 | Expiration Date of Certification or License: 5/31/2008 |
| Effective Date of Appraisal: 10/31/2006 | Supervisory Appraiser Inspection of Subject Property: |
| | ☐ Did Not   ☐ Exterior-only from street   ☒ Interior and Exterior |

File No. MTR-1179 Page #12

## Building Sketch

| Borrower/Client | CAREN WILSON | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 211 W Chandler St | | | | | | |
| City | CULPEPER | County | CULPEPER | State | VA | Zip Code | 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. | | | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1008.0 | 1008.0 |
| GLA2 | Second Floor | 864.0 | 864.0 |
| BSMT | Basement | 1008.0 | 1008.0 |
| | Net LIVABLE Area | (Rounded) | 1872 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 28.0  x  36.0 | | 1008.0 |
| Second Floor | | |
| 24.0  x  36.0 | | 864.0 |
| 2 Items | (Rounded) | 1872 |

## Comparable Photo Page

File No. MTR-1179 Page #10

| Borrower/Client | CAREN WILSON | | | | |
|---|---|---|---|---|---|
| Property Address | 211 W Chandler St | | | | |
| City | CULPEPER | County | CULPEPER | State VA | Zip Code 22701-3234 |
| Lender | SERVICE 1ST MORTGAGE INC. | | | | |



### Comparable 1

916 NORTH MAIN ST

| | |
|---|---|
| Prox. to Subject | 0.91 miles NE |
| Sales Price | 255,000 |
| Gross Living Area | 1,233 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1 |
| Location | AVERAGE |
| View | TYPICAL |
| Site | 9,147 SF |
| Quality | SIDING/GD |
| Age | 56 YEARS |



### Comparable 2

2318 ORANGE RD

| | |
|---|---|
| Prox. to Subject | 0.86 miles S |
| Sales Price | 300,000 |
| Gross Living Area | 2,014 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | TYPICAL |
| Site | 16,988 SF |
| Quality | SIDING/GD |
| Age | 16 YEARS |



### Comparable 3

120 SYCAMORE ST

| | |
|---|---|
| Prox. to Subject | 0.84 miles NE |
| Sales Price | 240,000 |
| Gross Living Area | 1,349 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | AVERAGE |
| View | TYPICAL |
| Site | 12,221SF |
| Quality | SIDING/GD |
| Age | 66 YEARS |

## Uniform Residential Appraisal Report

File # MTR-1179

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER ☒ MATTSHOE APPRAISER/TRAINEE | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  MATTHEW SHUE | Name  APRIL TAYLOR |
| Company Name  MADISON TAYLOR REAL ESTATE INC. | Company Name  MADISON TAYLOR REAL ESTATE |
| Company Address  P.O. BOX 868, GAINESVILLE, VA 20181 | Company Address  P.O. BOX 686, GAINESVILLE, VA 20181 |
| Telephone Number  703-754-1140 | Telephone Number  703-754-1140 |
| Email Address  MYHOMEWARRANTY@AOL.COM | Email Address  MYHOMEWARRANTY@AOL.COM |
| Date of Signature and Report  November 05, 2006 | Date of Signature  November 05, 2006 |
| Effective Date of Appraisal  10/31/2006 | State Certification # |
| State Certification # | or State License #  4001011046 |
| or State License #  4001009670 | State  VA |
| or Other (describe) _____ State # | Expiration Date of Certification or License  5/31/2006 |
| State  VA | |
| Expiration Date of Certification or License  7/31/2008 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
| 211 W Chandler St | Date of Inspection |
| CULPEPER, VA 22701-3234 | ☒ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  280,000 | Date of Inspection  10/30/2006 |
| **LENDER/CLIENT** | |
| Name  JEFFREY RUSSELL | **COMPARABLE SALES** |
| Company Name  SERVICE 1ST MORTGAGE INC. | |
| Company Address  1415 MADISON PARK DR, GLEN BURNIE, MD | ☐ Did not inspect exterior of comparable sales from street |
| 21060 | ☒ Did inspect exterior of comparable sales from street |
| Email Address  JEFFREY-RUSSELL@COMCAST.NET | Date of Inspection  10/30/2006 |

Freddie Mac Form 70 March 2005                    Page 6 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # MTR-1179

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

File No. MTR-1179 Page #5

## Uniform Residential Appraisal Report

File # MTR-1179

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. MTR-1179 Page #4

# Uniform Residential Appraisal Report

File # MTR-1179

NONE

**COST APPROACH TO VALUE** (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    SITE VALUE IS DETERMINED BY RECENT SALES OF SIMILAR SIZE PARCELS IN THE MARKETING AREA. IN THE EVENT THERE ARE NO SALES OF SIMILAR PARCELS (I.E. TOWNHOME LOTS, ETC.) OR LACK OF RECENT SALES IN THE MARKETING AREA, THEN LAND VALUE IS DERIVED FROM MARKET DATA AND/OR PUBLIC RECORDS.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | 75,000 |
|---|---|---|---|
| Source of cost data  LOCAL BUILDERS, MARSHALL & SWIFT, COST GUIDES, COUNTY ASSESS. | DWELLING  1,872  Sq.Ft. @ $  90.00 | =$ | 168,480 |
| Quality rating from cost service  GOOD    Effective date of cost data  9/2006 | BASEMENT  1,008  Sq.Ft. @ $  50.00 | =$ | 50,400 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.)  | Garage/Carport  Sq.Ft. @ $ | =$ | |
| NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE NOTED. THE | Total Estimate of Cost-New | =$ | 218,880 |
| PRESENT LAND TO VALUE RATIO IS TYPICAL OF THE MARKET | Less  Physical  Functional  External | | |
| AREA AND IS DUE TO POSITIVE LOCATIONAL FACTORS. THE COST | Depreciation  15,000 | =$( | 15,000) |
| APPROACH IS NOT FELT APPLICABLE TO THE ASSIGNMENT DUE | Depreciated Cost of improvements | =$ | 203,880 |
| TO THE AGE OF THE SUBJECT BUT HAS BEEN PROVIDED PER THE | "As-is" Value of Site Improvements | =$ | |
| LENDERS REQUEST. | | | |

| Estimated Remaining Economic Life (HUD and VA only)    36+/- Years | INDICATED VALUE BY COST APPROACH | =$ | 278,880 |
|---|---|---|---|

**INCOME APPROACH TO VALUE** (not required by Fannie Mae)

| Estimated Monthly Market Rent $  N/A    X Gross Rent Multiplier  N/A  =  N/A | Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)    INCOME APP. NOT DEVELOPED DUE TO LACK OF DATA AS NEIGHBORHOOD IS PREDOMINANTLY OWNER OCCUPIED.

