## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

11-40292-AJC

BARRY B. ESKANOS,
AMI B. ESKANOS,

           Plaintiffs,

-vs.-

WASHINGTON MUTUAL
BANK, FA.,

           Defendant

---

**PLAINTIFFS' ADVERSARY COMPLAINT FOR DAMAGES AGAINST DEFENDANT
WASHINGTON MUTUAL BANK, FA, TO SET ASIDE THE SUMMARY JUDGMENT ON THE
BASIS OF FRAUD; FOR VIOLATIONS OF THE FLORIDA FAIR DEBT COLLECTION
PRACTICES ACT ("FDCPA"), 15 U.S.C. § 1692 ET. SEQ.; FLORIDA CIVIL CONSPIRACY;
MAIL AND WIRE FRAUD 18 U.S.C., SECTIONS 1341, 1343; BANK FRAUD 18 U.S.C. 1341, 1344;
VIOLATION OF 18 U.S.C. § 1001; VIOLATION OF 18 U.S.C. § 1005; VIOLATION OF 12 C.F.R.
§202.16, EQUAL OPPORTUNITY ACT, REGULATION B; DECLARATORY RELIEF;
DECLARATORY RELIEF ORDER FINDING THE LINE OF CREDIT OF $100,000 ISSUED BY
WAMU IS VOID AS PREDATORY LENDING; UNCOLLECTABLE AS BEYOND THE STATUTE
OF LIMITATIONS; AND VOID AS PLAINTIFFS WERE VICTIMS OF IDENTITY THEFT AND
THE LIENS THEREON SHOULD BE ORDERED VACATED;
AND DAMAGES PURSUANT TO FLORIDA STATUTE CHAPTER 701.04 (1)**

**JURY DEMANDED**

**I.    Jurisdiction, Venue, and Parties**

    **A.    Jurisdiction and Venue**

1.    This is a complaint is for damages and other relief, which exceed the jurisdictional minimum of this

Court exclusive of interest, attorneys' fees, and costs, which damages are recoverable under the claims set

forth herein under the Federal Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 ET. SEQ.;

Racketeering, Civil Conspiracy; Mail and Wire Fraud 18 U.S.C., SECTIONS 1341, 1343; Bank Fraud 18

U.S.C. 1341, 1344; Violation of 18 U.S.C. § 1001; 18 U.S.C. § 1005; Violation of 12 C.F.R. §202.16;

1

Regulation B; Civil Conspiracy, Declaratory Relief and Damages Pursuant to Florida Statute Chapter 701.04 (1) and which damages have been suffered by the Plaintiffs due to the actions and conduct of the Defendants as set forth herein below; for temporary and permanent injunctive relief; and for other relief, and for trial by jury of all issues so triable as a matter of right.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. § 1367, this court has supplemental jurisdiction over the state law claims because Plaintiffs' state law claims are so related to Plaintiffs' federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Plaintiffs reside and the violations discussed herein occurred in Miami Dade County, Florida.

4.      Venue of this action is proper as to Defendant Washington Mutual Bank, FA as the cause of action arose in this County, the property is located in this county, and the Defendant was licensed to do business in Washington.

        **B.      Parties**

5.      Plaintiffs BARRY B. ESKANOS, and AMI B. ESKANOS are residents of Miami-Dade County, Florida who are over the age of eighteen (18).

6.      The real property, which is the subject of this action, is located at 3122 Pine Tree Drive, Miami Beach, FL 33140, Folio Number 02-3227-001-0330 and the conduct complained of affected the property located there.

7.      Defendant, WAMU, and its co-conspirators at all times material hereto engaged in a regular and systematic course of conduct in Florida including Miami Dade County, Florida, which conduct included but was and is not limited to the filing of a forged promissory note illegally endorsed, and false affidavit, in a Miami Dade Circuit Court Action, Case Number 05-6570 CA 01 (42).

2

## FACTS COMMON TO ALL CAUSES OF ACTION:

8.      Plaintiffs are seeking declaratory and injunctive relief against Washington Mutual Bank, FA, and are seeking an order setting aside the Summary Judgment they obtained in Miami Dade Circuit Court Action, Case Number 05-6570 CA 01 (42) on the basis of fraud, misrepresentation and a lack of standing and for the reasons as follows:

a.      Washington Mutual Bank, FA filed suit five days **after** they sold all of their right, title and interest in the subject loan[1] and were paid in full[2], and thus never had standing to sue while falsely representing to the court they retained all right, title and interest even though they sold the loan and was paid in full[3].

b.      They violated TILA by charging improper amounts of interest.

c.      They illegally placing forced placed insurance on the Plaintiffs property[4];

d.      They continued to pursue an action against the Plaintiffs after being paid in full;

e.      They filed false pleadings with the court during the course of that litigation;

f.      They filed a complaint attaching a certified copy of a promissory note, claiming it to be a true and correct copy of the original note[5]; then filed a forged promissory note[6]; which was subsequently determined to be a forgery by a forensics expert[7]; which was improperly endorsed by Cynthia A. Riley as

---

[1] Exhibit A – Affidavit of Debra Lyman, page 2, paragraph 5 – Loan sold March 25, 2005.
[2] Exhibit B – Log from WAMU Showing Sale, then active foreclosure litigation – March 25, 2005.
[3] Exhibit C - Log from WAMU showing paid in full.
  Exhibit D – Log from WAMU showing paid in full.
  Exhibit E – Log from WAMU showing attorney fees, court costs all paid in full.
[4] Exhibit F – Insurance Documents
[5] Exhibit G – Note purported to be certified copy true and correct
[6] Exhibit  H – Note filed purporting to be original – Markedly different from Exhibit G
[7] Exhibit I – Forensic Expert's report.

