STORCH AMINI & MUNVES PC
2 Grand Central Tower, 25th Floor
140 East 45th Street
New York, New York 10017
Tel. (212) 490-4100
Noam M. Besdin, Esq.
nbesdin@samlegal.com

*Counsel for Simona Robinson*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et. al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |

### ROBINSON'S REPLY TO THE OPPOSITION OF RESCAP AND OCWEN TO MOTION FOR RELIEF FROM AUTOMATIC STAY



RECEIVED
OCT -7 2013
U.S. BANKRUPTCY COURT
SO DIST OF NEW YORK

Simona Robinson ("Robinson"), by and through her undersigned counsel, respectfully submits this reply to the opposition (the "Opposition") of Debtor Residential Capital, LLC ("ResCap"), its affiliated debtors, including Debtor GMAC Mortgage, LLC ("GMACM"), and Ocwen Loan Servicing, LLC ("Ocwen"). As is abundantly clear from the Opposition, neither ResCap nor Ocwen dispute that Robinson's non-bankruptcy remedies against Ocwen were left wholly unaffected by this Court's orders and the sale of the mortgage loan servicing platform to Ocwen. In fact, ResCap obtained this Court's approval of the sale of GMACM's mortgage loan servicing platform to Ocwen by expressly representing to this Court that the rights of creditors similarly situated to Robinson would be left unaltered pursuant to Bankruptcy Code section 363(o), a fact left unmentioned in both ResCap's and Ocwen's Opposition. Through her Motion, Robinson simply seeks to pursue her existing non-bankruptcy remedies against Ocwen in a suit currently pending in the United States District Court for the Eastern District of Pennsylvania (the "District Court").

## I. THE PARTIES AGREE THAT ROBINSON'S RIGHTS ARE PRESERVED BY BANKRUPTCY CODE SECTION 363(o) AND THE SALE ORDER

### A. *ResCap Seeks Approval of the Sale by Incorporating Section 363(o) Protections into the Sale Documents*

The history of the sale of ResCap's mortgage servicing loan platform to Ocwen demonstrates that the parties fully realized that the transaction would preserve Ocwen's successor liability. ResCap first sought authorization for that sale to Ocwen by a motion dated May 14, 2012. Docket No. 61. The sale motion, asset purchase agreement ("APA"), proposed sale procedures order ("Sale Procedures Order"), and proposed sale authorization order ("Sale Authorization Order") (together with the Sale Procedures Order, the "Sale Orders") appeared to provide for a sale free and clear of claims of mortgage borrowers like Robinson in derogation of Bankruptcy Code section 363(o).[1] *Id.*

---

[1] As conceded by ResCap in its opposition, "section 363(o) provides that Ocwen, as the buyer of mortgage servicing rights, remains subject to all of the claims and defenses that the consumer would have had against Ocwen if the interest had been purchased outside of bankruptcy." ResCap Opp. at ¶ 45.

1

On June 11, 2012, the United States Trustee objected to the sale procedures on the grounds that, among other things, "it is unclear whether the proposed sale terms may violate the consumer privacy and credit protection provisions of section 363(b)(1) and 363(o) of the Bankruptcy Code, and if so, whether there has been adequate notice to affected parties." Objection of the United States Trustee to Debtors' Motion for Approval of Sale Procedures, Including Break-Up Fee and Expense Reimbursement and Related Relief ("UST Objection"), Docket No. 271 at p. 2. On June 14, 2012, ResCap responded to the U.S. Trustee Objection, countering many of the issues raised by the U.S. Trustee but consenting to the U.S. Trustee's request regarding section 363(o), and agreeing to incorporate an express reference to Bankruptcy Code section 363(o) into the Sale Procedures Order and the Sale Authorization Order. Debtors' Omnibus Reply to Objections to Sale Procedures Order, Docket No. 373.

In its response to the U.S. Trustee Objection, ResCap affirmatively represented to this Court that its incorporation of section 363(o) into the Sale Orders was intended "to make clear that the proposed sales do not alter the provisions of section 363(o) of the Bankruptcy Code." *Id.* at ¶ 34. As a result, the Sale Approval Order expressly provided that the transfer of the mortgage loan servicing platform to Ocwen would generally be free and clear of interests "[e]xcept . . . as otherwise provided by section 363(o) of the Bankruptcy Code." Docket No. 2246 at ¶ 9. Similarly, the Sale Procedures Order clearly and unambiguously stated that: "The Sales do not alter the provisions of section 363(o) of the Bankruptcy Code." Docket No. 538 at ¶ 38. Ocwen did not object to these changes.

