1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 12-12020-mg

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    RESIDENTIAL CAPITAL, LLC, et al.,

9

10              Debtors.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              October 2, 2013

19              10:11 AM

20

21    B E F O R E:

22    HON. MARTIN GLENN

23    U.S. BANKRUPTCY JUDGE

24

25

1

2  (CC: Doc# 4832)  Motion for Objection to Claim(s) Number: 1360,

3  1361.

4

5  (CC: Doc# 4903)  Omnibus Motion for Omnibus Objection to

6  Claim(s)/Debtors' Thirty-Second Omnibus Objection to Claims

7  (Duplicative of Indenture Trustee Claims).

8

9  (CC: Doc# 4635)  Motion for Objection to Claim(s)/Debtors'

10  Objection to Proofs of Claim

11

12

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

3

1

2  A P P E A R A N C E S :

3  MORRISON & FOERSTER LLP

4       Attorneys for Debtors

5       1290 Avenue of the Americas

6       New York, NY 10104

7

8  BY:   ERICA J. RICHARDS, ESQ.

9       MELISSA A. HAGER, ESQ.

10

11

12  SEVERSON & WERSON, P.C.

13       Attorneys for Debtors

14       19100 Von Karman Avenue

15       Suite 700

16       Irvine, CA 92612

17

18  BY:   JONATHAN D. DYKSTRA, ESQ.

19

20

21

22

23

24

25

1

2  KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Official Creditors' Committee

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7  BY:   ELISE S. FREJKA, ESQ.

8

9

10 MUNGER TOLLES & OLSON LLP

11        Attorneys for Berkshire Hathaway Inc.

12        355 South Grand Ave.

13        35th Floor

14        Los Angeles, CA 90071

15

16 BY:   THOMAS B. WALPER, ESQ. (TELEPHONICALLY)

17

18

19 ALSO PRESENT: (TELEPHONICALLY)

20        ROBERT B. SWEETING, Pro Se

21

22

23

24

25

1                   P R O C E E D I N G S

2            THE COURT:  All right, we're here in Residential

3    Capital, number 12-12020.

4            Ms. Richards?

5            MS. RICHARDS:  Good morning, Your Honor.  Erica

6    Richards of Morrison & Foerster, appearing on behalf of the

7    debtors.

8            Your Honor, the debtors filed an amended agenda

9    yesterday.  Do you have a copy of that?

10           THE COURT:  The crowd dwindles, doesn't it?

11           MS. RICHARDS:  The first two items on the agenda are

12   both adjourned.  And the first contested item starts on page 4,

13   and that is the debtors' objection to proofs of claim filed by

14   Robert Sweeting against GMAC Mortgage.  It was filed at docket

15   number 4832.

16           Also appearing in this matter for the debtors is

17   Jonathan Dykstra of Severson & Werson, who represents GMAC

18   Mortgage in litigation brought by Mr. Sweeting in California.

19   I think a pro hac application is pending before the Court for

20   Mr. --

21           THE COURT:  Okay.

22           MS. RICHARDS:  -- Dykstra.

23           THE COURT:  All right.  Mr. Sweeting, are you on the

24   phone?

25           MR. SWEETING:  Yes, I am, Your Honor.

RESIDENTIAL CAPITAL, LLC, ET AL.                                    6

1          THE COURT:  All right.  Go ahead, Ms. Richards.

2          MS. RICHARDS:  And I would also note, Your Honor, also

3   present in the courtroom is Ms. Delehey, who's in-house

4   litigation counsel for GMAC, and who submitted a declaration in

5   support of their objection.

6          THE COURT:  Thank you.

7          MS. RICHARDS:  Your Honor, Mr. Sweeting filed two

8   proofs of claim, aggregating nearly 160 million dollars against

9   GMAC Mortgage.  Those claims are assigned claim numbers 1360

10  and 1361.  With the Court's permission, I'd like to address our

11  objection to claim number 1360 first.

