UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                          )    Chapter 11
                                                )
RESIDENTIAL CAPITAL, LLC, et al.,               )    Case No. 12-12020
(MG)                                            )
                                                )    Jointly Administered
        Debtors                                 )
                                                )
_____)
                                                )
M. FRANCINE MODDERNO                            )
        Plaintiff, *pro se*                     )
                                                )
        v.                                      )
                                                )    Assigned to:   Hon. Martin Glenn
RESIDENTIAL CAPITAL LLC,/ RESIDENTIAL           )                   US Bankruptcy Judge
FUNDING, LLC, GMAC MORTGAGE, LLC, et al         )
        Defendant(s)                            )
_____

## OBJECTION TO DEBTORS' THIRTIETH OMNIBUS OBJECTION TO CLAIMS
## (NO LIABILITY BORROWER CLAIMS – BOOKS AND RECORDS)

Plaintiff M. FRANCINE MODDERNO, acting *pro se*, respectfully objects to Debtors' Thirtieth Omnibus Objection to Claims (hereinafter referred to as Debtors' Objection), which seeks to expunge her claim.

Plaintiff timely submitted a claim in this case against Residential Funding, recorded as received by the claim's administrator on November 15, 2012. The number assigned by the court to Plaintiff's claim is **4866**. (A copy of the claim is attached as Exhibit A.) Plaintiff's claim against Residential Funding is for her real property, located at 17147 Needles Court, Leesburg, Virginia 20176.

1.     First, Plaintiff did not receive Debtors' Objection, nor the Objection itself. Plaintiff only learned of Debtors' Objection on or about Friday, October 4, 2013, when she spoke on the telephone with an assistant in Judge Glenn's Chambers about three notices regarding Debtors' Disclosure Statement and voting on their plan that she had received in the mail. Several weeks earlier, Plaintiff had telephoned SilvermanAcampora L.L.P. several times, and left messages

- Page 1 of 4 -

Chapter 11 Case No. 12-12020
RESIDENTIAL CAPITAL, LLC, et al., Debtors

saying she needed information about the notices and needed it as soon as possible because she had a deadline to respond if necessary. Plaintiff never received a return call from SilvermanAcampora. Plaintiff then reread the notices several times and determined that she probably did not need to respond to the three notices. However, Plaintiff subsequently began to worry about whether her interpretation of the notices had been correct, and thus telephoned Judge Glenn's Chambers to ask who else she might telephone for information. During that conversation, the assistant in the Judge's Chambers informed her that there was an Objection to Debtors' Thirteenth Omnibus Objection to Claims online under her claim number, of which she was unaware. Plaintiff immediately read Debtors' Objection online and began to prepare this Objection to Debtors' Objection to Claims.

As Plaintiff did not (and still has not) received the Debtors' Objection in the mail, and had no knowledge of, or reason to think, that Debtors' Objection was online under her claim number, Plaintiff was not allowed due process and given the opportunity to timely file her Objection to Debtors' Objection.

Also, although Plaintiff had intended to file this Objection as soon as possible on Monday, October 7, by sending it via overnight mail, she was unable to get to her local post office until today, October 8, 2013, because her area of the country was under tornado watch on Monday, October 7. (A copy of the notice of the tornado watch in attached as Exhibit A.) Plaintiff is a senior citizen and ill-suited to risk dangerous weather.

Plaintiff herein respectfully requests that the Court grant her an extension to file her Objection to Debtors' Thirtieth Omnibus Objection to Claims.

2.  Debtors are incorrect in their assertion that Plaintiff's claim warrants expungement. Plaintiff's claim stated that the reason for her claim was that Residential Funding

**Chapter 11 Case No. 12-12020**
**RESIDENTIAL CAPITAL, LLC, et al., Debtors**

did not own her property due to fraud. Plaintiff's Mortgage Note bears a fraudulent assignment. (A copy of

the Mortgage Note is attached herein as Exhibit B.) As can be seen, the Mortgage Note bears a

robosignature of Judy Faber. The signature is not an actual signature, but a stamp with "Judy

Faber" carved into it. Not only is the "signature" obviously a stamp, but Ms. Faber has testified

several times in dispositions taken in other cases, which can be found on the Internet, that she did

not personally verify that the information on loan documents was correct; and also that her

signature stamp was widely used by others on mortgage documents. She also testified that

mortgage documents bearing her "signature" were not notarized in the presence of a notary, but

instead were notarized at a later date. As the depositions are many pages long, Plaintiff hopes it is

acceptable to refer the Court to the following online locations of the transcripts of two

depositions of Judy Faber:

      A.    US District Court for the Northern District of Illinois, Eastern Division Case: 1:07-cv-01544 Filed: November 18, 2008, Deposition taken June 2, 2008

http://stopforeclosurefraud.com/wp-content/uploads/2010/09/WM_FULL_DEPOSITION_OF_RESIDENTIAL-FUNDING.GMAC_JUDY_FABER.pdf

