Presentment Date and Time: October 17, 2013 at 12:00 p.m. (ET)
Objection Deadline: October 16, 2013 at 4:00 p.m.

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Gary S. Lee
Norman S. Rosenbaum
James A. Newton

*Counsel for the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------
                                          )
In re:                                    )    Case No. 12-12020 (MG)
                                          )
RESIDENTIAL CAPITAL, LLC, et al.,         )    Chapter 11
                                          )
                          Debtors.        )    Jointly Administered
                                          )
---------------------------------------------------------------

**NOTICE OF PRESENTMENT OF STIPULATION AND
ORDER: (I) RESOLVING THE OBJECTION OF AMBAC ASSURANCE
CORPORATION AND THE SEGREGATED ACCOUNT OF AMBAC
ASSURANCE CORPORATION TO DEBTORS' PROPOSED ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, (II) APPROVING SALE,
ASSUMPTION AND ASSIGNMENT OF CERTAIN SERVICING RIGHTS
TO OCWEN LOAN SERVICING, LLC, AND (III) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that the undersigned will present the attached *Stipulation and

Order: (I) Resolving the Objection of Ambac Assurance Corporation and the Segregated

Account of Ambac Assurance Corporation to the Debtors' Proposed Assumption and Assignment

of Certain Executory Contracts, (II) Approving Sale, Assumption and Assignment of Certain

Servicing Rights to Ocwen Loan Servicing, LLC, and (III) Granting Related Relief* (the

"Stipulation and Order"), to the Honorable Martin Glenn, United States Bankruptcy Judge, at the

United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004,

Room 501, for signature on **October 17, 2013 at 12:00 p.m. (Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Stipulation and

Order must be made in writing, conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Notice, Case

Management, and Administrative Procedures approved by the Bankruptcy Court [Docket

No. 141], be filed electronically by registered users of the Bankruptcy Court's electronic case

filing system, and be served, so as to be received no later than **October 16, 2013 at 4:00 p.m.**

**(Eastern Time)**, upon (a) counsel for the Debtors, Morrison & Foerster LLP, 1290 Avenue of

the Americas, New York, NY 10104 (Attention:  Gary S. Lee, Norman S. Rosenbaum and James

A. Newton); (b) the Office of the United States Trustee for the Southern District of New York,

U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 (Attention:

Tracy Hope Davis, Linda A. Riffkin, and Brian S. Masumoto); (c) the Office of the United States

Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC

20530-0001 (Attention: US Attorney General, Eric H. Holder, Jr.); (d) Office of the New York

State Attorney General, The Capitol, Albany, NY 12224-0341 (Attention: Nancy Lord, Esq. and

Enid N. Stuart, Esq.); (e) Office of the U.S. Attorney for the Southern District of New York, One

St. Andrews Plaza, New York, NY 10007 (Attention: Joseph N. Cordaro, Esq.); (f) counsel for

Ally Financial Inc., Kirkland & Ellis LLP, 153 East 53rd Street, New York, NY 10022

(Attention: Richard M. Cieri and Ray Schrock); (g) counsel for the committee of unsecured

creditors, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY

10036 (Attention: Kenneth Eckstein and Douglas Mannal); (h) counsel for Ocwen Loan

Servicing, LLC, Clifford Chance US LLP, 31 West 52nd Street, New York, NY 10019

(Attention: Jennifer C. DeMarco and Adam Lesman); (i) counsel for Berkshire Hathaway Inc.,

Munger, Tolles & Olson LLP, 355 South Grand Avenue, Los Angeles, CA 90071 (Attention:

Thomas Walper and Seth Goldman); (j) Internal Revenue Service, P.O. Box 7346, Philadelphia,

PA 19101-7346 (if by overnight mail, to 2970 Market Street, Mail Stop 5-Q30.133, Philadelphia,

PA 19104-5016); (k) Securities and Exchange Commission, New York Regional Office, 3 World

Financial Center, Suite 400, New York, NY 10281-1022 (Attention: George S. Canellos,

Regional Director); and (l) counsel to Ambac Assurance Corporation and the Segregated

Account of Ambac Assurance Corporation, Patterson Belknap Webb & Tyler LLP, 1133 Avenue

of the Americas, New York, NY 10036-6710 (Attention:  David W. Dykhouse and Brian P.

Guiney).

      **PLEASE TAKE FURTHER NOTICE** that, if no objections to the Stipulation and

Order are timely filed, served and received in accordance with this Notice, the Court may enter

the Stipulation and Order without further notice or hearing.

