# **Exhibit 11**

# COOPERATION AGREEMENT

This agreement (the "Cooperation Agreement") is made and entered into as of the Effective Date, by and between the Liquidating Trust and the Kessler Settlement Class. The Liquidating Trust and the Kessler Settlement Class are referred to collectively in this Cooperation Agreement as "the Parties" or individually as a "Party".

## RECITALS

A. On May 14, 2012, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

B. On or about August 23, 2013, the Debtors filed the Joint Chapter 11 Plan of Residential Capital, LLC, et al., dated August 23, 2013 (as amended and supplemented and as confirmed, the "Plan", and the related disclosure statement, the "Disclosure Statement").

C. On or about August 23, 2013, the Bankruptcy Court approved the Disclosure Statement.

F. On August 23, 2013 and [_____], 2013, the Bankruptcy Court entered the Kessler Settlement Approval Orders.

D. On or about [_____], 2013, the Bankruptcy Court issued an order confirming the Plan.

E. On [_____], 2013, the Effective Date of the Plan occurred.

G. The Plan provides for the conveyance, transfer, and assignment of the GM Insurance Rights to the Liquidating Trust and the Kessler Settlement Class on the Effective Date.

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein, the Parties agree as follows:

## DEFINITIONS

Other than the terms defined below or elsewhere in this Cooperation Agreement, capitalized terms shall have the meaning assigned to them in the Plan.

## AGREEMENT

1. The Parties shall cooperate with each other in good faith to coordinate the prosecution of their respective GM Insurance Rights and shall use reasonable efforts not to prejudice the other's GM Insurance Rights, provided that nothing in this Cooperation Agreement shall require either the Liquidating Trust or the Kessler Settlement Class to undertake any efforts that would materially adversely affect the position of the cooperating party.

2. Such cooperation shall include cooperating by bringing any insurance coverage action in a combined action or proceeding to the extent necessary to avoid insurance company defenses based on splitting of a cause of action through partial assignment. To the extent the Parties after good faith consultation cannot agree on the venue or forum for a combined action (if necessary) or on any other action that must be done by the Parties unitarily then each Party shall provide the other party in writing their recommended decision and the reasons therefor with respect to the venue or forum for the combined action or any other action that must be done by both Parties unitarily (the "Writing"). Within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached with respect to the venue or forum for a combined action then each Party shall submit within five (5) days its Writing to an independent arbitrator for a binding and non appealable determination. The independent arbitrator for any such determination shall be: _____. All costs of the independent arbitrator shall be shared equally by the Parties. With respect to any other action that must be done by both Parties unitarily which does not involve the venue or forum for a combined action, within ten (10) days the Parties shall further consult in good faith and if no agreement can be reached then the Kessler Settlement Class shall have the right to select the other action for the Parties that must be done unitarily.

3. Each assignee of the GM Insurance Rights shall bear its own attorney's fees, costs and expenses in pursuing recovery on the rights assigned to it.

4. Except as expressly limited or conditioned in paragraphs 5 and 6, each Party shall have sole settlement authority with respect to its claims subject to the terms of the Kessler Settlement Agreement.

5. Before any Party enters into a settlement involving any of its GM Insurance Rights, it shall give the other Party at least fourteen (14) days' notice of the proposed settlement, and disclose to the other Party any proposed amount to be paid under any of the GM Policies. Settlement can proceed as soon as the other Party consents or the fourteen (14) day notice period has been expired, unless otherwise ordered by the Bankruptcy Court.

6. After any Party enters into a settlement involving any of its GM Insurance Rights, it shall, within fourteen (14) days of entering into the settlement, notify the other Party of the settlement and disclose to the other Party any amounts to be paid under any of the GM Policies. Any settlement entered into by any Party concerning its GM Insurance Rights shall contain a provision authorizing the disclosure to the other Party of the amount to be paid under any of the GM Policies and a provision whereby the settling insurance companies agree to waive any defense of splitting a cause of action or of merger and bar as to the non-settling Party arising out of, relating to, or resulting from the settlement.

7. The Parties to this Cooperation Agreement have common legal interests in connection with potential claims that have been or may be asserted in connection with the GM Insurance Rights ("Common Interests"). To protect and advance those Common Interests, the Parties desire, from time to time, to exchange certain confidential, privileged, and/or work product information among themselves or their counsel, including the thoughts, mental impressions, and strategies of counsel, without waiving otherwise applicable privileges and

protections. The Parties believe that exchanging such information is necessary to further their Common Interests, and, in the event of litigation, their joint defense.

      8. The Parties intend by this Cooperation Agreement to invoke as broadly as is legally permissible the joint defense doctrine and the common interest doctrine with respect to any materials shared pursuant to this Cooperation Agreement.

