## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

Residential Capital, LLC *et al.,* Chapter 11

Debtors                                    Case No. 12-12020 (MG)

Administratively Consolidated

## MOTION TO DISQUALIFY JUDGE MARTIN GLENN FROM PRESIDING OVER ANY FURTHER PROCEEDINGS IN THIS MATTER, INCLUDING, BUT NOT LIMITED TO HEARING AND DETERMINING THE DEBTORS' OBJECTION TO THE NORA PROOF OF CLAIM; PRESIDING OVER THE NORA ADVERSARY PROCEEDING;[1] DETERMINING THE EMERGENCY MOTION TO VACATE ORDERS ENTERED ON OCTOBER 9, 2013 AS THEY PERTAIN TO THIS COUNSEL AND HER CLIENTS FILED ON OCTOBER, 11, 2013 DOCUMENT 5343, FROM DETERMINING HER SECOND MOTION FOR EXTENSION OF TIME TO FILE DESIGNATION OF RECORD AND STATEMENT OF ISSUES ON APPEAL FILED AS DOCUMENT 5345; FROM PRESIDING OVER THE CHAPTER 11 CONFIRMATION PROCEEDING ON NOVEMBER 19, 2013 OR ON ANY OTHER DATE; AND FROM PRESIDING OVER PROCEEDINGS SET FOR NOVEMBER 7, 2013 ON ORDER TO SHOW CAUSE INITIATED BY JUDGE GLENN SUA SPONTE (DOCUMENT 5330) FOR PERSONAL BIAS AGAINST HER AND HER CLIENTS, BECAUSE HE IS A WITNESS TO THE ESSENTIAL FACTS UPON WHICH HE SEEKS TO VALIDATE HIS REVOCATION OF THIS COUNSEL'S PRO HAC VICE STATUS AND BECAUSE HIS IMPARTIALITY TO HEAR ANY FURTHER MATTERS PERTAINING TO NORA OR HER CLIENTS MIGHT REASONABLY BE QUESTIONED

Wendy Alison Nora, an interested party in these proceedings and presently revoked counsel in these proceedings, hereinafter "counsel" or "party" as the case may be, moves for the recusal of Judge Martin Glenn from hearing and determining any further matters in these proceedings, including but not limited to the Debtors' Objection to her Proof of Claim as a party; Confirmation of the Chapter 11 Plan over homeowner objections; the adversary proceeding in Nora v. Residential Funding Company, LLC, et al.  Adv. No. 13-1208; the Emergency Motion to Vacate the findings and orders verbally entered on the record of the proceedings on October 9,

---

[1] Nora did not have the ability to knowingly and voluntarily consent to Judge Glenn's continued exercise of jurisdiction at the scheduling conference on her adversary proceeding on October 9, 2013 because she was under threat of bodily removal every time she spoke for her clients and could not consent because she was legitimately in fear of further violations of her rights by Judge Glenn.  See Schneckloth v. Bustamonte,  412 U.S. 218 (1973) for similar circumstances in the criminal context.

2013 (Doc. 5343); the Second Motion for Extension to File Designation of Record and Statement of Issues (Doc. 5345) or the proceedings set for November 7, 2013 on Order to Show Cause (Doc. 5330) initiated by Judge Glenn sua sponte, pursuant to 28 USC secs. 144 and 455(a) and (b)(1) and shows the Court:

     1.   On October 9, 2013, Judge Martin Glenn, without notice or opportunity for this counsel to be heard, found the Papas Response to Debtors' Objection "scurrilous"[2] and proceeded to escalate sanctions against this counsel, threatening her with bodily seizure without probable cause (when she was not acting in any way contemptuous of the dignity of the Court) and ultimately verbally "revoked" her pro hac vice admission to the detriment and damage of six (6) clients[3] for whom she entered Notices of Appearances and one (1) client[4] for whom she was authorized to appear. This Court has the authority to sanction counsel for filing "scurrilous" pleadings sua sponte under Rule 11 and 28 USC sec. 1927 in accordance with the procedures set forth in Bankruptcy Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure (FRCP), but must afford her the procedural and substantive due process protections of the Fifth Amendment to the United States Constitution, the equal protection clause of the Fourteenth Amendment to the United States Constitution by reverse incorporation, her First Amendment rights as well as and the procedural requirements of FRCP 11(c)(3) and protect her clients' rights thereunder as well as under the First Amendment to the United States Constitution, which guarantees them the right to petition the judiciary for redress of grievances and, here, in this case, their grievances are proceeding against entities which are subsidiaries of Ally Financial, Inc. (AFI) and are more than 50% owned by the United States Treasury.

