B 10 Modified (Official Form 10) (12/11)

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** — **PROOF OF CLAIM**

Name of Debtor and Case Number: GMAC Mortgage, LLC, Case No. 12-12032

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Elevenhome Limited

Name and address where notices should be sent:

Lawrence Kellogg and Amanda Frazer
Levine Kellogg Lehman Schneider + Grossman, LLP
201 S. Biscayne Blvd., 22nd Floor
Miami, FL 33131

Telephone number: 305-403-8788 email: af@lklsg; jmh@lklsg.com; lak@lklsg.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** 5718 (*If known*).

Filed on: 11/16/2012

☒ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

Telephone number: email:

**1. Amount of Claim as of Date Case Filed:** $ See Attached

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Judgment against American Residential Equities, LIII, LLC alter ego of American Residential Equities, LLC
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:** | **3b. Uniform Claim Identifier (optional):** |
|---|---|---|
| ___ ___ ___ ___ | (See instruction #3a) | (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate ☐ Motor Vehicle ☒ Other
**Describe:**
**Value of Property:** $________ **Annual Interest Rate**______% ☐ Fixed ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $________ **Basis for perfection:** See Attached

**Amount of Secured Claim:** $ See Attached **Amount Unsecured:** $ See Attached

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$________

* *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Claim Pursuant to 11 U.S.C. § 503(b)(9):**
Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before May 14, 2012, the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim.
$________ (See instruction #6)

**7. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**9. Signature:** (See instruction #9) Check the appropriate box.

☒ I am the creditor. ☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.) ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Paul DeStefanis
Title: Manager
Company:
(Signature) (Date)
Address and telephone number (if different from notice address above):

Telephone number: 305 975-7549 Email: paul@bizvaluations.com

COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**PROOF OF CLAIM ATTACHMENT FOR ELEVENHOME LIMITED**
**(Related to Proof of Claim No. 5718, Bankruptcy Case No. 12-12032)**

Claimant, Elevenhome Limited ("Elevenhome"), is a creditor of American Residential Equities LIII, LLC ("ARE 53") by virtue of its $6,650,435.13 final judgment ("Judgment")[1] against ARE 53 entered on March 7, 2011 in Case No. 08-65603-CA-40, Miami-Dade County, Florida Circuit Court ("Florida Case"). As a judgment creditor of ARE 53, Elevenhome is entitled to execute on the assets of American Residential Equities, LLC ("ARE LLC") because ARE 53 is the alter ego of ARE LLC. Thus, Elevenhome has a direct interest in the assets of ARE LLC that are subject to execution to satisfy the Judgment; these include ARE LLC's assets that are the subject of ARE LLC's Claim Number 5718 in the bankruptcy case of GMAC Mortgage, LLC ("Debtor"), Bankruptcy Case No. 12-12032, and Adversary Proceeding No. 12-01934 ("Adversary Proceeding"), as well as distributions made to ARE LLC on account of Claim Number 5718 and/or the Adversary Proceeding.

Without joining Elevenhome in the Adversary Proceeding, the Amended Complaint seeks declaratory relief that the trust assets are property of ARE LLC, in its individual capacity and as trustee. Elevenhome disputes this contention, and believes that such assets are not validly trust assets, and are subject to execution. As a result, Elevenhome will seek intervention in the Adversary Proceeding to protect its interest in the assets at issue, which consist of claims against the Debtor and the recovery of property from the Debtor.

According to paragraph 8 of the Amended Complaint, in the event that the recoupment of purported trust assets sought in the Adversary Proceeding is insufficient to fully compensate ARE LLC, it seeks an allowed claim for the unpaid balance. Elevenhome files this proof of claim to assert a claim for execution of its Judgment against the assets at issue in the Adversary Proceeding because they should properly be determined to be subject to execution to satisfy the Judgment. Also, to the extent ARE LLC is entitled to a money distribution based on Claim No. 5718, Elevenhome asserts the right to receive such distribution to satisfy the Judgment.

[1] A true and correct copy of the Judgment is attached hereto as Exhibit "A".

# EXHIBIT "A"

11
ORDR

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

COMPLEX BUSINESS LITIGATION DIVISION

CASE NO.: 08-65603 CA 40

FILED FOR RECORD
2011 MAR -7 PM 2:16
CLERK
CIRCUIT & COUNTY COURTS
MIAMI-DADE COUNTY, FLA.
CIVIL #4

REDWOOD RECOVERY SERVICES, LLC, and ELEVENHOME LIMITED,

Plaintiffs,

vs.

