**Presentment Date: October 29, 2013 at 12:00 p.m. (ET)**
**Objection Deadline: October 22, 2013 at 4:00 p.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone:    (212) 468-8000
Facsimile:    (212) 468-7900
Gary S. Lee
Todd M. Goren
Naomi Moss

*Counsel for the Debtors and*
 *Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, et al., ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**DEBTORS' MOTION FOR ORDER UNDER**
**BANKRUPTCY CODE SECTIONS 327(a) AND 328(a) APPROVING AMENDMENT**
**TO ENGAGEMENT LETTER WITH CENTERVIEW PARTNERS LLC**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors")[1] hereby move (the "Motion") for entry of an order, the proposed form of which is attached as Exhibit 1, under sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local

---
[1]   The names of the Debtors in these cases and their respective tax identification numbers are identified on Exhibit 1 to the Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 6] (the "Whitlinger Affidavit").

ny-1107996

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), approving an amendment (the "Amendment"), attached hereto as Exhibit 2, to the Engagement Letter (as defined below) with Centerview Partners LLC ("Centerview"), investment banker for the Debtors. In support of this Motion, the Debtors rely on the Declaration of Marc D. Puntus (the "Puntus Decl."), a partner of Centerview and the co-head of its Restructuring Group, attached hereto as Exhibit 4. In further support of this Motion, the Debtors respectfully state as follows:

## INTRODUCTION

1.  Following the sales of the Debtors' loan platform and legacy loan portfolio, which closed in February 2013 (the "Asset Sales"), the Debtors began to market and sell certain of their remaining assets. Because Centerview played an integral role in advising the Debtors in connection with the Asset Sales, the Debtors asked Centerview to assist them with the sales of certain loans or receivables in the Debtors' portfolio that are insured by the Federal Housing Administration (the "FHA") with an unpaid principal balance of $127 million (the "FHA Loans").[2]

2.  Because the separate sale of loans was not addressed in the Engagement Letter,[3] the Debtors decided to amend the Engagement Letter (the "First Centerview Amendment"). The First Centerview Amendment provided for compensation to Centerview for the sale of FHA Loans made pursuant to the FHA Sale Motion. Because no acceptable bid for the FHA Loans was submitted, the Debtors elected to terminate the FHA Loan Sale.

---

[2] On January 2, 2013, the Debtors filed the FHA Sale Motion (defined below). The hearing on sale of the FHA Loans (the "FHA Loan Sale") under the FHA Sale Motion was scheduled for April 11, 2013. On February 21, 2013, the Debtors terminated the FHA Loan Sale [Docket No. 3003].

[3] Capitalized terms otherwise not defined in the introduction shall have the meanings ascribed to them later on in the Motion.

The Debtors, however, through the services of Centerview have continued to engage in discussions with potential purchasers of FHA Loans. Although it was expected that Centerview would assist the Debtors to monetize and sell the FHA Loans through any process, the First Centerview Amendment only referenced sales made pursuant to the FHA Sale Motion. Therefore, because the FHA Loan Sale was terminated, the Debtors and Centerview, in consultation with the Creditors' Committee, determined to enter into the Amendment. The Amendment seeks to clarify Centerview's retention to include sales of the FHA Loans as described in the Amendment and to compensate Centerview accordingly.

3. Additionally, pursuant to the Engagement Letter, Centerview is required to credit 50% of certain Monthly Advisory Fees against the Transaction Fee[4] earned upon the closing of the Asset Sales. Originally, the Transaction Fee was to be earned and paid at the closing of the Asset Sales. See Puntus Decl. ¶ 12. During negotiations with the Creditors' Committee concerning Centerview's retention, Centerview agreed that the Transaction Fee would continue to be earned upon closing of the Asset Sales but payment would be deferred until the effective date of a confirmed plan. See Puntus Decl. ¶ 12. The Debtors, the Creditors' Committee and Centerview did not address how crediting would be structured post-closing of the Asset Sales as part of those discussions. See Puntus Decl. ¶ 12. As such, the parties chose to clarify this provision in the First Centerview Amendment (the "Crediting Provision"). See Puntus Decl. ¶ 13. As described in the Supplemental Retention Motion, the Debtors, the Creditors' Committee and Centerview engaged in extensive negotiations regarding the Crediting Provision. As a result of those discussions, the First Centerview Amendment amended the Engagement Letter to provide that Centerview is not required to

---

[4] As defined in the Engagement Letter.

credit Monthly Advisory Fees from the closing of the Debtors' servicing and origination platform (the "Platform Closing Date") through June 30, 2013. Pursuant to the First Centerview Amendment, from and after July 1, 2013, Centerview was to credit 50% of Monthly Advisory Fees, subject to the rights of Centerview to renegotiate the appropriate amount of crediting. In negotiating the First Centerview Amendment, the parties expressly contemplated that the issue of the Crediting Provision would be revisited as the case progressed.

