Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Paul R. DeFilippo
Randall R. Rainer
Fletcher W. Strong

*Attorneys for Syncora Guarantee Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No: 12-12020-MG |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**DECLARATION OF RANDALL R. RAINER IN SUPPORT OF RESPONSE OF SYNCORA GUARANTEE INC. TO DEBTORS' OBJECTION TO PROOF OF CLAIM # 7170 OF SYNCORA GUARANTEE INC.**

Pursuant to 28 U.S.C. § 1746, I, Randall R. Rainer, Esq. declare:

1. I am a partner at Wollmuth Maher & Deutsch LLP, attorneys for Syncora Guarantee Inc. ("Syncora"). I submit this declaration on personal knowledge and a review of Syncora business records, except as otherwise indicated, in support of Syncora's Response to Debtors' Objection to Proof of Claim # 7170 of Syncora Guarantee Inc.

2. Pursuant to a series of financial guaranty insurance policies, Syncora insured the payment of interest and principal on more than $2 billion of RMBS pass-through certificates issued by RMBS Trusts for which the Debtors GMAC Mortgage, LLC ("GMACM") and Residential Funding Company ("RFC") has acted as servicer, sponsor and/or seller, including (i) Bear Stearns Second Lien Trust 2007-SV1 ("BSSLT 2007-SV1"); (ii) SunTrust Acquisition

1

Closed-End Seconds Trust, Series 2007-1 ("STACS 2007-1"); and (iii) Residential Accredit Loans Inc. Series 2006-Q04 ("RALI 2006-Q04" and together with BSSLT 2007-SV1 and STACS 2007-1, the "Syncora Transactions").

3. Syncora has paid insurance claims totaling approximately $225 million in respect of the Syncora Transactions, including paying $148,914,678 in claims for STACS 2007-1 and $74,816,151 in claims for RALI 2006-Q04.

4. On July 26, 2012, the Debtors filed a Notice of (I) Debtors' Intent to Assume and Assign Certain Executory Contracts, Unexpired Leases of Personal Property, and Unexpired Leases of Nonresidential Real Property and (II) Cure Amounts Related Thereto [Dkt. No. 924], which was amended and restated on September 18, 2012 [Dkt. No. 1484], and which, in accordance with the Sale Procedures Order [Dkt. No. 538] (collectively the "Sale Motion"), sought to assume and assign certain servicing agreements concerning Syncora-related trusts to a third-party.

5. On September 28, 2012 and October 29, 2012, Syncora filed objections to the Debtors' assumption and assignment to Ocwen Loan Servicing, LLC of the servicing agreements for three transactions for which Syncora had issued a financial guaranty insurance policy -- (i) BSSLT 2007-SV1; (ii) STACS 2007-1; and (iii) Greenpoint Mortgage Funding Trust 2006-HE1 [Dkt. Nos. 1657 and 1996].

6. On November 7, 2012, Syncora timely filed proof of claim number 2781 (the "Original Proof of Claim"). A true and correct copy of the Original Proof of Claim and the Addendum thereto is annexed hereto as Exhibit A.

7. I am advised that in February 2013, the disposition of Syncora's claims filed in the Original Proof of Claim was a subject of negotiation with the Debtors in connection with the potential resolution of Syncora's objections to the Debtors' Sale Motion.

8. Annexed hereto as Exhibit B is a true and correct copy of Syncora's first amended proof of claim number 7164 and the Addendum thereto, dated September 3, 2013.

9. Annexed hereto as Exhibit C is a true and correct copy of Syncora's second amended proof of claim number 7170 and the Addendum thereto, dated September 13, 2013 (the "Amended Proof of Claim").

10. Annexed hereto as Exhibit D is a true and correct copy of an email from Katherine Manion of Syncora to Stephanie Daniel of Deutsche Bank, dated November 8, 2012, which I understand has been maintained in Syncora's business records.

11. Annexed hereto as Exhibit E is a true and correct copy of HSBC's proof of claim number 5254 and the Addendum thereto, dated November 16, 2012.

12. Annexed hereto as Exhibit F is a true and correct copy of Deutsche Bank's proof of claim number 6706 and the Addendum thereto, dated February 25, 2013 (the "Deutsche Bank Proof of Claim").

13. Annexed hereto as Exhibit G is a true and correct copy of Wells Fargo's Notice of Cure Claims (the "Wells Fargo Notice"), filed on April 16, 2013 [Dkt. No. 3454].

14. Annexed hereto as Exhibit H is a true and correct copy of (i) the Standard Terms of Pooling and Servicing Agreement, dated March 1, 2006, for Residential Accredit Loans, Inc. Mortgage Asset-Backed Pass-Through Certificates between Residential Accredit Loans, Inc., Residential Funding Corporation as Master Servicer, and Deutsche Bank Trust Company as

Trustee, and (ii) Series Supplement dated April 1, 2006 (together, the "RALI Servicing Agreement").

15. Annexed hereto as Exhibit I is a true and correct copy of the Syncora Financial Guaranty Insurance Policy in respect of certain RALI 2006-QO4 certificates, with an Effective Date of April 27, 2006.

16. In order to obtain a greater understanding of the terms of the Plan Support Agreement ("PSA") [Dkt. No. 3814], the PSA Term Sheet and the Supplemental Term Sheet which purported to provide a valuation for allowed claims under the PSA and proposed Plan, on June 10, 11, 12 and 13, 2013, I and colleagues spoke by telephone with counsel for the Debtors and counsel for the RMBS Trustees and one Master Servicer for the Syncora Transactions. During the course of those conversations, it became clear to me that neither the Debtors' counsel nor the RMBS Trustees' counsel we spoke to had a full, or even the same, understanding of certain highly material terms of the PSA, such as the treatment of Insured Trusts and how the RMBS Trust Protocol operates with respect to Insured Trusts.

17. Accordingly, and in light of the high-level summary description of Duff & Phelps' work set forth in each of the RMBS Trustees' joinder affidavits filed in connection with the motion to authorize the PSA, on June 13, 2013 I asked the Trustees' counsel to arrange for our access to the Duff & Phelps work that reportedly (a) implemented a methodology for assessing the value of RMBS Trust servicer claims, including with respect to the Syncora Transactions, and (b) devised the RMBS Trust Allocation Protocol, in which Insured Trusts purportedly could participate in some fashion.

18. On Friday, June 14, 2013, I was advised by Trustees' counsel that the other Trustees had consented to my speaking with Duff & Phelps on behalf of Syncora in order to

learn Duff & Phelps' methodologies and ask questions about the RMBS Trust Allocation Protocol it developed, and the same day I telephoned and spoke with the designated Duff & Phelps executive (Charles Parekh) to schedule an initial call for such purpose. Mr. Parekh confirmed the same understanding and said he would get back to me on scheduling a discussion and potentially providing me with a written report of Duff & Phelps' work.

19. Then, on Sunday evening June 17, I received an email from the Trustees' counsel in which they performed an abrupt about-face and reneged on their agreement, contending all of a sudden that such information was not relevant. Now, approximately four months later, I remain unable to get even a glimpse into the Duff & Phelps methodology upon which the RMBS Trustees' settlement of RMBS Trust claims is largely based, or understand the factors the Trustees considered in determining that it purportedly is in the best interests of each RMBS Trust for the Trustees to enter into the PSA and proposed Plan on their terms.

Executed this 15th day of October, 2013.

_____
Randall R. Rainer