# UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

TO: THE HONORABLE JUDGE MARTIN GLENN

TO:

| | |
|---|---|
| RESIDENTIAL CAPITAL, LLC, et al | CASE NO. 12-12020 (MG) CHAPTER 11 |
| U.S. BANK NATIONAL ASSOCIATION AS | Jointly Administered |
| TRUSTEE FOR RASC 2006KS8 | CASE NO. 53-2009-CA-005402 DIV.8 |

Debtor(s),

FROM:

LILIA MEDRANO, et al.

Claimant(s)

_____ /

## CLAIMANTS LETTER OF OJECTION TO (AMENED AND SUPERSEDE OF CLAIM) WITH PREJUDICE FOR FRAUD ON THE COURT WITH A REQUEST OF FINAL JUDGEMENT

Comes now the Claimant, LILIA MEDRANO, PRO SE BORROWER, and hereby states reason of CLAIMANT'S LETTER OF OJECTION TO; ORDER GRANTING DETORS' TWENTY-FIFTH OMNIBUS OBJECTION TO CLAIM (AMENED AND SUPERSEDE OF CLAIM) WITH PREJUDICE FOR FRAUD ON THE COURT WITH A REQUEST OF FINAL JUDGEMENT. The term "Claimant" shall refer to, LILIA MEDRANO and the term "Debtor" shall refer to RESIDENTIAL CAPITAL, LLC, et, al.,

1



RECEIVED
OCT 15 2013
U.S. BANKRUPTCY COURT, SDNY

The Debtor has committed a fraud upon this court which has become apparent to the
Claimant sometime in 2011, upon discovery that the "lender" bank and others have engaged in a
pattern of fraud and deception across the country and the state of Florida in foreclosing on many
residential properties.

The Claimant's Motion is based on the issue of fraud upon the court, standing and failure to
yield to conditions precedent in order to file a complaint in court and many other complaints. The
Debtor had no standing in court and to prove a case, falsified documents in Florida and this court in
order to "create" standing through the use of counsel, the notary and fraudulent information. The
Assignment, as an instrument of fraud in this Court intentionally perpetrated upon this court by the
Debtors, was made to appear as though it was created and notarized on May 14, 2009. Debtors
Failed to comply with Florida Statute 559.715 requiring a thirty day notice of assignment. Debtors
failed to comply with notice of assignment as provided by Florida law. "An assignee of a mortgage
and note must give the debtor written notice of such assignment within thirty (30) days after the
assignment." 559.715 Fla. Stat. (2009). . Issue is when the assignment was "effective". However,
that purported creation/notarization date was facially impossible: The signor of the assignment is
not and never was an authorized employee to sign assignments and the Debtors has foreclosed on
Billions of dollars worth of mortgages in this fashion. By the governments accounts 10,000 or more
such assignments have been signed in this fashion by the Debtors, Ms. Samons (exhibit A), others
and the attorneys. It is a fact that the person signing is not in fact an officer of the bank and has no
right to sign any documents on behalf of the bank and the bank knows that without this fabricated
document they have no standing. There is no assignment, there is no standing, and hence there is
no legal foreclosure of the subject property on the record. No assignments of mortgages made by

2

this person are legal and this is fraud upon the COURT, upon the CLAIMANT and upon the

PEOPLE of the state of Florida that are not knowledgeable to know how to bring this to the courts

attention.  Many Floridians have unfortunately already lost their homes due to these fraudulent

documents.  The CLAIMANT moves to sanction the offices of David J. Stern, the bank in question

and the new attorney for enforcing a fraudulent complaint and attempting to collect on a debt that is

now unenforceable under Florida Fair Debt Collection Practices Act, as explained in this motion.

The Claimants states, the fraudulent assignment confirms by filing date, that the fraudulent

assignment did not exist at the time of filing of this foreclosure complaint action;  this was done in a

purposeful way to deceive the court and as an intentional effort to mislead the Claimant and this

Court in regards to standing. The Court should reject the Assignment and find that is not entitled to

introduction in evidence for any purpose. The Court should find that the Debtor does not have

standing to bring its action and the DEBTORS should be barred from bringing any further actions

into court:

> 559.715  Assignment of consumer debts.--This part does not prohibit the assignment, by a
>
> creditor, of the right to bill and collect a consumer debt. However, the assignee must give
>
> the debtor written notice of such assignment within 30 days after the assignment. The
>
> assignee is a real party in interest and may bring an action in a court of competent
>
> jurisdiction to collect a debt that has been assigned to such assignee and is in default.

The DEBTORS failed to yield to condition precedent when they started a foreclosure complaint

without having a legal right to do so.  DEBTORS failed to send the CLAIMANT written notice of

filing of assignment.

