**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:
Residential Capital, LLC *et al.*, Chapter 11
Debtors

Case No. 12-12020 (MG)
Administratively Consolidated

**JOINDER OF PAUL N. PAPAS II AND DECLARATION IN SUPPORT OF EMERGENCY MOTION TO VACATE VERBAL "ORDERS" OF JUDGE MARTIN GLENN ENTERED ON OCTOBER 9, 2013 PURPORTING TO REQUIRE ATTORNEY WENDY ALISON NORA TO SHOW CAUSE WHY SHE SHOULD NOT BE SANCTIONED FOR FILING THE RESPONSE OF PAUL N. PAPAS II TO THE DEBTORS' OBJECTION TO CLAIM #242 INITIATED SUA SPONTE ON THE GROUNDS THAT HIS RESPONSE WAS "SCURRILOUS" UNDER BANKRUPTCY RULE 9024 INCORPORATING RULE 60(b)(4) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND JOINDER THE MOTION TO DISQUALIFY JUDGE MARTIN GLENN UNDER 28 USC SECS. 144 AND 455(a) AND 455(b)(1)**
**(ALL RIGHTS RESERVED)**

Paul N. Papas II, pro se, joins in the Emergency Motion of Wendy Alison Nora for Reconsideration and/or Motion to Vacate certain verbal orders entered on October 9, 2013 purporting to require the undersigned to show cause why she should not be sanctioned for filing a "scurrilous" pleading identified as the Response of Paul N. Papas II to the Debtors' Objection to claim #242 pursuant to Bankruptcy Rule 9024 Incorporating Rule 60(b)(4) of the Federal Rules of Civil Procedure (FRCP), and respectfully shows the Court:

1. Paul N. Papas II, hereinafter "Claimant," declares that he is the counterparty to homeowners' property rights in 115 properties described on the list attached to his Amended Claim #17, now recorded as Claim 7171 in the private data base operated by Kurtzman Carson, LLC (KCC, LLC).

2. The Debtors were aware of his interest in the properties in these proceedings before these proceedings were commenced since his list of properties in which he claims an interest was filed in Maricopa County, Arizona Superior Court in Papas v. GMAC, et al., Case No. CV2010-050038 and the Debtors never objected to his publicly recorded claim of interest in the subject properties.

3. The Debtors were reminded of their duty in bankruptcy to disclose all real estate in which they claimed an interest and specifically advised that they had failed to list up to 120 properties in which this Claimant has an interest (which they are foreclosing or have foreclosed with forged or perjured documents) at the adjourned First



1

Meeting of Creditors. They were specifically advised of the fact that they did not list many of the properties or the litigation matters in which this Claimante has an interest has an any of their Schedules and Statements of Financial Affairs.

3. This Claimant's Proof of Claim numbered 242 in the private data base operated by KCC, LLC has been on file since July 2, 2012.

4. This Court did not enter its Order requiring claimants to specify which Debtor is responsible for any claimants' damages until August 29, 2012 (Doc. 1309) in which all claims filed prior to the date of entry of that Order were specifically accepted as filed without being required to be refiled in order to specify which of the 51 affiliated Debtors are liable for the Claimants' damages.

5. The Debtors chose to consolidate their bankruptcy filings in the name "In re RESCAP" and, in detrimental reliance on the consolidation, this Claimant filed his Proof of Claim designation 242 by KCC, LLC on July 2, 2013.

6. Debtors are estopped from now objecting to his Proof of Claim #242 on the basis that he did not comply with an Order entered *after* his Proof of Claim was filed when his Proof of Claim was specifically excluded from the requirements of that Order and not required to be refiled according to the Order entered on August 29, 2012 as a claim filed before the entry of the Order.

7. His Amended Proof of Claim #17 in the court's official claims registry (numbered 7171 by KCC, LLC) amends Proof of Claim #242 in the KCC, LLC private registry as against RESCAP and its subsidiaries.

