Wendy Alison Nora                                     Hearing Date: November 7, 2013
310 Fourth Avenue South, Suite 5010                   Hearing Time: 2:00 p.m. EST
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026


## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re:

Residential Capital, LLC *et al.,*              Chapter 11
                          Debtors               Case No. 12-12020 (MG)
                                                Administratively Consolidated

---

## RESPONSE TO DEBTORS' OBJECTION TO
## NORA PROOFS OF CLAIM #1 IN THE COURT REGISTRY OR #2 IN
## THE PRIVATE CLAIMS REGISTRY OPERATED BY KURTZMAN CARSON, LLC
## (KCC, LLC) AND #440 IN THE KCC, LLC PRIVATE CLAIMS REGISTRY
(NOTICE: THIS MOTION IS NOT TO BE DETERMINED BY
JUDGE MARTIN GLENN WHO HAS DISPLAYED EXTREME BIAS AND PREJUDICE
AGAINST THE MOVANT BY THREATENING HER WITH BODILY SEIZURE AND
REMOVAL FROM THE COURT PROCEEDINGS ON OCTOBER 9, 2013 WITHOUT
PROBABLE CAUSE, REVOKED HER PRO HAC VICE ADMISSION WITHOUT NOTICE
AND OPPORTUNITY TO BE HEARD, FILED A SUBSEQUENT SUA SPONTE ORDER TO
SHOW CAUSE *POST FACTO* PURPORTING TO ACCORD THE OPPORTUNITY FOR
HEARING ON THE PRO HAC VICE ADMISSION AFTER THE REVOCATION THEREOF
WITHOUT CAUSE OR HEARING, ON FALSE AND FICTITIOUS GROUNDS AND UPON
A PATTERN OF CONDUCT IN THESE PROCEEDINGS WHICH HAS ESCALATED TO
THE POINT OF COMPLETE EXPOSURE OF JUDGE GLENN'S ACTUAL BIAS AGAINST
THE RIGHTS OF HOMEOWNERS TO BE HEARD IN THESE PROCEEDINGS, WHICH
RIGHTS ARE DESCRIBED BY JUDGE GLENN AS "*RIGHTS, IF ANY*"[1]
**(ALL RIGHTS RESERVED)**

---

[1] See Order to Show Cause Why Pro Hac Vice Admission of Wendy Alison Nora Should Not
Be Revoked (Doc. 5330) dated October 10, 2013 at page 5, ¶1 which provides that the "rights, if any," of
homeowner clients, who she represented prior to the October 9, 2013 sua sponte revocation of the pro
hac vice admission, should be addressed in her Response to the post facto rule nisi proceedings initiated
sua sponte by Judge Glenn after he displayed extreme prejudice against this Claimant and her clients.

1

Wendy Alison Nora files this Response to be heard by the Court, at such time as a qualified and unbiased judge is appointed to preside in this matter, in connection with the Motion to Consolidate her Proofs of Claim #1 filed with the Court (registered as Claim #2 in the parallel private claims registry maintained by KCC, LLC) and #440 filed in the Debtors' private claims registry with KCC, LLC with the adversary proceeding entitled <u>Nora v. Residential Funding Company, LLC, et al.</u> (Adv. No. 13-1208) which is now set for further proceedings in this matter[2] pursuant to FRCP 42(a) and shows the Court:

1.  Debtors' Objection to Proofs of Claims #1 (KCC, LLC Proof of Claim #2) and KCC, LLC Proof of  #440 (collectively, the Nora Proofs of Claim) are based upon their defenses to the pending adversary proceeding.

2.  Debtors are seeking to disallow Nora's  Proofs of Claims under the *Rooker-Feldman* doctrine.  Nora could not have litigated the issues in the state court foreclosure proceeding and Nora is not seeking federal court review of her foreclosure proceeding,  as is plainly shown by her pending appeal to the Wisconsin Supreme Court from the state court's failure to vacate the

---

[2]  The proceedings at the Rule 16(b) Scheduling Conference held on October 9, 2013 are questionable as to the qualifications of Judge Glenn to then and there preside.   This Claimant and adversary plaintiff was proceeding before Judge Glenn under duress for legitimate fear of further unjust proceedings, unconstitutional and extrajurisdictional proceedings because she had been threatened with bodily seizure and removal from the courtroom in each of three (3) matters on the morning and early afternoon of October 9, 2013.  The Debtors, who were not operating under duress and the adversary proceedings Defendants, none of whom were threatened with unconstitutional seizure of their bodies contrary to the Fourth Amendment of the <u>United States Constitution</u> knowingly, voluntarily and intelligently proceeded at the status conference and are deemed bound to the validity of the proceedings to which they did not object nor did they inquire as to the knowing, voluntary and intelligent participation therein by this Claimant.  Simply for purposes of judicial economy, this Claimant agrees to be bound by Judge' Glenn's scheduling orders entered at the status conference, subject to any party's right to relief therefrom for good cause,  but does not waive the requirement that Judge Glenn be disqualified from further proceedings in the adversary matter as well as any further proceedings in the lead case, <u>In re RESCAP, LLC</u>, Case No. 12-12020, for actual, extreme bias and prejudice against homeowner claims in these proceedings.

void judgment of foreclosure and she is entitled to be heard in evidentiary proceedings as to the

facts which show that she was denied the minimum requirements of procedural due process in

state court.

