**McKENNA LONG & ALDRIDGE LLP**
230 Park Avenue
New York, New York 10169
Telephone: (212) 905-8348
Facsimile: (212) 922-1819
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
cgraham@mckennalong.com
akaufman@mckennalong.com

303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
David E. Gordon, Esq.
dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation
and Impac Mortgage Holdings, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Case No. 12-12020 (MG)** |
| **RESIDENTIAL CAPITAL, LLC et al.,** | **Chapter 11** |
| Debtors. | **Jointly Administered** |

**OBJECTION OF IMPAC COMPANIES TO CONFIRMATION OF JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AUGUST 23, 2013**

Impac Funding Corporation and Impac Mortgage Holdings, Inc. (collectively, "Impac"), by and through their undersigned counsel, hereby make and file this objection (the "Objection") to confirmation of the Joint Chapter 11 Plan Proposed by Residential Capital, LLC, et al. (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"), first filed by the Debtors on July 3, 2013 [Docket No. 4153] and now dated August 23, 2013 [Docket No. 4819] (as amended, the "Plan"). In support of this Objection, Impac states as follows:

**PRELIMINARY STATEMENT**

1.      The Court should deny confirmation of the Plan for at least two reasons.  <u>First</u>, the Plan impermissibly extends the deadline for the Debtors to decide to assume or reject executory contracts well-beyond the date of plan confirmation in violation of Sections 1129(a)(1), 1129(a)(3), 365(d), and 1123(b)(2) of the Bankruptcy Code.  Section 365 of the Bankruptcy Code, governing executory contracts and unexpired leases, provides that in a Chapter 11 case, unless the court orders the debtor to assume or reject <u>earlier</u>, the debtor may decide to assume or reject an executory contract "at any time <u>before</u> the confirmation of a plan".  The Plan, by permitting the Debtors to make decisions on whether to assume or reject executory contracts months or even years <u>after</u> confirmation, violates the plain language of Section 365(d)(2) of the Bankruptcy Code, which has been held under binding Supreme Court and Second Circuit precedent to require that assumption or rejection decisions be made before plan confirmation.

2.      <u>Second</u>, the Plan contains broad, non-consensual, third-party, non-debtor releases that are impermissible in the Second Circuit.  Specifically, the Third Party Releases in the Plan would compel non-debtor parties, such as Impac, to release a broad range of claims against the Ally Released Parties, also non-debtors, including direct claims against the Ally Released Parties that are not derivative of any claims against the Debtors.[1]  Impac, which is actively involved in litigation with Ally Bank in a matter that is not derivative of any claims against the Debtors, did not vote in favor of the Plan and does not consent to releasing any claims or counterclaims against any of the Ally Released Parties.  Because, under well-established Second Circuit law, the Court lacks subject matter jurisdiction to approve these third-party releases, the Plan cannot

---

[1] Capitalized terms used but not defined herein shall have the meaning set forth in the Plan and Disclosure Statement.  As used herein the term "Ally Released Parties" does not include the Debtors.

- 2 -

be confirmed unless they are removed from the Plan.  See In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008); In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005).

## BACKGROUND

3. On May 14, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court").  The Debtors continue to operate their business and manage their affairs as debtors and debtors-in-possession.  On May 16, 2012, the United States Trustee for the Southern District of New York appointed the Committee.

4. Impac is a party to several executory contracts with debtor GMAC Mortgage, LLC ("GMAC") relating to the servicing of certain residential mortgage loans (the "Servicing Agreements").  While certain of the Servicing Agreements have been assumed by the Debtors and assigned to Ocwen Loan Servicing, LLC ("Ocwen"), several of the Servicing Agreements (the "Excluded Agreements") have been neither assumed nor rejected by the Debtors.  On August 19, 2013, the Debtors filed their Motion Under Section 365 of the Bankruptcy Code to Assume and Assign Servicing Related Agreements with Impac Funding Corporation and Impac Mortgage Holdings Inc. (the "Impac Motion") [Docket No. 4744] seeking to assume and assign the Excluded Agreements to Ocwen.  The Impac Motion remains pending and is unlikely to be resolved prior to the Confirmation Hearing or the Effective Date.

