**MCKOOL SMITH, P.C.**
Peter S. Goodman
Michael R. Carney
One Bryant Park, 47th Floor
New York, New York 10036
Telephone: 212-402-9400
Facsimile: 212-402-4444
Email: pgoodman@mckoolsmith.com
         mcarney@mckoolsmith.com

*Counsel for Federal Home Loan Mortgage Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, *et al.*, | Chapter 11 |
| Debtors. | Jointly Administered |

**OBJECTION AND RESERVATION OF RIGHTS OF FEDERAL HOME LOAN MORTGAGE CORPORATION WITH RESPECT TO THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC, ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Federal Home Loan Mortgage Corporation ("Freddie Mac"), by and through its undersigned counsel, hereby files this objection and reservation of rights with respect to the confirmation of the *Joint Chapter 11 Plan* (the "Plan") *Proposed by Residential Capital, LLC, et al.* (the "Debtors") *and the Official Committee of Unsecured Creditors*.

**INTRODUCTION**

1. The Debtors' Plan impermissibly seeks to impose a wide-ranging, non-consensual Third Party Release[1] of Freddie Mac's claims against Ally Financial, Inc. ("AFI"), Ally Bank, and their non-debtor affiliates. Because the proposed release exceeds the Court's

---

[1] Terms not defined in this objection have the meanings attributed to them in the Debtors' Plan.

subject matter jurisdiction, contravenes applicable case law, and improperly seeks to constrain Freddie Mac's conservator (the Federal Housing Finance Agency ("FHFA")) from exercising its powers, the release cannot be approved. Indeed, Fannie Mae received a substantially similar carve-out from the Third Party Release to that which Freddie Mac seeks here. Accordingly, Freddie Mac requests that the Court decline to approve the Third Party Release unless Freddie Mac is carved out from its application.

2. Freddie Mac also reserves its rights to object to any Plan amendment or modification that adversely affects Freddie Mac's recoveries as currently set forth in the Plan and accompanying disclosure statement.

## BACKGROUND

3. Prior to the Petition Date, Freddie Mac purchased mortgage loans (the "Prepetition Loans") pursuant to annual Master Agreements under which GMAC Mortgage LLC ("GMAC") and Ally Bank were jointly liable for all representations, warranties, covenants, and agreements required under the applicable purchase documents, including the Freddie Mac Single Family Seller/Servicer Guide (collectively, the "Purchase Documents"). Freddie Mac's claims with respect to the Prepetition Loans were resolved pursuant to the Stipulation and Order Relating to the Assumption and Assignment of Certain Agreements of Freddie Mac pursuant to Section 365 of the Bankruptcy Code and Related Relief [ECF No. 2894], entered by the court on February 13, 2013 (the "Freddie Mac Stipulation").

4. From May 1, 2012 through July 31, 2013, Freddie Mac purchased loans directly from Ally Bank as the sole seller/servicer of record under Master Agreement Nos. 12032349 (effective as of May 1, 2012) and 12060449 (effective as of August 1, 2012) (collectively, the "Ally Master Agreements"). The loans sold to Freddie Mac under the Ally

Master Agreements (the "Ally Bank Loans") were initially subserviced by GMAC and subsequently serviced by Ocwen Loan Servicing, LLC ("Ocwen"), after GMAC transferred certain of its servicing operations to Ocwen in February 2013. AFI guaranteed certain obligations of Ally Bank under the Ally Master Agreements.

5. Although GMAC acted as subservicer of the Ally Bank Loans until February 2013 (when subservicing was transferred to Ocwen), the Freddie Mac Stipulation resolved Freddie Mac's servicing-related claims against the Debtors. The Freddie Mac Stipulation, however, reserved Freddie Mac's claims against Ally Bank and AFI for, among other things, the breach of any obligations relating to the Ally Bank Loans. *See* Freddie Mac Stipulation at ¶ 10. Such claims are not claims against any of the Debtors; rather, they are claims against AFI and Ally Bank under the Ally Master Agreements and/or the Purchase Documents.

