# **EXHIBIT A**

**(Key Provisions of Governing Agreements)**

US_ACTIVE-114446282-SKKAM-260708-60066

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
|---|---|
| AFI Revolver, § 13.15.<br><br>Provides the Collateral Agent with full protection with respect to any action or inaction. | "Wells Fargo Bank, N.A. is party to this Agreement solely in its capacity as First Priority Collateral Agent under the Security Agreement and solely for purposes of Section 12.11(b) herein.  The First Priority Collateral Agent shall be fully protected under this Agreement with respect to any action or inaction hereunder by the indemnities, costs, expenses and other protective provisions set forth for its benefit under the Security Agreement." |
| Revolver Security Agreement, § 14(a).<br><br>The Collateral Agent has no duty to act unless directed. | "The First Priority Collateral Agent shall have no duty to act, consent or request any action of the Grantors or any other Person in connection with this Amended and Restated First Priority Pledge and Security Agreement and Irrevocable Proxy (including all schedules and exhibits attached hereto) unless the First Priority Collateral Agent shall have received written direction from the Lender Agent." |
| Revolver Security Agreement, § 14(d).<br><br>The Collateral Agent only has those duties set forth in the Revolver Security Agreement and related agreements. | "Notwithstanding any provision to the contrary elsewhere in this Agreement or any other Facility Document, the First Priority Collateral Agent shall not have any duties or responsibilities, except those expressly set forth in this Agreement or such other Facility Documents, any fiduciary relationship with the Lender Parties, and no implied covenants, functions or responsibilities shall be read into this Agreement or otherwise exist against the First Priority Collateral Agent." |

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
|---|---|
| Revolver Security Agreement, § 14(f).<br><br>The Collateral Agent has no obligation to investigate any instruction received and has no liability. | "Notwithstanding anything herein to the contrary, in no event shall the First Priority Collateral Agent have any obligation to inquire or investigate as to the correctness, veracity, or content of any instruction received from the Lender Agent or any Lender. In no event shall the First Priority Collateral Agent have any liability in respect of any such instruction received by it and relied on with respect to any action or omission taken pursuant thereto." |
| Revolver Security Agreement, § 14(g).<br><br>The Collateral Agent is not liable for the misconduct of its agents. | "The First Priority Collateral Agent may execute any of its duties under this Agreement or any of the Facility Documents by or though agents, experts or attorneys-in-fact and shall be entitled to advice of counsel concerning all matters pertaining to such duties. The First Priority Collateral Agent shall not be responsible for the negligence or misconduct of any agents, experts or attorneys-in-fact selected by it in good faith." |
| Revolver Security Agreement, § 14(h).<br><br>The Collateral Agent has no liability for any action taken except for gross negligence or willful misconduct. | "Neither the First Priority Collateral Agent nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates shall be (i) liable for any action lawfully taken or omitted to be taken by it under or in connection with this Agreement or any of the Facility Documents (except for its gross negligence or willful misconduct), or (ii) responsible in any manner to any Lender Party for any recitals, statements, representations or warranties (other than its own recitals, statements, representations or warranties) made in this Agreement or any of the Facility Documents or in any certificate, report, statement or other document referred to or provided for in, or received by the First Priority Collateral Agent under or in connection with, this Agreement or any of the Facility Documents . . . ." |

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
| Revolver Security Agreement, § 14(o).<br><br>The Collateral Agent is entitled to rely conclusively on documents believed to be genuine. | "The First Priority Collateral Agent shall be entitled conclusively to rely, and shall be fully protected in relying, upon any note, writing, resolution, request, direction, certificate, notice, consent, affidavit, letter . . . or other document or conversation believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person or Persons and/or upon advice and/or statements of legal counsel, independent accountants and other experts selected by the First Priority Collateral Agent and need not investigate any fact or matter stated in any such document . . . ." |

