**Hearing Date: November 19, 2013 at 10:00 a.m. (prevailing Eastern Time)**

**WINSTON & STRAWN LLP**
James Donnell (jdonnell@winston.com)
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

Nathan P. Lebioda (nlebioda@winston.com)
100 North Tryon Street
Charlotte, NC 28202-1078
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

*Attorneys for WFNBA*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- )
In re:                                                                     )    Case No. 12-12020-MG
                                                                               )
RESIDENTIAL CAPITAL, LLC, et al.,          )    Chapter 11
                                                                               )
                                      Debtors.          )    Jointly Administered
------------------------------------------------------------------- )

**LIMITED OBJECTION OF WFBNA TO CONFIRMATION OF JOINT CHAPTER 11
PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

# TABLE OF CONTENTS

**Page**

I.    Requiring a Forced Third Party Release of WFBNA's Claims Against AFI Would Violate the "Best Interests Test" and Unfairly Discriminate Against WFBNA ..................3

II.    AFI Should be Estopped from Discharging its Obligations to WFBNA Under the AFI Deposit Agreements; The Cash Management Order Provided for the Protection of WFBNA's Rights against AFI under the Deposit Agreements ....................7

III.    AFI Has Waived Any Right to Take Advantage of a Discharge of its Deposit Agreement Obligations to WFBNA ..................................................................................10

IV.    The Court Does Not Have "Indemnity-Based" Jurisdiction Over Those Claims Arising Under the AFI Deposit Agreement for Which AFI Has No Basis for Asserting Indemnity Against the Debtors ..........................................................................10

   A.    For a Claim to be Subject to Forced Release by the Bankruptcy Court, AFI Must Have an Allowable Right of Indemnity Against the Debtors    10

   B.    AFI Has No Basis for Asserting Indemnity Against the Debtors for Obligations Arising out of AFI's own Bank Accounts    12

   C.    Any Claim That AFI May Have for Indemnity for ResCap Guaranty Claims Has Been Waived    14

V.    Even if There Were Rights of Indemnity to Justify Jurisdiction, the Court would Also Need to Determine if it has § 105 Authority to Discharge such Claims Against AFI ..................................................................................................................14

VI.    The Subordination Agreement Provisions of WFBNA's Deposit Agreement Should Be Enforced Under § 510(a) ..................................................................................18

VII.    Additional Objections and Reservation of Rights ..........................................................20

NY:1586311.21

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ace American Ins. Co. v. Bank of the Ozarks*,
   2012 WL 3240239 (S.D.N.Y. 2012) ................................................................... 18

*Credit Alliance Corp. v. Williams*,
   851 F.2d 119 (4th Cir. 1998) .......................................................................... 18

*Deutsche Bank, AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber
   Network, Inc.)*,
   416 F.3d 136 (2d Cir. 2005) ....................................................................... 14, 15

*F.D.I.C. v. Colonial Realty Co.*,
   966 F.2d 57 (2d Cir. 1992) ............................................................................. 15

*Feld v. Zale Corp. (In re Zale Corp.)*,
   62 F.3d 746 (5th Cir. 1995) ........................................................................... 11

*HSBC Bank USA v. Branch (In re Bank of New England Corp.)*,
   364 F.3d 355 (1st Cir. 2004) .......................................................................... 19

*In re Dreier*,
   429 B.R. 112 (Bank. S.D.N.Y. 2012) .............................................................. 16

*In re GSC Inc.*,
   453 B.R. 132 (Bankr. S.D.N.Y. 2011) .............................................................. 7

*In re Ion Media Networks*,
   419 B.R. 585 (Bankr. S.D.N.Y. 2009) ............................................................. 20

*In re M.J. Sales & Distributing Co., Inc.*,
   25 B.R. 608 (Bankr. S.D.N.Y. 1982) ........................................................... 17, 18

*In re MCorp Fin., Inc.*,
   137 B.R. 219 (Bankr. S.D. Tex.), appeal dismissed ............................................ 20

*In re, Quigley*,
   676 F.3d 45 (2d Cir. 2012) ............................................................................. 15

*In re Quigley Co. Inc.*,
   377 B.R. 110 (Bankr. S.D.N.Y. 2007) ...................................................... passim

*In re Residential Capital*,
   474 B.R. 112 .............................................................................................. 11

ii

*Madoff v. Picard (In re Madoff)*,
    848 F. Supp. 2d 469 (S.D.N.Y. 2012)..............................................................................16, 17

*Semetex Corp. v. UBAF Arab American Bank*,
    853 F.Supp. 759 (S.D.N.Y. 1994)...........................................................................................18

STATUTES

11 U.S.C. § 105 ................................................................................................. passim

11 U.S.C. § 502(j)...............................................................................................................20

11 U.S.C. § 510(a) ..................................................................................................18, 19, 20

11 U.S.C. § 1123(a)(4)..........................................................................................................3, 4

OTHER AUTHORITIES

Federal Rule of Bankruptcy Procedure 9024.............................................................................8, 9

Federal Rule of Civil Procedure 60(b) .....................................................................................8, 9

NY:1586311.21

**Hearing Date: November 19, 2013 at 10:00 a.m. (prevailing Eastern Time)**

**WINSTON & STRAWN LLP**
James Donnell (jdonnell@winston.com)
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700

Nathan P. Lebioda (nlebioda@winston.com)
100 North Tryon Street
Charlotte, NC 28202-1078
Telephone: (704) 350-7700
Facsimile: (704) 350-7800

*Attorneys for WFNBA*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020-MG |
| RESIDENTIAL CAPITAL, LLC, et al., | Chapter 11 |
| Debtors. | Jointly Administered |

**LIMITED OBJECTION OF WFNBA TO CONFIRMATION OF JOINT CHAPTER 11
PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Wachovia Bank and Wachovia Bank of Delaware, now succeeded by Wells Fargo Bank,

N.A., ("WFBNA") files this Limited Objection to the *Joint Chapter 11 Plan of Residential*

*Capital, LLC, et al.* [Docket No. 4819] (the "Plan" or the "Debtors' Plan" or the "Debtors'

Chapter 11 Plan").  WFBNA requests an express finding that the obligations under its bank

account deposit agreement with each of Ally Financial Inc. ("AFI") and its non-Debtor affiliates

are not released under the Plan.

