| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: November 19, 2013<br>Hearing Time: 10:00 a.m. |

---------------------------------------------------------- x
: 
In re  :  Chapter 11
: 
RESIDENTIAL CAPITAL, LLC,  :  Case No. 12-12020 (MG)
: 
                              Debtors.  :  Jointly Administered
: 
---------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO
PLAN PROPONENTS' JOINT CHAPTER 11 PLAN PROPOSED BY
RESIDENTIAL CAPITAL, LLC, *ET AL.* AND THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS**

TO:    THE HONORABLE MARTIN GLENN,
         UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this objection (the "Objection") to the Joint Chapter 11 Plan proposed by Residential Capital, LLC, *et al.* (the "Debtors") and the Official Committee Of Unsecured Creditors (the "Creditors' Committee" and together with the Debtors, the "Plan Proponents") ECF Doc. No. 4811-2.  In support of the Objection, the United States Trustee respectfully states as follows:

## I.  PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Plan because the Plan Proponents have failed to meet their burden of proof to show that the Plan satisfies Section 1129 of the Bankruptcy Code.  Specifically, the Plan impermissibly provides for non-debtor third-party releases and an exculpation provision that do not comport with Second Circuit law or the Bankruptcy Code because they are overly broad.

The United States Trustee respectfully requests that the Court require that the Plan Proponents narrow the third party releases and injunction provision and/or require compliance with the law of this Circuit and the Bankruptcy Code.

## II.  STATEMENT OF FACTS

**A.    General Background**

1.    On May 14, 2012, the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.  ECF Doc. No. 1.

2.    The Debtors are wholly owned, indirect domestic subsidiaries of Ally Financial, Inc. ("AFI").  Affidavit of James Whitlinger, Chief Financial Officer of Residential Capital, LLC, in Support of Chapter 11 Petitions and First Day Pleading, ECF Doc. No. 6, ¶ 46.

3.    On May 16, 2012, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee appointed the Creditors' Committee in these cases.  ECF Doc. No. 102.

4.    The Debtors currently are operating their business and managing their affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

5.    On July 3, 2012, the Court entered an order approving the United States Trustee's appointment of Arthur J. Gonzalez, Esq. as the chapter 11 examiner (the "Examiner") in these cases.  ECF Doc. No. 674.

6.    The Examiner filed the Examiner's Report on May 13, 2013.  ECF Doc. No. 3697.

7.    By Order entered on December 26, 2012, the Court appointed the Honorable James M. Peck as a mediator ("Mediator") to mediate issues related to the formulation of a plan of reorganization in the cases.[1]  ECF Doc No. 2519.

---

[1] By orders entered on March 5, 2013 and June 5, 2013, the Court extended the Mediator's term up to and including May 31, 2013 and October 31, 2013 respectively.  ECF Doc. Nos. 3101 and 3877.

**B.    The Plan Support Agreement**

8.    On May 23, 2013, the Debtors filed a motion to approve a plan support agreement ("PSA") between (a) the Debtors, (b) AFI and its non-debtor affiliates ("Ally"), (c) the Creditors' Committee and (d) certain Consenting Claimants (the "Consenting Claimants").  The PSA included a Term Sheet, as supplemented, describing the terms of a proposed plan.  ECF Doc. No. 3814.

9.    The Court approved the PSA by order entered on June 26, 2013.  ECF Doc. No. 4098.  The order provided that "nothing herein shall prejudice or waive any party in interest's rights to fully prosecute an objection, or be deemed to constitute any finding of fact or conclusion of law, with respect to: (i) any proposed disclosure statement, (ii) any proposed chapter 11 plan . . . ."  Id. at ¶ 5.

10.    In its Memorandum Opinion dated June 27, 2013 approving the PSA ("Opinion"), the Court stated that "[its] findings in the context of the approval of the [PSA] do not preclude a challenge to a plan that includes the proposed settlements embodied in the [PSA] and term sheets.  Moreover, the findings of fact made in connection with approval of the PSA do not constitute a release of any claims."  Opinion, p. 45; ECF Doc. No. 4102.

**C.    The Plan and Disclosure Statement**

11.    On July 4, 2013, the Plan Proponents filed a Joint Chapter 11 Plan ("Plan") and related Disclosure Statement ("Disclosure Statement"), together with the Motion.  ECF Doc. Nos. 4152, 4153, and 4157.

12.    On August 8, 2013, the United States Trustee objected to approval of the Disclosure Statement, and to the extent applicable, to the Plan.  ECF Doc. No. 4596.

