**HEARING DATE AND TIME: November 19, 2013, at 10:00 a.m. (Eastern)**
**OBJECTION DEADLINE: October 21, 2013, at 7:00 p.m. (Eastern)**

Susan N.K. Gummow (IL 6258070)
*Admitted Pro Hac Vice*
John Eggum (IL 6296314)
*Admitted Pro Hac Vice*
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400
Chicago, IL 60601
Telephone:    (312) 863-5000
Facsimile:    (312) 863-5099
Email:        sgummow@fgppr.com
              jeggum@fgppr.com


Matthew Fernandez Konigsberg (MK8011)
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
120 Broadway, 11th Fl.
New York, NY 10271
Telephone:    (212) 257-7114
Facsimile:    (212) 257-7199
Email:        mkonigsberg@fgppr.com


*Counsel for Certain Insurers Under General Motors*
*Combined Specialty Insurance Program 12/15/00 - 12/15/03*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                  :      Chapter 11
                                        :
Residential Capital, LLC, et al.,       :      Case No. 12-12020 (MG)
                                        :
                    Debtors.            :      Jointly Administered
                                        :
                                        :
------------------------------------------------------------ x


**OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO CONFIRMATION
OF THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC,
ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND
RESERVATION OF RIGHTS, BY CERTAIN INSURERS UNDER GENERAL MOTORS
COMBINED SPECIALTY INSURANCE PROGRAM 12/15/00 - 12/15/03**

# TABLE OF CONTENTS

I.    Preliminary Statement ......................................................................................... 2

II.   Factual Background ............................................................................................ 5

   A.    The Bankruptcy Case ................................................................................. 5

   B.    The Insurance Policies Issued by the Certain GM Insurers ............................ 6

   C.    Provisions of the Joint Chapter 11 Plan Relating to Insurance ...................... 6

III.  Argument ......................................................................................................... 9

   A.    The Plan impermissibly attempts to prejudice the rights of the Certain GM Insurers..... 9

   B.    The Plan's attempt to confer exclusive jurisdiction over certain insurance-related matters is an impermissible modification of the rights of the Certain GM Insurers and lacks any foundation in the Bankruptcy Code ................................................................ 16

   C.    The Plan's attempt to assign the Debtors' interest in the Policies violates the anti-assignment provisions of the Policies ...................................................... 20

   D.    Providing for Insurance Neutrality requires de minimus changes to the Plan .............. 23

IV.   Reservation of Rights.......................................................................................... 24

V.    Conclusion ...................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

In re Aylesbury Inn, Inc., 121 B.R. 675, 678 (Bankr. N.D.N.Y. 1990)...........................................18

In re Bethlehem Steel Corp., 390 B.R. 784, 793 (Bankr. S.D.N.Y. 2008) ....................................17

Butner v. United States, 440 U.S. 48, 55 (1979) ...........................................................................14

In re Canal Corporation, Case No. 08-36642 (Bankr. E.D. Va.), ECF No. 1324, PDF p. 41 (Feb. 15, 2011) ......................................................................................................................................16

Carle Place Plaza Corp. v. Excelsior Ins. Co., 144 A.D.2d 517, 534 N.Y.S.2d 397, 398 (1988) .20

In re Chemtura Corp., Case No. 09-11233 (Bankr. S.D.N.Y.), ECF No. 4409-1, PDF pp. 62-64 (Nov. 3, 2010) ..............................................................................................................................15

Citibank, N.A. v. Tele/Res., Inc., 724 F.2d 266, 269 (2d Cir. 1983)............................................14

In re Combustion Eng'g, 391 F.3d at 209.....................................................................................13

In re Congoleum Corp., 03-51524, 2005 WL 712540 (Bankr. D.N.J. Mar. 24, 2005) ...........10, 11

In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr. D. Del. 2001) ...................................22

In re Coupon Clearing Serv., Inc., 113 F.3d 1091, 1099 (9th Cir. 1997) .....................................14

Duncan v. Walker, 533 U.S. 167, 173 (2001)................................................................................22

In re Eastman Kodak Company, Case No. 12-10202 (Bankr. S.D.N.Y.), ECF No. 4966-1, PDF pp. 85-86 (Aug. 23, 2013)..................................................................................................................15

In re Enron Corp., 364 B.R. 489, 511 (Bankr. S.D.N.Y. 2007).....................................................16

Ernst & Young LLP v. Baker O'Neal Holdings, Inc., 304 F.3d 753, 756 (7th Cir. 2002)............17

Fallick v. Kehr, 369 F.2d 899, 904 (2d Cir. 1966) .......................................................................17

In re Fed.-Mogul Global Inc., 684 F.3d 355, 374 (3d Cir. 2012) .................................................21

In re Filene's Basement, L.L.C., Case No. 11-13511 (Bankr. D. Del.), ECF No. 1640-1, PDF p. 39 (July 13, 2012) .......................................................................................................................15

In re Firearms Imp. & Exp. Corp., 131 B.R. 1009, 1013 (Bankr. S.D. Fla. 1991).......................21

In re General Growth Properties, Inc., Case No. 09-11977 (Bankr. S.D.N.Y.), ECF No. 3660, PDF p. 29 (Dec. 1, 2009) .............................................................................................................15

In re Global Aviation Holdings Inc., Case No. 12-40783 (Bankr. E.D.N.Y.), ECF No. 672, PDF p. 43 (Oct. 19, 2012) ......................................................................................................................15

In re Great Atlantic & Pacific Tea Company, Case No. 10-24549 (Bankr. S.D.N.Y.), ECF No. 3417, PDF p. 48 (Feb. 17, 2012)...................................................................................................15

In re Grubb & Ellis Company, Case No. 12-10685 (Bankr. S.D.N.Y.), ECF No. 2279, PDF pp. 12-13 (Mar. 6, 2013) ....................................................................................................................15

Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) ............................................................18

In re Hagerstown Fiber Ltd. P'ship, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002)........................17

In re Hawker Beechcraft, Inc., Case No. 12-11873 (Bankr. S.D.N.Y.), ECF No. 1255, PDF p. 49 (Feb. 1, 2013)............................................................................................................15

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1153 (3d Cir. 1989) .. ................................................................................................................10, 17, 18, 21

In re Innkeepers USA Trust, Case No. 10-13800 (Bankr. S.D.N.Y.), ECF No. 1799, PDF p. 68 (June 29, 2011)........................................................................................................15

Kontrick v. Ryan, 540 U.S. 443, 452 (2004) ............................................................18

In re Leslie Fay Companies, Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997)............................23

Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 748 (2012) ......................................18

Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984) ..................................14

In re Motors Liquidation Company, Case No. 09-50026 (Bankr. S.D.N.Y.), ECF No. 9836, PDF pp. 65-68 (Mar. 29, 2011)............................................................................14, 15, 20

In re Park Ave. Radiologists, P.C., 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011)..........................18

In re Pittsburgh Corning Corp., 453 B.R. 570, 584 (Bankr. W.D. Penn. 2011) ......................9, 10

PPG Industr. Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) ......................16

In re S.W. Bach & Co., 425 B.R. 78, 89 (Bankr. S.D.N.Y. 2010) ........................................17, 18

In re Solar Trust of America, LLC, Case No. 12-11136 (Bankr. D. Del.), ECF No. 876, PDF pp. 19-20 (Mar. 7, 2013)................................................................................................15

In re Sportsman's Warehouse, Inc., Case No. 09-10990 (Bankr. D. Del.), ECF No. 411, PDF p. 28 (June 27, 2009)......................................................................................................16

In re Stewart Foods, Inc., 64 F.3d 141, 145 (4th Cir. 1995)................................................10

