**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| EASTMAN KODAK COMPANY, *et al.*,[1] | Case No. 12-10202 (ALG) |
| Debtors. | (Jointly Administered) |

### FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF EASTMAN KODAK COMPANY AND ITS DEBTOR AFFILIATES

Andrew G. Dietderich
Brian D. Glueckstein
Michael H. Torkin
John J. Jerome                                      Pauline K. Morgan
SULLIVAN & CROMWELL LLP              YOUNG CONAWAY STARGATT & TAYLOR, LLP
125 Broad Street                                    1270 Avenue of the Americas
New York, New York 10004                     New York, New York 10020
Telephone:  (212) 558-4000                     Telephone:  (212) 332-8840

Counsel to the Debtors and
Debtors in Possession

Dated: August 21, 2013

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Eastman Kodak Company (7150); Creo Manufacturing America LLC (4412); Eastman Kodak International Capital Company, Inc. (2341); Far East Development Ltd. (2300); FPC Inc. (9183); Kodak (Near East), Inc. (7936); Kodak Americas, Ltd. (6256); Kodak Aviation Leasing LLC (5224); Kodak Imaging Network, Inc. (4107); Kodak Philippines, Ltd. (7862); Kodak Portuguesa Limited (9171); Kodak Realty, Inc. (2045); Laser-Pacific Media Corporation (4617); NPEC Inc. (5677); Pakon, Inc. (3462); and Qualex Inc. (6019).  The location of the Debtors' corporate headquarters is 343 State Street, Rochester, NY 14650.

15.10.  <u>Termination of Fee Examiner's Appointment</u>

Upon the resolution of all applications filed pursuant to sections 330 and 331 of the Bankruptcy Code by professionals subject to the Professional Fee Order, the Fee Examiner's appointment shall terminate, and the Fee Examiner shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

15.11.  <u>Closing of Chapter 11 Cases</u>

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

15.12.  <u>Conflicts</u>

Except as set forth in the Plan, to the extent that any provisions of the Amended Disclosure Statement, the Plan Supplement, or any order of the Bankruptcy Court (other than the Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

15.13.  <u>Further Assurances</u>

The Debtors, Reorganized Debtors, all Holders of Claims receiving Distributions hereunder, and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

15.14.  <u>No Stay of Confirmation Order</u>

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

15.15.  <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Amended Disclosure Statement or papers filed with the Bankruptcy Court prior to the Confirmation Date.

15.16.  <u>Insurance Neutrality</u>

Notwithstanding anything to the contrary in the Amended Disclosure Statement and related documents, Plan, any other Plan document, the Confirmation Order or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening or grants an injunction or release) (collectively, the "*Plan-Related Documents*"), the

- 80 -

Identified Insurance Policies and Agreements shall continue in effect after the Effective Date
pursuant to their respective terms and conditions, and nothing in the Plan-Related Documents
shall relieve any of the Reorganized Debtors from performing any of the Debtors' obligations
under the Identified Insurance Policies and Agreements including the provision or maintenance
of any collateral and security required by the Identified Insurance Policies and Agreements, and
payment of any claim for deductibles, self-insured retentions, retrospective premiums, or any
other premium or similar obligations of any kind, any claim for contribution, indemnification, or
subrogation, or any setoff, recoupment, or counterclaim arising out of or relating to any of the
Identified Insurance Policies and Agreements, nor shall anything in the Plan-Related Documents
relieve any insurer from performing its obligations under the Identified Insurance Policies and
Agreements, in each case regardless of whether such obligations arise prior to or after the
Effective Date.  To the extent that any of the Identified Insurance Policies and Agreements are
considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan,
the Plan shall constitute a motion to assume or ratify such Identified Insurance Policies and
Agreements.  On and after the Effective Date, the Identified Insurance Policies and Agreements
will remain valid and enforceable in accordance with their terms, shall not be impaired by the
Plan or Confirmation Order, and the Reorganized Debtors and the respective counterparty to
each Identified Insurance Policy and Agreement will perform their respective obligations to one
another, if any, under such Identified Insurance Policy and Agreement.

### 15.17. Post-Effective Date Service

After the Effective Date, the Debtors are authorized to limit the list of Entities
receiving documents pursuant to Bankruptcy Rule 2002 to those Entities that have filed renewed
requests for service.

### 15.18. Notices

All notices, requests, pleadings and demands to or upon the Debtors to be
effective shall be in writing (including by facsimile transmission) and, unless otherwise
expressly provided herein, shall be deemed to have been duly given or made when actually
delivered or, in the case of notice by facsimile transmission, when received and telephonically
confirmed, addressed as follows:

> (a)    If to the Debtors, to:
>
> Eastman Kodak Company
> 343 State Street
> Rochester, NY 14650
> Attn:   Patrick M. Sheller

SC1:3410109.24

12-13020-mg   Doc 5413-1   Filed 10/21/18   Entered 10/21/13 15:58:47   Exhibit — A —
Pg 1 of 45

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
*In re*:                                                        : Chapter 11
                                                                :
GRUBB & ELLIS COMPANY, *et al.*,               : Case No. 12-10685 (MG)
                                                                :
                                                                :
        Debtors.[1]                                         : Jointly Administered
                                                                :
----------------------------------------------------------- x

## ORDER CONFIRMING JOINT LIQUIDATING PLAN FOR
## GRUBB & ELLIS COMPANY AND ITS AFFILIATED DEBTORS

Grubb & Ellis Company and certain of its affiliates, as debtors and debtors

in possession (collectively, the "Debtors") and the statutory unsecured creditors'

committee in the Debtors' chapter 11 cases (the "Committee," and together with the

Debtors, the "Plan Proponents"), having filed their Joint Liquidating Plan for Grubb &

Ellis Company and its Affiliated Debtors, dated November 14, 2012 (the "Plan") [Docket

No. 1966] in accordance with section 1121 of title 11 of the United States Code (the

"Bankruptcy Code"), and related Disclosure Statement (the "Disclosure Statement")[2]

[Docket No. 1976];  and the Bankruptcy Court by its Order dated January 10, 2013 (the

"Disclosure Statement Order") [Docket No. 2074] having: (a) approved the Disclosure

---

[1]  The Debtors in these chapter 11 cases are:  Las Vegas Commercial Brokerage, LLC; Grubb & Ellis
    Securities, Inc.; Grubb & Ellis of Nevada, Inc.; Grubb & Ellis of Michigan, Inc.; Grubb & Ellis of
    Arizona, Inc.; Grubb & Ellis New York, Inc.; Grubb & Ellis Management Services, Inc.; Grubb & Ellis
    Management Services Michigan, Inc.; Grubb & Ellis Landauer Valuation Advisory Services, LLC;
    Grubb & Ellis Healthcare REIT II Advisor, LLC; Grubb & Ellis Equity Advisors, LLC; Grubb & Ellis
    Consulting Services Company; Grubb & Ellis Company; Grubb & Ellis Capital Corporation; Grubb &
    Ellis Apartment REIT Advisor, LLC; Grubb & Ellis Affiliates, Inc.; and GBE Alesco Corp.

[2]  All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them
    in the Plan and/or the Disclosure Statement Order.

1210685130306000000000003

allowance of compensation for services rendered before the Effective Date, no later than

45 days after the Effective Date;  and (ii) shall be paid in full in such amounts as are

allowed by the Bankruptcy Court in cash, unless a less favorable treatment is agreed to

by the applicable Professional.

48.     A hearing on applications for final allowance of professional fees

shall be held at a date and time to be scheduled by the Plan Administrator with the

Court.  A notice of hearing shall be served upon the United States Trustee, counsel for

the Committee and anyone who filed a notice of appearance.  Any professional fees and

expenses incurred by professionals (for the Debtors, the Plan Administrator and the

Committee) or the Plan Administrator subsequent to the Effective Date may be paid by

the Plan Administrator in the ordinary course and subject to the terms of the Plan, as

and when due, without application to the Bankruptcy Court.

49.     The Debtors or the Plan Administrator, as the case may be, shall

pay all U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the

Court enters a final decree closing the Debtors' cases.

50.     As of the Effective Date, pursuant to Article II(B)(4) of the Plan and

in all events without any action on the part of the holders thereof, all Interests issued

and outstanding shall be cancelled and retired and no consideration will be paid or

delivered with respect thereto.

51.     Notwithstanding anything to the contrary in the Disclosure

Statement, the Plan, any other Plan document or this Confirmation Order, nothing in

the Disclosure Statement, the Plan, any other Plan document or this Confirmation Order

(including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of: (i) impairing in any respect the legal, equitable or contractual rights and defenses of the ACE American Insurance Company, Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company, and/or any of their affiliated companies (collectively, the "ACE Companies") or insureds under any insurance policy or bond issued by the ACE Companies for the benefit of the Debtors or their affiliates or any agreement between the Debtors and the ACE Companies (the "ACE Agreements") or under any applicable non-bankruptcy law; (ii) modifying any of the terms, conditions, limitations and/or exclusions contained in the ACE Agreements, which terms, conditions, limitations and/or exclusions shall remain in full force and effect;  or (iii) altering any existing continuing duties and obligations of any insured, principal and/or indemnitor  under the ACE Agreements (including the issuer of any letter of credit).

