# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA,                    )
555 4th Street, NW                           )
Washington, DC  20530                        )
                                             )
THE STATE OF ALABAMA,                        )
501 Washington Avenue                        )
Montgomery, AL  36130                        )
                                             )
THE STATE OF ALASKA,                         )
1031 W. 4th Avenue, Ste. 200                 )
Anchorage, AK  99501                         )
                                             )
THE STATE OF ARIZONA,                        )
1275 W. Washington                           )
Phoenix, AZ  85007                           )
                                             )
THE STATE OF ARKANSAS,                       )
323 Center Street, Suite 200                 )
Little Rock, Arkansas  72201                 )
                                             )
THE STATE OF CALIFORNIA,                     )
455 Golden Gate Avenue, Ste. 14500           )
San Francisco, CA 94102-7007                 )
                                             )
THE STATE OF COLORADO,                       )
1525 Sherman Street – 7th Floor              )
Denver, Colorado 80203                       )
                                             )
THE STATE OF CONNECTICUT,                    )
55 Elm Street, P.O. Box 120                  )
Hartford, CT  06141-0120                     )
                                             )
THE STATE OF DELAWARE,                       )
820 N. French Street                         )
Wilmington, DE  19801                        )
                                             )
THE STATE OF FLORIDA,                        )
3507 E. Frontage Road                        )
Suite 325                                    )
Tamp, FL 33607                               )
                                             )

THE STATE OF GEORGIA,     )
40 Capitol Square, S.W.     )
Atlanta, Georgia 30334     )
     )
THE STATE OF HAWAII,     )
425 Queen Street     )
Honolulu, Hawaii  96813     )
     )
THE STATE OF IDAHO,     )
700 W. Jefferson St.     )
P.O. Box 83720     )
Boise, ID 83720-0010     )
     )
THE STATE OF ILLINOIS,     )
500 South Second Street     )
Springfield, IL 62706     )
     )
THE STATE OF INDIANA,     )
302 West Washington St., IGCS 5th Fl.     )
Indianapolis, Indiana 46204     )
     )
THE STATE OF IOWA,     )
1305 E. Walnut St.     )
Des Moines, IA 50319     )
     )
THE STATE OF KANSAS,     )
120 SW 10th Avenue, 2nd Floor     )
Topeka, KS 66612     )
     )
THE COMMONWEALTH OF KENTUCKY,     )
State Capitol, Suite 118     )
700 Capital Avenue     )
Frankfort, Kentucky 40601-3449     )
     )
THE STATE OF LOUISIANA,     )
1185 N. Third Street     )
Baton Rouge, Louisiana  70802     )
     )
THE STATE OF MAINE,     )
Burton Cross Office Building, 6th Floor     )
111 Sewall Street     )
Augusta, Maine 04330     )
     )
THE STATE OF MARYLAND,     )
200 Saint Paul Place     )
Baltimore, MD  21202     )

|  |  |
|---|---|
| THE COMMONWEALTH | ) |
| OF MASSACHUSETTS, | ) |
| One Ashburton Place | |
| Boston, MA 02108 | ) |
| | ) |
| THE STATE OF MICHIGAN, | ) |
| 525 W. Ottawa Street | ) |
| PO Box 30755 | ) |
| Lansing, MI 48909 | ) |
| | ) |
| THE STATE OF MINNESOTA, | ) |
| 445 Minnesota Street, Suite 1200 | ) |
| St. Paul, MN 55101-2130 | ) |
| | ) |
| THE STATE OF MISSISSIPPI, | ) |
| Post Office Box 22947 | ) |
| Jackson, MS  39225-2947 | ) |
| | ) |
| THE STATE OF MISSOURI, | ) |
| PO Box 899 | ) |
| Jefferson City, MO  65102 | ) |
| | ) |
| THE STATE OF MONTANA, | ) |
| 215 N. Sanders | ) |
| Helena MT 59624 | ) |
| | ) |
| THE STATE OF NEBRASKA, | ) |
| 2115 State Capitol | ) |
| Lincoln, NE 68509-8920 | ) |
| | ) |
| THE STATE OF NEVADA, | ) |
| 100 North Carson Street | ) |
| Carson City, Nevada  89701 | ) |
| | ) |
| THE STATE OF NEW HAMPSHIRE, | ) |
| 33 Capitol Street | ) |
| Concord, New Hampshire 03301 | ) |
| | ) |
| THE STATE OF NEW JERSEY, | ) |
| 124 Halsey Street – 5th Floor | ) |
| P.O. Box 45029 | ) |
| Newark, New Jersey 07101 | ) |
| | ) |
| THE STATE OF NEW MEXICO, | ) |
| PO Drawer 1508 | ) |

Santa Fe, NM 87504-1508                          )
                                                 )
THE STATE OF NEW YORK,                           )
120 Broadway                                     )
New York, NY 10271                               )
                                                 )
THE STATE OF NORTH CAROLINA,                     )
P. O. Box 629                                    )
Raleigh, NC 27602                                )
                                                 )
THE STATE OF NORTH DAKOTA,                       )
Gateway Professional Center                      )
1050 E Interstate Ave, Ste. 200                  )
Bismarck, ND  58503-5574                         )
                                                 )
THE STATE OF OHIO,                               )
30 E. Broad St., 14th Floor                      )
Columbus, OH 43215                               )
                                                 )
THE STATE OF OREGON,                             )
1515 SW 5th Avenue, Ste. 410                     )
Portland, OR 97201                               )
                                                 )
THE COMMONWEALTH OF PENNSYLVANIA, )
16th Floor, Strawberry Square                    )
Harrisburg, PA  17120                            )
                                                 )
THE STATE OF RHODE ISLAND,                       )
150 South Main Street                            )
Providence, RI 02903                             )
                                                 )
THE STATE OF SOUTH CAROLINA,                     )
1000 Assembly Street, Room 519                   )
Columbia, SC 29201                               )
                                                 )
THE STATE OF SOUTH DAKOTA,                       )
1302 E. Highway 14, Suite 1                      )
Pierre, SD 57501                                 )
                                                 )
THE STATE OF TENNESSEE,                          )
425 Fifth Avenue North                           )
Nashville, TN 37243-3400                         )
                                                 )
THE STATE OF TEXAS,                              )
401 E. Franklin Avenue, Suite 530                )
El Paso, Texas 79901                             )

4

THE STATE OF UTAH,                                  )
350 North State Street, #230                        )
Salt Lake City, UT 84114-2320                       )
                                                    )
THE STATE OF VERMONT,                               )
109 State Street                                    )
Montpelier, Vermont  05609                          )
                                                    )
THE COMMONWEALTH OF VIRGINIA,                       )
900 East Main Street                                )
Richmond, Virginia 23219                            )
                                                    )
THE STATE OF WASHINGTON,                            )
1250 Pacific Avenue, Suite 105                      )
PO Box 2317                                         )
Tacoma, WA 98402-4411                               )
                                                    )
THE STATE OF WEST VIRGINIA,                         )
State Capitol, Room 26E                             )
Charleston, WV  25305-0220                          )
                                                    )
THE STATE OF WISCONSIN,                             )
Post Office Box 7857                                )
Madison, Wisconsin 53707-7857                       )
                                                    )
THE STATE OF WYOMING, and                           )
123 State Capitol Bldg                              )
200 W. 24th                                         )
Cheyenne, WY 82002                                  )
                                                    )
THE DISTRICT OF COLUMBIA,                           )
441 Fourth Street, N.W., Suite 600-S                )
Washington, DC  20001                               )
                                                    )
                      Plaintiffs,                   )
                                                    )
            v.                                       )
                                                    )
BANK OF AMERICA CORPORATION,                        )
Corporate Center 100                                )
100 North Tyron Street                              )
Charlotte, North Carolina 28255                     )
                                                    )
BANK OF AMERICA, N.A.,                              )
100 North Tyron Street                              )

Charlotte, North Carolina 28255                    )
                                                    )
BAC HOME LOANS SERVICING, LP f/k/a                 )
COUNTRYWIDE HOME LOANS                             )
SERVICING, LP,                                     )
4500 Park Grenada                                  )
Calabasas, California 91302-1613                   )
                                                    )
COUNTRYWIDE HOME LOANS, INC.,                      )
4500 Park Grenada                                  )
Calabasas, California  91302                       )
                                                    )
COUNTRYWIDE FINANCIAL CORPORATION, )
4500 Park Grenada                                  )
Calabasas, California  91302                       )
                                                    )
COUNTRYWIDE MORTGAGE                               )
VENTURES, LLC,                                     )
4500 Park Grenada                                  )
Calabasas, California 91302-1613                   )
                                                    )
COUNTRYWIDE BANK, FSB,                             )
100 North Tryon Street                             )
Charlotte, NC  282002                              )
                                                    )
CITIGROUP INC.,                                    )
399 Park Ave.                                      )
New York, New York 10022-4614                      )
                                                    )
CITIBANK, N.A.,                                    )
399 Park Ave.                                      )
New York, New York 10022-4617                      )
                                                    )
CITIMORTGAGE, INC.,                               )
1000 Technology Drive                              )
O'Fallon, Missouri  63368                          )
                                                    )
J.P. MORGAN CHASE & COMPANY,                       )
270 Park Avenue                                    )
New York, New York 10017                           )
                                                    )
JPMORGAN CHASE BANK, N.A.                          )
1111 Polaris Parkway                               )
Columbus, OH  43240                                )
                                                    )
RESIDENTIAL CAPITAL, LLC,                          )

| | |
|---|---|
| 1100 Virginia Drive | ) |
| Fort Washington, Pennsylvania  19034 | ) |
| | ) |
| ALLY FINANCIAL, INC., | ) |
| 200 Renaissance Center | ) |
| P.O. Box 200 | ) |
| Detroit, Michigan  48265 | ) |
| | ) |
| GMAC MORTGAGE, LLC, | ) |
| 1100 Virginia Drive | ) |
| Fort Washington, Pennsylvania  19034 | ) |
| | ) |
| GMAC RESIDENTIAL FUNDING CO. LLC | ) |
| 8400 Normandale Lake Boulevard | ) |
| Minneapolis, Minnesota  55437 | ) |
| | ) |
| WELLS FARGO & COMPANY, | ) |
| 420 Montgomery Street Front | ) |
| San Francisco, CA 94104-1205 | ) |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| One Home Campus | ) |
| Des Moines, IA  50328 | ) |
| | ) |
| Defendants. | ) |