**PROJECT INFORMATION FOR PUDs** (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project  N/A

| Total number of phases  N/A    Total number of units  | Total number of units sold  N/A |
|---|---|
| Total number of units rented  N/A    Total number of units for sale  N/A | Data source(s)  N/A |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion.  N/A

Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source  N/A

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion.  N/A

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options.  N/A

Describe common elements and recreational facilities.  N/A

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. MTR-1179 Page #3

## Uniform Residential Appraisal Report
File # MTR-1179

There are __10__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 199,500 to $ 399,900
There are __3__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 240,000 to $ 300,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 211 W Chandler St CULPEPER, VA 22701-3234 | 916 NORTH MAIN ST CULPEPER, VA | | 2318 ORANGE RD CULPEPER, VA | | 120 SYCAMORE ST CULPEPER, VA | |
| Proximity to Subject | | 0.91 miles NE | | 0.86 miles S | | 0.84 miles NE | |
| Sale Price | $ N/A | $ | 255,000 | $ | 300,000 | $ | 240,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 206.81 sq.ft. | | $ 148.96 sq.ft. | | $ 177.91 sq.ft. | |
| Data Source(s) | | MRIS/AGENT/VISUAL | | MRIS/AGENT/VISUAL | | MRIS/AGENT/VISUAL | |
| Verification Source(s) | | CNTY ASSESS | | CNTY ASSESS | | CNTY ASSESS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONVENTIONAL $9,700 | | CONVENTIONAL $11,000 | | CONVENTIONAL NONE | |
| Date of Sale/Time | | SD: 6/2006 | | SD: 5/2006 | | SD: 9/2006 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,098 SF | 9,147 SF | NO ADJ | 16,988 SF | +5,000 | 12,221SF | -2,500 |
| View | TYPICAL OF NET | TYPICAL | | TYPICAL | | TYPICAL | |
| Design (Style) | CAPE COD/GD | CAPE COD/GD | | CAPE COD/GD | | CAPE COD/GD | |
| Quality of Construction | SIDING/GD | SIDING/GD | | SIDING/GD | | SIDING/GD | |
| Actual Age | 62 YEARS | 56 YEARS | | 16 YEARS | -20,000 | 66 YEARS | |
| Condition | GOOD-AVG | GOOD-AVG | | GOOD-AVG | | GOOD-AVG | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 4 1.5 | 7 3 1 | +2,000 | 8 4 2 | -2,000 | 8 3 2 | -2,000 |
| Gross Living Area | 1,872 sq.ft. | 1,233 sq.ft. | +22,000 | 2,014 sq.ft. | -5,000 | 1,349 sq.ft. | +18,000 |
| Basement & Finished | FULL BSMT | FULL BSMT | | NO BSMT | +10,000 | FULL BSMT | |
| Rooms Below Grade | UNFINISHED | RR,HB | -8,000 | N/A | | UNFINISHED | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | HFA/CAC | HFA/W-UNITS | +10,000 | HFA/CAC | | HFA/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | NONE | 1 CARPORT | -3,000 | NONE | | NONE | |
| Porch/Patio/Deck | PORCH | PATIO | +2,000 | NONE | +4,000 | PORCH | |
| FIREPLACE | 1 FIREPLACE | 1 FIREPLACE | | NO FIREPLACE | +2,500 | NO FIREPLACE | +2,500 |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 25,000 | ☐ + ☒ - | $ -5,500 | ☒ + ☐ - | $ 16,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 9.8 % Gross Adj. 18.4 % | $ 280,000 | Net Adj. 1.8 % Gross Adj. 16.2 % | $ 294,500 | Net Adj. 6.7 % Gross Adj. 10.4 % | $ 256,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MRIS/COUNTY ASSESS
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MRIS/COUNTY ASSESS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 9/2004 | NO PRIOR TRANSFER IN PAST 12 MONTHS | NO PRIOR TRANSFER IN PAST 12 MONTHS | NO PRIOR TRANSFER IN PAST 12 MONTHS |
| Price of Prior Sale/Transfer | $232,000 | | | |
| Data Source(s) | CNTY RECORDS/MRIS | CNTY RECORDS/MRIS | CNTY RECORDS/MRIS | CNTY RECORDS/MRIS |
| Effective Date of Data Source(s) | 6/9/2006 | 10/29/2006 | 10/29/2006 | 10/25/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales  SUBJECT TRANSFERRED IN 9/2004 FOR $232,000. INCREASE IN VALUE ATTRIBUTED TO MARKET APPRECIATION AS WELL AS UPGRADES BY OWNER SUCH AS UPGRADED ELECTRIC, PLUMBING AND INTERIOR FEATURES.

Summary of Sales Comparison Approach  ALL COMPARABLES ARE FROM THE SUBJECTS MARKETING AREA AND ARE CONSIDERED BEST AVAILABLE.

Indicated Value by Sales Comparison Approach $ 280,000
Indicated Value by: Sales Comparison Approach $ 280,000    Cost Approach (if developed) $ 180,785    Income Approach (if developed) $ N/A
INCOME APPROACH NOT DEVELOPED DUE OF LACK OF DATA AS NEIGHBORHOOD IS PREDOMINANTLY OCCUPIED. COST APPROACH IS NOT CONSIDERED SUPPORT OF VALUE.  SINCE SUFFICIENT MARKET DATA IS AVAILABLE, THE DIRECT SALES COMPARISON APPROACH HAS BEEN FAVORED AS IT IS CONSIDERED TO BEST REFLECT ACTION OF BUYERS/SELLERS IN MARKET.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 280,000 , as of  10/31/2006 , which is the date of inspection and the effective date of this appraisal.

Madison Taylor Real Estate, Inc.

File # MTR-1179| Page #2

## Uniform Residential Appraisal Report

File # MTR-1179

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 211 W Chandler St | City CULPEPER   State VA   Zip Code 22701-3234 |
| Borrower CAREN WILSON   Owner of Public Record  CAREN WILSON | County CULPEPER |
| Legal Description METES & BOUNDS | |
| Assessor's Parcel # 41-A1- 4- E- 7 | Tax Year 2006   R.E. Taxes $ 1,284 |
| Neighborhood Name  CITY OF CULPEPER | Map Reference 29-3   Census Tract 9902.00 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $  N/A   ☐ PUD  HOA $ N/A  ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☒ Refinance Transaction ☐ Other (describe) | |
| Lender/Client   SERVICE 1ST MORTGAGE INC.   Address  1415 MADISON PARK DR, GLEN BURNIE, MD 21060 | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   MRIS

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   N/A

Contract Price $  N/A   Date of Contract N/A   Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.   N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE   AGE | | One-Unit 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000)   (yrs) | | 2-4 Unit 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 100 Low NEW | | Multi-Family 5 % |
| Neighborhood Boundaries   THE SUBJECTS NEIGHBORHOOD IS DEFINED AS: SEE ATTACHED MAP | | | | | 500 High 75+ | | Commercial 10 % |
| | | | | | 250-350 Pred. 30-60+ | | Other 5 % |

Neighborhood Description   THE SUBJECT IS LOCATED CULPEPER COUNTY APX. 70 MILES FROM THE WASHINGTON D.C CENTRAL BUSINESS DISTRICT. SCHOOLS, SHOPPING, TRANSPORTATION, EMPLOYMENT AND OTHER SERVICES ARE CONVENIENTLY LOCATED. SMSA CODE:8840