3

Vice President of Washington Mutual Bank, FA AFTER she no longer worked there[8]; AFTER the bank was under an order by the Office of Thrift Supervision – OTS (now the Office of the Comptroller of the Currency -- OCC) to cease and desist from operation because of their negligent lending practices[9];

  g.  They filed a forged note[10] – the signature page of the note is not even the same type of paper as the rest of the document, the fonts are different, and the forensic expert's report stated it was not created at the same time as the rest of the document;

  h.  They lied to the court stating that Washington Mutual Bank, FA retained Litton Loan Servicing to service the loan[11] when no such agreement existed in order to attempt to steal the insurance proceeds from a hurricane and successfully misled the court[12];

  i.  The forged promissory note that was endorsed en blanc by Cynthia A. Riley as Vice President of Washington Mutual Bank, FA after she was no longer employed by Washington Mutual Bank, FA, after it was closed by the OTS and ordered to cease and desist, and endorsed on a page that was of obviously different type of paper (copier paper) when the rest of the note was of an onion skin type paper, was missing scanner bar code that should have been there; all placed Washington Mutual Bank, FA on clear notice of the forged nature of the document and constituted an act of Bank Fraud[13];

---

Pay to the order of

Witho ut Recourse
Washington Mutual Bank, FA

Cynthia A. Riley, Vice President

[8]

[9] EXHIBIT J – 2010 GOVERNMENT (OTS / OCC) REPORT SHOWING WAMU failed because of their improper lending practices.
[10] EXHIBIT I – FORENSIC REPORT.
[11] EXHIBIT K – WAMU's Motion to establish court registry.  Note, they lied to the court stating that Litton Loan Servicing was servicing the loan for WAMU.  Compare that lie to EXHIBIT L where Litton states they are servicing the Loan for RFC Homecomings.
[12] See Exhibit L, proving the fraud upon the court by WAMU.
[13] See EXHIBIT I – Forensic Expert's Report.

4

j.      They filed a false and misleading robo-signed affidavit in order to obtain a summary judgment[14];

k.      They listed a false address on the judgment[15];

m.     They continued in operation doing business in violation of the cease and desist order of the Office of Thrift Supervision, now the OCC[16];

n.      They committed violations of the Florida Fair Debt Collection Practices Act;

o.      They refused to comply with Florida Statute 701.04 (1)[17];

p.      They refused to comply with the requirements of and thus violated 12 C.F.R. §202.16, EQUAL OPPORTUNITY ACT, REGULATION B (also a predicate act for civil conspiracy);

q.      They committed mail fraud (18 U.S.C., SECTIONS 1341, 1343) (also a predicate act for Civil Conspiracy);

r.      They committed bank fraud, 18 U.S.C. 1341, 1344 (also a predicate act for Civil Conspiracy);

s.      They violated 18 U.S.C. § 1001;

t.      They violated 18 U.S.C. § 1005 (also a predicate act for Civil Conspiracy); and the other wrongful acts complained of herein, and proven at the time of trial.

---

[14] See EXHIBIT A – robo signed affidavit of Debra Lyman.  Note that the date of the signature does not match the facts contained in the affidavit. The Affidavit states that the original note was filed, but the note was not filed for months after the affidavit was executed, and the affidavit discusses facts that had not occurred at the time the affidavit was signed.
[15] See EXHIBIT M – Summary judgment fraudulently obtained by WAMU.
[16] See EXHIBIT O – Failed Bank Report showing WAMU assets of $308 billion dollars justifying the punitive damage award. EXHIBIT P – AFFIDAVIT OF FDIC.
[17] See EXHIBIT R and their refusal to comply letter, EXHIBIT S. On February 18, 2011, well past the

deadline of the statute, WAMU's lawyers sent a letter stating unequivocally that Litton Loan Services, LP, on their own behalf, and on behalf of WAMU received the Plaintiff's demand pursuant to Florida Statute 701.04(1) and said "Litton will not be providing this letter".

5

9.      Plaintiffs seek a declaratory relief order setting aside the fraudulently obtained judgment and damages pursuant to the other causes of action set forth herein, because the conduct was intended to cause, and did cause harm to the Plaintiffs, and each of them in the amount to be proven at trial, or as follows:

a.      Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

b.      As a further actual and proximate cause of the mail fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

c.      As a further actual and proximate cause of the fraud perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

d.      Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

e.      Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was

6

obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

       f.      Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

10.     At the time of closing on the subject property, WAMU was provided with the name of the insurance agent, State Farm, by the Plaintiffs, as the designated carrier in the event insurance was needed.  Full policies of insurance were purchased by the Plaintiffs in October of 1999 for one year from the date of closing; but in January of 2000, WAMU put forced placed insurance on the Plaintiffs home, and started charging the Plaintiffs with the exorbitant costs of that policy, and continued in that practice on an annual basis until the present, and never used the Plaintiffs designated carrier.

11.     WAMU participated in, and conspired with, Stephanie Jackson to provide the OCC and its Federal Employee conducting an official investigation to the contrary of Debra Lyman's sworn testimony as a means of avoiding their investigation into WAMU's Fraudulent conduct as complained of herein.

12.     That, as a result of the fraudulent representations to the OCC by WAMU and its co-conspirator, Stephanie Jackson, the OCC in fact reasonably relied on Stephanie Jackson's false representations and stopped their investigation.

13.     That, as a result, the Plaintiffs suffered harm by the OCC's reliance on the false representations by Jackson to the OCC.

14.     Other parts of Debra Lyman's testimony in her affidavit are also factually impossible, including, but not limited to:

7

a) The complaint alleges that the promissory note was lost, and provides a certified copy of the promissory note of the original, which then differed substantially from the note that Debra Lyman swore was an original that was fraudulently found and filed years later;

b) The complaint alleges that Washington Mutual Bank had all right title and interest in the loan, but the affidavit of Debra Lyman states it was sold five days prior to the suit being filed and all right, title and interest was transferred to RFC Homecomings at that time;

c) The affidavit of Debra Lyman states the loan was sold on March 25, 2005 and the Defendant, said it was April 19, 2005;

d) Debra Lyman discussed events that occurred on and after the date she signed the affidavit;[18]

e) Debra Lyman testified that "

I have reviewed and am personally familiar with Ms. Eskanos' loan file, including all
documents transferred from Washington Mutual, which is maintained by Litton and is
within my custody and control.  Entries in Ms. Eskanos' loan file are made by Litton
employees with personal knowledge of the information being entered at or about the time
the information is received or created.  This is Litton's regular course of business.

"That testimony, in conjunction with the testimony that "the original promissory note" was filed, means that Debra Lyman was responsible for filing the forged promissory note; and Washington Mutual Bank, FA lied to the court when it said that the note was "found" in the possession of Washington Mutual Bank, FA and had not been transferred.