Further, ResCap's assurances regarding section 363(o) and the Sale Order and its subsequent amendment of the Sale Order and related documents all occurred *before* the bar date on November 16, 2012.[2] Given the U.S. Trustee's Objection, and the comfort regarding the preservation of consumer creditors' section 363(o) rights that was expressly provided by GMAC as a result, Robinson decided to

---

[2] The bar date was originally set for November 9, 2012 by an order entered on August 29, 2012, but was later extended to November 16, 2012 because of the events precipitated by Hurricane Sandy. *See* Docket Nos. 1309, 2093.

2

rely on the language of section 363(o), as expressly incorporated into the proposed Sale Procedures and Sale Authorization Orders, as well as ResCap's explicit representation that her remedies against Ocwen would not be affected by the sale instead of proceeding against ResCap's bankruptcy estate.

    B.  *Robinson's Decision Not to File a Proof of Claim Has No Impact on Ocwen's Liability*

The Bankruptcy Code is clear on its face. Under section 363(o), Ocwen "*shall* remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit contract, to the same extent as [Ocwen] would be subject to such claims and defenses of [Robinson] had such interest been purchased at a sale not under this section." 11 U.S.C. § 363(o). While ResCap asserts that Robinson's decision not to file a proof of claim means that she is "forever barred, estopped and enjoined from asserting any prepetition claims against the Debtors," ResCap Opp. at ¶42, Robinson is not proceeding against ResCap or GMACM. ResCap may believe that Robinson should have filed a proof of claim before proceeding against Ocwen,[3] but a claimant's decision not to file a proof of claim does not affect the underlying claim: "Bankruptcy Rule 3003(c)(2) does not extinguish a creditor's status, it merely eliminates a creditor's right to a distribution. . . ." *In re Stamford Color Photo, Inc.*, 105 B.R. 204, 206 (Bankr. D. Ct. 1989). In fact, "[a] number of courts have recognized that filing a proof of claim is only required for a creditor to have voting and distribution rights." *In re MF Global Holding Ltd.*, 469 B.R. 177, 188 (Bankr. S.D.N.Y. 2012). *See also In re Wells*, 227 B.R. 553, 560 (Bankr. M.D. Fla. 1998) ("While a party who wishes to participate in the distribution of an estate is required to file a proof of its claim, and while that participation can be denied by the disallowance of the claim, the underlying claim continues to exist and has viability until it is discharged.") (citations omitted); *In re B. Cohen & Sons Caterers, Inc.*, 124 B.R. 642, 645 n.2 (E.D.

---

[3] *See* ResCap Opp. at ¶ 41 ("Robinson failed to file a proof of claim. . . . Robinson contends that she did not file a proof of claim against GMACM because the Bankruptcy Code directs her instead to Ocwen as the purchaser of the rights to service her mortgage. However, the deadline to file a proof of claim passed before the hearing to approve the Ocwen Sale was even held and Sale Order was entered, and several months before the Ocwen Sale closed.") (quotation omitted).

Pa. 1991) ("New Plan's failure to file a proof of claim in this proceeding does not extinguish its status as a creditor.").

### C. Robinson Has Properly Asserted Liability Against Ocwen

In the Opposition, both Ocwen and ResCap conclusorily assert that there is no successor liability between them without providing any supporting authority for this assertion, other than the provisions of the Sale Order which expressly carve out consumer creditors' rights under section 363(o) of the Bankruptcy Code. The viability of Robinson's claims against Ocwen, and the nature of Ocwen's successor liability vis-à-vis GMACM, are non-bankruptcy matters to be adjudicated by the District Court of Pennsylvania. This Court only needs to determine that the Sale Order properly reserved Robinson's rights against Ocwen as required by section 363(o). In any event, Robinson strongly believes that she has meritorious successor liability claims. While ResCap conclusorily asserts that the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), and Pennsylvania common law[4] do not "provide[] that a successor servicer can be held monetarily liable for the acts of a predecessor," ResCap's Opp. at ¶ 51, cases have held that traditional theories of successor liability apply to claims against loan servicers.[5]

---

[4] This Reply does not concede that Pennsylvania law governs Ocwen's successor liability.