12         THE COURT:  Sure, go ahead.

13         MS. RICHARDS:  Claim 1360, which was filed in the

14  amount of 79,170,000, asserts claims that were first brought by

15  Mr. Sweeting in an action commenced on March 20th, 2008 in

16  California Superior Court.  The debtor' objection refers to

17  that case as the first Sweeting action.

18         The California trial court evaluated the merits in Mr.

19  Sweeting's claims against GMAC and determined that they lacked

20  merit.  It dismissed -- or sorry, excuse me -- it granted

21  GMAC's demur as to certain of the claims in that complaint and

22  then granted GMAC's motion for summary judgment as to any

23  remaining claims on that complaint.

24         That judgment is final, and the time to appeal it is

25  well past.  Under California law --

1          THE COURT:  It was appealed; the appeal was dismissed.

2          MS. RICHARDS:  It was appealed, and the appeal was

3    dismissed, correct.  There was also -- he filed a second

4    complaint, and the time to appeal that complaint has also

5    expired.

6          Under California law, res judicata, as it does in

7    pretty much all jurisdictions, applies where three elements

8    have been met:  The prior litigation resulted in a final

9    judgment on the merits; privity exists between the parties in

10   the prior litigation and the subsequent litigation; and the

11   present action or proceeding relates to the same primary rights

12   as the first action did.

13         Here, claim 1360 asserts claims against GMAC in the

14   bankruptcy case based on the first Sweeting litigation.  That

15   action was dismissed, on the merits, with prejudice as against

16   GMAC.  As a result, under the doctrine of res judicata, claim

17   1360 is barred.  Accordingly, the debtors have requested that

18   claim be disallowed and expunged.

19         THE COURT:  Okay.  Go on with your argument.

20         MS. RICHARDS:  Okay.  That brings us to the second

21   claim filed by Mr. Sweeting, claim 1360 (sic).  That proof of

22   claim was also filed in the amount of 79,170,000, and asserts

23   claims that were brought by Mr. Sweeting in an action commenced

24   on September 21st, 2010, also in California Superior Court.

25   The debtors' objection has referred to that case as the second

RESIDENTIAL CAPITAL, LLC, ET AL.                                     8

1    Sweeting action.

2            Your Honor, the debtors have taken the position that

3    that action was also barred by res judicata, as a matter of the

4    court's dismissal of the first Sweeting action.  That

5    determination is on appeal with the California appellate court.

6    Under Rooker-Feldman, this court is not permitted to review the

7    California court's determination regarding whether that action

8    is barred by res judicata.

9            However, putting aside the issue of claim preclusion,

10   or this court's jurisdiction to review the trial court's

11   determination that the action was barred by res judicata, the

12   issue of the merits of Mr. Sweeting's claims are before this

13   court today and are not addressed in his appeal before the

14   appellate court.

15           THE COURT:  Say that again.

16           MS. RICHARDS:  The issue that the appellate court is

17   ruling on is --

18           THE COURT:  Just a --

19           MS. RICHARDS:  -- whether the California trial court

20   erred in dismissing the second Sweeting action under res

21   judicata.  If he wins at that appellate level, all that happens

22   is that he gets a chance to prove the merits of his claims.

23   That issue is already before the Court today.  Mr. Sweeting, in

24   light of the debtors' objection, bears the burden to show the

25   merits of his claims by a preponderance of the evidence.  He

1    has not carried that burden.  His 2010 complaint asserts three

2    causes of action.  The first is for defamation and tortious

3    interference with credit.

4              THE COURT:  So was that asserted -- that's asserted in

5    the second Sweeting action in California; was that asserted in

6    the first Sweeting action?

7              MS. RICHARDS:  It was asserted as part of his second

8    amended complaint which was filed while his appeal of the

9    dismissal of the first amended complaint was pending.  The

10   debtors objected.  The trial court held that objection in

11   abeyance pending a ruling by the appellate court on the

12   dismissal of the first complaint --

13             THE COURT:  Okay.

14             MS. RICHARDS:  -- first amended complaint.  After that

15   appeal was decided in GMAC's favor, GMAC then sought

16   dismissal -- it filed a motion to strike the second amended

17   complaint, which was granted.  So Mr. Sweeting did bring it

18   before the first trial court, but it was dismissed under res

19   judicata grounds, among others.