      B.    State of Indiana, Marion County Superior Court, US Bank, NA v. Mamie Robinson, case no. 49D06-0703-MF-013045, Deposition taken August 14, 2009

http://api.ning.com/files/MqHepr4q3wscSBiv9QQyuadg2uSmAbef9D49SqTbXUqoaJ3V*PBldxLcmNo*J8aAZP**MG4BvZ7ufajm32tIsIFJGLdNyCSC/GMACDepostionFaber.pdf

    Debtor GMAC, /ResCAP along with other major lenders in the United States, signed an

agreement to a The Settlement Term Sheet, Exhibit A of that Consent Judgement states:

> . . . affidavits, sworn statements and Declarations shall be signed by hand signature of the affiant (except for permitted electronic filings). For such documents, except for permitted electronic filings, signature stamps and any other means of electronic or mechanical signature are prohibited.

Chapter 11 Case No. <u>12-12020</u>
<u>RESIDENTIAL CAPITAL, LLC, et al., Debtors</u>

Per the Consent Order signed by Debtors with the US Government, et al (including the State of New York) on April 4, 2012, Plaintiff's ~~Deed of Trust~~ MORTGAGE NOTE bears an invalid and fraudulently applied robosignature, and thus Debtors claim to Plaintiff's property is fraudulent, invalid, and unacceptable.

WHEREFORE, Plaintiff begs this honorable Court to:

1. Grant her an extension to file her Objection to Debtors' Thirteenth Omnibus Objection to Claims;

2. Rule that Plaintiff's Debtors may not expunge her claim, based on the Consent Judgment in the case titled *United States, et al, v. Bank of America, at*, Case *1:12-cv-00361-RMC*, filed in the District of Columbia on April 4, 2012; and

3. Provide any other relief the Court may deem just, equitable or otherwise appropriate.

Respectfully submitted,

*[signature]*

M. Francine Modderno, *pro se*
17147 Needles Court
Leesburg, VA 20176
(703) 669-8687

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) <br> ) <br> RESIDENTIAL CAPITAL, LLC, et al., ) <br> (MG) ) <br> Debtors ) <br> _____) <br> ) <br> M. FRANCINE MODDERNO ) <br> Plaintiff, *pro se* ) <br> v. ) <br> ) <br> RESIDENTIAL CAPITAL LLC./ RESIDENTIAL ) <br> FUNDING, LLC, GMAC MORTGAGE, LLC, et al ) <br> Defendant(s) ) | Chapter 11 <br><br> Case No. 12-12020 <br><br> Jointly Administered <br><br><br><br> Assigned to:  Hon. Martin Glenn <br> US Bankruptcy Judge |

### AFFIDAVIT OF SERVICE

I, M. Francine Modderno, acting *pro se*, certify that I have today, October 8, 2013, served the accompanying *Contest to Transfer of Plaintiff's Mortgage to Ocwen Loan Servicing*, via FAX and Certified US Mail to the following parties in this case:

Counsel to the Debtors
Larren M. Nashelsky
Gary S. Lee
Lorenzo Marinuzzi
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, NY 10104
T: 212-468-8000
F: 212-468-7900
http://www.mofo.com/

Counsel to the Examiner
Howard Seife
David M. LeMay
Robert J. Gayda
Marc B. Roitman
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
T: 212-408-5100
F: 212-541-5369
http://www.chadbourne.com/

Office of the United States Trustee
Tracy Hope Davis
33 Whitehall St 21st Fl, Region 2
New York, NY 10004-2111
T: 212-510-0500
F: 212-668-2255
http://www.justice.gov/ust/r02/

Respectfully submitted,

*/s/ M. Francine Modderno*
M. Francine Modderno, *pro se*
17147 Needles Court
Leesburg, VA 20176
(703) 669-8687

**Subj:** A Tornado Watch has been issued for Loudoun, Virginia until Mon Oct 07 5:00 PM ET
**Date:** 10/7/2013 9:01:49 A.M. Eastern Daylight Time
**From:** twcwxalerts@weather.com



Your Severe Weather Alert for Oct 07 9:01AM

### SEVERE WEATHER ALERT — The Weather Channel

**Loudoun, Virginia**
Weather Updated: (201310071301)

**Tornado Watch**
Read more about today's severe weather

[Visionworks ad: SENIORS SAVE 55% – 100% LEARN MORE]

THE NATIONAL WEATHER SERVICE HAS ISSUED TORNADO WATCH 543 IN EFFECT UNTIL 5 PM EDT THIS AFTERNOON FOR THE FOLLOWING AREAS