Dated:  October 9, 2013
      New York, New York

                      /s/    Norman S. Rosenbaum
                      Gary S. Lee
                      Norman S. Rosenbaum
                      James A. Newton
                      MORRISON & FOERSTER LLP
                      1290 Avenue of the Americas
                      New York, New York 10104
                      Telephone:  (212) 468-8000
                      Facsimile:  (212) 468-7900

                      *Counsel for the Debtors and*
                      *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Case No. 12-12020 (MG) |
| | ) | |
| RESIDENTIAL CAPITAL, LLC, et al., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| -------------------------------------------------------------- | ) | |

**STIPULATION AND ORDER: (I) RESOLVING THE**
**OBJECTION OF AMBAC ASSURANCE CORPORATION**
**AND THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE**
**CORPORATION TO DEBTORS' PROPOSED ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, (II) APPROVING**
**SALE, ASSUMPTION AND ASSIGNMENT OF CERTAIN SERVICING RIGHTS**
**TO OCWEN LOAN SERVICING, LLC, AND (III) GRANTING RELATED RELIEF**

This stipulation (the "**Stipulation**") is entered into on October 9, 2013 by and among Residential Capital, LLC and its affiliated debtors in the above-referenced Chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), Ambac Assurance Corporation and the Segregated Account of Ambac Assurance Corporation (collectively, "**Ambac**") and, solely with respect to the transfers of the Ocwen Transactions and the Reserved Transactions (each as defined below) pursuant to paragraphs 2 and 4 hereof, respectively, Ocwen Loan Servicing, LLC ("**Ocwen**" and, together with the Debtors and Ambac, the "**Parties**").

**RECITALS**

**I.      THE BANKRUPTCY CASES**

A.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").  On the Petition Date, the Bankruptcy Court entered an order providing for the joint administration of the Debtors' Chapter 11 cases pursuant to Rule 1015(b)

1

of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  Since the Petition

Date, the Debtors have operated and managed their businesses as debtors in possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee has been appointed in these

Chapter 11 cases.  On July 3, 2012, the U.S. Trustee appointed the Honorable Arthur T.

Gonzalez, former Chief Judge of the Bankruptcy Court, as examiner.

## II.    THE AMBAC TRANSACTIONS

B.    Prior to the Petition Date, certain of the Debtors acted as Master Servicer,

Primary Servicer, Subservicer, Sponsor, Seller, or Depositor, as applicable, in connection with

numerous transactions involving the securitization of residential mortgages (the "**RMBS**

**Transactions**").  Certain of the Debtors were parties to the applicable Pooling and Servicing

Agreements, Assignment and Assumption Agreements, Indentures, Mortgage Loan Purchase

Agreements, I&I Agreements (as defined below) and/or other agreements governing the RMBS

Transactions (the "**Governing Agreements**").

C.    Ambac issued financial guaranty insurance policies (the "**Policies**") in

connection with certain of the RMBS Transactions (the "**Ambac Transactions**"), which policies

guaranteed certain principal and interest payments to holders of certain classes of securities.  In

connection with certain of the Ambac Transactions, Ambac also entered into insurance and

indemnity agreements with certain of the Debtors (the "**I&I Agreements**"), which provide

Ambac with certain rights and remedies and which expressly name Ambac as a third party

beneficiary of certain provisions in the Governing Agreements for the particular Ambac

Transaction.

### a.    The Trigger Transactions

D.    The Governing Agreements for certain of the Ambac Transactions (the

"**Trigger Transactions**") contain "servicing triggers," providing Ambac with the right to

2

terminate the applicable Debtor as the master servicer of the particular Ambac Transaction if one

or more of the trigger thresholds expressly identified in the applicable Governing Agreement is

met or exceeded (each, a "**Trigger Event**").  Among other things, the servicing trigger

provisions track borrower delinquencies and aggregate realized losses and provide that upon the

occurrence of a Trigger Event, Ambac can either (i) terminate the applicable Debtor as master

servicer for cause upon a determination that the manner of master servicing contributed to the

occurrence of a Trigger Event or (ii) give notice of the Trigger Event but not direct the removal

of the applicable Debtor as master servicer, in which case the applicable Debtor shall remain as

master servicer for the remainder of the then current calendar quarter; thereafter, the Governing

Agreements require the trustee to terminate the applicable Debtor as master servicer at the end of

the then current calendar quarter unless Ambac notifies the trustee for the particular Ambac

Transaction that Ambac desires to have the Debtor remain as master servicer for the next

succeeding quarter.