      9. Any notice required pursuant to this Cooperation Agreement shall be provided by email and by either regular mail or overnight mail, to the following:

<u>As to the Kessler Settlement Class:</u>

R. Frederick Walters
WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main
Kansas City, MO 64105
Emailfwalters@wbsvlaw.com

Bruce Carlson
CARLSON LYNCH LTD.
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Email: bcarlson@carlsonlynch.com

<u>As to the Liquidating Trust:</u>

if to the Delaware Trustee, to:

[_____]
Attention: Trust Administration

if to the Liquidating Trust, to:

[_____]

      10. This Cooperation Agreement shall not create any agency or similar arrangement among the Parties. No Party shall have authority to waive or settle any claims, GM Insurance Rights or other rights on behalf of any other Party; nor shall any waiver or settlement by any Party be construed to apply to any claims, GM Insurance Rights or other rights of the other Party.

      11. This Cooperation Agreement supersedes all prior oral and written understandings, agreements, and arrangements between the Parties with respect to the Cooperation Agreement.

3

For the avoidance of doubt, this Cooperation Agreement does not supersede any other rights and obligations of the Parties as set forth in the Kessler Settlement Agreement, the Plan, the Confirmation Order or the Liquidating Trust Agreement.  Except for those set forth expressly in this Cooperation Agreement, there are no agreements, covenants, promises, representations or arrangements between the Parties with respect to the Cooperation Agreement.

12. This Cooperation Agreement may be altered, amended, modified or waived, in whole or in part, only in a writing signed by all Parties.  This Cooperation Agreement may not be amended, altered, modified or waived, in whole or in part, orally.

13. Each Party to this Cooperation Agreement warrants that it is acting upon its independent judgment and upon the advice of its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Cooperation Agreement.

14. This Cooperation Agreement shall be interpreted, construed, enforced, and administered in accordance with the laws of the state of New York, without regard to conflict of laws rules.  This Cooperation Agreement shall be enforced in the Bankruptcy Court.  The Parties waive any objection that each Party may now have or hereafter have to the venue of such suit, action, or proceeding and irrevocably consent to the jurisdiction of the Bankruptcy Court in any such suit, action, or proceeding, and agree to accept and acknowledge service of any and all process which may be served in any such suit, action, or proceeding.

15. This Cooperation Agreement shall be binding on and shall inure to the benefit of the Parties and their respective successors, assigns, executors, administrators, heirs and legal representatives.  If any additional assignments of GM Insurance Rights are made under the GM Policies, the provisions and obligations under this Cooperation Agreement shall be binding on and extend to any such assignees and their respective successors, assigns, executors, administrators, heirs and legal representatives as set forth in Section 5(b) of the Kessler Settlement Agreement.

16. This Cooperation Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations between the Parties, all Parties have contributed to the preparation of this Cooperation Agreement.

17. With respect to itself, each Party to this Cooperation Agreement represents, covenants and warrants that (a) it has the full power and authority to enter into and consummate all transactions contemplated by this Cooperation Agreement and has duly authorized the execution, delivery, and performance of this Cooperation Agreement, and (b) the person executing this Cooperation Agreement has the full right, power and authority to enter into this Cooperation Agreement on behalf of the Party for whom he/she has executed this Cooperation Agreement, and the full right, power, and authority to execute any and all necessary instruments in connection herewith, and to bind such Party fully to the terms and obligations of this Cooperation Agreement.

4

18. Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, words importing the singular number shall include the plural number and vice versa, and words importing persons shall include firms, associations, corporations, and other entities. The term "including" shall mean "including, without limitation."

19. The Parties acknowledge and agree that any breach of this Cooperation Agreement may result in immediate and irreparable injury for which there is no adequate remedy available at law, and the Parties agree that, in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Cooperation Agreement.

20. Nothing in this Cooperation Agreement shall constitute, or be construed as, an admission that any Party is liable to any other Party or to any person not a party to this Cooperation Agreement. This Cooperation Agreement shall not be admissible in evidence nor shall it be used as evidence in any action or proceeding for any purpose other than for the purpose of enforcing the terms of this Cooperation Agreement.

21. Any provision of this Cooperation Agreement held to be invalid, illegal, or unenforceable shall be ineffective to the extent of such invalidity, illegality, or unenforceability without affecting the validity, legality, or enforceability of the remaining provisions.

22. This Cooperation Agreement may be executed in one or more counterparts, each of which, when so executed, shall be deemed to be an original and all of which taken together shall constitute one Cooperation Agreement. This Cooperation Agreement may be executed and delivered by each Party by facsimile or electronic mail and a facsimile or electronic mail of this Cooperation Agreement when so executed shall be binding as an original.

IN WITNESS WHEREOF, the undersigned parties and their counsel have executed this Cooperation Agreement:

5

Dated: _____          THE KESSLER SETTLEMENT CLASS

                               By: _____
                                   Signature

                                   _____
                                   Printed Name

                                   _____
                                   Title


Dated: _____          THE LIQUIDATING TRUST

                               By: _____
                                   Signature

                                   _____
                                   Printed Name

                                   _____
                                   Title