     2.   This Motion is filed within three (3) days of the October 9, 2013 first display of

---

   [2]  Various primary definitions of "scurrillous" include: 1. Adjective. Expressing offensive reproach; Using the low and indecent language of the meaner sort of people, or such as only the license of buffoons can warrant; 1. Adjective. (context: of a person) given to vulgar verbal abuse; foul-mouthed: 2. Adjective. (context: of language) coarse, vulgar, abusive, or slanderous, which plainly does not apply to the Papas Response. Nora is well bred and does not use coarse, vulgar or abusive language. If Judge Glenn believes that the use of the legal terms forgery, perjury, fraud in the context of these proceedings is libelous, he would have to believe (1) that counsel for a party litigant does not have a litigation privilege to make statements believed in good faith to be true and (2) that AFI did not plan this bankruptcy in order to seek protection from its mortgage fraud liabilities by withholding financial support from its subsidiaries, bankrupting them and then attempting to obtain a Third Party Release for a mere contribution of 2.1 billions dollars, which is far less than its liabilities on securities fraud and mortgage foreclosure fraud which warrants the revocation of its charter as well.

   [3]  Shane Haffey of Lexington, Kentucky; Caren Wilson of Culpeper, Virginia; Michael Harkey of Seattle, Washington; Melvin and Suzanne Simonovich of Pleasant Prairie, Wisconsin; Paul Papas of Phoenix, Arizona

   [4]  Jan Ibrahim of Plainville, Massachusetts

extreme bias and prejudice against this counsel and her clients and within two (2) days of his filing of the Order to Show Cause which Judge Glenn knows or reasonably should know he is disqualified from hearing.

3.   Judge Glenn has already pre-judged the outcome of the Order to Show Cause over which he purports to be qualified on November 7, 2013 on October 9, 2013 by the following conduct:

a.   Judge Glenn declared a perfectly proper Response to Debtors' Objection to Claim #242 filed by Paul N. Papas II and found it to be "scurrilous," an allegation not made by the Debtors or any other interested party and as to which this counsel had no notice or opportunity to respond and then proceeded to declare that the order he signed granting this counsel pro hac vice status (Doc. 482) was a "mistake";

b.   Judge Glenn stated on the record of the October 9, 2013 as to Caren Wilson's Response to the Debtors' Objection to her Proof of Claim that she should seek other counsel because this counsel's pro hac vice status was "going to be revoked," demonstrating that he had already decided to revoke this counsel's pro hac vice status;

c.   And then, on October 9, 2013, in the third matter in which this counsel appeared, Judge Glenn **revoked** the pro hac vice admission of this counsel and wantonly disallowed the claim of Jan Ibrahim (Claim #997) for failure to appear and argue his response when counsel was present in the courtroom to argue on his behalf.

4.   It is clear from the proceedings on October 9, 2013 that Judge Glenn has not only *already decided to revoke* the pro hac vice status of this counsel, he has *already actually revoked* her pro hac vice status.   By his  verbal orders entered on the record of the October 9, 2013 proceedings, vacation of which are sought by  Motion to Vacate filed on October 11, 2013, it cannot be denied that Judge Glenn's impartiality might reasonably be questioned [28 USC sec. 455(a)], and that he has a personal bias against this counsel and her clients [28 USC sec. 455(b)(1) and 28 USC 144] which was evident to all witnesses in the courtroom and listening telephonically.

5.   On October 10, 2013, Judge Glenn entered an Order to Show Cause why this counsel's pro hac vice status should not be revoked.[5] (Doc. 5330)  Judge Glenn has already

---

[5]  While one might be grateful for the scheduling this counsel's personal appearance on the post facto Order to Show Cause on the same date upon which this counsel is also scheduled to appear as a party to defend her own claim to the extent that it might save travel expenses and lost work hours from the travel.  It is not a courtesy extended by Judge Glenn, however.  If he were qualified to continue in these proceedings, he could further oppress this counsel in her capacity as an individual.  This counsel is very familiar with the abuse inflicted on parties and their counsel by some judges handling matters which affect the rights of homeowners as opposed to mortgage servicers and in all of her cases she has never

entered a verbal order declaring the pro hac vice order to have been a "mistake." Judge Glenn is the person who signed the order. Only Judge Glenn can testify to the underlying facts which caused him to sign the pro hac vice order, his state of mind when he signed the order, what caused him to sign the order and why he now believes that he signed the order by mistake are all matters of his own personal knowledge. Judge Glenn was not "tricked" by this counsel. It is not known whether he was coerced or under duress when he signed the pro hac vice order or whether the change of position could be the result of coercion or duress after he approved the order.