JEFFREY L. KIRSCH, MEADOW MINT, LLC, KEY BISCAYNE FAMILY TRUST, AMERICAN RESIDENTIAL EQUITIES, LLC, AMERICAN RESIDENTIAL EQUITIES, INC., ARE ASSET MANAGEMENT, LLC, SEABREEZE FINANCIAL, LLC, and AMERICAN RESIDENTIAL EQUITIES, LIII, LLC,

Defendants.
_______________________________/



## FINAL JUDGMENT IN FAVOR OF PLAINTIFF ELEVENHOME LIMITED

This action was tried before the Court on January 17, 2011 upon Plaintiff Elevenhome Limited's ("Elevenhome") Second Amended Complaint against American Residential Equities, LIII, LLC ("ARE 53"). On the evidence presented, the Court finds as follows:

## FINDINGS OF FACT

### I. The Background

1. Jeffrey Kirsch ("Kirsch"), a Florida lawyer, is the principal of American Residential Equities, LLC and American Residential Equities, Inc. (collectively, "ARE"), a Miami-based investment company which, in 2006, was in the business of raising capital from foreign individuals for purposes of investing in pools of residential mortgage loans.



2. ARE represented it would acquire only first mortgage loans in bulk from banks at deeply discounted prices such that the underlying real estate collateral value would be substantially higher than the face value of the investment. Representations to the investors were that even in the event of foreclosure of the mortgage for non-payment and/or a declining real estate market the investor should come out whole since the real estate collateral was supposed to be worth substantially more than the investment amount, and ARE would liquidate the investment portfolios in approximately twelve (12) to eighteen (18) months.

3. The investment involved in this case was structured in the following manner: (1) the individual investor lent money to a limited liability company which ARE formed for the individual investor; (2) the new limited liability company purchased pools of troubled residential loans at a discount using the monies loaned from that investor; (3) the new limited liability company through its Manager, ARE, delivered to the investor a promissory note for the amount of the loan; (4) the new limited liability company, through ARE, delivered to the investor an agreement pledging the membership interest in the new limited liability company as collateral for the debt.

## II. The Elevenhome Note

4. On April 28, 2006, Kirsch, as the Manager of ARE 53, signed and delivered to Elevenhome the Elevenhome Note by which ARE 53 "promise[d] to pay to the order of [Elevenhome] Limited . . . the principal sum of TEN MILLION FOUR HUNDRED NINETY-TWO THOUSAND TWO HUNDRED FORTY-TWO DOLLARS and 66/100 (US$10,492,242.66)."

5. The Elevenhome Note was one of two notes comprising a $14 million loan made to ARE 53 by Elevenhome. ARE 53 paid off the other note for $3,507,757.34, on August 23,

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

2006. ARE 53 used the entire $14 million loan proceeds to purchase a pool of real estate assets (the "Assets") which it projected to be liquidated over an 18-month period.

6. Elevenhome is a British Virgin Islands company established by Aiden Couch ("Couch"), a foreign national, for the purpose of holding the loans made to ARE. The evidence reflects that, for the lender's convenience, the transfer of the $14 million to ARE 53 was made from the bank account of another Couch holding company, Ambigil Holdings Limited ("Ambigil"), which owned 100% of the member units of Elevenhome.

7. Prior to loaning $14 million to ARE 53, Elevenhome made two smaller loans to ARE entities. These earlier loans were also funded by Ambigil on behalf of Elevenhome and repaid to Ambigil without incident.

8. The unrebutted testimony is that the actual name of the note holder is Elevenhome Limited. The name of the payee on the note is Eleven Homes Limited, but this was shown to be a scrivener's error. There is no entity known as Eleven Homes Limited.

9. The Elevenhome Note was divided into two tranches; half of the principal amount of the Elevenhome Note accrued interest at the rate of eight percent per annum for twenty four months (the "24-Month Tranche"), and the other half accrued interest at the rate of eight and one half percent per annum for a term of eighteen months (the "18-Month Tranche"). The 18-Month Tranche was "fully amortizable", meaning that all interest and principal was due on October 28, 2007, eighteen months from the date of the Elevenhome Note.

10. Additionally, the Elevenhome Note required "[a]ccrued interest [to] be paid monthly on or before the first day of each calendar month after the execution of this Note." ARE 53 was permitted to prepay the principal balance of the Elevenhome Note in whole or in part at any time without penalty, but failure to pay principal or interest when due would

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK



A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

constitute a default which would entitle Elevenhome to accelerate all sums due under the Elevenhome Note, all of which would then accrue interest at the default rate of eighteen percent.