4. Following recent extensive negotiations between the Debtors, the Creditors' Committee and Centerview regarding the Crediting Provision and in light of substantial additional services, including but not limited to services related to confirmation of the Plan and the litigation with the Junior Secured Noteholders, required of Centerview, the parties renegotiated the Crediting Provision through the Amendment. Pursuant to the Amendment, Centerview will credit Monthly Advisory Fees from the Petition Date through the Platform Closing Date and after October 31, 2013. The Amendment further provides that Centerview is not required to credit seven additional Monthly Advisory Fees, as set forth below, which results in the elimination of an additional $1,050,000 in crediting.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328 as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rules 2014-1 and 2016-1.

**BACKGROUND**

6. On May 14, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors are managing and operating their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. These cases are being jointly administered pursuant to Bankruptcy Rule 1015(b). No trustee has been appointed in these Chapter 11 cases.

7. On the Petition Date, the Debtors filed the Sale Motion[5], and on June 28, 2012, the Court entered an order approving the sale and bid procedures for the sale of the Debtors' assets [Docket No. 62].

8. On May 16, 2012, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a nine member official committee of unsecured creditors (the "Creditors' Committee").

9. On June 20, 2012, the Court directed that an examiner be appointed [Docket No. 454], and on July 3, 2012, the Court approved Arthur J. Gonzalez as the examiner [Docket No. 674] (the "Examiner").

10. On June 26, 2012, the Debtors filed the *Debtors' Application for Order Under Bankruptcy Code Sections 327(a) and 328(a) Authorizing Employment and Retention of Centerview Partners LLC as Investment Banker* [Docket No. 507] (the "Retention

---

[5] *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m), 365 and 1123 and Fed R. Bank. P. 2002, 6004, 6006 and 9014 for Order: (A)(I) Authorizing and Approving Sale Procedures, Including Break-Up Fee and Expense Reimbursement; (II) Scheduling Bid Hearing and Sale Deadline; (III) Approving Form and Manner of Notice Thereof and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Asset Purchase Agreements Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* (the "Sale Motion") [Docket No. 61].

Application"). On July 26, 2012, the Court approved the retention of Centerview as investment banker to the Debtors [Docket No. 920] (the "Retention Order").

11. On October 23, 2012 and October 24, 2012, the Debtors successfully conducted an auction for the sale of the Debtors' mortgage loan origination and servicing businesses to Ocwen Loan Servicing, LLC ("Ocwen") for $3 billion.

12. On October 25, 2012, the Debtors successfully conducted an auction for the sale of the Debtors' "legacy" portfolio consisting mainly of mortgage loans and other residual financial assets to Berkshire Hathaway Inc. ("Berkshire") for $1.5 billion.

13. At a hearing held on November 19, 2012, the Court approved the Sale Motion on the record. On November 21, 2012, the Court entered orders approving the sales to Ocwen and Berkshire [Docket Nos. 2246 and 2247].

14. On January 2, 2013, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f) and (m) and Fed. R. Bankr. P. 2002, 6004 and 9007 for Orders: (A)(I) Authorizing and Approving Sale Procedures; (II) Scheduling Bid Deadline and Sale Hearing; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief and (B)(I) Authorizing the Sale of Certain FHA Loans Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Mortgage Loan Purchase and Interim Servicing Agreement; and (III) Granting Related Relief* [Docket No. 2544] (the "FHA Sale Motion").

15. On January 16, 2013, the Court approved the FHA Sale Motion on the record. On January 17, 2013, the Court entered an order approving the FHA Sale Motion [Docket No. 2649].

ny-1107996

16. On January 24, 2013, the Debtors filed the *Debtors' Motion for Order Under Bankruptcy Code Sections 327(a) and 328(a) Approving Amendment to Engagement Letter with Centerview Partners LLC* [Docket No. 2700] (the "Supplemental Retention Motion").