3

### Fraud Upon The Court

The "purported Assignment" was executed by infamous "robo-signor" Cheryl Samons, as alleged "Assistant Secretary" of MERS but who is actually a paralegal in the office of David J. Stern. Ms. Samons has been previously deposed as to her alleged status with MERS. Her deposition transcript is available on the internet. She admits to fraudulently defrauding many courts and Defendants by fraudulently falsifying documents including assignment of mortgages, power –of-attorneys and other documents needed to initiate and fabricate needed documents to fraudulently win court cases.

This is not the first time that the Law Office of David J. Stern, P.A. has been found to have engaged in fraudulent foreclosure practices, and it will probably not be the last. Ms. Samons has executed many such "purported Assignments", and it is common knowledge that the Stern law firm was previously forced to pay a fine exceeding one million dollars in connection with a fraudulent foreclosure.

The basic standards governing fraud on the court are reasonably straightforward. As set forth in Cox v. Burke, 706 So. 2d 43, 47 (Fla. 5th DCA 1998): The requisite fraud on the court occurs where "it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989).... The trial court has the inherent authority, within the exercise of sound judicial discretion, to dismiss an action when a Plaintiff has perpetrated a fraud on the court, or where a party refuses to comply with court orders. Kornblum v. Schneider, 609 So. 2d 138, 139 (Fla.

4

DCA 1992). While a claim of intrinsic fraud must be brought under rule 1.540(b)(3), a claim of

extrinsic fraud-also known as fraud upon the court-may be brought under the rule or may be

brought at any time as an independent action challenging the final judgment. See generally Cerniglia

v. Cerniglia, 679 So. 2d 1160, 1163 (Fla. 1996).

The Assignment of Foreclosure, as an instrument of fraud in this Court intentionally

perpetrated upon this court by the CLAIMANT, was made to appear as though it was created and

notarized on May 14, 2009.

The Court should immediately reject the Assignment of ORDER GRANTING DEBTORS'

TWENTY-FIFTH OMNIBUS TO CLAIM ( AMENDED AND SUPERSEDED BORROWER

CLAIM) and find that is not entitled to introduction in Assignment of Foreclosure as evidence for

any purpose. The Court should find that the Debtors does not have standing to bring its action. (See

BAC Funding Consortium, Inc. ISOAIATIMA v. Genelle Jean-Jacques, Serge Jean-Jacques, Jr. and

U.S. Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset Backed Certificates,

Series 2006-CBS (2nd DCA Case No. 2f)~08-3553) Feb. 12,2012.)

The Florida Supreme Court has set up a task force requiring verification and cites the

deposition taken by a Palm Beach County law firm that exposed the practice of affidavits regarding

the verification of accuracy of a complaint and information about the loan being summarily signed

in conveyor belt fashion. If there is a fraud on the court, when the court is asked to consider these

affidavits in making a judicial review as part of having that judge issue a foreclosure judgment, then

the judgment should be reversed. Essentially the judgment is "voidable". There is no statute of

limitations on the void ability of a judgment because of fraud on the court. Fraud cancels all

contracts. In the U.S., when an officer of the court is found to have fraudulently presented facts to

court so that the court is impaired in the impartial performance of its legal task, the act, known as

5

"fraud upon the court", is a crime deemed so severe and fundamentally opposed to the operation of justice that it is not subject to any statute of limitation. Officers of the court include: Lawyers, Judges, Referees, and those appointed; Guardian Ad Litem, Parenting Time Expeditors, Mediators, Rule 114 Neutrals, Evaluators, Administrators, special appointees, and any others whose influence are part of the judicial mechanism.

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23.

In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function — thus where the impartial functions of the court have been directly corrupted." The Claimant is presenting a pattern of conduct here where organizations trying to foreclose on homeowners are in fact submitting forged that is, willfully known to be false affidavits to courts around the nation.

The Debtors recording and filing regarding the fraudulent Assignment of Mortgage should be stricken, and the Debtors should be prohibited and barred from ever presenting or entering the Assignment of Mortgage and purported "lost or stolen" promissory note into evidence forever. As such, it constitutes a Void grant. The Claimant's property is now technically unsecured and the

6

mortgage obligation, unperfected on the public record, represents an unperfected mortgage as a cloud on title and nothing more.

F.S. 701.02 Assignment not effectual against creditors unless recorded and indicated in title of document; applicability.

## Violation Of Florida Fair Debt Collection Practices

Buried in The Helping Families Save Their Homes Act of 2009, which the President signed into law in 2009, is an amendment to the Truth in Lending Act (TILA) that calls for a notice to the consumer when a 'mortgage loan' is transferred or assigned. The provision appears to be effective immediately, and violations are subject to TILA liability.