8. Exhibit A attached hereto represents that Residential Capital, LLC (RESCAP) a wholly owned subsidiary of Ally Financial, Inc. (AFI) and is the parent company of GMAC Mortgage, LLC, which appears to claim an interest derived from Mortgage Electronic Registration Systems, Inc. (MERS.) The name of MERS is used as the nominee of various "Lenders" who acted as purported originators of mortgage "loans" at closings on the 115 properties in which he is the counterparty with the homeowners.

9. Upon information and belief, the purported mortgage "loans" were sham transactions, designed to obtain signatures on notes and mortgages or deeds of trust from homeowners throughout the nation as collateral for Residential Mortgage Backed Securities (RMBS) which had already been issued by various Real Estate Mortgage Investment Conduit (REMIC) trusts. The essential nature of the transactions which took place at the "closing" was concealed from the homeowners, who believed that they were obtaining mortgage financing from the entities listed as "Lenders" on the loan documents, when, in fact, the real purpose of the transactions was to obtain notes and mortgages or deeds of trust as collateral for securities which had already been issued and sold.

2



10. Upon information and belief, AFI created the various REMIC trusts using its wholly owned subsidiaries, such as Residential Asset Securities Corporation, to issue securities and created other subsidiaries to act as buyers and sellers of collateral fraudulently obtained at "closings," consisting of homeowners' signatures on the notes and mortgages or deeds of trust, created other subsidiaries to be used as depositors into the REMIC trusts and created other subsidiaries to act as servicers and master servicers of the payments made by homeowners on the collateral purportedly delivered to the trustees of the REMIC trusts, which was never actually conveyed to the REMIC trusts. AFI profited from this scheme created and executed without the knowledge and consent of the homeowners.

11. The only way that this Claimant can bring his Claims to this Court in this action is by making his claim against RESCAP as the parent company of sham subsidiaries, all of which are wholly owned subsidiaries of AFI. AFI deliberately created this bankruptcy in order to avoid its liabilities to the homeowners whose signatures fraudulently obtained on documents purporting to be mortgage loans but were really collateral for securities issued by AFI's subsidiaries, at the direction and under the control of AFI.

12. The Response of Paul N. Papas II to the Debtors' Motion to Disallow his Claim #242 is not "scurrilous" but is supported by the facts and the existing law.

13. This Court found in its Order Denying Appointment of a "Borrowers'" Committee, Doc. 1921, pages 5 and 6:

> **B. Sale of the Debtors' Loan Servicing Platform and Legacy Loan Portfolio**
> Faced with daunting prospects, the Debtors' ultimate parent, Ally Financial Inc. ("AFI"), which also owns substantial non-residential mortgage-related businesses, developed a strategy to file these chapter 11 cases and seek an early sale of its significant mortgage-related businesses.9 AFI's goal was obviously to isolate its money-losing businesses and shed as much of the present and future liabilities associated with those businesses as possible.
>
> 9 "The purpose of these Chapter 11 cases is to facilitate an orderly sale of the Debtors' most valuable assets, settle the Debtors' claims with their parent AFI, resolve the Debtors' legacy liabilities and complete an orderly wind-down of their remaining assets." *Id.* ¶ 105.

14. Furthermore, the uncontroverted judicially noticeable facts support this Claimant's position that AFI has received an intends to retain approximately 12 billion dollars in Troubled Asset Relief Program (TARP) funds for its other business operations by shedding its "money-losing businesses . . . and as much of the present and future liabilities associated with those businesses as possible."

15. Title 11 of the United States Code provides the basis for this Claimant's Response in which he argues, as a matter of law, that the United States Bankruptcy

3



Code does not permit a parent company to use the bankruptcy of its subsidiaries, designed by the parent company as a strategy to avoid liabilities for its own tortious conduct, to obtain a Third Party Release, which is exactly what AFI seeks in the Chapter 11 Plan.