3.    Debtors are alternatively raising the affirmative defenses to Nora's claims under the

doctrines of res judicata and collateral estoppel.  Issue has been joined as to the Debtors'

affirmative defenses to the Proofs of Claims and the Debtors' must now show, by evidence, that

there is identity of the parties, that there was an identity of the claims, that there was final order

disposing of all issues which could have been litigated in the state court foreclosure proceeding

and that the minimum requirements of due process were met in the state court foreclosure

proceedings to prove their affirmative defense of res judicata.   To prove their affirmative defense

of collateral estoppel, they must show, by evidence, that the various defendants are in privity

with Residential Funding Company, LLC and that public policy requires that the judgment be

given preclusive effect in these proceedings.   Debtors cannot accomplish these strenuous

burdens of proof on a Motion to Disallow Claims #1 and #440, especially since the Debtors have

continued to commit constitutional torts against the Claimant since the state court judgment of

foreclosure was entered and have continued to do so in these very proceedings, under color of

unconstitutional orders of this Court.

4.    Both the contested matter which arises upon Debtors' Objection to Nora's Proof of

Claims and the adversary proceedings involve the same factual disputes and issues of law and

should be consolidated and heard and determined in proceedings in a single proceeding under

FRCP 42(a).  Nora has moved for consolidation of the two pending  matters for litigation and the

contested matters must proceed as consolidated matters as set forth in the Motion for

3

Consolidation (Doc. 5392 in these proceedings and Doc. 33 in the adversary proceedings.)  Nora

cannot be denied an evidentiary hearing on her Proofs of Claims unless and until she is given the

opportunity to be heard on proper motions to dismiss the adversary complaint, which is now

pending amendment and is due to be filed on or about January 15, 2013.

5.    The Scheduling Order entered on October 9, 2013 permits amendment of the

adversary complaint as well as the joinder of additional parties directly and by intervention on or

before January 15,[3] 2013, stays Nora's discovery rights until after the Court's determination on

the anticipated Motions to Dismiss which are due to be filed 45 days after the filing of the

Second Amended Complaint.  Nora's discovery rights under Bankruptcy Rule 9014 are stayed as

to the adversary proceeding which is pleaded upon essentially identical facts, enhanced only by

newly discovered evidence since the original first amended pleading of <u>Nora v. Residential</u>

<u>Funding Company, LLC, et al.</u>  (Case No. 10-cv-748) in the United States District Court for the

Western District of Wisconsin, which she was prevented from amending by the automatic stay in

these proceedings effective May 12, 2012, while the motions to dismiss were then pending.

Judge William M. Conley of the United States District Court for the Western District of

Wisconsin held, in purportedly "denying" Nora's Motion for Reconsideration, that whether or

not the Wisconsin federal district court's order of dismissal on the basis of the *Rooker-Feldman*

doctrine was void or voidable as to the Debtors who are Defendants therein is a matter for

determination by this Court.  Nora has appealed from Judge Conley's *Rooker-Feldman* dismissal

---

[3]  January 15, 2013 was the date set for the filing of the Second Amended Complaint, to the best
of Nora's recollection.  She was somewhat shaken by the duress under which she was proceeding, knows
that the date for Plaintiff's amended pleadings and joinder of additional Plaintiffs was set for "after the
holidays" and apologizes if the January 15, 2013 date is not accurate upon recourse to the transcript of
the proceedings to be ordered.

and "denial" of her Motion for Reconsideration to the United States Circuit Court of Appeals for

the Seventh Circuit in Appeal No. 13-1660, which appeal is pending.  Nora submits that Judge

Conley was required to decide whether his *Rooker-Feldman* dismissal of the Nora action is void

or voidable due to the automatic stay in these proceedings and that he and the Seventh Circuit

Court of Appeals have concurrent jurisdiction to decide that issue of law.   Primarily, Nora

argues that newly discovered evidence, an admission by silence on appeal by counsel for RFC,

LLC that the mortgage assignment and allonge to the mortgage note were, as Nora finally had

sufficient evidence to assert (not available at the time of the state court foreclosure proceedings)

are **forgeries**.

6.   Wisconsin law holds that no rights are created by forged documents and foreclosure

judgments entered thereon are void.  State Bank of Drummond v. Christophersen,  93 Wis. 2d

148, 286 N.W.2d 547 (1980)  Wisconsin law also holds that void judgments may be attacked,

directly or collaterally, at any time.  Halbach v. Halbach, 259 Wis. 329, 331, 48 N.W.2d 617

(1951)  In Neylan v. Vorwald, 124 Wis.2d 85, at 97,  368 N.W.2d 648 (1985), the Wisconsin

Supreme Court stated:

> This court stated in West v. West, 82 Wis. 2d 158, 165-66, 262 N.W.2d 87 (1978), that
> the former sec. 269.46 (1) "presupposes the entry of a valid judgment . . . It has nothing
> whatsoever to do with the vacation of a void judgment." A void judgment may be
> expunged by a court at any time. In Kohler Co. v. ILHR, 81 Wis. 2d 11, 25, 259 N.W.2d
> 695 (1977), written after the adoption of present sec. 806.07, we said: "When a court or
> other judicial body acts in excess of its jurisdiction, its orders or judgments are void and
> may be challenged at any time. A judgment or order which is void may be expunged by a
> court at any time. Such right to expunge a void order or judgment is not limited by
> statutory requirements for reopening, appealing from, or modifying orders or judgments.
> [Cases cited.] State ex rel. Wall v. Sovinski, 234 Wis. 336, 342, 291 N.W. 344 (1940).
> See also, Home Bank v. Becker, 48 Wis. 2d 1, 7, 179 N.W.2d 855 (1970).

The Wisconsin Supreme Court went on to quote Moore's Federal Practice , in *Neylan v.*

5

*Vorwald*, supra, page 99-100:

Similarly, in 7 J. Moore, Moore's Federal Practice, para. 60.25(2) (2d Ed. 1983) it states:

"A void judgment is something very different than a valid judgment. The void judgment creates no binding obligation upon the parties, or their privies; it is legally ineffective. . . The judgment may also be set aside under 60(b)(4) within a 'reasonable time,' which, as here applied, means generally no time limit, or the enforcement of the judgment may be enjoined. The judgment may also be collaterally attacked at any time in any proceeding, state or federal, in which the effect of the judgment comes in issue, which means that if the judgment is void it should be treated as legally ineffective in the subsequent proceeding. Even the party which obtained the void judgment may collaterally attack it. And the substance of these principles are equally applicable to a void state judgment.

"A party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judgment treated for what it is, a legal nullity, but he must establish that the judgment is void." (Footnotes omitted.)[14]

We have stated previously that where a Wisconsin Rule of Civil Procedure is based on a Federal Rule of Civil Procedure, decisions of the federal courts, to the extent they show a pattern of construction, are considered persuasive authority. In re Estate of Kersten, 71 Wis. 2d 100 [100] 757, 763, 239 N.W.2d 86 (1976), see also, In re Adams Machinery Inc., 20 Wis. 2d 607, 621, 123 N.W.2d 558 (1963),[15] and Carlson Heating, Inc. v. Onchuck, 104 Wis. 2d 175, 179 n. 2, 311 N.W.2d 673, 675-76 (Ct. App. 1981) (citing Clausen and Lowe, The New Rules of Civil Procedure: Chapters 801 to 803, 59 Marq. L. Rev. 1 (1976)).

7.    To prove her causes of action in the adversary proceedings, Nora must demonstrate

that the underlying state court foreclosure judgment, founded upon a forged mortgage note and a

forged allonge (as well as a forged second endorsement displayed on the face of the note

purportedly made by Judy Faber, "Vice President of Residential Funding Corporation" in favor

of "JP Morgan Chase Bank, N.A. as Trustee" on newly discovered evidence of Faber's false

claim of authority as "Vice President of Residential Funding Corporation," discovered since the

commencement of the Wisconsin federal district court action.)    The issue of forgeries are issues

of fact.    Nora must also show that the mortgage assignment was a forgery and she has alleged and

6

can prove that the mortgage assignment executed by GMAC Mortgage, LLC employees Stephan

and Urgwuadu, created by Attorney Jay Pitner, uttered into court proceedings by Attorneys

Potteiger and Gentges, are forgeries.   The issue that the documents are forgeries have never been

litigated in contested evidentiary proceedings as minimally required by the due process clause in

the Fifth Amendment to the United States Constitution.  The fact of the forgeries was not

discovered until after judgment was entered in the state court foreclosure proceeding.

    8.  Wisconsin law defines the crimes of forgery and uttering forgeries at Wis. Stats. sec.

943.38, which provides in relevant part:

> 943.38  Forgery.
> (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the
> following kinds so that it purports to have been made by another, or at another time, or
> with different provisions, or by authority of one who did not give such authority, is guilty
> of a Class H felony:
> (a) A writing or object whereby legal rights or obligations are created, terminated or
> transferred, or any writing commonly relied upon in business or commercial transactions
>  as evidence of debt or property rights;[4] or
> (b) A public record or a certified or authenticated copy thereof;[5] or
> (c) An official authentication or certification of a copy of a public record; or
> (d) An official return or certificate entitled to be received as evidence of its contents.
> (2) Whoever utters as genuine or possesses with intent to utter as false or as genuine any

---

[4] As to the note (endorsed by Judy Faber under the false claim of authority that she was a Vice
President of Residential Funding Corporation at any time, which she was not) and the assignment of
mortgage prepared by Defendant Attorney Jay J. Pitner of Defendant GRAY & ASSOCIATES, LLP and
executed as partially described at footnote 5, below, the allonge signed by Amy Nelson as "Assistant
Vice President of Bank of New York Trust Company, N.A., successor in interest to JP Morgan Chase
Bank, N.A. as Trustee Residential Funding Company, LLC f/k/a Residential Funding Corporation,
Attorney-in-Fact" when none of the identities under which she claimed authority to sign were true.  She
was actually employed by the Defendant Lender Processing Services, Inc. in its Minnesota document
fabrication location.