5. Impac Funding Corporation is a creditor of GMAC and holds a claim against GMAC in the amount of $8,000,000 for various defaults by GMAC under the Servicing Agreements [Claims Register, Claim No. 4086] (the "Impac Claim").

6. On July 3, 2013, the Debtors filed the Plan. On July 4, 2013, Debtors filed their Disclosure Statement for the Debtors' Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors [Docket No. 4157] (as amended, the "Disclosure Statement"). By order dated August 23, 2013, the Court approved the Disclosure Statement and set a hearing for November 19, 2013 to consider confirmation of the Plan (the "Confirmation Hearing").

7. Impac is currently involved in active litigation with Ally Bank relating to issues that are not derivative of any claims asserted by Impac against the Debtors in the Proof of Claim. In addition, Impac may have other direct claims against the Ally Released Parties that, given the broad scope of the Third Party Releases in the Plan, could be argued to have been released under the Plan. Impac does not consent to providing the Third Party Releases to the Ally Released Parties and did not vote in favor of the Plan.

8. By this Objection, Impac objects to confirmation of the Plan and requests that the Court deny confirmation of the Plan unless it is modified to resolve the issues raised in this Objection.[2]

**ARGUMENT**

9. The Court should deny confirmation of the Plan because: (A) the Plan impermissibly extends the deadline for the Debtors to assume or reject executory contracts well-beyond plan confirmation in violation of Sections 1129(a)(1), 1129(a)(3), 365(d), and 1123(b)(2) of the Bankruptcy Code; and (B) the Plan contains impermissible, non-consensual, third-party releases in favor of the Ally Released Parties.

---

[2] Impac reserves the right to revise its objections to the Plan and to object to any other plan filed by the Debtors and/or Committee.

### A. The Plan Impermissibly Extends the Deadline for the Debtors to Assume or Reject Executory Contracts Beyond Plan Confirmation.

10. Pursuant to the Plan, twenty-one days prior to the Confirmation Hearing the Debtors will file the Assumption Schedule identifying the executory contracts that Debtors "propose" to assume. (Plan at 77). The Assumption Schedule will set forth the proposed cure amounts to be paid by the Debtors in connection with such assumption. (Id.). The Debtors will serve the Assumption Schedule on all counterparties to the Executory Contracts along with a notice setting forth procedures under which the counterparty may object to the assumption of their contract or the Debtors' proposed cure amount. (Id.).

11. With respect to all executory contracts that are either (i) on the Assumption Schedule or (ii) the subject of a pending motion to assume on the Effective Date (such as the Impac Motion), the Plan provides that any Cure Objections will be resolved by the Court. (Id. at 76-77). The Plan also provides, however, that: "If an objection to the proposed Cure Claim is sustained by the Bankruptcy Court, the Plan Proponents, prior to the Effective Date, or the Liquidating Trust, <u>following the Effective Date</u>, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it . . . ."  (Id. at 77) (emphasis added). The Plan further provides:

> The Plan Proponents, prior to the Effective Date, or the Liquidating Trust, <u>following the Effective Date</u>, reserve the right either to reject or nullify the assumption of any Executory Contract or Unexpired Lease no later than thirty (30) days after a Final Order determining a Cure Claim greater than that proposed by the Debtors.

(Id.) (emphasis added). Finally, the Plan provides that, while any cure objections are pending, no cure amounts will be paid to the objecting contract counterparty until ten days after the dispute is adjudicated by the Court. (Id.)