## THE THIRD PARTY RELEASE

6. The Plan provides for a "complete discharge and release" of the Ally Released Parties (including Ally Bank and AFI) by the holders of Claims from:

> any and all Causes of Action whatsoever, whether known or unknown, asserted or unasserted, derivative or direct, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state securities laws, veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability, or otherwise, arising from or related in any way to the Debtors . . . .

*See* Plan Art. IX(D). The Plan also seeks to enjoin parties from asserting any released claim against the Ally Released Parties. *Id*. Art. IX(H). The Plan specifically carves out from the Third Party Releases certain claims held by the FDIC, the FHFA, and Fannie Mae. *Id*. Art. IX(E).

7.     Because it is unclear whether the Third Party Release extends to Freddie Mac's potential claims against Ally Bank and AFI relating to the Ally Bank Loans, the Ally Master Agreements, or AFI's guaranty, Freddie Mac requested that the Debtors clarify that the Third Party Release does not apply to Freddie Mac. The Debtors (and Ally) have refused to do so.

## ARGUMENT

8.     Freddie Mac has direct contractual relationships with AFI and Ally Bank that give rise to independent obligations of those parties to Freddie Mac. While Freddie Mac does not believe that its potential claims against AFI and Ally Bank arising from those agreements fall within the scope of the Third Party Release, the Debtors' refusal to clarify that point suggests that the Debtors, AFI, and Ally Bank believe that the proposed release does extend to those claims. To the extent the Third Party Release applies to Freddie Mac's claims, such releases in favor of Ally and AFI should be stricken from the Plan.

9.     As a threshold matter, the Court lacks subject matter jurisdiction to bar Freddie Mac from pursing claims against AFI or Ally Bank that arise from those parties' breach of their obligations to Freddie Mac. *See In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir. 2008) (holding that the bankruptcy court lacked subject matter jurisdiction to enjoin direct claims belonging to third parties against non-debtors), *rev'd on other grounds*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009). As the seller/servicer of record with respect to the Ally Bank Loans, Ally Bank has primary and independent liability to Freddie Mac for breaches of any covenants, representations, or warranties provided in the Master Agreements or other Purchase Documents. Here, as in *Manville*, Freddie Mac's potential claims against Ally Bank and AFI would not affect the Debtors' estates because Freddie Mac's origination and/or servicing-related

-4-

claims against the Debtors—not against Ally Bank or AFI—were resolved under the Freddie Mac Stipulation. Accordingly, the Court lacks subject matter jurisdiction to enjoin Freddie Mac from pursuing its potential claims against Ally Bank or AFI.

10. Even if the Court has subject matter jurisdiction to approve the Third Party Release as applied to Freddie Mac, the release and related injunction nevertheless contravene applicable law. The Second Circuit has instructed that third-party releases should be approved only in "rare cases," where "truly unusual circumstances render the release terms important to the success of the plan." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141-43 (2d Cir. 2005). The rare occasions where third-party releases have been approved typically involve "[s]ubstantial financial contributions from non-debtor co-liable parties [that] provided compensation to claimants in exchange for the release of their liabilities . . . ." *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 212-13 (3d Cir. 2000).[2]

11. Although the Debtors attempt to justify the releases here by pointing to the size of the financial contribution by Ally/AFI, Freddie Mac's servicing-related claims against the Debtors were resolved through the Freddie Mac Stipulation, in conjunction with the Debtors' servicing transfer to Ocwen. Accordingly, no part of the settlement contribution will be used to satisfy Freddie Mac's loan servicing-related claims against the Debtors.[3] Thus, as to Freddie Mac, the Third Party Releases of its claims against AFI and Ally are wholly unsupported by consideration. *See id.* ("A central focus of these . . . reorganizations [where non-debtor third party releases were approved] was the global settlement of massive liabilities against the debtors

---

[2] The Second Circuit has held that the consideration paid to any enjoined creditor has weight in equity but is not required. *Metromedia*, 416 F.3d at 143.

[3] Although, as explained below, Freddie Mac is an investor in the Debtors' residential mortgage-backed securities ("RMBS"), the claims that Freddie Mac seeks to preserve against AFI and Ally Bank through this objection are not RMBS-related claims. Indeed, Freddie Mac's RMBS-related claims against AFI and Ally Bank are being pursued by FHFA and are specifically carved out of the Third Party Release.

and co-liable parties. Substantial financial contributions from non-debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible.")