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
| Intercreditor Agreement, § 5.6(e).<br><br>The Collateral Agent is not liable for any action or inaction except for its gross negligence or willful misconduct. | "Neither the Collateral Control Agent nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates shall be (i) liable for any action lawfully taken or omitted to be taken by it under or in connection with this Agreement or any of the Collateral Documents (except for its gross negligence or willful misconduct), or (ii) responsible in any manner to any Control Secured Party for any recitals, statements, representations or warranties (other than its own recitals, statements, representations or warranties) made in this Agreement or any of the Collateral Documents or in any certificate, report, statement or other document referred to or provided for in, or received by the Collateral Control Agent under or in connection with, this Agreement or any of the Collateral Documents or for the value, validity, effectiveness, genuineness, enforceability or sufficiency of this Agreement or any of the Collateral Documents or for any failure of the Obligors or any other Person to perform their obligations hereunder and thereunder. The Collateral Control Agent shall not be under any obligation to any Control Secured Party or any other Person to ascertain or to inquire as to (i) the observance or performance of any of the agreements contained in, or conditions of, this Agreement or any of the Collateral Documents or to inspect the properties, books or records of the Obligors, (ii) whether or not any representation or warranty made by any Person in connection with this Agreement or any Collateral Document is true, (iii) the performance by any Person of its obligations under this Agreement or any of the Collateral Documents or (iv) the breach of or default by any Person of its obligations under this Agreement or any of the Collateral Documents." |

| **The Collateral Agent's Limited Duties** ||
| --- | --- |
| **Provision** | **Quote** |
| Intercreditor Agreement, § 5.6(j).<br><br>The Collateral Agent has no liability with respect to the Collateral except for gross negligence, bad faith, or willful misconduct. | "The Collateral Control Agent shall not be responsible for, nor incur any liability with respect to, (i) the existence, genuineness or value of any of the Collateral or for the validity, perfection, priority or enforceability of the security interest in any of the Collateral, whether impaired by operation of law or by reason of any action or omission to act on its part under this Agreement or any of the Collateral Documents, except to the extent such action or omission constitutes gross negligence, bad faith or willful misconduct on the part of the Collateral Control Agent, (ii) the validity or sufficiency of the Collateral or any agreement or assignment contained therein, (iii) the validity of the title of the Obligors to the Collateral, (iv) insuring the Collateral or (v) the payment of taxes, charges or assessments upon the Collateral or otherwise as to the maintenance of the Collateral." |
| Junior Secured Notes Indenture, § 8.02.<br><br>The Indenture Trustee and its agents have no liability for the protection of the Collateral. | "[N]either the Trustee nor any of its officers, directors, employees, attorneys or agents will be responsible or liable for the existence, genuineness, value or protection of any Collateral, for the legality, enforceability, effectiveness or sufficiency of the Security Documents, for the creation, perfection, priority, sufficiency or protection of any Lien securing the Notes or the Guarantees, or for any defect or deficiency as to any such matters, or for any failure to demand, collect, foreclose or realize upon or otherwise enforce any such Liens or Security Documents or any delay in doing so." |

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
| Notes Security Agreement, § 15(d).<br><br>The Collateral Agent only has those duties set forth in the Notes Security Agreement and related agreements. | "Notwithstanding any provision to the contrary elsewhere in this Agreement, any other Notes Document or any such Pari Passu Third Lien Indebtedness Agreement, the Third Priority Collateral Agent shall not have any duties or responsibilities, except those expressly set forth in this Agreement, such other Notes Documents and each such Pari Passu Third Lien Indebtedness Agreement or any fiduciary relationship with the Secured Parties, and no implied covenants, functions or responsibilities shall be read into this Agreement or otherwise exist against the Third Priority Collateral Agent." |
| Notes Security Agreement, § 15(g).<br><br>The Collateral Agent is not liable for the misconduct of its agents. | "The Third Priority Collateral Agent may execute any of its duties under this Agreement, any of the Notes Documents or any Pari Passu Third Lien Indebtedness Agreement by or though agents, experts or attorneys-in-fact and shall be entitled to advice of counsel concerning all matters pertaining to such duties. The Third Priority Collateral Agent shall not be responsible for the negligence or misconduct of any agents, experts or attorneys-in-fact selected by it in good faith." |