Several of the Debtors maintained bank deposit accounts with WFBNA.  Additionally, however, AFI and certain of AFI's non-Debtor affiliates maintained their own bank accounts with WFBNA.  These non-Debtor affiliates with their own bank accounts included AFI, Ally Servicing, LLC and Motors Insurance Corp.  WFBNA provided the bank accounts to AFI pursuant to the bank account deposit agreement.[1]  The AFI Deposit Agreement clearly obligates AFI to reimburse WFBNA for any claims arising out of AFI's own bank accounts (the "AFI Direct Obligations").  WFBNA also contends that an amendment to the AFI Deposit Agreement provides it with an enforceable guaranty by AFI of any of the ResCap Debtors' obligations (the "ResCap Guaranty Obligations").  In this Limited Objection, WFBNA requests an express finding that none of the AFI Direct Obligations under AFI's Deposit Agreement are released under the Plan.[2]  WFBNA also requests an express finding that none of AFI's ResCap Guaranty Obligations are released under the Plan.

WFBNA's objection to the release of its claims against AFI is based on several independent grounds.  For one, this Court lacks jurisdiction to authorize a release of those claims for which AFI would have no allowable right of indemnity against the Debtors.  However, the Court need not engage in a jurisdictional analysis of the AFI Deposit Agreement claims because it is indisputable that a plan with any forced release of WFBNA's particular claims would not satisfy the "best interests test" as to WFBNA.  Moreover, even to the extent that this Court did have jurisdiction over AFI's obligations under its Deposit Agreement with WFBNA, there is insufficient basis for the Court to exercise its power under § 105 to force a release of WFBNA's

---

[1] Commercial Deposit Agreement for Large Corporate Customers, executed January 3, 2012, attached as **Exhibit A** to the *Declaration of James Donnell in Support of Limited Objection of WFBNA to Confirmation of Joint Chapter 11 Plan Proposed by Residential Capital, LLC and the Official Committee of Unsecured Creditors* ("Donnell Declaration"), filed contemporaneously herewith, and Letter Amending the Commercial Deposit Agreement, dated March 19, 2012 attached as **Exhibit B**, to the Donnell Declaration (collectively the "AFI Deposit Agreement").
[2] *Joint Chapter 11 Plan of Residential Capital, LLC, et al.* [Docket No. 4819].

2

claims.  Finally, WFBNA's rights to subordination under its intercreditor agreement with AFI should be expressly preserved.

## I.   Requiring a Forced Third Party Release of WFBNA's Claims Against AFI Would Violate the "Best Interests Test" and Unfairly Discriminate Against WFBNA

1.    During the August 21, 2013 hearing to consider the Disclosure Statement,[3] this Court preliminarily addressed the issue of whether the AFI Release generally meets the "best interests test."  The Court reviewed the proposed allocation to be made to the Federal Housing Finance Agency ("FHFA") under the Plan.  Unlike most other creditors, the FHFA is expressly carved out from the forced third party release provisions of the plan.  Apparently, in order to justify this distinction, distributions to the FHFA from the Debtors had to be reduced.

2.    In any case, WFBNA's claims under the AFI Deposit Agreement would be satisfied 100% by AFI in the absence of the forced release provisions in the Debtors' Chapter 11 Plan.  The "best interests test" is not satisfied as to WFBNA because WFBNA would receive full recovery on its claims from AFI in a Chapter 7 ResCap bankruptcy.  Specifically, WFBNA would receive a 100% recovery on the AFI Direct Obligations, and pursuant to the March 19, 2012 amendment to the AFI Deposit Agreement ("March 19, 2012 Amendment"), a 100% recovery on AFI's ResCap Guaranty Obligations.

3.    Additionally, there is no basis for discriminating against WFBNA on account of its claims against AFI under the AFI Deposit Agreement or classifying such claims in a different class, and thus, WFBNA should be given the same option as was afforded to the FHFA to preserve its claims against AFI.

4.    Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or

---

[3] *Disclosure Statement for the Debtors' Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors* [Docket No. 4157] (as amended, the "Disclosure Statement").

NY:1586311.21

interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). Equality of treatment involves two facets: (1) all class members must receive equal value, and (2) each class member must pay the same consideration in exchange for its distribution. *See In re Quigley Co. Inc.*, 377 B.R. 110, 117 (Bankr. S.D.N.Y. 2007).

5.      In *In re Quigley*, Judge Bernstein dealt with the exact issue faced by this court: whether to approve a forced third-party release that necessarily would result in certain creditors receiving less than they would in a Chapter 7 case. Judge Bernstein began by analyzing how the "best interests" test was measured:

> In the usual case, this [analysis] requires a comparison between the distributions under the plan and in a hypothetical chapter case. The comparison is not always straightforward . . . For example . . . [t]he "best interest of creditors" test in a partnership chapter 11 case must estimate the probable collection from the general partners because these additional assets would be available to pay creditors in a hypothetical chapter 7 case.
>
> However, the "best interest" test is not limited to comparing distributions, i.e., the amounts that creditors will receive. The express language of § 1129(a)(7) also **requires me to consider the value of the property that each dissenting creditor will retain** under the plan and in the hypothetical chapter 7.
>
> Here, the Fourth Plan **releases Pfizer from derivative liability; Pfizer would not receive a release in a hypothetical chapter 7 case**.

*In re Quigley*, 377 B.R. at 144-45 (internal citations omitted) (emphasis added).