13.     On August 23, 2013, the Court approved the Disclosure Statement as modified and scheduled a confirmation hearing for November 19, 2013.  ECF Doc. Nos. 4809 and 4811.

## III. OBJECTION

**A.     Confirmation Standards and Statutory Framework**

There are two relevant statutes governing chapter 11 plan provisions and confirmation. Section 1123(b)(6) allows plan proponents to include terms that are "not inconsistent with the applicable provisions" of the Code.  11 U.S.C. § 1123(b)(6).  Section 1129 of the Bankruptcy Code authorizes the bankruptcy court to confirm a plan only when it "complies with the applicable provisions of the Code."  11 U.S.C. § 1129.  The plan proponent bears the burden of establishing compliance with section 1129.  In re Charter Commc'ns, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (citing Heartland Fed. Savs. & Loan, Ass'n v. Briscoe Enters. (In re Briscoe Enters.), 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that "[t]he combination of legislative silence, Supreme Court holdings, and the structure of the Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown")); In re Worldcom, Inc., No. 02-13533 (AJG), 2003 WL 23861928, at *46 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing Briscoe).

Section 1129(a) of the Bankruptcy Code contains 16 standards that must be met for the Court to confirm a plan.  11 U.S.C. § 1129(a).  Two of those sixteen requirements are relevant here.  Section 1129(a)(1) requires that the Court find that the plan "complies with the applicable provisions of" the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  Section 1129(a)(4) requires that the Court exercise substantive control over fees and costs related to the Chapter 11 case:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

4

11 U.S.C. §1129(a)(4). Section 1129(a)(4) is designed to "insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan." See In re TCI 2 Holdings, LLC, 428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) (internal quotation omitted) ("While a strong argument might be made that payments that are not made to fiduciaries and that do not deplete the bankruptcy estate need not be subject to court approval, this is simply not the decision that Congress has chosen to make.").

The Bankruptcy Code also provides that Chapters 1, 3, and 5 of the Bankruptcy Code apply in chapter 11 cases, subject to an exception not applicable here. 11 U.S.C. § 103(a). One "applicable" provision is section 503. Section 503(b)(3)(D) allows a party to recover administrative expenses for "making a substantial contribution" in a chapter 11 case. Section 503(b)(3)(F) allows a member of an official creditors' committee to recover expenses "incurred in the performance of the duties of such committee." Finally, section 503(b)(4) allows a party to recover attorneys' fees when an "expense is allowable under subparagraph (A), (B), (C), (D), or (E)" — but not subparagraph (F) — of section 503(b)(3).

For the reasons set forth below, the Plan Proponents have not met their burden of proof showing that the Plan satisfies the confirmation standards of section 1129 of the Bankruptcy Code.

5

B.  **The Exculpation and Third Party Releases Contained in the Plan Do Not Satisfy Section 1129(a)(1) and (a)(3)**

The Plan contains an exculpation provision proposing to release non-debtor third-parties from various claims and liabilities and enjoin claims by and against non-debtor third-parties.[2] Plan Art. IX(C) to (H). According to the Disclosure Statement, Ally Bank's payment of $2.1 billion is conditioned upon the releases of liability described in the Plan and the existence of a negotiated settlement. Disclosure Statement, Art. II(B) at 23. These are certainly large and complex cases, but are not the only cases in which payments are made in connection with a global settlement. That alone should not justify authorizing such broad releases of liability. If anything, the circumstances of these cases should warrant even greater Court scrutiny of proposed third-party releases, given the existence of such a large numbers of potential claims by third-party borrowers and other claimants.

In order for the Court to approve the exculpation and third party releases under the Plan, the Plan Proponents must demonstrate that such provisions are not inconsistent with the Second Circuit's decisions in In re Johns-Manville Corp., 517 F.3d 52 (2d Cir. 2008) ("Manville II"), vacated & remanded on other grounds, 557 U.S. 137 (2009), aff'g in part & rev'g in part, 600 F.3d 135 (2d Cir. 2010) ("Manville III") and Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005).

---

[2] The Third Party Release applies to Ally Released Parties, who are defined under the Plan as Ally, and each of Ally's and the Debtors' respective members, shareholders, partners, non-Debtor affiliates, and Representatives, including Cap Re of Vermont, LLC and its current and former members, officers, and directors and each of Ally's successors and assigns. The Ally Released Parties release the Creditors' Committee, the Debtors, and the Consenting Claimants and their respective successors and assigns, members, partners, advisors, and Representatives. Plan at 3,¶ 20; p.26, ¶ 236; pp. 99-100, § IX(D) and (F).