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 164 (2008) ..........................18

In re Synagro Technologies, Inc., Case No. 13-11041 (Bankr. D. Del.), ECF No. 794-1, PDF pp. 34-35 (Aug. 20, 2013)................................................................................................15

In re Terrestar Corporation, Case No. 11-10612 (Bankr. S.D.N.Y.) ECF No. 513, PDF p. 39 (June 27, 2012)........................................................................................................15

In re The PMI Group, Inc., Case No. 11-13730 (Bankr. D. Del.), ECF No. 882, PDF p. 19 (June 3, 2013) ..............................................................................................................15

In re Thorpe Insulation Co., 677 F.3d 869, 885 (9th Cir. 2012)..........................................9, 11, 13

Touchet v. Guidry, 550 So. 2d 308, 313 (La. Ct. App. 1989) ......................................20

In re TOUSA, Inc., Case No. 08-10928 (Bankr. S.D. Fla.), ECF No. 9442, PDF pp. 74-75 (Aug. 6, 2013) ..............................................................................................................15

In re Trident Microsystems, Inc., Case No. 12-10069 (Bankr. D. Del.), ECF No. 1163, PDF pp. 42-43 (Dec. 10, 2012) ................................................................................................15

U.S. Lines, Inc. v. American Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999) ....................................................................17, 18

In re Visteon Corporation, Case No. 09-11786 (Bankr. D. Del.), ECF No. 4099-1, PDF. p. 62 (Aug. 31, 2010) ...........................................................................................................................16

## FEDERAL STATUTES

9 U.S.C. § 2 ....................................................................................................................................16

9 U.S.C. § 201 *et seq*.....................................................................................................................17

11 U.S.C. § 363(*l*) ..........................................................................................................................22

11 U.S.C. § 365(c) ..........................................................................................................................21

11 U.S.C. § 552(b)(1) .....................................................................................................................22

11 U.S.C. § 524(g) ..........................................................................................................................21

11 U.S.C. § 541 ...............................................................................................................................21

11 U.S.C. § 541(c)(1) ......................................................................................................................22

11 U.S.C. § 1123(d) ........................................................................................................................22

11 U.S.C. § 1124(2) ........................................................................................................................22

11 U.S.C. § 1129(a)(1), (a)(2)...........................................................................................................9

11 U.S.C. § 1129(a)(3).....................................................................................................................23

11 U.S.C. § 1141 .............................................................................................................................18

11 U.S.C. § 1142 .............................................................................................................................18

11 U.S.C. § 1322(e) ........................................................................................................................22

28 U.S.C. § 1334(b) ........................................................................................................................18

## OTHER AUTHORITIES

21 U.S.T. 2517, 330 U.N.T.S. 38.....................................................................................................17

H.R. Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S. CODE CONG. & AD. NEWS 5787..........14

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
In re:                                             :        Chapter 11
                                                   :
Residential Capital, LLC, et al.,                  :        Case No. 12-12020 (MG)
                                                   :
                        Debtors.                   :        Jointly Administered
                                                   :
                                                   :
-------------------------------------------------------------- x

**OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO CONFIRMATION**
**OF THE JOINT CHAPTER 11 PLAN PROPOSED BY RESIDENTIAL CAPITAL, LLC,**
**ET AL. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND**
**RESERVATION OF RIGHTS, BY CERTAIN INSURERS UNDER GENERAL MOTORS**
**COMBINED SPECIALTY INSURANCE PROGRAM 12/15/00 - 12/15/03**

TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:

Those Certain Underwriting Members at Lloyd's, London and Those Companies Whose

Names are Severally Subscribed to Policy No. FD0001142 and Those Certain Underwriting

Members at Lloyd's, London and Those Companies Whose Names are Severally Subscribed to

Policy No. FD0001144, Twin City Fire Insurance Company, Continental Casualty Company,

Clarendon National Insurance Company, Swiss Re International S.E. (formerly known as [f/k/a]

SR International Business Insurance Company Ltd.), St. Paul Mercury Insurance Company, and

Axcelera Specialty Risk as managing general agent of North American Specialty Insurance

Company (collectively, the "**Certain Insurers Under General Motors Combined Specialty**

**Insurance Program 12/15/00 - 12/15/03**" or the "**Certain GM Insurers**"), by and through their

undersigned counsel, respectfully submit this objection and memorandum of law, and reservation

of rights, in opposition to the *Joint Chapter 11 Plan Proposed By Residential Capital, LLC, et al.*

*and the Official Committee of Unsecured Creditors* [Dkt. No. 4153, and as corrected for

1

solicitation, Dkt. No. 4819] (the "**Joint Chapter 11 Plan**" or the "**Plan**").[1]  In support thereof,

the Certain GM Insurers state as follows.

## I.    PRELIMINARY STATEMENT[2]

The Joint Chapter 11 Plan is not confirmable because it attempts to prejudice the rights of

the Certain GM Insurers.  Courts have recognized that chapter 11 plans must be "insurance

neutral," meaning that the pre-bankruptcy status quo must be maintained with respect to

insurance-related matters.  Whatever rights the Certain GM Insurers had pre-bankruptcy must be

retained and pass unaffected through the bankruptcy process.

To facilitate compliance with the Code's insurance neutrality requirement, the Certain

GM Insurers proposed an insurance neutral provision, substantially in the following form:

> Nothing contained in this Plan, in the Disclosure Statement, in the
> Liquidating Trust Agreement, or in the Borrower Claims Trust Agreement
> (including addendums, exhibits, schedules, or supplements to the Plan,
> Disclosure Statement, Liquidating Trust Agreement, or Borrower Claims
> Trust Agreement, and including any provision that purports to be
> preemptory or supervening), shall in any way operate to, or have the effect
> of, impairing, altering, supplementing, changing, expanding, decreasing,
> or modifying: (A) the rights of any of the Debtors' insurers, including but
> not limited to those insurers issuing policies referred to by the Debtors as
> the "General Motors Combined Specialty Insurance Program 12/15/00 –
> 12/15/03," and which insurers are elsewhere identified as the Certain GM
> Insurers (the "Certain GM Insurers" and together with all other entities
> that are providing or have provided insurance to the Debtors or any
> affiliate or predecessor of the Debtors, the "Insurers"); or (B) any rights or
> obligations of the Debtors arising out of and/or under any insurance policy
> issued to the Debtors or under which the Debtors have sought or may seek
> coverage (the "Policies").  For all issues of insurance coverage or
> otherwise, the provisions, terms, conditions, and limitations of the Policies
> shall control.

The Debtors have declined to incorporate this language.  Rather than attempt to resolve

---

[1] All chapter, section and rule references, unless otherwise noted, are to the Bankruptcy Code, 11 U.S.C.
§§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Capitalized terms used but not defined in this preliminary statement shall have the meanings ascribed to
them below or the Joint Chapter 11 Plan, as applicable.

the Certain GM Insurers' objections by incorporating generally accepted insurance neutral language into the Plan, the Debtors have opted instead to try to use the Joint Chapter 11 Plan to prejudice the rights of the Certain GM Insurers. In so doing, they have proposed an unconfirmable plan.

The Plan fails to demonstrate insurance neutrality in several ways:

- The Plan attempts to modify and limit the defenses available to insurers;
- The Plan attempts to preclude arbitration in violation of the Federal Arbitration Act and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, and divest courts with concurrent jurisdiction of the power to hear insurance-related matters; and
- The Plan attempts to assign the Debtors' interest in the Policies issued by the Certain GM Insurers to multiple parties without the consent of the Certain GM Insurers, in violation of contractual anti-assignment provisions and applicable law.