52.    Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any other Plan Document or this Confirmation Order, nothing in the Disclosure Statement, the Plan, any other Plan Document or this Confirmation Order (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any insurance policy issued by Liberty Mutual Insurance Company or its affiliates (collectively, "Liberty") for the benefit of the Debtors or their affiliates or any agreement between the Debtors and Liberty or under any applicable non-bankruptcy law.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HAWKER BEECHCRAFT, INC., *et al.*,[1] | ) | Case No. 12-11873 (SMB) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

### DEBTORS' AMENDED JOINT PLAN OF REORGANIZATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

James H.M. Sprayregen, P.C.
Paul M. Basta
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr. (admitted *pro hac vice*)
Ross M. Kwasteniet (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

Dated:  January 30, 2013

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Hawker Beechcraft, Inc. (2598); Arkansas Aerospace, Inc. (7496); Beech Aircraft Corporation (0487); Beechcraft Aviation Company (3548); Hawker Beechcraft Acquisition Company, LLC (8770); Hawker Beechcraft Corporation (5770); Hawker Beechcraft Defense Company, LLC (5891); Hawker Beechcraft Finance Corporation (8763); Hawker Beechcraft Global Customer Support Corporation (7338); Hawker Beechcraft Holding, Inc. (6044); Hawker Beechcraft International Delivery Corporation (6640); Hawker Beechcraft International Holding LLC (6757); Hawker Beechcraft International Service Company (9173); Hawker Beechcraft Notes Company (0498); Hawker Beechcraft Quality Support Company (7800); Hawker Beechcraft Regional Offices, Inc. (3889); HBC, LLC (N/A); and Rapid Aircraft Parts Inventory and Distribution Company, LLC (N/A).  The location of the Debtors' corporate headquarters and the Debtors' service address is:  10511 East Central, Wichita, Kansas 67206.

Disbursing Agent to provide written notice to such Holder as to what the Debtors believe to be the nature and scope of applicable insurance coverage.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.       <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything to the contrary contained herein (including Article IX), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*I.*       *L/C Secured Claims Reserve and L/C Deficiency Claims Reserve*

That portion of the Class 6 distribution with respect to the L/C Secured Claims and that portion of the Class 9A distribution with respect to the L/C Deficiency Claims that are distributed in connection with the Initial Distribution Date pursuant to Article III of this Plan shall be issued in the name of and distributed to the Senior Credit Facility Disbursing Agent to be held thereby in the L/C Secured Claims Reserve and the L/C Deficiency Claims Reserve, as applicable, together with all earnings thereon, if any (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve), to be distributed by the Senior Credit Facility Disbursing Agent periodically to the relevant Holders of Allowed L/C Secured Claims and Allowed L/C Deficiency Claims, after consultation with the Senior Credit Facility Issuing Bank, and the Disbursing Agent, but no later than the L/C Final Distribution Date as required by this Plan, and upon the Senior Credit Facility Disbursing Agent's receipt of a certification from the Senior Credit Facility Issuing Bank certifying the amount of the Existing L/C Facility Letters of Credit that (i) have been drawn since the Effective Date of the Plan, and (ii) have been drawn since the last certification to the Senior Credit Facility Disbursing Agent from the Senior Credit Facility Issuing Bank.  The Senior Credit Facility Disbursing Agent shall hold in the L/C Secured Claims Reserve and the L/C Deficiency Claims Reserve, as applicable, all dividends, payments, and other distributions made on account of, as well as any obligations arising from, the property held in the L/C Secured Claims Reserve and the L/C Deficiency Claims Reserve, as applicable, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise.  After all L/C Claims have become either Allowed Claims or disallowed Claims, the Senior Credit Facility Disbursing Agent shall effect a final distribution of all assets remaining in the L/C Secured Claims Reserve to all Holders of Allowed Senior Credit Facility Claims (including without limitation Allowed L/C Claims) on a Pro Rata basis (determined based on the final amount of L/C Secured Claims that are Allowed).  After all L/C Claims have become either Allowed Claims or disallowed Claims, the Disbursing Agent shall effect a final distribution of all assets remaining in the L/C Deficiency Claims Reserve to all Holders of Allowed Senior Credit Facility Deficiency Claims on a Pro Rata basis (determined based on the final amount of L/C Deficiency Claims that are Allowed).  The Senior Credit Facility Issuing Bank is authorized to issue a notice of non-renewal to each beneficiary of an Existing L/C Facility Letter of Credit on or before the second anniversary of the Effective Date informing each such beneficiary that its Existing L/C Facility Letter of Credit will not be renewed on or after the second anniversary of the Effective Date.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

*A.*      *Resolution of Disputed Claims*

       1.       <u>Allowance of Claims</u>

On or after the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim Allowed as of the

42

AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira S. Dizengoff
Arik Preis

1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
(214) 969-2800 (Telephone)
(214) 969-4343 (Facsimile)
Sarah Link Schultz

*Counsel to the TSC Debtors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TERRESTAR CORPORATION, *et al.*,[1] | ) | Case No. 11-10612 (SHL) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

### THIRD AMENDED JOINT CHAPTER 11 PLAN OF TERRESTAR CORPORATION, MOTIENT COMMUNICATIONS INC., MOTIENT HOLDINGS INC., MOTIENT LICENSE INC., MOTIENT SERVICES INC., MOTIENT VENTURES HOLDING INC., MVH HOLDINGS INC., TERRESTAR HOLDINGS INC. AND TERRESTAR NEW YORK INC.

THIS CHAPTER 11 PLAN IS BEING SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT. THIS CHAPTER 11 PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. ACCORDINGLY, THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.

Dated:  June 27, 2012

---

[1]     The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal taxpayer identification number, are:  TerreStar Corporation (6127); Motient Communications Inc. (3833); Motient Holdings Inc. (6634); Motient License Inc. (2431); Motient Services Inc. (5106); Motient Ventures Holding Inc. (6191); MVH Holdings Inc. (9756); TerreStar Holdings Inc. (0778); and TerreStar New York Inc. (6394).

2.  Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of the TSC Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policies.  To the extent that one or more of the TSC Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.  Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the TSC Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

L.  *Post-petition Interest*

Unless expressly provided in the Plan, the Confirmation Order, the DIP Financing Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan or required by the Bankruptcy Code (including without limitation Bankruptcy Code sections 506(b) and 1129(b)), post-petition interest shall not accrue on or after the Petition Date on account of any Claim.

M.  *Section 506(c) Reservation*

The TSC Debtors and the Reorganized TSC Debtors reserve all rights under Bankruptcy Code section 506(c) with respect to any and all Secured Claims, except to the extent waived pursuant to the DIP Financing Order.

N.  *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each TSC Debtor obligated with respect to such Claim and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated TSC Debtor based upon the full amount of the Allowed Claim.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of Allowed Claims exceed 100% of the underlying Allowed Claim.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

A.  *Prosecution of Objections to Claims*

The TSC Debtors (in consultation with the Designated Holders) or the Reorganized TSC Debtors, as applicable, shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan; *provided*, *however*, that the filing, settlement, compromise, withdrawal or litigation to judgment of any objections to Claims after the Confirmation Date but before the Effective Date shall require the consent of each of the Designated Holders; *provided*, *further*, *however*, that if the Designated Holders (or any one Designated Holder) are providing at least 75% of the Exit Facility, the consent of the Designated Holders that are providing such portion of the Exit Facility shall also be required.  From and after the Effective Date, the Reorganized TSC Debtors may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The TSC Debtors reserve all rights to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

- and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone       (312) 862-2000
Facsimile:       (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*[1] | ) ) | Case No. 10-24549 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION
### PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated:  February 17, 2012

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Grapefinds, Inc. (4053); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599).  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

C.     Indemnification Obligations

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall assume and be deemed to have assumed the Indemnification Obligations as of and on the Effective Date other than any Indemnification Obligation that was previously rejected by the Debtors pursuant to an order of the Bankruptcy Court or is the subject of a motion to reject filed by the Debtors that was pending as of the Effective Date; provided that the Reorganized Debtors shall assume and be deemed to have assumed Indemnification Obligations for a former director or officer that was not employed by, engaged by, or serving in such capacity for the Debtors at any time following November 1, 2010 only if the Debtor Release provided under Article VIII.D hereof is approved by the Bankruptcy Court with respect to such former director or officer; provided further that Indemnification Obligations assumed or deemed assumed by the Reorganized Debtors pursuant to this Article V.C shall not be limited to obligations arising from or related to claims settled or released pursuant to the Debtor Release.  Each Indemnification Obligation that is assumed or deemed assumed pursuant to this Article V.C shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way (whether by the Plan, a Restructuring Transaction, or otherwise), and shall be Unimpaired and unaffected, irrespective of when such obligation arose.

D.     Insurance Policies

Each insurance policy shall be assumed by the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, to the extent such insurance policy is executory, unless such insurance policy previously was rejected by the Debtors pursuant to a Bankruptcy Court order, is the subject of a motion to reject pending on the Effective Date, or is included in the schedule of "Rejected Executory Contracts and Unexpired Leases" contained in the Plan Supplement.  Notwithstanding anything to the contrary in the Plan or the Plan Supplement (including any other provision that purports to be preemptory or supervening), nothing in the Plan or the Plan Supplement shall in any way operate to, or have the effect of, impairing the legal, equitable or contractual rights of the Debtors' insurers, if any, in any respect or the rights of the Debtors or any other party against the Debtors' insurers or in respect of any insurance of the Debtors.  The rights of the Debtors and the Debtors' insurers vis-à-vis one another shall be determined under their respective insurance policies and any related agreements with the Debtors, if any, subject to the rights of the Debtors to assume any such policy or agreement in accordance with this provision.