_____)

## **COMPLAINT**

Now comes the United States, and the States of Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida,

Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine,

Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,

Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina,

North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota,

Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin,

Wyoming, the Commonwealths of Kentucky, Massachusetts, Pennsylvania and

Virginia, and the District of Columbia by and through their undersigned attorneys, and respectfully allege as follows:

## INTRODUCTION

1.    This is a civil action filed jointly by the United States; the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and Virginia; and the District of Columbia against Residential Capital, LLC, Ally Financial, Inc., and GMAC Mortgage, LLC; Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, LP, Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Mortgage Ventures, LLC, and Countrywide Bank FSB; Citigroup Inc., Citibank, N.A., and CitiMortgage, Inc.; J.P. Morgan Chase & Company and J.P. Morgan Chase Bank, N.A.; and Wells Fargo & Company and Wells Fargo Bank, N.A., for misconduct related to their origination and servicing of single family residential mortgages.

2.    As described in the allegations below, Defendants' misconduct resulted in the issuance of improper mortgages, premature and unauthorized foreclosures, violation of service members' and other homeowners' rights and

protections, the use of false and deceptive affidavits and other documents, and the
waste and abuse of taxpayer funds.  Each of the allegations regarding Defendants
contained herein applies to instances in which one or more, and in some cases all,
of the Defendants engaged in the conduct alleged.

### THE PARTIES

3.      This action is brought by the United States of America, on behalf
of its agencies and departments, acting through the United States Department of
Justice.

4.      This action is also brought by the States of Alabama, Alaska,
Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida,
Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine,
Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska,
Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina,
North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota,
Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and
Wyoming; the Commonwealths of Kentucky, Massachusetts, Pennsylvania and
Virginia; and the District of Columbia.  Collectively the plaintiffs identified in
this paragraph are referred to here as the "plaintiff States."  This action is brought
by the Attorneys General of the plaintiff States pursuant to consumer protection
enforcement authority conferred on them by state law and pursuant to *parens
patriae* and common law authority.  The Attorneys General are authorized to seek
injunctive relief, restitution for consumers, and civil penalties for violation of the
consumer protection laws of their States.

5.      Defendant Bank of America Corporation is a diversified global financial services company and a bank holding company. It is a Delaware corporation headquartered in Charlotte, North Carolina. Defendant Bank of America, N.A. is a national banking association headquartered in Charlotte, North Carolina. Defendant BAC Home Loans Servicing, L.P. was a servicing company that had formerly been known as Countrywide Home Loans Servicing, L.P. It was a Texas limited partnership with its principal place of business in Plano, Texas. It was, for a time, a wholly owned subsidiary of Bank of America, N.A. In July 2011, it was merged into Bank of America, N.A. This action is also brought against Countrywide Financial Corporation, a financial services company headquartered in Calabasas, California, and three of its subsidiaries, Countrywide Home Loans, Inc., Countrywide Mortgage Ventures, LLC, and Countrywide Bank, FSB (collectively, with Countrywide Financial Corporation, "Countrywide"). On April 23, 2009, the Office of the Comptroller of the Currency approved Countrywide Bank, FSB's ("CWB") request to convert its charter back to that of a national bank and the request by Bank of America, N.A. to then immediately acquire CWB by merger. These transactions were executed on April 27, 2009, as a result of which CWB ceased to exist. Bank of America, N.A. was the surviving institution resulting from this merger. Thus, Bank of America, N.A. is the successor in interest to CWB. Collectively the defendants identified in this paragraph are referred to here as "BOA." The business of BOA and its subsidiaries and affiliates includes origination and servicing of mortgage loans.

6.      Defendant Citigroup Inc. is a diversified global financial services company.  It is a Delaware corporation headquartered in New York City.  Defendant Citibank, N.A. is a national banking association.  It is Citigroup Inc.'s primary U.S. subsidiary depositor institution.  It is headquartered in New York City.  Citibank, N.A. is a wholly owned indirect subsidiary of Citigroup, Inc.  It provides residential real estate lending.  Defendant CitiMortgage is a New York corporation, wholly owned indirect subsidiary of Citigroup, Inc., and is a residential mortgage loan servicing company headquartered in O'Fallon, Missouri.  Collectively the three defendants identified in this paragraph are referred to here as "Citigroup."  The business of Citigroup and its subsidiaries and affiliates, includes the origination and servicing of mortgage loans.

7.      Defendant J.P. Morgan Chase & Company is a diversified global financial services firm.  It is a Delaware corporation, headquartered in New York, New York.  On May 30, 2008, J.P. Morgan Chase & Company acquired The Bear Stearns Companies Inc. (now the Bear Stearns Companies LLC) by merger, including its subsidiary EMC Mortgage Corporation (now EMC Mortgage LLC). Defendant JPMorgan Chase Bank, N.A. is a national banking association.  It is headquartered in Columbus, Ohio.  On September 25, 2008, Washington Mutual Bank., F.S.B., a federal savings bank headquartered in Henderson, Nevada, failed, and J.P. Morgan Chase Bank, N.A., purchased substantially all of the assets and assumed all deposit and substantially all other liabilities of Washington Mutual Bank., F.S.B., pursuant to a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation (FDIC) and the FDIC as Receiver for

11

Washington Mutual Bank, F.S.B.  Collectively the two defendants identified in

this paragraph are referred to here as "J.P. Morgan."  The business of J.P. Morgan

and its subsidiaries and affiliates includes the origination and servicing of

mortgage loans.

8.       Defendant Residential Capital, LLC is a residential real estate

finance company.  It is a Delaware limited liability company headquartered in

Minneapolis, Minnesota.  It is a wholly owned subsidiary of GMAC Mortgage

Group, LLC.  Defendant Ally Financial, Inc. (formerly GMAC, Inc.) is a

diversified financial services firm.  It is a Delaware corporation headquartered in

Detroit, Michigan.  Defendant GMAC Mortgage, LLC is a financial services

company that engages in origination and servicing of residential mortgages.  It is

a Delaware limited liability company headquartered in Fort Washington,

Pennsylvania.  It was formerly known as GMAC Mortgage Corporation.

Defendant GMAC Residential Funding Co. LLC is a residential mortgage

servicing company.  It is a Delaware corporation headquartered in Minneapolis,

Minnesota.  Collectively the four defendants identified in this paragraph are

referred to here as "GMAC."  The business of GMAC and its subsidiaries and

affiliates, includes origination and servicing of mortgage loans.

9.       Defendant Wells Fargo & Company is a diversified financial

services company.  It is a Delaware corporation, headquartered in San Francisco,

California.  Defendant Wells Fargo Bank, N.A. is a national banking association

and a subsidiary of Wells Fargo & Company.  Wells Fargo & Company is the

successor in interest to Wachovia Corporation, a diversified financial services

company headquartered in Charlotte, North Carolina. Wachovia Corporation was

acquired by Wells Fargo & Company in 2008. Collectively the two defendants

identified in this paragraph are referred to here as "Wells Fargo." The business of

Wells Fargo and its subsidiaries and affiliates includes the origination and

servicing of mortgage loans.

10. For this Complaint, defendants GMAC, BOA, Citigroup, J.P.

Morgan and Wells Fargo and all of their affiliated entities, during or prior to such

time as they were affiliated, are referred to collectively as the "Banks" or

"Defendants."

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over the Banks because the

Banks have transacted business in this District, and because the Banks have

committed acts proscribed by the False Claims Act in this District.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §

1331 because the action arises under the laws of the United States, pursuant to 28

U.S.C. § 1345 because this is a civil action commenced by the United States,

pursuant to 28 U.S.C. § 1355(a) because this is an action for the recovery or

enforcement of a fine or penalty incurred under an Act of Congress, and pursuant

to 31 U.S.C. § 3732(a) to the extent the claims arise under the False Claims Act,

31 U.S.C. §§ 3729 to 3733.

13. Pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b), this Court

has supplemental jurisdiction over the subject matter of the claims asserted by the

States in this action because those claims are so related to the claims asserted by

the United States that they form part of the same case or controversy, and because

those claims arise out of the same transactions or occurrences as the action

brought by the United States under the False Claims Act, 31 U.S.C. §§ 3729 to

3733.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)

and (2) and 31 U.S.C. § 3732(a).