Market Conditions (including support for the above conclusions)   TYPICAL MARKET HAVE FHA, VA OR CONVENTIONAL FINANCING WITH 0-20% DOWN PAYMENT AND THE SELLER PAYING 0-3 LOAN DISCOUNT POINTS AND/OR CONTRIBUTIONS TOWARD CLOSING COSTS. PROPERTY VALUES ARE CONSIDERED STABLE, DEMAND & SUPPLY ARE IN BALANCE AT THIS & MARKETING TIME IS APPROXIMATELY 1 WEEK TO 3 MONTHS. THESE CONCLUSIONS ARE SUPPORTED BY SALES AND CURRENT AVAILABLE LISTINGS IN THE SUBJECTS MARKETING AREA.

| | |
|---|---|
| Dimensions PLAT NOT PROVIDED | Area 6,098 SF   Shape IRREGULAR/TYPICAL   View TYPICAL OF NEIGH. |
| Specific Zoning Classification R1 | Zoning Description RESIDENTIAL |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street ASPHALT | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | ☒ | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 5100420002B   FEMA Map Date 3/2/1989

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?  ☐ Yes ☒ No  If Yes, describe
THERE ARE NO ADVERSE CONDITIONS APPARENT TO THE APPRAISER. THE NORMAL PUBLIC UTILITY EASEMENTS ARE A PART OF THE CONVEYANCE AND ARE STANDARD.

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls CONCRETE/GD-AV | | Floors HARDWOOD/GD |
| # of Stories 2 +BSMT | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls SIDING/GD | | Walls DRYWALL/GD |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area 1,008 sq.ft. | | Roof Surface COMPOSITION/GD | | Trim/Finish WOOD/GD |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish UNFINISHED % | | Gutters & Downspouts ALUMINUM/GD-AV | | Bath Floor CERAMIC/GD |
| Design (Style) CAPE COD/GD | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type VINAL/GD | | Bath Wainscot CERAMIC/GD |
| Year Built 1944 | | Evidence of ☐ Infestation | | Storm Sash/Insulated THERMAL/GD-AVG | | Car Storage ☐ None |
| Effective Age (Yrs) 31-32 YEARS | | ☐ Dampness ☐ Settlement | | Screens YES | | ☐ Driveway # of Cars 2 |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface GRAVEL |
| ☐ Drop Stair ☐ Stairs | | ☐ Other   Fuel GAS | | ☐ Fireplace(s) # ☐ Fence | | ☐ Garage # of Cars |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☐ Patio/Deck ☒ Porch WOOD | | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | | ☐ Individual ☒ Other FANS | | ☐ Pool ☐ Other | | ☐ Att. ☐ Det. ☐ Built-In |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   7 Rooms   4 Bedrooms   1.5 Bath(s)   1,872 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  HOME FEATURES: UPGRADED PLUMBING AND ELECTRICAL, HARDWOOD FLOORS THROUGH OUT,UPDATED KITCHEN WITH NEW APPLIANCES, GRANITE COUNTERS, CHAIR RAIL IN DINING ROOM.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   THE SUBJECT APPEARS TO BE ADEQUATELY MAINTAINED AND HAS EFFECTIVE AGE LESS THAN ACTUAL AGE. THIS REPORT IS NOT A HOME INSPECTION NOR A GUARANTEE OF CONDITION.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes ☒ No  If Yes, describe
THE APPRAISER NOTED NO PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS AT THE TIME OF THE INSPECTION THAT WOULD AFFECT THE LIVABILITY, SOUNDNESS OR STRUCTURAL INTEGRITY OF THE PROPERTY. HOWEVER, THE APPRAISER IS NOT A HOME INSPECTOR AND THEREFORE MAKES NO GUARANTEES AS TO THE CONDITION OF THE PROPERTY.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe
THE SUBJECTS DESIGN, APPEAL AND STYLE IS TYPICAL AND CONFORMS WELL WITH THE NEIGHBORHOOD.

Freddie Mac Form 70 March 2005

Page 1 of 6

Fannie Mae Form 1004 March 2005

EXHIBIT - E



**1 record matched your search:**

MIN: ████████54-3  Note Date: 12/13/2006          MIN Status: Inactive

Servicer: <u>GMAC Mortgage, LLC</u>                          Phone: (800) 766-4622
          Waterloo, IA

Investor:  This investor has chosen not to display their information. For
assistance, please contact the servicer.

<u>Return to Search</u>

For more information about MERS please go to <u>www.mersinc.org</u>

Copyright© 2006 by MERSCORP, Inc.

− *EXHIBIT −D* −



## 1 record matched your search:

MIN: ███████████770-9  Note Date: 12/13/2006          MIN Status: Active

Servicer:  <u>GMAC Mortgage, LLC</u>                         Phone: (800) 766-4622
        Waterloo, IA

Investor:  This investor has chosen not to display their information. For
assistance, please contact the servicer.

---

<u>Return to Search</u>

For more Information about MERS please go to <u>www.mersinc.org</u>

Copyright© 2006 by MERSCORP, Inc.

_EXHIBIT—C_

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
CAREN J WILSON                   -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated    DECEMBER 13TH, 2006
on the Property located in    CULPEPPER                                    , Virginia.

My Commission Expires: 2/28/2010

_____
Notary Public

-5N(VA) (0005)    Page 3 of 3    MFVA6054 - (09/2005) / 047-1754754    Form 3247 1/01

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

BY _____
Judy Faber, Vice President

Without Recourse
Pay to the Order of
RESIDENTIAL FUNDING COMPANY, LLC

_____
Debra Eshelman
Assistant Secretary
Homecomings Financial, LLC
A Delaware Corporation

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.00   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

# NOTE

DECEMBER 13TH, 2006                    ELLICOTT CITY                                       MARYLAND

          [Date]                              [City]                                       [State]

211 W CHANDLER ST, CULPEPPER, VA 22701

                            [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     236,000.00    (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is     HOMECOMINGS FINANCIAL, LLC  (F/K/A HOMECOMINGS
FINANCIAL NETWORK, INC.)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of    6.7500   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST   day of each month beginning on   FEBRUARY 1ST, 2007  . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on JANUARY 1ST, 2037    , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at   2101 REXFORD, SUITE 250W, CHARLOTTE, NC 28211
                                          or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $      1,530.69

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

**VIRGINIA FIXED RATE NOTE-**Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(VA) (0005)      Form 3247 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials           MFVA8064 - (08/2006) / 047-175476-4

-EXHIBIT- B            -

All that certain lot or parcel of land situate in the County of Culpeper, Commonwealth of Virginia, and being more particularly described as follows:

All that certain lot and being on the south side of Chandler Street in the Town of Culpeper, West Fairfax Magisterial District, Culpeper County, Virginia fronting 50' on said street and running back between parallel lines a distance of 102', adjoining the lands of Chilton on the west, Maren and others on the east and McElfersh on the south, and being shown on a house location survey made by Brian Throssell, C.L.S., dated August 28, 1980, a plat of which is recorded in Deed Book 298, Page 501 in the Clerk's Office of Culpeper County, Virginia.