15.    The amount of attorney's fees sought by Defendant were excessive and neither authorized by the order of the court, nor were they incurred under any agreement with WAMU.  WAMU had no agreement for the payment of fees sought by the Defendant.

---

[18] The Defendant Debra Lyman's Affidavit stated a Total amount due up to December 31st, 2008, but signed the affidavit on February 25th, 2008; and claims the original note was already filed, but the forged note was not filed until May 1, 2009. The Lyman Affidavit swore to facts that had not yet even occurred. It was not filed with the court until just before the Summary Judgment Motion was heard by the court.

8

16.     Two contradictory statements that were given to the court by WAMU'S agent, Debra Lyman in contrast to the statements made to the OCC during an official investigation, can only mean one of the two statements were false and irrefutable evidence of lying to a federal official during the course of litigation or perjury during the course of an official investigation.

17.     Debra Lyman, in her affidavit, also concealed and failed to inform the court of the fact that Washington Mutual Bank, FA was paid in full, concealing from the court the $373,907.18 in principal actually received but never credited.

18.     Defendant, Debra Lyman, as a robo-signer, in her position of VP of Litton Loan Servicing, as servicing agent for GMAC and RFC Homecomings, owed the Defendants, and others, a higher duty of care than that of a reasonable person, but instead, a fiduciary duty owed by all members of the financial community in dealing with the financial affairs of the banks and financial institutions.

19.     Defendant Debra Lyman, VP of Litton Loan Servicing, LP, who falsely held herself out as authorized agent for Washington Mutual Bank, FA, voluntarily placed herself in the position of being held responsible as an agent and employee of FDIC guaranteed institutions, Washington Mutual Bank, FA and JP Morgan Chase Bank.

20.     After being placed on notice of the fact that LITTON was holding itself out falsely to the court as agent and representative of WAMU, WAMU ratified and adopted all the conduct of LITTON as authorized, thereby all conduct of Litton is imputed to WAMU and WAMU is responsible for ratification and adoption of the conduct of Litton.

21.     Defendant Stephanie Jackson, Chase Home Lending Executive Office employee, was responsible for responding to the complaint Plaintiffs filed with the OCC regarding the conduct of JPMorgan Chase.

22.     As an officer and employee of the bank, JPMorgan Chase, Defendant Stephanie Jackson is responsible for being truthful when responding to the Federal Governmental Officials conducting an official investigation, or be subject to liability under 18 U.S.C. § 1005.

9

23.     When requested, Stephanie Jackson told the OCC that Chase confirmed with their lawyers, Shapiro and Fishman that their name had been removed from the lawsuit, she lied.

24.     Stephanie Jackson also lied directly to the OCC with the intention of deflecting the investigation from JPMorgan Chase, and in addition to being charged with violation of 18 U.S.C. § 1005, Defendant Stephanie Jackson's conduct clearly showed a conspiracy between WAMU, their disrepute attorneys, Shapiro and Fishman, Litton Loan Servicing, JP Morgan Chase, and Defendant Stephanie Jackson to harm the Plaintiffs and avoid prosecution by authorities.

25.     Stephanie Jackson's lie was further compounded by the fact that the judgment was in the name of Washington Mutual Bank, FA, listing Litton Loan Servicing's address as the place of business for Washington Mutual Bank, FA.

26.     Further facts in support of Plaintiffs' civil conspiracy claim, include the post seizure, and under order of the Federal Government, Washington Mutual Bank, FA was and is not permitted to conduct any business, as all of its assets were seized by the Office of Thrift Supervision's Receiver, (the OTS is now combined with the OCC).

27.     Washington Mutual Bank, FA., was ordered to cease and desist operations, cannot have any assets, had no real property in their name, had no physical location to store the note in their name, nor any documents, and, in point of fact, could not and did not have possession of the note that was subsequently and falsely alleged to have been found.  It was not found, it was forged.

28.     Stephanie Jackson's lie to the OCC was made with the intention to overcome the presumption that Washington Mutual Bank, FA had no standing to sue because of the April 19th, 2005 date rather than the March 25th, 2005 date; in furtherance of the conspiracy, and ratified by WAMU by their failure to set aside the fraudulently obtained judgment and failure to correct the false information given to the OCC.

29.     The Defendants, and each of them, co-conspired to commit fraud upon the Plaintiffs and other homeowners similarly situated.

10

a.      The Florida State Bar, the 50 State Attorney Generals, and the FBI all investigated the mortgage fraud and other wrongful acts of WAMU and Litton Loan Servicing as well as a pattern of mortgage fraud and other related acts wrongfully committed by WAMU, and established a pattern of wrongful behavior, a criminal conspiracy and joint venture between Litton Loan Servicing, WAMU, and its lawyers, to harm the Plaintiffs and others similarly situated.

b.      The investigation by the OCC of the Defendants as part of an interagency horizontal review of major residential mortgage servicers, has conducted an examination of the residential real estate mortgage foreclosure processes of WAMU and JPMorgan Chase Bank, N.A., New York, New York.

c.      The OCC has identified certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in the Bank's initiation and handling of foreclosure proceedings.

d.      Said deficiencies showed a pattern and practice sufficient to warrant Plaintiffs' claims for Civil Conspiracy violations as pled herein.

e.      The investigation by the OCC of the Defendants as part of an interagency horizontal review of major residential mortgage servicers, has conducted an examination of the residential real estate mortgage foreclosure processes of WAMU and CHASE.

f.      The OCC has identified certain deficiencies and unsafe or unsound practices in residential mortgage servicing and in the WAMU's initiation and handling of foreclosure proceedings.

g.      Said deficiencies showed a pattern and practice sufficient to warrant Plaintiffs' claims for Civil Conspiracy violations as pled herein.

30.     Plaintiffs are informed, believe and thereon allege that Cynthia A. Riley was a Vice President of Washington Mutual Bank, FA, prior to the seizure by the Office of Thrift Supervision September, 2008, and during all relevant times herein.

31.     That at some time after the seizure by the Office of Thrift Supervision, Cynthia A. Riley became an employee of Defendant JPMorgan Chase.

11

32.    That, according to the Defendant Washington Mutual Bank, FA and their legal counsel, the forged

promissory note that was lost, was discovered after September 2008.