[5] For example, loan servicers can be held liable for the actions of a prior servicer under a de facto merger or continuation of business theory of successor liability where the relevant asset purchase agreement provides for the transfer of employee records, buildings, and accounts. *See In re Hamilton*, 416 B.R. 549, 551 (Bankr. N.D. Miss. 2009) (finding there were material issues of fact regarding whether successor loan servicer was liable for acts of prior servicer during borrower's personal bankruptcy case) (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985); APA, Docket No. 2246, Exh. 1 at §§ 2.1 (generally providing for the transfer of GMACM's books and records, servicing rights, real property, and intangible assets to Ocwen), 2.2 (generally providing for the assignment of GMACM's real property leases, intellectual property licenses, and business contracts to Ocwen). *See also Continental Ins. V. Schneider, Inc.*, 582 Pa. 591, 599-600 (2005) (successor liability can exist where "it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation."); *New York v. Nat'l Service Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006) (citing *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245 (1983)). Similarly, courts have held that successor liability applies to RESPA, FDCPA, and Truth-in-Lending Act claims. *See, e.g., Prince v. U.S. Bancorp*, *5-*6 (D. Nev. Aug. 25, 2010) (denying motion to dismiss RESPA and FDCPA claims asserted against successor loan servicer); *Abdollahi v. Washington Mutual, FA*, No. C09-00743 HRL, 2009 WL 1689656, *1 (N.D. Cal. June 15, 2009) (finding JP Morgan could be liable for alleged violations of the Truth-in-Lending Act and RESPA by Washington Mutual).

Additionally, as conceded by ResCap,[6] Ocwen is obligated to remedy any continuing violations of RESPA and the FDCPA. These claims would have no impact whatsoever on ResCap's bankruptcy estate and are not in any way stayed. Under the APA, Ocwen assumed all liabilities relating to the ongoing conduct of the loan servicing business. *See* APA, Docket No. 2246, Exh. 1 at §§ 2.7 ("Purchaser shall assume and be responsible for all of the Assumed Liabilities and Sellers shall have no further obligations with respect thereto."), 1.1 (defining "Assumed Liabilities" as including – among other things – liabilities arising from the conduct of the purchased assets on or after the closing date). Robinson should be permitted to substitute Ocwen as a defendant to pursue these claims even if this Court determines that the successor liability claims are stayed or otherwise enjoined.

## II. RESCAP CANNOT ASSERT ITS LIABILITY TO OCWEN IN ORDER TO CONTRAVENE ROBINSON'S RIGHTS UNDER SECTION 363(o)

ResCap and Ocwen – both highly sophisticated parties – entered into the APA knowing full well that section 363(o) protected the rights of Robinson and other borrowers to proceed against Ocwen, and ResCap voluntarily indemnified Ocwen against claims not discharged because of section 363(o). *See* APA, Docket No. 2246, Exh. 1 at § 1.1 (defining the liabilities retained by ResCap to include "any Claim or defense that is not discharged in the Bankruptcy Case, as a result of the operation of Section 363(o) of the Bankruptcy Code or otherwise."). ResCap and Ocwen now claim that Robinson should be enjoined from asserting her rights protected by section 363(o) because allowing her to proceed against Ocwen would "transform" her pre-petition claims into a post-petition administrative claim. ResCap Opp. at ¶ 52. As an initial matter, Robinson is not asserting any claim against ResCap's bankruptcy estate. While she may be able to obtain payment in full from Ocwen in the District Court litigation, Robinson is in no way asserting that she is entitled to an administrative claim against ResCap's estate.

---

[6] ResCap Opp. at ¶ 51 ("As successor servicer, Ocwen is obligated to correct any ongoing servicing errors of which it becomes aware, whether or not those errors were initially committed by Ocwen or GMACM.").

5

Even if Ocwen may be able to assert an administrative indemnity claim, ResCap voluntarily agreed to indemnify Ocwen against claims that are protected by section 363(o). It cannot now argue that its own agreement to indemnify Ocwen should bar consumers from utilizing the protections given to them by Congress in section 363(o). Additionally, section 363(o) prevented Ocwen from obtaining a sale free and clear of Robinson's claims, and Ocwen should not be able to obtain de facto free and clear protections because it could have an administrative claim. It was ResCap's fiduciary obligation to limit the amount of administrative claims – not Robinson's – and ResCap decided for its own reasons to agree to the indemnification obligation.

## CONCLUSION

Accordingly, for the reasons set forth herein, Robinson respectfully requests that the Court overrule the opposition of ResCap and Ocwen and grant such other and further relief as it deems just and proper.

Dated: New York, New York
October 4, 2013

Respectfully submitted,

/s/ Noam M. Besdin
Noam M. Besdin
STORCH AMINI & MUNVES PC
140 East 45th Street
New York, New York 10017
Tel: (212) 490-4100
nbesdin@samlegal.com

*Counsel for Simona Robinson*