20             THE COURT:  Let me just -- I want to be clear.  So in

21   his second amended complaint in the first action, Mr. Sweeting

22   added a new cause of action for defamation and tortious

23   interference with credit, against GMAC?

24             MS. RICHARDS:  That's correct, Your Honor.

25             THE COURT:  And the trial court went forward and

1    sustained GMAC's demur to the second amended complaint in the

2    first action that asserted the tortious interference --

3    defamation and tortious interference claim.

4              MS. RICHARDS:  That's correct, Your Honor.

5              THE COURT:  And was that judgment appealed?

6              MS. RICHARDS:  That judgment was not appealed.

7              THE COURT:  And that, in your view, is final?

8              MS. RICHARDS:  And that judgment is final.

9              THE COURT:  Okay.  And on what basis did the trial

10   court sustain the demur to the second amended complaint in the

11   first action?

12             MS. RICHARDS:  The debtors pled two bases on which it

13   should be demurred.

14             THE COURT:  Um-hum.

15             MS. RICHARDS:  And the trial court didn't specify

16   which it was granting, so for purposes of California law, both

17   grounds are deemed to have been --

18             THE COURT:  Okay.

19             MS. RICHARDS:  -- relied on.

20             THE COURT:  And the two grounds were what?

21             MS. RICHARDS:  Res judicata and that Mr. Sweeting had

22   not sought the court's permission to amend his complaint before

23   doing it.

24             THE COURT:  Okay.  Go ahead.

25             MS. RICHARDS:  I'm just going to address the merits

1    of --

2          THE COURT:  Yeah.

3          MS. RICHARDS:  -- Mr. Sweeting's claims for you.  So

4    coming again, he asserted three causes of action in that second

5    complaint -- the first was initially asserted in the first

6    Sweeting complaint or the first Sweeting action; -- defamation

7    and tortious interference with credit.  His allegations in

8    support of that point are that GMAC Mortgage wrongfully

9    reported that he owed sixteen million dollars, following the

10   foreclosure and trustee sale of his property.

11         THE COURT:  How much?  I thought it was sixteen

12   million or --

13         MS. RICHARDS:  16.2 million --

14         THE COURT:  Yeah, okay.

15         MS. RICHARDS:  -- dollars, I think is the amount in

16   his papers.

17         THE COURT:  Right.

18         MS. RICHARDS:  In support of that argument, Your

19   Honor, he submitted a single credit report.  It was attached as

20   Exhibit 14 to his response.  And I have copies -- additional

21   copies, if you'd like me to hand them up.

22         THE COURT:  No, it's all right.

23         MS. RICHARDS:  If you look at the credit report, it

24   doesn't say what he says it says.  It says plainly that the

25   recent balance on the loan is zero dollars, as of September

RESIDENTIAL CAPITAL, LLC, ET AL.                    12

1    28th.  It is clear that GMAC Mortgage had charged off that

2    loan; they were not seeking to claim any funds from him on

3    account of the deficiency following the foreclosure sale.  And

4    the sixteen million dollar amount --

5            THE COURT:  In California, a mortgage is nonrecourse

6    on a deed of trust -- first mortgage -- purchase money mortgage

7    secured by a deed of trust is nonrecourse under California, is

8    that right?

9            MS. RICHARDS:  That's our understanding, yes, Your

10   Honor.

11           So the sixteen million dollars, of which Mr. Sweeting

12   complains, is just a recital of the terms of the loan that it

13   had been charged off, and that's reflected on the credit report

14   that he attached.  The current report is also nearly four years

15   old, so it doesn't support any claims that GMAC is continuing

16   any conduct going forward.  Mr. Sweeting has not shown that

17   GMAC incorrectly reported anything, and so he hasn't shown any

18   damages arising from that either, much less seventy-nine

19   million dollars' worth of damages.

20           His other two claims in that complaint are both for

21   equitable relief.  He seeks an accounting of the loan.  But

22   again, there's no support for seventy-nine million dollars of

23   damages in connection with that request for relief.