THE DISTRICT OF COLUMBIA

IN MARYLAND THIS WATCH INCLUDES 11 COUNTIES

IN CENTRAL MARYLAND

ANNE ARUNDEL        HOWARD           MONTGOMERY
PRINCE GEORGES

IN NORTH CENTRAL MARYLAND

CARROLL             FREDERICK        WASHINGTON

IN NORTHERN MARYLAND

BALTIMORE           HARFORD

IN SOUTHERN MARYLAND

CALVERT             CHARLES

IN VIRGINIA THIS WATCH INCLUDES 4 COUNTIES

IN NORTHERN VIRGINIA

FAIRFAX             FAUQUIER         LOUDOUN
PRINCE WILLIAM

IN MARYLAND THIS WATCH INCLUDES 1 INDEPENDENT CITY

IN NORTHERN MARYLAND

BALTIMORE CITY

IN VIRGINIA THIS WATCH INCLUDES 4 INDEPENDENT CITIES

IN NORTHERN VIRGINIA

CITY OF ALEXANDRIA   CITY OF FAIRFAX   CITY OF MANASSAS
CITY OF MANASSAS PARK

THIS INCLUDES THE CITIES OF...ABERDEEN...ANNAPOLIS...BEL AIR...

CHANTILLY...CHESAPEAKE BEACH...COLUMBIA...EDGEWOOD...FALLSTON,..
FREDERICK...GAITHERSBURG...HAGERSTOWN...HAVRE DE GRACE,..
JOPPATOWNE...LAUREL,..LEESBURG...MCLEAN...RESTON...STERLING...
TOWSON...WALDORF,..WARRENTON...WASHINGTON...
WESTMINSTER AND WOODBRIDGE.



You are receiving this e-mail because you signed up for The Weather Channel Alerts and requested us to send these alerts to fmoddemo@aol.com. If you feel that you have received this message in error, or if you no longer wish to receive these messages, you can change your settings or unsubscribe anytime. Please do not reply to this message to unsubscribe, since responses to this message will not be processed.

If you have any questions, please check our Frequently Asked Questions. We also welcome your feedback, please send us your comments or questions. If you have any questions about how we use your personal information, please read our privacy policy. You can also write to us at:

The Weather Channel, LLC.
P.O. Box 724554
Atlanta, GA 31139

Copyright(c) 1995-2012, The Weather Channel, LLC

APP #: 2A503051
LN #: 2A503051

**FIXED/ADJUSTABLE RATE NOTE**
(1 Year LIBOR Index - Rate Caps)

MIN #: 100048-0024503051-7

EXHIBIT B

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

CERTIFIED TRUE COPY

October 20, 2003          Vienna                    Virginia
   [Date]                  [City]                    [State]

17147 NEEDLES COURT                    LEESBURG, VA 20175
                  [Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 600,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is FIRST SAVINGS MORTGAGE CORPORATION,
A VIRGINIA CORPORATION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 4.2500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
Beginning on the first day of December 1, 2003, and on the first day of every month thereafter until the first day of November 1, 2008, I will pay only the interest on the unpaid balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.
I will make my monthly payments of principal and interest on the first day of each month beginning DECEMBER 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on November 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 1950 OLD GALLOWS RD. 6TH FL. VIENNA, VA 22182
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,125.00. This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November 1, 2008, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One / Quarter percentage points ( 2.2500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 9.2500 % or less than 2.2500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding twelve months. My interest rate will never be greater than 9.2500 %.
(E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
(F) Notice of Changes
The Note Holder will deliver or mail to me a notice of change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use my prepayments to reduce the amount of principal that I owe under this Note and to pay the interest then accruing at the Note rate as of the date my prepayments are applied. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Any partial prepayment made on or before the first Change Date may reduce the amount of my monthly payments. Any partial

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CRM.1013.FIXEDINTADJRATE-VA (0906)                        Page 1 of 3                    Initials: SXB 77M

prepayment made after the first Change Date may reduce the amount of my monthly payments when the amount of such payments are determined at the next Change Date. However, any such reduction in my monthly payments may be off set by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    1 6    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5 . 0 0 0 0   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

(B) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANTS 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION (11)A ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in the Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require, upon such notice as required by law, payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument. Borrower will continue to be obligated under the Note and the Security Instrument unless Lender releases Borrower in writing.

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
GMACM-CNS.1013.FIX(INT)/ADJ(P&I).VA (9908)    01/08Page 2 of 3    Initials: _CVB_ _MT_

Identifier: 7436019841          Doc Type:NOTE

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE YOU SIGN IT!

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
CLAUDE P. BACHE                  Borrower

_____ (Seal)
JEANNINE HODBERG                 Borrower

_____ (Seal)
                                 Borrower

_____ (Seal)
                                 Borrower

[Sign Original Only]

This is to certify that this is the Note described in and secured by a Deed of Trust dated October 20, 2003, Virginia on the property located in LOUDOUN COUNTY.

My Commission Expires: 12/31/06       Notary Public

PAY TO THE ORDER OF
WITHOUT RECOURSE
Residential Funding Corporation

Judy Faber, Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF RESIDENTIAL FUNDING
[illegible] CORPORATION
[illegible]
VICE PRESIDENT

VIRGINIA FIXED/ADJUSTABLE RATE NOTE - 1 YEAR TREASURY INDEX
(page 3 of 3)