> **i.**      **The Prepetition Trigger Transactions**

E.      In the calendar quarter prior to the calendar quarter in which the Petition

Date occurred and in prior calendar quarters, Ambac had notified the Debtors that a Trigger

Event had occurred with respect to the 13 Ambac Transactions listed on <u>Exhibit 1</u> annexed

hereto (the "**Prepetition Trigger Transactions**").  Shortly before the Petition Date, Ambac gave

notice that it had elected to exercise its termination rights and not renew the applicable Debtor as

master servicer, including terminating the applicable Debtor's rights and obligations, in

connection with the Prepetition Trigger Transactions, effective July 1, 2012 (the "**Notice of Non-**

**Renewal**").  Before the end of the quarter in which Ambac provided the Notice of Non-Renewal,

the Debtors commenced these Chapter 11 cases.  Thereafter the Debtors advised Ambac in

writing that its purported exercise of its termination rights with respect to the Prepetition Trigger

3

Transactions was subject to the automatic stay imposed by Bankruptcy Code section 362(a) and, therefore, the Notice of Non-Renewal was void and of no effect.  In response, Ambac advised the Debtors that it believed that the automatic stay did not apply to the Notice of Non-Renewal because it was issued and delivered prior to the Petition Date.  In order to afford the parties an opportunity to negotiate a resolution to this dispute, the Debtors and Ambac agreed to an informal "status quo" arrangement wherein the applicable Debtor continued to act as master servicer of the Prepetition Trigger Transactions, but Ambac reserved its right to seek to enforce the Notice of Non-Renewal in this Court and its forbearance from doing so was not to be construed as a waiver of any rights.

   **ii.**  **Other Trigger Transactions With Trigger Events**

   F.  As of the Petition Date, Ambac had not notified the Debtors of the occurrence of a Trigger Event for any of the other Trigger Transactions.  However, prior to the date of this Stipulation, the trigger level for an additional eleven Trigger Transactions exceeded the contractual thresholds (these eleven Trigger Transactions, listed on Exhibit 2 annexed hereto, together with the Prepetition Trigger Transactions, the "**Reserved Transactions**").

   **iii.**  **Trigger Transactions Without Trigger Events**

   G.  The triggers for the remaining Trigger Transactions, listed on Exhibit 3 annexed hereto (the "**Ocwen Trigger Transactions**"), are, as of the date hereof, below the applicable thresholds and a Trigger Event has not occurred with respect thereto.

  **b.**  **Other Transactions**

   H.  In addition to the Trigger Transactions, Ambac insured certificates issued in connection with certain other RMBS Transactions listed on Exhibit 4 annexed hereto that do not contain servicing triggers (together with the Ocwen Trigger Transactions, the "**Ocwen Transactions**").

4

I.      Additionally, the Debtors act as subservicer in connection with certain additional Ambac Transactions with Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "**Impac**") (the "**Impac Transactions**") and certain additional Ambac Transactions (the "**Additional Transactions**"), each of which are identified on Exhibits 5 and 6 hereto respectively.  The Debtors are seeking to assume and assign the Impac Transactions to Ocwen.  The Debtors and Ambac will remain engaged in negotiations regarding the assumption and assignment of the Additional Transactions.

## III.    THE AMBAC PROOFS OF CLAIM

J.      On November 16, 2012, Ambac filed timely proofs of claim against Debtors GMAC Mortgage, LLC [Claim No. 5266], Residential Asset Mortgage Products, Inc. [Claim No. 5269] and Residential Funding Company, LLC [Claim No. 5274] (the "**Proofs of Claim**").  The Proofs of Claim assert claims for (i) the Debtors' alleged failure to service loans in the Ambac Transactions in accordance with servicing standards set forth in the Governing Documents ("**Servicing-Related Claims**"), and (ii) among other things, allegations of fraud, misrepresentation, breach of representations and warranties, and indemnity related to the origination of the mortgage loans in the Ambac Transactions (the "**Non-Servicing-Related Claims**").  The Proofs of Claim assert a total of $15,887,913 in liquidated Servicing-Related Claims and $196,750,569 in liquidated Non-Servicing-Related Claims.  Ambac estimates that its Non-Servicing Related Claims relating to future obligations under the Policies total not less than $223,301,022 in the aggregate.

## IV.    THE PLATFORM SALE AND AMBAC'S OBJECTION TO THE SALE

K.      On the Petition Date, the Debtors filed a motion (the "**Sale Motion**") [Docket No. 61] seeking, among other things, authorization to sell certain assets and approval of (i) related sale procedures, (ii) asset purchase agreements, and (iii) the assumption and

5

assignment of certain executory contracts and unexpired leases related thereto.

L.    On July 26, 2012, the Debtors filed their Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto [Docket No. 924], which was amended and restated on September 18, 2012 [Docket No. 1484] (the "**Assumption and Assignment Notice**").  Pursuant to the Assumption and Assignment Notice and in connection with the Sale Motion, the Debtors sought to assume and assign all of the Governing Agreements relating to the Ambac Transactions and scheduled a cure amount (the "**Cure Amount**") of $0.00 for each of them.