6. The pro hac vice order admitting this counsel, which she drafted for the Court's consideration, plainly states that this counsel is admitted to represent herself and all others similarly situated. This counsel never made a representation to the Court that she had or was seeking admission to be counsel for a *class* of thousands of homeowners who are the victims of the GMAC Racketeering Enterprise or sought class certification under Rule 23 of the Federal Rules of Civil Procedure (FRCP.) Class action certification was rendered impossible to establish sufficient common facts to obtain class certification by the nature of the GMAC Racketeering Enterprise which bought, sold, securitized, serviced and repurchased millions of pieces of collateral (consisting of notes and mortgages or deeds of trust) and thereby created diverse facts in virtually every homeowner case under the standard set forth in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541 (2011). Instead, this counsel, as an individual party, seeks to prove the nature, scope and extent of the GMAC Racketeering Enterprise as the basis for punitive damages in her action. She seeks to proceed to show that Ally Financial, Inc. (AFI) formerly known as GMAC Financial Services, its partner between 2006 and early 2009 and now second largest shareholder, Cerberus Capital Management, LP (Cerberus), the subsidiaries of AFI, its agents, employees and associated entities acted in concert to cause the injury to this counsel and all other homeowners and their counterparties affected by these proceedings.

7. Judge Glenn is the only witness to the facts which underlie his sua sponte declaration, followed by a sua sponte Order to Show Cause and must be disqualified as a witness to the facts upon which he now seeks to *justify the **revocation*** of this counsel's pro hac vice status *after the fact.* Judge Glenn cannot impartially and neutrally preside over his own sua sponte Order to Show Cause because he has already revoked this counsel's pro hac vice status. The Order to Show Cause of October 10, 2013, therefore, is worse than the old joke that the suspect is entitled

_____

encountered the level of oppression imposed upon her by Judge Glenn. Any human being knows, and the oppressive servicer-advocating judges are human whether they admit it or not, that it takes a great deal of endurance to advocate a position when the presiding judge is actively attempting to humiliate the advocate (or pro se homeowner.) Judge Glenn has exceeded the tactic of humiliation by going to the extreme of threatening bodily seizure and removal of an officer of the Court which is, beyond any reasonable doubt, proof of his now extreme bias and prejudice against Nora and her client. The combination of the two proceedings would require enormous endurance by this counsel defending herself against the unjust, intemperate and unconstitutional conduct of Judge Glenn as to her pro hac vice status, already revoked, in addition to defending her Proofs of Claim. Fortunately, the law of the United States does not permit such abuse of counsel and parties in civil proceedings. Judge Glenn is disqualified from proceeding on any matter pertaining to Ms. Nora and her orphaned clients.

to a "fair" trial before the execution.   The Order to Show Cause is post facto.  The mockery of
due process represented by the post facto Order of October 10, 2013 would provide an *unfair
trial after the execution*.  Even the Star Chamber of the Bloody Assizes provided unfair trials
*before* the execution.

8.  This Motion to Disqualify Judge Martin Glenn from further proceedings involving
Wendy Alison Nora and her now orphaned clients is filed within less than five (5) days of the
October 9, 2013 first irrefutable display of bias against this counsel and her clients and within
three (3) days of his filing of the Order to Show Cause which he knows or reasonably should
know he is disqualified from hearing.  Whereas 28 USC sec. 144 provides archaically for the
filing of a timely and sufficient affidavit of personal bias or prejudice against this counsel as a
party and her clients "not less than ten days before the beginning of the term at which the
proceeding is to be heard," there is no term defined for most modern proceedings (except before
the United States Supreme Court, to this counsel's knowledge) and this Motion and supporting
Declaration under Penalty of Perjury pursuant to 28 USC sec. 1746 is made more than 10 days
before the date scheduled for the proceeding set to be had by Order to Show Cause on November
7, 2013 and is believed to be timely as well as sufficient.  In the alternative, 28 USC secs.  455(a)
and (1)(b) provide for the disqualification of Judge Martin Glenn without the 10 day pre-term
limitation.
***********
8.  In addition to the shocking display of virulent bias and prejudice against this counsel
and her clients on October 9, 2013, the Order to Show Cause contains indisputable evidence of
Judge Glenn's personal bias against her clients.   At ¶1 of the Order to Show Cause, Judge Glenn
writes:

1. Nora shall appear in person at a hearing on November 7, 2013, at 2:00 p.m., to
show cause why her appearance as counsel *pro hac vice* on behalf of anyone other than
herself should not be revoked (assuming that such approval was ever granted). Nora's
response shall also address what, if any, action or orders the Court should enter **to protect
the rights, *if any*, of the individuals on whose behalf Nora has sought to appear**, in
the event her *pro hac vice* admission is revoked.

9.  All individuals have rights.  All individuals whose homes have been taken by these
Debtors upon forged and perjured documents have claims against these Debtors.  This counsel
can easily demonstrate that the individuals have rights but Judge Glenn's Order to Show Cause
starts with a heretofore never acknowledged suggestion that the individuals' rights, "if any,"
should be protected.  Nothing could more clearly demonstrate Judge Glenn's personal bias
against the individual homeowners in these proceedings than his own signed Order to Show
Cause that this counsel, now already banned from their representation by a pre-due process
revocation of her pro hac vice admission to represent individual homeowners, should show cause
that *whether these individuals have **any rights*** in these proceedings.