11. For approximately two years following the execution of the Elevenhome Note ARE 53 made regular payments of principal and interest pursuant to its terms. The evidence showed that the allocation of each payment as to interest and principal and against which of the two tranches the payment would be applied, was entirely determined by ARE 53. Elevenhome never questioned ARE's decisions and, in fact, accepted ARE 53's allocation of payments as reflected in account statements that ARE 53 provided to Elevenhome on a monthly basis. According to the last account statement provided to Elevenhome, ARE 53 allocated the monthly payments it had made to the 24-Month Tranche first, so that by February 15, 2007, ARE 53 had paid off the 24-Month Tranche.

12. After that date, ARE 53 continued making payments toward the 18-Month Tranche until March 31, 2008 when it made an interest payment of $25,048.14. No other payments were made after that date. According to ARE 53's own account statement, the outstanding principal balance on the 18-Month Tranche is $3,456,511.13.

13. ARE 53 presently owes Elevenhome **$6,650,435.13**, consisting of the principal amount reflected in ARE 53's account statement of $3,456,511.13, together with interest through the first day of trial, January 17, 2011.

## CONCLUSIONS OF LAW

14. The Elevenhome Note is an enforceable contract supported by adequate consideration.

15. ARE 53's argument that the Elevenhome Note is not supported by adequate consideration because it was Ambigil which actually loaned the $14 million to Elevenhome, fails

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

because it ignores the fact that ARE 53 got exactly what it bargained for; it received $14 million together with payment of hundreds of thousands of dollars in commissions and fees which Kirsch testified ARE 53 was entitled to in connection with the loan transaction. These facts establish sufficient consideration for the Elevenhome Note. *See* 11 Am. Jur. 2d *Bills and Notes* § 124 (2010) (It is not necessary that consideration flow directly from the payee to the makers of the note in order to bind the makers, so long as they do receive some benefit under the note.

16. ARE 53 breached the Elevenhome Note by failing to make any principal or interest payments after March 31, 2008.

17. As a direct and proximate result of ARE 53's breach of the Elevenhome Note, Elevenhome has suffered damages totaling **$6,650,435.13,** which represents the amount of principal and interest due on the Elevenhome Note as of January 17, 2011.

18. ARE 53's defense that the remaining amounts owed under the Elevenhome Note are not due until it liquidates all of the mortgage inventory assets also fails as a matter of law. Specifically, ARE 53 argues that the meaning of an isolated sentence within the Elevenhome Note required payments to be applied first to the 18-Month Tranche until paid, and then to the 24-Month Tranche. ARE 53 contends that the Court should disregard the fact that ARE 53 itself chose to pay off the 24-Month Tranche first and apply the payments ARE 53 made to the 18-Month Tranche. Instead, ARE 53 argues that the monies paid should have been applied in the reverse order so that ARE 53 would technically not be in default under the Elevenhome Note. This is so, it contends, because, under ARE 53's reading of the Elevenhome Note, payments are not due with respect to the 24-Month Tranche until ARE 53 disposes of "all or substantially all of the assets" it purchased with the $14 million loan (i.e., the "Liquidation Date"), something which has not yet happened. I reject this conclusion for a number of reasons.

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK
A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

19. First, any argument regarding the supposed maturity date of the 24-Month Tranche is academic. ARE 53 chose to pay that tranche first.

20. Second, the maturity date of the 24-Month Tranche was April 28, 2008 and not the date when all of the assets are liquidated as ARE 53 now contends. ARE 53 relies for its argument on the sentence within the "Interest" section of the Elevenhome Note which states that "[p]rior to the Liquidation Date, Borrower will not make any payments other than Current Interest, the 'Preferred Return' (defined below) and 'Cash Outflows' (defined below)." This after-the-fact reading of the Elevenhome Note is inconsistent with the manner in which the parties actually acted on the Elevenhome Note and is belied by the evidence. Under Florida law, the actions of the parties may be considered as a means of determining the interpretation they themselves placed upon the contract. *See Lalow v. Codomo*, 101 So. 2d 390 (Fla. 1958). Here, for two years following the execution of the Elevenhome Note, ARE 53 provided Elevenhome with monthly account statements which clearly stated that the 24-Month Tranche was "Payable" on April 28, 2008. Therefore, the Court rejects ARE 53's contention, made for the first time after the lawsuit was filed, that the maturity date of the 24-Month Tranche was a date other than April 28, 2008.