17. On January 31, 2013, the Court entered the *Order Under Bankruptcy Code Sections 327(a) and 328(a) Approving Amendment to Engagement Letter with Centerview Partners LLC* [Docket No. 2778] (the "Supplemental Retention Order").

18. On February 21, 2013, the Debtors terminated the FHA Loan Sale [Docket No. 3003].

### RELIEF REQUESTED

19. By this Motion, the Debtors seek entry of an order approving the Amendment, which seeks to (i) clarify the compensation earned by Centerview for services related to the sale of the FHA Loans, and (ii) clarify the Crediting Provision contained in the Engagement Letter, and as amended by the First Centerview Amendment.

### BASIS FOR RELIEF

20. Centerview's services, as investment banker to the Debtors, have been rendered upon the terms and conditions of an engagement letter dated October 18, 2011, by and between Centerview and the Debtors, as amended on March 13, 2012 and on January 17, 2013 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit 3 and incorporated by reference herein.

**A.    The FHA Loan Fees**

21. The Engagement Letter provides for the retention of Centerview as investment banker to assist the Debtors on a variety of matters, including sale and restructuring related services.  See Retention Application ¶ 13.  Although the Engagement Letter specifically

contemplates the sale of substantially all of the Debtors' assets (i.e. the Assets Sales), it does not address the separate sale of discrete assets, such as the FHA Loans remaining in the Debtors' estates.

22.     Pursuant to the Retention Order, modifications and amendments to the Engagement Letter must be approved by the Court.  Retention Order ¶ 3.  Because the Debtors believe that it is in their best interests to have Centerview provide assistance with the sale of the FHA Loans they have clarified the terms of the Engagement Letter, as amended by the First Centerview Amendment, and as described in the Amendment.

23.     Pursuant to the Amendment, the Debtors propose to pay Centerview a fee equal to .65% of the purchase price of the unpaid principal balance of FHA Loans (the "FHA Fees") if the Debtors consummate any transactions for the sale of the FHA Loans to buyers other than Ginnie Mae or its affiliates upon the closing of the applicable loan sale or sales. The Amendment provides that Centerview shall earn the FHA Fees if the Debtors (i) consummate an FHA Loan Transaction prior to the effective date of a plan (the "Effective Date"), or (ii) execute a  purchase agreement to consummate an FHA Loan Transaction prior to the Effective Date and the sale is consummated subsequent to the Effective Date, or (iii) has reached an agreement in principle to effectuate or consummate an FHA Loan Transaction prior to the Effective Date, and a definitive agreement with respect to such transaction is not executed prior to the Effective Date because the Creditors' Committee has not consented to such transaction, and thereafter, prior to the date that is three months from and after the Effective Date, the Liquidating Trust consummates a substantially similar FHA Loan Transaction.

24. Centerview will also assist with the continued monetization of other remaining estate assets and reserves the right to seek additional fees for subsequent sales of loans and other assets, subject to the reasonable consent of the Creditors' Committee.

25. The FHA Loan Fees are consistent with and typical of compensation arrangements entered into by Centerview and its restructuring professionals and other comparable firms in connection with the rendering of similar services under similar circumstances. See Puntus Decl. ¶ 11. Centerview believes that the foregoing compensation arrangements are both reasonable and market-based and consistent with Centerview's normal and customary billing practices for comparably sized transactions. See Puntus Decl. ¶ 11.

**B.    Clarification of the Crediting Provision**

26. In addition to providing for the FHA Loan Fees, the Amendment clarifies the Crediting Provision contained in the Engagement Letter, and as amended by the First Centerview Amendment. Pursuant to the Engagement Letter, Centerview is required to credit 50 % of certain Monthly Advisory Fees against the Transaction Fee. The Engagement Letter does not specify whether Centerview is required to continue crediting upon the closing of the Asset Sales, at which time the Transaction Fee will have been fully earned. See Retention Order ¶ 9.

27. The Debtors, the Creditors' Committee and Centerview did not address how crediting would be structured post-closing of the Asset Sales. As such, the parties chose to clarify the Crediting Provision in the First Centerview Amendment. Following those negotiations, the parties agreed that Centerview will not be required to credit the Monthly Advisory Fees from the Platform Closing Date through June 30, 2013. From and after July 1, 2013, Centerview would be required to credit 50% of Monthly Advisory Fees. The First

9

ny-1107996

Centerview Amendment expressly contemplated that the issue of the Crediting Provision would be revisited as the case progressed further.