The text of the provision follows:

SEC. 404. NOTIFICATION OF SALE OR TRANSFER OF MORTGAGE LOANS. (a)

IN GENERAL.—Section 131 of the Truth in Lending Act (15 U.S.C. 1641) is amended by adding at the end the following:

NOTICE OF NEW CREDITOR.— "(1) IN GENERAL.—In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

(2) DEFINITION.—As used in this subsection, the term 'mortgage loan' means any consumer credit transaction that is secured by the principal dwelling of a consumer.".

(b) PRIVATE RIGHT OF ACTION.—Section 130(a) of the Truth in Lending Act (15 U.S.C. 1640(a)) is amended by inserting "subsection (f) or (g) of section 131," after "section 125,".

VIOLATION OF 15 U.S.C. § 1692 ET SEQ., and F.S. 559.552

On information and belief, Debtor violated provisions of the Florida Fair Debt Collection Practices Act and **FEDERAL FAIR DEBT COLLECTION PRACTICES ACT** at 15 USC 1692, et. seq. and provisions of the Florida Consumer Practices Act at F.S. 559.552 because it did not have any right to enforce collection of this Mortgage and Note, it did not have standing, it did not comply with all conditions precedent, it has no legally enforceable claim against the Claimant, it did not comply with the contract requirements for acceleration, it had unclean hands and it simply does not have an enforceable mortgage on the subject property as governed by:

Rule Section 809(a), 15 U.S.C. § 1692g(a)

The Claimant has a right to invoke rule 809 of the Truth In Lending Act ***nunc pro tunc*** since it is obvious that the true nature of this action was a fraud. Claimant was never truly given notice regarding the nature of this alleged debt and was never truly served properly due to this fraud.

8

There has never been a complete accounting and disclosure regarding this complaint. The Debtor is in violation of the following rules:

§ 807. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this title.

15 USC 1692e

§ 807 15 USC 1692e

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or

9

agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

§ 808 15 USC 1692f

§ 808. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

10

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

§ 812. Furnishing certain deceptive forms

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 813 for failure to comply with a provision of this title.

(b) Compliance with any requirements imposed under this title shall be enforced under—

For violation of these rules and many others, the mortgage is now unenforceable.


## Violation Of Florida Consumer Practices Act

The Florida Consumer Practices Act (FCCPA, F.S. 559.552) provides protection for consumers in foreclosure. The FCCPA prohibits the Debtor from collecting the underlying consumer mortgage debt involved in this action by asserting its right to foreclose when the Debtor knows that such right does not exist because the Debtor did not comply with the applicable federal default servicing obligations and guidelines prior to filing this foreclosure action. "In collecting consumer debts, no person shall … claim, attempt, or threaten to enforce a debt when such person asserts the existence of some other legal right when such person knows that the right does not exist. 559.72(9) Fla. Stat. (2009)

11

The FCCPA applies to anyone attempting to collect a consumer debt unlawfully and F.S. 559.72 "includes all allegedly unlawful attempts at collection consumer claims." Seaton Jackson v. Wells Fargo Homemortgage, Inc., 12 Fla. L. Weekly Supp. 188 (Fla. 6th Circuit 2004) citing Williams v. Streeps Music Co., Inc., 333 So. 2d 65 (Fla. 4th DCA 1976) See also, Hart v. GMAC Mortgage Corporation, 246 B.R. 709 (D. Mass. 2000)(Debtor stated a cause of action under the FDCPA where continuation of foreclosure proceedings amounted to conduct "the natural consequence of which was to harass, oppress, or abuse")

The National Housing Act, 12 U.S.C. 1710(a) imposes specific statutory obligations on all creditors across the United States who service federally-insured home loans that requires the creditor to engage in very specialized default loan servicing and loss mitigation to avoid foreclosure when a borrower defaults on a home loan insured by the federal government for reasons beyond their control. The creditor is fully insured in exchange for agreeing to abide by these customer servicing obligations.

Compliance with the default loan servicing federal regulations promulgated by HUD, pursuant to the National Housing Act, 12 U.S.C. 1710(a) can be held to be a contractual condition precedent to instituting a foreclosure action and the failure of the Plaintiff to implement foreclosure avoidance servicing is an appropriate subject for a counterclaim for declaratory and injunctive relief. See: U.S. v. Trimble, 86 F.R.D. 435 (S.D. Fla. 1980) and Cross v. Federal National Mortgagee Association, 359 So. 2d 464, 465 (Fla. 4th DCA 1978): "A mortgage foreclosure is an equitable action and thus equitable defenses are most appropriate. It appears to us that given the purpose of ... the recommended efforts to obviate the necessity of foreclosure, any substantial deviation from the recommended norm might be construed by the trial court under the heading of an equitable defense." Id., 359 So. 2d at 465. (also see U.S. v. Trimble, 86 F.R.D. 435 (S.D. Fla. 1980), where the

12

court found that compliance with applicable federal laws can be upheld as equitable defense to deny a creditor the judicial remedy of foreclosure.)