16. This Claimant has a good faith basis for his positions, as a matter of fact and law, that AFI is the real party in interest in these proceedings and has designed and engineered this bankruptcy to escape its own liabilities for creating multiple alter egos as purported subsidiaries for the purpose of fraudulently obtaining, buying and selling notes and mortgages or deeds of trust as collateral to back securities issued by its alter egos, the benefit of which sales inured to AFI (formerly known as GMAC Financial Services) and, as of 2006, its partner, Cerberus Capital Management, LP (Cerberus.)

17. Despite the complete failure of the Examiner appointed by this Court to investigate the underlying liability of AFI to the homeowners whose signatures were fraudulently taken and sold for profit as well as the remarkable failure of the Examiner to examine one single loan transaction in any collateral pool to ascertain whether or not the "mortgage" documents were ever delivered to any REMIC trust, the Phoenix Light SF Limited plaintiffs (Exhibit A to the Papas Response) have conducted the investigation inrto numerous similar REMIC trusts purportedly funded under the same ubiquitous securitization scheme and found the trusts examined by the plaintiffs in that case to be empty. The fact that the ubiquitous failure to fund REMIC trusts with collateral consisting of homeowners' signatures on notes and mortgages or deeds of trust is well-supported is not scurrilous. In individual cases, the evidence that the REMIC trusts were never funded is the logically inference which arises from the forged and perjured documents. Because the trusts are empty, GMAC Mortgage, LLC was instructed by AFI and Cerberus management to forge mortgage assignments and assignments of deeds of trust out of the "MERS" data base in order to foreclose on homeowners and Residential Funding Company, LLC (RFC) employees and Lender Processing Services, Inc. (LPS) employees were instructed to forge endorsements and allonges on notes to make it appear that the notes had been delivered to the trusts. The trust's Pooling and Servicing Agreements (PSAs) required endorsements on the notes at every step of the securitization process, but the notes were never endorsed according to the requirements of the PSAs. The forgeries and perjuries were designed to conceal the failure to deliver the collateral to the REMIC trusts.

18. The name "Mortgage Electronic Registration Systems, Inc." (MERS) has been used to conceal the securitization scheme. Under the cover of MERS, GMAC Mortgage, LLC and RFC have confiscated homes in it capacity as "servicer" for unnamed parties, claimed the confiscated homes as assets in these proceedings. They have been liquidating the homes in order to pay the proceeds to creditors other than the homeowners who have been injured by the scheme, under the cover of these bankruptcy proceedings. MERS changed its named to MERSCORP, Inc. on January 1, 1999, retained its corporate registration as "Mortgage Electronic Registrations Systems, Inc." apparently after it ceased to exist and is merely the name of a data base used



4

by mortgage servicers to assign collateral to themselves.

19. This Claimant amended his Claim to narrow its scope to the interests of the homeowners with whom he had contracts and who have been unable to defend themselves in court proceedings, including these proceedings.

20. The Debtors now seek to have homeowners' claims and the claim of Mr. Papas disallowed and expunged in unprecedented proceedings. The Bar Date Order of August 29, 2012 (Doc. 1309) did not provide instructions to homeowners to submit Complaints in compliance with the Federal Rules of Civil Procedure (FRCP) but plainly instructed the use of Bankruptcy Form B-10. Form B-10 contains no indication that the claims must be pleaded in accordance with the FRCP *because no such formal pleadings are required under Bankruptcy Rule 3001*.

21. Under Bankruptcy Rule 3001 documents are not required to be produced in support of the claims *unless the claim is based upon a writing*. Mr. Papas stands ready and willing to produce any supplementary documentation as may be required for proof in a contested proceeding, which Proof of Claim #242 plainly offered to provide upon request. There is nothing in Bankruptcy Rule 3001(c)(1) which requires a claimant to produce documents in addition to Bankruptcy Form B-10 *unless the claim against the Debtor is based upon a writing*. He is entitled to contested proceedings to prove his claims and will be then be required to support his claim with evidence. The process presently being employed in this case is unprecedented. Judge Glenn is rewriting Title 11 and the Federal Rules of Bankruptcy Procedure under 11 USC sec. 105, which does not allow such an application. Claimants, such as Mr. Papas are being required to meet a standard of federal civil procedure is not required or authorized under Bankruptcy Rules 3001 and 3007. The only application of the Federal Rules of Civil Procedure to contested claims proceedings is to apply the federal pleadings requirements (facts sufficient to prove a cause of action) to the proofs in the contested claims proceeding when the evidentiary hearings are actually held. "Failure to follow" the Federal Rules of Civil Procedure is not and never has been a basis for denying Proofs of Claim in bankruptcy proceedings. This Claimant's right to contested proceedings, including evidentiary proceedings at which such proofs will be made. Debtors' authorities stand for no broader application than that the pleadings standard is applied to the proof and do not create a new rule for the initial preparation of Proofs of Claim.