[5] As to the publicly recorded assignment of mortgage executed by Defendant Jeffrey Stephan, an
employee of GMAC Mortgage, LLC,  under the false claim of authority that he ever was an officer of
Mortgage Electronic Registration Systems, Inc.  (MERS) and was never its Vice President and also
executed by Defendant Kenneth Urgwuadu as MERS Assistant Secretary, when he was Stephan's trainer
in the field of document processing (creation/fabrication.)

forged writing or object mentioned in sub. (1), knowing it to have been thus falsely made or altered, is guilty of a Class H felony. (Emphasis added.)

9.   Forgery is an issue of fact which must be proved in evidentiary proceedings and

cannot be disposed of as a matter of law.

10.   Debtors seek once again to prevent Nora from obtaining procedural and substantive

due process on the yet-to-be adjudicated facts that forged documents have been uttered in order

to confiscate her home by attempting to raise legal doctrines which do not apply to the facts of

her Proofs of Claim and adversary proceedings.   In <u>Long v. Shorebank Development Corp.</u>,

182 F.3d 548 (7th Cir., 1999), decided before the narrowing of what had become an ever-

broadening scope of the *Rooker-Feldman* doctrine by lower federal courts, now limited by the

United States Supreme Court in <u>Exxon Mobil v. Saudi Basic Industries</u>, 544 U.S. 280 (2005), the

Seventh Circuit Court of Appeals[6] held, at pages 558 and 560:

> [558]
> . . .  an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings. Absent such an opportunity, it is impossible to conclude that the issue was inextricably

---

[6]   <u>Nora v. RFC, LLC</u>, et al.  case is now pending on review of the *Rooker-Feldman* dismissal by Judge  Conley in the Western District of Wisconsin in Appeal No. 13-1660.  The Nora appeal to the Seventh Circuit Court of Appeals in <u>Nora v. RFC, LLC, et al.</u> also implicitly seeks review of the Judge Conley's authority to interpret the application of the automatic stay to the proceedings in the Western District of Wisconsin which prevented Nora from taking any action to amend or clarify her pleadings on newly discovered evidence and to make the allegations more clear, particularly as to the cause of her injury, which was not the state court foreclosure judgment, but the fact that the documents upon which the state court relied were forgeries and, therefore, could not create any rights in favor of RFC, not discovered until immediately before the filing of the RESCAP bankruptcy and about which further discoveries continued to be made.  The RICO conviction of Lender Processing Services, Inc. (LPS) executive and CEO of its subsidiary,  DOCX, Lorraine Brown (a remarkable conspiracy of one) at the end of 2012 and the LPS settlement with 46 state attorneys general in which it promises to correct forged documents if "required by law" and other circumstances  further exposes the true nature and scope of the RICO Enterprise involving approximately one million (1,000,0000) forged and perjured documents throughout the nation.  Amy Nelson, it was ultimately discovered, was not an employee of RFC, LLC, but was an employee of LPS.

8

intertwined with the state court judgment . . .

[560]
Long did not have a reasonable opportunity to raise her claims in state court, and, therefore, those claims are not inextricably intertwined with the Circuit Court's judgment. Accordingly, we conclude that the Rooker-Feldman doctrine is not applicable.

11.    Nora, like Long, did not have a reasonable opportunity to raise her claims in state court because she was precluded by Badger Cab v. Soule from joining the Defendant attorneys and law firms in the foreclosure case for abuse of legal process and Fair Debt Collection Practices Act (FDCPA) violations.   She did not have a reasonable opportunity to raise the RICO claims and common law fraud claims because she did not know that the documents were *forged*, under a false claim of authority by persons without authority to execute for the entities identified on the documents.   The issues of fact of the creation of the forgeries and their uttering preclude disposition of the Nora Proofs of Claim as a matter of law at this stage of the proceedings.

12.    Debtors argue that the Proofs of Claims are precluded by res judicata and collateral estoppel.  The law of the Seventh Circuit Court of Appeals holds that those doctrines are affirmative defenses and are not grounds for dismissal for failure to state a claim under FRCP 12(b)(6).  Furthermore, those doctrines do not apply to cases in which the plaintiff was denied a full and fair opportunity to litigate the real issues in the case, which were concealed from her: that the note and mortgage assignment were forgeries.   The  endorsement of Judy Faber, not a Vice President of RFC,  and the allonge of Amy Nelson, an employee of LPS and not an Assistant Vice President of any entity for which she purported to execute the allonge, were forgeries and that the mortgage assignment was forged because Jeffrey Stephan and Kenneth Urgwuadu were not officers of MERS were also forgeries.   Licari v. City of Chicago, 298 F.3d

9

664, 667 (2002) It is clear that there was no possibility of litigating the issue of forgery in the state court proceedings because the fact that the documents were forged was concealed.  The documents were produced as authentic and relied upon by the court in granting judgment.  That relief from the forged document scheme has not yet been forthcoming in state court is proof that the minimal standards of due process have not yet been provided.

13.   Under Wisconsin law set forth in  A.B.C.G. Enterprises V. First Bank Southeast, 184 Wis.2d 465, 515 N.W.2d 904 (1994),   joinder of counterclaims which would defeat the foreclosure claim is mandatory under Wisconsin law, but the concealment of the fact that the documents upon which RFC, LLC was proceeding were not merely *fraudulent* for having been created for purposes of litigation (as Nora believed) but were *actually forged* (as admitted by silence on appeal and now additionally provable by extensive newly discovered evidence), deprived Nora of her right to plead the RICO and common law fraud claims against RFC, LLC and to join the parties concealed within the MERS data base in furtherance of the securitization scheme in which she did not even know her note and mortgage had been taken as collateral at the closing on June 5, 2002.   Due process requires the opportunity to be heard and neither res judicata nor collateral estoppel can arise without a full and fair opportunity to litigate the issues sought to be precluded as alleged in the adversary complaint and described in the complaint attached to Proof of Claim #1. *Licari*, supra, page 667.

14.   In Windsor v. McVeigh, 93 U.S. 274, 277-278 (1876), the United States Supreme Court recognized the defect in proceedings had upon notice and in which the party notified is not permitted to be heard:

But notice is only for the purpose of affording the party an opportunity of being heard

upon the claim or the charges made; it is a summons to him to appear and speak, if he has any thing to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and *the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party appear and you shall be heard, and, when he has appeared, saying your appearance shall not be recognized and you shall not be heard.* (Emphasis added.)

The United States Supreme Court went on to say in *Windsor v. McVeigh*, supra, at page 283, after reciting the holdings in several cases:

The judgments mentioned, given in the cases supposed, would not be merely erroneous; they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those cases.

15.  By uttering forgeries into the state court proceedings, RFC, LLC obtained no greater rights than those which it could obtain based upon possession of forged documents under Wisconsin law, which is nothing.  The underlying judgment is void under Wisconsin law and is entitled to no credit in the courts of any jurisdiction.  It is subject to attack, both directly and collaterally.  Furthermore, the proceedings had on forged documents were a sham as a result of due process denied to Nora.  The facts that the documents were forgeries could never be established without the discovery of extrinsic evidence of the forgeries which were discovered months after judgment was entered and only because Jeffrey Stephan's deposition in a Maine action became publicly available as the foundation of the robo-signing scandal.[7]

---

[7]  Nora sought to depose Defendant Manish Verma and Defendant Amy Nelson on certain documents produced after the commencement of the state court action and her Notice of Depositions were stayed because the state trial judge was too busy to hear RFC's Motion to Quash.   Nora subsequently became temporarily totally disabled as the result of a car accident injury combined with a mistake made in prescribing a medication which is contraindicated for persons suffering from head injuries and began to have seizures.  During the time that the she was stricken with seizures, she was deemed to have "defaulted" on a written response to summary judgment (filed within 5 days of the date upon it could conceivably first been due and was only not timely because she was suffering from seizures.)  The order granting summary judgment was entered against her and her time to appeal expired while she was still seeking accommodations under the American's with Disabilities Act (ADA) under the state court's Local Rule to accommodate her ongoing disability.  She did not receive ADA

16.    The facts which Nora is entitled to prove in support of her Proof of Claims and her

adversary proceedings are substantially similar and unreasonably expensive to prove twice.  As

stated above, the burdens of proof are compatible in both contested cases and it is Nora who

bears the higher burden on consolidation, because she has the burden of proof by clear and

convincing evidence of the issues of RICO and fraud, whereas her Proof of Claim #1 would first

have to be proved to be invalid by a preponderance of evidence because the burden of persuasion

would shift to her.    The pending Motion for Consolidation of the contested proceedings on the

Debtors' Objection to her Proofs of Claims and the adversary proceeding are warranted and

contested proceedings are required.

17.    Any order disposing of the Nora Proofs of Claim without providing procedural and

substantive due process under the Fifth Amendment to the <u>Constitution of the United States</u> to

which she is entitled to in *just one proceeding* in which she can present her evidence that the

documents upon which the state court foreclosure judgment was based are forgeries and are

therefore void and a nullity because no rights can arise on forged documents under Wisconsin

law, would also be void.

18.    The Debtors have attached an Order entered by Dane County Circuit Judge Juan B.

Colás which clearly demonstrates the denial of due process to the Claimant in the state court

foreclosure proceedings.    In the Order, Judge Colás knowingly entered final orders which had to

_____

accommodations until she filed an ADA discrimination civil rights suit in the United States District
Court for the Western District of Wisconsin.  She began to receive ADA accommodations 10 months
after summary judgment was granted on the basis of documents which can now be proved to have been
forged and uttered into the proceedings and which she did not know until news of the robo-signing
scandal involving GMAC Mortgage, LLC and Jeffrey Stephan was revealed in the press almost 6 months
after the void default judgment was entered.

be appealed during the exact same time in which the Claimant was seeking disability

accommodations which were expected to last at least during the period of time allowed for

appeal.   By entered the Order of March 3, 2010, Judge Colás, acting at the behest of Debtors'

counsel, deprived the undersigned of her appellate rights because he knew that she was then and

there disabled, entitled to disability accommodations under the American's with Disabilities Act,

42 USC sec. 12101, et seq. and violated her civil rights by denying her procedural due process

equal protection of the laws under the Fifth and Fourteenth Amendments to the <u>Constitution of

the United States</u>.   She was, on February 22, 2010, continuing through March 3, 2010 and

continuing thereafter until 45 days after she was able to obtain extensions in all of her cases,

incapable of defending herself in the state court proceedings by reason of an ongoing disability.

Due process requires, at a minimum, that the party being required to respond to court processes is

able to participate in the procedures.  Judge Colás and Debtors' counsel knew that she could not

participate in the court proceedings and therefore denied her the minimum due process to which

she was entitled.

        19.  Even if the Claimant/Plaintiff had not been then and there disabled and unable to go

forward in the state court proceedings, like thousands of others similarly situated who had been

subjected to foreclosure proceedings on forged documents prior to the news of the robo-signing

scandal breaking at the end of September, 2010, Claimant/Plaintiff could not have known that the

documents uttered into the state court foreclosure proceedings were forged.   The whole purpose

of the crime of forgery is to pass off documents as authentic, when they are fictitious, and obtain

reliance on the forgery in order to obtain something of value for something which has no value.

In Claimant/Plaintiff's case and in the cases of thousands of others, forged documents were used

to confiscate their homes.    Foreclosures founded upon forged documents are void in the State of

Wisconsin. *State Bank of Drummond v. Christophersen*, supra.

20.    The Debtors in these proceedings are absolutely addicted to creating a false virtual

reality, whether it be by creating and uttering forged and perjured  documents and passing them

off as if they were authentic or abusing legal processes by creating and uttering forged and

perjured documents into court proceedings through their employees, agents and attorneys, they

are continuing the same course of conduct by instructing their administrative agent to record and

publish false data which purports to disallow claims before the claims have even been heard and

determined.    On October 7, 2013, in the course of preparing for the appearances in the Papas

matter and at her own proceedings, Claimant/Plaintiff reviewed the KCC, LLC's Claims

Registry, copied and pasted the data displayed there into a WordPerfect document because it

could not be downloaded and saved in PDF format and is, therefore, not subject to direct

documentary and could disappear when challenged.    The attached Exhibit A from the KCC, LLC

data base published the following false statements regarding the Papas Claim #242 and Nora

Claims #1 (KCC, LLC Claim #2) and #440:

7/2/2012    242        Paul N. Papas II            $10,000,000,000.00
Secured                Residential Capital, LLC    12-12020    The Claim is Not Properly Asserted
Against Rescap, and the Claim is Not Supported by Sufficient Documentation

5/18/2012    2        Wendy Alison Nora            $10,000,000,000.00
General Unsecured    Residential Capital, LLC    12-12020    The Claims Barred by the Judgments
Against Nora in the Wisconsin Litigatio, the Rooker-Feldman Doctrine Applies and the Claims
are Defective as Pleadings

8/29/2012    440        Wendy Alison Nora            $119,000.00
                Residential Funding Company, LLC    12-12019 The Claims Barred by the
Judgments Against Nora in the Wisconsin Litigatio, the Rooker-Feldman Doctrine Applies and
the Claims are Defective as Pleadings

This data was published before Papas' hearing on his Response the Debtors' Objection to his

Claim on October 9, 2013, which has not yet been disallowed and before the Nora Response is

even due to be filed on October 21, 2013 and for which hearing was scheduled on November 7,

2013, conclusively demonstrating what many homeowners have discovered to their dismay: these

proceedings are being entirely controlled and directed by the Debtors in order to deprive

homeowners of their rights to be heard.   Debtors are so confident that whatever position they

take will be approved by the Court, they had already posted the outcome of hearings yet to be

held as to Nora and Papas and, in Nora's case, prior to her response even being due to be filed.

21.   This Claimant has consulted with homeowners from around the country concerning

their rights in these proceedings, prior to the sua sponte revocation of her pro hac vice admission

on October 9, 2013, without cause and for the purposes of silencing the homeowners' voices in

these proceedings.   She has heard concerns and personally observed many due process

violations, including but not limited to failures of notice, fictitious notices, false notices, refusal

of the Court to hear claimants when they are present for telephonic hearings and they subjected to

oppressive conduct by Judge Glenn.  Add to that, sporadic service of documents by KCC, LLC of

what it (no doubt the Debtors) provides to the participants in these proceedings,  even when the

Request for Notice of Filings is given.   This leads to secretive filings being made before this

Court, which are only available to attorneys approved to receive the Court's electronic service of

documents.   The data displayed by KCC, LLC regarding the Papas and Nora claims

demonstrates that these proceedings are nothing more than a sham and a mockery as described by

the United States Supreme Court in *Windser v. McVeigh*, supra, in which even if notice is given,

the opportunity to be heard is denied.   As to the Nora's revoked pro hac vice admission,  Judge

15

Glenn's post facto Order to Show Cause against her was served electronically by KCC, LLC, but KCC, LLC did not serve her Motion to Disqualify Judge Glenn electronically and it would be extremely surprising if her Response to the Order to Show Cause will be served.   KCC, LLC is the Debtors' agent and has taken over the public function of the Court in maintaining a private claims registry in which the Debtors now publish their unadjudicated positions on claims as if their positions have been adjudicated and have the force and effect of law.

22.   This entire bankruptcy proceeding has been designed and implemented by Ally Financial, Inc. (AFI), enabled by the Committee of Unsecured Creditors which is disproportionately populated with parties in direct conflict with homeowners,  who have been denied notice and opportunity to be heard throughout these proceedings, and ratified by Judge Glenn who has legislated new procedures beyond the scope of his authority by numerous orders, including, but not limited to, the Final Supplemental Servicing Order (Doc. 774), the Special Adversary Proceedings Case Management Order (Doc.  3293), the special Claims Procedures Order (Doc. 3294) and followed by Omnibus Order disposing of billions of dollars of homeowners' claims based on the Claims Procedures Order (Doc. 3294), all of which purport to be entered under the Court's authority under 11 USC sec. 105.  Judge Glenn and the Debtors know or should know that 11 USC sec. 105 cannot be used to expand the powers of the Court beyond the provisions of Title 11 of the United States Code, the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure and all the orders are void.

23.   It is little wonder that, when an attorney with some familiarity with bankruptcy practice appears before the Judge Glenn (and while the Debtors have stated that Nora has handled many "consumer" bankruptcies and attached five pages of cases from the Pacer

16

database, they fail to note that she has also filed a number of business bankruptcy cases, many of which were filed before electronic filing was available) and knows that the Orders being entered are unconstitutional and void as in excess of his jurisdiction, she is threatened with bodily seizure without probable cause in an effort to intimidate her into silence and prevent her from defending her clients by the revocation of her pro hac vice admission without hearing.

24.   It is plain that the procedures in this case are being made up as the proceedings go along in order to give the Debtors powers never before granted to bankrupt entities by which they are extinguishing the claims of individuals they have severely damaged–the homeowners–as well as the investors they defrauded in the ultimate quest for a Third Party Release in favor of their parent, who believes that it can use a portion of the 12.5 billion dollars in TARP funds it is holding to fund its alter ego subsidiaries in these proceedings, liquidate their fraudulent lending and servicing portfolio, pay pennies on the dollar to the insurance companies and investors they defrauded and do all this under Orders of a federal bankruptcy judge.  Fortunately, the key orders providing the Debtors with the unprecedented powers to continue to foreclose on homes with forged and perjured documents, to disallow homeowners' claims on grounds not permitted under Title 11 or Bankruptcy Rule 3007 and to create a separate class of unsecured claims just for homeowners are all unconstitutional and void.

25.   The Nora adversary proceeding is based on the same facts as her Proofs of Claims and both the Debtors Objection to her Proofs of Claims and the pending adversary proceeding require evidentiary hearings to establish that the Debtors participated in a racketeering enterprise which damaged the Claimant/Plaintiff and thousands of others.  *Rooker-Feldman* does not apply to Nora because she could not litigate her RICO claim in state court because she did not know

the claim existed so that she could litigate it.  She could not join the attorneys as parties to that

action under Wisconsin law under <u>Badger Cab v. Soule</u>. 171 Wis.2d 754,  492 N.W.2d 375 (Wis.

Ct. App. 1992).  She was totally disabled at the time her summary judgment response was due

and was defaulted for an untimely response in incorrect form when she was having seizures and

was deprived of her constitutional right to disability accommodations during the pendency of the

state court action.   The denial of her right to disability accommodations, in addition to the

Debtors' forgery and perjury scheme which was not discovered until she recovered from total

disability and after she was handed a default judgment while she was physically incapacitated

and unable to defend her rights, deprived her of her minimum due process rights–the right to be

heard.   Res judicata and collateral estoppel are affirmative defenses, which require proofs of fact

sufficient to demonstrate that the parties are identical, the claims are identical, the claims were

actually decided or could have been decided and that the minimum requirements of due process

were provided.   Res judicata and collateral estoppel are not a basis for a Rule 12(b)(6) dismissal

and cannot be a basis for disallowing a Proof of Claim.

26.   One of the reasons given by the Debtors for its attempt to disallow her Proofs of

Claims is the equivalent of a Rule 12(b)(6) dismissal is that the "Claims are Defective as

Pleadings."   No such basis for disallowing a Proof of Claim is allowed by Rule 3007 and even in

the unconstitutional and void special Claims Procedures Order (Doc. 3294) not such basis is

given.   It is ironic that Nora's Proof of Claim #1 actually attaches a pleading to Form B-10 and

then the Debtors quibble with the sufficiency of the pleading as if FRCP 12(b)(6) applies.  The

purpose of Form B-10 and its attachments is to inform the Debtors of the basis for the claim.

FRCP 12(b)(6) has never been applied to disallow a Proof of Claim in the millions of claims

which are filed in bankruptcy proceedings throughout the nation.   If Proofs of Claims were

required to meet the Rule 12(b)(6), creditors would have to plead their entire legal and factual

basis in the form of a civil complaint  for every claim filed throughout the nation to avoid having

their claims disallowed.

27.    The GMAC Racketeering Enterprise confiscated thousands of homes using the same

corrupt business model as that employed in Nora's foreclosure and requires the award of punitive

damages sufficient to cause the disgorgement of the Enterprise's illegal profits to be distributed

among the thousands of similarly situated homeowners as set forth in the adversary complaint.

The Debtors are violating all of the homeowners'  constitutional rights to procedural and

substantive due process and equal protection of the property laws of the various states.   To this

the Debtors are expected to respond by claiming that they are the holders of notes on the

thousands of confiscated properties and yet not one single note secured by a mortgage has been

listed as an asset in these proceedings.  The notes secured by properties which have already been

foreclosed are satisfied but none of the notes have been returned to their makers.

28.    If the Debtors are the holders of the mortgage notes as of the date of the filing of

these proceedings, the notes are assets which were required to be disclosed.    If the Debtors sold

the notes without returning the notes to the makers, they have committed bankruptcy fraud by

selling property they did not disclose and did not own.   Debtors have claimed that they are in

possession of Nora's "original" note.   The note must be returned if the real estate which is

security for the note has been sold as satisfaction for the debt represented by the note.   That is

true for every home they listed as an asset on their bankruptcy schedules.  The massive fraud

being committed in these proceedings whereby the Debtors claimed to own homes they have

19

confiscated and have purported to sell, but have not returned the notes which were secured by the

real estate has not been exposed to date.  Billions of dollars of notes have apparently never been

disclosed as assets in these proceedings, may have simply been retained by the Debtors or sold in

connection with mere servicing rights at a substantial discount right under the noses of Judge

Glenn, the appointed Examiner (retired bankruptcy Judge Gonzalez), the United States Trustee

and the Committee of Unsecured Creditors.

29.   The homeowners have generally been unrepresented in these proceedings by design

of the Debtors and the Committee of Unsecured Creditors, who objected to the appointment of a

"Borrowers'" Committee, which was then rejected by Judge Glenn in favor of the appointment of

"Special Borrowers Counsel," who, in the person of Attorney Nosek, on October 9, 2013,

displayed such complete allegiance to the Debtors that he had to be reminded that he did not

represent the Debtors, when he inquired if the brief Judge Glenn ordered to be filed could be a

joint brief with the Debtors.

30.   These proceedings are a sham and a mockery because the homeowners have been

completely shut out of their rights to be heard even when they tried to be heard.  Then, when this

counsel appeared on behalf of a few homeowners, she was threatened with bodily seizure and

removal by force from the courtroom in an effort to silence her and had her pro hac vice

admission revoked without notice or opportunity to be heard.  Her Proof of Claim #1 in these

proceedings is the representative case for thousands of homeowners whose homes have been

confiscated on forged and perjured documents and who have not been able to defend their

interests in these proceedings and whose interests must be protected.

31.   Claimant/Plaintiff reserves her rights to brief the issues raised by the Debtors in their

20

Objection to her Proofs of Claims and the anticipated numerous motions to dismiss in the

adversary proceedings in the time provided under the Scheduling Order entered on the record of

the proceedings in the Nora adversary proceeding on October 9, 2013.

WHEREFORE, the undersigned responds to the Debtors' Objection and demands her

right to evidentiary proceedings in which she can prove that the Debtors' documents are

forgeries;  that her personal property was confiscated under an ex parte order and her personal

property and thousands of pounds of client files were destroyed (which she did not even discover

until after the amended adversary complaint was filed); that her home was sold while these

proceedings were pending,  after the adversary proceeding was filed, and amounted to the sale of

stolen property obtained upon forged documents and upon a void judgment of foreclosure which

was  obtained by denying her the minimum requirements of due process to be heard on her

defenses, counterclaims and third party claims because the forgery scheme was concealed from

her.  The issues raised by her  Proofs of Claims and in the adversary proceedings could not have

been and have not been actually litigated in the state court proceedings and the Debtors have

engaged in continuing torts against her which only terminated by the destruction of her personal

property and the sale of her home under a void judgment and now seek to deprive her of her

property rights consisting of her Proofs of Claims under a void procedure by which they are

objecting to the form of the pleadings attached to Form B-10, which is not a basis for disallowing

any creditor's claim and is a continuation of the Debtors' determination to violate her

constitutional rights to procedural and substantive due process and equal protection of the laws

under the Fifth and Fourteenth Amendments to the Constitution of the United States as well as

her First Amendment right to petition the Court for redress of grievances.

21

Dated at Madison, Wisconsin this 19th day of October, 2013.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
310 Fourth Avenue South, Suite 5010
Minneapolis, Minnesota 55415
Telephone (612) 333-4144
Facsimile (608) 497-1026
accesslegalservices@gmail.com

**UNSWORN DECLARATION OF SERVICE**

Wendy Alison Nora declares, under penalty of perjury, that she filed the above-captioned document with the United States Bankruptcy Court for the Southern District of New York on October 19,  2013 by CM/ECF and thereby served the same on all parties capable of service thereby.

*/s/ Wendy Alison Nora*
Wendy Alison Nora