- 5 -

12. Under the Plan, therefore, the Debtors would be free to reject executory contracts on a post-confirmation basis in contravention of the Bankruptcy Code. The Debtors would enjoy this extension of time to decide until 30 days after the Court adjudicates the amount of the Cure Claim validly due and owing by the Debtors. In the event that a contract counterparty disputes the cure amount unilaterally set by the Debtors, the Plan provides that that the Debtors will make <u>no</u> cure payment to the contract counterparty. Instead, 100% of the cure amount will remain unpaid until such time as either: (1) the Court resolves the dispute; or (2) the Debtors and the contract counterparty settle the dispute. These provisions deny contract counterparties <u>any</u> cure payment if there is a dispute regarding any portion of the cure and extend the time period for rejection well beyond the confirmation date, months (and potentially years) after the Effective Date.

13. Section 365 of the Bankruptcy Code, governing executory contracts and unexpired leases, provides that, in a Chapter 11 case, unless the court orders the debtor to assume or reject earlier, the debtor may assume or reject an executory contract "at any time <u>before</u> the confirmation of a plan". 11 U.S.C. § 365(d)(2) (emphasis added). In a Chapter 11 case "assumption or rejection must take place prior to confirmation of a plan, unless the court sets an earlier deadline." <u>In re Resource Tech. Corp.</u>, 254 B.R. 215, 221 (Bankr. N.D. Ill. 2000).

14. The United States Supreme Court has twice held that this deadline is mandatory – confirmation of a plan is the <u>final</u> deadline for a Chapter 11 debtor to decide whether to assume or reject an executory contract. See <u>Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.</u>, 554 U.S. 33, 45 (2008) ("We agree with <u>Bildisco's</u> commonsense observation that the decision whether to reject a contract or lease must be made before confirmation."); <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 529 (1984) ("In a Chapter 11 reorganization, a debtor-in-possession has

- 6 -

until a reorganization plan is confirmed to decide whether to accept or reject an executory contract, although a creditor may request the Bankruptcy Court to make such a determination within a particular time."). The U.S. Court of Appeals for the Second Circuit has also held that "[t]he plain language of the Code permits a chapter 11 trustee (and, by extension through § 1107, a debtor-in-possession) to assume or reject the executory contract 'at any time before the confirmation of a plan.'" In re Penn Traffic Co., 524 F.3d 373, 378-79 (2d Cir. 2008); accord In re Dana Corp., 350 B.R. 144, (Bankr. S.D.N.Y. 2006) ("'[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.'") (citations omitted).

15. The Plan, by permitting the Debtors to make decisions on whether to assume or reject executory contracts months or even years <u>after</u> confirmation, violates the plain language of Section 365(d)(2) of the Bankruptcy Code, which has been held under binding Supreme Court and Second Circuit precedent to require the decision to assume or reject a contract be irrevocably made before plan confirmation.

16. Through the Plan, the Debtors are seeking to hold "hostage" contract counterparties who have continued, postpetition, to honor and perform under their contracts. The executory contract provisions in the Plan are coercive and structured to intimidate contract counterparties into accepting cure amounts that are significantly less than the actual amounts owed. The Debtors will identify proposed cure amounts set by the Debtors in their sole discretion in the Assumption Schedule or in motions to assume specific contracts such as the Impac Motion. The Debtors will retain the right to reject any contract after the Confirmation Date and Effective Date. Any contract counterparty who disputes the Debtors' proposed cure

amount will receive <u>no</u> <u>cure</u> payment and will be held in limbo while litigating with the Debtors. Presumably, during that time, the objecting party will be required to perform under the executory contract. If at any point during that potentially protracted dispute it becomes advantageous to the Debtors to simply reject the executory contract rather than pay the disputed cure amount (as well as the undisputed cure amount), the Debtors are free to "change their minds" and do so well after confirmation to the extreme prejudice of the contract counterparty. Meanwhile, the Debtors will have enjoyed the benefits of the executory contract well after the confirmation date without providing any cure payment at all. Such patently one-sided provisions are not proposed in good faith and are contrary to well-established law.