12. The Third Party Release and related injunction are also precluded by the statutory protections afforded FHFA in its capacity as Freddie Mac's Conservator. FHFA is vested with broad statutory powers to "preserve and conserve the assets and property of [Freddie Mac]." 12 U.S.C. § 4617(b)(2)(B)(iv). To provide the Conservator with the broadest possible latitude to preserve and conserve Freddie Mac's assets, Congress expressly barred courts from taking "any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator." *Id.* § 4617(f). Any attempt to enjoin or restrain the Conservator in the exercise of its power relating to Freddie Mac, in conservatorship, is barred. *See Esther Sadowsky Testamentary Trust v. Syron*, 639 F. Supp. 2d 347, 350 (S.D.N.Y. 2009). Courts interpreting § 4617(f) have uniformly recognized that "[t]he court lacks jurisdiction to adjudicate matters which may restrict the FHFA's ability to exercise [its] powers"[4] and that "[t]his ban [on judicial interference] is an essential part of HERA's comprehensive scheme for conservatorships and receiverships." *Sadowsky*, 639 F. Supp. 2d at 351.[5] Because the Third Party Release and the related injunction would restrain or affect the Conservator's ability to preserve and conserve Freddie Mac's assets (namely, claims against AFI and Ally Bank), they cannot be approved.

13. Finally, the Debtors have carved out Fannie Mae, a similarly-situated party, from the Third Party Release. There is no justification to treat Freddie Mac differently.

---

[4] *Kuriakose v. Fed. Home Loan Mortgage Corp.*, 674 F. Supp. 2d 483, 493 (S.D.N.Y. 2009).

[5] The Housing and Economic Recovery Act ("HERA"), Public Law No. 110-289, 122 Stat. 2654 (2008), titled the Federal Housing Finance Regulatory Reform Act of 2008.

The only way to treat Freddie Mac the same as Fannie Mae is to have the following language added to the Third Party Release Carve-Out found in the first paragraph of Article IX(E):

> ". . . and (iv) Freddie Mac against Ally Financial Inc. and/or any of its affiliates including Ally Bank, including, without limitation, any claims for liabilities, obligations, or duties owed to Freddie Mac under any agreement with Freddie Mac, including the obligations and duties to honor all selling and servicing representations and warranties relating to loans sold to Freddie Mac by Ally Bank between April 18, 2012 and July 31, 2013."

Absent the inclusion of the foregoing language, Freddie Mac respectfully requests that the Court decline to approve the Third Party Release as it applies to Freddie Mac.

## **RESERVATION OF RIGHTS**

14. Freddie Mac also reserves its right to oppose confirmation of the Plan or to take any other action to the extent the Plan (or any order of this Court confirming the Plan) is amended or modified in any way to adversely affect Freddie Mac's recoveries as currently set forth in the Plan (including all components thereof), in the Debtors' disclosure statement (as amended) [ECF No. 4736], and in this Court's *Memorandum Opinion and Order, and Findings of Fact and Conclusions of Law, Approving the FGIC Settlement Motion* dated September 13, 2013 [ECF No. 5042].

*(Remainder of Page Intentionally Left Blank)*

-8-

Dated: October 21, 2013　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　MCKOOL SMITH, P.C.

　　　　　　　　　　　　　　　　　　　　/s/ Michael R. Carney
　　　　　　　　　　　　　　　　　　　　Peter S. Goodman
　　　　　　　　　　　　　　　　　　　　Michael R. Carney
　　　　　　　　　　　　　　　　　　　　One Bryant Park, 47th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York  10036
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 402-9400
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 402-9444
　　　　　　　　　　　　　　　　　　　　Email: pgoodman@mckoolsmith.com
　　　　　　　　　　　　　　　　　　　　　　　　 mcarney@mckoolsmith.com

　　　　　　　　　　　　　　　　　　　　*Counsel for Federal Home Loan Mortgage Corporation*