| **The Collateral Agent's Limited Duties** ||
| **Provision** | **Quote** |
|---|---|
| Notes Security Agreement, § 15(h).<br><br>The Collateral Agent has no liability for any action taken except for gross negligence or willful misconduct. | "Neither the Third Priority Collateral Agent nor any of its officers, directors, employees, agents, attorneys-in-fact or affiliates shall be (i) liable for any action lawfully taken or omitted to be taken by it under or in connection with this Agreement, any of the Notes Documents or any Pari Passu Third Lien Indebtedness Agreement (except for its gross negligence or willful misconduct), or (ii) responsible in any manner to any Secured Party for any recitals, statements, representations or warranties (other than its own recitals, statements, representations or warranties) made in this Agreement, any of the Notes Documents or Pari Passu Third Lien Indebtedness Agreement or in any certificate, report, statement or other document referred to or provided for in, or received by the Third Priority Collateral Agent under or in connection with, this Agreement, any of the Notes Documents or any Pari Passu Third Lien Indebtedness Agreement . . . ." |
| Notes Security Agreement, § 15(o).<br><br>The Collateral Agent is entitled to rely conclusively on documents believed to be genuine. | "The Third Party Collateral Agent shall be entitled conclusively to rely, and shall be fully protected in relying, upon any note, writing, resolution, request, direction, certificate, notice, consent, affidavit, letter . . . or other document or conversation believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person or Persons and/or upon advance and/or statements of legal counsel, independent accountants and other experts selected by the Third Priority Collateral Agent and need not investigate any fact or matter stated in any such document." |

- 7 -

| **The Collateral Agent's Charging Lien and** <br> **Right to Payment of its Fees and Expenses and Indemnification** ||
|---|---|
| **Provision** | **Quote** |
| Revolver Agreement, § 14(r). <br><br> The Debtors will pay all fees and expenses of the Collateral Agent. | "Notwithstanding that the First Priority Collateral Agent is appointed by and acting for and at the direction of the Lender Parties, the Grantors will jointly and severally pay upon demand to the First Priority Collateral Agent the amount of any and all reasonable fees (including any as set forth in one or more separate fee letters of the First Priority Collateral Agent) and out-of-pocket expenses, including the reasonable fees and expenses of its counsel, that the First Priority Collateral Agent may incur in connection with (i) the negotiation, performance or administration of this Agreement and the Facility Documents to which it is a party, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement (whether through negotiations, legal proceedings or otherwise) of any of the rights of the First Priority Collateral Agent or the other Lender Parties hereunder or under the Facility Documents or (iv) the failure by the Grantors to perform or observe any of the provisions hereof or of any of the Facility Documents. The provisions of this section shall survive the termination of this Agreement and resignation or removal of the First Priority Collateral Agent. The expenses of the First Priority Collateral Agent incurred in connection with actions undertaken as provided in this Section 14 shall be payable jointly and severally by the Grantors to the First Priority Collateral Agent upon demand therefore (which demand shall be accompanied by an appropriate invoice)." |
| Revolver Agreement, § 14(t). <br><br> The Debtors will indemnify the Collateral Agent from all liabilities except for gross negligence or willful misconduct. | "The Grantors, jointly and severally, agree to indemnify each of the First Priority Collateral Agent and its officers, directors, employees, agents or attorneys-in-fact (collectively, the "Indemnified Parties") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including, without limitation, attorneys' fees |