6.      The fact that ResCap may be able to distribute more funds in a Chapter 11 than in a Chapter 7 is not enough; instead, the court must take into account the lost value of the creditors' claims against the third party—in this case, claims against AFI and AFI's non-Debtor affiliates. Specifically, the court in *In re Quigley* found:

> the confirmation of the Fourth Plan and discharge of Pfizer will affect the dissenting Non-Settling Claimants **because they would "retain" their right to sue Pfizer if Quigley were liquidated under chapter 7**. As the parties recognize, the critical question is whether I should consider the value of these derivative claims in deciding whether the Fourth Plan is in the "best interest" of the dissenting Non-Settling Claimants. I conclude that I must.

4

*Id.* at 145 (emphasis added).

7.      Thus, following *In re Quigley*, WFBNA's contractual claims against AFI cannot be forcibly released unless WFBNA receives payment in full.  Specifically,

> In a Chapter 7 liquidation proceeding, creditors retain their rights to pursue non-debtors for full payment, because there is no reorganization to protect by providing non-debtor releases.  Thus, giving at least liquidation value to each creditor requires protection of the Chapter 7 right to pursue non-debtor actions.  The lopsided view of creditor equality, which sanctions confiscation of these non-debtor rights in Chapter 11 through non-debtor releases, ignores the creditors' Chapter 7 right to seek full satisfaction from non-debtors in gauging satisfaction of the best interests test—comparing a creditor's Chapter 11 distribution with a hypothetical Chapter 7 distribution, from the debtor only.  Yet, the best interests equation also properly mandates consideration of creditors' comparative recoveries on non-Debtor claims, to the extent the plan is treating those non-Debtor claims by release.

*Id.* (citing Joshua M. Silverstein, *Hiding in Plain View: A Neglected Supreme Court Decision Resolves the Debate Over Non–Debtor Releases in Chapter 11 Reorganizations*, 23 EMORY BANKR. DEV. J. 13, 76–77 (2006) ("In a chapter 7 proceeding, a creditor may recover any deficiency from a solvent co-obligor if the liquidation distribution does not completely satisfy the creditor's claim.  **Therefore, since the dissenting creditor would receive payment in full on its claim in a chapter 7 bankruptcy from either the debtor, the co-obligor, or a combination of the two, the dissenting creditor must receive full payment under the debtor's chapter 11 plan of reorganization if the co-debtor receives a release**.  Otherwise, the plan violates the best-interests test." (emphasis added)).

8.      That WFBNA's claims against AFI may be disputed by AFI and unliquidated does not change the result under the "best interests test."  As this Court has ruled:

> Moreover, "[a]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to the indemnification has not yet occurred." *Credit Suisse*, 2011 WL 4965150, at *5 (citations omitted); *see also In re Manville Forest Prods. Corp.*, 209 F.3d 125, 128-29 (2d Cir. 2000) (stating that "a right to

5

payment based on a written indemnification contract arises at the time the indemnification agreement is executed," and constitutes a "valid contingent claim" in bankruptcy, even if the act giving rise to indemnification has not yet occurred).

*See* FGIC Settlement Opinion, at 40 (citing *Allstate Ins. Co. v. Credit Suisse Secs. (USA)*, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, *5 (S.D.N.Y. Oct. 19, 2011)).  The court in *In re Quigley* found:

> Here, the derivative claims against Pfizer that the Non-Settling Claimants would retain in a hypothetical Quigley chapter 7 case satisfy the definition of "property," they have "value," and although they are unliquidated and disputed, they are neither speculative nor incapable of estimation.  Furthermore, they presently exist and would exist at the time of any date selected for valuation in a hypothetical Quigley chapter 7.

> Once the derivative claims against Pfizer are factored into the equation, the Fourth Plan fails the "best interest" test.  Under the Fourth Plan, the dissenting Non–Settling Claimants will receive an estimated 7.5% distribution on their allowed claims.  **Even if they would receive nothing in a hypothetical Quigley chapter 7 bankruptcy, they would retain their rights to pursue their derivative claims against Pfizer**, which I estimate to be worth 23% of that same claim based upon what Pfizer historically paid to settle derivative claims.

*See id.* at 145-46 (internal citations omitted) (emphasis added).

9.      Chief Judge Gonzalez in *In re GSC Inc.* noted the necessary complexity of evaluating recovery under the "best interests test" and the *Quigley* requirement to analyze different economic scenarios.  *See In re GSC Inc.*, 453 B.R. 132, 162 n.40 (Bankr. S.D.N.Y. 2011).  However, the analysis of WFBNA's claims under the test is straightforward:  WFBNA would receive a 100% recovery on its AFI Direct Claim, and a 100% recovery on its ResCap Guaranty Claims from AFI in a Chapter 7 case of the ResCap Debtors.  Therefore, the Debtors' Plan fails the "best interests test" as explained in *Quigley* and acknowledged by *In re GSC Inc.*

II.    **AFI Should be Estopped from Discharging its Obligations to WFBNA Under the AFI Deposit Agreements; The Cash Management Order Provided for the Protection of WFBNA's Rights against AFI under the Deposit Agreements**

10.    WFBNA is one of several banks with which the Debtors held bank accounts, and after the Debtors' bankruptcy filing, those bank accounts were authorized to remain open under the Cash Management Order.[4]    Like most cash management orders, this Cash Management Order provided limited protection to the depository banks that maintained their postpetition accounts.

11.    With respect to AFI's ResCap Guaranty Obligations, the provisions of the Cash Management Order should be considered.  Specifically, the Cash Management Order states:

> The Debtors are authorized to continue to perform their obligations under the agreements governing such system and to transfer funds between and among the Debtors in accordance with the terms of this Order, and between and among their respective Bank Accounts and other accounts maintained with or by their duly appointed agents or custodians, as and when needed and in the amounts necessary or appropriate to maintain their operations and facilitate the orderly operations of their estates or businesses; **provided, however**, that such transfer of funds by and among the Debtors are made in accordance with the terms and conditions, **and do not impair any parties' rights under any Servicing Agreements, deposit agreements**, or other similar document . . . .