In <u>Metromedia</u>, the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." <u>Metromedia</u>, 416 F. 3d at 141. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] . . .
>
> Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

<u>Id.</u> at 142.

The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan." <u>Id</u>. at 141 (quoting <u>SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)</u>, 960 F.2d 285, 292 (2d Cir. 1992)). The appellate court cautioned, however, that a non-debtor third-party release is not considered to be adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out. <u>Metromedia</u>, 416 F.3d at 143. Rather, "[a] non-debtor third-party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." <u>Id</u>.

Subsequent cases further clarify the <u>Metromedia</u> requirements. For example, in <u>In re DBSD North America, Inc.</u>, the Court stated:

> As the Second Circuit's decision in <u>Metromedia</u> and my earlier decision in <u>Adelphia</u> provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter. They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund

7

rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims.

In re DBSD N. Am., Inc., 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis in original) (footnotes omitted); In re Motors Liquidation Co., 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, with appropriate consent or under circumstances that can be regarded as unique, some of which the Circuit listed. But where those circumstances haven't been shown, third-party releases can't be found to be appropriate").[3]

Before a court considers whether the proponent of a plan has demonstrated the "truly unusual circumstances" mandated by Metromedia, it must first determine whether it has subject matter jurisdiction to approve the releases or injunctions provided for, by, and against non-debtor third-parties. See Manville II; accord In re Dreier LLP, 429 B.R. 112, 132 (Bankr. S.D.N.Y. 2010); In re Metcalfe & Mansfield Alternative Invs., 421 B.R.685, 695 (Bankr. S.D.N.Y. 2010). In Manville II, the Second Circuit held that "a bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the res of the bankruptcy estate." Manville II,

---

[3] Other examples include: (i) Adelphia, 368 B.R. at 268–69 (holding that three categories of non-debtor third-party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements, (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); (ii) In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006) (framing inquiry as "whether a significant non-debtor financial contribution plus other unusual factors render a situation so "unique" that the non-debtor third-party releases are appropriate"). Id. at 55; (iii) In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the equity committee had raised, but then abandoned, an objection to the validity of the non-debtor third-party releases, and the court found that the releases in that case were acceptable because all of the affected creditors had consented by affirmatively checking a box on the ballot indicating their willingness to grant the releases); (iii) In re Spiegel, Inc., No. 03-11540 (BRL), 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (plan's non-debtor third-party releases and injunctions were critical components of the settlement that played a "vital part in the plan" and "were necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); and (iv) In re XO Commc'ns, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (non-debtor third-party releases were permissible where the non-debtors provided significant consideration, the non-debtors were integral to the plan, and the non-debtors' interests aligned with those of the debtors with regard to the claims).

517 F.3d at 66; see also Dreier, 429 BR. at 133 (because the court lacks jurisdiction to enjoin claims that do not affect property of the estate or the administration of the estate, non-debtor third-party releases must be limited to claims that are derivative of the debtors).

Because this release seeks to include the release of claims by non-debtor third-parties against non-debtor third-parties, the Second Circuit's rulings in Manville II and Metromedia govern the Court's determination as to whether this release may be approved.  It is now settled in the Second Circuit that the Court does not have subject matter jurisdiction to approve this provision because it seeks to release "direct" (non-derivative) claims that non-debtor third-parties may have against other non-debtor third parties.  See Manville III, 600 F.3d at 153 (clarifying on remand that the bankruptcy court does not have jurisdiction to enjoin claims against non-debtor insurers that are not derivative of the debtor).

The Plan Proponents have also failed to explain why the exculpation provision, which extends to third-parties who are not estate fiduciaries who served during the chapter 11 cases (such as the estate professionals and the Committee and its members) is appropriate.  See In re Wash. Mutual, Inc., 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (limiting exculpation clause to estate fiduciaries).  Further, the acts for which these parties are being exculpated are vague.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) require that the Debtors narrow the third party releases and injunction provision and/or require compliance with the law of this Circuit and the Bankruptcy Code; and (ii) grant such other relief as is just.

Dated: New York, New York
October 21, 2013

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By:    */s/ Brian S. Masumoto*
Brian S. Masumoto
Eric Small
Michael T. Driscoll
Trial Attorneys
Office of the United States Trustee
201 Varick Street, Suite 1006
New York, NY 10014
Tel. No. (212) 510-0500