As other courts have noted, a plan that gives with one hand and takes away with the other is not insurance neutral. Here, the Plan includes a defined term – "Insurance Defenses" – which purports to preserve some defenses that may be generally available to the Certain GM Insurers, while excluding others. The most sweeping example of the Debtors' explicit attempt to prejudice the rights of the Certain GM Insurers is the exclusion of "defenses based upon reasonableness." The broad foreclosure of entire classes or categories of defenses has no foundation in the Bankruptcy Code and is completely improper. No provision of the Code permits the Debtors to eliminate rights that are otherwise available under the Policies and applicable law. As long as the Plan attempts to "define away" the rights of the Certain GM Insurers, it is not confirmable.

ResCap's Plan is also unconfirmable because it purports to confer <u>exclusive</u> jurisdiction upon the Bankruptcy Court to "hear and determine rights to proceeds under the GM Policies, including consideration of any Insurance Defenses." The Plan also attempts to confer exclusive jurisdiction for insurance coverage disputes and other insurance-related matters. Purporting to

3

impose exclusive jurisdiction in this Court is not only improper under applicable law, it is also indisputably an impermissible modification of the Certain GM Insurers' pre-petition rights. There are provisions in the GM Policies which provide for the arbitration of various disputes between the Certain GM Insurers and the Assureds under the Policies. The exclusive jurisdiction provisions interfere with those arbitration rights, in violation of the Federal Arbitration Act and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Moreover, the exclusive jurisdiction provisions lack any foundation in the Bankruptcy Code. The Code contemplates concurrent jurisdiction over non-core matters which are merely related to a bankruptcy case. By providing for exclusive jurisdiction over insurance-related matters, the Plan attempts to divest non-bankruptcy courts of jurisdiction over matters which are indisputably non-core and merely related to the bankruptcy case. No provision of the Bankruptcy Code or otherwise applicable law permits this Court to affect the jurisdiction of another court. The Plan is unconfirmable to the extent it interferes with the Certain GM Insurers' right to arbitrate, and the Certain GM Insurers' right to litigate before courts that have concurrent jurisdiction.

Also violative of the insurance neutrality requirement are the multiple assignments provided for under the Plan. The Policies contain anti-assignment provisions which prohibit the assignment of interest in the Policies. These provisions serve the important purpose of preventing the Certain GM Insurers from having to litigate the rights of the Assured(s) under the Policies with persons that are strangers to the Policies. This Circuit has not determined that any provision of the Bankruptcy Code permits a debtor to modify or override such anti-assignment provisions, and decisions of courts which purport to find such authority in the Code should, respectfully, be departed from.

Insurance policies are contracts, and no provision of the Bankruptcy Code provides for

4

the modification of contractual provisions.  The ResCap Debtors' attempt to use the Code to eliminate available defenses, vitiate the agreement to arbitrate and divest other courts of their jurisdiction, and assign rights under the GM Policies, is impermissible.  The Plan is not confirmable as filed, and accordingly, the Certain GM Insurers respectfully request that confirmation of the Joint Chapter 11 Plan be denied.

## II.    FACTUAL BACKGROUND

### A.  The Bankruptcy Case

1.      On May 14, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of Bankruptcy Code.

2.      On March 23, 2013, the Debtors filed their Motion to approve a Plan Support Agreement ("**PSA**") among the Debtors, the Creditors' Committee, Ally Financial Inc., and numerous creditors referred to as the "Consenting Claimants" [Dkt. No. 3814].

3.      The Certain GM Insurers filed a Response and Reservation of Rights [Dkt. No. 4015] to the Motion to Approve the PSA, which raised numerous issues with the chapter 11 plan contemplated by the PSA.  Additionally, in their Response and Reservation of Rights, the Certain GM Insurers proposed an insurance neutral provision for incorporation into the plan contemplated by the PSA.

4.      In reply, the Debtors stated simply that they "will ensure that the as-yet-to-be-filed Plan complies with all requirements pursuant to the Bankruptcy Code."  See Dkt. No. 4066-1, at PDF p. 37.

5.      The Court subsequently approved the PSA.  See Dkt. No. 4098.

6.      On July 3, 2013, the Debtors filed the Joint Chapter 11 Plan.  Certain provisions of the Plan are discussed in detail, below.

### B. *The Insurance Policies Issued by the Certain GM Insurers*

7.      The Certain GM Insurers issued insurance policies to General Motors Corporation for the policy period commencing December 15, 2000 and ending December 15, 2003 (the "**Certain GM Policies**" or the "**Policies**"), under which certain of the Debtors have asserted rights as Assureds as a result of being subsidiaries of General Motors Corporation at the time that the Policies were issued.  The Policies are among the insurance policies referenced in the Plan as the "GM Policies" and the "General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03."  <u>See</u> Plan (Dkt. No. 4819-2, PDF p. 225).

8.      The Policies contain anti-assignment provisions which prohibit assignment absent consent.  Specifically, each of the Policies provides, either directly or by incorporation of an underlying insurance policy, that: "Assignment of interest under this Policy shall not bind Underwriters unless their consent is endorsed hereon."

9.      The Certain GM Insurers have not provided their consent to the assignment of interest under any of the Certain GM Policies, and do not consent to the assignment of interest that is contemplated by the Joint Chapter 11 Plan.

### C. *Provisions of the Joint Chapter 11 Plan Relating to Insurance*

10.     The Plan contains provisions relating to insurance in Articles I, IV, VII, and XII. The relevant provisions are reproduced below.

\* \* \*

### Article I
### Defined Terms, Rules Of Construction, Computation Of Time, And Governing Law

#### A. Defined Terms
\* \* \*

"<u>GM Insurance Rights</u>" means any and all of the Debtors' rights, titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, causes of action, and choses in action under, for, or related to the GM Policies

with respect to a particular item of loss under the GM Policies, including the rights (1) to recover insurance proceeds for an item of loss covered under the GM Policies and (2) to recover from the insurers that issued the GM Policies for breach of contract or breach of other duty or obligation owed by such insurer under the GM Policies, as applicable, including the duty to settle, together with any extra contractual or tort claim arising therefrom, including bad faith, breach of implied covenant of good faith and fair dealing, fraud, or violation of any statutory or common law duty owed by the insurer under the GM Policies, as applicable, and all with respect to a particular item of loss under the GM Policies.

\* \* \*

"<u>GM Policies</u>" means the General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03, with the policy numbers as set forth in the Plan Supplement.

\* \* \*

"<u>Insurance Defenses</u>" means any legal, equitable or contractual defense that any insurer may have under applicable non-bankruptcy law to an assertion that such insurer is obligated to defend, pay, indemnify or reimburse, or provide insurance coverage for, any item of loss or liability under any insurance policy, **except for any defense** (a) that is based on the assertion that the transfer of the insurance rights is invalid, unenforceable or otherwise breaches the terms of any applicable policy or any other agreement with that insurer, (b) that has been released, waived, altered or otherwise resolved, in full or in part, in any other agreement with that insurer, (c) to the extent affected by applications of principles of res judicata, collateral estoppel, claim preclusion or issue preclusion, (d) adjudicated by the Bankruptcy Court, (e) premised upon the commencement of the Chapter 11 Cases under section 301 of the Bankruptcy Code, or (f) that is based on reasonableness [emphasis supplied].