E.     Objections to Assumption of Executory Contracts and Unexpired Leases Including Cure of Defaults

With respect to each of the Executory Contracts or Unexpired Leases listed on the schedule of "Assumed Executory Contracts and Unexpired Leases," the Debtors (in consultation with the Creditors' Committee and the DIP Facility Administrative Agent) shall designate a proposed Cure, however, the assumption of such Executory Contracts or Unexpired Leases shall not be conditioned upon the disposition of all issues with respect to Cure.[5]  Such Cure shall be

---

[5]   For the avoidance of doubt, the Debtors' assumption of the Executory Contracts and Unexpired Leases, pursuant to the Confirmation Order, shall occur as of the Effective Date despite any pending or unresolved objections to such assumptions based on Cure grounds.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*, | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### DEBTORS' PLANS OF REORGANIZATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

**Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest. This Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800

Anup Sathy, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois 60654-3406
Telephone: (312) 862-2000

Counsel to the Debtors and Debtors in Possession

Dated: June 29, 2011

2. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Post-Effective Date Debtors, the Trustee, or any other Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A. *Resolution of Disputed Claims Against Fixed/Floating Debtors, Anaheim Hotel Owner, and Anaheim Hotel Lessee*

1. Allowance of Claims Against Fixed/Floating Debtors, Anaheim Hotel Owner, or Anaheim Hotel Lessee

On or after the Effective Date, the Disbursing Agent shall have and shall retain any and all rights and defenses that the applicable Fixed/Floating Debtor, Anaheim Hotel Owner, or Anaheim Hotel Lessee had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

2. Prosecution of Objections to Claims Against Fixed/Floating Debtors, Anaheim Hotel Owner, or Anaheim Hotel Lessee

The Disbursing Agent shall have the exclusive authority to File objections to Claims against the Fixed/Floating Debtors, Anaheim Hotel Owner, or Anaheim Hotel Lessee, and to settle, compromise, withdraw or litigate to judgment objections to any and all Claims against the Fixed/Floating Debtors, Anaheim Hotel Owner, or Anaheim Hotel Lessee, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the Disbursing Agent may settle or compromise any Disputed Claim against the Fixed/Floating Debtors, Anaheim Hotel Owner, or Anaheim Hotel Lessee without any further notice to or action, order, or approval of the Bankruptcy Court.  From and after the Effective Date, the Disbursing Agent shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, the Disbursing Agent shall consult with New Anaheim HoldCo with respect to the filing, withdrawal, litigation, estimation, settlement, or compromise of any objections to any Claims against the Anaheim Hotel Owner or the Anaheim Hotel Lessee.

64

Richard M. Cieri
M. Natasha Labovitz
Craig A. Bruens
Dana Yankowitz
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022-4611
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHEMTURA CORPORATION, *et al.*,[1] | ) | Case No. 09-11233 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

**JOINT CHAPTER 11 PLAN OF CHEMTURA CORPORATION, *ET AL.***

---

Dated:  October 29, 2010

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are:  Chemtura Corporation (3153); A&M Cleaning Products, LLC (4712); Aqua Clear Industries, LLC (1394); ASCK, Inc. (4489); ASEPSIS, Inc. (6270); BioLab Company Store, LLC (0131); BioLab Franchise Company, LLC (6709); Bio-Lab, Inc. (8754); BioLab Textile Additives, LLC (4348); CNK Chemical Realty Corporation (5340); Crompton Colors Incorporated (3341); Crompton Holding Corporation (3342); Crompton Monochem, Inc. (3574); GLCC Laurel, LLC (5687); Great Lakes Chemical Corporation (5035); Great Lakes Chemical Global, Inc. (4486); GT Seed Treatment, Inc. (5292); HomeCare Labs, Inc. (5038); ISCI, Inc. (7696); Kem Manufacturing Corporation (0603); Laurel Industries Holdings, Inc. (3635); Monochem, Inc. (5612); Naugatuck Treatment Company (2035); Recreational Water Products, Inc. (8754); Uniroyal Chemical Company Limited (Delaware) (9910); Weber City Road LLC (4381); and WRL of Indiana, Inc. (9136).

### 15.12    Closing of Chapter 11 Cases

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### 15.13    Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided, however,* that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

### 15.14    Insurance Neutrality

Unless otherwise expressly agreed to by an Insurer in writing, notwithstanding any provision in the Plan or the Confirmation Order, including any provision that purports to be preemptory or supervening, nothing contained in any such documents or in this paragraph shall (a) impose, or be deemed or construed to impose, any obligation on any Insurer to provide a defense for, pay defense costs, settle, or pay any settlement or judgment with respect to, any Claim, including any Insured Claim or (b) have the effect of impairing the Insurers' legal, equitable, or contractual rights in any respect; rather, an Insurer's obligations, if any, with respect to any Claim, including any Insured Claim, shall be determined solely by and in accordance with the allegedly applicable Insurance Policies.

Unless otherwise expressly agreed to by an Insurer in writing, nothing in the Plan or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall diminish or impair, or be deemed to diminish or impair, the rights of any Insurer to assert:  any defense, right, or claim, including but not limited to, any claim for deductibles, self-insured retentions, retrospective premiums, or any other premium or similar obligation of any kind; any claim for contribution, indemnification, or subrogation; or any setoff, recoupment, or counterclaim arising out of or relating to any of the Insurance Policies.  Without limiting the generality of the foregoing, unless otherwise expressly agreed to by an Insurer in writing, nothing in the Plan or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall, under any theory:

   (a)    constitute, or be deemed to constitute, a trial, adjudication, judgment, hearing on the merits, finding, conclusion, other determination, evidence, or suggestion of any determination establishing the liability of any Insurer (in the aggregate or otherwise) or establishing a coverage obligation in subsequent litigation relating to any Claim, including any Insured Claim, or under any of the Insurance Policies;

   (b)    establish the liability or obligation of the Debtors with respect to any Claim that binds any Insurer, individually or with another Insurer(s), including whether the Debtors are or were liable on account of such claim or have suffered an insured loss;

   (c)    establish that it is reasonable, appropriate, in good faith, or consistent with the terms and conditions of any Insurance Policy for the Debtors to settle, allow, assign any value to, liquidate, and/or pay (or present to any Insurer for payment) any Claim on any terms or conditions contemplated by the Plan, the Confirmation Order or any other agreement;

   (d)    establish with respect to any Insured Claim or cause of action against any Insurer that the Plan, the Confirmation Order, or any other agreement (including any procedures, matrices, or criteria used or considered in valuing, estimating, or allowing Claims thereunder) are reasonable, appropriate, or entered into in good faith, or consistent with any procedures that were used to evaluate, settle, or pay Claims against the Debtors before the Chapter 11 Cases or under the terms and conditions of any Insurance Policy;

58

(e)     establish with respect to any Insured Claim or cause of action against any Insurer that the conduct of the Debtors and the holders of Claims in connection with the negotiation, development, settlement, or implementation of the Plan, the Confirmation Order, or any other agreement was, is, or will be reasonable, appropriate, in good faith, or consistent with the terms and conditions of any Insurance Policy;

(f)     establish that any Insurer was invited to participate in, participated in, consulted on, and/or consented to the negotiation, proposal, solicitation, or approval of the Plan;

(g)     constitute, or be deemed to constitute, a determination of the reasonableness of the amount of any Claim, including any Insured Claim, either individually or in the aggregate with other Claims;

(h)     grant, or be deemed to grant, to any Entity any right to sue any Insurer directly in connection with a Claim, including any Insured Claim, or in connection with or under any of the Insurance Policies;

(i)     constitute, or be deemed to constitute, a finding or determination that any Debtor is a named insured, additional insured, or insured in any other way under any of the Insurance Policies; or

(j)     constitute, or be deemed to constitute, a determination that any Insurer has any defense or indemnity obligation with respect to any Claim or Insured Claim. The Insurers shall retain, and be permitted to assert, (i) all of their rights and defenses with respect to coverage of any Claim, including any Insured Claim, notwithstanding any provision of the Plan or the Confirmation Order, including any provision that purports to be preemptory or supervening, and (ii) all of the Debtors' defenses to liability in connection with any Claim, including any Insured Claim, and that the Insurers' rights to assert all such underlying defenses to liability and all such defenses to coverage of any Claim, including any Insured Claim, will not be impaired in any way by the Plan or the Confirmation Order.

Except as expressly set forth therein, nothing in the Plan or the Confirmation Order shall diminish or impair any of the rights and defenses of the Debtors or the Reorganized Debtors, if any, both legal and equitable, arising out of or relating to any of the Insurance Policies.

Without limiting the foregoing, in considering whether to confirm the Plan, the Bankruptcy Court or any other court exercising jurisdiction over the Chapter 11 Cases is not considering, and is not deciding, any matter at issue or which may be raised as an issue in any Insurance Coverage Action.