## I.     BACKGROUND

### A.     Overview of Relevant Federal Programs

#### 1.     The Federal Housing Administration (FHA)

15.     The FHA provides mortgage insurance on loans made by FHA-

approved lenders throughout the United States.  Among other things, FHA insures

mortgages on "single family" housing, which refers to one- to four- family

dwellings.  See, e.g., 12 U.S.C. § 1709; see generally 24 C.F.R. Part 203.

16.     FHA mortgage insurance provides lenders with protection against

losses when home buyers default on mortgage loans insured by FHA.  See

generally 12 U.S.C. § 1710, 24 C.F.R. Part 203.

17.     FHA-approved lenders, known as Direct Endorsement Lenders,

ensure that loans meet strict underwriting criteria, including income-verification,

credit analysis, and property appraisal, established by the FHA to be eligible for

insurance.  See 24 C.F.R. § 203.5(c)-(e) (Direct Endorsement requirements for

underwriter due diligence, mortgagor income evaluation and appraisal).

18.     The FHA insurance operations are funded by a statutorily

established Mutual Mortgage Insurance Fund (MMIF).  12 U.S.C. § 1708(a).  The

MMIF is sustained by insurance premiums, and the Secretary of the U.S.

Department of Housing and Urban Development is required to provide for an

annual actuarial study to assess the financial position of the MMIF.  12 U.S.C. §

1708(a)(4), (7).

19.     The FHA insurance program, by reducing the risk borne by

approved lenders, is designed to stimulate lending to creditworthy borrowers,

thereby increasing homeownership and aiding local communities in the form of

community development, increased tax bases, and related benefits.

### 2.     The Department of Agriculture's Rural Housing Service Rural Housing Guarantee Program (RHS)

20.     The RHS program provides mortgage insurance guarantees for

loans made to qualified borrowers for housing in rural communities.  See 7 C.F.R.

§ 1980.345 (applicant eligibility).  The RHS partners with a broad range of

eligible lenders.  When an eligible lender certifies that all program requirements

have been met, delivers a completed Loan Closing Report, and pays the guarantee

fee, the RHS concurrently executes a loan note guarantee.  7 C.F.R. §§

1980.309(a) (qualification of lenders), 1980.361 (issuance of loan note

guarantee).

21.     The RHS loan program is intended "to assist eligible households in

obtaining adequate but modest, decent, safe, and sanitary dwellings and related

facilities for their own use in rural areas."  7 C.F.R. § 1980.301(a).

22.     Like the FHA insurance program, the RHS program promotes

lending to creditworthy borrowers that meet the Department of Agriculture's

underwriting requirements.

3.    **The United States Department of Veterans Affairs (VA) Loan
      Guaranty Service Home Loan Program**

23.    The VA Home Loan Program's guaranties are issued to help

eligible service members, veterans, reservists and certain unmarried surviving

spouses obtain homes, condominiums, residential cooperative housing units, and

manufactured homes.  38 U.S.C. §§ 3701(b)(3), 3710(a), 3712.  The primary

purpose of the VA Home Loan Program is to help such individuals finance the

purchase of homes on more advantageous terms than typically would be available

to them.

24.    The VA provides a repayment guarantee to qualified lenders equal

to a specified percentage of the loan upon default of the primary debtor.  38 U.S.C

§§ 3702(d), 3712(c)(2)-(3); 38 C.F.R. §§ 36.4202, 36.4225.  Only loans meeting

the VA's underwriting requirements are entitled to the VA's insurance guarantee.

25.    By providing protection in the event of a default, the VA's

insurance program encourages lenders to provide financing to veterans.

4.    **The United States Trustee Program**

26.    The United States Trustee Program is a component of the

Department of Justice that seeks to promote the efficiency and protect the

integrity of the Federal bankruptcy system.  To further the public interest in the

just, speedy and economical resolution of cases filed under the Bankruptcy Code,

the Program monitors the conduct of bankruptcy parties and private estate

trustees, oversees related administrative functions, and acts to ensure compliance

with applicable laws and procedures.  It also identifies and helps investigate

bankruptcy fraud and abuse in coordination with United States Attorneys, the

Federal Bureau of Investigation, and other law enforcement agencies.

27.     The primary role of the U.S. Trustee Program is to serve as the

"watchdog" over the bankruptcy process.

28.     United States Trustees supervise the administration of liquidation

proceedings under Chapter 7 of the Bankruptcy Code, reorganization proceedings

under Chapter 11, family farm and fisherman reorganization proceedings under

Chapter 12, and "Wage-earner" reorganization proceedings under Chapter 13.

29.     Specific responsibilities of the United States Trustees include

appointing and supervising private trustees who administer Chapter 7, 12, and 13

bankruptcy estates (and serving as trustees in such cases where private trustees are

unable or unwilling to serve); taking legal action to enforce the requirements of

the Bankruptcy Code and to prevent fraud and abuse; referring matters for

investigation and criminal prosecution when appropriate; ensuring that

bankruptcy estates are administered promptly and efficiently, and that

professional fees are reasonable; appointing and convening creditors' committees

in Chapter 11 business reorganization cases; reviewing disclosure statements and

applications for the retention of professionals; and advocating matters relating to

the Bankruptcy Code and rules of procedure in court.

**B.      The Single Family Mortgage Industry**

30.     The single family mortgage industry consists of financial services

and other firms that originate, underwrite, securitize, and service mortgages for

residential properties designed to house one- to four-family dwellings.

31.     Mortgage origination is the process whereby a lender loans money to a borrower and receives a security interest in property, through a mortgage or comparable device that secures the loan.  Origination generally includes all the steps from receiving a loan application through disbursal of the loan proceeds.

32.     For more than thirty years, mortgages typically have been "pooled" to create an investment vehicle, often denominated as a trust, and interests in the trusts have been sold to investors that own interests in payment streams generated by principal and interest payments by the borrowers.

33.     After mortgages are originated, a "servicer" is responsible for mortgage administration activities, known as servicing activities, which generally include collecting payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's indebtedness; distributing payments after allowable deductions to the investment trust entities for distribution to investors; making advances to cover delinquent mortgage payments and other costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments.

## C.     The United States' Stimulus / Rescue Efforts

34.     Beginning in the fall of 2008, the federal government instituted several measures to try to stabilize the housing and credit markets and assist troubled homeowners.

18

35.     In October 2008, the Emergency Economic Stabilization Act of 2008 (EESA) was passed to promote stability and liquidity in the financial system.  Among other things, EESA authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program (TARP).  TARP funds were used, in part, to promote various mortgage loan modification programs.

36.     *The Making Home Affordable (MHA) Program.*  In March 2009, the United States launched the MHA Program.  The MHA Program included the Home Affordable Modification Program (HAMP), a Treasury program that uses TARP funds to provide incentives for mortgage servicers to modify eligible first-lien mortgages.

37.     HAMP uses incentive payments to encourage loan servicers and owners of mortgage loans or bonds backed by mortgage loans to modify eligible first lien mortgages so that monthly payments of homeowners who are in default or at imminent risk of default will be reduced to affordable and sustainable levels.

38.     *The Home Price Decline Protection Incentives (HPDP) initiative.* The HPDP initiative is designed to encourage modifications of loans in markets hardest hit by falling home prices.   The HPDP initiative provides investors with additional incentives for loan modifications on properties located in areas where home prices have recently declined and where investors are concerned that price declines may persist.

39.     *The Principal Reduction Alternative (PRA).*  PRA is designed to encourage the use of principal reduction in modifications for eligible borrowers whose homes are worth significantly less than the remaining outstanding principal

balances of their first-lien mortgage loans.  It provides investor incentives to offset a portion of the principal reduction.

40.     *The Home Affordable Unemployment Program (UP).*  UP is designed to offer assistance to unemployed homeowners through temporary forbearance of a portion of their mortgage payments.

41.     *The Home Affordable Foreclosure Alternatives Program (HAFA).* HAFA is designed to provide incentives to servicers, investors and borrowers to utilize short sales and deeds-in-lieu of foreclosure for HAMP-eligible loans in cases in which the borrower can no longer afford to stay in their home but want to avoid foreclosure.  Under this program, the servicer releases the lien against the property and the investor waives all rights to seek a deficiency judgment against a borrower who uses a short sale or deed-in-lieu when the property is worth less than the outstanding principal balance of the mortgage.

42.     *The Second Lien Modification Program (2MP).*  2MP is designed to modify second lien mortgages when a corresponding first lien is modified under HAMP.

43.     *The FHA-HAMP Program.*  The FHA-HAMP Program is designed to provide compensation to the holders and servicers of FHA-insured mortgages that are modified under FHA-HAMP, to reduce payments to more affordable levels.

44.     *The Treasury/FHA Second-Lien Program (FHA2LP).*  FHA2LP is designed to facilitate refinancing under the FHA Short Refinance Program by reducing second liens.  Treasury provides incentives to participating servicers and

investors who agree to partial or full extinguishment of second liens associated
with an FHA refinance.