The property being known as 211 W. Chandler Street, Culpepper, VA 22701.

TAX ID # 41AI-4-E-7

PAGE 264

INSTRUMENT #370031254
RECORDED IN THE CLERK'S OFFICE OF
CULPEPER ON
FEBRUARY 12, 2007 AT 03:13PM
JANICE J. CORBIN, CLERK

RECORDED BY: JLN

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

21. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

22. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

23. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

24. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

25. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor or successors to any trustee without any other formality than the designation in writing. The successor or any successors to any trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

26. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

27. **WAIVERS.** Except to the extent prohibited by law, Grantor waives the benefit of the homestead exemption as to this obligation and any rights of appraisement and reinstatement.
GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ANY REQUIREMENT OR OBLIGATION THAT THE LENDER OR THE TRUSTEE PRESENT EVIDENCE OR OTHERWISE PROCEED BEFORE ANY COURT, CLERK, OR OTHER JUDICIAL OR QUASI-JUDICIAL BODY BEFORE EXERCISE OF THE POWERS OF SALE CONTAINED IN THIS SECURITY INSTRUMENT AND IN SECTION 55-59 AND SECTIONS 55-59.1 THROUGH 55-59.4 OF THE CODE OF VIRGINIA (1950), AS AMENDED.

28. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ Line of Credit. The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ Construction Loan. This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ Fixture Filing. Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ Riders. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider  ☐ Planned Unit Development Rider  ☐ Other .....................................................
☐ Additional Terms.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Witness the following signatures and seals.

.............................................. 12-12-06 .............................................. ..........................
(Signature) KAREN J WILSON (Date) (Signature) (Date)

**ACKNOWLEDGMENT:**
(Individual) COMMONWEALTH OF VIRGINIA ........................, COUNTY (OR CITY) OF Cul Peper ........................} ss.
This instrument was acknowledged before me this ...13... day of December 2006
by CAREN J. WILSON ..............................................
My commission expires: 3/28/2010 ..............................................
(Seal) (Notary Public)

Express ©1994 Bankers Systems, Inc., St. Cloud, MN Form RE-REDT-VA 3/8/2002    MFVA7086 (9/02) / 047-175477-0    (page 4 of 4)

PAGE 263

PAGE 262

**15. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender and Trustee shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to direct the Trustee to execute the trust created hereby and in so doing exercise all of the powers under applicable law and as set forth in Va. Code Section 55-59 and 55-59.1 through 55-59.4, as in effect on the date of this Security Instrument.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. SECTION 55-60 OF THE CODE OF VIRGINIA.** This Security Instrument shall be construed to impose and confer upon the parties hereto, and the beneficiaries hereunder, all duties, rights and obligations prescribed in Section 55-60 of the Code of Virginia (1950), as amended, and in effect on the date of this Security Instrument, and the following provisions of that section are incorporated in this Security Instrument by short form reference:

A. Exemptions waived.
B. Subject to call upon default.
C. Renewal, extension or reinstatement permitted.
D. Any Trustee may act.
E. Substitution of Trustees permitted.
F. Advertisement required: Advertisement shall be sufficient if published in a newspaper having a general circulation in the County or City where the Property or some part thereof is located either (a) once a week for two weeks, or (b) once a day for three days, which may be consecutive days.

**17. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

**18. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law. Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.
D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**19. CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**20. INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

*(page 3 of 4)*

Experia ©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-VA 3/8/2002 MFVA7096 (8/02) / 047-178417-0

Identifier:7305989964

**PAGE 261**

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey, and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.
   NOTICE - THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.
   Grantor acknowledges that this assignment is immediately effective between the parties to this assignment and effective as to third parties on the recording of this Security Instrument. Grantor agrees that Lender is entitled to notify Grantor or Grantor's tenants to make payment of Rents due or to become due directly to Lender after such recording, however, Lender agrees not to notify Grantor's tenants until Grantor defaults and Lender notifies Grantor of the default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**(page 2 of 4)**

Identifier: 7305989966

070001264

2 of 2

Parcel Number: 41-A1-4-E-7
☐ THIS IS A REFINANCE OF A DEED OF TRUST RECORDED IN THE CLERK'S OFFICE, CIRCUIT COURT OF
................................. VIRGINIA, IN DEED BOOK ..............................
PAGE ................, IN THE ORIGINAL PRINCIPAL AMOUNT OF $ ........ After Recording Please Return To:
THE OUTSTANDING PRINCIPAL BALANCE WHICH IS $ ....................
This document was prepared by: Homecomings Financial
                                2101 Rexford, Suite 250W
                                Charlotte, NC  28211

KG Title, Inc.
10308B Baltimore National Pike
Ellicott City, MD 21042
(410) 465-9200

Commonwealth of Virginia          Space Above This Line For Recording Data

**THIS IS A CREDIT LINE DEED OF TRUST**
(With Future Advance Clause)    MIN: 100062604717547709

PAGE 260

1. **DATE AND PARTIES.** The date of this Credit Line Deed of Trust (Security Instrument) is DECEMBER 13TH, 2006
and the parties, their addresses and tax identification numbers, if required, are as follows:
    GRANTOR:   CAREN J WILSON

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and
acknowledgments.
    TRUSTEE:    Samuel I. White, PC, a Corp. Chartered in the Commonwealth of VA
                209 Business Park Drive
                Virginia Beach, VA 23462

    LENDER: HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)
            2101 REXFORD, SUITE 250W
            CHARLOTTE, NC 28211

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS.

2. **CREDIT LINE DEED OF TRUST. THIS IS A CREDIT LINE DEED OF TRUST** within the meaning of Section
55-58.2 of the Code of Virginia (1950), as amended. For purposes of such section, (i) the name of the noteholder secured
by this Security Instrument is ...HOMECOMINGS FINANCIAL, LLC (F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.)............., (ii) the
address at which communications may be mailed or delivered to the noteholder is 2101 REXFORD, SUITE 250W, CHARLOTTE, NC,....
................................................... and (iii) the maximum aggregate principal amount to
be secured is ...FIFTY NINE THOUSAND AND NO/100........... validly made pursuant to this Security
Instrument. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security
Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect
Lender's security and to perform any of the covenants contained in this Security Instrument.