33.    That after the purported discovery of the purported note after September of 2008, Cynthia A. Riley

on behalf of herself, on behalf of JPMorgan Chase, as her employer, and on behalf of Washington Mutual

Bank, FA, and in furtherance of the conspiracy complained of herein, placed, or caused to be placed, the en

blanc endorsement on the forged promissory note.


       **Pay to the order of**


       **Without Recourse**
**Washington Mutual Bank, FA**

Cynthia A. Riley, Vice President


34.    That, at the time she placed her stamp, or caused her stamp to be placed on the forged note, she

knew, or reasonably should have known, that the note was a forgery and she knew or reasonably should

have known, that she was no longer authorized to endorse a note on behalf of Washington Mutual Bank,

FA; knew or reasonably should have known, her conduct was fraudulent; knew or reasonably should have

known, she was committing mail fraud and knew or reasonably should have known she committed bank

fraud all on behalf of Washington Mutual Bank, FA and in furtherance of their civil conspiracy.

35.    That, while all other pages to the document which she placed her stamp, or caused her stamp to be

placed on said note, was of an onion skin type paper, the signature page which contained the forged

signature, was of a copy type paper, wholly and distinctly different from the remaining pages.

36.    That, the differences in the types of paper, the font, and other apparent differences visible to the

naked eye, and apparent to any reasonable person, and clear fact that the last signature page was a copy

12

Cynthia A. Riley knew, or reasonably should have known that she was stamping, or causing her stamp to be placed on a forgery.

37.     Further, since the documents on file create a reasonable inference that the signed endorsement in blank or "bearer" endorsement allegedly made by "WASHINGTON MUTUAL BANK, FA By CYNTHIA RILEY VICE PRESIDENT" was placed upon the original note at some point in time after September 8, 2008, and according to the sworn affidavit of Debra Lyman, that all right title and interest in the note transferred to RFC Homecomings, GMAC on March 25, 2005; and Washington Mutual Bank, FA relinquished all of its rights to the Note and Mortgage prior to filing suit; and the seizure of Washington Mutual Bank, FA and the imposition by the Office of Thrift Supervision (now the OCC) of a cease and desist order; her stamp, or her causing of the placing of a Washington Mutual Bank, FA endorsement after the assignment, and cease and desist order, prohibiting any further acts by Washington Mutual Bank, FA whatsoever;  is irrefutable proof and clear and convincing evidence that Washington Mutual Bank, FA's endorsement is unauthorized and Vice President, Cynthia Riley's, signature on the original Note is unauthorized as a matter of law, and clear evidence that the note that was filed by Washington Mutual Bank, FA, Cynthia A. Riley, Debra Lyman, Litton Loan Servicing, GMAC, and RFC Homecomings, was a forgery; and further within the last six months, Plaintiffs spoke to CYNTHIA A. RILEY on the telephone, wherein she ratified her wrongful conduct and ratified her furtherance in the conspiracy, claiming that she had and has the authority to perform acts on behalf of Washington Mutual Bank, FA after it was closed; admitted her employment with JP Morgan Chase, and as such, ratified her conduct as an employee of JP Morgan Chase; attempted to conceal further liability by refusing to disclose facts regarding her role in the endorsement of the note, and implied that she regularly performed similar acts of endorsing notes in blanc after the seizure and while employed by JP Morgan Chase; and to say that all in conspiracy with her Defendants, and each of them, and their lawyers, Shapiro and Fishman and Akerman Senterfitt..

13

38.     That, at all relevant times herein, Cynthia A. Riley was an employee of Washington Mutual Bank, FA or September of 2008, or, thereafter, an employee of JPMorgan Chase Bank, both FDIC Guaranteed institutions. According to their Annual Report, JPMorgan Chase & Co. (NYSE: JPM) is a leading global financial services firm with assets of $2.1 trillion and operations in more than 60 countries.

39.     That as a result of being an employee of those banks, owed fiduciary and other higher duties to the Plaintiffs, and owed Plaintiffs a higher standard of care than a reasonable person standard, but one of a fiduciary standard.

40.     That, as a result of that higher fiduciary duty standard, special skill and training, when Defendant Cynthia A. Riley was presented with a note, where the first pages were of a wholly and distinctly different kind of onion skin paper than the signature page, and the signature page was of commonly found copy paper, and bore copy marks and lacked other significant and commonly found marks, like the scanner bar mark; she, as a fiduciary, had the special skill, or should have had the special skill and knowledge, to know that the document presented to her for her endorsement was, in fact, a forgery.

41.     That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she furthered the scheme and artifice to defraud the Plaintiffs, and ratified her conduct within the past six months.

42.     That, after endorsing, or causing to be endorsed with her stamp and signature, the forged note, she used the US Mail or other mail services, to deliver the forged document to the lawyers for Defendant Litton Loan Servicing, Washington Mutual Bank, FA, and JPMorgan Chase.

43.     That the forged document was mailed across state lines, using means of interstate commerce, in furtherance of conspiracy of the Defendants, and each of them.

44.     That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged

14

document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*;

45.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the Racketeering, Conspiracy to Engage in a Pattern of Racketeering Activity, (RICO) 18 U.S.C. 1961 et seq.;

46.    That, as a result of that higher fiduciary duty standard, special skill and training, when Defendant WAMU, presented Cynthia A. Riley with a note, where the first pages were of a wholly and distinctly different kind of onion skin paper than the signature page, and the signature page was of commonly found copy paper, and bore copy marks and lacked other significant and commonly found marks, like the scanner bar mark; she, as a fiduciary, had the special skill, or should have had the special skill and knowledge, to know that the document presented to her for her endorsement was, in fact, a forgery.

47.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the 18 U.S.C. 1964, (Civil Rico Remedies), a predicate act for Civil Conspiracy.

48.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the Mail and Wire Fraud 18 U.S.C., sections 1341, 1343.

15

49.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the bank fraud statutes, 18 U.S.C. 1341, 1344.

50.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the Statute 18 U.S.C. § 1001;

51.    That, when Defendant Cynthia A. Riley, knowing that the document, or reasonably should have known the document was a forgery, willfully and volitionally placed her endorsement on that forged document, she committed, and acted to further the conspiracy with Litton Loan Servicing, JPMorgan Chase, Washington Mutual Bank, FA and RFC Homecomings to assist Litton in their violations of the Statute 18 U.S.C. § 1005.