24           And the third thing he requests is an injunction

25   preventing GMAC Mortgage from wrongfully submitting credit

RESIDENTIAL CAPITAL, LLC, ET AL.                    13

1   reports on his behalf.  Again, he has not shown that anything

2   was wrongfully reported, and he has not shown damages.

3            THE COURT:  Well, is GMAC a creditor of Mr. Sweeting?

4   GMAC was servicing the loan.  The loan was -- because the

5   property was foreclosed and sold.  Is GMAC contending that Mr.

6   Sweeting owes GMAC any money?

7            MS. RICHARDS:  It is not, Your Honor.

8            THE COURT:  Okay.

9            MS. RICHARDS:  For those reasons --

10           THE COURT:  Let me ask you a couple of other

11   questions.

12           MS. RICHARDS:  Yes.

13           THE COURT:  You acknowledge in your papers that with

14   respect to the second Sweeting action, because of the

15   particulars of the California rule of res judicata, res

16   judicata wouldn't apply to the dismissal of the second Sweeting

17   action because there's still an appeal pending, right?

18           MS. RICHARDS:  That's correct, Your Honor.

19           THE COURT:  So the question I have is, particularly in

20   light of the second amended complaint in the first Sweeting

21   action, whether collateral estoppel applied.  In other words,

22   if there were facts that are necessarily determined adverse to

23   Sweeting in the first action, such that collateral estoppel

24   would apply, and if the second Sweeting action depends on the

25   same facts, does collateral estoppel apply?  Is there a

1    requirement that -- I mean, I understand for res judicata there

2    would be a requirement that the judgment be final, and it isn't

3    with respect to the second Sweeting action.  But to the extent

4    that the second Sweeting action depends upon facts necessarily

5    determined adverse to Mr. Sweeting in the first Sweeting

6    action, there may be no -- I don't know; does collateral

7    estoppel apply -- a demur tests the sufficiency of the

8    complaint, and I guess the court doesn't make -- I don't know,

9    does the court make -- are there facts -- is there collateral

10   estoppel with respect to the first Sweeting action?  I ask that

11   question.

12         MS. RICHARDS:  I think there, arguably, is, but the

13   debtors have proceeded on the objection on the grounds we're

14   comfortable that Mr. Sweeting hasn't met the merits of his

15   claims --

16         THE COURT:  Okay.

17         MS. RICHARDS:  -- so we didn't address that point.

18         THE COURT:  All right.  Okay.  Anything else you want

19   to add at this point?

20         MS. RICHARDS:  Not at this point, Your Honor.

21         THE COURT:  All right.  Mr. Sweeting, I'll hear you

22   now.

23         MR. SWEETING:  Oh, hi.  Good morning, Your Honor.

24   Some of the facts are slightly distorted.  In the first amended

25   complaint, there was no reference to defamation and accounting,

RESIDENTIAL CAPITAL, LLC, ET AL.                    15

1   because the report of the sixteen million dollar debt was not

2   initially in the case; it occurred a year into the case, which

3   is now over five years old.

4            In the first amended complaint, GMAC committed fraud

5   in the court by stating they never owned the loan, and they

6   stated they never owned the deed, to Judge Wilkinson.  But they

7   went into a different court for -- to Westminster court with a

8   deed for they did own the property.  And then they filed a

9   sixteen million dollar debt on my credit report, which is still

10  on there today, that I owed them sixteen million dollars, on

11  top of the forty years of paying them on the same loan.  So in

12  one court of law or another they have committed fraud.

13           THE COURT:  Mr. --

14           MR. SWEETING:  The entire loan contract was fraud from

15  day one.

16           THE COURT:  You've tried to litigate that issue

17  multiple times, unsuccessfully, in the California state courts.