M.    On October 12, 2012, Ambac filed an objection and reservation of rights [Docket No. 1810] in response to the Debtors' proposed assumption and assignment of certain of the Governing Agreements for the Ambac Transactions (the "**Ambac Objection**").  Among other things, Ambac alleged that it could assert as a cure claim a minimum of $15,516,745, and possibly as much as $26,299,769, in damages attributable to the Debtors' alleged failure to properly service the mortgage loans in the Ambac Transactions.  The Debtors responded to the objection.

N.    On November 21, 2012, the Bankruptcy Court entered sale orders approving the Debtors' sales of assets to Berkshire Hathaway, Inc. [Docket No. 2247] and Ocwen [Docket No. 2246] (the "**Ocwen Sale Order**") and the related asset purchase agreements for each sale, and specifically with respect to the Ocwen Sale Order, the Asset Purchase Agreement dated November 2, 2012 among Ocwen and certain of the Debtors (as amended from time to time, the "**Ocwen APA**").  The Ambac Transactions were excluded from the Ocwen Sale Order, and such order expressly reserved Ambac's rights.  (*See* Ocwen Sale Order at p. 51).  The

6

hearing on the Ambac Objection was adjourned from time to time with Ambac's consent.

O.    The Ocwen sale closed on February 15, 2013.  Also on that date, certain of the Debtors and Ocwen entered into a Subservicing Agreement (the "**Subservicing Agreement**") under which Ocwen is servicing the Ambac Transactions on behalf of the Debtors.

P.    After extensive negotiations regarding the Ambac Objection and the Servicing Related Claims and the Non-Servicing Related Claims, the Parties reached the agreement embodied herein.  The Debtors have determined that entering into this Stipulation is in the best interests of the Debtors, their estates, the Debtors' creditors and other parties-in-interest.

**NOW THEREFORE**, in consideration of the foregoing recitals and the covenants and conditions contained herein, the Parties hereby stipulate and agree as follows:

1.    Upon entry of this Stipulation by the Bankruptcy Court, the Ambac Objection shall be deemed withdrawn with prejudice.

## I.    TRANSFER OF OCWEN TRANSACTIONS

2.    Effective as of December 1, 2013 or such other date as mutually agreed upon by the Parties, the Debtors shall assume and assign to Ocwen the Governing Agreements for the Ocwen Transactions in accordance with and pursuant to the terms of the Ocwen Sale Order and Ocwen APA, which Ocwen Sale Order shall be binding upon and govern the rights and obligations with respect to the Ocwen Transactions except as specifically set forth below with respect to the Ocwen Trigger Transactions (the "**Transfer**"), without the need for any further approval by the Bankruptcy Court.  Notwithstanding the provisions of the Ocwen Sale Order and Ocwen APA, the termination provisions applicable to the Ocwen Trigger Transactions in the applicable Governing Agreements for termination of the master servicer upon the occurrence of a Trigger Event, and the accumulated servicing trigger levels as of the date of

7

assignment to Ocwen, shall be unaffected by the Transfer and shall continue in effect as if such

assignment had not occurred.  Prior to the Transfer, the Debtors shall cause Ocwen to continue to

service the mortgages underlying the Ocwen Transactions in accordance with the terms and

conditions of the Subservicing Agreement.

## II.        TRANSFER OF RESERVED TRANSACTIONS

3.        The Debtors and Ambac shall continue to work in good faith to effectuate

a transfer of the Reserved Transactions, or as many of them as can be successfully transferred, to

Specialized Loan Servicing, LLC ("**SLS**") upon the terms set forth on Exhibit 7, or to another

mutually acceptable alternative servicer on mutually acceptable terms (in which case all

references hereinafter to SLS shall be deemed to refer to such other mutually acceptable

successor servicer) (the "**Proposed Servicing Transfer**"), provided that the Proposed Servicing

Transfer must be effective by the later of January 1, 2014 and the Effective Date of the Plan (as

defined below) (or such later date as the Debtors, Ambac, and the Official Committee of

Unsecured Creditors (the "**Creditors' Committee**") may agree in writing, the "**Outside Date**").