10.  Although Judge Glenn acknowledges that this counsel may represent her own

interests in these proceedings pro hac vice, there is no need for her to have applied for or obtained a pro hac vice admission to represent her own interests.  She, like thousands of other homeowners (hundreds of whom have already had their interests summarily disallowed by constitutionally defective process) is entitled to proceed on her own behalf.   It is oxymoronic to suggest that an individual who is an attorney may be permitted to appear pro hac vice on her own behalf.  She has no need for a pro hac vice admission order to represent herself.

11.  Judge Glenn's intemperate, threatening, accelerating to explosive and ultimately unhinged ragings in the three (3) matters in which she appeared for clients on October 9, 2013 unmasks Judge's Glenn's consistent bias against this counsel as an individual and representative of the public interest throughout these proceedings in which he has belittled her positions, prevented her from arguing positions on her own behalf and on behalf of clients.  With some satisfaction, Judge Glenn, who is obviously overburdened by the issues before him as they pertain to the frauds he has allowed to continue to be committed against homeowners throughout the nation under color of his Final Supplemental Servicing Order (Doc. 774) states that he refused to consider the Objections to the Entry of that Order and declined to reconsider it because the Objections of Nora, Papas and Elliott were "frivolous."

12.  It is **per se not frivolous** to challenge an unprecedented effort by the Debtors to operate under judicial authorization from this Court to continue to foreclose on real estate throughout the nation, judicially and nonjudicially, using forged and perjured documents.[6]

---

[6] Nora's appeal from the Final Supplemental Servicing Order is believed to be still on appeal. From her experience representing homeowners in the current fictitious foreclosure "crisis" and the engineered Farm Crisis of the 1980s, the Courts tend to declare serious challenges to financial fraud "frivolous" because judges seem to believe that the old common law governing the relationship between creditors and debtors can be applied to modern financial machinations.  In both of the engineered modern financial "crises," securities fraud is the common feature.  In the Farm Crisis, the farmers where shareholders of the Production Credit Association (PCA) and the Federal Land Bank (FLB) and those institutions were violating their fiduciary duty to the farmer shareholders by declaring their "loans" due on demand upon the commercial loan term that the lender could "deem itself insecure" without a default. Confronted with the ubiquitous securities fraud in which the farmers could prove that they were shareholders of unissued stock, the land grab was effectively terminated by the creation of Chapter 12 of Title 11 of the United States Bankruptcy Code.  As to the homeowners, the overwhelming majority of the "defaults" were engineered by servicers soliciting loan modifications, after the purported "trustees" for many of the empty REMIC trusts (Deutsche Bank, HSBC, JPMorgan Chase, subsidiaries of Bank of America and Wells Fargo) a number of which were on the LIBOR (London Interbank Offered Rate) panel for the United States and Europe and manipulated the LIBOR rates, crashed the global economy, held the economy of the United States hostage to coerce a "bailout," accepted trial plan payments (TPP) and proceeded on a "dual track" to foreclose using forged documents purporting to grant the servicers standing, often created by servicers' employees, once the Mortgage Electronic Registration Systems, Inc. (MERS) scheme was exposed and MERS could no longer foreclose in its own name.  The securities fraud in this case is more difficult to expose than the securities fraud which lay beneath the agricultural land grab of the 1980s, which former Federal Reserve Chairman Paul Volcker essentially admitted was engineered to consolidate valuable United States farm land and destroy the family farm as a substantial

These Debtors and other mortgage servicers throughout the nation have rejoiced in the success of their frauds against courts in 23 judicial foreclosure states and in 27 nonjudicial foreclosure states which require foreclosure in the name of the holder of the beneficial interest in mortgages or deeds of trust upon forged and perjured documents in thousands of cases. As argued by Paul N. Papas II, pro se and by this counsel; by Ray Elliott represented by this counsel, by this counsel as an individual; by Attorney Robert E. Brown in the named homeowners' efforts to have this Court appoint a "Borrowers'" Committee (Doc. 1264) in which this counsel joined and replied to the Objections of Debtors and the Committee of Unsecured Creditors and sought to clarify that the name "Borrowers" should be replaced with "Homeowners;" by Corla Jackson, pro se (See Motion to Lift the Automatic Stay Denied at Doc. 1184); by Kenneth Taggart, pro se, on various motions until he was thoroughly intimidated into silence by Judge Glenn's threats of sanctions; and dozens of other pro se homeowners in these proceedings, the Debtors have been using forged documents to confiscate homes in foreclosure. Attorney Robert E. Brown, as proposed "Borrowers'" Committee Counsel, this counsel and many others had been denominating the process of foreclosing upon homes using forged documents as "robo-signing" in 2012, but robo-signing is forgery and swearing under oath that forged documents are genuine and authentic is perjury. Debtors and their diverse counsel throughout the nation then come to this Court and other federal and state courts and argue that the now nearly mortally wounded *Rooker-Feldman* doctrine,[7] res judicata and collateral estoppel prevent or preclude actions for damages resulting from foreclosures perpetrated on forged and perjured documents, when the evidence of forgery and perjury is discovered after the GMAC Racketeering Enterprise successfully defrauded the courts, homeowners and counsel for the homeowners wholly ignoring the fundamental Rule of Law that no rights can be granted on the basis of forged documents and the foreclosures titles so obtained are void.