21. Third, even if it is assumed the terms of the Elevenhome Note would have required the amounts ARE 53 paid to be applied first to the 24-Month Tranche, the parties modified the manner of payment by their subsequent conduct. Under Florida law, the parties' conduct can modify the terms of a contract. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 382 (Fla. 2004) (*citing In re General Plastics Corp.*, 158 B.R. 258 (Bankr. S.D. Fla. 1993) *and Danforth Orthopedic Brace & Limb, Inc. v. Florida Health Care Plan, Inc.*, 750 So. 2d 774, 776 (Fla. 5th DCA 2000)). The undisputed evidence in this case demonstrates that ARE 53, in its

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK
A TRUE COPY CERTIFICATION ON LA HARVEY RUVIN, CL

discretion, chose to apply the payments it made under the Elevenhome Note to the 24-Month Tranche first. Indeed, ARE 53 provided Elevenhome with monthly account statements which showed that the 24-Month Tranche was "Paid in Full [on] 2/15/07[,]" leaving only the 18-Month Tranche to be paid. Elevenhome had a right to and relied on the representation made month after month by ARE 53 that these statements contained accurate and correct information. Having failed to make any of the required monthly interest payments since March 31, 2008 or to otherwise amortize the 18-Month Tranche by October 28, 2007, ARE 53 is in default of the provisions of the Elevenhome Note which require "[a]ccrued interest [to] be paid monthly on or before the first day of each calendar month after the execution of this Note[,]" and the provisions which require the 18-Month Tranche to be "fully amortiz[ed]" within eighteen months.

22. Alternatively, the parties modified the terms of the Elevenhome Note by subsequently agreeing to the First Amendment to Settlement Agreement (the "First Amendment"). Although neither ARE 53 nor Elevenhome were named as parties to the First Amendment, it was signed by Eric Magno, who was Elevenhome's Manager and by Kirsch on behalf of ARE, which was ARE 53's Manager. Their signatures on behalf of the parties to the Note was sufficient to modify the terms of the Elevenhome Note. *See St. Joe Corp.*, 875 So. 2d at 382 ("Under Florida law, the parties' subsequent conduct also can modify the terms in a contract."); *Danforth Orthopedic*, 750 So. 2d at 776 ("[P]arties can modify the terms of their contract by subsequent conduct."). The First Amendment treated the $3,456,511 reflected in ARE 53's monthly account statement as a balance due and owing as of April 28, 2008, and provided for an extension of the maturity date to January 1, 2009 if certain conditions were met. Although the specified conditions were never met and the maturity date reverted back to the modified maturity date of April 28, 2008, nevertheless, the parties agreed to the payments due

A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK



A TRUE COPY
CERTIFICATION ON LAST PAGE
HARVEY RUVIN, CLERK





under the 18-Month Tranche. Consequently, ARE 53 defaulted under the Elevenhome Note by failing to make any payments of principal or interest since April 28, 2008 when the outstanding balance of the Elevenhome Note matured.

23. Under either of the scenarios discussed above, ARE 53 is also in breach of the default provisions contained in paragraph 6 of the Elevenhome Note, which specifically defines a default to include the failure by ARE 53 to meet its obligation to make required principal or interest payments, and provides that "[i]n the event of default [t]hereunder, the entire amount due [t]hereunder shall be immediately due and payable."

24. Finally, ARE 53's argument that its obligation to pay the outstanding principal and interest owed under the Elevenhome Note will not arise until it has liquidated all of the assets, however long it might be before it actually does so, is equally unavailing. As an initial matter, the term "Liquidation Date" appears in the "Interest" section of the Elevenhome Note and appears only to describe when "Deferred Interest" is due under the Elevenhome Note. Additionally, in order to give the meaning which ARE 53 ascribes to the Note, the Court would have to disregard the words "fully amortizable" used to describe the maturity date of the 18-Month Tranche, which, according to ARE 53's own account statements, is the only tranche that remains to be paid.

25. Moreover, even assuming *arguendo* that the term "Liquidation Date" describes when the remaining principal is due under the Elevenhome Note, ARE 53 nevertheless defaulted on the Elevenhome Note by failing to liquidate the assets within a reasonable time. Although the Elevenhome Note defines the term "Liquidation Date" as "the date on which [ARE 53] has disposed of all or substantially all of the assets," it does not fix a date certain by which this liquidation is supposed to occur. Under Florida law, when no time or an indeterminate or

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK
A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

indefinite time is specified for the performance of an act, the law implies a reasonable time for its performance. *See Hatcher v. Miller*, 427 So. 2d 1039, 1040 (Fla. 1st DCA 1983); *see also Hammond v. DSY Developers, LLC*, 951 So. 2d 985, 988 (Fla. 3d DCA 2007); *De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. 3d DCA 1998); *Doolittle v. Fruehauf Corp.*, 332 So. 2d 107, 109-10 (Fla. 3d DCA 1976); *and Tyner v. Woodruff*, 206 So. 2d 684, 686 (Fla. 4th DCA 1968). Moreover, evidence may be introduced to aid in ascertaining what was intended as a reasonable time. *See Whiting v. Gray*, 8 So. 726, 727 (Fla. 1891).