28.  Because the complexity of the issues pervading these cases has slowed the pace and prolonged the conclusion of the cases, and in light of the additional services provided by Centerview in connection with confirmation of the Plan[6] and the ongoing litigation with the Junior Secured Noteholders,[7] the Debtors, Centerview and the Creditors' Committee engaged in arm's-length negotiations and renegotiated the duration and scope of the Crediting Provision.

29.  The Amendment states that from the Petition Date through the Platform Closing Date and after October 31, 2013, Centerview will credit 50% of Monthly Advisory Fees. The Amendment further provides that Centerview is not required to credit seven additional Monthly Advisory Fees, which elimination of crediting shall be applied first to Monthly Advisory Fees for the period of November 1, 2013 through the Effective Date and second, to the extent necessary, to Monthly Advisory Fees for the period from the Petition Date through the Platform Closing Date, such that $1,050,000 of crediting is eliminated.

30.  The experienced professionals at an investment bank such as Centerview fulfill a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe they continue to require the services of a capable and

---

[6] On July 3, 2013, the Debtors and the Creditors' Committee filed the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4153] (the "Plan") and the Disclosure Statement for the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. and the Official Committee of Unsecured Creditors [Docket No. 4157] (the "Disclosure Statement"). The Court approved the Disclosure Statement on August 23, 2013 [Docket No. 4809]. The hearing on confirmation of the Plan is scheduled to commence on November 19, 2013.

[7] Two actions were commenced against the Junior Secured Noteholders, which have been consolidated by the Court. On February 28, 2013, the Creditors' Committee commenced an adversary proceeding against UMB Bank, N.A. and Wells Fargo, N.A. (Bankr. S.D.N.Y. Adv. Pro. 13-01277 [Docket No. 1]). On May 3, 2013, the Debtors commenced an adversary proceeding against UMB Bank, N.A., Wells Fargo Bank, N.A. and the Ad Hoc Group of Junior Secured Noteholders (Bankr. S.D.N.Y. Adv. Pro. No. 13-01343 [Docket No. 1].

experienced investment banking firm such as Centerview in connection with the monetization of their remaining assets and the prosecution of the Plan through confirmation and that Centerview is crucial to the Debtors' continued success in these Chapter 11 cases. The Creditors' Committee played an active role in the negotiations regarding the Amendment recognizing the value that Centerview's services add to these cases.

31. Centerview has and will continue to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 797] and consistent with the proposed terms of compensation set forth in the Engagement Letter. Further, because the Debtors retained Centerview under Bankruptcy Code section 328(a), the Debtors believe that Centerview's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" under applicable law. Notwithstanding anything herein to the contrary, the United States Trustee for the Southern District of New York shall retain all rights to respond or object to Centerview's interim and final applications for compensation and reimbursement of expenses on all grounds including, but not limited to, reasonableness, pursuant to section 330 of the Bankruptcy Code, and in the event the U.S. Trustee objects, the Court retains the right to review such interim and final applications pursuant to section 330 of the Bankruptcy Code.

32. In the light of the foregoing, and given the matters that Centerview may be required to address in the performance of its services hereunder, Centerview's commitment to the variable level of time and effort necessary to address all such issues as they arise and the

market rate charged for comparable services both in and out of Chapter 11, the Debtors believe that the terms and conditions of the Amendment are fair and reasonable under the standards set forth in Bankruptcy Code section 328(a). Centerview's substantial experience with respect to sale and restructuring-related investment banking services, coupled with the nature and scope of work already performed by Centerview during the course of these cases, further support approval of the Amendment.

## NOTICE

33. The Debtors have provided notice of this Motion in accordance with the Case Management Procedures Order, approved by this Court on May 23, 2012 [Docket No. 141].

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) substantially in the form attached hereto as Exhibit 1, granting the relief requested in the Motion, (ii) approving the Amendment and (iii) granting such other and further relief to the Debtors as the Court may deem just and proper.

New York, New York
Dated: October 15, 2013

/s/ Gary S. Lee
Gary S. Lee
Todd M. Goren
Naomi Moss
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel to the Debtors
and Debtors in Possession*