DEBTOR must show that it has <u>federal</u> authority to foreclose – that it complied with the pre-foreclosure default prevention procedures. DEBTOR has not shown that it owns the Note and the Mortgage. DEBTOR alleged only that it was assigned the Mortgage in May 14, 2009, several months after the filing of this action to foreclose. Further, the DEBTOR failed to allege in its Complaint that the Note was ever assigned.

There are certain required steps a servicer of a loan must do before foreclosing, which are set forth in 24 CFR 203.604 and 24 CFR 203.605 for FHA loans and other provisions for other types of federally backed loans. The <u>federal</u> government has deemed that pre-suit default prevention procedures are a condition precedent to filing a foreclosure action and must be utilized before foreclosure may be instituted. F.S. 559.72(9) provides that it is illegal to enforce collection when knowing that other legal rights exist. The face of the mortgage provides prima facie evidence that this is a federally backed mortgage. The DEBTOR must demonstrate that it complied with all <u>federal</u> regulations on pre-suit default prevention procedures. That was not done in this case. The DEBTOR violated:

F.S. 559.72 Prohibited practices generally.--In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist;

F.S. 559.77 Civil remedies.--

(1)  A debtor may bring a civil action against a person violating the provisions of s. 559.72 in a court of competent jurisdiction of the county in which the alleged violator resides or has his or her principal place of business or in the county wherein the alleged violation occurred.

(2)  Upon adverse adjudication, the Defendant shall be liable for actual damages and for additional statutory damages of up to $1,000, together with court costs and reasonable attorney's fees incurred by the Plaintiff. In determining the Defendant's liability for any additional statutory damages, the court shall consider the nature of the Defendant's noncompliance with s. 559.72, the frequency and persistence of such noncompliance, and the extent to which such noncompliance was intentional. In any class action lawsuit brought under this section, the court may award additional statutory damages of up to $1,000 for each named Plaintiff and an aggregate award of additional statutory damages not to exceed the lesser of $500,000 or 1 percent of the Defendant's net worth for all remaining class members, but in no event may this aggregate award provide an individual class member with additional statutory damages in excess of $1,000. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the Defendant from further violations of this part. If the court finds that the suit fails to raise a justiciable issue of law or fact, the Plaintiff shall be liable for court costs and reasonable attorney's fees incurred by the Defendant.

## ORDER BY FLORIDA SUPREME COURT

Florida Supreme Court on February 11, 2010 incorporated new rules regarding foreclosures. Florida Rules of Civil Procedure  Rule 1.110(b) requires that a residential foreclosure now requires that it be "verified" by the filing party or attorney.

The purposes of this according to the rule making opinion are stated as:

> 1. To provide an incentive for the lender to investigate and verify the ownership of the promissory note and ensure that the allegations in the foreclosure complaint are accurate.
>
> 2. To reduce the time the court wastes on inappropriately plead "lost note" allegations.
>
> 3. To prevent reduce the number of suits filed by the wrong lenders.
>
> 4. To give the court the ability to sanction lenders and attorneys that make pleadings that are incorrectly stated.

The verification must be made a part of each complaint and it must have specific language. If your seller was served with a residential loan foreclosure suit which was filed after February 11, 2010, you should look for this verification. The specific verification must say, "Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief".

First, rule 1.110(b) is amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purposes of this amendment are (1) to provide incentive for the Plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial resources that are currently being wasted on inappropriately pleaded —lost note‖ counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to Defendants resulting from suits brought by Plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction Plaintiffs who make false allegations.

When filing an action for foreclosure of a mortgage on residential real property the complaint shall be verified. When verification of a document is required, the document filed shall

include an oath, affirmation, or the following statement: —Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief. We will be requiring that legal counsel now "verify" this complaint as per the new rule for the record.

## **UNCLEAN HANDS**

DEBTORS has engaged in misdeeds and this creates a foundation to inquire into such misdeeds. The practice of fabricating documents and backdating has become commonplace. CLAIMANT asserts and alleges that DEBTOR comes to this court with unclean hands. "A foreclosure action is an equitable proceeding which may be denied if the holder of the note comes to the court with unclean hands…" Knight Energy Services, Inc. v. Amoco Oil Co., 660 So.2d 786, 789 (Fla. 4 DCA 1995). The Florida Supreme Court held that while "mere notions or concepts of natural justice of a trial judge which are not in accord with established equitable rules and maxims may not be applied in rendering a judgment," relief from a foreclosure action may be provided "where the mortgagee failed to perform some duty upon which the exercise of his right to accelerate was conditioned." David v. Sun Federal Sav. & Loan Ass'n, 461 So.2d 93, 95-6 (Fla., 1984).

On information and belief, CLAIMANT assert that the DEBTOR failed to follow Florida law of negotiable instruments in obtaining necessary endorsements on the Promissory Note and Mortgage submitted to this court as evidence of the DEBTOR's alleged debt in addition to fraud. As such, the DEBTOR comes to this court with unclean hands.

## **DEBTOR Is Guilty Of Several Criminal Acts And Felonies In The State Of Florida**

16

Debtor is guilty several criminal acts and felonies in the state of Florida and should be judged by this honorable court justly. Additional criminal acts include but are not limited to:

F.S. 817.545 Mortgage fraud.—

(2) A person commits the offense of mortgage fraud if, with the intent to defraud, the person knowingly:

(d) Files or causes to be filed with the clerk of the circuit court for any county of this state a document involved in the mortgage lending process which contains a material misstatement, misrepresentation, or omission.

(4) For the purpose of venue under this section, any violation of this section is considered to have been committed:

(a) In the county in which the real property is located; or

(b) In any county in which a material act was performed in furtherance of the violation.

(5)(a) Any person who violates subsection (2) commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(b) Any person who violates subsection (2), and the loan value stated on documents used in the mortgage lending process exceeds $100,000, **commits a felony of the second degree**, punishable as provided in s. 775.082, s. 775.083, or s. 775.084


Florida Statues on FORGERY AND COUNTERFEITING

F.S. 831.01 Forgery.—Whoever falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of any clerk or register of a court, public register, notary public, town clerk or any public officer, in relation to a matter wherein such certificate, return or attestation may be received as a legal proof; or a charter, deed, will, testament,

17

bond, or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of

exchange or promissory note, or an order, acquittance, or discharge for money or other

property, or an acceptance of a bill of exchange or promissory note for the payment of

money, or any receipt for money, goods or other property, or any passage ticket, pass or

other evidence of transportation issued by a common carrier, with intent to injure or defraud

any person, shall be guilty of a felony of the third degree, punishable as provided in s.

775.082, s. 775.083, or s. 775.084.

F.S. 831.02  Uttering forged instruments.–Whoever utters and publishes as true a false,

forged or altered record, deed, instrument or other writing mentioned in s. 831.01 knowing

the same to be false, altered, forged or counterfeited, with intent to injure or defraud any

person, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s.

775.083, or s. 775.084.

F.S. 831.06  Fictitious signature of officer of corporation.–If a fictitious or pretended

signature, purporting to be the signature of an officer or agent of a corporation, is

fraudulently affixed to any instrument or writing purporting to be a note, draft or evidence

of debt issued by such corporation, with intent to pass the same as true, it shall be deemed a

forgery, though no such person may ever have been an officer or agent of such corporation,

or ever have existed.

(5)(a) Any person who violates subsection (2) commits a felony of the third degree,

punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(b) Any person who violates subsection (2), and the loan value stated on documents used in the mortgage lending process exceeds $100,000, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

F.S. 817.155 Matters within jurisdiction of Department of State; false, fictitious, or fraudulent acts, statements, and representations prohibited; penalty; statute of limitations.

F.S. 817.16 False reports, etc., by officers of banks, trust companies, etc., with intent to defraud.

Florida Statutes 701.02 - Assignment not effectual against creditors unless recorded and indicated in title of document; applicability

### True Party In Interest

Florida Rule of Civil Procedure 1.130(b) provides in pertinent part: "Any exhibit attached to a pleading shall be considered a part thereof for all purposes." Because the facts revealed by Plaintiff's exhibit are inconsistent with Plaintiff's allegations as to its ownership of the subject note and mortgage, those allegations are neutralized and Plaintiff's complaint is rendered objectionable. Greenwald v. Triple D Properties, Inc., 424 So. 2d 185, 187 (Fla. 4th DCA 1983).

Florida Rule of Civil Procedure 1.210(a) provides in pertinent part:

"Every action may be prosecuted in the name of the real party in interest, but a personal representative, administrator, guardian, trustee of an express trust, a party with whom or in

19

whose name a contract has been made for the benefit of another, or a party expressly

authorized by statute may sue in that person's own name without joining the party for whose

benefit the action is brought."

## MERS Assignment

The assignment attached to the amended complaint is from Mortgage Electronic

Registration Systems, Inc. (hereinafter "MERS") to Plaintiff, and that assignment is completely

ineffective. As nominee for the lender, MERS serves in a very limited capacity. Specifically, MERS

records the mortgage and tracks ownership of the lien. MERS has no substantive rights itself and,

therefore, cannot assign what it does not have. "A nominee of the owner of the note and mortgage

may not effectively assign the note and mortgage to another for want of an ownership interest in

said note and mortgage by the nominee." LaSalle Bank Nat. Ass'n v. Lamy, 824 N.Y.S.2d 769, 2006

WL 2251721 (Sup.2006).

When a state agency found that MERS is a mortgage banker subject to license and

registration requirements, MERS appealed to the Supreme Court of Nebraska and outlined its very

limited role as nominee. "Subsequently, counsel for MERS explained that MERS does not take

applications, underwrite loans, make decisions on whether to extend credit, collect mortgage

payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever.

MERS merely tracks the ownership of the lien and is paid for its services through membership fees

charged to its members." Mortgage Electronic Registration Systems, Inc. v. Nebraska Department

of Banking and Finance, 704 N. W.2d 784 (Neb.2005). "MERS argues that it does not acquire

mortgage loans and ... only holds legal title to members' mortgages in a nominee capacity and is

contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure)

without the authorization of the members. Further, MERS argues that it does not own the

promissory notes secured by the mortgages and has no right to payments made on the notes." Id.

Emphasis added. "Documents offered during the Department hearing support the limited nature of

MERS' services." [d. Based on the explanation from MERS itself and documents presented by

MERS and reviewed by the Supreme Court of Nebraska, it is undisputed that MERS serves in a very

limited capacity and holds no substantive rights. MERS is contractually prohibited from exercising

any rights in a foreclosure case without the authorization of the lender, and that prohibition was

confirmed by MERS itself.

There is no evidence of any such authorization in the instant case.  Other courts around the

country have likewise recognized the limited role that MERS plays as nominee. "We specifically

reject the notion that MERS may act on its own, independent of the direction of the specific lender

who holds the repayment interest in the security instrument at the time MERS purports to act. ..

Nothing in the record shows that MERS had authority to act."

Mortgage Electronic Registration Systems. Inc. v. Southwest Homes of Arkansas, 2009 WL

723182 (Supreme Court of Arkansas, 2009). "MERS's role in this transaction casts no light on the

contractual issues raised in this case." Id. "The relationship that MERS has to Sovereign is more akin

to that of a straw man than to a party possessing all the rights given a buyer."

Landmark National Bank v. Kesler, 216 P.3d 158 (Supreme Court of Kansas, 2009). "MERS

presents no evidence as to who owns the note, or of any authorization to act on behalf of the

present owner." In Re Vargas, 396 B.R. 511 (Bankr.C.D.Cal. 2008). "As noted above, MERS

purportedly assigned both the deed of trust and the promissory note to Consumer ... however, there

is no evidence of record that establishes that MERS either held the promissory note or was given the

authority by New Century to assign the note ... Accordingly, the Court concludes that there is

insufficient evidence that Consumer has standing to proceed with this litigation." Saxon Mortgage

Services, Inc. v. Hillery, 2008 WL 5170180 (N.D.Cal. 2008).

Not only are there substantive deficiencies with an assignment from MERS, but the instant

assignment was also untimely. The complaint was filed on January 7, 2009 and states, "The Plaintiff

owns and holds the note and mortgage." Complaint ~5. However, the assignment was not executed

until May 20, 2009 - more than four months after the complaint was filed. As stated above, there is

no indication on the assignment that the note and mortgage were physically transferred prior to that

date. "[T]he plaintiffs lack of standing at the inception of the case is not a defect that may be cured

by the acquisition of standing after the case is tiled." Progressive Exp. Ins. Co. v. McGrath

Community Chiropractic, 913 So.2d 1281 (Fla. 2nd DCA 2005). "If on the date the Provider tiled

the original statement of claim Mr. Joseph had not assigned benefits to the provider, only Mr.

Joseph had standing to bring the action. It follows that the Provider would have lacked standing

under these circumstances, and the case should have been dismissed." Id. There is no evidence of

record that establishes that MERS was authorized to assign anything to Plaintiff, and therefore, the

assignment was invalid. Even if the assignment were valid, it was not executed until after the

complaint was filed. Therefore, Plaintiff s standing at the inception of the case was based entirely on

the complaint and the exhibits attached thereto. It appears on the face of those exhibits that an

entity other than Plaintiff has standing, and those exhibits control over contrary allegations

contained in either version of the complaint. Plaintiff lacks standing now based on the substantive

deficiencies with an assignment from MERS.

Plaintiff lacked standing at the inception of the case based on those substantive deficiencies

and the timing of the execution of the assignment. Absent standing, there is no justiciable

controversy between the parties, and this case must be dismissed.

22

### Standing

There are no supporting affidavits or deposition testimony in the record to establish that Claimant validly owns and holds the note and mortgage, no evidence of a valid and legal assignment to Debtor, no proof of purchase of the debt nor any other evidence of an effective transfer. Thus, the court should reverse the summary judgment and render a ruling in favor of Claimant proceedings.

The Debtors' lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed."

The Assignment was "manufactured" by robo-signers after the fact therefore, the assignment was invalid. Even if the assignment were valid, it was not executed until after the complaint was filed. Therefore, Debtor standing at the inception of the case was based entirely on the complaint and the exhibits attached thereto. It appears on the face of those exhibits that an entity other than Debtor has standing, and those exhibits control over contrary allegations contained in either version of the complaint. Claimant lacked standing at the inception of the case based on those substantive deficiencies and the timing of the execution of the assignment. Absent standing, there is no justiciable controversy between the parties, and the foreclosure case must be dismissed. The court has no subject matter jurisdiction to hear this case as per Florida Civil Rules And Civil Procedure requiring a chain of title, chain of custody and requiring claims by real parties of interest.

or partial release, discharge, consent, joinder, subordination, satisfaction, or assignment of a

mortgage upon such property made by the mortgagee of record, without regard to the filing

of any Uniform Commercial Code financing statement that purports to perfect a security

interest in the mortgage or in a promissory note or other right to payment or performance

secured by the mortgage, and the filing of any such financing statement does not constitute

notice for the purposes of this section. For the purposes of this subsection, the term

"mortgagee of record" means the person named as the mortgagee in the recorded mortgage

or, if an assignment of the mortgage has been recorded in accordance with this section, the

term "mortgagee of record" means the assignee named in the recorded assignment.

F.S. 701.03 Cancellation.--Whenever the amount of money due on any mortgage shall be

fully paid, the mortgagee or assignee shall within 60 days thereafter cancel the same in the

manner provided by law.

F.S. 701.04 Cancellation of mortgages, liens, and judgments.—


The Debtors should be prohibited from introducing into evidence the alleged Promissory

Note that we know does not exist. The Debtor's recording and filing regarding the fraudulent

Assignment of Mortgage is should be stricken, and the Debtor should be prohibited from entering

the Assignment of Mortgage and any reference to a note or lost note from the record. The Debtor's

mode of operation of defrauding Floridians and courts of due process by racketeering in fraudulent

documentation should be stopped. This court must grant this motion. The Debtor's complaint

should be dismissed with prejudice, based on the fraud intentionally perpetrated upon the Court by

the Debtor and for the Claimant. Decision regarding standing would be based on the fact the note

being used is not from the Debtor and there is no assignment of mortgage attached. The only

25

(1) An assignment of a mortgage upon real property or of any interest therein, is not good or effectual in law or equity, against creditors or subsequent purchasers, for a valuable consideration, and without notice, unless the assignment is contained in a document that, in its title, indicates an assignment of mortgage and is recorded according to law.

(2) This section also applies to assignments of mortgages resulting from transfers of all or any part or parts of the debt, note or notes secured by mortgage, and none of same is effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration without notice, unless a duly executed assignment be recorded according to law.

(3) Any assignment of a mortgage, duly executed and recorded according to law, purporting to assign the principal of the mortgage debt or the unpaid balance of such principal, shall, as against subsequent purchasers and creditors for value and without notice, be held and deemed to assign any and all accrued and unpaid interest secured by such mortgage, unless such interest is specifically and affirmatively reserved in such an assignment by the assignor, and a reservation of such interest or any part thereof may not be implied.

(4) Notwithstanding subsections (1), (2), and (3) governing the assignment of mortgages, chapters 670-680 of the Uniform Commercial Code of this state govern the attachment and perfection of a security interest in a mortgage upon real property and in a promissory note or other right to payment or performance secured by that mortgage. The assignment of such a mortgage need not be recorded under this section for purposes of attachment or perfection of a security interest in the mortgage under the Uniform Commercial Code.

(5) Notwithstanding subsection (4), a creditor or subsequent purchaser of real property or any interest therein, for valuable consideration and without notice, is entitled to rely on a full

24

available assignment on record is fraudulent. The Debtor failed to state a claim upon which relief can be granted. The complaint lists the name of a Mortgage Company that is not party to this suit, Plaintiff failed to establish how they came to possess this claim and there is no evidence of any contractual agreement between the Debtor and the Claimant and yet there is no mention of the Debtor anywhere in the copies of the infamous "lost note" anywhere (Exhibit B). In fact there is no evidence submitted to the court other than a fraudulent assignment establishing standing this case.

## DISMISSAL OF FRAUDULENT COMPLAINT IS MANDATORY

Therefore here, the Claimant is entitled to the dismissal of said facially fraudulent Complaint. This court has been notified of a Felony Crime and must act. The Court should find that the purported Assignment did not exist at the time of filing of foreclosure action; that the purported Assignment was subsequently created fraudulently, in a purposeful, intentional effort to mislead the Claimant and this Court and perpetrated fraud on the public record. This Court has the power to dismiss a case on a showing of a commission of fraud on the Court by a party. (See Taylor v. Martell (41 DCA, 2005). Also. F.R. c.P. 1.150 allows the striking of sham pleadings upon a proper showing. The Court must reject the Assignment of Order Granting Debtors TWENTY-FIFTH OMNIBUS TO CLAIM and should not permit it to be introduced into this case for any purpose, and further hold that the Debtor does not and never had standing, committed fraud upon the court, is in violation of Florida Fair Debt Collection Practices, is in violation of Florida Consumer Practices Act, failed to yield to condition precedent, failed to yield to mandate by the Florida Supreme Court, comes with unclean hands, violates Florida Rules Of Civil Procedure, flagrant disregard of due process and the public trust, and countless other felonies and misdemeanors. This mortgage is

therefore unenforceable and stands unperfected on the public record.  The Debtor should not be allowed to reintroduce a lost note affidavit or an assignment of mortgage in court again.

1. **DEMANDS :** Pursuant to the Constitution for the United States, the Uniform Commercial Code (UCC) 3-601, 3-602, 3-603, 3-604, 3-605, the Florida Fair Debt Collections Practices Act (FDCPA) 15 U.S.C. §§ 1601, 1692 et seq and all other applicable law, I demand for Claimant and Court to receipt of this demands :

    1. Verify purported debt;

    2. **DISPUTING THAT PURPORTED DEBT DOES NOT CONSTITUTE FRAUD;**

    3. Produces all documents related to the alleged debt including but not limited to "T-Accounting" (Complete Records) and the original Promissory Note signed by Claimant.

    Base on the facts, evidence, and circumstances summarized above and fully describe in this document, a settlement ruling is requested.

A FINAL JUDGEMENT by **THE HONORABLE MARTIN GLENN** in favor of **Claimant,** to lay to rest these proceeding once and for all. This has been in the court system since 2009, it is now 2013.

**DEMANDS OF CLAIMANT TO DEBTOR  TO SATISFY PROVEN UNCONTESTED FRAUDGULENT and UNLAWFUL ACTIONS**

1. SUBMIT TO ALL THREE CREDIT BUREAUS (**TRANSUNION, EQUIFAX, AND EXPERIAN**) A LETTER STATING CLAIMANT DEBT IS **"SATISFIED AND PAID IN FULL"**, AND REMOVAL OF ALL NEGATIVE POINTS AGAINST CLAIMANTS CREDIT SCORE.

2. A LETTER FROM DEBTOR TO CLAIMANT CLEARING CLAIMANT OF ANY AND ALL DEBTS UNDER DEBTOR, STATING "**SATISFIED AND PAID IN FULL**".

3. A LETTER RELEASING ANY AND ALL CLAIMS OF REAL PROPERTY OWNERSHIP FROM DEBTOR, RELEASING OF **UNCONTESTED SOLE OWNERSHIP TO CLAIMANT.**

4. PAY IN FULL IN THE AMOUNT OF **$500,000.00** TO CLAIMANT TO SATISFY CLAIMANT'S **PROVEN** FACTS, OF DEBTORS **OBVIOUS FRAUD AGAINST THE COURT AND CLAIMANT.**

5. Pay Claimants in full any and all but not limited to Court fees, cost, fine, and or accurance with in and or associated with this case, due to but no limited to ignorance and or negligence.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail upon; Morris & Foerster LLP, 1290 Avenue of the Americas, New York, New York 10004, Attn: Gary S. Lee, Esq., Norman S. Rosenbaum, Esq. And Jordan A. Wishnew, Esq., attorneys for the Debtors

Kramer Levin Naftails & Frankel LLP, 1117 Avenue of the Americas, New York, New York 10036, Attn: Kenneth H. Eckstien, Esq. And Douglas H. Mannal, Esq., Anttorneys for the Official Committee of Unsecured Creditors appointed in these cases.

Date: ___10/7/2013___

LILIA MEDRANO

2402 AVENUE A TERR NW

WINTER HAVEN, FLORIDA [33880]

28