22. This Claimant joins in the Motion to Vacate the finding that his Response is "scurrilous" and joins in the Motion to Disqualify Judge Glenn because Judge Glenn has engaged in conduct which gives the appearance of bias, followed by conduct which displays actual bias against his chosen counsel, whose pro hac vice admission was revoked sua sponte without notice and opportunity for hearing on this Claimant's position and the position of her other clients, named and yet to be named in these proceedings. The attempt to proceed *rule nisi* against this Claimant's counsel after the fact is a further demonstration of actual bias against homeowner claimants in these



5

proceedings, now fully exposed by Judge Glenn's efforts to silence their advocate.

23. There is nothing "scurrilous" in the Response of this Claimant. The Response is true, supported by uncontroverted facts in the record of these proceedings and by judicially noticeable facts. The truth of his Response is demonstrable, notwithstanding the Debtors' failure to describe the history of their business operations, the nature of their business operations, the nature and extent of their claimed ownership of assets either in their Schedules and Statements of Financial Affairs or their wholly inadequate Disclosure Statement, amended 5 days before the hearing on its approval and to which no party was allowed to object to its adequacy after the amendment.

24. Judge Glenn has long acted in a way which suggested bias against homeowners and their representatives since he entered the Supplemental Servicing Order (Doc. 774) and then failed to provide relief from the Debtors' misuse of that Order which allowed them to use the automatic stay as both a sword and a shield in litigation. The suggestion of bias became stronger when denied the necessary and proper Motion to Appoint a "Borrowers'" Committee on strong evidence that homeowners' interests in these proceedings were not being adequately (or even nominally) represented by the Unsecured Creditors Committee on the essential issue of foreclosure having been and continuing to proceed on forged and perjured documents.[1] (Doc. 1921) The Bar Date Order entered on August 29, 2012 (Doc. 1309) contained no instructions to homeowner claimants that the had to file the equivalent of complaints in a civil proceeding, although most could have done so, if they were instructed that such pleadings were going to be required. Then, *without prior notice* of the new claims processing requirements and months after the Bar Date Order, Judge Glenn entered the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 3007 and 9019(b) Approving (I) Claim Objection Procedures, (II) Borrower Claim Procedures, (III) Settlement Procedures, and (IV) Schedule Amendment Procedures on March 21, 2013 (Doc. 3294), which creates, without lawful authority and extrajurisdictionally, grounds for objecting to "Borrower" Claims as a class of persons to be subjected to disparate treatment without a rational basis in violation of the Separation of Powers Doctrine and the equal protection clause fo the Fourteenth Amendment to the United States Constitution. Judge Glenn now purports to impose the post facto requirements, extrajurisdictionally created, on Claims filed prior to the entry of the Order. The Order of March 21, 2013 (Doc. 3294) is void as unconstitutional and thousands of Borrowers' Claims have been disallowed under the void Order of March 21, 2013.

---

[1] The "Kessler" class action from which the sole Borrower representative was selected to serve on the Unsecured Creditors' Committee does not involve foreclosures on forged and perjured documents, but rests upon the second mortgage lending practices far remote from the ubiquitous foreclosure scheme in which these Debtors have been allowed to participate under color of Judge Glenn's Final Supplemental Servicing Order (Doc. 774).



25. Judge Glenn's displayed bias against homeowners and their claims in these proceedings, his unconstitutional and void Order of March 21, 2013 and the numerous Orders disallowing homeowner claims based thereon, which are likewise void, boiled over to be fully exposed when he threatened to have your Claimant's counsel bodily removed by force from the Courtroom on October 9, 2013, purportedly on the basis of having filed a "scurrilous" Response on his behalf, when no party in interest took the position that the Response was scurrilous and the Response is not, in fact or law, scurrilous.

WHEREFORE, the undersigned respectfully moves to vacate the verbal Order of Judge Martin Glenn revoking Ms. Nora's pro hac vice admission by which she represents the interests of this Claimant upon the grounds that it is void as in violation of the <u>United States Constitution;</u> to disqualify Judge Glenn for the appearance of improper bias, followed by demonstration of his actual bias by which he extrajudicially threatened to subject his counsel to bodily seizure and removal from the courtroom without probable cause to do so in an effort to silence and intimidate her. Judge Glenn is disqualified entering any decision the Debtors' efforts to disallow his Proof of Claim as amended due to the disqualifying appearance of impropriety followed by demonstration of actual bias and extreme prejudice to homeowner claims displayed at the October 9, 2013 proceedings.

Dated at Phoenix, Arizona this 17th day of October, 2013.

_____
Paul N. Papas II, Claimant and Counterparty/Constructive Trustee for
(certain) Homeowners and Former Homeowners
4727 E. Bell Road #45 PMB 350
Phoenix, Arizona 85032
VOICE: (602) 493-2016
e-mail: paul_papas@mylegalhelpusa.com


**UNSWORN DECLARATION OF UNDER PENALTY OF PERJURY**

Paul N. Papas II states under penalty of perjury pursuant to 28 USC sec. 1746, that facts set forth in the foregoing Motion are true and correct, according to the best of his knowledge information and belief.

_____
Paul N. Papas II

7

**UNSWORN DECLARATION OF SERVICE**

    Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York October 17, 2013 by CM/ECF and thereby served the same on all parties capable of service thereby.

_____
Wendy Alison Nora



8

# EXHIBIT A

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 10-3131

Short Caption: In re: Wendy A. Nora v. Residential Funding Company, LLC

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Residential Funding Company, LLC

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Bass & Moglowsky, S.C.

Gray & Associates, LLP (appeared in state court and bankruptcy court)

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

see attached

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

see attached

Attorney's Signature: _____ Date: 10/1/10

Attorney's Printed Name: Penny G. Gentges

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [X]  No [ ]

Address: Bass & Moglowsky, S.C.
501 W. Northshore Drive, Suite 300, Milwaukee WI 53217

Phone Number: (414)228-6700    Fax Number: (414) 228-6506

E-Mail Address: penny@basmog.com

rev. 01/08 AK

# RESIDENTIAL FUNDING COMPANY, LLC
# COMPANY OWNERSHIP PROFILE

Residential Funding Company, LLC, a Delaware limited liability company is a wholly owned subsidiary of GMAC-RFC Holding Company, LLC, a Delaware limited liability company. GMAC-RFC Holding Company, LLC is a wholly owned subsidiary of Residential Capital, LLC, a Delaware limited liability company. Residential Capital, LLC is owned by GMAC Mortgage Group LLC, a Delaware limited liability company which holds 99% interest and ResCap Investments LLC, a Delaware limited liability company which holds 1% interest. GMAC Mortgage Group LLC is a wholly owned subsidiary of Ally Financial Inc., a Delaware corporation. Ally Financial Inc. ownership is as follows. The U.S. Department of the Treasury owns 56.33%, Cerberus Affiliates own 14.88%, GMAC Common Equity Trust I (the GM Trust) owns 9.86% and General Motors Company (through GM Finance Co. Holdings LLC, a Delaware limited liability company), a Delaware Corporation owns 6.69%. The remaining 12.24% of membership interest is held by various investors, none of which holds more than 5% of Ally Financial Inc.