17.    If the Debtors desire to retain the benefits of an executory contract and continue their relationship with a prepetition contract counterparty, the Debtors must commit to irrevocably curing and assuming the contract on or before the Confirmation Date as required by the Bankruptcy Code. Further, the Debtors should be required to pay any undisputed cure amounts immediately and escrow any disputed cure amounts until the dispute can be resolved by the Court. Anything less is unfair and inequitable to the Debtors' contract counterparties. Debtors' Plan will remain inherently unconfirmable unless and until the Debtors modify the Plan to provide, at a minimum, that: (1) all decisions on whether to assume or reject executory contracts will be <u>irrevocably</u> made on or prior to the Confirmation Date; and (2) in the event Debtors and a contract counterparty dispute a cure amount (i) the undisputed amount will be immediately paid to the contract counterparty, and (ii) the disputed amount will be escrowed pending resolution of the dispute. Until the Plan is so modified, it cannot be confirmed.

18. The Plan in its current form, rather than providing for the assumption or rejection of executory contracts, provides the Debtors with increased leverage in negotiating reduced cure costs with contract counterparties. The Plan is therefore not proposed in good faith.

19. Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if the plan complies with all applicable provisions of the Bankruptcy Code. The Debtors' Plan does not comply with Section 365(d)(2) of the Bankruptcy Code because it allows the Debtors to decide to assume or reject executory contracts after confirmation of the Plan in violation of the plain language of the Bankruptcy Code and multiple binding Supreme Court and Second Circuit precedents. Further, the Plan does not comply with Section 1129(a)(3) of the Bankruptcy Code. As detailed above, (a) the provisions allowing for the assumption or rejection of executory contracts after confirmation of the Plan, and (b) the absence of required payments of undisputed cure amounts, were not proposed in good faith. As such, the Plan does not comply with the applicable provisions of the Bankruptcy Code and cannot be confirmed.

**B.    The Plan Contains Impermissible, Non-Consensual, Third-Party Releases in Favor of the Ally Released Parties.**

20. The Plan provides that, upon Confirmation, all holders of Claims and Equity Interests "shall be deemed to provide a full and complete discharge and release to the Ally Released Parties and their respective property from any and all Causes of Action whatsoever . . . arising from or in any way related to the Debtors . . . ." (the "Ally Third Party Release") (Plan at 99). If the Ally Third Party Release is approved, non-debtor third parties such as Impac who hold or may hold claims against the Ally Released Parties separate and independent of their claims against the Debtors could see their claims extinguished. Impac and other third parties will

be compelled to release their claims without their consent (in fact over their explicit opposition) solely because they have the misfortune of being creditors of one or more of the Debtors.

21.  It is settled law in the Second Circuit that bankruptcy courts lack subject matter jurisdiction to release or enjoin direct claims (claims that are not derivative of claims against the debtor) by non-debtors against other non-debtors. See In re Johns-Manville Corp., 517 F.3d 52, 68 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III"). In Manville II, the Second Circuit considered the propriety of a plan release in favor of a third party insurer ("Travelers") who provided insurance coverage to the debtors. 517 F.3d at 57. The release applied to "all persons" and broadly released all claims "arising out of" and "related to" Travelers' insurance of the debtors. Id. The release was provided to Travelers on account of its infusion of nearly $80 million into the bankruptcy estate to fund the debtors' plan. Id.

22.  The Second Circuit held that the bankruptcy court lacked subject matter jurisdiction to approve the release. Id. at 65. The basis for the Second Circuit's holding was that the plan released Travelers, a non-debtor, from the direct claims of other non-debtors – i.e. claims that did not seek recovery from Travelers in its capacity as insurer of the debtor or from the res of the debtor's estate (the debtor's insurance policy). Id. ("Plaintiffs seek to recover directly from a debtor's insurer for the insurer's own independent wrongdoing. Plaintiffs aim to pursue the assets of Travelers. They raise no claim against [the debtor's] insurance coverage. They make no claim against an asset of the bankruptcy estate, nor do their actions affect the estate."). The Manville II court held: "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate." Id. at 66.

23.     Under <u>Manville II</u>, the Court lacks subject matter jurisdiction to approve the Ally Third Party Release proposed by Debtors. Like the Travelers release in <u>Manville II</u>, the Ally Third Party Release would release the Ally Released Parties, non-debtors, from the direct claims of other non-debtors, such as Impac. The Ally Third Party Release releases "direct" claims, meaning claims that are not derivative of other claims that could be asserted against any of the Debtors. The Plan contains language even broader than that in <u>Manville II</u> – the Ally Released Parties will be released from "any and all Causes of Action whatsoever . . . arising from or in any way related to the Debtors . . . ." (Plan at 99). Under well-established law, this Court is without subject matter jurisdiction to approve the Ally Third Party Release.

24.     Debtors may insist that the Ally Third Party Release is justified by Ally's substantial contribution to these Chapter 11 Cases through the Ally Contribution. That argument was also considered and rejected by the Second Circuit in <u>Manville II</u>. The court noted that it had previously found "'a nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code.'" 517 F.3d at 66 (quoting <u>In re Metromedia Fiber Network, Inc.</u>, 416 F.3d 136, 142 (2d Cir. 2005)). In rejecting Travelers' contribution to the estate as grounds for justifying the release, the court noted that "[i]t is, however, 'precisely this conditioning of financial participation by non-debtors on releases that is subject to the sort of abuse foreseen in <u>Metromedia</u>.'" <u>Id.</u> (quoting <u>In re Karta Corp.</u>, 342 B.R. 45, 55 (Bankr. S.D.N.Y. 2006)). The court concluded:

> It was inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely on the basis of that third party's financial contribution to a debtor's estate. If that were possible "a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions. As we have made

clear, subject matter jurisdiction cannot be conferred by consent of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."

Id. (quoting In re Cobustion Eng'g, Inc., 391 F.3d 190, 228 (3d Cir. 2004)).

25.     The Ally Third Party Release contained in the Plan releases non-debtors from direct claims of other non-debtors without the consent of the releasing party. No matter how desirable such a release may be from the perspective of the Debtors, Ally, and other parties to the Debtors' reorganization, under settled law the Court is without subject matter jurisdiction to approve or order such a release. See Manville II, 517 F.3d at 66 ("A court's ability to provide finality to a third-party is defined by its jurisdiction, not its good intentions."); Manville III, 600 F.3d at 153 (clarifying on remand that bankruptcy courts do not have jurisdiction to enjoin non-derivative claims against non-debtors). Because the Court is without subject matter jurisdiction to approve or order the Ally Release, the Court must deny confirmation of the Plan unless the Ally Release is stricken from the Plan.

## NOTICE

26.     Notice of this Objection shall be provided to the following parties: (a) the Clerk of the Bankruptcy Court; (b) the Chambers of the Honorable Martin Glenn; (c) the Debtors; (d) the Committee; (e) Ally Financial, Inc. and (f) the Office of the United States Trustee.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Impac respectfully requests that the Court deny confirmation of the Plan.

Dated: New York, New York
       October 21, 2013                     MCKENNA LONG & ALDRIDGE LLP

/s/ Christopher F. Graham
Christopher F. Graham, Esq.
Alan F. Kaufman, Esq.
230 Park Avenue, Suite 1700
New York, New York 10169
Telephone: (212) 905-8348
Facsimile: (212) 922-1819
Email: cgraham@mckennalong.com
       akaufman@mckennalong.com

and

David E. Gordon, Esq.
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
Email: dgordon@mckennalong.com

*Attorneys for Impac Funding Corporation
and Impac Mortgage Holdings, Inc.*