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
| | and expenses) or disbursements of any kind whatsoever which may at any time be imposed on, incurred by or asserted against any Indemnified Party in any way relating to or arising out of this Agreement or the Facility Documents; <u>provided that</u> the Grantors shall not be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements to the extent that any of the foregoing result from any such Indemnified Party's gross negligence or willful misconduct as determined by a court of competent jurisdiction beyond all applicable appeals." |
| Revolver Agreement, § 12(f).<br><br>The proceeds of the Collateral must first be applied to the payment of the Collateral Agent's fees and expenses. | "Any cash proceeds of any disposition by the First Priority Collateral Agent of any of the Collateral shall be applied by the First Priority Collateral Agent, first, to payment of the First Priority Collateral Agent's and Collateral Control Agent's fees and expenses in connection with the Collateral, including without limitation, attorneys' fees and legal expenses, and second, to payment of the Lender Agent's expenses in connection with the Collateral, including attorneys' fees and legal expenses, and thereafter to the payment of any and all of the Obligations in such order of application as the Lender Agent may from time to time direct, and thereafter any surplus will be paid to the applicable Grantor or as a court of competent jurisdiction shall direct.  Neither the First Priority Collateral Agent nor any other Lender Party need apply or pay over for application noncash proceeds of collection and enforcement unless (i) the failure to do so would be commercially unreasonable and (ii) the applicable Grantor has provided the First Priority Collateral Agent and the Lender Agent with a written demand to apply or pay over such noncash proceeds on such basis.  To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the First Priority Collateral Agent arising out of |

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
| | the exercise by the First Priority Collateral Agent of any rights hereunder." |
| Intercreditor Agreement, § 5.6(o).<br><br>The Debtors will pay all fees and expenses of the Collateral Agent. | "Notwithstanding that the Collateral Control Agent is appointed by and acting for and at the direction of the Control Secured Parties, the Obligors will jointly and severally pay upon demand to the Collateral Control Agent the amount of any and all reasonable fees (including any as set forth in one or more separate fee letters of the Collateral Control Agent) and out-of-pocket expenses, including the reasonable fees and expenses of its counsel, that the Collateral Control Agent may incur in connection with (i) the negotiation, administration and performance of this Agreement and the Collateral Documents to which it is a party, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement (whether through negotiations, legal proceedings or otherwise) of any of the rights of the Collateral Control Agent or the other Control Secured Parties hereunder or under the Collateral Documents or (iv) the failure by the Obligors to perform or observe any of the provisions hereof or of any of the Collateral Documents.  The provisions of this section shall survive the termination of this Agreement and resignation or removal of the Collateral Control Agent. The expenses of the Collateral Control Agent incurred in connection with actions undertaken as provided in this Section 8.1 shall be payable jointly and severally by the Obligors to the Collateral Control Agent upon demand therefore (which demand shall be accompanied by an appropriate invoice)." |
| Intercreditor Agreement, § 5.6(q).<br><br>The Debtors will indemnify the Collateral Agent from all liabilities | "The Obligors, jointly and severally, agree to indemnify each of the Collateral Control Agent and its officers, directors, employees, agents or attorneys-in-fact (collectively, the "Control Indemnified Parties") from |

- 10 -

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
| except for gross negligence or willful misconduct. | and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind whatsoever which may at any time be imposed on, incurred by or asserted against any Control Indemnified Party in any way relating to or arising out of this Agreement or the Collateral Documents; provided that the Obligors shall not be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements to the extent that any of the foregoing result from any such Control Indemnified Party's gross negligence or willful misconduct as determined by a court of competent jurisdiction beyond all applicable appeals." |
| Notes Security Agreement, § 15(r).<br><br>The Debtors will pay all fees and expenses of the Collateral Agent. | "Notwithstanding that the Third Priority Collateral Agent is appointed by and acting for and at the direction of the Secured Parties, the Grantors will jointly and severally pay upon demand to the Third Priority Collateral Agent the amount of any and all reasonable fees (including any as set forth in one or more separate fee letters of the Third Priority Collateral Agent) and out-pocket-expenses, including the reasonable fees and expenses of its counsel, that the Third Priority Collateral Agent may incur in connection with (i) the negotiation, performance or administration of this Agreement, the Notes Documents and each Pari Passu Third Lien Indebtedness Agreement to which it is a party, (ii) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Collateral, (iii) the exercise or enforcement (whether through negotiations, legal proceedings or otherwise) of any of the rights of the Third Priority Collateral Agent or the other Secured Parties hereunder, under the Notes Documents or under any Pari Passu Third Lien Indebtedness Agreement or (iv) the failure by the Grantors to perform or observe any of the provisions hereof or of any of the Notes Documents or any Pari |

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
|  | Passu Third Lien Indebtedness Agreement.  The provisions of this section shall survive the termination of this Agreement and resignation or removal of the Third Priority Collateral Agent.  The expenses of the Third Priority Collateral Agent incurred in connection with actions undertaken as provided in this Section 15 shall be payable jointly and severally by the Grantors to the Third Priority Collateral Agent upon demand therefor (which demand shall be accompanied by an appropriate invoice)." |
| Notes Security Agreement, § 15(t).<br><br>The Debtors will indemnify the Collateral Agent from all liabilities except for gross negligence or willful misconduct. | "The Grantors, jointly and severally, agree to indemnify each of the Third Priority Collateral Agent and its officers, directors, employees, agents or attorneys-in-fact (collectively, the "Indemnified Parties") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses (including, without limitation, attorneys' fees and expenses) or disbursements of any kind whatsoever which may at any time be imposed on, incurred by or asserted against any Indemnified Party in any way relating to or arising out of this Agreement, the Notes Documents or any Pari Passu Third Lien Indebtedness Agreement; provided that the Grantors shall not be liable for the payment of any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements to the extent that any of the foregoing result from any such Indemnified Party's gross negligence or willful misconduct as determined by a court of competent jurisdiction beyond all applicable appeals." |

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
| Notes Security Agreement, § 13(f).<br><br>The proceeds of the Collateral must first be applied to the payment of the Collateral Agent's fees and expenses. | "Any cash proceeds of any disposition by the Third Priority Collateral Agent of any of the Collateral shall be applied by the Third Priority Collateral Agent, first, to payment of the Third Priority Collateral Agent's and Collateral Control Agent's fees and expenses in connection with the Collateral, including without limitation, attorneys' fees and legal expenses, and second, without duplication of amounts applied pursuant to clause first above, to the indefeasible payment in full in cash, pro rata, based on the amount of Obligations outstanding under the Indenture and each Pari Passu Third Lien Indebtedness Agreement and then due and owing to (i) the Trustee to be applied as provided in the Indenture, and (ii) each Pari Passu Third Lien Indebtedness Agent to be applied as provided in the applicable Pari Passu Third Lien Indebtedness Agreement; and, the balance, if any, to such Grantor or as otherwise directed by a court of competent jurisdiction."<br><br>"Neither the Third Priority Collateral Agent nor any other Secured Party need apply or pay over for application noncash proceeds of collection and enforcement unless (i) the failure to do so would be commercially unreasonable and (ii) the applicable Grantor has provided the Third Priority Collateral Agent, the Trustee and each Pari Passu Lien Indebtedness Agent with a written demand to apply or pay over such noncash proceeds on such basis. To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the First Priority Collateral Agent arising out of the exercise by the First Priority Collateral Agent of any rights hereunder." |

| **The Collateral Agent's Charging Lien and** |
|:---:|
| **Right to Payment of its Fees and Expenses and Indemnification** |

| **Provision** | **Quote** |
|---|---|
| Junior Secured Notes Indenture, § 7.07(g).<br><br>The Debtors will indemnify the Collateral Agent from all liabilities except for negligence or bad faith. | "The Company and the Guarantors will indemnify the Collateral Agent and the Collateral Control Agent and any predecessor Collateral Agent and the Collateral Control Agent any and all losses, liabilities, damages, claims or expenses (including costs and expenses of counsel), including taxes incurred by it arising out of or in connection with the acceptance or administration of its duties under this Indenture, including the reasonable costs and expenses of enforcing this Indenture against the Company and the Guarantors (including this Section 7.07) and defending itself against any claim (whether asserted by the Company, the Guarantors, any Holder or any other Person) or liability in connection with the exercise or performance of any of its powers or duties hereunder, except to the extent any such loss, liability or expense may be attributable to its negligence or bad faith.  The Collateral Agent and the Collateral Control Agent will notify the Company promptly of any claim for which it may seek indemnity.  Failure by the Collateral Agent or the Collateral Control Agent to so notify the Company will not relieve the Company or any of the Guarantors of their obligations hereunder.  The Company or such Guarantor will defend the claim and the Collateral Agent and the Collateral Control Agent will cooperate in the defense.  The Collateral Agent or the Collateral Control Agent may have separate counsel and the Company will pay the reasonable fees and expenses of such counsel.  Neither the Company nor any Guarantor need pay for any settlement made without its consent, which consent will not be unreasonably withheld." |

| The Collateral Agent's Charging Lien and Right to Payment of its Fees and Expenses and Indemnification ||
|---|---|
| **Provision** | **Quote** |
| Junior Secured Notes Indenture, § 8.03(b).<br><br>The Collateral Agent is empowered to collect funds. | "The Collateral Agent, the Collateral Control Agent and the Trustee are authorized and empowered to receive for the benefit of the Holders of Notes any funds collected or distributed under the Security Documents or the Intercreditor Agreement to which the Collateral Agent or Trustee is a party and, subject to the terms of the Security Documents and the Intercreditor Agreement, to make further distributions of such funds to the Holders of Notes according to the provisions of this Indenture." |
| Junior Secured Notes Indenture, § 6.10.<br><br>Money collected must be first paid *pro rata* to the Indenture Trustee and the Collateral Agent for outstanding amounts due. | "If the Trustee collects any money pursuant to this Article VI or pursuant to the Security Documents, it shall pay out the money in the following order:<br><br>"First:  pro rata to the Trustee, its agents and attorneys for amounts due under Section 7.07 hereof, and the Collateral Agent and Collateral Control Agent, their agents and attorneys for amounts due under the Security Documents including, in each case, payment of all compensation, expenses and liabilities incurred by the Trustee, the Collateral Agent and the Collateral Control Agent and the costs and expenses of collection . . . [.]" |

| **Releases of Collateral under the AFI Revolver and the Junior Secured Notes Indenture** ||
|---|---|
| **Provision** | **Quote** |
| Revolver Security Agreement, § 9.<br><br>Collateral shall be released from time to time. | "Collateral shall from time to time be released from the security interest created by this Agreement pursuant to and in accordance with the provisions of the Loan Agreement." |
| AFI Revolver, § 12.11.<br><br>The Collateral Agent is authorized to release certain Collateral. | "Each Lender and other Lender Party (by their acceptance of the benefits of any Collateral) hereby authorizes the Lender Agent, the Collateral Control Agent and/or the First Priority Collateral Agent to release (or authorize the release of) any collateral that is permitted to be sold or released pursuant to the terms of the Facility Documents. . . .   Each release of Collateral shall be in the form of Exhibit 9.02 hereto." |
| AFI Revolver, § 12.11.<br><br>In executing such releases of liens and security interests, the Collateral Agent is entitled to rely conclusively on a Collateral Release Certificate directing the release of the Collateral. | "In connection with any release effectuated pursuant to this Section 12.11 hereof, the First Priority Collateral Agent shall be entitled to conclusively rely, and shall be fully protected in relying, upon any such Collateral Release Certificate, and shall incur no liability to any Person in connection with acting in reliance thereon." |
| Intercreditor Agreement, § 5.6(l).<br><br>The Collateral Agent is entitled to rely conclusively on documents believed to be genuine including instructions to release Collateral. | "The Collateral Control Agent shall be entitled conclusively to rely, and shall be fully protected in relying, upon any note, writing, resolution, request, direction, certificate, notice, consent, affidavit, letter, cablegram, telegram, telecopy, email, telex or teletype message, statement, order or other document or conversation believed by it in good faith to be genuine and correct and to have been signed, sent or made by the proper Person or Persons and/or upon advice and/or statements of legal counsel, independent accountants and other experts selected by the Collateral Control Agent and need not investigate any fact or matter stated in any such document. . . .   In connection with any request or direction of the Relevant Directing Party, the Collateral Control Agent shall be entitled conclusively to rely, and shall be fully protected in relying, upon any |

| **Releases of Collateral under the AFI Revolver and the Junior Secured Notes Indenture** ||
| **Provision** | **Quote** |
| | instruction delivered by the Relevant Directing Party." |
| Intercreditor Agreement, § 5.1<br><br>If liens under the Revolver Security Agreement are released, the liens under the Notes Security Agreement are automatically released. | "(a) If, in connection with (i) the exercise of any remedies by the First Priority Collateral Agent or any other First Priority Secured Party in respect of the Collateral provided for in Section 3.1, including any sale, lease, exchange, transfer or other disposition of any such Collateral or (ii) any sale, lease, exchange, transfer or other disposition of any Collateral (other than to another Obligor) permitted under the terms of the First Priority Documents, the Second Priority Documents and the Third Priority Documents (in each case, as in effect on the date hereof), the First Priority Collateral Agent, on behalf of itself and the other First Priority Secured Parties, releases any of its Liens on any part of the Collateral, the Lien of the Second Priority Collateral Agent for the benefit of the Second Priority Secured Parties on such Collateral (but not on any proceeds of such Collateral not required to be paid to the First Priority Secured Parties for application to the First Priority Claims) and the Lien of the Third Priority Collateral Agent for the benefit of the Third Priority Secured Parties on such Collateral (but not on any proceeds of such Collateral not required to be paid to the First Priority Secured Parties for application to the First Priority Claims) shall in each case be automatically and unconditionally released with no further consent or action of any Person, and each of the Second Priority Collateral Agent, the Third Priority Collateral Agent, the 2010 Trustee, on behalf of itself and the other Second Priority Secured Parties, and the 2015 Trustee and each Additional Third Priority Representative, on behalf of themselves and the other Third Priority Secured Parties, shall promptly execute and deliver, at the joint and several expense of the Obligors, to the First Priority Collateral Agent and the Lender Agent and the Obligors such termination statements, releases and other documents as the First |

| **Releases of Collateral under the AFI Revolver and the Junior Secured Notes Indenture** ||
| **Provision** | **Quote** |
| --- | --- |
| | Priority Collateral Agent, the Lender Agent and the Obligors may reasonably request to effectively confirm such release at the joint and several expense of the Obligors." |
| Junior Secured Notes Indenture, § 8.04.<br><br>The liens and security interests under the Notes Security Agreement may be released in accordance with the Intercreditor Agreement and also under the enumerated circumstances. | "Collateral may be released from the Lien and security interest created by the Security Documents at any time or from time to time in accordance with the provisions of the Intercreditor Agreement. In addition, the Liens on any Collateral shall be released (and upon the request of the Company pursuant to an Officers' Certificate in the form of Exhibit F and Opinion of Counsel in the form of Exhibit G certifying that all conditions precedent hereunder have been met, the Trustee shall take such actions as may be requested by the Company to evidence such release at the Company's sole cost and expense) under any one or more of the following circumstances:<br><br>    (i) upon the sale, transfer or other disposition of such property or assets (other than to the Company or a Guarantor)to the extent not prohibited under Section 4.10 hereof, the Lien of the Security Documents shall be released on the assets so transferred;<br><br>    (ii) upon the release of a Guarantor from its Guarantee pursuant Section 10.05, the property and assets of such Guarantor shall be released from the Lien of the Security Documents; or<br><br>    (iii) in connection with any release of Liens pursuant to any amendment complying with Article IX hereof." |
| Notes Security Agreement, § 10.<br><br>In executing releases of liens and security interests granted under the Notes Security Agreement, the Collateral Agent was entitled to rely | "Collateral shall from time to time be released from the security interest created by this Agreement pursuant to and in accordance with the provisions of both the Indenture and each Pari Passu Third Lien Indebtedness Agreement. . . . With respect to any such release, the Third Priority Collateral Agent, the Trustee and each |

- 18 -

| **Releases of Collateral under the AFI Revolver and the Junior Secured Notes Indenture** ||
|---|---|
| <u>**Provision**</u> | <u>**Quote**</u> |
| conclusively on Officer's Certificates and Opinions of Counsel delivered to the Collateral Agent. | Pari Passu Third Lien Indebtedness Agent shall be entitled to rely conclusively upon an Officer's Certificate and an Opinion of Counsel delivered in connection with such release, which Officer's Certificate and an Opinion of Counsel shall be in the form of Attachments III and IV, respectively." |