*See* Cash Management Order at ¶ 4 (emphasis added).

12.    Subsequent to entry of the Cash Management Order, WFBNA filed no motion to terminate its deposit agreement with the Debtors; it also continued to allow AFI to maintain its own deposit accounts at WFBNA, in spite of an express provision allowing WFBNA to terminate the AFI Deposit Accounts.  Specifically, the AFI Deposit Agreement provides:

---

[4]  *Final Order Under Bankruptcy Code Sections 105(a), 345, 363, 364, and 503(b)(1) and Bankruptcy Rules 6003 and 6004 Authorizing (1) Continued Use of Cash Management Services and Practices, (II) Continued Use of Existing Bank Accounts, Checks, and Business Forms, (III) Implementation of Modified Cash Management Procedures and Use of Certain Bank Accounts Established in Connection with Use of Pre- and Post-Petition Lenders' Financing Facilities and Cash Collateral, (IV) Waiver of the Investment and Deposit Requirements of Bankruptcy Code Section 345, (V) Debtors to Honor Specified Outstanding Prepetition Payment Obligations, and (VI) Continuation of Intercompany Transactions and Granting Administrative Expense Status to Intercompany Claims* [Docket No. 393] (the "Cash Management Order").

NY:1586311.21

> Either you or we may terminate some or all of the specified treasury services that
> we provide to you or terminate this deposit agreement in its entirety for any
> reason by giving the other party at least thirty (30) calendar days prior written
> notice.

*See* AFI Deposit Agreement at ¶ 13.   Additionally, WFBNA filed no motion to prevent the

ResCap Debtors from emptying their bank accounts or to prevent AFI from emptying its bank

accounts, despite WFBNA's setoff rights.

13.    WFBNA believes AFI should be estopped from now avoiding its obligations

under the AFI Deposit Agreement by obtaining a release.   In an analogous situation, AFI itself

pointed out the inherent unfairness that would result if a creditor were stripped of the protections

it received after providing postpetition services pursuant to Court order.[5]   AFI wrote:

> The Debtors' Motion also fails for the independent reason that the Debtors
> expressly agreed to perform the Foreclosure Review obligations in a post-petition
> contract that was approved by an order of this Court.
>
> It is black-letter law that such a post-petition obligation cannot constitute a
> dischargeable claim.   To the contrary, such obligations 'in fact constitute a post-
> bankruptcy benefit to the estate,' and far from being dischargeable, are in fact
> entitled to administrative priority payment.

AFI Objection to Modification of Foreclosure Review at ¶ 40 (citing *In re Klein Sleep Prods.,*

*Inc.*, 78 F.3d 18, 25 (2d Cir. 1996)).

14.    AFI also filed pleadings stating that the protections AFI received under the

Debtors' cash collateral order (which was approved at the same time as the Cash Management

Order) could not be modified without its consent or a finding by the court that "extraordinary

---

[5] *See Ally Financial, Inc.'s Objection to Debtors' Motion for a Determination that (1) GMAC Mortgage's FRB
Foreclosure Review Obligation is a General Unsecured Claim and (II) the Automatic Stay Prevents Enforcement of
the FRB Foreclosure Review Obligations* [Docket No. 3150], ("AFI Objection to Modification of Foreclosure
Review Obligation").

NY:1586311.21

circumstances" justified modification of the order under Federal Rule of Bankruptcy Procedure

9024 and Federal Rule of Civil Procedure 60(b).[6]

15.    In its Objection to Modification of Foreclosure Review, AFI argued that estoppel

was a basis for denying a discharge of postpetition obligations.  Specifically, AFI wrote:

> The Debtors' Motion should also be denied for the independent reason that the
> Debtors—after repeatedly representing to this Court and to Ally that they would
> comply with the Consent Order and thereby inducing Ally to incur significant
> expenses and provide substantial consideration to them in reliance on those
> representations—are estopped from disavowing those representations and
> disregarding their Consent Order obligations.
>
> As the Second Circuit has explained, a "bankruptcy court is essentially a court of
> equity. As such, "[i]ts proceedings are inherently proceedings in equity, and it
> applies the principles and rules of equity jurisprudence, including principles of
> estoppel."  The doctrine of equitable estoppel is properly invoked where the
> enforcement of the rights of one party would work an injustice upon the other
> party due to the latter's justifiable reliance upon the former's words or conduct."
> Courts—including in the bankruptcy context—have not hesitated to invoke the
> doctrine to prevent a party that has made a representation and induced another
> party to rely on that representation to its detriment, from acting contrary to its
> prior representation.

*Id.* at ¶ 42 (internal citations omitted).  WFBNA suggests that for the same reasons, AFI should

be estopped from modifying either its own Direct Obligations or its ResCap Guaranty

Obligations under the AFI Deposit Agreement.

---

[6] *See Ally Financial Inc.'s Limited Objection to Debtors' Motion for Entry of an Order Permitting the Debtors to Continue Using Cash Collateral* [Docket No. 3623] at ¶ 16 ("Thus, in seeking the nonconsensual use of Cash Collateral and proposing the New AP package, the Debtors really are seeking to modify the AFI/JSB cash collateral Final Order.  The debtors, however, have failed to follow the proper procedure for seeking such relief and have not made the required evidentiary showing . . . nor have the Debtors demonstrated any 'exceptional circumstances' or 'undue hardships' that justify revisiting the terms of the carefully negotiated AFI/JSB Cash Collateral Final Order.").

**III.    AFI Has Waived Any Right to Take Advantage of a Discharge of its Deposit Agreement Obligations to WFBNA**

18.    The AFI Deposit Agreement expressly provides that AFI has waived any rights to take advantage of any modification to its obligations under the Deposit Agreement.  Specifically, as set forth in the March 19, 2012 Amendment, the AFI Deposit Agreement provides as follows:

> e.    Guarantor's Waivers. . . . Guarantor waives any defense to its obligations hereunder based upon or arising by reason of: (i) any disability or other defense of Subsidiary or any other person; (ii) the cessation or limitation from any cause whatsoever, other than payment in full, of the Deposit Service Indebtedness of Subsidiary or any other person; … (vii) any modification of the Deposit Service Indebtedness, in any form whatsoever, including any modification made after revocation hereof to any Deposit Service Indebtedness incurred prior to such revocation, and including without limitation the renewal, extension, acceleration or other change in time for payment of, or other change in the terms of, the Deposit Service Indebtedness requirement that WFB give any notice of acceptance of this Guaranty . . . Guarantor further waives all rights and defenses Guarantor may have arising out of …. (B) any loss of rights Guarantor may suffer by reason of any rights, powers or remedies of Subsidiary in connection with any anti-deficiency laws or any other laws limiting, qualifying or discharging Subsidiary's Deposit Service Indebtedness . . . .

March 19, 2012 Amendment, AFI Deposit Agreement at ¶ 28(e).  This waiver is further grounds for holding that AFI is estopped from seeking a release of its Direct Obligations under the AFI Deposit Agreement.

**IV.    The Court Does Not Have "Indemnity-Based" Jurisdiction Over Those Claims Arising Under the AFI Deposit Agreement for Which AFI Has No Basis for Asserting Indemnity Against the Debtors**

***A.    For a Claim to be Subject to Forced Release by the Bankruptcy Court, AFI Must Have an Allowable Right of Indemnity Against the Debtors***

19.    Without an actual right of indemnity against the Debtors, there is no basis for jurisdiction over the AFI Deposit Agreement claims.  As discussed in detail below, AFI cannot claim indemnity against the Debtors for (i) obligations arising out of AFI's own bank accounts; and (ii) obligations for which AFI waived any right of indemnity.

10

20.     Admittedly, caselaw in the Second Circuit suggests that the bankruptcy court has broad jurisdiction to consider whether a third party release is appropriate.  However, as noted by this Court in an earlier opinion,[7] the bankruptcy court does not have jurisdiction to force a release of those third-party claims against a non-Debtor to the extent that the claims do not affect the *res* of the debtor's estate.  As further elaborated in the Examiner Report:[8]

> [I]n 2008, the Second Circuit made it explicit that courts must consider carefully whether they have jurisdiction to approve third-party releases and this jurisdiction evaluation turns on whether the claims to be enjoined would have a direct effect on the bankruptcy estate.[9]  **That claims indirectly affect the estate or arise out of facts relating to the third party's relationship with the debtor is not enough** to give bankruptcy courts jurisdiction to release and enjoin such claims.[10]
>
> Accordingly, before releasing claims against non-debtors, a bankruptcy court must first confirm that it has subject matter jurisdiction over the claims that would be subject to the requested injunction and release, **which jurisdiction will exist only if the court determines that the claims would, if not enjoined or released, directly affect the property of the bankruptcy estate**.

*See* Examiner Report at IX-14 (emphasis added).

21.     The Examiner's Report also noted the Second Circuit's review of the *Zale* bankruptcy case and its holding that claims that do not belong to the estate and have no effect on the estate are not subject to the bankruptcy court's jurisdiction.  *See* Examiner Report at IX-22 (citing *Feld v. Zale Corp., (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995)).   Specifically:

> those cases in which courts have upheld "related to" jurisdiction over third-party actions do so because the subject of the third-party dispute is property of the estate, or because the dispute over the asset would have an effect on the estate. Conversely, courts have held that a third-party action does not create "related to" jurisdiction when the asset in question is not property of the estate and the dispute has no effect on the estate.  **Shared facts between the third-party action and a debtor-creditor conflict do not in and of themselves suffice to make the third-party action "related to" the bankruptcy** . . .  [T]he district court's desire to

---

[7] *In re Residential Capital*, 474 B.R. 112, 122 n.10 (Bankr. S.D.N.Y. 2012).
[8] *Report of Arthur Gonzalez, as Examiner* [Docket No. 3698] (the "Examiner Report").
[9] *See* Examiner Report at IX-13 (citing *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville, Corp.) (Manville II)*, 517 F.3d 52 (2d cir. 2008), *rev'd on other grounds and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)).
[10] *Id.* (citing *Manville II*, 517 F.3d at 66).

"foster and encourage and then preserve settlement in federal court" does not in and of itself confer jurisdiction.

Examiner Report at ¶ IX-22 (internal citations omitted) (emphasis added).

22.     The Examiner's Report also acknowledged the Second Circuit's holding that the

Debtor may not manufacture jurisdiction by simply creating a payment obligation from the non-

Debtor to the Debtor:

> The Second Circuit went on to note the fact that the settling insurers had contributed funds to the estate was not relevant to its jurisdictional analysis. Given the inherent risk of abuse in permitting third-party releases, such releases cannot be justified solely on the basis of the third party's financial contribution to the estate.  If that were the case, the Second Circuit observed then:
>
>> a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions.  As we have made clear, subject matter jurisdiction cannot be conferred by consent of the parties.  Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.

See Examiner Report at IX-22-23 (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004)).

## B.   AFI Has No Basis for Asserting Indemnity Against the Debtors for Obligations Arising out of AFI's own Bank Accounts

23.     WFBNA provided deposit accounts to the Debtors, directly to AFI, and to other non-Debtor affiliates.  The AFI Deposit Agreement expressly lists AFI and two other non-Debtor affiliates, each as an "entity maintaining an account or using any of the services" under the Deposit Agreement; and that "each such entity is individually referred to" in the Deposit Agreement as "you."  *see* AFI Deposit Agreement at 1, and AFI signed the AFI Deposit Agreement.  *See id*. at 23.  AFI is obligated to reimburse WFBNA under the AFI Deposit Agreement for any costs related to AFI's <u>own</u> deposit accounts, including, for example, losses,

NY:1586311.21

including attorney fees related to returned items, overdrafts or any of the treasury management services.  *See* AFI Deposit Agreement at ¶ 1.

24.     In this Limited Objection, WFBNA requests an express finding that none of the AFI Direct Obligations under AFI's Deposit Agreement are released under the Plan.  WFBNA has a direct agreement with AFI for AFI's own bank accounts.  AFI has been able to use these AFI accounts for several years, including subsequent to the time that the ResCap Debtors filed for bankruptcy.  Certainly, it would make no sense for AFI to be released from the AFI Direct Obligations, which arise out of AFI's own bank accounts.  Likewise, it is difficult to see how AFI would be entitled to reimbursement or "indemnity" from ResCap for such claims.

25.     As stated above, the March 29, 2012 Amendment to the AFI Deposit Agreement included an AFI guaranty of the ResCap Debtors' obligations for their deposit accounts. Again, inclusion of a guaranty does not negate the fact that AFI has its <u>own</u> direct obligations to WFBNA for its own deposit accounts.  Even if it were appropriate to force WFBNA to release the ResCap Guaranty Obligations, it is not appropriate to force WFBNA to release the AFI Direct Obligations.

26.     Note that AFI's obligation to reimburse WFBNA for costs related to AFI's own deposit accounts survives even if AFI terminates its Deposit Agreement:

> Termination of this deposit agreement does not release you from liability for any unpaid fees or charges, or from liability for outstanding items or other obligations, which have incurred by you or accrued to you or your account under this deposit agreement . . .

*See* AFI Deposit Agreement at ¶ 13.

27.     It is difficult to see how AFI could seek "indemnity" from the ResCap Debtors for expenses related to AFI's own deposit accounts.  Without such right of indemnity against the ResCap Debtors, there is no basis for AFI to claim any effect on the ResCap estates.  For such

13

AFI Direct Obligations, there is neither a basis for jurisdiction nor a basis for the court to use its

power under § 105 to discharge such claims in favor of AFI.

### C. Any Claim That AFI May Have for Indemnity for ResCap Guaranty Claims Has Been Waived

28.    WFBNA also requests an express finding that none of the ResCap Guaranty

Obligations are released under the Plan.  Pursuant to the March 19, 2012 Amendment to the AFI

Deposit Agreement, AFI's rights of indemnity against the ResCap Debtors have been waived.

The AFI Deposit Agreement, in the provision entitled "Guarantor's Waivers" provides:

> Guarantor expressly waives any rights of Guarantor to indemnification, and/or
> contribution against Subsidiary or any other person or entity, and any other rights
> and defenses that are or may become available to Guarantor or any other person
> or entity by reasons of Sections 2787-2855, inclusive of the California Civil Code
> or any other similar law of California or any other state of the United States . . . .

See March 19, 2012 Amendment to AFI Deposit Agreement § 28(e).  "Guarantor" is defined as

AFI and "Subsidiary" includes each of the Debtors, so that any rights of indemnification of AFI

against the Debtor for Deposit Agreement obligations have been waived.  Thus, even for those

types of claims for which AFI might be expected to assert indemnity against the Debtors (as

opposed to claims arising out of AFI's own bank account relationship), there is no right of

indemnity.  The Court should clarify that the AFI Release does not include claims arising under

the AFI Deposit Agreement for which AFI would have no rights of indemnity against the

Debtors (and thus no basis for jurisdiction).

### V.    Even if There Were Rights of Indemnity to Justify Jurisdiction, the Court would Also Need to Determine if it has § 105 Authority to Discharge such Claims Against AFI

29.    Even where the court finds that a release of third party claims is generally

warranted, under the test of *Metromedia*, it is a separate question as to whether a particular third

party claim is (i) subject to the court's jurisdiction, (ii) within the court's authority under

14

NY:1586311.21

11U.S.C. § 105, and (iii) whether the release of a particular claim should be given as a matter of

equity. *Deutsche Bank, AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber

Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005). The Second Circuit made clear that even

where the bankruptcy court has jurisdiction over a third party claim because it gives rise to an

indemnity claim that would affect the Debtors' property, the bankruptcy court must separately

establish that it has authority under § 105 to discharge the particular claim. *See Pfizer Inc.v.

Angelos (In re Quigley Co. Inc.)*, 676 F.3d 45, 58 n.14 (2d Cir. 2012). Moreover, in *Quigley*,

after finding that the bankruptcy court had jurisdiction to issue an injunction against third party

claims on the basis of an effect on the *res* of the Debtors' estate, the court made the point that the

bankruptcy court's authority under § 105 was a different matter and that it was not examining

the § 105 issue:

> We recognize that the API was not entered under the bankruptcy court's authority
> conferred in 11 U.S.C. § 524(g), but rather pursuant to 11 U.S.C. §§ 105(a) and
> 362(a). However, Angelos does not contest the bankruptcy court's authority
> under these provisions to issue the API. Accordingly, we examine whether the
> API's terms encompass the Angelos suits.

*In re*, *Quigley*, 676 F.3d at 58 n.15 (internal citations omitted).

30.     The caselaw makes clear that the bankruptcy court's power under § 105 must not

conflict with other provisions of the Bankruptcy Code. *See F.D.I.C. v. Colonial Realty Co.*, 966

F.2d 57, 59 (2d Cir. 1992) ("Section 105(a) limits the bankruptcy court's equitable powers,

which 'must and can only be exercised within the confines of the Bankruptcy Code,' and 'cannot

be used in a manner inconsistent with the commands of the Bankruptcy Code." (internal citations

omitted)). Accordingly, even if the bankruptcy court determined it had jurisdiction based on an

unwaived AFI right of indemnity, the court must also analyze whether it has § 105 authority to

discharge such claims.

31.     Even if jurisdiction exists because a third party claim gives rise to an allowable

indemnity claim against a debtor, it does not follow that a court has § 105 authority to discharge

such claim.[11]    In *Madoff*, the court first noted that the forced injunction and release at issue were

limited to derivative claims and claims that belonged to the debtor:

> The Appellants argue that the permanent injunction is an improper nondebtor
> release.  However, to the extent that any party has genuinely independent claims
> against the Picower defendants, those claims are not enjoined by the permanent
> injunction. Only claims that are "duplicative or derivative" of claims that could
> have been or were asserted by the Trustee are enjoined. If, for example, the
> Appellants had asserted in the Florida Actions that the Picower defendants made
> specific misrepresentations to them in order to induce their investment with
> BLMIS, those claims might not be enjoined. However, as discussed in detail
> already, the claims alleged in the Florida Actions are duplicative of claims owned
> by the estate, and are not independent . . . .

*Id.* at 489 (internal citations omitted).    Similarly, the court in *In re Dreier* found that it had

jurisdiction to bar general creditors from seeking to recover their claims from funds transferred

to a settling transferee, but the court restricted the scope of the third party release.    *See In re*

*Dreier*, 429 B.R. 112, 133 (Bank. S.D.N.Y. 2012).   The *Madoff* court noted the *Dreier* restriction

of the release to only derivative or dependent claims:

> Indeed, similar language enjoining derivative, dependent claims was approved in
> the settlement of the *Dreier* litigation.  Simply put, the only claims being released
> here are claims that are the Trustee's to bring, or that are duplicative or derivative
> of such claims.   *Metromedia's* bar on nonconsensual releases of non-debtor
> claims does not apply here, because the claims being released belong to the
> BLMIS estate . . . .

---

[11] The court in *Madoff* also analyzed the § 105 issue, noting:

> The Appellants also appeal the Bankruptcy Court's January 13, 2011 Order approving the
> Settlement between the Picower defendants and the Trustee, and permanently enjoining any
> duplicative actions against the Picower defendants pursuant to § 105(a).

*Madoff v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012).

NY:1586311.21

*In re Madoff*, 848 F. Supp. 2d at 490 (internal citations omitted).  Ultimately, the *Madoff* court

concluded that the release of derivative and duplicative claims was authorized under § 105(a),

*id.* at 491, but emphasized that independent claims could not generally be enjoined:

> With regard to permanent injunctions of creditor suits against a third party issued
> in connection with a settlement agreement between the third party and the trustee,
> **a bankruptcy court generally may not enjoin creditor claims against the
> third party when those claims are independent and "personal to the
> creditor**."

*Id.* at 488 (quoting *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 365-66 (Bankr.

S.D.N.Y. 2002) (emphasis added)).

32.    A contractual guaranty obligation is an independent claim, and is similar to a

letter of credit obligation:

> A bank honors a letter of credit and pays the beneficiary with its own funds, and
> not with assets belonging to the debtor who caused the letter of credit to be
> issued.  Indeed, in accordance with N.Y. Uniform Commercial Code § 5-114, a
> letter of credit represents an irrevocable obligation by an issuing bank to pay the
> beneficiary in accordance with its terms, despite notification from the customer
> of fraud or other defenses against the beneficiary not apparent on the face of the
> letter of credit.  **In essence, a letter of credit is somewhat like a guaranty**.

*In re M.J. Sales & Distributing Co., Inc.*, 25 B.R. 608, 613 (Bankr. S.D.N.Y., 1982) (emphasis

added).

33.    The *M.J. Sales* court noted that enjoining a letter of credit obligation destroys the

whole purpose of the agreement:

> The District Court opined that the filing of a Chapter 11 petition should not delay
> the payment on a letter of credit since "the intended substitution of a bank for its
> less credit-worthy customer would be defeated.  Moreover, the court expressed
> the importance of letters of credit in commercial transactions and that if
> bankruptcy courts enjoined banks from honoring their letters or credit, "a letter of
> credit would become a dubious device for securing credit.

17

*Id.* (citing *Westinghouse Credit Corp. v. Page*, 18 B.R. 713 (D.C.D.C. 1982)).

34.    Other courts have also noted the importance of allowing beneficiaries of fraudulent letter of credit obligations to preserve their rights:

> Because of the "independence principle," an "issuing or confirming bank must honor a proper demand even though the beneficiary has breached the underlying contract, even though the insolvency of the account party renders reimbursement impossible, and notwithstanding supervening illegality, impossibility, war or insurrection. This independence principle is universally viewed as essential to the proper functioning of letters of credit and to their particular value. The central purpose of the letter-of-credit mechanism would be defeated if courts felt free to examine the merits of underlying contract disputes in order to determine whether letters of credit should be paid.

*Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759, 770 (S.D.N.Y. 1994); *Ace Am. Ins. Co. v. Bank of the Ozarks*, 2012 WL 3240239, at *1 (S.D.N.Y. 2012). The same considerations should apply to preserve a beneficiary's rights to recover on a contractual guaranty. *See Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121-22 (4th Cir. 1998) ("A reading of § 362 restricting a creditor's ability to proceed against its guarantor would eliminate the protection of assured creditors contemplated by the Bankruptcy Code . . . The very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults, the [creditor] will have someone to look to for reimbursement.").

## VI.    The Subordination Agreement Provisions of WFBNA's Deposit Agreement Should Be Enforced Under § 510(a)

35.    Separate and apart from the guaranty, the AFI Deposit Agreement includes a "subordination agreement" enforceable under § 510 of the Bankruptcy Code providing for subordination of AFI's claims against the ResCap Debtors to any claims of WFBNA against the Debtors. Specifically, § 28 of the AFI Deposit Agreement provides:

> Subordination. Any Indebtedness of Subsidiary now or hereafter held by Guarantor is hereby subordinated to the Deposit Service Indebtedness of Subsidiary to WFB. Such Indebtedness of Subsidiary to Guarantor is assigned to

WFB as security for this Guaranty and the Deposit Service Indebtedness and, if WFB requests, shall be collected and received by Guarantor as trustee for WFB and paid over to WFB on account of the Deposit Service Indebtedness of Subsidiary to WFB but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty . . . .

36.    Subordination agreements should be enforced in bankruptcy proceedings.  As the

First Circuit has stated:

Unlike the earlier Bankruptcy Act, the Code deals explicitly with subordination agreements.    Section 510(a) provides that a subordination agreement is enforceable in bankruptcy to the same extent as under "applicable non bankruptcy law."   11 U.S.C. § 510(a). This statutory provision supplants the judge-made doctrine through which the courts previously had dealt with such agreements. Because equitable powers possessed by bankruptcy courts "must and can only be exercised within the confines of the Bankruptcy Code,"  **the enactment of section 510(a) means that the enforcement of subordination provisions is no longer a matter committed to the bankruptcy courts' notions of what may (or may not) be equitable**.

*HSBC Bank USA v. Branch (In re Bank of New England Corp.)*, 364 F.3d 355, 362 (1st Cir.

2004) (internal citations omitted) (emphasis added).  The court also held more generally that:

To cinch matters, the Supreme Court has instructed us that in the absence of specific statutory provisions to the contrary, property interests should not be analyzed differently as a result of a party's involvement in a bankruptcy case.  We take this to mean that bankruptcy courts should only modify the usual state-law compendium of rights and remedies if and to the extent that such modifications are specifically authorized or directed by the Bankruptcy Code.

*Id.* at 363 (internal citations omitted).

37.    In fact, AFI itself has filed pleadings in this bankruptcy case asserting that

intercreditor agreements should be enforced.[12]  AFI wrote:

Instead, Ally has steadfastly insisted, consistent with its legal rights and applicable law, that the terms of that certain intercreditor agreement, dated as of June 6, 2008 . . . be respected by the parties that signed that contract or are bound by its terms and informed the Debtors that it will take all appropriate action to enforce its intercreditor rights in this Court.

---

[12] *Ally Financial, Inc.'s Statement in Support of Debtors' Amended Motion Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtors to Satisfy Certain Secured Claims* [Docket No. 3934] ("AFI Statement").

NY:1586311.21

*See* AFI Statement at ¶ 2 (footnote omitted).   AFI cited *Ion Media Networks*, which it

summarized as follows:

> [*See*] *In re Ion Media Networks*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009)
> (enforcing an intercreditor agreement and holding "plainly worded contracts
> establishing priorities and limiting obstructionist, destabilizing and wasteful
> behavior should be enforced and creditor expectations should appropriately be
> fulfilled.").

> The Intercreditor Agreement is an enforceable contract under section 510(a), and
> the Court will not disturb the bargained-for rights and restrictions governing the
> second lien debtor currently held by Curs.  *See* 11 U.S.C. § 510(a); *In re Ion
> Media Networks, Inc.*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009).

*See* AFI Statement at ¶ 3 n.8.

## VII.    Additional Objections and Reservation of Rights

38.    WFBNA also objects to the other provisions of the Debtors' plan that would

impair WFBNA's rights against AFI under the AFI Deposit Agreement, including the following:

- Any provisions in the Plan that would preempt a ruling of the Court limiting the scope of the release to expressly exclude WFBNA's claims against AFI under the AFI Deposit Agreement.

- The provisions in the plan entitled "Satisfaction and Release of Claims and Equity Interests" that would purport not only to simply discharge creditors' claims against the Debtors, but could arguably extinguish such claims by stating that they are in "complete satisfaction and release of all claims." *See* Plan at IX.J.

- The provisions in the Plan entitled "Injunction" that would purport to prevent creditors from taking any action to collect claims against AFI that are within the scope of the AFI release. *See* Plan at IX.H.

- The provisions in the Plan under the Debtors' "Claims Estimation" that would purport to modify § 502(j) of the Bankruptcy Code by providing that a party would forfeit its rights under § 502(j), absent the filing of a "motion for reconsideration" within 21 days after its claim was estimated.  *See* Plan at III.W.D; *In re MCorp Financial, Inc.*, 137 B.R. 219 (Bankr. S.D. Tex.), *dismissed and remanded*, 139 B.R. 820 (S.D. Tex. 1992) ("If a plan proponent could cut off a claimant's right to a § 502(j) reconsideration, Congress' passage of that provisions would be meaningless, and the result would be in contravention of the legislative history on the estimation procedure . . . .").

NY:1586311.21

- Any provision in the Plan that bases deemed consent to the AFI Release on the basis of the failure to return a ballot (WFBNA has returned its votes as "rejected" for every one of a multitude of ballots that it received).

- To the extent the Debtors have designated any of WFBNA's claims as "unimpaired," WFBNA asks for an express finding that such designation negates any provisions requiring a forced release of its claims against AFI and the other non-debtor entities; "unimpaired" status requires that all of WFBNA's legal rights remain in effect, including its rights against non-debtors.

39.    WFBNA does not concede that the Plan's AFI Release applies to its claims. WFBNA likewise reserves its rights to assert that AFI is barred from asserting any injunction or discharge of any claims arising under the AFI Deposit Agreement against AFI.  WFBNA does not concede that its claims are unsecured and asserts, consistent with its proofs of claim, that its claims are secured.

*[remainder of this page intentionally left blank]*

21

WHEREFORE, WFBNA respectfully requests that the Court deny confirmation of the

Debtors' Plan with respect to the treatment of WFBNA as outlined above.

Dated: October 21, 2013
          New York, New York

                                    **WINSTON & STRAWN LLP**

                                    By: /s/ Nathan P. Lebioda
                                          James Donnell
                                          200 Park Avenue
                                          New York, NY  10166-4193
                                          Telephone:  (212) 294-6700
                                          Facsimile:  (212) 294-4700
                                          jdonnell@winston.com

                                          Nathan P. Lebioda
                                          100 North Tryon Street
                                          Charlotte, NC 28202-1078
                                          Telephone: (704) 350-7700
                                          Facsimile: (704) 350-7800
                                          nlebioda@winston.com

                                          *Attorneys for WFNBA*