\* \* \*

## Article IV
## Implementation of the Plan

\* \* \*

### G. Settlement of Claims of Kessler Class Claimants

\* \* \*

*Transfer of GM Insurance Rights*. Subject to entry of the Kessler Settlement Approval Orders, on the Effective Date, the Debtors shall convey, transfer, and assign the GM Insurance Rights under the GM Policies in accordance with the Kessler Settlement Agreement and the Kessler Settlement Approval Orders, to (i) the Kessler Settlement Class with respect to indemnity for the Allowed Kessler Claim, and (ii) except to the extent that any such GM Insurance Rights have been transferred by the Debtors to other creditors on or before the Effective Date, the Liquidating Trust with respect to any other GM Insurance Rights. For the avoidance of doubt, the (i) rights of the Kessler Settlement Class in and to the GM Insurance Rights and proceeds thereof, and (ii) the rights of any other creditor who has received from the Debtors an assignment of GM Insurance Rights prior to the Effective Date, shall not be transferred to the Liquidating Trust and shall not constitute Available Assets.

\* \* \*

## Article VII
## Provisions Governing Issuance of Units and Other Distributions
\* \* \*
### K. Claims Paid or Payable by Third Parties
\* \* \*
### 2. Claims Payable by Insurers

Except as otherwise provided herein, including with respect to the rights of (i) the Kessler Settlement Class and (ii) other creditors who have entered into a settlement agreement with the Debtors prior to the Effective Date, in and to the GM Insurance Rights as provided herein and in the Kessler Settlement Agreement, and the Ally Contract Claims (a) no distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, excluding the GM Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy and (b) to the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' payment, such Claim may be expunged without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, provided, that if a Debtor or the Liquidating Trust believes a holder of an Allowed Claim has recourse to an insurance policy and intends to withhold a distribution pursuant to this Article VII.K, the Debtor, prior to the Effective Date, or Liquidating Trust, following the Effective Date, shall provide written notice to such holder as to what the Debtor or Liquidating Trust believes to be the nature and scope of applicable insurance coverage. **Except as otherwise provided in the Plan**, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Liquidating Trust or any Entity may hold against any other Entity, including insurers under any policies of insurance, **nor shall anything contained herein constitute or be deemed a waiver by such insurers of any Insurance Defenses**. [emphasis supplied].

\* \* \*

## Article XII
## Retention of Jurisdiction
\* \* \*
Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain **exclusive jurisdiction** over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction . . .

(e) to hear and determine rights to proceeds under the GM Policies, including consideration of any Insurance Defenses; [and]

(f) to hear and determine the rights and obligations relating to insurance claims against the Debtors, including coverage disputes, and insurance settlements regarding insurance. [emphasis supplied].

* * *

11.     Additionally, on October 11, 2013, the Plan Proponents filed 20 exhibits comprising a Plan Supplement to the Joint Chapter 11 Plan (the "**Plan Supplement**"). <u>See</u> Dkt. No. 5342.  Attached as Exhibit 2 to the Plan Supplement is The ResCap Liquidating Trust Liquidating Trust Agreement (the "**LT Trust Agreement**"). <u>See id.</u>  The LT Trust Agreement and other documents comprising the Plan Supplement are discussed below.

## III.    <u>ARGUMENT</u>

### A.  *The Plan impermissibly attempts to prejudice the rights of the Certain GM Insurers*

12.     The Plan cannot be confirmed if it fails to comply with all applicable provisions of the Bankruptcy Code, or if the proponents of the Plan do not comply with all applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1), (a)(2).  It is well-settled that a Plan is not confirmable if it is not "insurance neutral."  <u>In re Thorpe Insulation Co.</u>, 677 F.3d 869, 885 (9th Cir. 2012); <u>In re Pittsburgh Corning Corp.</u>, 453 B.R. 570, 584 (Bankr. W.D. Penn. 2011). Courts vary in their explanations of what constitutes "insurance neutrality."  As described by one Court of Appeals, "[a] plan is not insurance neutral when it may have a substantial economic impact on insurers."  <u>In re Thorpe Insulation Co.</u>, 677 F.3d at 885.  Other courts remarking on insurance neutrality have stated that a Plan is only considered to be insurance neutral if "it neither increases an insurer's pre-petition obligations nor impairs its pre-petition contractual rights under the subject insurance policies."  <u>In re Pittsburgh Corning Corp.</u>, 453 B.R. at 584.

13.     The insurance neutrality requirement is a corollary to the well-established rule

that the Bankruptcy Code does not permit a debtor to modify, alter, or amend its pre-petition

contracts. In re Stewart Foods, Inc., 64 F.3d 141, 145 (4th Cir. 1995); Hays & Co. v. Merrill

Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1153 (3d Cir. 1989) (collecting cases

enforcing the contractual obligation to arbitrate notwithstanding the filing of bankruptcy).

14.     Here, the Joint Chapter 11 Plan is not insurance neutral because it contains

provisions which modify and limit the pre-petition rights under the subject insurance policies.

The Plan includes a defined term – "Insurance Defenses" which purports to preserve some

defenses that may be generally available to the Certain GM Insurers, while excluding others.

The Plan excludes any defense:

> (a)     that is based on the assertion that the transfer of the insurance rights is
> invalid, unenforceable or otherwise breaches the terms of any
> applicable policy or any other agreement with that insurer;
> (b)     that has been released, waived, altered or otherwise resolved, in full or
> in part, in any other agreement with that insurer;
> (c)     to the extent affected by applications of principles of res judicata,
> collateral estoppel, claim preclusion or issue preclusion;
> (d)     adjudicated by the Bankruptcy Court;
> (e)     premised upon the commencement of the Chapter 11 Cases under
> section 301 of the Bankruptcy Code; or
> (f)     that is based on reasonableness.

15.     These "exclusions" from the universe of defenses that may otherwise be available

to the Certain GM Insurers under the Policies or pursuant to applicable law are completely

contrary to established law.  Other courts have ruled that using definitions to preserve some

defenses but not others is improper.  See In re Congoleum Corp., 03-51524, 2005 WL 712540

(Bankr. D.N.J. Mar. 24, 2005) ("[T]he court need go no further than the definition of 'asbestos

insurer coverage defenses' to find that the Fourth Amended Plan is not 'insurance neutral.' . . . It

is true that the definition purports to preserve all of the Insurers defenses at law or equity under

non-bankruptcy law, but what the definition gives with one hand it takes away with the other. . . .

10

The definition contains . . . [various] exception[s].”); see also In re Thorpe Insulation Co., 677 F.3d 869, 886 (9th Cir. 2012) (“Here, the express exceptions to Appellants’ defenses signal that the plan is not insurance neutral.”).  The use of “exceptions” which take away defenses that the Certain GM Insurers would otherwise have is fatal to the confirmability of the Plan.  See id.

16.    Although all of the exceptions included in the Plan are impermissible, the exclusion for “defenses based upon reasonableness” highlights that the Joint Chapter 11 Plan is fundamentally unfair to the Certain GM Insurers.[3]  The universe of potential situations where this provision could be cited to prejudice the Certain GM Insurers is incredibly broad.  Among other things, the provision could be argued to bar the Certain GM Insurers from arguing that the fees of defense counsel in a particular matter were not reasonable, and therefore not payable or reimbursable under the Policies.  The provision could also be argued to bar the Certain GM Insurers from asserting that their own conduct was reasonable, precluding some type of adverse inference from being made against them.  Given the ubiquity of the use and application of term “reasonable” in litigation matters, the prejudice to the Certain GM Insurers is severe and substantial.  Additionally, the Plan’s “exceptions” appear to modify the defenses available to the Certain GM Insurers with respect to both debtor and non-debtor Assureds, which further demonstrates the highly improper nature of the “exceptions” and the overall lack of insurance neutrality.[4]

17.    The “Insurance Defenses” definition makes it clear that the Debtors are affirmatively seeking to prejudice and limit the Certain GM Insurers’ rights rather than preserve

---

[3] The other sub-exclusions are also objectionable.  Issues with respect to Exclusion (a), relating to the assignment of Insurance Rights, are addressed in subsection III.(c) of this Brief.  Exclusions (b) through (d) are prejudicial because they are vague and overbroad.

[4] To the extent that the “exceptions” give rise to disparate treatment of debtor and non-debtor Assureds under the Policies, this likewise highlights the impropriety of the exceptions and the overall lack of insurance neutrality.

them.[5]  This definition should be stricken from the Plan.

18.    Additionally, the Plan's actual incorporation of the "Insurance Defenses" definition undercuts the partial preservation of rights, rendering the limited protection it provides illusory.  The operative provision, contained in Article VII of the Plan, states: "**Except as otherwise provided in the Plan**, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or the Liquidating Trust or any Entity may hold against any other Entity, including insurers under any policies of insurance, **nor shall anything contained herein constitute or be deemed a waiver by such insurers of any Insurance Defenses**." [emphasis supplied].  The prefatory language "Except as otherwise provided by the Plan" contradicts (and effectively neutralizes) whatever benefit the term "Insurance Defenses" may have.  The prefatory language permits an argument that some other provision of the Plan waives or limits the already limited Insurance Defenses that are preserved.

19.    Additionally, by stating: ". . . nor shall anything <u>contained herein</u> constitute or be deemed a waiver . . . ," the provisions of Article VII are limited to the Plan itself.  The Debtors omit any reference to the Plan Supplement or other documents filed in this case.  To the extent that documents other than the Plan prejudice the rights of Certain GM Insurers, Article VII does nothing to protect and preserve the Certain GM Insurers' rights (whether arising under the Policies, applicable law, or at equity).

20.    The insurance neutral language that is routinely incorporated into confirmed plans

---

[5] The Debtors cannot reasonably contend that they are not seeking to prejudice the Certain GM Insurers' rights, given that their own counsel's Fee Application discloses that: "Applicant advised ResCap on how best to structure a potential settlement with the CBNV/GNBT plaintiffs to maximize the likelihood of an insurance recovery. . . .  **By structuring the settlement and transfer of insurance rights to the CBNV/GNBT claimants under these policies in a way designed to minimize potential insurance company defenses to coverage**, these efforts provided value to the estate . . . ."  <u>See</u> Dkt. No. 4533, PDF p. 13 (First Interim Application of Perkins Coie LLP as Special Insurance Coverage Counsel to the Debtors) (emphasis supplied).

generally begins with the prefatory language: "Nothing contained in . . . " or "Notwithstanding any other provision . . . ." The Debtors' omission of this customary language (sometimes called "super-preemptory" language")[6] is further indicative of an explicit intent to prejudice the Certain GM Insurers' rights under the Policies and pursuant to applicable law (or at equity).[7] The Debtors may not use the Plan to strip away rights that would otherwise be available to the Certain GM Insurers.

21.    The documents comprising the Plan Supplement are similarly lacking in insurance neutrality. The Plan purports to assign any rights that the Debtors have under the Certain GM Policies to the Liquidating Trust. If this were permissible (which it is not without the consent of the Certain GM Insurers, as discussed below at Section III.C.), the LT Trust Agreement's provisions prejudice the Certain GM Insurers. The LT Trust Agreement provides that the Liquidating Trust is the successor-in-interest to the Debtors with respect to the GM Insurance Rights, "[s]ubject to the terms of the Confirmation Order." See Dkt. 5342-1 p. 16/70. The Confirmation Order carve-out is improper – either the Liquidating Trust is the successor-in-interest to the Debtors or it is not. As a related matter, the Liquidating Trust may not take any rights that the Debtors have under the Policies without assuming the corresponding obligations.

---

[6] In re Thorpe Insulation Co., 677 F.3d 869, 886 (9th Cir. 2012) (citing In re Combustion Eng'g, 391 F.3d at 209). Of course, as the Thorpe court noted, "Even if there is a super-preemptory provision, 'care must be taken to ensure that, in fact, the insurer's rights are completely unaffected.'" Id.

[7] Not only does the Plan lack super-preemptory language, the Plan does not even preempt certain of the Plan Supplement documents. For example, the LT Trust Agreement provides in Section 12.6 that the LT Trust Agreement is preemptory and/or supervening with regard to the Plan. See Dkt. 5342-1, p. 57/70 ("[T]o the extent that the terms of any of the other Plan Documents are inconsistent with the terms set forth in this Liquidating Trust Agreement with respect to the Liquidating Trust, then the terms of this Liquidating Trust Agreement shall govern."). This is improper. The preemptory effects of Orders of this Court, and of the Plan Documents, should follow the format set out in the Private Securities Claims Trust. See Dkt. 5342-4 p. 17/22 ("[T]o the extent that there is any conflict between the provisions of this PSC Trust Agreement, the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this PSC Trust Agreement.").

<u>Citibank, N.A. v. Tele/Res., Inc.</u>, 724 F.2d 266, 269 (2d Cir. 1983) ("An assignment does not modify the terms of the underlying contract. . . . Insofar as an assignment touches on the obligations of the other party to the underlying contract, the assignee simply moves into the shoes of the assignor").  Section 10.1 of the LT Trust Agreement could be interpreted as an attempt to permit the Liquidating Trust to evade obligations arising under the Policies.  <u>See</u> Dkt. 5342-1 p. 54/70 ("Nothing contained in the Plan Documents shall be deemed to be an assumption by the Delaware Trustee, any Liquidating Trustee, the Liquidating Trust Management or any Liquidating Trust Agent of any of the liabilities, obligations or duties of the Debtors or shall be deemed to be or contain a covenant or agreement by any of them to assume or accept any such liability, obligation or duty.").  The Debtors cannot use the Plan or any aspect of the bankruptcy process to alter or amend the rights and obligations arising under (or alleged to arise under) the Policies.  <u>See</u> <u>In re Coupon Clearing Serv., Inc.</u>, 113 F.3d 1091, 1099 (9th Cir. 1997) ("[T]he estate ha[s] no greater rights in property than those held by the debtor prior to bankruptcy.") (citing <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979)); <u>Moody v. Amoco Oil Co.</u>, 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less. . . . Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.'" (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S. CODE CONG. & AD. NEWS 5787)).  Like the Plan, the Plan Supplement demonstrates an explicit attempt to modify and prejudice the rights of the Certain GM Insurers.

22.    Ultimately, the Debtors' attempt to use the Plan to prejudice the Certain GM Insurers' rights is indefensible.  The incorporation of insurance neutral provisions in chapter 11 plans is routine, appropriate, and necessary, as demonstrated by the numerous confirmed plans

which incorporate such provisions, including that of General Motors Corporation (General

Motors Corporation is the First Named Assured under the Policies).  See, e.g., In re Motors

Liquidation Company, Case No. 09-50026 (Bankr. S.D.N.Y.), ECF No. 9941, PDF pp.  65-68

(Mar. 29, 2011) (provision in Confirmation Order focusing on asbestos-related liabilities).  See

also In re Eastman Kodak Company, Case No. 12-10202 (Bankr. S.D.N.Y.), ECF No. 4966-1,

PDF pp. 85-86 (Aug. 23, 2013); In re Grubb & Ellis Company, Case No. 12-10685 (Bankr.

S.D.N.Y.), ECF No. 2279, PDF pp. 12-13 (Mar. 6, 2013) [provision in Confirmation Order]; In

re Hawker Beechcraft, Inc., Case No. 12-11873 (Bankr. S.D.N.Y.), ECF No. 1255, PDF p. 49

(Feb. 1, 2013); In re Terrestar Corporation, Case No. 11-10612 (Bankr. S.D.N.Y.) ECF No. 513,

PDF p. 39 (June 27, 2012); In re Great Atlantic & Pacific Tea Company, Case No. 10-24549

(Bankr. S.D.N.Y.), ECF No. 3417, PDF p. 48 (Feb. 17, 2012); In re Innkeepers USA Trust, Case

No. 10-13800 (Bankr. S.D.N.Y.), ECF No. 1799, PDF p. 68 (June 29, 2011); In re Chemtura

Corp., Case No. 09-11233 (Bankr. S.D.N.Y.), ECF No. 4409-1, PDF pp. 62-64 (Nov. 3, 2010);

In re General Growth Properties, Inc., Case No. 09-11977 (Bankr. S.D.N.Y.), ECF No. 3660,

PDF p. 29 (Dec. 1, 2009); In re Synagro Technologies, Inc., Case No. 13-11041 (Bankr. D.

Del.), ECF No. 794-1, PDF pp. 34-35 (Aug. 20, 2013); In re TOUSA, Inc., Case No. 08-10928

(Bankr. S.D. Fla.), ECF No. 9442, PDF pp. 74-75 (Aug. 6, 2013); In re The PMI Group, Inc.,

Case No. 11-13730 (Bankr. D. Del.), ECF No. 882, PDF p. 19 (June 3, 2013); In re Solar Trust

of America, LLC, Case No. 12-11136 (Bankr. D. Del.), ECF No. 876, PDF pp. 19-20 (Mar. 7,

2013) [provision in Confirmation Order]; In re Trident Microsystems, Inc., Case No. 12-10069

(Bankr. D. Del.), ECF No. 1163, PDF pp. 42-43 (Dec. 10, 2012); In re Global Aviation Holdings

Inc., Case No. 12-40783 (Bankr. E.D.N.Y.), ECF No. 672, PDF p. 43 (Oct. 19, 2012); In re

Filene's Basement, L.L.C., Case No. 11-13511 (Bankr. D. Del.), ECF No. 1640-1, PDF p. 39

15

(July 13, 2012); In re Canal Corporation, Case No. 08-36642 (Bankr. E.D. Va.), ECF No. 1324,

PDF p. 41 (Feb. 15, 2011); In re Visteon Corporation, Case No. 09-11786 (Bankr. D. Del.), ECF

No. 4099-1, PDF. p. 62 (Aug. 31, 2010); In re Sportsman's Warehouse, Inc., Case No. 09-10990

(Bankr. D. Del.), ECF No. 411, PDF p. 28 (June 27, 2009).  For ease of reference, the relevant

provisions from these cases are excerpted in ***Exhibit A***.

23.    For these reasons, the Plan must be amended to remove the Insurance Defenses

definition, and the Plan must  specifically provide for appropriate insurance neutral language.  As

filed, the Plan is unconfirmable for failure to preserve the pre-bankruptcy status quo with respect

to the rights and obligations of the Certain GM Insurers.

### B. The Plan's attempt to confer <u>exclusive</u> jurisdiction over certain insurance-related matters is an impermissible modification of the rights of the Certain GM Insurers and lacks any foundation in the Bankruptcy Code

24.    There are arbitration provisions in the Certain GM Policies.  There is a strong

federal policy, embodied in the Federal Arbitration Act, to recognize and favor the enforcement

of agreements to arbitrate.  9 U.S.C. § 2; see PPG Industr. Inc. v. Webster Auto Parts, Inc., 128

F.3d 103, 107 (2d Cir. 1997) ("Federal policy favors arbitration as an alternate means of dispute

resolution."); see also In re Enron Corp., 364 B.R. 489, 511 (Bankr. S.D.N.Y. 2007).

Additionally, certain of the Policies constitute agreements to arbitrate with foreign entities, and

accordingly the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards (the "**New York Convention**"), an international treaty to which the United States is a

signatory, is applicable.  See 21 U.S.T. 2517, 330 U.N.T.S. 38; see also 9 U.S.C. § 201 et seq.

(implementing the Convention).   Under the New York Convention, agreements to arbitrate

involving international commerce are enforceable.  See id.

25.    Arbitration clauses are enforceable notwithstanding the bankruptcy of a debtor-

insured.  See Fallick v. Kehr, 369 F.2d 899, 904 (2d Cir. 1966); see also In re Hagerstown Fiber

Ltd. P'ship, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002) (citing In Hays & Co. v. Merrill Lynch

Pierce Fenner & Smith, Inc., 885 F.2d 1149 (3d Cir.1989)); In re Bethlehem Steel Corp., 390

B.R. 784, 793 (Bankr. S.D.N.Y. 2008).    As this Court has previously recognized, the

enforcement of arbitration provisions is particularly appropriate when the matters which are

subject to arbitration are non-core matters and the arbitration process will have no affect on the

administration of the bankruptcy estate.  See U.S. Lines, Inc. v. American Steamship Owners

Mut. Prot. and Indem. Ass'n, Inc. (In re U.S. Lines, Inc.), 197 F.3d 631, 640 (2d Cir. 1999); see

also In re S.W. Bach & Co., 425 B.R. 78, 89 (Bankr. S.D.N.Y. 2010) ("If a claim is 'non-core,'

the court generally lacks discretion and must refer the claim to arbitration.").    Additionally, as

indicated by the U.S. Lines decision, concerns of international comity, respect for the capacities

of foreign and transnational tribunals, and sensitivity to the need of the international commercial

system for predictability in the resolution of disputes require enforcement of an agreement to

arbitrate non-core matters which are subject to arbitration under the New York Convention.  See

In re U.S. Lines, Inc., 197 F.3d at 639.

        26.    Here, by attempting to provide for exclusive jurisdiction in the Bankruptcy Court

over matters which are within the ambit of the arbitration provisions of the Policies, the Plan

proponents are attempting to modify the contractual rights of the Certain GM Insurers.  See Ernst

& Young LLP v. Baker O'Neal Holdings, Inc., 304 F.3d 753, 756 (7th Cir. 2002).  That is

impermissible.  As with any contract, the Debtors may not modify the terms and provisions of

the Policies.  See Hays, 885 F.2d at 1153; see also S.W. Bach & Co., 425 B.R. at 86.

        27.    The attempt to confer exclusive jurisdiction is also impermissible to the extent it

modifies the right of the Certain GM Insurers to litigate matters impacting or relating to the

17

Policies in any appropriate forum, subject to generally applicable jurisdictional rules.  See In re

U.S. Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999).  As the U.S. Lines court noted, especially

with regard to non-core matters, Congress anticipated that concurrent jurisdiction would exist

and that adjudication of various matters would occur in different courts.  Id. ("[B]y not granting

the bankruptcy court exclusive jurisdiction over non-core matters, 'it is clear that in 1984

Congress did not envision all bankruptcy related matters being adjudicated in a single

bankruptcy court.'"); see also 28 U.S.C. § 1334(b) ("the district courts shall have original but not

exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

cases under title 11.").

      28.    The statutes which permit this Court to retain jurisdiction – 11 U.S.C. §§ 1141

and 1142 – do not authorize the divestiture of the concurrent jurisdiction of other courts.  See In

re Park Ave. Radiologists, P.C., 450 B.R. 461, 467 (Bankr. S.D.N.Y. 2011) (discussing Section

1141 and post-confirmation jurisdiction, generally); see also In re Aylesbury Inn, Inc., 121 B.R.

675, 678 (Bankr. N.D.N.Y. 1990) (discussing Section 1142); Mims v. Arrow Fin. Servs., LLC,

132 S. Ct. 740, 748 (2012) (discussing non-bankruptcy law, noting "'[D]ivestment of district

court jurisdiction' should be found no more readily than 'divestmen[t] of state court

jurisdiction.'").  Only Congress can create or divest a court of jurisdiction (subject to

Constitutional limitations).  Kontrick v. Ryan, 540 U.S. 443, 452 (2004); see Gunn v. Minton,

133 S. Ct. 1059, 1064 (2013) (discussing the language used when Congress demonstrates an

intent to divest particular courts of jurisdiction); see also Stoneridge Inv. Partners, LLC v.

Scientific-Atlanta, 552 U.S. 148, 164 (2008) ("[T]he jurisdiction of the federal courts is carefully

guarded against expansion by judicial interpretation.") (citations and quotations omitted).  The

Plan's attempt to confer exclusive jurisdiction for the Bankruptcy Court to "hear and determine

rights to proceeds under the GM Policies, including consideration of any Insurance Defenses,"
and to confer exclusive jurisdiction for "coverage disputes" and other insurance-related matters
has no foundation in the Code and is otherwise without a legal basis.  It cannot be permitted.

29.    It is further objectionable that the Debtors seek to divest other courts of
jurisdiction with respect to creditors and parties in interest to the bankruptcy, while reserving to
themselves the right to litigate in any jurisdiction of their choosing.  The LT Trust Agreement
provides:

> 12.2 Jurisdiction. Subject to the proviso below, the parties agree that the
> Bankruptcy Court shall have exclusive jurisdiction over the Liquidating Trust,
> including, without limitation, the administration and activities of the Liquidating
> Trust, provided, however, that notwithstanding the foregoing or anything to the
> contrary set forth in the Plan, **the Liquidating Trust Board shall have power
> and authority to bring (or cause to be brought) any action in any court of
> competent jurisdiction to prosecute any Liquidating Trust Causes of Action**.

Dkt. 5342-1 p. 56/70 [emphasis supplied].  The Borrower Claims Trust Agreement contains a
similar provision permitting it to litigate in any court of competent jurisdiction.  See Dkt. 5342-3
p. 43/51.

30.    These provisions eliminate the "exclusive" jurisdiction provision in the Plan, but
only as to the Liquidating Trust and the Borrowers Claims Trust.  Apart from being legally
impossible for the Debtors to divest other courts of jurisdiction, it is inherently inequitable for
the Debtors to attempt to restrict the rights of creditors and other parties in interest while
retaining the right to litigate in any court of competent jurisdiction for themselves and their
successors.  As with the Plan itself, the Liquidating Trust Agreement and Borrower Claims Trust
Agreement should provide for no more than concurrent jurisdiction.

31.    For these reasons, the Plan must be amended to provide for no more than
concurrent post-confirmation jurisdiction over matters which affect or relate to the Certain GM

Insurers and the Policies issued by the Certain GM Insurers.  The LT Trust Agreement and the

Borrower Claims Trust Agreement must similarly be amended to provide for no more than

concurrent jurisdiction over such matters.  As filed, the Plan is unconfirmable.

### C.  *The Plan's attempt to assign the Debtors' interest in the Policies violates the anti-assignment provisions of the Policies*

32.    The Joint Chapter 11 Plan contemplates assigning the "GM Insurance Rights" –

essentially any rights that the Debtors have or may have under the Policies issued by the Certain

GM Insurers – to multiple parties.  Such assignments violate the anti-assignment provisions of

the Policies.

33.    Specifically, the Policies provide that: "Assignment of interest under this Policy

shall not bind Underwriters unless their consent is endorsed hereon."  This provision is in accord

with applicable non-bankruptcy law which prohibits the assignment of insurance policies without

an insurer's consent.  See, e.g., Touchet v. Guidry, 550 So. 2d 308, 313 (La. Ct. App. 1989)

([S]ince insurance is a personal contract between the insurer and the named insured and on

behalf of others specifically provided for, coverage terminates when the contract is assigned or

transferred without the consent, permission, and approval of both contracting parties."); see also

Carle Place Plaza Corp. v. Excelsior Ins. Co., 144 A.D.2d 517, 534 N.Y.S.2d 397, 398 (1988).

34.    Here, the Policies are not property of the estate.  The Policies were issued to

General Motors Corporation, and were accordingly administered in connection with the General

Motors Corporation bankruptcy.[8]   The interest of the Estates in the Policies is limited to

whatever rights certain of the Debtors have or assert they have as Assureds.  11 U.S.C. § 541.

35.    No provision of the Code provides for the assignment of the Debtors' rights to

---

[8] In re Motors Liquidation Company, Case Number 09-50026 (Bankr. S.D.N.Y.).

third parties under these circumstances.[9]  The Policies, which are non-executory[10] because the policy periods expired many years prior to the petition date, contain explicit anti-assignment clauses.  A debtor-in-possession is bound the provisions of such contracts.  See Hays, 885 F.2d at 1153.

36.    The Certain GM Insurers are aware that the Third Circuit, in its Federal-Mogul Global decision, found authority in Section 1123(a)(5)(B) of the Code to assign insurance policies to a Section 524(g) trust without the consent of an insurer.[11]  In re Fed.-Mogul Global Inc., 684 F.3d 355, 374 (3d Cir. 2012).  Specifically, the Third Circuit found that the Bankruptcy Code preempts anti-assignment clauses in insurance policies because it allows the transfer of the debtor's property "notwithstanding any otherwise applicable nonbankruptcy law."  Id.

37.    The Certain GM Insurers respectfully submit that interpreting the phrase "applicable nonbankruptcy law" as an inclusive reference to contractual provisions in private contracts puts more weight on the phrase than it is capable of bearing.  In drafting the Bankruptcy Code, Congress routinely distinguished between contractual restrictions/provisions and "applicable law" or "applicable nonbankruptcy law."  This is demonstrated by the plain language of Section 1123 itself, and numerous other sections of the Code.  See 11 U.S.C. § 1123(d) ("[T]he underlying agreement and applicable nonbankruptcy law."); 11 U.S.C. §

---

[9] It appears that the Debtors contemplated that assignment was impermissible, as evidenced by Section 2.5(b) of the LT Trust Agreement, which provides for an alternative construct for the LT Trust to deal with situations where non-bankruptcy restrictions on transferability prohibit an assignment to the Liquidating Trust.  See Dkt. 5342-1 p. 18/70.

[10] In re Firearms Imp. & Exp. Corp., 131 B.R. 1009, 1013 (Bankr. S.D. Fla. 1991) ("[I]f an insurance contract is expired at the time of the filing of the debtor's petition in bankruptcy . . . the contract is not executory.").  If the Policies were executory, Section 365(c) of the Code would prevent assignment based on applicable non-bankruptcy law, which enforces restrictions on assignments.  11 U.S.C. § 365(c).

[11] The Federal-Mogul decision is also distinguishable because it was considering an assignment to a trust created under Section 524(g) of the Bankruptcy Code.  In re Fed.-Mogul Global Inc., 684 F.3d at 357.  Here, the assignments contemplated by the Debtors under the Plan are not being made pursuant to 11 U.S.C. § 524(g).

541(c)(1) ("[N]otwithstanding <u>any provision in an agreement</u>, transfer instrument, or applicable nonbankruptcy law."); 11 U.S.C. § 1124(2) ("[N]otwithstanding <u>any contractual provision</u> or applicable law.); 11 U.S.C. § 363(*l*) ("[N]otwithstanding <u>any provision in a contract</u>, a lease, or applicable law."); 11 U.S.C. § 552(b)(1) ("[T]o the extent provided <u>by such security agreement</u> and by applicable nonbankruptcy law."); 11 U.S.C. § 1322(e) ("<u>[T]he underlying agreement</u> and applicable nonbankruptcy law.").  If Congress had wanted to permit debtors to assign non-executory contracts that prohibit assignment by their terms, Congress would have done so explicitly.  See <u>Duncan v. Walker</u>, 533 U.S. 167, 173 (2001) ("[I]t is well settled that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations and internal quotations omitted).

38.     Those Debtors that are Assureds under the Policies owe non-delegable duties to the Certain GM Insurers, such as the duty to cooperate in the investigation and defense of claims, the duty to not admit liability, and the duty to otherwise provide all information, cooperation, and assistance as requested of them.  Whomever becomes the holder of rights that the Debtors have (or allege they have) as "Assureds" under the Policies must correspondingly undertake the duties of Assureds under the Policies.  The Certain GM Insurers reserved the right to consent to any assignment to ensure that the person or entity undertaking such duties is a person or entity that the Insurers agree to and accept.  It is fundamentally unfair to the Certain GM Insurers to confirm a Plan which assigns the Debtors' interest in the Policies to persons whose interests are adverse to the Certain GM Insurers, or to which the Certain GM Insurers do not otherwise consent.  The Court may not confirm a Plan which is fundamentally unfair in its treatment of parties in interest.  11 U.S.C. § 1129(a)(3); <u>see</u> <u>In re Coram Healthcare Corp.</u>, 271 B.R. 228, 234

(Bankr. D. Del. 2001) ("In evaluating the totality of circumstances surrounding a plan a court has 'considerable judicial discretion' in finding good faith, with the most important feature being an inquiry into the 'fundamental fairness' of the plan.'"); <u>In re Leslie Fay Companies, Inc.</u>, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997).

39.    For these reasons, the assignment of the "GM Insurance Rights" pursuant to the Joint Chapter 11 Plan is impermissible, and the Court must deny confirmation of the Plan so long as the Plan purports to provide for such transfer.

### D. *Providing for Insurance Neutrality requires de minimus changes to the Plan*

40.    Although the Plan is unconfirmable as filed, the defects addressed herein can be remedied with de minimus changes, as follows:

(i)     The "Insurance Defenses" definition in Article I should be stricken;

(ii)    The last sentence of Article VI.K.2. should be removed and replaced with a separate section setting out the "Insurance Neutrality" provision set out below;

(iii)   The word "exclusive" should be stricken from Article XII of the Plan, the LT Trust Agreement, and the Borrower Claims Trust Agreement, thereby making post-confirmation jurisdiction concurrent; and

(iv)    The assignments should be stricken from the Plan.

41.    As demonstrated by the Insurance Neutral language used in the numerous cases cited above, the following provision should be incorporated in the Debtor's Plan:

Nothing contained in this Plan, in the Disclosure Statement, in the Liquidating Trust Agreement, or in the Borrower Claims Trust Agreement (including addendums, exhibits, schedules, or supplements to the Plan, Disclosure Statement, Liquidating Trust Agreement, or Borrower Claims Trust Agreement, and including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying: (A) the rights of any of the Debtors' insurers, including but not limited to those insurers issuing policies referred to by the Debtors as the "General Motors Combined Specialty Insurance Program 12/15/00 – 12/15/03," and which insurers are elsewhere identified as the Certain GM

23

Insurers (the "Certain GM Insurers" and together with all other entities that are providing or have provided insurance to the Debtors or any affiliate or predecessor of the Debtors, the "Insurers"); or (B) any rights or obligations of the Debtors arising out of and/or under any insurance policy issued to the Debtors or under which the Debtors have sought or may seek coverage (the "Policies"). For all issues of insurance coverage or otherwise, the provisions, terms, conditions, and limitations of the Policies shall control.

42.    The changes set forth above will accomplish the necessary and appropriate objectives of maintaining the pre-bankruptcy status quo with regard to the Certain GM Insurers' substantive and procedural rights. The foregoing changes will ensure that the Joint Chapter 11 Plan will neither increase the Insurers' pre-petition obligations nor impair their pre-petition contractual rights under the Policies.

## IV.    <u>RESERVATION OF RIGHTS</u>

43.    The Certain GM Insurers expressly reserve all of their rights under their Policies and under applicable law and at equity, including without limitation the right to deny or limit coverage for any claim, the right to arbitrate in accordance with the terms of their Policies, and the right to assert any and all defenses, limitations and/or exclusions applicable with respect to any claim which is alleged to implicate their Policies.

44.    The Certain GM Insurers further reserve all of their rights to object to any claim for coverage under the Policies and/or any claim for payment under any settlement, judgment, or fee/expense payment or reimbursement, and to compel arbitration or seek declaratory and/or injunctive relief to enforce their rights under the Policies or applicable law or at equity.

45.    Nothing in this Objection is or shall be construed as an acknowledgment that any of the Policies covers or otherwise applies to any claims, losses or damages on account of any claim which is alleged to implicate the Policies. For all issues of coverage or otherwise, the terms, conditions, and limitations of the Policies control. The Certain GM Insurers further

24

reserve the right to have any non-core matter adjudicated by the United States District Court or in any other appropriate non-bankruptcy forum, and do not consent to entry of any final order by the bankruptcy court for any matter for which their consent is required.

46.    The Certain GM Insurers want simply to ensure that the Plan is, in fact, insurance neutral, and that it otherwise complies with the requirements of the Bankruptcy Code.

## V.    CONCLUSION

Confirmation can only be granted if the Joint Chapter 11 Plan is insurance neutral, meaning that it does not impair, supplement, change, expand, decrease, modify, or otherwise prejudice any of the terms, provisions, conditions, limitations, rights, or obligations arising under or in connection with any of the Certain GM Policies, or pursuant to applicable law or at equity. The Plan proposed for confirmation is not insurance neutral, and for the reasons set forth herein, confirmation of the Plan must be denied.

WHEREFORE, for the foregoing reasons, the Certain GM Insurers respectfully request the Court grant the relief requested herein.

Respectfully Submitted,

Dated:  October 21, 2013
        New York, New York

By:    _/s/ _Susan N.K. Gummow_____
       Susan N.K. Gummow (IL 6258070)
       *Admitted Pro Hac Vice*
       John Eggum (IL 6296314)
       *Admitted Pro Hac Vice*
       FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
       222 N. LaSalle Street, Suite 1400
       Chicago, IL  60601
       Telephone:      (312) 863-5000

       *Counsel for Certain Insurers Under General Motors Combined Specialty Insurance Program 12/15/00 - 12/15/03*

25

## CERTIFICATE OF SERVICE

On October 21, 2013, the undersigned certifies that on this date, she caused a copy of the appended document to be served upon all parties identified on the Monthly Service List As Of October 1, 2013 [Docket No. 5257] (as defined in the Order Under Bankruptcy Code Sections 102(1), 105(a) and 105(d), Bankruptcy Rules 1015(c), 2002(m) and 9007 and Local Bankruptcy Rule 2002-2 Establishing Certain Notice, Case Management and Administrative Procedures entered by this Court on May 23, 2012 [Docket No. 141]), in accordance with the terms of the Order docketed as Docket No. 141.

By:                                      */s/ Susan N.K. Gummow*_____
                                         Susan N.K. Gummow
                                         FORAN GLENNON PALANDECH PONZI & RUDLOFF PC