Under the Plan, the Reorganized Debtors retain the Debtors' rights and obligations under each of the Insurance Policies, subject to the terms and conditions of each Insurance Policy. All of the parties' rights and arguments with respect to any purported assignment of any Insurance Policy are expressly preserved, and are not impaired, increased, or otherwise altered by the Plan, the Confirmation Order, or any other Plan Document.

No Insurer shall be bound in any current or future litigation concerning any Claim or any Insurance Policy by any orders, including the Confirmation Order, factual findings, or conclusions of law issued in connection with confirmation of the Plan (including on appeal or in any subsequent proceeding necessary to effectuate the Plan), and no such order, including the Confirmation Order, findings of fact, or conclusions of law shall:

(a)     be admissible, used as evidence, referenced, or argued as persuasive to the case of the Debtors, any trust formed under this Plan, or any claimant in any Insurance Coverage Action; or

(b)     have any res judicata, collateral estoppel, or other preclusive effect on any claim, defense, right, or counterclaim of such Insurer that has been asserted or that may be asserted in any current or subsequent litigation concerning any Claim or any Insurance Policy; provided, however, that to the extent an Insurer is or may be a holder of a Class 4a or Class 4b Claim, the portions of the Plan

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                              :

**In re**                                     :        **Chapter 11**
                                                :

**GENERAL GROWTH**                :
**PROPERTIES, INC.,** *et al.,*          :        **Case No. 09-11977 (ALG)**
                                                :

          **Debtors.**                  :        **Jointly Administered**
                                                :

-----------------------------------------------------------------x

## PLAN DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

        The Plan Debtors (defined below) listed on <u>Exhibit A</u> hereto, as debtors in possession in the above-captioned chapter 11 cases, propose the following chapter 11 plan pursuant to section 1121(a) of title 11 of the United States Code for resolution of outstanding creditor claims against, and interests in, the Plan Debtors.

## ARTICLE 1

## DEFINITIONS AND INTERPRETATION

### A.      Definitions

        The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both singular and plural).

        1.1     ***ACH*** means Automated Clearing House.

        1.2     ***Adequate Protection Lien*** has the meaning ascribed to it in the Final DIP Order.

        1.3     ***Administrative Expense Bar Date*** has the meaning set forth in the Confirmation Order.

        1.4     ***Administrative Expense Claim*** means, as to any Plan Debtor, any right to payment constituting a cost or expense of administration of the Chapter 11 Cases, asserted against such Plan Debtor, under, and in accordance with, as applicable, sections 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including (a) any actual and necessary costs and expenses of preserving the Plan Debtors' estates, (b) any actual and necessary costs and expenses of operating the Plan Debtors' businesses, and (c) any indebtedness or obligations incurred or assumed by the Plan Debtors during the Chapter 11 Cases. For the avoidance of doubt, the term "Administrative Expense Claim" does not

### 7.6    *Interest*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall be entitled to receive postpetition interest at applicable contract rate or, if none, at the Federal Judgment Rate, only to the extent that such Allowed Claim is otherwise entitled to receive postpetition interest in accordance with the terms of the Plan.

### 7.7    *Claims Paid or Payable by Third Parties*

(a)    *Claims Paid by Third Parties.*  The Plan Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval by the Bankruptcy Court, to the extent that the holder of the Claim receives payment in full or in part on account of such Claim from a party that is not the Plan Debtor or an Affiliate of a Plan Debtor.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Plan Debtor or an Affiliate of a Plan Debtor on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the applicable Plan Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Plan Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified herein until the amount is repaid.

(b)    *Claims Payable by Third Parties.*  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Plan Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; *provided, however,* nothing herein is intended to limit or prevent the payment by a Plan Debtor of the portion of an Allowed Claim in the amount of the Plan Debtor's insurance deductible or self insured retention in respect of such Claim.  To the extent that one or more of the Plan Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of, the Bankruptcy Court.

(c)    *Applicability of Insurance Policies.*  Except as provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed to constitute a waiver of any cause of action that the Plan Debtors or any entity may hold against another entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

In re:                     :     Chapter 11
                        :

SYNAGRO TECHNOLOGIES, INC., et al.,   :     Case No. 13-11041 (BLS)
                        :

          Debtors.[1]        :     Jointly Administered
                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SYNAGRO TECHNOLOGIES, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION

Synagro Technologies, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "*Debtors*"), propose the following joint chapter 11 plan of reorganization (as may be amended, the "*Plan*") pursuant to section 1121(a) of the Bankruptcy Code.[2] These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

Reference is made to the Disclosure Statement, filed by the Debtors concurrently herewith for a discussion of the Debtors' history, businesses, results of operations, historical financial information, projections and future operations, as well as a summary and analysis of this Plan and certain related matters, including distributions to be made under this Plan.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Drilling Solutions, LLC (9935); Earthwise Organics, LLC (5458); Environmental Protection & Improvement Company, LLC (2397); NETCO - Waterbury, LP (5202); New Haven Residuals, LP (2758); New York Organic Fertilizer Company (8694); Providence Soils, LLC (9061); Soaring Vista Properties, LLC (4015); South Kern Industrial Center, LLC (2099); ST Interco, Inc. (4897); Synagro - Connecticut, LLC (5532); Synagro - WCWNJ, LLC (0817); Synagro - WWT, Inc. (0492); Synagro Central, LLC (2568); Synagro Composting Company of California, LLC (7671); Synagro Detroit, LLC (1107); Synagro Drilling Solutions, LLC (4598); Synagro-Hypex, LLC (2544); Synagro Management, LP (4546); Synagro Northeast, LLC (2564); Synagro of California, LLC (8598); Synagro of Minnesota - Rehbein, LLC (7969); Synagro of Texas - CDR, Inc. (8566); Synagro Product Distribution, LLC (4357); Synagro South, LLC (2567); Synagro Technologies, Inc. (9860); Synagro Texas, LLC (4372); Synagro West, LLC (2566); Synagro Woonsocket, LLC (1634); Synatech Holdings, Inc. (5544). The Debtors' address is 435 Williams Court, Suite 100, Baltimore, MD 21220.

[2] Capitalized terms used but not defined in this Introduction have the meanings ascribed to them in Article I of this Plan.

including, without limitation, all principal, accrued and accruing postpetition interest, costs, fees, and expenses, and amounts necessary to, in accordance with the terms of the DIP Credit Agreement, cash collateralize any outstanding Letters of Credit that have not been replaced and released pursuant to Section 6.8(a) of this Plan.

(b)　The First Lien Credit Facility Claims shall be deemed to be Allowed in the aggregate amount of $305,427,832.17, plus accrued and accruing prepetition and postpetition interest (including PIK Interest), costs, fees, expenses, draws on the Letters of Credit between the date hereof and the Effective Date, and amounts necessary to, in accordance with the First Lien Credit Agreement, cash collateralize any outstanding Letters of Credit that have not been replaced and released pursuant to Section 6.8(a) of this Plan.

(c)　The Swap Agreement Claim shall be deemed to be an Allowed Claim in the amount of $1,678,000.

(d)　The Second Lien Claims shall be deemed to constitute Allowed Claims in the aggregate amount of $100,150,000, exclusive of accrued and accruing prepetition and postpetition interest, costs, fees, expenses, and other charges, which shall be Allowed Second Facility Credit Facility Claims to the extent of the Second Lien Net Proceeds and Allowed Second Lien Deficiency Claims for the balance.

4.12　*Compliance with Laws and Effects on Distributions*.　In connection with the consummation of this Plan, the Reorganized Debtors will comply with all withholding and reporting requirements imposed by federal, state, local or foreign taxing authorities, and all distributions hereunder will be subject to applicable withholding and reporting requirements.

4.13　*Reservation of Rights Regarding Claims*.　Except as otherwise explicitly provided in this Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment or any claimant's right to object to such setoff or recoupment made by the Debtors or Reorganized Debtors.

4.14　*Special Provisions Regarding General Unsecured Insured Claims*.
Distributions under this Plan to each Holder of a General Unsecured Insured Claim shall be in accordance with the treatment provided under this Plan for General Unsecured Claims; provided, however, that the maximum amount of any distribution under this Plan on account of an Allowed General Unsecured Insured Claim shall be limited to an amount equal to: (a) the applicable deductible or self-insured retention under the relevant insurance policy minus (b) any reimbursement obligations of the Debtors to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs); provided, further, however, that, to the extent that a Claimholder has an Allowed General Unsecured Insured Claim, the amount of which exceeds the total coverage available from the relevant insurance policies of the Debtors, such Claimholder shall have an Allowed General Unsecured Claim in the amount by which such Allowed General Unsecured Insured Claim exceeds the coverage available from the relevant Debtors' insurance policies.

27

This Plan shall not expand the scope of, or alter in any other way, the obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have. This Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any Proof of Claim or the Debtors' rights and defenses with respect to such Proofs of Claim.

## ARTICLE V

## IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

5.1     *Holders of Claims and Equity Interests Entitled to Vote*.  Each Holder of a Class 5 Second Lien Credit Facility Claim, a Class 6 General Unsecured Claim and a Class 7 Second Lien Deficiency Claim against an applicable Debtor is entitled to vote to accept or reject this Plan.

5.2     *Presumed Acceptance of the Plan*.  Each Holder of a Class 1 Priority Non-Tax Claim, a Class 2 Other Secured Claim, a Class 3 First Lien Credit Facility Claim, or a Class 4 Assumed General Unsecured Claim is unimpaired by this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted this Plan and the votes of such Holders will not be solicited.

5.3     *Presumed Rejection of the Plan*.  Each Holder of a Class 8 Intercompany Claim or a Class 9 Equity Interest shall not receive any distribution under this Plan on account of such Claim or Equity Interest.  Pursuant to section 1126(g) of the Bankruptcy Code, the Holders of Claims and Equity Interests in such Classes are presumed to have rejected this Plan and the votes of such Holders will not be solicited.

5.4     *Acceptance by Impaired Classes*.  Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class entitled to vote that actually vote on this Plan have voted to accept this Plan.  Because Second Lien Credit Facility Claims, Second Lien Deficiency Claims, and General Unsecured Claims are impaired, the votes of Holders of such Claims will be solicited.

5.5     *Nonconsensual Confirmation*.  Because Classes 8 and 9 are deemed to reject this Plan, the Debtors will seek confirmation of this Plan from the Court by employing the "cramdown" procedures set forth in section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan or any Plan Exhibit or schedule, including to amend or modify this Plan or such Exhibits or schedules to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

5.6     *Elimination of Classes*.  Any Class that does not contain any Allowed Claims or Interests as of the date of commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan

28

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | ) Chapter 11 Cases |
| | ) Case No. 08-10928-JKO |
| TOUSA, INC., *et al.*, | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |

---

### AMENDED JOINT PLAN OF LIQUIDATION OF TOUSA, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### JULY 30, 2013 VERSION OF PLAN

---

**KIRKLAND & ELLIS LLP**
Richard M. Cieri (New York Bar No. 4207122)
Joshua A. Sussberg (New York Bar No. 4216453)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Co-counsel to the Debtors*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Daniel H. Golden (New York Bar No. 1133859)
Philip C. Dublin (New York Bar No. 2959344)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

**ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**
Lawrence S. Robbins (DC Bar No. 420260)
Michael Waldman (DC Bar No. 414646)
1801 K Street N.W., Suite 411-L
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510

Dated: July 30, 2013

**BERGER SINGERMAN LLP**
Paul Steven Singerman (Florida Bar No. 378860)
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

**STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.**
Patricia A. Redmond (Florida Bar No. 303739)
150 West Flagler Street
Miami, FL 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395

Claim holding an un-negotiated check does not request reissuance of that check within six months after the date the check was mailed or otherwise delivered to the holder, that Allowed Claim shall be released and the holder thereof shall be forever barred, estopped and enjoined from asserting any Claim against any of the Plan Debtors, the Liquidation Trust or the Liquidation Trustee. In such cases, any Cash or Liquidation Trust Interests held for payment on account of such Claims shall be property of the Liquidation Trust, free of any Claims of such holder with respect thereto.

In an effort to ensure that all holders of Allowed Claims receive their allocated distributions, no later than 150 days after the issuance of such checks, the Liquidation Trustee shall file with the Bankruptcy Court a list of the holders of any un-negotiated checks. For the avoidance of doubt, such list shall not include the holders of any checks that have not been negotiated within six months after the date the check was mailed or otherwise delivered to the holder. Nothing contained herein shall require the Liquidation Trustee to attempt to locate any holder of an Allowed Claim.

7.      Claims Paid or Payable by Third Parties

(a)      Claims Paid by Third Parties

To the extent that the holder of a Claim receives payment in full on account of such Claim from a party that is not a Plan Debtor or the Liquidation Trust, the Liquidation Trustee shall reduce the Claim in full (or to the extent of payment by the third party), and such Claim shall be disallowed to the extent of payment from such third party without an objection to such Claim having to be filed and without further notice to, action, order or approval of the Bankruptcy Court. Further, to the extent that a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Plan Debtor or the Liquidation Trust on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the Liquidation Trustee, to the extent that the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Liquidation Trust annualized interest at the federal judgment rate on such amount owed for each Business Day after the two-week grace period specified above until such amount is repaid.

(b)      Chinese Drywall Claims

In 2009, certain parties commenced the Chinese Drywall Litigation against homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters and distributors, as well as their insurers and the insurers of homeowners, who were involved with installing Chinese drywall in the affected properties. The Chinese Drywall Litigation was transferred to the Chinese Drywall Court and was designated MDL No. 09-2047. The Chinese Drywall Court ordered the parties to the Chinese Drywall Litigation to attend mediation, and on February 7, 2013, the Chinese Drywall Court approved a final settlement of the Chinese Drywall Litigation [E.D. La., MDL No. 09-2047, ECF No. 16570], pursuant to which the Chinese Drywall Claims were settled for approximately $337,655.34 in full and final satisfaction of such Claims, to be paid from the class action settlement. Accordingly, no distribution will be made on account of Chinese Drywall Claims pursuant to the Plan.

(c)      Claims Payable by Insurance

Holders of Claims that are covered by the Plan Debtors' insurance policies shall seek payment of such Claims from applicable insurance policies, provided that the Plan Debtors and the Liquidation Trust, as applicable, shall have no obligation to pay any amounts in respect of prepetition deductibles or self insured retention amounts. No distributions under the Plan shall be made on account of an Allowed

Claim that is payable pursuant to one of the Plan Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Plan Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction or settled in accordance with the applicable insurer's reasonable business judgment in consultation with the Liquidation Trustee), then, immediately upon such insurers' agreement, the Proponents or the Liquidation Trustee, as applicable, may direct the Voting and Claims Agent to expunge such Claim from the Claims Register to the extent of any agreed-upon satisfaction without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

Nothing contained in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be peremptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers with respect to any insurance policies issued to the Plan Debtors and any related agreements with the insurance companies. The rights and obligations of the insureds and insurers under such insurance policies and related agreements shall be determined under such policies and agreements, including the terms, conditions, limitations, exclusions and endorsements thereof, which shall remain in full force and effect under their terms and under any applicable non-bankruptcy law. Each of the non-Debtor counterparties to such insurance policies and agreements reserves all its rights and defenses under such insurance policies and agreements and applicable non-bankruptcy law, including any defenses to coverage.

This Article V.I.7(c) shall not apply to distributions made on Allowed Claims on account of the D&O Insurance Coverage Settlement in accordance with the terms of the D&O Insurance Coverage Settlement Agreements and the D&O Settlement Order. Notwithstanding anything to the contrary herein, insurers' rights (if any) to reimbursement, recovery, collection, setoff, subrogation or recoupment are expressly preserved and, for the avoidance of doubt, the Plan Debtors' and Liquidation Trustee's defenses and objections to any such claims or asserted rights are expressly preserved.

(d)     Applicability of Insurance Policies

Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Except for Claims and Causes of Action released under the Plan against the Released Parties and Exculpated Parties, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Plan Debtors, the Liquidation Trust or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### ARTICLE VI.

### TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND POSTPETITION CONTRACTS

A.     *Assumption and Rejection of Executory Contracts, Unexpired Leases and Postpetition Contracts*

1.     Assumption of Executory Contracts, Unexpired Leases and Postpetition Contracts

On the Effective Date, the Plan Debtors shall assume only the Executory Contracts, Unexpired Leases and Postpetition Contracts listed on the schedule of "Assumed Executory Contracts, Unexpired Leases and Postpetition Contracts." The Confirmation Order shall constitute an order of the Bankruptcy

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE PMI GROUP, INC., a Delaware | ) | Case No. 11-13730 (BLS) |
| Corporation,[1] | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

---

### FIRST AMENDED PLAN OF REORGANIZATION OF THE PMI GROUP, INC. PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

Pauline K. Morgan (No. 3650)
Joseph M. Barry (No. 4221)
Kara Hammond Coyle (No. 4410)
Patrick A. Jackson (No. 4976)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600

Counsel for the Debtor and Debtor in Possession

**THIS DRAFT PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

Dated: June 3, 2013

---

[1] The last four digits of the Debtor's federal tax identification number are 9675. The Debtor's mailing address is P.O. Box 830, Alamo, California 94507 (Attn: L. Stephen Smith).



that are assumed by the Debtor prior to or as of the Effective Date: (i) will not be discharged; (ii) will be Allowed Administrative Expense Claims; and (iii) will be paid in full in the ordinary course of business of the Reorganized Debtor as set forth in this Plan.

For the avoidance of doubt, (i) the obligations of the Debtor to indemnify and reimburse its current directors or officers who were directors or officers, respectively, on or prior to the Petition Date or any former officer whose employment contract was assumed by the Debtor following the Petition Date, and (ii) indemnification and reimbursement obligations of the Debtor arising from services of its officers and directors during the period from and after the Petition Date, shall be Administrative Expense Claims, provided, however, that if and to the extent any person described in the foregoing (i) and (ii) has previously filed a Proof of Claim asserting entitlement to administrative priority for such Claims, such person shall not be required to additionally assert such Claim by the bar date for asserting Administrative Expense Claims set forth in Article II of the Plan.

**6.7.    INSURANCE RIGHTS.**  Notwithstanding anything to the contrary in this Plan or the Plan Supplement, nothing in this Plan or the Plan Supplement (including any other provision that purports to be preemptory or supervening) will in any way operate to, or have the effect of, impairing the legal, equitable or contractual rights of the Debtor's insurers, if any, in any respect. The rights of the Debtor's insurers will be determined under their respective insurance policies and any related agreements with the Debtor, as applicable, subject, however, to the rights, if any, of the Debtor to assume or reject any such policy or agreement and the consequences of such assumption or rejection under Section 365 of the Bankruptcy Code.

**6.8.    POST-PETITION CONTRACTS AND LEASES.**  The Debtor shall not be required to assume or reject any contract or lease entered into by the Debtor after the Petition Date.  Any such contract or lease shall continue in effect in accordance with its terms after the Effective Date, unless the Debtor has obtained a Final Order of the Bankruptcy Court approving rejection of such contract or lease.  Without limiting the foregoing, and notwithstanding anything herein to the contrary, nothing in the Disclosure Statement, the Plan or the Confirmation Order shall alter, amend, modify, discharge, enjoin, impair or otherwise affect any rights, claims or causes of action of MIC and/or the Receiver or any obligations of the Debtor or Reorganized Debtor arising under or related to the Stipulation, the Ancillary Agreements, the Ancillary Letter (each as defined in the Stipulation), the Ancillary Issues Stipulation, the Settlement Order or the 401(k) Agreement, including, but not limited to, any claim or cause of action, if any, for breach or specific performance thereof, all of which shall remain in full force and effect upon and after confirmation of this Plan and shall be binding upon and enforceable against the Reorganized Debtor according to their terms. Nothing set forth in the Disclosure Statement, Plan or Confirmation Order shall impair the administrative priority status afforded to such claims under the Settlement Order or the Arizona Court Order.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SOLAR TRUST OF AMERICA, LLC, *et al.*,** a Delaware limited liability company, | Case No. 12-11136 (KG) |
| | (Jointly Administered) |
| Debtors.[1] | Reference Docket Nos. 679, 686, 687, 727 and 867 |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE MODIFIED FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF SOLAR TRUST OF AMERICA, LLC, AND ITS AFFILIATED DEBTORS

Upon consideration of the *Modified First Amended Chapter 11 Plan of Liquidation of Solar Trust of America, LLC, and Its Affiliated Debtors* (annexed hereto as <u>Exhibit 1</u>, and including all exhibits thereto and as amended, modified, and/or supplemented from time to time, the "<u>Plan</u>") proposed by the debtors and debtors in possession in the above-captioned cases (each, a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>"); and the Debtors having filed the *Disclosure Statement with Respect to the Modified First Amended Chapter 11 Plan of Liquidation of Solar Trust of America, LLC, and Its Affiliated Debtors* [Docket No. 687] (including all exhibits thereto and as amended, modified, and/or supplemented from time to time, the "<u>Disclosure Statement</u>"); and the Bankruptcy Court, by Order dated October 23, 2012 [Docket No. 679] (the "<u>Disclosure Statement Order</u>"), having approved the Disclosure Statement as containing adequate information after notice and a hearing held on October 23, 2012; and upon the affidavit of service filed reflecting compliance with the notice and solicitation requirements of the

---

[1]     The Debtors in these chapter 11 cases, and the last four digits of their employer tax identification number, are:  Solar Trust of America, LLC (4430), STA Development, LLC (9964), STA Contracting, LLC (8039), Amargosa Valley Solar I, LLC (2615), Amargosa Valley Solar II, LLC (0481), Palo Verde Solar I, LLC (1503), Palo Verde Solar II, LLC (1587), Palen Solar I, LLC (1669), Palen Solar II, LLC (1728), CA Solar 10, LLC (1779), Solar Millennium, Inc. (9886), Ridgecrest Solar Power Project, LLC (2699), Ridgecrest Solar I, LLC (1825), and Ridgecrest Solar II, LLC (0397).  The corporate headquarters address for the Debtors is 505 Montgomery Street, 11th Floor, San Francisco, California 94111.



1211136130307000000000002

forth in the Plan, subject to the Global Settlement Agreement, all of the Debtors' insurance policies, or third party policies naming the Debtors as an additional insured party, and the proceeds thereof shall be available to satisfy any Claims to the extent such insurance policies cover such Claims. In addition, such insurance policies and proceeds thereof shall be available to satisfy Claims estimated pursuant to section 502(c) of the Bankruptcy Code or in accordance with the Plan.

16.     Notwithstanding any other term or provision in the Plan or this Confirmation Order, the Liquidation Trustee, on behalf of the Liquidation Trust, will timely honor all undisputed payments and obligations owed to Debtors' insurers ("Insurers") under any insurance policies issued to Debtors (the "Policies") and any agreements related to the Policies (together, with the Policies, the "Insurance Agreements") in connection therewith, and nothing in the Plan or this Confirmation Order (i) will prejudice any of the rights, claims or defenses of Insurers, the insured, or the Liquidation Trustee, on behalf of the Liquidation Trust (to the extent the Liquidation Trust is authorized to assert the rights of any insured by the terms of the Plan, this Confirmation Order and/or applicable law); (ii) will modify any of the terms, conditions, limitations and/or exclusions contained in the Insurance Agreements, which terms, conditions, limitations and exclusions shall remain in full force and effect; (iii) shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Agreements, or create any right of action against the Insurers that does not otherwise exist under applicable non-bankruptcy law; (iv) shall be deemed to prejudice any of the Insurers' or insured(s)' rights and/or defenses in any pending or subsequent litigation in which the Insurers or any insured may seek any declaration regarding the nature and/or extent of any insurance coverage under the Insurance Agreements; (v) shall be deemed to alter the continuing duties and obligations of any insured or Insurer under the Insurance Agreements; or (vi) shall be construed

- 19 -

as an acknowledgement that the Insurance Agreements cover or otherwise apply to any claims or that any claims are eligible for payment under any of the Insurance Agreements.

17.     Walker, Truesdell, Roth & Associates, Inc. is appointed as the Liquidation Trustee and Mr. Truedell is appointed as the Chief Wind-Down Officer.  In connection with their duties as Liquidation Trustee and as the Chief Wind-Down Officer of the Reorganized Debtor, they shall have such powers and duties and shall receive such compensation as is provided for in the Plan, the Liquidation Trust Agreement, and any engagement agreement executed in connection therewith.  As of the Effective Date, all Claims shall be recourse solely to the Liquidation Trust.  Mr. Truesdell shall have no liability or obligation in his capacity as Chief Wind-Down Officer or Walker, Truesdell, Roth & Associates, in its capacity as the Liquidation Trustee, to any creditor or equity security holder of the Debtors, regardless of whether such creditor or equity security holder has received notice of these Chapter 11 Cases or whether the Claim held by such creditor is contingent or unmatured.

18.     The forms, terms and provisions of each of the Plan Documents are hereby approved.  The Plan Documents shall be deemed incorporated with the Plan in all respects.  The Debtors are authorized to execute and deliver each of the documents filed with the Bankruptcy Court, including, without limitation, the Liquidation Trust Agreement, the other Plan Documents or any other document forming part of the evidentiary record at the Confirmation Hearing, on or about the Effective Date in substantially the respective forms included in the Plan Supplement, including such changes thereto as are consistent with the Plan.

19.     Any and all executory contracts and unexpired leases not previously rejected by the Debtors, other than the Global Settlement Agreement, unless specifically assumed pursuant to the Bankruptcy Code prior to the date hereof, assumed pursuant to the Plan or the subject of a motion to assume or assume and assign pending on the date hereof, shall be

- 20 -

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                                       :    Chapter 11
In re:                                                 :
                                                       :    Case No. 12-10069 (CSS)
Trident Microsystems, Inc., et al.,¹                   :
                                                       :    (Jointly Administered)
         Debtors.                                      :
                                                       :    Re: Dkt. No. 878, 960 & 1031
-------------------------------------------------------x
```

### NOTICE OF FILING OF DEBTORS' MODIFIED SECOND AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that on October 15, 2012, the Debtors filed the *Debtors' Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* [Docket No. 1031] (the "Second Amended Plan") and the *Disclosure Statement for the Debtors' Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code* (the "Second Amended Disclosure Statement") [Docket No. 1032].

**PLEASE TAKE FURTHER NOTICE** that on October 22, 2012, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") held a hearing on approval of the Second Amended Disclosure Statement.  On that date, the Bankruptcy Court entered the *Order (I) Approving the Disclosure Statement, (II) Approving Notice and Objection Procedures for the Disclosure Statement Hearing, (III) Establishing Solicitation and Voting Procedures, (IV) Scheduling a Confirmation Hearing and (V) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan* [D.I. 1061].

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court is scheduled to hold a hearing on confirmation of the Debtors' plan of liquidation on December 13, 2012 at 1:00 p.m. (EST).  The document attached hereto as Exhibit 1 is the Debtors' Modified Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code (the "Modified Second Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that, for the convenience of interested parties, attached hereto as Exhibit 2 is a blackline comparison of the Modified Second Amended Plan to the previously-filed version of the Second Amended Plan.

---

¹       The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Trident Microsystems, Inc. (6584) and Trident Microsystems (Far East) Ltd.  The mailing address of each of the Debtors, solely for purposes of notices and communications, is 5201 Great America Parkway, Suite 320, Santa Clara, California 95054.



1210069121210000000000008

otherwise provided herein and, in the case of Claims against TMFE, may be disallowed.  All such Claims against TMI (and with respect to TMFE, such Claims against TMFE as are disallowed) shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX F herein.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III herein.

## F.    Indemnification and Reimbursement

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a proof of Claim has been timely filed and is Allowed, treated as Allowed General Unsecured Claims to the extent such Claims are not covered by any applicable insurance, including deductibles.  Nothing contained herein shall affect the rights of directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtors, the TMI Responsible Person, the TMFE Plan Administrator or the Debtors' Estates to object to, seek to subordinate or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors pursuant to this Article VII.F. or otherwise.  Notwithstanding any other order of the Bankruptcy Court or anything in this Plan to the contrary, a liquidated, non-contingent proof of Claim for indemnification, defense, reimbursement, or limitation of liability of directors, officers, or employees of the Debtors may be asserted against TMFE or TMI at any time prior to the dissolution of TMI or TMFE; provided, however, that such Claims shall be subject to the TMI Responsible Person or the TMFE Plan Administrator's opportunity to object, contest, challenge, subordinate or dispute such Claims pursuant to the Plan.

## G.    D&O Insurance Policies

No prepaid D&O Insurance Policy shall be cancelled, and the Debtors' directors, officers and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in the Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors.

## H.    Certain Insurance Policy Matters

Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the

legal, equitable or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies or related agreements.  The rights and obligations of the insureds, the Debtors, the TMFE Plan Administrator, the TMI Responsible Person and insurers shall be determined under the insurance policies or related agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and under applicable non-bankruptcy law.  Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way (i) limit a Debtor, the TMFE Plan Administrator, the TMI Responsible Person or their assignees from asserting a right or claim to the proceeds of any insurance policy that insures any such Debtor, was issued to any such Debtor or was transferred to the TMI Responsible Person or the TMFE Plan Administrator by operation of the Plan, nor (ii) limit any right of any other party to challenge such right or claim.

## ARTICLE VIII.

## CONDITIONS PRECEDENT

**A.    Conditions Precedent To The Confirmation Date**

The following are conditions precedent to the Confirmation Date that must be satisfied or waived:

1.    The aggregate amount of Allowed Claims in Class 2.A. is not in excess of $16,800,000 (or the amount as adjusted upward to account for the Stipulated Additional Allowed Claims).  Notwithstanding anything to the contrary herein, in the event that the aggregate amount of Allowed Claims in Class 2.A. is in excess of $16,800,000 (or the amount as adjusted upward to account for the Stipulated Additional Allowed Claims) and such condition to confirmation of the Plan is not waived or otherwise satisfied, the Debtors, Creditors' Committee and Cayman Liquidators may continue to support an alternative plan of liquidation on terms and conditions comparable to the Plan, and the Equity Committee shall reserve all rights to object to the alternative plan of liquidation.

2.    The IRS Claim shall be resolved for no greater than $500,000 in Cash.

3.    The Confirmation Date shall be not later than December 15, 2012.

4.    The Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors, the Creditors Committee, the Equity Committee and NXP.

**B.    Conditions Precedent To The Effective Date**

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Effective Date shall be not later than December 31, 2012.

2.    The Bankruptcy Court shall have entered the Confirmation Order.

James H.M. Sprayregen
Jonathan S. Henes
Christopher T. Greco
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Michael B. Slade (admitted *pro hac vice*)
Ryan B. Bennett (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re: | Chapter 11 |
| GLOBAL AVIATION HOLDINGS INC., *et al.*, | Case Nos. 12-40783 (CEC) |
| | 12-40782 (CEC) |
| | 12-40784 (CEC) |
| | 12-40785 (CEC) |
| | 12-40786 (CEC) |
| | 12-40787 (CEC) |
| | 12-40788 (CEC) |
| | 12-40789 (CEC) |
| | 12-40790 (CEC) |
| Debtors. | Jointly Administered |

---

**NOTICE OF FILING FURTHER REVISED FIRST**
**AMENDED JOINT PLAN OF REORGANIZATION OF**
**GLOBAL AVIATION HOLDINGS INC. AND ITS DEBTOR**
**AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

I.      *Claims Paid or Payable by Third Parties*

      1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

      2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

      3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

J.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

**Article IX.**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

After the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (a) to File, withdraw or litigate to judgment objections to Claims or Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

In re:                             :          Chapter 11
                        :

FILENE'S BASEMENT, L.L.C., et al.,     :          Case No. 11-13511 (KJC)
                        :

             Debtors.     :          Jointly Administered
                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
## SYMS CORP. AND ITS SUBSIDIARIES

### Co-Proposed by the Debtors and the Official Committee of Syms Corp. Equity Security Holders

Mark S. Chehi (ID No. 2855)
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

- and –

Jay M. Goffman
Mark A. McDermott
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036-6522

Counsel for Debtors and Debtors in Possession

Dated:   July 13, 2012
          Wilmington, Delaware

Robert J. Dehney (Bar No. 3578)
Curtis S. Miller (Bar No. 4583)
Matthew B. Harvey (Bar No. 5186)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, DE 19899-1347
Telephone:     (302) 658-9200
Facsimile:     (302) 658-3989

-and-

Thomas B. Walper
Seth Goldman
Bradley R. Schneider
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 683-5172

Counsel to the Official Committee of Syms Corp. Equity
Security Holders

### H.    Special Provisions Regarding Insured Claims

Distributions under the Plan to each Holder of an Insured Claim shall be in accordance with the treatment provided under the Plan for Syms General Unsecured Claims and Filene's General Unsecured (Short-Term) Claims; provided, however, that the amount of any such Claim shall be determined as follows:

(1)    to the extent a Holder has an Allowed Insured Claim, all or a portion of which is within the applicable deductible or self-insured retention under the relevant insurance policy of the Debtors, then such amount shall be paid following the allowance of the Allowed Insured Claim, in the ordinary course of the Debtor's business and consistent with the Debtor's insurance policies and past practices;

(2)    to the extent a Holder has an Allowed Insured Claim, a portion of which exceeds the applicable deductible or self-insured retention under the relevant insurance policy of the Debtors, then the amount of such Allowed Insured Claim that (i) exceeds the applicable deductible or self-insured retention but (ii) is less than or equal to the limits of coverage under the relevant insurance policy of the Debtors (the "Insurer Covered Amount") shall not be Allowed as a Syms General Unsecured Claim or a Filene's General Unsecured (Short-Term) Claim; and

(3)    to the extent a Holder has an Allowed Insured Claim, a portion of which exceeds the limits of coverage under the relevant insurance policy of the Debtors, then such Holder shall have an Allowed Syms General Unsecured Claim or Allowed Filene's General Unsecured (Short-Term) Claim in the amount by which such Allowed Insured Claim exceeds the limits of coverage under the Debtors' relevant insurance policy;

provided, further, that:

(4)    the Insurer Covered Amount shall not be recoverable from the Debtors, and shall only be recoverable from the applicable insurer; and

(5)    an Allowed Insured Claim shall not be valid or enforceable against the Debtors' insurers unless and until, among other things, the applicable deductible or self-insured retention has been satisfied in accordance with subsection (1) above and the underlying insurance policy or policies.

Nothing in this section shall constitute a waiver of any causes of action the Debtors or the Reorganized Company may hold against any Person, including the Debtors' or the Reorganized Company's insurance carriers, or a waiver of any rights, claims or defenses the insurers may have. Nothing in this section is intended to, shall, or shall be deemed to preclude any holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any distribution such holder may receive under the Plan or to preclude any insurer from contesting or asserting defenses to the claims of such holders.  The Debtors and the Reorganized Company do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled and the insurers expressly reserve their rights to contest or assert defenses to any such assertion by the Debtors or the Reorganized Company. Nothing in the Disclosure Statement, Plan or Confirmation Order shall be construed as, or is, a determination as to coverage in connection with any Insured Claim under any applicable insurance policy.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-36642-DOT |
| | ) | |
| CANAL CORPORATION, *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |


### SECOND AMENDED JOINT PLAN OF LIQUIDATION OF
### CANAL CORPORATION AND CERTAIN OF ITS AFFILIATED DEBTORS


Dated: February 15, 2011

Benjamin C. Ackerly (VSB No. 09120)
Jason W. Harbour (VSB No. 68220)
Shannon E. Daily (VSB No. 79334)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Telecopier: (804) 788-8218

Peter S. Partee (VSB No. 34140)
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
Telephone: (212) 309-1000
Telecopier: (212) 309-1100

*Attorneys for Debtors and*
*Debtors-in-Possession*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Canal Corporation (f/k/a/ Chesapeake Corporation) (6880), Canal NC Company (f/k/a Chesapeake Printing and Packaging Company) (9208), Canal NY Company, Inc. (f/k/a Chesapeake Pharmaceutical Packaging Company, Inc.) (0010), Canal IH Company (f/k/a Chesapeake International Holding Company) (1532), WTM I Company (1080), Sheffield, Inc. (6314), Canal Resources Company (f/k/a Chesapeake Assets Company) (5293), Canal YR Company (f/k/a Chesapeake Recycling Company) (9383), Canal D&P Company (f/k/a Chesapeake Display and Packaging Company) (4207), Canal Virginia Company (f/k/a The Chesapeake Corporation of Virginia) (6783), Canal Corporation (Wisconsin) (f/k/a Chesapeake Corporation (Wisconsin)) (7682), Canal Corporation (Massachusetts) (f/k/a Chesapeake Corporation (Massachusetts)) (7686), Canal Corporation (D.C.) (f/k/a Chesapeake Corporation (D.C.)) (7684), Canal Corporation (Illinois) (f/k/a Chesapeake Corporation (Illinois)) (7685), Canal Corporation (Louisiana) (f/k/a Chesapeake Corporation (Louisiana)) (7681), Canal FP Company, LLC (f/k/a Chesapeake Forest Products Company, LLC) (6880), Canal DE Company (f/k/a Cary St. Company) (9092), Canal DP Company (f/k/a Delmarva Properties, Inc.) (7160), and Canal SH Company (f/k/a Stonehouse Inc.) (2481).

laws, applicable statutes or contractual obligations, as applicable, with respect to all past, present and future actions, suits, proceedings, or claims against any of such members (including ex officio members), officers, directors, managers and employees based upon any act or omission related to service with, for, or on behalf of the Plan Debtors, whether occurring before or after the Effective Date, shall not be discharged or impaired by Confirmation of this Plan, but rather shall survive unaffected by this Plan and the Confirmation Order and shall remain obligations of the Plan Debtors; *provided*, *however*, that such obligations survive only to the extent that the Plan Debtors' obligations to indemnify the members (including ex officio members), officers, directors, managers and employees for such actions, suits, proceedings, or claims are covered by the proceeds of an insurance policy or policies. Under no circumstances shall the Plan Debtors or the Estates be required to make any payments on such indemnity claims including, without limitation, defense costs.

9.8 **Insurance Preservation and Neutrality**. The Plan and the Confirmation Order, including any exculpation provisions or releases, if applicable, shall not diminish or impair the ability of the Plan Debtors, the Plan Administrator or any other Person to enforce against insurers any policies of insurance that may cover Claims against the Plan Debtors, the Estates, the Plan Administrator or any other Person. Similarly, the Plan and the Confirmation Order, including any exculpation provisions or releases, if applicable, shall not expand the scope of, or alter in any other way, the obligations of any insurers under any policies of insurance that may cover Claims against the Plan Debtors, the Estates, the Plan Administrator or any other Person and the insurers shall retain any and all defenses to coverage that such insurers may have. All such policies of insurance shall remain in full force and effect. For the avoidance of doubt, the Plan and the Confirmation Order shall not diminish or impair any rights, claims, defenses, liabilities or obligations of (i) WTM I Company to any insurer or (ii) any insurer to WTM I Company. In addition, the Plan and the Confirmation Order shall not limit or impair the ability of (a) the Plan Debtors to object to any Claims against the Estates filed by any insurer including, without limitation, Administrative, Priority, Secured or General Unsecured Claims or (b) any insurer to respond to such objection or assert such Claims, which Claims shall be allowed or disallowed pursuant to applicable law. Distributions on any Allowed Claims filed by any insurer against the Estates shall be made pursuant to this Plan and the Confirmation Order.

9.9 **United States Securities and Exchange Commission**. Notwithstanding any provision herein to the contrary, no provision of the Plan or the Confirmation Order shall enjoin, impair or delay the United States Securities and Exchange Commission after the Effective Date from commencing or continuing any claims, causes of action, proceedings or investigations against any Person in any non-bankruptcy forum; *provided*, *however*, that nothing herein constitutes a waiver of any rights or defenses of any Person with respect to any claims, causes of action, proceedings or investigations by the United States Securities and Exchange Commission, including, without limitation, defenses related to validity, priority, amount and timeliness of such claims. From and after the Effective Date, notwithstanding anything to the contrary in this Plan, to the extent requested by the United States Securities and Exchange Commission, the Plan Debtors shall take any and all actions necessary to evidence the suspension of the Plan Debtors' further reporting obligations with the United States Securities and Exchange Commission or their statutory or regulatory obligations as a publicly traded company, including, without limitation, seeking to deregister the Plan Debtors' securities pursuant to Section 12(j) of the Exchange Act.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| VISTEON CORPORATION, et al.,[1] | ) Case No. 09-11786 (CSS) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

## FIFTH AMENDED JOINT PLAN OF REORGANIZATION
## OF VISTEON CORPORATION AND ITS DEBTOR AFFILIATES
## PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone:    (302) 652-4100

**KIRKLAND & ELLIS LLP**
James H. M. Sprayregen, P.C. (IL 6190206)
James J. Mazza, Jr. (IL 6275474)
Sienna R. Singer (IL 6287154)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000

Marc Kieselstein, P.C. (IL 6199255)
Brian S. Lennon (NY 4215083)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800

*Attorneys for the Debtors and Debtors in Possession*
Dated: August 31, 2010

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Visteon Corporation (9512); ARS, Inc. (3590); Fairlane Holdings, Inc. (8091); GCM/Visteon Automotive Leasing Systems, LLC (4060); GCM/Visteon Automotive Systems, LLC (7103); Infinitive Speech Systems Corp. (7099); MIG-Visteon Automotive Systems, LLC (5828); SunGlas, LLC (0711); The Visteon Fund (6029); Tyler Road Investments, LLC (9284); VC Aviation Services, LLC (2712); VC Regional Assembly & Manufacturing, LLC (3058); Visteon AC Holdings Corp. (9371); Visteon Asia Holdings, Inc. (0050); Visteon Automotive Holdings, LLC (8898); Visteon Caribbean, Inc. (7397); Visteon Climate Control Systems Limited (1946); Visteon Domestic Holdings, LLC (5664); Visteon Electronics Corporation (9060); Visteon European Holdings Corporation (5152); Visteon Financial Corporation (9834); Visteon Global Technologies, Inc. (9322); Visteon Global Treasury, Inc. (5591); Visteon Holdings, LLC (8897); Visteon International Business Development, Inc. (1875); Visteon International Holdings, Inc. (4928); Visteon LA Holdings Corp. (9369); Visteon Remanufacturing Incorporated (3237); Visteon Systems, LLC (1903); Visteon Technologies, LLC (5291). The location of the Debtors' corporate headquarters and the service address for all the Debtors is: One Village Center Drive, Van Buren Township, Michigan 48111.

policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Claims and Solicitation Agent without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Applicability of Insurance Policies. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

E. Setoffs

Except as otherwise expressly provided for in the Plan or in an Accommodation Agreement, each Reorganized Debtor pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder. In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 or otherwise.

F. Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Case No. 09-10990 (CSS) |
| | ) | |
| SPORTSMAN'S WAREHOUSE, INC., et al., | ) | *Chapter 11* |
| | ) | |
| Debtors.[1] | ) | |
| | ) | Jointly Administered |

### SECOND AMENDED JOINT PLAN OF REORGANIZATION OF
### SPORTSMAN'S WAREHOUSE, INC. AND AFFILIATE DEBTORS

Gregg M. Galardi (DE Bar I.D. 2991)
Kristhy M. Peguero (DE Bar I.D. 4903)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899
Tel: (302) 651-3000
Fax:  (302) 651-3001


-and-


Glenn S. Walter
Emily C. Ma
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
Tel: (213) 687-5000
Fax: (213) 687-5600

Counsel for Sportsman's Warehouse, Inc. et al.


Dated:  Wilmington, Delaware
        June 27, 2009

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Sportsman's Warehouse, Inc. (2614); Pacific Flyway Wholesale, Inc. (5734), Minnesota Merchandising Corp. (2908), Sportsman's Aviation, LLC (4736), Sportsman's Warehouse Southwest, Inc. (8590), and Sportsman's Warehouse Holdings, Inc. (5614).



### 3.5    Special Provisions Regarding Insured Claims

(a)    Distributions under the Plan to each holder of an Insured Claim shall be in accordance with the treatment provided under the Plan for General Unsecured Claims; provided, however, that the maximum amount of any Distribution under the Plan on account of an Allowed Insured Claim shall be limited to an amount equal to the applicable self-insured retention under the relevant insurance policy; provided further, however, that, to the extent a Holder has an Allowed Insured Claim, the amount of which exceeds the total coverage available from the relevant insurance policies of the Debtors, such Holder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the coverage available from the relevant Debtors' insurance policies.  Nothing in this section shall constitute a waiver of any Litigation Rights the Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing in this section is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; provided, however, that the Debtors do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(b)    The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors, the existence, primacy and/or scope of available coverage under any alleged applicable policy.  The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any Proof of Claim or the Debtors' rights and defenses to such Proofs of Claim.

### 3.6    Reclamation Claims

To the extent that Reclamation Claimants seek to assert that their Reclamation Claims are Secured Claims under the Bankruptcy Code, the Debtors assert that the Reclamation Claims are not entitled to such treatment because (i) the Reclamation Claimants' reclamation rights were subject at all times to GECC's and GB's perfected Liens, (ii) the Reclamation Claimants' reclamation rights did not satisfy Bankruptcy Code section 546(c) and other applicable nonbankruptcy law, and (iii) as a result of the amendments to the Bankruptcy Code in 2005, Bankruptcy Code section 546(c) no longer provides that a reclamation claim is entitled to administrative expense priority under section 503(b) of the Bankruptcy Code.  Accordingly, each Reclamation Claimant shall be considered to be a Holder of a Class 6 General Unsecured Claim with respect to the value of the goods sold and delivered to the Debtors by such Reclamation Claimant.

### 3.7    Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.