45.     *The FHA Refinance for Borrowers with Negative Equity (FHA
Short Refinance) Program.*  This program is partially supported by TARP funds
and allows servicers and investors who write down a borrower's principal balance
on a non-FHA-insured, existing, underwater, first-lien mortgage loan in
connection with a refinancing to obtain FHA insurance on the newly refinanced
mortgage.  Treasury has provided a TARP-funded letter of credit for up to $8
billion in loss coverage on these newly refinanced FHA loans.

46.     *Housing Finance Agency Hardest Hit Fund (HHF).*  HHF is a
TARP-funded program designed to fund foreclosure prevention programs run by
state housing finance agencies in states hit hardest by the decrease in home prices
and in states with high unemployment rates.  Eighteen states and Washington,
D.C. have received approval for aid through this program.

### FACTUAL ALLEGATIONS

**A.     The Banks' Servicing Misconduct**

47.     Each of the Banks services home mortgage loans secured by
residential properties owned by individual citizens of the Plaintiff States, and of
the United States.

48.     Each Bank is engaged in trade or commerce in each of the Plaintiff
States and is subject to the consumer protection laws of the States in the conduct
of their debt collection, loss mitigation and foreclosure activities.  The consumer

protection laws of the Plaintiff States include laws prohibiting unfair or deceptive practices.

### 1.    The Banks' Unfair, Deceptive, and Unlawful Servicing Processes

49.    Under the States' consumer protection laws, the Banks are prohibited from engaging in unfair or deceptive practices with respect to consumers.

50.    In the course of their conduct, management and oversight of loan servicing in the Plaintiff States, the Banks have engaged in a pattern of unfair and deceptive practices.

51.    The Banks' unfair and deceptive practices in the discharge of their loan servicing activities, include, but are not limited to, the following:

a.    failing to timely and accurately apply payments made by borrowers and failing to maintain accurate account statements;

b.    charging excessive or improper fees for default-related services;

c.    failing to properly oversee third party vendors involved in servicing activities on behalf of the Banks;

d.    imposing force-placed insurance without properly notifying the borrowers and when borrowers already had adequate coverage;

e.    providing borrowers false or misleading information in response to borrower complaints; and

f.    failing to maintain appropriate staffing, training, and quality control systems.

2.      **The Banks' Unfair, Deceptive, and Unlawful Loan Modification and Loss Mitigation Processes**

52.      Under the States' consumer protection laws, the Banks are prohibited from engaging in unfair or deceptive practices with respect to consumers.

53.      Pursuant to HUD regulations and FHA guidance, FHA-approved mortgage lenders and their servicers are required to engage in loss-mitigation efforts to avoid the foreclosure of HUD-insured single family residential mortgages. E.g., 24 C.F.R. § 203.500 et seq.; Mortgagee Letter 2008-07 ("Treble Damages for Failure to Engage in Loss Mitigation") (Sept. 26, 2008); Mortgagee Letter 1996-25 ("Existing Alternatives to Foreclosure -- Loss Mitigation") (May 8, 1996).  Thus, when acting as a servicer, the Banks were required to refrain from foreclosing on any FHA insured mortgage where a default could be addressed by modifying the terms of the mortgage or other less-costly alternatives to foreclosure were available.

54.      Under the Treasury's various rescue and stimulus programs, the Banks received monetary incentives from the Federal government in exchange for the commitment to make efforts to modify defaulting borrowers' single family residential mortgages.  See, e.g., Making Home Affordable Handbook v.1.0, ch. 13 ("Incentive Compensation") (Aug. 19, 2010).  Under the programs, the Banks agreed to fulfill requirements set forth in program guidelines and servicer participation agreements.

23

55.      Each of the Banks regularly conducts or manages loan modifications on behalf of the entities that hold the loans and mortgages and that hired the Banks as servicers.

56.      In the course of their servicing and oversight of mortgage loans, the Banks violated federal laws, program requirements and contractual requirements governing loss mitigation.

57.      In the course of their conduct, management and oversight of loan modifications in the plaintiff States, the Banks have engaged in a pattern of unfair and deceptive practices.

58.      The Banks' failure to discharge their required loan modification obligations, and related unfair and deceptive practices, include, but are not limited to, the following:

     a.      failing to perform proper loan modification underwriting;

     b.      failing to gather or losing loan modification application documentation and other paper work;

     c.      failing to provide adequate staffing to implement programs;

     d.      failing to adequately train staff responsible for loan modifications;

     e.      failing to establish adequate processes for loan modifications;

     f.      allowing borrowers to stay in trial modifications for excessive time periods;

     g.      wrongfully denying modification applications;

24

h.      failing to respond to borrower inquiries;

i.      providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

j.      providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

k.      providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during trial loan modification periods;

l.      misrepresenting to borrowers that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts;

m.      failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

n.      falsely advising borrowers that they must be at least 60 days delinquent in loan payments to qualify for a loan modification;

o.      miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

p.      misleading borrowers by representing that loan
modification applications will be handled promptly when Banks regularly
fail to act on loan modifications in a timely manner;

q.      failing to properly process borrowers' applications for loan
modifications, including failing to account for documents submitted by
borrowers and failing to respond to borrowers' reasonable requests for
information and assistance;

r.      failing to assign adequate staff resources with sufficient
training to handle the demand from distressed borrowers; and

s.      misleading borrowers by providing false or deceptive
reasons for denial of loan modifications.

**3.      Wrongful Conduct Related to Foreclosures**

59.      Under the States' consumer protection laws, the Banks are
prohibited from engaging in unfair or deceptive practices with respect to
consumers.

60.      FHA regulations and guidance and HAMP and other MHA
servicer participation agreements establish requirements to be followed in the
foreclosure of single family residential mortgages that are FHA insured, or where
the servicer conducting the foreclosure is an MHA participant.

61.      Each of the Banks regularly conducts or manages foreclosures on
behalf of entities that hold mortgage loans and have contracted with the Bank to
service such loans.

26

62.     In the course of their conduct, management, and oversight of
foreclosures, the Banks violated FHA and MHA foreclosure requirements.

63.     In the course of their conduct, management, and oversight of
foreclosures in the plaintiff States, the Banks have engaged in a pattern of unfair
and deceptive practices.

64.     The Banks' failure to follow appropriate foreclosure procedures,
and related unfair and deceptive practices include, but are not limited to, the
following:

a.      failing to properly identify the foreclosing party;

b.      charging improper fees related to foreclosures;

c.      preparing, executing, notarizing or presenting false and
misleading documents, filing false and misleading documents with courts
and government agencies, or otherwise using false or misleading
documents as part of the foreclosure process (including, but not limited to,
affidavits, declarations, certifications, substitutions of trustees, and
assignments);

d.      preparing, executing, or filing affidavits in foreclosure
proceedings without personal knowledge of the assertions in the affidavits
and without review of any information or documentation to verify the
assertions in such affidavits.  This practice of repeated false attestation of
information in affidavits is popularly known as "robosigning."  Where
third parties engaged in robosigning on behalf of the Banks, they did so
with the knowledge and approval of the Banks;

27

e.      executing and filing affidavits in foreclosure proceedings
that were not properly notarized in accordance with applicable state law;

f.      misrepresenting the identity, office, or legal status of the
affiant executing foreclosure-related documents;

g.      inappropriately charging servicing, document creation,
recordation and other costs and expenses related to foreclosures; and

h.      inappropriately dual-tracking foreclosure and loan
modification activities, and failing to communicate with borrowers with
respect to foreclosure activities.

## B.      The Banks' Origination Misconduct

### 1.      Unfair and Deceptive Origination Practices

65.      Under the States' consumer protection laws, the Banks are
prohibited from engaging in unfair or deceptive practices with respect to
consumers.

66.      Each of the Banks regularly originates mortgage loans.

67.      In the course of their origination of mortgage loans in the Plaintiff
States, the Banks have engaged in a pattern of unfair and deceptive practices.
Among other consequences, these practices caused borrowers in the Plaintiff
States to enter into unaffordable mortgage loans that led to increased foreclosures
in the States.

### 2.      The Direct Endorsement Program

68.      The FHA's Direct Endorsement Program is a vital part of its
single-family insured mortgage program.  Under the Direct Endorsement

Program, the FHA does not review or approve borrower loan applications.

Rather, the FHA approves lenders, called Direct Endorsement Lenders (DE

Lenders), which have the responsibility and obligation for underwriting the loan

and determining whether a proposed mortgage is eligible for FHA insurance

according to FHA rules and requirements.  Unconditional DE Lenders employ

Direct Endorsement Underwriters, who are authorized to perform the

underwriting of mortgage loans to be insured by the FHA.  The DE Lenders give

the FHA full information and documentation about an underwritten loan only

after the mortgage has closed, and both the underwriter and DE Lender certify

compliance with FHA requirements in submitting the loan for mortgage

insurance.  Although the FHA conducts regular desk reviews and brings

enforcement actions, the FHA does not, and given its resources cannot, review the

details of every loan. The FHA therefore relies on the underwriter's and DE

Lender's certifications and due diligence as evidence of the insurability of a

mortgage.

   69.  DE Lenders are responsible for all aspects of the mortgage

application, the property analysis, and loan underwriting.  The FHA relies on DE

Lenders to determine (1) a borrower's ability and willingness to repay a mortgage

loan, 24 C.F.R. § 203.5(d), and (2) appraisal of the property offered as security.

24 C.F.R. § 203.5(e)(3).

   70.  Careful compliance by DE Lenders with all FHA requirements is

important in part because if a borrower defaults on an FHA-insured mortgage, the

holder of the mortgage can submit a claim to the FHA for any loss associated with the defaulted mortgage.

71.     FHA regulations provide that each DE Lender owes the FHA the duty to "exercise the same level of care which it would exercise in obtaining and verifying information for a loan in which the mortgagee would be entirely dependent on the property as security to protect its investment."  24 C.F.R. § 203.5(c).  DE Lenders also owe the FHA a common law duty of due diligence.  See 48 Fed. Reg. 11928, 11932 (Mar. 22, 1983).  In addition, a fiduciary relationship exists between DE Lenders and the FHA.  DE Lenders have a duty to the FHA to act with the utmost good faith, candor, honesty, integrity, fairness, undivided loyalty, and fidelity, and to refrain from taking advantage of the FHA by misrepresentation or lack of disclosure.  DE Lenders are required to exercise sound judgment, prudence, and due diligence on behalf of the FHA in endorsing mortgages for FHA insurance.

72.     DE Lenders are required to be familiar with, and to comply with, the current versions of governing FHA Handbooks and Mortgagee Letters, including HUD Handbook 4155.1, Mortgage Credit Analysis for Mortgage Insurance on One- to Four-Unit Mortgage Loans, HUD Handbook 4155.2, Lender's Guide to the Single Family Mortgage Insurance Process, and HUD Handbook 4150.2, Valuation Analysis for Single Family One- to Four-Unit Dwellings.

### 3.    Failure to Comply with Underwriting Requirements

73.    At all relevant times, Countrywide was a mortgage lender that participated in HUD's Direct Endorsement Program.  Subject to the requirements of the program, Countrywide was authorized to "originate" - i.e., make - and to underwrite mortgage loans to first-time and low-income home buyers and to low-income home owners refinancing mortgages, that were insured by the FHA, an agency within HUD.  In exchange for having the authority to originate and underwrite FHA-insured loans, Countrywide was obligated to determine whether prospective borrowers meet minimal credit-worthiness criteria and to certify to HUD that borrowers who received loans met the criteria.  In the event that an FHA-insured loan originated by Countrywide goes into default, the FHA has guaranteed payment of the outstanding portion of the mortgage principal, accrued interest, and costs owed by the borrower.

74.    During the period 2003 through April 30, 2009, Countrywide knowingly failed to comply with HUD regulations and requirements of the Direct Endorsement Program governing the origination and underwriting of FHA-insured loans.  As a result, the FHA has thus far incurred hundreds of millions of dollars in damages with respect to claims paid for loans that Countrywide knowingly made to unqualified borrowers.  Additionally, thousands of the Countrywide loans are currently in default and have not yet been submitted as claims to the FHA.

75.    BOA has submitted claims for payment to the FHA with respect to FHA-insured mortgage loans originated and underwritten by Countrywide in

31

contravention of HUD regulations and the requirements of the Direct

Endorsement Program during the period 2003 through April 30, 2009.

### 4.     Failure to Comply With Quality Control Requirements

76.     To qualify as a DE Lender, a lender has to have a fully functioning

Quality Control (QC) Program that complies with FHA requirements from the

date of its initial FHA approval until final surrender or termination of its approval.

77.     QC plans ensure that DE Lenders follow all the FHA requirements,

ensure that procedures and personnel used by DE Lenders meet FHA

requirements, and provide for the correction, where necessary, and reporting of

problems once a DE Lender becomes aware of their existence.

78.     Under its QC requirements, the FHA requires DE Lenders to

review all early payment defaults.  Early payment defaults are mortgages that go

into default (i.e., are more than 60 days past due) within the first six payments of

the mortgage.

79.     Early payment defaults may indicate problems in the underwriting

process.  DE Lenders are required to review early payment defaults so they can

identify, correct, and report them to the FHA.

80.     A DE Lender whose QC program fails to provide for appropriate

review of each early payment default is in violation of the FHA's QC

requirements.

81.     The Banks submitted loans for insurance endorsement or claims

for insurance benefits for FHA loans that the Banks endorsed or underwrote as a

participant in the FHA's Direct Endorsement Program while failing to implement applicable QC measures.

82.      The Banks failed to review early payment defaults.

83.      The Banks failed to dedicate sufficient staff to QC.

84.      The Banks failed to address dysfunctions in their QC system.

85.      The FHA has paid insurance claims relating to mortgages insured by FHA based on the Banks' false certifications that they had properly established and functioning QC programs.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about the Banks' QC failures.

86.      To get and maintain DE Lender status, a DE Lender has to submit an annual certification to the FHA, stating that it conforms to all HUD/FHA regulations, handbooks, and policies.

87.      Absent such a certification, a DE Lender cannot submit a mortgage for FHA insurance endorsement.

88.      Contrary to the annual certifications made by the Banks, they failed to have QC programs as mandated by FHA requirements.

89.      The FHA has paid insurance claims relating to mortgages insured by FHA based on the Banks' false certifications.  The FHA would not have made a financial commitment to pay such mortgage insurance if it had known about the Banks' false certifications.

## C.    The Banks' Bankruptcy-Related Misconduct

90.    In the ordinary course of their businesses, the Banks regularly appear as creditors, or on behalf of creditors, in bankruptcy cases, including bankruptcy cases commenced in this district and over which this Court has original jurisdiction under 28 U.S.C. § 1334, seeking the payment of money from bankruptcy estates and/or prosecuting motions seeking relief from the automatic stay to foreclose on consumer mortgages.

91.    The Banks have bankruptcy procedures that are utilized or relied upon by the Banks and their attorneys, contractors, and other agents when the Banks file documents, including proofs of claim and motions seeking relief from the automatic stay in bankruptcy cases.  Use of these bankruptcy procedures has resulted in an insufficient level of oversight and safeguards regarding pleadings and documents filed by the Banks or their agents in bankruptcy cases and their conduct during the bankruptcy cases.

92.    Use of these bankruptcy procedures has resulted in the filing of signed pleadings and documents in bankruptcy cases as to which the signatory has not conducted a reasonable inquiry into the factual contentions or allegations, as required by applicable law, including Fed. R. Civ. P. 11 and Fed. R. Bankr. P. 9011.

93.    Use of these bankruptcy procedures has also resulted in a failure to exercise adequate supervision over the Banks' attorneys, contractors, and other agents in bankruptcy proceedings.

94.     As a result of the use of inadequate bankruptcy procedures, the
conduct of the Banks or their agents has resulted in, among other things, some or
all of the following:

a.     making representations that were inaccurate, misleading,
false, or for which the Banks, at the time, did not have a reasonable basis
to make, including without limitation representations contained in proofs
of claim under 11 U.S.C. § 501, motions for relief from the automatic stay
under 11 U.S.C. § 362, or other documents;

b.     filing proofs of claim, motions for relief from stay, or other
documents that failed to include documentation required under the Federal
Rules of Bankruptcy Procedure, local court rules, local court standing
orders, or other applicable rules or law, such as the original or a duplicate
of the writing on which the secured claim is based, evidence that the
security interest has been perfected, a statement setting forth the terms of
and any documentation of a transfer of the claim, or other documentation;

c.     filing lost note affidavits in connection with proofs of
claim, motions for relief from stay, or other documents that were
inaccurate, misleading, or false, or for which the Banks, at the time, did
not have a reasonable basis to make;

d.     filing proofs of claim, motions for relief from stay, or other
documents where the Banks sought payment from debtors or bankruptcy
estates for amounts that the Banks were not legally entitled to collect, such
as seeking principal, interest, fees, escrow amounts, and/or advances that

35

were not incurred, were in excess of what is collectable under the loan
documents, were not reasonable or appropriate to protect the note holder's
interest in the property and rights under the security instrument, or were
inconsistent with an approved loan modification;

      e.      filing proofs of claim or motions for relief from stay
without required itemizations for principal, interest, fees, escrow amounts,
and/or advances;

      f.      filing proofs of claim, motions for relief from stay, or other
documents that inaccurately represented or failed to document ownership
of the claim or right to seek relief;

      g.      commencing collection activities against the debtor or the
debtor's property without court authorization, or in violation of the terms
of a confirmed chapter 13 plan, the discharge injunction under 11 U.S.C. §
524, or the automatic stay under 11 U.S.C. § 362;

      h.      filing proofs of claim, motions for relief from stay, or other
documents or otherwise commencing collection activities seeking to
recover amounts on debts that have been paid or satisfied, including
through a refinance of the debt, or a sale or short sale of the collateral;

      i.      collecting, or attempting to collect, attorney's fees and
other charges for the preparation and filing of proofs of claim, motions for
relief from stay, or other documents, that the Banks ultimately withdrew
or that a court denied;

      j.      failing to promptly and accurately apply payments resulting in inaccurate loan accounting and wrongful or inaccurate allegations of loan defaults;

      k.      filing proofs of claim, motions for relief from stay, or other documents that inaccurately or falsely represented they were signed by a person with direct knowledge of the matters alleged in the filing;

      l.      filing affidavits or other documents requiring notarization where the Banks inaccurately or falsely represented that the documents were validly notarized;

      m.      failing to provide required notices to the debtor, trustee, or the court regarding payment changes resulting from a change in interest rate and/or escrow charges;

      n.      failing to provide notice to the debtor, trustee, or court regarding fees, charges, and expenses assessed or incurred after the petition date; or

      o.      failing to promptly provide a reconciliation of payments received with respect to the debtor's obligations in the case or failing to appropriately update the Banks' systems of record, including upon dismissal or closure of a bankruptcy case.

95.      The Banks implemented and relied upon inadequate bankruptcy procedures despite having actual or constructive notice that such procedures could, and did, lead to the errors described above.

96.    Use of these bankruptcy procedures has also resulted in the Banks seeking inappropriate relief from debtors under the Bankruptcy Code, including under 11 U.S.C. §§ 362 and 501, and in violation of 11 U.S.C. § 524.

**D.    Violation of Servicemembers Civil Relief Act (SCRA), 50 U.S.C. App. §§ 501-597b.**

97.    Financial firms responsible for servicing single family mortgages failed to determine consistently and accurately the military status of borrowers in foreclosure.

98.    As a result, the Defendants engaged in a pattern and practice of violating servicemembers' rights under the SCRA, including, but not limited to the following conduct:

a.    The Banks foreclosed upon mortgages without required court orders on properties that were owned by service members who, at the time, were on military service or were otherwise protected by the SCRA, and who had originated their mortgages before they entered into military service in violation of 50 U.S.C. App. § 533;

b.    The Banks failed to file an accurate affidavit stating that service members who had not entered an appearance in a civil action involving a foreclosure were at the time in military service or otherwise protected by the SCRA in violation of 50 U.S.C. App. § 521;

c.    The Banks wrongfully charged interest rates in excess of 6 percent per annum to servicemembers who were on military service or otherwise protected by the SCRA on mortgage debts that were incurred by servicemembers or servicemembers and their spouses jointly before

38

servicemembers entered military service and after servicemembers had

made valid requests to lower their interest rates, as provided for by the

SCRA.

99.     In the cases of the above-described wrongful conduct, affected

servicemembers had not waived their rights under a separate agreement, as

provided for by the SCRA, 50 U.S.C. App. § 527.

100.    The servicemembers affected by such wrongful conduct suffered

damages and are aggrieved persons under the SCRA, 50 U.S.C. App. § 517.

101.    The Banks engaged in the foregoing conduct in disregard of the

rights of the affected servicemembers.

## COUNT I

### UNFAIR AND DECEPTIVE CONSUMER PRACTICES
### WITH RESPECT TO LOAN SERVICING

102.    The allegations in paragraphs 1 through 101 above are

incorporated herein by reference.

103.    The loan servicing conduct of the Banks, as described above,

constitutes unfair or deceptive practices in violation of the consumer protection

laws of each State.

104.    The Banks' unlawful conduct has resulted in injury to the States

and citizens of the States who have had home loans serviced by the Banks.  The

harm sustained by such citizens includes payment of improper fees and charges,

unreasonable delays and expenses to obtain loss mitigation relief, improper denial

of loss mitigation relief, and loss of homes due to improper, unlawful, or

undocumented foreclosures.  The harm to the States includes the subversion of

their legal process and the sustained violations of their laws.  The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

## COUNT II

### UNFAIR AND DECEPTIVE CONSUMER PRACTICES
### WITH RESPECT TO FORECLOSURE PROCESSING

105.   The allegations in paragraphs 1 through 101 above are incorporated herein by reference.

106.   The foreclosure processing conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

107.   The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks.  The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm to the States includes the subversion of their legal process and the sustained violations of their laws.  The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

## COUNT III

### UNFAIR AND DECEPTIVE CONSUMER PRACTICES
### WITH RESPECT TO LOAN ORIGINATION

108.    The allegations in paragraphs 1 through 101 above are incorporated herein by reference.

109.    The loan origination conduct of the Banks, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of each State.

110.    The Banks' unlawful conduct has resulted in injury to the States and citizens of the States who have had home loans serviced by the Banks. The harm sustained by such citizens includes payment of improper fees and charges, unreasonably high mortgage payments, unaffordable mortgages, and loss of homes. The harm to the States includes the subversion of their legal processes and the sustained violations of their laws. The States have had to incur substantial expenses in the investigations and attempts to obtain remedies for the Banks' unlawful conduct.

## COUNT IV

### VIOLATIONS OF THE FALSE CLAIMS ACT,
### 31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(C) and (a)(1)(G) (2009),
### and 31 U.S.C. §3729(a)(1), (a)(2), (a)(3) and (a)(7) (1986)

111.    The allegations in paragraphs 1 through 101 above are incorporated herein by reference.

112.    By virtue of the acts described above, the Banks knowingly presented or caused to be presented to the United States false or fraudulent claims

41

for payment or approval, including but not limited to improper claims for payment of FHA residential mortgage insurance or guarantees.

113.    In so doing, the Defendants acted knowingly; that is, the Banks possessed actual knowledge that the claims for payment were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the claims for payment; or acted in reckless disregard of the truth or falsity of the claims for payment.

114.    By virtue of the acts described above, the Banks made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

115.    In so doing, the Defendants acted knowingly; that is, the Banks possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the information, statements and representations; or acted in reckless disregard of the truth or falsity of the information, statements and representations.

116.    By virtue of the acts described above, the Banks made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, and concealed or improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

117.    In so doing, the Defendants acted knowingly; that is, the Banks possessed actual knowledge that the information, statements and representations were false or fraudulent; acted in deliberate ignorance of the truth or falsity of the

information, statements and representations; or acted in reckless disregard of the

truth or falsity of the information, statements and representations.

118.    By virtue of the acts described above, the Banks conspired with

one or more persons: to present or cause to be presented to the United States false

or fraudulent claims for payment or approval; to make, use, or cause to be made

or used, a false record or statement material to a false or fraudulent claim; and, to

make, use, or cause to be made or used, a false record or statement material to an

obligation to pay or transmit money or property to the government; or to conceal

or improperly avoid or decrease an obligation to pay or transmit money or

property to the United States.

### COUNT V

### VIOLATION OF THE FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989, 12 U.S.C. § 1833A (FIRREA)

119.    The allegations in paragraphs 1 through 101 above are

incorporated herein by reference.

120.    The Banks knowingly made or presented false and fictitious claims

to Departments of the United States.

121.    The claims were material to decisions of the United States.

122.    In connection with matters within the jurisdiction of the United

States, the Banks knowingly and willfully engaged in conduct that:  (a) falsified,

concealed or covered up by artifices, schemes or devices, material facts, (b) made

statements and representations that violate 18 U.S.C. § 1001(a), and (c) made and

used false writings or documents knowing the same to contain materially false
and fictitious statements and entries.

123.    The Banks' schemes affected federally insured financial
institutions.

## COUNT VI

### VIOLATION OF THE SERVICEMEMBERS CIVIL RELIEF ACT, 50 U.S.C. APP. §§ 501, ET SEQ.

124.    The allegations in paragraphs 1 through 101 above are
incorporated herein by reference.

125.    The financial firms engaged in the wrongful conduct described
herein violated the protections afforded servicemembers by the SCRA and 50
U.S.C. App. §§ 521, 527 and 533 and constituted a pattern or practice of
violation.

126.    The servicemembers affected by such wrongful conduct suffered
damages and are aggrieved persons under the SCRA.

127.    The financial firms engaged in the wrongful conduct described
herein acted intentionally, willfully, and/or in disregard of the rights of the
affected servicemembers.

## COUNT VII

### DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 and 2202 REGARDING THE BANKS' BANKRUPTCY MISCONDUCT

128.    The allegations in paragraphs 1 through 101 above are
incorporated herein by reference.

129.    The Banks implemented and relied on inadequate bankruptcy procedures and thereby have prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, have caused increased errors, delays, and costs of administration in bankruptcy cases, and constitute a continuing abuse of the bankruptcy process.

130.    The Banks implemented and relied on inadequate bankruptcy procedures and thereby have violated the standards of conduct required of creditors by applicable law, including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or have caused violations of such law.

131.    The Banks implemented and relied upon inadequate bankruptcy procedures that abused the bankruptcy process.

132.    The Banks' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by the Banks.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct has also caused the United States to assume increased administrative duties in monitoring bankruptcy cases, and to incur expenses in the investigations and litigation of the Banks' unlawful conduct.

## COUNT VIII

### DAMAGES UNDER COMMON LAW
### RELATED TO THE BANKS' BANKRUPTCY MISCONDUCT

133.    The allegations in paragraphs 1 through 101 above are incorporated herein by reference.

134.    The Banks implemented and relied on inadequate bankruptcy procedures and thereby has prejudiced debtors, creditors, including the United States, and the courts in bankruptcy cases, has led to increased errors, delays, and costs of administration in bankruptcy cases, and constitutes a continuing abuse of the bankruptcy process.

135.    The Banks' abuse of the bankruptcy process violated a duty or duties owed by the Banks to the debtors, the courts, and other parties in such bankruptcy cases, including the United States.

136.    The Banks' abuse of the bankruptcy process violates a federal policy, reflected in the Bankruptcy Code and the Bankruptcy Rules, in favor of the efficient and equitable administration of bankruptcy cases, as well as the policy of ensuring accuracy in claims submitted to the bankruptcy courts.

137.    The Banks' unlawful conduct has resulted in injury to the United States and to debtors in bankruptcy who have had their home loans serviced by the Banks.  The harm sustained by such debtors includes payment of improper fees and charges, unreasonable delays and expenses in their bankruptcy cases, and loss of homes due to improper, unlawful, or undocumented foreclosures.  The harm sustained by the United States includes reduced and delayed recoveries to the United States in its capacity as a creditor in bankruptcy cases.  Such conduct

has also caused the United States to assume increased administrative duties in
monitoring bankruptcy cases, and to incur expenses in the investigations and
litigation of the Banks' unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, the United States and the Plaintiff States respectfully
request that judgment be entered in their favor and against the Banks as follows:

1.      On Count I, judgment against the Defendants, injunctive relief to
restrain the Banks from further unlawful conduct; an order requiring
disgorgement of unlawful gains obtained by the Banks as a result of their
unlawful conduct; restitution or other remedial relief to compensate individual
victims of the Banks' unlawful conduct; civil penalties; and attorney fees and
costs of investigation.

2.      On Count II, judgment against the Defendants, injunctive relief to
restrain the Banks from further unlawful conduct; an order requiring
disgorgement of unlawful gains obtained by the Banks as a result of their
unlawful conduct; restitution or other remedial relief to compensate individual
victims of the Banks' unlawful conduct; civil penalties; and attorney fees and
costs of investigation.

3.      On Count III, judgment against the Defendants, injunctive relief to
restrain the Banks from further unlawful conduct; an order requiring
disgorgement of unlawful gains obtained by the Banks as a result of their
unlawful conduct; restitution or other remedial relief to compensate individual

victims of the Banks' unlawful conduct; civil penalties; and attorney fees and costs of investigation.

4.      On Count IV, judgment against the Defendants, for treble damages and civil penalties in an amount as the Court may determine between $5,500 and $11,000 for each violation;

5.      On Count V, for a civil penalty of up to $1 million dollars for each violation, plus such other relief as is in connection with each false entry or assignment, or such greater amount as provided by law;

6.      On Count VI, declaratory and injunctive relief, as appropriate, and an award of damages to be paid to each identifiable victim of the Defendants' violations of the SCRA;

7.      On Counts VII and VIII, for appropriate declaratory relief and for compensatory damages, in an amount to be determined at trial, and for necessary post-judgment relief to prohibit the Defendants from violating 11 U.S.C. §§ 362 and 501, and from acting in violation of 11 U.S.C. § 524; and

8.      For all other and further relief as the Court may deem just proper and equitable.

LORETTA E. LYNCH
United States Attorney for the
Eastern District of New York
RICHARD K. HAYES
KENNETH M. ABELL
271 Cadman Plaza East, 7th
Floor
Brooklyn, NY 11201
Tel.: 718-254-7000
Fax: 718-254-6479

WILLIAM N. NETTLES
United States Attorney for the
District of South Carolina
FRAN C. TRAPP
JENNIFER J. ALDRICH
Wells Fargo Building
1441 Main Street Suite 500
Columbia, SC 29201
Tel.: 803-929-3005
Fax: 803-254-2912

ANNE M. TOMPKINS
United States Attorney for the
Western District of
North Carolina
DAVID A. BROWN
DONALD H. CALDWELL
Carillon Building
227 West Trade Street
Suite 1650
Charlotte, NC 28202
Tel.: 704-344-6222
Fax: 704-344-6629

TONY WEST
Acting Associate Attorney General

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

RONALD C. MACHEN JR.
United States Attorney for the
District of Columbia

KEITH V. MORGAN
Assistant United States Attorney
United States Attorney's Office
555 4th Street, NW, Room E4814
Washington, DC 20530
Tel.: 202-514-7228
Fax: 202-514-8780

RAMONA ELLIOTT
General Counsel
Executive Office for U.S. Trustees
20 Massachusetts Ave., NW Suite 8000
Washington, DC 20530
Tel.: 202-307-1399
Fax: 202-307-2397

For the State of Alabama:


_____

LUTHER STRANGE
Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL  36130
Tel.:  334-242-7335
Fax:  334-242-2433

For the State of Alaska:


CYNTHIA C. DRINKWATER
Assistant Attorney General
Alaska Attorney General's Office
1031 W. 4th Avenue, Ste. 200
Anchorage, AK  99501
Tel.:   907-269-5200
Fax:   907-264-8554

For the State of Arizona:


THOMAS C. HORNE
Arizona Attorney General
by Carolyn R. Matthews
Assistant Attorney General
1275 W. Washington
Phoenix, AZ  85007
Tel.:   602-542-7731
Fax:   602-542-4377

52

For the State of Arkansas


By: _____

JAMES B. DEPRIEST
Deputy Attorney General
Office of the Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas  72201
Tel.:  501-682-5028
Fax:  501-682-8118

For the State of California:

MICHAEL A. TRONCOSO
Senior Counsel to the Attorney General
455 Golden Gate Avenue, Ste. 14500
San Francisco, CA 94102-7007
Tel.:   415-703-1008
Fax:    415-703-1016

54

For the State of Colorado, *ex. rel.*
JOHN W. SUTHERS, Attorney General:

_____
ANDREW P. MCCALLIN
First Assistant Attorney General
Consumer Protection Section
Colorado Attorney General's Office
1525 Sherman Street – 7th Floor
Denver, Colorado 80203
Tel.:   303- 866-5134
Fax:   303- 866-4916

For the State of Connecticut:

MATTHEW J. BUDZIK
JOSEPH J. CHAMBERS
Assistant Attorneys General
Office of the Connecticut Attorney General
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5270
Fax: 860-808-5385

For the State of Delaware:

IAN R. McCONNEL
Deputy Attorney General
Delaware Department of Justice
Attorney General's Office
820 N. French Street
Wilmington, DE  19801
Tel.:   302-577-8533
Fax:   302-577-8426

For the District of Columbia:

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division

_B_____tt Rushkoff_____
BENNETT RUSHKOFF  (Bar #386925)
Chief, Public Advocacy Section
Office of the Attorney General
441 Fourth Street, N.W., Suite 600-S
Washington, DC  20001
Tel: 202- 727-5173 phone
Fax: 202-730-1469 fax
bennett.rushkoff@dc.gov

For the State of Florida:

_____

Pamela Jo Bondi
Attorney General
The Capitol PL-01
Tallahassee, FL 32399-1050
Tel:    850-245-0140
Fax:    850-413-0632


Patricia A. Conners
Associate Deputy Attorney General


_____

Victoria A. Butler
Assistant Attorney General
Bureau Chief, Economic Crimes Division
3507 E. Frontage Road
Suite 325
Tampa, FL 33607
Tel:    813-287-7950
Fax:    813-281-5515

For the State of Georgia:


JEFFREY W. STUMP
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
Tel.:   404-656-3337
Fax:    404-656-0677

For the State of Hawaii:

_____
DAVID M. LOUIE
Attorney General, State of Hawaii
Department of the Attorney General
425 Queen Street
Honolulu, Hawaii  96813
Tel:  808-586-1500
Fax:  808-586-1239

For the State of Idaho
LAWRENCE WASDEN, Attorney General:


_____

BRETT T. DELANGE
Deputy Attorney General
Office of the Idaho Attorney General
700 W. Jefferson St.
P.O. Box 83720
Boise, ID 83720-0010
Tel.:   208-334-2400
Fax:   208-854-8071

For the State of Illinois:


DEBORAH HAGAN
Chief, Consumer Protection Division
Illinois Attorney General's Office
500 South Second Street
Springfield, IL 62706
Tel.:   217-782-9021
Fax:   217-782-1097

For the State of Indiana:

For the Indiana Department of
Financial Institutions:

ABIGAIL LAWLIS KUZMA
Director and Chief Counsel
Consumer Protection Division
Indiana Office of Attorney
General
302 West Washington St.
IGCS 5th Fl.
Indianapolis, Indiana 46204
Tel.:   317-234-6843
Fax:   317-233-4393

DAVID H. MILLS
Director
Indiana Department of Financial
Institutions
30 South Meridian Street
Suite 300
Indianapolis, Indiana  46204
Tel.:   317-233-9460
Fax:   317-232-7655

23

For the State of Indiana:


ABIGAIL LAWLIS KUZMA
Director and Chief Counsel
Consumer Protection Division
Indiana Office of Attorney General
302 West Washington St., IGCS 5th Fl.
Indianapolis, Indiana 46204
Tel.:   317-234-6843
Fax:   317-233-4393

64

For the State of Iowa:


THOMAS J. MILLER
Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Tel:  515-281-5164
Fax:  515- 281-4209

For the State of Kansas:

MEGHAN E. STOPPEL
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
Tel.:   785-296-3751
Fax:   785-291-3699

For the Office of the Attorney
General of Kentucky:


JACK CONWAY
Attorney General
Commonwealth of Kentucky
State Capitol, Suite 118
700 Capital Avenue
Frankfort, Kentucky 40601-3449
Tel.:   502-696-5300
Fax:   502-564-2894

67

For the Office of the Attorney
General of Kentucky:

JACK CONWAY
Attorney General
Commonwealth of Kentucky
State Capitol, Suite 118
700 Capital Avenue
Frankfort, Kentucky 40601-3449
Tel.:  502-696-5300
Fax:  502-564-2894

For the Kentucky Department of
Financial Institutions:

CHARLES A. VICE
Commissioner
Kentucky Department of Financial
Institutions
1025 Capital Center Drive
Suite 200
Frankfort, KY  40601
Tel.:  502-573-3390
Fax:  502-573-8787

26

For the State of Louisiana:

JAMES D. "BUDDY" CALDWELL
Attorney General


SANETTRIA GLASPER PLEASANT
Louisiana State Bar # 25396
Assistant Attorney General
Director of Public Protection Division
1885 North Third Street, 4th Floor
Baton Rouge, LA 70802
Tel: 225-326-6452
Fax: 225-326-6498

For the State of Maine:

WILLIAM J. SCHNEIDER
Attorney General
Burton Cross Office Building, 6th Floor
111 Sewall Street
Augusta, Maine 04330
Tel.:  207-626-8800
Fax:  207-624-7730

69

For the State of Maryland:


KATHERINE WINFREE
Chief Deputy Attorney General
Office of the Attorney General
 of Maryland
200 Saint Paul Place
Baltimore, MD  21202
Tel:  410-576-6311
Fax:  410-576-7036
Bar Number 306662

For The Commonwealth Of
Massachusetts:

MARTHA COAKLEY
Attorney General


AMBER ANDERSON VILLA
Mass. BBO #647566
*Assistant Attorney General*
Public Protection and Advocacy Bureau
Consumer Protection Division
One Ashburton Place
Boston, MA 02108
Tel: 617-727-2200

For the State of Michigan:


_____
BILL SCHUETTE
Attorney General
D.J. Pascoe
Assistant Attorney General
525 W. Ottawa Street
PO Box 30755
Lansing, MI 48909
Tel.:   517-373-1160
Fax:   517-335-3755

For the State of Mississippi:


BRIDGETTE W. WIGGINS
Special Assistant Attorney General
Mississippi Attorney General's Office
Post Office Box 22947
Jackson, MS  39225-2947
Tel.:   601-359-4279
Fax:    601-359-4231

For the State of Missouri:

CHRIS KOSTER
Attorney General

DOUGLAS M. OMMEN
Chief Counsel
Consumer Protection Division
PO Box 899
Jefferson City, MO  65102
Tel.:   573-751-7007
Fax:   573-751-2041

For the State of Montana:

STEVE BULLOCK
Attorney General
JAMES P. MOLLOY
Assistant Attorney General
Montana Department of Justice
215 N. Sanders
Helena MT 59624
Tel.:   406-444-2026
Fax:   406-444-3549

For the State of Nebraska:

JON BRUNING, Attorney General

ABIGAIL M. STEMPSON
Assistant Attorney General
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
Tel.:   402-471-2811
Fax:   402-471-4725

For the State of Nevada:

CATHERINE CORTEZ MASTO
Attorney General

C. WAYNE HOWLE
Solicitor General
Nevada State Bar #3443
100 North Carson Street
Carson City, Nevada  89701
Tel:  775- 684-1232
Fax:  775-684-1108

For the State of New Hampshire:

MICHAEL A. DELANEY
Attorney General
N.H. Department of Justice
33 Capitol Street
Concord, New Hampshire 03301
Tel.:   603-271-3658
Fax:   603-271-2110

For the State of New Jersey:

JEFFREY S. CHIESA
ATTORNEY GENERAL OF NEW JERSEY

By:_____

LORRAINE K. RAK
Deputy Attorney General
Chief, Consumer Fraud Prosecution Section
Division of Law
124 Halsey Street – 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
Tel.: 973-877-1280
Fax: 973-648-4887

For the State of New Mexico:


GARY K. KING, Attorney General
KAREN J. MEYERS, Assistant Attorney General
Office of New Mexico Attorney General
PO Drawer 1508
Santa Fe, NM 87504-1508
Tel:  505-222-9100
Fax:  505-222-9033

For the State of New York:

JEFFREY K. POWELL
Deputy Bureau Chief
Bureau of Consumer Frauds & Protection
Office of the New York State Attorney General
120 Broadway
New York, NY 10271
Tel.:   212-416-8309
Fax:   212-416-6003

For the Attorney General of North Carolina:

ROY COOPER
Attorney General

 /HA with authorization

PHILIP A. LEHMAN
Assistant Attorney General
N.C. Department of Justice
P. O. Box 629
Raleigh, NC 27602
Tel.:   919-716-6000
Fax:   919-716-6019
Email:  plehman@ncdoj.gov

For the State of North Dakota

WAYNE STENEHJEM
Attorney General

PARRELL D. GROSSMAN
(ID No. 04684)
Assistant Attorney General
Director, Consumer Protection and
Antitrust Division
Office of Attorney General
Gateway Professional Center
1050 E Interstate Ave, Ste. 200
Bismarck, ND  58503-5574
Tel:  701-328-5570
Fax: 701-328-5568

For the Ohio Attorney General
MIKE DEWINE:


_____
MATTHEW J. LAMPKE
JEFFREY R. LOESER
SUSAN A. CHOE
Assistant Attorneys General
Ohio Attorney General
30 E. Broad St., 14th Floor
Columbus, OH 43215
Tel.:   614-466-1305
Fax:   614-466-8898

For the State of Oregon,
Attorney General JOHN R. KROGER:


SIMON WHANG
Assistant Attorney General
Oregon Department of Justice
Financial Fraud/Consumer Protection
1515 SW 5th Avenue, Ste. 410
Portland, OR 97201
Tel.: 971-673-1880
Fax: 971-673-1902

For the Commonwealth of Pennsylvania
Office of Attorney General:


LINDA L. KELLY
Attorney General
Commonwealth of Pennsylvania
Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA  17120
Tel:    717-787-3391
Fax:    717-783-1107

For the Rhode Island Department of Attorney General:

Gerald Coyne
Rhode Island Department of Attorney General
Deputy Attorney General
150 South Main Street
Providence, RI 02903
Tel:    401-274- 4400 Extension 2257
Fax:    401- 222-1302

For the State of South Carolina:

_____

ALAN WILSON
Attorney General

JOHN W. MCINTOSH
Chief Deputy Attorney General

C. HAVIRD JONES, JR.
Assistant Deputy Attorney General

MARY FRANCES JOWERS
Assistant Attorney General

South Carolina Attorney General's Office
1000 Assembly Street, Room 519
Columbia, SC 29201
Tel.: 803-734-3970
Fax: 803-734-3677

For the State of South Dakota:

_____

MARTY J. JACKLEY
Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel.:  605-773-3215
Fax:  605-773-4106

For the State of Tennessee:

_____
ROBERT E. COOPER, JR.
Attorney General and Reporter
Office of the Tennessee Attorney General
425 Fifth Avenue North
Nashville, TN 37243-3400
Tel.:   615-741-3491
Fax:   615-741-2009

For the State of Texas:


JAMES A. DAROSS
State Bar No. 05391500
Assistant Attorney General
Consumer Protection Division
401 E. Franklin Avenue, Suite 530
El Paso, Texas 79901
Tel.: 915- 834-5800
Fax: 915-542-1546

- 92 -

Case 1:12-cv-00361-RMC    Document 31    Filed 03/12/12    Page 94 of 95

For the State of Utah:


_____
MARK L. SHURTLEFF
Utah Attorney General
350 North State Street, #230
Salt Lake City, UT 84114-2320
Tel.:  801-538-1191
Fax:  801-538-1121

For the State of Vermont

_(signature)_

Elliot Burg
Assistant Attorney General
Office of the Attorney General
109 State Street
Montpelier, VT  05609
Tel.:    802-828-2153
Fax:    802-828-2154

For The Commonwealth of Virginia,
*ex rel.* KENNETH T. CUCCINELLI, II,
Attorney General:


DAVID B. IRVIN (VSB #23927)
Senior Assistant Attorney General
MARK S. KUBIAK (VSB #73119)
Assistant Attorney General
Office of Virginia Attorney General
900 East Main Street
Richmond, Virginia 23219
Tel.: 804-786-4047
Fax: 804-786-0122

- 95 -

For the State of Washington:


ROBERT M. MCKENNA
WSBA# 18327
Attorney General
1125 Washington Street SE
Olympia, WA 98504-0100
Tel: 360-753-6200


DAVID W. HUEY WSBA #31380
Assistant Attorney General
Consumer Protection Division
Washington Attorney General's Office
1250 Pacific Avenue, Suite 105
PO Box 2317
Tacoma, WA 98402-4411
Tel: 253-593-5243

- 96 -

For the State of Wisconsin:

J.B. VAN HOLLEN
Attorney General


HOLLY C. POMRANING
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel:    608-266-5410
Fax:    608-267-8906

For the State of Wyoming:

GREGORY A. PHILLIPS
Wyoming Attorney General
Wyoming Attorney General's Office
123 State Capitol Bldg
200 W. 24th
Cheyenne, WY 82002
Tel.:   307-777-7847
Fax:   307-777-3435