3. **CONVEYANCE.** The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's
successors and assigns) and the successors and assigns of MERS. For good and valuable consideration, the receipt and
sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under
this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with
power of sale, the following described property:

    Legal description attached hereto and made a part hereof

The property is located in ...CULPEPER............................ at ...211 N CHANDLER ST.............
                              (County (or City))
...................................................  CULPEPER............, Virginia ...22701........
        (Address)                      (City)                                    (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian
rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may
now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). Grantor
understands and agrees that MERS holds only legal title to the interests granted by Grantor in this Security Instrument;
but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has
the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property;
and to take any action required of Lender, including but not limited to, releasing and canceling this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
    below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is
    suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
        Borrower(s) Promissory Note to Lender dated  DECEMBER 13TH, 2006                      in the principal sum of
    U.S. $    59,000.00 , with interest thereon, providing for monthly installments of principal and interest, with
        the balance of indebtedness, if not sooner paid, due and payable on  JANUARY 1ST, 2022

                                                                                    *(page 1 of 4)*

VIRGINIA - DEED OF TRUST  (NOT FOR FNMA, FHLMC, FHA OR VA USE)
ExSperi  ©1994 Bankers Systems, Inc., St. Cloud, MN Form RFC-REDT-VA  3/8/2002          MFVA7086 (9/02) / 047-176477-0

EXHIBIT F

# RALI SERIES 2007-QS1 TRUST

Loan was sold 11 Months Before Closing

S-3 Registration Form filed by Residential Accredit Loans with Securities and Exchange Commission as per SEC file # 333-131213 on 01/23/2006 and declared effective on 03/03/2006, of Mortgage Asset-Backed Pass-Through Certificates, RALI Series 2007-QS1

Citigroup Global Markets Inc
Morgan Stanley & Co
Residential Funding Securities, LLC
(SECURITIES UNDERWRITERS)

Cash

Dealers

Certificates
Bonds

Cash

Agents

Certificates
Bonds

Cash

Investors

Certificates
Bonds

Cash

Certificates/Bonds

Home Coming Financial LLC
(Nominal Lender on DOT & Note)

Loans

Cash

Residential Funding Company LLC
(Seller / Sponsor)

Loans

Cash

Residential Accredit Loans, Inc
(an affiliate of Residential Funding Company, LLC.)
DEPOSITOR

Note never went to the Trust
Trust Empty (No Assets)

never
Went
to
Trust

ZERO

RALI Series 2007-QS1 Trust
ISSUING ENTITY (TRUST)

Trustee's Duties are just
Administrative
WHAT
Trustee is doing is without any
AUTHORITY

Deutsche Bank Trust Company Americas
Trustee

***SEC Info*** **Home**    Search    My Interests    Help    User Info    *Nawaz Raja*

# RALI Series 2007-QS1 Trust · FWP · RALI Series 2007-QS1 Trust · On 1/24/07

**Filed On 1/24/07 4:01pm ET · SEC File 333-131213-34 · Accession Number 1382368-7-6**

| Find | in this entire Filing. | Show Docs searched and every "hit".
Help... *Wildcards:* **?** (any letter), * (many). *Logic:* for Docs: **&** (and), **|** (or); for Text: **|** (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs | | Issue |
|---|---|---|---|---|---|---|
| 1/24/07 | RALI Series 2007-QS1 Trust | FWP | | 1:885 | RALI Series 2007-( | |

### Free Writing Prospectus · Rule 163/433
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: FWP | Free Writing Prospectus | 885± | 2,906K |

| FWP | 1st "Page" of 3 | TOC | Top | Previous | Next | Bottom | Just 1st |
|---|---|---|---|---|---|---|---|

Sponsored Ads...

AdChoices▷

---

(Filed pursuant to Rule 433; SEC File No. 333-131213)

**FREE WRITING PROSPECTUS - PRELIMINARY POOL INFORMATION**

**RESIDENTIAL FUNDING COMPANY, LLC**
**MASTER SERVICER AND SPONSOR**

**RESIDENTIAL ASSET ACCREDIT LOANS, INC.**
**DEPOSITOR**

**RALI SERIES 2007-QS1 TRUST**
**ISSUING ENTITY**

**MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES,**
**SERIES 2007-QS1 (THE "CERTIFICATES")**

Statement Regarding Assumptions as to Certificates, Pricing Estimates, and Other
Information

Disclaimer

The depositor has filed a registration statement (including the prospectus (the
"*Prospectus*")) with the SEC for the offering to which this communication
relates. Before you invest, you should read the Prospectus in the registration
statement and other documents the depositor has filed with the SEC for more

| | | | | |
|---|---|---|---|---|
| | | 7.0000 | 616.81 | |
| JEFFERSONVILLEIN 47130 | | 1 | 12/14/06 | 00 |
| 0471674754 | | 03 | 02/01/07 | 0.0000 |
| **0471674754** | | **N** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217905 | E22/G02 | F | 112,500.00 | ZZ |
| | | 360 | 112,500.00 | 1 |
| | | 7.1250 | 757.93 | 75 |
| | | 6.8750 | 757.93 | |
| INDIANAPOLIS   IN 46227 | | 2 | 12/14/06 | 00 |
| 0471704429 | | 05 | 02/01/07 | 0.0000 |
| **0471704429** | | **O** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217913 | E22/G01 | F | .176,000.00 | ZZ |
| | | 360 | 176,000.00 | 1 |
| | | 6.3750 | 1098.01 | 80 |
| | | 6.1250 | 1098.01 | |
| SAINT PETERSBUFL 33713 | | 2 | 12/14/06 | 00 |
| 0471710988 | | 05 | 02/01/07 | 0.0000 |
| **0471710988** | | **O** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217919 | E22/G02 | F | 196,000.00 | ZZ |
| | | 360 | 196,000.00 | 1 |
| | | 6.6250 | 1255.01 | 72 |
| | | 6.3750 | 1255.01 | |
| BOISE       ID 83713 | | 2 | 12/13/06 | 00 |
| 0471722181 | | 03 | 02/01/07 | 0.0000 |
| **0471722181** | | **O**... | **01/01/37**... | |
| 0 | | | | |
| | | | | |
| 11217921 | E22/G02 | F | 152,000.00 | ZZ |
| | | 360 | 152,000.00 | 1 |
| | | 6.7500 | 985.87 | 70 |
| | | 6.5000 | 985.87 | |
| ALBUQUERQUE   NM 87110 | | 2 | 12/13/06 | 00 |
| 0471701201 | | 05 | 02/01/07 | 0.0000 |
| **0471701201** | | **O** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217925 | E22/G02 | F | 234,800.00 | ZZ |
| | | 360 | 234,800.00 | 1 |
| | | 7.1250 | 1581.89 | 80 |
| | | 6.8750 | 1581.89 | |
| COMBINE     TX 75159 | | 1 | 12/19/06 | 00 |
| 0471726760 | | 05 | 02/01/07 | 0.0000 |
| **0471726760** | | **O** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217935 | E22/G02 | F | 236,000.00 | ZZ |
| | | 360 | 236,000.00 | 1 |
| | | 7.1250 | 1589.98 | 80 |
| | | 6.8750 | 1589.98 | |
| COLORADO SPRINCO 80920 | | 2 | 12/14/06 | 00 |
| 0471740712 | | .05. | 02/01/07. | 0.0000 |
| **0471740712** | | **O** | **01/01/37** | |
| 0 | | | | |
| | | | | |
| 11217945 | E22/G02 | F | 236,000.00 ✓ | ZZ |
| | | 360 | 236,000.00✓ | 1 |
| | | 6.7500 | 1530.69 ✓ | 80 |
| | | 6.5000 | 1530.69✓ | |
| CULPEPPER    VA 22701 | | 2 | 12/13/06✓ | 00 |
| 0471754754 | | 05 | 02/01/07 | 0.0000 |

0471754754
0 ·

○

01/01/37

| | | | | | |
|---|---|---|---|---|---|
| 11217947 | E22/G02 | F | 182,400.00 | ZZ | |
| | | 360 | 182,400.00 | 1 | |
| | | 6.2500 | 1123.07 | 80 | |
| | | 6.0000 | 1123.07 | | |
| LONGMONT | CO 80504 | 1 | 12/19/06 | 00 | |
| 0471754887 | | 03 | 02/01/07 | 0.0000 | |
| 0471754887 | | ○ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11217991 | E22/G02 | F | 371,200.00 | ZZ | |
| | | 360 | 371,200.00 | 1 | |
| | | 7.1250 | 2204.00 | 79 | |
| | | 6.8750 | 2204.00 | | |
| BROOKLINE | NH 03033 | 2 | 12/14/06 | 00 | |
| 0471791459 | | 05 | 02/01/07 | 0.0000 | |
| 0471791459 | | ○ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11218023 | E22/G02 | F | 155,600.00 | ZZ | |
| | | 360 | 155,600.00 | 1 | |
| | | 7.0000 | 1035.21 | 80 | |
| | | 6.7500 | 1035.21 | | |
| ARVADA | CO 80003 | 1 | 12/18/06 | 00 | |
| 0471941575 | | 05 | 02/01/07 | 0.0000 | |
| 0471941575 | | Ọ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11218031 | E22/G02 | F | 160,000.00 | ZZ | |
| | | 360 | 160,000.00 | 1 | |
| | | 7.8750 | 1160.11 | 80 | |
| | | 7.6250 | 1160.11 | | |
| TAMPA | FL 33602 | 5 | 12/14/06 | 00 | |
| 0471951459 | | 05 | 02/01/07 | 0.0000 | |
| 0471951459 | | ○ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11218045 | E22/G02 | F | 111,920.00 | ZZ | |
| | | 360 | 111,920.00 | 1 | |
| | | 7.3750 | 773.00 | 80 | |
| | | 7.1250 | 773.00 | | |
| MONROE | GA 30655 | 2 | 12/14/06 | 00 | |
| 0471968644 | | 03 | 02/01/07 | 0.0000 | |
| 0471968644 | | ○ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11218063 | E22/G02 | F | 200,000.00 | ZZ | |
| | | 360 | 200,000.00 | 1 | |
| | | 7.1250 | 1347.44 | 80 | |
| | | 6.8750 | 1347.44 | | |
| SIKESTON | MO 63801 | 1 | 12/19/06 | 00 | |
| 0471991729 | | 05 | 02/01/07 | 0.0000 | |
| 0471991729 | | ○ | 01/01/37 | | |
| 0 | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 11218069 | E22/G02 | F | 104,000.00 | ZZ | |
| | | 360 | 104,000.00 | 1 | |
| | | 7.7500 | 671.67 | 80 | |
| | | 7.5000 | 671.67 | | |
| INDIAN TRAIL | NC 28079 | 1 | 12/19/06 | 00 | |
| 0472004928 | | 03 | 02/01/07 | 0.0000 | |
| 0472004928 | | N | 01/01/37 | | |
| 0 | | | | | |

*SEC Info*    Home    Search    My Interests    Help    User Info    *Nawaz Raja*

# RALI Series 2007-QS1 Trust 🇺🇸

*1 Closely Related:*    Residential Accredit Loans Inc - SEC # 949493 - 2/11/08    Go

*Click on these tabs to view other information related to RALI Series 2007-QS1 Trust.*

*View:*    Registrant    About    **Filings**    Files    Relationships    Names    Topics    Sites    *All*

## 28 SEC Filings (from 11/30/06 to 3/31/08)

*E-Mail:*    ☐ Send me notifications of *all* future filings involving **RALI Series 2007-QS1 Trust**

*Most-Recent:*    10-K -- Annual Report -- Form 10-K -- for 12/31/07 -- as Filer

List All Filings    ☑ as Filer    ☑ as "Owner"    ☑ as "Issuer"    ☐ as Filing Agent

Find    in  recent filings.    Show  Filings with "hits"  and  every "hit".
Help...    *Wildcards:* ? (any letter), * (many).    *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

## Documents & Exhibits (as Filer or "Owner")

| *Last Filing* | *Type* | | *Description* | *Documents* |
|---|---|---|---|---|
| 3/31/08 | 10-K | Reports | Annual Report -- Form 10-K | 1 |
| 9/27/07 | 8-K | Reports | Current Reports -- Form 8-K | 4 |
| | | | · ABS Change of Servicer or Trustee | |
| | | | · Financial Statements and Exhibits | |
| | | | · Other Events | |
| 1/22/08 | 15-15D | Reports | Notice of Suspension of Duty to File Reports -- Form 15 | 1 |
| 1/9/08 | 10-D | Reports | Periodic Distribution Reports by Asset-Backed Issuers -- Form 10-D | 23 |
| 12/7/07 | FWP | Registrations | Free Writing Prospectuses -- Rule 163/433 | 6 |
| 12/20/07 | 424B5 | Registrations | Prospectuses -- Rule 424(b)(5) | 4 |
| 3/31/08 | EX-34 | | Attestation Reports on Assessments of Compliance with Servicing Criteria for Asset-Backed Securities | 10 |
| 3/31/08 | EX-31 | | Certification per Sarbanes-Oxley Act (Section 302) | 1 |
| 12/20/07 | GRAPHIC | | Images and Pictures | 4 |
| 2/15/07 | EX-10 | | Material Contracts | 4 |
| 1/9/08 | EX-99 | | Miscellaneous Exhibits, including Press Releases | 24 |
| 1/29/07 | EX-5 | | Opinion re: Legality | 1 |
| 1/29/07 | EX-8 | | Opinion re: Tax Matters | 1 |
| 3/31/08 | EX-33 | | Reports of Compliance with Servicing Criteria for Asset-Backed Securities | 10 |
| 3/31/08 | EX-35 | | Servicer Compliance Statements for Asset-Backed Securities | 5 |

## Documents & Exhibits (as Subject Company or "Issuer")

| *Last Filing* | *Type* | *Description* | *Documents* |
|---|---|---|---|

| 12/7/07 | FWP | Registrations | Free Writing Prospectuses -- Rule 163/433 | 6 |
| 12/7/07 | GRAPHIC | Image or Picture | | 1 |

Sponsored Ads...

AdChoices▷

Copyright © 2011 *Fran Finnegan & Company*. *All Rights Reserved.*
*About* – *Privacy* – *Redactions* – *Help* — *Sat, 25 Jun 06:59:56.2 GMT*

6/25/2011 3:00 AM

**The Acevedo Claim**

Claim #2552  Date Filed: 11/6/2012

B 10 Modified (Official Form 10) 1

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **GMAC  12-12020**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**Constantino and Sybu Acevedo**

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
**15587 Carrera Drive**
**Fontana, Ca. 92337**

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Telephone number: **909. 278. 2953**   email: **Sybaceve@aol.com**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):
**15587 Carrera Drive**
**Fontana, Ca. 92337**
Telephone number: **909. 278. 2953**   email: **Sybaceve@aol.com**

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

**1. Amount of Claim as of Date Case Filed:** $ **197,839.61**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   **mortgage note**
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**   Alison Teamen
**9731**

3a. Debtor may have scheduled account as:
**GMAC  # ▇▇▇▇ 4941**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

Value of Property: $_____   Annual Interest Rate_____% ☐Fixed ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim,
if any: $_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**Amount entitled to priority:**

$_____

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**9. Signature:** (See instruction #9) Check the appropriate box.

☐ I am the creditor.   ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☒ mortgagees  I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Sybil Acevedo**
Title: **Constantino Acevedo**  X _____(signature)_____  **11-4-12**
Company: **N/A**   X _____  **11-4-12**
Address and telephone number (if different from notice address above):   (Date)
**15587 Carrera Drive**
**Fontana, Ca. 92337**
Telephone number: **909. 278. 2953**   Email: **Sybaceve@aol.com**

**RECEIVED**
**NOV 0 6 2012**
**KURTZMAN CARSON CONSULTANTS**
**COURT USE ONLY**

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

1212020121106000000000093

## CUSTOMER INFORMATION

**Name:** Sybil Annette Romano Acevedo
Constantino Acevedo

**Account Number:** ████4941
**Home Phone #:** (909)278-2953

**PROPERTY ADDRESS**
15587 CARRERA DRIVE
FONTANA    CA 92337

# GMAC Mortgage

Visit us at www.gmacmortgage.com for account information or to apply on-line.

02/11/10 11:00:3  0012843 2012I005 LJ098805 GMREG  1 OZ DOM LJ09880000* 1.462I16  GM

SYBIL ANNETTE ROMANO ACEVEDO
CONSTANTINO ACEVEDO
15587 CARRERA DRIVE
FONTANA CA  92337-0954



For information about your existing account, please call: 1-800-766-4622.

For information about refinancing or obtaining a new loan, please call: 1-866-690-8322

Please verify your mailing address, borrower and co-borrower information.  Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

## Account Information

| | |
|---|---|
| Account Number | ████4941 |
| Statement Date | October 04, 2012 |
| Maturity Date | April 01, 2041 |
| Interest Rate | 3.50000 |
| Interest Paid Year-to-Date | $5,823.89 |
| Taxes Paid Year-to-Date | $1,754.68 |
| Escrow Balance | $2,685.31 |
| Principal Balance(PB)* | $197,839.61 |

## Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $914.96 |
| Subsidy/Buydown | $0.00 |
| Escrow | $483.42 |
| Amount Past Due | $0.00 |
| Outstanding Late Charges | $0.00 |
| Other | $0.00 |
| Total Amount Due | $1,398.38 |
| Account Due Date | November 01, 2012 |

**For Customer Care inquiries call: 1-800-766-4622**
**For Insurance inquiries call:    1-800-256-9962**
**For Payment Arrangements call:  1-800-850-4622**

*#1732 38*
*$1398*
*11-1*

## Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| Payment | 10/01/12 | 10/04/12 | $1,398.38 | $336.95 | $578.01 | $483.42 | | | |
| Mortgage Ins Paid | 09/01/12 | 10/03/12 | $147.03 | | | $147.03 | | | |

*This is your Principal Balance only, not the amount required to pay the loan in full.  For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

## Important News

**Considering a refinance or the purchase of a new home?  We're here to help - call a loan specialist today at 877-528-3817 to review all of the financing options available to you.**

## See Reverse Side For Important Information And State Specific Disclosures

## The Ibrahim Claim

Claim #997  Date Filed: 10/5/2012

B 10 Modified (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **GMAC Mortgage, LLC, Case No. 12-12032**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
jan b ibrahim

Name and address where notices should be sent:

jan b ibrahim
22 waltham dr
Plainville, MA 02762

Telephone number:  (508)369-1368          email: jan_ibrahim@hotmail.com

Name and address where payment should be sent (if different from above):

Telephone number:                              email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $   206,922.56

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____
(See instruction #2)

**3.  Last four digits of any number by which creditor identifies debtor:**
1879

**3a. Debtor may have scheduled account as:**
Alison Tearnen
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $_____  **Annual Interest Rate**_____%  ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed,  included in secured claim,**

if any: $_____        **Basis for perfection:** _____

**Amount of Secured Claim:** $_____        **Amount Unsecured:** $_____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
■ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: JAN B IBRAHIM
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature)      10.02-12  (Date)

Telephone number:                              Email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 ·*

**5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**RECEIVED**

OCT 0 5 2012

KURTZMAN CARSON CONSULTANTS

**COURT USE ONLY**

1212032121005000000000006

**The Hill Claim**

Claim #2449  Date Filed: 11/6/2012

B 10 Modified (Official Form 10) (12/11)                                              PRF 53002-2

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor: RESIDENTIAL CAPITAL, LLC et al    Case Number: 12-12020 (MG)

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Jeffrey L. Collins + Laura L. Collins

☐ Check this box if this claim amends a previously filed claim.

Name and address where notices should be sent:
Jeffrey L Collins + Laura L. Collins
2962 Jamaica Blvd S.
Lake Havasu AZ. 86406
Telephone number: 928-855-9740          email:

**Court Claim Number:**
_____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:          email:

**1. Amount of Claim as of Date Case Filed:** $ 10,552.84

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Our Mortage Paym'ts. Were NOT APPLIED to our Loan.
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 5871

**3a.** Debtor may have scheduled account as:
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property:** $_____  **Annual Interest Rate**_____% ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**
if any: $_____          **Basis for perfection:** _____

**Amount of Secured Claim:** $_____    **Amount Unsecured:** $ 10,552.84

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$_____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.
☒ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)
☐ I am the trustee, or the debtor, or their authorized agent.
(See Bankruptcy Rule 3004.)
☐ I am a guarantor, surety, indorser, or other codebtor.
(See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Jeffrey L. Collins Sr.
Title: homeowner
Company:                    (Signature) Jeffrey L Collins Sr.    11/1/12    (Date)
Address and telephone number (if different from notice address above):

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☒ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$ _____

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

RECEIVED
NOV 0 6 2012
KURTZMAN CARSON CONSULTANTS

Telephone number:          Email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 1

**GMAC Mortgage**

### CUSTOMER INFORMATION

Name: Jeffrey L. Collins
Laura L. Collins

Account Number: ████8315
Home Phone #: (928)855-9740

**PROPERTY ADDRESS**
2962 JAMACA BOULEVARD SOUTH
LAKE HAVASU CITY    AZ 86406

Visit us at www.gmacmortgage.com for account information or to apply on-line.

(handwritten) *WHAT WE GOT YESTERDAY*

JEFFREY L. COLLINS
LAURA L. COLLINS
2962 JAMACA BOULEVARD SOUTH
LAKE HAVASU CITY AZ  86406-6102

Customer Care Inquiries:    1-800-766-4622

Please verify your mailing address, borrower and co-borrower information.    Make necessary corrections on this portion of the statement, detach and mail to address listed for inquiries on the reverse side.

### Account Information

| | |
|---|---|
| Account Number | ████8315 |
| Current Statement Date | May 18, 2010 |
| Maturity Date | January 01, 2016 |
| Interest Rate | 7.25000 |
| Current Principal Balance* | $47,807.87 |
| Current Escrow Balance | $790.87- |
| Interest Paid Year-to-Date | $291.93 |
| Taxes Paid Year-to-Date | $529.11 |

**For questions on the servicing of your account, call 1-800-766-4622.**

### Details of Amount Due/Paid

| | |
|---|---|
| Principal and Interest | $803.32 |
| Subsidy/Buydown | $0.00 |
| Escrow | $163.04 |
| Unpaid Amount | $5,168.67 |
| Late Charges | $905.12 |
| Other | $2,446.47 |
| Total Unpaid Amount | $9,486.62 |
| Payment Date | December 01, 2009 |

### Account Activity Since Last Statement

| Description | Pmt Date | Tran. Date | Tran. Total | Principal | Interest | Escrow | Add'l Products | Late Charge | Other |
|---|---|---|---|---|---|---|---|---|---|
| PROP INSPECTION FEE | 11/01/09 | 05/04/10 | $11.25 | | | | | | $11.25 |
| EXPENSE ADVANCES | 11/01/09 | 04/07/10 | $400.00 | | | | | | $400.00 |
| EXPENSE ADVANCES | 11/01/09 | 04/07/10 | $33.00 | | | | | | $33.00 |
| EXPENSE ADVANCES | 11/01/09 | 04/07/10 | $625.00 | | | | | | $625.00 |
| EXPENSE ADVANCES | 11/01/09 | 04/07/10 | $62.37 | | | | | | $62.37 |
| County Tax Paid | 11/01/09 | 04/06/10 | $529.11 | | | $529.11 | | | |
| EXPENSE ADVANCES | 11/01/09 | 04/06/10 | $568.30 | | | | | | $568.30 |
| EXPENSE ADVANCES | 11/01/09 | 04/06/10 | $600.00 | | | | | | $600.00 |
| PD EXPENSE ADVANCES | 11/01/09 | 04/06/10 | $568.30 | | | | | | $568.30 |

*This is your Principal Balance only, not the amount required to pay the loan in full. For payoff figures and mailing instructions, call the Customer Care number above or you may obtain necessary payoff figures through our automated system (24 hours a day, 7 days a week).
See back for automatic payment sign-up information and other payment options.

### Important News

**Our records indicate that you have filed for bankruptcy protection. This statement applies to our lien on your property and is being provided for informational purposes only. If you choose to continue to remit payments, please include the coupon below with any payments you send. If you do not want us to send you mortgage account statements in the future, please contact us at the number listed above.**

**The Pfunder Claim**

B 10 Modified (Official Form 10) (12/11)

Claim #1430   Date Filed: 10/19/2012

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor and Case Number: **Paul · Marge Pfunder**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Name and address where notices should be sent:

**Paul · Marge Pfunder
24993 Avenida Sombra
Murrieta CA 92563**

Telephone number: **951 - 698 - 1488**   email:

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:   email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed: $** **435,000.** ⁰⁰

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** **Refusal to modify Home loan. Losing home**
(See instruction #2)   **Because of that.**

**3. Last four digits of any number by which creditor identifies debtor:**

**1234  6880**

**3a. Debtor may have scheduled account as:**
~~Alison Toomen~~ **Paul Pfunder**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

_____
(See instruction #3b)

**4. Secured Claim (See instruction #4)**

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

**Value of Property: $** **435,000.**   **Annual Interest Rate** **8 - 10**  % ☑ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim,**

if any: $ **62,000.**   Basis for perfection: _____

**Amount of Secured Claim: $** _____   **Amount Unsecured: $** _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.

$ _____ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature: (See instruction #9)** Check the appropriate box.

☐ I am the creditor.  ☐ I am the creditor's authorized agent.
(Attach copy of power of attorney, if any.)

☑ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: **Paul Pfunder**
Title: **Homeowner**
Company: _____
Address and telephone number (if different from notice address above):

(Signature) **Paul Pfunder   10/9/12**
**Marge Pfl          (Date) 10-16-12**

* Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**RECEIVED**
OCT 1 9 2012
KURTZMAN CARSON CONSULTANTS

Telephone number:   Email:

COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## The Bejarano Claim

Claim #604   Date Filed: 9/17/2012

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT , SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |

| Name of Debtor: Residential Capital, LLC, et al., GMAC Mortgage Debtors | Case Number: 12-1202020 (MG) |

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

SEP 17 2012

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Ron R Bejarano

**COURT USE ONLY**

Name and address where notices should be sent:
7810 W 70th Dr
Arvada, Co  80004

❏ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
   *(If known)*

Telephone number: (303) 940-3639   email: Karenbei1@juno.com

Filed on:_____

Name and address where payment should be sent (if different from above):

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars.

Telephone number:   email:

**1. Amount of Claim as of Date Case Filed:**    $_____402,801.00_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Breach of Contract,
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** 8 2 6 8 | **3a. Debtor may have scheduled account as:** (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
   $_____

**Nature of property or right of setoff:** ☑ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:** 7810 W 70th Dr  Arvada, Co  80004

**Basis for perfection:** Breach of Contract,

**Value of Property:** $   385,000.00

**Amount of Secured Claim:** $  40,280,100.00

**Annual Interest Rate** 6.440%  ❏ Fixed  or  ☑ Variable
(when case was filed)

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)___).

$_____

**RECEIVED**

SEP 20 2012

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)  KURTZMAN CARSON CONSULTANTS



1212020120917000000000051

B 10 (Official Form 10) (12/11)                                                                                                         2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

**RECEIVED**

If the documents are not available, please explain:

SEP 2 0 2012

**KURTZMAN CARSON CONSULTANTS**

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor.     ☐ I am the creditor's authorized agent.     ☐ I am the trustee, or the debtor,     ☐ I am a guarantor, surety, indorser, or other codebtor.
                         (Attach copy of power of attorney, if any.)     or their authorized agent.     (See Bankruptcy Rule 3005.)
                                                                        (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: _____
Title: _____
Company: _____
Address and telephone number (if different from notice address above): _____
_____          *(Signature)*                              9-11-12
_____                                                     (Date)

Telephone number: _____          email: _____

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.