52.    At various times and places partially enumerated in Plaintiffs' documentary material, all Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a Criminal Enterprise of individuals who were associated in fact and who did engage in, and whose activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(b) as a predicate act for Civil Conspiracy.

53.    The illegal acts complained of by the Plaintiffs, and committed by the Defendants, and their co-conspirators, include, but are not limited to the following violations of State and Federal Law:

16

a.      Acquisition and Maintenance of an Interest in and Control of an illegal Enterprise Engaged in a Pattern of Racketeering Activity pursuant to 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(b) (Prohibited activities)

b.      Conduct and Participation in a RICO Enterprise through a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(c)

c.      Conspiracy to Engage in a Pattern of Racketeering Activity: 18 U.S.C. §§ 1961(5), 1962(d)

d.      Mail and Wire Fraud 18 U.S.C., SECTIONS 1341, 1343;

e.      Bank Fraud 18 U.S.C. 1341, 1344;

f.      Violations of 18 U.S.C. § 1001;

g.      Violations of 18 U.S.C. § 1005;

h.      Violations of Numerous banking statutes;

i.      Violations of 12 C.F.R. §202.16 ; Violations of REGULATION B

j.      Willful violation of Florida Statute 701.04(1), demand for estoppel.

k.      Willful violation of the September 1, 2011 agreement with New York's Department of Financial Services and Banking Department.

**II.      COUNTS**

**COUNT ONE:**

DAMAGES AND DECLARATORY RELIEF SOUGHT AGAINST WASHINGTON MUTUAL BANK, FA FOR AN ORDER SETTING ASIDE THE SUMMARY JUDGMENT OF FORECLOSURE ON THE BASIS OF FRAUD;

54.      Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

55.      The statements and conduct that the plaintiffs contend were fraudulent are:

a.      WAMU fraudulently filed suit five days after they sold all of their right, title and interest in the subject loan but represented to the court that they were entitled to recover the sums.  Through the case,

17

they made the same or similar claims, and obtained a judgment that is currently on appeal on the same fraudulent basis.  The harm is a continuing one and thus not barred by any statute of limitations.

      b.     WAMU violated TILA by charging improper amounts of interest

      c.     WAMU illegally placed forced placed insurance on the Plaintiffs property;

      d.     WAMU continued to pursue an action against the Plaintiffs after being paid in full;

      e.     WAMU filed false pleadings with the court during the course of that litigation;

      f.     WAMU filed a false promissory note which was improperly endorsed by Cynthia A. Riley as Vice President of Washington Mutual Bank, FA AFTER she no longer worked there; AFTER the bank was under an order by the Office of Thrift Supervision – OTS (now the Office of the Comptroller of the Currency – OCC);

      g.     WAMU filed a forged note – the signature page of the note is not even the same type of paper as the rest of the document, the fonts are different, and the forensic expert's report stated it was not created at the same time as the rest of the document;

      h.     WAMU lied to the court stating that WAMU retained Litton Loan Servicing to service the loan when no such agreement existed in order to attempt to steal the insurance proceeds from a hurricane and successfully misled the court[19];

      i.     WAMU filed a false and misleading robo-signed affidavit in order to obtain a summary judgment;

      k.     WAMU listed a false address on the judgment;

      m.     WAMU committed violations of the Florida Fair Debt Collection Practices Act;

      o.     WAMU refused to comply with Florida Statute 701.04 (1);

      p.     WAMU refused to comply with the requirements of, and thus violated 12 C.F.R. §202.16, EQUAL OPPORTUNITY ACT, REGULATION B (also a predicate act for civil conspiracy);

---

[19] Exhibit Q -- Proof of theft of funds.

18

q.     WAMU committed mail fraud (18 U.S.C., SECTIONS 1341, 1343) (also a predicate act for Civil Conspiracy);

r.     WAMU committed bank fraud, 18 U.S.C. 1341, 1344 (also a predicate act for Civil Conspiracy);

s.     WAMU violated 18 U.S.C. § 1001;

t.     WAMU violated 18 U.S.C. § 1005 (also a predicate act for Civil Conspiracy); and the other wrongful acts complained of herein, and proven at the time of trial.

56.     WAMU, including its agents and employees, include Debra Lyman, Cynthia A. Riley, and others, made the false statements of fact with the intention of the court and others to rely on them for the purpose of taking the Plaintiffs home.

57.     The court and others relied on the false statements of fact to the detriment of the Plaintiffs and the other creditors of the Plaintiffs.

58.     The reliance on the false statements of fact was reasonable and justifiable.

59.     As an actual and proximate cause of the fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

60.     As a further actual and proximate cause of the fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered Non economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

19

61.    As a further actual and proximate cause of the fraud perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

62.    Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is 3 times the actual and compensatory damages sought).

63.    Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

64.    Furthermore, the Plaintiffs are seeking an award of their attorneys fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

## COUNT TWO:

### FOR VIOLATIONS OF THE FLORIDA FAIR DEBT COLLECTION PRACTICES ACT

65.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

66.    The Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. §§ 1692-1692p) — LeBlanc v. Unifund CCR Partners holds that a violation of Florida's Consumer Collection Practices Act ("FCCPA") (Fla. Stat. Chapter 559) may support a federal cause of action under the FDCPA.

20

67.     On or about March 25, 2005, after selling the purported obligation, the Defendant continued to proceed in an attempt to collect the obligation, sending letters, filing suit, and sending regular collection demands by and through their agent, Litton Loan Servicing from March 25, 2005 to the present.

68.     As a result of that conduct, the Defendant violated the provisions of the Florida and the Federal Fair Debt Collection Practices Acts on more than 40 separate occasions.

69.     Plaintiffs are entitled to recovery in the statutory sum of $1000 for each separate violation, in the liquidated sum of $40,000 or according to proof at the time of trial;

## COUNT THREE:

### CIVIL CONSPIRACY

70.     Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

71.     An agreement between two or more parties existed, including WAMU, Debra Lyman, Cynthia A. Riley, and others;

72.     As alleged herein, the individuals agreed to perform an unlawful act, including, but not limited to those acts incorporated herein, or to do a lawful act by unlawful means, also as incorporated herein;

73.     The forging of the promissory note; the unauthorized endorsement of the forged note; violations of the numerous statutes, and all acts incorporated herein, all constitute the doing of some overt act in pursuance of the conspiracy; and

74.     As an actual and proximate cause of the conspiracy, Plaintiffs suffered damages under the conspiracy as follows:

       a.     Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

21

b.      As a further actual and proximate cause of the fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered Non economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

c.      As a further actual and proximate cause of the fraud perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

d.      Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiff, and, at the time of injury the Defendant had a specific intent to harm the Plaintiff, and because the Defendant's conduct did in fact harm the Plaintiff, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

e.      Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

f.      Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

22

## COUNT FOUR:

### MAIL AND WIRE FRAUD 18 U.S.C., SECTIONS 1341, 1343;

75.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

76.    WAMU voluntarily and intentionally devised or participated in a scheme to defraud the Plaintiffs out of money, their home, and dispossess them;

77.    The defendant, WAMU, did so with the intent to defraud;

78.    In order to perpetrate the fraud, that it was reasonably foreseeable that interstate wire communications would be used; and

79.    That, Plaintiffs have the phone logs to prove that, interstate wire communications were in fact used) (citing Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 6.18.1341 (West 1994)), cert. denied, 115 S.Ct. 2289 (1995); *United States v. Hanson*, 41 F.3d 580, 583 (10th Cir. 1994) (two elements comprise the crime of wire fraud: (1) a scheme or artifice to defraud; and (2) use of interstate wire communication to facilitate that scheme); *United States v. Faulkner*, 17 F.3d 745, 771 (5th Cir. 1994) cert. denied, 115 S.Ct. 193 (1995); *United States v. Cassiere*, 4 F.3d 1006 (1st Cir. 1993); *United States v. Maxwell,* 920 F.2d 1028, 1035 (D.C. Cir. 1990).

80.    As an actual and proximate cause of the wire fraud, Plaintiffs suffered damages under the wire fraud as follows:

   a.    Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

   b.    As a further actual and proximate cause of the wire fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered Non economic damages for Plaintiffs' client's pain and suffering, mental

23

anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

     c.    As a further actual and proximate cause of the fraud perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence

     d.    Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiff, and, at the time of injury the Defendant had a specific intent to harm the Plaintiff, and because the Defendant's conduct did in fact harm the Plaintiff, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

     e.    Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

     f.    Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

## **COUNT FIVE:**

### BANK FRAUD 18 U.S.C. 1341, 1344;

81.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

24

82.    The Defendant, in furtherance of mail fraud devised or intending to devise a scheme to defraud (or to perform the acts specified and incorporated herein, all of which constitute fraudulent acts), as incorporated herein.

83.    The Defendant, WAMU, use of the mail was for the purpose of executing, or attempting to execute, the scheme (or the fraudulent acts incorporated and specified herein)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); see also *Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

85.    As an actual and proximate cause of the mail fraud, Plaintiffs suffered damages under the mail fraud as follows:

a.    Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

b.    As a further actual and proximate cause of the mail fraud perpetrated by the Defendant, WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

c.    As a further actual and proximate cause of the fraud perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and

25

convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

      d.     Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiff, and, at the time of injury the Defendant had a specific intent to harm the Plaintiff, and because the Defendant's conduct did in fact harm the Plaintiff, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

      e.     Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

      f.     Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

## **COUNT SIX**:

### VIOLATION OF 18 U.S.C. § 1001 AND VIOLATION OF 18 U.S.C. § 1005;

86.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

87    Plaintiff alleges that the Defendant "falsified, concealed or covered up by any trick, scheme or device a material fact," as incorporated herein.

88.    The Defendant, WAMU, made false, fictitious or fraudulent statements or representations" as already incorporated herein.

89.    The Defendant, made or used any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" in the acts incorporated herein.

26

90. The false documents, writings and statements were all material facts.

91. As an actual and proximate cause of the multiple violations of statute, Plaintiffs suffered damages under the statute as follows:

    a. Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

    b. As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

    c. As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

    d. Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

    e. Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was

27

obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

       f.       Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

## COUNT SEVEN:

### DECLARATORY RELIEF AGAINST WASHINGTON MUTUAL BANK, FA FOR PREDATORY LENDING, VIOLATION OF THE CREDIT CARD AGREEMENT,

92.     Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

93.     WAMU recorded an equity line of credit mortgage in the sum of $100,000 on or about 12/3/2004, EXHIBIT N.

94.     The granting of said equity line of credit was a predatory lending act and a violation.

95.     More than five years have passed since any activity on the account, and thus any action to collect on the sums purportedly due, or the mortgage, is barred by the five year statute of limitations in Florida, Florida Statute Section 95.11, *et. seq.*

96.     Visa cardholder agreement and as they publicly advertise, a victim of identity theft would not be obligated to pay the fraudulent charges.

97.     Plaintiffs were contacted by the Defendants fraud department and informed that the charges on the card were fraudulently made by an unknown party in Paris France at a time when the Defendant WAMU knew the Plaintiffs to be in the USA; knew the charges were fraudulent; and in fact, notified the Plaintiffs that the charges were fraudulent.

98.     Defendants failed and refused to remove the fraudulent charges of $100,000 from the Plaintiffs account, and allowed the mortgage to stand, knowing that the charges were not incurred by the Plaintiffs.

28

99.     In violation of the Florida Fair Debt Collection Practices Act, the maintenance of the charges against the Plaintiffs were illegal, but the Defendants failed and refused to remove them.

100.    That said conduct was in direct violation of the covenants of good faith and fair dealing that are implied in every agreement.

101.    That, as a result, the Plaintiffs are seeking an order declaring the $100,000 mortgage void; the charges that have been already charged off by the Defendant be removed from the account of the Plaintiffs; and that the Plaintiffs recover compensatory damages and exemplary damages in an amount proven at trial, or:

a.      Compensatory damages in the sum of $1,000,000 for slander of credit and violation of the Florida Fair Debt Collection Practices Act;

b.      Punitive damages as provided for by statute in the sum of $3,000,000.

c.      Court costs and such other and further expenses the court deems just and adequate.

## <u>COUNT EIGHT</u>:

### DAMAGES PURSUANT TO PENDANT STATE CLAIM
Damages And Declaratory Relief Action for WAMU's Violation of the
FLORIDA STATUTE CHAPTER 701.04 (1)

102.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

103.    Under Florida Law, Litton Loan Services, LP, on behalf of the Defendant WAMU, was required to provide an estoppel letter pursuant to Florida Statutes Chapter 701.04 (1), which says, in pertinent part:

> "Within 14 days after receipt of the written request of a mortgagor, the holder of a mortgage shall deliver to the mortgagor at a place designated in the written request an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage, including principal, interest, and any other charges properly due under or secured by the mortgage and interest on a per-day basis for the unpaid balance. Whenever the amount of money due on any mortgage, lien, or judgment shall be fully paid to the person or party entitled to the payment thereof, the mortgagee, creditor, or assignee, or the attorney of record in the case of a judgment, to whom such payment shall have been made, shall execute in writing an instrument acknowledging satisfaction of said mortgage, lien, or judgment and have the same acknowledged, or proven,

29

and duly entered of record in the book provided by law for such purposes in the proper county. Within 60 days of the date of receipt of the full payment of the mortgage, lien, or judgment, the person required to acknowledge satisfaction of the mortgage, lien, or judgment shall send or cause to be sent the recorded satisfaction to the person who has made the full payment. In the case of a civil action arising out of the provisions of this section, the prevailing party shall be entitled to attorney's fees and costs."

104.    Proper demand was made upon Litton Loan Services, LP, on behalf of the Defendant, WAMU, on

11/15/2010 pursuant to said statute to provide Plaintiffs with an estoppel letter.

105.    On February 18, 2011, well past the deadline of the statute, WAMU's lawyers sent a letter stating

unequivocally that Litton Loan Services, LP, on behalf of the Defendant, WAMU, received the Plaintiffs'

demand pursuant to Florida Statute 701.04(1) and said "Litton will not be providing this letter". WAMU

not only never responded but intentionally refused to respond.

106.    That said refusal to respond was a blatant, willful, malicious, and wanton violation of statute and a

direct violation of Florida Law.

107.    As an actual and proximate cause of the multiple violations of statute, Plaintiffs suffered damages

under the statute as follows:

a.    Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an

amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in

the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages

*Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla.

4th DCA 1994);

b.    As a further actual and proximate cause of the violations of statute perpetrated by the

Defendant, WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering,

mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an

amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

30

c.      As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, et. seq. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

d.      Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

e.      Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

f.      Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

**COUNT NINE**:

**Damages And Declaratory Relief Action For WAMU's Violation of the FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")**
**15 U.S.C. § 1692 ET. SEQ**

108.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full.

109.    Plaintiffs fall within the class of individuals who are defined by the Statute as consumer—"any natural person obligated or allegedly obligated to pay any debt".

31

110.     Defendant, Litton on the behalf of WAMU, claimed that Plaintiffs owed a consumer debt—"any obligation... [incurred] primarily for personal, family or household purposes", a mortgage secured by a forged note and deed of trust.

111.     Defendant, WAMU, represented to the court that it retained the services of Litton, as a debt collector, defined as any person using interstate commerce who regularly collects debts as defined by the statute and as proven by their acts alleged herein.

112.     Each separate letter demanding payment, including billing the Plaintiffs for attorneys' fees and court costs, inspection fees, and all demands for money of any and all kinds, sent by, or demanded on the behalf of Litton Loan Servicing, LP on behalf of Defendant RFC Homecomings while WAMU claimed to be the only entity entitled to recover, is a separate violation of the FDCPA and mail and wire fraud.

113.     As an actual and proximate cause of the multiple violations of statute, Plaintiffs suffered damages under the statute as follows:

    a.     Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

    b.     As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

    c.     As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, *et. seq*. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact,

32

based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

        d.      Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

        e.      Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

        f.      Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

### COUNT TEN

Damages And Declaratory Relief Action For WAMUs Violation of the
EQUAL OPPORTUNITY ACT
VIOLATION OF 12 C.F.R. §202.16
REGULATION B

191.    Plaintiffs incorporate paragraphs 1 to 53, inclusive, herein, as though set forth herein in full. Substance prevails over form.

192.    Regulation B notice is required when the Defendant, WAMU, individually, and by and through their servicing agent, Litton Loan Servicing, LP, failed to acknowledge receipt of the HAMP application, thus constituting a denial of the application and denial of credit there under.

33

193.     Pursuant to Regulation B, any denial of credit required WAMU to tender a proper notice pursuant to that Regulation B.

194.     Each separate act by WAMU constituted separate violations of the statutes as alleged in this entire Complaint constitutes grounds for statutory damages payable to the Plaintiffs in the sum of $10,000 per violation, according to proof or a liquidated sum, in the event of default, of $4,500,000.

195.     As an actual and proximate cause of the multiple violations of statute, Plaintiffs suffered damages under the statute as follows:

      a.     Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

      b.     As a further actual and proximate cause of the violations of statute perpetrated by the Defendant. WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering, mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

      c.     Each separate act by WAMU constituted separate violations of the statutes as alleged in this entire Complaint constitutes grounds for statutory damages payable to the Plaintiffs in the sum of $10,000 per violation, according to proof or a liquidated sum, in the event of default, of $4,500,000.

      d.     As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, *et. seq*. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

34

12-12020-mg Case 12-93103-AJC Doc 9-3 Filed 10/07/13 Entered 10/07/13 12:00:52 Exhibit 4-10
Pg 35 of 40

d.      Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

e.      Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

f.      Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

## PRAYER FOR RELIEF - CONCLUSION

196.    As an actual and proximate cause of the multiple violations of statute, and all the acts complained of herein, Plaintiffs suffered damages as follows:

a.      Economic damages, loss of equity, harm to their credit, aggravation, annoyance, in an amount according to proof, $15 million dollars and $1000 per day from October 1, 1999 to the present, in the liquidated amount of $ 4,550,000 for a total sum of $19,550,000 dollars in compensatory damages *Dungan v. Ford*, 632 So. 2d 159 (Fla. 1st DCA 1994); *East West Karate Ass'n, Inc.*, 638 So. 2d 604 (Fla. 4th DCA 1994);

b.      As a further actual and proximate cause of the violations of statute perpetrated by the Defendant WAMU, Plaintiffs suffered Non-economic damages for Plaintiffs' client's pain and suffering,

35

mental anguish, and loss of capacity for the enjoyment of life (See Florida Jury Instruction 6.2) in an amount according to proof, or the liquidated sum of $10,000 per day or $45,500,000.

c. As a further actual and proximate cause of the violations of statute perpetrated by the Defendant, Plaintiffs are seeking punitive damages which are governed by Florida Statutes §§ 768.72, *et. seq*. These statutes provide that a defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.

d. Furthermore, because the wrongful conduct proven under this complaint was intended to harm the Plaintiffs, and, at the time of injury the Defendant had a specific intent to harm the Plaintiffs, and because the Defendant's conduct did in fact harm the Plaintiffs, there shall be no cap on punitive damages, and Plaintiffs seek punitive damages according to proof, or the liquidated amount of $195,150,000 (which is three times the actual and compensatory damages sought).

e. Furthermore, Plaintiffs are seeking an order from this court declaring that the summary judgment obtained by the Defendant in Miami Dade Circuit Court Case Number 05-006570-CA 15 was obtained by means of fraud and the court further enter an order setting aside the judgment on that basis and order that Washington Mutual Bank, FA's action against the defendants in that action be dismissed with prejudice.

f. Furthermore, the Plaintiffs are seeking an award of their attorney's fees they incurred in defending the fraudulent action in the sum of $300,000 or according to proof, and court costs and such other and further relief as the court deems just and adequate.

Plaintiffs are entitled to receive compensatory damages according to proof;

197. Plaintiffs further respectfully request that the court:

a. Issue an order requiring WAMU and their lawyers permanently stay the foreclosure proceedings against the Plaintiffs and dismiss them with prejudice;

36

b.      Find that WAMU intentionally, willfully, wantonly and maliciously violated the following laws, ordinances and provisions:

1.      Section 5 of the Federal Trade Commission Act prohibiting unfair or deceptive acts or practices.

2.      The Equal Credit Opportunity Act (ECOA) and the Fair Housing Act, prohibiting discrimination on a prohibited basis in connection with mortgage transactions.

3.      The Real Estate Settlement Procedures Act (RESPA) which imposes certain disclosure requirements and restrictions relating to transfers of the servicing of certain loans and escrow accounts.

4.      The Fair Debt Collection Practices Act which restricts certain abusive debt collection practices by collectors of debts, other than the creditor, owed or due to another.

5.      The Fair Lending Laws, which ensure that servicers and lenders do not treat a borrower less favorable on grounds, such as race, religion, national origin, gender, marital or familial status, age handicap, or receipt of public assistance income in connection with any loan modification.  These laws also prohibit red-lining.

6.      The Fair Credit Reporting Act which regulates the collection, dissemination, and use of consumer information, including consumer credit information.

7.      The Regulation B, which states that a borrower who applies for, and is denied, a loan modification must receive an adverse action notice under Regulation B of the Equal Credit Opportunity Act; and

8.      Intentionally, willfully, wantonly, and maliciously violated Florida Statute 701.04(1).

9.      Find that WAMU intentionally, willfully, wantonly, and maliciously violated Section 5 of the Federal Trade Commission Act prohibiting unfair or deceptive acts or practices.

37

10.     The Equal Credit Opportunity Act (ECOA) and the Fair Housing Act, prohibiting discrimination on a prohibited basis in connection with mortgage transactions.

11.     The Real Estate Settlement Procedures Act (RESPA) which imposes certain disclosure requirements and restrictions relating to transfers of the servicing of certain loans and escrow accounts.

12.     The Florida and Federal Fair Debt Collection Practices Act which restricts certain abusive debt collection practices by collectors of debts, other than the creditor, owed or due to another.

13.     Fair Lending Laws, which ensure that servicers and lenders do not treat a borrower less favorable on grounds, such as race, religion, national origin, gender, marital or familial status, age handicap, or receipt of public assistance income in connection with any loan modification.  These laws also prohibit red-lining.

14.     Fair Credit Reporting Act which regulates the collection, dissemination, and use of consumer information, including consumer credit information.

15.     Regulation B, which states that a borrower who applies for, and is denied, a loan modification must receive an adverse action notice under Regulation B of the Equal Credit Opportunity Act; and

16.     Florida Statute 701.04(1).

17.     That the court further grant statutory damages of $10,000 per violation, to Plaintiffs against WAMU for their intentional, willful, wanton, and malicious violations of Regulation B in an amount comparative the net worth of the Defendant such that Defendant WAMU will be punished, will not commit further acts against other similarly situated Plaintiffs in an amount according to proof, or, in the liquidated sum of one million dollars for its violation or according to proof;

18.     That the court enter an order declaring the $100,000 mortgage void; the charges that have been already charged off by the Defendant be removed from the account of the Plaintiffs; and that the

38

Plaintiffs recover compensatory damages and exemplary damages in an amount proven at trial; or, in the event of default, the liquidated sum of $1,000,000 for slander of credit and violation of the Florida Fair Debt Collection Practices Act; and punitive damages according to proof or, in the event of default, the sum of $3,000,000.

19.    That the court grants to Plaintiffs against the Defendant WAMU court costs, legal expenses, such other and further legal and equitable relief that it deems fair and just.

Respectfully Submitted

Ami B. Eskanos
Plaintiff, Pro Se
3122 Pine Tree Drive
Miami Beach, FL 33140
305 613-6894
bbeskanos@aol.com


Respectfully Submitted

Barry B. Eskanos
Plaintiff, Pro Se
3122 Pine Tree Drive
Miami Beach, FL 33140
305 613-6894
bbeskanos@aol.com

39

**<u>VERIFICATION</u>**

I, AMI B. ESKANOS, PLAINTIFF PRO SE, in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, that the allegations contained herein are true and correct to the best of my knowledge, and as for those allegations based on information and belief, I believe them to be true.

Dated:    December 20, 2011

Signed: _____
              Ami B. Eskanos


**<u>VERIFICATION</u>**

I, BARRY B. ESKANOS, PLAINTIFF PRO SE, in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, that the allegations contained herein are true and correct to the best of my knowledge, and as for those allegations based on information and belief, I believe them to be true.

Dated:    December 21, 2011

Signed: _____
              Barry B. Eskanos


40