18  Do you agree with that?

19           MR. SWEETING:  Yes, but if you go back to the second

20  amended complaint, GMAC was already out -- they were already

21  out of the case and on appeal before the second amended

22  complaint.  They were given a courtesy copy because the other

23  defendants have accepted the second amended complaint in the

24  core grounds (ph.).  GMAC was given a courtesy copy, as a

25  placeholder --

RESIDENTIAL CAPITAL, LLC, ET AL.                    16

1              THE COURT:  May I ask you a question?

2              MR. SWEETING:  -- but --

3              THE COURT:  Mr. Sweeting, stop for a second.  My

4    understanding is on December 15th, 2009, you filed a second

5    amended complaint in the California trial court, naming GMAC as

6    a defendant.  And you also alleged, in that second amended

7    complaint, a new cause of action for defamation and tortious

8    interference with credit, and you asserted that against GMAC,

9    is that correct?

10             MR. SWEETING:  Yes.

11             THE COURT:  And that's a claim that you then also

12   asserted in the second amend -- and the trial court sustained

13   GMAC's demur to the second amended complaint that included the

14   claim for defamation and tortious interference with credit, is

15   that correct?

16             MR. SWEETING:  That's true, but GMAC was already in

17   the appellate court --

18             THE COURT:  Well --

19             MR. SWEETING:  -- on the first amended --

20             THE COURT:  So you acknowledge that the trial court

21   sustained GMAC's demur to your second amended complaint that

22   included the claim for defamation and tortious interference,

23   which you asserted for the first time in the second amended

24   complaint.  And the trial court, in that first action,

25   sustained that demur and dismissed that claim, correct?

1          MR. SWEETING:  Yes.

2          THE COURT:  All right.  And that's a claim that you

3   pleaded again in the second amended complaint, correct?  Not --

4   excuse me, that's a claim that you pleaded in the second

5   California action, correct?

6          MR. SWEETING:  Yes, those two causes alone.

7          THE COURT:  Right.  So you raised it once and you

8   lost, and then you asserted that same claim in the second case,

9   that's correct?

10          MR. SWEETING:  No.

11          THE COURT:  What's not correct about it?

12          MR. SWEETING:  GMAC was out -- was granted their

13   summary judgment motion on the first amended.  They were not a

14   party to the second amended.

15          THE COURT:  Well, you named them as a defendant on the

16   second amended complaint with respect to the defamation and

17   tortious interference claim.  They demurred, and the trial

18   court sustained the demur and dismissed the second amended

19   complaint that included a claim against GMAC from defamation

20   and tortious interference, correct?

21          MR. SWEETING:  Right, well, there was some confusion

22   on their end.

23          THE COURT:  Well, there's no confusion in what I've

24   read.  You asserted it, you asserted it against them, the trial

25   court sustained the demur and dismissed the second amended

RESIDENTIAL CAPITAL, LLC, ET AL.                    18

1  complaint that included that new cause of action, correct?

2          MR. SWEETING:  Yes.

3          THE COURT:  All right.  Go ahead with your argument.

4          MR. SWEETING:  Well, the -- again, since GMAC was on

5  appeal on the first amended, they were given a copy of the

6  second amended as a courtesy; they didn't even need to answer

7  it.  And that's why the second complaint was filed, to have

8  them answer the sixteen million dollar debt and how they

9  account for it, which they never have.

10         THE COURT:  Well, they responded to the complaint by

11  filing a demur, which the court sustained and dismissed your

12  second amended complaint in the first action.

13         MR. SWEETING:  Okay.  Since then, a new judge has come

14  into the case, he has seen the fraud that GMAC committed in the

15  case.  The Court of Appeals has now seen the fraud.  And I'm

16  waiting for the ruling on that to be published so we can go

17  forward with that case.  So I'm kind of stuck in limbo here.

18         Now, in the meantime, the second amended complaint on

19  the first case is still active.

20         THE COURT:  It's not active against GMAC; the court

21  dismissed it.

22         MR. SWEETING:  Well, they may come back and say there

23  was fraud.  That is what I am looking, for the Court of Appeals

24  to say --

25         THE COURT:  Mr. Sweeting --

1        MR. SWEETING:  -- that there was fraud.

2        THE COURT:  -- there's a final judgment as to GMAC in

3   the first case, final judgment, including with respect to the

4   claim for defamation and tortious interference.

5        But Ms. Richards, let me ask you a question.  What's

6   the debtors' position with respect to lifting the stay to allow

7   for the completion of the appeal in the second action?  I ask

8   for this reason.  If I go ahead and sustain the debtors'

9   objection to both proofs of claim, and frankly, if the

10  appellate court -- which I gather it's fully briefed, is that

11  correct?

12       MS. RICHARDS:  I believe it's fully briefed --

13       MR. SWEETING:  Yes.

14       MS. RICHARDS:  -- yes, Your Honor.

15       THE COURT:  Okay.  If the appellate court -- if the

16  stay is lifted, the appellate court goes ahead and reverses,

17  Mr. Sweeting, under 502(j), could seek to, essentially,

18  reassert a claim.  I mean, it looks pretty final to me with

19  respect to GMAC, but that second case is in limbo.  Why

20  shouldn't I lift the stay to permit the appeal in the second

21  case to be heard and decided?

22       MS. RICHARDS:  Because --

23       MR. SWEETING:  That's what I'm requesting, Your Honor.

24       THE COURT:  Mr. Sweeting, don't interrupt.

25       Go ahead, Ms. Richards.

1      MS. RICHARDS:  Your Honor, the appeal does not address

2  the merits of Mr. Sweeting's claim.

3      THE COURT:  Well, look, if the court affirms, the

4  show's over, okay?  But my concern is, is that there's a

5  pending appeal -- what I think about it doesn't make any

6  difference; it's for the California appellate court to decide

7  it.  There doesn't appear to be anything left for the debtors

8  to do with respect to that appeal.  It appears to be fully

9  briefed.  I guess if there's an argument, the debtors will have

10  somebody argue, if they wish.  Why shouldn't I lift the stay to

11  allow the appeal to run its course?

12      MS. RICHARDS:  Your Honor, if the appeals court finds

13  in Mr. Sweeting's favor, all that will have happened is that

14  they will have said res judicata did not apply, Mr. Sweeting

15  gets to establish the merits of his claim, he gets to litigate

16  that.  That proceeding is not pending.  The question of the

17  merits of his claims are before you today.  Mr. Sweeting filed

18  his claim, we've objected to it; the burden is on him, by a

19  preponderance of the evidence, to show the merits of his

20  claims.

21      THE COURT:  Well, I --

22      (Pause)

23      THE COURT:  So if -- the debtors succeeded, pre-

24  petition, in having the demur to the complaint sustained, and

25  the complaint was dismissed, and that's on appeal.  If the

1    appellate court were to reverse, the issue then would be

2    whether the complaint states a claim and whether Mr. Sweeting

3    could prove it.

4          If I -- even if I sustain your objection and expunge

5    both proofs of claim, if the appellate court were to reverse,

6    what Mr. Sweeting's chances of success would be, I'm not sure,

7    but 502(j) provides that a claim that has been allowed or

8    disallowed may be reconsidered for cause.  A reconsidered claim

9    may be allowed or disallowed according to the equities of the

10   case.

11         So the issue would become -- I mean, I might well

12   conclude that what he submitted in support of the proof of

13   claim -- he attached a copy of the complaint, and you rely on

14   the fact that -- that complaint essentially is the same thing

15   all over again; it's been dismissed again.  I'm not going to

16   get into whether I think there's any merit to his appellate

17   argument or not, after the first case was dismissed and became

18   final; that's for the California court to decide.

19         Go ahead, anything else you want to say, Ms. Richards?

20         MS. RICHARDS:  I would -- just responding to that last

21   point you raised.  If this Court disallows and expunges claim

22   1361, on the grounds of res judicata, then if Mr. Sweeting were

23   to succeed at appeal, he would then have the opportunity to

24   prove his claim.  And the question becomes, where does that

25   proceeding happen?  Does it happen out in California state

RESIDENTIAL CAPITAL, LLC, ET AL.                                    22

1    court, where no proceedings have happened to date?  Or does it

2    happen before this court, where he has jurisdiction and where

3    he's filed -- where this court has jurisdiction if he filed a

4    claim.

5              THE COURT:  Well, the only thing I'm considering is

6    whether to lift the stay to permit the appeal -- pending

7    appeal, fully briefed, to be decided.  I'm not saying that I

8    would lift the stay to permit an action to go forward in the

9    trial court when nothing's happened on the merits, and it

10   wouldn't be likely to be resolved any time soon.

11             MS. RICHARDS:  Your Honor --

12             THE COURT:  What's happened with respect to the other

13   defendants in the state court?

14             MS. RICHARDS:  In the first Sweeting action?

15             THE COURT:  Well, first, second; take your pick.

16             MS. RICHARDS:  There are no other -- GMAC was the only

17   defendant --

18             THE COURT:  In the second.

19             MS. RICHARDS:  -- in the second Sweeting action.

20             THE COURT:  Okay.  What's happening in the first --

21             MS. RICHARDS:  So there's no one else.

22             THE COURT:  -- Sweeting action?

23             MS. RICHARDS:  As far as I know, it's still pending,

24   but I don't know the exact status.  I don't know if my

25   colleague Mr. Dykstra --

RESIDENTIAL CAPITAL, LLC, ET AL.                          23

 1          THE COURT:  Can you --

 2          MS. RICHARDS:  -- can provide an update to the Court

 3  on that.

 4          MR. DYKSTRA:  Certainly.

 5          THE COURT:  Sure, thank you.

 6          MR. SWEETING:  Your Honor, if I may?

 7          THE COURT:  No, not yet.  I'll give you another

 8  chance, Mr. Sweeting.  Hold on.

 9          MR. DYKSTRA:  Your Honor, Jonathan Dykstra of Severson

10  & Werson on behalf of the debtor.

11          Briefly, what's generally happening in this case is

12  Mr. Sweeting has filed against or brought in approximately

13  seven or eight different defendants.  Most of them are out all

14  the way through the appeal process, with the exception of the

15  second GMAC action.  There are two remaining active defendants,

16  MERS and Chicago Title company.  That's still pending.  MSJs

17  are pending and things like that.  The reason that they're

18  still in is because both of those entities were doughed (ph.)

19  in much later, so it didn't have a chance to attack this

20  earlier.

21          THE COURT:  Thank you.

22          MR. DYKSTRA:  Thank you.

23          THE COURT:  Mr. Sweeting, go ahead.  I'll hear from

24  you briefly.

25          MR. SWEETING:  Yes, Your Honor.  Recently, Chicago

1  Title moved the court to request mediation, so that is being

2  set up now for mediation in Chicago Title and MERS defendants.

3            The other defendants have fled, or default judgments

4  have been filed against all -- in this case, every code in the

5  financial code was violated in this loan contract.  So the

6  defendants have fled or stalled.  In the case of Chicago Title,

7  they've stalled for four years in providing discovery, and

8  finally the court ordered them --

9            THE COURT:  Do you have a lawyer in the first Sweeting

10 action?

11           MR. SWEETING:  Do I --

12           THE COURT:  Are you represented by counsel?

13           MR. SWEETING:  Originally, yes.

14           THE COURT:  No, I'm talking about now, not originally.

15           MR. SWEETING:  Okay, I didn't hear the question.

16           THE COURT:  It's not -- okay, Mr. Sweeting, are you

17 represented by counsel in the pending action that you brought

18 that's been referred to as the first Sweeting action; are you

19 represented by counsel in that case?

20           MR. SWEETING:  No, Your Honor, I've been financially

21 devastated by these actions --

22           THE COURT:  Okay.

23           MR. SWEETING:  -- and lost my ability --

24           THE COURT:  All right.

25           MR. SWEETING:  -- on account of the --

1    THE COURT:  Who are the defendants as to whom you've

2  gotten the default judgment?

3    MR. SWEETING:  The appraiser -- GMC appraisers, the

4  owner of the appraiser company, Jason Kishaba, has defaulted.

5  The original defendant, International Mortgage, International

6  Escrow, they have fled.  Their license had been revoked prior

7  to even starting my loan.  So they have -- they stole the loan

8  proceeds, they forged some documents.  No copy of the loan

9  contract was ever handed over, no right to cancel.  The loan

10  proceeds were stolen.  The first payment due back to Fremont

11  was stolen.  Fremont was ordered closed -- ordered their

12  mortgage business closed down by the government for acts they

13  had done.  And Fremont failed to post my payments before GMAC

14  bought -- GMAC bought all the Fremont loans -- well, I don't

15  know, mortgage sale price, because Fremont was ordered out of

16  the mortgage business.  So that's how GMAC ended up with it.

17    So the second day they owned my loan, they sent a

18  deficiency notice that I owed them eighty thousand dollars,

19  because Fremont had failed to post my payments.  And GMAC went

20  directly into foreclosure, because the property was appraised

21  at a million dollars.  So GMAC's intention was to take all

22  the -- then the foreclosed mortgages that Fremont had.  Once

23  GMAC saw how the -- the fact that the entire loan contract was

24  illegal, it's been a process of cover-ups ever since.

25    THE COURT:  All right.  Anything else you want to say

1  about your -- this pending motion to expunge your claim?

2          MR. SWEETING:  Yes.  I'm very confident that the Court

3  of Appeals will reverse.  They were shocked at what GMAC has

4  done.  They were --

5          THE COURT:  How were they shocked?  Has there been an

6  argument in the appeal?

7          MR. SWEETING:  Yeah.

8          THE COURT:  When was the argument?

9          MR. SWEETING:  Approximately a year ago.

10          THE COURT:  Mr. Dykstra, was --

11          MR. DYKSTRA:  It has been argued, Your Honor.

12          THE COURT:  Were you there?

13          MR. DYKSTRA:  I was not.

14          THE COURT:  All right.  I'm going to take the matter

15  under submission.

16          MS. RICHARDS:  Thank you, Your Honor.

17          THE COURT:  Thank you, Mr. Sweeting.

18          MR. SWEETING:  All right.  Thank you, Your Honor.

19          THE COURT:  All right.  You can disconnect Mr.

20  Sweeting.  Is there anybody else on?  Never mind, that's fine.

21  Yeah, fine.

22          Go ahead, Ms. Richards.

23          MS. RICHARDS:  Your Honor, that brings us to the last

24  section of the agenda, which relates to the debtors' omnibus

25  claims objections.  There's one pending objection to the

1   debtors' first omnibus objection; that's been adjourned.  There

2   was one pending objection to the debtor's twenty-third omnibus

3   objection; that's been resolved.  And the final omnibus

4   objection is the debtors' thirty-second omnibus claims

5   objection, which relates to claims that are duplicative of

6   indenture trustee claims.  There were no responses or

7   objections filed to that claim.

8           THE COURT:  All right.  The Court has reviewed --

9   anybody wish to be heard with respect to the debtors' thirty-

10  second omnibus objection to claims?  It's at ECF 4903.

11          All right.  Hearing none, no response was filed.  The

12  motion is supported by the declaration of Deanna Horst, the

13  senior director of claims management at Residential Capital,

14  LLC and its affiliates.  Through the motion, the debtor seeks

15  to disallow and expunge eleven claims, attached as Exhibit A to

16  their proposed order.  The declaration established that the

17  claims are duplicative of a master claim filed by Wilmington

18  Trust, N.A. as indenture trustee, on its own behalf and on

19  behalf of the holders of certain notes.  The motion does not

20  affect the claim filed by Wilmington Trust.  The Court has

21  reviewed papers.  The objection is well taken and is sustained.

22          MS. RICHARDS:  Thank you, Your Honor.

23          THE COURT:  Okay?

24          MS. RICHARDS:  That's all we have for you today.

25          THE COURT:  All right.  Thank you very much.

1          MS. RICHARDS:   Thank you.

2      (Whereupon these proceedings were concluded at 10:44 AM)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                            I N D E X
 3
 4                            RULINGS
 5                                          Page      Line
 6  Debtors' thirty-second omnibus claims     27        21
 7  objection is sustained
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2                        C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8

9   _____

10   SHARONA SHAPIRO

11   AAERT Certified Electronic Transcriber CET**D-492

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  October 3, 2013

18

19

20

21

22

23

24

25