Subject to the occurrence of the Proposed Servicing Transfer and the payment of the Cure

Amount set forth in paragraph 6, below, the Ambac Releasors (as defined below) shall forever

release and discharge the Debtor Releasees (as defined below) from all Servicing-Related Claims

arising under the Reserved Transactions.  From the date of this Stipulation until the Outside

Date:  (v) each of the Debtors and Ambac will promptly respond to reasonable requests for

information by the other party in connection with the Proposed Servicing Transfer (and the

Debtors will use their best efforts to obtain any such information from Ocwen that is reasonably

requested by Ambac); *provided*, *however*, that the Debtors and Ambac shall enter into a

reasonable confidentiality agreement before either party is required to disclose any confidential

and/or proprietary information to the other; (w) the Debtors will promptly respond to reasonable

8

requests by Ambac to execute such instruments as shall be necessary to accept the resignations

of the existing Trustees under the Governing Agreements for the Reserved Transactions and the

appointment by the Debtors of a successor Trustee under such Governing Agreements; (x) the

Debtors will cooperate with Ambac and SLS in a commercially reasonable manner with respect

to reasonable requests to integrate the SBO Servicers (as defined in Exhibit 7 hereto) into the

Reserved Transactions in a standard sub-servicing arrangement consistent with customary

arrangements in the mortgage servicing industry, or, alternatively, will reasonably cooperate in

the termination of the SBO Servicers and the transfer to SLS of direct servicing obligations with

respect to the related mortgage loans; provided, however, that in no event will the Debtors be

responsible for any costs, fees or penalties (except such fees, if any, as may be due and owing to

Ocwen under the Subservicing Agreement) in connection  with the integration, termination or

transfer referred to in this clause (x); (y) Ambac will make good faith efforts to secure the full

cooperation of SLS in connection with the Proposed Servicing Transfer, including in connection

with the Debtors' requests for information, and (z) the Debtors will cooperate in good faith with

SLS, including in connection with any reasonable requests for information by SLS.

       4.      If the Proposed Servicing Transfer is not effective by the Outside Date (or

is effective for only some but not all of the Reserved Transactions): (a) Ambac shall waive any

outstanding Trigger Events as described in this paragraph and withdraw any notice of the

occurrence of a Trigger Event and any outstanding Notice of Non-Renewal in respect of

Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer (as

defined below); (b) the Debtors may assume and assign to Ocwen the Governing Agreements for

Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer and

Ocwen agrees, subject to the provisions set forth in this section, to assume such Governing

Agreements in accordance with and pursuant to the terms, including the terms related to pricing, of the Ocwen Sale Order and Ocwen APA without further Order of the Court (the "**Backstop Transfer**"); and (c) Ambac agrees to work in good faith with the Debtors after the Outside Date to effectuate the Backstop Transfer for the Reserved Transactions that are not transferred to SLS (and, to the extent not inconsistent with its efforts to achieve the Proposed Servicing Transfer, Ambac will cooperate with the Debtors prior to the Outside Date in preparation for a possible Backstop Transfer).  Ambac further agrees (i) not to issue a Notice of Non-Renewal for the Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer except in accordance with the terms of this Stipulation (provided the Backstop Transfer occurs), (ii) to the extent borrower delinquencies, aggregate realized losses or other metric utilized in the determination of any servicing trigger threshold have accumulated prior to the Backstop Transfer in respect of the trigger thresholds for the Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer, such accumulations shall not be used in calculating whether a Trigger Event has occurred following the Backstop Transfer, and (iii) not terminate Ocwen as master servicer based upon the occurrence of a Trigger Event or give notice of a Trigger Event or issue a Notice of Non-Renewal for the Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer for a period of two (2) years following the transfer of the Reserved Transactions to Ocwen in accordance with the provisions hereof.   Prior to the Proposed Servicing Transfer or the Backstop Transfer, as applicable, the Debtors shall cause Ocwen to continue to service the mortgages underlying the Reserved Transactions in accordance with the terms and conditions of the Subservicing Agreement.  Subject to the occurrence of the Backstop Transfer and the payment of the Cure Amount set forth in paragraph 7, below, the

10

Ambac Releasors shall forever release and discharge the Debtor Releasees from all Servicing-Related Claims arising under the Reserved Transactions.

5.    Ambac and the Debtors shall work in good faith to effectuate the assumption and assignment of the Additional Transactions to Ocwen on terms mutually acceptable to Ambac and the Debtors, subject to consent of the Creditors' Committee, without further order of the Court.

## III.    CURE AMOUNT

6.    Except as set forth herein, the Debtors and Ambac agree that the Cure Amount that the Debtors shall pay to Ambac in connection with the Ambac Transactions shall be calculated as follows: in the event of the Proposed Servicing Transfer of all of the Reserved Transactions, $750,000.00 (or, in the event of a Proposed Servicing Transfer in which some but not all of the Reserved Transactions are transferred to SLS, $750,000 multiplied by a fraction of which the unpaid principal balance of the loans in the transferred Reserved Transactions is the numerator and the total unpaid principal balance of the loans in all of the Reserved Transactions is the denominator); and in the event of the Backstop Transfer, 80% of the purchase price required to be paid by Ocwen for the MSRs (as defined in the Ocwen APA) for the Reserved Transactions that are transferred to Ocwen pursuant to the Backstop Transfer measured as of the date of the Backstop Transfer.  For the avoidance of doubt, the calculation of the Cure Amount for the Backstop Transfer shall (a) be made in accordance with items 1-2 on Schedule 3.1(a) to the Ocwen APA (without regard to items 3-10 thereon) and (b) not include any amounts paid by Ocwen under the Ocwen APA with respect to servicing advances.  In the event of the Proposed Servicing Transfer, the Debtors shall pay the Cure Amount to Ambac by wire transfer (in accordance with wire instructions to be provided in writing by Ambac) within three (3) business days of the date the Reserved Transactions are transferred.  In the event of the Backstop

11

Transfer, the Debtors shall pay the Cure Amount within the three (3) business days of the final

reconciliation of the purchase price (as provided for in the Ocwen APA) for the applicable MSRs

related to the Reserved Transactions, but in no event later than 60 days after the date the

Reserved Transactions are transferred.

## IV.    RELEASES AND AMBAC'S PROOFS OF CLAIM

7.      Except as otherwise provided herein, Ambac, acting for itself and each of

its past, present and future agents, representatives, attorneys, transferees, successors and assigns

(the "**Ambac Releasors**"), hereby forever releases and discharges each of the Debtors (and their

respective estates), and each of their past, present and future officers, trustees, directors,

members, partners, employees, agents, affiliates, representatives, attorneys, successors and

assigns (the "**Debtor Releasees**"), from all Servicing-Related Claims arising under the Ocwen

Transactions.  In no event shall Ocwen be considered a "Debtor Releasee" for any purpose

hereunder.[1]

8.      The Debtors shall seek approval under the *Joint Chapter 11 Plan*

*Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors*

(Dkt. No. 4153) ("**Plan**") of the allowance of the Non-Servicing Related Claims as follows: a

$207,315,815 claim against GMAC Mortgage, LLC in Class GS-4; and a $22,800,000 claim

against Residential Funding Company, LLC in Class RS-4 (collectively, the "**Allowed Ambac**

**Claims**") provided that the allowance of "Monoline Claims" shall not materially differ from the

treatment contemplated in the Supplemental Term Sheet annexed to the Plan Support Agreement

[Dkt. No. 3814] (such terms as defined therein).  Upon the allowance of the Non-Servicing

Related Claims as provided in this paragraph and the effectiveness of the Plan, the Ambac

---

[1]      For the avoidance of doubt, this is not intended to modify or limit the provisions of the Ocwen Sale Order
which shall continue in effect in accordance with its terms.

Releasors shall forever release and discharge each of the Debtor Releasees from all Non-Servicing Related Claims; provided, however, that such release shall not prejudice any treatment to which the Ambac Releasors are entitled under the Plan.

9.     As a part of the global settlement of its claims embodied in this Stipulation, Ambac has agreed that it shall make a special policy payment equal to 30% of the amount of each distribution of Cash (as defined in the Plan) that Ambac receives on account of the Units (as defined in the Plan) it receives pursuant to the Plan (each, a "**Special Policy Payment**").  Each Special Policy Payment shall be (a) used to pay accrued but unpaid approved claims under Policies relating to those Ambac Transactions that have accrued and unpaid Policy claims as of the time Ambac receives a distribution under the Plan on account of the Allowed Ambac Claims, (b) made within 60 days of Ambac receiving such a distribution of Cash, and (c) allocated among the applicable Policies in the discretion of the Court appointed Rehabilitator of the Segregated Account of Ambac Assurance Corporation.

10.     Nothing contained in this Stipulation shall affect or be deemed to release (i) any obligations or liabilities of Ocwen to the Debtors or the Debtors to Ocwen, (ii) any obligations or liabilities, if any, of any Party relating to the Impac Transactions or the Additional Transactions (which transactions shall remain subject to a further Order of this Court in all respects, or the mutual agreement of Ambac, the Debtors and, if applicable, Ocwen) or (iii) any obligation or liability of any Party set forth in or arising under this Stipulation.

## V.     MISCELLANEOUS

11.     This Stipulation is the result of a compromise and is not to be construed as an admission by any of the Debtors or their estates of any liability or wrongdoing.

12.     The Parties represent and warrant that each has full power and authority to enter into and perform under this Stipulation (in the case of the Debtors, subject to Bankruptcy

13

Court approval), and each of the undersigned counsel represents that he or she is authorized to execute this Stipulation on behalf of his or her respective client.

13.     Upon the Bankruptcy Court's entry of this Stipulation, no other or further notice to creditors or parties-in-interest or further approval by the Bankruptcy Court shall be required to effectuate this Stipulation.

14.     The 14-day stay of this Stipulation imposed by Bankruptcy Rule 6004(h), to the extent applicable, is waived.  The Parties are authorized to implement the provisions of this Stipulation immediately upon its entry and to take such steps, expend such sums and execute such documents as necessary in connection therewith without further order of this Court.

15.     Except for the Subservicing Agreement, the Ocwen Sale Order, the Ocwen APA  and other agreements between certain, but less than all, of the Parties, this Stipulation constitutes the entire agreement and understanding among the Parties with regard to the matters addressed herein and supersedes all prior and contemporaneous discussions, negotiations, understandings and agreements, whether oral or written, express or implied, among the Parties regarding the subject matter of this Stipulation.

16.     This Stipulation may not be altered, modified, changed or vacated without the prior written consent of the Parties or their respective counsel.

17.     This Stipulation shall be binding upon the Parties as well as any successor, trustee, or receiver appointed in the Debtors' Chapter 11 cases.  Neither the Plan nor any other plan of liquidation or reorganization for the Debtors shall contain any provisions inconsistent with the terms of this Stipulation.  If the Effective Date of the Plan does not occur, then, except to the extent otherwise agreed in writing by the Debtors, the Committee and Ambac, paragraphs 4, 8 and 9 hereof and all actions taken pursuant to such paragraphs shall be immediately and

14

automatically null and void, of no force or effect and not binding on the Parties or any other

entity, and the first two sentences of this paragraph 17 shall be deemed to refer to only so much

of this Stipulation as remains in force and effect.  For avoidance of doubt, if the Effective Date of

the Plan does not occur, all paragraphs of this stipulation other than paragraphs 4, 8 and 9 shall

remain in force and effect.

18.     This Stipulation may be executed in any number of counterparts by the

Parties on different counterpart signature pages, all of which when taken together shall constitute

one and the same agreement.  Any of the Parties may execute this Stipulation by signing any

such counterpart, and each such counterpart, including a facsimile or other electronic copy of a

signature, shall for all purposes be deemed to be an original.

19.     This Stipulation is subject to the approval of the Bankruptcy Court and

will become effective only upon approval by the Bankruptcy Court.

20.     The Bankruptcy Court shall retain jurisdiction to hear and determine all

matters or disputes arising from or relating to the implementation, interpretation, and/or

enforcement of this Stipulation, and Ambac expressly agrees that it shall be subject to the

jurisdiction of the Bankruptcy Court and bound by any decision of the Bankruptcy Court for

purposes of resolving any disputes arising in connection with this Stipulation.

*[signature page follows]*

Agreed to this 9th of October, 2013:

| | |
|---|---|
| **PATTERSON BELKNAP WEBB & TYLER LLP** | **MORRISON & FOERSTER LLP** |

By: _/s/ David W. Dykhouse_                By: _/s/ Norman S. Rosenbaum_

David W. Dykhouse                                      Norman S. Rosenbaum

Brian P. Guiney                                         James A. Newton

1133 Avenue of the Americas          1290 Avenue of the Americas

New York, New York 10036             New York, New York 10104

Telephone: (212) 336-2000            Tel: (212) 468-8000

Fax: (212) 336-2222                          Fax: (212) 468- 7900

*Counsel for Ambac Assurance Corporation*     *Counsel for the Debtors*
*and the Segregated Account of Ambac*         *and Debtors-in-Possession*
*Assurance Corporation*

**CLIFFORD CHANCE US LLP**

By: _/s/ Jennifer C. DeMarco_

Jennifer C. DeMarco

Adam Lesman

31 West 52nd Street

New York, New York  10019

Telephone: (212) 878-8000

Fax: (212) 878-8375

*Counsel for Ocwen Loan Servicing, LLC*

**SO ORDERED**:

Dated: October __, 2013
        New York, New York

                          _____

                          THE HONORABLE MARTIN GLENN
                          UNITED STATES BANKRUPTCY JUDGE

*Signature Page to Stipulation and Order Resolving the Objection of Ambac Assurance
Corporation and the Segregated Account of Ambac Assurance Corporation to the Debtors
Proposed Assumption and Assignment of Certain Executory Contracts*

ny-1096666

**<u>EXHIBIT 1</u>**

**Prepetition Trigger Transactions**

2004-RS9
2003-RS5
2003-RS4
2003-RS3
2003-RS2
2003-RS1
2002-RS7
2002-RS6
2002-RP2
2004-KS4
2002-KS1
2001-RS3
2001-RS1

ny-1096666

## **EXHIBIT 2**

**Trigger Transactions**

2003-KS4
2002-KS6
2002-KS8
2002-RS4
2002-RS5
2003-KS5
2003-KS9
2003-RS6
2004-RS5
2002-KS4
2002-RP1

ny-1096666

## EXHIBIT 3

**Ocwen Trigger Transactions**

2003-RP2
2003-HI3
1999-RS1
2002-RZ4
2003-RZ1
2003-RZ2

2

# EXHIBIT 4

**Ocwen Transactions**

1999-HI1
1999-HI4
1999-HI6
1999-HI8
2000-HI1
2000-HI2
2000-HI3
2000-HI4
2000-HI5
2000-HL1
2001-HI1
2001-HI2
2001-HI3
2001-HI4
2001-HLTV1
2001-HLTV2
2001-HS2
2001-HS3
2002-HI1
2002-HI2
2002-HI3
2002-HLTV1
2002-RS1
2003-HS4
2003-RS11
2003-RS8
2003-RS9
2003-RZ3
2003-RZ4
2003-RZ5
2004-RS1
BSSLT 2007-1
DBALT 2006-AB2
LXS 2005-4
LXS 2007-15N
NAAC 2007-3
SACO 2006-8
SASCO 2005-2XS
SASCO 2005-7XS

2

## EXHIBIT 5

**Impac Transactions**

Impac CMB Trust Series 2005-5, Class A-3W

Impac CMB Trust Series 2005-6

Impac CMB Trust Series 2005-7

Impac Funding Corp. Series 2003-4

Impac Funding Corp. Series 2004-6 Class 2-A

IMPAC Secured Assets Corp. 2005-2

IMPAC Secured Assets Corp. 2006-3

PFCA Home Equity Investment Trust II, Series 2002-IFC1

PFCA Home Equity Investment Trust II, Series 2002-IFC2

PFCA Home Equity Investment Trust II, Series 2003-IFC4

PFCA Home Equity Investment Trust II, Series 2003-IFC3

PFCA Home Equity Investment Trust II, Series 2003-IFC5

PFCA Home Equity Investment Trust, Series 2003-IFC6

## __EXHIBIT 6__

**Additional Transactions**

Terwin 2006-4SL
Terwin 2006-6SL
2002-RS2
2003-RS7
2003-GH1
2004-J1
American Home
Mortgage Investment
Trust 2005-2
2003-RP1
GSRPM 2003-1

2

## EXHIBIT 7

**Terms of Proposed Servicing Transfer**

## Terms of Proposed Servicing Transfer

| | |
|---|---|
| **Transfer of Servicing** | The Debtors, Ambac and SLS will cooperate in good faith to effectuate transfer of servicing for the 24 Reserved Transactions to SLS prior to the Outside Date. |
| **Payment by SLS** | In connection with the transfer, SLS will pay:<br><br>• 87.5% of the total amount of the verified outstanding advances with respect to the 13 Prepetition Trigger Transactions listed on Exhibit 1.<br><br>• 90% of the total amount of the verified outstanding advances with respect to the 11 remaining Reserved Transactions listed on Exhibit 2. |
| **Cure Amount** | The Cure Amount for assumption and assignment of all Ambac Transactions will be $750,000, payable by the Debtors by wire transfer to Ambac within three (3) business days of the date the Reserved Transactions are transferred as contemplated herein. |
| **SBO Strip[2]** | The Debtors will surrender any and all rights in connection with the SBO Strip to SLS. |
| **Additional Documentation** | The Debtors, Ambac, SLS and the trustees for the Reserved Transactions will take such steps and execute such documents as are reasonably necessary to effectuate the transfer of servicing contemplated herein. |

---

[2]    As of April 1, 2013, subservicing rights for a small subset of mortgage loans contained in the Reserved Transactions are held by entities other than the Debtors and are serviced by such other servicers (the "**SBO Servicers**"), even though the Debtors continue to act as master servicer for these loans.  Wells Fargo Bank, N.A. acts as SBO Servicer for certain mortgage loans in the Terminated Transactions pursuant to a Subservicing Agreement, dated February 1, 2007, as amended by the First Amendment to the Subservicing Contract, dated as of May 1, 2007.  In connection with entry into the First Amendment to the Subservicing Contract, Wells Fargo Bank, N.A., as SBO Servicer, agreed to remit to Debtor Residential Funding Company, LLC payment of 25 basis points per annum (the "**SBO Strip**") based on the aggregate unpaid principal balance of a defined population of loans.

ny-1096666