---

economic unit. (See William Grieder's <u>Secrets of the Temple</u> © 1987 Touchstone, an imprint of Simon & Schuster, Inc.) The securities fraud in this case involves actually taking homeowners' signatures on notes and mortgages and using those instruments as collateral for securities offerings without the homeowners' consent, which is identity theft as defined at 18 USC sec. 1028, violates the Uniform Electronic Transfers Act and is wire fraud in violation of 18 USC sec. 343. These facts are far from frivolous and Nora, Papas and Elliott all sought, with Nora as their counsel, to be heard in order to advise the Court that the Final Supplemental Servicing Order would strip homeowners of their rights to offset their damages against the debts claimed by the servicers and to obtain counsel, whose attorneys' fees could be awarded under RESPA, TILA and the FDCPA. Not only were the Objections to the Final Supplemental Servicing Order not frivolous, but they were *essential* to prevent the wholesale denial of homeowners' rights in foreclosure proceedings. Now, Judge Glenn is personally responsible for the wholesale deprivation of the rights of homeowners against whom AFI, through its subsidiaries as servicers and substitute trustees under deeds of trust, sought to proceed under the Final Supplemental Servicing Order. (Doc. 774)

[7] See Justice Stevens' concurring opinion in <u>Marshall v. Marshall</u>, 547 U.S. 293 (2006), in which he declares that the Rooker-Feldman doctrine deserves a decent burial.

13.    The provable facts are that the Real Estate Mortgage Conduit (REMIC) trusts are empty and have largely been extinguished and were originally created by GMAC Financial Services in the names of numerous and various subsidiaries, many of which are consolidated before this Court in order to resell the collateral multiple times.   The homeowners were duped into believing that they were being provided with mortgages, when, in fact, the closings they attended were not mortgage loan closings in reality, but were fraudulent transactions appearing to be mortgage loan closings, in which the goal of the "loan" originators was to obtain collateral for securities which had already been sold to investors.

14.    Having reviewed most of the important documents in the case before this Court, this counsel's broad interest in stopping the fraud being committed under Court orders issued by this Court, this counsel originally thought that Judge Glenn did not have sufficient information to enter a number of the Orders.   As the case progressed, Judge Glenn showed a distinct unwillingness to hear the concerns of the homeowner creditors, intimidating this counsel in her individual capacity, intimidating Kenneth Taggart in his individual capacity, denying Corla Jackson procedural due process by making it appear that she had not properly requested her right to be heard by interpreting her pro se language in an arcane way which she could never have intended and refusing to lift the automatic stay on proper motions, such as those of Ms. Jackson, Mr. Papas and Mr. Taggart in order to allow them to defend their interests in state court proceedings.   The Orders of this Court reviewed by this counsel have consistently denied relief from the automatic stay and have displayed a wholesale misunderstanding of the unique nature of real estate, the importance of the Statute of Frauds and their statutory equivalents and have strangely concluded, in the Taggart matters, that foreclosures are *in rem* as if damages cannot be offset from the debt upon which the foreclosure claim is based.    Foreclosures are *in personam* actions at equity.   To obtain an equitable remedy, the party seeking equitable relief must have clean hands.   By bifurcating homeowners' personal damages claims from their personal equitable rights of redemption at common law and under state statutes and by allowing the foreclosures to go forward on forged documents which this Court was urged to stop early in these proceedings, and had the authority and duty to prevent, Judge Glenn has been presiding over a Chapter 11 case in which the Debtors have been liquidating real estate confiscated on forged and perjurious documents and false public filings and he has affirmatively aided the Debtors in obtaining more assets for liquidation through the same scheme in this action.[8]

---

[8]   In order to have this global understanding, one would have to listen to numerous hearings before Judge Glenn, which this counsel has done and would have to review hundreds of documents. Judge Glenn has generally adopted a warm and paternalistic persona except as to this counsel, Mr. Taggart, Mr. Papas and, in the final analysis as to Corla Jackson.  Listening to any single hearing would suggest that Judge Glenn was sympathetic to the fate of homeowners struggling under the Final Supplemental Servicing Order entered on July 13, 2013 over objections of Ray Elliott, Mr. Papas and this counsel, all of whom were denied hearing thereon, but, like Pontius Pilate, relief for the innocent was simply not within his jurisdiction.  The Final Supplemental Servicing Order was entered by Judge Glenn and he has now shown himself to be fully capable of attempting to vacate his own Order months after he entered it (Nora's pro hac vice order of admission) but he has stubbornly denied relief from the automatic stay to every homeowner, whether represented or unrepresented by counsel, acting as if he could not help

8

15.    Judge Glenn, ex cathedra, has placed this counsel under anathema to silence her and deprive her clients of the only voice which can integrate the facts and demonstrate that the numerous orders of this Court are legally unsupported. Debtors and Judge Glenn, with the support of the Unsecured Creditors Committee representing the trustees of the empty REMIC trusts and the monoline insurers who believe that they paid the investors on the basis of engineered "defaults," have followed the clearly admitted strategy of AFI to "file these chapter 11 cases and seek an early sale of its significant mortgage-related businesses [in which] AFI's goal was obviously to isolate its money-losing businesses and shed as much of the present and future liabilities associated with those businesses as possible." (Doc. 1921, at pages 5-6, Final Supplemental Servicing Order, appealed only by Nora, but for which Ray Elliott and Paul N. Papas II, represented by Nora, also sought to be heard but were denied hearing and sought reconsideration, denied by Judge Glenn on the basis that their concerns were frivolous.

16.    Judge Glenn is a witness to his own state of mind when he signed the pro hac vice Order upon which this counsel has appeared for homeowners and which he verbally revoked on October 9, 2013 in advance of entering the Order to Show Cause on October 10, 2013 by which he now seeks post facto to create the appearance that he is providing some form of due process. Judge Glenn has declared the pro hac vice order to be a "mistake." A "mistake" is a mixed issue of law and fact must be proved by evidence. Judge Glenn, as signer of the pro hac vice order is, therefore, a witness to the facts upon which the "mistake" was purportedly made. Judge Glenn has no jurisdiction to grant relief from his own mistake except within 28 days after its entry under Bankruptcy Rule 9023 or under Bankruptcy Rule 9024 incorporating FRCP 60(a). Under FRCP 60(a) "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The mistake at issue must be shown to be a clerical mistake or a mistake arising from an oversight or omission. Judge Glenn is a material witness to the purported mistake because he signed the order and is now challenging his own order. This counsel respectfully asserts that there was no mistake and that Judge Glenn has suddenly realized that, whereas almost all homeowner voices are on the verge of being silenced, not only do a few very loud voices remain (Nora, Papas and Nora's clients) and a pretext must be found to silence those voices. Hence, Judge Glenn's is now disqualified from his effort to silence the voices of those homeowners whose interests he belittles by describing their property rights and damages from the loss of those rights as ***rights, if any.***[9]

---

but bifurcate the homeowner's rights to damages for offset against debts claimed by these Debtors in state court and other foreclosure proceedings from the foreclosure action itself. Since the entry of the First Day Orders by Judge Peck which included an interim Order allowing foreclosures to continue throughout the nation and requiring damages to be prosecuted in this Court which is hundreds and thousands of miles from the situs of the homes being foreclosed, the Debtors have used the automatic stay as a sword and a shield since the commencement of these proceedings.

[9] Pardon the repetition but this counsel who has practiced constitutional law for over 38 years cannot stop ruminating over the prejudicial notion expressed by Judge Glenn that her clients might not have any rights to be protected in these proceedings. There is no other reasonable interpretation of his

17.    There was no mistake in entering the pro hac vice order (Doc. 482.)  The Local
Rules of this Court permit pro hac vice counsel to appear without the requirement of local
counsel.  No where in Local Rule XXX is pro hac vice counsel required to give a list of her
clients.  The purpose of the pro hac vice admission was exactly as stated: to represent any of the
thousands of homeowners who might need her assistance during the course of these proceedings.
This counsel is not required to be class counsel for such a purpose and indeed, under the holding
of Wal-Mart Stores, Inc. v. Duke, 131 S.Ct. 2541 (2011), she could not have been.  Rather, her
appearance in these proceedings is perfectly proper under the standard set by the United States
Supreme Court in  Powers v. Ohio, 499 U.S. 400, 410-411 in which the United States Supreme
Court stated:

> [410]
> . . .
> We must consider whether a criminal defendant has standing to raise the equal protection
> rights of a juror excluded from service in violation of these principles. In the ordinary
> course, a litigant must assert his or her own legal rights and interests, and cannot rest a
> claim to relief on the legal rights or interests of third parties. Department of Labor v.
> Triplett, 494 U.S. 715, 720, 110 S.Ct. 1428, ----, 108 L.Ed.2d 701 (1990); Singleton v.
> Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This fundamental restriction
> on our authority admits of certain, limited exceptions. We have recognized the right of
> litigants to bring actions on behalf of [411] third parties, provided three important
> criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him
> or her a "sufficiently concrete interest" in the outcome of the issue in dispute, id., at 112,
> 96 S.Ct., at 2873; the litigant must have a close relation to the third party, id., at 113-114,
> 96 S.Ct., at 2873-2874; and there must exist some hindrance to the third party's ability to
> protect his or her own interests. Id., at 115-116, 96 S.Ct., at 2874-2875. See also Craig v.
> Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). These criteria have been
> satisfied in cases where we have permitted criminal defendants to challenge their
> convictions by raising the rights of third parties. See, e.g., Eisenstadt v. Baird, 405 U.S.
> 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85
> S.Ct. 1678, 14 L.Ed.2d 510 (1965); see also McGowan v. Maryland, 366 U.S. 420, 81
> S.Ct. 1101, 6 L.Ed.2d 393 (1961). By similar reasoning, we have permitted litigants to
> raise third-party rights in order to prevent possible future prosecution. See, e.g., Doe v.
> Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973).

18.    This counsel, who is also a party proceeding in this Court on her Proof of Claim #1
filed in this Court in her individual capacity and on behalf of all others similarly situated, and
individually on her Proof of Claim #440 [recorded in the private data base operated by Kurtzman
Carson, LLC (KCC, LLC)] has suffered an injury in fact and has a "sufficiently concrete interest"
in the outcome of the disputes affecting the rights of homeowners and their counterparties to
participate individually and for those unable to protect their own interests in these proceedings.

---

chosen phrase her clients' "rights, if any" in the October 10, 2013 Order to Show Cause.

Her injury creates a close relation to the injuries suffered by those on whose behalf she sought pro hac vice admission to represent and those for whom she is constitutionally authorized to appear pro hac vice, but for the unconstitutional, oppressive, biased and prejudiced actions of Judge Martin Glenn on October 9, 2013, which cannot be cured by a post facto Order to Show Cause entered on October 10, 2013.  She reserves her right to brief the *Powers v. Ohio*, supra, standard in Response to the Order to Show Cause (Doc. 5330) to be filed herein.  At this juncture, she has moved to vacate Judge Glenn's three (3) unconstitutional, increasingly oppressive, biased and prejudicial findings and orders on the record of the proceedings on October 9, 2013 as to Papas, Wilson and Ibrahim, which impact the rights of other clients of this counsel for whom she has appeared[10] and others who she has counseled, assisted with their proofs of claim or are otherwise affected by these proceedings but for whom it was not yet necessary for her to appear in these proceedings.[11]

19.    Many of Judge Martin Glenn's Orders can be shown to be mistaken in fact and law, but most notably the Final Supplemental Servicing Order; the failure to grant homeowner motions to lift the automatic stay; the failure to require the Debtors to list all their assets or be subject to conversion to Chapter 7 proceedings;  the various orders allowing the sales of property not owned by the Debtors;  and the Order Approving the Disclosure Statement, in which not a single finding of fact supporting the adequacy of the information is made, all of which were entered without procedural and substantive due process and are *void ab initio*.  However, the Order Granting Pro Hac Vice Status to Wendy Alison Nora was not a mistake.  The only reason Judge Glenn now thinks it is a mistake is because Ms. Nora is the only party who is also counsel to some of the homeowners, who has been actively involved in tracking these proceedings and is postured to use the knowledge she has of the record in these proceedings as well as the arcane knowledge of securitization fraud which she has endeavored to obtain and which Ms. Wilson's expert witness has enhanced to a much higher level, along with her long-standing work in fictitious foreclosure actions, in which she has finally developed a protocol for analyzing and

---

[10]  Melvin and Suzanne Simonovich of Pleasant Prairie, Wisconsin, Shane Haffey of Lexington, Kentucky and Michael Harkey of Seattle, Washington.

[11]  Judge Glenn can probably imagine that this counsel was intending to object to the confirmation of the Chapter 11 Plan,  which contains an unconscionable Third Party Release for benefit of AFI.  AFI and its largest shareholder, Cerberus will benefit from an inappropriate application of a rare bankruptcy, not supported on these facts, so that AFI and Cerberus can continue to use TARP funds for their overseas development of the GMAC automobile parts manufacturing project in China.  Counsel for the homeowners planned to argue on behalf of those whose claims have yet to be disallowed by this Court on Motion of the Debtors that the Plan cannot be confirmed.  Judge Glenn even had to question the authority under his own claims processing order how homeowner claims could be disallowed on the basis that the liability does not appear in the Debtors' books and records and Judge Glenn properly stated that he did not expect that RICO claims would be disclosed in the Debtors' books and records.  Nevertheless, the notion that Debtors can disallow any valid claims on the grounds that the liability does not appear in their books and records is not authorized by the United States Bankruptcy Code or the Bankruptcy Rule 3007.

11

proving document forgery after years of specialized research.   Ms. Nora has familiarity with bankruptcy proceedings and the actual law required therein and not the prohibited expansion of Debtors' authorities granted by Judge Glenn outside his jurisdiction under the auspices of 11 USC sec. 105, by which he has legislated entirely new rules and procedures, contrary to the law.

20.   Judge Glenn's actively displayed bias and prejudice on October 9, 2013 exposed what his real bias has been all along: he will order whatever it takes to assure that the homeowner claims are marginalized, extinguished and crammed down into a pitiful Borrowers' Claims Trust of 57.6 million dollars, pro rata to those who survive the unconstitutional and unlawful processes being executed in these proceedings.  Should this travesty be allowed occur, AFI will shed the legacy mortgage fraud liabilities in the proceedings it designed as a strategy to escape from its liabilities without filing bankruptcy and  will be ratified by Court order.  Furthermore, the Final Supplemental Servicing Order [Doc. 774] by which the trustees of the empty REMIC trusts benefitted from the bankruptcy estate's payment of fees to foreclosure counsel (who had the easy task of pursuing foreclosures without facing monetary counterclaims in the same actions);  the enormous costs of the Unsecured Creditors Committee, its counsel, the faux "Special Borrowers' Counsel" appointed to the serve the Debtors and not the homeowners;[12] the wholly useless appointment of an examiner who did not look at a single forged mortgage note, assignment or deed of trust in assessing AFI's liability to its subsidiaries at a cost of 83 million dollars to the estate long after Berkshire Hathaway, which moved for the examination walked off with 50,000 "whole loans" for an average of $30,000.00 each; the enormous expenses of Debtors' counsel; Debtors' expert witnesses;  Debtors' business consultants;  Debtors' conflicts counsel; Debtors' management; Debtors' Chief Restructuring Officer;  Debtors' ongoing business operations, etc. The icing on this cake of complete disregard of the homeowners interests, whose property has been confiscated and sold on forged and perjured documents is that AFI and its City of London accomplice, Barclays, had priority and superpriority claims for operating the DIP facility and lending to the Debtor during the course of these proceedings, which have appear to have been already paid.  The bankruptcy estate will be, if it is not already, administratively insolvent, which was the strategy of AFI and Cerberus and their allied officials in the United States Treasury and the Federal Reserve Banks all along.

21.   This counsel is not unsympathetic to Judge Glenn's dilemma in facing powerful forces because she does it all the time.  She is but a "simple, country lawyer" who has "cut into the apple" in the effort to find the reason for the destruction of her nation's property rights.[13]

---

[12] This can easily be proved on dozens of documents in the record and was noted on October 9, 2013 when Judge Glenn had to explain to Attorney Nosek that he had to file a brief separate from that of the Debtors because he, as "Special Borrowers' Counsel" was representing interests other than the Debtors.

[13]  In the movie Anatomy of a Murder, from the novel of the same name written by a Michigan Supreme Court judge, Jimmy Stewart plays the "simple, country lawyer" who begs the judge presiding over the murder trial to let him cut into the apple to prove that the defendant's wife was raped.  This simple, country lawyer has cut into the apple and has been begging this Court to let the homeowners be

Judge Glenn made the wrong choice, aligning himself so obviously with the Debtors because of the powerful forces which direct them, and he has lost all objectivity and neutrality required of a judge.

WHEREFORE, the undersigned moves for the disqualification of Judge Martin Glenn and the appointment of a judge qualified to preside in this case.

Dated at Madison, Wisconsin this 13th day of October, 2013.

ACCESS LEGAL SERVICES

*/s/ Wendy Alison Nora*
Wendy Alison Nora,
presently proceeding pro hac vice on her own behalf only
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026
accesslegalservices@gmail.com

**UNSWORN DECLARATION OF UNDER PENALTY OF PERJURY**

Wendy Alison Nora states under penalty of perjury pursuant to 28 USC sec. 1746, that facts set forth in the foregoing Motion are true and correct, according to the best of her knowledge information and belief.

*/s/ Wendy Alison Nora*
Wendy Alison Nora

**UNSWORN DECLARATION OF SERVICE**

Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York October 13, 2013 by CM/ECF and thereby served the same on all parties capable of service thereby.

*/s/ Wendy Alison Nora*
Wendy Alison Nora

---

heard. Judge Glenn is not the Court, but is merely a judge of the court. He has disqualified himself to hear anything related to this counsel, her clients, the homeowners of which she is one, as an individual party, seeking to be heard and to provide her clients and others similarly situated with a voice, based upon her knowledge and experience. She begs the Court to appoint a judge qualified to protect the rights of all parties to this action in their lawful and respective relationships to the estate.