26. I find that a reasonable time for liquidating the assets was, at most, eighteen months from the date of the Elevenhome Note. At or about the time ARE 53 delivered the Elevenhome Note, ARE had made numerous representations that the loan would be repaid no later than eighteen months from the date of the loan. On August 27, 2007, the day before Kirsch signed the Elevenhome Note, Kirsch sent an email to Magno attaching a "cash flow" which projected that the assets would be liquidated by no later than eighteen months. Magno testified that Kirsch's representations regarding how long it would take to liquidate the assets were consistent with the manner in which two prior loans Elevenhome had made to ARE were paid back. Both were paid within eighteen months from the date of the respective loans. Thus, even it is assumed that the principal balance owed under the Elevenhome Note was payable only upon the liquidation of all of the assets, ARE 53 has nevertheless defaulted under the Elevenhome Note by failing to liquidate the assets and pay Elevenhome the outstanding principal and interest owed on the Elevenhome Note within eighteen months.

27. With respect to Count III of Plaintiffs' Second Amended Complaint for reformation of the Elevenhome Note, the Court finds in favor of Elevenhome and reforms the Elevenhome Note to reflect that the holder of the Note is "Elevenhome Limited" instead of

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

"Eleven Homes Limited." Specifically, the Court finds that there was a mutual mistake, as both parties (ARE 53 and Elevenhome) intended to deliver the Elevenhome Note to "Elevenhome Limited," but due to a scrivener's error instead made it payable to "Eleven Homes Limited," a non-existent entity. *See Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1372 (Fla. 1987) ("A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument."). It is clear from the evidence that, but for this clerical error, Couch intended Elevenhome to be the entity named as the holder of the Elevenhome Note. ARE 53 did not have a vote in the matter and was essentially indifferent to Couch's decision. 21 *Bevis Constr. Co. v. Grace*, 134 So. 2d 516, 519 (Fla. 1st DCA 1961) ("[E]quity will reform an instrument to prevent manifest injustice and to express the true intent of the parties."); *Providence Square*, 507 So. 2d at 1369 ("A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument.").

**WHEREUPON** it is **ORDERED AND ADJUDGED** that:

28. Final Judgment is entered in favor of Elevenhome Limited on Counts I and III of Elevenhome Limited's Second Amended Complaint against Defendant American Residential Equities, LIII, LLC.

29. Elevenhome Limited, whose address is 7330 SW 148th Street, Miami, Florida 33158, shall recover from **American Residential Equities, LIII, LLC,** whose address is 848 Brickell Avenue, Penthouse, Miami, Florida 33131, the sum of **$6,650,435.13 (six million six hundred fifty thousand four hundred thirty five dollars and thirteen cents)**, for all of which let execution issue.

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

A TRUE COPY CERTIFICATION ON LAST PAGE HARVEY RUVIN, CLERK

30. Pursuant to section 55.03, Fla. Stat. (2011), this judgment shall bear interest at the legal rate of **6% (six percent)** *per annum* from the date of the judgment until paid.

31. Pursuant to the terms of the Elevenhome Note, Elevenhome is entitled to recover its reasonable attorneys' fees and costs from the American Residential Equities, LIII, LLC. The Court reserves jurisdiction to determine the amount of such attorneys' fees and taxable costs.

32. ARE 53 shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on Elevenhome's attorney within 45 days from the date of this final judgment, unless the final judgment is satisfied or post-judgment discovery is stayed.

33. Jurisdiction of this case is retained to enter further orders for the award of fees and costs and to compel ARE 53 to complete form 1.977, including all required attachments, and serve it on Elevenhome's attorney.

**ORDERED** in Chambers at Miami-Dade County, Florida this 7th day of March, 2011.

HERBERT STETTIN
SENIOR CIRCUIT JUDGE

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. November 5 AD 20 12
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk
6089

Copies furnished to:

- Jose M. Ferrer, Esq.
- Jorge D. Guttman, Esq.
- Alan Rosenthal, Esq.
- Natalie J. Carlos, Esq.

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the original on file in this office. Sept 23 AD 20 11
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk